**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:       ) | |
|       ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*[1]   ) | |
|       ) | Case No. 14-10979 (CSS) |
|       ) | (Jointly Administered) |
| Debtors.   ) | |
|       ) | |

**SUMMARY OF SEVENTH INTERIM AND FINAL FEE APPLICATION OF FTI CONSULTING, INC., FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD MAY 19, 2014 THROUGH OCTOBER 3, 2016**

| | |
|---|---|
| Name of Applicant: | FTI Consulting, Inc. |
| Authorized to provide professional services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | October 20, 2014 (Effective May 19, 2014) |
| Final period for which compensation and reimbursement are sought: | May 19, 2014 through October 3, 2016 |
| Final amount of compensation sought as actual, reasonable, and necessary: | $11,287,077.63[2,3,4] |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $362,724.73[5] |

This is an: _____ monthly   X interim   _X_ final application.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Includes fees for the period May 2016 through October 2016 as detailed in the final fee application.

[3] Includes voluntary reductions of $145,000 which represents estimated fees incurred to review time entries in connection with billing activities. In addition, FTI has voluntarily agreed to a reduction of $27,884.50 for fees charged by timekeepers who were deemed to have tangential involvement in these cases (these timekeepers are not included in the Summary of Fees). The total voluntary fee reduction for this Final Fee Application is $172,884.50.

[4] Includes $604,183.87 of fee adjustments agreed to with the Fee Committee.

[5] Includes $9,582.82 of expense adjustments agreed to with the Fee Committee.

## SUMMARY OF INTERIM APPLICATIONS

| INTERIM APP. | DATE FILED | PERIOD COVERED | REQUESTED | | REDUCTIONS | | | APPROVED | | OUTSTANDING | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | FEES | EXPENSES | VOLUNTARY[1] | FEE WRITE-OFFS[2] | EXPENSE WRITE-OFFS[2] | FEES | EXPENSES | FEES | EXPENSES |
| 1 | 10/31/2014 Dkt. 2672 | 05/19/2014-08/31/2014 | $3,300,549.00 | $142,783.00 | $0.00 | ($400,000.00) | $0.00 | $2,900,549.00 | $142,783.00 | $0.00 | $0.00 |
| 2 | 03/26/15 Dkt. 3980 | 09/01/14-12/31/14 | 3,243,864.75 | 206,515.72 | (35,000.00) | (74,617.25) | (7,410.37) | 3,134,247.50 | 199,105.35 | 0.00 | 0.00 |
| 3 | 06/11/15 Dkt. 4730 | 01/01/15-04/30/15 | 3,522,537.75 | 20,775.06 | (35,000.00) | (70,000.00) | 0.00 | 3,417,537.75 | 20,775.06 | 8,990.00 | 0.00 |
| 4 | 10/16/15 Dkt. 6489 | 05/01/15-08/31/15 | 1,563,409.50 | 2,233.77 | (50,000.00) | (40,529.42) | (2,172.45) | 1,472,880.08 | 61.32 | 0.00 | 0.00 |
| 5 | 02/12/16 Dkt. 7828 | 09/01/15-12/31/15 | 308,780.50 | 0.00 | (25,000.00) | (18,044.70) | 0.00 | 265,735.80 | 0.00 | 0.00 | 0.00 |
| 6 | 06/14/16 Dkt. 8703 | 01/01/16-04/30/16 | 50,107.50 | 0.00 | 0.00 | (992.50) | 0.00 | 49,115.00 | 0.00 | 0.00 | 0.00 |
| 7 | TBD | 05/01/16-10/03/16 | 47,012.50 | 0.00 | 0.00 | 0.00 | 0.00 | 47,012.50 | 0.00 | 47,012.50 | 0.00 |
| | TOTAL | | $12,036,261.50 | $372,307.55 | ($145,000.00) | ($604,183.87) | ($9,582.82) | $11,287,077.63 | $362,724.73 | $56,002.50 | $0.00 |

[1] Represents voluntary reductions of estimated fees incurred to review time entries in connection with billing activities.

[2] Represents fees and expense adjustments agreed to with the Fee Committee.

*[Remainder of page intentionally left blank.]*

## SUMMARY OF FEES INCURRED DURING THE
## FINAL APPLICATION PERIOD BY PROFESSIONAL

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Brady, Philip | Senior Managing Director | $570 | 37.0 | $21,090.00 |
| Cavicchi, Joseph | Senior Managing Director | 685 | 184.6 | 126,451.00 |
| Chertok, Mark | Senior Managing Director | 750 | 15.7 | 11,775.00 |
| Conly, Albert S | Senior Managing Director | 925 | 26.1 | 24,142.50 |
| Davido, Scott | Senior Managing Director | 830 [1] | 289.7 | 240,587.50 |
| Diaz, Matthew | Senior Managing Director | 952 [1] | 1,448.1 | 1,378,062.50 |
| Eisenband, Michael | Senior Managing Director | 942 [1] | 224.0 | 210,930.00 |
| Grant, Kenneth | Senior Managing Director | 651 [1] | 274.7 | 178,850.00 |
| Joffe, Steven | Senior Managing Director | 944 [1] | 354.6 | 334,875.00 |
| Jones, Scott | Senior Managing Director | 971 [1] | 238.2 | 231,322.50 |
| Reishus, David | Senior Managing Director | 702 [1] | 15.7 | 11,022.00 |
| Scruton, Andrew | Senior Managing Director | 950 [1] | 818.7 | 778,055.50 |
| Simms, Steven | Senior Managing Director | 940 [1] | 418.1 | 392,961.50 |
| Smith, Ellen | Senior Managing Director | 675 | 21.0 | 14,175.00 |
| Star, Samuel | Senior Managing Director | 925 | 0.5 | 462.50 |
| Tranen, Jeffrey | Senior Managing Director | 730 [1] | 514.3 | 375,360.00 |
| Brill, Glenn | Managing Director | 675 | 3.0 | 2,025.00 |
| Cordasco, Michael | Managing Director | 779 [1] | 1,212.0 | 944,071.00 |
| Greenberg, Mark | Managing Director | 787 [1] | 1,244.6 | 979,878.00 |
| Lemon, Andrew | Managing Director | 650 | 25.0 | 16,250.00 |
| Park, Ji Yon | Managing Director | 755 [1] | 985.0 | 743,339.00 |
| Wang, Patrick | Managing Director | 650 | 26.8 | 17,420.00 |
| Yozzo, John | Managing Director | 705 | 2.5 | 1,762.50 |
| Arsenault, Ronald | Senior Director | 522 [1] | 1,188.6 | 620,975.00 |
| Fisher, Robert | Senior Director | 425 | 53.4 | 22,695.00 |
| Molin, David | Director | 595 | 1.0 | 595.00 |
| Orabi, Ashraf | Director | 430 | 19.0 | 8,170.00 |
| Pike, Jonathan | Director | 320 | 22.5 | 7,200.00 |
| Rauch, Adam | Director / Senior Consultant | 576 [2] | 1,774.6 | 1,021,810.50 |
| Celli, Nicholas | Senior Consultant | 490 [1] | 745.3 | 365,449.50 |
| Eimer, Sean | Senior Consultant / Consultant | 425 [2] | 1,769.9 | 753,031.50 |
| Eisler, Marshall | Senior Consultant | 490 [1] | 1,594.2 | 780,999.00 |
| Friedrich, Steven | Senior Consultant / Consultant | 366 [2] | 1,153.5 | 422,514.50 |
| Goad, David | Senior Consultant | 550 | 307.4 | 169,070.00 |
| Johnson, Tessa | Senior Consultant | 381 [1] | 89.3 | 34,048.50 |
| Khaimov, Zhanna | Senior Consultant | 480 | 60.6 | 29,088.00 |

