8310 N. Capital of Texas Hwy.
Suite 490
Austin, Texas 78731
(512) 479-0300

306 West 7th St.
Suite 405
Fort Worth, Texas 76102
(817) 509-2025



# NAMAN HOWELL SMITH&LEE PLLC
ATTORNEYS AT LAW

10001 Reunion Place
Suite 600
San Antonio, Texas 78216
(210) 731-6300

400 Austin Avenue, Suite 800
P O Box 1470
Waco, Texas 76703-1470
(254) 755-4100

Kuk J Stewart
2028 Sandy Lane
Irving, TX 75060

Invoice 365460
May 7, 2014

ID: 33507-0003 - CBM
Re: Mineral Lease

For Services Rendered Through 4/30/2014

| | |
|---|---|
| Current Fees | 2,507.50 |
| Current Disbursements | 52.10 |
| Advanced Deposit Applied | -2,559.60 |

#### **** TOTAL DUE - PLEASE PAY THIS AMOUNT ***** 0.00

PLEASE RETURN THIS PAGE WITH PAYMENT TO:
NAMAN HOWELL SMITH & LEE PLLC
P O BOX 1470
WACO, TX 76703

| | |
|---|---|
| Advanced Deposit Balance | 0.00 |
| Trust Balance | 440.40 |

### Fee Recap

| | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Charles B. Mitchell | Member | 0.70 | 350.00 | 245.00 |
| Joe A. Rivera | Associate | 3.00 | 275.00 | 825.00 |
| Katie M. Copeland | Associate | 4.50 | 275.00 | 1,237.50 |
| Joe A. Rivera | Associate | 0.70 | 0.00 | 0.00 |
| Katie M. Copeland | Associate | 3.30 | 0.00 | 0.00 |
| Patty A. Rien | Paralegal | 1.00 | 200.00 | 200.00 |
| Patty A. Rien | Paralegal | 0.90 | 0.00 | 0.00 |
| | **Totals** | **14.10** | | **2,507.50** |

'LEGAL AND CONFIDENTIAL'
ATTORNEY - CLIENT AND ATTORNEY WORK PRODUCT PRIVILEGED
SEE REVERSE SIDE FOR IMPORTANT BILLING INFORMATION

BILLING INQUIRIES: BILLING@NAMANHOWELL.COM
IRS NO. 74-2004800

# Fax

## BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.
### Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
\* GRANT LISER
RICHARD W. WISEMAN
\*\*JOHN C. HART
JOHN W. PROCTOR
LARRY W. WILSHIRE

OF COUNSEL
CATHERINE JANE ALDER, P.C

\* Also licensed to practice in Louisiana
\*\* Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

SANDRA LISER
CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JAMES K. HURLBURT
JASON C. MOON

JESSE M. BROWN (1883-1978)
A. M. HERMAN (1905-1987)
WILLIAM M. BROWN (1912-1987)

**Name:** Nancy Croney
**Organization:** Re/Max Associates
**Fax:** (817) 488-4768
**Phone:**
**From:** Charles B. Mitchell, Jr., Esq.
**Date:** June *30*, 2004
**Subject:** Kuja Stewart
1800 and 1900 Hunter Ferrell Roads
Irving, Texas
Our File No.: 3251.22711

**Pages:** *5* (including fax cover sheet)

Comments:

THE INFORMATION CONTAINED IN THIS FACSIMILE IS LEGALLY PRIVILEGED AND
CONFIDENTIAL INFORMATION, WHICH IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR
ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT,
YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR
REPRODUCTION OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS
MESSAGE IN ERROR, THAT MATERIAL HEREWITH SHOULD BE DESTROYED IMMEDIATELY AND
THE SENDER LISTED ABOVE SHOULD BE NOTIFIED BY TELEPHONE AT (817) 332-1391.

## LETTER OF AGREEMENT

Kukja Stewart, Owner of the property known as 1800 and 1900 Hunter Ferrell Roads, Irving, Texas 75060 and Matbone Inc., prospective Buyer of said property hereby agree on the following terms and provisions:

The Owner will allow Matbone Inc., the right to enter above mentioned property for a period of thirty (30) days for the sole purpose of drilling core samples. Matbone, Inc agrees to indemnify and hold Owner harmless for any injuries or damage to person or equipment employed by or authorized by Matbone, Inc while working on this property during this study period. Matbone, Inc also agrees to fill in all holes drilled or dug on the property if they cannot come to an agreement for sale or lease with the Owner during this period. Matbone Inc., also agrees to share any and all findings and results with the Owners regarding the soil and mineral samples taken from this property within fifteen days after the testing takes place.

Matbone Inc may not erect any structure on the property or use the property for any other purposes beside those mentioned above. Matbone Inc. will be responsible for any fines from city government if they cause an infraction.

All equipment must be removed from the property on or before thirty days from the execution of this agreement or the Owner will charge a leasing fee of $_____ per day for every day thereafter.

_____          _____
Owner                              for Matbone, Inc.

## BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.

Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
GRANT LISER
RICHARD W. WISEMAN
JOHN C. HART
JOHN W. PROCTOR
LARRY W. WILSHIRE
SANDRA LISER

OF COUNSEL
CATHERINE JANE ALDER, P.C
* Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JASON C. MOON
JONATHAN E. CHEATHAM
JENNIFER L. WILLINGHAM

JESSE M. BROWN (1883-1978)
WILLIAM M. BROWN (1912-1987)

June 1, 2005
~~May 17, 2005~~

*Via First Class Mail*
Ms. Kuja Stewart
2028 Sandy Lane
Irving, Texas 75060

Re:    Kuja Stewart
Our File No.:   3251.22711

Dear Ms. Stewart:

Recently we received your check in the amount of $1,500.00 to cover the cost of the retainer for the legal services we discussed in our recent meeting. Based upon the legal matters you wanted handled by our firm, we had quoted you a retainer of $2,500.00. If there was a misunderstanding as to the amount of the retainer, please let us know at your earliest convenience. However, several legal items were singled out with the price at which they could be performed. Please refer to earlier correspondence from our office discussing the breakdown of the legal items you needed handled and the individual cost for each. It is our sincere desire to assist you with these legal matters but in order to do so, the remainder of the retainer must be received by our office in order to get started. Otherwise, you will need to identify which legal matters you would like handled for the $1,500.00 you furnished our office.

I would be happy to discuss this matter with you at your convenience. Likewise, should you have any questions, please do not hesitate to contact me.

Sincerely,

Jonathan E. Cheatham

JEC/khg
cc:    *Via Interoffice*
Charles B. Mitchell, Jr.
Patty Rien

W:\Charles\files\Individual Clients\Stewart, Kuja [Real Estate 22711]\Correspondence\Ltr to Ms. Stewart 006 05.16.05.wpd

# BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.
### Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
GRANT LISER
RICHARD W. WISEMAN
JOHN C. HART
JOHN W. PROCTOR
LARRY W. WILSHIRE
SANDRA LISER

OF COUNSEL
CATHERINE JANE ALDER, P.C.

*  Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

WRITER'S DIRECT DIAL (817) 820-1103
WRITER'S E-MAIL ADDRESS
jcheatham@browndean.com

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JASON C. MOON
JONATHAN E. CHEATHAM
JENNIFER L. WILLINGHAM

JESSE M. BROWN (1883-1978)
WILLIAM M. BROWN (1912-1987)

May 16, 2005

***Via First Class Mail***
Ms. Kuja Stewart
2028 Sandy Lane
Irving, Texas 75060

     Re:    Kuja Stewart
            Our File No.:  3251.22711

Dear Ms. Stewart:

     Recently we received your check in the amount of $1,500.00 to cover the cost of the retainer for the legal services we discussed in our recent meeting. Based upon the legal matters you wanted handled by our firm, we had quoted you a retainer of $2,500.00. If there was a misunderstanding as to the amount of the retainer, please let us know at your earliest convenience. However, several legal items were singled out with the price at which they could be performed. Please refer to earlier correspondence from our office discussing the breakdown of the legal items you needed handled and the individual cost for each. It is our sincere desire to assist you with these legal matters but in order to do so, the remainder of the retainer must be received by our office in order to get started. Otherwise, you will need to identify which legal matters you would like handled for the $1,500.00 you furnished our office.

     I would be happy to discuss this matter with you at your convenience. Likewise, should you have any questions, please do not hesitate to contact me.

                    Sincerely,

                    Jonathan E. Cheatham

JEC/khg
cc:   ***Via Interoffice***
      Charles B. Mitchell, Jr.
      Patty Rien

W:\Charles\files\Individual Clients\Stewart, Kuja [Real Estate 22711]\Correspondence\Ltr to Ms. Stewart 006 05.16.05.wpd



Stewart
/Real Estate
conv w/
client

## Charles Mitchell

**m:**     james stewart [JIMMYSTEWART@peoplepc.com]
**Sent:**   Thursday, May 26, 2005 9:56 PM
**To:**     Charles B. Mitchell
**Subject:** She's Back

ly mother came in from Korea and she wanted to know which oil lease of the two companies is better.  She also wanted to know
ince she did not sign the first lease, could there be an up in the ante so to speak between the two oil and gas companies.  A
idding war.

*Stewart*
*Real Estate*
*Copy w/client*

## Patty Rien

**From:** Charles B. Mitchell, Jr. [cmitchell@browndean.com]
**Sent:** Thursday, May 19, 2005 8:33 AM
**To:** Jonathan Cheatham (jcheatham@browndean.com)
**Cc:** Patty Rien
**Subject:** FW: Another Interested Oil and Gas Co.


Charles B. Mitchell, Jr

Brown, Dean, Wiseman, Liser, Proctor & Hart, L.L.P.

306 West 7th Street Suite 200

Fort Worth, Texas 76102-4905

Direct 817-820-1110

Metro 817-429-0851

Fax 817-870-2427

E-Mail: cmitchell@browndean.com


*******************

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

-----Original Message-----
**From:** james stewart [mailto:JIMMYSTEWART@peoplepc.com]
**Sent:** Thursday, May 19, 2005 12:57 AM
**To:** Charles B. Mitchell
**Subject:** Another Interested Oil and Gas Co.

I've been meaning to send this letter to you. My mother is in Korea and Kenny and I will discuss this along with other matters. Thanks.

# JOHNSON & SYLVAN, P.C.

**ATTORNEYS AND COUNSELORS**
**4440 RENAISSANCE TOWER**
**1201 ELM STREET**
**DALLAS, TEXAS 75270**
**(214) 748-4747**

TELECOPIER (214) 748-3191 or
(214) 744-3005
**MAILING ADDRESS:**
P.O. BOX 50189
DALLAS, TEXAS 75250

**CHARLES B. MITCHELL, JR.**

September 11, 1996

Mr. Kenny Stewart
901 E. Hunter Ferrell
Grand Prairie, Texas 75050

Re:   *Kuk Ja Stewart - Miscellaneous Matters*
J&S File No. TBA

Dear Kenny:

Enclosed please find the originals of the documents you forwarded to our office regarding your mother's case.  We have retained copies of same for our file.

Should you have any questions, please do not hesitate to call.

Best personal regards.

Sincerely yours,

Charles B. Mitchell, Jr.

CBM/blb
Enclosures

**EXHIBIT**

**B**

F:\JS\BARBIE\CBM\STEWART.LTR

formation contained in this e-mail message is intended only for the personal and confidential use of the recipient ed above. This message may be an attorney-client communication and/or work product and as such is privileged d confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to e intended recipient, you are hereby notified that you have received this document in error and that any review, ssemination, distribution, or copying of this message is strictly prohibited. If you have received this communication error, please notify us immediately by e-mail, and delete the original message.

-----Original Message-----
**From:** james stewart [mailto:JIMMYSTEWART@peoplepc.com]
**Sent:** Monday, April 11, 2005 1:51 AM
**To:** Charles B. Mitchell
**Subject:** 40 Acres

I have the maps to the property. Hong UK Kim was a very good friend of my mom's and lived with her for 14 years and passed away in April of 2003. The payment is August 6th 2000 and the second payment is April 2001. The land belonged to John L.. Tipton, he passed away and his wife Margaret has or had control of it. She had a stroke in Nov. of 2004 and is confined to a nursing home. Pam, Don's sister has been the problem about releasing the land. Apparently, Don's wife went and talked to Pam, who then told her the Social Security has or is taken the land for paying her nursing home bills. Pam also stated that the SS has my mothers check and will give her share(40) acres if she comes up with a copy of the other two checks, if not they will mail my mom 5000 dollars. Now what is underlined just transpired over the weekend. I talked to Don Friday night and told him we were going to file suit against his mother. He said he would testify against her. The check that is in the attachments was written by Margaret T. for 2 years of taxes. My mom can't write to well. I told my mother she needs to get the will probated, but believes after what she heard last night, form Don, that everything will be OK. You can call me or e-mail me to let me know what we need to do. One other item, I just want to let you know that I called Jon C. to let him know about the errors in the letter my mom received. Don is not a relative and that my mother is keeping the land and building. the letter did not state keeping the land, this is reference to turning the JSC over to Kenny.

**rles Mitchell**

**From:** Jonathan Cheatham [jcheatham@browndean.com]
**Sent:** Friday, April 08, 2005 1:37 PM
**To:** Charles Mitchell; Patty Rien
**Subject:** FW: 40 acres in Smith County

haven't looked at these yet but saw that they came to my attention and not yours that I can tell.   JEC

nathan Cheatham
rown, Dean, Wiseman, Liser, Proctor & Hart, LLP
)6 West 7th Street, Suite 200
:. Worth, Texas 76102
17) 820-1103-direct
17)870-2427-fax
heatham@browndean.com

**rom:** james stewart [mailto:JIMMYSTEWART@peoplepc.com]
**ent:** Thursday, April 07, 2005 12:35 AM
**o:** Jonathan E Cheatham
**ubject:** 40 acres in Smith County

n going to try to put this in a nutshell. My mom is good friends with Don Tipton and Don's wife, they probably have known each her for about 20-25 years. My mom bought the acreage from Don's mother. Don's sister is the one causing all the problems. me is Pam Mahan, Don has told my mother that he and his sister don't get along at all.  When my mother went to Tyler ekend we met with you and Charlie. She said everything was going to be taking care of, but now Don's sister is saying my ever bought the land. Attachments are the hand written statement of sale along with another payment to Don's mom of 5000.00.

/8/2005

Message

Stewart
Estate
Cere w/cheat

## Charles Mitchell

**From:**    Charles B. Mitchell, Jr. [cmitchell@browndean.com] on behalf of Charles Mitchell

**Sent:**    Monday, April 11, 2005 10:47 AM

**To:**    'james stewart'

**Cc:**    Jonathan Cheatham (jcheatham@browndean.com); Patty Rien

**Subject:** RE: 40 Acres

mmy:
What transpired over the weekend your email states two different senarios:
   1) Social Security deeds the property to your mom, or
   2) Social Security sends your mom a check for $5,000.00

Which is it?

The Kim will is not a self proving will under Texas Law, this means it will have to go thru a full probate hearing. I assume you or our mom has the original will with original signatures? A full probate will be expensive so unless Kim had a lot of property or we 'e pretty certain of recovering the Forty Acres it may not be worth probating the will..

y be important as to whether Maragret actually had title to the land if she didn't then your mom maybe out her money and ould only get a judgment against her individually. If this is the case there maybe no reason to pursue a recovery from M. Tipton nce she apparently doesn't have any other assets.

me know the answers these questions.

harles B. Mitchell, Jr

rown, Dean, Wiseman, Liser, Proctor & Hart, L.L.P.

06 West 7th Street Suite 200

ort Worth, Texas 76102-4905

irect 817-820-1110

letro 817-429-0851

ax 817-870-2427

il: cmitchell@browndean.com


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



## Charles Mitchell

**From:** Charles B. Mitchell, Jr. [cmitchell@browndean.com] on behalf of Charles Mitchell
**Sent:** Monday, April 11, 2005 10:47 AM
**To:** 'james stewart'
**Cc:** Jonathan Cheatham (jcheatham@browndean.com); Patty Rien
**Subject:** RE: 40 Acres

Jimmy:
What transpired over the weekend your email states two different senarios:
1) Social Security deeds the property to your mom, or
2) Social Security sends your mom a check for $5,000.00

Which is it?

The Kim will is not a self proving will under Texas Law, this means it will have to go thru a full probate hearing. I assume you or your mom has the original will with original signatures? A full probate will be expensive so unless Kim had a lot of property or we are pretty certain of recovering the Forty Acres it may not be worth probating the will..

It may be important as to whether Maragret actually had title to the land if she didn't then your mom maybe out her money and could only get a judgment against her individually. If this is the case there maybe no reason to pursue a recovery from M. Tipton since she apparently doesn't have any other assets.

me know the answers these questions.


Charles B. Mitchell, Jr

Brown, Dean, Wiseman, Liser, Proctor & Hart, L.L.P.

306 West 7th Street Suite 200

Fort Worth, Texas 76102-4905

Direct 817-820-1110

Metro 817-429-0851

Fax 817-870-2427

E-Mail: cmitchell@browndean.com


*******************

4/11/2005

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient (s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

-----Original Message-----
**From:** james stewart [mailto:JIMMYSTEWART@peoplepc.com]
**Sent:** Monday, April 11, 2005 1:51 AM
**To:** Charles B. Mitchell
**Subject:** 40 Acres

I have the maps to the property. Hong UK Kim was a very good friend of my mom's and lived with her for 14 years and passed away in April of 2003. The payment is August 6th 2000 and the second payment is April 2001. The land belonged to John L.. Tipton, he passed away and his wife Margaret has or had control of it. She had a stroke in Nov. of 2004 and is confined to a nursing home. Pam, Don's sister has been the problem about releasing the land. Apparently, <u>Don's wife went and talked to Pam, who then told her the Social Security has or is taken the land for paying her nursing home bills. Pam also stated that the SS has my mothers check and will give her share(40) acres if she comes up with a copy of the other two checks, if not they will mail my mom 5000 dollars. Now what is underlined</u> just transpired over the weekend. I talked to Don Friday night and told him we were going to file suit against his mother. He said he would testify against her. The check that is in the attachments was written by Margaret T. for 2 years of taxes. My mom can't write to well. I told my mother she needs to get the will probated, but believes after what she heard last night, form Don, that everything will be OK. You can call me or e-mail me to let me know what we need to do. One other item, I just want to let you know that I called Jon C. to let him know about the errors in the letter my mom received. Don is not a relative and that my mother is keeping the land and building. the letter did not state keeping the land, this is reference to turning the JSC over to Kenny.

4/11/2005

### Charles Mitchell

**From:**    james stewart [JIMMYSTEWART@peoplepc.com]
**Sent:**    Monday, April 11, 2005 1:51 AM
**To:**      Charles B. Mitchell
**Subject:** 40 Acres

I have the maps to the property.  Hong UK Kim was a very good friend of my mom's and lived with her for 14 years and passed away in April of 2003.  The payment is August 6th 2000 and the second payment is April 2001.  The land belonged to John L.. Tipton, he passed away and his wife Margaret has or had control of it.  She had a stroke in Nov. of 2004 and is confined to a nursing home.  Pam, Don's sister has been the problem about releasing the land.  Apparently, Don's wife went and talked to Pam, who then told her the Social Security has or is taken the land for paying her nursing home bills.  Pam also stated that the SS has my mothers check and will give her share(40) acres if she comes up with a copy of the other two checks, if not they will mail my mom 5000 dollars.  Now what is underlined just transpired over the weekend.  I talked to Don Friday night and told him we were going to file suit against his mother.  He said he would testify against her.  The check that is in the attachments was written by Margaret T. for 2 years of taxes.  My mom can't write to well.  I told my mother she needs to get the will probated, but believes after what she heard last night, form Don, that everything will be OK.  You can call me or e-mail me to let me know what we need to do.  One other item, I just want to let you know that I called Jon C. to let him know about the errors in the letter my mom received.  Don is not a relative and that my mother is keeping the land and building.  the letter did not state keeping the land, this is reference to turning the JSC over to Kenny.



## SCOTT K. WILPITZ, CPL

**PETROLEUM LANDMAN**

7230 STONETRAIL DRIVE
DALLAS, TEXAS 75230
214.696.3997 (OFFICE)
214.673.8719(MOBILE)

May 13, 2005

Mr. Kuk Ja Stewart
2028 Sandy Lane
Irving, Texas 75060-5639

RE:  Oil and Gas Lease Proposal
     9.47 acres/33.33 acres, J. Mangrum Survey, A-861
     Dallas County, Texas

Dear Mr. Stewart:

We have initiated a title review of the above captioned tract of land for the purpose of determining the mineral ownership, and our initial review indicates that you are the owner of a mineral interest underlying said land. The group I am working with is Scout Exploration, J.V. out of Dallas, Texas, and they have identified this area for possible oil and gas drilling opportunities and desire to secure an oil and gas lease on your minerals for the following proposed terms: Five (5) year term, 1/5th royalty and $300 per acre bonus consideration.

Due to the difficult nature of the title in this particular area we have not performed a full title review as of yet, as it will entail considerably more time and expense to make a complete determination of the mineral ownership. Therefore, it is our desire to enter into discussions to see if we can come to an agreement on leasing your minerals before we proceed with any further title work. In addition to the title issues, this area has inherent complications due to the proximity of flood-plain, flood-way and wetlands designations which can often be difficult to manage, but the owners of Scout have worked in these types of areas in the Dallas-Ft.Worth Metroplex and offer an expertise and working knowledge which will be most helpful as we proceed with this project. Their familiarity in real estate and the surface issues related to land development will also prove beneficial. We would greatly appreciate the opportunity to discuss our proposal with you and answer any questions that you might have. I appreciate your consideration to our request and invite you to call me to further discuss our proposal. **The best contact number for me is my cell phone, which is 214.673.8719.**

Very truly yours,

Scott K. Wilpitz

# SCOTT K. WILPITZ, CPL

**PETROLEUM LANDMAN**

7230 STONETRAIL DRIVE
DALLAS, TEXAS 75230
214.696.3997 (OFFICE)
214.673.8719(MOBILE)

May 13, 2005

Mr. Kuk Ja Stewart
2028 Sandy Lane
Irving, Texas 75060-5639

RE:     Oil and Gas Lease Proposal
        9.47 acres/33.33 acres, J. Mangrum Survey, A-861
        Dallas County, Texas

Dear Mr. Stewart:

We have initiated a title review of the above captioned tract of land for the purpose of determining the mineral ownership, and our initial review indicates that you are the owner of a mineral interest underlying said land. The group I am working with is Scout Exploration, J.V. out of Dallas, Texas, and they have identified this area for possible oil and gas drilling opportunities and desire to secure an oil and gas lease on your minerals for the following proposed terms: Five (5) year term, 1/5th royalty and $300 per acre bonus consideration.

Due to the difficult nature of the title in this particular area we have not performed a full title review as of yet, as it will entail considerably more time and expense to make a complete determination of the mineral ownership. Therefore, it is our desire to enter into discussions to see if we can come to an agreement on leasing your minerals before we proceed with any further title work. In addition to the title issues, this area has inherent complications due to the proximity of flood-plain, flood-way and wetlands designations which can often be difficult to manage, but the owners of Scout have worked in these types of areas in the Dallas-Ft.Worth Metroplex and offer an expertise and working knowledge which will be most helpful as we proceed with this project. Their familiarity in real estate and the surface issues related to land development will also prove beneficial. We would greatly appreciate the opportunity to discuss our proposal with you and answer any questions that you might have. I appreciate your consideration to our request and invite you to call me to further discuss our proposal. **The best contact number for me is my cell phone, which is 214.673.8719.**

Very truly yours,

Scott K. Wilpitz

# BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.

### Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
* GRANT LISER
RICHARD W. WISEMAN
** JOHN C. HART
JOHN W. PROCTOR
LARRY W. WILSHIRE
SANDRA LISER

OF COUNSEL
CATHERINE JANE ALDER, P.C

* Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

WRITER'S DIRECT DIAL (817) 820-1103
WRITER'S E-MAIL ADDRESS
jcheatham@browndean.com

May 16, 2005

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JASON C. MOON
JONATHAN E. CHEATHAM
JENNIFER L. WILLINGHAM

JESSE M. BROWN (1883-1978)
WILLIAM M. BROWN (1912-1987)

*Via First Class Mail*
Ms. Kuja Stewart
2028 Sandy Lane
Irving, Texas 75060

Re:     Kuja Stewart
        Our File No.:  3251.22711

Dear Ms. Stewart:

Recently we received your check in the amount of $1,500.00 to cover the cost of the retainer for the legal services we discussed in our recent meeting. Based upon the legal matters you wanted handled by our firm, we had quoted you a retainer of $2,500.00. If there was a misunderstanding as to the amount of the retainer, please let us know at your earliest convenience. However, several legal items were singled out with the price at which they could be performed. Please refer to earlier correspondence from our office discussing the breakdown of the legal items you needed handled and the individual cost for each. It is our sincere desire to assist you with these legal matters but in order to do so, the remainder of the retainer must be received by our office in order to get started. Otherwise, you will need to identify which legal matters you would like handled for the $1,500.00 you furnished our office.

I would be happy to discuss this matter with you at your convenience. Likewise, should you have any questions, please do not hesitate to contact me.

Sincerely,

Jonathan E. Cheatham

JEC/khg
cc:     *Via Interoffice*
        Charles B. Mitchell, Jr.
        Patty Rien

W:\Charles\files\Individual Clients\Stewart, Kuja [Real Estate 22711]\Correspondence\Ltr to Ms. Stewart 006 05.16.05.wpd

*Steward*
*Real Estate*
*Corr w/client*

## Patty Rien

| | |
|---|---|
| **From:** | Charles B. Mitchell, Jr. [cmitchell@browndean.com] |
| **Sent:** | Thursday, May 19, 2005 8:33 AM |
| **To:** | Jonathan Cheatham (jcheatham@browndean.com) |
| **Cc:** | Patty Rien |
| **Subject:** | FW: Another Interested Oil and Gas Co. |

Charles B. Mitchell, Jr

Brown, Dean, Wiseman, Liser, Proctor & Hart, L.L.P.

