described tracts of land heretofore deeded by us to D. E. Herndon [illegible] also, this deed is subject to [illegible] County in the [illegible] 50 foot road running along S. line of said [illegible] acre tract. Recorded in Vol. 533, page 211, Deed Records, Dallas County, Texas, January 8, 1912. Being the same land deeded to Houston & Liggett by [illegible] J. Jordan and Georgia Jordan. Less 1.36 acres deed to Texas Turnpike and 2.86 deeded to Dallas County.

TRACT NO. 11.

All that certain tract, lot or parcel of land lying and being situated in Dallas County, Texas, and described as follows: Being a part of the Perry Linney Survey; Beginning two thirds (2/3) of a mile and 20 feet S. of the Southwest corner of the Joseph Mangum, 640 acre Headright survey; Thence South 1/3 of a mile to the S. W. corner of said Perry Linney survey; Thence East two hundred and seventy five (275) yards to stake for corner; Thence North 1/3 of a mile to stake for corner; Thence West 275 yards to the place of beginning, containing 33-1/3 acres of land, more or less. Recorded in Vol. 601, page 315 Deed Records of Dallas County, Texas, January 22, 1914. Being the same land deeded to the Grand Prairie Gravel Company by A. [illegible] Womack. Less 1.04 deeded to Texas Turnpike Assn., and .23 to Dallas County for R/O/W.

TRACT NO. 12.

All that certain lot, tract or parcel of land, situated in Dallas County, Texas, and described as follows: Being a part of the Perry Linney Survey, Beginning 1/3 of a mile and 20 feet south of the Southwest corner of the Joseph Mangum Headright survey of 640 acres, on the west line of said Perry Linney survey; Thence South 1/3 mile to a stake for corner; Thence East 275 yards to a stake for corner; Thence North 1/3 of a mile to a stake for corner; Thence West 275 yards to the place of beginning, containing 33-1/3 acres of land, more or less. Said deed recorded in Vol. 607, page 500, Deed Records of Dallas County, Texas, January 22, 1914, Being the same land deeded to the Grand Prairie Gravel Co. by Miss M. Annie Moore. LESS 2.318 acres deeded to Dallas County for R/O/W.

TRACT NO. 13.

All that certain tract of land lying and being situated in the County of Dallas, State of Texas, and being a part of the Perry Linney survey; beginning at the northwest corner of said survey and the southwest corner of the Joseph Mangum 640 acre Headright survey; Thence South 1/3 of a mile and 20 feet to a stake. Thence East 275 yards stake for corner; Thence North 1/3 of a mile and 20 feet to stake for corner; thence west 275 yards to the place of beginning, containing 33-1/3 acres of land more or less, being the same land deeded to Fannie R. [illegible] by [illegible] E. Womack, deed dated May 19, 1889, and recorded in Vol. [illegible], page 127, deed records of Dallas Co. Texas. Filed for record Dec. 15, 1917 in Vol. 728, page 581, Deed Records of Dallas County, Texas. Being the same land deeded to W. O. Liggett by [illegible] Womack. Less 10 acres deeded to Bounds 5/2/38 Volume 2069, page 596. Less 1 acre deeded to City of Grand Prairie 3-3-66.

TRACT NO. 14.

All that certain lot, tract or parcel of land lying and being situated in Dallas County, Texas, and described as follows, to-wit; Same being a part of a [illegible] acre survey made for Perry Linney, by his Peters Colony [illegible] Cert. on the [illegible] side of the West Fork of the Trinity River about 12 miles West from the City of Dallas; Beginning at the S. W. corner of what is now known as the John Hill, 80 acre tract of land, and out of the said survey; Thence South about [illegible] varas, to [illegible] Northwest corner, off of the same survey; Thence East [illegible] varas, to a stake; Thence North [illegible] varas, to a stake, the same being the Southeast corner of the John Hill, 80 acre tract of land; Thence West [illegible] varas, to the place of beginning, containing [illegible] acres of land. The land intended to be conveyed by this deed is the [illegible] [illegible] 80 acre tract of land [illegible] [illegible] [illegible] [illegible] [illegible] Deed Records of Dallas County, Texas. [illegible]

COUNTY CLERK'S MEMO PORTIONS OF THIS DOCUMENT NOT REPRODUCIBLE WHEN RECORDED

VOL. 71002 PAGE 1758

for record March 12, 1921, in Vol. 875, page 170, Deed Records of Dallas County, Texas. Being the same land deeded to the Grand Prairie Gravel Company by W. J. Cline et ux.

TRACT NO. 15.

All that certain lot, tract or parcel of land, lying and being situated in Dallas County, Texas, about 11 miles west from the City of Dallas, and being a part of the Perry Linney original 320 acre survey abstract No. 778, and north of West Fork of the Trinity River. The part herein deeded is meted and bounded as follows, to-wit: Beginning at the Northeast corner of the 74½ acres less 51½ acres deeded by S. H. Moore, et al. to J. L. Keas September 25, 1902, or record in Vol. 307, pages 339 and 340, Deed Records of said County; Thence West with a north line of same 326 varas or 905.6 feet to a northwest corner of same; Thence South 86.8 varas or 241 feet to another corner of same; Thence West 145/6 feet to another corner of same, also the Northeast corner of the 51½ acres deeded by said S. H. Moore, et al. to W. W. Keas; Thence South with the East line of said 51½ acres 535 feet to stake the southeast corner of the 11 acres this day deeded by W. W. Keas to the Grand Prairie Gravel Company, Thence East 1051.2 feet to stake on the east line of said 74½ acres less 51½ acres; Thence North with this East line 776 feet to the place of beginning, containing 17.92 acres of land, more or less. Filed for record in Vol. 897, page 624, Deed Records of Dallas County, Texas, September 9, 1921. Being the same land deeded to the Grand Prairie Gravel Co. by J. L. Keas.

TRACT NO. 16.

All that certain lit, tract, or parcel of land, lying and being situated in Dallas County, Texas, about 11 miles west of the City of Dallas, and being a part of the Perry Linney original 320 acre survey, Abstract No. 778, and North of West Fork of the Trinity River. The part herein deeded is meted and bounded as follows, to-wit: Beginning at the Northwest corner of the 51½ acres deeded by S. H. Moore, et. al. to W. W. Keas, September 25, 1902, of record in Vol. 309, pages 23 and 24, deed records of said County; Thence South with West line of said 51½ acres, 727 feet to stake; Thence N. 75 deg. E. 776 feet to stake on its east line of said 51½ acre Tract and the southwest corner of the 17.92 acres this day deeded by J. L. Keas to the Grand Prairie Gravel Company; Thence North 535 feet to the Northeast corner of said 51½ acres. Thence West with its North line 760 feet to the place of beginning, containing 11 acres of land, more or less. Filed for Record September 9, 1921 in Vol. 897, page 622, Deed Records of Dallas County, Texas, Being the same land deeded to The Grand Prairie Gravel Company by W. W. Keas.

TRACT NO. 17.

All that certain lot, tract or parcel of land, situated in Dallas County, Texas, and part of the J. C. Reed headright survey No. 67-D; Beginning at the S. W. corner of the J. C. Reed survey of 320 acres; Survey No. 67-D; Thence E. 302.5 yds to a stake; Thence N. 1047 yds to a stake; Thence W. 302.5 yds to a stake in the W line of said survey; Thence S. 1047 yds to the place of beginning, containing about 56 acres of land, located about 1-1/2 miles [illegible] of Grand Prairie Tex. Filed for record June [illegible], 19[illegible] in Vol. [illegible], page [illegible], Deed Records of Dallas County, Texas. Being the same land deeded to W. C. Cline by J. L. Moulain and wife, Lottie Moulain.

Recorded June 5, 1928, Volume 1483, page 498, Deed Records Dallas County, Texas.

COUNTY CLERK'S MEMO: PORTIONS OF THIS DOCUMENT NOT REPRODUCIBLE WHEN RECORDED

71002 1759

*ACS/TRC* DALLAS Doc: 0S@106416 Date: 01/01/1900 Vol: 0071002 Page: 01746 Page: 14 Of 46

CONTRACT NO. 1315-2 (T.E. White) Exhibit 13 :---------------------- all [illegible] tract or parcel of land situated in Dallas County, Texas, and being [illegible] of the Henry Gaugh Survey No. 90 B and described as follows:

BEGINNING: at an iron pin Forty (40) feet east of the most southerly [illegible] corner of a 42 acre tract belonging to Grantor, [illegible] parallel to Oakdale Road 338.8 feet along the South line to an iron pin for Corner;

THENCE: Measure 900 feet in a northerly direction to Iron Pin for Corner;

THENCE: Measure 338.8 feet in a Westerly direction to Iron Pin for Corner;

THENCE: Measure 900 feet in a Southerly direction and parallel to East line to place of beginning containing Seven (7) acres of land and being Seven Acres of land out of a Forty-Two (42) Acre Tract conveyed by Clara Grossman Harrison et Vir, Robt. S. Harrison by Deed dated February 15, 1939 recorded in Vol. 2123, page 211, of the Deed of Records, Dallas County, Texas. Recorded December 11, 1948, Volume 3066, page 173, Deed Records Dallas Co., Texas.

CONTRACT NO. 1371 -(T.E. White, a single man) Exhibit No. 14: ------- all that certain tract or parcel of land situated in Dallas County, Texas, and being a part of the Henry Gaugh Survey No. 90 B and described as follows:

BEGINNING at an iron pin three hundred seventy-eight and eight-tenths (378.8) feet east of the most southerly southwest corner of a 35-acre tract belonging to Grantor, measure east and parallel to Oakdale Road three hundred thirty-eight and eight-tenths (338.8) feet along the south line to an iron pin for corner;

THENCE measure one thousand (1000) feet in a northerly direction to iron pin for corner;

THENCE measure three hundred thirty-eight and eight-tenths (338.8) feet in a westerly direction to iron pin for corner;

THENCE measure one thousand feet in a southerly direction and parellel to east line to place of beginning, containing seven and eight-tenths (7.8) acres of land and being seven and eight tenths (7.8) acres of land out of the 42-acre tract conveyed by Clara Grossman Harrison et vir. Robert S. Harrison by deed dated February 15, 1939, recorded in Vol. 2123, page 211, of the Deed of Records, Dallas County, Texas.

Recorded January 26, 1950, Volume 3241, page 414, Deed Records Dallas Co., Texas

CONTRACT NO. 1420 (T. E. White, a single man) Exhibit No. 15:------- all that certain tract or parcel of land situated in Dallas County, Texas, and being a part of the Henry Gaugh Survey No. 90 B and described as follows:

BEGINNING at an iron pin 717.6 feet east of the most southerly southwest corner of a 27.2 acre tract belonging to grantor;

THENCE measure east along the same line and parallel to Oakdale Road 157.5 feet for corner;

THENCE measure in a northerly direction and parallel to east line of 27.2 acre tract tract 900 feet to a point for corner;

THENCE measure west and parallel to south line of the 27.2 acre tract 157.5 feet to point for corner;

THENCE measure in a southerly direction and parallel to east line of 27.2 acre tract 900 feet to point of beginning and containing 3.2 acres of land and being 3.2 acres of land out of the 42 acre tract conveyed by Clara Grossman Harrison et vir. Robert S. Harrison by deed dated February 15, 1939, recorded in Vol. 2123, page 211, of the Deed Records, Dallas County, Texas.

Recorded May 7, 1951, Volume 3484, page 609, Deed Records Dallas Co., Texas.

COUNTY CLERK'S MEMO: PORTIONS OF THIS DOCUMENT NOT REPRODUCIBLE WHEN RECORDED

71002 1760

CONTRACT NO. 1532 (T.E.White, a single man) Exhibit No. 16: ------- all that certain tract or parcel of land situated in Dallas County, Texas and being a part of the Henry Gaugh Survey No. 90 and being more fully described as follows:
BEGINNING at a point, the intersection of the center line of Caster Lane and the East boundary line of Perch Hill Road;
THENCE East along the center line of Castor Lane 590.4 feet to a point for CORNER:
THENCE South parallel to the east boundary line of Perch Hill Road 726.8 feet to an iron pipe for corner;
THENCE West parallel to the center line of Caster Lane 590.4 feet to an iron pin in the east boundary line of Perch Hill Road for Corner;
THENCE North along the east boundary line of Perch Hill Road 726.8 feet to the place of beginning and containing 9.85 acres of land out of the 42 acre tract conveyed by Clara Grossman Harrison Et Vir Robt. S. Harrison by deed dated Feb. 15, 1939, recorded in Vol. 2129 Page 211, deed records of Dallas County, Texas.
Recorded January 21, 1953, Volume 3781, page ____ Deed Records Dallas Co. Texas

CONTRACT NO. 1651 (T.E.White, a single man) Exhibit No. 17:----------- all that certain tract or parcel of land situated in Dallas County, Texas and being a part of the Henry Gaugh Survey Abst No. 90 E, and being more fully described as follows:

BEGINNING AT THE SE Corner of a 42 Acre tract of land, at a point 30 ft. N, which is the SW Corner of Stewart Tract in the North Right of Way line of Oakdale Road;
THENCE North along the E. Boundary line of said 42 acre tract 1045 ft. more or less to Point for Corner;
THENCE West and parallel to North Boundary line of Oakdale Road 300 feet to point for Corner;
THENCE N- 240 feet to the South Right of Way line of Castor Road;
THENCE W- along south Right of Way line of Castor Road 300 feet to point for Corner;
THENCE S 180 feet to point for Corner;
THENCE in a SW Direction 180 ft to point for Corner;
THENCE Southerly 80 ft. to point for Corner;
THENCE Southerly 140 ft. to N. Line of a 7 acre tract purchased by Gifford-Hill & Co. Inc., a point for Corner;
THENCE East 300 feet to NE Corner of said 7 acre tract
THENCE North 100 feet to NW Corner of a 7.8 acre tract sold to Gifford-Hill & Company, Inc., a point for corner;
THENCE East 338.8 feet to point for Corner which is the NE Corner of said 7.8 acre tract;
THENCE S 100 feet to NW Corner of a 3.2 acre tract sold to Gifford-Hill & Company, Inc., a point for Corner;
Thence East along N Line of Said 3.2 acre tract 157.5 feet a point for Corner;

THENCE South 900 feet to point for Corner in the North Right of Way Line of Oakdale Road;
THENCE East along North Right of Way line of Oakdale Road 157.5 feet to the place of beginning and containing 7.55 acres of land more or less.
Recorded July 21, 1954, Vol. 4080, page 67, Deed Records Dallas County, Texas.

COUNTY CLERK'S MEMO:
PORTIONS OF THIS
DOCUMENT NOT
REPRODUCIBLE
WHEN RECORDED

CONTRACT NO. 1614 )(James A. Garland, et ux Rose W.) Exhibit No. [illegible] =Tract 1

[illegible] of the Henry Gough [illegible] acre Survey, Abst. [illegible], and being a part of a [illegible] acre tract of land conveyed to J. B. Owen by J. Bruce [illegible], Jr., and wife by deed dated February 5, 1935 and recorded in Vol. [illegible], Page [illegible], Deed Records, Dallas County, Texas and being more particularly described by metes and bounds as follows; BEGINNING at a point in the East line of Perch Hill Road, at the Southwest corner of the 11.92 acres of land conveyed to Charles Al Watson by [illegible] A. Payne et vir by deed dated April 30, 1935, and recorded in Vol. [illegible], Page 509, Deed Records, Dallas County, Texas; THENCE East along the South line of said Charles Al Watson 11.92 acres, 470.2 ft. to the Northwest corner of the 5 acre tract of land conveyed by Nannie E. Redman to H. E. Rodgers, by deed dated July 1, 1935 and recorded in Vol. 1907, Page 436, Deed Records, Dallas County, Texas;
THENCE South along the West line of said H. E. Rodgers 5 acres, 217.94 feet to the Northeast corner of a tract of land conveyed to C. O. Bruton et ux by J. B. Owen by deed dated September 23, 1938 and recorded in Vol. 2000, Page 128, Deed Records, Dallas County, Texas;
THENCE West along the North line of said C. O. Bruton tract, 470.2 ft. to the Northwest corner of said C. O. Bruton's tract in East line of Perch Hill Road;
THENCE North along the East line of said road, 217.94 feet to the place of beginning, containing 2.35 acres of land, and being the same land conveyed by C. M. Owen and wife to James A. Garland by deed dated July 17, 1941 filed July 22, 1941 and recorded in Vol. 2292 Page 262, Deed Records, Dallas County, Texas
LESS AND EXCEPT, however, 1.6 acres off the entire east end of the above property conveyed by James A. Garland and wife Rose W. Garland to Gifford-Hill & Company, Inc., by deed dated April 19, 1949, filed April 22, 1949 and recorded in Deed Records, Dallas County, Texas; being .75 acres of land being conveyed herein.

Recorded October 29, 1953, Volume 3932, page 418. Deed Records Dallas County.

W/D dated 10-9-53

CONTRACT NO. 1344 (James A. Garland, et ux Rose W. Garland) Exhibit No. 18 Tr. 2

Being part of the HENRY GOUGH SURVEY, ABSTRACT NO. 494, and being part of a 2.35-acre tract on Perch Hill Road lying between the Wm. B. Henley 5-acre tract, and the R. G. Collier 4.42-acre tract, and being more particularly described by metes and bounds as follows: BEGINNING at a point 100 feet East of the East Line of Perch Hill Road on the line between the Henley 5-acre tract and the Jas. A. Garland 2.35-acre tract for the Northwest corner;
THENCE East along the Jas. A. Garland North Line 370.2 feet to the Northeast corner of said Garland tract for the Northeast corner;
THENCE South along the line between the said Garland tract and the H. E. Rodgers 5-acre tract 217.9 feet, the Southeast corner of the Garland tract for the Southeast corner of this tract;
THENCE West parallel to the North Line 270.2 feet to a point in said Garland South Line for the Southwest corner;
THENCE Northwesterly to the place of BEGINNING, and containing 1.6 acre of land, more or less, and being the East 1.6 acres of said Garland 2.35-acre tract;

IT IS FURTHER AGREED AND UNDERSTOOD by both Grantors and Grantee herein, and as a part of the consideration herein, that Grantors grant unto the said Grantee an EASEMENT over and across all of the lands held by Grantor out of which the above land is carved, for use as a roadway for the purpose of hauling gravel and/or other strippings from the premises herein conveyed, for a period of five years from the date of this Deed. After five years from the date of this Deed said Easement shall become null and void and cancelled, and be of no further force and effect; Recorded April 8, 1949, Vol. 3121, page 112, Dallas County, Texas. Warranty deed dated 4-19-49.

COUNTY CLERK'S MEMO: PORTIONS OF THIS DOCUMENT NOT REPRODUCIBLE WHEN RECORDED

71002 1762

Page 17:

CONTRACT NO. 1343 (William R. Henley et ux Vesta Henley (Exhibit No. 19:

Being out of the HENRY GOUGH SURVEY, ABSTRACT 494, and being part of the North 50 acres of the 100 acre tract devised to Jno. Shults by Will of William Shults, deceased, and being the South part of a 11.92 acre tract conveyed by Charles Al Watson, a bachelor, to James A. Garland and wife, Rosa Garland, by Deed dated April 29, 1937, recorded in Vol. 2011, Page 315, Deed Records of Dallas County, Texas, and being more particularly described by metes and bounds as follows, to-wit:

BEGINNING at a point in the East line of Perch Hill Road, said point being 364 feet South of the South line of Shady Grove Road, as now widened, said point being 394 feet South and 30 feet East of the Northwest corner of said 100 acre tract above mentioned;

THENCE East parallel with the South line of Shady Grove Road, 810 feet to a point in the East line of said 11.92 acre tract;

THENCE South with the East line of said 11.92 acre tract, 269 feet to the Southeast corner of said 11.92 acre tract;

THENCE West with the South line thereof, 808 feet to the East line of Perch Hill Road;

THENCE North with the East line of said Road, 269 feet to the place of beginning, containing 5 acres of land. Recorded April 25, 1949 Vol. 3119, page 355, Dallas Co., Texas. Warranty Deed ated 4/23/49.

CONTRACT NO. 1378 (R.G.Collier, et ux, Ida Lee Collier (Exhibit No. 20):

Being out of the HENRY GOUGH SURVEY, ABST. #494, and being 150 feet off the entire East end of a 4.57 acre tract of land conveyed by Clyde O. Bruton and wife, Crystal A. Bruton, to R. G. Collier and wife, Ida Lee Collier, dated November 17, 1947, filed December 2, 1947, and recorded in the Deed Records of Dallas County, Texas, and being more particularly described by metes and bounds as follows, to-wit:

BEGINNING at the Southeast corner of said Colliers' 4.57 acre tract above mentioned, in the North line of Vilbig Road;

THENCE North with the East line of said 4.57 acre tract, 423.2 feet to the Northeast corner of said 4.57 acre tract;

THENCE West along the North line of said 4.57 acre tract, 150 feet to a point for corner;

THENCE South and parallel with the East line of said 4.57 acre tract, 423.2 feet to a point in the South line of said tract, being in the North line of said Vilbig Road;

THENCE East along the North line of said Vilbig Road, 150 feet to the place of beginning, and containing 1.46 acres of land, more or less, (less right-of-way easement for Vilbig road). Recorded February 17, 1950, Vol.3253, page 431, Dallas County, Texas. Warranty Deed dated 1-27-50.

CONTRACT NO. 1336 -H.E.Rodgers, et ux, Lou Etta Rodgers.- Exhibit No. 21.

Being out of the HENRY GOUGH SURVEY, ABST. #494, and being part of the 50 acres conveyed by J. L. McBride et ux to Nannie E. Redman, by deed dated April 30, 1934, and recorded in Vol. 1842, page 241, Deed Records of Dallas County, Texas, and being more particularly described by metes and bounds as follows, to-wit:

BEGINNING at the Southwest corner of a 23.78 acre tract of land conveyed by Nannie E. Redman to Roy F. Brown by deed dated November 20, 1934, and recorded in Vol. 1870, page 509, of the Deed Records of Dallas County, Texas;

THENCE North along the West line of said 23.78 acre tract 641 feet to a point for corner;

THENCE West and parallel with the South line of said 50 acre tract, 339.8 feet to a point for corner;

THENCE South and parallel with the West line of said 23.78 acre tract, 641 feet to the South line of said 50 acres;

THENCE East along the South line of said 50 acre tract, 339.8 feet to the place of beginning, and containing 5 acres of land, more or less, and being the same land conveyed by Nannie E. Redman to H. E. Rodgers, by deed dated July 1, 1935, and recorded in Vol. 1907, page 436, of the Deed Records of Dallas County, Texas.

(Less Right-of-Way for City of Irving and Sewer Easement). Recorded March 17, 1949, Volume 3103, page 60, Deed Records Dallas County, Texas. Warranty Deed dated 3-8-49.

71002 1763

CONTRACT NO. 1509 - Bryan Hanes, et ux, Audrey E. Hanes - Exhibit No. 22

Being 26.16 acres of land out of a 52.33 acre tract inthe B. B. B. & C. R. R. Co. Survey, Abst. #187, and being the East half of Block No. 5 of a subdivision of said survey in the Estate of W. M. Davis, deceased, as shown by map of said subdivision recorded in Vol. 2, page 116, Map Records, Dallas County, Texas, and being more particularly described as follows: BEGINNING at the Common corner of Blocks 5, 6, 7 and 8 of said subdivision which is the center of Davis Road; THENCE South 45½ deg. East along the East line of Block No. 5, said subdivision 1585 feet to a point on the North boundary line of a 320acre tract which is the Southeast corner of Block No. 5, and the Southwest corner of Block No. 6, a corner; THENCE along the North line of a 320 acre tract and south line of Block 5, a distance of 719.2 feet to a point for corner; THENCE North 45½ deg. West and parallel to the East line 1585 feet to center of Davis Road, a point for corner; THENCE Easterly along center of Davis Road 719.2 feet to the point of beginning; being the East half of same land described in deed from Mrs. Dona M. Beck, et al, to L. Boyd, dated Oct. 22, 1928, recorded in Volume 1604, page 357, Deed Records, Dallas County, Texas; Warranty Deed dated 5-23-52; recorded June 3, 1952, Volume 3675, page 489, Deed Records Dallas Co., Texas.

