---

## OWNER POLICY OF TITLE INSURANCE

---

**\* SCHEDULE B \***

CH/NP/GPB/sf

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses) that arise by reason of the terms and conditions of the leases or easements insured, if any, shown in Schedule A and the following matters:

1.  (This item intentionally deleted)

2.  Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements.

3.  Homestead or community property or survivorship rights, if any, of any spouse of any insured.

4.  Any title or rights asserted by anyone, including but not limited to, persons, the public, corporations, governments or other entities,

    a. to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or
    b. to lands beyond the line of the harbor or bulkhead lines as established or changed by any government, or
    c. to filled-in lands, or artificial islands, or
    d. to statutory water rights, including riparian rights, or
    e. to the area extending from the line of mean low tide to the line of vegetation or the right of access to that area or easement along and across that area.

5.  Standby fees, taxes and assessments by any taxing authority for the year 1993 and subsequent years, and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership.

SEE SCHEDULE B CONTINUED

---

Issued by:
SAFECO LAND TITLE OF DALLAS

TRACT II:

BEING a 8.00 acre-tract of land out of the JOSEPH MANGUM SURVEY, Abstract No. 861, Dallas County, Texas; said tract being more particularly described by metes and bounds as follows:

BEGINNING at a point for corner in the North Right-of-Way line of Hunter-Ferrell Road (40' to centerline at said point), said point of beginning being a distance of 40.00 feet North and 1612.2 feet East from the South-west corner of the Joseph Mangum Survey, Abstract No. 861;

THENCE North 00°03'11" East a distance of 285 feet to a point for corner;

THENCE North 89°43'11" East a distance of 1222.74 feet to a point for corner;

THENCE South 00°03'11" West a distance of 285.00 feet to a point for corner in the north Right-of-Way line of hunter-Ferrell Road;

THENCE South 89°43'11" West along the North Right-of-Way line of Hunter-Ferrell Road, a distance of 1222.74 feet to the POINT OF BEGINNING, and containing 348,475.0026 square feet or 8.00 acres of land.

This conveyance is made subject to the following matters, to the extent same are in effect at this time; Any and all restrictions, covenants and easements, if any, relating to the hereinabove described property, but only to the extent they are still in effect, shown of record in herein-above mentioned County and State, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent that they are still in effect, relating to the hereinabove described property; and,

(1)  Any portion of the property described herein within the limits or boundaries of any public or private roadway and/or highway.

(2)  Rights of parties in possession.

(3)  Restrictions and requirements of the City of Irving and/or other governmental entities regarding construction in flood plain areas.

(4)  Easement and right-of-way dated April 20, 1937, recorded in Vol. 2018, Page 80, Deed Records of Dallas County, Texas; from Gifford-Hill & Co., to Texas Power & Light Company, as same may affect the subject property.

Notwithstanding the foregoing and without limiting the same, this conveyance is subject to all matters of record.

This conveyance is made and accepted subject to any and all restriction of record in Dallas County, Texas, effecting any or all of said tracts.

TO HAVE AND TO HOLD the above described premises together with all rights and appurtenances thereunto in any wise belonging, unto said grantees, their heirs, executors and administrators.

SEE TRACT II ATTACHMENT "EXHIBIT A"

93243 6436

Scanned by CamScanner

## OWNER POLICY OF TITLE INSURANCE

### * SCHEDULE B CONTINUED *

6. The following matters and all terms of the documents creating or offering evidence of the matters. (We must insert matters or delete this exception.):

a. Easement granted by Gifco Properties, Inc. to Tommy R. Barton, et al, as evidenced by the instrument dated August 5, 1980 recorded in Volume 84211, Page 350, of the Deed Records, Dallas County, Texas.

b. The rights of tenants in possession under the terms of any unrecorded leases or rental agreements.

c. All visible and apparent easements and all underground easements the existence of which may arise by virtue of unrecorded grant or use.

d. Any portion of the subject property lying within the boundaries of any road or roadway, public or private.

# FedEx

## Express

**COPY**

Document Control

THU - 27 AUG AA
STANDARD OVERNIGHT

FedEx
TRK# 0215  **8693 5095 5259**

97005
OR-US
PDX

**XH BNOA**

**FedEx** US Airbill    FedEx Tracking Number  **8693 5095 5259**
Express

1 From  This portion can be removed for Recipient's records.

Date _____    FedEx Tracking Number  **869350955259**

Sender's Name  UNITED STATES BANKRUPTCY COURT

District of Delaware

Company  EPIQ BANKRUPTCY SOLUTIONS, LLC

Address  757 3RD AVE

City  NEW YORK    State  NY    ZIP  10017-2013

2 Your Internal Billing Reference  ALS, AW1, DBS, KOR, FHA

3 To

Recipient's Name  EPIQ BANKRUPTCY SOLUTIONS    Phone  646 282 2500

Company  10300 SW ALLEN BLVD    **RECEIVED**

Recipient's Address  EPIQ CLAIM PROCESSING    **AUG 27 2015**

Address    **LEGAL SERVICES**

City  BEAVERTON    State  OR    ZIP  97005

USA    0401528255

**8693 5095 5259**

fedex.com 1.800.GoFedEx 1.800.463.3339

4a Express Package Service
- FedEx Priority Overnight
- FedEx Standard Overnight
- FedEx First Overnight
- FedEx 2Day
- FedEx Express Saver

4b Express Freight Service
- FedEx 1Day Freight
- FedEx 2Day Freight

5 Packaging
- FedEx Envelope
- FedEx Pak
- FedEx Box
- FedEx Tube
- Other

6 Special Handling
- SATURDAY Delivery
- HOLD Weekday
- HOLD Saturday

7 Payment  Bill to:
- Sender
- Recipient
- Third Party
- Credit Card
- Cash/Check

Total Packages    Total Weight

8 Residential Delivery Signature Options
- No Signature Required
- Direct Signature
- Indirect Signature

**519**

Recipient's Copy

# **Exhibit D**

*Debtors' Fourteenth Omnibus (Substantive) Objection to Certain Substantive Duplicate, No Liability, and No Claim Asserted Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [Bankr. D.I. 4050]

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | **Objection Deadline: April 16, 2015 at 4:00 p.m.** |
|  | ) | **Hearing Date: May 4, 2015 at 9:30 a.m.** |

## DEBTORS' FOURTEENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO (CERTAIN SUBSTANTIVE DUPLICATE, NO LIABILITY, AND NO CLAIM ASSERTED) CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003, AND 3007, AND LOCAL BANKRUPTCY RULE 3007-1

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this fourteenth objection to claims (this "Objection"), pursuant to which the Debtors request the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) seeking to disallow each of the claims (the "Disputed Claims") identified on **Exhibit 1** to **Exhibit A**, **Exhibit 2** to **Exhibit A** and **Exhibit 3** to **Exhibit A**, each attached hereto and as discussed in further detail below, and (b) authorizing Epiq Bankruptcy Solutions, LLC (the "Claims Agent"), to expunge each of the Disputed Claims from the official register maintained by the Claims Agent (the "Claims Register"). In support of this Objection, the Debtors rely on the *Declaration of Steven R. Kotarba, Managing Director with Alvarez & Marsal North America, LLC, in Support of the Debtors' Fourteenth Omnibus (Substantive) Objection to (Certain Substantive Duplicate, No Liability, and No Claim Asserted) Claims Pursuant to*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local
Bankruptcy Rule 3007-1 (the "Kotarba Declaration"). This Objection complies in all respects
with rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States
Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), as modified by
this Court.[2]  In further support of this Objection, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended
Standing Order of Reference from the United States District Court for the District of Delaware,
dated February 29, 2012*.  This matter is a core proceeding within the meaning of 28 U.S.C.
§ 157(b)(2), and the Debtors consent pursuant to Local Bankruptcy Rule 9013-1(f) to the entry of
a final order by the Court in connection with this Objection to the extent that it is later
determined that the Court, absent consent of the parties, cannot enter final orders or judgments in
connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Objection are section 502(b) of
title 11 of the United States Code (the "Bankruptcy Code"), rules 3001, 3003, and 3007 of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule
3007-1.

---

[2]     On October 30, 2014, the Debtors filed a motion seeking a waiver of Local Bankruptcy Rule 3007-1(f)(i),
allowing the Debtors to base substantive omnibus claim objections on no more than 500 claims per each such
omnibus claim objection [D.I. 2659]. On November 19, 2014, the Court entered an order granting the waiver
[D.I. 2814].

On November 21, 2014, the Debtors filed a motion seeking a waiver of Local Bankruptcy Rules 3007-1 and
3007-2, allowing the Debtors to use, at their discretion, a Custom Notice instead of a general notice and service
of all of the exhibits filed with an omnibus objection to claims to every claimant whose claim is objected to in
each objection [D.I. 2849].  On December 10, 2014, the Court entered an order granting the waiver [D.I. 2963].

## Relief Requested

4.     By this Objection, the Debtors seek entry of the Order disallowing each of the
claims identified below in full and authorizing the Debtors to expunge such claims from the
Claims Register:

(a)     **Exhibit 1** to **Exhibit A**, each of which represents a Proof of Claim (as
defined herein) filed by an individual bondholder that is substantively
duplicative of another claim filed on account of the same bond indenture,
but filed by the indenture trustee for the bond (the "Bondholder Duplicate
Claims");

(b)     **Exhibit 2** to **Exhibit A**, each of which represents a Proof of Claim
asserting a claim for which the Debtors believe they are not liable based
on the supporting documentation provided in the Proof of Claim and a
reasonable review of the Debtors' books and records.  Consequently, the
Debtors believe they do not have any liability on account of each such
Proof of Claim (the "No Liability Claims");

(c)     **Exhibit 3** to **Exhibit A**, each of which represents a Proof of Claim
asserting a claim in the liquidated amount of $0. Consequently, the
Debtors believe they do not have any liability on account of each such
Proof of Claim (the "No Claim Asserted Claims").[3]

## Background

5.     On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary
petition with the Court under the Bankruptcy Code.  The Debtors are operating their businesses
and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of
the Bankruptcy Code.  The Court has entered a final order for joint administration of these
chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United
States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of
unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas
Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor

---

[3]     Per Local Rule 3007-1(e)(iv), images of the Proofs of Claim relating to the No Liability Claims will be
submitted to the Court on or before April 20, 2015.

subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

6.     On June 30, 2014, the Debtors filed their schedules of assets and liabilities (the "Schedules") and statements of financial affairs ("Statements" and together, with the Schedules, the "Schedules and Statements") [D.I. 1237–1307, 1319–1329, 1331–1343, 1345]. On September 26, 2014, the Debtors filed their amended Schedules and Statements [D.I. 2146-2216], addressing certain discrete issues.

7.     On May 2, 2014, the Court entered an order establishing October 27, 2014, at 5:00 p.m. (prevailing Eastern Time) (the "Customer Claims Bar Date") as the final date and time for certain customer claimants holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim (the "Customer Proofs of Claim") in these chapter 11 cases and approving the form and manner of notice of the Customer Claims Bar Date [D.I. 307].

8.     Written notice of the Customer Claims Bar Date was mailed to current and certain former customers of the Debtors.[4] In addition to mailing such actual notice, the Debtors also

---

[4]     The procedures for notifying the Debtors' current and former customers are set forth in the *Motion of Energy Future Holdings Corp., et al., for Entry of (A) an Order Authorizing the Debtors to (I) Maintain and Administer Customer Programs and Customer Agreements, (II) Honor Prepetition Obligations Related Thereto, (III) Pay Certain Expenses on Behalf of Certain Organizations, (IV) Fix the Deadline to File Proofs of Claim for Certain Customer Claims, and (V) Establish Procedures for Notifying Customers of Commencement of the Debtors' Chapter 11 Cases, Assumption of Customer Agreements, and the Bar Date for Customer Claims and (B) an Order Authorizing Certain of the Debtors to Assume the Customer Agreements* [D.I. 31].

published notice of the Customer Claims Bar Date in *The Wall Street Journal*, *USA Today*, *The Dallas Morning News*, *Houston Chronicle*, *Corpus Christi Caller Times*, *Fort Worth Star-Telegram*, and *Waco Tribute Herald*.

9. On August 18, 2014, the Court entered an order (the "General Bar Date Order") establishing October 27, 2014, at 5:00 p.m. (prevailing Eastern Time) (the "General Bar Date") as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim in these chapter 11 cases (the "Non-Customer Proofs of Claim" and, together with the Customer Proofs of Claim, the "Proofs of Claim"), except for claims specifically exempt from complying with the General Bar Date as set forth in the General Bar Date Order, and approving the form and manner of notice of the General Bar Date [D.I. 1866].

10. Written notice of the General Bar Date was mailed to, among others, all known creditors and other known holders of claims against the Debtors as of the date of entry of the General Bar Date Order, including all entities listed in the Schedules as holding claims against the Debtors, and to all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the General Bar Date Order.  In addition to mailing such actual notice, the Debtors also published notice of the General Bar Date in more than 200 publications nationwide, as detailed in Exhibit 4 to the Bar Date Order.

11. To date, over 10,000 Proofs of Claim have been filed in these chapter 11 cases.

**Basis for Objection**

12. Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  The burden of proof for determining the validity of Claims rests

on different parties at different stages of the objection process.   As explained by the United

States Court of Appeals for the Third Circuit:

> The burden of proof for claims brought in the bankruptcy court
> under 11 U.S.C.A. § 502(a) rests on different parties at different
> times.  Initially, the claimant must allege facts sufficient to support
> the claim.  If the averments in his filed claim meet this standard of
> sufficiency, it is '*prima facie*' valid [citations omitted].  In other
> words, a claim that alleges facts sufficient to support legal liability
> to the claimant satisfies the claimants' initial obligation to go
> forward.  The burden of going forward then shifts to the objector to
> produce evidence sufficient to negate the *prima facie* validity of
> the filed claim. . . .  In practice, the objector must produce evidence
> which, if believed, would refute at least one of the allegations that
> is essential to the claim's legal sufficiency.   If the objector
> produces sufficient evidence to negate one or more of the sworn
> facts in the proof of claim, the burden reverts to the claimant to
> prove the validity of the claim by a preponderance of the evidence.

*In re Allegheny Int'l Inc.,* 954 F.2d 167, 173-74 (3d. Cir. 1992) (citation omitted).  Once the

*prima facie* validity of a Claim is rebutted, "it is for the claimant to prove his claim, not for the

objector to disprove it."   *In re Kahn,* 114 B.R. 40, 44 (Bankr. S.D.N.Y. 1990) (citations omitted).

13.     A chapter 11 debtor "has the duty to object to the allowance of any claim that is

improper."   *Int'l Yacht & Tennis, Inc. v. Wasserman Tennis, Inc. (In re Int'l Yacht & Tennis,*

*Inc.*), 922 F.2d 659, 661-62 (11th Cir. 1991); *see also* 11 U.S.C. §§ 704(a)(5), 1106(a)(1), and

1107(a).

## I.       Bondholder Duplicate Proofs of Claim.

14.     Upon review of the Proofs of Claim filed against the Debtors in these chapter 11

cases, the Debtors have identified 18 Bondholder Duplicate Claims listed on **Exhibit 1** to

**Exhibit A**, in the aggregate claimed amount of $135,271.03.  The Bondholder Duplicate Claims

have each been filed by an individual bondholder on account of one or more bonds they hold and

are each duplicative of another Proof of Claim filed by the indenture trustee for the same

underlying bond(s).  The indenture trustee is the appropriate party to file a Proof of Claim for a

bond and, as such, the duplicate Proofs of Claim filed by individual bondholders should be expunged.  Failure to disallow the Bondholder Duplicate Claims will result in double recoveries to the claimants.  Moreover, disallowance of these claims will enable the Claims Register to reflect more accurately the claims asserted against the Debtors.  Accordingly, the Debtors object to the allowance of the Bondholder Duplicate Claims and request that such Bondholder Duplicate Claims be disallowed in their entirety and expunged.

15.     Any disallowance or expungement of the Bondholder Duplicate Claims will not affect the claims set forth under the column heading "Remaining Claims" on **Exhibit 1** to **Exhibit A**, which will remain on the Claims Register until withdrawn by the relevant claimants or disallowed by the Court, subject to the Debtors' right to object in the future on any grounds permitted by bankruptcy or nonbankruptcy law.  *See generally* 11 U.S.C. § 502(a).

## II.     No Liability Proofs of Claim.

16.     Upon review of the Proofs of Claim filed against the Debtors in these chapter 11 cases, the Debtors have identified 61 No Liability Claims listed on **Exhibit 2** to **Exhibit A**, in the aggregate claimed amount of $1,806,589,934.50.  Each of the No Liability Claims reflects a Proof of Claim that asserts a claim for which the Debtors do not believe they are liable, based on the supporting documentation provided in the Proof of Claim and a reasonable review of the Debtors' books and records.  After reasonable efforts, the Debtors have been unable to locate any documentation that would substantiate the No Liability Claims, whether in full or in part.  The No Liability Claims therefore fail to provide *prima facie* evidence of the validity and amount of the Proof of Claim they assert, as required by section 502 of the Bankruptcy Code and Bankruptcy Rule 3001(f).

### III.    No Claim Asserted Proofs of Claim.

17.    Upon review of the Proofs of Claim filed against the Debtors in these chapter 11 cases, the Debtors have identified 34 No Claim Asserted Claims listed on **Exhibit 3** to **Exhibit A**, in the aggregate claimed amount of $0.  Each of the No Claim Asserted Claims reflects a Proof of Claim that asserts a claim in the liquidated amount of $0.  Therefore, the Debtors believe each of the claimants intended to indicate that they do not believe they hold a claim against the Debtors.  Nonetheless, in an abundance of caution, the Debtors reviewed their books and records and, after reasonable efforts, have been unable to locate any documentation that would indicate that one or more Debtors is liable under the No Claim Asserted Claims.

18.    For all of the foregoing reasons, the Debtors object to the allowance of the Disputed Claims and request that such Disputed Claims be disallowed in their entirety and expunged.

### Reservation of Rights

19.    Nothing contained in this Objection or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity of any particular claim (including the Proofs of Claim) against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim (including the Proofs of Claim) on any grounds; (c) a promise or requirement to pay any particular claim (including the Proofs of Claim); (d) an implication or admission that any particular claim (including the Proofs of Claim) is of a type specified or defined in this Objection; (e) an admission by the Debtors that any contract or lease is executory or unexpired, as applicable; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (g) a request or authorization to assume or reject any agreements under section 365 of the Bankruptcy Code;

(h) a waiver of any party's rights to assert that any other party is in breach or default of any agreement; or (i) an admission that any contract or lease is integrated with any other contract or lease.

20.     The Debtors hereby reserve their right to amend, modify, and/or supplement this Objection, including to object to any of the Disputed Claims listed on **Exhibit 1**, **Exhibit 2**, or **Exhibit 3** to **Exhibit A** on any additional grounds, prior to the hearing before the Court on this Objection, if any (the "Hearing") and nothing in this Objection shall affect the Debtors' right to object to the Disputed Claims at a future date on a basis other than as set forth in this Objection.

**Notice**

21.     The Debtors shall provide notice of this Objection on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second

lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) the

claimants that filed the Disputed Claims. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

22.     No prior request for the relief sought in this Objection has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:   April 2, 2015

/s/  Tyler D. Semmelman

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Tyler D. Semmelman (No. 5386)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:           collins@rlf.com
                 defranceschi@rlf.com
                 madron@rlf.com
                 semmelman@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:           edward.sassower@kirkland.com
                 stephen.hessler@kirkland.com
                 brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:           james.sprayregen@kirkland.com
                 marc.kieselstein@kirkland.com
                 chad.husnick@kirkland.com
                 steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Objection Deadline:  April 16, 2015 at 4:00 p.m.** |
|  | ) | **Hearing Date:  May 4, 2015 at 9:30 a.m.** |
|  | ) |  |

### NOTICE OF "DEBTORS' FOURTEENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO (CERTAIN SUBSTANTIVE DUPLICATE, NO LIABILITY, AND NO CLAIM ASSERTED) CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003, AND 3007, AND LOCAL BANKRUPTCY RULE 3007-1" AND HEARING THEREON

PLEASE TAKE NOTICE THAT, on April 2, 2015, the above-captioned debtors and debtors in possession (the "Debtors") filed the **Debtors' Fourteenth Omnibus (Substantive) Objection to (Certain Substantive Duplicate, No Liability, and No Claim Asserted) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1** (the "Objection") with the United States Bankruptcy Court for the District of Delaware, which seeks to alter the rights of the parties set forth in the Objection.

PLEASE TAKE FURTHER NOTICE that, responses, if any, to the Objection must be in writing, filed with the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, and served upon and received by the undersigned counsel to the Debtors on or before **April 16, 2015 at 4:00 p.m. (EDT)**.

PLEASE TAKE FURTHER NOTICE that a hearing on the Objection will be held before The Honorable Christopher S. Sontchi, United States Bankruptcy Judge, United States Bankruptcy Court, 824 North Market Street, 5th Floor, Courtroom 6, Wilmington, Delaware 19801 on **May 4, 2015 at 9:30 a.m. (EDT)**.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED BY THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.

Dated:   April 2, 2015
        Wilmington, Delaware

              */s/ Tyler D. Semmelman*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Tyler D. Semmelman (No. 5386)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
            defranceschi@rlf.com
            madron@rlf.com
            semmelman@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        edward.sassower@kirkland.com
            stephen.hessler@kirkland.com
            brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
            marc.kieselstein@kirkland.com
            chad.husnick@kirkland.com
            steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

Case 14-10979-CSS   Doc 4080-12   Filed 04/02/15   Page 20 of 406

# **EXHIBIT A**

## **Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## ORDER SUSTAINING DEBTORS'
## FOURTEENTH OMNIBUS (SUBSTANTIVE)
## OBJECTION TO (CERTAIN SUBSTANTIVE DUPLICATE, NO
## LIABILITY, AND NO CLAIM ASSERTED) CLAIMS PURSUANT
## TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY
## RULES 3001, 3003, AND 3007, AND LOCAL BANKRUPTCY RULE 3007-1

Upon the objection (the "Objection")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), disallowing and expunging the Disputed Claims set forth on **Exhibit 1**, **Exhibit 2**, and **Exhibit 3** attached hereto, all as set forth in the Objection and the Kotarba Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this case and the Objection in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Objection is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Objection and the opportunity

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Objection.

for a hearing on the Objection (the "Hearing") under the circumstances; and the Court having

reviewed the Objection and having heard the statements in support of the relief requested therein

at the Hearing, if any; and the Court having determined that the legal and factual bases set forth

in the Objection and at the Hearing establish just cause for the relief granted herein; and upon all

of the proceedings had before the Court; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY ORDERED THAT:

1.      The Objection is sustained as set forth herein.

2.      The Bondholder Duplicate Claims set forth on the attached **Exhibit 1** are hereby
disallowed in their entirety.

3.      The No Liability Claims set forth on the attached **Exhibit 2** are hereby disallowed
in their entirety.

4.      The No Claim Asserted Claims set forth on the attached **Exhibit 3** are hereby
disallowed in their entirety.

5.      The Claims Agent is authorized to modify the Claims Register to comport with
the entry of this Order.

6.      Nothing set forth herein shall affect the parties' rights with respect to those claims
identified as "Remaining Claims" on **Exhibit 1**, attached hereto, and the parties' rights with
respect to such "Remaining Claims" are reserved, including, for the avoidance of doubt, the
Debtors' right to object on any grounds permitted by bankruptcy or nonbankruptcy law.

7.      Notwithstanding the relief granted in this Order and any actions taken pursuant to
such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity of any
particular claim (including the Proofs of Claim) against a Debtor entity; (b) a waiver of the
Debtors' rights to dispute any particular claim (including the Proofs of Claim) on any grounds;

(c) a promise or requirement to pay any particular claim (including the Proofs of Claim); (d) an implication or admission that any particular claim is of a type specified or defined in this Objection (except as set forth herein); (e) an admission by the Debtors that any contract or lease is executory or unexpired, as applicable; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (g) a request or authorization to assume or reject any agreements under section 365 of the Bankruptcy Code; (h) a waiver of any party's rights to assert that any other party is in breach or default of any agreement; or (i) an admission that any contract or lease is integrated with any other contract or lease.

8.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Objection.

10.     This Court shall retain exclusive jurisdiction to resolve any dispute arising from or related to this Order.

Wilmington, Delaware
Dated: _____, 2015

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

3

**EXHIBIT 1** to **EXHIBIT A**

**Bondholder Duplicate Claims**

**ENERGY FUTURE HOLDINGS CORP., et al.**

**FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 1 to EXHIBIT A – BONDHOLDER DUPLICATE CLAIMS**

| | CLAIMS TO BE DISALLOWED | | | | REMAINING CLAIMS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
| 1 DUBIN CORPORATE PLUS FUND C/O PRINCIPAL GLOBAL INVESTORS, LLC ATTN: HIGH YIELD TEAM 711 HIGH STREET DES MOINES, IA 70392 | 10/24/2014 | 14-10979 (CSS) | 7645 | Undetermined* | COMPUTERSHARE TRUST COMPANY, N.A., AND COMPUTERSHARE TRUST COMPANY OF CANADA C/O BRYAN CAVE LLP/WICKOUSKI/FINKELSTEIN 1290 AVENUE OF THE AMERICAS NEW YORK, NY 10104 | 10/24/2014 | | 7486 | $2,211,294,949.11* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |
| 2 FROST BANK, CUSTODIAN FOR NORTH COAST LIFE INSURANCE P.O. BOX 2950 - REORG - T/8 SAN ANTONIO, TX 78299-2950 | 10/15/2014 | 14-10979 (CSS) | 5351 | Undetermined* | BANK OF NEW YORK MELLON, THE C/O REED SMITH LLP ATTN: KURT F. GWYNNE, ESQ. 1201 N. MARKET STREET, SUITE 1500 WILMINGTON, DE 19801 | 10/23/2014 | 14-11005 (CSS) | 6292 | $8,617,277.72* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 1 to EXHIBIT A – BONDHOLDER DUPLICATE CLAIMS**

| | | CLAIMS TO BE DISALLOWED | | | | REMAINING CLAIMS | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
| 3 | IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM C/O PRINCIPAL GLOBAL INVESTORS, LLC ATTN: HIGH YIELD TEAM 711 HIGH STREET DES MOINES, IA 70392 | 10/24/2014 | 14-10979 (CSS) | 7643 | Undetermined* | WILMINGTON TRUST, NA, ADMINISTRATIVE AGT C/O SEWARD & KISSEL LLP ATTN: JOHN R. ASHMEAD, ESQ. ONE BATTERY PLAZA NEW YORK, NY 10004 | 10/24/2014 | 14-10979 (CSS) | 7489 | $22,863,271,156.94* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |
| 4 | LANKFORD, STEPHEN L. FMT CO CUST IRA ROLLOVER 1822 PITTS RD RICHMOND, TX 77406-1349 | 09/09/2014 | 14-10979 (CSS) | 4249 | $115,195.00 | BANK OF NEW YORK MELLON, THE C/O REED SMITH LLP ATTN: KURT F. GWYNNE, ESQ. 1201 N. MARKET STREET, SUITE 1500 WILMINGTON, DE 19801 | 10/23/2014 | 14-11005 (CSS) | 6292 | $8,617,277.72* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |

* - Indicates claim contains unliquidated and/or undetermined amounts

## ENERGY FUTURE HOLDINGS CORP., et al.

### FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 1 to EXHIBIT A – BONDHOLDER DUPLICATE CLAIMS

| | CLAIMS TO BE DISALLOWED | | | | REMAINING CLAIMS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
| 5  LINDER, RAYMOND 3625 YEARLING CT. MATTHEWS, NC 28105 | 09/29/2014 | | 4759 | $4,065.40 | BANK OF NEW YORK MELLON, THE C/O REED SMITH LLP ATTN: KURT F. GWYNNE, ESQ. 1201 N. MARKET STREET, SUITE 1500 WILMINGTON, DE 19801 | 10/23/2014 | 14-11005 (CSS) | 6292 | $8,617,277.72* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |
| 6  LOS ANGELES COUNTY EMPLOYEES RETIREMENT C/O PRINCIPAL GLOBAL INVESTORS, LLC ATTN: HIGH YIELD TEAM 711 HIGH STREET DES MOINES, IA 70392 | 10/24/2014 | 14-10979 (CSS) | 7642 | Undetermined* | WILMINGTON TRUST, NA, ADMINISTRATIVE AGT C/O SEWARD & KISSEL LLP ATTN: JOHN R. ASHMEAD, ESQ. ONE BATTERY PLAZA NEW YORK, NY 10004 | 10/24/2014 | 14-10979 (CSS) | 7489 | $22,863,271,156.94* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |

## ENERGY FUTURE HOLDINGS CORP., et al.

### FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 1 to EXHIBIT A – BONDHOLDER DUPLICATE CLAIMS

| | | CLAIMS TO BE DISALLOWED | | | | REMAINING CLAIMS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
| 7 MEIJER INC C/O PRINCIPAL GLOBAL INVESTORS, LLC ATTN: HIGH YIELD TEAM 711 HIGH STREET DES MOINES, IA 70392 | 10/24/2014 | 14-10979 (CSS) | 7644 | Undetermined* | COMPUTERSHARE TRUST COMPANY, N.A., AND COMPUTERSHARE TRUST COMPANY OF CANADA C/O BRYAN CAVE LLP/WICKOUSKI/FINKELSTEIN 1290 AVENUE OF THE AMERICAS NEW YORK, NY 10104 | 10/24/2014 | | 7486 | $2,211,294,949.11* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |
| 8 PAINTER, EDSEL J. 811 OCEOLA DRIVE ALGONQUIN, IL 60012 | 10/21/2014 | 14-11045 (CSS) | 5758 | $16,010.63* | BANK OF NEW YORK MELLON, THE C/O REED SMITH LLP ATTN: KURT F. GWYNNE, ESQ. 1201 N. MARKET STREET, SUITE 1500 WILMINGTON, DE 19801 | 10/23/2014 | 14-11005 (CSS) | 6292 | $8,617,277.72* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 1 to EXHIBIT A – BONDHOLDER DUPLICATE CLAIMS**

| | | CLAIMS TO BE DISALLOWED | | | | REMAINING CLAIMS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
| 9  PGI CIT MULTI-SECTOR FIXED INCOME FUND C/O PRINCIPAL GLOBAL INVESTORS, LLC ATTN: HIGH YIELD TEAM 711 HIGH STREET DES MOINES, IA 70392 | 10/24/2014 | 14-10979 (CSS) | 7647 | Undetermined* | COMPUTERSHARE TRUST COMPANY, N.A., AND COMPUTERSHARE TRUST COMPANY OF CANADA C/O BRYAN CAVE LLP/WICKOUSKI/FINKELSTEIN 1290 AVENUE OF THE AMERICAS NEW YORK, NY 10104 | 10/24/2014 | | 7486 | $2,211,294,949.11* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |
| 10  PGIT HIGH YIELD FIXED INCOME FUND C/O PRINCIPAL GLOBAL INVESTORS, LLC ATTN: HIGH YIELD TEAM 711 HIGH STREET DES MOINES, IA 70392 | 10/24/2014 | 14-10979 (CSS) | 7646 | Undetermined* | COMPUTERSHARE TRUST COMPANY, N.A., AND COMPUTERSHARE TRUST COMPANY OF CANADA C/O BRYAN CAVE LLP/WICKOUSKI/FINKELSTEIN 1290 AVENUE OF THE AMERICAS NEW YORK, NY 10104 | 10/24/2014 | | 7486 | $2,211,294,949.11* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |

* - Indicates claim contains unliquidated and/or undetermined amounts

## ENERGY FUTURE HOLDINGS CORP., et al.

## FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 1 to EXHIBIT A – BONDHOLDER DUPLICATE CLAIMS

| | | CLAIMS TO BE DISALLOWED | | | | REMAINING CLAIMS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
| 11 | PRINCIPAL FUNDS INC - BOND & MORTGAGE C/O PRINCIPAL GLOBAL INVESTORS, LLC ATTN: HIGH YIELD TEAM 711 HIGH STREET DES MOINES, IA 70392 | 10/24/2014 | 14-10979 (CSS) | 7650 | Undetermined* | WILMINGTON TRUST, NA, ADMINISTRATIVE AGT C/O SEWARD & KISSEL LLP ATTN: JOHN R. ASHMEAD, ESQ. ONE BATTERY PLAZA NEW YORK, NY 10004 | 10/24/2014 | 14-10979 (CSS) | 7489 | $22,863,271,156.94* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |
| | | | | | | COMPUTERSHARE TRUST COMPANY, N.A., AND COMPUTERSHARE TRUST COMPANY OF CANADA C/O BRYAN CAVE LLP/WICKOUSKI/FINKELSTEIN 1290 AVENUE OF THE AMERICAS NEW YORK, NY 10104 | 10/24/2014 | | 7486 | $2,211,294,949.11* | |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 1 to EXHIBIT A – BONDHOLDER DUPLICATE CLAIMS**

| | | CLAIMS TO BE DISALLOWED | | | | REMAINING CLAIMS | | | | | |
| | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 12 | PRINCIPAL FUNDS INC - DYNAMIC HIGH YIELD C/O PRINCIPAL GLOBAL INVESTORS, LLC ATTN: HIGH YIELD TEAM 711 HIGH STREET DES MOINES, IA 70392 | 10/24/2014 | 14-10979 (CSS) | 7651 | Undetermined* | WILMINGTON TRUST, NA, ADMINISTRATIVE AGT C/O SEWARD & KISSEL LLP ATTN: JOHN R. ASHMEAD, ESQ. ONE BATTERY PLAZA NEW YORK, NY 10004 | 10/24/2014 | 14-10979 (CSS) | 7489 | $22,863,271,156.94* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |

## ENERGY FUTURE HOLDINGS CORP., et al.

### FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 1 to EXHIBIT A – BONDHOLDER DUPLICATE CLAIMS

| | | CLAIMS TO BE DISALLOWED | | | | REMAINING CLAIMS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
| 13 | PRINCIPAL FUNDS INC - HIGH YIELD FUND C/O PRINCIPAL GLOBAL INVESTORS, LLC ATTN: HIGH YIELD TEAM 711 HIGH STREET DES MOINES, IA 70392 | 10/24/2014 | 14-10979 (CSS) | 7652 | Undetermined* | WILMINGTON TRUST, NA, ADMINISTRATIVE AGT C/O SEWARD & KISSEL LLP ATTN: JOHN R. ASHMEAD, ESQ. ONE BATTERY PLAZA NEW YORK, NY 10004 | 10/24/2014 | 14-10979 (CSS) | 7489 | $22,863,271,156.94* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |
| | | | | | | COMPUTERSHARE TRUST COMPANY, N.A., AND COMPUTERSHARE TRUST COMPANY OF CANADA C/O BRYAN CAVE LLP/WICKOUSKI/FINKELSTEIN 1290 AVENUE OF THE AMERICAS NEW YORK, NY 10104 | 10/24/2014 | | 7486 | $2,211,294,949.11* | |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 1 to EXHIBIT A – BONDHOLDER DUPLICATE CLAIMS**

| | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **CLAIMS TO BE DISALLOWED** | | | | | **REMAINING CLAIMS** | | | | | |
| 14 | PRINCIPAL GLOBAL - GLOBAL FLOATING RATE C/O PRINCIPAL GLOBAL INVESTORS, LLC ATTN: HIGH YIELD TEAM 711 HIGH STREET DES MOINES, IA 70392 | 10/24/2014 | 14-10979 (CSS) | 7655 | Undetermined* | WILMINGTON TRUST, NA, ADMINISTRATIVE AGT C/O SEWARD & KISSEL LLP ATTN: JOHN R. ASHMEAD, ESQ. ONE BATTERY PLAZA NEW YORK, NY 10004 | 10/24/2014 | 14-10979 (CSS) | 7489 | $22,863,271,156.94* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 1 to EXHIBIT A – BONDHOLDER DUPLICATE CLAIMS**

| | CLAIMS TO BE DISALLOWED | | | | REMAINING CLAIMS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
| 15  PRINCIPAL LIFE INSURANCE COMPANY DBA BOND & MORTGAGE SEPARATE ACCOUNT C/O PRINCIPAL GLOBAL/ATTN: HIGH YIELD 711 HIGH STREET DES MOINES, IA 50392 | 10/24/2014 | 14-10979 (CSS) | 7653 | Undetermined* | WILMINGTON TRUST, NA, ADMINISTRATIVE AGT C/O SEWARD & KISSEL LLP ATTN: JOHN R. ASHMEAD, ESQ. ONE BATTERY PLAZA NEW YORK, NY 10004 | 10/24/2014 | 14-10979 (CSS) | 7489 | $22,863,271,156.94* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |
| | | | | | COMPUTERSHARE TRUST COMPANY, N.A., AND COMPUTERSHARE TRUST COMPANY OF CANADA C/O BRYAN CAVE LLP/WICKOUSKI/FINKELSTEIN 1290 AVENUE OF THE AMERICAS NEW YORK, NY 10104 | 10/24/2014 | | 7486 | $2,211,294,949.11* | |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 1 to EXHIBIT A – BONDHOLDER DUPLICATE CLAIMS**

| | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **CLAIMS TO BE DISALLOWED** | | | | | **REMAINING CLAIMS** | | | | | |
| 16 | PRINCIPAL LIFE INSURANCE COMPANY C/O PRINCIPAL GLOBAL INVESTORS, LLC ATTN: HIGH YIELD TEAM 711 HIGH STREET DES MOINES, IA 70392 | 10/24/2014 | 14-10979 (CSS) | 7654 | Undetermined* | WILMINGTON TRUST, NA, ADMINISTRATIVE AGT C/O SEWARD & KISSEL LLP ATTN: JOHN R. ASHMEAD, ESQ. ONE BATTERY PLAZA NEW YORK, NY 10004 | 10/24/2014 | 14-10979 (CSS) | 7489 | $22,863,271,156.94* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |
| 17 | PRINCIPAL VARIABLE CONTRACTS FUNDS B.A. C/O PRINCIPAL GLOBAL INVESTORS, LLC ATTN: HIGH YIELD TEAM 711 HIGH STREET DES MOINES, IA 70392 | 10/24/2014 | 14-10979 (CSS) | 7649 | Undetermined* | COMPUTERSHARE TRUST COMPANY, N.A., AND COMPUTERSHARE TRUST COMPANY OF CANADA C/O BRYAN CAVE LLP/WICKOUSKI/FINKELSTEIN 1290 AVENUE OF THE AMERICAS NEW YORK, NY 10104 | 10/24/2014 | | 7486 | $2,211,294,949.11* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |

## ENERGY FUTURE HOLDINGS CORP., et al.

### FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 1 to EXHIBIT A – BONDHOLDER DUPLICATE CLAIMS

| | NAME | CLAIMS TO BE DISALLOWED | | | | REMAINING CLAIMS | | | | | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | |
| 18 | PRINCIPAL VARIABLE CONTRACTS FUNDS, INC C/O PRINCIPAL GLOBAL INVESTORS, LLC ATTN: HIGH YIELD TEAM 711 HIGH STREET DES MOINES, IA 70392 | 10/24/2014 | 14-10979 (CSS) | 7648 | Undetermined* | WILMINGTON TRUST, NA, ADMINISTRATIVE AGT C/O SEWARD & KISSEL LLP ATTN: JOHN R. ASHMEAD, ESQ. ONE BATTERY PLAZA NEW YORK, NY 10004 | 10/24/2014 | 14-10979 (CSS) | 7489 | $22,863,271,156.94* | Duplicates liability in claim filed by Agent and/or Trustee on behalf of all holders of this debt instrument. |
| | | | | | | COMPUTERSHARE TRUST COMPANY, N.A., AND COMPUTERSHARE TRUST COMPANY OF CANADA C/O BRYAN CAVE LLP/WICKOUSKI/FINKELSTEIN 1290 AVENUE OF THE AMERICAS NEW YORK, NY 10104 | 10/24/2014 | | 7486 | $2,211,294,949.11* | |
| | | | TOTAL | | $135,271.03* | | | | | | |

**EXHIBIT 2** to **EXHIBIT A**

**No Liability Claims**

**ENERGY FUTURE HOLDINGS CORP., et al.**

**FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – NO LIABILITY CLAIMS**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 1 | ALANIS, RODRIGO<br>1319 FAIRMOUNT AVE APT A<br>FORT WORTH, TX 76104-8207 | | No Debtor Asserted | 10/23/2014 | 6158 | $50,000.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 2 | ALIU, SKENDER<br>8761 ROYALWOOD DR<br>FORT WORTH, TX 76131-3371 | | No Debtor Asserted | 06/17/2014 | 2238 | $4,464.84 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 3 | BAKER-AICKEN & INC<br>507 W LIBERTY ST<br>ROUND ROCK, TX 78664-5129 | | No Debtor Asserted | 06/23/2014 | 2404 | $5,466.11 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 4 | BERINGER, ROBERT<br>2109 FINNEY VALLET RD<br>ROSENBERG, TX 77471-9027 | | No Debtor Asserted | 06/09/2014 | 1498 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 5 | BLUE CROSS BLUE SHIELD OF TEXAS ET AL<br>CO CONLEY ROSENBERG MENDEZ BRENNEISE LLP<br>ATTN: KELLY E. KLEIST<br>5080 SPECTRUM DRIVE, SUITE 850E<br>ADDISON, TX 75001 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/16/2014 | 4448 | $2,476,475.22 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. |
| 6 | BORJAS, ISIDRO<br>452 CROOKED LN<br>MESQUITE, TX 75149-2562 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/29/2014 | 4766 | $4,305.35 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |

## ENERGY FUTURE HOLDINGS CORP., et al.

### FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 7 | BROBST, ROGER<br>2480 LINDALE LN<br>MESQUITE, TX 75149-6536 | 14-10979 (CSS) | Energy Future Holdings Corp. | 08/28/2014 | 3931 | $329.90 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 8 | CARPENTER, ARTHUR<br>1386 E PENTAGON PKWY<br>DALLAS, TX 75216-6992 | | No Debtor Asserted | 08/13/2014 | 4202 | $1,531.85 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 9 | CHANDLER, FELIX E<br>2609 STILL SPRINGS DR<br>LITTLE ELM, TX 75068-6947 | | No Debtor Asserted | 10/21/2014 | 5746 | $265.21 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 10 | COLLINS, BRITTE<br>1926 DEMAREE LN APT A<br>HOUSTON, TX 77029-4077 | 14-10979 (CSS) | Energy Future Holdings Corp. | 10/27/2014 | 7891 | $4,500.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 11 | DALLAS MACHINE AND TOOL LLC<br>1438 CRESCENT DR STE 203<br>CARROLLTON, TX 75006-3662 | | No Debtor Asserted | 09/22/2014 | 4604 | $8,217.50 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 12 | DAUNIS, W O<br>GARI DIANNE DAUNIS<br>PO BOX 4112<br>WACO, TX 76708-0410 | 14-10979 (CSS) | Energy Future Holdings Corp. | 10/10/2014 | 5137 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 13 | DAVIS, EARLINE<br>3305 PECAN RIDGE DR<br>ROWLETT, TX 75088-5971 | 14-10979 (CSS) | Energy Future Holdings Corp. | 06/16/2014 | 1990 | $19,597.75 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |

# ENERGY FUTURE HOLDINGS CORP., et al.

## FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 14 | DAVIS, PHYLLIS 413 RIDGEWOOD DR DESOTO, TX 75115-5623 | 14-10979 (CSS) | Energy Future Holdings Corp. | 07/03/2014 | 2862 | $523.21 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 15 | DAVIS, TERESSA 4401 MITCHELL LN ROWLETT, TX 75088-2897 | | No Debtor Asserted | 10/27/2014 | 7901 | $661.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 16 | DEL SOL, MARISOL 1711 ROSEDALE ST HOUSTON, TX 77004-5628 | 14-10979 (CSS) | Energy Future Holdings Corp. | 08/15/2014 | 3676 | $1,000.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 17 | DELGADILLO, REYES 2109 E ENNIS AVE ENNIS, TX 75119-5216 | | No Debtor Asserted | 10/27/2014 | 7725 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 18 | DOCKSTETTER, TRENT DBA HIGH TEC OFFICE SYSTEMS 1805 NW CACHE RD LAWTON, OK 73507-4519 | | No Debtor Asserted | 06/13/2014 | 1914 | $647.79 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 19 | DODSON, JERRY A 108 S BROADWAY ST JOSHUA, TX 76058-3121 | 14-10979 (CSS) | Energy Future Holdings Corp. | 10/17/2014 | 5454 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 20 | FARMERS ELECTRIC COOP INC 2000 INTERSTATE HIGHWAY 30 E GREENVILLE, TX 75402-9084 | 14-10979 (CSS) | Energy Future Holdings Corp. | 06/10/2014 | 1693 | $45.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – NO LIABILITY CLAIMS**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 21 | FISCAL, MARTHA<br>1418 JUDY DR<br>PLANO, TX 75074-4408 | | No Debtor Asserted | 10/27/2014 | 8073 | $1,168.25 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 22 | FLINTKOTE COMPANY, THE<br>C/O HAILEY MCNAMARA HALL<br>LARMANN PAPALE<br>ATTTN: JAMES W. HAILEY, JR.<br>PO BOX 8288<br>METAIRIE, LA 70011 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4686 | $36,945.27 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 23 | FORRESTER, GERALD R<br>919 SHOAL CREEK DR<br>FAIRVIEW, TX 75069-1950 | 14-10979 (CSS) | Energy Future Holdings Corp. | 06/23/2014 | 2455 | $14,992.52 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 24 | FUSILIER, DENNIS<br>DBA TWO STAR DEVELOPMENT<br>5405  ANDREWS HWY<br>ODESSA, TX 79762 | | No Debtor Asserted | 05/27/2014 | 422 | $3,000.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 25 | GONZALES, FELIX C<br>1711 NEWCASTLE DR<br>MANSFIELD, TX 76063-7918 | 14-10979 (CSS) | Energy Future Holdings Corp. | 10/27/2014 | 7827 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 26 | GRIMES, JOJEAN<br>4412 GULF AVE<br>MIDLAND, TX 79707-5309 | | No Debtor Asserted | 06/02/2014 | 817 | $399.99 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |

## ENERGY FUTURE HOLDINGS CORP., et al.

### FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 27 | HBII SAFETY RESOURCES LLC<br>PO BOX 198<br>YOUNGSVILLE, LA 70592 | | No Debtor Asserted | 05/30/2014 | 762 | $4,600.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 28 | HEARNSBERGER, PHILLIP<br>23006 GOVERNORSHIRE DR<br>KATY, TX 77450 | | No Debtor Asserted | 06/20/2014 | 2285 | $74.69 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 29 | HIGH, CHARLES L<br>20320 BLUEGRASS CIR<br>FLINT, TX 75762-8756 | 14-10979 (CSS) | Energy Future Holdings Corp. | 05/30/2014 | 742 | $11,908.72 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 30 | HIGHBERGER, KL<br>1716 S EDMONDS LN APT 46<br>LEWISVILLE, TX 75067-5859 | | No Debtor Asserted | 05/27/2014 | 573 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 31 | HIGHBERGER, KL<br>1716 S EDMONDS LN APT 46<br>LEWISVILLE, TX 75067-5859 | | No Debtor Asserted | 05/28/2014 | 622 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 32 | KUYKENDOLL, JOHN E<br>2513 MCKENSIE LN<br>GRAND PRAIRIE, TX 75052-3918 | 14-10979 (CSS) | Energy Future Holdings Corp. | 05/27/2014 | 458 | $4,898.76 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 33 | LOPEZ, PABLO<br>7744 BRUTON RD<br>DALLAS, TX 75217-1449 | | No Debtor Asserted | 05/27/2014 | 216 | $6,500.00* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – NO LIABILITY CLAIMS**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 34 | LOZANO, JAVIER 14101 I-10 EAST HOUSTON, TX 77015-5908 | | No Debtor Asserted | 06/10/2014 | 1701 | $2,748.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 35 | MARKIN, NICHOLAS 2600 PRESTON RD APT 1310 PLANO, TX 75093-3512 | | No Debtor Asserted | 06/20/2014 | 2346 | $150,000.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 36 | MCMENAMY, JOE 4331 S HIGHWAY 377 AUBREY, TX 76227-5098 | | No Debtor Asserted | 07/10/2014 | 3007 | $400.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 37 | MELONCON, BEATRICE 13513 CASTILIAN DR HOUSTON, TX 77015 | | No Debtor Asserted | 10/10/2014 | 5138 | $22,137.79 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. Claimant does not appear to assert a claim against any of the known Debtors. |
| 38 | MERRITT, PATRICIA 1314 ROYAL ST APT 1 KISSIMMEE, FL 34744-4238 | | No Debtor Asserted | 06/06/2014 | 1332 | $52,490.86 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. Claimant does not appear to assert a claim against any of the known Debtors. |
| 39 | MITCHELL, JEAN 16007 CERCA BLANCA DR HOUSTON, TX 77083-4933 | | No Debtor Asserted | 10/02/2014 | 4867 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 40 | NORWOOD MACHINE SHOP 5007 OLD JACKSBORO HWY WICHITA FALLS, TX 76302-3519 | | No Debtor Asserted | 07/14/2014 | 3104 | $808.53 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |

## ENERGY FUTURE HOLDINGS CORP., et al.

## FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 41 | ONG, LARRY Y. 5823 CEDAR FIELD WAY HOUSTON, TX 77084-1979 | | No Debtor Asserted | 06/10/2014 | 1591 | $8,938.13 | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 42 | PARSUTT, SHERLY 2813 PATRICIA ST LA MARQUE, TX 77568-3817 | 14-10979 (CSS) | Energy Future Holdings Corp. | 05/27/2014 | 439 | $3,000.00* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 43 | PATEL, BALDEV 118 SEVA CT IRVING, TX 75061-2613 | 14-10997 (CSS) | TXU Energy Retail Company LLC | 10/16/2014 | 5434 | $200.00* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 44 | POPPS, PENNY N. 2747 HYDE PARK DR GRAND PRAIRIE, TX 75050 | 14-10979 (CSS) | Energy Future Holdings Corp. | 10/27/2014 | 8106 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 45 | REGAL JOAN LLC 421 PENMAN ST STE 100 CHARLOTTE, NC 28203 | | No Debtor Asserted | 09/02/2014 | 4030 | $117,000.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 46 | REYNOLDS, PRUDENCE 6424 STARDUST DR S WATAUGA, TX 76148-3640 | | No Debtor Asserted | 08/21/2014 | 3749 | $850.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 47 | ROBERTSON ENTERPRISES, LLC 13211 NORTHSPRING BEND LN CYPRESS, TX 77429-5755 | | No Debtor Asserted | 06/23/2014 | 2433 | $1,000.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |

## ENERGY FUTURE HOLDINGS CORP., et al.

### FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 48 | RODRIGUEZ, MARY G.<br>2634 GOLLIHAR DR STE A<br>CORPUS CHRISTI, TX 78415-5259 | | No Debtor Asserted | 08/11/2014 | 3589 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 49 | RODRIQUEZ, ABLE T<br>2300 FLORENCE DR<br>PLANO, TX 75093-3735 | 14-10979 (CSS) | Energy Future Holdings Corp. | 05/30/2014 | 654 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 50 | RR ENTERPRISES INC.<br>7204 COUNTY ROAD 1124<br>GODLEY, TX 76044-4354 | | No Debtor Asserted | 07/21/2014 | 3246 | $3,500,000.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. |
| 51 | RUSSELL, JOHN J<br>3614 BORDEAUX CT<br>ARLINGTON, TX 76016-2907 | | No Debtor Asserted | 06/03/2014 | 1029 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 52 | SAFFLE, GAYLE L<br>PO BOX 1477<br>BRUCEVILLE, TX 76630-1477 | | No Debtor Asserted | 09/09/2014 | 4238 | $211.74 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 53 | SCRIBNER, TRACY<br>1247 PARK PL<br>SHERMAN, TX 75092-3333 | | No Debtor Asserted | 08/18/2014 | 3701 | $2,632.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 54 | SINDT, DAVID - DECEASED<br>C/O CINDY SINDT<br>5102 LAURA LEE LN<br>PASADENA, TX 77504-2379 | | No Debtor Asserted | 09/16/2014 | 4462 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |

ENERGY FUTURE HOLDINGS CORP., et al.

FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 55 | SIRIANNI, PETER V<br>8113 WINTER FALLS TRL<br>HURST, TX 76053-7466 | | No Debtor Asserted | 06/02/2014 | 820 | $28,532.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 56 | STEWART, KUK JA<br>C/O CHARLES MONTEMAYOR, ATTY<br>5353 MAPLE AVE, STE 100<br>DALLAS, TX 75235 | 14-10979 (CSS) | Energy Future Holdings Corp. | 03/13/2015 | 10003 | $1,800,000,000.00 | The Debtors reviewed the documentation filed with the Claim. Neither the documentation nor the Proof of claim demonstrate a connection between the claim and the Debtors. |
| 57 | STEWART, KUK JA<br>2028 SANDY LN<br>IRVING, TX 75060-5639 | 14-10979 (CSS) | Energy Future Holdings Corp. | 10/20/2014 | 5739 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor third party. |
| 58 | TEXAS IRRIGATION SUPPLY LLC<br>C/O HUSCH BLACKWELL LLP<br>ATTN: LYNN H. BUTLER<br>111 CONGRESS AVE., SUITE 1400<br>AUSTIN, TX 78701 | 14-10979 (CSS) | Energy Future Holdings Corp. | 10/24/2014 | 7565 | $5,320.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 59 | VANWICKLEN, JOAN<br>3910 CHAPEL SQUARE DR<br>SPRING, TX 77388-5099 | 14-10979 (CSS) | Energy Future Holdings Corp. | 08/28/2014 | 3919 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 60 | WEAVER, OLIN<br>1235 OAK TREE DR<br>ATHENS, TX 75751-8185 | 14-10979 (CSS) | Energy Future Holdings Corp. | 06/02/2014 | 1012 | $2,775.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – NO LIABILITY CLAIMS**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 61 | XU, BIN 11522 LAZY MEADOWS DR HOUSTON, TX 77064-4046 | | No Debtor Asserted | 09/08/2014 | 4155 | $28,371.52 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| | | | | | TOTAL | $1,806,589,934.50* | |

**EXHIBIT 3** to **EXHIBIT A**

**No Claim Asserted Claims**

## ENERGY FUTURE HOLDINGS CORP., et al.

### FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 3 TO EXHIBIT A - NO CLAIM ASSERTED

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 1 | 4 Z MANAGEMENT INC<br>PO BOX 7023<br>TYLER, TX 75711-7023 | | No Debtor Asserted | 06/06/2014 | 1256 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 2 | ATS DRILLING INC<br>PO BOX 14633<br>FORT WORTH, TX 76117-0633 | | No Debtor Asserted | 06/16/2014 | 2085 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 3 | BOBOS NURSERY<br>3765 W US HIGHWAY 79<br>BUFFALO, TX 75831-3457 | | No Debtor Asserted | 06/23/2014 | 2415 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 4 | CITY CONTRACTORS SERVICE CO INC<br>2200 MCCREE RD<br>WYLIE, TX 75098-8028 | | No Debtor Asserted | 06/13/2014 | 1884 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 5 | CULPEPPER, SHERRY B<br>ADDRESS ON FILE | | No Debtor Asserted | 10/16/2014 | 5431 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 6 | DAY, KEVIN<br>ADDRESS ON FILE | | No Debtor Asserted | 05/27/2014 | 337 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 7 | EDWARDS, ANNA<br>ADDRESS ON FILE | | No Debtor Asserted | 06/23/2014 | 2417 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 8 | GALLEGOS, JOHN PAUL<br>ADDRESS ON FILE | 14-10979 (CSS) | Energy Future Holdings Corp. | 10/09/2014 | 5031 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 9 | JONES, KAREN<br>ADDRESS ON FILE | 14-10997 (CSS) | TXU Energy Retail Company LLC | 06/02/2014 | 947 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 10 | KRAKAUR, RICHARD<br>ADDRESS ON FILE | | No Debtor Asserted | 06/05/2014 | 1109 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 11 | LIGHTSEY, CAROLYN D<br>ADDRESS ON FILE | | No Debtor Asserted | 06/16/2014 | 2028 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |

## ENERGY FUTURE HOLDINGS CORP., et al.

### FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 3 TO EXHIBIT A - NO CLAIM ASSERTED

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 12 | MARIN, JAMES S ADDRESS ON FILE | 14-10979 (CSS) | Energy Future Holdings Corp. | 06/10/2014 | 1643 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 13 | MAYORAL, LUIS ADDRESS ON FILE | 14-10979 (CSS) | Energy Future Holdings Corp. | 06/23/2014 | 2403 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 14 | MCLEMORE, SIDNEY L ADDRESS ON FILE | | No Debtor Asserted | 06/09/2014 | 2122 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 15 | MELASKY, ANNA ADDRESS ON FILE | | No Debtor Asserted | 06/23/2014 | 2418 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 16 | MELASKY, ANNA ADDRESS ON FILE | | No Debtor Asserted | 06/23/2014 | 2419 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 17 | MELASKY, ANNA ADDRESS ON FILE | | No Debtor Asserted | 06/23/2014 | 2420 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 18 | MELASKY, ANNA ADDRESS ON FILE | | No Debtor Asserted | 06/23/2014 | 2421 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 19 | MELASKY, GINGER ADDRESS ON FILE | | No Debtor Asserted | 06/23/2014 | 2416 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 20 | MILLER, JOSEPH ADDRESS ON FILE | | No Debtor Asserted | 10/27/2014 | 8070 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 21 | NICHOLS, STEPHEN ADDRESS ON FILE | | No Debtor Asserted | 05/27/2014 | 775 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 22 | PARK, KAREN ADDRESS ON FILE | | No Debtor Asserted | 09/26/2014 | 4691 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |

## ENERGY FUTURE HOLDINGS CORP., et al.

### FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 3 TO EXHIBIT A - NO CLAIM ASSERTED

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 23 | PEREZ, JUAN F<br>ADDRESS ON FILE | | No Debtor Asserted | 05/27/2014 | 322 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 24 | REAGAN COUNTY TAX OFFICE<br>PO BOX 100<br>BIG LAKE, TX 76932-0100 | | No Debtor Asserted | 09/02/2014 | 4052 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 25 | SERVIN, ARACELI<br>ADDRESS ON FILE | | No Debtor Asserted | 05/30/2014 | 707 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 26 | SHORTNACY, BILL W<br>ADDRESS ON FILE | 14-10979 (CSS) | Energy Future Holdings Corp. | 05/23/2014 | 890 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 27 | SMITH, JAMES<br>ADDRESS ON FILE | | No Debtor Asserted | 07/09/2014 | 2950 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 28 | SMITH, LAURA<br>ADDRESS ON FILE | | No Debtor Asserted | 08/18/2014 | 3719 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 29 | SOUTHWESTERN EXIBITIONS<br>PO BOX 150<br>FORT WORTH, TX 76101-0150 | | No Debtor Asserted | 05/23/2014 | 204 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 30 | SOUTHWESTERN EXPOSITION &<br>LIVESTOCK SHOW<br>PO BOX 150<br>FORT WORTH, TX 76101-0150 | | No Debtor Asserted | 05/23/2014 | 203 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 31 | UNITED HISPANIC COU<br>2741 HEMPHILL ST<br>FORT WORTH, TX 76110-3212 | | No Debtor Asserted | 05/27/2014 | 357 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 32 | WHITE, R C<br>ADDRESS ON FILE | | No Debtor Asserted | 05/27/2014 | 313 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |

## ENERGY FUTURE HOLDINGS CORP., et al.

### FOURTEENTH OMNIBUS (SUBSTANTIVE): EXHIBIT 3 TO EXHIBIT A - NO CLAIM ASSERTED

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 33 | ZUEFELDT, JOEANN ADDRESS ON FILE | | No Debtor Asserted | 05/30/2014 | 673 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 34 | ZUEFELDT, JOEANN ADDRESS ON FILE | | No Debtor Asserted | 06/06/2014 | 1289 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| | | | | TOTAL | | $0.00 | |

# **Exhibit E**

*Debtors' Thirty-Third Omnibus (Substantive) Objection to Substantive Duplicate and No Liability Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [Bankr. D.I. 6499]

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Objection Deadline:  October 30, 2015 at 4:00 p.m.** |
|  | ) | **Hearing Date:  November 25, 2015 at 10:00 a.m.** |
|  | ) |  |

## DEBTORS' THIRTY-THIRD OMNIBUS (SUBSTANTIVE) OBJECTION TO SUBSTANTIVE DUPLICATE AND NO LIABILITY CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003, AND 3007, AND LOCAL BANKRUPTCY RULE 3007-1

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this thirty-third objection to claims (this "Objection"), pursuant to which the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) disallowing each of the claims (the "Disputed Claims") identified on **Exhibit 1** and **Exhibit 2** to **Exhibit A**, each attached hereto and as discussed in further detail below, and (b) authorizing Epiq Bankruptcy Solutions, LLC (the "Claims Agent") to expunge each of the Disputed Claims from the official register maintained by the Claims Agent (the "Claims Register").  In support of this Objection, the Debtors submit the *Declaration of Steven R. Kotarba, Managing Director with Alvarez & Marsal North America, LLC, in Support of the Debtors' Thirty-Third Omnibus (Substantive) Objection to Substantive Duplicate and No Liability Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy*

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Rule 3007-1* (the "Kotarba Declaration").  This Objection complies in all respects with rule

3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the District of Delaware (the "Local Bankruptcy Rules"), as modified by this Court.[2]

In further support of this Objection, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference from the United States District Court for the District of Delaware,*

*dated February 29, 2012*.  This matter is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2), and the Debtors consent pursuant to Local Bankruptcy Rule 9013-1(f) to the entry of

a final order by the Court in connection with this Objection to the extent that it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Objection are section 502(b) of

title 11 of the United States Code (the "Bankruptcy Code"), rules 3001, 3003, and 3007 of the

---

[2]     On October 30, 2014, the Debtors filed a motion seeking a waiver of Local Bankruptcy Rule 3007-1(f)(i), allowing the Debtors to base substantive omnibus claim objections on no more than 500 claims per each such omnibus claim objection [D.I. 2659]. On November 19, 2014, the Court entered an order granting the waiver [D.I. 2814].

On November 21, 2014, the Debtors filed a motion seeking a waiver of Local Bankruptcy Rules 3007-1 and 3007-2, allowing the Debtors to use, at their discretion, a Custom Notice instead of a general notice and service of all of the exhibits filed with an omnibus objection to claims to every claimant whose claim is objected to in each objection [D.I. 2849].  On December 10, 2014, the Court entered an order granting the waiver [D.I. 2963].

On June 22, 2015, the Debtors filed a motion seeking a further waiver of Local Bankruptcy Rule 3007-1, allowing the Debtors to file more than two substantive omnibus objections to claims in a given month [D.I. 4824].  On July 9, 2015, the Court entered an order granting the waiver, with certain modifications regarding the date by which claims binders shall be delivered to Court in the event more than two substantive omnibus objections to claims are filed in a particular month [D.I. 4956].

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Bankruptcy Rule

3007-1.

<div align="center">**Relief Requested**</div>

4.      By this Objection, the Debtors seek entry of the Order disallowing each of the

claims identified below in full and authorizing the Claims Agent to expunge such claims from

the Claims Register:

      (a)      **Exhibit 1** to **Exhibit A**, each of which represents a Proof of Claim (as defined herein) against a particular Debtor that is substantively duplicative of another claim filed on account of the same liability, but with certain differences that do not ultimately affect the relief sought by the claimant (the "<u>Substantive Duplicate Claims</u>"); and

      (b)      **Exhibit 2** to **Exhibit A**, each of which represents a Proof of Claim asserting a claim for which the Debtors believe they are not liable based on the supporting documentation provided in the Proof of Claim and a reasonable review of the Debtors' books and records.  Consequently, the Debtors believe they do not have any liability on account of each such Proof of Claim (the "<u>No Liability Claims</u>").[3]

<div align="center">**Background**</div>

5.      On April 29, 2014 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary

petition with the Court under the Bankruptcy Code.  The Debtors are operating their businesses

and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code.  The Court has entered a final order for joint administration of these

chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United

States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") formed an official committee of

unsecured creditors of Energy Future Competitive Holdings Company LLC ("<u>EFCH</u>"), Texas

Competitive Electric Holdings Company LLC ("<u>TCEH</u>"), the direct and indirect Debtor

---

[3]      Per Local Rule 3007-1(e)(iv) (as modified by the Court), images of the Proofs of Claim relating to the Insufficient Documentation Claims will be submitted to the Court on or before November 10, 2015.

subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

6.      On June 30, 2014, the Debtors filed their schedules of assets and liabilities (the "Schedules") and statements of financial affairs (the "Statements" and together, with the Schedules, the "Schedules and Statements") [D.I. 1237–1307, 1319–1329, 1331–1343, 1345]. On September 26, 2014, the Debtors filed their amended Schedules and Statements [D.I. 2146-2216], addressing certain discrete issues.

7.      On May 2, 2014, the Court entered an order establishing October 27, 2014, at 5:00 p.m. (prevailing Eastern Time) (the "Customer Claims Bar Date") as the final date and time for certain customer claimants holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim (the "Customer Proofs of Claim") in these chapter 11 cases and approving the form and manner of notice of the Customer Claims Bar Date [D.I. 307].

8.      Written notice of the Customer Claims Bar Date was mailed to current and certain former customers of the Debtors.[4]  In addition to mailing such actual notice, the Debtors also

---

[4]    The procedures for notifying the Debtors' current and former customers are set forth in the *Motion of Energy Future Holdings Corp.*, et al., *for Entry of (A) an Order Authorizing the Debtors to (I) Maintain and Administer Customer Programs and Customer Agreements, (II) Honor Prepetition Obligations Related Thereto, (III) Pay Certain Expenses on Behalf of Certain Organizations, (IV) Fix the Deadline to File Proofs of Claim for Certain Customer Claims, and (V) Establish Procedures for Notifying Customers of Commencement of the Debtors' Chapter 11 Cases, Assumption of Customer Agreements, and the Bar Date for Customer Claims and (B) an Order Authorizing Certain of the Debtors to Assume the Customer Agreements* [D.I. 31].

published notice of the Customer Claims Bar Date in *The Wall Street Journal*, *USA Today*, *The Dallas Morning News*, *Houston Chronicle*, *Corpus Christi Caller Times*, *Fort Worth Star-Telegram*, and *Waco Tribute Herald*.

9.  On August 18, 2014, the Court entered an order (the "<u>General Bar Date Order</u>") establishing October 27, 2014, at 5:00 p.m. (prevailing Eastern Time) (the "<u>General Bar Date</u>") as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim in these chapter 11 cases (the "<u>Non-Customer Proofs of Claim</u>" and, together with the Customer Proofs of Claim, the "<u>Proofs of Claim</u>"), except for claims specifically exempt from complying with the General Bar Date as set forth in the General Bar Date Order, and approving the form and manner of notice of the General Bar Date [D.I. 1866].

10.  Written notice of the General Bar Date was mailed to, among others, all known creditors and other known holders of claims against the Debtors as of the date of entry of the General Bar Date Order, including all entities listed in the Schedules as holding claims against the Debtors, and to all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the General Bar Date Order.  In addition to mailing such actual notice, the Debtors also published notice of the General Bar Date in more than 200 publications nationwide, as detailed in Exhibit 4 to the Bar Date Order.

11.  To date, over 10,000 Proofs of Claim have been filed in these chapter 11 cases.

**<u>Basis for Objection</u>**

12.  Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  The burden of proof for determining the validity of Claims rests

on different parties at different stages of the objection process.   As explained by the United

States Court of Appeals for the Third Circuit:

> The burden of proof for claims brought in the bankruptcy court
> under 11 U.S.C.A. § 502(a) rests on different parties at different
> times.  Initially, the claimant must allege facts sufficient to support
> the claim.  If the averments in his filed claim meet this standard of
> sufficiency, it is '*prima facie*' valid [citations omitted].  In other
> words, a claim that alleges facts sufficient to support legal liability
> to the claimant satisfies the claimants' initial obligation to go
> forward.  The burden of going forward then shifts to the objector to
> produce evidence sufficient to negate the *prima facie* validity of
> the filed claim. . . .  In practice, the objector must produce evidence
> which, if believed, would refute at least one of the allegations that
> is essential to the claim's legal sufficiency.   If the objector
> produces sufficient evidence to negate one or more of the sworn
> facts in the proof of claim, the burden reverts to the claimant to
> prove the validity of the claim by a preponderance of the evidence.

*In re Allegheny Int'l Inc.,* 954 F.2d 167, 173-74 (3d. Cir. 1992) (citation omitted).  Once the

*prima facie* validity of a Claim is rebutted, "it is for the claimant to prove his claim, not for the

objector to disprove it."  *In re Kahn,* 114 B.R. 40, 44 (Bankr. S.D.N.Y. 1990) (citations omitted).

13.     A chapter 11 debtor "has the duty to object to the allowance of any claim that is

improper."  *Int'l Yacht & Tennis, Inc. v. Wasserman Tennis, Inc. (In re Int'l Yacht & Tennis,*

*Inc.)*, 922 F.2d 659, 661-62 (11th Cir. 1991); *see also* 11 U.S.C. §§ 704(a)(5), 1106(a)(1), and

1107(a).

## I.     Substantive Duplicate Proofs of Claim.

14.     Upon review of the Proofs of Claim filed against the Debtors in these chapter 11

cases, the Debtors have identified 12 Substantive Duplicate Claims listed on **Exhibit 1** to

**Exhibit A**, in the aggregate claimed amount of $1,517,864.60.  Based on the Debtors' review of

the Proofs of Claim and their books and records, the Substantive Duplicate Claims are each

duplicative of another Proof of Claim filed by or on behalf of the same claimant (or a successor)

in respect of the same liabilities, but with certain differences (*e.g.*, a different asserted priority

classification, a claim for a single liability duplicated against multiple Debtors, or a claim for a single invoice reasserted in a subsequently-filed Proof of Claim that was not denoted as amending the initial Proof of Claim).  Failure to disallow the Substantive Duplicate Claims will result in double recoveries to the claimants.  Moreover, disallowance of these claims will enable the Claims Register to reflect more accurately the claims asserted against the Debtors.  Accordingly, the Debtors object to the allowance of the Substantive Duplicate Claims and request that such Substantive Duplicate Claims be disallowed in their entirety and expunged.

15.     Any disallowance or expungement of the Substantive Duplicate Claims will not affect the claims set forth under the column heading "Remaining Claims" on **Exhibit 1** to **Exhibit A**, which will remain on the Claims Register until withdrawn by the relevant claimants or disallowed by the Court, subject to the Debtors' right to object in the future on any grounds permitted by bankruptcy or nonbankruptcy law.  *See generally* 11 U.S.C. § 502(a).

## II.     No Liability Proofs of Claim.

16.     Upon review of the Proofs of Claim filed against the Debtors in these chapter 11 cases, the Debtors have identified 81 No Liability Claims listed on **Exhibit 2** to **Exhibit A**, in the aggregate claimed amount of $1,712,700.56.  Each of the No Liability Claims reflects a Proof of Claim that asserts a claim for which the Debtors do not believe they are liable, based on the supporting documentation provided in the Proof of Claim and a reasonable review of the Debtors' books and records.  After reasonable efforts, the Debtors have been unable to locate any documentation that would substantiate the No Liability Claims, whether in full or in part.  The No Liability Claims therefore fail to provide *prima facie* evidence of the validity and amount of the Proof of Claim they assert, as required by section 502 of the Bankruptcy Code and Bankruptcy Rule 3001(f).

17.     For all of the foregoing reasons, the Debtors object to the allowance of the Disputed Claims and request that such Disputed Claims be disallowed in their entirety and expunged.

**<u>Reservation of Rights</u>**

18.     Nothing contained in this Objection or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity of any particular claim (including the Proofs of Claim) against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim (including the Proofs of Claim) on any grounds; (c) a promise or requirement to pay any particular claim (including the Proofs of Claim); (d) an implication or admission that any particular claim (including the Proofs of Claim) is of a type specified or defined in this Objection; (e) an admission by the Debtors that any contract or lease is executory or unexpired, as applicable; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (g) a request or authorization to assume or reject any agreements under section 365 of the Bankruptcy Code; (h) a waiver of any party's rights to assert that any other party is in breach or default of any agreement; or (i) an admission that any contract or lease is integrated with any other contract or lease.

19.     The Debtors hereby reserve their right to amend, modify, and/or supplement this Objection, including to object to any of the Disputed Claims listed on **<u>Exhibit 1</u>** or **<u>Exhibit 2</u>** to **<u>Exhibit A</u>** on any additional grounds, prior to the hearing before the Court on this Objection, if any (the "<u>Hearing</u>") and nothing in this Objection shall affect the Debtors' right to object to the Disputed Claims at a future date on a basis other than as set forth in this Objection as permitted

by bankruptcy or nonbankruptcy law, subject to any limitations set forth in the Local Bankruptcy Rules.

### **Notice**

20.    The Debtors shall provide notice of this Objection on the date hereof via first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020,

and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:   (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) the claimants that filed the Disputed Claims. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

21.     No prior request for the relief sought in this Objection has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Dated: October 16, 2015
Wilmington, Delaware

/s/ Jason M. Madron

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:          edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                marc.kieselstein@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Objection Deadline:  October 30, 2015 at 4:00 p.m.** |
|  | ) | **Hearing Date:  November 25, 2015 at 10:00 a.m.** |
|  | ) |  |

## NOTICE OF "DEBTORS' THIRTY-THIRD OMNIBUS (SUBSTANTIVE) OBJECTION TO SUBSTANTIVE DUPLICATE AND NO LIABILITY CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003, AND 3007, AND LOCAL BANKRUPTCY RULE 3007-1" AND HEARING THEREON

PLEASE TAKE NOTICE THAT, on October 16, 2015, the above-captioned debtors and debtors in possession (the "Debtors") filed the **Debtors' Thirty-Third Omnibus (Substantive) Objection to Substantive Duplicate and No Liability Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1** (the "Objection") with the United States Bankruptcy Court for the District of Delaware, which seeks to alter the rights of the parties set forth in the Objection.

PLEASE TAKE FURTHER NOTICE that, responses, if any, to the Objection must be in writing, filed with the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, and served upon and received by the undersigned counsel to the Debtors on or before **October 30, 2015 at 4:00 p.m. (EDT)**.

PLEASE TAKE FURTHER NOTICE that a hearing on the Objection will be held before The Honorable Christopher S. Sontchi, United States Bankruptcy Judge, United States Bankruptcy Court, 824 North Market Street, 5th Floor, Courtroom 6, Wilmington, Delaware 19801 on **November 25, 2015 at 10:00 a.m. (EST)**.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED BY THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.

Dated:  October 16, 2015
　　　　Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　_/s/ Jason M. Madron_
　　　　　　　　　　　　　　　　　　**RICHARDS, LAYTON & FINGER, P.A.**
　　　　　　　　　　　　　　　　　　Mark D. Collins (No. 2981)
　　　　　　　　　　　　　　　　　　Daniel J. DeFranceschi (No. 2732)
　　　　　　　　　　　　　　　　　　Jason M. Madron (No. 4431)
　　　　　　　　　　　　　　　　　　920 North King Street
　　　　　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　　　Telephone:　(302) 651-7700
　　　　　　　　　　　　　　　　　　Facsimile:　(302) 651-7701
　　　　　　　　　　　　　　　　　　Email:　　　collins@rlf.com
　　　　　　　　　　　　　　　　　　　　　　　defranceschi@rlf.com
　　　　　　　　　　　　　　　　　　　　　　　madron@rlf.com

　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　**KIRKLAND & ELLIS LLP**
　　　　　　　　　　　　　　　　　　**KIRKLAND & ELLIS INTERNATIONAL LLP**
　　　　　　　　　　　　　　　　　　Edward O. Sassower, P.C. (admitted _pro hac vice_)
　　　　　　　　　　　　　　　　　　Stephen E. Hessler (admitted _pro hac vice_)
　　　　　　　　　　　　　　　　　　Brian E. Schartz (admitted _pro hac vice_)
　　　　　　　　　　　　　　　　　　601 Lexington Avenue
　　　　　　　　　　　　　　　　　　New York, New York 10022-4611
　　　　　　　　　　　　　　　　　　Telephone:　(212) 446-4800
　　　　　　　　　　　　　　　　　　Facsimile:　(212) 446-4900
　　　　　　　　　　　　　　　　　　Email:　　　edward.sassower@kirkland.com
　　　　　　　　　　　　　　　　　　　　　　　stephen.hessler@kirkland.com
　　　　　　　　　　　　　　　　　　　　　　　brian.schartz@kirkland.com

　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　James H.M. Sprayregen, P.C. (admitted _pro hac vice_)
　　　　　　　　　　　　　　　　　　Marc Kieselstein, P.C. (admitted _pro hac vice_)
　　　　　　　　　　　　　　　　　　Chad J. Husnick (admitted _pro hac vice_)
　　　　　　　　　　　　　　　　　　Steven N. Serajeddini (admitted _pro hac vice_)
　　　　　　　　　　　　　　　　　　300 North LaSalle
　　　　　　　　　　　　　　　　　　Chicago, Illinois 60654
　　　　　　　　　　　　　　　　　　Telephone:　(312) 862-2000
　　　　　　　　　　　　　　　　　　Facsimile:　(312) 862-2200
　　　　　　　　　　　　　　　　　　Email:　　　james.sprayregen@kirkland.com
　　　　　　　　　　　　　　　　　　　　　　　marc.kieselstein@kirkland.com
　　　　　　　　　　　　　　　　　　　　　　　chad.husnick@kirkland.com
　　　　　　　　　　　　　　　　　　　　　　　steven.serajeddini@kirkland.com

　　　　　　　　　　　　　　　　　　_Co-Counsel to the Debtors and Debtors in Possession_

## **EXHIBIT A**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### ORDER SUSTAINING DEBTORS' THIRTY-THIRD OMNIBUS (SUBSTANTIVE) OBJECTION TO SUBSTANTIVE DUPLICATE AND NO LIABILITY CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003, AND 3007, AND LOCAL BANKRUPTCY RULE 3007-1

Upon the objection (the "Objection")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), disallowing and expunging the Disputed Claims set forth on **Exhibit 1** and **Exhibit 2** attached hereto, all as set forth in the Objection and the Kotarba Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this case and the Objection in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Objection is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Objection and the opportunity for a hearing on the Objection (the "Hearing") under the circumstances; and the Court having reviewed the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Objection.

Objection and having heard the statements in support of the relief requested therein at the Hearing, if any; and the Court having determined that the legal and factual bases set forth in the Objection and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Objection is sustained as set forth herein.

2.     The Substantive Duplicate Claims set forth on the attached **Exhibit 1** are hereby disallowed in their entirety.

3.     The No Liability Claims set forth on the attached **Exhibit 2** are hereby disallowed in their entirety.

4.     The Claims Agent is authorized to modify the Claims Register to comport with the entry of this Order.

5.     Nothing set forth herein shall affect the parties' rights with respect to those claims identified as "Remaining Claims" on **Exhibit 1**, attached hereto, and the parties' rights with respect to such "Remaining Claims" are reserved, including, for the avoidance of doubt, the Debtors' right to object on any grounds permitted by bankruptcy or nonbankruptcy law, subject to any limitations set forth in the Local Bankruptcy Rules.

6.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity of any particular claim (including the Proofs of Claim) against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim (including the Proofs of Claim) on any grounds; (c) a promise or requirement to pay any particular claim (including the Proofs of Claim); (d) an implication or admission that any particular claim is of a type specified or defined in this

Objection (except as set forth herein); (e) an admission by the Debtors that any contract or lease is executory or unexpired, as applicable; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (g) a request or authorization to assume or reject any agreements under section 365 of the Bankruptcy Code; (h) a waiver of any party's rights to assert that any other party is in breach or default of any agreement; or (i) an admission that any contract or lease is integrated with any other contract or lease.

7.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Objection.

9.      This Court shall retain exclusive jurisdiction to resolve any dispute arising from or related to this Order.

Dated: _____, 2015
      Wilmington, Delaware      _____
                                      THE HONORABLE CHRISTOPHER S. SONTCHI
                                        UNITED STATES BANKRUPTCY JUDGE

Case 14-10979-CSS Doc 9436-1 Filed 10/18/16 Page 71 of 406

**EXHIBIT 1** to **EXHIBIT A**

**Substantive Duplicate Claims**

## ENERGY FUTURE HOLDINGS CORP., et al.

### THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBT 1 TO EXHIBIT A – Substantive Duplicate Claims

| | | CLAIMS TO BE DISALLOWED | | | | | REMAINING CLAIMS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
| 1 | APPLIED INDUSTRIAL TECHNOLOGIES, INC. CORPORATE HEADQUARTERS ATTN: DIANNE MISENKO 1 APPLIED PLAZA CLEVELAND, OH 44115 | 10/21/2014 | 14-11033 (CSS) | 5804 | $1,762.08 | APPLIED INDUSTRIAL TECHNOLOGIES ATTN: DIANNE MISENKO ONE APPLIED PLAZA CLEVELAND, OH 44115-5056 | 10/21/2014 | 14-11033 (CSS) | 5805 | $4,658.89 | Claimed invoice in claim to be disallowed appears to be included in the remaining claim. |
| 2 | BOLIN CONSTRUCTION INC PO BOX 1307 COLORADO CITY, TX 79512 | 09/08/2014 | 14-11032 (CSS) | 4192 | $2,100.00 | BOLIN CONSTRUCTION INC PO BOX 1307 COLORADO CITY, TX 79512 | 09/08/2014 | 14-11032 (CSS) | 4191 | $73,905.00 | Claimed liabilities in claim to be disallowed appear to be included in remaining claim. |
| 3 | DUST CONTROL TECHNOLOGY INC ATTN: LAURA STIVERSON 1607 W CHANUTE RD PEORIA, IL 61615 | 10/23/2014 | 14-11042 (CSS) | 6208 | $6,664.13 | DUST CONTROL TECHNOLOGY INC 1607 W CHANUTE RD PEORIA, IL 61615 | 10/23/2014 | 14-11022 (CSS) | 6206 | $6,664.13 | Claim to be disallowed and remaining claim are identical, except for the Debtors against which they are asserted. |

## ENERGY FUTURE HOLDINGS CORP., et al.

### THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBT 1 TO EXHIBIT A – Substantive Duplicate Claims

| | CLAIMS TO BE DISALLOWED | | | | REMAINING CLAIMS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
| 4 DUST CONTROL TECHNOLOGY INC ATTN: LAURA STIVERSON 1607 W CHANUTE RD PEORIA, IL 61615 | 10/23/2014 | 14-11042 (CSS) | 6209 | $19,950.00 | DUST CONTROL TECHNOLOGY INC ATTN: LAURA STIVERSON 1607 W CHANUTE RD PEORIA, IL 61615 | 10/23/2014 | 14-11022 (CSS) | 6207 | $19,950.00 | Claim to be disallowed and remaining claim are identical, except for the Debtors against which they are asserted. |
| 5 POWELL ELECTRICAL SYSTEMS, INC. ATTN: LARRY LARSEN 8550 MOSLEY ROAD HOUSTON, TX 77075 | 10/27/2014 | 14-11032 (CSS) | 7793 | $268,372.00 | POWELL ELECTRICAL SYSTEMS, INC. ATTN: LARRY LARSEN 8550 MOSLEY ROAD HOUSTON, TX 77075 | 10/27/2014 | 14-11022 (CSS) | 7792 | $268,372.00 | Claim to be disallowed and remaining claim are identical, except for the Debtors against which they are asserted. |
| 6 POWELL, J SCOTT 500 STONEHEDGE DR WYLIE, TX 75098-5145 | 06/23/2014 | 14-11023 (CSS) | 2458 | $1,888.10 | CETECH INC 602 N FIRST ST GARLAND, TX 75040 | 09/05/2014 | 14-11032 (CSS) | 4144 | $1,888.10 | Underlying liability asserted in claim to be disallowed is contained in remaining claim. |
| 7 REGIONAL STEEL PRODUCTS INC PO BOX 3887 VICTORIA, TX 77903 | 10/22/2014 | 14-11032 (CSS) | 6064 | $12,554.61 | REGIONAL STEEL INC PO BOX 3887 VICTORIA, TX 77903 | 10/22/2014 | 14-11032 (CSS) | 6065 | Undetermined* | Claimed invoices in claim to be disallowed appear to be included in remaining claim. |

## ENERGY FUTURE HOLDINGS CORP., et al.

### THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBT 1 TO EXHIBIT A – Substantive Duplicate Claims

| | | CLAIMS TO BE DISALLOWED | | | | REMAINING CLAIMS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
| 8 | SETPOINT INTEGRATED SOLUTIONS 19151 HIGHLAND ROAD BATON ROUGE, LA 70809 | 08/05/2014 | 14-11032 (CSS) | 3531 | $794,879.93 | SETPOINT INTEGRATED SOLUTIONS 19151 HIGHLAND ROAD BATON ROUGE, LA 70809 | 10/20/2014 | 14-11032 (CSS) | 5690 | $857,621.66 | Claimed invoices in claim to be disallowed appear to be included in remaining claim. |
| 9 | TNT CRANE & RIGGING, INC. C/O ANDREWS MYERS, P.C. ATTN: LISA M. NORMAN 3900 ESSEX LANE, SUITE 800 HOUSTON, TX 77027 | 10/06/2014 | 14-11018 (CSS) | 4939 | $21,999.75 | TNT CRANE & RIGGING, INC. C/O ANDREWS MYERS, P.C. ATTN: LISA M. NORMAN 3900 ESSEX LANE, SUITE 800 HOUSTON, TX 77027 | 10/06/2014 | 14-11042 (CSS) | 4944 | $356,315.00 | Claimed invoices in claim to be disallowed appear to be included in remaining claim. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBT 1 TO EXHIBIT A – Substantive Duplicate Claims**

| | | CLAIMS TO BE DISALLOWED | | | | REMAINING CLAIMS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
| 10 | TNT CRANE & RIGGING, INC. C/O ANDREWS MYERS, P.C. ATTN: LISA M. NORMAN 3900 ESSEX LANE, SUITE 800 HOUSTON, TX 77027 | 10/06/2014 | 14-11023 (CSS) | 4940 | $356,315.00 | TNT CRANE & RIGGING, INC. C/O ANDREWS MYERS, P.C. ATTN: LISA M. NORMAN 3900 ESSEX LANE, SUITE 800 HOUSTON, TX 77027 | 10/06/2014 | 14-11042 (CSS) | 4944 | $356,315.00 | Claim to be disallowed and remaining claims are identical, except for the Debtors against which they are asserted. |
| | | | | | | TNT CRANE & RIGGING, INC. C/O ANDREWS MYERS, P.C. ATTN: LISA M. NORMAN 3900 ESSEX LANE, SUITE 800 HOUSTON, TX 77027 | 10/06/2014 | 14-11022 (CSS) | 4941 | $291,831.00 | |
| | | | | | | TNT CRANE & RIGGING, INC. C/O ANDREWS MYERS, P.C. ATTN: LISA M. NORMAN 3900 ESSEX LANE, SUITE 800 HOUSTON, TX 77027 | 10/06/2014 | 14-11010 (CSS) | 4942 | $12,596.50 | |

## ENERGY FUTURE HOLDINGS CORP., et al.

### THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBT 1 TO EXHIBIT A – Substantive Duplicate Claims

| | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER | CLAIM # | CLAIM AMOUNT | REASON FOR DISALLOWANCE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | CLAIMS TO BE DISALLOWED | | | | | REMAINING CLAIMS | | | | | |
| 11 | TNT CRANE & RIGGING, INC. C/O ANDREWS MYERS, P.C. ATTN: LISA M. NORMAN 3900 ESSEX LANE, SUITE 800 HOUSTON, TX 77027 | 10/06/2014 | 14-11032 (CSS) | 4943 | $21,719.00 | TNT CRANE & RIGGING, INC. C/O ANDREWS MYERS, P.C. ATTN: LISA M. NORMAN 3900 ESSEX LANE, SUITE 800 HOUSTON, TX 77027 | 10/06/2014 | 14-11042 (CSS) | 4944 | $356,315.00 | Claimed invoice in claim to be disallowed appears to be included in the remaining claim. |
| 12 | TRIPLE P LAWN SERVICE PO BOX 83 LORAINE, TX 79532 | 10/06/2014 | 14-11032 (CSS) | 4967 | $9,660.00 | PHILLIPS, SANDRA P.O BOX 83 LORAINE, TX 79532 | 06/20/2014 | 14-11032 (CSS) | 2356 | $9,660.00 | Underlying liability asserted in claim to be disallowed is contained in remaining claim. |

|  | TOTAL | $1,517,864.60 |
|---|---|---|

**EXHIBIT 2** to **EXHIBIT A**

**No Liability Claims**

## ENERGY FUTURE HOLDINGS CORP., et al.

### THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 1 | APPLIED INDUSTRIAL TECHNOLOGIES ATTN: DIANNE MISENKO ONE APPLIED PLAZA CLEVELAND, OH 44115-5056 | 14-11022 (CSS) | Oak Grove Management Company LLC | 10/21/2014 | 5802 | $90.21 | Debtors are not liable for the asserted claim per a review of the claimant's Proof of Claim, the documents attached thereto, a reasonable review of the Debtors' books and records, and further discussion with claimant. |
| 2 | ARGYLE ISD C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4815 | $865.87 | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 3 | ARGYLE ISD C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4827 | $2,446.03 | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 4 | BAYLOR COUNTY C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JEANMARIE BAER PO BOX 8188 WICHITA FALLS, TX 76307 | 14-10979 (CSS) | Energy Future Holdings Corp. | 11/12/2014 | 9835 | $141.85 | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 5 | BAYLOR COUNTY C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JEANMARIE BAER PO BOX 8188 WICHITA FALLS, TX 76307 | 14-11045 (CSS) | Texas Utilities Electric Company, Inc. | 11/12/2014 | 9846 | $141.85 | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |

## ENERGY FUTURE HOLDINGS CORP., et al.

### THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 6 | BLACKWELL INDEPENDENT SCHOOL DISTRICT C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: R. BRUCE MEDLEY P.O. BOX 13430 ARLINGTON, TX 76094-0430 | 14-10989 (CSS) | TXU Electric Company, Inc. | 06/03/2014 | 1054 | $76.93* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 7 | BOWIE ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JEANMARIE BAER PO BOX 8188 WICHITA FALLS, TX 76307 | 14-10979 (CSS) | Energy Future Holdings Corp. | 11/12/2014 | 9840 | $95.58 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 8 | BRECKENRIDGE ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JEANMARIE BAER PO BOX 8188 WICHITA FALLS, TX 76307 | 14-10979 (CSS) | Energy Future Holdings Corp. | 11/12/2014 | 9836 | $663.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 9 | BRECKENRIDGE ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JEANMARIE BAER PO BOX 8188 WICHITA FALLS, TX 76307 | 14-10996 (CSS) | EFH Corporate Services Company | 11/12/2014 | 9845 | $663.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 10 | BUCKHOLTS INDEPENDENT SCHOOL DISTRICT C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JOHN T. BANKS 3301 NORTHLAND DRIVE, SUITE 505 AUSTIN, TX 78731 | 14-10979 (CSS) | Energy Future Holdings Corp. | 01/22/2015 | 9946 | $23,824.64 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |

* - Indicates claim contains unliquidated and/or undetermined amounts

**ENERGY FUTURE HOLDINGS CORP., et al.**

**THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 11 | BUCKHOLTS ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JOHN T. BANKS 3301 NORTHLAND DR, STE 505 AUSTIN, TX 78731 | 14-10979 (CSS) | Energy Future Holdings Corp. | 02/09/2015 | 9969 | $23,824.64 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 12 | BUCKHOLTS ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT 3301 NORTHLAND DR, STE 505 AUSTIN, TX 78731 | 14-10979 (CSS) | Energy Future Holdings Corp. | 03/17/2015 | 10009 | $23,824.64* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 13 | BUCKHOLTS ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JOHN T. BANKS 3301 NORTHLAND DR, STE 505 AUSTIN, TX 78731 | 14-10979 (CSS) | Energy Future Holdings Corp. | 03/24/2015 | 10026 | $23,824.64* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 14 | BURKBURNETT ISD C/O PERDUE BRANDON FIELDER COLLINS NOTT ATTN: JEANMARIE BAER P.O. BOX 8188 WICHITA FALLS, TX 76307 | 14-10979 (CSS) | Energy Future Holdings Corp. | 11/10/2014 | 9833 | $387.25 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 15 | CAMERON INDEPENDENT SCHOOL DISTRICT C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JOHN T. BANKS 3301 NORTHLAND DRIVE, SUITE 505 AUSTIN, TX 78731 | 14-10979 (CSS) | Energy Future Holdings Corp. | 01/22/2015 | 9945 | $110,428.30 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 16 | CAMERON INDEPENDENT SCHOOL DISTRICT C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JOHN T. BANKS 3301 NORTHLAND DRIVE, SUITE 505 AUSTIN, TX 78731 | 14-10989 (CSS) | TXU Electric Company, Inc. | 01/22/2015 | 9950 | $126.36 | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 17 | CAMERON ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT 3301 NORTHLAND DR, STE 505 AUSTIN, TX 78731 | 14-10989 (CSS) | TXU Electric Company, Inc. | 03/17/2015 | 10007 | $126.36* | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 18 | CAMERON ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT 3301 NORTHLAND DR, STE 505 AUSTIN, TX 78731 | 14-10979 (CSS) | Energy Future Holdings Corp. | 03/17/2015 | 10010 | $110,428.28* | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 19 | CAMERON ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JOHN T. BANKS 3301 NORTHLAND DR, STE 505 AUSTIN, TX 78731 | 14-10989 (CSS) | TXU Electric Company, Inc. | 03/24/2015 | 10024 | $126.36* | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 20 | CAMERON ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JOHN T. BANKS 3301 NORTHLAND DR, STE 505 AUSTIN, TX 78731 | 14-10979 (CSS) | Energy Future Holdings Corp. | 03/24/2015 | 10027 | $110,428.28* | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |

# ENERGY FUTURE HOLDINGS CORP., et al.

## THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 21 | CAYUGA ISD ATTN: CAROL PUGH PO BOX 427 CAYUGA, TX 75832 | | No Debtor Asserted | 11/06/2014 | 9805 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 22 | CENTRAL APPRAISAL DISTRICT ET AL C/O MCCREARY VESELKA BRAGG & ALLEN P.C. ATTN: LEE GORDON P.O. BOX 1269 ROUND ROCK, TX 78680-1269 | 14-10979 (CSS) | Energy Future Holdings Corp. | 06/02/2014 | 880 | $315.49* | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 23 | CITY OF CLEBURNE C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: ELIZABETH BANDA CALVO 500 EAST BORDER ST, SUITE 640 ARLINGTON, TX 76010 | 14-10996 (CSS) | EFH Corporate Services Company | 03/23/2015 | 10032 | $1,556.79 | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 24 | CITY OF COPPELL C/O LINEBARGER GOGGAN BLAIR SAMPSON LLP ATTN: ELIZABETH WELLER 2777 N. STEMMONS FREEWAY SUITE 1000 DALLAS, TX 75207 | 14-10989 (CSS) | TXU Electric Company, Inc. | 05/19/2014 | 105 | $10.26* | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 25 | CITY OF COPPELL C/O LINEBARGER GOOGAN BLAIR SAMPSON LLP ATTN: ELIZABETH WELLER 2777 N. STEMMONS FREEWAY SUITE 1000 DALLAS, TX 75207 | 14-10989 (CSS) | TXU Electric Company, Inc. | 08/31/2015 | 11152 | $16.44* | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 26 | CITY OF COPPER CANYON C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4820 | $67.64 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 27 | CITY OF COPPER CANYON C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4824 | $588.17 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 28 | CITY OF LEWISVILLE C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4814 | $88.02 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 29 | CITY OF LEWISVILLE C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4817 | $105.43 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 30 | CITY OF LEWISVILLE C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4819 | $497.35 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 31 | CITY OF LEWISVILLE C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4821 | $25.57 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |

# ENERGY FUTURE HOLDINGS CORP., et al.

## THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 32 | CITY OF LEWISVILLE C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4825 | $489.21 | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 33 | CITY OF ROANOKE C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4826 | $299.51 | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 34 | CITY OF ROSCOE C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: R. BRUCE MEDLEY P.O. BOX 13430 ARLINGTON, TX 76094-0430 | 14-10989 (CSS) | TXU Electric Company, Inc. | 06/03/2014 | 1053 | $29.05* | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 35 | CITY OF SWEETWATER C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: R. BRUCE MEDLEY P.O. BOX 13430 ARLINGTON, TX 76094-0430 | 14-10989 (CSS) | TXU Electric Company, Inc. | 06/03/2014 | 1059 | $1,161.92* | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 36 | CITY VIEW ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JEANMARIE BAER PO BOX 8188 WICHITA FALLS, TX 76307 | 14-10979 (CSS) | Energy Future Holdings Corp. | 11/10/2014 | 9829 | $1,037.60 | According to the Debtors' books and records, Debtors are not liable for the asserted claim.  The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 37 | CLEBURNE INDEPENDENT SCHOOL DISTRICT C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: ELIZABETH BANDA CALVO 500 EAST BORDER ST, SUITE 640 ARLINGTON, TX 76010 | 14-10996 (CSS) | EFH Corporate Services Company | 03/23/2015 | 10031 | $2,598.92 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 38 | COMMIATO'S MACHINE & REPAIR SERVICE INC 1141 N E LOOP CARTHAGE, TX 75633 | 14-11032 (CSS) | Luminant Generation Company LLC | 09/26/2014 | 4696 | $1,000.00 | No liability owed to claimant per a review of the claimant's Proof of Claim, the documents attached thereto, and a reasonable review of the Debtors' books and records. The Debtors determined that Debtors already paid claimant on account of this claim on 10/16/2013 via ACH number 8000915174. |
| 39 | COOKE COUNTY APPRAISAL DISTRICT C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JEANMARIE BAER PO BOX 8188 WICHITA FALLS, TX 76307 | 14-11045 (CSS) | Texas Utilities Electric Company, Inc. | 11/10/2014 | 9828 | $3,763.29 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 40 | COOKE COUNTY APPRAISAL DISTRICT C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JEANMARIE BAER PO BOX 8188 WICHITA FALLS, TX 76307 | 14-10979 (CSS) | Energy Future Holdings Corp. | 11/10/2014 | 9830 | $3,763.29 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 41 | COPPERAS COVE INDEPENDENT SCHOOL DISTRIC C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JOHN T. BANKS 3301 NORTHLAND DRIVE, SUITE 505 AUSTIN, TX 78731 | 14-11045 (CSS) | Texas Utilities Electric Company, Inc. | 03/24/2015 | 10019 | $3,684.59* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 42 | COPPERAS COVE INDEPENDENT SCHOOL DISTRIC C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JOHN T. BANKS 3301 NORTHLAND DRIVE, SUITE 505 AUSTIN, TX 78731 | 14-10979 (CSS) | Energy Future Holdings Corp. | 03/24/2015 | 10021 | $196,898.00* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 43 | COPPERAS COVE ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JOHN T. BANKS 3301 NORTHLAND DRIVE, SUITE 505 AUSTIN, TX 78731 | 14-11045 (CSS) | Texas Utilities Electric Company, Inc. | 06/25/2014 | 2567 | $3,684.59* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 44 | COPPERAS COVE ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JOHN T. BANKS 3301 NORTHLAND DRIVE, SUITE 505 AUSTIN, TX 78731 | 14-10979 (CSS) | Energy Future Holdings Corp. | 01/22/2015 | 9944 | $196,898.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 45 | COPPERAS COVE ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JOHN T. BANKS 3301 NORTHLAND DR, STE 505 AUSTIN, TX 78731 | 14-10979 (CSS) | Energy Future Holdings Corp. | 02/09/2015 | 9968 | $196,898.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 46 | COPPERAS COVE ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT 3301 NORTHLAND DR, STE 505 AUSTIN, TX 78731 | 14-10979 (CSS) | Energy Future Holdings Corp. | 03/17/2015 | 10011 | $196,898.00* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 47 | COPPERAS COVE ISD C/O PERDUE BRANDON FIELDER COLLINS MOTT 3301 NORTHLAND DR, STE 505 AUSTIN, TX 78731 | 14-11045 (CSS) | Texas Utilities Electric Company, Inc. | 03/17/2015 | 10013 | $3,684.59* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 49 | DENTON ISD C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4816 | $24.86 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 49 | DENTON ISD C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4822 | $347.85 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 50 | DENTON ISD C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4823 | $924.15 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 51 | DENTON ISD C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4828 | $671.81 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 52 | DOYENNE CONSTRUCTORS, LLC<br>PO BOX 127<br>MARIAH HILL, IN 47556 | 14-11032 (CSS) | **Luminant Generation Company LLC** | 06/04/2014 | 1103 | $45,000.00 | **According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors negotiated a termination of the contract to which this project invoice is related and the terms of that termination agreement provided that the Debtors' liability under that contract would be limited to amounts already paid.** |
| 53 | GOOCH, SHERRY D<br>PO BOX 181421<br>ARLINGTON, TX 76096 | 14-10997 (CSS) | **TXU Energy Retail Company LLC** | 10/27/2014 | 8098 | $438.42 | **According to the Debtors' books and records, Debtors are not liable for the asserted claim. Claimant was billed in accordance with their pricing plan.** |
| 54 | HIDALGO COUNTY<br>C/O PERDUE BRANDON FIELDER COLLINS MOTT<br>ATTN: JOHN T. BANKS<br>3301 NORTHLAND DRIVE, SUITE 505<br>AUSTIN, TX 78731 | 14-11035 (CSS) | **Southwestern Electric Service Company, Inc.** | 06/25/2014 | 2570 | $120.07* | **According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party.** |
| 55 | HIGHLAND INDEPENDENT SCHOOL DISTRICT<br>C/O PERDUE BRANDON FIELDER COLLINS MOTT<br>ATTN: R. BRUCE MEDLEY<br>P.O. BOX 13430<br>ARLINGTON, TX 76094-0430 | 14-10989 (CSS) | TXU Electric Company, Inc. | 06/03/2014 | 1061 | $27.84* | **According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC.** |
| 56 | HUMBLE INDEPENDENT SCHOOL DISTRICT<br>C/O PERDUE BRANDON FIELDER COLLINS MOTT<br>ATTN: CARL O. SANDIN<br>1235 NORTH LOOP WEST, SUITE 600<br>HOUSTON, TX 77008 | 14-10979 (CSS) | **Energy Future Holdings Corp.** | 06/23/2014 | 2488 | $4,513.10* | **According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party.** |

# ENERGY FUTURE HOLDINGS CORP., et al.

## THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 57 | HUMBLE INDEPENDENT SCHOOL DISTRICT C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: CARL O. SANDIN 1235 NORTH LOOP WEST, SUITE 600 HOUSTON, TX 77008 | 14-11041 (CSS) | Texas Power & Light Company, Inc. | 11/21/2014 | 9879 | $4,167.06 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 58 | JOHNSON COUNTY C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: ELIZABETH BANDA CALVO 500 EAST BORDER ST, SUITE 640 ARLINGTON, TX 76010 | 14-10996 (CSS) | EFH Corporate Services Company | 03/23/2015 | 10030 | $905.45 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 59 | LABORDE, DARLENE D 3017 SHERRY DR BATON ROUGE, LA 70816 | 14-10979 (CSS) | Energy Future Holdings Corp. | 02/02/2015 | 9962 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 60 | LAKE DALLAS ISD C/O SAWKO & BURROUGHS, P.C. 1172 BENT OAKS DR. DENTON, TX 76210 | 14-10979 (CSS) | Energy Future Holdings Corp. | 09/26/2014 | 4818 | $1,382.54 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 61 | MARTIN, ROBERT C 1300 FM 1460 GEORGETOWN, TX 78626-3902 | 14-10997 (CSS) | TXU Energy Retail Company LLC | 10/16/2014 | 5425 | Undetermined* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. Claimant was billed in accordance with their pricing. |
| 62 | MIDLAND COUNTY C/O PERDUE BRANDON FIELDER COLLINS MOTT P.O. BOX 817 LUBBOCK, TX 79408 | 14-10979 (CSS) | Energy Future Holdings Corp. | 03/23/2015 | 10015 | $4,005.06* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 63 | MONTAGUE COUNTY APPRAISAL DISTRICT C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: JEANMARIE BAER P.O. BOX 8188 WICHITA FALLS, TX 76307 | 14-11045 (CSS) | **Texas Utilities Electric Company, Inc.** | 11/12/2014 | 9847 | $95.58 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 64 | NOLAN COUNTY C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: R. BRUCE MEDLEY P.O. BOX 13430 ARLINGTON, TX 76094-0430 | 14-10989 (CSS) | **TXU Electric Company, Inc.** | 06/03/2014 | 1058 | $2,611.76* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 65 | RICE, NETTIE 1501 HILLCREST DR. GRAHAM, TX 76450 | | **Multiple Debtors Asserted** | 09/23/2014 | 4629 | $16,000.00 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 66 | RICHARDSON INDEPENDENT SCHOOL DISTRICT C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: R. BRUCE MEDLEY P.O. BOX 13430 ARLINGTON, TX 76094-0430 | 14-10989 (CSS) | **TXU Electric Company, Inc.** | 06/03/2014 | 1056 | $4,799.22* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 67 | ROSCOE INDEPENDENT SCHOOL DISRICT C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: R. BRUCE MEDLEY P.O. BOX 13430 ARLINGTON, TX 76094-0430 | 14-10989 (CSS) | **TXU Electric Company, Inc.** | 06/03/2014 | 1052 | $429.97* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |

**ENERGY FUTURE HOLDINGS CORP., et al.**

**THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 68 | SAXON, D.W. 1820 CR 4110 PITTSBURG, TX 75686 | | No Debtor Asserted | 09/12/2014 | 4332 | $761.83 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 69 | STEWART, KUK JA 2028 SANDY LANE IRVING, TX 75060 | 14-10979 (CSS) | Energy Future Holdings Corp. | 08/24/2015 | 10982 | Undetermined* | According to a reasonable review of the Debtors' books and records , the materials appended to the claims filed by the Claimant, and additional materials provided to the Debtors, the Debtors are not liable for the asserted claim. |
| 70 | SWEETWATER INDEPENDENT SCHOOL DISTRICT C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: R. BRUCE MEDLEY P.O. BOX 13430 ARLINGTON, TX 76094-0430 | 14-10989 (CSS) | TXU Electric Company, Inc. | 06/03/2014 | 1060 | $3,723.49* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 71 | SZYMCZAK, ED 1030 CHAMBOARD LN HOUSTON, TX 77018-3211 | 14-10997 (CSS) | TXU Energy Retail Company LLC | 09/24/2014 | 4654 | $250.00 | According to the Debtors' books and records, the Debtors are not liable for the asserted claim. The third-party vendor contracted to manage the Welcome Bonus program confirmed that a Welcome Bonus card was issued in the amount of $125, used, and expired with a remaining balance of $29.02. A letter providing the promotional code for the Energy Store was mailed to claimant; the promotional code expired on 9/30/2011, as indicated on the letter. |

## ENERGY FUTURE HOLDINGS CORP., et al.

### THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 72 | TEXAS DISPOSAL SYSTEMS<br>PO BOX 17126<br>AUSTIN, TX 78760 | 14-11032 (CSS) | Luminant Generation Company LLC | 10/22/2014 | 5967 | $21,910.90 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The claim is for invoices for work performed on an expired Purchase Order issued by the Debtors. |
| 73 | THORNDALE ISD<br>C/O PERDUE BRANDON FIELDER COLLINS MOTT<br>ATTN: JOHN T. BANKS<br>3301 NORTHLAND DR, STE 505<br>AUSTIN, TX 78731 | 14-10979 (CSS) | Energy Future Holdings Corp. | 02/09/2015 | 9971 | $99,569.92 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 74 | THORNDALE ISD<br>C/O PERDUE BRANDON FIELDER COLLINS MOTT<br>3301 NORTHLAND DR, STE 505<br>AUSTIN, TX 78731 | 14-10979 (CSS) | Energy Future Holdings Corp. | 03/17/2015 | 10008 | $99,569.92* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 75 | THORNDALE ISD<br>C/O PERDUE BRANDON FIELDER COLLINS MOTT<br>ATTN: JOHN T. BANKS<br>3301 NORTHLAND DR, STE 505<br>AUSTIN, TX 78731 | 14-10979 (CSS) | Energy Future Holdings Corp. | 03/24/2015 | 10025 | $99,569.92* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 76 | TRAVIS COUNTY<br>ATTN: KAY D. BROCK<br>P.O. BOX 1748<br>AUSTIN, TX 78767 | 14-11045 (CSS) | Texas Utilities Electric Company, Inc. | 10/24/2014 | 7557 | $18,650.26 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 77 | TRAVIS COUNTY<br>ATTN: KAY D. BROCK<br>P.O. BOX 1748<br>AUSTIN, TX 78767 | 14-11036 (CSS) | Lone Star Pipeline Company, Inc. | 10/24/2014 | 7558 | $27.57 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |

* - Indicates claim contains unliquidated and/or undetermined amounts

## ENERGY FUTURE HOLDINGS CORP., et al.

### THIRTY-THIRD OMNIBUS (SUBSTANTIVE): EXHIBIT 2 TO EXHIBIT A – No Liability Claims

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | CLAIM AMOUNT | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 78 | TRAVIS COUNTY ATTN: KAY D. BROCK P.O. BOX 1748 AUSTIN, TX 78767 | 14-10989 (CSS) | TXU Electric Company, Inc. | 10/24/2014 | 7560 | $28,779.02 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| 79 | TRICORBRAUN 6 CITYPLACE DR # 1000 SAINT LOUIS, MO 63141 | 14-11032 (CSS) | Luminant Generation Company LLC | 09/08/2014 | 4166 | $0.00 | No liability owed to claimant per Debtors' books and records. Claimant does not appear to assert a claim. |
| 80 | TW TELECOM INC. 10475 PARK MEADOWS DRIVE LITTLETON, CO 80124 | 14-10997 (CSS) | TXU Energy Retail Company LLC | 08/04/2014 | 3527 | $4,521.34 | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor third-party. |
| 81 | WHITESBORO INDEPENDENT SCHOOL DISTRICT C/O PERDUE BRANDON FIELDER COLLINS MOTT ATTN: R. BRUCE MEDLEY P.O. BOX 13430 ARLINGTON, TX 76094-0430 | 14-10989 (CSS) | TXU Electric Company, Inc. | 06/03/2014 | 1062 | $307.86* | According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company LLC. |
| | | | | | TOTAL | $1,712,700.56* | |

## **Exhibit F**

*Declaration of Steven R. Kotarba, Managing Director with Alvarez & Marsal North America, LLC in Support of the Debtors' Fourteenth Omnibus (Substantive) Objection to Certain Substantive Duplicate, No Liability, and No Claim Asserted Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [Bankr. D.I. 4051]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | **Re:  D.I. 4050** |

**DECLARATION OF STEVEN R. KOTARBA,
MANAGING DIRECTOR WITH ALVAREZ & MARSAL
NORTH AMERICA, LLC, IN SUPPORT OF THE
DEBTORS' FOURTEENTH OMNIBUS (SUBSTANTIVE)
OBJECTION TO (CERTAIN SUBSTANTIVE DUPLICATE,
NO LIABILITY, AND NO CLAIM ASSERTED) CLAIMS PURSUANT
TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY
RULES 3001, 3003, AND 3007, AND LOCAL BANKRUPTCY RULE 3007-1**

Pursuant to 28 U.S.C. § 1746, I, Steven R. Kotarba, declare as follows:

1.      I am a Managing Director with Alvarez & Marsal North America, LLC ("A&M"). A&M serves as an advisor to the Debtors in preparation for and during these chapter 11 proceedings by assisting the Debtors with financial analyses, claims management, and various notice requirements.  In preparing this declaration, I generally relied on court pleadings and other compilations on which I typically rely in performing my job, and which are generally relied on by the public or persons in my occupation.  I am over the age of 18 and duly authorized to execute this declaration (the "Declaration") on behalf of the Debtors in support of the *Debtors' Fourteenth Omnibus (Substantive) Objection to (Certain Substantive Duplicate, No Liability, and No Claim Asserted) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy*

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* (the "<u>Objection</u>"),[2] filed contemporaneously herewith.

2.      The facts in this Declaration are based on my personal knowledge and review of information and my experience with the Debtors' operations and these chapter 11 cases.  If called to testify, I would testify to the facts set forth herein.

3.      To date, over 10,000 Proofs of Claim have been filed in these chapter 11 cases. Considerable time and resources have been expended to review and reconcile the Proofs of Claim filed against the Debtors in these chapter 11 cases.  Upon review of the Proofs of Claim filed in these chapter 11 cases and supporting documentation attached thereto, the Debtors have determined that the Disputed Claims listed on **<u>Exhibit 1</u>** to **<u>Exhibit A</u>**, **<u>Exhibit 2</u>** to **<u>Exhibit A</u>**, and **<u>Exhibit 3</u>** to **<u>Exhibit A</u>** to the Objection are not properly asserted pursuant to section 502(b) of the Bankruptcy Code, Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure, Local Rule 3007-1, and applicable orders of the Bankruptcy Court.

## I.      Bondholder Duplicates Proofs of Claim.

4.      Upon review of the Proofs of Claim filed against the Debtors in these chapter 11 cases, the Debtors have identified 18 Bondholder Duplicate Claims listed on **<u>Exhibit 1</u>** to **<u>Exhibit A</u>**, in the aggregate claimed amount of $135,271.03.  To the best of my knowledge, information, and belief, and insofar as I have been able to ascertain after reasonable inquiry—including the Debtors', their restructuring advisors' (Alvarez & Marsal, North America, LLC), and my (i) review of the Bondholder Duplicate Claims and (ii) reasonable efforts to research the same on the Debtors' books and records and Schedules—the Bondholder Duplicate Claims have each been filed by an individual bondholder on account of one or more bonds they hold and are

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Objection.

each duplicative of another Proof of Claim filed by the indenture trustee for the same underlying bond(s).

## II.     No Liability Proofs of Claim.

5.      Upon review of the Proofs of Claim filed against the Debtors in these chapter 11 cases, the Debtors have identified 61 No Liability Claims listed on **Exhibit 2** to **Exhibit A**, in the aggregate claimed amount of $1,806,589,934.50.  To the best of my knowledge, information, and belief, and insofar as I have been able to ascertain after reasonable inquiry—including the Debtors', their restructuring advisors' (Alvarez & Marsal, North America, LLC), and my (i) review of the No Liability Claims and (ii) reasonable efforts to research the same on the Debtors' books and records and Schedules— the No Liability Claims reflect Proofs of Claim that are each asserted against the Debtors, but for which there is no indication that the Debtors are actually liable.

## III.    No Claim Asserted Proofs of Claim.

6.      Upon review of the Proofs of Claim filed against the Debtors in these chapter 11 cases, the Debtors have identified 34 No Claim Asserted Claims listed on **Exhibit 3** to **Exhibit A**, in the aggregate claimed amount of $0.  To the best of my knowledge, information, and belief, and insofar as I have been able to ascertain after reasonable inquiry—including the Debtors', their restructuring advisors' (Alvarez & Marsal, North America, LLC), and my (i) review of the No Claim Asserted Claims and (ii) reasonable efforts to research the same on the Debtors' books and records and Schedules—the No Claim Asserted Claims reflect Proofs of Claim that each assert a claim in in the liquidated amount of $0.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Wilmington, Delaware
Dated: April 2, 2015

*/s/ Steven R. Kotarba*
Steven R. Kotarba
Managing Director
Alvarez & Marsal North America, LLC

# **Exhibit G**

*Declaration of Steven R. Kotarba, Managing Director with Alvarez & Marsal North America, LLC in Support of the Debtors' Thirty-Third Omnibus (Substantive) Objection to Substantive Duplicate and No Liability Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [Bankr. D.I. 6501]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 6499** |

## DECLARATION OF STEVEN R. KOTARBA, MANAGING DIRECTOR WITH ALVAREZ & MARSAL NORTH AMERICA, LLC, IN SUPPORT OF THE DEBTORS' THIRTY-THIRD OMNIBUS (SUBSTANTIVE) OBJECTION TO SUBSTANTIVE DUPLICATE AND NO LIABILITY CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003, AND 3007, AND LOCAL BANKRUPTCY RULE 3007-1

Pursuant to 28 U.S.C. § 1746, I, Steven R. Kotarba, declare as follows:

1.      I am a Managing Director with Alvarez & Marsal North America, LLC ("A&M"). A&M serves as an advisor to the Debtors in preparation for and during these chapter 11 proceedings by assisting the Debtors with financial analyses, claims management, and various notice requirements.  In preparing this declaration, I generally relied on court pleadings and other compilations on which I typically rely in performing my job, and which are generally relied on by the public or persons in my occupation.  I am over the age of 18 and duly authorized to execute this declaration (the "Declaration") on behalf of the Debtors in support of the *Debtors' Thirty-Third Omnibus (Substantive) Objection to Substantive Duplicate and No Liability Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007,*

---

[1]      The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

and Local Bankruptcy Rule 3007-1 [D.I. 6499] (the "Objection"),[2] filed contemporaneously herewith.

2.        The facts in this Declaration are based on my personal knowledge and review of information and my experience with the Debtors' operations and these chapter 11 cases.  If called to testify, I would testify to the facts set forth herein.

3.        To date, over 10,000 Proofs of Claim have been filed in these chapter 11 cases. Considerable time and resources have been expended to review and reconcile the Proofs of Claim filed against the Debtors in these chapter 11 cases.  Upon review of the Proofs of Claim filed in these chapter 11 cases and supporting documentation attached thereto, the Debtors have determined that the Disputed Claims listed on **Exhibit 1** and **Exhibit 2** to **Exhibit A** to the Objection are not properly asserted pursuant to section 502(b) of the Bankruptcy Code, Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure, Local Rule 3007-1, and applicable orders of the Bankruptcy Court.

## I.        Substantive Duplicate Proofs of Claim.

4.        Upon review of the Proofs of Claim filed against the Debtors in these chapter 11 cases, the Debtors have identified 12 Substantive Duplicate Claims listed on **Exhibit 1** to **Exhibit A**, in the aggregate claimed amount of $1,517,864.60.  To the best of my knowledge, information, and belief, and insofar as I have been able to ascertain after reasonable inquiry— including the Debtors', their restructuring advisors' (Alvarez & Marsal, North America, LLC), and my (i) review of the Substantive Duplicate Claims and (ii) reasonable efforts to research the same on the Debtors' books and records and Schedules—the Substantive Duplicate Claims are each duplicative of another Proof of Claim filed by or on behalf of the same claimant (or a

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Objection.

RLF1 13165221v.1

successor) in respect of the same liabilities, but with certain differences (*e.g.*, a different asserted priority classification, a claim for a single liability duplicated against multiple Debtors, or a claim for a single invoice reasserted in a subsequently filed Proof of Claim that was not denoted as amending the initial Proof of Claim).

## II.     No Liability Proofs of Claim.

5.      Upon review of the Proofs of Claim filed against the Debtors in these chapter 11 cases, the Debtors have identified 81 No Liability Claims listed on **Exhibit 2** to **Exhibit A**, in the aggregate claimed amount of $1,712,700.56.  To the best of my knowledge, information, and belief, and insofar as I have been able to ascertain after reasonable inquiry—including the Debtors', their restructuring advisors' (Alvarez & Marsal, North America, LLC), and my (i) review of the No Liability Claims and (ii) reasonable efforts to research the same on the Debtors' books and records and Schedules— the No Liability Claims reflect Proofs of Claim that are each asserted against the Debtors, but for which there is no indication that the Debtors are actually liable.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 16, 2015
       Wilmington, Delaware

*/s/ Steven R. Kotarba*
Steven R. Kotarba
Managing Director
Alvarez & Marsal North America, LLC

# **Exhibit H**

Bankr. D.I. 5384

14-10979 (CSS)

## Statement of Facts

To date is August 18, 2015

My Name is Kenneth R Stewart AKA
Kenneth S Stewart. ~~I pray consider here~~
~~my Claim and evidence supporting my claims~~
~~My claims is as follows~~

FILED 2015 AUG 18 AM 8:43 US BANKRUPTCY CLERK DISTRICT OF

A)  Edison International to support my claim
is TRW that states Kenneth S Stewart
AKA  Robert


B)  Associates Commercial Corporation
documents to support Associates is United States
Bankruptcy filed in Southern District of Texas
Associates has UCC Filings associated with K+K and
Citi, Peoples Sidney Financials Corporation, Kenneth Stewart
Aurora oil + gas is a subsidiary of Associates.
~~April 16, 1998  Case No. 3-98025318 CCM 217~~
~~pre-disbursement  Authorization  by Kenneth Stewart~~


September 28, 1998  Stewart Associates merged
with JSC Manufacturing Inc.  which "JSC
Manufacturing"  75-291468  also  JSC manufacturing
74-1729051, ~~is a subsidiary of TXU and ~~ ~~ ~~
JSC is subsidiary of TXU

C) Allstate Non Accessible Member (Preferred Stock) supporting document is letter from allstate. Mutuals. Also after my father passing in January 25, 2004. Ms Megina Scavrod 100,000,000 under Kennett Stewart aka Kennth Stewalt. Form 8-K is attached. Ms Megina signed of on the Non Accessible Member of Allstate. the "Capital Asset Program output policy coverage part with Commerical automobile, connorcial property, crime & fidelity, Farm, Liquor, medical professional liability, owners & contractors protective liability, POLLUTION LIABILITY, Products / Completed Railroad Protective.

D) Mineral lease Under Clifford Chance US LLP ,200 Park Avenue, New York 10166 which was supposed to pay the notes on mortgage Lone Star Park Grand prairie and other notes.

## Prayer

I Kenneth R Stewart aka kenneth
R Stewart have provided sufficient evidence
to prove I am secured note holder for Edison
International, Preferred Stock holder


Kenneth R Stewart
2028 Sandy Ln
Irving TX 75060
817-751-3280

8-K 1 eix8k010903.htm EDISON INTERNATIONAL 8-K JANUARY 9, 2003

===========================================================================================================

<div align="center">

**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**FORM 8-K**

**CURRENT REPORT**

Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

Date of Report (Date of earliest event reported): December 20, 2002

**EDISON INTERNATIONAL**
(Exact name of registrant as specified in its charter)

</div>

| CALIFORNIA | 001-9936 | 95-4137452 |
|---|---|---|
| (State or principal jurisdiction of incorporation or organization) | (Commission file number) | (I.R.S. employer identification no.) |

<div align="center">

2244 Walnut Grove Avenue
(P.O. Box 800)
Rosemead, California 91770
(Address of principal executive offices, including zip code)

626-302-2222
(Registrant's telephone number, including area code)

</div>

===========================================================================================================

Items 1 through 4 and 6 through 9 are not included because they are inapplicable.

*This current report includes forward-looking statements. These forward-looking statements are based on current expectations and projections about future events based upon knowledge of facts as of the date of this current report and assumptions about future events. These forward-looking statements are subject to various risks and uncertainties that may be outside the control of Edison International and its subsidiaries. Edison International has no obligation to publicly update or revise any forward-looking statements, whether as a result of new information, future events, or otherwise.*

**Item 5.  Other Events**

**Lakeland Project Placed into Administrative Receivership in the United Kingdom**

Edison Mission Energy is a wholly-owned, indirect subsidiary of Edison International.  Edison Mission Energy's Lakeland project operated a 220 MW combined cycle, natural gas-fired power plant located in the United Kingdom. Ownership of the project is held through Edison Mission Energy's indirect subsidiary, Lakeland Power Ltd., which

sold power generated from the plant pursuant to a power sales agreement with Norweb Energi Ltd, which is a direct subsidiary of TXU (UK) Holdings Limited (TXU UK) and an indirect subsidiary of TXU Europe Group plc (TXU Europe).

As previously reported, TXU UK and TXU Europe, together with a related entity, TXU Europe Energy Trading Limited (TXU Energy), entered into formal administration proceedings in the United Kingdom (similar to bankruptcy proceedings in the United States) on November 19, 2002. As a result of these actions and their effect on Norweb Energi Ltd. and Edison Mission Energy's contractual arrangements with other parties, the Lakeland power plant currently is not operating. In December 2002, the directors of Norweb Energi Ltd. appointed a liquidator to wind up its contractual rights and obligations.

On December 4, 2002, Norweb Energi Ltd. provided a notice of disclaimer of the Power Sales Agreement dated October 20, 1989 (as amended from time to time) between Lakeland Power Ltd. and Norweb Energi Ltd. (as successor to North Western Electricity Board) under Section 178 of the Insolvency Act. The disclaimer is effectively a termination of the power sales agreement.

On December 19, 2002, the lenders to the Lakeland project accelerated the debt owing under the bank agreement that governs the project's indebtedness primarily as a result of the notice of disclaimer of the power sales agreement by Norweb Energi Ltd. The bank loans of Lakeland Power Ltd. are non-recourse to Edison Mission Energy. Furthermore, the defaults on these loans do not cross-default to any other indebtedness of Edison Mission Energy or its affiliates.

On December 20, 2002, the project's lenders exercised their right to appoint Michael Thomas Seery and Michael Vincent McLoughlin, partners with KPMG LLP, as administrative receiver over the assets of Lakeland Power Ltd. This followed discussions over the past several weeks regarding future operations of the power plant. The administrative receiver is

Page 2

appointed to take control of the affairs of Lakeland Power Ltd. and has a wide range of powers (specified in the Insolvency Act 1986), including authorizing the sale of the power plant. The appointment of the administrative receiver results in the treatment of Lakeland power plant as an asset held for sale under Statement of Financial Accounting Standards No. 144, "Accounting for the Impairment or Disposal of Long-Lived Assets" (SFAS No. 144).

The events related to the Lakeland project will result in an impairment charge and a provision for bad debts of approximately $100 million ($70 million after tax) in the fourth quarter ended December 31, 2002, arising from the write-down by Edison Mission Energy of the Lakeland power plant and related claims under the power sales agreement (an asset group under SFAS No. 144) to their fair market value. Edison Mission Energy will account for the Lakeland project as a discontinued operation in its Annual Report on Form 10-K for the year ended December 31, 2002, and will no longer consolidate the activities of Lakeland Power Ltd. due to the loss of control arising from the appointment of the administrative receiver.

The Edison Mission Energy consolidated financial statements for the years ended 2001 and 2000 were subject to an audit by Arthur Andersen LLP which was presented in Edison Mission Energy's 2001 Annual Report on Form 10-K. Edison Mission Energy has appointed PricewaterhouseCoopers LLP as the auditor for its 2002 consolidated financial statements. Under Statement of Auditing Standards No. 58, Reports on Audited Financial Statements, a re-audit ordinarily is necessary for discontinued operations which require reclassification of prior years consolidated financial statements to conform to the separate presentation of discontinued operations in such financial statements in accordance with SFAS No. 144. Edison Mission Energy has been advised by PricewaterhouseCoopers LLP that a re-audit of its 2001 and 2000 consolidated financial statements is required as a result of the classification of the Lakeland project as a discontinued operation.

**Conditional Agreement by Contact Energy to Acquire Taranaki Power Station**

On December 23, 2002, Contact Energy Ltd., a New Zealand publicly traded energy company 51% owned by Edison Mission Energy, announced that it has entered into a conditional agreement with NGC Holdings Ltd. to acquire the Taranaki Combined Cycle power station and related interests for NZ$500 million. The Taranaki station is a 357 MW combined cycle, natural gas-fired plant located near Stratford, New Zealand. The acquisition is conditioned on, among other things, Contact Energy gaining a clearance from the New Zealand Commerce Commission, approval by the shareholders of NGC, and the termination of a cross border leveraged lease currently in existence. Subject to satisfaction of the closing conditions, a closing is expected in February 2003. As a result of the proposed acquisition and the financing to be obtained by Contact Energy to finance such acquisition, Standard and Poor's lowered the long-term credit rating of Contact Energy from BBB+ to BBB.

**United Airlines Bankruptcy and Aircraft Leases**

As previously reported, Edison International's wholly-owned, indirect subsidiary Edison Capital has leased two aircraft to United Airlines. United Airlines filed for United States bankruptcy court protection on December 9, 2002. United Airlines has proposed restructuring the leases for both of Edison Capital's aircraft, which would

Page 3

result in Edison Capital receiving no further rent payments. As a result, Edison Capital will take a write-down of $35 million against earnings for the fourth quarter ended December 31, 2002.

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

<div align="center">

EDISON INTERNATIONAL
(Registrant)


/S/ KENNETH S. STEWART
-----------------------------------------------------------
KENNETH S. STEWART
Assistant General Counsel and Assistant Secretary

</div>

January 9, 2003



This is your TRW consumer identification number. Please refer to this number when you call or write TRW.

ID# 999772410931653

KENNETH ROBERT STEWART, JR
2028 SANDY LN
IRVING, TX  75060

OTHER ADDRESSES    1928 POMAR WAY          YEAR OF BIRTH      1970
                   WALNUT CREEK CA 94598

## IDENTIFICATION INFORMATION:

THE FOLLOWING ADDITIONAL INFORMATION HAS BEEN PROVIDED TO US BY ORGANIZATIONS THAT REPORT INFORMATION TO US.

ADDRESS        2028 SANDY LN            110 SMALL HILL DR
               IRVING TX 75060          GRAND PRAIRIE TX 75050
               REPORTED 03/89 BY A TRW MEMBER   REPORTED 09/92 BY A TRW MEMBER

               2028 SANDY LANE
               IRVING TX 75060
               REPORTED 08/94 BY A TRW MEMBER

OTHER
               MIDDLE INITIAL      S

               AKA NAME            ROBERT

FROM 9/1/94 THE NUMBER OF INQUIRIES WITH THIS SOCIAL SECURITY # = 0

FACS+ BUSINESS ON FACS+ FILE/CPI MANAGEMENT/2028 SANDY LN/IRVING            TX
75060/214.255.1133

Social Security Number You Gave Was Issued: 1977 - 1979

CONSUMER CREDIT REPORT (CDI)        A09M12        12 09 94 16:34    PAGE  5

UNITED STATES BANKRUPTCY COURT for the SOUTHERN DISTRICT OF TEXAS

**FILED**

**OCT 27 97**

UNITED STATES
BANKRUPTCY COURT

KENNETH STEWART                                    Debtor.

ASSOCIATES COMMERCIAL CORPORATION               Bankruptcy Case Number

                                                Movant.        97-24405-B-7

versus

KENNETH STEWART AND MIKE
BOUDLOCHE, TRUSTEE                              Respondent

## NOTICE OF HEARING ON RELIEF FROM STAY

On ___OCTOBER 27, 1997___ a motion was filed, seeking relief from the automatic stay of 11 U.S.C. § 362. The Court has set the preliminary hearing on the motion for:

Date: ___DECEMBER 3, 1997___      NO DOCKET CALL WILL BE HELD PRIOR TO HEARING DATE. CALL

Time: ___9:00 a.m.___             GORDON MARTIN @ (512) ___-____ BY 1:00 P.M. ON NOVEMBER
                                  24, 1997. _____ ELECTRONIC ANNOUNCEMENT MAY
                                  RESULT IF THIS MOTION NOT BEING HEARD!

Location:

   U. S. Courthouse, Room 407, 500 East Tenth, Brownsville, TX 78520.

If you object to the lifting of the stay, no later than five (5) working days before the hearing you must:

1. File with the Clerk an affidavit saying that:

   a. You have conferred with the movant in a good faith effort to reach an agreement, with the dates and times of the conferences.
   b. The efforts were unsuccessful, and
   c. A hearing is required.

2. File with the Clerk your written answer opposing the motion; include:

   a. The particular grounds for the opposition under Federal Rules 8(b) and 11;
   b. The identity of your interest in the property;
   c. The probable value of the property and the equity after deduction of all encumbrances; and
   d. Attach copies of your affidavit of conferment and the motion to your answer.

3. Serve a copy of your written answer on the movant at:

   MIKE RIDULFO
   1200 AMERICAN BANK PLAZA
   CORPUS CHRISTI, TX 78475

Your written answer will be your request for hearing. No hearing will be held on the request of the movant or on an answer received within five days before the hearing.

                                        MICHAEL N. MILBY, Clerk

Date Issued:  OCTOBER 27, 1997          By: _____
                                              Deputy Clerk

To the Movant:  A copy of this notice with _____

                                        LOCAL FORM NO. 6

In re: EECI, Inc.                                                    Case No. 14-10992 (CSS)

### Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| VIACOM INC<br>1515 BROADWAY<br>NEW YORK, NY 10036 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| VIKING PUMP INC<br>HAWKINS PARNELL THACKSTON & YOUNG LLP<br>THACKSTON, ROBERT EDWIN<br>445 S. FIGUEROA, SUITE 3200<br>LOS ANGELES, CA 90071-1651 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| ZURN INDUSTRIES INC<br>1801 PITTSBURGH AVE<br>ERIE, PA 16502-1916 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| ZURN INDUSTRIES LLC<br>FORMAN PERRY WATKINS KRUTZ & TARDY LLP<br>PATRICE PUJOL<br>1717 ST. JAMES PLACE<br>HOUSTON, TX 77056-3418 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| A W CHESTERTON CO<br>500 UNICORN PARK DRIVE<br>WOBURN, MA 01801-3345 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| ABLE SUPPLY CO.<br>7323 MONTICELLO<br>SKOKIE, IL 60076 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| AES CORPORATION<br>4300 WILSON BVD. 11TH FLOOR<br>ARLINGTON, VA 22203 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| AES DEEPWATER LLC<br>701 LIGHT COMPANY RD<br>PASADENA, TX 77506 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| ALLIS CHALMERS CORPORATION<br>4205 RIVER GREEN PARKWAY<br>DULUTH, GA 30096 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| AMERICAN STANDARD INC<br>FORMAN PERRY WATKINS KRUTZ & TARDY LLP<br>LAURA A. FRASE<br>2001 BRYAN STREET, SUITE 1300<br>DALLAS, TX 75201-3008 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| AQUA CHEM INC<br>WHITE SHAVER PC<br>CLAY M. WHITE<br>205 W. LOCUST STREET<br>TYLER, TX 75702 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| ARMSTRONG INTERNATIONAL INC<br>WHITE SHAVER PC<br>CLAY M. WHITE<br>205 W. LOCUST STREET<br>TYLER, TX 75702 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| ASHLAND INC<br>HAYS, MCCONN, RICE & PICKERING, P.C.<br>B. STEVE RICE<br>1233 WEST LOOP SOUTH, SUITE 2200<br>HOUSTON, TX 77027 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| BABCOCK BORSIG POWER INC<br>DEHAY & ELLISTON<br>GARY D. ELLISTON<br>901 MAIN STREET, SUITE 3500<br>DALLAS, TX 75202 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |

In re: EECI, Inc.                                                                    **Case No. 14-10992 (CSS)**

### Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| DEZURIK INC<br>CHRISTINA ANN DENMARK<br>STEPTOE & JOHNSON PLLC<br>10001 WOODLOCH FOREST DR, SUITE 300<br>THE WOODLANDS, TX 77380 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| DOW CHEMICAL COMPANY<br>ARTHUR RAY ALMQUIST<br>MEHAFFYWEBER, P.C<br>500 DALLAS SUITE 1200<br>HOUSTON, TX 77002 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| DURABLE MANUFACTURING COMPANY INC<br>140 SHEREE BLVD., PO BOX 700<br>LIONVILLE, PA 19341 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| EASTMAN CHECIAL TEXAS CITY INC<br>RASCHKE, FRED D.<br>MILLS SHIRLEY LLP<br>2228 MECHANIC ST., SUITE 400<br>GALVESTON, TX 77550 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| ELLIOTT TURBOMACHINERY COMPANY, INC.<br>ELLIOT GROUP<br>901 N. FOURTH STREET<br>JEANNETTE, PA 15644 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| EXXON MOBIL CORPORATION<br>STEPHEN SHAYNE GARDNER<br>DEHAY & ELLISTON LLP<br>901 MAIN ST.<br>DALLAS, TX 75202 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| FLOWSERVE CORPORATION<br>LAWSON, RODNEY HALL<br>CARRINGTON COLEMAN SLOMAN &<br>BLUMENTHAL LLP, 901 MAIN ST.<br>DALLAS, TX 75202 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| FLOWSERVE CORPORATION<br>142 CLINTON ROAD<br>FAIRFIELD, NJ 07004 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| FMC CORPORATION<br>GARY D. ELLISTON<br>DEHAY & ELLISTON LLP<br>901 MAIN ST.<br>DALLAS, TX 75202 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| FOSTER WHEELER ENERGY CORP<br>MEHAFFY WEBER<br>SANDRA F. CLARK<br>2615 CALDER AVE SUITE 800, PO BOX 16<br>BEAUMONT, TX 77702 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GARLOCK SEALING TECHNOLOGIES INC<br>1666 DIVISION STREET<br>PALMYRA, NY 14522 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GENERAL ELECTRIC CO<br>MEHAFFY WEBER<br>KEITH WILLIAM FOLEY<br>2615 CALDER AVE SUITE 800, PO BOX 16<br>BEAUMONT, TX 77702 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GENERAL REFRACTORIES COMPANY<br>1 BALA AVE STE 210<br>BALA CYNWYD, PA 19004 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |

**In re: EECI, Inc.**                                              **Case No. 14-10992 (CSS)**

### Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| CONOCO PHILLIPS COMPANY<br>ADAMS AND REESE LLP<br>LESLIE M HENRY<br>ONE SHELL SQUARE<br>NEW ORLEANS, LA 70139 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| KELLY MOORE PAINT COMPANY<br>HAWKINS PARNELL THACKSTON & YOUNG LLP<br>PATRICIA KAY ANDREWS<br>1717 WEST 6TH STREET, SUITE 250<br>AUSTIN, TX 78703-4777 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| UNIROYAL HOLDING INC<br>70 GREAT HILL RD<br>NAUGATUCK, CT 06770 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| BP AMOCO CHEMICAL COMPANY<br>ANDREWS KURTH LLP<br>THOMAS W. TAYLOR<br>600 TRAVIS, SUITE 4200<br>HOUSTON, TX 77002 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| BP PRODUCTS NORTH AMERICA INC<br>ANDREWS KURTH LLP<br>THOMAS W. TAYLOR<br>600 TRAVIS, SUITE 4200<br>HOUSTON, TX 77002 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| CBS CORPORATION<br>MEHAFFY WEBER<br>KEITH WILLIAM FOLEY<br>2615 CALDER AVE SUITE 800, PO BOX 16<br>BEAUMONT, TX 77702 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| CERTAINTEED CORPORATION<br>PO BOX 860<br>VALLEY FORGE, PA 19482 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| CHEVRON USA INC<br>STRONG PIPKIN BISSELL & LEDYARD LLP<br>DAVID W LEDYARD<br>595 ORLEANS, SUITE 1400<br>BEAUMONT, TX 77701 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| COOPER INDUSTRIES INC<br>EATON CENTER<br>BRUCE M. TATEN, SVP, GEN. COUN. & CHIEF<br>COMPLIANCE OFFICER, 1000 EATON BOULEVARD<br>CLEVELAND, OH 44122 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| CRANE COMPANY<br>K & L GATES LLP<br>JAMES A LOWERY<br>1717 MAIN STREET, SUITE 2800<br>DALLAS, TX 75201 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| CROWN CENTRAL LLC<br>ONE NORTH CHARLES STREET<br>SUITE 2200<br>BALTIMORE, MD 21201 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| DAIMLER CHRYSLER CORPORATION<br>1000 CHRYSLER DRIVE<br>AUBURN HILLS, MI 48326-2766 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |

In re: EECI, Inc.                                                    **Case No. 14-10992 (CSS)**

### Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| GENUINE PARTS COMPANY<br>MANNING GOSDA & ARREDONDO LLP<br>RICK W. THAMM<br>24 GREENWAY PLAZA, SUITE 525<br>HOUSTON, TX 77046 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GEORGIA PACIFIC CORP<br>133 PEACHTREE ST NE #4810<br>ATLANTA, GA 30303 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GEORGIA PACIFIC LLC<br>GILBERT & GILBERT LAW OFFICE<br>ERIC T. FUREY<br>222 NORTH VELASCO STREET<br>ANGLETON, TX 77515 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GOODRICH CORPORATION<br>FOUR COLISEUM CENTRE<br>2730 W. TYVOLA RD.<br>CHARLOTTE, NC 28217 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GOODYEAR TIRE & RUBBER CO<br>VORYS, SATER, SEYMOUR AND PEASE LLP<br>TIFFANY SUE BINGHAM<br>700 LOUISIANA STREET<br>HOUSTON, TX 77002 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GOULDS PUMPS INC<br>NAMAN HOWELL SMITH & LEE, PLLC<br>RAYMOND C. JR. PALMER<br>400 AUSTIN AVE, SUITE 800<br>WACO, TX 76703 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| GUARD LINE INC<br>215 S LOUISE ST<br>ATLANTA, TX 75551 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| HONEYWELL INC<br>VORYS, SATER, SEYMOUR AND PEASE LLP<br>TIFFANY SUE BINGHAM<br>700 LOUISIANA STREET<br>HOUSTON, TX 77002 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| IMO INDUSTRIES INC<br>1710 AIRPORT ROAD, SUITE 111<br>MONROE, NC 28110 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| INDUSTRIAL HOLDING CORP<br>101 HUDSON STREET<br>JERSEY CITY, NJ 07302 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| INGERSOLL RAND CO<br>FORMAN PERRY WATKINS KRUTZ & TARDY LLP<br>LAURA A. FRASE<br>2001 BRYAN STREET, SUITE 1300<br>DALLAS, TX 75201-3008 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| JM MANUFACTORING COMPANY INC<br>MILTENBERGER LAW FIRM PLLC<br>MILTENBERGER, LEWIS C.<br>700 N. CARROLL AVE, SUITE 140<br>SOUTHLAKE, TX 76092 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| KAISER GYPSUM COMPANY INC<br>801 MINAKER DR<br>ANTIOCH, CA 94509 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |

In re: EECI, Inc.                                          Case No. 14-10992 (CSS)

### Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| BW/IP INTERNATIONAL COMPANY<br>222 W LAS COLINAS BLVD SUITE 1500<br>IRVING, TX 75039 | KAREN HARMAN<br>ADDRESS ON FILE |
| C.S.R. LIMITED D/B/A COLONIAL SUGAR<br>SHIRLEY L RUDOFSKI<br>2031 HEARTH CIRCLE<br>LANSING, IL 60438 | KAREN HARMAN<br>ADDRESS ON FILE |
| CARRIER CORPORATION<br>CT CORPORATION SYSTEM<br>1209 ORANGE STREET<br>WILMINGTON, DE 19801 | KAREN HARMAN<br>ADDRESS ON FILE |
| CBS F/K/A WESTINGHOUSE ELECTRIC<br>7 ST. PAUL ST, STE 1660<br>BALTIMORE, MD 21202 | KAREN HARMAN<br>ADDRESS ON FILE |
| CRANE COMPANY<br>100 1ST STAMFORD PL #300<br>STAMFORD, CT 06902 | KAREN HARMAN<br>ADDRESS ON FILE |
| DONTAR INDUSTRIES INC<br>NATIONAL REGISTERED AGENTS INC<br>1300 E NINTH STREET<br>CHICAGO, IL 60604 | KAREN HARMAN<br>ADDRESS ON FILE |
| EATON ELECTRICAL INC<br>351 WEST CAMDEN ST<br>6TH FLOOR<br>BALTIMORE, MD 21201 | KAREN HARMAN<br>ADDRESS ON FILE |
| FMC CORPORATION<br>CORPORATION TRUST INCORPORATED<br>351 WEST CAMDEN STREET<br>BALTIMORE, MD 21201 | KAREN HARMAN<br>ADDRESS ON FILE |
| GENERAL ELECTRIC CO<br>351 WEST CAMDEN ST<br>6TH FLOOR<br>BALTIMORE, MD 21201 | KAREN HARMAN<br>ADDRESS ON FILE |
| GENUINE PARTS COMPANY<br>2999 CIRCLE 75 PKWY<br>ATLANTA, GA 30339 | KAREN HARMAN<br>ADDRESS ON FILE |
| GEORGIA PACIFIC CORP<br>351 WEST CAMDEN ST<br>6TH FLOOR<br>BALTIMORE, MD 21201 | KAREN HARMAN<br>ADDRESS ON FILE |
| GOULDS PUMPS (IPG) INC<br>300 E LOMBARD STREET<br>BALTIMORE, MD 21202 | KAREN HARMAN<br>ADDRESS ON FILE |
| HAMPSHIRE INDUSTRIES, INC.<br>320 WEST 24TH STREET<br>BALTIMORE, MD 21211 | KAREN HARMAN<br>ADDRESS ON FILE |
| HIGBEE INC<br>6741 THOMPSON RD<br>SYRACUSE, NY 13211 | KAREN HARMAN<br>ADDRESS ON FILE |
| HONEYWELL INTERNATIONAL INC<br>7TH ST PAUL STREET<br>SUITE 1660<br>BALTIMORE, MD 21202 | KAREN HARMAN<br>ADDRESS ON FILE |
| I.M.O. INDUSTRIES INC.<br>11 EAST CHASE STREET<br>BALTIMORE, MD 21202 | KAREN HARMAN<br>ADDRESS ON FILE |

In re: EECI, Inc.                                                    Case No. 14-10992 (CSS)

## Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| INGERSOLL RAND CO<br>CORPORATION TRUST INCORPORATED<br>351 WEST CAMDEN STREET<br>BALTIMORE, MD 21202 | KAREN HARMAN<br>ADDRESS ON FILE |
| KCG INC<br>ILLINOIS CORPORATION SERVICES<br>801 ADLAI STEVENSON DRIVE<br>SPRINGFIELD, IL 62703 | KAREN HARMAN<br>ADDRESS ON FILE |
| LENNOX INDUSTRIES INC<br>CORPORATION SERVICE COMPANY<br>211 E. 7TH STREET, SUITE 620<br>AUSTIN, TX 78701 | KAREN HARMAN<br>ADDRESS ON FILE |
| MCIC INC<br>BODIE, DOLINA, SMITH & HOBBS, P.A.<br>21 W SUSQUEHANNA AVE<br>TOWSON, MD 21204 | KAREN HARMAN<br>ADDRESS ON FILE |
| MURCO WALL PRODUCTS INC<br>2032 N COMMERCE ST<br>FORT WORTH, TX 76106 | KAREN HARMAN<br>ADDRESS ON FILE |
| NATIONAL AUTOMOTICE PARTS ASSOCIATION<br>CT CORPORATION SYSTEM<br>1201 PEACHTREE ST NE<br>ATLANTA, GA 30361 | KAREN HARMAN<br>ADDRESS ON FILE |
| PNEUMO ABEX CORPORATION<br>2704 COMMERCE DR, STE B<br>HARRISBURG, PA 17110 | KAREN HARMAN<br>ADDRESS ON FILE |
| RHEEM MANUFACTURING CO<br>THE CORPORATION TRUST COMPANY<br>1209 ORANGE ST<br>WILMINGTON, DE 19801 | KAREN HARMAN<br>ADDRESS ON FILE |
| SQUARE D<br>11 EAST CHASE STREET<br>BALTIMORE, MD 21202 | KAREN HARMAN<br>ADDRESS ON FILE |
| THE WILLIAM POWELL COMPANY<br>2503 SPRING GROVE AVE<br>CINCINNATI, OH 45214 | KAREN HARMAN<br>ADDRESS ON FILE |
| TRANE US INC<br>CT CORPORATION SYSTEM<br>1209 ORANGE STREET<br>WILMINGTON, DE 19801 | KAREN HARMAN<br>ADDRESS ON FILE |
| UNION CARBIDE CORP<br>30 EAST 42ND STREET<br>NEW YORK, NY 10017 | KAREN HARMAN<br>ADDRESS ON FILE |
| UNION CARBIDE CORP<br>351 WEST CAMDEN ST<br>6TH FLOOR<br>BALTIMORE, MD 21201 | KAREN HARMAN<br>ADDRESS ON FILE |
| VELAN VALVE CORP<br>94 AVENUE C<br>WILLISTON, VT 05495 | KAREN HARMAN<br>ADDRESS ON FILE |
| VIKING PUMP INC<br>CT CORPORATION SYSTEM<br>500 E COURT AVE STE 200<br>DES MOINES, IA 50309 | KAREN HARMAN<br>ADDRESS ON FILE |

In re: EECI, Inc.

Case No. 14-10992 (CSS)

### Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| FMC CORPORATION<br>CORPORATION TRUST INCORPORATED<br>351 WEST CAMDEN STREET<br>BALTIMORE, MD 21201 | HAROLD HARMAN<br>ADDRESS ON FILE |
| GENERAL ELECTRIC CO<br>351 WEST CAMDEN ST<br>6TH FLOOR<br>BALTIMORE, MD 21201 | HAROLD HARMAN<br>ADDRESS ON FILE |
| GENUINE PARTS COMPANY<br>2999 CIRCLE 75 PKWY<br>ATLANTA, GA 30339 | HAROLD HARMAN<br>ADDRESS ON FILE |
| GEORGIA PACIFIC CORP<br>351 WEST CAMDEN ST<br>6TH FLOOR<br>BALTIMORE, MD 21201 | HAROLD HARMAN<br>ADDRESS ON FILE |
| GOULDS PUMPS (IPG) INC<br>300 E LOMBARD STREET<br>BALTIMORE, MD 21202 | HAROLD HARMAN<br>ADDRESS ON FILE |
| HAMPSHIRE INDUSTRIES, INC.<br>320 WEST 24TH STREET<br>BALTIMORE, MD 21211 | HAROLD HARMAN<br>ADDRESS ON FILE |
| HIGBEE INC<br>6741 THOMPSON RD<br>SYRACUSE, NY 13211 | HAROLD HARMAN<br>ADDRESS ON FILE |
| HONEYWELL INTERNATIONAL INC<br>7TH ST PAUL STREET<br>SUITE 1660<br>BALTIMORE, MD 21202 | HAROLD HARMAN<br>ADDRESS ON FILE |
| I.M.O. INDUSTRIES INC.<br>11 EAST CHASE STREET<br>BALTIMORE, MD 21202 | HAROLD HARMAN<br>ADDRESS ON FILE |
| INGERSOLL RAND CO<br>CORPORATION TRUST INCORPORATED<br>351 WEST CAMDEN STREET<br>BALTIMORE, MD 21202 | HAROLD HARMAN<br>ADDRESS ON FILE |
| KCG INC<br>ILLINOIS CORPORATION SERVICES<br>801 ADLAI STEVENSON DRIVE<br>SPRINGFIELD, IL 62703 | HAROLD HARMAN<br>ADDRESS ON FILE |
| LENNOX INDUSTRIES INC<br>CORPORATION SERVICE COMPANY<br>211 E. 7TH STREET, SUITE 620<br>AUSTIN, TX 78701 | HAROLD HARMAN<br>ADDRESS ON FILE |
| MCIC INC<br>BODIE, DOLINA, SMITH & HOBBS, P.A.<br>21 W SUSQUEHANNA AVE<br>TOWSON, MD 21204 | HAROLD HARMAN<br>ADDRESS ON FILE |
| MURCO WALL PRODUCTS INC<br>2032 N COMMERCE ST<br>FORT WORTH, TX 76106 | HAROLD HARMAN<br>ADDRESS ON FILE |
| NATIONAL AUTOMOTICE PARTS ASSOCIATION<br>CT CORPORATION SYSTEM<br>1201 PEACHTREE ST NE<br>ATLANTA, GA 30361 | HAROLD HARMAN<br>ADDRESS ON FILE |

In re: EECI, Inc.                                     Case No. 14-10992 (CSS)

### Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| YOUNG GROUP LTD<br>1054 CENTRAL INDUSTRIAL DRIVE<br>ST LOUIS, MO 63110-2304 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| YOUNG INSULATION GROUP OF ST LOUIS INC<br>1054 CENTRAL INDUSTRIAL DRIVE<br>ST LOUIS, MO 63110-2304 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| 3M COMPANY<br>2501 HUDSON RD<br>ST. PAUL, MN 55144-1000 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| A O SMITH CORPORATION<br>11270 WEST PARK PLACE, SUITE 170<br>PO BOX 245008<br>MILWAUKEE, WI 53224 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| A W CHESTERTON CO<br>500 UNICORN PARK DRIVE<br>WOBURN, MA 01801-3345 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| AMERON INTERNATIONAL CORP<br>245 SOUTH LOS ROBLES AVENUE<br>PASADENA, CA 91101 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| BECHTEL GROUP INC<br>MICHAEL BAILEY, GEN. COUN.<br>50 BEALE STREET<br>SAN FRANCISCO, CA 94105-1895 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| HONEYWELL INTERNATIONAL INC<br>101 COLUMBIA RD<br>PO BOX 4000<br>MORRISTOWN, NJ 07962 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| IMO INDUSTRIES INC<br>1710 AIRPORT ROAD, STE 111<br>MONROE, NC 28110 | HENRY LEE THOMAS AND GARDENIA THOMAS<br>ADDRESS ON FILE |
| BW/IP INTERNATIONAL COMPANY<br>222 W LAS COLINAS BLVD SUITE 1500<br>IRVING, TX 75039 | HAROLD HARMAN<br>ADDRESS ON FILE |
| C.S.R. LIMITED D/B/A COLONIAL SUGAR<br>SHIRLEY L RUDOFSKI<br>2031 HEARTH CIRCLE<br>LANSING, IL 60438 | HAROLD HARMAN<br>ADDRESS ON FILE |
| CARRIER CORPORATION<br>CT CORPORATION SYSTEM<br>1209 ORANGE STREET<br>WILMINGTON, DE 19801 | HAROLD HARMAN<br>ADDRESS ON FILE |
| CBS F/K/A WESTINGHOUSE ELECTRIC<br>7 ST. PAUL ST, STE 1660<br>BALTIMORE, MD 21202 | HAROLD HARMAN<br>ADDRESS ON FILE |
| CRANE COMPANY<br>100 1ST STAMFORD PL #300<br>STAMFORD, CT 06902 | HAROLD HARMAN<br>ADDRESS ON FILE |
| DONTAR INDUSTRIES INC<br>NATIONAL REGISTERED AGENTS INC<br>1300 E NINTH STREET<br>CHICAGO, IL 60604 | HAROLD HARMAN<br>ADDRESS ON FILE |
| EATON ELECTRICAL INC<br>351 WEST CAMDEN ST<br>6TH FLOOR<br>BALTIMORE, MD 21201 | HAROLD HARMAN<br>ADDRESS ON FILE |

In re: EECI, Inc.                                                    Case No. 14-10992 (CSS)

### Schedule H - Co-Debtor Rider 2: Litigation Parties

| Name and Address of Co-Debtor | Name and Address of Creditor |
|---|---|
| MAREMONT CORPORATION<br>2400 MAREMONT PARKWAY<br>LOUDON, TN 37774 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| METROPOLITAN LIFE INSURANCE CO<br>200 PARK AVENUE<br>NEW YORK, NY 10166 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| MILWAUKEE VALVE COMPANY INC<br>16550 WEST STRATTON DRIVE<br>NEW BERLIN, WI 53151 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| MURCO WALL PRODUCTS INC<br>2032 N COMMERCE ST<br>FORT WORTH, TX 76164 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| NAGLE PUMPS INC<br>SMITH ADAMS LAW FEEHAN LLP<br>ROBERT L. ADAMS, WEDGE INTERNATIONAL<br>TOWER, 1415 LOUISIANA STREET, SUITE 3800<br>HOUSTON, TX 77002 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| NATIONAL AUTOMOTIVE PARTS ASSOCIATION<br>2999 CIRCLE 75 PKWY<br>ATLANTA, GA 30339 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| OAKFABCO INC<br>HAWKINS PARNELL THACKSTON & YOUNG LLP<br>JASON JAMES IRVIN<br>4514 COLE AVE, SUITE 500<br>DALLAS, TX 75205-5412 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| OWENS ILLINOIS INC<br>1 MICHAEL OWENS WAY<br>PERRYSBURG, OH 43551 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| PHOENIX PACKING AND GASKET MFG CO<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>HOLLI VIRGINIA PRYOR-BAZE<br>1111 LOUISIANA STREET, 44TH FLOOR<br>HOUSTON, TX 77002-5200 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| PNEUMO ABEX CORPORATION<br>THIRD STREET & JEFFERSON AVENUE<br>CAMDEN, NJ 08104 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| RAPID AMERICAN CORP<br>667 MADISON AVENUE<br>NEW YORK, NY 10021 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| SEPCO CORPORATION<br>123 AIRPARK INDUSTRIAL ROAD<br>ALABASTER, AL 35007 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| SHERWIN WILLIAMS COMPANY<br>CATHERINE M KILBANE, SVP, GEN. COUN.<br>& SEC.<br>101 W PROSPECT AVENUE<br>CLEVELAND, OH 44115 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| T H AGRICULTURE & NUTRITION LLC<br>250 WEST 57TH STREET, SUITE 901<br>NEW YORK, NY 10107 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |
| TOTAL PETROCHEMICALS USA INC<br>TOTAL PLAZA<br>1201 LOUISIANA, SUITE 1800<br>HOUSTON, TX 77002 | PAUL LEDALE MARTIN AND IONA JAMES MARTIN<br>ADDRESS ON FILE |

**UNITED STATES**
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## FORM 10-QSB

(Mark One)

☒ QUARTERLY REPORT UNDER SECTION 13 OR 15 (d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the quarterly period ended March 31, 2008

☐ TRANSITION REPORT UNDER SECTION 13 OR 15(d) OF THE EXCHANGE ACT

For the transition period from _____ to _____

Commission File Number 0-22223

# PEOPLES-SIDNEY FINANCIAL CORPORATION
(Exact name of small business issuer as specified in its charter)

Delaware
(State or other jurisdiction of incorporation or organization)

31-1499862
(IRS Employer Identification No.)

101 E. Court Street, Sidney, Ohio 45365
(Address of principal executive offices)

(937) 492-6129
(Issuer's telephone number)

Check whether the issuer (1) filed all reports required to be filed by Section 13 or 15(d) of the Exchange Act during the past 12 months, and (2) has been subject to such filing requirements for the past 90 days.
Yes  T                         No  £

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).
Yes  £                         No  T

As of May 12, 2008 the latest practicable date, 1,361,048 shares of the issuer's common shares, $.01 par value, were issued and outstanding.

Transitional Small Business Disclosure Format (Check One):
Yes  £                         No  T

*[handwritten]* ✒ 702963

*[handwritten]* The Corporation Trust Company

PEOPLES-SIDNEY FINANCIAL CORPORATION
INDEX

|  |  | Page |
|---|---|---|
| PART I - FINANCIAL INFORMATION | | |
| Item 1. | Financial Statements (Unaudited) | |
| | Consolidated Balance Sheets | 3 |
| | Consolidated Statements of Income | 4 |
| | Consolidated Statements of Comprehensive Income | 5 |
| | Condensed Consolidated Statements of Changes in Shareholders' Equity | 6 |
| | Consolidated Statements of Cash Flows | 7 |
| | Notes to Consolidated Financial Statements | 8 |
| Item 2. | Management's Discussion and Analysis | 16 |
| Item 3. | Controls and Procedures | 24 |
| PART II - OTHER INFORMATION | | |
| Item 1. | Legal Proceedings | 25 |
| Item 2. | Unregistered Sales of Equity Securities and Use of Proceeds | 25 |
| Item 3. | Defaults Upon Senior Securities | 25 |
| Item 4. | Submission of Matters to a Vote of Security Holders | 25 |
| Item 5. | Other Information | 25 |
| Item 6. | Exhibits | 25 |
| SIGNATURES | | 26 |
| INDEX TO EXHIBITS | | 27 |

2

PEOPLES-SIDNEY FINANCIAL CORPORATION
CONSOLIDATED BALANCE SHEETS
MARCH 31, 2008 AND JUNE 30, 2007

Item 1. _Financial Statements_

|  | March 31, 2008 (Unaudited) | June 30, 2007 |
|---|---|---|
| **ASSETS** |  |  |
| Cash and due from financial institutions | $ 1,541,809 | $ 1,065,054 |
| Interest-bearing deposits in other financial institutions | 4,610,133 | 4,117,144 |
| Overnight deposits | 2,200,000 | 2,000,000 |
| Total cash and cash equivalents | 8,351,942 | 7,182,198 |
| Time deposits | 1,000,000 | -- |
| Securities available for sale | 2,056,260 | 4,847,820 |
| Federal Home Loan Bank stock | 1,844,500 | 1,820,800 |
| Loans, net of allowance of $603,100 and $664,800 | 120,249,845 | 121,487,075 |
| Accrued interest receivable | 937,546 | 795,326 |
| Premises and equipment, net | 1,803,658 | 1,864,053 |
| Other real estate owned and repossessions | 438,463 | 143,482 |
| Other assets | 161,237 | 167,540 |
| **Total assets** | $ 136,843,451 | $ 138,308,294 |
|  |  |  |
| **LIABILITIES AND SHAREHOLDERS' EQUITY** |  |  |
| Deposits | $ 82,327,778 | $ 82,479,470 |
| Borrowed funds | 36,908,791 | 38,189,030 |
| Accrued interest payable and other liabilities | 591,913 | 704,238 |
| Total liabilities | 119,828,482 | 121,372,738 |
|  |  |  |
| Common stock in ESOP subject to repurchase obligation | 1,542,288 | 1,677,238 |
|  |  |  |
| Preferred stock, $.01 par value, 500,000 shares authorized, none issued and outstanding | -- | -- |
| Common stock, $.01 par value, 3,500,000 shares authorized, 1,785,375 shares issued | 16,569 | 16,569 |
| Additional paid-in capital | 9,306,291 | 9,169,858 |
| Retained earnings | 11,554,822 | 11,702,607 |
| Treasury stock, 424,327 shares, at cost | (5,198,322) | (5,198,322) |
| Unearned employee stock ownership plan shares | (244,666) | (333,042) |
| Accumulated other comprehensive loss | 37,987 | (99,352) |
| Total shareholders' equity | 15,472,681 | 15,258,318 |
|  |  |  |
| **Total liabilities and shareholders' equity** | $ 136,843,451 | $ 138,308,294 |

See accompanying notes to consolidated financial statements.

PEOPLES-SIDNEY FINANCIAL CORPORATION
CONSOLIDATED STATEMENTS OF INCOME
THREE AND NINE MONTHS ENDED MARCH 31, 2008 AND 2007
(Unaudited)

| | Three Months Ended March 31, | | Nine Months Ended March 31, | |
| --- | --- | --- | --- | --- |
| | 2008 | 2007 | 2008 | 2007 |
| **Interest income** | | | | |
| Loans, including fees | $ 2,133,826 | $ 2,146,657 | $ 6,417,947 | $ 6,384,618 |
| Securities | 32,562 | 50,089 | 140,911 | 158,825 |
| Demand, time and overnight deposits | 42,382 | 37,938 | 141,377 | 96,959 |
| Dividends on Federal Home Loan Bank stock | 23,767 | 28,621 | 85,724 | 81,373 |
| Total interest income | 2,232,537 | 2,263,305 | 6,785,959 | 6,721,775 |
| **Interest expense** | | | | |
| Deposits | 592,206 | 545,128 | 1,778,726 | 1,558,338 |
| Borrowed funds | 488,080 | 510,693 | 1,501,412 | 1,586,333 |
| Total interest expense | 1,080,286 | 1,055,821 | 3,280,138 | 3,144,671 |
| Net interest income | 1,152,251 | 1,207,484 | 3,505,821 | 3,577,104 |
| Provision for loan losses | 10,501 | 210 | 93,770 | (68,887) |
| Net interest income after provision for loan losses | 1,141,750 | 1,207,274 | 3,412,051 | 3,645,991 |
| **Noninterest income** | | | | |
| Service fees and other charges | 26,882 | 29,360 | 81,902 | 94,292 |
| Gain (loss) on sale of REO and repossessions | 2,316 | 816 | 6,870 | 696 |
| Mortgage banking income | 45 | 2,346 | 9,677 | 2,346 |
| Total noninterest income | 29,243 | 32,522 | 98,449 | 97,334 |
| **Noninterest expense** | | | | |
| Compensation and benefits | 436,935 | 439,936 | 1,298,490 | 1,303,476 |
| Director fees | 24,300 | 24,300 | 72,900 | 72,900 |
| Occupancy and equipment | 98,345 | 103,529 | 289,899 | 280,825 |
| Computer processing | 98,172 | 89,473 | 290,519 | 272,160 |
| Professional services | 81,551 | 47,247 | 180,690 | 129,460 |
| State franchise taxes | 46,185 | 51,194 | 149,021 | 160,094 |
| Other | 83,079 | 86,874 | 254,417 | 245,388 |
| Total noninterest expense | 868,567 | 842,553 | 2,535,936 | 2,464,303 |
| Income before income taxes | 302,426 | 397,243 | 974,564 | 1,279,022 |
| Income tax expense | 108,800 | 142,000 | 349,400 | 454,300 |
| Net income | $ 193,626 | $ 255,243 | $ 625,164 | $ 824,722 |
| Earnings per common share - basic | $ 0.14 | $ 0.19 | $ 0.47 | $ 0.62 |
| Earnings per common share - diluted | $ 0.14 | $ 0.19 | $ 0.47 | $ 0.62 |

See accompanying notes to consolidated financial statements.

PEOPLES-SIDNEY FINANCIAL CORPORATION
CONDENSED CONSOLIDATED STATEMENTS OF CHANGES IN
SHAREHOLDERS' EQUITY
THREE AND NINE MONTHS ENDED MARCH 31, 2008 AND 2007
(Unaudited)

| | Three Months Ended March 31, | | Nine Months Ended March 31, | |
| --- | --- | --- | --- | --- |
| | 2008 | 2007 | 2008 | 2007 |
| Balance, beginning of period | $ 15,581,632 | $ 15,261,059 | $ 15,258,318 | $ 15,499,512 |
| Net income for period | 193,626 | 255,243 | 625,164 | 824,722 |
| Cash dividends, $.16 per share for the three months ended March 31, 2008 and 2007, $.58 per share for the nine months ended March 31, 2008 and 2007 | (213,227) | (211,528) | (772,949) | (777,883) |
| Purchase of 31,600 shares of treasury stock for the nine months ended March 31, 2007, at cost | -- | -- | -- | (473,044) |
| Commitment to release 2,512 and 2,654 employee stock ownership plan shares for the three months ended March 31, 2008 and 2007, and 7,532 and 7,962 employee stock ownership plan shares for the nine month sended March 31, 2008 and 2007, at fair value | 28,823 | 36,277 | 89,859 | 115,908 |
| Change in fair value of common stock subject to repurchase obligation for the three and nine months ended March 31, 2008 and 2007 | (154,229) | 109,654 | 134,950 | 194,548 |
| Change in fair value on securities available for sale, net of tax | 36,056 | 23,238 | 137,339 | 91,080 |
| Balance, end of period | $ 15,472,681 | $ 15,473,943 | $ 15,472,681 | $ 15,473,943 |

See accompanying notes to consolidated financial statements.

6

PEOPLES-SIDNEY FINANCIAL CORPORATION
CONSOLIDATED STATEMENTS OF CASH FLOWS
NINE MONTHS ENDED MARCH 31, 2008 AND 2007
(Unaudited)

| | Nine Months Ended March 31, | |
|---|---|---|
| | 2008 | 2007 |
| Cash flows from operating activities | | |
| Net income | $ 625,164 | $ 824,722 |
| Adjustments to reconcile net income to net cash from operating activities | | |
| Depreciation | 126,842 | 121,945 |
| Provision for loan losses | 93,770 | (68,887) |
| Net accretion on securities | (354) | (270) |
| Proceeds from sale of loans in secondary market | 351,993 | 82,356 |
| Loans disbursed for sale in secondary market | (347,404) | (81,851) |
| Gain on sale of loans | (9,671) | (1,989) |
| Amortization of mortgage servicing rights | 504 | 28 |
| Gain on sale of REO and repossessions | (6,870) | (696) |
| FHLB stock dividends | (23,700) | (52,700) |
| Compensation expense for ESOP shares | 89,859 | 115,008 |
| Change in: | | |
| Accrued interest receivable and other assets | (131,339) | (17,257) |
| Accrued expense and other liabilities | (183,072) | (26,399) |
| Deferred loan fees | (31,007) | (21,321) |
| Net cash from operating activities | 554,715 | 872,689 |
| | | |
| Cash flows from investing activities | | |
| Purchase of time deposit | (1,000,000) | -- |
| Proceeds from maturities of available for sale securities | 3,000,000 | 500,000 |
| Net change in loans | 647,804 | 1,364,542 |
| Premises and equipment expenditures | (66,447) | (26,928) |
| Proceeds from sale REO and repossessions | 238,552 | 109,117 |
| Net cash from investing activities | 2,819,909 | 1,946,731 |
| | | |
| Cash flows from financing activities | | |
| Net change in deposits | (151,692) | (119,594) |
| Net change in short-term FHLB advances | 2,000,000 | (3,500,000) |
| Repayments of long-term FHLB advances | (3,280,239) | (1,453,038) |
| Proceeds from long-term FHLB advances | -- | 5,000,000 |
| Cash dividends paid | (772,949) | (777,883) |
| Purchase of treasury stock | -- | (473,044) |
| Net cash from financing activities | (2,204,880) | (1,323,559) |
| | | |
| Net change in cash and cash equivalents | 1,169,744 | 1,495,861 |
| Cash and cash equivalents at beginning of period | 7,182,198 | 4,714,929 |
| | | |
| Cash and cash equivalents at end of period | $ 8,351,942 | $ 6,210,790 |
| | | |
| Supplemental disclosures of cash flow information | | |
| Cash paid during the period for | | |
| Interest | $ 3,264,763 | $ 3,125,613 |
| Income taxes | 353,000 | 305,000 |
| Noncash transactions | | |
| Transfer from loans to other real estate owned | $ 526,663 | $ 262,341 |

See accompanying notes to consolidated financial statements.

7

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

## NOTE 1 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

**Principles of Consolidation:** The accompanying consolidated financial statements include accounts of Peoples-Sidney Financial Corporation ("Peoples") and its wholly-owned subsidiary, Peoples Federal Savings and Loan Association ("Association"), a federal stock savings and loan association, together referred to as the Corporation. All significant intercompany transactions and balances have been eliminated.

These interim consolidated financial statements are prepared without audit and reflect all adjustments which, in the opinion of management, are necessary to present fairly the financial position of the Corporation at March 31, 2008 and its results of operations and cash flows for the periods presented. All such adjustments are normal and recurring in nature. The accompanying consolidated financial statements have been prepared in accordance with the instructions for Form 10-QSB and, therefore, do not purport to contain all the necessary financial disclosures required by U.S. generally accepted accounting principles that might otherwise be necessary in the circumstances, and should be read in conjunction with the consolidated financial statements and notes thereto of the Corporation for the fiscal year ended June 30, 2007, included in the Corporation's 2007 Annual Report on Form 10-KSB for the fiscal year ended June 30, 2007. Reference is made to the accounting policies of the Corporation described in the notes to consolidated financial statements contained in such report. The Corporation has consistently followed these policies in preparing this Form 10-QSB.

**Nature of Operations:** The Corporation provides financial services through its main office in Sidney, Ohio, and branch offices in Sidney, Anna and Jackson Center, Ohio. Its primary deposit products are checking, savings and term certificate accounts, and its primary lending products are residential mortgage, commercial and installment loans. Substantially all loans are secured by specific items of collateral including business assets, consumer assets and commercial and residential real estate. Commercial loans are expected to be repaid from cash flow from operations of businesses. There are no significant concentrations of loans to any one industry or customer. However, the customers' ability to repay their loans is dependent on the real estate and general economic conditions in the area. Substantially all revenues and services are derived from financial institution products and services in Shelby County and contiguous counties. Management considers the Corporation to operate primarily in one segment, banking.

**Use of Estimates:** To prepare financial statements in conformity with U.S. generally accepted accounting principles, management makes estimates and assumptions based on available information. These estimates and assumptions affect the amounts reported in the financial statements and disclosures provided, and actual results could differ. The allowance for loan losses and fair values of financial instruments are particularly subject to change.

**Income Taxes:** Income tax expense is based on the effective tax rate expected to be applicable for the entire year. Income tax expense is the total of the current year income tax due or refundable and the change in deferred tax assets and liabilities. Deferred tax assets and liabilities are the expected future tax amounts for the temporary differences between the carrying amounts and tax basis of assets and liabilities, computed using enacted tax rates. A valuation allowance, if needed, reduces deferred tax assets to the amount expected to be realized.

**Earnings Per Common Share:** Basic earnings per common share ("EPS") is net income divided by the weighted average number of common shares outstanding during the period. Employee stock ownership plan ("ESOP") shares are considered outstanding for this calculation unless unearned. Diluted EPS shows the dilutive effect of additional common shares upon exercise of stock options.

(Continued)

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

## NOTE 1 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (Continued)

**Adoption of New Accounting Standards:** In February, 2006, the Financial Accounting Standards Board issued Statement of Financial Accounting Standards No. 155, "Accounting for Certain Hybrid Financial Instruments". This statement clarifies the treatment of derivatives that are freestanding or embedded as part of a beneficial interest in a securitized financial asset. This statement was effective July 1, 2007. The adoption of this pronouncement did not have a material impact on the consolidated financial statements.

In March, 2006, the Financial Accounting Standards Board issued Statement of Financial Accounting Standards No. 156, "Accounting for Servicing of Financial Assets". This statement allows the entity to choose the amortization method or the fair value method to account for each separately recognized servicing asset or liability. This statement was effective July 1, 2007. The adoption of this pronouncement did not have a material impact on the consolidated financial statements.

In June 2006, the FASB issued Interpretation ("FIN") No. 48, "Accounting for Uncertainty in Income Taxes - an Interpretation of FASB Statement No. 109", which clarifies the accounting for uncertainty in income taxes recognized in a company's financial statements in accordance with SFAS 109, Accounting for Income Taxes. FIN 48 prescribes a recognition and measurement threshold for a tax position taken or expected to be taken in a tax return. FIN 48 also provides guidance on derecognition, classification, interest and penalties, accounting in interim periods, disclosure, and transition. FIN 48 was effective July 1, 2007. The impact of adopting FIN 48 was not material to the consolidated financial statements.

The Corporation and its subsidiary are subject to U.S. federal income tax. The Corporation is no longer subject to examination by taxing authorities for fiscal years prior to June 30, 2003. The Corporation does not expect the total amount of unrecognized tax benefit to significantly increase in the next twelve months.

The Corporation recognizes interest related to income tax matters as interest expense and penalties related in income tax matters as other expense. The Corporation did not have any amounts accrued for interest and penalties at either July 1, 2007 or March 31, 2008.

**Effect of Newly Issued But Not Yet Effective Accounting Standards:** In September 2006, FASB issued SFAS Statement No. 157, Fair Value Measurement ("SFAS No. 157"). SFAS No. 157 defines fair value, establishes a framework for measuring fair value in generally accepted accounting principles, and expands disclosures about fair value measurements. SFAS No. 157 does not require any new fair value measurements. This statement is effective for fiscal years beginning after November 15, 2007 and interim periods within those fiscal years. The Corporation has not yet determined the effect, if any, that the application of SFAS No. 157 will have on its consolidated financial statements.

In February 2007, the FASB issued SFAS Statement No. 159, The Fair Value Option for Financial Assets and Financial Liabilities - Including an Amendment of FASB Statement No. 115, ("SFAS No. 159") SFAS No. 159 permits entities to choose to measure many financial instruments and certain other items at fair value at specified election dates. If the fair value option is elected, a business entity shall report unrealized gains and losses on elected items in earnings at each subsequent reporting date. Upon initial adoption of this Statement, an entity is permitted to elect the fair value option for available-for-sale and held-to-maturity securities previously accounted for under SFAS Statement No. 115, Accounting for Certain Investments in Debt and Equity Securities ("SFAS No. 115"). The effect of reclassifying those securities into the trading category should be included in a cumulative-effect adjustment of retained earnings and not in current-period earnings and should be separately disclosed. SFAS No. 159 is effective as of the beginning of the first fiscal year that begins after November 15, 2007. The Corporation has not yet determined the effect, if any, that the application of SFAS No. 159 will have on its consolidated financial statements.

(Continued)

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

**NOTE 2 – SECURITIES AVAILABLE FOR SALE**

Securities available for sale were as follows.

|  | Fair Value | Gross Unrealized Gains | Gross Unrealized Losses |
|---|---|---|---|
| March 31, 2008 |  |  |  |
| U.S. Government agencies | $ 2,056,260 | $ 57,552 | $ -- |
| June 30, 2007 |  |  |  |
| U.S. Government agencies | $ 4,847,820 | $ -- | $ (150,534) |

Contractual maturities of securities available for sale at March 31, 2008 were as follows. Actual maturities may differ from contractual maturities because borrowers may have the right to call or prepay obligations with or without call or prepayment penalties.

|  | Fair Value |
|---|---|
| Due in less than one year | $ -- |
| Due after one year through five years | -- |
| Due after five years through ten years | 2,056,260 |
|  | $ 2,056,260 |

A security pledged to secure public deposits and repurchase agreements had a carrying amount of $2,056,000 at March 31, 2008 and $1,863,000 at June 30, 2007. There were no sales of securities available for sale during the nine months ended March 31, 2008 or 2007.

No securities at March 31, 2008 were in an unrealized loss position. Securities with unrealized losses at June 30, 2007, aggregated by investment category and length of time that individual securities have been in a continuous unrealized loss position, are as follows.

| Description of Securities | Less than 12 Months | | 12 Months or More | | Total | |
|---|---|---|---|---|---|---|
|  | Fair Value | Unrealized Loss | Fair Value | Unrealized Loss | Fair Value | Unrealized Loss |
| June 30, 2007 |  |  |  |  |  |  |
| U.S. Government agencies | $ -- | $ -- | $ 4,847,820 | $ (150,534) | $ 4,847,820 | $ (150,534) |

Unrealized losses on the investment securities have not been recognized into income because the securities are of high credit quality, management has the intent and ability to hold for the foreseeable future, and the decline in fair value is largely due to changes in interest rates. The fair value is expected to recover as the securities approach their maturity date or reset date.

(Continued)

10

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

**NOTE 3 - LOANS**

Loans were as follows:

| | March 31, 2008 | June 30, 2007 |
|---|---|---|
| Mortgage loans: | | |
| 1-4 family residential | $ 84,645,904 | $ 86,555,451 |
| Multi-family residential | 4,545,338 | 4,232,326 |
| Commercial real estate | 14,912,222 | 13,893,048 |
| Real estate construction and development | 497,701 | 1,522,448 |
| Land | 2,781,030 | 2,891,359 |
| Total mortgage loans | 107,382,195 | 109,094,632 |
| Consumer loans | 4,950,882 | 5,357,102 |
| Commercial loans | 8,837,859 | 8,049,139 |
| Total loans | 121,170,936 | 122,500,873 |
| Less | | |
| Allowance for loan losses | (603,100) | (664,800) |
| Deferred loan fees | (317,991) | (348,998) |
| | $ 120,249,845 | $ 121,487,075 |

At March 31, 2008 and June 30, 2007, there were no loans held for sale. Mortgage loans serviced for others are not reported as assets. The principal balance of these loans was $502,465 at March 31, 2008 and $159,819 at June 30, 2007. Servicing rights associated with the serviced loans totaled $6,723 at March 31, 2008 and $2,145 at June 30, 2007.

Activity in the allowance for loan losses is summarized as follows:

| | Three Months Ended March 31, | | Nine Months Ended March 31, | |
|---|---|---|---|---|
| | 2008 | 2007 | 2008 | 2007 |
| Balance at beginning of period | $ 737,900 | $ 696,000 | $ 664,800 | $ 893,600 |
| Provision for losses | 10,501 | 210 | 93,770 | (68,887) |
| Charge-offs | (153,638) | (70,596) | (169,447) | (200,307) |
| Recoveries | 8,337 | 2,386 | 13,977 | 3,594 |
| Balance at end of period | $ 603,100 | $ 628,000 | $ 603,100 | $ 628,000 |

(Continued)

11

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

**NOTE 3 – LOANS** (Continued)

Impaired loans were as follows.

|  | March 31, 2008 | June 30, 2007 |
|---|---|---|
| Period-end impaired loans with no allowance for loan losses allocated | $ -- | $ -- |
| Period-end impaired loans with allowance for loan losses allocated | 78,000 | 246,000 |
| Amount of the allowance allocated to impaired loans | 10,000 | 35,000 |

|  | Three Months Ended March 31, | | Nine Months Ended March 31, | |
|---|---|---|---|---|
|  | 2008 | 2007 | 2008 | 2007 |
| Average of impaired loans during the period | $ 40,000 | $ 70,000 | $ 274,000 | $ 90,000 |
| Interest income recognized during the period | 440 | 335 | 15,760 | 2,206 |
| Cash-basis interest income recognized | 440 | 335 | 15,760 | 2,206 |

Nonperforming loans were as follows.

|  | March 31, 2008 | June 30, 2007 |
|---|---|---|
| Loans past due over 90 days still on accrual | $ 961,000 | $ 69,000 |
| Nonaccrual loans | 877,000 | 1,772,000 |

Nonperforming loans include smaller balance homogeneous loans, such as residential mortgage and consumer loans that are collectively evaluated for impairment and individually classified impaired loans.

(Continued)

12

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

**NOTE 4 - BORROWED FUNDS**

At March 31, 2008 and June 30, 2007, the Association had a cash management line of credit enabling it to borrow up to $8,000,000 from the Federal Home Loan Bank of Cincinnati ("FHLB"). The Association has the option of selecting a variable rate of interest for up to 90 days or a fixed rate for a maximum of 30 days on the cash management advances. The line of credit must be renewed on an annual basis. There were no outstanding borrowings on this line of credit at June 30, 2007 and $2,000,000 outstanding at March 31, 2008.

As a member of the FHLB system, the Association has the ability to obtain borrowings up to a maximum total of $58.1 million including the cash management line of credit as of March 31, 2008. Advances from the Federal Home Loan Bank were as follows:

|  | March 31, 2008 | June 30, 2007 |
|---|---|---|
| Cash management advance, variable rate 2.40% | $ 2,000,000 | $ — |
| 4.88% FHLB fixed-rate advance, due January 25, 2008 | — | 2,000,000 |
| 6.13% FHLB fixed-rate advance, due June 25, 2008 | 7,000,000 | 7,000,000 |
| 5.16% FHLB fixed-rate advance, due March 13, 2009 | 3,000,000 | 3,000,000 |
| 6.00% FHLB convertible advance, fixed-rate until March 2008, due June 11, 2009 | 5,000,000 | 5,000,000 |
| 4.42% FHLB fixed-rate advance, due July 9, 2010 | 2,000,000 | 2,000,000 |
| 6.27% FHLB convertible advance, fixed-rate until March 2008, due September 8, 2010 | 5,000,000 | 5,000,000 |
| 5.12% FHLB fixed-rate advance, due October 31, 2011 | 5,000,000 | 5,000,000 |
| 5.30% select pay mortgage-matched advance, final maturity May 1, 2011 | 399,040 | 484,157 |
| 5.35% select pay mortgage-matched advance, final maturity July 1, 2011 | 837,721 | 1,118,371 |
| 3.92% select pay mortgage-matched advance, final maturity November 1, 2012 | 398,827 | 480,421 |
| 3.55% select pay mortgage-matched advance, final maturity March 1, 2013 | 544,193 | 617,819 |
| 4.10% select pay mortgage-matched advance, final maturity March 1, 2015 | 379,742 | 517,930 |
| 4.09% select pay mortgage-matched advance, final maturity November 1, 2017 | 420,468 | 496,302 |
| 3.31% select pay mortgage-matched advance, final maturity April 1, 2019 | 481,876 | 508,543 |
| 4.72% select pay mortgage-matched advance, final maturity November 1, 2022 | 1,897,821 | 2,057,366 |
| 4.38% select pay mortgage-matched advance, final maturity December 1, 2022 | 639,918 | 682,727 |
| 3.92% select pay mortgage-matched advance, final maturity December 1, 2022 | 477,005 | 510,605 |
| 3.64% select pay mortgage-matched advance, final maturity March 1, 2023 | 1,443,124 | 1,600,668 |
|  | $ 36,908,791 | $ 38,189,030 |

Advances under the borrowing agreements are collateralized by a blanket pledge of the Association's residential mortgage loan portfolio and its FHLB stock.

(Continued)

13

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

**NOTE 4 - BORROWED FUNDS** (Continued)

The interest rates on the convertible advances are fixed for a specified number of years, then convertible to a variable rate at the option of the FHLB. If the convertible option is exercised, the advance may be prepaid without prepayment fee. The select pay mortgage-matched advances require monthly principal and interest payments and annual additional principal payments.

Maturities of FHLB advances for the next five years and thereafter were as follows:

Year ended March 31:

| | | |
|---|---|---|
| 2009 | $ | 13,455,183 |
| 2010 | | 6,288,063 |
| 2011 | | 8,143,987 |
| 2012 | | 5,820,892 |
| 2013 | | 648,344 |
| Thereafter | | 2,552,322 |
| | $ | 36,908,791 |

**NOTE 5 - OFF-BALANCE-SHEET ACTIVITIES**

Loss contingencies, including claims and legal actions arising in the ordinary course of business, are recorded as liabilities when the likelihood of loss is probable and an amount or range of loss can be reasonably estimated. Management does not believe there now are such matters that will have a material effect on the financial statements.

Some financial instruments, such as loan commitments, credit lines, letters of credit and overdraft protection, are issued to meet customer financing needs. These are agreements to provide credit or to support the credit of others, as long as conditions established in the contract are met, and usually have expiration dates. Commitments may expire without being used. Off-balance-sheet risk of credit loss exists up to the face amount of these instruments, although material losses are not anticipated. The same credit policies are used to make such commitments as are used for loans, including obtaining collateral at exercise of the commitment.

The contractual amount of financial instruments with off-balance-sheet risk was as follows:

| | | March 31, 2008 | | June 30, 2007 |
|---|---|---|---|---|
| 1-4 family residential real estate – fixed rate | $ | 687,000 | $ | 219,000 |
| 1-4 family residential real estate – variable rate | | 375,000 | | 366,000 |
| Commercial real estate – fixed rate | | 51,000 | | 232,000 |
| Commercial real estate – variable rate | | 342,000 | | -- |
| Commercial lines of credit – variable rate | | 3,828,000 | | 5,324,000 |
| Home equity lines of credit – variable rate | | 893,000 | | 974,000 |

The interest rate on fixed-rate commitments were 5.88% to 7.00% at March 31, 2008 and 7.25% to 8.13% at June 30, 2007. Commitments to make loans are generally made for a period of 30 days or less. The maximum maturity for fixed-rate commitments range from 10 years to 20 years.

At March 31, 2008 and June 30, 2007, the Corporation was required to have $251,000 and $295,000 on deposit with its correspondent banks as a compensating clearing requirement.

(Continued)

14.

PEOPLES-SIDNEY FINANCIAL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Unaudited)

**NOTE 5 - OFF-BALANCE-SHEET ACTIVITIES (Continued)**

The Corporation entered into employment agreements with certain of its officers. The agreements provide for a term of one to three years and a salary and performance review by the Board of Directors not less often than annually, as well as inclusion of the employee in any formally established employee benefit, bonus, pension and profit-sharing plans for which management personnel are eligible. The agreements provide for extensions for a period of one year on each annual anniversary date, subject to review and approval of the extension by disinterested members of the Board of Directors of the Association. The employment agreements also provide for vacation and sick leave.

The Association entered into a five-year lease for a branch in the Super Wal-Mart in Sidney that commenced in June 2001. The lease term was renewed in June 2006 for five years at $39,750 annually. The lease has another five-year renewal option at $49,688 annually.

**NOTE 6 - EARNINGS PER SHARE**

The factors used in the earnings per share computation follow.

| | Three Months Ended March 31, | | Nine Months Ended March 31, | |
|---|---|---|---|---|
| | 2008 | 2007 | 2008 | 2007 |
| **Basic Earnings Per Common Share** | | | | |
| Net income | $ 193,626 | $ 255,243 | $ 625,164 | $ 824,722 |
| Weighted average common shares outstanding | 1,361,048 | 1,361,048 | 1,361,048 | 1,372,877 |
| Less: Average unallocated ESOP shares | (22,104) | (32,361) | (24,614) | (35,015) |
| Weighted average common shares outstanding for basic earnings per common share | 1,338,944 | 1,328,687 | 1,336,434 | 1,337,862 |
| Basic earnings per common share | $ 0.14 | $ 0.19 | $ 0.47 | $ 0.62 |
| **Diluted Earnings Per Common Share** | | | | |
| Net income | $ 193,626 | $ 255,243 | $ 625,164 | $ 824,722 |
| Weighted average common shares outstanding for basic earnings per common share | 1,338,944 | 1,328,687 | 1,336,434 | 1,337,862 |
| Add: Dilutive effects of assumed exercises of stock options | -- | -- | -- | -- |
| Weighted average common shares and dilutive potential common shares outstanding | 1,338,944 | 1,328,687 | 1,336,434 | 1,337,862 |
| Diluted earnings per common share | $ 0.14 | $ 0.19 | $ 0.47 | $ 0.62 |
| Average stock options not considered in calculation because they were not dilutive | 119,972 | 121,063 | 119,972 | 126,324 |

(Continued)

15

PEOPLES-SIDNEY FINANCIAL CORPORATION
MANAGEMENT'S DISCUSSION AND ANALYSIS
(Unaudited)

Item 2. Management's Discussion and Analysis

**Introduction**

In the following pages, management presents an analysis of the consolidated financial condition of the Corporation as of March 31, 2008, compared to June 30, 2007, and results of operations for the three and nine months ended March 31, 2008, compared with the same periods in 2007. This discussion is designed to provide a more comprehensive review of operating results and financial position than could be obtained from an examination of the consolidated financial statements alone. This analysis should be read in conjunction with the interim consolidated financial statements and related footnotes included herein.

**Overview and Outlook**

The current local housing market and the economy in general remain depressed. Houses are taking longer periods to sell. Our county unemployment rate, however, remains stable at 5.2%. Even with the recent interest rate cuts, we are seeing limited housing activity in all price ranges. Foreclosures have declined, however, many foreclosed properties remain vacant and are listed for sale. Typically, purchasers of properties have very little cash to use for major purchases and disposable income continues to narrow as everyday consumer costs continue to increase.

Lower interest rates also compound the problem of attracting retail deposits. We continue to compare wholesale advance rates verses retail deposit rates to attract funds at the lowest cost reasonably attainable. We expect these trends to continue during the balance of 2008.

**Forward-Looking Statements**

When used in this filing or future filings by the Corporation with the Securities and Exchange Commission, or other public or shareholder communications, or in oral statements made with the approval of an authorized executive officer, the words or phrases "will likely result," "are expected to," "will continue," "is anticipated," "estimate," "project," "believe" or similar expressions are intended to identify "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. The Corporation wishes to caution readers not to place undue reliance on any such forward-looking statements, which speak only as of the date made, and to advise readers that various factors, including but not limited to regional and national economic conditions, changes in levels of market interest rates, credit risks of lending activities and competitive and regulatory factors, could affect the Corporation's financial performance and could cause the Corporation's actual results for future periods to differ materially from those anticipated or projected.

The Corporation does not undertake, and specifically disclaims, any obligation to publicly release the result of any revisions that may be made to any forward-looking statements to reflect occurrence of anticipated or unanticipated events or circumstances after the date of such statements.

**Financial Condition**

Total assets at March 31, 2008 were $136.8 million compared to $138.3 million at June 30, 2007, a decrease of $1.5 million. The decrease in total assets was primarily due to a decrease in loans of $1.2 million. Securities available for sale also decreased $2.8 million partially offset by increases in cash and cash equivalents and time deposits of $1.2 million and $1.0 million respectively.

Cash and cash equivalents increased $1.2 million from $7.2 million at June 30, 2007 to $8.4 million at March 31, 2008. The increase in cash and equivalents resulted from a decrease in securities. The securities portfolio, which is classified as available for sale, decreased $2.8 million from $4.8 million at June 30, 2007 to $2.0 million at March 31, 2008. The decrease was due to calls by the issuers of $3.0 million in securities, in accordance with their terms.

(Continued)

16

Document

arty Search  UCC Filing Search  Business Services  Contact Us

**411**

Filing Information

Document

# UCC SEARCH - MARIO GONZALES IN LANCASTER, TX

Data Updated November 10, 2014

Document

The debtor parties are Mario Gonzales in Lancaster TX and Agr Trucking, Inc. in Lancaster TX. The secured party is Transport Factoring, Inc. in Irving TX.

This Texas UCC Filing #9700130059 was recorded on and has an expiration date of 06/24/2002.The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

Document

| Filing Number: | 97001300 59 | Filing Status: | Lapse d | Expiration Date: | 06/24/20 02 | UCC Pages: | 1 Page |
| Filing State: | Texas (TX) | Filing Date: | | Cancel Date: | None | Total Pages: | 1 Page |

Debtor Companies / People

Document

Name: Mario Gonzales
Address: 1106 Rosewood
Lancaster, TX 75146
Entity Type: General Business

Document

Name: Agr Trucking, Inc.
Address: 1106 Rosewood
Lancaster, TX 75146
Entity Type: Corporation

Secured Companies / People

Document

Document

Entity Type: Corporation

Filing Events

Action Name: Master Record (the Initial Filing Document, Ucc1)   Page Count:   1 Page   Address: Not Available

Document

Event Number: 1769569   Lapse Date: None

Document

Event Date: 06/23/1997

Previous Filing   Next Filing   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY,
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Document

2013-2014 · UCC411.com · All rights reserved.

· Privacy Policy · Sitemap

is not affiliated with any government agency.

Document

arty SearchUCC Filing SearchBusiness ServicesContact Us

**411**

Filing Information

Document

8+1 8   Tweet 3   Like 35

Home   UCC Party Search   UCC Filing Search   Business Services   Contact Us

# U 411

Introduction

## FARM CREDIT WEST, PCA IN BAKERSFIELD CA, DINUBA CA, PASO ROBLES CA, VENTURA CA - UCC Search

8+1 8   Tweet 3   Like 35

*Data Updated November 13, 2014*

There are 4 parties that go by the name of Farm Credit West, Pca. These parties collectively are associated with 5 UCC filings in Bakersfield CA, Dinuba CA, Paso Robles CA, and Ventura CA.

## Texas UCC Filings

| | | | |
|---|---|---|---|
| Company Name: | Farm Credit West, Pca | Address: | P O Box 6070<br>Ventura, CA 93006 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 100000306868 | Filing Date: | |
| Filing Status: | Active | Filing State: | Texas (TX) |

| | | | |
|---|---|---|---|
| Company Name: | Farm Credit West, Pca | Address: | 175 Cow Meadow Place<br>Paso Robles, CA 93446 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 110025116421 | Filing Date: | |
| Filing Status: | Active | Filing State: | Texas (TX) |

| | | | |
|---|---|---|---|
| Company Name: | Farm Credit West, Pca | Address: | P O Box 904<br>Dinuba, CA 93618 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 50008122674 | Filing Date: | |
| Filing Status: | Lapsed | Filing State: | Texas (TX) |

| | | | |
|---|---|---|---|
| Company Name: | Farm Credit West, Pca | Address: | P O Box 6070<br>Ventura, CA 93006 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 60024427530 | Filing Date: | |
| Filing Status: | Active | Filing State: | Texas (TX) |

| | | | |
|---|---|---|---|
| Company Name: | Farm Credit West, Pca | Address: | 19628 Industry Parkway Dr<br>Bakersfield, CA 93308 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 60039558804 | Filing Date: | |
| Filing Status: | Active | Filing State: | Texas (TX) |

Previous Party   Next Party   Business Services

READ THIS DISCLAIMER: Without altering UCC411 rights and limitations to liability, as established in the Terms of UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

 411

*UCC411.com is not affiliated with any government agency.*

Home   UCC Party Search   UCC Filing Search   Business Services   Contact Us

8+1 | 8   Tweet | 3   Like | 35

 **411**

---

### Filing Information

## KENNETH STEWART IN IRVING, TX - UCC SEARCH

8+1 | 8   Tweet | 3   Like | 35

*Data Updated November 10, 2014*

The debtor parties are Kenneth Stewart in Irving TX and K & K Transportation in Grand Prairie TX. The secured party is Transport Factoring, Inc. in Irving TX.

This Texas UCC Filing #9700130058 was recorded on and has an expiration date of 06/24/2002.The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

| | | | |
|---|---|---|---|
| Filing Number: 9700130058 | Filing Status: Lapsed | Expiration Date: 06/24/2002 | UCC Pages: 1 Page |
| Filing State: Texas (TX) | Filing Date: | Cancel Date: None | Total Pages: 1 Page |

### Debtor Companies / People

Name:    Kenneth Stewart
Address:   2028 Sandy Ln
          Irving, TX 75060

Entity Type: General Business

Name:    K & K Transportation
Address:   901 E Hunter Ferrell
          Grand Prairie, TX 75050

Entity Type: General Business

### Secured Companies / People

Name:    Transport Factoring, Inc.
Address:   P O Box 167648
          Irving, TX 75016

Entity Type: Corporation

### Filing Events

| | | |
|---|---|---|
| Action Name: Master Record (the Initial Filing Document, Ucc1) | Page Count: 1 Page | Address: Not Available |
| Event Number: 1769567 | Lapse Date: None | |
| Event Date: 06/23/1997 | | |

Previous Filing   Next Filing   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

1/9/2015

Case 14-10979-CSS   Doc 10629-10   Filed 08/19/16   Page 141 of 406
Case 14-10979-CSS   Doc 9354-1   Filed 08/18/16   Page 35 of 116

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use  ·  Privacy Policy  ·  Sitemap

UCC411.com is not affiliated with any government agency.

411

Name:        Kenneth Stewart
Filing Status:Lapsed                      Filing Date:
Entity Type: General Business             Filing
                                          Number:        80002196369
Filing State: Texas (TX)                  Address:       2347 Fm 829
                                                         Stanton, TX 79782


Name:        Kenneth Stewart
Filing Status:Lapsed                      Filing Date:
Entity Type: General Business             Filing
                                          Number:        90028700834
Filing State: Texas (TX)                  Address:       2347 Fm 829
                                                         Stanton, TX 79782


Name:        Kenneth Stewart
Filing Status:Lapsed                      Filing Date:
Entity Type: General Business             Filing
                                          Number:        9700130058
Filing State: Texas (TX)                  Address:       2028 Sandy Ln
                                                         Irving, TX 75060


Name:        Kenneth Stewart
Filing Status:Lapsed                      Filing Date:
Entity Type: General Business             Filing
                                          Number:        9700198891
Filing State: Texas (TX)                  Address:       303 E Central Ave
                                                         Nixon, TX 78140


PreviousNextBusiness Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY,
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).



Home    UCC Party Search    UCC Filing Search    Business Services    Contact Us

g+1  8    Tweet  3    Like  35

 **411**

g+1  8    Tweet  3    Like  35

---

Filing Information

## KENNETH S. ENG JR IN WINSTON, NM - UCC SEARCH

*Data Updated November 10, 2014*

The debtor parties are Kenneth S. Eng Jr in Winston NM, Kenneth S. Eng in Winston NM, The Eng Family Living Trust Dated April 13, 2004 in Winston NM, and K. S. Eng, Inc. Profit Sharing Plan And Trust, As Amended And Restated in Winston NM. The secured party is Farm Credit West, Pca in Paso Robles CA.

This Texas UCC Filing #110025116421 was recorded on and has an expiration date of 08/25/2016.The filing status is listed as Active and there is 1 event listed on this filing dated 08/25/2011.

| | | | |
|---|---|---|---|
| Filing Number: 110025116421 | Filing Status: Active | Expiration Date: 08/25/2016 | UCC Pages: 3 Pages |
| Filing State: Texas (TX) | Filing Date: | Cancel Date: None | Total Pages: 3 Pages |

---

Debtor Companies / People

Name:        Kenneth S. Eng Jr
Address:     P O Box 272
             Winston, NM 87943
Entity Type: General Business

Name:        Kenneth S. Eng
Address:     P O Box 272
             Winston, NM 87943
Entity Type: General Business

Name:        The Eng Family Living Trust Dated April 13, 2004
Address:     P O Box 272
             Winston, NM 87943
Entity Type: General Business

Name:        K. S. Eng, Inc. Profit Sharing Plan And Trust, As
             Amended And Restated
Address:     P O Box 272
             Winston, NM 87943
Entity Type: General Business

---

Secured Companies / People

Name:        Farm Credit West, Pca
Address:     175 Cow Meadow Place
             Paso Robles, CA 93446
Entity Type: General Business

---

Filing Events

| | | | |
|---|---|---|---|
| Action Name: | Master Record (the Initial Filing Document, Ucc1) | Page Count: 3 Pages | Address: Not Available |
| Event Number: | 385883170002 | Lapse Date: None | |
| Event Date: | 08/25/2011 | | |

Previous Filing　Next Filing · Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use　·　Privacy Policy　·　Sitemap

 411

*UCC411.com is not affiliated with any government agency.*

Home    UCC Party Search    UCC Filing Search    Business Services    Contact Us          8+1  9    Tweet  3    Like  30

 **411**

Filing Information

## UCC SEARCH - GOLDSTAR EMERGENCY MEDICAL SERVICES, INC. IN PORT ARTHUR, TX
*Data Updated November 10, 2014*

### $25,000 Tax Incentive

**Maximize Your Small Business Tax Return On Purchases Of GM Vehicles.**

○  ○

The debtor party is Goldstar Emergency Medical Services, Inc. in Port Arthur TX and the secured party is Wells Fargo Equipment Finance, Inc. in Minneapolis MN.

This Texas UCC Filing #30040164290 was recorded on and has an expiration date of 08/29/2008. The filing status is listed as Lapsed and there is 1 event listed on this filing dated 08/29/2003.

| | | | |
|---|---|---|---|
| Filing Number: 30040164290 | Filing Status: Lapsed | Expiration Date: 08/29/2008 | UCC Pages: 1 Page |
| Filing State: Texas (TX) | Filing Date: | Cancel Date: None | Total Pages: 1 Page |

Debtor Companies / People

Name:    Goldstar Emergency Medical Services, Inc.
Address:  4439 Gulfway Dr
          Port Arthur, TX 77642
Entity Type: Corporation

### Advisory Advisory Firm

**Attend One Of Our Seminars & Learn More About Your Wealth Management!**

○  ○

Secured Companies / People

Name:    Wells Fargo Equipment Finance, Inc.
Address:  733 Marquette Ave Ste 700
          Minneapolis, MN 55042
Entity Type: Corporation

Filing Events

Action Name:   Master Record (the Initial    Page Count: 1 Page         Address:    Not Available
               Filing Document, Ucc1)

Event Number: 40997060002      Lapse Date:  **None**
Event Date:     08/29/2003

# Arrest Records: 2 Secrets

1) Type Name and Stat 2) Unlimited Secrets About Anyone. Takes
~~Seconds~~

○ ○

Previous Filing    Next Filing    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2014 · UCC411.com · All rights reserved.

Terms of Use  ·  Privacy Policy  ·  Sitemap

**U** 411

UCC411.com is not affiliated with any government agency.

g+1 9   Tweet 3   Like 30


**411**

Filing Information

## UCC SEARCH - OAK CREEK PARTNERS, LTD. IN DALLAS, TX

g+1 9   Tweet 3   Like 30

*Data Updated November 10, 2014*

### Mergers And Acquisitions

Our esteemed faculty can bridge your leadership gap. Learn more.

○ ○

The debtor party is Oak Creek Partners, Ltd. in Dallas TX. The secured parties are Bank One, Na in Dallas TX, Blackburn Central Holdings, L.P. in Dallas TX, and Jpmorgan Chase Bank, N.a., Successor By Merger To Bank One, Na in Dallas TX.

This Texas UCC Filing #30040164189 was recorded on and has an expiration date of 08/29/2008. The filing status is listed as Lapsed and there are 4 events listed on this filing ranging from 08/29/2003 to 06/23/2006.

| | | | |
|---|---|---|---|
| Filing Number: 30040164189 | Filing Status: Lapsed | Expiration Date: 08/29/2008 | UCC Pages: 9 Pages |
| Filing State:   Texas (TX) | Filing Date: | Cancel Date:   None | Total Pages: 9 Pages |

Debtor Companies / People

Name:     Oak Creek Partners, Ltd.
Address:   3232 Mckinney Ave Ste 890
           Dallas, TX 75204
Entity Type: Limited Partnership

### Arrest Records: 2 Secrets

1) Type Name and Stat 2) Unlimited Secrets About Anyone. Takes Seconds

○ ○

Secured Companies / People

Name:     Bank One, Na
Address:   1717 Main St Ste 600
           Dallas, TX 75201
Entity Type: General Business

Name:     Blackburn Central Holdings, L. P.
Address:   3232 Mckinney Ave Ste 890
           Dallas, TX 75204
Entity Type: Limited Partnership

Name:     Jpmorgan Chase Bank, N.a., Successor By Merger To Bank One, Na

Address: <u>1717 Main St Ste 600</u>
<u>Dallas, TX 75201</u>

Entity Type: General Business

### Filing Events

| | | | | | |
|---|---|---|---|---|---|
| Action Name: | Master Record (the Initial Filing Document, Ucc1) | Page Count: | 3 Pages | Address: | Not Available |
| Event Number: | 41004510003 | Lapse Date: | None | | |
| Event Date: | 08/29/2003 | | | | |
| Action Name: | Amendment, Master Amendment | Page Count: | 4 Pages | Address: | Not Available |
| Event Number: | 134242760003 | Lapse Date: | None | | |
| Event Date: | 06/23/2006 | | | | |
| Action Name: | Assignment, Master Assignment | Page Count: | 1 Page | Address: | Not Available |
| Event Number: | 134242760004 | Lapse Date: | None | | |
| Event Date: | 06/23/2006 | | | | |
| Action Name: | Termination | Page Count: | 1 Page | Address: | Not Available |
| Event Number: | 134242760005 | Lapse Date: | None | | |
| Event Date: | 06/23/2006 | | | | |

## Advisory Advisory Firm

Attend One Of Our Seminars & Learn More About Your Wealth
Management!

○ ○

<u>Previous Filing</u>   <u>Next Filing</u>   <u>Business Services</u>

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the <u>Terms of Use</u>. UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2014 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

UCC411.com is not affiliated with any government agency.

**411**

Home   UCC Party Search   UCC Filing Search   Business Services   Contact Us

8+1  9    Tweet  3    Like  30

 **411**

Filing Information

## UCC SEARCH - OAK CREEK PARTNERS, LTD. IN DALLAS, TX

8+1  9    Tweet  3    Like  30

*Data Updated November 10, 2014*

## Going Public: Go Public

We Take Companies Public Fast Go Public With Your

○  ○

The debtor party is Oak Creek Partners, Ltd. in Dallas TX. The secured parties are Bank One, Na in Dallas TX, Blackburn Central Holdings, L.P. in Dallas TX, and Jpmorgan Chase Bank, N.a., Successor By Merger To Bank One, Na in Dallas TX.

This Texas UCC Filing #30040164189 was recorded on and has an expiration date of 08/29/2008. The filing status is listed as Lapsed and there are 4 events listed on this filing ranging from 08/29/2003 to 06/23/2006.

| | | | |
|---|---|---|---|
| Filing Number: 30040164189 | Filing Status: **Lapsed** | Expiration Date: 08/29/2008 | UCC Pages: **9 Pages** |
| Filing State: **Texas (TX)** | Filing Date: | Cancel Date: **None** | Total Pages: **9 Pages** |

### Debtor Companies / People

Name:   Oak Creek Partners, Ltd.
Address:   3232 Mckinney Ave Ste 890
Dallas, TX 75204
Entity Type: Limited Partnership

## GM Vehicle Tax Incentives

Learn How to Get Up to a $25K Tax Deduction When Buying a GM Vehicle.

○  ○

### Secured Companies / People

Name:   Bank One, Na
Address:   1717 Main St Ste 600
Dallas, TX 75201
Entity Type: **General Business**

Name:   Blackburn Central Holdings, L.P.
Address:   3232 Mckinney Ave Ste 890
Dallas, TX 75204
Entity Type: Limited Partnership

Name:   Jpmorgan Chase Bank, N.a., Successor By Merger To Bank One, Na

Address:    1717 Main St Ste 600
            Dallas, TX 75201
Entity Type: General Business

### Filing Events

| Action Name: | Master Record (the Initial Filing Document, Ucc1) | Page Count: | 3 Pages | Address: | Not Available |
| Event Number: | 41004510003 | Lapse Date: | None | | |
| Event Date: | 08/29/2003 | | | | |

| Action Name: | Amendment, Master Amendment | Page Count: | 4 Pages | Address: | Not Available |
| Event Number: | 134242760003 | Lapse Date: | None | | |
| Event Date: | 06/23/2006 | | | | |

| Action Name: | Assignment, Master Assignment | Page Count: | 1 Page | Address: | Not Available |
| Event Number: | 134242760004 | Lapse Date: | None | | |
| Event Date: | 06/23/2006 | | | | |

| Action Name: | Termination | Page Count: | 1 Page | Address: | Not Available |
| Event Number: | 134242760005 | Lapse Date: | None | | |
| Event Date: | 06/23/2006 | | | | |

## Arrest Records: 2 Secrets

1) Enter Name and State. 2) Access Full Background Checks

○ ○

Previous Filing   Next Filing   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2014 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

UCC411.com is not affiliated with any government agency.

**U**CC 411



**411**

Home | UCC Party Search | UCC Filing Search | Business Services | Contact Us

g+1 [8]　Tweet [3]　Like [35]

---

Introduction

# K & K TRANSPORTATION LLC IN HUMBLE TX - UCC Search

g+1 [8]　Tweet [3]　Like [35]

*Data Updated November 20, 2014*

There is 1 party that goes by the name of K & K Transportation LLC. This party is associated with 1 UCC filing in Humble TX.

---

Texas UCC Filings

Company Name: K & K Transportation LLC

Entity Type: Limited-Liability Company
Filing Number: 140018540235
Filing Status: Active

Address: 5814 Frost St
Humble, TX 77396
Party Type: Debtor
Filing Date:
Filing State: Texas (TX)

---

Previous Party　Next Party　Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

**411**

*UCC411.com is not affiliated with any government agency.*



Home   UCC Party Search   UCC Filing Search   Business Services   Contact Us       8+1 {8}   Tweet {3}   Like {35}

## 411

---

### Introduction

## THE ENG FAMILY LIVING TRUST DATED APRIL 13, 2004 IN RUIDOSO NM, WINSTON NM - UCC Search

8+1 {8}   Tweet {3}   Like {35}

*Data Updated November 12, 2014*

There are 2 parties that go by the name of The Eng Family Living Trust Dated April 13, 2004. These parties collectively are associated with 2 UCC filings in Ruidoso NM and Winston NM.

---

#### Texas UCC Filings

| | |
|---|---|
| Company Name: The Eng Family Living Trust Dated April 13, 2004 | Address:   P O Box 272 Winston, NM 87943 |
| Entity Type:   General Business | Party Type:  Debtor |
| Filing Number:   110025116421 | Filing Date: |
| Filing Status:   Active | Filing State: Texas (TX) |

| | |
|---|---|
| Company Name: The Eng Family Living Trust Dated April 13, 2004 | Address:   P O Box 3270 Ruidoso, NM 88355 |
| Entity Type:   General Business | Party Type:  Debtor |
| Filing Number:   9800003588 | Filing Date: |
| Filing Status:   Lapsed | Filing State: Texas (TX) |

---

Previous Party   Next Party   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

*UCC411.com is not affiliated with any government agency.*

411

Home   UCC Party Search   UCC Filing Search   Business Services   Contact Us

8+1   8   Tweet 3   Like 35

# U 411

---

Introduction

## K & K TRANSPORTATION IN GRAND PRAIRIE TX - UCC Search
*Data Updated November 14, 2014*

8+1 8   Tweet 3   Like 35

There is 1 party that goes by the name of K & K
Transportation. This party is associated with 1
UCC filing in Grand Prairie TX.

---

Texas UCC Filings

| | | | |
|---|---|---|---|
| Name: | K & K Transportation | Address: | 901 E Hunter Ferrell<br>Grand Prairie, TX 75050 |
| Entity Type: | General Business | Party Type: | Debtor |
| Filing Number: | 9700130058 | Filing Date: | |
| Filing Status: | Lapsed | Filing State: | Texas (TX) |

---

<u>Previous Party</u>   <u>Next Party</u>   <u>Business Services</u>

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the <u>Terms of Use</u>, UNDER NO CIRCUMSTANCES WILL UCC411
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

U 411

*UCC411.com is not affiliated with any government agency.*

Home   UCC Party Search   UCC Filing Search   Business Services   Contact Us

 **411**

8+1 8   Tweet 3   Like 35

---

### Introduction

## K & K TRANSPORTATIONS, LLC IN DETROIT MI - UCC Search

8+1 8   Tweet 3   Like 35

*Data Updated November 15, 2014*

> There is 1 party that goes by the name of K & K
> Transportations, LLC. This party is associated
> with 1 UCC filing in Detroit MI.

---

### Texas UCC Filings

| | | | |
|---|---|---|---|
| Company Name: | K & K Transportations, LLC | Address: | 18628 Mark Twain<br>Detroit, MI 48235 |
| Entity Type: | Limited-Liability Company | Party Type: | Debtor |
| Filing Number: | 60017336511 | Filing Date: | |
| Filing Status: | Lapsed | Filing State: | Texas (TX) |

---

Previous Party   Next Party   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use  ·  Privacy Policy  ·  Sitemap

*UCC411.com is not affiliated with any government agency.*

**411**

Home    UCC Party Search    UCC Filing Search    Business Services    Contact Us          8+1  8    Tweet  3    Like  35



# 411

Introduction

## KKT REALTY II, LP , A TEXAS LIMITED PARTNERSHIP IN DALLAS TX - UCC Search     8+1  8    Tweet  3    Like  35

*Data Updated November 16, 2014*

There are 2 parties that go by the name of Kkt Realty Ii, Lp , A Texas Limited Partnership. These parties collectively are associated with 2 UCC filings in Dallas TX.

Texas UCC Filings

| | | | |
|---|---|---|---|
| **Company Name:** Kkt Realty Ii, Lp , A Texas Limited Partnership | | **Address:** | 2200 Ross Ave, Ste 3700 Dallas, TX 75201 |
| **Entity Type:** | Limited Partnership | **Party Type:** | Debtor |
| **Filing Number:** | 20005699516 | **Filing Date:** | |
| **Filing Status:** | Lapsed | **Filing State:** | Texas (TX) |

| | | | |
|---|---|---|---|
| **Company Name:** Kkt Realty Ii, Lp (a Texas Limited Partnership) | | **Address:** | 2200 Ross Avenue, Suite 3700 Dallas, TX 75201 |
| **Entity Type:** | General Business | **Party Type:** | Debtor |
| **Filing Number:** | 20006446355 | **Filing Date:** | |
| **Filing Status:** | Lapsed | **Filing State:** | Texas (TX) |

Previous Party   Next Party   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

*UCC411.com is not affiliated with any government agency.*

411

Home    UCC Party Search    UCC Filing Search    Business Services    Contact Us



# 411

---

Introduction

## KKT REALTY III, LP IN DALLAS TX - UCC Search

$8$+1  8    Tweet  3    Like  35

*Data Updated November 13, 2014*

> There is 1 party that goes by the name of Kkt Realty Iii, LP. This party is associated with 1 UCC filing in Dallas TX.

---

Texas UCC Filings

| | | | |
|---|---|---|---|
| Company Name: | Kkt Realty Iii, LP | Address: | 3012 Hanover<br>Dallas, TX 75225 |
| Entity Type: | Limited Partnership | Party Type: | Debtor |
| Filing Number: | 30012396377 | Filing Date: | |
| Filing Status: | Lapsed | Filing State: | Texas (TX) |

---

Previous Party    Next Party    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

# 411

*UCC411.com is not affiliated with any government agency.*

$13.00    Non-Title    R&V

## Warranty Deed with Vendor's Lien    1227136

12/14/00    2433361    $13.00
Deed

**Date:**    January 3. 00

**Grantor:**    TRANSPORT FACTORING, INC, a Texas corporation

**Grantor's Mailing Address:**

320072
46484

TRANSPORT FACTORING, INC
1025 METKER
IRVING, TEXAS 75062
DALLAS County

**Grantee:**    MICHAEL D. SHERIDAN
**Grantee's Mailing Address:**

MICHAEL D. SHERIDAN
1025 METKER
IRVING, TEXAS 75062
DALLAS County

**Consideration:**

A note of even date executed by Grantee and payable to the order of TRANSPORT FACTORING, INC in the principal amount of EIGHTY-FOUR THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($84,500.00). The note is secured by a first and superior vendor's lien and superior title retained in this deed and by a first-lien deed of trust of even date from Grantee to NICHOLAS R. VEACH, trustee.

**Property (including any improvements):**

Lot 17, in Block B, of 1st Installment of Starlite No. 11 Addition, an addition to the City of Irving, Dallas County, Texas, according to the Map or Plat thereof recorded in Volume 70204, Page 1717, Plat Records, Dallas County, Texas.

**Reservations from Conveyance:**

WARRANTY DEED WITH VENDOR'S LIEN, PAGE 1

00242 00646

None

Exceptions to Conveyance and Warranty:

Liens described as part of the Consideration and any other liens described in this deed as being either assumed or subject to which title is taken; validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing instruments, other than conveyances of the surface fee estate, that affect the Property; and taxes for 2000, which Grantee assumes and agrees to pay, and subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantee assumes.

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

The vendor's lien against and superior title to the Property are retained until each note described is fully paid according to its terms, at which time this deed will become absolute.

When the context requires, singular nouns and pronouns include the plural.

TRANSPORT FACTORING, INC

BY: William Sheridan

WILLIAM SHERIDAN
President

WARRANTY DEED WITH VENDOR'S LIEN, PAGE 2

2242 00647

STATE OF TEXAS        )

COUNTY OF DALLAS      )

    This instrument was acknowledged before me on JANUARY 3.00 , 2000 by WILLIAM SHERIDAN, President of TRANSPORT FACTORING, INC, a Texas corporation, on behalf of said corporation.

                *Carmen Rodriguez*
                Notary Public, State of Texas

AFTER RECORDING RETURN TO:

MICHAEL D. SHERIDAN
1025 METKER
IRVING, TEXAS 75062

WARRANTY DEED WITH VENDOR'S LIEN, PAGE 3

00242 00648

2000242 00649

FILED

2000 DEC 13 PM 2:51

...OCK
COUNTY CLERK
DALLAS COUNTY

Any provision herein which restricts the sale, rental, or use of the described real property because of color or race is invalid and unenforceable under federal law.

STATE OF TEXAS COUNTY OF DALLAS

I hereby certify this instrument was filed on the date and time stamped hereon by me and was duly recorded in the volume and page of the named records of Dallas County, Texas as stamped hereon by me.

DEC 14 2000

Earl Bullock

COUNTY CLERK, Dallas County, Texas

# UCC SEARCH - BILLY E ECKENROED IN ANNA, TX

Document

Data Updated November 10, 2014

The debtor parties are Billy E Eckenroed in Anna TX and Eckenroed Transport Co. in Anna TX. The secured party is Transport Factoring, Inc. in Irving TX.

This Texas UCC Filing #9700130062 was recorded on and has an expiration date of Document 06/24/2002.The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

| Filing Number: | 97001300 62 | Filing Status: | Lapse d | Expiration Date: | 06/24/20 02 | UCC Pages: | 1 Pag e |
|---|---|---|---|---|---|---|---|
| Filing State: | Texas (TX) | Filing Date: | | Cancel Date: | None | Total Pages: | 1 Pag e |

Document

Debtor Companies / People

Name:      Billy E Eckenroed

Address:   Rt 2 Box 95 Oak-2
           Anna, TX 75409

Entity Type: General Business

Document

Name:      Eckenroed Transport Co.

Address:   Rt 2 Box 95 Oak-2
           Anna, TX 75409

Entity Type: Corporation

Document

Secured Companies / People

Name:      Transport Factoring, Inc.

Address:   P O Box 167648
           Irving, TX 75016

Entity Type: Corporation

Document

Name:     Transport Factoring, Inc.

Address:  P O Box 167648
          Irving, TX 75016

Entity Type: Corporation

Document

Filing Events

Action Name: Master       Page       1 Page   Address: Not Available
             Record       Count:
             (the Initial
             Filing
             Document,
             Ucc1)

Document

Event Number: 1769568     Lapse Date: None

Event Date:   06/23/1997

Document

Previous Filing   Next Filing   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY,
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Document

2013-2014 · UCC411.com · All rights reserved.

· Privacy Policy · Sitemap



is not affiliated with any government agency.

arty SearchUCC Filing SearchBusiness ServicesContact Us

Document

**411**

Document

Data Updated November 10, 2014

The debtor party is David L Garcia in Spring TX and the secured party is Sterling Bank in Houston TX.

Document

This Texas UCC Filing #9700130063 was recorded on and has an expiration date of 06/24/2002. The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

| Filing Number: | 9700130063 | Filing Status: | Lapsed | Expiration Date: | 06/24/2002 | UCC Pages: | 1 Page |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Filing State: | Texas (TX) | Filing Date: | | Cancel Date: | None | Total Pages: | 1 Page |

Document

Debtor Companies / People

| Name: | David L Garcia |
| --- | --- |
| Address: | 24922 Barmby Spring, TX 77389 |
| Entity Type: | General Business |

Secured Companies / People

Document

| Name: | Sterling Bank |
| --- | --- |
| Address: | Po Box 924009 Houston, TX 77292 |
| Entity Type: | General Business |

Document

Filing Events

| Action Name: | Master Record (the Initial Filing Document, Ucc1) | Page Count: | 1 Page | Address: Not Available |
| --- | --- | --- | --- | --- |

Document

Filing Events

Document

Action Name: Master
Record
(the Initial
Filing
Document,
Ucc1)

Page
Count:

1 Page   Address: Not Available

Document

Event Number: 1769570      Lapse Date: None

Event Date:     06/23/1997

Previous Filing    Next Filing    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY,
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Document

2013-2014 · UCC411.com · All rights reserved.

: · **Privacy Policy** · **Sitemap**

Document

ı is not affiliated with any government agency.

arty SearchUCC Filing SearchBusiness ServicesContact Us

**411**

Filing Information

Document

# UCC SEARCH - DAVID L GARCIA
# IN SPRING, TX

Document


# 411

---

### Introduction

## FARM CREDIT WEST, PCA IN BAKERSFIELD CA, DINUBA CA, PASO ROBLES CA, VENTURA CA - UCC Search

8+1 [8]   Tweet [3]   Like [35]

*Data Updated November 13, 2014*

There are 4 parties that go by the name of Farm Credit, Pca. These parties collectively are associated with 5 UCC filings in Bakersfield CA, Dinuba CA, Paso Robles CA, and Ventura CA.

---

### Texas UCC Filings

| | | | |
|---|---|---|---|
| Company Name: Farm Credit West, Pca | | Address: | P O Box 6070<br>Ventura, CA 93006 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 100000306868 | Filing Date: | |
| Filing Status: | Active | Filing State: | Texas (TX) |

| | | | |
|---|---|---|---|
| Company Name: Farm Credit West, Pca | | Address: | 175 Cow Meadow Place<br>Paso Robles, CA 93446 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 110025116421 | Filing Date: | |
| Filing Status: | Active | Filing State: | Texas (TX) |

| | | | |
|---|---|---|---|
| Company Name: Farm Credit West, Pca | | Address: | P O Box 904<br>Dinuba, CA 93618 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 50008122674 | Filing Date: | |
| Filing Status: | Lapsed | Filing State: | Texas (TX) |

| | | | |
|---|---|---|---|
| Company Name: Farm Credit West, Pca | | Address: | P O Box 6070<br>Ventura, CA 93006 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 60024427530 | Filing Date: | |
| Filing Status: | Active | Filing State: | Texas (TX) |

| | | | |
|---|---|---|---|
| Company Name: Farm Credit West, Pca | | Address: | 19628 Industry Parkway Dr<br>Bakersfield, CA 93308 |
| Entity Type: | General Business | Party Type: | Secured |
| Filing Number: | 60039558804 | Filing Date: | |
| Filing Status: | Active | Filing State: | Texas (TX) |

---

Previous Party   Next Party   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the Terms of Use, UNDER NO CIRCUMSTANCES WILL UCC411 BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIANCE OF THIRD PARTIES, UPON UCC RECORDS OR OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSONAL OR COMMERCIAL PURPOSE. UCC411 NEITHER MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, COMPLETENESS, OR CURRENCY OF RECORD INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY (INCLUDING DISCLAIMING ANY WARRANTY THAT THESE RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY YOU, THE END-USER), OR FITNESS FOR A PARTICULAR PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THESE RECORDS FOR ANY PARTICULAR PURPOSE NOT EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Copyright © 2013-2015 · UCC411.com · All rights reserved.

Terms of Use · Privacy Policy · Sitemap

 411

UCC411.com is not affiliated with any government agency.

| Filing Status: | Active | Filing Date: | | Document |
| Entity Type: | General Business | Filing Number: | 130010102997 | |
| Filing State: | Texas (TX) | Address: | 1095 Limestone County Road 124 Mount Calm, TX 76673 | |

| Name: | Kenneth R Stewart | | | Document |
| Filing Status: | Lapsed | Filing Date: | | |
| Entity Type: | General Business | Filing Number: | 50023982130 | |
| Filing State: | Texas (TX) | Address: | 450 West Moore Street Granbury, TX 76048 | |

| Name: | Kenneth R Stewart | | | Document |
| Filing Status: | Lapsed | Filing Date: | | |
| Entity Type: | General Business | Filing Number: | 60013409740 | |
| Filing State: | Texas (TX) | Address: | 251 Fm 182 Clifton, TX 76634 | |

| Name: | Kenneth R Stewart | | | Document |
| Filing Status: | Lapsed | Filing Date: | | |
| Entity Type: | General Business | Filing Number: | 9800257927 | |
| Filing State: | Texas (TX) | Address: | Box 97 Columbus, TX 78934 | |

Document

## Previous Next Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE THDocument EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

2013-2014 · UCC411.com · All rights reserved.

e · Privacy Policy · Sitemap

n is not affiliated with any government agency.

Entity Type:  Corporation

Filing Events

Document

| Action Name: | Master Record (the Initial Filing Document, Ucc1) | Page Count: | 1 Page | Address: Not Available |
|---|---|---|---|---|

Document

Event Number: 1769569    Lapse Date: None

Event Date:    06/23/1997

Previous Filing    Next Filing    Business Services

Document

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, '
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

Document

2013-2014 · UCC411.com · All rights reserved.

e · Privacy Policy · Sitemap

Document

n is not affiliated with any government agency.

'arty SearchUCC Filing SearchBusiness ServicesContact Us

**411**

Document

Filing Information

Filing Events

Action Name: Master Record (the Initial Filing Document, Ucc1)

Page Count:

1 Page   Address: Not Available

Event Number: 1769570   Lapse Date: None

Event Date: 06/23/1997

Previous Filing   Next Filing   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

2013-2014 · UCC411.com · All rights reserved.

e · Privacy Policy · Sitemap

n is not affiliated with any government agency.

Party Search UCC Filing Search Business Services Contact Us

**411**

Filing Information

# UCC SEARCH - DAVID L GARCIA IN SPRING, TX

Document

Party Search UCC Filing Search Business Services Contact Us

# 411

## Kenneth R Stewart

Document

Date Updated November 19, 2014

The following information...

Chattel Paper, Collateral Items, Secretary Filings, Transmitting Utility, Tax Lien Filings.

**Name:** Kenneth R Stewart

Document

Filing Date: 02/02/2005

**Entity Type:**

**Filing Number:** 305006027

**Filing State:**

**Address:** 8612 Old Memphis Road
Atoka, TN 38004

**Name:** Kenneth R Stewart

Document

**Filing Status:**

**Filing Number:** 309020672

**Address:** 8612 Old Memphis Rd
Atoka, TN 38004

**Name:** Kenneth R Stewart

Document

Filing Date: 01/17/2014

**Entity Type:**

**Filing Number:** 421296345

**Filing State:**

**Address:** 8612 Old Memphis Road
Atoka, TN 38004

Document

**Name:** Kenneth R Stewart

**Filing Number:** 120004599676

Document

**Name:** Kenneth R Stewart

# UCC SEARCH - BILLY E ECKENROED IN ANNA, TX

Document

Data Updated November 10, 2014

The debtor parties are Billy E Eckenroed in Anna TX and Eckenroed Transport Co. in Anna TX. The secured party is Transport Factoring, Inc. in Irving TX.

Document

This Texas UCC Filing #9700130062 was recorded on and has an expiration date of 06/24/2002.The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

| Filing Number: | 9700130062 | Filing Status: | Lapsed | Expiration Date: | 06/24/2002 | UCC Pages: | 1 Page |
|---|---|---|---|---|---|---|---|
| Filing State: | Texas (TX) | Filing Date: | | Cancel Date: | None | Total Pages: | 1 Page |

Document

Debtor Companies / People

Document

| Name: | Billy E Eckenroed |
|---|---|
| Address: | Rt 2 Box 95 Oak-2 Anna, TX 75409 |
| Entity Type: | General Business |

Document

| Name: | Eckenroed Transport Co. |
|---|---|
| Address: | Rt 2 Box 95 Oak-2 Anna, TX 75409 |
| Entity Type: | Corporation |

Secured Companies / People

Document

| Name: | Transport Factoring, Inc. |
|---|---|
| Address: | P O Box 167648 Irving, TX 75016 |
| Entity Type: | Corporation |

Document

Data Updated November 10, 2014

The debtor party is David L Garcia in Spring TX and the secured party is Sterling Bank in Houston TX.

This Texas UCC Filing #9700130063 was recorded on and has an expiration date of 06/24/2002. The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

| Filing Number: | 97001300 63 | Filing Status: | Lapsed | Expiration Date: | 06/24/20 02 | UCC Pages: | 1 Page |
| Filing State: | Texas (TX) | Filing Date: | | Cancel Date: | None | Total Pages: | 1 Page |

Debtor Companies / People

| Name: | David L Garcia |
| Address: | 24922 Barmby |
| | Spring, TX 77389 |
| Entity Type: | General Business |

Secured Companies / People

| Name: | Sterling Bank |
| Address: | Po Box 924009 |
| | Houston, TX 77292 |
| Entity Type: | General Business |

Filing Events

| Action Name: | Master Record (the Initial Filing Document, Ucc1) | Page Count: | 1 Page | Address: Not Available |

Event Number: 1769571    Lapse Date: None

Event Date:    06/23/1997

Previous Filing    Next Filing    Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the _____
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE REQ__
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY,
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

2013-2014 · UCC411.com · All rights reserved.

e · Privacy Policy · Sitemap

n is not affiliated with any government agency.

UCC Filing Search Business Services Contact Us

**411**

# Kenneth Stewart

*Data Updated November 10, 2014*

There are 7 parties that go by the name of Kenneth Stewart in Fort Worth Texas, Irving Texas, Midlothian Texas, Nixon Texas, Queen City Texas, Stanton Texas, and Texarkana Texas.

| | | | |
|---|---|---|---|
| Name: | Kenneth Stewart | | |
| Filing Status: | Lapsed | Filing Date: | |
| Entity Type: | General Business | Filing Number: | 100024996 |
| Filing State: | Texas (TX) | Address: | 4462 Cardiff<br>Fort Worth, TX 76133 |

| | | | |
|---|---|---|---|
| Name: | Kenneth Stewart | | |
| Filing Status: | Lapsed | Filing Date: | |
| Entity Type: | General Business | Filing Number: | 40084147826 |
| Filing State: | Texas (TX) | Address: | Po Box 6125<br>Texarkana, TX 75505 |

| | | | |
|---|---|---|---|
| Name: | Kenneth Stewart | | |
| Filing Status: | Lapsed | Filing Date: | |
| Entity Type: | General Business | Filing Number: | 40088187248 |
| Filing State: | Texas (TX) | Address: | 502 E Avenue F<br>Midlothian, TX 76065 |

| | | | |
|---|---|---|---|
| Name: | Kenneth Stewart | | |
| Filing Status: | Lapsed | Filing Date: | |
| Entity Type: | General Business | Filing Number: | 50030363212 |
| Filing State: | Texas (TX) | Address: | 808 Hickory St<br>Queen City, TX 75572 |

arty Search UCC Filing Search Business Services Contact Us

# 411

Filing Information

Document

# UCC SEARCH - KENNETH STEWART IN IRVING, TX

Data Updated November 10, 2014

Document

The debtor parties are Kenneth Stewart in Irving TX and K & K Transportation in Grand Prairie TX. The secured party is Transport Factoring, Inc. in Irving TX.

This Texas UCC Filing #9700130058 was recorded on and has an expiration date of 06/24/2002. The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

Document

| Filing Number: | 97001300 58 | Filing Status: | Lapse d | Expiration Date: | 06/24/20 02 | UCC Pages: | 1 Page |
| Filing State: | Texas (TX) | Filing Date: | | Cancel Date: | None | Total Pages: | 1 Page |

Document

Debtor Companies / People

| Name: | Kenneth Stewart |
| Address: | 2028 Sandy Ln Irving, TX 75060 |
| Entity Type: | General Business |

Document

| Name: | K & K Transportation |
| Address: | 901 E Hunter Ferrell Grand Prairie, TX 75050 |
| Entity Type: | General Business |

Secured Companies / People

Document

Name:     Transport Factoring, Inc.

Address:  P O Box 167648
          Irving, TX 75016

Entity Type:  Corporation

Filing Events

Action Name:  Master        Page      1 Page  Address: Not Available
              Record        Count:
              (the Initial
              Filing
              Document,
              Ucc1)

Event Number: 1769567   Lapse Date: None

Event Date:   06/23/1997

Previous Filing   Next Filing   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE REL
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY, ·
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

2013-2014 · UCC411.com · All rights reserved.

· Privacy Policy · Sitemap

ι is not affiliated with any government agency.

Filing Information

# UCC SEARCH - KENNETH R PACE IN LANCASTER, TX

Data Updated November 10, 2014

The debtor parties are Kenneth R Pace in Lancaster TX and K & D Transportation in Lancaster TX. The secured party is Transport Factoring, Inc. in Irving TX.

This Texas UCC Filing #9700130061 was recorded on and has an expiration date of 06/24/2002. The filing status is listed as Lapsed and there is 1 event listed on this filing dated 06/23/1997.

| Filing Number: | 97001300 61 | Filing Status: | Lapse d | Expiration Date: | 06/24/20 02 | UCC Pages: | 1 Page |
| Filing State: | Texas (TX) | Filing Date: | | Cancel Date: | None | Total Pages: | 1 Page |

Debtor Companies / People

| Name: | Kenneth R Pace |
| Address: | 2138 Cedardale Lancaster, TX 75134 |
| Entity Type: | General Business |

| Name: | K & D Transportation |
| Address: | 2138 Cedardale Lancaster, TX 75134 |
| Entity Type: | General Business |

Secured Companies / People

| Name: | Transport Factoring, Inc. |
| Address: | P O Box 167648 Irving, TX 75016 |

Event Number: 1769571     Lapse Date: None

Event Date:     06/23/1997

Previous Filing   Next Filing   Business Services

READ THIS DISCLAIMER: Without altering UCC411's rights and limitations to liability, as established in the
BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM YOUR RELIANCE, OR THE RELIA
OTHER UCC INFORMATION ACCESSIBLE THROUGH THIS WEBSITE, INCLUDING FOR ANY PERSON
MAKES NOR IMPLIES ANY WARRANTIES OR REPRESENTATIONS CONCERNING THE RELIABILITY,
INFORMATION. WITHOUT LIMITATION, UCC411 DISCLAIMS ANY WARRANTY OF MERCHANTABILITY
RECORDS REASONABLY CONFORM TO ANY USE NOT EXPLICITLY COMMICATED TO UCC411 BY Y
PURPOSE (NOR DOES UCC411 HAVE ANY REASON TO KNOW OR BELIEVE THAT YOU REQUIRE TH
EXPLICITLY COMMUNICATED TO UCC411 BY YOU, THE END-USER).

2013-2014 · UCC411.com · All rights reserved.

· Privacy Policy · Sitemap

ι is not affiliated with any government agency.

f ⍰ in 8⁺ ⤳

SUBSCRIBE  |  NEWSLETTERS  |  ADVERTISE  |  CONTACT US



# PRODUCTION.

ⱔ drillinginfo

FINANCIAL JOURNAL

**HOME    NEWS    MAGAZINE**

Search

OIL MARKETS   ENERGY PLAYERS   BUSINESS SOLUTIONS   UPSTREAM   UNCONVENTIONAL OIL & GAS   MIDSTREAM   CAPITAL   ANALYSIS   M&A   MORE

| Exxon Mobil | CHEVRON | CONOCOPHILLIPS | OCCIDENTAL | APACHE | ANADARKO | CHESAPE. |
|---|---|---|---|---|---|---|
| 93.76 | 113.47 | 70.13 | 82.24 | 64.05 | 83.08 | |
| -0.81 -0.86% | -0.48 -0.42% | -0.92 -1.29% | -0.66 -0.80% | -1.38 -2.11% | -1.16 -1.38% | |

HOME   OIL GAS COMPANIES   AURORA OIL & GAS FILES VOLUNTARY BANKRUPTCY

Previous Article |US investor convicted in scheme targeting Azerbaijan state oil firm

Next Article | Gastar completes Australian assets sale, plans debt retirement

**TOPIC INDEX**

View Oil & Gas Financial Journal articles by topic, A-Z

🖶 Print Article

# AURORA OIL & GAS FILES VOLUNTARY BANKRUPTCY

July 15, 2009

Aurora Oil & Gas Corp. and its subsidiary, Hudson Pipeline & Processing Co. LLC, filed voluntary petitions for relief under Chapter 11 of the US Bankruptcy Code in the US Bankruptcy Court for the Western District of Michigan.

The companies have worked to facilitate a global restructuring transaction, including entering into several amendments and forbearance agreements with BNP Paribas and the lenders under the Senior Secured Credit Facility and D.E. Shaw Laminar Portfolios LLC and the lenders under the Second Lien Term Loan. The Companies have not yet been able to obtain agreement on the terms of such a restructuring and intend to utilize the bankruptcy process to attempt to achieve a consensual restructuring or some other appropriate alternative.

Huron Consulting Group LLC continues to advise Aurora on its restructuring efforts.

Previous Article |US investor convicted in scheme targeting Azerbaijan state oil firm

Next Article | Gastar completes Australian assets sale, plans debt retirement

# PRODUCTION.

ⱔ drillinginfo

Oil & Gas Financial Journal Digital Magazine       Look Inside >



Current Issue

**OIL & GAS JOBS**

## RELATED ARTICLES
### Dejour closes $1.5 million equity offering
08/18/2014
Dejour Energy Inc. has closed the equity financing offering previously announced on Aug. 11, receiving net proceeds of $1.5 million from three institutional investors to support the company's 2014 ...

### Gastar Exploration sees base increase to $145M



f ✈ in 8+ ≈

SUBSCRIBE  |  NEWSLETTERS  |  ADVERTISE  |  CONTACT US

## PRODUCTION.

≈ drillinginfo

HOME     NEWS     MAGAZINE

Search

OIL MARKETS   ENERGY PLAYERS   BUSINESS SOLUTIONS   UPSTREAM   UNCONVENTIONAL OIL & GAS   MIDSTREAM   CAPITAL   ANALYSIS   M&A   MORE

| Exxon Mobil | 93.78 | CHEVRON | 113.47 | CONOCOPHILLIPS | 70.13 | OCCIDENTAL | 82.24 | APACHE | 84.05 | ANADARKO | 83.08 | CHESAPE. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| -0.81 | -0.86% | -0.48 | -0.42% | -0.92 | -1.29% | -0.66 | -0.80% | -1.38 | -2.11% | -1.16 | -1.38% |

HOME   OIL GAS COMPANIES   AURORA OIL & GAS FILES VOLUNTARY BANKRUPTCY

Previous Article | US investor convicted in scheme targeting Azerbaijan state oil firm

Next Article | Gastar completes Australian assets sale, plans debt retirement

🖨 Print Article

# AURORA OIL & GAS FILES VOLUNTARY BANKRUPTCY

July 15, 2009

Aurora Oil & Gas Corp. and its subsidiary, Hudson Pipeline & Processing Co. LLC, filed voluntary petitions for relief under Chapter 11 of the US Bankruptcy Code in the US Bankruptcy Court for the Western District of Michigan.

The companies have worked to facilitate a global restructuring transaction, including entering into several amendments and forbearance agreements with BNP Paribas and the lenders under the Senior Secured Credit Facility and D.E. Shaw Laminar Portfolios LLC and the lenders under the Second Lien Term Loan. The Companies have not yet been able to obtain agreement on the terms of such a restructuring and intend to utilize the bankruptcy process to attempt to achieve a consensual restructuring or some other appropriate alternative.

Huron Consulting Group LLC continues to advise Aurora on its restructuring efforts.

Previous Article | US investor convicted in scheme targeting Azerbaijan state oil firm

Next Article | Gastar completes Australian assets sale, plans debt retirement

## RELATED ARTICLES

### Dejour closes $1.5 million equity offering

08/18/2014

Dejour Energy Inc. has closed the equity financing offering previously announced on Aug. 11, receiving net proceeds of $1.5 million from three institutional investors to support the company's 2014 ...

### Gastar Exploration sees base increase to $145M

TOPIC INDEX

View Oil & Gas Financial Journal articles by topic, A-Z

## PRODUCTION.

≈ drillinginfo

Oil & Gas Financial Journal Digital Magazine      Look inside >



Current Issue

OIL & GAS JOBS

08/14/2014

Gastar Exploration Inc. reported that the borrowing base under its revolving credit facility has been increased to $145 million.

## RSP Permian closes public offering

08/14/2014

RSP Permian Inc. has completed an underwritten public offering by the company and certain of its stockholders of 11,500,000 shares of its common stock at a price to the public of $25.65 per share.&...

## CONSOL closes $250 million of senior notes

08/14/2014

CONSOL Energy Inc. has closed an additional $250 million of its 5.875% senior notes due 2022. CONSOL initially offered and sold $1.6 billion aggregate principal amount of notes of the same series o...

## Dejour secures $1.5 million for Woodrush development

08/12/2014

Dejour Energy Inc. has entered into subscription agreements for an equity financing that will result in gross proceeds of US$1.5 million with three institutional investors to support the company's ...

**Corporate Strategic Research: Optimization Modeling**
exxon mobil
**Country:** United States
(specifically for differential equations) is highly desirable. Knowledge of optimization models in the and industry is a plus. The candidate is expected to have strong communication skills with an ability to interact with a variety of researchers and business partners in different disciplines....

**Asphalt Rail\Barge Scheduler**
BP
**Country:** United States
Job title Asphalt Rail/Barge SchedulerReq ID
Search More Job Listings >>


CLICK HERE
to Subscribe

---

**MORE OIL & GAS FINANCIAL ARTICLES**

**Dejour closes $1.5 million equity offering**

Mon, Aug 18, 2014

Dejour Energy Inc. has closed the equity financing offering previously announced on Aug. 11, receiving net proceeds of $1.5 million from three institutional investors to support the company's 2014 Woodrush development plan.

**Gastar Exploration sees base increase to $145M**

Thu, Aug 14, 2014

Gastar Exploration Inc. reported that the borrowing base under its revolving credit facility has been increased to $145 million.

**RSP Permian closes public offering**

Thu, Aug 14, 2014

RSP Permian Inc. has completed an underwritten public offering by the company and certain of its stockholders of 11,500,000 shares of its common stock at a price to the public of $25.65 per share.

**CONSOL closes $250 million of senior notes**

Thu, Aug 14, 2014

CONSOL Energy Inc. has closed an additional $250 million of its 5.875% senior notes due 2022. CONSOL initially offered and sold $1.6 billion aggregate principal amount of notes of the same series on April 16.

**MOST POPULAR**

Reserve based finance

Fiscal break-even oil prices for major OPEC members

C&J Energy updates on merger with Nabors

Drones in oil and gas

GE signs $1B service agreement for Sabine Pass LNG export terminal

Wood Mackenzie: Global trends to look for in 2015

Top US-based Oilfield Service & Supply Companies

Wrapping Up: Developments at DOE affecting LNG exports in 2014

Enterprise begins open season for proposed pipeline expansion

Energy Players

**Dejour secures $1.5 million for Woodrush development**

Tue, Aug 12, 2014

Dejour Energy Inc. has entered into subscription agreements for an equity financing that will result in gross proceeds of US$1.5 million with three institutional investors to support the company's third-quarter 2014 Woodrush development plan.

**MORE >>**

*Oil & Gas Financial Journal* Categories:

| | |
|---|---|
| Oil Markets | Analysis |
| Energy Players | Mergers & Acquisitions |
| Business Solutions | Subscribe |
| Midstream | Oil & Gas Financial Journal Current Issue |
| Unconventional Oil & Gas | Archives |
| Capital | Oil & Gas Events |

f  ⅴ  in  g+  ℝ  SUBSCRIBE | NEWSLETTERS | ADVERTISE | CONTACT US



**OIL&GAS JOURNAL**

| **GENERAL** | **SECTIONS** | **TOPIC CENTERS** | **PENNWELL** |
|---|---|---|---|
| Home | News | Oil Markets | PennWell |
| About Us | Magazine | Energy Players | PennWell Websites |
| Contact Us | White Papers | Business Solutions | PennWell Events |
| Advertise | OTC | Upstream | |
| Subscribe | | Unconventional Resources | **OIL & GAS PUBLICATIONS** |
| Manage Subscription | | Midstream | Oil & Gas Journal |
| Newsletters | | Capital | Offshore Magazine |
| RSS | | Analysis | Oil & Gas Petrochem Equipment |
| Events | | Mergers & Acquisitions | Unconventional Oil & Gas Report |
| Site Map | | | |
| Webmaster | | | |

Copyright © 2007-2014 Pennwell Corporation, Tulsa, OK. All Rights Reserved.  Privacy Policy | Terms & Conditions

Print Review IRS Form SS-4 EIN

*Mark*

| Form **SS-4** | **Application for Employer Identification Number** | EIN |
|---|---|---|
| (Rev. December 2001)<br>Department of the Treasury<br>Internal Revenue Service | (For use by employers, corporations, partnerships, trusts, estates, churches, government agencies, Indian tribal entities, certain individuals, and others.)<br>▶ See separate instructions for each line. ▶ Keep a copy for your records. | 20-3117810<br><br>OMB No. 1545-0003 |

**1** Legal name of entity (or individual) for whom the EIN is being requested
J&C Manufacturing Inc

**2** Trade name of business (if different from name on line 1)

**3** Executor, trustee, "care of" name
Kenneth Stewart

**4a** Mailing address (room, apt., suite no. and street, or P.O. box)
2302 Rock Island

**5a** Street address (if different) (Do not enter a P.O. box)

**4b** City, state, and ZIP code
Denton TX 75060 -

**5b** City, state, and ZIP code

**6** County and state where principal business is located
County Dallas State TX

**7a** Name of principal officer, general partner, grantor, owner, or trustor
Kenneth Stewart

**7b** SSN, ITIN, EIN

**8a** Type of entity (check only one box)
☐ Sole Proprietor (SSN)
☐ Partnership
☑ Corporation (enter form number to be filed) ▶ 800515352
☐ Personal Service
☐ Church or church-controlled organization
☐ Other nonprofit organization (specify) ▶
☐ Other (specify) ▶
☐ Estate (SSN of decedent)
☐ Plan administrator (SSN)
☐ Trust (SSN of grantor)
☐ National Guard
☐ Farmers' cooperative
☐ REMIC
Group Exemption No. (GEN) ▶
☐ State/local government
☐ Federal government
☐ Indian tribal

**8b** If a corporation, name the state or foreign country (if applicable) where incorporated
State WY

Foreign country

**9** Reason for applying (check only one box)
☐ Started new business (specify type) ▶
☐ Hired employees (Check the box and see line 13.)
☐ Compliance with IRS withholding regulations
☐ Other (specify) ▶
☐ Banking purpose (specify purpose) ▶

**10** Date business started or acquired (month, day, year)
JUN 29 2005

**11** Closing month of accounting year

When will first be paid to nonresident alien. (month, day, year) ▶

**13** Highest number of employees expected in the next twelve months (enter -0- if none)

| | Agriculture | Household | Other |
|---|---|---|---|
| | | | |

**14** Check box that best describes the principal activity of your business
☐ Construction
☐ Real estate
☐ Other

**15** 

**16a** 

**16b** If you checked "Yes" on line 16a, give applicant's legal name and trade name shown on prior application
Legal name ▶ stewart associates
Trade name ▶

**16c** Approximate date when, and city and state where, the application was filed. Enter previous EIN
Approximate date when filed (month, day, year)
SEP 28 1998

**Third Party Designee**
Designee's name
Address and ZIP code

Under penalties of perjury, I declare that I have examined this application, and to the best of my knowledge and belief, it is true, correct, and complete.
Name and title (type or print)

201133    YF  13    2008T2    670    23    75154-205-00240-1    A0085794    215
023866                                  060                     203115727         SB    E

Department of the Treasury                                     IRS USE ONLY
Internal Revenue Service                                                        For assistance, call:
Ogden UT 84201-0039                                                            1-800-829-0115

                                                              Notice Number: CP215
                                                              Date: August 29, 2011

047666.107476.0196.005 1 AT 0.365 702                         Taxpayer Identification Number:
                                                              20-3115727
                                                              Tax Form: CVL PEN
                                                              Tax Period: December 31, 2008

JSC MANUFACTURING INC
2302 ROCK ISLAND RD
IRVING    TX    75060-2409025

047666

Notice of Penalty Charge                          549

You have been charged a penalty under Section 6721 of the Internal Revenue Code for the following reason:

Failure to File Forms W-2
Tax Statement

Prior Balance                                                 $.00
Penalty Assessment                                            $395.25
Interest Charged                                              $.00
Other Charges                                                 $.00

Total Amount You Owe                                          **$395.25**

A penalty has been charged for each Form W-2 that was not filed as required by section 6051 of the Internal Revenue Code. Our records indicate that both the Social Security Administration and the Internal Revenue Service have been in contact with you to attempt to secure these Forms W-2.

The penalty for intentional disregard of the filing requirements is the greater of $100 per required return or 10 percent of the aggregate amount of items required to be reported. If you have not filed Forms W-2 for the period requested, please submit them to IRS (not the Social Security Administration) at the address shown above within 10 days of the date of this notice. The applicable portion of the penalty will be abated for Forms W-2 that you submit.

If you believe you have reasonable cause why we shouldn't charge these penalties, you may send us an explanation and ask us to remove or reduce any of the penalties we have charged. Send us a specific explanation for each penalty you wish us to remove or reduce by **September 19, 2011.** Please include any documents that will support your position. If you agree with the penalty, please send the amount due now. We have enclosed an envelope for your convenience.

For tax forms, instructions and information visit **www.irs.gov**. (Access to this site will not provide you with your specific taxpayer account information.)

**BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, L.L.P.**

Attorneys at Law

BEALE DEAN
JAMES T. BLANTON
GRANT LISER
RICHARD W. WISEMAN
JOHN W. PROCTOR
**JOHN C. HART
LARRY W. WILSHIRE
SANDRA LISER

OF COUNSEL
CATHERINE JANE ALDER, P.C

\* Also licensed to practice in Louisiana
\*\* Also licensed to practice in Minnesota

306 WEST 7TH STREET, SUITE 200
FORT WORTH, TEXAS 76102-4905

TELEPHONE (817) 332-1391
METRO (817) 429-0851
FAX (817) 870-2427

CHARLES B. MITCHELL, Jr.
MICHAEL L. PECK
BRUCE H. ROGERS
STERLING J. ELZA
BILLY McGILL
JASON C. MOON
JONATHAN E. CHEATHAM
JENNIFER L. WILLINGHAM

JESSE M. BROWN (1883-1978)
WILLIAM M. BROWN (1912-1987)

July 6, 2004

Secretary of State
State of Texas
James Earl Rudder Office Building
1019 Brazos
Austin, Texas 78711-3697
Attn: Corporations Dept.

**VIA FEDERAL EXPRESS**

Re:     JSC Manufacturing, Inc.
        Our File No.: 3204.22595

Dear Sir/Madame:

Enclosed please find the original and one copy of Articles of Incorporation pursuant to Article 3.02 of the Texas Business Corporation Act, regarding the incorporation of JSC Manufacturing, Inc. Also enclosed is a check in the amount of $325.00 regarding payment of the $300.00 filing fee for this business incorporation and the payment of the $25.00 expedite fee. As referenced, we request that you expedite this filing and then please return the appropriate evidence of filing, together with our file-stamped copy of the Articles of Incorporation, and a receipt for this payment, to our office in the return envelope provided.

Should you have any questions, please do not hesitate to contact the undersigned.

Thank you for your cooperation and assistance.

Sincerely yours,

Charles B. Mitchell, Jr.

CBM:PR:mm
Enclosures

W:\Charles\files\Individual Clients\Stewart (Incorp) K&K 22595\Correspondence\Ltr to Secretary of State re Article of Incorporation 002 07.06.05.wpd

July 6, 2004
Page 2

bcc:    Kenny Stewart (w/o encls.)
        2705 Heather Hill Court, #917
        Arlington, Texas 76006

# Form 941
# Payment Voucher

## Purpose of Form

Complete Form 941-V if you are making a payment with **Form 941,** Employer's Quarterly Federal Tax Return. We will use the completed voucher to credit your payment more promptly and accurately, and to improve our service to you.

If you have your return prepared by a third party and make a payment with that return, please provide this payment voucher to the return preparer.

## Making Payments With Form 941

Make payments with Form 941 only if:

**1.** Your net taxes for the quarter (line 13 on Form 941) are less than $2,500 or

**2.** You are a monthly schedule depositor making a payment in accordance with the **accuracy of deposits** rule. (See section 11 of **Circular E,** Employer's Tax Guide, for details.) This amount may be $2,500 or more.

Otherwise, you must deposit the amount at an authorized financial institution or by electronic funds transfer. (See section 11 of Circular E for deposit instructions.) Do not use the Form 941-V payment voucher to make Federal tax deposits.

**Caution:** *If you pay amounts with Form 941 that should have been deposited, you may be subject to a penalty. See Circular E.*

## Specific Instructions

● Enter on the voucher the amount paid with Form 941.

● Make your check or money order payable to the United States Treasury. Be sure to enter your EIN, "Form 941," and the tax period on your check or money order. Do not send cash. Please do not staple your payment to the voucher or the return or to each other.

● Detach the completed voucher and send it with your payment and Form 941 to the address on the back of Form 941. Do not send a photocopy of Form 941-V— your payment may be misapplied or delayed.

If any of the preprinted information is incorrect, make changes on the top of Form 941, not on the payment voucher. If you change any of the preprinted information on the voucher, your payment may be misapplied or delayed.

---

29-000362601

**Detach here**

 Department of the Treasury
Internal Revenue Service

OMB No. 1545-0029
**2001**

# Form 941-V Payment Voucher

▶ Use this voucher when making a payment with your tax return.
▶ Do not staple this voucher or your payment to your return.
▶ Do not send cash.
FOR PRIVACY ACT AND PAPERWORK REDUCTION ACT NOTICE, SEE BACK OF PAYMENT VOUCHER.

| Enter the amount of your payment | $ |
|---|---|

75-2914680

TSC MANUFACTURING
2302 ROCK ISLAND RD
IRVING TX  75060-2409

INTERNAL REVENUE SERVICE
PO BOX 7922
SAN FRANCISCO CA  94120-7922

752914680 XT TSCM 01 2 200106 610

Form **8736**

(Rev. October 1998)

Department of the Treasury
Internal Revenue Service

# Application for Automatic Extension of Time To File U. S. Return for a Partnership, REMIC, or for Certain Trusts

OMB No. 1545-1054

**Please type or print.**

File by the due date for filing the return for which an extension is requested. See instructions.

File a separate application for each return.

| Name | Employer identification number |
|------|--------------------------------|
| J S C MFG. Partnership | 74-1729051 |

Number, street, and room or suite no. If a P. O. box, see instructions.
2302 Rock Island

City or town, state, and ZIP code. If a foreign address, enter city, province or state, postal code, and country.
Irving          TX          75060

1   I request an automatic 3-month extension of time to file (check only one):

[ ] Form 1041     [ ] Form 1041-QFT     [X] Form 1065     [ ] Form 1065-B     [ ] Form 1066

2   If the entity does not have an office or place of business in the United States, check this box . . . . . . . . . [ ]

3a  For calendar year . . . . . . . . . . 2000 , or other tax year beginning . . . . . . . . . . . . , and ending . . . . . . . . . . . .

b   If this tax year is for less than 12 months, check reason:

[X] Initial return     [ ] Final return     [ ] Change in accounting period

4   If this extension is requested for Form 1041, Form 1041-QFT, Form 1065-B, or Form 1066, enter the following amounts:

a   Tentative total tax from Form 1041, Form 1041-QFT, Form 1065-B, or Form 1066 (see instructions) . . $ 0

b   Refundable credits and estimated tax payments, including any prior year overpayment allowed as a credit, from Form 1041, Form 1041-QFT, or Form 1065-B (see instructions). REMICs, enter -0- . . . . $ 0

c   Balance due. Subtract line 4b from line 4a. If zero or less, enter -0-. Enclose payment, if any, with Form 8736 (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0

**CAUTION:** Interest will be charged on any tax not paid by the regular due date of Forms 1041, 1041-QFT, 1065-B, and 1066 from the due date until the tax is paid.

For Paperwork Reduction Act Notice, see instructions.

(HTA)

Form 8736 (Rev. 1-98)

Transaction Report

Send
Transaction(s) completed

| No. TX | Date/Time | Destination | Duration | P. # | Result | Mode |
|--------|-----------|-------------|----------|------|--------|------|
| 441 OCT-13 | 13:17 | 18667405665 | 0'00'27" | 001 | OK | N  ECM |

COMMERCIAL AUTO
XA TX 27 10 11

# ALLSTATE COUNTY MUTUAL INSURANCE COMPANY
## SPECIAL PROVISIONS

This Company is licensed to operate under chapter 17, Texas Insurance Code, 1951, as amended, and such statutes shall apply to and form a part of this policy the same as if written or printed upon, attached or appended hereto.

This policy is issued subject to the constitution and by-laws and all amendments thereto of the Company, which shall form a part of this policy.

**MUTUALS-MEMBERSHIP AND VOTING NOTICE**

The insured is notified that by virtue of this policy, he is a member of the Allstate County Mutual Insurance Company of Irving, Texas, and is entitled, as is lawfully provided in the charter, constitution, or by-laws, to only one vote regardless of the number of policies owned either in person or by proxy in any or all meetings of said Company. The Annual Meetings are held in its Home Office in Irving, Texas, on the sixth day of March, in each year, at 2:00 o clock p.m.

**MUTUALS-PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY**

No Contingent Liability: This policy is non-assessable. The policyholder is a member of the Company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of laws, in the distribution of dividends so fixed and determined.

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

Mary Jovita McGinn
Secretary

Catherine S. Brune
President

**POLICY NUMBER:** 648128830

## WITNESS CLAUSE

IN WITNESS WHEREOF, Allstate has caused this policy to be signed by its Secretary and its President at Northbrook, Illinois

Mary Jovita McGinn

Secretary

Catherine S. Brune

President

8-K 1 a05-14057_18k.htm 8-K

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 8-K

### CURRENT REPORT

### Pursuant to Section 13 or 15(d) of the
### Securities Exchange Act of 1934

Date of report (Date of earliest event reported): **August 1, 2005**

### ALLSTATE LIFE INSURANCE COMPANY
(Exact name of Registrant as Specified in Charter)

| **Illinois** | **000-31248** | **36-2554642** |
|---|---|---|
| (State or other jurisdiction of organization) | (Commission File Number) | (IRS Employer Identification No.) |

| **3100 Sanders Road** | |
| **Northbrook, Illinois** | **60062** |
| (Address of Principal Executive Offices) | Zip |

Registrant's telephone number, including area code: **(847) 402-5000**

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐     Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐     Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐     Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR   240.14d-2(b))

☐     Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

## Section 1 — Registrant's Business and Operations

## Item 1.01.        Entry into Material Definitive Agreements

Surplus Note Purchase Agreement
Pledge and Security Agreement

On August 1, 2005, Allstate Life Insurance Company ("ALIC") and Kennett Capital, Inc., a corporation organized under the laws of the State of Delaware ("Kennett"), entered into a Surplus Note Purchase Agreement (the "Purchase Agreement") and a Pledge and Security Agreement (the "Security Agreement"), both with an effective date of August 1, 2005.

The Purchase Agreement provides for the sale by ALIC to Kennett of two 5.06% surplus notes due July 1, 2035 (the "Surplus Notes"), dated July 1, 2005, issued by ALIC Reinsurance Company, a South Carolina domiciled reinsurance company ("ALIC Re"), in an aggregate principal amount of $100,000,000. In exchange for the Surplus Notes, Kennett issued to ALIC a full recourse 4.86% note due July 1, 2035 (the "Kennett Note"), dated August 1, 2005, in the principal amount of $100,000,000. In the future, additional surplus notes may be sold pursuant to the Purchase Agreement at the option of the parties.

As security for the performance of Kennett's obligations under the Purchase Agreement and the Kennett Note, ALIC and Kennett entered into the Security Agreement pursuant to which Kennett granted ALIC a pledge of and security interest in Kennett's right, title and interest in the Surplus Notes and their proceeds.

ALIC is a direct wholly owned subsidiary of Allstate Insurance Company, a direct wholly owned subsidiary of The Allstate Corporation ("Allcorp"). Kennett is a direct wholly owned subsidiary of Allcorp. ALIC Re is a direct wholly owned subsidiary of ALIC.

2

## SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**ALLSTATE LIFE INSURANCE COMPANY**

By:  _____/s/ Mary J. McGinn_____
Name:  Mary J. McGinn
Title:   Vice President and Assistant Secretary

Dated:  August 1, 2005

3

IL 00 03 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc., 2007

☐

Insured Full Copy

8F CR 4/7/14
FSP-11314

Ku Ja Stewart

Mineral Lease
Misc file

9
9

Prepared by and mail to:

COPY                                                          CONFORMED

Clifford Chance US LLP
200 Park Avenue
New York, New York 10166
Attn: Dawn E. Goldberg, Esq.


TEXAS                                                    DALLAS COUNTY,

DEED OF TRUST, ASSIGNMENT OF LEASES,
SECURITY AGREEMENT, FINANCING STATEMENT AND FIXTURE FILING

THIS DEED OF TRUST (this "Instrument") entered into as of the
15th day of May, 2003 but effective as of the 19th day of May, 2003 by MARCONI
COMMUNICATIONS, INC., a Delaware corporation ("Trustor"), having an address at
c/o Marconi Corporation plc, One Bruton Street, London W1J 6AQ United Kingdom,
to WARD WILLIFORD ("Trustee"), having an address at 1909 Woodall Rodgers Freeway, Suite 410, Dallas County, Texas 75201, for the use and benefit of THE
LAW DEBENTURE TRUST CORPORATION p.l.c., a public limited company organized under
the laws of England and Wales, as Security Trustee for the Secured Creditors (as
defined in the Intercreditor Agreement) (together with any co-trustee, co-agent
or other entity that may be appointed after the date hereof pursuant to clause
16 of the Intercreditor Agreement (as defined below)) ("Beneficiary") under the
Security Trust and Intercreditor Deed dated the date hereof and made among
Marconi Corporation plc as Issuer; Beneficiary; the persons listed in Schedule 1
thereto as Guarantors; Law Debenture Trust Company of New York as Senior Note
Trustee; JPMorgan Chase Bank as Junior Note Trustee; HSBC Bank plc as New
Bonding Facility Agent; The Bank of New York as Depositary, Paying Agent and
Registrar; the persons listed in Part A Schedule 2 thereto as Intra-Group
Creditors; the persons listed in Part B Schedule 2 thereto as Intra-Group
Borrowers and the persons listed in Schedule 3 thereto as New Bonding Facility
Banks (as amended, modified or supplemented from time to time, the
"Intercreditor Agreement"), having an address at Fifth Floor, 100 Wood Street,
London EC2V 7EX, United Kingdom. Capitalized terms used herein without
definition shall have the respective meanings assigned to such terms in the
Intercreditor Agreement.

{02780774.DOCX / }

W I T N E S S E T H:

WHEREAS, Trustor is a United States wholly-owned subsidiary of Marconi Corporation, plc (the "Issuer"), which is the Issuer under the Indentures, the Notes and the New Bonding Facility Agreement;

WHEREAS, as of the date hereof and in favor of Beneficiary, Trustor has entered into a Guarantee of the Senior Notes and Senior Note Indenture, a Guarantee of the Junior Notes and the Junior Note Indenture and a Composite Guarantee of certain other obligations under the Relevant Documents, including the New Bonding Facility Agreement (collectively, the "Guarantees"), pursuant to which Trustor has agreed to guarantee the "Guaranteed Obligations" (as such term is defined in each of the Guarantees) and has agreed to secure the Guaranteed Obligations and other obligations;

WHEREAS, Trustor has received substantial benefit from the Secured Obligations (as defined below) secured hereby, which consist of, among other things, term notes and a revolving bonding

1

facility, made in the aggregate principal amount of up to One Billion Two Hundred Eighty-Four Million Nine Hundred Twenty-Five Thousand and No/100 Dollars (U.S. $1,284,925,000.00) with a maturity date of October 31, 2008; and

WHEREAS, Beneficiary and the Secured Creditors have required that Trustor execute and deliver this Instrument (i) in order to secure the prompt and complete payment, observance and performance of all of the Secured Obligations (as defined below) and (ii) as a condition precedent to Beneficiary and the Secured Creditors entering into the Relevant Documents.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

GRANTING CLAUSE

To secure the payment and the performance and discharge of the Secured Obligations (as hereinafter defined), and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and

confessed, Trustor has GRANTED, BARGAINED, SOLD, WARRANTED, MORTGAGED, ASSIGNED,
TRANSFERRED and CONVEYED, and by these presents does GRANT, BARGAIN, SELL, WARRANT, MORTGAGE, ASSIGN, TRANSFER and CONVEY unto Trustee, in trust for the use and benefit of Beneficiary, with power of sale and right of entry and possession, all of Trustor's present and future estate, right, title and interest in and to the Mortgaged Property (as hereinafter defined) now owned, or
hereafter acquired by Trustor, including the following described real estate in
Dallas County, Texas (the "State"):

      See Exhibit A attached hereto and by this reference made a part hereof which real estate (the "Land"), together with all right, title and
interest, if any, which Trustor may now have or hereafter acquire in and to all
improvements, buildings and structures thereon of every nature whatsoever, is herein called the "Premises."

      TOGETHER WITH all right, title and interest, if any, including
any after-acquired right, title and interest, and including any right of use or
occupancy, which Trustor may now have or hereafter acquire in and to (a) all easements, rights of way, gores of land or any lands occupied by streets, ways,
alleys, passages, sewer rights, air rights, development rights, water courses,
water rights and powers, and public places adjoining said Land, and any other interests in property constituting appurtenances to the Premises, or which hereafter shall in any way belong, relate or be appurtenant thereto and (b) all
hereditaments, gas, oil, minerals (with the right to extract, sever and remove
such gas, oil and minerals), and easements, of every nature whatsoever, located
in or on the Premises and all other rights and privileges thereunto belonging or
appertaining and all extensions, additions, improvements, betterments, renewals,
substitutions and replacements to, or of any rights and interests described in
subparagraph (a) above and this subparagraph (b) (hereinafter collectively called the "Property Rights").

      TOGETHER WITH all additional lands, estates and development rights hereafter acquired by Trustor for use in connection with and the development of the Land, the Premises or the Property Rights and all additional
lands and estates therein which may, from time to time, by supplemental deed of
trust or otherwise, be expressly made subject to the lien of this Instrument.

      TOGETHER WITH all right, title and interest, if any, including

{02780774.DOCX / }

any after-acquired right, title and interest which Trustor may now or hereafter
acquire in and to fixtures and appurtenances of every nature whatsoever now or
hereafter located in, on or attached to, and used or intended to be used in

2

connection with, or with the operation of, the Premises, including, but not
limited to, (a) all apparatus, machinery, and equipment of Trustor; (b) all
extensions, additions, improvements, betterments, renewals, substitutions, and
replacements to or of any of the foregoing (the items described in the foregoing
(a) and (b) being the "Fixtures"); and (c) all personal property and equipment
of every nature whatsoever now or hereafter located in or on the Premises,
including, but not limited to, (i) all screens, window shades, blinds,
wainscoting, storm doors and windows, floor coverings, and awnings of Trustor;
(ii) all apparatus, machinery, equipment and appliances of Trustor not included
as Fixtures; (iii) all items of furniture, furnishings, and personal property of
Trustor; and (iv) all extensions, additions, improvements, betterments,
renewals, substitutions, and replacements to or of any of the foregoing
(i)-(iii) (the items described in the foregoing (i)-(iv) and any other personal
property referred to in this paragraph being the "Personal Property") and in and
to the proceeds of the Personal Property. It is mutually agreed, intended and
declared that the Premises and all of the Property Rights and Fixtures owned by
Trustor (referred to collectively herein as the "Real Property") shall, so far
as permitted by law, be deemed to form a part and parcel of the Land and for the
purpose of this Instrument to be real estate and covered by this Instrument. It
is also agreed that if any of the property herein conveyed is of a nature so
that a security interest therein can be perfected under Article 9 of the Uniform
Commercial Code as enacted by the State ("UCC"), this Instrument shall
constitute a security agreement, fixture filing and financing statement, and
Trustor agrees to execute, deliver and file or refile any financing statement,
continuation statement, or other instruments Beneficiary may require from time
to time to perfect or renew such security interest under the UCC. To the extent
permitted by law, (x) all of the Fixtures are or are to become fixtures on the
Land; and (y) this Instrument shall be effective as a financing statement filed

as a fixture filing with respect to all fixtures included within the Mortgaged
Property and is to be filed for record in the real estate records in the Office
of the County Clerk where the Mortgaged Property (including said Fixtures) is
situated, in accordance with Section 9.502 and other applicable provisions of
the Texas Business and Commercial Code, as amended from time to time. This
Instrument shall also be effective as a financing statement covering minerals or
the like (including oil and gas) and accounts subject to Subsection (e) of
Section 9.103 of the Texas Business and Commerce Code, as amended, and is to be
filed for record in the real estate records of the county where the Mortgaged
Property is situated. The mailing address of Trustor and the address of
Beneficiary from which information concerning the security interest may be
obtained are set forth above. Subject to the terms and conditions of the
Intercreditor Agreement, the remedies for any violation of the covenants, terms
and conditions of the agreements herein contained shall be as prescribed herein
or by general law, or, as to that part of the security in which a security
interest may be perfected under the UCC, by the specific statutory consequences
now or hereafter enacted and specified in the UCC, all at Beneficiary's sole
election.

            TOGETHER WITH all the estate, right, title and interest of
Trustor, in and to all (i) judgments, insurance proceeds, unearned premiums,
awards of damages and settlements, and any interest thereon, resulting from
condemnation proceedings or the taking of the Real Property, or any part
thereof, under the power of eminent domain or for any damage (whether caused by
such taking or otherwise) to the Real Property, the Personal Property or any
part thereof, or to any rights appurtenant thereto, and all proceeds of any
sales or other dispositions of the Real Property, the Personal Property or any
part thereof; and (subject to the terms of the Intercreditor Agreement)
Beneficiary is hereby authorized to collect and receive said awards and proceeds
and to give proper receipts and acquittances therefor, and to apply the same as
provided in the Intercreditor Agreement; (ii) contract rights, general
intangibles, actions and rights in action, relating to the Real Property or the
Personal Property, including, without limitation, all rights to insurance
proceeds and unearned premiums arising from or relating to damage to the Real
Property or the Personal Property; and (iii) proceeds, products, replacements,
additions, substitutions, renewals and accessions of and to the Real Property or
the Personal Property. (The rights and interests described in this paragraph
shall hereinafter be collectively called the "Intangibles.")

<div align="center">3</div>

TOGETHER WITH all the rents, issues and profits of the Real Property and all rents, issues, profits, revenues, royalties, bonuses, rights and benefits due, including all rents, revenues, bonus money, royalties, rights and benefits accruing to Trustor under all present and future oil, gas and mineral leases located on any portion of the Mortgaged Property, payable or accruing (including all deposits of money as advance rent, for security or as earnest money or as downpayment for the purchase of all or any part of the Real Property or the Personal Property) (the "Rents") under any and all Leases (as defined below).

As additional security for the Secured Obligations, Trustor does hereby pledge and assign to Beneficiary from and after the date hereof (including any period of redemption), primarily and on a parity with said real estate, and not secondarily, any and all present and future leases, contracts or other agreements relating to the ownership of the Real Property or the Personal Property or to the occupancy of all or any portion of the Real Property and, except to the extent such a transfer or assignment is not permitted by the terms thereof (and a consent to the transfer or assignment has not been obtained), does hereby transfer and assign to Beneficiary all such leases, contracts and agreements (including all Trustor's rights (x) under any contracts for the sale of any portion of the Mortgaged Property (as hereinafter defined) and (y) to all revenues and royalties under any oil, gas and mineral leases relating to the Real Property) (the "Leases"). Trustor further agrees to execute and deliver such assignments of leases or assignments of land sale contracts as Beneficiary may from time to time request solely for the purpose of creating, protecting, perfecting or maintaining an enforceable lien thereon and an enforceable and valid assignment of Leases. Upon the occurrence of a Trigger Event, (i) Trustor agrees, upon demand, to deliver to Beneficiary all of the Leases with such additional assignments thereof as Beneficiary may request and agrees that Beneficiary may assume the management of the Real Property, including taking control of the Leases (provided that such assumption of management shall be done solely to the extent necessary to collect the Rents in the event of a Material Default), and (ii) Trustor hereby authorizes and directs all tenants, purchasers or other persons occupying or otherwise acquiring any interest in any part of the Real Property to pay the Rents due under the Leases to Beneficiary upon request of Beneficiary. Trustor hereby appoints Beneficiary as its true and lawful attorney-in-fact to manage said property and to control the Leases, with full power to bring suit for collection of the Rents and possession of the Real Property (provided that such possession shall be taken solely to the extent necessary to collect such Rents in the event of a Material Default), giving and

granting unto said Beneficiary and unto its agent or attorney full power coupled

with an interest and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in the protection of the security

hereby conveyed; provided, however, that (i) this power of attorney and assignment of Leases shall not be construed as an obligation upon said Beneficiary to make or cause to be made any repairs that may be needful or necessary, and (ii) Beneficiary agrees that so long as no Trigger Event shall have occurred, Beneficiary shall permit Trustor to perform the aforementioned management responsibilities. Upon Beneficiary's receipt of the Rents, at Beneficiary's option, it may: (i) pay charges for collection hereunder, costs of

necessary repairs and other costs requisite and necessary during the continuance

of this power of attorney and assignment of Rents, (ii) pay general and special

taxes, insurance premiums, and, thereafter, (iii) distribute the balance of the

Rents pursuant to the provisions of the Intercreditor Agreement. This power of

attorney and assignment of Leases shall be irrevocable until this Instrument shall have been satisfied and released of record and the releasing or reconveyance of this Instrument shall act as a revocation of this power of attorney and assignment of Leases. Subject to Beneficiary's grant to Trustor of

the collection and use of the Rents set forth above, Beneficiary shall have and

hereby expressly reserves the right and privilege (but assumes no obligation) to

demand, collect, sue for, receive and recover the Rents, or any part thereof, now existing or hereafter made, and apply the same in accordance with the provisions of the Intercreditor Agreement. Notwithstanding anything to the contrary herein, this power of attorney and assignment of Leases shall be subject and subordinate to Beneficiary's rights set forth in that certain Assignment of Rents dated of even date herewith, and if there is any conflict between

4

the terms of this Instrument and the terms of such Assignment of Rents the terms

of such Assignment of Rents shall control. For purposes of this Instrument, a "Trigger Event" shall mean (i) an Enforcement Event or (ii) a "Material Default"

which for purposes of this Instrument shall mean any event that is (A) an Insolvency Event which is also an Event of Default or (B) any Event of Default

that the Instructing Trustee notifies and instructs Beneficiary to act in response to pursuant to the Intercreditor Agreement. Notwithstanding anything herein, upon an Enforcement Event, Beneficiary shall have the absolute right and

option to exercise any and all rights and remedies provided for in this Instrument and available at law or in equity.

All of the property described above, and each item of property
herein described, and all other rights of Trustor in and to such items of
property, not limited to, but including, the Land, the Premises, the Property
Rights, the Fixtures, the Real Property, the Personal Property, the
Intangibles,
the Rents and the Leases, is herein collectively referred to as the
"Mortgaged
Property". As used herein, "Secured Obligations" means all present and future
indebtedness, liabilities and obligations (for the avoidance of doubt,
including
any liabilities and obligations that have been cash-collateralized by
Trustor),
at any time of Trustor under the Relevant Documents (including this
Instrument),
including any liability in respect of any further advances, if any, made
under
the Relevant Documents, both actual and contingent (and whether incurred
solely
or jointly or in any other capacity) together with any of the following
matters
relating to or arising in respect of those liabilities and obligations: (1)
any
refinancing, novation, deferral or extension; (2) any obligation relating to
any
increase in the amount of such obligations; (3) any claim for damages or
restitution; and (4) any claim as a result of any recovery by Trustor of a
payment or discharge, or non-allowability, on the grounds of preference; and
any
amounts that would be included in any of the above but for any discharge,
non-provability or unenforceability of those amounts in any insolvency or
other
proceedings (including interest accruing after the commencement of any
insolvency or other proceedings).

Nothing herein contained shall be construed as constituting
Beneficiary or any of its Delegates and any of the Secured Creditors a
mortgagee-in-possession in the absence of the taking of actual possession of
the
Mortgaged Property by Beneficiary or any of its Delegates or any of the
Secured
Creditors. Nothing contained in this Instrument shall be construed as
imposing
on Beneficiary any of the obligations of the lessor under any lease of the
Mortgaged Property in the absence of an explicit assumption thereof by
Beneficiary. In the exercise of the powers herein granted Beneficiary, no
liability shall be asserted or enforced against Beneficiary, all such
liability
being expressly waived and released by Trustor.

TO HAVE AND TO HOLD the Mortgaged Property, properties,
rights
and privileges hereby conveyed or assigned, or intended so to be, unto
Trustee,
its successors and assigns, for the benefit of Beneficiary, its successors
and
assigns, forever upon the trusts, terms and conditions and for the uses and

{02780774.DOCX / }

purposes herein set forth. The conveyance of the Mortgaged Property provided for
herein is made upon this special trust. If the Secured Obligations are paid and
performed in full and completely as and when due in accordance with their respective terms, the conveyance provided for herein shall be released upon satisfaction of the conditions set forth in Section 5.3 of the Intercreditor Agreement and shall thereafter be null and void and may be canceled of record at
the request and cost of Trustor and title shall revest as provided by law. If,
however, a Trigger Event shall have occurred, then Beneficiary shall be entitled
to invoke the remedies in the granting clause above in connection with the assignment of Leases and Rents, and if an Enforcement Event shall have occurred,
then Beneficiary shall, in addition to all other rights and remedies at law or
equity provided, be entitled to invoke the remedies provided for in Section 4.02
below including without limitation the right to foreclose this Instrument by judicial proceedings or, at Beneficiary's election, the right to demand that Trustee foreclose this Instrument

5

through exercise of the power of sale herein granted to Trustee, and upon such
demand by Beneficiary, Trustee shall have the right and the duty to foreclose this Instrument as herein provided.

The following provisions shall also constitute an integral part of this Instrument:

ARTICLE I

[Reserved]

ARTICLE II

COVENANTS OF TRUSTOR

Section 2.01.      [Reserved]

Section 2.02.      Leases Affecting the Real Property. All future lessees under any Lease of the Real Property, or any part thereof, made after the date of recording of this Instrument shall, at Beneficiary's option and without any further documentation, attorn to Beneficiary as lessor if for any reason Beneficiary becomes lessor thereunder, and, thereafter, upon demand, to
pay Rent to Beneficiary, and Beneficiary shall not be responsible under such Lease for matters arising prior to Beneficiary becoming lessor thereunder. In respect of each Lease which may be entered into on or after the date hereof, the

{02780774.DOCX / }

lien and estate, as well as the provisions, terms and conditions of each Lease
shall in all respects be subordinate and junior to the lien of this Instrument.

Section 2.03.    Further Assurances. Trustor, at its sole cost and expense, shall (i) upon request of Beneficiary promptly correct any defect or error which may be discovered in this Instrument or any financing statement or
other document relating hereto solely to the extent necessary to create, effectuate, complete, perfect, continue or preserve the lien of this Instrument
on the Mortgaged Property, and (ii) promptly execute, acknowledge, deliver, record and re-record, register and re-register, and file and re-file this Instrument, any amendment to this Instrument and any financing statements or other documents which Beneficiary may request in writing from time to time (all
in form and substance reasonably satisfactory to Beneficiary) in order (A) to create, effectuate, complete, perfect, continue or preserve the lien of this Instrument as a first priority lien on the Mortgaged Property, whether now owned
or hereafter acquired, subject only to the matters set forth on Exhibit B attached hereto and made a part hereof and except for the Permitted Liens (as defined in the Indentures), or (B) to create, effectuate, complete, perfect, continue, preserve or validate any right, power or privilege granted or intended
to be granted to Beneficiary hereunder or otherwise accomplish the purposes of
this Instrument. To the extent permitted by law and to the extent that Trustor
fails to do so as required hereunder, Trustor hereby authorizes Beneficiary to
file financing statements or continuation statements covering the Mortgaged Property.

Section 2.04.    Casualty Proceeds. Trustor hereby assigns to Beneficiary, as additional security, all proceeds or awards of damage resulting
from a casualty event or condemnation proceedings or the taking of or injury to
the Real Property for public use. All such proceeds or awards paid to Beneficiary hereunder shall be applied in accordance with the Indentures.

Section 2.05.    Inspections. Trustor hereby authorizes Beneficiary,
its agents, employees and representatives, upon reasonable prior written notice
to Trustor (except in an emergency or following the occurrence of any Trigger Event, in which case notice shall not be required) to visit and inspect the

6

Mortgaged Property or any portion(s) thereof, all at such reasonable times and
as often as Beneficiary may reasonably request.

{02780774.DOCX / }

Section 2.06.    Indemnity. Trustor hereby indemnifies Beneficiary or any person designated by it and keep Beneficiary or such person designated by it indemnified against any and all costs, claims and liabilities which it may incur as a result of anything done by it as an attorney-in-fact for Trustor in the proper exercise of any of the powers conferred, or purported to be conferred, thereon by this Instrument unless such cost, claim or liability arises as a result of the negligence or wilful misconduct of Beneficiary or such person designated by it. For clarification purposes, the indemnity set forth in this Section 2.06 shall apply solely in those instances where Beneficiary or a Delegate acts as an attorney-in-fact for Trustor for purposes of this Instrument.

Section 2.07.    After Acquired Property Interests. All right, title and interest of Trustor in and to all of the Mortgaged Property, hereafter acquired by Trustor ("After Acquired Property Interests"), immediately upon such acquisition, without any further mortgage, conveyance, assignment or other act by Trustor, shall become subject to the lien of this Instrument as fully and completely, and with the same effect, as though owned by Trustor on the date hereof and specifically described in the granting clauses hereof. Trustor shall execute and deliver to Beneficiary all such other deeds of trust or mortgages and other agreements as Beneficiary may require for the purpose of expressly and specifically subjecting such After Acquired Property Interests to the lien of this Instrument. Trustor hereby irrevocably authorizes and appoints Beneficiary as the agent and attorney-in-fact of Trustor to execute all such documents and instruments on behalf of Trustor, which appointment shall be irrevocable and coupled with an interest, if Trustor fails or refuses to do so within ten (10) days after written request therefor by Beneficiary.

Section 2.08.    Expenses and Costs. Trustor shall, from time to time and promptly on demand by Beneficiary reimburse to Beneficiary all costs and expenses (including legal fees) on a full indemnity basis incurred by Beneficiary and any Delegate in connection with:

1.    the execution, release and discharge of this Instrument and the security created hereby or intended to be created hereby

in respect of the Mortgaged Property and the completion of the transactions and perfection of the security contemplated in this Instrument or forming part of the security created hereby

or intended to be created hereby in respect of the Mortgaged Property;

{02780774.DOCX / }

2.      the actual or contemplated exercise, preservation and/or enforcement of any of the rights, powers and remedies of, or Beneficiary the performance of the duties and obligations of, or any Delegate, or any amendment or waiver in respect of this Instrument;

3.      the foreclosure (whether judicial or by power of sale) of any Mortgaged Property; and

4.      the preservation and/or enforcement of the security created hereby or intended to be created hereby in respect of the Mortgaged Property,

which shall carry interest from the date of such demand until so reimbursed at the rate and on the basis as mentioned in Clause 18.4 of the Intercreditor Agreement.

Section 2.09.      Taxes. Trustor shall pay, promptly on demand of Beneficiary all stamp, registration, notarial and other similar taxes or fees paid or payable by Beneficiary in connection with any action taken or contemplated by or on behalf of Beneficiary for perfecting, maintaining, enforcing, releasing, cancelling, reassigning or resolving any doubt concerning, or for any other purpose in relation

7

to this Instrument, any amendment thereto, any transfer and/or assignment of the rights and/or obligations under the same or the security created hereby or intended to be created hereby in respect of the Mortgaged Property and shall, from time to time, indemnify Beneficiary promptly on demand against any liabilities, costs, claims and expenses resulting from any failure to pay by Trustor or any delay by Trustor in paying any such taxes or fees.

ARTICLE III

BENEFICIARY'S RIGHTS

Section 3.01.      Performance of Trustor's Obligations. Trustor agrees that, upon the occurrence of an Enforcement Event, Beneficiary may, but need not, make any payment or perform any act hereinbefore required of Trustor, in any form and manner deemed expedient. By way of illustration and not in limitation of the foregoing, Beneficiary may, but need not, (i) make full or partial payments of insurance premiums which are unpaid by Trustor, coordinate liens or encumbrances, if any, (ii) purchase, discharge, compromise or settle any tax lien or any other lien, encumbrance, suit, proceeding, title or claim

thereof, or (iii) redeem all or any part of the Premises from any tax or
assessment. All moneys paid for any of the purposes herein authorized and all
other moneys advanced by Beneficiary to protect the Mortgaged Property and
the
lien hereof shall be additional Secured Obligations and shall become
immediately
due and payable without notice and shall bear interest thereon at the rate
set
forth in Clause 18.4 of the Intercreditor Agreement until paid to Beneficiary
in
full. In making any payment hereby authorized relating to taxes, assessments
or
prior or coordinate liens or encumbrances, Beneficiary shall be the sole
judge
of the legality, validity and priority thereof and of the amount necessary to
be
paid in satisfaction thereof.

ARTICLE IV

REMEDIES & RIGHTS

Section 4.01.    Remedies of Beneficiary; Power of Sale. Upon the
occurrence of an Enforcement Event, Beneficiary may, without notice to or
demand
upon Trustor, declare this Instrument to be in default, and, in addition to
all
other rights and remedies at law or in equity available to Beneficiary or as
otherwise provided for in the Intercreditor Agreement or the Indentures, to
the
extent permitted by applicable law, the following provisions shall apply:

(a)    Upon the occurrence of an Enforcement Event, it
shall
thereupon be the duty of Trustee, or his successor or substitute, as
hereinafter
provided, to enforce this trust at the request of the Beneficiary (which
request
shall be presumed) and to sell the Mortgaged Property with or without first
having taken possession of the same and in whole or in part, as the acting
Trustee may elect (all rights to a marshalling of assets of Trustor being
expressly waived hereby), in compliance with the applicable requirements, at
the
time of the sale, of Section 51.002 of the Texas Property Code as amended or
superceded from time to time. Such sale shall be made to the highest bidder
for
cash at public auction at the County Courthouse of any County in which the
Mortgaged Property is situated, in the area of such courthouse designated for
real property foreclosure sales in accordance with applicable law (or in the
absence of any such designation, in the area set forth in the notice of sale
hereinafter described) on the first Tuesday of any month between the hours of
10:00 A.M. and 4:00 P.M. (commencing no earlier than such time as may be
designated in the hereinafter described notice of sale), after giving notice
of
the time, place and terms of sale and the Mortgaged Property to be sold by
(i)
the acting Trustee or any person chosen by him filing a copy of the notice

thereof in the office of the County Clerk of each County where the Mortgaged Property is situated and by posting or causing to be posted written or printed
notice thereof

8

at least twenty-one (21) days preceding the date of said sale at the County Courthouse door of each County, and (ii) Beneficiary or any person chosen by it,
at least twenty-one (21) days preceding the date of said sale, serving written
notice of such proposed sale by certified mail on each debtor obligated to pay
the Secured Obligations evidenced by the Notes according to the records of Beneficiary. Service of such notice to each debtor shall be completed upon deposit of the notice enclosed in a postpaid wrapper, properly addressed to each
debtor at the most recent address as shown by the records of Beneficiary, in a
post office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts
to the effect that such service was completed shall be prima facie evidence of
the fact of service. After such sale, the acting Trustee shall make due conveyance with special warranty to the purchaser or purchasers and Trustor binds itself, its heirs, assigns, executors, administrators, successors and legal representatives to warrant and forever defend the title of such purchaser
or purchasers, claiming by, through, or under grantor but not otherwise. Any abstract of title to the Mortgaged Property furnished in connection with the loan secured by this Instrument shall be delivered by Trustee and become the property of the purchaser at said sale.

(b) Upon the occurrence of an Enforcement Event, the Beneficiary shall have the right and option to proceed with foreclosure in satisfaction of such item or items by directing Trustee, or his successor or substitute as hereinafter provided, to proceed as if under a full foreclosure,
conducting the sale as herein provided, and without declaring the whole Secured
Obligations due, and provided that if sale is made because of an occurrence of
an Enforcement Event as hereinabove mentioned, such sale may be made subject to
the unmatured part of the Relevant Documents and the Secured Obligations secured
hereby, and it is agreed that such sale, if so made, shall not in any manner affect any other obligation or obligations secured hereby, but as to such other
obligations this Instrument and the liens created hereby shall remain in full force and effect just as though no sale had been made under the provisions of this Section 4.01(a). It is further agreed that several sales may be made hereunder without exhausting the right of sale for any other breach of any of

{02780774.DOCX / }

the obligations secured hereby, it being the purpose to provide for a
foreclosure and sale of the Mortgaged Property for any matured portion of any
of
the Secured Obligations secured hereby or other items provided for herein
without exhausting the power to foreclose and to sell the Mortgaged Property
for
any other part of the Secured Obligations secured hereby whether matured at
the
time or subsequently maturing.

(c)     Subject to the terms and provisions of the
Intercreditor Agreement, the proceeds from any such sale shall be applied by
the
acting Trustee as follows:

| | |
|---|---|
| of | **FIRST:**  To the payment of all expenses |
| conveying | advertising, selling and |
| including a | the Mortgaged Property, |
| acting | reasonable commission to the |
| | Trustee. |
| | **SECOND:**  To the payment to Beneficiary of all unpaid Secured Obligations, |
| the | including accrued interest to |
| and | date of sale, in such priority |
| its | proportions as Beneficiary in |
| | discretion shall deem proper. |
| paid | **THIRD:**  The balance, if any, shall be |
| | to Trustor. |

(d)     The acting Trustee hereunder shall have the right
to
sell the Mortgaged Property in whole or in part and in such parcels and order
as
he may determine, and the right of sale hereunder shall not be exhausted by
one
or more sales, but successive sales may be had until all of the Mortgaged
Property have been legally sold. In the event any sale hereunder is not
completed or is defective in the opinion of Beneficiary, such sale shall not
exhaust the power of sale hereunder, and Beneficiary shall have the right to
cause a subsequent sale or sales to be made by Trustee or any successor or
substitute Trustee. Likewise, Beneficiary may become the purchaser at any
such
sale if it is the highest bidder, and shall

9

have the right, after paying or accounting for all costs of said sale or sales,
to credit the amount of the bid upon the amount of the Secured Obligations owing, in lieu of cash payment. The purchaser or purchasers at foreclosure shall
have the right to affirm or disaffirm any Lease.

        (e)      It shall not be necessary for the acting Trustee to
have constructively in his possession any part of the real or personal property
covered by this Instrument, and the title and right of possession of the Mortgaged Property shall pass to the purchaser or purchasers at any sale hereunder as fully as if the same had been actually present and delivered. Likewise, on foreclosure of this Instrument whether by power of sale herein contained or otherwise, Trustor or any person claiming any part of the Mortgaged
Property by, through or under Trustor, shall not be entitled to a marshalling of
assets or a sale in inverse order of alienation.

        (f)      The recitals and statements of fact contained in any
notice or in any conveyance to the purchaser or purchasers at any sale hereunder
shall be prima facie evidence of the truth of such facts, and all prerequisites
and requirements necessary to the validity of any such sale shall be presumed to
have been performed.

        (g)      Any sale under the powers granted by this Instrument
shall be a perpetual bar against Trustor, its heirs, successors, assigns and legal representatives.

        (h)      In the event of a foreclosure under the powers granted by this Instrument, Trustor, and all other persons in possession of any
part of the Mortgaged Property shall be deemed tenants at will of the purchaser
at such foreclosure sale and shall be liable for a reasonable rental for the use
of the Mortgaged Property; and if any such tenants refuse to surrender possession of the Mortgaged Property upon demand, the purchaser shall be entitled to institute and maintain the statutory action of forcible entry and detainer and procure a writ of possession thereunder, and Trustor expressly waives all damages sustained by reason thereof.

        (i)      To the extent Section 51.003 of the Texas Property Code, or any amendment thereto or judicial interpretation thereof, requires that
the "fair market value" of the Mortgaged Property shall be determined as of the
foreclosure date in order to enforce a deficiency against Trustor or any other

party liable for the repayment of the Secured Obligations, the term "fair market
value" shall include those matters required by law and shall also include the
additional factors as follows:

(i)      The Mortgaged Property is to be valued
"AS
IS, WHERE IS" and "WITH ALL FAULTS" and there shall be no assumption of
restoration of or refurbishment of the Mortgaged Property after the date of
foreclosure;

(ii)      There shall be an assumption of a prompt
resale of the Mortgaged Property for an all cash sales price by the purchaser
at
the foreclosure so that no extensive holding period should be factored into
the
determination of "fair market value" of the Mortgaged Property;

(iii)      An offset to the fair market value of the
Mortgaged Property, as determined hereunder, shall be made by deducting from
such value the reasonable estimated closing costs relating to the sale of the
Mortgaged Property including but not limited to brokerage commissions, title
policy expenses, tax prorations, escrow fees, and other common charges which
are
incurred by a seller of real property similar to the Mortgaged Property; and

10

(iv)      After consideration of the factors
required
by law and those required above (including the addition of any income to be
generated by the Mortgaged Property), an additional discount factor shall be
calculated based upon the estimated time it will take to effectuate a sale of
the Mortgaged Property so that the "fair market value" as so determined is
discounted to be as of the date of the foreclosure of the Mortgaged Property.

Section 4.02.      Application of the Rents or Proceeds from
Foreclosure
or Sale. The Rents and the proceeds of any sale (whether through a
foreclosure
proceeding or Beneficiary's exercise of the power of sale) shall be
distributed
and applied in accordance with the terms of the Intercreditor Agreement.
Subject
to the terms and provisions of the Intercreditor Agreement, there shall be
allowed (and included in the decree for sale in the event of a foreclosure by
judicial action) to be paid out of the Rents or the proceeds of such
foreclosure
proceeding and/or sale:

(a)      Secured Obligations. All of the Secured
Obligations
and other sums secured hereby which then remain unpaid;

(b)     Other Advances. All other items advanced or paid by Beneficiary pursuant to this Instrument, with interest thereon at the rate set forth in Clause 18.4 of the Intercreditor Agreement from the date of advancement; and

(c)     Costs, Fees and Other Expenses. All court costs, reasonable in-house and outside attorneys' and paralegals' fees and expenses, costs of environmental surveys and guard or other security services, appraiser's fees, advertising costs, notice expenses, expenditures for documentary and expert evidence, stenographer's charges, publication costs, and costs (which may be estimated as to items to be expended after entry of the decree) of procuring all abstracts of title, title searches and examinations, title guarantees, title insurance policies, surveys, and similar data with respect to title which Beneficiary may deem necessary. All such expenses shall become additional Secured Obligations and be immediately due and payable, with interest thereon at the rate set forth in Clause 18.4 of the Intercreditor Agreement, when paid or incurred by Beneficiary or Trustee in connection with any proceedings, including, but not limited to, probate and bankruptcy proceedings, to which Beneficiary or Trustee shall be a party, either as plaintiff, claimant or defendant, by reason of this Instrument or any indebtedness hereby secured or in connection with the preparations for the commencement of any suit for the foreclosure, whether or not actually commenced, or sale under the power of sale herein granted.

Section 4.03.     Cumulative Remedies; Delay or Omission Not a Waiver. Each remedy or right of Beneficiary shall not be exclusive of, but shall be in addition to, every other remedy or right now or hereafter existing at law or in equity. No delay in the exercise or omission to exercise any remedy or right accruing on the occurrence or existence of any Material Default or Enforcement Event shall impair any such remedy or right or be construed to be a waiver of any such Material Default or Enforcement Event or acquiescence therein, nor shall it affect any subsequent Material Default or Enforcement Event of the same or different nature. Every such remedy or right may be exercised concurrently or independently and when and as often as may be deemed expedient by Beneficiary. The acceptance by Beneficiary, any successor administrative agent or any secured party of any payment less than the amount of the Secured Obligation in question shall be deemed to be an acceptance on account only and shall not be construed

as a waiver of any Material Default or Enforcement Event with respect thereto,
and the acceptance by Beneficiary, any successor administrative agent or any secured party of any payment of, or on account of, any Secured Obligation shall
not be deemed to be a waiver of any Material Default or Enforcement Event other
occurrence hereunder or under any Relevant Documents with respect to any other
Secured Obligation. If Beneficiary has proceeded to enforce any remedy or right
hereunder or with respect hereto by foreclosure, sale, entry or otherwise, it may compromise, discontinue or abandon such

11

proceeding for any reason without notice to Trustor or any other party (except
any other agent, the Secured Creditors or the other secured parties to the extent required by any Relevant Documents); and, if any such proceeding shall be
discontinued, abandoned or determined adversely for any reason, Trustor and Beneficiary shall retain and be restored to their former positions and rights hereunder with respect to the Mortgaged Property, subject to the lien hereof except to the extent any such adverse determination specifically provides to the
contrary.

Section 4.04.    Beneficiary's Remedies against Multiple Parcels.
If
more than one property, lot or parcel is covered by this Instrument, and if this
Instrument is foreclosed upon, or judgment is entered upon any Secured Obligations, or if Trustee effects a trustee's sale under power of sale, execution may be made upon or Trustee may effect a trustee's sale against any one or more of the properties, lots or parcels and not upon the others, or upon
all of such properties or parcels, either together or separately, and at different times or at the same time, and execution sales or trustee's sale herein granted may likewise be conducted separately or concurrently, in each case at Beneficiary's election.

Section 4.05.    No Merger. In the event of a foreclosure of this Instrument or any other mortgage or deed of trust securing the Secured Obligations, the Secured Obligations then due to the Beneficiary shall not be merged into any decree of foreclosure entered by the court, and Beneficiary may
concurrently or subsequently seek to foreclose one or more other deeds of trust
which also secure said Secured Obligations.

Section 4.06.    Waivers by Trustor. To the fullest extent permitted
under applicable law, Trustor shall not assert, and hereby irrevocably waives,

{02780774.DOCX / }

any right or defense Trustor may have under any statute or rule of law or equity
now or hereafter in effect relating to (a) homestead exemption, extension, moratorium, stay, redemption, marshaling of the Mortgaged Property or the other
assets of Trustor, sale of the Mortgaged Property in any order or notice of deficiency or intention to accelerate any Secured Obligation, (b) impairment of
any right of subrogation or reimbursement, (c) any requirement that at any time
any action must be taken against any other party, any portion of the Mortgaged
Property or any other asset of Trustor or any other party, (d) any provision barring or limiting the right of Beneficiary to sell any Mortgaged Property after any other sale of any other Mortgaged Property or any other action against
Trustor or any other party, (e) any provision barring or limiting the recovery
by Beneficiary of a deficiency after any sale of the Mortgaged Property, (f) any
other provision of applicable law which shall defeat, limit or adversely affect
any right or remedy of Beneficiary or any secured party under or with respect to
this Instrument or any other Relevant Documents as it relates to any Mortgaged
Property, (g) the right of Beneficiary to foreclose this Instrument in its own
name on behalf of all of the secured parties by judicial action as the real party in interest without the necessity of joining any secured party, or (h) the
Guarantees, including, without limitation, notice of existence, creation or incurring of any new or additional indebtedness or obligation or of any action
or non-action on the part of Trustor or the Issuer, Beneficiary or any Secured
Creditor or on the part of any person whomsoever under the Intercreditor Agreement, this Instrument or any of the other Relevant Documents in connection
with any obligation or evidence of indebtedness held by Beneficiary, as Security
Trustee for the Secured Creditors, or held by any of the Secured Creditors. Appraisement of the Premises is hereby expressly waived, at the option of Beneficiary, which such option shall be executed prior to the time any judgment
is tendered at foreclosure.

Section 4.07. Jurisdiction and Process. (a) To the extent permitted
under applicable law, in any suit, action or proceeding arising out of or relating to this Instrument or any other Relevant Documents insofar and only insofar as it relates to any Mortgaged Property, Trustor (i) irrevocably consents to the non-exclusive jurisdiction of any state or federal court sitting
in which the Premises is located and irrevocably waives any defense or objection
which it may now or hereafter have to the jurisdiction of

12

such court or the venue of such court or the convenience of such court as the forum for any such suit, action or proceeding, and (ii) irrevocably consents to

the service of (A) any process in accordance with applicable law in any such suit, action or proceeding, or (B) any notice relating to any sale, or the exercise of any other remedy by Beneficiary hereunder by mailing a copy of such

process or notice by United States registered or certified mail, postage prepaid, return receipt requested to Trustor at its address specified in or pursuant to Section 5.01; such service to be effective in accordance with applicable law.

(b)      Nothing in this Section shall affect the right of Beneficiary to bring any suit, action or proceeding arising out of or relating

to this Instrument, or any other Relevant Documents in any court having jurisdiction under the provisions therein or applicable law or to serve any process, notice of sale or other notice in any manner permitted by this Instrument, the other Relevant Documents or applicable law.

Section 4.08.      Concerning Beneficiary. (a) Beneficiary is authorized

to take all such action as is provided to be taken by it as Beneficiary hereunder and all such other action incidental thereto, subject to the terms and

provisions of the Intercreditor Agreement. As to any matters not expressly provided for herein (including the timing and methods of realization upon the Mortgaged Property), Beneficiary shall, in addition, act or refrain from acting

in accordance with the terms and provisions of the Intercreditor Agreement. Beneficiary shall not be responsible for the existence, genuineness or value of

any of the Mortgaged Property or for the validity, perfection, priority or enforceability of the lien of this Instrument on any of the Mortgaged Property,

whether impaired by operation of law or by reason of any action or omission to

act on its part hereunder. Beneficiary shall have the right, but shall have no

duty, to ascertain or inquire as to the performance or observance of any of the

terms of this Instrument by Trustor.

(b)      Beneficiary may, at any time, delegate by power of attorney or otherwise to any person(s) or entity(ies) the ability to exercise any or all of the rights, powers and discretions vested in it by this Instrument

or appoint any person or entity to act as additional Beneficiary or as co-trustee for the purpose of this Instrument, in accordance with and subject to

the terms of Clause 16 of the Intercreditor Agreement.

{02780774.DOCX / }

(c)    In the event that Beneficiary acts as Trustor's attorney in fact or otherwise as its agent as provided for under this Instrument, Trustor shall ratify and confirm all things done and all documents executed by Beneficiary in the exercise or purported exercise of all or any of such powers or acts.

## ARTICLE V

### MISCELLANEOUS

Section 5.01.    Notices. Except as otherwise provided herein, all communication required or permitted to be given in connection with this Instrument shall be in writing, and shall be given or served in the manner and to the address, and deemed received, as provided in clause 20 of the Intercreditor Agreement. All communications to Trustee shall be sent to Trustee at:

13

if to Trustee:

Ward Williford
c/o First American Title Insurance Company
1909 Woodall Rodgers Freeway, Suite 410
Dallas, Texas 75201
Telecopier No.: (214) 303-0935

Trustee shall, from time to time, have the right to specify as the proper addressee and/or address for the purposes of this Instrument any other party or address in the United States upon giving five (5) days prior written notice in the manner herein prescribed. Trustor's mailing address, as set forth in the opening paragraph hereof or as changed pursuant to the provision hereof, is true and correct.

Section 5.02.    Extension of Payments and Other Modifications. Trustor agrees that, without affecting the liability of any person for payment of the Secured Obligations or affecting the lien of this Instrument upon the Mortgaged Property or any part thereof (other than persons or property explicitly released as a result of the exercise by Beneficiary or Trustee of their rights and privileges hereunder), Beneficiary may (without obligation), at any time and from time to time, on request of Trustor made in accordance with the terms and provisions of the Intercreditor Agreement, without notice to any person liable for payment of any Secured Obligations or to any other person or

{02780774.DOCX / }

entity, extend the time, or agree to alter or amend the terms of payment of such
Secured Obligations; provided, however, that such actions of Beneficiary are expressly limited by the terms and provisions of the Intercreditor Agreement. Trustor further agrees that any part of the security herein described may be released with or without consideration without affecting the remainder of the Secured Obligations, the remainder of the security or the lien of this Instrument.

Section 5.03.      Governing Law. Trustor agrees that this Instrument is
to be construed, governed and enforced in accordance with the laws of the State.
Wherever possible, each provision of this Instrument shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Instrument shall be prohibited by or invalid under applicable
law, such provision shall be ineffective only to the extent of such prohibition
or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Instrument.

Section 5.04.      Satisfaction of Mortgage. Upon satisfaction of the conditions set forth in Section 5.3 of the Intercreditor Agreement, this conveyance or lien shall be null and void and, upon demand therefor following such satisfaction, a satisfaction of mortgage or reconveyance of the Mortgaged
Property and any other documents required to release the lien of this Instrument
shall promptly be provided by Beneficiary to Trustor, at Trustor's sole expense,
without recourse to, or any representation or warranty by, the Beneficiary or any of its nominees.

Section 5.05.      Successors and Assigns Included in Parties. This Instrument shall be binding upon Trustor and upon the successors, assigns and vendees of Trustor and shall inure to the benefit of Beneficiary's successors and assigns and any principals it represents as agent; all references herein to
Trustor and to Beneficiary or Trustee shall be deemed to include their successors and assigns and, as to Beneficiary, any principals it represents as
agent. Trustor's successors and assigns shall include, without limitation, a receiver, trustee or debtor in possession of or for Trustor. Wherever used, the
singular number shall include the plural, the plural shall include the singular,
and the use of any gender shall be applicable to all genders.

14

Section 5.06.      Waiver of Appraisement, Valuation, Stay, Extension and Redemption Laws. Trustor agrees, to the full extent permitted by law, that

in case of an Enforcement Event, neither Trustor nor anyone claiming through or
under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, or extension laws now or hereafter in force, in
order to prevent or hinder the enforcement or foreclosure of this Instrument or
the absolute sale of the Mortgaged Property or the final and absolute putting into possession thereof, immediately after such sale, of the purchaser thereat,
and Trustor, for itself and all who may at any time claim through or under it,
hereby waives, to the full extent that it may lawfully so do, the benefit of all
such laws, and any and all right to have the assets comprising the Mortgaged Property marshalled upon any foreclosure of the lien hereof and agrees that Trustee, or any court having jurisdiction to foreclose such lien may sell the Mortgaged Property in part or as an entirety. Trustor represents that it has been authorized to, and Trustor does hereby waive to the full extent permitted
by law any and all statutory or other rights of redemption from sale under power
of sale or from sale under any order or decree of foreclosure of this Instrument, on its own behalf and on behalf of each and every person acquiring
any interest in or title to the Mortgaged Property subsequent to the date hereof.

Section 5.07.     Interpretation with Other Documents. Notwithstanding
anything in this Instrument to the contrary, (a) in the event of a conflict or
inconsistency between this Instrument and the provisions of the Intercreditor Agreement, the provisions of the Intercreditor Agreement shall govern, and (b)
the exercise of any right or remedy by Beneficiary under this Instrument shall
be done in accordance with and is subject to the terms and provisions of the Intercreditor Agreement.

Section 5.08.     Future Advances. The parties hereto intend that, in
addition to any other debt or obligation secured hereby, this Instrument shall
secure unpaid balances of loan advances and other extensions of credit made after this Instrument is delivered to the appropriate recording offices of the
State, whether such advances or extensions of credit made are obligatory or otherwise, and such future advances or extensions of credit shall be secured to
the same extent as if such advances or extensions of credit were made on the date hereof, although there may be no advance or extensions of credit made at the time of the execution hereof and although there may be no indebtedness outstanding at the time any advance or extension of credit is made. Such unpaid
balances of loan advances and other extensions of credit may or may not be evidenced by notes executed pursuant to the applicable Relevant Documents.

# **Exhibit I**

Bankr. D.I. 5716

*Emergency Hearing*

# STATEMENT OF FACTS

**Filed on August 18, 2015** *Re: 5384*

**Section B- Paragraph** 2

## AMENDMENT TO STATEMENT

- September 28, 1998- Stewart Associates was formed.
- June 29, 2005- JSC, TSC, and Stewart Associates merged.

## ADDITIONAL INFORMATION

**August 20, 2015**

- Marco Montemayor, an agent of mine that only gathers information for me only. He presented me with an 8K filing for Edison International in the name of Kenneth S. Stewart for 51% of the shares of Edison International. I previously submitted my TRW verifying that Kenneth Robert Stewart is a/k/a Kenneth S. Stewart.

- I pray that the Court call a emergency ~~board meeting with Edis International,~~ *on Edison International* EFH/EFIH ETAL. So I can be up to date in the Bankruptcy to effectively stop the unnecessary spending that affects the stock holders. Moreover, I will submit a plan for Edison International EFH/ EFIH ETAL after an emergency ~~board meeting~~ *Hearing* is held. I have had no representation that has been guiding me with this bankruptcy.

Respectfully submitted,

Kenneth R. Stewart a/k/a Kenneth S. Stewart
Pro se
2028 Sandy Lane
Irving, Texas 75060
TEL: (817) 751-3280
kenstew721@gmail.com

# **Exhibit J**

Bankr. D.I. 6101

September 16, 2015

Chapter 11 (CSS)
Case No 14-10979

Kenneth S Stewart   AKA Robert

A.  My Intent with EFIH is to Recover Asset
to pay creditors.

2015 SEP 16 PM 1:01
CLERK
US BANKRUPTCY
DISTRICT OF DE

B.  Recover of money, Notes, property.

C.  548 fraudulent transfer of notes, money
that intent was to defraud creditors. "year 2007"
And "2012" Notes to Edison International AKA TXU

E. 307 Notice of Drop of Fiduciary Duty. Subject
to Claim of property or possessory right in
the instrument or procedes. Including a claim
to resend a negotiation And to Recover the
Instruments or its procedes. 306

I Pray

That I am granted more time to
hire Attorney to File the Adversary
hearing. ~~which~~ Against ( KKR et al
Allstate )

Kenneth S Stewart Jr
Aka Robert
2028 Sandy Ln
Irving, TX 75060

# Exhibit K

Bankr. D.I. 6934

November 3, 2015
Judge Christopher Sontchi
824 N. Market St., 5th Floor, Courtroom #6
Wilmington, Delaware 19801
RE: Kuk Stewart Creditor #5739, Kenneth S. Stewart aka Kenneth R. Stewart #5384

The Honorable Sontchi:

I recently successfully submitted to you in Delaware the third party evidence of myself being the sole heir to my father's estate in Texas through trusts and direct ownerships in my name which hold directly, and/or indirectly, major interests in 100,000+ acres, including 40,000+ acres of West Dallas, including Lone Star Park and the Trinity River, and major equity/bond interests in over 610+ companies (see exhibit A), *including TXU Energy Co., where you recognized my legitimate claims hereto.* Also I hold other major interests in Allstate Insurance, the Brazos River Authority, Aurora Gas Pipeline, American Tower Communications, AT&T, Verizon, Oncor, ATC Freightliner, and others that have disappeared through a long trail of shady corporate management tactics and shells with the assistance of KKR.

As you are already aware, my father was an equal partner with H.L. Hunt, Trammell Crow, and Magnum Entertainment in Dallas, Texas in the 1970's, 1980's, 1990's and 2000's until his death in 2004, when it all officially passed to me. But I haven't seen anything. Furthermore, as you are further aware, the heir-ship trusts and ownerships established by my father for me has been mismanaged and grossly abused by numerous fiduciary attorneys of record and corporate entities, and forever held from me, as I am now 45.

Collectively, all my inherited assets, cash flow, royalties, dividends, rents, sales, salaries, and exchanges have been premeditatedly held from me by said attorneys and entities, where they and others have colluded and deprived me of all records, accountability, and income from my assets exceeding $35-$50 billion, and where said companies and attorneys have and are still keeping me out of my rightful ownership, with Improper Proxy, False Public Company Board of Directorships in my name but not me, and from any cash flow ever, yet they have received enormous benefits for over 11+ years totaling billions. Even the Texas Comptroller has many hundreds, maybe thousands, of documented unaccounted/uncollected monetary claims in my name but with a different social security name, and will not allow me to access this information or accounts, for which I am just now will be pursuing.

Recently after my rightful, but jailed attempt, to meet with the President of Allstate Insurance in Chicago, and after your case in Delaware, I have had death threats especially <u>after I refused a recent $1.054 billion dollar offer</u> from said representatives for these entities, to sign, shut up and go away, and that I would never see any more dollars one way or another. Due to the amounts of my mismanaged inheritance, collusion of attorneys and entities, and prevailing continuous organized criminal acts, along with multiple death threats against me to where I am now being tailed and protected by a major federal agency, <u>I am requesting to you</u>:

1. Treat this case under the laws of RICO.

2. Issue injunctions on said companies to prevent them from hiding, selling, and exchanging my interests.

Judge Sontchi
November 3, 2015

3. Assist in coordinating/referring 7 federal agencies and 5 Texas state agencies to rip this case apart for organized crime involving some of the biggest family names and corporations (and Board of Directors) in Texas and the U.S.

4. Please open and establish a Federal Grand Jury Investigation against all predatory parties involved hereto.


As stated above, to review part of the TXU corporate shell game trail, I have included an incomplete list of companies as they have been strategized to be opened, bankrupted, reorganized and merged for deceitful purposes. Secondly, I have attached other specific documents pertaining to my ownership in said main interests, including the Allstate Corporations.

Thirdly, I will send to you a narrated and documented detailed presentation in two weeks for your further review, which will also be distributed to other specific federal and state agencies.

Judge Sontchi, at this time I am officially requesting federal court assistance. Under RICO laws this collusion of criminal activity must be pursued to the maximum, held accountable, and stripped of their ill-gotten gains which are mine.

Thank you,

Kenny Stewart
Pro Se

P.O. Box 154645
Irving, Texas  75015
817.751.3280

# **Exhibit L**

Bankr. D.I. 7369

Case No: 14-10979

# IN THE UNITED SATES BANKRUPTCY

# COURT

# FOR THE DISTRICT OF DELAWARE

## RE: ENERGY FUTURE HOLDINGS, CORP.

## ATTN: THE HONORABLE CHRISTOPHER S. SONTCHI

KENNETH S. STEWART A/K/A KENNETH R. STEWART FILES THIS ITEMIZED DOCUMENTATION OF STATEMENT OF FACTS THAT HAS PREVIOSLY BEEN SUBMITTED TO EPIQ SYSTEMS AND FUTURE ENERGY HOLDINGS.

   MY MAJOR INTEREST AS A MAJOR INTEREST **HOLDER IN TXU AND EDISON INTERNATIONAL** IS MY

OBLIGATION TO THE SOLVENCY OF ONCOR.

Respectfully Submitter,

CHARLES MONTEMAYOR

Cc: KENNETH S. STEWART

# **Exhibit M**

Debtors' Amended Responses and Objections to Kuk Ja Stewart's Discovery Requests to Debtor re Debtors' Fourteenth Omnibus (Substantive) Objection to (Certain Substantive Duplicate, No Liability, and No Claim Asserted) Claims Pursuant to Sections 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007 and Local Bankruptcy Rule 3007-1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### DEBTORS' AMENDED RESPONSES AND OBJECTIONS TO "KUK JA STEWART'S DISCOVERY REQUESTS TO DEBTOR RE DEBTORS' FOURTEENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO (CERTAIN SUBSTANTIVE DUPLICATE, NO LIABILITY, AND NO CLAIM ASSERTED) CLAIMS PURSUANT TO SECTIONS 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003, AND 3007, AND LOCAL BANKRUPTCY RULE 3007-1"

Pursuant to Federal Rules of Bankruptcy Procedure 7026, 7034, and 9014, as incorporated thereby, Rules 26 and 34 of the Federal Rules of Civil Procedure, and the *Debtors' Fourteenth Omnibus (Substantive) Objection to (Certain Substantive Duplicate, No Liability, and No Claim Asserted) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* (the "Claims Objection"), the above captioned debtors and debtors in possession in these chapter 11 cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby respond and object to the *Request to the Debtors for the Production of Documents*, dated October 14, 2015 (the "Requests"), propounded by Kuk Ja Stewart (the "Claimant").

To the extent that the Debtors produce documents in response to the Requests, the Debtors do not waive any objections or rights.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## Specific Responses and Objections

The Debtors incorporate by reference their General Objections set forth below to the extent applicable herein.  Nothing in these responses and objections shall be construed as an acceptance, endorsement, or adoption by the Debtors of any instruction or definition of any term contained in the Requests (the "Instruction" or "Definition," as applicable).  The Debtors' responses are based on a reasonable search of their books and records.  Without waiving the Debtors' General Objections, the Debtors respond as follows:

## Document Request No. 1

Produce any documents that you intend to rely upon or introduce at the claim objection hearing.

## Response to Request No. 1

The Debtors intend to rely upon Proofs of Claim nos. 5739, 10003 and 10982 and documents appended thereto (the "Stewart Claims") and other additional materials provided by Kenneth Stewart, which the Debtors have produced.  As the Debtors were unable to locate any documents in their possession evidencing a connection to the Stewart Claims, these are the only documents the Debtors anticipate relying upon.

## Document Request No. 2

Produce all documents identified and relied upon in preparing the objection to the claims filed by Claimant.

## Response to Request No. 2

The Debtors identified and reviewed the Stewart Claims and other additional materials provided by Kenneth Stewart in preparing the Claims Objection, which the Debtors have produced.

## Document Request No. 3

Produce any documents that refer to any lease, easement or other agreement between any debtor and any of the following:

Kuk Ja Stewart UP G KUK, Inc.

UP_G_KUK,INC.

Kukja Stewart or

Stewart Hong Kuk (hereinafter collectively referred to as "<u>Stewart</u>").

## Response to Request No. 3

The Debtors have conducted a reasonable search of records in their possession, custody,

and control, and did not locate documents responsive to this request.

## Document Request No. 4

Produce any documents that refer to any lease, easement or other agreement between any debtor with respect to any of the following parcels of land:

HUNTER FERRELL ROAD PROJECT: 1800 and 1900 Hunter Ferrell Roads, City of

Irving, Dallas County, Texas

VOLUME/PAGE

86166 P 2069

88119 P 0715

70009 P 0319

86166 P 2069

84211 P 350

86166 P 2069

84211 P 0366

VOLUME F 480

71002 P 1746

70005 P 319

88119 P 0715

85072 P 1180

4611 P 93

85072 P 1184

80199 P 1301

81108 P 1537

69150 P 1526

76039 P 1470

7803 P 0651

70009 P 0317

LOT 38 BLOCK C LANCASTER, TX

VOLUME 9 467-468

84211 P 350

VOLUME F P 480

71002 P 1746

RPS 2104 SURVEY BY FRED KASPER JR

VOLUME 84211 P 0366

VOLUME F P 480

71002 P 1746

70005 P 319

ABSTRACT 861

33.33 acres /9.437 acres J Mangrum Survey, A-861 and

THE HYDE PARK ADDITION

Lot 17, Block 41 Southland Division, VLOCKS 24 TO 41, Tarrant County, Forth Worth,

Texas

LAS COLINAS PROJECT

VOLUME/PAGE

86168 P 2069

88119 P 075

70009 P 0319

86168 P 2069

79122 P 0749

77154 P 1096

79122 P 0749

82071 P 3241

73166 P 1001

75154 P 1096

79122 P 0749

73166 P 1001

77254 P 1096

I.& GNNRR ABSTRACT 1624

WT CAMP BELL SURVEY ABSTRACT 1663

ABSTRACT 1701, 371-471

HRS JONES 1626

JW JOHNSON 1640

JP BIRD 1640

G.W. CLARK 371

S. FISHER 471

VOLUME

70009 0317

VOLUME 9 P 467 768

LOT 38 BLOCK C

73166 P 1001

(hereinafter collectively referred to as "Land").

### Response to Request No. 4

The Debtors have conducted a reasonable search of records in their possession, custody, and control, and did not locate documents responsive to this request.

### Document Request No. 5

Produce any lease, easement or other agreement between any debtor and Stewart.

### Response to Request No. 5

The Debtors have conducted a reasonable search of records in their possession, custody, and control, and did not locate documents responsive to this request.

### Document Request No. 6

Produce any lease, easement or other agreement between any debtor with respect to the Land.

### Response to Request No. 6

The Debtors have conducted a reasonable search of records in their possession, custody, and control, and did not locate documents responsive to this request.

## Document Request No. 7

Produce all documents reflecting the exploring, drilling, mining and operating for, producing and owning oil, gas, sulphur and other liquid or gaseous hydrocarbons produced in association with oil or gas, together with the right to make surveys on said Land, lay pipe lines, construct roads and bridges, build tanks, and other structures on the Land for your operations in exploring, drilling for, producing, treating, and transporting said minerals produced from the Land.

## Response to Request No. 7

The Debtors have conducted a reasonable search of records in their possession, custody, and control, and did not locate documents responsive to this request.

## Document Request No. 8

Produce documents reflecting any activities on the Land, including commencement of drilling, laying of any pipelines, logging of a well, or other activities.

## Response to Request No. 8

The Debtors have conducted a reasonable search of records in their possession, custody, and control, and did not locate documents responsive to this request.

## Document Request No. 9

Produce documents filed with the regulatory authorities pertaining to drilling and production on the Land, including drilling permits, completion reports and production reports.

## Response to Request No. 9

The Debtors have conducted a reasonable search of records in their possession, custody, and control, and did not locate documents responsive to this request.

## Document Request No. 10

Produce documents reflecting any assignments of interests in the lease, easement or other agreement pertaining to the Land.

## Response to Request No. 10

The Debtors have conducted a reasonable search of records in their possession, custody, and control, and did not locate documents responsive to this request.

## Document Request No. 11

Produce documents reflecting any pooled unit designation affecting the lease, easement or agreement pertaining to the Land.

## Response to Request No. 11

The Debtors have conducted a reasonable search of records in their possession, custody, and control, and did not locate documents responsive to this request.

## Document Request No. 12

Produce well logs and well tests for any lease, easement or agreement pertaining to the Land.

## Response to Request No. 12

The Debtors have conducted a reasonable search of records in their possession, custody, and control, and did not locate documents responsive to this request.

## Document Request No. 13

Produce documents reflecting any contracts by which the debtor sells oil and gas produced from the lease, easement or other agreement for the Land.

## Response to Request No. 13

The Debtors have conducted a reasonable search of records in their possession, custody, and control, and did not locate documents responsive to this request.

## Document Request No. 14

Produce documents showing how any debtor is calculating the royalties paid or to be paid under the lease, easement or other agreement for the Land.

## Response to Request No. 14

The Debtors have conducted a reasonable search of records in their possession, custody, and control, and did not locate documents responsive to this request.

## Document Request No. 15

Produce documents reflecting any production, marketing and sale of production from the Land.

## Response to Request No. 15

The Debtors have conducted a reasonable search of records in their possession, custody, and control, and did not locate documents responsive to this request.

*****

## General Objections

The following General Objections apply to each of the foregoing Requests. Each General Objection is hereby incorporated into each individually numbered response as if fully set forth therein.

1.    The Debtors object to the Requests to the extent that they seek information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence related to the Stewart Claims.

2.    The Debtors object to the Requests to the extent that they seek to impose upon the Debtors an obligation to provide documents not in their possession, custody and/or control, or to create documents that are not currently in their possession.

3.    The Debtors object to the Requests to the extent that they purport to require the production of documents that are publicly available or equally available to the requesting party.

4.    The Debtors object to the Requests to the extent that they are overly broad or unduly burdensome.

5.    The Debtors object to the Instructions and Definitions to the the extent that they render the Requests overbroad and unduly burdensome and would require the Debtors to conduct an unreasonably broad search to find responsive documents.

6.      The Debtors object to the Requests to the extent that they purport to impose obligations on the Debtors greater than those required by the Federal Rules of Bankruptcy Procedure, including but not limited to Federal Rules of Civil Procedure 26 and 34 as incorporated thereby.  The Debtors will comply with the obligations required by these Rules.

7.      The Debtors object to the Requests to the extent that they purport to require the Debtors to respond on behalf of any person or entity other than the Debtors.  The Debtors respond to these Requests only on behalf of themselves as debtors and debtors-in-possession to these chapter 11 cases.

8.      The Debtors object to the Requests to the extent that they require the Debtors to search for and produce electronically stored documents (including email) from sources that are not reasonably accessible because of undue burden or cost, as set forth in Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure and incorporated by Rule 7026 of the Federal Rules of Bankruptcy Procedure.

9.      The Debtors object to the Requests to the extent that they are vague, ambiguous, and unclear, including the use of terms that are not defined and/or not otherwise susceptible to any single meaning.

10.     The Debtors object to the Requests to the extent that they fail to comply with the requirements of Federal Rule of Civil Procedure 34(b)(1)(A) (as incorporated by Federal Rule of Bankruptcy Procedure 7034) to "describe with reasonable particularity each item or category of items to be inspected."

11.     The Debtors object to the Requests to the extent that they seek documents or information from the Debtors that contain sensitive, confidential, competitive, developmental or commercial research information that is of a proprietary nature and/or is protected by other

privacy protections provided by applicable laws, rules, and/or regulations.  To the extent any such information is disclosed in response to the Requests, such disclosure shall be subject to and made pursuant to the Confidentiality Agreement and Stipulated Protective Order agreed upon by the parties and entered by the Court in reference to these Chapter 11 cases on August 13, 2014 [D.I. 1833].

12.    The Debtors object to the Requests to the extent that they seek material that may not be divulged by law or contract, including confidential information of third parties.

13.    The Debtors object to the Requests to the extent that they seek disclosure from which the Debtors are entitled to seek protection due to annoyance, embarrassment, oppression, or undue burden or expense.  The Debtors reserve the right to seek such protections pursuant to Federal Rule of Civil Procedure 26(c)(1).

14.    The Debtors object to all Instructions, Definitions, and Requests to the extent that they contain erroneous factual allegations or conclusions.  By responding to these Requests, the Debtors do not admit the truth of any such allegations or conclusions.

15.    The Debtors object to the Instructions to the extent that they place unduly burdensome and costly electronic file formatting requirements on the Debtors' production efforts.  All documents and ESI produced by the Debtors will be produced in accordance with the Paragraph 10 of and Exhibit 1 to the Amended Scheduling Order.

16.    The Debtors respond to each Request based on their present knowledge.  The Debtors reserve the right to make any use of and/or introduce in any hearing or at trial, documents or information not known to exist at the time of production, including, but not limited to, documents obtained in the course of discovery in these chapter 11 cases.

17.     To the extent the Debtors assert a specific objection to a particular Request, the Debtors do not thereby waive these General Objections.  To the extent that the Debtors object to a particular Request but proceed to respond to said Request in whole or in part, the Debtors do not thereby waive any objection to that Request.

At the appropriate time, the Debtors may supplement these General Objections and the Debtors expressly reserve their right to do so.

Washington, DC
Dated:   December 4, 2015

*/s/ Jonathan F. Ganter*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:       (302) 651-7700
Facsimile:       (302) 651-7701
Email:            collins@rlf.com
                  defranceschi@rlf.com
                  madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:            edward.sassower@kirkland.com
                  stephen.hessler@kirkland.com
                  brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:            james.sprayregen@kirkland.com
                  marc.kieselstein@kirkland.com

chad.husnick@kirkland.com
steven.serajeddini@kirkland.com

-and-

Jonathan F. Ganter (admitted *pro hac vice*)
655 15th St. NW
Washington, DC 20005
Telephone:        (202) 879-5000
Facsimile:        (202) 879-5200
Email:            jonathan.ganter@kirkland.com
*Co-Counsel to the Debtors and Debtors in Possession*

**Exhibit N**

Dec. 16, 2015 Hearing Transcript

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3

4   In re:                    :

                              :      Chapter 11

5   ENERGY FUTURE HOLDINGS    :

    CORP.,  et al.,           :      Case No. 14-10979(CSS)

6                             :

            Debtors.          :      (Jointly Administered)

7   _____:

8

9

10                           United States Bankruptcy Court

11                           824 North Market Street

12                           Wilmington, Delaware

13                           December 16, 2015

14                           9:43 AM

15

16

17

18

19

20

21   B E F O R E :

22   HON CHRISTOPHER S. SONTCHI

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO OPERATOR:  LESLIE MURIN

1    HEARING re Status Update: Executory Contract and Cure

2    Dispute Issues

3

4    HEARING re Stewart Claims Objections

5

6    HEARING re Debtors' Fourteenth Omnibus (Substantive)

7    Objection to Certain No Liability Claims.

8

9    HEARING re Debtors' Thirty-Third Omnibus (Substantive)

10    Objection to Substantive Duplicate and No Liability Claims

11

12    HEARING re: Motion for Application of Federal Rule of

13    Bankruptcy Procedure 7023 and to Certify A Class Pursuant to

14    Federal Rule of Civil Procedure 23.

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

1   A P P E A R A N C E S :

2

3   MORRISON & FOERSTER

4        Attorney for the TCEH Committee

5

6   BY:  TODD M. GOREN

7

8   MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

9        Attorney for TCEH Debtors

10

11  BY:  DAVID P. PRIMACK

12

13  PACHULSKI STANG ZIEHL & JONES

14       Attorney for 2nd Lien Indenture Trustee

15

16  BY:  JOSEPH M. MULVIHILL

17

18  NIXON PEABODY

19       Attorney for the American Stock Transfer & Trust

20       Company, as EFH Indenture Trustee

21

22  BY:  RICHARD C. PEDONE

23

24

25

Page 4

1    KIRKLAND & ELLIS

2         Attorney for the Debtors

3

4    BY:  EMILY E. GEIER

5         BRENTON ROGERS

6         APARNA YENAMANDRA

7         JONATHAN GENTRY

8         CHAD J. HUSNICK

9

10   PAUL, WEISS, RIFKIND, WHARTON & GARRISON

11        Attorney for Ad Hoc Committee of TCEH First Lien

12        Creditors

13

14   BY:  JACOB A. ADLERSTEIN

15

16   YOUNG CONAWAY STARGATT & TAYLOR, LLP

17        Attorney for Ad Hoc Committee of TCEH First Lien

18        Creditors

19

20   BY:  PAULINE K. MORGAN

21

22   HOGAN MCDANIEL

23        Attorney for Punitive Class Claimants

24

25   BY:  DANIEL K. HOGAN

Page 5

1   SULLIVAN & CROMWELL LLP

2        Attorney E-side Committee

3

4   BY:  ALEXA J. KRANZLEY

5

6   MONTGOMERY MCCRACKER WALKER & RHOADS, LLP

7        Attorney E-side Committee

8

9   BY:  MARK A. FINK

10

11  POTTER ANDERSON CORROON LLP

12       Attorney for Deutsche Bank New York

13

14  BY:  R. STEPHEN MCNEILL

15

16  SHEARMAN & STERLING LLP

17       Attorney for Deutsche Bank

18

19  BY:  (Indiscernible)

20

21  MORRIS JAMES LLP

22       Attorney for Law Debenture of New York,

23       Indenture Trustee

24

25  BY:  STEPHEN MILLER

Page 6

1   RICHARDS LAYTON & FINGER

2        Attorney for the Debtors

3

4   BY:  DANIEL J. DEFRANCESCHI

5

6   DRINKER BIDDLE & REATH LLP

7        Attorney for Citibank, NA TCEH DIP Agent

8

9   BY:  HOWARD A. COHEN

10

11  POLSINELLI

12       Attorney for TCEH Creditor's Committee

13

14  BY:  JUSTIN K. EDELSON

15

16  VENABLE

17       Attorney for PIMCO

18

19  BY:  DANIEL O'BRIEN

20

21  BIELLI & KLAUDER, LLC

22       Attorney for EFH Corp.

23

24  BY:  DAVID KLAUDER

25

Page 7

1    WHITE & CASE LLP

2         Attorney for Investor Consortium

3

4    BY:  CHRIS SHORE

5

6    GELLERT SCALIE BUSENKELL & BROWN

7         Attorney for Mr. Stewart

8

9    BY:  GARY F. SEITZ (TELEPHONICALLY)

10

11   MONTEMAYOR & MONTEMAYOR

12        Attorney for Mr. Stewart

13

14   BY:  CHARLES MONTEMAYOR

15

16   ALSO PRESENT TELEPHONICALLY:

17   SCOTT L. ALBERINO

18   ARLENE R. ALVES

19   ASHLEY F. BARTRAM

20   PEG A. BRICKLEY

21   MARK A. CODY

22   KENT COLLIER

23   MICHAEL L. DAVITT

24   STACY DORÉ

25   CATHERINE EISENHUT

1    BENJAMIN D. FEDER

2    BARRY FELDER

3    SETH GOLDMAN

4    CHRISTOPHER HAHM

5    MARK F. HEBBELN

6    NATASHA HWANGPO

7    HAROLD KAPLAN

8    CHARLES KOSTER

9    STUART KOVENSKY

10    DANIEL A. LOWENTHAL

11    ROBERT K. MALONE

12    JONATHAN D. MARSHALL

13    BRIAN P. MORGAN

14    HAL F. MORRIS

15    MEREDITH PFISTER

16    ABID QURESHI

17    RACHAEL RINGER

18    MARC B. ROITMAN

19    ERIK SCHNEIDER

20    KENNETH STEWART

21    AMER TIWANA

22    MICHAEL TURKEL

23    MATTHEW UNDERWOOD

24    KEVIN M. VAN DAM

25    APARNA YENAMANDRA

1   FOTEINI TELONI

2

3

4

5

6                    P R O C E E D I N G S

7          CLERK:  All rise.

8          THE COURT:  Please be seated.  Excuse me.  Good

9   morning.

10          MR. HUSNICK:  Good morning, Your Honor.  Chad

11   Husnick from Kirkland & Ellis LLP appearing on behalf of the

12   Debtors.  Your Honor, I we have a fairly short agenda this

13   morning but a couple of things we would like to knock out.

14          Your Honor, first on the agenda is a -- relates to

15   an order that Your Honor has already entered and that is on

16   the 2016 insider compensation motion.  We did agree with the

17   TCEH first lien ad hoc group that we would read an agreed

18   statement into the record.  So if I may, I'm going to read

19   that statement into the record.

20          THE COURT:  Yes.

21          MR. HUSNICK:  Throughout this case, the various

22   boards have worked to operate the business and maximize

23   value while also making efforts to preserve optionality for

24   the future owners.  With the entry of the orders approving

25   the PSA, that is the Plan Support Agreement, the settlement

1  and the plan, we now know that the TCEH first liens will be

2  the future owners of TCEH regardless of whether the current

3  plan goes effective or we need to resort to an alternative

4  plan.

5         As a result, the TCEH first liens have requested

6  increased access to management at the operating levels of

7  TCEH during the gap period between confirmation and the

8  effective date so that the TCEH first liens can hit the

9  ground running once TCEH emerges from bankruptcy.

10        In response to that request, the TCEH board has

11  agreed to give the TCEH first liens increased access to

12  management at the operating levels in the business and has

13  committed and looked forward to working with the TCEH first

14  liens to positively position the business and its cost

15  structure to adapt to changing market conditions and its

16  emergence from restructuring.

17        The Debtors stipulate that nothing in the proposed

18  order that Your Honor entered yesterday will prevent the new

19  board of reorganized TCEH after emergence from bankruptcy

20  from enacting whatever compensation plans they deem

21  appropriate to meet their new business plans subject to

22  limitations in the plan, the settlement and confirmation

23  orders and the plan support agreement regarding current

24  compensation plans and employment agreements.  That

25  concludes the statement.

1          THE COURT:  Okay.

2          MR. HUSNICK:  Your Honor --

3          THE COURT:  Hang on, Mr. Husnick.

4          MR. HUSNICK:  Pardon me?

5          THE COURT:  Hang on.  Someone wants to be heard.

6          MR. HUSNICK:  Sure.

7          MR. ADLERSTEIN:  Thank you, Your Honor.  Jacob

8   Adlerstein, Paul Weiss Rifkind Wharton & Garrison on behalf

9   of the ad hoc committee of TCEH first lien creditors.  Just

10  following up on Mr. Husnick's remarks, I want to thank the

11  Debtors, their professionals and their management for

12  agreeing to work with our clients to finally reposition the

13  TCEH business during this trying time.

14          We very much look forward to working together with

15  the Debtors on this critical endeavor.  As you've heard many

16  times before, the TCEH Debtors are facing significant

17  headwinds which have had a substantial impact on their

18  financial performance.  Just by way of example, the TCEH

19  first lien debt has traded down by nearly $10 billion since

20  the petition date and natural gas prices are currently under

21  $3 dollars.

22          As the future owners of reorganized TCEH, the ad

23  hoc committee of TCEH first lien creditors is very focused

24  on acting swiftly and aggressively to meet these challenges.

25  We look forward to working correctively with the company to

1    identify and implement changes prior to emergence that will

2    maximize the company's value and we appreciate very much the

3    company's commitment to work with us in this regard.  Thank

4    you.

5              THE COURT:  Okay.  Thank you.

6              MR. HUSNICK:  Thank you, Your Honor.  So this

7    takes us to the agenda.  Just as a quick preview, Your

8    Honor, if it's okay with you, we had proposed to proceed in

9    the following way.  First we would hear a short up status

10   update for Your Honor on the executory contract and cure

11   dispute issues that we identified on the agenda.  The bulk

12   of it's been adjourned but we wanted to give Your Honor an

13   update of what we're doing to try to narrow those objections

14   because there's a lot on the docket related to that -- those

15   issues.

16             Then we'll turn to the Stewart claims objections

17   and then last we will have the motion of the unmanifested

18   asbestos plaintiffs for a -- to appoint a class

19   representative and authorize the filing of a class proof of

20   claim.  If that order works with Your Honor, that's what we

21   would proceed with.

22             THE COURT:  That's fine.

23             MR. HUSNICK:  Okay.  Thank you, Your Honor.  And I

24   turn the podium over to Ms. Emily Geier from Kirkland.

25             THE COURT:  Thank you.  Good morning, Ms. Geier.

Page 13

1          MS. GEIER:  Good morning, Your Honor.  Emily Geier

2     from Kirkland & Ellis appearing on behalf of the Debtors.

3     I'm here this morning like probably Chad Husnick said to

4     give a brief update on the contract assumption and rejection

5     process and where it stands today.

6          Cumulatively through the process, the Debtors have

7     assumed nearly 7000 contracts and rejected approximately

8     100.  The Debtors have paid or plan to pay $55 million in

9     care costs but the overall effort has generated about $400

10    million in savings to the Debtors.  Specifically through the

11    plan supplement, the Debtors assumed approximately 2800

12    contracts and rejected approximately 75.  The Debtors will

13    pay the $44 million in cure costs related to those plan

14    contracts on the plan effective date.

15         The Debtors received 11 formal objections or

16    reservations of rights and approximately 45 informal

17    inquiries from creditors.  As reflected in Exhibit Z to the

18    amended agenda, the Debtors have resolved the vast majority

19    of those objections.  As of today, only four contract

20    objections remain outstanding and as Your Honor is aware,

21    the confirmation order provided that any outstanding

22    contract objections would be heard at today's hearing.

23         The Debtors and the four objecting parties have

24    agreed to further adjourn those objections to the January

25    Omnibus hearing.  We don't believe that there's any

Page 14

1    substantive disagreement on the issues.  It's just

2    additional time to reconcile our records and the party's

3    records and confirm the cure amounts.  The Debtors expect to

4    have those objections resolved before the January 14th

5    hearing.

6            Additionally, two contracts remain on --

7            THE COURT:  I'm sorry.  I'm just interrupting you

8    briefly so that it's being continued to January 14th?

9            MS. GEIER:  Exactly, the January Fourteenth

10   Omnibus hearing.

11           THE COURT:  Just give me a moment.

12           MS. GEIER:  And I can give you the names of those

13   objections.

14           THE COURT:  That's okay.  I just want to double

15   check that everything's correct with regard to our records

16   on that being a hearing date.  Okay.  That's fine.  That's

17   listed as starting at 9:00, by the way.  We won't start at

18   9:00.  We'll start that hearing at 10:00.

19           MS. GEIER:  That sounds like good news.

20           THE COURT:  Yeah.  I don't know why it's on at

21   9:00.

22           MS. GEIER:  Okay.  And additionally two contracts

23   remain on the Debtor's amended conditional assumption list.

24   We removed the majority of those contracts.  They've either

25   been assumed or one was moved to the reject list.  The

Page 15

1    parties and the Debtors are finalizing the terms of those

2    two amended agreements.

3              We've reached an agreement in principle on each of

4    them and hope to enter into those amended agreements before

5    the January 14th hearing.

6              So updates for those two conditional assumptions

7    and the resolution of the remaining cure objections will be

8    reflected in an amended plan supplement that we'll file

9    before that hearing or other filings as necessary with the

10   Court.  Your Honor, I'm happy to answer any questions you

11   may have, otherwise...

12             THE COURT:  No, I have no questions, thank you.

13             MS. GEIER:  Great.  Otherwise I will yield the

14   podium to my colleague, Aparna Yenamandra, to address the

15   next item on the agenda.

16             THE COURT:  Okay.

17             MS. GEIER:  Thank you.

18             MS. YENAMANDRA:  Good morning, Your Honor.  Aparna

19   Yenamandra from Kirkland & Ellis on behalf of the Debtors.

20   Your Honor, the next item on today's agenda is the Debtor's

21   Fourteenth Omnibus objection to claims as it relates to

22   proof of claim number 5739 for an unliquidated amount and

23   10003 for $1.8 billion and the Debtor's Thirty-Third Omnibus

24   objection to claims as it relates to proof of claim number

25   10982 for an unliquidated amount.

1          Your Honor, we understand that on the original

2     agenda that was filed for today's hearing, we listed the

3     first two proofs of claim as they relate to the Fourteenth

4     Omnibus objection but inadvertently failed to list the third

5     proof of claim as it relates to the Thirty-Third Omnibus

6     objection.  This was remedied on the amended agenda and just

7     so Your Honor's aware, Kirkland sent an email to the

8     claimant and her representatives and agents, which I'll

9     provide more color on in a moment, on Monday morning before

10     the first agenda was filed indicating that the claims for

11     the Fourteenth and Thirty-Third Omnibus objection would be

12     up today pending further word from them, which we did not

13     receive.  And additionally, the one claim on the Thirty-

14     Third objection relates to the same basis for liability as

15     the first two objections.  So we'd like to go forward on all

16     three.

17          THE COURT:  That's fine.

18          MS. YENAMANDRA:  All three of these proofs of

19     claim were filed by Ms. Kukja Stewart who received notice of

20     Your Honor's order establishing a customer claims bar date

21     in her capacity as a former customer at TSU Energy.  Your

22     Honor may have seen that Ms. Stewart's counsel of record Mr.

23     Seitz withdrew his notice of appearance recently, which I

24     can provide more color on.

25          This means that Ms. Stewart is pro se.  We do not

1    believe that she is here today.  We understand that her son,

2    Mr. Kenneth Stewart and his purported agent, Mr. Marco

3    Montemayor, are here today.  Your Honor, neither Mr. Stewart

4    or Mr. Marco Montemayor are attorneys.  Mr. Stewart has

5    never filed a proof of claim and we're a bit unclear on the

6    capacity in which they speak today but we understand they're

7    here and we're happy to give them their time subject to Your

8    Honor's allowance.

9            THE COURT:  Mm hmm.

10            MS. YENAMANDRA:  So what I would propose, Your

11   Honor, just to bring some order to this presentation, is for

12   the Debtors to first kind of provide a brief overview of the

13   claims, including the items that Mr. Stewart and Mr.

14   Montemayor filed on the docket and then, second, the process

15   the Debtors undertook before and after filing the claims

16   objection as information floated to, for lack of a better

17   term, quadruple check that.  They had no relationship to the

18   allegations or liability based on the proofs of claim.

19            At that point, the Debtors would yield the podium

20   to Mr. Stewart and/or Mr. Montemayor if they so desire and

21   we'll (indiscernible) with rebuttal if needed.

22            THE COURT:  All right.

23            MS. YENAMANDRA:  Your Honor, the Debtors filed the

24   Fourteenth Omnibus claims objection on April 2nd, 2015,

25   years are important in this case, at Docket number 4050 and

1    the Thirty-Third Omnibus claims objection on October 16th,

2    2015 at Docket number 6499.

3         Each claims objection was supported by a

4    declaration from Mr. Steven Kotarba.  Mr. Kotarba is in the

5    Courtroom today and serves as a managing director at Alvarez

6    & Marsal, the Debtor's restructuring advisor.  His

7    declarations were docketed at Docket numbers 4051 and 6501

8    respectively.  I have copies of Mr. Kotarba's declaration if

9    Your Honor would like to see them.

10        THE COURT:  No, I have them

11        MS. YENAMANDRA:  Additionally, the Debtors

12   conducted additional searches of their books and records

13   based on information received from Ms. Stewart, Mr. Stewart,

14   Mr. Marco Montemayor and Mr. Seitz prior to his withdrawal

15   as counsel.  If called to testify about these additional

16   searches, Mr. Kotarba, who is a senior member of the

17   Debtor's claims evaluation team would testify that, first,

18   Ms. Stewart's discovery request included specific references

19   to persons, entities and over 50 property records, almost

20   all of which covered the same parcel of land, which is 1800

21   Hunter Ferrell Road.

22        As a baseline matter, the only identifiable land

23   parcel in Ms. Stewart's discovery request, again, 1800

24   Hunter Ferrell Road, is in Irving, Texas.  Now, although TXU

25   leases office space in Irving, the land in question is 10

Page 19

1    miles from the company's closest operations.  The property's

2    in the streets of Hunter Ferrell Road and TXU's operations

3    do not overlap or intersect at any point.

4          The Debtor's investigation led by the Debtor's

5    claims evaluation team related to the discovery request

6    built upon the earlier investigation and involved, among

7    other things, a review of multiple internal software systems

8    including the mining and counting system maintained by

9    Luminant Mining's Real Estate Group through which it is

10   possible to review all the co-leases to which any company

11   entity is a party as well as the company's residential

12   customer payment system which, again, Ms. Stewart received

13   notice of the party in her capacity as a former customer, so

14   she would have been included in that search.

15         Second, a review of hardcopy books and records

16   maintained by the Debtor's land department; third, a review

17   of Dallas County property records; and, finally, general

18   internet searches.

19         These results found no documents indicating that

20   EFH has any ownership or leasehold interest in the property

21   described in Ms. Stewart's discovery request, no indication

22   that EFH has any operations that touch the property, no

23   documents indicating any relationship between Ms. Stewart

24   and EFH and no other documents that were responsive to the

25   request in any way.

1          Your Honor, at this time, I'd like to move both

2    Mr. Kotarba's written declarations and his proffered

3    testimony into evidence.

4          THE COURT:  Any objections?  It's admitted.

5          MS. YENAMANDRA:  Thank you, Your Honor.

6          MR. STEWART:  I object.

7          THE COURT:  Sir, if you're going to participate in

8    the hearing, it would be helpful if you were at counsel

9    table, not in the back of the Courtroom.

10         MR. STEWART:  Well, I have a counsel with me.

11         THE COURT:  Well, then why don't you approach?

12         MS. YENAMANDRA:  Again, Your Honor, we're not

13   aware of Ms. Stewart having counsel, but we will yield the

14   podium as necessary.

15         MR. STEWART:  This is Charles -- I need to

16   clarify.  Marco Montemayor is not here today.  My counsel,

17   Charles Montemayor from Dallas is here today.

18         THE COURT:  All right.  And you're Mr. Stewart,

19   for the record.  Yes, sir.

20         MR. MONTEMAYOR:  With the Court's permission, Your

21   Honor, I'm here, Your Honor, because Mr. Stewart has asked

22   me to try to comply some part with the order of the Court in

23   view of the fact that counsel that was in this case has

24   withdrawn as of this week.  And we don't know whether or not

25   he has submitted all of the information that we had sent to

Page 21

1   him to submit to the Court.  So I am new.  I haven't had an

2   opportunity to meet counsel on the opposing counsel and I

3   haven't had a chance to talk to Mr. Seitz who was on this

4   case.

5        And I have information primarily to the fact that

6   Mr. Stewart here wants to submit information to substantiate

7   the fact that the properties that have been testified as not

8   sufficient enough to prove the proof of claim that he has

9   submitted to the Court.  And that's the main thing that Mr.

10  Stewart now asks the Court for that opportunity, Your Honor.

11       THE COURT:  Okay.  Well, I'm certainly going to

12  allow Mr. Stewart to be heard either individually or through

13  you, but to put some focus on what we actually are dealing

14  with presently, the question specifically at this point was,

15  was there an objection to the admission of the declaration

16  of evidence and the proffer of evidence that was just made

17  to the Court and was there any objection to its admission

18  into evidence.

19       MR. MONTEMAYOR:  Yes, Your Honor.

20       THE COURT:  You certainly can cross examine the

21  witness.  That's not an issue.  Obviously you have a right

22  to cross examination, but we're dealing with the direct

23  evidence.

24       MR. MONTEMAYOR:  Yes.  Mr. Stewart has invited me

25  to say that he's objected to the presentation regarding

1    that.

2              THE COURT:  And do you know the basis?

3              MR. MONTEMAYOR:  He would have to explain it, Your

4    Honor.  Like I said, I haven't had an opportunity to talk to

5    Gary Seitz regarding the attorney in this case who just

6    withdrew the case.

7              THE COURT:  All right.  Mr. Stewart, what's your

8    evidentiary basis for objecting to the evidence?

9              MR. STEWART:  They haven't done their due

10   diligence.  I have the documentations that I actually

11   submitted in the proof claim at the very beginning and I

12   have a list of easements that go across our properties.

13             THE COURT:  All right.  Well, that's something

14   that you can address in cross examination of the witness.

15   That doesn't go to whether the actual evidence submitted is

16   admissible and obviously whatever you do in cross would --

17   might affect the weight or that the Court would give to the

18   evidence that's already been admitted, so I'll overrule the

19   objection to the admission of the evidence, so the

20   declarations and proffer are admitted into evidence.

21             I'd like to -- before I open up, Mr. Kotarba --

22   fair enough -- to cross examination, I'd like the Debtors to

23   finish their presentation.  So if you'd have a seat, sir,

24   and we'd yield the podium back to the Debtor's counsel and

25   she can finish her presentation and then if you wish to

Page 23

1    cross examine the witness I'll make him available.

2              MR. MONTEMAYOR:  Thank you, Your Honor.

3              THE COURT:  You're welcome.

4              MS. YENAMANDRA:  Thank you, Your Honor.  With the

5    inclusion of Mr. Kotarba's proffered testimony and his

6    declarations, we've made the bulk of our direct case.  But

7    it's probably helpful to provide some context before we put

8    Mr. Kotarba on the stand.

9              THE COURT:  Okay.

10             MS. YENAMANDRA:  So starting from the beginning,

11   the -- Ms. Stewart filed three proofs of claim.  In some

12   instances, Mr. Stewart signed the proof of claim but in all

13   instances Ms. Stewart was listed as the claimant.  Again,

14   the first one was filed before the bar date for an

15   unliquidated amount.  The second one was filed after the bar

16   date purporting to amend the first proof of claim and was

17   for $1.8 billion.

18             The first proof of claim is the one that included

19   a cover note from Mr. Charles Montemayor, a Texas counsel,

20   and I'll note that that proof of claim was filed October

21   20th, 2014, so these are hardly new allegations that we're

22   discussing today.

23             Both proofs of claim were based on the same set of

24   alleged facts.  First, that the Debtors owned or controlled

25   certain land parcels; second, that certain mining activities

Page 24

1    occurred on the land parcels which gave rise to mineral

2    rights that the Stewarts assert an interest in; and third,

3    that the Debtors, again, own or control some sort of

4    transmission mines or pipelines that Ms. Stewart asserts she

5    owns or asserts that she otherwise has an interest in.

6              Before filing the Fourteenth Omnibus claims

7    objection which relates to the first two of the three

8    claims, the Debtors conducted a search of their books and

9    records and found no connection between either the land

10   reference and the proofs of claim, the alleged operations on

11   the land or any connection to the transmission lines or

12   pipelines.

13             The Debtors separate and apart from their

14   investigation of their books and records also reviewed the

15   materials appended to their proofs of claim in great detail

16   and, again, found nothing to suggest the Debtors were

17   connected to the land, the operations, the transmission

18   lines or the pipelines.

19             To give Your Honor a flavor of the appended

20   materials, which we have a copy of if you'd like to see

21   them, they consisted of title insurance certificates,

22   descriptions of various properties, the zoning reports and a

23   timeline of events related to the sale and purchase of the

24   land parcels.

25             Nothing in the timeline evidences any kind of

Page 25

1    relationship between the land and the Debtors.  Nothing in

2    the land descriptions or the title certificates demonstrate

3    that the Debtors have ever had any kind of relationship to

4    the properties or the operations at issue.

5              Consequently, based on both their independent

6    review of their books and records and the materials

7    submitted by Ms. Stewart with her proofs of claim, the

8    Debtors filed the Fourteenth Omnibus objection objecting to

9    proofs of claim 5739 and 10003 on the basis of no liability.

10             Following that filing, a few things happened.  Ms.

11   Stewart retained the law firm of Geller Scali Busenkell &

12   Brown LLC to represent her interests.  Mr. Gary Seitz of

13   that firm registered a notice of appearance with this Court

14   in connection with that representation on April 30th, 2015

15   at Docket number 4361.

16             Second, Ms. Stewart filed a third proof of claim.

17   Mr. Stewart signed it but, again, the claimant was listed

18   as. Ms. Stewart alleging liability on the same basis as the

19   first two proofs of claim and adding new unfounded

20   allegations regarding fraud on certain of the Debtor's

21   prepetition equity holders.

22             Mr. Seitz, the counsel of record, did not sign the

23   proof of claim and neither he nor his firm appear anywhere

24   on the proof of claim.

25             Third, Mr. Stewart and what I'll refer to as his

Page 26

1    agent, Mr. Marco Montemayor, filed a number of papers on the

2    docket at Docket number 5384, 5716, 6101 and 6934 and

3    submitted various materials to Kirkland.

4          THE COURT:  Can I interrupt for a moment.  Can you

5    give me the docket number again?  I'm sorry, for the notice

6    of appearance.

7          MS. YENAMANDRA:  Yes, 4361 was the original notice

8    of appearance and the withdrawal was at Docket number 7343.

9          THE COURT:  Okay.  I'd like to look at those, just

10   give me a minute, 7343?

11         MS. YENAMANDRA:  Yep.  Your Honor, I can provide

12   some context around the filing of the -- the timing of the

13   filing of the withdrawal.

14         THE COURT:  All right.  Just, before you get that,

15   I just wanted to look at it, so just give me a moment.

16   That's what I thought it was.  Is Mr. Seitz present or

17   anyone from Geller present in court?  All right.  I hear

18   nothing.  Give me just a moment.  All right.  Sorry to

19   interrupt.  You can proceed.

20         MS. YENAMANDRA:  Thank you, Your Honor.  So as I

21   noted, following the filing of the Fourteenth Omnibus

22   objection, Mr. Stewart and Mr. Marco Montemayor filed a

23   number of materials on the docket, submitted various

24   materials to Kirkland, again, kind of continuing on the

25   theme that we saw with the first two proofs of claim.

Page 27

1          These materials continued to reference actions

2    taken by entities with no relationship to the Debtors, to

3    name a few AT&T, Verizon, Allstate Insurance, Edison

4    International, Gifco Properties and (indiscernible) as well

5    as claims related to land parcels with no relationship to

6    the Debtors, again, 1800 Hunter Ferrell Road, which is one

7    of the few identifiable land parcels mentioned, which again

8    sits roughly 10 miles from the closest company operations.

9          These submissions of materials that make various

10   allegations but do not show any liability on the part of the

11   Debtors continued up until this morning when Mr. Montemayor

12   filed a statement of facts identifying -- it's unclear

13   whether it's Ms. Stewart or Mr. Stewart as a major interest

14   holder in TXU and Edison International as it relates to the

15   solvency of Oncor.  This is at Docket 7369.

16         Your Honor, candidly, we don't know the basis of

17   these allegations.  We'll let Mr. Stewart speak for himself

18   but, again, it seems to ride the theme of the first two

19   proofs of claim where there's nothing showing any liability

20   on the part of the Debtors.

21         To date, neither Ms. Stewart, who is the only

22   actual claimant here who has filed a proof of claim, nor any

23   of her representatives or agents have actually filed a

24   response to the Debtor's claims objections and consequently

25   the Debtors did not file a formal reply.

Page 28

1          Instead, based on the materials we received,

2   informal communications between the Stewarts, their agents,

3   their representatives and the Debtors and cognoscente of the

4   Court's time and resources, the Debtors agree to adjourn the

5   claim's objections to, one, hopefully develop a consensual

6   resolution and, two, again, quadruple check what we knew to

7   be true from our first review of our books and records, that

8   we had no relationship to any of the allegations in the

9   proofs of claim.

10          Before I quickly touch upon the quadruple check

11  that we did, we wanted to make clear that Mr. Ken Stewart

12  has not filed any proofs of claim.  It has not been made

13  clear to the Debtors whether he believes he has any claims

14  separate and apart from the ones filed by his mother.

15          If he does, those claims have never been properly

16  asserted or filed with the Debtors or filed on the claims

17  register, excuse me, and we would seek to expunge those

18  claims on the same basis as the claims asserted by Ms.

19  Stewart.

20          So very quickly to run through what the Debtors

21  did to review the proofs of claim and appended materials, we

22  of course rechecked our books and records, confirmed

23  independently there was no relationship to the land, the

24  mining operations, the transmission lines or the pipelines.

25  Second, members of the Debtor's legal team both in-house and

1    at Kirkland engaged in telephonic and in-person meetings

2    with Mr. Marco Montemayor, who professed to be the agent for

3    Mr. Stewart, to understand the asserted claims.  These did

4    not result in the production of any additional material from

5    any one purporting to act on behalf of the Stewarts

6    evidencing a relationship between their claims and the

7    Debtors.

8            Third, and this will provide some context around

9    the withdrawal, Mr. Seitz served certain discovery requests

10   on the Debtors asking the Debtors to produce any documents

11   that relate to leases, easements or agreements between the

12   Debtors and the Stewarts or between the Debtors and the

13   parcels of land identified in the proofs of claim.

14           We did another search of our books and records and

15   found no relationship.  We did also kind of going above and

16   beyond the call of duty, did an online search for a sample

17   of the document request and our results fall into three

18   buckets.  Some of the references yielded no results at all.

19   Some of them referenced -- some of them yielded results but

20   showed no relationship to EFH.  For example, we found a

21   mortgage to Stewart and Susan (indiscernible) who we have no

22   reason to believe had any connection to Mr. Kenneth and Ms.

23   Kukja Stewart.  Another result was a deed grant from Ms.

24   Stewart to a company that we understand the Stewart family

25   formed several years ago.

1          And then finally many of the results showed no

2     relationship between the land and the Stewart family.  For

3     example, there is a 1986 deed from Las Colinas Corporation

4     to Woodrow and Co. and an assessment of non-payment of

5     homeowner fees from a Mr. Robert (Indiscernible), again,

6     basically nothing showing a relationship to the Debtors or

7     in some instances even to the claimant.

8          After providing these results to Mr. Seitz, Mr.

9     Seitz withdrew as counsel and that notice of appearance as I

10    mentioned is at Docket 7343.

11         So in sum, Your Honor, Ms. Stewart and to the

12    extent he asserts any of his own claims based on the same

13    allegations, Mr. Stewart, have not alleged facts sufficient

14    to support legal liability and we commit that these proofs

15    of claim are invalid on their face.

16         The Debtors have undertaken an exhaustive search

17    to confirm they have no relationship to the Stewarts, the

18    land parcels at issue, the mining operations, the

19    transmission lines, the pipelines or any of the mine and

20    lease agreements that are referenced in the proofs of claim

21    and for this reason, Your Honor, we would ask that you

22    expunge the claims.

23         At this time, we'll turn the podium over and

24    reserve for rebuttal as necessary, unless Your Honor has any

25    questions.

1    THE COURT:  I don't have any questions.  I want to

2 take a very short recess, though.

3  (Recess)

4    CLERK:  All rise.

5    THE COURT:  Please be seated.  All right, well, we

6 have a problem in that Mr. Seitz has purported to withdraw

7 without notice to the Court, without motion and without a

8 court order.  And under our local Rule 9010-2(b), if you

9 have a matter pending before the Court, which he does, and

10 you are not substituting an attorney admitted before the

11 bar, which he has not, your representation continues until

12 the Court says it doesn't.

13    I've tried to contact Mr. Seitz directly and got

14 his voicemail.  As far as I'm concerned, he's in contempt of

15 court by not being here at a noticed hearing and I'm not

16 willing to proceed right now without counsel for Mr. Stewart

17 who knows something about what's going on in this case,

18 since the one he brought obviously doesn't, before the Court

19 so we can have a substantive discussion of the merits with

20 proper representation of Mr. Stewart.

21    So we're going to continue for the minute or the

22 time being this matter until I can hopefully reach Mr. Seitz

23 or someone can reach Mr. Seitz and get him in court where he

24 belongs and we can have this matter addressed on the merits.

25 And we will take the bar date motion or, excuse me, the

Page 32

1    class group claim motion.

2            Don't anybody go anywhere.  We're going to address

3    this today one way or the other.  But hopefully we'll be

4    able to contact Mr. Seitz and get him here.  I know he's

5    generally not in the Delaware office.  He operates out of

6    Philadelphia, so I'm not sure exactly how this will work,

7    the nuts and bolts of it.

8            So Mr. Stewart, we're going to hold off.  All your

9    rights are reserved.  You'll get your opportunity to speak

10   hopefully through Mr. Seitz or at least I'll be able to

11   question Mr. Seitz about what exactly is going on and then

12   we'll figure out how to proceed.

13           So if you could have a seat back in the gallery

14   again, they will hold your matter for the time being and

15   we'll move on to the class proof of claim matter.

16           I think Mr. Hogan's here.  I see him in the

17   gallery.

18           MR. HUSNICK:  Your Honor, before we move on, Chad

19   Husnick from Kirkland & Ellis.  I had one counsel for the

20   EFH indentured trustee asked me -- they're in the Court

21   today and I believe they'd like to be excused.  There was an

22   order filed under certification of counsel last night.

23   Unless Your Honor had any questions and we didn't have a

24   formal presentation on that order.

25           THE COURT:  I thought we were going to -- I

1    thought doing that was going to avoid him having to travel

2    was the whole point you asked for permission to file the

3    CNO.

4                MR. HUSNICK:  That's correct, Your Honor.  So

5    unfortunately we -- because it wasn't entered we had him

6    down here.

7                THE COURT:  Right.

8                MR. HUSNICK:  But I want to just follow up and

9    make sure.

10               THE COURT:  All right.  I've signed that order, so

11   Mr. Pedone, you can get back on a plane.

12               MR. HUSNICK:  Thank you, Your Honor.

13               MR. PEDONE:  Thank you, Your Honor.

14               THE COURT:  You're welcome.  So let's take the

15   next matter.

16               MAN:  Your Honor, may I be excused?

17               THE COURT:  Yes, Mr. (indiscernible).

18               MAN:  Oh, thank you.  Happy holidays.

19               THE COURT:  You, too, sir.  I'm going to get you

20   to shave that beard off, Mr. (indiscernible).

21               MAN:  (Indiscernible).  Thank you.

22               THE COURT:  You're welcome.  Mr. Hogan?

23               MR. HOGAN:  Good morning, Your Honor.

24               THE COURT:  Good morning.

25               MR. HOGAN:  Daniel Hogan of Hogan McDaniel on

1  behalf of the punitive class claimants, Your Honor.  Your

2  Honor, this is our motion for application of federal rule of

3  bankruptcy procedure 7023 and to certify a class pursuant to

4  federal rule of civil procedure 23.

5          The class claimants, Mr. Joe Aribe, Michael

6  Cunningham and Michelle Zieglbaum are unmanifested

7  claimants.  We move pursuant to Section 105 of Title 11

8  together with Rules 9014 and 7023 afore ordered asking you

9  to exercise your discretion to apply 7023 to the class

10  claimants class proof of claim which was filed on behalf of

11  unmanifested asbestos claims.

12          Jeanne Mirer is the attorney of Mirer Mazzocchi

13  Schalet & Julien PCCL or PLLC.  She's the class

14  representative.  She has been admitted in this case pro hoc

15  vice, Your Honor.  Her affidavit was attached to the amended

16  motion and, Your Honor, preliminarily I would ask how the

17  Court wishes to proceed.

18          We have, of course, attached affidavits to our

19  application.  Those affidavits are largely uncontested by

20  the Debtors.  The Debtors in their response attached a

21  number of web searches.

22          But aside from that, in an affidavit from the

23  noticing agent, there isn't largely a large amount of

24  evidence in this matter.  And so I don't know if the Court

25  wants to proceed to argue the merits of the motion or if you

1   would prefer to have schedule some sort of evidentiary

2   hearing and that preliminarily I wanted to ask the Court how

3   it wanted to proceed.

4           THE COURT:  Well, what's the Debtor's position on

5   that?

6           MR. ROGERS:  Your Honor, the affidavits are

7   obviously hearsay.  It is true that for purposes of this

8   hearing there's nothing in the affidavits that we believe

9   has any impact on the Court's determination of the motion.

10  Nevertheless, we don't agree that the affidavits are

11  admissible evidence and we don't think they should come into

12  evidence.

13          I don't think that there is an evidentiary issue

14  to be decided in the case, so I don't think it makes any

15  sense to have an evidentiary hearing.  But, you know, we do

16  not agree that the affidavits should come into evidence at

17  this time.

18          THE COURT:  All right.  Mr. Shore?

19          MR. SHORE:  Your Honor, Chris Shore from White &

20  Case on behalf of the investor consortium.

21          THE COURT:  You're fine.

22          MR. SHORE:  We filed a joinder.  We have no

23  objection to the declarations going into evidence provided

24  that -- and we could waive cross examination -- provided

25  that counsel stipulates on the record that each of the

1   affiants receive actual notice of the bar date order and

2   each of the affiants has filed a proof of claim in the

3   action.

4          THE COURT:  Mr. Hogan?

5          MR. HOGAN:  Your Honor, I know from firsthand

6   accounts that they in fact did not receive actual notice of

7   the bar date.  They became aware of the bar date but they

8   didn't become aware of the bar date by virtue of the notice

9   provided by the Debtor through their notice process pursuant

10  to the bar date order.  And so I can't attest to that issue.

11         THE COURT:  All right.  Give me a second.

12         MR. HOGAN:  Certainly.

13         THE COURT:  I assume your affiants aren't present

14  in court.

15         MR. HOGAN:  That's correct, Your Honor.  It wasn't

16  exactly clear, Your Honor, whether this was going to be an

17  argument on the motion or whether it would be for the

18  purposes of scheduling an evidentiary hearing since we do

19  have the preponderance of the evidence standard that we need

20  to meet with regard to our application and I presume that

21  there would be some objection to the entry of those

22  affidavits as evidence.

23         THE COURT:  I don't think that it's necessary at

24  least at this point to have an evidentiary hearing and I

25  don't think it's necessary to admit the affidavits.  I'd

1    like to hear discussion of the law and based on the record

2    that exists and depending on how that goes I'll determine

3    whether to rule on the merits or whether to put this over

4    for an evidentiary hearing.

5              MR. HOGAN:  That's fine, Your Honor.  Thank you.

6              THE COURT:  You're welcome.

7              MR. HOGAN:  Your Honor, as you're well aware, on

8    July 15th the Court set a bar date of Monday, December 14th,

9    2015 for claimants having unmanifested claims to file a

10   proof of claim.

11             Generally, Your Honor, you followed the case law

12   in In Re: Grossman from the Third Circuit and directed that

13   such persons who were employees and contractors who

14   encountered asbestos in the asbestos Debtors' facilities or

15   who were exposed by take-home exposure at a household to

16   file what was characterized as an unmanifested asbestos

17   claim.  In order to have it discharged in this case.  You

18   relied, of course, on the Jeld-Wen Van Brunt matter.

19             Accordingly, you set two proof of claim, discrete

20   proof of claims, one for manifested and one for

21   unmanifested.  You characterized the notice scheme such that

22   everyone presumably would be noticed.  The class claimants

23   are persons who are, in fact, they hold unmanifested claims

24   and who as I've said earlier did not receive notice of the

25   bar date.

Page 38

1        This motion they filed on behalf of themselves and

2   others similarly situated individuals and in order to

3   preserve the rights as well as the right of their fellow

4   workers and loved ones who feared that they may be

5   unwittingly have their rights disposed of by the bar date.

6        I attached, as I indicated earlier, the affidavits

7   of Mr. Joe Aribe, an insulator with the Heat and Frost

8   Insulator and Allied Workers of Local 222 in Deer Park,

9   Texas who for over 20 years was employed by Vasco.  His

10  affidavit is replete with indications that he was exposed to

11  asbestos, asbestos containing dust from work as a tradesman

12  at the plant.

13       He was also exposed, Your Honor, during the yearly

14  shutdowns which contained apparently significant exposures

15  when carpenters and painters would sand down asbestos

16  containing joint compound and the asbestos would apparently

17  rain down on him.  They were provided, interestingly, no

18  uniforms, Your Honor, and therefore, had to take home their

19  clothes.  They would take these clothes home and presumably

20  other individuals in the family would then be exposed to the

21  asbestos by the take-home exposure.

22       Importantly, Your Honor, he's also in a position

23  as the director of field educational research at the AFL CIO

24  and would -- you would have expected that he would have

25  heard of the bar date.  He did not.

Page 39

1          So despite his extensive exposure, he is not yet

2    manifested, so he is perfectly characterized as an

3    unmanifested claimant.

4          Mr. Cunningham also was not suffering from any

5    exposure to asbestos.  However, he was an insulator as well

6    in the same union as Mr. Aribe working specifically at the

7    WA Parish Power Plant.

8          Mr. Cunningham, likewise, did not receive any

9    notice from the Debtors were there notice program of the EFH

10   bar date, even though he's active in the union and even

11   though you would expect him to have received notice through

12   those channels.

13         Mr. Cunningham represents a class of people who

14   have been exposed in an asbestos plant owned by the Debtors

15   and who has not yet manifested and asbestos-related disease.

16         Michele Ziegelbaum is a family member of a former

17   contractor who performed work at the Beaver Generating

18   Station in Clatskanie, Oregon, listed as one of the power

19   and nuclear plants owned and operated by the asbestos

20   Debtors.

21         Her husband suffered from mesothelioma as a result

22   of his exposure.  However, Ms. Ziegelbaum has not manifested

23   any asbestos injuries to this point.  Interestingly, her

24   husband did not receive any notice of the unmanifested bar

25   date by either direct mailing which would have allowed her

Page 40

1    to file the proof of claim.

2          The claimants filed, in fact, did file their proof

3    of claim before the bar date on behalf of the nationwide

4    class of people who had been exposed either through work or

5    through take-home exposure.

6          In terms of asking the Court to exercise its

7    discretion, we believe that the courts in this district as

8    well as in the circuit have permitted the exercise of

9    discretion to allow the filing of a class proof of claim

10   relying largely on In Re: American Reserve Corp case and

11   also In Re: Zenith Labs, which is at 104 B.R. 659, that's a

12   bankruptcy from the District of Delaware -- or District of

13   New Jersey, excuse me.

14         The right to file a proof of claim is governed, as

15   you know, Your Honor, by 11 USC 501.  501's of course silent

16   on actually whether or not a class proof of claims may be

17   filed but other courts have looked to 901(4)(c) which allows

18   a court at any stage of a proceeding to direct that one or

19   more of the other rules of Part 7 shall apply.

20         Consistent with 904(1)(c) [SIC], the application

21   of federal rule of bankruptcy procedure 702(3) the proof of

22   claims is within the discretion of the Court.  That's In Re:

23   Tarragon Corp. and also In Re: American Reserve Corp.

24         The Third Circuit specifically has not considered

25   the question but, as I said, courts in the circuit have

1   permitted the class proof of claims to be filed at your

2   discretion.

3          The Court at In Re: American Reserve articulated

4   compelling arguments in support of interpretation of the

5   bankruptcy rules that permits class proof claims as being

6   consistent with the legislative intent of the drafters of

7   the rules.  In Re: Zenith Labs holding that the policies

8   underline class action in congress explicit provision for

9   the application of federal rule of -- or federal rule of

10  civil procedure 23.  The bankruptcy proceeding supports the

11  view in the latter cases In Re: American Reserve set forth

12  as the better rule.

13         The discretionary factors within the scope of the

14  Court's review weigh strongly in favor of permitting claims

15  (indiscernible) to proceed with the class proof of claim.

16  In Re: Tarragon Corp. in that case the court ordered

17  delineated factors the court should consider when

18  determining whether to exercise its discretion to allow

19  class proof of claim.

20         Those factors included prejudice to the Debtor and

21  to other creditors, prejudice to the punitive class members,

22  efficient estate administration, the conduct to the

23  bankruptcy case -- conduct in the bankruptcy case of the

24  punitive class representatives in the status of the

25  proceedings of other courts.

1      Class claims motion here, Your Honor, is

2  presumptively timely.  The motion was filed before the bar

3  date.  The class proof of claims were both filed before the

4  bar date.

5      In deciding whether a claim is prejudicial to the

6  Debtor and to the efficiency of the administration of this

7  estate, courts look for the timeliness of the motion and the

8  filing of the underlying proof of claim.  As I stated, we

9  filed before the deadline.

10      District courts have held that 702(3) is properly

11  considered when a class proof of claim or a motion for class

12  certification is filed contemporaneous with a submission of

13  the class proof of claim.  It is right and appropriately

14  considered at the time of the filing of the motion for class

15  certification when timely filed with a proof of claim.

16      There's been no delay here, Your Honor.  As

17  argued, the class claimants have conducted themselves

18  diligently and consistent with the efficient administration

19  of this estate.  This is their first appearance in the case,

20  Your Honor.  It's not as if they've waited.

21      The lack of delay as to the Debtor applies with

22  equal force to the other creditors.  They're not injured in

23  any way by this motion.

24      Second, failure to exercise the discretion to

25  permit a class proof of claim would result in severe

1   prejudice to persons similarly situated to the class

2   claimants.  The strongest single factor warning the exercise

3   of discretion to permit a class proof of claim is far and

4   away prejudiced to the punitive class members.

5          Well, our -- well, claimants Aribe and Cunningham

6   as contractors were presumptively entitled to perceive

7   direct mail pursuant to the notice procedures previously

8   addressed by this Court.  They received no such notice.

9   Similarly, claimant Ziegelbaum is married to a person who

10  suffered from meso and her status as a family member of such

11  should have made her readily identifiable for the purpose of

12  mailing requirements in the notice scheme.  Class claimants

13  can hardly be said to be unknown unknowns as their names

14  resultively appear in the business records.

15         In the absence of class certification, such

16  persons with unmanifested injuries dealing claims under

17  Grossman would be subject to discharge.  Prejudice then to

18  those persons would be great.  They would effectively be

19  brought to due process which the Court has explicitly found

20  in its July 15th, 2015 order that they were due.

21         Critically, the availability of relief pursuant to

22  Grossman should not weigh against the Court exercising its

23  discretion with respect to Rule 23 in granting this motion.

24  As this Court has held, the bar date was required as to all

25  claims by the plain language of the statute and on such

1  basis the that the Court determine a priority the scope of

2  due process protections which each type of unmanifested

3  claimant is entitled.

4       Should this motion not be granted, such similarly

5  situated class claimants would not file individual proof of

6  claims and may nonetheless be entitled to a pro hoc, post

7  pro hoc, post hoc case-by-case evaluation of other due

8  process rights per Grossman.

9       Rather, by extending Rule 23 to the proof of

10 claims process, this Court may satisfy the requirements in

11 order in terms of protecting the bar date.

12      Finally, Your Honor, the case-by-case analysis

13 under Grossman also obviates the concern of an opt-out class

14 will provide an end around to the bar date.  Any end around

15 made by the punitive class members opting out pales in

16 comparison to the end run made by a flood of potential

17 claimants seeking an individualized review of their due

18 process rights per Grossman.  Thus, the efficient

19 administration of the estate is enhanced by the Court's

20 exercise by applying Rule 7023.

21      In applying 7023, Your Honor, the Court should

22 grant the motion to proceed the class, the requisite showing

23 under 7023 having been made to secure the class.  Generally,

24 Your Honor, what we're looking for is a general class with

25 two sub classes, one class for those individuals who were

1    exposed at work and yet are unmanifested and then a second

2    class for those who were exposed by take-home and who are,

3    again, yet unmanifested.

4            Rule 23 standard requires, obviously, a couple

5    things, Your Honor, a number of things.  With regard to

6    23(a), we obviously have to demonstrate numerosity,

7    commonality, typicality and adequacy of representation.

8    These are threshold issues that we have to demonstrate,

9    hence my comments earlier about the preponderance of the

10   evidence standard and whether we needed and evidentiary

11   hearing.

12           Once we prove 23(a), we then move to 23(b) and

13   we'll do that, Your Honor, but first let me address the

14   23(a) requirements.  First, Your Honor, (indiscernible),

15   (indiscernible) requires a finding of the class

16   representative be appointed only if the joinder of all class

17   members would be impractical.

18           We've seen from the response of the Debtors

19   there's a number of claims that have been filed in excess in

20   the thousand, Your Honor.  It'd be impractical for the Court

21   to join all those individuals in a single action.

22           Given the scope of the facilities operated by the

23   asbestos Debtors, likewise, lends itself to the fact that

24   joinder would be inappropriate.  Class claimants bring this

25   motion on behalf of thousands of similarly situated persons

1    whose occupational -- who are occupationally exposed to

2    asbestos in the asbestos Debtor's facilities who have not

3    yet manifested claims.

4              As the district court in the Third Circuit has

5    found, the numerosity requirement may be met by less than

6    1000 class members and that's in Beck v. Maximus Inc., 457

7    F. 3d at 294, finding a proposed class of 776 claimants

8    satisfied the numerosity requirement.

9              With regard to the next element under 23(a), Your

10   Honor, commonality, a punitive class satisfied 23(a)'s

11   commonality requirement if the main plaintiff shared at

12   least one question of fact or law with grievances of the

13   proposed class.

14             Here, Your Honor, the bar is not high.  Courts

15   have acknowledged a commonality be present even when all

16   members of the plaintiff class have not suffered an injury.

17   That's Baby Neal v. Casey 43 F. 3d 48, where class members

18   don't have identical claims In Re: Credential Insurance 148

19   F. 3d at 311 and most dramatically where some member claims

20   were arguably not even viable, Sullivan v. DB Investments,

21   Inc., 667 F. 3d at 273.

22             The focus on commonality, Your Honor, the part in

23   query is not on the strength of each class member's claim

24   but instead on whether the defendant's conduct was common to

25   all the class members, the focus being on the defendant's

1    conduct.  Here we have class-wide answers.  The defendant's

2    conduct was common to all the class members and common

3    questions lead to common answers such as these alleged

4    misconduct and harm it caused whether it would be common to

5    all the class members.

6            Here the common questions relate to the health

7    hazards of asbestos, the Debtor knew about those hazards,

8    their failure to warn and the ineffectiveness of the safety

9    products that they utilized for their employees.  All class

10    claimants share the above class-wide answers to these

11    questions with the similarly situated class of the persons

12    who they seek to represent.

13            Finally, Your Honor, a single common question

14    regarding Debtor's behavior is sufficient to meet the

15    commonality requirement, thus a class may be certified even

16    in the presence of individualized determinations which may

17    be necessary to completely resolve the claims of each

18    punitive class member in the case.  That's In Re: Community

19    Bank of North Virginia versus Mortgage Lending Practices

20    litigation PNC Bank NA 795 F. 3d at 399.

21            Next, Your Honor --

22            THE COURT:  Mr. Hogan, I do apologize.  I have Mr.

23    Seitz on the phone, so I'm going to take a recess and talk

24    to him.

25            MR. HOGAN:  Certainly, Your Honor.

Page 48

1        (Recess)

2              CLERK:  All rise.

3              THE COURT:  Please be seated. Just very quickly

4    before we continue with Mr. Hogan, and I do apologize.  I

5    spoke with Mr. Seitz and he is in court in Philadelphia, but

6    he is available to participate by telephone, so we will

7    obviously deal with Mr. Hogan's matter at -- depending on

8    when we're done there.  We'll take a recess and we'll

9    reconvene the Stewart issue at 1:00 PM, and Mr. Seitz will

10   participate by court call to the extent there are any

11   issues.

12             MR. HUSNICK:  Your Honor, my understanding is that

13   Mr. Kotarba has a deposition in New York scheduled for 2:00

14   o'clock.  You've -- I'm sorry?

15             MAN:  I already moved it from 1:00 to 2:00.  I

16   can't --

17             MR. HUSNICK:  It's in the --

18             THE COURT:  But he's a witness.  I had a hearing

19   booked all day today.

20             MR. HUSNICK:  Understood.  Can we try and move it

21   again?

22             MAN:  I'll ask.  I apologize, it's my deposition.

23   Is there a possibility that we could do it earlier than

24   1:00?

25             THE COURT:  No.  He's in court.

Page 49

1        MR. HUSNICK:  While we're doing the asbestos

2    argument, we'll step out into the hall and I'll call his

3    counsel.

4        THE COURT:  Yeah, see what you can do.  I mean,

5    Mr. Stewart traveled from Texas.

6        MR. HUSNICK:  Understood.

7        THE COURT:  This was the time for the hearing.  I

8    know it's inconvenient and I know everybody expected it

9    would actually be done this morning, but circumstances have

10   evolved in such a manner that we're, you know, in a tough

11   spot.

12       There may be factual questions, if nothing else, I

13   need to ask Mr. Seitz about what was done, what was said, et

14   cetera.  He -- I -- based on our preliminary conversation, I

15   don't think I'll ask him to abdicate on behalf of Mr.

16   Stewart, but it'll be helpful to have him on the phone.

17       MR. HUSNICK:  Understood, Your Honor.  I'll step

18   out and try and resolve this action.

19       THE COURT:  Okay, thank you.

20       MR. HUSNICK:  Thank you.

21       THE COURT:  Let me know.  Okay, Mr. Hogan.  Again,

22   I apologize.

23       MR. HOGAN:  Thank you.

24       THE COURT:  Again, I apologize.

25       MR. HOGAN:  No, Your Honor, not a problem.  Just

1    don't hold me in contempt, Your Honor.

2              THE COURT:  I won't, you're here.

3              MR. HOGAN:  Your Honor, returning to my argument,

4    I believe I left off with regard to 23(a) with regard to the

5    typicality requirement, that being the typicality

6    requirements of 23(a) where a class rep can satisfy those

7    requirements where they possess the same interest and same -

8    - and suffer the same injuries as the other class members.

9              To avoid a typicality for the purposes of class

10   certification, courts often ask are the class claimants

11   claims typical in the common sense of the class, suggesting

12   that the incentives of the plaintiffs are aligned with those

13   of the class.

14             Factual differences will not render a claim

15   atypical if the claim arise from the same event or practices

16   or course of conduct that give rise to the claim of the

17   class members.  Here -- and further, Your Honor, even where

18   there's the presence of unique defense, that alone will not

19   render a class claim as atypical.

20             Here, Aribe and Cunningham are members of the

21   class occupationally exposed in plants designed my asbestos

22   debtors, and Ziegelbaum is a family member who was

23   occupationally exposed or a family of someone who was

24   occupationally exposure, and thus, the risk of asbestos-

25   related disease by take-home exposure.  As such, all class

1    claimants may then fill out proof of claim forms and are

2    members of the punitive class.

3              Further, the claims raised by the class claimants

4    that the asbestos debtors negligently, and with knowledge of

5    the health hazards posed by asbestos, exposed them to

6    asbestos and its attendant harm is a typical legal theory

7    common in every state in which it could be pled.

8              Further, class claimants stand in the same

9    relation to a legal injury as every other similarly-

10   situation person within the class; that is, each holding a

11   claim as accrued under Grossman, though they have not yet

12   manifested a physical injury.  In Re: School Asbestos

13   Litigation, 789 F. 2d at 1000.  The typicality requirement

14   was satisfied because the plaintiffs theories of liability

15   were harmonious and the named plaintiff stood in the

16   position similar to the other class members.

17             Next, Your Honor, the final issue under 23(a)

18   relates to whether the class representative and their

19   attorneys can fairly and adequately represent the interests

20   of their clients.  Rule 23 requires that the class rep and

21   class counsel fairly and adequately protect the interest of

22   the class and not the class rep.  By the way, Your Honor,

23   just FYI, obviously Jeanne Meyer is the class action

24   attorney in this.  To the extent that you were to grant this

25   motion, she's the one who would prosecute the class proof of

Page 52

1    claim, Your Honor.

2            The adequacy of representation examines two

3    matters, the interest and incentives of the class

4    representatives and the experience and performance of the

5    class counsel.  By that inquiry, Rule 23(a) adequacy

6    requirement is designed to uncover conflicts of interest

7    between the name parties and the class they seek to

8    represent.  As to class counsel, the adequacy requirement

9    assures that the counsel possess adequate experience and

10   will vigorously prosecute the claim, and will act at an

11   arm's length from the defendant.  As attested to in the

12   Meyer affirmation, which is attached to our motion, class

13   counsel is an experienced attorney well versed in bringing

14   class actions in Federal Court and is, therefore, able to

15   provide vigorous prosecution to such claims against the

16   Debtor.  There is no conflict here as between the classes

17   because as to both sub-classes, they are individuals who,

18   depending on whether they were exposed at work or by take-

19   home, they still are unmanifested asbestos claimants and

20   they're agnostic to one another, Your Honor.

21           So, Your Honor, what we have here is an alignment

22   of interest and incentives between the class representatives

23   and the rest of the class.  So long as the class members are

24   united in asserting a common right, such as achieving the

25   maximum possible recovery for the class, the class interests

Page 53

1    are not agnostic for representation purposes.  Thus, there

2    is no fundamental inner class conflict that prevents class

3    certification.

4            The class claimants in the claim they seek to

5    represent all proceed on the same theories and suffer the

6    same legal harm claims cognizable under Grossman and, yet,

7    unmanifested.  Class claimants seek to protect all those

8    with unmanifested claims like them who, for reasons of

9    notice or disability or for other reasons, would not file

10   their claim by the bar date of December 14, 2015.

11           Class claimants are in no actual conflict with the

12   punitive class members, nor can they have any speculative

13   conflict be adopted by the Debtors to defeat the adequacy

14   requirement.

15           That brings us to 23(b), Your Honor.  Assuming

16   that we can satisfy the requirements of 23(a), we still have

17   to meet one of the requirements of 23(b).  In this instance,

18   we focus on 23(b)(3), Your Honor, which states that the

19   claimants have to satisfy or establish predominance and

20   superiority sufficient to satisfy 23(b)(3).

21           First, Your Honor, the class members are

22   ascertainable.  An essential prerequisite of a class action,

23   at least with respect to actions under 23(b)(3), is that the

24   class must be currently and readily ascertainable based on

25   objective criteria.  Marcus vs. BMW of North America LLC,

Page 54

1   687 F. 3d 583.  Thus, the movant must show, again, by the

2   preponderance of the evidence, that the class is

3   ascertainable.

4         Specifically, ascertainability inquiry is a two-

5   fold inquiry requiring first, that the class be defined

6   reference to an objective criteria, and two, that there is a

7   reliable and administratively-feasible mechanism for

8   determining whether punitive class members fall within the

9   class definition.

10        The class claimants bring this action to protect

11  the rights of similarly-situated persons who may not have

12  knowledge of the bar date, but who were entitled to file

13  individual class unmanifested proof of claims.  Here, the

14  class is defined by the objective of criteria set forth in

15  the proof of claim form, and that the class claimants and

16  the persons similarly situation are present or former

17  employees and contractors who worked for the asbestos

18  debtors in one of the enumerated numbers of facilities

19  and/or family members thereof.

20        In protecting the due process rights of persons

21  within the scope of the class form -- or the claim form --

22  this Court, in its July 15, 2015 Order, devised a method of

23  direct notice and notice via targeted media outlets.

24        Implicit in both methods of notice is that the

25  punitive class claimants are readily identifiable and may be

1    readily identified by such methods.  Specifically, the Court

2    ordered the debtors to make reasonable search of their

3    business records for the names and address of employees and

4    contractors of the asbestos debtors.

5         Recently, the Third Circuit found that a class --

6    found a class ascertainable where the debtor possessed all

7    of the relevant records needed to identify the punitive

8    class members.  That's In Re: Community Bank of North

9    Virginia, 795 F. 3d at 397.

10        Further, while such method may entail some

11   individual review, such method is not -- such review is not

12   fatal to a finding of ascertainability.  Notice of the class

13   could be improved by requiring a further individualized

14   search of the records in mailing such to the specific

15   skilled trade unions in the states where EFH plants existed

16   among other things.

17        This method would ensure sufficient notice to

18   protect these claimants' due process rights without changing

19   the verdict.  Second, Your Honor, we must show that the

20   class claimants' common questions predominate over questions

21   that are individual to them.

22        Plaintiffs must further establish this for the

23   purpose of satisfying 23(b)(3).  Before certifying a

24   23(b)(3) class, the District Court must evaluate, or a Court

25   must evaluate, whether (indiscernible) questions or fact

Page 56

1    that the class members predominate over questions affecting

2    only individual members.

3              The focus, Your Honor, is on task to see whether

4    the proposed classes are sufficiently cohesive as to warrant

5    adjudication by representation.    The focus on predominance

6    inquiry is whether defendant's conduct was common to all the

7    class members, and whether the class members were harmed by

8    the defendant's conduct.    That's Sullivan vs. DB Investment,

9    Inc., 667 F. 3d 273.

10             The predominance inquiry, Your Honor, begins, of

11   course, with the elements of the underlying cause of

12   actions.    Predominance requirements focus on the essential

13   elements of the class claims to be proven at trial with

14   common, as opposed to individualized, evidence.    Commonality

15   and predominance together are the focus because where an

16   action is to proceed under 23(b)(3), the commonality

17   requirement is subsumed by the predominance requirement.

18   Class claimants identify the common issues, as I've stated

19   earlier.

20             In this case, class claimants seek to represent a

21   class of similarly-situated individuals who've been exposed

22   to asbestos by the asbestos debtors, and to put them at risk

23   of developing asbestos-related diseases, but who have not

24   yet become sick and, thus, have the unmanifested claims.

25   These are questions of defendant's conduct which

Page 57

1    predominate.

2          The ability to satisfy the predominance standard

3    is unimpeded by the existence of different state law

4    standards with regard to the various states -- the various

5    laws of the individual states.  The In Re: Sullivan case

6    that I mentioned earlier is specific to that, Your Honor.

7    So the predominance or the primacy of the injuries by these

8    individuals satisfies or overcomes the requirement

9    necessitating the predominance.

10          As they say in Sullivan, Your Honor, this

11    determination is not a mechanical, single-issue test, but is

12    a determination by looking at the claims, and it is usually

13    sufficient to establish predominance.  They really look to

14    the defendant's conduct, Your Honor.

15          Finally, with regard to the superiority

16    requirement, the class proof of claim is superior method of

17    proceeding in this instance, Your Honor.  23(b)(3) requires

18    that a class claim be superior to other available methods

19    for the fairly and efficiently adjudicating the controversy,

20    and provides a non-exhaustive list of factors to be

21    considered in determining superiority, including the class

22    members interest and individually controlling the

23    prosecution of the separate actions, the extent and nature

24    of similarly-litigated issues already commenced by class

25    members, which are none in this instance, the desirability

Page 58

1   of concentrating the litigation in a particular forum, and

2   the difficulties likely to be encountered in the management

3   of a class action.

4          The superiority requirement asks a Court to

5   balance the terms of fairness and efficiency the merits of a

6   class action versus those of the alternatives available

7   forms of adjudication.  Here, it's our position, Your Honor,

8   that a class action is vastly superior to claimants

9   proceeding individually.

10          A class claim would ensure the broadest due

11  process of those claims that may be disposed by the bar

12  date.

13          It also comports with the Court's Order by

14  remedying the infirmed implementation of the notice scheme,

15  as demonstrated by these class claimant affidavits.

16          Not only are class proof of claims superior to

17  individual proof of claims with respect to the due process

18  and the Court's Order as established above, but the common

19  questions in fact and law are best addressed as a class,

20  thus expediting these proceedings and resulting in a

21  significant judicial efficiencies.

22          With respect to the class members' interest and

23  individually controlling the prosecution of their separate

24  actions, here, as the claims are brought by persons with

25  unmanifested injuries, no person has a significant interest

1    in controlling in the individual control of a separate

2    action at this stage.  Rather, a class mechanism removes

3    what would be burdensome to individual claimants, exerting

4    the effort to protect their rights, even while injuries have

5    not yet manifested.

6            As to similar litigation, while the number of

7    individual claims filed by the asbestos debtor is not known,

8    class claimants know of no other class proof of claims being

9    brought, nor of any other prior class actions being brought

10   against the asbestos debtors.

11           With respect to the desirability of concentrating

12   the litigation in this particular forum, just as this Court

13   found it desirable to consolidate the proceedings in this

14   instant forum, by the same logic, the concentration of class

15   proof of claims is not detrimental to the claimants, and is

16   further desirable as permitting and expediting in streamline

17   process.

18           Finally, Your Honor, the class proof of claims

19   present no insurmountable challenge to the management of a

20   class action.  While state law of distinctions may implicate

21   manageability concerns, they do not pose an obstacle to the

22   certification of a settlement class.

23           Furthermore, persons who are part of this class

24   who develop asbestos-related diseases -- that is, they

25   manifest -- would simply be moved from the persons with

Page 60

1   unmanifested claims to those with manifested claims.  And

2   like anyone else who filed an individual proof of claim for

3   unmanifested claim prior to the bar date, would be able to

4   pursue their manifested claim against the bankruptcy estate.

5   You'll recall, Your Honor, the plan, of course, provides

6   that asbestos claims are reinstated in pass-through.

7           Furthermore, 23(d) vests in the Court's

8   substantial discretion to enter orders subsequent to the

9   orders certifying the class to manage the class.  This goes

10   a long way to managing any issues that may arise.

11           In closing, Your Honor, it's our position that the

12   class claim is permissible, that we've satisfied all the

13   requirements necessitated by 23(a), as well as 23(b)(3), and

14   we would offer the affidavits of Mr. Aribe, Mr. Cunningham,

15   and Miss Ziegelbaum into the record, together with the

16   affidavit of Jeanne Meyer.  Thank you, Your Honor.

17           THE COURT:  Thank you, Mr. Hogan.  Counselor?

18           MR. ROGERS:  Your Honor, Brent Rogers from

19   Kirkland & Ellis LLP on behalf of the Debtors.  I think Mr.

20   Hogan's argument is the same argument that he presented in

21   his briefs.  We've responded to those arguments in our

22   briefs, and I would try not to repeat myself here.

23           What I didn't hear from Mr. Hogan was any reply to

24   our response.  I want to be mindful of the Court's desire to

25   hear about the law and less about the facts.  I don't think

1    we need to hear about the affidavits that were filed along

2    with this motion.  I think there's ample evidence in the

3    record for the Court to apply the law that exists and deny

4    this motion.

5            There's a threshold issue, Your Honor, and that's

6    should the Court apply its discretion to apply Rule 23 to a

7    class proof of claim here.  And I want to emphasize the

8    unprecedented nature of that ask in this case.  This is not

9    a case where a class has been certified in another action in

10   state court or in federal court, and now the class is coming

11   to this Court and asking to file a proof of claim on behalf

12   of that class.  That's the -- as In Re: Sacred Heart pointed

13   out, that's the, you know, quintessential case that's

14   appropriate for a class proof of claim.  This is not that

15   case.

16           This is also not a case where the class that the

17   claimants seek to certify will go on to prosecute a cause of

18   action.  The class itself has no cause of action.  Because,

19   you know, there's a lot of fuzziness around the definition

20   of the class in this case, but the one thing that is clear

21   is that it is made up of unmanifested claimants. They have

22   no injury yet.

23           And as Mr. Hogan just pointed out and as they

24   pointed out in Paragraph 77 of their brief, the moment

25   someone in this class manifests an injury, they leave the

Page 62

1    class and they become a manifested claimant, they go on to

2    prosecute their own claim.  So what that means is that this

3    class, if certified, would really have one purpose only, and

4    that is to file a class proof of claim.

5           In none of the cases cited on either side has a

6    Court endorsed the application of Rule 23 to a class solely

7    for the purpose of filing a class proof of claim.  And,

8    frankly, there's good reason for that, Your Honor.  It

9    really makes no sense.

10          It doesn't serve the purpose of Rule 23.  It

11   undermines the purpose of the bankruptcy rules and the bar

12   date order and the notice procedures orders that Your Honor

13   entered.  So in this case, I think it's very clear that the

14   discretionary call that Your Honor has to make cuts in favor

15   of denying this motion and refusing to apply Rule 23 to a

16   class proof of claim.

17          And just to back up, Your Honor, Rule 7023 applies

18   to adversary proceedings.  This is not one.  To get to the

19   application of Rule 23 to a class proof of claim, you have

20   to go through Rule 9014, which is entirely discretionary.

21   In the Court's that have undertaken that analysis have been

22   very clear that applying Rule 23 to a contested matter, and

23   specifically applying it to a class proof of claim, there's

24   a heightened standard, and it's less likely to be a good

25   idea to apply Rule 23 in these circumstances than in others

Page 63

1  in adversary proceedings, for instance.

2           Mr. Hogan never really grapples with the issue of

3  the Court's discretion and whether it should apply Rule 23

4  in this case.  He does talk about, you know, the prior, I

5  would say, consensus in the law that it's not even

6  appropriate to apply Rule 23, or it's not even possible to

7  apply Rule 23 to a proof of claim because Rule 501 only

8  allows individuals to file proofs of claim.  I'm not going

9  to make that argument here.  I think it has some merit, but

10  I don't think that it's dispositive.  I think there's plenty

11  of other reasons to deny in this case.

12           I do think that that prior body of law is

13  indicative of the skepticism that courts have applied when

14  they look at a class proof of claim.  And I think that,

15  although that body of law has largely been moved away from

16  since the American Reserve case, I think that that

17  skepticism endures.

18           So the question is, is this the kind of case, is

19  this the right case, is this the right circumstance in the

20  case to go through the long journey from 9014 to 7023 to

21  apply Rule 23 in the first instance.  And the answer there,

22  I think, is clearly no.  That's setting aside whether the

23  class claimants in this case can even meet the requirements

24  of Rule 23, which I'll get to later, but I want to focus on

25  this discretionary call.

Page 64

1          One thing that Mr. Hogan, again, did not respond

2     to at all is what is the impact that this class proof of

3     claim would have on this Court's prior orders.  And I think

4     it's very clear that the impact is that it dramatically

5     undermines and, in fact, it renders moot Your Honor's Orders

6     in January on the application of the bar date to

7     unmanifested asbestos claims, and in July, when you entered

8     the noticing order and applied the -- or set the bar date.

9          In the W.R. Grace case at 389 B.R. 737, that's out

10    of the Bankruptcy District of Delaware in 2008, the Court

11    observed that when you're looking at an issue like this,

12    whether to certify a class on a class proof of claim, you

13    can't do it in a vacuum.  You have to consider the impact of

14    the bar date.  And you've got to consider, in this case, the

15    impact of the bar date that Your Honor set for unmanifested

16    asbestos claims.

17         Put simply, if this class is certified and the

18    class proofs of claim are allowed, we can say good-bye to

19    the bar date for unmanifested asbestos claims.  That's

20    because any litigant or any potential claimant would then

21    later be able to come in, whether or not they filed their

22    own individual proof of claim by the bar date, they'd be

23    able to come in and leverage the class proof of claim to say

24    I'm a claimant, my rights were reserved by the class proof

25    of claim, notwithstanding the fact that I did not file a

Page 65

1  proof of claim of my own.

2          And, you know, I don't think I need to remind the

3  Court, but the bar date Order that Your Honor entered in

4  January was the culmination of a long -- months' long --

5  process of multiple rounds of briefing, multiple hearings.

6  And I think the Court's Order was quite clear that not only

7  is it within the Court's discretion to apply the bar date to

8  unmanifested claims, but it's required.  It's required by

9  the rules, and the Grossman construct that the Court apply

10  the bar date to unmanifested claimants.  This class proof of

11  claim that the class claimants purpose to be seeking would

12  completely that context or that construct.

13          The other thing that this class proof of claim

14  would do is wipe out, you know, not just the long effort and

15  judicial party resources that went into getting the bar date

16  to apply to unmanifested asbestos claims, but after that

17  happened, as Your Honor knows, the Debtors and the EFH

18  Committee worked long and hard to construct a notice program

19  to, as best as possible, get notice out to all potential

20  unmanifested asbestos claimants.

21          That order was heavily negotiated.  It was

22  consensual.  And it led to the issuance of, I think,

23  somewhere around 70,000 direct notices, not to mention all

24  the indirect notice or the constructive notice through

25  publications and newspapers on websites, et cetera.  All

1    those forms of notice were designed to get the word out.

2            And what Mr. Hogan says about these class

3    claimants not having notice doesn't make sense to me.  They

4    filed their proof of claims.  They're in Court today arguing

5    about the bar date.  They clearly know about the bar date.

6            Now, did they get that notice directly from the

7    Debtors?  I, frankly, don't know.  There's no evidence on

8    that, and we don't really need evidence.  What we do know is

9    that they have notice.  And what that shows, I think, Your

10   Honor, is that the notice program that's been constructed

11   has been effective.

12           It's not a program that is only effective if

13   everyone gets notice from the Debtors.  It is a program

14   that's designed to get the word out through whatever

15   channels are available, whether it's through someone's

16   counsel at the union or through someone's spouse or through

17   a friend.  All of those are signs, signals of effective

18   notice, and I think that's what's been done here.

19           So this proof of claim, or this class proof of

20   claim request, is -- you know, one of the things it's going

21   to do if granted is it's going to require the Debtors to

22   undertake that whole notice program again.  Rule 23 requires

23   notice to potential class members of their potential status

24   as a class member.  And I think Mr. Hogan has said, and they

25   said in their brief, that the notice that they would propose

Page 67

1    that we give to potential class members start at least with

2    the -- at the base line of the same notice that we gave the

3    first time around.  S

4              o we're now talking about duplicating what I

5    believe is somewhere around $2.5 million worth of effort to

6    get the word out.  That, to me, seems like a tremendous

7    waste of resources of the debtors.

8              Your Honor, this Court has already shot down two

9    attempts at least to mount a collateral attack

10   inappropriately on the January Order -- or the January

11   Memorandum Opinion and the Order on the bar date and the

12   notice.

13             The first of those was when asbestos plaintiffs'

14   firms came in and asked for the appointment of a class

15   representative for unmanifested claims and future claims.

16   Then Your Honor said the time to -- the time to appeal the

17   bar date Order has passed.  The time to appeal the notice of

18   procedures has passed.  I'm not going to hear that today.

19             You did the same thing in connection with the

20   confirmation hearing when asbestos plaintiffs came in and

21   said that the Order -- that the reorganization could not be

22   confirmed because of due process concerns to unmanifested

23   claimants.

24             Again, you emphasized the protective nature of the

25   notice program that was entered, the fact that there was no

Page 68

1    appeal of that, and denied that relief as an inappropriate

2    collateral attack.  And so, Your Honor, the Debtors submit

3    that you should deny, as well, this as an inappropriate

4    collateral attack on those two rulings by the Court.

5         Now let's look at the other side of the ledger.

6    We've talked about the -- you know, the bad aspects of this

7    request for proof of claim on behalf of the class.  What do

8    we get as a benefit?

9         Well, Mr. Hogan has focused both in his briefing

10   and his argument today on prejudice to class members.  Let's

11   start with the class members who are similarly situated to

12   the three who purport to be representatives of the class.

13   There's no prejudice to them if this order is denied.  They

14   have filed proofs of claim in advance of the bar date.

15        What I think Mr. Hogan's really getting at is the

16   other class members who are different from the ones who

17   appear in court today, the class members who may not have

18   received notice through any channel.  The Court has already

19   addressed the issue of due process and prejudice to

20   unmanifested claimants multiple times in the context of the

21   orders that I just discussed.

22        In lieu of that, the notice program that we have

23   and that we implemented was reasonably calculated to reach

24   as many of the potential claimants as possible.  So that's

25   sort of a due process protection on the front end.

Page 69

1          Then as Mr. Hogan acknowledges, there's a due

2    process protection on the back end as well.  And that is if

3    a claimant, notwithstanding our efforts to get the word out,

4    comes into court and says, "I didn't hear this.  I didn't

5    know about it.  I now have an asbestos claim because I have

6    an injury.  I should be relieved from the bar date," then

7    the Court has the ability under the rules to -- you know,

8    for cause shown, to grant relief from that bar date.  So

9    there's a due process protection on the back end.

10          And Mr. Hogan sort of acknowledges that, but then

11   tries to shift the discussion from prejudice and due process

12   to this concern about efficiency, which is yeah, we have

13   this protection on the back end, but if you don't grant this

14   motion and allow the class proof of claim, what that means

15   is that you're going to get what they call an avalanche of

16   post bar date proofs of claim and injuries coming into court

17   and that there's going to have to be a case-by-case

18   determination on those claims.

19          Well, that is the construct that Grossman sets up

20   and that we think the Court should apply, but I think this

21   concern about efficiency and the avalanche of claims is

22   really misstated and has no support.

23          We have received, I believe, 10,000 unmanifested

24   claims so far as of today.  There's no indication in the

25   record or in the experience of the Debtors that after the

1    bar date there's going to be a sudden flood of manifested

2    claims that are going to come into court and allege that

3    their due process rights were violated because the notice

4    never reached them.

5           What's really going on here, I think, Your Honor,

6    is that Mr. Hogan is trying to flip the burden of showing a

7    due process violation and to take that burden off of the

8    plaintiffs where it would sit with -- under the Grossman

9    standard, and put that on the defendants.  In fact -- I'm

10   sorry, the Debtors, and in fact, it would be a preclusive

11   burden because we would not have an opportunity to show that

12   their due process rights weren't violated.  They'd be able

13   to come in regardless of whether they receive notice or not

14   and file a claim after the bar date because they would say

15   they were protected by the class proof of claim.

16          So this efficiency concern doesn't hold water.

17   Not only that, but when you think about the tremendous

18   duplication of efforts that would obtain if we had to go

19   through the notice process again.  That's the opposite of

20   efficiency.  That is a massive inefficiency in the process.

21          So the two aspects or the two arguments that the

22   class claimants make in favor of applying Rule 23 just don't

23   hold up.  And the traditional, more traditional reasons to

24   apply Rule 23 in the bankruptcy context also don't hold up.

25   So as the Court observed in American Reserve, you know,

1    efficiency in terms of consolidation of claims in a single

2    forum isn't really an argument in favor of a class treatment

3    in bankruptcy because the claims are already consolidated in

4    a single forum.

5             So what the courts really look to is, is it

6    serving the function of Rule 23 in that it's bringing claims

7    that otherwise would not be filed into court and getting

8    them filed?  And I think from experience we know that that's

9    not the case here.

10            The burden of filing claims in this Court, the

11    proofs of claim, is minimal, and we've already seen, as I

12    said -- I believe the numbers are 10,000 and 12,000

13    claimants file unmanifested proofs of claim.  So there

14    appears to be no impediments to unmanifested claimants

15    getting into court.  And with the notice program being as

16    robust as it is, there's also no impediment to getting the

17    word out.

18            For instance in American Reserve, the Court, when

19    it articulated this rule, said that the bankruptcy court in

20    that case could achieve all of the benefits of class

21    treatment in the bankruptcy context simply by making sure

22    that appropriate notice got out to the claimants.  That's

23    exactly what's happened here.

24            So that all goes to the question of whether the

25    Court should apply its discretion and apply Rule 23 in the

1    first place.  And we think it's quite clear that the Court

2    should decline to do so.  Nevertheless even if the Court

3    were to apply its discretion to apply Rule 23 through 9014

4    and 7023, we don't think that the class claimants have come

5    in with -- that the class claimants have put forward a

6    viable Rule 23 class.  And I don't think you need to look to

7    the affidavits to make that determination.

8              I think you can simply look at the class that

9    they're trying to -- the class that they're trying to

10   certify and ask as a matter of first principles whether that

11   satisfies Rule 23.  It does not.

12             One thing I would like to highlight is -- and I

13   spent a little more time with their briefs over the last

14   week -- there's a real lack of clarity as to what is the

15   class they want to certify.  Does it include folks who

16   received direct notice?  Does it include folks who were in

17   the area of constructive notice in a publication?  Does it

18   include people like the claimants?  Apparently it includes

19   folks who received notice through channels other than direct

20   notice.

21             Is it limited to people who did not receive direct

22   notice or were not targets of constructive notice?  Is it

23   limited to people who have not filed a proof of claim?  Or

24   does it include the 10,000 folks who have already taken the

25   initiative to do so?  Does it include only people who are in

1   trade unions as is suggested in one of the affidavits?   Or

2   is it a larger class that includes all unmanifested

3   claimants?

4           If you look at particular paragraphs of their

5   brief, you could interpret them in any of these ways.   And I

6   think that shows a lack of clarity around the class that's

7   going to be satisfied, but it also, as you're going through

8   the factors for Rule 23, it's important because it has an

9   impact on the way you analyze those factors.

10          But let's walk through quickly those factors and

11  how they would play out according to different definitions

12  of the class.   So if you look at Rule 23(a), the numerosity

13  standard, well, here it really matters how we're defining

14  the class in a sense because if we're defining the class

15  only as those folks who have received zero notice of the bar

16  date and the bankruptcy, then presumably, that's going to be

17  a very small class given the robust nature of the notice

18  program.   And we certainly haven't seen any indication that

19  there's a large group of people who have received no notice

20  whatsoever.

21          Regardless, even if it includes the entire class

22  of unmanifested claimants, the entire group, I don't the

23  requirement of numerosity is met here because numerosity

24  doesn't just mean let's count the heads.   It means how

25  difficult is it to join those parties into an action?

1          And that concept, the concept of joinder, really

2     has no meaning in this context.  There's no joinder of

3     parties that would be necessary absent a class proof of

4     claim here.  If there's no class proof of claim, there are

5     individual proofs of claim.  That's just the status quo.

6     And as I mentioned, there's no going forward use for this

7     class, so there's no need to join these people into a class

8     for purposes of prosecuting a claim.  So I think the

9     numerosity standard, however you look at the class and

10    however it's defined, is not met here.

11         Next, commonality.  And so here again, it really

12    reflects the mistaken view that this class is somehow a

13    class of people with a cause of action.  When I say it

14    reflects, I mean Mr. Hogan's argument and the brief reflect

15    that because all of their arguments about commonality are

16    about issues including the conduct of the s, the risk of

17    asbestos exposure, etc., those are not issues that are

18    before the Court on a proof of claim.

19         Those are issues that will be before the Court if

20    there is an asbestos litigant who comes to Court and has an

21    injury, but that's not the question that's before the Court

22    today.

23         So as to what's before the Court today, the filing

24    of the proofs of claim and whether a late filing would be

25    appropriate, there's little commonality among the purported

Page 75

1    class members, especially if you're looking at the entire

2    class of unmanifested claimants.  Some received a notice;

3    some didn't.  Some filed proofs of claim; some didn't and

4    some are in a situation where they are direct exposures, and

5    some are take home exposures.  So there's no one question

6    across the class that really is a question that Your Honor

7    has to answer at this stage of the litigation.

8            Then typicality; do these particular purported

9    class representatives -- are they typical of the entire

10   class?  Again, it probably depends on how you define a

11   class.

12           But if you're defining the class to include all

13   unmanifested claimants, the answer is no, these are not

14   typical because they are folks who got notice in a very

15   particular way, and to the extent that they are purporting

16   to be representing people who got no notice, they are not

17   even a member of that class.

18           So these -- this group of potential claimants

19   cannot represent adequately the interests of the folks that

20   they say are really the target of this class protection,

21   which is the group that did not receive any notice.

22           On that predominance question, which is

23   commonality plus, again, because there's no commonality of

24   questions across this class, there can be no for dominance.

25   Extent of litigation already filed is another factor.  Here

1   we have 10,000 or more individually filed proofs of claim

2   that cut strongly against having a class because we've seen

3   from experience that folks are filing these claims on their

4   own.

5           Concentration in a particular forum is one of the

6   factors under Rule 23.  I think I've already addressed that,

7   that we have a concentration in the bankruptcy court

8   already.  We don't need a class mechanism to do that.

9           And then finally, superiority.  I think for all of

10  the reasons that I've articulated today and in our brief,

11  the idea that a class proof of claim a superior to the

12  Grossman construct that's already in place, it falls flat.

13  It falls short.

14          And for that reason, the Debtors respectfully

15  submit that the order should be denied.  The Court should

16  decline to apply its discretion and apply Rule 23.  And even

17  if the Court does apply Rule 23, it should find that those -

18  - the factors under Rule 23 have not been met.  Thank you,

19  Your Honor.

20          THE COURT:  Thank you, Mr. Rogers.  Mr. Shore?

21          MR. SHORE:  Good morning, Your Honor.  Chris Shore

22  from White & Case on behalf of the investor consortium.

23  I'll be brief.

24          Let me give you two updates first on the deal

25  which is proceeding apace.  The Court may have seen that

1  there was some legislation that had been proposed that would

2  bar tax-free spinoffs into REITs.  The bill that came out I

3  think last night has a grandfather in for transactions that

4  are subject to a pending PLR.  So we kind of dealt with that

5  problem.

6          There's been PUCT testimony filed.  It's all kind

7  of what we expected, and that's moving forward to those

8  January dates still.  So from our perspective, the

9  transaction is moving as it should be, and by the end of the

10  first quarter, beginning of the second quarter, we

11  anticipate being the owners of EFH.  As such, we're keenly

12  interested in addressing the asbestos problem at EFH.

13          To that end, while the deal was going forward and,

14  and during the plan negotiations, we worked very hard with

15  Kirkland to understand the problem and to understand the bar

16  date, why that was put in place, and proceed with that

17  rather than card out everybody is part of a planned

18  settlement.

19          In other words, we let that objection press so

20  that we could keep the deal as structured and would provide

21  a cordoning off of the liability so that we can know what

22  we're investing into.

23          To that end, obviously a great deal of money was

24  spent noticing and performing pursuant to the two prior

25  court orders -- that's money that came out of the new

Page 78

1   equity's pocket from our perspective -- all to satisfy the

2   due process concerns of unmanifested claimants.  So we would

3   reiterate that the Court exercise its discretion not to

4   certify a class which essentially wastes all that money that

5   was spent.

6          I'm only going to add one point, and it's really

7   an emphasis on the legal side of it.  You know, there's one

8   key development that isn't really focused on by either side

9   so far since the filing of the papers.  The bar date has

10  come and gone.

11         In the eyes of the law right now, the three

12  declarants have claims against the s.  Everybody else has no

13  claims against the Debtors that they can prosecute absent

14  relief from the bar date order.

15         The -- so this whole case is far as I'm concerned

16  hinges on the Court's application of Rule 3001(b), which is

17  who's an authorized representative?  A class proof of claim

18  was purported to have been filed on behalf of all those

19  parties.  There was no authority to file that proof of claim

20  at the time oddly enough.  It's the second kink of the day

21  where we have an issue with respect to who's authorized to

22  act on whose behalf and when.

23         So what they're really asking for is retroactive

24  authorization to file a proof of claim on behalf of these

25  parties.  Their only mechanism for doing so is Rule 23, and

1    that's why I think you have to look at the class for the

2    purposes of today's motion as parties who did not receive

3    notice and did not file proofs of claim, because that's the

4    only class for which they can have authority to do anything

5    right now.

6         And when you look at the proposed class

7    representatives, they have nothing to do with that class

8    because they did receive notice, actual notice, and they did

9    actually file proofs of claim.  So I don't think using the

10   Rule 23 mechanism in this case to give them retroactive

11   authorization to file a proof of claim as appropriate here.

12   And for those reasons, we'd ask you to deny the motion.

13        THE COURT:  Thank you, Mr. Shore.  Mr. Hogan?

14        MR. HOGAN:  Thank you, Your Honor.  I'll be brief.

15   Your Honor, Debtors' counsel raised at its essence really

16   what this controversy relates to, and that is, is the action

17   between the class or individuals, who have no cause of

18   action currently because they're unmanifested, versus

19   individuals, those same individuals, who, while not having a

20   cause of action, have a claim pursuant to the construct in

21   Grossman.  And so there's a void in that.  They don't have a

22   cause of action, but yet they have a claim.

23        The cause of action won't arise until they

24   manifest.  And as such, there needs to be protection for

25   those individuals until such time as they manifest.  The

1    purpose of the request for the class proof of claim isn't

2    necessarily to prosecute those claims as they manifest, but

3    instead to preserve the status quo until they manifest.

4    Class actions for the purpose of injunctive relief are not

5    unheard of, Your Honor, and that's effectively what this

6    class purports to do.

7            As it relates to the argument that we haven't met

8    our burden with regard to 9014, the burden remains a

9    preponderance of the evidence.  Other than argument, Your

10   Honor, there, there is no evidence as to whether or not we

11   satisfied our burden.  Our class purports to represent

12   unmanifested asbestos claimants either exposed at work or

13   through take-home exposure.

14           The impact of the Court's prior rulings really has

15   no impact, Your Honor.  Our argument isn't inconsistent with

16   what you ruled in the -- with regard to the bar date and

17   your reliance on Grossman.  I was involved in the Grossman

18   case unfortunately, Your Honor.  I represented the Van

19   Brunts as local counsel.  I know all about that case.  That

20   case was an -- that case really largely stems on an

21   application of lookback to try and resolve a one-off

22   exposure by a claimant.  It wasn't constructed with this

23   application in mind.

24           Your bar date order contains no admonition or

25   prohibition against filing a class proof of claim.  It says

1    unmanifested claimants have to file a proof of claim.  It

2    doesn't say no class proof of claims shall be filed.  We

3    don't see it as an inappropriate collateral attack.

4           Throughout the Debtor's response to my motion

5    they've mischaracterized my involvement, and I just raise it

6    as an issue, Your Honor, just so the Court and the record

7    are clear.

8           Hogan McDaniel doesn't have an "S" at the end of

9    McDaniel.  No big deal.  Misspelled repeatedly throughout

10   the response.  Not a big deal.  Bigger, though, Your Honor,

11   is the fact that I'm not a PI law firm.  My firm's not a PI

12   law firm.  It's represented throughout their response that

13   where a PI law firm.  Do I have co-counsel that are PI law

14   firms?  Absolutely.  But I just wanted the record to be

15   clear on that, Your Honor.

16          Your Honor, the prejudice to the unmanifested

17   claimants is real.  If the class proof of claim is not

18   allowed, you'll be left with the one-off Grossman analysis

19   with regard to every individual who comes in and says they

20   didn't get notice.  The purpose of the class is to short-

21   circuit that inquiry without short-circuiting the bar date.

22   The bar date exists.  We understand that.  It's passed.

23          The purpose of this is to coalesce those

24   individuals so that their claims can continue on in light of

25   the bar date, and so that they -- when they manifest, won't

Page 82

1    be prejudiced by what has already occurred.  Their claim

2    will manifest as the Debtors have said.  They don't have

3    cause of action, but they have a claimant.

4              That just doesn't make sense, Your Honor.  I mean,

5    I know it does within the context of the law, but from the

6    unmanifested claimant's point of view, 10 years from now,

7    when all of a sudden somebody shows up with mesothelioma and

8    they have no idea of the bar date and they try to assert a

9    claim, and the analysis is going to be not on whether

10   they're sick or not but on whether or not they got notice of

11   the bar date.  And inherently that just seems unfair, Your

12   Honor.

13             Finally, Your Honor, with regard to the burden of

14   the proof of claim being minimum, there is no impediment,

15   Your Honor.  We filed the claims.  They're after -- they

16   were filed before the bar date.  It's a viable claim.  It

17   includes all unmanifested claimants, and that's our

18   position, Your Honor.  Thank you.

19             THE COURT:  You're welcome.  All right, thank you

20   very much.  I am going to deny the motion for a number of

21   reasons.  First of all, as a preliminary matter, it's a

22   question of the Court's discretion whether to apply Rule

23   7023 to a situation where we're talking about the filing of

24   a proof of claim on behalf of the class.

25             The -- as counsel pointed out and in my experience

1    as well doing independent research, to allow a class proof

2    of claim under the facts and circumstances of this case

3    would be unprecedented.  We don't have an existing class

4    action.  We often see this where we have and existing WARN

5    Act class, for example, that's been certified by this Court.

6    And though a proof of claim is filed on behalf of that

7    class, it's a completely different situation here.  We don't

8    have this pending asbestos manifested or unmanifested injury

9    claim lawsuit pending somewhere, where a class has been

10   certified.

11           We're talking about certifying a class solely for

12   purposes of filing a proof of claim.  And I think that is

13   where -- to allow that would be in effect a collateral

14   attack on what this Court has already done, which is set a

15   bar date as required by the bankruptcy rules, requiring

16   filing by unmanifested claimants as contemplated by

17   Grossman's, and establishing and approving an elaborate

18   noticing procedure that cost several million dollars

19   designed to provide a notice as adequately as possible to as

20   many possible claimants as possible.  None of those matters

21   have been appealed, and they are final orders.

22           Really Mr. Hogan made at the end an impassioned

23   and interesting and perhaps in some ways weighty argument,

24   which was a collateral attack not on this Court, but on the

25   Third Circuit's opinion on Grossman's, drawing the

Page 84

1  distinction between a claim and a cause of action.  That is

2  the law, and the fact that you have a claim at the time of

3  exposure, but not a cause of action until injury, is a

4  distinction the Third Circuit has made and that I have to

5  apply in the context of what my job is.

6              To apply or to allow the filing of a class proof

7  of claim here and fit that into the bar date mechanism

8  that's under the rules really is to try to fit a square peg

9  into a round hole.  It just doesn't make any sense.  If I

10 were to certify however I were to draw the lines, which are

11 unclear to me, I agree with the Debtors from the motion

12 exactly how that class would be technically certified.

13             But if I were to allow a class to file this class

14 proof of claim on behalf of unmanifested claimants, the

15 whole point of the bar date goes away because everybody's

16 covered.  What's the point of the bar date?  And the reality

17 is bar dates are how you operate bankruptcy cases, and

18 they're required by the rules, and they have legal

19 significance, both for reorganizing the estate and for

20 dealing with the claims vs. assets distribution of value.

21             The fact that the claims here are being reinstated

22 as opposed to being distributed, a subset of consideration

23 under a plan, I don't think makes a difference here.  The

24 same principle applies.  So I will not exercise my

25 discretion to apply Rule 7023 at all to the filing of a

Page 85

1    class proof of claim here.

2            In addition, were I to do that, I will assume

3    solely for purposes of this ruling that Rule 23 is met here.

4    And that would be without a prejudice on remand if I am

5    remanded and appealed to actually make a factual finding.

6    But we didn't have an evidentiary hearing, and I'll take the

7    affidavits for these purposes on their face value and find

8    that 23(a) is a satisfied, but I don't think 23(b)(3) is

9    satisfied in this situation because 23(b) says -- (b)(3)

10   says that the Court finds -- this is the order to satisfy,

11   23(b)(3) -- "The Court finds that the questions of law or

12   fact common to class members predominate over any questions

13   affecting only individual matters, and that a class action

14   is superior to other available methods for fairly and

15   efficiently adjudicating the controversy."  I don't believe

16   that in this situation the class action is superior to other

17   available methods.

18           The superior method here is a method that's

19   already occurred, the establishment of a bar date and the

20   establishment of an elaborate notice procedure, which has

21   worked frankly.  It's one way or the other in that we have,

22   at least on the face of the affidavits, three persons who

23   did not receive a mailing from the noticing agent that

24   nonetheless got sufficient notice that they -- prior to the

25   bar date that they were put in a situation where they could

1    file a proof of claim.

2         So I find that (b)(3) would not be satisfied in

3    this situation.  So for those reasons, I will also talk

4    about due process.  I spoke at length at confirmation in

5    overruling the objection to confirmation reiterating my

6    findings as to the issues of due process.  And I would

7    incorporate those, rather than going through this whole

8    process again, into today's ruling.  And just to be clear

9    again, perspective due process is preserved, or, excuse me,

10   is met.  Perspective due process is met by the bar date

11   notice being provided.

12        The issue of whether that due process as applied

13   is sufficient to individual claimants is fully preserved.

14   And that's what Grossman's is about.  So if there are

15   unmanifested claimants, who don't file a proof of claim, who

16   manifest an injury in the future, and who attempt to file

17   some sort of claim and prosecute a cause of action against

18   the reorganized , their ability to argue under Grossman's

19   that the due process I previously approved was insufficient

20   and that their claim should survive, their cause of action

21   should survive, that's fully preserved, and that we'll be

22   decided on a fact-by-fact and a case-by-case basis in the

23   future by whatever judge has to decide those issues.

24        I think that that is sufficient and superior to

25   requiring or allowing the issuance of a class cause of -- or

Page 87

1   class proof of claim in this instance.  So I will again deny

2   the motion on the merits.  And do you have a form of order?

3          MR. ROGERS:  We do, Your Honor.  I -- as you want

4   to point out one provision in the order that I didn't

5   mention in my argument, and that is we have in Paragraph 3

6   that the class proofs of claim that have already been filed,

7   and we have three proofs of claim that have been filed that

8   purport to be on behalf of the class, we would have those

9   expunged from the claims register to the extent that they

10  purport to be filed on behalf of anyone other than the named

11  claimant.

12         THE COURT:  All right.

13         MR. ROGERS:  So we'd put that in the order.

14         THE COURT:  Thank you.

15         MR. ROGERS:  May I approach, Your Honor?

16         THE COURT:  Yes.  Thank you.  I'm going to

17  interlineate under Paragraph 1, where it says, "The motion

18  is denied as set forth herein," I'm going to add, "and for

19  the reasons set forth on the record at the hearing."

20         All right.  With that change, I've signed the

21  order.  We'll take a -- Mr. Husnick, how are we on our

22  witness?

23         MR. HUSNICK:  We're good, Your Honor.

24         THE COURT:  Okay.

25         MR. HUSNICK:  The witness will be available to

Page 88

1    testify.

2          THE COURT:  All right.  Thank you.  We'll

3    reconvene.  We'll take a recess and reconvene at 1:00 and

4    take up the Stewart matter.

5          (Recess)

6          CLERK:  All rise.

7          THE COURT:  Please be seated.  All right.  We're

8    going to continue with the Stewart matter.  And we have Mr.

9    Seitz available on the telephone now.

10          And I don't know if there -- is there any

11    additional thing you want to say before we turn it over to

12    Mr. -- well I'm going to ask Mr. Seitz some questions and

13    then turn it over to Mr. Stewart.

14          MS. YENAMANDRA:  Sure.  Your Honor, again, Aparna

15    Yenamandra from K&E on behalf of the Debtors.

16          We just wanted to say on our behalf Mr. Kotarba is

17    here.  We're happy to do a short direct of him as well.  It

18    will mirror what was in his declarations and his proffered

19    testimony, but defer to Your Honor on whether that would be

20    helpful, given that the scope of the cross should be limited

21    to what was provided on direct.

22          THE COURT:  Okay.  Mr. Seitz, if you -- if you're

23    available to answer just a couple questions and then what

24    we'll do is we'll offer up the witness for cross

25    examination, if anyone wishes to cross examine him.  If you

Page 89

1    want to make an additional direct, that's fine.

2            THE COURT:   Though if you could help the Court

3    with just a recitation of the -- you know, what happened,

4    what was done, you know, what the chronology is from your

5    involvement in April to -- I believe it was April 2015 till

6    your -- till today.  And I understand there was some

7    discovery that may have occurred, so I'm just trying to

8    clarify, for the record, for my own understanding and for

9    Mr. Stewart's understanding, exactly sort of what happened

10   and what you did in your role as counsel.

11           MR. SEITZ:   Certainly, Your Honor.  First of all,

12   when we were retained, the proofs of claim had already been

13   filed and were of record.  They're voluminous documents so

14   the first thing we did after our retention was to review all

15   those records and try to address some of the issues that

16   with had, with our client, about the connections between the

17   records and the various parties in the case.

18           After considerable back and forth with the client

19   on those points, we made the recommendation that discovery

20   be propounded of the Debtors to try to elicit any

21   information or documentation they may have, because the --

22   in the circumstances of the Debtors, there was a lack of

23   access to various documents that the Debtors may have had in

24   their possession.

25           So we did, in consultation with the client,

1    propound those.  The Debtors provided responses to that

2    discovery.  We -- I consulted with the clients about that

3    discovery and the effect of those responses and made

4    recommendations to the client as a result of a combination

5    of the review of all the discovery in the case and the

6    various claims that had been filed and the amendments to

7    claims that had been filed and the records that the client

8    had provided.

9            As of December 4th, we made certain

10   recommendations to the client that I really can't go into

11   because of the attorney/client relationship, but the client

12   was not happy with our recommendations and we allowed

13   additional time for the Debtor to provide -- the client to

14   provide additional information to us.  That was not

15   satisfactory, so on December 8th we provided a written

16   notice to the client that, you know, we were no longer a --

17   we had an impasse in our views as to how the case and

18   prosecution of these claims should be handled and we were

19   disengaging as counsel.

20           And we encouraged the client to get replacement

21   counsel on our behalf.  And we reminded the client that

22   there was an evidentiary hearing scheduled, by the Debtors,

23   for December 16th, and that they should have an attorney for

24   that conference -- or for that hearing.

25           The client provided us with additional information

Page 91

1   that didn't change our mind as to the representation of

2   them.  We communicated that to them, again, reminded them

3   that the hearing was going forward and that they should have

4   counsel and that they should have their counsel contact us

5   so that we could do a substitution.  When that was not

6   forthcoming, we filed a notice of withdrawal of our entry of

7   appearance in the case.

8           THE COURT:  All right.  There was some amended

9   claims filed or another claim filed, I think in -- later,

10  after the representation occurred.  You were not involved in

11  that.  Is that correct?

12          MR. SEITZ:  That's correct.

13          THE COURT:  Okay.  Let's do this.  Why don't you

14  put on your witness for your supplemental direct, and then

15  I'll make him available for cross examination.

16          Mr. Seitz, if you could stay on, I'd appreciate

17  it.

18          MR. SEITZ:  I will, Your Honor.

19          THE COURT:  Please take the stand and remain

20  standing.

21          CLERK:  Please raise your right hand.  Do you

22  affirm you're willing to tell the truth, the whole truth,

23  and nothing but the truth, to the best of your knowledge and

24  ability?

25          MR. KOTARBA:  I do.

Page 92

1          CLERK:  Please state and spell your name for the

2     record.

3          MR. KOTARBA:  Sure.  Steve Kotarba.  K-O-T-A-R-B-

4     A.

5          CLERK:  Thank you.

6          THE COURT:  Thank you, Mr. Kotarba.

7          MR. KOTARBA:  Thank you.

8          THE COURT:  Sorry about the delay.

9          MR. KOTARBA:  Not a problem.

10         MR. GANTER:  Your Honor, Jonathan Ganter of

11    Kirkland & Ellis on behalf of the Debtors.  We prepared a

12    binder of just materials from the docket.  Permission to

13    approach and provide it to you?

14         THE COURT:  Yes.  Thank you.  Did you give Mr.

15    Stewart a copy?

16         MR. GANTER:  Mr. Stewart, you have a copy from

17    beforehand?

18         MR. STEWART:  Yes.  Yes.  Yes, sir.

19         THE COURT:  Okay.

20                   DIRECT EXAMINATION

21    BY MR. GANTER:

22    Q    Mr. Kotarba, could you please introduce yourself for

23    the Court.

24    A    Sure.  Steve Kotarba.  I'm a managing director with

25    Alvarez & Marsal.

Page 93

1    Q    And what exactly does Alvarez & Marsal do?

2    A    Sure.  We provide financial advisory services, we're

3    serving that role with respect to the Debtors in these

4    cases.

5    Q    So, can you elaborate a little bit more on A&M.  Is it

6    okay if we refer to Alvarez & Marsal as A&M --

7    A    Sure.

8    Q    -- you understand that?  You -- or expound a little bit

9    on what A&M's role is with regard to this matter in

10   particular?

11   A    Sure.  With respect to the incident matter, we're

12   serving to lead the process to reconcile the various claims

13   that have been filed in these cases.  So for example, as the

14   claims come in, we're leading the process to -- to -- to

15   undertake to look at those claims, review them and take

16   positions as to their validity.

17   Q    And you're a senior member of the claims evaluation

18   team, correct?

19   A    That's correct.

20   Q    Are you familiar with the proofs of claim filed by Ms.

21   Stewart that are the subject of today's hearing?

22   A    I am.

23   Q    And just to be clear, those proofs of claim are numbers

24   5739, Number 10003 and Number 10982?

25   A    That's correct.

1    Q    Mr. Kotarba, your declaration in support of the 14th --

2    the Debtors' Fourteenth Omnibus Objection is already --

3              MR. GANTER:  -- was moved into evidence this

4    morning, I believe, Your Honor?

5              THE COURT:  Yes.

6              MR. GANTER:  Is that accurate?

7              THE COURT:  Yes.

8              MR. GANTER:  We didn't apply a number to it, but

9    it will be -- that will be Defendant -- Debtors' Exhibit 1

10   in your binder.

11             THE COURT:  Okay.

12   Q    Could you please turn to Tab 1 in your binder, sir.

13   A    I'm there.

14   Q    What was the purpose of A&M and the claims evaluations

15   team of reviewing the proofs of claim as described in your

16   Debtors' Exhibit 1?

17   A    Sure.  We undertake a process to review all of the

18   claims that are filed in the case, as I said earlier, to

19   review them for their validity.  With respect to the

20   Fourteenth Omnibus Objection, as we go through the series of

21   claims, they'll fall into certain categories.  One of the

22   categories that's pertinent here are claims where we think

23   there's no basis, based on the company's books and records,

24   or what we call a no-liability claim.  So one of the bases

25   for the objection, Omnibus 14, was to object to claims for

1    which we thought the estates had no liability.

2    Q    And with regard to Omnibus 14, you reviewed -- the

3    claims investigation team reviewed two of Ms. Stewart's

4    claims.  Is that right?

5    A    That's correct.

6    Q    I'd ask you to please turn to Tab 5 in your binder.

7    A    Okay.  I'm there.

8    Q    Do you recognize what Debtors' Exhibit 5 is?

9    A    I do.

10   Q    And what is it?

11   A    It's Proof of Claim Number 5739.

12   Q    And this -- was this one of the proofs of claim -- Ms.

13   Stewart's proofs of claim that was reviewed related to

14   Omnibus Objection -- the Fourteenth Omnibus Objections?

15   A    It is.

16   Q    And then if you could turn to the next tab, which is

17   Debtors' Exhibit 6.  Let me know when you're there.

18   A    I'm there.

19   Q    Could -- do you recognize this?

20   A    I do.

21   Q    And what is this, sir?

22   A    This is Claim 10003.

23   Q    This is one of Ms. Stewart's proofs of claim that was

24   investigated in relation to your Fourteenth Omnibus

25   Objections?

1   A      It is.

2   Q      Okay.  At a high level, Mr. Kotarba, could you please

3   describe the inquiry that was performed with regard to

4   Debtors' Exhibits 5 and 6, the Proofs of Claim 5739 and

5   10003?

6   A      Sure.  So as the claims come in, we receive, "we" being

7   the A&M claims team, receives those claims.  We'll do our

8   own investigation and review of those claims in an attempt

9   to ascertain the validity of those claims, their ties to the

10  company's books and records, the statements and schedules

11  that have been filed in these cases.  Where we're unable to

12  take a position as to here or need further support to

13  reconcile that claim, we'll reach out to the company, which

14  we did in these cases.

15          So we'll conduct a review, then we'll reach out to

16  the company, give them sort of the results, preliminary

17  thoughts on our review and then elicit their additional

18  support and research to further attempt to reconcile the

19  claim.

20  Q      So before we get to the results of that review,

21  Debtors' Exhibits 5 and 6, can you tell us, as parts of that

22  inquiry, did that involve review of the proofs of claim

23  themselves?

24  A      It did.

25  Q      And did it also involve review of the materials

Page 97

1    appended to the proofs of claim, so attached to them?

2    A    It did.

3    Q    Mr. Kotarba, what did the inquiry regarding Debtors'

4    Exhibits 5 and 6 reveal?

5    A    We were unable to make any sort of connection between

6    the claims asserted and -- either claim, and the Debtors or

7    their estates.  Essentially we determined that the estates

8    had no liability for these claims, because we couldn't

9    determine any sort of connection or nexus between the claims

10    and the Debtors.

11    Q    On that point, you said that the claims had no

12    liability.

13    A    That's correct.

14    Q    Could -- direct you, sir, to Paragraph 5 of Debtors'

15    Exhibit 1, which is, again, your declaration in support of

16    the Debtors' Fourteenth Omnibus Objections.  Let me know

17    when you're there.

18    A    All right.  I'm there.

19    Q    Okay.  If you see at the beginning of Paragraph 5 your

20    declaration states that, "Upon review of the proofs of claim

21    filed against the Debtors in these Chapter 11 cases, the

22    Debtors have identified 61 no-liability claims listed on

23    Exhibit 2 to Exhibit A."  Do you see that?

24    A    I do.

25    Q    Sir, now if you could turn to Tab 3 in your binder.

Page 98

1    And as you're turning there, I'll represent that this is

2    Exhibit A to the Debtors' Fourteenth Omnibus Objections,

3    which is on the docket at 405-2.  Okay?

4    A    I'm there.

5    Q    And then when you're there, if you could turn to -- so

6    do you recognize this, sir?

7    A    I do.

8    Q    Could you please turn to Page 27 of 33, using the

9    numbers at the top?

10   A    I'm there.

11   Q    Or actually, I'm sorry, before we go to 27 of 33, can

12   you please turn to 18 of 33.

13   A    Okay.  I'm there.

14   Q    And explain what this shows.

15   A    Sure.  This is just the cover page of Exhibit 2 to

16   Exhibit A.  So in -- in the context of how we file our

17   objections, we file an Omnibus objection, which would have

18   the narrative that describes the basis for the objection,

19   generally and then we attach exhibits that would list the

20   specific claims that are subject to each type of objection.

21   Q    And is this the same Exhibit 2 to Exhibit A that was --

22   we just looked at in Paragraph 5 of your declaration at the

23   Debtors' Exhibit 1?

24   A    That's correct.

25   Q    All right.  Now, if you could go to 27 of 33.

Page 99

1    A    Um hmm.

2    Q    And I'll direct you to Entries 56 and 57.

3    A    I see those.

4    Q    Okay.  Explain what these show.

5    A    What these do is they simply list out, for the benefit

6    of the claimant and others reviewing the objection, the

7    claimant's name, the case number where the claim was

8    originally filed, and then other particulars with respect to

9    the claim and then there's a column, the last column, which

10    states our reason for disallowance.  And we give the reason

11    why we're disallowing the claim, which ties back to the

12    narrative in the Omnibus objection.

13    Q    And just to be clear, for the record, Entries 56 and 57

14    are they Ms. Stewart's claims, which we looked at as

15    Debtors' Exhibits 5 and 6?

16    A    They are.  Yes.

17    Q    And so the determination was those were no-liability

18    claims?

19    A    That's correct.

20    Q    Sir, now you also -- we also -- in evidence already, if

21    you could turn to Debtors' Exhibit 2.  And what you'll see

22    here is that this is the -- your declaration, in support of

23    the Debtors' Thirty-Third Omnibus Objections.  Do you see

24    that?

25    A    I do.

Page 100

1    Q    Can you please compare the work -- A&M's work and the

2    claims investigations team's work related to the subject

3    matter covered in this declaration with that in Debtors'

4    Exhibit 1?

5    A    Sure.  I mean the review -- the process from the review

6    of the claims, to the vetting of the claims, to placing them

7    on the Omnibus objection and how the objection worked with

8    corresponding exhibits would have been identical in Omnibus

9    33 as it was for Omnibus 14.

10    Q    And Debtors' Exhibit 2, your second declaration here,

11    also uses the phrase "no-liability proofs of claim."  Does

12    that have the same meaning as in Exhibit 1?

13    A    It does.

14    Q    And Mr. Kotarba, you reviewed one -- or the claims

15    investigation team, A&M and the claims evaluation team

16    reviewed one of Ms. Stewart's proofs of claim in connection

17    with the Thirty-Third Omnibus Objections.

18    A    That's correct.

19    Q    If you could turn to Tab 7 in your binder, sir.  It's a

20    heavy lift there.

21    A    It is.  Okay.  I'm there.

22    Q    All right.  Do you recognize this?

23    A    Yeah, I do.

24    Q    And what is it?

25    A    It's Plan Number 5739.

Page 101

1    Q    Actually if -- I'd direct you back up to the top, above

2    that, the stamped number under the barcode.

3    A    Oh, I apologize.  Yeah, Claim Number 10982.  It's the

4    third claim that was filed.

5    Q    And so this is Ms. Stewart's claim, Debtors' Exhibit 7,

6    that was reviewed in connection with Debtors' Thirty-Third

7    Omnibus Objections, right?

8    A    That's right.

9    Q    And at a high level, can you describe the inquiry that

10   was performed with regard to Debtor's Exhibit 7?

11   A    Sure.  It would have been the same as we did with

12   respect to the other claims, in that we would take the

13   claim, review the claim, attempt to identify anything in the

14   claim that would tie to existing records that we have, to

15   assess the validity of the claim.  We would then go back and

16   work with the company to elicit their further assistance to

17   evaluate the claim.  Upon those efforts, once we realized

18   that there was no liability, we would then place it on the

19   appropriate objection.

20   Q    All right.  And that review of this particular claim,

21   would that have involved review of the proof of claim

22   itself?

23   A    That's correct.

24   Q    As well as any materials that had been attached to it?

25   I don't know if there --

1    A    That -- I don't think there was for this one.  But

2    that's correct.

3    Q    Okay.

4    A    (Indiscernible).

5        THE COURT:  That is small print.

6    Q    Okay.  What did the inquiry regarding Debtors' Exhibit

7    7 reveal?

8    A    Similar to the other claims, we were unable to

9    ascertain any liability on behalf of the Debtors for this

10   claim.

11   Q    I'd ask you now to turn to Debtor -- to Tab 4.  And

12   just let me know when you're there.  Actually, I apologize.

13   Before we get to Tab 4, go back to Debtors' Exhibit 2, we go

14   to Paragraph 5.

15   A    Okay.  I'm at Exhibit 2.

16   Q    Okay.  In Exhibit 2, Paragraph 5, do you see, similar

17   to your first declaration, it starts -- it indicates that,

18   in the second line, "The Debtors have identified 81 no-

19   liability claims listed on Exhibit 2 to Exhibit A."  Do you

20   see that?

21   A    Yes.

22   Q    Okay.  Now if you'll turn to Tab 4.  And I'll represent

23   that this is -- on the docket at 6499-2 and it's Exhibit A

24   to the Debtor's Thirty-Third Omnibus Objection.  Are you

25   there, sir?

1    A    Yes.

2    Q    If you could turn to Page 11 of 27, along the top.

3    A    Okay.  I'm there.

4    Q    All right.  And then -- and could you explain what this

5    shows?

6    A    Sure.  This is Exhibit 2 to the same Exhibit A, just

7    identified, to the Thirty-Third Omnibus Objection.

8    Q    Okay.  That was referenced in Paragraph 5 of your

9    Thirty-Third Omnibus Objection?

10   A    That's correct.

11   Q    Now if you can go to Page 25 of 27.

12   A    I'm there.

13   Q    Okay.  And then turn -- look -- direct your attention

14   to Entry 69.  Can you explain what this shows?

15   A    Sure.  Similar to the other claims, this indicates that

16   there is a no -- pending no-liability objection on the

17   Thirty-Third Omnibus Objection to the Stewart Claim 10982

18   and similar to the other claims we give the reason for

19   disallowance as no-liability.

20   Q    Mr. Kotarba, thank you.  Besides -- stepping back,

21   besides what you've already discussed with regard to the

22   Debtors' 14th and Thirty-Third Omnibus Objections and Ms.

23   Stewart's claims, are you aware of any other investigation

24   related to Ms. Stewart's proofs of claim that are reflected

25   at Debtors' Exhibits 5, 6 and 7?

1    A    There was one further investigation.  Ms. Stewart's

2    counsel had reached out to us and propounded discovery to

3    which we prepared responses.

4    Q    Could you please turn to Tab 8 now, sir.

5    A    I'm there.

6    Q    And do you recognize this?

7    A    I do.

8    Q    What is it?

9    A    These are the discover -- the list of discovery

10   requests that we received from Ms. Stewart's counsel.

11   Q    And this -- so these were the subject of that

12   additional investigation that you mentioned?

13   A    That's correct.

14   Q    How many requests are there, total, in here?  Do you

15   know?

16   A    I'm checking.  I believe -- I believe there was 15.

17   Q    Okay.  I want to direct you, just briefly, to a couple

18   of them in particular.  First, if you please look to Request

19   for Production Number 3, which appears on Page 4 of the

20   document.

21   A    Okay.  I'm there.

22   Q    At a high level, can you please explain what this

23   particular request is about and is asking for?

24   A    Sure.  Really Requests 3 and 4 sort of work together.

25   And Request 3, the discovery essentially asking for us to

Page 105

1    investigate and opine on any connections between certain

2    individuals and the Debtors.  And then Question 4 lays out

3    and asked a very similar question but attempts to find ties

4    between certain parcels of land and any of the Debtors.

5    Q     Thank you.  Mr. Kotarba, you're a -- as you mentioned

6    earlier, you're a senior member of the Debtors' claims

7    evaluation team, right?

8    A     That's correct.

9    Q     And can you tell us whether any members of the claims

10   evaluation team conducted any investigation in connection

11   with Debtors' Exhibit 8?

12   A     Yeah, there was extensive additional research into

13   compiling responses to this discovery.

14   Q     Okay.  What can you tell us, in more detail, about that

15   search that was done?

16   A     Sure.  We -- we were able to go back, in conjunction

17   with the company and their resources, essentially went back

18   and looked at any company systems where this information may

19   be recorded, any -- had conversation with any individuals

20   that may have knowledge of either these persons or these

21   parcels.  And then additional research was done into third

22   party external sites, again, to try and -- to determine any

23   sort of connection between either these persons or these

24   parcels.

25   Q     And when you mention third party external sites, that

Page 106

1   includes public records?

2   A    That's correct.

3   Q    How about -- what -- are you -- have anything more you

4   can tell us about the software systems that were examined?

5   A    Sure.  There -- there was -- I know there was -- it was

6   an accounting software system maintained by the Land

7   Department and then there were also certain databases that

8   -- that related to current and former customers of the

9   Debtors, and Ms. Stewart had appeared as a former customer,

10  so we checked those databases as well.

11  Q    Mr. Kotarba, what, if anything, can you tell us about

12  the results of the investigation you just described, in

13  response to Debtors' Exhibit 8?

14  A    After those results, again, we were unable to find any

15  connection between any of the parties identified, or parcels

16  identified and the Debtors.

17  Q    Does that include -- was -- did you find any connection

18  between the Debtors and the -- any of the property or

19  parcels of land described?

20  A    We did not.

21  Q    How about -- did the searches reveal anything with

22  regard to Debtors' operations that were -- purportedly

23  touched the property?

24  A    We -- we didn't find any identify -- any instances of

25  that.

1    Q    And so did the investigation, in response to Debtors'

2    Exhibit 8, return any requests that were responsive to the

3    documents in any way?

4    A    They did not.

5         MR. GANTER:  Your Honor, at this time the Debtors

6    have no further questions for Mr. Kotarba right now but

7    would ask to move the following exhibits used during the

8    direct examine into evidence, those being DX-1, DX-2 --

9    well, which are already in evidence, my apologies.  So it

10   would be -- right now we would move in Debtors' Exhibit 3,

11   Debtors' Exhibit 4, Debtors' Exhibit 5, Debtor's Exhibit 6,

12   Debtor's Exhibit 7 and Debtors' Exhibit 8.

13        THE COURT:  Any objection to the admission of

14   these documents into evidence?

15        MR. STEWART:  I would object to --

16        MR. SEITZ:  Your Honor, just -- Your Honor, just

17   as a point of clarification, Gary Seitz here.  Is Debtors'

18   Exhibit 8 the request and the responses?

19        THE COURT:  I believe it is just the request.

20        MR. GANTER:  That's correct, Your Honor, it's just

21   the request.  That were used --

22        MR. SEITZ:  I think it would be fair -- it would

23   be fair if it was both the request and the responses.

24        MR. GANTER:  That's not a problem for us, Mr.

25   Seitz.  We can add those as an additional exhibit.

1          THE COURT:  All right.  We'll add those as Exhibit

2    9 then.  You can have time to put that together, obviously.

3          MR. GANTER:  Okay.

4          THE COURT:  Mr. Stewart, you were going to say

5    something?

6          MR. STEWART:  DX -- I believe it's going to be DX-

7    7, you want -- they want to say this is a claim for Mrs.

8    Stewart.  That's incorrect.  On the backside of it it says

9    Kenneth Stewart, Pro Se.  That was my claim.  Or

10   (indiscernible) --

11         THE COURT:  All right.  Well, the exhibit sort of

12   speaks for itself.  It says what it says.  And I'll take it

13   based on what it says and we can discuss what it means

14   later.  But as a matter of evidence, it says what it says.

15         MR. STEWART:  So what kind of search engine did

16   you use to --

17         THE COURT:  All right.  Wait.  Hang on, we're not

18   there yet.

19         MR. STEWART:  Okay.

20         THE COURT:  All right.  So I'm going to admit

21   Documents 1 through 8 into evidence, pending 9 which will be

22   the responses.

23         MR. GANTER:  Um hmm.

24         THE COURT:  So admitting 8 and subject to

25   admitting 9.

1          And at this point, unless you have any further

2      questions, I'll turn the witness over for cross?

3          MR. GANTER:  No further questions.  But we also

4      wanted to add, with regard to some of the filings on the

5      docket, that for purposes of completing the record, with

6      respect to the Stewarts' proof of claim, that we also

7      request that the Court just take notice of four other

8      filings that were on the docket related to this, just for

9      completeness of the record.

10          THE COURT:  All right.

11          MR. GANTER:  And those would be, they're docketed

12      at Number 5384, Number 5716, Number 6101 and Number 6934.

13          THE COURT:  And what are they?

14          MR. GANTER:  They are -- Number 5384 is a letter

15      -- and these are -- I believe I have the exact description

16      from the docket, it's a letter and statement of facts and

17      that includes one exhibit.  And this was I believe docketed

18      by Mr. Stewart.

19          THE COURT:  Okay.

20          MR. GANTER:  5716 is a statement of facts

21      amendment to the statement, with additional information,

22      dated 8/25/15, again, Mr. Stewart.

23          There is a -- Entry 6101 is a letter regarding

24      time to hire an attorney to file an adversary dated 9/18/15,

25      Mr. Stewart, and then 6934 is an additional letter filed by

Page 110

1   Mr. Stewart along with the exhibits.  That's just for

2   completeness of the record, Your Honor.

3           THE COURT:  Okay.  Thank you.

4           MR. STEWART:  May -- can I say something?

5           THE COURT:  Yes, why don't you take the podium, if

6   you don't mind.

7           MR. GANTER:  I'll just get out of your way.

8           MR. STEWART:  On 8/18/2015 you appointed Mr.

9   Sassower to discuss with me the questions that I was asking

10  for.  He did not give me any of the information that I asked

11  for.  I had my family lawyer counsel ask for the same

12  information and nothing was given to him.  And it was

13  appointed -- it was appointed that day that he was supposed

14  to disclose information to me, and it wasn't disclosed at

15  all.

16          THE COURT:  Okay.  Do you have questions for this

17  witness?  Let's take this one step at a time.

18          MR. STEWART:  In my -- in my -- in my paperwork

19  I'm -- I'm ready, but I just got this book at 12:00 o'clock,

20  and it's going to take me a second to pull up the easements.

21          THE COURT:  Okay.

22          MR. STEWART:  The easements have already been

23  entered in as a record.

24          THE COURT:  They're part of what has been entered

25  into admission?

1          MR. STEWART:  Yes, and thus my question is, if

2     they've already been entered in as a record, he should have

3     been able to find those easements and tracked it back.

4          THE COURT:  All right, well you can examine him on

5     that.

6          MR. STEWART:  And as a record, I went to the PUC,

7     and for some reason, they have the arm of KSU, the attorney

8     general has that information, and I put a Freedom of Request

9     in for that information, because I have the nuclear energy

10    policy for the nuclear power plant in the state of Texas.

11         THE COURT:  All right, do you have any questions

12    for the witness?

13         MR. STEWART:  Yes.  It's going to be --

14         THE COURT:  Which exhibit number?

15         MR. STEWART:  It's going to be Exhibit DX-6, Page

16    2 of 15.  But it's really not labelled.  It's going to be

17    where -- the pages are not numbered.

18         THE COURT:  Did you say you had these documents

19    sort of separate already?

20         MR. STEWART:  Yes.

21         THE COURT:  We can work off that, if that's

22    easier.

23         MR. STEWART:  Oh, well it's going to be -- okay.

24         THE COURT:  If not, that's fine.  We'll figure it

25    out.

1              MR. STEWART:  It's going to say Gifco Properties,

2       it's going to be --

3              THE COURT:  About how far in are we?

4              MR. STEWART:  Three quarters of the way in.

5              THE COURT:  Okay.  Can you approach it, give your

6       copy to the witness?  Would that be acceptable?  Maybe I can

7       -- actually, can you let me see it real quick, and I'll see

8       if I can find it in my own binder.

9              MR. STEWART:  It's going to be 3 of 15, it's going

10      to be on the bottom side.

11             THE COURT:  Got it.  I'm there.  Thank you,

12      counsel.

13             MR. STEWART:  It's going to be the Texas Electric

14      Service Company.

15             MR. KOTARBA:  What page are you looking at?

16             MR. STEWART:  3 of 15.

17             MR. KOTARBA:  Okay.

18             MR. STEWART:  It's going to be the Texas Electric

19      Service, TU, Texas Utilities, probably.

20             THE COURT:  All right, which one?

21             MR. KOTARBA:  It's going to be 3 of 15, it's going

22      to be your 6572, it's going to be the Gifco property.

23             THE COURT:  Okay, what's the question?

24      Q    I'm asking, does he recall researching the Texas

25      Utility Service Company?

Page 113

1   A    I don't have independent recollection of researching

2   this particular line, but we did research the claim, and all

3   the supreme documentation, and were unable to determine a

4   tie between the Debtors and your claims.

5   Q    It's going to be TXU Electric.

6   A    I'm not sure that that is --

7   Q    So these are all easements that are on our property.

8   A    Okay.

9   Q    From Trinity River, to Montague County.

10   A    Where's the reference to Trinity River?

11   Q    (Indiscernible), if you researched it, you would admit

12   it's right by the Trinity River, right here.

13   A    Okay.

14   Q    So I --

15   A    I don't know what you're asking.

16   Q    Did you personally research this information yourself?

17   A    I did not personally research it, no.

18   Q    On the next page, it's going to be Gifco Properties,

19   with the resolution.  It's going to be resolution trust.

20         THE COURT:  Which page?  415?

21         MR. STEWART:  That's going to be 415.  It's about

22   three quarters of the way down the page.  You can see

23   resolution, it's going to be resolution trust.  Do you see

24   that?

25         MR. KOTARBA:  I don't.

Page 114

1          MR. STEWART:  It's going to be on Page 415.

2          MR. KOTARBA:  Okay.

3          THE COURT:  Dated February 16th, 1973, is that

4    correct?

5          MR. STEWART:  Yes.

6          THE COURT:  I don't see trust, but it does say

7    resolution.

8          MR. STEWART:  It's resolution trust, because it's

9    how we acquired the prop -- or we had to save it.

10          THE COURT:  DO you see it, sir?

11          MR. KOTARBA:  I don't.  I wonder if I have the

12    same page.

13          THE COURT:  Page 415.

14          MR. KOTARBA:  Yep.

15          THE COURT:  About two-thirds down, you'll see the

16    dates on the left.  It's dated February 16th, 1973, the

17    grantee is Gifco Prop, and then it says Doc Type Legacy

18    Number, the word Resolution.

19          MR. KOTARBA:  Oh, got it, got it, I do.

20          THE COURT:  All right, and the question then.

21    Q   Do you recall going over this particular document,

22    because it's going to be all of the set track?

23          THE COURT:  Do you recall going over this

24    document?

25    A   I don't.  Others reviewed it, and they reported back to

Page 115

1  me.  I didn't review this individually.

2  Q    So have you ever went over this information?  So you

3  physically went over the information that I submitted to

4  Court?

5  A    We went through your documentation, and then others at

6  my direction went through that review.  I don't recall

7  individually doing this page, no.

8  Q    I actually submit, when I realized that people weren't

9  looking at the -- it's a lot of information to take in -- I

10  actually submitted just bits and pieces, to make it easier

11  on you, so you'd know what to actually look at, and you'd

12  see it.  Did you ever get those papers that I faxed in, to

13  THUMG, it was about five, four pages of this specific

14  document?

15  A    I'm not sure which fax you're referring to.  I mean, I

16  will say that we received the information that you submitted

17  extensively, and I was unable to find a connection.

18  Q    Do you see a connection now, of easements, of the

19  legible easements?

20  A    I would have to take time to review this independently.

21  I can't make a determination from the stand.

22  Q    Okay.  I thought that was part of the discovery.

23         THE COURT:  Part of what was the discovery?

24         MR. STEWART:  Mr. Seitz --

25         THE COURT:  I don't understand what you're asking.

1          MR. STEWART:  Didn't Mr. Seitz ask for this in

2    discovery?

3          THE COURT:  Mr. Seitz found in discovery -- who

4    did the work at A&M in response to the discovery?

5          MR. KOTARBA:  We actually work with persons at the

6    Debtors.

7          THE COURT:  Individuals at the Debtors themselves?

8          MR. KOTARBA:  That's correct.

9          THE COURT:  Where, in Irving, or?

10          MR. KOTARBA:  Out at headquarters, at company

11    headquarters.

12          THE COURT:  At headquarters.

13          MR. STEWART:  On Page 5 of 15, do you see Texas

14    Power and Light?

15          THE COURT:  Where?

16          MR. STEWART:  It's going to be 5 of 15, it's on

17    the next page, it's Texas Power and Light Company, it's

18    another easement.

19          THE COURT:  You mean at the very top there?

20          MR. STEWART:  Yes, sir.

21    A    That's correct.  It's Texas P&L Co.

22    Q    Texas Power and Light Company.

23    A    Well, I can't be certain that that's the same.

24    Q    Okay.  Well, if you researched, it, you would know what

25    it stands for, wouldn't you think?

1    A    I can't tell you from the stand what Texas A&L Co

2    stands for.

3                MR. STEWART:  I don't think there's been discovery

4    done.

5                THE COURT:  What do you mean?

6                MR. STEWART:  I don't think that anybody's

7    actually went over and physically looked at my documents

8    that I've submitted.

9                THE COURT:  Why would you say that?

10                MR. STEWART:  Because they don't even know if --

11                THE COURT:  The man just testified that he did.

12    That he didn't personally do it, but people under his

13    direction did, in consultation with the Debtor.

14                MR. STEWART:  Page 7 of 15.  The Debtor can't

15    object to the information, based on discovery.

16                THE COURT:  No one's objecting to the information,

17    I don't know what you're saying.

18                MR. MONTEMAYOR:  The Debtor has objected to it

19    based on information that was submitted earlier, to these

20    matters, that there is no connection at all with reference

21    to what was demanded from them in the discovery, Your Honor.

22    And they said there's no connection, and there is connection

23    based on these matters here.  I mean, with --

24                THE COURT:  Help me out.  What am I looking at?

25    I'm looking at a spreadsheet, what is this?

1          MR. STEWART:  This is going to be the property --

2          THE COURT:  Property search?

3          MR. STEWART:  No, it's going to be Gifco

4    Properties.

5          THE COURT:  But what is the document?

6          MR. STEWART:  It is transactions and easements for

7    Dallas County.

8          THE COURT:  All right, so this is a public

9    document that you --

10         MR. STEWART:  It's a public, because I did my

11   research on our property.  In 1968, my father gave to the

12   Dallas County/Irving land, let them subdivide.  He retained

13   all rights to the easements, and it was going to be his

14   company that did work on the easements, and I submitted that

15   document into Court today, and I am the beneficiary to that

16   680046, Page 14.

17         THE COURT:  Is -- a couple questions for counsel

18   to the extent you know, is Texas P&L Company, is that a

19   Debtor, a predecessor to a Debtor?

20         MR. GANTZ:  Your Honor, we'd have to go back and

21   check.  I'm not even clear, from Mr. Stewart, whether this

22   is actually something he prepared, or a public filing.  It's

23   just a question.

24         MR. STEWART:  It's my research that I did on, Your

25   Honor.

Page 119

1          THE COURT:  It's a print out a computer search,

2     right?  You put in the word --

3          MR. STEWART:  No, I went to the County Records,

4     and the 680046, Page 14, that I submitted into the docket

5     today, if you do research, they have it blacked out.  I had

6     to go to microfiche, and get it off the computer and I had

7     it certified.

8          THE COURT:  Well, I didn't look at anything that

9     you filed today.  I don't know what you're talking about.

10         MR. STEWART:  Okay.  But some of the documents

11    that are needed, that you have to get, you'll have to go to

12    the County for it, and search off microfiche.  A lot of

13    documents that relate to the easements --

14         THE COURT:  So your claim is, what are these --

15    this is one large tract of land?

16         MR. STEWART:  There's going to be seven tracks of

17    land throughout the State of Texas from Montague County to

18    East Texas.

19         THE COURT:  Okay, and you -- who owns that land?

20         MR. STEWART:  And in Montgomery.  My father and my

21    mother own that land.  Now my mother owns the Montague and

22    East Texas.

23         THE COURT:  She owns the land.

24         MR. STEWART:  She owns what wasn't given away,

25    yes.  But he retained the rights to the easements, and --

1        THE COURT:  What do you mean he retained the

2   rights to the easements?  The right to get paid for the

3   easements?

4        MR. STEWART:  No, but he says, "I'm going to give

5   you the land.  I'm going to let you subdivide --" To

6   dedicate to the public use, the benefit (indiscernible)

7   streets.  I mean, like I said, I had to pull it off

8   microfiche, it's -- "the streets, the alleys, thereon, for

9   all public use in purposes including, but not limited to,

10  all the streets and the rights of the City of Irving, and

11  assigns to the alleys and install and operate and replace

12  his drainage storm sewers, lines, gas lines, telephone

13  poles, and electrical poles.  Says the easements shown on

14  the pact here above grant, dedicate, and reserve for mutual

15  --

16       THE COURT:  Is this from what you filed this

17  morning?

18       MR. STEWART:  Yes, but we here do bind ourselves

19  to the easements, the electrical lines, anything that's on

20  the easements is going to be done by Stewart Company, and

21  it's been documented in 1968, because that's when we're

22  giving the land.

23       THE COURT:  All right.  So I'm just trying to

24  figure out your argument.  So your father --

25       MR. STEWART:  Yes, Kenneth James Stewart.

1          THE COURT:  Granted, or gave, or sold a bunch of

2     land to the City of Irving, Texas.

3          MR. STEWART:  Dallas County.

4          THE COURT:  Dallas County, all right.

5          MR. STEWART:  It goes all the way up to

6     Montgomery.

7          THE COURT:  And the consideration was that he

8     would do all the construction work.

9          MR. STEWART:  Yes, so it would be his companies

10    that do the sewer, the power --

11         THE COURT:  And did that happen?  Did his

12    companies actually do that work?

13         MR. STEWART:  In my investigation, it sure does

14    like TXU, and Oncor, and Edison International, we have

15    claims, a large amount of claims to it.

16         THE COURT:  Well, and the claim is that they

17    double-crossed you, I guess?

18         MR. STEWART:  Yes, with my -- not this, my family

19    lawyer, Charlie B. Mitchell, which he's going to be with

20    some wind energy, with -- my father was one of the providers

21    on that specific document.  Charlie B. Mitchell, I think was

22    with Moody Electric.  I believe they're in debt.  And

23    Douglas J. Brooks, with associates.  And I am the associate.

24         THE COURT:  Okay, all right.  Do you have any

25    other questions for the witness?

Page 122

1            MR. STEWART:  No.  No, not right now.

2            THE COURT:  Okay, redirect.

3            MR. GANTZ:  Hold on one moment, Your Honor.

4            THE COURT:  Mr. Stewart?

5            MR. STEWART:  Yes?

6            THE COURT:  What's your middle -- who are you?

7   Are you Kenneth R. Stewart, are you Kenneth S. Stewart?

8            MR. STEWART:  In 1994, my father put it in a red

9   folder, did not throw away, and it was my TRW from 1994, and

10  he just went back to Edison in 1995 as the ethical counsel,

11  and he was the counsel for the registrant and that -- TRW

12  states that I am Kenneth S. Stewart, AKA Robert, and TRW,

13  just for your information, is owned by Allstate.

14            Allstate, in 2007 went into an agreement with the

15  attorney general, with KKR, and I think that's where my

16  shares have been lost, or what have you.  I went to the Bank

17  of the Mellons, it was 8/25/2015, after I left court.

18            I went to Syracuse, and talked to Bank of the

19  Mellons, I gave them the exact information, my TRW, gave

20  them my driver's license.  I had an Oklahoma ID at the time,

21  and they said, "Well, we need something else to prove about

22  this address," which is my mother's address.  So I went and

23  got my registration out of my truck.  And they said, "We're

24  going to run the check, and we'll get back," and I submitted

25  that document as one of the proofs.  They came back and

1      said, "Kenneth S. Stewart, that --"

2                THE COURT:  That's what I'm confused about.  I'm

3      trying to figure out what your name is.  What's your name?

4      Your name, yeah.

5                MR. STEWART:  I go by Kenneth Robert Stewart.  My

6      father put it as Kenneth S., I'm not sure why.  I think it

7      has something to do with England.  I'm not sure, it's a code

8      of some sort.

9                THE COURT:  All right.  But the social security

10     numbers, I did look at that from Bank of NY Mellon.  They

11     said the social security numbers didn't match, is that

12     right?

13               MR. STEWART:  My social security?

14               THE COURT:  I thought that's what I read.

15               MR. STEWART:  I know, it said the -- I turned in

16     the Edison bond for Kenneth S. Stewart.  They said it came

17     back -- I am Kenneth S. Stewart, but it came back that the

18     bond didn't match what was on the paper.  Instead it went to

19     C, and then to the DTCC, and the DTCC gave it to KKR.

20               THE COURT:  All right.

21               MR. STEWART:  So that's where the mistake has

22     been.

23               THE COURT:  Okay.  Any question?

24               MR. GANTZ:  No further questions, Your Honor.

25               THE COURT:  All right.  Thank you, sir, you may

Page 124

1    step down.  You may be excused, if you wish.

2              MR. KOTARBA:  Thank you, Your Honor.

3              THE COURT:  To go have your deposition taken.  Mr.

4    Stewart, do you have anything else you want to put in front

5    of the Court?

6              MR. STEWART:  My personal opinion, I don't think

7    they have actually done the research telling them that the

8    easements that I've submitted, or as evidence to support my

9    proof of claim.

10             THE COURT:  All right.  Can you flesh that out a

11   little bit, and respond to that -- this argument is, I

12   think, that the plaintiff's prima facie valid, it's your

13   burden to rebut that presumption of validity through

14   evidence.

15             Obviously you've submitted testimony today, as

16   well as representations to the Court, documents, et cetera,

17   and the argument back is, "Look, there's documents here that

18   purport to show easements in favor of Gifco," if I got it

19   right, "Property Company against what might be Debtors, or

20   predecessors to the Debtors, which might give rise to a

21   proof of claim, and how you -- what's your response to how

22   you've rebutted that presumption of validity?"  If that

23   makes any sense.

24             MS. YENAMANDRA:  Your Honor, once again, Aparna

25   Yenamandra, from K&E, on behalf of the Debtors.  Just to

Page 125

1   level-set, a little bit, we did, as I noted, search for

2   books and records before and after filing the objections.

3   We went through the thousands of pages of appended

4   materials, had many of the same conversations that Your

5   Honor had today, in an attempt to figure some of this out.

6   What might be some helpful context is that TXU and Oncor

7   were originally a consolidated entity.

8           Post deregulation, the entity split, and the

9   transmission lines, which seem to be at the heart of a

10  number of the proofs of claim, went with the Oncor entity.

11  That might help provide, shed some light on the confusion

12  here as to the Debtor's relationship to the allegations, and

13  the proofs of claim.

14          The other thing we wanted to clarify while we were

15  up here is with respect to the directive that Your Honor

16  gave in response to the email Mr. Stewart sent to Mr.

17  Sassower, from Kirkland, we understood the directive to be

18  that Mr. Sassower, or his designee, should meet with Mr.

19  Stewart.  Mr. Husnick, who is also here, did in fact meet

20  with Mr. Stewart, just outside, the halls.

21          We continued to correspond.  At that time, they

22  asked for informal discovery on all of the Debtor's

23  corporate records, going back ad infinitum.  We then

24  understood that they retained counsel, so we started to

25  conduct our conversations through Mr. Seitz, who then served

Page 126

1    the formal discovery, which we responded to, and which Your

2    Honor has been made familiar with today.

3              In addition, Your Honor, Oncor's counsel has

4    informed us that we can represent today that they did their

5    own diligence as well, searched their books and records, and

6    found no relationship to the land parcels, the mining

7    operations, the transmission line allegations, the pipeline

8    allegations in their books and records, so we believe that

9    the fact that they did their search, we did our search

10   appropriately addresses the potential confusion associated

11   with TXU and Oncor originally being a consolidated entity.

12             THE COURT:  All right, thank you.  Mr. Stewart?

13             MR. STEWART:  Who is TXU, who is Oncor?

14             THE COURT:  TXU is --

15             MR. STEWART:  Who's registered owner, who's --

16             THE COURT:  Well, Oncor's owned by two entities.

17   Well, three entities.  80 percent owned by EFIH, which is a

18   Debtor, 20 percent is a minority holder, company called

19   Texas Transmission.  Oncor's not a Debtor of this Court.

20   TXU is the business that is in the retail business of buying

21   -- of providing -- what's the word I'm looking for?  It's a

22   retail servicer, or a retail provider of electrical services

23   to customers in Texas, there we go.

24             MR. STEWART:  And Oncor takes care of the

25   transmission?

1          THE COURT:  Yes, and they're a non-Debtor.

2          MR. STEWART:  But they're fixing to sell the

3     asset.

4          THE COURT:  The plan that the Court confirmed

5     sells this control of Oncor -- well, reorganizes the control

6     of Oncor through the EFH entities, and there are new owners,

7     if you will, that are putting new money into the company

8     that will actually own that business, but it's being

9     reorganized.

10          MR. STEWART:  Yes, but I have nuclear energy

11     insurance on a nuclear power plant in the State of Texas,

12     and I want this to be --

13          THE COURT:  That would be, probably Luminant owns

14     that.  Luminant is one of the Debtors.

15          MR. STEWART:  PUC told me that that's TXU.

16          THE COURT:  Well, it used to be called TXU.  It's

17     an alphabet soup.  The whole company, all together, used to

18     be called TXU, and it was divided up into a bunch of

19     different business units and entities, and everybody changed

20     their names.

21          MR. STEWART:  But really, they're owned by the

22     same entity.  I mean, basically it's like take it out of

23     this pocket, put it in the other pocket.  Yeah.

24          But I have a policy on that, and Allstate knows

25     why I have that policy on that, and they know what the

Page 128

1    attorney general, state of Texas, and KKR, when they worked

2    a deal out in 2007 to sell off my asset or dilute my stake.

3          THE COURT:  All right.  Well I have to say, I'm

4    going to rule.  I'm going to grant the objection.  I'm going

5    to disallow all the claims. The claims are prima facie valid

6    under the law.  It's the burden of the Debtors to rebut that

7    presumption.  They've done that through the submission of

8    evidence today that indicates that there is no connection

9    between the Debtors and any of the allegations you have

10   made.

11          I find that evidence to be credible and complete.

12   It would then shift to you to try to convince me otherwise,

13   and I've looked at your documents, I've read what you've

14   submitted to the Court, both previously, and in preparation

15   for today.  So I took my binders home last night, and read

16   everything to prepared for today --

17          MR. STEWART:  What about what I -- oh, go ahead.

18          THE COURT:  Well, you're going to submit papers to

19   the Court at 9:00 before a 9:30 hearing, they're not going

20   to be read.

21          MR. STEWART:  I asked Mr. Seitz to submit them

22   last week, and he resigned.

23          THE COURT:  That's a question between you and Mr.

24   Seitz.  And Mr. Seitz, as your agent, didn't do what he was

25   supposed to do, then you may or may not have claims against

1   him.  I'm not saying you do, but the Court can't be held

2   responsible for any miscommunication between a client and

3   counsel.  So I'm going to sustain the claim objection, and

4   disallow your claims. Can I have a court order?

5           MS. YENAMANDRA:  Yes, Your Honor.  May I approach?

6           THE COURT:  Yes.  Anything further for today?

7           MS. YENAMANDRA:  Nothing from the Debtors, Your

8   Honor, thank you.

9           THE COURT:  Thank you, we're adjourned.

10          MR. STEWART:  Sir, I have to say one thing.

11          THE COURT:  Yes.

12          MR. STEWART:  I typed in my last four digits of my

13  social security number in your search, 5438.  TXU Energy

14  came up.

15          THE COURT:  Okay.  I don't -- all right.  Thank

16  you for that statement.  We're adjourned.

17

18                      *  *  *  *  *

19

20

21

22

23

24

25

Page 130

```
1                      I N D E X

2

3                        RULINGS

4   DESCRIPTION                          PAGE        LINE

5   Motion for Application of Federal Rule    82          19

6   of Bankruptcy Procedure 7023 and to

7   Certify a Class Pursuant to Federal Rule

8   of Civil Procedure 23.

9

10  HEARING re Debtors' Fourteenth Omnibus    128          4

11  (Substantive) Objection to Certain No

12  Liability Claims.

13

14  HEARING re Debtors' Thirty-Third          128          4

15  Omnibus (Substantive) Objection to

16  Substantive Duplicate and No Liability Claims

17

18

19

20

21

22

23

24

25
```

Page 131

1                    C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6     Sonya
      Ledanski
      Hyde

7

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:   December 17, 2015

| & |
| --- |
| **&**  3:3,8,13,19 4:1 4:10,16 5:1,6,16 6:1 6:6,21 7:1,6,11 9:11 11:8 13:2 15:19 18:6 25:11 32:19 34:13 35:19 60:19 76:22 92:11,25 93:1 93:6 |

| 1 |
| --- |
| **1**  40:20 87:17 94:9 94:12,16 97:15 98:23 100:4,12 107:8 108:21 |
| **1.8**  15:23 23:17 |
| **10**  11:19 18:25 27:8 82:6 |
| **10,000**  69:23 71:12 72:24 76:1 |
| **100**  13:8 |
| **1000**  46:6 51:13 |
| **10003**  15:23 25:9 93:24 95:22 96:5 |
| **104**  40:11 |
| **105**  34:7 |
| **10982**  15:25 93:24 101:3 103:17 |
| **10:00**  14:18 |
| **11**  1:4 13:15 34:7 40:15 97:21 103:2 |
| **11501**  131:23 |
| **12,000**  71:12 |
| **128**  130:10,14 |
| **12:00**  110:19 |
| **14**  53:10 94:25 95:2 100:9 118:16 119:4 |
| **14-10979**  1:5 |
| **148**  46:18 |
| **14th**  14:4,8 15:5 37:8 94:1 103:22 |
| **15**  54:22 104:16 111:16 112:9,16,21 116:13,16 117:14 |
| **15th**  37:8 43:20 |
| **16**  1:13 |

| 16th  18:1 90:23 |
| --- |
| 114:3,16 |
| **17**  131:25 |
| **18**  98:12 |
| **1800**  18:20,23 27:6 |
| **19**  130:5 |
| **1968**  118:11 120:21 |
| **1973**  114:3,16 |
| **1986**  30:3 |
| **1994**  122:8,9 |
| **1995**  122:10 |
| **1:00**  48:9,15,24 88:3 |

| 2 |
| --- |
| **2**  97:23 98:15,21 99:21 100:10 102:13,15,16,19 103:6 107:8 111:16 |
| **2.5**  67:5 |
| **20**  38:9 126:18 |
| **2007**  122:14 128:2 |
| **2008**  64:10 |
| **2014**  23:21 |
| **2015**  1:13 17:24 18:2 25:14 37:9 43:20 53:10 54:22 89:5 131:25 |
| **2016**  9:16 |
| **20th**  23:21 |
| **222**  38:8 |
| **23**  2:14 34:4 41:10 43:23 44:9 45:4,6 45:12,12,14 46:9,10 50:4,6 51:17,20 52:5 53:15,16,17,18 53:20,23 55:23,24 56:16 57:17 60:7,13 60:13 61:6 62:6,10 62:15,19,22,25 63:3 63:6,7,21,24 66:22 70:22,24 71:6,25 72:3,6,11 73:8,12 76:6,16,17,18 78:25 79:10 85:3,8,8,9,11 130:8 |
| **25**  103:11 |

| 27  98:8,11,25 103:2 |
| --- |
| 103:11 |
| **273**  46:21 56:9 |
| **2800**  13:11 |
| **294**  46:7 |
| **2d**  51:13 |
| **2nd**  3:14 17:24 |

| 3 |
| --- |
| **3**  11:21 40:21 42:10 53:18,20,23 55:23 55:24 56:16 57:17 60:13 85:8,9,11 86:2 87:5 97:25 104:19,24,25 107:10 112:9,16,21 |
| **300**  131:22 |
| **3001**  78:16 |
| **30th**  25:14 |
| **311**  46:19 |
| **33**  98:8,11,12,25 100:9 |
| **330**  131:21 |
| **389**  64:9 |
| **397**  55:9 |
| **399**  47:20 |
| **3d**  46:7,17,19,21 47:20 54:1 55:9 56:9 |

| 4 |
| --- |
| **4**  40:17 102:11,13 102:22 104:19,24 105:2 107:11 130:10,14 |
| **400**  13:9 |
| **405-2**  98:3 |
| **4050**  17:25 |
| **4051**  18:7 |
| **415**  113:20,21 114:1 114:13 |
| **43**  46:17 |
| **4361**  25:15 26:7 |
| **44**  13:13 |
| **45**  13:16 |
| **457**  46:6 |
| **48**  46:17 |

| 4th  90:9 |
| --- |

| 5 |
| --- |
| **5**  95:6,8 96:4,21 97:4,14,19 98:22 99:15 102:14,16 103:8,25 107:11 116:13,16 |
| **50**  18:19 |
| **501**  40:15 63:7 |
| **501's**  40:15 |
| **5384**  26:2 109:12,14 |
| **5438**  129:13 |
| **55**  13:8 |
| **56**  99:2,13 |
| **57**  99:2,13 |
| **5716**  26:2 109:12,20 |
| **5739**  15:22 25:9 93:24 95:11 96:4 100:25 |
| **583**  54:1 |

| 6 |
| --- |
| **6**  95:17 96:4,21 97:4 99:15 103:25 107:11 111:15 |
| **61**  97:22 |
| **6101**  26:2 109:12,23 |
| **6499**  18:2 |
| **6499-2**  102:23 |
| **6501**  18:7 |
| **6572**  112:22 |
| **659**  40:11 |
| **667**  46:21 56:9 |
| **680046**  118:16 119:4 |
| **687**  54:1 |
| **69**  103:14 |
| **6934**  26:2 109:12,25 |

| 7 |
| --- |
| **7**  40:19 100:19 101:5,10 102:7 103:25 107:12 108:7 117:14 |
| **70,000**  65:23 |
| **7000**  13:7 |
| **702**  40:21 42:10 |

**[7023 - aligned]**

**7023**  2:13 34:3,8,9
  44:20,21,23 62:17
  63:20 72:4 82:23
  84:25 130:6
**7343**  26:8,10 30:10
**7369**  27:15
**737**  64:9
**75**  13:12
**77**  61:24
**776**  46:7
**789**  51:13
**795**  47:20 55:9

**8**

**8**  104:4 105:11
  106:13 107:2,12,18
  108:21,24
**8/18/2015**  110:8
**8/25/15**  109:22
**8/25/2015**  122:17
**80**  126:17
**81**  102:18
**82**  130:5
**824**  1:11
**8th**  90:15

**9**

**9**  108:2,21,25
**9/18/15**  109:24
**901**  40:17
**9010-2**  31:8
**9014**  34:8 62:20
  63:20 72:3 80:8
**904**  40:20
**9:00**  14:17,18,21
  128:19
**9:30**  128:19
**9:43**  1:14

**a**

**a&l**  117:1
**a&m**  93:5,6 94:14
  96:7 100:15 116:4
**a&m's**  93:9 100:1
**abdicate**  49:15
**abid**  8:16
**ability**  57:2 69:7
  86:18 91:24

**able**  32:4,10 52:14
  60:3 64:21,23 70:12
  105:16 111:3
**absence**  43:15
**absent**  74:3 78:13
**absolutely**  81:14
**acceptable**  112:6
**access**  10:6,11
  89:23
**accounting**  106:6
**accounts**  36:6
**accrued**  51:11
**accurate**  94:6 131:4
**achieve**  71:20
**achieving**  52:24
**acknowledged**
  46:15
**acknowledges**  69:1
  69:10
**acquired**  114:9
**act**  29:5 52:10
  78:22 83:5
**acting**  11:24
**action**  36:3 41:8
  45:21 49:18 51:23
  53:22 54:10 56:16
  58:3,6,8 59:2,20
  61:9,18,18 73:25
  74:13 79:16,18,20
  79:22,23 82:3 83:4
  84:1,3 85:13,16
  86:17,20
**actions**  27:1 52:14
  53:23 56:12 57:23
  58:24 59:9 80:4
**active**  39:10
**activities**  23:25
**actual**  22:15 27:22
  36:1,6 53:11 79:8
**ad**  4:11,17 9:17
  11:9,22 125:23
**adapt**  10:15
**add**  78:6 87:18
  107:25 108:1 109:4
**adding**  25:19
**addition**  85:2 126:3

**additional**  14:2
  18:12,15 29:4 88:11
  89:1 90:13,14,25
  96:17 104:12
  105:12,21 107:25
  109:21,25
**additionally**  14:6
  14:22 16:13 18:11
**address**  15:14 22:14
  32:2 45:13 55:3
  89:15 122:22,22
**addressed**  31:24
  43:8 58:19 68:19
  76:6
**addresses**  126:10
**addressing**  77:12
**adequacy**  45:7 52:2
  52:5,8 53:13
**adequate**  52:9
**adequately**  51:19
  51:21 75:19 83:19
**adjourn**  13:24 28:4
**adjourned**  12:12
  129:9,16
**adjudicating**  57:19
  85:15
**adjudication**  56:5
  58:7
**adlerstein**  4:14 11:7
  11:8
**administered**  1:6
**administration**
  41:22 42:6,18 44:19
**administratively**
  54:7
**admissible**  22:16
  35:11
**admission**  21:15,17
  22:19 107:13
  110:25
**admit**  36:25 108:20
  113:11
**admitted**  20:4
  22:18,20 31:10
  34:14
**admitting**  108:24
  108:25

**admonition**  80:24
**adopted**  53:13
**advance**  68:14
**adversary**  62:18
  63:1 109:24
**advisor**  18:6
**advisory**  93:2
**affect**  22:17
**affiants**  36:1,2,13
**affidavit**  34:15,22
  38:10 60:16
**affidavits**  34:18,19
  35:6,8,10,16 36:22
  36:25 38:6 58:15
  60:14 61:1 72:7
  73:1 85:7,22
**affirm**  91:22
**affirmation**  52:12
**afl**  38:23
**afore**  34:8
**agenda**  9:12,14
  12:7,11 13:18 15:15
  15:20 16:2,6,10
**agent**  6:7 17:2 26:1
  29:2 34:23 85:23
  128:24
**agents**  16:8 27:23
  28:2
**aggressively**  11:24
**agnostic**  52:20 53:1
**ago**  29:25
**agree**  9:16 28:4
  35:10,16 84:11
**agreed**  9:17 10:11
  13:24
**agreeing**  11:12
**agreement**  9:25
  10:23 15:3 122:14
**agreements**  10:24
  15:2,4 29:11 30:20
**ahead**  128:17
**aka**  122:12
**al**  1:5
**alberino**  7:17
**alexa**  5:4
**aligned**  50:12

alignment 52:21
allegations 17:18
  23:21 25:20 27:10
  27:17 28:8 30:13
  125:12 126:7,8
  128:9
allege 70:2
alleged 23:24 24:10
  30:13 47:3
alleging 25:18
alleys 120:8,11
allied 38:8
allow 21:12 40:9
  41:18 69:14 83:1,13
  84:6,13
allowance 17:8
allowed 39:25 64:18
  81:18 90:12
allowing 86:25
allows 40:17 63:8
allstate 27:3 122:13
  122:14 127:24
alphabet 127:17
alternative 10:3
alternatives 58:6
alvarez 18:5 92:25
  93:1,6
alves 7:18
amend 23:16
amended 13:18
  14:23 15:2,4,8 16:6
  34:15 91:8
amendment 109:21
amendments 90:6
amer 8:21
america 53:25
american 3:19
  40:10,23 41:3,11
  63:16 70:25 71:18
amount 15:22,25
  23:15 34:23 121:15
amounts 14:3
ample 61:2
analysis 44:12
  62:21 81:18 82:9
analyze 73:9

anderson 5:11
answer 15:10 63:21
  75:7,13 88:23
answers 47:1,3,10
anticipate 77:11
anybody 32:2
anybody's 117:6
apace 76:25
aparna 4:6 8:25
  15:14,18 88:14
  124:24
apart 24:13 28:14
apologies 107:9
apologize 47:22
  48:4,22 49:22,24
  101:3 102:12
apparently 38:14
  38:16 72:18
appeal 67:16,17
  68:1
appealed 83:21
  85:5
appear 25:23 43:14
  68:17
appearance 16:23
  25:13 26:6,8 30:9
  42:19 91:7
appeared 106:9
appearing 9:11
  13:2
appears 71:14
  104:19
appended 24:15,19
  28:21 97:1 125:3
application 2:12
  34:2,19 36:20 40:20
  41:9 62:6,19 64:6
  78:16 80:21,23
  130:5
applied 63:13 64:8
  86:12
applies 42:21 62:17
  84:24
apply 34:9 40:19
  61:3,6,6 62:15,25
  63:3,6,7,21 65:7,9
  65:16 69:20 70:24

71:25,25 72:3,3
  76:16,16,17 82:22
  84:5,6,25 94:8
applying 44:20,21
  62:22,23 70:22
appoint 12:18
appointed 45:16
  110:8,13,13
appointment 67:14
appreciate 12:2
  91:16
approach 20:11
  87:15 92:13 112:5
  129:5
appropriate 10:21
  61:14 63:6 71:22
  74:25 79:11 101:19
appropriately
  42:13 126:10
approved 86:19
approving 9:24
  83:17
approximately 13:7
  13:11,12,16
april 17:24 25:14
  89:5,5
area 72:17
arguably 46:20
argue 34:25 86:18
argued 42:17
arguing 66:4
argument 36:17
  49:2 50:3 60:20,20
  63:9 68:10 71:2
  74:14 80:7,9,15
  83:23 87:5 120:24
  124:11,17
arguments 41:4
  60:21 70:21 74:15
aribe 34:5 38:7 39:6
  43:5 50:20 60:14
arlene 7:18
arm 111:7
arm's 52:11
articulated 41:3
  71:19 76:10

asbestos 12:18
  34:11 37:14,14,16
  38:11,11,15,16,21
  39:5,14,15,19,23
  45:23 46:2,2 47:7
  49:1 50:21,24 51:4
  51:5,6,12 52:19
  54:17 55:4 56:22,22
  56:23 59:7,10,24
  60:6 64:7,16,19
  65:16,20 67:13,20
  69:5 74:17,20 77:12
  80:12 83:8
ascertain 96:9
  102:9
ascertainability
  54:4 55:12
ascertainable 53:22
  53:24 54:3 55:6
ashley 7:19
aside 34:22 63:22
asked 20:21 32:20
  32:23 67:14 105:3
  110:10 125:22
  128:21
asking 29:10 34:8
  40:6 61:11 78:23
  104:23,25 110:9
  112:24 113:15
  115:25
asks 21:10 58:4
aspects 68:6 70:21
assert 24:2 82:8
asserted 28:16,18
  29:3 97:6
asserting 52:24
asserts 24:4,5 30:12
assess 101:15
assessment 30:4
asset 127:3 128:2
assets 84:20
assigns 120:11
assistance 101:16
associate 121:23
associated 126:10
associates 121:23

**assume** 36:13 85:2
**assumed** 13:7,11
  14:25
**assuming** 53:15
**assumption** 13:4
  14:23
**assumptions** 15:6
**assures** 52:9
**at&t** 27:3
**attach** 98:19
**attached** 34:15,18
  34:20 38:6 52:12
  97:1 101:24
**attack** 67:9 68:2,4
  81:3 83:14,24
**attempt** 86:16 96:8
  96:18 101:13 125:5
**attempts** 67:9 105:3
**attendant** 51:6
**attention** 103:13
**attest** 36:10
**attested** 52:11
**attorney** 3:4,9,14
  3:19 4:2,11,17,23
  5:2,7,12,17,22 6:2,7
  6:12,17,22 7:2,7,12
  22:5 31:10 34:12
  51:24 52:13 90:11
  90:23 109:24 111:7
  122:15 128:1
**attorneys** 17:4
  51:19
**atypical** 50:15,19
**authority** 78:19
  79:4
**authorization** 78:24
  79:11
**authorize** 12:19
**authorized** 78:17
  78:21
**availability** 43:21
**available** 23:1 48:6
  57:18 58:6 66:15
  85:14,17 87:25 88:9
  88:23 91:15
**avalanche** 69:15,21

**avoid** 33:1 50:9
**aware** 13:20 16:7
  20:13 36:7,8 37:7
  103:23

**b**

**b** 1:21 8:18 31:8
  45:12 53:15,17,18
  53:20,23 55:23,24
  56:16 57:17 60:13
  78:16 85:8,9,9,11
  86:2 92:3 121:19,21
**b.r.** 40:11 64:9
**baby** 46:17
**back** 20:9 22:24
  32:13 33:11 62:17
  69:2,9,13 89:18
  99:11 101:1,15
  102:13 103:20
  105:16,17 111:3
  114:25 118:20
  122:10,24,25
  123:17,17 124:17
  125:23
**backside** 108:8
**bad** 68:6
**balance** 58:5
**bank** 5:12,17 47:19
  47:20 55:8 122:16
  122:18 123:10
**bankruptcy** 1:1,10
  1:23 2:13 10:9,19
  34:3 40:12,21 41:5
  41:10,23,23 60:4
  62:11 64:10 70:24
  71:3,19,21 73:16
  76:7 83:15 84:17
  130:6
**bar** 16:20 23:14,15
  31:11,25 36:1,7,7,8
  36:10 37:8,25 38:5
  38:25 39:10,24 40:3
  42:2,4 43:24 44:11
  44:14 46:14 53:10
  54:12 58:11 60:3
  62:11 64:6,8,14,15
  64:19,22 65:3,7,10
  65:15 66:5,5 67:11

  67:17 68:14 69:6,8
  69:16 70:1,14 73:15
  77:2,15 78:9,14
  80:16,24 81:21,22
  81:25 82:8,11,16
  83:15 84:7,15,16,17
  85:19,25 86:10
**barcode** 101:2
**barry** 8:2
**bartram** 7:19
**base** 67:2
**based** 17:18 18:13
  23:23 25:5 28:1
  30:12 37:1 49:14
  53:24 94:23 108:13
  117:15,19,23
**baseline** 18:22
**bases** 94:24
**basically** 30:6
  127:22
**basis** 16:14 22:2,8
  25:9,18 27:16 28:18
  44:1 86:22 94:23
  98:18
**beard** 33:20
**beaver** 39:17
**beck** 46:6
**beginning** 22:11
  23:10 77:10 97:19
**begins** 56:10
**behalf** 9:11 11:8
  13:2 15:19 29:5
  34:1,10 35:20 38:1
  40:3 45:25 49:15
  60:19 61:11 68:7
  76:22 78:18,22,24
  82:24 83:6 84:14
  87:8,10 88:15,16
  90:21 92:11 102:9
  124:25
**behavior** 47:14
**believe** 13:25 17:1
  29:22 32:21 35:8
  40:7 50:4 67:5
  69:23 71:12 85:15
  89:5 94:4 104:16,16
  107:19 108:6

  109:15,17 121:22
  126:8
**believes** 28:13
**belongs** 31:24
**beneficiary** 118:15
**benefit** 68:8 99:5
  120:6
**benefits** 71:20
**benjamin** 8:1
**best** 58:19 65:19
  91:23
**better** 17:16 41:12
**beyond** 29:16
**biddle** 6:6
**bielli** 6:21
**big** 81:9,10
**bigger** 81:10
**bill** 77:2
**billion** 11:19 15:23
  23:17
**bind** 120:18
**binder** 92:12 94:10
  94:12 95:6 97:25
  100:19 112:8
**binders** 128:15
**bit** 17:5 93:5,8
  124:11 125:1
**bits** 115:10
**blacked** 119:5
**bmw** 53:25
**board** 10:10,19
**boards** 9:22
**body** 63:12,15
**bolts** 32:7
**bond** 123:16,18
**book** 110:19
**booked** 48:19
**books** 18:12 19:15
  24:8,14 25:6 28:7
  28:22 29:14 94:23
  96:10 125:2 126:5,8
**bottom** 112:10
**brent** 60:18
**brenton** 4:5
**brian** 8:13
**brickley** 7:20

**brief** 13:4 17:12
  61:24 66:25 73:5
  74:14 76:10,23
  79:14
**briefing** 65:5 68:9
**briefly** 14:8 104:17
**briefs** 60:21,22
  72:13
**bring** 17:11 45:24
  54:10
**bringing** 52:13 71:6
**brings** 53:15
**broadest** 58:10
**brooks** 121:23
**brought** 31:18
  43:19 58:24 59:9,9
**brown** 7:6 25:12
**brunt** 37:18
**brunts** 80:19
**buckets** 29:18
**built** 19:6
**bulk** 12:11 23:6
**bunch** 121:1 127:18
**burden** 70:6,7,11
  71:10 80:8,8,11
  82:13 124:13 128:6
**burdensome** 59:3
**busenkell** 7:6 25:11
**business** 9:22 10:12
  10:14,21 11:13
  43:14 55:3 126:20
  126:20 127:8,19
**buying** 126:20
**bye** 64:18

---
**c**

**c** 3:1,22 9:6 40:17
  40:20 123:19 131:1
  131:1
**calculated** 68:23
**call** 29:16 48:10
  49:2 62:14 63:25
  69:15 94:24
**called** 18:15 126:18
  127:16,18
**candidly** 27:16
**capacity** 16:21 17:6
  19:13

**card** 77:17
**care** 13:9 126:24
**carpenter** 3:8
**carpenters** 38:15
**case** 1:5 7:1 9:21
  17:25 20:23 21:4
  22:5,6 23:6 31:17
  34:14 35:14,20
  37:11,17 40:10
  41:16,23,23 42:19
  44:7,7,12,12 47:18
  56:20 57:5 61:8,9
  61:13,15,16,20
  62:13 63:4,11,16,18
  63:19,20,23 64:9,14
  69:17,17 71:9,20
  76:22 78:15 79:10
  80:18,19,20,20 83:2
  86:22,22 89:17 90:5
  90:17 91:7 94:18
  99:7
**cases** 41:11 62:5
  84:17 93:4,13 96:11
  96:14 97:21
**casey** 46:17
**categories** 94:21,22
**catherine** 7:25
**cause** 56:11 61:17
  61:18 69:8 74:13
  79:17,20,22,23 82:3
  84:1,3 86:17,20,25
**caused** 47:4
**certain** 2:7 23:25,25
  25:20 29:9 90:9
  94:21 105:1,4 106:7
  116:23 130:11
**certainly** 21:11,20
  36:12 47:25 73:18
  89:11
**certificates** 24:21
  25:2
**certification** 32:22
  42:12,15 43:15
  50:10 53:3 59:22
**certified** 47:15 61:9
  62:3 64:17 83:5,10
  84:12 119:7 131:3

**certify** 2:13 34:3
  61:17 64:12 72:10
  72:15 78:4 84:10
  130:7
**certifying** 55:23
  60:9 83:11
**cetera** 49:14 65:25
  124:16
**chad** 4:8 9:10 13:3
  32:18
**challenge** 59:19
**challenges** 11:24
**chance** 21:3
**change** 87:20 91:1
**changed** 127:19
**changes** 12:1
**changing** 10:15
  55:18
**channel** 68:18
**channels** 39:12
  66:15 72:19
**chapter** 1:4 97:21
**characterized** 37:16
  37:21 39:2
**charles** 7:14 8:8
  20:15,17 23:19
**charlie** 121:19,21
**check** 14:15 17:17
  28:6,10 118:21
  122:24
**checked** 106:10
**checking** 104:16
**chris** 7:4 35:19
  76:21
**christopher** 1:22
  8:4
**chronology** 89:4
**cio** 38:23
**circuit** 37:12 40:8
  40:24,25 46:4 55:5
  81:21 84:4
**circuit's** 83:25
**circuiting** 81:21
**circumstance** 63:19
**circumstances** 49:9
  62:25 83:2 89:22

**cited** 62:5
**citibank** 6:7
**city** 120:10 121:2
**civil** 2:14 34:4
  41:10 130:8
**claim** 12:20 15:22
  15:24 16:3,5,13,19
  17:5,18 21:8 22:11
  23:11,12,16,18,20
  23:23 24:10,15 25:7
  25:9,16,19,23,24
  26:25 27:19,22 28:9
  28:12,21 29:13
  30:15,20 32:1,15
  34:10 36:2 37:10,17
  37:19 40:1,3,9,14
  41:15,19 42:5,8,11
  42:13,15,25 43:3
  46:23 50:14,15,16
  50:19 51:1,11 52:1
  52:10 53:4,10 54:15
  54:21 57:16,18
  58:10 60:2,3,4,12
  61:7,11,14 62:2,4,7
  62:16,19,23 63:7,8
  63:14 64:3,12,18,22
  64:23,25 65:1,11,13
  66:19,20 68:7,14
  69:5,14,16 70:14,15
  71:11,13 72:23 74:4
  74:4,5,8,18,24 75:3
  76:1,11 78:17,19,24
  79:3,9,11,20,22
  80:1,25 81:1,17
  82:1,9,14,16,24
  83:2,6,9,12 84:1,2,7
  84:14 85:1 86:1,15
  86:17,20 87:1,6,7
  89:12 91:9 93:20,23
  94:15,24 95:11,12
  95:13,22,23 96:4,13
  96:19,22 97:1,6,20
  99:7,9,11 100:11,16
  101:3,4,5,13,13,14
  101:15,17,20,21
  102:10 103:17,24
  108:7,9 109:6 113:2

119:14 121:16
124:9,21 125:10,13
129:3
**claim's** 28:5
**claimant** 16:8 23:13
25:17 27:22 30:7
39:3 43:9 44:3
58:15 62:1 64:20,24
69:3 80:22 82:3
87:11 99:6
**claimant's** 82:6
99:7
**claimants** 4:23 34:1
34:5,7,10 37:9,22
40:2 42:17 43:2,5
43:12 44:5,17 45:24
46:7 47:10 50:10
51:1,3,8 52:19 53:4
53:7,11,19 54:10,15
54:25 55:18,20
56:18,20 58:8 59:3
59:8,15 61:17,21
63:23 65:10,11,20
66:3 67:23 68:20,24
70:22 71:13,14,22
72:4,5,18 73:3,22
75:2,13,18 78:2
80:12 81:1,17 82:17
83:16,20 84:14
86:13,15
**claims** 2:4,7,10
12:16 15:21,24
16:10,20 17:13,15
17:24 18:1,3,17
19:5 24:6,8 27:5,24
28:13,15,16,18,18
29:3,6 30:12,22
34:11 37:9,20,23
40:16,22 41:1,5,14
42:1,3 43:16,25
44:6,10 45:19 46:3
46:18,19 47:17
50:11 51:3 52:15
53:6,8 54:13 56:13
56:24 57:12 58:11
58:16,17,24 59:7,8
59:15,18 60:1,1,6

64:7,16,19 65:8,16
66:4 67:15,15 69:18
69:21,24 70:2 71:1
71:3,6,10 76:3
78:12,13 80:2 81:2
81:24 82:15 84:20
84:21 87:9 90:6,7
90:18 91:9 93:12,14
93:15,17 94:14,18
94:21,22,25 95:3,4
96:6,7,7,8,9 97:6,8
97:9,11,22 98:20
99:14,18 100:2,6,6
100:14,15 101:12
102:8,19 103:15,18
103:23 105:6,9
113:4 121:15,15
128:5,5,25 129:4
130:12,16
**clarification** 107:17
**clarify** 20:16 89:8
125:14
**clarity** 72:14 73:6
**class** 2:13 4:23
12:18,19 32:1,15
34:1,3,5,9,10,13
37:22 39:13 40:4,9
40:16 41:1,5,8,15
41:19,21,24 42:1,3
42:11,11,13,14,17
42:25 43:1,3,4,12
43:15 44:5,13,15,22
44:23,24,25 45:2,15
45:16,24 46:6,7,10
46:13,16,17,23,25
47:1,2,5,9,10,11,15
47:18 50:6,8,9,10
50:11,13,17,19,21
50:25 51:2,3,8,10
51:16,18,20,21,22
51:22,23,25 52:3,5
52:7,8,12,14,22,23
52:23,25,25 53:2,2
53:4,7,11,12,21,22
53:24 54:2,5,8,9,10
54:13,14,15,21,25
55:5,6,8,12,20,24

56:1,7,7,13,18,20
56:21 57:16,18,21
57:24 58:3,6,8,10
58:15,16,19,22 59:2
59:8,8,9,14,18,20
59:22,23 60:9,9,12
61:7,9,10,12,14,16
61:18,20,25 62:1,3
62:4,6,7,16,19,23
63:14,23 64:2,12,12
64:17,18,23,24
65:10,11,13 66:2,19
66:23,24 67:1,14
68:7,10,11,12,16,17
69:14 70:15,22 71:2
71:20 72:4,5,6,8,9
72:15 73:2,6,12,14
73:14,17,21 74:3,4
74:7,7,9,12,13 75:1
75:2,6,9,10,11,12
75:17,20,24 76:2,8
76:11 78:4,17 79:1
79:4,6,7,17 80:1,4,6
80:11,25 81:2,17,20
82:24 83:1,3,5,7,9
83:11 84:6,12,13,13
85:1,12,13,16 86:25
87:1,6,8 130:7
**classes** 44:25 52:16
52:17 56:4
**clatskanie** 39:18
**clear** 28:11,13
36:16 61:20 62:13
62:22 64:4 65:6
72:1 81:7,15 86:8
93:23 99:13 118:21
**clearly** 63:22 66:5
**clerk** 9:7 31:4 48:2
88:6 91:21 92:1,5
**client** 89:16,18,25
90:4,7,10,11,11,13
90:16,20,21,25
129:2
**clients** 11:12 51:20
90:2
**closest** 19:1 27:8

**closing** 60:11
**clothes** 38:19,19
**cno** 33:3
**coalesce** 81:23
**code** 123:7
**cody** 7:21
**cognizable** 53:6
**cognoscente** 28:3
**cohen** 6:9
**cohesive** 56:4
**colinas** 30:3
**collateral** 67:9 68:2
68:4 81:3 83:13,24
**colleague** 15:14
**collier** 7:22
**color** 16:9,24
**column** 99:9,9
**combination** 90:4
**come** 35:11,16
64:21,23 70:2,13
72:4 78:10 93:14
96:6
**comes** 69:4 74:20
81:19
**coming** 61:10 69:16
**commenced** 57:24
**comments** 45:9
**commit** 30:14
**commitment** 12:3
**committed** 10:13
**committee** 3:4 4:11
4:17 5:2,7 6:12
11:9,23 65:18
**common** 46:24 47:2
47:2,3,4,6,13 50:11
51:7 52:24 55:20
56:6,14,18 58:18
85:12
**commonality** 45:7
46:10,11,15,22
47:15 56:14,16
74:11,15,25 75:23
75:23
**communicated** 91:2
**communications**
28:2

community  47:18
  55:8
companies  121:9,12
company  3:20
  11:25 19:10 27:8
  29:24 96:13,16
  101:16 105:17,18
  112:14,25 116:10
  116:17,22 118:14
  118:18 120:20
  124:19 126:18
  127:7,17
company's  12:2,3
  19:1,11 94:23 96:10
compare  100:1
comparison  44:16
compelling  41:4
compensation  9:16
  10:20,24
compiling  105:13
complete  128:11
completely  47:17
  65:12 83:7
completeness  109:9
  110:2
completing  109:5
comply  20:22
comports  58:13
compound  38:16
computer  119:1,6
conaway  4:16
concentrating  58:1
  59:11
concentration
  59:14 76:5,7
concept  74:1,1
concern  44:13
  69:12,21 70:16
concerned  31:14
  78:15
concerns  59:21
  67:22 78:2
concludes  10:25
conditional  14:23
  15:6
conditions  10:15

conduct  41:22,23
  46:24 47:1,2 50:16
  56:6,8,25 57:14
  74:16 96:15 125:25
conducted  18:12
  24:8 42:17 105:10
conference  90:24
confirm  14:3 30:17
confirmation  10:7
  10:22 13:21 67:20
  86:4,5
confirmed  28:22
  67:22 127:4
conflict  52:16 53:2
  53:11,13
conflicts  52:6
confused  123:2
confusion  125:11
  126:10
congress  41:8
conjunction  105:16
connected  24:17
connection  24:9,11
  25:14 29:22 67:19
  97:5,9 100:16 101:6
  105:10,23 106:15
  106:17 115:17,18
  117:20,22,22 128:8
connections  89:16
  105:1
consensual  28:5
  65:22
consensus  63:5
consequently  25:5
  27:24
consider  41:17
  64:13,14
considerable  89:18
consideration  84:22
  121:7
considered  40:24
  42:11,14 57:21
consisted  24:21
consistent  40:20
  41:6 42:18
consolidate  59:13

consolidated  71:3
  125:7 126:11
consolidation  71:1
consortium  7:2
  35:20 76:22
construct  65:9,12
  65:18 69:19 76:12
  79:20
constructed  66:10
  80:22
construction  121:8
constructive  65:24
  72:17,22
consultation  89:25
  117:13
consulted  90:2
contact  31:13 32:4
  91:4
contained  38:14
containing  38:11,16
contains  80:24
contemplated  83:16
contemporaneous
  42:12
contempt  31:14
  50:1
contested  62:22
context  23:7 26:12
  29:8 65:12 68:20
  70:24 71:21 74:2
  82:5 84:5 98:16
  125:6
continue  31:21 48:4
  81:24 88:8
continued  14:8 27:1
  27:11 125:21
continues  31:11
continuing  26:24
contract  2:1 12:10
  13:4,19,22
contractor  39:17
contractors  37:13
  43:6 54:17 55:4
contracts  13:7,12
  13:14 14:6,22,24
control  24:3 59:1
  127:5,5

controlled  23:24
controlling  57:22
  58:23 59:1
controversy  57:19
  79:16 85:15
conversation  49:14
  105:19
conversations
  125:4,25
convince  128:12
copies  18:8
copy  24:20 92:15,16
  112:6
cordoning  77:21
corp  1:5 6:22 40:10
  40:23,23 41:16
corporate  125:23
corporation  30:3
correct  14:15 33:4
  36:15 91:11,12
  93:18,19,25 95:5
  97:13 98:24 99:19
  100:18 101:23
  102:2 103:10
  104:13 105:8 106:2
  107:20 114:4 116:8
  116:21
correctively  11:25
correspond  125:21
corresponding
  100:8
corroon  5:11
cost  10:14 83:18
costs  13:9,13
counsel  16:22 18:15
  20:8,10,13,16,23
  21:2,2 22:24 23:19
  25:22 30:9 31:16
  32:19,22 35:25 49:3
  51:21 52:5,8,9,13
  66:16 79:15 80:19
  81:13 82:25 89:10
  90:19,21 91:4,4
  104:2,10 110:11
  112:12 118:17
  122:10,11 125:24
  126:3 129:3

counselor 60:17
count 73:24
counting 19:8
country 131:21
county 19:17 113:9
  118:7,12 119:3,12
  119:17 121:3,4
couple 9:13 45:4
  88:23 104:17
  118:17
course 28:22 34:18
  37:18 40:15 50:16
  56:11 60:5
court 1:1,10 9:8,20
  11:1,3,5 12:5,22,25
  14:7,11,14,20 15:10
  15:12,16 16:17 17:9
  17:22 18:10 20:4,7
  20:11,18,22 21:1,9
  21:10,11,17,20 22:2
  22:7,13,17 23:3,9
  25:13 26:4,9,14,17
  31:1,5,7,8,9,12,15
  31:18,23 32:20,25
  33:7,10,14,17,19,22
  33:24 34:17,24 35:2
  35:4,18,21 36:4,11
  36:13,14,23 37:6,8
  40:6,18,22 41:3,16
  41:17 43:8,19,22,24
  44:1,10,21 45:20
  46:4 47:22 48:3,5
  48:10,18,25,25 49:4
  49:7,19,21,24 50:2
  52:14 54:22 55:1,24
  55:24 58:4 59:12
  60:17 61:3,6,10,10
  61:11 62:6 64:10
  65:3,9 66:4 67:8
  68:4,17,18 69:4,7
  69:16,20 70:2,25
  71:7,10,15,18,19,25
  72:1,2 74:18,19,20
  74:21,23 76:7,15,17
  76:20,25 77:25 78:3
  79:13 81:6 82:19
  83:5,14,24 85:10,11

87:12,14,16,24 88:2
  88:7,22 89:2,2 91:8
  91:13,19 92:6,8,14
  92:19,23 94:5,7,11
  102:5 107:13,19
  108:1,4,11,17,20,24
  109:7,10,13,19
  110:3,5,16,21,24
  111:4,11,14,18,21
  111:24 112:3,5,11
  112:20,23 113:20
  114:3,6,10,13,15,20
  114:23 115:4,23,25
  116:3,7,9,12,15,19
  117:5,9,11,16,24
  118:2,5,8,15,17
  119:1,8,14,19,23
  120:1,16,23 121:1,4
  121:7,11,16,24
  122:2,4,6,17 123:2
  123:9,14,20,23,25
  124:3,5,10,16
  126:12,14,16,19
  127:1,4,4,13,16
  128:3,14,18,19,23
  129:1,4,6,9,11,15
court's 20:20 28:4
  35:9 41:14 44:19
  58:13,18 60:7,24
  62:21 63:3 64:3
  65:6,7 78:16 80:14
  82:22
courtroom 18:5
  20:9
courts 40:7,17,25
  41:25 42:7,10 46:14
  50:10 63:13 71:5
cover 23:19 98:15
covered 18:20
  84:16 100:3
credential 46:18
credible 128:11
creditor's 6:12
creditors 4:12,18
  11:9,23 13:17 41:21
  42:22

criteria 53:25 54:6
  54:14
critical 11:15
critically 43:21
cromwell 5:1
cross 21:20,22
  22:14,16,22 23:1
  35:24 88:20,24,25
  91:15 109:2
crossed 121:17
css 1:5
culmination 65:4
cumulatively 13:6
cunningham 34:6
  39:4,8,13 43:5
  50:20 60:14
cure 2:1 12:10
  13:13 14:3 15:7
current 10:2,23
  106:8
currently 11:20
  53:24 79:18
customer 16:20,21
  19:12,13 106:9
customers 106:8
  126:23
cut 76:2
cuts 62:14

          d

d 8:1,12 9:6 60:7
  130:1
dallas 19:17 20:17
  118:7,12 121:3,4
dam 8:24
daniel 4:25 6:4,19
  8:10 33:25
databases 106:7,10
date 10:8 11:20
  13:14 14:16 16:20
  23:14,16 27:21
  31:25 36:1,7,7,8,10
  37:8,25 38:5,25
  39:10,25 40:3 42:3
  42:4 43:24 44:11,14
  53:10 54:12 58:12
  60:3 62:12 64:6,8
  64:14,15,19,22 65:3

65:7,10,15 66:5,5
  67:11,17 68:14 69:6
  69:8,16 70:1,14
  73:16 77:16 78:9,14
  80:16,24 81:21,22
  81:25 82:8,11,16
  83:15 84:7,15,16
  85:19,25 86:10
  131:25
dated 109:22,24
  114:3,16
dates 77:8 84:17
  114:16
david 3:11 6:24
davitt 7:23
day 48:19 78:20
  110:13
db 46:20 56:8
deadline 42:9
deal 48:7 76:24
  77:13,20,23 81:9,10
  128:2
dealing 21:13,22
  43:16 84:20
dealt 77:4
debenture 5:22
debt 11:19 121:22
debtor 36:9 41:20
  42:6,21 47:7 52:16
  55:6 59:7 90:13
  102:11 117:13,14
  117:18 118:19,19
  126:18,19 127:1
debtor's 14:23
  15:20,23 18:6,17
  19:4,4,16 22:24
  25:20 27:24 28:25
  35:4 46:2 47:14
  81:4 101:10 102:24
  107:11,12 125:12
  125:22
debtors 1:6 2:6,9
  3:9 4:2 6:2 9:12
  10:17 11:11,15,16
  13:2,6,8,10,11,12
  13:15,18,23 14:3
  15:1,19 17:12,15,19

17:23 18:11 22:22
23:24 24:3,8,13,16
25:1,3,8 27:2,6,11
27:20,25 28:3,4,13
28:16,20 29:7,10,10
29:12,12 30:6,16
34:20,20 37:14 39:9
39:14,20 45:18,23
50:22 51:4 53:13
54:18 55:2,4 56:22
59:10 60:19 65:17
66:7,13,21 67:7
68:2 69:25 70:10
76:14 78:13 79:15
82:2 84:11 88:15
89:20,22,23 90:1,22
92:11 93:3 94:2,9
94:16 95:8,17 96:4
96:21 97:3,6,10,14
97:16,21,22 98:2,23
99:15,21,23 100:3
100:10 101:5,6
102:6,9,13,18
103:22,25 105:2,4,6
105:11 106:9,13,16
106:18,22 107:1,5
107:10,11,11,12,17
113:4 116:6,7
124:19,20,25
127:14 128:6,9
129:7 130:10,14
**december** 1:13 37:8
53:10 90:9,15,23
131:25
**decide** 86:23
**decided** 35:14 86:22
**deciding** 42:5
**declarants** 78:12
**declaration** 18:4,8
21:15 94:1 97:15,20
98:22 99:22 100:3
100:10 102:17
**declarations** 18:7
20:2 22:20 23:6
35:23 88:18
**decline** 72:2 76:16

**dedicate** 120:6,14
**deed** 29:23 30:3
**deem** 10:20
**deer** 38:8
**defeat** 53:13
**defendant** 52:11
94:9
**defendant's** 46:24
46:25 47:1 56:6,8
56:25 57:14
**defendants** 70:9
**defense** 50:18
**defer** 88:19
**define** 75:10
**defined** 54:5,14
74:10
**defining** 73:13,14
75:12
**definition** 54:9
61:19
**definitions** 73:11
**defranceschi** 6:4
**delaware** 1:2,12
32:5 40:12 64:10
**delay** 42:16,21 92:8
**delineated** 41:17
**demanded** 117:21
**demonstrate** 25:2
45:6,8
**demonstrated**
58:15
**denied** 68:1,13
76:15 87:18
**deny** 61:3 63:11
68:3 79:12 82:20
87:1
**denying** 62:15
**department** 19:16
106:7
**depending** 37:2
48:7 52:18
**depends** 75:10
**deposition** 48:13,22
124:3
**deregulation** 125:8
**describe** 96:3 101:9

**described** 19:21
94:15 106:12,19
**describes** 98:18
**description** 109:15
130:4
**descriptions** 24:22
25:2
**designed** 50:21 52:6
66:1,14 83:19
**designee** 125:18
**desirability** 57:25
59:11
**desirable** 59:13,16
**desire** 17:20 60:24
**despite** 39:1
**detail** 24:15 105:14
**determination** 35:9
57:11,12 69:18 72:7
99:17 115:21
**determinations**
47:16
**determine** 37:2
44:1 97:9 105:22
113:3
**determined** 97:7
**determining** 41:18
54:8 57:21
**detrimental** 59:15
**deutsch** 3:8
**deutsche** 5:12,17
**develop** 28:5 59:24
**developing** 56:23
**development** 78:8
**devised** 54:22
**difference** 84:23
**differences** 50:14
**different** 57:3 68:16
73:11 83:7 127:19
**difficult** 73:25
**difficulties** 58:2
**digits** 129:12
**diligence** 22:10
126:5
**diligently** 42:18
**dilute** 128:2
**dip** 6:7

**direct** 21:22 23:6
39:25 40:18 43:7
54:23 65:23 72:16
72:19,21 75:4 88:17
88:21 89:1 91:14
92:20 97:14 99:2
101:1 103:13
104:17 107:8
**directed** 37:12
**direction** 115:6
117:13
**directive** 125:15,17
**directly** 31:13 66:6
**director** 18:5 38:23
92:24
**disability** 53:9
**disagreement** 14:1
**disallow** 128:5
129:4
**disallowance** 99:10
103:19
**disallowing** 99:11
**discharge** 43:17
**discharged** 37:17
**disclose** 110:14
**disclosed** 110:14
**discover** 104:9
**discovery** 18:18,23
19:5,21 29:9 89:7
89:19 90:2,3,5
104:2,9,25 105:13
115:22,23 116:2,3,4
117:3,15,21 125:22
126:1
**discrete** 37:19
**discretion** 34:9 40:7
40:9,22 41:2,18
42:24 43:3,23 60:8
61:6 63:3 65:7
71:25 72:3 76:16
78:3 82:22 84:25
**discretionary** 41:13
62:14,20 63:25
**discuss** 108:13
110:9
**discussed** 68:21
103:21

discussing  23:22
discussion  31:19
  37:1 69:11
disease  39:15 50:25
diseases  56:23
  59:24
disengaging  90:19
disposed  38:5 58:11
dispositive  63:10
dispute  2:2 12:11
distinction  84:1,4
distinctions  59:20
distributed  84:22
distribution  84:20
district  1:2 40:7,12
  40:12 42:10 46:4
  55:24 64:10
divided  127:18
doc  114:17
docket  12:14 17:14
  17:25 18:2,7 25:15
  26:2,2,5,8,23 27:15
  30:10 92:12 98:3
  102:23 109:5,8,16
  119:4
docketed  18:7
  109:11,17
document  29:17
  104:20 114:21,24
  115:14 118:5,9,15
  121:21 122:25
documentation
  89:21 113:3 115:5
documentations
  22:10
documented  120:21
documents  19:19
  19:23,24 29:10
  89:13,23 107:3,14
  108:21 111:18
  117:7 119:10,13
  124:16,17 128:13
doing  12:13 33:1
  49:1 78:25 83:1
  115:7
dollars  11:21 83:18

dominance  75:24
don't  20:24 35:13
doré  7:24
double  14:14
  121:17
douglas  121:23
drafters  41:6
drainage  120:12
dramatically  46:19
  64:4
draw  84:10
drawing  83:25
drinker  6:6
driver's  122:20
dtcc  123:19,19
due  22:9 43:19,20
  44:2,7,17 54:20
  55:18 58:10,17
  67:22 68:19,25 69:1
  69:9,11 70:3,7,12
  78:2 86:4,6,9,10,12
  86:19
duplicate  2:10
  130:16
duplicating  67:4
duplication  70:18
dust  38:11
duty  29:16
dx  107:8,8 108:6,6
  111:15

**e**

e  1:21,21 3:1,1 4:4
  5:2,7 9:6,6 130:1
  131:1
earlier  19:6 37:24
  38:6 45:9 48:23
  56:19 57:6 94:18
  105:6 117:19
easement  116:18
easements  22:12
  29:11 110:20,22
  111:3 113:7 115:18
  115:19 118:6,13,14
  119:13,25 120:2,3
  120:13,19,20 124:8
  124:18

easier  111:22
  115:10
east  119:18,22
ecro  1:25
edelson  6:14
edison  27:3,14
  121:14 122:10
  123:16
educational  38:23
effect  83:13 90:3
effective  10:3,8
  13:14 66:11,12,17
effectively  43:18
  80:5
efficiencies  58:21
efficiency  42:6 58:5
  69:12,21 70:16,20
  71:1
efficient  41:22
  42:18 44:18
efficiently  57:19
  85:15
effort  13:9 59:4
  65:14 67:5
efforts  9:23 69:3
  70:18 101:17
efh  3:20 6:22 19:20
  19:22,24 29:20
  32:20 39:9 55:15
  65:17 77:11,12
  127:6
efih  126:17
eisenhut  7:25
either  14:24 21:12
  24:9 39:25 40:4
  62:5 78:8 80:12
  97:6 105:20,23
elaborate  83:17
  85:20 93:5
electric  112:13,18
  113:5 121:22
electrical  120:13,19
  126:22
element  46:9
elements  56:11,13
elicit  89:20 96:17
  101:16

ellis  4:1 9:11 13:2
  15:19 32:19 60:19
  92:11
email  16:7 125:16
emergence  10:16,19
  12:1
emerges  10:9
emily  4:4 12:24
  13:1
emphasis  78:7
emphasize  61:7
emphasized  67:24
employed  38:9
employees  37:13
  47:9 54:17 55:3
employment  10:24
enacting  10:20
encountered  37:14
  58:2
encouraged  90:20
endeavor  11:15
endorsed  62:6
endures  63:17
energy  1:5 16:21
  111:9 121:20
  127:20 129:13
engaged  29:1
engine  108:15
england  123:7
enhanced  44:19
ensure  55:17 58:10
entail  55:10
enter  15:4 60:8
entered  9:15 10:18
  33:5 62:13 64:7
  65:3 67:25 110:23
  110:24 111:2
entire  73:21,22 75:1
  75:9
entirely  62:20
entities  18:19 27:2
  126:16,17 127:6,19
entitled  43:6 44:3,6
  54:12
entity  19:11 125:7,8
  125:10 126:11
  127:22

entries 99:2,13
entry 9:24 36:21
  91:6 103:14 109:23
enumerated 54:18
equal 42:22
equity 25:21
equity's 78:1
erik 8:19
especially 75:1
essence 79:15
essential 53:22
  56:12
essentially 78:4
  97:7 104:25 105:17
establish 53:19
  55:22 57:13
established 58:18
establishing 16:20
  83:17
establishment
  85:19,20
estate 19:9 41:22
  42:7,19 44:19 60:4
  84:19
estates 95:1 97:7,7
et 1:5 49:13 65:25
  124:16
ethical 122:10
evaluate 55:24,25
  101:17
evaluation 18:17
  19:5 44:7 93:17
  100:15 105:7,10
evaluations 94:14
event 50:15
events 24:23
everybody 49:8
  77:17 78:12 127:19
everybody's 84:15
everything's 14:15
evidence 20:3 21:16
  21:16,18,23 22:8,15
  22:18,19,20 34:24
  35:11,12,16,23
  36:19,22 45:10 54:2
  56:14 61:2 66:7,8
  80:9,10 94:3 99:20

107:8,9,14 108:14
  108:21 124:8,14
  128:8,11
evidences 24:25
evidencing 29:6
evidentiary 22:8
  35:1,13,15 36:18,24
  37:4 45:10 85:6
  90:22
evolved 49:10
exact 109:15 122:19
exactly 14:9 32:6,11
  36:16 71:23 84:12
  89:9 93:1
examination 21:22
  22:14,22 35:24
  88:25 91:15 92:20
examine 21:20 23:1
  88:25 107:8 111:4
examined 106:4
examines 52:2
example 11:18
  29:20 30:3 83:5
  93:13
excess 45:19
excuse 9:8 28:17
  31:25 40:13 86:9
excused 32:21
  33:16 124:1
executory 2:1 12:10
exercise 34:9 40:6,8
  41:18 42:24 43:2
  44:20 78:3 84:24
exercising 43:22
exerting 59:3
exhaustive 30:16
  57:20
exhibit 13:17 94:9
  94:16 95:8,17 97:15
  97:23,23 98:2,15,16
  98:21,21,23 99:21
  100:4,10,12 101:5
  101:10 102:6,13,15
  102:16,19,19,23
  103:6,6 105:11
  106:13 107:2,10,11
  107:11,11,12,12,18

107:25 108:1,11
  109:17 111:14,15
exhibits 96:4,21
  97:4 98:19 99:15
  100:8 103:25 107:7
  110:1
existed 55:15
existence 57:3
existing 83:3,4
  101:14
exists 37:2 61:3
  81:22
expect 14:3 39:11
expected 38:24 49:8
  77:7
expediting 58:20
  59:16
experience 52:4,9
  69:25 71:8 76:3
  82:25
experienced 52:13
explain 22:3 98:14
  99:4 103:4,14
  104:22
explicit 41:8
explicitly 43:19
exposed 37:15
  38:10,13,20 39:14
  40:4 45:1,2 46:1
  50:21,23 51:5 52:18
  56:21 80:12
exposure 37:15
  38:21 39:1,5,22
  40:5 50:24,25 74:17
  80:13,22 84:3
exposures 38:14
  75:4,5
expound 93:8
expunge 28:17
  30:22
expunged 87:9
extending 44:9
extensive 39:1
  105:12
extensively 115:17
extent 30:12 48:10
  51:24 57:23 75:15

75:25 87:9 118:18
external 105:22,25
eyes 78:11

f

f 1:21 7:9,19 8:5,14
  46:7,17,19,21 47:20
  51:13 54:1 55:9
  56:9 131:1
face 30:15 85:7,22
facie 124:12 128:5
facilities 37:14
  45:22 46:2 54:18
facing 11:16
fact 20:23 21:5,7
  36:6 37:23 40:2
  45:23 46:12 55:25
  58:19 64:5,25 67:25
  70:9,10 81:11 84:2
  84:21 85:12 86:22
  86:22 125:19 126:9
factor 43:2 75:25
factors 41:13,17,20
  57:20 73:8,9,10
  76:6,18
facts 23:24 27:12
  30:13 60:25 83:2
  109:16,20
factual 49:12 50:14
  85:5
failed 16:4
failure 42:24 47:8
fair 22:22 107:22
  107:23
fairly 9:12 51:19,21
  57:19 85:14
fairness 58:5
fall 29:17 54:8
  94:21
falls 76:12,13
familiar 93:20
  126:2
family 29:24 30:2
  38:20 39:16 43:10
  50:22,23 54:19
  110:11 121:18
far 31:14 43:3
  69:24 78:9,15 112:3

**fatal** 55:12
**father** 118:11
  119:20 120:24
  121:20 122:8 123:6
**favor** 41:14 62:14
  70:22 71:2 124:18
**fax** 115:15
**faxed** 115:12
**feared** 38:4
**feasible** 54:7
**february** 114:3,16
**feder** 8:1
**federal** 2:12,14 34:2
  34:4 40:21 41:9,9
  52:14 61:10 130:5,7
**fees** 30:5
**felder** 8:2
**fellow** 38:3
**ferrell** 18:21,24
  19:2 27:6
**field** 38:23
**figure** 32:12 111:24
  120:24 123:3 125:5
**file** 15:8 27:25 33:2
  37:9,16 40:1,2,14
  44:5 53:9 54:12
  61:11 62:4 63:8
  64:25 70:14 71:13
  78:19,24 79:3,9,11
  81:1 84:13 86:1,15
  86:16 98:16,17
  109:24
**filed** 16:2,10,19
  17:5,14,23 23:11,14
  23:15,20 25:8,16
  26:1,22 27:12,22,23
  28:12,14,16,16
  32:22 34:10 35:22
  36:2 38:1 40:2,17
  41:1 42:2,3,9,12,15
  45:19 59:7 60:2
  61:1 64:21 66:4
  68:14 71:7,8 72:23
  75:3,25 76:1 77:6
  78:18 81:2 82:15,16
  83:6 87:6,7,10
  89:13 90:6,7 91:6,9

91:9 93:13,20 94:18
  96:11 97:21 99:8
  101:4 109:25 119:9
  120:16
**filing** 12:19 17:15
  24:6 25:10 26:12,13
  26:21 40:9 42:8,14
  62:7 71:10 74:23,24
  76:3 78:9 80:25
  82:23 83:12,16 84:6
  84:25 118:22 125:2
**filings** 15:9 109:4,8
**fill** 51:1
**final** 51:17 83:21
**finalizing** 15:1
**finally** 11:12 19:17
  30:1 44:12 47:13
  57:15 59:18 76:9
  82:13
**financial** 11:18 93:2
**find** 76:17 85:7 86:2
  105:3 106:14,17,24
  111:3 112:8 115:17
  128:11
**finding** 45:15 46:7
  55:12 85:5
**findings** 86:6
**finds** 85:10,11
**fine** 12:22 14:16
  16:17 35:21 37:5
  89:1 111:24
**finger** 6:1
**finish** 22:23,25
**fink** 5:9
**firm** 25:11,13,23
  81:11,12,13
**firm's** 81:11
**firms** 67:14 81:14
**first** 4:11,17 9:14,17
  10:1,5,8,11,13 11:9
  11:19,23 12:9 16:3
  16:10,15 17:12
  18:17 23:14,16,18
  23:24 24:7 25:19
  26:25 27:18 28:7
  42:19 45:13,14
  53:21 54:5 63:21

67:3,13 72:1,10
  76:24 77:10 82:21
  89:11,14 102:17
  104:18
**firsthand** 36:5
**fit** 84:7,8
**five** 115:13
**fixing** 127:2
**flat** 76:12
**flavor** 24:19
**flesh** 124:10
**flip** 70:6
**floated** 17:16
**flood** 44:16 70:1
**focus** 21:13 46:22
  46:25 53:18 56:3,5
  56:12,15 63:24
**focused** 11:23 68:9
  78:8
**foerster** 3:3
**fold** 54:5
**folder** 122:9
**folks** 72:15,16,19,24
  73:15 75:14,19 76:3
**follow** 33:8
**followed** 37:11
**following** 11:10
  12:9 25:10 26:21
  107:7
**force** 42:22
**foregoing** 131:3
**form** 54:15,21,21
  87:2
**formal** 13:15 27:25
  32:24 126:1
**formed** 29:25
**former** 16:21 19:13
  39:16 54:16 106:8,9
**forms** 51:1 58:7
  66:1
**forth** 41:11 54:14
  87:18,19 89:18
**forthcoming** 91:6
**forum** 58:1 59:12
  59:14 71:2,4 76:5
**forward** 10:13
  11:14,25 16:15 72:5

74:6 77:7,13 91:3
**foteini** 9:1
**found** 19:19 24:9,16
  29:15,20 43:19 46:5
  55:5,6 59:13 116:3
  126:6
**four** 13:19,23 109:7
  115:13 129:12
**fourteenth** 2:6 14:9
  15:21 16:3,11 17:24
  24:6 25:8 26:21
  94:2,20 95:14,24
  97:16 98:2 130:10
**frankly** 62:8 66:7
  85:21
**fraud** 25:20
**free** 77:2
**freedom** 111:8
**friend** 66:17
**front** 68:25 124:4
**frost** 38:7
**fully** 86:13,21
**function** 71:6
**fundamental** 53:2
**further** 13:24 16:12
  50:17 51:3,8 55:10
  55:13,22 59:16
  96:12,18 101:16
  104:1 107:6 109:1,3
  123:24 129:6
**furthermore** 59:23
  60:7
**future** 1:5 9:24 10:2
  11:22 67:15 86:16
  86:23
**fuzziness** 61:19
**fyi** 51:23

**g**

**g** 9:6
**gallery** 32:13,17
**ganter** 92:10,10,16
  92:21 94:3,6,8
  107:5,20,24 108:3
  108:23 109:3,11,14
  109:20 110:7
**gantz** 118:20 122:3
  123:24

gap   10:7
garrison   4:10 11:8
gary   7:9 22:5 25:12
   107:17
gas   11:20 120:12
geier   4:4 12:24,25
   13:1,1 14:9,12,19
   14:22 15:13,17
geller   25:11 26:17
gellert   7:6
general   19:17 44:24
   111:8 122:15 128:1
generally   32:5
   37:11 44:23 98:19
generated   13:9
generating   39:17
gentry   4:7
getting   65:15 68:15
   71:7,15,16
gifco   27:4 112:1,22
   113:18 114:17
   118:3 124:18
give   10:11 12:12
   13:4 14:11,12 17:7
   22:17 24:19 26:5,10
   26:15,18 36:11
   50:16 67:1 76:24
   79:10 92:14 96:16
   99:10 103:18
   110:10 112:5 120:4
   124:20
given   45:22 73:17
   88:20 110:12
   119:24
giving   120:22
go   16:15 22:12,15
   32:2 61:17 62:1,20
   63:20 70:18 90:10
   94:20 98:11,25
   101:15 102:13,13
   103:11 105:16
   118:20 119:6,11
   123:5 124:3 126:23
   128:17
goes   10:3 37:2 60:9
   71:24 84:15 121:5

going   9:18 20:7
   21:11 29:15 31:17
   31:21 32:2,8,11,25
   33:1,19 35:23 36:16
   47:23 63:8 66:20,21
   67:18 69:15,17 70:1
   70:2,5 73:7,7,16
   74:6 77:13 78:6
   82:9,20 86:7 87:16
   87:18 88:8,12 91:3
   108:4,6,20 110:20
   111:13,15,16,23
   112:1,2,9,9,13,18
   112:21,21,22 113:5
   113:18,19,21,23
   114:1,21,22,23
   116:16 118:1,3,13
   119:16 120:4,5,20
   121:19 122:24
   125:23 128:4,4,4,18
   128:19 129:3
goldman   8:3
good   9:8,10 12:25
   13:1 14:19 15:18
   33:23,24 62:8,24
   64:18 76:21 87:23
goren   3:6
governed   40:14
grace   64:9
grandfather   77:3
grant   29:23 44:22
   51:24 69:8,13
   120:14 128:4
granted   44:4 66:21
   121:1
grantee   114:17
granting   43:23
grapples   63:2
great   15:13 24:15
   43:18 77:23
grievances   46:12
grossman   37:12
   43:17,22 44:8,13,18
   51:11 53:6 65:9
   69:19 70:8 76:12
   79:21 80:17,17
   81:18

grossman's   83:17
   83:25 86:14,18
ground   10:9
group   9:17 19:9
   32:1 73:19,22 75:18
   75:21
guess   121:17

**h**

hahm   8:4
hal   8:14
hall   49:2
halls   125:20
hand   91:21
handled   90:18
hang   11:3,5 108:17
happen   121:11
happened   25:10
   65:17 71:23 89:3,9
happy   15:10 17:7
   33:18 88:17 90:12
hard   65:18 77:14
hardcopy   19:15
harm   47:4 51:6
   53:6
harmed   56:7
harmonious   51:15
harold   8:7
hazards   47:7,7 51:5
headquarters
   116:10,11,12
heads   73:24
headwinds   11:17
health   47:6 51:5
hear   12:9 26:17
   37:1 60:23,25 61:1
   67:18 69:4
heard   11:5,15 13:22
   21:12 38:25
hearing   2:1,4,6,9,12
   13:22,25 14:5,10,16
   14:18 15:5,9 16:2
   20:8 31:15 35:2,8
   35:15 36:18,24 37:4
   45:11 48:18 49:7
   67:20 85:6 87:19
   90:22,24 91:3 93:21
   128:19 130:10,14

hearings   65:5
hearsay   35:7
heart   61:12 125:9
heat   38:7
heavily   65:21
heavy   100:20
hebbeln   8:5
heightened   62:24
held   42:10 43:24
   129:1
help   89:2 117:24
   125:11
helpful   20:8 23:7
   49:16 88:20 125:6
high   46:14 96:2
   101:9 104:22
highlight   72:12
hinges   78:16
hire   109:24
hit   10:8
hmm   17:9 99:1
   108:23
hoc   4:11,17 9:17
   11:9,23 34:14 44:6
   44:7,7
hogan   4:22,25
   33:22,23,25,25,25
   36:4,5,12,15 37:5,7
   47:22,25 48:4 49:21
   49:23,25 50:3 60:17
   60:23 61:23 63:2
   64:1 66:2,24 68:9
   69:1,10 70:6 79:13
   79:14 81:8 83:22
hogan's   32:16 48:7
   60:20 68:15 74:14
hold   32:8,14 37:23
   50:1 70:16,23,24
   122:3
holder   27:14 126:18
holders   25:21
holding   41:7 51:10
holdings   1:5
hole   84:9
holidays   33:18
home   37:15 38:18
   38:19,21 40:5 45:2

50:25 52:19 75:5
80:13 128:15
**homeowner** 30:5
**hon** 1:22
**honor** 9:10,12,14,15
10:18 11:2,7 12:6,8
12:10,12,20,23 13:1
13:20 15:10,18,20
16:1,22 17:3,11,23
18:9 20:1,5,12,21
20:21 21:10,19 22:4
23:2,4 24:19 26:11
26:20 27:16 30:11
30:21,24 32:18,23
33:4,12,13,16,23
34:1,2,15,16 35:6
35:19 36:5,15,16
37:5,7,11 38:13,18
38:22 40:15 42:1,16
42:20 44:12,21,24
45:5,13,14,20 46:10
46:14,22 47:13,21
47:25 48:12 49:17
49:25 50:1,3,17
51:17,22 52:1,20,21
53:15,18,21 55:19
56:3,10 57:6,10,14
57:17 58:7 59:18
60:5,11,16,18 61:5
62:8,12,14,17 64:15
65:3,17 66:10 67:8
67:16 68:2 70:5
75:6 76:19,21 79:14
79:15 80:5,10,15,18
81:6,10,15,16 82:4
82:12,13,15,18 87:3
87:15,23 88:14,19
89:11 91:18 92:10
94:4 107:5,16,16,20
110:2 117:21
118:20,25 122:3
123:24 124:2,24
125:5,15 126:2,3
129:5,8
**honor's** 16:7,20
17:8 64:5

**hope** 15:4
**hopefully** 28:5
31:22 32:3,10
**house** 28:25
**household** 37:15
**howard** 6:9
**hunter** 18:21,24
19:2 27:6
**husband** 39:21,24
**husnick** 4:8 9:10,11
9:21 11:2,3,4,6 12:6
12:23 13:3 32:18,19
33:4,8,12 48:12,17
48:20 49:1,6,17,20
87:21,23,25 125:19
**husnick's** 11:10
**hwangpo** 8:6
**hyde** 2:25 131:3,8

**i**

**idea** 62:25 76:11
82:8
**identical** 46:18
100:8
**identifiable** 18:22
27:7 43:11 54:25
**identified** 12:11
29:13 55:1 97:22
102:18 103:7
106:15,16
**identify** 12:1 55:7
56:18 101:13
106:24
**identifying** 27:12
**impact** 11:17 35:9
64:2,4,13,15 73:9
80:14,15
**impasse** 90:17
**impassioned** 83:22
**impediment** 71:16
82:14
**impediments** 71:14
**implement** 12:1
**implementation**
58:14
**implemented** 68:23
**implicate** 59:20

**implicit** 54:24
**important** 17:25
73:8
**importantly** 38:22
**impractical** 45:17
45:20
**improved** 55:13
**inadvertently** 16:4
**inappropriate**
45:24 68:1,3 81:3
**inappropriately**
67:10
**incentives** 50:12
52:3,22
**incident** 93:11
**include** 72:15,16,18
72:24,25 75:12
106:17
**included** 18:18
19:14 23:18 41:20
**includes** 72:18 73:2
73:21 82:17 106:1
109:17
**including** 17:13
19:8 57:21 74:16
120:9
**inclusion** 23:5
**inconsistent** 80:15
**inconvenient** 49:8
**incorporate** 86:7
**incorrect** 108:8
**increased** 10:6,11
**indenture** 3:14,20
5:23
**indentured** 32:20
**independent** 25:5
83:1 113:1
**independently**
28:23 115:20
**indicated** 38:6
**indicates** 102:17
103:15 128:8
**indicating** 16:10
19:19,23
**indication** 19:21
69:24 73:18

**indications** 38:10
**indicative** 63:13
**indirect** 65:24
**indiscernible** 5:19
17:21 27:4 29:21
30:5 33:17,20,21
41:15 45:14,15
55:25 102:4 108:10
113:11 120:6
**individual** 44:5
54:13 55:11,21 56:2
57:5 58:17 59:1,3,7
60:2 64:22 74:5
81:19 85:13 86:13
**individualized**
44:17 47:16 55:13
56:14
**individually** 21:12
57:22 58:9,23 76:1
115:1,7
**individuals** 38:2,20
44:25 45:21 52:17
56:21 57:8 63:8
79:17,19,19,25
81:24 105:2,19
116:7
**ineffectiveness** 47:8
**inefficiency** 70:20
**infinitum** 125:23
**infirmed** 58:14
**informal** 13:16 28:2
125:22
**information** 17:16
18:13 20:25 21:5,6
89:21 90:14,25
105:18 109:21
110:10,12,14 111:8
111:9 113:16 115:2
115:3,9,16 117:15
117:16,19 122:13
122:19
**informed** 126:4
**inherently** 82:11
**initiative** 72:25
**injunctive** 80:4
**injured** 42:22

**injuries** 39:23 43:16
50:8 57:7 58:25
59:4 69:16
**injury** 46:16 51:9
51:12 61:22,25 69:6
74:21 83:8 84:3
86:16
**inner** 53:2
**inquiries** 13:17
**inquiry** 52:5 54:4,5
56:6,10 81:21 96:3
96:22 97:3 101:9
102:6
**insider** 9:16
**install** 120:11
**instance** 53:17
57:17,25 63:1,21
71:18 87:1
**instances** 23:12,13
30:7 106:24
**instant** 59:14
**insufficient** 86:19
**insulator** 38:7,8
39:5
**insurance** 24:21
27:3 46:18 127:11
**insurmountable**
59:19
**intent** 41:6
**interest** 19:20 24:2
24:5 27:13 50:7
51:21 52:3,6,22
57:22 58:22,25
**interested** 77:12
**interesting** 83:23
**interestingly** 38:17
39:23
**interests** 25:12
51:19 52:25 75:19
**interlineate** 87:17
**internal** 19:7
**international** 27:4
27:14 121:14
**internet** 19:18
**interpret** 73:5
**interpretation** 41:4

**interrupt** 26:4,19
**interrupting** 14:7
**intersect** 19:3
**introduce** 92:22
**invalid** 30:15
**investigate** 105:1
**investigated** 95:24
**investigation** 19:4,6
24:14 95:3 96:8
100:15 103:23
104:1,12 105:10
106:12 107:1
121:13
**investigations**
100:2
**investing** 77:22
**investment** 56:8
**investments** 46:20
**investor** 7:2 35:20
76:22
**invited** 21:24
**involve** 96:22,25
**involved** 19:6 80:17
91:10 101:21
**involvement** 81:5
89:5
**irving** 18:24,25
116:9 118:12
120:10 121:2
**issuance** 65:22
86:25
**issue** 21:21 25:4
30:18 35:13 36:10
48:9 51:17 57:11
61:5 63:2 64:11
68:19 78:21 81:6
86:12
**issues** 2:2 12:11,15
14:1 45:8 48:11
56:18 57:24 60:10
74:16,17,19 86:6,23
89:15
**it'd** 45:20
**it'll** 49:16
**item** 15:15,20
**items** 17:13

**j**

**j** 4:8 5:4 6:4 121:23
**jacob** 4:14 11:7
**james** 5:21 120:25
**january** 13:24 14:4
14:8,9 15:5 64:6
65:4 67:10,10 77:8
**jeanne** 34:12 51:23
60:16
**jeld** 37:18
**jersey** 40:13
**job** 84:5
**joe** 34:5 38:7
**join** 45:21 73:25
74:7
**joinder** 35:22 45:16
45:24 74:1,2
**joint** 38:16
**jointly** 1:6
**jonathan** 4:7 8:12
92:10
**jones** 3:13
**joseph** 3:16
**journey** 63:20
**judge** 1:23 86:23
**judicial** 58:21 65:15
**julien** 34:13
**july** 37:8 43:20
54:22 64:7
**justin** 6:14

**k**

**k** 4:20,25 6:14 8:11
92:3
**k&e** 88:15 124:25
**kaplan** 8:7
**keenly** 77:11
**keep** 77:20
**ken** 28:11
**kenneth** 8:20 17:2
29:22 108:9 120:25
122:7,7,12 123:1,5
123:6,16,17
**kent** 7:22
**kevin** 8:24
**key** 78:8

**kind** 17:12 24:25
25:3 26:24 29:15
63:18 77:4,6 108:15
**kink** 78:20
**kirkland** 4:1 9:11
12:24 13:2 15:19
16:7 26:3,24 29:1
32:19 60:19 77:15
92:11 125:17
**kkr** 122:15 123:19
128:1
**klauder** 6:21,24
**knew** 28:6 47:7
**knock** 9:13
**know** 10:1 14:20
20:24 22:2 27:16
32:4 34:24 35:15
36:5 40:15 49:8,8
49:10,21 59:8 61:13
61:19 63:4 65:2,14
66:5,7,8,20 68:6
69:5,7 70:25 71:8
77:21 78:7 80:19
82:5 88:10 89:3,4
90:16 95:17 97:16
101:25 102:12
104:15 106:5
113:15 115:11
116:24 117:10,17
118:18 119:9
123:15 127:25
**knowledge** 51:4
54:12 91:23 105:20
**known** 59:7
**knows** 31:17 65:17
127:24
**koster** 8:8
**kotarba** 18:4,4,16
22:21 23:8 48:13
88:16 91:25 92:3,3
92:6,7,9,22,24 94:1
96:2 97:3 100:14
103:20 105:5
106:11 107:6
112:15,17,21
113:25 114:2,11,14
114:19 116:5,8,10

124:2
**kotarba's** 18:8 20:2
23:5
**kovensky** 8:9
**kranzley** 5:4
**ksu** 111:7
**kukja** 16:19 29:23

**l**

**l** 7:17,23
**labelled** 111:16
**labs** 40:11 41:7
**lack** 17:16 42:21
72:14 73:6 89:22
**land** 18:20,22,25
19:16 23:25 24:1,9
24:11,17,24 25:1,2
27:5,7 28:23 29:13
30:2,18 105:4 106:6
106:19 118:12
119:15,17,19,21,23
120:5,22 121:2
126:6
**language** 43:25
**large** 34:23 73:19
119:15 121:15
**largely** 34:19,23
40:1 63:15 80:20
**larger** 73:2
**las** 30:3
**late** 74:24
**law** 5:22 25:11 37:1
37:11 46:12 57:3
58:19 59:20 60:25
61:3 63:5,12,15
78:11 81:11,12,13
81:13 82:5 84:2
85:11 128:6
**laws** 57:5
**lawsuit** 83:9
**lawyer** 110:11
121:19
**lays** 105:2
**layton** 6:1
**lead** 47:3 93:12
**leading** 93:14
**lease** 30:20

**leasehold** 19:20
**leases** 18:25 19:10
29:11
**leave** 61:25
**led** 19:4 65:22
**ledanski** 2:25 131:3
131:8
**ledger** 68:5
**left** 50:4 81:18
114:16 122:17
**legacy** 114:17
**legal** 28:25 30:14
51:6,9 53:6 78:7
84:18 131:20
**legible** 115:19
**legislation** 77:1
**legislative** 41:6
**lendiug** 47:19
**lends** 45:23
**length** 52:11 86:4
**leslie** 1:25
**letter** 109:14,16,23
109:25
**level** 96:2 101:9
104:22 125:1
**levels** 10:6,12
**leverage** 64:23
**liability** 2:7,10
16:14 17:18 25:9,18
27:10,19 30:14
51:14 77:21 94:24
95:1 97:8,12,22
99:17 100:11
101:18 102:9,19
103:16,19 130:12
130:16
**license** 122:20
**lien** 3:14 4:11,17
9:17 11:9,19,23
**liens** 10:1,5,8,11,14
**lieu** 68:22
**lift** 100:20
**light** 81:24 116:14
116:17,22 125:11
**likewise** 39:8 45:23
**limitations** 10:22

**limited** 72:21,23
88:20 120:9
**line** 67:2 102:18
113:2 126:7 130:4
**lines** 24:11,18 28:24
30:19 84:10 120:12
120:12,19 125:9
**list** 14:23,25 16:4
22:12 57:20 98:19
99:5 104:9
**listed** 14:17 16:2
23:13 25:17 39:18
97:22 102:19
**litigant** 64:20 74:20
**litigated** 57:24
**litigation** 47:20
51:13 58:1 59:6,12
75:7,25
**little** 72:13 74:25
93:5,8 124:11 125:1
**llc** 6:21 25:12 53:25
**llp** 3:8 4:16 5:1,6,11
5:16,21 6:6 7:1
9:11 60:19
**local** 31:8 38:8
80:19
**logic** 59:14
**long** 52:23 60:10
63:20 65:4,4,14,18
**longer** 90:16
**look** 11:14,25 26:9
26:15 42:7 57:13
63:14 68:5 71:5
72:6,8 73:4,12 74:9
79:1,6 93:15 103:13
104:18 115:11
119:8 123:10
124:17
**lookback** 80:21
**looked** 10:13 40:17
98:22 99:14 105:18
117:7 128:13
**looking** 44:24 57:12
64:11 75:1 112:15
115:9 117:24,25
126:21

**lost** 122:16
**lot** 12:14 61:19
115:9 119:12
**loved** 38:4
**lowenthal** 8:10
**luminant** 19:9
127:13,14

**m**

**m** 3:6,16 8:24
**mail** 43:7
**mailing** 39:25 43:12
55:14 85:23
**main** 21:9 46:11
**maintained** 19:8,16
106:6
**major** 27:13
**majority** 13:18
14:24
**making** 9:23 71:21
**malone** 8:11
**man** 33:16,18,21
48:15,22 117:11
**manage** 60:9
**manageability**
59:21
**management** 10:6
10:12 11:11 58:2
59:19
**managing** 18:5
60:10 92:24
**manifest** 59:25
79:24,25 80:2,3
81:25 82:2 86:16
**manifested** 37:20
39:2,15,22 46:3
51:12 59:5 60:1,4
62:1 70:1 83:8
**manifests** 61:25
**manner** 49:10
**marc** 8:18
**marco** 17:2,4 18:14
20:16 26:1,22 29:2
**marcus** 53:25
**mark** 5:9 7:21 8:5
**market** 1:11 10:15
**married** 43:9

**marsal** 18:6 92:25
  93:1,6
**marshall** 8:12
**massive** 70:20
**match** 123:11,18
**material** 29:4
**materials** 24:15,20
  25:6 26:3,23,24
  27:1,9 28:1,21
  92:12 96:25 101:24
  125:4
**matter** 18:22 31:9
  31:22,24 32:14,15
  33:15 34:24 37:18
  48:7 62:22 72:10
  82:21 88:4,8 93:9
  93:11 100:3 108:14
**matters** 52:3 73:13
  83:20 85:13 117:20
  117:23
**matthew** 8:23
**maximize** 9:22 12:2
**maximum** 52:25
**maximus** 46:6
**mazzocchi** 34:12
**mccracker** 5:6
**mcdaniel** 4:22
  33:25 81:8,9
**mcelroy** 3:8
**mcneill** 5:14
**mean** 49:4 73:24
  74:14 82:4 100:5
  115:15 116:19
  117:5,23 120:1,7
  127:22
**meaning** 74:2
  100:12
**means** 16:25 62:2
  69:14 73:24 108:13
**mechanical** 57:11
**mechanism** 54:7
  59:2 76:8 78:25
  79:10 84:7
**media** 54:23
**meet** 10:21 11:24
  21:2 36:20 47:14
  53:17 63:23 125:18

125:19
**meetings** 29:1
**mellon** 123:10
**mellons** 122:17,19
**member** 18:16
  39:16 43:10 46:19
  47:18 50:22 66:24
  75:17 93:17 105:6
**member's** 46:23
**members** 28:25
  41:21 43:4 44:15
  45:17 46:6,16,17,25
  47:2,5 50:8,17,20
  51:2,16 52:23 53:12
  53:21 54:8,19 55:8
  56:1,2,7,7 57:22,25
  58:22 66:23 67:1
  68:10,11,16,17 75:1
  85:12 105:9
**memorandum**
  67:11
**mention** 65:23 87:5
  105:25
**mentioned** 27:7
  30:10 57:6 74:6
  104:12 105:5
**meredith** 8:15
**merit** 63:9
**merits** 31:19,24
  34:25 37:3 58:5
  87:2
**meso** 43:10
**mesothelioma**
  39:21 82:7
**met** 46:5 73:23
  74:10 76:18 80:7
  85:3 86:10,10
**method** 54:22 55:10
  55:11,17 57:16
  85:18,18
**methods** 54:24 55:1
  57:18 85:14,17
**meyer** 51:23 52:12
  60:16
**michael** 7:23 8:22
  34:5

**michele** 39:16
**michelle** 34:6
**microfiche** 119:6,12
  120:8
**middle** 122:6
**miles** 19:1 27:8
**miller** 5:25
**million** 13:8,10,13
  67:5 83:18
**mind** 80:23 91:1
  110:6
**mindful** 60:24
**mine** 30:19
**mineola** 131:23
**mineral** 24:1
**mines** 24:4
**minimal** 71:11
**minimum** 82:14
**mining** 19:8 23:25
  28:24 30:18 126:6
**mining's** 19:9
**minority** 126:18
**minute** 26:10 31:21
**mirer** 34:12,12
**mirror** 88:18
**mischaracterized**
  81:5
**miscommunication**
  129:2
**misconduct** 47:4
**misspelled** 81:9
**misstated** 69:22
**mistake** 123:21
**mistaken** 74:12
**mitchell** 121:19,21
**mm** 17:9
**moment** 14:11 16:9
  26:4,15,18 61:24
  122:3
**monday** 16:9 37:8
**money** 77:23,25
  78:4 127:7
**montague** 113:9
  119:17,21
**montemayor** 7:11
  7:11,14 17:3,4,14
  17:20 18:14 20:16

20:17,20 21:19,24
  22:3 23:2,19 26:1
  26:22 27:11 29:2
  117:18
**montgomery** 5:6
  119:20 121:6
**months** 65:4
**moody** 121:22
**moot** 64:5
**morgan** 4:20 8:13
**morning** 9:9,10,13
  12:25 13:1,3 15:18
  16:9 27:11 33:23,24
  49:9 76:21 94:4
  120:17
**morris** 5:21 8:14
**morrison** 3:3
**mortgage** 29:21
  47:19
**mother** 28:14
  119:21,21
**mother's** 122:22
**motion** 2:12 9:16
  12:17 31:7,25 32:1
  34:2,16,25 35:9
  36:17 38:1 42:1,2,7
  42:11,14,23 43:23
  44:4,22 45:25 51:25
  52:12 61:2,4 62:15
  69:14 79:2,12 81:4
  82:20 84:11 87:2,17
  130:5
**mount** 67:9
**movant** 54:1
**move** 20:1 32:15,18
  34:7 45:12 48:20
  107:7,10
**moved** 14:25 48:15
  59:25 63:15 94:3
**moving** 77:7,9
**multiple** 19:7 65:5
  65:5 68:20
**mulvaney** 3:8
**mulvihill** 3:16
**murin** 1:25
**mutual** 120:14

**n**

n  3:1 9:6 130:1
  131:1
name  27:3 52:7
  92:1 99:7 123:3,3,4
named  51:15 87:10
names  14:12 43:13
  55:3 127:20
narrative  98:18
  99:12
narrow  12:13
natasha  8:6
nationwide  40:3
natural  11:20
nature  57:23 61:8
  67:24 73:17
neal  46:17
nearly  11:19 13:7
necessarily  80:2
necessary  15:9
  20:14 30:24 36:23
  36:25 47:17 74:3
necessitated  60:13
necessitating  57:9
need  10:3 20:15
  36:19 49:13 61:1
  65:2 66:8 72:6 74:7
  76:8 96:12 122:21
needed  17:21 45:10
  55:7 119:11
needs  79:24
negligently  51:4
negotiated  65:21
negotiations  77:14
neither  17:3 25:23
  27:21
never  17:5 28:15
  63:2 70:4
nevertheless  35:10
  72:2
new  5:12,22 10:18
  10:21 21:1 23:21
  25:19 40:13 48:13
  77:25 127:6,7
news  14:19
newspapers  65:25

nexus  97:9
night  32:22 77:3
  128:15
nixon  3:18
non  30:4 57:20
  127:1
north  1:11 47:19
  53:25 55:8
note  23:19,20
noted  26:21 125:1
notice  16:19,23
  19:13 25:13 26:5,7
  30:9 31:7 36:1,6,8,9
  37:21,24 39:9,9,11
  39:24 43:7,8,12
  53:9 54:23,23,24
  55:12,17 58:14
  62:12 65:18,19,24
  65:24 66:1,3,6,9,10
  66:13,18,22,23,25
  67:2,12,17,25 68:18
  68:22 70:3,13,19
  71:15,22 72:16,17
  72:19,20,22,22
  73:15,17,19 75:2,14
  75:16,21 79:3,8,8
  81:20 82:10 83:19
  85:20,24 86:11
  90:16 91:6 109:7
noticed  31:15 37:22
notices  65:23
noticing  34:23 64:8
  77:24 83:18 85:23
notwithstanding
  64:25 69:3
nuclear  39:19 111:9
  111:10 127:10,11
number  15:22,24
  17:25 18:2 25:15
  26:1,2,5,8,23 34:21
  45:5,19 59:6 82:20
  93:24,24 94:8 95:11
  99:7 100:25 101:2,3
  104:19 109:12,12
  109:12,12,14
  111:14 114:18
  125:10 129:13

numbered  111:17
numbers  18:7 54:18
  71:12 93:23 98:9
  123:10,11
numerosity  45:6
  46:5,8 73:12,23,23
  74:9
nuts  32:7
ny  123:10 131:23

**o**

o  1:21 9:6 67:4 92:3
  131:1
o'brien  6:19
o'clock  48:14
  110:19
object  20:6 94:25
  107:15 117:15
objected  21:25
  117:18
objecting  13:23
  22:8 25:8 117:16
objection  2:7,10
  15:21,24 16:4,6,11
  16:14 17:16,24 18:1
  18:3 21:15,17 22:19
  24:7 25:8 26:22
  35:23 36:21 77:19
  86:5 94:2,20,25
  95:14 98:17,18,20
  99:6,12 100:7,7
  101:19 102:24
  103:7,9,16,17
  107:13 128:4 129:3
  130:11,15
objections  2:4
  12:13,16 13:15,19
  13:20,22,24 14:4,13
  15:7 16:15 20:4
  27:24 28:5 95:14,25
  97:16 98:2,17 99:23
  100:17 101:7
  103:22 125:2
objective  53:25
  54:6,14
observed  64:11
  70:25

obstacle  59:21
obtain  70:18
obviates  44:13
obviously  21:21
  22:16 31:18 35:7
  45:4,6 48:7 51:23
  77:23 108:2 124:15
occupational  46:1
occupationally  46:1
  50:21,23,24
occurred  24:1 82:1
  85:19 89:7 91:10
october  18:1 23:20
oddly  78:20
offer  60:14 88:24
office  18:25 32:5
oh  33:18 101:3
  111:23 114:19
  128:17
okay  11:1 12:5,8,23
  14:14,16,22 15:16
  21:11 23:9 26:9
  49:19,21 87:24
  88:22 91:13 92:19
  93:6 94:11 95:7
  96:2 97:19 98:3,13
  99:4 100:21 102:3,6
  102:15,16,22 103:3
  103:8,13 104:17,21
  105:14 108:3,19
  109:19 110:3,16,21
  111:23 112:5,17,23
  113:8,13 114:2
  115:22 116:24
  119:10,19 121:24
  122:2 123:23
  129:15
oklahoma  122:20
old  131:21
omnibus  2:6,9
  13:25 14:10 15:21
  15:23 16:4,5,11
  17:24 18:1 24:6
  25:8 26:21 94:2,20
  94:25 95:2,14,14,24
  97:16 98:2,17 99:12
  99:23 100:7,8,9,17

101:7 102:24 103:7
103:9,17,22 130:10
130:15
once   10:9 45:12
101:17 124:24
oncor   27:15 121:14
125:6,10 126:11,13
126:24 127:5,6
oncor's   126:3,16,19
one's   117:16
ones   28:14 38:4
68:16
online   29:16
open   22:21
operate   9:22 84:17
120:11
operated   39:19
45:22
operates   32:5
operating   10:6,12
operations   19:1,2
19:22 24:10,17 25:4
27:8 28:24 30:18
106:22 126:7
operator   1:25
opine   105:1
opinion   67:11 83:25
124:6
opportunity   21:2
21:10 22:4 32:9
70:11
opposed   56:14
84:22
opposing   21:2
opposite   70:19
opt   44:13
opting   44:15
optionality   9:23
order   9:15 10:18
12:20 13:21 16:20
17:11 20:22 31:8
32:22,24 33:10 36:1
36:10 37:17 38:2
43:20 44:11 54:22
58:13,18 62:12 64:8
65:3,6,21 67:10,11
67:17,21 68:13

76:15 78:14 80:24
85:10 87:2,4,13,21
129:4
ordered   34:8 41:16
55:2
orders   9:24 10:23
60:8,9 62:12 64:3,5
68:21 77:25 83:21
oregon   39:18
original   16:1 26:7
originally   99:8
125:7 126:11
outlets   54:23
outside   125:20
outstanding   13:20
13:21
overall   13:9
overcomes   57:8
overlap   19:3
overrule   22:18
overruling   86:5
overview   17:12
owned   23:24 39:14
39:19 122:13
126:16,17 127:21
owner   126:15
owners   9:24 10:2
11:22 77:11 127:6
ownership   19:20
owns   24:5 119:19
119:21,23,24
127:13

**p**

p   3:1,1,11 8:13 9:6
p&l   116:21 118:18
pachulski   3:13
pact   120:14
page   98:8,15 103:2
103:11 104:19
111:15 112:15
113:18,20,22 114:1
114:12,13 115:7
116:13,17 117:14
118:16 119:4 130:4
pages   111:17
115:13 125:3

paid   13:8 120:2
painters   38:15
pales   44:15
paper   123:18
papers   26:1 78:9
115:12 128:18
paperwork   110:18
paragraph   61:24
87:5,17 97:14,19
98:22 102:14,16
103:8
paragraphs   73:4
parcel   18:20,23
parcels   23:25 24:1
24:24 27:5,7 29:13
30:18 105:4,21,24
106:15,19 126:6
pardon   11:4
parish   39:7
park   38:8
part   20:22 27:10,20
40:19 46:22 59:23
77:17 110:24
115:22,23
participate   20:7
48:6,10
particular   58:1
59:12 73:4 75:8,15
76:5 93:10 101:20
104:18,23 113:2
114:21
particulars   99:8
parties   13:23 15:1
52:7 73:25 74:3
78:19,25 79:2 89:17
106:15
parts   96:21
party   19:11,13
65:15 105:22,25
party's   14:2
pass   60:6
passed   67:17,18
81:22
paul   4:10 11:8
pauline   4:20
pay   13:8,13

payment   19:12 30:4
pccl   34:13
peabody   3:18
pedone   3:22 33:11
33:13
peg   7:20 84:8
pending   16:12 31:9
77:4 83:8,9 103:16
108:21
people   39:13 40:4
72:18,21,23,25
73:19 74:7,13 75:16
115:8 117:12
perceive   43:6
percent   126:17,18
perfectly   39:2
performance   11:18
52:4
performed   39:17
96:3 101:10
performing   77:24
period   10:7
permissible   60:12
permission   20:20
33:2 92:12
permit   42:25 43:3
permits   41:5
permitted   40:8 41:1
permitting   41:14
59:16
person   29:1 43:9
51:10 58:25
personal   124:6
personally   113:16
113:17 117:12
persons   18:19 37:13
37:23 43:1,16,18
45:25 47:11 54:11
54:16,20 58:24
59:23,25 85:22
105:20,23 116:5
perspective   77:8
78:1 86:9,10
pertinent   94:22
petition   11:20
pfister   8:15

philadelphia 32:6
  48:5
phone 47:23 49:16
phrase 100:11
physical 51:12
physically 115:3
  117:7
pi 81:11,11,13,13
pieces 115:10
pimco 6:17
pipeline 126:7
pipelines 24:4,12,18
  28:24 30:19
place 72:1 76:12
  77:16 101:18
placing 100:6
plain 43:25
plaintiff 46:11,16
  51:15
plaintiff's 124:12
plaintiffs 12:18
  50:12 51:14 55:22
  67:13,20 70:8
plan 9:25 10:1,3,4
  10:22,23 13:8,11,13
  13:14 15:8 60:5
  77:14 84:23 100:25
  127:4
plane 33:11
planned 77:17
plans 10:20,21,24
plant 38:12 39:7,14
  111:10 127:11
plants 39:19 50:21
  55:15
play 73:11
please 9:8 31:5 48:3
  88:7 91:19,21 92:1
  92:22 94:12 95:6
  96:2 98:8,12 100:1
  104:4,18,22
pled 51:7
plenty 63:10
pllc 34:13
plr 77:4
plus 75:23

pm 48:9
pnc 47:20
pocket 78:1 127:23
  127:23
podium 12:24 15:14
  17:19 20:14 22:24
  30:23 110:5
point 17:19 19:3
  21:14 33:2 36:24
  39:23 78:6 82:6
  84:15,16 87:4 97:11
  107:17 109:1
pointed 61:12,23,24
  82:25
points 89:19
poles 120:13,13
policies 41:7
policy 111:10
  127:24,25
polsinelli 6:11
pose 59:21
posed 51:5
position 10:14 35:4
  38:22 51:16 58:7
  60:11 82:18 96:12
positions 93:16
positively 10:14
possess 50:7 52:9
possessed 55:6
possession 89:24
possibility 48:23
possible 19:10
  52:25 63:6 65:19
  68:24 83:19,20,20
post 44:6,7 69:16
  125:8
potential 44:16
  64:20 65:19 66:23
  66:23 67:1 68:24
  75:18 126:10
potter 5:11
power 39:7,18
  111:10 116:14,17
  116:22 121:10
  127:11
practices 47:19
  50:15

preclusive 70:10
predecessor 118:19
predecessors
  124:20
predominance
  53:19 56:5,10,12,15
  56:17 57:2,7,9,13
  75:22
predominate 55:20
  56:1 57:1 85:12
prefer 35:1
prejudice 41:20,21
  43:1,17 68:10,13,19
  69:11 81:16 85:4
prejudiced 43:4
  82:1
prejudicial 42:5
preliminarily 34:16
  35:2
preliminary 49:14
  82:21 96:16
preparation 128:14
prepared 92:11
  104:3 118:22
  128:16
prepetition 25:21
preponderance
  36:19 45:9 54:2
  80:9
prerequisite 53:22
presence 47:16
  50:18
present 7:16 26:16
  26:17 36:13 46:15
  54:16 59:19
presentation 17:11
  21:25 22:23,25
  32:24
presented 60:20
presently 21:14
preserve 9:23 38:3
  80:3
preserved 86:9,13
  86:21
press 77:19
presumably 37:22
  38:19 73:16

presume 36:20
presumption
  124:13,22 128:7
presumptively 42:2
  43:6
prevent 10:18
prevents 53:2
preview 12:7
previously 43:7
  86:19 128:14
prices 11:20
prima 124:12 128:5
primack 3:11
primacy 57:7
primarily 21:5
principle 15:3
  84:24
principles 72:10
print 102:5 119:1
prior 12:1 18:14
  59:9 60:3 63:4,12
  64:3 77:24 80:14
  85:24
priority 44:1
pro 16:25 34:14
  44:6,7 108:9
probably 13:3 23:7
  75:10 112:19
  127:13
problem 31:6 49:25
  77:5,12,15 92:9
  107:24
procedure 2:13,14
  34:3,4 40:21 41:10
  83:18 85:20 130:6,8
procedures 43:7
  62:12 67:18
proceed 12:8,21
  26:19 31:16 32:12
  34:17,25 35:3 41:15
  44:22 53:5 56:16
  77:16
proceeding 40:18
  41:10 57:17 58:9
  76:25
proceedings 41:25
  58:20 59:13 62:18

63:1 131:4
**process**  13:5,6
  17:14 36:9 43:19
  44:2,8,10,18 54:20
  55:18 58:11,17
  59:17 65:5 67:22
  68:19,25 69:2,9,11
  70:3,7,12,19,20
  78:2 86:4,6,8,9,10
  86:12,19 93:12,14
  94:17 100:5
**produce**  29:10
**production**  29:4
  104:19
**products**  47:9
**professed**  29:2
**professionals**  11:11
**proffer**  21:16 22:20
**proffered**  20:2 23:5
  88:18
**program**  39:9 65:18
  66:10,12,13,22
  67:25 68:22 71:15
  73:18
**prohibition**  80:25
**proof**  12:19 15:22
  15:24 16:5 17:5
  21:8 22:11 23:12,16
  23:18,20 25:16,23
  25:24 27:22 32:15
  34:10 36:2 37:10,19
  37:20 40:1,2,9,14
  40:16,21 41:1,5,15
  41:19 42:3,8,11,13
  42:15,25 43:3 44:5
  44:9 51:1,25 54:13
  54:15 57:16 58:16
  58:17 59:8,15,18
  60:2 61:7,11,14
  62:4,7,16,19,23
  63:7,14 64:2,12,22
  64:23,24 65:1,10,13
  66:4,19,19 68:7
  69:14 70:15 72:23
  74:3,4,18 76:11
  78:17,19,24 79:11
  80:1,25 81:1,2,17

82:14,24 83:1,6,12
  84:6,14 85:1 86:1
  86:15 87:1 95:11
  101:21 109:6 124:9
  124:21
**proofs**  16:3,18
  17:18 23:11,23
  24:10,15 25:7,9,19
  26:25 27:19 28:9,12
  28:21 29:13 30:14
  30:20 63:8 64:18
  68:14 69:16 71:11
  71:13 74:5,24 75:3
  76:1 79:3,9 87:6,7
  89:12 93:20,23
  94:15 95:12,13,23
  96:4,22 97:1,20
  100:11,16 103:24
  122:25 125:10,13
**prop**  114:9,17
**proper**  31:20
**properly**  28:15
  42:10
**properties**  21:7
  22:12 24:22 25:4
  27:4 112:1 113:18
  118:4
**property**  18:19
  19:17,20,22 106:18
  106:23 112:22
  113:7 118:1,2,11
  124:19
**property's**  19:1
**propose**  17:10
  66:25
**proposed**  10:17
  12:8 46:7,13 56:4
  77:1 79:6
**propound**  90:1
**propounded**  89:20
  104:2
**prosecute**  51:25
  52:10 61:17 62:2
  78:13 80:2 86:17
**prosecuting**  74:8
**prosecution**  52:15
  57:23 58:23 90:18

**protect**  51:21 53:7
  54:10 55:18 59:4
**protected**  70:15
**protecting**  44:11
  54:20
**protection**  68:25
  69:2,9,13 75:20
  79:24
**protections**  44:2
**protective**  67:24
**prove**  21:8 45:15
  122:21
**proven**  56:13
**provide**  16:9,24
  17:12 23:7 26:11
  29:8 44:14 52:15
  77:20 83:19 90:13
  90:14 92:13 93:2
  125:11
**provided**  13:21
  35:23,24 36:9 38:17
  86:11 88:21 90:1,8
  90:15,25
**provider**  126:22
**providers**  121:20
**provides**  57:20 60:5
**providing**  30:8
  126:21
**provision**  41:8 87:4
**psa**  9:25
**public**  106:1 118:8
  118:10,22 120:6,9
**publication**  72:17
**publications**  65:25
**puc**  111:6 127:15
**puct**  77:6
**pull**  110:20 120:7
**punitive**  4:23 34:1
  41:21,24 43:4 44:15
  46:10 47:18 51:2
  53:12 54:8,25 55:7
**purchase**  24:23
**purport**  68:12 87:8
  87:10 124:18
**purported**  17:2
  31:6 74:25 75:8
  78:18

**purportedly**  106:22
**purporting**  23:16
  29:5 75:15
**purports**  80:6,11
**purpose**  43:11
  55:23 62:3,7,10,11
  65:11 80:1,4 81:20
  81:23 94:14
**purposes**  35:7
  36:18 50:9 53:1
  74:8 79:2 83:12
  85:3,7 109:5 120:9
**pursuant**  2:13 34:3
  34:7 36:9 43:7,21
  77:24 79:20 130:7
**pursue**  60:4
**put**  21:13 23:7 37:3
  56:22 64:17 70:9
  72:5 77:16 85:25
  87:13 91:14 108:2
  111:8 119:2 122:8
  123:6 124:4 127:23
**putting**  127:7

q

**quadruple**  17:17
  28:6,10
**quarter**  77:10,10
**quarters**  112:4
  113:22
**query**  46:23
**question**  18:25
  21:14 32:11 40:25
  46:12 47:13 63:18
  71:24 74:21 75:5,6
  75:22 82:22 105:2,3
  111:1 112:23
  114:20 118:23
  123:23 128:23
**questions**  15:10,12
  30:25 31:1 32:23
  47:3,6,11 49:12
  55:20,20,25 56:1,25
  58:19 75:24 85:11
  85:12 88:12,23
  107:6 109:2,3 110:9
  110:16 111:11
  118:17 121:25

123:24
quick  12:7 112:7
quickly  28:10,20
  48:3 73:10
quintessential
  61:13
quite  65:6 72:1
quo  74:5 80:3
qureshi  8:16

**r**

r  1:21 3:1 5:14 7:18
  9:6 92:3 122:7
  131:1
rachael  8:17
rain  38:17
raise  81:5 91:21
raised  51:3 79:15
reach  31:22,23
  68:23 96:13,15
reached  15:3 70:4
  104:2
read  9:17,18 123:14
  128:13,15,20
readily  43:11 53:24
  54:25 55:1
ready  110:19
real  19:9 72:14
  81:17 112:7
reality  84:16
realized  101:17
  115:8
really  57:13 62:3,9
  63:2 66:8 68:15
  69:22 70:5 71:2,5
  73:13 74:1,11 75:6
  75:20 78:6,8,23
  79:15 80:14,20
  83:22 84:8 90:10
  104:24 111:16
  127:21
reason  29:22 30:21
  62:8 76:14 99:10,10
  103:18 111:7
reasonable  55:2
reasonably  68:23
reasons  53:8,9
  63:11 70:23 76:10

79:12 82:21 86:3
  87:19
reath  6:6
rebut  124:13 128:6
rebuttal  17:21
  30:24
rebutted  124:22
recall  60:5 112:24
  114:21,23 115:6
receive  16:13 36:1,6
  37:24 39:8,24 70:13
  72:21 75:21 79:2,8
  85:23 96:6
received  13:15
  16:19 18:13 19:12
  28:1 39:11 43:8
  68:18 69:23 72:16
  72:19 73:15,19 75:2
  104:10 115:16
receives  96:7
recess  31:2,3 47:23
  48:1,8 88:3,5
rechecked  28:22
recitation  89:3
recognize  95:8,19
  98:6 100:22 104:6
recollection  113:1
recommendation
  89:19
recommendations
  90:4,10,12
reconcile  14:2
  93:12 96:13,18
reconvene  48:9
  88:3,3
record  9:18,19
  16:22 20:19 25:22
  35:25 37:1 60:15
  61:3 69:25 81:6,14
  87:19 89:8,13 92:2
  99:13 109:5,9 110:2
  110:23 111:2,6
  131:4
recorded  105:19
records  14:2,3,15
  18:12,19 19:15,17
  24:9,14 25:6 28:7

28:22 29:14 43:14
  55:3,7,14 89:15,17
  90:7 94:23 96:10
  101:14 106:1 119:3
  125:2,23 126:5,8
recovery  52:25
red  122:8
redirect  122:2
refer  25:25 93:6
reference  24:10
  27:1 54:6 113:10
  117:20
referenced  29:19
  30:20 103:8
references  18:18
  29:18
referring  115:15
reflect  74:14
reflected  13:17 15:8
  103:24
reflects  74:12,14
refusing  62:15
regard  12:3 14:15
  36:20 45:5 46:9
  50:4,4 57:4,15 80:8
  80:16 81:19 82:13
  93:9 95:2 96:3
  101:10 103:21
  106:22 109:4
regarding  10:23
  21:25 22:5 25:20
  47:14 97:3 102:6
  109:23
regardless  10:2
  70:13 73:21
register  28:17 87:9
registered  25:13
  126:15
registrant  122:11
registration  122:23
reinstated  60:6
  84:21
reiterate  78:3
reiterating  86:5
reits  77:2
reject  14:25

rejected  13:7,12
rejection  13:4
relate  16:3 29:11
  47:6 119:13
related  12:14 13:13
  19:5 24:23 27:5
  39:15 50:25 56:23
  59:24 95:13 100:2
  103:24 106:8 109:8
relates  9:14 15:21
  15:24 16:5,14 24:7
  27:14 51:18 79:16
  80:7
relation  51:9 95:24
relationship  17:17
  19:23 25:1,3 27:2,5
  28:8,23 29:6,15,20
  30:2,6,17 90:11
  125:12 126:6
relevant  55:7
reliable  54:7
reliance  80:17
relied  37:18
relief  43:21 68:1
  69:8 78:14 80:4
relieved  69:6
relying  40:10
remain  13:20 14:6
  14:23 91:19
remaining  15:7
remains  80:8
remand  85:4
remanded  85:5
remarks  11:10
remedied  16:6
remedying  58:14
remind  65:2
reminded  90:21
  91:2
removed  14:24
removes  59:2
render  50:14,19
renders  64:5
reorganization
  67:21
reorganized  10:19
  11:22 86:18 127:9

reorganizes 127:5
reorganizing 84:19
rep 50:6 51:20,22
repeat 60:22
repeatedly 81:9
replace 120:11
replacement 90:20
replete 38:10
reply 27:25 60:23
reported 114:25
reports 24:22
reposition 11:12
represent 25:12
  47:12 51:19 52:8
  53:5 56:20 75:19
  80:11 98:1 102:22
  126:4
representation
  25:14 31:11,20 45:7
  52:2 53:1 56:5 91:1
  91:10
representations
  124:16
representative
  12:19 34:14 45:16
  51:18 67:15 78:17
representatives
  16:8 27:23 28:3
  41:24 52:4,22 68:12
  75:9 79:7
represented 80:18
  81:12
representing 75:16
represents 39:13
request 10:10 18:18
  18:23 19:5,21,25
  29:17 66:20 68:7
  80:1 104:18,23,25
  107:18,19,21,23
  109:7 111:8
requested 10:5
requests 29:9
  104:10,14,24 107:2
require 66:21
required 43:24 65:8
  65:8 83:15 84:18

requirement 46:5,8
  46:11 47:15 50:5
  51:13 52:6,8 53:14
  56:17,17 57:8,16
  58:4 73:23
requirements 43:12
  44:10 45:14 50:6,7
  53:16,17 56:12
  60:13 63:23
requires 45:4,15
  51:20 57:17 66:22
requiring 54:5
  55:13 83:15 86:25
requisite 44:22
research 38:23 83:1
  96:18 105:12,21
  113:2,16,17 118:11
  118:24 119:5 124:7
researched 113:11
  116:24
researching 112:24
  113:1
reservations 13:16
reserve 30:24 40:10
  40:23 41:3,11 63:16
  70:25 71:18 120:14
reserved 32:9 64:24
residential 19:11
resigned 128:22
resolution 15:7 28:6
  113:19,19,23,23
  114:7,8,18
resolve 47:17 49:18
  80:21
resolved 13:18 14:4
resort 10:3
resources 28:4
  65:15 67:7 105:17
respect 43:23 53:23
  58:17,22 59:11
  78:21 93:3,11 94:19
  99:8 101:12 109:6
  125:15
respectfully 76:14
respectively 18:8
respond 64:1
  124:11

responded 60:21
  126:1
response 10:10
  27:24 34:20 45:18
  60:24 81:4,10,12
  106:13 107:1 116:4
  124:21 125:16
responses 90:1,3
  104:3 105:13
  107:18,23 108:22
responsible 129:2
responsive 19:24
  107:2
rest 52:23
restructuring 10:16
  18:6
result 10:5 29:4,23
  39:21 42:25 90:4
resulting 58:20
resultively 43:14
results 19:19 29:17
  29:18,19 30:1,8
  96:16,20 106:12,14
retail 126:20,22,22
retained 25:11
  89:12 118:12
  119:25 120:1
  125:24
retention 89:14
retroactive 78:23
  79:10
return 107:2
returning 50:3
reveal 97:4 102:7
  106:21
review 19:7,10,15
  19:16 25:6 28:7,21
  41:14 44:17 55:11
  55:11 89:14 90:5
  93:15 94:17,19 96:8
  96:15,17,20,22,25
  97:20 100:5,5
  101:13,20,21 115:1
  115:6,20
reviewed 24:14
  95:2,3,13 100:14,16
  101:6 114:25

reviewing 94:15
  99:6
rhoads 5:6
richard 3:22
richards 6:1
ride 27:18
rifkind 4:10 11:8
right 17:22 20:18
  21:21 22:7,13 26:14
  26:17,18 31:5,16
  33:7,10 35:18 36:11
  38:3 40:14 42:13
  52:24 63:19,19
  78:11 79:5 82:19
  87:12,20 88:2,7
  91:8,21 95:4 97:18
  98:25 100:22 101:7
  101:8,20 103:4
  105:7 107:6,10
  108:1,11,17,20
  109:10 111:4,11
  112:20 113:12,12
  114:20 118:8 119:2
  120:2,23 121:4,24
  122:1 123:9,12,20
  123:25 124:10,19
  126:12 128:3
  129:15
rights 13:16 24:2
  32:9 38:3,5 44:8,18
  54:11,20 55:18 59:4
  64:24 70:3,12
  118:13 119:25
  120:2,10
ringer 8:17
rise 9:7 24:1 31:4
  48:2 50:16 88:6
  124:20
risk 50:24 56:22
  74:16
river 113:9,10,12
road 18:21,24 19:2
  27:6 131:21
robert 8:11 30:5
  122:12 123:5
robust 71:16 73:17

**rogers** 4:5 35:6
60:18,18 76:20 87:3
87:13,15
**roitman** 8:18
**role** 89:10 93:3,9
**roughly** 27:8
**round** 84:9
**rounds** 65:5
**rule** 2:12,14 31:8
34:2,4 37:3 40:21
41:9,9,12 43:23
44:9,20 45:4 51:20
52:5 61:6 62:6,10
62:15,17,19,20,22
62:25 63:3,6,7,7,21
63:24 66:22 70:22
70:24 71:6,19,25
72:3,6,11 73:8,12
76:6,16,17,18 78:16
78:25 79:10 82:22
84:25 85:3 128:4
130:5,7
**ruled** 80:16
**rules** 34:8 40:19
41:5,7 62:11 65:9
69:7 83:15 84:8,18
**ruling** 85:3 86:8
**rulings** 68:4 80:14
130:3
**run** 28:20 44:16
122:24
**running** 10:9

**s**

**s** 1:22 3:1 9:6 46:10
67:3 74:16 78:12
81:8 122:7,12 123:1
123:6,16,17
**sacred** 61:12
**safety** 47:8
**sale** 24:23
**sample** 29:16
**sand** 38:15
**sassower** 110:9
125:17,18
**satisfactory** 90:15
**satisfied** 46:8,10
51:14 60:12 73:7

80:11 85:8,9 86:2
**satisfies** 57:8 72:11
**satisfy** 44:10 50:6
53:16,19,20 57:2
78:1 85:10
**satisfying** 55:23
**save** 114:9
**savings** 13:10
**saw** 26:25
**saying** 117:17 129:1
**says** 31:12 66:2
69:4 80:25 81:19
85:9,10 87:17 108:8
108:12,12,13,14,14
114:17 120:4,13
**scali** 25:11
**scalie** 7:6
**schalet** 34:13
**schedule** 35:1
**scheduled** 48:13
90:22
**schedules** 96:10
**scheduling** 36:18
**scheme** 37:21 43:12
58:14
**schneider** 8:19
**school** 51:12
**scope** 41:13 44:1
45:22 54:21 88:20
**scott** 7:17
**se** 16:25 108:9
**search** 19:14 24:8
29:14,16 30:16 55:2
55:14 105:15
108:15 118:2 119:1
119:12 125:1 126:9
126:9 129:13
**searched** 126:5
**searches** 18:12,16
19:18 34:21 106:21
**seat** 22:23 32:13
**seated** 9:8 31:5 48:3
88:7
**second** 17:14 19:15
23:15,25 25:16
28:25 36:11 42:24
45:1 55:19 77:10

78:20 100:10
102:18 110:20
**section** 34:7
**secure** 44:23
**security** 123:9,11
123:13 129:13
**see** 18:9 24:20
32:16 49:4 56:3
81:3 83:4 97:19,23
99:3,21,23 102:16
102:20 112:7,7
113:22,23 114:6,10
114:15 115:12,18
116:13
**seek** 28:17 47:12
52:7 53:4,7 56:20
61:17
**seeking** 44:17 65:11
**seen** 16:22 45:18
71:11 73:18 76:2,25
**seitz** 7:9 16:23
18:14 21:3 22:5
25:12,22 26:16 29:9
30:8,9 31:6,13,22
31:23 32:4,10,11
47:23 48:5,9 49:13
88:9,12,22 89:11
91:12,16,18 107:16
107:17,22,25
115:24 116:1,3
125:25 128:21,24
128:24
**sell** 127:2 128:2
**sells** 127:5
**senior** 18:16 93:17
105:6
**sense** 35:15 50:11
62:9 66:3 73:14
82:4 84:9 124:23
**sent** 16:7 20:25
125:16
**separate** 24:13
28:14 57:23 58:23
59:1 111:19
**series** 94:20
**serve** 62:10

**served** 29:9 125:25
**serves** 18:5
**service** 112:14,19
112:25
**servicer** 126:22
**services** 93:2
126:22
**serving** 71:6 93:3
93:12
**set** 23:23 37:8,19
41:11 54:14 64:8,15
83:14 87:18,19
114:22 125:1
**seth** 8:3
**sets** 69:19
**setting** 63:22
**settlement** 9:25
10:22 59:22 77:18
**seven** 119:16
**severe** 42:25
**sewer** 121:10
**sewers** 120:12
**share** 47:10
**shared** 46:11
**shares** 122:16
**shave** 33:20
**shearman** 5:16
**shed** 125:11
**shift** 69:11 128:12
**shore** 7:4 35:18,19
35:19,22 76:20,21
76:21 79:13
**short** 9:12 12:9 31:2
76:13 81:20,21
88:17
**shot** 67:8
**show** 27:10 54:1
55:19 70:11 99:4
124:18
**showed** 29:20 30:1
**showing** 27:19 30:6
44:22 70:6
**shown** 69:8 120:13
**shows** 66:9 73:6
82:7 98:14 103:5,14
**shutdowns** 38:14

sic  40:20
sick  56:24 82:10
side  5:2,7 62:5 68:5
  78:7,8 112:10
sign  25:22
signals  66:17
signed  23:12 25:17
  33:10 87:20
significance  84:19
significant  11:16
  38:14 58:21,25
signs  66:17
silent  40:15
similar  51:16 59:6
  102:8,16 103:15,18
  105:3
similarly  38:2 43:1
  43:9 44:4 45:25
  47:11 51:9 54:11,16
  56:21 57:24 68:11
simply  59:25 64:17
  71:21 72:8 99:5
single  43:2 45:21
  47:13 57:11 71:1,4
sir  20:7,19 22:23
  33:19 92:18 94:12
  95:21 97:14,25 98:6
  99:20 100:19
  102:25 104:4
  114:10 116:20
  123:25 129:10
sit  70:8
sites  105:22,25
sits  27:8
situated  38:2 43:1
  44:5 45:25 47:11
  54:11 56:21 68:11
situation  51:10
  54:16 75:4 82:23
  83:7 85:9,16,25
  86:3
skepticism  63:13,17
skilled  55:15
small  73:17 102:5
social  123:9,11,13
  129:13

software  19:7 106:4
  106:6
sold  121:1
solely  62:6 83:11
  85:3
solutions  131:20
solvency  27:15
somebody  82:7
someone's  66:15,16
son  17:1
sontchi  1:22
sonya  2:25 131:3,8
sorry  14:7 26:5,18
  48:14 70:10 92:8
  98:11
sort  24:3 35:1 68:25
  69:10 86:17 89:9
  96:16 97:5,9 104:24
  105:23 108:11
  111:19 123:8
sounds  14:19
soup  127:17
space  18:25
speak  17:6 27:17
  32:9
speaks  108:12
specific  18:18 55:14
  57:6 98:20 115:13
  121:21
specifically  13:10
  21:14 39:6 40:24
  54:4 55:1 62:23
speculative  53:12
spell  92:1
spent  72:13 77:24
  78:5
spinoffs  77:2
split  125:8
spoke  48:5 86:4
spot  49:11
spouse  66:16
spreadsheet  117:25
square  84:8
stacy  7:24
stage  40:18 59:2
  75:7

stake  128:2
stamped  101:2
stand  23:8 51:8
  91:19 115:21 117:1
standard  36:19
  45:4,10 57:2 62:24
  70:9 73:13 74:9
standards  57:4
standing  91:20
stands  13:5 116:25
  117:2
stang  3:13
stargatt  4:16
start  14:17,18 67:1
  68:11
started  125:24
starting  14:17
  23:10
starts  102:17
state  51:7 57:3
  59:20 61:10 92:1
  111:10 119:17
  127:11 128:1
stated  42:8 56:18
statement  9:18,19
  10:25 27:12 109:16
  109:20,21 129:16
statements  96:10
states  1:1,10 53:18
  55:15 57:4,5 97:20
  99:10 122:12
station  39:18
status  2:1 12:9
  41:24 43:10 66:23
  74:5 80:3
statute  43:25
stay  91:16
stems  80:20
step  49:2,17 110:17
  124:1
stephen  5:14,25
stepping  103:20
sterling  5:16
steve  92:3,24
steven  18:4
stewart  2:4 7:7,12
  8:20 12:16 16:19,25

  17:2,3,4,13,20
  18:13,13 19:12,23
  20:6,10,13,15,18,21
  21:6,10,12,24 22:7
  22:9 23:11,12,13
  24:4 25:7,11,16,17
  25:18,25 26:22
  27:13,13,17,21
  28:11,19 29:3,21,23
  29:24,24 30:2,11,13
  31:16,20 32:8 48:9
  49:5,16 88:4,8,13
  92:15,16,18 93:21
  103:17 106:9
  107:15 108:4,6,8,9
  108:15,19 109:18
  109:22,25 110:1,4,8
  110:18,22 111:1,6
  111:13,15,20,23
  112:1,4,9,13,16,18
  113:21 114:1,5,8
  115:24 116:1,13,16
  116:20 117:3,6,10
  117:14 118:1,3,6,10
  118:21,24 119:3,10
  119:16,20,24 120:4
  120:18,20,25,25
  121:3,5,9,13,18
  122:1,4,5,7,7,8,12
  123:1,5,5,13,15,16
  123:17,21 124:4,6
  125:16,19,20
  126:12,13,15,24
  127:2,10,15,21
  128:17,21 129:10
  129:12
stewart's  16:22
  18:18,23 19:21 89:9
  95:3,13,23 99:14
  100:16 101:5
  103:23,24 104:1,10
stewarts  24:2 28:2
  29:5,12 30:17 109:6
stipulate  10:17
stipulates  35:25
stock  3:19

**stood** 51:15
**storm** 120:12
**streamline** 59:16
**street** 1:11
**streets** 19:2 120:7,8
  120:10
**strength** 46:23
**strongest** 43:2
**strongly** 41:14 76:2
**structure** 10:15
**structured** 77:20
**stuart** 8:9
**sub** 44:25 52:17
**subdivide** 118:12
  120:5
**subject** 10:21 17:7
  43:17 77:4 93:21
  98:20 100:2 104:11
  108:24
**submission** 42:12
  128:7
**submissions** 27:9
**submit** 21:1,6 68:2
  76:15 115:8 128:18
  128:21
**submitted** 20:25
  21:9 22:11,15 25:7
  26:3,23 115:3,10,16
  117:8,19 118:14
  119:4 122:24 124:8
  124:15 128:14
**subsequent** 60:8
**subset** 84:22
**substantial** 11:17
  60:8
**substantiate** 21:6
**substantive** 2:6,9
  2:10 14:1 31:19
  130:11,15,16
**substituting** 31:10
**substitution** 91:5
**subsumed** 56:17
**sudden** 70:1 82:7
**suffer** 50:8 53:5
**suffered** 39:21
  43:10 46:16

**suffering** 39:4
**sufficient** 21:8
  30:13 47:14 53:20
  55:17 57:13 85:24
  86:13,24
**sufficiently** 56:4
**suggest** 24:16
**suggested** 73:1
**suggesting** 50:11
**suite** 131:22
**sullivan** 5:1 46:20
  56:8 57:5,10
**sum** 30:11
**superior** 57:16,18
  58:8,16 76:11 85:14
  85:16,18 86:24
**superiority** 53:20
  57:15,21 58:4 76:9
**supplement** 13:11
  15:8
**supplemental** 91:14
**support** 9:25 10:23
  30:14 41:4 69:22
  94:1 96:12,18 97:15
  99:22 124:8
**supported** 18:3
**supports** 41:10
**supposed** 110:13
  128:25
**supreme** 113:3
**sure** 11:6 32:6 33:9
  71:21 88:14 92:3,24
  93:2,7,11 94:17
  96:6 98:15 100:5
  101:11 103:6,15
  104:24 105:16
  106:5 113:6 115:15
  121:13 123:6,7
**survive** 86:20,21
**susan** 29:21
**sustain** 129:3
**swiftly** 11:24
**syracuse** 122:18
**system** 19:8,12
  106:6
**systems** 19:7 105:18
  106:4

**t**

**t** 92:3 131:1,1
**tab** 94:12 95:6,16
  97:25 100:19
  102:11,13,22 104:4
**table** 20:9
**take** 31:2,25 33:14
  37:15 38:18,19,21
  40:5 45:2 47:23
  48:8 50:25 52:18
  70:7 75:5 80:13
  85:6 87:21 88:3,4
  91:19 93:15 96:12
  101:12 108:12
  109:7 110:5,17,20
  115:9,20 127:22
**taken** 27:2 72:24
  124:3
**takes** 12:7 126:24
**talk** 21:3 22:4 47:23
  63:4 86:3
**talked** 68:6 122:18
**talking** 67:4 82:23
  83:11 119:9
**target** 75:20
**targeted** 54:23
**targets** 72:22
**tarragon** 40:23
  41:16
**task** 56:3
**tax** 77:2
**taylor** 4:16
**tceh** 3:4,9 4:11,17
  6:7,12 9:17 10:1,2,5
  10:7,8,9,10,11,13
  10:19 11:9,13,16,18
  11:22,23
**team** 18:17 19:5
  28:25 93:18 94:15
  95:3 96:7 100:15,15
  105:7,10
**team's** 100:2
**technically** 84:12
**telephone** 48:6 88:9
  120:12
**telephonic** 29:1

**telephonically** 7:9
  7:16
**tell** 91:22 96:21
  105:9,14 106:4,11
  117:1
**telling** 124:7
**teloni** 9:1
**term** 17:17
**terms** 15:1 40:6
  44:11 58:5 71:1
**test** 57:11
**testified** 21:7
  117:11
**testify** 18:15,17
  88:1
**testimony** 20:3 23:5
  77:6 88:19 124:15
**texas** 18:24 23:19
  38:9 49:5 111:10
  112:13,18,19,24
  116:13,17,21,22
  117:1 118:18
  119:17,18,22 121:2
  126:19,23 127:11
  128:1
**thank** 11:7,10 12:3
  12:5,6,23,25 15:12
  15:17 20:5 23:2,4
  26:20 33:12,13,18
  33:21 37:5 49:19,20
  49:23 60:16,17
  76:18,20 79:13,14
  82:18,19 87:14,16
  88:2 92:5,6,7,14
  103:20 105:5 110:3
  112:11 123:25
  124:2 126:12 129:8
  129:9,15
**theme** 26:25 27:18
**theories** 51:14 53:5
**theory** 51:6
**thereof** 54:19
**thereon** 120:8
**thing** 21:9 61:20
  64:1 65:13 67:19
  72:12 88:11 89:14
  125:14 129:10

**things** 9:13 19:7
25:10 45:5,5 55:16
66:20
**think** 32:16 35:11
35:13,14 36:23,25
49:15 60:19,25 61:2
62:13 63:9,10,10,12
63:14,16,22 64:3
65:2,6,22 66:9,18
66:24 68:15 69:20
69:20 70:5,17 71:8
72:1,4,6,8 73:6 74:8
76:6,9 77:3 79:1,9
83:12 84:23 85:8
86:24 91:9 94:22
102:1 107:22
116:25 117:3,6
121:21 122:15
123:6 124:6,12
**third** 2:9 15:23 16:4
16:5,11,14 18:1
19:16 24:2 25:16,25
29:8 37:12 40:24
46:4 55:5 83:25
84:4 99:23 100:17
101:4,6 102:24
103:7,9,17,22
105:21,25 130:14
**thirds** 114:15
**thirty** 2:9 15:23
16:5,11,13 18:1
99:23 100:17 101:6
102:24 103:7,9,17
103:22 130:14
**thought** 26:16
32:25 33:1 95:1
115:22 123:14
**thoughts** 96:17
**thousand** 45:20
**thousands** 45:25
125:3
**three** 16:16,18
23:11 24:7 29:17
68:12 78:11 85:22
87:7 112:4 113:22
126:17

**threshold** 45:8 61:5
**throw** 122:9
**thumg** 115:13
**tie** 101:14 113:4
**ties** 96:9 99:11
105:3
**till** 89:5,6
**time** 11:13 14:2
17:7 20:1 28:4
30:23 31:22 32:14
35:17 42:14 49:7
67:3,16,16,17 72:13
78:20 79:25 84:2
90:13 107:5 108:2
109:24 110:17
115:20 122:20
125:21
**timeline** 24:23,25
**timeliness** 42:7
**timely** 42:2,15
**times** 11:16 68:20
**timing** 26:12
**title** 24:21 25:2 34:7
**tiwana** 8:21
**today** 13:5,19 16:12
17:1,3,6 18:5 20:16
20:17 23:22 32:3,21
48:19 66:4 67:18
68:10,17 69:24
74:22,23 76:10 89:6
118:15 119:5,9
124:15 125:5 126:2
126:4 128:8,15,16
129:6
**today's** 13:22 15:20
16:2 79:2 86:8
93:21
**todd** 3:6
**told** 127:15
**top** 98:9 101:1
103:2 116:19
**total** 104:14
**touch** 19:22 28:10
**touched** 106:23
**tough** 49:10
**track** 114:22

**tracked** 111:3
**tracks** 119:16
**tract** 119:15
**trade** 55:15 73:1
**traded** 11:19
**tradesman** 38:11
**traditional** 70:23,23
**transaction** 77:9
**transactions** 77:3
118:6
**transcribed** 2:25
**transcript** 131:4
**transfer** 3:19
**transmission** 24:4
24:11,17 28:24
30:19 125:9 126:7
126:19,25
**travel** 33:1
**traveled** 49:5
**treatment** 71:2,21
**tremendous** 67:6
70:17
**trial** 56:13
**tried** 31:13
**tries** 69:11
**trinity** 113:9,10,12
**truck** 122:23
**true** 28:7 35:7
131:4
**trust** 3:19 113:19
113:23 114:6,8
**trustee** 3:14,20 5:23
32:20
**truth** 91:22,22,23
**trw** 122:9,11,12,19
**try** 12:13 20:22
48:20 49:18 60:22
80:21 82:8 84:8
89:15,20 105:22
128:12
**trying** 11:13 70:6
72:9,9 89:7 120:23
123:3
**tsu** 16:21
**tu** 112:19
**turkel** 8:22

**turn** 12:16,24 30:23
88:11,13 94:12 95:6
95:16 97:25 98:5,8
98:12 99:21 100:19
102:11,22 103:2,13
104:4 109:2
**turned** 123:15
**turning** 98:1
**two** 14:6,22 15:2,6
16:3,15 24:7 25:19
26:25 27:18 28:6
37:19 44:25 52:2
54:4,6 67:8 68:4
70:21,21 76:24
77:24 95:3 114:15
126:16
**txu** 18:24 27:14
113:5 121:14 125:6
126:11,13,14,20
127:15,16,18
129:13
**txu's** 19:2
**type** 44:2 98:20
114:17
**typed** 129:12
**typical** 50:11 51:6
75:9,14
**typicality** 45:7 50:5
50:5,9 51:13 75:8

**u**

**u.s.** 1:23
**um** 99:1 108:23
**unable** 96:11 97:5
102:8 106:14 113:3
115:17
**unclear** 17:5 27:12
84:11
**uncontested** 34:19
**uncover** 52:6
**underline** 41:8
**underlying** 42:8
56:11
**undermines** 62:11
64:5
**understand** 16:1
17:1,6 29:3,24
77:15,15 81:22 89:6

93:8 115:25
**understanding**
  48:12 89:8,9
**understood** 48:20
  49:6,17 125:17,24
**undertake** 66:22
  93:15 94:17
**undertaken** 30:16
  62:21
**undertook** 17:15
**underwood** 8:23
**unfair** 82:11
**unfortunately** 33:5
  80:18
**unfounded** 25:19
**unheard** 80:5
**uniforms** 38:18
**unimpeded** 57:3
**union** 39:6,10 66:16
**unions** 55:15 73:1
**unique** 50:18
**united** 1:1,10 52:24
**units** 127:19
**unknown** 43:13
**unknowns** 43:13
**unliquidated** 15:22
  15:25 23:15
**unmanifested** 12:17
  34:6,11 37:9,16,21
  37:23 39:3,24 43:16
  44:2 45:1,3 52:19
  53:7,8 54:13 56:24
  58:25 60:1,3 61:21
  64:7,15,19 65:8,10
  65:16,20 67:15,22
  68:20 69:23 71:13
  71:14 73:2,22 75:2
  75:13 78:2 79:18
  80:12 81:1,16 82:6
  82:17 83:8,16 84:14
  86:15
**unprecedented**
  61:8 83:3
**unwittingly** 38:5
**update** 2:1 12:10,13
  13:4

**updates** 15:6 76:24
**usc** 40:15
**use** 74:6 108:16
  120:6,9
**uses** 100:11
**usually** 57:12
**utilities** 112:19
**utility** 112:25
**utilized** 47:9

                v

**v** 46:6,17,20
**vacuum** 64:13
**valid** 124:12 128:5
**validity** 93:16 94:19
  96:9 101:15 124:13
  124:22
**value** 9:23 12:2
  84:20 85:7
**van** 8:24 37:18
  80:18
**various** 9:21 24:22
  26:3,23 27:9 57:4,4
  89:17,23 90:6 93:12
**vasco** 38:9
**vast** 13:18
**vastly** 58:8
**venable** 6:16
**verdict** 55:19
**veritext** 131:20
**verizon** 27:3
**versed** 52:13
**versus** 47:19 58:6
  79:18
**vests** 60:7
**vetting** 100:6
**viable** 46:20 72:6
  82:16
**vice** 34:15
**view** 20:23 41:11
  74:12 82:6
**views** 90:17
**vigorous** 52:15
**vigorously** 52:10
**violated** 70:3,12
**violation** 70:7
**virginia** 47:19 55:9

**virtue** 36:8
**voicemail** 31:14
**void** 79:21
**voluminous** 89:13
**vs** 53:25 56:8 84:20

                w

**w.r.** 64:9
**wa** 39:7
**wait** 108:17
**waited** 42:20
**waive** 35:24
**walk** 73:10
**walker** 5:6
**want** 11:10 14:14
  31:1 33:8 60:24
  61:7 63:24 72:15
  87:3 88:11 89:1
  104:17 108:7,7
  124:4 127:12
**wanted** 12:12 26:15
  28:11 35:2,3 81:14
  88:16 109:4 125:14
**wants** 11:5 21:6
  34:25
**warn** 47:8 83:4
**warning** 43:2
**warrant** 56:4
**waste** 67:7
**wastes** 78:4
**water** 70:16
**way** 11:18 12:9
  14:17 19:25 32:3
  42:23 51:22 60:10
  73:9 75:15 85:21
  107:3 110:7 112:4
  113:22 121:5
**ways** 73:5 83:23
**we've** 15:3 23:6
  45:18 60:12,21 68:6
  71:11 76:2
**web** 34:21
**websites** 65:25
**week** 20:24 72:14
  128:22
**weigh** 41:14 43:22
**weight** 22:17

**weighty** 83:23
**weiss** 4:10 11:8
**welcome** 23:3 33:14
  33:22 37:6 82:19
**wen** 37:18
**went** 65:15 105:17
  111:6 115:2,3,5,6
  117:7 119:3 122:10
  122:14,16,18,22
  123:18 125:3,10
**wharton** 4:10 11:8
**whatsoever** 73:20
**white** 7:1 35:19
  76:22
**who've** 56:21
**wide** 47:1,10
**willing** 31:16 91:22
**wilmington** 1:12
**wind** 121:20
**wipe** 65:14
**wish** 22:25 124:1
**wishes** 34:17 88:25
**withdraw** 31:6
**withdrawal** 18:14
  26:8,13 29:9 91:6
**withdrawn** 20:24
**withdrew** 16:23
  22:6 30:9
**witness** 21:21 22:14
  23:1 48:18 87:22,25
  88:24 91:14 109:2
  110:17 111:12
  112:6 121:25
**wonder** 114:11
**woodrow** 30:4
**word** 16:12 66:1,14
  67:6 69:3 71:17
  114:18 119:2
  126:21
**words** 77:19
**work** 11:12 12:3
  32:6 38:11 39:17
  40:4 45:1 52:18
  80:12 100:1,2
  101:16 104:24
  111:21 116:4,5
  118:14 121:8,12

**worked**  9:22 54:17
  65:18 77:14 85:21
  100:7 128:1
**workers**  38:4,8
**working**  10:13
  11:14,25 39:6
**works**  12:20
**worth**  67:5
**written**  20:2 90:15

**x**

**x**  130:1

**y**

**yeah**  14:20 49:4
  69:12 100:23 101:3
  105:12 123:4
  127:23
**yearly**  38:13
**years**  17:25 29:25
  38:9 82:6
**yenamandra**  4:6
  8:25 15:14,18,19
  16:18 17:10,23
  18:11 20:5,12 23:4
  23:10 26:7,11,20
  88:14,15 124:24,25
  129:5,7
**yep**  26:11 114:14
**yesterday**  10:18
**yield**  15:13 17:19
  20:13 22:24
**yielded**  29:18,19
**york**  5:12,22 48:13
**young**  4:16

**z**

**z**  13:17
**zenith**  40:11 41:7
**zero**  73:15
**ziegelbaum**  39:16
  39:22 43:9 50:22
  60:15
**zieglbaum**  34:6
**ziehl**  3:13
**zoning**  24:22