Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4

5    In re:                          :

                                     :     Chapter 11

6    ENERGY FUTURE HOLDINGS, INC.   :

                                     :     Case No. 14-10979-CSS

7                                    :

            Debtors.                 :     (Jointly Administered)

8    _____:

9

10

11

12                                   United States Bankruptcy Court

13                                   824 North Market Street

14                                   Wilmington, Delaware

15                                   August 23, 2016

16                                   3:12 p.m. – 3:42 p.m.

17

18

19

20

21    B E F O R E :

22    HON CHRISTOPHER S. SONTCHI

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO OPERATOR:   LESLIE MURIN

1   HEARING re Scheduling Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:   Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    KIRKLAND & ELLIS LLP

4         Attorneys for the Debtors

5

6    BY:  APARA YENEMANDRA

7

8    AKIN GUMP STRAUSS HAUER & FELD LLP

9         Attorney for Ad Hoc Committee of EFIH Unsecured

10        Noteholders, EFIH Second Lien DIP Commitment Parties

11

12   BY:  ABID QURESHI

13

14   SULLIVAN & CROMWELL

15        Attorney for the Official Committee of Unsecured

16        Creditors

17

18   BY:  BRIAN GLUECKSTEIN

19

20

21

22

23

24

25

```
 1                  P R O C E E D I N G S

 2              CLERK:  All rise.

 3              THE COURT:  Please be seated.  Good afternoon.

 4              MR. QURESHI:  Afternoon, Your Honor.

 5              THE COURT:  All right.

 6              MS. YENAMANDRA:  Good afternoon, Your Honor.

 7      Aparna Yenamandra from Kirkland & Ellis on behalf of the

 8      Debtors.  Your Honor, we thought you could use a break from

 9      Mr. McKane, so we are in front of you today with the E-side

10      scheduling conference.

11              When we were last in front of you on Tuesday, we

12      handed up Your Honor a proposed form of order establishing

13      the E-side schedule.  Following that, we talked to a number

14      of E-side constituencies.  We made some revisions to the

15      order, exchanged some weekend emails, and we've come up with

16      a slightly modified version of the order that we filed last

17      night.  If Your Honor doesn't have a copy, I have one here.

18              THE COURT:  No, I haven't seen that.  Please

19      approach.  Thank you.

20              MS. YENAMANDRA:  So, before we walk Your Honor

21      through the changes in the order, it might be helpful to

22      just talk a little bit about how we got there.  And you will

23      see that there aren't a number of material changes, but the

24      changes are the product of, you know, a number of emails and

25      calls over the last four or five days.
```

1          And what they're really driven by is the desire to

2    not pressure Your Honor or your staff to have to meet our

3    PSA milestone of December 15th, 2016, while at the same time

4    kind of keeping everyone to the fire, as has been the

5    refrain from the beginning of these Chapter 11 cases.

6          So, what we did was, after Tuesday's conference,

7    you know, we reached out to folks.  And what we heard,

8    unsurprisingly, is that some people wanted to move faster;

9    some people wanted to move slower. We, you know, tried to

10   balance those considerations in light of a couple things,

11   the first, as I mentioned, being the PSA milestone, pursuant

12   to which we need an oral indication from Your Honor that the

13   plan as it relates to the E-side is confirmed as of December

14   15th.

15         On the other hand, we have -- you know, we had

16   some lessons learned from previous scheduling orders, the

17   most significant of which was setting up a linear fact and

18   expert discovery schedule.  So, we teed this up so that

19   expert discovery does not begin until fact discovery is

20   almost to a close.

21         At the same time, the next couple weeks are quite

22   busy in this case, which is a bit of an understatement,

23   given the last two weeks.  We've got the E-side disclosure

24   statement hearing, the E-side PSA and break-fee hearing, as

25   well as post-trial briefing on the T-side.  So, we're trying

1    to balance, you know, the resources of Your Honor and your

2    staff, who have already been tremendously accommodating to

3    the Debtors, with the fact that we're up against this PSA

4    milestone.

