at the direction of such Holders, the Trustee shall be entitled to receive from
such Holders reasonable security or indemnity against the costs, expenses and
liabilities which might be incurred by it in compliance with any such direction.
<PAGE>

-50-


SECTION 813.  WAIVER OF PAST DEFAULTS.

        The Holders of not less than a majority in principal amount of the
Outstanding Securities of any series may on behalf of the Holders of all the
Securities of such series waive any past default hereunder with respect to such
series and its consequences, except a default

        (a)  in the payment of the principal of or premium, if any, or
interest, if any, on any Security of such series, or

        (b)  in respect of a covenant or provision hereof which under Section
1202 cannot be modified or amended without the consent of the Holder of
each Outstanding Security of such series affected.

        Upon any such waiver, such default shall cease to exist, and any and
all Events of Default arising therefrom shall be deemed to have been cured, for
every purpose of this Indenture; but no such waiver shall extend to any
subsequent or other default or impair any right consequent thereon.

SECTION 814.  UNDERTAKING FOR COSTS.

        The Company and the Trustee agree, and each Holder by his acceptance
thereof shall be deemed to have agreed, that any court may in its discretion
require, in any suit for the enforcement of any right or remedy under this
Indenture, or in any suit against the Trustee for any action taken, suffered or
omitted by it as Trustee, the filing by any party litigant in such suit of an
undertaking to pay the costs of such suit, and that such court may in its
discretion assess reasonable costs, including reasonable attorneys' fees,
against any party litigant in such suit, having due regard to the merits and
good faith of the claims or defenses made by such party litigant; but the
provisions of this Section shall not apply to any suit instituted by the
Company, to any suit instituted by the Trustee, to any suit instituted by any
Holder, or group of Holders, holding in the aggregate more than 10% in aggregate
principal amount of the Outstanding Securities of all series in respect of which
such suit may be brought, considered as one class, or to any suit instituted by
any Holder for the enforcement of the payment of the principal of or premium, if
any, or interest, if any, on any Security on or after the Stated Maturity or
Maturities expressed in such Security (or, in the case of redemption, on or
after the Redemption Date).

SECTION 815.  WAIVER OF STAY OR EXTENSION LAWS.

        The Company covenants (to the extent that it may lawfully do so) that
it will not at any time insist upon, or plead, or in any manner whatsoever claim
or take the benefit or advantage of, any stay or extension law wherever enacted,
now or at any time hereafter in force, which may affect the covenants or the
performance of this Indenture; and the Company (to the extent that it may
lawfully do so) hereby expressly waives all benefit or advantage of
<PAGE>

-51-


any such law and covenants that it will not hinder, delay or impede the
execution of any power herein granted to the Trustee, but will suffer and permit
the execution of every such power as though no such law had been enacted.

ARTICLE NINE

THE TRUSTEE

SECTION 901.  CERTAIN DUTIES AND RESPONSIBILITIES.

(a) The Trustee shall have and be subject to all the duties and responsibilities specified with respect to an indenture trustee in the Trust Indenture Act and no implied covenants or obligations shall be read into this Indenture against the Trustee. For purposes of Sections 315(a) and 315(c) of the Trust Indenture Act, the term "default" is hereby defined as an Event of Default which has occurred and is continuing.

(b) No provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(c) Notwithstanding anything contained in this Indenture to the contrary, the duties and responsibilities of the Trustee under this Indenture shall be subject to the protections, exculpations and limitations on liability afforded to the Trustee under the provisions of the Trust Indenture Act.

(d) Whether or not therein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Section.

SECTION 902.  NOTICE OF DEFAULTS.

The Trustee shall give notice of any default hereunder with respect to the Securities of any series to the Holders of Securities of such series in the manner and to the extent required to do so by the Trust Indenture Act, unless such default shall have been cured or waived; provided, however, that in the case of any default of the character specified in Section 801(c), no such notice to Holders shall be given until at least 45 days after the occurrence thereof. For the purpose of this Section, the term "default" means any event which is, or after notice or lapse of time, or both, would become, an Event of Default.
<PAGE>

-52-

SECTION 903.  CERTAIN RIGHTS OF TRUSTEE.

Subject to the provisions of Section 901 and to the applicable provisions of the Trust Indenture Act:

(a) the Trustee may rely and shall be protected in acting or refraining from acting in good faith upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties;

(b) any request or direction of the Company mentioned herein shall be sufficiently evidenced by a Company Request or Company Order, or as otherwise expressly provided herein, and any resolution of the Board of Directors may be sufficiently evidenced by a Board Resolution;

(c) whenever in the administration of this Indenture the Trustee shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Trustee (unless other

evidence be herein specifically prescribed, may, in the absence of bad faith on its part, rely upon an Officer's Certificate.

(d) the Trustee may consult with counsel and the written advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon;

(e) the Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request or direction of any Holder pursuant to this Indenture, unless such Holder shall have offered to the Trustee reasonable security or indemnity against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction;

(f) the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document, but the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit, and, if the Trustee shall determine to make such further inquiry or investigation, it shall (subject to applicable legal requirements) be entitled to examine, during normal business hours, the books, records and premises of the Company, personally or by agent or attorney;

<PAGE>

-53-

(g) the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys, and the Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder; and

(h) the Trustee shall not be charged with knowledge of any default or Event of Default, as the case may be, with respect to the Securities of any series for which it is acting as Trustee unless either (1) a Responsible Officer of the Trustee shall have actual knowledge of the default or Event of Default, as the case may be, or (2) written notice of such default or Event of Default, as the case may be, shall have been given to the Trustee by the Company, any other obligor on such Securities or by any Holder of such Securities.

SECTION 904.  NOT RESPONSIBLE FOR RECITALS OR ISSUANCE OF SECURITIES.

The recitals contained herein and in the Securities (except the Trustee's certificates of authentication) shall be taken as the statements of the Company, and neither the Trustee nor any Authenticating Agent assumes responsibility for their correctness. The Trustee makes no representations as to the validity or sufficiency of this Indenture or of the Securities. Neither the Trustee nor any Authenticating Agent shall be accountable for the use or application by the Company of Securities or the proceeds thereof.

SECTION 905.  MAY HOLD SECURITIES.

Each of the Trustee, any Authenticating Agent, any Paying Agent, any Security Registrar or any other agent of the Company, in its individual or any other capacity, may become the owner or pledgee of Securities and, subject to Sections 908 and 913, may otherwise deal with the Company with the same rights it would have if it were not the Trustee, Authenticating Agent, Paying Agent, Security Registrar or such other agent.

SECTION 906.  MONEY HELD IN TRUST.

Money held by the Trustee in trust hereunder need not be segregated from other funds, except to the extent required by law. The Trustee shall be under no liability for interest on any money received by it hereunder except as expressly provided herein or otherwise agreed with, and for the sole benefit of, the Company.
<PAGE>

-54-

SECTION 907.  COMPENSATION AND REIMBURSEMENT.

        The Company shall

        (a) pay to the Trustee from time to time reasonable compensation for all services rendered by it hereunder (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust);

        (b) except as otherwise expressly provided herein, reimburse the Trustee upon its request for all reasonable expenses, disbursements and advances reasonably incurred or made by the Trustee in accordance with any provision of this Indenture (including the reasonable compensation and the expenses and disbursements of its agents and counsel), except to the extent that any such expense, disbursement or advance may be attributable to the Trustee's negligence, wilful misconduct or bad faith; and

        (c) indemnify the Trustee for, and hold it harmless from and against, any loss, liability or expense reasonably incurred by it arising out of or in connection with the acceptance or administration of the trust or trusts hereunder or the performance of its duties hereunder, including the reasonable costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder, except to the extent any such loss, liability or expense may be attributable to its negligence, wilful misconduct or bad faith.

        As security for the performance of the obligations of the Company under this Section, the Trustee shall have a lien prior to the Securities upon all property and funds held or collected by the Trustee as such other than property and funds held in trust under Section 703 (except as otherwise provided in Section 703). "Trustee" for purposes of this Section shall include any predecessor Trustee; provided, however, that the negligence, wilful misconduct or bad faith of any Trustee hereunder shall not affect the rights of any other Trustee hereunder.

        When the Trustee incurs expenses or renders services in connection with an Event of Default specified in Section 801(d) or Section 801(e), the expenses (including the reasonable charges and expenses of its counsel) and the compensation for the services are intended to constitute expenses of administration under any applicable Federal or State bankruptcy, insolvency or other similar law.

SECTION 908.  DISQUALIFICATION; CONFLICTING INTERESTS.

        If the Trustee shall have or acquire any conflicting interest within the meaning of the Trust Indenture Act, it shall either eliminate such conflicting interest or resign to the extent, in the manner and with the effect, and subject to the conditions, provided in the Trust Indenture Act and this Indenture. For purposes of Section 310(b)(1) of the Trust Indenture Act and to the extent permitted thereby, the Trustee, in its capacity as trustee in respect of the

<PAGE>

-55-

Securities of any series, shall not be deemed to have a conflicting interest arising from its capacity as trustee in respect of the Securities of any other series or any securities of any series issued under the Indenture (For Unsecured Debt Securities Series A) dated as of October 1, 1997 of the Company to the Trustee or the Indenture (For Unsecured Debt Securities Series B) dated as of October 1, 1997 of the Company to the Trustee.

SECTION 909.    CORPORATE TRUSTEE REQUIRED; ELIGIBILITY.

        There shall at all times be a Trustee hereunder which shall be

        (a) a corporation organized and doing business under the laws of the United States, any State or Territory thereof or the District of Columbia, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $50,000,000 and subject to supervision or examination by Federal or State authority, or

        (b) if and to the extent permitted by the Commission by rule, regulation or order upon application, a corporation or other Person organized and doing business under the laws of a foreign government, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $50,000,000 or the Dollar equivalent of the applicable foreign currency and subject to supervision or examination by authority of such foreign government or a political subdivision thereof substantially equivalent to supervision or examination applicable to United States institutional trustees,

and, in either case, qualified and eligible under this Article and the Trust Indenture Act. If such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of such supervising or examining authority, then for the purposes of this Section, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. If at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section, it shall resign immediately in the manner and with the effect hereinafter specified in this Article.

SECTION 910.    RESIGNATION AND REMOVAL; APPOINTMENT OF SUCCESSOR.

        (a) No resignation or removal of the Trustee and no appointment of a successor Trustee pursuant to this Article shall become effective until the acceptance of appointment by the successor Trustee in accordance with the applicable requirements of Section 911.

        (b) The Trustee may resign at any time with respect to the Securities of one or more series by giving written notice thereof to the Company. If the instrument of acceptance by a successor Trustee required by Section 911 shall not have been

<PAGE>

-56-

delivered to the Trustee within 30 days after the giving of such notice of resignation, the resigning Trustee may petition any court of competent jurisdiction for the appointment of a successor Trustee with respect to the Securities of such series.

        (c) The Trustee may be removed at any time with respect to the Securities of any series by Act of the Holders of a majority in principal amount of the Outstanding Securities of such series delivered to the Trustee and to the Company.

(d)  If at any time:

    (1) the Trustee shall fail to comply with Section 908 after written request therefor by the Company or by any Holder who has been a bona fide Holder for at least six months, or

    (2) the Trustee shall cease to be eligible under Section 909 and shall fail to resign after written request therefor by the Company or by any such Holder, or

    (3) the Trustee shall become incapable of acting or shall be adjudged a bank rupt or insolvent or a receiver of the Trustee or of its property shall be appointed or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation,

then, in any such case, (x) the Company by a Board Resolution may remove the Trustee with respect to all Securities or (y) subject to Section 814, any Holder who has been a bona fide Holder for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee with respect to all Securities and the appointment of a successor Trustee or Trustees.

    (e) If the Trustee shall resign, be removed or become incapable of acting, or if a vacancy shall occur in the office of Trustee for any cause (other than as contemplated in clause (y) in Subsection (d) of this Section), with respect to the Securities of one or more series, the Company, by a Board Resolution, shall promptly appoint a successor Trustee or Trustees with respect to the Securities of that or those series (it being understood that any such successor Trustee may be appointed with respect to the Securities of one or more or all of such series and that at any time there shall be only one Trustee with respect to the Securities of any particular series) and shall comply with the applicable requirements of Section 911. If, within one year after such resignation, removal or incapability, or the occurrence of such vacancy, a successor Trustee with respect to the Securities of any series shall be appointed by Act of the Holders of a majority in principal amount of the Outstanding Securities of such series delivered to the Company and the retiring Trustee, the successor Trustee so appointed shall, forthwith upon its acceptance of such appointment in accordance with the applicable requirements of Section 911, become the successor Trustee with respect to the Securities of such series and to that extent supersede the successor Trustee ap-

<PAGE>

-57-

pointed by the Company. If no successor Trustee with respect to the Securities of any series shall have been so appointed by the Company or the Holders and accepted appointment in the manner required by Section 911, any Holder who has been a bona fide Holder of a Security of such series for at least six months may, on behalf of itself and all others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Trustee with respect to the Securities of such series.

    (f) So long as no event which is, or after notice or lapse of time, or both, would become, an Event of Default shall have occurred and be continuing, and except with respect to a Trustee appointed by Act of the Holders of a majority in principal amount of the Outstanding Securities pursuant to Subsection (e) of this Section, if the Company shall have delivered to the Trustee (i) a Board Resolution appointing a successor Trustee, effective as of a date specified therein, and (ii) an instrument of acceptance of such appointment, effective as of such date, by such successor Trustee in accordance with Section 911, the Trustee shall be deemed to have resigned as contemplated in Subsection (b) of this Section, the successor Trustee shall be deemed to have been appointed by the Company

pursuant to Subsection (e) of this Section and such appointment shall be deemed to have been accepted as contemplated in Section 911, all as of such date, and all other provisions of this Section and Section 911 shall be applicable to such resignation, appointment and acceptance except to the extent inconsistent with this Subsection (f).

(g) The Company (or, should the Company fail so to act promptly, the successor trustee at the expense of the Company) shall give notice of each resignation and each removal of the Trustee with respect to the Securities of any series and each appointment of a successor Trustee with respect to the Securities of any series by mailing written notice of such event by first-class mail, postage prepaid, to all Holders of Securities of such series as their names and addresses appear in the Security Register. Each notice shall include the name of the successor Trustee with respect to the Securities of such series and the address of its corporate trust office.

SECTION 911.   ACCEPTANCE OF APPOINTMENT BY SUCCESSOR.

(a) In case of the appointment hereunder of a successor Trustee with respect to the Securities of all series, every such successor Trustee so appointed shall execute, acknowledge and deliver to the Company and to the retiring Trustee an instrument accepting such appointment, and thereupon the resignation or removal of the retiring Trustee shall become effective and such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee; but, on the request of the Company or the successor Trustee, such retiring Trustee shall, upon payment of all sums owed to it, execute and deliver an instrument transferring to such successor Trustee all the rights, powers and trusts of the retiring Trustee and shall duly assign, transfer and deliver to such successor Trustee all property and money held by such retiring Trustee hereunder.

<PAGE>

-58-

(b) In case of the appointment hereunder of a successor Trustee with respect to the Securities of one or more (but not all) series, the Company, the retiring Trustee and each successor Trustee with respect to the Securities of one or more series shall execute and deliver an indenture supplemental hereto wherein each successor Trustee shall accept such appointment and which (1) shall contain such provisions as shall be necessary or desirable to transfer and confirm to, and to vest in, each successor Trustee all the rights, powers, trusts and duties of the retiring Trustee with respect to the Securities of that or those series to which the appointment of such successor Trustee relates, (2) if the retiring Trustee is not retiring with respect to all Securities, shall contain such provisions as shall be deemed necessary or desirable to confirm that all the rights, powers, trusts and duties of the retiring Trustee with respect to the Securities of that or those series as to which the retiring Trustee is not retiring shall continue to be vested in the retiring Trustee and (3) shall add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one Trustee, it being understood that nothing herein or in such supplemental indenture shall constitute such Trustees co-trustees of the same trust and that each such Trustee shall be trustee of a trust or trusts hereunder separate and apart from any trust or trusts hereunder administered by any other such Trustee; and upon the execution and delivery of such supplemental indenture the resignation or removal of the retiring Trustee shall become effective to the extent provided therein and each such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee with respect to the Securities of that or those series to which the appointment of such suc cessor Trustee relates; but, on request of the Company or any successor Trustee, such retiring

Trustee, upon payment of all sums owed to it, shall duly assign, transfer and deliver to such successor Trustee all property and money held by such retiring Trustee hereunder with respect to the Securities of that or those series to which the appointment of such successor Trustee relates.

(c) Upon request of any such successor Trustee, the Company shall execute any instruments which fully vest in and confirm to such successor Trustee all such rights, powers and trusts referred to in Subsection (a) or (b) of this Section, as the case may be.

(d) No successor Trustee shall accept its appointment unless at the time of such acceptance such successor Trustee shall be qualified and eligible under this Article.

SECTION 912.  MERGER, CONVERSION, CONSOLIDATION OR SUCCESSION TO BUSINESS.

Any corporation into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to all or substantially all the corporate trust business of the Trustee, shall be the successor of the Trustee

<PAGE>

-59-

hereunder, provided such corporation shall be otherwise qualified and eligible under this Article, without the execution or filing of any paper or any further act on the part of any of the parties hereto. In case any Securities shall have been authenticated, but not delivered, by the Trustee then in office, any successor by merger, conversion or consolidation to such authenticating Trustee may adopt such authentication and deliver the Securities so authenticated with the same effect as if such successor Trustee had itself authenticated such Securities.

SECTION 913.  PREFERENTIAL COLLECTION OF CLAIMS AGAINST COMPANY.

If the Trustee shall be or become a creditor of the Company or any other obligor upon the Securities (other than by reason of a relationship described in Section 311(b) of the Trust Indenture Act), the Trustee shall be subject to any and all applicable provisions of the Trust Indenture Act regarding the collection of claims against the Company or such other obligor. For purposes of Section 311(b) of the Trust Indenture Act:

(a) the term "cash transaction" means any transaction in which full payment for goods or securities sold is made within seven days after delivery of the goods or securities in currency or in checks or other orders drawn upon banks or bankers and payable upon demand;

(b) the term "self-liquidating paper" means any draft, bill of exchange, acceptance or obligation which is made, drawn, negotiated or incurred by the Company for the purpose of financing the purchase, processing, manufacturing, shipment, storage or sale of goods, wares or merchandise and which is secured by documents evidencing title to, possession of, or a lien upon, the goods, wares or merchandise or the receivables or proceeds arising from the sale of the goods, wares or merchandise previously constituting the security, provided the security is received by the Trustee simultaneously with the creation of the creditor relationship with the Company arising from the making, drawing, negotiating or incurring of the draft, bill of exchange, acceptance or obligation.

SECTION 914.  CO-TRUSTEES AND SEPARATE TRUSTEES.

At any time or times, for the purpose of meeting the legal

EFH01434918

requirements of any applicable jurisdiction, the Company and the Trustee shall have power to appoint, and, upon the written request of the Trustee or of the Holders of at least 33% in principal amount of the Securities then Outstanding, the Company shall for such purpose join with the Trustee in the execution and delivery of all instruments and agreements necessary or proper to appoint, one or more Persons approved by the Trustee either to act as co-trustee, jointly with the Trustee, or to act as separate trustee, in either case with such powers as may be provided in the instrument of appointment, and to vest in such Person or Persons, in the capacity aforesaid, any property, title, right or power deemed necessary or desirable, subject to the other provisions of this Section. If the Company does not join in such appointment within 15 days after the

<PAGE>

-60-

receipt by it of a request so to do, or if an Event of Default shall have occurred and be continuing, the Trustee alone shall have power to make such appointment.

Should any written instrument or instruments from the Company be required by any co-trustee or separate trustee so appointed to more fully confirm to such co-trustee or separate trustee such property, title, right or power, any and all such instruments shall, on request, be executed, acknowledged and delivered by the Company.

Every co-trustee or separate trustee shall, to the extent permitted by law, but to such extent only, be appointed subject to the following conditions:

(a) the Securities shall be authenticated and delivered, and all rights, powers, duties and obligations hereunder in respect of the custody of securities, cash and other personal property held by, or required to be deposited or pledged with, the Trustee hereunder, shall be exercised solely, by the Trustee;

(b) the rights, powers, duties and obligations hereby conferred or imposed upon the Trustee in respect of any property covered by such appointment shall be conferred or imposed upon and exercised or performed either by the Trustee or by the Trustee and such co-trustee or separate trustee jointly, as shall be provided in the instrument appointing such co-trustee or separate trustee, except to the extent that under any law of any jurisdiction in which any particular act is to be performed, the Trustee shall be incompetent or unqualified to perform such act, in which event such rights, powers, duties and obligations shall be exercised and performed by such co-trustee or separate trustee;

(c) the Trustee at any time, by an instrument in writing executed by it, with the concurrence of the Company, may accept the resignation of or remove any co-trustee or separate trustee appointed under this Section, and, if an Event of Default shall have occurred and be continuing, the Trustee shall have power to accept the resignation of, or remove, any such co-trustee or separate trustee without the concurrence of the Company. Upon the written request of the Trustee, the Company shall join with the Trustee in the execution and delivery of all instruments and agreements necessary or proper to effectuate such resignation or removal. A successor to any co-trustee or separate trustee so resigned or removed may be appointed in the manner provided in this Section;

(d) no co-trustee or separate trustee hereunder shall be personally liable by reason of any act or omission of the Trustee, or any other such trustee hereunder; and

(e) any Act of Holders delivered to the Trustee shall be deemed to have been delivered to each such co-trustee and separate trustee.

-61-


SECTION 915.  APPOINTMENT OF AUTHENTICATING AGENT.

        The Trustee may appoint an Authenticating Agent or Agents with respect
to the Securities of one or more series, or Tranche thereof, which shall be
authorized to act on behalf of the Trustee to authenticate Securities of such
series or Tranche issued upon original issuance and upon exchange, registration
of transfer or partial redemption thereof or pursuant to Section 306, and
Securities so authenticated shall be entitled to the benefits of this Indenture
and shall be valid and obligatory for all purposes as if authenticated by the
Trustee hereunder. Wherever reference is made in this Indenture to the
authentication and delivery of Securities by the Trustee or the Trustee's
certificate of authentication, such reference shall be deemed to include
authentication and delivery on behalf of the Trustee by an Authenticating Agent
and a certificate of authentication executed on behalf of the Trustee by an
Authenticating Agent. Each Authenticating Agent shall be acceptable to the
Company and shall at all times be a corporation organized and doing business
under the laws of the United States, any State or territory thereof or the
District of Columbia, authorized under such laws to act as Authenticating Agent,
having a combined capital and surplus of not less than $50,000,000 and subject
to supervision or examination by Federal or State authority. If such
Authenticating Agent publishes reports of condition at least annually, pursuant
to law or to the requirements of said supervising or examining authority, then
for the purposes of this Section, the combined capital and surplus of such
Authenticating Agent shall be deemed to be its combined capital and surplus as
set forth in its most recent report of condition so published. If at any time an
Authenticating Agent shall cease to be eligible in accordance with the
provisions of this Section, such Authenticating Agent shall resign immediately
in the manner and with the effect specified in this Section.

        Any corporation into which an Authenticating Agent may be merged or
converted or with which it may be consolidated, or any corporation resulting
from any merger, conversion or consolidation to which such Authenticating Agent
shall be a party, or any corporation succeeding to the corporate agency or
corporate trust business of an Authenticating Agent, shall continue to be an
Authenticating Agent, provided such corporation shall be otherwise eligible
under this Section, without the execution or filing of any paper or any further
act on the part of the Trustee or the Authenticating Agent.

        An Authenticating Agent may resign at any time by giving written
notice thereof to the Trustee and to the Company. The Trustee may at any time
terminate the agency of an Authenticating Agent by giving written notice thereof
to such Authenticating Agent and to the Company. Upon receiving such a notice of
resignation or upon such a termination, or in case at any time such
Authenticating Agent shall cease to be eligible in accordance with the
provisions of this Section, the Trustee may appoint a successor Authenticating
Agent which shall be acceptable to the Company. Any successor Authenticating
Agent upon acceptance of its appointment hereunder shall become vested with all
the rights, powers and duties of its predecessor hereunder, with like effect as
if originally named as an Authenticating Agent. No successor Authenticating
Agent shall be appointed unless eligible under the provisions of this Section.

<PAGE>


-62-



        The Trustee agrees to pay to each Authenticating Agent from time to
time reasonable compensation for its services under this Section, and the
Trustee shall be entitled to be reimbursed for such payments, in accordance
with, and subject to the provisions of, Section 907.

The provisions of Sections 308, 904 and 905 shall be applicable to each Authenticating Agent.

If an appointment with respect to the Securities of one or more series shall be made pursuant to this Section, the Securities of such series may have endorsed thereon, in addition to the Trustee's certificate of authentication, an alternate certificate of authentication substantially in the following form:

This is one of the Securities of the series designated therein referred to in the within-mentioned Indenture.

Dated:                                  -------------------------------
                                        As Trustee


                                        By
                                           ----------------------------
                                         As Authenticating
                                          Agent

                                        By
                                           ----------------------------
                                         Authorized Signatory

If all of the Securities of a series may not be originally issued at one time, and if the Trustee does not have an office capable of authenticating Securities upon original issuance located in a Place of Payment where the Company wishes to have Securities of such series authenticated upon original issuance, the Trustee, if so requested by the Company in writing (which writing need not comply with Section 102 and need not be accompanied by an Opinion of Counsel), shall appoint, in accordance with this Section and in accordance with such procedures as shall be acceptable to the Trustee, an Authenticating Agent having an office in a Place of Payment designated by the Company with respect to such series of Securities.

<PAGE>

-63-


ARTICLE TEN

HOLDERS' LISTS AND REPORTS BY TRUSTEE AND COMPANY

SECTION 1001.  LISTS OF HOLDERS.

Semiannually, not later than June 1 and December 1 in each year, commencing December 1, 1998, and at such other times as the Trustee may request in writing, the Company shall furnish or cause to be furnished to the Trustee information as to the names and addresses of the Holders, and the Trustee shall preserve such information and similar information received by it in any other capacity and afford to the Holders access to information so preserved by it, all to such extent, if any, and in such manner as shall be required by the Trust Indenture Act; provided, however, that no such list need be furnished so long as the Trustee shall be the Security Registrar.

SECTION 1002.  REPORTS BY TRUSTEE AND COMPANY.

Not later than November 1 in each year, commencing November 1, 1998, the Trustee shall transmit to the Holders, the Commission and each securities exchange upon which any Securities are listed, a report, dated as of the next preceding September 15, with respect to any events and other matters described in Section 313(a) of the Trust Indenture Act, in such manner and to the extent required by the Trust Indenture Act. The Trustee shall transmit to the Holders, the Commission and each securities exchange upon which any Securities are

listed, and the Company shall file with the Trustee (within 30 days after filing with the Commission in the case of reports which pursuant to the Trust Indenture Act must be filed with the Commission and furnished to the Trustee) and transmit to the Holders, such other information, reports and other documents, if any, at such times and in such manner, as shall be required by the Trust Indenture Act. The Company shall notify the Trustee of the listing of any Securities on any securities exchange.

ARTICLE ELEVEN

CONSOLIDATION, MERGER, CONVEYANCE OR OTHER TRANSFER

SECTION 1101.  COMPANY MAY CONSOLIDATE, ETC., ONLY ON CERTAIN TERMS.

The Company shall not consolidate with or merge into any other corporation, or convey or otherwise transfer or lease its properties and assets substantially as an entirety to any Person, unless

(a) the corporation formed by such consolidation or into which the Company is merged or the Person which acquires by conveyance or transfer, or which leases, the

<PAGE>

-64-

properties and assets of the Company substantially as an entirety shall be a Person organized and validly existing under the laws of the United States, any State thereof or the District of Columbia, and shall expressly assume, by an indenture supplemental hereto, executed and delivered to the Trustee, in form satisfactory to the Trustee, the due and punctual payment of the principal of and premium, if any, and interest, if any, on all Outstanding Securities and the performance of every covenant of this Indenture on the part of the Company to be performed or observed;

(b) immediately after giving effect to such transaction no Event of Default, and no event which, after notice or lapse of time or both, would become an Event of Default, shall have occurred and be continuing; and

(c) the Company shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that such consolidation, merger, conveyance, or other transfer or lease and such supplemental indenture comply with this Article and that all conditions precedent herein provided for relating to such transactions have been complied with.

SECTION 1102.  SUCCESSOR CORPORATION SUBSTITUTED.

Upon any consolidation by the Company with or merger by the Company into any other corporation or any conveyance, or other transfer or lease of the properties and assets of the Company substantially as an entirety in accordance with Section 1101, the successor corporation formed by such consolidation or into which the Company is merged or the Person to which such conveyance, transfer or lease is made shall succeed to, and be substituted for, and may exercise every right and power of, the Company under this Indenture with the same effect as if such successor Person had been named as the Company herein, and thereafter, except in the case of a lease, the predecessor Person shall be relieved of all obligations and covenants under this Indenture and the Securities Outstanding hereunder.

ARTICLE TWELVE

SUPPLEMENTAL INDENTURES

SECTION 1201.   SUPPLEMENTAL INDENTURES WITHOUT CONSENT OF HOLDERS.

          Without the consent of any Holders, the Company and the Trustee, at
any time and from time to time, may enter into one or more indentures
supplemental hereto, in form satisfactory to the Trustee, for any of the
following purposes:

<PAGE>

                                   -65-


          (a) to evidence the succession of another Person to the Company and
the assumption by any such successor of the covenants of the Company herein
and in the Securities, all as provided in Article Eleven; or

          (b) to add one or more covenants of the Company or other provisions
for the benefit of all Holders or for the benefit of the Holders of, or to
remain in effect only so long as there shall be Outstanding, Securities of
one or more specified series, or one or more specified Tranches thereof, or
to surrender any right or power herein conferred upon the Company; or

          (c)  to add any additional Events of Default with respect to all or
any series of Securities Outstanding hereunder; or

          (d) to change or eliminate any provision of this Indenture or to add
any new provision to this Indenture; provided, however, that if such
change, elimination or addition shall adversely affect the interests of the
Holders of Securities of any series or Tranche Outstanding on the date of
such indenture supplemental hereto in any material respect, such change,
elimination or addition shall become effective with respect to such series
or Tranche only pursuant to the provisions of Section 1202 hereof or when
no Security of such series or Tranche remains Outstanding; or

          (e) to provide collateral security for all but not part of the
Securities; or

          (f)  to establish the form or terms of Securities of any series or
Tranche as contemplated by Sections 201 and 301; or

          (g) to provide for the authentication and delivery of bearer
securities and coupons appertaining thereto representing interest, if any,
thereon and for the procedures for the registration, exchange and
replacement thereof and for the giving of notice to, and the solicitation
of the vote or consent of, the holders thereof, and for any and all other
matters incidental thereto; or

          (h) to evidence and provide for the acceptance of appointment
hereunder by a separate or successor Trustee or co-trustee with respect to
the Securities of one or more series and to add to or change any of the
provisions of this Indenture as shall be necessary to provide for or
facilitate the administration of the trusts hereunder by more than one
Trustee, pursuant to the requirements of Section 911(b); or

          (i) to provide for the procedures required to permit the Company to
utilize, at its option, a noncertificated system of registration for all,
or any series or Tranche of, the Securities; or

<PAGE>

                                   -66-


          (j) to change any place or places where (1) the principal of and
premium, if any, and interest, if any, on all or any series of Securities,

or any Tranche thereof, shall be payable, (2) all or any series of Securities, or any Tranche thereof, may be surrendered for registration of transfer, (3) all or any series of Securities, or any Tranche thereof, may be surrendered for exchange and (4) notices and demands to or upon the Company in respect of all or any series of Securities, or any Tranche thereof, and this Indenture may be served; or

(k) to cure any ambiguity, to correct or supplement any provision herein which may be defective or inconsistent with any other provision herein, or to make any other changes to the provisions hereof or to add other provisions with respect to matters or questions arising under this Indenture, provided that such other changes or additions shall not adversely affect the interests of the Holders of Securities of any series or Tranche in any material respect.

Without limiting the generality of the foregoing, if the Trust Indenture Act as in effect at the date of the execution and delivery of this Indenture or at any time thereafter shall be amended and

(x) if any such amendment shall require one or more changes to any provisions hereof or the inclusion herein of any additional provisions, or shall by operation of law be deemed to effect such changes or incorporate such provisions by reference or otherwise, this Indenture shall be deemed to have been amended so as to conform to such amendment to the Trust Indenture Act, and the Company and the Trustee may, without the consent of any Holders, enter into an indenture supplemental hereto to effect or evidence such changes or additional provisions; or

(y) if any such amendment shall permit one or more changes to, or the elimination of, any provisions hereof which, at the date of the execution and delivery hereof or at any time thereafter, are required by the Trust Indenture Act to be contained herein, this Indenture shall be deemed to have been amended to effect such changes or elimination, and the Company and the Trustee may, without the consent of any Holders, enter into an indenture supplemental hereto to evidence such amendment hereof.

SECTION 1202.  SUPPLEMENTAL INDENTURES WITH CONSENT OF HOLDERS.

With the consent of the Holders of a majority in aggregate principal amount of the Securities of all series then Outstanding under this Indenture, considered as one class, by Act of said Holders delivered to the Company and the Trustee, the Company, when authorized by a Board Resolution, and the Trustee may enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating

<PAGE>

-67-

any of the provisions of, this Indenture or modifying in any manner the rights of the Holders of Securities of such series under the Indenture; provided, however, that if there shall be Securities of more than one series Outstanding hereunder and if a proposed supplemental indenture shall directly affect the rights of the Holders of Securities of one or more, but less than all, of such series, then the consent only of the Holders of a majority in aggregate principal amount of the Outstanding Securities of all series so directly affected, considered as one class, shall be required; and provided, further, that if the Securities of any series shall have been issued in more than one Tranche and if the proposed supplemental indenture shall directly affect the rights of the Holders of Securities of one or more, but less than all, of such Tranches, then the consent only of the Holders of a majority in aggregate principal amount of the Outstanding Securities of all Tranches so directly affected, considered as one class, shall be required; and provided, further, that no such supplemental indenture shall:

(a) change the Stated Maturity of the principal of, or any installment of principal of or interest on, any Security, or reduce the principal amount thereof or the rate of interest thereon (or the amount of any installment of interest thereon) or change the method of calculating such rate or reduce any premium payable upon the redemption thereof, or reduce the amount of the principal of a Discount Security that would be due and payable upon a declaration of acceleration of the Maturity thereof pursuant to Section 802, or change the coin or currency (or other property), in which any Security or any premium or the interest thereon is payable, or impair the right to institute suit for the enforcement of any such payment on or after the Stated Maturity of any Security (or, in the case of redemption, on or after the Redemption Date), without, in any such case, the consent of the Holder of such Security, or

(b) reduce the percentage in principal amount of the Outstanding Securities of any series, or any Tranche thereof, the consent of the Holders of which is required for any such supplemental indenture, or the consent of the Holders of which is required for any waiver of compliance with any provision of this Indenture or of any default hereunder and its consequences, or reduce the requirements of Section 1304 for quorum or voting, without, in any such case, the consent of the Holders of each Outstanding Security of such series or Tranche, or

(c) modify any of the provisions of this Section, Section 607 or Section 813 with respect to the Securities of any series, or any Tranche thereof, except to increase the percentages in principal amount referred to in this Section or such other Sections or to provide that other provisions of this Indenture cannot be modified or waived without the consent of the Holder of each Outstanding Security affected thereby; provided, however, that this clause shall not be deemed to require the consent of any Holder with respect to changes in the references to "the Trustee" and concomitant changes in this Section, or the deletion of this proviso, in accordance with the requirements of Sections 911(b), 914 and 1201(h).

<PAGE>

-68-

A supplemental indenture which changes or eliminates any covenant or other provision of this Indenture which has expressly been included solely for the benefit of one or more particular series of Securities, or one or more Tranches thereof, or which modifies the rights of the Holders of Securities of such series with respect to such covenant or other provision, shall be deemed not to affect the rights under this Indenture of the Holders of Securities of any other series or Tranche.

It shall not be necessary for any Act of Holders under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof. A waiver by a Holder of such Holder's right to consent under this Section shall be deemed to be a consent of such Holder.

SECTION 1203.   EXECUTION OF SUPPLEMENTAL INDENTURES.

In executing, or accepting the additional trusts created by, any supplemental indenture permitted by this Article or the modifications thereby of the trusts created by this Indenture, the Trustee shall be entitled to receive, and (subject to Section 901) shall be fully protected in relying upon, an Opinion of Counsel stating that the execution of such supplemental indenture is authorized or permitted by this Indenture. The Trustee may, but shall not be obligated to, enter into any such supplemental indenture which affects the Trustee's own rights, duties, immunities or liabilities under this Indenture or otherwise.

SECTION 1204.   EFFECT OF SUPPLEMENTAL INDENTURES.

EFH01434925

Upon the execution of any supplemental indenture under this Article, this Indenture shall be modified in accordance therewith, and such supplemental indenture shall form a part of this Indenture for all purposes; and every Holder of Securities theretofore or thereafter authenticated and delivered hereunder shall be bound thereby. Any supplemental indenture permitted by this Article may restate this Indenture in its entirety, and, upon the execution and delivery thereof, any such restatement shall supersede this Indenture as theretofore in effect for all purposes.

SECTION 1205.  CONFORMITY WITH TRUST INDENTURE ACT.

Every supplemental indenture executed pursuant to this Article shall conform to the requirements of the Trust Indenture Act as then in effect.

SECTION 1206.  REFERENCE IN SECURITIES TO SUPPLEMENTAL INDENTURES.

Securities of any series, or any Tranche thereof, authenticated and delivered after the execution of any supplemental indenture pursuant to this Article may, and shall if required by the Trustee, bear a notation in form approved by the Trustee as to any matter provided for in such supplemental indenture. If the Company shall so determine, new

<PAGE>

-69-

Securities of any series, or any Tranche thereof, so modified as to conform, in the opinion of the Trustee and the Company, to any such supplemental indenture may be prepared and executed by the Company and authenticated and delivered by the Trustee in exchange for Outstanding Securities of such series or Tranche.

SECTION 1207.  MODIFICATION WITHOUT SUPPLEMENTAL INDENTURE.

If the terms of any particular series of Securities shall have been established in a Board Resolution or an Officer's Certificate as contemplated by Section 301, and not in an indenture supplemental hereto, additions to, changes in or the elimination of any of such terms may be effected by means of a supplemental Board Resolution or Officer's Certificate, as the case may be, delivered to, and accepted by, the Trustee; provided, however, that such supplemental Board Resolution or Officer's Certificate shall not be accepted by the Trustee or otherwise be effective unless all conditions set forth in this Indenture which would be required to be satisfied if such additions, changes or elimination were contained in a supplemental indenture shall have been appropriately satisfied. Upon the acceptance thereof by the Trustee, any such supplemental Board Resolution or Officer's Certificate shall be deemed to be a "supplemental indenture" for purposes of Section 1204 and 1206.

ARTICLE THIRTEEN

MEETINGS OF HOLDERS; ACTION WITHOUT MEETING

SECTION 1301.  PURPOSES FOR WHICH MEETINGS MAY BE CALLED.

A meeting of Holders of Securities of one or more, or all, series, or any Tranche or Tranches thereof, may be called at any time and from time to time pursuant to this Article to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be made, given or taken by Holders of Securities of such series or Tranches.

SECTION 1302.  CALL, NOTICE AND PLACE OF MEETINGS.

(a) The Trustee may at any time call a meeting of Holders of

Securities of one or more, or all, series, or any Tranche or Tranches
thereof, for any purpose specified in Section 1301, to be held at such time
and at such place in the Borough of Manhattan, The City of New York, as the
Trustee shall determine, or, with the approval of the Company, at any other
place. Notice of every such meeting, setting forth the time and the place
of such meeting and in general terms the action proposed to be taken at
such meeting, shall be given, in the manner provided in Section 106, not
less than 21 nor more than 180 days prior to the date fixed for the
meeting.

<PAGE>

-70-

        (b) If the Trustee shall have been requested to call a meeting of the
Holders of Securities of one or more, or all, series, or any Tranche or
Tranches thereof, by the Company or by the Holders of 33% in aggregate
principal amount of all of such series and Tranches, considered as one
class, for any purpose specified in Section 1301, by written request
setting forth in reasonable detail the action proposed to be taken at the
meeting, and the Trustee shall not have given the notice of such meeting
within 21 days after receipt of such request or shall not thereafter
proceed to cause the meeting to be held as provided herein, then the
Company or the Holders of Securities of such series and Tranches in the
amount above specified, as the case may be, may determine the time and the
place in the Borough of Manhattan, The City of New York, or in such other
place as shall be determined or approved by the Company, for such meeting
and may call such meeting for such purposes by giving notice thereof as
provided in Subsection (a) of this Section.

        (c) Any meeting of Holders of Securities of one or more, or all,
series, or any Tranche or Tranches thereof, shall be valid without notice
if the Holders of all Outstanding Securities of such series or Tranches are
present in person or by proxy and if representatives of the Company and the
Trustee are present, or if notice is waived in writing before or after the
meeting by the Holders of all Outstanding Securities of such series, or any
Tranche or Tranches thereof, or by such of them as are not present at the
meeting in person or by proxy, and by the Company and the Trustee.

SECTION 1303.   PERSONS ENTITLED TO VOTE AT MEETINGS.

        To be entitled to vote at any meeting of Holders of Securities of one
or more, or all, series, or any Tranche or Tranches thereof, a Person shall be
(a) a Holder of one or more Outstanding Securities of such series or Tranches,
or (b) a Person appointed by an instrument in writing as proxy for a Holder or
Holders of one or more Outstanding Securities of such series or Tranches by such
Holder or Holders. The only Persons who shall be entitled to attend any meeting
of Holders of Securities of any series or Tranche shall be the Persons entitled
to vote at such meeting and their counsel, any representatives of the Trustee
and its counsel and any representatives of the Company and its counsel.

SECTION 1304.   QUORUM; ACTION.

        The Persons entitled to vote a majority in aggregate principal amount
of the Outstanding Securities of the series and Tranches with respect to which a
meeting shall have been called as hereinbefore provided, considered as one
class, shall constitute a quorum for a meeting of Holders of Securities of such
series and Tranches; provided, however, that if any action is to be taken at
such meeting which this Indenture expressly provides may be taken by the Holders
of a specified percentage, which is less than a majority, in principal amount of
the Outstanding Securities of such series and Tranches, considered as one class,
the Persons entitled to vote such specified percentage in principal amount of
the Outstanding Securities of such

<PAGE>

series and Tranches, considered as one class, shall constitute a quorum. In the absence of a quorum within one hour of the time appointed for any such meeting, the meeting shall, if convened at the request of Holders of Securities of such series and Tranches, be dissolved. In any other case the meeting may be adjourned for such period as may be determined by the chairman of the meeting prior to the adjournment of such meeting. In the absence of a quorum at any such adjourned meeting, such adjourned meeting may be further adjourned for such period as may be determined by the chairman of the meeting prior to the adjournment of such adjourned meeting. Except as provided by Section 1305(e), notice of the reconvening of any meeting adjourned for more than 30 days shall be given as provided in Section 1302(a) not less than 10 days prior to the date on which the meeting is scheduled to be reconvened. Notice of the reconvening of an adjourned meeting shall state expressly the percentage, as provided above, of the principal amount of the Outstanding Securities of such series and Tranches which shall constitute a quorum.

Except as limited by Section 1202, any resolution presented to a meeting or adjourned meeting duly reconvened at which a quorum is present as aforesaid may be adopted only by the affirmative vote of the Holders of a majority in aggregate principal amount of the Outstanding Securities of the series and Tranches with respect to which such meeting shall have been called, considered as one class; provided, however, that, except as so limited, any resolution with respect to any action which this Indenture expressly provides may be taken by the Holders of a specified percentage, which is less than a majority, in principal amount of the Outstanding Securities of such series and Tranches, considered as one class, may be adopted at a meeting or an adjourned meeting duly reconvened and at which a quorum is present as aforesaid by the affirmative vote of the Holders of such specified percentage in principal amount of the Outstanding Securities of such series and Tranches, considered as one class.

Any resolution passed or decision taken at any meeting of Holders of Securities duly held in accordance with this Section shall be binding on all the Holders of Securities of the series and Tranches with respect to which such meeting shall have been held, whether or not present or represented at the meeting.

SECTION 1305.    ATTENDANCE AT MEETINGS; DETERMINATION OF VOTING RIGHTS; CONDUCT AND ADJOURNMENT OF MEETINGS.

(a) Attendance at meetings of Holders of Securities may be in person or by proxy; and, to the extent permitted by law, any such proxy shall remain in effect and be binding upon any future Holder of the Securities with respect to which it was given unless and until specifically revoked by the Holder or future Holder of such Securities before being voted.

(b) Notwithstanding any other provisions of this Indenture, the Trustee may make such reasonable regulations as it may deem advisable for any meeting of Holders of Securities in regard to proof of the holding of such Securities and of the appointment

<PAGE>

-72-

of proxies and in regard to the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate. Except as otherwise permitted or required by any such regulations, the holding of Securities shall be proved in the manner specified in Section 104 and the appointment

of any proxy shall be proved in the manner specified in Section 104. Such
regulations may provide that written instruments appointing proxies,
regular on their face, may be presumed valid and genuine without the proof
specified in Section 104 or other proof.

(c) The Trustee shall, by an instrument in writing, appoint a
temporary chairman of the meeting, unless the meeting shall have been
called by the Company or by Holders as provided in Section 1302(b), in
which case the Company or the Holders of Securities of the series and
Tranches calling the meeting, as the case may be, shall in like manner
appoint a temporary chairman. A permanent chairman and a permanent
secretary of the meeting shall be elected by vote of the Persons entitled
to vote a majority in aggregate principal amount of the Outstanding
Securities of all series and Tranches represented at the meeting,
considered as one class.

(d) At any meeting each Holder or proxy shall be entitled to one vote
for each $1 principal amount of Securities held or represented by him;
provided, however, that no vote shall be cast or counted at any meeting in
respect of any Security challenged as not Outstanding and ruled by the
chairman of the meeting to be not Outstanding. The chairman of the meeting
shall have no right to vote, except as a Holder of a Security or proxy.

(e) Any meeting duly called pursuant to Section 1302 at which a quorum
is present may be adjourned from time to time by Persons entitled to vote a
majority in aggregate principal amount of the Outstanding Securities of all
series and Tranches represented at the meeting, considered as one class;
and the meeting may be held as so adjourned without further notice.

SECTION 1306.  COUNTING VOTES AND RECORDING ACTION OF MEETINGS.

The vote upon any resolution submitted to any meeting of Holders shall
be by written ballots on which shall be subscribed the signatures of the Holders
or of their representatives by proxy and the principal amounts and serial
numbers of the Outstanding Secu rities, of the series and Tranches with respect
to which the meeting shall have been called, held or represented by them. The
permanent chairman of the meeting shall appoint two inspectors of votes who
shall count all votes cast at the meeting for or against any resolution and who
shall make and file with the secretary of the meeting their verified written
reports of all votes cast at the meeting. A record of the proceedings of each
meeting of Holders shall be prepared by the secretary of the meeting and there
shall be attached to said record the original reports of the

<PAGE>

-73-

inspectors of votes on any vote by ballot taken thereat and affidavits by one or
more persons having knowledge of the facts setting forth a copy of the notice of
the meeting and showing that said notice was given as provided in Section 1302
and, if applicable, Section 1304. Each copy shall be signed and verified by the
affidavits of the permanent chairman and secretary of the meeting and one such
copy shall be delivered to the Company, and another to the Trustee to be
preserved by the Trustee, the latter to have attached thereto the ballots voted
at the meeting. Any record so signed and verified shall be conclusive evidence
of the matters therein stated.

SECTION 1307.  ACTION WITHOUT MEETING.

In lieu of a vote of Holders at a meeting as hereinbefore contemplated
in this Article, any request, demand, authorization, direction, notice, consent,
waiver or other action may be made, given or taken by Holders by written
instruments as provided in Section 104.

ARTICLE FOURTEEN

IMMUNITY OF INCORPORATORS, SHAREHOLDERS, OFFICERS AND DIRECTORS

SECTION 1401.   LIABILITY SOLELY CORPORATE.

No recourse shall be had for the payment of the principal of or premium, if any, or interest, if any, on any Securities, or any part thereof, or for any claim based thereon or otherwise in respect thereof, or of the indebtedness represented thereby, or upon any obligation, covenant or agreement under this Indenture, against any incorporator, shareholder, officer or director, as such, past, present or future of the Company or of any predecessor or successor corporation (either directly or through the Company or a predecessor or successor corporation), whether by virtue of any constitutional provision, statute or rule of law, or by the enforcement of any assessment or penalty or otherwise; it being expressly agreed and under stood that this Indenture and all the Securities are solely corporate obligations, and that no personal liability whatsoever shall attach to, or be incurred by, any incorporator, shareholder, officer or director, past, present or future, of the Company or of any predecessor or successor corporation, either directly or indirectly through the Company or any predecessor or successor corporation, because of the indebtedness hereby authorized or under or by reason of any of the obligations, covenants or agreements contained in this Indenture or in any of the Securities or to be implied herefrom or therefrom, and that any such personal liability is hereby expressly waived and released as a condition of, and as part of the consideration for, the execution of this Indenture and the issuance of the Securities.

ARTICLE FIFTEEN

SECURITIES OF THE FIRST SERIES AND SECOND SERIES

<PAGE>

-74-

SECTION 1501.   DESIGNATION OF SECURITIES OF THE FIRST SERIES.

There is hereby created a series of Securities designated "6.375% Series C Senior Notes due 2008" (herein sometimes referred to as "Securities of the First Series") and limited in aggregate principal amount (except as contemplated in Section 201(b) hereof) to Two Hundred Million Dollars ($200,000,000). The form and terms of the Securities of the First Series shall be established in an Officer's Certificate.

SECTION 1502.   DESIGNATION OF SECURITIES OF THE SECOND SERIES.

There is hereby created a series of Securities designated "6.375% Series C Exchange Senior Notes due 2008" (herein sometimes referred to as "Securities of the Second Series") and limited in aggregate principal amount (except as contemplated in Section 201(b) hereof) to Two Hundred Million Dollars ($200,000,000). The form and terms of the Securities of the Second Series shall be established in an Officer's Certificate.

--------------------------

This instrument may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

<PAGE>

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to

EFH01434930

be duly executed, all as of the day and year first above written.


                              TEXAS UTILITIES COMPANY


                              By:     /s/ Robert S. Shapard
                                 ---------------------------------------
                                       ROBERT S. SHAPARD
                                          Treasurer

<PAGE>


                              THE BANK OF NEW YORK, Trustee


                              By:       /s/ W. N. Gitlin
                                 ---------------------------------------
                                         W.N. GITLIN
                                       Vice President

<PAGE>

STATE OF TEXAS          )
                        ) ss.:
COUNTY OF DALLAS        )


        On the 12th day of January, 1998, before me personally came Robert S.
Shapard, to me known, who, being by me duly sworn, did depose and say that he is
the Treasurer of Texas Utilities Company, one of the corporations described in
and which executed the foregoing instrument; and that he signed his name thereto
by authority of the Board of Directors of said corporation.



                              /s/ LeNae B Davis
                         ---------------------------------------

<PAGE>

STATE OF NEW YORK       )
                        ) ss.:
COUNTY OF NEW YORK      )


        On the _____ day of January, 1998, before me personally came W.N.
Gitlin, to me known, who, being by me duly sworn, did depose and say that he is
a Vice President of The Bank of New York, one of the corporations described in
and which executed the foregoing instrument; and that he signed his name thereto
by authority of the Board of Directors of said corporation.



                              /s/ Moira Feeney
                         ---------------------------------------
                                 Moira Feeney
                         Notary Public, State of New York

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-4.(GG)
<SEQUENCE>5
<DESCRIPTION>REGISTRATION RIGHTS AGREEMENT
<TEXT>

REGISTRATION RIGHTS AGREEMENT


REGISTRATION RIGHTS AGREEMENT


Dated January 13, 1998

among

TEXAS UTILITIES COMPANY

and

SALOMON BROTHERS INC

and

GOLDMAN, SACHS & CO.

and

LEHMAN BROTHERS INC.

_____

as Initial Purchasers

&lt;PAGE&gt;

REGISTRATION RIGHTS AGREEMENT

THIS REGISTRATION RIGHTS AGREEMENT (the "Agreement") is made and entered into as of January 13, 1998 between TEXAS UTILITIES COMPANY, a Texas corporation (the "Company"), and SALOMON BROTHERS INC ("Salomon Brothers") and GOLDMAN, SACHS & CO. and LEHMAN BROTHERS INC. (collectively, the "Initial Purchasers").

This Agreement is made pursuant to the Purchase Agreement dated January 8, 1998 (the "Purchase Agreement"), among the Company, as issuer of the 6.375% Series C Senior Notes due 2008 (the "Notes"), and the Initial Purchasers, which provides for, among other things, the sale by the Company to the Initial Purchasers of $200,000,000 principal amount of the Notes.  In order to induce the Initial Purchasers to enter into the Purchase Agreement, the Company has agreed to provide to the Initial Purchasers and their direct and indirect transferees the registration rights set forth in this Agreement.  The execution and delivery of this Agreement is a condition to the closing under the Purchase Agreement.

In consideration of the foregoing, the parties hereto agree as follows:

1.  Definitions.

As used in this Agreement, the following capitalized defined terms shall have the following meanings:

"Additional Interest" shall have the meaning set forth in Section 2(c) hereof.

"Advice" shall have the meaning set forth in the last paragraph of Section 3 hereof.

"Applicable Period" shall have the meaning set forth in Section 3(t) hereof.

"Business Day" shall mean a day other than (i) a Saturday or a Sunday, (ii) a day on which banks in New York, New York are authorized or obligated by law or executive order to remain closed or (iii) a day on which the Trustee's principal corporate trust office is closed for business.

"Closing Date" shall mean the Closing Date as defined in the Purchase Agreement.

"Company" shall have the meaning set forth in the preamble to this Agreement and also includes the Company's successors and permitted assigns.

"Depositary" shall mean The Depository Trust Company, or any other depositary appointed by the Trust; provided, however, that such depositary must have an address in the Borough of Manhattan, in The City of New York.

"Effectiveness Period" shall have the meaning set forth in Section 2(b) hereof.

"Eligible Holder" shall have the meaning set forth in Section 2(a) hereof.

"Exchange Act" shall mean the Securities Exchange Act of 1934, as amended from time to time.

"Exchange Offer" shall mean the offer by the Company to the Holders to exchange the Registrable Securities for a like principal amount of Exchange Securities pursuant to Section 2(a) hereof.

"Exchange Offer Registration" shall mean a registration under the Securities Act effected pursuant to Section 2(a) hereof.

"Exchange Offer Registration Statement" shall mean an exchange offer registration statement on Form S-4 (or, if applicable, on another appropriate form), and all amendments and supplements to such registration statement, in each case including the Prospectus contained therein, all exhibits thereto and all material incorporated by reference therein.

"Exchange Period" shall have the meaning set forth in Section 2(a) hereof.
<PAGE>

"Exchange Notes" shall mean the 6.375% Series C Senior Notes due 2008 containing terms identical to the Notes (except that they will not contain terms with respect to the transfer restrictions under the Securities Act and will not provide for any Additional Interest to be payable with respect thereto).

"Holder" shall mean the Initial Purchasers, for so long as they own any Registrable Securities, and each of their respective successors, assigns and direct and indirect transferees who become registered owners of Registrable Securities under the Indenture.

"Indenture" shall mean the Indenture (for Unsecured Debt Securities Series C) relating to the Notes and the Exchange Notes dated as of January 1, 1998 between the Company, as issuer, and The Bank of New York, as the Trustee, as the same may be amended from time to time in accordance with the terms thereof.

"Initial Purchasers" shall have the meaning set forth in the preamble of this Agreement.

"Inspectors" shall have the meaning set forth in Section 3(n) hereof.

"Issue Date" shall mean the date of original issuance of the Notes.

"Majority Holders" shall mean the Holders of a majority of the aggregate

principal amount of outstanding Notes.

"Notes" shall have the meaning set forth in the preamble to this Agreement.

"Participating Broker-Dealer" shall have the meaning set forth in Section 3(t) hereof.

"Person" shall mean an individual, partnership, corporation, trust or unincorporated organization, limited liability company, or a government or agency or political subdivision thereof.

"Prospectus" shall mean the prospectus included in a Registration Statement, including any preliminary prospectus, and any such prospectus as amended or supplemented by any prospectus supplement, including a prospectus supplement with respect to the terms of the offering of any portion of the Registrable Securities covered by a Shelf Registration Statement, and by all other amendments and supplements to a prospectus, including post-effective amendments, and in each case including all material incorporated by reference therein.

"Purchase Agreement" shall have the meaning set forth in the preamble of this Agreement.

"Records" shall have the meaning set forth in Section 3(n) hereof.

"Registrable Securities" shall mean the Notes; provided, however, that the Notes shall cease to be Registrable Securities when (i) a Registration Statement with respect to such Notes shall have been declared effective under the Securities Act and such Notes shall have been disposed of pursuant to such Registration Statement, (ii) such Notes shall have been sold to the public pursuant to Rule 144(k) (or any similar provision then in force, but not Rule 144A) under the Securities Act, (iii) such Notes shall have ceased to be outstanding, (iv) such Notes have been exchanged for Exchange Notes upon consummation of the Exchange Offer and are thereafter freely tradable by the holder thereof (other than an affiliate of the Company) or (v) two years (or such shorter period as may hereafter be provided in Rule 144(k) under the Securities Act (or similar rule)) have elapsed since the date of original issuances of the Notes.

"Registration Expenses" shall mean any and all expenses incident to performance of or compliance by the Company with this Agreement, including, without limitation:  (i) all SEC or National Association of Securities Dealers, Inc. (the "NASD") registration and filing fees; (ii) all fees and expenses incurred in connection with compliance with state securities or blue sky laws (including reasonable fees and disbursements of counsel for any underwriters or Holders in connection with blue sky qualification of any of the Exchange Notes or Registrable Securities)

<center>2</center>

<PAGE>

and compliance with the rules of the NASD in an amount not exceeding $15,000 in the aggregate, (iii) all expenses of any Persons in preparing or assisting in preparing, word processing, printing and distributing any Registration Statement, any Prospectus and any amendments or supplements thereto, and in preparing or assisting in preparing, printing and distributing any Registration Statement, any Prospectus and any amendments or supplements thereto, and in preparing or assisting in preparing, printing and distributing any underwriting agreements, securities sales agreements and other documents relating to the performance of and compliance with this Agreement, (iv) all rating agency fees, (v) the fees and disbursements of counsel for the Company, of Winthrop, Stimson, Putnam & Roberts, as counsel for the Holders hereunder in connection with the Exchange Offer, and of the independent certified public accountants of the Company, including the expenses of any "cold comfort" letters required by or

EFH01434934

incident to such performance and compliance, (vi) the fees and expenses of the Trustee, and any paying agent, exchange agent or custodian, (vii) all fees and expenses incurred in connection with the listing, if any, of any of the Registrable Securities or the Exchange Notes on any securities exchange or exchanges and (viii) the reasonable fees and expenses of any special experts retained by the Company in connection with any Registration Statement.

"Registration Statement" shall mean any registration statement of the Company which covers any of the Exchange Notes or Registrable Securities pursuant to the provisions of this Agreement, and all amendments and supplements to any such Registration Statement, including post-effective amendments, in each case including the Prospectus contained therein, all exhibits thereto and all material incorporated by reference therein.

"Rule 144(k) Period" shall mean the period of two years (or such shorter period as may hereafter be provided in Rule 144(k) under the Securities Act (or similar successor rule)) commencing on the Issue Date.

"SEC" shall mean the Securities and Exchange Commission.

"Securities Act" shall mean the Securities Act of 1933, as amended from time to time.

"Shelf Registration" shall mean a registration effected pursuant to Section 2(b) hereof.

"Shelf Registration Event" shall have the meaning set forth in Section 2b hereof.

"Shelf Registration Event Date" shall have the meaning set forth in Section 2(b) hereof.

"Shelf Registration Statement" shall mean a "shelf" registration statement of the Company pursuant to the provisions of Section 2(b) hereof which covers all of the Registrable Securities, on an appropriate form under Rule 415 under the Securities Act, or any similar rule that may be adopted by the SEC, and all amendments and supplements to such registration statement, including post-effective amendments, in each case including the Prospectus contained therein, all exhibits thereto and all material incorporated by reference therein.

"TIA" shall mean the Trust Indenture Act of 1939, as amended from time to time.

"Trustee" shall mean The Bank of New York, and any successor thereto, as trustee under the Indenture.

2.   Registration Under the Securities Act.

(a)   Exchange Offer.  To the extent not prohibited by any applicable law or applicable interpretation of the staff of the SEC, the Company shall, for the benefit of the Holders, at the Company's cost, (i) cause to be filed with the SEC an Exchange Offer Registration Statement on an appropriate form under the Securities Act covering the Exchange Offer, (ii) use its reasonable best efforts to cause such Exchange Offer Registration Statement to be declared effective under the Securities Act by the

3

<PAGE>

SEC not later than the date which is 180 days after the Issue Date, and (iii) use its reasonable best efforts to keep such Exchange Offer Registration Statement effective for not less than 30 calendar days (or longer if required by applicable law) after the date notice of the Exchange Offer is mailed to the Holders.  Upon the effectiveness of the Exchange Offer Registration Statement, the Company shall promptly commence the Exchange Offer, it being the objective of such Exchange Offer to enable each Holder electing to exchange Registrable

Securities for a like principal amount of Exchange Notes (assuming that such
Holder is not an affiliate of the Company within the meaning of Rule 405 under
the Securities Act and is not a broker-dealer tendering Registrable Securities
acquired directly from the Company for its own account, acquires the Exchange
Securities in the ordinary course of such Holder's business and has no
arrangements or understandings with any Person to participate in the Exchange
Offer for the purpose of distributing the Exchange Securities) (any Holder
meeting all such requirements, hereinafter an "Eligible Holder"), and to
transfer such Exchange Securities from and after their receipt without any
limitations or restrictions under the Securities Act and under state securities
or blue sky laws.

In connection with the Exchange Offer, the Company shall:

 (i) mail to each Holder a copy of the Prospectus forming part
of the Exchange Offer Registration Statement, together with an
appropriate letter of transmittal and related documents (together, the
"Notice");

 (ii) use its reasonable best efforts to keep the Exchange
Offer open for acceptance for a period of not less than 30 days after
the date Notice thereof is mailed to the Holders (or longer if
required by applicable law) (such period referred to herein as the
"Exchange Period");

 (iii) utilize the services of the Depositary for the Exchange
Offer;

 (iv) permit Holders to withdraw, at any time prior to the
close of business, New York time, on the last Business Day of the
Exchange Period, any Notes tendered for exchange by sending to the
institution specified in the Notice, a telegram, telex, facsimile
transmission or letter, received before aforesaid time, setting forth
the name of such Holder, the principal amount of Notes delivered for
exchange, and a statement that such Holder is withdrawing his election
to have such Notes exchanged;

 (v) notify each Holder by means of the Notice that any Note
not tendered by such Holder in the Exchange Offer will remain
outstanding and continue to accrue interest, but will not retain any
rights under this Agreement (except in the case of the Initial
Purchasers and Participating Broker-Dealers as provided herein); and

 (vi) otherwise comply in all respects with all applicable laws
relating to the Exchange Offer.

4

<PAGE>

As soon as practicable after the close of the Exchange Offer, the
Company shall:

 accept for exchange all Notes or portions thereof tendered and
not validly withdrawn pursuant to the Exchange Offer;

 deliver, or cause to be delivered, to the Trustee for
cancellation all Notes or portions thereof so accepted for exchange by
the Company; and

 issue, and cause the Trustee to promptly authenticate and deliver
to each Holder, Exchange Notes equal in principal amount to the
principal amount of the Notes surrendered by such Holder.

Interest on each Exchange Note issued pursuant to the Registered
Exchange Offer will accrue from the last date on which interest was paid on the
Note surrendered in exchange therefor or, if no interest has been paid on such

Note, from the Issue Date. To the extent not prohibited by any law or
applicable interpretation of the staff of the SEC, the Company shall use its
reasonable best efforts to complete the Exchange Offer as provided above, and
shall comply with the applicable requirements of the Securities Act, the
Exchange Act and other applicable laws in connection with the Exchange Offer.
The Exchange Offer shall not be subject to any conditions, other than that the
Exchange Offer does not violate applicable law or any applicable interpretation
of the staff of the SEC and that each Holder tendering Notes for exchange shall
be an Eligible Holder. Each Holder of Registrable Securities who wishes to
exchange such Registrable Securities for Exchange Notes in the Exchange Offer
will be required to make certain customary representations in connection
therewith, including representations that (i) it is not an affiliate of the
Company, (ii) the Exchange Notes to be received by it were acquired in the
ordinary course of its business and (iii) at the time of the Exchange Offer, it
has no arrangement with any person to participate in the distribution (within
the meaning of the Securities Act) of the Exchange Notes. Each Holder hereby
acknowledges and agrees that any Participating Broker-Dealer and any such Holder
using the Exchange Offer to participate in a distribution of the Exchange Notes:
(1) could not under SEC policy as in effect on the date of this Agreement rely
on the position of the SEC enunciated in Morgan Stanley and Co., Inc. (available
June 5, 1991) and Exxon Capital Holdings Corporation (available May 13, 1988),
as interpreted in the SEC's letter to Shearman & Sterling dated July 2, 1993,
and similar no-action letters (including any no-action letter obtained based on
the representations in clause (i) above), and (2) must comply with the
registration and prospectus delivery requirements of the Securities Act in
connection with the secondary resale transaction and that such a secondary
resale transaction should be covered by an effective registration statement
containing the selling security holder information required by Item 507 and 508,
as applicable, of Regulation S-K if the resales are of Exchange Notes obtained
by such Holder in exchange for Notes acquired by such Holder directly from the
Company.

     Upon consummation of the Exchange Offer in accordance with this
Section 2(a), the provisions of this Agreement shall continue to apply, mutatis
mutandis, solely with respect to Registrable Securities that are Exchange Notes
held by Participating Broker-Dealers, and the Company shall have no further
obligation to register the Registrable Securities (other than pursuant to
Section 2(b)(iii)) pursuant to Section 2(b) of this Agreement.

     (b)  Shelf Registration.  In the event that (i) the Company is not
permitted to effect the Exchange Offer because of any change in law or in
currently prevailing interpretations of the staff of the SEC, (ii) the Exchange

                                    5
<PAGE>

Offer Registration Statement is not declared effective within 180 days of the
Issue Date, or (iii) (1) any Initial Purchaser is not permitted, in the
reasonable opinion of Winthrop, Stimson, Putnam & Roberts, pursuant to
applicable law or applicable interpretations of the staff of the SEC, to
participate in the Exchange Offer and thereby receive securities that are freely
tradeable without restriction under the Securities Act and applicable blue sky
or state securities laws, (2) such Initial Purchaser requests registration of
Registrable Securities held by such Initial Purchaser and (3) such Initial
Purchaser's request is received by the Company no later than the later of (A)
the date of filing of the Exchange Offer Registration Statement and (B) 120 days
following the Issue Date (any of the events specified in (i) - (iii) being a
"Shelf Registration Event" and the date of occurrence thereof, the "Shelf
Registration Event Date"), the Company shall promptly deliver to the Holders and
the Trustee written notice thereof and, at its cost, file as promptly as
practicable after such Shelf Registration Event Date, and, in any event, within
45 days after such Shelf Registration Event Date (which shall be no earlier than
90 days after the Closing Date) a Shelf Registration Statement providing for the
sale by the holders of all of the Registrable Securities, and shall use its
reasonable best efforts to have such Shelf Registration Statement declared
effective by the SEC as soon as practicable; provided, however that if the Shelf

Registration Event is pursuant to clause (iii), the Company may register such Registrable Securities together with the Exchange Offer Registration Statement, filed pursuant to Section 2(a), and the requirements as to timing applicable thereto. No Holder of Registrable Securities shall be entitled to include any of its Registrable Securities in any Shelf Registration pursuant to this Agreement unless and until such Holder agrees in writing to be bound by all of the provisions of this Agreement applicable to such Holder and furnishes to the Company in writing, within 15 days after receipt of a request therefor, such information as the Company may, after conferring with counsel with regard to information relating to Holders that would be required by the SEC to be included in such Shelf Registration Statement or Prospectus included therein, reasonably request for inclusion in any Shelf Registration Statement or Prospectus included therein. Each Holder as to which any Shelf Registration is being effected agrees promptly to furnish to the Company all information with respect to such Holder necessary to make the information previously furnished to the Company by such Holder not materially misleading.

The Company agrees to use its reasonable best efforts to keep the Shelf Registration Statement continuously effective for the Rule 144(k) Period (subject to extension pursuant to the last paragraph of Section 3 hereof) or for such shorter period which will terminate when all of the securities covered by the Shelf Registration Statement have been sold pursuant to the Shelf Registration Statement or cease to be Registrable Securities ( the "Effectiveness Period"). The Company shall not permit any securities other than Registrable Securities to be included in the Shelf Registration. The Company will, in the event a Shelf Registration Statement is declared effective, provide to each Holder a reasonable number of copies of the Prospectus which is a part of the Shelf Registration Statement and notify each such Holder when the Shelf Registration has become effective. The Company further agrees, if necessary, to supplement or amend the Shelf Registration Statement, if required by the rules, regulations or instructions applicable to the registration form used by the Company for such Shelf Registration Statement or by the Securities Act or by any other rules and regulations thereunder for shelf registrations, and the Company agrees to furnish to the Holders of Registrable Securities copies of any such supplement or amendment promptly after its being used or filed with the SEC.

(c)    Expenses.  The Company shall pay all Registration Expenses in

<div align="center">6</div>

<PAGE>

connection with the registration pursuant to Section 2(a) or 2(b) hereof. Except as provided herein, each Holder shall pay all expenses of its counsel, underwriting discounts and commissions and transfer taxes, if any, relating to the sale or disposition of such Holder's Registrable Securities pursuant to the Shelf Registration Statement.

(d)    Effective Registration Statement.  An Exchange Offer Registration Statement pursuant to Section 2(a) hereof or a Shelf Registration Statement pursuant to Section 2(b) hereof (or a combination of the two) will not be deemed to have become effective unless it has been declared effective by the SEC; provided, however, that if, after it has been declared effective, the offering of Registrable Securities pursuant to a Shelf Registration Statement is interfered with by any stop order, injunction or other order or requirement of the SEC or any other governmental agency or court, such Registration Statement will be deemed not to have been effective during the period of such interference, until the offering of Registrable Securities pursuant to such Registration Statement may legally resume. The Company will be deemed not to have used its reasonable best efforts to cause the Exchange Offer Registration Statement or the Shelf Registration Statement, as the case may be, to become, or to remain, effective during the requisite period if the Company voluntarily takes any action that would result in any such Registration Statement not being declared effective or in the Holders of Registrable Securities covered thereby not being able to exchange or offer and sell such Registrable Securities during that period unless such action is required by applicable law.

(e)  Additional Interest.  In the event that:

(i)  notwithstanding that the Company has consummated or will consummate an Exchange Offer, the Company is required to file a Shelf Registration Statement and such Shelf Registration Statement is not filed on or prior to the date required by Section 2(b) hereof, then commencing on the day after the applicable required filing date, additional interest shall accrue on the principal amount of the Notes ("Additional Interest") at a rate of 0.25% per annum; or

(ii)  (A) the Exchange Offer Registration Statement is not declared effective by the SEC on or prior to the 180th day after the Issue Date or (B) whether or not the Company has consummated or will consummate an Exchange Offer, the Company is required to file a Shelf Registration Statement and such Shelf Registration Statement is not declared effective by the SEC on or prior to the 30th day after the date such Shelf Registration Statement was required to be filed, then, commencing on the 181st day after the Issue Date or the 31st day after the applicable required filing date, as the case may be, Additional Interest shall accrue on the principal amount of the Notes at a rate of 0.25% per annum; or

(iii)  (A) the Company has not exchanged the Exchange Notes for the Notes validly tendered, in accordance with the terms of the Exchange Offer, on or prior to the 40th day after the date on which the Exchange Offer Registration Statement was declared effective or (B) the Shelf

7

<PAGE>

Registration Statement has been declared effective and such Shelf Registration Statement ceases to be effective at any time prior to the expiration of the Rule 144(k) Period (other than after such time as all Notes have been disposed of thereunder or otherwise cease to be Registrable Securities), then Additional Interest shall accrue on the principal amount of Notes, at a rate of 0.25% per annum, commencing on the 41/st/ day after the date on which the Exchange Offer Registration Statement was declared effective or the day such Shelf Registration Statement ceases to be effective, as the case may be ;

provided, however, that the Additional Interest rate on the Notes may not exceed in the aggregate 0.25% per annum; provided further, however, that (1) upon the filing of the Shelf Registration Statement (in the case of clause (i) above), (2) upon the effectiveness of the Exchange Offer Registration Statement or a Shelf Registration Statement (in the case of clause (ii) above), (3) upon the exchange of Exchange Notes for all Notes tendered (in the case of clause (iii)(A) above), or upon the effectiveness of the Shelf Registration Statement which had ceased to remain effective (in the case of clause (iii) (B) above), or (4) upon the expiration of the Rule 144(k) Period, Additional Interest on the Notes as a result of such clause (or the relevant subclause thereof), as the case may be, shall cease to accrue.

Any amounts of Additional Interest due pursuant to Section 2(e)(i), (ii) or (iii) above will be payable in cash on the relevant payment dates for the payment of interest pursuant to the Indenture.

(f)  Specific Enforcement.  Without limiting the remedies available to the Holders, the Company acknowledges that any failure of the Company to comply with its obligations under Section 2(a) and Section 2(b) hereof may result in material irreparable injury to the Holders for which there is no adequate remedy at law, that it would not be possible to measure damages for

such injuries precisely and that, in the event of any such failure, any holder may obtain such relief as may be required to specifically enforce the Company's obligations under Section 2(a) and Section 2(b) hereof.

    3.    Registration Procedures.

    In connection with the obligations of the Company with respect to the Registration Statements pursuant to Sections 2(a) and 2(b) hereof, the Company shall:

        (a)  prepare and file with the SEC a Registration Statement or Registration Statements as prescribed by Sections 2(a) and 2(b) hereof within (in the case of Section 2(b) hereof) the relevant time period specified and on the appropriate form(s) under the Securities Act, which form(s) (i) shall be selected by the Company, (ii) shall, in the case of a Shelf Registration, be available for the sale of the Registrable Securities by the selling Holders thereof and (iii) shall comply as to form in all material respects with the requirements of the applicable form and include all financial statements required by the SEC to be filed therewith; and use its reasonable best efforts to cause such Registration Statement(s) to become effective and remain effective in accordance with Section 2 hereof; provided, however, that if (1) such filing is pursuant to Section 2(b), or (2) a Prospectus contained in an Exchange Offer Registration Statement filed pursuant to Section 2(a) is required to be delivered under the Securities Act by any Participating Broker-Dealer who seeks to sell Exchange Notes, before filing any Registration Statement or Prospectus or any amendments or supplements thereto, the Company shall furnish to and afford the Holders of the

                                        8

<PAGE>

Registrable Securities and each such Participating Broker-Dealer, as the case may be, covered by such Registration Statement, their counsel and the managing underwriters, if any, a reasonable opportunity to review copies of all such documents (including copies of any documents to be incorporated by reference therein and all exhibits thereto) proposed to be filed. The Company shall not file any Registration Statement or Prospectus or any amendments or supplements thereto in respect of which the Holders must be afforded an opportunity to review prior to the filing of such document if the Majority Holders or such Participating Broker-Dealer, as the case may be, their counsel or the managing underwriters, if any, shall reasonably object;

        (b)  prepare and file with the SEC such amendments and post-effective amendments to each Registration Statement as may be necessary to keep such Registration Statement effective for the Effectiveness Period or the Applicable Period, as the case may be, and cause each Prospectus to be supplemented, if so determined by the Company or requested by the SEC, by any required prospectus supplement and as so supplemented to be filed pursuant to Rule 424 (or any similar provision then in force) under the Securities Act, and comply with the provisions of the Securities Act, the Exchange Act and the rules and regulations promulgated thereunder applicable to it with respect to the disposition of all securities covered by each Registration Statement during the Effectiveness Period or the Applicable Period, as the case may be, in accordance with the intended method or methods of distribution by the selling Holders thereof described in this Agreement (including sales by any Participating Broker-Dealer);

        (c)  in the case of a Shelf Registration, (i) notify each Holder of Registrable Securities included in the Shelf Registration Statement, at least three Business Days prior to filing, that a Shelf Registration Statement with respect to the Registrable Securities is being filed and advising such Holder that the distribution of Registrable Securities will be made in accordance with the method selected by the Majority Holders, (ii) furnish to each Holder of Registrable Securities included in the Shelf Registration Statement and to each underwriter of an underwritten offering of Registrable Securities, if any, without charge, as many copies of each Prospectus, including each preliminary

Prospectus, and any amendment or supplement thereto and such other documents as such Holder or underwriter may reasonably request, in order to facilitate the public sale or other disposition of the Registrable Securities, (iii) consent to the use of the Prospectus or any amendment or supplement thereto by each of the selling Holders of Registrable Securities included in the Shelf Registration Statement in connection with the offering and sale of the Registrable Securities covered by the Prospectus or any amendment or supplement thereto and (iv) furnish to each Holder of Registrable Securities either a summary of the terms of this Agreement or a copy of this Agreement;

    (d)    in the case of a Shelf Registration, to register or qualify the Registrable Securities under all applicable state securities or "blue sky" laws of such jurisdictions by the time the applicable Registration Statement is declared effective by the SEC as any Holder of Registrable Securities covered by a Registration Statement and each underwriter of an underwritten offering of Registrable Securities shall reasonably request in writing in advance of such date of effectiveness; provided, however, that the Company shall not be required to (i) qualify as a

                                        9

<PAGE>

foreign corporation or as a dealer in securities in any jurisdiction where it would not otherwise be required to qualify but for this Section 3(d), (ii) file any general consent to service of process in any jurisdiction where it would not otherwise be subject to such service of process or (iii) file annual reports or comply with any other requirements deemed by the Company in its reasonable judgment to be unduly burdensome;

    (e)    in the case of (1) a Shelf Registration or (2) Participating Broker-Dealers from whom the Company has received prior written notice that they will be utilizing the Prospectus contained in the Exchange Offer Registration Statement as provided in Section 3(t) hereof, are seeking to sell Exchange Notes and are required to deliver Prospectuses, notify each Holder of Registrable Securities, or each such Participating Broker-Dealer, as the case may be, their counsel and the managing underwriters, if any, promptly and promptly confirm such notice in writing (i) when a Registration Statement has become effective and when any post-effective amendments and supplements thereto become effective, (ii) of any request by the SEC or any state securities authority for amendments and supplements to a Registration Statement or Prospectus or for additional information after the Registration Statement has become effective, (iii) of the issuance by the SEC or any state securities authority of any stop order suspending the effectiveness of a Registration Statement or the qualification of the Registrable Securities or the Exchange Notes to be offered or sold by any Participating Broker-Dealer in any jurisdiction described in paragraph 3(d) hereof or the initiation of any proceedings for that purpose, (iv) in the case of a Shelf Registration, if, between the effective date of a Registration Statement and the closing of any sale of Registrable Securities covered thereby, the representations and warranties of the Company contained in any purchase agreement, securities sales agreement or other similar agreement, if any cease to be true and correct in all material respects, (v) of the happening of any event or the failure of any event to occur or the discovery of any facts or otherwise, during the Effectiveness Period which makes any statement made in such Registration Statement or the related Prospectus untrue in any material respect or which causes such Registration Statement or Prospectus to omit to state a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading and (vi) when the Company reasonably determines that a post-effective amendment to the Registration Statement would be appropriate;

    (f)    make every reasonable effort to obtain the withdrawal of any order suspending the effectiveness of a Registration Statement at the earliest possible moment;

    (g)    in the case of a Shelf Registration, furnish to each Holder of Registrable Securities included within the coverage of such Shelf Registration

Statement, without charge, at least one conformed copy of each Registration Statement relating to such Shelf Registration and any post-effective amendment thereto (without documents incorporated therein by reference or exhibits thereto, unless requested);

(h)  in the case of a Shelf Registration, cooperate with the selling Holders of Registrable Securities to

10

<PAGE>

facilitate the timely preparation and delivery of certificates representing Registrable Securities to be sold and not bearing any restrictive legends and in such denominations (consistent with the provisions of the Indenture) and registered in such names as the selling Holders or the underwriters, if any, may reasonably request at least two Business Days prior to the closing of any sale of Registrable Securities pursuant to such Shelf Registration Statement;

(i)  in the case of a Shelf Registration or an Exchange Offer Registration, upon the occurrence of any circumstance contemplated by Section 3(e)(ii), 3(e)(iii), 3(e)(v) or 3(e)(vi) hereof, prepare a supplement or post-effective amendment to a Registration Statement or the related Prospectus or any document incorporated therein by reference or file any other required document so that, as thereafter delivered to the purchasers of the Registrable Securities, such Prospectus will not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading and notify each Holder to suspend use of the Prospectus as promptly as practicable after the occurrence of such an event, and each Holder hereby agrees to suspend use of the Prospectus until the Company has amended or supplemented the Prospectus to correct such misstatement or omission;

(j)  in the case of a Shelf Registration, a reasonable time prior to the filing of any document which is to be incorporated by reference into a Registration Statement or a Prospectus after the initial filing of a Registration Statement, provide a reasonable number of copies of such document to the Holders and make such of the representatives of the Company as shall be reasonably requested by the Holders of Registrable Securities or the Initial Purchasers on behalf of such Holders available for reasonable discussion of such document;

(k)  obtain a CUSIP number for all Exchange Notes, no later than the effective date of a Registration Statement, and provide the Trustee with printed certificates for the Exchange Notes or the Registrable Securities, as the case may be, in a form eligible for deposit with the Depositary;

(l)  cause the Indenture to be qualified under the TIA in connection with the registration of the Exchange Notes or Registrable Securities, as the case may be, and effect such changes to such documents as may be required for them to be so qualified in accordance with the terms of the TIA and execute, and use its reasonable best efforts to cause the Trustee to execute, all documents as may be required to effect such changes, and all other forms and documents required to be filed with the SEC to enable such documents to be so qualified in a timely manner;

(m)  in the case of a Shelf Registration, enter into such agreements (including underwriting agreements) as are customary in underwritten offerings and consistent with the terms of the Purchase Agreement and take all such other appropriate actions as are reasonably requested in order to expedite or facilitate the registration or the disposition of such Registrable Securities, and in such connection, whether or not an underwriting agreement is entered into and whether or not the registration is with respect to an underwritten offering, if requested by (x) any Initial

11

<PAGE>

Purchaser, in the case where an Initial Purchaser holds Registrable Securities acquired by it as part of its initial distribution and (y) other Holders of Notes covered thereby: (i) make such representations and warranties to Holders of such Registrable Securities and the underwriters (if any), with respect to the business of the Company and its subsidiaries as then conducted and the Registration Statement, Prospectus and documents, if any, incorporated or deemed to be incorporated by reference therein, in each case, as are customarily made by issuers to underwriters in underwritten offerings, and confirm the same if and when requested; (ii) obtain opinions of counsel to the Company and updates thereof (which may be in the form of a reliance letter) in form and substance reasonably satisfactory to the managing underwriters (if any) and the Holders of a majority in principal amount of the Registrable Securities being sold, addressed to each selling Holder and the underwriters (if any) covering the matters customarily covered in opinions requested in underwritten offerings and such other matters as may be reasonably requested by such underwriters (it being agreed that the matters to be covered by such opinions may be subject to customary qualifications and exceptions); (iii) obtain "cold comfort" letters and updates thereof in form and substance reasonably satisfactory to the managing underwriters (if any) from the independent certified public accountants of the Company (and, if necessary, any other independent certified public accountants of any subsidiary of the Company or of any business acquired by the Company for which financial statements and financial data are, or are required to be, included in the Registration Statement), addressed to each of such underwriters, such letters to be in customary form and covering matters of the type customarily covered in "cold comfort" letters in connection with underwritten offerings and such other matters as reasonably requested by such underwriters in accordance with Statement on Auditing Standards No. 72 and (iv) if an underwriting agreement is entered into, the same shall contain indemnification provisions and procedures no less favorable than those set forth in Section 4 hereof (or such other provisions and procedures acceptable to Holders of a majority in aggregate principal amount of Registrable Securities covered by such Registration Statement and the managing underwriters or agents) with respect to all parties to be indemnified pursuant to said Section (including, without limitation, such underwriters and selling Holders). The above shall be done at each closing under such underwriting agreement or, as and to the extent required thereunder and as consistent with the terms of, the Purchase Agreement;

(n)  if (1) a Shelf Registration is filed pursuant to Section 2(b) or (2) a Prospectus contained in an Exchange Offer Registration Statement filed pursuant to Section 2(a) is required to be delivered under the Securities Act by any Participating Broker-Dealer who seeks to sell Exchange Notes during the Applicable Period, make reasonably available for inspection by any selling Holder of such Registrable Securities being sold, or each such Participating Broker-Dealer, as the case may be, any underwriter participating in any such disposition of Registrable Securities, if any, and any attorney, accountant or other agent retained by any such selling Holder or each such Participating Broker-Dealer, as the case may be, or underwriter (collectively, the "Inspectors"), at the offices where normally kept, during reasonable business hours, all financial and other records, pertinent corporate documents and properties of the Company and its subsidiaries (collectively, the "Records") as shall be reasonably necessary to enable them to exercise any applicable due diligence responsibilities, and cause the officers, directors and employees of the Company and its subsidiaries to supply all relevant information in each case reasonably requested by any such Inspector in connection with such Registration Statement; provided,

12

<PAGE>

however, that the foregoing inspection and information gathering shall be coordinated on behalf of all such parties by Company-designated Holders' counsel, at the expense of such parties as described in Section 2(c) hereof. Records which the Company determines, in good faith, to be confidential and any records which it notifies the Inspectors are confidential shall not be disclosed

by the Inspectors unless (i) the disclosure of such Records is necessary to avoid or correct a material misstatement or omission in such Registration Statement, provided that the Company shall be consulted prior to any such disclosure, (ii) the release of such Records is ordered pursuant to a subpoena or other order from a court of competent jurisdiction or is necessary in connection with any action, suit or proceeding or (iii) the information in such Records has been made available to the public. Each selling Holder of such Registrable Securities and each such Participating Broker-Dealer will be required to agree in writing that information obtained by it or any Inspector retained by it as a result of such inspections shall be deemed confidential and shall not be used by it or any Inspector retained by it as the basis for any market transactions in the securities of the Company unless and until such is made generally available to the public. Each selling Holder of such Registrable Securities and each such Participating Broker-Dealer will be required to further agree in writing that it will, upon learning that disclosure of such Records is sought in a court of competent jurisdiction, give notice to the Company and allow the Company at its expense to undertake appropriate action to prevent disclosure of the Records deemed confidential;

        (o)   comply with all applicable rules and regulations of the SEC so long as any provision of this Agreement shall be applicable and make generally available to its security holders earning statements satisfying the provisions of Section 11(a) of the Securities Act and Rule 158 thereunder (or any similar rule promulgated under the Securities Act), with such adjustments as are necessary to reflect the merger transactions in August 1997 involving the Company and the predecessors of the Company, no later than 60 days after the end of any 12-month period (or 120 days after the end of any 12-month period if such period is a fiscal year) (i) commencing at the end of any fiscal quarter in which Registrable Securities are sold to underwriters in a firm commitment or best efforts underwritten offering and (ii) if not sold to underwriters in such an offering, commencing on the first day of the first fiscal quarter of the Company after the effective date of a Registration Statement, which statements shall cover said 12-month periods;

        (p)   upon consummation of an Exchange Offer, if requested by the Trustee, obtain an opinion of counsel to the Company addressed to the Trustee for the benefit of all Holders of Registrable Securities participating in the Exchange Offer and which includes an opinion that (i) the Company has duly authorized, executed and delivered the Exchange Notes, and (ii) each of the Exchange Notes constitutes a legal, valid and binding obligation of the Company, enforceable against the Company in accordance with its terms (with customary exceptions);

        (q)   if an Exchange Offer is to be consummated, upon delivery of the Registrable Securities by Holders to the Company (or to such other Person as directed by the Company), in exchange for the Exchange Notes, mark, or cause to be marked, on such Registrable Securities delivered by such Holders that such Registrable Securities are being cancelled in exchange for the Exchange

                                  13
<PAGE>

Notes, and in no event shall such Registrable Securities be marked as paid or otherwise satisfied;

        (r)   cooperate with each seller of Registrable Securities covered by any Registration Statement and each underwriter, if any, participating in the disposition of such Registrable Securities covered by a Registration Statement contemplated hereby;

        (s)   use its reasonable best efforts to take all other steps necessary to effect the registration of the Registrable Securities covered by a Registration Statement contemplated hereby;

        (t)   (A) in the case of the Exchange Offer Registration Statement (i) (a) indicate in a "Plan of Distribution" section contained in the Prospectus

contained in the Exchange Offer Registration Statement that any broker or dealer registered under the Exchange Act who holds Notes that are Registrable Securities and that were acquired for its own account as a result of market-making activities or other trading activities (other than Registrable Securities acquired directly from the Company) (such broker or dealer, a "Participating Broker-Dealer"), may exchange such Notes pursuant to the Exchange Offer; however, such Participating Broker-Dealer may be deemed to be an "underwriter" within the meaning of the Securities Act and must, therefore, deliver a prospectus meeting the requirements of the Securities Act in connection with any resales of the Exchange Notes received by such Participating Broker-Dealer in the Exchange Offer, which prospectus delivery requirement may be satisfied by the delivery by such Participating Broker-Dealer of the Prospectus contained in the Exchange Offer Registration Statement and (b) include in such "Plan of Distribution" section all other information with respect to such resales by Participating Broker-Dealers that the SEC may require in order to permit such resales pursuant thereto, but such "Plan of Distribution" shall not name any such Participating Broker-Dealer or disclose the amount of Exchange Notes held by any such Participating Broker-Dealer except to the extent required by the Commission as a result of a change in policy announced after the date of this Agreement, (ii) furnish to each Participating Broker-Dealer who has delivered to the Company the notice referred to in Section 3(e), without charge, as many copies of each Prospectus included in the Exchange Offer Registration Statement, including any preliminary prospectus, and any amendment or supplement thereto, as such Participating Broker-Dealer may reasonably request (the Company hereby consents to the use of the Prospectus forming part of the Exchange Offer Registration Statement or any amendment or supplement thereto by any Person subject to the prospectus delivery requirements of the Securities Act, including all Participating Broker-Dealers, in connection with the sale or transfer of the Exchange Notes covered by the Prospectus or any amendment of supplement thereto), (iii) use its reasonable best efforts to keep the Exchange Offer Registration Statement effective and to amend and supplement the Prospectus contained therein in order to permit such Prospectus to be lawfully delivered by all Persons subject to the prospectus delivery requirements of the Securities Act for such period of time as such Persons must comply with such requirements under the Securities Act and applicable rules and regulations in order to resell the Exchange Notes; provided, however, that such period shall not be required to exceed 90 days (or such longer period if extended pursuant to the last sentence of Section 3 hereof) (the "Applicable Period") and (iv) include in the transmittal letter or similar documentation to be executed by an exchange offeree

14

<PAGE>

in order to participate in the Exchange Offer (x) the following provision:

"If the exchange offeree is a broker-dealer holding Registrable Notes acquired for its own account as a result of market-making activities or other trading activities, it will deliver a prospectus meeting the requirements of the Securities Act in connection with any resale of Exchange Notes received in respect of such Registrable Securities pursuant to the Exchange Offer,"

and (y) a statement to the effect that by a broker-dealer making the acknowledgement described in clause (x) and by delivering a Prospectus in connection with the exchange of Registrable Securities, the broker-dealer will not be deemed to admit that it is an underwriter within the meaning of the Securities Act; and

(B)  in the case of any Exchange Offer Registration Statement, deliver to the Initial Purchasers or to another representative of the Participating Broker-Dealers, if requested by any such Initial Purchasers or such other representative of the Participating Broker-Dealers, on behalf of the Participating Broker-Dealers upon consummation of the Exchange Offer (i) an opinion of counsel in form and substance reasonably satisfactory to the Initial Purchasers or such other representative of the Participating Broker-Dealers,

covering the matters customarily covered in opinions requested in connection with Exchange Offer Registration Statements and such other matters as may be reasonably requested (it being agreed that the matters to be covered by such opinion may be subject to customary qualifications and exceptions), (ii) an officers' certificate containing certifications substantially similar to those set forth in certificates delivered pursuant to Section 8 of the Purchase Agreement and such additional certifications as are customarily delivered in a public offering of debt securities and (iii) as well as upon the effectiveness of the Exchange Offer Registration Statement, a comfort letter, in each case, in customary form as permitted by Statement on Auditing Standards No. 72 and with such variations necessary to reflect the merger transactions in August 1997 involving the Company and the predecessors of the Company.  Each of the foregoing shall be consistent with the terms of the Purchase Agreement.

The Company may require each seller of Registrable Securities as to which any registration is being effected to furnish to the Company such information regarding such seller as may be required by the Staff of the SEC to be included in a Registration Statement.  The Company may exclude from such registration the Registrable Securities of any seller who unreasonably fails to furnish such information within a reasonable time after receiving such request. The Company shall have no obligation to register under the Securities Act the Registrable Securities of a seller who so fails to furnish such information.

In the case of (1) a Shelf Registration Statement or (2) Participating Broker-Dealers who have notified the Company that they will be utilizing the Prospectus contained in the Exchange Offer Registration Statement as provided in Section 3(t) hereof, are seeking to sell Exchange Notes and are required to deliver Prospectuses, each Holder agrees that, upon receipt of any notice from the Company of the happening of any event of the kind described in Section 3(e)(ii), 3(e)(iii), 3(e)(v) or 3(e)(vi) hereof, such Holder will forthwith discontinue disposition of Registrable Securities pursuant to a Registration Statement until such Holder's receipt of the copies of the supplemented or amended Prospectus contemplated by Section 3(i) hereof or until it is advised in writing (the "Advice") by the Company that the use of the applicable Prospectus may be resumed, and, if so directed by the Company, such Holder will deliver to the Company (at the Company's expense) all copies in such Holder's possession, other than permanent file copies then in such Holder's possession, of the Prospectus covering such Registrable Securities or Exchange Notes, as the case may be, current at the time of receipt of such notice.  If the Company shall give any such notice to suspend the disposition of Registrable Securities

15

<PAGE>

or Exchange Notes, as the case may be, pursuant to a Registration Statement, the Company shall file and use its best efforts to have declared effective (if an amendment) as soon as practicable an amendment or supplement to the Registration Statement and shall extend the period during which such Registration Statement shall be maintained effective pursuant to this Agreement by the number of days in the period from and including the date of the giving of such notice to and including the date when the Company shall have made available to the Holders (x) copies of the supplemented or amended Prospectus necessary to resume such dispositions or (y) the Advice.

4.    Indemnification.

(a)    In connection with any Registration Statement, the Company shall indemnify and hold harmless each Initial Purchaser, each Holder, each underwriter who participates in an offering of the Registrable Securities, each Participating Broker-Dealer, and each Person, if any, who controls any of such parties within the meaning of Section 15 of the Securities Act or Section 20 of the Exchange Act (each an "Indemnified Party") from and against any and all losses, claims, damages or liabilities, joint or several, to which they or any of them may become subject under the Securities Act or any other statute or common law and shall reimburse each such Indemnified Party for any legal or other expenses (including, to the extent hereinafter provided, reasonable

counsel fees) incurred by them in connection with investigating any such losses,
claims, damages or liabilities or in connection with defending any actions,
insofar as such losses, claims, damages, liabilities, expenses or actions arise
out of or are based upon any untrue statement or alleged untrue statement of a
material fact contained in any preliminary prospectus or Prospectus, or in a
Registration Statement, or the omission or alleged omission to state therein a
material fact required to be stated therein or necessary to make the statements
therein, in the light of the circumstances under which they were made, not
misleading; provided, however, that the indemnity agreement contained in this
Section 4 as to any Indemnified Party shall not apply to any such losses,
claims, damages, liabilities, expenses or actions arising out of, or based upon,
any such untrue statement or alleged untrue statement, or any such omission or
alleged omission, if such statement or omission was made in reliance upon
information furnished in writing to the Company by such Indemnified Party for
use in connection with the preparation of the Registration Statement or the
Prospectus or any amendment or supplement to either thereof, or arising out of,
or based upon, statements in or omissions from the part of the Registration
Statement which shall constitute the Statement of Eligibility and Qualification
of the Trustee under the TIA; and provided further, that the indemnity agreement
contained in this Section 4 with respect to the Prospectus (if the Company shall
have furnished any amendment or supplement thereto) shall not inure to the
benefit of any Indemnified Party on account of any such losses, claims, damages,
liabilities, expenses or actions arising from the sale of Registrable Securities
to any person if a copy of the Prospectus (exclusive of any documents
incorporated by reference) shall not have been given or sent to such person by
or on behalf of such Indemnified Party with or prior to the written confirmation
of the sale involved unless, with respect to the delivery of any amendment or
supplement to the Prospectus, the alleged omission or alleged untrue statement
was not corrected in such amendment or supplement at the time of such written
confirmation. The indemnity agreement of the Company contained in this Section 4
shall remain

                                       16

<PAGE>

operative and in full force and effect regardless of any termination of this
Agreement or of any investigation made by or on behalf of any Indemnified Party,
and shall survive the registration of the Registrable Securities.

        (b)  Each Holder shall indemnify, defend and hold harmless the
Company and any underwriter and other selling Holder, and their respective
officers and directors, and each person who controls the Company or any
underwriter or any other selling Holder within the meaning of Section 15 of the
Securities Act, from and against any and all losses, claims, damages or
liabilities, joint or several, to which they or any of them may become subject
under the Securities Act or any other statute or common law and shall reimburse
each of them for any legal or other expenses (including, to the extent
hereinafter provided, reasonable counsel fees) incurred by them in connection
with investigating any such losses, claims, damages or liabilities or in
connection with defending any actions, insofar as such losses, claims, damages,
liabilities, expenses or actions arise out of or are based upon any untrue
statement or alleged untrue statement of a material fact contained in a
Registration Statement or the Prospectus, or the omission or alleged omission to
state therein a material fact required to be stated therein or necessary to make
the statements therein not misleading, if such statement or omission was made in
reliance upon information furnished in writing to the Company by or on behalf of
such Holder, for use in connection with the preparation of the Registration
Statement or the Prospectus or any amendment or supplement to either thereof.
The indemnity agreement of the respective Holders contained in this Section 4
shall remain operative and in full force and effect regardless of any
termination of this Agreement or of any investigation made by or on behalf of
the Company, any underwriter, or any other selling Holder, or their respective
directors or officers, or any such controlling person, and shall survive the
registration of the Registrable Securities; provided, however, that, in the case
of a Shelf Registration Statement, no such Holder shall be liable for any claims
hereunder in excess of the amount of net proceeds received by such Holder from

the sale of Registrable Securities pursuant to such Shelf Registration Statement.

(c)   The Company and the Holders each shall, upon the receipt of notice of the commencement of any action against it or any person controlling it as aforesaid, in respect of which indemnity may be sought on account of any indemnity agreement contained herein, promptly give written notice of the commencement thereof to the party or parties against whom indemnity shall be sought hereunder, but the omission so to notify such indemnifying party or parties of any such action shall not relieve such indemnifying party or parties from any liabilities which it or they may have to the indemnified party otherwise than on account of such indemnity agreement. In case such notice of any such action shall be so given, such indemnifying party shall be entitled to participate at its own expense in the defense, or, if it so elects, to assume (in conjunction with any other indemnifying parties) the defense of such action, in which event such defense shall be conducted by counsel chosen by such indemnifying party or parties and satisfactory to the indemnified party or parties who shall be defendant or defendants in such action, and such defendant or defendants shall bear the fees and expenses of any additional counsel retained by them; but if the indemnifying party shall elect not to assume the defense of such action, such indemnifying party will reimburse such indemnified party or parties for the reasonable fees and expenses of any counsel retained by them; provided, however, if the defendants in any such

17

<PAGE>

action include both the indemnified party and the indemnifying party and counsel for the indemnifying party shall have reasonably concluded that there may be a conflict of interest involved in the representation by such counsel of both the indemnifying party and the indemnified party, the indemnified party or parties shall have the right to select separate counsel, satisfactory to the indemnifying party, to participate in the defense of such action on behalf of such indemnified party or parties (it being understood, however, that the indemnifying party shall not be liable for the expenses of more than one separate counsel representing the indemnified parties who are parties to such action).

(d)   If the indemnification provided for in (a) or (b) above shall be unenforceable under applicable law by an indemnified party, each indemnifying party agrees to contribute to such indemnified party with respect to any and all losses, claims, damages, liabilities and expenses for which each such indemnification provided for in (a) or (b) above shall be unenforceable, in such proportion as shall be appropriate to reflect the relative fault of each indemnifying party on the one hand and the indemnified party on the other in connection with the statement or omissions which have resulted in such losses, claims, damages, liabilities and expenses, as well as any other relevant equitable considerations; provided, however, that no indemnified party guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any indemnifying party not guilty of such fraudulent misrepresentation. Relative fault shall be determined by reference to, among other things, whether the untrue or alleged untrue statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by such indemnifying party or the indemnified party and each such party's relative intent, knowledge, access to information and opportunity to correct or prevent such untrue statement or omission. The Company and each of the Holders agree that it would not be just and equitable if contributions pursuant to this paragraph (d) were to be determined by pro rata allocation (even if the Holders were treated as one entity for such purpose) or by any other method of allocation which does not taken account of the equitable consideration referred to above.

5.   Participation in Underwritten Registrations.  No Holder may participate in any underwritten registration hereunder unless such Holder (a) agrees to sell such Holder's Registrable Securities on the basis provided in any underwriting arrangements approved by the Persons entitled hereunder to approve

such arrangements and (b) completes and executes all reasonable questionnaires, powers of attorney, indemnities, underwriting agreements, lock-up letters and other documents reasonably required under the terms of such underwriting arrangements.

        6.    Selection of Underwriters.   The Holders of Registrable Securities covered by the Shelf Registration Statement who desire to do so may sell the securities covered by such Shelf Registration in an underwritten offering. In any such underwritten offering, the underwriter or underwriters and manager or managers that will administer the offering will be selected by the Holders of a majority in aggregate principal amount of the Registrable Securities included in such offering; provided, however, that such underwriters and managers must be reasonably satisfactory to the Company.

                                        18
<PAGE>

        7.    Miscellaneous.

        (a)   Rule 144 and Rule 144A.   For so long as the Company is subject to the reporting requirements of Section 13 or 15 of the Exchange Act and any Registrable Securities remain outstanding, the Company will file the reports required to be filed by it under the Securities Act and Section 13(a) or 15(d) of the Exchange Act and the rules and regulations adopted by the SEC thereunder. If the Company ceases to be so required to file such reports, it will, upon the request of any Holder of Registrable Securities (a) make publicly available such information as is necessary to permit sales of their securities pursuant to Rule 144 under the Securities Act, (b) deliver such information to prospective purchasers as is necessary to permit sales of their securities pursuant to Rule 144A under the Securities Act and take such further action as any Holder of Registrable Securities may reasonably request and (c) take such further action that is reasonable in the circumstances, in each case, to the extent required from time to time to enable such Holder to sell its Registrable Securities without registration under the Securities Act within the limitation of the exemptions provided by (i) Rule 144 under the Securities Act, as such rule may be amended from time to time, (ii) Rule 144A under the Securities Act, as such rule may be amended from time to time or (iii) any similar rules or regulations hereafter adopted by the SEC. Upon the request of any Holder of Registrable Securities, the Company will deliver to such Holder a written statement as to whether it has complied with such requirements.

        (b)   No Inconsistent Agreements.   The Company has not entered into nor will the Company on or after the date of this Agreement enter into any agreement which is inconsistent with the rights granted to the Holders of Registrable Securities in this Agreement or otherwise conflicts with the provisions hereof. The rights granted to the Holders hereunder do not in any way conflict with and are not inconsistent with the rights granted to the holders of the Company's other issued and outstanding securities under any such agreements.

        (c)   Amendments and Waivers.   The provisions of this Agreement, including the provisions of this sentence, may not be amended, modified or supplemented, and waivers of consents to departures from the provisions hereof may not be given unless the Company has obtained the written consent of Holders of at least a majority in aggregate principal amount of the outstanding Registrable Securities affected by such amendment, modification, supplement, waiver or departure; provided no departure with respect to the provisions of Section 4 hereof shall be effective as against any Holder of Registrable Securities without the unanimous consent of the Holders. Notwithstanding the foregoing sentence, (i) this Agreement may be amended, without the consent of any Holder of Registrable Securities, by written agreement signed by the Company and Salomon Brothers, to cure any ambiguity, correct or supplement any provision of this Agreement that may be inconsistent with any other provision of this Agreement or to make any other provisions with respect to matters or questions arising under this Agreement which shall not be inconsistent with the provisions of this Agreement, (ii) this Agreement may be amended, modified or supplemented, and waivers and consents to departures from the provisions

<PAGE>

hereof may be given, by written agreement signed by the Company and Salomon Brothers to the extent that any such amendment, modification, supplement, waiver or consent is, in their reasonable judgment, necessary or appropriate to comply with applicable law (including any interpretation of the Staff of the SEC) or any change therein and (iii) to the extent any provision of this Agreement relates to the Initial Purchasers, such provision may be amended, modified or supplemented, and waivers or consents to departures from such provisions may be given, by written agreement signed by Salomon Brothers and the Company.

(d)  Notices.  All notices and other communications provided for or permitted hereunder shall be made in writing by hand-delivery, registered first-class mail, telex, telecopier, or any courier guaranteeing overnight delivery (i) if to a Holder, at the most current address given by such Holder to the Company by means of a notice given in accordance with the provisions of this Section 7(d), which address initially is, with respect to the Initial Purchasers, the address set forth in the Purchase Agreement and (ii) if to the Company, initially at the Company's address set forth in the Purchase Agreement and thereafter at such other address, notice of which is given in accordance with the provisions of this Section 7(d).

All such notices and communications shall be deemed to have been duly given:  at the time delivered by hand, if personally delivered; five Business Days after being deposited in the mail, postage prepaid, if mailed; when answered back, if telexed; when receipt is acknowledged, if telecopied; and on the next Business Day, if timely delivered to an air courier guaranteeing overnight delivery.

Copies of all such notices, demands, or other communications shall be concurrently delivered by the Person giving the same to the Trustee, at the address specified in the Indenture.

(e)  Successors and Assigns.  This Agreement shall inure to the benefit of and be binding upon the successors, assigns and transferees of the Initial Purchasers, including, without limitation and without the need for an express assignment, subsequent Holders; provided, however, that nothing herein shall be deemed to permit any assignment, transfer or other disposition of Registrable Securities in violation of the terms of the Purchase Agreement or the Indenture. If any transferee of any Holder shall acquire Registrable Securities, in any manner, whether by operation of law or otherwise, such Registrable Securities shall be held subject to all of the terms of this Agreement, and by taking and holding such Registrable Securities, such Person shall be conclusively deemed to have agreed to be bound by and to perform all of the terms and provisions of this Agreement and such Person shall be entitled to receive the benefits hereof.

(f)  Third Party Beneficiary.  Each of the Initial Purchasers shall be a third party beneficiary of the agreements made hereunder between the Company and the Holders and shall have the right to enforce such agreements directly to the extent it deems such enforcement necessary or advisable to protect its rights or the rights of Holders hereunder.

(g)  Counterparts.  This Agreement may be executed in any number of counterparts and by the parties hereto in separate counterparts, each of which when so executed shall be deemed to be an

20

<PAGE>

original and all of which taken together shall constitute one and the same agreement.

(h)  Headings.  The headings in this Agreement are for convenience of

reference only and shall not limit or otherwise affect the meaning hereof.

     (i)  GOVERNING LAW.  THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE
IN THE STATE OF NEW YORK. THE VALIDITY AND INTERPRETATION OF THIS AGREEMENT, AND
THE TERMS AND CONDITIONS SET FORTH HEREIN, SHALL BE GOVERNED BY AND CONSTRUED IN
ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY
PROVISIONS RELATING TO CONFLICTS OF LAWS. EACH OF THE PARTIES HERETO AGREES TO
SUBMIT TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK IN ANY ACTION
OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

     (j)  Severability.  In the event that any one or more of the
provisions contained herein, or the application thereof in any circumstance, is
held invalid, illegal or unenforceable, the validity, legality and
enforceability of any such provision in every other respect and of the remaining
provisions contained herein shall not be affected or impaired thereby.

     (k)  Securities Held by the Company or its Affiliates.  Whenever the
consent or approval of Holders of a specified percentage of Registrable
Securities is required hereunder, Registrable Securities held by the Company or
any of its affiliates (as such term is defined in Rule 405 under the Securities
Act) shall not be counted in determining whether such consent or approval was
given by the Holders of such required percentage.

                                   21
<PAGE>

     IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of
the date first written above.

                         TEXAS UTILITIES COMPANY

                         By:   /s/ Robert S. Shapard
                              ------------------------------------------------
                              Name:  Robert S. Shapard
                              Title: Treasurer


Confirmed and accepted as of
the date first above written:

SALOMON BROTHERS INC


By:  /s/ Joyce E. Erony
     ----------------------------------
     Name:  Joyce E. Erony
     Title: Director


GOLDMAN, SACHS & CO.


By:  /s/ Goldman, Sachs & Co.
     ----------------------------------
     Name:  Goldman,Sachs & Co.
     Title:


LEHMAN BROTHERS INC.


By:/s/ M. Antonia Paterno Castello
     ----------------------------------
     Name:  M. Antonia Paterno Castello
     Title: Managing Director
</TEXT>

```
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-4.(HH)
<SEQUENCE>6
<DESCRIPTION>OFFICER'S CERTIFICATE
<TEXT>

<PAGE>
```

EXHIBIT 4 (hh)


TEXAS UTILITIES COMPANY

OFFICER'S CERTIFICATE


Robert S. Shapard, the Treasurer of Texas Utilities Company (the "Company"), pursuant to the authority granted in the Board Resolutions of the Company dated August 14 and August 15, 1997, and Sections 201, 301 1501 and 1502 of the Indenture defined herein, does hereby certify to The Bank of New York (the "Trustee"), as Trustee under the Indenture of the Company (For Unsecured Debt Securities Series C) dated as of January 1, 1998 (the "Indenture") that:

1.    The securities of the first series to be issued under the Indenture shall be designated "6.375% Series C Senior Notes due 2008" (the "Senior Notes of the First Series"). The securities of the second series to be issued under the Indenture shall be designated "6.375% Series C Exchange Senior Notes due 2008" (the "Senior Notes of the Second Series," and together with the Senior Notes of the First Series, the "Senior Notes of the First and Second Series"). (The term "Senior Notes of the First or Second Series" shall refer to either Senior Notes of the First Series or Senior Notes of the Second Series, except as otherwise noted.) All capitalized terms used in this certificate which are not defined herein but are defined in the Indenture shall have the meanings set forth in the Indenture;

2.    The Senior Notes of the First and Second Series shall be limited in aggregate principal amount to $200,000,000 at any time Outstanding, except as contemplated in Section 301(b) of the Indenture;

3.    The Senior Notes of the First and Second Series shall mature and the principal shall be due and payable together with all accrued and unpaid interest thereon on January 1, 2008;

4.    The Senior Notes of the First and Second Series shall be issued in the denominations of $5,000 and in integral multiples of $1,000 in excess thereof.

5.    The Senior Notes of the First and Second Series shall bear interest at the rate of 6.375% per annum payable semi-annually on January 1 and July 1 of each year (each, an "Interest Payment Date"). Interest on the Senior Notes of the First Series will accrue from January 13, 1998, but if interest has been paid on such Senior Notes of the First Series, then from the most recent Interest Payment Date to which interest has been paid or duly provided for. Interest on the Senior Notes of the Second Series will accrue from the most recent Interest Payment Date to which interest has been paid on or duly provided for with respect to the Senior Notes of the First Series, or if no such interest has been paid or duly provided for, from January 13, 1998, but if interest has been paid on or duly provided for with respect to such Senior Notes of the Second Series, then from the most recent Interest Payment Date to which interest has been paid or duly provided for. In the event that any Interest Payment Date is not a Business Day, then payment of interest payable on such date will be made on the next succeeding day which is a

Business Day (and without any interest or other payment in respect of such delay), with the same force and effect as if made on such Interest Payment Date;

6.  Each installment of interest on a Senior Note of the First or Second Series shall be payable to the Person in whose name such Senior Note of the First or Second Series is registered at the close of business on the 15th day of the calendar month next preceding the corresponding Interest Payment Date (the "Regular Record Date") for the Senior Notes of the First or Second Series. Any installment of interest on the Senior Notes of the First or Second Series not punctually paid or duly provided for shall forthwith cease to be payable to the Holders of such Senior Notes of the First or Second Series on such Regular Record Date, and may be paid to the Persons in whose name such Senior Notes of the First or Second Series are registered at the close of business on a Special Record Date to be fixed by the Trustee for the payment of such Defaulted Interest. Notice of such Defaulted Interest and Special Record Date shall be given to the Holders of such Senior Notes of the First or Second Series not less than 10 days prior to such Special Record Date, or may be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which such Senior Notes of the First or Second Series may be listed, and upon such notice as may be required by such exchange, all as more fully provided in the Indenture;

7.  The principal and each installment of interest on the Senior Notes of the First and Second Series shall be payable at, and registration and registration of transfers and exchanges in respect of the Senior Notes of the First and Second Series may be effected at, the office or agency of the Company in The City of New York; provided that payment of interest may be made at the option of the Company by check mailed to the address of the persons entitled thereto. Notices and demands to or upon the Company in respect of the Senior Notes of the First and Second Series may be served at the office or agency of the Company in The City of New York. The Corporate Trust Office of the Trustee will initially be the agency of the Company for such payment, registration and registration of transfers and exchanges and service of notices and demands and the Company hereby appoints the Trustee as its agent for all such purposes; provided, however, that the Company reserves the right to change, by one or more Officer's Certificates, any such office or agency and such agent. The Trustee will be the Security Registrar and the Paying Agent for the Senior Notes of the First and Second Series;

8.  The Senior Notes of the First Series will not be redeemable prior to maturity; the Senior Notes of the Second Series will not be redeemable prior to maturity;

9.  The Senior Notes of the First Series will be initially issued pursuant to Section 4(2) of the Securities Act of 1933, as amended (the "Securities Act"), in global form registered in the name of Cede & Co. (as nominee for The Depository Trust Company ("DTC"), New York, New York). The Senior Notes of the First Series in global form shall bear the depository legend in substantially the form set forth in Exhibit A hereto. The Senior Notes of the First Series shall contain restrictions on transfer, substantially as described in the form set forth in Exhibit A hereto. Each Senior Note of the First Series, whether in a global form or in a certificated form, shall bear the non-registration legend and the registration rights legend in substantially the form set forth in such form, unless otherwise agreed by the Company, such agreement to be confirmed in writing to the Trustee. Nothing in the Indenture, the Senior

Notes of the First Series or this certificate shall be construed to require the Company to register any Senior Notes of the First Series under the Securities Act, unless otherwise expressly agreed by the Company, confirmed in writing to the Trustee, or to make any transfer of such Senior Notes of the First Series in violation of applicable law. The Company will enter into a registration rights agreement with the initial purchasers of the Senior Notes of the First Series pursuant to which, among other things, the Senior Notes of the First Series may be exchanged for Senior Notes of the Second Series registered under the Securities Act.

10.    It is contemplated that beneficial interests in Senior Notes of the First Series owned by qualified institutional buyers (as defined in Rule 144A under the Securities Act)("QIBs") or sold to QIBs in reliance upon Rule 144A under the Securities Act will be represented by a global certificate registered in the name of Cede & Co., as registered owner and as nominee for DTC; beneficial interests in Senior Notes of the First Series sold to foreign purchasers pursuant to Regulation S under the Securities Act will be evidenced by one or more separate global certificates (each the "Regulation S Global Certificate") and will be registered in the name of Cede & Co., as registered owner and as nominee for DTC for the accounts of Euroclear and Cedel Bank; prior to the 40th day after the date of initial issuance of the Senior Notes of the First Series, beneficial interests in the Regulation S Global Certificate may be held only through Euroclear or Cedel Bank; Senior Notes of the First Series acquired by Institutional Accredited Investors (as defined in Rule 501(a)(1), (2), (3) or (7) under the Securities Act) ("IAIs") and other eligible transferees, who are not QIBs and who are not foreign purchasers pursuant to Regulation S under the Securities Act, will be in certificated form. The Trustee, the Security Registrar and the Company will have no responsibility under the Indenture for transfers of beneficial interests in the Senior Notes of the First and Second Series.

In connection with any transfer of Senior Notes of the First Series, the Trustee, the Security Registrar and the Company shall be under no duty to inquire into, may conclusively presume the correctness of, and shall be fully protected in relying upon the certificates and other information (in the forms attached hereto as Exhibit A, for use in connection with the transfer of the Senior Notes of the First Series in certificated form, or Exhibit C, for use in connection with the transfer of beneficial interests in one global certificate to another global certificate or to a Senior Note of the First Series in certificated form, or otherwise) received from the Holders and any transferees of any Senior Notes of the First Series regarding the validity, legality and due authorization of any such transfer, the eligibility of the transferee to receive such Security and any other facts and circumstances related to such transfer;

11.    No service charge shall be made for the registration of transfer or exchange of the Senior Notes of the First and Second Series; provided, however, that the Company may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with the exchange or transfer;

12.    If the Company shall make any deposit of money and/or Eligible Obligations with respect to any Senior Notes of the First or Second Series, or any portion of the principal amount thereof, as contemplated by Section 701 of the Indenture, the Company shall not deliver an Officer's Certificate described in clause (z) in the first paragraph of said Section 701 unless the Company shall also deliver to the Trustee, together with such Officer's Certificate, either:

-3-

(A) an instrument wherein the Company, notwithstanding the satisfaction and discharge of its indebtedness in respect of the Senior Notes of the First or Second Series, shall assume the obligation (which shall be absolute and unconditional) to irrevocably deposit with the Trustee or Paying Agent such additional sums of money, if any, or additional Eligible Obligations (meeting the requirements of Section 701), if any, or any combination thereof, at such time or times, as shall be necessary, together with the money and/or Eligible Obligations theretofore so deposited, to pay when due the principal of and premium, if any, and interest due and to become due on such Senior Notes of the First or Second Series or portions thereof, all in accordance with and subject to the provisions of said Section 701; provided, however, that such instrument may state that the obligation of the Company to make additional deposits as aforesaid shall be subject to the delivery to the Company by the Trustee of a notice asserting the deficiency accompanied by an opinion of an independent public accountant of nationally recognized standing, selected by the Trustee, showing the calculation thereof; or

(B) an Opinion of Counsel to the effect that, as a result of a change in law occurring after the date of this certificate, the Holders of such Senior Notes of the First or Second Series, or portions of the principal amount thereof, will not recognize income, gain or loss for United States federal income tax purposes as a result of the satisfaction and discharge of the Company's indebtedness in respect thereof and will be subject to United States federal income tax on the same amounts, at the same times and in the same manner as if such satisfaction and discharge had not been effected.

13.    The obligations of the Company under the Senior Notes of the First and Second Series and under the Indenture to the extent related to such series will be subject to assignment by the Company to and assumption by a wholly owned Subsidiary of the Company at any time, as provided in the form set forth in Exhibit A hereto with respect to the Senior Notes of the First Series, and in the form set forth in Exhibit B hereto in the respect to the Senior Notes of the Second Series.

In the event that such Subsidiary assumes the obligations under the Senior Notes of the First and Second Series, the Company will unconditionally guarantee payment of the Senior Notes of the First and Second Series and will execute a guarantee in form and substance satisfactory to the Trustee. Pursuant to the guarantee, the Company will fully and unconditionally guarantee the payment of the obligations of such assuming Subsidiary under the Senior Notes of the First and Second Series and under the Indenture, including, without limitation, payment, as and when due, of the principal of, premium, if any, and interest on, the Senior Notes of the First and Second Series. Other than the obligation to make such payments, the Company will be released and discharged from all of its other obligations under the Indenture. The foregoing assignment and assumption shall be in compliance with applicable law including the Securities Act.

-4-

&lt;PAGE&gt;

14.    The Senior Notes of the First Series shall have such other terms and provisions as are provided in the form set forth in Exhibit A hereto, and shall be issued in substantially such form; the Senior Notes of the Second Series shall have such other terms and provisions as are provided in the form set forth in Exhibit B hereto, and shall be issued in substantially such form.

15.    The undersigned has read all of the covenants and conditions contained in the Indenture relating to the issuance of the Senior Notes of the

First and Second Series and the definitions in the Indenture relating thereto and in respect of which this certificate is made;

16.    The statements contained in this certificate are based upon the familiarity of the undersigned with the Indenture, the documents accompanying this certificate, and upon discussions by the undersigned with officers and employees of the Company familiar with the matters set forth herein;

17.    In the opinion of the undersigned, he has made such examination or investigation as is necessary to enable him to express an informed opinion whether or not such covenants and conditions have been complied with; and

18.    In the opinion of the undersigned, such conditions and covenants and conditions precedent, if any (including any covenants compliance with which constitutes a condition precedent) to the authentication and delivery of the Senior Notes of the First and Second Series requested in the accompanying Company Order have been complied with.

        IN WITNESS WHEREOF, I have executed this Officer's Certificate this 13th day of January, 1998.


                                        /s/ Robert S. Shapard
                            ------------------------------------
                                        Treasurer

                                     -5-

<PAGE>

                                                            EXHIBIT A

                            [depository legend]

        Unless this Certificate is presented by an authorized representative of The Depository Trust Company, a New York corporation ("DTC"), to the Company or its agent for registration of transfer, exchange, or payment, and any certificate issued is registered in the name of Cede & Co. or in such other name as is requested by an authorized representative of DTC (and any payment is made to Cede & Co. or to such other entity as is requested by an authorized representative of DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL inasmuch as the registered owner hereof, Cede & Co., has an interest herein.


                            [non-registration legend]


"THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"). THE HOLDER HEREOF, BY PURCHASING THIS SECURITY, AGREES FOR THE BENEFIT OF THE COMPANY THAT THIS SECURITY MAY NOT BE RESOLD, PLEDGED OR OTHERWISE TRANSFERRED OTHER THAN (1) TO THE COMPANY, (2) IN A TRANSACTION ENTITLED TO AN EXEMPTION FROM REGISTRATION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT, (3) SO LONG AS THIS SECURITY IS ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER THE SECURITIES ACT ("RULE 144A"), TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHOM NOTICE IS GIVEN THAT THE RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A (AS INDICATED BY THE BOX CHECKED BY THE TRANSFEROR ON THE CERTIFICATE OF TRANSFER ON THE REVERSE OF THIS SECURITY), (4) IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 904 OF REGULATION S UNDER THE SECURITIES ACT (AS INDICATED BY THE BOX CHECKED BY THE TRANSFEROR ON THE CERTIFICATE OF TRANSFER ON THE REVERSE OF THIS SECURITY), OR (5) TO AN INSTITUTION THAT IS AN "ACCREDITED INVESTOR" AS DEFINED IN RULE 501(a)(1), (2), (3) OR (7) UNDER THE SECURITIES ACT (AS INDICATED BY THE BOX CHECKED BY THE TRANSFEROR ON THE CERTIFICATE OF TRANSFER ON THE REVERSE OF THIS

SECURITY) THAT IS ACQUIRING THIS SECURITY FOR INVESTMENT PURPOSES AND NOT FOR DISTRIBUTION, AND A CERTIFICATE IN THE FORM ATTACHED TO THIS SECURITY IS DELIVERED BY THE TRANSFEREE TO THE COMPANY AND THE TRUSTEE IN EACH CASE IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES. AN INSTITUTIONAL ACCREDITED INVESTOR HOLDING THIS SECURITY AGREES IT WILL FURNISH TO THE COMPANY AND THE TRUSTEE SUCH CERTIFICATES AND OTHER INFORMATION AS THEY MAY REASONABLY REQUIRE TO CONFIRM THAT ANY TRANSFER BY IT OF THIS SECURITY COMPLIES WITH THE FOREGOING RESTRICTIONS. THE HOLDER HEREOF, BY PURCHASING THIS SECURITY, REPRESENTS AND AGREES FOR THE BENEFIT OF THE COMPANY THAT IT IS (1) A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A OR (2) AN INSTITUTION THAT IS AN "ACCREDITED INVESTOR" AS DEFINED IN RULE 501(a)(1), (2), (3) OR (7) UNDER THE SECURITIES ACT AND THAT IT IS HOLDING THIS SECURITY FOR INVESTMENT PURPOSES AND NOT FOR DISTRIBUTION OR (3) A NON-U.S. PERSON OUTSIDE THE UNITED STATES WITHIN THE MEANING OF,
<PAGE>


OR AN ACCOUNT SATISFYING THE REQUIREMENTS OF PARAGRAPH (o)(2) OF RULE 902 UNDER, REGULATION S UNDER THE SECURITIES ACT."

                    [registration rights legend]

        The Holder of this Security, by acceptance hereof, will be deemed to have agreed to be bound by the provisions of the Registration Rights Agreement dated January 13, 1998, between the Company and the initial purchasers of this Security.
NO._____                        CUSIP NO._____



                    [FORM OF FACE OF SENIOR NOTE]


                      TEXAS UTILITIES COMPANY

                6.375% SERIES C SENIOR NOTES DUE 2008

        TEXAS UTILITIES COMPANY, a corporation duly organized and existing under the laws of the State of Texas (herein referred to as the "Company", which term includes any successor Person under the Indenture), for value received, hereby promises to pay to

or registered assigns, the principal sum of _____ Dollars on January 1, 2008, and to pay interest on said principal sum semi-annually on January 1 and July 1 of each year (each an Interest Payment Date) at the rate of 6.375% per annum until the principal hereof is paid or made available for payment. Interest on the Securities of this series will accrue from January 13, 1998, to the first Interest Payment Date, and thereafter will accrue from the last Interest Payment Date to which interest has been paid or duly provided for. In the event that any Interest Payment Date is not a Business Day, then payment of interest payable on such date will be made on the next succeeding day which is a Business Day (and without any interest or other payment in respect of such delay) with the same force and effect as if made on the Interest Payment Date. The interest so payable, and punctually paid or duly provided for, on any Interest Payment Date will, as provided in such Indenture, be paid to the Person in whose name this Security (or one or more Predecessor Securities) is registered at the close of business on the Regular Record Date for such interest, which shall be the 15th day of the calendar month next preceding such Interest Payment Date. Any such interest not so punctually paid or duly provided for will forthwith cease to be payable to the Holder on such Regular Record Date and may either be paid to the Person in whose name this Security (or one or more Predecessor Securities) is registered at the close of business on a Special Record Date for the payment of such Defaulted Interest to be fixed by the Trustee, notice whereof shall be given to Holders of Securities of this series not less than 10 days prior to such Special Record Date, or be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which the Securities of this series may be listed, and

upon such notice as may be required by such exchange, all as more fully provided in the Indenture referred to on the reverse hereof.

Payment of the principal of (and premium, if any) and interest on this Security will be made at the office or agency of the Company maintained for that purpose in The City of New York, the State of New York in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts, provided, however, that, at the option of the

A-2

<PAGE>

Company, interest on this Security may be paid by check mailed to the address of the person entitled thereto, as such address shall appear on the Security Register.

A-3

<PAGE>

Reference is hereby made to the further provisions of this Security set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

Unless the certificate of authentication hereon has been executed by the Trustee referred to on the reverse hereof by manual signature, this Security shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose.

IN WITNESS WHEREOF, the Company has caused this instrument to be duly executed.

TEXAS UTILITIES COMPANY

By:_____

ATTEST:

- ----------------------------

[FORM OF CERTIFICATE OF AUTHENTICATION]

CERTIFICATE OF AUTHENTICATION

Dated:

This is one of the Securities of the series designated therein referred to in the within-mentioned Indenture.

THE BANK OF NEW YORK, as Trustee

By:_____
            Authorized Signatory

A-4

<PAGE>

[FORM OF REVERSE OF SENIOR NOTE]

This Security is one of a duly authorized issue of securities of the Company (herein called the "Securities"), issued and to be issued in one or more series under an Indenture (for Unsecured Debt Securities Series C), dated as of January 1, 1998 (herein, together with any amendments thereto,

called the "Indenture", which term shall have the meaning assigned to it in such instrument), between the Company and The Bank of New York, as Trustee (herein called the "Trustee", which term includes any successor trustee under the Indenture), and reference is hereby made to the Indenture, including the Board Resolutions and Officer's Certificate filed with the Trustee on January 13, 1998 creating the series designated on the face hereof, for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Company, the Trustee and the Holders of the Securities and of the terms upon which the Securities are, and are to be, authenticated and delivered. This Security is one of the series designated on the face hereof, limited in aggregate principal amount to $200,000,000.

REDEMPTION

The Securities of this series will not be redeemable prior to maturity.

The Indenture contains provisions for defeasance at any time of the entire indebtedness of this Security upon compliance with certain conditions set forth in the Indenture.

If an Event of Default with respect to Securities of this series shall occur and be continuing, the principal of the Securities of this series may be declared due and payable in the manner and with the effect provided in the Indenture.

The Indenture permits, with certain exceptions as therein provided, the amendment thereof and the modification of the rights and obligations of the Company and the rights of the Holders of the Securities of each series to be affected under the Indenture at any time by the Company and the Trustee with the consent of the Holders of a majority in principal amount of the Securities at the time Outstanding of all series to be affected. The Indenture also contains provisions permitting the Holders of specified percentages in principal amount of the Securities of each series at the time Outstanding, on behalf of the Holders of all Securities of such series, to waive compliance by the Company with certain provisions of the Indenture and certain past defaults under the Indenture and their consequences. Any such consent or waiver by the Holder of this Security shall be conclusive and binding upon such Holder and upon all future Holders of this Security and of any Security issued upon the registration of transfer hereof or in exchange herefor or in lieu hereof, whether or not notation of such consent or waiver is made upon this Security.

As provided in and subject to the provisions of the Indenture, the Holder of this Security shall not have the right to institute any proceeding with respect to the Indenture or for the appointment of a receiver or trustee or for any other remedy thereunder, unless such Holder shall have previously given the Trustee written notice of a continuing Event of Default with respect to Securities of this series, the Holders of a majority in aggregate principal amount of the Securities of all series at the time Outstanding in respect of which an Event of Default shall have occurred and be continuing shall have made written request to the Trustee to institute proceedings in respect of such Event of Default as Trustee and offered the Trustee reasonable indemnity, and the Trustee shall not have received from the Holders of a majority in aggregate principal amount of Securities of all series at the time Outstanding in respect of which an Event of Default shall have occurred and be continuing a direction inconsistent with such request, and shall have failed to institute any such proceeding, for 60 days after receipt of such notice, request and offer of indemnity. The foregoing shall not apply to any

A-5

<PAGE>

suit instituted by the Holder of this Security for the enforcement of any payment of principal hereof or any premium or interest hereon on or after the respective due dates expressed herein.

EFH01434959

No reference herein to the Indenture and no provision of this Security or of the Indenture shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of and any premium and interest on this Security at the times, place and rate, and in the coin or currency, herein prescribed.

The Securities of this series are issuable only in registered form without coupons in denominations of $5,000 and in integral multiples of $1,000 in excess thereof. As provided in the Indenture and subject to certain limitations therein set forth, Securities of this series are exchangeable for a like aggregate principal amount of Securities of this series and of like tenor and of authorized denominations, as requested by the Holder surrendering the same.

No service charge shall be made for any such registration of transfer or exchange, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith.

The Company, the Trustee and any agent of the Company or the Trustee may treat the Person in whose name this Security is registered as the absolute owner hereof for all purposes, whether or not this Security be overdue, and neither the Company, the Trustee nor any such agent shall be affected by notice to the contrary.

Unless an Event of Default, or an event which, after notice or lapse of time or both, would become an Event of Default, shall have occurred and be continuing, the obligations of the Company under the Securities of this series and the Indenture to the extent related to such series may be assigned by the Company to, and be assumed in whole, on a full recourse basis, by a wholly owned Subsidiary of the Company at any time; provided, however, that such assumption shall be subject to, and permitted only upon the fulfillment and satisfaction of, the following terms and conditions: (a) an assumption agreement and a supplemental indenture to the Indenture evidencing such assumption shall be in substance and form reasonably satisfactory to the Trustee and shall, inter alia, include modifications and amendments to the Indenture making the obligations under the Securities of this series and under the Indenture to the extent related to such series primary obligations of such Subsidiary, substituting such Subsidiary of the Company for the Company in the form of the Securities of this series and in provisions of the Indenture to the extent related to such series and releasing and discharging the Company from its obligations under the Securities of this series and the Indenture to the extent related to such series; and (b) the Trustee shall have received (i) an executed counterpart of such assumption agreement and supplemental indenture; (ii) evidence satisfactory to the Trustee and the Company that all necessary authorizations, consents, orders, approvals, waivers, filings and declarations of or with, Federal, state, county, municipal, regional or other governmental authorities, agencies or boards (collectively, "Governmental Actions") relating to such assumption have been duly obtained and are in full force and effect, (iii) evidence satisfactory to the Trustee that any security interest intended to be created by the Indenture is not in any material way adversely affected or impaired by any of the agreements or transactions relating to such assumption and (iv) an Opinion of Counsel for such Subsidiary, reasonably satisfactory in substance, scope and form to the Trustee and the Company, to the effect that (A) the supplemental indenture evidencing such assumption has been duly authorized, executed and delivered by such Subsidiary, (B) the execution and delivery by such Subsidiary of such supplemental indenture and the consummation of the transactions contemplated thereby do not contravene any provision of law or any governmental rule applicable to such Subsidiary or any provision of such Subsidiary's charter documents or by-laws and do not contravene any provision of, or constitute a default under, or result in the creation or imposition of any lien upon any of such Subsidiary's properties or assets under any indenture, mortgage, contract or other agreement to which such Subsidiary is a party or by which such Subsidiary or any of its properties may be bound or

A-6

EFH01434960

affected, (C) all necessary Governmental Actions relating to such assumption have been duly obtained and are in full force and effect and (D) such agreement and supplemental indenture constitute the legal, valid and binding obligations of such Subsidiary, enforceable in accordance with their respective terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws at the time in effect affecting the rights of creditors generally.

          At the time of such assumption the Company will unconditionally guarantee payment of the Securities of this series and will execute a guarantee in form and substance satisfactory to the Trustee. Pursuant to the guarantee, the Company will fully and unconditionally guarantee the payment of the obligations of such assuming Subsidiary under the Securities of this series and under the Indenture, including, without limitation, payment, as and when due, of the principal of, premium, if any, and interest on, the Securities of this series. Other than the obligation to make such payments, the Company shall be released and discharged from all other obligations under the Indenture.

          All terms used in this Security which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

                                   A-7
<PAGE>

                         [CERTIFICATE OF TRANSFER]

               6.375% SERIES C SENIOR NOTES DUE 2008

     FOR VALUE RECEIVED, the undersigned sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR OTHER
IDENTIFYING NUMBER OF ASSIGNEE
- -----------------------------------------

- -----------------------------------------

                    ------------------------------------------------------------
                    Name and address of assignee must be printed or typewritten.


- ------------------------------------------------------------------------------
the within Security of the Company and does hereby irrevocable constitute and
appoint


- ------------------------------------------------------------------------------
to transfer the said Security on the books of the within-named Company, with
full power of substitution in the premises.

The undersigned certifies that said Security is being resold, pledged or
otherwise transferred as follows: (check one)

|_|        to the Company;

|_|        to a Person whom the undersigned reasonably believes is a qualified
           institutional buyer within the meaning of Rule 144A under the
           Securities Act of 1933, as amended (the "Securities Act") purchasing
           for its own account or for the account of a qualified institutional
           buyer to whom notice is given that the resale, pledge or other transfer
           is being made in reliance on Rule 144A;

|_|        in an offshore transaction in accordance with Rule 904 of Regulation S
           under the Securities Act;

|_|      to an institution that is an "accredited investor" as defined in Rule
501(a)(1), (2), (3) or (7) under the Securities Act that is acquiring
this Security for investment purposes and not for distribution; (attach
a copy of an Accredited Investor Certificate in the form annexed signed
by an authorized officer of the transferee)

|_|      as otherwise permitted by the non-registration legend appearing on this
Security; or

|_|      as otherwise agreed by the Company, confirmed in writing to the
Trustee, as follows: [describe]

          ------------------------------------------------------------------

          ------------------------------------------------------------------

Dated:

          -------------------------------       -------------------------------

A-8

<PAGE>

[FORM OF ACCREDITED INVESTOR CERTIFICATE]

[Transferor Name and Address]

Ladies and Gentlemen:

    In connection with our proposed purchase of 6.375% Series C Senior Notes due
2008 (the "Senior Notes") issued by Texas Utilities Company ("Issuer"), we
confirm that:

          1. We have received a copy of the Offering Memorandum (the
"Offering Memorandum") relating to the Senior Notes and such other
information as we deem necessary in order to make our investment
decision. We acknowledge that we have read and agree to the matters
stated under the caption NOTICE TO INVESTORS in such Offering
Memorandum, and the restrictions on duplication or circulation of, or
disclosure relating to, such Offering Memorandum.

          2. We understand that any subsequent transfer of the Senior
Notes is subject to certain restrictions and conditions set forth in
the Indenture relating to Senior Notes (the "Indenture") and that any
subsequent transfer of the Senior Notes is subject to certain
restrictions and conditions set forth under NOTICE TO INVESTORS in the
Offering Memorandum and the undersigned agrees to be bound by, and not
to resell, pledge or otherwise transfer the Senior Notes except in
compliance with such restrictions and conditions and the Securities Act
of 1933, as amended ("Securities Act").

          3. We understand that the offer and sale of the Senior Notes
have not been registered under the Securities Act, and that the Senior
Notes may not be offered or sold except as permitted in the following
sentence. We agree, on our own behalf and on behalf of any accounts for
which we are acting as hereinafter stated, that if we sell any Senior
Notes, we will do so only (A) to the Company, (B) in accordance with
Rule 144A under the Securities Act to a "qualified institutional buyer"
(as defined therein), (C) to an institutional "accredited investor" (as
defined below) that, prior to such transfer, furnishes to the Trustee
(as defined in the Indenture) a signed letter containing certain
representations and agreements relating to the restrictions on transfer

of the Senior Notes (substantially in the form of this letter) and, if such transfer is in respect of an aggregate principal amount of Senior Notes at the time of transfer of less than $100,000, an opinion of counsel acceptable to the Issuer that such transfer is in compliance with the Securities Act, (D) outside the United States in accordance with Rule 904 of Regulation S under the Securities Act, (E) pursuant to the exemption from registration provided by Rule 144 under the Securities Act (if available), or (F) pursuant to an effective registration statement under the Securities Act, and we further agree to provide to any person purchasing any of the Senior Notes from us a notice advising such purchaser that resales of the Senior Notes are restricted as stated herein.

4. We understand that, on any proposed resale of any Senior Notes, we will be required to furnish to the Trustee and Issuer such certifications, legal opinions and other information as the Trustee and Issuer may reasonably require to confirm that the proposed sale complies with the foregoing restrictions. We further understand that the Senior Notes purchased by us will bear a legend to the foregoing effect.

A-9

<PAGE>

5. We are an institutional "accredited investor" (as defined in Rule 501(a)(1), (2), (3) or (7) of Regulation D under the Securities Act) and have such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of our investment in the Senior Notes, and we and any accounts for which are acting are each able to bear the economic risk of our or its investment.

6. We are acquiring the Senior Notes purchased by us for our own account or for one or more accounts (each of which is an institutional "accredited investor") as to each of which we exercise sole investment discretion.

You, the Issuer and the Trustee are entitled to rely upon this letter and are irrevocably authorized to produce this letter or a copy hereof to any interested party in any administrative or legal proceeding or official inquiry with respect to the matters covered hereby.

Very truly yours,

By:
    ----------------------------
    Name:
    Title:

A-10

<PAGE>

EXHIBIT B

[depository legend]

[Unless this Certificate is presented by an authorized representative of The Depository Trust Company, a New York corporation ("DTC"), to the Company or its agent for registration of transfer, exchange, or payment, and any certificate issued is registered in the name of Cede & Co. or in such other name as is requested by an authorized representative of DTC (and any payment is made to Cede & Co. or to such other entity as is requested by an authorized representative of DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL inasmuch as the registered owner hereof, Cede & Co., has an interest herein.]

NO.                                                        CUSIP NO.
    ---------------                                     --------------

                    [FORM OF FACE OF EXCHANGE SENIOR NOTE]


                        TEXAS UTILITIES COMPANY

            6.375% SERIES C EXCHANGE SENIOR NOTES DUE 2008

        TEXAS UTILITIES COMPANY, a corporation duly organized and existing
under the laws of the State of Texas (herein referred to as the "Company", which
term includes any successor Person under the Indenture), for value received,
hereby promises to pay to

or registered assigns, the principal sum of _____ Dollars on
January 1, 2008, and to pay interest on said principal sum semi-annually on
January 1 and July 1 of each year (each an Interest Payment Date) at the rate of
6.375% per annum until the principal hereof is paid or made available for
payment. Interest on the Securities of this series will accrue from
_____, to the first Interest Payment Date, and thereafter will accrue
from the last Interest Payment Date to which interest has been paid or duly
provided for. In the event that any Interest Payment Date is not a Business Day,
then payment of interest payable on such date will be made on the next
succeeding day which is a Business Day (and without any interest or other
payment in respect of such delay) with the same force and effect as if made on
the Interest Payment Date. The interest so payable, and punctually paid or duly
provided for, on any Interest Payment Date will, as provided in such Indenture,
be paid to the Person in whose name this Security (or one or more Predecessor
Securities) is registered at the close of business on the 15th day of the
calendar month next preceding such Interest Payment Date. Any such interest not
so punctually paid or duly provided for will forthwith cease to be payable to
the Holder on such Regular Record Date and may either be paid to the Person in
whose name this Security (or one or more Predecessor Securities) is registered
at the close of business on a Special Record Date for the payment of such
Defaulted Interest to be fixed by the Trustee, notice whereof shall be given to
Holders of Securities of this series not less than 10 days prior to such Special
Record Date, or be paid at any time in any other lawful manner not inconsistent
with the requirements of any securities exchange on which the Securities of this
series may be listed, and upon such notice as may be required by such exchange,
all as more fully provided in the Indenture referred to on the reverse hereof.

            Payment of the principal of (and premium, if any) and interest
on this Security will be made at the office or agency of the Company maintained
for that purpose in The City of New York, the State of New York in such coin or
currency of the United States of America as at the time of payment

                              B-1
<PAGE>

is legal tender for payment of public and private debts, provided, however,
that, at the option of the Company, interest on this Security may be paid by
check mailed to the address of the person entitled thereto, as such address
shall appear on the Security Register.

            Reference is hereby made to the further provisions of this
Security set forth on the reverse hereof, which further provisions shall for all
purposes have the same effect as if set forth at this place.

            Unless the certificate of authentication hereon has been
executed by the Trustee referred to on the reverse hereof by manual signature,
this Security shall not be entitled to any benefit under the Indenture or be
valid or obligatory for any purpose.

          IN WITNESS WHEREOF, the Company has caused this instrument to
be duly executed.

                              TEXAS UTILITIES COMPANY


                              By:
                                 ----------------------------------

ATTEST:


- ----------------------------


            [FORM OF CERTIFICATE OF AUTHENTICATION]

               CERTIFICATE OF AUTHENTICATION

Dated:

          This is one of the Securities of the series designated therein
referred to in the within-mentioned Indenture.

                              THE BANK OF NEW YORK, as Trustee


                              By:
                                 -------------------------------
                                 Authorized Signatory

                         B-2
<PAGE>

          [FORM OF REVERSE OF EXCHANGE SENIOR NOTE]


          This Security is one of a duly authorized issue of securities
of the Company (herein called the "Securities"), issued and to be issued in one
or more series under an Indenture (for Unsecured Debt Securities Series C),
dated as of January 1, 1998 (herein, together with any amendments thereto,
called the "Indenture", which term shall have the meaning assigned to it in such
instrument), between the Company and The Bank of New York, as Trustee (herein
called the "Trustee", which term includes any successor trustee under the
Indenture), and reference is hereby made to the Indenture, including the Board
Resolutions and Officer's Certificate filed with the Trustee on January 13, 1998
creating the series designated on the face hereof, for a statement of the
respective rights, limitations of rights, duties and immunities thereunder of
the Company, the Trustee and the Holders of the Securities and of the terms upon
which the Securities are, and are to be, authenticated and delivered. This
Security is one of the series designated on the face hereof, limited in
aggregate principal amount to $200,000,000.

REDEMPTION

          The Securities of this series will not be redeemable prior to
maturity.

          The Indenture contains provisions for defeasance at any time
of the entire indebtedness of this Security upon compliance with certain
conditions set forth in the Indenture.

          If an Event of Default with respect to Securities of this
series shall occur and be continuing, the principal of the Securities of this
series may be declared due and payable in the manner and with the effect

EFH01434965

provided in the Indenture.

The Indenture permits, with certain exceptions as therein provided, the amendment thereof and the modification of the rights and obligations of the Company and the rights of the Holders of the Securities of each series to be affected under the Indenture at any time by the Company and the Trustee with the consent of the Holders of a majority in principal amount of the Securities at the time Outstanding of all series to be affected. The Indenture also contains provisions permitting the Holders of specified percentages in principal amount of the Securities of each series at the time Outstanding, on behalf of the Holders of all Securities of such series, to waive compliance by the Company with certain provisions of the Indenture and certain past defaults under the Indenture and their consequences. Any such consent or waiver by the Holder of this Security shall be conclusive and binding upon such Holder and upon all future Holders of this Security and of any Security issued upon the registration of transfer hereof or in exchange herefor or in lieu hereof, whether or not notation of such consent or waiver is made upon this Security.

As provided in and subject to the provisions of the Indenture, the Holder of this Security shall not have the right to institute any proceeding with respect to the Indenture or for the appointment of a receiver or trustee or for any other remedy thereunder, unless such Holder shall have previously given the Trustee written notice of a continuing Event of Default with respect to the Securities of this series, the Holders of a majority in aggregate principal amount of the Securities of all series at the time Outstanding in respect of which an Event of Default shall have occurred and be continuing shall have made written request to the Trustee to institute proceedings in respect of such Event of Default as Trustee and offered the Trustee reasonable indemnity, and the Trustee shall not have received from the Holders of a majority in aggregate principal amount of Securities of all series at the time Outstanding in respect of which an Event of Default shall have occurred and be continuing a direction inconsistent with such request, and shall have failed to institute any such proceeding, for 60 days after receipt of such notice, request and offer of indemnity. The foregoing shall not apply to any

B-3

<PAGE>

suit instituted by the Holder of this Security for the enforcement of any payment of principal hereof or any premium or interest hereon on or after the respective due dates expressed herein.

No reference herein to the Indenture and no provision of this Security or of the Indenture shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of and any premium and interest on this Security at the times, place and rate, and in the coin or currency, herein prescribed.

The Securities of this series are issuable only in registered form without coupons in denominations of $5,000 and in integral multiples of $1,000 in excess thereof. As provided in the Indenture and subject to certain limitations therein set forth, Securities of this series are exchangeable for a like aggregate principal amount of Securities of this series and of like tenor and of authorized denominations, as requested by the Holder surrendering the same.

No service charge shall be made for any such registration of transfer or exchange, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith.

The Company, the Trustee and any agent of the Company or the Trustee may treat the Person in whose name this Security is registered as the absolute owner hereof for all purposes, whether or not this Security be overdue, and neither the Company, the Trustee nor any such agent shall be affected by notice to the contrary.

Unless an Event of Default, or an event which, after notice or lapse of time or both, would become an Event of Default, shall have occurred and be continuing, the obligations of the Company under the Securities of this series and the Indenture to the extent related to such series may be assigned by the Company to, and be assumed in whole, on a full recourse basis, by a wholly owned Subsidiary of the Company at any time; provided, however, that such assumption shall be subject to, and permitted only upon the fulfillment and satisfaction of, the following terms and conditions: (a) an assumption agreement and a supplemental indenture to the Indenture evidencing such assumption shall be in substance and form reasonably satisfactory to the Trustee and shall, inter alia, include modifications and amendments to the Indenture making the obligations under the Securities of this series and under the Indenture to the extent related to such series primary obligations of such Subsidiary, substituting such Subsidiary of the Company for the Company in the form of the Securities of this series and in provisions of the Indenture to the extent related to such series and releasing and discharging the Company from its obligations under the Securities of this series and the Indenture to the extent related to such series; and (b) the Trustee shall have received (i) an executed counterpart of such assumption agreement and supplemental indenture; (ii) evidence satisfactory to the Trustee and the Company that all necessary authorizations, consents, orders, approvals, waivers, filings and declarations of or with, Federal, state, county, municipal, regional or other governmental authorities, agencies or boards (collectively, "Governmental Actions") relating to such assumption have been duly obtained and are in full force and effect, (iii) evidence satisfactory to the Trustee that any security interest intended to be created by the Indenture is not in any material way adversely affected or impaired by any of the agreements or transactions relating to such assumption and (iv) an Opinion of Counsel for such Subsidiary, reasonably satisfactory in substance, scope and form to the Trustee and the Company, to the effect that (A) the supplemental indenture evidencing such assumption has been duly authorized, executed and delivered by such Subsidiary, (B) the execution and delivery by such Subsidiary of such supplemental indenture and the consummation of the transactions contemplated thereby do not contravene any provision of law or any governmental rule applicable to such Subsidiary or any provision of such Subsidiary's charter documents or by-laws and do not contravene any provision of, or constitute a default under, or result in the creation or imposition of any lien upon any of such Subsidiary's properties or assets under any indenture, mortgage, contract or other agreement to which such Subsidiary is a party or by which such Subsidiary or any of its properties may be bound or
<PAGE>

affected, (C) all necessary Governmental Actions relating to such assumption have been duly obtained and are in full force and effect and (D) such agreement and supplemental indenture constitute the legal, valid and binding obligations of such Subsidiary, enforceable in accordance with their respective terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws at the time in effect affecting the rights of creditors generally.

At the time of such assumption the Company will unconditionally guarantee payment of the Securities of this series and will execute a guarantee in form and substance satisfactory to the Trustee. Pursuant to the guarantee, the Company will fully and unconditionally guarantee the payment of the obligations of such assuming Subsidiary under the Securities of this series and under the Indenture, including, without limitation, payment, as and when due, of the principal of, premium, if any, and interest on, the Securities of this series. Other than the obligation to make such payments, the Company shall be released and discharged from all other obligations under the Indenture.

All terms used in this Security which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

<PAGE>

    FOR VALUE RECEIVED, the undersigned sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR OTHER
IDENTIFYING NUMBER OF ASSIGNEE
- ----------------------------------------

- ----------------------------------------

          ----------------------------------------------------------
          Name and address of assignee must be printed or typewritten.

- ----------------------------------------------------------------

the within Security of the Company and does hereby irrevocable constitute and
appoint

- ----------------------------------------------------------------

to transfer the said Security on the books of the within-named Company, with
full power of substitution in the premises.

          ------------------------------------------------------------

          ------------------------------------------------------------

Dated:
        ---------------------------------          -------------------------------

                                  B-6
<PAGE>

                                           EXHIBIT C

                      [CERTIFICATE OF TRANSFER]

                   TEXAS UTILITIES COMPANY
           6.375% SERIES C SENIOR NOTES DUE 2008
             PRINCIPAL AMOUNT:  $_____

    FOR VALUE RECEIVED, the undersigned sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR OTHER
IDENTIFYING NUMBER OF ASSIGNEE
- ----------------------------------------

- ----------------------------------------

          ----------------------------------------------------------
          Name and address of assignee must be printed or typewritten.

- ----------------------------------------------------------------

the referenced Security of the Company and does hereby irrevocable constitute
and appoint

- ----------------------------------------------------------------

to transfer the said Security on the books of the within-named Company, with
full power of substitution in the premises.

The undersigned certifies that said Security is being resold, pledged or

EFH01434968

otherwise transferred as follows: (check one)

|_|      to the Company;

|_|      to a Person whom the undersigned reasonably believes is a qualified
         institutional buyer within the meaning of Rule 144A under the
         Securities Act of 1933, as amended (the "Securities Act") purchasing
         for its own account or for the account of a qualified institutional
         buyer to whom notice is given that the resale, pledge or other transfer
         is being made in reliance on Rule 144A;

|_|      in an offshore transaction in accordance with Rule 904 of Regulation S
         under the Securities Act;

|_|      to an institution that is an "accredited investor" as defined in Rule
         501(a)(1), (2), (3) or (7) under the Securities Act that is acquiring
         this Security for investment purposes and not for distribution; (attach
         a copy of an Accredited Investor Certificate in the form annexed signed
         by an authorized officer of the transferee)

|_|      as otherwise permitted by the non-registration legend appearing on this
         Security; or

|_|      as otherwise agreed by the Company, confirmed in writing to the
         Trustee, as follows: [describe]

         ------------------------------------------------------------------------

         ------------------------------------------------------------------------

Dated: _____    _____

         All terms used in this certificate which are defined in the
Indenture pursuant to which said Security was issued shall have the meanings
assigned to them in the Indenture.

                                C-1
<PAGE>

               [FORM OF ACCREDITED INVESTOR CERTIFICATE]


[Transferor Name and Address]


Ladies and Gentlemen:

   In connection with our proposed purchase of 6.375% Series C Senior Notes due
2008 (the "Senior Notes") issued by Texas Utilities Company ("Issuer"), we
confirm that:

         1. We have received a copy of the Offering Memorandum (the
         "Offering Memorandum") relating to the Senior Notes and such other
         information as we deem necessary in order to make our investment
         decision. We acknowledge that we have read and agree to the matters
         stated under the caption NOTICE TO INVESTORS in such Offering
         Memorandum, and the restrictions on duplication or circulation of, or
         disclosure relating to, such Offering Memorandum.

         2. We understand that any subsequent transfer of the Senior
         Notes is subject to certain restrictions and conditions set forth in

the Indenture relating to Senior Notes (the "Indenture") and that any subsequent transfer of the Senior Notes is subject to certain restrictions and conditions set forth under NOTICE TO INVESTORS in the Offering Memorandum and the undersigned agrees to be bound by, and not to resell, pledge or otherwise transfer the Senior Notes except in compliance with such restrictions and conditions and the Securities Act of 1933, as amended ("Securities Act").

3. We understand that the offer and sale of the Senior Notes have not been registered under the Securities Act, and that the Senior Notes may not be offered or sold except as permitted in the following sentence. We agree, on our own behalf and on behalf of any accounts for which we are acting as hereinafter stated, that if we sell any Senior Notes, we will do so only (A) to the Company, (B) in accordance with Rule 144A under the Securities Act to a "qualified institutional buyer" (as defined therein), (C) to an institutional "accredited investor" (as defined below) that, prior to such transfer, furnishes to the Trustee (as defined in the Indenture) a signed letter containing certain representations and agreements relating to the restrictions on transfer of the Senior Notes (substantially in the form of this letter) and, if such transfer is in respect of an aggregate principal amount of Senior Notes at the time of transfer of less than $100,000, an opinion of counsel acceptable to the Issuer that such transfer is in compliance with the Securities Act, (D) outside the United States in accordance with Rule 904 of Regulation S under the Securities Act, (E) pursuant to the exemption from registration provided by Rule 144 under the Securities Act (if available), or (F) pursuant to an effective registration statement under the Securities Act, and we further agree to provide to any person purchasing any of the Senior Notes from us a notice advising such purchaser that resales of the Senior Notes are restricted as stated herein.

4. We understand that, on any proposed resale of any Senior Notes, we will be required to furnish to the Trustee and Issuer such certifications, legal opinions and other information as the Trustee and Issuer may reasonably require to confirm that the proposed sale complies with the foregoing restrictions. We further understand that the Senior Notes purchased by us will bear a legend to the foregoing effect.

C-2

<PAGE>

5. We are an institutional "accredited investor" (as defined in Rule 501(a)(1), (2), (3) or (7) of Regulation D under the Securities Act) and have such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of our investment in the Senior Notes, and we and any accounts for which are acting are each able to bear the economic risk of our or its investment.

6. We are acquiring the Senior Notes purchased by us for our own account or for one or more accounts (each of which is an institutional "accredited investor") as to each of which we exercise sole investment discretion.

You, the Issuer and the Trustee are entitled to rely upon this letter and are irrevocably authorized to produce this letter or a copy hereof to any interested party in any administrative or legal proceeding or official inquiry with respect to the matters covered hereby.

Very truly yours,

By: _____
    Name:

C-3

```
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-4.(LL)
<SEQUENCE>7
<DESCRIPTION>ENSERCH CORPORATION OFFICER'S CERTIFICATE
<TEXT>

<PAGE>
```

EXHIBIT 4 (ll)

ENSERCH Corporation

OFFICER'S CERTIFICATE

Robert S. Shapard, the Treasurer of ENSERCH CORPORATION (the "Company"), pursuant to the authority granted in the Board Resolutions of the Company dated December 17, 1997, and Sections 201 and 301 of the Indenture defined herein, does hereby certify to The Bank of New York (the "Trustee"), as Trustee under the Indenture of the Company (For Unsecured Debt Securities) dated as of January 1, 1998 (the "Indenture") that:

1.  The securities of the first series to be issued under the Indenture shall be designated "6 1/4% Series A Notes due January 1, 2003" (the "Series A Notes"). All capitalized terms used in this certificate which are not defined herein but are defined in the Indenture shall have the meanings set forth in the Indenture;

    2.  The Series A Notes shall be limited in aggregate principal amount to $125,000,000 at any time Outstanding, except as contemplated in Section 301(b) of the Indenture;

    3.  The Series A Notes shall mature and the principal shall be due and payable together with all accrued and unpaid interest thereon on January 1, 2003;

    4.  The Series A Notes shall bear interest, at the rate of 6 1/4% per annum payable semi-annually on July 1 and January 1 of each year (each, an "Interest Payment Date") commencing July 1, 1998. The amount of interest payable for any such period will be computed on the basis of a 360-day year of twelve 30-day months. Interest on the Series A Notes will accrue from the date of issuance thereof but if interest has been paid on such Series A Notes, then from the most recent Interest Payment Date to which interest has been paid or duly provided for. In the event that any Interest Payment Date is not a Business Day, then payment of interest payable on such date will be made on the next succeeding day which is a Business Day (and without any interest or other payment in respect of such delay), with the same force and effect as if made on such Interest Payment Date;

    5.  Each installment of interest on a Series A Note shall be payable to the Person in whose name such Series A Note is registered at the close of business on the 15th day of the calender month next preceding the corresponding Interest Payment Date (the "Regular Record Date") for the Series A Notes. Any installment of interest on the Series A Notes not punctually paid or duly provided for shall forthwith cease to be payable to the Holders of such Series A Notes on such

Regular Record Date, and may be paid to the Persons in whose name the Series A Notes are registered at the close of business on a Special Record Date to be fixed by the Trustee for the payment of such Defaulted Interest. Notice of such Defaulted Interest and Special Record Date shall be given to

<PAGE>

the Holders of the Series A Notes not less than 10 days prior to such Special Record Date, or may be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which the Series A Notes may be listed, and upon such notice as may be required by such exchange, all as more fully provided in the Indenture;

6.   The principal and each installment of interest on the Series A Notes shall be payable at, and registration and registration of transfers and exchanges in respect of the Series A Notes may be effected at, the office or agency of the Company in The City of New York; provided that payment of interest may be made at the option of the Company by check mailed to the address of the persons entitled thereto. Notices and demands to or upon the Company in respect of the Series A Notes may be served at the office or agency of the Company in The City of New York. The Corporate Trust Office of the Trustee will initially be the agency of the Company for such payment, registration and registration of transfers and exchanges and service of notices and demands and the Company hereby appoints the Trustee as its agent for all such purposes; provided, however, that the Company reserves the right to change, by one or more Officer's Certificates, any such office or agency and such agent. The Trustee will be the Security Registrar and the Paying Agent for the Series A Notes;

7.   The Series A Notes will be redeemable as a whole at any time or in part from time to time, at the option of the Company, at a Redemption Price equal to the greater of (i) 100% of the principal amount of such Series A Notes, and (ii) the sum of the present values of the remaining scheduled payments of principal and interest thereon from the Redemption Date to the maturity date, computed by discounting such payments, in each case, to the Redemption Date on a semiannual basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate plus 10 basis points, plus, in each case, accrued interest on the principal amount thereof to the Redemption Date.

"Treasury Rate" means, with respect to any Redemption Date, the rate per annum equal to the semiannual equivalent yield to maturity of the Comparable Treasury Issue, assuming a price for the Comparable Treasury Issue (expressed as a percentage of its principal amount) equal to the Comparable Treasury Price for such Redemption Date.

"Comparable Treasury Issue" means the United States Treasury security selected by an Independent Investment Banker as having a maturity comparable to the remaining term of the Series A Notes to be redeemed that would be utilized, at the time of selection and in accordance with customary financial practice, in pricing new issues of corporate debt securities of comparable maturity to the remaining term of such Series A Notes. "Independent Investment Banker" means one of the Reference Treasury Dealers appointed by the Trustee after consultation with the Company.

"Comparable Treasury Price" means, with respect to any Redemption Date, (i) the average of the bid and asked prices

for the Comparable Treasury Issue (expressed in each case as a percentage of its principal amount) on the third business day preceding such Redemption Date, as set forth in the daily statistical release (or any successor

-2-

<PAGE>

release) published by the Federal Reserve Bank of New York and designated "Composite 3:30 p.m. Quotations for U.S. Government Securities" or (ii) if such release (or any successor release) is not published or does not contain such prices on such business day, the average of the Reference Treasury Dealer Quotations actually obtained by the Trustee for such Redemption Date. "Reference Treasury Dealer Quotations" means, with respect to each Reference Treasury Dealer and any Redemption Date, the average, as determined by the Trustee, of the bid and asked prices for the Comparable Treasury Issue (expressed in each case as a percentage of its principal amount) quoted in writing to the Trustee by such Reference Treasury Dealer at 5:00 p.m. on the third business day preceding such Redemption Date.

"Reference Treasury Dealer" means each of Merrill Lynch, Pierce, Fenner & Smith Incorporated, Goldman, Sachs & Co., Lehman Brothers, Inc. and Salomon Brothers Inc and their respective successors; provided, however, that if any of the foregoing shall cease to be a primary U.S. Government securities dealer in New York City (a "Primary Treasury Dealer"), the Company shall substitute therefor another Primary Treasury Dealer.

Notice of any redemption of Series A Notes will be mailed at least 30 days but no more than 60 days before the Redemption Date to each holder of Series A Notes to be redeemed.

Unless the Company defaults in payment of the Redemption Price, on and after the Redemption Date interest will cease to accrue on the Series A Notes or portions thereof called for redemption.

The Company shall deliver to the Trustee before any Redemption Date for Series A Notes its calculation of the Redemption Price applicable to such redemption. Except with respect to the obligations of the Trustee expressly set forth in the foregoing definitions of "Comparable Treasury Issue" and "Comparable Treasury Price," the Trustee shall be under no duty to inquire into, may presume the correctness of, and shall be fully protected in acting upon the Company's calculation of any Redemption Price of the Series A Notes.

In lieu of stating the Redemption Price, notices of redemption of Series A Notes shall state substantially the following: "The Redemption Price of the Series A Notes to be redeemed shall equal the greater of (i) 100% of the principal amount of such Series A Notes, and (ii) the sum of the present values of the remaining scheduled payments of principal and interest thereon from the Redemption Date to the maturity date, computed by discounting such payments, in each case, to the Redemption Date on a semiannual basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate (as defined in the Indenture) plus 10 basis points."

Except as provided herein, Article Four of the Indenture shall apply to redemptions of Series A Notes.

EFH01434973

<PAGE>

8.    The Series A Notes will be originally issued in global form
payable to Cede & Co. and will, unless and until the Series A
Notes are exchanged in whole or in part for certificated
Series A Notes registered in the names of various beneficial
holders thereof (in accordance with the conditions set forth
in the legend appearing in the form of the Series A Notes,
hereto attached as Exhibit A), contain restrictions on
transfer, substantially as described in such form;

9.    No service charge shall be made for the registration of
transfer or exchange of the Series A Notes; provided, however,
that the Company may require payment of a sum sufficient to
cover any tax or other governmental charge that may be imposed
in connection with the exchange or transfer;

10.   If the Company shall make any deposit of money and/or Eligible
Obligations with respect to any Series A Notes, or any portion
of the principal amount thereof, as contemplated by Section
701 of the Indenture, the Company shall not deliver an
Officer's Certificate described in clause (z) in the first
paragraph of said Section 701 unless the Company shall also
deliver to the Trustee, together with such Officer's
Certificate, either:

(A) an instrument wherein the Company,
notwithstanding the satisfaction and discharge of its
indebtedness in respect of the Series A Notes, shall assume
the obligation (which shall be absolute and unconditional) to
irrevocably deposit with the Trustee or Paying Agent such
additional sums of money, if any, or additional Eligible
Obligations (meeting the requirements of Section 701), if any,
or any combination thereof, at such time or times, as shall be
necessary, together with the money and/or Eligible Obligations
theretofore so deposited, to pay when due the principal of and
premium, if any, and interest due and to become due on such
Series A Notes or portions thereof, all in accordance with and
subject to the provisions of said Section 701; provided,
however, that such instrument may state that the obligation of
the Company to make additional deposits as aforesaid shall be
subject to the delivery to the Company by the Trustee of a
notice asserting the deficiency accompanied by an opinion of
an independent public accountant of nationally recognized
standing, selected by the Trustee, showing the calculation
thereof; or

(B) an Opinion of Counsel to the effect that, as a
result of a change in law occurring after the date of this
certificate, the Holders of such Series A Notes, or portions
of the principal amount thereof, will not recognize income,
gain or loss for United States federal income tax purposes as
a result of the satisfaction and discharge of the Company's
indebtedness in respect thereof and will be subject to United
States federal income tax on the same amounts, at the same
times and in the same manner as if such satisfaction and
discharge had not been effected.

11.   The Series A Notes shall have such other terms and provisions
as are provided in the form set forth in Exhibit A hereto, and
shall be issued in substantially such form;

-4-

<PAGE>

12.   The undersigned has read all of the covenants and conditions
      contained in the Indenture relating to the issuance of the
      Series A Notes and the definitions in the Indenture relating
      thereto and in respect of which this certificate is made;

13.   The statements contained in this certificate are based upon
      the familiarity of the undersigned with the Indenture, the
      documents accompanying this certificate, and upon discussions
      by the undersigned with officers and employees of the Company
      familiar with the matters set forth herein;

14.   In the opinion of the undersigned, he has made such
      examination or investigation as is necessary to enable him to
      express an informed opinion whether or not such covenants and
      conditions have been complied with; and

15.   In the opinion of the undersigned, such conditions and
      covenants and conditions precedent, if any (including any
      covenants compliance with which constitutes a condition
      precedent) to the authentication and delivery of the Series A
      Notes requested in the accompanying Company Order have been
      complied with.

                              -5-

<PAGE>

      IN WITNESS WHEREOF, I have executed this Officer's Certificate this
30th day of January, 1998.


                              /s/ Robert S. Shapard
                              ------------------------------------
                                  Robert S. Shapard
                                     Treasurer

                              -6-

<PAGE>

No._____
Cusip No._____


                                             EXHIBIT A

                  [FORM OF FACE OF SERIES A NOTE]


              [(SEE LEGEND AT THE END OF THIS SECURITY FOR
          RESTRICTIONS ON TRANSFERABILITY AND CHANGE OF FORM)]

                       ENSERCH CORPORATION

              6 1/4% SERIES A NOTES DUE JANUARY 1, 2003


      ENSERCH CORPORATION, a corporation duly organized and existing under
the laws of the State of Texas (herein referred to as the "Company", which term
includes any successor Person under the Indenture), for value received, hereby
promises to pay to [Cede & Co.] or registered assigns, the principal sum of
_____ Dollars on January 1, 2003, and
to pay interest on said principal sum, semi-annually on July 1 and January 1 of
each year, commencing July 1, 1998, at the rate of 6 1/4% per annum until the
principal hereof is paid or made available for payment. The amount of interest
payable on any Interest Payment Date shall be computed on the basis of a 360-day
year of twelve 30-day months. Interest on the Securities of this series will
accrue from January 30, 1998, to the first Interest Payment Date, and thereafter

will accrue from the last Interest Payment Date to which interest has been paid
or duly provided for. In the event that any Interest Payment Date is not a
Business Day, then payment of interest payable on such date will be made on the
next succeeding day which is a Business Day (and without any interest or other
payment in respect of such delay) with the same force and effect as if made on
the Interest Payment Date. The interest so payable, and punctually paid or duly
provided for, on any Interest Payment Date will, as provided in such Indenture,
be paid to the Person in whose name this Security (or one or more Predecessor
Securities) is registered at the close of business on the Regular Record Date
for such interest, which shall be the 15th day of the calendar month next
preceding such Interest Payment Date. Any such interest not so punctually paid
or duly provided for will forthwith cease to be payable to the Holder on such
Regular Record Date and may either be paid to the Person in whose name this
Security (or one or more Predecessor Securities) is registered at the close of
business on a Special Record Date for the payment of such Defaulted Interest to
be fixed by the Trustee, notice whereof shall be given to Holders of Securities
of this series not less than 10 days prior to such Special Record Date, or be
paid at any time in any other lawful manner not inconsistent with the
requirements of any securities exchange on which the Securities of this series
may be listed, and upon such notice as may be required by such exchange, all as
more fully provided in the Indenture referred to on the reverse hereof.

          Payment of the principal of (and premium, if any) and interest
on this Security will be made at the office or agency of the Company maintained
for that purpose in The City of New York, the State of New York in such coin or
currency of the United States of America as at the time of payment is legal
tender for payment of public and private debts, provided, however, that, at the
option of the Company, interest on this Security may be paid by check mailed to
the address of the person entitled thereto, as such address shall appear on the
Security Register.


<PAGE>

          Reference is hereby made to the further provisions of this
Security set forth on the reverse hereof, which further provisions shall for all
purposes have the same effect as if set forth at this place.

          Unless the certificate of authentication hereon has been
executed by the Trustee referred to on the reverse hereof by manual signature,
this Security shall not be entitled to any benefit under the Indenture or be
valid or obligatory for any purpose.

          IN WITNESS WHEREOF, the Company has caused this instrument to
be duly executed.

                         ENSERCH CORPORATION


                         By: _____

ATTEST:


_____


          [FORM OF CERTIFICATE OF AUTHENTICATION]

            CERTIFICATE OF AUTHENTICATION

Dated:

          This is one of the Securities of the series designated therein
referred to in the within-mentioned Indenture.

THE BANK OF NEW YORK, as Trustee


By: _____
         Authorized Signatory



-2-

<PAGE>

                [FORM OF REVERSE OF SERIES A NOTE]


        This Security is one of a duly authorized issue of securities
of the Company (herein called the "Securities"), issued and to be issued in one
or more series under an Indenture, dated as of January 1, 1998 (herein, together
with any amendments thereto, called the "Indenture", which term shall have the
meaning assigned to it in such instrument), between the Company and The Bank of
New York, as Trustee (herein called the "Trustee", which term includes any
successor trustee under the Indenture), and reference is hereby made to the
Indenture, including the Board Resolutions and Officer's Certificate filed with
the Trustee on January 30, 1998 creating the series designated on the face
hereof, for a statement of the respective rights, limitations of rights, duties
and immunities thereunder of the Company, the Trustee and the Holders of
Securities and of the terms upon which the Securities are, and are to be,
authenticated and delivered. This Security is one of the series designated on
the face hereof, limited in aggregate principal amount to $125,000,000.

        The Securities of this series will be redeemable as a whole at
any time or in part from time to time, at the option of the Company, at a
Redemption Price equal to the greater of (i) 100% of the principal amount of
such Securities of this series, and (ii) the sum of the present values of the
remaining scheduled payments of principal and interest thereon from the
Redemption Date to the maturity date, computed by discounting such payments, in
each case, to the Redemption Date on a semiannual basis (assuming a 360-day year
consisting of twelve 30-day months) at the Treasury Rate plus 10 basis points,
plus, in each case, accrued interest on the principal amount thereof to the
Redemption Date.

                "Treasury Rate" means, with respect to any Redemption Date,
                the rate per annum equal to the semiannual equivalent yield to
                maturity of the Comparable Treasury Issue, assuming a price
                for the Comparable Treasury Issue (expressed as a percentage
                of its principal amount) equal to the Comparable Treasury
                Price for such Redemption Date.

                "Comparable Treasury Issue" means the United States Treasury
                security selected by an Independent Investment Banker as
                having a maturity comparable to the remaining term of the
                Securities of this series to be redeemed that would be
                utilized, at the time of selection and in accordance with
                customary financial practice, in pricing new issues of
                corporate debt securities of comparable maturity to the
                remaining term of such Securities of this series. "Independent
                Investment Banker" means one of the Reference Treasury Dealers
                appointed by the Trustee after consultation with the Company.

                "Comparable Treasury Price" means, with respect to any
                Redemption Date, (i) the average of the bid and asked prices
                for the Comparable Treasury Issue (expressed in each case as a
                percentage of its principal amount) on the third business day
                preceding such Redemption Date, as set forth in the daily
                statistical release (or any successor release) published by
                the Federal Reserve Bank of New York and designated "Composite
                3:30 p.m. Quotations for U.S. Government Securities" or (ii)

EFH01434977

If such release (or any successor release) is not published or
does not contain such prices on such business day, the average
of the Reference Treasury Dealer Quotations actually obtained
by the Trustee for such Redemption Date. "Reference Treasury
Dealer Quotations" means, with respect to each Reference
Treasury Dealer and any Redemption Date, the average, as
determined by the Trustee, of the bid and asked prices for the
Comparable Treasury Issue (expressed in each case as a
percentage of its

-3-

<PAGE>

principal amount) quoted in writing to the Trustee by such
Reference Treasury Dealer at 5:00 p.m. on the third business
day preceding such Redemption Date.

"Reference Treasury Dealer" means each of Merrill Lynch,
Pierce, Fenner & Smith Incorporated, Goldman, Sachs & Co.,
Lehman Brothers, Inc. and Salomon Brothers Inc. and their
respective successors; provided, however, that if any of the
foregoing shall cease to be a primary U.S. Government
securities dealer in New York City (a "Primary Treasury
Dealer"), the Company shall substitute therefor another
Primary Treasury Dealer.

Notice of any redemption will be mailed at least 30 days but
no more than 60 days before the Redemption Date to each holder
of Securities of this series to be redeemed.

Unless the Company defaults in payment of the Redemption
Price, on and after the Redemption Date interest will cease to
accrue on the Securities of this series or portions thereof
called for redemption.

The Indenture contains provisions for defeasance at any time
of the entire indebtedness of this Security upon compliance with certain
conditions set forth in the Indenture, including the Officer's Certificate
described above.

If an Event of Default with respect to Securities of this
series shall occur and be continuing, the principal of the Securities of this
series may be declared due and payable in the manner and with the effect
provided in the Indenture.

The Indenture permits, with certain exceptions as therein
provided, the amendment thereof and the modification of the rights and
obligations of the Company and the rights of the Holders of the Securities of
each series to be affected under the Indenture at any time by the Company and
the Trustee with the consent of the Holders of a majority in principal amount of
the Securities at the time Outstanding of all series to be affected. The
Indenture contains provisions permitting the Holders of a majority in aggregate
principal amount of the Securities of all series then Outstanding to waive
compliance by the Company with certain restrictive provisions of the Indenture.
The Indenture also contains provisions permitting the Holders of specified
percentages in principal amount of the Securities of each series at the time
Outstanding, on behalf of the Holders of all Securities of such series, to waive
certain past defaults under the Indenture and their consequences. Any such
consent or waiver by the Holder of this Security shall be conclusive and binding
upon such Holder and upon all future Holders of this Security and of any
Security issued upon the registration of transfer hereof or in exchange herefor
or in lieu hereof, whether or not notation of such consent or waiver is made
upon this Security.

As provided in and subject to the provisions of the Indenture,

the Holder of this Security shall not have the right to institute any proceeding with respect to the Indenture or for the appointment of a receiver or trustee or for any other remedy thereunder, unless such Holder shall have previously given the Trustee written notice of a continuing Event of Default with respect to the Securities of this series, the Holders of a majority in aggregate principal amount of the Securities of all series at the time Outstanding in respect of which an Event of Default shall have occurred and be continuing shall have made written request to the Trustee to institute proceedings in respect of such Event of Default as Trustee and offered the Trustee reasonable indemnity, and the Trustee shall not have received from the Holders of a majority in aggregate principal amount of Securities of all series at the time Outstanding in respect of which an Event of Default shall have occurred and be continuing a

-4-

<PAGE>

direction inconsistent with such request, and shall have failed to institute any such proceeding, for 60 days after receipt of such notice, request and offer of indemnity. The foregoing shall not apply to any suit instituted by the Holder of this Security for the enforcement of any payment of principal hereof or any premium or interest hereon on or after the respective due dates expressed herein.

      No reference herein to the Indenture and no provision of this Security or of the Indenture shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of and any premium and interest on this Security at the times, place and rate, and in the coin or currency, herein prescribed.

      The Securities of this series are issuable only in registered form without coupons in denominations of $1,000 and any integral multiple thereof. As provided in the Indenture and subject to certain limitations therein set forth, Securities of this series are exchangeable for a like aggregate principal amount of Securities of this series and of like tenor and of authorized denominations, as requested by the Holder surrendering the same.

      No service charge shall be made for any such registration of transfer or exchange, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith.

      The Company, the Trustee and any agent of the Company or the Trustee may treat the Person in whose name this Security is registered as the absolute owner hereof for all purposes, whether or not this Security be overdue, and neither the Company, the Trustee nor any such agent shall be affected by notice to the contrary.

      All terms used in this Security which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

-5-

<PAGE>

[LEGEND

      Unless and until this Security is exchanged in whole or in part for certificated Securities registered in the names of the various beneficial holders hereof as then certified to the Trustee by The Depository Trust Company (55 Water Street, New York, New York) or its successor (the "Depositary"), this Security may not be transferred except as a whole by the Depositary to a nominee of the Depositary or by a nominee of the Depositary to the Depositary or another nominee of the Depositary or by the Depositary or any such nominee to a successor Depositary or a nominee of such successor Depositary.

      Unless this certificate is presented by an authorized representative of the Depositary to the Company or its agent for registration of transfer,

EFH01434979

exchange or payment, and any certificate to be issued is registered in the name
of Cede & Co., or such other name as requested by an authorized representative
of the Depositary and any amount payable thereunder is made payable to Cede &
Co., or such other name, ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR
OTHERWISE BY OR TO ANY PERSON IS WRONGFUL since the registered owner hereof,
Cede & Co., has an interest herein.

　　　　This Security may be exchanged for certificated Securities registered
in the names of the various beneficial owners hereof if (a) the Depositary is at
any time unwilling or unable to continue as depositary and a successor
depositary is not appointed by the Company within 90 days, or (b) the Company
elects to issue certificated Securities to beneficial owners. Any such exchange
shall be made upon receipt by the Trustee of a Company Order therefor and
certificated Securities of this series shall be registered in such names and in
such denominations as shall be certified to the Company and the Trustee by the
Depositary.]


```
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-4.(KK)
<SEQUENCE>8
<DESCRIPTION>INDENTURE, DATED JANUARY 1, 1998
<TEXT>

<PAGE>
```

                                                            EXHIBIT 4 (kk)


              -------------------------------------------



                      ENSERCH CORPORATION

                              TO

                    THE BANK OF NEW YORK



                          ---------



                          INDENTURE
                (FOR UNSECURED DEBT SECURITIES)


                  DATED AS OF JANUARY 1, 1998



              -------------------------------------------


```
<PAGE>
```

                              i

EFH01434980

TABLE OF CONTENTS

PARTIES................................................................ 1

RECITAL OF THE COMPANY................................................ 1

ARTICLE ONE........................................................... 1

Definitions and Other Provisions of General Application.............. 1
        SECTION 101.  Definitions.................................... 1
                Act ................................................ 2
                Affiliate .......................................... 2
                Authenticating Agent................................ 2
                Authorized Officer.................................. 2
                Board of Directors.................................. 2
                Board Resolution.................................... 2
                Business Day........................................ 2
                Commission.......................................... 3
                Company ............................................ 3
                Company Request or Company Order.................... 3
                Corporate Trust Office.............................. 3
                corporation......................................... 3
                Defaulted Interest.................................. 3
                Discount Security................................... 3
                Dollar or $......................................... 3
                Eligible Obligations................................ 3
                Event of Default.................................... 3
                Governmental Authority.............................. 4
                Government Obligations.............................. 4
                Holder ............................................. 4
                Indenture........................................... 4
                Interest Payment Date............................... 4
                Maturity ........................................... 4
                Officer's Certificate............................... 4
                Opinion of Counsel.................................. 4
                Outstanding......................................... 5
                Paying Agent........................................ 6
                Periodic Offering................................... 6
                Person ............................................. 6
                Place of Payment.................................... 6
                Predecessor Security................................ 6
                Redemption Date..................................... 6
                Redemption Price.................................... 6
                Regular Record Date................................. 6
                Required Currency................................... 6
                Responsible Officer................................. 6

Note:   This table of contents shall not, for any purpose, be deemed to be
        part of the Indenture.
<PAGE>

                                    ii

                Securities.......................................... 7
                Security Register and Security Registrar............ 7
                Special Record Date................................. 7
                Stated Interest Rate................................ 7
                Stated Maturity..................................... 7
                Tranche ............................................ 7
                Trust Indenture Act................................. 7
                Trustee ............................................ 7
                United States....................................... 7
        SECTION 102.  Compliance Certificates and Opinions.......... 7
        SECTION 103.  Form of Documents Delivered to Trustee........ 8

```
            SECTION 104.  Acts of Holders.......................... 9
            SECTION 105.  Notices, etc. to Trustee and Company..... 11
            SECTION 106.  Notice to Holders of Securities; Waiver.. 12
            SECTION 107.  Conflict with Trust Indenture Act........ 12
            SECTION 108.  Effect of Headings and Table of Contents. 12
            SECTION 109.  Successors and Assigns................... 12
            SECTION 110.  Separability Clause..................... 13
            SECTION 111.  Benefits of Indenture................... 13
            SECTION 112.  Governing Law........................... 13
            SECTION 113.  Legal Holidays.......................... 13


ARTICLE TWO.............................................................. 13


Security Forms........................................................... 13
            SECTION 201.  Forms Generally......................... 13
            SECTION 202.  Form of Trustee's Certificate of Authentication.... 14


ARTICLE THREE............................................................ 14


The Securities........................................................... 14
            SECTION 301.  Amount Unlimited; Issuable in Series.... 14
            SECTION 302.  Denominations........................... 18
            SECTION 303.  Execution, Authentication, Delivery and Dating..... 18
            SECTION 304.  Temporary Securities.................... 21
            SECTION 305.  Registration, Registration of Transfer and Exchange 22
            SECTION 306.  Mutilated, Destroyed, Lost and Stolen Securities... 23
            SECTION 307.  Payment of Interest; Interest Rights Preserved..... 24
            SECTION 308.  Persons Deemed Owners................... 25
            SECTION 309.  Cancellation by Security Registrar...... 25
            SECTION 310.  Computation of Interest................. 26
            SECTION 311.  Payment to Be in Proper Currency........ 26


ARTICLE FOUR............................................................. 26


Redemption of Securities................................................. 26
```
<PAGE>

iii

```
            SECTION 401.  Applicability of Article................ 26
            SECTION 402.  Election to Redeem; Notice to Trustee... 27
            SECTION 403.  Selection of Securities to Be Redeemed.. 27
            SECTION 404.  Notice of Redemption.................... 27
            SECTION 405.  Securities Payable on Redemption Date... 29
            SECTION 406.  Securities Redeemed in Part............. 29

ARTICLE FIVE............................................................. 30


Sinking Funds............................................................ 30
            SECTION 501.  Applicability of Article................ 30
            SECTION 502.  Satisfaction of Sinking Fund Payments with
                          Securities.............................. 30
            SECTION 503.  Redemption of Securities for Sinking Fund......... 30

ARTICLE SIX.............................................................. 31


Covenants................................................................ 31
            SECTION 601.  Payment of Principal, Premium and Interest........ 31
            SECTION 602.  Maintenance of Office or Agency......... 31
            SECTION 603.  Money for Securities Payments to Be Held in Trust.. 32
            SECTION 604.  Corporate Existence..................... 34
            SECTION 605.  Maintenance of Properties............... 34
            SECTION 606.  Annual Officer's Certificate as to Compliance...... 34
            SECTION 607.  Waiver of Certain Covenants............. 34
```

ARTICLE SEVEN...................................................... 35

Satisfaction and Discharge........................................ 35
        SECTION 701.   Satisfaction and Discharge of Securities.......... 35
        SECTION 702.   Satisfaction and Discharge of Indenture........... 37
        SECTION 703.   Application of Trust Money........................ 38

ARTICLE EIGHT..................................................... 39

Events of Default; Remedies...................................... 39
        SECTION 801.   Events of Default................................. 39
        SECTION 802.   Acceleration of Maturity; Rescission and Annulment. 40
        SECTION 803.   Collection of Indebtedness and Suits for
                       Enforcement by Trustee............................ 41
        SECTION 804.   Trustee May File Proofs of Claim.................. 42
        SECTION 805.   Trustee May Enforce Claims Without Possession of
                       Securities........................................ 43
        SECTION 806.   Application of Money Collected.................... 43
        SECTION 807.   Limitation on Suits............................... 43
        SECTION 808.   Unconditional Right of Holders to Receive
                       Principal, Premium and Interest................... 44
        SECTION 809.   Restoration of Rights and Remedies................ 44
        SECTION 810.   Rights and Remedies Cumulative.................... 45

<PAGE>

iv

        SECTION 811.   Delay or Omission Not Waiver...................... 45
        SECTION 812.   Control by Holders of Securities.................. 45
        SECTION 813.   Waiver of Past Defaults........................... 45
        SECTION 814.   Undertaking for Costs............................. 46
        SECTION 815.   Waiver of Stay or Extension Laws.................. 46

ARTICLE NINE...................................................... 47

The Trustee...................................................... 47
        SECTION 901.   Certain Duties and Responsibilities............... 47
        SECTION 902.   Notice of Defaults................................ 47
        SECTION 903.   Certain Rights of Trustee......................... 48
        SECTION 904.   Not Responsible for Recitals or Issuance of
                       Securities........................................ 49
        SECTION 905.   May Hold Securities............................... 49
        SECTION 906.   Money Held in Trust............................... 49
        SECTION 907.   Compensation and Reimbursement.................... 49
        SECTION 908.   Disqualification; Conflicting Interests........... 50
        SECTION 909.   Corporate Trustee Required; Eligibility........... 51
        SECTION 910.   Resignation and Removal; Appointment of Successor.. 51
        SECTION 911.   Acceptance of Appointment by Successor............ 53
        SECTION 912.   Merger, Conversion, Consolidation or Succession to
                       Business.......................................... 54
        SECTION 913.   Preferential Collection of Claims Against Company.. 55
        SECTION 914.   Co-trustees and Separate Trustees................. 55
        SECTION 915.   Appointment of Authenticating Agent............... 56

ARTICLE TEN...................................................... 58

Holders' Lists and Reports by Trustee and Company................ 58
        SECTION 1001.  Lists of Holders.................................. 58
        SECTION 1002.  Reports by Trustee and Company.................... 59

ARTICLE ELEVEN................................................... 59

Consolidation, Merger, Conveyance or Other Transfer ............. 59
        SECTION 1101.  Company May Consolidate, etc., Only on Certain
                       Terms............................................. 59

SECTION 1102.  Successor Corporation Substituted................. 60

ARTICLE TWELVE............................................... 60

Supplemental Indentures...................................... 60
        SECTION 1201.  Supplemental Indentures Without Consent of Holders 60
        SECTION 1202.  Supplemental Indentures With Consent of Holders... 62
        SECTION 1203.  Execution of Supplemental Indentures............. 64
        SECTION 1204.  Effect of Supplemental Indentures............... 64
        SECTION 1205.  Conformity With Trust Indenture Act............. 64
        SECTION 1206.  Reference in Securities to Supplemental
                       Indentures..................................... 64

&lt;PAGE&gt;

v

        SECTION 1207.  Modification Without Supplemental Indenture....... 64

ARTICLE THIRTEEN............................................. 65

Meetings of Holders; Action Without Meeting.................. 65
        SECTION 1301.  Purposes for Which Meetings May Be Called........ 65
        SECTION 1302.  Call, Notice and Place of Meetings............... 65
        SECTION 1303.  Persons Entitled to Vote at Meetings............. 66
        SECTION 1304.  Quorum; Action.................................. 66
        SECTION 1305.  Attendance at Meetings; Determination of Voting
                       Rights; Conduct and Adjournment of Meetings.... 67
        SECTION 1306.  Counting Votes and Recording Action of Meetings... 68
        SECTION 1307.  Action Without Meeting.......................... 69

ARTICLE FOURTEEN............................................. 69

Immunity of Incorporators, Shareholders, Officers and Directors.......... 69
        SECTION 1401.  Liability Solely Corporate...................... 69

Testimonium................................................. 70

Signatures.................................................. 70

Acknowledgements............................................ 71

&lt;PAGE&gt;

ENSERCH CORPORATION

RECONCILIATION AND TIE BETWEEN TRUST INDENTURE ACT OF 1939
AND INDENTURE, DATED AS OF JANUARY 1, 1998

| TRUST INDENTURE ACT SECTION | | INDENTURE SECTION |
|---|---|---|
| ss.310 | (a)(1)............................................ | 909 |
| | (a)(2)............................................ | 909 |
| | (a)(3)............................................ | 914 |
| | (a)(4)............................................ | Not Applicable |
| | (b)............................................... | 908 |
| | | 910 |
| ss.311 | (a)............................................... | 913 |
| | (b)............................................... | 913 |
| | (c)............................................... | 913 |
| ss.312 | (a)............................................... | 1001 |
| | (b)............................................... | 1001 |
| | (c)............................................... | 1001 |

ss.313   (a)............................................................ 1002
         (b)............................................................ 1002
         (c)............................................................ 1002
ss.314   (a)............................................................ 1002
         (a)(4)........................................................  606
         (b)........................................................... Not Applicable
         (c)(1)......................................................... 102
         (c)(2)......................................................... 102
         (c)(3)........................................................ Not Applicable
         (d)........................................................... Not Applicable
         (e)............................................................ 102
ss.315   (a)............................................................ 901
                                                                        903
         (b)............................................................ 902
         (c)............................................................ 901
         (d)............................................................ 901
         (e)............................................................ 814
ss.316   (a)............................................................ 812
                                                                        813
         (a)(1)(A)...................................................... 802
                                                                        812
         (a)(1)(B)...................................................... 813
         (a)(2)........................................................ Not Applicable
         (b)............................................................ 808
ss.317   (a)(1)......................................................... 803
         (a)(2)......................................................... 804
         (b)............................................................ 603
ss.318   (a)............................................................ 107
<PAGE>


        INDENTURE, dated as of January 1, 1998, between ENSERCH CORPORATION, a
corporation duly organized and existing under the laws of the State of Texas
(herein called the "Company"), having its principal office at 1601 Bryan Street,
Dallas, Texas 75201, and THE BANK OF NEW YORK, a banking corporation of the
State of New York, having its principal corporate trust office at 101 Barclay
Street, New York, New York 10286, as Trustee (herein called the "Trustee").

                              RECITAL OF THE COMPANY

        The Company has duly authorized the execution and delivery of this
Indenture to provide for the issuance from time to time of its unsecured
debentures, notes or other evidences of indebtedness (herein called the
"Securities"), in an unlimited aggregate principal amount to be issued in one or
more series as contemplated herein; and all acts necessary to make this
Indenture a valid agreement of the Company have been performed.

        For all purposes of this Indenture, except as otherwise expressly
provided or unless the context otherwise requires, capitalized terms used herein
shall have the meanings assigned to them in Article One of this Indenture.

               NOW, THEREFORE, THIS INDENTURE WITNESSETH:

        For and in consideration of the premises and the purchase of the
Securities by the Holders thereof, it is mutually covenanted and agreed, for the
equal and proportionate benefit of all Holders of the Securities or of any
series thereof, as follows:


                                  ARTICLE ONE

            DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

SECTION 101.  DEFINITIONS.

        For all purposes of this Indenture, except as otherwise expressly
provided or unless the context otherwise requires:

(a) the terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular;

(b) all terms used herein without definition which are defined in the Trust Indenture Act, either directly or by reference therein, have the meanings assigned to them therein;

(c) all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles in the United States, and, except as otherwise herein expressly provided, the term "generally accepted accounting

<PAGE>

-2-

principles" with respect to any computation required or permitted hereunder shall mean such accounting principles as are generally accepted in the United States at the date of such computation or, at the election of the Company from time to time, at the date of the execution and delivery of this Indenture; provided, however, that in determining generally accepted accounting principles applicable to the Company, the Company shall, to the extent required, conform to any order, rule or regulation of any administrative agency, regulatory authority or other governmental body having jurisdiction over the Company; and

(d) the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.

Certain terms, used principally in Article Nine, are defined in that Article.

"ACT", when used with respect to any Holder of a Security, has the meaning specified in Section 104.

"AFFILIATE" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "CONTROL" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or through one or more intermediaries, whether through the ownership of voting securities, by contract or otherwise; and the terms "CONTROLLING" and "CONTROLLED" have meanings correlative to the foregoing.

"AUTHENTICATING AGENT" means any Person (other than the Company or an Affiliate of the Company) authorized by the Trustee pursuant to Section 915 to act on behalf of the Trustee to authenticate one or more series of Securities.

"AUTHORIZED OFFICER" means the Chairman of the Board, the President, any Vice President, the Treasurer, any Assistant Treasurer, or any other officer or agent of the Company duly authorized by the Board of Directors to act in respect of matters relating to this Indenture.

"BOARD OF DIRECTORS" means either the board of directors of the Company or any committee thereof duly authorized to act in respect of matters relating to this Indenture.

"BOARD RESOLUTION" means a copy of a resolution certified by the Secretary or an Assistant Secretary of the Company to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification, and delivered to the Trustee.

"BUSINESS DAY", when used with respect to a Place of Payment or any

other particular location specified in the Securities or this Indenture, means any day, other than a Saturday or Sunday, which is not a day on which banking institutions or trust companies in such Place of
<PAGE>

-3-

Payment or other location are generally authorized or required by law, regulation or executive order to remain closed, except as may be otherwise specified as contemplated by Section 301.

"COMMISSION" means the Securities and Exchange Commission, as from time to time constituted, created under the Securities Exchange Act of 1934, as amended, or, if at any time after the date of execution and delivery of this Indenture such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act, then the body, if any, per forming such duties at such time.

"COMPANY" means the Person named as the "Company" in the first paragraph of this Indenture until a successor Person shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Company" shall mean such successor Person.

"COMPANY REQUEST" or "COMPANY ORDER" means a written request or order signed in the name of the Company by an Authorized Officer and delivered to the Trustee.

"CORPORATE TRUST OFFICE" means the office of the Trustee at which at any particular time its corporate trust business shall be principally administered, which office at the date of execution and delivery of this Indenture is located at 101 Barclay Street, New York, New York 10286.

"CORPORATION" means a corporation, association, company, joint stock company or business trust.

"DEFAULTED INTEREST" has the meaning specified in Section 307.

"DISCOUNT SECURITY" means any Security which provides for an amount less than the principal amount thereof to be due and payable upon a declaration of acceleration of the Maturity thereof pursuant to Section 802. "Interest" with respect to a Discount Security means interest, if any, borne by such Security at a Stated Interest Rate.

"DOLLAR" or "$" means a dollar or other equivalent unit in such coin or currency of the United States as at the time shall be legal tender for the payment of public and private debts.

"ELIGIBLE OBLIGATIONS" means:

(a)  with respect to Securities denominated in Dollars, Government Obligations; or

(b) with respect to Securities denominated in a currency other than Dollars or in a composite currency, such other obligations or instruments as shall be specified with respect to such Securities, as contemplated by Section 301.

"EVENT OF DEFAULT" has the meaning specified in Section 801.
<PAGE>

-4-

"GOVERNMENTAL AUTHORITY" means the government of the United States or of any State or Territory thereof or of the District of Columbia or of any county, municipality or other political subdivision of any of the foregoing, or

any department, agency, authority or other instrumentality of any of the foregoing.

"GOVERNMENT OBLIGATIONS" means:

(a) direct obligations of, or obligations the principal of and interest on which are unconditionally guaranteed by, the United States and entitled to the benefit of the full faith and credit thereof; and

(b) certificates, depositary receipts or other instruments which evidence a direct ownership interest in obligations described in clause (a) above or in any specific interest or principal payments due in respect thereof; provided, however, that the custodian of such obligations or specific interest or principal payments shall be a bank or trust company (which may include the Trustee or any Paying Agent) subject to Federal or state supervision or examination with a combined capital and surplus of at least $50,000,000; and provided, further, that except as may be otherwise required by law, such custodian shall be obligated to pay to the holders of such certificates, depositary receipts or other instruments the full amount received by such custodian in respect of such obligations or specific payments and shall not be permitted to make any deduction therefrom.

"HOLDER" means a Person in whose name a Security is registered in the Security Register.

"INDENTURE" means this instrument as originally executed and delivered and as it may from time to time be supplemented or amended by one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof and shall include the terms of a particular series of Securities established as contemplated by Section 301.

"INTEREST PAYMENT DATE", when used with respect to any Security, means the Stated Maturity of an installment of interest on such Security.

"MATURITY", when used with respect to any Security, means the date on which the principal of such Security or an installment of principal becomes due and payable as provided in such Security or in this Indenture, whether at the Stated Maturity, by declaration of acceleration, upon call for redemption or otherwise.

"OFFICER'S CERTIFICATE" means a certificate signed by an Authorized Officer and delivered to the Trustee.
<PAGE>

-5-

"OPINION OF COUNSEL" means a written opinion of counsel, who may be counsel for the Company, or other counsel acceptable to the Trustee.

"OUTSTANDING", when used with respect to Securities, means, as of the date of determination, all Securities theretofore authenticated and delivered under this Indenture, except:

(a)  Securities theretofore canceled or delivered to the Security Registrar for cancellation;

(b)  Securities deemed to have been paid in accordance with Section 701; and

(c)  Securities which have been paid pursuant to Section 306 or in exchange for or in lieu of which other Securities have been authenticated and delivered pursuant to this Indenture, other than any such Securities in respect of which there shall have been presented to the Trustee proof satisfactory to it and the Company that such

Securities are held by a bona fide purchaser or purchasers in whose hands such Securities are valid obligations of the Company;

provided, however, that in determining whether or not the Holders of the requisite principal amount of the Securities Outstanding under this Indenture, or the Outstanding Securities of any series or Tranche, have given any request, demand, authorization, direction, notice, consent or waiver hereunder or whether or not a quorum is present at a meeting of Holders of Securities,

 (x) Securities owned by the Company or any other obligor upon the Securities or any Affiliate of the Company or of such other obligor (unless the Company, such Affiliate or such obligor owns all Securities Outstanding under this Indenture, or (except for the purposes of actions to be taken by Holders of (i) more than one series voting as a class under Section 812 or (ii) more than one series or more than one Tranche, as the case may be, voting as a class under Section 1202) all Outstanding Securities of each such series and each such Tranche, as the case may be, determined without regard to this clause (x)) shall be disregarded and deemed not to be Out standing, except that, in determining whether the Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver or upon any such determination as to the presence of a quorum, only Securities which the Trustee knows to be so owned shall be so disregarded; provided, however, that Securities so owned which have been pledged in good faith may be regarded as Outstanding if the pledgee establishes to the satisfaction of the Trustee the pledgee's right so to act with respect to such Securities and that the pledgee is not the Company or any other obligor upon the Securities or any Affiliate of the Company or of such other obligor; and

<PAGE>

-6-

 (y) the principal amount of a Discount Security that shall be deemed to be Outstanding for such purposes shall be the amount of the principal thereof that would be due and payable as of the date of such determination upon a declaration of acceleration of the Maturity thereof pursuant to Section 802;

provided, further, that, in the case of any Security the principal of which is payable from time to time without presentment or surrender, the principal amount of such Security that shall be deemed to be Outstanding at any time for all purposes of this Indenture shall be the original principal amount thereof less the aggregate amount of principal thereof theretofore paid.

 "PAYING AGENT" means any Person, including the Company, authorized by the Company to pay the principal of, and premium, if any, or interest, if any, on any Securities on behalf of the Company.

 "PERIODIC OFFERING" means an offering of Securities of a series from time to time any or all of the specific terms of which Securities, including without limitation the rate or rates of interest, if any, thereon, the Stated Maturity or Maturities thereof and the redemption pro visions, if any, with respect thereto, are to be determined by the Company or its agents upon the issuance of such Securities.

 "PERSON" means any individual, corporation, partnership, joint venture, trust or unincorporated organization or any Governmental Authority.

 "PLACE OF PAYMENT", when used with respect to the Securities of any series, or any Tranche thereof, means the place or places, specified as contemplated by Section 301, at which, subject to Section 602, principal of and premium, if any, and interest, if any, on the Securities of such series or Tranche are payable.

"PREDECESSOR SECURITY" of any particular Security means every previous Security evidencing all or a portion of the same debt as that evidenced by such particular Security; and, for the purposes of this definition, any Security authenticated and delivered under Section 306 in exchange for or in lieu of a mutilated, destroyed, lost or stolen Security shall be deemed (to the extent lawful) to evidence the same debt as the mutilated, destroyed, lost or stolen Security.

"REDEMPTION DATE", when used with respect to any Security to be redeemed, means the date fixed for such redemption by or pursuant to this Indenture.

"REDEMPTION PRICE", when used with respect to any Security to be redeemed, means the price at which it is to be redeemed pursuant to this Indenture.

"REGULAR RECORD DATE" for the interest payable on any Interest Payment Date on the Securities of any series means the date specified for that purpose as contemplated by Section 301.
<PAGE>

-7-

"REQUIRED CURRENCY" has the meaning specified in Section 311.

"RESPONSIBLE OFFICER", when used with respect to the Trustee, means any officer of the Trustee assigned by the Trustee to administer its corporate trust matters.

"SECURITIES" has the meaning stated in the first recital of this Indenture and more particularly means any securities authenticated and delivered under this Indenture.

"SECURITY REGISTER" and "SECURITY REGISTRAR" have the respective meanings specified in Section 305.

"SPECIAL RECORD DATE" for the payment of any Defaulted Interest on the Securities of any series means a date fixed by the Trustee pursuant to Section 307.

"STATED INTEREST RATE" means a rate (whether fixed or variable) at which an obligation by its terms is stated to bear simple interest. Any calculation or other determination to be made under this Indenture by reference to the Stated Interest Rate on a Security shall be made without regard to the effective interest cost to the Company of such Security and without regard to the Stated Interest Rate on, or the effective cost to the Company of, any other indebtedness in respect of which the Company's obligations are evidenced or secured in whole or in part by such Security.

"STATED MATURITY", when used with respect to any obligation or any installment of principal thereof or interest thereon, means the date on which the principal of such obligation or such installment of principal or interest is stated to be due and payable (without regard to any provisions for redemption, prepayment, acceleration, purchase or extension).

"TRANCHE" means a group of Securities which (a) are of the same series and (b) have identical terms except as to principal amount and/or date of issuance.

"TRUST INDENTURE ACT" means, as of any time, the Trust Indenture Act of 1939, or any successor statute, as in effect at such time.

"TRUSTEE" means the Person named as the "Trustee" in the first paragraph of this Indenture until a successor Trustee shall have become such with respect to one or more series of Securities pursuant to the applicable

provisions of this Indenture, and thereafter "Trustee" shall mean or include each Person who is then a Trustee hereunder, and if at any time there is more than one such Person, "Trustee" as used with respect to the Securities of any series shall mean the Trustee with respect to Securities of that series.

"UNITED STATES" means the United States of America, its Territories, its possessions and other areas subject to its political jurisdiction.
<PAGE>

-8-

SECTION 102.  COMPLIANCE CERTIFICATES AND OPINIONS.

Except as otherwise expressly provided in this Indenture, upon any application or request by the Company to the Trustee to take any action under any provision of this Indenture, the Company shall, if requested by the Trustee, furnish to the Trustee an Officer's Certificate stating that all conditions precedent, if any, provided for in this Indenture relating to the proposed action (including any covenants compliance with which constitutes a condition precedent) have been complied with and an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent, if any, have been complied with, except that in the case of any such application or request as to which the furnishing of such documents is speci fically required by any provision of this Indenture relating to such particular application or request, no additional certificate or opinion need be furnished.

Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(a) a statement that each Person signing such certificate or opinion has read such covenant or condition and the definitions herein relating thereto;

(b) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

(c) a statement that, in the opinion of each such Person, such Person has made such examination or investigation as is necessary to enable such Person to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(d) a statement as to whether, in the opinion of each such Person, such condition or covenant has been complied with.

SECTION 103.  FORM OF DOCUMENTS DELIVERED TO TRUSTEE.

In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an officer of the Company may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care should know, that the
<PAGE>

-9-

certificate or opinion or representations with respect to the matters upon which

such Officer's Certificate or Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of the Company stating that the information with respect to such factual matters is in the possession of the Company, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

Whenever, subsequent to the receipt by the Trustee of any Board Resolution, Officer's Certificate, Opinion of Counsel or other document or instrument, a clerical, typographical or other inadvertent or unintentional error or omission shall be discovered therein, a new document or instrument may be substituted therefor in corrected form with the same force and effect as if originally filed in the corrected form and, irrespective of the date or dates of the actual execution and/or delivery thereof, such substitute document or instrument shall be deemed to have been executed and/or delivered as of the date or dates required with respect to the document or instrument for which it is substituted. Anything in this Indenture to the contrary notwithstanding, if any such corrective document or instrument indicates that action has been taken by or at the request of the Company which could not have been taken had the original document or instrument not contained such error or omission, the action so taken shall not be invalidated or otherwise rendered ineffective but shall be and remain in full force and effect, except to the extent that such action was a result of willful misconduct or bad faith. Without limiting the generality of the foregoing, any Securities issued under the authority of such defective document or instrument shall nevertheless be the valid obligations of the Company entitled to the benefits of this Indenture equally and ratably with all other Outstanding Securities, except as aforesaid.

SECTION 104.  ACTS OF HOLDERS.

(a) Any request, demand, authorization, direction, notice, consent, election, waiver or other action provided by this Indenture to be made, given or taken by Holders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Holders in person or by an agent duly appointed in writing or, alternatively, may be embodied in and evidenced by the record of Holders voting in favor thereof, either in person or by proxies duly appointed in writing, at any meeting of Holders duly called and held in accordance with the provisions of Article Thirteen, or a combination of such instruments and any such record. Except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments or record or both are delivered to the Trustee and, where it is hereby expressly required, to the Company. Such instrument

<PAGE>

-10-

or instruments and any such record (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Holders signing such instrument or instruments and so voting at any such meeting. Proof of execution of any such instrument or of a writing appointing any such agent, or of the holding by any Person of a Security, shall be sufficient for any purpose of this Indenture and (subject to Section 901) conclusive in favor of the Trustee and the Company, if made in the manner provided in this Section. The record of any meeting of Holders shall be proved in the manner provided in Section 1306.

(b) The fact and date of the execution by any Person of any such instrument or writing may be proved by the affidavit of a witness of such execution or by a certificate of a notary public or other officer authorized by law to take acknowledgments of deeds, certifying that the individual signing such instrument or writing acknowledged to him the execution thereof or may be proved in any other manner which the Trustee and the Company deem sufficient. Where such execution is by a signer acting in a capacity other than his individual capacity, such certificate or affidavit shall also constitute sufficient proof of his authority.

(c) The principal amount (except as otherwise contemplated in clause (y) of the first proviso to the definition of Outstanding) and serial numbers of Securities held by any Person, and the date of holding the same, shall be proved by the Security Register.

(d) Any request, demand, authorization, direction, notice, consent, election, waiver or other Act of a Holder shall bind every future Holder of the same Security and the Holder of every Security issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof in respect of anything done, omitted or suffered to be done by the Trustee or the Company in reliance thereon, whether or not notation of such action is made upon such Security.

(e) Until such time as written instruments shall have been delivered to the Trustee with respect to the requisite percentage of principal amount of Securities for the action contemplated by such instruments, any such instrument executed and delivered by or on behalf of a Holder may be revoked with respect to any or all of such Securities by written notice by such Holder or any subsequent Holder, proven in the manner in which such instrument was proven.

(f) Securities of any series, or any Tranche thereof, authenticated and delivered after any Act of Holders may, and shall if required by the Trustee, bear a notation in form approved by the Trustee as to any action taken by such Act of Holders. If the Company shall so determine, new Securities of any series, or any Tranche thereof, so modified as to conform, in the opinion of the Trustee and the Company, to such action may be prepared and executed by the Company and

<PAGE>

                                -11-

authenticated and delivered by the Trustee in exchange for Outstanding Securities of such series or Tranche.

(g) If the Company shall solicit from Holders any request, demand, authorization, direction, notice, consent, waiver or other Act, the Company may, at its option, fix in advance a record date for the determination of Holders entitled to give such request, demand, authorization, direction, notice, consent, waiver or other Act, but the Company shall have no obligation to do so. If such a record date is fixed, such request, demand, authorization, direction, notice, consent, waiver or other Act may be given before or after such record date, but only the Holders of record at the close of business on the record date shall be deemed to be Holders for the purposes of determining whether Holders of the requisite proportion of the Outstanding Securities have authorized or agreed or consented to such request, demand, authorization, direction, notice, consent, waiver or other Act, and for that purpose the Outstanding Securities shall be computed as of the record date.

SECTION 105.  NOTICES, ETC. TO TRUSTEE AND COMPANY.

consent, election, waiver or Act of Holders or other document provided or
permitted by this Indenture to be made upon, given or furnished to, or filed
with, the Trustee by any Holder or by the Company, or the Company by the Trustee
or by any Holder, shall be sufficient for every purpose hereunder (unless
otherwise herein expressly provided) if in writing and delivered personally to
an officer or other responsible employee of the addressee, or transmitted by
facsimile transmission or other direct written electronic means to such
telephone number or other electronic communications address as the parties
hereto shall from time to time designate, or transmitted by certified or
registered mail, charges prepaid, to the applicable address set opposite such
party's name below or to such other address as either party hereto may from time
to time designate:

            If to the Trustee, to:

            The Bank of New York
            101 Barclay Street - 21W
            New York, New York  10286

            Attention:       Vice President, Corporate Trust
                             Administration
            Telephone:       (212) 815-5375
            Telecopy:        (212) 815-5915

            If to the Company, to:

            ENSERCH Corporation

<PAGE>

                              -12-

            1601 Bryan Street
            Dallas, Texas  75201

            Attention:       _____
            Telephone:
            Telecopy:


            Any communication contemplated herein shall be deemed to have
been made, given, furnished and filed if personally delivered, on the date of
delivery, if transmitted by facsimile transmission or other direct written
electronic means, on the date of transmission, and if transmitted by certified
or registered mail, on the date of receipt.

SECTION 106.  NOTICE TO HOLDERS OF SECURITIES; WAIVER.

            Except as otherwise expressly provided herein, where this
Indenture provides for notice to Holders of any event, such notice shall be
sufficiently given, and shall be deemed given, to Holders if in writing and
mailed, first-class postage prepaid, to each Holder affected by such event, at
the address of such Holder as it appears in the Security Register, not later
than the latest date, if any, and not earlier than the earliest date, if any,
prescribed for the giving of such notice.

            In case by reason of the suspension of regular mail service or
by reason of any other cause it shall be impracticable to give such notice to
Holders by mail, then such notification as shall be made with the approval of
the Trustee shall constitute a sufficient no tification for every purpose
hereunder. In any case where notice to Holders is given by mail, neither the
failure to mail such notice, nor any defect in any notice so mailed, to any
particular Holder shall affect the sufficiency of such notice with respect to
other Holders.

Any notice required by this Indenture may be waived in writing
by the Person entitled to receive such notice, either before or after the event
otherwise to be specified therein, and such waiver shall be the equivalent of
such notice. Waivers of notice by Holders shall be filed with the Trustee, but
such filing shall not be a condition precedent to the validity of any action
taken in reliance upon such waiver.

SECTION 107.   CONFLICT WITH TRUST INDENTURE ACT.

            If any provision of this Indenture limits, qualifies or
conflicts with another provision hereof which is required or deemed to be
included in this Indenture by, or is otherwise governed by, any of the
provisions of the Trust Indenture Act, such other provision shall control; and
if any provision hereof otherwise conflicts with the Trust Indenture Act, the
Trust Indenture Act shall control.
<PAGE>

                                     -13-


SECTION 108.   EFFECT OF HEADINGS AND TABLE OF CONTENTS.

            The Article and Section headings in this Indenture and the Table
of Contents are for convenience only and shall not affect the construction
hereof.

SECTION 109.   SUCCESSORS AND ASSIGNS.

            All covenants and agreements in this Indenture by the Company
and Trustee shall bind their respective successors and assigns, whether so
expressed or not.

SECTION 110.   SEPARABILITY CLAUSE.

            In case any provision in this Indenture or the Securities shall be
invalid, illegal or unenforceable, the validity, legality and enforceability of
the remaining provisions shall not in any way be affected or impaired thereby.

SECTION 111.   BENEFITS OF INDENTURE.

            Nothing in this Indenture or the Securities, express or implied,
shall give to any Person, other than the parties hereto, their successors
hereunder and the Holders, any benefit or any legal or equitable right, remedy
or claim under this Indenture.

SECTION 112.   GOVERNING LAW.

            THIS INDENTURE AND THE SECURITIES SHALL BE GOVERNED BY AND
CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, EXCEPT TO THE
EXTENT THAT THE LAW OF ANY OTHER JURISDICTION SHALL BE MANDATORILY APPLICABLE.

SECTION 113.   LEGAL HOLIDAYS.

            In any case where any Interest Payment Date, Redemption Date
or Stated Maturity of any Security shall not be a Business Day at any Place of
Payment, then (notwithstanding any other provision of this Indenture or of the
Securities other than a provision in Securities of any series, or any Tranche
thereof, or in the Board Resolution or Officer's Certificate which establishes
the terms of the Securities of such series or Tranche, which specifically states
that such provision shall apply in lieu of this Section) payment of interest or
principal and premium, if any, need not be made at such Place of Payment on such
date, but may be made on the next succeeding Business Day at such Place of
Payment, with the same force and effect, and in the same amount, as if made on
the Interest Payment Date or Redemption Date, or at the Stated Maturity, as the
case may be, and, if such payment is made or duly provided for on such Business
Day, no interest shall accrue on the amount so payable for the period from and

EFH01434995

after such Interest Payment Date, Redemption Date or Stated Maturity, as the case may be, to such Business Day.
<PAGE>

-14-


ARTICLE TWO

SECURITY FORMS

SECTION 201.  FORMS GENERALLY.

        The definitive Securities of each series shall be in substantially the form or forms thereof established in the indenture supplemental hereto establishing such series or in a Board Resolution establishing such series, or in an Officer's Certificate pursuant to such supplemental indenture or Board Resolution, in each case with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with the rules of any securities exchange or as may, consistently herewith, be determined by the officers executing such Secu rities, as evidenced by their execution of the Securities. If the form or forms of Securities of any series are established in a Board Resolution or in an Officer's Certificate pursuant to a Board Resolution, such Board Resolution and Officer's Certificate, if any, shall be delivered to the Trustee at or prior to the delivery of the Company Order contemplated by Section 303 for the authentication and delivery of such Securities.

        Unless otherwise specified as contemplated by Sections 301 or 1201(g), the Securities of each series shall be issuable in registered form without coupons. The definitive Securities shall be produced in such manner as shall be determined by the officers executing such Securities, as evidenced by their execution thereof.

SECTION 202.  FORM OF TRUSTEE'S CERTIFICATE OF AUTHENTICATION.

        The Trustee's certificate of authentication shall be in substantially the form set forth below:

                        This is one of the Securities of the series
                        designated therein referred to in the within-mentioned
                        Indenture.

Dated:

                        ---------------------------------
                        as Trustee


                        By:
                           -----------------------------
                           Authorized Signatory
<PAGE>

-15-


ARTICLE THREE

THE SECURITIES

SECTION 301.  AMOUNT UNLIMITED; ISSUABLE IN SERIES.

EFH01434996

The aggregate principal amount of Securities which may be authenticated and delivered under this Indenture is unlimited.

The Securities may be issued in one or more series. Subject to the last paragraph of this Section, prior to the authentication and delivery of Securities of any series there shall be established by specification in a supplemental indenture or in a Board Resolution, or in an Officer's Certificate pursuant to a supplemental indenture or a Board Resolution:

    (a) the title of the Securities of such series (which shall distinguish the Securities of such series from Securities of all other series);

    (b) any limit upon the aggregate principal amount of the Securities of such series which may be authenticated and delivered under this Indenture (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of such series pursuant to Section 304, 305, 306, 406 or 1206 and except for any Securities which, pursuant to Section 303, are deemed never to have been authenticated and delivered hereunder);

    (c) the Person or Persons (without specific identification) to whom interest on Securities of such series, or any Tranche thereof, shall be payable on any Interest Payment Date, if other than the Persons in whose names such Securities (or one or more Predecessor Securities) are registered at the close of business on the Regular Record Date for such interest;

    (d) the date or dates on which the principal of the Securities of such series, or any Tranche thereof, is payable or any formulary or other method or other means by which such date or dates shall be determined, by reference to an index or other fact or event ascertainable outside of this Indenture or otherwise (without regard to any provisions for redemption, prepayment, acceleration, purchase or extension);

    (e) the rate or rates at which the Securities of such series, or any Tranche thereof, shall bear interest, if any (including the rate or rates at which overdue principal shall bear interest, if different from the rate or rates at which such Securities shall bear interest prior to Maturity, and, if applicable, the rate or rates at which overdue premium or interest shall bear interest, if any), or any formulary or other method or other means by which such rate or rates shall be determined, by reference

<PAGE>

-16-

to an index or other fact or event ascertainable outside of this Indenture or otherwise; the date or dates from which such interest shall accrue; the Interest Payment Dates on which such interest shall be payable and the Regular Record Date, if any, for the interest payable on such Securities on any Interest Payment Date; and the basis of computation of interest, if other than as provided in Section 310;

    (f) the place or places at which or methods by which (1) the principal of and premium, if any, and interest, if any, on Securities of such series, or any Tranche thereof, shall be payable, (2) registration of transfer of Securities of such series, or any Tranche thereof, may be effected, (3) exchanges of Securities of such series, or any Tranche thereof, may be effected and (4) notices and demands to or upon the Company in respect of the Securities of such series, or any Tranche thereof, and this Indenture may be served; the Security Registrar for such series or Tranche; and if such is the case, that the principal of such Securities shall be payable without presentment or

surrender thereof;

(g) the period or periods within which, or the date or dates on which, the price or prices at which and the terms and conditions upon which the Securities of such series, or any Tranche thereof, may be redeemed, in whole or in part, at the option of the Company and any restrictions on such redemptions, including but not limited to a restriction on a partial redemption by the Company of the Securities of any series, or any Tranche thereof, resulting in delisting of such Securities from any national exchange;

(h) the obligation or obligations, if any, of the Company to redeem or purchase the Securities of such series, or any Tranche thereof, pursuant to any sinking fund or other mandatory redemption provisions or at the option of a Holder thereof and the period or periods within which or the date or dates on which, the price or prices at which and the terms and conditions upon which such Securities shall be redeemed or purchased, in whole or in part, pursuant to such obligation, and applicable exceptions to the requirements of Section 404 in the case of mandatory redemption or redemption at the option of the Holder;

(i) the denominations in which Securities of such series, or any Tranche thereof, shall be issuable if other than denominations of $1,000 and any integral multiple thereof;

(j) the currency or currencies, including composite currencies, in which payment of the principal of and premium, if any, and interest, if any, on the Securities of such series, or any Tranche thereof, shall be payable (if other than in Dollars);

(k)  if the principal of or premium, if any, or interest, if any, on the Securities of such series, or any Tranche thereof, are to be payable, at the election of the

&lt;PAGE&gt;

-17-

Company or a Holder thereof, in a coin or currency other than that in which the Securities are stated to be payable, the period or periods within which and the terms and conditions upon which, such election may be made;

(l) if the principal of or premium, if any, or interest, if any, on the Securities of such series, or any Tranche thereof, are to be payable, or are to be payable at the election of the Company or a Holder thereof, in securities or other property, the type and amount of such securities or other property, or the formulary or other method or other means by which such amount shall be determined, and the period or periods within which, and the terms and conditions upon which, any such election may be made;

(m) if the amount payable in respect of principal of or premium, if any, or interest, if any, on the Securities of such series, or any Tranche thereof, may be determined with reference to an index or other fact or event ascertainable outside of this Indenture, the manner in which such amounts shall be determined to the extent not established pursuant to clause (e) of this paragraph;

(n) if other than the principal amount thereof, the portion of the principal amount of Securities of such series, or any Tranche thereof, which shall be payable upon declaration of acceleration of the Maturity thereof pursuant to Section 802;

(o) any Events of Default, in addition to those specified in

Section 801, with respect to the Securities of such series, and any covenants of the Company for the benefit of the Holders of the Securities of such series, or any Tranche thereof, in addition to those set forth in Article Six;

(p) the terms, if any, pursuant to which the Securities of such series, or any Tranche thereof, may be converted into or exchanged for shares of capital stock or other securities of the Company or any other Person;

(q) the obligations or instruments, if any, which shall be considered to be Eligible Obligations in respect of the Securities of such series, or any Tranche thereof, denominated in a currency other than Dollars or in a composite currency, and any additional or alternative provisions for the reinstatement of the Company's indebtedness in respect of such Securities after the satisfaction and discharge thereof as provided in Section 701;

(r) if the Securities of such series, or any Tranche thereof, are to be issued in global form, (i) any limitations on the rights of the Holder or Holders of such Securities to transfer or exchange the same or to obtain the registration of transfer thereof, (ii) any limitations on the rights of the Holder or Holders thereof to obtain

<PAGE>

-18-

certificates therefor in definitive form in lieu of temporary form and (iii) any and all other matters incidental to such Securities;

(s) if the Securities of such series, or any Tranche thereof, are to be issuable as bearer securities, any and all matters incidental thereto which are not specifically addressed in a supplemental indenture as contemplated by clause (g) of Section 1201;

(t) to the extent not established pursuant to clause (r) of this paragraph, any limitations on the rights of the Holders of the Securities of such Series, or any Tranche thereof, to transfer or exchange such Securities or to obtain the registration of transfer thereof; and if a service charge will be made for the registration of transfer or exchange of Securities of such series, or any Tranche thereof, the amount or terms thereof;

(u) any exceptions to Section 113, or variation in the definition of Business Day, with respect to the Securities of such series, or any Tranche thereof; and

(v) any other terms of the Securities of such series, or any Tranche thereof, not inconsistent with the provisions of this Indenture.

With respect to Securities of a series subject to a Periodic Offering, the indenture supplemental hereto or the Board Resolution which establishes such series, or the Officer's Certificate pursuant to such supplemental indenture or Board Resolution, as the case may be, may provide general terms or parameters for Securities of such series and provide either that the specific terms of Securities of such series, or any Tranche thereof, shall be specified in a Company Order or that such terms shall be determined by the Company or its agents in accordance with procedures specified in a Company Order as contemplated by the clause (b) of Section 303.

SECTION 302.  DENOMINATIONS.

Unless otherwise provided as contemplated by Section 301 with respect to any series of Securities, or any Tranche thereof, the Securities of

each series shall be issuable in denominations of $1,000 and any integral multiple thereof.

SECTION 303.    EXECUTION, AUTHENTICATION, DELIVERY AND DATING.

        Unless otherwise provided as contemplated by Section 301 with respect to any series of Securities, or any Tranche thereof, the Securities shall be executed on behalf of the Company by an Authorized Officer and may have the corporate seal of the Company affixed thereto or reproduced thereon attested by any other Authorized Officer or by the Secretary or an Assistant Secretary of the Company. The signature of any or all of these officers on the Securities may be manual or facsimile.
<PAGE>

                                -19-

        Securities bearing the manual or facsimile signatures of individuals who were at the time of execution Authorized Officers or the Secretary or an Assistant Secretary of the Company shall bind the Company, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Securities or did not hold such offices at the date of such Securities.

        The Trustee shall authenticate and deliver Securities of a series, for original issue, at one time or from time to time in accordance with the Company Order referred to below, upon receipt by the Trustee of:

            (a)  the instrument or instruments establishing the form or forms and terms of such series, as provided in Sections 201 and 301;

            (b) a Company Order requesting the authentication and delivery of such Securities and, to the extent that the terms of such Securities shall not have been established in an indenture supplemental hereto or in a Board Resolution, or in an Officer's Certificate pursuant to a supplemental indenture or Board Resolution, all as contemplated by Sections 201 and 301, either (i) establishing such terms or (ii) in the case of Securities of a series subject to a Periodic Offering, specifying procedures, acceptable to the Trustee, by which such terms are to be established (which procedures may provide, to the extent acceptable to the Trustee, for authentication and delivery pursuant to oral or electronic instructions from the Company or any agent or agents thereof, which oral instructions are to be promptly confirmed electronically or in writing), in either case in accordance with the instrument or instruments delivered pursuant to clause (a) above;

            (c) the Securities of such series, executed on behalf of the Company by an Authorized Officer;

            (d)  an Opinion of Counsel to the effect that:

                (i)  the form or forms of such Securities have been duly authorized by the Company and have been established in conformity with the provisions of this Indenture;

                (ii)  the terms of such Securities have been duly authorized by the Company and have been established in conformity with the provisions of this Indenture; and

                (iii)  such Securities, when authenticated and delivered by the Trustee and issued and delivered by the Company in the manner and subject to any conditions specified in such Opinion of Counsel, will have been duly issued under this Indenture and will constitute valid and legally binding obligations
<PAGE>

of the Company, entitled to the benefits provided by this
Indenture, and enforceable in accordance with their terms,
subject, as to enforcement, to laws relating to or affecting
generally the enforcement of creditors' rights, including,
without limitation, bankruptcy and insolvency laws and to
general principles of equity (regardless of whether such
enforceability is considered in a proceeding in equity or at
law);

provided, however, that, with respect to Securities of a series subject to a
Periodic Offering, the Trustee shall be entitled to receive such Opinion of
Counsel only once at or prior to the time of the first authentication of such
Securities (provided that such Opinion of Counsel addresses the authentication
and delivery of all Securities of such series) and that in lieu of the opinions
described in clauses (ii) and (iii) above Counsel may opine that:

> (x) when the terms of such Securities shall have been
> established pursuant to a Company Order or Orders or pursuant
> to such procedures (acceptable to the Trustee) as may be
> specified from time to time by a Company Order or Orders, all
> as contemplated by and in accordance with the instrument or
> instruments delivered pursuant to clause (a) above, such terms
> will have been duly authorized by the Company and will have
> been established in conformity with the provisions of this
> Indenture; and

> (y) such Securities, when authenticated and delivered
> by the Trustee in accordance with this Indenture and the
> Company Order or Orders or specified procedures referred to in
> paragraph (x) above and issued and delivered by the Company in
> the manner and subject to any conditions specified in such
> Opinion of Counsel, will have been duly issued under this In
> denture and will constitute valid and legally binding
> obligations of the Company, entitled to the benefits provided
> by the Indenture, and enforceable in accordance with their
> terms, subject, as to enforcement, to laws relating to or
> affecting generally the enforcement of creditors' rights,
> including, without limitation, bankruptcy and insolvency laws,
> and to general principles of equity (regardless of whether
> such enforceability is considered in a proceeding in equity or
> at law).

> With respect to Securities of a series subject to a Periodic
Offering, the Trustee may conclusively rely, as to the authorization by the
Company of any of such Securities, the form, terms thereof and the legality,
validity, binding effect and enforceability thereof, and compliance of the
authentication and delivery thereof with the terms and conditions of this
Indenture, upon the Opinion of Counsel and other documents delivered pursuant to
Sections 201 and 301 and this Section, as applicable, at or prior to the time of
the first authentication of Securities of such series unless and until such
opinion or other documents have been superseded or revoked or expire by their
terms. In connection with the authentication and delivery of Securities of a
series subject to a Periodic Offering, the Trustee shall be entitled to
<PAGE>

-21-

assume that the Company's instructions to authenticate and deliver such
Securities do not violate any applicable law or any applicable rule, regulation
or order of any Governmental Authority having jurisdiction over the Company.

> If the form or terms of the Securities of any series have been

established by or pursuant to a Board Resolution or an Officer's Certificate as permitted by Sections 201 or 301, the Trustee shall not be required to authenticate such Securities if the issuance of such Securities pursuant to this Indenture will materially or adversely affect the Trustee's own rights, duties or immunities under the Securities and this Indenture or otherwise in a manner which is not reasonably acceptable to the Trustee.

Unless otherwise specified as contemplated by Section 301 with respect to any series of Securities, or any Tranche thereof, each Security shall be dated the date of its authentication.

Unless otherwise specified as contemplated by Section 301 with respect to any series of Securities, no Security shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Security a certificate of authentication substantially in the form provided for herein executed by the Trustee or an Authenticating Agent by manual signature, and such certificate upon any Security shall be conclusive evidence, and the only evidence, that such Security has been duly authenticated and delivered hereunder and is entitled to the benefits of this Indenture. Notwithstanding the foregoing, if any Security shall have been authenticated and delivered hereunder to the Company, or any Person acting on its behalf, but shall never have been issued and sold by the Company, and the Company shall deliver such Security to the Trustee for cancellation as provided in Section 309 together with a written statement (which need not comply with Section 102 and need not be accompanied by an Opinion of Counsel) stating that such Security has never been issued and sold by the Company, for all purposes of this Indenture such Security shall be deemed never to have been authenticated and delivered hereunder and shall never be entitled to the benefits hereof.

SECTION 304.    TEMPORARY SECURITIES.

Pending the preparation of definitive Securities of any series, or any Tranche thereof, the Company may execute, and upon Company Order the Trustee shall authenticate and deliver, temporary Securities which are printed, lithographed, typewritten, mimeographed or otherwise produced, in any authorized denomination, substantially of the tenor of the defi nitive Securities in lieu of which they are issued, with such appropriate insertions, omissions, substitutions and other variations as the officers executing such Securities may determine, as evidenced by their execution of such Securities; provided, however, that temporary Securities need not recite specific redemption, sinking fund, conversion or exchange provisions.
<PAGE>

-22-

Unless otherwise specified as contemplated by Section 301 with respect to the Securities of any series, or any Tranche thereof, after the preparation of definitive Securities of such series or Tranche, the temporary Securities of such series or Tranche shall be exchangeable, without charge to the Holder thereof, for definitive Securities of such series or Tranche upon surrender of such temporary Securities at the office or agency of the Company maintained pursuant to Section 602 in a Place of Payment for such Securities. Upon such surrender of temporary Securities for such exchange, the Company shall, except as aforesaid, execute and the Trustee shall authenticate and deliver in exchange therefor definitive Securities of the same series and Tranche of authorized denominations and of like tenor and aggregate principal amount.

Until exchanged in full as hereinabove provided, temporary Securities shall in all respects be entitled to the same benefits under this Indenture as definitive Securities of the same series and Tranche and of like tenor authenticated and delivered hereunder.

SECTION 305.    REGISTRATION, REGISTRATION OF TRANSFER AND EXCHANGE.

The Company shall cause to be kept in each office designated pursuant to Section 602, with respect to the Securities of each series, a register (all registers kept in accordance with this Section being collectively referred to as the "Security Register") in which, subject to such reasonable regulations as it may prescribe, the Company shall provide for the registration of Securities of such series, or any Tranche thereof, and the registration of transfer thereof. The Company shall designate one Person to maintain the Security Register for the Securities of each series on a consolidated basis, and such Person is referred to herein, with respect to such series, as the "Security Registrar." Anything herein to the contrary notwithstanding, the Company may designate one or more of its offices as an office in which a register with respect to the Securities of one or more series shall be maintained, and the Company may designate itself the Security Registrar with respect to one or more of such series. The Security Register shall be open for inspection by the Trustee and the Company at all reasonable times.

Except as otherwise specified as contemplated by Section 301 with respect to the Securities of any series, or any Tranche thereof, upon surrender for registration of transfer of any Security of such series or Tranche at the office or agency of the Company maintained pursuant to Section 602 in a Place of Payment for such series or Tranche, the Company shall execute, and the Trustee shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Securities of the same series and Tranche, of authorized denominations and of like tenor and aggregate principal amount.

Except as otherwise specified as contemplated by Section 301 with respect to the Securities of any series, or any Tranche thereof, any Security of such series or Tranche may be exchanged at the option of the Holder, for one or more new Securities of the same series and Tranche, of authorized denominations and of like tenor and aggregate principal
<PAGE>

-23-

amount, upon surrender of the Securities to be exchanged at any such office or agency. Whenever any Securities are so surrendered for exchange, the Company shall execute, and the Trustee shall authenticate and deliver, the Securities which the Holder making the exchange is entitled to receive.

All Securities delivered upon any registration of transfer or exchange of Securities shall be valid obligations of the Company, evidencing the same debt, and entitled to the same benefits under this Indenture, as the Securities surrendered upon such registration of transfer or exchange.

Every Security presented or surrendered for registration of transfer or for exchange shall (if so required by the Company, the Trustee or the Security Registrar) be duly endorsed or shall be accompanied by a written instrument of transfer in form satisfactory to the Company, the Trustee or the Security Registrar, as the case may be, duly executed by the Holder thereof or his attorney duly authorized in writing.

Unless otherwise specified as contemplated by Section 301 with respect to Securities of any series, or any Tranche thereof, no service charge shall be made for any regis tration of transfer or exchange of Securities, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any registration of transfer or exchange of Securities, other than exchanges pursuant to Section 304, 406 or 1206 not involving any transfer.

The Company shall not be required to execute or to provide for the registration of transfer of or the exchange of (a) Securities of any series, or any Tranche thereof, during a period of 15 days immediately preceding the date notice is to be given identifying the serial numbers of the Securities of such series or Tranche called for redemption or (b) any Security so selected for redemption in whole or in part, except the unredeemed portion of any Security

EFH01435003

being redeemed in part.

SECTION 306.  MUTILATED, DESTROYED, LOST AND STOLEN SECURITIES.

If any mutilated Security is surrendered to the Trustee, the Company shall execute and the Trustee shall authenticate and deliver in exchange therefor a new Security of the same series and Tranche, and of like tenor and principal amount and bearing a number not contemporaneously outstanding.

If there shall be delivered to the Company and the Trustee (a) evidence to their satisfaction of the ownership of and the destruction, loss or theft of any Security and (b) such security or indemnity as may be reasonably required by them to save each of them and any agent of either of them harmless, then, in the absence of notice to the Company or the Trustee that such Security is held by a Person purporting to be the owner of such Security, the Company shall execute and the Trustee shall authenticate and deliver, in lieu of any such

<PAGE>

-24-

destroyed, lost or stolen Security, a new Security of the same series and Tranche, and of like tenor and principal amount and bearing a number not contemporaneously outstanding.

Notwithstanding the foregoing, in case any such mutilated, destroyed, lost or stolen Security has become or is about to become due and payable, the Company in its discretion may, instead of issuing a new Security, pay such Security.

Upon the issuance of any new Security under this Section, the Company may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other reasonable expenses (including the fees and expenses of the Trustee) connected therewith.

Every new Security of any series issued pursuant to this Section in lieu of any destroyed, lost or stolen Security shall constitute an original additional contractual obligation of the Company, whether or not the destroyed, lost or stolen Security shall be at any time enforceable by anyone other than the Holder of such new Security, and any such new Security shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Securities of such series duly issued hereunder.

The provisions of this Section are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities.

SECTION 307.  PAYMENT OF INTEREST; INTEREST RIGHTS PRESERVED.

Unless otherwise specified as contemplated by Section 301 with respect to the Securities of any series, or any Tranche thereof, interest on any Security which is payable, and is punctually paid or duly provided for, on any Interest Payment Date shall be paid to the Person in whose name that Security (or one or more Predecessor Securities) is registered at the close of business on the Regular Record Date for such interest.

Any interest on any Security of any series which is payable, but is not punctually paid or duly provided for, on any Interest Payment Date (herein called "Defaulted Interest") shall forthwith cease to be payable to the Holder on the related Regular Record Date by virtue of having been such Holder, and such Defaulted Interest may be paid by the Company, at its election in each case, as provided in clause (a) or (b) below:

(a) The Company may elect to make payment of any Defaulted

Interest to the Persons in whose names the Securities of such series (or their respective Predecessor Securities) are registered at the close of business on a date (herein called a "Special Record Date") for the payment of such Defaulted Interest, which shall be fixed in the following manner. The Company shall notify the Trustee in writing of the amount of Defaulted Interest proposed to be paid on each Security of such series and the date of

<PAGE>

-25-

the proposed payment, and at the same time the Company shall deposit with the Trustee an amount of money equal to the aggregate amount proposed to be paid in respect of such Defaulted Interest or shall make arrangements satisfactory to the Trustee for such deposit on or prior to the date of the proposed payment, such money when deposited to be held in trust for the benefit of the Persons entitled to such Defaulted Interest as in this clause provided. Thereupon the Trustee shall fix a Special Record Date for the payment of such Defaulted Interest which shall be not more than 15 days and not less than 10 days prior to the date of the proposed payment and not less than 10 days after the receipt by the Trustee of the notice of the proposed payment. The Trustee shall promptly notify the Company of such Special Record Date and, in the name and at the expense of the Company, shall promptly cause notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor to be mailed, first-class postage prepaid, to each Holder of Securities of such series at the address of such Holder as it appears in the Security Register, not less than 10 days prior to such Special Record Date. Notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor having been so mailed, such Defaulted Interest shall be paid to the Persons in whose names the Securities of such series (or their respective Predecessor Securities) are registered at the close of business on such Special Record Date.

        (b) The Company may make payment of any Defaulted Interest on the Securities of any series in any other lawful manner not inconsistent with the requirements of any securities exchange on which such Securities may be listed, and upon such notice as may be required by such exchange, if, after notice given by the Company to the Trustee of the proposed payment pursuant to this clause, such manner of payment shall be deemed practicable by the Trustee.

        Subject to the foregoing provisions of this Section and Section 305, each Security delivered under this Indenture upon registration of transfer of or in exchange for or in lieu of any other Security shall carry the rights to interest accrued and unpaid, and to accrue, which were carried by such other Security.

SECTION 308.  PERSONS DEEMED OWNERS.

        Prior to due presentment of a Security for registration of transfer, the Company, the Trustee and any agent of the Company or the Trustee may treat the Person in whose name such Security is registered as the absolute owner of such Security for the purpose of receiving payment of principal of and premium, if any, and (subject to Sections 305 and 307) interest, if any, on such Security and for all other purposes whatsoever, whether or not such Security be overdue, and neither the Company, the Trustee nor any agent of the Company or the Trustee shall be affected by notice to the contrary.

<PAGE>

-26-

SECTION 309.  CANCELLATION BY SECURITY REGISTRAR.

EFH01435005

All Securities surrendered for payment, redemption, registration of transfer or exchange shall, if surrendered to any Person other than the Security Registrar, be delivered to the Security Registrar and, if not theretofore canceled, shall be promptly canceled by the Security Registrar. The Company may at any time deliver to the Security Registrar for cancellation any Securities previously authenticated and delivered hereunder which the Company may have acquired in any manner whatsoever or which the Company shall not have issued and sold, and all Securities so delivered shall be promptly canceled by the Security Registrar. No Securities shall be authenticated in lieu of or in exchange for any Securities canceled as provided in this Section, except as expressly permitted by this Indenture. All canceled Securities held by the Security Registrar shall be disposed of in accordance with a Company Order delivered to the Security Registrar and the Trustee, and the Security Registrar shall promptly deliver a certificate of disposition to the Trustee and the Company unless, by a Company Order, similarly delivered, the Company shall direct that canceled Securities be returned to it. The Security Registrar shall promptly deliver evidence of any cancellation of a Security in accordance with this Section 309 to the Trustee and the Company.

SECTION 310.   COMPUTATION OF INTEREST.

Except as otherwise specified as contemplated by Section 301 for Securities of any series, or any Tranche thereof, interest on the Securities of each series shall be computed on the basis of a 360-day year consisting of twelve 30-day months and for any period shorter than a full month, on the basis of the actual number of days elapsed in such period.

SECTION 311.   PAYMENT TO BE IN PROPER CURRENCY.

In the case of the Securities of any series, or any Tranche thereof, denominated in any currency other than Dollars or in a composite currency (the "Required Currency"), except as otherwise specified with respect to such Securities as contemplated by Section 301, the obligation of the Company to make any payment of the principal thereof, or the premium or interest thereon, shall not be discharged or satisfied by any tender by the Company, or re covery by the Trustee, in any currency other than the Required Currency, except to the extent that such tender or recovery shall result in the Trustee timely holding the full amount of the Required Currency then due and payable. If any such tender or recovery is in a currency other than the Required Currency, the Trustee may take such actions as it considers appropriate to exchange such currency for the Required Currency. The costs and risks of any such exchange, including without limitation the risks of delay and exchange rate fluctuation, shall be borne by the Company, the Company shall remain fully liable for any shortfall or delinquency in the full amount of Required Currency then due and payable, and in no circumstances shall the Trustee be liable therefor except in the case of its negligence or willful misconduct.
<PAGE>

-27-

ARTICLE FOUR

REDEMPTION OF SECURITIES

SECTION 401.   APPLICABILITY OF ARTICLE.

Securities of any series, or any Tranche thereof, which are redeemable before their Stated Maturity shall be redeemable in accordance with their terms and (except as otherwise specified as contemplated by Section 301 for Securities of such series or Tranche) in accordance with this Article.

SECTION 402.   ELECTION TO REDEEM; NOTICE TO TRUSTEE.

The election of the Company to redeem any Securities shall be

evidenced by a Board Resolution of an Officer's Certificate. The Company shall, at least 45 days prior to the Redemption Date fixed by the Company (unless a shorter notice shall be satisfactory to the Trustee), notify the Trustee in writing of such Redemption Date and of the principal amount of such Securities to be redeemed. In the case of any redemption of Securities (a) prior to the expiration of any restriction on such redemption provided in the terms of such Securities or elsewhere in this Indenture or (b) pursuant to an election of the Company which is subject to a condition specified in the terms of such Securities, the Company shall furnish the Trustee with an Officer's Certificate evidencing compliance with such restriction or condition.

SECTION 403.    SELECTION OF SECURITIES TO BE REDEEMED.

        If less than all the Securities of any series, or any Tranche thereof, are to be redeemed, the particular Securities to be redeemed shall be selected by the Trustee from the Outstanding Securities of such series or Tranche not previously called for redemption, by such method as shall be provided for any particular series, or, in the absence of any such provision, by such method as the Trustee shall deem fair and appropriate and which may provide for the selection for redemption of portions (equal to the minimum authorized denomination for Securities of such series or Tranche or any integral multiple thereof) of the principal amount of Securities of such series or Tranche of a denomination larger than the minimum authorized denomination for Securities of such series or Tranche; provided, however, that if, as indicated in an Officer's Certificate, the Company shall have offered to purchase all or any principal amount of the Securities then Outstanding of any series, or any Tranche thereof, and less than all of such Securities as to which such offer was made shall have been tendered to the Company for such purchase, the Trustee, if so directed by Company Order, shall select for redemption all or any principal amount of such Securities which have not been so tendered.

        The Trustee shall promptly notify the Company and the Security Registrar in writing of the Securities selected for redemption and, in the case of any Securities selected to be redeemed in part, the principal amount thereof to be redeemed.
<PAGE>

                                -28-


        For all purposes of this Indenture, unless the context otherwise requires, all provisions relating to the redemption of Securities shall relate, in the case of any Securities redeemed or to be redeemed only in part, to the portion of the principal amount of such Securities which has been or is to be redeemed.

SECTION 404.    NOTICE OF REDEMPTION.

        Notice of redemption shall be given in the manner provided in Section 106 to the Holders of the Securities to be redeemed not less than 30 nor more than 60 days prior to the Redemption Date.

        All notices of redemption shall state:

        (a)  the Redemption Date,

        (b)  the Redemption Price,

        (c) if less than all the Securities of any series or Tranche are to be redeemed, the identification of the particular Securities to be redeemed and the portion of the principal amount of any Security to be redeemed in part,

        (d) that on the Redemption Date the Redemption Price, together with accrued interest, if any, to the Redemption Date, will become due and payable upon each such Security to be redeemed and, if applicable,

that interest thereon will cease to accrue on and after said date,

(e) the place or places where such Securities are to be surrendered for payment of the Redemption Price and accrued interest, if any, unless it shall have been specified as contemplated by Section 301 with respect to such Securities that such surrender shall not be required,

(f)  that the redemption is for a sinking or other fund, if such is the case, and

(g)  such other matters as the Company shall deem desirable or appropriate.

Unless otherwise specified with respect to any Securities in accordance with Section 301, with respect to any notice of redemption of Securities at the election of the Company, unless, upon the giving of such notice, such Securities shall be deemed to have been paid in accordance with Section 701, such notice may state that such redemption shall be conditional upon the receipt by the Paying Agent or Agents for such Securities, on or prior to the date fixed for such redemption, of money sufficient to pay the principal of and premium, if any, and interest, if any, on such Securities and that if such money shall not have been so received such notice shall be of no force or effect and the Company shall not be required to
<PAGE>

-29-

redeem such Securities. In the event that such notice of redemption contains such a condition and such money is not so received, the redemption shall not be made and within a reasonable time thereafter notice shall be given, in the manner in which the notice of redemption was given, that such money was not so received and such redemption was not required to be made, and the Paying Agent or Agents for the Securities otherwise to have been redeemed shall promptly return to the Holders thereof any of such Securities which had been surrendered for payment upon such redemption.

Notice of redemption of Securities to be redeemed at the election of the Company, and any notice of non-satisfaction of a condition for redemption as aforesaid, shall be given by the Company or, at the Company's request, by the Security Registrar in the name and at the expense of the Company. Notice of mandatory redemption of Securities shall be given by the Security Registrar in the name and at the expense of the Company.

SECTION 405.  SECURITIES PAYABLE ON REDEMPTION DATE.

Notice of redemption having been given as aforesaid, and the conditions, if any, set forth in such notice having been satisfied, the Securities or portions thereof so to be redeemed shall, on the Redemption Date, become due and payable at the Redemption Price therein specified, and from and after such date (unless, in the case of an unconditional notice of redemption, the Company shall default in the payment of the Redemption Price and accrued interest, if any) such Securities or portions thereof, if interest-bearing, shall cease to bear interest. Upon surrender of any such Security for redemption in accordance with such notice, such Security or portion thereof shall be paid by the Company at the Redemption Price, together with accrued interest, if any, to the Redemption Date; provided, however, that no such surrender shall be a condition to such payment if so specified as contemplated by Section 301 with respect to such Security; and provided, further, that except as otherwise specified as contemplated by Section 301 with respect to such Security, any installment of interest on any Security the Stated Maturity of which installment is on or prior to the Redemption Date shall be payable to the Holder of such Security, or one or more Predecessor Securities, registered as such at the close of business on the related Regular Record Date according to the terms of such Security and subject to the provisions of Section 307.

SECTION 406.    SECURITIES REDEEMED IN PART.

        Upon the surrender of any Security which is to be redeemed only in
part at a Place of Payment therefor (with, if the Company or the Trustee so
requires, due endorsement by, or a written instrument of transfer in form
satisfactory to the Company and the Trustee duly executed by, the Holder thereof
or his attorney duly authorized in writing), the Company shall execute, and the
Trustee shall authenticate and deliver to the Holder of such Security, without
service charge, a new Security or Securities of the same series and Tranche, of
any authorized denomination requested by such Holder and of like tenor and in
aggregate principal amount
<PAGE>

                                   -30-


equal to and in exchange for the unredeemed portion of the principal of the
Security so surrendered.


                               ARTICLE FIVE

                               SINKING FUNDS

SECTION 501.    APPLICABILITY OF ARTICLE.

        The provisions of this Article shall be applicable to any
sinking fund for the retirement of the Securities of any series, or any Tranche
thereof, except as otherwise specified as contemplated by Section 301 for
Securities of such series or Tranche.

        The minimum amount of any sinking fund payment provided for by
the terms of Securities of any series, or any Tranche thereof, is herein
referred to as a "mandatory sinking fund payment", and any payment in excess of
such minimum amount provided for by the terms of Securities of any series, or
any Tranche thereof, is herein referred to as an "optional sinking fund
payment". If provided for by the terms of Securities of any series, or any
Tranche thereof, the cash amount of any sinking fund payment may be subject to
reduction as provided in Section 502. Each sinking fund payment shall be applied
to the redemption of Securities of the series or Tranche in respect of which it
was made as provided for by the terms of such Securities.

SECTION 502.    SATISFACTION OF SINKING FUND PAYMENTS WITH SECURITIES.

        The Company (a) may deliver to the Trustee Outstanding
Securities (other than any previously called for redemption) of a series or
Tranche in respect of which a mandatory sinking fund payment is to be made and
(b) may apply as a credit Securities of such series or Tranche which have been
redeemed either at the election of the Company pursuant to the terms of such
Securities or through the application of permitted optional sinking fund
payments pursuant to the terms of such Securities, in each case in satisfaction
of all or any part of such mandatory sinking fund payment with respect to the
Securities of such series; provided, however, that no Securities shall be
applied in satisfaction of a mandatory sinking fund payment if such Securities
shall have been previously so applied. Securities so applied shall be received
and credited for such purpose by the Trustee at the Redemption Price specified
in such Securities for redemption through operation of the sinking fund and the
amount of such mandatory sinking fund payment shall be reduced accordingly.
<PAGE>

                                   -31-


SECTION 503.    REDEMPTION OF SECURITIES FOR SINKING FUND.

for the Securities of any series, or any Tranche thereof, the Company shall
deliver to the Trustee an Officer's Certificate specifying:

    (a) the amount of the next succeeding mandatory sinking fund
payment for such series or Tranche;

    (b) the amount, if any, of the optional sinking fund payment
to be made together with such mandatory sinking fund payment;

    (c) the aggregate sinking fund payment;

    (d) the portion, if any, of such aggregate sinking fund
payment which is to be satisfied by the payment of cash;

    (e) the portion, if any, of such aggregate sinking fund
payment which is to be satisfied by delivering and crediting Securities
of such series or Tranche pursuant to Section 502 and stating the basis
for such credit and that such Securities have not previously been so
credited, and the Company shall also deliver to the Trustee any
Securities to be so delivered. If the Company shall not deliver such
Officer's Certificate, the next succeeding sinking fund payment for
such series shall be made entirely in cash in the amount of the
mandatory sinking fund payment. Not less than 30 days before each such
sinking fund payment date the Trustee shall select the Securities to be
redeemed upon such sinking fund payment date in the manner specified in
Section 403 and cause notice of the redemption thereof to be given in
the name of and at the expense of the Company in the manner provided in
Section 404. Such notice having been duly given, the redemption of such
Securities shall be made upon the terms and in the manner stated in
Sections 405 and 406.

ARTICLE SIX

COVENANTS

SECTION 601.  PAYMENT OF PRINCIPAL, PREMIUM AND INTEREST.

    The Company shall pay the principal of and premium, if any,
and interest, if any, on the Securities of each series in accordance with the
terms of such Securities and this Indenture.
<PAGE>

-32-

SECTION 602.  MAINTENANCE OF OFFICE OR AGENCY.

    The Company shall maintain in each Place of Payment for the
Securities of each series, or any Tranche thereof, an office or agency where
payment of such Securities shall be made, where the registration of transfer or
exchange of such Securities may be effected and where notices and demands to or
upon the Company in respect of such Securities and this Indenture may be served.
The Company shall give prompt written notice to the Trustee of the location, and
any change in the location, of each such office or agency and prompt notice to
the Holders of any such change in the manner specified in Section 106. If at any
time the Company shall fail to maintain any such required office or agency in
respect of Securities of any series, or any Tranche thereof, or shall fail to
furnish the Trustee with the address thereof, payment of such Securities shall
be made, registration of transfer or exchange thereof may be effected and
notices and demands in respect thereof may be served at the Corporate Trust
Office of the Trustee, and the Company hereby appoints the Trustee as its agent
for all such purposes in any such event.

    The Company may also from time to time designate one or more other

offices or agencies with respect to the Securities of one or more series, or any
Tranche thereof, for any or all of the foregoing purposes and may from time to
time rescind such designations; provided, however, that, unless otherwise
specified as contemplated by Section 301 with respect to the Securities of such
series or Tranche, no such designation or rescission shall in any manner relieve
the Company of its obligation to maintain an office or agency for such purposes
in each Place of Payment for such Securities in accordance with the requirements
set forth above. The Company shall give prompt written notice to the Trustee,
and prompt notice to the Holders in the manner specified in Section 106, of any
such designation or rescission and of any change in the location of any such
other office or agency.

Anything herein to the contrary notwithstanding, any office or
agency required by this Section may be maintained at an office of the Company,
in which event the Company shall perform all functions to be performed at such
office or agency.

SECTION 603.   MONEY FOR SECURITIES PAYMENTS TO BE HELD IN TRUST.

If the Company shall at any time act as its own Paying Agent
with respect to the Securities of any series, or any Tranche thereof, it shall,
on or before each due date of the principal of and premium, if any, and
interest, if any, on any of such Securities, segregate and hold in trust for the
benefit of the Persons entitled thereto a sum sufficient to pay the principal
and premium or interest so becoming due until such sums shall be paid to such
Persons or otherwise disposed of as herein provided. The Company shall promptly
notify the Trustee of any failure by the Company (or any other obligor on such
Securities) to make any payment of principal of or premium, if any, or interest,
if any, on such Securities.
<PAGE>

-33-

Whenever the Company shall have one or more Paying Agents for
the Securities of any series, or any Tranche thereof, it shall, on or before
each due date of the principal of and premium, if any, and interest, if any, on
such Securities, deposit with such Paying Agents sums sufficient (without
duplication) to pay the principal and premium or interest so becoming due, such
sums to be held in trust for the benefit of the Persons entitled to such
principal, premium or interest, and (unless such Paying Agent is the Trustee)
the Company shall promptly notify the Trustee of any failure by it so to act.

The Company shall cause each Paying Agent for the Securities
of any series, or any Tranche thereof, other than the Company or the Trustee, to
execute and deliver to the Trustee an instrument in which such Paying Agent
shall agree with the Trustee, subject to the provisions of this Section, that
such Paying Agent shall:

(a) hold all sums held by it for the payment of the principal
of and premium, if any, or interest, if any, on such Securities in
trust for the benefit of the Persons entitled thereto until such sums
shall be paid to such Persons or otherwise disposed of as herein
provided;

(b) give the Trustee notice of any failure by the Company (or
any other obligor upon such Securities) to make any payment of
principal of or premium, if any, or interest, if any, on such
Securities; and

(c) at any time during the continuance of any such failure,
upon the written request of the Trustee, forthwith pay to the Trustee
all sums so held in trust by such Paying Agent and furnish to the
Trustee such information as it possesses regarding the names and
addresses of the Persons entitled to such sums.

The Company may at any time pay, or by Company Order direct any Paying Agent to pay, to the Trustee all sums held in trust by the Company or such Paying Agent, such sums to be held by the Trustee upon the same trusts as those upon which such sums were held by the Company or such Paying Agent and, if so stated in a Company Order delivered to the Trustee, in accordance with the provisions of Article Seven; and, upon such payment by any Paying Agent to the Trustee, such Paying Agent shall be released from all further liability with respect to such money.

Any money deposited with the Trustee or any Paying Agent, or then held by the Company, in trust for the payment of the principal of and premium, if any, or interest, if any, on any Security and remaining unclaimed for two years after such principal and premium, if any, or interest has become due and payable shall be paid to the Company on Company Request, or, if then held by the Company, shall be discharged from such trust; and, upon such payment or discharge, the Holder of such Security shall, as an unsecured general creditor and not as a Holder of an Outstanding Security, look only to the Company for payment of the amount so due and payable and remaining unpaid, and all liability of the Trustee or such
<PAGE>

-34-

Paying Agent with respect to such trust money, and all liability of the Company as trustee thereof, shall thereupon cease; provided, however, that the Trustee or such Paying Agent, before being required to make any such payment to the Company, may at the expense of the Company cause to be mailed, on one occasion only, notice to such Holder that such money remains unclaimed and that, after a date specified therein, which shall not be less than 30 days from the date of such mailing, any unclaimed balance of such money then remaining will be paid to the Company.

SECTION 604.  CORPORATE EXISTENCE.

Subject to the rights of the Company under Article Eleven, the Company shall do or cause to be done all things necessary to preserve and keep in full force and effect its corporate existence.

SECTION 605.  MAINTENANCE OF PROPERTIES.

The Company shall cause (or, with respect to property owned in common with others, make reasonable effort to cause) all its properties used or useful in the conduct of its business to be maintained and kept in good condition, repair and working order and shall cause (or, with respect to property owned in common with others, make reasonable effort to cause) to be made all necessary repairs, renewals, replacements, betterments and improvements thereof, all as, in the judgment of the Company, may be necessary so that the business carried on in connection therewith may be properly conducted; provided, however, that nothing in this Section shall prevent the Company from discontinuing, or causing the discontinuance of, the operation and maintenance of any of its properties if such discontinuance is, in the judgment of the Company, desirable in the conduct of its business.

SECTION 606.  ANNUAL OFFICER'S CERTIFICATE AS TO COMPLIANCE.

Not later than June 1 in each year, commencing June 1, 1998, the Company shall deliver to the Trustee an Officer's Certificate which need not comply with Section 102, executed by the principal executive officer, the principal financial officer or the principal accounting officer of the Company, as to such officer's knowledge of the Company's compliance with all conditions and covenants under this Indenture, such compliance to be determined without regard to any period of grace or requirement of notice under this Indenture.

SECTION 607.  WAIVER OF CERTAIN COVENANTS.

The Company may omit in any particular instance to comply with

any term, provision or condition set forth in (a) Section 602 or any additional covenant or restriction specified with respect to the Securities of any series, or any Tranche thereof, as contemplated by Section 301, if before the time for such compliance the Holders of a majority in aggregate principal amount of the Outstanding Securities of all series and Tranches with respect to which
<PAGE>

-35-

compliance with Section 602 or such additional covenant or restriction is to be omitted, considered as one class, shall, by Act of such Holders, either waive such compliance in such instance or generally waive compliance with such term, provision or condition and (b) Section 604, 605 or Article Eleven if before the time for such compliance the Holders of a majority in principal amount of Securities Outstanding under this Indenture shall, by Act of such Holders, either waive such compliance in such instance or generally waive compliance with such term, provision or condition; but, in the case of (a) or (b), no such waiver shall extend to or affect such term, provision or condition except to the extent so expressly waived, and, until such waiver shall become effective, the obligations of the Company and the duties of the Trustee in respect of any such term, provision or condition shall remain in full force and effect.

ARTICLE SEVEN

SATISFACTION AND DISCHARGE

SECTION 701.   SATISFACTION AND DISCHARGE OF SECURITIES.

Any Security or Securities, or any portion of the principal amount thereof, shall be deemed to have been paid for all purposes of this Indenture, and the entire indebtedness of the Company in respect thereof shall be deemed to have been satisfied and discharged, if there shall have been irrevocably deposited with the Trustee or any Paying Agent (other than the Company), in trust:

    (a)   money in an amount which shall be sufficient, or

    (b) in the case of a deposit made prior to the Maturity of such Securities or portions thereof, Eligible Obligations, which shall not contain provisions permitting the redemption or other prepayment thereof at the option of the issuer thereof, the princi pal of and the interest on which when due, without any regard to reinvestment thereof, will provide moneys which, together with the money, if any, deposited with or held by the Trustee or such Paying Agent, shall be sufficient, or

    (c)   a combination of (a) or (b) which shall be sufficient,

to pay when due the principal of and premium, if any, and interest, if any, due and to become due on such Securities or portions thereof on or prior to Maturity; provided, however, that in the case of the provision for payment or redemption of less than all the Securities of any series or Tranche, such Securities or portions thereof shall have been selected by the Trustee as provided herein and, in the case of a redemption, the notice requisite to the validity of such redemption shall have been given or irrevocable authority shall have been given by the Company to the Trustee to give such notice, under arrangements satisfactory to the Trustee;
<PAGE>

-36-

and provided, further, that the Company shall have delivered to the Trustee and such Paying Agent:

EFH01435013

(x) if such deposit shall have been made prior to the Maturity of such Securities, a Company Order stating that the money and Eligible Obligations deposited in accordance with this Section shall be held in trust, as provided in Section 703; and

(y) if Eligible Obligations shall have been deposited, an Opinion of Counsel that the obligations so deposited constitute Eligible Obligations and do not contain provisions permitting the redemption or other prepayment at the option of the issuer thereof, and an opinion of an independent public accountant of nationally recognized standing, selected by the Company, to the effect that the requirements set forth in clause (b) above have been satisfied; and

(z) if such deposit shall have been made prior to the Maturity of such Securities, an Officer's Certificate stating the Company's intention that, upon delivery of such Officer's Certificate, its indebtedness in respect of such Securities or portions thereof will have been satisfied and discharged as contemplated in this Section.

Upon the deposit of money or Eligible Obligations, or both, in accordance with this Section, together with the documents required by clauses (x), (y) and (z) above, the Trustee shall, upon receipt of a Company Request, acknowledge in writing that the Security or Securities or portions thereof with respect to which such deposit was made are deemed to have been paid for all purposes of this Indenture and that the entire indebtedness of the Company in respect thereof has been satisfied and discharged as contemplated in this Section. In the event that all of the conditions set forth in the preceding paragraph shall have been satisfied in respect of any Securities or portions thereof except that, for any reason, the Officer's Certificate specified in clause (z) shall not have been delivered, such Securities or portions thereof shall nevertheless be deemed to have been paid for all purposes of this Indenture, and the Holders of such Securities or portions thereof shall nevertheless be no longer entitled to the benefits of this Indenture or of any of the covenants of the Company under Article Six (except the covenants contained in Sections 602 and 603) or any other covenants made in respect of such Securities or portions thereof as contemplated by Section 301, but the indebtedness of the Company in respect of such Securities or portions thereof shall not be deemed to have been satisfied and discharged prior to Maturity for any other purpose, and the Holders of such Securities or portions thereof shall continue to be entitled to look to the Company for payment of the indebtedness represented thereby; and, upon Company Request, the Trustee shall acknowledge in writing that such Securities or portions thereof are deemed to have been paid for all purposes of this Indenture.
<PAGE>

-37-

If payment at Stated Maturity of less than all of the Securities of any series, or any Tranche thereof, is to be provided for in the manner and with the effect provided in this Section, the Security Registrar shall select such Securities, or portions of principal amount thereof, in the manner specified by Section 403 for selection for redemption of less than all the Securities of a series or Tranche.

In the event that Securities which shall be deemed to have been paid for purposes of this Indenture, and, if such is the case, in respect of which the Company's indebtedness shall have been satisfied and discharged, all as provided in this Section do not mature and are not to be redeemed within the 60 day period commencing with the date of the deposit of moneys or Eligible Obligations, as aforesaid, the Company shall, as promptly as practicable, give a notice, in the same manner as a notice of redemption with respect to such

EFH01435014

Securities, to the Holders of such Securities to the effect that such deposit has been made and the effect thereof.

Notwithstanding that any Securities shall be deemed to have been paid for purposes of this Indenture, as aforesaid, the obligations of the Company and the Trustee in respect of such Securities under Sections 304, 305, 306, 404, 503 (as to notice of redemption), 602, 603, 907 and 915 and this Article Seven shall survive.

The Company shall pay, and shall indemnify the Trustee or any Paying Agent with which Eligible Obligations shall have been deposited as provided in this Section against, any tax, fee or other charge imposed on or assessed against such Eligible Obligations or the principal or interest received in respect of such Eligible Obligations, including, but not limited to, any such tax payable by any entity deemed, for tax purposes, to have been created as a result of such deposit.

Anything herein to the contrary notwithstanding, (a) if, at any time after a Security would be deemed to have been paid for purposes of this Indenture, and, if such is the case, the Company's indebtedness in respect thereof would be deemed to have been satisfied or discharged, pursuant to this Section (without regard to the provisions of this paragraph), the Trustee or any Paying Agent, as the case may be, shall be required to return the money or Eligible Obligations, or combination thereof, deposited with it as aforesaid to the Company or its representative under any applicable Federal or State bankruptcy, insolvency or other similar law, such Security shall thereupon be deemed retroactively not to have been paid and any satisfaction and discharge of the Company's indebtedness in respect thereof shall retroactively be deemed not to have been effected, and such Security shall be deemed to remain Outstanding and (b) any satisfaction and discharge of the Company's indebtedness in respect of any Security shall be subject to the provisions of the last paragraph of Section 603.
<PAGE>

-38-

SECTION 702.   SATISFACTION AND DISCHARGE OF INDENTURE.

This Indenture shall upon Company Request cease to be of further effect (except as hereinafter expressly provided), and the Trustee, at the expense of the Company, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture, when

(a)  no Securities remain Outstanding hereunder; and

(b) the Company has paid or caused to be paid all other sums payable hereunder by the Company;

provided, however, that if, in accordance with the last paragraph of Section 701, any Security, previously deemed to have been paid for purposes of this Indenture, shall be deemed retroactively not to have been so paid, this Indenture shall thereupon be deemed retroactively not to have been satisfied and discharged, as aforesaid, and to remain in full force and effect, and the Company shall execute and deliver such instruments as the Trustee shall reasonably request to evidence and acknowledge the same.

Notwithstanding the satisfaction and discharge of this Indenture as aforesaid, the obligations of the Company and the Trustee under Sections 304, 305, 306, 404, 503 (as to notice of redemption), 602, 603, 907 and 915 and this Article Seven shall survive.

Upon satisfaction and discharge of this Indenture as provided in this Section, the Trustee shall assign, transfer and turn over to the Company, subject to the lien provided by Section 907, any and all money, securities and other property then held by the Trustee for the benefit of the

Holders of the Securities other than money and Eligible Obligations held by the Trustee pursuant to Section 703.

SECTION 703.   APPLICATION OF TRUST MONEY.

          Neither the Eligible Obligations nor the money deposited pursuant to Section 701, nor the principal or interest payments on any such Eligible Obligations, shall be with drawn or used for any purpose other than, and shall be held in trust for, the payment of the principal of and premium, if any, and interest, if any, on the Securities or portions of principal amount thereof in respect of which such deposit was made, all subject, however, to the provisions of Section 603; provided, however, that, so long as there shall not have occurred and be continuing an Event of Default, any cash received from such principal or interest payments on such Eligible Obligations, if not then needed for such purpose, shall, to the extent practicable and upon Company Request, be invested in Eligible Obligations of the type described in clause (b) in the first paragraph of Section 701 maturing at such times and in such amounts as shall be sufficient, together with any other moneys and the principal of and interest on any other Eligible Obligations then held by the Trustee, to pay when due the principal of
<PAGE>

                         -39-

and premium, if any, and interest, if any, due and to become due on such Securities or portions thereof on and prior to the Maturity thereof, and interest earned from such reinvestment shall be paid over to the Company as received, free and clear of any trust, lien or pledge under this Indenture except the lien provided by Section 907; and provided, further, that, so long as there shall not have occurred and be continuing an Event of Default, any moneys held in accordance with this Section on the Maturity of all such Securities in excess of the amount required to pay the principal of and premium, if any, and interest, if any, then due on such Securities shall be paid over to the Company free and clear of any trust, lien or pledge under this Indenture except the lien provided by Section 907; and provided, further, that if an Event of Default shall have occurred and be continuing, moneys to be paid over to the Company pursuant to this Section shall be held until such Event of Default shall have been waived or cured.

                    ARTICLE EIGHT

               EVENTS OF DEFAULT; REMEDIES

SECTION 801.   EVENTS OF DEFAULT.

          "Event of Default", wherever used herein with respect to Securities of any series, means any one of the following events:

          (a) failure to pay interest, if any, on any Security of such series within 30 days after the same becomes due and payable; or

          (b) failure to pay the principal of or premium, if any, on any Security of such series at its Maturity; or

          (c) failure to perform or breach of any covenant or warranty of the Company in this Indenture (other than a covenant or warranty a default in the performance of which or breach of which is elsewhere in this Section specifically dealt with or which has expressly been included in this Indenture solely for the benefit of one or more series of Securities other than such series) for a period of 90 days after there has been given, by registered or certified mail, to the Company by the Trustee, or to the Com pany and the Trustee by the Holders of at least 33% in principal amount of the Outstanding Securities of such series, a written notice specifying such default or breach and

requiring it to be remedied and stating that such notice is a "Notice
of Default" hereunder, unless the Trustee, or the Trustee and the
Holders of a principal amount of Securities of such series not less
than the principal amount of Securities the Holders of which gave such
notice, as the case may be, shall agree in writing to an extension of
such period prior to its expiration; provided, however, that the
Trustee, or the Trustee and the Holders of such principal amount of
Securities of such series, as the case may

<PAGE>

                                     -40-


be, shall be deemed to have agreed to an extension of such period if
corrective action is initiated by the Company within such period and is
being diligently pursued; or

          (d) the entry by a court having jurisdiction in the premises
of (1) a decree or order for relief in respect of the Company in an
involuntary case or proceeding under any applicable Federal or State
bankruptcy, insolvency, reorganization or other similar law or (2) a
decree or order adjudging the Company a bankrupt or insolvent, or
approving as properly filed a petition by one or more Persons other
than the Company seeking reorganization, arrangement, adjustment or
composition of or in respect of the Company under any applicable
Federal or State law, or appointing a custodian, receiver, liquidator,
assignee, trustee, sequestrator or other similar official for the
Company or for any substantial part of its property, or ordering the
winding up or liquidation of its affairs, and any such decree or order
for relief or any such other decree or order shall have remained
unstayed and in effect for a period of 90 consecutive days; or

          (e) the commencement by the Company of a voluntary case or
proceeding under any applicable Federal or State bankruptcy,
insolvency, reorganization or other similar law or of any other case or
proceeding to be adjudicated a bankrupt or insolvent, or the consent by
it to the entry of a decree or order for relief in respect of the
Company in a case or proceeding under any applicable Federal or State
bankruptcy, insolvency, reorganization or other similar law or to the
commencement of any bankruptcy or insolvency case or proceeding against
it, or the filing by it of a petition or answer or consent seeking
reorganization or relief under any applicable Federal or State law, or
the consent by it to the filing of such petition or to the appointment
of or taking possession by a custodian, receiver, liquidator, assignee,
trustee, sequestrator or similar official of the Company or of any
substantial part of its property, or the making by it of an assignment
for the benefit of creditors, or the ad mission by it in writing of its
inability to pay its debts generally as they become due, or the
authorization of such action by the Board of Directors; or

          (f) any other Event of Default specified with respect to
Securities of such series.

SECTION 802.   ACCELERATION OF MATURITY; RESCISSION AND ANNULMENT.

          If an Event of Default due to the default in payment of
principal of, or interest on, any series of Securities or due to the default in
the performance or breach of any other covenant or warranty of the Company
applicable to the Securities of such series but not applicable to all
Outstanding Securities shall have occurred and be continuing, either the Trustee
or the Holders of not less than 33% in principal amount of the Securities of
such series may then declare the principal amount (or, if any of the Securities
of such series are Discount Securities, such portion of the principal amount as
may be specified in the terms thereof as
<PAGE>

-41-

contemplated by Section 301) of all Securities of such series and interest accrued thereon to be due and payable immediately. If an Event of Default due to default in the performance of any other of the covenants or agreements herein applicable to all Outstanding Securities or an Event of Default specified in Section 801(d) or (e) shall have occurred and be continuing, either the Trustee or the Holders of not less than 33% in principal amount of all Securities then Outstanding (considered as one class), and not the Holders of the Securities of any one of such series, may declare the principal of all Securities and interest accrued thereon to be due and payable immediately. As a consequence of each such declaration (herein referred to as a declaration of acceleration) with respect to Securities of any series, the principal amount (or portion thereof in the case of Discount Securities) of such Securities and interest accrued thereon shall become due and payable immediately.

At any time after such a declaration of acceleration with respect to Securities of any series shall have been made and before a judgment or decree for payment of the money due shall have been obtained by the Trustee as hereinafter in this Article provided, the Event or Events of Default giving rise to such declaration of acceleration shall, without further act, be deemed to have been waived, and such declaration and its consequences shall, without further act, be deemed to have been rescinded and annulled, if

(a) the Company shall have paid or deposited with the Trustee a sum sufficient to pay

(1) all overdue interest on all Securities of such series;

(2) the principal of and premium, if any, on any Securities of such series which have become due otherwise than by such declaration of acceleration and interest thereon at the rate or rates prescribed therefor in such Securities;

(3) to the extent that payment of such interest is lawful, interest upon overdue interest, if any, at the rate or rates prescribed therefor in such Securities;

(4) all amounts due to the Trustee under Section 907; and

(b) any other Event or Events of Default with respect to Securities of such series, other than the nonpayment of the principal of Securities of such series which shall have become due solely by such declaration of acceleration, shall have been cured or waived as provided in Section 813.

No such rescission shall affect any subsequent Event of Default or impair any right consequent thereon.
<PAGE>

-42-

SECTION 803.   COLLECTION OF INDEBTEDNESS AND SUITS FOR ENFORCEMENT BY TRUSTEE.

If an Event of Default described in clause (a) or (b) of Section 801 shall have occurred and be continuing, the Company shall, upon demand of the Trustee, pay to it, for the benefit of the Holders of the Securities of the series with respect to which such Event of Default shall have occurred, the whole amount then due and payable on such Securities for principal and premium, if any, and interest, if any, and, to the extent permitted by law, interest on any overdue principal and interest, at the rate or rates prescribed therefor in such Securities, and, in addition thereto, such further amount as

shall be sufficient to cover any amounts due to the Trustee under Section 907.

If the Company shall fail to pay such amounts forthwith upon such demand, the Trustee, in its own name and as trustee of an express trust, may institute a judicial proceeding for the collection of the sums so due and unpaid, may prosecute such proceeding to judgment or final decree and may enforce the same against the Company or any other obligor upon such Securities and collect the moneys adjudged or decreed to be payable in the manner provided by law out of the property of the Company or any other obligor upon such Securities, wherever situated.

If an Event of Default with respect to Securities of any series shall have occurred and be continuing, the Trustee may in its discretion proceed to protect and enforce its rights and the rights of the Holders of Securities of such series by such appropriate judicial proceedings as the Trustee shall deem most effectual to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any other proper remedy.

SECTION 804.  TRUSTEE MAY FILE PROOFS OF CLAIM.

In case of the pendency of any receivership, insolvency, liquidation, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial proceeding relative to the Company or any other obligor upon the Securities or the property of the Company or of such other obligor or their creditors, the Trustee (irrespective of whether the principal of the Securities shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Trustee shall have made any demand on the Company for the payment of overdue principal or interest) shall be entitled and empowered, by intervention in such proceeding or otherwise,

(a) to file and prove a claim for the whole amount of principal, premium, if any, and interest, if any, owing and unpaid in respect of the Securities and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for amounts due to the Trustee under Section 907) and of the Holders allowed in such judicial proceeding, and

<PAGE>

-43-

(b) to collect and receive any moneys or other property payable or deliverable on any such claims and to distribute the same;

and any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Holder to make such payments to the Trustee and, in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay to the Trustee any amounts due it under Section 907.

Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan of reorganization, arrangement, adjustment or composition affecting the Securities or the rights of any Holder thereof or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding.

SECTION 805.  TRUSTEE MAY ENFORCE CLAIMS WITHOUT POSSESSION OF SECURITIES.

All rights of action and claims under this Indenture or the Securities may be prosecuted and enforced by the Trustee without the possession of any of the Securities or the production thereof in any proceeding relating thereto, and any such proceeding instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment shall,

EFH01435019

after provision for the payment of the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, be for the ratable benefit of the Holders in respect of which such judgment has been recovered.

SECTION 806.  APPLICATION OF MONEY COLLECTED.

          Any money collected by the Trustee pursuant to this Article shall be applied in the following order, at the date or dates fixed by the Trustee and, in case of the distribution of such money on account of principal or premium, if any, or interest, if any, upon pre sentation of the Securities in respect of which or for the benefit of which such money shall have been collected and the notation thereon of the payment if only partially paid and upon surrender thereof if fully paid:

          FIRST: To the payment of all amounts due the Trustee under Section 907;

          SECOND: To the payment of the amounts then due and unpaid upon the Securities for principal of and premium, if any, and interest, if any, in respect of which or for the benefit of which such money has been collected, ratably, without preference or priority of any kind, according to the amounts due and payable on such Securities for principal, premium, if any, and interest, if any, respectively; and

<PAGE>

                              -44-

          THIRD: To the payment of the remainder, if any, to the Company or to whomsoever may be lawfully entitled to receive the same or as a court of competent jurisdiction may direct.

SECTION 807.  LIMITATION ON SUITS.

          No Holder shall have any right to institute any proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless:

          (a) such Holder shall have previously given written notice to the Trustee of a continuing Event of Default with respect to the Securities of such series;

          (b) the Holders of a majority in aggregate principal amount of the Outstanding Securities of all series in respect of which an Event of Default shall have occurred and be continuing, considered as one class, shall have made written request to the Trustee to institute proceedings in respect of such Event of Default in its own name as Trustee hereunder;

          (c) such Holder or Holders shall have offered to the Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred in compliance with such request;

          (d) the Trustee for 60 days after its receipt of such notice, request and offer of indemnity shall have failed to institute any such proceeding; and

          (e) no direction inconsistent with such written request shall have been given to the Trustee during such 60-day period by the Holders of a majority in aggregate principal amount of the Outstanding Securities of all series in respect of which an Event of Default shall have occurred and be continuing, considered as one class;

it being understood and intended that no one or more of such Holders shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture to affect, disturb or prejudice the rights of any other of

such Holders or to obtain or to seek to obtain priority or preference over any other of such Holders or to enforce any right under this Indenture, except in the manner herein provided and for the equal and ratable benefit of all of such Holders.

SECTION 808.   UNCONDITIONAL RIGHT OF HOLDERS TO RECEIVE PRINCIPAL,
               PREMIUM AND INTEREST.

          Notwithstanding any other provision in this Indenture, the Holder of any Security shall have the right, which is absolute and unconditional, to receive payment of the
<PAGE>

                                   -45-

principal of and premium, if any, and (subject o Section 307) interest, if any, on such Security on the Stated Maturity or Maturities expressed in such Security (or, in the case of redemption, on the Redemption Date) and to institute suit for the enforcement of any such payment, and such rights shall not be impaired without the consent of such Holder.

SECTION 809.   RESTORATION OF RIGHTS AND REMEDIES.

          If the Trustee or any Holder has instituted any proceeding to enforce any right or remedy under this Indenture and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to the Trustee or to such Holder, then and in every such case, subject to any determination in such proceeding, the Company, and Trustee and such Holder shall be restored severally and respectively to their former positions hereunder and thereafter all rights and remedies of the Trustee and such Holder shall continue as though no such proceeding had been instituted.

SECTION 810.   RIGHTS AND REMEDIES CUMULATIVE.

          Except as otherwise provided in the last paragraph of Section 306, no right or remedy herein conferred upon or reserved to the Trustee or to the Holders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

SECTION 811.   DELAY OR OMISSION NOT WAIVER.

          No delay or omission of the Trustee or of any Holder to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Article or by law to the Trustee or to the Holders may be exercised from time to time, and as often as may be deemed expedient, by the Trustee or by the Holders, as the case may be.

SECTION 812.   CONTROL BY HOLDERS OF SECURITIES.

          If an Event of Default shall have occurred and be continuing in respect of a series of Securities, the Holders of a majority in principal amount of the Outstanding Securities of such series shall have the right to direct the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred on the Trustee, with respect to the Securities of such series; provided, however, that if an Event of Default shall have occurred and be continuing with respect to more than one series of Securities, the Holders of a majority in aggregate principal amount of the Outstanding
<PAGE>

Securities of all such series, considered as one class, shall have the right to make such direction, and not the Holders of the Securities of any one of such series; and provided, further, that such direction shall not be in conflict with any rule of law or with this Indenture. The Trustee may take any other action, deemed proper by the Trustee, which is not inconsistent with any such direction. Before proceeding to exercise any right or power hereunder at the direction of such Holders, the Trustee shall be entitled to receive from such Holders reasonable security or indemnity against the costs, expenses and liabilities which might be incurred by it in compliance with any such direction.

SECTION 813.  WAIVER OF PAST DEFAULTS.

The Holders of not less than a majority in principal amount of the Outstanding Securities of any series may on behalf of the Holders of all the Securities of such series waive any past default hereunder with respect to such series and its consequences, except a default

(a) in the payment of the principal of or premium, if any, or interest, if any, on any Security of such series, or

(b) in respect of a covenant or provision hereof which under Section 1202 cannot be modified or amended without the consent of the Holder of each Outstanding Security of such series affected.

Upon any such waiver, such default shall cease to exist, and any and all Events of Default arising therefrom shall be deemed to have been cured, for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other default or impair any right consequent thereon.

SECTION 814.  UNDERTAKING FOR COSTS.

The Company and the Trustee agree, and each Holder by his acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Trustee for any action taken, suffered or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section shall not apply to any suit instituted by the Company, to any suit instituted by the Trustee, to any suit instituted by any Holder, or group of Holders, holding in the aggregate more than 10% in aggregate principal amount of the Outstanding Securities of all series in respect of which such suit may be brought, considered as one class, or to any suit instituted by any Holder for the enforcement of the payment of the principal of or premium, if any, or interest, if any, on any Security on or after
<PAGE>

-47-

the Stated Maturity or Maturities expressed in such Security (or, in the case of redemption, on or after the Redemption Date).

SECTION 815.  WAIVER OF STAY OR EXTENSION LAWS.

The Company covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, which may affect the covenants or the performance of this Indenture; and the Company (to the extent

that it may lawfully do so) hereby expressly waives all benefit or advantage of
any such law and covenants that it will not hinder, delay or impede the
execution of any power herein granted to the Trustee, but will suffer and permit
the execution of every such power as though no such law had been enacted.


ARTICLE NINE

THE TRUSTEE

SECTION 901.  CERTAIN DUTIES AND RESPONSIBILITIES.

(a) The Trustee shall have and be subject to all the duties
and responsibilities specified with respect to an indenture trustee in
the Trust Indenture Act and no implied covenants or obligations shall
be read into this Indenture against the Trustee. For purposes of
Sections 315(a) and 315(c) of the Trust Indenture Act, the term
"default" is hereby defined as an Event of Default which has occurred
and is continuing.

(b) No provision of this Indenture shall require the Trustee
to expend or risk its own funds or otherwise incur any financial
liability in the performance of any of its duties hereunder, or in the
exercise of any of its rights or powers, if it shall have reasonable
grounds for believing that repayment of such funds or adequate
indemnity against such risk or liability is not reasonably assured to
it.

(c) Notwithstanding anything contained in this Indenture to
the contrary, the duties and responsibilities of the Trustee under this
Indenture shall be subject to the protections, exculpations and
limitations on liability afforded to the Trustee under the provisions
of the Trust Indenture Act.

(d) Whether or not therein expressly so provided, every
provision of this Indenture relating to the conduct or affecting the
liability of or affording protection to the Trustee shall be subject to
the provisions of this Section.

<PAGE>

-48-


SECTION 902.  NOTICE OF DEFAULTS.

The Trustee shall give notice of any default hereunder with
respect to the Securities of any series to the Holders of Securities of such
series in the manner and to the extent required to do so by the Trust Indenture
Act, unless such default shall have been cured or waived; provided, however,
that in the case of any default of the character specified in Section 801(c), no
such notice to Holders shall be given until at least 45 days after the
occurrence thereof. For the purpose of this Section, the term "default" means
any event which is, or after notice or lapse of time, or both, would become, an
Event of Default.

SECTION 903.  CERTAIN RIGHTS OF TRUSTEE.

Subject to the provisions of Section 901 and to the applicable
provisions of the Trust Indenture Act:

(a) the Trustee may rely and shall be protected in acting or
refraining from acting in good faith upon any resolution, certificate,
statement, instrument, opinion, report, notice, request, direction,
consent, order, bond, debenture, note, other evidence of indebtedness
or other paper or document reasonably believed by it to be genuine and
to have been signed or presented by the proper party or parties;

(b) any request or direction of the Company mentioned herein shall be sufficiently evidenced by a Company Request or Company Order, or as otherwise expressly provided herein, and any resolution of the Board of Directors may be sufficiently evidenced by a Board Resolution;

(c) whenever in the administration of this Indenture the Trustee shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Trustee (unless other evidence be herein specifically prescribed) may, in the absence of bad faith on its part, rely upon an Officer's Certificate;

(d) the Trustee may consult with counsel and the written advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon;

(e) the Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request or direction of any Holder pursuant to this Indenture, unless such Holder shall have offered to the Trustee reasonable security or indemnity against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction;

<PAGE>

-49-

(f) the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document, but the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit, and, if the Trustee shall determine to make such further inquiry or investigation, it shall (subject to applicable legal requirements) be entitled to examine, during normal business hours, the books, records and premises of the Company, personally or by agent or attorney;

(g) the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys, and the Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder; and

(h) the Trustee shall not be charged with knowledge of any default or Event of Default, as the case may be, with respect to the Securities of any series for which it is acting as Trustee unless either (1) a Responsible Officer of the Trustee shall have actual knowledge of the default or Event of Default, as the case may be, or (2) written notice of such default or Event of Default, as the case may be, shall have been given to the Trustee by the Company, any other obligor on such Securities or by any Holder of such Securities.

SECTION 904.  NOT RESPONSIBLE FOR RECITALS OR ISSUANCE OF SECURITIES.

The recitals contained herein and in the Securities (except the Trustee's certificates of authentication) shall be taken as the statements of the Company, and neither the Trustee nor any Authenticating Agent assumes responsibility for their correctness. The Trustee makes no representations as to the validity or sufficiency of this Indenture or of the Securities. Neither the Trustee nor any Authenticating Agent shall be accountable for the use or application by the Company of Securities or the proceeds thereof.

SECTION 905.   MAY HOLD SECURITIES.

          Each of the Trustee, any Authenticating Agent, any Paying
Agent, any Security Registrar or any other agent of the Company, in its
individual or any other capacity, may become the owner or pledgee of Securities
and, subject to Sections 908 and 913, may otherwise deal with the Company with
the same rights it would have if it were not the Trustee, Authenticating Agent,
Paying Agent, Security Registrar or such other agent.
<PAGE>

                                   -50-


SECTION 906.   MONEY HELD IN TRUST.

          Money held by the Trustee in trust hereunder need not be
segregated from other funds, except to the extent required by law. The Trustee
shall be under no liability for interest on any money received by it hereunder
except as expressly provided herein or otherwise agreed with, and for the sole
benefit of, the Company.

SECTION 907.   COMPENSATION AND REIMBURSEMENT.

          The Company shall

          (a) pay to the Trustee from time to time reasonable
compensation for all services rendered by it hereunder (which
compensation shall not be limited by any provision of law in regard to
the compensation of a trustee of an express trust);

          (b) except as otherwise expressly provided herein, reimburse
the Trustee upon its request for all reasonable expenses, disbursements
and advances reasonably incurred or made by the Trustee in accordance
with any provision of this Indenture (including the reasonable
compensation and the expenses and disbursements of its agents and
counsel), except to the extent that any such expense, disbursement or
advance may be attributable to the Trustee's negligence, wilful
misconduct or bad faith; and

          (c) indemnify the Trustee for, and hold it harmless from and
against, any loss, liability or expense reasonably incurred by it
arising out of or in connection with the acceptance or administration
of the trust or trusts hereunder or the performance of its duties
hereunder, including the reasonable costs and expenses of defending
itself against any claim or liability in connection with the exercise
or performance of any of its powers or duties hereunder, except to the
extent any such loss, liability or expense may be attributable to its
negligence, wilful misconduct or bad faith.

          As security for the performance of the obligations of the
Company under this Section, the Trustee shall have a lien prior to the
Securities upon all property and funds held or collected by the Trustee as such
other than property and funds held in trust under Section 703 (except as
otherwise provided in Section 703). "Trustee" for purposes of this Section shall
include any predecessor Trustee; provided, however, that the negligence, wilful
misconduct or bad faith of any Trustee hereunder shall not affect the rights of
any other Trustee hereunder.

          When the Trustee incurs expenses or renders services in
connection with an Event of Default specified in Section 801(d) or Section
801(c), the expenses (including the reasonable charges and expenses of its
counsel) and the compensation for the services are intended to constitute
expenses of administration under any applicable Federal or State bankruptcy,
insolvency or other similar law.
<PAGE>

-51-

SECTION 908.    DISQUALIFICATION; CONFLICTING INTERESTS.

If the Trustee shall have or acquire any conflicting interest within the meaning of the Trust Indenture Act, it shall either eliminate such conflicting interest or resign to the extent, in the manner and with the effect, and subject to the conditions, provided in the Trust Indenture Act and this Indenture. For purposes of Section 310(b)(1) of the Trust Indenture Act and to the extent permitted thereby, the Trustee, in its capacity as trustee in respect of the Securities of any series, shall not be deemed to have a conflicting interest arising from its capacity as trustee in respect of the Securities of any other series.

SECTION 909.    CORPORATE TRUSTEE REQUIRED; ELIGIBILITY.

There shall at all times be a Trustee hereunder which shall be

(a) a corporation organized and doing business under the laws of the United States, any State or Territory thereof or the District of Columbia, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $50,000,000 and subject to supervision or examination by Federal or State authority, or

(b) if and to the extent permitted by the Commission by rule, regulation or order upon application, a corporation or other Person organized and doing business under the laws of a foreign government, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $50,000,000 or the Dollar equivalent of the applicable foreign currency and subject to supervision or examination by authority of such foreign government or a political subdivision thereof substantially equivalent to supervision or examination applicable to United States institutional trustees,

and, in either case, qualified and eligible under this Article and the Trust Indenture Act. If such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of such supervising or examining authority, then for the purposes of this Section, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. If at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section, it shall resign immediately in the manner and with the effect hereinafter specified in this Article.

SECTION 910.    RESIGNATION AND REMOVAL; APPOINTMENT OF SUCCESSOR.

(a) No resignation or removal of the Trustee and no appointment of a successor Trustee pursuant to this Article shall become effective until the acceptance of appointment by the successor Trustee in accordance with the applicable requirements of Section 911.

<PAGE>

-52-

(b) The Trustee may resign at any time with respect to the Securities of one or more series by giving written notice thereof to the Company. If the instrument of acceptance by a successor Trustee required by Section 911 shall not have been delivered to the Trustee within 30 days after the giving of such notice of resignation, the resigning Trustee may petition any court of competent jurisdiction for the appointment of a successor Trustee with respect to the Securities of such series.

EFH01435026

(c) The Trustee may be removed at any time with respect to the Securities of any series by Act of the Holders of a majority in principal amount of the Outstanding Securities of such series delivered to the Trustee and to the Company.

(d)  If at any time:

(1) the Trustee shall fail to comply with Section 908 after written request therefor by the Company or by any Holder who has been a bona fide Holder for at least six months, or

(2) the Trustee shall cease to be eligible under Section 909 and shall fail to resign after written request therefor by the Company or by any such Holder, or

(3) the Trustee shall become incapable of acting or shall be adjudged a bank rupt or insolvent or a receiver of the Trustee or of its property shall be appointed or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation,

then, in any such case, (x) the Company by a Board Resolution may remove the Trustee with respect to all Securities or (y) subject to Section 814, any Holder who has been a bona fide Holder for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee with respect to all Securities and the appointment of a successor Trustee or Trustees.

(e) If the Trustee shall resign, be removed or become incapable of acting, or if a vacancy shall occur in the office of Trustee for any cause (other than as contemplated in clause (y) in subsection (d) of this Section), with respect to the Securities of one or more series, the Company, by a Board Resolution, shall promptly appoint a successor Trustee or Trustees with respect to the Securities of that or those series (it being understood that any such successor Trustee may be appointed with respect to the Securities of one or more or all of such series and that at any time there shall be only one Trustee with respect to the Securities of any particular series) and shall comply with the applicable requirements of Section 911. If, within one year after such resignation, removal or incapability, or the occurrence of such vacancy, a successor Trustee with respect to the Securities of any series shall be appointed by Act of the Holders of a majority in principal amount of the Outstanding Securities of such

<PAGE>

-53-

series delivered to the Company and the retiring Trustee, the successor Trustee so appointed shall, forthwith upon its acceptance of such appointment in accordance with the applicable requirements of Section 911, become the successor Trustee with respect to the Securities of such series and to that extent supersede the successor Trustee ap pointed by the Company. If no successor Trustee with respect to the Securities of any series shall have been so appointed by the Company or the Holders and accepted appointment in the manner required by Section 911, any Holder who has been a bona fide Holder of a Security of such series for at least six months may, on behalf of itself and all others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Trustee with respect to the Securities of such series.

(f) So long as no event which is, or after notice or lapse of

time, or both, would become, an Event of Default shall have occurred
and be continuing, and except with respect to a Trustee appointed by
Act of the Holders of a majority in principal amount of the
Outstanding Securities pursuant to subsection (e) of this Section, if
the Company shall have delivered to the Trustee (i) a Board
Resolution appointing a successor Trustee, effective as of a date
specified therein, and (ii) an instrument of acceptance of such
appointment, effective as of such date, by such successor Trustee in
accordance with Section 911, the Trustee shall be deemed to have
resigned as contemplated in subsection (b) of this Section, the
successor Trustee shall be deemed to have been appointed by the
Company pursuant to subsection (e) of this Section and such
appointment shall be deemed to have been accepted as contemplated in
Section 911, all as of such date, and all other provisions of this
Section and Section 911 shall be applicable to such resignation,
appointment and acceptance except to the extent inconsistent with
this subsection (f).

        (g) The Company (or, should the Company fail so to act
promptly, the successor trustee at the expense of the Company) shall
give notice of each resignation and each removal of the Trustee with
respect to the Securities of any series and each appointment of a
successor Trustee with respect to the Securities of any series by
mailing written notice of such event by first-class mail, postage
prepaid, to all Holders of such series as their names
and addresses appear in the Security Register. Each notice shall
include the name of the successor Trustee with respect to the
Securities of such series and the address of its corporate trust
office.

SECTION 911.   ACCEPTANCE OF APPOINTMENT BY SUCCESSOR.

        (a) In case of the appointment hereunder of a successor
Trustee with respect to the Securities of all series, every such
successor Trustee so appointed shall execute, acknowledge and deliver
to the Company and to the retiring Trustee an instrument accepting
such appointment, and thereupon the resignation or removal of the
retiring Trustee shall become effective and such successor Trustee,
without any further act, deed or conveyance, shall become vested with
all the rights, powers, trusts and duties

<PAGE>

                            -54-


of the retiring Trustee; but, on the request of the Company or the
successor Trustee, such retiring Trustee shall, upon payment of all
sums owed to it, execute and deliver an instrument transferring to
such successor Trustee all the rights, powers and trusts of the
retiring Trustee and shall duly assign, transfer and deliver to such
successor Trustee all property and money held by such retiring
Trustee hereunder.

        (b) In case of the appointment hereunder of a successor
Trustee with respect to the Securities of one or more (but not all)
series, the Company, the retiring Trustee and each successor Trustee
with respect to the Securities of one or more series shall execute
and deliver an indenture supplemental hereto wherein each successor
Trustee shall accept such appointment and which (1) shall contain
such provisions as shall be necessary or desirable to transfer and
confirm to, and to vest in, each successor Trustee all the rights,
powers, trusts and duties of the retiring Trustee with respect to the
Securities of that or those series to which the appointment of such
successor Trustee relates, (2) if the retiring Trustee is not
retiring with respect to all Securities, shall contain such
provisions as shall be deemed necessary or desirable to confirm that

all the rights, powers, trusts and duties of the retiring Trustee with respect to the Securities of that or those series as to which the retiring Trustee is not retiring shall continue to be vested in the retiring Trustee and (3) shall add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one Trustee, it being understood that nothing herein or in such supplemental indenture shall constitute such Trustees co-trustees of the same trust and that each such Trustee shall be trustee of a trust or trusts hereunder separate and apart from any trust or trusts hereunder administered by any other such Trustee; and upon the execution and delivery of such supplemental indenture the resignation or removal of the retiring Trustee shall become effective to the extent provided therein and each such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee with respect to the Securities of that or those series to which the appointment of such suc cessor Trustee relates; but, on request of the Company or any successor Trustee, such retiring Trustee, upon payment of all sums owed to it, shall duly assign, transfer and deliver to such successor Trustee all property and money held by such retiring Trustee hereunder with respect to the Securities of that or those series to which the appointment of such successor Trustee relates.

(c) Upon request of any such successor Trustee, the Company shall execute any instruments which fully vest in and confirm to such successor Trustee all such rights, powers and trusts referred to in subsection (a) or (b) of this Section, as the case may be.

(d) No successor Trustee shall accept its appointment unless at the time of such acceptance such successor Trustee shall be qualified and eligible under this Article.

<PAGE>

-55-

SECTION 912.   MERGER, CONVERSION, CONSOLIDATION OR SUCCESSION TO BUSINESS.

Any corporation into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to all or substantially all the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder, provided such corporation shall be otherwise qualified and eligible under this Article, without the execution or filing of any paper or any further act on the part of any of the parties hereto. In case any Securities shall have been authenticated, but not delivered, by the Trustee then in office, any successor by merger, conversion or consolidation to such authenticating Trustee may adopt such authentication and deliver the Securities so authenticated with the same effect as if such successor Trustee had itself authenticated such Securities.

SECTION 913.   PREFERENTIAL COLLECTION OF CLAIMS AGAINST COMPANY.

If the Trustee shall be or become a creditor of the Company or any other obligor upon the Securities (other than by reason of a relationship described in Section 311(b) of the Trust Indenture Act), the Trustee shall be subject to any and all applicable provisions of the Trust Indenture Act regarding the collection of claims against the Company or such other obligor. For purposes of Section 311(b) of the Trust Indenture Act:

(a) the term "cash transaction" means any transaction in which full payment for goods or securities sold is made within seven days after delivery of the goods or securities in currency or in checks or other orders drawn upon banks or bankers and payable upon demand;

      (b) the term "self-liquidating paper" means any draft, bill of exchange, acceptance or obligation which is made, drawn, negotiated or incurred by the Company for the purpose of financing the purchase, processing, manufacturing, shipment, storage or sale of goods, wares or merchandise and which is secured by documents evidencing title to, possession of, or a lien upon, the goods, wares or merchandise or the receivables or proceeds arising from the sale of the goods, wares or merchandise previously constituting the security, provided the security is received by the Trustee simultaneously with the creation of the creditor relationship with the Company arising from the making, drawing, negotiating or incurring of the draft, bill of exchange, acceptance or obligation.

SECTION 914.   CO-TRUSTEES AND SEPARATE TRUSTEES.

      At any time or times, for the purpose of meeting the legal requirements of any applicable jurisdiction, the Company and the Trustee shall have power to appoint, and, upon the written request of the Trustee or of the Holders of at least 33% in principal amount of the Securities then Outstanding, the Company shall for such purpose join with the Trustee in the
<PAGE>

-56-

execution and delivery of all instruments and agreements necessary or proper to appoint, one or more Persons approved by the Trustee either to act as co-trustee, jointly with the Trustee, or to act as separate trustee, in either case with such powers as may be provided in the instrument of appointment, and to vest in such Person or Persons, in the capacity aforesaid, any property, title, right or power deemed necessary or desirable, subject to the other provisions of this Section. If the Company does not join in such appointment within 15 days after the receipt by it of a request so to do, or if an Event of Default shall have occurred and be continuing, the Trustee alone shall have power to make such appointment.

      Should any written instrument or instruments from the Company be required by any co-trustee or separate trustee so appointed to more fully confirm to such co-trustee or separate trustee such property, title, right or power, any and all such instruments shall, on request, be executed, acknowledged and delivered by the Company.

      Every co-trustee or separate trustee shall, to the extent permitted by law, but to such extent only, be appointed subject to the following conditions:

      (a) the Securities shall be authenticated and delivered, and all rights, powers, duties and obligations hereunder in respect of the custody of securities, cash and other personal property held by, or required to be deposited or pledged with, the Trustee hereunder, shall be exercised solely, by the Trustee;

      (b) the rights, powers, duties and obligations hereby conferred or imposed upon the Trustee in respect of any property covered by such appointment shall be conferred or imposed upon and exercised or performed either by the Trustee or by the Trustee and such co-trustee or separate trustee jointly, as shall be provided in the instrument appointing such co-trustee or separate trustee, except to the extent that under any law of any jurisdiction in which any particular act is to be performed, the Trustee shall be incompetent or unqualified to perform such act, in which event such rights, powers, duties and obligations shall be exercised and performed by such co-trustee or separate trustee;

      (c) the Trustee at any time, by an instrument in writing

EFH01435030

executed by it, with the concurrence of the Company, may accept the resignation of, or remove any co-trustee or separate trustee appointed under this Section, and, if an Event of Default shall have occurred and be continuing, the Trustee shall have power to accept the resignation of, or remove, any such co-trustee or separate trustee without the concurrence of the Company. Upon the written request of the Trustee, the Company shall join with the Trustee in the execution and delivery of all instruments and agreements necessary or proper to effectuate such resignation or removal. A successor to any co-trustee or separate trustee so resigned or removed may be appointed in the manner provided in this Section;

<PAGE>

-57-

(d) no co-trustee or separate trustee hereunder shall be personally liable by reason of any act or omission of the Trustee, or any other such trustee hereunder; and

(e) any Act of Holders delivered to the Trustee shall be deemed to have been delivered to each such co-trustee and separate trustee.

SECTION 915.   APPOINTMENT OF AUTHENTICATING AGENT.

The Trustee may appoint an Authenticating Agent or Agents with respect to the Securities of one or more series, or Tranche thereof, which shall be authorized to act on behalf of the Trustee to authenticate Securities of such series or Tranche issued upon original issuance and upon exchange, registration of transfer or partial redemption thereof or pursuant to Section 306, and Securities so authenticated shall be entitled to the benefits of this Indenture and shall be valid and obligatory for all purposes as if authenticated by the Trustee hereunder. Wherever reference is made in this Indenture to the authentication and delivery of Securities by the Trustee or the Trustee's certificate of authentication, such reference shall be deemed to include authentication and delivery on behalf of the Trustee by an Authenticating Agent and a certificate of authentication executed on behalf of the Trustee by an Authenticating Agent. Each Authenticating Agent shall be acceptable to the Company and shall at all times be a corporation organized and doing business under the laws of the United States, any State or territory thereof or the District of Columbia, authorized under such laws to act as Authenticating Agent, having a combined capital and surplus of not less than $50,000,000 and subject to supervision or examination by Federal or State authority. If such Authenticating Agent publishes reports of condition at least annually, pursuant to law or to the requirements of said supervising or examining authority, then for the purposes of this Section, the combined capital and surplus of such Authenticating Agent shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. If at any time an Authenticating Agent shall cease to be eligible in accordance with the provisions of this Section, such Authenticating Agent shall resign immediately in the manner and with the effect specified in this Section.

Any corporation into which an Authenticating Agent may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which such Authenticating Agent shall be a party, or any corporation succeeding to the corporate agency or corporate trust business of an Authenticating Agent, shall continue to be an Authenticating Agent, provided such corporation shall be otherwise eligible under this Section, without the execution or filing of any paper or any further act on the part of the Trustee or the Authenticating Agent.

An Authenticating Agent may resign at any time by giving written notice thereof to the Trustee and to the Company. The Trustee may at any time terminate the agency of an Authenticating Agent by giving written notice thereof to such Authenticating Agent and to the Company. Upon receiving such a

notice of resignation or upon such a termination, or in case at any time such
Authenticating Agent shall cease to be eligible in accordance with the
<PAGE>

-58-

provisions of this Section, the Trustee may appoint a successor Authenticating
Agent which shall be acceptable to the Company. Any successor Authenticating
Agent upon acceptance of its appointment hereunder shall become vested with all
the rights, powers and duties of its predecessor hereunder, with like effect as
if originally named as an Authenticating Agent. No successor Authenticating
Agent shall be appointed unless eligible under the provisions of this Section.

        The Trustee agrees to pay to each Authenticating Agent from
time to time reasonable compensation for its services under this Section, and
the Trustee shall be entitled to be reimbursed for such payments, in accordance
with, and subject to the provisions of, Section 907.

        The provisions of Sections 308, 904 and 905 shall be
applicable to each Authenticating Agent.

        If an appointment with respect to the Securities of one or
more series shall be made pursuant to this Section, the Securities of such
series may have endorsed thereon, in addition to the Trustee's certificate of
authentication, an alternate certificate of authentication substantially in the
following form:

        This is one of the Securities of the series designated therein
referred to in the within-mentioned Indenture.

Dated:                          _____
                                As Trustee


                                By_____
                                   As Authenticating
                                   Agent

                                By_____
                                   Authorized Signatory


        If all of the Securities of a series may not be originally
issued at one time, and if the Trustee does not have an office capable of
authenticating Securities upon original issuance located in a Place of Payment
where the Company wishes to have Securities of such series authenticated upon
original issuance, the Trustee, if so requested by the Company in writing (which
writing need not comply with Section 102 and need not be accompanied by an
Opinion of Counsel), shall appoint, in accordance with this Section and in
accordance with such procedures as shall be acceptable to the Trustee, an
Authenticating Agent having an office in a Place of Payment designated by the
Company with respect to such series of Securities.
<PAGE>

-59-


                          ARTICLE TEN

        HOLDERS' LISTS AND REPORTS BY TRUSTEE AND COMPANY

SECTION 1001.   LISTS OF HOLDERS.

        Semiannually, not later than June 1 and December 1 in each
year, commencing June 1, 1998, and at such other times as the Trustee may
request in writing, the Company shall furnish or cause to be furnished to the

EFH01435032

Trustee information as to the names and addresses of the Holders, and the Trustee shall preserve such information and similar information received by it in any other capacity and afford to the Holders access to information so preserved by it, all to such extent, if any, and in such manner as shall be required by the Trust Indenture Act; provided, however, that no such list need be furnished so long as the Trustee shall be the Security Registrar.

SECTION 1002.  REPORTS BY TRUSTEE AND COMPANY.

          Not later than November 1 in each year, commencing November 1, 1998, the Trustee shall transmit to the Holders, the Commission and each securities exchange upon which any Securities are listed, a report, dated as of the next preceding September 15, with respect to any events and other matters described in Section 313(a) of the Trust Indenture Act, in such manner and to the extent required by the Trust Indenture Act. The Trustee shall transmit to the Holders, the Commission and each securities exchange upon which any Securities are listed, and the Company shall file with the Trustee (within 30 days after filing with the Commission in the case of reports which pursuant to the Trust Indenture Act must be filed with the Commission and furnished to the Trustee) and transmit to the Holders, such other information, reports and other documents, if any, at such times and in such manner, as shall be required by the Trust Indenture Act. The Company shall notify the Trustee of the listing of any Securities on any securities exchange.


                         ARTICLE ELEVEN

            CONSOLIDATION, MERGER, CONVEYANCE OR OTHER TRANSFER

SECTION 1101.  COMPANY MAY CONSOLIDATE, ETC., ONLY ON CERTAIN TERMS.

          The Company shall not consolidate with or merge into any other Person, or convey or otherwise transfer or lease its properties and assets substantially as an entirety to any Person, unless

          (a) the Person formed by such consolidation or into which the
          Company is merged or the Person which acquires by conveyance or
          transfer, or which leases, the
<PAGE>

                              -60-


          properties and assets of the Company substantially as an entirety
          shall be a Person organized and validly existing under the laws of
          the United States, any State thereof or the District of Columbia, and
          shall expressly assume, by an indenture supplemental hereto, executed
          and delivered to the Trustee, in form satisfactory to the Trustee,
          the due and punctual payment of the principal of and premium, if any,
          and interest, if any, on all Outstanding Securities and the
          performance of every covenant of this Indenture on the part of the
          Company to be performed or observed;

          (b) immediately after giving effect to such transaction no
          Event of Default, and no event which, after notice or lapse of time
          or both, would become an Event of Default, shall have occurred and be
          continuing; and

          (c) the Company shall have delivered to the Trustee an
          Officer's Certificate and an Opinion of Counsel, each stating that
          such consolidation, merger, conveyance, or other transfer or lease
          and such supplemental indenture comply with this Article and that all
          conditions precedent herein provided for relating to such
          transactions have been complied with.

SECTION 1102.  SUCCESSOR PERSON SUBSTITUTED.

Upon any consolidation by the Company with or merger by the Company into any other Person or any conveyance, or other transfer or lease of the properties and assets of the Company substantially as an entirety in accordance with Section 1101, the successor Person formed by such consolidation or into which the Company is merged or the Person to which such conveyance, transfer or lease is made shall succeed to, and be substituted for, and may exercise every right and power of, the Company under this Indenture with the same effect as if such successor Person had been named as the Company herein, and thereafter, except in the case of a lease, the predecessor Person shall be relieved of all obligations and covenants under this Indenture and the Securities Outstanding hereunder.

ARTICLE TWELVE

SUPPLEMENTAL INDENTURES

SECTION 1201.  SUPPLEMENTAL INDENTURES WITHOUT CONSENT OF HOLDERS.

Without the consent of any Holders, the Company and the Trustee, at any time and from time to time, may enter into one or more indentures supplemental hereto, in form satisfactory to the Trustee, for any of the following purposes:
<PAGE>

-61-

(a) to evidence the succession of another Person to the Company and the assumption by any such successor of the covenants of the Company herein and in the Securities, all as provided in Article Eleven; or

(b) to add one or more covenants of the Company or other provisions for the benefit of all Holders or for the benefit of the Holders of, or to remain in effect only so long as there shall be Outstanding, Securities of one or more specified series, or one or more specified Tranches thereof, or to surrender any right or power herein conferred upon the Company; or

(c) to add any additional Events of Default with respect to all or any series of Securities Outstanding hereunder; or

(d) to change or eliminate any provision of this Indenture or to add any new provision to this Indenture; provided, however, that if such change, elimination or addition shall adversely affect the interests of the Holders of Securities of any series or Tranche Outstanding on the date of such indenture supplemental hereto in any material respect, such change, elimination or addition shall become effective with respect to such series or Tranche only pursuant to the provisions of Section 1202 hereof or when no Security of such series or Tranche remains Outstanding; or

(e) to provide collateral security for all but not part of the Securities; or

(f) to establish the form or terms of Securities of any series or Tranche as contemplated by Sections 201 and 301; or

(g) to provide for the authentication and delivery of bearer securities and coupons appertaining thereto representing interest, if any, thereon and for the procedures for the registration, exchange and replacement thereof and for the giving of notice to, and the solicitation of the vote or consent of, the holders thereof, and for any and all other matters incidental thereto; or

(h) to evidence and provide for the acceptance of appointment hereunder by a separate or successor Trustee or co-trustee with respect to the Securities of one or more series and to add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one Trustee, pursuant to the requirements of Section 911(b); or

(i) to provide for the procedures required to permit the Company to utilize, at its option, a noncertificated system of registration for all, or any series or Tranche of, the Securities; or

<PAGE>

-62-

(j) to change any place or places where (1) the principal of and premium, if any, and interest, if any, on all or any series of Securities, or any Tranche thereof, shall be payable, (2) all or any series of Securities, or any Tranche thereof, may be surrendered for registration of transfer, (3) all or any series of Securities, or any Tranche thereof, may be surrendered for exchange and (4) notices and demands to or upon the Company in respect of all or any series of Securities, or any Tranche thereof, and this Indenture may be served; or

(k) to cure any ambiguity, to correct or supplement any provision herein which may be defective or inconsistent with any other provision herein, or to make any other changes to the provisions hereof or to add other provisions with respect to matters or questions arising under this Indenture, provided that such other changes or additions shall not adversely affect the interests of the Holders of Securities of any series or Tranche in any material respect.

Without limiting the generality of the foregoing, if the Trust Indenture Act as in effect at the date of the execution and delivery of this Indenture or at any time thereafter shall be amended and

(x) if any such amendment shall require one or more changes to any provisions hereof or the inclusion herein of any additional provisions, or shall by operation of law be deemed to effect such changes or incorporate such provisions by reference or otherwise, this Indenture shall be deemed to have been amended so as to conform to such amendment to the Trust Indenture Act, and the Company and the Trustee may, without the consent of any Holders, enter into an indenture supplemental hereto to effect or evidence such changes or additional provisions; or

(y) if any such amendment shall permit one or more changes to, or the elimination of, any provisions hereof which, at the date of the execution and delivery hereof or at any time thereafter, are required by the Trust Indenture Act to be contained herein, this Indenture shall be deemed to have been amended to effect such changes or elimination, and the Company and the Trustee may, without the consent of any Holders, enter into an indenture supplemental hereto to evidence such amendment hereof.

SECTION 1202.  SUPPLEMENTAL INDENTURES WITH CONSENT OF HOLDERS.

With the consent of the Holders of a majority in aggregate principal amount of the Securities of all series then Outstanding under this Indenture, considered as one class, by Act of said Holders delivered to the Company and the Trustee, the Company, when authorized by a Board Resolution, and

the Trustee may enter into an indenture or indentures supplemental hereto for
the purpose of adding any provisions to, or changing in any manner or
eliminating
<PAGE>

-63-

any of the provisions of, this Indenture or modifying in any manner the rights
of the Holders of Securities of such series under the Indenture; provided,
however, that if there shall be Securities of more than one series Outstanding
hereunder and if a proposed supplemental indenture shall directly affect the
rights of the Holders of Securities of one or more, but less than all, of such
series, then the consent only of the Holders of a majority in aggregate
principal amount of the Outstanding Securities of all series so directly
affected, considered as one class, shall be required; and provided, further,
that if the Securities of any series shall have been issued in more than one
Tranche and if the proposed supplemental indenture shall directly affect the
rights of the Holders of Securities of one or more, but less than all, of such
Tranches, then the consent only of the Holders of a majority in aggregate
principal amount of the Outstanding Securities of all Tranches so directly
affected, considered as one class, shall be required; and provided, further,
that no such supplemental indenture shall:

        (a) change the Stated Maturity of the principal of, or any
        installment of principal of or interest on, any Security, or reduce
        the principal amount thereof or the rate of interest thereon (or the
        amount of any installment of interest thereon) or change the method
        of calculating such rate or reduce any premium payable upon the
        redemption thereof, or reduce the amount of the principal of a
        Discount Security that would be due and payable upon a declaration of
        acceleration of the Maturity thereof pursuant to Section 802, or
        change the coin or currency (or other property), in which any
        Security or any premium or the interest thereon is payable, or impair
        the right to institute suit for the enforcement of any such payment
        on or after the Stated Maturity of any Security (or, in the case of
        redemption, on or after the Redemption Date), without, in any such
        case, the consent of the Holder of such Security, or

        (b) reduce the percentage in principal amount of the
        Outstanding Securities of any series, or any Tranche thereof, the
        consent of the Holders of which is required for any such supplemental
        indenture, or the consent of the Holders of which is required for any
        waiver of compliance with any provision of this Indenture or of any
        default hereunder and its consequences, or reduce the requirements of
        Section 1304 for quorum or voting, without, in any such case, the
        consent of the Holders of each Outstanding Security of such series or
        Tranche, or

        (c) modify any of the provisions of this Section, Section 607
        or Section 813 with respect to the Securities of any series, or any
        Tranche thereof, except to increase the percentages in principal
        amount referred to in this Section or such other Sections or to
        provide that other provisions of this Indenture cannot be modified or
        waived without the consent of the Holder of each Outstanding Security
        affected thereby; provided, however, that this clause shall not be
        deemed to require the consent of any Holder with respect to changes
        in the references to "the Trustee" and concomitant changes in this
        Section, or the deletion of this proviso, in accordance with the
        requirements of Sections 911(b), 914 and 1201(h).

<PAGE>

-64-

A supplemental indenture which changes or eliminates any covenant or other

EFH01435036

provision of this Indenture which has expressly been included solely for the benefit of one or more particular series of Securities, or one or more Tranches thereof, or which modifies the rights of the Holders of Securities of such series with respect to such covenant or other provision, shall be deemed not to affect the rights under this Indenture of the Holders of Securities of any other series or Tranche.

It shall not be necessary for any Act of Holders under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof. A waiver by a Holder of such Holder's right to consent under this Section shall be deemed to be a consent of such Holder.

SECTION 1203.  EXECUTION OF SUPPLEMENTAL INDENTURES.

In executing, or accepting the additional trusts created by, any supplemental indenture permitted by this Article or the modifications thereby of the trusts created by this Indenture, the Trustee shall be entitled to receive, and (subject to Section 901) shall be fully protected in relying upon, an Opinion of Counsel stating that the execution of such supplemental indenture is authorized or permitted by this Indenture. The Trustee may, but shall not be obligated to, enter into any such supplemental indenture which affects the Trustee's own rights, duties, immunities or liabilities under this Indenture or otherwise.

SECTION 1204.  EFFECT OF SUPPLEMENTAL INDENTURES.

Upon the execution of any supplemental indenture under this Article, this Indenture shall be modified in accordance therewith, and such supplemental indenture shall form a part of this Indenture for all purposes; and every Holder of Securities theretofore or thereafter authenticated and delivered hereunder shall be bound thereby. Any supplemental indenture permitted by this Article may restate this Indenture in its entirety, and, upon the execution and delivery thereof, any such restatement shall supersede this Indenture as theretofore in effect for all purposes.

SECTION 1205.  CONFORMITY WITH TRUST INDENTURE ACT.

Every supplemental indenture executed pursuant to this Article shall conform to the requirements of the Trust Indenture Act as then in effect.

SECTION 1206.  REFERENCE IN SECURITIES TO SUPPLEMENTAL INDENTURES.

Securities of any series, or any Tranche thereof, authenticated and delivered after the execution of any supplemental indenture pursuant to this Article may, and shall if required by the Trustee, bear a notation in form approved by the Trustee as to any matter provided for in such supplemental indenture. If the Company shall so determine, new
<PAGE>

-65-

Securities of any series, or any Tranche thereof, so modified as to conform, in the opinion of the Trustee and the Company, to any such supplemental indenture may be prepared and executed by the Company and authenticated and delivered by the Trustee in exchange for Outstanding Securities of such series or Tranche.

SECTION 1207.  MODIFICATION WITHOUT SUPPLEMENTAL INDENTURE.

If the terms of any particular series of Securities shall have been established in a Board Resolution or an Officer's Certificate as contemplated by Section 301, and not in an indenture supplemental hereto, additions to, changes in or the elimination of any of such terms may be effected by means of a supplemental Board Resolution or Officer's Certificate, as the case may be, delivered to, and accepted by, the Trustee; provided, however, that

EFH01435037

such supplemental Board Resolution or Officer's Certificate shall not be accepted by the Trustee or otherwise be effective unless all conditions set forth in this Indenture which would be required to be satisfied if such additions, changes or elimination were contained in a supplemental indenture shall have been appropriately satisfied. Upon the acceptance thereof by the Trustee, any such supplemental Board Resolution or Officer's Certificate shall be deemed to be a "supplemental indenture" for purposes of Section 1204 and 1206.

ARTICLE THIRTEEN

MEETINGS OF HOLDERS; ACTION WITHOUT MEETING

SECTION 1301.   PURPOSES FOR WHICH MEETINGS MAY BE CALLED.

A meeting of Holders of Securities of one or more, or all, series, or any Tranche or Tranches thereof, may be called at any time and from time to time pursuant to this Article to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be made, given or taken by Holders of Securities of such series or Tranches.

SECTION 1302.   CALL, NOTICE AND PLACE OF MEETINGS.

(a) The Trustee may at any time call a meeting of Holders of Securities of one or more, or all, series, or any Tranche or Tranches thereof, for any purpose specified in Section 1301, to be held at such time and at such place in the Borough of Manhattan, The City of New York, as the Trustee shall determine, or, with the approval of the Company, at any other place. Notice of every such meeting, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given, in the manner provided in Section 106, not less than 21 nor more than 180 days prior to the date fixed for the meeting.

<PAGE>

-66-

(b) If the Trustee shall have been requested to call a meeting of the Holders of Securities of one or more, or all, series, or any Tranche or Tranches thereof, by the Company or by the Holders of 33% in aggregate principal amount of all of such series and Tranches, considered as one class, for any purpose specified in Section 1301, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, and the Trustee shall not have given the notice of such meeting within 21 days after receipt of such request or shall not thereafter proceed to cause the meeting to be held as provided herein, then the Company or the Holders of Securities of such series and Tranches in the amount above specified, as the case may be, may determine the time and the place in the Borough of Manhattan, The City of New York, or in such other place as shall be determined or approved by the Company, for such meeting and may call such meeting for such purposes by giving notice thereof as provided in subsection (a) of this Section.

(c) Any meeting of Holders of Securities of one or more, or all, series, or any Tranche or Tranches thereof, shall be valid without notice if the Holders of all Outstanding Securities of such series or Tranches are present in person or by proxy and if representatives of the Company and the Trustee are present, or if notice is waived in writing before or after the meeting by the Holders of all Outstanding Securities of such series, or any Tranche or Tranches thereof, or by such of them as are not present at the meeting in person or by proxy, and by the Company and the Trustee.

SECTION 1303.    PERSONS ENTITLED TO VOTE AT MEETINGS.

        To be entitled to vote at any meeting of Holders of Securities of one or more, or all, series, or any Tranche or Tranches thereof, a Person shall be (a) a Holder of one or more Outstanding Securities of such series or Tranches, or (b) a Person appointed by an instrument in writing as proxy for a Holder or Holders of one or more Outstanding Securities of such series or Tranches by such Holder or Holders. The only Persons who shall be entitled to attend any meeting of Holders of Securities of any series or Tranche shall be the Persons entitled to vote at such meeting and their counsel, any representatives of the Trustee and its counsel and any representatives of the Company and its counsel.

SECTION 1304.    QUORUM; ACTION.

        The Persons entitled to vote a majority in aggregate principal amount of the Outstanding Securities of the series and Tranches with respect to which a meeting shall have been called as hereinbefore provided, considered as one class, shall constitute a quorum for a meeting of Holders of Securities of such series and Tranches; provided, however, that if any action is to be taken at such meeting which this Indenture expressly provides may be taken by the Holders of a specified percentage, which is less than a majority, in principal amount of the Outstanding Securities of such series and Tranches, considered as one class, the Persons entitled to vote such specified percentage in principal amount of the Outstanding Securities of such
<PAGE>

-67-

series and Tranches, considered as one class, shall constitute a quorum. In the absence of a quorum within one hour of the time appointed for any such meeting, the meeting shall, if convened at the request of Holders of Securities of such series and Tranches, be dissolved. In any other case the meeting may be adjourned for such period as may be determined by the chairman of the meeting prior to the adjournment of such meeting. In the absence of a quorum at any such adjourned meeting, such adjourned meeting may be further adjourned for such period as may be determined by the chairman of the meeting prior to the adjournment of such adjourned meeting. Except as provided by Section 1305(e), notice of the reconvening of any meeting adjourned for more than 30 days shall be given as provided in Section 1302(a) not less than 10 days prior to the date on which the meeting is scheduled to be reconvened. Notice of the reconvening of an adjourned meeting shall state expressly the percentage, as provided above, of the principal amount of the Outstanding Securities of such series and Tranches which shall constitute a quorum.

        Except as limited by Section 1202, any resolution presented to a meeting or adjourned meeting duly reconvened at which a quorum is present as aforesaid may be adopted only by the affirmative vote of the Holders of a majority in aggregate principal amount of the Outstanding Securities of the series and Tranches with respect to which such meeting shall have been called, considered as one class; provided, however, that, except as so limited, any resolution with respect to any action which this Indenture expressly provides may be taken by the Holders of a specified percentage, which is less than a majority, in principal amount of the Outstanding Securities of such series and Tranches, considered as one class, may be adopted at a meeting or an adjourned meeting duly reconvened and at which a quorum is present as aforesaid by the affirmative vote of the Holders of such specified percentage in principal amount of the Outstanding Securities of such series and Tranches, considered as one class.

        Any resolution passed or decision taken at any meeting of Holders of Securities duly held in accordance with this Section shall be binding on all the Holders of Securities of the series and Tranches with respect to which such meeting shall have been held, whether or not present or represented

EFH01435039

at the meeting.

SECTION 1305.  ATTENDANCE AT MEETINGS; DETERMINATION OF VOTING RIGHTS;
              CONDUCT AND ADJOURN MENT OF MEETINGS.

         (a) Attendance at meetings of Holders of Securities may be in
person or by proxy; and, to the extent permitted by law, any such
proxy shall remain in effect and be binding upon any future Holder of
the Securities with respect to which it was given unless and until
specifically revoked by the Holder or future Holder of such
Securities before being voted.

         (b) Notwithstanding any other provisions of this Indenture,
the Trustee may make such reasonable regulations as it may deem
advisable for any meeting of Holders of Securities in regard to proof
of the holding of such Securities and of the appointment

<PAGE>

                              -68-

of proxies and in regard to the appointment and duties of inspectors
of votes, the submission and examination of proxies, certificates and
other evidence of the right to vote, and such other matters
concerning the conduct of the meeting as it shall deem appropriate.
Except as otherwise permitted or required by any such regulations,
the holding of Securities shall be proved in the manner specified in
Section 104 and the appointment of any proxy shall be proved in the
manner specified in Section 104. Such regulations may provide that
written instruments appointing proxies, regular on their face, may be
presumed valid and genuine without the proof specified in Section 104
or other proof.

         (c) The Trustee shall, by an instrument in writing, appoint a
temporary chairman of the meeting, unless the meeting shall have been
called by the Company or by Holders as provided in Section 1302(b),
in which case the Company or the Holders of Securities of the series
and Tranches calling the meeting, as the case may be, shall in like
manner appoint a temporary chairman. A permanent chairman and a
permanent secretary of the meeting shall be elected by vote of the
Persons entitled to vote a majority in aggregate principal amount of
the Outstanding Securities of all series and Tranches represented at
the meeting, considered as one class.

         (d) At any meeting each Holder or proxy shall be entitled to
one vote for each $1 principal amount of Securities held or
represented by him; provided, however, that no vote shall be cast or
counted at any meeting in respect of any Security challenged as not
Outstanding and ruled by the chairman of the meeting to be not
Outstanding. The chairman of the meeting shall have no right to vote,
except as a Holder of a Security or proxy.

         (e) Any meeting duly called pursuant to Section 1302 at which
a quorum is present may be adjourned from time to time by Persons
entitled to vote a majority in aggregate principal amount of the
Outstanding Securities of all series and Tranches represented at the
meeting, considered as one class; and the meeting may be held as so
adjourned without further notice.

SECTION 1306.  COUNTING VOTES AND RECORDING ACTION OF MEETINGS.

         The vote upon any resolution submitted to any meeting of
Holders shall be by written ballots on which shall be subscribed the signatures
of the Holders or of their representatives by proxy and the principal amounts
and serial numbers of the Outstanding Secu rities, of the series and Tranches
with respect to which the meeting shall have been called, held or represented by

them. The permanent chairman of the meeting shall appoint two inspectors of
votes who shall count all votes cast at the meeting for or against any
resolution and who shall make and file with the secretary of the meeting their
verified written reports of all votes cast at the meeting. A record of the
proceedings of each meeting of Holders shall be prepared by the secretary of the
meeting and there shall be attached to said record the original reports of the
<PAGE>

-69-

inspectors of votes on any vote by ballot taken threat and affidavits by one or
more persons having knowledge of the facts setting forth a copy of the notice of
the meeting and showing that said notice was given as provided in Section 1302
and, if applicable, Section 1304. Each copy shall be signed and verified by the
affidavits of the permanent chairman and secretary of the meeting and one such
copy shall be delivered to the Company, and another to the Trustee to be
preserved by the Trustee, the latter to have attached thereto the ballots voted
at the meeting. Any record so signed and verified shall be conclusive evidence
of the matters therein stated.

SECTION 1307.  ACTION WITHOUT MEETING.

          In lieu of a vote of Holders at a meeting as hereinbefore
contemplated in this Article, any request, demand, authorization, direction,
notice, consent, waiver or other action may be made, given or taken by Holders
by written instruments as provided in Section 104.


                              ARTICLE FOURTEEN

          IMMUNITY OF INCORPORATORS, SHAREHOLDERS, OFFICERS AND DIRECTORS

SECTION 1401.  LIABILITY SOLELY CORPORATE.

          No recourse shall be had for the payment of the principal of
or premium, if any, or interest, if any, on any Securities, or any part thereof,
or for any claim based thereon or otherwise in respect thereof, or of the
indebtedness represented thereby, or upon any obligation, covenant or agreement
under this Indenture, against any incorporator, shareholder, officer or
director, as such, past, present or future of the Company or of any predecessor
or successor corporation (either directly or through the Company or a
predecessor or successor corporation), whether by virtue of any constitutional
provision, statute or rule of law, or by the enforcement of any assessment or
penalty or otherwise; it being expressly agreed and under stood that this
Indenture and all the Securities are solely corporate obligations, and that no
personal liability whatsoever shall attach to, or be incurred by, any
incorporator, shareholder, officer or director, past, present or future, of the
Company or of any predecessor or successor corporation, either directly or
indirectly through the Company or any predecessor or successor corporation,
because of the indebtedness hereby authorized or under or by reason of any of
the obligations, covenants or agreements contained in this Indenture or in any
of the Securities or to be implied herefrom or therefrom, and that any such
personal liability is hereby expressly waived and released as a condition of,
and as part of the consideration for, the execution of this Indenture and the
issuance of the Securities.
<PAGE>

-70-


                    ------------------------


          This instrument may be executed in any number of counterparts,
each of which so executed shall be deemed to be an original, but all such
counterparts shall together constitute but one and the same instrument.

        IN WITNESS WHEREOF, the parties hereto have caused this
Indenture to be duly executed, all as of the day and year first above written.


                        ENSERCH CORPORATION


                        By: /s/ Robert S. Shapard
                            ----------------------------
                                  Treasurer
<PAGE>

                        THE BANK OF NEW YORK, Trustee


                        By: /s/ Walter N. Gitlin
                            ----------------------------
                               Vice President
<PAGE>

STATE OF TEXAS            )
                          ) ss.:
COUNTY OF DALLAS          )


        On the 26th day of January 1998, before me personally came
Robert S. Shapard, to me known, who, being by me duly sworn, did depose and say
that [he] is the Treasurer of ENSERCH Corporation, one of the corporations
described in and which executed the foregoing instrument; and that [he] signed
[his] name thereto by authority of the Board of Directors of said corporation.



                              /S/ LeNae B. Davis
                        ------------------------------

                        ------------------------------
                        Notary Public, State of Texas
                        My Commission Expires
                                              --------
<PAGE>

STATE OF NEW YORK         )
                          ) ss.:
COUNTY OF NEW YORK        )


        On the 30th day of January, 1998, before me personally came
Walter N. Gitlin, to me known, who, being by me duly sworn, did depose and say
that [he] is a [Vice President] of The Bank of New York, one of the corporations
described in and which executed the foregoing instrument; and that [he] signed
[his] name thereto by authority of the Board of Directors of said corporation.


                              /s/ Moira Feeney
                        --------------------------------
                                         -----------------
                        Notary Public, State of New York
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-4.(MM)
<SEQUENCE>9
<DESCRIPTION>OFFICER'S CERTIFICATE

<TEXT>

<PAGE>

EXHIBIT 4(mm)

ENSERCH CORPORATION

OFFICER'S CERTIFICATE


     Robert S. Shapard, the Treasurer of ENSERCH Corporation (the "Company"),
pursuant to the authority granted in the Board Resolutions of the Company dated
December 17, 1997, and Sections 201 and 301 of the Indenture defined herein,
does hereby certify to The Bank of New York (the "Trustee"), as Trustee under
the Indenture of the Company (For Unsecured Debt Securities) dated as of January
1, 1998 (the "Indenture") that:


1.   The securities of the second series to be issued under the Indenture shall
     be designated "Remarketed Reset Notes due January 1, 2008" (the "Securities
     of the Second Series"). All capitalized terms used in this certificate
     which are not defined herein but are defined in Exhibit A hereto shall have
     the meanings set forth in Exhibit A; all capitalized terms used in this
     certificate which are not defined herein or in Exhibit A hereto but are
     defined in the Indenture shall have the meanings set forth in the
     Indenture;

     2.   The Securities of the Second Series shall be limited in aggregate
          principal amount to $125,000,000 at any time Outstanding, except as
          contemplated in Section 301(b) of the Indenture;

     3.   The Securities of the Second Series shall mature and the principal
          shall be due and payable together with all accrued and unpaid interest
          thereon on January 1, 2008;

     4.   The Securities of the Second Series shall bear interest as provided in
          the form of Security of the Second Series attached hereto as Exhibit
          A. Upon each Duration/Mode Determination Date, the mode, duration,
          Commencement Date, Interest Payment Dates, and other relevant terms
          for the next Subsequent Spread Period shall be determined as described
          in the form of Security of the Second Series attached hereto as
          Exhibit A.

               Pursuant to the Remarketing Agreement, Merrill Lynch, Pierce,
          Fenner & Smith Incorporated has agreed to act as Remarketing Agent.
          The Company, in its sole discretion, will appoint a Rate Agent and may
          change the Remarketing Agent and the Rate Agent for any Subsequent
          Spread Period at any time on or prior to 3:00 p.m., New York City
          time, on the Duration/Mode Determination Date relating thereto. The
          Company will


                              - 1 -

<PAGE>

          deliver to the Trustee a notice of such appointment or change on or
          before the next Commencement Date after such appointment or change.

               The Company shall deliver to the Trustee on or before any
          Commencement Date for Securities of the Second Series a notice stating
          the duration, redemption dates, redemption type, redemption prices (if
          applicable), the next Commencement Date, Interest Payment Date or
          Dates, interest rate mode, Spread, interest rate or rates and any
          other relevant terms for the applicable Subsequent Spread Period. The
          Trustee shall be under no duty to inquire into, may presume the

correctness of, and shall be fully protected in acting upon the Company's notice with respect to such Subsequent Spread Period for the Securities of the Second Series.

5. Each installment of interest on a Security of the Second Series shall be payable to the Person in whose name such Security of the Second Series is registered at the close of business on the 15th day of the calendar month next preceding the corresponding Interest Payment Date (the "Regular Record Date") for the Securities of the Second Series. Any installment of interest on the Securities of the Second Series not punctually paid or duly provided for shall forthwith cease to be payable to the Holders of such Securities of the Second Series on such Regular Record Date, and may be paid to the Persons in whose name the Securities of the Second Series are registered at the close of business on a Special Record Date to be fixed by the Trustee for the payment of such Defaulted Interest. Notice of such Defaulted Interest and Special Record Date shall be given to the Holders of the Securities of the Second Series not less than 10 days prior to such Special Record Date, or may be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which the Securities of the Second Series may be listed, and upon such notice as may be required by such exchange, all as more fully provided in the Indenture;

6. The principal and each installment of interest on the Securities of the Second Series shall be payable at, and registration and registration of transfers and exchanges in respect of the Securities of the Second Series may be effected at, the office or agency of the Company in The City of New York; provided that payment of interest may be made at the option of the Company by check mailed to the address of the persons entitled thereto. Notices and demands to or upon the Company in respect of the Securities of the Second Series may be served at the office or agency of the Company in The City of New York. The Corporate Trust Office of the Trustee will initially be the agency of the Company for such payment, registration and registration of transfers and exchanges and service of notices and demands and the Company hereby appoints the Trustee as its agent for all such purposes; provided, however, that the Company reserves the right to change, by one or more Officer's

- 2 -

<PAGE>

Certificates, any such office or agency and such agent. The Trustee will be the Security Registrar and the Paying Agent for the Securities of the Second Series;

7. The Securities of the Second Series may not be redeemed except as contemplated in the form of the Security of the Second Series attached hereto as Exhibit A.

Unless the Company defaults in payment of the Redemption Price, on and after the Redemption Date interest will cease to accrue on the Securities of the Second Series or portions thereof called for redemption.

With respect to any Make-Whole Redemption, the Company shall deliver to the Trustee before any Redemption Date for Securities of the Second Series its calculation of the Redemption Price applicable to such redemption. Except with respect to the obligations of the Trustee expressly set forth in the definitions of "Comparable Treasury Price"in Exhibit A hereto, the Trustee shall be under no duty to inquire into, may presume the correctness of, and shall be fully protected in acting upon the Company's calculation of any Redemption

Price of the Securities of the Second Series.

In lieu of stating the Redemption Price for a Make-Whole Redemption, notices of redemption of Securities of the Second Series shall state substantially the following: "The Redemption Price of the Securities of the Second Series to be redeemed shall equal the greater of (i) 100% of the principal amount of such Securities of the Second Series, and (ii) the sum of the present values of the remaining scheduled payments of principal and interest thereon from the Redemption Date to the end of the applicable Subsequent Spread Period, computed by discounting such payments, in each case, to the Redemption Date on a semiannual basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Yield (as defined in the Indenture) plus the Reinvestment Spread (as defined in the Indenture)."

Except as provided herein, Article Four of the Indenture shall apply to redemptions of Securities of the Second Series.

8.   The Securities of the Second Series will be originally issued in global form payable to Cede & Co. and will, unless and until the Securities of the Second Series are exchanged in whole or in part for certificated Securities of the Second Series registered in the names of various beneficial holders thereof (in accordance with the conditions set forth in the legend appearing in the form of the Securities of the Second Series, attached hereto as Exhibit A), contain restrictions on transfer, substantially as described in such form;

- 3 -

<PAGE>

9.   No service charge shall be made for the registration of transfer or exchange of the Securities of the Second Series; provided, however, that the Company may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with the exchange or transfer;

10.  If the Company shall make any deposit of money and/or Eligible Obligations with respect to any Securities of the Second Series, or any portion of the principal amount thereof, as contemplated by Section 701 of the Indenture, the Company shall not deliver an Officer's Certificate described in clause (z) in the first paragraph of said Section 701 unless the Company shall also deliver to the Trustee, together with such Officer's Certificate, either:

(A)   an instrument wherein the Company, notwithstanding the satisfaction and discharge of its indebtedness in respect of the Securities of the Second Series, shall assume the obligation (which shall be absolute and unconditional) to irrevocably deposit with the Trustee or Paying Agent such additional sums of money, if any, or additional Eligible Obligations (meeting the requirements of Section 701), if any, or any combination thereof, at such time or times, as shall be necessary, together with the money and/or Eligible Obligations theretofore so deposited, to pay when due the principal of and premium, if any, and interest due and to become due on such Securities of the Second Series or portions thereof, all in accordance with and subject to the provisions of said Section 701; provided, however, that such instrument may state that the obligation of the Company to make additional deposits as aforesaid shall be subject to the delivery to the Company by the Trustee of a notice asserting the deficiency accompanied by an opinion of an independent public accountant of nationally recognized standing, selected by the Trustee, showing the calculation thereof; or

(B)   an Opinion of Counsel to the effect that, as a result of a

change in law occurring after the date of this certificate, the Holders of such Securities of the Second Series, or portions of the principal amount thereof, will not recognize income, gain or loss for United States federal income tax purposes as a result of the satisfaction and discharge of the Company's indebtedness in respect thereof and will be subject to United States federal income tax on the same amounts, at the same times and in the same manner as if such satisfaction and discharge had not been effected.

11.   The Securities of the Second Series shall have such other terms and provisions as are provided in the form set forth in Exhibit A hereto, and shall be issued in substantially such form;

- 4 -

&lt;PAGE&gt;

12.   The undersigned has read all of the covenants and conditions contained in the Indenture relating to the issuance of the Securities of the Second Series and the definitions in the Indenture relating thereto and in respect of which this certificate is made;

13.   The statements contained in this certificate are based upon the familiarity of the undersigned with the Indenture, the documents accompanying this certificate, and upon discussions by the undersigned with officers and employees of the Company familiar with the matters set forth herein;

14.   In the opinion of the undersigned, he has made such examination or investigation as is necessary to enable him to express an informed opinion whether or not such covenants and conditions have been complied with; and

15.   In the opinion of the undersigned, such conditions and covenants and conditions precedent, if any (including any covenants compliance with which constitutes a condition precedent) to the authentication and delivery of the Securities of the Second Series requested in the accompanying Company Order have been complied with.

- 5 -

&lt;PAGE&gt;

        IN WITNESS WHEREOF, I have executed this Officer's Certificate this 30th day of January, 1998.


                                    /s/ Robert S. Shapard
                                    ---------------------------------
                                        Robert S. Shapard
                                            Treasurer


- 6 -

&lt;PAGE&gt;

No._____
Cusip No. [293567 AX 1]


                                                    EXHIBIT A

        [FORM OF FACE OF SECURITIES OF THE SECOND SERIES]

[(SEE LEGEND AT THE END OF THIS SECURITY FOR
RESTRICTIONS ON TRANSFERABILITY AND CHANGE OF FORM)]

ENSERCH CORPORATION

REMARKETED RESET NOTES DUE JANUARY 1, 2008

ENSERCH CORPORATION, a corporation duly organized and existing under
the laws of the State of Texas (herein referred to as the "Company", which term
includes any successor Person under the Indenture), for value received, hereby
promises to pay to [Cede & Co.] or registered assigns, the principal sum of

_____

Dollars on January 1, 2008 (the Maturity Date), and to pay interest on said
principal sum, on April 1, 1998 (the first Interest Payment Date), at the rate
of 5.82% per annum (computed on the basis of the actual number of days elapsed
over a 360-day year) until April 1, 1998 (the first Commencement Date), and
thereafter as provided on the reverse hereof until the principal hereof is paid
or made available for payment. Interest on the Securities of this series will
accrue from January 30, 1998 to but excluding the first Interest Payment Date
(the "Initial Interest Period" and the "Initial Spread Period"), and thereafter
will accrue from and including the last Interest Payment Date to which interest
has been paid or duly provided for. Each installment of interest on a Security
of the Second Series shall be payable to the Person in whose name such Security
of the Second Series is registered at the close of business on the 15th day of
the calendar month next preceding the corresponding Interest Payment Date (the
"Regular Record Date") for the Securities of the Second Series. Any interest not
punctually paid or duly provided for will forthwith cease to be payable to the
Holder on the Regular Record Date and may either be paid to the Person in whose
name this Security (or one or more Predecessor Securities) is registered at the
close of business on a Special Record Date for the payment of such Defaulted
Interest to be fixed by the Trustee, notice whereof shall be given to Holders of
Securities of this series not less than 10 days prior to such Special Record
Date, or be paid at any time in any other lawful manner not inconsistent with
the requirements of any securities exchange on which the Securities of this
series may be listed, and upon such notice as may be required by such exchange,
all as more fully provided in the Indenture referred to on the reverse hereof.

Payment of the principal of (and premium, if any) and interest on this
Security will be made at the office or agency of the Company maintained for that
purpose in The City of New York, the State of New York in such coin or currency
of the United States of America as at the time of payment is legal tender for
payment of public and private debts, provided, however, that, at the option of
the Company, interest on this Security may be paid by check mailed to the
address of the person entitled thereto, as such address shall appear on the
Security Register.

<PAGE>

Reference is hereby made to the further provisions of this Security set
forth on the reverse hereof, which further provisions shall for all purposes
have the same effect as if set forth at this place .

Unless the certificate of authentication hereon has been executed by the
Trustee referred to on the reverse hereof by manual signature, this Security
shall not be entitled to any benefit under the Indenture or be valid or
obligatory for any purpose.

IN WITNESS WHEREOF, the Company has caused this instrument to be duly
executed.

ENSERCH CORPORATION

By:
                          ------------------------------------

ATTEST:


- ----------------------------


                    [FORM OF CERTIFICATE OF AUTHENTICATION]

                      CERTIFICATE OF AUTHENTICATION

Dated:

      This is one of the Securities of the series designated therein referred to
in the within-mentioned Indenture.

                            THE BANK OF NEW YORK, as Trustee


                      By:
                          ------------------------------------
                              Authorized Signatory


                                   - 2 -

<PAGE>

              [FORM OF REVERSE OF SECURITY OF THE SECOND SERIES]


      This Security is one of a duly authorized issue of securities of the
Company (herein called the "Securities"), issued and to be issued in one or more
series under an Indenture, dated as of January 1, 1998 (herein, together with
any amendments thereto, called the "Indenture", which term shall have the
meaning assigned to it in such instrument), between the Company and The Bank of
New York, as Trustee (herein called the "Trustee", which term includes any
successor trustee under the Indenture), and reference is hereby made to the
Indenture, including the Board Resolutions and Officer's Certificate filed with
the Trustee on January 30, 1998 creating the series designated on the face
hereof, for a statement of the respective rights, limitations of rights, duties
and immunities thereunder of the Company, the Trustee and the Holders of the
Securities and of the terms upon which the Securities are, and are to be,
authenticated and delivered. This Security is one of the series designated on
the face hereof, limited in aggregate principal amount to $125,000,000.

      Upon each Duration/Mode Determination Date (as defined below), the mode and
other terms for the next Subsequent Spread Period (as defined below) shall be
determined as described below.

      (A) FLOATING RATE MODE:

      If the Securities of the Second Series are in Floating Rate Mode, then the
following shall apply:

         During the Floating Rate Mode, interest on the Securities of the
      Second Series for each Subsequent Spread Period will be payable either
      monthly, quarterly, or semi-annually, as specified by the Company on each
      Duration/Mode Determination Date. Unless otherwise specified on each
      Duration/Mode Determination Date in connection with Securities of the
      Second Series in the Floating Rate Mode, interest will be payable, in
      arrears, in the case of Securities of the Second Series which pay (i)
      monthly, on the first day of each month; (ii) quarterly, on the first day

of each January, April, July and October) and (iii) semi-annually, on the
first day of each January and July. During any Subsequent Spread Period
during which the Securities of the Second Series are in the Floating Rate
Mode, the interest rate on the Securities of the Second Series will be
reset either monthly, quarterly or semi-annually in the case of any
Subsequent Spread Period, and the Securities of the Second Series will bear
interest at a per annum rate (computed on the basis of the actual number of
days elapsed over a 360-day year) equal to LIBOR (as defined below) for the
applicable Interest Period (as defined below), plus the applicable Spread.
Interest on the Securities of the Second Series will accrue from and
including each Interest Payment Date to but excluding the next succeeding
Interest Payment Date or maturity date, as the case may be. The first day
of an Interest Period is referred to herein as an "Interest Reset Date."

     If any Interest Payment Date (other than at maturity), Redemption Date
or Interest Reset Date in the Floating Rate Mode would otherwise be a day
that is not a Business Day, such Interest Payment Date, Redemption Date or
Interest Reset Date will be postponed to the next succeeding day that is a
Business Day.

                              - 3 -

<PAGE>

     LIBOR applicable for an Interest Period will be determined by the Rate
Agent (as defined below) as of the second London Business Day (as defined
below) preceding each Interest Reset Date (the "LIBOR Determination Date")
in accordance with the following provisions:

          (i) LIBOR will be determined on the basis of the offered rate
     for deposits in U.S. Dollars of the applicable Index Maturity
     commencing on the second London Business Day immediately following
     such LIBOR Determination Date, which appears on Telerate Page 3750
     (as defined below) as of approximately 11:00 a.m., London time, on
     such LIBOR Determination Date. "Telerate Page 3750" means the
     display designated on page "3750" on Dow Jones Markets Limited (or
     such other page as may replace the 3750 page on that service or
     such other service or services as may be nominated by the British
     Bankers' Association for the purpose of displaying London interbank
     offered rates for U.S. Dollar deposits). If no such offered rate
     appears on Telerate Page 3750, LIBOR for such LIBOR Determination
     Date will be determined in accordance with the provisions of
     paragraph (ii) below. The term "London Business Day" means any day
     on which dealings in deposits in U.S. Dollars are transacted in the
     London interbank market.

          (ii) With respect to a LIBOR Determination Date on which no
     rate appears on Telerate Page 3750 as of approximately 11:00 a.m.,
     London time, on such LIBOR Determination Date, the Rate Agent shall
     request the principal London offices of each of four major
     reference banks in the London interbank market selected by the Rate
     Agent (after consultation with the Company) to provide the Rate
     Agent with a quotation of the rate at which deposits in U.S.
     Dollars of the applicable Index Maturity commencing on the second
     London Business Day immediately following such LIBOR Determination
     Date, are offered by it to prime banks in the London interbank
     market as of approximately 11:00 a.m., London time, on such LIBOR
     Determination Date and in a principal amount equal to an amount of
     not less than U.S. $1,000,000 that is representative for a single
     transaction in such market at such time. If at least two such
     quotations are provided, LIBOR for such LIBOR Determination Date
     will be the arithmetic mean of such quotations as calculated by the
     Rate Agent. If fewer than two quotations are provided, LIBOR for
     such LIBOR Determination Date will be the arithmetic mean of the
     rates quoted as of approximately 11:00 a.m., New York City time, on
     such LIBOR Determination Date by three major banks in The City of

New York selected by the Rate Agent (after consultation with the
Company) for loans in U.S. Dollars to leading European banks, of
the applicable Index Maturity commencing on the second London
Business Day immediately following such LIBOR Determination Date
and in a principal amount equal to an amount of not less than U.S.
$1,000,000 that is representative for a single transaction in such
market at such time; provided, however, that if the banks selected
as aforesaid by the Rate Agent are not quoting as mentioned in this
sentence, LIBOR for such LIBOR Determination Date will be LIBOR
determined with respect to the immediately preceding LIBOR
Determination Date.

- 4 -

<PAGE>

        The Index Maturity applicable to Securities of the Second
Series in the Floating Rate Mode will be, in the case of Securities
of the Second Series paying (i) monthly, one month; (ii) quarterly,
three months; and (iii) semi-annually, six months.

(B) FIXED RATE MODE:

If the Securities of the Second Series are, or are to be, in Fixed
Rate Mode, then the following shall apply:

        If the Securities of the Second Series are to be reset to the
Fixed Rate Mode, as agreed to by the Company and the Remarketing
Agent on a Duration/Mode Determination Date, then the applicable
Fixed Rate for the corresponding Subsequent Spread Period will be
determined on the Business Day following the Fixed Rate Spread
Determination Date (the "Fixed Rate Determination Date"), in
accordance with the following provisions: the Fixed Rate will be a
per annum rate and will be determined by 2:00 p.m. New York City
time on such Fixed Rate Determination Date by adding the applicable
Spread (as agreed to by the Company and the Remarketing Agent on
the preceding Fixed Rate Spread Determination Date) to the yield to
maturity (expressed as a bond equivalent, on the basis of a year of
365 or 366 days, as applicable, and applied on a daily basis) of
the applicable United States Treasury security, selected by the
Rate Agent or its agent after consultation with the Remarketing
Agent, as having a maturity comparable to the duration selected for
the following Subsequent Spread Period, which would be used in
accordance with customary financial practice in pricing new issues
of corporate debt securities of comparable maturity to the duration
selected for the following Subsequent Spread Period.

        Interest in the Fixed Rate Mode will be computed on the basis
of a 360-day year of twelve 30-day months. Such interest will be
payable semi-annually in arrears on the Interest Payment Dates
(January 1 and July 1, unless otherwise specified by the Company
and the Remarketing Agent on the applicable Duration/Mode
Determination Date) at the applicable Fixed Rate, as determined by
the Company and the Remarketing Agent on the Fixed Rate
Determination Date, beginning on the Commencement Date and for the
duration of the relevant Subsequent Spread Period. Interest on the
Securities of the Second Series will accrue from and including each
Interest Payment Date to but excluding the next succeeding Interest
Payment Date or maturity date, as the case may be.

        If any Interest Payment Date or any Redemption Date in the
Fixed Rate Mode falls on a day that is not a Business Day, (in
either case, other than any Interest Payment Date or Redemption
Date that falls on a date that would have been a Commencement Date
but for the postponement of such Commencement Date to the next
Business Day, in which case such date will be postponed to the next

day that is a Business Day, the related payment of principal and
interest will be made on the next succeeding Business Day as if it
were made on the date such payment was due, and no interest will
accrue on the amounts so payable for the period from and after such
dates.

- 5 -

<PAGE>

(C) ADDITIONAL TERMS OF THE SECURITIES OF THE SECOND SERIES:

The following shall apply to Securities of the Second Series in
Floating Rate Mode or Fixed Rate Mode:

        "Subsequent Spread Period" shall mean a period of at least
approximately six months and not extending beyond the Maturity
Date, designated by the Company; provided that the first Subsequent
Spread Period may be a period of approximately three months or the
sum of three months plus any integral multiple of six months ending
on or before the maturity date. Each Subsequent Spread Period shall
commence on January 1 or July 1 (or as otherwise specified by the
Company and the Remarketing Agent on the applicable Duration/Mode
Determination Date in connection with the establishment of each
Subsequent Spread Period), as applicable, and shall end on the
calendar day immediately preceding the next Subsequent Spread
Period or January 1, 2008.

        "Commencement Date" shall mean the first day of a Subsequent
Spread Period.

        "Interest Period" shall mean for any Subsequent Spread
Period, the period from and including the most recent Interest
Payment Date on which interest has been paid to but excluding the
next Interest Payment Date.

        The term "Remarketing Agent" means the nationally recognized
broker-dealer selected by the Company to act as Remarketing Agent.

        The term "Rate Agent" means the entity selected by the
Company as its agent to determine (i) LIBOR and the interest rate
on the Securities of the Second Series for any Interest Period
and/or (ii) the yield to maturity on the applicable United States
Treasury security that is used in connection with the determination
of the applicable Fixed Rate, and the ensuing applicable Fixed
Rate.

        "Tender Date" shall mean the date immediately following the
end of the Initial Spread Period or a Subsequent Spread Period.

        If any Commencement Date or Tender Date would otherwise be a
day that is not a Business Day, such Commencement Date or Tender
Date will be postponed to the next succeeding day that is a
Business Day.

        The Spread that will be applicable during each Subsequent
Spread Period will be the percentage (a) recommended by the
Remarketing Agent pursuant to the Remarketing Agreement between the
Company and the Remarketing Agent, as the same may be amended or
supplemented, (the "Remarketing Agreement") and (b) agreed to by
the Company. The interest rate mode during each Subsequent Spread
Period shall be either the Floating Rate Mode or the Fixed Rate
Mode, as determined by the Company and the Remarketing Agent.

        If the Maturity Date for the Securities of the Second Series
falls on a day that is not a Business Day, the related payment of

principal and interest will be made on the next

- 6 -

<PAGE>

succeeding Business Day as if it were made on the date such payment was due, and no interest will accrue on the amounts so payable for the period from and after such dates.

Unless notice of redemption of the Securities of the Second Series as a whole has been given, the duration, redemption dates, redemption type (i.e., par, premium or make-whole, including in the case of make-whole, Reinvestment Spread), redemption prices (if applicable), Commencement Date, Interest Payment Dates and interest rate mode (i.e., Fixed Rate Mode or Floating Rate Mode) (and any other relevant terms) for each Subsequent Spread Period will be established by 3:00 p.m., New York City time, on the tenth Business Day prior to the Commencement Date of each Subsequent Spread Period (the "Duration/Mode Determination Date").

In addition, the Spread for each Subsequent Spread Period will be established by 3:00 p.m., New York City time, on the eighth Business Day prior to the Commencement Date of such Subsequent Spread Period for which Securities of the Second Series will be in the Floating Rate Mode (the "Floating Rate Spread Determination Date") or by 12:00 p.m. New York City time on the third Business Day prior to the Commencement Date of such Subsequent Spread Period for which Securities of the Second Series will be in the Fixed Rate Mode (the "Fixed Rate Spread Determination Date").

So long as all of the Securities of the Second Series are held by The Depositary Trust Company ("DTC") in global form, the Company will request not later than seven nor more than 15 calendar days prior to any Duration/Mode Determination Date, that DTC notify its Participants of such Duration/Mode Determination Date and of the procedures that must be followed if any beneficial owner of a Security of the Second Series wishes to tender such owner's interest in such Security of the Second Series. In the event that DTC or its nominee is no longer the holder of record of the Securities of the Second Series, the Company will notify the registered holders of the Securities of the Second Series of such information within such period of time. This will be the only notice given by the Company or the Remarketing Agent with respect to such Duration/Mode Determination Date and procedures for tendering Securities of the Second Series or beneficial interests therein.

The term "Business Day" means any day other than a Saturday or Sunday or a day on which banking institutions in The City of New York are required or authorized to close and, in the case of Securities of the Second Series in the Floating Rate Mode, that is also a London Business Day.

In the event that the Company and the Remarketing Agent do not agree on the Spread for any Subsequent Spread Period, then the Company is required unconditionally to repurchase and retire all of the Securities of the Second Series on the Tender Date at a price equal to 100% of the principal amount thereof, together with accrued interest to the Tender Date.

All percentages resulting from any calculation of any interest rate for the Securities of the Second Series will be rounded, if necessary, to the nearest one hundred thousandth of a percentage point, with five one millionths of a percentage point

- 7 -

<PAGE>

rounded upward and all dollar amounts will be rounded to the
nearest cent, with one-half cent being rounded upward.

The beneficial owners of the Securities of the Second Series
are entitled to tender their beneficial interests in the Securities
of the Second Series on any Tender Date as provided in the
Remarketing Agreement as in effect on January 30, 1998. In the
event that the Remarketing Agent is unable to remarket some or all
of the tendered beneficial interests in the Securities of the
Second Series and chooses not to purchase such tendered beneficial
interests as provided in the Remarketing Agreement, the Company
shall be obligated unconditionally to purchase and retire on the
applicable Tender Date the remaining unsold tendered beneficial
interests in the Securities of the Second Series at a price equal
to 100% of the principal amount, plus accrued interest, to the
applicable Tender Date.

REDEMPTION PROVISIONS

The Securities of the Second Series may not be redeemed prior
to April 1, 1998. On that date, on each Commencement Date and on
those Interest Payment Dates specified as redemption dates by the
Company on the Duration/Mode Determination Date in connection with
any Subsequent Spread Period, the Securities of the Second Series
may be redeemed, at the option of the Company, in whole or in part,
upon notice thereof given at any time during the 30-calendar-day
period ending on the tenth Business Day prior to the Redemption
Date (provided that notice of any partial redemption must be given
at least 15 calendar days prior to the Redemption Date), in
accordance with the redemption type selected on the Duration/Mode
Determination Date. In the event that less than all of the
outstanding Securities of the Second Series are to be redeemed, the
Securities of the Second Series to be redeemed shall be selected by
such method as the Trustee shall deem fair and appropriate. So long
as the Securities of the Second Series are held by DTC in global
form, the Company will give notice to DTC, whose nominee is the
record holder of all of the Securities of the Second Series, and
DTC will determine the principal amount to be redeemed from the
account of each Participant. This will be the only notice given by
the Company or the Remarketing Agent with respect to redemption of
the Securities of the Second Series. A Participant may determine to
redeem from some beneficial owners (which may include a Participant
holding Securities of the Second Series for its own account)
without redeeming from the accounts of other beneficial owners.

The redemption type to be chosen by the Company and the
Remarketing Agent on the Duration/Mode Determination Date may be
one of the following as defined herein: (i) Par Redemption; (ii)
Premium Redemption; or (iii) Make-Whole Redemption. "Par
Redemption" means redemption at a Redemption Price equal to 100% of
the principal amount thereof, plus accrued interest thereon, if
any, to the Redemption Date. "Premium Redemption" means redemption
at a Redemption Price greater than 100% of the principal amount
thereof, plus accrued interest thereon, if any, to the Redemption
Date, as determined on the Duration/Mode Determination Date. "Make-
Whole Redemption" means redemption at a Redemption Price, plus
accrued interest thereon, if any, to the Redemption Date, equal to
the Make-Whole Amount (as defined below), if any, with respect to
such Securities of the Second Series. Unless otherwise specified by

EFH01435053

<PAGE>

the Company on any Duration/Mode Determination Date, the redemption type will be a Par Redemption.

"Make-Whole Amount" means, in connection with any optional redemption or accelerated payment of any Security of the Second Series, an amount equal to the greater of (i) 100% of the principal amount and (ii) the sum of the present values of the remaining scheduled payments of principal and interest thereon from the Redemption Date to the end of the applicable Subsequent Spread Period, computed by discounting such payments, in each case, to the Redemption Date on a semiannual basis (assuming a 360-day year consisting of twelve 30-day months) at the applicable Treasury Yield plus the Reinvestment Spread, plus accrued interest on the principal amount thereof, if any, to the Redemption Date.

"Treasury Yield" means, with respect to any Redemption Date applicable to the Securities of the Second Series, the rate per annum equal to the semi-annual equivalent yield to maturity of the Comparable Treasury Issue, assuming a price for the Comparable Treasury Issue (expressed as a percentage of its principal amount) equal to the applicable Comparable Treasury Price for such Redemption Date.

"Comparable Treasury Issue" means, with respect to the Securities of the Second Series, the United States Treasury security selected by the Remarketing Agent as having a maturity comparable to the remaining term of the Securities of the Second Series that would be utilized, at the time of selection and in accordance with customary financial practice, in pricing new issues of corporate debt securities of comparable maturity to the remaining term of the Securities of the Second Series.

"Comparable Treasury Price" means, with respect to any Redemption Date applicable to the Securities of the Second Series, (i) the average of the applicable Reference Treasury Dealer Quotations for such Redemption Date, after excluding the highest and lowest of such applicable Reference Treasury Dealer Quotations, or (ii) if the Trustee obtains fewer than four such Reference Treasury Dealer Quotations, the average of all such Quotations. "Reference Treasury Dealer Quotations" means, with respect to each Reference Treasury Dealer and any Redemption Date for the Securities of the Second Series, the average, as determined by the Trustee, of the bid and asked prices for the Comparable Treasury Issue for the Securities of the Second Series (expressed in each case as a percentage of its principal amount) quoted in writing to the Trustee by such Reference Treasury Dealer at 5:00 p.m. on the third Business Day preceding such Redemption Date.

"Reference Treasury Dealer" means, with respect to the Securities of the Second Series offered hereby, at least four primary U.S. Government securities dealers in New York City as the Company or the Trustee shall select, which may include the Remarketing Agent or an affiliate thereof.

"Reinvestment Spread" means, with respect to the Securities of the Second Series, a number, expressed as a number of basis points or as a percentage, selected by the Company and agreed to by the Remarketing Agent on the Duration/Mode Determination Date.

- 9 -

<PAGE>

The Indenture contains provisions for defeasance at any time of the entire indebtedness of this Security upon compliance with certain conditions set forth in the Indenture, including the Officer's Certificate described above.

If an Event of Default with respect to Securities of this series shall occur and be continuing, the principal of the Securities of this series may be declared due and payable in the manner and with the effect provided in the Indenture.

The Indenture permits, with certain exceptions as therein provided, the amendment thereof and the modification of the rights and obligations of the Company and the rights of the Holders of the Securities of each series to be affected under the Indenture at any time by the Company and the Trustee with the consent of the Holders of a majority in principal amount of the Securities at the time Outstanding of all series to be affected. The Indenture contains provisions permitting the Holders of a majority in aggregate principal amount of the Securities of all series then Outstanding to waive compliance by the Company with certain restrictive provisions of the Indenture. The Indenture also contains provisions permitting the Holders of specified percentages in principal amount of the Securities of each series at the time Outstanding, on behalf of the Holders of all Securities of such series, to waive certain past defaults under the Indenture and their consequences. Any such consent or waiver by the Holder of this Security shall be conclusive and binding upon such Holder and upon all future Holders of this Security and of any Security issued upon the registration of transfer hereof or in exchange herefor or in lieu hereof, whether or not notation of such consent or waiver is made upon this Security.

As provided in and subject to the provisions of the Indenture, the Holder of this Security shall not have the right to institute any proceeding with respect to the Indenture or for the appointment of a receiver or trustee or for any other remedy thereunder, unless such Holder shall have previously given the Trustee written notice of a continuing Event of Default with respect to the Securities of this series, the Holders of a majority in aggregate principal amount of the Securities of all series at the time Outstanding in respect of which an Event of Default shall have occurred and be continuing shall have made written request to the Trustee to institute proceedings in respect of such Event of Default as Trustee and offered the Trustee reasonable indemnity, and the Trustee shall not have received from the Holders of a majority in aggregate principal amount of Securities of all series at the time Outstanding in respect of which an Event of Default shall have occurred and be continuing a direction inconsistent with such request, and shall have failed to institute any such proceeding, for 60 days after receipt of such notice, request and offer of indemnity. The foregoing shall not apply to any suit instituted by the Holder of this Security for the enforcement of any payment of principal hereof or any premium or interest hereon on or after the respective due dates expressed herein.

No reference herein to the Indenture and no provision of this Security or of the Indenture shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of and any premium and interest on this Security at the times, place and rate, and in the coin or currency, herein prescribed.

The Securities of this series are issuable only in registered form without coupons in denominations of $1,000 and any integral multiple thereof. As provided in the Indenture and subject to

certain limitations therein set forth, Securities of this series
are exchangeable for a like aggregate principal amount of
Securities of this series and of like tenor and of authorized
denominations, as requested by the Holder surrendering the same.

- 10 -

<PAGE>

      No service charge shall be made for any such registration of
transfer or exchange, but the Company may require payment of a sum
sufficient to cover any tax or other governmental charge payable in
connection therewith.

      The Company, the Trustee and any agent of the Company or the
Trustee may treat the Person in whose name this Security is
registered as the absolute owner hereof for all purposes, whether
or not this Security be overdue, and neither the Company, the
Trustee nor any such agent shall be affected by notice to the
contrary.

      All terms used in this Security which are defined in the
Indenture shall have the meanings assigned to them in the
Indenture.

- 11 -

<PAGE>

                        LEGEND

    Unless and until this Security is exchanged in whole or in part for
certificated Securities registered in the names of the various beneficial
holders hereof as then certified to the Trustee by The Depository Trust Company
(55 Water Street, New York, New York) or its successor (the "Depositary"), this
Security may not be transferred except as a whole by the Depositary to a nominee
of the Depositary or by a nominee of the Depositary to the Depositary or another
nominee of the Depositary or by the Depositary or any such nominee to a
successor Depositary or a nominee of such successor Depositary.

    Unless this certificate is presented by an authorized representative of the
Depositary to the Company or its agent for registration of transfer, exchange or
payment, and any certificate to be issued is registered in the name of Cede &
Co., or such other name as requested by an authorized representative of the
Depositary and any amount payable thereunder is made payable to Cede & Co., or
such other name, ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE
BY OR TO ANY PERSON IS WRONGFUL since the registered owner hereof, Cede & Co.,
has an interest herein.

    This Security may be exchanged for certificated Securities registered in
the names of the various beneficial owners hereof if (a) the Depositary is at
any time unwilling or unable to continue as depositary and a successor
depositary is not appointed by the Company within 90 days, or (b) the Company
elects to issue certificated Securities to beneficial owners. Any such exchange
shall be made upon receipt by the Trustee of a Company Order therefor and
certificated Securities of this series shall be registered in such names and in
such denominations as shall be certified to the Company and the Trustee by the
Depositary.

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-4.(OO)
<SEQUENCE>10
<DESCRIPTION>ENSERCH CORPORATION 7% NOTE DUE 1999

&lt;TEXT&gt;

&lt;PAGE&gt;

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE
DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO ISSUER OR ITS AGENT
FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY CERTIFICATE ISSUED
IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY
AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO
SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY
TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON
IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST
HEREIN.

THIS SECURITY IS A BOOK-ENTRY SECURITY WITHIN THE MEANING OF THE INDENTURE
HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF A DEPOSITORY OR A
NOMINEE OF A DEPOSITORY.  THIS SECURITY IS EXCHANGEABLE FOR SECURITIES
REGISTERED IN THE NAME OF A PERSON OTHER THAN THE DEPOSITORY OR ITS NOMINEE ONLY
IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE, AND NO TRANSFER OF THIS
SECURITY (OTHER THAN A TRANSFER OF THIS SECURITY AS A WHOLE BY THE DEPOSITORY TO
A NOMINEE OF THE DEPOSITORY OR BY A NOMINEE OF THE DEPOSITORY TO THE DEPOSITORY
OR ANOTHER NOMINEE OF THE DEPOSITORY) MAY BE REGISTERED EXCEPT IN SUCH LIMITED
CIRCUMSTANCES.

ENSERCH CORPORATION
7% Notes Due 1999

No. 1                                                              $150,000,000
CUSIP No. 293567 AU 7

     ENSERCH Corporation, a corporation duly organized and existing under the
laws of the State of Texas (herein called the "Company", which term includes any
successor corporation under the Indenture hereinafter referred to), for value
received, hereby promises to pay to CEDE & CO., or registered assigns, the
principal sum of ONE HUNDRED FIFTY MILLION DOLLARS on August 15, 1999 and to pay
interest thereon from August 15, 1992 or from the most recent Interest Payment
Date to which interest has been paid or duly provided for, semi-annually on
August 15 and February 15 (each an "Interest Payment Date") in each year,
commencing February 15, 1993 at the rate of 7% per annum, until the principal
hereof is paid or made available for payment, and (to the extent that the
payment of such interest shall be legally enforceable) at the rate of 7% per
annum on any overdue principal and on any overdue installment of interest.  The
amount of interest payable on any Interest Payment Date shall be computed on the
basis of a 360-day year of twelve 30-day months. The interest so payable, and
punctually paid or duly provided for, on any Interest Payment Date will, as
provided in such Indenture, be paid to the Person in whose name this Security
(or one or more Predecessor Securities) is registered at the close of business
on the Regular Record Date for such interest, which shall be the August 1 or
February 1 (whether or not a Business Day), as the case may be, next preceding
such Interest Payment Date.  Any such interest not so punctually paid or duly
provided for will forthwith cease to be payable to the Holder on such Regular
Record Date and may either be paid to the Person in whose name this Security (or
one or more Predecessor Securities) is registered at the close of business on a
Special Record Date for the payment of such Defaulted Interest to be fixed by
the Trustee, notice whereof shall be given to Holders of Securities of this
series not less than 10 days prior to such Special Record Date, or be paid at
any time in any other lawful manner not inconsistent with the requirements of
any securities exchange on which the Securities of this series may be listed,
and upon such notice as may be required by such exchange, all as more fully
provided in said Indenture.

     Payment of the principal of and any such interest on this Security will be
made at the office or agency of the Company maintained for that purpose in the
City of New York, in such coin or currency of the United States of America as at
the time of payment is legal tender for payment of public and private debts;
provided, however, that at the option of the Company payment of interest may be

made by check mailed to the address of the Person entitled thereto as such address shall appear in the Security Register.

Reference is hereby made to the further provisions of this Security set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

Unless the certificate of authentication hereon has been executed by the Trustee referred to on the reverse hereof by manual signature, this Security shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose.

IN WITNESS WHEREOF, the Company has caused this instrument to be duly executed under its corporate seal.

                              ENSERCH CORPORATION

Dated: August 18, 1992              By /s/ Jerry W. Pinkerton
                                        Vice President


[CORPORATE SEAL]                    By /s/ A. E. Gallatin
                                        Treasurer


     This is one of the Securities of the series designated therein referred to in the within-mentioned Indenture.

                         THE FIRST NATIONAL BANK OF CHICAGO,
                              as Trustee

                         By /s/ Donne Fanning
                              Authorized Officer

<PAGE>

     This Security is one of a duly authorized issue of securities of the Company (herein called the "Securities"), issued and to be issued in one or more series under an Indenture, dated as of February 15, 1992 (herein called the "Indenture"), between the Company and The First National Bank of Chicago, as Trustee (herein called the "Trustee", which term includes any successor trustee under the Indenture), to which Indenture and all indentures supplemental thereto reference is hereby made for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Company, the Trustee and the Holders of the Securities and of the terms upon which the Securities are, and are to be, authenticated and delivered.  This Security is a global Book-Entry Security representing $150,000,000 principal amount of the series of Securities designated on the face hereof, limited in aggregate principal amount to $150,000,000.

     The Securities of this series are not redeemable in whole or in part at any time prior to maturity.

     If an Event of Default with respect to Securities of this series shall occur and be continuing, the principal of the Securities of this series may be declared due and payable in the manner and with the effect provided in the Indenture.

     The Indenture contains provisions for defeasance at any time of (a) the entire indebtedness of this Security and (b) certain restrictive covenants, in each case upon compliance by the Company with certain conditions set forth therein, which provisions apply to this Security.

     The Indenture permits, with certain exceptions as therein provided, the amendment thereof and the modification of the rights and obligations of the Company and the rights of the Holders of the Securities of each series to be affected under the Indenture at any time by the Company and the Trustee with the consent of the Holders of at least a majority in principal amount of the

Securities at the time Outstanding of each series to be affected. The Indenture also contains provisions permitting the Holders of specified percentages in principal amount of the Securities of each series at the time Outstanding, on behalf of the Holders of all Securities of such series, to waive compliance by the Company with certain provisions of the Indenture and certain past defaults under the Indenture and their consequences. Any such consent or waiver by the Holder of this Security shall be conclusive and binding upon such Holder and upon all future Holders of this Security and of any Security issued upon the registration of transfer hereof or in exchange herefor or in lieu hereof, whether or not notation of such consent or waiver is made upon this Security.

No reference herein to the Indenture and no provision of this Security or of the Indenture shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of and interest on this Security at the times, place and rate, and in the coin or currency, herein prescribed.

As provided in the Indenture and subject to certain limitations herein and therein set forth, the transfer of this Security is registrable in the Security Register, upon surrender of this Security for registration of transfer at the office or agency of the Company in any place where the principal of and interest on this Security are payable, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Company and the Security Registrar duly executed by, the Holder hereof or his attorney duly authorized in writing, and thereupon one or more new Securities of this series, of authorized denominations and for the same aggregate principal amount, will be issued to the designated transferee or transferees.

This global Book-Entry Security is exchangeable for Securities in definitive form only under certain limited circumstances set forth in the Indenture. Securities of this series so issued are issuable only in registered form without coupons in denominations of $1,000 and any integral multiple thereof. As provided in the Indenture and subject to certain limitations herein and therein set forth, Securities of this series so issued are exchangeable for a like aggregate principal amount of Securities of this series of a different authorized denomination, as requested by the Holder surrendering the same.

No service charge shall be made for any such registration of transfer or exchange, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith.

Prior to due presentment of this Security for registration of transfer, the Company, the Trustee and any agent of the Company or the Trustee may treat the Person in whose name this Security is registered as the owner hereof for all purposes, whether or not this Security be overdue, and neither the Company, the Trustee nor any such agent shall be affected by notice to the contrary.

All terms used in this Security which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

--------------------

ABBREVIATIONS

The following abbreviations, when used in the inscription on the face of the within Security, shall be construed as though they were written out in full according to applicable laws or regulations.


TEN COM - as tenants in common
TEN ENT - as tenants by the entireties
JT TEN  - as joint tenants with right of
          survivorship and not as tenants
          in common

UNIF GIFT MIN ACT -  ..................   Custodian .......................

                                              (Minor)

                    under Uniform Gifts to Minors Act

          ...................................................
                                  (State)

    Additional abbreviations may also be used though not in the above list.

                        --------------------

     FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR OTHER
    IDENTIFYING NUMBER OF ASSIGNEE

[_____]

(PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS, INCLUDING ZIP CODE, OF ASSIGNEE)

- -------------------------------------------------------------------------------

- -------------------------------------------------------------------------------
the within Security of ENSERCH CORPORATION and hereby does irrevocably
constitute and appoint

- -------------------------------------------------------------------------------

- -------------------------------------------------------------------------------
                                                              Attorney
- ---------------------------------------------------------------------
to transfer the said Security on the books of the within-named Corporation, with
full power of substitution in the premises.

Dated
        ----------------------------------------------------------

Signature Guaranteed by:
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-4.(PP)
<SEQUENCE>11
<DESCRIPTION>ENSERCH CORPORATION 8 7/8% NOTE DUE 2001
<TEXT>

<PAGE>

                                            Exhibit 4 (pp)
<PAGE>

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE
DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO ISSUER OR ITS AGENT
FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY CERTIFICATE ISSUED
IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY
AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO
SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY
TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON
IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST
HEREIN.

THIS SECURITY IS A BOOK-ENTRY SECURITY WITHIN THE MEANING OF THE INDENTURE
HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF A DEPOSITORY OR A
NOMINEE OF A DEPOSITORY.  THIS SECURITY IS EXCHANGEABLE FOR SECURITIES
REGISTERED IN THE NAME OF A PERSON OTHER THAN THE DEPOSITORY OR ITS NOMINEE ONLY
IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE, AND NO TRANSFER OF THIS

SECURITY (OTHER THAN A TRANSFER OF THIS SECURITY AS A WHOLE BY THE DEPOSITORY TO
A NOMINEE OF THE DEPOSITORY OR BY A NOMINEE OF THE DEPOSITORY TO THE DEPOSITORY
OR ANOTHER NOMINEE OF THE DEPOSITORY) MAY BE REGISTERED EXCEPT IN SUCH LIMITED
CIRCUMSTANCES.

ENSERCH CORPORATION
8 7/8% Notes Due 2001

No. 1                                                                    $100,000,000
CUSIP No. 293567 AS2

ENSERCH Corporation, a corporation duly organized and existing under the
laws of the State of Texas (herein called the "Company", which term includes any
successor corporation under the Indenture hereinafter referred to), for value
received, hereby promises to pay to CEDE & CO., or registered assigns, the
principal sum of ONE HUNDRED MILLION DOLLARS on March 15, 2001 and to pay
interest thereon from March 15, 1992 or from the most recent Interest Payment
Date to which interest has been paid or duly provided for, semi-annually on
March 15 and September 15 (each an "Interest Payment Date") in each year,
commencing September 15, 1992 at the rate of 8 7/8% per annum, until the
principal hereof is paid or made available for payment, and (to the extent that
the payment of such interest shall be legally enforceable) at the rate of 8 7/8%
per annum on any overdue principal and on any overdue installment of interest.
The amount of interest payable on any Interest Payment Date shall be computed on
the basis of a 360-day year of twelve 30-day months.  The interest so payable,
and punctually paid or duly provided for, on any Interest Payment Date will, as
provided in such Indenture, be paid to the Person in whose name this Security
(or one or more Predecessor Securities) is registered at the close of business
on the Regular Record Date for such interest, which shall be the March 1 or
September 1 (whether or not a Business Day), as the case may be, next preceding
such Interest Payment Date.  Any such interest not so punctually paid or duly
provided for will forthwith cease to be payable to the Holder on such Regular
Record Date and may either be paid to the Person in whose name this Security (or
one or more Predecessor Securities) is registered at the close of business on a
Special Record Date for the payment of such Defaulted Interest to be fixed by
the Trustee, notice whereof shall be given to Holders of Securities of this
series not less than 10 days prior to such Special Record Date, or be paid at
any time in any other lawful manner not inconsistent with the requirements of
any securities exchange on which the Securities of this series may be listed,
and upon such notice as may be required by such exchange, all as more fully
provided in said Indenture.

Payment of the principal of and any such interest on this Security will be
made at the office or agency of the Company maintained for that purpose in the
City of New York, in such coin or currency of the United States of America as at
the time of payment is legal tender for payment of public and private debts;
provided, however, that at the option of the Company payment of interest may be
- -------- -------
made by check mailed to the address of the Person entitled thereto as such
address shall appear in the Security Register.

Reference is hereby made to the further provisions of this Security set
forth on the reverse hereof, which further provisions shall for all purposes
have the same effect as if set forth at this place.

Unless the certificate of authentication hereon has been executed by the
Trustee referred to on the reverse hereof by manual signature, this Security
shall not be entitled to any benefit under the Indenture or be valid or
obligatory for any purpose.

IN WITNESS WHEREOF, the Company has caused this instrument to be duly
executed under its corporate seal.

ENSERCH CORPORATION

```
Dated: March 17, 1992                 By /s/ Benjamin A. Brown
                                               Vice President


[CORPORATE SEAL]                      By /s/ A. E. Gallatin
                                               Treasurer
```

     This is one of the Securities of the series designated therein referred to
in the within-mentioned Indenture.

```
                    THE FIRST NATIONAL BANK OF CHICAGO,
                              as Trustee

                         By /s/ L. D.
                              Authorized Officer
```

<PAGE>

     This Security is one of a duly authorized issue of securities of the
Company (herein called the "Securities"), issued and to be issued in one or more
series under an Indenture, dated as of February 15, 1992 (herein called the
"Indenture"), between the Company and The First National Bank of Chicago, as
Trustee (herein called the "Trustee", which term includes any successor trustee
under the Indenture), to which Indenture and all indentures supplemental thereto
reference is hereby made for a statement of the respective rights, limitations
of rights, duties and immunities thereunder of the Company, the Trustee and the
Holders of the Securities and of the terms upon which the Securities are, and
are to be, authenticated and delivered. This Security is a global Book-Entry
Security representing $100,000,000 principal amount of the series of Securities
designated on the face hereof, limited in aggregate principal amount to
$100,000,000.

     The Securities of this series are subject to redemption upon not less than
30 days' notice by mail at any time, as a whole or in part, at the election of
the Company, at the following Redemption Prices (expressed as percentages of the
principal amount): If redeemed on or before March 15, 1993, 107.812% and, if
redeemed during the 12-month period beginning March 15 of the years indicated,

| Year | Redemption Price |
| --- | --- |
| 1993 | 106.510% |
| 1994 | 105.208 |
| 1995 | 103.906 |
| 1996 | 102.604 |
| 1997 | 101.302 |
| 1998 | 100.000 |

and thereafter at a Redemption Price equal to 100% of the principal amount,
together in the case of any such redemption with accrued interest to the
Redemption Date, but interest installments whose Stated Maturity is on or prior
to such Redemption Date will be payable to the Holders of such Securities, or
one or more Predecessor Securities, of record at the close of business on the
relevant Record Dates referred to on the face hereof, all as provided in the
Indenture.

     Notwithstanding the foregoing, the Company may not, prior to March 15,
1997, redeem any Securities of this series as contemplated by the preceding
paragraph as a part of, or in anticipation of, any refunding operation by the
application, directly or indirectly, of money's borrowed having an interest cost
to the Company (calculated in accordance with generally accepted financial
practice) of less than 9.163% per annum.

     If an Event of Default with respect to Securities of this series shall
occur and be continuing, the principal of the Securities of this series may be

declared due and payable in the manner and with the effect provided in the Indenture.

The Indenture contains provisions for defeasance at any time of (a) the entire indebtedness of this Security and (b) certain restrictive covenants, in each case upon compliance by the Company with certain conditions set forth therein, which provisions apply to this Security.

The Indenture permits, with certain exceptions as therein provided, the amendment thereof and the modification of the rights and obligations of the Company and the rights of the Holders of the Securities of each series to be affected under the Indenture at any time by the Company and the Trustee with the consent of the Holders of at least a majority in principal amount of the Securities at the time Outstanding of each series to be affected. The Indenture also contains provisions permitting the Holders of specified percentages in principal amount of the Securities of each series at the time Outstanding, on behalf of the Holders of all Securities of such series, to waive compliance by the Company with certain provisions of the Indenture and certain past defaults under the Indenture and their consequences.  Any such consent or waiver by the Holder of this Security shall be conclusive and binding upon such Holder and upon all future Holders of this Security and of any Security issued upon the registration of transfer hereof or in exchange hereof or in lieu hereof, whether or not notation of such consent or waiver is made upon this Security.

No reference herein to the Indenture and no provision of this Security or of the Indenture shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of and interest on this Security at the times, place and rate, and in the coin or currency, herein prescribed.

As provided in the Indenture and subject to certain limitations herein and therein set forth, the transfer of this Security is registrable in the Security Register, upon surrender of this Security for registration of transfer at the office or agency of the Company in any place where the principal of and interest on this Security are payable, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Company and the Security Registrar duly executed by, the Holder hereof or his attorney duly authorized in writing, and thereupon one or more new Securities of this series, of authorized denominations and for the same aggregate principal amount, will be issued to the designated transferee or transferees.

This global Book-Entry Security is exchangeable for Securities in definitive form only under certain limited circumstances set forth in the Indenture. Securities of this series so issued are issuable only in registered form without coupons in denominations of $1,000 and any integral multiple thereof.  As provided in the Indenture and subject to certain limitations herein and therein set forth, Securities of this series so issued are exchangeable for a like aggregate principal amount of Securities of this series of a different authorized denomination, as requested by the Holder surrendering the same.

No service charge shall be made for any such registration of transfer or exchange, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith.

Prior to due presentment of this Security for registration of transfer, the Company, the Trustee and any agent of the Company or the Trustee may treat the Person in whose name this Security is registered as the owner hereof for all purposes, whether or not this Security is overdue, and neither the Company, the Trustee nor any such agent shall be affected by notice to the contrary.

All terms used in this Security which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

--------------------
ABBREVIATIONS

The following abbreviations, when used in the inscription on the face of the within Security, shall be construed as though they were written out in full according to applicable laws or regulations.


TEN COM - as tenants in common
TEN ENT - as tenants by the entireties

JT TEN  - as joint tenants with right of
          survivorship and not as tenants
          in common

UNIF GIFT MIN ACT -  .............  Custodian .......................
                        (Cust)
                                    (Minor)

                    under Uniform Gifts to Minors Act

          ..............................................
(State)

    Additional abbreviations may also be used though not in the above list.

                    --------------------

   FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR OTHER
   IDENTIFYING NUMBER OF ASSIGNEE

- ---------------------------------------------

- ---------------------------------------------

(PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS, INCLUDING ZIP CODE, OF ASSIGNEE)

- ------------------------------------------------------------------------------

- ------------------------------------------------------------------------------
the within Security of ENSERCH CORPORATION and hereby does irrevocably
constitute and appoint

- ------------------------------------------------------------------------------

- ------------------------------------------------------------------------------

- ------------------------------------------------------------------ Attorney
to transfer the said Security on the books of the within-named Corporation, with
full power of substitution in the premises.
Dated
_____

Signature Guaranteed by:
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-4.(QQ)
<SEQUENCE>12
<DESCRIPTION>ENSERCH CORPORATION 6 3/8% NOTE DUE 2004
<TEXT>

<PAGE>

                                   Exhibit 4(qq)

<PAGE>

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE
DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO ISSUER OR ITS AGENT
FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY CERTIFICATE ISSUED
IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY
AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO
SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY
TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON
IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST
HEREIN.


THIS SECURITY IS A BOOK-ENTRY SECURITY WITHIN THE MEANING OF THE INDENTURE
HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF A DEPOSITORY OR A
NOMINEE OF A DEPOSITORY.  THIS SECURITY IS EXCHANGEABLE FOR SECURITIES
REGISTERED IN THE NAME OF A PERSON OTHER THAN THE DEPOSITORY OR ITS NOMINEE ONLY
IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE, AND NO TRANSFER OF THIS
SECURITY (OTHER THAN A TRANSFER OF THIS SECURITY AS A WHOLE BY THE DEPOSITORY TO
A NOMINEE OF THE DEPOSITORY OR BY A NOMINEE OF THE DEPOSITORY TO THE DEPOSITORY
OR ANOTHER NOMINEE OF THE DEPOSITORY) MAY BE REGISTERED EXCEPT IN SUCH LIMITED
CIRCUMSTANCES.


                        ENSERCH CORPORATION
                        6 3/8% Notes Due 2004


No. 1                                                   $150,000,000
CUSIP No. 293567 AT 0


     ENSERCH Corporation, a corporation duly organized and existing under the
laws of the State of Texas (herein called the "Company", which term includes any
successor corporation under the Indenture hereinafter referred to), for value
received, hereby promises to pay to CEDE & CO., or registered assigns, the
principal sum of ONE HUNDRED FIFTY MILLION DOLLARS on February 1, 2004 and to
pay interest thereon from February 1, 1994 or from the most recent Interest
Payment Date to which interest has been paid or duly provided for, semi-annually
on August 1 and February 1 (each an "Interest Payment Date") in each year,
commencing August 1, 1994 at the rate of 6 3/8% per annum, until the principal
hereof is paid or made available for payment, and (to the extent that the
payment of such interest shall be legally enforceable) at the rate of 6 3/8% per
annum on any overdue principal and on any overdue installment of interest.  The
amount of interest payable on any Interest Payment Date shall be computed on the
basis of a 360-day year of twelve 30-day months.  The interest so payable, and
punctually paid or duly provided for, on any Interest Payment Date will, as
provided in such Indenture, be paid to the Person in whose name this Security
(or one or more Predecessor Securities) is registered at the close of business
on the Regular Record Date for such interest, which shall be the July 15 or
January 15 (whether or not a Business Day), as the case may be, next preceding
such Interest Payment Date. Any such interest not so punctually paid or duly
provided for will forthwith cease to be payable to the Holder on such Regular
Record Date and may either be paid to the Person in whose name this Security (or
one or more Predecessor Securities) is registered at the close of business on a
Special Record Date for the payment of such Defaulted Interest to be fixed by
the Trustee, notice whereof shall be given to Holders of Securities of this
series not less than 10 days prior to such Special Record Date, or be paid at
any time in any other lawful manner not inconsistent with the requirements of
any securities exchange on which the Securities of this series may be listed,
and upon such notice as may be required by such exchange, all as more fully
provided in said Indenture.


     Payment of the principal of and any such interest on this Security will be
made at the office or agency of the Company maintained for that purpose in the
City of New York, in such coin or currency of the United States of America as at
the time of payment is legal tender for payment of public and private debts;
provided, however, that at the option of the Company payment of interest may be
- -------- -------
made by check mailed to the address of the Person entitled thereto as such
address shall appear in the Security Register.

EFH01435065

Reference is hereby made to the further provisions of this Security set
forth on the reverse hereof, which further provisions shall for all purposes
have the same effect as if set forth at this place.

Unless the certificate of authentication hereon has been executed by the
Trustee referred to on the reverse hereof by manual signature, this Security
shall not be entitled to any benefit under the Indenture or be valid or
obligatory for any purpose.

IN WITNESS WHEREOF, the Company has caused this instrument to be duly
executed under its corporate seal.

                                    ENSERCH CORPORATION

Dated:  February 1, 1994            By  /s/  S. R. Singer
                                             Vice President


[CORPORATE SEAL]                    By  /s/  A. E. Gallatin
                                             Treasurer


    This is one of the Securities of the series designated therein referred to
in the within-mentioned Indenture.

                            THE FIRST NATIONAL BANK OF CHICAGO,
                               as Trustee


                            By  /s/  Suzanne A.
                                     Authorized Officer

<PAGE>

    This Security is one of a duly authorized issue of securities of the
Company (herein called the "Securities"), issued and to be issued in one or more
series under an Indenture, dated as of February 15, 1992 (herein called the
"Indenture"), between the Company and The First National Bank of Chicago, as
Trustee (herein called the "Trustee", which term includes any successor trustee
under the Indenture), to which Indenture and all indentures supplemental thereto
reference is hereby made for a statement of the respective rights, limitations
of rights, duties and immunities thereunder of the Company, the Trustee and the
Holders of the Securities and of the terms upon which the Securities are, and
are to be, authenticated and delivered.  This Security is a global Book-Entry
Security representing $150,000,000 principal amount of the series of Securities
designated on the face hereof, limited in aggregate principal amount to
$150,000,000.

    The Securities of this series are not redeemable in whole or in part at any
time prior to maturity.

    If an Event of Default with respect to Securities of this series shall
occur and be continuing, the principal of the Securities of this series may be
declared due and payable in the manner and with the effect provided in the
Indenture.

    The Indenture contains provisions for defeasance at any time of (a) the
entire indebtedness of this Security and (b) certain restrictive covenants, in
each case upon compliance by the Company with certain conditions set forth
therein, which provisions apply to this Security.

    The Indenture permits, with certain exceptions as therein provided, the
amendment thereof and the modification of the rights and obligations of the
Company and the rights of the Holders of the Securities of each series to be
affected under the Indenture at any time by the Company and the Trustee with the
consent of the Holders of at least a majority in principal amount of the
Securities at the time Outstanding of each series to be affected.  The Indenture
also contains provisions permitting the Holders of specified percentages in
principal amount of the Securities of each series at the time Outstanding, on
behalf of the Holders of all Securities of such series, to waive compliance by

the Company with certain provisions of the Indenture and certain past defaults under the Indenture and their consequences.  Any such consent or waiver by the Holder of this Security shall be conclusive and binding upon such Holder and upon all future Holders of this Security and of any Security issued upon the registration of transfer hereof or in exchange herefor or in lieu hereof, whether or not notation of such consent or waiver is made upon this Security.

No reference herein to the Indenture and no provision of this Security or of the Indenture shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of and interest on this Security at the times, place and rate, and in the coin or currency, herein prescribed.

As provided in the Indenture and subject to certain limitations herein and therein set forth, the transfer of this Security is registrable in the Security Register, upon surrender of this Security for registration of transfer at the office or agency of the Company in any place where the principal of and interest on this Security are payable, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Company and the Security Registrar duly executed by, the Holder hereof or his attorney duly authorized in writing, and thereupon one or more new Securities of this series, of authorized denominations and for the same aggregate principal amount, will be issued to the designated transferee or transferees.

This global Book-Entry Security is exchangeable for Securities in definitive form only under certain limited circumstances set forth in the Indenture.  Securities of this series so issued are issuable only in registered form without coupons in denominations of $1,000 and any integral multiple thereof.  As provided in the Indenture and subject to certain limitations herein and therein set forth, Securities of this series so issued are exchangeable for a like aggregate principal amount of Securities of this series of a different authorized denomination, as requested by the Holder surrendering the same.

No service charge shall be made for any such registration of transfer or exchange, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith.

Prior to due presentment of this Security for registration of transfer, the Company, the Trustee and any agent of the Company or the Trustee may treat the Person in whose name this Security is registered as the owner hereof for all purposes, whether or not this Security be overdue, and neither the Company, the Trustee nor any such agent shall be affected by notice to the contrary.

All terms used in this Security which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

--------------------

ABBREVIATIONS

The following abbreviations, when used in the inscription on the face of the within Security, shall be construed as though they were written out in full according to applicable laws or regulations.

TEN COM    as tenants in common              UNIF GIFT MIN ACT - ...Custodian..
TEN ENT    as tenants by the entireties                         (Cust)
      (Minor)

JT TEN     as joint tenants with right of    under Uniform Gifts to Minors Act
           survivorship and not as tenants   ................................
           in common

   (State)

Additional abbreviations may also be used though not in the above list.

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR OTHER
  IDENTIFYING NUMBER OF ASSIGNEE
- --------------------------------------------

- --------------------------------------------

 (PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS, INCLUDING ZIP CODE, OF ASSIGNEE)
- -------------------------------------------------------------------------

- -------------------------------------------------------------------------

- -------------------------------------------------------------------------
the within Security of ENSERCH CORPORATION and hereby does irrevocably
constitute and appoint

                                                            Attorney
- ------------------------------------------------------------------------
to transfer the said Security on the books of the within-named Corporation, with
full power of substitution in the premises.

Dated
                                         --------------------------------

Signature Guaranteed by:
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-4.(RR)
<SEQUENCE>13
<DESCRIPTION>ENSERCH CORPORATION 7 1/8% NOTE DUE 2005
<TEXT>

<PAGE>

                                               Exhibit 4 (rr)

<PAGE>

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE
DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO ISSUER OR ITS AGENT
FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY CERTIFICATE ISSUED
IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY
AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO
SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY
TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON
IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST
HEREIN.

THIS SECURITY IS A BOOK-ENTRY SECURITY WITHIN THE MEANING OF THE INDENTURE
HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF A DEPOSITORY OR A
NOMINEE OF A DEPOSITORY. THIS SECURITY IS EXCHANGEABLE FOR SECURITIES REGISTERED
IN THE NAME OF A PERSON OTHER THAN THE DEPOSITORY OR ITS NOMINEE ONLY IN THE
LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE, AND NO TRANSFER OF THIS
SECURITY (OTHER THAN A TRANSFER OF THIS SECURITY AS A WHOLE BY THE DEPOSITORY TO
A NOMINEE OF THE DEPOSITORY OR BY A NOMINEE OF THE DEPOSITORY TO THE DEPOSITORY
OR ANOTHER NOMINEE OF THE DEPOSITORY) MAY BE REGISTERED EXCEPT IN SUCH LIMITED
CIRCUMSTANCES.

ENSERCH CORPORATION
7 1/8% Notes Due 2005

No. 1                                                              $150,000,000
CUSIP No. 293567 AV5

    ENSERCH Corporation, a corporation duly organized and existing under the
laws of the State of Texas (herein called the "Company", which term includes any
successor corporation under the Indenture hereinafter referred to), for value
received, hereby promises to pay to CEDE & CO., or registered assigns, the
principal sum of ONE HUNDRED FIFTY MILLION DOLLARS on June 15, 2005 and to pay
interest thereon from June 6, 1995 or from the most recent Interest Payment Date
to which interest has been paid or duly provided for, semi-annually on June 15
and December 15 (each an "Interest Payment Date") in each year, commencing
December 15, 1995 at the rate of 7 1/8% per annum, until the principal hereof is
paid or made available for payment, and (to the extent that the payment of such
interest shall be legally enforceable) at the rate of 7 1/8% per annum on any
overdue principal and on any overdue installment of interest.  The amount of
interest payable on any Interest Payment Date shall be computed on the basis of
a 360-day year of twelve 30-day months.  The interest so payable, and punctually
paid or duly provided for, on any Interest Payment Date will, as provided in
such Indenture, be paid to the Person in whose name this Security (or one or
more Predecessor Securities) is registered at the close of business on the
Regular Record Date for such interest, which shall be the June 1 or December 1
(whether or not a Business Day), as the case may be, next preceding such
Interest Payment Date.  Any such interest not so punctually paid or duly
provided for will forthwith cease to be payable to the Holder on such Regular
Record Date and may either be paid to the Person in whose name this Security (or
one or more Predecessor Securities) is registered at the close of business on a
Special Record Date for the payment of such Defaulted Interest to be fixed by
the Trustee, notice whereof shall be given to Holders of Securities of this
series not less than 10 days prior to such Special Record Date, or be paid at
any time in any other lawful manner not inconsistent with the requirements of
any securities exchange on which the Securities of this series may be listed,
and upon such notice as may be required by such exchange, all as more fully
provided in said Indenture.

    Payment of the principal of and any such interest on this Security will be
made at the office or agency of the Company maintained for that purpose in the
City of New York, in such coin or currency of the United States of America as at
the time of payment is legal tender for payment of public and private debts;
provided, however, that at the option of the Company payment of interest may be
- --------  -------
made by check mailed to the address of the Person entitled thereto as such
address shall appear in the Security Register.

    Reference is hereby made to the further provisions of this Security set
forth on the reverse hereof, which further provisions shall for all purposes
have the same effect as if set forth at this place.

    Unless the certificate of authentication hereon has been executed by the
Trustee referred to on the reverse hereof by manual signature, this Security
shall not be entitled to any benefit under the Indenture or be valid or
obligatory for any purpose.

    IN WITNESS WHEREOF, the Company has caused this instrument to be duly
executed under its corporate seal.

                                      ENSERCH CORPORATION


Dated:  June 6, 1995                  By  /s/  S. R. Singer
                                          Senior Vice President


[CORPORATE SEAL]                      By  /s/  A. E. Gallatin

     This is one of the Securities of the series designated therein referred to
in the within-mentioned Indenture.

                              THE FIRST NATIONAL BANK OF CHICAGO,
                                    as Trustee


                         By   M Weisman
                              Authorized Officer

<PAGE>

     This Security is one of a duly authorized issue of securities of the
Company (herein called the "Securities"), issued and to be issued in one or more
series under an Indenture, dated as of February 15, 1992 (herein called the
"Indenture"), between the Company and The First National Bank of Chicago, as
Trustee (herein called the "Trustee", which term includes any successor trustee
under the Indenture), to which Indenture and all indentures supplemental thereto
reference is hereby made for a statement of the respective rights, limitations
of rights, duties and immunities thereunder of the Company, the Trustee and the
Holders of the Securities and of the terms upon which the Securities are, and
are to be, authenticated and delivered.  This Security is a global Book-Entry
Security representing $150,000,000 principal amount of the series of Securities
designated on the face hereof, limited in aggregate principal amount to
$150,000,000.

     The Securities of this series are not redeemable in whole or in part at any
time prior to maturity.

     If an Event of Default with respect to Securities of this series shall
occur and be continuing, the principal of the Securities of this series may be
declared due and payable in the manner and with the effect provided in the
Indenture.

     The Indenture contains provisions for defeasance at any time of (a) the
entire indebtedness of this Security and (b) certain restrictive covenants, in
each case upon compliance by the Company with certain conditions set forth
therein, which provisions apply to this Security.

     The Indenture permits, with certain exceptions as therein provided, the
amendment thereof and the modification of the rights and obligations of the
Company and the rights of the Holders of the Securities of each series to be
affected under the Indenture at any time by the Company and the Trustee with the
consent of the Holders of at least a majority in principal amount of the
Securities at the time Outstanding of each series to be affected.  The Indenture
also contains provisions permitting the Holders of specified percentages in
principal amount of the Securities of each series at the time Outstanding, on
behalf of the Holders of all Securities of such series, to waive compliance by
the Company with certain provisions of the Indenture and certain past defaults
under the Indenture and their consequences.  Any such consent or waiver by the
Holder of this Security shall be conclusive and binding upon such Holder and
upon all future Holders of this Security and of any Security issued upon the
registration of transfer hereof or in exchange herefor or in lieu hereof,
whether or not notation of such consent or waiver is made upon this Security.

     No reference herein to the Indenture and no provision of this Security or
of the Indenture shall alter or impair the obligation of the Company, which is
absolute and unconditional, to pay the principal of and interest on this
Security at the times, place and rate, and in the coin or currency, herein
prescribed.

     As provided in the Indenture and subject to certain limitations herein and
therein set forth, the transfer of this Security is registrable in the Security
Register, upon surrender of this Security for registration of transfer at the
office or agency of the Company in any place where the principal of and interest
on this Security are payable, duly endorsed by, or accompanied by a written

instrument of transfer in form satisfactory to the Company and the Security Registrar duly executed by, the Holder hereof or his attorney duly authorized in writing, and thereupon one or more new Securities of this series, of authorized denominations and for the same aggregate principal amount, will be issued to the designated transferee or transferees.

This global Book-Entry Security is exchangeable for Securities in definitive form only under certain limited circumstances set forth in the Indenture.  Securities of this series are issuable only in registered form without coupons in denominations of $1,000 and any integral multiple thereof.  As provided in the Indenture and subject to certain limitations herein and therein set forth, Securities of this series so issued are exchangeable for a like aggregate principal amount of Securities of this series of a different authorized denomination, as requested by the Holder surrendering the same.

No service charge shall be made for any such registration of transfer or exchange, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith.

Prior to due presentment of this Security for registration of transfer, the Company, the Trustee and any agent of the Company or the Trustee may treat the Person in whose name this Security is registered as the owner hereof for all purposes, whether or not this Security be overdue, and neither the Company, the Trustee nor any such agent shall be affected by notice to the contrary.

All terms used in this Security which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

                    ---------------------

                         ABBREVIATIONS

    The following abbreviations, when used in the inscription on the face of the within Security, shall be construed as though they were written out in full according to applicable laws or regulations.


TEN COM  -  as tenants in common          UNIF GIFT MIN ACT -
TEN ENT  -  as tenants by the entireties            Custodian
      (Minor)                             -----------    -------------
                                            (Cust)
JT TEN   -  as joint tenants with right of  under Uniform Gifts to Minors Act
            survivorship and not as tenants _____
            in common
   (State)

    Additional abbreviations may also be used though not in the above list.

                    ---------------------

    FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR OTHER
    IDENTIFYING NUMBER OF ASSIGNEE
- ------------------------------------------

- ------------------------------------------

   (PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS, INCLUDING ZIP CODE, OF ASSIGNEE)
- ---------------------------------------------------------------------------

_____

_____

the within Security of ENSERCH CORPORATION and hereby does irrevocably

EFH01435071

constitute and appoint

_____

_____Attorney

to transfer the said Security on the books of the within-named Corporation, with
full power of substitution in the premises.

Dated

                        --------------------------------


Signature Guaranteed by:
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-10.(N)
<SEQUENCE>14
<DESCRIPTION>AMENDMENT
<TEXT>

<PAGE>

                                                Exhibit 10(n)
                                                EXECUTION COPY

                              AMENDMENT


     This AMENDMENT, dated as of March 23, 1998, among TEXAS UTILITIES COMPANY,
a Texas corporation (the "BORROWER"), the lenders parties to the Credit
Agreement referred to below (the "LENDERS"), THE CHASE MANHATTAN BANK, as
Competitive Advance Facility Agent (the "CAF AGENT"), and CHASE BANK OF TEXAS,
NATIONAL ASSOCIATION, as administrative agent for the lenders (the
"ADMINISTRATIVE AGENT" and, together with the CAF Agent, the "AGENTS").

                       PRELIMINARY STATEMENTS:

     (1) The Borrowers, the Lenders and the Agents have entered into a $900
million 364-Day Competitive Advance and Revolving Credit Facility Agreement (the
"CREDIT AGREEMENT"), dated as of March 6, 1998.  Capitalized terms used but not
defined herein are used with the meanings assigned to them in the Credit
Agreement.

     (2) The Borrowers and the Lenders have agreed to amend the Credit Agreement
to increase the amount of the Commitments and to make certain conforming changes
in the Credit Agreement as hereinafter set forth.

     SECTION 1.  AMENDMENTS TO CREDIT AGREEMENT.  The Credit Agreement is,
effective as of the date hereof and subject to the satisfaction of the
conditions precedent set forth in Section 2 hereof, hereby amended as follows:

          (a)     The cover page to the Credit Agreement and the preamble thereto
     are amended by deleting therefrom the figure "$900,000,000" and replacing
     it with the figure "$1,650,000,000".

          (b)     Section 2.01 is amended by deleting therefrom the figure
     "$2,000,000,000" and replacing it with the figure "$2,600,000,000".

          (c)     Section 5.13 is amended by deleting from clause (A) thereof the
     figure "$3,100,000,000" and replacing it with the figure "$4,000,000,000".

          (d)     Schedule 2.01 is deleted in its entirety and replaced by a new
     Schedule 2.01 in the form of Exhibit A hereto.

SECTION 2.  CONDITIONS OF EFFECTIVENESS.  This Amendment shall become effective when, and only when, the Administrative Agent shall have received counterparts of this Amendment

1

<PAGE>

2

executed by the Borrower and the Required Lenders, and Section 1 hereof shall become effective when, and only when, the Administrative Agent shall have additionally received favorable opinions of Reid & Priest LLP and Worsham, Forsythe & Wooldridge, L.L.P., each to the effect that this Amendment has been duly authorized, executed and delivered by the Borrower and confirming the opinion of such counsel furnished on March 6, 1998 pursuant to Section 4.01(c) of the Credit Agreement, with references therein to the Credit Agreement to mean this Amendment and the Credit Agreement, as amended by this Amendment.

SECTION 3.  REPRESENTATIONS AND WARRANTIES OF THE BORROWER.  The Borrower confirms and repeats, as of the date hereof and as of the effective date hereof, the representations and warranties made by the Borrower in Article III of the Credit Agreement, with references therein to the Credit Agreement to be deemed to be references to this Amendment and the Credit Agreement, as amended by this Amendment.

SECTION 4.  REFERENCE TO AND EFFECT ON THE CREDIT AGREEMENTS.  Upon the effectiveness of Section 1 hereof, on and after the date hereof each reference in the Credit Agreement to "this Agreement", "hereunder", "hereof" or words of like import referring to the Credit Agreement shall mean and be a reference to the Credit Agreement, as amended hereby.  Except as specifically amended above, the Credit Agreement is and shall continue to be in full force and effect and is hereby in all respects ratified and confirmed.  The execution, delivery and effectiveness of this Amendment shall not, except as expressly provided herein, operate as a waiver of any right, power or remedy of any Lender or any Agent under the Credit Agreement, nor constitute a waiver of any provision of the Credit Agreement.

SECTION 5.  COSTS AND EXPENSES.  The Borrower agrees to pay all reasonable out-of-pocket expenses incurred by the Agents in connection with entering into this Amendment (whether or not the transactions hereby contemplated are consummated), or incurred by the Agents or any Lender in connection with the enforcement of their rights in connection with this Amendment.

SECTION 6.  EXECUTION IN COUNTERPARTS.  This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same agreement.

SECTION 7.  GOVERNING LAW.  This Amendment shall be governed by, and construed in accordance with, the laws of the State of New York.
<PAGE>

S-1

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective officers thereunto duly authorized, as of the date first above written.

TEXAS UTILITIES COMPANY


By   /s/ Robert S. Shapard
   --------------------------------------

Name: Robert S. Shapard
Title: Treasurer

                    [SIGNATURE PAGE TO AMENDMENT]
<PAGE>

                                                            S-2


                    CHASE BANK OF TEXAS, NATIONAL
                     ASSOCIATION, as Administrative Agent


                    By   /s/ Thomas Kozlark
                         ---------------------------------------
                         Name:  Thomas Kozlark
                         Title: Vice President


                    [SIGNATURE PAGE TO AMENDMENT]
<PAGE>

                                                            S-3


                    THE CHASE MANHATTAN BANK,
                     as Lender and as Competitive Advance
                     Facility Agent


                    By /s/ Allen K. King
                       ---------------------------------------
                       Name:  Allen K. King
                       Title: Vice-President


                    [SIGNATURE PAGE TO AMENDMENT]
<PAGE>

                                                            S-4


                    LEHMAN  COMMERCIAL PAPER INC.


                    By /s/ Dennis J. Dee
                       ---------------------------------------
                       Name:  Dennis J. Dee
                       Title: Vice-President


                    [SIGNATURE PAGE TO AMENDMENT]
<PAGE>

                                                            S-5


                    MERRILL LYNCH CAPITAL CORPORATION


                    By   /s/ Stephen B. Paras

Case 14-10979-CSS   Doc 10252-2   Filed 11/23/16   Page 165 of 174

Name:  Stephen B. Paras
Title: Vice President


[SIGNATURE PAGE TO AMENDMENT]
<PAGE>

EXHIBIT A

SCHEDULE 2.01

| Name | Commitment |
| ---- | ---------- |
| The Chase Manhattan Bank | $  550,000,000.00 |
| Lehman  Commercial Paper Inc. | 550,000,000.00 |
| Merrill Lynch Capital Corporation | 550,000,000.00 |
| TOTAL | $1,650,000,000.00 |

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-12.(A)
<SEQUENCE>15
<DESCRIPTION>COMPUTATION OF RATIO OF EARNINGS TO FIXED CHARGES
<TEXT>

<PAGE>

EXHIBIT 12(a)

TEXAS UTILITIES COMPANY
COMPUTATION OF RATIO OF EARNINGS TO FIXED CHARGES
<TABLE>
<CAPTION>

| | Year Ended Decembe | | |
| --- | --- | --- | --- |
| | 1997 | 1996 | 1995 |
| | | Thousands of Dollars, Excep | |
| <S> | <C> | <C> | <C> |
| EARNINGS: | | | |
| Net income before preferred dividends | $  688,437 | $  806,964 | $(53,731) |
| Add:   Total federal income taxes | 376,898 | 375,232 | (60,035) |
| Fixed charges (see detail below) | 854,822 | 851,482 | 732,313 |
| Total earnings | $1,920,157 | $2,033,678 | $618,547 |
| FIXED CHARGES: | | | |
| Interest on mortgage bonds | $  439,539 | $  486,935 | $527,131 |
| Interest on other long-term debt | 124,227 | 96,404 | 102,138 |
| Amortization of debt discount, (premium) and expense | 13,146 | 13,239 | 10,649 |
| Amortization of loss on reacquired debt | 24,753 | 23,124 | 20,881 |
| Other interest charges | 161,272 | 178,191 | 45,384 |
| Preferred trust securities distributions | 69,701 | 33,001 | 1,801 |
| Rentals representative of the interest factor | 22,184 | 20,588 | 24,329 |
| Total fixed charges | $  854,822 | $  851,482 | $732,313 |

RATIO OF EARNINGS TO FIXED CHARGES                2.3              2.4              0.8
                                                  ===              ===              ===

```
</TABLE>
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-12.(B)
<SEQUENCE>16
<DESCRIPTION>COMPUTATIONS OF RATIO OF EARNINGS TO FIXED CHANGES
<TEXT>

<PAGE>
```

EXHIBIT 12(b)

TEXAS UTILITIES ELECTRIC COMPANY

COMPUTATION OF RATIO OF EARNINGS TO FIXED CHARGES,
AND TO FIXED CHARGES AND PREFERRED DIVIDENDS

```
<TABLE>
<CAPTION>
```

|  | Year Ended December 31, | | | |
| --- | --- | --- | --- | --- |
|  | 1997 | 1996 | 1995 | 1994 |
| `<S>` | `<C>` Thousands of Dollars, Except Ra `<C>` | `<C>` | `<C>` | `<C>` |
| EARNINGS: | | | | |
| Net income | $ 771,874 | $ 862,695 | $ 452,631 | $ 6 |
| Add: Total income taxes | 409,546 | 405,499 | 212,953 | 3 |
| Fixed charges (see detail below) | 618,773 | 649,295 | 655,678 | 6 |
|  | ---------- | ---------- | ---------- | ---- |
| Total earnings | $1,800,193 | $1,917,489 | $1,321,262 | $1,6 |
|  | ========== | ========== | ========== | ==== |
| FIXED CHARGES: | | | | |
| Interest on mortgage bonds | $439,398 | $ 486,791 | $ 526,977 | $ 5 |
| Interest on other long-term debt | 22,124 | 26,456 | 44,071 | |
| Amortization of debt discount, (premium) and expense | 11,053 | 11,067 | 9,959 | |
| Amortization of loss on reacquired debt | 24,149 | 22,520 | 19,547 | |
| Other interest charges | 30,542 | 48,872 | 28,994 | |
| Preferred trust securities distributions | 69,701 | 33,001 | 1,801 | |
| Rentals representative of the interest factor | 21,806 | 20,588 | 24,329 | |
|  | ---------- | ---------- | ---------- | ---- |
| Total fixed charges | $ 618,773 | $ 649,295 | $ 655,678 | $ 6 |
|  | ========== | ========== | ========== | ==== |
| Preferred dividends* | 15,439 | 68,988 | 93,489 | 1 |
|  | ---------- | ---------- | ---------- | ---- |
| Fixed charges and preferred dividends | $ 634,212 | $ 718,283 | $ 749,167 | $ 8 |
|  | ========== | ========== | ========== | ==== |
| RATIO OF EARNINGS TO FIXED CHARGES | 2.9 | 3.0 | 2.0 | |
|  | ========== | ========== | ========== | ==== |
| RATIO OF EARNINGS TO FIXED CHARGES AND PREFERRED DIVIDENDS | 2.8 | 2.7 | 1.8 | |
|  | ========== | ========== | ========== | ==== |

```
</TABLE>
```

. Preferred dividends represent (1) the portion of preferred dividends
deductible for federal income tax purposes, plus (2) the balance of preferred
dividend requirements multiplied by the ratio of pre-tax income to net income.

```
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-21
<SEQUENCE>17
<DESCRIPTION>LIST OF SUBSIDIARIES
<TEXT>

<PAGE>
```

EXHIBIT 21


TEXAS UTILITIES COMPANY
(AS OF MARCH 23, 1998)

```
<TABLE>
<CAPTION>
```

| | STATE OR COUNTRY OF INCORPORATION |
|---|---|
| <S> | <C> |
| TEXAS UTILITIES COMPANY | Texas |
| | |
| TEXAS ENERGY INDUSTRIES, INC. | Texas |
| Texas Utilities Electric Company | Texas |
| TU Electric Capital I | Texas |
| TU Electric Capital II | Texas |
| TU Electric Capital III | Texas |
| TU Electric Capital IV | Texas |
| TU Electric Capital V | Texas |
| Southwestern Electric Service Company | Texas |
| Texas Utilities Australia Pty. Ltd. | Australia |
| Eastern Energy Limited | Australia |
| Australian Tree Management Pty. Ltd. | Australia |
| East Coast Power Pty. Ltd. | Australia |
| Eastcoast Gas Pty. Ltd. (1) | Australia |
| Eastern Facilities Management Pty. Ltd. | Australia |
| Enetech Pty. Ltd. | Australia |
| Global Customer Solutions Pty. Ltd. | Australia |
| TUA (No. 1) Pty. Ltd. | Australia |
| TUA (No. 2) Pty. Ltd. | Australia |
| TUA (No. 3) Pty. Ltd. | Australia |
| TUA (No. 4) Pty. Ltd. | Australia |
| TUA (No. 5) Pty. Ltd. | Australia |
| TUA (No. 6) Pty. Ltd. | Australia |
| TU Australia Pty. Ltd. | Australia |
| Texas Utilities Fuel Company | Texas |
| Texas Utilities Mining Company | Texas |
| Lufkin-Conroe Communications Co. | Texas |
| Lufkin-Conroe Telephone Exchange, Inc. | Texas |
| Lufkin-Conroe Telecommunications Corp. | Texas |
| LCT Long Distance, Inc. | Texas |
| East Texas Fiber Line Incorporated (2) | Texas |
| Texas Utilities Integrated Solutions Inc. | Texas |
| Texas Utilities Services Inc. | Texas |
| Texas Utilities Properties Inc. | Texas |
| Texas Utilities Communications Inc. | Delaware |
| Communications License Holdings I, Inc. | Texas |
| Basic Resources Inc. | Texas |
| Chaco Energy Company | New Mexico |
| Enserch Development Corporation | Texas |
| EDC Catskill Cogeneration, Inc. | Delaware |
| EDC Four Inc. (3) | Delaware |
| EDC Northwest Cogeneration, Inc. | Delaware |
| EDC Palakkad Power Ltd. | Cayman Islands |

EFH01435077

```
</TABLE>
<PAGE>


<TABLE>
<S>                                                         <C>
              EDC Palakkad One Holding Company (4)          Mauritius
              EDC Palakkad Two Holding Company (4)          Mauritius
                  Palakkad Power Generating Company(5)      India
          EDC Power Marketing, Ltd                          Texas
          EDC Shaoxing Power Ltd.                           Cayman Islands
              Zhejiang Yong-Ke Thermal Power Corporation, Ltd.(6)   China
          EIL India, L.L.C. (7)                             India
          Ensat Cogeneration Company                        Texas
          Ensat Northwest Cogeneration Company (8)          Texas
              Electron Fees, Inc.                           Texas
          Enserch Development Corporation Hamakua, Inc.     Texas
          Enserch Development Corporation Hawaii, Inc.      Texas
          Enserch International Ltd.                        Cayman Islands
      Lone Star Gas International, Inc.                      Texas
          Lone Star Gas Chile S.A. de C.V.                  Republic of Chile
      National Pipeline Company                             Texas
          Enserch de Mexico S.A. de C.V. (9)                Mexico
              Enserch de Monterrey S. A. de C. V. (10)      Mexico
      Enserch International Services, Inc.
ENSERCH CORPORATION                                         Texas
      Lone Star Gas Company (an unincorporated division)
      Lone Star Pipeline Company (an unincorporated division)
      Enserch Processing, Inc.                              Delaware
      Enserch Energy Services, Inc.                         Texas
          Direct Gas Supply Corp.                           New York
          Enserch Energy Services (Canada), Inc.            Texas
          Enserch Energy Services (New York), Inc.          Delaware
          Enserch Energy Services Risk Management Company   Texas
          Enserch Energy Services Trading Company           Texas
          Enserch Gas Marketing Company                     Texas
      ALEASCO, Inc.                                         Alaska
      ENS Claims Management, Inc.                           Delaware
      ENS Holdings I, Inc.                                  Texas
      ENS Holdings II, Inc.                                 Texas
      ENS Insurance Company                                 Vermont
      ENSERCH E&C Holdings, Inc.                            Nevada
          ENS Equipment Corporation                         Delaware
          ENSERCH E&C, Inc.                                 Nevada
          ESICORP Constructors International Inc.           Delaware
              ENS U. K. Limited (11)                        United Kingdom
                  ENS Limited (11)                          United Kingdom
                  Process Engineering International Ltd. (11)  United Kingdom
          ESICORP Industries Inc. (Delaware)                Delaware
              Ebasco Cayman Limited                         Cayman Islands
                  Ebasco Services Singapore  Pte. Ltd.      Singapore
              Ebasco Energy A. G.                           Switzerland
          Ebasco Services of Canada Limited                 Canada
</TABLE>
<PAGE>


<TABLE>
<S>                                                         <C>
              Engineering International Liquidating Company, Inc.   California
          Ensat Pipeline Company                            Texas
          Enserch Finance II, Inc.                          Texas
          Enserch Finance N.V.                              Netherlands Antilles
          Enserch Gas Transmission Company                  Texas
          Enserch House, Inc.                               Texas
          Enserch International Investments Limited         Delaware
              Humphreys and Glasgow Limited                 United Kingdom
          Enserch Shirley, Inc.                             Delaware
```

```
<TABLE>
Fleet Star of Texas, L.C. (12)                        Texas
   LS Energy, Inc.                                    Texas
   Lone Star Dallas Energy Center, Inc.               Texas
   Lone Star Energy Services, Inc.                    Texas
   Lone Star Gas Company of Texas, Inc.               Texas
   TRANSTAR Technologies L.C.                         Texas
TU FINANCE (NO. 1) LIMITED                      United Kingdom
   TU Finance (No. 2) Limited (13)              United Kingdom
      TU Acquisitions PLC                       United Kingdom
</TABLE>
```

_____

(1)  50% owned by Eastern Energy Limited.
(2)  67% owned by Lufkin-Conroe Telecommunications Corp.
(3)  50% owned by Enserch Development Corporation.
(4)  99% owned by EDC Palakkad Power Ltd. and 1% owned by Enserch International
     Ltd.
(5)  89% benefically owned by EDC Palakkad One Holding Company and 11%
     beneficially owned by EDC Palakkad Two Holding Company.
(6)  70% owned by EDC Shaoxing Power Ltd.
(7)  40% owned by Enserch Development Corporation.
(8)  51% owned by Electron 4/NW, Inc. and 49% owned by Enserch Development
     Corporation.
(9)  99% owned by National Pipeline Company and 1% owned by Enserch Development
     Corporation.
(10) 99.99% owned by Enserch de Mexico S.A. de C.V. and .01% owned by Enserch
     Development Corporation.
(11) 99% owned by parent corporation.
(12) 50% owned by ENSERCH Corporation and 50% owned by FST Holdings, Inc.
(13) 90% owned by TU Finance (No. 1) Limited and 10% owned by Texas Utilities
     Services Inc.


     Except as noted above, the voting stock of each subsidiary company and their
subsidiaries and affiliates is wholly owned (100%) by its parent or a wholly-
owned affiliate.  The financial statements of each subsidiary are included in
the consolidated financial statements except that the equity method of
accounting is used for subsidiaries in which the Company has 50% or less
ownership.  Such unconsolidated subsidiaries considered in the aggregate do not
constitute a significant subsidiary.
<PAGE>


                              AFFILIATES

                                           STATE OR COUNTY
                                           OF INCORPORATION
                                           OR ORGANIZATION

<TABLE>
<S>                                        <C>
American Gas Finance Company, L.L.C. (1)      Texas
Enserch SACROC Inc. (2)                       Texas
ENS Holdings Limited Partnership              Texas
FinaStar Partnership                          Texas
Lavair Cogeneration Limited Partnership       Delaware
Gulf Coast Natural Gas Company (3)            Texas
Encogen Hawaii, L.P.                          Hawaii
Encogen Northwest L.P.                        Delaware
Encogen Four Partners L.P.                    Delaware
GTE Mobilnet of South Texas, L.P.             Texas
GTE Mobilnet of Texas RSA #11, L.P.           Texas
GTE Mobilnet of Texas RSA #17, L.P.           Texas
Texas RSA #11B Limited Partnership            Texas
Compania Mexicana de Gas S.A. de C.V. (4)     Mexico
Metrogas S.A. (5)                          Republic of Chile
ICMC Power Consortium, Inc. (6)             New York
</TABLE>
```

```
(1)  5.27% owned by Lone Star Energy Services, Inc.
(2)  99.65% owned by Enserch Finance II, Inc. and .35% owned by ENS Holdings
     Limited Partnership.
(3)  General partnership: General Partner, Enserch Gas Transmission Company
     (50%) and General/Managing Partner, Tejas Gas Transmission Company (50%).
(4)  49% owned by Enserch de Monterrey S.A. de C.V.
(5)  10% owned by Lone Star Gas Chile S.A. de C.V.
(6)  12.93% owned by Enserch Development Corporation.
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-23.(A)
<SEQUENCE>18
<DESCRIPTION>CONSENT OF COUNSEL TO THE COMPANY
<TEXT>

<PAGE>
```

Exhibit 23(a)

## CONSENT OF COUNSEL TO THE COMPANY

We hereby consent to the incorporation by reference of the statements made
as to matters of law and legal conclusions contained in this Annual Report on
Form 10-K of Texas Utilities Company and Texas Utilities Electric Company for
the fiscal year ended December 31, 1997, under Part I, Item 1--Business--
Regulation and Rules and Environmental Matters, in Texas Utilities Company's
Registration Statement on Form S-3 (No. 333-27989) and on Form S-4 (No. 333-
45999).

WORSHAM, FORSYTHE
& WOOLDRIDGE, L.L.P.

By: /s/ Neil Anderson
    ------------------------------
    A Partner

March 26, 1998
Dallas, Texas

```
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-23.(B)
<SEQUENCE>19
<DESCRIPTION>CONSENT OF COUNSEL TO TU ELECTRIC
<TEXT>

<PAGE>
```

Exhibit 23(b)

## CONSENT OF COUNSEL TO THE COMPANY

We hereby consent to the incorporation by reference of the statements made
as to matters of law and legal conclusions contained in this Annual Report on
Form 10-K of Texas Utilities Company and Texas Utilities Electric Company for
the fiscal year ended December 31, 1997, under Part I, Item 1--Business--
Regulation and Rules and Environmental Matters, in Texas Utilities Company's
Registration Statement on Form S-3 (Nos. 333-42985 and 33-69554).

WORSHAM, FORSYTHE
& WOOLDRIDGE, L.L.P.

```
                        By: /s/ Neil Anderson
                            ----------------------------
                            A Partner

March 26, 1998
Dallas, Texas
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-23.(C)
<SEQUENCE>20
<DESCRIPTION>INDEPENDENT AUDITORS' CONSENT FOR THE COMPANY
<TEXT>

<PAGE>

                                                      EXHIBIT 23(c)



INDEPENDENT AUDITORS' CONSENT


We consent to the incorporation by reference in Registration Statements No. 333-
55931 and 333-32831 on Form S-3, and Registration Statement No. 333-45999 on
Form S-4, and Registration Statements No. 333-32831, 333-32833, 333-32835,
333-32837, 333-32839, 333-32841, 333-32843 and 333-45657 on Form S-8 of Texas
Utilities Company of our report dated February 24, 1998, appearing in the Annual
Report on Form 10-K of Texas Utilities Company for the year ended December 31,
1997.


DELOITTE & TOUCHE LLP


Dallas, Texas
March 25, 1998
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-23.(D)
<SEQUENCE>21
<DESCRIPTION>INDEPENDENT AUDITORS' FOR TU ELECTRIC
<TEXT>

<PAGE>

                                                      EXHIBIT 23(d)



INDEPENDENT AUDITORS' CONSENT


We consent to the incorporation by reference in Registration Statements No. 333-
69554 on Form S-3, and Registration Statement No. 33-83976 on Post Effective
Amendment No. 1 to Form S-3, of Texas Utilities Electric Company, of our report
dated February 24, 1998, appearing in the Annual Report on Form 10-K of Texas
Utilities Electric Company for the year ended December 31, 1997.
```

DELOITTE & TOUCHE LLP


Dallas, Texas
March 25, 1998
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-23.(E)
<SEQUENCE>22
<DESCRIPTION>INDEPENDENT AUDITORS' CONSENT FOR ENSERCH
<TEXT>

<PAGE>

                                           EXHIBIT 23 (e)



INDEPENDENT AUDITORS' CONSENT


We consent to the incorporation by reference in Registration Statements No. 333-
43811 on Form S-3 and Registration Statement No. 333-43811-01 on Post Effective
Amendment No. 1 to Form S-3 of our report dated February 24, 1998, appearing in
the Annual Report on Form 10-K of ENSERCH Corporation for the year ended
December 31, 1997.


DELOITTE & TOUCHE LLP


Dallas, Texas
March 25, 1998
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-27.(A)
<SEQUENCE>23
<DESCRIPTION>FINANCIAL DATA SCHEDULE FOR TU
<TEXT>

<TABLE> <S> <C>

<PAGE>
<ARTICLE> UT
<LEGEND>
THIS SCHEDULE CONTAINS SUMMARY FINANCIAL INFORMATION EXTRACTED FROM THE
CONDENSED STATEMENTS OF CONSOLIDATED INCOME, CONDENSED STATEMENTS OF
CONSOLIDATED CASH FLOWS, AND CONDENSED CONSOLIDATED BALANCE SHEETS AND IS
QUALIFIED IN ITS ENTIRETY BY REFERENCE TO SUCH FINANCIAL STATEMENTS.
</LEGEND>
<CIK> 0001023291
<NAME> TEXAS UTILITIES CO.
<MULTIPLIER> 1,000

<S>                            <C>
<PERIOD-TYPE>                  YEAR
<FISCAL-YEAR-END>                         DEC-31-1997
<PERIOD-START>                            JAN-01-1997

```
<PERIOD-END>                              DEC-31-1997
<BOOK-VALUE>                              PER-BOOK
<TOTAL-NET-UTILITY-PLANT>                 18,571,030
<OTHER-PROPERTY-AND-INVEST>                2,274,740
<TOTAL-CURRENT-ASSETS>                     1,994,848
<TOTAL-DEFERRED-CHARGES>                   2,033,511
<OTHER-ASSETS>                                     0
<TOTAL-ASSETS>                            24,874,129
<COMMON>                                   5,587,200
<CAPITAL-SURPLUS-PAID-IN>                          0
<RETAINED-EARNINGS>                        1,311,875
<TOTAL-COMMON-STOCKHOLDERS-EQ>             6,843,062
<PREFERRED-MANDATORY>                        895,746
<PREFERRED>                                  304,194
<LONG-TERM-DEBT-NET>                       8,759,379
<SHORT-TERM-NOTES>                            44,442
<LONG-TERM-NOTES-PAYABLE>                          0
<COMMERCIAL-PAPER-OBLIGATIONS>               570,000
<LONG-TERM-DEBT-CURRENT-PORT>                772,071
<PREFERRED-STOCK-CURRENT>                          0
<CAPITAL-LEASE-OBLIGATIONS>                        0
<LEASES-CURRENT>                                   0
<OTHER-ITEMS-CAPITAL-AND-LIAB>             6,685,235
<TOT-CAPITALIZATION-AND-LIAB>             24,874,129
<GROSS-OPERATING-REVENUE>                  7,945,608
<INCOME-TAX-EXPENSE>                         376,898
<OTHER-OPERATING-EXPENSES>                 6,038,937
<TOTAL-OPERATING-EXPENSES>                 6,038,937
<OPERATING-INCOME-LOSS>                    1,906,671
<OTHER-INCOME-NET>                           (17,588)
<INCOME-BEFORE-INTEREST-EXPEN>             1,889,083
<TOTAL-INTEREST-EXPENSE>                     851,731
<NET-INCOME>                                 660,454
<PREFERRED-STOCK-DIVIDENDS>                        0
<EARNINGS-AVAILABLE-FOR-COMM>                660,454
<COMMON-STOCK-DIVIDENDS>                     478,592
<TOTAL-INTEREST-ON-BONDS>                    439,539
<CASH-FLOW-OPERATIONS>                     1,659,118
<EPS-PRIMARY>                                   2.86
<EPS-DILUTED>                                   2.85


</TABLE>
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-27.(B)
<SEQUENCE>24
<DESCRIPTION>FINANCIAL DATA SCHEDULE FOR TUEC
<TEXT>

<TABLE> <S> <C>

<PAGE>
<ARTICLE> UT
<LEGEND>
THIS SCHEDULE CONTAINS SUMMARY FINANCIAL INFORMATION EXTRACTED FROM THE
CONDENSED STATEMENTS OF CONSOLIDATED INCOME, CONDENSED STATEMENTS OF
CONSOLIDATED CASH FLOWS, AND CONDENSED CONSOLIDATED BALANCE SHEETS AND IS
QUALIFIED IN ITS ENTIRETY BY REFERENCE TO SUCH FINANCIAL STATEMENTS.
</LEGEND>
<CIK>  0000710182
<NAME> TEXAS UTILITIES ELECTRIC COMPANY
<MULTIPLIER> 1,000

<S>                                      <C>
```

```
<PERIOD-TYPE>                               YEAR
<FISCAL-YEAR-END>                           DEC-31-1997
<PERIOD-START>                              JAN-01-1997
<PERIOD-END>                                DEC-31-1997
<BOOK-VALUE>                                PER-BOOK
<TOTAL-NET-UTILITY-PLANT>                   15,720,142
<OTHER-PROPERTY-AND-INVEST>                    534,487
<TOTAL-CURRENT-ASSETS>                         714,692
<TOTAL-DEFERRED-CHARGES>                     1,864,112
<OTHER-ASSETS>                                       0
<TOTAL-ASSETS>                              18,833,433
<COMMON>                                     4,316,235
<CAPITAL-SURPLUS-PAID-IN>                            0
<RETAINED-EARNINGS>                          1,982,210
<TOTAL-COMMON-STOCKHOLDERS-EQ>               6,298,445
<PREFERRED-MANDATORY>                          895,746
<PREFERRED>                                    129,194
<LONG-TERM-DEBT-NET>                         5,475,447
<SHORT-TERM-NOTES>                             182,929
<LONG-TERM-NOTES-PAYABLE>                            0
<COMMERCIAL-PAPER-OBLIGATIONS>                       0
<LONG-TERM-DEBT-CURRENT-PORT>                  752,645
<PREFERRED-STOCK-CURRENT>                            0
<CAPITAL-LEASE-OBLIGATIONS>                          0
<LEASES-CURRENT>                                     0
<OTHER-ITEMS-CAPITAL-AND-LIAB>               5,099,027
<TOT-CAPITALIZATION-AND-LIAB>               18,833,433
<GROSS-OPERATING-REVENUE>                    6,135,417
<INCOME-TAX-EXPENSE>                           419,681
<OTHER-OPERATING-EXPENSES>                   4,368,676
<TOTAL-OPERATING-EXPENSES>                   4,788,357
<OPERATING-INCOME-LOSS>                      1,347,060
<OTHER-INCOME-NET>                              13,638
<INCOME-BEFORE-INTEREST-EXPEN>               1,360,698
<TOTAL-INTEREST-EXPENSE>                       588,824
<NET-INCOME>                                   771,874
<PREFERRED-STOCK-DIVIDENDS>                     26,850
<EARNINGS-AVAILABLE-FOR-COMM>                  745,024
<COMMON-STOCK-DIVIDENDS>                        272,832
<TOTAL-INTEREST-ON-BONDS>                      439,398
<CASH-FLOW-OPERATIONS>                       1,669,530
<EPS-PRIMARY>                                        0
<EPS-DILUTED>                                        0


</TABLE>
</TEXT>
</DOCUMENT>
</SEC-DOCUMENT>
-----END PRIVACY-ENHANCED MESSAGE-----
```