# **EXHIBIT P**

| | |
|---|---|
| **From:** | Keglevic, Paul <Paul.Keglevic@energyfutureholdings.com> |
| **Sent:** | Wednesday, May 18, 2016 4:05 PM |
| **To:** | Horton, Tony <Tony.Horton@energyfutureholdings.com> |
| **Subject:** | FW: Revised Bid and Term Sheet |
| **Attach:** | RevisedBid.pdf |

---

**From:** Goodman-March, Margaret **On Behalf Of** Young, John
**Sent:** Wednesday, May 18, 2016 11:00 AM
**To:** Keglevic, Paul; Dore, Stacey
**Subject:** FW: Revised Bid and Term Sheet

fyi

*Thank you.*

M argaret
*Margaret G. March*
*office* 214-812-5717| *fax* 214-812-2078| *cell* 972-955-6333
mpickens@energyfutureholdings.com
www.energyfutureholdings.com

---

**From:** Robo, Jim [mailto:Jim.Robo@nexteraenergy.com]
**Sent:** Wednesday, May 18, 2016 9:37 AM
**To:** Young, John <John.Young@energyfutureholdings.com>
**Subject:** Revised Bid and Term Sheet

John
I very much appreciate you getting the approval to S&P to run their ratings advisory process.  Attached here please find a revised bid and term sheet.  I look forward to hearing your feedback.
Thanks
Jim

EFH06337329



**Jim Robo**
Chairman & Chief Executive Officer

**CONFIDENTIAL**

May 18, 2016

**By Electronic Mail**

**John Young, President and CEO of Energy Future Holdings Corp.**
Energy Plaza
1601 Bryan Street
Dallas, TX 75201

Re: Energy Future Holdings Corp.

Dear John,

NextEra Energy, Inc. ("*NextEra*") is pleased to submit this indication of interest and term sheet (collectively, the "*Bid*") to acquire 100% of the equity (the "*Transaction*") of reorganized Energy Future Holdings Corp. ("*Reorganized EFH*"), reorganized Energy Future Intermediate Holding Company LLC ("*Reorganized EFIH*") and Reorganized EFIH's direct and indirect subsidiaries.

## 1.    Overview of NextEra Energy, Inc.

NextEra is a leading clean energy company with consolidated revenues of approximately $17.5 billion, and approximately 14,300 employees in 27 states and Canada as of year-end 2015. NextEra has approximately 44,800 megawatts of generating capacity, which includes megawatts associated with non-controlling interests related to NextEra Energy Partners, LP (NYSE: NEP), as of April 2016.  Headquartered in Juno Beach, Fla., NextEra's principal subsidiaries are Florida Power & Light Company ("*FPL*"), which serves more than 4.8 million customer accounts in Florida and is one of the largest rate-regulated electric utilities in the United States, and NextEra Energy Resources, LLC ("*NEER*"), which is the world's largest generator of renewable energy from the wind and sun.  NextEra generates clean, emissions-free electricity from eight commercial nuclear power units in Florida, New Hampshire, Iowa and Wisconsin. NextEra has been recognized often by third parties for its efforts in sustainability, corporate responsibility, ethics and compliance, and diversity, and has been ranked No. 1 in the electric and gas utilities industry in Fortune's list of "Most Admired Companies" 9 out of the past 10 years.

In Texas, NextEra has invested approximately $8 billion, provides hundreds of competitive, high-paying jobs, and powers approximately 600,000 homes from wind generation. NextEra's subsidiaries generate more than 3,000 megawatts from wind powered assets for residents and businesses. NextEra also owns and operates Lone Star Transmission, a transmission service provider, and Gexa, a retail electric provider with more than 150,000 customers.

NextEra is listed on the New York Stock Exchange (NYSE: NEE), has a market capitalization of approximately $54 billion and an enterprise value of approximately $84 billion. NextEra is supported by a strong balance sheet and possesses an Issuer Rating of 'Baa1' from Moody's and an Issuer Rating of 'A-' from Standard & Poor's and Fitch. As of December 31, 2015, NextEra had approximately $4.4 billion of total net available liquidity, excluding FPL and NEP.

For more information about the NextEra companies, including financial statements visit www.NextEraEnergy.com, www.FPL.com and www.NextEraEnergyResources.com.

2.      **Consideration and Other Key Attributes**

Our Bid is based on documents publicly filed by Energy Future Holdings Corp. ("*EFH*") and its subsidiaries (including Oncor (as defined below)). Any Transaction involving NextEra is subject to the completion of due diligence, confirmation of NextEra Energy and its affiliates ability to maintain their credit ratings proforma for the transaction, and the execution of definitive documentation, in each case, satisfactory to NextEra in its sole discretion.

As described in the attached term sheet, our Bid has the following key attributes:

A.  **Bid Value**: The total purchase price is approximately $3.781 billion (of which we are prepared to offer EFIH approximately $2.0 billion through a second lien debtor-in-possession facility subject to Bankruptcy Court approval) with a substantial majority of such price to be received in cash and the remainder in NextEra stock; provided, however, the consideration shall be increased by $25,000,000 if the Plan of Reorganization is approved by the Bankruptcy Court within 210 days of the date of the Merger Agreement. If the Bankruptcy Court approval for the 2nd Lien DIP is not received by July 31, 2016, the amounts to be paid to EFIH Unsecured Toggle Notes and EFH Unsecured LBO Notes shall be reduced by the amount of the increase in the existing EFIH 2nd lien debt above the amounts as of July 31 until the repayment of such existing EFIH 2nd lien debt. The mix of cash and NextEra common stock payable by NextEra in the transaction will be determined based on tax and credit considerations but we anticipate that equity consideration will be $500 million. The number of shares issuable will be determined based on the volume weighted average price of NextEra stock for a specified number of days leading up to the closing of the Transaction to provide certainty of value to creditors.

B.  **Debt Incurred at Closing**: Our Bid is not subject to any financing contingencies and the total amount of third-party debt proposed to be incurred by any of the Debtors in connection with the Transaction is zero. We currently intend to refinance the $5.4 billion EFIH first lien debtor-in-possession financing facility and the approximately $2.0 billion EFIH second lien debtor-in-possession financing facility upon closing.

