## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date: December 14, 2016 at 10:00 a.m.** |
| | ) **Objection Deadline: December 7, 2016 at 4:00 p.m.** |

**MOTION OF EFIH SECOND LIEN TRUSTEE FOR AN ORDER
DIRECTING PAYMENT AND REIMBURSEMENT OF CERTAIN FEES AND
EXPENSES OF THE EFIH SECOND LIEN TRUSTEE AND ITS PROFESSIONALS
AS ADEQUATE PROTECTION OR IN THE ALTERNATIVE PURSUANT TO
SECTIONS 105(A) AND 506(B) OF THE BANKRUPTCY CODE**

Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee (the "EFIH Second Lien Trustee" or the "Movant") is the indenture trustee under (i) the 11.0% EFIH senior secured second lien notes due 2021 and (ii) the 11.75% EFIH senior secured second lien notes due 2022 (together, the "EFIH Second Lien Notes") issued by Energy Future Intermediate Holding Company LLC ("EFIH"), and EFIH Finance, Inc. ("EFIH Finance" and collectively with EFIH, the "EFIH Debtors") pursuant to that certain indenture dated April 25, 2011, as supplemented (the "Indenture"). The EFIH Second Lien Trustee files this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), directing payment and reimbursement of certain fees and expenses of (a) the EFIH Second Lien Trustee and (b) the EFIH Second Lien Trustee's professionals as adequate protection, or in the alternative pursuant to Sections 105(a) and 506(b)

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

of the Bankruptcy Code. In further support of this Motion, the EFIH Second Lien Trustee respectfully submits as follows.

### Preliminary Statement

1.      As a result of the Third Circuit's recent decision allowing the Makewhole Claims for the EFIH First Lien Notes and EFIH Second Lien Notes, the EFIH Second Lien Note Claims have increased by approximately $241.6 million and there is an additional approximately $584.3 million of EFIH First Lien Note Claims (which come ahead of the EFIH Second Lien Notes).[2] While the EFIH Second Lien Trustee continues to believe that the EFIH Second Lien Notes are oversecured, the noteholders' equity cushion has now diminished and, accordingly, the EFIH Second Lien Trustee seeks payment of its fees and expenses as adequate protection. Moreover, given that the current Plan, as drafted, could not become effective (i.e. because the First and Second Lien Makewhole Claims are not disallowed claims), it is unclear how these cases— which have already taken multiple unexpected turns that have delayed EFIH's emergence from bankruptcy for more than a year—will ultimately be resolved. Accordingly, the EFIH Second Lien Trustee is also entitled to adequate protection to continue monitoring these cases and preserving the value of the collateral.

2.      Additionally, it is equitable and appropriate to pay the EFIH Second Lien Trustee and its professionals. It is beyond question that the EFIH Second Lien Trustee is entitled to be paid fees and expenses due under the Indenture and pursuant to Section 506(b). Moreover, throughout the course of the bankruptcy (over two and a half years), the EFIH Second Lien Trustee, working hand-in-hand with EFIH Second Lien Noteholders, has worked constructively to increase recoveries for EFIH Second Lien Noteholders and facilitate the Debtors' emergence

---

[2] Specific claim amounts are approximate and assume an Effective Date of June 30, 2017. The EFIH Second Lien Trustee reserves all of its rights with respect to the calculation of the Makewhole Claim.

from bankruptcy. Despite these efforts, the EFIH Second Lien Trustee and its professionals have not received payment in over a year and a half – effectively being forced to help finance the Debtors' chapter 11 cases.[3] Accordingly, the Court should require the Debtors to pay the EFIH Second Lien Trustee's fees and expenses—as it has done for almost every other creditor constituency in these cases.

### Jurisdiction and Venue

3.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the EFIH Second Lien Trustee consents pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.    The bases for the relief requested in this Motion are Sections 105(a), 361, 362, 363, 506(b) and 507(b) of title 11 of the United States Code (the "Bankruptcy Code").

### Relief Requested

6.    By this Motion, the EFIH Second Lien Trustee seeks entry of the Order directing EFIH to reimburse and pay, as adequate protection: (i) the reasonable and documented accrued

---

[3] When the Debtors made a partial principal paydown , the EFIH Second Lien Trustee was able to apply a portion of the amount to the payment of fees—over the Debtors' initial objection.

