## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| | (Jointly Administered) |
| Debtors.[1] | Re: Case Nos. 14-10992, 14-10990, 14-11039, and 14-11012 |
| | Hearing Date:  December 1, 2016 at 10:00 a.m. |

**REPLY IN SUPPORT OF MOTION OF SHIRLEY FENICLE, WILLIAM FAHY, JOHN H. JONES, AND DAVID HEINZMANN TO DISMISS CHAPTER 11 PETITIONS OF ASBESTOS DEBTORS EECI, INC., EEC HOLDINGS, INC., LSGT SACROC INC., AND LSGT GAS CO. LLC PURSUANT TO 11 U.S.C. § 1112(B)**

*CONFIDENTIAL—FILED UNDER TEMPORARY SEAL*
SUBJECT TO ENERGY FUTURE HOLDINGS
PROTECTIVE ORDER

**[REDACTED]**

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

## **TABLE OF CONTENTS**

Table of Authorities ........................................................................................................... iii

I.   The Debtors have not demonstrated a valid reorganizational purpose. ....................................2

    A.   There was no imminent danger that the Asbestos Debtors would be unable to pay their debts. ...................................................................................................................3

    B.   The unlikely possibility that the Asbestos Debtors could be responsible for tax obligations related to deconsolidation of T-Side entities does not justify seeking bankruptcy relief. .............................................................................................................6

    C.   Even if the Asbestos Debtors did face "imminent financial risk," they must still demonstrate that their petitions serve a valid reorganizational purpose. ............................9

    D.   The Asbestos Debtors did not seek to establish an asbestos bar date in order to preserve value for their creditors that would not be available outside of bankruptcy, but, rather, to benefit their controlling parent. ................................................11

II.  That the Asbestos Debtors filed their petitions with other members of the EFH corporate family does not change the good faith analysis. ....................................................................12

III. The Plan's reinstatement of intercompany claims and asbestos claims for which proofs of claim were filed does not demonstrate that the Asbestos debtors' petitions were filed in good faith. ...................................................................................................................16

IV. The Debtors cannot invoke the equitable defense of laches. ...................................................18

Conclusion ........................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 15375 Mem'l Corp. v. Bepco, L.P.*,
589 F.3d 605 (3d Cir. 2009).............................................................................. *passim*

*A.H. Robins Co. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986), *cert. denied*, 479 U.S. 876 (1986)............................................14

*Adler v. Fed. Republic of Nigeria*,
219 F.3d 869 (9th Cir. 2000) ...............................................................................20

*Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 North LaSalle Street P'ship*,
526 U.S. 434 (1999)...............................................................................15, 16

*Bernardin, Inc. v. Midland Oil Corp.*,
520 F.2d 771 (7th Cir. 1975) ...............................................................................17

*Blair v. Infineon Techs. AG*,
720 F. Supp. 2d 462 (D. Del. 2010)...............................................................................17

*In re Downey Fin. Corp.*,
428 B.R. 595 (Bankr. D. Del. 2010) ...............................................................................5

*In re Energy Future Holdings Corp.*,
522 B.R. 520 (Bankr. D. Del. 2015) ...............................................................................6

*Eppendorf-Netheler-Hinz GMBH v. Nat'l Scientific Supply Co., Inc.*,
14 F. App'x. 102 (2d Cir. 2001) ...............................................................................19

*In re General Growth Props., Inc.*,
409 B.R. 43 (Bankr. S.D.N.Y. 2009)...............................................................................15

*In re Integrated Telecom Express, Inc.*,
384 F.3d 108 (3d Cir. 2004).............................................................................. *passim*

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
304 F.3d 829 (9th Cir. 2002) ...............................................................................19

*In re JER/Jameson Mezz Borrower II, LLC*,
461 B.R. 293 (Bankr. D. Del. 2011) ...............................................................................15

*In re Mirant Corp.*,
No. 03-46590, 2005 WL 2148362 (Bankr. N.D. Tex. Jan. 26, 2005) ...............................14, 15

*In re Mushroom Transp. Co., Inc.*,
    382 F.3d 325 (3d Cir. 2004) ............................................................................... 19

*In re One2One Commc'ns, LLC*,
    805 F.3d 428 (3d Cir. 2015) ....................................................................... 18, 20

*Perlin v. Hitachi Capital Am. Corp.*,
    497 F.3d 364 (3d Cir. 2007) ................................................................................. 1

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
    324 U.S. 806 (1945) ........................................................................................... 20

*In re SGL Carbon Corp.*,
    200 F.3d 154 (3d Cir. 1999) ....................................................................... *passim*

*In re Tamecki*,
    229 F.3d 205 (3d Cir. 2000) ................................................................................. 1

*In re U.I.P. Engineered Prods. Corp.*,
    831 F.2d 54 (4th Cir. 1987) .................................................................... 13, 14, 15

*United States v. Golden Acres, Inc.*,
    702 F. Supp. 1097 (D. Del. 1988) ...................................................................... 17

## Statutes

11 U.S.C. § 362(d)(l) ................................................................................................. 5

11 U.S.C. § 524(g) .............................................................................................. 16, 17

11 U.S.C. § 1129(b) ................................................................................................. 17

The Debtors bear the burden of demonstrating that the Asbestos Debtors' Chapter 11 petitions were filed in good faith. *See In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 618 (3d Cir. 2009) ("The burden is on the bankruptcy petitioner to establish [good faith].")  That burden is a heavy one.  The Debtors must show, first, that the Asbestos Debtors were in "some degree of [real] financial distress." *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 121 (3d Cir. 2004).  They must demonstrate that there was a serious threat that created an immediate financial difficulty; the possibility of future financial distress is not enough. *See In re SGL Carbon Corp.*, 200 F.3d 154, 163 (3d Cir. 1999).  In addition, the Debtors must show that the petitions had a valid reorganization purpose. They must show that the petitions will maximize the value of the Asbestos Debtors' estates available to creditors, by preserving some value that would otherwise be lost outside of bankruptcy. *See Integrated Telecom*, 384 F.3d at 121.[2]

