# **EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF KRISTOPHER E. MOLDOVAN IN SUPPORT
OF CONFIRMATION OF THE THIRD AMENDED PLAN OF REORGANIZATION**

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| **I.** | **EFH Properties Background.** | **4** |
| **II.** | **The 2009 TCEH Letter of Credit Draw.** | **5** |
| **III.** | **EFH Properties Did Not File For Bankruptcy.** | **8** |
| **IV.** | **EFH Properties Cash Flow Considerations.** | **8** |
| | A. Energy Plaza Subtenants. | 8 |
| | B. Energy Plaza Costs. | 10 |
| **V.** | **EFH Properties' Financial Outlook is Poor.** | **12** |

Pursuant to 28 U.S.C. § 1746, I, Kristopher E. Moldovan, hereby declare as follows under penalty of perjury:

1. I make this Declaration in support of *Energy Future Holdings Corp., et al.* for confirmation of the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9199-1] (the "Plan").[2]

2. I am the Assistant Treasurer of every Debtor other than Energy Future Holdings Corp. ("EFH Corp."). I am also the Assistant Treasurer of EFH Properties Company ("EFH Properties"), a non-Debtor.

3. The Plan contemplates the transfer of all of EFH Corp.'s equity interests in EFH Properties to Reorganized TCEH (the "EFH Properties Equity Transfer"), with all of the cash held by EFH Properties immediately prior to such transfer (net of the amount, if any, required to be paid by EFH Properties to the Environmental Protection Agency under the terms of a proposed settlement) being distributed or otherwise transferred to EFH Corp. or a subsidiary or other affiliate designated by EFH Corp., and all intercompany claims held by the Debtors against EFH Properties being released. These contemplated transfers are primarily being effectuated through the Separation Agreement and the Plan. I understand that the EFH Indenture Trustee has objected to this aspect of the Plan and argued that EFH Corp. should be compensated for the EFH Properties Equity Transfer. In this declaration, I provide background on EFH Properties, its financial history, and certain factors that impact its projected cash flow. I understand that the *Declaration of Paul Keglevic in Support of Confirmation of the Third Amended Plan of Reorganization* discusses the factors that management and EFH Corp.'s Board of Directors considered in approving the EFH Properties Equity Transfer.

---

[2] Capitalized terms used but not defined herein have the meanings assigned to them in the Plan.

3

**I.     EFH Properties Background.**

4.    EFH Properties, a direct subsidiary of EFH Corp., does not own the Company's headquarters building, Energy Plaza. Rather, EFH Properties leases the entire Energy Plaza building pursuant to a Lease Agreement dated as of February 14, 2002 (as amended, the "Lease") and subleases a portion of the space to the Company. The Lease was executed in connection with a 2002 leveraged lease transaction, which included the following parties, among others: TXU Properties Company (now EFH Properties), as the lessee; an affiliate of Zurich Structured Finance, Inc., as the owner-participant of the lessor (the "Owner-Lessor"), and The Prudential Insurance Company of America, as one of the original noteholders (the "Noteholder").[3] The Noteholder is currently the sole remaining noteholder.

5.    The Owner-Lessor purchased the Energy Plaza building primarily with the proceeds of notes funded by the original noteholders, including the Noteholder (collectively, the "Original Noteholders"), with such notes being secured by the Lease and the Owner-Lessor's interest in the Lease.[4] As described herein, the Lease imposes obligations on EFH Properties to make base rent payments to the Owner-Lessor—which has matching payment obligations to the Noteholder—as well as supplemental rent payments. The current terms of the Lease are also the product of a series of historical transactions involving EFH Corp., TCEH, and EFH Properties, as detailed *infra*. These transactions factored into the decision not to file EFH Properties as a Debtor in the Company's chapter 11 cases.

