### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| Debtors.[1] | (Jointly Administered) |
| | Re: Case Nos. 14-10992, 14-10990, 14-11039, and 14-11012 |

**POST-HEARING BRIEF IN SUPPORT OF MOTION OF SHIRLEY FENICLE, WILLIAM FAHY, JOHN H. JONES, AND DAVID HEINZMANN TO DISMISS CHAPTER 11 PETITIONS OF ASBESTOS DEBTORS EECI, INC., EEC HOLDINGS, INC., LSGT SACROC INC., AND LSGT GAS CO. LLC <u>PURSUANT TO 11 U.S.C. § 1112(B)</u>**

*CONFIDENTIAL—FILED UNDER TEMPORARY SEAL*
**SUBJECT TO ENERGY FUTURE HOLDINGS
PROTECTIVE ORDER**

**[REDACTED]**

---

[1]      The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these Chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................... iii

I.  The Debtors have not demonstrated good faith. ...................................................................4

    A.  The Asbestos Debtors were not in immediate financial difficulty. ....................................7

    B.  The Debtors have not demonstrated that the Asbestos Debtors had a valid
        reorganizational purpose. ...............................................................................................10

        1.  The desire to take advantage of the automatic stay does not justify filing for
            Chapter 11 protection. ............................................................................................10

        2.  EECI could have participated in any resolution of potential deconsolidation
            tax issues outside of bankruptcy. .............................................................................11

        3.  An asserted desire to have the Asbestos Debtors' intercompany claim against
            EFH Corp. reinstated was not a valid reorganizational purpose. ...............................12

II.  The equitable doctrine of laches does not apply. ...................................................................16

Conclusion ......................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 15375 Mem'l Corp. v. Bepco, L.P.*,
589 F.3d 605 (3d Cir. 2009)................................................................................. *passim*

*A.H. Robins Co. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ............................................................................15

*In re Celotex*,
128 B.R. 478 (Bankr. M.D. Fla. 1991) ...............................................................9

*In re Church St. Health Mgmt., LLC*,
No. 12-01573 (Bankr. M.D. Tenn. May 21, 2012).................................................9

*In re Downey Fin. Corp.*,
428 B.R. 595 (Bankr. D. Del. 2010) ...................................................................9

*In re EFH Corp.*,
522 B.R. 520 (Bankr. D. Del. 2015) ..................................................................16

*In re Energy Future Holdings Corp.*,
No. 16-1351, 2016 WL 6803710 (3d Cir. Nov. 17, 2016) ...............................16, 17

*In re Farley, Inc.*,
146 B.R. 748 (Bankr. N.D. Ill. 1992) ...................................................................6

*Flintkote Co. v. Aviva P.L.C.*,
No. 13-103-LPS, 2015 WL 1405922 (3d Cir. Mar. 25, 2015) .................................9

*In re Grace Indus., Inc.*,
341 B.R. 399 (Bankr. E.D.N.Y. 2006), *aff'd as modified sub nom. Admiral*
*Ins. Co. v. Grace Indus., Inc.*, 409 B.R. 275 (E.D.N.Y. 2009) ..................................9

*In re Integrated Telecom Express, Inc.*,
384 F.3d 108 (3d Cir. 2004)....................................................................1, 2, 3, 16

*In re JER/Jameson Mezz Borrower II, LLC*,
461 B.R. 293 (Bankr. D. Del. 2011) .....................................................................4

*In re Liberate Techs*.,
314 B.R. 206 (Bankr. N.D. Cal. 2004) ...........................................................11, 15

*In re Mitchell*,
No. 06-13250-NVA, 2012 WL 5988841 (Bankr. D. Md. Nov. 29, 2012) .................9

*In re Mushroom Transp. Co., Inc.*,
    382 F.3d 325 (3d Cir. 2004).................................................................................................17

*In re SGL Carbon Corp.*,
    200 F.3d 154 (3d Cir. 1999).........................................................................................1, 2, 3, 7

*In re Specialty Prods. Holding Corp.*,
    No. 10-11779-JKF, 2013 WL 2177694 (Bankr. D. Del. May 20, 2013)................................14

**Statutes**

11 U.S.C. § 524(g) ...........................................................................................................6, 14

28 U.S.C. § 157(b)(5) ............................................................................................................6

28 U.S.C. § 1411(a) ...............................................................................................................6

**Other Authorities**

Richard B. Sobol, Bending the Law: The Story of the Dalkon Shield Bankruptcy
    (Univ. Chicago Press 1991) ...............................................................................................15

The law in the Third Circuit is clear.  The Debtors bear the burden of demonstrating that the Asbestos Debtors' Chapter 11 petitions were filed in good faith.  *See In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 618 (3d Cir. 2009) ("The burden is on the bankruptcy petitioner to establish [good faith]." (internal citation omitted)).  In order to meet that burden, the Debtors must demonstrate, first, that the Asbestos Debtors were in "immediate financial difficulty."  *In re SGL Carbon Corp.*, 200 F.3d 154, 163 (3d Cir. 1999); *see also In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 121 (3d Cir. 2004) (holding that debtor must demonstrate it was in "financial distress").  In addition to demonstrating immediate financial difficulty, the Debtors must demonstrate that the Asbestos Debtors' Chapter 11 petitions had a "valid reorganizational purpose."  *SGL Carbon*, 200 F.3d at 163.  As the Asbestos Debtors have "no going concern value to preserve," the Debtors must show that the petitions were filed to maximize the value of the Asbestos Debtors' estates available for creditors, by preserving "some value that would otherwise be lost . . . outside of bankruptcy."  *Integrated Telecom*, 384 F.3d at 120.

