UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | § | Case No. 14-10979 (CSS) |
| | § | |
| Debtors | § | (Jointly Administered) |
| | § | |

| | | |
|---|---|---|
| | § | |
| Sandow Power Company LLC | § | |
| | § | |
| v. | § | Contested Matter |
| | § | |
| Ranger Excavating LP | § | |

**Ranger Excavating LP's Memorandum in Support of its
Motion for Summary Judgment as to the
Debtors' Objection to Ranger Excavating LP's Claim
Against Sandow Power Company LLC as Set out in Debtors'
Thirty-Seventh Omnibus (Substantive) Objection to Certain
Improperly Asserted Claims Pursuant to Section 502(b)
of the Bankruptcy Code, Bankruptcy Rules 3001, 3003
and 3007, and Local Bankruptcy Rule 3007-1**

## Table of Contents

Table of Authorities ..................................... ii

I.   Preliminary Statement .............................. 2

II.  Nature and Stage of the Proceedings ................ 4

III. Summary Judgment Evidence .......................... 5

IV.  Summary of the Argument ............................ 6

V.   Statement of Undisputed Facts ...................... 7

VI.  Summary Judgment Standard .......................... 12

VII. Burden of Proof on a Claim Objection .............. 13

VIII. Argument ......................................... 13

     A. Ranger's Lien Claim is Valid Under Texas Law .... 13

     B. Ranger's Lien Claim was Timely Filed ............ 17

     C. Ranger is Entitled to Interest and Attorneys
        Fees Under 11 U.S. C. Section 506(b) ............ 18

IX. Scope of the Motion ................................. 19

X.  Conclusion .......................................... 20

## Table of Authorities

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-52 (1986)....................................... 12

*Butner v. United States*, 440 U.S. 48, 54-55 (1979) .......................................... 13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)............................................. 12,13

*Dedmon v. Stewart-Warner Corp.,* 950 F.2d 244, 246-47 (5th Cir. 1992) ........................... 14

*In re Demay International LLC,* 471 B.R. 510, 526 (SD. Tex. 2012) ................................. 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88 (1986) ...................... 12

*Matter of O'Connor*, 153 F.3d 258, 260 (5th Cir. 1998) .......................................... 13

**Texas Cases**

*Big West Oil Co. v. Willborn Bros. Co.,* 836 S.W.2d 800,802 (Tex. Civ. App.-Amarillo 1992) ........... 14

*Cantrell v. Broadnax,* 306 S.W.2d 429, 432 (Tex. Civ. App.-Dallas 1957, no writ) ...................... 14

*CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 246 (Tex. 2002) ...................................... 13

*Diversified Mortg. Investor v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 805 (Tex. 1978). 14,15

*Dubin v. Carrier Corp.,* 731 S.W.2d 651, 653 (Tex. App.-Houston [1st Dist.] 1987, no writ) ......... 14

*First Nat'l Bank in Dallas v. Whirlpool Corp.*, 517 S.W.2d 262, 269 (Tex. 1974) ..................... 13

*First Nat. Bank in Graham v. Sledge,* 653 S.W.2d 283, 285 (Tex. 1983) ............................ 14

*Hayek v. Western Steel Co.,* 478 S.W.2d 786, 795 (Tex. 1972) ...................................... 13

*Strang v. Pray* 35 S.W. 1054, 1055 (Tex. 1896) .... 13

*TGS-NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 439 (Tex. 2011) ................................. 17

