# EXHIBIT 3

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

-----------------------------------------x

In Re:

Energy Future Holdings Corporation, et.,

Debtors.

Chapter 11

Case No. 14-10979

Jointly Administered

-----------------------------------------x

* * *(PAGES 89-93 MARKED HIGHLY CONFIDENTIAL)* * *

DEPOSITION OF ANTHONY HORTON

New York, New York

October 18, 2016

Reported by:

KATHY S. KLEPFER, RMR, RPR, CRR, CLR

JOB NO. 114064

Page 2

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

October 18, 2016

Deposition of ANTHONY HORTON, held at Kirkland & Ellis, LLP, 601 Lexington Avenue, New York, New York, before Kathy S. Klepfer, a Registered Professional Reporter, Registered Merit Reporter, Certified Realtime Reporter, Certified Livenote Reporter, and Notary Public of the State of New York.

Page 3

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

A P P E A R A N C E S:

KIRKLAND & ELLIS
Attorneys for the Debtors
555 California Street
San Francisco, California 94104
BY: MARK McKANE, ESQ.
MARK MENZIES, ESQ.

WILMERHALE
Attorneys for Delaware Trust as Indenture Trustee for EFIH First Liens
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
BY: DAVID GRINGER, ESQ.
ISLEY GOSTIN, ESQ.

AKIN GUMP STRAUSS HAUER & FELD
Attorneys for UMB Bank, As Indenture Trustee for the Unsecured 11.25 Percent/12.25 Percent Senior Toggle Notes Due 2018
One Bryant Park
New York, New York 10036
BY: WILLIAM MONGAN, ESQ.

Page 4

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

A P P E A R A N C E S: (Cont'd.)

NIXON PEABODY
Attorneys for American Stock Transfer as Indenture Trustee at EFH
100 Summer Street
Boston, Massachusetts 02110
BY: RICHARD PEDONE, ESQ.

KRAMER LEVIN NAFTALIS & FRANKEL
Attorneys for Computer Share EFIH 2nd Lien Indenture Trustee
1177 Avenue of the Americas
New York, New York 10036
BY: NOAH HERTZ-BUNZL, ESQ.

VENABLE
Attorneys for Pimco
1270 Avenue of the Americas
New York, NY 10020
BY: JEFFREY SABIN, ESQ.

Page 5

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

A P P E A R A N C E S: (Cont'd.)

CHADBOURNE & PARKE
Attorneys for NextEra
350 South Grand Avenue
Los Angeles, California 90071
BY: ROBIN BALL, ESQ.
ERIC DAUCHER, ESQ.

SULLIVAN & CROMWELL
Attorneys for EFH Committee
125 Broad Street
New York, New York 10004
BY: BRIAN GLUECKSTEIN, ESQ.

SHEARMAN & STERLING
Attorneys for Deutsche Bank, EFIH First Lien DIP Agent
599 Lexington Avenue
New York, NY 10022
BY: RONNI ARNOLD, ESQ.

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

A P P E A R A N C E S: (Cont'd.)

KAZAN, McCLAIN, SATTERLEY & GREENWOOD
Attorneys for Shirley Fenicle individually
and as successor-in-interest to the estate of
George Fenicle
55 Harrison Street
Oakland, California 94607
BY: STEVEN KAZAN, ESQ. (By videoconference)

ROBERT B. SENDLER
Vice President & Chief Litigation Counsel
NextEra Energy, Inc.
700 Universe Boulevard
Juno Beach, FL 33408

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

(Time Noted: 8:54 a.m.)

(Witness sworn.)

MR. McKANE: Before we get started, this deposition and going forward, there some times may be a NextEra in-house counsel present. That person is covered under the Protective Order only at the confidential level, not at the highly confidential level. That's why we have asked anyone asking deposition questions to try as best as possible to compartmentalize those questions that go to a highly confidential issue so that we can excuse that individual from the room so we can protect the confidential nature of the proceedings and honor the Protective Order.

Areas that we are particularly sensitive to is as it relates to given our relationship with NextEra would be negotiations with other bidders and the internal deliberations of the process leading up to the merger agreement. So our governance issues in terms of how we would did respond to proposals made by NextEra.

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

Those are two areas in particular that we would highlight for any questioners for this deposition and going forward, so long as we're going to be in a situation where not everyone attending a deposition is allowed to see how and learn of highly confidential information.

And with that, Mr. Gringer.

MR. GRINGER: Thank you, and maybe we'll have two or three questions that touch on those issues, and I think they, should they even come up, they will be consecutive, at least that's my plan, but please let me know if I'm touching on something that's highly confidential and we can react accordingly.

