# EXHIBIT 4

Rough Transcript

Page 1

2        UNITED STATES BANKRUPTCY COURT
3         FOR THE DISTRICT OF DELAWARE
4   --------------------------------------x
5   In Re:
6   Energy Future Holdings Corporation,
7   et al.,
8                                  Debtors.
9
10  Chapter 11
11  Case No. 14-10979
12  Jointly Administered
13  --------------------------------------x
14
15
16           DEPOSITION OF PAUL KEGLEVIC
17              New York, New York
18               October 13, 2016
19
20
21
22  Reported by:
23  MARY F. BOWMAN, RPR, CRR
24  JOB NO. 113993
25

Page 2

October 13, 2016
1:10 p.m.

Deposition of PAUL KEGLEVIC held at the offices of Kirkland Ellis, LLP, 601 Lexington Avenue, New York, New York, before Mary F. Bowman, a Registered Professional Reporter, Certified Realtime Reporter, and Notary Public of the State of New Jersey.

Page 3

APPEARANCES:
KIRKLAND & ELLIS
Attorneys for the Debtors
   555 California Street
   San Francisco, CA 94104
BY: MARK McKANE, ESQ.
    JONATHAN F. GANTER, ESQ.
    JUSTIN SOWA, ESQ.

WILMER HALE, LLP
Attorneys for Delaware Trust as Indenture Trustee for EFIH First Liens
   7 World Trade Center
   New York, New York  10007
BY: PHILIP ANKER, ESQ.
    ISLEY MARKMAN GOSTIN, ESQ.

KRAMER LEVIN NAFTALIS & FRANKEL, LLP
Attorneys for Computer Share
EFIH 2nd Lien Indenture Trustee
   1177 Avenue of the Americas
   new York, New York  10036
BY: GREGORY A. HOROWITZ, ESQ.

Page 4

APPEARANCES:

NIXON PEABODY
Attorneys for American Stock Transfer as Indenture Trustee at EFH
   100 Summer Street
   Boston, MA 02110
BY: RICHARD PEDONE, ESQ.

AKIN GUMP STRAUSS HAUER & FELD
Attorneys for UMB Bank, As Indenture Trustee for the Unsecured 11.25 Percent/12.25 Percent Senior Toggle Notes Due 2018
   One Bryant Park
   New York, NY 10036
BY: CHRISTOPHER CARTY, ESQ.

VENABLE, LLP
Attorneys for Pimco
   1270 Avenue of the Americas
   New York, New York  10020
BY: JEFFREY S. SABIN, ESQ.

Page 5

APPEARANCES:

CHADBOURNE & PARKE, LLP
Attorneys for NextEra
   1301 Avenue of the Americas
   New York, New York  10019
BY: MARC D. ASHLEY, ESQ.
    CHRISTY RIVERA, ESQ.

SULLIVAN & CROMWELL, LLP
Attorneys for EFH Committee
   125 Broad Street
   New York, NY 10004
BY: BRIAN GLUEKSTEIN, ESQ.

EARLY, LUCARELLI, SWEENEY & MEISENKOTHEN, ESQS.
Attorneys for Fahey
   360 Lexington Avenue
   New York, New York  10017
BY: ETHAN EARLY, ESQ.

Page 70

2  interest unrelated to the make whole, be
3  they claim for the make whole, does the
4  plan -- to the best of your knowledge --
5  provide for the liens to disappear on the
6  effective date or only following the
7  satisfaction of those claims?
8       WITNESS' ATTORNEY:  Objection to
9    form, that's vague.  Do you want to
10   show him a footnote.
11      Q.   I don't think it is vague, let me
12  ask a different way Mr. Keglovich that may
13  help you.
14      As you may know and I'm happy to
15  show you in the plan there is actually for
16  example an undisputed interest claim owed
17  to my client.  You may remember there was a
18  bump up in interest because of the failure
19  to register some of the notes and that bump
20  up in interest was never paid.
21      So let's focus on that claim and
22  disputed to the best of my knowledge.  Does
23  the plan -- to the best of your
24  knowledge -- provide for the liens securing
25  that claim to disappear on the effective

