# EXHIBIT 6

Page 1

```
 1
 2          UNITED STATES BANKRUPTCY COURT
 3          FOR THE DISTRICT OF DELAWARE
 4    ---------------------------------------x
 5    In Re:
 6    Energy Future Holdings Corporation,
 7    et al.,
 8                                  Debtors.
 9
10    Chapter 11
11    Case No. 14-10979
12    Jointly Administered
13    ---------------------------------------x
14
15
16          DEPOSITION OF BILLIE IDA WILLIAMSON
17                  New York, New York
18                  September 30, 2015
19
20
21
22    Reported by:
23    MARY F. BOWMAN, RPR, CRR
24    JOB NO. 98290
25
```

1                     Williamson
2      can give her that information.
3      Q.   Ms. Williamson, I guess I have to
4  ask you to speak up or move closer to the
5  speaker or something.  But I would like to
6  ask you some questions about what role, if
7  any, you played in the decisions related to
8  issues surrounding asbestos in this case?
9           First, tell me what role, if any,
10 you played in the decision to put the
11 asbestos-related debtors into this
12 bankruptcy?
13          MR. ROGERS:  Objection to form.
14          Which debtors are you talking
15     about?
16     Q.   Ms. Williamson, do you know which
17 of the companies owned by EFH have or had
18 potential asbestos liabilities?
19          MR. FIRESTEIN:  Don't guess.
20     A.   I don't know the specific
21 companies.
22     Q.   Well, I take it you have heard of
23 the Luminant power plants.  Do you know if
24 any of those companies that own those power
25 plants have potential asbestos liability?

1      Williamson

2      MR. FIRESTEIN: Lacks foundation.
3   Objection.
4      A.   I don't know the specific plants.
5   And whether -- I know that we have plants,
6   but I don't know which specific plants
7   would have asbestos issues.
8      Q.   Do you know if any companies on
9   the E-side that had any asbestos
10  responsibilities.
11     MR. FIRESTEIN: Same objection.
12     A.   There is a liability for asbestos
13  items on Energy Future Holdings.
14     Q.   OK.  You mean at the parent
15  level?
16     A.   Yes.
17     Q.   And do you know from which of its
18  subsidiaries that liability derives?
19     A.   No, sir, I don't know
20  specifically.
21     Q.   OK.  Did you have any role in the
22  decision about which companies were to be
23  put into the bankruptcy?
24     A.   Yes.
25     Q.   And what role was that?

Case 14-10979-CSS   Doc 10419-6   Filed 12/20/16   Page 5 of 9

Page 211

1                    Williamson

2       A.    I was a director, and am a
3   director of Energy Future Holdings
4   Corporation, and that decision was made by
5   the board.
6       Q.    OK.  And do you know the basis
7   for which you decided on which of the
8   companies to put into bankruptcy and which
9   not to put into bankruptcy?
10      A.    Basis was --
11            MR. FIRESTEIN:  He asked whether
12      you know the basis.  That's yes or no.
13      A.    Excuse me.  No.
14      Q.    Did you take part in any --
15      A.    Excuse me, sir, Mr. Kazan, I am
16  sorry, the -- I am aware, and I was part of
17  the board discussion when we decided to put
18  all of the companies into bankruptcy.
19      Q.    Is it your understanding that
20  every company that was a member of the EFH
21  corporate family was put into bankruptcy?
22      A.    I don't have an understanding of
23  every company.
24      Q.    So you don't know in fact,
25  whether every company was put into

1              Williamson

2  bankruptcy?

3      A.   I don't know that.  I know that

4  we had -- there were debtors at the -- on

5  the E-side, at the parent company side and

6  on the T-side, and all three of those

7  estates were entered into bankruptcy.

8      Q.   What role, if any, did you and

9  the board play in the decision to seek the

10 bar date for what the court is calling

11 unmanifested asbestos claimants?

12     A.   I don't believe that's a role of

13 the board.  So I didn't have anything to do

14 with that.

15     Q.   Whose decision was that?

16     A.   I assumed --

17          MR. SNOO:  Do you know?

18     A.   I don't know.

19     Q.   Who had authority to act on

20 behalf of EFH in the bankruptcy litigation

21 without board approval?

22          MR. FIRESTEIN:  Objection, calls

23     for a legal conclusion.

24     A.   I don't believe anyone had

25 authority to act without oversight from the

1                    Williamson

2   responsibility of insuring that the

3   financial statements filed on the first day

4   were current and accurate?

5       A.   Which financial statements and as

6   of what date?

7       Q.   Well, as of the date of filing of

8   the statements with the court?

9            MR. ROGERS:  Objection to form.

10           MR. FIRESTEIN:  Join.

11      A.   I am sorry, sir, without seeing

12  what you are looking at or having a

13  specific title of the financial statements,

14  I'm at a loss to help you.

15      Q.   Well, are you familiar, these

16  have schedules attached to them.  A summary

17  of schedules and then a list of them.  A is

18  real property, B is personal property, et

19  cetera.  Are you familiar with those forms?

20      A.   No, sir.

21           MR. ROGERS:  Just objection to

22      form.

23      Q.   Can you answer the pending

24  question?

25           MR. ROGERS: She did.  The answer

1                     Williamson

2      was no.

3           MR. FIRESTEIN:  She answered no.

4      Q.   Have you ever heard of a company

5 called EECI?

6      A.   No.

7      Q.   Have you ever heard of a company

8 called EEC Holdings, Inc.?

9      A.   No.

10     Q.   Have you ever heard of a company

11 called LSGT Sacroc, S-A-C-R-O-C, Inc.?

12     A.   No, sir.

13     Q.   Have you ever heard of a company

14 called Humphries and Glass Co. Limited of

15 the UK?

16     A.   No, sir.

17     Q.   Have you ever heard of a company

18 called LSGT Gas Company, Inc.?

19     A.   No, sir.

20     Q.   Are you aware of any intercompany

21 claims within the E-side alone?

22          MR. ROGERS:  Objection to form.

23          MR. FIRESTEIN:  I'll join that.

24     A.   Could you read back or state the

25 question again, please, sir?

1                    Williamson

2          MR. KAZAN:  Let me, let me

3     rephrase it.

4      Q.    As part of the current proposed

5  resolution of this case, there is a

6  settlement of claims between the E-side and

7  the T-side.  Is that correct?

8          MR. FIRESTEIN:  Misstates her

9     earlier testimony.

10     A.    Yes, I'm not comfortable with

11 that characterization.

12     Q.    What is your understanding of

13 that arrangement?

14     A.    There are, there are

15 interdebtor -- there are interdebtor claims

16 and there are intercreditor claims.

17     Q.    OK.  And this is between entities

18 on the E-side and entities on the T-side?

19     A.    Not exactly.

20     Q.    OK.  Let me put that agreement

21 aside.

22          I'm asking you whether you are

23 aware of any claims that are internal to

24 the companies on the E-side, that is to

25 say, an intercompany claim between one