# EXHIBIT 7

Page 1

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

--------------------------------------x

In Re:

Energy Future Holdings Corporation,

et al.,

                        Debtors.


Chapter 11

Case No. 14-10979

Jointly Administered

--------------------------------------x




          DEPOSITION OF PAUL KEGLEVIC

              New York, New York

               October 1, 2015



***This transcript contains a portion that

  has been designated Highly Confidential***




Reported by: MARY F. BOWMAN, RPR, CRR

JOB NO: 98276

1                       Keglevic

2        A.    Yes, I believe the E-side has

3    been consistent at 10.875.

4        Q.    And you know, you understand that

5    there was some comparable procedure in

6    place before the merger and the buyout but

7    it may not be something that you are

8    personally conversant with, is that

9    correct?

10       A.    Yes, I'm not aware of what they

11   did before the merger.  I'm not surprised

12   that they have a similar system, but I

13   don't have any specific knowledge on the

14   system prior to the merger.

15       Q.    Do you know that a process like

16   that requiring a credit debit of interest

17   is generally required to comply with IRS

18   rules so that they don't start treating

19   these as investments, but instead as a

20   commercial transaction, is that correct?

21            MR. McKANE:  I will object to the

22       form, seeking legal conclusion.

23            Go ahead.

24       A.    I'm not aware of the specific IRS

25   regulation or if there is any.  But I

```
 1                      Keglevic

 2    believe our treatment, including interest,

 3    at reasonable arm's length rates result in

 4    these amounts being treated as loans and

 5    not investments.

 6         Q.    Now, I want to talk to you about

 7    four of the subsidiaries in particular.

 8    Can you tell me with respect to the

 9    following when the last time was that you

10    reviewed any portion of their SOFAs.

11    First, EECI Inc.?

12         A.    I don't remember the exact date,

13    but I do remember generally the financial

14    condition of the -- of EECI Inc. which I

15    think is under EEC which is under LGST

16    because of the nature of the liabilities

17    that they contain associated with asbestos.

18    So I'm generally familiar with the

19    structure.

20         Q.    Those are the liabilities that

21    management has estimated to be somewhere

22    under or around 50 million dollars, present

23    value, is that correct?

24              MR. McKANE:   Objection, form.

25              Go ahead.
```

```
 1                     Keglevic

 2        A.     No.   We estimate the asbestos

 3    liabilities on our books and records of

 4    those companies in total to be about 14

 5    million.

 6        Q.     OK.   Let me seek some

 7    clarification.   I've seen some documents

 8    referring to other -- let me see if I can

 9    find the exact term, other --

10        A.     Post-employment benefits?

11        Q.     Post-employment benefit, right,

12    and asbestos as totaling something around

13    50 million?

14        A.     That is correct.   You may have

15    seen that in connection with the bid

16    procedures and specifically some

17    interchange we had with NextEra.

18             Those are both obligations that

19    sit somewhere at the E-side of the company,

20    the 14 million are within the entities that

21    we'll, I'm sure, talk about in a bit.   But

22    the 38 reside in other places, I think.

23             But in total, that's right, I

24    think the booked amounts for those two in

25    total was 50 million dollars.
```

 1                      Keglevic

 2        Q.    And the majority of that was

 3   non-asbestos as I understand you?

 4        A.    Yes, that's correct, sir.  I

 5   think the 14 is the best of my recollection

 6   was the asbestos part of the 50.

 7        Q.    OK, and the EECI SOFA lists its

 8   assets essentially at around 84 million

 9   dollars.  Do you recall that?

10        A.    Yes, that is -- I knew it was --

11   I knew it was 80 something.  So I'll accept

12   that as the right amount and that is --

13   just to be clear, that asset is an

14   intercompany receivable from EFH.

15        Q.    2011, actually on the books, it

16   says, "Receivable from LSGT Gas Company,"

17   is it not?

18        A.    I am sorry, it is from LSGT Gas

19   Company and then the other -- LSGT Gas

20   Company has a receivable in turn of about

21   560 million from EFH if I am not mistaken.

22        Q.    Exactly right.

23              Now, how long has that receivable

24   been carried at this 84 million dollars?

