# EXHIBIT 12

Page 1

1          CONFIDENTIAL - MICHAEL A. HUNTER
2   UNITED STATES BANKRUPTCY COURT
3   FOR THE DISTRICT OF DELAWARE
    ------------------------------------------x
4   In Re:
5   Energy Future Holdings Corporation, et.,
6                   Debtors.
7   Chapter 11
8   Case No. 14-10979
9   Jointly Administered
10  ------------------------------------------x
11
12            * * *CONFIDENTIAL* * *
13        DEPOSITION OF MICHAEL A. HUNTER
14              New York, New York
15              October 19, 2016
16
17
18
19
20
21
22
23  Reported by:
24  KATHY S. KLEPFER, RMR, RPR, CRR, CLR
25  JOB NO. 114065

Page 2

1       CONFIDENTIAL - MICHAEL A. HUNTER
2              October 19, 2016
3
4       Deposition of MICHAEL A. HUNTER, held
5   at Kirkland & Ellis, LLP, 601 Lexington
6   Avenue, New York, New York, before Kathy
7   S. Klepfer, a Registered Professional
8   Reporter, Registered Merit Reporter,
9   Certified Realtime Reporter, Certified
10  Livenote Reporter, and Notary Public of
11  the State of New York.

Page 3

1       CONFIDENTIAL - MICHAEL A. HUNTER
2            A P P E A R A N C E S:
3
4   KIRKLAND & ELLIS
5   Attorneys for the Debtors
6       300 North LaSalle
7       Chicago, IL  60654
8   BY:  LISA ESAYIAN, ESQ.
9       601 Lexington Avenue
10      New York, NY  10022
11  BY:  McCLAIN THOMPSON, ESQ.
12
13  AKIN GUMP STRAUSS HAUER & FELD
14  Attorneys for UMB Bank, As Indenture Trustee for the
15  Unsecured 11.25 Percent/12.25 Percent Senior Toggle
16  Notes Due 2018
17      One Bryant Park
18      New York, NY  10036
19  BY:  WILLIAM MONGAN, ESQ.

Page 4

1       CONFIDENTIAL - MICHAEL A. HUNTER
2        A P P E A R A N C E S:  (Cont'd.)
3
4   NIXON PEABODY
5   Attorneys for American Stock Transfer as
6   Indenture Trustee at EFH
7       100 Summer Street
8       Boston, MA  02110
9   BY:  RICHARD PEDONE, ESQ.
10
11  CHADBOURNE & PARKE
12  Attorneys for NextEra
13      1301 Avenue of the Americas
14      New York, NY  10019
15  BY:  MARC ASHLEY, ESQ.
16      CHRISTY RIVERA, ESQ.
17      ERIC DAUCHER, ESQ.
18
19  SULLIVAN & CROMWELL
20  Attorneys for EFH Committee
21      125 Broad Street
22      New York, NY  10004
23  BY:  ALEXA KRANZLEY, ESQ.

Page 5

1       CONFIDENTIAL - MICHAEL A. HUNTER
2
3
4        A P P E A R A N C E S:  (Cont'd.)
5
6   SHEARMAN & STERLING
7   Attorneys for Deutsche Bank, EFIH First Lien
8   DIP Agent
9       599 Lexington Avenue
10      New York, NY  10022
11  BY:  RONNI ARNOLD, ESQ.
12
13  KAZAN, McCLAIN, SATTERLEY & GREENWOOD
14  Attorneys for Shirley Fenicle individually
15  and as successor-in-interest to the estate of
16  George Fenicle
17      55 Harrison Street
18      Oakland, California  94607
19  BY:  STEVEN KAZAN, ESQ.  (By videoconference)
20
21  ROBERT B. SENDLER
22  Vice President & Chief Litigation Counsel
23  NextEra Energy, Inc.
24      700 Universe Boulevard
25      Juno Beach, FL  33408

Page 10

CONFIDENTIAL - MICHAEL A. HUNTER

me what your involvement has been with respect to these receivables?

A. I really have not had any involvement with the accounts receivables.

Q. What do you know about them?

A. I know that they apparently exist, but that's about it.

Q. Have you ever done any investigation or research into those receivables related to the amount or changes in them over time?

A. No, I have not.

Q. In preparation for this deposition and with respect to your designation that we're talking about, have you reviewed any documents or materials?

A. Yes.

Q. Tell me what you have reviewed, please.

A. Is this any documents or materials, or relative to receivables?

Q. Well, let's say any, and then we'll break it down once you give me the overall scope.

A. Okay. I reviewed the claims history

Page 11

CONFIDENTIAL - MICHAEL A. HUNTER

spreadsheet that I maintain and I reviewed the proof of claims spreadsheet that Epic maintains. I reviewed an excerpt from the Bar Date Order dealing with how the proofs of claim are assigned to debtor entities, and I think I reviewed -- well, excuse me. I did review a EECI litigation schedule that was filed on the petition date.

