**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ------------------------------------------------------------ x | | |
| In re: | : | Chapter 11 |
| | : | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | : | Case No. 14-10979 (CSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| ------------------------------------------------------------ x | | **Related to Docket No. 10446** |

**EFIH SECOND LIEN INDENTURE TRUSTEE'S
OBJECTION TO DEBTORS' DISCLOSURE STATEMENT**

Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in its capacity as indenture trustee (the "**EFIH Second Lien Trustee**") for the EFIH Second Lien notes (the "**EFIH Second Lien Notes**" and the holders thereof, the "**EFIH Second Lien Noteholders**") issued by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (collectively, "**EFIH**") pursuant to the Indenture dated as of April 25, 2011 (together with all supplements, amendments, and exhibits, the "**Indenture**") hereby submits this objection (the "**Objection**") to the debtors' (the "**Debtors**") *Disclosure Statement for the Sixth Amended Joint Plan of Reorganization* [Docket No. 10446] (the "**Disclosure Statement**").[1]  In support of this Objection, the EFIH Second Lien Trustee respectfully submits the following:

**PRELIMINARY STATEMENT**

1. On November 17, 2016, the Third Circuit Court of Appeals ruled that the EFIH First Lien Noteholders and the EFIH Second Lien Noteholders were entitled to Makewhole Claims under their respective indentures. Recognizing that, notwithstanding this ruling, there are

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Disclosure Statement and the Sixth Amended Plan of Reorganization (the "**Plan**") filed on December 28, 2016 [Docket No. 10453].

some minor issues relating to the specific amount of the Makewhole Claims, a subset of the EFIH First Lien Noteholders and the EFIH Second Lien Noteholders engaged in settlement discussions with the Debtors to negotiate a path forward that would enable the Debtors to finally emerge from chapter 11. On December 19, the Debtors filed an 8-K announcing a settlement in principle on the Makewhole Claims (the "**Makewhole Settlements**") and, for the past two weeks, the parties have been negotiating definitive documentation to implement the settlement (i.e., a plan support agreement and amended plan).

2. Notwithstanding the public disclosure of the Makewhole Settlements and the continued negotiation of the settlement documentation, one week prior to the hearing on the Disclosure Statement, the Debtors filed a revised Disclosure Statement and Plan that, instead of simply incorporating the Makewhole Settlements, gives the Debtors a new option: if the EFIH PIK Group can come up with (as of some undetermined date) 66 2/3% of the entire class of EFIH Unsecured Noteholders, the Debtors will abandon the Makewhole Settlements and instead pursue a litigation plan against the EFIH First and Second Lien Makewhole Claims (notwithstanding the Third Circuit's ruling).

3. As an initial matter, the Debtors' new approach suffers from (at least) one fatal flaw: the EFIH Second Lien Noteholders no longer intend to lock themselves into a plan support agreement that does nothing more than give the Debtors a free option to jettison a negotiated settlement in favor of frivolous litigation. The ad hoc group of EFIH Second Lien Noteholders negotiated the EFIH Secured Settlement to facilitate a consensual Plan (thereby resolving an issue that has been hanging over these cases since day one) and provide consenting PIK Holders with additional value to which, following the Third Circuit's decision, they are not entitled. The Debtors are willing to throw this settlement away simply because the EFIH PIK Group,

desperately seeking to create negotiating leverage, decides it is a good idea. Accordingly, as drafted, the Plan and Disclosure Statement contain an option that is no longer available and must be corrected. Moreover, given that, as of the date hereof, the Debtors have not disclosed whether the EFIH PIK Group has managed to come up with the necessary votes for the Debtors to move forward with the PIK Proposal, it is unclear whether the Debtors actually have any Plan that they can move forward on. The Debtors' desire for optionality is not a replacement for the requirement that the Disclosure Statement adequately describe what the Debtors intend to do under all circumstances.

4.      The Disclosure Statement also fails to provide adequate information regarding the amount and treatment of certain of the EFIH Second Lien Note Claims under the PIK Proposal. For example, the Debtors have not detailed with any specificity how much they intend to place in the EFIH Claims Reserve (and, as described below, the Debtors clearly have not accounted for certain additional claims of the EFIH Second Lien Notes). The Disclosure Statement also does not give any information as to what "litigation claims" remain as to the Makewhole Claims (notwithstanding the Third Circuit's ruling) or what the timeframe is for such litigation. Absent disclosure of these basic facts, the Disclosure Statement cannot be approved.[2]

5.      Finally, the Debtors must fix other infirmities in the Disclosure Statement and proposed Order prior to the hearing, including the Voting Record Date and filing the form of the Order that seeks to solicit the EFIH Second Lien Noteholders and the corresponding ballots.

---

[2] The EFIH Second Lien Trustee reserves all rights in connection with potential objections to confirmation of the Plan.

