## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' OMNIBUS REPLY TO
## OBJECTIONS TO DISCLOSURE STATEMENT MOTION

Energy Future Holdings Corp. ("EFH Corp."), certain of its direct and indirect subsidiaries (together with EFH Corp., the "EFH Debtors"),[2] Energy Future Intermediate Holding Company LLC ("EFIH"), and EFIH Finance, Inc. (together with EFIH, the "EFIH Debtors," and together with the EFH Debtors, the "EFH/EFIH Debtors") file this reply (this "Reply") to the objections[3] filed to the *Motion of the EFH/EFIH Debtors For Entry of a Supplemental Order (A) Binding Holders of Claims and Interests to their Prior Ballots, Pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, (B) Approving the Revised EFH/EFIH Disclosure Statement, (C) Approving the Procedures and Timeline for the*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The other EFH Debtors are Ebasco Services of Canada Limited, EEC Holdings, Inc., EECI, Inc., EFH Australia (No. 2) Holdings Company, EFH Finance (No. 2) Holdings Company, EFH FS Holdings Company, EFH Renewables Company LLC, Generation Development Company LLC, LSGT Gas Company LLC, LSGT SACROC, Inc., NCA Development Company LLC, and TXU Receivables Company.

[3] The three objections (the "Objections" and, the objecting parties, the "Objectors") and the Debtors' specific responses to each are summarized in more detail in **Exhibit A** attached hereto (the "Objection Chart"). The Debtors' responses are incorporated to this Reply as though fully set forth herein.

*Limited Resolicitation of Votes on the Plan, and (D) Approving the Manner and Forms of Notice Related Thereto* [D.I. 10349] (the "Supplemental DS Motion").[4]  In support of this Reply and in further support of approval of the EFH/EFIH Disclosure Statement and entry of the Supplemental Order, the Debtors respectfully state as follows.

### Preliminary Statement

1.      Given the limited modifications that ultimately have been incorporated into the Plan since the Prior Plan Solicitation—and the limited scope of the effect those modifications have on the treatment of the EFH/EFIH Debtors' creditors—Class B3, Class B4, and Class B6 (together, the "Resolicitation Classes") are the only Classes of Impaired Claims that warrant resolicitation.[5]  The EFH/EFIH Disclosure Statement again meets the applicable standards for approval under the Bankruptcy Code and provides more than ample information to allow Holders of Claims in the Resolictiation Classes to make an informed judgment about the Plan.

2.      The few Objections filed to the EFH/EFIH Disclosure Statement fall into two categories: (a) parties who are being paid in full, in Cash, with full preservation of their appellate rights, and post-EFH Effective Date Liens on a multi-billion dollar escrow (the size and duration of which will be addressed at the Confirmation Hearing); and (b) sophisticated parties who previously voted with full awareness that the Makewhole Opinion could adversely affect their recoveries, and who are seeking a "second bite at the apple" now that the Makewhole Claims

---

[4] Contemporaneously herewith, the Debtors filed the *Disclosure Statement for the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* (the "EFH/EFIH Disclosure Statement") and the *Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* (the "Plan").  Capitalized terms used but not defined herein shall have the meanings ascribed to them as set forth in the Supplemental DS Motion, the EFH/EFIH Disclosure Statement, or the Plan, as applicable.

[5] As previously disclosed, though the Supplemental DS Motion requested authorization to resolicit Class B6 only, the EFH/EFIH Debtors are now requesting authorization to include Class B3 and Class B4 in the Limited Resolicitation.

landscape on these chapter 11 cases has shifted—as the EFH/EFIH Debtors always warned it could.[6]    The Court should overrule the Objections and approve the EFH/EFIH Disclosure Statement under section 1125 of the Bankruptcy Code.

3.    As a threshold matter, the EFIH First Lien Notes Trustee's and EFIH Second Lien Notes Trustee's Objections (together, the "EFIH Secured Creditor Objections") are borne out of a deep frustration over the EFH/EFIH Debtors' fiduciary duty to explore all viable options for maximizing stakeholder recovery and, above all else, preserving the Merger transaction with NextEra on the timeline approved by the Court.    Monogamy has no place in chapter 11 relationships—in the last four years, the EFH/EFIH Debtors have, in an exercise of their fiduciary duties, explored, among other options: (a) a settlement with the EFIH First Lien Creditors and EFIH Second Lien Creditors; (b) a potential investment scenario with the EFIH Second Lien Creditors and Fidelity; (c) an equitization with the PIK Group only; (d) complete unimpairment of Holders of EFH and EFIH Claims; and (e) a standalone equitization of Claims asserted against the EFH Debtors and EFIH Debtors.    And, the EFH/EFIH Debtors negotiated many of these options in parallel in real time.

4.    In this regard, the EFIH Secured Creditor Objections tell an incomplete story. Contrary to the assertions set forth in both EFIH Secured Creditor Objections, the EFH/EFIH Debtors did not pivot to the PIK Proposal on a whim, but rather because it:  (a) eliminated a "cramdown" fight with a significant EFIH stakeholder; (b) provides a 100% recovery to the EFIH First Lien Creditors and EFIH Second Lien Creditors and otherwise provides to them the indubitable equivalent of their secured claims in an economically meaningless manner; (c) allows EFH Corp. creditors to realize the value from EFH Cash on hand; and (d) preserves

---

[6] The EFH/EFIH Debtors also received informal comments from the United States Trustee regarding the relief requested in the EFH/EFIH Disclosure Statement and the Supplemental DS Motion.

the appellate rights of all interested parties in connection with the litigation of Makewhole Claims asserted by Holders of EFIH First Lien Note Claims and EFIH Second Lien Note Claims (collectively, the "Makewhole Litigation").

5.      On November 30, 2016, the EFH/EFIH Debtors' chief restructuring officer and the EFH/EFIH Debtors' respective Boards approved, an exercise of their respective fiduciary duties, a term sheet (the "CRO Term Sheet") for distribution to those Holders of EFIH First Lien Note Claims, Holders of EFIH Second Lien Note Claims, and Holders of EFIH Unsecured Note Claims that agreed to enter into confidentiality agreements temporarily restricting their ability to freely trade EFIH securities.

6.      The CRO Term Sheet served its intended purpose: to drive EFIH constituencies toward a consensual path forward.  On December 14, 2016, certain Holders of EFIH First Lien Note Claims and EFIH Second Lien Note Claims accepted the settlements (the "EFIH Secured Creditor Settlements"), subject to approval by the EFH/EFIH Debtors' respective Boards, and subject to the execution of acceptable documentation reflecting the agreed terms.

7.      On December 16, 2016, the EFH/EFIH Debtors' respective Boards approved the EFIH Secured Creditor Settlements, subject to the understanding that execution of such settlements would not foreclose the EFH/EFIH Debtors' ability to continue exploring other viable paths to emergence.  Put another way, the EFH/EFIH Debtors insisted that the settlement include a fiduciary out through confirmation of the Plan.  This was in large part because there is an incontrovertible history in these chapter 11 cases of creditor constituencies only agreeing to put aside their parochial interests when faced with the prospect of a negotiated outcome that excludes them.

