**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF DEPOSITION
OF AVENUE CAPITAL GROUP LLC PURSUANT TO FED. R. CIV. P. 30(b)(6)
BY DELAWARE TRUST COMPANY, AS INDENTURE TRUSTEE**


TO: Avenue Capital Group
c/o Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Attn: Ira A. Dizengoff
Abid Qureshi
Christopher Carty


Klehr Harrison Harvey Brazenburg LLP
919 Market Street, Suite 1000
Wilmington, Delaware 19801
Attn: Raymond Lemish


Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654
Attn: Harold L. Kaplan
Mark F. Hebbeln
Lars A. Peterson
Barry G. Felder

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

1

90 Park Avenue
New York, NY 10016
Attn: Jonathan H. Friedman

**PLEASE TAKE NOTICE** that, pursuant to Rule 30 of the Federal Rules of Civil

Procedure (the "<u>Federal Rules</u>"), made applicable by Rule 7030 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the Local Rules of Civil Practice and

Procedure of the United States District Court for the District of Delaware, made applicable

hereto pursuant to the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (collectively the "<u>Local Rules</u>"), Delaware Trust

Company, as indenture trustee (the "<u>Trustee</u>") for the EFIH First Lien Notes (the "<u>Notes</u>"), and

as collateral trustee, by and through undersigned counsel will take the deposition of a

knowledgeable witness or witnesses designated to testify on behalf of Avenue Capital Group

LLC.  The deposition will take place on January 17, 2016, at 9:30 A.M., or such other date as the

Participating Parties may agree, at the offices of **Wilmer Cutler Pickering Hale and Dorr,**

**LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York, 10007**.  The

deposition will take place before a court reporter and will be recorded by stenographic means,

may be videotaped, and shall continue from day to day until it has been completed.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Federal Rule of Civil

Procedure 30(b)(6), made applicable here by Rules 7030 and 9014 of the Federal Rules of

Bankruptcy Procedure, Avenue Capital Group LLC, must designate one or more knowledgeable

2

witnesses to testify on its behalf at the time and place specified above regarding the topics listed

on attached <u>Exhibit</u> <u>A</u>.


Dated:  January 3, 2017

COLE, SCHOTZ P.C.


  */s/ J. Kate Stickles*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: 302-652-3131
Facsimile: 302-652-3117
npernick@coleschotz.com
kstickles@coleschotz.com


-and-

WILMER CUTLER PICKERING HALE
AND DORR, LLP
Philip D. Anker
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800
Facsimile: 212-230-8888
Philip.anker@wilmerhale.com

**EXHIBIT A**

A.     **DEPOSITION TOPICS**

1.      The EFIH Unsecured Creditor Plan Support Agreement, including any negotiations regarding said agreement, and Your, the PIK Trustee's or other Holders of the PIK Notes' consideration of that agreement since September 1, 2016, of alternatives thereto.

2.      The EFIH Claims Reserve; the source(s) of funding for that reserve; the amount and sufficiency of the reserve to make payment in full of all EFIH First Lien Makewhole Claims or other Claims relating to or derived from the EFIH First Lien Notes and all EFIH Second Lien Makewhole Claims or other Claims relating to or derived from the EFIH Second Lien Notes; Your, the Debtors', the PIK Trustee's, or anyone else's calculation of the EFIH First Lien Makewhole Claims (including both the "Applicable Premium" as set forth in the applicable indentures for the EFIH First Lien Notes, and interest thereon) and the EFIH Second Lien Makewhole Claims for purposes of setting the reserve; the duration of the reserve; and any communications, including with the Debtors, the PIK Trustee, or other Holders of the PIK Notes, regarding the EFIH Claims Reserve.

3.      The treatment under the EFIH Unsecured Creditor Plan Support Agreement and the Plan of the EFIH First Lien Makewhole Claims, any Claims for fees, expenses and indemnification related to the EFIH First Lien Makewhole Claims, any Claims for interest related to the EFIH First Lien Notes, and all other Claims based on or derived from the EFIH First Lien Notes (and the indentures therefor).

1

4.      The treatment under the EFIH Unsecured Creditor Plan Support Agreement and the Plan of the EFIH Second Lien Makewhole Claims, all Claims for fees, expenses and indemnification related to the EFIH Second Lien Notes, all Claims for interest related to the EFIH Second Lien Notes, and all other Claims based on or derived from the EFIH Second Lien Notes (and the indentures therefor).

