## Exhibit A

**THIS PLAN SUPPORT AGREEMENT IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE.  ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.  NOTHING CONTAINED IN THIS PLAN SUPPORT AGREEMENT SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE AGREEMENT EFFECTIVE DATE ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES HERETO.**

## PLAN SUPPORT AGREEMENT

This PLAN SUPPORT AGREEMENT (including all exhibits attached hereto, as may be amended, modified, or supplemented from time to time in accordance with the terms hereof, this "**Agreement**") is made and entered into as of January 2, 2017, by and among the following parties (each, a "**Party**" and, collectively, the "**Parties**"):

(a)  (i) Energy Future Holdings Corp., a Texas corporation ("**EFH Corp.**"); (ii) Energy Future Intermediate Holding Company LLC ("**EFIH**"), a Delaware limited liability company and a direct, wholly-owned subsidiary of EFH Corp.; (iii) EFIH Finance Inc. ("**EFIH Finance**," and together with EFIH, the "**EFIH Debtors**"), a Delaware corporation and a direct, wholly-owned subsidiary of EFIH; and (iv) each of EFH Corp.'s other direct and indirect subsidiaries listed on the signature pages hereto (each of the foregoing entities identified in subclauses (i) through (iv) an "**EFH/EFIH Debtor**" and, collectively, the "**EFH/EFIH Debtors**");

(b)  UMB Bank, N.A., as the indenture trustee under the EFIH Unsecured Notes (the "**PIK Notes Trustee**");

(c)  the undersigned holders or investment advisors or managers of discretionary accounts of such beneficial holders that hold, or direct the vote of, Claims against the EFIH Debtors under the EFIH Unsecured Notes (solely in such capacity, each, individually, a "**Supporting Creditor**" and, collectively, the "**Supporting Creditors**"), including Avenue Capital Management II, LP, GSO Capital Partners LP, York Capital Management Global Advisors, LLC, and Angelo Gordon & Co. (collectively, the "**Initial Supporting Creditors**"); and

(d)  each transferee who becomes a Permitted Transferee (as defined below) in accordance with Section 4.04 of this Agreement.

For the avoidance of doubt, each Supporting Creditor and the PIK Notes Trustee (collectively, the "**Supporting PIK Parties**") shall be bound by and subject to the provisions herein only as a holder or trustee of the EFIH Unsecured Note Claims, in respect of which it is signing this Agreement (as indicated on its signature page to this Agreement) and any reference to Claims with respect to an obligation of a Supporting Creditor only refers, respectively, to its EFIH Unsecured Note Claims whether or not it uses those terms.

Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Alternative E-Side Plan (as defined below).

## RECITALS

**WHEREAS**, on April 29, 2014, the Debtors commenced chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), which chapter 11 cases are being jointly administered and are captioned In re Energy Future Holdings Corp., et al., Case No. 14-10979 (CSS) (the "**Chapter 11 Cases**");

**WHEREAS**, EFIH owns 100% of Oncor Electric Delivery Holdings Company LLC, which owns approximately 80.03% of the equity interests in Oncor Electric Delivery Company LLC ("**Oncor**");

**WHEREAS**, on May 11, 2016, the Debtors filed in the Chapter 11 Cases the Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 8421] (as such plan has been amended, modified, and/or supplemented to the date of this Agreement, the "**New EFH Plan**") and related disclosure statement [Docket No. 8423];

**WHEREAS**, EFH Corp., EFIH, NextEra Energy, Inc., a Florida corporation (together with Merger Sub, as defined below, "**NEE**"), and EFH Merger Co., LLC ("**Merger Sub**") entered into that certain Merger Agreement, dated as of July 29, 2016, which was filed with the Bankruptcy Court on August 3, 2016 [Docket No. 9190] (such agreement, as amended from time to time in accordance with its terms, the "**Merger Agreement**"), pursuant to which Reorganized EFH Corp. will merge with and into Merger Sub, with Merger Sub as the surviving company (the "**Merger**");

**WHEREAS**, the EFH/EFIH Debtors and NEE entered into, and the Bankruptcy Court approved, an Amended and Restated Plan Support Agreement, dated September 19, 2016 [Docket No. 9584] (as further modified, amended, or supplemented from time to time, the "**NEE PSA**");

**WHEREAS**, EFH Corp., EFIH, NEE and Merger Sub agreed upon certain modifications to the New EFH Plan as it relates to EFH Corp., EFIH, EFIH Finance, and the other EFH/EFIH Debtors and such modified New EFH Plan, as further modified, was filed with the Bankruptcy Court on December 1, 2016 [Docket No. 10290] and modified on December 28, 2016 to reflect the EFIH PIK Settlement (as defined below) (the "**Filed Alternative E-Side Plan**");

**WHEREAS**, the Parties will negotiate in good faith certain further modifications to the Filed Alternative E-Side Plan as it relates to EFH Corp., EFIH, EFIH Finance, and the other

EFH/EFIH Debtors (as it may be further amended, modified, or supplemented from time to time in accordance with the terms of this Agreement, the "**Alternative E-Side Plan**");[1]

WHEREAS, the Alternative E-Side Plan would amend and replace the Filed Alternative E-Side Plan pursuant to the terms hereof;

WHEREAS, pursuant to the Alternative E-Side Plan and the Merger Agreement, upon the Merger Closing (as defined in the Merger Agreement), NEE would acquire 100% of the equity of Reorganized EFH and certain of its direct and indirect subsidiaries (EFH Corp. and its direct and indirect subsidiaries that are being acquired by NEE, collectively, the "**E-Side Acquired Debtors**");

WHEREAS, pursuant to the Alternative E-Side Plan and the Merger Agreement, NEE would not acquire, among others: (a) EFCH and its subsidiaries; (b) Reorganized TCEH and Reorganized TCEH's subsidiaries; (c) the EFH Shared Services Debtors (as defined in the Alternative E-Side Plan); and (d) EFH Properties Company and its subsidiaries;

WHEREAS, the Supporting Creditors and the EFH/EFIH Debtors have negotiated a settlement with respect to, among other things, (i) the litigation of, and/or objections to, Makewhole Claims asserted by Holders of EFIH First Lien Note Claims and Holders of EFIH Second Lien Note Claims (the "**EFIH First Lien Makewhole Claims**," the "**EFIH Second Lien Makewhole Claims**," and, collectively, the "**Secured Makewhole Claims**" and the "**Secured Makewhole Claims Litigation**"), (ii) the satisfaction of costs and expenses incurred by, among others, the EFH/EFIH Debtors, the EFH Plan Administrator Board, in connection with the Secured Makewhole Claims Litigation starting from the date this Agreement is effective and binding on the Threshold Supporting Creditors, and (iii) certain reserves to be established for the benefit of the Holders of EFIH First Lien Note Claims and EFIH Second Lien Note Claims, which reserves affect the timing and size of distributions under the Alternative E-Side Plan to Holders of Allowed Class B6 Claims, all as shall be set forth in the Alternative E-Side Plan, materially consistent with the term sheet set forth as **Schedule 1** hereto and Section 7 hereto (the "**EFIH PIK Settlement**");

WHEREAS, each EFH/EFIH Debtor and each Supporting Creditor, in exercising its respective business judgment, has determined that the Alternative E-Side Plan provides appropriate value to creditors (including in light of the Makewhole Litigation and any risks relating thereto) and increases certainty of execution;

WHEREAS, as of the date of this Agreement, Supporting Creditors collectively holding legal or beneficial interests in no less than 66 2/3% of the aggregate principal amount of EFIH Unsecured Note Claims have executed and delivered this Agreement (the "**Threshold Supporting Creditors**"); and

---

[1]    Unless otherwise indicated, any reference in this Agreement to the Alternative E-Side Plan is a reference to the Alternative E-Side Plan solely with respect to the EFH/EFIH Debtors.

**NOW, THEREFORE**, in consideration of the covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound hereby, agree as follows:

## AGREEMENT

**Section 1.** *Exhibits Incorporated by Reference.*

Each of the exhibits attached hereto is expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include the exhibits. Unless otherwise provided herein, in the event of any inconsistency between this Agreement and the Alternative E-Side Plan, the Alternative E-Side Plan shall govern, subject in all respects to the final paragraph of Section 3 in this Agreement.

**Section 2.** *Agreement Effective Date.*

This Agreement: (a) is effective and binding on the Threshold Supporting Creditors, immediately as of the date of this Agreement and (b) shall be effective and binding on the EFH/EFIH Debtors on the date of entry by the Bankruptcy Court of the PSA Approval Order (as defined below). The "Agreement Effective Date" with respect to any Party shall mean the date on which this Agreement becomes effective and binding on such Party in accordance with the immediately preceding sentence.

For the avoidance of doubt, subject to the Parties' rights under Section 8, each Party (other than the EFH/EFIH Debtors, to the extent set forth in this Section 2) shall be bound to this Agreement on the Agreement Effective Date applicable to such Party whether or not the Bankruptcy Court enters the PSA Approval Order, the Alternative E-Side Disclosure Statement Order (as defined below), or the Alternative E-Side Confirmation Order (as defined below).

**Section 3.** *Definitive Documentation*

The definitive documents and agreements governing the Alternative E-Side Plan and all transactions contemplated by this Agreement (collectively, the "**Alternative E-Side Restructuring Documents**") shall include:

(a) the motion to approve the EFH/ EFIH Debtors' entry into, and performance under, this Agreement (the "**Approval Motion**");

(b) the order of the Bankruptcy Court approving the EFH/EFIH Debtors' entry into, and performance under, this Agreement (the "**PSA Approval Order**");

(c) the Alternative E-Side Plan and each document or agreement contemplated in connection with consummation of the Alternative E-Side Plan; and

(d) the order of the Bankruptcy Court confirming the Alternative E-Side Plan and authorizing all of the transactions and agreements contemplated by the Alternative E-Side Plan with respect to the EFH/EFIH Debtors (the "**Alternative E-Side Confirmation Order**").

Each of the Parties acknowledges and agrees that certain of the Alternative E-Side Restructuring Documents remain subject to negotiation and completion and shall, upon completion, contain terms, conditions, representations, warranties, and covenants consistent with the terms of this Agreement, the Merger Agreement, and the Alternative E-Side Plan, and shall otherwise be in form and substance acceptable to the EFH/EFIH Debtors in their sole discretion and, to the extent inconsistent with the terms of this Agreement, the Merger Agreement, and the Alternative E-Side Plan in a manner that adversely affects (i) the Supporting Creditors in any material respect shall be reasonably acceptable to the Required Supporting PIK Creditors (ii) the PIK Notes Trustee in any material respect shall be reasonably acceptable to the PIK Notes Trustee; it being understood that any term inconsistent with Section 7 and/or Schedule 1 of this Agreement in a manner that adversely affects the Supporting Creditors or the PIK Notes Trustee shall be considered material as to such creditors and trustee. Each Party agrees that it shall act in good faith and use and undertake all commercially reasonable efforts to negotiate and finalize the terms of the Alternative E-Side Restructuring Documents to which it is to be a Party or by which it is to be bound that are not finalized as of the date hereof.

## Section 4. *Commitments Regarding the Alternative E-Side Plan.*

4.01.    <u>Commitments of Each Supporting PIK Party</u>.

