## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: January 26, 2017 at 1:00 p.m.** |
| | ) | **Objection Deadline: January 19, 2017 at 4:00 p.m.** |

## EFH DEBTORS' MOTION FOR
## ENTRY OF AN ORDER (I) APPROVING THE ASSET
## PURCHASE AGREEMENT BY AND AMONG PRAIRIE STATE
## GENERATING COMPANY, LLC, GENERATION DEVELOPMENT
## COMPANY LLC AND LUMINANT GENERATION COMPANY LLC,
## (II) AUTHORIZING THE PRIVATE SALE OF A CERTAIN GENERATION
## DEVELOPMENT COMPANY LLC ASSET, AND (III) GRANTING RELATED RELIEF

Energy Future Holdings Corp. ("EFH Corp.") and certain of its direct and indirect

subsidiaries (together with EFH Corp., the "EFH Debtors")[2] file this motion (this "Motion") for

entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a)

approving the Sale Agreement (as defined herein) authorizing the private sale of a certain asset,

and (b) granting related relief. In support of this Motion, the EFH Debtors file the *Declaration*

*of Norman Spence, Spence Consulting LLC In Support of the EFH Debtors' Motion for Entry of*

*an Order (I) Approving the Asset Purchase Agreement By and Among Prairie State Generating*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The other EFH Debtors are Ebasco Services of Canada Limited, EEC Holdings, Inc., EECI, Inc., EFH Australia (No. 2) Holdings Company, EFH Finance (No. 2) Holdings Company, EFH FS Holdings Company, EFH Renewables Company LLC, Generation Development Company LLC, LSGT Gas Company LLC, LSGT SACROC, Inc., NCA Development Company LLC, and TXU Receivables Company.

*Company, LLC, Generation Development Company LLC and Luminant Generation Company LLC, (II) Authorizing the Private Sale of a Certain Generation Development Company LLC Asset, and (III) Granting Related Relief,* filed substantially contemporaneously herewith. In further support of this Motion, the EFH Debtors respectfully submit as follows.

**Jurisdiction and Venue**

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012. The EFH Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Bankruptcy Rules, and Local Bankruptcy Rule 6004-1.

**Relief Requested**

4.    The EFH Debtors seek entry of the Order (i) approving that certain purchase and sale agreement, by and among Prairie State Generating Company, LLC ("PSGC", or the "Buyer"), Generation Development Company LLC ("GDC"), and Luminant Generation

2

Company LLC ("Luminant"), attached hereto as **Exhibit 1** to **Exhibit A** (the "Sale Agreement") authorizing the private sale of GDC's certain asset (the "Sale"); and (ii) granting related relief.

## Background

5.      On April 29, 2014, each of the above-captioned debtors and debtors in possession (the "Debtors") filed a voluntary petition with the Court under the Bankruptcy Code. The EFH Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849]. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company ("EFIH"), LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

6.      On August 29, 2016, the Court entered an order confirming the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al., *Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, the "Plan")[3] as it applies to the TCEH and EFH Shared

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Services Debtors.[4]  The TCEH Debtors (which include Luminant) and EFH Shared Services Debtors emerged from chapter 11 on October 3, 2016, and are no longer debtors-in-possession.[5]

## I.       The Boiler.

7.       GDC owns the right, title, and interest in certain parts and equipment (the "Boiler"), which has been stored and maintained in part at a warehouse currently leased by Luminant in Houston, Texas (the "Houston Warehouse") and in part at an operating facility owned by Luminant in Rusk County, Texas (the "Monticello Yard", and together with the Houston Warehouse, the "Luminant Properties").

## II.      Luminant.

8.       The terms of the Sale Agreement require the Buyer to remove the Boiler from the Luminant Properties.  Because the Boiler is stored and maintained on the Luminant Properties, Luminant's engagement in the Sale Agreement is required to authorize the Buyer's removal actions.  Additionally, per the Sale Agreement, Luminant will take title to those component parts of the Boiler which the Buyer does not remove from the Luminant Properties prior to the dates set forth in the Sale Agreement (the "Salvage Scope").

9.       To ensure Luminant's participation in the Sale Agreement, the EFH Debtors have agreed to pay Luminant the amount, if any, by which Luminant's Losses (as defined below) exceed Luminant's Net Salvage Proceeds (as defined below). Luminant's "Losses" are the sum of (a) Luminant's lease payments for the Houston Warehouse between October 3, 2016 and January 31, 2018; (b) all utilities, insurance premiums, and taxes with respect to the Houston

---

[4]  *See Order Confirming the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 9421].

