**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 10602** |
| | ) | |

**DECLARATION OF NORMAN SPENCE,
SPENCE CONSULTING LLC IN SUPPORT OF THE
EFH DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) APPROVING THE ASSET PURCHASE AGREEMENT BY
AND AMONG PRAIRIE STATE GENERATING COMPANY, LLC,
GENERATION DEVELOPMENT COMPANY LLC AND LUMINANT
GENERATION COMPANY LLC, (II) AUTHORIZING THE PRIVATE SALE OF
A CERTAIN GENERATION DEVELOPMENT COMPANY LLC ASSET, AND (III)
GRANTING RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Norman Spence, declare as follows:

1.  I am over the age of 18 and duly authorized to execute this declaration (the "Declaration") on behalf of the EFH Debtors in support of the *EFH Debtors' Motion for Entry of an Order (I) Approving the Asset Purchase Agreement By and Among Prairie State Generating Company, LLC, Generation Development Company LLC and Luminant Generation Company LLC, (II) Authorizing the Private Sale of a Certain Generation Development Company*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

RLF1 16509817v.1

*LLC Asset, and (III) Granting Related Relief* [D.I. 10602] (the "Motion"),[2] filed contemporaneously herewith.

2.   I am a consultant to EFH Corp. and am currently employed through Spence Consulting LLC for the purpose of assisting EFH in the sale of the Boiler. I have served the EFH Debtors in various roles over the past ten years, as recently as October 2016. From 2013 to 2016, I served as Vice President, Project Development and Real Estate of EFH Corp. Through these roles, I had been responsible for evaluating potential real estate sales at generating plant properties, constructing and developing major infrastructure projects, and managing development and licensing efforts for new generating facilities. I have been employed in various finance, engineering, construction and risk management positions in the wholesale energy marketing and production industry for over 40 years, with the predominant amount of that time spent with firms engaged in wholesale electricity, natural gas marketing and trading activities, and construction of power generating facilities.

3.   The facts in this Declaration are based on my personal knowledge and review of information and my experience with the EFH Debtors' operations and transactions relating to real estate acquisition and development. If called to testify, I would testify to the facts set forth herein.

**I.   The Proposed Sale Offers the EFH Debtors the Best Possible Value for the Boiler.**

   **A. The Negotiated Price is Fair and Reasonable Based on the Market Value of the Boiler and Current Market Conditions.**

4.   Under the terms of the Sale Agreement, the EFH Debtors are to receive $4,000,000 in exchange for the Boiler. I believe this is a fair and reasonable price, based on (a) the terms offered in the PRC Proposal; and (b) current trends in the scrap steel market. PRC is a

---

[2] All capitalized terms used herein have the meaning given to them in the Motion.

salvage contractor with whom Luminant had previously engaged during my employment at EFH Corp. and Luminant. I believe the PRC Proposal Estimate, which was based in part on projections of the Boiler's re-sale value, represents a competitive and reasonable estimate of what the EFH Debtors could receive for an alternative market-based sale. Including the PRC Proposal Estimate, I am unaware of any alternative offers that suggest the $4,000,000 purchase price of the Sale Agreement represents a discount on the value of the Boiler.

5. In addition to projections of the Boiler components' re-sale value, the PRC Proposal Estimate was also based on the market price of scrap steel. As the Boiler components contain approximately 16,000 tons of steel, variations in scrap prices have a significant effect on the Boiler's value. In recent years, the scrap steel market has been depressed. From 2011 to 2014, scrap steel prices remained well above $300 per ton, reaching as high as $477 per ton.

6. Recently, political and economic trends have caused a depression in the scrap steel market. Political pledges to develop national infrastructure did not materialize, which contributed to decreasing demand for many scrap metals as compared to levels observed during peak market-time projections. Simultaneously, international producers increased steel industry development, boosting the available supply for scrap steel. As a result, scrap steel prices have recently decreased to levels as low as $157 per ton. These decreases have caused some scrap yards and salvage companies to cease business operations, unwinding the effects of the 2011 to 2014 surge, and limiting the Boiler's current pool of potential buyers. I believe these trends highlight the strength of the Sale Agreement, and the difficulty the EFH Debtors would face in (a) locating an alternative buyer, and (b) fielding an offer that is competitive with the Sale Agreement.

