## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 14-10979 (CSS) |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., et al.,[1] | ) Jointly Administered |
| | ) |
| | ) Re: Docket No. 10349 |
| | ) |
| | ) <u>Hearing Date</u>: January 4, 2017 at 10:00 a.m. |
| | ) <u>Objection Deadline</u>: December 28, 2016 at 2:00 |
| | ) p.m. |
| Debtors. | ) |

**OBJECTION OF EFH INDENTURE TRUSTEE TO THE MOTION OF THE EFH/EFIH
DEBTORS FOR ENTRY OF A SUPPLEMENTAL ORDER (A) BINDING HOLDERS OF
CLAIMS AND INTERESTS TO THEIR PRIOR BALLOTS, PURSUANT TO SECTION
1127 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3019, (B)
APPROVING THE REVISED EFH/EFIH DISCLOSURE STATEMENT, (C)
APPROVING THE PROCEDURES AND TIMELINE FOR THE LIMITED
RESOLICITATION OF VOTES ON THE PLAN, AND (D) APPROVING THE MANNER
<u>AND FORMS OF NOTICE RELATED THERETO FILED</u>**

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.

Table of Contents (continued)

Page

I. PRELIMINARY STATEMENT ................................................................. 2

II. RELEVANT BACKGROUND.................................................................. 7

    A.    AST's Retention and Role as Indenture Trustee for the EFH Notes .................. 7
    B.    TCEH Confirmation Hearing and Tax Matters Agreement................................... 7
    C.    NextEra Merger Agreement.................................................................... 8
    D.    Third Circuit Makewhole Decision ...................................................... 10
    E.    The Fifth Plan and Proposed Disclosure Statement.............................. 10
    F.    Proposed Makewhole Settlement........................................................ 10

III. OBJECTION ........................................................................................ 11

    A.    EFH Noteholders Are Impaired Under the Fifth Plan and Are Entitled to Vote .. 11
    B.    The EFH/EFIH Debtors Cannot Meet Their Burden to Establish that Modifications to the Prior Plan Do Not Result in Adverse Change to Treatment of EFH Noteholders ................................................................. 14
    C.    The Adverse Modifications Made to the Prior Plan Require Resolicitation of EFH Noteholders ................................................................................. 14

        (i)    Resolicitation of EFH Noteholders is Required: .......................................... The Fifth Plan Adversely Changes the Treatment of EFH Noteholders .. 16
        (ii)    Bankruptcy Rule 3019(a) Does Not Require the Court to Determine Whether Plan Amendments Cause a Material Change in Creditor Treatment ...................................................................... 17

    D.    The Proposed Disclosure Statement Does Not Contain Adequate Information ... 21
    E.    The Fifth Plan is Patently Unconfirmable ......................................... 23

        (i)    EFH Corp. is Receiving No Consideration for its NOLs.......................... 24
        (ii)    The Fifth Plan Does Not Provide Creditors With Ability to Opt-Out of Third-Party Releases Provided to Third Parties Under Fifth Plan........... 25

IV. RESERVATION OF RIGHTS ............................................................. 26

V. CONCLUSION ..................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Del. Trust Co. v. Energy Future Intermediate Holding Co. LLC,*
No. 16-1351 (3d Cir.)......................................................................................................1

*In re 50-Off Stores, Inc.,*
231 B.R. 592 (Bankr. W.D. Tex. 1999).........................................................................12

*In re Allied Gaming Mgmt.,*
209 B.R. 201 (Bankr. W.D. La. 1997)...........................................................................23

*In re Am. Capital Equip., LLC,*
688 F.3d 145 (3d Cir. 2012)......................................................................................23, 24

*In re Am. Solar King Corp.,*
90 B.R. 808 (Bankr. W.D. Tex. 1988).......................................................................18, 19

*In re Cellular Info. Sys.,*
171 B.R. 926 (Bankr. S.D.N.Y. 1994)...........................................................................18

*In re Century Glove, Inc., C.A.*
No. 90-400-SLR, C.A. No. 90-401-SLR, 1993 U.S. Dist. LEXIS 2286 (D. Del. Feb.
10, 1993) .........................................................................................................................18

*In re City of Detroit,*
524 B.R. 147 (Bankr. E.D. Mich. 2014) .......................................................................17

*In re Concrete Designers,*
173 B.R. 354 (Bankr. S.D. Ohio 1994)..........................................................................20

*In re Conex Holdings, LLC,*
518 B.R. 792 (Bankr. D. Del. 2014) .............................................................................25

*In re Ferguson,*
474 B.R. 466 (Bankr. D.S.C. 2012)...............................................................................21

*In re Forest Grove, LLC,*
448 B.R. 729 (Bankr. D.S.C. 2011) .........................................................................23, 24

*In re Mangia Pizza Invs.,*
LP, 480 B.R. 669 (Bankr. W.D. Tex. 2012) .................................................................17

*In re Metrocraft Pub. Services, Inc.,*
39 B.R. 567 (Bankr. N.D. Ga. 1984) .............................................................................21

*In re Proveaux*,
   No. 07-05384-JW, 2008 Bankr. LEXIS 1325 (Bankr. D.S.C. Apr. 4, 2008) ..............15, 16, 19

*In re Prudential Lines, Inc.*,
   107 B.R. 832 (Bankr. S.D.N.Y. 1989), *aff'd* 119 B.R. 430 (S.D.N.Y. 1990), *aff'd* 928
   F. 2d 565 (2d Cir. 1991)...........................................................................................................24

*In re Zaruba*,
   384 B.R. 254 (Bankr. D. Alaska 2008)...................................................................................22

*In re Zenith Elecs. Corp.*,
   241 B.R. 92 (Bankr. D. Del. 1999) .........................................................................................25

*In Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*,
   177 B.R. 791 (S.D.N.Y. 1995)...........................................................................................18, 19

*Peltz v. Worldnet Corp. (In re USN Communs., Inc.)*,
   280 B.R. 573 (Bankr. D. Del. 2002) .......................................................................................15

*U.S. v. Frontier Airlines, Inc.*,
   93 B.R. 1014 (Bankr. D. Colo. 1988) .........................................................................16, 17, 18, 19

**FEDERAL STATUTES**

11 U.S.C. § 1126(c) ........................................................................................................................11

11 U.S.C. § 1126(f)........................................................................................................................11

11 U.S.C. § 1127(a) ...................................................................................................................1, 15

11 U.S.C. § 1127(c) ......................................................................................................................21

11 U.S.C. § 1125(a) ......................................................................................................................21

**RULES**

Bankruptcy Rule 3019 .......................................................................................... *passim*

**REGULATIONS**

26 C.F.R. § 301.7701-2(c)(2).......................................................................................................25

4826-1652-9982

## OTHER AUTHORITIES

Christopher W. Frost, *Bankruptcy Voting and the Designation Power*, 87 AM. BANKR. L.J. 155, 157 (2013)................................................................................................................12

