## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) Case No. 14-10979 (CSS) |
| ENERGY FUTURE HOLDINGS CORP., | ) (Jointly Administered) |
| *et al.*,[1] | ) |
| | ) **Hearing Date: March 28, 2017 at 10:00 a.m. (ET)** |
| Debtors. | ) **Obj. Deadline: February 6, 2017 at 4:00 p.m. (ET)** |
| | ) **Related to D.I. 10253** |

## MOTION OF DELAWARE TRUST COMPANY, AS TRUSTEE FOR THE EFIH FIRST LIEN NOTES, FOR AN ORDER DIRECTING PAYMENT AND REIMBURSEMENT OF CERTAIN FEES AND EXPENSES AS ADEQUATE PROTECTION OR IN THE ALTERNATIVE PURSUANT TO SECTIONS 105(a) AND 506(b) OF THE BANKRUPTCY CODE

Delaware Trust Company f/k/a CSC Trust Company of Delaware (the "EFIH First Lien Trustee"), as (i) successor indenture trustee ("Indenture Trustee") under (A) that certain indenture (as amended, restated, supplemented, or otherwise modified from time to time) (the "10% Indenture") by and among Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (together, "EFIH") and Bank of New York Mellon, N.A. ("BNY"), as indenture trustee, dated as of August 17, 2010, pursuant to which certain 10% Senior Secured Notes Due 2020 (the "10% Notes") were issued, and (B) that certain indenture (as amended, restated, supplemented, or otherwise modified from time to time) (the "6.875% Indenture," and together with the 10% Indenture, the "EFIH First Lien Indentures") by and among EFIH and BNY, as indenture trustee, dated August 14, 2012, pursuant to which certain 6.875% Senior Secured Notes Due 2017 (the "6.875% Notes" and, together with the 10% Notes, the "EFIH First Lien Notes") and (ii)

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

successor collateral trustee ("Collateral Trustee") under that certain collateral trust agreement (as amended, restated, supplemented, or otherwise modified from time to time) by and among EFIH, BNY, as collateral trustee, and the other "Secured Debt Representatives" from time to time party thereto dated as of November 16, 2009 (the "Collateral Trust Agreement"), hereby submits motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), directing payment and reimbursement of certain fees and expenses of (a) the EFIH First Lien Trustee and (b) the EFIH First Lien Trustee's professionals as adequate protection under Sections 361, 362, and 363 of the Bankruptcy Code, or in the alternative pursuant to Section 105(a) and 506(b) of the Bankruptcy Code.  In support of this Motion, the EFIH First Lien Trustee respectfully submits as follows:

## PRELIMINARY STATEMENT

1.      The EFIH First Lien Trustee and its professionals have incurred fees and expenses during these chapter 11 cases in enforcing the rights of the Trustee and holders of the EFIH First Lien Notes—most significantly, the right to payment of the makewhole payable under the EFIH First Lien Notes.

2.      The indentures and other agreements governing the EFIH First Lien Notes require the Debtors to pay these fees and expenses.  The EFIH First Lien Trustee filed proofs of claims seeking recovery of these fees and expenses and periodically provided documentation of these fees and expenses to the Debtors.  The Debtors have not filed an objection to the EFIH First Lien Trustee's claims for fees and expenses.  Yet, they have not paid them in any amount.

3.      The EFIH First Lien Trustee has been able to pay the fees and expenses of its professionals only because it held back from holders of the EFIH First Lien Notes

approximately $40.5 million in principal when EFIH redeemed the EFIH First Lien Notes in June 2014.  That hold-back, however, will soon be exhausted and, in any event, has reduced (at least temporarily) the distributions to holders of the EFIH First Lien Notes.

4.     The Debtors have now proposed a plan (the Seventh Amended Joint Plan of Reorganization (D.I. 10551), as may be amended or modified, the "Plan") premised on continued litigation of the make-whole claims under the EFIH First Lien Notes—and thus have forced the continued incurrence of fees and expenses by the EFIH First Lien Trustee and its professionals.  At the same time, the Plan provides for potential further delay in the payment of the fees and expenses that the EFIH First Lien Trustee and its professionals have incurred during these chapter 11 cases, and the sole source of recovery for such claims (and for future fees and expenses) is a cash reserve that could be insufficient to cover all claims against it.  The Plan provides no alternative sources of recovery for these claims—even though they are fully secured—and contemplates that a substantial portion of the value of the collateral of the EFIH First Notes will be used to pay *junior* classes.

5.     Indeed, while none of the fees and expenses of the EFIH First Lien Trustee have been paid during the nearly three years these cases have been pending, the fees and expenses of *junior* creditors have been paid throughout the cases.  The indenture trustee (the "EFIH Second Lien Trustee") for the second lien notes issued by EFIH (the "EFIH Second Lien Notes") has received payment of $21 million for its fees and expenses.  The indenture trustee (the "EFIH Unsecured Trustee") for the unsecured "PIK" notes issued by EFIH (the "EFIH Unsecured Notes") has already received a charging lien advance, and if the Plan is confirmed, will receive payment in full of all its

fees and expenses on the effective date from the proceeds of the collateral securing the EFIH First Lien Notes.

6.    While the EFIH First Lien Notes are currently fully secured, the value of the collateral and the "equity cushion" supporting the claims of the EFIH First Lien Notes have diminished as junior creditors have been paid (and as the claims of the EFIH First Lien Notes have increased) and will be further reduced—substantially—if the Plan is confirmed.  Accordingly, the Court should now direct EFIH to pay the fees and expenses of the EFIH First Lien Trustee and its professionals.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012.