## SUMMARY OF FEES INCURRED DURING THE
## FINAL APPLICATION PERIOD BY PROFESSIONAL CONTINUED

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Mond, Allison | Senior Consultant / Consultant | 326 [2] | 482.0 | 156,982.50 |
| Nolan, Andrew | Senior Consultant | 430 | 31.5 | 13,545.00 |
| Rosen, Jonathan | Senior Consultant | 390 | 33.5 | 13,065.00 |
| Zimmermann, Deborah | Senior Consultant | 710 | 1.5 | 1,065.00 |
| Bataille, Jacqueline | Manager | 365 | 61.5 | 22,447.50 |
| Brennan, Margaret | Consultant | 335 | 5.1 | 1,708.50 |
| Budd, Eliza | Consultant | 340 [1] | 152.9 | 52,017.50 |
| Freeman, Andrew | Consultant | 315 | 2.8 | 882.00 |
| Gittelman, Jeremy | Consultant / Summer Associate | 200 [1] [2] | 500.4 | 99,922.50 |
| Mohr, Nicholas | Consultant | 210 [1] | 44.0 | 9,225.00 |
| Rothschild, Eric | Consultant | 335 | 19.3 | 6,465.50 |
| Stolarz, Alexander | Consultant | 355 | 450.1 | 159,785.50 |
| Tracy, Alexander | Consultant | 385 | 253.2 | 97,482.00 |
| Hellmund-Mora, Marili | Associate | 250 [1] | 401.8 | 100,490.00 |
| Jones, Rebekah | Associate | 305 | 4.9 | 1,494.50 |
| Marion, Bethany | Associate | 175 | 2.0 | 350.00 |
| Moore, Teresa | Associate | 225 | 199.7 | 44,932.50 |
| Cheng, Earnestiena | Summer Associate | 175 | 62.1 | 10,867.50 |
| Lowenstein, Jeffrey | Summer Associate | 250 | 65.6 | 16,400.00 |
| Rosen, Aaron | Summer Associate | 175 | 59.0 | 10,325.00 |
| Sadler, Eric | Summer Associate | 175 | 15.4 | 2,695.00 |
| Visconti, Charles | Summer Associate | 175 | 3.0 | 525.00 |
| Hogan, William | Economic Consultant | 1,000 | 1.0 | 1,000.00 |
| **Subtotal** | | | **20,011.5** | **12,094,187.50** |
| Less: 50% Discount for Non-Working Travel Time | | | | (57,926.00) |
| Less: Voluntary Reduction [3] | | | | (145,000.00) |
| Less: Fee Adjustments Agreed to With Fee Committee [4] | | | | (604,183.87) |
| **Grand Total [5]** | | | **20,011.5** | **$11,287,077.63** |

[1] Reflects blended billing rate based on annual rate increases in accordance with FTI's practices and procedures.

[2] Reflects blended billing rate based on a promotion in accordance with FTI's practices and procedures.

[3] The voluntary reduction of $145,000 represents estimated fees incurred to review time entries in connection with billing activities. In addition, FTI has voluntarily agreed to a reduction of $27,884.50 for fees charged by timekeepers who were deemed to have tangential involvement in these cases (these timekeepers are not included in the Summary of Fees Schedule above). The total voluntary fee reduction for this Final Fee Application is $172,884.50.

[4] Reflects fee adjustments agreed to with the Fee Committee.

[5] Includes fees for the Seventh Interim Period (May 2016 through October 2016).

## SUMMARY OF FEES INCURRED DURING THE
## FINAL APPLICATION BY TASK

| Task Code | Task Description | Total Hours | Total Fees |
|:---:|---|---:|---:|
| 1 | Current Operating Results & Events | 593.2 | $317,620.50 |
| 2 | Cash & Liquidity Analysis | 14.6 | 9,124.50 |
| 3 | Financing Matters (DIP, Exit, Other) | 58.5 | 45,606.50 |
| 4 | Trade Vendor Issues | 8.8 | 6,523.00 |
| 5 | Real Estate Issues | 16.5 | 10,954.50 |
| 6 | Asset Sales | 47.2 | 37,191.50 |
| 9 | Analysis of Employee Compensation Programs | 490.0 | 297,096.00 |
| 11 | Prepare for and Attendance at Court Hearings | 103.1 | 91,385.50 |
| 12 | Analysis of SOFAs & SOALs | 408.5 | 206,469.50 |
| 13 | Analysis of Other Miscellaneous Motions | 434.5 | 281,463.00 |
| 14 | Analysis of Claims/Liabilities Subject to Compromise | 209.0 | 167,316.00 |
| 15 | Analysis of Interco. Claims, Related Party Transactions | 2,810.1 | 1,560,758.00 |
| 16 | POR & DS - Analysis, Negotiation and Formulation | 555.8 | 527,602.50 |
| 18 | Analysis of Intercompany Claims, Related Party Transactions [1] | 817.6 | 451,052.00 |
| 18.A | Investigations of Select Legacy Transactions- Historical Transactions | 1,506.5 | 893,236.50 |
| 18.B | Investigations of Select Legacy Transactions- LBO Solvency | 90.5 | 52,406.00 |
| 19 | Case Management | 29.8 | 24,698.00 |
| 20 | General Meeting with Debtor & Debtors' Professionals | 19.2 | 17,532.50 |
| 21 | General Meetings with Committee & Committee Counsel | 449.1 | 402,919.50 |
| 22 | Meetings with Other Parties | 21.0 | 19,131.50 |
| 23 | Firm Retention | 436.7 | 135,027.00 |
| 24 | Preparation of Fee Application | 1,366.6 | 619,376.00 |
| 25 | Non Working Travel Time | 156.9 | 115,852.00 |
| 28 | Investigations of Select Legacy Transactions [2] | 808.7 | 478,243.50 |
| 28.A | First Lien Investigation- Legacy Transactions | 171.8 | 126,418.50 |
| 28.B | First Lien Investigation- Historical Solvency | 303.0 | 207,012.50 |