306 West 7th Street Suite 200

Fort Worth, Texas 76102-4905

Direct 817-820-1110

Metro 817-429-0851

Fax 817-870-2427

E-Mail: cmitchell@browndean.com

*******************

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

-----Original Message-----
**From:** james stewart [mailto:JIMMYSTEWART@peoplepc.com]
**Sent:** Thursday, May 19, 2005 12:57 AM
**To:** Charles B. Mitchell
**Subject:** Another Interested Oil and Gas Co.

I've been meaning to send this letter to you. My mother is in Korea and Kenny and I will discuss this along with other matters. Thanks.

5/19/2005

## arles Mitchell

**From:** james stewart [JIMMYSTEWART@peoplepc.com]
**Sent:** Thursday, May 19, 2005 12:57 AM
**To:** Charles B. Mitchell
**Subject:** Another Interested Oil and Gas Co.

I've been meaning to send this letter to you.  My mother is in Korea and Kenny and I will discuss this along with other matters.
Thanks.

## rles Mitchell

**From:** james stewart [JIMMYSTEWART@peoplepc.com]
**Sent:** Thursday, May 26, 2005 9:56 PM
**To:** Charles B. Mitchell
**Subject:** She's Back

My mother came in from Korea and she wanted to know which oil lease of the two companies is better.  She also wanted to know since she did not sign the first lease, could there be an up in the ante so to speak between the two oil and gas companies.  A bidding war.

# Fax

## BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.
### Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
* GRANT LISER
RICHARD W. WISEMAN
** JOHN C. HART
JOHN W. PROCTOR
LARRY W. WILSHIRE

OF COUNSEL
CATHERINE JANE ALDER, P.C

* Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

SANDRA LISER
CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JAMES K. HURLBURT
JASON C. MOON

JESSE M. BROWN (1883-1978)
A. M. HERMAN (1905-1987)
WILLIAM M. BROWN (1912-1987)

**Name:**          Mr. Gary Fennell
**Organization:**  Engineering Division
**Fax:**           (972) 721-2592
**Phone:**
**From:**          Charles B. Mitchell, Jr., Esq.
**Date:**          June  30 , 2004
**Subject:**       Kuja Stewart
                   1800 and 1900 Hunter Ferrell Roads
                   Irving, Texas
                   Our File No.:          3251.22711

**Pages:**           5   (including fax cover sheet)

Comments:

THE INFORMATION CONTAINED IN THIS FACSIMILE IS LEGALLY PRIVILEGED AND
CONFIDENTIAL INFORMATION, WHICH IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR
ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT,
YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR
REPRODUCTION OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS
MESSAGE IN ERROR, THAT MATERIAL HEREWITH SHOULD BE DESTROYED IMMEDIATELY AND
THE SENDER LISTED ABOVE SHOULD BE NOTIFIED BY TELEPHONE AT (817) 332-1391.

**BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.**
Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
• GRANT LISER
RICHARD W. WISEMAN
•• JOHN C. HART
JOHN W. PROCTOR
LARRY W. WILSHIRE

OF COUNSEL
CATHERINE JANE ALDER, P.C

• Also licensed to practice in Louisiana
•• Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

SANDRA LISER
CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JAMES K. HURLBURT
JASON C. MOON

JESSE M. BROWN (1883-1978)
A. M. HERMAN (1905-1987)
WILLIAM M. BROWN (1912-1987)

July 8, 2004

Mr. Steven Reed
Community Development Manager
825 W. Irving Blvd.
Irving, Texas 75060

> Re:   Kuja Stewart
>        1800 and 1900 Hunter Ferrell Roads
>        Irving, Texas
>        Our File No.:      3251.22711

Dear Mr. Reed:

I am in receipt of the July 1, 2004 correspondence from David Caylor, City Attorney for the City of Irving. As of today's date, I have not heard from you with regard to this matter. Please contact me as soon as possible so that we may determine what development can take place and transfer sale of property with regard to these plots of land.

Sincerely yours,

Charles B. Mitchell, Jr

CBM:mm

cc:    Mr. Ed Berry
       Community Development Director
       825 W. Irving Blvd., Dept. 15
       Irving, Texas 75060

W:\Charles\files\Individual Clients\Stewart, Kuja [Real Estate 22711]\Correspondence\Ltr to Mr. Reed 001 070804.wpd

Mr. Steven Reed
July 8, 2004
Page 2

cc:    Jim Cline
Public Works and Transportation Director
825 W. Irving Blvd., Dept. 15
Irving, Texas 75060

Gary Fennell
Senior Civil Engineering
825 W. Irving Blvd.
Irving, Texas 75060

Jim Driscoll
Assistant Director/Traffic
825 W. Irving Blvd.
Irving, Texas 75060

Robert Ruthven, Planner
825 W. Irving Blvd.
Irving, Texas 75060

David Caylor
City Attorney
City Attorney's Office
825 W. Irving Blvd.
Irving, Texas 75060

Kuja Stewart
2028 Sandy Lane
Irving, Texas 75060

TO: CBM
PR

KUJA STEWART/REAL
ESTATE

MM
7/2/04



**IRVING**

July 1, 2004

Mr. Charles B. Mitchell, Jr.
Brown, Dean, Wiseman, Liser, Proctor & Hart, L.L.P.
306 West 7th Street, Suite 200
Fort Worth, Texas 76102-4905

      Re:   Kuja Stewart
             1800 and 1900 Hunter Ferrell Road
             Irving, Texas
             Your File No.:  3251.22711

Dear Mr. Mitchell:

      I am in receipt of your letter dated June 30, 2004, relative to the above referenced matter. I have referred this matter to Mr. Steven Reed, Community Development Manager for the City of Irving.

      Mr. Reed will communicate further with you about how you can obtain the information you need.

      If you need anything further please contact me.

               Sincerely,

               David Caylor
               City Attorney

DC:dkm

cc:   Ed Barry, Community Development Director
      Steven Reed, Community Development Manager
      Jim Cline, Public Works and Transportation Director
      Jim Driscoll, Assistant Director/Traffic
      Garry Fennell, Senior Civil Engineer
      Robert Ruthven, Planner



**CITY OF IRVING**
City Attorney's Office
825 W. Irving Blvd.
Irving, Texas 75060



02 1A
0004321889      JUL 01  2004
$ 00.37⁰
MAILED FROM ZIP CODE 75060



MR CHARLES B MITCHELL JR
BROWN DEAN WISEMAN LISER PROCTOR & HART LLP
306 WEST 7TH ST SUITE 200
FORT WORTH TX 76102-4905

76102+4905 62

# HOLMAN ROBERTSON ELDRIDGE

A Professional Corporation
Attorneys and Counselors
5949 Sherry Lane
Suite 1700
Dallas, Texas 75225

Shareholders:
H. DOUGLAS BAER
CHARLES R. BIDDLE
RICHARD T. CHEATHAM
DAVID A. ELDRIDGE
RONALD O. HOLMAN
JOHN CROW MILLER
J. MALCOLM ROBERTSON, JR.
ROBERT A. SOLOMON

Telephone
214 / 361-9494

Writer's Extension
113

Facsimile
214 / 691-2109

Writer's E-Mail Address
rholman@hrepc.com

July 19, 2005

VIA FAX 817/870-2427
Mr. Charles B. Mitchell, Jr.
Brown, Dean, Wiseman, Liser,
    Proctor & Hart, L.L.P.
306 West 7th Street, Suite 200
Fort Worth, Texas 76102-4905

Re:     Letter of intent dated June 10, 2005 by and between Kuk Ja Stewart, as Lessor, and
        Scout Exploration, J.V., as Lessee

Dear Mr. Mitchell:

As you will recall, I represent Scout Exploration, J.V. in connection with the referenced
letter of intent. As of the time I am writing this letter, neither my client nor I have had any
communications regarding the proposed Oil and Gas Lease I sent you on June 29. I would
appreciate it if you would call me so we can finalize this transaction.

I look forward to hearing form you.

Very truly yours,

Ronald O. Holman

ROH/lma

cc:     Scout Exploration, J.V.

H:\05\ROH\SCOUT\MITCHELL-L01.doc

```
*******************************************************************************
X                                                                           X
X              Case 14-1097■SS   Doc 10223-5   Filed 11/18/1■  Page 30 of 115    P. 01   X
X                              TRANSACTION REPORT                            X
X                                                                           X
X                                              SEP-27-2005 TUE 04:40 PM      X
X     FOR:                                                                  X
X                                                                           X
X  DATE  START     RECEIVER         TX TIME   PAGES TYPE      NOTE        M#  DP  X
X                                                                           X
X  SEP-27 04:36 PM ##00696#2148919855  3'43"    6  SEND        OK        931    X
X                                                                           X
X                                       TOTAL :     3M 43S  PAGES:  6        X
X                                                                           X
*******************************************************************************
```

# Fax

**Name:**           Mr. Wallace Hall
**Organization:**   Scout Exploration, J.V.
**Fax:**            (214) 891-985.
**Phone:**
**From:**           Sterling J. Elza
**Date:**           September 27, 2005
**Subject:**        Kuja Stewart
                    Our File No.:       3251.22711

**Pages:**          __6__ (including fax cover sheet)

Comments:           Please see attached.

# Fax

| | |
|---|---|
| **Name:** | Mr. Wallace Hall |
| **Organization:** | Scout Exploration, J.V. |
| **Fax:** | (214) 891-9855 |
| **Phone:** | |
| **From:** | Sterling J. Elza |
| **Date:** | September 27, 2005 |
| **Subject:** | Kuja Stewart |
| | Our File No.:        3251.22711 |

**Pages:**        ___6__ (including fax cover sheet)

Comments:        Please see attached.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS LEGALLY PRIVILEGED AND CONFIDENTIAL INFORMATION, WHICH IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR REPRODUCTION OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS MESSAGE IN ERROR, THAT MATERIAL HEREWITH SHOULD BE DESTROYED IMMEDIATELY AND THE SENDER LISTED ABOVE SHOULD BE NOTIFIED BY TELEPHONE AT (817) 332-1391.

**BROWN, D⬤ I, WISEMAN, LISER, PROCTOR & ⬤ RT, L.L.P.**

Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
⬤RANT LISER
⬤HARD W. WISEMAN
⬤HN W. PROCTOR
⬤HN C. HART
⬤RRY W. WILSHIRE
⬤ANDRA LISER

OF COUNSEL
CATHERINE JANE ALDER, P.C

\* Also licensed to practice in Louisiana
\*\* Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JASON C. MOON
JENNIFER L. WILLINGHAM

JESSE M. BROWN (1883-1978)
WILLIAM M. BROWN (1912-1987)

September 27, 2005

*Via Fax - 214/891-9855 and Regular Mail*
Mr. Wallace Hall
Scout Exploration, J.V.
5956 Sherry Lane, Suite 1810
Dallas, Texas 75225

Dear Mr. Hall:

Attached please find the signed and notarized copy of the Paid Up Oil and Gas Lease. Once Scout Exploration has signed the Lease, please provide me with a copy and then file the appropriate documents with the County Clerk.

Please feel free to contact me with any questions you may have.

Sincerely,

Sterling J. Elza

SJE/jj
Enclosure

cc:   Mr. Charles B. Mitchell, Jr. - Firm

September 27, 2005
Page 2

_____

bcc:   UP_G_KUK, Inc.
        c/o Kuk Ja Stewart
        2028 Sandy Lane
        Irving, Texas 75060

W:\CHARLES\FILES\INDIVIDUAL CLIENTS\STEWART, KUJA [REAL ESTATE 22711]\CORRESPONDENCE\HALL.002.WPD

**BROWN, D.    N, WISEMAN, LISER, PROCTOR & I    RT, L.L.P.**

Attorneys at Law

BEALE DEAN
AMES T. BLANTON
RANT LISER
ICHARD W. WISEMAN
** JOHN C. HART
JOHN W. PROCTOR
LARRY W. WILSHIRE

OF COUNSEL
CATHERINE JANE ALDER, P.C

* Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

SANDRA LISER
CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JAMES K. HURLBURT
JASON C. MOON

JESSE M. BROWN (1883-1978)
A. M. HERMAN (1905-1987)
WILLIAM M. BROWN (1912-1987)

June 30, 2004

David Caylor                                            **VIA FACSIMILE - (972) 721-2750**
City Attorney
825 W. Irving Blvd.
Irving, Texas 75060

     Re:   Kuja Stewart
           1800 and 1900 Hunter Ferrell Roads
           Irving, Texas
           Our File No.:    3251.22711

Dear Mr. Caylor:

The undersigned represents Kuja Stewart with regard to property at 1800 and 1900 Hunter Ferrell Roads. Her real estate agent, Nancy Croney, has attempted to resolve issues with the City with regards to these lots as my client's agent currently has a buyer that is interested in dividing the 9.47 acres on the 1800 Hunter Ferrell plot. Ms. Croney has spoken with Ron Ruthven, City Planner, as to what may be needed in order to develop that property. Thus far, Ms. Croney has not received any response to her email correspondence to Mr. J. Driscoll and Mr. G. Fennell, copies of which are attached. That email correspondence was, of course, sent as indicated on April 29, 2004. This issue needs to be resolved so that my client can develop this property and sell same. I request a written response from the City of Irving with regard to any restrictions, proposed right-of-ways, easements or restrictions on the sale and development of these two parcels of land.

If you have any questions or concerns, please do not hesitate to contact me.

Sincerely yours,

Charles B. Mitchell, Jr.

CBM:mm
Enclosures

W:\Charles\files\Individual Clients\Stewart, Kuja [Real Estate 22711]\Correspondence\Ltr to City Attorney 001 063004.wpd

June 30, 2004
Page

cc:     Mr. Ed Berry                                          **VIA FACSIMILE**
        Community Development
        825 W. Irving Blvd., Dept. 15
        Irving, Texas 75060

        Gary Fennell                                         **VIA FACSIMILE**
        Engineering Division
        825 W. Irving Blvd.
        Irving, Texas 75060

        Jim Driscoll                                         **VIA FACSIMILE**
        Traffic Division
        825 W. Irving Blvd.
        Irving, Texas 75060

        Nancy M. Croney                                      **VIA FACSIMILE**
        Re/Max Associates
        6201 Colleyville Blvd.
        Colleyville, Texas 76034

        Kuja Stewart
        2028 Sandy Lane
        Irving, Texas 75060

BEALE DEAN
JAMES T. BLANTON
• GRANT LISER
RICHARD W. WISEMAN
STEPHEN C. HOWELL
━━━━━•━OCTOR
••JOHN C. HART
LARRY W. WILSHIRE
SANDRA LISER
JOHN G. SAMS

JESSE M. BROWN (1883-1978)

* Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota



**BROWN DEAN**

Wiseman, Proctor, Hart & Howell  LLP
ATTORNEYS AND COUNSELORS

ESTABLISHED 1922

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
DAVID W. CHANT
JASON C. MOON
JENNIFER L. WILLINGHAM
ROBERT K. PIWETZ
BROOKE A. ULRICKSON
ADAM L. PLUMBLEY

OF COUNSEL
CATHERINE JANE ALDER, P.C

February 22, 2010

Cathy Dodson                                    **VIA E-MAIL (w/encl.)**
Dallas County Public Works    **AND VIA CMRRR NO. 7007 1490 0002 7001 7331 (w/encl.)**
411 Elm Street, 4th Floor
Dallas, Texas 75202

Re:    Hunter Ferrell Rd. MCIP 40704/40805
       (Belt Line Rd. to MacArthur Blvd.)
       Parcel: 22, 22-SE (1,2,3) & (1,2,3) (1800 Hunter Ferrell Rd.)
       Our File No.: 3204.24458

Dear Ms. Dodson:

       Enclosed please find the executed settlement documents on behalf of UP_G_KUK, INC.,
regarding the above-referenced matter as follows:

       1.     Certification of Nonforeign Status;
       2.     Seller's Statement;
       3.     Temporary Easement;
       4.     Easement regarding grading;
       5.     Right-of-Way Deed, and
       6.     Easement regarding drainage.

       It is my understanding that you will append the exhibits to these respective transfer
documents and will then provide me with a fully executed copy of same.

Cathy Dodson
February 22, 2010
Page 2

Should you have any questions, please do not hesitate to call.

Sincerely yours,

Adam L. Plumbley

ALP/pr/mm
Enclosures

cc:    Charles B. Mitchell, Jr.  (w/firm) (w/o encls.)

BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.
306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

Ms. Kuja Stewart
2028 Sandy Lane
Irving, Texas 75060





**IRVING**

July 20, 2004

Kuja Stewart
2028 Sandy Lane
Irving, TX 75060

Re: 1800 and 1900 Hunter Ferrell Road

Dear Ms. Stewart:

On July 16, 2004, a meeting was held on the second floor of the City of Irving Civic Center to discuss the development requirements for your property located at 1800 and 1900 Hunter Ferrell Road. The following information was discussed at that meeting.

- The property is currently zoned AG Agricultural under the City's Comprehensive Zoning Ordinance. Attached is a summary of the AG district that lists the permitted uses. Development of the property with any use other than those currently permitted by the AG district would first require a change of zoning.

- The property is not platted. The property must be platted prior to any subdivision of the property for sale or development, and/or prior to the issuance of any building permits for any new construction. At the time of platting, rights-of-way for future streets and easements for utilities must be dedicated, and construction plans for such improvements will be required to be submitted for approval. Water lines, sanitary sewer lines and drainage facilities must be extended and constructed to service the site prior to issuance of any building permits.

- The City of Irving Master Thoroughfare Plan shows Hunter Ferrell Road being re-aligned through this property, and future Trinity Blvd. being connected to the re-aligned Hunter Ferrell Road. The placement of any improvements on the property should recognize this eventuality.

- All of the property is in the 100-year flood plain, and much of it is in the floodway, as determined by the official flood plain maps for the City of Irving.

- Any new structure must be elevated a minimum of two (2) feet above the 100-year flood plain elevation, which is 438.0 - 438.5 ft. at this location. Thus, any structure must have a finished floor elevation of 440.0 – 440.5 ft. The existing grade is approximately ten (10) feet below this elevation.

1800 – 1900 Hunter Ferrell
Page 2

- Any reclamation of flood plain or floodway area must first obtain approval of a Corridor Development Certificate (CDC). Such reclamation cannot produce any loss of valley storage. The proposed development will be entered into the CDC model at the U.S. Army Corps. of Engineers office in Fort Worth. A wetlands expert must show what wetlands are being impacted as part of this process.

- Drainage improvements adequate for the 25-year design must be made to the southern ditch as part of any development of the site.

- Because the adjacent street is below the 100-year flood plain elevation, there is no emergency access to the property during flood conditions. You may wish to contact the Irving Fire Department to discuss alternate means of fire protection and ambulance access, as well as evacuation procedures prior to flood events.

The above information summarizes the issues discussed during this meeting. Please retain this letter for your future reference. If you need any further information regarding zoning and/or platting, please contact me at 972-721-2424. Detailed information about the flood plain issues may be obtained from Garry Fennell at 972-721-2611. Detailed information regarding rights-of-way and road alignments may be obtained from Dan Vedral at 972-721-2646.

Sincerely,

Steven A. Reed
Manager of Current Planning

cc:     Charles B. Mitchell, Jr.
        Brown, Dean, Wiseman, Liser, Proctor & Hart, LLP
        306 W. 7th Street, Suite 200
        Fort Worth, TX 76102-4905

        Nancy Croney
        The Croney Team
        2409 Twelve Oaks
        Colleyville, TX 76034

        Jimmy Stewart
        2028 Sandy Lane
        Irving, TX 75060

        David Caylor, City Attorney
        Edward J. Barry, Community Development Director
        Jim Cline, Public Works and Transportation Director
        Jim Driscoll, Assistant Director, Transportation
        Gary Fennell, Senior Civil Engineer
        Dan Vedral, Transportation Engineer

(e) *Height and area regulations:* The following maximum heights and area regulations shall be observed:

(1) Height of principal structure: one-half the shortest distance between the structure and the nearest developed lot in an "R" or "A" district used for dwelling purposes, or three (3) stories or fifty (50) feet, whichever is least.

(2) Height of accessory structure: one-half the shortest distance between the structure and the nearest developed lot in an "R" or "A" district used for dwelling purposes or one story, or thirty (30) feet, whichever is least.

(3) No structure may be erected to a height in excess of that permitted by the airport zoning ordinance which may exist at the time and whose regulations apply to the area in which the structure is being erected.

(4) Lot coverage by buildings, driveways and parking spaces: 70 percent

(Ord. No. 4463, §§ 2, 3, 7-19-84; Ord. No. 7516, § 4, 8-5-99)

**Editor's note—**Ord. No. 4463, § 2, adopted July 19, 1984, repealed § 52-30, 'IP-AR' industrial park-airport related district regulations, "provided that property currently zoned under 'IP-AR' district may continue under those regulations, but no property shall be rezoned to the 'IP-AR'." Section 3 of said Ord. No. 4463 added § 52-30, CP commercial park district, as set out above.

**Sec. 52-31. AG agricultural district regulations.**

In an AG agricultural district no land shall be used and no building shall be erected for or converted to any use other than:

(a) *Principal uses:* The following uses shall be permitted as principal uses:

(1) Government buildings and uses.

(2) Agriculture, including any customary agricultural building and structure, and such uses as livestock ranges, animal husbandry, field crops, tree crops, nurseries and greenhouses.

(3) Public utility uses.

(4) Public parks and recreation areas.

(5) Private noncommercial recreation areas, uses and facilities, including shooting clubs and facilities.

(6) Poultry farms, kennels, riding stables and dairies.

(7) Outdoor theatres, golf driving ranges, commercial swimming pools, and other similar commercial recreation facilities.

(8) Commercial mines, quarries, and gravel pits under such regulations as shall be provided by other ordinances of the city from time to time.

(9) Private airports and landing strips, provided that the flight line for one mile on each end of the runways shall not be above an R district.

From : HKIM;CPIMINGGEMENT;CO3125233 Case 14-10879-CSS Doc 10223-5 Filed 11/16/16 Page 43 of 115 PHONE 23-5 343 1/86/16 1:29AM P01

JUN-15-2005 WED 09:18 AM                    FAX NO.                    P. 01

# Fax

### BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.
Attorneys at Law

DEALE DEAN
JAMES V. BLANTON
• GRANT LISER
RICHARD W. WISEMAN
JOHN E. PROCTOR
••JOHN C. HART
LARRY W. WILMERS
SANDRA LISER

OF COUNSEL,
CATHERINE JANE ALDER, P.C

• Also licensed to practice in Louisiana
•• Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4902

TELEPHONE (817) 332-1391
MATAG (817) 429-0851
FAX (817) 870-2437

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE M. ROGERS
STERLING J. BZA
BILLY McGILL
JASON C. MOON
JONATHAN R. CHEATHAM
JENNIFER L. WILLINGHAM

IRMA M. BROWN (1941-1976)
WILLIAM M. BROWN (1902-2017)

| | |
|---|---|
| Name: | Jimmy Stewart for Kuja Stewart |
| Organization: | |
| Fax: | (972) 313-9952 |
| Phone: | |
| From: | Charles B. Mitchell, Jr., Esq. |
| Date: | June 15, 2005 |
| Subject: | Kuja Stewart |
| | Our File No.: 3251.22711 |

Pages:          5 (including fax cover sheet)

Comments:

Dear Jimmy:

Per our conversation this morning, attached is the facsimile for your mother. Please give it to her as soon as possible as there is a deadline on this proposal.

Thank you.

Marcia Mitchell
Legal Secretary for Charles B. Mitchell, Jr.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS LEGALLY PRIVILEGED AND CONFIDENTIAL INFORMATION, WHICH IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR REPRODUCTION OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS MESSAGE IN ERROR, THAT MATERIAL HEREWITH SHOULD BE DESTROYED IMMEDIATELY AND THE SENDER LISTED ABOVE SHOULD BE NOTIFIED BY TELEPHONE AT (817) 332-1391.

# BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.

## Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
GRANT LISER
RICHARD W. WISEMAN
**JOHN C. HART
JOHN W. PROCTOR
LARRY W. WILSHIRE
SANDRA LISER

OF COUNSEL
CATHERINE JANE ALDER, P.C
* Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JASON C. MOON
JONATHAN E. CHEATHAM
JENNIFER L. WILLINGHAM

JESSE M. BROWN (1883-1978)
WILLIAM M. BROWN (1912-1987)

June 1, 2005
~~May 17, 2005~~

*Via First Class Mail*
Ms. Kuja Stewart
2028 Sandy Lane
Irving, Texas 75060

Re:    Kuja Stewart
       Our File No.:   3251.22711

Dear Ms. Stewart:

Recently we received your check in the amount of $1,500.00 to cover the cost of the retainer for the legal services we discussed in our recent meeting. Based upon the legal matters you wanted handled by our firm, we had quoted you a retainer of $2,500.00. If there was a misunderstanding as to the amount of the retainer, please let us know at your earliest convenience. However, several legal items were singled out with the price at which they could be performed. Please refer to earlier correspondence from our office discussing the breakdown of the legal items you needed handled and the individual cost for each. It is our sincere desire to assist you with these legal matters but in order to do so, the remainder of the retainer must be received by our office in order to get started. Otherwise, you will need to identify which legal matters you would like handled for the $1,500.00 you furnished our office.

I would be happy to discuss this matter with you at your convenience. Likewise, should you have any questions, please do not hesitate to contact me.