26.16 ac

CONTRACT NO. 1434 - Beulah Strain, et vir George D. Strain - Exhibit No. 23---

Being a part of the B. B. B. & C. RY. CO., SURVEY, ABST. #187, and being part of BLOCK 9 of a Subdivision of said Survey in the Estate of W. M. Davis, Deceased, as shown by the Map of said Subdivision recorded in Vol. 2, page 116 Map Records, Dallas County, Texas, and more particularly described as follows:

BEGINNING at the North corner of said Block 9, same being the West corner of Block 8 of said Subdivision;

THENCE South 45 deg. East along the division line between Blocks 8 and 9 a distance of 1493.3 ft. to the East corner of said Block 9 and the North corner of Block 4 of said Subdivision; THENCE South 45 deg. West along the division line between Blocks 4 and 9 a distance of 800 ft. to a point for corner in said division line; THENCE North 45 deg. West parallel with the division line between Blocks 8 and 9 a distance of 1493.3 ft. to a point in the Northwest line of Block 9 and in the Southeast line of the Thos. Russell Survey ABST. #1268; THENCE North 45 deg. East along the Northwest line of said Block 9 a distance of 800 ft. to the place of beginning and containing 27.42 acres of land more or less; Warranty Deed dated 2-21-51, recorded March 20, 1951, Volume3461, page 565, Deed Records Dallas County, Texas.

27.42 ac

CONTRACT NO. 1542 -P.H.Davis, et ux,Valtie Davis - Exhibit No. 24------

Being a part of the B.B. B. & C. R. R. Co. Survey, Abst. # 187 and being a part of Block 8 of the subdivision of said Survey in the Estate of W.M. Davis, Deceased, as shown by the Map of said Subdivision recorded in Vol. 2, page 116 of the Map records of Dallas County, Texas, and being located in Dallas County, Texas, North of Davis Road and more particularly described as follows: BEGINNING at the Northwest corner of said Block 8, same being the Northeast corner of Block 9 of said subdivision; THENCE South 45 deg. East along the division line between Blocks 8 and 9 a distance of 1510 ft. more or less to the North right of way line of Davis Road, a point for corner; THENCE along the North right of way line of Davis Road to a point 595.1 ft. North 45 deg. East of the division line between Blocks 8 and 9 a point for corner; THENCE North 45 deg. West parallel with the division line between Block 8 and Block 9 a distance of 1565 ft. more or less to a point in the Northwest line of Block 8 a point for corner; THENCE South 45 deg. West 595.1 ft. to the place of beginning and containing 21 acres of land more or less. (Subject to gasline right-of-way # 2728) Warranty Deed dated January 9, 1963, recorded January 29, 1953, Volume 3785, page 82, Deed records Dallas County, Texas.

21 ac

71002 1764

CONTRACT NO. 1284 - Wm.E. [illegible]ostone, et ux, Margaret E.Livingstone ([illegible]ford & Horton)

Being 30.0 acres of land in the T.M. Archer Survey, Abst. #12, and lying South of the Trinity River, West of Ledbetter Drive and North of the Texas & Pacific Railroad, and being more particularly described by metes and bounds as follows: BEGINNING at a point in the center of said Trinity River that is 140 feet South, 74 deg. 45 min. West and 384.5 feet North, 7 deg. 17 min. West of the point of intersection of the West line of said Ledbetter Drive with the Northwest line of said Texas & Pacific Railroad; THENCE North 74 deg. 45 min. East, 140 feet to a point in the West line of Ledbetter Drive, 50 feet right angle distance from the center of the concrete pavement on same; THENCE South 7 deg. 17 min. East along said West line of Ledbetter Drive 384.5 feet to its point of intersection with the Northwest line of the Texas & Pacific Railroad, 100 feet right angle distance from the center of same; THENCE South 57 deg. 37 min. West along said Northwest line of the Texas & Pacific Railroad, 1537.4 feet to a point in the South line of said Archer Survey; THENCE South 89 deg. 35 min. West along said South line of the Archer Survey, 501 feet; THENCE North 0 deg. 25 min. West, 1194 feet to a point in the center of the Trinity River; THENCE in a Easterly direction along the center of the Trinity River as follows: 1st. South 70 deg. 00 min. East, 776 feet; 2nd. North 81 deg. 24 min. East, 187 feet; 3rd. East 515 feet; 4th North 61 deg. 56 min. East, 170 feet; 5th, North 18 deg. 29 min. East, 142 feet to the point of beginning and containing in all 30.0 acres of land; as surveyed by Robert H. West on October 9, 1947; SAVE AND EXCEPT, HOWEVER, the following described property: Beginning at a point in the West line of Ledbetter Drive where same intersects the Northwest line of Texas & Pacific Railroad Right-of-Way; Thence North 7 deg. 17 min. West and along the West line of Ledbetter Drive, 384.5 feet; Thence South 74 deg. 45 min. West 75 feet; Thence South 7 deg. 17 min. East and parallel with the West line of Ledbetter Drive to the Northwest line of Texas & Pacific Railroad Right-of-Way; Thence North 57 deg. 37 min. East and along said Right-of-way to the West line of Ledbetter Drive, the place of beginning, containing 0.7 acres; Save & Except 18.8594 acres for tool road Right-of-Way, and .76 for Power Line Right of Way, leaving a total of 4.98 acres herein conveyed. Deed recorded October 28, 1947, Volume 2984, page 552, Deed Records Dallas County, Texas. LESS 5.4 acres for Toll Road R/O/W leaving a net acres conveyed herein of 4.98 acres.

CONTRACT NO. 1329 -William Lester Crawford

BEING out of the Thomas M. Archer Survey, Abstract No. 12, and being a portion of the land described in a certain deed dated September 16, 1910, from M.H.Turner to W.L.Crawford, filed for record on September 17, 1910, and recorded in Vol. 495, page 416 of the Deed Records of Dallas County, Texas, the said lands herein conveyed being bounded on the South, Southwest and West by the East boundary line of the West Levy of the City and County Levy Improvement District; and on the Northwest, West and North by the old Channel of the West Fork of the Trinity River; and on the Northeast, East and Southeast by the West Fork of the Trinity River and the West line of a tract of land conveyed by Frank M. Horton et ux, to William E. Livingston by deed dated October 10, 1947, and recorded in Vol. 2894, page 553 of the Deed Records of Dallas County, Texas;

It being the intention of the Grantor herein to convey by this deed only that portion of the property described in said deed from M.H.Turner to W.L.Crawford which lies North and East of the East boundary line of said West Levy, as shown by the Dallas County Plat thereof of the Thomas M. Archer Survey, Abstract No. 12; and said tract is estimated, but not warranted, to contain 53.56 acres of land.

There is excepted from this conveyance the property described in a certain easement executed by Katherine L. McMurray to City and County of Dallas Levy Improvement District, a public corporation, dated December 3, 1928, and recorded in Vol. 1502, page 329 of the Deed Records of Dallas County.

Grantor reserves unto himself, his heirs and assigns forever, an undivided one-half (1/2) interest in all minerals, ores, hydrocarbons, or composite bodies of solids, liquids and/or gaseous materials either known or unknown, except all sands, gravel and surface soil, which is conveyed hereby outright; Warranty Deed dated February 2, 1949, Recorded in Volume 3090, page 97, on February 9, 1949, Deed Records Dallas County, Texas, and LESS and EXCEPT 3.56 acres deeded to Texas Turnpike - our cont.#1774.

71002 1765

CONTRACT NO. 1726 - J. A. Irwin, Inc.

All that certain lot, tract or parcel of land situated in Dallas County, Texas, and being Lot Forty (40) 9n Block "P"/7171 of JOE A. IRWIN ADDITION NO. 7 to the City of Dallas, Texas, according to map or plat thereof recorded in Volume 10, page 421, Map Records of Dallas County, Texas. Warranty Deed dated September 14, 1955, Recorded September 28, 1955, Volume 4348, page 346, Deed Records Dallas County, Texas.

CONTRACT NO. 2219 - Irwin Real Estate Company, a partnership composed of Landon J. Irwin, Robert J. Irwin, and Rose B. Doerr, a widow-

Being Lot 44 in Block "P" /7171 of Joe A. Irwin Additon #7, now an Addition to the City of Dallas, according to the Map of said Addition recorded in Volume 10, pages 421 and 422, Map Records of Dallas County, Texas;

This Deed is executed subject to the following matters, to bhe extent the same are in effect at this time:
Easement by J. O. Spring to Humble Pipe Line Co., dated 2-1-46, filed 7-20-46;
Easement by J.O. Irwin to The Texas Pipe Line Co., dated 7-30-47, filed 8-8-47;
Easement by J. O. Spring to Dallas Power & Light Co., dated and filed 9-4-37 and recorded in Vol. 2020, page 601, Deed Records of Dallas County, Texas.
Warranty Deed dated December 29, 1961, recorded January 10, 1962, Volume 5688, page 448, Deed Records Dallas County, Texas.

CONTRACT NO. 1543 - S. A. Matthews, et al.

Being a part of the ELI MERRELL SURVEY, ABST. #930 and being the East one-half of an 80-acre tract and described as follows:

BEGINNING at the original Southeast corner of said Eli Merrell Survey;
THENCE North with the East boundary line 950 varas;
THENCE West 237.5 varas;
THENCE South 950 varas;
THENCE East 237.5 varas to the place of beginning.
36.974 acres, Warranty deed dated January 27, 1953, recorded February 13, 1953, Vol. 3793, page 127, Deed Records, Dallas County, Texas.

CONTRACT NO. 1677 - D. N. WINN.

BEING out of the George E. Harrison Survey, Abst. #649 and the George E. Harrison Survey, Abst. #650, described as follows:
BEGINNING at a point in the southeast line of Log Cabin Road, said point being South 44 degrees 35 min. West 2064.12 feet and south 46 degrees 22 Min. East 20 feet from the Southeast corner of the George E. Harrison Survey;

THENCE along the south line of Log cabin Road, North 44 deg. 35 min. East 2057.96 feet and North 76 Deg. 52 Min. East 1136.30 feet to corner; THENCE South 45 deg. 04 Min. East 961.67 feet to corner; THENCE North 47 deg. 56 Min. East 76.30 feet to a point in the West line of the Belt Line Road; THENCE along the West line of the Belt Line Road South 19 deg. 19 Min. East 135 feet; South 13 deg. 14 Min. East 100 feet; South 10 deg. 00 Min. East 100 feet; South 6 deg. 16 Min. East 150 feet; South 0 Deg. 38 Min. West 100 feet; South 7 deg. 22 Min. West 100 feet; South 9 deg. 06 Min. West 100 feet; South 13 Deg. 50 Min. West 133.60 feet; South 16 deg. 06 Min. West 1190.70 feet; South 61 Deg. 06 Min. West 70.70 feet; and South 16 Deg. 20 Min. West 197.20 feet to corner; THENCE North 47 Deg. 52 Min. West 650.30 feet to corner; THENCE South 44 deg. 43 Min. West 1123.0 feet to corner; THENCE North 46 deg. 22 Min. West 2222 feet to the place of beginning, being 144.52 acres.
This Deed executed subject to:
EASEMENTS recorded in Vol. 2170, Page 521, Volume 2170, page 393, Volume 2175, page 94, Volume 2891, page 437, Deed Records, Dallas County, Texas; and
EASEMENT: Norley Farms, Inc. to Brazos River Transmission Electric Cooperative, Inc., filed August 3, 1949, and recorded in Deed Records Dallas County, Texas; Warranty Deed dated December 28, 1954, recorded January 14, 1955, volume 4175, page 160, Deed Records Dallas County, Texas. LESS 10 acres sold to Whittle Machinery Co. inthe Northwest corner of said Tract (2785 cont.).

√ CONTRACT NO. 1786 -Alvey A. Taylor, et ux, Mineola Taylor - Exhibit No. 31:

Being a part of the [illegible] SURVEY, ABST. NO.1281, and also a part of that certain 191-Acre Tract described in, and conveyed by, the Deed from Robert D. Sears et al to Alvey A. Taylor, dated July 4, 19[illegible], and recorded in Volume 2504, Page 21, Deed Records of Dallas County, Texas, more particularly described as follows:
BEGINNING at the Northeast corner of the said 191-Acre Tract, a fence corner, being also the Northwest corner of a tract of land owned by Irene Brothers Peters;
THENCE Southerly along the fence line between this land and the said Irene Brothers Peters tract 1089 feet, more or less, to a fence corner, the Southeast corner of the said 191-Acre Tract;
THENCE Westerly along a fence, the common boundary line between another tract of land owned by Irene Brothers Peters and this land, 3500 feet to a point for the Southwest corner of this tract;
THENCE Northerly and parallel with the East line of this tract, 1089 feet, more or less, to the North line of the said 191-Acre Tract and the Southeast line of the Howard K. Crutcher Tract, a fence;
THENCE Easterly along a fence which is the common boundary line between this tract and the Howard K. Crutcher Tract, being the Northwest line of the said Robert Sloan Survey, 3500 feet, to the Place of beginning;
CONTAINING Eighty-seven and one-half (87.5) Acres of Land, more or less, being 87.5 Acres of land off the East End of the said 191-Acre Tract. Warranty Deed dated April 9, 1956, Recorded April 16, 1956, Volume 4474, page 577, Deed Records Dallas County, Texas.

√ CONTRACT NO. 1885 - W.A. McCoy and wife Minnie L. McCoy - Exhibit No. 32:

Being a part of the WILLIAM B. ROWE SURVEY, ABSTRACT NO. 1243, more particularly described as follows:
BEGINNING at the Southeast corner of a 46.06 Acre Tract lying in the Southwest corner of the said ROWE Survey, on the West Side of Elm Fork of the Trinity River, the said corner being in the South line of the said ROWE Survey at the point of intersection of the said line with the center of the said Elm Fork of the Trinity River;
THENCE West 1000 feet, more or less, to a point for corner, being the Southwest corner of the said ROWE Survey;
THENCE North along the West line of the said ROWE Survey, 275 feet to a point for corner;
THENCE East 970 feet to a point for corner in the center line of the said Elm Fork of the Trinity River;
THENCE South 6 deg. 47 min. West 99 feet to a meander point in the center line of the said Elm Fork of Trinity River;
THENCE South 7 deg. 47 min. East 121 feet to another meander point in the center line of said Elm Fork of Trinity River;
THENCE South 22 deg. 29 min. East 61 feet to the Point of Beginning;
Containing 6.12 Acres of Land, more or less; Warranty Deed dated September 5, 1957, Recorded September 12, 1957, Volume 4765, page 513, Deed Records Dallas County, Texas.

COUNTY CLERK'S MEMO:
PORTIONS OF THIS
DOCUMENT NOT
REPRODUCIBLE
WHEN RECORDED

71002 1767

CONTRACT NO. 1810 - Jack K. Lewis - Exhibit No. 33

Being parts of the [illegible] SURVEY, ABSTRACT NO. 731, the B. B. B. & C. R. R. CO. SURVEY, ABSTRACT NO. [illegible], the JOHN C. BEVERS SURVEY, abstract no. [illegible] and the MARY K. PERRY SURVEY, ABSTRACT NO. 1147, described in Two Tracts as follows:

FIRST TRACT: Beginning at a point in the North line of the said Perry Survey, [illegible] feet West of the Southeast corner of the L. Simpson Survey; THENCE West 1702 feet to a point in the North line of the said Kennedy Survey;

THENCE South 3490 feet to a point in the South line of the said B. B. B. & C. R. R. Co. Survey;

THENCE East 1458 feet to the Southeast corner of the said B. B. B. & C. R. R. Co. Survey, a point in the West line of the said Perry Survey;

THENCE South 1034 feet to the North bank of the Elm Fork of the Trinity River;

THENCE South 61½ East 270 feet;

THENCE North 4709 feet to the place of beginning;

CONTAINING 145 Acres of Land, being 25½ acres out of the said A. W. Perry Survey, 3½ Acres out of the said John C. Bevers Survey, 48 Acres out of the said B. B. B. & C. R. R. Co. Survey, and 68 Acres out of the said Mary Kennedy Survey; and being the same land described in the correction deed from M. F. Smith and wife Jessie C. Smith to R. L. Donald, Jr., dated December 26, 1929, and recorded in Vol. 1825, Page 481, Deed Records of Dallas County, Texas.

SECOND TRACT: Beginning at the Northwest corner of a 500 acre tract of land sold by F. M. Wigginton to J. W. Mann, a stake in the North boundary line of the said Mary Kennedy Survey, said point being the Northwest corner of the land described as Tract 1 above;

THENCE West 273 varas (758.3 feet) to a stake, the Northeast corner of a tract sold by said Wigginton to John D. Abbott;

THENCE South 1255 varas (3486.1 feet) to a point in the South line of the said B. B. B. & C. R. R. CO. Survey, Abbott's Southeast corner;

THENCE East 273 varas to Mann's Southwest corner, being the Southwest corner of the land described as Tract 1 above;

THENCE North 1255 varas to the Place of Beginning; and containing 61 Acres of land, more or less, being 35 acres of the said Mary Kennedy Survey and 26 Acres of the said B. B. B. & C. R. R. Co. Survey, and being the same land described in that certain deed from R. L. Donald, Individually and as Community Survivor of the Estate of Ruth E. Donald, Deceased, to R. L. Donald, Jr., dated July 2, 1932, and recorded in Vol. 1762, Page 495, Deed Records of Dallas County, Texas.

This deed executed subject to the following:

Easement: Ed P. Mayes and wife to Texas Power and Light Company, dated May 16, 1924, filed May 31, 1924 and recorded in Vol. 1102, Page 124, Deed Records, Dallas County, Texas; and

Easement, R. L. Donald, Jr., and wife Lorraine to Texas Power & Light Company, recorded in Vol. 4040, Page 488, Deed Records, Dallas County, Texas; and

Easement: Condemned in Cause # 102622-B. Texas Power & Light Company vs R. L. Donald, Jr., and wife Lorraine, filed December 14, 1953; and

Any part of said land used for road purposes; and

Any part of said land within the banks of the Trinity River.

Warranty Deed dated August 21, 1956, Recorded September 7, 1956, Volume 456, page 290, Deed Records Dallas County, Texas.

COUNTY CLERK'S MEMO: PORTIONS OF THIS DOCUMENT NOT REPRODUCIBLE WHEN RECORDED

71002 1768

√ CONTRACT NO. 1268, Craig Espy and wife, Margaret Schulz Espy - Exhibit No. 34 :

Situated in Dallas County, Texas, being out of the JOHN R. BAUGH SURVEY, ABSTRACT #137, and being more particularly described in two tracts as follows, to-wit:

FIRST TRACT

BEGINNING 1837 feet East and 1107 feet South of the Northwest corner of said Baugh Survey; THENCE South 1259 feet along a fence to channel center of West Fork of the Trinity River; THENCE down said channel center with its meanderings to the North line of the Elizabeth Swain Tract; THENCE East with this line along the fence 831 feet to what is known as the old Dave Hunter tract, to a corner; THENCE North with Hunter's West line along a fence, 1533 feet to corner; THENCE West 1787.2 feet to the BEGINNING, containing SIXTY (60) ACRES, and described above as per field notes made by Chas. Archer, surveyor, on October 12, 1916 upon actual survey of land as it lies on the ground, and being the same land conveyed as "First Tract" in deed from Frances T. Todd and husband to Graham Payne by deed dated January 9, 1941, and recorded in Volume 2251, Page 496, Deed Records of Dallas County, Texas.

SECOND TRACT

BEING **Ten (10)** acres off the NORTH END of a FORTY (40) ACRE TRACT deeded to Wesley W. Brannan by A. B. Mullins by deed dated November 4, 1868, and recorded in the Deed Records of Dallas County, Texas, said 40 acres situated on the East side of West Fork of the Trinity River, and being the "Second Tract" described in deed from Frances T. Todd and husband to Graham Payne, dated January 9, 1941, and recorded in Volume 2251, Page 496, Deed Records of Dallas County, Texas.

Less 3.3 acres sold to B.F.Holley and A.L.Lewis contracts 1404 and 1466, Warranty Deed dated 8-7-47, recorded 8-19-47, volume 2862, page 167, Deed Records, Dallas Co.Texas.

CONTRACT NO. 2218 - Don Curtis, et ux, Rose Emma Curtis - Exhibit No. 35:

Being a tract out of the THOMAS STOKES SURVEY, ABST. NO. 1301, more fully described as follows:

BEGINNING at the Southwest corner of said survey;

THENCE East 613.2 feet along the South line of said survey, being center line of Hunter Ferrell Road, to the place of beginning of the tract being described;

THENCE North a distance of 236.0 feet along a line parallel with the West line of said survey;

THENCE East a distance of 279.0 feet along a line at right angle to South line of said survey;

THENCE South a distance of 236.0 feet along a line parallel to West line of said survey to a corner in South line of said survey;

THENCE West a distance of 279.0 feet along South line of said Survey, to place of beginning, and containing 1.511 acres, more or less, out of a 15 acre tract conveyed by Grover C. Dorman to Don Curtis by Deed dated September 22, 1947, filed September 22, 1947 in the Deed Records of Dallas County, Texas.

This Deed is executed subject to the following matters, to the extent the same are in effect at this time;

Easement, W. M. Curtis et ux to Texas Power & Light Co., dated February 11, 1939, recorded in Vol. 2121, page 574, Deed Records of Dallas County, Texas.

Easement, W. M. Curtis et ux to Texas Power & Light Co., dated March 23, 1937, recorded in Vol. 2021, page 201, Deed Records of Dallas County, Texas.

Any part of said property included in road or roadways.

Warranty Deed dated 12-8-61, recorded 1-9-62, volume 5687, page 282, Deed Records, Dallas County, Texas.

VOL. PAGE

71002 1769

CONTRACT NO. 1163-A: Mary I. Newbold, a widow - Exhibit No. 36:

tract or parcel of land, situated in Dallas County, Texas, and described as follows:

FIRST TRACT: About 9-1/2 miles N 83 W from the County Court House in the City of Dallas, and being a part of the J. Slayton Survey Abst #1445, and BEGINNING at the intersection of the W line of the County Road located on the E line of 171.37 acre tract deeded by Lehman Singer to Geo. W. Loomis, by Deed recorded in Vol. 355, Page 267 Deed Records, DCT, and the N line of said tract, a stake 8 ft W of the NE corner of said 171.37 acre tract. Thence W 1014 ft to another corner of same. Thence S 398 ft to the N line of the B.B.B. & C.R.R.Co. Survey, Abst #203, and the S line of the Slayton Survey, a stake; Thence E 1014 ft to stake on the W line of said Wagon Road. Thence N with the line of said road 398 ft to the place of beginning, and containing 9.2647 acres of land.

SECOND TRACT: About 9-1/2 miles N 83 W from the County Court House in the said City of Dallas and being a part of the B.B.B. & C.R.R.Co. 160 acre Survey Abst #203; BEGINNING at the NE corner of said Survey; Thence W 1014 ft. Thence S 461.2 ft to a stake; Thence E 1014 ft to a stake in the W line of a County Wagon Road. Thence N with the line of said Road 461.2 ft to the place of beginning, and containing 10.7359 acres of land.

The two tracts of land herein described containing in all 20 acres or more.

Warranty deed dated October 28,1941, Recorded October 31,1941,Vol. 2303,page 597, Deed Records Dallas County, Texas.

20 ac

CONTRACT NO. 2667 - Zelma Lawrence, a widow,- Exhibit No. 37:

Being out of the I. JENNINGS SURVEY, ABST. #679, also a part of a 26 1/2 acre tract of land as conveyed by Deed dated December 23, 1908, from G. W. Harrison to A. J. English and recorded in Vol.434, page 252, Deed Records, Dallas County, Texas, and described by metes and bounds as follows:

BEGINNING at a point which is the Southwest corner of the aforesaid 26 1/2 acre tract;

THENCE North along the West line of the aforesaid 26 1/2 acre tract 170 feet to a point for corner;

THENCE East and parallel to the South line of the aforesaid 26 1/2 acre tract, 246.50 feet to a point for corner;

THENCE North 150 feet to a point for corner;

THENCE East 438.75 feet to a point for corner in East line of the aforesaid 26 1/2 acre tract;

THENCE South along the East line of the aforesaid 26 1/2 acre tract, 316 feet to a point for corner which is the Southeast corner of the aforesaid 26 1/2 acre tract;

THENCE West 742.50 feet to the point of beginning, and being the same property conveyed in Deed from Joe A. Johnson and wife, Juanita Johnson to E. R. Lawrence, dated September 5, 1957, recorded in Vol. 4781, page 637, Deed Records, Dallas County, Texas.

4.50 ac

This Deed is given in lieu of and in correction of that one certain Deed dated April 22, 1966, executed by Zelma Lawrence, a widow, to Gifford-Hill & Company, Inc., filed for record April 26, 1966, in which instrument the property described was in error.