5              So, with that, if Your Honor turns to Page...

6              THE COURT:  6?

7              MS. YENAMANDRA:  6.

8              THE COURT:  I think.

9              MS. YENAMANDRA:  Yeah.  You'll see that we've only

10   made one change to the expert discovery schedule, and that's

11   a very marginal reduction of the period between when expert

12   reports are exchanged and when rebuttal expert disclosures

13   are made.

14             If Your Honor will turn to Page 7, this is where

15   the bulk of the changes are.  And, taken collectively, what

16   they essentially do is they relax the confirmation schedule

17   just a little bit so that everybody's got a little bit of

18   breathing room.  But, as Your Honor will see on Page 8, we

19   still approach confirmation by the beginning of December,

20   with the pretrial conference on November 30th.

21             So, we think this revised schedule strikes the

22   balance of needing to start confirmation in time to meet the

23   December 15th milestone, while at the same time, you know,

24   appreciating that there's a holiday season in there and, you

25   know, everybody's resources are focused on post-trial

1    briefing and the disclosure statement and the TSA motion.

2    And, you know, we're trying to accommodate that in the

3    schedule in front of you today.

4         Now, there's one objection that was filed in

5    response to the schedule.  That was from the ad hoc group of

6    EFIH Unsecured Noteholders, who are requesting that the

7    schedule move materially faster.  So, as opposed to a

8    December 1st start date, I believe they're asking for a

9    November 3rd start date.

10        And, Your Honor, this -- I will let them speak for

11   themselves, but this is, I'm sure, driven by the fact that

12   the plan contemplates paying them nearly in full, and

13   they're waiting for their payment, which we very much

14   appreciate on our end as well.  No one is more ready for the

15   E-side to emerge than the E-side Debtors.

16        That being said, we are, as we've been since Day 1

17   of this case, trying to balance a number of competing

18   considerations.  And if Your Honor is having a bit of a déjà

19   vu moment, it's because we were here August 23rd of 2015

20   with a proposed E-side schedule that contemplated starting a

21   confirmation proceeding November 3rd.  That was teed up off

22   of a milestone in the Hunt PSA that required us to get a

23   confirmation order by January 15th.

24        Now, that is a larger period than we have today,

25   but that's because, in that nine-week period, we had two

1    holiday periods and the need to get an order confirming the

2    plan as to all Debtors, as well as, as Your Honor probably

3    remembers, a fairly contested settlement agreement.

4            So, that's not the situation we're in today.  We -

5    - you know, we believe, as we said on the 16th, and as I

6    think bears repeating today, that the issues on the E-side

7    will or should be significantly narrowed.  At the same time,

8    we are cognizant of the fact that we are not rendering

9    everyone unimpaired.  And, despite our best efforts, there

10   probably will be the need for some, you know, expert

11   evidence to be put on.  And that's the reality, in short,

12   that we're trying to balance in this schedule.

13           This is a schedule that we've worked to develop

14   consensus on over the last couple days.  This is a schedule

15   that we've noticed out.  And this is a schedule we believe -

16   - we would ask Your Honor to enter to bring some order to

17   the E-side.

18           THE COURT:  Okay.  Anyone else?  Mr. Glueckstein?

19   Or Mr. Qureshi?

20           MR. QURESHI:  Good afternoon, Your Honor.

21           THE COURT:  Good afternoon.

22           MR. QURESHI:  For the record, Abid Qureshi, Akin

23   Gump Strauss Hauer & Feld, on behalf of UMB as Trustee for

24   the EFIH PIC notes.  And, Your Honor, we did indeed file an

25   objection.  In our view, as I outlined in the status

1    conference last week, Your Honor, we think that, under the

2    circumstances, it would be appropriate to expedite the

3    schedule just a little bit.

4           And if I could, briefly, Your Honor, walk through

5    the principal justifications, there are four things I want

6    to touch upon.  One is the marketing process that has taken

7    place.  Two is the narrowed factual disputes.  Three is the

8    cost of delay.  And the fourth is a comparison to what we

9    did last year.