C.  **Cash on Hand**: NextEra assumes cash on hand will be used by EFH and EFIH at the closing of the Transaction to satisfy claims at EFH and EFIH except for $45 million which will remain with EFH. NextEra believes that the combination of the Bid Value, the refinancing of the approximately $5.4 billion EFIH first lien debtor-in-possession financing facility and cash on hand at EFH and EFIH, will satisfy all impaired EFH and

Page 3

EFIH claims with the exception of: (i) the $700 million allowed intercompany claim held by TCEH against EFH, (ii) the approximately $600 million of EFH Legacy Notes held by parties other than EFIH, and (iii) certain miscellaneous claims against EFH that will be dealt with in compliance with the Settlement and Support Agreement, dated as of November 23, 2015, as in effect on the date of this letter (the "*EFH Committee Settlement Agreement*").

**D.** **Plan Requirements**: The Transaction will be consummated pursuant to a Plan of Reorganization that includes the Required Alternative Terms (as contemplated by the Plan Support Agreement, dated as of September 11, 2015, and complies with the Alternative Restructuring Support Obligations set forth in the EFH Committee Settlement Agreement.

**E.** **Regulatory Approvals and Covenants**: The approval from the Public Utility Commission of Texas (the "*PUCT*") is required in advance of any change of control in Oncor. The (i) manner of cooperation among NextEra, the Debtors and Oncor, (ii) efforts that each party must use in connection with seeking and obtaining all regulatory approvals required to complete the Transaction and (iii) limitations on NextEra's obligations to take all actions necessary to obtain required regulatory approvals are set forth in the attached term sheet. As more fully described above, NextEra has an extensive and successful track record of owning and operating regulated and non-regulated assets in Texas.

**F.** **Employees**: As indicated in the attached term sheet, except as agreed by NextEra, Reorganized EFH and its subsidiaries shall not have any employees (other than employees of Oncor and its subsidiaries) and shall not be responsible for any liabilities or obligations owed to any current employees or former employees of the EFH Debtors including without limitation, change of control or severance payments or other similar obligations.

**G.** **Conditions to Closing**: Our conditions to closing are outlined in the attached term sheet.

Further details of our Bid are described in the attached term sheet, the terms of which are part of and incorporated by reference in this letter.

This letter and the attached term sheet are strictly confidential. This letter and the attached term sheet do not create any binding legal obligations of any nature in respect to the proposed Transaction. A binding obligation with respect to the matters referred to in this letter and term sheet will only arise upon the execution and delivery of definitive documentation acceptable to NextEra and EFH.

### Conclusion

We believe there is strong merit in NextEra's selection as the acquirer of Reorganized EFH, Reorganized EFIH and Reorganized EFIH's direct and indirect subsidiaries, and we are committed to working with EFH, EFIH and other stakeholders in pursuing an expeditious transaction. NextEra is uniquely positioned given our:

Highly Confidential

Page 4

- proven ability to execute complicated strategic and regulatory transactions;

- valuable knowledge, relationships and experience gained from our current operations in Texas; and

- strong financial position and ability to access the capital markets on attractive terms.

We are very enthusiastic about the transaction and look forward to discussing our Bid and the attached term sheet. We are prepared to discuss the contents of this letter and any questions you may have concerning our interest in the proposed transaction. To the extent that you have any questions regarding our Bid and term sheet, please contact Mark Hickson, SVP of Corporate Development at NextEra, at (917) 887-6171 or myself at (561) 691-7711.

Best,

Jim Robo

Highly Confidential

C&P Draft of 5/18/16
CONFIDENTIAL

### TERM SHEET FOR ACQUISITION OF

### REORGANIZED ENERGY FUTURE HOLDINGS CORP. AND CERTAIN SUBSIDIARIES

*This Term Sheet summarizes the principal indicative terms with respect to a potential acquisition by NextEra Energy, Inc. ("Parent") of the equity of reorganized Energy Future Holdings Corp. ("Reorganized EFH"), reorganized Energy Future Intermediate Holding Company LLC ("Reorganized EFIH") and the direct and indirect subsidiaries of Reorganized EFIH. EFH (as defined below) and Energy Future Intermediate Holding Company LLC ("EFIH") are collectively referred to herein as the "EFH Debtors." The acquisition shall be made in accordance with the terms of a Plan of Reorganization (as defined below) for Reorganized EFH and Reorganized EFIH. This Term Sheet does not include all of the conditions, covenants, representations, warranties and other terms that would be contained in the definitive Plan of Reorganization and/or Merger Agreement (as defined below). This Term Sheet and any Plan of Reorganization and Merger Agreement entered into pursuant to this Term Sheet are subject to Bankruptcy Court approval and applicable corporate approvals.*

| | |
|---|---|
| Parties to Merger Agreement | Energy Future Holdings Corp., a Texas corporation ("EFH"), EFIH, Parent and Merger Sub (as defined below). |
| Merger Sub | A newly formed Delaware limited liability company ("Merger Sub") wholly owned by Parent. |
| | Parent will guarantee all obligations of Merger Sub contemplated by the definitive documentation, including the Merger Agreement. |
| Purchase Price/ Consideration | Parent shall, directly or indirectly, provide cash and Parent common stock with an aggregate value of $3.781 billion ("Purchase Price"). A substantial majority of the Purchase Price will be in the form of cash as provided below. |

The Purchase Price will be used to satisfy:

- Approximately $2.012 billion (as of July 31) owed to the existing lenders of the EFIH 2nd lien debt, equal to par plus accrued interest at contract rate through the funds supplied by a Parent affiliate through a second lien debtor-in-possession financing facility (the "2nd Lien DIP");

- $1.658 billion owed to the EFIH Unsecured Toggle Notes, equal to par plus accrued pre-petition interest at contract rate, plus post-petition interest at FJR; and

- $66 million to EFH Unsecured LBO Notes guaranteed by EFIH, equal to par plus accrued pre-petition interest at contract rate, plus post-petition interest at FJR.

In addition, a Parent affiliate shall refinance the $5.4 billion EFIH

CPAM: 9442219.5

EFH06337334

first lien debtor-in-possession financing facility at Closing (as defined below).