3

but unpaid fees and out-of-pocket expenses of the EFIH Second Lien Trustee and its professionals incurred through the date hereof (ii) the ongoing reasonable and document fees and out-of-pocket expenses of the EFIH Second Lien Trustee and its professionals (collectively, the "Adequate Protection Payments.").    Alternatively, these payments should be made under Sections 105(a) and 506(b) of the Bankruptcy Code.

**Background**

I.    **These Chapter 11 Cases**

7.    On April 29, 2014, the above-captioned debtors and debtors in possession (the "Debtors") filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.    The Court has entered an order for joint administration of these chapter 11 cases.    The Court has not appointed a trustee.    The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [Docket No. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [Docket No. 2570].    Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [Docket No. 98].

8.    On August 29, 2016, the Court confirmed a plan of reorganization as it related to the EFCH and TCEH Debtors and their subsidiaries, which went effective on October 3, 2016.

9.      The Debtors have completed solicitation on the *Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 9612] (the "EFH Plan").[4]  On November 21, 2016, the Debtors filed a *Notice Regarding Scheduling Order and Commencement of Plan Confirmation Proceedings* [Docket No. 10235] (the "EFH Plan Adjournment Notice"), stating that in light of the Third Circuit's opinion on the Makewhole Claims for the EFIH First Lien and EFIH Second Lien Notes, the Debtors have determined the adjourn the confirmation hearing (initially scheduled for December 1, 2016) "to engage in further discussions with key creditor constituencies and the Plan Sponsor."

10.     The EFH Plan contains a condition precedent that the Makewhole Claims for the EFIH First Lien Notes and EFIH Second Lien Notes be "Disallowed Makewhole Claims" as of the EFH Effective Date, although, this condition precedent can be waived by NextEra.  As of the date of this filing, it is unclear whether NextEra is prepared to waive such condition, or as the EFH Plan Adjournment Notices indicates, what other changes to the EFH Plan may be required.

**II.     The EFIH Second Lien Notes, Partial Repayment and Makewhole Claims**

11.     At the inception of the case, the combined aggregate principal amount of the EFIH Second Lien Notes was approximately $2.156 billion.  The EFIH Second Lien Notes are secured by second priority security interests in and liens on the prepetition EFIH collateral, including substantially all of EFIH's assets as defined in the Indenture (i.e. EFIH's 80% ownership stake in Oncor).

12.     On February 12, 2015, the Debtors filed a motion [Docket No. 3527] seeking to partially repay the EFIH Second Lien Notes in the amount of $750 million (the "Partial

---

[4] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the EFH Plan.

Repayment"). On March 10, 2015, the Court entered the *Order (A) Authorizing Partial Repayment of EFIH Second Lien Notes; (B) Approving EFIH DIP Consent; and (C) Authorizing Consent Fee* [Docket No. 3855] (the "Paydown Order"). Following application of the Partial Repayment (discussed in more detail below), the outstanding principal balance of the EFIH Second Lien Notes was reduced to approximately $1.710 billion. The EFIH Second Lien Notes continue to accrue interest (including Additional Interest and interest on interest on these amounts).[5]

13.    On November 17, 2016, the Third Circuit Court of Appeals held that the Makewhole Claims for the EFIH First Lien Notes and EFIH Second Lien Notes were allowed under the terms of their respective indentures.[6] Assuming an EFH Effective Date of June 30, 2017, (which, given the current state of the case, is far from clear), the Makewhole Claim for the EFIH Second Lien Notes will be approximately $241.6 million and the Makewhole Claim for the EFIH First Lien Notes will be approximately $584.3 million. Such amounts will also continue to accrue interest, thereby further decreasing the EFIH Second Lien Noteholders' equity cushion.

**III.    Payment to EFIH Second Lien Trustee Professionals**

14.    In connection with these cases, the EFIH Second Lien Trustee retained legal counsel Bryan Cave LLP, Kramer Levin Naftalis & Frankel LLP, and Pachulski Stang Ziehl & Jones LLP as well as financial advisor Rothschild, Inc. to provide necessary services.

15.    Pursuant to the Paydown Order, in March 2015, the EFIH Second Lien Trustee applied $15 million from the Partial Repayment towards the payment of its professionals.

---

[5] The EFIH Second Lien Trustee reserves all of its rights with respect to the calculation of amounts due under the Indenture.