As shown in Part I below, the Debtors have not—and cannot—make either showing:  the Asbestos Debtors were not in financial distress, and none of the Debtors' asserted reasons for

---

[2]    The Debtors assert that petitions should be dismissed "only in egregious cases." Opposition of Energy Future Holdings Corp., *et al.*, to the Motion of Shirley Fenicle, David William Fahy, John H. Jones, and David Heinzmann to Dismiss Chapter 11 Petitions of Asbestos Debtors EECI, Inc., EEC Holdings, Inc., LSGT SACROC, Inc., and LSGT Gas Co. LLC Pursuant to 11 U.S.C. § 1112(b) ("**Response**") at 14, Nov. 23, 2016, D.I. 10249 (alteration in original) (citing *In re S. Canaan Cellular Invs., LLC*, 420 B.R. 625, 631 (E.D. Pa. 2009)).  This is not the standard for dismissal of Chapter 11 petitions.  The Debtors neglect to mention that the cases cited by the *S. Canaan* court involved the dismissal of bankruptcy petitions filed by individuals under Chapter 7. *See In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000) (internal citation omitted); *Perlin v. Hitachi Capital Am. Corp.*, 497 F.3d 364, 373 (3d Cir. 2007).  In *Tamecki* and *Perlin*, the Third Circuit instructed that Chapter 7 petitions generally will be dismissed "only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." *Tamecki*, 229 F.3d at 207; *Perlin*, 497 F.3d at 373.  The policies underlying Chapter 11 are different than those underlying Chapter 7, and the standard for bad faith dismissal of Chapter 11 petitions is also different.  That standard is set out in the Third Circuit's opinions in *SGL Carbon*, *Integrated Telecom*, and *15375 Memorial*. None of those opinions cite to *Perlin* or *Tamecki*, or even mention the word "egregious."

filing for bankruptcy are valid reorganizational purposes. The Asbestos Debtors did not file with the intent of restructuring their debts. Rather, their purpose was to discharge asbestos claims without compensation, in order to increase the value of equity. That is not good faith.

## I.    THE DEBTORS HAVE NOT DEMONSTRATED A VALID REORGANIZATIONAL PURPOSE.

The Debtors assert that the Asbestos Debtors had four reasons to file for bankruptcy, and that each demonstrates good faith: (1) the Asbestos Debtors could be rendered cash-poor if their parent, EFH Corp., filed and the Asbestos Debtors did not, and unable to pay to settle and defend against asbestos claims; (2) there was a possibility that the Asbestos Debtors might face large tax liabilities, and filing for bankruptcy with EFH Corp. would allow them to participate in any resolution of those liabilities; (3) potential purchasers of EFH Corp. wanted the Asbestos Debtors to seek Chapter 11 protection and establish an asbestos-related bar date; and (4) the Asbestos Debtors have used the bankruptcy process to convince NextEra to assume the Asbestos Debtors' corporate structure "in whole" and to reinstate the asbestos liabilities, as well as the intercompany loans for which EFH Corp. is responsible. *See* Response at 4.

The Third Circuit has instructed that the inquiry into good faith is "based more on objective analysis of whether the debtor has sought to step outside the 'equitable limitations' of Chapter 11 than the subjective intent of the debtor." *15375 Mem'l,* 589 F.3d at 618 n.8. As the court stated in *SGL Carbon:*

> The term 'good faith' is somewhat misleading. Though it suggests that the debtor's subjective intent is determinative, this is not the case. Instead, the 'good faith' filing requirement encompasses several, distinct equitable limitations that courts have placed on Chapter 11 filings. Courts have implied such limitations to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws.

*SGL Carbon,* 200 F.3d at 165 (citation omitted).

2

The Third Circuit has also instructed that the Court must examine each of these asserted reasons to determine whether they demonstrate that the bankruptcy filings would "add or preserve value that would otherwise be unavailable to creditors outside of bankruptcy." *15375 Mem'l*, 589 F.3d at 620 (examining and rejecting Debtors' asserted reasons for bankruptcy filing).  None of the Debtors' cited reasons meet this standard.

### A.    There was no imminent danger that the Asbestos Debtors would be unable to pay their debts.

The Debtors have repeatedly insisted that these bankruptcy cases are "not driven by asbestos liabilities,"[3] and that the asbestos liabilities are not material.[4]  Now, the Debtors assert that the Asbestos Debtors "had no realistic alternative to filing for bankruptcy" (Response ¶ 2, at 2) because they were about to be overwhelmed by their asbestos liabilities: "the impending bankruptcy filing of the other Debtors risked cutting off the sole cash source to fund asbestos liabilities."  Response ¶ 33, at 14.

EFH Corp.'s bankruptcy did not did not pose a "serious threat" to the Asbestos Debtors' solvency, or create an "immediate financial difficulty."  *SGL Carbon*, 200 F.3d at 162, 163.  The Debtors themselves admit that if the Asbestos Debtors had not filed, EFH Corp. could have sought court approval to "send cash down to fund those costs" (Response ¶ 20, at 9), and there is

---

[3]    Objection of Energy Future Holdings Corp., *et al.*, to the Motion of Charlotte Liberda and Curtis Liberda to Appoint Legal Representative and Joinder of Shirley Fenicle, as Successor-In-Interest to the Estate of George Fenicle, and David William Fahy to the Motion of Charlotte and Curtis Liberda to Appoint Legal Representative ¶ 8, Aug. 8, 2015, D.I. 5209; *see also* Debtors' Reply in Support of Bar Date with Respect to Asbestos Claims ("**Debtors' Bar Date Reply**") ¶ 5, Aug. 11, 2014, D.I. 1804.

[4]    Debtors' Bar Date Reply ¶ 6; *see also* Motion of Shirley Fenicle, David William Fahy, John H. Jones, and David Heinzmann to Dismiss Chapter 11 Petitions of Asbestos Debtors EECI, Inc., EEC Holdings, Inc., LSGT SACROC, Inc., and LSGT Gas Co. LLC Pursuant to 11 U.S.C. § 1112(b), Nov. 8, 2016, D.I. 10074.

every reason to expect that this Court would have granted such a request.[5]  The Third Circuit has

emphasized that, while the Code does not require that a debtor be insolvent to file for bankruptcy

relief, and permits "early access to bankruptcy relief to allow a debtor to rehabilitate its business

before it is faced with a hopeless situation," it "does not open the door to premature filing, nor

does it allow for the filing of a bankruptcy petition that lacks a valid reorganizational purpose."