---

[3]    *See* DX574 Nov. 2, 2004 Letter from Zurich Global Investment Advisors to TXU re Lease Dated Feb. 14, 2002 [EFH06365193 at EFH06365280-81]; *see also* DX579 June 2007 First Amendment to Surety Bond [EFH06365429]; DX578 June 1, 2007 First Amendment to Indenture and Servicing Agreement and to Secured Notes [EFH06365416 at EFH06365421]; DX580 Feb. 14, 2002 Indenture and Servicing Agreement [EFH06365433 at EFH06365588]; DX582 Feb. 14, 2002 ZSF/Dallas Tower Trust Senior Secured Notes due Feb. 14, 2014 [EFH06365603].

[4]    *See id.*

4

## II. The 2009 TCEH Letter of Credit Draw.

6. At the time of execution of the Lease, TXU Corp. (now EFH Corp.) provided a guarantee for all of EFH Properties' obligations under the Lease and the related documents (collectively, the "<u>Lease Documents</u>").[5] However, following the filing later in 2002 by TXU Europe Limited, a subsidiary of EFH Corp., of a petition for administration under the laws of England and Wales, TXU Energy Company LLC (now TCEH) provided a second guarantee of EFH Properties' obligations under the Lease Documents in order to induce the Original Noteholders to waive the Event of Default caused by such filing.[6] Then, following the announcement of the Company's 2007 LBO, TCEH's credit ratings were downgraded such that it no longer complied with the Acceptable Guarantor requirement as set forth in the Lease Documents.[7]

7. The Lease Documents required either a new guarantee from an investment grade company or a Qualified Letter of Credit from an Acceptable Bank, each as defined in the Lease Documents.[8] In June 2007, the parties revised certain of the Lease Documents, and, in exchange for the release of the guarantees from TCEH and EFH Corp., TCEH provided a letter of credit

---

[5] *See* DX574 Nov. 2, 2004 Letter from Zurich Global Investment Advisors to TXU re Lease Dated February 14, 2002 [EFH06365193 at EFH06365287-88]; DX494 Feb. 14, 2002 Energy Plaza Lease - Parent Guaranty Agreement [EFH06364057].

[6] *See* DX493 Nov. 19, 2002 Energy Plaza Lease - Additional Guaranty Agreement [EFH06364019].

[7] *See* DX512 Mar. 8, 2007 Notice of Ratings Decline [EFH06364212]; *see also* DX515 Feb. 23, 2007 Request for Release of Guarantor [EFH06364218].

[8] *See* DX494 Feb. 14, 2002 Energy Plaza Lease - Parent Guaranty Agreement [EFH06364057 at EFH06364067-70]; DX574 Nov. 2, 2004 Letter from Zurich Global Investment Advisors to TXU re Lease Dated Feb. 14, 2002 [EFH06365193 at EFH06365229].

from JP Morgan which secured the payment obligations under the Lease (the "TCEH Letter of Credit").[9]

8.  In 2009, JP Morgan, which had resigned as a letter of credit issuer under TCEH's credit facility, delivered a notice of non-renewal to the beneficiary of the TCEH Letter of Credit. TCEH then attempted unsuccessfully to find an Acceptable Bank to issue a replacement letter of credit. In May 2009, EFH Properties sought to have the Owner-Lessor accept a new letter of credit directly from Citibank, N.A., and sought to renegotiate the Lease Documents to accommodate that Citibank, N.A. did not at that time meet the requirements of an Acceptable Bank.[10] However, the parties could not reach a resolution and in May 2009 the beneficiary drew on the TCEH Letter of Credit for the full amount of remaining undiscounted base rent obligations, plus $5 million—approximately $115 million in total.[11]

9.  When the TCEH Letter of Credit was drawn, intercompany payables and receivables were created on the general ledger from EFH Corp. to TCEH in the amount of $115 million (the "TCEH Receivable") and from EFH Properties to EFH Corp. in the amount of $115 million (the "EFH Corp. Receivable").[12] No formal loan agreements or notes were executed memorializing these payables and receivables at the time of their creation—they were solely

---

[9] See DX514 May 31, 2007 Request for Issuance of Letter of Credit [EFH06364215]; DX491 June 1, 2007 Energy Plaza Lease - Master Letter Agreement [EFH04753643]; DX578 June 1, 2007 First Amendment to Indenture and Servicing Agreement and to Secured Notes [EFH06365416]; DX579 June 1, 2007 First Amendment to Surety Bond [EFH06365429].