There is no basis for the suggestion by Debtors' counsel that this Court should defer to the business judgment of the boards of the Asbestos Debtors in determining whether there was a valid reorganizational purpose.  *See* Hr'g Tr. 16:9-11 ("Mr. Horton and Mr. Moldovan will ultimately testify that in their business judgment, they needed to commence the Chapter 11 cases.").  The determination of whether there is a valid reorganizational purpose is not left to the business judgment of the debtor.  Nor is it a matter of subjective good intent.  Rather, while "the subjective intent of the debtor may play a role in [the] . . . determination of good faith," the inquiry is "based more on objective analysis of whether the debtor has sought to step outside the

'equitable limitations' of Chapter 11 than the subjective intent of the debtor." *15375 Mem'l*, 589

F.3d at 618 n.8.

> As the Third Circuit has instructed:
>
> The term 'good faith' is somewhat misleading.  Though it suggests that the debtor's subjective intent is determinative, this is not the case.  Instead, the 'good faith' filing requirement encompasses several, distinct equitable limitations that courts have placed on Chapter 11 filings.  Courts have implied such limitations to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws.

*Id.* (quoting *SGL Carbon*, 200 F.3d at 165 (internal citation omitted)).  Ultimately, the

determination of whether the petitions were filed in good faith is a question of law.  *See 15375*

*Mem'l*, 589 F.3d at 616 ("[W]hether the basic and inferred facts of a case support the conclusion

of good faith in the filing of a Chapter 11 bankruptcy petition, *i.e.*, whether the application of law

to fact was proper, is . . . an ultimate fact and . . . is, essentially, a conclusion of law." (internal

citation omitted)).

The Debtors contend that "the relevant question is not whether the . . . Debtors filed in

good faith, but whether EFH as a whole did." Response[2] ¶ 37, at 16.  According to the Debtors,

when a bankruptcy involves a corporate family filing, the good faith of the individual debtors

cannot be considered, and the parent corporation should be given *carte blanche* to determine

which subsidiaries may file for bankruptcy.  *Id.* ¶¶ 39-40, at 17-18.  The Debtors urge this Court

to disregard the Third Circuit's decisions in *SGL Carbon* and *Integrated Telecom* on the ground

that those cases involved solvent debtors, and "were not corporate family filing cases."[3]  But

---

[2]      Opposition of Energy Future Holdings Corp., *et al.*, to the Motion of Shirley Fenicle, David William Fahy, John H. Jones, and David Heinzmann to Dismiss Chapter 11 Petitions of Asbestos Debtors EECI, Inc., EEC Holdings, Inc., LSGT SACROC, Inc., and LSGT Gas Co. LLC Pursuant to 11 U.S.C. § 1112(b) ("**Response**"), Nov. 23, 2016, D.I. 10249.

[3]      *Id.* ¶ 58, at 24.

nothing in those cases suggests that they are confined to their facts, and have no application when a debtor's parent has also filed for Chapter 11 protection. The Debtors would have this Court also ignore the Third Circuit's decision in *15375 Memorial* because the filings in that case were made to protect the debtors' parent from liability. *Id.* ¶¶ 59-60, at 24. But just as the filings in *15375 Memorial* were made for the benefit of the parent rather than the debtors' creditors, so too were the filings in these cases made for the benefit of the Asbestos Debtors' controlling parent, at the expense of their creditors. That is bad faith.

The *SGL Carbon*, *Integrated Telecom,* and *15375 Memorial* decisions are controlling Third Circuit precedent, and set out general principles of law that govern here. The Debtors' novel proposition of law that the bad faith of the Asbestos Debtors should be ignored has no support in Third Circuit precedent and, as Movants have shown elsewhere, is not even supported by the cases on which the Debtors rely.[4]

The Third Circuit's instruction that a good faith analysis must take into account the "totality of facts and circumstances"[5] is not, as the Debtors would have it, an instruction that the Court must consider only the good faith of EFH Corp., and should disregard entirely the question of whether the Asbestos Debtors had a valid reorganizational purpose for their Chapter 11 filings. That the Asbestos Debtors are separate entities from their parent EFH Corp., and that they have their own bankruptcy cases—which have not been substantively consolidated with

---

[4]    *See* Reply in Support of Motion of Shirley Fenicle, William Fahy, John H. Jones, and David Heinzmann to Dismiss Chapter 11 Petitions of Asbestos Debtors EECI, Inc., EEC Holding, Inc., LSGT SACROC Inc., and LSGT Gas Co., LLC Pursuant to 11 U.S.C. § 1112(b) ("**Reply**") at part II, Nov. 29, 2016, D.I. 10274.