**Federal Statutes**

11 U.S.C. Section 362(b)(3) ...................... 7

11 U.S.C. Section 506(b) ........................ 2,3,18

11 U.S.C. Section 546(b) ........................ 2,7

**Texas Constitution and Statutes**

Const. Art. XVI, § 37 ........................... 13

Section 311.005(13), Tex. Code Const. Act ........ 15

Chapter 53 Tex. Prop. Code ...................... 2,3,7,13,16

Section 53.001, Tex. Prop. Code ................. 17

Section 53.001(2), Tex. Prop. Code .............. 14

Section 53.021, Tex. Prop. Code ................. 15

Sections 53.051-53.055, Tex. Prop. Code ......... 16

Section 53.052, Tex. Prop. Code ................. 17

Section 53.053, Tex. Prop. Code ................. 17

Section 53.053(b)(1), Tex. Prop. Code ........... 17

Section 53.053(b)(2), Tex. Prop. Code ........... 17

Section 53.054, Tex. Prop. Code ................. 16

Section 53.156, Tex. Prop. Code ................. 19

**Federal Rules**

Fed. R. Bankr. Pro. 7056 ........................ 12

Fed. R. Bankr. Pro. 9014 ........................ 12

Fed. R. Civ. Pro. 56(c)(a) ....................... 12

Fed. R. Civ. Pro. 56(e) ......................... 12

**Miscellaneous**

*Merriam-Webster.com*, Merriam-Webster, 2016 ....... 17

*OxfordDictionaries.com*, Oxford Dictionaries, 2016    17

Webster's New World Dictionary (1968) ............ 17

## I.  Preliminary Statement

Ranger Excavating LP ("Ranger"), has moved for summary judgment ("Motion") on the Debtors' Objection to Ranger's Claim Against Sandow Power Company LLC ("Sandow") as Set out in Debtors' Thirty-Seventh Omnibus(Substantive)Objection to Certain Improperly Asserted Claims ("Objection"). The Motion is filed after discovery is complete, except for supplementation.  The relief sought in the Motion includes all of Sandow's challenges to the claim, and a claim for attorneys fees under 11 U.S.C. Section 506(b), which attorneys fees would need to be considered separately at a subsequent hearing if the Motion is granted.

1.    Ranger filed a secured proof of claim against Sandow, on file as Claim No. 2613 ("Claim" or "Ranger's Claim"), asserting a secured claim based on a lien claim affidavit filed in accordance with the mechanic's lien provisions of Chapter 53 of the Texas Property Code ("Chapter 53").  Ranger additionally filed a Notice under 11 U.S.C. Section 546(b) Further Perfecting its Secured Claim Against Sandow under Docket number 8132, which is incorporated herein by reference.

2.    Sandow objected to the Claim as not meeting the standards for a Texas constitutional lien claim, while not addressing Ranger's statutory lien claim.  Sandow has not amended its claim objection but has informed Ranger of additional grounds for objection to Ranger's Claim.

3.    The Claim is for retainage withheld from Ranger under the terms of two contracts between Sandow and Ranger for the

2

construction of improvements on real property leased by Sandow ("Contracts"). The final phase of the work under the Contracts was completed post-petition in July 2014.  Ranger's lien claim affidavit was filed shortly before the completion of the last of the work under the Contracts.  The Claim seeks the $292,598.58 in retainage withheld from Ranger under the Contracts, plus interest and attorneys fees allowable under 11 U.S.C. Section 506(b).

4.   To help simplify issues, Ranger and Sandow have agreed to the following stipulations ("Stipulations"):

Ranger's claim against Sandow totals $292,598.58.

Ranger's lien rights are claimed solely under Chapter 53 of the Texas Property Code, and Ranger is not asserting a constitutional lien.

Sandow's objections to Ranger's claim are limited to:

> Ranger's Claim is not secured because its mechanic's lien is invalid (in whole or in part)(including the issue of whether Ranger's work properly supports a mechanic's lien under Texas law);

> Ranger's claim is not secured because its affidavit of lien was not timely filed (including the issue of whether Ranger abandoned the project prior to filing the affidavit); and

If Ranger's Claim is found to be secured, the Claim will be entitled to interest at the rate of 4.5% per annum.

5.   The first of the objections, as expressed from Sandow to Ranger, asserts the type of work performed is not subject to a lien under Texas law.  This assertion is not grounded in fact or law. Ranger constructed a road and a specialized lined disposal pit, which is clearly the subject of a mechanic's lien under Texas law.

6.   The second of the objections is based on timeliness.

Sandow claims that Ranger completed all but the vegetation work in August 2013, but did not complete the vegetation work until July 2014. Hence, Sandow claims Ranger abandoned the work and is simply "gaming" the system by completing the work post petition in order to qualify for a lien. The facts and law do not support this claim. Ranger subcontracted the vegetation work, which Ranger does not have the capacity to perform, and was to begin in October 2013. However, prior to that date, word of a potential bankruptcy filing, which would have included Sandow, hit the press and placed a chilling effect on Ranger's ability to get its existing subcontractor, or any substitute contractor, to perform the vegetation for fear the contractor would not be paid at all or untimely. The vegetation was finally ready to proceed in May 2014 after Ranger provided assurances to its subcontractor that the subcontractor would be paid, regardless of whether Ranger was paid, but the actual bankruptcy did occur on April 29, 2014, which delayed the start of the vegetation until June 2014.

7.   Since Ranger filed its lien claim affidavit and provided the required notice to Sandow in June 2014, Ranger's lien claim affidavit was timely and the Claim is a secured claim.