ANTHONY HORTON, called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:

EXAMINATION BY
MR. GRINGER:

Q. Good morning, Mr. Horton. My name is David Gringer, Wilmer, Cutler, Pickering, Hale

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

and Dorr, on behalf of Delaware Trust Company as indenture trust for the EFIH first lien noteholders. And as I'm sure you recall, we have met before on a couple of occasions --

A. Sure.

Q. -- when you were deposed by my colleague Mr. Anker, and then when you testified in the lift stay hearing back in April of 2015.

And I'm correct that you have been deposed in connection with this Chapter 11 case and the associated cases multiple times, correct?

A. That is correct.

Q. And so what I propose is just that I not go through all the various ground rules since you're represented by counsel here today. Is that okay?

A. That is fine.

Q. And so let me just note if I ask a question that you don't understand, just let me know and I'll rephrase it. Is that okay?

A. Fine.

Q. And if you need to take a break, let me know and we can do so. I just ask that you

Page 62

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

paid in full are disallowed by final order?

MR. BALL: Objection to form.

MR. McKANE: And foundation.

Go ahead.

A. You're going to have to re-read that question after -- that was quite a -- quite a question. Sorry.

Q. I assume you don't mean quite a question in terms of its clarity and coherence.

A. It was perfectly clear.

Q. Let me try one more time.

A. I'm daydreaming about what's going on down here.

MR. McKANE: Mr. Kazan is a little distracting. He's larger than life.

BY MR. GRINGER:

Q. I didn't even notice that. That is -- I'm impressed that you managed to keep as much attention as you have in light of Mr. Kazan's looming presence.

A. Great question. I just got distracted.

Q. Thank you, Mr. Horton.

So suppose that the Bankruptcy Court

Page 63

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

holds that the liens securing the EFIH first lien notes have to remain in place until the EFIH first lien note claims, including the make-whole claims, are paid in full or are disallowed by final order.

Have the debtors spoken or had any discussions with NextEra about that possibility?

MR. McKANE: Objection to form. Incomplete hypothetical.

Go ahead.

MR. BALL: Objection to form.

A. I have had a conversation, and my understanding is they feel like that would be a violation of their commitment.

Q. With whom did you speak?

A. Mark Hickson.

Q. When did you and Mr. Hickson discuss the scenario we just outlined?

A. In preparation for this.

Q. And what did Mr. Hickson tell you?

A. Exactly what I just said.

MR. GRINGER: I think I may be done. Let me just -- why don't we go off the record for a couple minutes. I'll check my

Page 64

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

notes.

MR. McKANE: Sure. We'll step out for a second.

THE WITNESS: Thank you.

(Recess; Time Noted: 10:32 a.m.)

(Time Noted: 10:37 a.m.)

BY MR. GRINGER:

Q. Mr. Horton, thank you, as usual, for your time and candor. Just a couple more questions.

What is the debtors' understanding of how the current plan treats the existing liens held by the EFIH second lien noteholders?

A. In terms of what?

Q. Well, let me -- today, the debtors understand that the EFIH second lien noteholders have liens securing their claims, correct?

A. Currently, yes.

Q. And what is the treatment under the plan of the liens securing the EFIH second lien noteholder claims?

A. You're talking about at the effective date and restructured EFIH?

Q. Correct.

Page 65

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

A. It's to pay off the second liens and release their liens.

Q. So, under the plan, if it goes effective, the liens securing the EFIH second lien claims will be released, correct?

A. That's correct.

Q. The debtors believe that what we called today the Hunt plan was feasible, correct?

A. I believe so, yes.

MR. GRINGER: Nothing further.

MR. McKANE: Do the second liens have any questions?

MR. HERTZ-BUNZL: Just one question.

MR. McKANE: Do you want to identify yourself for the record?

MR. HERTZ-BUNZL: Sure. Noah Hertz-Bunzl with Kramer Levin for the second lien noteholders.

EXAMINATION BY

MR. HERTZ-BUNZL:

Q. You gave some testimony about the reasons for stripping the first liens to my colleague here. Would you say that that

Page 66

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

analysis is the same for the second liens?

A. Yes.

MR. HERTZ-BUNZL: Thank you.

MR. McKANE: Anyone else want to ask questions before Mr. Kazan?

All right. Mr. Kazan, can you hear us?

MR. KAZAN: I can. Can you hear me okay?

MR. McKANE: We can hear you. The witness has been passed to you.

MR. KAZAN: Okay.

EXAMINATION BY

MR. KAZAN:

Q. Thank you. I apologize for the size of the earlier image. I was trying to adjust the image I'm seeing of you, and I demonstrated by technical incompetence.

So, Mr. Horton, are you ready to proceed?