Page 71

2  date or only upon the satisfaction of that
3  claim?
4      A.   I'm sorry, I don't know.
5      Q.   I pass the witness.
6       MR. HOROWITZ:  I have no
7  questions. we covered it.
8      Q.   Off the record.  Examination by
9  Mr. Kazan.
10     Q.   Mr. Kazan, any issues with the
11  technology?
12  Examination by Mr.
13      MR. KAZAN:
14     Q.   Mr. Keglovich, good morning?
15     A.   Good afternoon for you, I guess.
16     A.   Good afternoon.
17     Q.   With respect to the notice of
18  your deposition by the asbestos
19  representatives, can you tell me whether
20  you have reviewed any documents or records
21  either paper or electronic in preparing for
22  your deposition today?
23     A.   The only paper that I refreshed
24  my recollection about was the -- I think it
25  was the demonstrative in one of the cases,

Page 72

2  but effectively showing EFH and what we
3  call the asbestos subsidiary and other
4  claims with some arrows, I think it was a
5  demonstrative in one of the Kazan, I don't
6  remember when but that was the only piece
7  of paper that I looked at with respect to
8  asbestos.  Matters.
9     Q.   So would that have been the
10  organization chart of the entire structure
11  but you focused on a little bit were where
12  the asbestos companies are?
13    A.   Yes, sir.
14    Q.   Do you understand what we mean by
15  the asbestos debtors in this Kazan?
16    A.   I believe so.  But you know, the
17  ones I think about are EEC holdings,EECI,
18  LSGT and LSGT sack rock.
19    Q.   And the first LSGT, you
20  meaningsed is LSGT gas, correct?
21    A.   Thank you LSGT gas, sure.
22    Q.   So if I refer to companies called
23  gas or sack rock, we understand that it's
24  those two that we are reference
25  referencing, OK?

Page 73

2     A.   That's fine.
3     Q.   Now, in reviewing documents that
4  have been produced and that we were able to
5  find, there is something called a
6  management structure chart covering 1996 to
7  2016 which lists all the executives and
8  their titles.  Are you familiar with that
9  document?
10    A.   I am not.
11    Q.   OK.  Well, I don't think we need
12  to mark it as an exhibit but for
13  identification, it's the one numbered
14  06449225 et seq. in the Kazan.
15    It lists in there the titles and
16  time periods where you were manager,
17  director, corporate officer of EFH as well
18  as the four asbestos debtors.  Do you have
19  that information pretty much in your mind
20  as you sit here?
21    A.   Generally speaking.  Obviously I
22  came on if 2008.  So it would be everything
23  from 2008 forward.
24    Q.   Right.  And in 2008, generally
25  around July, August of that year, you

Page 74

2  became an executive vice president and CFO
3  at EFH, a director at EEC holdings, and a
4  director in ECI and sack rock and also for
5  some reason you are titled as a manager or
6  the manager at gas. Is does that generally
7  purport with your recollection?
8      A.  Yes, sir.
9      Q.  And in terms of corporate
10 structure, can you tell me what it meant to
11 be a manager at gas?
12     A.  Given that those entities had
13 very little activity, we didn't -- I didn't
14 have any significant duties associated with
15 them. The legal department, I know that
16 there were claims that were paid during
17 that period of time. If I recall, roughly
18 a -- kind of a run rate of a million
19 dollars a year. But obviously with no
20 employees and no active operations, there
21 is not significant work for the manager to
22 do.
23     Q.  Well, that is one way to tell you
24 that you were doing it wrong?
25     A.  You have that opportunity to do

Page 75

2  that today.
3      Q.  No, I -- I'm sure we will agree
4  by the time we are done.
5          It indicates on those of those
6  that you continued on with those
7  responsibilities generally through around
8  2012 and actually -- let me rephrase that.
9  You kept getting aelected, not pointed
10 through 2012 and essentially all of those
11 titles ended on February 3, 2014. What
12 happened on that date that led to the
13 restructuring?
14     A.  You know, I don't recall. My
15 guess it was in connection with getting
16 ready for restructuring, but I don't
17 recall, sir, substantively why that
18 changed. It was the recommendation of
19 counsel and corporate secretary at that
20 time.
21     Q.  OK. And in addition to manager
22 or director, the record seems to reflect
23 that in March of 2011, you were elected or
24 appointed president of of these companies,
25 the four asbestos companies and again

Page 76

2  continued that for a number of years.
3  What, if anything, changed in your
4  responsibilities after your being appointed
5  president?
6          WITNESS' ATTORNEY:  Objection to
7      form.
8      A.  Nothing significant. Like I
9  said, I was generally aware of the entities
10 and the activity in the entities and while
11 it was a title change, it didn't change my
12 understanding of what was going on or I
13 didn't have significantly more work to do
14 as a result of the title.
15     Q.  Any big pay increase to go with
16 the promotion?
17     A.  I can assure you that I got
18 nothing for those changes in title.
19     Q.  Can you tell me in general terms
20 from the time you game on to the company
21 until the restructuring process began to
22 take some time, how much time did you spend
23 on average in fulfilling whatever your
24 duties were with respect to the four
25 asbestos debtors?