25        A.    I am sorry, sir, I don't remember

```
 1                    Keglevic

 2    how long that existed and that accrues

 3    interest, so it changes as time goes by.

 4              I would say, generally speaking,

 5    it is whenever the assets associated with

 6    that entity are liquidated and the cash was

 7    sent up to EFH.  We consider that company

 8    together with the other, what I'll call the

 9    other -- I have to count, three other

10    asbestos-related entities.  We consider all

11    those as discontinued operations.  So as

12    they became discontinued and we liquidated

13    the assets, any cash we received from them

14    went up to the parent.  But the liabilities

15    remained at those entities.  I hope that is

16    consistent with your understanding.

17       Q.    OK, when you say liabilities, you

18    mean the account receivable still on the

19    books and it is a liability of the parent

20    to that subsidiary?

21       A.    No, the assets of these entities

22    are based on a receivable either from, as

23    you suggest, EECI comes from LSGT.  The

24    only liabilities on EECI is the asbestos

25    liability.  So the 86 is an asset and the
```

1                      Keglevic

2            MR. KAZAN:  That would be very

3        useful because we haven't been able to

4        find it yet.

5        Q.    Is there anything in the SOFAs

6    that reflect the sale of the assets of

7    Humphries & Glascow?

8            MR. McKANE:  Objection to form,

9        overbroad.

10       A.    I don't think -- well, I know the

11   SOFAs did not include Humphries & Glascow

12   as an entity because it is not a debtor.

13   As you mentioned, there may be still a

14   receivable on somebody else's books, so --

15   I would think not, but I'm not perfectly

16   sure, sir.

17       Q.    OK.  You said you think you still

18   own the stock in Humphries & Glascow which

19   is in dissolution or administration in

20   England.  Do you know when the assets of

21   that company were sold?

22       A.    I don't.  It was -- I believe --

23   well, I'm almost positive it was before my

24   time with the company.

25       Q.    Well, there are published reports

Page 327

 1                      Keglevic

 2    that Jacobs Construction announced that it

 3    bought the company in 1993.  Do you know

 4    who would have records at your end with

 5    respect to that transaction?

 6        A.    I would -- I would say our

 7    controller is the best source of historical

 8    records of accounting transactions.

 9        Q.    In your opinion -- and I don't

10    know if this is something you're entitled

11    or allowed to have an opinion about -- but

12    is EECI insolvent?

13            MR. McKANE:  I will object to the

14        form of the question, but allow him to

15        answer.

16        A.    I think that the question turns

17    on the recoverability of the intercompany

18    receivables, and as it is our intention in

19    this case to have reorganized E -- to have

20    the liabilities travel with reorganized E

21    and the -- I would say no, they are not

22    insolvent.

23        Q.    And the same would be true of EEC

24    Holdings and LSGT Sacroc, is that correct?

25        A.    That's correct.

```
 1                      Keglevic

 2        Q.    And in your proposed

 3   reorganization, what happens to this

 4   approximately billion dollars in account

 5   receivables that these three companies

 6   hold?

 7        A.    Well, what has happened to date

 8   is the parent has funded all of the cash

 9   needs of those entities in satisfaction of

10   any liabilities they have.  Once those cash

11   needs are satisfied, if -- you know, and

12   there are no longer any liabilities

13   associated with those entities, I would

14   assume the receivable would be canceled and

15   eliminated in consolidation with the

16   reorganized E.

17              But as I said, those claims

18   against those entities have not been

19   resolved or released as part of our

20   proposed bankruptcy.  So effectively, the

21   ability to pay to recover those receivables

22   to the extent needed will be assumed by the

23   new entity, reorganized EFH, which will

24   begin with a substantial amount of equity,

25   billions -- I think today we calculated 8
```

Page 329

 1                        Keglevic

 2    and a half billion dollars in my first

 3    round of questioning and also would expect

 4    that entity to be an investment grade

 5    company.

 6             So I think the amount of credit

 7    support for the asbestos or other claims of

 8    that, of those entities is well secured.

 9        Q.    What liabilities does EECI have

10    other than for asbestos and these other

11    post -- other benefits that you mentioned

12    that you calculated around 50 million?