Q. Okay. And the claims history spreadsheet that you mentioned, could you tell me how big it is, where it is, what's on it, in general terms?

MS. ESAYIAN: Object to the form of the question.

A. It is an Excel spreadsheet that records -- how big it is, 14, 15 pages maybe. It records claim data.

Q. Is this a spreadsheet of claims filed in courts and various places that existed at the time of the petition filing?

A. Yes.

MS. ESAYIAN: Mr. Kazan, if this is any help, just so you know, we produced it last week, I think it was Thursday or

Page 12

CONFIDENTIAL - MICHAEL A. HUNTER

Friday, just in case you're looking for it.

MR. KAZAN: Okay. Well, we'll go look for it. With luck, we'll be able to find it, which would be an unusual event in our office, but that's okay.

MS. ESAYIAN: It was in a small grouping of documents, so it shouldn't be too hard to find.

MR. KAZAN: All right. If we can't, I'll give somebody a call or e-mail.

MS. ESAYIAN: Great.

BY MR. KAZAN:

Q. Now, by the way, are you by training a lawyer or accountant?

A. No, sir.

Q. How long have you been involved in managing asbestos litigation for the companies?

A. Since about 1997.

Q. You said you've testified in a courtroom before in an asbestos case?

A. Not in an asbestos case, but in several personal injury -- non-asbestos personal injury cases.

Q. Okay. In your tenure with the

Page 13

CONFIDENTIAL - MICHAEL A. HUNTER

company, have any asbestos cases gone to trial?

A. No, sir.

Q. Okay. Have you ever been involved in an analysis of the underlying facts in those cases related to the creation of the alleged asbestos exposures?

MS. ESAYIAN: Objection to the form of the question. It's vague and unclear.

A. What do you mean by analysis of the facts?

Q. Well, for example, when you have handle these cases, you've seen -- I presume it's on your spreadsheet -- the claimant's date of birth and claim diagnosis, things relating to that claimant.

My question is instead focused on the creation of the asbestos exposure that people alleged was the basis of their claims. Have you ever looked into, for example, the operations of the EECI predecessors, where they did their work, what they did, what records existed of that work, matters of that nature?

MS. ESAYIAN: Objection to the form of the question. Compound. But you can answer

Page 14

1  CONFIDENTIAL - MICHAEL A. HUNTER
2  if you can.
3     A.  Well, to a small extent, but mostly I
4  leave that to our counsel.
5     Q.  And I saw from some documents at least
6  that Hawkins Parnell has been national
7  coordinating counsel for some period of time, is
8  that your recollection?
9     A.  Acting national coordinating counsel,
10 yes, sir.  They haven't been officially
11 designated that, but unofficially, they are.
12    Q.  How long have they had that unofficial
13 role?
14    A.  About five years.
15    Q.  Now, again, with respect to the
16 receivables, do you have any knowledge about the
17 origin of those receivables?
18    A.  No, sir, I really don't.
19    Q.  Do you have any knowledge about the
20 attribution of interest credited to those
21 receivables over time through the intercompany
22 money pools or other arrangements?
23    A.  No, sir, I don't.
24    Q.  Have you ever seen any records or
25 ledgers or printouts relating to the size of

Page 15

1  CONFIDENTIAL - MICHAEL A. HUNTER
2  those receivables?
3     A.  No, sir.
4     Q.  The other item on which you were
5  designated was number 5:  Documents related to
6  the tabulation of the asbestos claims and the
7  number of those claims being defended.
8        Can you tell me in general what your
9  responsibility is with respect to that item?
10    A.  Can you please elaborate what you mean
11 by tabulation?
12    Q.  Well, I guess I'm meaning collection
13 of information, creating charts, tables,
14 spreadsheets, dealing with the asbestos claims
15 that were being defended before the bar date as
16 well as the proofs of claims that have come in
17 since that time.
18    A.  Okay.  For claims that were pending at
19 the bar date, I have maintained the claims
20 spreadsheet that I referred to previously, and
21 it collects certain data from the claims, such
22 as the injured party's first and last name; the
23 disease alleged, if it's mentioned in the
24 pleadings; the plaintiff's counsel is
25 identified; and then there's columns for defense

Page 16

1  CONFIDENTIAL - MICHAEL A. HUNTER
2  and indemnity costs also.
3     Q.  And did your office maintain physical
4  files on those individual claims?
5     A.  Yes.
6     Q.  You collect the, for example, the
7  complaint, any answers to interrogatories,
8  case-related correspondence?
9     A.  For example, that's the type of thing
10 we kept, yes.
11    Q.  And do those files still exist?
12    A.  Some do.
13    Q.  Where are they located?
14    A.  Some -- the most recent ones -- well,
15 the pending ones are at Energy Plaza, our
16 offices.  Closed ones would be moved to offsite
17 storage.
18    Q.  Is there an offsite warehouse where
19 records are kept?
20    A.  There is.
21    Q.  And where is that located?
22    A.  I personally don't know.  I presume --
23 Dallas, I believe.
24    Q.  Okay.  Is it a separate facility or
25 building, or does the company use a record