3

**OBJECTION**

I. **The Disclosure Statement Lacks Adequate Information and Should Not be Approved**

6. A disclosure statement must contain "adequate information," or "information of a kind, and in sufficient detail . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan[.]" 11 U.S.C. § 1125(a)(1). At a minimum, a "disclosure statement should provide the . . . creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distributions." *In re Radco Props., Inc.,* 402 B.R. 666, 683 (Bankr. E.D.N.C. 2009) (citations omitted).

7. Here, the Disclosure Statement is, at best, confusing in explaining how the Debtors intend to proceed with confirmation. The Disclosure Statement is also missing key information regarding the treatment of the EFIH Second Lien Note Claims under the PIK Proposal.

A. **Approval of the Disclosure Statement is Premature**

8. As drafted, the Disclosure Statement and Plan simply ignore reality. The Debtors claim to be pursuing two paths simultaneously: they will either move forward with the EFIH Secured Settlement or, if the EFIH PIK Group can muster the necessary votes, pivot to the PIK Proposal. This completely ignores the fact that the settlement with the EFIH Second Lien Noteholders ceased to exist once the Debtors announced the PIK Proposal. Moreover, because the EFIH PIK Group, as of the date hereof, has not delivered the necessary votes or executed a plan support agreement, the Debtors may actually not have *any* options available. This being the case, it would be impossible for any EFIH Second Lien Noteholder to know what they are actually voting for.

4

9. The Debtors appear to acknowledge the multitude of disclosure and solicitation problems with such a process and have informed the EFIH Second Lien Trustee that they intend to strip out one of the Plan structures prior to the Disclosure Statement Hearing. Until the Debtors have actually made such changes to the Plan and Disclosure Statement, however (with adequate time prior to the hearing for parties in interest to review the revised documents), the Court should not approve the Disclosure Statement.

B. **Deficiencies in Disclosure Regarding the PIK Proposal**

10. Assuming that the Debtors actually do move forward with the PIK Proposal, the Disclosure Statement only gives a cursory explanation of the treatment for the EFIH Second Lien Note Claims, which is not sufficient to satisfy §1125. The Disclosure Statement states that Debtors will pay the principal and accrued interest claims of the EFIH Second Lien Note Claims on the Effective Date (or as soon as reasonably practicable thereafter). However, as described in more detail below, the Disclosure Statement is missing specific information regarding, among other things: (i) the actual amount of the EFIH Claims Reserve, (ii) how the Debtors arrived at such amounts, or (iii) the timeline for litigation of the Makewhole Claims.[3] In fact, the Disclosure Statement does not even give any explanation as what "litigation claims" the EFIH PIK Group thinks it can pursue in light of the Third Circuit's ruling. In addition, the Disclosure Statement completely fails to account for certain additional claims the EFIH Second Lien Noteholders have against the Debtors.

---

[3] The EFIH Second Lien Trustee reserves all rights in connection with its objection to the Plan whether, in light of the Third Circuit's decision, it is even appropriate for the Debtors to establish a reserve as opposed to simply allowing the Makewhole Claims.

5

*Makewhole Claims*

11.     The Disclosure Statement must set forth the exact amount the Debtors have on their books and records for the Makewhole Claims and interest thereon and how they arrived at such calculations. The EFIH Second Lien Trustee and the EFIH Second Lien Noteholders must be afforded an opportunity to review these amounts and contest if they disagree.[4]

12.     The Disclosure Statement should also explain how the Debtors arrived at the conclusion that three years of interest is sufficient. The EFIH Second Lien Noteholders are secured creditors and cannot be forced to take any risk that they will not receive everything they are owed while junior creditors have received a distribution. The EFIH Second Lien Trustee may not agree with some of the litigation assumptions the Debtors and the EFIH PIK Group used in arriving at that timing and should not be forced to guess what other steps the Debtors or the future Plan Administrator Board (at the direction of the Makewhole Litigation Oversight Committee) may take in any litigation.

13.     The Disclosure Statement must also explain how and when the Debtors, the Plan Administrator Board and the Makewhole Litigation Oversight Committee intend to proceed with any further litigation on the Makewhole Claims and their expected timeline for such litigation.[5] Even with a full reserve of interest on the Makewhole Claims for multiple years, the EFIH Second Lien Noteholders may still be prejudiced by the delay in final resolution of the Makewhole Claims and are entitled to disclosure on the potential delay.[6] The EFIH Second Lien

---

[4] The ad hoc group of EFIH Second Lien Noteholders had tentatively agreed to certain numbers for the Makewhole Claims in the context of the EFIH Secured Settlement. The EFIH Second Lien Trustee and the ad hoc group of EFIH Second Lien Noteholders have always reserved rights on calculation of the claims in the non-settlement context.