4

8.     And, in fact, history repeated itself.   Virtually contemporaneously with the EFH/EFIH Debtors notifying the restricted creditors and their advisors of the EFH/EFIH Boards' approval of the EFIH Secured Creditor Settlements, professionals representing an ad hoc group of approximately 60% of the aggregate, outstanding principal amount of the EFIH Unsecured Note Claims (the "PIK Group") approached the EFH/EFIH Debtors with an alternative proposal. With the proverbial bird in hand in the form of the EFIH Secured Creditor Settlement, but balancing the obligation to pursue all value-maximizing and viable alternatives and, exercising their fiduciary duties, the EFH/EFIH Debtors (through their respective Board of Directors and managers) agreed to consider an alternative proposal, with three important caveats. *First*, the EFH/EFIH Debtors would require at least 66.67% of the aggregate, outstanding principal amount of the EFIH Unsecured Note Claims to support the alternative proposal (with numerosity being less of a concern given how closely held the EFIH Unsecured Notes are). *Second*, because the alternative proposal contemplated ongoing litigation of the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims, none of the EFH/EFIH Debtors, their successors, or EFH Corp. stakeholders could be required to bear any of the litigation costs. *Third*, given the potential size of any Allowed EFIH First Lien Makewhole Claim or Allowed EFIH Second Lien Makewhole Claim (including the Additional Interest, interest on interest, and fees that would accrue over the length of the appellate process), (a) the amounts escrowed in favor of the EFIH First Lien Creditors and EFIH Second Lien Creditors would be the greater of the amounts estimated to be accrued over a three-year period and an amount ordered by the Bankruptcy Court (preserving the rights of the EFIH First Lien Creditors and EFIH Second Lien Creditors to raise arguments regarding the size of the escrow at the Confirmation Hearing), (b) the EFIH First Lien Notes Trustee and EFIH Second Lien Notes Trustee would be granted Liens on such escrow

5

account, and (c) the Supporting Holders of EFIH Unsecured Note Claims could not terminate their support for the alternative proposal even if the Bankruptcy Court ultimately held that no EFIH Unsecured Creditor could receive a distribution until all Allowed Secured Claims against the EFIH Debtors were paid, in full, in Cash.

9.      On December 20, 2016, the EFIH Secured Creditor Settlements were publicly announced through the filing of a Form 8-K disclosure with the SEC.  The 8-K announced that the parties were working on the definitive documentation, but noted that the plan support agreement would contain certain termination rights, allowing the EFH/EFIH Debtors to "terminate the Plan Support Agreement if the board of directors (or other similar governing body) of the applicable Debtor determines in its sole discretion that, prior to the date or event to be negotiated, proceeding with the Amended Plan or the transactions contemplated by the Agreement would be inconsistent with its applicable fiduciary duties." Energy Future Holdings Corp., Current Report (Form 8-K) (Dec. 20, 2016).

10.     This announcement pressured the PIK Group to push forward on the EFH/EFIH Debtors' required terms (such revised proposal, the "PIK Proposal").  At the same time, the EFH/EFIH Debtors continued to negotiate definitive documentation on the EFIH Secured Creditor Settlements.  The EFH/EFIH Debtors periodically informed the advisors for the EFIH First Lien Creditors and EFIH Second Lien Creditors regarding the alternative proposal discussions from the PIK Group.  Ultimately, the advisors indicated that they could not inform the EFIH First Lien Creditors and EFIH Second Lien Creditors regarding such discussions without potentially creating a trading restriction.  As such, to the EFH/EFIH Debtors' knowledge, the advisors elected not to inform their clients regarding the developments and chose

to wait until the EFH/EFIH Debtors disclosed the PIK Proposal in the revised Disclosure Statement filed on December 28, 2016.

11.    Throughout the discussions with all EFIH creditor constituencies, the EFH/EFIH Debtors emphasized the importance of sticking to the confirmation timeline set forth in the NEE PSA and the revised scheduling order approved by the Bankruptcy Court on December 7, 2016. This timeline contemplates a Disclosure Statement hearing on January 4, 2017, the commencement of a Plan confirmation hearing on February 14, 2017, and an oral order confirming the Plan as it relates to the EFH Debtors and EFIH Debtors by February 22, 2017. ***This is a shared interest: indeed, nowhere in the bluster-filled EFIH Secured Creditor Objections did any party request a delay of the EFH Confirmation Hearing.***    With this in mind, the EFH/EFIH Debtors filed a revised Disclosure Statement and Plan on December 28, 2016, publicly disclosing both possible paths forward.  The "dual" disclosure was necessary for several reasons.  ***First***, the EFH/EFIH Debtors felt that parties in interest should be aware of the details of each proposal before formulating their objections, if any, to the EFH/EFIH Disclosure Statement.  ***Second***, the EFH/EFIH Debtors hoped that a public disclosure would drive all parties closer to a global consensus, given that the EFIH First Lien Creditors and EFIH Second Lien Creditors could consider the merits of the PIK Proposal without concern over trading restrictions.  ***Third***, the EFH/EFIH Debtors believed that public disclosure may help the EFIH Unsecured Creditors receive a critical mass of support on the PIK Proposal.

12.    Ultimately, the PIK Group and the EFH/EFIH Debtors reached agreement on each of the EFH/EFIH Debtors' key considerations, and the PIK Group obtained the support of over 66.67% of the aggregate, outstanding principal amount of the EFIH Unsecured Note Claims.  As

a result, the EFH/EFIH Debtors and their respective Boards of Directors determined to proceed with the PIK Proposal.

13.     In short, the decision to proceed with the PIK Proposal was not made lightly or recklessly.  While perhaps the EFIH First Lien Creditors and EFIH Second Lien Creditors may be frustrated that the EFH/EFIH Debtors determined to pursue a path other than the one contemplated by the EFIH Secured Creditor Settlements, they have the luxury of not being bound by the fiduciary duties that obligate the EFH/EFIH Debtors' respective Boards to maximize the value for all stakeholders.

14.     The PIK Proposal ensures that all Allowed EFIH First Lien Claims and Allowed EFIH Second Lien Claims will be paid, in full, in Cash.  It proposes a generous escrow period (three years), a generous escrow amount (reflecting the reasonable and documented fees and expenses that the EFIH Secured Creditors have incurred and may incur, as well as the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims (together the "Makewhole Claims") and significantly above-market interest payments on the Makewhole Claims (for a period of at least three years)), the right to argue for a longer escrow period or a larger escrow, and a lien on the escrow, which shall not be subject to any other liens.  What more could a reasonable secured creditor want?