5.      Any discussions with any members of (or counsel or other advisors to) the EFH board of directors, the EFIH board of managers, or the EFIH Finance board of managers regarding their decision to authorize the Debtors to pursue, obtain approvals for, and ultimately implement the EFIH Unsecured Creditor Plan Support Agreement or the EFIH Secured Creditor Plan Support Agreement (or any plan based on the terms outlined in any of the foregoing).

6.      The effect of the EFIH Unsecured Creditor Plan Support Agreement and the Plan on any rights of the holders of Claims derived from or based upon the EFIH First Lien Notes or the EFIH First Lien Notes Trustee with respect to (a) the appeal by the EFIH First Lien Notes Trustee and such holders regarding their Makewhole Claims, *Delaware Trust Company v. Energy Future Intermediate Holding Company LLC,* No. 16-1351 (3d Cir.); (b) the appeal in the adversary proceeding commenced by the EFIH First Lien Notes Trustee against the EFIH Second Lien Notes Trustee for turnover and other relief, *Delaware Trust Company, as Indenture Trustee v. Computershare Share Trust Company, N.A., et al.,* No. 16-cv-461 (D. Del.); (c) any proceeding on remand from any of the foregoing; or (d) any action or relief that may be sought or granted in any of the foregoing.

ActiveUS 160337643v.1

7.      The negotiation of the Plan and the EFIH Unsecured Creditor Plan Support Agreement, and the role of the Holders of the PIK Notes and the PIK Trustee in the negotiation of the Plan and the EFIH Unsecured Creditor Plan Support Agreement.

8.      Any and all communications with the Debtors since September 1, 2016 regarding (a) the EFIH First Lien Makewhole Claims; (b) the EFIH Second Lien Makewhole Claims; (c) the Third Circuit's decision regarding the EFIH First and Second Lien Makewhole Claims in *Delaware Trust Company v. Energy Future Intermediate Holding Company LLC,* No. 16-1351 (3d Cir.); (d) the EFIH Secured Creditor Plan Support Agreement (and any drafts thereof); (e) the EFIH 8-K; (f) the Plan (and any drafts thereof); (g) the EFIH Unsecured Creditor Plan Support Agreement (and any drafts thereof); (h) any other possible restructuring of the EFIH Debtors; and (i) the roles, make-up, and payment of fees and expenses of the "Makewhole Litigation Oversight Committee" (as described on page 14 of the Disclosure Statement) and the "EFIH Plan Administrator Board" (as defined in the Plan), with respect to any litigation of the EFIH First Lien Makewhole Claims and the EFIH Second Lien Makewhole Claims.

9.      The following topics:  (a) any Makewhole Claims asserted by the PIK Trustee or holders of the PIK Notes; (b) the EFIH Secured Creditor Plan Support Agreement (and any drafts thereof); (c) the Plan (and any drafts thereof); (d)  the EFIH Unsecured Creditor Plan Support Agreement (and any drafts thereof); (e) the roles and make-up of the "Makewhole Litigation Oversight Committee" (as described on page 14 of the Disclosure Statement) and the "EFH Plan Administrator Board" (as defined in the Plan) with respect to any litigation of the EFIH First Lien Makewhole Claims and the EFIH Second Lien Makewhole Claims; and (f) any

3

other possible restructuring of the EFIH Debtors discussed with the Debtors or otherwise considered by the PIK Trustee or Holders of the PIK Notes.

10.     The Plan, including negotiations of the Plan, and Your, the PIK Trustee's or other Holders of the PIK Notes' consideration of that Plan.

11.     Any consideration by You or discussion, including with the Debtors, the PIK Trustee or other Holders of the PIK Notes, regarding whether You and other Holders of the PIK Notes are prepared to "top up" the EFIH Claims Reserve, disgorge any distributions You received under the Plan, or otherwise guarantee payment of all EFIH First Lien Claims and all EFIH Second Lien Claims, in the event that the EFIH Claims Reserve proves inadequate.

12.     All Makewhole Claims asserted by the PIK Trustee or Holders of the PIK Notes.

.