(a)    Each Supporting Creditor (in its capacity as a Holder of EFIH Unsecured Notes Claim) and the PIK Indenture Trustee, as applicable, agrees, for so long as this Agreement has not been terminated as to such Supporting PIK Party in accordance with Section 8, that:

(i)    following receipt of the E-Side Disclosure Statement for the revised Alternative E-Side Plan and the related solicitation materials (as approved by the Bankruptcy Court as containing "adequate information" as such term is defined in section 1125 of the Bankruptcy Code), it shall, to the extent it is permitted to vote to accept or reject the Alternative E-Side Plan:

(A)    vote each and every EFIH Unsecured Notes Claim now owned or hereafter acquired by such Supporting Creditor to accept the Alternative E-Side Plan by timely delivering its duly executed and completed ballot(s) accepting the Alternative E-Side Plan and (y) to the extent it is permitted to elect whether to opt out of the releases set forth in the Alternative E-Side Plan, elect not to opt out of the releases set forth in the Alternative E-Side Plan, by timely delivering its duly executed and completed ballot(s) indicating such election; and

(B)    not change or withdraw (or cause to be changed or withdrawn) any such vote to accept the Alternative E-Side Plan or election described in the foregoing (A);

(ii)    it shall use good faith efforts to negotiate and document the Alternative E-Side Restructuring Documents to which it is to be a Party or by which it is to be bound and to take such commercially reasonable actions as reasonably requested by the EFH/EFIH Debtors or

as such Supporting PIK Party in good faith deems reasonable and appropriate to obtain Bankruptcy Court approval of the Alternative E-Side Restructuring Documents as soon as reasonably practicable;

(iii)    it shall use good faith and commercially reasonable efforts to assist in obtaining (A) entry of the PSA Approval Order, the Alternative E-Side Disclosure Statement Order, and the Alternative E-Side Confirmation Order, and (B) to the extent capable, consummation of the Alternative E-Side Plan and all other transactions contemplated by this Agreement, as soon as reasonably practicable in accordance with the Bankruptcy Code and on terms consistent with this Agreement, including within the time frames contemplated in this Agreement;

(iv)    it shall execute and deliver any other agreements reasonably required to effectuate and consummate the Alternative E-Side Plan and all other transactions contemplated by this Agreement, provided that such agreements are consistent with the terms of this Agreement and the Alternative E-Side Plan and are reasonably acceptable to the Required Supporting PIK Creditors (as defined below);

(v)    on and following the Agreement Effective Date:

(A)    it and its Representatives (as defined in the Merger Agreement) shall immediately cease and cause to be terminated all existing discussions or negotiations with, or ongoing solicitation or encouragement of, any other entity with respect to any inquiry or proposal relating to a competing transaction to restructure or reorganize any EFH/EFIH Debtor, including any standalone plan of reorganization, any transaction by which a party other than NEE seeks to acquire any portion of Reorganized EFH's direct or indirect economic interest in Reorganized EFIH or Oncor, or any transaction that is conditioned or premised on the conversion or reorganization of EFH Corp., EFIH, or Oncor or its affiliates or any of their respective assets to an alternative entity or corporate form (a "**Competing Transaction**");

(B)    it shall not (1) directly or indirectly solicit, initiate, encourage, or knowingly induce or knowingly facilitate any Competing Transaction, or any inquiry or proposal that is reasonably expected to lead to a Competing Transaction, or (2) directly or indirectly participate in any discussions or negotiations with any other entity regarding, or furnish to any other entity, any information with respect to, or cooperate in any way with any other entity with respect to, any Competing Transaction, or any inquiry or proposal that is reasonably expected to lead to a Competing Transaction; *provided, however*, that from the Agreement Effective Date until entry of the Alternative E-Side Confirmation Order, the Supporting PIK Parties shall be entitled to consult with, discuss, and

6

participate in meetings with respect to, Competing Transactions directly with the EFH/EFIH Debtors;

(C)     to the extent permitted by applicable law (including any confidentiality agreement to which a Supporting Creditor was a party prior to the Agreement Effective Date) and/or regulation, it shall promptly provide the EFH/EFIH Debtors with any written proposal or a written or oral description of any unwritten proposal (and any supplement or modification of any such proposal) it receives, including the identity of the party making such proposal and the transaction structure, terms, and conditions proposed by such party, relating to a Competing Transaction;

(D)     it shall not directly or indirectly, or encourage any other entity to directly or indirectly: (1) propose, file, support, vote for, or take any other action in furtherance of any Competing Transaction, including, for the avoidance of doubt, by making or supporting any filings with the Bankruptcy Court or any regulatory agency, including the PUC, the IRS, the FCC, and the FERC, or by entering into any agreement or making or supporting any filing, press release, press report or comparable public statement, with respect to any Competing Transaction; or (2) exercise any right or remedy for the enforcement, collection, or recovery of any claim against the EFH/EFIH Debtors (or any direct or indirect subsidiaries of EFH Corp. that are not party to this Agreement) other than as expressly permitted by this Agreement, the Alternative E-Side Plan and the Merger Agreement; *provided, however,* that notwithstanding the foregoing, each Supporting PIK Party may file with the Bankruptcy Court all documents necessary to obtain approval of this Agreement and entry of the Alternative E-Side Confirmation Order;

(vi)     except as may otherwise be expressly provided herein, without prejudice to any Person not a party hereto, the PIK Indenture Trustee agrees that it shall support the EFIH PIK Settlement set forth in the Alternative E-Side Plan including filing a statement in support of the EFIH PIK Settlement following entry of the PSA Approval Order;

(vii)     except as may otherwise be expressly provided herein and to the extent not expressly covered by Section 4.01(a)(ix) and/or Section 4.01(a)(x), and to the extent applicable, immediately prior to the occurrence of the Effective Time (as defined in the Merger Agreement), it shall (A)(1) file a motion or other pleading requesting that each presiding judge or other applicable adjudicator enter an order dismissing with prejudice any litigation to which it is a party seeking payment on any make-whole claim on account of the prepayment, repayment, or other redemption of any debt incurred by EFH Corp., EFIH, or their respective predecessors, or any other Claims inconsistent with the EFIH PIK Settlement (including, for the avoidance of doubt, any and all pending appeals related to such litigation) and (2) to the extent that it or any of its Affiliates has the right to do so, withdraw with prejudice, or join in a withdrawal with

7

prejudice of, any litigation and Claims described in the foregoing clause (A)(1), and (B) direct the trustee(s) of any class of securities of which it is a beneficial owner to take the actions described in the foregoing clause (A), or deliver to any such trustee its consent with respect to such actions, as applicable; for the avoidance of doubt, any dismissal or withdrawal with prejudice shall be conditioned on the occurrence of the Effective Date of the Alternative E-Side Plan and shall be simultaneous with the Effective Time (as defined in the Merger Agreement);

(viii)   it shall not direct any administrative agent, collateral agent, or indenture trustee (as applicable) to take any action inconsistent with such Supporting Creditor's respective obligations under this Agreement, and if any applicable administrative agent, collateral agent, or indenture trustee takes any action inconsistent with a Supporting Creditor's obligations under this Agreement, such Supporting Creditor shall promptly direct such administrative agent, collateral agent, or indenture trustee to cease and refrain from taking any such action; and

(ix)   the execution of this Agreement by the Threshold Supporting Creditors shall constitute a direction to the PIK Notes Trustee in its capacity as indenture trustee for the EFIH Unsecured Notes, to execute, deliver and perform its obligations under this Agreement for so long as this Agreement has not been terminated as to the Supporting Creditors in accordance with Section 8, including a direction to (A) not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, consummation, or amendment of the Alternative E-Side Plan and all other transactions contemplated by this Agreement, (B) refrain from supporting, and not pursue with respect to such notes, payment of postpetition interest (except as may be contemplated herein or the Alternative E-Side Plan) or any Makewhole Claims or any other Claims inconsistent with this Agreement, and (C) immediately prior to the occurrence of the Effective Time (as defined in the Merger Agreement), seek dismissal with prejudice or withdraw with prejudice, any litigation to which it is a party, seeking payment on any Makewhole Claims, the District Court appeal to which the PIK Notes Trustee is a party seeking payment of the PPI Claims for the PIK Notes (Case No. 15-1098) or any related Claim, or any other Claims inconsistent with this Agreement (including, for the avoidance of doubt, any and all pending appeals related to such litigation).   Notwithstanding anything to the contrary herein, for the avoidance of doubt, any such dismissal or withdrawal with prejudice shall be conditioned on the occurrence of the Effective Date of the Alternative E-Side Plan and shall be simultaneous with the Effective Time (as defined in the Merger Agreement).   In addition, at the reasonable request of the EFIH Debtors, each Supporting Creditor agrees that it will attempt to contact any Holder of EFIH Unsecured Notes not then a party hereto to request that such Holder execute this Agreement, not oppose confirmation of the Alternative E-Side Plan and not pursue payment of any Makewhole Claims or any other Claims inconsistent with this Agreement;

(x)   it shall support and take all steps reasonably necessary to (A) support any appeal of any denial of the requested PSA Approval Order, and (B) defend any appeal of the entry of the PSA Approval Order; and

(xi)   it shall not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, or consummation of the Alternative E-Side Plan (or any

amendment thereof that is in accordance with the terms of this Agreement) and all other transactions contemplated by, and that are not inconsistent with, this Agreement.

(b)    The foregoing sub-clause (a) of this Section 4.01 will not limit any of the following rights of the Supporting PIK Parties:

(i)    to appear and participate as a party in interest in any matter to be adjudicated in the Chapter 11 Cases, and to file any pleadings or documents in connection therewith, so long as such appearances or filings, and the positions advocated in connection therewith, do not violate the terms of this Agreement and are not inconsistent with and do not violate the terms of the Alternative E-Side Plan or the Merger Agreement;

(ii)    to exercise any right, remedy, power or defense under any applicable credit agreement, indenture, other loan document or applicable law that does not violate the terms of this Agreement and is not inconsistent with and does not violate the terms of the Alternative E-Side Plan or the Merger Agreement, including seeking reimbursement for reasonable and documented trustee fees and expenses as otherwise provided under any applicable indenture and under this Agreement; or

4.02.    <u>Commitments of the EFH/EFIH Debtors</u>.

(a)    Each EFH/EFIH Debtor agrees, for so long as this Agreement has not been terminated in accordance with Section 8.01, that:

(i)    it shall use commercially reasonable efforts to file the Approval Motion with the Bankruptcy Court, on or before January 15, 2017, which motion, as supplemented or amended, to the extent required or advisable, shall attach a copy of this Agreement and all exhibits thereto (redacted with respect to the respective holdings of each Supporting Creditor, consistent with Section 5.01(a) and Section 10.05 of this Agreement), including the Alternative E-Side Plan, and which motion, for the avoidance of doubt, shall seek approval of the PSA Approval Order;

(ii)    it (A) shall not amend or modify the Alternative E-Side Plan in a manner that is inconsistent with this Agreement or adverse to the Supporting PIK Parties (for the avoidance of doubt, any decrease of the Merger Sub Cash Amount (as defined in the Merger Agreement) shall constitute a change that is material and adverse to the Supporting PIK Parties), unless the Required Supporting PIK Creditors consent to any such amendment or modification, *provided, that* the EFH/EFIH Debtors will need the consent of each Supporting Creditor if they amend or modify the EFIH PIK Settlement and *provided, further, that,* the EFH/EFIH Debtors will need the consent of the PIK Notes Trustee if they amend or modify the EFIH PIK Settlement or Alternative E-Side Plan in a way that is adverse to the PIK Notes Trustee and (B) shall use good faith efforts to negotiate and document the Alternative E-Side Restructuring Documents as soon as reasonably practicable;

(iii)    it shall support and take all steps reasonably necessary to obtain entry of (A) the PSA Approval Order by February 5, 2017, and the Alternative E-Side Confirmation Order, by February 22, 2017; *provided, however*, that for purposes of clauses (A)-(B), entry of such order shall be deemed to occur upon an oral indication by the Bankruptcy Court that it is

9

approving or will approve the requested relief, so long as the order is promptly entered thereafter;

(iv)     it shall support and take all steps reasonably necessary to (A) appeal any denial of the requested PSA Approval Order, and (B) defend any appeal of the entry of the PSA Approval Order;

(v)     it shall support and take all steps reasonably necessary to consummate as soon as possible, and in any event by June 30, 2017 (the "**Initial Drop-Dead Date**"), or as soon thereafter as is reasonably practicable, the Alternative E-Side Plan solely as it relates to the EFH/EFIH Debtors and all other transactions contemplated by this Agreement in accordance with the Bankruptcy Code and on terms consistent with this Agreement;

(vi)     it shall execute and deliver any other agreements reasonably required to effectuate and consummate the Alternative E-Side Plan and all other transactions contemplated by this Agreement; and

(vii)     to the extent any of the EFH/EFIH Debtors has any right to vote or direct the vote of any Claim, such EFH/EFIH Debtor shall vote or direct such vote in favor of the Alternative E-Side Plan.

(b)     The foregoing sub-clause (a) of this Section 4.02 will not limit any of the following EFH/EFIH Debtors rights:

(i)     to appear and participate as parties-in-interest in any matter to be adjudicated in the Chapter 11 Cases, and to file any pleadings or documents in connection therewith, so long as such appearances or filings, and the positions advocated in connection therewith, do not violate and are not inconsistent with the terms of this Agreement and are not inconsistent with and do not violate the terms of the Alternative E-Side Plan or the Merger Agreement;

(ii)     to exercise any right, remedy, power, or defense under any applicable credit agreement, indenture, other loan document, or applicable law that does not violate and is not inconsistent with the other terms of this Agreement and is not inconsistent with and does not violate the terms of the Alternative E-Side Plan or the Merger Agreement; or

(iii)     the rights set forth in Section 6.2(a) of the Merger Agreement.