[5]  *See Notice of Entry of TCEH Confirmation Order and Occurrence of TCEH Effective Date* [D.I. 9742].

Warehouse paid by or on behalf of Luminant, and (c) the disposal costs for any portion of the Boiler that has not been sold by January 31, 2018. Luminant's "Net Salvage Proceeds" is the amount of money Luminant receives from sale of the Salvage Scope located at the Houston Warehouse, minus related expenses.

**III.    The Proposed Sale.**

10.    On January 4, 2017, the Buyer, the EFH Debtors, and Luminant entered into the Sale Agreement, pursuant to which the Buyer agreed to (a) provide $4,000,000.00 to GDC in exchange for the Boiler; (b) indemnify and hold harmless the EFH Debtors from certain losses resulting from removal or storage of the Boiler; and (c) expressly release the EFH Debtors from liabilities regarding the purchase of the Boiler. As a condition to the closing of the Sale, GDC is required to obtain a final, non-appealable order approving the relief requested in the Motion. Per the terms of the Sale Agreement, the Buyer is to obtain right, title, and interest in all of the component parts of the Boiler located on the Luminant Properties.

11.    The EFH Debtors evaluated the purchase offer and the Boiler and determined that selling the Boiler would maximize value to the EFH Debtors for a number of reasons. *First*, sale of the Boiler would save the EFH Debtors approximately $200,000 in lease costs per year, which are currently incurred for storage of the Boiler in the Houston Warehouse. *Second*, the EFH Debtors would save approximately $300,000 to $400,000 per year in maintenance costs currently associated with storage on the Luminant Properties. *Third*, the EFH Debtors would save approximately $100,000 to $150,000 per year in security costs currently associated with storage of the Boiler on the Monticello Yard.

12.    The EFH Debtors believe the price offered by the Buyer is fair and reasonable. In September 2016, GDC received a proposal from PRC Environmental Inc. ("PRC"), a salvage contractor which proposed to assist in the process of salvaging and/or selling component parts of

5

the Boiler. PRC's proposal (the "PRC Proposal"), estimated the net revenue the EFH Debtors could incur from a combination of a hypothetical re-sale of some Boiler component parts to a third party (such as PSGC), and a scrap sale of other Boiler component parts, accounting for PRC's estimated costs, expenses, and commission from such sales (the "PRC Proposal Estimate"). The PRC Proposal estimated that the EFH Debtors could have earned net revenue of approximately $2 million from selling the Boiler through these methods.[6] Additionally, the PRC Proposal Estimate assumed the EFH Debtors could locate a third party buyer to purchase certain component parts for $1,000,000. In other words, under the PRC Proposal Estimate, which offered the EFH Debtors less than 50% of the $4,000,000 net revenue contemplated in the Sale Agreement, the EFH Debtors would still maintain the burden to engage and negotiate with potential buyers.

13.    In short, the price offered by the Buyer allows the EFH Debtors to achieve returns far in excess of a recent market-based proposal. Furthermore, there is no indication a higher price would be obtainable, particularly in light of the PRC Proposal Estimate and ongoing fluctuations in the market for oil and gas.

14.    Based on the foregoing, the EFH Debtors determined that accepting the Buyer's offer would create the best possible value for the EFH Debtors with respect to the Boiler. For these reasons, the EFH Debtors request approval to enter into the Sale Agreement to sell their interest in the Boiler to the Buyer.

---

[6] The PRC Proposal Estimate recommended transactions that could yield gross revenue of up to $3,170,000. To maximize profitability to the EFH Debtors, PRC's costs, expenses, and commissions would have been $1,195,476, leaving the EFH Debtors net revenue of $1,974,524. The PRC Proposal Estimate was based on a scrap metal market price of $157/ton in September 2016.

6

## IV.   Material Terms of the Sale Agreement.

15.   The following chart summarizes the key terms and conditions of the Sale Agreement and discloses certain information required pursuant to Local Rule 6004-1.[7]