**B. The Sale Agreement Will Allow the EFH Debtors Access to Significant Savings.**

7.     In addition to the exchanged value from the Sale Agreement, the EFH Debtors will obtain significant costs savings from their disposing of the Boiler.  These cost savings would be achieved through (a) $200,000 in lease savings per year in relation to GDC's lease with Luminant at the Houston Warehouse; (b) $300,000 to $400,000 in maintenance costs related to storage at the Luminant Properties; and (c) $100,000 to $150,000 per year in security costs stemming from storage of the Boiler at the Monticello Yard.

II.    **Prairie State is the Only Feasible Buyer of the Boiler and No Alternative Purchasers Exist.**

**A. The Boiler's Design Features Unique Specifications Which Favor Sale to the Buyer.**

8.     The Boiler is the third of three duplicate boilers originally fabricated as part of a specific design plan crafted during the TXU Reference Plant Program in 2006 to 2007.  This plan, which envisioned unique fuel and operating design specifications, was cancelled in 2007 and is not likely to be duplicated by the EFH Debtors.  Because of this, the EFH Debtors have focused on transactions with potential third parties to maximize the Boiler's value.  As a result of the unique design of the Boiler, for the EFH Debtors to use the Boiler with a third party, any contemplated project would require substantial engineering, design changes, and additional cost.

9.     The first and second of the three boilers were sold to the Buyer in 2007 as part of the Buyer's plan to build a new power generating plant in Illinois.  Because these three boilers are identical, this legacy transaction uniquely qualifies the Buyer to take advantage of the Boiler components as spare parts for its two existing operating boilers.  This fact, which explains the Buyer's willingness to purchase the Boiler at a higher price than any other purchaser, led the EFH Debtors to engage in marketing efforts with the Buyer for several years prior to execution

of the Sale Agreement. The initial discussions between the EFH Debtors and the Buyer regarding sale of the Boiler took place approximately three years ago, prior to the Petition Date. Since these first discussions, the Buyer has emerged as the only feasible purchaser of the Boiler.

### B. The EFH Debtors' Efforts to Engage Other Potential Buyers Have Been Unsuccessful.

10. Although the specifications of the Boiler favor a sale to the Buyer, the EFH Debtors have made efforts to communicate with other potential buyers. For example, the EFH Debtors have engaged Babcock & Wilcox ("B&W"), the original manufacturer of the Boiler, and active participant in the international boiler sales market. B&W has not been successful in assisting EFH in the sale of the Boiler to potential third party developers, nor has B&W expressed interest in purchasing the Boiler for its business use in selling the Boiler's component parts to its customers. Additionally, the EFH Debtors have undertaken efforts to sell the Boiler to various other potential buyers–in all of these situations, the Boiler was not a match for the opportunity sought by the potential buyer. For the past several years, there have been no inquiries of interest regarding purchase of the Boiler for use in another power plant project. Modern economics and a prioritization of alternative energy sources have complicated efforts to use the Boiler as part of a new 800MW coal plant, as it was initially purposed.

11. I believe that without the ability to enter into the Sale Agreement as requested in the Motion, the EFH Debtors are at risk of losing a significant opportunity to capitalize on a favorable offer. I also believe that due to the volatility of the scrap steel market, it is possible that a delay in approving the Motion could accompany a further downward variation in the scrap steel market. Such variation would likely deteriorate the $4,000,000.00 purchase price offer, foreclosing the EFH Debtors of their current opportunity.

12. In conclusion, I believe that approval of the Motion, permitting the EFH Debtors to enter into the Sale Agreement, will allow the EFH Debtors to capitalize on a limited opportunity, which will return significant value to the EFH Debtors' estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 5, 2017
       Wilmington, Delaware

                                         */s/ Norman Spence*
                                         Norman Spence
                                         Spence Consulting LLC