Energy Future Holdings Corp., Form 8-K (Dec. 19, 2016)……………………………………...10

Expert Declaration of Professor Jack Williams……………………………………………......1, 5, 22

NextEra Energy Inc., Form 10-K (Dec. 31, 2015)……………………………………………….5

4826-1652-9982

American Stock Transfer & Trust Company, LLC ("AST"), as successor trustee to The Bank of New York Mellon Trust Company, N.A. (in such capacity, the "EFH Indenture Trustee") under the indentures (the "Indentures") for notes (the "EFH Notes," and the holders thereof, the "EFH Noteholders") issued by Energy Future Holdings Corp. ("EFH Corp.") (as described in Exhibit 1 attached hereto), by its undersigned counsel, hereby objects (the "Objection") to the *Motion of the EFH/EFIH Debtors for Entry of a Supplemental Order (A) Binding Holders of Claims and Interests to Their Prior Ballots, Pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, (B) Approving the Revised EFH/EFIH Disclosure Statement, (C) Approving the Procedures and Timeline for the Limited Resolicitation of Votes on the Plan, and (D) Approving the Manner and Forms of Notice Related Thereto Filed* [D.I. 10349] (the "Limited Solicitation Motion"), which seeks, among other things, approval of the *Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* [D.I. 10293] (as modified, amended or supplemented, the "Proposed Disclosure Statement") for the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et. al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10290] (as modified, amended or supplemented, the "Fifth Plan").[2]  In support of this Objection, the EFH Indenture Trustee respectfully states as follows and incorporates by reference the *Expert Declaration of Professor Jack Williams*, which is attached hereto as Exhibit 2:

---

[2]     Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Limited Solicitation Motion, the Proposed Disclosure Statement or the Fifth Plan, as applicable.

# I.
## PRELIMINARY STATEMENT

1.       Under the Limited Solicitation Motion, the EFH/EFIH Debtors seek approval of

the Proposed Disclosure Statement and related procedures to bind all parties (except holders of

Claims in Class B6 (the "PIK Holders")) to the votes they previously cast for the Fourth Plan.[3]

The Limited Solicitation Motion must be denied because the Fifth (or any subsequent) Plan can

only be confirmed if adversely affected EFH Noteholders are provided with the opportunity to

vote after receipt of an adequate updated disclosure statement.[4]  As detailed below, the plan

modifications made in response to the extraordinary Third Circuit Makewhole Decision

adversely and materially affect the treatment EFH Noteholders were to receive under the Prior

Plan.[5]

2.       The unexpected Third Circuit Makewhole Decision, and the changes made to the

Prior Plan in response, have fundamentally altered the Debtors' economic assumptions

underlying distributions and have surely caused some EFH Noteholders to reconsider their prior

votes.  The Debtors' own admissions and arguments to the Third Circuit for an *en banc* rehearing

clearly illustrate the extraordinary nature of these changed circumstances.  The resulting legal

and economic consequences to EFH Noteholders were not previously disclosed.  Notably the

---

[3]     *Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9612] (the "Fourth Plan" or "Prior Plan").

[4]     In these unusual circumstances, any order approving the Limited Solicitation Motion should also contain language making clear that all holders may object to the Fifth Plan or any subsequent plan regardless of any prior vote or decision not to vote.

[5]     The changes to the Fourth Plan do not adversely impact holders of EFH Unexchanged Notes (Class A5), as EFH Beneficiary Claims.  Thus, the EFH Indenture Trustee is not seeking resolicitation for those holders who are protected by the *Settlement and Support Agreement*, dated November 23, 2015 [D.I. 7143-1], approved by the Court on November 25, 2015, pursuant to the *Order Approving Settlement Among Debtors, EFH Committee, EFH Notes Trustee, and Certain Other Parties* [D.I. 7143].  Accordingly, solely for purposes of this Objection, the defined term "EFH Noteholders" shall mean holders of Claims in Class A4 (EFH Legacy Note Claims), Class A6 (EFH LBO Note Primary Claims) and Class B5 (EFH LBO Note Guaranty Claims).  *See* Fifth Plan, at pp. 48-49.

4826-1652-9982

Debtors do not contest the shocking and surprising nature of the Third Circuit Makewhole

Decision and they readily concede that "the panel's decision leaves the law on this vitally

important issue in a regrettable state of confusion . . . This state of affairs is untenable."

*Debtors' Petition for Rehearing or Rehearing En Banc for Appellees*, Del. Trust Co. v. Energy

Future Intermediate Holding Co. LLC, No. 16-1351 (3d Cir.), attached hereto as Exhibit 3

("Debtors' Rehearing Petition"), at 2.  As the Debtors stated:

> That is no small tweak to New York law.  In the multi-billion-dollar bankruptcy at issue here, it means appellees may owe some $900 million in premiums that the bankruptcy court and district court both held inapplicable.  And for thousands of other contracts it may leave the parties with a deal dramatically different from the one they thought they bargained for if they end up in this circuit.
>
> ***
>
> Only the New York Court of Appeals can finally resolve [whether New York law requires express contractual language in order for a make-whole premium to apply after acceleration of debt].  And until it does so, the panel's decision in this case means that federal courts cannot ensure that indentures under New York law will be treated uniformly in federal bankruptcy proceeding–undermining the basic purpose of Congress' "uniform laws on the subject of Bankruptcies."
>
> ***
>
> And the question's importance goes beyond its direct financial impact.  The panel's decision will upend the expectations of parties whose indentures will now be construed based on terminological distinctions that, based on then unanimous case law, none anticipated as having any significance [. . . ] This is not an issue on which ongoing uncertainty can be tolerated.

Ex. 3, at pp. 1-2; 8-9, 17.  This Court should assume that when EFH Noteholders previously

voted, they were not expecting the dramatic shift in the law imposed on this case by the Third

Circuit.

4826-1652-9982

3.    Without question, the changes to the Fourth Plan made by the EFH/EFIH Debtors in response to the Third Circuit Makewhole Decision and the proposed makewhole claim settlement between the EFIH Debtors, the EFIH First Lien Noteholders and the EFIH Second Lien Noteholders (the "Proposed Makewhole Settlement") modify the Fourth Plan in a manner that adversely affects the treatment afforded to EFH Noteholders.  The adverse nature of the modifications is best illustrated by focusing on three of these changes.

4.    First, as a result of the Proposed Makewhole Settlement, distributions to EFH Noteholders, other than from cash on hand at EFH Corp., will be eliminated.  The Debtors' option, let alone intent, to completely capitulate on the makewhole dispute by way of a settlement was not adequately disclosed in the Prior Disclosure Statement.  Indeed, the Prior Disclosure Statement does not describe the likelihood of a settlement of the Makewhole Claims (or the impact of such settlement on other creditors) under which **substantially all of the Makewhole Claims would be paid.**

5.    Second, it was always apparent that the Fourth Plan would need to be materially modified in the event of an adverse ruling from the Third Circuit on the Makewhole Claims.[6] The Fourth Plan was only confirmable — and the transactions contemplated therein could only close — if the Third Circuit did not rule adversely on the makewhole appeals prior to the Effective Date because NextEra, as the Plan Sponsor, bore the risk of any adverse makewhole ruling after the Effective Date of the Fourth Plan.  In all other circumstances the Fourth Plan was not subject to consummation without amendment.  Notably, the Fourth Plan did not lay out the material terms applicable to managing the consequences of an adverse ruling, such as who would

---

[6]    The EFH Indenture Trustee believes that subsequent to the Court's approval of the Merger Agreement between NextEra and the EFH/EFIH Debtors, no party held a clear view with regard to the impact of an adverse decision from the Third Circuit on the Makewhole Claims.  The Prior Disclosure Statement is far from a model of clarity on this issue.

prosecute, control and benefit from any needed "Phase II" litigation of the Makewhole Claims, who would appeal to the United States Supreme Court, who would litigate certification of the issue to the New York Court of Appeals, or how and on what terms the case would be settled.