8.    This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the EFIH First Lien Trustee consents pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.    The bases for the relief requested in this Motion are Sections 105(a), 361, 362, 363, 506(b) and 507(b) of title 11 of the United States Code (the "Bankruptcy Code").

## RELIEF REQUESTED

11.     By this Motion, the EFIH First Lien Trustee seeks entry of the Order directing EFIH to reimburse and pay, as adequate protection, the accrued but unpaid fees and out-of-pocket expenses of the EFIH First Lien Trustee and its professionals, incurred through November 2016.  Alternatively, these payments should be made under Sections 105(a) and 506(b) of the Bankruptcy Code.  This Motion is without prejudice to the EFIH First Lien Trustee's right to seek in the future payment of fees and expenses incurred after November 2016, both before and after the effective date of the Plan or any other plan of reorganization for EFIH, and any other claims.

## BACKGROUND

### I.     The Relevant Agreements

12.     The EFIH First Lien Indentures, the Collateral Trust Agreement, and the Pledge Agreement dated as of November 16, 2009 by and between EFIH and the BNY (the "Pledge Agreement"), obligate EFIH (and any successor) to pay all reasonable fees and expenses and other indemnification claims incurred by or on behalf of the EFIH First Lien Trustee (or its professionals) in connection with the performance of its duties under

those agreements, including "the costs and expenses of enforcing the Indenture[s]."[2] EFIH is obligated to make such reimbursements "promptly upon request."[3]  The EFIH First Lien Indentures and Collateral Trust Agreement provide that EFIH's reimbursement obligations thereunder "survive the satisfaction and discharge of this Indenture" and "survive repayment of all other Secured Debt Obligations" under the Collateral Trust Agreement, respectively.[4]

13.    The EFIH First Lien Indentures and Collateral Trust Agreement also specify that the EFIH First Lien Trustee shall not be required to expend or risk its own funds in the performance of its duties thereunder if it has reasonable grounds for believing that repayment of such funds is not assured.[5]  The EFIH First Lien Indentures further provide that to secure the EFIH's obligations to pay the fees and expenses of the

---

[2] *See* EFIH First Lien Indentures § 7.07 ("The Issuer and the Guarantors, jointly and severally, shall reimburse the Trustee promptly upon request for all reasonable disbursements, advances and expenses incurred or made by it," "includ[ing] the reasonable compensation, disbursements and expenses of the Trustee's agents and counsel.  The Issuer and the Guarantors, jointly and severally, shall indemnify the Trustee for, and hold the Trustee harmless against, any and all loss, damage, claims, liability or expense (including attorneys' fees) incurred by it in connection with the acceptance or administration of this trust and the performance of its duties hereunder (including the costs and expenses of enforcing this Indenture against the Issuer or any of the Guarantors (including this Section 7.07) or defending itself against any claim whether asserted by any Holder, the Issuer or any Guarantor, or liability in connective with the acceptance, exercise or performance of any of its powers or duties hereunder)."); Collateral Trust Agreement § 7.10 ("EFIH agrees to pay, promptly upon demand: … all reasonable fees, expenses and disbursements of legal counsel and any auditors, accountants, consultants or appraisers or other professional advisors and agents engaged by the Collateral Trustee incurred in connection with the negotiation, preparation, closing, administration, performance or enforcement of this Agreement and the other Security Documents"); *see also* Pledge Agreement § 15; First Lien Indentures § 10.04.

[3] EFIH First Lien Indentures § 7.07; *see also* Collateral Trust Agreement § 7.10 (payments must be made "promptly upon demand"); Pledge Agreement §15 (pledgor will pay fees and expenses "upon demand").

[4] EFIH First Lien Indentures § 7.07; Collateral Trust Agreement § 7.10.

[5] EFIH First Lien Indentures § 7.02(f); Collateral Trust Agreement § 5.10.

EFIH First Lien Trustee, "the Trustee shall have a Lien prior to the Notes on all money or property held or collected by the Trustee, except that held in trust to pay principal and interest on particular Notes. Such Lien shall survive the satisfaction and discharge of this Indenture."[6]

14.    EFIH's obligations under the EFIH First Lien Notes, including its obligations to pay fees and expenses pursuant to the EFIH First Lien Indentures, Collateral Trust Agreement, and Pledge Agreement, are secured by first-priority liens on substantially all of EFIH's assets, including EFIH's interest in Oncor.[7]

15.    Pursuant to the Collateral Trust Agreement, the claims, liens, and rights of the EFIH First Lien Trustee (and the EFIH First Lien Noteholders) are expressly senior to those of the EFIH Second Lien Trustee (and the holders of the EFIH Second Lien Notes ("EFIH Second Lien Noteholders")). In particular, among other things, the Collateral Trust Agreement both effectuates lien subordination—the second-priority liens afforded the EFIH Second Lien Trustee are junior to the first-priority liens afforded the EFIH First

---

[6] EFIH First Lien Indentures § 7.07.

[7] *See* Collateral Trust Agreement § 1.1 (defining "Parity Lien Obligations" and "Obligations") and § 2.1 (granting security interest to secure, among other things, "any principal, interest (including all interest accrued thereon after the commencement of any Insolvency or Liquidation Proceeding at the rate, including any applicable post-default rate, specified in the Secured Debt Documents, even if such interest is not enforceable, allowable or allowed as a claim in such proceeding), premium, penalties, fees, indemnifications, reimbursements, damages and other liabilities"); Pledge Agreement § 2 (granting security interest to secure "the payment of all Obligations … under the Parity Lien Documents, whether direct or indirect, absolute or contingent, and whether for principal, reimbursement obligations, interest, fees, premiums, penalties, indemnifications, contract causes of action, costs, expenses or otherwise"); EFIH First Lien Indentures § 10.04 ("[T]he principal, premium, if any, and interest on the Notes … and interest on the overdue principal, premium, if any, and interest (to the extent permitted by law), on the Notes and performance of all other Obligations of EFIH to the Holders of the Notes or the Trustee under this Indenture and the Notes, according to the terms hereunder or thereunder, are secured as provided in the Pledge Agreement and the Collateral Trust Agreement").