## SUMMARY OF FEES INCURRED DURING THE
## FINAL APPLICATION BY TASK CONTINUED

| Task Code | Task Description | Total Hours | Total Fees |
|---|---|---|---|
| 29 | Business Plan- Diligence of the Debtors' Long Range Plan | 1,029.6 | 611,304.50 |
| 30 | Business Plan- Understand and Assess ERCOT Market | 295.6 | 152,592.00 |
| 31 | Business Plan- Develop a Model for ERCOT Market | 353.8 | 158,849.00 |
| 32 | Business Plan- Determine and Sensitize Key EBITDA Drivers | 112.9 | 55,685.50 |
| 33 | Business Plan- Natural Gas / Coal Pricing | 406.7 | 259,327.50 |
| 34 | Business Plan- Environmental | 24.5 | 16,722.00 |
| 35 | Business Plan- New Entry Pricing | 652.9 | 365,180.50 |
| 36 | Business Plan- Communication with Debtors / Other Professionals | 328.8 | 244,120.50 |
| 37 | Analysis of Pre-Petition Tax Payments | 2,531.7 | 1,420,180.50 |
| 38 | Analysis of Tax Impact on Restructuring Scenarios | 988.5 | 715,072.00 |
| 39 | Analysis of Alternative Tax Structure | 1,222.7 | 896,559.00 |
| 40 | REIT Asset Analysis | 136.6 | 96,578.00 |
| | **GRAND TOTAL** | **20,011.5** | **$12,094,187.50** |
| | Less: 50% Discount for Non-Working Travel Time | | (57,926.00) |
| | Less: Voluntary Reduction [3] | | (145,000.00) |
| | Less: Fee Adjustments Agreed to With Fee Committee [4] | | (604,183.87) |
| | **GRAND TOTAL [5]** | **20,011.5** | **$11,287,077.63** |

[1] Task code 18 was subdivided into task codes 18.A and 18.B after the first interim period.

[2] Task code 28 was subdivided into task codes 28.A and 28.B after the first interim period.

[3] The voluntary reduction of $145,000 represents estimated fees incurred to review time entries in connection with billing activities. In addition, FTI has voluntarily agreed to a reduction of $27,884.50 for fees charged by timekeepers who were deemed to have tangential involvement in these cases (these timekeepers are not included in the Summary of Fees Schedule above). The total voluntary fee reduction for this Final Fee Application is $172,884.50.

[4] Reflects fee adjustments agreed to with the Fee Committee.

[5] Includes fees for the Seventh Interim Period (May 2016 through October 2016).

*[Remainder of page intentionally left blank.]*

# SUMMARY OF EXPENSES INCURRED DURING
# THE FINAL APPLICATION PERIOD

| CATEGORY | TOTAL |
|---|---|
| Airfare | $24,993.90 |
| Lodging | 9,509.83 |
| Ground Transportation | 14,167.83 |
| Business Meals [1] | 10,893.99 |
| Other [2] | 312,742.00 |
| **Total** | **$372,307.55** |
| Less: Expense Write-Offs Agreed to With Fee Committee [3] | (9,582.82) |
| **Total** | **$362,724.73** |

[1] In-office meals over $20.00 and out-of-office meals over $40.00 have been reduced to $20.00 and $40.00, respectively, to comply with the Amended Guidelines for Fees and Disbursements for Professionals in Delaware District Bankruptcy Cases. Each of these meals were in fact greater than $20.00 or $40.00 and do not represent a per diem.

[2] Primarily includes $243,850 expenses related to Cambridge Energy Solutions and $55,250 expenses related to other third-party data providers. As disclosed in paragraph 6 of the Retention Order and the Supplemental Declaration of Steven Simms in Support of Application for the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., et al, for Entry of an Order Under Section 328(a) and 1103(a) of the Bankruptcy Code Authorizing the Employment and Retention of FTI Consulting, Inc. as Financial Advisor Effective May 19, 2014.

[3] Reflects expense adjustments agreed to with the Fee Committee.

*[Remainder of page intentionally left blank.]*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| _____ ) | | |
| In re: | ) | |
| | ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*[6] | ) | |
| | ) | Case No. 14-10979 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ ) | | |

**SEVENTH INTERIM AND FINAL FEE APPLICATION OF FTI CONSULTING, INC.,
FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD
MAY 19, 2014 THROUGH OCTOBER 3, 2016**

This seventh interim and final fee application for compensation and reimbursement of expenses (the "Fee Application") is filed by FTI Consulting, Inc. (together with its wholly owned subsidiaries, agents, independent contractors and employees, "FTI") requesting payment for services rendered and reimbursement of costs expended as financial advisor for the Official Committee of Unsecured Creditors (the "Committee") of Energy Future Competitive Holdings Company LLC ("EFCH"), EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC ("TCEH") and their direct and indirect subsidiaries, and EFH Corporate Services Company (collectively with EFCH and TCEH, the "TCEH Debtors")[7] for the period of May 19, 2014 through October 3, 2016 (the "Application Period"). In support of this Fee Application, FTI respectfully states as follows:

---

[6] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[7] Although EFH Corporate Services is not a subsidiary of TCEH, for ease of reference EFH Corporate Services is included in the definition "TCEH Debtors".

**Introduction**

1.    FTI provided services to the Committee in accordance with the instructions and directions of the Committee. FTI is compensated on an hourly fee basis, plus reimbursement of actual and necessary expenses incurred by FTI.

2.    FTI submits this Fee Application pursuant to sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Administrative Order") [Docket No. 220], Del. Bankr. LR 2016-2 and the Retention Order. By this Fee Application, FTI seeks final allowance and payment of 100% of compensation for actual and necessary professional services rendered in the amount of $11,287,077.63, which amount includes compensation for services rendered in the aggregate amount of $47,012.50 from May 1, 2016 to October 3, 2016 (the "Seventh Interim Period") and seeks the allowance and payment of 100% of its actual and necessary expenses in the amount of $362,724.73, in accordance with the terms of the Administrative Order.

**Jurisdiction**

3.    The Court has jurisdiction over this matter under 28 U.S.C. § 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2). Venue of this chapter 11 case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

**Background**

4.    On April 29, 2014 (the "Petition Date"), the TCEH Debtors filed voluntary petitions with this Court under chapter 11 of the Bankruptcy Code. The TCEH Debtors are operating their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

5.      On May 12, 2014 (the "Formation Meeting"), the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Committee consists of the following seven members:

> (a) Pension Benefit Guaranty Corporation;
>
> (b) HCL America, Inc.;
>
> (c) The Bank of New York Mellon;
>
> (d) Law Debenture Trust Company of New York
>
> (e) Holt Texas LTD, d/b/a Holt Cat
>
> (f) ADA Carbon Solution (Red River); and
>
> (g) Wilmington Savings Fund Society.