Sincerely,

Jonathan E. Cheatham

JEC/khg
cc:    *Via Interoffice*
       Charles B. Mitchell, Jr.
       Patty Rien

W:\Charles\files\Individual Clients\Stewart, Kuja [Real Estate 22711]\Correspondence\Ltr to Ms. Stewart 006 05.16.05.wpd

**FedEx** *USA Airbill* FedEx Tracking Number  **8083O8911552**

Form I.D. No. **0210**

SDA21

**Sender's Copy**

Date (please print and press hard) **6/05**  Sender's FedEx Account Number **0752-4682-0**

Sender's name **CHARLES B. MITCHELL, JR**  Phone **(817) 332-1391**

Company **BROWN HERMAN DEAN WISEMAN LISE**

Address **306 W 7TH ST STE 200**  Dept./Floor/Suite/Room

**FORT WORTH**  State **TX**  ZIP **76102**

Your Internal Billing Reference Information (Optional) (First 24 characters will appear on invoice)  **3251.22958**

**To** (please print and press hard)

Recipient's name **SECRETARY of STATE, STATE of TEXAS**  Phone

ATTN: CORPORATIONS' DIVISION

Company **JAMES EARL Rudder office Building**

Address **1019 BRAZOS**

☐ Check here if residence (Extra charge applies for FedEx Express Saver)

HOLD at FedEx location, (We Cannot Deliver to P.O. Boxes or P.O. ZIP Codes)  Dept./Floor/Suite/Room
(FedEx address here)

**AUSTIN**  State **TX**  ZIP **78711-3697**

**For HOLD at FedEx Location check here**
☐ Hold Weekday (Not available with FedEx First Overnight)
☐ Hold Saturday (Available for FedEx Priority Overnight and FedEx 2Day only)

**For WEEKEND Delivery check here** (Extra Charge. Not available to all locations)
☐ Saturday Delivery (Available for FedEx Priority Overnight and FedEx 2Day only)
☐ NEW Sunday Delivery (Available for FedEx Priority Overnight only)

**4a Express Package Service** *Packages under 150 lbs.* Delivery commitment may be later in some areas.
☑ FedEx Priority Overnight (Next business morning)
☐ FedEx Standard Overnight (Next business afternoon)
☐ FedEx First Overnight (Earliest next business morning delivery to select locations) (Higher rates apply)
☐ FedEx 2Day (Second business day)
☐ FedEx Express Saver (Third business day)
FedEx Letter Rate not available. Minimum charge: One pound rate.

**4b Express Freight Service** *Packages over 150 lbs.* Delivery commitment may be later in some areas.
☐ FedEx Overnight Freight (Next business day)
☐ FedEx 2Day Freight (Second business day)
☐ FedEx Express Saver Freight (Up to 3 business days)
(Call for delivery schedule. See back for detailed descriptions of freight services.)

**5 Packaging**
☑ FedEx Letter Declared value limit $500.
☐ FedEx Pak
☐ FedEx Box
☐ FedEx Tube
☐ Other Pkg.

**6 Special Handling** (One box must be checked)
Does this shipment contain dangerous goods?
☑ No
☐ Yes (As per attached Shipper's Declaration)
☐ Yes (Shipper's Declaration not required)
☐ Dry Ice  Dry Ice, 9, UN 1845 ___ x ___
☐ Cargo Aircraft Only
*Dangerous Goods cannot be shipped in FedEx packaging.

**7 Payment**
Bill to: ☑ Sender (Account No. in Section 1 will be billed)
☐ Recipient
☐ Third Party
☐ Credit Card
☐ Cash/Check
(Enter FedEx Account No. or Credit Card No. below)

FedEx Acct. No. _____
Credit Card No. _____  Exp. Date _____

Total Packages | Total Weight | Total Declared Value* | Total Charges
| | $ .00 | $

*When declaring a value higher than $100 per shipment, you pay an additional charge. See SERVICE CONDITIONS, DECLARED VALUE, AND LIMIT OF LIABILITY section for further information.

**8 Release Signature** *Sign to authorize delivery without obtaining signature.*

Your signature authorizes Federal Express to deliver this shipment without obtaining a signature and agrees to indemnify and hold harmless Federal Express from any resulting claims.

**321**

WCSL 0798
Rev. Date 3/98
Part #153023
©1994-98 FedEx
PRINTED IN U.S.A.

Questions? Call 1·800·Go·FedEx® (800)463-3339

*The World On Time*®

007108140  1

Service Conditions, Declared Value, and Limit of Liability – By using this Airbill you agree to the service conditions in our current Service Guide or U.S. Government Service Guide. Both are available on request. SEE BACK OF SENDER'S COPY OF THIS AIRBILL FOR INFORMATION AND ADDITIONAL TERMS. We will not be responsible for any claim in excess of $100 per package whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, and document your actual loss in a timely manner. Your right to recover from us for any loss includes intrinsic value of the package, loss of sales, interest, profit, attorney's fees, costs, and other forms of damage, whether direct, incidental, consequential, or special, and is limited to the greater of $100 or the declared value but cannot exceed actual documented loss. The maximum declared value for any FedEx Letter and FedEx Pak is $500. Federal Express may, upon your request, and with some limitations, refund all transportation charges paid. See the FedEx Service Guide for further details.

*Steward*
*Oil & Gas*
*general*
*cou*

# Scout Exploration, J.V.
### 5956 SHERRY LANE, SUITE 1810
### DALLAS, TEXAS 75225

(214) 891-0920
(214) 891-9855 FAX
whall@wetlandpartners.com

**Date:** 9/9/05

**Recipient:** MR. STERLING ELZA

**Company:** BROWN, DEAN, WISEMAN, LISEN

**Fax number:** (618) 870-2427

**From:** WALLACE HALL

**Number of pages (including cover):**

**Message:**

STERLING,

PER OUR CONVERSATION TODAY, I AM RE-SENDING
THE LEASE FORM FOR YOUR REVIEW & COMMENT.
WE ARE PREPARED TO MOVE FORWARD ASAP IN LIGHT
OF THE RECENT COMPLETION OF THE TRANSFER THAT
WE WERE WAITING ON. THANKS!

Walter

September 27, 2005
Page 2

bcc:    UP_G_KUK, Inc.
        c/o Kuk Ja Stewart
        2028 Sandy Lane
        Irving, Texas 75060

## OLMAN ROBERTSON ELDRIDGE
A Professional Corporation
Attorneys and Counselors
5949 Sherry Lane
Suite 1700
Dallas, Texas 75225

Shareholders
H. DOUGLAS BAER
CHARLES R. BIDDLE
RICHARD T. CHEATHAM
DAVID A. ELDRIDGE
RONALD O. HOLMAN
JOHN CROW MILLER
J. MALCOLM ROBERTSON, JR.
ROBERT A. SOLOMON

Telephone
214 / 361-9494

Writer's Extension
113

Facsimile
214 / 691-2109

Writer's E-Mail Address
rholman@hrepc.com

September 15, 2005

Mr. Sterling Elza
Brown, Dean, Wiseman,
   Liser, Proctor & Hart
306 West 7th Street, Suite 200
Fort Worth, Texas 76102

   Re:   UP_G_Kuk, Inc.
         Paid Up Oil and Gas Lease with Scout Exploration, J.V.
         42.803 acres of land, more or less
         J. Mangum Survey, A-861
         Dallas County, Texas

Dear Mr. Elza:

   I write to you as counsel for Scout Exploration, J.V., the lessee of the referenced lease.
Enclosed you will find the original of the lease for execution by your client. I have also enclosed
my client's check in the amount of $21,401.50 as payment of the lease bonus. You are instructed
to hold this check in trust until such time as you have secured the proper execution of the lease
by your client and placed the executed original in the mail to me for further handling. At that
time, you will then be authorized to release the lease bonus check from trust and deliver it to
your client for deposit and collection.

   Thank you for your attention to this matter and, if you have any questions regarding
same, please do not hesitate to contact me.

                                                Very truly yours,

                                                Ronald O. Holman

ROH/lma
Enclosures
cc:   Scout Exploration, J.V. (w/encl.)

H:\WP\05\ROH\SCOUT\ELZA~L01.doc

## Patty Rien

| | |
|---|---|
| **From:** | Sterling Elza |
| **Sent:** | Monday, September 12, 2005 4:53 PM |
| **To:** | 'whall@wetlandpartners.com' |
| **Cc:** | Charles Mitchell; Patty Rien |

**Subject:** Kuk Ja Stewart-Oil and Gas Lease

Wallace:
 The Oil and Gas Lease looks fine.  Obviously, the name of the lessor needs to be changed from Kuk Ja Stewart to UP_G_KUK, INC.  Other than that, everything is good.  Once the corrections are made, please forward the lease to me for my client's signature.
 Thanks for your assistance in this matter.  Please feel free to contact me with any questions you may have.
-Sterling

| **Sterling Elza** | **Brown, Dean, Wiseman, Liser, Proctor & Hart**<br>306 West 7th Street, Suite 200<br>Fort Worth, Tx 76102 |
|---|---|
| seiza@browndean.com | tel: 817-332-1391<br>fax: 817-870-2427 |

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

BROWN, D⬤, WISEMAN, LISER, PROCTOR & ⬤T, L.L.P.

Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
GRANT LISER
HARD W. WISEMAN
IN W. PROCTOR
IN C. HART
RRY W. WILSHIRE
SANDRA LISER

OF COUNSEL
CATHERINE JANE ALDER, P.C

* Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JASON C. MOON
JENNIFER L. WILLINGHAM

JESSE M. BROWN (1883-1978)
WILLIAM M. BROWN (1912-1987)

September 8, 2005

*Via Fax - 214/891-9855*
Mr. Wallace Hall
Scout Exploration, J.V.
5956 Sherry Lane, Suite 1810
Dallas, Texas 75225

Dear Mr. Hall:

As we discussed, attached please find a signed copy of a Warranty Deed transferring the subject property from Kuk Ja Stewart to UP_G_KUK, Inc., a corporation owned and operated by Mrs. Stewart. In addition, I have attached a copy of Scout Exploration's letter of intent with Mrs. Stewart. The basic terms and conditions are agreeable. Obviously, the Lessor will no longer be Kuk Ja Stewart, but UP_G_KUK, Inc.

Please feel free to contact me with any questions you may have.

Sincerely,

Sterling J. Elza

SJE/jj
Enclosure

cc:    Mr. Charles B. Mitchell, Jr. - Firm ✓

September 8, 2005
Page 2

_____

bcc:    Kuk Ja Stewart
        2028 Sandy Lane
        Irving, Texas 75060

W:\CHARLES\FILES\INDIVIDUAL CLIENTS\STEWART, KUJA [REAL ESTATE 22711]\CORRESPONDENCE\HALL 001 .WPD



# Halff Associates

ENGINEERS · ARCHITECTS · SCIENTISTS · PLANNERS · SURVEYORS

4000 FOSSIL CREEK BOULEVARD
FORT WORTH, TEXAS 76137
817/847-1422
METRO 817/429-9576
FAX 817/232-9154

December 16, 2005
AVO 23423

Ms. Kuk Ja Stewart
2028 Sandy Lane
Irving, Texas 75060

Re:   **Hunter Ferrell Road**
      **From Beltline Road to MacArthur Boulevard**

Dear Ms. Stewart:

Halff Associates, Inc. was selected by Dallas County, Texas, to begin the Preliminary Design of Hunter Ferrell Road improvements, from Beltline Road to MacArthur Boulevard. This project is a cooperative effort between Dallas County and the cities of Irving and Grand Prairie to provide improved access for the area.

The design includes a feasibility and alignment study to determine the proposed route for Hunter Ferrell Road. Improvements to a portion of Story Road are also planned with the project.

Right-of-way and design surveys are currently underway, and our surveyors will be in the area for the next several weeks. They are locating and tying property monuments, structures and other facilities for use in the study. A Right of Entry permission letter is enclosed, with a stamped return envelope. Please indicate if we have permission to enter your property and return the completed letter. A copy will be sent to you for your records.

Please contact James O'Connor at the City of Irving or me if you have any questions.

Sincerely,

**HALFF ASSOCIATES, INC.**

Lisa M. Rhudy, P.E.

Attachments

Cc:   Jerry F. Roberts, P.E. - Halff Associates
      John L. Mears, P.E. – Dallas County
      James O'Connor, P.E. – City of Irving

FORT WORTH · DALLAS · HOUSTON · McALLEN · AUSTIN · FRISCO · SAN ANTONIO

TRANSPORTATION · WATER RESOURCES · LAND DEVELOPMENT · MUNICIPAL · ENVIRONMENTAL · STRUCTURAL
MECHANICAL · ELECTRICAL · SURVEYING · GEOGRAPHIC INFORMATION SYSTEMS
ARCHITECTURE · LANDSCAPE ARCHITECTURE · PLANNING



# Halff Associates

ENGINEERS · ARCHITECTS · SCIENTISTS · PLANNERS · SURVEYORS

4000 FOSSIL CREEK BOULEVARD
FORT WORTH, TEXAS 76137
817/ 847-1422
METRO 817/ 429-9575
FAX 817/ 232-9784

_____ , 2005

AVO 23423

Project:  Hunter Ferrell Road
          From Beltline Road to MacArthur Blvd.

Name: _____

Address: _____

          _____

Dear Property Owner:

Dallas County has contracted Halff Associates, Inc. to design roadway improvements for Hunter Ferrell Road, from Beltline Road to MacArthur Blvd. The project also includes improvements to a portion of Story Road and Bear Creek.

We are beginning design, and request permission to enter your property for a preliminary survey to locate property corners and/or to survey existing features immediately adjacent to the proposed roadway. Also, we request permission to enter your property, if additional right of way is required, in order to mark the new right of way lines, and/or easements.

A survey crew from Halff Associates, Inc. and/or Arredondo, Zepeda, and Brunz, Inc., will be collecting field data on behalf of Dallas County. We will begin our field work in August, 2005. Should you have any questions, please contact Jerry Roberts or Lisa Rhudy at Metro number (817) 429-9975 during normal business hours.

Please sign below to indicate that we have permission to enter your property. A copy will be returned to you for your records.

Sincerely,

**HALFF ASSOCIATES, INC.**

Lisa M. Rhudy, P.E.

FORT WORTH · DALLAS · HOUSTON · McALLEN · AUSTIN · FRISCO · SAN ANTONIO

TRANSPORTATION · WATER RESOURCES · LAND DEVELOPMENT · MUNICIPAL · ENVIRONMENTAL · STRUCTURAL
MECHANICAL · ELECTRICAL · SURVEYING · GEOGRAPHIC INFORMATION SYSTEMS
ARCHITECTURE · LANDSCAPE ARCHITECTURE · PLANNING


# Halff Associates

ENGINEERS · ARCHITECTS · SCIENTISTS · PLANNERS · SURVEYORS

Project: Hunter Ferrell Road
From Beltline Road to MacArthur Blvd.

Re:    Request for Right-of-Entry

### RIGHT-OF-ENTRY FORM
Permission to Access Private Property for Surveying Purposes

I hereby grant Halff Associates, Inc., their employees, or their representatives access to my Property for purposes of conducting field survey work in connection with the Hunter Ferrell Road project. The Right of Entry is for the purpose of locating property corners of existing boundary lines, surveying existing features adjacent to the project, and marking the proposed right-of-way.

It is expressly understood that this Right of Entry in no way waives or affects Owner's right to the proposed land conveyance or any damages to Owner's remaining property occasioned by said conveyance, said rights being hereby especially reserved unto Owner, Owner's heirs, successors and assigns.

This Right of Entry shall expire upon completion of land conveyance of the right-of-way to the County of Dallas, Texas, or upon written request by the owner to rescind Right-of-Entry, or 24 months from date of execution.

Property Description:   42 BAC IN JOSEPH MANGRUM SURVEY, A-861

Property Owner:   KUK JA STEWART

Mailing Address:   2028 SANDY LANE, IRVING, TX 75060

Telephone Number:

Tenant Name
(if applicable):

Signature:

Printed Name:

Date:

## Charles Mitchell

**From:** Mr James Stewart [jimbobandfishing@verizon.net]

**:** Tuesday, December 20, 2005 2:20 PM

**To:** Charles Mitchell

**Subject:** Recieved Info in Mail

harlie, we received some information from Halff Associates in the mail today. If the three attachments do not come through, call me and I'll
x them over to you. I asked Ms. Rhudy all information pertaining to the survey, the dates they staked the land and the papers that the survey
ew had with them that day. This is all that was sent. My mother is not going to do anything until she hears from you. Thanks and have a
ery merry Christmas.

**Charles Mitchell**

**From:**   James Stewart [jimbobandfishing@verizon.net]
**:**   Wednesday, December 14, 2005 8:42 PM
**To:**   Charles Mitchell
**Subject:** Hunter Ferrell



harlie, I don't know if Kenny has given you the following information. Todd Curtis is the person who is renting my om's land. He came by last night looking for Kenny. I asked Todd if he had seen any signs of the oil company. He .id no, but that the road that the surveyours staked down is taking up a third of her land and more than half the isture. He was there when the surveyours were there. He said there was not any markings on their truck nor did they ive any shirts that had what company they were with. He also had seen a document stating "contact owner before itering property", his neighbor who was with Todd saw it too and Todd did say if Mom had to go to court over this, at he and his neighbor would be there. Todd kept stressing that the way they staked it and with the recent :velopments, my mom is going to lose a hell of a lot more thant the survey maps that my mom had shown him. harlie, please call me when you get this e-mail because my mom is talking about going to Dallas County to request at they pay her full value and I told her to wait until get a hold of you. Now she wants to know if it is too late to file at application for strip center. I told her to wait, that you would take care of her and tell her what you and her need to ). Todd also said you can call him at work if you need to and that if he is not there, to leave a message and he will ill you back. His name is Todd Curtis, (214)543-1327. Charlie, I appreciate everything you have done for our mily! My dad always was there to give us the guidance we needed and for that I'm very grateful for the guidance we ive recieved from you. Thanks! What do you think of my dorky e-mail address.

2/15/2005

BROWN, ███, WISEMAN, LISER, PROCTOR & ███ L.P.

**Attorneys at Law**

BEALE DEAN
JAMES T. BLANTON
• GRANT LISER
██ RICHARD W. WISEMAN
██ JOHN W. PROCTOR
JOHN C. HART
LARRY W. WILSHIRE
SANDRA LISER

OF COUNSEL
CATHERINE JANE ALDER, P.C

\* Also licensed to practice in Louisiana
\*\* Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JASON C. MOON
JENNIFER L. WILLINGHAM

JESSE M. BROWN (1883-1978)
WILLIAM M. BROWN (1912-1987)

September 19, 2005

Ms. Kuk Ja Stewart
2028 Sandy Lane
Irving, Texas 75060

Re:    Kuk Ja Stewart
       Oil & Gas Lease
       42.803 acres, Joseph Mangum Survey
       Abstract No. 881, Dallas County, Texas
       Our File No.: 3251.22711

Dear Ms. Stewart:

Enclosed please find a copy of the Oil and Gas Lease provided by Scout Exploration, J.V. Please review the Lease and contact Patty Rien in my office to set up an appointment so that you can come to the office to sign and have the Lease notarized. Once the Lease has been signed and notarized, Scout will release the check made payable to UP_G_Kuk, Inc.

Please feel free to contact me with any questions you may have.

Sincerely,

Sterling J. Elza

SJE/jj
Enclosure

cc:    Mr. Charles B. Mitchell, Jr. - Firm
       (w/o Enclosure)



**CITY OF IRVING**
Community Development Department
P.O. Box 152288
Irving, Texas 75015-2288





UNITED STATES POSTAGE

PITNEY BOWES

02 1A          **$ 00.37⁰**
0004321889      JUL 21  2004
MAILED FROM ZIP CODE 75060



Charles B Mitchell Jr
Brown, Dean, Wiseman, Liser,
Proctor & Hart, LLP
306 W 7th St Suite 200
Fort Worth TX 76102-4905

76102#4905

**BROWN, D    ', WISEMAN, LISER, PROCTOR &    T, L.L.P.**

Attorneys at Law

BEALE DEAN
MES T. BLANTON
NT LISER
HARD W. WISEMAN
JOHN W. PROCTOR
•• JOHN C. HART
LARRY W. WILSHIRE
SANDRA LISER

OF COUNSEL
CATHERINE JANE ALDER, P.C

* Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JASON C. MOON
JONATHAN E. CHEATHAM
JENNIFER L. WILLINGHAM

JESSE M. BROWN (1883-1978)
WILLIAM M. BROWN (1912-1987)

June 17 ???

Mr. Scott K. Wilpitz
Scout Exploration, J.V.
5956 Sherry Lane, Suite 1810
Dallas, Texas 75225

**VIA FACSIMILE - (214) 891-9855**

Re:    Kuja Stewart
1800 and 1900 Hu    errell Roads
Irving, Texas
Our File No.:  3251.22711

Dear Mr. Wilpitz:

Enclosed please find Ms. Stewart's executed signature page to the June 10, 2005 Letter of Intent - Oil and Gas lease regarding the above-referenced matter. The original signature page will follow via mail service.

Should you have any questions, please do not hesitate to contact the undersigned.

Thank you for your assistance.

Sincerely yours,

Charles B. Mitchell, Jr.

CBM:PR:mm
Enclosure

W:\Charles\files\Individual Clients\Stewart, Kuja [Real Estate 22711]\Correspondence\Ltr to Mr. Wilpitz 001 06.17.05.wpd

Mr. Scott K. Wilpitz
June 17, 2005
Page 2


bcc:    Ms. Kuja Stewart (w/o encl.)
        2028 Sandy Lane
        Irving, Texas 75060

Maybe call
Elizabeth Ranier
Its program
(214) 670-4028

1800 – 1900 Hunter Ferrell
Page 2

- Any reclamation of flood plain or floodway area must first obtain approval of a Corridor Development Certificate (CDC). Such reclamation cannot produce any loss of valley storage. The proposed development will be entered into the CDC model at the U.S. Army Corps. of Engineers office in Fort Worth. A wetlands expert must show what wetlands are being impacted as part of this process.

- Drainage improvements adequate for the 25-year design must be made to the southern ditch as part of any development of the site.

- Because the adjacent street is below the 100-year flood plain elevation, there is no emergency access to the property during flood conditions. You may wish to contact the Irving Fire Department to discuss alternate means of fire protection and ambulance access, as well as evacuation procedures prior to flood events.

The above information summarizes the issues discussed during this meeting. Please retain this letter for your future reference. If you need any further information regarding zoning and/or platting, please contact me at 972-721-2424. Detailed information about the flood plain issues may be obtained from Garry Fennell at 972-721-2611. Detailed information regarding rights-of-way and road alignments may be obtained from Dan Vedral at 972-721-2646.

Sincerely,

Steven A. Reed
Manager of Current Planning

cc:     Charles B. Mitchell, Jr.
        Brown, Dean, Wiseman, Liser, Proctor & Hart, LLP
        306 W. 7th Street, Suite 200
        Fort Worth, TX 76102-4905

        Nancy Croney
        The Croney Team
        2409 Twelve Oaks
        Colleyville, TX 76034

        Jimmy Stewart
        2028 Sandy Lane
        Irving, TX 75060

        David Caylor, City Attorney
        Edward J. Barry, Community Development Director
        Jim Cline, Public Works and Transportation Director
        Jim Driscoll, Assistant Director, Transportation
        Gary Fennell, Senior Civil Engineer
        Dan Vedral, Transportation Engineer



**IRVING**

July 20, 2004

Kuja Stewart
2028 Sandy Lane
Irving, TX 75060

Re: 1800 and 1900 Hunter Ferrell Road

Dear Ms. Stewart:

On July 16, 2004, a meeting was held on the second floor of the City of Irving Civic Center to discuss the development requirements for your property located at 1800 and 1900 Hunter Ferrell Road. The following information was discussed at that meeting.

• The property is currently zoned AG Agricultural under the City's Comprehensive Zoning Ordinance. Attached is a summary of the AG district that lists the permitted uses. Development of the property with any use other than those currently permitted by the AG district would first require a change of zoning.

• The property is not platted. The property must be platted prior to any subdivision of the property for sale or development, and/or prior to the issuance of any building permits for any new construction. At the time of platting, rights-of-way for future streets and easements for utilities must be dedicated, and construction plans for such improvements will be required to be submitted for approval. Water lines, sanitary sewer lines and drainage facilities must be extended and constructed to service the site prior to issuance of any building permits.

• The City of Irving Master Thoroughfare Plan shows Hunter Ferrell Road being re-aligned through this property, and future Trinity Blvd. being connected to the re-aligned Hunter Ferrell Road. The placement of any improvements on the property should recognize this eventuality.

• All of the property is in the 100-year flood plain, and much of it is in the floodway, as determined by the official flood plain maps for the City of Irving.

• Any new structure must be elevated a minimum of two (2) feet above the 100-year flood plain elevation, which is 438.0 - 438.5 ft. at this location. Thus, any structure must have a finished floor elevation of 440.0 – 440.5 ft. The existing grade is approximately ten (10) feet below this elevation.

June 30, 2004
Page

cc:   Mr. Ed Berry                                  **VIA FACSIMILE**
       Community Development
       825 W. Irving Blvd., Dept. 15
       Irving, Texas 75060

       Gary Fennell                                 **VIA FACSIMILE**
       Engineering Division
       825 W. Irving Blvd.
       Irving, Texas 75060

       Jim Driscoll                                  **VIA FACSIMILE**
       Traffic Division
       825 W. Irving Blvd.
       Irving, Texas 75060

       Nancy M. Croney                          **VIA FACSIMILE**
       Re/Max Associates
       6201 Colleyville Blvd.
       Colleyville, Texas 76034

       Kuja Stewart
       2028 Sandy Lane
       Irving, Texas 75060





# • **Fax**

## BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.
### Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
* GRANT LISER
RICHARD W. WISEMAN
** JOHN C. HART
JOHN W. PROCTOR
LARRY W. WILSHIRE

OF COUNSEL
CATHERINE JANE ALDER, P.C

* Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

SANDRA LISER
CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JAMES K. HURLBURT
JASON C. MOON

---

JESSE M. BROWN (1883-1978)
A. M. HERMAN (1905-1987)
WILLIAM M. BROWN (1912-1987)

**Name:** David Caylor
**Organization:** City Attorney
**Fax:** (972) 721-2750
**Phone:**
**From:** Charles B. Mitchell, Jr., Esq.
**Date:** June _30_ , 2004
**Subject:** Kuja Stewart
1800 and 1900 Hunter Ferrell Roads
Irving, Texas
Our File No.: 3251.22711

**Pages:** _5_ (including fax cover sheet)

Comments:

THE INFORMATION CONTAINED IN THIS FACSIMILE IS LEGALLY PRIVILEGED AND CONFIDENTIAL INFORMATION, WHICH IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR REPRODUCTION OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS MESSAGE IN ERROR, THAT MATERIAL HEREWITH SHOULD BE DESTROYED IMMEDIATELY AND THE SENDER LISTED ABOVE SHOULD BE NOTIFIED BY TELEPHONE AT (817) 332-1391.