This conveyance is given and accepted subject to any and all restrictive covenants and easements imposed upon the property herein conveyed as the same appear of record in the Office of the County Clerk of Dallas County, Texas.

Grantee herein agrees to assume the payment of all taxes for 1966.

Warranty Deed dated June 22, 1966, recorded July 5, 1966, Vol. 856, page 1467, Deed Records Dallas County, Texas.

4.5 ac

71002 1770

CONTRACT NO. 1711 -(G.C. Cribbs and wife, Jewel Cribbs) ------ 19-------- all that certain lot, tract or land described as follows:

A certain tract or parcel of land out of the John C. Reed Survey, Abst. #1183, and being the South part of a 60 Acre tract known as the W. Q. Seale Tract and is more particularly described as follows: COMMENCING at the Southeast Corner of said John C. Reed Surve, said corner also being the center line of Oakdale Road and the intersection of the center line of Hard Rock Road, continuing along the center line of said Hard Rock Road North a distance of 2003.3 feet to a point opposite the Southeast Corner of said W. Q. Seale 60 Acre tract; THENCE West across the West half of Hard Rock Road along the South Line of said Seale Tract, a distance of 488.0 feet to an iron pin for the Southeast property corner; THENCE West 842.2 feet along the South Line of said W. Q. Seale 60 acre tract to an iron pin for corner; THENCE North 310.3 feet along the West line of said W. Q. Seale 60 acre tract to iron pin for corner; THENCE East 842.2 feet to an iron pin for the Northeast property corner; THENCE South 310.3 feet to an iron pin in the South line of said W. Q. Seale 60 acre tract and being the Southeast property corner and contining 6.0 acres of land; Warranty Deed dated June 14, 1955, and Recorded June 24, 1955, vol. 4285, page 349, Deed Records Dallas Co., Texas

COUNTY CLERK'S MEMO:
PORTIONS OF THIS
DOCUMENT NOT
REPRODUCIBLE
WHEN RECORDED

*ACS/TRC* DALLAS Doc: 0S@106416 Date: 01/01/1900 Vol: 0071002 Page: 01746 Page: 26 Of 46

Parker land

CONTRACT NO. 3712 (John R. Olson, Trustee - (EXHIBIT NO. 40) (Jack Rabbit Hill land)

Being a tract of land out of the JOHN FARRENS SURVEY, ABSTRACT NO. 468, Dallas County, Texas, and being more particularly described as follows: BEGINNING at an iron rod on the North line of said JOHN FARRENS SURVEY and being 2653.5 feet East of the Northwest corner of the said JOHN FARRENS SURVEY and also being 1972.2 feet South 0 deg. 04 min. West of the center line of Shady Grove Road;
THENCE East a distance of 909.0 feet to an iron rod;
THENCE South 0 deg. 04 min. West a distance of 622.0 feet;
THENCE West, at a distance of 9.0 feet an iron rod, a total distance of 909.0 feet to an iron rod;
THENCE North 0 deg. 04 min. East a distance of 622.0 feet to the place of Beginning, containing 12.98 acres of land more or less.

12.98 ac.

THAT, grantor herein does further GRANT, SELL and CONVEY all rights, title and interest in and to the following described easements:

1. Easement executed by Lizzie Boles, a widow to W. W. Parker, dated December 5, 1959, filed November 14, 1960, recorded in Volume 5444, Page 57, Deed Records, Dallas County, Texas.

2. Amendment of Easement executed by Lizzie Boles, a widow, to W. W. Parker, dated May 28, 1960, filed November 14, 1960, recorded in Volume 5444, Page 75, Deed Records, Dallas County, Texas.

SAID EASEMENTS being over and across the following described property:

Being a tract of land in the ELIZABETH GRAY SURVEY, ABSTRACT NO. 1680, Dallas County, Texas, and being more particularly described by metes and bounds as follows:
BEGINNING at the Northeast corner of that one certain tract of land described in Deed from John Jones et al and W. W. Parker, recorded in Volume 5133, Page 152, Deed Records, Dallas County, Texas;
THENCE West along the North line of the Parker Tract 51 feet to point for corner;
THENCE North and parallel to the East line of the 14 acre Lizzie Boles Tract a distance of 1269 feet to place for corner;
THENCE West parallel to the North line of said Parker Tract 159 feet to place for corner;
THENCE North parallel to the East line of 14 acre Lizzie Boles Tract, 51 feet to point for corner;
THENCE East along the North line of the Lizzie Boles 14 acre tract 220 feet to the place for corner in the Southeast corner of the Ethel Williams Tract, being the Northeast corner of the Lizzie Boles 14 acre tract;
THENCE South along the East line of the Lizzie Boles 14 acre tract 1420 feet more or less to place of beginning and being a strip of land 51 feet wide with the length herein described.
Recorded March 6, 1967, Vol. 67046, pages 0135 and 0136, Deed Records.

71002 1772

CONTRACT NO. 1531 (Jeff D. Bronson & wife, Elsie Mosley Bronson) EXHIBIT NO. 41:

an undivided one half (1/2) interest in and to that certain lot, tract or parcel of land, lying and being situated in the county of Dallas, Texas, and being out of the John C. Reed 1660 acre survey Abstract no. 1183, and being a part of the 60 acre tract sold by Mrs. Ada Clayton and husband Chas Clayton, to W. Q. Seale on Sept. 28, 1926, by deed, recorded in Vol. 1342, page 559, of the deed records of Dallas County, Texas, and the same one half (½) undivided interest sold by W. Q. Seale and wife Mrs. Josie Seale to Jeff D. Bronson and wife Elsie Mosley Bronson by deed as recorded in Vol 3123 page 130 deed records Dallas County, Texas, and being more fully described, by metes and bounds as follows, TO-WIT:

BEGINNING at a point in the East line of said 60 acre tract 297 feet North of the Southeast Corner of the said 60 acre tract, a stake in Public Road;

THENCE North along the East line of said 60 acre tract 594 feet to a stake in public road;

THENCE West parallel with the South line of said 60 acre tract, 1320 feet to a stake in the West line of the said 60 acre tract;

THENCE South along the west lineof said 60 acre tract 594 feet to a stake for corner;

THENCE East parallel with the South line of said 60 acre tract 1320 feet to the place of beginning,

and being the same property described in a warranty deed from W. Q. Seale and wife Josie Seale to H. H. Connell and wife Ella Connell dated Oct. 15th, 1936 recorded in Vol. 2122 page 452, deed records of Dallas County, Texas. Warranty Deed dated November 25, 1952, and Recorded November 26,1952,Vol. 3764,page 601, Deed Records Dallas County,Texas

EXHIBIT NO. 42

CONTRACT NO. 2694 ( ROY O. SEALE, Individually and as Co-Independent Executor of the Estate of Josie McGlothlin Seale and W. Q. Seale; ASA SEALE Individually and as Co-Independent Executor of the Estate of Josie McGlothlin Seale and W. Q. Seale; and IRENE S. RADDATZ et vir GLEN C. RADDATZ)

TRACT I: Being a tract or parcel of land situated in the J. McLAUGHLIN SURVEY, ABSTRACT NO. 848, Dallas County, Texas, and being a part of a tract conveyed by deed to John A. Pope from Charles L. Joyce et ux, et al as recorded on Page 203, Volume 1856, Dallas County Deed Records, and being more particularly described by metes and bounds as follows: BEGINNING at the Southwest corner of said J. McLaughlin Survey; THENCE North 89 deg. 00 min. East along an old fence line a distance of 1620 feet to an iron rod; THENCE North along an old fence line a distance of 1053 feet to an iron rod; THENCE South 89 deg. 00 min. West a distance of 818.8 feet to an iron rod; THENCE South a distance of 265.25 feet to an iron rod; THENCE South 89 deg. 00 min. West a distance of 821.2 feet; THENCE South a distance of 787.75 feet to place of beginning, containing 34.15 acres of land more or less;

and have GRANTED, SOLD AND CONVEYED and by these presents do GRANT, SELL AND CONVEY unto

GIFFORD-HILL & COMPANY, INC., an Undivided One-Half (1/2) Interest, in all that certain property situated in Dallas County, Texas, described as follows, to-wit: TRACT II: Being a part of a 60.0 acre tract in the JOHN C. READ SURVEY, ABSTRACT NO. 1183, Dallas County, Texas, a tract conveyed to W. Q. Seale by deed as recorded on Page 559, Volume 1342, in the Dallas County Deed Records and being more fully described as follows: BEGINNING at a spike in the center of a road and being 297 feet North 0 deg. 19 min. West from the Southeast corner of said 60.0 acre tract; THENCE South 89 deg. 41 min. West a distance of 1320 feet; THENCE North 0 deg. 19 min. West a distance of 594 feet; THENCE North 89 deg. 41 min. East a distance of 1120 feet to an iron rod; THENCE South 0 deg. 19 min. East a distance of 115 feet to an iron rod; THENCE North 89 deg. 41 min. East a distance of 200 feet to a spike in the center of said road; THENCE South 0 deg. 19 min. East a distance of 479 feet to the place of Beginning, containing 17.47 acres of land more or less.

Grantors herein convey undivided/interest (One Half) in the above described Tract II, but it is expressly agreed and understood that the Vendor's Lien retained herein applies only to the One Half interest conveyed herein and to all of Tract I above described.

Grantee herein agrees to assume payment of 1966 taxes. Warranty Deed dated 8-23-66, recorded 8-29-66, Volume 895, page 0899, Deed Records Dallas County, Texas.

71002 1773

CONTRACT NO 2695 ---------------------- EXHIBIT NO. 43

ROY Q. SEALE, Individually and as Co-Independent Executor of the Estate of Josie McGlothlin Seale and W. Q. Seale; ASA SEALE, Individually and as Co-Independent Executor of the Estate of Josie McGlothlin Seale and W. Q. Seale; and IRENE S. RADDATZ et vir, GLEN C. RADDATZ

Being a tract or parcel of land situated in the JOHN R. BAUGH SURVEY, ABSTRACT NO. 137, Dallas County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING in the center of a road at the Northeast corner of said John R. Baugh Survey;

THENCE South 89 deg. 42 min. West along the center of said road a distance of 1657 feet to a spike;

THENCE South along the East line of a country road a distance of 1052 feet to an iron rod;

THENCE North 89 deg. 42 min. East a distance of 1657 feet to an iron rod;

THENCE North a distance of 1052 feet to the place of Beginning, containing 40.0 acres of land more or less. Warranty Deed dated August 23, 1966, Recorded September 7, 1966, Volume 901, page 0722.

CONTRACT NO. 2696 ------------ EXHIBIT NO. 44

(ROY Q. SEALE, Individually and as Co-Independent Executor of the Estate of Josie McGlothlin Seale and W. Q. Seale; ASA SEALE, Individually and as Co-Independent Executor of the Estate of Josie McGlothlin Seale and W. Q. Seale; and IRENE S. RADDATZ et vir, GLEN C. RADDATZ)

Being a tract or parcel of land situated in the J. SPOON SURVEY, ABSTRACT NO. 1326; E. GRAY SURVEY, ABSTRACT NO. 1680; B. B. B. & C. RR. SURVEY, ABSTRACT NO. 202, and in the J. FARRANS SURVEY, ABSTRACT NO. 648, Dallas County, Texas, and being more particularly described as follows:

BEGINNING at the Southwest corner of said J. Farrans Survey in the center of Oakdale Road;

THENCE North 89 deg. 42 min. East along the center of said road a distance of 824.7 feet;

THENCE North, at a distance of 26.5 feet an iron pipe, a total distance of 1320 feet to an iron rod;

THENCE East a distance of 1828.8 feet to an iron rod;

THENCE North 0 deg. 04 min. East a distance of 76 feet to an iron rod;

THENCE East a distance of 909 feet;

THENCE North 0 deg. 04 min. East a distance of 622 feet;

THENCE West a distance of 909 feet to an iron rod;

THENCE North 0 deg. 04 min. East, at a distance of 2562.1 feet an iron pipe, a total distance of 2594.2 feet to a spike in the center of Shady Grove Road;

THENCE North 89 deg. 04 min. West along the center of said road a distance of 1171.9 feet to a spike at the beginning of a curve;

THENCE South 74 deg. 22 min. West a chord distance of 619.18 feet to a spike at the end of curve;

THENCE South 57 deg. 48 min. West along the center of road a distance of 324 feet to a spike at the beginning of a curve;

THENCE South 72 deg. 33 min. West a chord distance of 282.38 feet to spike at the end of curve;

THENCE South 87 deg. 18 min. West along center of said road a distance of 878.7 feet to a spike at the beginning of a curve;

THENCE South 88 deg. 17 min. West a chord distance of 259.97 feet to a spike at the end of curve;

THENCE South 89 deg. 17 min. West along center of said road a distance of 201.3 feet to a spike at the beginning of a curve;

THENCE South 81 deg. 26 min. West a chord distance of 198.13 feet to a spike at the end of a curve and the beginning of another curve;

THENCE South 66 deg. 05 min. West a chord distance of 148.52 feet to a spike at the end of curve;

THENCE South 58 deg. 35 min. West along the center of said road a distance of 54 feet to a spike at the beginning of a curve;

THENCE South 74 deg. 31 min. West a chord distance of 192.32 feet to a spike at the end of curve;

71002 1774

THENCE North 89 deg. 33 min. West along center line of road a distance of 823 feet to spike at the Northeast corner of a cemetery tract;
THENCE South a distance of 405.3 feet to an iron rod at a fence corner;
THENCE South 87 deg. 35 min. West along a fence a distance of 311 feet to a spike in the center of Hard Rock Road;
THENCE South 0 deg. 19 min. East along center of road a distance of 1775 feet to a spike;
THENCE East a distance of 907.7 feet to an iron stake;
THENCE South 0 deg. 45 min. West a distance of 487.8 feet to an iron pipe;
THENCE East a distance of 1779 feet to an iron rod;
THENCE South a distance of 1315.8 feet to place of beginning, containing 388.67 acres of land more or less with about 4.46 acres being occupied by public roads. (384.21 acres)

383.33

LESS .8795 acres deeded to Cemetery Association on Contract #2828. Warranty Deed dated August 23, 1966, Recorded August 29, 1966, Vol. 895, pages 0896 and 0897. Deed Records Dallas County, Texas; leaving a total of 383.33 acres.

CONTRACT NO. 1721 (H. P. Stevenson and wife Amorette E. Stevenson) EXHIBIT NO. 45

Being a certain tract or parcel of land out of the JOHN C. READ SURVEY, Abstract #1188 and being a part of a 33 acre tract of land conveyed to Hattie Hasie by W. C. Scale and wife by deed dated February 23, 1927 and recorded in Volume 1365, Page 528, Deed Records, Dallas County, Texas:

Beginning at a point 364 feet East and 272.25 feet South of the Northwest Corner of said 33 acre tract; being on the West line of a 4 acre tract described in Deed from Hattie Hasie to H. P. Stevenson dated June 1, 1938, and recorded in Volume 2072, Page 567, Deed Records, Dallas County, Texas;
THENCE South on the West line of said 4 acre tract 816.75 feet to the Southwest Corner thereof;
THENCE East on the South line of said 4 acre tract 160 feet to its Southeast Corner;
THENCE North on the East line of said 4 acre tract 816.75 feet for Corner;
THENCE West 160 feet to the point of Beginning.

3 acres

THIS Deed executed subject to:

EASEMENT: H. P. STEVENSON and wife, AMORETTE E. STEVENSON, to TEXAS POWER & LIGHT CO., dated January 18, 1939, and filed April 29, 1939, Rec Volume 2131, Page 606, Deed Records, Dallas County, Texas.

EASEMENT: H. P. STEVENSON and wife, AMORETTE E. STEVENSON, to THE TEXAS PIPE LINE CO., dated February 1, 1947, and filed March 1, 1947, Deed Records, Dallas County, Texas. Warranty Deed dated August 15, 1955, Recorded August 23, 1955, Volume 4325, page 291, Deed Records Dallas Co., Texas.

71002 1775

CONTRACT No. 7311 (Lucille King Turner, a widow) EXHIBIT NO. 46

BEING a tract or parcel of land lying in the JAMES McLAUGHLIN SURVEY, ABSTRACT 818, and being a part of Lot 7 of the division of the Estate of Arline Rogers, deceased, and said Lot 7 fully described in a Commissioners Partition Report recorded in Book I, Page 300, Minutes of the Probate Court, Dallas County, Texas, and this particular tract or parcel being the Most Easterly 6.2 acres of land of that certain tract conveyed to Will Rogers by George Sergeant, Administrator by deed recorded in Vol. 521, Page 481, Deed Records, Dallas County, Texas, the said 6.2 acre tract or parcel being more particularly described by metes and bounds as follows:

BEGINNING at a point in the center line of a County Road known as Oakdale Road, said point being 2632.0 feet West of the center line of Belt Line Road and the East line of said McLaughlin Survey, said beginning point being the Northeast corner of said Lot 7 and the Northeast corner of this 6.2 acre tract;

THENCE South along the East line of said Lot 7, 631.0 feet to the Southeast corner of said Lot 7, being point for corner;

THENCE West along the South line of said Lot 7 a distance of 434.75 feet to point for corner;

THENCE North and parallel with the East line of said Lot 7, a distance of 631.0 feet to the center line of said Oakdale Road and the North line of said Lot 7, said point for corner;

THENCE East along the center line of said Oakdale Road and the North line of said Lot 7, a distance of 434.75 feet, said point being the place of beginning, and containing 6.29 acres of land, more or less; SAVE AND EXCEPT 20.0 foot strip lying adjacent to and South of the center line of Oakdale Road running 434.75 feet, said strip being off the North line of this property and being used as public road right of way. 6.20

This deed delivered and accepted subject to any and all valid restrictions and/or easements, if any, affecting said property as the same appear of record, but only to the extent that they are still in effect; and

Subject to Airport Zoning Regulations for the Greater Fort Worth International Airport, recorded in Volume 5170, Pages 82, 87 and 89, Deed Records of Dallas County, Texas.

Warranty Deed dated December 28, 1962, Recorded June 29, 1963, Vol.5926, p.383, Deed Records Dallas County, Texas.

CONTRACT NO. 1720 EXHIBIT NO. 47

, CATHERINE STEVENSON, a widow, and ADDIE VIRGINIA BALLINGER and husband, JOE PAXTON BALLINGER; and HOLMES PRESTON STEVENSON, a married man, but not joined herein by my wife, as the hereinafter described real property constitutes no part of my homestead,

BEING part of the John C. Reed 1680 acre Survey, Abst. #1183, and being a part of a 60 acre tract of land conveyed to W. Q. Seale by Mrs. Ada Clayton, et vir, on September 28, 1928, by Deed recorded in Vol. 1342, Page 555, Deed Records of Dallas County, Texas, and being also part of a 33 acre tract conveyed to Hattie Hasie by W. Q. Seale and wife by Deed dated February 23, 1927, and recorded in Deed Records of Dallas County, Texas, and being the South 5 acres of a 10 acre tract of land conveyed by Hattie Hasie to Roy J. Graves and wife Onez by Deed dated May 17, 1933, and recorded in Vol. 1868, Page 213 Deed Records of Dallas County, Texas; and being more particularly described by metes and bounds as follows, to-wit: BEGINNING at a point in the east line of said 10 acres, said point of beginning being 544.5 feet South of the Northeast corner of said 10 acre tract; THENCE South along the East line of said 10 acre tract, 544.5 feet to the Southeast corner of said 10 acre tract, being the South line of said 33 acre tract; THENCE West along the South line of said 33 acre tract and along the South line of said 10 acre tract, 400 feet to the Southwest corner of said 10 acre tract; THENCE North along the West line of said 10 acre tract, 544.5 feet to a point for corner; THENCE East parallel with South line of said 10 acre tract, 400 feet to the place of beginning.

This Deed is executed subject to the following: 5 ac

Any part of said land used for road purposes; and

Easement by Roy J. Graves and wife, Onez Graves, and H. P. Stevenson and wife, Amorette Stevenson, to each other, dated December 19, 1930, filed February 6, 1939, and recorded in Vol. 2112, Page 545, Deed Records of Dallas County, Texas; Warranty Deed dated August 4, 1955, Recorded August 11, 1955, Volume 4318, page 367, Deed Records Dallas County, Texas.

VOL 71002 1776

CONTRACT NO. 1401 (R.T. Wright and wife May Wright) EXHIBIT NO. 48:

Being 20.65 acres of land out of the J. B. Richards Survey, Abstract number 1192 and;

BEING all of the 26.35 acres tract of land conveyed by E. M. Boyd, widower, to R. T. Wright, by Deed dated November 21, 1918, filed December 30, 1918, and Recorded in Vol. 759 Page 120, of the Deed Records of Dallas County, Texas;

SAVE AND EXCEPT THE TWO FOLLOWING TRACTS CONVEYED BY R. T. WRIGHT, VIZ:

(1) 3.7 acre more or less to R. A. Winston, Jr., May 4, 1939, filed May 6, 1939, Recorded in Vol. 2139 Page 113; and

(2) 2. acre more or less to E. V. Mitchell, September 30, 1947 filed October 1, 1947, in Deed Records of Dallas County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at a point 385 feet (North 60 degrees East) from the center of H & T C Rail Road track along North line of Lakewood Road which is South West corner of R. M. Gano 170 acre tract as recorded in Vol. W, Page 689 and the North West corner of McDaniels 30 acre tract Recorded in Vol. 134 Page 286 Deed Records, Dallas County, Texas; and 20 feet South 30 minutes East from said corner which is South Right of Way line of Lakewood Road;

THENCE South 30 degrees East 2400 feet more or less for corner;

THENCE in a Southwesterly direction along the North West line of a tract conveyed by R. A. Winston to Ray Shelton, January 3, 1946, this line being approximately parallel with the South East line of Lakewood Road, measure 429 feet for corner;

THENCE measure North 30 degrees West 1029 feet more or less to the Right of Way line of H & T C Rail Road and continue along said Right of Way line North 20 degrees West 918.5 feet more or less for corner;

THENCE North East approximately parallel with the South East line of Lakewood Road, 186 feet to the South East corner of a tract Deeded to E. V. Mitchell, on October 1, 1947;

THENCE measure in a North Westerly direction along the North East line of said Mitchell tract 496.5 feet to South Right of Way line of Lakewood Road to a point 165 feet from the East Right of Way line of H & T C Rail Road for corner;

THENCE measure North east along South Right of Way line of Lakewood Road North 60 degrees East 270 feet to point of beginning. Warranty Deed dated June 23, 1950, Recorded July 5, 1950, Volume 3333, page 167, Deed Records Dallas Co.

Less .63 acres deeded to J.J. Lemmon. leaving a net of 20.02 acres conveyed herein.

20.02 ac

CONTRACT NO. 1403 (J.J.Lemmon, Jr. and wife Corrine Lemmon ) EXHIBIT NO. 49

Being TEN ACRES more or less out of the J. B. RICHARDS SURVEY, ABSTRACT #1192, and being a part of the 170 acre tract described as First Tract in a Deed from J. C. Kelley to J. J. Lemmon, Jr., dated September 5, 1944, filed September 11, 1944, recorded in Vol. 2507, page 72, Deed Records, Dallas County, Texas, and being more particularly described as follows:

BEGINNING at a point on the Southwest line of said 170 acre tract at the West corner of the 11 acre tract described in a deed from the Trinity Rod and Gun Club to Geo. M. Stuart, Jr., dated September 15, 1936, recorded in Vol. 1972, page 217, Deed Records, Dallas County, Texas, said point of beginning also being the East corner of the 20.65 acre tract described in a deed from R. T. Wright et.ux. to Gifford-Hill Company dated June 23, 1950, and filed for record June 27, 1950;

THENCE North 30 deg. West along the Southwest line of said 170 acre tract and the Northeast line of said 20.65 acre tract, 1200 feet to a point for corner;

THENCE North 60 deg. 43 min. East 363 feet to an iron pipe for corner;

THENCE South 30 deg. East 1200 feet to a point in the Northwest line of the above 11 acre tract deeded to George M. Stuart, Jr., on September 15, 1936;

THENCE South 60 deg. 43 min. West along said Northwest line 363 feet to the place of beginning;

Warranty Deed dated July 13, 1950, Recorded July 31, 1950, Volume 3344, page 220, Deed Records Dallas County, Texas.