10          So, to start off with the Oncor marketing process,

11   as Your Honor is well aware, it began back in 2014.  The

12   formal process, when bidding was opened to creditor

13   constituencies and to third parties, as part of a Court-

14   approved process, occurred in about March of 2015.  So, to

15   say, Your Honor, that this marketing process has been

16   thorough and vigorous compared to most Chapter 11 cases, I

17   think, is a fairly dramatic understatement, given just how

18   long it's been going on.

19          And that is no doubt, Your Honor, why, in the

20   Debtors' own reply, they state that they don't believe that

21   a valuation trial in connection with the E-side plan is

22   either appropriate or necessary.  And we agree

23   wholeheartedly with that statement.

24          I think the trouble we have, Your Honor, is

25   reconciling that statement and that reality with the

1    Debtors' statement in their reply that the need for a

2    valuation trial is the principal justification for not

3    starting until December.  We just don't think the two things

4    can be reconciled in light of the marketing process.  We

5    think that truly does away with the need for a full-blown

6    valuation trial.

7            Now, to the extent that any objectors think that

8    it would somehow be persuasive to put on, through an expert,

9    what has been referred to as a desktop valuation, even under

10   our proposed schedule, starting in November, Your Honor, we

11   think that is more than possible to do in that timeframe.

12   The parties would have ample opportunity to do that if they

13   saw fit.

14           Turning next to the factual disputes, so, again,

15   the Debtors have stated in their reply, Your Honor, that the

16   contested issues at the E-side confirmation hearing will be,

17   quote, "significantly narrowed."  And, again, we agree.  And

18   the narrowing results from three principal things:  first of

19   all, the tremendous amount of discovery that has taken place

20   throughout the course of these Chapter 11 cases; secondly,

21   the marketing process that I just referred to; and thirdly,

22   the evidence that Your Honor has heard over the course of

23   the last two weeks in connection with T-side confirmation.

24           So, again, we agree completely with the Debtors

25   that the factual disputes are substantially narrowed.  And,

1    again, we just don't think that that statement can be

2    reconciled with the schedule that the Debtors propose.

3          So, why do we care?  Why are we fighting about 30

4    days, or a little less than 30 days, in this schedule?

5    Principally, Your Honor, it's because of the cost.  Now, as

6    Your Honor may recall from yesterday's testimony from Ms.

7    Dore, she testified that, at EFH, they are projected to have

8    about $250 million in cash on hand, and that the cash burn

9    at EFH presently, just steady state, month after month

10   through these Chapter 11 cases, is $10 million.

11         And, in addition to that, Your Honor, there is the

12   significant interest expense associated with the second lien

13   debt.  And so, a month of delay has very real and very

14   tangible costs.  It comes at the expense of the Creditors of

15   EFH.  And we just don't think it's necessary when, under the

16   circumstances, a more expedited schedule, we think, is very

17   appropriate.

18         Lastly, Your Honor, if I could talk about what we

19   went through last year -- and I have a chart, if I may hand

20   up, and I've handed it around.

21         THE COURT:  Mm hmm.  Yes.  Thank you.

22         MR. QURESHI:  Now, Your Honor, the Debtors are

23   correct; as part of our objection, we did not propose a

24   specific schedule with all of the interim deadlines.  Our

25   thought was that, once Your Honor rules on when confirmation

Page 12

1    should start, we could work backwards with the parties to

2    come to all of the interim deadlines.

3            In light of that comment in the Debtors' reply,

4    however, we did put together, on this chart, three things.

5    What we show is on the left column is what the Debtors are

6    proposing now.  The center column is what the Debtors

7    proposed last year.  And the right-hand column, Your Honor,

8    is what we would propose based on a November 3rd start date,

9    which, of course, would be subject to Your Honor's schedule.