**Agreements Relating to certain EFH and EFIH Creditors**

If the Bankruptcy Court approval for the 2nd Lien DIP is not received by July 31, 2016, the amounts to be paid to EFIH Unsecured Toggle Notes and EFH Unsecured LBO Notes shall be reduced by the amount of the increase in the existing EFIH 2nd lien debt above the amounts as of July 31 until the repayment of such existing EFIH 2nd lien debt.

Parent shall increase the Purchase Price in an amount equal to $25 million if the Confirmation Order (as defined below) shall have been issued within two hundred and ten (210) days of the date of the Merger Agreement.

Parent intends to finance the Drag (as defined below), in part, through an issuance of Parent equity.  If EFH and Parent are successful in exercising the Drag (as defined below), Parent shall provide the holders of the EFH Legacy Notes due 2014, the EFH Legacy Notes due 2024, the EFH Legacy Notes due 2034, the EFH Unsecured LBO Notes and the EFIH Unsecured Toggle Notes (collectively, the "Rights Holders") with the right to purchase any Parent equity issued to finance the Drag at a 2.5% discount to the closing price on the day prior to such offering[1].  Certain of the Rights Holders will enter into a backstop agreement (the "Backstop Agreement") to purchase any shares of Parent equity not purchased in the Rights Offering.

**Structure**

The acquisition of the equity interests in Reorganized EFH will take place: (i) in accordance with the steps set forth below; (ii) pursuant to a definitive agreement among Parent, Merger Sub, EFIH and EFH (the "Merger Agreement"); and (iii) as part of a confirmed and effective Chapter 11 plan of reorganization (the "Plan of Reorganization").    The Merger Agreement and the Plan of Reorganization will include provisions relating to, among other things: (a) the 2nd Lien DIP; (b) the purchase of the minority members' interests in Oncor Electric Delivery Company LLC ("Oncor Delivery") pursuant to the Investors Rights Agreement dated as of November 5, 2008 (the "IRA") or through a privately negotiated acquisition of such interests by Parent or an affiliate thereof on terms acceptable to Parent (the "Drag"); and (c) in the event that the interests of the minority members of Oncor Delivery are not transferred pursuant to the Drag, an Oncor IPO (as defined below).    The following steps shall occur prior to or substantially contemporaneously on the Closing Date (as defined below) as agreed

---

[1] To discuss mechanics for setting price.

2

EFH06337335

to by the Parties.

**Step 1**: A Parent affiliate will provide the 2nd Lien DIP as soon as reasonably practical after Bankruptcy Court approval. The proceeds of the 2nd Lien DIP will be used solely to repay the existing EFIH 2nd lien debt.

**Step 2**: Equity securities of reorganized Texas Competitive Electric Holdings Company LLC ("Reorganized TCEH") will be distributed to the creditors of Texas Competitive Electric Holdings Company LLC ("TCEH") and/or its subsidiaries in furtherance of a tax-free spin-off of Reorganized TCEH (the "TCEH Spin") and in accordance with a private letter ruling (the "Private Letter Ruling") from the Internal Revenue Service ("IRS") and the Plan of Reorganization; *provided*, that the Private Letter Ruling will be requested by EFH in a form approved by Parent and obtained from the IRS in a form satisfactory to Parent and EFH.

**Step 3**: Reorganized EFH will issue shares of its common stock (the "Issuance") to certain creditors of EFH in accordance with the Plan of Reorganization and in satisfaction of their allowed claims and interests against EFH.

**Step 4**: Immediately following the transactions described in Step 3, Reorganized EFH will merge with and into Merger Sub in a tax-free reorganization under section 368(a)(1)(A) of the Internal Revenue Code of 1986, as amended (the "Code"), pursuant to the terms and conditions of the Merger Agreement and the Plan of Reorganization (the "Merger"). As a result of the Merger, Merger Sub will acquire all of equity of Reorganized EFH (provided that at the time the only direct subsidiary of Reorganized EFH is Reorganized EFIH and, indirectly, the Oncor entities). The merger consideration shall consist of a number of shares of Parent common stock to be issued to the holders of Reorganized EFH equity (other than Parent or Merger Sub) with an aggregate value equal to $500 million (such stock consideration, the "Merger Consideration"). Simultaneous with the Merger, other allowed claims against the EFH Debtors will be satisfied in exchange for the right to receive the cash on hand at EFH (less $45 million, which shall remain with Reorganized EFH) and EFIH as of the Effective Date as provided for in the Plan of Reorganization (the "Repayment").

**Step 5**: The $5.4 billion EFIH first lien debtor-in-possession financing facility and the 2nd Lien DIP will be refinanced at a (non-Reorganized EFH) Parent affiliate at Closing and the 2nd lien DIP will be extinguished immediately following the Merger (the "DIP

3

EFH06337336

Payments").

| | |
|---|---|
| Closing Date | The closing of the transactions contemplated by the Merger Agreement (the "Closing") shall occur three (3) business days after satisfaction or waiver of all conditions to Closing set forth in the Merger Agreement. The date on which such Closing actually occurs is herein referred to as the "Closing Date." |
| Transition Services | If requested by Parent, Reorganized EFH and Reorganized TCEH will execute a Transition Services Agreement, substantially in the form agreed to at signing of, and attached to, the Merger Agreement (the "Transition Services Agreement"), for the provision by Reorganized TCEH or its subsidiaries of certain services to Reorganized EFH. |
| Tax Matters Agreement | Reorganized EFH and Reorganized TCEH will execute a Tax Matters Agreement, substantially in the form agreed to at signing of, and attached to, the Merger Agreement (the "Tax Matters Agreement"). |
| Drop Dead Date | Seven (7) months after signing, subject to extension for up to three (3) months in the event that any necessary or advisable regulatory approvals to consummate the transactions contemplated by the Merger Agreement (including the TCEH Spin) or the Private Letter Ruling have not been received as of such date. |
| Registration Rights | Any Parent common stock to be issued in the Merger or pursuant to the Rights Offerings or Backstop Agreement shall be freely tradable under the Securities Act. Parent shall provide customary registration rights pursuant to a Registration Rights Agreement substantially in the form agreed to at signing of, and attached to, the Merger Agreement for the benefit of any recipients that would become control affiliates of Parent for purposes of the Securities Act in connection with the Merger. |
| Representations and Warranties | The Merger Agreement shall contain customary representations and warranties of EFH and EFIH regarding the EFH Debtors and their subsidiaries (other than Energy Future Competitive Holdings Company LLC ("EFCH") and its subsidiaries), and of Parent and Merger Sub for transactions of this type. |
| Covenants | The Merger Agreement shall contain covenants and agreements of EFH, EFIH, Parent and Merger Sub, customary for transactions of this type. The Merger Agreement shall also contain a covenant that each of EFH and EFIH will (i) will exercise its rights as direct or indirect equity owners of the Oncor Electric Delivery Holdings Company LLC ("Oncor Holdings") and its subsidiaries (collectively, |