[6] The Third Circuit reversed the judgments of the district court with instructions to remand to the Bankruptcy Court for further proceedings consistent with the opinion.

16.    Following confirmation of the Original Confirmed Plan (and in accordance with the procedure outlined in the disclosure statement for the Original Confirmed Plan), counsel to the EFIH Second Lien Trustee submitted redacted invoices for amounts incurred from the Paydown Date through confirmation of the Original Confirmed Plan.    The Debtors never objected to the reasonableness of the submitted fees and expenses but never paid any amounts to the EFIH Second Lien Trustee or its professionals.    In addition, in September 2016, the EFIH Second Lien Trustee submitted a periodic fee statement to the Debtors showing accrued but unpaid amounts.

17.    Although the current Plan provides that the fees and expenses of the EFIH Second Lien Trustee and its professionals are part of the Allowed Claim, payment of the fees and expenses is subject to the review process outlined in the Plan Supplement.    Under that proposed procedure, the EFIH Second Lien Trustee may not be able to submit its invoices for review until 45 days after the effective date of the EFH Plan and then be subject to a prolonged review/approval period.[7]

18.    The EFIH Second Lien Trustee and its professionals are currently owed approximately $17.070 million in accrued but unpaid fees and expenses incurred through October 31, 2016.

**Basis for Relief**

I.    **The EFIH Second Lien Notes are Secured and Entitled to Adequate Protection.**

19.    Under the Bankruptcy Code, a debtor must adequately protect a secured creditor's interest in property against any diminution in value of such interest resulting from the debtor's

---

[7] The EFIH Second Lien Trustee believes that the fee review process outlined in the Plan Supplement is inappropriate and raised substantive objections to the fee review process in its objection to the EFH Plan [Docket No. 10101].

use of the property during its chapter 11 case. *See* 11 U.S.C. § 363(e). What constitutes sufficient adequate protection is decided on a case-by-case basis. *See In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. 1992); *see also In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *In re Sw. Assocs.*, 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992).

20.     The EFIH Second Lien Notes have experienced a decline in their equity cushion and are entitled to adequate protection. *In re Satcon Tech. Corp.*, 2012 WL 6091160, *6 (Bankr. D. Del. 2012) ("adequate protection protects a pre-existing lienholder against a decrease in the value of its collateral") (citing *In re Planned Systems, Inc.*, 78 B.R. 852, 861-62 (Bankr. S.D. Ohio 1987)); *In re JER/Jameson Mezz Borrower II, LLC* 461 B.R. 293, 305-06 (Bankr. D. Del. 2011) (low equity cushion which was being eroded daily was cause for adequate protection payments); *Matter of Continental Airlines*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) ("In other words, a party can be granted relief from the stay if his interest is not adequately protected; if that request for relief from the stay is not granted, and the value of the collateral is declining, adequate protection may be required.") (citing *United Savings v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)); *In re Dispirito*, 371 B.R. 695, 699 (Bankr. D. N.J. 2007) ("[S]everal courts have concluded that secured creditors are entitled to receive adequate protection payments pre-confirmation to protect them against the decline in value of their collateral") (quoting *In re Cook*, 205 B.R. 437, 440-43 (Bankr. N.D. Fla. 1997)). Even taking into account the Partial Repayment, the allowed amount of the EFIH Second Lien Note Claims has increased since the beginning of the case (with interest accruing each day).[8]

---

[8] Assuming an effective date of June 30, 2017, the total net allowed amount of the EFIH Second Lien Note Claims has increased by approximately $32.9 million, which reflects the accrual of unpaid post-petition interest and the Makewhole Claim minus amounts applied to outstanding principal and interest from the Partial Repayment.

Moreover, there is now an additional $584.3 million claim (on account of the EFIH First Lien Makewhole Claim) that is ahead of the EFIH Second Lien Notes.

21.    The EFIH Second Lien Trustee is also entitled to adequate protection for monitoring the collateral.  *In re Woodcrest Club, Inc.,* 2010 WL 5053971, at *7 (Bankr. E.D.N.Y. 2010) (included under adequate protection costs were fees for monitoring collateral). The EFIH Second Lien Trustee has been active in protecting the interests of the EFIH Second Lien Notes since the inception of these chapter 11 cases.  The EFIH Second Lien Trustee must continue vigorously protecting these interests, particularly in light of the current posture of the case.  It is now unclear when confirmation of the EFH Plan will go forward.  As of the filing of this Motion, NextEra has not waived the condition precedent that the Makewhole Claims be Disallowed and it is further unknown what changes may be made to the EFH Plan and what impact those changes may have on the outcome of these cases.  If the EFH Plan is terminated, the Debtors will, once again, be back at square one with no clear path for exit.