*SGL Carbon*, 200 F.3d at 163 (footnotes omitted); *Integrated Telecom*, 384 F.3d at 121 (same).

Moreover, as shown in Part C, insolvency alone does not justify filing for Chapter 11 relief; the

Asbestos Debtors must still demonstrate a valid reorganization purpose.

On several occasions, the Debtors have sought and been granted modifications of the

stay to allow them to make various payments, including: (1) to permit EFH Corporate Services to

provide cash management services to the Debtors and certain non-Debtor affiliates, including

EFH Properties, and to permit the Debtors to continue their intercompany transactions and the

payment of intercompany claims;[6] (2) to permit the Debtors to continue to pay employee

compensation and employee and retiree benefit programs, as well as pre-petition workers'

---

[5]    If EFH Corp. did not have the stay lifted to permit it to fund asbestos claims, there is no reason to expect that the Asbestos Debtors would be driven into bankruptcy by demands from claimants.  Even if claims could not be paid until EFH Corp. was reorganized, claimants would prefer to have the Asbestos Debtors remain out of bankruptcy, so that they could liquidate their claims.

[6]    Interim Order (A) Authorizing the Debtors to (I) Continue Using Their Existing Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, and (III) Continue Using Certain Investment Accounts; (B) Authorizing Continued Intercompany Transactions and Netting of Intercompany Claims; And (C) Granting Postpetition Intercompany Claims Administrative Expense Priority ("**Cash Management Order**"), May 2, 2014, D.I. 304; *see also* Disclosure Statement for the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors at 39, Sept. 21, 2016, D.I. 9616.

compensation claims;[7] (3) to allow the Debtors to use cash collateral to continue operating their businesses in the ordinary course and to secure protection for lien holders in that collateral;[8] and (4) to obtain debtor-in-possession financing.[9]

If the Asbestos Debtors had not filed for bankruptcy, the Debtors could have asked this Court to modify the stay to permit EFH Corp. to continue to make payments on its intercompany obligations in order to fund the Asbestos Debtors' payment of asbestos liabilities.  *See* 11 U.S.C. § 362(d)(l).  In determining whether cause for lifting the stay exists, courts apply a multi-factor approach, balancing the harm to the debtor's estate if the relief is granted against the harm to the movant seeking relief if it is denied.  *See, e.g.*, *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010) (considering: (1) whether any great prejudice to either the bankrupt estate

---

[7]    *See* Final Order (A) Authorizing the Debtors to (I) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (II) Pay and Honor Employee and Retiree Medical and Similar Benefits, and (III) Continue Employee and Retiree Benefit Programs, and (B) Modifying the Automatic Stay at 1, June 4, 2014, D.I. 786; Second Final Order (A) Authorizing the Debtors to (I) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (II) Pay and Honor Employee and Retiree Medical and Similar Benefits, and (III) Continue Employee and Retiree Benefit Programs, and (B) Modifying the Automatic Stay, June 30, 2014, D.I. 1311; Motion of Energy Future Holdings Corp., *et al.*, for Entry of an Order Authorizing the Debtors to (A) Pay Certain Prepetition Amounts on Account of Non-Insider Compensation Programs and (B) Continue the Non-Insider Compensation Programs in the Ordinary Course of Business on a Postpetition Basis at 28-29, Apr. 29, 2014, D.I. 25.

[8]    *See* Final Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay, June 6, 2014, D.I. 855.

[9]    *See* Amended Final Order (A) Approving Postpetition Financing for Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Approving the Use of Cash Collateral by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (D) Authorizing the EFIH First Lien Repayment, (E) Authorizing Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Orders, and (F) Modifying the Automatic Stay, Mar. 3, 2015, D.I. 3856. *See also* Amended Order (A) Approving Postpetition Financing for Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing Refinancing of Secured Post-Petition Debt and (D) Modifying the Automatic Stay, June 28, 2016, D.I. 8831.

or the debtor will result from a lifting of the [automatic] stay; (2) whether the hardship to the non-bankrupt party by maintenance of the [automatic] stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits).  In these cases, the harm to the Asbestos Debtors—and their asbestos victims—is obvious:  as the Debtors have stated, the Asbestos Debtors have no other source of cash to pay asbestos claims.  Funding the obligations would cause no hardship to EFH Corp.:  historically, the Asbestos Debtors have paid no more than $3 million annually to resolve asbestos claims.[10]  That is a small fraction of EFH Corp.'s admittedly valid intercompany obligations to the Asbestos Debtors, ███████████████

███████████████████████

**B.**    **The unlikely possibility that the Asbestos Debtors could be responsible for tax obligations related to deconsolidation of T-Side entities does not justify seeking bankruptcy relief.**

The Debtors contend that, "under certain reorganization scenarios," three of the Asbestos Debtors—EECI, Inc., LSGT SACROC, and EEC Holdings, Inc.[12]—would have been jointly and severally liable with EFH Corp. for "potentially billions in deconsolidation tax" (Response ¶ 3, at 3), which "could easily wipe out all the value" of those entities and force them to file for bankruptcy protection.  *Id.* ¶¶ 21, 23, at 10.  Filing Chapter 11, the Debtors claim, enabled the

---

[10]    *In re Energy Future Holdings Corp.* ("*In re EFH Corp.*"), 522 B.R. 520, 524 (Bankr. D. Del. 2015).

[11]    █████████████████████████████████████████
████████████████████  Mem. of Law in Support of Mot. of Shirley Fenicle, David William Fahy, John H. Jones, and David Heinzmann to Dismiss Chapter 11 Petitions of Asbestos Debtors EECI, Inc., EEC Holdings, Inc., LSGT SACROC, Inc., and LSGT Gas Co. LLC Pursuant to 11 U.S.C. § 1112(b) ("**Motion to Dismiss**"), Nov. 8, 2015, D.I. 10075).