[10] See DX575 Jan. 29, 2009 Letter from Horton to EFH Properties Company re Energy Plaza Lease Pass-through test [EFH06365403]; DX528 May 2009 Lease Agreement (Unexecuted) [EFH06364636]; DX530 May 2009 Second Amendment to Lease Agreement (Unexecuted) [EFH06364650].

[11] See DX519 EP Lease LOC Draw Transactions Excel [EFH06364227]; DX572 EP Lease Note on LOC Excel [EFH06365021 at "Email2" Tab]; DX581 May 12, 2009 Perkins Email to Trala re LOC TPTS-333459 - Wachovia [EFH06365601].

[12] See DX519 EP Lease LOC Draw Transactions Excel [EFH06364227]; DX572 EP Lease Note on LOC Excel [EFH06365021]; DX356, Apr. 30, 2016 EFH Properties Balance Sheet [EFH06360659].

6

booked as intercompany accounting entries. The TCEH Receivable was subsequently incorporated into the SG&A Note between EFH Corp. and TCEH, and then ultimately paid in full between 2010 and 2012. However, the $115 million EFH Corp. Receivable has remained outstanding, and has accrued interest at a rate of LIBOR plus 500 bps since May 2009. EFH Properties has never made a payment to reduce the EFH Corp. Receivable. The EFH Corp. Receivable currently totals approximately $158 million.[13]

10. EFH Properties' rent obligations include base rent and supplemental rent. As a result of the draw on the TCEH Letter of Credit, EFH Properties no longer pays base rent—it has been prepaid in full. Instead, funds are drawn on a noteholder escrow account maintained at Wells Fargo, the servicer of the outstanding debt, which escrow account was funded by the draw on the TCEH Letter of Credit.[14] EFH Properties has disclaimed any interest in the escrow accounts that hold the proceeds of the TCEH Letter of Credit draw.[15]

11. EFH Properties does continue to pay supplemental rent under the terms of the Lease Documents, including certain fees and costs associated with maintenance of the escrow accounts, as well as all operating and capital expenditures related to running and maintaining the building and all costs and expenses incurred by the Owner-Lessor, among others, with respect to the Lease.[16]

---

[13] *See* DX356, Apr. 30, 2016 EFH Properties Balance Sheet [EFH06360659].

[14] *See, e.g.* DX583 Aug. 19, 2009 Letter from Wells Fargo to EFH Properties Company re Letter Agreement dated June 1, 2007 [EFH06365621]; DX576 Feb. 14, 2012 - Feb. 16, 2016 Letters from Wells Fargo to EFH Properties Company re Semiannual Payments [EFH06365406]; DX508 Form of Notice Letter to Energy Future Holdings re Lease Payments [EFH06364189].

[15] *See, e.g.* DX491 June 1, 2007 Master Letter Agreement, [EFH04753643 at EFH04753649], Section 4(b)(iii)(A) ("The Lessee shall not have any interest whatsoever in any funds from time to time in the Secured Note Payment Account or the LOC Proceeds Account.").

[16] *See* DX574 Nov. 2, 2004 Letter from Zurich Global Investment Advisors to TXU re Lease Dated February 14, 2002 at §§ 3.2, 8.11 [EFH06365193 at EFH06365209, EFH06365226].