[5]    *15375 Mem'l*, 589 F.3d at 618 n.8 (internal citation omitted).

EFH Corp's bankruptcy case—are significant elements of the "totality of facts and circumstances" that cannot be ignored.

Indeed, in *JER/Jameson*, the only case in this Circuit cited by Debtors in support of their assertion that the good faith of the debtor must be ignored when its parent has also filed for bankruptcy, the court clearly considered whether the subsidiary debtor had a valid reorganizational purpose. *See In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293 (Bankr. D. Del. 2011). There, Judge Walrath found that, even considering the corporate family's joint filings "holistically," the debtor's desire to effect a sale was not a legitimate purpose because "the sale process contemplated in the bankruptcy case must be designed to realize some value that would not be available outside of bankruptcy" and there was "no evidence that the bankruptcy case will do that." *Id.* at 303. Thus, the court held, the filing was in bad faith. *Id.*[6]

## I.    THE DEBTORS HAVE NOT DEMONSTRATED GOOD FAITH.

The Debtors' evidence does not demonstrate that the Asbestos Debtors were in immediate financial difficulty. Nor does it demonstrate that there was a valid reorganizational purpose for the Asbestos Debtors' Chapter 11 petitions. Rather, the evidence demonstrates that their controlling parent, EFH Corp., had the Asbestos Debtors file for bankruptcy protection in order to "deal with" their asbestos liabilities—by setting a bar date and seeking to discharge as many claims as possible without compensation—so that EFH Corp. would be more attractive to bidders. That is not a valid reorganizational purpose. The petitions were not filed in good faith, and must be dismissed.

---

[6]    Judge Walrath in *JER / Jameson* also found that, in any event, a plan in that case could never be confirmed because the only creditor would not consent. 461 B.R. at 301-02

███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████    ████████████

███████████████████████████████████████████

████████████

████████████████████████████████████████

███████████████████████████████████████████

████████ Ultimately, however, whether the Asbestos Debtors filed for bankruptcy or not was

up to their controlling parent, EFH Corp.[8] ██████████████████████████████

———————————————

██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████

[8]    As Mr. Horton—who was an officer of EFH Corp.—admitted, if he had not agreed to have the Asbestos Debtors file for bankruptcy, he could be removed from his positions on the boards of those entities:

> Q. When you made the decision that the asbestos debtors would file, you understood that EFH wanted them filed, is that correct?
>
> A. [Mr. Horton] My understanding was that there was a general recommendation from the co-CROs that those entities should—would be filed or should be filed….
>
> Q. And you understood that if you didn't agree that you could possibly be relieved of your duty as a director.  Did you understand that?
>
> A. [Mr. Horton] I'm sure that was – yeah.  I understood that.

*(footnote continued)*

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████[9]

One way in which EFH Corp. could have "dealt with" the Asbestos Debtors' asbestos liabilities once the Asbestos Debtors were in bankruptcy, was to seek a 524(g) channeling injunction, under which all of the current and future asbestos claims would be channeled to a trust, which would be funded by contributions from the Asbestos Debtors (and EFH Corp. or other entities that sought to be protected by the injunction), in exchange for having such claims against them permanently enjoined. *See* 11 U.S.C. § 524(g). [10] There is no evidence however, that the Debtors even contemplated establishing such a trust. Thus, it is clear that, from the outset, the Debtors intended to have the Asbestos Debtors "deal with" their asbestos liabilities by establishing a bar date and discharging as many claims as possible, in order to make the Asbestos Debtors' controlling parent more attractive to potential bidders.

---

Hr'g Tr. 82:14-19; 83:8-11.

[9] ████████████████████████████████████████████████████
the Memorandum of Law in Support of Motion of Shirley Fenicle, David William Fahy, John H. Jones, and David Heinzmann to Dismiss Chapter 11 Petitions of Asbestos Debtors EECI, Inc., EEC Holdings, Inc., LSGT SACROC, Inc., and LSGT Gas Co. LLC Pursuant to 11 U.S.C. § 1112(b), Nov. 8, 2016, D.I. 10075.

[10]    It is not, as a practical matter, possible to have all asbestos claims liquidated by allowance proceedings, which would have to take place in the district court, where asbestos claimants would have jury trial rights. *See* 28 U.S.C. §§ 157(b)(5), 1411(a); *see also, e.g.*, *In re Farley, Inc.*, 146 B.R. 748, 752 (Bankr. N.D. Ill. 1992) (The bankruptcy court "has no authority to determine finally a personal injury claim."). Such allowance proceedings would take years, if not decades, as additional claims would accrue each year.