## II. Nature and Stage of the Proceedings

8.   The proceeding is a challenge by Sandow to Ranger's Claim being a secured claim, not as to the amount of the Claim. Ranger filed a written response to the Objection ("Response"). However, at the time of the filing of the Response, Sandow had not formulated all of its possible objections to the Claim, which are now set out

in the Stipulations.

9.     The time for discovery, agreed on by the parties has passed.  However, Sandow has agreed to supplement its responses to written discovery, propounded by Ranger, on certain issues or stipulate to facts in lieu of that supplementation.  The parties have also conducted 7 depositions on witnesses for both sides.

10.    The Motion seeks relief based on the discovery as it now exists, without the additional supplementation by Sandow.

### III. Summary Judgment Evidence

11.    This Motion is supported by the summary judgment evidence and proof contained in the Appendix which includes the summary of the claim objection (Tab A), stipulations of the parties (Tab B), the Claim (Tab C), deposition summaries of the relevant testimony relied on in the Motion (Tab D), excerpts from the depositions of Jacob Gonzales (Tab E), David Watkins (Tab F), Pat Behling (Tab G), Nathan Ziehr (Tab H), Chris Collins (Tab I) and Brad McKenzie (Tab J) and selected exhibits common to those depositions (Tab K). Attachments to the Claim include, among other things, the correspondence notifying Sandow of the mechanic's lien claim, and the lien claim affidavit filed of record in Milam County, Texas.

12.    Jacob Gonzales was an employee of Luminant Generation and the Contract Coordinator (Project Manager)for Sandow under the Contracts.  David Watkins was an employee of Luminant Generation and the Contract Administrator for Sandow under the Contracts.  Pat Behling was the Project Engineer for Sandow under the Contracts. Nathan Ziehr was an employee of Ranger and the Contract Coordinator

(Project Manager) for Ranger under the Contracts.  Chris Collins is the owner of BMP Specialties, Ranger's vegetation subcontractor under the Contracts.  Brad McKenzie is the Controller of Ranger.

## IV. Summary of the Argument

13.  Sandow asserts two bases for its objection to the Claim. The first is that the type of work performed under the Contracts, is not the type of work for which a lien is allowed under the Texas mechanic's lien statutes, and the second is that Ranger abandoned the work under the Contracts before the vegetation work ("Vegetation") was completed.  The work performed under the Contracts clearly is subject to a Texas mechanic's lien, and there is no evidence Ranger abandoned the work under the Contracts before the Vegetation occurred in June and July 2014.

14.  The Objection addresses the Claim under the category of Modify Claim Amount and Modify Classification Claims. The Claim as asserted is secured in the amount of $292,598.58, and as modified as unsecured in the same dollar amount.  The reason for modification is stated as:

> "Modified amount reflects liquidation of claim to reflect the amount owed according to the Debtors' books and records. Modified classification reflects that, according to the Debtors' books and records and/or documentation filed with the proof of claim, the claimant is not entitled to a secured constitutional lien against the Debtor for the construction of the haul road and disposal pit because there can only be a lien upon the buildings and articles made or repaired by them and the roads and pit are not considered buildings or articles."  Appendix, Tab A.

15.  The Claim is for the 10% retainage due on the Contracts with Sandow with retainage due of $80,993.00 on the Haul Road

contract and with retainage due of $211,605.58 on the AX Pit contract.

16.    The work performed under the Contracts, as set out in the Specifications and the testimony of Sandow's witnesses, are improvements and clearly of the type of work subject to a Texas mechanic's lien. In addition, Sandow's witness testified Sandow treated both projects under the Contracts as capital improvements.

17.    The Contracts were completed post-petition on or about July 17, 2014, as reflected in the final invoices (Applications for Payment) signed off on by both Ranger and Sandow's Project Engineer.  These invoices were paid by Sandow post-petition in the ordinary course of business.  Appendix Tab K, Deposition Exhibits 38 and 39.

18.    Ranger's claim is for a statutory, not constitutional, mechanic's lien, as applicable.  Ranger sent the required notice to Sandow and filed a timely affidavit asserting a mechanic's lien claim in the Milam County real property records in accordance with Chapter 53 of the Texas Real Property Code and Sections 362(b)(3) and 546(b) of the Bankruptcy Code.  Copies of the notice to Sandow and affidavit asserting a mechanic's lien are attached to the Claim (Appendix Tab C) as Exhibits A and B, respectively.