A. I am.

Q. Okay. We've reviewed a list of the officers, directors and so on of the various entities that we're involved with, and first, do

Page 67

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

you understand what I mean by the asbestos debtors in this case?

A. Yes, sir.

Q. Okay. You have been an officer of one or more of EFH and the asbestos debtors since approximately 2004; is that correct?

MR. McKANE: Objection to form.

Go ahead.

A. Those -- that date sounds about right, yes.

Q. Yes. And with respect to the asbestos debtors themselves, you've been a director of EEC Holdings as well as, in the last couple of years, its president and treasurer; is that right?

A. That's correct.

Q. And with respect to EECI, you have been a director since 2006, and again, you were its treasurer for a while, and president and treasurer for the last two years?

A. That's correct.

Q. And with respect to LSGT Gas, the same is also true; you've been a manager, treasurer, and for the last two years, president and

Page 68

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

treasurer?

MR. BALL: Object to form.

A. That's correct.

Q. And with respect to SACROC, the same is also true; is that correct, sir?

MR. BALL: Objection to form.

MR. McKANE: Same objection.

A. Yes, sir.

Q. Prior to the preparation for the filing of the bankruptcy, can you tell me approximately how much time or what percentage of your time was devoted specifically to your duties as a manager, officer or director of any of the asbestos debtors in this case?

A. It's my view that the amount of time that I spent is going to be limited relative to the amount of time I spent with the remainder of the debtor entities. Obviously, if you look at what was going on at the, as you call it, the asbestos entities, that was a discontinued ops. We had sold all of the assets by a merger by division back in 2004.

The primary focus from those entities and from that transaction were pension

Page 69

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

obligations, OPEB obligations, and then ongoing liabilities and claims related to asbestos.

From the asbestos side, my responsibilities and the time I spent was related to ensuring that the -- as the claims came due or were allowed and were owed, that we were actually funding those claims and managing the receivables and so forth associated with -- and liabilities associated with making those -- funding those claims. So very small percentage of my time, to answer your question.

Q. Okay. Would you say it was an hour a week, an hour a month, an hour a year?

MR. McKANE: Objection.

Q. Can you give me any estimate?

MR. BALL: Objection to form.

MR. McKANE: Objection to form.

A. I have no estimate.

Q. And you said that the final operations were sold off in 2004. Were you with the company during that process?

A. I was.

Q. And these were the old residual Ebasco operations; is that correct?

18

TSG Reporting - Worldwide 877-702-9580

Page 98

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

best. We would need to circle up and figure out who would be the best person to talk to.

Q. Okay. But you yourself have no recollection of any such claims; is that correct?

A. If you don't mind, you're saying any such claims and you went through a couple of questions there. What such claims?

Q. Let me restate that. Do you personally have any recollection of ever hearing or seeing that the company has paid claims for indemnity asserted by any other asbestos defendant who was called upon to pay those claims?

A. I'm not aware.

Q. So you have no such recollection at this point; is that correct?

A. I'm saying to you I am not aware.

Q. I'm sorry, that you're not aware of what?

A. You asked a question, and I said I'm not aware of any of those payments.

MR. KAZAN: Okay. Thank you.

Okay, I think that's all the questions

Page 99

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

I have, so I'm prepared to pass the witness.

MR. McKANE: Okay. All right. It's now 11:25. Our next deposition is at 1 o'clock. We'll have that deposition in this room. So, Mr. Kazan, you can sign off until 10 a.m. Pacific and then join back then, and then you'll have Mr. Moldovan. I believe Mr. Moldovan is a witness solely for you.

MR. KAZAN: Then I guess there's no problem with me going first.

MR. McKANE: I think you're going to have to.

MR. KAZAN: All right. Thank you very much. I will see you all in an hour and 30 minutes.

MR. McKANE: Very good.

(Time noted: 11:24 a.m.)

oOo

Page 100

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

CERTIFICATE

STATE OF NEW YORK )
: ss
COUNTY OF NEW YORK)

I, Kathy S. Klepfer, a Registered Merit Reporter and Notary Public within and for the State of New York, do hereby certify:

That ANTHONY HORTON, the witness whose deposition is herein before set forth, was duly sworn by me and that such deposition is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

In witness whereof, I have hereunto set my hand this 18th day of October 2016.

______________________________

KATHY S. KLEPFER, RPR, RMR, CRR, CLR

Page 101

PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

INDEX

TESTIMONY OF A. HORTON: PAGE

Examination by Mr. Gringer .................. 8

Examination by Mr. Hertz-Bunzl ............... 65

Examination by Mr. Kazan ..................... 66

HORTON EXHIBITS: PAGE

Exhibit 1, Disclosure Statement ............. 42

26

TSG Reporting - Worldwide 877-702-9580