Page 77

2      A.  Given that there were no
3  employees, no active operations and a small
4  amount of activity generally driven by the
5  legal department, I was made aware of the
6  activity which is primarily filing of
7  claims and payment of claims but it was a
8  very small percentage of my time given the
9  other 70, you know, odd enterprises and --
10 that many of them had active operations and
11 as the CfO, I was much more engaged in them
12 than I would, you know, in the asbestos
13 companies for those reasons.
14     Q.  Well, I certainly understand
15 that. We have been provided copies of
16 minutes of board of directors meetings over
17 the years for these companies. And unless
18 I missed something generally those were
19 done on written notice waiving formalities
20 with very brief and routine documentation.
21 Did you ever actually review these minutes
22 and these records of the annual meetings?
23         WITNESS' ATTORNEY:  Objection to
24     form to the statement before the
25     question.

Page 78

2   A. I'm sure I was somewhere in the
3 stream of either approving them or being
4 advised of them or -- but why I frankly
5 don't have much recollection. It was not
6 a -- given the lack of activity and as you
7 described, the -- they were very short form
8 minutes that there wasn't a lot of my time
9 spent and I don't have a recollection
10 associated with those minutes.
11   Q. OK. Were there ever actually
12 meetings where you as director and later
13 president, along with any other directors
14 actually sat around a table and had a
15 meeting or was it all done sort of by
16 written stipulation?
17      WITNESS' ATTORNEY: Objection,
18   over broad.
19   A. I don't recall any specific board
20 meetings associated with the entities for
21 the reasons I stated previously.
22   Q. OK. So the corporate formalities
23 were honored and preserved in written form
24 but there really weren't active actual
25 physical meetings, is that correct?

Page 79

2      WITNESS' ATTORNEY: Objection to
3   form.
4   A. There were no physical meetings
5 that I attended that I can recall, but as I
6 said, there was also no significant change
7 in activity and that is the reason why we
8 didn't feel the need to have any meetings.
9   Q. Did these four asbestos debtors
10 actually have physical office space
11 anywhere?
12   A. They did not.
13   Q. Where were there records and
14 papers kept.
15      (REPORTER'S NOTE: their records)
16   A. They were kept consistent with
17 where we kept every corporate record for
18 every entity. So depending on the type of
19 record, it was either the corporate
20 secretary's office, was general ledgers
21 maintained by our controller, so it was --
22 we treated them no differently than we
23 treated the recording and the storage and
24 retention of records for any other
25 subsidiary.

Page 80

2   Q. So they were all part of the
3 general corporate management structure at
4 the EFH level?
5      WITNESS' ATTORNEY: Objection to
6   form.
7   A. Generally speaking, I think
8 that's right. Our EFH corporate services,
9 which was a subsidiary of EFH, had many of
10 the functions that would have been involved
11 in the record keeping. So they were kept
12 in those departments which at that time was
13 owned by EFH. It has been since
14 transferred to TCEH as you're probably
15 aware.
16   Q. And would those records have gone
17 over to TCEH?
18   A. Well, there has been no physical
19 change and as you will recall in the -- or
20 you may recall, we have a transition
21 service arrangement with the reorganized
22 TCEH so the system of internal controls,
23 general ledger, corporate secretary, et
24 cetera, they are doing much of the -- still
25 doing the recording, the maintenance, and

Page 81

2 the custody of those records and now the
3 three new officers of EFH, myself,
4 Mr. Write and Mr. Horton are overseeing the
5 performance of those functions on behalf of
6 EFH.
7   Q. When you first came on board, and
8 were assigned the responsibilities that you
9 have for the asbestos debtors, can you tell
10 me what, if anything, you did to
11 familiarize yourself with their history,
12 their records, any issues related to their
13 existence?
14      WITNESS' ATTORNEY: Objection,
15   form to the extent you recall.
16   A. My recollection at that point in
17 time was I made myself familiar with the
18 organization structure of the company and
19 asked questions about what each entity was,
20 you know, where they came from, what
21 activity levels were in them and -- but
22 generally speaking, the systems and the
23 processes and controls, et cetera, all go
24 through the same effort for all of the
25 entities. So it wasn't -- I did it all at