13             MR. McKANE:   Objection to form.

14        A.    I don't have the schedules in

15    front of me, but my understanding is of the

16    group of companies we talked about, that

17    is, those are the total liabilities.   There

18    aren't any additional ones.

19        Q.    Would the same be true of EEC

20    Holdings?

21        A.    Yes, sir.

22        Q.    And the Sacroc as well?

23        A.    Yes, sir.

24        Q.    You do not view these companies

25    as creditors in this bankruptcy, but rather

Page 330

```
 1                      Keglevic

 2    as sources of the elimination of these

 3    receivables as part of the resolution of

 4    the bankruptcy, is that correct?

 5              MR. McKANE:  Objection to form.

 6              Go ahead.

 7         A.    I think I generally agree with

 8    you, but can I say it another way, that the

 9    claims that those entities have against EFH

10    are not released as part of any part of the

11    bankruptcy, and therefore, will continue,

12    will travel, as I like to call it, with the

13    reorganized EFH.  And, therefore, that will

14    be the source of any required funding of

15    the 50 million dollars or whatever that

16    liability -- those liabilities turn out to

17    be.

18         Q.    No matter how large those

19    liabilities turn out to be?

20         A.    No matter how large those

21    liabilities turn out to be.

22         Q.    When we are told that the plan

23    will pay all E-side creditors in full, you

24    are not including these three subsidiaries

25    collecting their accounts receivables in
```

Page 334

1                           Keglevic

2    place.

3        Q.     All right.  And I may have asked

4    you this, do you know who has access to the

5    financial records that predate the LBO from

6    which we could determine what, if any,

7    account receivables were on the books of

8    these three companies we have been talking

9    about or the four companies we have been

10   talking about?

11       A.     I did attempt to answer that.

12   Let me answer it again.  It would be our

13   controller, Terry Nutt.

14       Q.     He is the inheriter of the old

15   records?

16       A.     Yes, as you know, general ledgers

17   are perpetual.  They don't have a start

18   date.  From whenever the company started

19   until now, it should have the accumulation

20   of all the information.

21       Q.     I guess one last question, let me

22   ask it in layman's terms, you have told me

23   that the three companies, EEC Holdings,

24   EECI and Sacroc hold approximately a

25   billion dollars in receivables from LSGT

```
 1                     Keglevic

 2   Gas.  It has got 560 million in receivables

 3   from the parent.  Where is the other 400

 4   plus million?

 5             MR. McKANE:  Objection to form.

 6       A.    I don't know -- the -- I'd have

 7   to go through the historical records to see

 8   how these numbers came into being.  I don't

 9   know the answer.  But the -- even if you

10   only believe that the receivable from EFH

11   of 560 million represented the entire pool

12   is all the other companies are subsidiaries

13   of LSGT Gas, that that amount is

14   substantially above the credit support

15   needed to resolve, I think, in any

16   reasonable scenario future asbestos claims.

17       Q.    But you don't really have any

18   accurate appraisal or estimate of what

19   those liabilities are over the next 30 or

20   40 or 50 years, is that correct?

21             MR. McKANE:  Objection to form.

22       A.    We -- the estimate we have is

23   reflected on our books and records that is

24   audited by our outside accounting firm.

25   I'm relying on the fact if they thought it
```

Page 336

 1                         Keglevic

 2     was materially understated, they would have

 3     been required to cause us to make an

 4     adjustment.  That's not to say that it is

 5     perfectly --

 6          Q.    And all of these numbers and

 7     receivables and payables we are talking

 8     about disappear in the consolidated

 9     financial statements filed, isn't that

10     correct?

11          A.    They do, but the asbestos

12     liability does not and that's the point

13     that you raised with me is to the accuracy

14     of the 14.

15               MR. McKANE:  Let him finish his

16          answer.

17          Q.    Have you done anything about

18     making an appraisal of the asbestos

19     liabilities on the T-side in this case?

20          A.    We make an accrual in accordance

21     with generally accepted accounting

22     principles for asbestos liability, asserted

23     claims and unasserted claims on any company

24     that has those exposures.

25               But we have not, to my knowledge,