Page 17

1  CONFIDENTIAL - MICHAEL A. HUNTER
2  storage company like Iron Mountain or one of
3  those?
4     A.  It uses a record service company,
5  MasterCraft or Pierce Leahy or something like
6  that.
7     Q.  Okay.  And you mentioned that Epic has
8  kept a file or spreadsheet on the proofs of
9  claims that have been submitted?
10    A.  Yes, sir.
11    Q.  I've heard various numbers, but can
12 you give me, to your best recollection, the
13 approximate total numbers of proofs of claim
14 received as a result of the bar date notices?
15    A.  With respect to the E-side, it's about
16 27,775.
17    Q.  Okay.  And of that, what percentage or
18 number is claimed to be manifested claims?
19    A.  My recollection is it's 17,500,
20 approximately.
21    Q.  And then the balance, 10,000-plus,
22 would be unmanifested claims?
23    A.  Yes, sir.
24    Q.  Have you yourself actually looked at
25 any of these claims?

Page 26

CONFIDENTIAL - MICHAEL A. HUNTER

1
2  is that correct?
3      A.   Well, based on the advice of counsel,
4  it would be.
5      Q.   Okay.  Were you involved in
6  negotiations to settle any of the asbestos
7  cases?
8      A.   Yes, sir.
9      Q.   Was it ultimately your decision on
10  whether to settle and for how much?
11      A.   No, sir.
12      Q.   Who had the ultimate decision-making
13  role on those cases?
14      A.   It would be the people I reported to.
15      Q.   Would you make recommendations on how
16  cases should be resolved?
17      A.   Sometimes, yes.
18      Q.   And who made the ultimate decision?
19      A.   Well, the people I reported to over
20  the years.
21      Q.   And what position did you report to?
22      A.   Well, it has varied over the years.
23      Q.   Okay.  Well, I didn't want to get into
24  individuals at this point, but was this within
25  the General Counsel's Office or some other level

Page 27

CONFIDENTIAL - MICHAEL A. HUNTER

1
2  of management?
3      A.   The, yes, the General Counsel's --
4  well, actually, the AGC for litigation and also
5  the general counsel previously and --
6      Q.   All right.
7      A.   -- and the director of claims when I
8  was -- before I was director of claims.
9      Q.   Have you been asked to evaluate any of
10  the proofs of claims submitted in this
11  bankruptcy with respect to their potential
12  litigation value?
13      A.   Not with respect -- no, I haven't.
14      Q.   As part of your job, did you review
15  medical records that were submitted in
16  individual cases, or did you just rely on
17  outside counsel for that?
18      A.   Sometimes I would look at them.  For
19  example, read a pathology report.
20      Q.   Was that more for informational
21  purposes or did you -- were you charged with
22  forming opinions as part of the evaluation?
23      A.   Combined.  I mean, I would look at a
24  pathology report to be sure it included
25  mesothelioma, for example, as the diagnosis.

Page 28

CONFIDENTIAL - MICHAEL A. HUNTER

1
2      Q.   Okay.
3      MR. KAZAN:  All right.  Well, I think
4  those are the only questions I have.  Thank
5  you.
6      MS. ESAYIAN:  Anyone else?  Going
7  once.  Going twice.
8      Thank you very much.  We'll reserve
9  the right to review and sign.
10      THE WITNESS:  Thank you, Mr. Kazan.
11      MR. KAZAN:  Thank you, sir.
12      (Time Noted: 11:05 a.m.)
13           oOo
14
15
16
17      _____
18      MICHAEL A. HUNTER
19
20  Subscribed and sworn to
21  before me this     day
22  of      2016.
23  _____
24
25

Page 29

CONFIDENTIAL - MICHAEL A. HUNTER

1
2
3           CERTIFICATE
4  STATE OF NEW YORK )
            : ss
5  COUNTY OF NEW YORK)
6      I, Kathy S. Klepfer, a Registered
7  Merit Reporter and Notary Public within and
8  for the State of New York, do hereby
9  certify:
10      That MICHAEL A. HUNTER, the witness
11  whose deposition is herein before set forth,
12  was duly sworn by me and that such
13  deposition is a true record of the testimony
14  given by such witness.
15      I further certify that I am not
16  related to any of the parties to this action
17  by blood or marriage and that I am in no way
18  interested in the outcome of this matter.
19      In witness whereof, I have hereunto
20  set my hand this 19th day of October 2016.
21
22
23
24      _____
25      KATHY S. KLEPFER, RPR, RMR, CRR, CLR