[5] The Debtors petitioned the Third Circuit for a rehearing *en banc*. The EFIH Second Lien Trustee expects that the Third Circuit may rule on such rehearing petition prior to or shortly after the Disclosure Statement Hearing.

Noteholders received a favorable ruling from the Third Circuit and neither the Debtors nor the EFIH Unsecured Notes (who control the Makewhole Litigation Oversight Committee) should not be allowed to use delay as a future litigation tactic.

*Future Interest Claims and Indemnification Claims*

14. As described in multiple pleadings in this Court, the EFIH Second Lien Trustee and EFIH Second Lien Noteholders may have significant additional claims against the Debtors arising out of the Intercreditor Litigation, that have yet to be adjudicated (or even objected to by any party). The Intercreditor Litigation is currently pending decision before the District Court and will not be resolved prior to the expected Effective Date of the Plan (when the Debtors intend to pay the principal and unpaid interest claims for the EIH Second Lien Notes).[7] In accordance with the EFIH Second Lien Indenture, the EFIH Second Lien Trustee expects to hold back a portion of the distribution to the EFIH Second Lien Noteholders pending the final resolution of the Intercreditor Litigation. Because the EFIH Second Lien Noteholders will not have been "paid in full" (pursuant to the terms of the EFIH Second Lien Indenture) as a result of the holdback, the EFIH Second Lien Noteholders will continue to accrue interest at the contract rate on the amount held back (the "**Future Interest Claims**"). Given that the EFIH Second Lien Trustee will likely need to hold back the full amount of the EFIH First Lien Makewhole Claims as of the Effective Date plus interest for several years, the Future Interest Claims accruing on such holdback may be in the hundreds of millions of dollars.

---

[6] As set forth below, the EFIH Second Lien Trustee expects to take a holdback from the principal and interest distributions on account of the Intercreditor Litigation. The EFIH Second Lien Trustee believes that the Debtors are required to pay interest to the EFIH Second Lien Noteholders for any amounts held back by the EFIH Second Lien Trustee, but these claims are not currently specifically provided for in the Plan or Disclosure Statement.

[7] The Intercreditor Litigation is currently stayed before the District Court pending the Third Circuit's decision on the petition for rehearing *en banc*.

15.     In addition, the EFIH Second Lien Trustee is entitled to an indemnification claim for any losses it incurs as a result of performing its duties as trustee, including in defending the Makewhole Claims, the Intercreditor Litigation, or taking any actions with regard to distributions (the '**Trustee Indemnification Claims**").[8]

16.     Notwithstanding that the Plan provides that indemnification claims and "other claims" relating to the EFIH Second Lien Notes will be paid when Allowed (and the EFIH Second Lien Trustee specifically described these claims in its Objection to the Fourth Amended Plan as claims that must be accounted for), the current description of the EFIH Claims Reserve does not include a reserve for the Future Interest Claims and the Trustee Indemnification Claims and the Disclosure Statement does not explain another source of payment for these claims.

*Claims for Fees and Expenses*

17.     The Disclosure Statement explains that under the PIK Proposal, the fees and expense claims incurred by the EFIH Second Lien Trustee prior to the Effective Date will be paid in accordance with the Plan Supplement. There is now an inconsistency between the Plan Supplement, which appears to contemplate starting the fee review process after the Effective Date, and the Disclosure Statement and Plan, which provide that the approved fee review process will commence as soon as reasonably practicable following entry of the Confirmation Order. The Debtors should revise the Plan Supplement now to rectify any inconsistencies in the fee review process (and hopefully revise to address the other issues previously raised by the EFIH Second Lien Trustee in its objection to the Fourth Amended Plan).

18.     The post-Effective Date fees and expense claims of the EFIH Second Lien Trustee will be reserved for in the new EFIH Claims Reserve. However, it is unclear how much

---

[8] *See EFIH Second Lien Trustee's Objection to Debtors' Plan of Reorganization* [Docket No. 10156] for a further description of the Future Interest Claims and the Trustee Indemnification Claims.

the Debtors are reserving for these amounts and whether such amounts will be sufficient. The Disclosure Statement states that the reserve will include a good faith estimate, determined in consultation with the EFIH PIK Group (or in an amount ordered by the Bankruptcy Court), of the post-Effective Date fees that may be Allowed under the EFIH Second Lien Notes. Of course, it is odd to create a reserve for fees and expense claims of a secured indenture trustee (which must be paid under the Plan) without consulting with that trustee and its professionals, and the EFIH PIK Group should not be allowed to try and hamstring the EFIH Second Lien Noteholders by potentially underfunding the fee reserve. The EFIH Second Lien Trustee will incur fees and expenses in connection with defending any further objections to the Makewhole Claim as well as the Intercreditor Litigation. The Debtors should be required to disclose now what their good faith estimate is for such amounts so that the EFIH Second Lien Trustee is in a position to review and provide feedback or contest such amounts. Moreover, the Disclosure Statement does not explain the timing of payment for post-Effective Date fees and expenses.[9]