15.     At the same time, the PIK Proposal avoids an unnecessary "cramdown" fight with the EFIH PIK Group.  Although the EFIH Secured Creditor Settlements were certainly within the realm of a reasonable settlement range for the Makewhole Litigation, pursuing a cramdown fight out of choice, rather than necessity, carries with it certain execution risk.  Furthermore, the PIK Proposal ensures that EFH stakeholders will receive the value of the Cash on hand at EFH as of the EFH Effective Date on the EFH Effective Date.  In other words, EFH (and by extension

EFH stakeholders) will not bear any of the continued costs of litigating the Makewhole Claims. Importantly, however, if the Makewhole Claims are ultimately disallowed by Final Order, EFH stakeholders will share in the upside created by less funds being used to satisfy the EFIH Secured Creditors.

16.     In short, the worst case scenario for the EFH stakeholders has not changed: they will still receive the amounts they have always been guaranteed, the value of Cash at EFH Corp. as of the EFH Effective Date.  For this reason, among others, the EFH Notes Trustee's Objection should also be overruled.  ***First***, as explained herein, the Prior Disclosure Statement described, in great detail, (a) the EFIH First Lien Makewhole Litigation and EFIH Second Lien Makewhole Litigation, (b) the status of such litigation, and, importantly, (c) the consequences of the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims becoming Allowed Claims both before and after the EFH Effective Date.  ***Second***, the Prior Plan made clear that any Allowed EFIH First Lien Makewhole Claims and Allowed EFIH Second Lien Makewhole Claims would be satisfied in full, in Cash.  ***Third***, the Prior Plan provisions describing the pool of recovery available to EFH creditors has not changed in several drafts of the Plan:  the EFH Creditor Recovery Pool is, quite simply, (a) the value of the Cash on hand at EFH Corp. as of the EFH Effective Date and (b) any amounts left in the EFH/EFIH Distribution Account (i.e., the account holding the Plan Sponsor Contribution and Cash on hand at EFIH as of the EFH Effective Date) after "satisfaction in full of all Allowed Claims against the EFIH Debtors."  This formulation has not changed.  The size of "all Allowed Claims against the EFIH Debtors" is a variable factor and, unsurprisingly, the most significant factor is whether the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims become Allowed Claims.  **The potential for such Claims becoming Allowed Claims has always existed, has been disclosed**

9

**in every iteration of every disclosure statement filed in these chapter 11 cases,[7] and**

**sophisticated parties have always been aware of the effect of such Claims becoming**

---

[7] *See, e.g.*, *Disclosure Statement for the Amended Joint Plan of Reorganization of Energy Future Holding Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code*, filed on April 14, 2015 [D.I. 4143] §§ I.D, II.C.3, IV.K, VIII.A.1, VIII.A.7, VIII.E ("Forward Looking Statements"); *Amended Disclosure Statement for the Amended Joint Plan of Reorganization of Energy Future Holding Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code*, filed on July 23, 2015 [D.I. 5080] §§ IV.K, II.C.3, VIII.A.1, VIII.A.7, VIII.E ("Forward Looking Statements"); *Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holding Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code*, filed on August 10, 2015 [D.I. 5246] §§ I.D, II.C.3, IV.K, VIII.A.1, VIII.A.7, VIII.E ("Forward Looking Statements"); *Disclosure Statement for the Fourth Amended Joint Plan of Reorganization of Energy Future Holding Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code*, filed on September 18, 2015 [D.I. 6110] §§ I.D, II.C.3, IV.K, V.E.18, V.E.19, VIII.A.1, VIII.A.7, VIII.E ("Forward Looking Statements"); *Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of Energy Future Holding Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code*, filed on September 21, 2015 [D.I. 6124] §§ I.D, II.C.3, II.D, IV.K, V.E.18, V.E.19, VIII.A.1 VIII.A.7, VIII.F ("Forward Looking Statements"); *Disclosure Statement for the New Joint Plan of Reorganization of Energy Future Holding Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code*, filed on May 1, 2016 [D.I. 8356] §§ I.D, II.C.3, II.D, IV.M, V.E.19, V.E.20, VIII.A.1 VIII.A.7, VIII.E ("Forward Looking Statements"); *Disclosure Statement for the Amended Joint Plan of Reorganization of Energy Future Holding Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code*, filed on May 11, 2016 [D.I. 8423] §§ I.D, II.C.3, II.D, IV.M, V.E.19, VIII.A.1, VIII.A.7, VIII.E ("Forward Looking Statements"); *Second Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp.* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors*, filed on June 10, 2016 [D.I. 8689] §§ IV.L, VIII.A.1, VIII.E ("Forward Looking Statements"); *Third Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp.* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors*, filed on June 16, 2016 [D.I. 8748] §§ IV.L, VIII.A.1, VIII.E ("Forward Looking Statements"); *Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holding Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors*, filed on August 5, 2016 [D.I. 9200] §§ I.C.2, I.E, II.C.2, IV.L, V.D.19, V.D.20, VIII.A.1, VIII.A.6, VIII.E ("Forward Looking Statements"); *Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holding Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors*, filed on September 7, 2016 [D.I. 9493] §§ I.C.2, I.E, II.C.2, IV.L, V.D.19, V.D.20, VIII.A.1, VIII.A.6, VIII.E ("Forward Looking Statements"); *Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holding Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors*, filed on September 15, 2016 [D.I. 9557] §§ I.C.2, I.E, I.F n.16, I.I nn. 18–19, II.C.2, II.D, IV.L, V.D.19, V.D.20, VIII.A.1, VIII.A.6, VIII.E ("Forward Looking Statements"); *Disclosure Statement for the Fourth Amended Joint Plan of Reorganization of Energy Future Holding Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors*, filed on September 21, 2016 [D.I. 9616] §§ I.C.2, I.E, I.F n.16, I.I nn. 19–20, II.C.2, II.D, I.E, IV.L, V.D.19, V.D.20, VIII.A.1, VIII.A.6, VIII.E ("Forward Looking Statements"); *Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of Energy Future Holding Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors*, filed on December 1, 2016 [D.I. 10293] §§ I.C.1.G, I.C.1.H, I.C.2, I.D, I.E, II.C.2, IV.K, V.E.19, V.E.20, VIII.A.1, VIII.A.6, VIII.E ("Forward Looking Statements"); *Disclosure*

**Allowed on EFIH and EFH unsecured creditor recoveries**. The fact that such risk has now come into fruition does not give EFH creditors the right to reconsider their vote to accept or reject the Plan.

17.    In any event, resolicitation of the EFH stakeholders will serve no purpose. Fidelity, as the largest holder of EFH unsecured notes, remains obligated to support the Plan pursuant to the plan support agreement between NextEra, the EFH/EFIH Debtors, and Fidelity, approved by the Court on September 19, 2016.[8]  Additionally, Reorganized TCEH did not object to the Limited Resolicitation Motion and is therefore deemed to be bound to its vote (with respect to the TCEH Settlement Claim) to accept the Plan.  Consequently, resolicitation of the EFH stakeholders will merely generate additional costs and additional execution risk with no real benefit.