4

**B.**  **DEFINITIONS**

1. "And" and "Or," whether capitalized or not, are intended as terms of inclusion, and not exclusion, and should be construed both disjunctively and conjunctively so as to bring within the scope of the deposition topics specified in part A of this Exhibit A all topics and information which might otherwise be considered to be outside of their scope.

2. "Claim" shall have the meaning ascribed to it in the Plan.

3. "Communication" shall mean any contact whatsoever or any transmission or exchange of words, numbers, ideas, opinions, thoughts, concepts, graphs, symbols, images, or other information, emotion, feeling, or sentiment, whether complete or partial.  Any request for communication includes all attachments and links contained in an electronic communication.

4. "Debtors" shall mean the debtors and debtors in possession in the above-captioned cases  and any and all of their agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on their behalf or under their control.     .

5. "Disclosure Statement" shall have the meaning ascribed in the Plan to the term in EFH Disclosure Statement (Dkt. No. 10446 in these cases), as set forth in clause (b) of that definition.

6. "EFH" shall mean Energy Future Holdings Corp., a Texas corporation.

7. "EFIH" shall mean Energy Future Intermediate Holding Company LLC.

5

8.      "EFIH 8-K" shall mean the 8-K filed on December 19, 2016 containing the

Regulation FD Disclosure regarding the agreement in principle to settle the EFIH First Lien

Makewhole Claims.

9.      "EFIH Claims Reserve" shall have the meaning ascribed to it in the Plan.

10.     "EFIH Finance Inc" shall mean EFIH Finance Inc.

11.     "EFIH First Lien Makewhole Claims" shall have the meaning ascribed to it in the

EFIH 8-K.

12.     "EFIH First Lien Notes" shall have the meaning ascribed to it in the Plan.

13.     "EFIH First Lien Notes Trustee" shall have the meaning ascribed to it in the Plan.

14.     "EFIH Second Lien Notes" shall have the meaning ascribed to it in the Plan.

15.     "EFIH Second Lien Makewhole Claims" shall have the meaning ascribed to it in

the EFIH 8-K.

16.      "EFIH Secured Creditor Plan Support Agreement" shall have the meaning

ascribed to it in the Disclosure Statement for the Sixth Amended Joint Plan of Reorganization of

Energy Future Holdings Corp.

17.     "EFIH Senior Toggle Notes" shall have the meaning ascribed to it in the Plan.

18.     "EFIH Unexchanged Notes" shall have the meaning ascribed to it in the Plan.

19.      "EFIH Unsecured Creditor Plan Support Agreement" shall have the meaning

ascribed to it in the Plan.

20.     "Holders of the PIK Notes" shall mean any and all holders of the EFIH Senior

Toggle Notes or the EFIH Unexchanged Notes, and any all of their agents, advisors, employees,

6

representatives, staff, attorneys, and all other persons or entities acting on their behalf or under

their control

  21. "Including," whether capitalized or not, shall mean including, but not limited to.

Phrases following the term "including" are not intended to be exhaustive of the topics or

information sought and shall not in any way be read to limit the scope of the deposition topics

specified in part A of this Exhibit A.

  22. "Makewhole Claim" shall have the meaning ascribed to it in the New Plan.

  23. "PIK Trustee" shall mean U.M.B. Bank, N.A., in its capacity as Indenture

Trustee to the EFIH Senior Toggle Notes and/or the EFIH Unexchanged Notes, and any and all

of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or

entities acting on its behalf or under its control.

  24. "Plan" shall mean the Sixth Amended Joint Plan of Reorganization of Energy

Future Holdings Corp., et. al., Sixth Amended Joint Plan of Reorganization of Energy Future

Holdings Corp., et. al., pursuant to Chapter 11 of the Bankruptcy Code filed on December 28,

2016 [D.I. 10453], and any further amendments, modifications or supplements thereto.

  25. "Regarding", whether capitalized or not, shall mean concerning, referring to,

relating to, evidencing, explaining, constituting or comprising.

  26. "You" or "Your", whether capitalized or not, means the party responding to these

discovery requests and any funds or accounts managed or advised by such party, including any

agents, attorneys or representatives of any of the foregoing, or any person with any ownership

7

interest in any of the foregoing, or other persons acting, or purporting to act, on behalf or under the control of any of the foregoing.

8

ActiveUS 160337643v.1