(c)     For the avoidance of doubt, the EFH/EFIH Debtors shall have no obligations under this Agreement to support, and reserve all of their rights to object to and otherwise litigate in connection with, any disclosure statement, plan of reorganization, or other restructuring document for the EFH/EFIH Debtors that is not filed by the EFH/EFIH Debtors, except where this Agreement otherwise imposes a contrary affirmative obligation.

(d)     Notwithstanding anything to the contrary in this Agreement, until entry of the Alternative E-Side Confirmation Order by the Bankruptcy Court, the board of directors, the board of managers, or any such similar governing body of any EFH/EFIH Debtor shall be permitted to take (or permitted to refrain from taking) any action with respect to the covenants

10

and agreements set forth in this Agreement to the extent such board of directors, board of managers, or such similar governing body determines, in its sole discretion after consultation with its independent financial advisors and outside legal counsel, and based on the advice of such counsel, that taking such action, or refraining from taking such action, as applicable, is necessary to comply with its applicable fiduciary duties.

4.03.   [Reserved].

4.04.   <u>Transfer of Claims</u>.

(a)   For so long as this Agreement has not been terminated pursuant to Section 8.01 as to a Supporting Creditor (solely in its capacity as holder of an EFIH Unsecured Note Claim), that Supporting Creditor shall not sell, use, pledge, assign, transfer, permit the participation in, or otherwise dispose of (each, a "**<u>Transfer</u>**") any ownership (including any beneficial ownership) in such Claims, unless:

(i)   such Transfer is to another Supporting Creditor; or

(ii)   if such Transfer is not to another Supporting Creditor, the intended transferee executes and delivers to the EFH/EFIH Debtors an executed transfer agreement in the form attached hereto as **<u>Exhibit A</u>** (a "**<u>Transfer Agreement</u>**") before such Transfer is effective (it being understood that any Transfer shall not be effective until notification of such Transfer and a copy of the executed Transfer Agreement is provided to counsel to the EFH/EFIH Debtors at the contact information on the Transfer Agreement, on the terms set forth herein).

A transferee that satisfies the requirements set forth in Section 4.04(a)(i) or 4.04(a)(ii) shall be a "**<u>Permitted Transferee</u>**," and such Transfer, a "**<u>Permitted Transfer</u>**".

(b)   Other than pursuant to Section 4.04(a)(ii) and Section 5.01(b), this Agreement shall in no way be construed to preclude the Supporting Creditors from acquiring additional Claims; *provided*, *however*, that if a Supporting Creditor acquires EFIH Unsecured Note Claims after the date hereof, (i) such Supporting Creditor, as applicable, shall promptly notify the EFH/EFIH Debtors, as applicable, at the contact information on the Transfer Agreement of such acquisition, including the amount of such acquisition, and (ii) such additional Claims shall automatically and immediately upon acquisition by such Supporting Creditor, as applicable, be deemed to be subject to the terms and conditions of this Agreement (regardless of when or whether notice of such acquisition is given to the EFH/EFIH Debtors).

(c)   Notwithstanding anything to the contrary herein, (i) a Qualified Marketmaker that acquires any of the Claims of a Supporting Creditor with the purpose and intent of acting as a Qualified Marketmaker for such Claims, shall not be required to execute and deliver a Transfer Agreement or otherwise agree to be bound by the terms and conditions set forth in this Agreement if such Qualified Marketmaker transfers such Claims (by purchase, sale, assignment, participation, or otherwise) as soon as reasonably practicable, and in no event later than the earlier of (A) one (1) Business Day prior to any voting deadline established by the Bankruptcy Court with respect to the Alternative E-Side Plan (solely if the Qualified Marketmaker acquires such Claims prior to such voting deadline) and (B) within ten (10) calendar days of its acquisition, to a Permitted Transferee and the Transfer otherwise is a Permitted Transfer

(including, for the avoidance of doubt, the requirement that such transferee execute a Transfer Agreement in accordance with Section 4.04(a)); (ii) to the extent any Party is acting solely in its capacity as a Qualified Marketmaker, it may Transfer any ownership interests in Claims of any Supporting Creditor that it acquires from a holder of such Claims that is not, and was not required to be, a Party to a transferee that is not a Party at the time of such Transfer without the requirement that such transferee be or become a signatory to this Agreement or execute a Transfer Agreement; and (iii) a Supporting Creditor may Transfer any of its Claims pursuant to or in connection with any repurchase transaction, reverse repurchase transaction, or any swap or other derivative transaction without satisfying the requirements set forth in this Section 4 only if, in connection with such Transfer, such Supporting Creditor (or a wholly-owned subsidiary controlled by it) retains the contractual right to exercise any voting right or other direction that may be made on account of such Claims, and such Supporting Creditor exercises (or causes its wholly-owned subsidiary controlled by it to exercise) such rights so that the Transferred Claims are voted in accordance with this Agreement, the transferee thereof does not otherwise take any action inconsistent with the Supporting Creditors' obligations under this Agreement and such Supporting Creditor remains bound by, and continues to comply with, the terms and conditions of this Agreement.  For purposes of subclause (iii), a Person shall be deemed to "control" another person if such person possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of such other Person, whether through the ownership of voting securities, by contract, or otherwise.  As used herein, the term "**Qualified Marketmaker**" means an entity that (a) holds itself out to the public or the applicable private markets as standing ready in the ordinary course of business to purchase from customers and sell to customers Claims (or enter with customers into long and short positions in Claims), in its capacity as a dealer or market maker in Claims and (b) is, in fact, regularly in the business of making a market in claims against issuers or borrowers (including debt securities or other debt).

(d)    This Section 4.04 shall not impose any obligation on any EFH/EFIH Debtor to issue any "cleansing letter" or otherwise publicly disclose information for the purpose of enabling any Supporting Creditor to Transfer any of its Claims.  Notwithstanding anything herein to the contrary, to the extent any of the EFH/EFIH Debtors and another Party have entered into separate confidentiality agreements (each such confidentiality agreement, a "**Confidentiality Agreement**"), the terms of such Confidentiality Agreements shall continue to apply and remain in full force and effect according to their respective terms.

(e)    Any Transfer made in violation of this Section 4.04 shall be void *ab initio*.  Any Supporting Creditor that effectuates a Permitted Transfer to a Permitted Transferee shall have no liability under this Agreement arising from or related to the failure of the Permitted Transferee to comply with the terms of this Agreement.

**Section 5. *Representations, Warranties, and Covenants*.**

5.01.    <u>Supporting Creditor Representations, Warranties, and Covenants</u>.    Each Supporting Creditor, severally, and not jointly, represents, warrants, and covenants to each other Party that:

(a)    it is, as of the Agreement Effective Date, the beneficial owner (including pursuant to any swap, repurchase, or derivative transaction) of a Claim in the Class and face amount

indicated on such Supporting Creditor's signature block to this Agreement, or is the nominee, investment manager, or advisor for beneficial holders of such Claim, and of no other Claim or Interest in such Class or Classes, which amount each Party understands and acknowledges shall not be publicly shared;

(b)    it has the requisite power and authority to act on behalf of, vote and consent to matters concerning its Claims and, with respect to any Claim beneficially held through any swap, repurchase or derivative transaction, it has the right (i) to demand the counterparty thereof to retransfer such Claim to the applicable Party and/or (ii) to instruct (directly or indirectly) the counterparty thereof with respect to the exercise of any voting right or other direction that may be made on account of such Claim; and

(c)    its Claims are free and clear of any pledge, lien, security interest, charge, claim, equity, option, proxy, voting restriction, right of first refusal, or other limitation on disposition, transfer, or encumbrances of any kind, that would adversely affect in any way such Supporting Creditor's ability to perform any of its obligations under this Agreement at the time such obligations are required to be performed.

5.02.    <u>Mutual Representations, Warranties, and Covenants</u>. Each Party, severally, and not jointly, represents, warrants, and covenants to each other Party that:

(a)    <u>Enforceability</u>. It is validly existing and in good standing under the laws of the jurisdiction of its organization, and this Agreement is a legal, valid, and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by applicable laws relating to bankruptcy, reorganization, or liquidation, or otherwise limiting creditors' rights generally, or by equitable principles relating to enforceability, and, in the case of the EFH/EFIH Debtors, entry of the PSA Approval Order.

(b)    <u>No Consent or Approval</u>. Except as expressly provided in this Agreement (including the exhibits hereto), any Alternative E-Side Plan Document, any Alternative E-Side Restructuring Document, or the Bankruptcy Code, no consent or approval is required by any other person or entity in order for it to effectuate the transactions contemplated by, and perform the respective obligations under, this Agreement.

(c)    <u>Power and Authority</u>. Except as expressly provided in this Agreement (including the exhibits hereto) or the Bankruptcy Code, it has all requisite corporate or other power and authority to enter into, execute, and deliver this Agreement and to effectuate the transactions contemplated by, and perform the respective obligations under, this Agreement.

(d)    <u>Governmental Consents</u>. Subject to necessary Bankruptcy Court approval and/or regulatory approvals associated with the transactions contemplated by this Agreement, including any Bankruptcy Court approval and/or regulatory approval for any Alternative E-Side Plan Document, the execution, delivery, and performance by it of this Agreement does not, and shall not, require any registration or filing with, consent or approval of, or notice to, or other action to, with or by, any federal, state, or other governmental authority or regulatory body.

(e)    <u>No Conflicts</u>. Subject to necessary Bankruptcy Court approval and/or regulatory approvals associated with the transactions contemplated by this Agreement, including any

Bankruptcy Court approval and/or regulatory approval for any Alternative E-Side Plan Document, the execution, delivery, and performance of this Agreement, does not and shall not violate any provision of law, rules or regulations applicable to it in any material respect. Moreover, the execution, delivery, and performance of this Agreement does not and shall not: (i) violate its certificate of incorporation, bylaws, or other organizational documents; or (ii) conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under any contractual obligation to which it is a party, which conflict, breach, or default, would have a material adverse effect on the transactions contemplated by this Agreement.

(f)    No Bar. As of the date hereof, it has no actual knowledge of any event that, due to any fiduciary or similar duty to any other person or entity, would prevent it from taking any action required of it under this Agreement.

**Section 6. *ACKNOWLEDGEMENT*.**    NOTWITHSTANDING ANY OTHER PROVISION HEREIN, THIS AGREEMENT IS NOT AND SHALL NOT BE DEEMED TO BE AN OFFER WITH RESPECT TO ANY SECURITIES OR SOLICITATION OF VOTES FOR THE ACCEPTANCE OF A PLAN OF REORGANIZATION FOR PURPOSES OF SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE OR OTHERWISE, AND ANY SUCH OFFER OR SOLICITATION MAY BE MADE ONLY IN COMPLIANCE WITH ALL APPLICABLE SECURITIES LAWS AND PROVISIONS OF THE BANKRUPTCY CODE.    THE RELEVANT PARTIES WILL NOT SOLICIT ACCEPTANCES OF THE ALTERNATIVE E-SIDE PLAN, AS APPLICABLE, FROM THE RELEVANT PARTIES IN ANY MANNER INCONSISTENT WITH THE BANKRUPTCY CODE OR APPLICABLE NON-BANKRUPTCY LAW.

**Section 7. *Additional Key Terms Regarding EFIH PIK Settlement*.**

(a)    In addition to the terms set forth in **Schedule 1** (as shall be set forth in the Alternative E-Side Plan), the EFIH PIK Settlement shall contain the terms set forth below in this Section 7.

(b)    Prior to the EFH Effective Date, the Makewhole Litigation Oversight Committee shall be comprised of four representatives (all of whom shall be an Initial Supporting Creditor or a representative thereof and shall not hold, or have any interests in, the EFIH First Lien Notes or EFIH Second Lien Notes, each an "**Unconflicted Initial Supporting Creditor**").    Each Unconflicted Initial Supporting Creditor shall appoint one representative to the Makewhole Litigation Oversight Committee, which shall be established on the Confirmation Date (the "**Pre-Effective Date Makewhole Litigation Oversight Committee**").    The Plan Supplement shall include (i) the governance and mechanics of the Pre-Effective Date Makewhole Litigation Oversight Committee and (ii) the governance, mechanics and composition, of the Makewhole Litigation Oversight Committee after the EFH Effective Date, each of which shall be negotiated in good faith by and among the Supporting Creditors.    Notwithstanding the foregoing, unless otherwise agreed to by each of the Unconflicted Initial Supporting Creditors, any decision of the Pre-Effective Date Makewhole Litigation Oversight Committee shall be by consent of those holding a majority of the total amount of EFIH Unsecured Notes held by the Unconflicted Initial Supporting Creditors.    The benefit of any settlement of the Secured Makewhole Claims approved by the Makewhole Litigation Oversight Committee or, prior to the Confirmation Date, by the

Initial Supporting Creditors, shall be distributed *ratably* among all Holders of Allowed Class B5 Claims and Allowed Class B6 Claims pursuant to the terms of the Alternative E-Side Plan until such time such Holders have received a 100% recovery on account of their respective Allowed Claims  For the avoidance of doubt, neither the Initial Supporting Creditors nor the members of the Makewhole Litigation Oversight Committee, as applicable, shall receive any consideration in excess of their *pro rata* share as holders of EFIH Unsecured Notes.