| Provision | Summary Description |
|---|---|
| **Parties** | <u>Seller</u>: Generation Development Company LLC.<br><br><u>Buyer</u>: Prairie State Generating Company, LLC.<br><br>*See* Sale Agreement, Preamble. |
| **Purchase Price** | $4,000,000.00 to be paid in installments.   The Purchase Price is to be paid in the following installments:<br><br>• $1,500,000.00 payable on or before the Closing Date;<br>• $1,000,000.00 payable on or before January 31, 2018;<br>• $750,000.00 payable on or before January 31, 2019;<br>• $500,000.00 payable on or before December 31, 2019; and<br>• $250,000.00 payable on or before December 31, 2020.<br><br>*See* Sale Agreement § 2.2. |
| **Property** | All of Seller's right, title and interest in and to the following assets, as they exist at the time of the Closing (the "<u>Buyer Scope</u>"):<br><br>• all of the component parts of the Boiler located in the Houston Warehouse; and<br>• all of the component parts of the Boiler located in the Monticello Yard.<br><br>*See* Sale Agreement § 1.1. |
| **Sale to Insider**<br>Local Rule<br>6004-1(b)(iv)(A) | None. |
| **Agreements with Management**<br>Local Rule<br>6004-1(b)(iv)(B) | None. |
| **Releases**<br>Local Rule<br>6004-1(b)(iv)(C) | Buyer agrees to release, waive, and discharge Seller from any and all claims, interests, obligations, debts, rights, suits, damages, demands, causes of action, remedies, and liabilities arising from or in connection with the transactions contemplated in the Sale Agreement.<br><br>*See* Sale Agreement § 9.4. |
| **Private Sale/No Competitive Bidding** | No auction is contemplated.   The Sale Agreement does not restrict the EFH Debtors' ability to solicit competing offers. |

---

[7] This summary is provided for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the Sale Agreement, the Sale Agreement shall govern in all respects.  Capitalized terms used in the following summary shall have the meanings ascribed to them in the Sale Agreement.  All references to schedules or sections in the following summary shall refer to schedules or sections of the Sale Agreement.

| | |
|---|---|
| Local Rule<br>6004-1(b)(iv)(D) | |
| **Closing and Other Deadlines**<br>Local Rule<br>6004-1(b)(iv)(E) | The Closing Date will take place via the electronic exchange of documents at 10:00 a.m. Central Time on the third business day following the satisfaction of all conditions to closing, or at such other time or on such other date as the Parties may agree in writing.<br><br>*See* Sale Agreement §§ 2.4. |
| **Good-Faith Deposit**<br>Local Rule<br>6004-1(b)(iv)(F) | None. |
| **Interim Arrangements with Proposed Buyer**<br>Local Rule<br>6004-1(b)(iv)(G) | Between the Effective Date and the Closing Date, Seller shall use its commercially reasonable efforts to preserve the condition of the Buyer Scope, and shall not sell, transfer, encumber, or otherwise dispose of any components of the Buyer Scope or interest therein.<br><br>To permit Buyer to evaluate whether proper notice was given of the motion for entry of the Approval Order, Seller shall provide Buyer and its counsel reasonable access to its claims and other records regarding the Buyer Scope.<br><br>*See* Sale Agreement §§ 6.1, 6.4. |
| **Use of Proceeds**<br>Local Rule<br>6004-1(b)(iv)(H) | None. |
| **Tax Exemption**<br>Local Rule<br>6004-1(b)(iv)(I) | None. |
| **Record Retention**<br>Local Rule<br>6004-1(b)(iv)(J) | Not applicable as the Sale does not contemplate the sale of substantially all of GDC's assets. |
| **Sale of Avoidance Actions**<br>Local Rule<br>6004-1(b)(iv)(K) | None. |
| **Requested Findings as to Successor Liability**<br>Local Rule<br>6004-1(b)(iv)(L) | The Buyer is not a successor to Seller or its bankruptcy estate and Buyer is in no way responsible for any liability of Seller or the Seller's bankruptcy estate.<br><br>*See* Sale Agreement § 9.3. |
| **Sale Free and Clear of Unexpired Leases**<br>Local Rule<br>6004-1(b)(iv)(M) | Subject to the entry of the Approval Order, the Buyer Scope is to be transferred to the Buyer at Closing free and clear of all Liens, Claims and Interests against Seller or its Affiliates.<br><br>*See* Sale Agreement § 9.3. |
| **Credit Bid**<br>Local Rule<br>6004-1(b)(iv)(N) | None. |
| **Relief from Bankruptcy Rule 6004(h)**<br>Local Rule<br>6004-1(b)(iv)(O) | None. |

## Basis for Relief

**I.      The Sale Should Be Approved as an Exercise of Sound Business Judgment.**

16.      Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A sale of the debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for the proposed transaction. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) ("[U]nder normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification." (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994).

17.      Once the EFH Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate . . . .") (citations omitted); *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc., (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[A] presumption of reasonableness attaches to a debtor's management decisions.") (citations omitted).