6.    Third, and most fatal to the Fifth Plan, the indirect but material impact of these changes is that EFH Corp. creditors are no longer being compensated for EFH Corp.'s NOLs that are part of the package of assets NextEra is acquiring.  The changes cannot be analyzed in isolation from prior evidence, orders and rulings in this case.  As established at the August 2016 confirmation trial on the Third Plan, and as explained in the *Expert Declaration of Professor Jack Williams*, attached as Exhibit 2, EFH Corp.'s NOLs are quite valuable.  At the August 2016 confirmation trial, Paul Keglevic and Carla Howard each testified that the net present value of the then-estimated NOLs to a purchaser of EFH Corp. could be as high as $380 million.[7]  Here, NextEra will receive the benefit of EFH Corp.'s NOLs under the Fifth Plan.  By all historic and required accounting standards, NextEra will probably immediately record these NOLs as a "tax asset" on its financial statements as it has done in the past with other tax attributes.  *See, e.g.*, NextEra Energy Inc., Form 10-K (Dec. 31, 2015), excerpts of which are attached hereto as Exhibit 4.  Under the Fourth Plan more than **$450 million** of the Merger Sub Cash Amount would have flowed to the EFH Corp. estate (any such proceeds, the "EFH Merger Cash Proceeds"), and adequate consideration was being provided for the transfer of those valuable tax

---

[7]    In his declaration, Professor Williams details the information needed to value the NOLs.  If Mr. Keglevic's and Ms. Howard's methodology is employed using the dated and incomplete information available today, the updated value of the NOLs is approximately $155 million.

4826-1652-9982

assets.  Here, the Fifth Plan cannot be confirmed when EFH Corp. is transferring valuable NOLs

to NextEra and is not receiving any consideration in return.[8]

7.    The EFH Indenture Trustee is not seeking to delay confirmation, and the

resolution of the issues raised in this Objection does not require the denial of approval of a

disclosure statement at this time.  Rather, the concerns of the EFH Indenture Trustee can be

addressed by making the modest amendments to the proposed procedures, Fifth Plan, and

Proposed Disclosure Statement identified herein and summarized below:

(i)    Delivery of Value of NOLs to EFH Corp. – The Fifth Plan must be modified so
that EFH Corp. creditors receive the value of the NOLs being acquired by
NextEra.  The appropriate amount of consideration can be established at the
confirmation trial which can include a valuation and apportionment hearing on the
NOLs.

(ii)    Description of NOL Value – The Proposed Disclosure Statement should be
amended to describe all material facts related to the value of EFH Corp.'s NOLs
so that when holders vote on whether or not to support the Fifth Plan they are
fully informed of all material facts and law related to the value of that asset and
who is entitled to that value.

(iii)    Other Disclosures – The Proposed Disclosure Statement should describe that the
Tax Matters Agreement ("TMA"), approved by this Court, EFIH and NextEra,
essentially mandated that any sale of EFIH be undertaken in conjunction with a
sale of EFH Corp., and thus includes EFH Corp.'s NOLs.  It cannot be disputed
that if EFIH or its interest in Oncor were sold separately from EFH (and its
NOLs), a breach of the TMA would occur.

(iv)    Resolicitation – EFH Noteholders should be resolicited and should have the right
to withdraw consent to the releases contained in the Fifth Plan.

8.    Finally, it must also be emphasized that sufficient time exists between the January

4, 2017, hearing on the Proposed Disclosure Statement and the start of the confirmation hearing

for the Debtors to resolicit all EFH Noteholders.  As discussed below, when the burden of

---

[8]    *See, e.g., Contrarian Capital Management, LLC's Objection to Confirmation of the Debtors' Fourth
Amended Joint Plan of Reorganization of Energy Future Holdings Corp. et al., Pursuant to Chapter 11 of
the Bankruptcy Code as it Applies to the EFH and the EFIH Debtors* [Docket No. 10144].

4826-1652-9982

resolicitation is compared to even a small risk of a due process failure caused by a denial of the

EFH Noteholders' right to vote, resolicitation is the best course.

## II.
## RELEVANT BACKGROUND

### A.    AST's Retention and Role as Indenture Trustee for the EFH Notes

9.    AST serves as the successor indenture trustee under the Indentures for the EFH

Notes issued by EFH Corp.  The Prior Disclosure Statement indicated that the estimated

recovery under the Fourth Plan to these notes was 50%.  Prior Disclosure Statement, at p. 24.

### B.    TCEH Confirmation Hearing and Tax Matters Agreement

10.    As detailed in the Limited Solicitation Motion, the TCEH Debtors emerged on

October 3, 2016, following the contested confirmation hearing in August 2016.[9]  As part of that

trial, Mr. Paul Keglevic testified that:

> [T]he Tax-Free Spin-Off should not, based on the Private Letter
> Ruling, trigger any such tax, and *should preserve approximately
> $1.2 billion of NOLs for Reorganized EFH Corp*. . . . [T]he
> Debtors estimate that net present value of those NOLs could be
> approximately *$380 million*."[10]

11.    The *Order Confirming the Third Amended Joint Plan of Reorganization of

Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it

Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 9421] authorized and

directed the EFH/EFIH Debtors to enter into a Tax Matters Agreement [D.I. 9307] (the "TMA").

Pursuant to the TMA, EFIH agreed to be bound to EFH Corp. in connection with any plan, and

---

[9]    The confirmation hearing on the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9199] (the "T-Side Plan") as it related to the TCEH Debtors commenced on August 17, 2016, and lasted five days (the "T-Side Confirmation Hearing").

[10]    *Declaration of Paul Keglevic in Support of Confirmation of the Third Amended Plan of Reorganization*, D-DIR Keglevic, served on August 13, 2016, moved into evidence on August 18, 2016 ("Keglevic Dec."), at ¶ 30 (emphasis added).

4826-1652-9982

thus EFIH effectively agreed that EFH Corp.'s NOLs would be acquired in connection with any

sale of EFIH's economic interest in Oncor.  This binding of EFH Corp. and EFIH was a material

term of the TMA and was required so that the risk of a taxable separation would be minimized.

In addition, EFH Corp.'s retention of its NOLs was an integral part of the "gives and gets" used

to justify the compromises embodied in the Prior Plan, as well as the various Debtors' entry into

the TMA.

C.    **NextEra Merger Agreement**

12.    Fourteen days prior to the start of the T-Side Confirmation Hearing, the

EFH/EFIH Debtors filed the *Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry*

*into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and*

*Performance Under Plan Support Agreement* [D.I. 9190] (the "Merger Agreement Motion")

seeking approval to enter into the Merger Agreement with NextEra under which the EFH/EFIH

Debtors would sell their economic interest in Oncor Electric Delivery Company, LLC ("Oncor")

to NextEra.