Lien Trustee—and specifies several situations in which either EFIH can make no payments on account of the EFIH Second Lien Notes until the EFIH First Lien Trustee and EFIH First Lien Noteholders have been paid in full in cash all amounts they are due, or any representative of the Second Lien Notes, such as the EFIH Second Lien Trustee, or any holder of Second Lien Notes (such representatives or holders, the "Second Lien Parties") must hold any such payments in trust for the benefit of the EFIH First Lien Trustee and the EFIH First Lien Noteholders.  Collateral Trust Agreement §§ 1.1, 2.4(c), (d), 3.4(a).

## II.    Relevant Proceedings in These Chapter 11 Cases

16.    At the outset of these chapter 11 cases, the Debtors proposed to redeem both the EFIH First Lien Notes and the Second Lien Notes.

### A.    The EFIH First Lien Notes

17.    After obtaining authorization from this Court, EFIH redeemed the EFIH First Lien Notes on June 19, 2014.  The Court's order approving the post-petition financing used to redeem the EFIH First Lien Notes expressly reserved the rights of all parties "with respect to the payment of any professional fees or expenses under the EFIH First Lien Documents … and EFIH Collateral Trust Agreement."  D.I. 859 at 14.

18.    In connection with the repayment of principal on the EFIH First Lien Notes, the EFIH First Lien Trustee held back approximately $40.5 million of principal repayment from distribution to holders of the EFIH First Lien Notes to cover the anticipated fees and expenses of the EFIH First Lien Trustee and its professionals.[8]

---

[8] The EFIIH First Lien Trustee and Holders of the EFIH First Lien Notes reserve all rights to assert claims for indemnification related to such hold-back.

19.     EFIH's redemption of the EFIH First Lien Notes led to substantial litigation regarding the EFIH First Lien Trustee's claim that EFIH was required to pay a makewhole of approximately $432 million (plus interest).  In June 2014, the EFIH First Lien Trustee commenced an adversary proceeding seeking a ruling from this Court that EFIH could not redeem the First Lien Notes without paying a "makewhole" payment to the EFIH First Lien Noteholders (*Delaware Trust Company v. Energy Future Intermediate Holding Company LLC and EFIH Finance Inc.*, Adv. Proc. No. 14-50363), and, to the extent necessary, moved for relief from the automatic stay to rescind acceleration of the First Lien Notes (D.I. 473) (together, the "First Lien Makewhole Action").

20.     In addition, also in June 2014, the EFIH First Lien Trustee, as Indenture Trustee and Collateral Trustee, commenced an adversary proceeding against the EFIH Second Lien Trustee, asserting that in the event that EFIH redeemed the First Lien Notes without paying the makewhole and/or other amounts under the EFIH First Lien Notes, pursuant to the terms of the Collateral Trust Agreement, the EFIH Second Lien Trustee would be obligated to turn-over to the EFIH First Lien Trustee any recoveries the Second Lien Parties received from EFIH (*Delaware Trust Company v. Computershare Trust Co.*, Adv. Proc. No. 14-50410) (the "Intercreditor Action").

21.     After substantial litigation, this Court ultimately entered judgment dismissing the First Lien Makewhole Action and the Intercreditor Action.  But, on appeal, the Third Circuit reversed this Court's entry of judgment for EFIH in the First Lien Makewhole Action, holding that under the terms of the EFIH First Lien Indentures, the makewhole was due and owing by EFIH.  842 F.3d 247 (3d Cir. 2016).  And that

same holding calls into question this Court's conclusion in dismissing the Intercreditor Action that the makewhole was not "payable under the documentation" governing the EFIH First Lien Notes. The EFIH First Lien Trustee's appeal of that dismissal remains pending. *See* No. 16-00461 (D. Del.).

### B.    The EFIH Second Lien Notes

22.    The Debtors abandoned their original proposal to refinance all the EFIH Second Lien Notes, but subsequently sought in February 2015 to partially pay down the EFIH Second Lien Notes (D.I. 3527) (the "Second Lien Paydown Motion"). The EFIH First Lien Trustee objected to the Second Lien Paydown Motion unless its turnover and other rights under the Collateral Trust Agreement were respected. To resolve those objections, the EFIH First Lien Trustee and the EFIH Second Lien Trustee agreed that the First Lien Trustee could continue to seek turnover from all future amounts that the Second Lien Parties might receive. D.I. 3855 ("Second Lien Paydown Order") ¶12. Pursuant to the Second Lien Paydown Order, the Debtors paid $15 million to the EFIH Second Lien Trustee for the payment of its fees and expenses (and those of its professionals).

23.    On November 23, 2016, the EFIH Second Lien Trustee filed a motion seeking an order directing the payment and reimbursement of a second set of fees and expenses of the EFIH Second Lien Trustee and its professionals as adequate protection, or in the alternative pursuant to Sections 105(a) and 506(b) of the Bankruptcy Code (D.I. 10253) (the "Second Lien Fee Motion"). The EFIH First Lien Trustee consented to the relief requested in the Second Lien Fee Motion subject to its receiving protections similar to those provided to the EFIH First Lien Trustee in the Second Lien Paydown Order.