On May 14, 2014, the Committee selected Morrison & Foerster LLP ("Committee Counsel") and Polsinelli PC to serve as Committee counsel. On May 16, 2014, the Committee selected Lazard Frères & Co. LLC ("Lazard") to serve as its investment banker, and on May 19, 2014, the Committee selected FTI as its financial advisor.

6.      On July 25, 2014 FTI filed its retention application. On October 20, 2014 the Court entered an order approving the retention of FTI as financial advisor to the Committee effective as of May 19, 2014 (the "Retention Order") [Docket No. 2507].

## SEVENTH INTERIM FEE APPLICATION

7.      FTI seeks the allowance of compensation for professional services rendered for and on behalf of the Committee for the period of May 1, 2016 through October 3, 2016.

Specifically, FTI seeks an allowance and payment of $47,012.50 for services rendered to and on behalf of the Committee during the Seventh Interim Period.  Detailed time entries are annexed hereto as **Exhibit C**.

8.      The Committee, through its Chair (the "Committee Chair"), has been given an opportunity to review this Fee Application and has approved the requested amounts.

### Summary of Services Provided in the Seventh Interim Period

During the Seventh Interim Period, FTI corresponded with the Debtors regarding the status of the claims reconciliation process and the sizing of the unsecured claims pool. FTI prepared periodic reports for the Committee and Counsel detailing the range of recoveries for each class of claims provided by the Debtors. In addition, FTI participated in calls with Counsel and the Committee to discuss potential distribution dates, the rationale for proposed claim settlements, and settlement of rejection claims. In addition, FTI analyzed the terms of the proposed Nextera transaction and assessed the potential impact to T-side creditors. FTI monitored the timing of Plan confirmation and payments to creditors, and participated telephonically in the confirmation hearings.

### Relief Requested

9.      FTI submits this Fee Application pursuant to sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Administrative Order") [Docket No. 415], Del. Bankr. LR 2016-2 and the Retention Order.  By this Fee Application, FTI seeks final allowance and payment of compensation for actual and necessary professional services rendered in the amount of $11,287,077.63 during the Final Application Period and seeks the allowance and payment of 100% of its actual and necessary expenses incurred during the Final Application period in the amount of $362,724.73, in accordance with the terms of the Administrative Order.

10.     Prior to the filing of this Fee Application, FTI filed monthly fee applications for the period of May 19, 2014 through January 31, 2016 with the Court (the "Monthly Fee Applications"). The Monthly Fee Applications requested payment of professional fees in the aggregate amount of $11,240,065.13 and reimbursement of actual and necessary expenses in the aggregate amount of $362,724.73.

11.     As part of this Fee Application, FTI seeks an allowance and payment of $47,012.50 for services rendered to and on behalf of the Committee for the Seventh Interim Period.

12.     FTI has received no promises for payment from any source for services rendered in connection with these chapter 11 cases.  There is no agreement or understanding between FTI and any other person (other than members of FTI) for the sharing of compensation to be received for the services rendered in the chapter 11 cases.

13.     Accordingly, by this Fee Application, FTI hereby seeks final approval and allowance of $11,287,077.63 in professional fees for services rendered in connection with its role as financial advisor to the Committee, and reimbursement of actual and necessary expenses of $362,724.73 pursuant to the terms of its engagement approved in the Retention Order.  As of the date of this Fee Application, FTI is owed $56,002.50 for professional fees which have not been paid by the Debtors.

### Summary of Services Rendered

14.     The Debtors' chapter 11 cases have presented numerous large and complex issues that had to be addressed in order to preserve and maximize value for unsecured creditors. The Retention Order authorized FTI to render financial advisory services to the Official Committee of Unsecured Creditors. FTI has taken steps to avoid duplication of efforts among the Committee professionals. The Committee professionals actively coordinate their efforts to discuss work streams, avoid duplication, and leverage each other's work.

15.     FTI has taken reasonable steps to avoid duplication of services by FTI's professionals. During the course of the Application Period, there have been a few instances where more than one FTI professional attended a hearing or participated in a conference call. These multiple attendees were necessary to accomplish the significant amount of work which needed to be performed in a compressed amount of time involving complex facts and transactions and the participation and involvement.

16.     The total number of hours expended by FTI professionals and paraprofessionals in performing professional services for the Committee during the Application Period was 20,011.5 hours. Pursuant to the Retention Order, FTI is entitled to monthly compensation for its services provided to the Committee at its current hourly rates, plus reimbursement of necessary out of pocket expenses.

17.     Services rendered by each professional and paraprofessional during the Application Period, and a summary of the time incurred by project code, are attached hereto as **Exhibit A** and **Exhibit B**.

18.     The following paragraph(s) describe the primary services rendered by FTI, but are not limited to the categories set forth below.

### *Code 1 – Current Operating Results & Events (593.2 hours)*

During the Application Period, FTI reviewed and analyzed financial and operating information distributed by TCEH Debtors and their advisors related to historical and monthly performance during the course of the bankruptcy. In addition to analyzing materials provided to the Committee directly by the TCEH Debtors, FTI reviewed quarterly and annual public filings, relevant industry information (e.g., natural gas prices, power prices, other commodity prices), news articles, and docket updates in order to assess potential external factors that may impact the Company's operations.

FTI participated on calls with the Debtors and their advisors regarding monthly performance of each business segment in comparison to forecasts. In addition to analyzing the Debtors' budget-to-actual reports, FTI developed diligence question lists and held calls with the Company's management to assess the drivers of key variances to the budget and determined their impact on the overall performance of the business. In connection with the aforementioned analyses, FTI prepared several comprehensive written reports that were presented to the Committee over the course of the Application Period. FTI's contribution to this work stream was important to help ensure the

Committee was kept abreast of external issues that impact the Debtors' business, as well as the Company's performance versus its business plan.

In addition, FTI was requested by the Committee to assess the reasonableness of the Debtors' proposed employee incentive plans. FTI prepared an analysis that compared the performance metrics and associated incentives with the Debtors' prior year incentive program. FTI conducted diligence on the proposed scorecards, and conducted diligence calls with the Debtors regarding the program.

*Code 9 – Analysis of Employee Compensation Programs (490.0 hours)*

During the Application Period, FTI reviewed the first day wage and benefit motion and prepared a summary report for the Committee. Additionally, time in this task code includes review of the TCEH Debtors' insider and non-insider incentive compensation motions. In order to diligence the incentive compensation motions, FTI reviewed (i) additional backup requested which was provided by the Debtors and (ii) actual financial results related to evaluating potential compensation payouts. In addition, FTI participated in multiple calls with the Debtors and their advisors regarding the proposed incentive plans and related backup and with Committee counsel to discuss strategy and recommendations. Our team prepared detailed presentations to the Committee summarizing our diligence and recommendations. FTI's efforts were crucial to help ensure that the incentive plans and the operating targets proposed by the Debtors were aligned with the creditors' interests and that the proposed programs were reasonable.