# NAMAN HOWELL
## SMITH&LEE

| Kuk J Stewart | May 7, 2014 |
| Re: Mineral Lease | Invoice 365460 |
| I.D. 33507-0003 - CBM | Page 2 |

### Fees

| Date | Svs/Prov | Hours | Description | Amount |
|------|----------|-------|-------------|--------|
| 03/12/14 | CBM | 0.10 | Telephone conference with Kenny Stewart re: Hunter Farrell property. | 35.00 |
| 03/17/14 | PAR | 0.10 | Instructions from Mr. Mitchell regarding meeting with the client and regarding the file's opening. | |
| 03/17/14 | PAR | 0.10 | Review and evaluate documents provided by the client regarding the file's opening. | 20.00 |
| 03/18/14 | KMC | 0.50 | Receiving instructions and assignment on file.  Discussing file strategy. | |
| 03/18/14 | PAR | 0.80 | Extensive review, evaluate, assemble and index numerous file materials from the underlying Stewart real estate and oil and gas cases regarding documents to be incorporated into the Stewart Mineral Lease file and regarding the file's opening. | 160.00 |
| 03/18/14 | PAR | 0.10 | Numerous instructions from Mr. Mitchell regarding documents needed from the Stewart closed file and the new file assignment. | |
| 03/19/14 | PAR | 0.20 | Draft memorandum to Joe Rivera regarding file assignment. | |
| 03/20/14 | KMC | 0.40 | Phone Calls to Scout Engineering.  Drafting Letter to Scout Engineering. | 110.00 |
| 03/20/14 | KMC | 0.20 | Contacting City of Grand Prairie regarding drilling permits. | 55.00 |
| 03/20/14 | PAR | 0.10 | Revise and finalize memorandum to Joe Rivera regarding file assignment. | |
| 03/24/14 | PAR | 0.10 | Telephone call with Marco Montimeyo regarding correspondence he plans to send to all parties on behalf of Kuk J Stewart. | 20.00 |
| 03/24/14 | PAR | 0.10 | Instructions from Mr. Mitchell regarding follow-up with Joe Rivera regarding conference call with Marco Montimeyo. | |
| 03/24/14 | PAR | 0.10 | Telephone call with Joe Rivera regarding conference call with Marco Montemayo regarding correspondence he plans to send out on behalf of Kuk J Stewart. | |
| 03/25/14 | KMC | 0.50 | Reviewing file with Joe Rivera.  Phone call with Scott Wilpitz, who once worked with Scout Exploration. | |
| 03/25/14 | JAR | 0.50 | Review file and telephone conference with Montemayor and conference with Charles Mitchell regarding case. | 137.50 |
| 03/25/14 | CBM | 0.20 | Review and handle correspondence  from Marco Montemayer and attached Deed of Trust. | 70.00 |
| 03/26/14 | PAR | 0.10 | Review e-mail correspondence from Mr. Rivera regarding telephone call from Marco Montemayo. | |
| 03/27/14 | CBM | 0.10 | Review and handle correspondence from Marco Montemayer and | 35.00 |



# NAMAN HOWELL
## SMITH&LEE

| Kuk J Stewart | May 7, 2014 |
|---|---|
| Re: Mineral Lease | Invoice 365460 |
| I.D. 33507-0003 - CBM | Page 3 |

| Date | Svs/Prov | Hours | Description | Amount |
|---|---|---|---|---|
| | | | attached document. | |
| 03/28/14 | JAR | 0.20 | Conference with Charles Mitchell and K. Copeland on case history and case handling, including contacting the respective oil and gas developers. | |
| 03/28/14 | PAR | 0.10 | Instructions from Mr. Mitchell regarding meeting with the Stewarts and the surveyor. | |
| 03/28/14 | CBM | 0.10 | Telephone conference with Marco Montemayer re: deeds and survey of property. | 35.00 |
| 03/28/14 | CBM | 0.10 | Telephone conference with Ken Stewart re: mineral lease. | 35.00 |
| 03/31/14 | CBM | 0.10 | Telephone conference with Marco Montemayer re: mineral lease. | 35.00 |
| 04/01/14 | PAR | 0.00 | Instructions from Mr. Mitchell regarding meeting with the surveyor. | |
| 04/01/14 | PAR | 0.00 | Instructions from Mr. Mitchell regarding letter to be finalized for Marco Montemayo regarding Kenny Stewart's vehicle damage. | |
| 04/03/14 | KMC | 0.40 | Receiving instructions and obtaining document: "Deed of Trust, Assignment of Leases, Security Agreement, Financing Statement and Fixture Filing." | |
| 04/03/14 | PAR | 0.00 | Instructions from Mr. Mitchell regarding documenting to be obtained by Ms. Copeland and forwarded to Mr. Montemayo. | |
| 04/03/14 | PAR | 0.00 | Instructions from Mr. Mitchell regarding the consensus report needed by Mr. Montemayo. | |
| 04/03/14 | PAR | 0.00 | Instruction to Ms. Copeland regarding documents consensus report need by Mr. Montemayo. | |
| 04/08/14 | JAR | 1.50 | Review correspondence with Scout and its attorney, lease and other real property and other documents related to the dispute over mineral lease (approximately 200 pages). | 412.50 |
| 04/08/14 | JAR | 0.50 | Research status of Scout entities and contact information for Chesapeake. | 137.50 |
| 04/08/14 | JAR | 0.50 | Draft letter for information on Scout lease to Scout and its attorney with comments on other possible courses of action to Charles Mitchell. | 137.50 |
| 04/08/14 | PAR | 0.00 | Review and evaluate email correspondence from Mr. Rivera regarding the correspondence to be sent to Scout Exploration. | |
| 04/09/14 | PAR | 0.00 | Review and evaluate e-mail correspondence with Mr. Rivera regarding the Notice letter to be sent to Scout Expiration and to Chesapeake. | |
| 04/10/14 | KMC | 0.40 | Discussing case assignment with Charlie Mitchell and finding land survey companies in Grand Prairie. | |
| 04/10/14 | KMC | 1.00 | Meeting with client. | 275.00 |



# NAMANHOWELL
## SMITH&LEE

| Kuk J Stewart | | May 7, 2014 |
|---|---|---|
| Re: Mineral Lease | | Invoice 365460 |
| I.D. 33507-0003 - CBM | | Page 4 |

| Date | Svs/Prov | Hours | Description | Amount |
|---|---|---|---|---|
| 04/11/14 | PAR | 0.00 | Review and evaluate email correspondence from Katie Copeland regarding possible Deposition on Written Questions regarding the Platt and Drilling information from the City of Grand Prairie. | |
| 04/15/14 | KMC | 1.10 | Discussing latest action plan on file and drafting letter to update Kuk Ja and Kenny Stewart. | |
| 04/15/14 | KMC | 0.40 | Phone call to surveyor for estimate. | 110.00 |
| 04/15/14 | KMC | 1.00 | Analyzing appropriate legal description of the property to use for an accurate survey. | 275.00 |
| 04/15/14 | PAR | 0.00 | Review and evaluate e-mail correspondence from Marco Montemayo regarding the lease. | |
| 04/16/14 | KMC | 1.10 | Analyzing legal description of the property and determining which is most accurate. Contacting three survey companies and sending them the appropriate legal descriptions for the purpose of obtaining estimates for a survey. Finishing update letter to Kuk Ja and Kenny Stewart. | 302.50 |
| 04/17/14 | KMC | 0.30 | Obtaining and documenting responses for estimates from two of the three surveyors. | 82.50 |
| 04/23/14 | JAR | 0.50 | Review property information gathered by K. Copeland, and telephone call with City of Grand Prairie open records office regarding same; request for drilling records and obtain open records request form. | |
| 04/23/14 | KMC | 0.20 | Update conversation with Joe Rivera and drafting an email to Keeton Surveying for a second request for an estimate. | |
| 04/23/14 | PAR | 0.00 | Review and evaluate correspondence with the client and Marco Montemayor regarding numerous corporate Secretary of State related information requested by Marco Montemayor regarding Ken Stewart's business entities. | |
| 04/24/14 | KMC | 0.10 | Phone conversation with Keeton Surveying regarding an estimate for services. | 27.50 |
| 04/24/14 | KMC | 0.20 | Drafting email update to other attorneys on this case regarding the survey estimates. | |

| | | Total Fees | 2,507.50 |
|---|---|---|---|

## Disbursements

| Date | Description | Units | Amount |
|---|---|---|---|
| 03/20/14 | Service Fees;Oversize copies, 11'x17' copies;Falcon Document Solutions, LP | | 3.79 |
| 03/28/14 | Photostats | 93 | 13.95 |



# NAMANHOWELL
## SMITH&LEE

| Kuk J Stewart | May 7, 2014 |
|---|---|
| Re: Mineral Lease | Invoice 365460 |
| I.D. 33507-0003 - CBM | Page 5 |

| Date | Description | Units | Amount |
|---|---|---|---|
| 04/08/14 | Sec of State Fees ;Corporations-Find(Scout Exploration);Office of the Secretary of State | | 1.00 |
| 04/08/14 | Sec of State Fees ;Corporations-Find(Chesapeake Operating, Scout Exploration);Office of the Secretary of State | | 2.00 |
| 04/10/14 | Photostats | 52 | 7.80 |
| 04/10/14 | Photostats | 16 | 2.40 |
| 04/10/14 | Postage | | 14.38 |
| 04/10/14 | Color Photostats | 4 | 4.00 |
| 04/15/14 | Sec of State Fees ;Corporations-Find(MicroSeismic), By Registered Agent(Micro-Seismic);Office of the Secretary of State | | 2.00 |
| 04/16/14 | Photostats | 2 | 0.30 |
| 04/16/14 | Postage | | 0.48 |
| | **Total Disbursements** | | **52.10** |

DOCUMENT IS PRINTED ON CHEMICALLY RE⬛⬛ ⬛ PER - THE BACK OF THIS DOCUMENT INCLUDES A TAMP⬛ ⬛DENT CHEMICAL WASH WARNING BOX ⬛

**NAMAN, HOWELL, SMITH & LEE, PLLC**
P.O. BOX 1470
WACO, TEXAS 76703-1470

EXTRACO BANK
254-761-2000
HEWITT, TEXAS
88-58/1119
VOID AFTER 90 DAYS

537344

537344

Three and 79/100 Dollars------------------------------------------------------------

| DATE | AMOUNT |
|------|--------|
| 3/26/2014 | $3.79 |

Y TO THE
RDER OF:
Falcon Document Solutions, LP
301 Commerce Street, Suite 240
Fort Worth, TX 76102

NAMAN, HOWELL, SMITH & LEE, PLLC

AUTHORIZED SIGNATURE

�II⬛537344�III⬛ I⬛1119005811⬛ 0623010286�II⬛

NAMAN, HOWELL, SMITH & LEE, PLLC                    3/26/2014           537344

10401   Falcon Document Solutions, LP              TOTAL        $3.79

| Inv.Date | Inv.No. | Description | Amount |
|----------|---------|-------------|--------|
| 03-20-201 | 35424 | Service | 3.79 |

# TEXAS SECRETARY of STATE
# NANDITA BERRY



### UCC | Business Organizations | Trademarks | Notary | Account | Help/Fees | Briefcase | Logout
### BRIEFCASE

**SESSION ID:** 040814TI1951
**CONTACT NAME:** NAMAN, HOWELL, SMITH & LEE, PLLC ATTORNEYS AT LAW
**SESSION STATUS:** Closed
**DATE:** 4/8/2014 9:51:19 AM

| Client Reference | Document Number | Document Type | Status | Received Date | Document Fee |
|---|---|---|---|---|---|
| 33507-3 | 538054620002 | Corporations - Find {Chesapeake Operating} | Processed | 4/8/2014 9:51:31 AM | $1.00 |
| 33507-3 | 538054620003 | Corporations - Find {Scout Exploration} | Processed | 4/8/2014 9:56:18 AM | $1.00 |

**TOTAL FEE:**                                                                                          $2.00

PAYMENT DETAIL

| Batch Number | Payment Number | Payment Type | Status | Received Date | Amount |
|---|---|---|---|---|---|

**TOTAL PAYMENT:**                                                                                 $0.00
**SESSION BALANCE:**                                                                               $2.00

New Session Search

Instructions:
🔴 INSTRUCTIONS NEED WRITTEN FOR THIS SCREEN.

# TEXAS SECRETARY of STATE
# NANDITA BERRY



**UCC** | **Business Organizations** | **Trademarks** | **Notary** | **Account** | **Help/Fees** | **Briefcase** | **Logout**
**BRIEFCASE**

**SESSION ID:** 040814MB0746
**CONTACT NAME:** NAMAN, HOWELL, SMITH & LEE, PLLC ATTORNEYS AT LAW
**SESSION STATUS:** Closed
**DATE:** 4/8/2014 8:46:07 AM

| Client Reference | Document Number | Document Type | Status | Received Date | Document Fee |
|---|---|---|---|---|---|
| 33507-3 | 538031500002 | Corporations - Find {Scout Exploration} | Processed | 4/8/2014 8:46:30 AM | $1.00 |

**TOTAL FEE:** $1.00

**PAYMENT DETAIL**

| Batch Number | Payment Number | Payment Type | Status | Received Date | Amount |
|---|---|---|---|---|---|

**TOTAL PAYMENT:** $0.00
**SESSION BALANCE:** $1.00

New Session Search

Instructions:
🔘 INSTRUCTIONS NEED WRITTEN FOR THIS SCREEN.

# TEXAS SECRETARY of STATE
# NANDITA BERRY



**UCC** | **Business Organizations** | **Trademarks** | **Notary** | **Account** | **Help/Fees** | **Briefcase** | **Logout**
**BRIEFCASE**

**SESSION ID:** 041514KT4805
**CONTACT NAME:** NAMAN, HOWELL, SMITH & LEE, PLLC ATTORNEYS AT LAW
**SESSION STATUS:** Closed
**DATE:** 4/15/2014 10:05:48 AM

| Client Reference | Document Number | Document Type | Status | Received Date | Document Fee |
|---|---|---|---|---|---|
| 33507-3 | 539177700002 | Corporations - Find by Registered Agent {MicroSeismic, Inc.} | Processed | 4/15/2014 10:07:18 AM | $1.00 |
| 33507-3 | 539177700003 | Corporations - Find {MicroSeismic} | Processed | 4/15/2014 10:08:27 AM | $1.00 |

**TOTAL FEE:** $2.00

PAYMENT DETAIL

| Batch Number | Payment Number | Payment Type | Status | Received Date | Amount |
|---|---|---|---|---|---|

**TOTAL PAYMENT:** $0.00
**SESSION BALANCE:** $2.00

New Session Search

Instructions:
❂ INSTRUCTIONS NEED WRITTEN FOR THIS SCREEN.



NOT TO SCALE    NOT A LEGAL DOCUMENT; FOR TAX PURPOSES ONLY



The city committed fraud
When they moved parcels around

NOT TO SCALE    NOT A LEGAL DOCUMENT; FOR TAX PURPOSES ONLY

C

86166 p 2069 see
First exhibit presented
In Oct - 20 - 2014

Also 86168 p 2069 two
Different tracks of Land
please Call me
if you have any Questions
Kenneth Robert Stewart
817- 751- 3280

(C-1) is being mailed
By my Lawyer Charles Montemayor

## SPECIAL WARRANTY DEED

THE STATE OF TEXAS §
§      KNOW ALL MEN BY THESE PRESENTS:    DEED     12.00
COUNTY OF DALLAS §

                                                                TOTL    **12.00**
                                A001    5952 0000000 4493  1:07PM  1/22/93

THIS SPECIAL WARRANTY DEED is made the **8** day of January, 1993, by RESOLUTION TRUST CORPORATION, AS RECEIVER FOR JASPER FEDERAL SAVINGS AND LOAN ASSOCIATION

whose address is:

        3500 Maple Avenue, Dallas, Texas 75219-3931

as GRANTOR to

                KUK JA STEWART,

[ ]   a corporation incorporated in _____ [state]
[ ]   a general partnership organized in _____ [state]
[ ]   a limited partnership organized in _____ [state]
[ ]   a joint venture organized in _____ [state]
[ ]   Trustee of the _____ [name of trust]
      Trust under Agreement dated _____, 19___
[x]   an individual
[ ]   husband and wife (jointly and severally)

whose address is:

        2028 Sandy Lane, Irving, Texas 75060,

as GRANTEE.

      Witness that GRANTOR, for good and valuable consideration, receipt of which is acknowledged, hereby sells, grants, and conveys to GRANTEE all the real property located in Dallas County, Texas more particularly described on Exhibit "A" attached hereto, together with all tenements, hereditaments and appurtenances thereto; subject to the permitted exceptions set forth on Exhibit "B" attached hereto and current real property taxes, zoning and other governmental restrictions, and all covenants, conditions, restrictions, easements, rights-of-way and other matters of record.

      TO HAVE AND TO HOLD, all and singular, the real property aforementioned unto said GRANTEE, his heirs, executors, administrators, legal representatives and assigns, forever.

      GRANTOR hereby covenants with GRANTEE that GRANTOR will forever defend GRANTEE against claims of all persons claiming by, through or under GRANTOR, but not otherwise, except as to the reservations from and exceptions to this conveyance as aforementioned.  GRANTOR MAKES NO OTHER REPRESENTATIONS, COVENANTS OR WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, MARKETABILITY, FITNESS OR SUITABILITY FOR A PARTICULAR PURPOSE OR OTHERWISE EXCEPT AS SET FORTH AND LIMITED HEREIN.  ANY IMPLIED COVENANTS OR WARRANTIES ARE EXPRESSLY DISCLAIMED AND EXCLUDED BY THIS SPECIAL WARRANTY DEED.

      IN WITNESS WHEREOF, GRANTOR has set its hand and seal the day and year first above written.

                GRANTOR:

                RESOLUTION TRUST CORPORATION, AS RECEIVER
                FOR JASPER FEDERAL SAVINGS AND LOAN
                ASSOCIATION

                By: _____
                Name:    Charles R. Finnell
                        Attorney-In-Fact

93014 1966

THE STATE OF TEXAS §
                  §
COUNTY OF DALLAS §

This instrument was acknowledged before me on the __13__ day of January, 1993, by _Charles R. Finnell_, in his capacity as Attorney-in-Fact of RESOLUTION TRUST CORPORATION, AS RECEIVER FOR JASPER FEDERAL SAVINGS AND LOAN ASSOCIATION, on behalf of said corporation and in the capacity as herein stated.

Dena m. toll

Notary Public in and for
The State of Texas



(Type, print or stamp the Notary's name
below his or her signature)

My Commission Expires: 10-1-96

AFTER RECORDING RETURN TO:

c:\RTC\a7\c\SpecWarr.24



File No. 106531-CHP
KW #24

### EXHIBIT "A"

BEING a tract of land situated in the JOSEPH MANGUM SURVEY, ABSTRACT NO. 881, Dallas County, Texas, and being part of two tracts of land described in deed to Jasper Federal Savings and Loan Association, as recorded in Volume 86166, Page 2069, Deed Records, Dallas county, Texas, and being more particularly described as follows:

BEGINNING at a 1/2" diameter iron rod found in the South line of a tract of land described in deed from Ashlin Development Company to Ward Williford, Trustee, as recorded in Volume 88119, Page 0715, Deed Records, Dallas County, Texas, said iron rod also being at the most Northerly Northwest corner of a tract of land described in deed from Gifford-Hill & Co., Inc. to the County of Dallas as recorded in Volume 70009, Page 0319, Deed Records, Dallas County, Texas, said iron rod also being in the West line of Hunter Ferrell Road (a 57.5 foot right-of-way at this point);

THENCE SOUTH, 1538.53 feet, with the said West line of Hunter Ferrell Road and with the West line of said County of Dallas tract and along a fence line, to a 1/2" diameter iron rod found;

THENCE South 45 degrees 03 minutes 05 seconds West, 70.85 feet, with the Northwest line of said Hunter Ferrell Road and with the Northwest line of said County of Dallas tract and along a fence line, to a 1/2" diameter iron rod found, said iron rod also being in the North line of Hunter Ferrell Road (a 60' right-of-way at this point);

THENCE South 89 degrees 59 minutes 05 seconds West, 1126.74 feet, with the North line of said Hunter Ferrell Road and with the North line of said County of Dallas tract and along a fence line, to a 1/2" diameter iron rod found at the Southeast corner of a tract of land described in Deed to Jasper Federal Savings and Loan Association, as recorded in Volume 86166, Page 2069, Deed Records, dallas county, Texas;

THENCE North 00 degrees 19 minutes 26 seconds East, 1594.79 feet, with the East line of said Jasper Federal Savings and Loan Association tract, to a 1/2" diameter iron rod found in the South line of said Ward Williford, Trustee tract;

THENCE South 89 degrees 42 minutes 18 seconds East, 1167.74 feet, with the said South line of Ward Williford, Trustee tract and along a fence line, to the PLACE OF BEGINNING and containing 1,864,485 square feet (42.803 acres) of land, more or less.

93014  1968

File No. 106531-CHP
KW #24

## EXHIBIT "B"

1.    Easement granted by GIFCO PROPERTIES, INC. to TOMMY R. BARTON, ET AL, as evidenced by the instrument dated August 5, 1980 recorded in Volume 84211, Page 350, {Pg. 23} of the Deed Records, Dallas County, Texas.

2.    The rights of tenants in possession under the terms of any unrecorded leases or rental agreements.

3.    All visible and apparent easements and all underground easements the existence of which may arise by virtue of unrecorded grant or use.

4.    Any portion of the subject property lying within the boundaries of any road or roadway, public or private.

5.    Taxes for the year 1993 and all subsequent years, the payment of which Grantee herein assumes.

0161   41086

Earl Bush
COUNTY CLERK
DALLAS COUNTY

93 JAN 21 PM 3: 58



SAFECO LAND TITLE
8080 NORTH CENTRAL EXPRESSWAY
SUITE 120
DALLAS, TEXAS  75206

## PURCHASE AND SALE AGREEMENT

**Name of Project:** ___Hunter Ferrell Road___

**City and State:** ___Irving___, **TEXAS**

**RTC Project No.:** ___24 – GF106531___

**EXHIBIT**

C

-1-

## TABLE OF CONTENTS

ARTICLE 1. Agreement to Purchase and Sell ................................... 6

ARTICLE 2. Purchase Price ................................................... 6

ARTICLE 3. Earnest Money Deposit ........................................... 6

ARTICLE 4. Auction Brochure ................................................ 7

ARTICLE 5. Payment of Purchase Price ....................................... 7

ARTICLE 6. Property Information Materials; Non-Liability ...................... 8

ARTICLE 7. Title ........................................................... 8

ARTICLE 8. Representations and Warranties ................................... 9

ARTICLE 9. Condition Precedent to Closing ................................... 10

ARTICLE 10. Disclaimers; Condition of Property ............................... 10

ARTICLE 11. Closing; Deliveries at Closing ................................... 11

ARTICLE 12. Costs; Prorations .............................................. 12

ARTICLE 13. Default ........................................................ 13

ARTICLE 14. Time of the Essence ............................................ 14

ARTICLE 15. Condemnation .................................................. 14

ARTICLE 16. Risk of Loss - Casualty ......................................... 15

ARTICLE 17. Brokers ....................................................... 15

ARTICLE 18. Release of Claims .............................................. 16

ARTICLE 19. Liability of Seller and Seller's Representatives ..................... 16

ARTICLE 20. Notices ....................................................... 16

ARTICLE 21. Survival ....................................................... 16

ARTICLE 22. Assignment of Agreement ....................................... 17

ARTICLE 23. Access to Property ............................................. 17

ARTICLE 24. Miscellaneous ................................................. 17

ARTICLE 25. Interpretation .................................................. 18

ARTICLE 26. Governing Law ................................................. 19

ARTICLE 27. Provisions with Respect to the Escrow Agent ..................... 19

ARTICLE 28. Specific Provisions Required by the Jurisdiction
in Which the Property is Located ................................ 19

### Exhibits

Exhibit "A"  -  Description of the Real Property
Exhibit "B"  -  Terms of Seller Financing (if applicable)
Exhibit "B-1" -  Forms of Seller Financing Documents (if applicable)
Exhibit "C"  -  Identification of Property Information Materials
Exhibit "D"  -  Title Commitment
Exhibit "E"  -  Form of Deed
Exhibit "F"  -  Form of Bill of Sale
Exhibit "G"  -  Form of Assignment and Assumption Agreement
Exhibit "H"  -  Form of Assignment of Tenant Leases and Assumption Agreement
Exhibit "I"  -  Form of Assignment of Service Contracts
Exhibit "J"  -  Form of Notice to Tenants
Exhibit "K"  -  Buyer's Closing Affidavit
Exhibit "L"  -  Disclosure Affidavit for Individual Buyers
Exhibit "M"  -  Certain Provisions with respect to Escrow Agent

### Addenda

Some or all of the following may be attached to the Agreement if applicable.

Texas Utility District and Standby Fees Disclosure
Gulf Coast Disclosure
Environmental Addendum

Brochure No. __24__
NPI

## ENVIRONMENTAL ADDENDUM TO PURCHASE AGREEMENT

This Environmental Addendum to Purchase Agreement ("Environmental Addendum") is incorporated into and shall amend and supplement the Purchase Agreement (the "Agreement") of even date herewith, between RESOLUTION TRUST CORPORATION as ~~RECEIVER~~ for _JASPER FEDERAL SAVINGS & /_ ("Seller") and ____K · ₖ          ____ ("Purchaser").
All warranties, indemnities and disclosures contained herein shall survive closing.
LOAN ASSOCIATION

1.      Purchaser specifically acknowledges that Seller has confirmed that Seller has not previously requested preliminary environmental reports or studies prepared in connection with the Property and that the Property may be subject to certain environmental concerns and that Purchaser acknowledges that Purchaser has been advised by Seller to conduct, at its own cost, risk and liability, its own environmental inspections, studies and non-destructive tests (the "Studies") concerning the Property.