COUNTY CLERK'S MEMO:
PORTIONS OF THIS
DOCUMENT NOT
REPRODUCIBLE
WHEN RECORDED

PAGE
71002 1777

EXHIBIT NO. 50

CONTRACT NO. 1585 (J.J.Lemmon,Jr. and wife, Corinne Lemmon)

Tract or parcel of land situated in Dallas County, Texas and being a part of the J. B. Richards Survey Abstract No. 1192, and being more particularly described as follows:

Beginning at the most Northeasterly corner of a certain 3.786 acre tract conveyed by J. J. Lemmon, Jr., to Gifford-Hill & Company, Inc., June 24, 1953;
THENCE- S 42 deg. 21 min. East 68.66 feet to a point for Corner;
THENCE- S. 45 deg. 15 min. West 232.50 feet to a point for Corner;
THENCE- S. 57 deg. 26 Min. East 60.74 feet to a point for Corner;
THENCE- N. 60 deg. 43 Min. East 70.00 feet to a point for Corner;
THENCE- S. 30 deg. 00 min. East 83.30 feet to a point for Corner;
THENCE- N 81 deg. 56 min. East 423.80 feet to a point for Corner;
THENCE- N 41 Deg. 00 Min. East 100.00 feet to a point for Corner, said point being the most Northerly corner of a 14.434 acre tract conveyed by J. J. Lemmon, Jr., to Gifford-Hill & Company, Inc., June 24, 1953;
THENCE- N 69 deg. 50 min. West 525 feet, more or less to the point of beginning and containing 2.23 acres of land, more or less.
Warranty Deed dated April 12, 1955, Recorded May 9, 1955, Volume 4250, page 95, Deed Records Dallas County, Texas.

CONTRACT NO. 1582 (J.J.Lemmon,Jr. et ux, Corinne Lemmon) EXHIBIT NO. 51

Being part of the J. B. Richards Survey, Abstract # 1192 and being particularly described in four tracts of land as follows:

FIRST TRACT: BEGINNING at a point in the Northwest line on an 11 acre tract described in a deed from Trinity Rod and Gun Club to Geo. M. Stuart, Jr., dated September 15, 1936 recorded in Vol. 1972, Page 217, Deed Records, Dallas County, Texas, said point being 363 ft, North 60 degrees, 43 minutes East from the West corner of said tract; THENCE North 60 degrees, East 347.5 ft; THENCE North 30 degrees, West 280 ft.; THENCE North 60 degrees East 300 ft.; THENCE South 30 degrees East 140 ft; THENCE North 60 degrees East 291.7 ft.; THENCE North 57 degrees 48 minutes West 959.02 ft.; THENCE South 41 degrees West 100 ft.; THENCE South 81 degrees 56 minutes West 423.8 ft.; THENCE South 30 degrees East 1116.7 ft. to the place of beginning and containing 14.434 acres of land.

SECOND TRACT: BEING part of a 170 acre tract described as First Tract in a deed from J. C. Kelley to J. J. Lemmon Jr., dated September 6, 1944 filed September 11, 1944, recorded in Vol. 2507, Page 72, Deed Records Dallas County, Texas, and being particularly described as follows; BEGINNING at a point in the Southwest line of said 170 acre tract 1200 ft. North 30 degrees West from the West corner of the West corner of the 11 acre tract described in deed from the Trinity Rod and Gun Club to Geo. M. Stuart, Jr. recorded in Vol. 1972, Page 217, Deed Records, Dallas County, Texas; THENCE North 30 degrees West along the Southwest line of said 170 acre tract 853.4 ft. to an iron pipe; THENCE North 60 degrees 43 minutes East 86 ft.; THENCE South 40 degrees 51 minutes East 737 ft. THENCE North 48 degrees 09 minutes East 255 ft.; THENCE South 42 degrees 21 minutes East 68.66 ft.; THENCE South 45 degrees 15 minutes West 232.5 ft.; THENCE South 57 degrees 26 minutes East 60.74 ft.; THENCE South 60 degrees 43 minutes West 293 ft.; to the place of beginning containing 3.786 acres of land more or less; less .30 acres sold to J.J.Lemmon. 3.486 ac.

THIRD TRACT: Being 0.747 acres of land out of the J. B. Richards Survey Abstract # 1192, described as follows: BEGINNING at a point which is North 30 degrees West 1220 ft., and North 60 degrees East 2326 ft. from the intersection of the Northwest line of Stuart Rd. & the Northeast line of the H. & T. C. Ry., right of way; THENCE North 30 degrees West 220 ft.; THENCE South 83 degrees 32 minutes East 368.61 ft.; THENCE South 60 degrees West 295.8 ft. to the place of beginning.

FOURTH TRACT: BEGINNING at a point which is north 30 degrees, West 925.48 ft. and north 60 degrees east 2,326.0 ft. from the intersection of the

71002 1778

northwest line of Stuart Road and the northeast line of the H. & T. C. Railroad right of way line; THENCE North 30 degrees west 294.52 ft.; THENCE North 60 degrees east 295.8 ft.; THENCE South 30 degrees east 112.7 ft.; THENCE South 84 degrees 20 minutes east 881.4 ft,; THENCE South 30 degrees East 588.2 ft. to a point in the northwest line of Simpson Stuart Road; THENCE South 60 degrees west, along the northwest line of Simpson Stuart Road, 727.8 ft.; THENCE North 30 degrees, West 903.48 ft.; THENCE South 60 degrees West 295.8 ft. to the place of beginning and containing 15.971 acres of land. Warranty Deed dated 6-24-53, Recorded July 8, 1953, Volume 3875, page 48, Deed Records Dallas County, Texas.

34.638 ac

71002 1779

CONTRACT NO. 2705 (T.J.Lemmon,Jr., and wife Marguerite Corinne Lemmon) EXHIBIT NO. 33:

Being 225.379 acres of land, more or less, out of the Geo. L. Hoss Survey, Abstract No. 641 and the J. R. Richards Survey, Abstract No. 1192, and being all or parts of lands conveyed to J. J. Lemmon, Jr., by deed recorded in Volume 2507, Page 72, Deed Records of Dallas County, Texas, and in deeds to J. J. Lemmon, Jr., filed on the following dates: 4 acres, filed May 6, 1952; 2 acres, filed March 29, 1949; 1.5 acres, filed March 29, 1949; 0.30 acres filed April 13, 1955; 0.20 acres, filed October 23, 1953; and 0.43 acres, filed April 13, 1955, in the Deed Records of Dallas County, Texas; and being more particularly described as follows:

Beginning at the most southerly corner of a 5.652 acres of land described in deed to Dallas Power and Light Company filed for record December 10, 1962 in the Deed Records of Dallas County, Texas;

Thence along the southeasterly line of the said 5.652 acre tract with the following courses and distances:

1st. North 35 deg. 11' east 397.90 feet;
2nd. North 59 deg. 57' east 2023.00 feet, more or less, to the west bank of the Trinity River;

Thence in a generally southerly direction along the west bank of the Trinity River the following courses and distances:

1st. South 1 deg. 01' west 375.40 feet;
2nd. South 5 deg. 36' west 666.00 feet;
3rd. South 16 deg. 54' east 713.00 feet;
4th. South 78 deg. 45' east 718.00 feet;
5th. South 69 deg. 54' east 1117.00 feet;
6th. North 71 deg. 07' east 465.00 feet;
7th. North 88 deg. 06' east 342.00 feet;
8th. South 50 deg. 09' east 1070.00 feet;
9th. South 80 deg. 21' east 748.20 feet to a point at or near the east corner of the above mentioned four-acre tract;

Thence south 60 deg. west 611.00 feet, a bois d'arc post, the south corner of said four-acre tract;

Thence north 28 deg. 30' west 280.00 feet, more or less, the east corner of the above mentioned two-acre tract;

Thence south 60 deg. west 395.00 feet, the south corner of the said two-acre tract;

Thence south 28 deg. 30' east, 721.00 feet, more or less, the northeast corner of an 8.66 acre tract of land conveyed to Fritz Wullchleger by deed filed August 7, 1944;

Thence along the north lines of the said 8.66 acre tract with the following courses and distances:

1st. South 86 deg. 05' west 357.80 feet;
2nd. South 3 deg. 38' east 206.10 feet;
3rd. South 85 deg. 57' west 314.30 feet, the northwest corner of said tract;

Thence south 30 deg. 39' west 81.50 feet to the northeast corner of a 14.90 acre tract of land conveyed to Gifford-Hill & Co., Inc., by deed dated June 25, 1953;

Thence north 55 deg. west along the north line of said 14.90 acre tract, 906.00 feet to its northwest corner;

Thence north 30 deg. west 107.80 feet, more or less, to the east corner of the above mentioned 1.5 acre tract, a fence corner post;

Thence north 83 deg. 32' west along a fence line, 368.61 feet to the west corner of the said above mentioned 1.5 acre tract;

Thence [illegible] 30 deg. [illegible] 114.00 feet, more or less, to the east corner of [illegible] acre tract of [illegible] as described in [illegible] to George [illegible] Stuart, Jr., recorded in Vol. [illegible], Page [illegible], Deed Records of Dallas County, Texas, to which reference is here made for descriptive purposes only;

Thence north [illegible] deg. west [illegible] feet to the north corner of the said [illegible]-acre tract;

Thence north [illegible] deg. [illegible] west, following a fence line, at 158.30 feet, more or less, passing the east corner of a 14.434 acre tract of land conveyed to Gifford-Hill & Co., Inc., by deed filed June 25, 1953 in the Deed Records of Dallas County, Texas, in all 1117.30 feet to a corner in fence and in said tract line, said corner being also the east corner of a 2.23 acre tract of land conveyed to Gifford-Hill & Co., Inc., by deed filed April 13, 1955 in the Deed Records of Dallas County, Texas;

Thence north 69 deg. 50' west 525.00 feet an iron rod by fence post at the common corner of the said 2.23 acre tract and a northeast corner of a 3.786 acre tract of land conveyed to Gifford-Hill & Co., Inc., by deed filed June 25, 1953 in the Deed Records of Dallas County, Texas;

Thence south 49 deg. 09' west along a fence line on the southerly north line of the said 3.786 acre tract, 255.00 feet, an ELL corner of said tract;

Thence north 40 deg. 51' west 601.00 feet to the east corner of a 0.30 acre tract conveyed to J. J. Lemmon, Jr., as described in deed filed April 13, 1955;

Thence south 60 deg. west 114.00 feet, the south corner of said 0.30 acre tract;

Thence north 30 deg. west, 287.50 feet to the east corner of the first mentioned 0.43 acre J. J. Lemmon, Jr., tract;

Thence south 60 deg. 29' west, 133.00 feet to the recognized south corner of the said 0.43 acre tract, a fence corner;

Thence north 28 deg. 16' west, 229.50 feet, a point in the common line of the said Hass and Richards Surveys;

Thence north 60 deg. 29' east along said survey line 12.00 feet;

Thence north 30 deg. 46' west along an old fence line 1133.33 feet to the place of beginning and containing 225.379 acres of land.

Warranty Deed dated October 25, 1966, Recorded October 28, 1966, Vol. 937, page 1830, Deed Records Dallas County, Texas.

COUNTY CLERK'S MEMO:
PORTIONS OF THIS
DOCUMENT NOT
REPRODUCIBLE
WHEN RECORDED

71002 1781

CONTRACT NO. 1626 (R. H. [illegible] and wife Florine Lindop) EXHIBIT [illegible]

Being 3.91 acres out of the J. B. Richards Survey, Abst. [illegible] and being the Northeasterly 3.91 acres of a 20 acre tract conveyed by W. W. Evans and wife, to J. D. Brent by Deed dated October 12, 1927, recorded in Vol. 1460, Page 183, Deed Records of Dallas County, Texas, and more particularly described by metes and bounds as follows, to-wit: Starting at the Southwest corner of an 8.5 acre tract conveyed to Wylie Massey by Deed recorded in Deed Records of Dallas County, Texas, which starting point also being the Southeast corner of said 20 acres and being in the center line of Stuart Road;
THENCE measuring North 30 deg. West 241.89 feet to an iron stake which is the place of beginning;
THENCE South 60 deg. West and parallel with the center line of Stuart Road, and at all times 241.89 feet Northwesterly of said center line, 219 feet to point for corner;
THENCE North 30 deg. 09 min. West along the Westerly line of R. H. Lindop's tract 782.11 feet, more or less, to point for corner; this point being in the Southeast line of a 9 acre tract conveyed by Wm. Orr to J. W. Adams by Deed duly recorded in Deed Records of Dallas County, Texas;
THENCE North 59 deg. 05 min. East along the Southeast line of said Adams tract 219 ft. to iron pipe for corner; this point being the most Northerly corner of the R. H. Lindop tract;
THENCE South 30 deg. East and along the Westerly line of the said Massey 8.5 acre tract, 789.11 feet, more or less, to the place of beginning.
Warranty Deed dated October 8, 1954, Recorded October 20, 1954, Volume 4126, page 282, Deed Records Dallas County, Texas.

CONTRACT NO. 1586 (Wylie Massey, and wife, Blanche Massey) EXHIBIT NO. 55

A tract of land out of the J. B. Richards Survey, Abstract 1192, Dallas County, Texas, and being a part of the tract of land deeded to Wylie Massey and wife, Blanche Massey by deed dated March 21, 1946, and being more particularly described as follows:
BEGINNING at a point which is North 30 deg. West 925.48 feet and North 60 degrees East 2,326.0 feet from the intersection of the Northwest line of Stuart Road and the Northeast line of the H. & T. C. Railroad right-of-way line;
THENCE North 60 degrees East 295.8 feet;
THENCE South 30 degrees East 682.59 feet;
THENCE South 60 degrees West 295.8 feet;
THENCE North 30 degrees West 682.59 feet to the place of beginning and containing 4.635 acres of land.
Warranty Deed dated July 6, 1953, Recorded July 27, 1953, Volume 3883, page 7, Deed Records Dallas County, Texas.

71002 1782

CONTRACT NO. 2793 (C.Lanier Chambers) Exhibit No. 57

TRACT I: Situated in Dallas County, Texas, and being out of the John C. Read Survey, Abstract No. 1183, and being part of that certain 23.54 acre tract of land conveyed by M. Grace Pope et al to Robert Stewart by Deed dated August 6, 1946, filed August 23, 1946, and recorded in the Deed Records, Dallas County, Texas, and being more fully described by metes and bounds as follows:
BEGINNING at a point in the South line of Rock Island Road, 1672.7 feet West of the intersection of said South line with the West line of Belt Line Road;
THENCE in a Southerly direction 390.54 feet to point for corner, said point being 1676 feet West of the Southeast corner of the above mentioned 23.54 acre tract;
THENCE in a Westerly direction along the South line of said 23.54 acre tract, 100 feet to point for corner;
THENCE in a Northerly direction at all times parallel with and 100 feet from the East line of this lot, 389.46 feet to point for corner in the South line of Rock Island Road;
THENCE in an Easterly direction along the South line of Rock Island Road, 100 feet to the place of Beginning; said property being otherwise known as LOT TWENTY TWO (22) of BEAR CREEK ADDITION, according to the Unrecorded Map thereof.

TRACT II: Situated in Dallas County, Texas, and being out of the John C. Read Survey, Abstract No. 1183, and being part of that certain 23.54 acre tract of land conveyed by M. Grace Pope et al to Robert Stewart by Deed dated August 6, 1946, filed August 23, 1946, and recorded in the Deed Records, Dallas County, Texas, and being more fully described by metes and bounds as follows:
BEGINNING at a point in the South line of Rock Island Road, 1572.7 feet West of the intersection of said South line with the West line of Belt Line Road;
THENCE in a Southerly direction 391.62 feet to point for corner, said point being 1576 feet West of the Southeast corner of the above mentioned 23.54 acre tract;
THENCE in a Westerly direction along the South line of said 23.54 acre tract, 100 feet to point for corner;
THENCE in a Northerly direction at all times parallel with and 100 feet from the East line of this lot, 390.54 feet to point for corner in the South line of Rock Island Road;
THENCE in an Easterly direction along the South line of Rock Island Road-100 feet to the Place of Beginning; said property being otherwise known as LOT TWENTY THREE (23) of BEAR CREEK ADDITION, according to the Unrecorded Map thereof. Warranty Deed dated January 14, 1968, Recorded June 16, 1970, Volume 70116, page 1830.

70116 1831

CONTRACT NO. 2794 (John T. Stuart) EXHIBIT NO. 58

Property situated in Dallas County, Texas, described as follows, to-wit:
Being a tract of land out of the JOHN C. READ SURVEY ABSTRACT NO. 1183 and being a part of a 30 acre tract conveyed by Georgia Jackson and husband to Jack Jones and wife by Deed recorded in Volume 2164, Page 480, Deed Records of Dallas County, Texas and being more particularly described by metes and bounds as follows, to-wit:
BEGINNING at a point that is South 88 degrees 13 minutes West 313 feet and South 00 degrees 50 minutes East 707.07 feet from the North-east corner of said 30 acre tract;
THENCE South 88 degrees 10 minutes West 572.78 feet;
THENCE South 07 degrees 29 minutes East 98.41 feet;
THENCE North 88 degrees 09 minutes East 561.23 feet;
THENCE North 00 degrees 50 minutes West 97.57 feet to the place of beginning and containing 1.28 acres of land, more or less, and being described as Eighth Tract in Partition Deed by Lettie Jones, a widow, et al, dated November 10, 1955, recorded in Volume 4491, Page 157, Deed Records of Dallas County, Texas.

This Deed is made subject to Airport Zoning, Greater Fort Worth International Airport dated July 17, 1959, filed August 17, 1959 and recorded in Volume 5170, Pages 82, 87 and 89, Deed Records of Dallas County, Texas. Warranty Deed dated March 21, 1968, Recorded June 11, 1970, Volume 70113, page 0467, Deed Records Dallas County, Texas.

71002 1783

Rock Island

Beginning at the most southerly c[illegible]r of the Scott Survey,
Thence, north 30 deg. 17 min. 30 sec. west along the southwest line of the Scott Survey 2812.0 ft, to the most westerly corner of the Scott Survey;
Thence along the northwest line of the Scott Survey north 59 deg. 48 min. east 3192.6 ft. and north 60 deg. 0 min east 1388.0 ft;
Thence, north 30 deg. 02 min. west 1136.7 ft;
Thence south 60 deg. 15 min. west 2348.3 ft;
Thence, north 30 deg. 39 min. west 909.7 ft;
Thence south 59 deg. 00 min. west 318.0 ft;
Thence, north 30 deg. 34 min. west 1994.5 ft. to a point in the northwest line of the Shelton Survey;
Thence along the north line of the Shelton Survey north 59 deg. 37 min. East 3050 ft. to point for corner;
Thence south 30 deg. 34 min. east 1994.5 ft. to point for corner;
Thence South 60 deg. 2 min. west 575 ft;
Thence south 30 deg. 2 min-E. 2046.4 ft;
Thence south 60 deg. west 352.4 ft. along center line of Fulgrum Road;
Thence south 30 deg. 02 min. East 2812 ft. to south line of the George W. Scott Survey, Abstract 1273;
Thence south 60 deg. 01 min West 4180 feet more/less to place of beginning and containing 139.50 acres more/less in the W.H. Shelton Survey Abstract 1292, 49.04 acres J.G.Beatty #101, and 269.83 acres out of the George W. Scott Survey A-1273, a total of 458.37 acres, more or less, and being the same acreage deeded by H. K. Crutcher to Gifford-Hill & Co., Inc. by Deed dated June 21, 1954, Recorded July 2, 1954, Volume 4063, page 220, Deed Records Dallas County, Texas.

CONTRACT NO. 2435 (A. P. Roffino Investments) Exhibit No. 60

BEING a part of Tract D, Dalworth Industrial District 7.89595 acre tract deeded to Gifford-Hill & Co., Inc. by A.P. Roffino by Deed dated April 13, 1964 and filed for record Volume 306, page 0221-0222 Deed Records Dallas County, Texas, and described herein as Tracts 1 and 2.

TRACT #1 -

Beginning at SE corner of above tract a point on east side of Carmack St. and the North Right of way line of T & P RR Right-of-way;

THENCE with curve to left along East R/W line of Carmack St. 206.10 feet;

THENCE continue along East R/W line of Carmack St. S 13 deg. 54 min. East 97.76 feet to a point for corner;

THENCE continue with curve to right along east R/W of Carmack St. 25 ft to South side of R/W of Dalworth Drive extended.

THENCE East along South side of Dalworth Drive extended 465 ft. to C/L of 15' wide sewer easement;

THENCE along C/L of said Sewer Easement South westerly 230' to point for corner;

THENCE, Westerly along C/L of said sewer easement 233' to N R/W line of T&P RR.;

THENCE Westerly along N R/W line of T& P RR 140' to place of beginning and containing 2.921 acres of land, more or less.

TRACT #2:

Beginning at the NW corner of said 7.89595 acre tract;

THENCE South 89 deg. 58 min West 861.20' to point for corner;

THENCE Southwest along C/L of sewer easement 165' to North R/W line of Dalworth Drive extended,

THENCE West along N R/W line of Dalworth drive extended 490' to East R/W line of Carmack Street;

THENCE with curve to right along East R/W line of Carmack Street 135' to end of curve to left a point for corner;

THENCE N. 0 deg. 26 min. West 14.01 feet to place of Beginning and containing 1.840 acres of land.

71002 1784

CONTRACT NO. 2745 (Pearl Gravley) Exhibit No. 1

all that certain lot, tract or parcel of land, lying and being situated in Dallas County, Texas, to-wit:

BEING a tract of 157.427 Acres of land in the M. P. Green Survey, Abst. No. 518 Dallas County, Texas; and being part of a tract as described in deed from Frances S. Perry to Pearl Gravley, dated January 28th, 1960, filed February 2nd, 1960 in the Deed Records of Dallas County, Texas: and said 157.427 Acre tract being more particularly described as follows:

BEGINNING at the point of intersection of the West line of said Green Survey with the North line of Coppell - Carrollton Road, said beginning point being 25.0 feet North of the Southwest corner of said Green Survey, an iron rod at a fence corner post at the beginning point;

THENCE North 0 deg. 01 min. 07 sec. West, along the West line of said Green Survey (a fence line), 2128.15 feet to an iron at a fence corner post at the Northwest corner of said Gravley tract;

THENCE North 89 deg. 55 min. 14 sec. East, along a fence on the North line of said Gravley tract, 2684.31 feet to the Northwest corner of the Jadeo G. Lambert tract as described in deed dated August 29th, 1960, filed August 31st, 1960, an iron rod for corner;

THENCE South 0 deg. 13 min. 30 sec. East 120.0 feet to an iron rod at the Southwest corner of said Lambert tract;

THENCE North 89 deg. 46 min. 30 sec. East, along the South line of said Lambert tract, 241.5 feet to an iron rod at its intersection with the Southwest line of U. S. Highway No. 77 ( I. H. 35-E);

THENCE in a Southeasterly direction, along the Southwest line of Highway No. 77, as follows: 1st. Southeasterly, around a curve to the left that has a central angle of 4 deg. 46 min. 48 sec., a Radius of 11,609.16 feet and a Tangent of 484.54 feet and the Radius at this point has a bearing of North 63 deg. 25 min. 18 sec. East, a distance of 968.53 feet; 2nd South 31 deg. 21 min. 30 sec. West 576.90 feet to its intersection with the Northwest line of City of Carrollton Drainage Channel as described in Deed dated October 20th, 1951, filed February 7th, 1952;

THENCE South 58 deg. 38 min. 30 sec. West, along the Northwest line of said Channel, 1309.29 feet to a point in said North line of Coppell - Carrollton Road;

THENCE North 89 deg. 49 min. West, along the North line of said Road, 2576.70 feet to the point of beginning, and containing 157.427 Acres of Land;

The conveyance evidenced by this deed is made subject to any and all easements, restrictions, covenants, conditions, and reservations of record, if any, applicable to the herein conveyed property or any part thereof.

Warranty Deed dated July 26, 1967, recorded July 31, 1967, Vol. 67153, Page 2437, Deed Records Dallas County, Texas.

SAVE & EXCEPT 50 acres sold to Crow & Associates May 5, 1970. Leaving a net of ~~100.427~~ 107.427 acres of land herein conveyed.