10           And it was quite easy to come up with, Your Honor,

11   because the overlap with last year made it easy.  Last

12   year's schedule, Your Honor, was approved on the 27th of

13   August.  And the confirmation hearing last year began on the

14   third of November.  And here we are on August the 23rd,

15   looking for a confirmation hearing that also begins around

16   November the third.  In light of the complexities and the

17   number of disputes last time around, we think that schedule

18   was certainly expedited but very doable.

19           The differences, Your Honor, are really in two

20   areas.  The first is fact discovery.  Last year, the

21   schedule that was approved by this Court provided for 38

22   days for fact discovery.  That's measured from when -- from

23   the scheduling hearing through to the end of fact discovery.

24   This time around, notwithstanding the Debtors' statement

25   that the factual disputes are significantly narrower, their

1    proposed schedule allows for 51 days of fact discovery.

2            Now, what we propose in the dates that we have put

3    in is approximately 41 days, so a little more than last

4    year, 10 days less.  Again, given the narrowing of disputes,

5    the trial that we just had, we think that's more than

6    sufficient.

7            The second big area of difference, of course,

8    relates to expert discovery.  And what the Debtors had

9    proposed, and what we in fact did last year, is just seven

10   days of expert discovery after the service of expert

11   reports, and there were no expert rebuttal reports.  This

12   year, what the Debtors are proposing in their schedule is 28

13   days of expert discovery.  Again, we just think that's too

14   much, particularly in light of the fact that the Debtors

15   themselves say that there is no need for a valuation trial.

16           So, we have proposed 14 days for expert discover.

17   And, again, we think that is more than sufficient for any

18   objecting party who wants to come and put on expert

19   valuation testimony to do that.

20           So, in conclusion, Your Honor, the Debtors

21   proposed what we think is an unduly lengthy schedule.  And

22   what the Debtors say is, "Well, parties can always come

23   back, if circumstances justify, to seek a more expedited

24   schedule."

25           And respectfully, Your Honor, we just think it's

1   backwards, that what the Debtors ought to be doing in these

2   circumstances -- again, given their own description of the

3   issues that this Court will have to tackle -- is to set a

4   more expedited schedule and, if parties then believe that

5   they need more time, those parties can come back and ask the

6   Court for more time.  But we think, in light of the savings

7   that the estate would benefit from, that a more expedited

8   schedule is appropriate.

9           THE COURT:  Okay.  Thank you, Mr. Qureshi.

10          MR. QURESHI:  Thank you, Your Honor.

11          THE COURT:  Mr. Glueckstein?

12          MR. GLUECKSTEIN:  Thank you, Your Honor.  For the

13  record, Brian Glueckstein, Sullivan & Cromwell, on behalf of

14  the E-side Creditors Committee.  Your Honor, from the

15  Committee's perspective, it's critically important that a

16  schedule be put in place that will set a clear path to

17  emergence and Creditor recoveries at the E-side Debtors,

18  including EFH and EFIH.

19          We have had numerous discussions over the past

20  week since the Debtors proposed their schedule with

21  constituents on the E-side about appropriate schedule.  And

22  we certainly agree with the Debtors' observation that, as we

23  stand here today, there are differing views within the E-

24  side as to how the schedule should proceed.  And I certainly

25  appreciate -- I personally appreciate some of the comments

1    Mr. Qureshi made with respect to what us doable under the

2    circumstances.

3              But it is also critically important, from the

4    Committee's perspective, that the Debtors continue to pursue

5    the highest and best offer for its interest in Oncor through

6    its ongoing marketing process, and that that process have an

7    opportunity to reach a natural conclusion.  That needs to be

8    balanced against the need to provide a reasonable litigation

9    schedule, to the extent there are objections to the E-side

10   plan, but at the same time preventing unnecessary cash burn

11   through interest and case expenses that continue to accrue

12   at the E-side Debtors.

13             We do believe, Your Honor, that the circumstances

14   are likely to continue to evolve over the next month, and

15   likely even beyond.  And the Debtors have included, you

16   know, an express reservation of rights in Paragraph 14 of

17   their proposed order, with respect to coming back and

18   seeking to accelerate the schedule if circumstances are

19   appropriate to do so.