4

EFH06337337

the "Oncor Entities"), including exercising its rights (including consenting or voting rights and withholding any requested vote or consent), if any, under the limited liability company agreements of Oncor Holdings and Oncor Delivery (such agreements, collectively, the "Oncor Agreements"), and otherwise use its reasonable best efforts in a manner intended to cause the Oncor Entities to comply with each of their respective covenants and agreements set forth in a letter agreement to be entered into by the Oncor Entities and Parent contemporaneously with the execution of the Merger Agreement (the "Oncor Letter Agreement") and the IRA, (ii) withhold its consent, if required, to actions under, or amendments to, the organizational agreements of the Oncor Entities unless it first obtains the prior written consent of Parent (such consent not to be unreasonably withheld, conditioned or delayed) and (iii) if reasonably requested by Parent, give its consent to actions under, or amendments to, the organizational documents of the Oncor Entities.

| | |
|---|---|
| <u>Regulatory Covenant</u> | Subject to the terms and conditions set forth in the Merger Agreement, EFH, EFIH and Parent shall cooperate with each other and use, and shall cause their respective subsidiaries (including the Oncor Entities to the extent possible) to use, their respective reasonable best efforts to negotiate, prepare and file as promptly as practicable all documentation to effect all necessary notices, reports and other filings and to obtain as promptly as practicable all consents, registrations, approvals, permits and authorizations necessary or advisable to be obtained from any governmental entity in connection with the execution, delivery and performance of the Merger Agreement and the consummation of the transactions contemplated by the Merger Agreement, including the Repayment, the Issuance, the Merger, the Drag and the Oncor IPO (as defined below) and the Oncor Entities shall agree to the foregoing in the Oncor Letter Agreement. |

EFH and EFIH shall in the Merger Agreement, and the Oncor Entities, shall in the Oncor Letter Agreement, agree that Parent shall have the right to control the scheduling and conducting of all meetings with governmental entities, including the Public Utility Commission of Texas (the "PUCT") and the Federal Energy Regulatory Commission (the "FERC"), the coordination and making of any applications and filings (including the content, terms and conditions of such applications and filings) with any governmental entity, the resolution of any investigation or other inquiry of any governmental entity, the process for obtaining any consents, registrations, approvals, permits and authorizations of any governmental entity, and the making or discussing of any and all proposals relating to regulatory commitments of Parent, its subsidiaries or any Oncor Entity to or with the PUCT, its staff,

Highly Confidential                                   EFH06337338

intervenors, or customers in Texas, in each case as may be necessary or advisable in connection with the execution, delivery and performance of the Merger Agreement and the consummation of the transactions contemplated by the Merger Agreement, including the Drag, the Repayment, the Issuance and the Merger, as well as providing for the flexibility for an initial public offering of a vehicle that has an interest in Oncor Delivery (the "Oncor IPO") and removal of the independent director requirements at the Oncor Entities. EFH and EFIH will, and under the Oncor Letter Agreement the Oncor Entities will, cooperate with Parent and furnish Parent such information as is reasonably requested by Parent in connection with the matters described in this section. Parent will consult with EFH, EFIH and the Oncor Entities during this process. Notwithstanding the foregoing, Parent, EFH and EFIH agree not to, and under the Oncor Letter Agreement the Oncor Entities will agree not to, schedule, to the extent reasonably practicable, any substantive meetings or substantive communications with the PUCT and the FERC regarding the Repayment, the Issuance, the Merger, the Drag, the Oncor IPO or the other transactions contemplated by the Merger Agreement or the Plan of Reorganization without giving the other party or its representatives a reasonable opportunity to participate in such meeting or communication to the extent permitted by such governmental entity, and in any event the parties shall keep each other apprised of all material substantive communications with governmental entities of which it is aware regarding the transactions contemplated by the Merger Agreement, including the Repayment, the Issuance, the Merger, the Drag and the Oncor IPO.

| | |
|---|---|
| Closing Conditions | In addition to conditions relating to the accuracy of representations and warranties and performance of covenants by the parties and the Oncor Entities and other customary conditions, the obligation of Parent, Merger Sub, EFH and EFIH to effect the Closing will be subject to the satisfaction (or waiver) of the following conditions: |

Mutual Conditions:

- The Bankruptcy Court shall have entered an order approving the Plan of Reorganization and the Merger Agreement (including payment of the Breakup Fee described below), and such order shall be final and in full force and effect and not subject to any stay;

- No court or other governmental entity of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any law or order (whether temporary, preliminary or permanent) that is in effect and restrains, enjoins, renders illegal or otherwise prohibits consummation of the

6

EFH06337339

Repayment, the Issuance, the Merger, the 2nd Lien DIP, the DIP Repayments, the Drag, the Oncor IPO or any of the other material transactions contemplated by the Merger Agreement;

- At the time of the TCEH Spin, EFH and Reorganized TCEH shall have obtained an opinion of nationally recognized counsel in form and substance reasonably acceptable to EFH and Parent at a "should" or higher level to the effect that the contributions to Reorganized TCEH and the Reorganized TCEH Spin meet the requirements of Sections 368(a)(1)(G), 355 and 356 of the Code and including the "fundamental opinions" set forth in the Merger Agreement;

- The TCEH Spin shall have occurred in all material respects in accordance with the Plan of Reorganization and the Private Letter Ruling;

- Neither EFH nor any of its subsidiaries (other than the Oncor Entities) will have any indebtedness for borrowed money immediately following the Closing;

- The shares of Parent common stock issuable in the Merger or the Rights Offering or pursuant to the Backstop Agreement shall have been approved for listing on the NYSE, subject to official notice of issuance, and either (i) a Form S-4 shall have become effective under the Securities Act of 1933 and shall not be the subject of any stop order or proceedings seeking a stop order, and Parent shall have received all state securities or "blue sky" authorizations necessary for the issuance of such shares or (ii) the SEC shall have issued a favorable "no-action" letter to the effect that the exemption from the registration requirements of the Securities Act and from applicable state securities laws provided by Section 1145 of the Bankruptcy Code is applicable in connection with the issuance of such shares; and

- The Private Letter Ruling shall have been obtained by EFH from the IRS and shall be reasonably satisfactory to Parent that the contributions of certain EFH assets to Reorganized TCEH and Reorganized TCEH Spin will meet the requirements of Sections 368(a)(1)(G), 355 and 356 of the Code, subject to agreed qualifications.