22.    The term "adequate protection" is intended to be a flexible concept.  *See* 3 Collier on Bankruptcy ¶ 363.05 (16th ed. rev. 2011); *see also In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985) ("In order to encourage reorganization, the courts must be flexible in applying the adequate protection standard.").  Indeed, it is well established that "the circumstances of the case will dictate the necessary relief to be given."  3 Collier on Bankruptcy ¶ 363.05 (16th ed. rev. 2011).    Adequate protection can come in various forms, including payment of adequate protection fees and expenses, payment of interest, granting of replacement liens, and/or administrative claims.  *See* 11 U.S.C. § 361; *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003).

23.     As a result, it is wholly appropriate and exceedingly routine for a debtor to pay a secured creditor's professional fees and expenses as adequate protection. *See e.g., In re American Apparel, LLC*, Case No. 16-12551 (Bankr. D. Del. Nov. 11, 2016) [Docket No. 114] ¶ 11(c); *In re Cal Dive Int., Inc.*, Case No. 15-10458 (Bankr. D. Del. 2015) [Docket No. 282] ¶¶ 17(c)-(d); *In re Hostess Brands, Inc.*, Case No. 12-22052 (Bankr. S.D.N.Y. Feb. 3, 2012) [Docket No. 254] ¶ 15(c); *In re Friendly Ice Cream Corp.*, Case No. 11-13167 (Bankr. D. Del Nov. 2, 2011) [Docket No. 282] ¶¶ 13–14; *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (Bankr. D. Del. Feb. 23, 2011) [Docket No. 315] ¶ 15(c); *In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (Bankr. D. Del. Dec. 29, 2010) [Docket No. 228] ¶ 13(c).

24.     The EFIH Second Lien Trustee therefore requests immediate payment of its accrued but unpaid fees and expenses and ongoing payment of its future fees and expenses as adequate protection. Consistent with the orders described above, these fees and expenses should also be accorded superpriority administrative claim status pursuant to Section 507(b) of the Bankruptcy Code.

**II.     The EFIH Section Lien Trustee is Further Entitled to Payment of its Fees Under Sections 105(a) and 506(b) of the Bankruptcy Code**

25.     The Bankruptcy Code provides for payment of reasonable post-petition fees and expenses of oversecured creditors. *See* 11 U.S.C. § 506(b) ("To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."); *see also In re Tribune Media Co.*, 2015 WL 7307305, at *3 (Bankr. D. Del. 2015) (recognizing that section "506(b) of the

10

Bankruptcy Code expressly provides for the allowance of postpetition attorneys' fees for oversecured creditors").

26.     Section 7.07 of the Indenture provides for the prompt payment of the reasonable fees and expenses of the EFIH Second lien Trustee and its professionals.[9]

27.     There is no dispute that the EFIH Second Lien Trustee is entitled to payment of its reasonable fees and expenses and in fact, the EFH Plan provides that the reasonable fees and expenses (and interest thereon) are part of the Allowed EFIH Second Lien Note Claims.  The only question is when these fees and expenses should be paid.[10]

28.     It is equitable to start paying the fees and expenses of the EFIH Second Lien Trustee and its professionals.   The EFIH Second Lien Trustee has been an active and constructive participant throughout these bankruptcy proceedings:

- In June 2014, the EFIH Second Lien Trustee and the ad hoc group of EFIH Second Lien Noteholders objected to the Debtors' proposed EFIH Second Lien Settlement and EFIH Second Lien DIP [Docket Nos. 1066 and 1067].  In connection with that objection, the ad hoc group of EFIH Second Lien Noteholders proposed a competing EFIH Second Lien DIP and then subsequently partnered with NextEra on a superior competing EFIH Second Lien DIP and restructuring Plan.  *See* Declaration of Todd R. Snyder [Docket No. 1070]).  As the Court is aware, these objections and competing proposals exposed the Debtors' inadequate marketing efforts for Oncor and (after termination of the original restructuring support agreement) led to the Debtors engaging in a robust marketing process for Oncor.