[12]    As the Debtors acknowledge, LSGT Gas Company LLC is a disregarded entity for tax purposes and thus would not be liable for any deconsolidation tax.  *See* Response at 3 n.1.

Asbestos Debtors "to participate in any resolution of tax liabilities with the other Debtors." *Id.* ¶ 3, at 3.

As set out below, any such potential tax liabilities did not pose a "serious threat" to the Asbestos Debtors, or create an "immediate financial difficulty." *SGL Carbon*, 200 F.3d at 162, 163. And the Debtors did not have to be in bankruptcy in order to participate in any resolution of the tax issues.

The Debtors do not identify the reorganization scenarios under which the Asbestos Debtors could have been liable for deconsolidation taxes. Presumably, they are referring to deconsolidation-related taxes that could have been triggered by a taxable sale of TCEH.[13] They may also be referring to EFH Corp.'s threat to "check the box" with respect to its TCEH LLC subsidiaries under Treasury regulation 301-7701-3(b), which would convert them into entities treated as corporations for federal income tax purposes, and thus, according to Debtors, would make those entities jointly and severally liable for the any tax liabilities incurred by the consolidated group as a result of such a restructuring. *See* Omnibus Tax Memorandum at 20-21, Oct. 1, 2014, D.I. 2296. But if EFH Corp. had actually made good on its threat and converted the TCEH LLCs into taxable entities, the cash held by those subsidiaries would have been sufficient to pay the resulting tax bill, and the Asbestos Debtors would not have had to contribute.[14] Regardless, EFH Corp. never intended to do so. From the outset, EFH Corp.'s goal

---

[13]    *See* Order Granting the Motion of Energy Future Holdings Corp., *et al.*, to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement at 82, Dec. 7, 2015, D.I. 7243.

[14]    *See* Trial Brief and Omnibus Objection of the EFH Official Committee to (I) Motion of Energy Future Holdings Corp., *et al.*, to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement and (II) Confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code ("**EFH Comm. Br.**") ¶ 97, at 37, *(footnote continued)*

was to avoid a taxable transaction,[15] and the threat to "check the box" to convert the TCEH subsidiaries to taxable entities was intended to give the TCEH Debtors an equal incentive to settle the issue.  Indeed, ultimately, the TCEH Debtors were spun off in a non-taxable transaction.[16]  It bears noting that the Asbestos Debtors did not contribute to that resolution of the tax issues.

Contrary to the Debtors' assertion, the Asbestos Debtors did not have to be in bankruptcy to participate in any resolution of the tax issues, as demonstrated by the fact that other EFH Corp. subsidiaries that would have been jointly and severally liable for any deconsolidation-related taxes were not placed in bankruptcy, including EFH Properties Company[17] and Basic Resources, Inc.  Although those entities had not filed for Chapter 11 protection themselves, both were transferred to TCEH as part of the TCEH Settlement Plan.  *See* Plan I.A.395; art. IV(2)(a)(D).  Having the Asbestos Debtors participate in a resolution of tax issues would not have preserved value that would not be available for creditors outside of bankruptcy, because the same result could be achieved outside of bankruptcy.  Thus, it is not a proper reorganizational purpose and does not demonstrate good faith in filing.  *See Integrated Telecom*, 384 F.3d at 126 (noting that debtors had not "identified any efficiencies that were realized in this bankruptcy that

---

Oct. 23, 2015, D.I. 6627.  Moreover, it appears that there never was a realistic possibility of the $7 billion tax bill the Debtors forecasted.  *See* EFH Comm. Br. ¶ 35, at 12-13.

[15]    *See* Omnibus Tax Memorandum at 24-26.

[16]    *See* Order Confirming the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors, Aug. 29, 2016, D.I. 9421.

[17]    EFH chose not to place EFH Properties into bankruptcy, even though it was jointly and severally liable with EFIH for environmental liabilities, and had a sufficient "identity of interests" with EFIH to justify an extension of the automatic stay to non-debtor EFH Properties. *See* Notice of Settlement Among EFH Properties Company and the United States on Behalf of U.S. Environmental Protection Agency and U.S. Dep't of the Interior, June 29, 2016, D.I. 9161.

could not have been realized under Delaware law"); *15375 Mem'l*, 589 F.3d at 624 (rejecting the argument that managing and searching for assets justified petition, because the debtors "could have managed and searched for assets without filing for bankruptcy").

**C.    Even if the Asbestos Debtors did face "imminent financial risk," they must still demonstrate that their petitions serve a valid reorganizational purpose.**

As shown above, the Asbestos Debtors did not face "imminent financial risks" from the bankruptcy filings of the other Debtors.  Even if they had, the Debtors are incorrect that such a risk "standing alone" demonstrates good faith.  Response ¶ 48, at 20.  The Third Circuit has clearly instructed that, while "some degree of financial distress" is a *necessary* condition for filing a bankruptcy petition (*Integrated Telecom*, 384 F.3d at 121), it is not a *sufficient* condition.  Rather, a petition "is not filed in good faith unless it serves a valid reorganizational purpose." *SGL Carbon*, 200 F.3d at 165.  "[I]f a Chapter 11  plan does not have a rehabilitative purpose, the 'statutory provisions designed to accomplish the reorganization objective become destructive of the legitimate rights and interests of creditors, the intended beneficiaries.'" *Integrated Telecom*, 384 F.3d at 119 (citation omitted).  The petition "must seek to create or preserve some value that would otherwise be lost—not merely distributed to a different stakeholder—outside of bankruptcy." *Id.*  This threshold inquiry is "particularly sensitive," the Third Circuit has emphasized, where, as here, "the petition seeks to distribute value directly from a creditor to a company's shareholder." *Id.* at 129.

That is precisely what the Asbestos Debtors' petitions sought to do.  The Debtors argue

---

that the desire to deal with the asbestos liabilities justifies the Asbestos Debtors' bankruptcy filings.  As shown in Part I.D. below, the opposite is true:  that the petitions were filed to discharge asbestos claims in order to increase the value of equity demonstrates bad faith.