### III. EFH Properties Did Not File For Bankruptcy.

12. EFH Properties and its advisors extensively considered the benefits and drawbacks of filing EFH Properties for chapter 11 in April 2014 and again in 2015.[17] EFH Properties and its advisors evaluated three primary options: (1) file EFH Properties for chapter 11 and seek to protect the segregated cash as EFH Properties evaluated its in-court restructuring alternatives with respect to the Lease; (2) file EFH Properties for chapter 11 and seek to reject the Lease, which would potentially (a) allow EFH Properties to recover the segregated cash and (b) require EFH Properties to pay the Owner-Lessor damages associated with the rejection; or (3) do not file for chapter 11 and continue negotiations to restructure the Lease with the Owner-Lessor and Noteholder.

13. Ultimately EFH Properties determined not to file for bankruptcy. Key factors in that decision included that EFH Properties—and its subtenants—would have to vacate Energy Plaza within months of a potential filing; the substantial uncertainty regarding EFH Properties' ability to recover the segregated cash in connection with a chapter 11 filing; and potentially significant rejection damages if EFH Properties filed for bankruptcy and determined to reject the Lease.[18]

### IV. EFH Properties Cash Flow Considerations.

#### A. Energy Plaza Subtenants.

14. EFH Properties' cash flow primarily consists of rent payments from its subtenants, less expenses to operate and maintain the building (i.e., utilities, security,

---

[17] *See, e.g.* DX553 Aug. 31, 2015 EFH Properties Company - Next Step Considerations Presentation [EFH06364854]; DX555 Feb. 9, 2014 Project Olympus - Energy Plaza Lease Considerations Presentation [EFH06364866]; DX549 Dec. 2014 EFH Properties Filing Considerations Presentation [EFH06364780]; DX365 Mar. 2015 Energy Plaza Lease Assumption Considerations Presentation [EFH06364733].

[18] *See id.*

maintenance, janitorial, and property taxes). Due to the draw on the TCEH Letter of Credit previously discussed, the base rent obligations owed on account of Energy Plaza do not have a cash flow impact on EFH Properties, but supplemental rent obligations do. Currently, EFH Properties generates approximately $600,000 positive cash flow per month, but as discussed below, this amount is expected to decline in future months.

15. EFH Corporate Services Company ("EFH Corporate Services"), the Federal Deposit Insurance Corporation (the "FDIC"), and Oncor Electric Delivery Company LLC ("Oncor") are the significant subtenants at Energy Plaza, with Luminant Generation Company LLC ("Luminant") being a sub-subtenant of Oncor. As illustrated below, EFH Corporate Services, the FDIC, and Oncor make rent payments to EFH Properties, which serves as the sublessor to the subtenants (Luminant makes rent payments to Oncor, as opposed to directly making payments to EFH Properties):[19]

| Lease | Lessor | Term | Rent Payments | Other | Annual Rent Payment |
|---|---|---|---|---|---|
| EFH Properties Master Lease | Zurich | 2/14/22 | Semi-annually (Feb. and Aug.) | Base rent payments are satisfied from the Wells Fargo noteholder account | $6.92mm |
| FDIC Sublease | EFH Properties | 11/30/17 | Monthly | FDIC option to extend to Oct. 2021 (1 year advance notice) | $8.2mm (subject to declines, as described herein) |
| Oncor Sublease | EFH Properties | 3/31/17 | Monthly | | $3.4mm |
| EFH Corporate Services | EFH Properties | 2004 (expired) | Monthly | Month-to-month tenancy | $6.3mm |
| Luminant Sub-sublease | Oncor | 3/31/17 | Monthly | | $1.9mm |

---

[19] See DX048 July 27, 2016 Board Presentation [EFH06365761 at EFH06365783]; DX385 Sept. 2015 2016-22 LRP Review - EFH Board [EFH06365622]; DX457 Sept. 6, 2011 Sub-Sublease between Oncor and Luminant [EFH01614773]; *see also* DX057 July 22, 2016 Board Presentation [EFH06365720 at EFH06365737]. I helped prepare both the July 22, 2016 and July 27, 2016 Board Presentations, and DX048 and DX057, respectively, are true and accurate copies thereof. The $6.92 million Annual Rent Payment reflected for the EFH Properties Master Lease represents base rent only.