## A.    The Asbestos Debtors were not in immediate financial difficulty.

The Debtors assert that the Asbestos Debtors were in financial distress because there was a possibility that they might face a "value-destructive" tax bill.[11]  But the possibility that, at some point in the future, the Asbestos Debtors might be jointly and severally liable for a deconsolidation tax bill does not demonstrate financial distress at the time they filed their petitions.  *See* Reply at 11-12.  The Asbestos Debtors would be subject to a tax bill only if the deconsolidation tax were actually incurred, and then only if EFH and the TCEH LLCs did not have adequate cash to pay any such tax.  The tax bill would not have been incurred unless there was a taxable sale of TCEH assets, or EFH Corp. made good on its threat to "check the box" and convert TCEH LLC subsidiaries into taxable entities.  That EFH Corp. and the T-Side creditors were both highly motivated to avoid such a tax is demonstrated by the fact that the T-Side Debtors ultimately were spun-off in a tax-free transaction.[12]  And both EFH Corp. and the T-Side creditors were highly motivated to avoid such deconsolidation taxes (which, ultimately, they did), and it appears that the TCEH LLCs had adequate assets to foot the bill themselves.  *See* Reply at 7.  Thus, the potential deconsolidation taxes simply did not present the kind of "immediate financial difficulty" that the Third Circuit has instructed must exist for a Debtor to be eligible to file for Chapter 11 protection.  *SGL Carbon*, 200 F.3d at 163.

The Debtors contend also that they would be rendered insolvent by EFH Corp.'s bankruptcy because they would not have access to cash to fund costs associated with defending

---

[11]    Surreply of Energy Future Holdings Corp., *et al.*, to the Motion of Shirley Fenicle, David William Fahy, John H. Jones, and David Heinzmann to Dismss Chapter 11 Petitions of Asbestos Debtors EECI, Inc., EEC Holdings, Inc., LSGT SACROC, Inc., and LSGT Gas Company LLC Pursuant to 11 U.S.C. Section 1112(b) ("**Sur-Reply**") ¶ 3, at 2, Dec. 4, 2016, D.I. 10304.

[12]    Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code, Aug. 5, 2016, D.I. 9199-1.

and resolving asbestos claims.  Although, throughout these bankruptcy cases, the Debtors have insisted that these bankruptcy cases are "not driven by asbestos liabilities,"[13] they now insist that the Asbestos Debtors were, indeed, driven into bankruptcy by their asbestos liabilities.

Debtors have not demonstrated, however, that EFH Corp. could not have obtained relief from the automatic stay in order to provide the Asbestos Debtors with sufficient cash to deal with such claims during the pendency of EFH Corp's bankruptcy.  The Debtors contend that any request for relief from the automatic stay "would have faced stiff creditor resistance and a material chance of failure," (Sur-Reply ¶ 2), and suggest that relief would not be available because they would not have been able to demonstrate business necessity.  *See, e.g.*, Hr'g Tr. 19:12-16 (Mr. Husick: "There would not have been an ability during the Chapter 11 case to get cash down to continue to fund litigation against general unsecured creditors who are not critical vendors, who are not satisfying the doctrine of necessity in order to continue to keep them out of Chapter 11.").  In these cases, however, the stay was in fact lifted to permit the Debtors to make payments on account of intercompany claims, including those of  the Asbestos Debtors as well as non-debtor affiliates, and to permit the Debtors to pay for claims such as retiree benefits and pre-petition workers' compensation claims.  *See* Reply at 4-5, nn.6-7.  None of these payments, insofar as they were related to the Asbestos Debtors, were justified by business necessity: it is undisputed that the Asbestos Debtors did not have any operating businesses, and were not critical to EFH Corp.'s operations.  *See, e.g.*, Hr'g Tr. 73:3, 7 (Mr. Horton: "These are discontinued ops

---

[13]    Objection of Energy Future Holdings Corp., *et al.*, to the Motion of Charlotte Liberda and Curtis Liberda to Appoint Legal Representative and Joinder of Shirley Fenicle, as Successor-In-Interest to the Estate of George Fenicle, and David William Fahy to the Motion of Charlotte and Curtis Liberda to Appoint Legal Representative ("**Objection to Appt. Legal Rep.**") ¶ 8, Aug. 8, 2015, D.I. 5209; *see also* Debtors' Reply in Support of Bar Date with Respect to Asbestos Claims ("**Debtors' Bar Date Reply**") ¶ 5, Aug. 11, 2014, D.I. 1804.

and not critical to the . . . organization's operations."). Indeed, none of the Debtors on the E-side

have any ongoing operations, (*see* Hr'g Tr. 73:1-9), and the lift-stay with respect to them cannot

be said to have been justified by business necessity.

Relief from the automatic stay can be granted for cause as well as for business necessity.

*See* Reply at 5-6. A determination of whether cause exists depends on an analysis of several

factors, including a balancing of the harm to the debtor's estate if relief is granted against the

harm to the creditor if relief is denied, and the probability of the creditor prevailing on the merits.

*See In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010). Courts considering such

factors regularly have granted relief from the automatic stay to permit the liquidation of asbestos-

related claims.[14] For similar reasons, EFH Corp. or the Asbestos Debtors could have sought to

have the stay lifted to permit EFH Corp. to make minimal payments to the Asbestos Debtors