19.    Therefore, the Claim is a secured claim.

### V. Statement of Undisputed Facts

20.    Ranger entered into two contracts with Sandow (Contracts) for the construction of an AX Ash Fly Pit ("AX Pit") and an AX Haul Road ("Haul Road") to service the AX Pit.  The Contracts included the same Scope of Work and Technical Specifications for both contracts ("Specifications").  Under the terms of the Contracts,

7

the work was to be completed by September 2, 2013 ("Completion Date").   Tab J, Deposition Exhibits 3 (Contracts) and 44 (Specifications).

21.    Ranger had substantially completed the work under the Contracts, by August 2013 (Watkins Dep. 33:11-20, 35:22-36:3; Ziehr Dep. 151:19-152:5).   The only thing that remained to be completed under the Contracts was revegetation of slopes and areas disturbed or created during the work ("Vegetation"). *Id.*

22.    The Vegetation was a specific item required under the Contracts and the Specifications. Tab J, Deposition Exhibits 3 (Contracts, pp. Ranger 000208 and Ranger 000051); and 44 (Specifications, pp. II-3 and II-8)   However, both the AX Pit and Haul Road were fully functional in August 2013 (Gonzales Dep. 28:18-20, 29:18-30:1; Ziehr Dep. 151:19-152:5).   As a result, Ranger, at the behest of the project engineer for Sandow, submitted invoices for its retainage held through August 2013 ("Retainage"). this sum is also the basis for the Claim (Ziehr Dep. 27:2-18, 39:4-10, 108:12-21).

23.    Neither Ranger or Sandow considered the Contracts fully complete until the Vegetation work was performed (Gonzales Dep. 145:11-147:20; Watkins Dep. 64:12-22, 79:8-11; Ziehr Dep. 185:7-186:3, 186:13-18).

24.    Ranger did not have the option to perform the Vegetation itself, since it lacked the equipment, material and specialized personnel to do that work (Ziehr Dep. 90:10-25).   Ranger used a subcontractor, BMP Specialties ("BMP"), for that type of work, and had identified BMP to do the Vegetation under the Contracts (Ziehr Dep. 45:5-21, 65:13-19, 144:19-25).   Ranger makes up 8-10 percent of BMP's business (Collins Dep. 8:2-4).

25.    Between October 2013 and March 2014, BMP had a concern about a Sandow bankruptcy and whether he would get paid for the vegetation work (Collins Dep. 65:15-23, 67:11-16).   By November 2013 he had discussions with Ranger about the potential for a bankruptcy and was concerned about getting paid for the Vegetation work (Collins Dep. 37:8-19).

26.    BMP found out about the possible Sandow bankruptcy in the Wall Street Journal, and it was also know through his suppliers (Collins Dep. 64:2-15).   BMP's vendors also wanted to be paid for the materials for the Vegetation work before BMP was paid for it (Collins Dep. 72:21-73:9).

27.    As a result, BMP had great concerns about performing the Vegetation and not being paid for the work.  (Collins Dep. 37:8-19, 65:15-23, 67:11-16) BMP is a small firm with 45 employees and was looking at $100,000 in work on the Vegetation (Collins Dep. 4:17-

25, 9:12-13, 66:16-67:3).  Its concerns involved getting paid at
all, or having to wait six month's to a year to be paid (Collins
Dep. 38:8-39:5, 43:23-44:16).  The later would have been an under
estimate of the time frame since the actual date from the Petition,
to the effective date under the confirmed plan was actually a
little over 29 months (April 29, 2014-Early October 2016).

28.  BMP did not want to tell Ranger he would not do the job
since he did a lot of work with Ranger, however, he really did not
want to do it.  (Collins Dep. 45:13-16, 58:25-59:5).  Even if
Ranger had provided assurance of payment he was still concerned
since it might also take six months or a year to get paid (Collins
Dep. 38:8-39:5, 43:23-44:16).

29.  Other than the bankruptcy possibility, there was nothing
else preventing him from coming out to do the Vegetation work
between September 2013 and June 2014 (Collins Dep. 71:6-11).

30.  Ranger attempted to get assurances of payment for the
Vegetation from Sandow's contract administrator, David Watkins, but
Mr. Watkins could not give those assurances since no one seemed to
know just when the bankruptcy would occur (Watkins Dep. 139:22-
140:23, 142:2-143:3, 145:20-146:4).  Likewise Mr. Gonzales,
Sandow's contract administrator, could not provide any assurance
(Ziehr Dep. 60:12-24).

31.  Mr. Ziehr, Ranger's project administrator, found it
difficult trying to convince a subcontractor, here BMP, to come out
to work with an impending bankruptcy and uncertainty of being paid
(Ziehr Dep. 124:7-125:21, 128:13-18, 129:15-19, 140:21-142:16,
161:13-162:20).  Sandow's project engineer, Pat Behling was also
concerned about sending a representative to this job because of
fear of not being paid (Ziehr Dep. 60:25-61:12).