*EFIH Claims Reserve within the EFH/EFIH Distribution Account*

19.     The EFIH Second Lien Notes are only being given a lien on the EFIH Claims Reserve, not the broader EFH/EFIH Distribution Account (which includes a reserve for general administrative claims against the EFIH Debtors, the cost of winding down the EFIH Debtors and now the fees incurred by the Debtors, the Plan Administrator Board and the Makewhole Litigation Oversight Committee in litigating the Makewhole Claims).[10] The Debtors should be required to revise Exhibit M to the Plan Supplement (purporting to provide further detail on the EFH/EFIH Distribution Account) to explain with more specificity (i) what dollar amounts will

---

[9] This would not be the first time the Debtors and EFIH PIK Group have tried to use the non-payment of fees of the EFIH Second Lien Trustee as a litigation tactic.

[10] The EFIH Second Lien Trustee notes that in the Fifth Amended Plan filed on December 1, 2016 [ Docket No. 10290], the EFIH Second Lien Notes were being granted a lien on the EFH/EFIH Distribution Account.

9

be attributed to certain categories of claims in the EFH/EFIH Distribution Account, (ii) the rationale for such estimates, and (iii) what happens to any residual amounts in the EFH/EFIH Distribution Account.  The Disclosure Statement should further state the EFIH Second Lien Trustee's position that, other than any EFH Cash, the EFIH Second Lien Notes should at a minimum retain a lien on the entirety of the Merger Consideration flowing into the EFH/EFIH Distribution Account.

## II.    Voting Record Date

20.    The Disclosure Statement seeks to establish the Voting Record Date as December 28, 2016 (the same day they filed the revised Disclosure Statement which included the PIK Proposal).  Bankruptcy Rules 3017(d) and 3018(a) provide that the voting record date be the same day as approval of the Disclosure Statement, or another date fixed by the Court, "*for cause*, after notice and a hearing."  There is no reason to depart from the convention that the voting record date be the same date as approval of the Disclosure Statement, nor do the Debtors assert any "cause" to depart from this rule.

21.    As noted above, the EFIH Second Lien Trustee understands that despite how the Disclosure Statement and Plan is drafted, prior to the hearing on the Disclosure Statement the Debtors will choose which path they are pursuing (the EFIH Secured Settlement or the PIK Proposal) and revise the Plan and Disclosure Statement accordingly.  The creditors who are voting should be the ones who have the benefit of the final information included in the Disclosure Statement.[11]

---

[11] Prior to filing this Objection, the EFIH Second Lien Trustee requested that the Debtors change the Voting Record Date to be the same day as the hearing on the Disclosure Statement, assuming the Court orally approves the Disclosure Statement at that time.  The EFIH Second Lien Trustee understands that the Debtors have agreed to make this change but the EFIH Second Lien Trustee has not seen a revised Disclosure Statement Order or Disclosure Statement rectifying this issue.

**III.    Reservation of Rights**

22.    The EFIH Second Lien Trustee reserves all rights to assert any additional issues and objections after concluding its review of the current Disclosure Statement and the Plan (which were filed one day prior to filing this Objection) and after all necessary documents are filed. In particular, the Debtors have not filed a revised proposed Disclosure Statement Order (that solicits the EFIH Second Lien Notes) and related exhibits (including the ballots for the EFIH Second Lien Noteholders). The EFIH Second Lien Trustee reserves all rights to the extent the Plan and Disclosure Statement are substantively modified in advance of the Disclosure Statement hearing or parties raise new issues that may impact ultimate treatment of the EFIH Second Lien Notes.

**Conclusion**

WHEREFORE, for the reasons stated above, the EFIH Second Lien Trustee respectfully requests that the Court deny approval of the Disclosure Statement.

Dated:  December 29, 2016            PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones
(Bar No. 2436)
Robert J. Feinstein
(NY Bar No.  RF-2836)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email: ljones@ pszjlaw.com
            rfeinstein@ pszjlaw.com

*- and -*

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Thomas Moers Mayer
Gregory A. Horowitz
Joshua K. Brody
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100
Facsimile:   (212) 715-8000
Email: tmayer@kramerlevin.com
         ghorowitz@kramerlevin.com
         jbrody@kramerlevin.com

*- and -*

BRYAN CAVE LLP

Stephanie Wickouski
1290 Avenue of the Americas
New York, New York 10104-3300
Telephone: 212-541-1114
Facsimile: 212-904-0514
Email: stephanie.wickouski@bryancave.com

*Counsel to the EFIH Second Lien Trustee*