## Background

18.    On September 19, 2016, the Court entered an order [D.I. 9585] (the "EFH/EFIH Disclosure Statement Order") approving the *Disclosure Statement for the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9616] (the "Prior Disclosure Statement") and authorizing the EFH/EFIH Debtors to solicit votes to accept or reject the Prior Plan from Holders of Claims and Interests against the EFH/EFIH Debtors who are entitled to vote (the "Prior Plan Solicitation").  In connection with the Prior Plan Solicitation, creditors entitled to vote received the *Fourth*

---

*Statement for the Sixth Amended Joint Plan of Reorganization of Energy Future Holding Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors*, filed on December 28, 2016 [D.I. 10446] §§ I.C.1.F, I.C.1.G, I.C.1.H, I.C.1.I, I.C.2, I.D, I.E,  I.G n.18, II.C.2, IV.K, V.E.19, V.E.20, VIII.A.1, VIII.A.6, VIII.E ("Forward Looking Statements").

[8]  *See, e.g.*, Section 4.01(a)(i), (iii), (viii) in the *Order (A) Authorizing Entry Into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into and Performance Under the Plan Support Agreement*, Exhibit 2, the *Amended and Restated Plan Support Agreement* [D.I. 9584].

*Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al*., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9612] (the "Prior Plan"), which the EFH/EFIH Debtors filed on September 21, 2016.

19.    On November 17, 2016, the United States Court of Appeals for the Third Circuit issued the Makewhole Opinion, in light of which, the EFH/EFIH Debtors determined to adjourn the EFH/EFIH Confirmation Hearing to allow time to engage in further discussions with key creditor constituencies and the Plan Sponsor.

20.    On December 1, 2016, the EFH/EFIH Debtors filed the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et. al*., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10290] and the *Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al*., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* [D.I. 10293], making certain limited modifications to the Prior Plan and revised the Prior Disclosure Statement to include a description of the Makewhole Opinion and the resulting changes to the terms of the Prior Plan.[9]

---

[9] *See* EFH/EFIH Disclosure Statement § I.G ("Specifically, the Plan filed on December 1, 2016 was amended to reflect the following key changes:

- **Deletion of Makewhole Condition Precedent**.    The condition precedent to consummation of the Plan requiring the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims to be Disallowed Makewhole Claims is eliminated.

- **Limited Liens for the Benefit of the EFIH First Lien Trustee and EFIH Second Lien Trustee**.    As set forth in Article III.B.19 and Article III.B.20 of the Plan, the EFIH First Lien Notes Trustee and EFIH Second Lien Notes Trustee will be granted Liens on the EFH/EFIH Distribution Account, up to the asserted amount of their respective Makewhole Claims.    Such Liens will survive for the benefit of the respective Indenture Trustee until such time their respective Makewhole Claim has either been (a) Allowed, and paid in full, in Cash from the EFH/EFIH Distribution Account or (b) disallowed by Final Order.    The Lien will not extend to the value of any EFH cash included in the EFH/EFIH Distribution Account.

21.    On December 28, 2016, the EFH/EFIH Debtors filed the *Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et. al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10453] and the *Disclosure Statement for the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* [D.I. 10446], which disclosed both the EFIH Secured Creditor Settlements and the PIK Proposal, each of which were under negotiation at the time.

22.    Contemporaneously herewith, the EFH/EFIH Debtors filed the EFH/EFIH Disclosure Statement and the Plan, which removes the terms of the proposed EFIH Secured Creditor Settlements and provides additional details regarding the PIK Proposal.  A redline of the Plan as compared to the Prior Plan is attached hereto as **Exhibit B** (the "Plan Redline").

## **Reply**

### I.    **No Further Solicitation of the EFH Noteholders is Required and Such Holders Should Be Bound By the Ballots They Submitted in Connection with the Prior Plan Solicitation.**

23.    While the modifications to the treatment provided in the Prior Plan that are reflected the Plan (the "Plan Modifications") are important to the EFH/EFIH Debtors' reorganization efforts, they are not extensive and, significantly, did not require changing the proposed treatment of any Claims other than those in the Resolicitation Classes.  Therefore, under the Bankruptcy Code and the Bankruptcy Rules, it is not necessary to resolicit any Holders of Claims outside the Resolicitation Classes.

- **Elimination of Class B6 "Top Up"**.  As set forth in Article VI.A. of the Plan, recoveries to Holders of Allowed Class B6 Claims may be reduced to first satisfy any Allowed EFIH First Lien Makewhole Claims or EFIH Second Lien Makewhole Claims.

- **Satisfaction of Allowed Makewhole Claims**.  As set forth in Article VI.A. of the Plan, any Allowed EFIH First Lien Makewhole Claims or Allowed EFIH Second Lien Makewhole Claims will be satisfied from the EFH/EFIH Distribution Account.

24.    The EFH Notes Trustee's Objection—filed while the EFH/EFIH Debtors' negotiations were midstream and the then-current draft of the Plan included the possibility of settling, rather than litigating, the Makewhole Claims—asserts that the EFH Noteholders[10] must be resolicited because (a) the EFH Noteholders are impaired under the Plan and "entitled to vote," (b) the Plan Modifications result in an adverse change to the treatment of EFH Noteholders, (c) the Makewhole Opinion creates a change to the treatment of EFH Noteholders, and (d) the Prior Disclosure Statement provided to creditors in connection with the Prior Plan Solicitation (which was approved by this Court as containing adequate disclosure)[11] was ambiguous regarding what would happen in the present circumstances (*i.e.*, if the Bankruptcy Court's ruling disallowing the Makewhole Claims was reversed and remanded).  EFH Notes Trustee ¶¶ 22–32, 36–38.  The EFH Notes Trustee is mistaken, misconstruing both the relief requested by the Debtors and the nature of the Plan Modifications (including interim modifications that have since been removed), and ignoring clear disclosures in the Prior Disclosure Statement.  Furthermore, the issuance of the Makewhole Opinion does not effect a change of any creditor's ***treatment***.  Instead, the Makewhole Opinion simply constitutes the occurrence of a risk that was disclosed in the Prior Plan and the Prior Disclosure Statement.  Creditors are not entitled to change their votes because an event that is outside the terms of the Plan, and which creditors were on notice could occur, did occur.

## A.    The EFH/EFIH Debtors Do Not Dispute that the EFH Noteholders Are Impaired and Entitled To Vote On the Plan.

25.    The EFH Notes Trustee begins by stating that the EFH/EFIH Debtors are seeking "entry of an order finding that the proposed changes to the Fourth Plan are not adverse and

---

[10] "EFH Noteholders" means, collectively, Holders of the EFH Legacy Notes, Holders of the EFH LBO Notes, Holders of the EFH 2019 Notes, and Holders of the EFH 2020 Notes.