(c)     Notwithstanding the foregoing or anything to the contrary in **Schedule 1**, any consent rights or other rights granted to the Makewhole Litigation Oversight Committee concerning the settlement of the EFIH First Lien Makewhole Claims and/or EFIH Second Lien Makewhole Claims or otherwise shall be effective as of the date of the PSA Approval Order. Until the appointment of the Pre-Effective Date Makewhole Litigation Oversight Committee on the Confirmation Date, any decision regarding the settlement of the EFIH First Lien Makewhole Claims and/or EFIH Second Lien Makewhole Claims or otherwise shall be by consent of those holding a majority of the total amount of EFIH Unsecured Notes held by the Unconflicted Initial Supporting Creditors.

(d)     Within three (3) Business Days after this Agreement becomes effective as to the Threshold Supporting Creditors, the Supporting Creditors and the PIK Notes Trustee shall withdraw, without prejudice, any outstanding discovery requests directed at the EFH/EFIH Debtors and NEE, its affiliates, or its Representatives in connection with the Chapter 11 Cases. For the avoidance of doubt, if this Agreement is terminated pursuant to Section 8, nothing herein shall preclude the Supporting Creditors or the PIK Notes Trustee from pursuing additional discovery against the EFH/EFIH Debtors and NEE, its affiliates, or its Representatives and all rights are reserved with respect thereto;

(e) The EFH/EFIH Debtors shall consult with the Supporting Creditors concerning any extensions of the deadlines under the NEE PSA and/or the Merger Agreement by which (i) the EFH/EFIH Debtors obtain entry of the Alternative E-Side Confirmation Order or (ii) the March 29, 2017 Initial Drop-Dead Date and Final Drop Dead Date (each as defined in the NEE PSA) must occur, in each case in advance of agreeing to such extensions.

(f) In addition to obligations set forth in Section 4.01(a) hereof, no later than three (3) Business Days after the entry of the PSA Approval Order, the EFH/EFIH Debtors shall, and the Threshold Supporting Creditors shall direct the PIK Notes Trustee to, jointly file a motion or other pleading (individually and collectively, the "**PIK Makewhole Litigation Stay Motion**") requesting that the United States District Court for the District of Delaware (the "**District Court**") or other court with jurisdiction enter an order staying (the order issuing such stay, the "**PIK Makewhole Litigation Stay Order**") the appeal to which the PIK Notes Trustee is a party seeking payment on Makewhole Claims for the PIK Notes (Case No. 15-1099) (the "**PIK Makewhole Litigation**"), *provided, however,* that if the District Court grants the EFH/EFIH Debtors' motion for summary affirmance pending in the PIK Makewhole Litigation (Dkt. No. 27) or otherwise disposes of the PIK Makewhole Litigation prior to the entry of the PIK Makewhole Litigation Stay Order, the Threshold Supporting Creditors may direct the PIK Notes Trustee to further appeal the PIK Makewhole Litigation to the Court of Appeals for the Third Circuit prior to the EFH/EFIH Debtors and the PIK Notes Trustee, as directed by the Threshold

15

Supporting Creditors, jointly filing the PIK Makewhole Litigation Stay Motion at the Court of Appeals for the Third Circuit.

(g)     Immediately prior to the Effective Time (as defined in the Merger Agreement), the EFH/EFIH Debtors shall, and the Threshold Supporting Creditors shall direct the PIK Notes Trustee to, enter into a Stipulation of Dismissal Pursuant to Rule 42(B) of the Federal Rules of Appellate Procedure (or other similar document), sufficient to, subject to the Bankruptcy Code and applicable law, irrevocably dismiss with prejudice (y) the PIK Makewhole Litigation and (z) the District Court appeal to which the PIK Notes Trustee is a party seeking payment of the PPI Claims for the PIK Notes (Case No. 15-1098) (the "**PIK PPI Litigation"**, and together with the PIK Makewhole Litigation, the "**PIK Notes Appeals**" and such stipulation or other document, individually and collectively, the "**PIK Notes Appeals Withdrawal Stipulation**").

(h)     Neither the EFH/EFIH Debtors nor the Supporting Creditors shall, and the Supporting Creditors shall not direct or permit the PIK Notes Trustee to, directly or indirectly, object to, take any other action or refrain from taking any action which could reasonably be expected to interfere with, delay or impede: (A) the filing or submission of the PIK Notes Appeals Withdrawal Stipulation to any court or tribunal before which the PIK Notes Appeals are pending; or (B) the dismissal with prejudice of the PIK Notes Appeals in accordance with the terms and provisions of this Agreement or the PIK Notes Appeals Withdrawal Stipulation.

(i) The EFH/EFIH Debtors and the Supporting Creditors shall, and the Supporting Creditors shall direct the PIK Notes Trustee to, take any and all further acts, deeds, and assurances (including, without limitation, executing and delivering certificates, instruments, and documents reasonably requested by the EFH/EFIH Debtors) as such parties may deem reasonably necessary or desirable from time to time in order to: (A) carry out more effectively the purposes of this Section 7; and (B) cause the dismissal with prejudice of the PIK Notes Appeals in accordance with this Agreement or the PIK Notes Appeals Withdrawal Stipulation.

(j)     <u>PSA Approval Order Provisions</u>.  The PSA Approval Order shall:

(i)     authorize and direct the PIK Notes Trustee to comply with the directives of the Threshold Supporting Creditors as set forth in Section 4.01(a)(ix)(C) hereof; and

(k)     <u>Duration of PIK Notes Appeals Stays</u>.  The Supporting Creditors and the EFH/EFIH Debtors each shall use commercially reasonable efforts to cause the PIK Makewhole Litigation Stay Order to be issued as promptly as practicable. Once issued, none of the Supporting Creditors or the EFH/EFIH Debtors shall take any action, and the Supporting Creditors shall use commercially reasonable efforts to cause the PIK Notes Trustee not to take any action, that would cause the PIK Makewhole Litigation Stay Order to cease to remain in effect until the earlier of (i) such time as this Agreement terminates as to the Supporting Creditors, and (ii) such time as the PIK Makewhole Litigation is irrevocably dismissed with prejudice.  Moreover, none of the Supporting Creditors or the EFH/EFIH Debtors shall take any action, and the Supporting Creditors shall use commercially reasonable efforts to cause the PIK Notes Trustee not to take any action, that would cause the currently-stayed PIK PPI Litigation to cease to remain stayed until the earlier of (i) such time as this Agreement terminates as to the

Supporting Creditors, and (ii) such time as the PIK PPI Litigation is irrevocably dismissed without prejudice.

(l)    Alternative E-Side Plan Provisions.  The Alternative E-Side Plan shall:

(i)    allow the EFIH General Unsecured Claim which shall consist of the entirety of the Allowed Claim for Holders of Class B6 Claims, without prejudice to the rights of the PIK Indenture Trustee to further exercise its charging lien pursuant to the EFIH Unsecured Notes Indenture;

(ii)    provide for a release and injunction in favor of the PIK Notes Trustee from any claims brought by any party arising from or relating to any action or inaction it takes with respect to the PIK Makewhole Claim, the PIK PPI Claim, or with respect to any action or inaction it takes pursuant to the EFIH PIK Settlement and/or at the direction of the Threshold Supporting Creditors and all litigation related thereto;

(iii)    provide that, on the EFH Effective Date, the EFHH/EFIH Debtors shall (1) pay an amount of no less than the accrued and unpaid fees incurred as of the EFH Effective Date by the PIK Notes Trustee (including all reasonable professional fees and expenses) (the "**EFIH Base Payment Amount**") and (2) not dispute that such EFIH Base Payment Amount (including any fees owed to Centerview Partners LLC ("**Centerview**"), financial advisor to the PIK Notes Trustee, pursuant to the terms of Centerview's engagement agreement with the PIK Notes Trustee, including any fees owed upon consummation of a "Transaction" (as defined in that certain original engagement letter, dated March 10, 2015)), are reasonable and allowed claims under the EFIH Unsecured Notes Indentures; *provided*, *however*, that if the Bankruptcy Court finds that the EFIH Base Payment Amount shall not be paid on the EFH Effective Date, such ruling shall not give rise to any rights or remedies under Section 8.01 of this Agreement. The payment of such amounts to the PIK Notes Trustee in accordance with the terms herein shall not be subject to disgorgement, setoff, recoupment, reduction or reallocation of any kind in the event this Agreement is subsequently terminated and is without prejudice to the PIK Notes Trustee's subsequent exercise of any charging lien.  The payment of the EFIH Base Payment Amount shall be considered a "charging lien advance" pursuant to Sections 6.12, 6.13 and 7.07 of the EFIH PIK Notes Indenture; and

(iv)    provide that if the Class of EFIH Unsecured Creditors votes in favor of the Alternative E-Side Plan, all Holders of EFIH Unsecured Notes Claims will be bound by the EFIH PIK Settlement and all Holders of EFIH Unsecured Notes Claims will be barred from seeking additional recovery on account of any Makewhole Claims or PPI Claims.

(m)Alternative E-Side Confirmation Order.  The Alternative E-Side Confirmation Order shall (i) approve an Alternative E-Side Plan containing the terms and provisions set forth in Section 7 and **Schedule 1**; and (ii) authorize and direct the PIK Notes Trustee to comply with the directives of the Threshold Supporting Creditors.

## Section 8. *Termination Events*.

8.01.    Supporting Creditors Termination Events.  Except as expressly set forth herein, this Agreement shall automatically terminate as between the Supporting PIK Parties and the

EFH/EFIH Debtors without further action by the Terminating Supporting Creditor (as defined below), following the delivery to the other Parties of a written notice in accordance with Section 10.11 hereof by, as applicable, the Supporting Creditors holding at least 50.1 % of the aggregate amount of EFIH Unsecured Note Claims held by all Supporting Creditors (the "**Required Supporting PIK Creditors**"), in each case, in the exercise of their discretion, upon the occurrence of or any time after any of the following events has occurred and is continuing:

(a) the filing of any amendment or modification of the Alternative E-Side Plan in a manner inconsistent with this Agreement and materially adverse to the Supporting Creditors upon which a termination pursuant to this Section 8.01 would be effective (such creditors, the "**Terminating Supporting Creditors**") (it being understood that any amendment or modification of the EFIH PIK Settlement made without the consent of the Required Supporting PIK Creditors will be considered materially adverse to the applicable Terminating Supporting Creditors and that any decrease of the Merger Sub Cash Amount shall be considered materially adverse to the Supporting Creditors) and such filing has not been withdrawn within ten days after delivery of a written notice by the Terminating Supporting Creditor or Creditors to the other Parties in accordance with Section 10.11 hereof; *provided, further however*, that the termination right in this clause (a) shall not be available if any Terminating Supporting Creditor directly or indirectly supported, or encouraged any other entity to directly or indirectly support, any request for such an amendment or modification of the Alternative E-Side Plan;

(b) the material breach by the EFH/EFIH Debtors of any of the commitments, representations, warranties, covenants, or other obligations of the EFH/EFIH Debtors as set forth in this Agreement, that would have a material adverse effect on the Alternative E-Side Plan and the transactions contemplated by this Agreement; *provided, however*, if such breach is capable of being cured, the EFH/EFIH Debtors shall have fifteen (15) business days after receiving such notice to cure any such breach;

(c) either of the PSA Approval Order or the Alternative E-Side Confirmation Order is reversed, dismissed, vacated, or amended, after entry, in a manner that would adversely affect any provisions that relate to the EFIH PIK Settlement;