9

18.     Based on these principles, the Court should grant this motion.  Selling the Boiler would immediately monetize an asset that provides no revenue or other benefit to the EFH Debtors.  The EFH Debtors would also incur significant cost savings from disposing of the Boiler.  Furthermore, based on the PRC Proposal Estimate, the EFH Debtors have reason to believe that the Sale Agreement provides fair and reasonable value.  The EFH Debtors have no reason to believe an auction process—a process for which the EFH Debtors would have to bear the expense to undertake—would yield a materially higher price.  As such, the EFH Debtors determined that a sale of the Boiler would maximize their value.

19.     Because a sound business reason exists for the Sale, fair and reasonable consideration is being provided, the transaction has been proposed and negotiated in good faith, and adequate and reasonable notice will have been provided, the proposed Sale is based on the EFH Debtors' sound business judgment and should be approved.

## II.    The Proposed Sale is Appropriate Pursuant to Bankruptcy Rule 6004(f).

20.     Bankruptcy Rule 6004(f) authorizes a debtor to sell estate property outside of the ordinary course of business by private sale or public auction.  Private sales are appropriate where the debtor demonstrates that the proposed sale is permissible pursuant to section 363 of the Bankruptcy Code.  *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC), 2007 WL 7728109, at *88 (Bankr. D. Del. Aug. 15, 2007) ("[S]ales of property rights outside the ordinary course of business may be by private sale or public auction.").  Additionally, courts have held that a debtor has broad discretion to determine the manner in which its assets are sold.  *See In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting that a trustee has ample authority to conduct a sale of estate property through private sale); *Berg v. Scanlon (In re Alisa P'ship)*, 15 B.R. 802, 802 (Bankr. D. Del. 1981).  A private sale to the Buyer is in the best interests of the EFH Debtors given the cost savings which would be incurred through the Sale Agreement, and the purchase

10

price offered by the Buyer. The costs of running an auction or pursuing a robust marketing process for the Boiler would likely significantly exceed any incremental price increase the EFH Debtors would realize from such process, if at all. Furthermore, a public auction or marketing process at this time would cause unnecessary delay and is unlikely to yield a higher and better offer. Therefore, the EFH Debtors submit that a private sale of the Boiler to the Buyer is appropriate under the circumstances.

**III.     The Buyer is a Good Faith Purchaser and is Entitled to the Full Protection of 363(m) of the Bankruptcy Code.**

21.     Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith." In the absence of a definition of "good faith" in the Bankruptcy Code and the Bankruptcy Rules, courts determining whether a buyer was a "good faith purchaser" have "turned to traditional equitable principles, holding that the phrase encompasses one who purchases in 'good faith' and for 'value'" and have looked to the "integrity of his conduct in the course of the sale proceedings." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1197 (7th Cir. 1978)). As the Third Circuit noted, section 363(m) "reflects the salutary 'policy . . . to give finality to those orders and judgments upon which third parties rely.'" *Id.* (quoting *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)).

22.    The Sale Agreement and its terms are the product of good faith, arm's-length negotiations.  There is no indication of fraud or any improper insider dealing.  Further, the consideration from the Buyer for the Boiler is fair and reasonable.  Accordingly, the EFH Debtors request that the Court enter an order entitling the Buyer to the full protections of section 363(m) of the Bankruptcy Code as a good faith purchaser of the assets.

## IV.    Relief Under Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate.

23.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."  Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."  The EFH Debtors request that the Order be effective immediately upon its entry by providing that the fourteen-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

24.    The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy suggests that the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure."  10 *Collier on Bankruptcy* ¶ 6004.10 (15th rev. ed. 2006).  Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  *Id.*

12

25.    To maximize the value received for the Boiler, the EFH Debtors seek to close the Sale as soon as possible after the Sale Hearing.  Accordingly, the EFH Debtors hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## Reservation of Rights

26.    Nothing contained in this motion or any actions taken by the EFH Debtors pursuant to relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the EFH Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the EFH Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the EFH Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid, and the EFH Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the EFH Debtors' rights to subsequently dispute such claim.

## Notice

27.    The EFH Debtors shall provide notice of this Motion on the date hereof via first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company,

RLF1 16509809v.1

N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain

14

holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (z) the Buyer; (aa) Luminant; and (bb) Greensport/Ship Channel Partners, L.P. The EFH Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

28.     No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

15

WHEREFORE, the EFH Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  January 5, 2017
         Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:         collins@rlf.com
               defranceschi@rlf.com
               madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         edward.sassower@kirkland.com
               stephen.hessler@kirkland.com
               brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         james.sprayregen@kirkland.com
               marc.kieselstein@kirkland.com
               chad.husnick@kirkland.com
               steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*