13.    At the hearing held on September 19, 2016, on the Merger Agreement Motion,

NextEra agreed to increase its purchase price for Oncor as a result of the objections filed by the

EFH Indenture Trustee and other parties.  In the words of counsel to the Debtors:

> As a result of those discussions, NextEra, the proposed purchaser
> for the indirect ownership [. . .] in Oncor, has agreed to two very
> important changes and revisions to the merger agreement. First,
> NextEra has agreed to increase its purchase price by an additional
> $300 million. That results in a cash consideration of approximately
> $4.4 billion, up from the $4.1 billion number that was originally
> disclosed in the motion.
>
> Second, NextEra has agreed to release approximately $150 million
> from the holdback that would have been established under the
> merger agreement, to pay asbestos claims after the effective date.
> That doesn't change the reinstatement of asbestos claims; they're
> still being reinstated at the reorganized Debtors, but NextEra, on its

> own balance sheet, had set aside $250 million of [the] purchase price into this escrow, they're going to drop that down to 100 million, releasing an additional 150 of the purchase price. **Net/net the result is an additional $450 million of distributable value, a significant increase in recoveries for the EFH Legacy notes and the TC[E]H intercompany claim, the $750 million intercompany claim. And when I say significant, I mean it virtually quadrupled the recoveries of the EFH unsecured creditors.**

Hr'g Tr. 14:1-23 (Sep. 19, 2016)(emphasis added).  The Prior Disclosure Statement also described NextEra's decision to raise its purchase price and its effect on distributions to EFH Corp. creditors:

> Following the filing of the Merger Agreement and Plan Support Agreement with the Bankruptcy Court on August 3, 2016, NextEra and the EFH/EFIH Debtors continued to engage in negotiations on ensuring the Merger Agreement provided a value-maximizing transaction to the EFH/EFIH Debtors' estates. These discussions were productive and on September 18, 2016, NextEra agreed to increase the purchase price by $300 million to $4.4 billion (i.e., a total contribution of $9.8 billion, after accounting for the satisfaction of EFIH First Lien DIP Facility obligations).

> As a result of this additional distributable value for the benefit of the EFH/EFIH Debtors' constituencies, Fidelity, the largest single of [sic] EFH unsecured Claims, became party to the Plan Support Agreement. The additional distribution positioned the EFH/EFIH Debtors to increase the recoveries to Holders of Allowed EFH Legacy Note Claims and Holders of Allowed EFH Swap Claims from 16% to 50%, and increased the recovery on the TCEH Settlement Claim from 12% to 47%.

Prior Disclosure Statement, at p. 9.

14.    In the Debtors' words, this increase in the purchase price "virtually quadrupled the recoveries of the EFH unsecured creditors."  Hr'g Tr. 14:22-23 (Sep. 19, 2016) (Husnick, C.).  In response to these amendments, the EFH Indenture Trustee withdrew its objection to the Merger Agreement Motion.  *See* Hr'g Tr. 109:4-10 (Sep. 19, 2016).

9

15.     On September 19, 2016, this Court approved the Prior Disclosure Statement and the solicitation process began.

**D.      Third Circuit Makewhole Decision**

16.     On November 17, 2016, approximately two weeks before the start of the scheduled confirmation hearing on the Fourth Plan, and two days after the Voting Deadline for the Fourth Plan, the Third Circuit issued the Third Circuit Makewhole Decision reversing and remanding the decisions of the United States District Court for the District of Delaware and this Court regarding the disallowance of the Makewhole Claims asserted by Holders of EFIH First Lien Notes and Holders of EFIH Second Lien Notes.

17.     On December 15, 2016, the Debtors sought rehearing before the Third Circuit. *See* Ex. 2 (Debtors' Rehearing Petition).

**E.      The Fifth Plan and Proposed Disclosure Statement**

18.     In response to the disruption caused by the Third Circuit Makewhole Decision and the clear need for changes to the Prior Plan, the EFH/EFIH Debtors adjourned the confirmation hearing,[11] and subsequently, on December 1, 2016, the EFH/EFIH Debtors filed the Fifth Plan and Proposed Disclosure Statement.

**F.      Proposed Makewhole Settlement**

19.     On December 19, 2016, the Debtors filed a Form 8-K and disclosed a proposed settlement of the Makewhole Claims asserted by Holders of EFIH First Lien Notes and EFIH Second Lien Notes.  In summary, under the proposed settlement Holders of EFIH First Lien Makewhole Claims will recover 95-97% of their Makewhole Claims depending on whether the PIK Holders accept, reject or object to the Fifth Plan (as proposed to be amended).  Similarly,

---

[11]     *See Notice Regarding Scheduling Order and Commencement of Plan Confirmation Proceedings* [D.I. 10235].

Holders of EFIH Second Lien Makewhole Claims will recover 87.5-92% of their Makewhole

Claims depending on what the PIK Holders do vis-à-vis the Fifth Plan.  *See* Energy Future

Holdings Corp., Form 8-K (Dec. 19, 2016), attached hereto as <u>Exhibit 5</u>.

20.    This compromise of the Makewhole Claims, whether eventually embodied in an

amended plan or a separate agreement to be approved by the Court in conjunction with a plan,

will ***permanently*** eliminate the possibility that EFH Noteholders will receive any distributions of

any EFH Merger Cash Proceeds on account of the sale of Oncor to NextEra.  Once the

Makewhole Claims are allowed and paid under the settlement, no proceeds of the Merger will be

available to any creditor of EFH Corp. and their recovery will be limited to any cash at EFH

Corp.

**III.**
**<u>OBJECTION</u>**

21.    The EFH/EFIH Debtors seek two forms of relief in the Limited Solicitation

Motion:  (i) approval of the Proposed Disclosure Statement; and (ii) entry of an order finding that

the proposed changes to the Fourth Plan are not adverse and material and thus EFH Noteholders

and certain other claimants are not entitled to vote on the Fifth Plan.  Neither form of relief can

be granted without the modifications requested herein.

**A.    <u>EFH Noteholders Are Impaired Under the Fifth Plan and Are Entitled to Vote</u>**

22.    The disclosure and voting scheme established by the Bankruptcy Code is

designed to ensure that parties impacted by a debtor's bankruptcy have a voice in the

confirmation process.  That voice in the process takes the form of the right to be heard **and** the

right to vote.  Section 1126(a) provides that the "holder of a claim or interest allowed under

section 502 of this title may accept or reject a plan."  11 U.S.C. § 1126(a).  However, parties

11

whose claims or interests are not "impaired," are deemed conclusively to accept the plan, and

parties who receive nothing under a plan are deemed to reject it.  *See* 11 U.S.C. §§ 1126(f), (g).

> Chapter 11 places voting power in the hands of that group of claimants—effectively disregarding the votes of claimants whose rights are unimpaired and the votes of claimants who are 'out of the money.' Those residual claimants are in the best position to evaluate the reorganization transactions and to compare their recovery under the plan to other alternatives, such as liquidation, another potential plan, or an auction of the business as a going concern. By focusing on the value of their own claims, creditors occupying the residual class should wind up choosing a course of action that maximizes the value of the corporation itself.