24.    On December 14, 2016, the Bankruptcy Court entered an order granting the Second Lien Fee Motion subject to the protections required by the EFIH First Lien Trustee (D.I. 10383) (the "Second Lien Fee Order").  The Second Lien Fee Order, among other things, authorized the Debtors to pay up to $17 million to the EFIH Second Lien Trustee in reimbursement for the fees and expenses of the EFIH Second Lien Trustee and its professionals.  In accordance with the Second Lien Fee Order, in December 2016, the Debtors paid the fees and expenses of the EFIH Second Lien Trustee and its professionals in the amount of $7 million.

25.    Thus, in total, the EFIH Second Lien Trustee has sought and obtained authorization for payment of approximately $32 million in fees and expenses and has obtained payment of all but $10 million of that sum.

### C.    The EFIH Unsecured Notes

26.    In addition to paying fees and expenses of the EFIH Second Lien Trustee and its professionals, EFIH has also paid fees and expenses of the trustee for the EFIH Unsecured Notes—the EFIH *Unsecured* Trustee—and its professionals.  In particular, in connection with the settlement of claims asserted by the EFIH Unsecured Trustee against EFIH, including claims for post-petition interest, the Debtors agreed to advance to the EFIH Unsecured Trustee funds sufficient to cover the so-called "charging lien obligations" of holders of the EFIH Unsecured Notes through November 2015.  This Court entered an order approving that charging lien advance in December 15, 2015 (D.I. 7353).  Moreover, as discussed below, the Plan calls for the payment, on the Plan's *effective date*, of all additional fees and expenses of the EFIH Unsecured Trustee without any Court (or other) review.

### III.    The EFIH First Lien Trustee's Fees and Expenses

27.    The EFIH First Lien Trustee has incurred substantial professional fees and expenses in connection with these chapter 11 cases.  As of November 30, 2016, those fees and expenses totaled approximately $34 million (excluding a standard $2 million completion fee due the EFIH First Lien Trustee's financial advisor).

28.    A significant portion of those fees and expenses have been incurred in the First Lien Makewhole Action and the Intercreditor Action, and in the EFIH First Lien Trustee's other efforts to preserve its rights and those of the EFIH First Lien Noteholders to a makewhole that, as of today, exceeds $560 million, with interest, and is increasing, as interest continues to accrue.  As this Court is aware, the First Lien Makewhole Action alone has entailed years of litigation, including the commencement of both an adversary proceeding and a motion for relief from the stay (or a determination that holders of the EFIH First Lien Notes could rescind the acceleration of the notes without obtaining stay relief), extensive fact and expert discovery, summary judgment briefing and argument, a three-day trial accompanied by additional briefing and proposed findings of fact and conclusions of law, and two levels of appeals.  In addition, the EFIH First Lien Trustee has had to play an active role reviewing, objecting to, and (when possible) negotiating resolutions of the numerous different paths and plans the Debtors have proposed, many of which would have compromised the rights of the EFIH First Lien Trustee and holders of the EFIH First Lien Notes with respect to their make-whole claim and otherwise.  And, of course, after the Third Circuit issued its decision, the EFIH First Lien Trustee incurred substantial additional fees negotiating and documenting the agreement in principle to settle the First Lien Makewhole Action and all other claims under the EFIH First Lien Notes—only to have the Debtors pull the rug out in favor of more litigation.

29.    The EFIH First Lien Trustee timely filed proofs of claim in these chapter 11 cases for these make-whole amounts, as well as for (among other sums) the fees and expenses it has incurred (and will continue to incur) and additional interest.  In particular, as to the fees and expenses, it asserted claims for (among other amounts):

- "all amounts due and to become due to the Trustee, whether arising prior to or after the Petition Date, for its compensation for all services rendered by the Trustee under the Indenture, for all reasonable compensation, expenses, disbursements and advances incurred or made by the Trustee in accordance with any provisions of the Indenture (including, without limitation, the reasonable compensation and the expenses and disbursements of the Trustee's agents and counsel), and for all other amounts, including, without limitation, all indemnification rights, due or to become due to the Trustee under Section 7.07 of the Indenture" (POC Nos. 8024, 8026-8030, 8032, 8033); and

- "all amounts due and to become due to the Collateral Trustee, whether arising prior to or after the Petition Date, for its compensation for all services rendered by the Collateral Trustee under the Collateral Trust Agreement, for all reasonable compensation, expenses, disbursements and advances incurred or made by the Collateral Trustee in accordance with any provisions of the Collateral Trust Agreement (including, without limitation, the reasonable compensation and the expenses and disbursements of the Collateral Trustee's agents and counsel), and for all other amounts, including, without limitation, all indemnification rights, due or to become due to the Collateral Trustee under Sections 7.10 and 7.11 of the Collateral Trust Agreement" (POC Nos. 8025, 8031).

30.    The EFIH First Lien Trustee has long submitted documentation of its fees and expenses (and the fees and expenses of its professionals) incurred from May 2014 through October 2016 to the Debtors (and other parties in interest).  Specifically, the EFIH First Lien Trustee submitted invoices to the Debtors' counsel more than a year ago—in December 2015—and has regularly submitted invoices for fees and expenses incurred since then, and will continue to do so.  As noted, the EFIH First Lien Trustee

and its professionals are currently owed approximately $34 million in accrued but unpaid fees and expenses through November 2016.[9]

31.    While the Debtors have never paid any of these amounts, neither the Debtors nor any other party in interest has filed any objection to the EFIH First Lien Trustee's claims for fees and expenses, or raised any questions about the documented fees and expenses.  To the contrary, the Debtors have acknowledged that the fees and expense were reasonable and appropriate and were prepared to allow them *in full* only a few weeks ago.