Time in this task code also includes the review and summarization of motions to separate the TCEH Debtors' 401(k) plans and to honor retiree benefits. FTI participated in multiple calls with the TCEH Debtors and their advisors regarding these motions and related support and with Committee counsel to discuss strategy and recommendations. In order to analyze the proposed programs, FTI created a detailed stratification analysis of proposed benefit plans, including the Second Supplemental Retirement Plan (the "SSRP") annuity payments, SSRP lump sum payments, and the

Salary Deferral Program (the "SDP") payments. FTI prepared and presented a report to the Committee summarizing our diligence, observations, and recommendations.

FTI's efforts were crucial to help ensure that the incentive plans and the operating targets proposed by the Debtors were aligned with the creditors' interests and that the proposed programs were reasonable. Time included in this task code includes FTI's assessment of the United States Trustee's objection to the Debtors' proposed 2014 compensation programs and related discussions with the Committee and Committee Counsel.

FTI also analyzed the TCEH Debtors' proposed 2015  and 2016 compensation programs, including (i) review of the Debtors' presentation on 2015 and 2016 compensation programs, (ii) analysis of the incentive targets, (iii) evaluation of the reasonableness of the programs against the bonus programs offered in other bankruptcy cases, (iv) analysis of 2015 compensation structure and levels compared to the prior year, and (v) preparation of a written report to the Committee summarizing our observations and recommendations. During the Application period, the FTI team evaluating the Debtors' employee compensation programs was supplemented to include individuals from the business plan review team. These individuals, familiar with the Debtors' operations, analyzed the financial targets and benchmarked these targets to prior years to assess achievability. FTI professionals participated in numerous calls with the Debtors and the Debtors' advisors to discuss diligence materials and participated in discussions with Committee professionals to develop our recommendations.

### Code 12 – Analysis of SOFAs & SOALs (408.5 hours)

FTI reviewed the TCEH Debtors' Statements of Financial Affairs ("SOFAs") and Schedules of Assets and Liabilities ("SOALs") which were filed by the TCEH Debtors on June 30, 2014. In connection with our review, we prepared for and participated in numerous diligence sessions with the Company and their advisors in order to address our questions. Following our review, FTI prepared and presented a report to the Committee summarizing the contents, our observations, and

the next steps regarding the SOFAs and SOALs. Key areas of FTI's diligence included, but were not limited to: (i) corporate entity structure, (ii) assets of the Estates, including unencumbered assets, (iii) detail regarding secured, priority, and unsecured claims, (iv) payments made to creditors within the 90 days prior to the Petition Date, (v) payments made to insiders within the year prior to the Petition Date, and (vi) intercompany balances.

### Code 13 – Analysis of Other Miscellaneous Motions (434.5 hours)

Time in this code includes analysis of various first day motions and subsequent motions filed by the TCEH Debtors including, among others, the TCEH Debtors' financial advisor and investment banker retention applications, lease rejection motions, trading and hedging motions, request to bid on Optim Energy assets motion, request to amend the Comanche Peak joint venture agreement motion, request to approve a set-off stipulation with Alcoa motion, and certain other motions. FTI analyzed these motions to assess the financial impact of the relief requested within each, and provided observations and recommendations to Committee Counsel in order to supplement Committee Counsel's legal review of the motions. FTI had several discussions with the TCEH Debtors and their advisors to assess the economic impact of these motions and FTI summarized our analyses of these motions for the Committee's review and consideration.

In addition, the Debtors filed a motion seeking authority to participate in an auction for the purchase of certain generation assets that were located in Texas. FTI performed diligence regarding the potential bid, as well as assessing the liquidity that was required in order to participate in the auction. FTI analyzed the Debtors' financial models that were prepared in order to assess certain bidding ranges. In addition, FTI prepared sensitivity analyses on the financial models to assess the reasonableness of required bid levels. FTI presented a summary of the proposed auction process and presented observations and recommendations directly with Counsel and the Committee.

***Code 15 – Analysis of Intercompany Claims, Related Party Transactions (2,810.1 hours)***

Time in this code includes the review of the TCEH Debtors' cash management motion and general cash management procedures, including postpetition use of bank accounts, shared services utilizing the corporate services function, and use of "money pools". FTI personnel participated in multiple calls with the TCEH Debtors and their advisors to discuss these proposed cash management procedures. Our team reviewed the shared services agreements and prepared a detailed summary of the cost allocations in these agreements. Time in this code also includes the preparation of a Committee report summarizing the TCEH Debtors' cash management system, including the use of shared services and intercompany mapping of receipt and disbursement flows between Debtor entities. FTI prepared a detailed presentation to Committee Counsel outlining the historical practices and potential claims that could arise out of the money pool transactions. FTI professionals reviewed numerous drafts of the proposed cash management order and participated in calls with Committee counsel to discuss our proposed changes.

During the Application Period, FTI performed extensive diligence surrounding both historical and current intercompany balances and transactions. FTI participated in numerous calls with the Debtors and their advisors regarding diligence requests and status of information flow. FTI's review of intercompany activities covered the Demand Notes, general intercompany activities and historical changes in balances, shared service cost allocations and their respective cost allocation methodologies, money pool activities and letters of credit. Time in this period includes participating in working sessions with Counsel to prepare discussion materials regarding the aforementioned topics. FTI also participated in periodic calls with the Committee professionals to review FTI's materials and to discuss the status of the intercompany review, issues and strategy, as well as next steps. Time in this code also includes the analysis of potential claims that other Debtors may have against the TCEH Debtors as a result of various historical intercompany transactions.

With respect to shared service cost allocations, FTI continued to refine and modify the shared services sensitivity model, which incorporated historical shared services allocations from 2008 through the Petition Date for over 130 cost categories, for the purpose of analyzing the effects of alternative cost allocation methodologies. FTI participated in numerous discussions with Committee Counsel to discuss the model assumptions, scenarios, and resulting potential claims. FTI also reconciled the Debtors' accounting entries with the monthly summaries of the shared service costs allocated among the entities. FTI prepared diligence request materials related to historical practices and allocation methodologies and participated on calls with the Debtors' Advisors and employees regarding the same. FTI continued to prepare presentations at the request of Counsel relating to potential shared service claims.

FTI also examined and analyzed volumes of discovery documents in coordination with Committee Counsel, relating to intercompany transactions produced by the Debtors under the Legacy Discovery Protocol. FTI identified key documents and summarized the main points into discussion materials for Committee Counsel to assist in the development of potential claims. These discussion materials were continually updated as new information was received from the Debtors and additional inquiries were raised by Committee Counsel, and were used to assist the discussions between Committee Counsel, Lazard, and FTI regarding potential causes of action arising out of intercompany activities. FTI also participated in numerous calls with the Debtors and their advisors to address any follow-up questions on the materials reviewed as well as the status of information flow on the outstanding requests. FTI maintained a tracking document, which was periodically updated and provided to A&M, in order to facilitate an efficient information flow relating to intercompany review.