2.      Purchaser hereby agrees to indemnify, protect, defend, save and hold harmless Seller and Seller's employees, officers, directors, representatives, and attorneys from and against, and agrees to reimburse Seller for, any and all claims, demands, lawsuits, causes of action, losses, damages, liabilities, costs and expenses (including, without limitation, attorney's fees and expenses, and court costs) of any kind or character, known or unknown, asserted against or incurred by Seller at any time and from time to time in any way relating to, connected with, or arising out of or under any Applicable Environmental Laws with respect to the Property, or arising out of any act, omission, event or circumstance involving the disposal, release or presence of any Hazardous Materials on, under or about the Property. The foregoing indemnity shall be effective with respect to any claims arising out of acts or events occurring both prior to an subsequent to the Closing Date.

3.      As used herein, the term "Applicable Environmental Laws" means the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675 ("CERCLA"), the Resource Conservation and Recovery Act, as amended 42 U.S.C. §§ 6901-6991i ("RCRA"), the Clean Air Act, 42 U.S.C. §§ 7401-7642, the Clean Water Act, 33 U.S.C. §§ 1251-1387, the Toxic Substances Control Act, 15 U.S.C. §§ 2601-2654, and all other laws, rules and regulations pertaining to public health or the environment. The term "Hazardous Materials" means any "hazardous waste", as defined in RCRA, any "hazardous substance," as defined in CERCLA, or any broader meaning established by any other Applicable Environmental Laws.

4.      In the event any of the provisions of this Environmental Addendum conflict with or contradict any of the terms in the Agreement, this Environmental Addendum shall control.

EXECUTED ON this 8TH day of ____DECEMBER____, 1992.

PURCHASER:                          SELLER:

_ℓ · ℓ    · ℓ · ∽_                  RESOLUTION TRUST CORPORATION AS
                                    RECEIVER FOR  JASPER FEDERAL SAVINGS & LOAN ASSOCIATION

By: _____              By: _Jas . D. army_
Name: _____              Name: _JAMES G. up foreign_
Title: _____              Title: _ATTORNEY-IN-FACT_

### Purchase and Sale Agreement
### Basic Information Sheet

The Articles and the Exhibits of this Agreement make reference to the following items, which must be completed or noted as "Not Applicable" prior to the signing of this Agreement:

    **1.**    "**Seller**" is the Resolution Trust Corporation, as Receiver for _____ JASPER FEDERAL SAVINGS AND LOAN ASSOCIATION_____.

    **2.**    "**Buyer**" is 
_____, [check which is applicable]:

- a corporation incorporated in the State of _____.

- a general partnership in the State of _____.

- a limited partnership in the State of _____.

- a joint venture organized in the State of _____.

- Trustee of the _____
    [name of trust] Trust under Trust Agreement dated _____
    _____, 19____.

- an individual residing in the State of _____.

- husband and wife residing in the State of _____.

    **3.**    The social security number or federal taxpayer identification number of Buyer is _____ (see Section 3.4 of this Agreement).

    **4.**    "**Purchase Price**" is _____
_____ and No/100 Dollars ($_____), and consists of the following:

        (a)    "**Initial Earnest Money**" in the amount of ____$5,000000____
_____ and No/100 Dollars ($_____); and

        (b)    "**Additional Earnest Money**" in the amount of _____
_____ and No/100 Dollars ($_____), which is the difference between ten percent (10%) of the Purchase Price and the Initial Earnest Money; and

        (c)    "**Cash Balance of the Purchase Price**" in the amount of _____
_____ and No/100 Dollars ($_____), which is the entire Purchase Price less (if applicable) the following:

            (i) the Earnest Money Deposit, as hereafter defined, and

            (ii) the Amount of Seller Financing, or

            (iii) a Cash Discount ("**Cash Discount**") if applicable. A Cash Discount of ten percent (10%) of the Purchase Price applied at Closing (as hereinafter defined) as a credit against the Purchase Price, shall be given if (1) the Purchase Price is $100,000.00 or greater; (2) the Buyer elects to close this transaction for cash; and (3) the Closing occurs no later than thirty (30) days after the Effective Date (as hereinafter defined). The Buyer shall be entitled to the Cash Discount only if Buyer notifies Seller at least seven (7) days prior to the Closing Date of Buyer's election to purchase the Property for cash. If Buyer does not do so, then this contract shall be for the full Purchase Price and the Discount shall not apply.

        (d)    "**Seller Financing**" shall be offered for Properties with a Purchase Price of $100,000.00 or greater and is the financing provided by Seller pursuant to **Exhibit "B"** hereof. "**Amount of Seller Financing**" (if applicable) is the amount of _____
_____ and No/100 Dollars ($_____), at _____ percent per annum, amortized over _____ (____) years with a _____-year term, for which Buyer shall apply under Article 5 hereof. The completion of this information is not a promise or assurance that Buyer will be approved for such Seller Financing.

    **5.**    "**Broker**" is Kennedy-Wilson, Inc.; and the Registered Broker, if applicable, is _____.

    **6.**    "**Escrow Agent**" is Safeco Land Title.

    **7.**    "**Effective Date**" is ____December 8____, 1992, which is the date Seller signs this Agreement.

-4-

8.      "Closing Date," shall be, in the event Purchaser has elected to purchase the Property for cash in accordance with the terms of this Agreement, no later than thirty (30) days after the Effective Date or, in the event Purchaser has elected to purchase the Property with Seller Financing in accordance with the terms of this Agreement, no later than fifteen (15) days after Buyer's application for Seller Financing is approved and Buyer is notified in writing in accordance with Article 5, but in no event shall such date exceed ninety (90) days from the Effective Date hereof, subject to Section 24.4 of this Agreement.

9.      "Notices" shall be addressed as follows:

If to Seller, to:

Kennedy-Wilson, Inc.
9525 Katy Freeway, Suite 471
Houston, Texas 77024
Attention: Kelly Keenan

Phone No. (713) 467-0469
Telecopier No. (713) 467-0776

With a copy to:

Trevino & Leppert
3200 Wilcrest, Suite 440
Houston, Texas 77042
Attention: Mike Leppert

Phone No. (713) 780-3437
Telecopier No. (713) 780-9136

With a copy to:
Jane Pearson
Resolution Trust Corporation
3500 Maple Avenue, 15th Floor
Dallas, Texas 75219-3931

Phone No. 214/443-4703
Telecopier No. 214/443-4630

If to Buyer, to:

_____
_____
_____
Attention: _____

Phone No. _____
Telecopier No. _____

With a copy to:

_____
_____
Attention: _____

Phone No. _____
Telecopier No. _____

If to Escrow Agent, to:
Safeco Land Title
8080 N. Central Expressway, Suite 120
Dallas, Texas 75206
Attention: Nancy Perdue or Diane Heintze

Phone No. (214) 987-0800
Telecopier No. (214) 987-4446

10.     "Title Company" is Safeco Land Title.

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT ("<u>Agreement</u>") is entered into by and between Seller and Buyer. The Basic Information Sheet attached to this Agreement is incorporated herein and made a part hereof by this reference, and this Agreement is invalid and unenforceable without a fully completed Basic Information Sheet attached hereto.

ARTICLE 1    <u>Agreement to Purchase and Sell.</u>

1.1    <u>Property Sold.</u>  Seller agrees to sell and convey to Buyer, and Buyer agrees to purchase from Seller, under the terms and conditions set forth in this Agreement, all right, title and interest of Seller in and to the following:

(a)    The parcel(s) of real property described on <u>Exhibit "A"</u>, and any improvements situated on such parcel(s), if any, together with any and all easements, covenants and other rights appurtenant to such parcel(s) (collectively, "<u>Real Property</u>"); and

(b)    All furniture, furnishings, fixtures, equipment and other tangible personal property, if any, that is now or hereafter affixed to and/or located at the Real Property (collectively, "<u>Personal Property</u>"); and

(c)    Intangible property (collectively, "<u>Intangible Property</u>") consisting of (i) all rights of Seller, if any, under any and all Leases and Contracts in effect on the Closing Date, (ii) any and all refundable tenant security deposits, prepaid rents and other deposits (and interest thereon, if required by law), if any in Seller's possession with respect to said Leases and Contracts (and Buyer acknowledges Seller may not have received all of the tenant security deposits, other deposits and prepaid rent otherwise attributable to the Leases), with the conveyance of such deposits and prepaid rent to Buyer to be made in the manner set forth in Section 12.4 of this Agreement, (iii) any and all transferable licenses, permits, authorizations, certificates of occupancy and other approvals in effect as of the Closing Date and necessary for the current use and operation of the Real Property or the Personal Property (collectively, "<u>Permits</u>"), and (iv) any and all transferable warranties, architectural or engineering plans and specifications and tests and studies, and development rights that exist as of the Closing Date and relate to the Real Property or the Personal Property (it being understood and agreed, however, that the "Intangible Property" does not include any trade names or franchises). As used herein, "<u>Leases</u>" means all leases, tenancies, licenses and other rights of occupancy or use of or for any portion of the Real Property or the Personal Property, and any amendments, renewals and extensions thereof, and "<u>Contracts</u>" means all contracts and agreements of any kind for the management, repair or operation of the Property (as hereafter defined) other than Leases.

1.2    <u>Definition.</u>  The Real Property, Personal Property and the Intangible Property are hereafter collectively referred to as the "<u>Property</u>".

ARTICLE 2    <u>Purchase Price.</u>

The purchase price for the Property ("<u>Purchase Price</u>"), payable in U.S. dollars, in cash in the form of wire transfer or certified check in immediately good and available funds, is set forth on the Basic Information Sheet.

ARTICLE 3    <u>Earnest Money Deposit.</u>

3.1    <u>Initial Earnest Money.</u>  Simultaneously with delivery by Buyer of an executed copy of this Agreement to Seller, Buyer shall tender the Initial Earnest Money in the amount shown on the Basic Information Sheet payable in the form of a certified or cashier's check made payable to or endorsed over to the order of Safeco Land Title, with a notation that the same is an earnest money payment under this Agreement.  If Seller accepts this Agreement, Seller shall sign and deliver this Agreement and shall forward the Initial Earnest Money to the escrow agent designated by Seller on the Basic Information Sheet ("<u>Escrow Agent</u>").  Seller shall instruct the Escrow Agent to deposit the Initial Earnest Money in a separate, federally insured account ("<u>Escrow Account</u>").  In the event that the Initial Earnest Money is equal to or greater than the sum of Ten Thousand and No/100 Dollars ($10,000.00), the Escrow Account shall additionally be an interest-bearing account.  This Agreement shall not be binding upon Seller until executed by Seller.  Failure of Seller to notify Buyer on a timely basis that Seller accepts Buyer's offer shall not constitute a rejection by Seller of Buyer's offer.

3.2    <u>Additional Earnest Money.</u>  If the Initial Earnest Money is less than ten percent (10%) of the Purchase Price, the Buyer shall be required to make an additional deposit ("<u>Additional Earnest Money</u>"), the amount of which, when taken together with the Initial Earnest Money, shall equal ten percent (10%) of the Purchase Price ("<u>Earnest Money Deposit</u>").  Buyer shall tender the Additional Earnest Money, at the time Buyer signs this Agreement, in the form of a personal or corporate check

made payable to Safeco Land Title, or a certified or cashier's check endorsed over to Safeco Land Title, with a notation that the same is an earnest money payment under this Agreement. The Escrow Agent shall deposit the Additional Earnest Money in the Escrow Account and shall hold the same pursuant to the same instructions given with respect to the Initial Earnest Money.

3.3    Interest on Account. No interest shall be earned on any payment required to be made hereunder unless (i) good funds are received into the Escrow Account, and (ii) the amount of Earnest Money paid hereunder is equal to or greater than the sum of Ten Thousand and No/100 Dollars ($10,000.00). No interest earned on the Initial Earnest Money shall be credited toward the amount of Additional Earnest Money due.

3.4    Escrow Terms. The Earnest Money Deposit (including all interest that is earned thereon) is to be held in escrow and disbursed in accordance with the terms of this Agreement. To allow the Escrow Account to be opened, Buyer is setting forth Buyer's federal tax employer identification number, or Social Security number, as the case may be, on the Basic Information Sheet.

ARTICLE 4    Auction Brochure.

Buyer acknowledges that Buyer has received a copy of the Auction Information and Terms ("Auction Terms") prepared by Kennedy-Wilson, Inc. for the auction to be held on December 8, 1992, at the Loew's Anatole Hotel in Dallas, Texas, setting forth the conditions governing the sale of the Property to Buyer and agrees to fully comply with all Auction Terms. In the event of any conflict between the Auction Terms and this Agreement, the terms of this Agreement shall control.

ARTICLE 5    Payment of Purchase Price.

5.1    Payment of Purchase Price. The Purchase Price shall be paid at Closing as follows:

(a)    At Closing, the Earnest Money Deposit shall be credited on the settlement statement towards the Cash Portion of the Purchase Price (as designated on the Basic Information Sheet); and

(b)    Buyer shall deliver to Escrow Agent the Cash Portion of the Purchase Price (less the amount of the Earnest Money Deposit) by certified check, cashier's check, or wire transfer of current funds received and credited to the Escrow Account; and

(c)    If Buyer is approved for Seller Financing, Buyer shall sign, acknowledge and deliver to Escrow Agent loan documents in favor of Seller in accordance with the provisions of Section 5.2 and Exhibit "B".

5.2    Terms of Seller Financing. Seller Financing shall be offered to Buyers of properties for which the Purchase Price is $100,000.00 or greater. If any portion of the Purchase Price is to be financed by Seller, then the amount of such financing is described as the Amount of Seller Financing on the Basic Information Sheet. The terms and conditions of the Seller Financing are set forth on Exhibit "B", and the loan documents to be used in connection therewith shall be in the forms set forth on Exhibit "B-1".

5.3    Financing Application. If Buyer is seeking Seller financing, this Agreement and Seller's obligations hereunder are expressly subject to and conditioned upon the recommendation for approval of Buyer for such financing by Seller's loan processing agent ("Loan Underwriter"). Unless this Agreement has been previously terminated in accordance with the terms hereof, Buyer shall make application for the Seller Financing with the Loan Underwriter within five (5) business days after the Effective Date. The costs of securing financing for the purchase of IMPROVED PROPERTIES shall include a non-refundable seller financing application fee (the "Application Fee") in the amount of the greater of $1,500.00 or one-tenth (1/10th) of one percent (1%) of the Loan Amount. The costs of securing financing for the purchase of UNIMPROVED PROPERTIES shall include an Application Fee in the amount of (a) the greater of $1,500.00 or one-tenth (1/10th) of one percent (1%) of the Loan Amount for transactions with a Purchase Price exceeding $500,000.00, or (b) the greater of $250.00 or one-tenth (1/10th) of one percent (1%) of the Loan Amount for transactions with a Purchase Price of $500,000.00 or less. The costs of securing financing shall also include Seller's attorney's fees and expenses in connection therewith. Buyer shall use its best efforts thereafter to deliver or cause to be delivered to the Loan Underwriter such information as the Loan Underwriter may reasonably request to evaluate the creditworthiness of Buyer.

5.4    Effect of Failure to Apply. If Buyer wishes to seek Seller Financing but fails to make its application to the Loan Underwriter within the time periods set forth in Section 5.3 above, Buyer shall forfeit its right to apply for Seller Financing and this Agreement shall become an enforceable contract for Buyer's purchase of the Property by payment of the entire Purchase Price in cash. Buyer irrevocably agrees that by any failure to apply for Seller Financing within such time period, Buyer consents to such a modification of this Agreement.

5.5    Effect if Buyer is Rejected for Seller Financing. The Loan Underwriter shall be responsible for notifying Buyer of the approval or disapproval of Buyer for Seller Financing. The Loan

Underwriter shall be entitled to use any form of notification which the Loan Underwriter in its sole discretion deems is appropriate under the circumstances, and shall not be bound, for purposes of this notification, to the notice provisions otherwise applicable to this Agreement. If Buyer is not approved for Seller Financing, Buyer shall have five (5) business days from the date of the Loan Underwriter's notification of such disapproval, to either (a) elect to purchase the Property for "all cash", or (b) terminate this Agreement by written notice to Seller in which case the Earnest Money with any interest thereon shall be paid to Buyer. If Buyer does not timely make such election, Buyer shall be deemed to have elected to purchase Property for "all cash". Buyer irrevocably agrees that by failing to make such election within such time period, Buyer consents to such a modification of this Agreement. In the event Buyer elects or is deemed to have elected to purchase the Property for "all cash," pursuant to this Section 5.5, Buyer shall close the transaction within ten (10) business days from the date Buyer so elects or is deemed to have so elected, and Buyer shall be entitled to the Cash Discount as set forth in the Basic Information Sheet attached hereto. If Seller determines, in its sole discretion, that Buyer's failure to qualify for Seller Financing is the result of a material misrepresentation or omission by Buyer in the completion of this Agreement or the Loan Application, Buyer shall forfeit the Earnest Money to Seller, unless Buyer has elected to purchase the Property for cash in accordance with the provisions of this Section 5.5.

ARTICLE 6    Property Information Materials; Non-Liability.

Buyer acknowledges that, prior to Buyer's execution of this Agreement, Seller has delivered to Buyer, and Buyer has reviewed, the materials and information concerning the Property identified on **Exhibit "C"** within Seller's possession (collectively, "**Property Information Materials**"). Buyer acknowledges and understands that the Property Information Materials may have been prepared by parties other than Seller and that Seller makes no representation or warranty whatsoever, express or implied, with respect to the content or accuracy of the Property Information Materials or with respect to any of the matters disclosed thereby. Buyer hereby acknowledges that Buyer has not relied upon such materials and information in electing to purchase the Property and Buyer specifically releases Seller from any and all claims, demands, causes of action, losses, damages, liabilities, judgments, costs and expenses (including, without limitation, attorneys' fees, whether suit is instituted or not) (collectively, "**Claims**") in connection with information that is contained in, or that should have been contained in, the Property Information Materials. Buyer acknowledges that Buyer has had an ample opportunity to investigate the Property and all aspects of its operation, and that Buyer is relying upon its own investigation in purchasing the Property. The acreage and/or square footage of the Property as may be stated in the Property Information Materials is approximate, and Buyer shall have no right to terminate this Agreement, obtain a reduction in the Purchase Price, or otherwise receive any concessions or change the terms of this Agreement, by reason of any inaccuracy in the acreage and/or square footage of the Property as may be stated in the Property Information Materials.

ARTICLE 7    Title.

7.1    State of Title. Buyer hereby acknowledges that Buyer has reviewed and approved a current Owner's Title Policy Commitment attached hereto as **Exhibit "D"** (the "Title Commitment"), setting forth the state of title to the Property, as represented by the Title Company together with the Title Company's description of all recorded exceptions or conditions to such title, including, without limitation all easements, restrictions, right-of-ways, covenants, reservations and all other encumbrances affecting the Property. Title to the Property is to be conveyed at Closing to Buyer free of liens, encumbrances, judgments, covenants, conditions, restrictions, easements, encroachments and rights-of-way, recorded and unrecorded which materially affect the use of the Property; subject, however, to the Permitted Encumbrances. "**Permitted Encumbrances**" shall mean those matters affecting title that are set forth on the Title Commitment, and includes those items on Schedule C of the Title Commitment which are not cleared or released, by Seller (at Seller's sole determination and option), prior to the Closing Date and shall additionally include any other matters of record or which would be revealed by a physical inspection or survey of the Property and which affect the Property.

7.2    Seller shall have the option, but not the obligation, at Seller's sole cost and expense, to cure or remove any other Permitted Encumbrances and any title defects which arise after the date of the title insurance commitment which are not included as Permitted Encumbrances on **Exhibit "D"** attached hereto (such items are "**Further Encumbrances**") either by direct action or payment or by providing title insurance coverage which insures against the Permitted Encumbrances or Further Encumbrances or insures around such Permitted Encumbrances or Further Encumbrances) or to pay the Buyer at Closing (by credit toward the Cash Portion of the Purchase Price) an amount of money which Seller estimates to be sufficient to fully discharge the Permitted Encumbrances or Further Encumbrances.

7.3    Seller may extend the Closing Date by up to ninety (90) days in order to remove or cure the Permitted Encumbrances or Further Encumbrances. If Seller elects not to cure or is unable to cure the Further Encumbrances, Seller shall so notify Buyer prior to the Closing Date (or any extension thereof), and Buyer's remedy shall be either (i) to terminate this Agreement by giving Seller written notice thereof, in which event the Earnest Money Deposit together with interest thereon shall be returned to Buyer, and neither party thereafter shall have any further rights, duties or obligations hereunder; or (ii) to elect to purchase the Property subject to the Permitted Encumbrances and the Further Encumbrances not so removed or cured, in which event any encumbrances not removed or

cured shall be deemed to be Permitted Encumbrances, and the Purchase Price shall not be reduced or offset by any amount.

**ARTICLE 8**    Representations and Warranties.

8.1    Seller's Representations and Warranties.    Seller represents and warrants to Buyer that, as of the Effective Date, each of the persons executing this Agreement on behalf of Seller is duly authorized to do so, Seller has full right and authority to enter into this Agreement and to consummate the transactions contemplated herein, and this Agreement constitutes the valid and legally binding obligation of Seller, enforceable against Seller in accordance with its terms.

8.2    Buyer's Representations and Warranties.    Buyer represents and warrants to Seller that the following are true, accurate and complete as of the Effective Date:

(a)    If Buyer is a corporation or partnership, Buyer is duly organized, validly existing and in good standing under the laws of the jurisdiction in which it was organized, and is qualified to do business in the jurisdiction in which the Property is located or will be so qualified within thirty (30) days after the Effective Date. if Buyer is a Trustee, an individual, or husband and wife, Buyer resides at the address shown on the Basic Information Sheet.

(b)    Each of the persons executing this Agreement on behalf of Buyer is duly authorized to do so. Buyer has full right and authority to enter into this Agreement and to consummate the transactions contemplated herein. This Agreement constitutes the valid and legally binding obligation of Buyer and is enforceable against Buyer in accordance with its terms, subject to the application of laws relating to bankruptcy, moratorium, and other laws relating to creditors' rights generally, and subject to the discretion of a court of equity in granting the remedy of specific performance with respect to any provisions hereof.

(c)    There are no actions, suits, claims or other proceedings pending or, to the best of Buyer's knowledge, contemplated or threatened against Buyer that could affect Buyer's ability to perform its obligations under this Agreement.

(d)    If Buyer is not obtaining Seller Financing hereunder, Buyer has sufficient funds available to consummate the Closing of the transaction described in this Agreement.

(e)    If Buyer is obtaining Seller Financing hereunder, that (i) Buyer has sufficient funds available to tender at Closing the Cash Balance of the Purchase Price; (ii) Buyer, its principals and (if applicable) guarantors, have (and anticipate continuing to have) resources and cash flow available from all sources to cover the anticipated negative cash flow from the Property (including debt service) over the term of the Seller Financing loan; (iii) neither Buyer nor any entity related to Buyer (including without limitation any corporations which are parents or subsidiaries of Buyer, or which have common ownership or officers with Buyer, and any partnerships in which Buyer was/is a general partner and any beneficiary of a trust for which Buyer is acting as a trustee) has been the subject of an order for relief under the federal Bankruptcy Code within the past ten years; and (iv) neither Buyer nor any related entity (as described above) is subject to any outstanding federal or state income tax liens.

(f)    Neither Buyer nor any Affiliate of Buyer, nor any general partner or joint venturer in Buyer, nor any trustee or beneficiary of a trust for which Buyer is acting as a trustee is a Prohibited Buyer. **"Prohibited Buyer"** means any party to whom a transfer or assignment would not be permitted pursuant to the Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act of 1990, and the rules and regulations now or hereafter promulgated thereunder. **"Affiliate"** means any person, firm or corporation that controls or is controlled by Buyer, or is controlled by the same persons or entities as Buyer. **"Control"** with respect to a corporation means the ownership of, and the right to exercise, more than fifty percent (50%) of the total combined voting power of all classes of stock of the controlled corporation issued, outstanding and entitled to vote for the election of directors, whether such ownership be direct or indirect through control of another corporation(s) or firm(s).

(g)    Except as set forth in the Buyer's Closing Affidavit attached hereto as Exhibit "K", Buyer (and each of the persons executing this Contract on behalf of Buyer if Buyer is not an individual) hereby represents and warrants that neither Buyer nor any officer or director, general partner or principal of Buyer (nor any person in control of or under common control of Buyer if Buyer is not an individual), nor any beneficiary of a trust for which Buyer is acting as a trustee is now or, during the two-year period ending on the date of Buyer's execution of this Agreement, has been an employee of, or is currently an adverse party in litigation with any of the following entities or their successors: the Federal Home Loan District Bank; the Federal Home Loan Bank Board; the Federal Savings and Loan Insurance Corporation ("FSLIC"); a FSLIC Receivership, or any subsidiaries or affiliates thereof; the Federal Asset Disposition Association ("FADA"); the Federal Deposit Insurance Corporation ("FDIC"); the Resolution Trust Corporation ("RTC"); any contractor assisting the FSLIC, FDIC, RTC or the receivership of any financial institution in the management to disposition of assets; any of the agencies created under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"); or the Association for which Seller is acting as receiver.

-9-

(h)    Neither the execution and delivery of this Agreement nor the consummation of the transactions hereby contemplated will violate or be in conflict with (i) any applicable provisions of law, (ii) any order of any court or government agency having jurisdiction over the Buyer, or (iii) any agreement or instrument to which Buyer is a party or by which Buyer is bound.

8.3    Limitation on Subsequent Contracts. Subsequent to the Effective Date, Seller shall not, without Buyer's prior consent, such consent not to be unreasonably withheld, enter into any Contracts other than (a) Contracts for work to be completed, or that are to terminate, at or before Closing, and (b) service Contracts that are terminable on not more than sixty (60) days' notice.

8.4    Survival. All representations and warranties of Buyer and Seller made herein shall survive Closing and not be merged therein.

ARTICLE 9    Condition Precedent to Closing.

9.1    Conditions Precedent for Buyer. The obligation of Buyer to purchase the Property from Seller under this Agreement is subject to the satisfaction, as of Closing, of each of the following conditions:

(a)    The representations and warranties made by Seller in this Agreement shall be true, accurate and complete in all material respects on and as of the Closing Date with the same force and effect as if such representations and warranties had been made on and as of such date.