~~100.427~~ ac 107.427

71002 1785

Crow

[illegible] most [illegible]erly corner of the [illegible] Survey Abst. [illegible], [illegible] part of Dallas County, [illegible]

[illegible]

direction

Thence [illegible] the center of [illegible] Slough as follows:

1st. South [illegible] 07' [illegible] 291.6 ft
2nd. South [illegible] 51' East 197.7 ft
3rd. South 34° 02' East 302.3 ft
4th. South [illegible]° 32' East 253.5 ft
5th. South 5[illegible]° 57' East 19[illegible].0 ft
6th. South 76° 45' East 451.3 ft
7th. South [illegible]° 34' East 469.4 ft
8th. South [illegible]° 10' East 311.9 ft
9th. South [illegible]° 43' East 322.7 ft
10th. North 84° 23' East 622.6 ft

COUNTY CLERK'S MEMO: PORTIONS OF THIS DOCUMENT NOT REPRODUCIBLE WHEN RECORDED

Thence South 45° 42' West, and crossing the North line of Bilindsay Road at 3286.2 ft, and continuing South 45° 42' West in all on this line, 6819.9 ft to a point on the Northeast bank of the Trinity River

Thence in a Westerly direction, up said bank of the Trinity River as follows:

1st. North 3[illegible]° 39' West 141.4 ft
2nd. North 34° 45' West 180.3 ft
3rd. North 52° 10' West 192.0 ft
4th. North 52° 36' West 152.5 ft
5th. North 76° 44' West 196.5 ft
6th. North 75° 51' West 145.0 ft
7th. South 87° 44' West 175.5 ft
8th. South 89° 19' West 225.0 ft
9th. South 89° 06' West 200.0 ft
10th. South 67° 06' West 269.5 ft
11th. South 43° 41' West 184.5 ft
12th. South 45° 04' West 105.5 ft
13th. South 38° 59' West 355.0 ft
14th. South 33° 05' West 230.0 ft
15th. South 4[illegible]° 30' West 229.0 ft
16th. South 45° 38' West 210.0 ft
17th. South 69° 35' West 128.0 ft
18th. North 62° 15' West 194.0 ft
19th. North 66° 54' West 142.0 ft
20th. North 65° 12' West 143.0 ft
21st. North [illegible]° 27' West 147.0 ft
22nd. North 58° 27' West 150.5 ft
23rd. North 79° 46' West 1[illegible]7.5 ft
24th. North [illegible]° 18' West 270.0 ft
25th. North 65° 20' West 142.0 ft
26th. North 13° 24' West 331.0 ft
27th. North [illegible]° 46' West 406.0 ft
28th. North 41° 59' West 309.0 ft
29th. North 5[illegible]° 47' West 129.0 ft
30th. North 6[illegible]° 36' West 114.5 ft
31st. South 7[illegible]° 41' West 239.5 ft
32nd. South 70° 26' West 176.[illegible] ft
33rd. South [illegible]° 56' West 17[illegible].0 ft
34th. South 7° 10' West 207.0 ft
35th. South 2[illegible]° 47' East 12[illegible].5 ft
36th. South [illegible]° 31' East 13[illegible].0 ft
37th. South 1[illegible]° 41' East 2[illegible].0 ft
38th. South [illegible]° 06' East 14[illegible] ft
39th. South 1[illegible]° [illegible]' West 63.[illegible] ft
40th. South [illegible]° 00' West 16[illegible].67 ft
41st. South 40° [illegible]' West 170.[illegible]3 ft
42nd. [illegible] 30 ft
43rd. [illegible] 100.[illegible] ft
44th. North [illegible] ft
45th. North [illegible] ft
46th. North [illegible] ft

VOL. PAGE
71002 1786

[illegible]

54th. North 8° 00' [illegible] 148.[illegible] ft

THENCE in a Northerly direction, along the East line of an old slough (partially obliterated) as follows:
1st. North [illegible] 16' East 570.1 ft (a point in the center of [illegible] levee)

Thence North 80° 46' East 141' to point for corner;
Thence North 80° 3' East 317.7' point for corner;
Thence South 86° 38' East 156' ft.
Thence South 69° 49' West 171.4 ft.
Thence South 70° 25' East 356.3 ft.
Thence South 65° 37' East 1195.9 ft.
Thence South 76° 22' East 172.4 ft.
Thence North 79° 17' East 396.5 ft.
Thence North 77° 57' East 1095.1 ft.
Thence North 87° 20' East 188.1 ft.
Thence South 68° 57' East 222.6 ft.
Thence South 50° 22' East 220.5 ft.
Thence South 36° 7' East 90 ft. to point for corner;
Thence North 44° 30' West 2385 ft. to point for corner; in the South Right-of-Way of Bilindsay Road
Thence North 78° 51' West 1382 ft. to a point for corner
Thence North 9° 40' East 2315 ft. to the place of beginning and containing 387.89 acres of land, more or less.
Recorded in Deed Records Dallas County, Texas, March 3, 1964, Volume 263, page 0433.

COUNTY CLERK'S MEMO: PORTIONS OF THIS DOCUMENT NOT REPRODUCIBLE WHEN RECORDED

VOL. PAGE
71002 1787

[illegible]

[illegible] ... COUNTY, TEXAS, AND PARTICULARLY [illegible] FOLLOWS:

BEGINNING [illegible] CORNER OF THE SAID 191-ACRE TRACT, A FENCE CORNER, [illegible] THE [illegible] CORNER OF A TRACT OF LAND OWNED BY IRENE BROTHERS PETERS;

THENCE [illegible]ERLY ALONG THE FENCE LINE BETWEEN THIS LAND AND THE SAID IRENE BROTHERS PETERS TRACT 1089 FEET, MORE OR LESS, TO A FENCE CORNER, THE SOUTH-EAST CORNER OF THE SAID 191-ACRE TRACT;

THENCE WESTERLY ALONG A FENCE, THE COMMON BOUNDARY LINE BETWEEN ANOTHER TRACT OF LAND OWNED BY IRENE BROTHERS PETERS AND THIS LAND, 3500 FEET TO A POINT FOR THE SOUTHWEST CORNER OF THIS TRACT;

THENCE NORTHERLY AND PARALLEL WITH THE EAST LINE OF THIS TRACT, 1089 FEET, MORE OR LESS, TO THE NORTH LINE OF THE SAID 191-ACRE TRACT AND THE SOUTHEAST LINE OF THE HOWARD K. CRUTCHER TRACT, A FENCE;

THENCE EASTERLY ALONG A FENCE WHICH IS THE COMMON BOUNDARY LINE BETWEEN THIS TRACT AND THE HOWARD K. CRUTCHER TRACT, BEING THE NORTHWEST LINE OF THE SAID ROBERT SLOAN SURVEY, 3500 FEET, TO THE PLACE OF BEGINNING; CONTAINING EIGHTY-SEVEN AND ONE-HALF (87.5) ACRES OF LAND, MORE OR LESS, BEING 87.5 ACRES OF LAND OFF THE EAST END OF THE SAID 191-ACRE TRACT.

Recorded April 16, 1956, Volume 4474, page 577, Deed Records, Dallas County, Texas.

COUNTY CLERK'S MEMO: PORTIONS OF THIS DOCUMENT NOT REPRODUCIBLE WHEN RECORDED

VOL. PAGE
71002 1788

[illegible] #1864 - Boyd Estate - Kaufman & Dallas Counties, Texas

Being a tract of land containing 71 acres of land, more or less out of the J. C. Long Survey, Abst. #758, Dallas County, and Abst. #291, Kaufman County, Texas, and more particularly described as follows:

BEGINNING at the NE corner of a 108 acre tract of the Boyd Estate which is the SE corner of a tract of land owned by Bryan Hanes on the W right of way line of a County Road;

THENCE W 1944.4 feet, more or less, to the NW corner, which is the SW corner of said Hanes tract;

THENCE S. along W. line of said tract 1600 feet to a point for corner;

THENCE E. and parallel to N. line of said tract 1944.4 feet, more or less, to a point for corner in W. right of way line of said County Road;

Thence N. along W. right of way line of said County Road 1600 feet to the place of beginning and containing 71 acres of land, more or less;

SAVE AND EXCEPT the grantors except from this conveyance and reserve and retain unto themselves, their heirs, and assigns, an undivided one-half (1/2) of all oil and gas in, on and under and that may be produced from the above described land, and the right of ingress and egress for the purpose of developing and extracting said oil and gas and the right to use such part of the surface as may be necessary and proper in the development and extraction of such oil and gas; it being distinctly understood and agreed and herein stipulated that the interest reserved is without right of grantors, their heirs, administrators, executors and assigns, to participate or join in the execution of future oil and gas leases on said land, and the said grantors herein hereby constitute and appoint the said grantee herein, its successors and assigns, as grantors irrevocable attorney in fact for the purpose of executing, acknowledging and delivering any lease or leases for oil and gas covering said land, and the signature or joinder of grantors, their heirs, administrators, executors and assigns, shall not be required on any future lease or leases covering said land;

NEVERTHELESS, neither the grantee, its successors or assigns, shall make or enter into any lease or contract for the development of said land or any portion of same for oil and gas, unless each and every such lease, contract, leases or contracts, shall provide for not less than a royalty on oil and gas of the usual one-eighth (1/8th) to be delivered free of cost in the tanks and into the pipe line, to which any well or wells on said land may be connected.

RECORDED August 25, 1953, Volume 372, page 169, Deed Records Kaufman County, Texas.

CONTRACT #2579 - Boyd Estate - Kaufman County, Texas. )

Being a tract of land containing 37-1/2 acres, more or less, and described as follows:

Beginning at the east corner of a 71.0 acre tract deeded to Gifford-Hill & Co., Inc., as described and recorded in Vol. 372, page 169, Deed Records Kaufman County, Texas;

Thence south 20 deg. east 240 feet to a point in right-of-way line of a County Road;

Thence south 45 deg. east 675 feet, more or less, with the right-of-way line of said County Road to a point for corner;

Thence south 45 deg. west 1844.4 feet, more or less, to a point for corner;

Thence north 45 deg. west 892.5 feet to a point for a corner, said corner being common with the south corner of Gifford-Hill & Co. Inc. 71.0 acre tract;

Thence north 45 deg. east, 1944.4 feet to the place of beginning, containing in all 37-1/2 acres of land, more or less;

SAVE AND EXCEPT - Grantors except from this conveyance and reserve and retain unto themselves, their heirs and assigns, an undivided one-half (1/2) of all oil and gas in, on and under and that may be produced from the above described land, and the right of ingress and egress for the purpose of developing and extracting said oil and gas and the right to use such part of the surface as may be necessary and proper in the development and extraction of such oil and gas; it being distinctly understood and agreed and herein stipulated that the interest reserved is without right of grantors, their heirs, administrators, executors and assigns, to participate or join in the execution

VOL PAGE
71002 1789

Kaufman 1/2

of future oil and gas leases on said land, and the said grantors herein hereby constitute and appoint the said grantee herein, its successors and assigns, as grantors irrevocable attorney-in-fact for the purpose of executing, acknowledging and delivering any lease or leases for oil and gas covering said land, and the signature or joinder of grantors, their heirs, administrators, executors and assigns, shall not be required on any future lease or leases covering said land; NEVERTHELESS, neither the grantee, its successors or assigns, shall make or enter into any lease or contract for the development of said land or any portion of same for oil and gas, unless each and every such lease, contract, leases or contracts, shall rpovide for not less than a royalty on oil and gas of the usual one-eighth (1/8th) to be delivered free of costs in the tanks and into the pipe line, to which any well or wells on said land may be connected.

RECORDED September 15, 1965, Volume 484, page 365, deed records Kaufman County, Texas.

There is reserved to Gifford-Hill & Co.,Inc. a Right-of-way for a now existing road on the said property for so long as said Gifford-Hill & Co.,Inc. uses said road for its operation purposes.

Contract #1273 -Claud Boyd - Dallas & Kaufman County, Texas.

BEGINNING at the Northeast corner of the BBB& C Survey Abstract #186,
Thence South 45° E with the East line of said survey 3340.8' more or less to the Southeast corner of said Lawrence & Galloway Tract;

THENCE South 45° W 2682' to a point for corner the center of Parsons Slough,

THENCE North 45° W with the meanderings of Parsons Slough to a point for corner the center of Parsons Slough and the Northwest line of the BBB&C Survey, 3400' more or less;

Thence South 45°E along the North line of said Survey 2750' more or less for a corner, containing 80 acres of land in Kaufman County, Texas, and 100.7 acres in Dallas County, and being all the land East of Parsons' Slough out of BBB&C Survey Abstract #186.

RECORDED Deed Records Dallas County, Texas September 30, 1947, Volume 2884, page 366.

There is reserved to Gifford-Hill & Co.,Inc. a Right-of-Way for a now existing road on the said property for so long as said Gifford-Hill & Co.,Inc. uses said road for its operation purposes.

1-5-71 Res. A/C 214 368-0272

RETURN TO

C. J. (JACK) CASTLES
PROPERTIES
214 - 637-3860 - EXT. 453

2949 Stemmons Freeway
P. O. Box 47127
Dallas, Texas 75247

Gifford-Hill & Co., Inc.

1971 JAN 5 PM 1 41

FILED
[signature]
COUNTY CLERK
DALLAS COUNTY

STATE OF TEXAS COUNTY OF DALLAS

I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded in the volume and page of the named records of Dallas County, Texas as stamped hereon by me.

JAN 5 1971

[signature]

COUNTY CLERK, Dallas County, Texas

71002 1791



*ACS/TRC* DALLAS Doc: 0S0106416 Date: 01/01/1900 Vol: 0071002 Page: 01746 Page: 46 Of 46

Last C.J. Castles

1-5-71 RES. A/C 214 368-0272

RETURN TO:

**C. J. (JACK) CASTLES**
PROPERTIES
214 - 637-3660 - EXT. 453

GIFFORD-HILL & CO., INC.

2949 STEMMONS FREEWAY
P. O. BOX 47127
DALLAS, TEXAS 75247

STATE OF TEXAS COUNTY OF DALLAS

I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded in the volume and page of the named records of Dallas County, Texas as stamped hereon by me.

JAN 5 1971

[signature]

COUNTY CLERK, Dallas County, Texas

FILED
[signature]
COUNTY CLERK
DALLAS COUNTY

1971 JAN 5 PM 1 41

VOL. [illegible] 71002 1791

H. H. Hall
To } Deed
Isaac N. Cardwell

This indenture made and entered into this 27th day of August 1858 between Henry H. Hall of the County of Collin and state of Texas of the one part and Isaac N. Cardwell of the county of Dallas & state aforesaid of the other part, witnesseth that the said Hall for and in consideration of the valuable sum of Eight Hundred and Ten Dollars to him in hand paid, the receipt whereof is hereby acknowledged hath this day bargained, granted and sold and does by these presents grant, bargain, sell and convey unto Isaac N. Cardwell his heirs or assigns one undivided equal half part of six hundred and forty acres of land (less one hundred acres heretofore sold to Thomas A. Phillips) lying and being in the County of Dallas on the waters of White Rock creek patented in the name of James J. Beeman by letters patent dated Austin 3rd. Dec. 1850 and bounded as follows: Beginning at a stake the S. E. corner of John S. Beemans survey No. 3 from which a Spanish Oak bears N 20 W 15 varas and then bears S. 40 W 15½ varas. Thence North at nineteen hundred and 8/10 varas a stake N. E. corner of sd. survey No. 3 from which a Post Oak bears N 62° 30' W 19 varas a Spanish Oak bears S 65° 30 E. 22 varas. Thence East at Nineteen hundred and 8/10 varas a stake from which a Cedar bears S 27½ W. 294 varas another bears N 38° 30' W. 250 varas. Thence South at Nineteen hundred and 8/10 varas a stake from which a Double Post Oak bears N 67° 30' E 204½ varas a Post Oak bears N 74° E 170 varas Thence West at nineteen hundred and 8/10 varas the place of beginning and the said Hall hereby warrants and will forever defend the title to said land unto the said Cardwell his heirs or assigns forever together with all and singular the rights, privileges, improvements and appurtenances thereunto belonging. In witness whereof the said Hall has hereto set his hand, seal using scrawl for seal this 27th day of August 1858.

Witness:
A. W. Carter
William Prewett

Henry H. Hall (Seal)

The State of Texas
County of Dallas } Personally appeared before the undersigned authority Henry H. Hall who is to me well known and acknowledged the execution of the foregoing deed to be his own true act for the purposes and considerations therein specified. In testimony whereof I hereunto set my hand and official seal at office this 8th day of September A. D. 1858.

W. K. Masten, C.C.C. D.C.T.

Filed for Record September 8th 1858 at 11 o'clock A. M.

W. K. Masten, Clk.

No. 76, Vol. 17
Joseph Mangum
3rd. Class 640 acres

In the name of the state of Texas to all to whom these presents shall come, know ye, I, E. M. Pease, Governor of the state aforesaid by virtue of the power vested in me by law and in accordance with the laws of said state in such case made and provided do by these presents grant to Joseph Mangum his heirs or assigns forever six hundred and forty acres of land situated and described as follows: In Dallas county on Bear Creek a branch of the West Fork, about 10½ miles North 87½° West from Dallas by virtue of unconditional certificate No. 329 issued by the Board of Land Commissioners of Montgomery County on the 3rd day of November 1845. Said survey is known as No. 67B beginning at the S. E. corner of said survey No. 45 ° W 2650 vrs. from the S. W. cor. of Jonathan Williams survey No. 21 and West 7100 varas from the N. W. corner of a survey in the name of Jonathan Bozarth a stake in timber on the West side of a slough whence an Ash 2 ft. in dia. brs. S. 45° E. 22 vs. a forked Elm 13 in. dia. bls. N 25° E. 15 varas. Thence North along the W. bank of sd. slough at 769 varas Creek 1900 8/10 varas a stake in barrens from which a Post Oak 4 in. dia brs. S. 82° E 14 varas a B. J. 5 in. dia. brs. S. 73° 30 E. 12 vrs. Thence West at 1775 varas Creek 1900 8/10

F 480

varas a stake in timber, from which an Elm 10 in. dia. brs. S. 28° E. 1½ vas. another 11 in. dia. brs. N 22° E. 1½ varas. – Thence South 1900⁄10 varas a stake from which a P. Oak 20 in. dia. brs. N. 88° E. 13 varas a hollow leaning P. O. brs. N 53° E. 17 vrs. Thence East 1900⁄10 varas to the beginning. Bearings marked X. Hereby relinquishing to him the said Joseph Mangum and his heirs or assigns forever all the right & title in and to said land, heretofore held and possessed by the said state, and I do hereby issue this letter patent for the same. In testimony whereof I have caused the seal of the state to be affixed as well as the seal of the General Land Office. Done at the city of Austin on the second day of November in the year of our Lord One thousand eight hundred and fifty seven.

S. Crosby Commissioner of the Gl. Ld. Office {Seal} E. M. Pease, Governor {Seal}

Filed for Record September the 10th 1858 at 9 o'clock A. M.

W. K. Masten, Clk.
by Thos. C. Williams, Deputy

Edward Wilburn and wife To Deed Nat. S. Floyd

The State of Texas } County of Dallas } Know all men by these presents that we Edward Wilburn and Mary Wilburn his wife of the County of Tarrant and State of Texas for and in consideration of the sum of Three thousand dollars to us in hand paid have bargained sold and conveyed unto Nat. S. Floyd of the County of Dallas and state aforesaid the following described lots tracts or parts of land lying and situated in the county of Dallas and state of Texas and described as follows to wit Six hundred and forty acres on White Rock Creek about 10 miles N by E from Dallas embracing section No 22 of Township 2 North of the 1st Base line and Range 1 East of the First Meridian surveyed and patented by virtue of certificate No 13, vol. 21 issued by the Commissioner of Peters Colony April 1st 1850 and known as survey No 107 C beginning at the S. W. corner of John Youngs survey No 108 C and the N. W. corner of Hiram Wilburns survey No 105 C from Hor. tes from the same root from which a Spanish Oak brs. S 22 E. 12 vs. a Chinkapin Oak brs. S. 5° E 11 vs. – Thence West 1900⁄10 vs. to a stake in prairie from which a Persimmon tree brs. N 87° W. 185½ vs. Thence North 1900⁄10 vs. to a stake in prairie from which a forked Hackberry bs. S 75° E. 81½ vs. and an Elm bs. S 12½° W 234 vs. Thence East at 870 vs. said White Rock Creek 1900⁄10 vs. to a stake in prairie said Youngs N. W. corner from which an Elm brs. N 26° W 67 vs. and then brs. N 28° W 45 vs. Thence South at 1720 vs. said creek 1900⁄10 vs. to the place of beginning. Two hundred and sixteen acres on White Rock creek about 9¾ miles North of Dallas known as the S. E. part of of section No 21 in Township 2 North of the First base line and Range 1 East of the 1st. meridian surveyed and patented by virtue of certificate No 8 issued by the Commissioner of Peters Colony April 1st 1850 beginning at Ed. Williams S. W. corner from which a Persimmon brs. N. 87° W. 185½ vs.
Thence West 1293 vs. to a stake in Prairie from which a bunch of Locust bushes brs. N. 14° W. 36 vs. Thence N 945 vs. to a stake in prairie. Thence East 1293 vrs. to a stake in Ed. Wilburns West line. Thence South with said line 945 vs. to the place of beginning.
Fifty acres located and surveyed by virtue of Jesse Overton's certificate No 396 issued by the Commissioner of Peters colony November 15th 1850 beginning at at the S. W. corner of H. Wilburns 216 acre survey No 109 C a stake in the North boundary of Josiah Pancoasts survey a Locust bush brs. N. 14° W. 36 vs. Thence North with the West boundary of said Wilburns survey 945 vs. to its N. W. corner a stake in the south boundary of John Mills survey.

H. H. Hall
Deed
Isaac/Cardwell

This indenture made and entered into this 27th day of August 1858, between Henry H. Hall of the county of Collin and state of Texas of the one part, and Isaac N. Cardwell of the county of Dallas and state aforesaid of the other part, witnesseth that the said Hall for and in consideration of the valuable sum of eight hundred and ten dollars to him in hand paid, the receipt in hereof is hereby acknowledged hath this day bargained, granted, and sold and does by these presents grant, bargain, sell and convey unto Isaac N. Cardwell , his heirs, and assigns one undivided equal half part of six hundred and forty acres of land (less one hundred acres heretofore sold to Thomas A. Chillips) buying and being in the county of Dallas on the waters of White Rock Creek patented in the name of James J. Berman by letter patent dated Austin 3rd Dec. 1850 and bounded as follows: Beginning at a stake the S.E. corner of John S. Berman's survey no. 3 from which a Spanish Oak bears N 20 W 15 varas, and then bears S 40 W 15 ½ varas. Thence North at nineteen hundred and 8/10 varas a stake N.E corner of sd. survey no. 3 from which a Post Oak bears N 62° 30′ W 10 varas, a Spanish Oak bears S 65° 30 E 22 varas. Thence East at nineteen hundred and 8/10 varas, a stake from which a Cedar bears S 27 ½ W 294 varas, another bears N 38° 30 W. 250 varas. Thence South at nineteen hundred and 8/10 varas, a stake from which a double Post Oak bears N 67 ° 30′ E 204 ½ varas, a Post Oak bears N 74 ° E 170 varas. Thence West at nineteen hundred and 8/10 varas the place of beginning and the said Hall hereby warrants and will forever defend the title to said land until the said Cardwell, his heirs, and assigns forever together with all and singular the rights, privileges, improvements and appurtenances, thereunder belonging, in witness where of the said Hall has hereto sells his land, seal using scrawl for seal this 27th day of August 1858.

Witness: A. W. Carter
William Prewett

Henry H. Hall

The State of Texas
County of Dallas

Personally appeared before the undersigned authority Henry H. Hall who is to me well known and acknowledged the execution of the foregoing deed to be his own true act for the purposes and considerate friend therein specified, in testimony whereof I hereunto set my hand and official seal at office, this 8th day of September A.D. 1858

W.K. Masten C.C.C. D.C.G.

Filed for record September 8th 1858 at 11 o'clock A.M.

W.K. Masten CLK.