20             THE COURT:  I got to tell you, I mean, I don't see

21   how that, as a practical matter, works.  I think everybody

22   is more than aware of how my schedule fills up.  And I can't

23   imagine setting a two-week -- I'm going to put it down for

24   two weeks -- two-week trial for December, and then somebody

25   coming back on October 15th and saying, you know, "Judge, we

1    decided we want to start November 3rd instead."  There won't

2    -- the time won't -- it won't work.  I mean there won't be

3    space.

4             It may not work to push it back either.  I mean,

5    you may schedule it for November 3rd and come in on November

6    2nd and say, "We'd like to start December 3rd," and you

7    might hear, "I have some time in February."  I mean, I don't

8    -- you know my schedule is very tight, always.

9             MR. GLUECKSTEIN:  Understood, Your Honor.  And

10   certainly from -- you know, from the Committee's

11   perspective, that couldn't be, obviously, too late.  And

12   we're not advocating that that would ever necessarily be

13   appropriate.  We're just pointing out that the Debtors were

14   contemplating parties making that pitch.  It did happen with

15   respect to the circumstances that developed last year, where

16   it was moved up from the original schedule that was entered.

17            And so, I think that the orders are simply

18   acknowledging that circumstances might arise, as they would

19   be even if this reservation of rights was not in there, that

20   folks could always come forward and say changed

21   circumstances, subject to the Court's schedule, and request

22   relief under those circumstances.

23            From the Committee's perspective, Your Honor, in

24   light of the competing concerns expressed by various

25   constituents, the Debtors' proposed order does incorporate

1   comments from the Committee as to some of the interim dates.

2   And, under the circumstances, the Committee does have no

3   objection to entry of the Debtors' proposed schedule with

4   the December 1st start date.

5              THE COURT:  Okay.

6              MR. GLUECKSTEIN:  Thank you.

7              THE COURT:  Thank you.  Mr. Pedone?

8              MR. PEDONE:  Your Honor, very briefly, the EFH

9   Indenture Trustee supports the Debtors' schedule.

10             THE COURT:  Thank you.  Hang on.  I'm sorry.  I'm

11  sorry; I'm trying to check something.  Go ahead.  I

12  apologize.

13             MS. YENAMANDRA:  No, no problem, Your Honor.  Just

14  a few points, very quickly, in response to the PIC

15  statements.  First of all, one of the key differences

16  between the discovery process on the E-side as compared to

17  the T-side is the extensive involvement of Oncor and the

18  need to develop facts from the Oncor side.  Now, Oncor is

19  not a Debtor, so we took that fact into consideration as we

20  developed this discovery schedule.

21             The second and, I think, very key point is that

22  the plan contemplates that the E-side will emerge March 31st

23  of 2017.  That's what all of the figures are based off of.

24  That date is not teed up off of when confirmation will

25  happen, whether we get that order December 15th or whether

1    we get it November 15th.  That's teed up off of the PUCT

2    approval process, which will happen, you know,

3    contemporaneously, regardless of whether there's a month

4    difference in the confirmation order.

5          The third point I think worth making is, you know,

6    the Debtors obviously have their belief on what level of

7    valuation discovery is necessary and what depth of valuation

8    trial is necessary.  What we've learned in this case,

9    though, is, as hard as we push it, we're not -- you know,

10   we're one of -- one cog in a larger machine.  So, we're

11   trying to balance the fact that we don't think a valuation

12   trial is necessary against the fact that others may not

13   agree, and others will have an opportunity to voice that,

14   given that we're not rendering them unimpaired.

15          The final point we'd like to make, to echo Mr.

16   Glueckstein's views, is that -- and Your Honor heard Mr.

17   Keglevic testify about this earlier last week, about the

18   marketing process and efforts to maximize value at EFH.  To

19   Mr. Glueckstein's point, that process needs some time to

20   play out, and we think our schedule appropriately

21   accommodates that need as well.