Conditions to Obligations of Parent and Merger Sub:

- Any and all material governmental consents and approvals necessary in connection with the Repayment, the Issuance, the

7

EFH06337340

Merger Sub Loan, the Merger, the 2nd Lien DIP, the DIP Repayments, the Drag, the Oncor IPO and the other transactions contemplated by the Merger Agreement or contemplated by the Plan of Reorganization (including all regulatory approvals, each of which shall be deemed to be material for purposes of this condition) shall have been obtained and shall remain in full force and effect and the applicable waiting period under the HSR Act shall have expired or been terminated; *provided*, that, notwithstanding anything to the contrary included elsewhere in the Merger Agreement, (i) no such consent or approval shall, individually or in the aggregate, directly or indirectly, impose terms, conditions, liabilities, obligations, commitments or sanctions that constitute a Burdensome Condition.[2] In addition, the PUCT approval shall also include approval for (i) the sale to Parent or an affiliate thereof of the minority members' interests in Oncor Delivery pursuant to the Drag, (ii) the Oncor IPO, and (iii) the removal of the requirement for independent directors at the Oncor Entities. Notwithstanding anything else contained in the Merger Agreement, (a) nothing in the Merger Agreement shall be construed to require any person to accept a Burdensome Condition and (b) without the prior written consent of Parent, EFH shall not, and shall cause it subsidiaries (other than the Oncor Entities) not to, take any action that would reasonably be expected to result in the imposition of a Burdensome Condition, and the Oncor Entities shall agree to the foregoing in the Oncor Letter Agreement.

- EFH and Reorganized TCEH shall have received the opinions referred to below under "Conditions to Obligations of EFH and EFIH";

- Parent shall have obtained an opinion of nationally recognized counsel to the effect that (1) the Merger will qualify as a

---

[2] Burdensome Condition shall mean condition, order, sanction, requirement, term, law, rule or regulation or any proposal or concept (whether or not any such proposal or concept is implemented), that, individually or in the aggregate, would, or would be reasonably likely to:

(i)    have a material adverse effect on the business, assets, liabilities, condition (financial or otherwise) or results of operations of the Company, the Surviving Company or Parent and such entity's respective Subsidiaries, taken as a whole, or the Oncor Entities, taken as a whole;

(ii)    following the Closing, subject in any manner, any of the operations of the Company, the Surviving Company, Parent, any of their respective subsidiaries, or any of the Oncor Entities, to any restriction, limitation, condition or obligation that differs materially and adversely from those currently applicable to any of the Oncor Entities; or

(iii)    prevent Oncor Delivery from recovering in rates material expenditures recovered by Oncor in its rates consistent with its past practices.

8

EFH06337341

reorganization within the meaning of Section 368(a) of the Code and (2) at a "should" or higher level, the Reorganized TCEH contributions and TCEH Spin-Off meet the requirements of Sections 368(a)(1)(G), 355 and 356 of the Code and including the "fundamental opinions" set forth in the Merger Agreement, subject to agreed qualifications;

- Parent shall have received the executed Tax Matters Agreement duly executed by EFH and Reorganized TCEH;

- The terms and conditions of the Plan of Reorganization shall be consistent with the Merger Agreement and, notwithstanding the foregoing, shall include all of the provisions set forth in, or otherwise result in the same effect as, the provisions set forth in Exhibit A hereto (the "Plan Terms");

- Each member of the board of directors of Oncor Holdings and Oncor Delivery (excluding the designees of the minority member of Oncor Delivery serving on the board of directors of Oncor Delivery if the Drag is not consummated but including the designees of the minority member of Oncor Delivery serving on the board of directors of Oncor Delivery if the Drag is consummated) shall have resigned from such boards of directors and the designees of Parent shall constitute the entire board of directors of Oncor Holdings and Oncor Delivery (other than the designees of the minority member of Oncor Delivery serving on the board of directors of Oncor Delivery if the Drag is not consummated) in each case, effective as of the Closing. Each officer of the Oncor Entities, other than the chief executive officer of Oncor Delivery, shall have resigned, in each case, effective as of the Closing.

- The Bankruptcy Court shall have entered an order confirming the Plan of Reorganization and the approving the Merger Agreement (the "Confirmation Order"), which shall be applicable to EFH and all of its subsidiaries that are Debtors, and which shall include: (i) a finding that the Plan of Reorganization and the Merger Agreement satisfy, among other things, section 1129(a)(4) and section 1129(a)(5) of the Bankruptcy Code; (ii) a finding that Parent is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protections afforded to good faith purchasers to the fullest extent permitted under the Bankruptcy Code, and otherwise has proceeded in good faith in all respects in connection with the Chapter 11 Cases and the transactions contemplated by the Merger Agreement; and (iii) a finding that the purchase price

9

Highly Confidential                                                                                    EFH06337342

to be provided by Parent pursuant to the Merger Agreement was not controlled by any agreement between Parent and any potential bidders and was not reduced or suppressed in any manner by any agreement or arrangement involving Parent and any creditor;

- Any third party consents and approvals necessary in connection with the transactions contemplated by the Merger Agreement shall have been obtained and shall remain in full force and effect, except such third party consents and approvals the failure of which to obtain would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on EFH or Parent;

- If such agreement is requested by Parent, Parent shall have received the Transition Services Agreement, duly executed by Reorganized TCEH;