---

[9] Section 7.07 provides:

The Issuer and the Guarantors, jointly and severally, shall reimburse the Trustee promptly upon request for all reasonable disbursements, advances and expenses incurred or made by it in addition to the compensation for its services.  Such expenses shall include the reasonable compensation, disbursements and expenses of the Trustee's agents and counsel. . . . [T]o secure the payment obligations of the Issuer and the Guarantors in this Section 7.07, the Trustee shall have a Lien prior to the Notes on all money or property held or collected by the Trustee, except that held in trust to pay principal and interest on particular Notes.  Such Lien shall survive the satisfaction and discharge of this Indenture. . . . When the Trustee incurs expenses or renders services after an Event of Default specified in clause (6) or (7) of Section 6.01(a) hereof occurs, the expenses and the compensation for the services (including the fees and expenses of its agents and counsel) are intended to constitute expenses of administration under any Bankruptcy Law.  *See id.* at § 7.07(i).

[10] By paying the fees and expenses now, the Debtors will avoid further accrual of interest on these amounts.

- In the summer of 2015, the Debtors were actively negotiating with the EFIH Second Lien Trustee and an ad hoc group of EFIH Second Lien Noteholders on a proposed plan of reorganization. *See* Hr'g Tr. at 17:8-17 (June 25, 2015) (Counsel to the Debtors noting that "what we can identify now is that we have obtained the support in principal for a stand-alone equitization plan from the ad hoc group of E seconds, from Fidelity and from the T firsts that embraces the core elements of our plan").

- Shortly after the Original Confirmed Plan was withdrawn in May 2016, at the request of the Debtors, the EFIH Second Lien Trustee and EFIH Second Lien Noteholders prepared a plan proposal in good faith.

29.    While these proposals and negotiations did not lead to a final deal, the EFIH Second Lien Trustee and the noteholders have always been ready and willing to offer up alternate paths to facilitate the Debtors' emergence from bankruptcy.

30.    It is worth noting that the unsecured indenture trustees of the EFH and EFIH Debtors have already received significant advances for their fees and expense claims in this case. In December 2015, both UMB, as unsecured indenture trustee for the EIFH Unsecured Notes and AST, as unsecured indenture trustee for the EFH Notes, received a charging lien advance, authorized by this Court. *See Order Approving Additional Relief in Connection with Settlement of Certain EFH PIK Noteholder Claims* [Docket No. 7353]; *Order Approving Additional Relief in Connection with Settlement with EFH Notes Trustee* [Docket No. 7376].

31.    As noted above, the Debtors acknowledge that they will have to pay the fees and expenses of the EFIH Second Lien Trustee and its professionals at some point. The Debtors should no longer be able to use the fees and expenses of a secured indenture trustee to help finance the Debtors' chapter 11 cases.

### Notice

32.    The EFIH Second Lien Trustee shall provide notice of this Motion on the date hereof via first class mail to: (a) the Debtors; (b) the U.S. Trustee; (c) counsel to the EFH Creditors' Committee; (d) American Stock Transfer & Trust Company, LLC, in its capacity as

indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (e) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (f) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (g) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (f); (h) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (i) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (j) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (k) Oncor Electric Delivery Company LLC and counsel thereto; (l) the Securities and Exchange Commission; (m) the Internal Revenue Service; (n) the Office of the United States Attorney for the District of Delaware; (o) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (p) counsel to the Electric Reliability Council of Texas; and (q) those parties that have requested notice pursuant to Bankruptcy Rule 2002. The EFIH Second Lien Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

33.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the EFIH Second Lien Trustee respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  November 23, 2016      PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (Bar No. 2436)
Robert J. Feinstein (NY Bar No.  RF-2836)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@ pszjlaw.com
      rfeinstein@ pszjlaw.com

*- and –*

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Thomas Moers Mayer
Gregory A. Horowitz
Joshua K. Brody
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100
Facsimile:  (212) 715-8000
Email: tmayer@kramerlevin.com
      ghorowitz@kramerlevin.com
      jbrody@kramerlevin.com

*- and -*

BRYAN CAVE LLP

Stephanie Wickouski
1290 Avenue of the Americas
New York, New York 10104-3300
Telephone: (212) 541-1114
Facsimile: (212) 904-0514
Email: stephanie.wickouski@bryancave.com

*Counsel to the EFIH Second Lien Trustee*