From the outset, the Debtors intended to "deal with" the asbestos liabilities not by restructuring the Asbestos Debtors' debts, but by discharging them.  Under each version of the Debtors' plan, all asbestos claims for which proofs of claim were filed would be reinstated, and pass through to the Reorganized Asbestos Debtors, while those for which no proofs of claim were filed, including future, Unmanifested Asbestos Claims, would be discharged.[19]  While the good faith of the Plan is not before the Court at this time,[20] "the features of the proposed plan help illuminate the lack of good faith in the filing."  *SGL Carbon*, 200 F.3d at 167 n.17.  As the Third Circuit has instructed, where, as here, "the probable effect of a reorganization plan is to treat unfairly of creditors, then the probable cause of the filing was bad faith."  *Id*. (citation omitted).  Here, to say that the Plan would treat creditors unfairly is an understatement: rather than restructuring the Asbestos Debtors' debts, the Plan would distribute value directly from their creditors to their shareholders by discharging asbestos claims without compensation.  Viewing the totality of the circumstances, the conclusion that the filing was in bad faith cannot be avoided.

---

[19]    *See* Response ¶ 3, n.4.

[20]    Movants have demonstrated elsewhere that the Plan cannot be confirmed as it was not proposed in good faith, and it violates the due process rights of Unmanifested Asbestos Claims. *See* Objection of Shirley Fenicle, William Fahy, John H. Jones, and David Heinzmann to Confirmation of the Debtors' Fourth Amended Joint Plan of Reorganization as it Relates to the EFH Debtors and EFIH Debtors ("**Confirmation Objection**"), Nov. 15, 2016, D.I. 10142.  In this Motion, Movants do not ask the Court to rule that Unmanifested Asbestos Claims cannot be discharged.  Thus, there is no basis for Debtors' claim that the Motion is a collateral attack on this Court's Asbestos Bar Date Opinion or Asbestos Bar Date and Notice Order.  *See* Response at 2.

**D.    The Asbestos Debtors did not seek to establish an asbestos bar date in order to preserve value for their creditors that would not be available outside of bankruptcy, but, rather, to benefit their controlling parent.**

The Debtors contend that the Asbestos Debtors' petitions were filed in good faith because "every potential owner of Reorganized EFH insisted as a condition to their bids that the LSGT [Asbestos] Debtors seek chapter 11 protection and/or establish an asbestos-related bar date." Response at 4-5.  As the Movants have already shown, establishing a bar date to discharge claims in order to facilitate a sale is not a valid reorganizational purpose.  *See* Motion to Dismiss at 15.  The Third Circuit has emphasized that the "desire to take advantage of the protections of the Code cannot establish . . . *good* faith." *15375 Mem'l*, 589 F.3d at 622 (citation omitted).  The Asbestos Debtors must show "how the establishment of a bar date maximized the [Asbestos] Debtors' estates" (*id.*) and "preserve[d] some value that would otherwise be lost–not merely distributed to a different stakeholder–outside of bankruptcy." *Integrated Telecom*, 384 F.3d at 129.  The Debtors cannot make that showing.

The Asbestos Debtors did not file in order to restructure their debts, in a good faith effort to deal with the "basic distribution problem bankruptcy was designed to resolve." *15375 Mem'l*, 589 F.3d at 621.  Nor did they seek a bar date to ensure that all of their asbestos victims would receive a pro rata share of a limited pool of assets:  throughout these bankruptcies, the Debtors have insisted that the Asbestos Debtors have no distribution problem, as they would have more than adequate assets to pay all of their asbestos creditors in full, even if no asbestos claims were discharged.  *See* Confirmation Objection at 29-31; Motion to Dismiss at 3-4.  The goal of the bankruptcy filings was not to facilitate a reorganization or rehabilitation of the Asbestos Debtors but, rather, the goal was to discharge claims, including the claims of absent and unrepresented unmanifested asbestos claimants, and thus provide a windfall to the Asbestos Debtors' controlling parent.

## II.    THAT THE ASBESTOS DEBTORS FILED THEIR PETITIONS WITH OTHER MEMBERS OF THE EFH CORPORATE FAMILY DOES NOT CHANGE THE GOOD FAITH ANALYSIS.

The Debtors contend that, because the Asbestos Debtors filed their bankruptcy petitions with the EFH Corp. and other affiliated Debtors, the Court should not consider whether the Asbestos Debtors filed in good faith, but should consider only "whether EFH as a whole did." Response at 16.  They Debtors note that they were "unable to service their approximately $42 billion in liabilities," and assert that the Asbestos Debtors were an "integral part" of the "much broader reorganizational effort" of the Debtors.  Response ¶ 41, at 18-19.  A bar date to "quantify the potential asbestos liability exposure" of the Asbestos Debtors, the Debtors claim, was "an essential part of the Debtors' sale process."   Response ¶¶ 42, 44, at 19.   According to the Debtors, it is irrelevant whether the Asbestos Debtors' petitions would maximize the value of their estates for their creditors; all that matters is that discharging asbestos claims would maximize the value of EFH Corp. by increasing the sale value of the Debtors as a whole. Response ¶¶ 3, 33.

As shown in Part I.D. above, Third Circuit law is clear that it is bad faith to file bankruptcy with the goal of discharging claims for the benefit of shareholders.  *See also* Motion to Dismiss at 13-17.   Yet the Debtors urge this Court to ignore controlling Third Circuit precedents—*SGL Carbon*, *Integrated Telecom*, and *15375 Memorial*—because those cases involved individual debtors rather than corporate family groups of debtors.  *See* Response ¶¶ 56-60, at 23-24.  According to the Debtors, corporate family structures "often are not based on the fundamental, economic realities of the overall corporate entity" and thus, when affiliated entities file for bankruptcy relief, the Court "should not be bound by the particular corporate structures and divisions into nominally separate entities, but instead should examine the integrated enterprise as a whole."  Response ¶ 39, at 17.  Thus, the Debtors would have this court adopt a

blanket rule that, whenever a bankruptcy involves a corporate family, the good faith of individual debtors cannot be considered, and the parent corporation should be given *carte blanche* to determine which subsidiaries may file for bankruptcy.  Response ¶¶ 39-40, at 17-18.  This broad proposition is contrary to controlling Third Circuit law and is not supported by the cases on which the Debtors rely.  *See* Response at 16-17 (citing cases).  At most, those cases stand only for the more limited proposition—not endorsed by the Third Circuit—that where affiliated Debtors are part of a common business enterprise, such that they have an identity of interests, their business and financial circumstances may be considered as a whole in determining good faith.