9

16. These sublease payments help EFH Properties fulfil its substantial obligations under the Lease to maintain and operate the building, which it does without any reimbursement from the Owner-Lessor.

### B. Energy Plaza Costs.

17. EFH Properties' costs to operate Energy Plaza include maintenance, janitorial, utilities, security, and property tax expenses (all of which are payable by EFH Properties and none of which are payable by the Owner-Lessor).[20] In evaluating the transfer of EFH Properties to Reorganized TCEH, the Company's management and Joint Board of Directors thus considered the potential for material changes in EFH Properties' projected revenue streams as well as material changes in its projected operating and capital expenses.[21]

18. The Facilities Group of EFH Corporate Services is responsible for day-to-day management of Energy Plaza, including the retention and oversight of an outside property management company, while the Company's management and Board of Directors ultimately make planning decisions. In addition, EFH Properties employs Jones Lang LaSalle to advertise to and recruit subtenants. In general terms, the Debtors are in the power business—they do not want to be in the landlord business. Given the costs and responsibilities associated with operating and maintaining Energy Plaza, the Debtors have engaged Jones Lang LaSalle on multiple occasions to evaluate alternative space in an effort to shed costs associated with EFH Properties.

19. For example, in 2014 and early 2015, I worked with our Facilities Group and Jones Lang LaSalle to evaluate a potential move out of Energy Plaza. During that process, I was

---

[20] *See* DX577 May 2014 - June 2016 EFH Properties Bank Activity Reports [EFH06365415].

[21] *See* DX048 July 27, 2016 Board Presentation [EFH06365761 at EFH06365784].

made aware of the challenges associated with subletting the Energy Plaza square footage that would potentially be vacated by EFH Corporate Services and Luminant. In addition, and as part of that evaluation, the Company projected move costs between $16 and $24 million.[22]

20. While EFH Properties employs Jones Lang LaSalle to attract tenants and fill vacancies, the impending expiration of the Lease has and will likely continue to hinder their efforts to fill space. There are less than six (6) years remaining on the life of the Lease. As a result, EFH Properties can only offer a sublease for that amount of time. It is my understanding that large corporate tenants typically look for longer term leasing opportunities given the costs to renovate and remodel. This problem will likely only get worse as the remaining life of the Lease decreases between now and 2022. In addition, Energy Plaza is an unconventional shape—it is a triangular building.[23]

21. Further, it is my general understanding that downtown Dallas has a high rate of corporate vacancy: there are currently four (4) entirely vacant, unsubleased floors at Energy Plaza; and, as part of the evaluation in 2014 and early 2015 of downtown properties that could house EFH Corporate Services and Luminant, Jones Lang LaSalle informed us that at least two large suitable buildings in downtown Dallas were at least 50% unoccupied, but had been unable to find tenants.[24]

22. As part of our evaluation of strategic alternatives for EFH Properties in 2014 and early 2015, EFH Properties approached the Owner-Lessor to attempt to restructure the Lease

---

[22] *See* DX464 Aug. 11, 2014 Texas Competitive Electric Holdings Cost Comparison Analysis, Jones Lang LaSalle [EFH05620329].

[23] *See* DX574 Nov. 2, 2004 Letter from Zurich Global Investment Advisors to TXU re Lease Dated February 14, 2002 [EFH06365193 at EFH06365365-EFH06365402].

[24] *See* DX464 Aug. 11, 2014 Texas Competitive Electric Holdings Cost Comparison Analysis, Jones Lang LaSalle [EFH05620329].