---

[14]    *See, e.g.*, *In re Celotex*, 128 B.R. 478, 481 n.9 (Bankr. M.D. Fla. 1991) (noting that the court has consistently granted relief from the stay to allow asbestos-related appeals to go forward); *In re Grace Indus., Inc.*, 341 B.R. 399, 403-04 (Bankr. E.D.N.Y. 2006), *aff'd as modified sub nom. Admiral Ins. Co. v. Grace Indus., Inc.*, 409 B.R. 275 (E.D.N.Y. 2009) (in several instances debtors entered into "stipulations with certain personal injury plaintiffs to modify the automatic stay to permit their personal injury actions to go forward, where those plaintiffs agreed to limit their recovery to available insurance."); Agreed Order Granting Motions for Relief from the Automatic Stay with Regard to State Court Litigation, *In re Church St. Health Mgmt., LLC*, No. 12-01573 (Bankr. M.D. Tenn. May 21, 2012) (D.I. 391) (entering an agreed upon order that established a window in which the parties were to execute a settlement agreement resolving certain prepetition personal injury lawsuits, and that in the event that the parties failed to execute an agreement, the stay was to be lifted as to those personal injury claimants; in both instances, plaintiffs agreed to limit their recovery to the proceeds of any applicable insurance policies of the debtors); *In re Mitchell*, No. 06-13250-NVA, 2012 WL 5988841, at *1 (Bankr. D. Md. Nov. 29, 2012) (granting a joint motion by debtors, certain insurers, and certain settling asbestos claimants for relief from the stay for the purpose of implementing a settlement agreement that was to resolve thousands of asbestos claims). *Cf.* 3 Collier on Bankruptcy ¶ 362.07 (16th ed. 2016) ("A party may . . . seek relief from the stay when the party needs to obtain a judgment against the debtor in name only in order to recover from the debtor's insurer."). *See also Flintkote Co. v. Aviva P.L.C.*, No. 13-103-LPS, 2015 WL 1405922 (3d Cir. Mar. 25, 2015) (noting that stay had been lifted by bankruptcy court to permit insurance company to file suit for declaratory relief regarding scope of insurance coverage).

sufficient to pay the legal costs of settling asbestos claims (and seeking claimants' agreement not to collect on their settlements until EFH Corp. emerged from bankruptcy), or entering into tolling agreements with asbestos claimants.    However, Messrs. Horton and Moldovan apparently considered only whether there were grounds to lift the stay for business necessity, and did not consider whether any other cause to lift the stay could be established.  Mr. Horton testified that he understood that it would be difficult to get approval from the Court to lift the stay because, *inter alia*, the Asbestos Debtors were not "a critical vendor, w[ere] not critical to the ongoing businesses of the company."  *See* Hr'g Tr. 90:13-14.  *See also id.* at 127:14-15, 24-25; 128:2 (Mr. Moldovan: "since ECI (sic) was not a critical vendor, was not critical to the ongoing operations of EFH . . . I just thought it would be very difficult for any creditor to allow money to go to . . . this particular unsecured creditor.").

Movants submit that relief from the automatic stay would have been appropriate in these cases, and thus that the Debtors have not demonstrated that they were in immediate financial difficulty.  But even if the Court finds that no relief from the automatic stay would have been possible, and concludes that the Asbestos Debtors were in imminent danger of being overwhelmed by asbestos claims, the Debtors still must demonstrate that the Asbestos Debtors had a valid reorganizational purpose.  This they have failed to do.

**B.**    **The Debtors have not demonstrated that the Asbestos Debtors had a valid reorganizational purpose.**

**1.**    ***The desire to take advantage of the automatic stay does not justify filing for Chapter 11 protection.***

The Debtors have cited the desire to obtain the protection of the automatic stay as a reason that the Asbestos Debtors filed for Chapter 11 protection.  *See* DX091; *see also* Hr'g Tr. 91:22-24 (Q. Did you understand that the automatic stay was one of the reasons for filing for bankruptcy?  A. [Mr. Horton] Yes.").  But the Third Circuit has clearly instructed that the desire

to obtain the protection of the automatic stay "is not *per se* a valid justification for a Chapter 11 filing." *15375 Mem'l*, 589 F.3d at 620.  Rather, the automatic stay is merely "a consequential benefit of an otherwise good faith filing." *Id.*  The "'desire to take advantage of the protections of the Code,' such as the automatic stay of litigation outside of bankruptcy, 'cannot establish *good* faith as a matter of law' given 'the truism that every bankruptcy petition seeks some advantage offered in the Code [and that] any other rule would eviscerate any limitation that the good faith requirement places on Chapter 11 filings.'" *Id.* (citing *Telecom Express*, 384 F.3d at 128).  *See also In re Liberate Techs.*, 314 B.R. 206, 217 (Bankr. N.D. Cal. 2004) ("[The] need for bankruptcy relief is not established by showing that debtor would benefit from the provisions of the Bankruptcy Code, where such benefit is not necessary to protect creditors or prevent liquidation.").