32.  Ranger was actively doing hundreds of thousands of
dollars of work on another Luminant project at this time, on work
Ranger could perform (Ziehr Dep. 131:3-132:10).

33.  Ranger never said it was not coming to do the vegetation
but Sandow continually tried to get a schedule going over the 10
month period before the vegetation was complete (Gonzales Dep.
47:21-48:2, 145:6-147:11). All of Ranger's representation to Sandow
on scheduling updates, were passed on verbatim from what Mr.
Collins of BMP was telling Ranger (Ziehr Dep. 89:10-21, 119:20-
120:12).

34.  Ranger, at some point attempted to find other
subcontractors to do the vegetation work under the Contracts, but
the umbrella shadowing the job was that any minute there could be
a bankruptcy (Ziehr Dep. 46:10-24, 49:7-23, 50:6-11, 128:13-18).

35.   In December 2013, and in subsequent discussions between January 1 and August 28, 2014, Jacob Gonzales, Sandow's project coordinator, had conversations with Nathan Ziehr, Ranger's contract coordinator, in reference to Ranger's vegetation subcontractor, where Mr. Ziehr told him that subcontractor had concerns about being paid because of the bankruptcy rumors (Gonzales Dep. 50:11-51:20).   In those conversations, Mr. Ziehr, told Mr. Gonzales, Ranger was having trouble finding alternative seeding contractors because of the booming Austin economy where these contractors would come from, and also finding ones that would work for Luminant/Sandow because of the bankruptcy talk (Gonzales Dep. 51:4-20, 52:8-12, 56:20-57:11, 59:11-22, 61:2-9).

36.   Ranger itself, did not express concerns about being paid (Gonzales Dep. 102:17-24).

37.   BMP relented and was prepared to complete the Vegetation beginning in early May 2014 when the actual bankruptcy was filed on April 29, 2014 (Collins Dep. 69:4-6; Ziehr Dep. 161:13-163:5). After the bankruptcy filing, Ranger requested and received an assurance of being paid for the vegetation (Ziehr Dep. 163:3-164:22).   The Vegetation work was completed and approved by the project engineer and then Sandow (Ziehr Dep. 164:23-165:6). However, it still took 6 months for BMP to be paid (Collins Dep. 59:12-13).

38.   Sandow saved money due to the delay by using the native vegetation in areas not seeded (Gonzales Dep. 91:12-16; Watkins Dep. 65:25-66:3; Behling Dep. 92:3-19).

39.   With the completion of the Vegetation in July 2014, Sandow and Ranger considered the Contracts complete (Gonzales Dep. 108:12-18; Watkins Dep. 79:5-11; Ziehr Dep. 164:23-165:6; Deposition Exhibits 38 and 39).   Ranger was paid for the vegetation work under the terms of the Contracts (Behling Dep. 97:21-98:5, 159:1-160:12, 161:6-10, and Deposition Exhibits, 38, 39 and 47)

40.   A possible bankruptcy was not a concern for Ranger as far as completing the Sandow project it had underway (McKenzie Dep. 80:6-8; Ziehr Dep. 131:3-132:10). Ranger was doing a job for Luminant Mining Company on which it did 4 to 5 million in work between October 2013 and April 29, 2014, the date of the bankruptcy filing (McKenzie Dep. 80:12-23).   Ranger's inquiries for assurances of payment were made for the benefit of BMP (Ziehr Dep. 185:7-186:3, 186:13-18).

41.   Although past the Completion Date, Sandow still considered the Contracts not to be complete until the Vegetation was done and withheld the Retainage accordingly (Watkins Dep. 64:12-22, 79:8-11; Gonzales Dep. 54:4-22).

42. Sandow never terminated the Contracts in writing or otherwise (Watkins Dep. 34:3-35:6, 65:8-11; Gonzales Dep. 54:4-22). Likewise, Ranger never terminated or abandoned the Contracts (McKenzie Dep. 40:13-18, 79:18-21; Ziehr Dep. 184:18-21).

43. In fact, in all of the communications between Ranger and Sandow over the period of 10 months before the Vegetation was complete, Ranger always expressed its intent to complete the Vegetation work under the Contracts (Behling Dep. 45:6-25, 61:10-14, 68:13-69:13, 70:9-16, 96:19-97:12, 151:24-152:9; Gonzales Dep. 54:4-22, 47:21-48:2, 145:6-147:11; Watkins Dep. 64:6-11, 64:23-65:11).