[11] EFH/EFIH Disclosure Statement Order ¶ 2.

material and thus EFH Noteholders and certain other claimants *are not entitled to vote* on the

Fifth Plan." EFH Notes Trustee Objection ¶ 21 (emphasis added). This misstates the relief the

EFH/EFIH Debtors are requesting. In fact, the EFH/EFIH Debtors have been clear that the EFH

Noteholders are impaired and entitled to vote on the Plan—throughout the Plan and the

EFH/EFIH Disclosure Statement, the applicable Classes are listed as "Impaired" and "Entitled to

Vote." *See, e.g.*, Plan, Article III.A, Article III.B; EFH/EFIH Disclosure Statement §§ V.D, V.E.

It is the EFH/EFIH Debtors' position that the EFH Noteholders (and all Holders of Claims or

Interests in Classes that are Impaired but not included in the Resolicitation Classes) have already

had an opportunity to vote on the Plan as it pertains to the treatment of their Claims. Because

their treatment has not been altered, there is no need for such Holders to be given an opportunity

to reconsider their votes and, therefore, any Ballots they previously cast should be counted in

connection with determining acceptances or rejections of the Plan.[12] As such, the EFH/EFIH

Debtors are simply seeking a finding from the Bankruptcy Court confirming that the Plan

Modifications do not entitle these Holders to have an opportunity to *change their votes*.

*See* Supplemental DS Motion ¶ 4 (asking the Court to bind "Holders of Claims and Interests

entitled to vote on the Plan (other than Holders of Claims in the Resolicitation Classes) to the

Ballots such Holders submitted in connection with the Prior Plan Solicitation").

**B.      There Has Been No Adverse Change to the Treatment of EFH Noteholders Warranting Resolicitation.**

26.      Bankruptcy Rule 3019 provides, in relevant part, that a plan proponent may file a

modification to a plan prior to confirmation and, if "the court finds after hearing on notice . . .

---

[12] The EFH Notes Trustee also asserts that the EFH Noteholders may want to reconsider granting releases in light of the Plan Modifications. However, as discussed below, because the Plan Modifications do not alter the treatment of the EFH Noteholders' Claims and the changes to the releases are not substantive, there is no new factor that would render the releases "non-consensual" as to the EFH Noteholders.

15

that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan."  Fed. R. Bankr. P. 3019(a).

27.    Courts in the Third Circuit have long looked to whether the proposed modification adversely impacts the previously accepting creditor in a material fashion.  *See In re Century Glove, Inc.*, Civ. A. Nos. 90–400–SLR, 90–401–SLR, 1993 WL 239489, at *3 (D. Del. Feb. 10, 1993) (stating that further disclosure and resolicitation "occurs only . . . when the modification ***materially*** and adversely impacts parties who previously voted for the plan" (emphasis added)); *see also In re Flinkote Co.*, 486 B.R. 99, 119 (Bankr. D. Del. 2012) (noting that the debtor sought an order that plan modifications did not "***materially*** and adversely affect voting creditors" (emphasis added)); *In re G-I Holdings Inc.*, 420 B.R. 216, 256 (D.N.J. 2009) ("If the amendments are ***material*** and adversely affect the way creditors are treated, 11 U.S.C. § 1127 requires a new disclosure statement and balloting of the amended plan." (emphasis added)); *In re Burns and Roe Enterprises, Inc.*, 2009 WL 438694, at *23 (D.N.J. 2009) (same); *In re USN Communications, Inc.*, 280 B.R. 573, 596 (Bankr. D. Del. 2002) (noting that the court had previously found a plan modification to not "***materially*** or adversely affect or change the treatment of any Claim against or Equity Interest in any Debtor" (emphasis added)).

28.    These courts have apparently agreed with the leading bankruptcy treatise that this is "***the best test***."  9 Collier on Bankruptcy ¶ 3019.01 (15th ed. rev. 2009); *see also G-I Holdings Inc.*, 420 B.R. at 256 ("The best test is whether the modification so affects any creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance.").  Courts prefer this test for materiality because requiring

resolicitation of all impaired creditors for all but the most insubstantial adjustments to the treatment of Claims would not only waste estate resources, but unnecessarily risk disrupting consensus. *See In re Am. Solar King Corp.*, 90 B.R. 808, 825–26 (Bankr. W.D. Tex. 1988) ("Every time a plan has to be re-solicited, the risk that consensus will be lost is increased dramatically."). Furthermore, it would run counter to the clear intention behind the rule. As the court in *American Solar* explains:

> The present rule was derived in part from Sections 223 and 364 of the Bankruptcy Act and their related bankruptcy rules, Rules 10–306 and 11–39, which allowed deemed acceptances for changes which did not "***materially*** and adversely affect the interest" of a previously assenting claimant. 11 U.S.C. (repealed) §§ 623, 764 (Collier pamphl. ed. 1976); Bankr. R. Proc. 10–306, 11–39 (Collier pamphl. ed. 1976). Prior to the 1983 amendments to the Bankruptcy Rules, the materiality standard was explicit. Although the express criterion of materiality was dropped in the new rules, no significance should be attached to the omission, as congressional intent is clear: "[A] creditor or stockholder who voted for or against a plan is deemed to have accepted or rejected the modifying proposal. But if the modification ***materially*** and adversely affects any of their interests, they must be afforded an opportunity to change their vote...."

*Am. Solar King Corp.*, 90 B.R. at 825 (emphases added) (quoting S. Rep. No. 95-989, at 124 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5910.

29.     Despite this, the EFH Notes Trustee argues that courts in this jurisdiction should abandon the materiality test and instead review plan modifications to determine whether they adversely affect the interests of a previously accepting creditor "in more than a purely ministerial *de minimis* manner." EFH Notes Trustee Objection ¶ 31 (citing *U.S. v. Frontier Airlines, Inc.*, 93 B.R. 1014, 1023 (Bankr. D. Colo. 1988)). However, lowering the threshold for resolicitation imposes an "overstrict" interpretation of Bankruptcy Rule 3019 for little gain. "Requiring such a formalistic step in the face of a merely technical negative impact heightens the risk of plan failure without satisfying any countervailing public policy. . . . The statute permits modifications

17

that might technically have a negative impact on claimants where the modifications are not substantial. The rule should be interpreted in such a fashion as to give effect to, not to undermine, the statute." *Am. Solar King Corp.*, 90 B.R. at 825–26.

30.     As a matter of bankruptcy law and policy, there is no valid rationale supporting resoliciting on account of a modification that while technically adverse, is immaterial to the creditors who are impacted.  If a creditor is unlikely to reconsider their vote on account of such a modification, then there is little value in providing that creditor with an opportunity to change their vote.  On the other hand, resoliciting in such a scenario opens the door to mischief as creditors now have an opening to hold affirmation of their prior acceptances hostage to extract a new concession.  *See In re Dow Corning Corp.*, 237 B.R. 374, 379 (Bankr. E.D. Mich. 1999) (asserting that the "free-ridership" created by resoliciting creditors unharmed by a modification "would create unhealthy incentives which could unduly delay consensus" and that interpreting the Bankruptcy Rules in such a manner is "to be avoided"); *cf. Am. Solar King Corp.*, 90 B.R. at 825 (a literal reading of Bankruptcy Rule 3019 invites "self-serving objections" that, if sustained, could "upset resolution of a complicated bankruptcy [which] would make a travesty of the entire bankruptcy process" (quoting *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1163 (5th Cir. 1988)). Such perverse incentives would detract from the overall good of generating global consensus. Courts in this jurisdiction are right to adhere to the materiality standard.