(d) the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any final and non-appealable injunction, judgment, decree, charge, ruling, or order permanently restraining, enjoining, rendering illegal, or otherwise prohibiting, directly or indirectly, the transactions contemplated by this Agreement in accordance with this Agreement; *provided, however*, that the termination right in this clause (d) shall not be available if any Terminating Supporting Creditor directly or indirectly supported, or encouraged any other entity to directly or indirectly support, any request for such a final and non-appealable injunction, judgment, decree, charge, ruling, or order; *provided, further, however*, that notwithstanding the foregoing, the Parties shall have thirty (30) Business Days after issuance of such a final and non-appealable injunction, judgment, decree, charge, ruling, or order in which to obtain relief that would allow consummation of the transactions contemplated by this Agreement in accordance with this Agreement before the termination right in this clause (d) becomes effective;

(e) an examiner with expanded powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code or a trustee shall have been appointed in the Chapter 11 Cases; *provided, however*, that the termination right in this clause (e) shall not be available to any Terminating Supporting Creditor that directly or indirectly supported, or encouraged any other entity to directly or indirectly support, any request for the appointment of such an examiner or a trustee; *provided, further, however*, that the termination right in this clause (e) shall become effective five (5) Business Days after delivery of a written notice by the Terminating Supporting Creditors to the other Parties in accordance with Section 10.11 hereof;

(f) the EFH/EFIH Debtors file any motion or pleading with the Bankruptcy Court that is inconsistent with this Agreement in any respect that is material and adverse to the Terminating Supporting Creditors and such motion or pleading has not been withdrawn or is not otherwise denied by the Bankruptcy Court within five (5) Business Days of receipt of notice by the EFH/EFIH Debtors that such motion or pleading is inconsistent with this Agreement;

(g) the entry of a ruling or order by the Bankruptcy Court or any other court with appropriate jurisdiction that, in each case, would have the effect of preventing consummation of the transactions contemplated by this Agreement in a manner consistent with this Agreement; *provided, however*, that the termination right in this clause (g) shall not be available to any Terminating Supporting Creditor that directly or indirectly supported, or encouraged any other entity to directly or indirectly support, any request for such a ruling or order by the Bankruptcy Court or any other court; *provided, further, however*, that notwithstanding the foregoing, the Parties shall have thirty (30) Business Days after issuance of such a ruling or order to obtain relief that would allow consummation of the transactions contemplated by this Agreement in accordance with this Agreement before the termination right in this clause (g) becomes effective;

(h) the conversion or dismissal of any of the Chapter 11 Cases unless such conversion or dismissal, as applicable, contemplates the consummation of the transactions contemplated by this Agreement in a manner consistent with this Agreement; *provided, however*, that the termination right in this clause (h) shall not be available to any Terminating Supporting Creditor that directly or indirectly supported, or encouraged any other entity to directly or indirectly support, any request for such a conversion or dismissal of the Chapter 11 Cases; *provided, further, however*, that the termination right in this clause (h) shall become effective five (5) Business Days after delivery of a written notice by the Terminating Supporting Creditors to the other Parties in accordance with Section 10.11 hereof;

(i) the PSA Approval Order is not entered by February 5, 2017, *provided, however*, that entry of such order shall be deemed to occur upon an oral indication by the Bankruptcy Court that it is approving or will approve the requested relief;

(j) the Alternative E-Side Plan is not confirmed by February 22, 2017 or such later date, but in no event later than April 30, 2017, agreed to by NextEra in writing; *provided, however*, that entry of such order shall be deemed to occur upon an oral indication by the Bankruptcy Court that it is approving or will approve the requested relief;

(k) either of the PSA Approval Order or the Alternative E-Side Confirmation Order (each as entered by the Bankruptcy Court), or the Alternative E-Side Plan, are inconsistent with this

Agreement in a way that materially and adversely affects the EFIH PIK Settlement or the EFIH PIK Parties (it being understood that (i) any term inconsistent with Section 7 and/or Schedule 1 of this Agreement in a manner that adversely affects the EFIH Parties shall be considered material and (ii) any decrease of the Merger Sub Cash Amount shall be considered materially adverse);

(l) if the Merger Agreement is terminated; *provided, however,* notwithstanding anything to the contrary in this Section 8.01(l) or Sections 8.01(a)-(k), the Supporting Creditors shall not have a termination right under this Section 8.01 if the Merger Agreement is terminated in accordance with its terms and the EFH/EFIH Debtors pursue an alternative restructuring that preserves the EFIH PIK Settlement and is otherwise reasonably satisfactory to the Required Supporting PIK Creditors and with such other changes as may be agreed upon by the EFH/EFIH Debtors, the Required Supporting PIK Creditors, and any potential purchaser party to such alternative restructuring.

Notwithstanding anything to the contrary herein, this Agreement shall automatically terminate as between an individual Supporting Creditor (an "Individual Terminating Creditor") and the other Parties without further action by the Individual Terminating Creditor following delivery by the Individual Terminating Creditor to the other Parties of a written notice in accordance with Section 10.11 hereof by, in the exercise of its discretion, if the Alternative E-Side Plan is not confirmed by February 28, 2017 or a later date, but in no event later than May 31, 2017, agreed to by NextEra in writing; *provided, however,* that entry of such order shall be deemed to occur upon an oral indication by the Bankruptcy Court that it is approving or will approve the requested relief.

8.02.   [Reserved].

8.03.   <u>EFH/EFIH Debtor Termination Events as to the Supporting Creditors</u>.  Except as expressly set forth herein, this Agreement shall automatically terminate as between the Debtors and the Supporting Creditors without further action by the Terminating EFH/EFIH Debtor (as defined below), following the delivery to the other Parties of a written notice in accordance with Section 10.11 hereof by such Terminating EFH/EFIH Debtor (a "**Terminating EFH/EFIH Debtor**"), in the exercise of its discretion, upon the occurrence of or any time after any of the following events has occurred and is continuing:

(a)   the material breach by the Required Supporting PIK Creditors of the commitments, representations, warranties, or covenants of the Required Supporting PIK Creditors as set forth in this Agreement that would have an adverse effect on the Alternative E-Side Plan and the transactions contemplated by this Agreement; *provided, however,* if such breach is capable of being cured, the Supporting Creditors shall have fifteen (15) Business Days after receiving such notice to cure any such breach;

(b)   the Bankruptcy Court enters a final, non-appealable order denying the relief requested in the Approval Motion (other than due to any action or inaction taken by the EFH/EFIH Debtors);

(c)     the Required Supporting PIK Creditors file any motion or pleading with the Bankruptcy Court or any other court that is inconsistent with this Agreement in any respect that is adverse to the EFH/EFIH Debtors and such motion or pleading has not been withdrawn or is not otherwise denied by the Bankruptcy Court or applicable court within ten (10) Business Days of receipt of notice by the Required Supporting PIK Creditors that such motion or pleading is inconsistent with this Agreement;

(d)     the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any final and non-appealable injunction, judgment, decree, charge, ruling, or order permanently restraining, enjoining, rendering illegal, or otherwise prohibiting, directly or indirectly, the transactions contemplated by this Agreement in accordance with this Agreement; *provided, however*, that the termination right in this clause (d) shall not be available if the Terminating EFH/EFIH Debtor (i) did not use its commercially reasonable efforts to contest such injunction, judgment, decree, charge, ruling, or order prior to its becoming final and non-appealable, or (ii) directly or indirectly supported, or encouraged any other entity to directly or indirectly support, any request for such a final and non-appealable injunction, judgment, decree, charge, ruling, or order; *provided, further, however*, that notwithstanding the foregoing, the Parties shall have thirty (30) Business Days after issuance of such a final and non-appealable injunction, judgment, decree, charge, ruling, or order to obtain relief that would allow consummation of the transactions contemplated by this Agreement in accordance with this Agreement before the termination right in this clause (d) becomes effective;

(e)     an examiner with expanded powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code or a trustee shall have been appointed in the Chapter 11 Cases; *provided, however*, that the termination right in this clause (e) shall not be available if the Terminating EFH/EFIH Debtor directly or indirectly supported, or encouraged any other entity to directly or indirectly support, any request for the appointment of such an examiner or a trustee; *provided, further, however*, that the termination right in this clause (e) shall become effective five (5) Business Days after delivery of a written notice by the Terminating EFH/EFIH Debtor to the other Parties in accordance with Section 10.11 hereof;

(f)     the entry of a ruling or order by the Bankruptcy Court or any other court with appropriate jurisdiction that, in each case, would have the effect of preventing consummation of the transactions contemplated by this Agreement in a manner consistent with this Agreement; *provided, however*, that the termination right in this clause (f) shall not be available if the Terminating EFH/EFIH Debtor directly or indirectly supported, or encouraged any other entity to directly or indirectly support, any request for such a ruling or order by the Bankruptcy Court or any other court; *provided, further, however*, that notwithstanding the foregoing, the Parties shall have thirty (30) Business Days after issuance of such a ruling or order to obtain relief that would allow consummation of the transactions contemplated by this Agreement in accordance with this Agreement before the termination right in this clause (f) becomes effective;

(g)     the conversion or dismissal of any of the Chapter 11 Cases, unless such conversion or dismissal, as applicable, contemplates the consummation of the transactions contemplated by this Agreement in a manner consistent with this Agreement; *provided, however*, that the termination right in this clause (g) shall not be available if the Terminating EFH/EFIH Debtor directly or indirectly supported, or encouraged any other entity to directly or indirectly

21

support, any request for such a conversion or dismissal of the Chapter 11 Cases; *provided*, *further*, *however*, that the termination right in this clause (g) shall become effective five (5) Business Days after delivery of a written notice by the Terminating EFH/EFIH Debtor to the other Parties in accordance with Section 10.11 hereof; and

(h)    until entry of the Alternative E-Side Confirmation Order by the Bankruptcy Court, the board of directors, the board of managers, or any such similar governing body of any EFH/EFIH Debtor determines, in its sole discretion after consultation with its independent financial advisors and outside legal counsel, and based on the advice of such counsel, that proceeding with the transactions contemplated by this Agreement would be inconsistent with its applicable fiduciary duties.

8.04.    [Reserved].

8.05.    <u>Mutual Termination</u>.    This Agreement, and the obligations of all Parties hereunder, may be terminated, upon written notice to all other Parties in accordance with Section 10.11, by mutual agreement among all of the following: (a) the EFH/EFIH Debtors; and (b) the Required Supporting PIK Creditors.

8.06.    <u>Termination Upon Completion of the Restructuring Transactions</u>.    Subject to 8.01(l), this Agreement shall terminate automatically upon the occurrence of the Effective Time (as defined in the Merger Agreement), without any further required action or notice.

8.07.    <u>Limitation on Termination</u>.    The Parties acknowledge and agree that a Party's ability to terminate this Agreement shall only be available for so long as the event, condition, or circumstance giving rise to such termination right is continuing at the time of such termination.

8.08.    <u>Effect of Termination</u>.    No Party may terminate this Agreement if such Party failed to perform or comply in all material respects with the terms and conditions of this Agreement, and such failure to perform or comply caused, or resulted in, the occurrence of one or more termination events specified herein. The date on which termination of this Agreement as to a Party is effective in accordance with Section 8 shall be referred to as an "**<u>Agreement Termination Date</u>**." Upon the occurrence of an Agreement Termination Date as to a Party (but only as to such Party), except as expressly provided in this Agreement, (a) this Agreement shall be of no further force and effect with respect to such Party, (b) each Party entitled to such termination shall be released from its commitments, undertakings, and agreements under this Agreement and shall have the rights that it would have had, had it not entered into this Agreement, and shall be entitled to take all actions, whether with respect to the transactions contemplated by this Agreement or otherwise, that it would have been entitled to take had it not entered into this Agreement, and (c) the remaining Parties to this Agreement, if any, shall be released from any commitments, undertaking, and agreements owed to such terminated Party under this Agreement; *provided, however*, that this Section 8.07, Section 10.04, Section 10.06, Section 10.08, Section 10.10, Section 10.11, Section 10.12 and Section 10.14 shall survive termination of this Agreement. Notwithstanding anything to the contrary in this Agreement, the foregoing shall not be construed to prohibit any of the Parties from contesting whether any such termination is in accordance with the terms of this Agreement. Except as expressly provided in this Agreement, nothing herein is intended to, or does, in any manner waive, limit, impair, or

restrict any right of any Party, or the ability of any Party to protect and preserve its rights, remedies, and interests, including its claims against any EFH/EFIH Debtor or any other Party. Nothing in this Section 8.08 shall restrict any EFH/EFIH Debtor's right to terminate this Agreement in accordance with Section 8.03(h).