*See* Christopher W. Frost, *Bankruptcy Voting and the Designation Power*, 87 AM. BANKR. L.J.

155, 157 (2013).

23.    The Bankruptcy Code mandates that parties who are "impaired" under a plan are

statutorily provided with the right to accept or reject a plan and that "[c]reditors may not be

denied the opportunity to register that vote.  Such a deprivation would be an unconstitutional

deprivations of those creditors' right to procedural due process."  *In re 50-Off Stores, Inc.,* 231

B.R. 592, 595 (Bankr. W.D. Tex. 1999)(citing *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)).  As

one court noted:

> The due process clause also requires that the affected party have an opportunity "to be heard at a meaningful time and in a meaningful manner." *See, e.g., Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S. Ct. 1983, 1994, 32 L. Ed. 2d 556 (1972).  In the context of a chapter 11 plan proposed for confirmation, that means that an affected creditor ought to have the right to vote on the plan—and that necessarily means voting either for or against the plan. The debtor certainly "solicits" acceptances, but it risks the possibility that a sufficient number of creditors in a given class (whether by number or amount) will reject the plan. Creditors deserve the opportunity to "vote" their opposition to a given plan, and must receive the plan solicitation package in order to register that sort of vote. Creditors who are deprived of the opportunity to vote against a given plan are deprived of their due process rights under the Constitution. This is especially true because the rights of a given creditor class that registers a sufficient number of negative votes to

reject the plan are increased as a result—the debtor must resort to "cramdown" in order to then obtain confirmation over that rejection. 11 U.S.C. § 1129(b). What is more, creditors are bound by the terms of a confirmed plan, whether they've voted for it or not, so their ability to vote against the plan is especially important and valuable. 11 U.S.C. § 1141(a).

*Id.*

24.     Here, the potential deprivation of rights is further compounded by the fact that the prior ballots incorporated the mechanics by which creditors could "opt out" of giving third-party releases under the Fourth Plan.  *See*, *e.g.*, Item 3 on Exhibit 2-C (Form of General Purpose) to *Order (A) Approving the EFH/EFIH Disclosure Statement, (B) Establishing the EFH/EFIH Voting Record Date, EFH/EFIH Voting Deadline, and other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [D.I. 9585].  In light of the changed terms of the Fourth Plan, voting creditors may choose not to grant such releases (even if such creditors may vote to accept the Fifth Plan).  Accordingly, the proposed procedures should also be modified to allow all adversely impacted EFH Noteholders to withdraw their prior consent to releases whether given by their submission of a ballot or by virtue of their failure to opt out.

25.     By restricting who can vote on a plan, a debtor can significantly impact whether a plan will be confirmed.  Indeed, if EFH Noteholders vote to reject the Fifth Plan, the EFH/EFIH Debtors will need to satisfy the Bankruptcy Code's "cramdown" requirements with the associated increased due process protections, to achieve confirmation.  With the Limited Solicitation Motion, the EFH/EFIH Debtors seek to deny the EFH Noteholders their statutory and due process rights to vote on a new plan which adversely changes the treatment they were to receive under the Fourth Plan.  Where, as here, legal circumstances and plan terms are so

changed, and the Proposed Makewhole Settlement adversely affects the treatment afforded to

EFH Noteholders, they must be resolicited.[12]

**B.     The EFH/EFIH Debtors Cannot Meet Their Burden to Establish that Modifications
to the Prior Plan Do Not Result in Adverse Change to
Treatment of EFH Noteholders**

26.     Under the Fourth Plan, the increased purchase price offered by NextEra resulted

in an additional $450 million of distributable value, which "virtually quadrupled the recoveries

of the EFH unsecured creditors."  Hr'g Tr. 14:22-23 (Sep. 19, 2016).  Clearly, if the Third

Circuit affirmed this Court's decision on the Makewhole Claims, those distributions would have

been "locked in."  Similarly, if the Third Circuit did not rule until after the Effective Date of the

Prior Plan, NextEra assumed all risk of an Allowed Makewhole Claim, and the recovery to EFH

Corp. creditors remained locked in.[13]  The Fourth Plan was also clear in its provisions that

NextEra could walk away from its bargain if the Third Circuit ruled adversely.  In all other

circumstances, no clear path was delineated.  In fact, the EFH Indenture Trustee submits that the

Prior Plan and the Prior Disclosure Statement were ambiguous regarding a path forward in these

circumstances and it was understood that substantive amendments would be required.

**C.     The Adverse Modifications Made to the Prior Plan
Require Resolicitation of EFH Noteholders**

27.     Contrary to the EFH/EFIH Debtors' assertion, the EFH Noteholders must be

resolicited since the Fifth Plan adversely changes the treatment EFH Noteholders will receive.

As noted, the adverse change in treatment afforded to EFH Noteholders results from a

combination of the changed language in the Fifth Plan and the altered legal landscape.

---

[12]     As stated above, and for avoidance of doubt, the EFH Indenture Trustee is not requesting a resolicitation of
holders of EFH Beneficiary Claims.

[13]     *See* Prior Disclosure Statement, at p. 16.

28.     Where, as here, a debtor seeks to amend a plan after parties have been solicited

and have voted on the plan, the modifications must comply with Bankruptcy Rule 3019(a),

which provides that:

> [A]fter a plan has been accepted and before its confirmation, the
> proponent may file a modification of the plan. If the court finds
> after hearing on notice to the trustee, any committee appointed
> under the Code, and any other entity designated by the court that
> **the proposed modification does not adversely change the
> treatment of the claim of any creditor** or the interest of any
> equity security holder who has not accepted in writing the
> modification, it shall be deemed accepted by all creditors and
> equity security holders who have previously accepted the plan.

Bankruptcy Rule 3019(a) (emphasis added).[14]  The plain language of Bankruptcy Code section

1127 and Bankruptcy Rule 3019(a) requires that if a plan modification adversely affects the way

creditors are treated, the creditors affected by the modification must be resolicited.  An adversity

determination is a "mixed question of law and fact."  *See In re Proveaux*, No. 07-05384-JW,

2008 Bankr. LEXIS 1325, at *9-10 (Bankr. D.S.C. Apr. 4, 2008).  While, as discussed in the

Limited Solicitation Motion and below, some courts have added a materiality requirement to the

plain language of Bankruptcy Rule 3019, the EFH Indenture Trustee submits that any proposed

modification which results in an adverse change to the treatment of a voting creditor requires that

creditor to be resolicited.  Neither the EFH/EFIH Debtors nor this Court should abridge the

procedural and substantive rights of holders embodied in the right to vote on a plan.

29.     At the hearing, the burden will be on the Court to ensure that the modifications

contained in the Fifth Plan do not adversely affect any party not being resolicited.  *Peltz v.*

*Worldnet Corp. (In re USN Communs., Inc.)*, 280 B.R. 573, 596 (Bankr. D. Del. 2002) ("Rule

---

[14]     Section 1127(a) provides that the "proponent of a plan may modify such plan at any time before
confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of
sections 1122 and 1123 of this title." 11 U.S.C. § 1127(a).  However, section 1127 is silent where, as here,
a debtor seeks to amend a plan after parties have been solicited and voted on the plan.