32.    In particular, on December 19, 2016, the Debtors filed a Form 8-K disclosing the (since abandoned) settlement in principle that the Debtors, with the approval of their boards of directors and at the recommendation of their professionals, had reached with holders of the EFIH First Lien Notes and holders of the EFIH Second Lien Notes.  That 8-K disclosed that "[t]he EFIH First Lien Settlement provides for payment in full … of fees and expenses. … In the context of the EFIH First Lien Settlement, the Restricted EFIH First Lien Creditors estimated the amount of reimbursable fees and expenses, assuming an April 30, 2017 effective date of the Amended Plan, to be approximately $38 million, though the actual amount could be more or less, and additional fees and would continue to accrue."  The Debtors have since abandoned that settlement, but they have expressly acknowledged that it was well within

---

[9] The EFIH First Lien Trustee's request herein for payment of this approximate amount of fees and expenses is without prejudice to any and all other claims of the EFIH First Lien Trustee and the EFIH First Lien Noteholders including, without limitation, all claims for additional fees and expenses that may have been or be incurred, all make-whole amounts, all interest, and all other indemnification claims.

the range of reasonableness.  *See* Debtors' Omnibus Reply To Objections To Disclosure
Statement Motion (D.I. 10516) ¶15.

## IV.    The Proposed Plan

33.    The Debtors are currently seeking confirmation of the Plan—their Seventh
Amended Joint Plan of Reorganization to be exact.

34.    The Plan provides for the liens currently securing the EFIH First Lien
Notes and Second Lien Notes to be released on the effective date.

35.    The Plan does not provide for the make-whole claims under the EFIH First
Lien Notes and Second Lien Notes to be paid on the effective date, however.  Rather, the
Plan provides for the amount of those make-whole claims, plus certain interest thereon
through at least three years after the effective date, to be placed into a cash reserve (the
"EFIH Claims Reserve"), and for the EFIH First Lien Trustee and EFIH Second Lien
Trustee to receive liens on the EFIH Claims Reserve.  And the Plan provides for the
continued litigation of the First Lien Makewhole Action by the Debtors under the
oversight of a "Makewhole Litigation Oversight Committee" appointed by the leading
holders of the EFIH Unsecured Notes (and, as explained below, for the payment of those
professionals on a current basis).

36.    Even though the Debtors have not objected to the EFIH First Lien
Trustee's claims for fees and expenses such that they are "deemed allowed" under
Section 502 of the Bankruptcy Code, the Plan also does not mandate payment of those
claims on the effective date either.  Rather, it provides that such claims will not be paid
until a "fee review process" set forth in the Plan Supplement (D.I. 10101, Ex. F)—or as
may be amended in the "Amended Plan Supplement," which the Debtors have yet to file,
has occurred.  *See* Plan Art. VI.A.

37.     The Plan Supplement that the Debtors filed with their since-abandoned Fifth Amended Plan proposed the following fee review process for fees and expenses incurred prior to the effective date: (1) invoices for pre-effective date fees and expenses to be submitted within 45 calendar days after the effective date; (2) 80% of the fees and 100% of expenses to be paid within 10 business days after receipt of such invoices, subject to disgorgement; (3) objections to such invoices to be asserted within 90 calendar days after receipt of such invoices; and (4) any request for a court hearing to resolve any fee disputes to be filed only after expiration of a minimum 30-day negotiation period following receipt of any such objections.  Whether the Debtors intend to maintain this process under the new Plan is unclear; they have not yet filed the Amended Plan Supplement.

38.     But EFIH does not propose to pay *any* of the fees and expenses of the EFIH First Lien Trustee on the date that the Plan goes effective.  The Disclosure Statement prepared by the Debtors and approved by this Court for the Plan specifies that the only amounts owed by EFIH in respect of the EFIH First Lien Notes that EFIH anticipates paying on the effective date are a mere $2 million in unpaid interest unrelated to the make-whole claims, and that EFIH anticipates putting in the EFIH Claims Reserve an amount equal to all fees and expenses the EFIH First Lien Trustee has incurred.  D.I. 10564 ("Disclosure Statement") at 17-18.

39.     While the Debtors do propose at least to reserve for all of the EFIH First Lien Trustee's fees and expenses incurred pre-effective date, the EFIH Claims Reserve could prove inadequate in material ways.  For example, unless this Court orders otherwise, the Plan provides for the EFIH Claims Reserve to be funded in an amount

sufficient to pay interest only for three years on the make-whole claims of the EFIH First Lien Notes and the EFIH Second Lien Notes—even though there is no assurance that the seemingly endless challenges to those claims brought by the Debtors and the holders of the EFIH Unsecured Notes will terminate within three years.  *See* Plan Art. I.A.161 (definition of EFIH Claims Reserve); Disclosure Statement at 17 (explaining that EFIH Claims Reserve will include "the EFH/EFIH Debtors' good-faith estimate, determined in consultation with [holders of the EFIH Unsecured Notes] (or in an amount ordered by the Bankruptcy Court) of all contractual interest . . . accruing under or on account of the EFIH First Lien Makewhole Claims and the EFIH Second Lien Makewhole Claims for a period of three years from the EFH Effective Date (or longer if ordered by the Bankruptcy Court)").