FTI also examined and analyzed the Debtors' allocation of pre-petition professional fees for the years 2013 and 2014. FTI developed diligence questions for the Debtors' advisors and worked with Committee Counsel to understand the Debtors' historical allocation methodologies of pre-

petition professional fees and analyzed the potential claim resulting from the potential misallocation of pre-petition professional fees. During the Application Period, FTI developed a presentation to Counsel outlining the potential claims on account of pre-petition professional fees as well as next steps.

### Code 16 – POR & DS – Analysis, Negotiation and Formulation (555.8 hours)

FTI participated in numerous calls and meetings with Committee Counsel and the Debtors' advisors and other parties in connection with settlement negotiations with various case constituents involving certain aspects of the plan of reorganization. Key elements of these negotiations included treatment of intercompany claims, unsecured claims at various entities, settlement of litigation claims, overall creditor recoveries, among many other topics. FTI assessed the impact on T-side creditor recoveries based on these plan discussions. In addition, FTI analyzed the filed plan objections to assess the impact on the plan and in particular the case timeline.

Upon the Debtors' filing of a plan and disclosure statement, FTI analyzed the Debtors' Plan of Reorganization and Disclosure Statement, focusing on sections detailing the treatment of various constituencies and related recoveries. A key element of FTI's time in this category was the analysis of certain exhibits to the Disclosure Statement, including the financial projections, the liquidation analysis, and the estimated recovery percentages presented in the Plan of Reorganization. Drafts of both the POR and DS were also reviewed for accuracy and appropriateness as it related to proper disclosure and fair representation for the general unsecured creditors.

FTI analyzed the potential impact associated with regulatory approvals of the Plan, including timing of the effective date. In addition, FTI analyzed proposed term sheets related to an alternative plan and provided Counsel with observations and comments.

### Code 18 – Investigations of Select Legacy Transactions (817.6 hours)

During the Application Period, FTI reviewed public filings and non-public information provided by the TCEH Debtors regarding their Liability Management Program ("LMP") and

prepetition capital structure evolution. Time in this code includes preparation of a detailed prepetition debt roll-forward as well as an analysis of debt held by affiliates from the time the TCEH Debtors' were acquired by Texas Energy Future Holdings Limited Partners in 2007 (the "2007 LBO") to the bankruptcy date, including an analysis of the TCEH Debtors' ability to sustain operations under the 2007 LBO transaction structure. FTI also reviewed and prepared analyses summarizing the TCEH Debtors' relationship with its equity sponsors, the related management agreements, services provided to the TCEH Debtors by the sponsors, and payments made to the TCEH Debtors' sponsors on account of the management agreement and other related services. FTI professionals reviewed additional information received related to the sponsor management agreements and payments made to the Debtors' sponsors.

FTI also reviewed public filings and non-public information provided by the Debtors related to transition bonds and related transactions. FTI professionals reviewed additional information related to the Debtors' management agreements and payments made to the Debtors' sponsors. Additionally, FTI participated in working sessions with Counsel in order to prepare discussion materials related to transition bonds as well as the Debtors' relationship with the sponsors. Time in this code also includes the review of public filings related to historical transactions involving the ownership of ONCOR.

***Code 18.A – Investigations of Select Legacy Transactions: Historical Transactions (1,506.5 hours)***

Time in this code primarily includes the continued investigation and analysis of non-intercompany legacy transactions pertaining to the TCEH Debtors, which included, among others, (i) analysis of preference payments, (ii) allocation of Rabbi Trust funds (iii) the Debtors' LMP, (iv) payments made by the TCEH Debtors in connection with the transition bonds (e.g., payments under the tax and interest rate make-whole agreements and payments made under the settlement agreement), (v) payments made to the Sponsors subsequent to the 2007 LBO, (vi) funds flow

associated with the LBO including repayment of pre-LBO debt and related fees paid to the Sponsors, and (vii) standing and statute of limitation issues.

FTI developed written discussion materials on each of the issues being investigated and updated these materials as new information was received from the Debtors and as Committee Counsel raised additional issues for further diligence. These discussion materials summarized what we learned by each topic and highlighted key observations and issues for analysis. FTI provided these materials to Committee Counsel to assist them in developing and evaluating claims, preparing legal memos, and to identify further investigation areas. In coordination with Committee Counsel, FTI continued to review the discovery data site, identified and analyzed pertinent financial documents and assisted Committee Counsel in examining and responding to the Debtors' responses to the Committee's initial discovery request under the Legacy Discovery Protocol. As part of the discovery process, FTI analyzed volumes of discovery and other diligence documents pertaining to the aforementioned investigation topics.

FTI worked with Alvarez & Marsal and Morrison & Foerster to analyze potential preference claims against T-side Debtors within the Application Period. FTI's involvement included examining vendors excluded from the potential preference analysis, confirmed ordinary course and new value calculations to estimate the potential preference claim, and analyzed different calculation methodologies to determine a range of potential preference claims. Written discussion materials were prepared for Committee Counsel and presented to the Committee.

Additionally, during the Application Period, FTI assessed components of a recovery model in order to ensure that the model reflected potential causes of action consistent with FTI's analyses. FTI also participated in weekly diligence update calls with the Debtors' Advisors in order to request and receive periodic updates regarding the status of additional information needed to conduct our investigation. During the Application period, the FTI team analyzing select historical legacy

transactions was supplemented to include additional team members. These individuals were added as the core team was stretched to capacity and the work being performed was time sensitive.

### Code 21 – General Meetings with Committee & Committee Counsel (449.1 hours)

FTI prepared for and participated in numerous conference calls with the Committee and Committee Counsel to provide updates and recommendations regarding key events and issues. These calls and meetings included discussions with respect to case work plan, first day motions, proposed DIP financing, cash management, Court hearings, industry-related topics, expert witness interviews, proposed employee incentive plans, the Debtors' SOFAs and SOALs, the RSA, investigations of legacy transactions, first lien investigation, general case strategy, and other key topics.

Additional topics covered by these calls and meetings included key case issues and strategy, the Insider Compensation Motion, expert witness interviews, operating results, industry updates, updates on Court hearings, tax issues, status of plan negotiations, creditor recovery considerations, status of REIT alternatives, and other key topics. In preparation for these calls, FTI prepared numerous presentations outlining key issues to be discussed and proposed recommendations for the benefit of the Committee.

### Code 28 – First Lien Investigation (808.7 hours)

In connection with the Committee's investigation of claims against the TCEH first lien lenders, FTI reviewed and analyzed various reports prepared by advisors to the TCEH Debtors' over the historical period since the 2007 LBO. Additionally, FTI reviewed historical debt interest calculations and unencumbered funds in the months leading up to the petition date. FTI also communicated with the Debtors' advisors regarding outstanding requests for information and participated on calls with Counsel regarding the investigation status and FTI due diligence.