(b)    Title to the Property shall conform with the requirements of Article 7.

9.2    Conditions Precedent for Seller. The obligation of Seller to sell the Property to Buyer under this Agreement is subject to the satisfaction, as of Closing, of each of the following conditions:

(a)    The representations and warranties made by Buyer herein shall be true, accurate and complete in all material respects on and as of the Closing Date with the same force and effect as if such representations and warranties had been made on or as of such date.

(b)    Buyer shall have performed all of the covenants and obligations required by this Agreement to be performed by Buyer on or before Closing, including, without limitation, satisfaction of all requirements in connection with Seller financing, if applicable.

(c)    Neither Buyer nor its general partners, nor any beneficiary of a trust for which Buyer is acting as a trustee, if any, (i) shall be in receivership or dissolution, (ii) shall have made an assignment for the benefit of creditors or admitted in writing its or their inability to pay its or their debts as they mature, or (iii) shall have been adjudicated a bankrupt or filed a petition in voluntary bankruptcy or a petition or answer seeking reorganization or an arrangement with creditors under the federal Bankruptcy Code or any other similar law or statute of the United States or any jurisdiction and no such petition shall have been filed against Buyer or its general partners if any.

9.3    Certain Items Not Contingencies. Obtaining licenses, permits and authorizations necessary to operate the Property, or transfers of Seller's licenses, is not a condition to Buyer's obligation to close. Buyer shall be responsible for obtaining, at its own expense, any and all such licenses, permits and authorizations or an assignment of the same. All costs of such licenses, permits and authorizations, or assignments of the same from Seller, shall be paid by Buyer. Should Buyer not obtain any required consent for such transfers by the Closing, Seller shall cooperate with Buyer, including but not limited to, the execution of any documents reasonably required after the Closing to transfer such items, but Seller shall not be required to incur any additional costs or expenses.

ARTICLE 10    Disclaimers; Condition of Property.

10.1    CONDITION OF PROPERTY. BUYER ACKNOWLEDGES AND AGREES THAT THE PROPERTY WILL BE CONVEYED "AS IS", "WHERE IS", AND WITH ALL FAULTS AND SELLER MAKES NO REPRESENTATION OR WARRANTY WHATSOEVER WHETHER EXPRESSED OR IMPLIED WITH RESPECT TO THE PROPERTY, THE AVAILABILITY OF UTILITIES TO THE PROPERTY, ACCESS OF THE PROPERTY TO PUBLIC ROADS, OR THE CONDITION, ADEQUACY OR SUITABILITY OF THE PROPERTY FOR BUYER'S PURPOSES. BUYER AGREES THAT BUYER IS NOT RELYING ON ANY WARRANTY OR REPRESENTATION OF SELLER OR ANY AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER, AND THAT BUYER IS BUYING THE PROPERTY "AS IS," "WHERE IS," SUBJECT TO ALL FAULTS AND WITHOUT ANY EXPRESSED OR IMPLIED WARRANTIES OF ANY KIND, INCLUDING BUT NOT LIMITED TO, MATERIALS, WORKMANSHIP, GOOD AND WORKMANLIKE CONSTRUCTION, DESIGN, CONDITION, HABITABILITY, TENANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY OR THE ENVIRONMENTAL CONDITION OF THE PROPERTY AND THE PRESENCE OF OR CONTAMINATION BY HAZARDOUS MATERIALS AND SELLER HEREBY DISCLAIMS ANY SUCH WARRANTY. BUYER HAS DETERMINED ON BUYER'S BEHALF (I) THE PHYSICAL CONDITION OF THE PROPERTY AND THAT THERE IS NO DEFECT OR CONDITION WHICH IS UNACCEPTABLE TO BUYER, (II) WHETHER ANY PORTION OF THE PROPERTY LIES IN ANY FLOOD PLAIN, FLOOD WAY OR SPECIAL FLOOD HAZARD AREA, (III) WHETHER ANY GEOLOGICAL FAULT OR UNSATISFACTORY SOIL, CONDITION EXISTS ON ANY PORTION OF THE PROPERTY, (IV) THAT THE PROPERTY

-10-

COMPLIES WITH ALL CITY OR COUNTY ZONING AND BUILDING REGULATIONS, AND (V) THAT ALL ENVIRONMENTAL CONDITIONS RELATING TO THE PROPERTY ARE ACCEPTABLE TO BUYER. BUYER ACKNOWLEDGES THAT SELLER ACQUIRED TITLE TO THE PROPERTY BY FORECLOSURE, DEED IN LIEU THEREOF OR OTHER REALIZATION OF ITS LIEN OR SECURITY INTEREST IN THE PROPERTY. BUYER FURTHER ACKNOWLEDGES THAT SELLER HAS NOT OCCUPIED THE PROPERTY; AND THEREFORE, THE PROPERTY MAY CONTAIN DEFECTS, OR MAY BE IN NEED OF REPAIR. IN THE EVENT ANY INFORMATION RECEIVED FROM ANY BROKER OR SALES AGENT OR CONTAINED IN ANY AUCTION INFORMATION (ORAL OR WRITTEN) CONFLICTS WITH EXHIBIT "A" OR THE TITLE COMMITMENT, THE LATTER SHALL CONTROL.  BUYER EXPRESSLY WAIVES, TO THE FULLEST EXTENT OF THE LAW, ANY CLAIMS UNDER FEDERAL, STATE OR OTHER LAW THAT BUYER MIGHT OTHERWISE HAVE AGAINST SELLER RELATING TO THE CONDITION OF THE PROPERTY.  IT IS THE SOLE RESPONSIBILITY OF BUYER TO INSPECT THE PROPERTY PRIOR TO THE SALE.  BUYER ACKNOWLEDGES THAT BUYER HAS BEEN PROVIDED AN OPPORTUNITY TO FULLY INSPECT THE PROPERTY PRIOR TO SALE.  NO REDUCTION IN THE SALES PRICE WILL BE GIVEN BY SELLER, AND BUYER MAY NOT TERMINATE THE PURCHASE AGREEMENT BASED UPON AN INSPECTION OF THE PROPERTY AFTER THE SALE REGARDLESS OF THE UNSUITABILITY OF THE PROPERTY AS TO BUYER'S INTENDED USE, PHYSICAL AND ENVIRONMENTAL CONDITION, VALUE, AND EXTENT OF NEEDED REPAIRS, IF ANY.  SELLER SHALL NOT BE RESPONSIBLE FOR ANY DAMAGED, LOST, OR STOLEN ITEMS OF PERSONAL PROPERTY FROM, IN, OR ON THE PROPERTY PRIOR TO THE DATE OF CLOSING.

      10.2    DISCLAIMER OF WARRANTIES.  SELLER SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST OR PRESENT, EXPRESS OR IMPLIED, CONCERNING THE PROPERTY, EXCEPT AS SPECIFICALLY SET FORTH IN THIS AGREEMENT. BUYER ACKNOWLEDGES THAT BUYER HAS HAD AN OPPORTUNITY TO EXAMINE THE FINANCIAL AND LEGAL DOCUMENTS, RECORDS, FILES AND INFORMATION RELATING TO THE PROPERTY NOW IN THE POSSESSION OF SELLER, ITS AGENTS OR CONTRACTORS AND IS PURCHASING THE PROPERTY BASED SOLELY ON ITS OWN INDEPENDENT INVESTIGATIONS AND FINDINGS AND NOT IN RELIANCE ON ANY INFORMATION PROVIDED BY SELLER.

      10.3    BUYER INSPECTION.    ANY FACTUAL INFORMATION SUCH AS PROPERTY DIMENSIONS, FLOOR PLANS, SQUARE FOOTAGE, SKETCHES OR LEASE ABSTRACTS SHOWN TO BUYER OR SET FORTH HEREIN ARE OR MAY BE APPROXIMATE, AND BUYER REPRESENTS TO SELLER THAT BUYER HAS INSPECTED AND VERIFIED THE FACTS AND INFORMATION PRIOR TO EXECUTING THIS AGREEMENT.  NO LIABILITY FOR ANY INACCURACIES, ERRORS OR OMISSIONS IS ASSUMED BY SELLER, THE BROKER OR OTHER AGENTS OR REPRESENTATIVES OF SELLER.

      10.4    Assumption of Leases and Contracts.  At Closing, Buyer shall assume the interests and obligations of Seller under all Leases and Contracts then in effect.

**ARTICLE 11    Closing; Deliveries at Closing.**

      11.1    Time and Place of Closing.  The closing of the transaction described in this Agreement ("Closing") shall take place on the date shown on the Basic Information Sheet, which is, in the event Purchaser has elected to purchase the Property for cash in accordance with the terms of this Agreement, thirty (30) days after the Effective Date or, in the event Purchaser has elected to purchase the Property with Seller Financing in accordance with the terms of this Agreement, fifteen (15) days after Buyer's application for Seller Financing is approved and Buyer is notified in writing, subject to Section 24.4 of this Agreement. If the Closing date falls on a weekend or federal holiday, the Closing date shall be the next succeeding business day.  Except as permitted under Articles 7, 15 and 16, the Closing date shall not be later than ninety (90) days after the Effective Date of this Agreement. The Closing shall be at the time of day designated by Seller, such time to be during normal business hours on the Closing Date, and at such reasonable location as Seller designates. Nothing herein shall prevent the parties from closing by means of mail and/or express delivery of documents to the Title Company, if the parties so agree.

      11.2    Seller's Deliveries at Closing.  At Closing, Seller shall deliver to Title Company the following documents, duly and fully executed, acknowledged and notarized as appropriate:

          (a)    A special warranty deed in substantially the form of **Exhibit "E" ("Deed")**;

          (b)    A bill of sale in substantially the form of **Exhibit "F"**, conveying title to the Personal Property, if any (**"Bill of Sale"**);

          (c)    An Assignment and Assumption Agreement in substantially the form of **Exhibit "G"**, in which Seller conveys and Buyer assumes the Intangible Property, if any (**"Assignment and Assumption Agreement"**);

          (d)    An Assignment of Tenant Leases and Assumption Agreement in substantially the form of **Exhibit "H"**, in which Seller conveys and Buyer assumes the rights duties and obligations under any existing Leases if any (**"Assignment of Leases"**);

-11-

(e)    An Assignment of Service Contracts in substantially the form of **Exhibit "I"**, in which Seller conveys and Buyer assumes the rights, duties, and obligations under any existing Contracts, if any (**"Assignment of Contracts"**);

(f)    An affidavit with respect to compliance with the Foreign Investment in Real Property Tax Act (Internal Revenue Code § 1445, as amended, and the regulations issued thereunder);

(g)    An affidavit with respect to the elimination of any standard or printed exceptions in a final policy of title insurance for unrecorded mechanics' liens; and

(h)    Written notice from Seller or Seller's representative to each tenant of the Property, if any, in the form of **Exhibit "J"**.

11.3    **Delivery of Possession.**    If applicable, all keys to the Property then in Seller's possession; all Leases, Contracts, and Permits then in effect; and copies of all books and records in Seller's possession and necessary for the orderly transition of operation of the Property (except any books and records which Seller may be legally obligated to retain, in which event Seller shall allow Buyer to make photocopies of the same) shall be made available to Buyer at the Property on the Closing Date.

11.4    **Title Insurance Policy.**    Seller shall at Closing make the necessary arrangements with the Title Company for the Title Company to provide Buyer after Closing with an Owner's Policy of Title Insurance, in the form stated in the Title Commitment, which policy shall insure Buyer's fee simple title to the Property in the amount of the Purchase Price, subject to the Permitted Encumbrances and such other exceptions as may be acceptable to Buyer.

11.5    **Buyer's Deliveries at Closing.**    At Closing, Buyer shall deliver to Title Company the following documents, duly and fully executed, acknowledged and notarized as appropriate:

(a)    Written instructions to Escrow Agent to release the Earnest Money Deposit for disbursement to Seller, to be credited against the Cash Portion of the Purchase Price;

(b)    The balance of the Cash Portion of the Purchase Price and other funds sufficient to pay all Closing and other costs and adjustments to be paid by Buyer under this Agreement (to be delivered by cashier's or certified check, or by wire transfer to the escrow account of Title Company);

(c)    If applicable, all documents evidencing, governing or securing any financing provided by Seller (including such documents as may be required by the Title Company in connection with issuance of the mortgagee's policy of title insurance in favor of Seller as lender);

(d)    If Buyer is a corporation or partnership, a certificate of corporate resolution or a partnership resolution to evidence Buyer's capacity and authority to consummate Closing, and execute all documents prepared in connection therewith, and a certified copy of Buyer's articles of incorporation, bylaws and a certificate of good standing from the proper authority of the state of incorporation or, if applicable, a partnership agreement, including all amendments thereto. If Buyer is a trust, a written trust agreement disclosing all beneficiaries of the trust and evidencing the Trustee's authority to act on behalf of the trust. In addition, if Buyer receives Seller financing, Buyer shall supply an opinion letter in a form acceptable to Seller or Loan Underwriter opining as to proper entity status and authority and other items which in Loan Underwriter's opinion are relevant;

(e)    The Assignment and Assumption Agreement;

(f)    A certificate in the form of **Exhibit "K"** that the representations and warranties made by Buyer in this Agreement (and the Loan Application, if Buyer is seeking Seller Financing) are true and accurate in all material respects on and as of the Closing Date. In addition, in the case of a trust, the beneficiary of the trust will also execute such certificate; and

(g)    If Buyer is an individual, the affidavit set forth on **Exhibit "L"**.

11.6    **Settlement Statement.**    Seller and Buyer each agree to sign and deliver, at Closing, a settlement statement setting forth the charges, adjustments and credits to each party and to execute and deliver such other documents and take such other actions as either party or the Title Company or Escrow Agent might reasonably request to consummate the transactions herein contemplated.

11.7    **Instructions to Title Company.**    At Closing, the Title Company shall record, among the appropriate public records, all documents to be recorded, and disburse all funds, and deliver all original documents and copies thereof, to the appropriate parties.

**ARTICLE 12    Costs; Prorations.**

12.1    **Payments by Seller.**    At Closing, subject to the provisions of Section 7.2 hereof, Seller shall pay (a) the costs of releasing all liens, judgments and other encumbrances on the Property as of the Closing Date that are not Permitted Encumbrances and of recording such releases; (b) the costs

of the owner's policy of title insurance naming Buyer as the insured, but not including the costs for any special coverages, including, but not limited to, deletion or modification of the standard survey exception and the deletion of the exception as to rights of parties in possession; and (c) all other expenses to be paid by Seller, if any, under the terms of this Agreement.  Seller also shall be responsible for the payment of Seller's own attorneys' fees, except that Buyer shall be responsible for the payment of all of Seller's attorneys' fees incurred in connection with the approval, documentation and closing of any financing provided by Seller under Section 5.2.

12.2    Payments by Buyer.  At Closing, Buyer shall pay (i) the costs of securing financing for the purchase of the Property as described in Section 5.3; (ii) all the fees and costs due Escrow Agent for its services, including but not limited to, all escrow fees charged by the Escrow Agent (including but not limited to, the $200.00 escrow fee charged for processing this order); (iii) to the extent permitted by law in the jurisdiction where the Property is located, the amount or cost of all recordation costs; (iv) the costs of title examination and issuance of any and all mortgagee title policies of title insurance; (v) the costs of any special coverages in the owner's policy of title insurance, including, but not limited to, deletion of the standard survey exception; (vi) all other costs of Closing, except as provided in Section 12.1; and (vii) any and all other expenses to be paid by Buyer under the other terms of this Agreement.  Buyer shall also be responsible for the payment of Buyer's own attorneys' fees.

12.3    Prorations.  Current real estate taxes, assessments which the Seller is legally obligated to pay, rents, maintenance fees, utility charges, if any, and fees or charges under all Contracts, shall be prorated as of the Closing Date.  If real estate taxes for the tax year(s) in which the Closing occurs are not available as of the Closing Date, then such taxes shall be prorated on the basis of the taxes assessed in the previous year, with no subsequent cash adjustment of that proration between Seller and Buyer.  If the rent from any tenant of the Property includes percentage rent or conditional rent of any kind or if the tenant pays a pro rata or other fractional share of certain operating expenses of the Property, or if any other adjustments cannot be calculated on the Closing Date, then Seller and Buyer shall prorate such amounts as of the Closing Date in accordance with their best estimate of the amounts payable for the year in which the Closing occurs and there shall be no subsequent adjustment of the same.  Buyer and Seller acknowledge and agree that Seller shall have no obligation to pay any taxes in connection with the Property other than ad valorem real estate taxes.  In addition, in the event the Property has been assessed for property tax purposes at such rates as would result in "roll-back" taxes upon the change in land usage or ownership of the Property, Buyer hereby agrees to pay all such taxes and to indemnify and save Seller harmless from and against all such claims and liability for such taxes.  Such indemnity shall survive the Closing and not be merged therein.  Seller shall not be liable for any increase in property taxes resulting from the sale of the Property to Buyer.

12.4    Credits to Buyer.  Buyer shall be credited with the amount of any prepaid rents paid by tenants of the Property and actually received by Seller for periods subsequent to the Closing Date and with the amount of any deposits actually received by Seller from or for tenants of the Property (including rental security, cleaning, utility, key, damage and other deposits) and any required interest on those deposits.  In no event shall Buyer be entitled to, nor shall Seller have any liability or obligation with respect to, any such deposits, unless actually received by Seller from or for tenants of the Property.  Buyer shall be obligated under the Leases after the Closing to make any refunds of deposits made thereunder, regardless of whether Buyer receives a credit for the same hereunder.  All amounts received by Buyer after Closing for the account of any tenant, licensee, concessionaire, or other person or entity with respect to the Property shall be applied in the following order:  (i) first toward any amount then due Buyer from such person or entity, (ii) with any balance then remaining toward any amount then due Seller from such person or entity with respect to the Property for the period prior to Closing, and (iii) with any balance then remaining toward Buyer.  No proration shall be made at Closing for delinquent rents existing as of the Closing Date.

12.5    Utilities.  As of Closing, if applicable, Buyer shall be responsible for the transfer of accounts and establishment of all utility services to the Property in the name of Buyer, including the making of any new utility deposits with the utility providers.  All refunds of utility service deposits, if any, covering the period prior to the Closing Date shall be the property of Seller.

**ARTICLE 13    Default.**

13.1    Buyer's Default: Termination.

(a)    If Seller tenders to Escrow Agent the Deed and the other documents and other matters required of Seller at Closing but Buyer fails to close in accordance with the terms of this Agreement (including without limitation any failure to close by reason of Seller's discovery that any of Buyer's representations and warranties herein are inaccurate, or because the approval of Buyer for Seller Financing is withdrawn because of inaccuracies discovered in the materials presented by Buyer to Seller or the Loan Underwriter) or if Buyer fails to perform any of its obligations under this Agreement, then Seller shall have the right to terminate this Agreement by giving notice to that effect to Buyer (with a copy to Escrow Agent), in which event Escrow Agent is hereby instructed to pay the Earnest Money Deposit to Seller promptly and neither party shall have any further rights or obligations hereunder.  Notwithstanding Escrow Agent's obligations hereunder, at Seller's request, Buyer shall

-13-

execute a release of the Earnest Money Contract in a form satisfactory to Seller acting in its sole discretion.

(b)    Seller and Buyer agree that payment of the Earnest Money Deposit as aforesaid shall be liquidated damages and not a penalty, and that actual damages resulting to Seller from Buyer's breach of this Agreement would be difficult or impossible to measure because of the uncertainties of the real estate market and fluctuations of property values and differences with respect thereto, and that the Earnest Money Deposit is a reasonable estimate of what those damages would be. (However, Buyer shall be liable for payment of both the Initial Earnest Money and the Additional Earnest Money if not previously paid.) Escrow Agent shall thereafter deliver the Earnest Money Deposit to Seller in accordance with the provisions of Exhibit "M". Buyer hereby releases Escrow Agent from all liability to Buyer for compliance with the provisions of this Section.

13.2    Seller's Default. If Buyer tenders to Escrow Agent the Cash Portion of the Purchase Price and the other moneys and documents required of Buyer at Closing, but Seller fails to close in accordance with the terms of this Agreement, or if Seller shall otherwise be in material default of any of Seller's obligations under this Agreement, then Buyer must give written notice specifying the nature of the default to Seller (with a copy to Escrow Agent). Seller shall have thirty (30) days from Seller's receipt of that notice within which to cure the specified default. If at the end of said thirty (30) day period Seller is diligently pursuing such cure but such cure shall not have been completed, then Seller shall have an additional period of thirty (30) days within which to complete such cure. If Seller still does not cure the specified default within the applicable extension period, then Buyer shall have the right, as its sole and exclusive remedy, to terminate this Agreement by giving written notice to that effect to Seller (with a copy to Escrow Agent), in which event Escrow Agent is hereby instructed to pay the Earnest Money Deposit to Buyer in accordance with the provisions of Exhibit "M". In the event that Buyer fails to provide such written notice of termination to Seller, Buyer shall be deemed to have waived such default and shall have no further right to object to such default and this transaction will close in accordance with the terms of this Agreement. Buyer specifically waives any and all rights Buyer may have to any lis pendens or other lien or encumbrance against the Property, equitable relief (including but not limited to, specific performance), or consequential or punitive damages. However, it is understood and agreed that, in no event shall Seller be liable for damages due to the existence of, or failure to cure, any defects in title.

13.3    Attorneys' Fees. To the extent permissible under applicable law, the losing party shall pay all attorneys' fees and costs incurred by the prevailing party in any proceeding to enforce the provisions of this Agreement, whether the same are incurred in preparation for or in pursuit of litigation, or both.

## ARTICLE 14    Time of the Essence.

TIME SHALL BE OF THE ESSENCE WITH RESPECT TO EACH AND EVERY PROVISION OF THIS AGREEMENT.

## ARTICLE 15    Condemnation.

15.1    Condemnation of Portion of Property. If Seller has or obtains actual knowledge of any pending or threatened condemnation proceedings or actions, Seller shall notify Buyer thereof. If, on or prior to the Closing Date, any portion of the Property shall be taken or condemned pursuant to any governmental or other power of eminent domain, any written notice of such a taking or condemnation shall be issued, or any proceeding for such a taking or condemnation shall be instituted by any governmental authority having the power of eminent domain (collectively, "Taking"), and if Buyer would be substantially prevented from continuing the existing use of the Property after the Taking, then Buyer shall have the right, exercisable only by giving notice to that effect to Seller (with a copy to Escrow Agent) within fifteen (15) days after Buyer's receipt of Seller's notice, to terminate this Agreement. If Buyer duly exercises that right, Escrow Agent is hereby instructed to return the Earnest Money Deposit to Buyer promptly. If Buyer does not duly exercise that right to terminate this Agreement, then Buyer shall be deemed to have waived any objection to the Taking. If Buyer does not have the right to terminate this Agreement under the foregoing provisions of this Section due to the Taking or if Buyer shall be deemed to have waived any objection to the Taking under those provisions, then, at Closing (a) Buyer shall accept the Property subject to the Taking, (b) the Purchase Price shall be reduced by the amount of any award theretofore received by Seller with respect to the Taking, and (c) Seller shall assign to Buyer all of Seller's rights to any and all awards not theretofore made or paid with respect to the Taking. If Seller is providing any Seller Financing, then the foregoing reduction in the Purchase Price shall be applied against the Amount of Seller Financing and shall not affect the amount of the Cash Portion of the Purchase Price.

15.2    Total Condemnation. Notwithstanding the foregoing provisions of this Article, if the award payable or that would be payable due to any Taking shall exceed the Purchase Price, then Seller shall have the right, exercisable only by giving notice to that effect to Buyer (with a copy to Escrow Agent) within fifteen (15) days after Seller is notified of the amount or anticipated amount of such award but prior to the Closing, to terminate this Agreement. If Seller duly exercises that right, Escrow Agent is hereby instructed to return the Earnest Money Deposit to Buyer promptly.

15.3    Delay in Closing Date.  If the Closing Date is to occur during either of the fifteen (15)-day periods described in the foregoing provisions of this Article, then the Closing Date shall be extended to be thirty (30) days after the applicable fifteen (15)-day period.

### ARTICLE 16    Risk of Loss - Casualty.

16.1    Risk of Loss.  Subject to the provisions of Section 16.2 and except for reasonable wear and tear, Seller shall bear the risk of all loss, destruction and damage to the Property or any portion thereof from any and all causes whatsoever prior to Closing, and from the Closing Date forward, all risk of loss shall pass to Buyer.

16.2    Destruction or Damage Prior to Closing.  If at any time prior to the Closing, all or any portion of the Property is destroyed or damaged as a result of fire or any other cause whatsoever, Seller shall promptly so notify Buyer.  The rights and obligations of the parties by reason of such destruction or damage shall be as follows:

(a)    If the amount of the insured casualty loss is ten percent (10%) of the Purchase Price or less (determined as provided in Section 16.2(e) below), then Buyer's obligation to purchase the Property shall not be affected, all proceeds of insurance collectible by reason of such taking or damage will be absolutely payable to Buyer, the Purchase Price will be reduced by any deductible amount which must be paid in order to make an insurance claim so long as the deductible is paid by the Buyer, and the sale of the Property will be otherwise closed in accordance with this Agreement. In the event the loss is self-insured by Seller, the Purchase Price will be reduced by an amount sufficient to repair the loss (determined as provided in Section 16.2(e) below).  If Seller is providing any Seller Financing under Article 5, then the foregoing reduction in the Purchase Price shall be applied against the Amount of Seller Financing and shall not affect the amount of the Cash Portion of the Purchase Price.