No. 76 Vol. 17
Joseph Mangrum
3rd Class 640 acres    In the name of the state of Texas to all to whom these presents shall
come, know ye, I. E. M.  Please, Governor of the state aforesaid by virtue
of the power vested in me by law and in accordance with the laws of said state in such case made
and provided, do by these presents grant to Joseph Mangrum, his heirs, and assigns forever six
hundred and forty acres of land situated and described as follows, in Dallas County on Bear
Creek a branch of the west fork about 10 ½ miles North 87 ½ " North from Dallas by virtue of
unconditional certificate No. 329 issued by the Board of Land Commissioners of Montgomery
County on the 3rd day of November 1845. Said survey known as 67 B beginning at the S corner
of said survey N 45° W 265 varas from the S.W. corner of a survey in the name of Jonathan Bozarth a
stake in timber on the West side of a slough whence an Ash 2 ft. in dia. brs S 45° E 22 varas a forked
Elm 13 in dia. N 25 ° 15 varas, Thence North along the W. Bank of sq. through at 760 varas creek, 1900
8/10 varas to stake in Barrens from which a Post Oak 4 in. dia bears S 82 ° E 14 varas at B.J. 5 in. dia brs
S 73 ° 30 E 12 varas, thence West at 1775 varas creek 1900 8/10

Varas a stake in timber, form which an Elm 10 in. in diameter bears 28'6 1 ½ varas another 11 in. in diameter bears. N. 221' E 1 ½ varas, thence south 1900 8/10 varas a stake from which a post oak 20 in. diameter bears N. 88"E. 13 varas a hollow leaning P.O bears N. 53' E 17 varas thence east 1900 8/10 varas to the beginning. Bearings marked X hereby relinquishing to him the said Joseph Magnum and his heirs or assigns forever, all the right, title in al to said land, heretofore held and possessed by file said state and I do herby issue this letter patent for the same. In testimony whereof I have caused the seal of the state to be affixed as well as the seal of the general land office, done at the city of Austin on the second day of November in the year of our Lord one thousand eight hundred and fifty-seven.

S. Crosby Commissioner E. M. Pease Governer
Of the land office
Filed for Record September 10th 1858 at 9 o'clock A.M.
W.M. Mastian, Clk
By Than C. Williams, Deputy

Edward Wilburn } The State of Texas
And wife , deed } County of Dallas

Know all men by these presents, that we Edward Wilburn and Mary Wilburn his wife of the County of Tarrant and the state of Texas for and in consideration of the sum of three thousand dollars to us in hand paid have bargained, sold and conveyed unto Nat.S. Floyd of the County of Dallas and state of aforesaid the following described lots traits or parts of land lying and situated in the County of Dallas and State of Texas and described as follows: to wit six hundred and forty acres on White Rock Creek about 10 miles N. by E from Dallas embracing section No.22 of township 2 North of the 1st base line and range 1 east of the first meridian surveyed and patented by virtue of certificate No. 13 Vol.21 issued by the Commissioner of Peter's Colony April 1st 1850 and known as survey No. 107 C beginning at the S.W. corner of John Youngs survey No.108 and the N.W. corner of Hiram Williams survey No.105 C. River 14 Trees from the same lot from which a Spanish Oak 226.12 in Brink hoper Oak S. 5'6' 11 varas thence west 1900 8/10 varas to a stake in prairie form which a Persimmon Tree N. 87' W. 185 ½ varas, thence North 1900 8/10 varas to a stake in prairie, from which a Ferrero Hackberry 7.5 E. 81 ½ varas and an Elm, 12 ½ W. 234 varas thence East at 870 varas said White Rock Creek 1900 8/10 varas to a stake in prairie said Young's N.W. corner from which an Elm bears N. 26" varas and then N' 28' W. 45 vara, thence south at 1720 vs said creek 1900 8/10 to the place of beginning, Two hundred and sixteen acres on White Rock Creek about 9 ¾ miles North of Dallas known as the S.E. part of section No. 21 in township 2, North of the first base line and range 1 East of the 1st meridian surveyed and patented by virtue of certificate No.8 issued by the Commissioner of Peter's Colony, April 1sr 1850 beginning at Ed. Williams S.W. corner from which a persimmon bears N. 87" W. 185 1½ varas. Thence West 1293 varas to a stake in prairie from which a bunch of locust bushes bears 14 W. 36 varas, thence N.745 varas a stake in prairie, thence East 1273 varas to a stake in Ed. Williams West line, thence south with said line 945 varas to the place of beginning.

Fifty acres located and surveyed by virtue of Jesse Overton's certificate No. 396 issued by the Commissioner of Peter's Colony November 15th 1850 beginning at the S.W. Corner of Edward Wilburn 216 acre survey No.109 a stake in the North boundary of Josiah Panconsts survey a locust bush bears N.14" W. 36 vs. Thence North with the West boundary of said Wilburn survey 945 vs to its N.W. corner a stake in the South boundary of John Witts survey.

Map
Aerial
Blend
Operation Layer:
Certified Tax
Map Scales(inch:feet):
Map Scales
Map Coords: : X = 2432980.58 Y = 6971295.68

D

CERTIFICATION OF VITAL RECORD

# CITY OF ARLINGTON, TEXAS
# TARRANT COUNTY

STATE OF TEXAS — CERTIFICATE OF DEATH — STATE FILE NUMBER

Texas Department of Health — Bureau of Vital Statistics

1. NAME OF DECEASED (a) FIRST: KENNETH (b) MIDDLE: JAMES (c) LAST: STEWART (d) MAIDEN:
2. SEX: MALE
3. DATE OF DEATH: 1-25-2004 FOUND DEAD
4. DATE OF BIRTH: [redacted]
5. AGE (IN YEARS): 62 — IF UNDER 1 YR. MO DAYS — IF UNDER 1 DAY HOURS MIN
6. BIRTH PLACE (CITY & STATE OR FOREIGN COUNTRY): BRADY, TX
7. SOCIAL SECURITY NO.: [redacted]
8. RACE: CAUCASIAN
9a. WAS THE DECEDENT OF HISPANIC ORIGIN? ☐ YES ☒ NO
9b. IF YES SPECIFY (MEXICAN, CUBAN, PUERTO RICAN, ETC.)
10. WAS DECEDENT EVER IN U.S. ARMED FORCES? ☒ YES ☐ NO
11. EDUCATION (SPECIFY HIGHEST GRADE COMPLETED, ELEM. OR SECONDARY (0-12) COLLEGE (13-16, 17+)): 12
12. MARITAL STATUS: ☐ MARRIED ☐ NEVER MARRIED ☐ WIDOWED ☒ DIVORCED
13. SURVIVING SPOUSE (IF WIFE, GIVE MAIDEN NAME):
14a. DECEDENT'S USUAL OCCUPATION: OWNER/OPERATOR
14b. KIND OF BUSINESS OR INDUSTRY: TRUCKING
15a. RESIDENCE STREET ADDRESS: 2706 HEATHER HILL CT., APT. 917
15b. CITY OR TOWN: ARLINGTON
15c. COUNTY: TARRANT
15d. STATE: TX
15e. ZIP CODE: 76006
15f. INSIDE CITY LIMITS: ☒ YES ☐ NO
16. FATHER'S NAME: ROBERT STEWART
17. MOTHER'S MAIDEN NAME: ETHEL COX
18. PLACE OF DEATH (CHECK ONLY ONE): HOSPITAL: ☐ INPATIENT ☐ ER/OUTPATIENT ☐ DOA OTHER ☐ NURSING HOME ☒ RESIDENCE ☐ OTHER (SPECIFY)
19. COUNTY OF DEATH: TARRANT
20. CITY OR TOWN (IF OUTSIDE CITY LIMITS, GIVE PRECINCT NO.): ARLINGTON
21. NAME OF HOSPITAL OR INSTITUTION (If not in institution, show street address): 2706 HEATHER HILL CT., APT. 917
22. INFORMANT — SIGNATURE & RELATIONSHIP: JIMMY STEWART (F.H. RECORDS) SON
23. MAILING ADDRESS OF INFORMANT: 2028 SANDY LN., IRVING, TX 75060
24. METHOD OF DISPOSITION: ☒ BURIAL ☐ CREMATION ☐ REMOVAL FROM STATE ☐ DONATION ☐ OTHER (SPECIFY)
25a. PLACE OF DISPOSITION (NAME OF CEMETERY, CREMATORY OR OTHER PLACE): JUSTIN CEMETERY
25b. Section: RURAL — Block — Lot: NOT PLOTTED — Space — Unknown ☒
26. LOCATION (CITY, STATE): JUSTIN, TX
27. SIGNATURE OF FUNERAL DIRECTOR OR PERSON ACTING AS SUCH: [signature] GEORGE L. WHATLEY #11476
28. DATE OF DISPOSITION: 01/30/2004
29. NAME & ADDRESS OF FUNERAL HOME: BROWN'S MEMORIAL FUNERAL HOME, 707 N. MacARTHUR BLVD. IRVING, TX 75061
30. CERTIFIER: ☐ CERTIFYING PHYSICIAN — TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE TIME, DATE, AND PLACE, AND DUE TO THE CAUSE(S) AND MANNER AS STATED. ☒ MEDICAL EXAMINER ☐ JUSTICE OF THE PEACE — ON THE BASIS OF EXAMINATION AND/OR INVESTIGATION IN MY OPINION, DEATH OCCURRED AT THE TIME, DATE, PLACE, AND DUE TO THE CAUSE(S) AND MANNER AS STATED.
31. SIGNATURE & TITLE OF CERTIFIER: [signature] GARY L. SISLER, D.O. Deputy Medical Examiner
32. DATE SIGNED: MO 1 DAY 27 YEAR 2004
33. TIME OF DEATH: Found 12:20 p.m.
34. PRINTED NAME & ADDRESS OF CERTIFIER: Gary L. Sisler D.O. TARRANT COUNTY MEDICAL EXAMINER, 200 FELIKS GWOZDZ PLACE, FT. WORTH, TEXAS 76104-4919
35. PART 1 ENTER THE DISEASES, INJURIES OR COMPLICATIONS THAT CAUSED THE DEATH. DO NOT ENTER THE MODE OF DYING SUCH AS CARDIAC OR RESPIRATORY ARREST, SHOCK, OR HE[ART FAILURE]...
IMMEDIATE CAUSE (Final disease or condition resulting in death) a. [redacted] — Approximate Interval Between Onset and Death: UNKNOWN
Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (disease or injury that initiated events resulting in death) LAST b. c. d.
PART 2 OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DE[ATH]... CAUSE GIVEN IN PART 1 (i.e. substance abuse, diabetes, smok[ing]...) [redacted] ☒ NO
36b. AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? ☐ YES ☒ NO
37. DID TOBACCO USE CONTRIBUTE TO DEATH: ☐ YES ☐ PROBABLY ☐ NO ☒ UNKNOWN
38. DID ALCOHOL USE ...: ☐ YES ☐ PROBABLY ☐ NO ☒ UNKNOWN
39. [IF FEMALE, WAS DE]CEDENT PREGNANT: AT TIME OF DEATH ☐ YES ☒ NO ☐ UNK — WITHIN LAST 12 MO ☐ YES ☒ NO ☐ UNK
40. MANNER OF DEATH: ☒ NATURAL ☐ ACCIDENT ☐ SUICIDE ☐ HOMICIDE ☐ PENDING INVESTIGATION ☐ COULD NOT BE DETERMINED
41a. DATE OF INJURY — 41b. TIME OF INJURY M — 41c. INJURY AT WORK ☐ YES ☐ NO — 41d. PLACE OF INJURY — AT HOME, FARM, STREET, FACTORY, OFFICE, ETC. (SPECIFY)
41e. LOCATION (STREET AND NUMBER, CITY OR TOWN, STATE)
41f. DESCRIBE HOW INJURY OCCURRED
42a. REGISTRAR FILE NO.: 03-0113
42b. DATE RECEIVED BY LOCAL REGISTRAR: February 2, 2004
42c. SIGNATURE OF LOCAL REGISTRAR: [signature]

WARNING: The penalty for knowingly making a false statement in this form can be 2-10 years in prison and a fine of up to $10,000. (Health and Safety Code, Sec. 195.003, 1989)

VS-112 REV. 9/95

171689

THIS IS TO CERTIFY THAT THIS IS A TRUE AND CORRECT REPRODUCTION OF THE ORIGINAL RECORD AS RECORDED IN THIS OFFICE. ISSUED UNDER AUTHORITY OF SECTION 191.051, HEALTH AND SAFETY CODE.

DATE ISSUED: FEB 02 2004

[signature]
BARBARA G. HEPTIG, LOCAL REGISTRAR
CITY OF ARLINGTON, TEXAS

THE STATE OF TEXAS

HartSecure Banknote Paper Patent Pending – All Rights Reserved
THIS DOCUMENT CONTAINS AN ORIGINAL WATERMARK



E

**Scout Exploration, J.V.**

Exhibit C

5956 Sherry Lane, Suite 1810
Dallas, Texas 75225
214.891.0920 (Office)
214.891.9855 (Fax)

June 10, 2005

Mrs. Kuk Ja Stewart
2028 Sandy Lane
Irving, Texas 75060-5639

Look

Re: Letter of Intent- Oil and Gas Lease
33.33 acres / 9.47 acres. J. Mangrum Survey, A-861
Dallas County, Texas

Dear Mrs. Stewart:

This Letter of Intent (LOI) shall serve to set forth the basic terms and conditions under which Lessor and Lessee would desire to enter in to an oil and gas lease (the "Lease") pertaining to the land described below.

**Lessor:** Kuk Ja Stewart

Lessee: Scout Exploration, J.V.

**Property Description:** A tract or tracts of land totaling approximately 42.80+/- acres (comprised of a 33.33 acre tract and a 9.47 acre tract) located in Dallas County, Texas, and being further described on Exhibit "A" attached hereto and being (the "Property").

**Bonus Price:** **$500.00 (Five Hundred Dollars) per net mineral acre**
**Royalty:** **25%**
**Term:** **5 year paid-up lease**
**Surface Use Fee:** **$25,000.00 (payable for each pad built)**

**Mutually acceptable Lease:** Lessee shall have sixty (60) days from the Lessor's Execution Date of this LOI to negotiate in good faith with Lessor to execute a mutually acceptable Lease.

**Execution of Lease and Title Examination:** Lessee shall have a minimum of sixty (60) days after Lessor's Execution Date to obtain a Mineral Title Report covering the Property. Lessee and Lessor both agree that as long as Lessee is diligently working to

obtain said title report and if overcrowding in the County Clerk's office, or other issues out of Lessee's control prevents Lessee from finishing the reports within said sixty (60) day period, it is herein agreed that Lessee shall have the option and right, but not the obligation, to pay Lessor $1,000 00 for an additional thirty (30) day period within which to complete the title examination. In such event, Lessee agrees to keep Lessor closely apprised of Lessee's progress, and Lessor shall hold the minerals under the Property for exclusive lease by Lessee during such title examination period. Upon final completion of the Mineral Title Report, and if such Mineral Title Report is acceptable to Lessee, then Lessee will submit a formal Lease for execution by Lessor, and pay to Lessor the Lease bonus money due based upon Lessor's net mineral acre interest ownership in the Property as determined by said Mineral Title Report. Payment will be by Sight Draft given to Lessor at the time of execution of the Lease or if Lessor prefers, by company check within 10 days of the completion of the final Mineral Title Report.

**Property Information:** Lessor agrees to provide Lessee access to all information pertinent to the Property in its (or its consultant's) possession, including any and all title information or documentation, site plans, engineering plans, well logs, topographic surveys, existing Surveys and/or Plats of the Property as well as evidence of any past or current mineral lease in the possession of Lessor.

**Representations and Warranties.** Lessor shall make the usual and customary representations and warranties to the Lessee regarding the Property. **Lessor agrees to keep the terms and conditions of this agreement confidential.**

The above proposal is a statement of the terms under which Lessor and Lessee are prepared to enter into a Lease covering the Property, subject to and expressly conditioned upon (1) the execution and delivery of a mutually acceptable Lease and (2) title to the Property being acceptable to Lessee, in Lessee's sole and exclusive opinion. Notwithstanding any provision herein to the contrary, Lessor hereby agrees that while this LOI is in effect they shall negotiate exclusively with Lessee regarding the leasing of Lessor's mineral interest lying under the Property, and Lessor will not negotiate with any third parties during such time period.

If the terms of this LOI are acceptable to you, please sign where indicated below and return a copy of the letter to me so that we may begin our title due diligence. I appreciate your consideration to this proposal and look forward to hearing from you. **If you have any questions please contact Scott K. Wilpitz at 214.673.8719.**

Unless otherwise agreed to in writing this offer shall expire as of 5:00 pm on Thursday June 16, 2005. A signed copy may be faxed by Lessor to at Scout Exploration, J.V., Attn: Wallace Hall, Jr., (214) 891.9855 (fax).

LESSEE:
Scout Exploration, J.V.

By: [signature]

Name: Scott K. Wilpitz
Title: Land Representative for Scout Exploration, J.V.
Lessee's Execution Date: JUNE 13, 2005

LESSOR:

By: [signature]

Name: Kuk Ja Stewart
Title: Owner
Lessor's Execution Date: 6-15-05, 2005



REL 200503610909
4 PGS

PRODUCERS 88 (4-89) – PAID UP POUND PRINTING STATIONERY COMPANY
WITH 640 ACRES POOLING PROVISION 4703-C RICHMOND, HOUSTON, TEXAS 77027 (713) 552-9797

# PAID UP OIL AND GAS LEASE

THIS LEASE ~~AGREEMENT~~ is made as of the 15th day of September, 2005, between UP G KUK, INC., A TEXAS CORPORATION, as Lessor (whether one or more), whose address is 2028 Sandy Lane, Irving, Texas 75060-5639, and SCOUT EXPLORATION, J.V., a Texas Joint Venture, as Lessee, whose address is 5956 Sherry Lane, Suite 1810, Dallas, Texas 75225. All printed portions of this lease were prepared by the party hereinabove named as Lessee, but all other provisions (including the completion of blank spaces) were prepared jointly by Lessor and Lessee.

1. In consideration of a cash bonus in hand paid and the covenants herein contained, Lessor hereby grants, leases and lets exclusively to Lessee the following described land, hereinafter called leased premises: (use Exhibit "A" for long description)

42.803 acres of land, more or less, out of the J. Mangum Survey, A-861, Dallas County, Texas, more particularly described on Exhibit "A" attached hereto and made a part hereof for all purposes, which land is hereinafter referred to as the "leased premises".

in the county of Dallas, State of Texas, containing 42.803 gross acres, more or less (including any interests therein which Lessor may hereafter acquire by reversion, prescription or otherwise), for the purpose of exploring for, developing, producing and marketing oil and gas, along with all hydrocarbon and nonhydrocarbon substances produced in association therewith. The term "gas" as used herein includes helium, carbon dioxide and other commercial gases, as well as hydrocarbon gases. In addition to the above-described leased premises, this lease also covers accretions and any small strips or parcels of land now or hereafter owned by Lessor which are contiguous or adjacent to the above-described leased premises, and, in consideration of the aforementioned cash bonus, Lessor agrees to execute at Lessees request any additional or supplemental instruments for a more complete or accurate description of the land so covered. For the purpose of determining the amount of any shut-in royalties hereunder, the number of gross acres above specified shall be deemed correct, whether actually more or less.

2. This lease, which is a "paid-up" lease requiring no rentals, shall be in force for a primary term of five (5) years from the date hereof, and for as long thereafter as oil or gas or other substances covered hereby are produced in paying quantities from the leased premises or from lands pooled therewith or this lease is otherwise maintained in effect pursuant to the provisions hereof.

3. Royalties on oil, gas and other substances produced and saved hereunder shall be paid by Lessee to Lessor as follows: (a) For oil and other liquid hydrocarbons separated at Lessees separator facilities, the royalty shall be 1/4 of such production, to be delivered at Lessee's option to Lessor at the wellhead or to Lessor's credit at the oil purchaser's transportation facilities, provided that Lessee shall have the continuing right to purchase such production at the wellhead market price then prevailing in the same field (or if there is no such price then prevailing in the same field, then in the nearest field in which there is such a prevailing price) for production of similar grade and gravity; (b) for gas (including casinghead gas) and all other substances covered hereby, the royalty shall be 1/4 of the proceeds realized by Lessee from the sale thereof, less a proportionate part of ad valorem taxes and production, severance, or other excise taxes and the costs incurred by Lessee in delivering, processing or otherwise marketing such gas or other substances, provided that Lessee shall have the continuing right to purchase such production at the prevailing wellhead market price paid for production of similar quality in the same field (or if there is no such price then prevailing in the same field, then in the nearest field in which there is such a prevailing price) pursuant to comparable purchase contracts entered into on the same or nearest preceding date as the date on which Lessee commences its purchases hereunder; and (c) if at the end of the primary term or any time thereafter one or more wells on the leased premises or lands pooled therewith are capable of producing oil or gas or other substances covered hereby in paying quantities, but such well or wells are either shut in or production therefrom is not being sold by Lessee, such well or wells shall nevertheless be deemed to be producing in paying quantities for the purpose of maintaining this lease. If for a period of 90 consecutive days such well or wells are shut in or production therefrom is not being sold by Lessee, then Lessee shall pay shut-in royalty of one dollar per acre then covered by this lease, such payment to be made to Lessor or to Lessors credit in the depository designated below, on or before the end of said 90-day period and thereafter on or before each anniversary of the end of said 90-day period while the well or wells are shut in or production therefrom is not being sold by Lessee; provided that if this lease is otherwise being maintained by operations, or if production is being sold by Lessee from another well or wells on the leased promises or lands pooled therewith, no shut-in royalty shall be due until the end of the 90-day period next following cessation of such operations or production. Lessee's failure to properly pay shut-in royalty shall render Lessee liable for the amount due, but shall not operate to terminate this lease.

4. All shut-in royalty payments under this lease shall be paid or tendered to Lessor or to Lessor's credit in

at
or its successors, which shall be Lessor's depository agent for receiving payments regardless of changes in the ownership of said land. All payments or tenders may be made in currency, or by check or by draft and such payments or tenders to Lessor or to the depository by deposit in the U.S. Mails in a stamped envelope addressed to the depository or to the Lessor at the last address known to Lessee shall constitute proper payment. If the depository should liquidate or be succeeded by another institution, or for any reason fail or refuse to accept payment hereunder, Lessor shall, at Lessees request, deliver to Lessee a proper recordable instrument naming another institution as depository agent to receive payments.

5. If Lessee drills a well which is incapable of producing in paying quantities (hereinafter called "dry hole") on the leased premises or lands pooled therewith, or if all production (whether or not in paying quantities) permanently ceases from any cause, including a revision of unit boundaries pursuant to the provisions of Paragraph 6 or the action of any governmental authority, then in the event this lease is not otherwise being maintained in force it shall nevertheless remain in force if Lessee commences operations for reworking an existing well or for drilling an additional well or for otherwise obtaining or restoring production on the leased premises or lands pooled therewith within 90 days after completion of operations on such dry hole or within 90 days after such cessation of all production. If at the end of the primary term, or at any time thereafter, this lease is not otherwise being maintained in force but Lessee is then engaged in drilling, reworking or any other operations reasonably calculated to obtain or restore production therefrom, this lease shall remain in force so long as any one or more of such operations are prosecuted with no cessation of more than 90 consecutive days, and if any such operations result in the production of oil or gas or other substances covered hereby, as long thereafter as there is production in paying quantities from the leased premises or lands pooled therewith. After completion of a well capable of producing in paying quantities hereunder, Lessee shall drill such additional wells on the leased premises or lands pooled therewith as a reasonably prudent operator would drill under the same or similar circumstances to (a) develop the leased premises as to formations then capable of producing in paying quantities on the leased premises or lands pooled therewith, or (b) to protect the leased premises from uncompensated drainage by any well or wells located on other lands not pooled therewith. There shall be no covenant to drill exploratory wells or any additional wells except as expressly provided herein.

6. Lessee shall have the right but not the obligation to pool all or any part of the leased premises or interest therein with any other lands or interests, as to any or all depths or zones, and as to any or all substances covered by this lease, either before or after the commencement of production, whenever Lessee deems it necessary or proper to do so in order to prudently develop or operate the leased premises, whether or not similar pooling authority exists with respect to such other lands or interests. The unit formed by such pooling for an oil well which is not a horizontal completion shall not exceed 80 acres plus a maximum acreage tolerance of 10%, and for a gas well or a horizontal completion shall not exceed 640 acres plus a maximum acreage tolerance of 10%; provided that a larger unit may be formed for an oil well or gas well or horizontal completion to conform to any well spacing or density pattern that may be prescribed or permitted by any governmental authority having jurisdiction to do so. For the purpose of the foregoing, the terms "oil well" and "gas well" shall have the meanings prescribed by applicable law or the appropriate governmental authority, or, if no definition is so prescribed, "oil well" means a well with an initial gas-oil ratio of less than 100,000 cubic feet per barrel and "gas well" means a well with an initial gas-oil ratio of 100,000 cubic feet or more per barrel, based on a 24-hour production test conducted under normal producing conditions using standard lease separator facilities or equivalent testing equipment; and the term "horizontal completion" means an oil well in which the horizontal component of the gross completion interval in the reservoir exceeds the vertical component thereof. In exercising its pooling rights hereunder, Lessee shall file of record a written declaration describing the unit and stating the effective date of pooling. Production, drilling or reworking operations anywhere on a unit which includes all or any part of the leased premises shall be treated as if it were production, drilling or reworking operations on the leased premises, except that the production on which Lessor's royalty is calculated shall be that proportion of the total unit production which the net acreage covered by this lease and included in the unit bears to the total gross acreage in the unit, but only to the extent such proportion of unit production is sold by Lessee. Pooling in one or more instances shall not exhaust Lessees pooling rights hereunder, and Lessee shall have the recurring right but not the obligation to revise any unit formed hereunder by expansion or contraction or both, either before or after commencement of production, in order to conform to the well spacing or density pattern prescribed or permitted by the governmental authority having jurisdiction, or to conform to any productive acreage determination made by such governmental authority. In making such a revision, Lessee shall file of record a written declaration describing the revised unit and stating the effective date of revision. To the extent any portion of the leased premises is included in or excluded from the unit by virtue of such revision, the proportion of unit production on which royalties are payable hereunder shall thereafter be adjusted accordingly. In the absence of production in paying quantities from a unit, or upon permanent cessation thereof, Lessee may terminate the unit by filing of record a written declaration describing the unit and stating the date of termination. Pooling hereunder shall not constitute a cross-conveyance of interests.