22          THE COURT:  Thank you.  Well, I am certainly

23   cognizant of the desire to have these cases move to

24   confirmation as quickly as possible.  I am very cognizant of

25   the burn of professional fees and other expenses associated

1    with being in bankruptcy, which is highly significant, and

2    that every dollar that goes to those fees is a dollar left -

3    - a dollar unavailable for general unsecured creditors at

4    any of the E-side entities, particularly EFH at the top of

5    the structure.

6            And while I appreciate the argument that the

7    marketing process foregoes the need to prepare for

8    evaluation, I certainly can't foreclose parties' rights to

9    put on the case that they think is appropriate.

10           And, if we're going to have valuation -- and, you

11   know, valuation was always sort of out there, if -- as an

12   issue that might arise if we got to an E-side restructuring

13   that impaired creditors, and it looks like we're there for a

14   variety of reasons.  So, if we're going to have a discussion

15   about valuation, if we're going to have valuation evidence,

16   even truncated valuation evidence at a hearing, that's all

17   about expert discovery.  And the give on the schedule really

18   needs to be a give for expert discovery.

19           Obviously, E-side valuation was not an issue with

20   the plan last December.  And, indeed, expert discovery

21   really wasn't the sort of mover and shaker of that case

22   either.  That was really a factually based trial and a legal

23   -- a series of legal arguments, obviously, about what

24   impairment means and doesn't mean.  We went round and round

25   on that.

1          So, I -- the other thing I would say is last year

2    was a completely appropriate schedule, issued by a wise

3    judge, (Laughter) but was incredibly aggressive and was

4    about as short as you could do it within the consistency of

5    due process.  And I am very reluctant to put the parties

6    through that kind of process if not absolutely necessary.

7          And I think an extra 30 days or 28 days in the

8    schedule to allow for what will still be, in the terms of

9    real-life litigation outside the bankruptcy world, an

10   incredibly short amount of time to accomplish a lot, it's, I

11   think, a more appropriate, relaxed, in a relative term,

12   schedule to allow what will probably be a lot of work to be

13   done in a compressed timeframe.

14          So, I think that the Debtors' proposal, as

15   supported by the Committee and by the EFH Indenture Trustee,

16   is the appropriate schedule.  It is still, again, a

17   aggressive schedule, but I think it's built in -- I'm

18   particularly happy, actually, with the -- with more time for

19   the expert discovery.  I think that's really necessary here.

20   So, I was glad to see that stretched out a little bit.

21          So, I'll approve the -- overrule the objection and

22   approve the order as stated, or as submitted, and we'll go

23   through the dates here in just a second, a little tweak on

24   at least one of them.

25          But the practicalities of accelerating, I -- you

1    know, I said, in my colloquy with Mr. Glueckstein, I -- you

2    know, this is going to be the date.  And I'm not saying I

3    won't consider accelerating, especially if global peace

4    breaks out, but, you know, any Court's calendar tightens,

5    and this Court is no exception.  So, it would be certainly

6    difficult to find time in early to mid November that's not

7    already sort of reserved, and I can't reserve it as sort of

8    -- I can only give so many weeks to the EFH on my schedule.

9            So, I think, you know, the dates I'm setting are

10   the dates we're going to live with.  And people should sort

11   of approach it that way.  But if there's a change in

12   circumstances, especially if it's fully consensual, which I

13   think would be difficult to achieve, I'll do my best to

14   accommodate a request for an earlier date.  But I think that

15   would be probably highly unrealistic.  But I won't foreclose

16   the Court's -- I won't foreclose anyone's attempt to try to

17   make that happen, and I'll cooperate to the best of my

18   ability.

19           So, I see three dates that you want from me that

20   you don't already have, which was a November 14th pretrial,

21   and that's on Page -- where is it?