- Except as agreed by Parent, Reorganized EFH and its subsidiaries shall not have any employees (other than employees of the Oncor Entities) and shall not be responsible for any liabilities or obligations (other than pursuant to any assumed benefit plans as agreed to by Parent) owed to any current or former employee of EFH or any of its subsidiaries (other than the Oncor Entities), including change of control or severance payments or similar obligations;

- Parent shall have received an Amended and Restated Split Participant Agreement, duly executed by Oncor and Reorganized TCEH;

- EFH's ownership structure with respect to its subsidiaries (excluding those subsidiaries to be transferred to Reorganized TCEH or disposed of, in each case pursuant to the Merger Agreement and/or Plan of Reorganization) shall be the same in all respects as such structure is on the date hereof, including EFH's 100% indirect ownership interest in Oncor Holdings and Oncor Holdings's approximately 80% ownership interest in Oncor Delivery and no person shall have any right to acquire any equity interest in any such subsidiary of EFH except as expressly provided for in the Merger Agreement;

- The Federal and State Income Tax Allocation Agreement, dated May 15, 2012, among EFH, EFIH, EFCH, TCEH, and various other subsidiary members of the EFH group, shall have been terminated;

10

                                                                 EFH06337343

- Immediately prior to Closing, the total amount of cash on hand at EFH shall be at least $254 million and at EFIH shall be at least $120 million; and

- No material adverse effect shall have occurred and be continuing as of the Closing.

Conditions to Obligations of EFH and EFIH:

- EFH shall have obtained an opinion of nationally recognized counsel in form and substance reasonably acceptable to Parent to the effect that (1) the Merger will qualify as a reorganization within the meaning of Section 368(a) of the Code and (2) at a "should" or higher level, the Reorganized TCEH contributions and TCEH Spin-Off meet the requirements of Sections 368(a)(1)(G), 355 and 356 of the Code and including the "fundamental opinions" set forth in the Merger Agreement, subject to agreed qualifications;

- Reorganized TCEH shall have obtained an opinion of nationally recognized counsel in form and substance reasonably acceptable to Parent to the effect that, at a "should" or higher level, the Reorganized TCEH contributions and TCEH Spin-Off meet the requirements of Sections 368(a)(1)(G), 355 and 356 of the Code and including the "fundamental opinions" set forth in the Merger Agreement;

- EFH shall have received the duly executed the Tax Matters Agreement;

- If requested by Parent, EFH or one or more of its subsidiaries shall have received the Transition Services Agreement duly executed by Reorganized EFH and Reorganized TECH ;

- Parent shall have provided customary registration rights, pursuant to a registration rights agreement reasonably satisfactory to EFH, to any recipients of Parent common stock in connection with the Merger that would become or remain affiliates of Parent for purposes of Rule 144 under the Securities Act as a result of the receipt of such Parent common stock;

- EFH shall have received an Amended and Restated Split Participant Agreement, duly executed by Oncor and Reorganized TCEH; and

- Any and all governmental consents and approvals referred to above for Parent shall have been obtained and shall remain in

11

EFH06337344

full force and effect and the applicable waiting period under the HSR Act shall have expired or been terminated.

Termination

The Merger Agreement may be terminated at any time prior to the Closing:

a. By mutual consent of Parent, Merger Sub, EFH and EFIH;

b. By EFH and EFIH (acting together) or Parent, if the Closing shall not have been consummated within two hundred and ten (210) days of the date of the Merger Agreement; *provided,* that, if as of such date any of the required regulatory approvals or the Private Letter Ruling shall not have been obtained (and such approval or Private Letter Ruling is still capable of being obtained within ninety (90) days), such date shall be extended for ninety (90) days for the purpose of continuing to pursue such approval or Private Letter Ruling, unless EFH and EFIH (acting together) and Parent agree otherwise in writing (such date as extended, the "Drop Dead Date"); and *provided further,* that the termination right in this section shall not be available (x) to any party whose failure to fulfill any obligation under the Merger Agreement has been the cause of, directly or indirectly, or resulted in, the failure of the Closing to occur on or before the Drop Dead Date or (y) with respect to EFH and EFIH's termination right hereunder, if any of the Oncor Entities failed to fulfill any obligation under the Oncor Letter Agreement that has been the cause of, directly or indirectly, or resulted in, the failure of the Closing to occur on or before the Drop Dead Date;

c. By EFH and EFIH (acting together) or Parent, if any order permanently restraining, enjoining, rendering illegal or otherwise prohibiting, directly or indirectly, consummation of the Issuance, the Repayment, the Merger, Sub Loan, the 2nd Lien DIP, the DIP Repayments, the Merger, the Drag, the Oncor IPO, or any of the other material transactions contemplated by the Merger Agreement shall have become final and non-appealable; *provided, however,* that the termination right in this section shall not apply if (x) the party seeking to terminate the Merger Agreement pursuant to this clause shall not have used its reasonable best efforts (and caused each of its subsidiaries and controlled affiliates (other than the Oncor Entities) to use its reasonable best efforts) to contest such order prior to its becoming permanent if such party (or subsidiary or controlled affiliate) had the right to contest such order or (y) with respect to EFH and EFIH's termination right hereunder, any of the Oncor Entities shall

12

EFH06337345

not have used its reasonable best efforts (and caused each of its subsidiaries and controlled affiliates to use its reasonable best efforts) to contest such order prior to its becoming permanent if such entity (or subsidiary or controlled affiliate) had the right to contest such order;

d.  By EFH and EFIH (acting together), if there has been a breach or failure of any representation, warranty, covenant or agreement made by Parent and/or Merger Sub in the Merger Agreement, or any such representation or warranty shall have become untrue after the date of the Merger Agreement, which breach or failure of a representation, warranty, covenant or agreement to be true or to be performed (i) would result in a failure of a condition set forth above under Mutual Conditions or Conditions to Obligations of EFH and EFIH assuming such breach or failure was continuing as of the Closing and (ii) cannot be, or has not been, cured within thirty (30) business days after receipt of written notice thereof from EFH or EFIH; *provided, however*, that the termination right in this section shall not apply if (x) such breach or failure by Parent and/or Merger Sub was caused by a breach of Oncor Holdings or Oncor Delivery of the Oncor Letter Agreement or (y) EFH or EFIH is then in breach of the Merger Agreement in a manner that would result or has resulted in any of the conditions set forth above under Mutual Conditions or Conditions to Obligations of Parent and Merger Sub not being satisfied;

e.  By EFH and EFIH (acting together) if Parent and Merger Sub have failed to consummate the Closing no later than the date required under the Merger Agreement following satisfaction of the conditions to the Closing; *provided, however,* that the termination right in this section shall not apply if (x) such failure was caused by a breach of Oncor Holdings or Oncor Delivery of the Oncor Letter Agreement or (y) either EFH or EFIH is then in breach of the Merger Agreement, in each of clause (x) or (y) in a manner that would result or has resulted in the failure to consummate the Closing;

f.  By EFH and EFIH (acting together) if the Bankruptcy Court enters an order approving a plan of reorganization not proposed or supported by EFH or EFIH (and which EFH and EFIH, to the extent requested by Parent, used reasonable best efforts to challenge before the Bankruptcy Court) that is inconsistent with the Merger Agreement;