In *In re U.I.P. Engineered Prods. Corp.*, Heisley, a creditor, had entered into a purchase agreement with Eastmet and three wholly-owned subsidiaries, under which Heisley was to purchase, *inter alia*, the assets of the subsidiaries.  831 F.2d 54, 56 (4th Cir. 1987).  Eastmet did not perform, and Heisley sued to enforce the contract in state court.  Eastmet then filed for bankruptcy protection, and moved to reject the contract.  When the bankruptcy court denied a motion by Eastmet to extend the automatic stay to its subsidiaries, UIP and Harry Davies filed for bankruptcy.  *Id.* at 56.  Heisley moved to dismiss the subsidiaries' petitions as bad faith filings.  The Fourth Circuit overturned the lower courts' denials of that motion, emphasizing that the wholly-owned subsidiaries—whose assets were to be transferred under the sale contract— were crucial to Eastmet's reorganization plan.  *Id.*  The court held that the bankruptcy court had committed error when it had not granted Eastmet's motion to extend the stay to the subsidiaries, because there was an "identity of interest" that "justified the protection of the subsidiaries as well as the parent corporation."  *Id.* (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986),

*cert. denied*, 479 U.S. 876 (1986)).[21]  Filing for bankruptcy, the court found, was just an alternate way for the subsidiaries to seek the protection of the stay that should have been extended to them in the first place.

*In re Mirant Corp.* also involved affiliated debtors who were co-parties to contracts that were in default.  No. 03-46590, 2005 WL 2148362 (Bankr. N.D. Tex. Jan. 26, 2005).  That case involved a motion to dismiss the bankruptcy case of Mirant Mid-Atlantic LLC ("**MirMA**").  The Court found that MirMA was a "principal," "key," and "integrated" member of the debtors' "common business enterprise."  *Id*. at *6.  The court noted that, because MirMA was "one of the largest pieces of [the] Debtors' enterprise," if it had not filed for relief, it likely would have been "pushed in by creditors concerned about leaving so large a part of [the] Debtors' business and assets beyond court supervision."  *Id.*  Thus, the court held that, in that case, it was "appropriate to provide a standard different from that applied to good faith dismissal in a single debtor" because MirMA was "a key operating affiliate placed in chapter 11 in conjunction with necessary filings" by affiliated debtors.  *Id.* at *5.  The court also held that, considered independently, MirMA's filing was for a valid bankruptcy purpose, and was not "tactical or intended for a nefarious purpose."  *Id.*[22]

---

[21]    In *Piccinin*, the Fourth Circuit held that the automatic stay could be extended to a non-debtor third-party defendant only in "unusual situations" in which "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."  *Piccinin*, 788 F.2d at 999.

[22]    The Debtors also cite, but do not discuss, *In re General Growth Props., Inc.*, 409 B.R. 43 (Bankr. S.D.N.Y. 2009) and *In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293 (Bankr. D. Del. 2011).  *General Growth* concerned the bankruptcy of a large REIT and affiliated debtors, who, as part of a common business enterprise, owned and managed numerous shopping centers and other properties.  409 B.R. at 47.  The debtor subsidiaries funded the parent debtor with rental income and, the court found, were crucial to the debtors' reorganization.  The court therefore found it was appropriate to consider the interests of the group in judging good faith.  *Id.* *(footnote continued)*

Unlike the debtors in the *U.I.P.* and *Mirant* cases, the Asbestos Debtors are not co-obligors on any contracts with the other Debtors in these cases.  Nor do the Asbestos Debtors play an integral role in the Debtors' business enterprise:  for more than a decade, the only activity of the Asbestos Debtors has been to deal with pension and other post-employment benefit obligations, and resolving and paying asbestos claims.  *See* Motion to Dismiss at 3.  The Debtors do not claim that the Asbestos Debtors are key parts of the Debtors' business enterprise.  Rather, they assert that dealing with the asbestos liabilities is integral to the Debtors' sales process.  But the desire to discharge claims in order the increase the sale price of assets and thereby benefit equity is not a legitimate bankruptcy purpose regardless of whether a debtor files individually or a part of a corporate group.  Rather, it is "antithetical to the basic purposes of bankruptcy," and is bad faith.  *Integrated Telecom*, 384 F.3d at 119.  The observation of the Supreme Court in *LaSalle*—that "any reorganization plan proposed by a debtor . . . [may] simply turn out to be too good a deal for the debtor's owners"[23]—applies with equal force whether or not the debtor's controlling parent is also in bankruptcy.  In both situations, the parent will be motivated to tamp down liabilities of the subsidiaries in order to salvage equity.  In these cases, the Asbestos Debtors' representatives, who were officers of EFH Corp., were primarily concerned with protecting EFH Corp., not the Asbestos Debtors and their creditors, and the

at 64-65.  And in *JER/Jameson*, Judge Walrath found that, even considering the Debtors' joint filings "holistically," the debtor's desire to effect a sale was not a legitimate purpose because "the sale process contemplated in the bankruptcy case must be designed to realize some value that would not be available outside of bankruptcy" and there was "no evidence that the bankruptcy case will do that."  461 B.R. at 303.  Thus, the court held, the filing was in bad faith.  *Id.*

Movants are not aware of any other cases in which a court has suggested that it may consider the good faith of affiliated debtors as a group.