Documents to reflect a more traditional landlord-tenant relationship in which: (1) EFH Properties would assign all of its subleases to the Owner-Lessor; (2) EFH Properties would no longer be responsible for the costs associated with operating, maintaining, and subleasing Energy Plaza; (3) EFH Properties would enter into a new 10-12 year lease for the space that EFH Corporate Services and Luminant occupied at a renegotiated rent; and (4) the Owner-Lessor would be free to negotiate with the FDIC and the other subtenants for renewals beyond 2022 and otherwise rent the unoccupied space in Energy Plaza and retain 100% of rental income. The Owner-Lessor declined to substantively engage on this proposal.

23. I understand that every CEO of the Company since 2006 has sought to find alternative office space.

### V.     EFH Properties' Financial Outlook is Poor.

24. EFH Properties' assets primarily include the prepaid portion of the Lease, cash on hand, and leasehold improvements (which will revert to the Owner-Lessor in 2022).[25] Liabilities primarily include the $158 million EFH Corp. Receivable, as well as an additional payable of approximately $74 million from EFH Properties to EFH Corp, which is a prepetition money pool advance listed on the balance sheet as subject to compromise.[26]

25. EFH Properties' cash flows are expected to decrease in the near future.[27] It is anticipated that sublease revenues will decrease over the next several years due to: (a) the FDIC's indications that it will reduce its presence in Energy Plaza and (b) the expiration of Oncor's sublease (and, by extension, the Luminant sub-sublease).

---

[25] *See* DX356 Apr. 30, 2016 EFH Properties Balance Sheet [EFH06360659].

[26] *See id.* at EFH06360660.

[27] *See* DX048 July 27, 2016 Board Presentation [EFH06365761 at EFH06365784]; DX385 Sept. 2015 2016-22 LRP Review - EFH Board [EFH06365622].

26. During the financial crisis of 2007 and 2008, the FDIC increased the number of floors under lease at Energy Plaza as a result of their growing demand and workforce. Recently, however, the FDIC has signalled that they are unlikely to renew the 21 floors under their sublease. Instead, due to their contracting workforce, they have expressed preliminary interest in renewing only 13 to 14 of the 21 floors under lease. In addition, through our search for replacement space in late 2014 and early 2015, I understand that market rent as of that time was approximately $15 per square foot in downtown Dallas.[28] The FDIC is currently paying $16.65 to $16.90 per square foot pursuant to its sublease, depending on the floor.

27. Further, Oncor's sublease expires in March 2017. Oncor does not actually occupy any of its subleased space. Instead, Oncor sub-subleases its subleased space to Luminant at a significant loss—approximately $1.1 million every year.[29] As a result, Oncor will not be renewing its sublease upon expiration in March 2017.

28. These reductions in revenue will not, however, significantly reduce expenses at Energy Plaza, the majority of which are overhead expenses. As further detailed in the *Declaration of Paul Keglevic in Support of Confirmation of the Third Amended Plan of Reorganization*, EFH Properties projects that it will be approximately net zero cash flow from 2018 onward, excluding the potential return of an approximate $5 million deposit being held in an escrow account at Wells Fargo. This cash flow neutral projection does not assume costs associated with unanticipated capital expenditures that may occur before expiration of the Lease, such as the cost to replace a failed cooling tower or one or more chillers, the cost to replace a

---

[28] *See* DX464 Aug. 11, 2014 Texas Competitive Electric Holdings Cost Comparison Analysis, Jones Lang LaSalle [EFH05620329].

[29] *See* DX048 July 27, 2016 Board Presentation, [EFH06365761 at EFH06365783]. The Luminant to Oncor sub-sublease rent reflected in the chart in paragraph 15 reflects base rent only—and including all other expenses totals $2.3 million.

13

roof, or the cost of other repairs to the HVAC system, lobby escalator or elevators, sidewalk, parking garage, or other building necessities, any one of which could exacerbate the high costs associated with operating and maintaining the building.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Dated:  August 13, 2016

*/s/  Kristopher E. Moldovan*
Name:  Kristopher E. Moldovan

Title:  Assistant Treasurer

Company: EFH Properties Company