### 2.    *EECI could have participated in any resolution of potential deconsolidation tax issues outside of bankruptcy.*

The Debtors assert that the Asbestos Debtors filed in order to be able to participate in a global resolution of the potential deconsolidation tax issues, and that this process was "clearly unavailable outside of bankruptcy."  Sur-Reply at 10, n.18.  But the Debtors have not demonstrated that they could not have participated in a solution to the potential tax issue outside of bankruptcy.  To the contrary, it was not necessary for the Asbestos Debtors to seek Chapter 11 protection to participate in a resolution of the tax issues, as illustrated by the fact that  non-debtor entities, including EFH Properties, were able to participate in the resolution of the tax issues without filing for bankruptcy.[15]  Indeed, Mr. Horton conceded that, like EFH Properties, the

---

[15]    The Debtors' assertions that there were independent reasons EFH Corp. did not place EFH Properties into bankruptcy are irrelevant.  *See* Sur-Reply at ¶ 15-17. The point is simple: the fact that EFH Properties was not placed in bankruptcy demonstrates that it was not necessary for *(footnote continued)*

Asbestos Debtors did not have to be in bankruptcy to participate in a resolution of those tax issues.  *See* Hr'g Tr. 88:5-8 ("Q.  And it's not necessary for EECI or any other asbestos debtor to file for bankruptcy in order to participate in a resolution of those tax issues, isn't that correct?  A.  [Mr. Horton] I think that's correct.").  Thus, the Asbestos Debtors' asserted desire to participate in a resolution of deconsolidation tax issues was not a valid reorganizational purpose.

> **3.**    ***An asserted desire to have the Asbestos Debtors' intercompany claim against EFH Corp. reinstated was not a valid reorganizational purpose.***

Faced with the present Motion to dismiss the petitions as filed in bad faith, the Debtors now claim an additional reason for having had the Asbestos Debtors file for bankruptcy, which is not reflected in the minutes of the EECI board's April 25, 2014 meeting:  Debtors assert that the Asbestos Debtors had to file chapter 11 in order to have their intercompany claims against their parent EFH Corp. reinstated.  ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

But just as it was not necessary for the Asbestos Debtors to file for bankruptcy protection in order to participate in any resolution of potential tax issues, it was not necessary for the Asbestos Debtors to file in order to have their intercompany claims against EFH Corp. reinstated.[16]  A creditor does not have to file for bankruptcy itself in order to have a claim reinstated.

---

EFH Properties—or the Asbestos Debtors—to be in bankruptcy in order to participate in a resolution to the problem.  In any event, it cannot be said that the Asbestos Debtors had a truly independent voice in the resolution of such issues:  the Asbestos Debtors were wholly-owned by EFH Corp., and their representatives were officers of EFH Corp.

[16]    The Asbestos Debtors are not receiving "a hundred cents on the dollar" for their intercompany claims, as counsel for EFH stated.  Hr'g Tr. 192:13-14.  Those claims would not be paid under the Plan.  Rather, as counsel for EFH acknowledged, the claims would be reinstated *(footnote continued)*

The Asbestos Debtors are creditors of EFH Corp. with respect to the intercompany loans, and, as creditors, they could negotiate with EFH Corp. for reinstatement of their claims. Significantly, even if the Asbestos Debtors had not filed for bankruptcy, EFH Corp. would have an incentive to reinstate those claims in order to avoid having the corporate veil between it and its subsidiaries pierced.  *See* Reply at 17 n.25 (citing cases).  *See 15375 Mem'l*, 589 F. 3d at 623 (rejecting bankruptcy court's reasoning that bankruptcy permitted the debtors to negotiate a settlement of issues with their parents, and noting that the parent acted out of self-interest as they were aware of the risk of veil-piercing and thus had an incentive to cooperate on insurance rights wholly independent of bankruptcy).  And regardless of whether the Asbestos Debtors are in bankruptcy, they are wholly-owned by EFH Corp., and would be wholly-owned by any entity that purchased EFH Corp.  Thus, any purchaser would be equally incentivized to have the claims reinstated to avoid veil piercing.  ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████  Because reinstatement of the Asbestos Debtors' intercompany claims could have been achieved outside of bankruptcy, it is not a valid reorganizational purpose.  *See 15375 Mem'l*, 589 F. 3d at 623.

The Debtors contend, nonetheless, that the intercompany claims could not have been reinstated outside of bankruptcy.  *See, e.g.*, Hr'g Tr. 151:22-25.  According to the Debtors,

---

(*id*.), or passed-through to Reorganized EFH.  Those claims are payables of EFH, and receivables, of the Asbestos Debtors, which are wholly owned by EFH Corp.  Thus, the reinstatement of the claims does not affect the net worth of EFH Corp., and it does not diminish the amount that is available for distribution to other unsecured creditors.

bidders were demanding "certainty" as to the aggregate amount of asbestos liabilities, and the only way to get the "best possible estimate" of those liabilities was to put the Asbestos Debtors into bankruptcy. *See* Hr'g Tr. 187:23-188:10. ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████ If the real purpose for having the Asbestos Debtors file for bankruptcy protection was to achieve certainty in determining the aggregate value of asbestos claims, the Debtors would have sought to establish a 524(g) trust to which such claims could be channeled, and to which the Asbestos Debtors and EFH Corp. would contribute a fixed amount, in exchange for which all current and future asbestos claims would be permanently enjoined against the Reorganized Debtors. *See* 11 U.S.C. § 524(g).