44. Ranger completed the Contracts, according to their terms except for the September 2, 2013, completion date under the Contracts (Gonzales Dep. 145:11-147:20).

45. There is nothing in the Contracts about the contingency of Sandow filing for bankruptcy and the actual filing of the bankruptcy was a first for Mr. Watkins, Sandow's contract administrator  (Watkins Dep. 79:22-80:15, 120:14-121:9).

46. Ranger had not filed a lien affidavit prior to the bankruptcy because the work on the Sandow project was not complete (McKenzie Dep. 82:11-22).

47. Ranger's lien claim affidavit, which is the basis for its secured claim, was filed on June 10, 2014. Exhibit B to the Claim, Appendix Tab B.  The Contracts were completed with the Vegetation work in July 2014.  Tab J, Deposition Exhibits 38 and 39.

48. The actual work performed by Ranger in the construction of the AX Pit and Haul Road under the Contracts and their Specifications, included mobilization (common to all such contracts), construction of earthen dikes, construction of the landfill with a liner and a ramp to access it, construction of an access road and culvert, all involving site preparation, excavation, grubbing, grading, removal and replacement of vegetative soil, road base and revegetation (Behling Dep. 21:23-37:22, Watkins Dep. 21:22-22:21, Gonzales Dep. 76:3-77:13).

49. The AX pit is an addition to the property, without which the Sandow 5 generating plant would be unable to operate, and the haul road is an addition that makes such operation easier (Gonzales Dep. 77:14-78:23).

50. The work performed under the Contracts are capital improvements to the real property on which they were constructed (Gonzales Dep. 79:8-80:15, 81:23-82:5).

## VI. Summary Judgment Standard

51.  Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that the moving party is entitled to judgment as a matter of law.  Federal Rule of Civil Procedure 56(c)a, made applicable by Bankruptcy Rules 7056 and 9014.

52.  The movant on the summary judgment motion carries the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  By contrast, the non-movant's burden is to designate "specific facts showing that there is a genuine issue for trial."  Federal Rule of Civil Procedure 56(e); *Celotex*, 477 U.S. at 324.

53.  Simply showing the existence of a fact issue will not suffice to defeat a motion for summary judgment; the issue must be "genuine" and the fact "material".  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88 (1986) (Once a moving party has made a *prima facie* case that there is no genuine issue as to any material fact, the non-moving party must then come forward with "specific facts" showing a genuine issue for trial and it must be more than that there is some metaphysical doubt as to the material facts); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-52 (1986).

54.  Where the moving party shows that the opposing party is

unable to produce evidence in support of its case, summary judgment is appropriate. *Celotex*, 477 U.S. 317 (1986).

### VII. Burden of Proof on a Claim Objection

55.    The burden is on the Debtors to present enough evidence to overcome the prima facie effect of the Claim. *Matter of O'Connor*, 153 F.3d 258, 260 (5th Cir. 1998).

56.    The determination of property rights in the assets of a bankrupt's estate, is a matter of state law. *Butner v. United States*, 440 U.S. 48, 54-55 (1979).

### VIII.  Argument

### A. Ranger's Lien Claim is Valid Under Texas Law

57.    Texas law recognizes two possible types of mechanic's liens: (1) a constitutional lien and (2) a statutory lien. Tex. Const. Art. XVI, § 37; Chapter 53, Tex. Prop. Code.

58.    Mechanic's lien laws were enacted because of a desire to protect people and entities who furnished labor and materials for improving the value of another's land. *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 246 (Tex. 2002); *Strang v. Pray* 35 S.W. 1054, 1055 (Tex. 1896).

59.    The mechanic's and materialman's lien statutes, found at Chapter 53 of the Texas Property Code, are liberally construed for the purpose of protecting laborers and materialmen. *Hayek v. Western Steel Co.,* 478 S.W.2d 786, 795 (Tex. 1972)*; First Nat'l Bank in Dallas v. Whirlpool Corp.*, 517 S.W.2d 262, 269 (Tex. 1974).

60.    For purposes of perfection, only substantial compliance

with the statutes is required. *First Nat. Bank in Graham v. Sledge,* 653 S.W.2d 283, 285 (Tex. 1983)*.*

61.   Where a lessee contracts for construction, the mechanic's lien attaches only to the leasehold interest, not to the fee interest of the lessor. *Diversified Mortg. Investor v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 805 (Tex. 1978).