31.     Regardless of the standard, however the Plan Modifications do not affect the treatment of the EFH Noteholders' Claims.  In fact, as is clearly seen in the Plan Redline, the treatment provided for the EFH Noteholders' Claims in the Plan today is ***exactly the same*** as the treatment provided for their Claims in the Prior Plan.  ***Both*** documents provide that each EFH Noteholder "shall receive, up to the Allowed amount of its Claim, its Pro Rata share (calculated

18

based on the aggregate amount of EFH Corp. Claims) of the EFH Creditor Recovery Pool." *See* Prior Plan, Article III.B; Plan, Article III.B; Plan Redline, Article III.B.  The definition of "EFH Creditor Recovery Pool," too, remains unchanged.

32.    EFH Noteholders voted in the Prior Plan Solicitation with the understanding that they will each receive their Pro Rata share of (a) any cash remaining at EFH and (b) any merger consideration remaining after Allowed Claims at EFIH and Allowed Administrative Claims and Allowed Priority Claims at EFH are all paid in full.  And, as explained in more detail below, EFH Noteholders also voted with full knowledge that there is a chance that the Allowed Claims at EFIH to be satisfied ahead of their own Claims could include significant amounts on account of the Makewhole Claims asserted by the EFIH First Lien Noteholders and the EFIH Second Lien Noteholders.  *See, e.g.*, Prior Disclosure Statement Section I.E.2.  The EFH Noteholders' treatment, including their place in line in the waterfall, remains unchanged in the Plan. Therefore, under any interpretation of Bankruptcy Rule 3019, there has not been an adverse change to the treatment of the EFH Noteholders and no resolicitation of their votes is required.

33.    Importantly, the EFH Notes Trustee's Bankruptcy Rule 3019 analysis focuses almost exclusively on the effect of the proposed EFIH Secured Creditor Settlements that were included in the intermediate version of the Plan that was filed on December 28, 2016.  This settlement proposal has been entirely removed from the Plan and, therefore, many of the EFH Notes Trustee's points about the effect of the Plan modifications on the EFH Noteholders are now moot.  *See, e.g.*, EFH Indenture Notes Objection ¶ 20 (arguing that the makewhole settlement changes the EFH Noteholders' treatment because it eliminates the possibility the EFH Noteholders will receive any distribution of the merger cash proceeds).

**C.      Issuance of the Makewhole Opinion Alone Cannot Require  Resolicitation.**

34.      The EFH Notes Trustee also argues that it is not just the modifications to the Plan that require resolicitation of the EFH Noteholders, but the Makewhole Opinion itself:  "Here, where the Third Circuit has now spoken, there has been a material change *in the law* impacting distributions in this case."  EFH Notes Trustee Objection ¶ 37 (emphasis added).  This argument should be rejected for several reasons.

35.      *First*, the EFH Notes Trustee is incorrect to look outside the Plan when evaluating whether a creditor must be resolicited.  Bankruptcy Rule 3019 plainly asks whether the proposed modification *to the Plan* adversely affects a creditor's treatment.  Fed. R. Bankr. P. 3019(a) ("the proponent may file a modification of the plan.  If . . . the proposed modification does not adversely change the treatment of the claim of any creditor . . . it shall be deemed accepted").  The Bankruptcy Rules do not ask whether the landscape in which the Plan will be effected has altered prior to confirmation.  This makes sense and is in keeping with how Courts evaluate whether a claimant has voting rights, generally.  As the Third Circuit has explained, "a creditor's claim outside of bankruptcy is not the relevant barometer for impairment; we must examine *whether the plan itself is a source of limitation on a creditor's legal, equitable, or contractual rights*."  *In re PPI Enterprises (U.S.), Inc.*, 324 F.3d 197, 204 (3d Cir. 2003) (emphasis added) (holding that because "the Bankruptcy Code, not the Plan, is the only source of limitation on those rights here, Solow's claim is not impaired" and not entitled to vote on the plan).  A ruling that changes a creditor's rights outside of bankruptcy cannot be said to modify a plan, let alone modify a plan with respect to the treatment of *other* creditors.

36.      Tellingly, had the Prior Plan not included a provision guaranteeing that distributions to Holders of Class B6 Claims would be unaffected by the payment of any Allowed Makewhole Claims, the EFH/EFIH Debtors would not have needed to make *any* modifications

20

to the Plan in the wake of the Makewhole Ruling.  NextEra could have waived the condition precedent, as it did (and was always permitted to do under the Plan, *see* Prior Plan, Article IX.D.10, Article IX.E; Prior Disclosure Statement §§ I.E.2, I.F, II.C.2, II.D, VI.D, VI.E), and the EFH/EFIH Debtors could have chosen to continue to litigate the Makewhole Claims, as they have—all without changing a single word in the Plan.  In such an event, the EFH Notes Trustee could hardly have argued that the Makewhole Opinion effected a "modification of the plan" requiring resolicitation of the EFH Noteholders.

37.    ***Second***, while the Makewhole Opinion does throw a wrench in the current landscape of developing makewhole jurisprudence, it does not dictate that the Makewhole Claims will ultimately be Allowed.  As such, the range of potential distributions to the EFH Noteholders remains the same.  As noted above, the EFH Noteholders receive their pro rata share of what remains of the merger consideration after, among other things, Allowed Claims at EFIH are paid in full, including any Allowed Makewhole Claims in the event that the Makewhole Claims were Allowed prior to the Effective Date and NextEra waived the condition precedent. As disclosed in the Prior Disclosure Statement, the outcome of the Makewhole Litigation could have reduced the amount of merger consideration left over for EFH creditors by anywhere from $0 to the full amount of the Makewhole Claims.  *See, e.g.*, Prior Disclosure Statement § II.D. That range remains the same today.  The only thing that has changed since the Prior Plan Solicitation is, apparently, various parties' perception of the likelihood of each outcome. However, this is not sufficient to warrant resolicitation of any Class.  When voting to accept or reject a plan, a creditor always assumes risk that their view of the likely outcome of events that affect the amount of their recovery may not be correct.

RLF1 16470997v.1

38.    Furthermore, even if the Makewhole Opinion was a Final Order allowing the Makewhole Claims, which it is not, it would only have the effect of liquidating the Makewhole Claims.  Liquidation of those claims does not effect a change to the *treatment* of the EFH Noteholders' claims, it just brings further clarity to the amount of the EFH Creditor Recovery Pool that will ultimately be used to pay in full the Allowed Claims at EFIH (and thus not be available to be distributed to EFH Noteholders and other claimants at EFH).  Increased certainty of the amount of a creditor's distribution is not a "modification of the plan."  Nor is it a requisite for voting; creditors routinely vote on plans before knowing the final allowed amount of the claims with which they share their consideration.