In addition, and for the avoidance of doubt, the termination rights and effect of termination provided for under this Section 8 apply only to this Agreement (without reference to the exhibits). The applicable termination rights and effect of termination of other agreements between or among any of the Parties, including those attached to this Agreement as exhibits, are governed according to the respective terms and conditions of such agreements.

**Section 9.** *Amendments*. This Agreement may not be modified, amended, or supplemented in any manner except in writing signed by (i) each of the EFH/EFIH Debtors; and (ii) the Required Supporting PIK Creditors; *provided*, *however*, that the terms of the EFIH PIK Settlement set forth in Section 7 and on Schedule 1 of this Agreement shall not be modified, amended, or supplemented without the prior written consent of each Supporting Creditor. Any proposed modification, amendment, or supplement that is not approved by the requisite Parties as set forth above shall be ineffective and void *ab initio*. For the avoidance of doubt, the limitations and requirements for amendment, modification, or supplementation provided for in this Section 9 apply only to this Agreement (without references to the exhibits). Notwithstanding anything to the contrary in this Agreement, the applicable limitations and requirements to modify, amend, supplement, or waive any provision of other agreements between or among any of the Parties, including those attached to this Agreement as exhibits, are governed according to the respective terms and conditions of such agreements.

**Section 10.**    *Miscellaneous*.

10.01. <u>Further Assurances</u>. Subject to the other terms of this Agreement, the Parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters herein specified, as may be reasonably appropriate or necessary, or as may be required by order of the Bankruptcy Court, from time to time, to effectuate the Alternative E-Side Plan and the transactions contemplated by this Agreement.

10.02. <u>Complete Agreement</u>. This Agreement (including any exhibits or schedules hereto including as actually executed) and the other agreements named herein constitute the entire agreement of the Parties with respect to the subject matter hereof, and cancel, merge, and supersede all other prior or contemporaneous oral or written agreements, understandings, representations, and warranties both written and oral, among the Parties, with respect to the subject matter hereof. Each Party hereto agrees that, except for the representations and warranties contained in this Agreement, none of the Parties make any other representations or warranties, and each Party hereby disclaims any other representations or warranties, express or implied, or as to the accuracy or completeness of any other information, made by, or made available by, itself or any of its representatives, with respect to, or in connection with, the negotiation, execution, or delivery of this Agreement or the transactions contemplated by this Agreement, notwithstanding the delivery or disclosure to the other or the other's representatives of any documentation or other information with respect to any one or more of the foregoing

10.03.  <u>Headings</u>.  The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

10.04.  <u>GOVERNING LAW; SUBMISSION TO JURISDICTION; SELECTION OF FORUM</u>.  THIS AGREEMENT SHALL BE CONSTRUED, PERFORMED, AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT GIVING EFFECT TO ITS PRINCIPLES OR RULES OF CONFLICT OF LAWS TO THE EXTENT SUCH PRINCIPLES OR RULES WOULD REQUIRE OR PERMIT THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION. EACH OF THE PARTIES HERETO (I) SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT, OR, IF THE BANKRUPTCY COURT DECLINES TO ACCEPT JURISDICTION OVER A PARTICULAR MATTER, THEN THE CHANCERY COURT OF THE STATE OF DELAWARE, AND IF THE CHANCERY COURT OF THE STATE OF DELAWARE DECLINES JURISDICTION, THEN ANY STATE OR FEDERAL COURT SITTING IN DELAWARE (THE "**CHOSEN COURTS**") IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, (II) AGREES THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN THE CHOSEN COURTS, AND (III) AGREES NOT TO BRING ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY OTHER COURT. EACH OF THE PARTIES HERETO AGREES THAT A FINAL JUDGMENT (SUBJECT TO ANY APPEALS THEREFROM) IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY APPLICABLE LAW. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT IT MAY LEGALLY AND EFFECTIVELY DO SO, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUIT, ACTION, OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT IN THE CHOSEN COURTS IN ACCORDANCE WITH THE PROVISIONS OF THIS SECTION 10.04. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING IN THE CHOSEN COURTS. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY CONSENTS TO SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING IN THE MANNER PROVIDED FOR NOTICES IN SECTION 10.11. NOTHING IN THIS AGREEMENT WILL AFFECT THE RIGHT OF ANY PARTY TO THIS AGREEMENT TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW.

10.05.  <u>Confidentiality; Disclosure</u>. Each Party shall keep strictly confidential and shall not, without the prior written consent of the applicable Supporting Creditor, disclose the holdings of any individual Supporting Creditor; *provided*, *however*, that the EFH/EFIH Debtors may disclose (i) such information to the extent that, after consultation with counsel and upon notice to the applicable Supporting Creditor, it determines in good faith that it is required to do so by any law, rule, regulation (including federal securities laws and regulations), or by any governmental, judicial, or regulatory authority, including the Bankruptcy Court, and (ii) the aggregate principal

24

amount or aggregate percentage of each Class of Claims held by the Supporting Creditors.  This Section 10.05 shall not apply with respect to any information that is or becomes available to the public other than as a result of a disclosure in violation of a Party's obligations under this Agreement.

10.06.  <u>WAIVER OF TRIAL BY JURY</u>.  EACH PARTY HERETO ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE EACH SUCH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE, AGENT, OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (B) EACH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (C) EACH PARTY MAKES THIS WAIVER VOLUNTARILY, AND (D) EACH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 10.06.

10.07.  <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts (including by electronic means), each such counterpart being deemed to be an original instrument, and all such counterparts taken together constituting one and the same agreement.

10.08.  <u>Interpretation and Rules of Construction</u>.  This Agreement is the product of negotiations among the Parties, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof.  The Parties were each represented by counsel during the negotiations, and drafting of this Agreement and continue to be represented by counsel.  In addition, this Agreement shall be interpreted in accordance with section 102 of the Bankruptcy Code.

10.09.  <u>Successors and Assigns</u>.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable.  There are no third party beneficiaries under this Agreement, and, except as otherwise expressly permitted herein, the rights or obligations of any Party under this Agreement may not be assigned, delegated, or transferred to any other person or entity.

10.10.  <u>Independent Due Diligence and Decision Making</u>.  Each EFH/EFIH Debtor, the PIK Notes Trustee, and each Supporting Creditor hereby confirms that it is (a) a sophisticated party with respect to the matters that are the subject of this Agreement, (b) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement and acknowledges and agrees that it voluntarily and of its own choice and not under coercion or duress enters into this Agreement, (c) has adequate information concerning the matters that are

the subject of this Agreement, and (d) has independently and without reliance upon any other Party hereto, or any of their affiliates, or any officer, employee, agent, or representative thereof, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that it has relied upon each other Party's express representations, warranties, and covenants in this Agreement.

    10.11.  <u>Notices</u>. All notices hereunder shall be deemed given if in writing and delivered, if sent by electronic mail, courier, or registered or certified mail (return receipt requested) to the following addresses (or at such other addresses as shall be specified by like notice):

      (a)      if to the EFH/EFIH Debtors, to:

Energy Future Holdings Corp.
1601 Bryan Street,
Dallas, Texas 75201
Attention: Andrew Wright
E-mail addresses:
          andrew.wright@energyfutureholdings.com


with copies (which shall not constitute notice) to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Facsimile: (212) 446-4900
Attention: Edward O. Sassower, P.C. and Aparna Yenamandra
E-mail addresses:  edward.sassower@kirkland.com
          Aparna.yenamandra@kirkland.com
--and--

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Facsimile: (312) 862-2200
Attention: James H.M. Sprayregen, P.C., Marc Kieselstein, P.C., and Chad J. Husnick
E-mail addresses:  james.sprayregen@kirkland.com
          marc.kieselstein@kirkland.com,
          chad.husnick@kirkland.com

--and--

Proskauer Rose LLP
Three First National Plaza
70 W. Madison Street, Suite 3800
Chicago, Illinois 60602

Facsimile: (312) 962-3551
Attention: Jeff J. Marwil, Mark. K. Thomas, and Peter J. Young
E-mail addresses:  jmarwil@proskauer.com
                   mthomas@proskauer.com
                   pyoung@proskauer.com

--and--

Cravath Swaine and Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Facsimile: (212) 474-3700
Attention: Philip Gelston
E-mail address:  pgelston@cravath.com

--and--

Jenner & Block LLP
919 Third Avenue
New York, New York 10022
Facsimile: (212) 891-1699
Attention: Richard Levin
E-mail address:  rlevin@jenner.com


(b)      if to the PIK Notes Trustee, to:

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Attention: Ira S. Dizengoff and Scott L. Alberino
E-mail addresses:  idizengoff@akingump.com
                   salberino@akingump.com

--and--

Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654
Attn: Harold L. Kaplan and Mark F. Hebbeln
Email addresses: hkaplan@foley.com
                 mhebbeln@foley.com

--and--

27

UMB Bank, N.A.
1010 Grand Avenue
4th Floor
Kansas City, Missouri  64108
Attention: Mark Flannagan
E-mail address:  Mark.Flannagan@umb.com

For such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above. Any notice given by delivery, mail, or courier shall be effective when received.

10.12.  Waiver.  If this Agreement is terminated for any reason in accordance with its terms, the Parties fully reserve any and all of their rights, except as otherwise expressly set forth in this Agreement.  Pursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, this Agreement and all negotiations relating hereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms or to pursue the consummation of the Alternative E-Side Plan.

10.13.  Specific Performance.  It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party, that such breach would represent irreparable harm, and that each non-breaching Party shall be entitled to specific performance of the terms hereof and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages), including an order of the Bankruptcy Court or other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder, in addition to any other remedy at law or equity; *provided*, *however*, that no Party shall be liable for special, indirect, consequential, or punitive damages arising out of, in connection with, or relating to this Agreement or any agreement or instrument contemplated hereby.

10.14.  Several, Not Joint, Obligations.  The agreements, representations, warranties, and obligations of the Parties under this Agreement are, in all respects, several and not joint.

10.15.  Severability.  If any term or other provision of this Agreement shall be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of this Agreement is not affected in any manner materially adverse to any Party. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the essential terms and conditions of this Agreement are fulfilled to the extent possible.

10.16.  Remedies Cumulative.  All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

10.17.  <u>NEE PSA</u>.  This Agreement is in addition to, and does not supersede, the NEE PSA.  As between the EFH/EFIH Debtors and NEE, to the extent of any conflict between the provisions of this Agreement and the NEE PSA, this Agreement shall control; *provided*, *however*, that notwithstanding anything to the contrary in this Agreement, the EFH/EFIH Debtors shall be permitted to take any action (or refrain from taking any action) to the extent necessary to comply with the NEE PSA or Merger Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement on the day and year first above written.

[*Remainder of page intentionally left blank.*]

29

*Execution Version*

-- *EFIH* --
**Settlement Term Sheet**

*This term sheet sets forth the material terms and conditions of a settlement proposal from the Initial Supporting Creditors (as defined in the EFIH Settlement Agreement). Capitalized terms used but not otherwise defined in this term sheet have the meaning ascribed to them in the Filed Alternative E-Side Plan, as has been and will be further amended to reflect the terms of this settlement.* [1]

| Term | Description |
|---|---|
| **Documentation** | The below settlement terms will be effectuated through plan support agreement (the "<u>EFIH Settlement Agreement</u>") entered into by and among the (a) EFH Debtors and EFIH Debtors, and (b) the Initial Supporting Creditors and consistent in all respects with the Plan Support Agreement entered into between the EFH Debtors, the EFIH Debtors, the Plan Sponsor, and the Fidelity Funds.<br><br>The transactions contemplated by the EFIH Settlement Agreement will also be set forth in an amended version of the Plan on file as of the date hereof, which will supersede the Plan on file as of the date hereof (the "<u>Amended Plan</u>"). For the avoidance of doubt, the Amended Plan shall not modify any other provisions of the Plan on file as of the date hereof other than as set forth herein. |
| **Binding Effect** | The EFIH Settlement Agreement shall become effective and binding on the Initial Supporting Creditors upon the execution of the EFIH Settlement Agreement by such parties and the EFH and EFIH Debtors (the "<u>EFIH Settlement Agreement Execution Date</u>"); *provided, however,* that the EFIH Settlement Agreement shall not be binding upon the EFIH Debtors or EFH Debtors until such time as the Bankruptcy Court enters an order authorizing the EFH Debtors and EFIH Debtors to enter into, and perform under, the EFIH Settlement Agreement (the "<u>EFIH Settlement Agreement Order</u>"). |
| **Amended Plan Support Undertaking** | Upon the EFIH Settlement Agreement Execution Date (or the date of execution of the EFIH Settlement Agreement, as applicable), subject to their review and acceptance of the Amended Plan, and subject to receipt of a disclosure statement reflecting the modifications set forth in the Amended Plan and approved by the Bankruptcy Court as containing adequate information pursuant to section 1125 of the Bankruptcy Code |