3019 places the burden on the Court, after hearing on notice to such parties, to insure that the proposed modification 'does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification'"). Upon information and belief, as of the date of this Objection, no EFH Noteholder has accepted the plan modifications in writing.

(i)     **Resolicitation of EFH Noteholders is Required:**
**The Fifth Plan Adversely Changes the Treatment of EFH Noteholders**

30.     This Court may not enter an order binding EFH Noteholders to the Fifth Plan, based on the votes they cast for the Fourth Plan, unless the Court makes a finding that the Fifth Plan does not adversely change the treatment the EFH Noteholders were to receive under the Fourth Plan.[15] *See* paragraph 3 of proposed order to Limited Solicitation Motion.

31.     Courts examining Bankruptcy Rule 3019 have determined that in connection with making such a finding a court should simply review whether the plan modification "adversely affects the interests of a creditor who has previously accepted the plan, in more than a purely ministerial *de minimis* manner." *U.S. v. Frontier Airlines, Inc*., 93 B.R. 1014, 1023 (Bankr. D. Colo. 1988). In *Frontier*, the modified plan altered the treatment of creditors to provide for a distribution of a combination of cash and notes if the creditor did not elect to receive payment in cash for their claims, whereas initially creditors were to receive cash in the amount of their allowed claim. *Id*. The *Frontier* court found that this change required the plan to be resolicited because the modification effected a change in recoveries because there was "not at the present time cash available in an amount sufficient to pay all claims in full. . . . The result of the plan modification is that unsecured creditors who elect to take only cash in the allowed amount of

---

[15]     The EFH Indenture Trustee further submits that the potential for the adverse change and the consequences should also have been prominently disclosed in the Prior Disclosure Statement if it was the Debtors' intent to bind creditors to their prior votes in the event of any adverse ruling by the Third Circuit.

16

their claims will suffer a shrinkage in their proportionate interest in the remaining pool of assets

available to assure the payment of their claims."  *Id.*  In *Proveaux,* the court found that the

debtor's modifications to the plan affected the likelihood of creditor recoveries by removing an

auction provision and permitting creditors to seek *ex parte* relief from the automatic stay.  2008

Bankr. LEXIS 1325, at *10-12.

32.     Here, the EFH/EFIH Debtors' proposed changes adversely affect the treatment

afforded to EFH Noteholders under the Fourth Plan and require an amended disclosure statement

and resolicitation of ballots from EFH Noteholders.  The Proposed Makewhole Settlement

results in the EFH Noteholders suffering worse treatment under the Fifth Plan as compared to the

Fourth Plan and may not receive any distributions of EFH Merger Cash Consideration.  *Cf.  In re

City of Detroit*, 524 B.R. 147, 253 (Bankr. E.D. Mich. 2014) (finding that modifications did not

adversely change treatment of any claims because the modifications "maintained or improved the

treatment of claims or otherwise clarified various plan provisions."); *In re Mangia Pizza Invs*.,

LP, 480 B.R. 669, 689 (Bankr. W.D. Tex. 2012) ("The Court finds that the Second Amended

Plan does not adversely affect any creditor as the amounts payable under the Second Amended

Plan are all better than or equal to the Plan as solicited.").

(ii)     **Bankruptcy Rule 3019(a) Does Not Require the Court to Determine Whether
          Plan Amendments Cause a Material Change in Creditor Treatment**

33.     In the Limited Solicitation Motion, the EFH/EFIH Debtors argue that

resolicitation is only required if a plan modification is found to be "material."  Limited

Solicitation Motion, at ¶¶ 16-17.  Neither the Bankruptcy Code nor Bankruptcy Rules set forth a

materiality requirement when considering whether proposed modifications to a plan require that

creditors who already voted on it need to be resolicited.  While some courts in Delaware have

mentioned a materiality requirement in considering Bankruptcy Rule 3019(a), courts in other

jurisdictions do not apply a materiality standard. *See Frontier* 93 B.R. 1014; *City of Detroit,* 524

B.R. 147; *Mangia Pizza*, 480 B.R. 669.

34.     Moreover, this materiality requirement, where applied, only examines whether a

proposed plan modification would likely lead a creditor to reconsider its vote — not whether the

proposed change would **actually** make the creditor change its vote.[16]  In *Solar King*, a case cited

by the EFH/EFIH Debtors, the court stated:

> A modification is material if it so affects a creditor or interest
> holder who accepted the plan that such entity, if it knew of the
> modification, would be likely to reconsider its acceptance. The
> severity of the modification need not be such as would motivate a
> claimant to *change* their vote—only that they would be apt to
> *reconsider* acceptance.

*In re Am. Solar King Corp.,* 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988)(citing 8 COLLIER ON

BANKRUPTCY, ¶ 3019.03, p. 3019-3 (15th ed. 1987)) (emphasis in original).[17]  In *Solar King*, the

court found a plan modification to be non-material where the proposed increase in equity shares

resulted in less than a one-percent dilution for certain parties.  *Id* at 824.  In contrast, the

modifications proposed in the Fifth Plan virtually deplete all sources of recovery for EFH

Noteholders.

35.     Notably, the *Frontier* court affirmatively rejected the *Solar King* test because it

placed the court in a position of guessing what creditors may do in light of a proposed plan

---

[16]     The EFH Indenture Trustee reserves the right to supplement this Objection and/or introduce evidence regarding whether or not EFH Noteholders are considering changing their votes.

[17]     The other cases cited by the EFH/EFIH Debtors in support of a materiality requirement are inapposite or distinguishable.  For example, in *In re Century Glove, Inc., C.A.* No. 90-400-SLR, C.A. No. 90-401-SLR, 1993 U.S. Dist. LEXIS 2286, at *5-7 (D. Del. Feb. 10, 1993), the court determined that the creditor requesting resolicitation "lacks standing to assert its contention of inadequate disclosure."  Therefore, the entire discussion by the *Century Glove* court regarding materiality was dicta.  Similarly, in *In re Cellular Info. Sys.*, 171 B.R. 926 (Bankr. S.D.N.Y. 1994), it is unclear whether any of the parties argued that Bankruptcy Rule 3019 applied or that votes needed to be resolicited.  *In Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.),* 177 B.R. 791, 802 (S.D.N.Y. 1995), the court was dealing with an appeal of a confirmed plan — not any request to resolicit votes because of a plan modification.

modification.  The *Frontier* court adopted a test that simply reviewed whether the amendment

"adversely affects the interests of a creditor who has previously accepted the plan, in more than a

purely ministerial *de minimis* manner."  *See Frontier*, 93 B.R. at 1023.  The EFH Indenture

Trustee submits that the *Frontier* test is "the better test for materiality since it removes the Court

from speculating as to what a creditor may do with its ballot."  *See Proveaux*, 2008 Bankr.