40.    Moreover, the Debtors propose to use some $3 billion from the sale of the collateral on which the EFIH First Lien Notes have a senior lien to make payments to junior creditors.  Specifically, the Debtors propose to pay approximately $2.2 billion to holders of the EFIH Second Lien Notes (approximately $1.711 billion to redeem the remaining principal balance of those notes plus $485 million in post-petition interest), *see* Disclosure Statement at 17, and to pay as much as another $600 to $800 million or more to holders of the EFIH Unsecured Notes—entirely unsecured debt—as an initial distribution on their claims (plus, as discussed below, their fees and expenses), *see* Disclosure Statement at 20, 33.

41.    Thus, the Debtors propose to reduce, by several billions of dollars, the value of the collateral securing the EFIH First Lien Notes.  And the Plan will release the liens on the assets of EFIH, including EFIH's interest in Oncor, that currently secure

EFIH First Lien Notes, and replace those liens with a lien only on the EFIH Claims Reserve—a reserve that, as discussed above, could well prove inadequate.  Indeed, while the collateral securing the EFIH First Lien Notes will be drastically reduced if the Plan is confirmed and goes effective, the amount of the claims of the EFIH First Lien Notes increases every day as interest continues to accrue on the make-whole and other claims and as the Debtors continue to litigate, rather than settle, those claims, requiring the EFIH First Lien Trustee to incur more fees and expenses.

42.    While the Plan provides for uncertainty and delay in the payment of the EFIH First Lien Trustee's fees and expenses, it provides for payment in full of the EFIH Unsecured Trustee's fees and expenses—claims junior to those of the EFIH First Lien Trustee—*on the effective date and without any review process*. The plan support agreement entered into between certain holders of the EFIH Unsecured Notes and the Debtors requires the Plan to:

> provide that, on the EFH Effective Date, the EFH/EFIH Debtors shall (1) pay an amount of no less than the accrued and unpaid fees incurred as of the EFH Effective Date by the PIK Notes Trustee (including all reasonable professional fees and expenses) (the "EFIH Base Payment Amount") and (2) not dispute that such EFIH Base Payment Amount (including any fees owed to Centerview Partners LLC ("Centerview"), financial advisor to the PIK Notes Trustee, pursuant to the terms of Centerview's engagement agreement with the PIK Notes Trustee, including any fees owed upon consummation of a "Transaction" (as defined in that certain original engagement letter, dated March 10, 2015)), are reasonable and allowed claims under the EFIH Unsecured Notes Indentures.

D.I. 10530, Ex. A at 17.   The Plan accordingly provides that:

> On the EFH Effective Date, the EFH Plan Administrator Board shall (a) pay no less than the EFIH Base Payment Amount [defined as "the represented accrued and unpaid fees and expenses incurred as of the EFH Effective Date by the EFIH Unsecured Notes Trustee (including all reasonable professional fees and expenses)"] and (b) not dispute that such EFIH Base Payment Amount (including any fees owed to Centerview, financial advisor to the EFIH Unsecured Notes Trustee, pursuant to the

terms of Centerview's engagement agreement with the EFIH Unsecured Notes Trustee, including any fees owed upon consummation of a "Transaction" (as defined in that certain original engagement letter, dated March 10, 2015)), are reasonable and allowed claims under the EFIH Unsecured Note Indentures.  The payment of such amounts to the EFIH Unsecured Notes Trustee in accordance with the terms of the EFIH Unsecured Creditor Plan Support Agreement shall not be subject to disgorgement, setoff, recoupment, reduction or reallocation of any kind and is without prejudice to the EFIH Unsecured Notes Trustee's subsequent exercise of any charging lien.

Plan Art. IV.R.1.

43.     Adding insult to injury, the Plan also contemplates that the proceeds realized from the sale of the EFIH First Lien Trustee's collateral will be used to fund a segregated reserve (the "Post-Effective Date Administrative Account") for the Debtors or the newly-created "EFIH Plan Administration Board" to continue to litigate the First Lien Makewhole Action.  *See* Disclosure Statement at 15; Plan Art. I.A.339, IV.B.9, VII.K.3.  Indeed, while the EFIH First Lien Trustee will have no lien on the Post-Effective Date Administrative Account, *see* Plan, Art. I.A.339, the Plan gives the Debtors' professionals greater protection: "If the Post-Effective Date Administrative Account is insufficient to satisfy [the fees and expenses incurred by the EFIH Debtors and/or the EFH Plan Administrator Board in litigating the make-whole claims under the EFIH First Lien Notes and EFIH Second Lien Notes], the EFIH Debtors, Reorganized EFIH Debtors, and the EFH Plan Administrator Board shall be authorized to deduct such fees and expenses from the EFIH Claims Reserve," *id.*, Art. VII.K.3.

## BASIS FOR RELIEF

### I.     The EFIH First Lien Notes Are Secured And Entitled To Adequate Protection

44.     Under the Bankruptcy Code, a debtor must provide adequate protection for a secured creditor's interest in property against any diminution in value of such

interest resulting from the debtor's use of the property during its chapter 11 case. See 11 U.S.C. § 363(e).  What constitutes sufficient adequate protection is decided on a case-by-case basis.  *See In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. 1992); *see also In re Martin*, 761 F.2d 472,474 (8th Cir. 1985); *In re Masello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *In re Sw. Assocs.*, 140 B.R. 360,366 (Bankr. S.D.N.Y. 1992).

45.     The EFIH First Lien Notes are experiencing a decline in their equity cushion.  As noted, the allowed amount of claims under the EFIH First Lien Notes has increased since the beginning of these chapter 11 cases and continues to increase every day as additional interest accrues and additional fees and expenses are incurred.  And the Plan threatens a massive reduction—many billions of dollars—in the value of the collateral securing the EFIH First Lien Notes.