### Code 28.B – First Lien Investigation: Historical Solvency (303.0 hours)

In connection with the Committee's investigation of claims against the TCEH first lien lenders, FTI continued to analyze the TCEH Debtors' solvency at various points in time since the

2007 LBO to assess certain potential claims against the TCEH first lien lenders. In addition, time in this code includes industry research and analysis that was undertaken to refute many of the arguments contained in various parties' objections to the Committee's standing motion, as well as assisting in the drafting of certain sections of the reply brief. FTI also incurred time reviewing and providing comments to Committee Counsel's aforementioned complaint and reply to objections to the standing motion.

### Code 29 – Business Plan: Diligence of the Debtors' Long Range Plan (1,029.6 hours)

During the Application Period, FTI summarized key issues and observations from the Debtors' business plans and provided written and/or oral updates to the Committee on a periodic basis. FTI analyzed the Debtors' updated business plan for each segment to determine key variances compared to prior versions of the business plan and held calls with the Debtors' management to assess the drivers of such changes. Time in this code also includes preparing detailed information requests and questions that were designed to understand, on a line item basis, the key assumptions and drivers of the Debtors' long range plan, as well as the mechanics that were utilized to develop the business plan models. FTI continued to refine an alternative business plan free cash flow model based on additional research and diligence responses received from the Debtors and the Debtors' professionals.

FTI also participated in site visits of the Comanche Peak and Big Brown plants to view certain of the Debtors' operations and assess the processes in place at these plants.  Observations and analyses from these visits were summarized for discussion with the Committee and Committee's advisors.

### Code 30 – Business Plan: Understand and Assess ERCOT Market (295.6 hours)

Time in this task code includes analysis and evaluation of key market mechanisms and inputs influencing the operations of the Luminant fleet. Tasks include researching ERCOT's Capacity, Demand, and Reserves Reports ("CDR Report"), which are updated every six months. Continuous

monitoring and analysis of the competitive environment within the ERCOT market was critical during the Application Period as changes to the economic factors have significant influence on the Debtors' operating decisions and valuation. Other publications such as materials provided by the Public Utility Commission of Texas ("PUCT") were analyzed to assess the ERCOT market. Information gleaned from this research and analysis was applied to an independent market model described further below.

### Code 31 – Business Plan: Develop a Model for ERCOT Market (353.8 hours)

Time in this task code includes the development, refinement, and testing of a financial model designed to analyze various aspects of the Debtors' business plans based on changes in market assumptions. Tasks include: (i) developing an independent view of the ERCOT supply stack going forward, including power plant additions and retirements, (ii) assessing ERCOT load forecasts and the resulting reserve margin expectations through the time horizon, and (iii) assessing the impact of recent changes in the ERCOT market design on Luminant's production and prices. FTI also conducted research aimed at refining the model's key inputs, which include unit operating parameters such as seasonal capacities, heat rates, ramp rates, emission rates, environmental controls, and maintenance schedules. Time in this code also includes the development and refinement of an independent locational marginal price model, designed to determine the price paid per megawatt hour of electricity.

### Code 33 – Business Plan: Natural Gas / Coal Pricing (406.7 hours)

Time in this code includes assessing natural gas, coal, and other commodity curve assumptions in the Debtors' long range business plan and developing an independent view on such inputs. During the Application Period, FTI spent time understanding current and future coal and transportation costs in order to accurately project gross margins in the Committee's alternative business plan during the projection period. FTI also researched the supply and demand economics in

connection with commodity prices and compared commodity price forecasts in various industry reports with the commodity price assumptions driving the Debtors' business plan.

### Code 35 – Business Plan: New Entry Pricing (652.9 hours)

Time in this task code includes the analysis of key drivers determining outer year power prices in the ERCOT market and the development of an independent view on such drivers. A key driver of outer year power prices is the determination of the economics that would be required to develop new investment in the ERCOT market (e.g. development of new power plants). Which unit is built, how much it costs, what return its owners require, and how long of a period an owner would expect capital recovery to occur are all factors that have an impact on market prices, and as a result Luminant's revenue potential. In addition, FTI reviewed the Debtors methodology and assumptions, creating its own set of assumptions based on experience and available data, and preparing various sensitivities to determine the potential impact on projected power prices.

### Code 36 – Communication with Debtors / Other Professionals (328.8 hours)

Time in this task code includes general meetings with the Debtors and other case professionals in order to coordinate and facilitate the Committee's independent analysis of the Debtors' business plan. During the Application Period, FTI incurred time participating in diligence meetings (both in person meetings with groups of professionals from various constituents, as well as one-off meetings and/or conference calls to discuss specific diligence items). FTI also incurred time in connection with coordinating diligence efforts with other Committee advisors (particularly Lazard and DNV) to avoid duplication of efforts and ensure that all diligence requests of the Debtors were consolidated and comprehensive. Because this code captures time communicating with the Debtors and other professionals, most of the business plan timekeepers have time charged to this sub-code.

### Code 37 – Analysis of Pre-Petition Tax Payments (2,531.7 hours)

FTI incurred time in this task code to analyze intercompany tax obligations of, and payments among, EFH Corporation and various subsidiaries, pursuant to several tax sharing agreements. To

supplement our understanding of historical tax liabilities, FTI analyzed the historical intercompany tax payments between EFH and its subsidiaries, including a review of historical federal and state tax returns and an analysis of the Debtors' tax sharing agreements. In order to evaluate the tax obligations, FTI performed extensive due diligence on the Debtors' processes for accruing, clearing, and settling tax liabilities on a business unit level.

FTI also evaluated the application and utilization of various subsidiaries' attributes as they relate to the Consolidated EFH tax liability. Furthermore, FTI examined the accrual and utilization of net operating losses and alternative minimum tax credits and the methods through which tax attributes were shared among subsidiary entities. FTI further evaluated the Debtors' tax analysis, including analyzing the tax liabilities of various entities and reconciling differences between our analyses. FTI assessed the tax record keeping methods related to various IRS settlements and the impact towards TCEH and its subsidiaries. FTI frequently shared its findings and diligence observations in both written and oral communications with Committee Counsel. FTI also reviewed the first day motion seeking authorization to pay certain prepetition taxes and fees. During the Application period, the FTI team analyzing prepetition tax payments was supplemented to include individuals with specific tax expertise to evaluate complex tax structures and specific tax transactions.

### Code 38 – Analysis of Tax Impact on Restructuring Scenarios (988.5 hours)

During the Application Period, FTI analyzed various tax considerations of the Restructuring Support Agreement and the NextEra strategic proposal, including a review of the relevant requirements of the internal revenue code. Time in this task code also includes analyzing tax considerations of various potential tax-free and taxable restructuring transactions to evaluate the benefits and costs of each transaction in order to identify optimal tax structures for the benefit of the Committee. Evaluating restructuring alternatives was a critical element of this engagement as they impact recoveries of all secured and unsecured creditors. In continuation of our analysis, FTI

evaluated the tax basis of assets, net operating losses, depreciation recapture, and cancellation of debt income under multiple potential structures.