(b)    If the amount of the insured casualty loss exceeds ten percent (10%) of the Purchase Price (determined as provided in Section 16.2(e) below), then Buyer shall have the right, exercisable only by giving written notice to that effect to Seller (with a copy to Escrow Agent) within fifteen (15) days after the amount of the loss is determined under the foregoing provisions, to terminate this Agreement.  If Buyer duly exercises that right, Escrow Agent is hereby instructed to return the Earnest Money Deposit to Buyer promptly.  If Buyer does not duly exercise that right to terminate this Agreement, then (A) Buyer shall be deemed to have waived any objection to such destruction or damage, (B) at Closing, Buyer shall accept the Property subject to such destruction or damage, (C) at Closing, the Purchase Price shall be reduced by the amount of any and all insurance proceeds theretofore received by Seller from independent private insurance companies for the physical loss associated with such destruction or damage, or, in the event Seller is self-insured with respect to the loss, the Purchase Price will be reduced by an amount sufficient to repair the loss (determined as provided in Section 16.2(e) below), and (D) at Closing, Seller shall assign to Buyer all of Seller's rights to any and all insurance proceeds not theretofore paid by independent private insurance companies with respect to such physical loss.  If Seller is providing any financing under Section 5.2, then the foregoing reduction in the Purchase Price shall be applied against the Amount of Seller Financing and shall not affect the amount of the Cash Portion of the Purchase Price.

(c)    Notwithstanding the foregoing provisions of this Section, if the proceeds payable or that would be payable due to any destruction or damage shall exceed the Purchase Price, then Seller shall have the right to terminate this Agreement, which right shall be exercisable only by giving notice to that effect to Buyer (with a copy to Escrow Agent) within fifteen (15) days after Seller is notified of the amount or anticipated amount of such proceeds but prior to the Closing.  If Seller duly exercises that right, Escrow Agent is hereby instructed to promptly return to Buyer the Earnest Money Deposit together with interest earned thereon.

(d)    If the Closing Date is to occur during either of the fifteen (15)-day periods described in the foregoing provisions of this Section, then the Closing Date shall be extended to be thirty (30) days after the applicable fifteen (15)-day period.

(e)    In determining the percentage of the Purchase Price represented by the casualty loss, or the amount of any reduction of the Purchase Price if the loss is self-insured, Seller shall identify an independent third-party contractor, engineer or other party familiar with construction costs and materials in the general location of the Property, and shall retain such person to provide a written estimate of the cost of repairing the damage and restoring the Property to its previous condition.  The estimate provided by such person shall be binding upon both Seller and Buyer, and Seller and Buyer shall each pay one half of the cost of such appraisal.

### ARTICLE 17    Brokers.

Buyer represents and warrants to Seller that Buyer has not dealt with any real estate broker, agent or finder in connection with this Agreement or the transaction described in this Agreement, other than the Broker as defined in the Basic Information Sheet attached hereto.  Subject to the terms of a separate agreement between Seller and Broker, Seller shall pay the commissions (if any) due in connection with this transaction to the respective persons and/or entities constituting the Broker.

-15-

Buyer hereby acknowledges receipt of the foregoing notice(s), if applicable, and any applicable addenda attached hereto concerning the required statutory notices at or prior to execution of this Agreement for the purchase of the Property.

> THIS WRITTEN AGREEMENT TOGETHER WITH THE EXHIBITS ATTACHED HERETO REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

> THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, Buyer has signed and delivered this Agreement as its own free act and deed.

**BUYER:**

[If an individual
or individuals]

_____

Print Name:_____


_____

Print Name:_____


[If a Corporation]

_____,

a _____ corporation

Attest:                                 By:_____

                                        Print Name:_____

_____
Print Name: _____     Title:_____
                  Secretary

[If a Partnership or
Joint Venture]

_____,

a _____
   [Limited / General Partnership]  [Joint Venture]

By:_____

Print Name:_____

Title:_____

IN WITNESS WHEREOF, Escrow Agent has signed this Agreement for the limited purpose of evidencing its acceptance of the escrow and to acknowledge its responsibilities with regard to same as set forth in this Agreement, including **Exhibit "M"**.

**ESCROW AGENT:**

SAFECO LAND TITLE OF DALLAS **Title Company**

By: _____

Print Name: _____

Title: _____

**Date of Escrow Agent's Signature:** ___December 8_____, **1992**

M3\124-09.Auc
October 22, 1992

-22-

## SUBSTITUTE TRUSTEE'S DEED

1252                7. ::: DEED
            .  1 48/2A/3A

| THE STATE OF TEXAS | X | |
|---|---|---|
| | | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF DALLAS | X | |

WHEREAS, on the 23rd    day of    October    , 19 84  ,

.............................. DEAN I. DAULEY ..........................

executed and delivered to    Robert D. Smith          , as Trustee,

a Deed of Trust of said date which is of record in Volume 84211, Page 0366 ,

Deed of Trust Records of  Dallas    County, Texas (herein "Deed of Trust"),

to secure that certain Promissory Note of even date therewith in the

original principal sum of One Million One Hundred Twenty Thousand and No/100--

($1,120,000.00) (herein "Note"), executed by the said    Dean I. Dauley

..........                        and payable to Jasper Federal Savings

and Loan Association (herein "Beneficiary"); and

WHEREAS, the said Deed of Trust conveyed to  Robert D. Smith

in trust, that certain tract or parcel of land, together with improvements

thereon, if any, described as follows:

> See Exhibit "A" attached hereto and made a part hereof for a full
> and complete description of the subject property.
>
> This conveyance, however, is subject to all mineral reservations
> and royalties, and any and all other restrictions, easements,
> covenants and conditions of record in the office of the County
> Clerk of Dallas County, Texas, which relate to or in anywise
> affect the herein-described property.

WHEREAS, the said  Robert D. Smith    , Trustee, having resigned as

Trustee, I, Richard R. Mays, was by execution of Appointment of Substitute

Trustee dated  April 4, 1986      , duly appointed by Jasper Federal

Savings and Loan Association as Substitute Trustee, fully in accordance

with the terms of the Deed of Trust; and

WHEREAS, default having occurred under the terms of the Note and

under the terms of the Deed of Trust, Beneficiary thereupon requested

that I proceed as Substitute Trustee to make sale of the property for

the purpose of satisfying the obligations arising under the Note

and Deed of Trust; and

86166 2069

WHEREAS, pursuant to said request and fully in accordance with the terms of the Deed of Trust, I, Richard R. Mays, Substitute Trustee, proceeded to sell the property at public auction at the Courthouse Door of Dallas    County, Texas, Courthouse between the hours of 10:00 a.m. and 4:00 p.m., on Tuesday,    August 5, 1986    , and after having given notice of the time, place and terms of such sale, as prescribed by law and by the terms of the Deed of Trust, and after first posting and causing to be posted written notice thereof for at least twenty-one (21) days preceding the day of the proposed sale at the Courthouse Door of the Dallas    County, Texas, Courthouse and after first serving written notice at least twenty-one (21) days preceding the day of the proposed sale by Certified Mail to the debtor's most current address as shown by holder's records, and after first filing with the County Clerk Notice of Sale at least twenty-one (21) days preceding the date of same in compliance with the law; and

WHEREAS, at such sale the property was by me struck off to JASPER FEDERAL SAVINGS AND LOAN ASSOCIATION, whose address is Post Office Box 760, Jasper, Texas, 75951, for and in consideration of the sum of TEN DOLLARS ($10.00), and other good and valuable consideration, it being the best and highest bidder therefor, and said consideration being the best and highest bid therefor.

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS, that I, Richard R. Mays, of Jasper County, Texas, Substitute Trustee as aforesaid, by virtue of the powers granted to me by the Deed of Trust and Appointment of Substitute Trustee and in consideration of the foregoing premises and of the value expressed above conveyed to me by Jasper Federal Savings and Loan Association, the receipt and sufficiency of which is hereby acknowledged, have GRANTED, SOLD and CONVEYED and by these presents do GRANT, SELL and CONVEY the property unto JASPER FEDERAL SAVINGS AND LOAN ASSOCIATION.

TO HAVE AND TO HOLD the property, together with all and singular the rights and appurtenances thereto in anywise belonging to Jasper Federal

36166 2070

Savings and Loan Association, and its successors and assigns, forever; and for and on behalf of the said DEAN I. DAULEY, ..........

Grantor in said Deed of Trust, his   successors and assigns, to WARRANT and FOREVER DEFEND all and singular the property hereinbefore described, insofar as authorized by said Deed of Trust, unto Jasper Federal Savings and Loan Association and its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

WITNESS MY HAND this 8th day of August, 1986.

_____
Richard R. Mays, Substitute Trustee

THE STATE OF TEXAS          I
COUNTY OF JASPER            I

This instrument was acknowledged before me on the 8th day of August, 1986.

_____
Notary Public, State of Texas
Printed Name:  Sue Linke
My Commission Expires:  6-14-90

GRANTEE'S ADDRESS:

Jasper Federal Savings & Loan Association
Post Office Box 760
271 East Lamar
Jasper, Texas  75951

36166 2071

Mary L. O'Connor
Akin, Gump, et al.
4100 First City Center
1700 Pacific Avenue
Dallas, TX 75201-4618

STATE OF TEXAS
COUNTY OF DALLAS
I hereby certify that this instrument was filed on the
date and time stamped hereon by me and was duly re-
corded in the volume and page of the named records
of Dallas County, Texas as stamped hereon by me.

AUG 26 1986



COUNTY CLERK, Dallas County, Texas

86 AUG 26 PM 1: 01

36166 2073

JAN-5-71  01941

## The State of Texas,
## County of D A L L A S

Know All Men by These Presents:

DEED RECORD

That ------------GIFFORD-HILL & COMPANY, INC.------------

a Corporation, duly organized and existing under the Laws of the State of   Delaware

for and in consideration of the sum of

----------------------TEN & NO/100------------------------------- DOLLARS
and other good and valuable considerations

to it in hand paid by       ------GIFCO PROPERTIES, INC.-------

as follows:

has Granted, Sold and Conveyed, and by these presents does Grant, Sell and Convey, unto the said
                    ------GIFCO PROPERTIES, INC.
of the County of    Dallas              State of         Texas        all that certain
tracts of land described as follows:

Attached hereto Exhibit "A" with full descriptions of land herein conveyed,
as shown on the        pages attached comprising Exhibit "A".

This conveyance is made subject to all easements, right-of-way's, and any other

restrictions existing on the said properties herein described.

THE EFFECTIVE DATE OF THIS WARRANTY DEED IS DECEMBER 31, 1970.

TO HAVE AND TO HOLD the above described premises, together with all and singular the

rights and appurtenances thereto in anywise belonging unto the said
                    --------GIFCO PROPERTIES, INC.----------
successors
heirs and assigns forever and the said Corporation does hereby bind itself, its successors and assigns,
to Warrant and Forever Defend, all and singular the said premises unto the said
                    -------GIFCO PROPERTIES, INC.------------
heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any
part thereof.

IN WITNESS WHEREOF, the said Corporation has caused these presents to be signed by its
duly authorized officers and to be sealed with the Seal of the Corporation, at  Dallas, Texas
this ___12th___ day of November A. D. 1970

Attest:

_____
Secretary.

(Seal)

GIFFORD-HILL & COMPANY, INC.

By _____
President

*ACS/TRC* DALLAS  Doc: OS@106416   Date: 01/01/1900  Vol: 0071002  Page: 01746  Page: 1 Of 46

**CORPORATION ACKNOWLEDGMENT**

THE STATE OF TEXAS,
COUNTY OF *Dallas*

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared *John R. Hill, Jr. President*
, known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said *Gifford Hill & Co. Inc.*
a corporation, and that he executed the same as the act of such corporation for the purposes and consideration therein expressed, and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE,
this the *12th* day of *November* A. D. 19 7 c

(L. S.)

NAOMI C. HOPKINS
NOTARY PUBLIC

*Naomi C. Hopkins*

Notary Public in and for *Dallas* County, Texas

THE STATE OF TEXAS,
COUNTY OF

I HEREBY CERTIFY that the foregoing instrument of writing with its certificate of authentication, was filed for record in my office on the          day of                              , A. D. 19          at          o'clock          M.,
and was duly recorded by me on the          day of                              A. D. 19
in Vol.          , page          , of the Records of said County.

WITNESS MY HAND and the Seal of the County Court of said County, at my office in the day and year last above written.

(L. S.)                    County Clerk                                        County, Texas

By_____, Deputy.

---

**Warranty Deed**
(BY CORPORATION)

FROM

TO

FILED FOR RECORD

This_____ day of_____ A. D. 19____

at_____ o'clock_____ M.

By_____ County Clerk.

_____ Deputy.

RECORDED

_____ A. D. 19____

In_____ on Page_____ County Records

In Book_____

By_____ County Clerk.

_____ Deputy.

Recording Fee $_____

This instrument should be filed immediately with the County Clerk for record.

The Okee Company, Publishers, Dallas

71002 1747

EXHIBIT "A"

CONTRACT No. 512 - (H.I.Calhoun, et ux.,lessia): All that certain (Exhibit 1 of Exhibit "A")

lot, tract or parcel of land situated in the County of Dallas, State of Texas, and being out of and a part of the Joseph Graham 640 acre survey Patent No. 739, Volume 10, Abstract No. 500, described by metes and bounds in four tracts, as follows:- FIRST TRACT:-- Being Division No. 3, in the partition of the Estate of Y. A. Robertson, and more particularly described as follows:- Beginning at the N.E. corner of the Y. A. Robertson Tract; THENCE S. with its E. line 29-8/10 rods to stake; Mrs. Guedry Northeast corner; THENCE W. 80-4/10 rods to E. W. corner of said Mrs. Guedry Tract; THENCE S. 35-8/10 rods to a corner of said Y. A. Robertson Tract; THENCE W. with line of same 51-5/8 rods, to corner; THENCE N. with line of same 10-1/4 rods to another corner; THENCE W. 85-1/3 rods to another corner; THENCE N. 54-3/4 rods, to corner; THENCE E. 136-2/3 rods to place of beginning, containing 55-2/3 acres of land, 5 acres of which is on W. side of West Fork of Trinity River, being the same land conveyed to George W. Waggoner by E. F. Pennebaker and wife Mary E. Pennebaker by deed dated Dec. 30th, 1904, duly recorded in Book 334, Page 207 of the Deed Records of Dallas County, Texas.

SAVE AND EXCEPT the 5 acre tract of land W. of the River, conveyed by Geo. W. Waggoner and wife, H. R. Waggoner, to Thos. Ball, by deed dated May 11, 1917, duly recorded in Vol. 934 page 548 of the Deed Records of Dallas County, Texas, also

SAVE AND EXCEPT the following described tract of land; BEGINNING at a point in Geo. W. Waggoner's E. line an iron pipe which is 500 feet W. from his N. E. corner; THENCE W. 1855 feet to an iron pipe in a line for corner; THENCE S. 25 feet to an iron pipe for corner; THENCE N. 325 feet to an iron pipe for corner; THENCE S. 500 feet to an iron pipe for corner; N. 84° W. 846 feet to an iron pipe for corner, being the S. E. corner of the First Tract fraction tract; S. 1° W. 500 feet to the place of beginning, containing 6-9/10 acres of land, leaving herein conveyed 48-76/100 acres of land,

SECOND TRACT:- Being a part of a certain 254-11/100 acre tract deeded by the heirs of J. B. Waggoner to J. D. Jackson, et al in 1910. Beginning at a corner of said 254-11/100 acre; THENCE N. 1° West 161 feet to another corner of same; THENCE S. 89° 30' W. 1375 feet to another corner of same; THENCE N. 260 feet to another corner of same, in channel of center of W. fork of the Trinity River; THENCE up the channel center of this stream with its meanderings, S. 50° 30' W. 388 feet, S. 62° 30' W. 465 feet; THENCE N. 80° 30' E. and out of said river 2656 feet to the place of beginning, containing 8-2/100 acres of land, and being the same land described in deed from J. D. Jackson et al to Geo. W. Waggoner, dated Aug. 1st, 1910, and duly recorded in Vol. 553 page 231 of the deed records of Dallas County, Texas.

SAVE AND EXCEPT the following described tract of land: BEGINNING at S. A. Fishburn's N. E. corner; THENCE S. 89° 30' W. along S. A. Fishburn's N. line 693 feet to a corner of said 8-2/100 acre tract, in channel center of W. fork of Trinity River; THENCE down channel center of said stream with its meanderings, N. 63° 30' E. 485 feet, N. 50° 30' E. 333 feet to another corner of said 8-2/100 acre tract in channel center of said West Fork of Trinity River; THENCE S. and out of said river 260 feet to another corner of said above mentioned tract of land; THENCE S. 1° E. 161 feet to the place of beginning, containing 3-1/3 acres of land, leaving herein conveyed 4-69/100 acres of land.

COUNTY CLERK'S RECORD. PORTIONS OF THIS DOCUMENT NOT REPRODUCIBLE WHEN RECORDED

VOL.

71002 1748

Page 2.

THIRD TRACT: BEGINNING 30 feet N. of the N. E. corner of Jackson Womack and Davis Subdivision No. 1. of the Joseph Graham Survey, as shown by map of said subdivision recorded in Vol. 1 page 258 of the map records of Dallas County, Texas; THENCE N. 950-4/10 feet to a stake for corner, being K. A. Ward's N. W. corner; THENCE E. 388-53/100 feat to a stake, being said Ward's N. E. corner and a corner of 254-11/100 acres sold by A. L. Waggoner et al to said Jackson Womack and Davis, June 1st, 1910, out of said Joseph Graham Survey; THENCE N. 88-1/2° E. 481 feet to a stake for corner of fence being a corner of said 254-11/100 acres; THENCE N. 1/2° W. 942 feet to corner, being N. E. corner of the 254-11/100 acres; THENCE N. 89-1/2° W. 854 feet to another corner of said 254-11/100 acres, and the S. E. corner of an 8-2/100 acre tract conveyed by J. D. Jackson, et al to Geo. W. Waggoner by deed dated Aug. 1st, 1910, and duly recorded in Vol. 555 page 231 of the Deed records of Dallas County, Texas; THENCE S. 89-1/2° W. 1858-71/100 feet to a stake for corner, and on the S. line of said 8-2/100 acres; THENCE S. 953-96/100 ft. to a stake for corner; THENCE S. 909-3/10 feet to a stake being the N. E. corner of F. Teubner's 10 acre tract; THENCE S. 954-4/10 feet to the N. side of a 30 foot public road; THENCE N. 89-1/2° E. 462-2/10 feet to the place of beginning, containing 58-558/1000 acres of land, and being the same land conveyed to George W. Waggoner by J. C. Watkins and wife Bettie C. Watkins by two separate deeds, one dated Feb. 26th, 1917, and recorded in Vol. 706 page 623 of the Deed Records of Dallas County, Texas, the other dated May 1st, 1918, and recorded in Vol. 1603 page 639 of the Deed Records of Dallas County, Texas.

FOURTH TRACT: Being a part of the Joseph Graham 640 acre survey same being the property conveyed from G. W. Waggoner, et ux to the Northern Texas Traction Company by warranty deed dated April 10th, 1920 and recorded in Vol. 827 page 533 in the Deed Records of Dallas County, Texas. Said property being more particularly described as follows: BEGINNING at G. W. Waggoner's N. E. corner 520 feet W. from V. S. Bowles' Northwest corner to an iron pipe on G. W. Waggoner's North line the point of beginning; THENCE West 1362 feet to an iron pipe in ravine for corner; THENCE South 95 feet to an iron pipe for corner; THENCE East 525 feet to an iron pipe for corner; THENCE South 309 feet to iron pipe for corner; THENCE East 843 feet to an iron pipe for corner; THENCE North 334 feet to place of beginning. Said tract of land containing 11.670 acres more or less.

SAID FOUR TRACTS containing 114-775/1000 of land, however there is excepted therefrom about 1-898/1000 acres which have been conveyed to Walter County for road purposes leaving herein conveyed about 114-775/1000 acres of land. Recorded January 14,1937, Volume 1988, page 551. Dallas County Deed Records.

CONTRACT NO. 639 - EXHIBIT NO. 2 (Grand Prairie Independent School District) lot, tract or parcel of land situated in Dallas County, Texas, described as follows, to-wit:

Being out of the Joseph Graham Survey, Abst. No. 506 and being more particularly described as follows:

Beginning 153-7/10 feet east from the Southeast corner of a 27 acre tract of land conveyed to S. A. Fishburn by Jackson, Womack and Davis as shown by surveyors plat of said land, said beginning point being the Northeast corner of a 10 acre tract conveyed to Fred Buchanan and T. J. Rodgers by said Jackson, Womack and Davis; Thence South 958-38/100 feet to north side of a 30 ft. public road; Thence East 455-6/10 feet to Southeast corner of J. C. Watkins 10 acre tract; Thence North 954-1/2/100 feet to Watkins northwest corner; Thence West 455-6/10 feet to the place of beginning and containing ten acres of land.

Recorded May 24, 1954, Vol. 4040, page 213, Dallas County Deed Records.

COUNTY CLERK'S MEMO:
PORTIONS OF THIS
DOCUMENT NOT
REPRODUCIBLE
WHEN RECORDED

71002 1749

Page #3

CONTRACT NO. 1519 –Exhibit No. 1      All that certain land
tract or parcel of land situated about fourteen miles west of the city
of Dallas, Dallas County, Texas, and described by metes and bounds as
follows:

BEGINNING at a concrete marker on Bowles Estate South line which is
the NW corner of a tract of land owned by Gifford-Hill & Company, Inc.,
and on the East bank of West Fork of Trinity River, Measure north along
the said East Bank of Trinity River, 300 feet more or less, to the
intersection of said Trinity River and a tributary branch of same for
corner;
THENCE-  South Easterly along the west bank of said branch to a fence
corner on Bowles Estate South Line for corner;
THENCE-  Measure West 258 feet, more or less, along Bowles South Line
to Concrete Marker, the place of beginning, and containing 1.08 acres
of land, more or less, and being 1.08 acres more or less out of the
S. W. Corner of a 122.48 acre tract of land conveyed by Minnie Bowles
to C. W. Lacy as recorded Volume 2953 page 94, under date of June 7th
1948, deed records Dallas County, Texas.
Recorded July 29, 1954, Vol. 3700, page 539, Deed Records Dallas County, Texas.

CONTRACT NO. 2506, Exhibit No. 4  (City of Grand Prairie )      All that certain
lot, tract, or parcel of land situated in DALLAS COUNTY, TEXAS, to-wit:

TRACT No. 1: Being a tract or parcel of land lying in the JOSEPH GRAHAM SURVEY, Abstract
#506, Dallas County, Texas, and being the same 6.4 acres as described in a deed from
S. A. Fishburn and Harold F. Smith to the City of Grand Prairie, Texas, deed dated 2/9/56,
filed 2/15/56 and recorded in Vol. 4438, page 427, Deed Records, Dallas County, Texas,
and being more particularly described by metes and bounds as follows:
  BEGINNING at the N.W. corner of a 1.437 acre tract of land described in a deed from
S. A. Fishburn to the City of Grand Prairie, Texas, dated 12/15/50, filed 11/21/50,
recorded in Vol. 5005, page 298, Deed Records, Dallas County, Texas, and said Beginning
Point being in the channel of the West Fork of the Trinity River;
  THENCE S. 01° 0' E., along the West boundary line of said Fishburn 1.437 acre tract
a distance of 556.0 feet to the North R.O.W. line of the Dallas-Fort Worth Turnpike, being
point for corner;
  THENCE S. 85° 30' 40" W., along the North R.O.W. line of said Dallas-Fort Worth
Turnpike, a distance of 371.07 feet to a point in a concave curve to the right, being
point for corner;
  THENCE in a Northwesterly direction, along said concave curve to the right, having
a central angle of 85°, a radius of 256.85 ft., a tangent of 239.36 ft., a distance of
258.85 feet to a corner in said Dallas-Fort Worth Turnpike R.O.W. line, being point for
corner;
  THENCE N. 04° 21' W., along the R.O.W. line of said Dallas-Fort Worth Turnpike,
a distance of 267.58 feet to the center of the channel of the West Fork of the Trinity
River, being point for corner;
  THENCE in a Northeasterly direction following the meanders of the West Fork of the
Trinity River, a distance of 700 ft., more or less, to the PLACE OF BEGINNING and
containing 6.4 acres of land.
        (being Tract 3 of original lease)
TRACT No.2 / Being a tract or parcel of land lying in the Joseph Graham Survey,
Abst. #500, Dallas County, Texas, and being the same 1.437 acres as described in a
deed from Mabel Fishburn Clark to the City of Grand Prairie, Texas, deed dated
12/15/50, filed 2/15/56, and recorded in Vol. 5006, Page 296, Deed Records, Dallas
County, Texas, and being more particularly described by metes and bounds as follows:
  BEGINNING at a point being 6.0 ft North of the N.W. corner of a 1.77 acre tract
being the City of Grand Prairie Sewage Disposal Tract of land conveyed to the City of
Grand Prairie, Texas, by Gifford Hill & Company, Inc., by deed recorded in Vol. 3433,
page 594, Deed Records, Dallas County, Texas, and said Beginning Point being in the
channel of the West Fork of the Trinity River;
  THENCE S. 01° 0' E., along the West boundary line of said Sewage Disposal
Tract, a distance of 696.0 ft. to the S.W. corner of said Sewage Disposal Tract and
the North R.O.W. line of the Dallas-Fort Worth Turnpike, being point for corner;
  THENCE S. 89° 0' W., along the North R.O.W. line of said Dallas-Fort Worth
Turnpike, a distance of 100.0 ft. to point for corner, said corner being the S.E.
corner of a 6.4 acre tract described in a deed from S. A. Fishburn and Harold F. Smith
to the City of Grand Prairie by deed recorded in Vol. 4438, Page 427, Deed Records,
Dallas County, Texas;
  THENCE N. 01° 0' W. along the East boundary line of said 6.4 acre tract, a
distance of 556.0 ft to a point for corner, being in the channel of the West Fork of
the Trinity River;
  THENCE in a Northeasterly direction following the meanders of the West Fork
of the Trinity River, a distance of 185 ft., more or less, to the Place of Beginning
and containing 1.437 acres of land.