7. If Lessor owns less than the full mineral estate in all or any part of the leased premises, the royalties and shut-in royalties payable hereunder for any well on any part of the leased premises or lands pooled therewith shall be reduced to the proportion that Lessor's interest in such part of the leased premises bears to the full mineral estate in such part of the leased premises.

8. The interest of either Lessor or Lessee hereunder may be assigned, devised or otherwise transferred in whole or in part, by area and/or by depth or zone, and the rights and obligations of the parties hereunder shall extend to their respective heirs, devisees, executors, administrators, successors and assigns. No change in Lessor's ownership shall have the effect of reducing the rights or enlarging the obligations of Lessee hereunder, and no change in ownership shall be binding on Lessee until 60 days after Lessee has been furnished the original or certified or duly authenticated copies of the documents establishing such change of ownership to the satisfaction of Lessee or until Lessor has satisfied the notification requirements contained in Lessees usual form of division order. In the event of the death of any person entitled to shut-in royalties hereunder, Lessee may pay or tender such shut-in royalties to the credit of decedent or decedent's estate in the depository designated above. If at any time two or more persons are entitled to shut-in royalties hereunder, Lessee may pay or tender such shut-in royalties to such persons or to their credit in the depository, either jointly or separately in proportion to the interest which each owns. If Lessee transfers its interest hereunder in whole or in part Lessee shall be relieved of all obligations thereafter arising with respect to the transferred interest, and failure of the transferee to satisfy such obligations with respect to the transferred interest shall not affect the rights of Lessee with respect to any interest not so transferred. If Lessee transfers a full or undivided interest in all or any portion of the area covered by this lease, the obligation to pay or tender shut-in royalties hereunder shall be divided between Lessee and the transferee in proportion to the net acreage interest in this lease then held by each.

9. Lessee may, at any time and from time to time, deliver to Lessor or file of record a written release of this lease as to a full or undivided interest in all or any portion of the area covered by this lease or any depths or zones thereunder, and shall thereupon be relieved of all obligations thereafter arising with respect to the interest so released. If Lessee releases all or an undivided interest in less than all of the area covered hereby, Lessee's obligation to pay or tender shut-in royalties shall be proportionately reduced in accordance with the net acreage interest retained hereunder.

10. In exploring for, developing, producing and marketing oil, gas and other substances covered hereby on the leased premises or lands pooled or unitized therewith, in primary and/or enhanced recovery, Lessee shall have the right of ingress and egress along with the right to conduct such operations on the leased premises as may be reasonably necessary for such purposes, including but not limited to geophysical operations, the drilling of wells, and the construction and use of roads, canals, pipelines, tanks, water wells, disposal wells, injection wells, pits, electric and telephone lines, power stations, and other facilities deemed necessary by Lessee to discover, produce, store, treat and/or transport production. Lessee may use in such operations, free of cost, any oil, gas, water and/or other substances produced on the leased premises, except water from Lessor's wells or ponds. In exploring, developing, producing or marketing from the leased premises or lands pooled therewith, the ancillary rights granted herein shall apply (a) to the entire leased premises described in Paragraph 1 above, notwithstanding any partial release or other partial termination of this lease; and (b) to any other lands in which Lessor now or hereafter has authority to grant such rights in the vicinity of the leased premises or lands pooled therewith. When requested by Lessor in writing, Lessee shall bury its pipelines below ordinary plow depth on cultivated lands. No well shall be located less than 200 feet from any house or barn now on the leased premises or other lands used by Lessee hereunder, without Lessor's consent, and Lessee shall pay for damage caused by its operations to buildings and other improvements now on the leased premises or such other lands, and to commercial timber and growing crops thereon. Lessee shall have the right at any time to remove its fixtures, equipment and materials, including well casing, from the leased premises or such other lands during the term of this lease or within a reasonable time thereafter.

11. Lessee's obligations under this lease, whether express or implied, shall be subject to all applicable laws, rules, regulations and orders of any governmental authority having jurisdiction including restrictions on the drilling and production of wells, and the price of oil, gas and other substances covered hereby. When drilling, reworking, production or other operations are prevented or delayed by such laws, rules, regulations or orders, or by inability to obtain necessary permits, equipment, services, material, water, electricity, fuel, access or easements, or by fire, flood, adverse weather conditions, war, sabotage, rebellion, insurrection, riot, strike or labor disputes, or by inability to obtain a satisfactory market for production or failure of purchasers or carriers to take or transport such production, or by any other cause not reasonably within Lessees control, this lease shall not terminate because of such prevention or delay, and at Lessees option, the period of such prevention or delay shall be added to the term hereof. Lessee shall not be liable for breach of any express or implied covenants of this lease when drilling, production or other operations are so prevented, delayed or interrupted.

12. In the event that Lessor, during the primary term of this lease, receives a bona fide offer which Lessor is willing to accept from any party offering to purchase from Lessor a lease covering any or all of the substances covered by this lease and covering all or a portion of the land described herein, with the lease becoming effective upon expiration of this lease, Lessor hereby agrees to notify Lessee in writing of said offer immediately, including in the notice the name and address of the offeror, the price offered and all other pertinent terms and conditions of the offer. Lessee, for a period of fifteen days after receipt of the notice, shall have the prior and preferred right and option to purchase the lease or part thereof or interest therein, covered by the offer at the price and according to the terms and conditions specified in the offer.

13. No litigation shall be initiated by Lessor with respect to any breach or default by Lessee hereunder, for a period of at least 90 days after Lessor has given Lessee written notice fully describing the breach or default, and then only if Lessee fails to remedy the breach or default, within such period. In the event the matter is litigated and there is a final judicial determination that a breach or default has occurred, this lease shall not be forfeited or cancelled in whole or in part unless Lessee is given a reasonable time after said judicial determination to remedy the breach or default and Lessee fails to do so.

14. Lessor hereby warrants and agrees to defend title conveyed to Lessee hereunder, and agrees that Lessee at Lessees option may pay and discharge any taxes, mortgages or liens existing, levied or assessed on or against the leased premises. If Lessee exercises such option, Lessee shall be subrogated to the rights of the party to whom payment is made, and, in addition to its other rights, may reimburse itself out of any royalties or shut-in royalties otherwise payable to Lessor hereunder. In the event Lessee is made aware of any claim inconsistent with Lessor's title, Lessee may suspend the payment of royalties and shut-in royalties hereunder, without interest, until Lessee has been furnished satisfactory evidence that such claim has been resolved.

15. The parties hereto agree that Lessee shall pay to the owner(s) of the surface estate of the leased premises the sum of $25,000.00 for each drill site constructed on the leased premises, which sum shall represent payment in full for all damages done to said drill site in connection with Lessee's operations thereon, which drill site shall not exceed five (5) acres of land, more or less.

16. Concurrently with Lessor's execution hereof, Lessee shall pay Lessor the sum of $500.00 per net mineral acre of land covered by this lease as bonus consideration for the execution of this lease by Lessor.

17. The parties hereto agree that a Memorandum of Paid Up Oil and Gas Lease may be filed of record for the purpose of providing record notice of the existence of this lease in lieu of recording the executed original hereof.

IN WITNESS WHEREOF, this lease is executed by Lessor on the date set forth in the certificate of acknowledgment below, but shall be effective as of the date first above written.

| Lessor: | Lessee: |
|---|---|
| UP_G_KUK, INC | SCOUT EXPLORATION, J.V. |
| By: Kuk JA Stewart | By: [signature] |
| KUK JA StewART<br>[Print/Type Name, Title] | Wallace L. Hall, Jr. - Joint Venturer<br>[Print/Type Name, Title] |
| PRESIDENT | |

EXHIBIT "A"

Las Colinas

BEING a tract of land situated in the JOSEPH MANGUM SURVEY, ABSTRACT NO. 861, Dallas County, Texas, and being part of two tracts of land described in deed to Jasper Federal Savings and Loan Association, as recorded in Volume 86168, Page 2069, Deed Records, Dallas County, Texas, and being more particularly described as follows:

Look

BEGINNING at a 1/2" diameter iron rod found in the South line of a tract of land described in deed from Ashlin Development Company to Ward Williford, Trustee, as recorded in Volume 88119, Page 0715, Deed Records, Dallas County, Texas, said iron rod also being at the most Northerly Northwest corner of a tract of land described in deed from Gifford-Hill & Co., Inc. to the County of Dallas as recorded in Volume 70009, Page 0319, Deed Records, Dallas County, Texas, said iron rod also being in the West line of Hunter Ferrell Road (a 57.5 foot right-of-way at this point);

THENCE South 1,536.53 feet with the said West line of Hunter Ferrell Road and with the West line of said County of Dallas tract and along a fence line to a 1/2" diameter iron rod found;

THENCE South 45° 03' 05" West 70.65 feet with the Northwest line of said Hunter Ferrell Road and with the Northwest line of said County of Dallas tract and along a fence line to a 1/2" diameter iron rod found, said iron rod also being in the North line of Hunter Ferrell Road (a 60' right-of-way at this point);

THENCE South 89° 59' 05" West, 1,126.74 feet, with the North line of said Hunter Ferrell Road and with the North line of said County of Dallas tract and along a fence line to a 1/2 diameter iron rod found at the Southeast corner of a tract of land described in deed to Jasper Federal Savings and Loan Association, as recorded In Volume 86168, Page 2069, Deed Records, Dallas County, Texas;

THENCE North 00° 19' 26" East 1,594.79 feet, with the East line of said Jasper Federal Savings and Loan Association tract, to a 1/2" diameter iron rod found in the South line of said Ward Williford, Trustee tract;

THENCE South 89° 42' 16" East 1,167.74 feet, with the said South line of Ward Williford, Trustee tract and along a fence line to the PLACE OF BEGINNING and containing 1,864,485 square feet (42.803 acres) of land, more or less.

AFTER RECORDING, PLEASE RETURN TO:

Mr. Ronald O. Holman
Holman Robertson Eldridge
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

Cynthia Figueroa Calhoun

Cynthia Figueroa Calhoun, County Clerk
Dallas County TEXAS
December 06, 2005 08:45:17 AM
FEE: $28.00

200503610909

F

Grantees' Address
6937 Vista Willow
Dallas, Texas 75248

A 5245 0 7.00 DEED 2 08/28/84

WARRANTY DEED
(With Reservation of Right of Repurchase and Right of First Refusal)

THE STATE OF TEXAS §
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF DALLAS §

That LAS COLINAS CORPORATION, a Texas corporation ("Grantor"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other valuable consideration to the undersigned paid by Grantees, hereinafter named, the receipt of which is hereby acknowledged, has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY unto WOODROW & COMPANY [herein referred to as "Grantees" (whether one or more)], subject to the exceptions and reservations stated hereinafter, the following described property (the "Property") to-wit:

LOT 6, BLOCK 8, of COTTONWOOD VALLEY, AREA XV, an addition to the City of Irving, Dallas County, Texas, according to the Final Revised Plat thereof recorded in Volume 79110, Page 1848 of the Map Records of Dallas County, Texas, and according to a Consent to Certificate of Correction and Acceptance of Corrected Preliminary Final Plat-Revised, filed on 1/23/80, recorded in Volume 80017, Page 1, Deed Records, Dallas County, Texas.

TO HAVE AND TO HOLD the above described Property subject to the reservations set forth below and the matters set forth in Exhibit A attached hereto and incorporated herein by reference for all purposes, together with all and singular the rights and appurtenances thereto in anywise belonging, unto Grantees, their heirs, successors and assigns, forever; and Grantor does hereby bind itself, its successors and assigns, to WARRANT AND FOREVER DEFEND all and singular the said premises unto Grantees, their heirs, successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

Grantor hereby reserves the right to repurchase the Property on the terms set forth herein and Grantees for themselves, their heirs, successors and assigns, agree to reconvey the Property to Grantor for a sum equal to the identical purchase price paid by Grantees to Grantor, if Grantees have not obtained approval of their plans and specifications from The Las Colinas Association Architectural Control Committee and substantially commenced construction of an approved structure on said Property in accordance with said approved plans and specifications within six (6) months from the date of this deed. Grantor's right of repurchase under such reservation, and all renewals and extensions thereof, shall be superior to all liens and encumbrances placed on the Property by Grantees. If Grantees fail to satisfy such construction obligation within such six (6) month period, Grantor may exercise its repurchase right by giving Grantees written notice within six (6) months after the end of the initial six (6) month period; i.e., within one (1) year from the date of such deed. Upon the exercise of such repurchase right, Grantees shall, within thirty (30) days after the date that Grantor exercises this right of repurchase: (i) reconvey the Property to Grantor by general warranty deed free of all defects and encumbrances to title except those shown in Schedule B to that certain owners policy of title insurance provided by Grantor to Grantees through Dallas Title Company in connection with Grantees' purchase of the Property, excluding any liens shown therein; and (ii) execute any and all other documents necessary to complete the reconveyance of the Property to Grantor. At the closing of the reconveyance to Grantor, Grantor shall tender to Grantees the full repurchase price (which shall be equal to the price paid by Grantees to Grantor) in cash or by cashier's check or other good funds immediately available to Grantor. Ad valorem taxes and assessments (governmental or otherwise) shall be prorated at closing as of the date of such reconveyance. For purposes of this deed and Grantor's right to repurchase the Property, "substantially commenced construction of an approved structure" shall be deemed to mean the initial grading, setting of forms and completion of all foundation work for the approved structure.

EXHIBIT
E

36168 2069

Grantor hereby further reserves for itself, its successors and assigns, a right of first refusal to purchase the Property upon the terms and conditions more particularly set forth hereinafter. Grantor's right of first refusal under this reservation, and all renewals and extensions thereof, shall be superior to all liens and encumbrances placed on the Property by Grantees. If Grantees, prior to having substantially commenced construction of an approved structure, as defined in the preceding paragraph, receive from a "third party" a bona fide written offer acceptable to Grantees for the purchase of the Property, Grantees shall deliver a true and correct copy of such offer to Grantor within ten (10) days after Grantees' receipt thereof at 5215 North O'Connor Blvd., Williams Square - Central Tower, 15th Floor, Irving, Texas 75039, Attention: President, with a copy to 5215 North O'Connor Blvd., Williams Square - Central Tower, 14th Floor, Irving, Texas 75039, Attention: General Counsel. Grantor shall have thirty (30) days after its actual receipt of such copy of the offer to give Grantees written notice whether Grantor elects to purchase the Property upon the same terms and conditions as contained in the offer. If Grantor does not give notice to Grantees within such thirty (30) day period that Grantor elects to exercise its right of first refusal with respect to the offer, Grantor shall be deemed to have waived the right to do so. Once Grantor waives, or is deemed to have waived, its right of first refusal of the Property, such right of first refusal shall be terminated and deemed to be of no further force and effect as to the Property if Grantees complete the sale contemplated by the offer in strict accordance with the terms and conditions of such offer; otherwise, the terms and conditions of this right of first refusal shall remain in full force and effect and must again be complied with by Grantees in connection with any other sale thereof to or offer by a third party. If Grantor timely gives the required notice that it elects to exercise this right of first refusal, Grantees shall sell the Property to Grantor in accordance with the terms and conditions of the offer. Any sale or transfer of the Property to a third party shall be subject to Grantor's right to purchase the Property from such third party for the price and on the identical terms and conditions contained herein unless Grantees have satisfied the terms of this right of first refusal concerning same. It is further agreed this right of first refusal shall automatically terminate and be of no further force and effect as to the Property upon the substantial commencement of construction of an approved structure on the Property.

EXECUTED this 18th day of August, 1986.

GRANTOR:

LAS COLINAS CORPORATION

ATTEST:

[signature]
B. Carl Klinke, Secretary

BY: [signature]
Ernest O. Perry, Jr., President

THE STATE OF TEXAS §
§
COUNTY OF DALLAS §

This instrument was acknowledged before me on August 18th, 1986, by Ernest O. Perry, Jr., President of Las Colinas Corporation, a Texas corporation, on behalf of said corporation.

[signature]
Notary Public
Notary's Printed Name: CATHY SHARP
My commission expires: 7-31-89

5158 2070

EXHIBIT A TO THE DEED
COTTONWOOD VALLEY, AREA XV, PHASE I

All covenants, restrictions, easements, assessments, and other matters of record in Dallas County, Texas, affecting title to the subject property, including without limitation the following:

1. Covenants, restrictions, easements and assessments set forth in the Declaration of Covenants and Restrictions recorded in Volume 73166, Page 1001, Correction to Declaration recorded in Volume 77154, Page 1096, Second Correction to Declaration recorded in Volume 79122, Page 0749, Third Correction to Declaration recorded in Volume 82071, Page 3244 and Supplementary Declaration No. 15 recorded in Volume 80036, Page 0015, of the Deed Records of Dallas County, Texas.

2. Covenants, restrictions, easements and assessments set forth in the Declaration recorded in Volume 80036, Page 0028, and Corrected Declaration recorded in Volume 80038, Page 1192, of the Deed Records of Dallas County, Texas.

3. Easements and other matters shown in the Final Revised Plat of COTTONWOOD VALLEY, AREA XV, recorded in Volume 79110, Page 1848, of the Map Records of Dallas County, Texas, and according to a Consent to Certificate of Correction and Acceptance of Corrected Preliminary Final Plat-Revised, filed on 1/23/80, recorded in Volume 80017, Page 1, Deed Records, Dallas County, Texas.

4. Taxes and assessments for the year 1986 and subsequent years.

AFTER RECORDING PLEASE RETURN TO:

Woodrow & Company
6937 Vista Willow
Dallas, Texas 75248

35'68 207'

1009

**SCOUT EXPLORATION JV**
5956 SHERRY LANE, STE. 1810
DALLAS, TX 75225

**TEXAS CAPITAL BANK**
DALLAS, TEXAS
32-1797-1110

8/10/2005

PAY TO THE ORDER OF Kuk Ja Stewart $ **1,000.00

One Thousand and 00/100******************************************************************************************** DOLLARS

Kuk Ja Stewart
2028 Sandy Lane
Irving, TX 75060-5639

Different spelling

MEMO Option Fee - J. Mangum Survey, A-861

⑈00001009⑈ ⑆111017979⑆ 1111023782⑈

**SCOUT EXPLORATION JV**

| Kuk Ja Stewart | | 8/10/2005 | 1009 |
|---|---|---|---|
| | Exclusive lease through and including September 13, 2005 | | 1,000.00 |

| Texas Capital Bank 3782 | Option Fee - J. Mangum Survey, A-861 | 1,000.00 |
|---|---|---|

TO: CBM ✓

PR

SE ✓ Copy given to SE on 8/10/05

KUK JA STEWART/OIL

General GAS

Counsel

mm

8/10/05

Scout Exploration Joint Venture
3811 Turtle Creek Blvd.
Dallas, Texas 75219

August 10, 2005

Via Hand Delivery, Return Receipt Requested

Mrs. Kuk Ja Stewart
2028 Sandy Lane
Irving, Texas 75060-5639

Re: Letter of Intent – Oil and Gas Lease, dated June 10, 2005 (the "Letter of Intent") Between Kuk Ja Stewart ("Lessor") and Scout Exploration, J.V. ("Lessee") Covering 33.33 acres / 9.47 acres, J. Mangum Survey, A-861 (the "Property") in Dallas County, Texas

Dear Mrs. Stewart:

Pursuant to the terms of the Letter of Intent, this will confirm Lessee's election to exercise its option to extend the title examination period for an additional 30 days. Enclosed you will find Lessee's check in the amount of $1,000.00 in payment of the option fee. With this extension, Lessor will continue to hold the minerals under the Property for exclusive lease by Lessee through and including September 13, 2005, which is the 90th day following Lessor's execution of the Letter of Intent on June 15, 2005. All other terms and conditions of the Letter of Intent remain intact.

Sincerely,

Scout Exploration, J.V.

By: [signature]
Wallace L. Hall, Jr.,
Its Authorized Representative

✓ cc: Charles B. Mitchell, Esq.
c/o Mr. Sterling Elza
BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, LLP
105 West 7th Street, Suite 200
Fort Worth, Texas 76102-4905

1009

**SCOUT EXPLORATION JV**
5956 SHERRY LANE, STE. 1810
DALLAS, TX 75225

**TEXAS CAPITAL BANK**
DALLAS, TEXAS
32-1797-1110

8/10/2005

TO THE ORDER OF Kuk Ja Stewart $ **1,000.00

One Thousand and 00/100****************************************************************************************** DOLLARS

Kuk Ja Stewart
2028 Sandy Lane
Irving, TX 75060-5639

MEMO Option Fee - J. Mangum Survey, A-861

⑈0000 1009⑈ ⑆111017979⑆ 1111023782⑈

**COUT EXPLORATION JV**

| Kuk Ja Stewart | | 8/10/2005 | 1009 |
|---|---|---|---|
| | Exclusive lease through and including September 13, 2005 | | 1,000.00 |

| Texas Capital Bank 3782 | Option Fee - J. Mangum Survey, A-861 | 1,000.00 |
|---|---|---|

SCOTT K. WILPITZ, CPL

PETROLEUM LANDMAN

7230 STONETRAIL DRIVE
DALLAS, TEXAS 75230
214.696.3997 (OFFICE)
214.673.8719(MOBILE)

May 13, 2005

Mr. Kuk Ja Stewart
2028 Sandy Lane
Irving, Texas 75060-5639

RE: Oil and Gas Lease Proposal
9.47 acres/33.33 acres, J. Mangrum Survey, A-861
Dallas County, Texas

Dear Mr. Stewart:

We have initiated a title review of the above captioned tract of land for the purpose of determining the mineral ownership, and our initial review indicates that you are the owner of a mineral interest underlying said land. The group I am working with is Scout Exploration, J.V. out of Dallas, Texas, and they have identified this area for possible oil and gas drilling opportunities and desire to secure an oil and gas lease on your minerals for the following proposed terms: Five (5) year term, 1/5th royalty and $300 per acre bonus consideration.

Due to the difficult nature of the title in this particular area we have not performed a full title review as of yet, as it will entail considerably more time and expense to make a complete determination of the mineral ownership. Therefore, it is our desire to enter into discussions to see if we can come to an agreement on leasing your minerals before we proceed with any further title work. In addition to the title issues, this area has inherent complications due to the proximity of flood-plain, flood-way and wetlands designations which can often be difficult to manage, but the owners of Scout have worked in these types of areas in the Dallas-Ft.Worth Metroplex and offer an expertise and working knowledge which will be most helpful as we proceed with this project. Their familiarity in real estate and the surface issues related to land development will also prove beneficial. We would greatly appreciate the opportunity to discuss our proposal with you and answer any questions that you might have. I appreciate your consideration to our request and invite you to call me to further discuss our proposal. **The best contact number for me is my cell phone, which is 214.673.8719.**

Very truly yours,

Scott K. Wilpitz

CBM ✓

~~[illegible]~~ _

PAR _

STEWART | REAL ESTATE

Conv w/ client

5/19/05 CBM

**Charles Mitchell**

---

**From:** james stewart [JIMMYSTEWART@peoplepc.com]
**Sent:** Thursday, May 19, 2005 12:57 AM
**To:** Charles B. Mitchell
**Subject:** Another Interested Oil and Gas Co.

'e been meaning to send this letter to you. My mother is in Korea and Kenny and I will discuss this along with other matters.
ıanks.