22           MS. YENAMANDRA:  It's on Page 7.

23           THE COURT:  Page 7?

24           MS. YENAMANDRA:  Yeah, 13(c).

25           THE COURT:  Right.  And then a November 30 date,

1    and then starting December 1 for the confirmation hearing.

2              MS. YENAMANDRA:  That's right.

3              THE COURT:  Okay.  So, 11/14 won't work.  I'll be

4    out of town that day.  We could do the 15th, although I'd

5    like to do later in the day than sort of normal.  So, maybe

6    we could do 11/15 at 2 p.m., if that's okay.

7              MS. YENAMANDRA:  That works for the Debtors, Your

8    Honor.

9              THE COURT:  Okay.  And then November 30th -- when

10   is Thanksgiving?  All right.  So, Thanksgiving is the 24th.

11   Okay.  So -- yeah, so November 30th at 10 a.m.  And trial

12   starting 12/1, that's fine.  In the spirit of it's easier to

13   take away than to give at a later date, I'm going to

14   hopefully overschedule this; then we won't ultimately need

15   all of these dates.  But I'm going to get them down and on

16   the calendar and reserved.  So, let's -- I need to leave a

17   little wiggle room for my other cases.

18             MS. YENAMANDRA:  I see Your Honor has channeled my

19   youth and optimism from Tuesday.

20             THE COURT:  I'm feeling it.  (Laughter)  All

21   right.  So, the -- so, we'll do the 1st and the 2nd.  Each

22   day, we'll go 10-5 with a pretrial at 9:30.  So, the 1st and

23   2nd.  Let's do the 5th through Thursday the 8th and leave

24   Friday free for other cases if something arises.  And we'll

25   do the 12th through the 15th as well.

1    Now, on the 13th, we have a special EFH hearing on

2  pro se claim objections.  So, that -- so, you'll only have a

3  half-day on the 13th.  So, how many days is that?  Sorry.

4  That's one, two, six, seven, eight, nine.  It's nine and a

5  half trial days.  Oh man, I don't know if that's enough.

6    All right, tell you what?  We'll just -- we'll do

7  this.  Yeah, all right.  All right.  We'll make that work.

8  And if we need -- if it gets to closer and it looks like

9  that's not going to be enough time, we'll revisit it.

10    MR. GLUECKSTEIN:  Very good, Your Honor.

11    MS. YENAMANDRA:  Thank you, Your Honor.

12    THE COURT:  All right.  So, it'll be all day the

13  1st and 2nd, and the 5th through the 8th, and the 12th

14  through the 15th, with it'll be a half-day on the 13th.

15    MS. YENAMANDRA:  Thank you, Your Honor.  We'll

16  file a revised under certification of counsel with those

17  dates baked in, if that works.

18    THE COURT:  Okay.  Very good.

19    MS. YENAMANDRA:  And I think that is all we had

20  today.

21    THE COURT:  Excellent.

22    MS. YENAMANDRA:  Thank you very much for your time

23  and efforts, as always, and we will reconvene with the T-

24  side tomorrow.

25    THE COURT:  All right.  We'll see you at 12:30

1    tomorrow.  We're adjourned.

2              MR. GLUECKSTEIN:  Thank you, Your Honor.

3              MR. QURESHI:  Thank you, Your Honor.

4              MR. PEDONE:  Thank you, Your Honor.

5

6

7

8                          *  *  *  *  *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 25

1                           I N D E X

2

3                           RULINGS

4   DESCRIPTION                          PAGE        LINE

5      Scheduling order approved          20          21

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 26

1                          C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4       transcript is a true and accurate record of the proceedings.

5

6              Sonya Ledanski Hyde

Digitally signed by Sonya Ledanski Hyde
DN: cn=Sonya Ledanski Hyde, o=Veritext,
ou, email=digital@veritext.com, c=US
Date: 2016.11.21 14:35:34 -05'00'

7

8       Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20      Veritext Legal Solutions

21      330 Old Country Road

22      Suite 300

23      Mineola, NY 11501

24

25      Date:  November 21, 2016