13

EFH06337346

g. By EFH and EFIH (acting together) if the Chapter 11 Cases are dismissed or converted to a case under Chapter 7 of the Bankruptcy Code and neither such dismissal or conversion contemplates the Repayment, the Issuance, the Merger Sub Loan, 2nd Lien DIP, the DIP Repayments, the Merger and the other material transactions provided for in the Merger Agreement, provided that such dismissal or conversion was not proposed or supported by EFH or EFIH (and which EFH and EFIH, to the extent requested by Parent, used reasonable best efforts to challenge before the Bankruptcy Court);

h. Until the entry of the Confirmation Order, by EFH if concurrently with such termination, the board of directors of EFH determines in its sole discretion after consultation with its outside legal counsel, that the failure to terminate the Merger Agreement is inconsistent with its fiduciary duties, *provided*, that EFH has complied in all material respects with its obligations under the no-shop provisions of the Merger Agreement;

i. Until the entry of the Confirmation Order, by EFIH if concurrently with such termination, the board of managers of EFIH determines in its sole discretion after consultation with its outside legal counsel, that the failure to terminate the Merger Agreement is inconsistent with its fiduciary duties, *provided*, that EFIH has complied in all material respects with its obligations under the no-shop provisions of the Merger Agreement;

j. By Parent, if there has been a breach or failure of any representation, warranty, covenant or agreement made by EFH and/or EFIH in the Merger Agreement, or any such representation or warranty shall have become untrue after the date of signing of the Merger Agreement, which breach or failure of a representation, warranty, covenant or agreement to be true or to be performed (i) would result in a failure of a condition set forth above under Mutual Conditions or Conditions to Obligations of Parent and Merger Sub assuming such breach or failure was continuing as of the Closing and (ii) cannot be or has not been cured within thirty (30) business days after EFH's or EFIH's receipt of written notice thereof from Parent; *provided, however*, that the termination right in this section shall not apply if either Parent or Merger Sub is then in breach of the Merger Agreement or the Oncor Letter Agreement in a manner that would result or has resulted in any of the conditions set forth above under

14

EFH06337347

Mutual Conditions or Conditions to Obligations of EFH and EFIH not being satisfied;

k.  By Parent, if there has been a breach or failure of any representation, warranty, covenant or agreement made by Oncor Holdings or Oncor Delivery under the Oncor Letter Agreement, or any such representation or warranty shall have become untrue after the date of the Merger Agreement, which breach or failure of a representation, warranty, covenant or agreement to be true or to be performed (i) would result in a failure of a condition set forth in any provision set forth above under Mutual Conditions or Conditions to Obligations of Parent and Merger Sub assuming such breach or failure was continuing as of the Closing and (ii) cannot be or has not been cured within thirty (30) business days after EFH's, EFIH's, Oncor Holdings's and Oncor Delivery's receipt of written notice thereof from Parent; *provided, however*, that the termination right in this section shall not apply if either Parent or Merger Sub is then in breach of the Merger Agreement or Oncor Letter Agreement in a manner that would result or has resulted in any of the conditions set forth above under Mutual Conditions or Conditions to Obligations of EFH and EFIH not being satisfied;

l.  By Parent, if EFH and/or EFIH fail to consummate the Closing on or prior to the date required by the Merger Agreement following satisfaction of the conditions to the Closing; *provided, however*, that the termination right in this section shall not apply if either Parent or Merger Sub is then in breach of the Merger Agreement or the Oncor Letter Agreement in a manner that would result or has resulted in the failure to consummate the Closing;

m.  By Parent, if EFH or EFIH files in the Bankruptcy Court, or expresses support to any person of, a plan of reorganization that is inconsistent with the Merger Agreement or does not include the Plan Terms (or terms that are substantively the same as the Plan Terms) and such inconsistency or failure to include cannot be or has not been cured within thirty (30) business days after EFH's or EFIH's receipt of written notice thereof from Parent (which notice must occur within thirty (30) business days of the filing of such plan);

n.  By Parent, if the Bankruptcy Court enters an order, or if EFH files a motion seeking entry of an order, approving any sale or other disposition of (i) any material portion of the assets of

15

Highly Confidential

EFH06337348

EFH or its subsidiaries or (ii) any equity interests in EFIH or any of its subsidiaries (including the Oncor Entities), to any person(s) other than Parent, Merger Sub or any of their respective affiliates (excluding those subsidiaries to be transferred to Reorganized TCEH or disposed of, in each case pursuant to the Merger Agreement and/or Plan of Reorganization);

o.  By Parent, if a trustee is appointed in the Chapter 11 Cases pursuant to Section 1104 of the Bankruptcy Code;

p.  By Parent, if the Chapter 11 Cases are dismissed or converted to a case under Chapter 7 of the Bankruptcy Code and neither such dismissal or conversion contemplates the Issuance, the Repayment, the Merger Sub Loan, the 2nd Lien DIP, the DIP Repayments, the Merger or the transactions contemplated thereby;

q.  By Parent, if the Bankruptcy Court orders the substantive consolidation of (i) the chapter 11 estates of EFH and/or EFIH and/or any of their respective subsidiaries, on one hand, with (ii) the chapter 11 estates of EFCH and/or any of its subsidiaries, on the other hand; or

r.  By Parent, if the Bankruptcy Court does not enter an order approving the Merger Agreement and the Breakup Fee within 40 days of execution of the Merger Agreement.