[23]    *Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 North LaSalle Street P'ship*, 526 U.S. 434, 444 (1999).

bankruptcies were not filed in good faith.  *15375 Mem'l*, 589 F.3d at 624 n.14 ("While this appeal does not involve a breach of fiduciary duty claim against the debtor in possession, . . . similar concerns are relevant to the good faith inquiry.").

### III.  THE PLAN'S REINSTATEMENT OF INTERCOMPANY CLAIMS AND ASBESTOS CLAIMS FOR WHICH PROOFS OF CLAIM WERE FILED DOES NOT DEMONSTRATE THAT THE ASBESTOS DEBTORS' PETITIONS WERE FILED IN GOOD FAITH.

The Debtors assert that their "decision to reinstate all timely-filed asbestos claims and the related intercompany claims can hardly be construed as an attempt to evade liabilities." Response ¶ 55, at 23.  According to the Debtors, they should be commended because they "have at all times managed to secure the reinstatement of asbestos claims and related intercompany claims under every proposed plan of reorganization."  Response at 4, n.4. But the reinstatement of claims for which proofs of claim were filed is beside the point:  the petition was filed in bad faith because its purpose was to discharge asbestos claims that were not timely filed in order to increase the value of the controlling shareholder's equity.  That is the epitome of bad faith.

The Debtors' assertion that they "fought hard" to protect asbestos claimants is pure revisionism.  The Debtors acted out of self-interest in reinstating asbestos claims.  Unless they were to adopt a plan that comports with the requirements of Section 524(g), the Asbestos Debtors had no realistic alternative to reinstating asbestos claims, and passing them through the bankruptcy to the Reorganized Asbestos Debtors.  The only other way the Debtors could leave those claims unimpaired would be to pay each claim in full after individual allowance proceedings.  Such proceedings would have to take place in the District Court, where each individual claimant would have the right to a jury trial.  As a practical matter, claims allowance could not be completed for years, if not decades.  If, instead, the class that includes current

16

asbestos claims were impaired,[24] and voted to reject the Debtors' Plan, the absolute priority rule would be triggered, requiring the Debtors to demonstrate that every asbestos claim (the vast majority of which are unliquidated) would be paid in full before equity could retain any value. *See* 11 U.S.C. § 1129(b).

EFH Corp. also acted in self-interest in reinstating the intercompany claims. EFH Corp.—and potential acquirers, including NextEra—knew that, if the loans were not reinstated, EFH Corp. would face risk from claims of fraudulent transfer and veil piercing for having siphoned off the assets of the Asbestos Debtors.[25] Reinstatement of the intercompany claims is intended not to protect the asbestos claimants but to protect EFH Corp. (and, ultimately, NextEra), by making it more difficult for asbestos victims to pierce the veil and pursue EFH Corp.'s (and NextEra's) assets. *Cf. 15375 Mem'l*, 589 F.3d at 623 (noting that an agreement between debtor and its parent to cooperate on the pursuit of insurance rights did not justify bankruptcy filing, as the parents were at risk of alter ego claims, and it was in their self-interest to cooperate on insurance rights wholly independent of bankruptcy).

---

[24]    As Movants have noted elsewhere, the question of whether Section 524(g) provides the exclusive route for bankruptcy treatment of future, unmanifested asbestos claims is not before this Court. Confirmation Objection at 17.

[25]    Piercing the corporate veil is warranted where a parent company has siphoned its subsidiary's assets with knowledge of the subsidiary's liabilities. *See, e.g.*, *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 469 (D. Del. 2010) (holding that plaintiffs, former employees of Qimonda, a subsidiary of Infineon, could pierce the corporate veil of Infineon and treat it as an "alter ego or 'single employer,' liable for plaintiffs' back pay and benefits," because Infineon "continued to run and control Qimonda" as '[their] own internal division,' siphoned funds from Qimonda, and reaped benefits from this arrangement to the detriment of Qimonda (citations omitted)); *Bernardin, Inc. v. Midland Oil Corp.*, 520 F.2d 771, 775 (7th Cir. 1975) ("the equities among the parties required and dictated [the plaintiff's] recovery from [the parent corporation defendant] which had taken over and acquired all that [its subsidiary] had had to offer its creditors."); *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1106 (D. Del. 1988) ("[D]efendants were siphoning funds out of the corporation at regular intervals . . . [d]espite a mounting mortgage debt and an insolvent corporate shell.").

Questions posed by NextEra during due diligence indicate that it too was concerned that EFH Corp. could be at risk of veil-piercing claims if it did not reinstate the intercompany claims. For example, NextEra asked EFH Corp. why the intercompany loan had not been repaid when it matured in 2005,[26] and whether interest was being recorded on that loan at an appropriate rate.[27]

## IV.    THE DEBTORS CANNOT INVOKE THE EQUITABLE DEFENSE OF LACHES.

The Debtors have invoked the equitable defense of laches, which requires that they establish both "(1) an inexcusable delay in bringing the action and (2) prejudice."    *In re One2One Commc'ns, LLC*, 805 F.3d 428, 449 (3d Cir. 2015).   "To establish prejudice, the party raising laches must demonstrate that the delay caused a disadvantage in asserting and establishing a claimed right or defense; the mere loss of what one would have otherwise kept does not establish prejudice."    *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 337 (3d Cir. 2004).   Here, the Debtors cannot demonstrate either element.

Movants cannot be charged with inexcusable delay in moving to dismiss the petitions. The Debtors note that certain of the Movants have been active in these cases, and that Ms. Fenicle and Mr. Fahy are on the official committee of unsecured creditors, and contend that Movants should have sought to dismiss the cases when they were first filed.  The Debtors ignore,

---

[26]    Exhibit U to Declaration of Jonathan F. Ganter, Esq. in Support of Opposition of Energy Future Holdings Corp., *et al.*, to the Motion of Shirley Fenicle, David William Fahy, John H. Jones, and David Heinzmann to Dismiss Chapter 11 Petitions of Asbestos Debtors EECI, Inc., EEC Holdings, Inc., LSGT SAROC, Inc., and LSGT Gas Co. LLC at EFH06526527, Nov. 23, 2016, D.I. 10251 ("That promissory note matured on September 30, 2005.  Why was it not paid when [] matured?  Why is it still on the books as owing to LSGT Gas?").