Apparently, however, the Debtors did not consider establishing such a trust. Rather, it is clear that, from the outset, the manner in which the Debtors intended to "deal with" the asbestos liabilities was to establish a bar date and discharge claims. But a bar date cannot be expected to provide greater certainty as to the estimate of aggregate asbestos liability; estimation of asbestos liabilities relies on statistical modelling, risk analysis, epidemiology, and analysis of claiming behavior. *See, e.g.*, *In re Specialty Prods. Holding Corp.*, No. 10-11779-JKF, 2013 WL 2177694, at *5 (Bankr. D. Del. May 20, 2013) (comparing various forecasting methodologies in estimating debtor's asbestos liabilities). Rather than provide greater accuracy, a bar date will tend to create greater uncertainty in the forecast of liability, because, among other things, it will affect claiming behavior.[17] The only manner in which a bar date could provide bidders with any

---

[17]    Indeed, bar dates are notorious for increasing uncertainty in forecasts of mass tort liability. One issue is that the threat of permanent preclusion may have a powerful tendency to *(footnote continued)*

comfort regarding asbestos liabilities would be by facilitating the discharge of claims, especially those of claimants who had not yet fallen ill, thereby tamping down the aggregate liability.  It is clear that the goal of the Asbestos Debtors' bankruptcies was not to restructure their debts, but to establish a bar date and discharge as many claims as possible, in order to make their controlling parent EFH Corp. more attractive to potential bidders.

Filing bankruptcy in order to establish a bar date and discharge claims is not a valid reorganizational purpose.  *See 15375 Mem'l*, 589 F.3d at 622 ("[T]he desire to take advantage of the protections of the Code cannot establish *good* faith . . . so the establishment of a bar date for claims . . . does not evidence good faith.").  And it is not somehow transformed into a valid reorganizational purpose because it is done in an effort to make the debtor's parent company more attractive to potential bidders, regardless of whether the debtor files individually or as part of a corporate group.  That a purchaser would prefer that EFH Corp.'s wholly-owned subsidiaries have fewer asbestos liabilities concerns only how much the Asbestos Debtors can return to their equity holder, EFH Corp., and does not concern whether the Asbestos Debtors can pay their creditors.  *See Liberate*, 314 B.R. at 217 ("Debtor claims that it needs bankruptcy protection to complete a sale because: (i) competing bidders do want the protections of section 363(f); and (ii) outside of bankruptcy Debtor would not be able to seek better offers once it

_____

stimulate the filing of claims that might otherwise never be brought and to accelerate claims that otherwise would not be filed until a later time.  Thus, the overall set of claims that would be filed under a bar date would constitute a different population than the claims an informed analysis would forecast as of the same date if the Debtors were still litigating in the tort system rather than resting under the protection of the automatic stay of bankruptcy.  For example, in the *A.H. Robins* case, a bankruptcy caused by tort claims involving intrauterine contraceptive devices, a bar date stimulated an avalanche of claims.  At the petition date only 5,000 suits were pending against the debtor, and it was then thought that there were "perhaps an equal number not filed." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986).  As it turned out, though, more than 327,000 claims were filed in response to the bar date.  *See* Richard B. Sobol, Bending the Law: The Story of the Dalkon Shield Bankruptcy 98 (Univ. Chicago Press 1991).

signed a contract with OpenTV. . . . These concerns go only to how much Debtor can return to its equity holders, and do not affect whether Debtor can pay its creditors or whether Debtor can sell its assets as a going concern.").  The Asbestos Debtors filed for bankruptcy not to preserve value for their creditors but, rather, to transfer value from creditors to equity, which is "antithetical to the basic purposes of bankruptcy."  *Integrated Telecom*, 384 F.3d at 119.  The Asbestos Debtors' petitions were filed in bad faith and must be dismissed.

## II.    THE EQUITABLE DOCTRINE OF LACHES DOES NOT APPLY.

There is no time limit for filing a motion to dismiss a petition as filed in bad faith.  The Debtors have asserted that the Motion should nonetheless be dismissed pursuant to the equitable doctrine of laches.  Movants have already demonstrated that the Debtors cannot invoke laches because they have unclean hands:  the Debtors successfully opposed the appointment of a legal representative for the absent Unmanifested Asbestos Claimants, [18] and thus, it is the Debtors who bear responsibility for any delay in having the issues presented by the instant Motion brought before the Court.  *See* Reply at part IV.

Movants have also already pointed out that Mr. Jones and Mr. Heinzmann did not receive their mesothelioma diagnoses until after the bar date.  *See* Reply at part IV.  Indeed, Mr. Heinzmann was not diagnosed until July of this year, and did not even know of the bankruptcy until shortly before filing the instant motion.  *Id.*  These two asbestos victims cannot be said to have sat on their rights, and the Debtors cannot demonstrate inexcusable delay.  Throughout

---

[18]    *See* Objection to Appt. Legal Rep.; *see also* Order Denying Motion of Charlotte Liberda and Curtis Liberda to Appoint Legal Representative, Aug. 11, 2015, D.I. 5265.  The E-Side Committee is composed of creditors of Energy Future Holdings Corp.; Energy Future Intermediate Holding Company, LLC; EFIH Finance, Inc.; and EECI.  *See In re Energy Future Holdings Corp.* ("***In re EFH Corp.***"), 522 B.R. 520, 524 n.7 (Bankr. D. Del. 2015).  There was no committee appointed to represent the interests of creditors of Asbestos Debtors LSGT Gas Co. LLC, LSGT SACROC Inc., or EEC Holdings, Inc.

these cases, the Debtors have maintained that Ms. Fenicle and Mr. Fahy do not have standing to assert the rights of Unmanifested Asbestos Claimants who did not file proofs of claim.[19]   Their suggestion now that Ms. Fenicle's and Mr. Fahy's participation in these bankruptcy cases in any way supports an assertion of laches against Messrs. Jones and Heinzmann must be rejected by this Court.