62.   In terms of mechanics liens the term "improvement" includes all additions and betterments to a freehold other than trade fixtures. *In re Demay International LLC,* 471 B.R. 510, 526 (SD. Tex. 2012)*; citing Big West Oil Co. v. Willborn Bros. Co.,* 836 S.W.2d 800, 802 (Tex. Civ. App.-Amarillo 1992), *Cantrell v. Broadnax,* 306 S.W.2d 429, 432 (Tex. Civ. App.-Dallas 1957, no writ); *Dubin v. Carrier Corp.,* 731 S.W.2d 651, 653 (Tex. App.-Houston [1st Dist.] 1987, no writ); and *Dedmon v. Stewart-Warner Corp.,* 950 F.2d 244, 246-47 (5th Cir. 1992).

63.   Texas courts have taken an expansive view on what is an improvement.  See *Diversified Mortgage*, 576 S.W.2d at 801-02 and 805.

64.   Under Section 53.001(2) "'Improvement' includes:

   "(A)   abutting sidewalks and streets and utilities in or on those sidewalks and streets;

   (B)   clearing, grubbing, draining, or fencing of land;

   (C)   wells, cisterns, tanks, reservoirs, or artificial lakes or pools made for supplying or storing water;

   (D)   pumps, siphons, and windmills or other machinery or apparatuses used for raising water for stock, domestic use, or irrigation; and

(E)   planting orchard trees, grubbing out orchards and replacing trees, and pruning of orchard trees."

65.   However, that definition is not exclusive.  Under Section 311.005(13) of the Texas Code Construction Act, "[i]ncludes" and "including" are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded.  Therefore, the foregoing definition of improvement is not limited by the enumerated descriptions.

66.   In *Diversified Mortgage*, the Texas Supreme Court found preliminary work such as "excavation, clearing and work in the nature of grubbing activity on the land ... general site clearance" was the type of activity that constituted an "improvement" for purposes of a mechanic's lien.  *Diversified Mortgage*, 576 S.W.2d at 803.

67.   A person has a mechanic's lien if the person furnishes labor or materials for construction or repair in this state of an improvement.  Section 53.021, Tex. Prop. Code.

68.   The contents of a lien affidavit for an original contractor such as Ranger are simple and requires: (1) a sworn statement of the amount of the claim; (2) the name and last known address of the owner or reputed owner; (3) a general statement of the kind of work done and materials furnished by the claimant; (4) the name and last known address of the person by whom the claimant was employed or to whom the claimant furnished the materials or labor; (5) the name and last known address of the original

contractor; (6) a description, legally sufficient for identification, of the property sought to be charged with the lien; (7) the claimant's name, mailing address, and, if different, physical address;(8) and be signed by the person claiming the lien or by another person on the claimant's behalf. Section 53.054, Tex. Prop. Code.

69. The Haul Road contract called for the construction of a road. The AX Pit contract called for the construction of a disposal pit. These involved construction of earthen dikes, construction of the landfill with a liner and a ramp to access it, construction of an access road and culvert, all involving site preparation, excavation, grubbing, grading, removal and replacement of vegetative soil, road base and revegetation. See paragraph 48 above.

70. These are clearly improvements under the broad scope of the Texas mechanics lien statutes, as those statutes have been interpreted by case law. Both projects were also treated by Sandow as capital improvements (Gonzales Dep. 79:8-80:15, 81:23-82:5).

71. Ranger's written notice to Sandow of the lien and the filed lien claim affidavit, are found at Exhibits A and B to the Claim, found at Tab B of the Appendix. These documents comply with the provisions of Chapter 53 of the Texas Property Code and establishes a valid statutory lien claim for Ranger, resulting in the Claim being a secured claim. Sections 53.051-53.055, Tex. Prop. Code.

16

**B. Ranger's Lien Claim was Timely Filed**

72. The time on the lien filing period starts when "indebtedness accrues" and here, Ranger had to file its lien affidavit "not later than the 15th day of the fourth calendar month after the day on which the indebtedness accrue[d]." Section 53.052, Tex. Prop. Code.

73. Indebtedness to an original contractor accrues on the last day of a month during which either the contractor or the owner receives a written declaration from the other party terminating the contract. Section 53.053(b)(1), Tex. Prop. Code. Absent termination, indebtedness accrues " on the last day of the month in which the original contract has been completed, finally settled, or abandoned." Section 53.053(b)(2), Tex. Prop. Code.

74. The indebtedness reflected by the retainage on the Contracts owed to Ranger accrued on the last day of July 2014, which was the month in which the work on the Contracts, the Vegetation was complete. See Section 53.053, Tex. Prop. Code and paragraphs 39, 41, 44 and 46-47 above.