39.    ***Third***, EFH Noteholders were fully aware when they voted of the possibility that a change in the law could occur.  The Prior Disclosure Statement included a section titled "The Outcome of Litigation Regarding Whether Noteholders are Entitled to Any Makewhole or Redemption Premiums and/or Postpetition Interest Is Uncertain," *see* Prior Disclosure Statement § VIII.A.6, which spanned over two pages of the Prior Disclosure Statement and was referenced by three earlier sections of the Prior Disclosure Statement—sections II.C.1.b, II.C.2.b, and II.C.2.c.  Section VIII.A.6, which was part of the EFH/EFIH Debtors' disclosures of the various "Risk Factors" to be considered when voting on the Plan, outlined the risk that the Makewhole Litigation could ultimately be decided against the EFH/EFIH Debtors, the estimated amount such a decision could cost, and the fact that such amounts might have to be paid from the consideration that otherwise would satisfy Holders of junior Claims against any of the EFIH Debtors or EFH Debtors.  The section also directed readers to the statement by the EFIH First Lien Notes Trustee that was included in the Prior Disclosure Statement in which the EFIH First Lien Notes Trustee advised "***all creditors of the EFIH Debtors and EFH Debtors***" to "***consider***

*the risk*" posed by the unresolved Makewhole Claims.   Prior Disclosure Statement § II.D

(emphasis added).   The EFH Noteholders could hardly fail to have understood at the time they

cast their Ballots in the Prior Plan Solicitation that, while the EFH/EFIH Debtors had prevailed

in the Makewhole Litigation to date, the ongoing appeal meant that a reversal of the Bankruptcy

Court ruling disallowing the Makewhole Claims was a real possibility.   That a potential, fully

disclosed (and fully accounted for in the Prior Plan) event occurred does not, alone, entitle

creditors to an opportunity to change their votes.

> **D.    The Disclosure Statement Relied Upon by the EFH Unsecured Noteholders in Connection with the Prior Plan Solicitation Included Adequate Disclosure of the Consequences of an Adverse Makewhole Ruling.**

40.    Contrary to EFH Notes Trustee's assertions that the "legal and economic

consequences" of the Makewhole Opinion were not previously disclosed, see EFH Notes Trustee

Objection ¶ 2, the Prior Disclosure Statement did, in fact, describe what would happen in the

present circumstances.

41.    The following disclosure was made *twice* in the Prior Disclosure Statement:

> The Plan contemplates, and effectiveness of the Plan is conditioned
> on all EFIH First Lien Note Claims that are Makewhole Claims
> becoming Disallowed Makewhole Claims, ***though such condition
> can be waived by the Plan Sponsor in its sole and absolute
> discretion***. To the extent such Makewhole Claims are not
> Disallowed Makewhole Claims, a condition to the EFH Effective
> Date will be unable to be satisfied. ***Such condition can, however,
> be waived by the Plan Sponsor in its sole and absolute discretion***.
> Otherwise, the Plan may be withdrawn as to the EFH Debtors and
> EFIH Debtors because of such Debtors' inability to satisfy this
> condition.  As set forth in Article VIII.B.19 of the Plan, if a court
> of competent jurisdiction enters a Final Order before the EFH
> Effective Date, allowing Makewhole Claims asserted by Holders
> of EFIH First Lien Note Claims (whether as Secured Class B3
> Claims, as applicable, or as Unsecured Class B6 Claims), a
> condition precedent to the EFH Effective Date shall not be
> satisfied, though such condition may be waived by the Plan
> Sponsor in its sole and absolute discretion. If the Plan Sponsor
> determines to waive such condition, such Allowed Makewhole

> Claims will be paid in full, in Cash, without reducing the
> recoveries to Holders of Allowed Class B6 Claims.

Prior Disclosure Statement §§ I.E.2, II.C.2 (emphases added).  And, ***two more*** identical disclosures were made with respect to the EFIH Second Lien Note Claims that are Makewhole Claims.  *Id.*  Consistent with this description, when the Makewhole Claims were no longer "Disallowed" under the terms of the Plan, the Plan Sponsor agreed to eliminate the condition precedent to avoid ambiguity (given that the Plan was still in the pre-confirmation phase), and allowed the EFH/EFIH Debtors to continue to pursue confirmation of the Plan.  Thus, the Prior Disclosure Statement accurately described the potential path forward in these circumstances.

42.     Furthermore, the Prior Disclosure Statement presented a clear picture of what would happen if the Makewhole Claims become Allowed Claims prior to the EFH Effective Date (an event that has not yet taken place):  "To the extent the Class B3 or Class B4 Makewhole Claims have been Allowed before the EFH Effective Date, and the Plan Sponsor has waived the condition precedent to the EFH Effective Date, ***such Makewhole Claims will be paid in full, in Cash***, on the EFH Effective Date or as soon as reasonably practicable after the EFH Effective Date."  Prior Disclosure Statement § I.F.

43.     While the EFH Notes Trustee insinuates that EFH Noteholders were essentially promised a 50 percent recovery of $450 million, EFH Notes Trustee Objection ¶¶13–14, 38, EFH Noteholders had ample notice that such recovery was anticipated, but not assured.  All estimates of creditors' recoveries were appropriately caveated.  *See* Prior Disclosure Statement §§ I.I ("This information is provided in summary form below for illustrative purposes only and is qualified in its entirety by reference to the provisions of the Plan."); VIII.C (a section entitled "Risks Related to Recoveries Under the Plan," which includes a sub-section entitled "The Debtors Cannot State With Certainty the Value of Any Recovery Available to Holders of

Allowed Claims and Interests").    Furthermore, the fundamental construct of the Plan is a "waterfall" in which EFH Noteholders come behind numerous other Claims, including any Allowed Makewhole Claims.  If the EFH Noteholders had even a basic understanding of the Plan when they voted, then they must have known that their estimated recovery rate is uncertain and depends significantly on the outcome—and timing of such outcome—of the Makewhole Litigation.  Ultimately, the Plan Modifications do not eliminate the possibility that that the EFH Noteholders' recovery could be $450 million, as hoped.  That such an outcome may now be more difficult to obtain, however, does not negate the fact that the EFH Noteholders were well aware that their recovery could be compromised in this manner.  As such, there are no failures of disclosure that necessitate a resolicitation of the EFH Noteholders.

## II.    The Disclosure Statement Meets the Applicable Standards for Approval Under Section 1125 of the Bankruptcy Code.