---

[1]    The figures contained herein assume an EFH Effective Date of April 30, 2017.

| Term | Description |
|------|-------------|
|  | (the "<u>Amended Disclosure Statement Order</u>"), the EFIH Unsecured Notes Trustee and the Supporting EFIH Unsecured Creditors shall support, and shall not object to, litigate against, or otherwise impair, hinder, or delay, the EFH Debtors' and EFIH Debtors' pursuit of confirmation and consummation of the Amended Plan or approval of any related transactions, documents, or settlements in the Chapter 11 Cases. |
| **Establishment of Claims Reserve** | On the EFH Effective Date, the EFIH Debtors shall establish an interest-bearing account using proceeds from the Merger Sub Cash Amount containing funds on account of (a) the maximum amount that could ultimately be Allowed as of the EFH Effective Date in respect of the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims based on the EFH/EFIH Debtors' books and records, determined in consultation with the Initial Supporting Creditors, or as ordered by the Bankruptcy Court, (b) the EFH/EFIH Debtors' good-faith estimate, determined in consultation with the Initial Supporting Creditors (or in an amount ordered by the Bankruptcy Court) of Additional Interest and interest on interest accruing on account of the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims for a period of three years (or more if so ordered by the Bankruptcy Court), until such time such claims may become Allowed and are paid in full, in Cash, (c) the EFH/EFIH Debtors' good-faith estimate, determined in consultation with the Initial Supporting Creditors (or in an amount ordered by the Bankruptcy Court), of post-EFH Effective Date fees that may be Allowed under the EFIH First Lien Notes or EFIH Second Lien Notes, and (d) any other amounts ordered by the Bankruptcy Court to be set aside on account of the EFIH First Lien Note Claims and/or EFIH Second Lien Note Claims (collectively, (a) − (d), the "<u>EFIH Claims Reserve</u>"); *provided*, *however*, Reorganized EFIH shall have no obligation to fund the EFIH Claims Reserve with Cash on hand after the EFH Effective Date and the EFIH Claims Reserve shall be funded solely using the Merger Sub Cash Amount and Cash on hand at EFIH immediately prior to the EFH Effective Date.  For the avoidance of doubt, no amount of Cash on hand at EFH shall be used to fund the EFIH Claims Reserve.<br><br>Notwithstanding anything to the contrary herein, the EFIH Claims Reserve shall be established for a period of three years, unless more is otherwise ordered by the Bankruptcy Court. |
| **EFIH First Lien Claims** | The Amended Plan would reflect the following construct:<br><br>• On the EFH Effective Date, each Holder of an EFIH First Lien |

| Term | Description |
|------|-------------|
| | Note Claim would receive (a) any accrued but unpaid postpetition interest (including any Additional Interest and interest on interest accrued as of the EFH Effective Date) and (b) subject to the fee review process set forth in the Plan Supplement (as may be further modified, amended, or supplemented in advance of the Confirmation Hearing), documented and invoiced fees and expenses and indemnification claims incurred through the EFH Effective Date, including those reasonable and documented fees and expenses and indemnification claims incurred in connection with any appeal, remand, or other litigation of the EFIH First Lien Makewhole Claims (the "<u>EFIH First Lien Fees</u>") as of the EFH Effective Date.  As set forth above an amount equal to 100% recovery on account of Makewhole Claims, consisting of the principal Makewhole Claim and any Additional Interest and interest on interest as of the EFH Effective Date (the "<u>EFIH First Lien Makewhole Claims</u>"), an amount equal to the EFH/EFIH Debtors' estimate of post-EFH Effective Date fees Allowed under the EFIH First Lien Notes Indenture, and any other amounts ordered by the Bankruptcy Court to be set aside in the EFIH Claims Reserve, shall be set aside in the EFIH Claims Reserve. |
| | • The EFIH First Lien Notes Trustee will receive a Lien on the EFIH Claims Reserve (except with respect to an amount equal to the value of Cash on hand at EFH Corp. as of the EFH Effective Date) until the later of such time that (A) the EFIH First Lien Makewhole Claims have either been (1) Allowed (whether before, on, or after the EFH Effective Date) and any interest accrued but not paid on the EFH Effective Date has been paid in full (to the extent Allowed), in Cash or (2) disallowed by Final Order, which Lien shall have priority over all other Liens on the EFIH Claims Reserve or (B) subject to the fee review process set forth in the Plan Supplement, as may be further modified, amended, or supplemented in advance of the Confirmation Hearing, the reasonable and documented EFIH First Lien Fees incurred in connection with any appeal, remand, or other litigation of the EFIH First Lien Makewhole Claims have been satisfied . |
| **EFIH Second Lien Note Claims** | The Amended Plan would reflect the following construct:<br><br>• On the EFH Effective Date, each Holder of an EFIH Second Lien Note Claim would receive (a) the principal amount outstanding of the EFIH Second Lien Notes, (b) any accrued but unpaid |

| Term | Description |
|------|-------------|
| | postpetition interest (including any Additional Interest and interest on interest accrued as of the EFH Effective Date), and (c) subject to the fee review process set forth in the Plan Supplement (as may be further modified, amended, or supplemented in advance of the Confirmation Hearing), documented and invoiced fees and expenses and indemnification claims incurred through the EFH Effective Date, including those reasonable and documented fees and expenses and indemnification claims incurred in connection with any appeal, remand, or other litigation of any Makewhole Claims as of the EFH Effective Date (the "EFIH Second Lien Fees"). As set forth above, an amount equal to a 100% recovery on account of Makewhole Claims, consisting of the principal Makewhole Claim and any Additional Interest and interest on interest as of the EFH Effective Date (the "EFIH Second Lien Makewhole Claims"), an amount equal to the EFH/EFIH Debtors' estimate of post-EFH Effective Date fees Allowed under the EFIH Second Lien Notes Indenture, and any other amounts ordered by the Bankruptcy Court to be set aside in the EFIH Claims Reserve shall be set aside in the EFIH Claims Reserve.<br><br>• The EFIH Second Lien Notes Trustee will receive a Lien on the EFIH Claims Reserve (except with respect to an amount equal to the value of Cash on hand at EFH Corp. as of the EFH Effective Date) until the later of such time the EFIH Second Lien Makewhole Claims have (A) either been (1) Allowed (whether before, on, or after the EFH Effective Date) and any interest accrued but not paid on the EFH Effective Date has been paid in full (to the extent Allowed), in Cash or (2) disallowed by Final Order, which Lien shall have priority over all other Liens on the EFIH Claims Reserve, except the Lien provided to the EFIH First Lien Trustee or (B) subject to the fee review process set forth in the Plan Supplement, as may be further amended, modified, or supplemented in advance of the Confirmation Hearing, the reasonable and documented EFIH Second Lien Fees incurred in connection with any appeal, remand, or other litigation of the EFIH First Lien Makewhole Claims have been satisfied .. |
| **Preservation of Makewhole Appellate Rights and Litigation of Makewhole Claims** | **Powers of EFIH Debtors**. Prior to the EFH Effective Date, the EFIH Debtors, shall pursue (or not pursue, as the case may be), in consultation with the Makewhole Litigation Oversight Committee, all remedies for the litigation of, and/or objections to, the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims and (a) will obtain |

| Term | Description |
|------|-------------|
| | the consent of the Makewhole Litigation Oversight Committee with respect to any settlement of the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims prior to the EFH Effective Date with such consent (i) to be in the Makewhole Litigation Oversight Committee's sole discretion if any settlement is at or above 50% of any EFIH First Lien Makewhole Claims (as calculated as of the EFH Effective Date) or 50% of the EFIH Second Lien Makewhole Claims (as calculated as of the EFH Effective Date) and (ii) not to be unreasonably withheld if any settlement is below 50% of the EFIH Second Lien Makewhole Claims (as calculated as of the EFH Effective Date) or 50% of the EFIH Second Lien Makewhole Claims (as calculated as of the EFH Effective Date), and (b) shall cease prosecution of objections to the EFIH First Lien and Second Lien Makewhole Claims if directed by the Makewhole Litigation Oversight Committee and upon five business days' prior notice to counsel for the EFH Notes Trustee and Fidelity. <br><br> For the avoidance of doubt, the Makewhole Litigation Oversight Committee shall consult with the EFIH Debtors and its advisors regarding such litigation of, objections to, and/or settlement of, the EFIH First Lien Makewhole Claims and the EFIH Second Lien Makewhole Claims. <br><br> **Powers of EFH Plan Administrator Board/ Makewhole Litigation Oversight Committee**. After the EFH Effective Date, the EFH Plan Administrator Board will take all actions necessary (or refrain from taking all actions necessary, as applicable), and solely as directed by the Makewhole Litigation Oversight Committee, to pursue all remedies for litigation of, and objections to, the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims; *provided*, *however*, that the Makewhole Litigation Oversight Committee shall periodically consult with the EFH Plan Administrator Board and its advisors (to be selected by the EFH Plan Administrator Board in its sole discretion) regarding the litigation of the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims. <br><br> The EFH/EFIH Debtors will agree that the Makewhole Litigation Oversight Committee will have the right to consult with the EFH Plan Administrator Board regarding any change to, or whether there should be a change to, counsel of record for the EFH/EFIH Debtors (and their successors) in the litigation of EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims, including any appeals related to such makewhole litigation. <br><br> The EFH Plan Administrator Board shall obtain the consent of the Makewhole Litigation Oversight Committee with respect to any |

| Term | Description |
|------|-------------|
| | settlement of the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims, with such consent (a) to be in the Makewhole Litigation Oversight Committee's sole discretion if any settlement is at or above 50% of any EFIH First Lien Makewhole Claims (as calculated as of the EFH Effective Date) or 50% of the EFIH Second Lien Makewhole Claims (as calculated as of the EFH Effective Date) and (b) not to be unreasonably withheld if any settlement is below 50% of the EFIH Second Lien Makewhole Claims (as calculated as of the EFH Effective Date) or 50% of the EFIH Second Lien Makewhole Claims (as calculated as of the EFH Effective Date); *provided*, *however*, notice of any such settlement shall filed on the Bankruptcy Court docket. <br><br> Notwithstanding the foregoing, the Makewhole Litigation Oversight Committee shall have an independent right to litigate and settle the EFIH First Lien Makewhole Claims and/or the EFIH Second Lien Makewhole Claims, which shall not be subject to the consent of the EFH Plan Administrator Board; *provided*, *however*, notice of any such settlement shall filed on the Bankruptcy Court docket. <br><br> **Confirmation Order Findings**. <br><br> • The EFH Confirmation Order shall release the EFIH First Lien Trustee's Lien on the EFIH Claims Reserve upon entry of a Final Order disallowing the EFIH First Lien Makewhole Claims, and, upon such release, the funds in the EFIH Claims Reserve attributable to the Claims of the Holders of EFIH First Lien Notes shall be deposited in the EFH/EFIH Distribution Account. <br><br> • The EFH Confirmation Order shall release the EFIH Second Lien Trustee's Lien on the EFIH Claims Reserve upon entry of a Final Order disallowing the EFIH Second Lien Makewhole Claims, and, upon such release, the funds in the EFIH Claims Reserve attributable to the Claims of the Holders of EFIH Second Lien Notes shall be deposited in the EFH/EFIH Distribution Account. <br><br> **Costs of Prosecuting the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims**. The costs incurred by the EFIH Debtors and the Plan Administrator Board in litigating defenses and/or objections to the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims (the "Company Makewhole Litigation Costs") will be paid from EFH/EFIH Distribution Account (but excluding any amounts related to Cash on hand at EFH Corp.); *provided*, *however*, *that* upon entry of a Final Order disallowing the EFIH First Lien Makewhole Claims and/or EFIH Second Lien Makewhole Claims, the EFH Plan Administrator Board, shall be authorized to satisfy any |