LEXIS 1325, at *10.  Moreover, as the *Frontier* court noted, the legislative history also supports

adoption of the test that looks at whether a creditor is merely adversely affected by a plan's

modifications:

> [S]ubsection (f) of Section 1127, as proposed in the original Senate
> bill, provided that a proponent of a modification to a plan did not
> have to resolicit unless the court found the modification made a
> "materially" adverse change in the treatment of the creditors. *See,*
> S.2266, Calendar No. 1026, page 533, 95th Cong. 2nd Sess.
> (1977). The language included in the Senate bill was not enacted.
> Both the change in the legislative proposal and the express
> language of B.R. 3019 indicate that the Court should not
> disenfranchise creditors from having an opportunity to vote on
> plan modifications based on the degree of the hurt. If the
> modification adversely affects the interests of a creditor who has
> previously accepted the plan, in more than a purely ministerial *de
> minimis* manner, that creditor should have the opportunity to
> reconsider and change his or her vote.

93 B.R. at 1023.

36.    As noted, the EFH Indenture Trustee's position that the lower threshold for

resolicitation applies is also supported by the plain language of Bankruptcy Rule 3019, which

only requires that the Court determine whether a proposed modification adversely affects the

treatment of creditors.  Nonetheless, even if the *Solar King* test is applied, the proposed changes

at issue are material.  Any materiality analysis must apply to the changed legal and factual

circumstances in which the plan is proceeding.  In *Resolution Trust*, a case cited by the

EFH/EFIH Debtors, a creditor appealed a portion of a confirmed plan relating to a subordination

agreement.  The court stated that the reversal on appeal of the validity of the subordination

agreement would result in an adverse change in treatment to claimants and that if "the Plan's

enforcement of the subordination agreements were reversed on appeal, *the Plan would have to be*

*voided*."  *Id* at 802 (emphasis in original).

37.    Here, where the Third Circuit has now spoken, there has been a material change

in the law impacting the potential distributions in this case.  This change is unquestionably

material, and the massively disruptive change in the law was well explained in the Debtors'

pending request for *en banc* rehearing before the Third Circuit.

38.    Furthermore, the Proposed Makewhole Settlement and the revisions to the Fourth

Plan effect a material change to the plan and distribution to EFH Noteholders.[18]  The possibility

that EFH Corp. creditors will receive no distributions of any EFH Merger Cash Proceeds as a

result of the Proposed Makewhole Settlement would surely make the EFH Noteholders

reconsider their vote.  Under the Fourth Plan, EFH Corp. unsecured creditors were slated to

receive approximately $450 million in distributions resulting from NextEra's bid.  The

subsequent Third Circuit Makewhole Decision and proposed revisions to the Fourth Plan will

eliminate all distributions of any EFH Merger Cash Proceeds to EFH Corp.  This is a material

change and EFH Noteholders must be resolicited.

---

[18]    *See In re Concrete Designers*, 173 B.R. 354, 358 (Bankr. S.D. Ohio 1994) (finding modifications material because the "changes involved have a material and potentially adverse effect, or the possible perception thereof, on the unsecured creditors herein. The creditors may have voted under the auspice that they would be paid a 100% dividend, and would not have accepted anything less, believing the Debtor to be of significant value. The modification here is far reaching, and to this day the affected creditors may not realize its impact, still believing that they voted for the distribution in the Second Amended Disclosure Statement.  Had the modification at issue been a straight and simple improvement of the treatment of unsecured creditors, the Court may have reached a different conclusion.").

**D.**       **The Proposed Disclosure Statement Does Not Contain Adequate Information**

39.       If this Court rules that EFH Noteholders are entitled to vote again, changes clearly

need to be made to the Proposed Disclosure Statement.  However, the EFH Indenture Trustee

submits that even if resolicitation is not required, the Proposed Disclosure Statement should be

updated so that all parties move forward with the confirmation proceedings with a base of

common agreement on core economic facts, such as the amount and value of EFH Corp.'s

NOLs.

40.       Section 1127(c) requires that all plan modifications satisfy the adequacy-of-

disclosure concerns of section 1125. 11 U.S.C. § 1127(c) ("The proponent of a modification shall

comply with section 1125 of this title with respect to the plan as modified.").  Here, since the

Fifth Plan adversely affects EFH Noteholders, they are entitled to additional adequate disclosure

as provided for under section 1125.  "Adequate information" is defined in section 1125(a) of the

Bankruptcy Code as:

> information of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtor and the condition of the debtor's books and records,
> including a discussion of the ***potential material Federal tax
> consequences*** of the plan to the debtor, any successor to the
> debtor, and a hypothetical investor typical of the holders of claims
> or interests in the case, that would enable such a hypothetical
> investor of the relevant class to make an informed judgment about
> the plan . . .

11 U.S.C. § 1125(a) (emphasis added).

41.       The standard for determining whether the Debtors have provided "adequate

information" to creditors and parties-in-interest required under section 1125 is whether the

"hypothetical reasonable investors receive[d] such information as will enable them to evaluate

for themselves what impact the information might have on their claims and the outcome of the

case, and to decide for themselves what course of action to take." *In re Ferguson*, 474 B.R. 466,

21

470-471 (Bankr. D.S.C. 2012) (denying approval of disclosure statement as not containing adequate information); *see also In re Metrocraft Pub. Services, Inc.,* 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (denying approval of disclosure statement as not containing adequate information) (emphasis added).

42.    Because it is virtually impossible that the proceeds from the sale of Oncor will flow to EFH Corp. if the Proposed Makewhole Settlement is approved, the value of EFH Corp.'s NOLs, and the underlying facts needed to determine that value, should be clearly disclosed so that EFH creditors can evaluate the appropriate course of action to take.[19]  In *In re Zaruba*, the court denied approval of the disclosure statement because it "ignores the tax effects of the plan on a typical creditor in the case." 384 B.R. 254, 256 (Bankr. D. Alaska 2008).

43.    As noted, at the trial in August 2016, Paul Keglevic and Carla Howard both estimated the value of the retained NOLs to EFH Corp. to be **$380 million**.  They made these estimates during the same period that the Debtors were negotiating with NextEra or shortly after concluding those negotiations.  Until NextEra increased its purchase price to result in at least that amount of consideration flowing to EFH Corp., the EFH Indenture Trustee vigorously opposed the Merger Agreement.[20]  The plan modifications, combined with the Proposed Makewhole Settlement (through whatever mechanism it is to be implemented) permanently remove the

---

[19]    Full voluntary disclosure is especially important here, where the EFH Committee is contractually barred from objecting to the Fifth Plan pursuant to the *Settlement and Support Agreement*, dated November 23, 2015 [D.I. 7143-1], approved by the Court on November 25, 2015, pursuant to the *Order Approving Settlement Among Debtors, EFH Committee, EFH Notes Trustee, and Certain Other Parties* [D.I. 7143].

[20]    On August 25, 2016, the EFH Indenture Trustee filed *the EFH Indenture Trustee's Objection to Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry Into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into and Performance Under Plan Support Agreement* [D.I. 9399].  On September 6, counsel to the EFH Indenture Trustee served the Debtors with the *EFH Indenture Trustee's Requests for Production of Documents to the Debtors in Connection With the Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry Into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into and Performance Under Plan Support Agreement*.  *See* Notice of Service [D.I. 9482].

possibility of EFH Corp. recovering anything remotely near $380 million on account of its

NOLs.  As detailed in the *Expert Declaration of Prof. Jack Williams*, additional information

should be included in the Proposed Disclosure Statement so the creditors can update the NOL

value using the methodology employed by Ms. Howard and Mr. Keglevic and perform their own

more detailed analysis.