46.     Accordingly, the EFIH First Lien Notes are entitled to adequate protection.  *See In re Satcon Tech. Corp.*, 2012 WL 6091160, *6 (Bankr. D. Del. 2012) ("adequate protection protects a pre-existing lienholder against a decrease in the value of its collateral" (citing *In re Planned Systems, Inc.*, 78 B.R. 852, 861-62 (Bankr. S.D. Ohio 1987))); *In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 305-06 (Bankr. D. Del. 2011) (low equity cushion which was being eroded daily was cause for adequate protection payments); *Matter of Continental Airlines*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) ("In other words, a party can be granted relief from the stay if his interest is not adequately protected; if that request for relief from the stay is not granted, and the value of the collateral is declining, adequate protection may be required." (citing *United Savings v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740

(1988))); *In re Dispirito*, 371 B.R. 695, 699 (Bankr. D.N.J. 2007) ("[S]everal courts have concluded that secured creditors are entitled to receive adequate protection payments pre-confirmation to protect them against the decline in value of their collateral" (quoting *In re Cook*, 205 B.R. 437, 440-43 (Bankr. N.D. Fla. 1997))).

47.     Moreover, while the EFIH First Lien Trustee has been paying the fees and expenses of its professionals, it has done so out of a $40.5 million hold-back in the distribution to the holders of the EFIH First Lien Notes following the redemption of those notes in June 2014.  That hold-back will soon be fully drawn if litigation continues as the Debtors and holders of the EFIH Unsecured Notes have demanded under the Plan.  Thus, unless the existing fees and expenses of the EFIH First Lien Trustee are paid now, not only will the EFIH First Lien Trustee and its professionals apparently be denied payment on a current basis for additional fees and expenses they are forced to incur in the ongoing First Lien Makewhole Action (all while professionals for the Debtors and holders of the EFIH Unsecured Notes will be paid on current basis)—an issue to be addressed in connection with Plan confirmation—but the holders of the EFIH First Lien Notes will continue to be denied repayment in full of their principal.

48.     The EFIH First Lien Trustee is also entitled to adequate protection for monitoring the collateral.  *See In re Woodcrest Club, Inc.*, 2010 WL 5053971, at *7 (Bankr. E.D.N.Y. 2010) (included under adequate protection costs were fees for monitoring collateral).  The EFIH First Lien Trustee has been active in protecting the interests of the EFIH First Lien Notes since the inception of these chapter 11 cases.  The EFIH First Lien Trustee must continue vigorously protecting these interests, particularly

in light of the Plan currently proposed by the Debtors, which is premised on the continued litigation of the make-whole and other claims under the EFIH First Lien Notes.

49.    The term "adequate protection" is intended to be a flexible concept. *See* 3 Collier on Bankruptcy ¶ 363.05 (16th ed. rev. 2011); *see also In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985) ("In order to encourage reorganization, the courts must be flexible in applying the adequate protection standard."). It is well established that "the circumstances of the case will dictate the necessary relief to be given." 3 Collier on Bankruptcy ¶ 363.05 (16th ed. rev. 2011). Adequate protection can come in various forms, including payment of adequate protection fees and expenses, payment of interest, granting of replacement liens, and/or administrative claims. *See* 11 U.S.C. § 361; *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003).

50.    Indeed, it is routine for a debtor to pay a secured creditor's professional fees and expenses as adequate protection. *See e.g., In re American Apparel, LLC*, Case No. 16-12551 (Bankr. D. Del. Nov. 11, 2016) [Docket No. 114] ¶ 11(c); *In re Cal Dive Int., Inc.*, Case No. 15-10458 (Bankr. D. Del. 2015) [Docket No. 282] ¶ 17(c)-(d); *In re Hostess Brands, Inc.*, Case No. 12-22052 (Bankr. S.D.N.Y. Feb. 3, 2012) [Docket No. 254] ¶ 15(c); *In re Friendly Ice Cream Corp.*, Case No. 11-13167 (Bankr. D. Del. Nov. 2, 2011) [Docket No. 282] ¶ 13-14; *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (Bankr. D. Del. Feb. 23, 2011) [Docket No. 315] ¶ 15(c); *In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (Bankr. D. Del. Dec. 29, 2010) [Docket No. 228] ¶ 13(c).

51.    The EFIH First Lien Trustee therefore requests prompt payment of its accrued but unpaid fees and expenses as adequate protection. Consistent with the orders

described above, these fees and expenses should also be accorded superpriority administrative claim status pursuant to Section 507(b) of the Bankruptcy Code.

## II.    The EFIH First Lien Trustee Is Further Entitled To Payment Of Its Fees Under Section 105(a) And 506(b) Of The Bankruptcy Code

52.    The Bankruptcy Code provides for payment of reasonable post-petition fees and expenses of oversecured creditors.  *See* 11 U.S.C. § 506(b) ("To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."); *see also In re Tribune Media Co.,* 2015 WL 7307305, at *3 (Bankr. D. Del. 2015) (recognizing that section "506(b) of the Bankruptcy Code expressly provides for the allowance of postpetition attorneys' fees for oversecured creditors").

53.    As noted above, Section 7.07 of the Indenture provides for the prompt payment of the reasonable fees and expenses of the EFIH First Lien Trustee and its professionals.

54.    There is no dispute that the EFIH First Lien Trustee is entitled to payment of its (and its professionals') reasonable fees and expenses.  As discussed above, the Debtors had agreed to pay all of these fees and expenses on the effective date of a plan embodying settlements with the EFIH First Lien Trustee and the EFIH Second Lien Trustee.  While the Debtors later abandoned that settlement, they have continued to acknowledge that it was reasonable.  In fact, even the current Plan provides that the reasonable fees and expenses of the EFIH First Lien Trustee and its professionals (and

interest thereon) are part of the Allowed EFIH First Lien Note Claims.  *See* Plan Art. III.B.19.  The only question is when these fees and expenses should be paid.