FTI also computed the claims that each of the restructuring alternatives would give rise to under the Competitive TSA. Furthermore, FTI assisted Committee counsel in evaluating the Debtors' Omnibus Tax Memorandum filed with the Court. FTI prepared numerous presentations to Committee Counsel outlining the aforementioned considerations and their financial impact to our client.

### Code 39 – Analysis of Alternative Tax Structure (1,222.7 hours)

The proposed REIT structure is a potential value maximizing element of a plan that could increase recoveries to both E-side and T-side creditors. Given the unique qualities and unprecedented nature of a utility REIT of this size, a thorough analysis of alternate REIT structures was necessary to evaluate REIT feasibility and the economic impacts to creditors. FTI assessed the structural requirements that transitioning a utility corporation into a REIT would entail. FTI analyzed the structure and economics of other REITS in order to assess potential obstacles and to create a framework in which Oncor could execute the proposed transaction. FTI also built a financial transaction model for the Oncor REIT, analyzing debt capacity and cash flow requirements, in order to determine whether the requirements for REIT qualification could be satisfied. This model enabled the Committee to assess the potential tax savings associated with various REIT structures, and to identify any funding requirements needed to satisfy distributions to REIT shareholders. During the Application period, the FTI team analyzing potential REIT structures was supplemented to include individuals with specific tax expertise to evaluate the structural requirements that transitioning a utility corporation into a REIT would entail.

### Actual and Necessary Costs and Expenses Incurred

19.     Reimbursement of expenses in the amount of $362,724.73 is sought herein. A categorized summary of the actual and necessary costs and expenses incurred by FTI during the

Application Period, is attached hereto as **Exhibit D.** FTI reserves the right to request, in subsequent fee applications, reimbursement of any additional expenses incurred during the Application Period, as such expenses may not have been captured in FTI's billing system on the date of filing this Fee Application.

### Statement from FTI Consulting, Inc.

20.     At all relevant times, FTI has been a disinterested person, as that term is defined at § 101(14) of the Bankruptcy Code, as modified by § 1103(b) of the Bankruptcy Code, and has not represented or held any interest adverse to any interest of the Committee.

21.     FTI has received no payment and no promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application. No agreement or understanding exists between FTI and any other entity (other than shareholders or employees of FTI), except with respect to Cambridge Energy Solutions ("CES")[8], for the sharing of compensation received or to be received for services rendered in or in connection with these cases.

22.     All services for which FTI requests compensation were performed at the direction or instruction of the Committee and for or on behalf of the Committee. The professional services and related expenses for which FTI requests quarterly allowance of compensation and reimbursement of expenses were rendered and incurred in connection with this case in the discharge of FTI's professional responsibilities as Financial Advisors to the Committee in the Debtors' Chapter 11 cases.

23.     FTI respectfully submit that, in accordance with the factors enumerated at § 330 of the Bankruptcy Code, the services provided were necessary and beneficial to the Committee, the

---

[8] As disclosed in paragraph 6 of the Retention Order and the *Supplemental Declaration of Steven Simms in Support of Application for the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., et al, for Entry of an Order Under Section 328(a) and 1103(a) of the Bankruptcy Code Authorizing the Employment and Retention of FTI Consulting, Inc. as Financial Advisor Effective May 19, 2014.*

Debtors' estates, creditors and other parties in interest and as such the compensation being sought for its services is fair and reasonable.

*[Remainder of page intentionally left blank.]*

**Notice**

24.     As required by the Administrative Order, a copy of this Fee Application has been served upon: (a) Energy Future Holdings Corp.; (b) co-counsel for the Debtors, Kirkland & Ellis LLP; (c) co-counsel to the Debtors', Richards Layton & Finger, P.A.; (d) the Office of the United States Trustee for the District of Delaware; (e) counsel for the agent of the EFIH First Lien DIP Financing Facility, Shearman & Sterling LLP; (f) counsel for the TCEH First Lien DIP Facility, Milbank, Tweed, Hadley & McCloy LLP; (g) counsel to the Committee of Unsecured Creditors, Morrison & Foerster LLP; and (h) counsel to the Fee Committee, Godfrey & Kahn, S.C. Notice of this Fee Application was served upon all parties requesting notice pursuant to Bankruptcy Rule 2002.

25.     WHEREFORE, FTI respectfully requests that the Court (i) approve and allow on a final basis the compensation requested and reimbursement of actual and necessary costs and expenses; and (ii) approve the payment of the 100% of allowed fees and expenses and (iii) provide such further relief as may be just and proper.[9]

Dated: 11/18/16                                  FTI CONSULTING, INC

                                                 By: */s/ Matthew Diaz*
                                                      Matthew Diaz
                                                      Three Times Square
                                                      New York, NY 10036
                                                      Telephone: 212-499-3611
                                                      E-mail: matthew.diaz@fticonsulting.com

---

[9] Paragraph 2(b) of the Administrative Order requires Professionals (as defined in the Administrative Order) to allocate any fees and expenses to the applicable Debtors for whose direct benefit such fees and expenses were incurred (such fees, the "Direct Benefit Fees"). FTI has incurred fees and expenses for the collective benefit of the TCEH Debtors. As a result, FTI has not attempted to break out the specific Direct Benefit Fees performed for the benefit of the TCEH Debtors since all of its fees and expenses would be allocated to the TCEH Debtors regardless under the Administrative Order. Thus, all of FTI's fees and expenses identified in this Final Fee Application should be paid by the TCEH Debtors.

## VERIFICATION PURSUANT TO DEL. BANKR.LR. 2016-2(f) AND 28 U.S.C. §1746(2)

I, Matthew Diaz, verify as follows:

1.      I am a Senior Managing Director with FTI Consulting, Inc. (together with its wholly owned subsidiaries, agents, independent contractors and employees, "FTI"). FTI has rendered professional services to the Official Committee of Unsecured Creditors (the "Committee") in this Chapter 11 case.

2.      I have read the foregoing application of FTI for compensation and reimbursement of expenses (the "Fee Application"). To the best of my knowledge, information and belief formed upon the basis of my participation in this case, as well as after reasonable inquiry, the facts set forth in the foregoing Fee Application are true and correct and materially comply with the applicable orders, rules, guidelines and requirements as set forth by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Del.Bankr.LR 2016-2, and the Executive Office for the United States Trustee.


Executed on: 11/18/16                      FTI CONSULTING, INC


                                           By: */s/ Matthew Diaz*
                                               Matthew Diaz
                                               Three Times Square
                                               New York, NY 10036
                                               Telephone: 212-499-3611
                                               E-mail: matthew.diaz@fticonsulting.com


                                           *Financial Advisors to the Official Committee*
                                           *of Unsecured Creditors*