71002 1750

Page No. 5

TRACT No. 4: being a tract or parcel of land lying in the Joseph Graham Survey, Abstract No. 506, Dallas County, Texas, and being the same 1.77 acres as described in a deed from Gifford Hill & Company, Inc., to the City of Grand Prairie, Texas, by deed dated [illegible] and recorded in Vol. 5870, page 588, Deed Records, Dallas County, Texas, and being more particularly described by meter and bounds as follows:

BEGINNING at a point being 6.0 ft. South of the S.E. corner of a 1.437 acre tract as conveyed by Maria Mathers Clerk to the City of Grand Prairie, Texas, by deed recorded in Vol. 6836, page 282, Deed Records, Dallas County, Texas, and said beginning point being in the channel of the West Fork of the Trinity River;

THENCE S. 01° 04' E. along the West boundary line of said 1.437 acre tract, a distance of 106.0 ft. to the S.E. corner of said 1.437 acre tract and the North South line of the Dallas-Fort Worth Turnpike, being point and corner;

THENCE S. 89° 04' E. along the North R.O.W. line of said Dallas-Fort Worth Turnpike, a distance of 224.16 ft. to an instance of the Dallas-Fort Worth Turnpike R.O.W., being point for corner;

THENCE N. 01° 04' W., a distance of 86.0 ft. to a point in the channel of the West Fork of the Trinity River, being point for corner;

THENCE in a Northwesterly direction following the meanders of the West Fork of the Trinity River a distance of 154 ft.. more or less, to THE PLACE OF BEGINNING containing 1.77 acres. Recorded December 30, 1964, Vol. 472, page 0842.

CONTRACT NO. 2608 –Exhibit No. 6 (J.E.Roberts,Jr. and wife Louise E.) All that certain lot, tract or parcel of land situated in Dallas County, Texas; BEING two tracts of land identified as Tract I and Tract II, out of the Milton H. Graham Survey, Abstract #507 and the Joseph Graham Survey, Abstract #506 respectively and both tracts being contiguous and adjacent one to the other, said Tracts I and II being more particularly described by metes and bounds as follows:

TRACT I: Being a tract or parcel of land out of the Milton H. Graham Survey, Abstract #507 and also being the same tract or parcel of land as described by warranty deed from Minnie Bowles, et al, to C. W. Lane and E. E.Holcomb, dated 6-7-48, filed 6-16-48, in Volume 2993, Page 94, Deed Records, Dallas County, Texas; said tract being more particularly described by metes and bounds as follows:

BEGINNING at a point in the center line of the George K. Myers Road, said point being S 0° 45' E a distance of 859.3 feet from the common N.E. corner of the Milton H.Graham Survey, Abstract #507 and the N.W. Corner of the R. R. Tucker Survey, Abstract #1471;
THENCE S 85° 20' W a distance of 1600.00 feet to iron pin for corner;
THENCE S 78° 20' W a distance of 794.0 feet to iron pin for corner;
THENCE S 71° 20' W a distance of 700.0 feet to iron pin for corner, said point being in the E bank of the West Fork of the Trinity River;
THENCE in a Southwesterly and Southerly direction along said East bank of the West Fork of the Trinity River with its meanders as follows: S 38° 04' W 300.0 feet; S 53° 24' W 362.5 feet; S 30° 52' E 347.7 feet; S 9° 38' E 75.8 feet; S 2° 48' W 75.4 feet; S 4° 34' E 120.9 feet; S 14° 19' W 277.6 feet, being in the East bank of the West Fork of the Trinity River and identified by a concrete monument;
THENCE S 89° 31' East along the South line of the Milton H. Graham Survey, a distance of 264.9 feet to a concrete monument being 2.3 feet N of the line, at a distance of 783.9 feet to a concrete monument being 21.7 feet South of the line, at a distance of 2161.2 feet a concrete monument on the line said point being the NW corner of TRACT II at a distance of 3372.6 feet an iron pin in the West fence line of the George K. Myers Road; in all a distance of 3395.9 feet to point for corner, being in the center line of said Myers Road and same pin point being the NE corner of Tract II;
THENCE N 0° 23' West along the center line of said Myers Road a distance of 1634.0 feet to place of beginning and containing 123.41 acres of land more or less, SAVE AND EXCEPT: 1. A 1.08 acre tract of land conveyed by Warranty Deed from C. W. Lane to Gifford Hill & Co., Inc., dated 7-14-52, filed 7-21-52 in Vol. 3700, Page 539, Deed Records of Dallas County, Texas. 2. Public Road by public use (Myers Road) consisting of 0.93 acres of land more or less. 3. ROW Easement to Texas Power & Light Co., dated 8-20-52,filed 10-25-52 in Vol. 3749, Page 425, Deed Records, Dallas County, Texas.

COUNTY CLERK'S MEMO: PORTIONS OF THIS DOCUMENT NOT REPRODUCIBLE WHEN RECORDED

71002 1751

Page No. 6.

TRACT II: Being a tract or parcel of land out of the Joseph Graham Survey, Abst. #506 and also being a tract or parcel of land out of a 36.8 acre tract of land conveyed to C. W.Lane et ux, Gruce Lane, by Minnie Bowles, a feme sole, et al, under deed dated 9-8-50 and recorded 10-6-50 in Vol. 3377, Page 296, Deed Records of Dallas County,Texas; and said partial tract of land being more particularly described by metes and bounds as follows:   line of the George K. Myers Road, said point being the common NE corner BEGINNING at a point in the center of the Joseph Graham Survey, Abst. #506 and the SE corner of the Milton H. Graham Survey, Abstract #507 and the SE corner of Tract I; THENCE N 89° 51' W, along the North line of the Joseph Graham Survey a distance of 23.3 feet to iron pin in West fence line of said Myers Road and continue along same line a total distance of 1234.70 feet to concrete monument for corner; THENCE S 0° 10' W a distance of 512.12 feet to iron pin for corner, said point being the North ROW line of the Texas Turnpike Authority Tract and in a curve to the right having a radius of 5919.58 feet; THENCE Northeasterly along said ROW of the Texas Turnpike Authority Tract and along a curve to the right having a radius of 5919.58 feet a distance of 876.28 feet to iron pin for point, being point of tangency; THENCE East along North ROW line of said Turnpike Tract at 342.50 feet to iron pin at West fence line of the George K. Myers Road, in all 365.80 feet to center line of said Myers Road; said point being the SE corner of Tract II; THENCE N 0° 49' W along center line of said Myers Road a distance of 448.0 feet to place of beginning and containing 13.6642 acres of land, more or less, SAVE AND EXCEPT 1. Public Road by public use (Myers Road) consisting of 0.24 acres of land, more or less. Recorded December 10, 1965, Vol. 713, page 1242.

CONTRACT NO. 624 (Lucian Touchstone et ux (Brady land) Exhibit No. 7. All that certain lot, tract or parcel of land in Dallas County, Texas, described as follows, to-wit:

Being a part of the Joseph Mangum Survey of 640 acres, and being also a part of Lot No. 3, as designated in the Partition Deed of Z. E. Womack to A. M. Womack, et al, dated February 26, 1910, the tract here conveyed being particularly described as follows:

Beginning at the S.E. corner of Tract No. 1 as set apart to Mattie C. Pressley, in said Partition Deed; Thence West along the South line thereof 1029.5 feet to a corner; Thence South 1650.5 feet to a point in the South line of said Mangum Survey; Thence East 1025 feet a stake for corner; Thence North 1650.6 feet to the place of beginning, containing 38.92 acres of land, and being the same property described in a warranty deed from N. C. Paschall and wife, Ida Paschall, to Mrs. Frederick T. Moseley Manley and J. W. Manley, dated October 7, 1921.

Recorded July 11, 1940, Vol. 2208, page 518, Deed Records Dallas County, Texas.

Contract No. --- Exhibit 8 (F. M. Bibb & wife Meddie Bibb) - All that certain 80-2/3 acres out of the Joseph Mangum 640-acre Survey, in Dallas County, Texas, and more particularly described as follows: BEGINNING at Hettie C. Presley's S.E. corner, THENCE South along John S. Womack's East line 594 varas to a point intersecting the South line of the said Mangum Survey at stake for corner; THENCE EAST 653.6 varas to a stake for corner; THENCE North 594 varas to a point in Z.E. Womack Jr.'s South Line, same being 316.8 varas West from his Southeast corner at stake for corner; THENCE West 653.6 varas to the place of beginning, being the same land described as Lots Nos. 4 and 5 in the partition deed from Z. E. Womack to A. M. Womack et al, said deed dated Feb. 26th, 1910 recorded in Vol. 539, page 556, Deed Records of Dallas County, Texas, which deed is made a part hereof for a more complete description of said land.

Recorded September 23, 1941, Volume 2306, page 354, Dallas County Deed Records.

71002 1752

Page 7.

CONTRACT NO. 1038 (W.C.Cline & Annie W.Cline) Exhibit No. 9. All that certain tract or parcel of land lying and being situated in County of Dallas, State of Texas, and being more particularly described as follows:

A tract of land containing 33 1/3 acres out of the Joseph Mangum 640 Acre Headright Survey, Abstract No. 961, beginning at the southeast corner of the Z. E. Womack, Jr. tract; THENCE south along the east line of the said Mangum Survey, 594 varas to the Southeast corner of said Survey; THENCE west 316 8/10 varas to a stake for corner on the south line of said Survey; THENCE north 594 varas to intersect the south line of the Z. E. Womack, Jr. tract; THENCE east 316 8/10 varas to the place of beginning, and being the same land described as Lot No. 5 in the partition deed from Z. E. Womack, Sr. to A. M. Womack et al, dated the 28th day of February, A.D. 1910, recorded in Vol. 539, at page 556 of the Deed Records of Dallas County, Texas, and being the same land as described in deed from J. F. Robertson and Cona M. Robertson, his wife, to W. C. Cline, dated the 28th day of March, A.D. 1924, recorded in Vol. 1369, at page 10 of the Deed Records of Dallas County, Texas, to which deeds and the records thereof reference is hereby made for more particular description. Recorded July 3, 1943, Volume 2397, page 356, Deed Records Dallas County, Texas

CONTRACT NO. 1265 (Freddie Sheppard, et ux, Jewell Sheppard) Exhibit No. 10:
Being a part of the land. S., also Seaval, Abst. No. 25, and being more particularly described as follows:
   BEGINNING at a point in the North line of said Survey, 750 feet East of the Northwest corner of same, being the Northeast corner of a 28 acre tract conveyed by J. A. Moore to John A. Pope by deed recorded in Vol. 956, page 513, Deed Records of Dallas County, Texas;
   THENCE East 1176 feet to the Northeast corner of the original 130 acre tract;
   THENCE South 1 deg. West, 713 feet to the Northeast corner of a 57.6 acre tract conveyed by J. A. Moore to W. G. Ligeet out of said 130 acre tract;
   THENCE West 1189 feet to the Northwest corner of said 57.6 acre tract on the East line of the John A. Pope 28 acre tract;
   THENCE North 1 deg. 40 min. East 711 feet to the place of beginning, containing 19.3 acres of land, more or less, and being the same land conveyed by J. A. Moore to E. G. Aldridge by deed dated April 1, 1941, recorded in Vol. 2274, page 158, Deed Records of Dallas County, Texas. Recorded July 12, 1947, Volume 2845, page 517, Deed Records Dallas Co., Texas.

71002 1753

Page 8.

CONTRACT NO. 1901 (B. Keas. et ux, Fannie Quinn Keas) Exhibit No. 1

Being a part of the BENJ. S. REED SURVEY, ABST. # 1225, and being 30 acres off the west end of a certain 53-1/3 acre tract of land deeded to Luford Keas by deed dated December 28, 1923 and recorded in Vol. 1065, Page 510, Deed Records, Dallas County Texas; the tract hereby conveyed being more fully described as follows: Starting at the Northeast corner of a 130 acre tract conveyed by James W. Lane et al to David Gordon by deed recorded in Vol. 1, Page 350, Deed Records, Dallas County, Texas, which point is the center of the intersection of Belt line & Hunter Farrell Roads; THENCE West 1457.6 feet to the point of beginning of this tract; THENCE South and parallel with the west line of same, 908 feet to the south line of said 53-1/3 acre tract; THENCE West along the south line of said 53-1/3 acre tract 1055.8 feet to a concrete marker, the southwest corner of said 53-1/3 acre tract which is also the southeast corner of the Gifford-Hill & Company, Inc., Sheppard, 25.6 acre tract; THENCE North along the common boundary line between said Sheppard 25.6 acre tract and said 53-1/3 acre tract 908 feet to the north line of said 53-1/3 acre tract; THENCE east along the north line of said 53-1/3 acre tract 1055.8 feet to the point of beginning; SAVE & EXCEPT, that the grantors herein reserve unto themselves, their heirs and assigns, an undivided one-half (1/2) interest in and to Royalty derived from Oil, Gas or Kindred Minerals; Recorded March 19, 1958, Vol. 4865, Deed Records DallasCo., Texas.

COUNTY CLERK'S MEMO:
PORTIONS OF THIS
DOCUMENT NOT
REPRODUCIBLE
WHEN RECORDED

71002 1754

CONTRACT NO. 1147 (GRAND PRAIRIE GRAVEL CO.) EXHIBIT NO. 12. All that certain land:

TRACT NO. 1.

Tract or parcel of land situated in Dallas County, Texas, and being a part of the Benj. S. Reed survey, and more fully described as follows:  Beginning at the S. E. corner of a certain 88 acre tract out of the B. S. corner of said Reed survey, said point being 700 feet West and 1208 feet South of the N. W. corner of said survey, a Bois d'Arc stake for corner; Thence N. 1.48 E. 915 feet to a stake for corner on the east line of said 88 acre tract; Thence East 1328 feet to a stake for corner on the West line of a 160 acre tract 713 feet south of the N. E. B. L. of said Reed survey; thence S. with the W. line of said 160 acre tract 1836 feet to a point on the N. line of a 7-acre tract; Thence W. with the N. line of said 7-acre tract out the N. line of a 1.6 acre tract 990 feet to the N. W. corner of said 1.6 acre tract; Thence S. 256 feet to the S. W. corner of said 1.6 acre tract on the south line of a 15-2/3 acre tract; Thence W. with the S. line of said 15-2/3 acre tract 1670 feet to the S. W. corner of same, said corner being in the center of the Trinity River; Thence up with said River to the N. W. corner of said 15-2/3 acre tract; said corner being on the west line of said Reed survey; Thence N. 1.40 E. with the W. line of said Reed survey 552 feet to a stake for corner at the S. W. corner of a 88 acre tract; Thence E. 730 feet to the place of beginning, containing 51.5 acres of land. Being the same land deeded to W. G. Taggett by J. A. Moore on the 10th day of January, 1924, recorded in Vol. 1124, page 85, Deed Records of Dallas County, Texas, on August 30, 1924.

TRACT NO. 2.

COUNTY CLERK'S MEMO:
PORTIONS OF THIS
DOCUMENT NOT
REPRODUCIBLE
WHEN RECORDED

All that certain tract of land, being situated in Dallas County, Texas, a part of the survey patented to James W. Lane, Assignee of Benj. S. Reed on June 16, 1854, Pat. No. 264, Vol. 10, and being a part of the 160 acres of land out of the said survey, deeded to Stephen S. Lane by James W. Lane, April 15, 1857. Deed recorded in Vol. F. Page 232, Deed Records Dallas County, Texas, and more fully described by metes and bounds as follows, to-wit: Beginning at the Southeast corner of said 160 acre tract of land; Thence West with the South line of same 1207-5/10, varas to the Southwest corner thereof; Thence North 493-78/100 varas to a stake in the Northwest corner of a 32-1/2 acre tract sold out of said 160 acre tract by Squire Campbell and his wife Emma Campbell to Minnie L. Miller, March 27, 1899; Thence East 1207-5/10 varas along the South Boundary line of said 32-1/2 acre tract to the Southeast corner thereof, a stake in the original East line of said survey; Thence South 493-78/100 varas to the place of beginning, containing 106.14 acres of land, being the same land conveyed to Louis D. Kuhne by Thomas D. Johnson and wife by Deed dated August 1, 1905, and recorded in Vol. 342, page 17, Deed Records of Dallas County, Texas. Recorded in Vol. 611, page 75, Deed Records, Dallas Co. Texas, Feb. 12, 1914. Less 50 acres deeded to B. L. McCoy January 10, 1945. leaving a net total in this tract of 56.25 acres herein conveyed.

TRACT NO. 3.

All that certain tract or parcel of land lying and being in the County of Dallas and State of Texas, described as follows: to-wit:  A part of the 640 acre Benj. S. Reed Survey, Beginning at the S. W. corner of a 7-acre tract of land sold by Mr. Anne Moore to the said Grand Prairie Gravel Company; Thence North one hundred eighteen and two thirds yards (118-2/3) -356. Thence West 210 feet; Thence South 118-2/3 yards; Thence East 210 feet to place of beginning. Recorded in Vol. 716, page 171, Deed Records of Dallas County, Texas, Sept. 7, 1917, Being the same land deeded to Grand Prairie Gravel Company by Miss M. Anne Moore, containing 1.7 acres more or less.

TRACT NO. 4.

All that certain tract of land, being situated in Dallas County, Texas, being 7 acres of land out of Benj. S. Reed survey, in Dallas County, Texas, in being part of a 15-2/3 acre tract deeded to Jos. and Adie Conover by Geo. Robinson and Mrs. Lucinda Smith, Beginning at the S. E. corner of said 15-2/3 acre tract at a post oak marked "X";

71002 1755

Page #10

Thence North 12.2-2/3 vrs. to a stake; Thence East 385-45/35 vrs.
to a stake; Thence South 12.2-2/3 vrs. to a stake; thence West 48-
45/35 vrs. to place of beginning. Also a part of the same 15.2-2/3
acres deeded to Joe and Addie Genova; thence later to K. Amie Moore
by J. ... Moore and Addie Conyers. Deed dated 23rd day of June 1917,
recorded in Vol. 713, page 579, Deed Records of Dallas County, Texas,
August 18, 1917. Being the same land deeded to the Grand Prairie
Gravel Co. by K. Amie Moore.

TRACT NO. 5.

All that certain lot, tract, or parcel of land situated in
Dallas County, Tract No. 1, of 51 acres and being a part of the
Benjamin C. Rood survey; Beginning in the middle of the West fork
of the Trinity River; At the S. W. corner of a 15.2/3 acres tract
of land out of said Rood survey; then owned by Joe and Addie
Genova; thence East with south line of same, at ... vrs. a lime
stake on the North East bank of said Trinity River, from which lime
stake a leaning Spanish Oak 12 inch. dia brs. South 9-1/2 W. 5-4/10
vrs. marked "X" and a leaning Elm 10 inch dia. brs. North 60 deg. W.
2.8/10 vrs. in all 877 vrs. to the Southeast corner of said 15-2/3
acres, a stake on the West line of George Robertson 10.6/10 acres
from which stake a leaning Post Oak 10 inch. dia brs. south 82 deg.
E. 2-2/10 vrs.; Thence South with the West line of said 10-5/10
acres. 561 vrs. to North East corner of George Robertson 19 acres,
a stake from which a Burr Oak 8 inch. dia brs. North 16 deg. W.
1-1/2 vrs. and Elm 7 inc. dia brs. S 55-1/2 W 9 vrs. Thence West with
the North line of said 19 acres, 405 vrs to Northwest corner of same,
in the middle of said Trinity River, a lime stake on the Northeast
bank of same from which lime stake a Box Elder 14 inch. dia brs East
2 vrs. Marked "X"; Thence up the middle of said River, with its
meanderings to place of beginning, containing 51 acres of land;- Tract
No. two, of 5.67/100 acres of land, situated in Dallas County, Texas,
and being a part of the B. S. Rood 640 acre survey. Beginning at the
S. W. corner of a 25.8/10 acres of land in said Rood survey; Thence
East 60 vrs with south-line of said 25.8/10 acres tract, to the North
west corner of a 160 acre tract transferred to George Robertson by
C. G. Fitzgerald in 1873; Thence south about 857 vrs. Thence West
60 vrs to the corner, the same being the Northeast corner of a 19
acre tract, and the Southeast corner of a 70-54/100 acres, transferred
by Mrs. Lucinda Smith of Tarrent County, to Henry Filgo (colored);
Thence North with an old marked line about 507 vrs to the place
of beginning, containing about 5-67/100 acres of land; and being the
same land deeded by George Robertson and wife Susan Robertson, to
A. J. Jordan, on the 2nd day of Sept. 1901, recorded in Vol. 305,
page 150, Records of Deeds of Dallas County, Texas, and from A. J.
Jordan and wife, Georgia Jordan, to Henry Filgo, which is of record
in Vol. 354, page 173, Records of Dallas County, Texas. Being re-
corded in Vol. 546, page 661, Deed Records of Dallas County, Texas,
May 20, 1912, Being the same land deeded to W. G. Liggett, Agent
by Henry Filgo and wife, L. S. Filgo.

COUNTY CLERK'S MEMO:
PORTIONS OF THIS
DOCUMENT NOT
REPRODUCIBLE
WHEN RECORDED

TRACT NO. 6.

All that certain lot, tract or parcel of land, out of the
B. S. Rood survey, lying and being situated in Dallas County, Texas,
and being situated about 12 miles N. W. from the City of Dallas, in
Dallas County, Texas, Beginning at the N. W. corner of a 10-1/3 acre
tract, out of said survey, deeded to Georgia Jordan and husband,
A. J. Jordan, same being the S. W. corner of a tract of 10-1/3 acre,
deeded to Joe Roach et al. Thence S. 152 ft. to a stake; Thence
W. 519 Jeet to a stake; Thence N. 152 feet to a stake; Thence E.
519 feet to the place of beginning, containing 71-38/100 acres of
Land. Filed for record April 30, 1931, in Vol. 225, page 19, Deed
Records of Dallas County, Texas. Being the same land deeded to
W. G. Liggett, Trustee, by C. H. Means.

TRACT NO. 7

All that certain tract or parcel of land, situated in Dallas
County, Texas, being a part of the B. S. Rood survey, the tract but
is being ... beginning at a N. East West corner in center of a ...

71002 1756

Page 11.

Trinity River bed, known as West Fork; Thence in Easterly direction
with its meandering, in center of said Trinity River bed, opposite
a certain point, about 24 vars, in dia. on North Bank of said Trinity
River; Thence North to G. line North line, a stake for corner,
... the ... center of said Trinity Trinity River ... ...
tract; Thence from said stake with his North line to the place of
beginning, containing about two acres of land, more or less. Said
deed being recorded in Vol. 608, page 623, Deed Records of Dallas
County, Texas. Being the same land deeded to Grand
Prairie Canal Co. by W. T. Hess and wife, Lula M. Hess, containing
2-1/2 acres more or less.

### TRACT NO. 8.

All that certain lot, tract or parcel of land lying and being
situated in the County of Dallas and State of Texas, being a part
of the B. S. Hess survey and described as follows: Beginning at
the Southwest corner of the tract conveyed to W. G. Riggott as agent
by Claud Means; Thence due South 580 feet to a stake ; Thence in a
northwesterly direction to a point in the South line of said Claud
Means tract, 562 feet west of its southeast corner; Thence East
589 feet to the place of beginning, containing two and one half
(2-1/2) acres of land. Said deed being recorded in Vol. 545, page
647, Deed Records of Dallas County, Texas, May 18, 1912. Being
the same land deeded to W. G. Riggott as Agent, by S. J. Hess and
Lula M. Hess.

### TRACT NO. 9.

All that certain tract, lot or parcel of land, situated
in Dallas County, Texas, beginning at the N. W. corner of a certain
28-1/3 acre tract of land out of the Benjamin S. Hess survey, here-
tofore deeded to Georgia Jordan, and husband A. J. Jordan by Susan
Robertson et al; Thence South 1050 feet to a stake; Thence East
416 feet to a stake; Thence North 1050 feet to a stake; Thence
West 416 feet to the place of beginning, containing 10 acres, and
being the same land deeded by D. S. Marston and wife, M. L. Mars-
ton, to R. L. Keith and Frank Mitchell, on the 12th day of June
1911, and recorded in Vol. 841, page 489, Deed Records of Dallas
County, Texas. Said deed recorded in Vol. 537, page 125, Deed
Records of Dallas County, Texas, January 4, 1912. Being the same
land deeded to R. L. Keith by Frank Mitchell and wife Ellie Mitchell.

### TRACT No. 10.

All that certain lots, tract, or parcels of land, described
as follows: 1st tract: lying and being situated in Dallas County,
Texas, on the West Fork of the Trinity River and being a part of
the Ben S. Hess Survey of 640 Acres, patented to James W. Lane,
assignee. Beginning at the S. E. corner of said survey; Thence N.
with its E. line 474-4/100 vrs. Thence West parallel with its S.
line 615-3/10 vrs; Thence S. parallel with its E. line 474-4/100
vrs to its S. line; Thence E. on this S. line 615-3/10 vrs to the
place of beginning, containing 61-2/3 acres of land, and being
the tract of land described in deed executed by H. A. Bull et al,
to Georgia Jordan and A. J. Jordan, deed recorded in Vol. 429, page
496 Records of Deeds of Dallas County, Texas.

2nd tract: lying and being situated in Dallas County,
Texas, about 14 miles west from the City of Dallas, being a part
of the Benj. S. Hess 640 acre survey, on the West Fork of the Trinity
River, and described as follows: Beginning at a stake on the E.
line of said Hess Survey 474-4/100 varas north from the S. E. corner
of said survey, said stake being the southeast corner of a certain
56-2/3 acre tract of land out of said survey, heretofore allotted
to George Robertson in a former partition, between certain said COUNTY CLERK'S MEMO:<br>PORTIONS OF THIS<br>DOCUMENT NOT<br>REPRODUCIBLE<br>WHEN RECORDED
and said George Robertson, said deed being dated April 10, 1897,
and recorded in Vol. 405, page 197, Records of Deeds of Dallas
County, Texas; Thence West with the South line of said 56-2/3 acres
615.5 varas to its Southwest Corner; Thence N. with its West line
459-96/100 varas, Thence East and parallel with its South line
615.5 varas to stake on the E. line of said Hess Survey; Thence S.
with the East line 459-96/100 varas to the place of beginning,
containing 59-1/3 acres of land, and being the land deeded to
Georgia Jordan and A. J. Jordan by R. L. Averill et al, deed record-
ed in Vol. Deed, page ... Deed Records Dallas County, Texas. ...
... out of this ... ... of land ... a tract of 10 a... out of said

VOL.

71082 1757