SCOTT K. WILPITZ, CPL

PETROLEUM LANDMAN

7230 STONETRAIL DRIVE
DALLAS, TEXAS 75230
214.696.3997 (OFFICE)
214.673.8719(MOBILE)

May 13, 2005

Mr. Kuk Ja Stewart
2028 Sandy Lane
Irving, Texas 75060-5639

RE: Oil and Gas Lease Proposal
9.47 acres/33.33 acres, J. Mangrum Survey, A-861
Dallas County, Texas

Dear Mr. Stewart:

We have initiated a title review of the above captioned tract of land for the purpose of determining the mineral ownership, and our initial review indicates that you are the owner of a mineral interest underlying said land. The group I am working with is Scout Exploration, J.V. out of Dallas, Texas, and they have identified this area for possible oil and gas drilling opportunities and desire to secure an oil and gas lease on your minerals for the following proposed terms: Five (5) year term, 1/5th royalty and $300 per acre bonus consideration.

Due to the difficult nature of the title in this particular area we have not performed a full title review as of yet, as it will entail considerably more time and expense to make a complete determination of the mineral ownership. Therefore, it is our desire to enter into discussions to see if we can come to an agreement on leasing your minerals before we proceed with any further title work. In addition to the title issues, this area has inherent complications due to the proximity of flood-plain, flood-way and wetlands designations which can often be difficult to manage, but the owners of Scout have worked in these types of areas in the Dallas-Ft.Worth Metroplex and offer an expertise and working knowledge which will be most helpful as we proceed with this project. Their familiarity in real estate and the surface issues related to land development will also prove beneficial. We would greatly appreciate the opportunity to discuss our proposal with you and answer any questions that you might have. I appreciate your consideration to our request and invite you to call me to further discuss our proposal. **The best contact number for me is my cell phone, which is 214.673.8719.**

Very truly yours,

Scott K. Wilpitz

**Charles Mitchell**

---

**From:** james stewart [JIMMYSTEWART@peoplepc.com]
**Sent:** Monday, April 11, 2005 1:51 AM
**To:** Charles B. Mitchell
**Subject:** 40 Acres

ıave the maps to the property. Hong UK Kim was a very good friend of my mom's and lived with her for 14 years and passed way in April of 2003. The payment is August 6th 2000 and the second payment is April 2001. The land belonged to John L.. ıpton, he passed away and his wife Margaret has or had control of it. She had a stroke in Nov. of 2004 and is confined to a ursing home. Pam, Don's sister has been the problem about releasing the land. Apparently, Don's wife went and talked to Pam, ho then told her the Social Security has or is taken the land for paying her nursing home bills. Pam also stated that the SS has ıy mothers check and will give her share(40) acres if she comes up with a copy of the other two checks, if not they will mail my ıom 5000 dollars. Now what is underlined just transpired over the weekend. I talked to Don Friday night and told him we were oing to file suit against his mother. He said he would testify against her. The check that is in the attachments was written by largaret T. for 2 years of taxes. My mom can't write to well. I told my mother she needs to get the will probated, but believes ter what she heard last night, form Don, that everything will be OK. You can call me or e-mail me to let me know what we need do. One other item, I just want to let you know that I called Jon C. to let him know about the errors in the letter my mom ceived. Don is not a relative and that my mother is keeping the land and building. the letter did not state keeping the land, this reference to turning the JSC over to Kenny.

September 8, 2005
Page 2

---

bcc: Kuk Ja Stewart
2028 Sandy Lane
Irving, Texas 75060

W:\CHARLES\FILES\INDIVIDUAL CLIENTS\STEWART, KUJA [REAL ESTATE 22711]\CORRESPONDENCE\HALL 001.WPD

22711

P.01

TRANSACTION REPORT

SEP-08-2005 THU 03:29 PM

FOR:

| DATE | START | RECEIVER | TX TIME | PAGES | TYPE | NOTE | M# | DP |
|---|---|---|---|---|---|---|---|---|
| SEP-08 | 03:26 PM | ##66528#2148919855 | 2'58" | 9 | SEND | OK | 597 | |

TOTAL : 2M 58S PAGES: 9

**BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.**
Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
* GRANT LISER
RICHARD W. WISEMAN
JOHN W. PROCTOR
** JOHN C. HART
LARRY W. WILSHIRE
SANDRA LISER

OF COUNSEL
CATHERINE JANE ALDER, P.C

* Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JASON C. MOON
JENNIFER L. WILLINGHAM

JESSE M. BROWN (1883-1978)
WILLIAM M. BROWN (1912-1987)

**Name:** Mr. Wallace Hall
**Organization:** Scout Exploration, J.V.
**Fax:** (214) 891-9855
**Phone:**
**From:** Sterling J. Elza, Esq.
**Date:** September 8, 2005
**Subject:** Kuja Stewart
3251.22711

**Pages:** 10 (including fax cover sheet)

Comments: Please see attached.

BROWN, L[illegible], WISEMAN, LISER, PROCTOR & [illegible]T, L.L.P.
Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
* GRANT LISER
RICHARD W. WISEMAN
[illegible]OHN W. PROCTOR
[illegible]HN C. HART
[illegible]RRY W. WILSHIRE
SANDRA LISER

OF COUNSEL
CATHERINE JANE ALDER, P.C

* Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JASON C. MOON
JENNIFER L. WILLINGHAM

JESSE M. BROWN (1883-1978)
WILLIAM M. BROWN (1912-1987)

**Name:** Mr. Wallace Hall
**Organization:** Scout Exploration, J.V.
**Fax:** (214) 891-9855
**Phone:**
**From:** Sterling J. Elza, Esq.
**Date:** September 8, 2005
**Subject:** Kuja Stewart
3251.22711

**Pages:** 10 (including fax cover sheet)

Comments: Please see attached.

---

THE INFORMATION CONTAINED IN THIS FACSIMILE IS LEGALLY PRIVILEGED AND CONFIDENTIAL INFORMATION, WHICH IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR REPRODUCTION OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS MESSAGE IN ERROR, THAT MATERIAL HEREWITH SHOULD BE DESTROYED IMMEDIATELY AND THE SENDER LISTED ABOVE SHOULD BE NOTIFIED BY TELEPHONE AT (817) 332-1391.

---

**Scout Exploration, J.V.**

5956 Sherry Lane, Suite 1810
Dallas, Texas 75225
214.891.0920 (Office)
214.891.9855 (Fax)

June 10, 2005

Mrs. Kuk Ja Stewart
2028 Sandy Lane
Irving, Texas 75060-5639

Re: Letter of Intent- Oil and Gas Lease
33.33 acres / 9.47 acres, J. Mangrum Survey, A-861
Dallas County, Texas

Dear Mrs. Stewart:

This Letter of Intent (LOI) shall serve to set forth the basic terms and conditions under which Lessor and Lessee would desire to enter in to an oil and gas lease (the "Lease") pertaining to the land described below.

**Lessor:** Kuk Ja Stewart

**Lessee:** Scout Exploration, J.V.

**Property Description:** A tract or tracts of land totaling approximately **42.80**+/- acres (comprised of a 33.33 acre tract and a 9.47 acre tract) located in Dallas County, Texas, and being further described on Exhibit "A" attached hereto and being (the "Property").

| | |
|---|---|
| **Bonus Price:** | **$500.00 (Five Hundred Dollars) per net mineral acre** |
| **Royalty:** | **25%** |
| **Term:** | **5 year paid-up lease** |
| **Surface Use Fee:** | **$25,000.00 (payable for each pad built)** |

**Mutually acceptable Lease:** Lessee shall have sixty (60) days from the Lessor's Execution Date of this LOI to negotiate in good faith with Lessor to execute a mutually acceptable Lease.

**Execution of Lease and Title Examination:** Lessee shall have a minimum of sixty (60) days after Lessor's Execution Date to obtain a Mineral Title Report covering the Property. Lessee and Lessor both agree that as long as Lessee is diligently working to

obtain said title report and if overcrowding in the County Clerk's office, or other issues out of Lessee's control prevents Lessee from finishing the reports within said sixty (60) day period, it is herein agreed that Lessee shall have the option and right, but not the obligation, to pay Lessor $1,000.00 for an additional thirty (30) day period within which to complete the title examination. In such event, Lessee agrees to keep Lessor closely apprised of Lessee's progress, and Lessor shall hold the minerals under the Property for exclusive lease by Lessee during such title examination period. Upon final completion of the Mineral Title Report, and if such Mineral Title Report is acceptable to Lessee, then Lessee will submit a formal Lease for execution by Lessor, and pay to Lessor the Lease bonus money due based upon Lessor's net mineral acre interest ownership in the Property as determined by said Mineral Title Report. Payment will be by Sight Draft given to Lessor at the time of execution of the Lease or if Lessor prefers, by company check within 10 days of the completion of the final Mineral Title Report.

**Property Information:** Lessor agrees to provide Lessee access to all information pertinent to the Property in its (or its consultant's) possession, including any and all title information or documentation, site plans, engineering plans, well logs, topographic surveys, existing Surveys and/or Plats of the Property as well as evidence of any past or current mineral lease in the possession of Lessor.

**Representations and Warranties.** Lessor shall make the usual and customary representations and warranties to the Lessee regarding the Property. **Lessor agrees to keep the terms and conditions of this agreement confidential.**

The above proposal is a statement of the terms under which Lessor and Lessee are prepared to enter into a Lease covering the Property, subject to and expressly conditioned upon (1) the execution and delivery of a mutually acceptable Lease and (2) title to the Property being acceptable to Lessee, in Lessee's sole and exclusive opinion. Notwithstanding any provision herein to the contrary, Lessor hereby agrees that while this LOI is in effect they shall negotiate exclusively with Lessee regarding the leasing of Lessor's mineral interest lying under the Property, and Lessor will not negotiate with any third parties during such time period.

If the terms of this LOI are acceptable to you, please sign where indicated below and return a copy of the letter to me so that we may begin our title due diligence. I appreciate your consideration to this proposal and look forward to hearing from you. **If you have any questions please contact Scott K. Wilpitz at 214.673.8719.**

Unless otherwise agreed to in writing this offer shall expire as of 5:00 pm on Thursday June 16, 2005. A signed copy may be faxed by Lessor to at Scout Exploration, J.V., Attn: Wallace Hall, Jr., (214) 891.9855 (fax).

TRANSACTION REPORT

P. 01

JUN-15-2005 WED 09:20 AM

FOR:

| DATE | START | RECEIVER | TX TIME | PAGES | TYPE | NOTE | M# | DP |
|---|---|---|---|---|---|---|---|---|
| JUN-15 | 09:18 AM | 9723139952 | 2'17" | 5 | SEND | OK | 217 | |

TOTAL : 2M 17S PAGES: 5

# Fax

**BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.**
Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
* GRANT LISER
RICHARD W. WISEMAN
JOHN W. PROCTOR
N C. HART
Y W. WILSHIRE
DRA LISER

OF COUNSEL
CATHERINE JANE ALDER, P.C

* Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JASON C. MOON
JONATHAN E. CHEATHAM
JENNIFER L. WILLINGHAM

JESSE M. BROWN (1883-1978)
WILLIAM M. BROWN (1912-1987)

**Name:** Jimmy Stewart for Kuja Stewart
**Organization:**
**Fax:** (972) 313-9952
**Phone:**
**From:** Charles B. Mitchell, Jr., Esq.
**Date:** June 15, 2005
**Subject:** Kuja Stewart
Our File No.: 3251.22711

**Scout Exploration, J.V.**

5956 Sherry Lane, Suite 1810
Dallas, Texas 75225
214.891.0920 (Office)
214.891.9855 (Fax)

June 10, 2005

Mrs. Kuk Ja Stewart
2028 Sandy Lane
Irving, Texas 75060-5639

Look Different spelling

Re: Letter of Intent- Oil and ~~Gas Lease~~
33.33 acres / 9.47 acres, J. Mangrum Survey, A-861
Dallas County, Texas

Dear Mrs. Stewart:

This Letter of Intent (LOI) shall serve to set forth the basic terms and conditions under which Lessor and Lessee would desire to enter in to an oil and gas lease (the "Lease") pertaining to the land described below.

**Lessor:** Kuk Ja Stewart

**Lessee:** Scout Exploration, J.V.

**Property Description**: A tract or tracts of land totaling approximately **42.80**+/- acres (comprised of a 33.33 acre tract and a 9.47 acre tract) located in Dallas County, Texas, and being further described on Exhibit "A" attached hereto and being (the "Property").

**Bonus Price:** **$500.00 (Five Hundred Dollars) per net mineral acre**
**Royalty:** **25%**
**Term:** **5 year paid-up lease**
**Surface Use Fee:** **$25,000.00 (payable for each pad built)**

**Mutually acceptable Lease**: Lessee shall have sixty (60) days from the Lessor's Execution Date of this LOI to negotiate in good faith with Lessor to execute a mutually acceptable Lease.

**Execution of Lease and Title Examination**: Lessee shall have a minimum of sixty (60) days after Lessor's Execution Date to obtain a Mineral Title Report covering the Property. Lessee and Lessor both agree that as long as Lessee is diligently working to

obtain said title report and if overcrowding in the County Clerk's office, or other issues out of Lessee's control prevents Lessee from finishing the reports within said sixty (60) day period, it is herein agreed that Lessee shall have the option and right, but not the obligation, to pay Lessor $1,000.00 for an additional thirty (30) day period within which to complete the title examination. In such event, Lessee agrees to keep Lessor closely apprised of Lessee's progress, and Lessor shall hold the minerals under the Property for exclusive lease by Lessee during such title examination period. Upon final completion of the Mineral Title Report, and if such Mineral Title Report is acceptable to Lessee, then Lessee will submit a formal Lease for execution by Lessor, and pay to Lessor the Lease bonus money due based upon Lessor's net mineral acre interest ownership in the Property as determined by said Mineral Title Report. Payment will be by Sight Draft given to Lessor at the time of execution of the Lease or if Lessor prefers, by company check within 10 days of the completion of the final Mineral Title Report.

**Property Information**: Lessor agrees to provide Lessee access to all information pertinent to the Property in its (or its consultant's) possession, including any and all title information or documentation, site plans, engineering plans, well logs, topographic surveys, existing Surveys and/or Plats of the Property as well as evidence of any past or current mineral lease in the possession of Lessor.

**Representations and Warranties.** Lessor shall make the usual and customary representations and warranties to the Lessee regarding the Property. **Lessor agrees to keep the terms and conditions of this agreement confidential.**

The above proposal is a statement of the terms under which Lessor and Lessee are prepared to enter into a Lease covering the Property, subject to and expressly conditioned upon (1) the execution and delivery of a mutually acceptable Lease and (2) title to the Property being acceptable to Lessee, in Lessee's sole and exclusive opinion. Notwithstanding any provision herein to the contrary, Lessor hereby agrees that while this LOI is in effect they shall negotiate exclusively with Lessee regarding the leasing of Lessor's mineral interest lying under the Property, and Lessor will not negotiate with any third parties during such time period.

If the terms of this LOI are acceptable to you, please sign where indicated below and return a copy of the letter to me so that we may begin our title due diligence. I appreciate your consideration to this proposal and look forward to hearing from you. **If you have any questions please contact Scott K. Wilpitz at 214.673.8719.**

Unless otherwise agreed to in writing this offer shall expire as of 5:00 pm on Thursday June 16, 2005. A signed copy may be faxed by Lessor to at Scout Exploration, J.V., Attn: Wallace Hall, Jr., (214) 891.9855 (fax).

LESSEE:
**Scout Exploration, J.V.**

By: ______________________

Name: Scott K. Wilpitz
Title: Land Representative for Scout Exploration, J.V.
Lessee's Execution Date: JUNE 13, 2005

LESSOR:

By: ______________________

Name: Kuk Ja Stewart
Title: Owner
Lessor's Execution Date: ______________________, 2005



File No. 106531-CHP
KW #24

EXHIBIT "A"

BEING a tract of land situated in the JOSEPH MANGUM SURVEY, ABSTRACT NO. 881, Dallas County, Texas, and being part of two tracts of land described in deed to Jasper Federal Savings and Loan Association, as recorded in Volume 88188, Page 2069, Deed Records, Dallas county, Texas, and being more particularly described as follows:

BEGINNING at a 1/2" diameter iron rod found in the South line of a tract of land described in deed from Ashlin Development Company to Ward Williford, Trustee, as recorded in Volume 88119, Page 0718, Deed Records, Dallas County, Texas, said iron rod also being at the most Northerly Northwest corner of a tract of land described in deed from Gifford-Hill & Co., Inc. to the County of Dallas as recorded in Volume 70009, Page 0319, Deed Records, Dallas County, Texas, said iron rod also being in the West line of Hunter Ferrell Road (a 57.5 foot right-of-way at this point);

THENCE SOUTH, 1538.53 feet, with the said West line of Hunter Ferrell Road and with the West line of said County of Dallas tract and along a fence line, to a 1/2" diameter iron rod found;

THENCE South 45 degrees 03 minutes 05 seconds West, 70.65 feet, with the Northwest line of said Hunter Ferrell Road and with the Northwest line of said County of Dallas tract and along a fence line, to a 1/2" diameter iron rod found, said iron rod also being in the North line of Hunter Ferrell Road (a 60' right-of-way at this point);

THENCE South 89 degrees 59 minutes 05 seconds West, 1128.74 feet, with the North line of said Hunter Ferrell Road and with the North line of said County of Dallas tract and along a fence line, to a 1/2" diameter iron rod found at the Southeast corner of a tract of land described in Deed to Jasper Federal Savings and Loan Association, as recorded in Volume 88188, Page 2069, Deed Records, dallas county, Texas;

THENCE North 00 degrees 19 minutes 26 seconds East, 1594.79 feet, with the East line of said Jasper Federal Savings and Loan Association tract, to a 1/2" diameter iron rod found in the South line of said Ward Williford, Trustee tract;

THENCE South 89 degrees 42 minutes 18 seconds East, 1187.74 feet, with the said South line of Ward Williford, Trustee tract and along a fence line, to the PLACE OF BEGINNING and containing 1,864,485 square feet (42.803 acres) of land, more or less.

Reminder 6/16/05, 5:[illegible] [illegible] to

CBM: Kuja's signature page is attached. Thank you. [illegible]

Return same, Thank you. [illegible]

TO: CBM ✓ PR

KUJA STEWART / REAL ESTATE corr/client [illegible] 6/15/05

6/17/05

Patty Listen to your voice mail! Done [illegible] pa.

signature page -

# Fax

**BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.**
Attorneys at Law

[illegible] DEAN
JAMES T. BLANTON
* GRANT [illegible]
RICHARD W. WISEMAN
JOHN W. PROCTOR
** JOHN C. HART
LARRY W. WILSHIRE
SANDRA LISER

OF COUNSEL
CATHERINE JANE ALDER, P.C

* Also licensed to practice in Louisiana
** Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE [illegible]
FORT WORTH, TEXAS [illegible]

TELEPHONE (817) [illegible]
METRO (817) [illegible]
FAX (817) [illegible]-2437

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY [illegible]
JASON C. MOON
JONATHAN H. CHEATHAM
JENNIFER L. WILLINGHAM

JESSE M. BROWN ([illegible]-1978)
WILLIAM M. BROWN ([illegible])

**Name:** Jimmy Stewart for Kuja Stewart
**Organization:**
**Fax:** (972) 313-9952
**Phone:**
**From:** Charles B. Mitchell, Jr., Esq.
**Date:** June 15, 2005
**Subject:** Kuja Stewart
Our File No.: 3251.22711

**Pages:** 5 (including fax cover sheet)

Comments:

Dear Jimmy:

Per our conversation this morning, attached is the facsimile for your mother. Please give it to her as soon as possible as there is a deadline on this proposal.

Thank you.

Marcia Mitchell
Legal Secretary for Charles B. Mitchell, Jr.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS LEGALLY PRIVILEGED AND CONFIDENTIAL INFORMATION, WHICH IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR REPRODUCTION OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS MESSAGE IN ERROR, THAT MATERIAL HEREWITH SHOULD BE DESTROYED IMMEDIATELY AND THE SENDER LISTED ABOVE SHOULD BE NOTIFIED BY TELEPHONE AT (817) 332-1391.

MATERIAL HEREWITH SHOULD BE DESTROYED IMMEDIATELY AND ... TELEPHONE AT (...) ...

JUN-15-2005 WED 09:18 AM FAX NO. P. 04

**LESSEE:**
**Scout Exploration, J.V.**

By: [signature]

Name: Scott K. Wilpitz
Title: Land Representative for Scout Exploration, J.V.
Lessee's Execution Date: June 13, 2005

**LESSOR:**

By: [signature]

Name: Kuk Ja Stewart
Title: Owner
Lessor's Execution Date: 6-15-05, 2005

Page 3 of 3

Did she
execute the
retainer
agreement.

PATTY: I'LL ADD A
LINE IN THE LETTER
ONCE WE ADD A
RETAINER AGREEMENT.

# SEISMIC PERMIT REQUEST

~~January 9, 2007~~
September 27 2007

STEWART KUK JA
2028 SANDY LANE
IRVING, TEXAS 75060-5639

Project: West Fork
Permit No: 861-001

Basin Geophysical, on behalf of Dale Resources, requests your permission to conduct a seismic survey across property owned and /or leased by you in Dallas County, TX. being described below, and including all minerals owned by you within the boundary of our project.

Therefore your permission is respectfully requested subject to the following conditions provided herein. This agreement shall be for 6 Months from the date of your execution below.

With your execution below signifying your consent to this request, this will serve as a record of your consent. Also, please list under "Conditions" any locked gates, water wells, and/or other concerns you may have to assist us in conducting our operations with the least amount of inconvenience to you.

Land Description
Tract or parcel of land lying and being situated in Joseph Mangrum, Survey A-861 Tract 1, 33.33 Acres, Tract 2, 9.47 Acres in Dallas County, Texas.

**Total Acres:** See attached plat.

In the event we conduct our operations across your property, we agree to pay $25.00 for each source point.

| **Total Check: $ 000.00** | **Check #:** |
|---|---|

**Conditions:** Kuk J Stewart

This survey will consist of surveying and lying of seismic recording devices (cables and geophones) and using a weight drop for energy source. We further indemnify and hold you harmless from and against all actions, suits, claims and demands whatsoever that may arise from our work by virtue of your permission granted herein. In the event of cancellation of the seismic work described above, or if this property is not crossed, this contract is null & void and payment neither will be made nor be due.
Operations will be conducted in accordance with good standard practice and in a prudent and safe workmanlike manner.

Please sign, date, and return to us as soon as possible. We appreciate your cooperation.

Landowner: Kuk J Stewart
Date: September 27, 2007

SS# or Tax ID# 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

Landowner: ____________________

SS# or Tax # ____________________

Very Truly Yours

By: ____________________

CANDLEWOOD SUITES
Attn: JODY KONSIRE # 115
2221 BROOKHOLLOW PLAZA DR.
ARLINGTON,TEXAS 76006

Permit Agent: Fred Nicholson
**Cell # 903-570-2995**

your copy

**GEOPHYSICAL**

**P. O. BOX 122646**
**rt Worth, TX 76121**
**fice: (817) 944-3859 or (817) 944-4750** **Fax: (866) 462-4198**

**Prospect: Willis 3D**
**Date: January 6, 2011**

Dear Landowner:

Dawson Geophysical Co. will be conducting a 3-D seismic geophysical survey (i.e., mapping beneath the earth's surface) in your area in the near future. The purpose of the survey is to create a three dimensional image that will aid in the oil and gas exploration process.

A seismic survey is a safe and time-tested process. In urban environments, vibrator energy sources mounted on vehicles are used to create seismic energy. Similar to the way an echo bounces off the walls of a canyon, this seismic energy bounces back from geological formations deep within the earth, providing data which facilitates horizontal drilling. The vehicles are present in the neighborhoods for a very brief amount of time, preventing any interruption of daily activities.

Perhaps the most visible evidence that a survey will be taking place is the laying of a cable line that will run along the curb in the city's right of way with an occasional small receiving device placed in the grass next to the curb (where possible). The cable is approximately the size of a household extension cord and will be around or near your property for approximately fourteen (14) to thirty (30) days (weather permitting). This cable carries no current nor does it penetrate the surface of the ground.

Client, Chesapeake Operating, Inc. (and/or its partners), is the record owner or assignee of an oil and gas lease eath your property. These oil and gas leases grant the right to conduct the planned survey. Our operations will be handled in a prudent and careful manner. We agree to indemnify and hold you harmless from all liability and claims, if any, which may result from our upcoming seismic operations.

This is a letter of notification. For more information on how the survey will be conducted please feel free to give us a call at our field office: (817) 944-3859 or (817) 944-4750.

Respectfully,

Jeff Seay
Permit Agent

(817) 944-3859 or (817) 944-4750

Dawson Geophysical Co