**Breakup Fee**

Subject to approval by the Bankruptcy Court, $110 million (inclusive of all expense reimbursements) (the "Breakup Fee") will become due to Parent solely upon the occurrence of both: (i) the termination of the Merger Agreement; and (ii) the consummation by the EFH Debtors of any alternative transaction (including any transaction or proceeding that permits the EFH Debtors that are the direct or indirect owners of the Oncor Entities to emerge from bankruptcy) pursuant to which neither Parent nor any of its affiliates will obtain direct or indirect majority ownership of the Oncor Entities, including 100% of Oncor Holdings and Oncor's approximately 80% equity interest in Oncor Delivery; *provided, however*, that the Breakup Fee will not be payable if the Merger Agreement is terminated (i) due to a breach by Parent or Merger Sub or (ii) because the Closing has not been consummated by the Drop Dead Date (except if such termination is by Parent or Merger Sub due to EFH or EFIH's, or Oncor Holdings or Oncor Delivery's, breach that has resulted in the failure to consummate the Closing by the Drop Dead Date).

The EFH Debtors will be required to seek Bankruptcy Court

16

Highly Confidential

EFH06337349

approval of the amount and basis for awarding the Breakup Fee within seven (7) days following the execution of the Merger Agreement.

| | |
|---|---|
| Effects of Termination; Remedies | Except as otherwise provided herein, in the event of termination of the Merger Agreement, the Merger Agreement shall become void and of no force or effect with no further liability on the part of Parent, Merger Sub, EFH, EFIH or their respective affiliates or representatives with respect thereto; *provided*, that (i) certain customary covenants and agreements set forth in the Merger Agreement will survive such termination and (ii) liability may exist for willful or intentional breaches of the Merger Agreement by a party prior to the time of such termination and, in the case of Parent and Merger Sub, any failure to have sufficient immediately available funds at the Closing for the consummation of the transactions contemplated by the Merger Agreement. |

The parties acknowledge and agree that EFH and/or EFIH, on the one hand, or Parent, on the other hand, may pursue specific performance against the other parties to enforce the Merger Agreement and to cause such other parties to comply with their obligations under the Merger Agreement, including, without limitation, the obligation to consummate the Merger and other transactions contemplated thereby.

17

Highly Confidential

EFH06337350

## Exhibit A
## Obligations Included in the Plan of Reorganization

1.  An obligation of TCEH to form Reorganized TCEH and contribute 100% of its equity interests in its current or future subsidiaries (excluding the stock of TCEH Finance, Inc.) in exchange for all of the equity securities of Reorganized TCEH.

2.  An obligation of EFH to directly or indirectly contribute all assets and liabilities and/or equity securities of EFH Corporate Services Company and EFH Properties Company and its current or future subsidiaries to Reorganized TCEH.

3.  Implementation of the transactions contemplated by the Merger Agreement, including the Repayment, the Issuance, the DIP Repayments and the Merger.

4.  Execution of the Tax Matters Agreement, which shall be substantially in the form attached to the Merger Agreement.

5.  Execution of the Transition Services Agreement, which shall be substantially in the form attached to the Merger Agreement.

6.  An obligation of EFH to obtain a Private Letter Ruling related to the TCEH Spin from the IRS that provides to the reasonable satisfaction of EFH and Parent that the TCEH Spin will meet the requirements of Sections 368(a)(1)(G), 355 and 356 of the Code.

7.  An obligation of TCEH to distribute all of the outstanding equity interests in Reorganized TCEH to certain creditors of TCEH and its subsidiaries.

8.  The Plan of Reorganization shall contain the Required Alternative Terms as set forth in Section 6.1 of the Amended and Restated Plan Support Agreement, dated as of September 11, 2015, as amended, supplemented, or otherwise modified to the date hereof (the "PSA").

9.  The Plan of Reorganization shall comply with the Alternative Restructuring Support Obligations set forth in Sections 6.(a) and 6.(b) of the Settlement and Support Agreement, dated as of November 23, 2015, among the Debtors, the "EFH Committee," the "EFH Notes Trustee," and each of the other "Parties," each as defined therein (the "EFH Committee Settlement Agreement").

10. To the fullest extent permissible under the Bankruptcy Code, the discharge of all claims (as defined in Bankruptcy Code section 101(5)), obligations, liabilities, and debts (as defined in Bankruptcy Code section 101(12)) of EFH and its subsidiaries, including all intercompany claims, obligations, liabilities, and debts; *provided, however,* that all claims derived from or based upon asbestos-related liabilities and OPEB liabilities for EFH and its subsidiaries' discontinued operations shall be reinstated consistent with the terms of the EFH Committee Settlement Agreement as set forth in Paragraph 9 above.

18

Highly Confidential

EFH06337351

11. All EFH entities that are not acquired by Parent (including the TCEH entities) shall release all claims of any nature against all of the EFH entities, including the Oncor entities, that are acquired by Parent as part of the Transaction.

12. Immediately upon the consummation of the Merger, all assets of Merger Sub and of each reorganized EFH Debtor that is a subsidiary of Merger Sub will be free and clear of all liens, claims, encumbrances and other interests, and Merger Sub and each such reorganized EFH Debtor shall have no liabilities except for (a) up to $10 million for other post-petition claims and liabilities arising in the ordinary course of business (and liens and encumbrances securing any such ordinary course liabilities) of the EFH Debtors' post-petition business that will be fully paid and discharged as and when due in the ordinary course of business pursuant to the Plan of Reorganization, and (b) obligations owed to Parent contemplated by the Merger Agreement.

13. All securities and other documents evidencing equity interests in EFH, including stock options, shall be cancelled.

14. The EFH Debtors shall reject all executory contracts and unexpired leases other than those identified by Parent in an exhibit to the Merger Agreement.

15. Retention of jurisdiction of the Bankruptcy Court for usual and customary matters.

16. EFH Debtor releases and exculpations in favor of Parent and Merger Sub to the extent permissible under applicable Law.

17. The only subsidiaries of Reorganized EFH will be Reorganized EFIH and the Oncor Entities. All other subsidiaries of EFH shall be disposed of, wound down or liquidated.

Highly Confidential

EFH06337352