[27]    *See id.* ("The $560 million intercompany loan includes another $187.3 million in interest, said to have accrued [] the promissory note and in part from LSGT's involvement in the 'money pool.'  We need more detail [] the calculations leading to $187 million.  It's a large number, we need it broken down.").  NextEra also asked for detailed information regarding the "maintenance of corporate formalities/separateness between EFH and the asbestos subs" and the intercompany loans.  *Id.*

however, that Mr. Jones and Mr. Heinzmann became involved in these cases much later, after they each were diagnosed with mesothelioma, and discovered that their claims against the Asbestos Debtors would be discharged by the Plan.  Mr. Heinzmann was diagnosed in July of this year and, as he was not provided any notice, he was not even aware of the pendency of these bankruptcy cases until shortly before the instant Motion was filed.  He certainly cannot be faulted for not having acted earlier.  Nor can the myriad other Unmanifested Asbestos Claimants who are not yet even aware that their rights could be affected by these bankruptcies.

Regardless, the Debtors themselves must bear responsibility for any delay, as they successfully opposed the appointment of a legal representative to represent the interests of future, Unmanifested Asbestos Claimants, who would have been charged with probing the facts underlying the commencement of the cases—and provided the resources to do so.[28]  As the Debtors do not have clean hands, they cannot invoke the equitable defense of laches.  "A party asserting an equitable defense such as laches must demonstrate that it comes before the court with clean hands." *Eppendorf-Netheler-Hinz GMBH v. Nat'l Scientific Supply Co., Inc.*, 14 F. App'x. 102, 105 (2d Cir. 2001); *see also Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) ("A party with unclean hands may not assert laches.")  As the Supreme Court has instructed, the unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co*., 324 U.S. 806, 814 (1945).  The party must have "acted fairly and without fraud or deceit as to the controversy in issue."  *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir. 2000) (citation and quotation marks omitted).

---

[28]    Contrary to the Debtors' assertions, the EFH Committee does not, and can not, represent future, Unmanifested Asbestos Claimants.  *See* Motion to Dismiss at 7, n.16; Confirmation Objection at 1-5.

Nor can the Debtors demonstrate the kind of prejudice that is required to assert a defense of laches.  Having the cases dismissed at this point will not cause the Debtors to lose any right or defense that they might otherwise have had.  *See One2One Commc'ns*, 805 F.3d at 449. Dismissing the cases would not result in unraveling the Plan.  ███████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████ The only impact dismissal will have is that asbestos claims will not be discharged.

The Debtors complain that they have suffered prejudice because they have spent "millions of dollars" on issues related to the Asbestos Debtors.  Response ¶ 65, at 25.  But the Debtors chose to press on with their efforts to discharge asbestos claims, including Unmanifested Asbestos Claims, fully aware that the discharge provisions of the Plan raise serious constitutional due process issues, and that the Plan ultimately may not be confirmed.  That they have chosen to expend resources on their quest to deprive unrepresented and unaware asbestos victims of their claims without notice or compensation is not a reason to allow these cases to proceed, any more than it would justify confirmation of a Plan that, as demonstrated elsewhere, would violate the due process rights of tort victims, and was proposed in bad faith.

## CONCLUSION

For the reasons set out herein, and in the Motion to Dismiss, Movants respectfully submit that the Court should enter an order dismissing, with prejudice, the cases of the Asbestos Debtors as filed in good faith, and such other relief as the Court deems appropriate.  If the Court grants the requested relief, Movants respectfully request that the Court retain jurisdiction to permit Movants to seek an appropriate award of sanctions.

Dated:  November 29, 2016
  Wilmington, Delaware

         Respectfully submitted:

By:  */s/ Daniel K. Hogan*
    Daniel K. Hogan (DE Bar # 2814)
    HOGAN MCDANIEL
    1311 Delaware Avenue
    Wilmington, Delaware  19806
    Telephone:  (302) 656-7540
    Facsimile: (302) 656-7599
    dkhogan@dkhogan.com

    *Counsel for Shirley Fenicle, individually and as*
    *successor-in-interest to the Estate of George*
    *Fenicle, David William Fahy, John H. Jones, and*
    *David Heinzmann*

    -and-

    Leslie M. Kelleher (admitted *pro hac vice*)
    Jeanna M. Koski (admitted *pro hac vice*)
    CAPLIN & DRYSDALE, CHARTERED
    One Thomas Circle, N.W.
    Washington, DC 20005
    Telephone: (202) 862-5000
    -and-
    Elihu Inselbuch (admitted *pro hac vice*)
    600 Lexington Avenue, 21st Floor
    New York, NY 10022
    Telephone: (212) 379-0005

    *Counsel for Shirley Fenicle, individually and as*
    *successor-in-interest to the Estate of George*
    *Fenicle, David William Fahy, John H. Jones, and*
    *David Heinzmann*

    -and-

    Steven Kazan (admitted *pro hac vice*)
    KAZAN MCCLAIN SATTERLEY &
    GREENWOOD
    A Professional Law Corporation
    Jack London Market
    55 Harrison Street, Suite 400
    Oakland, CA 94607
    Telephone: (510) 302-1000

Facsimile: (510) 835-4913

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle*

-and-

Ethan Early (admitted *pro hac vice*)
EARLY LUCARELLI SWEENEY &
MEISENKOTHEN
265 Church Street, 11th Floor
New Haven, CT 06508-1866
Telephone: (203) 777-7799
Facsimile: (203) 785-1671

*Counsel for David William Fahy*

-and-

Jonathan Ruckdeschel (admitted *pro hac vice*)
THE RUCKDESCHEL LAW FIRM LLC
8357 Main Street
Ellicott City, MD 21043
Telephone:  410-750-7825
Facsimile: 443-583-0430

*Counsel for David Heinzmann*

-and-

Beth Gori
Gori Julian & Associates, P.C.
156 North Main Street
Edwardsville, IL 62025
Telephone: (618) 659-9833
Facsimile: (618) 659-9834

*Counsel for John H. Jones*