The Court should also reject the Debtors' claims of prejudice.   The Debtors do not complain that they have been disadvantaged in asserting a claimed right or defense.   *See In re Mushroom Transp. Co., Inc.,* 382 F.3d 325, 337 (3d Cir. 2004).   Rather, they complain that they are not able to go forward with bankruptcy cases that should not have been filed in the first place.   *See id.* ("[T]he mere loss of what one would have otherwise kept does not establish prejudice.").   That the dismissal of these cases may permit NextEra to walk away from the deal and demand a termination fee is a problem of the Debtors' own making.   In that regard, it bears noting that the approval of the merger agreement and termination fee is under appeal.   *See* Notice of Appeal, Sept. 30, 2016, D.I. 9719.   In any event, just as the Debtors were able to resolve with NextEra the issue created by the Third Circuit's recent decision regarding the "make-whole" claims,[20] it can be anticipated that any issue created by the dismissal of the Asbestos Debtors case can also be resolved.   As Movants have already stated, the only practical result of dismissal

---

[19]    *See, e.g.*, Debtors' Omnibus Reply to Plan Confirmation Objections ¶ 176, at 78-79, Oct. 31, 2015, D.I. 6817 ("Fenicle and Fahy argue that the Plan does not satisfy due process for unmanifested claimants.  Even if Fenicle and Fahy had standing to raise this objection, the record demonstrates the extensiveness of the asbestos notice plan."); Appellees' Motion to Consolidate Appeals, *Fenicle v. Energy Future Holdings Corp.* at 2, 10, No. 15-cv-1183 (D. Del. Mar. 11, 2016) (D.I. 22) (noting that Ms. Fenicle's and Mr. Fahy's standing was an issue in appeal from confirmation on due process grounds).

[20]    *In re Energy Future Holdings Corp.*, No. 16-1351, 2016 WL 6803710 (3d Cir. Nov. 17, 2016).

would be that claims that would purportedly be discharged by the plan would no longer be discharged. The Debtors and NextEra entered into their agreement fully aware of the objections to the purported discharge of future claims, and fully aware that any estimation of the aggregate value of asbestos claims would have to take into the account the possibility that such claims might not be discharged as a constitutional matter.

## CONCLUSION

For the reasons set out herein, in the Memorandum in Support of the Motion to Dismiss, and in the Reply, Movants respectfully submit that the Court should enter an order dismissing, with prejudice, the cases of the Asbestos Debtors as not filed in good faith, and such other relief as the Court deems appropriate. If the Court grants the requested relief, Movants respectfully request that the Court retain jurisdiction to permit Movants to seek an appropriate award of sanctions.

Dated:  December 9, 2016                           Respectfully submitted:
             Wilmington, Delaware

                                    By:     */s/ Daniel K. Hogan*
                                            Daniel K. Hogan (DE Bar # 2814)
                                            HOGAN MCDANIEL
                                            1311 Delaware Avenue
                                            Wilmington, Delaware  19806
                                            Telephone:  (302) 656-7540
                                            Facsimile: (302) 656-7599
                                            dkhogan@dkhogan.com

                                            *Counsel for Shirley Fenicle, individually and as*
                                            *successor-in-interest to the Estate of George*
                                            *Fenicle, David William Fahy, John H. Jones, and*
                                            *David Heinzmann*

                                            -and-

                                            Leslie M. Kelleher (admitted *pro hac vice*)
                                            Jeanna M. Koski (admitted *pro hac vice*)
                                            CAPLIN & DRYSDALE, CHARTERED

One Thomas Circle, N.W.
Washington, DC 20005
Telephone: (202) 862-5000

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, and David Heinzmann*

-and-

Steven Kazan (admitted *pro hac vice*)
KAZAN MCCLAIN SATTERLEY &
GREENWOOD
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
Telephone: (510) 302-1000
Facsimile: (510) 835-4913

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle*

-and-

Ethan Early (admitted *pro hac vice*)
EARLY LUCARELLI SWEENEY &
MEISENKOTHEN
265 Church Street, 11th Floor
New Haven, CT 06508-1866
Telephone: (203) 777-7799
Facsimile: (203) 785-1671

*Counsel for David William Fahy*

-and-

Jonathan Ruckdeschel (admitted *pro hac vice*)
THE RUCKDESCHEL LAW FIRM LLC
8357 Main Street
Ellicott City, MD 21043
Telephone:  410-750-7825
Facsimile: 443-583-0430

*Counsel for David Heinzmann*

-and-

Beth Gori
Gori Julian & Associates, P.C.
156 North Main Street
Edwardsville, IL 62025
Telephone: (618) 659-9833
Facsimile: (618) 659-9834

*Counsel for John H. Jones*