75. Chapter 53 of the Property Code does not define "abandoned." *See* Section 53.001, Tex. Prop. Code. There also does not appear to be Texas authority exploring the meaning of "abandoned" as applied to mechanic's liens. Therefore, the word's ordinary meaning should be used. *See TGS-NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 439 (Tex. 2011). "Abandon," as used in this context, means "to give up completely, to desert, to renounce one's

obligations and rights under." Webster's New World Dictionary (1968); *OxfordDictionaries.com*, Oxford Dictionaries, 2016; *Merriam-Webster.com*, Merriam-Webster, 2016.

76.  It is clear from the deposition testimony of Ranger and Sandow's witnesses that Sandow or Ranger never terminated or abandoned the work under the Contracts before the Vegetation was complete in July 2014.  See paragraphs 23, 31, 33-36, 39-40 and 42-46 above.  There is also no statutory provision preventing Ranger from filing its lien claim before the work was complete under the Contracts.  In this case, Ranger filed its lien claim affidavit in June 2014, a month before the completion of the work under the Contracts (Vegetation).

77.  Therefore, Ranger has a timely filed valid mechanic's lien claim under Texas law resulting from the notice to Sandow and affidavit asserting a mechanic's lien(Appendix Tab C, Exhibits A and B), which makes the Claim, a secured claim.

**C. Ranger is Entitled to Interest and Attorneys Fees Under 11 U.S.C. Section 506(b)**

78.  Ranger is also entitled to post-petition interest and attorneys fees on the Claim.

79.  The payment of interest and attorneys fees on an over secured claim appears mandatory.  11 U.S.C. Section 506(b) ("there shall be allowed to the holder of the claim, interest on such claim and any reasonable fees, costs, or charges provided under the agreement or State statute under which the claim arose").

80.  In lieu of Texas statutory provisions on interest, Ranger

and Sandow have stipulated to a post-petition interest rate of 4.5% per annum applicable to the Claim if it determined to be a secured claim.

81.   The work on the Contracts was completed by the end of July 2014.  The Contracts provide that Ranger should have been paid by October 1, 2014, which is 60 days after the date the work was complete.  So interest accrues on the Claim as of October 1, 2014.

82.   Texas statutes would apply as to attorneys fees. Attorneys fees are provided for under Section 53.156 of the Texas Property Code ("[i]n any proceeding to foreclose a lien ... or in any proceeding to declare that any lien or claim is invalid or unenforceable in whole or in part, the court shall award costs and reasonable attorneys fees that are equitable and just").

83.   As a result, Ranger is entitled to post-petition interest and attorneys fees on the Claim.

### X. Scope of the Motion

84.   This Motion embraces Ranger's Claim and the Objection. There is no genuine issue as to material fact necessary to establish each and every element required to show that the work performed under the Contracts can be and is the subject of a Texas mechanic's lien, the Notice and Lien Claim Affidavit comply with the requirements for perfecting a Texas mechanic's lien, Ranger's mechanic's lien claim was timely filed, the Claim is a secured claim, and that Ranger is entitled to post-petition interest and attorneys fees on the Claim, as a matter of law.

## X. Conclusion

85.  Ranger constructed a road (Haul Road) and a specialized lined disposal pit (AX Pit), which is clearly the subject of a mechanic's lien under Texas law.  Ranger sent the required notice to Sandow and filed a timely lien claim affidavit in compliance with Texas law.  The Vegetation was completed by Ranger, through its subcontractor.  The delay in completing this Vegetation was the direct result of the chilling effect caused by press and other coverage of the potential for a Sandow bankruptcy proceeding, and its effect on Ranger's vegetation subcontractor and Ranger's ability to provide any substitute contractor to perform the Vegetation, due to the subcontractor's fear it would not be paid.  Ranger's Claim is a secured claim and entitled to post-petition interest and attorneys fees.

WHEREFORE, PREMISES CONSIDERED, Ranger prays that the Court grant Ranger summary judgment, overrule the Objection to the Claim, determine the claim to be secured and entitled to post-petition interest and attorneys fees, and grant Ranger such other and further relief, at law or in equity, to which Ranger may be justly entitled.

Respectfully submitted,

*/s/ Stephen Sakonchick, II*

_____
Stephen Sakonchick, II
State Bar No. 17525500
Stephen Sakonchick II, P.C.
6502 Canon Wren Drive
Austin, Texas  78746
(512) 329-0375
(512) 697-2859 (fax)
sakon@flash.net

Attorney for Ranger Excavating LP
Appearing under Local Bankruptcy Rule
9010-1(e)(iii)