44.    As set forth in the Supplemental DS Motion, the Debtors believe that they have included in the Disclosure Statement all the information required for disclosure pursuant to section 1125 of the Bankruptcy Code.  Moreover, the EFH/EFIH Debtors have been working diligently with the EFIH First Lien Trustee and the EFIH Second Lien Trustee and with the EFH Notes Trustee to draft inserts addressing the requests by such parties for additional information. These inserts are included in the EFH/EFIH Disclosure Statement, see EFH/EFIH Disclosure Statement §§ I.C.1.K, I.C.1.L, which was filed contemporaneously herewith.  While the inserts do not yet resolve all of the disclosure concerns raised in the three Objections, the EFH/EFIH Debtors continue to work with these parties to further develop the inserts to reach resolution.  In addressing the Objections to the Supplemental DS Motion (as set forth in the Objection Chart), the Debtors believe that they have gone above and beyond section 1125's disclosure requirements.

III.    **The Plan Is Far from "Patently Unconfirmable" Under Either of the Bases Asserted by the EFH Notes Trustee.**

45.    In addition to its suggestions that the EFH/EFIH Disclosure Statement lacks adequate information, the EFH Notes Trustee has asserted that the Plan is patently unconfirmable because EFH Corp. is not receiving consideration for the NOLs it holds and the EFH Noteholders are not being afforded a chance to opt out of the releases being provided to third parties.  EFH Notes Trustee Objection ¶¶ 46–49.

46.    It is well-established that disapproval of the adequacy of a disclosure statement on grounds of unconfirmability is appropriate only when the disclosure statement "describes a plan of reorganization which is ***so fatally flawed that confirmation is impossible***" (*i.e.*, the plan is patently unconfirmable).  *In re Phoenix Petroleum*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2006) (emphasis added); *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (review of issues affecting confirmation of the Plan is permitted only if the proposed Plan is "patently" or "facially" unconfirmable); *see also In re Unichem Corp.*, 72 B.R. 95, 98 (Bankr. N.D. Ill. 1987) (courts should disapprove of the adequacy of a disclosure statement on confirmability grounds only "where it is readily apparent that the plan accompanying the disclosure statement could never be legally confirmed").

47.    "A plan is patently unconfirmable where (1) confirmation defects [cannot] be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing."  *In re Am. Capital Equip., LLC*, 688 F.3d 145, 154-55 (3d Cir. 2012) (internal quotations and citation omitted) (alteration in original); *see also In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) (emphasis added) (objections to a plan at the disclosure statement stage "are restricted to those defects that could not be cured by voting and

where the pertinent material facts are either not at issue or have been fully developed at the disclosure statement hearing.").  A plan is not patently unconfirmable where the debtor can show that "the plan is confirmable or that defects might be cured or involve material facts in dispute." *Am. Capital Equip.* 688 F.3d at 155.

48.    Courts routinely approve disclosure statements despite the existence of disputed issues related to confirmation, which require an evidentiary hearing.  *See, e.g.*, In *Quigley Co., Inc.*, 377 B.R. 110 (Bankr. S.D.N.Y. 2007) (approving the disclosure statement while acknowledging that settlements with the debtors' non-debtor former parent "implicate several confirmation issues" regarding the rights and incentives of certain claimants under the proposed plan); *Hyatt*, 509 B.R. 707, 711 (Bankr. D.N.M. 2014) (approving the disclosure statement because questions about the debtor's proposed classification scheme required "additional evidence that may be presented at a confirmation hearing" and, therefore, the "proposed classification scheme does not render the Plan patently unconfirmable as a matter of law").

### A.    The Plan is Not Patently Unconfirmable.

49.    Perhaps the best evidence that the Plan is not patently unconfirmable because it allegedly does not provide consideration to EFH or EFH stakeholders in exchange for the "use" of NOLs is this Court's ruling in connection with the hearing to consider confirmation of the Plan as it relates to the TCEH Debtors and the EFH Shared Services Debtors.  There, the EFH Notes Trustee raised the very same objection and the Court found that "the objectors take the position that the disinterested directors and management should have thrown down the gauntlet . . . and threatened to blow up the entire deal unless there was an agreement to provide an additional consideration for the use of the NOLs."  TCEH Confirmation Hr'g Tr. 17:8-13 Aug. 26, 2016.  Ultimately, the Court found it would have been "reckless on the part of

management and the disinterested directors" to "throw down the gauntlet" under such circumstances. *Id.* at 17:15-20.

50.     In other words, this Court has already confirmed the Plan as it relates to the TCEH Debtors and EFH Shared Services Debtors over the exact same objection the EFH Indenture Trustee raises today.  Additionally, the decision to not independently "compensate" EFH for the use of its NOLs as part of a larger, comprehensive restructuring will undoubtedly be a central focus of the EFH Confirmation Hearing, much as it was for the TCEH Confirmation Hearing.  All parties, including the EFH Indenture Trustee, will have an opportunity to make an evidentiary showing either in support of or in opposition to the use of NOLs under the Plan.

**B.    Releases Have Not Changed Such that New Opportunity to Opt Out is Required.**

51.     The EFH Notes Trustee also alleges that the Plan cannot be confirmed because, "by seeking to bind the EFH Noteholders to their prior vote, EFH Noteholders are not being provided the chance to opt out of the releases being provided to third parties, such as NextEra." EFH Notes Trustee Objection ¶ 49.  However, this is simply not true.  The EFH Noteholders already had their opportunity to opt-out of the releases during the Prior Plan Solicitation.  The third parties included in the releases at that time—including NextEra—are identical to the third parties included in the releases in the Plan now.  Since then, the EFH/EFIH Debtors have made only slight changes to the text of the releases (and related definitions) to incorporate by name the EFIH Unsecured Creditor Plan Support Agreement.  This change simply makes explicit what was already covered in the releases in the Prior Plan, which provided releases "from any and all Claims and Causes of Action, including. . . the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan."  Prior Plan, Article VIII.D. The transactions provided for by the EFIH Unsecured Creditor Plan Support Agreement create

procedural mechanisms whereby the EFH/EFIH Debtors can continue to pursue the merger with NextEra.  Those mechanisms are "in pursuit of Confirmation" of the Plan and, therefore, part and parcel of the transactions already covered by the releases.  No changes that have been made since the EFH Noteholders last had the opportunity to opt-out of the releases—either to the releases specifically or the Plan more generally—necessitates providing EFH Noteholders a second chance to consider their position on the releases.

### Conclusion

52.     For all the foregoing reasons, the EFH/EFIH Debtors respectfully submit that the Objections should be overruled (to the extent that the Objectors do not acknowledge that their Objections are resolved at the hearing on the Supplemental DS Motion) and that the Supplemental DS Motion should be approved, as the EFH/EFIH Disclosure Statement clearly satisfies the requirements of section 1125 of the Bankruptcy Code.

*[Remainder of page intentionally left blank.]*

Dated: January 3, 2017
    Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
    defranceschi@rlf.com
    madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
    stephen.hessler@kirkland.com
    brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
    marc.kieselstein@kirkland.com
    chad.husnick@kirkland.com
    steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*