| Term | Description |
|------|-------------|
| | accrued but unpaid Company Makewhole Litigation Costs from the EFIH Claims Reserve. |
| **Makewhole Litigation Oversight Committee** | As further set forth in the EFIH Settlement Agreement and as more fully will be set forth in the Plan Supplement, the Makewhole Litigation Oversight Committee shall be appointed as of the Confirmation Date. Prior to the EFH Effective Date, the Makewhole Litigation Oversight Committee shall be comprised of four representatives (all of whom shall be an Initial Supporting Creditor (as defined in the EFIH Settlement Agreement) or a representative thereof and shall not hold, or have any interests in, the EFIH First Lien Notes or EFIH Second Lien Notes).<br><br>The Makewhole Litigation Oversight Committee shall oversee the litigation and/or settlement of the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims by EFIH Debtors the EFH Plan Administrator Board, as more fully set forth herein.<br><br>For the avoidance of doubt, the Makewhole Litigation Oversight Committee and/or UMB, in its capacity as Trustee for the EFIH Unsecured Notes, shall have the right to seek relief from the Court to facilitate distributions on behalf of the Holders of the Class B6 Claims and all parties-in-interest shall have the right to contest or otherwise oppose such request for relief.<br><br>**Fees and Expenses of the Makewhole Litigation Oversight Committee**. The Makewhole Litigation Committee shall have the right to retain its own professionals, including counsel, in their sole and absolute discretion. The reasonable and documented fees and expenses of the Makewhole Litigation Oversight Committee, including professional fees, shall be paid from funds in the EFH/EFIH Distribution Account after (X) funding the EFIH Claims Reserve and (Y) ensuring sufficient reserves are in place within the EFH/EFIH Distribution Account to satisfy the Company Makewhole Litigation Costs (which reserve shall be funded in an amount to be determined by the EFH/EFIH Debtors in its sole discretion, upon advice of counsel); *provided, that* if the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims are Allowed in an amount in excess of the EFIH Claims Reserve, the Amended Plan shall provide that the Makewhole Litigation Oversight Committee's fees may be subject to disgorgement to satisfy such Allowed Claims; *provided, further, however*, that no Cash on hand at EFH Corp. as of the EFH Effective Date shall be used to satisfy such reasonable and documented fees and expenses of the Makewhole Litigation Oversight Committee. |

| Term | Description |
|------|-------------|
| **Plan Treatment for General Unsecured Claims Against the EFIH Debtors (Class B6)** | • If the Class of General Unsecured Claims Against the EFIH Debtors (Class B6) votes to accept the Amended Plan and the Supporting EFIH Unsecured Creditors elect not to opt out of the releases set forth in the Amended Plan, the General Unsecured Claims Against the EFIH Debtors will be Allowed as set forth below (the "<u>Allowed EFIH General Unsecured Claim</u>").<br><br>The Allowed EFIH General Unsecured Claim shall be comprised solely of:<br><br>• the Charging Lien Advance;<br><br>• the principal amount outstanding of the EFIH Unsecured Notes, in the amount of $1,568 million;<br><br>• any accrued but unpaid prepetition interest in the amount of $81 million; and<br><br>• any accrued but unpaid postpetition interest at the Federal Judgment Rate in the amount of $5 million (based on an assumed EFH Effective Date of April 30, 2016, subject to adjustment based on the actual EFH Effective Date) plus any additional amounts, including postpetition interest at the Federal Judgment Rate, accruing on such Allowed EFIH General Unsecured Claim from the EFH Effective Date until the Allowed EFIH General Unsecured Claim has been paid in full pursuant to the terms of the Plan.<br><br>For the avoidance of doubt, Holders of Class B6 Claims shall not receive a distribution on account of any alleged Makewhole Claims.<br><br>Nothing herein shall affect the rights of the EFIH Unsecured Notes Trustee to exercise its charging lien pursuant to the EFIH Unsecured Notes Indentures, post-Confirmation, consistent with the terms set forth in the Plan. |
| **Timing of Class B6 Distributions** | Holders of Allowed Class B6 Claims may (but shall not be required to) receive a distribution on the EFH Effective Date.<br><br>**Size of Allowed Class B6 Distribution**. The size of the distribution is dependent on, among other factors (a) the size of the EFIH Claims Reserve, (b) the payment of all Professional Fee Claims from the EFIH Professional Fee Escrow Account, (c) the conclusion of the Post-Closing Audit according to the terms of the Merger Agreement, and the payments to or from the EFH/EFIH Distribution Account based on the results of the Post-Closing Audit, and (d) ensuring sufficient reserves are |

8

| Term | Description |
|------|-------------|
| | in place to fund General Administrative Claims Against the EFIH Debtors, Priority Tax Claims Against the EFIH Debtors, post-EFH Effective Date Professional Fee Claims, and the costs of winding down the EFIH Debtors.<br><br>**Timing of Allowed Class B6 Distribution**. Supporting EFIH Unsecured Creditors must support the EFIH Settlement Agreement, and as applicable, must vote to accept the Amended Plan if the Bankruptcy Court holds that Holders of Allowed Class B6 Claims cannot receive a Plan distribution until Holders of Class B3 Claims and Holders of Class B4 Claims are paid in full, in Cash, including with respect to any Makewhole Claims that are either Allowed by Final Order or disallowed by Final Order. |
| **EFH Creditor Recovery Pool** | The EFH Creditor Recovery Pool shall consist of:<br><br>• the equivalent of Cash on hand at EFH Corp. as of the EFH Effective Date, and<br><br>• any amounts remaining in the EFH/EFIH Distribution Account after (x) first, satisfaction of all Allowed Claims against the EFIH Debtors (including a 100% recovery to Holders of Allowed Class B6 Claims on account of the Allowed EFIH General Unsecured Claim); (y) second, satisfaction of all Company Makewhole Litigation Costs; and (z) third, satisfaction of all costs and expenses borne by the Makewhole Litigation Oversight Committee, in prosecuting the EFIH First Lien Makewhole Claims and EFIH Second Lien Makewhole Claims (without prejudice to the rights of the EFH Disinterested Directors and EFIH Disinterested Director to negotiate an allocation of such costs and expenses as between EFH, EFIH, Reorganized EFH, and Reorganized EFIH).<br><br>For the avoidance of doubt, (a) Holders of Allowed Claims against the EFH Debtors shall receive their Pro Rata distribution of the Cash on hand at EFH Corp. on the EFH Effective Date or as soon as reasonably practicable thereafter and (b) Holders of Allowed Class B6 shall not receive a recovery on account of any Claims other than the Allowed EFIH General Unsecured Claims; *provided*, *however*, that for the avoidance of doubt, the foregoing shall not prevent such Holders from receiving recoveries on account of any other Allowed Claims held by such Holders that are not Class B6 Claims or as otherwise provided for in the Amended Plan. |
| **Fiduciary Duties** | Until entry of the EFH Confirmation Order, any EFH Debtors and/or |

| Term | Description |
|------|-------------|
| | EFIH Debtor can terminate its support of the EFIH Settlement Agreement and the Amended Plan reflecting the EFIH Settlement Agreement if its board of directors, the board of managers, or any such similar governing body determines, in its sole discretion after consultation with its independent financial advisors and outside legal counsel, and based on the advice of such counsel, that proceeding with the EFIH Settlement Agreement, the Amended Plan reflecting the EFIH Settlement Agreement, or the transactions contemplated by such agreements would be inconsistent with its applicable fiduciary duties. |
| **Amended Plan Supplement** | An amended Plan Supplement filed at least five days before the Plan objection deadline (or such other date that may be set by the Bankruptcy Court) shall include (i) the governance and mechanics of the Pre-Effective Date Makewhole Litigation Oversight Committee and (ii) the governance, mechanics and composition, of the Makewhole Litigation Oversight Committee after the EFH Effective Date, each of which shall be negotiated in good faith by and among the Supporting Creditors. Notwithstanding the foregoing, unless otherwise agreed to by each of the Unconflicted Initial Supporting Creditors, any decision of the Pre-Effective Date Makewhole Litigation Oversight Committee shall be by consent of those holding a majority of the total amount of EFIH Unsecured Notes held by the Unconflicted Initial Supporting Creditors. |

UMB BANK, N.A., as PIK Notes Trustee

Name: Mark B. Flannagan
Title: Executive Vice President

**YORK CAPITAL MANAGEMENT GLOBAL ADVISORS, LLC,**
on behalf of certain funds and/or accounts managed or advised by it or its affiliates

Name:
Title:    Richard P. Swanson
          General Counsel

Address:
          767 Fifth Avenue
          New York, NY 10153

E-mail address(es): rswanson @ yorkcapital.com
Telephone: 212-796.1146
Facsimile:

Aggregate Principal Amount and Classes of Claims which the Supporting Creditor, or funds or accounts managed or advised by the Supporting Creditor or any of its affiliates, hold as legal or beneficial owner (including pursuant to any swap or derivative transactions):

**GSO CAPITAL PARTNERS LP**

_____
Name:  Marisa Beeney
Title:  Authorized Signatory

Address: 345 Park Avenue, 31st Floor
              New York, NY 10154


E-mail address(es): Bradley.Feingerts@gsocap.com, GSOLegal@gsocap.com
Telephone: (212) 503-2100
Facsimile: N/A


Aggregate Principal Amount and Classes of Claims which the Supporting Creditor, or funds or accounts managed or advised by the Supporting Creditor or any of its affiliates, hold as legal or beneficial owner (including pursuant to any swap or derivative transactions):

**AVENUE CAPITAL MANAGEMENT II, LP,**
on behalf of certain investment funds it advises

By:  Avenue Capital Management II GenPar, LLC,
its general partner

Name:    Sonia Gardner
Title:    Member

Address:    399 Park Avenue
NY, NY 10022

E-mail address(es):   sbulmzian@avenvecapital.com
Telephone:    212-878-3526
Facsimile:

Aggregate Principal Amount and Classes of Claims which the Supporting Creditor, or funds or accounts managed or advised by the Supporting Creditor or any of its affiliates, hold as legal or beneficial owner (including pursuant to any swap or derivative transactions):

*Confidential, Subject to FRE 408*

ANGELO GORDON & CO., L.P. AS INVESTMENT ADVISOR OF:

AG MM, L.P.
AG Capital Recovery Partners VIII, L.P.
AG Eleven Partners, L.P.
AG Cataloochee, L.P.
AG Centre Street Partnership, L.P.
AG Super Fund, L.P.

Name: D. Forest Wolfe
Title: General Counsel

Address: 245 Park Ave, 25th Floor, New York, NY 10167

E-mail address(es): gbaiera@angelogoron.com; jlenz@angelogordon.com; mbernstein@angelogordon.com; fwolfe@angelogordon.com
Telephone: 212-692-2000
Facsimile: 212-338-9611

Aggregate Principal Amount and Classes of Claims which the Supporting Creditor, or funds or accounts managed or advised by the Supporting Creditor or any of its affiliates, hold as legal or beneficial owner (including pursuant to any swap or derivative transactions):

**EFH/EFIH DEBTOR SIGNATURE PAGES**

Energy Future Holdings Corp.
Ebasco Services of Canada Limited
EEC Holdings, Inc.
EECI, Inc.
EFH Australia (No. 2) Holdings Company
EFH Finance (No. 2) Holdings Company
EFH FS Holdings Company
EFH Renewables Company LLC
EFIH Finance Inc.
Energy Future Intermediate Holding Company LLC
Generation Development Company LLC
LSGT Gas Company LLC
LSGT SACROC, Inc.
NCA Development Company LLC
TXU Receivables Company

_Andrew M. Wright_

Name: Andrew M. Wright
Title: Executive Vice President, General Counsel, and Corporate Secretary

## EXHIBIT A

### Form of Transfer Agreement

The undersigned ("**Transferee**") hereby acknowledges that it has read and understands the Amended and Restated Plan Support Agreement, dated as of _____, 2016 (the "**Agreement**"),[1] by and among the EFH/EFIH Debtors, and the Supporting Creditors, including the transferor to the Transferee of any Claims (each such transferor, a "**Transferor**"), and agrees, with respect to the Claims set forth below and any other Claims currently owned or hereafter acquired by the Transferee (collectively, the "**Collective Claims**"), to be bound by the terms and conditions thereof, and shall be deemed a "**Supporting Creditor**" as applicable, under the terms of the Agreement with respect to the Collective Claims.

The Transferee specifically agrees to be bound by the terms and conditions of the Agreement with respect to the Collective Claims, and makes all representations and warranties contained therein as of the date of the Transfer and with respect to the Collective Claims, including the agreement to be bound by the vote for the Alternative E-Side Plan of the Transferor if such vote was cast before the effectiveness of the Transfer discussed herein.

Date Executed:

_____

Name:
Title:

Address:

E-mail address(es):
Telephone:
Facsimile

Class(es) of Claims Subject to Transfer:  _____

Amount of Claims Subject to Transfer:  _____

---

[1]    Capitalized terms not used but not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.