**E.**    **The Fifth Plan is Patently Unconfirmable**

44.    To obtain approval of the Proposed Disclosure Statement, the EFH/EFIH Debtors

must demonstrate that the "the plan is confirmable or that defects might be cured or involve

material facts in dispute."  *In re Am. Capital Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012)

(affirming lower court finding that proposed plan was patently unconfirmable).  Even if a court

finds that a proposed disclosure statement contains "adequate information," "a disclosure

statement should not be approved if the proposed plan, as a matter of law, cannot be confirmed."

*See In re Allied Gaming Mgmt.*, 209 B.R. 201, 202 (Bankr. W.D. La. 1997) (citing *In re Curtis*

*Center Limited Partnership*, 195 B.R. 631 (Bankr. E.D. Penn. 1996); *In re Eastern Maine*

*Electric Co-op, Inc.*, 125 B.R. 329 (Bankr. D. Me. 1991); *In re 266 Washington Associates*, 141

B.R. 275 (Bankr. E.D. N.Y. 1992); *In re Bjolmes Realty Trust*, 134 B.R. 1000 (Bankr. D. Mass.

1991); *In re Atlanta West VI*, 91 B.R. 620 (Bankr. N.D. Ga. 1988); *In re Monroe Well Service,*

*Inc.,* 80 B.R. 324 (Bankr. E.D. Pa. 1987); *In re Pecht*, 57 B.R. 137 (Bankr. E.D. Va. 1986)); *see*

*also In re Forest Grove, LLC*, 448 B.R. 729, 736 (Bankr. D.S.C. 2011) (stating that a "court may

deny approval of a disclosure statement, even if it is not by itself deficient, if a debtor's plan has

no hope of being confirmed.").

45.    If "it appears there is a defect that makes a plan inherently or patently

unconfirmable, the Court may consider and resolve that issue at the disclosure stage **before**

requiring the parties to proceed with solicitation of acceptances and rejections and a contested

confirmation hearing." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012)

(emphasis added).  The EFH/EFIH Debtors' estates "should not be burdened (both in terms of

time and expense) with going through the printing, mailing, noticing, balloting, and other

exercises in the confirmation process where inability to attain confirmation is a *fait accompli*."

*Forest Grove*, 448 B.R. at 736.  A plan is "patently unconfirmable" where "(1) confirmation

defects cannot be overcome by creditor voting results and (2) those defects concern matters upon

which all material facts are not in dispute or have been fully developed at the disclosure

statement hearing." *Am. Capital Equip.,* 688 F.3d at 155 (internal citations omitted).

      (i)    **EFH Corp. is Receiving No Consideration for its NOLs**

     46.    Here, the Fifth Plan cannot be confirmed because it effectuates the transfer and/or

consumption of EFH Corp.'s NOLs without providing EFH Corp. with fair equivalent value.

Under the Fourth Plan, holders at EFH Corp. were to receive distributions on account of the EFH

Merger Cash Proceeds in the approximate amount of $450 million, provided that the Third

Circuit affirmed the lower court decisions on the Makewhole Claims or took no action.  The

Fourth Plan and the Prior Disclosure Statement contain no explicit language describing what

would happen in the circumstances we are now in.  No evidence exists, nor can the Debtors

testify, that upon approval of the Prior Disclosure Statement they knew what would occur in

these circumstances.

     47.    The NOLs are unquestionably property of EFH Corp.'s estate.  *See, e.g., In re*

*Prudential Lines, Inc*., 107 B.R. 832 (Bankr. S.D.N.Y. 1989), *aff'd* 119 B.R. 430 (S.D.N.Y.

1990), *aff'd* 928 F. 2d 565 (2d Cir. 1991).  Only EFH Corp. possesses the legal interest in, and

the right to control, the disposition and use of the EFH Group's tax attributes, including the

4826-1652-9982

NOLs, regardless of how and when the NOLs were generated. Even if a portion of the EFH

Group's NOLs were economically attributable to losses realized by EFIH, since EFIH is

classified as a disregarded entity for U.S. federal income tax purposes, income, losses and tax

attributes in respect of such losses (including NOLs) of EFIH are considered income, losses or

attributes of its owner, EFH Corp., for U.S. federal tax purposes. *See, e.g.*, 26 C.F.R. §

301.7701-2(c)(2); *In re Conex Holdings, LLC*, 518 B.R. 792 (Bankr. D. Del. 2014).

48.    Under the Fifth Plan, EFH Corp. will receive no consideration for the use of its

own NOLs. Rather, the consideration EFH Corp. and its creditors should have received from

NextEra for its NOLs will instead flow to EFIH and its creditors. Accordingly, in all events, the

Court must find that any plan that fails to give EFH Corp. consideration for use of its NOLs is

patently not confirmable. As noted, the solution to this issue need not be denial of confirmation

of the plan. Rather, the Fifth Plan and the Proposed Disclosure Statement should be modified to

provide for and explain that in connection with confirmation, as scheduled, the Court will hold

an apportionment hearing to determine the value of the NOLs and thus what portion of the

consideration must be distributed to creditors at EFH Corp.

(ii)    **The Fifth Plan Does Not Provide Creditors With Ability to Opt Out of Third-Party Releases Provided to Third Parties Under Fifth Plan**

49.    The case law in Delaware is clear that creditors must affirmatively "opt in" to

providing releases to third parties. *See In re Zenith Elecs. Corp.,* 241 B.R. 92, 111 (Bankr. D.

Del. 1999) (stating that third-party releases requires "the affirmative agreement of the creditor

affected."). Here, by seeking to bind the EFH Noteholders to their prior vote, EFH Noteholders

are not being provided the chance to opt out of the releases being provided to third parties, such

as NextEra. This opt-out is especially important since potential distributions to EFH Noteholders

may be substantially reduced as a result of the Proposed Makewhole Settlement. The Fifth Plan

cannot be confirmed if EFH Noteholders are not permitted to opt out of the releases provided under the Fifth Plan.

## IV.
## RESERVATION OF RIGHTS

50.     The EFH Indenture Trustee reserves all rights it may have in law or in equity to supplement this Objection and raise additional issues in the event further amendments or modifications to the Proposed Disclosure Statement or Fifth Plan are filed by the Debtors.

## V.
## CONCLUSION

WHEREFORE, the EFH Indenture Trustee respectfully requests that the Court (i) deny the Limited Solicitation Motion, (ii) order the Proposed Disclosure Statement and Fifth Plan be modified to address the concerns raised herein, and (iii) grant such relief as is just and proper.

Dated: Wilmington, DE          **CROSS & SIMON, LLC**
      December 28, 2016

By: _/s/Christopher P. Simon_____
Christopher P. Simon (Del. Bar No. 3697)
105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

-and-

NIXON PEABODY LLP
Amanda D. Darwin
Richard C. Pedone
Erik Schneider
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com

-and-

Christopher J. Fong
437 Madison Avenue
New York, NY 10022
Telephone: 212-940-3724
Facsimile: 855-900-8613
cfong@nixonpeabody.com

*Co- Counsel to American Stock Transfer & Trust
Company, LLC, as Indenture Trustee*

27