55.     It is equitable for the Debtors to start paying the fees and expenses of the EFIH First Lien Trustee and its professionals now.

56.     The EFIH First Lien Trustee has been an active and constructive participant throughout these bankruptcy proceedings.  Most recently, following the decision of the Third Circuit in the First Lien Makewhole Action, the EFIH First Lien Trustee (and holders of the EFIH First Lien Notes) engaged in negotiations with the Debtors to reach of resolution of the make-whole claims and a path for the EFIH Debtors to exit bankruptcy.  As a result of those efforts, the parties reached an agreement in principle to settle all outstanding claims under the EFIH First Lien Notes and pursue a plan of reorganization supported by the holders of the EFIH First Lien Notes.

57.     Despite the considerable time and effort that went into negotiating and documenting that deal, the Debtors abandoned it at the last minute, and decided to instead pursue a deal with holders of the EFIH Unsecured Notes premised on continued litigation against the EFIH First Lien Trustee and holders of the EFIH First Lien Notes in the EFIH First Lien Makewhole Action—and continued incurrence of fees by all parties.

58.     During the bankruptcy cases, the EFIH First Lien Trustee paid its professionals out of payments of *principal* held back from holders of the EFIH First Lien Notes.  As noted, that hold-back will soon be fully drawn.

59.     Meanwhile, the Debtors have paid the fees and expenses of creditors *junior* to holders of the EFIH First Lien Notes.  And the Debtors now propose to make additional payments to junior creditors and to create a reserve to fund their continued

litigation of the First Lien Makewhole Action—out of proceeds of the collateral securing the EFIH First Lien Notes—*before* paying the fees and expenses of the EFIH First Lien Trustee and its professionals.

60.     As noted above, the Debtors acknowledge that they will have to pay the fees and expenses of the EFIH First Lien Trustee and its professionals at some point.  The Debtors should no longer be able to use the fees and expenses of a secured indenture trustee to help finance the Debtors' chapter 11 cases, including payments to junior, unsecured creditors and seemingly never ending litigation challenging the make-whole claims of the EFIH First Lien Notes—claims that the Third Circuit has held are valid.

## NOTICE

61.     The EFIH First Lien Trustee shall provide notice of this Motion on the date hereof via first class mail to: (a) the Debtors; (b) the U.S. Trustee; (c) counsel to the EFH Creditors' Committee; and (d) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The EFIH First Lien Trustee shall also provide notice of this Motion on the date hereof via electronic mail to all Participating Parties (as defined in the Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization as it Relates to the EFH/EFIH Debtors dated August 24, 2016 (D.I. 9381) and the Supplemental Order Approving the Revised Schedule for the EFH/EFIH Confirmation Proceedings (D.I. 10327)) at the following email address set up by the Debtors to allow for service on all Participating Parties: EFH_DS_Discovery_Service_List@kirkland.com.

## NO PRIOR REQUEST

62.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the EFIH First Lien Trustee respectfully requests that the Court enter the Order, substantially in the form attached hereto as **Exhibit A,** granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  January 23, 2017

COLE SCHOTZ P.C.

/s/ *J. Kate Stickles*

| | |
|---|---|
| Norman L. Pernick (Bar No. 2290) | Warren A. Usatine |
| J. Kate Stickles (Bar No. 2917) | Court Plaza North |
| 500 Delaware Avenue, Suite 1410 | 25 Main Street |
| Wilmington, DE  19801 | Hackensack, NJ 07602 |
| Telephone: 302-652-3131 | Telephone: 201-489-3000 |
| Facsimile:  302-652-3117 | Facsimile:  201-489-1536 |
| npernick@coleschotz.com | wusatine@coleschotz.com |
| kstickles@coleschotz.com | |

WILMER CUTLER PICKERING HALE AND DORR LLP

| | |
|---|---|
| Philip D. Anker | Joel Millar |
| 7 World Trade Center | David Gringer |
| 250 Greenwich Street | Isley Gostin |
| New York, NY 10007 | 1875 Pennsylvania Avenue, NW |
| Telephone: 212-230-8800 | Washington, DC 2006 |
| Facsimile:  212-230-8888 | Telephone:  202-663-6000 |
| Philip.Anker@wilmerhale.com | Facsimile: 202-663-6363 |
| | Joel.Millar@wilmerhale.com |
| | David.Gringer@wilmerhale.com |
| | Isley.Gostin@wilmerhale.com |

ROPES & GRAY LLP

| | |
|---|---|
| Keith H. Wofford | D. Ross Martin |
| Mark Somerstein | Andrew Devore |
| 1211 Avenue of the Americas | 800 Boylston Street, Prudential Tower |
| New York, NY 10036-8704 | Boston, MA  02199-3600 |
| Telephone: 212-596-9000 | Telephone: 617-951-7000 |
| Facsimile:  212-596-9090 | Facsimile: 617-951-7050 |
| Keith.Wofford@ropesgray.com | Ross.Martin@ropesgray.com |
| Mark.Somerstein@ropesgray.com | Andrew.Devore@ropesgray.com |

DRINKER BIDDLE & REATH LLP
James H. Millar
1177 Avenue of the Americas
41st Floor
New York, NY 10036-2714
Telephone:  212-248-3264
Facsimile:   212-248-3141
James.Millar@dbr.com

*Counsel for Delaware Trust Company*