**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| ENERGY FUTURE HOLDINGS | : | Case No. 14-10979 (CSS) |
| CORP., *et al.*, | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | **Hearing Date: February 14, 2017 at 10:00 a.m.** |
| | : | **Objections Due: February 3, 2017 by 4:00 p.m.** |

**THE UNITED STATES TRUSTEE'S OBJECTION, RESPONSE AND RESERVATION OF RIGHTS WITH RESPECT TO THE SEVENTH AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AS IT APPLIES TO THE EFH AND THE EFIH DEBTORS (D.I. 10535, 10551)**

Andrew R. Vara, the Acting United States Trustee for Region 3 (the "U.S. Trustee"), hereby files this Objection, Response and Reservation of Rights ("Objection") to the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and the EFIH Debtors (the "E-Side Plan") (D.I. 10535, 10551).[1]

## PRELIMINARY STATEMENT

The E-Side Plan cannot be confirmed to the extent that it seeks approval of the payment of the reasonable fees and expenses of both the EFH and EFIH Indenture Trustees[2] without those

---

[1]  Unless otherwise defined herein, capitalized terms shall have the same meaning and context as those terms included in the E-Side Plan or any other referenced, relevant or cited document or pleading.

[2]  American Stock Transfer & Trust Company is the indenture trustee (the "EFH Unsecured Notes Trustee") for the $1.864B in unsecured EFH Legacy Notes, $60M in EFH LBO Notes and $5.0M in the EFH Unexchanged Notes; and a guaranty related to $63.467M of unsecured EFIH notes. American Stock Transfer & Trust Company  is also a member of the Official Committee of Unsecured Creditors for the EFH and EFIH Debtors (D.I. 3313).  UMB Bank, NA is the indenture trustee (the "EFIH Unsecured Notes Trustee") for the $1.566B of unsecured EFIH 11.25%/12.25% Senior Toggle Notes (the "PIK Notes") and $2.0M of unsecured EFIH Unexchanged Notes. The EFH Legacy Note Claims are provided for in Class A4 of the Plan, The EFH Unexchanged  Note Claims are provided for in Class A5 of the Plan and the EFH LBO Note Primary Claims are provided for in Class A6 of the Plan. The 11.25%/12.25% Senior Toggle Notes and the EFIH Unexchanged Notes Claims are provided for in Class B6 of the Plan.

payments being authorized by the Bankruptcy Code and which payment would otherwise be

inconsistent with prior rulings by this Court in these Chapter 11 cases.

Absent additional evidence, amendments or revisions to the E-Side Plan and the proposed

E-Side Confirmation Order consistent with these concerns, the Court should deny confirmation

of the E-Side Plan to the extent of this Objection.[3]

## JURISDICTION

1.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District

Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. §

157(b)(2), this Court has jurisdiction to hear and determine this Objection.

2.      Pursuant to 28 U.S.C. § 586(a) (3), the "U.S. Trustee is charged with

administrative oversight of the bankruptcy system in this District.  Such oversight is part of the

"U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and

interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re*

*Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the "U.S. Trustee

has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary

interest*).*

3.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues

raised in this Objection.

## FACTUAL BACKGROUND

4.      On April 29, 2014, the Debtors commenced these Chapter 11 cases.

---

[3]      To the extent necessary or otherwise required, this Objection shall also serve as an objection to the EFIH
Unsecured Creditor Plan Support Agreement (D.I. 10530) as defined *infra*, and for the reasons set forth herein.

5.      On April 14, 2015, the Debtors filed their initial plan of reorganization and

disclosure statement (collectively, the "Initial Documents") (D.I. 4142 & 4143). On December 1,

2015, and subsequent to several amendments to the Initial Documents, the Debtors filed the

Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*., Pursuant to

Chapter 11 of the Bankruptcy Code (the "Plan") (D.I. 7187)[4].

6.      On November 3, 2015, the Court commenced the hearing on the confirmation of

the Plan in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129

of the Bankruptcy Code and after many hours and several days of trial, on December 3, 2015,

this Court announced its findings and made certain rulings on the record. (D.I. 7255).

7.      On December 9, 2015[5], the Court entered the Amended Order Confirming the

Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*, Pursuant to

Chapter 11 of the Bankruptcy Code (the "First Confirmed  Plan") (D.I. 7235, 7285).

8.      On or about May 1, 2016, upon information and belief, written notice was

delivered to the Debtors and other relevant parties notifying the Debtors and such parties of the

occurrence of a Plan Support Termination Event (as defined in the Plan Support Agreement[6]),

the delivery of which notice caused the First Confirmed Plan to not become effective.

9.      On May 1, 2016, the Debtor filed a Joint Plan of Reorganization and Disclosure

Statement of Energy Future Holdings Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy

Code (D.I. 8355, 8356), and after several amendments, the Debtors filed a Second Amended

---

[4]     On December 6, 2015, the Debtors filed a Modified Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 7235).

[5]     On December 9, 2015, this Court also entered the Order Granting the Motion of Energy Future Holdings Corp., et al to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform under the Settlement Agreement. (D.I. 7243).

[6]     The Order Authoring the Debtors to Enter Into and Perform Under the Plan Support Agreement was entered on September 18, 2015 (D.I. 6097).

Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.,* Pursuant to Chapter 11 of

the Bankruptcy Code (D.I. 8745).

10.      On August 5, 2016 the Debtors filed a Third Amended Joint Plan of

Reorganization of Energy Future Holdings Corp., *et al.,* Pursuant to Chapter 11 of the

Bankruptcy Code (D.I. 9199).

11.      On August 23, 2016 the Debtors filed another Third Amended Joint Plan of

Reorganization of Energy Future Holdings Corp., *et al.,* Pursuant to Chapter 11 of the

Bankruptcy Code (D.I. 9374).

12.      The Third Amended Joint Plan of Reorganization as it applies to the TCEH

Debtors and the EFH Shared Services Debtors (the "T-Side Plan")[7] was confirmed on August

29, 2016 (D.I. 9421).

13.      On May 24, 2016, this Court entered the Order Scheduling Certain Hearing Dates

and Deadlines and Establishing Certain Dates and Deadlines and Establishing Certain Protocols

in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval

of Debtors' Disclosure Statement (D.I. 8514) (the "Scheduling Order"). The Scheduling Order

was supplemented on July 8, 2016 with respect to the T-Side Plan (D.I. 8882). On August 24,

2016, the Scheduling Order, as modified with respect to the Third Amended Plan as it applies to

the EFH and EFIH Debtors, was entered. (D.I. 9381)

14.      On September 21, 2016, the Debtors filed the Plan and the Disclosure Statement

for the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*.,

---

[7]      The Disclosure Statement related to the New Plan is the Third Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors filed on June 16, 2016 (D.I. 8747, 8753) and approved by Court order on June 17, 2016 (D.I. 8761).

Pursuant to Chapter 11 of the Bankruptcy Code as it applies to the EFH Debtors and EFIH

Debtors (D.I. 9616)[8].

15.     On December 1, 2016 the Debtors filed the Plan and the Disclosure Statement for

the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*.,

Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH

Debtors (D.I. 10290, 10293).

16.     On December 28, 2016 the Debtors filed the Plan and the Disclosure Statement

for the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*.,

Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH

Debtors (D.I. 10446, 10453).

17.     On January 3, 2017 the Debtors filed the E-Side Plan and the Disclosure

Statement for the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings

Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors

and EFIH Debtors (D.I. 10518, 10520).

18.     On January 3, 2017, the Debtors filed a Notice of the Filing of that Certain Plan

Support Agreement, Dated January 2, 2017 by and Between the EFH/EFIH Debtors, the PIK

Notes Trustee[9], and Certain Creditor Parties Thereto (the "EFIH Unsecured Creditor Plan

Support Agreement") (D.I. 10530) (*see also*, fn. 3 *supra*.)

19.     On January 4, 2017, the Debtors filed the E-Side Plan and the Disclosure

Statement for the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings

---

[8]     On September 21, 2016, the Debtors filed the Notice of Hearing to Consider Confirmation of the Chapter 11 Plan as it Applies to the EFH/EFIH Debtors and Related Voting and Objection Deadlines (D.I. 9620).

[9]     UMB Bank, NA, the EFIH Unsecured Notes Trustee is also the PIK Notes Trustee.

Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors

and EFIH Debtors (D.I. 10533, 10535)[10].

20.     Akin to previously-filed plans, the E-Side Plan provides for the payment of

certain fees as follows:

> On the EFH Effective Date, the EFH Plan Administrator Board shall (a)
> pay no less than the EFIH Base Payment Amount and (b) not dispute that
> such EFIH Base Payment Amount (including any fees owed to
> Centerview, financial advisor to the EFIH Unsecured Notes Trustee,
> pursuant to the terms of Centerview's engagement agreement with the
> EFIH Unsecured Notes Trustee, including any fees owed upon
> consummation of a "Transaction" (as defined in that certain original
> engagement letter, dated March 10, 2015)), are reasonable and allowed
> claims under the EFIH Unsecured Note Indentures. The payment of such
> amounts to the EFIH Unsecured Notes Trustee in accordance with the
> terms of the EFIH Unsecured Creditor Plan Support Agreement shall not
> be subject to disgorgement, setoff, recoupment, reduction or reallocation
> of any kind and is without prejudice to the EFIH Unsecured Notes
> Trustee's subsequent exercise of any charging lien. The payment of the
> EFIH Base Payment Amount shall be considered a "charging lien
> advance" pursuant to Sections 6.12, 6.13 and 7.07 of the EFIH Unsecured
> Note Indentures.
>
> The EFH Plan Administrator Board shall pay from the EFH/EFIH
> Distribution Account the reasonable and documented fees and expenses
> allowed under the EFH Notes Indentures; provided, however, that such
> fees and expenses shall be subject to approval by the Fee Committee, with
> respect to the reasonableness of such documented fees and expenses in
> their reasonable discretion, and the Bankruptcy Court; provided further,
> however, that such fees and expenses shall be paid on the EFH Effective
> Date or as soon as reasonably practicable thereafter following Fee
> Committee and Bankruptcy Court approval thereof; provided, further, that,
> for the avoidance of doubt, such fees and expenses shall not be included in
> the amount of any Allowed Claims under the EFIH Unsecured Notes
> Indentures or the EFH Notes Indentures. In addition, the EFIH Unsecured

---

[10]     On January 4, 2017, the Court approved the Disclosure Statement related to the E-Side Plan and entered the Supplemental Order (A) Binding Holders of Claims and Interests to Their Prior Ballots, Pursuant To Section 1127 of The Bankruptcy Code and Bankruptcy Rule 3019, (B) Approving the Revised EFH/EFIH Disclosure Statement, (C) Approving the Procedures and Timeline for the Limited Resolicitation of Votes on the Plan, and (D) Approving the Manner and Forms of Notice Related Thereto was entered on January 4, 2017 (D.I. 10560). In addition, the Debtors filed a solicitation version of the E-Side Plan on January 4, 2017 (D.I. 10551) along with an Amended Disclosure Statement (D.I. 10564).

Notes Trustee shall have the right to seek payment of all or a portion of the EFIH Unsecured Notes Trustee Fees and Expenses from the EFH/EFIH Distribution Account if there are sufficient amounts in the EFH/EFIH Distribution Account to provide a 100% recovery to the Holders of Allowed EFIH Unsecured Note Claims, which fees and expenses application shall be subject to approval by the Fee Committee, with respect to the reasonableness of such documented fees and expenses in their reasonable discretion, and the Bankruptcy Court.

E-Side Plan, Article VI. Section R.1.

21.    In essence, Article VI. Section R.1 of the E-Side Plan provides for the

- payment of the accrued and unpaid fees and expenses of the EFIH Unsecured Notes Trustee, including all reasonable professional fees and expenses, in accordance with the terms of the EFIH Unsecured Creditor Plan Support Agreement[11];

- payment of the reasonable and documented fees and expenses allowed under the EFH Notes Indentures which includes the fees and expenses of the EFH Notes Trustee.

- In addition, the EFIH Unsecured Notes Trustee has the right to seek payment of all or a portion of the EFIH Unsecured Notes Trustee Fees and Expenses from the EFH/EFIH Distribution Account if there are sufficient amounts in the EFH/EFIH Distribution Account to provide a 100% recovery to the Holders of Allowed EFIH Unsecured Note Claims.

E-Side Plan, Article IV. Section R.1.[12]

22.    The problem with Article IV. Section R.1. of the E-Side Plan is that it provides

for the payment of the afore-mentioned fees and expenses without enunciating or specifying the

---

[11]    Section 7(k)(1)(i)-(iii) of the EFIH Plan Support Agreement provides for the payment of the accrued and unpaid fees of the PIK Notes Trustee, including all reasonable professional fees and expenses, without prejudice to the rights of the PIK Indenture Trustee to further exercise its charging lien pursuant to the EFIH Unsecured Notes Indenture.

[12]    On January 27, 2017, the Debtors filed an Amended Plan Supplement as it Relates to the EFH Debtors and EFIH Debtors for the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.,* Pursuant to Chapter 11 of the Bankruptcy Code (D.I 10729). Exhibit D to that Amended Plan Supplement provides for more detailed treatment of non-retained professionals. To the extent that the subject fees and expenses will be properly paid pursuant to the respective charging liens in accordance with the applicable indenture to recover payment of fees and expenses, the U.S. Trustee has no objection, however, the U.S. Trustee otherwise objects as set forth herein.

legal basis or justification for such payments under the Bankruptcy Code. Article IV. Section

R.1. also runs contrary to prior rulings by this Court in these cases.[13]

**LAW AND ANALYSIS**

**A.    General Standards**

23.    In order to obtain confirmation, a plan proponent has the burden to establish

compliance with all the requirements of section 1129(a) of the Bankruptcy Code (the "Code").

*See* 11 U.S.C. § 1129(a). The plan proponent bears the burden of proof with respect to each and

every element of section 1129(a).  *See, e.g. In re Genesis Health Ventures, Inc.*, 266 B.R. 591

(Bankr. D. Del. 2001); *In re Wash Mut.,* 442 B.R. 314, 328 (Bankr. D. Del. 2011).

**B.    The E-Side Plan Provides for the Payment of Non-Estate Retained
Professionals Without Adequate Disclosure or Legal Justification**

24.    Article IV. Section R.1. of the E-Side Plan provides for the payment of the fees

and expenses of the EFIH and EFH Notes Indenture Trustees.  But, the E-Side Plan does not

provide sufficient legal justification or information concerning the statutory requirements

imposed by the Bankruptcy Code that authorizes such payments.

25.    In particular, the EFIH Notes Indenture Trustee and the EFH Notes Indenture

Trustee professional fee payments relate to parties and professionals whose compensation is

specifically statutorily governed by 11 U.S.C. §§ 503(b)(3)(D), 503(b)(4) and 503(b)(5) of the

Code. Although such professionals might be eligible to be compensated from the bankruptcy

estate, section 503 imposes detailed requirements that must be met before approval and payment,

---

[13]    As may be alluded to in other documents, it is understood that the EFH and EFIH Notes Indenture Trust documents provide for the payment of such fees and expenses as part of the Indenture Trustee's charging liens. To the extent that such fees and expenses are paid pursuant to and in accordance with the charging liens asserted upon the respective creditors E-Side Plan distributions, the U.S. Trustee has no objection where a creditor's plan distribution, subject to a proper and valid charging lien, is so sur-charged in accordance with such indenture as may be applicable.

.

8

including the timely filing of a request for payment by the professional, *see* 11 U.S.C. § 503(a);

notice and a hearing before the court, *see* 11 U.S.C. § 503(b); a showing that such expenses were

"actual" and "necessary," *see* 11 U.S.C. § 503(b)(3); a showing that the creditor, unofficial

committee, or indenture trustee has made a "substantial contribution" to the bankruptcy case, *see*

11 U.S.C. § 503(b)(3)(D); and a finding by the court that any compensation paid to an attorney

or accountant is "reasonable."  *See* 11 U.S.C. § 503(b) (4).

26.    Additionally, such party's right to payment under section 503(b) is not automatic

but "depends upon the requesting party's ability to show that the fees were actually necessary to

preserve the value of the estate."  *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien*

*Envtl. Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir.1999).  It is not clear what legal justification

supports or authorizes the payment of such fees under the E-Side Plan or whether the subject

professionals are required and could satisfy section 503(b)[14].

27.    In these cases, these professionals must satisfy the requirement that such

indenture trustees, and their professionals, have made a "substantial contribution" to the

bankruptcy case.

---

[14]    Section 503(b) (3) (D) of the Bankruptcy Code provides for the allowance administrative expenses of the estate for the "actual, necessary expenses" incurred by a "creditor" or an "equity security holder... in making a substantial contribution in a case." Section 503(b) (4) provides for the allowance for the "reasonable compensation for professional services rendered by an attorney or an accountant if an entity whose expense is allowable under" section 503(b) (3). Section 503(b)(5) permits the allowance of reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a Chapter 11 case based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title. These provisions are governed in this District by the Third Circuit's decision in *Lebron v. Mechem Financial, Inc.*, 27 F.3d 937 (3d Cir. 1994). A creditor makes a substantial contribution if its efforts provide an "actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Financial Inc.*, 927 F.3d at 943-44 (citation omitted) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)). *See also In re Worldwide Direct, Inc.*, 334 B.R. at 121. However, a benefit that the estate receives as an incident to a creditor's protecting its own interests is not a substantial contribution. *See Lebron*, 27 F.3d at 944. *See also In re Essential Therapeutics, Inc.*, 308 B.R. 170, 174 (Bankr. D. Del. 2004) ("Inherent in substantial contribution, however, is the requirement that the benefit received by the estate be more than incidental to the applicant's self-interest."). Creditors are presumed to act in their own interest "until they satisfy the court that their efforts have transcended self-protection." *Lebron*, 27 F.3d at 944 (citations omitted). The activities that a Section 503(b)(3)(D) applicant has engaged in are "presumed to be incurred for the benefit of the engaging party and are reimbursable if, but only if, the services 'directly and materially contributed' to the reorganization." *Lebron v. Mechem Financial Inc.*, 27 F.3d at 943-44 (citation omitted).

28.    In particular, this Court previously ruled,[15] among other things, that:

> Thus, courts have found that a creditor or ad hoc committee of
> creditors is entitled to payment of its professional fees and
> expenses by virtue of making a substantial contribution to the
> bankruptcy case, see *Davis v. Elliot Management Corp In Re:*
> *Lehman Brothers Holding Inc.*, 508 BR 283 of 296 Southern
> District New York 2014. But the Court must make an independent
> determination as to the existence of the substantial contribution
> and whether the fees and expenses are reasonable. It cannot defer
> to the Debtor's business judgment.

Transcript of December 3, 2015 Hearing, Tr. 35: 16-25; 36: 1.[16]


29.    The fact that the payments of such professional fees are proposed as part of a

chapter 11 plan does not relieve the third-party professionals of their obligation to comply with

the requirements of section 503, which is the "sole source" of authority to pay post-petition

professional fees on an administrative basis.  *Davis v. Elliot Management Corp. (In re Lehman*

*Bros. Holdings Inc.)*, 508 B.R. 283, 290 (S.D.N.Y. 2014).  In *Lehman*, the court roundly rejected

---

[15]    In *In re Continental Airlines, Inc.*, 279 F.3d 226 (3d Cir. 2002), the Third Circuit describes the law on
"claim and issue preclusion" which were formerly known as "res judicata and collateral estoppel" in the Circuit. 279
F.3d at 332. The Third Circuit described the concepts as follows:

> Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive
> litigation of the very same claim, whether or not relitigation of the claim raises the same issues as
> the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing
> successive litigation of an issue of fact or law actually litigated and resolved in a valid court
> determination essential to the prior judgment, whether or not the issue arises on the same or a
> different claim.

*Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742 (2001)). The "two doctrines share the 'dual purpose of
protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of
promoting judicial economy by preventing needless litigation.'" *Id.* (quoting *Parklane Hosiery Co. v. Shore*, 439
U.S. 322, 326 (1979)). The doctrines may be implicated here as they were in *Continental*, because the Court will be
asked to rule on "an issue that was unambiguously identified, properly presented and ably and vigorously argued by
extremely able counsel of all parties." 279 F.3d at 233 (3d Cir. 2002).

[16]    In addition, see Paragraphs 118, 119 and 122 of the Order Confirming the Sixth Amended Joint Plan of
Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 7244);
Paragraphs 142 and Sections K, L, M and P of the Order Granting the Motion of Energy Future Holdings Corp., *et
al* to Approve a Settlement of Litigation Claims and Authorize The Debtors to Enter into and Perform under the
Settlement Agreement (D.I. 7243) and the Transcript of the December 3, 2015 Hearing, Tr. 34: 11-18; Tr. 34: 19-23;
Tr. 35: 16-25; Tr. 36: 1; Tr. 36: 7-14; Tr. 37: 15-25; Tr. 38: 1-4; and Tr. 38: 12-21.

an attempt by certain committee members to circumvent section 503(b)(4) by seeking payment

under a "permissive" plan provision which purported to pay third-party professional fees without

regard to whether they could be authorized under section 503. As that court explained, plans pay

only claims and administrative expenses:

> Although the Bankruptcy Code does not explicitly forbid payments
> [of] professional fees that are not administrative expenses, no such
> explicit prohibition is necessary. Reorganization plans exist to pay
> claims and expenses . . . Therefore, the Individual Members'
> professional fee expenses are either administrative expenses or not,
> and if the latter, they cannot be paid under a plan.

*Id.* at 293. Indeed, the court recognized that any contrary result "could lead to serious mischief,"

since it would allow plan proponents to distribute the estate's assets without regard to the

Bankruptcy Code's priority scheme. *Id.*

30.     The *Lehman* court's reasoning applies with equal force here. Like the fees at

issue in *Lehman*, the third-party professional fees "are either administrative expenses or not." *Id.*

Because the third-party professionals seek to enjoy the benefits of administrative priority under

section 503—the sole possible source of statutory authorization permitting them to be paid by the

Debtors in full on the Effective Date—they must also comply with the disclosure obligations and

substantive limitations imposed by that section.

31.     Even possibly apart from the applicability of section 503(b), Article IV. Section

R.1. of the E-Side Plan cannot be approved because it violates 11 U.S.C. § 1129(a) (4) of the

Code.[17] That section provides that a court may approve a chapter 11 plan only if, among other

---

[17]    To be clear, the U.S. Trustee does not suggest that section 1129(a)(4) may be used as a substitute for review
under section 503(b). *See Lehman*, 508 B.R. at 294 n.9 (rejecting argument that section 1129(a)(4) could be used to
authorize fees prohibited by section 503(b)). But even assuming that any of the proposed fees did fall outside the
scope of section 503(b), they would nevertheless remain subject to the more general disclosure and court approval
requirements of section 1129(a)(4). Under section 105(a) cannot be used to override the prohibitions of another
section of the Code. *See In re Combustion Engineering, Inc.,* 391 F.3d 190, 236 (3rd Cir. 2004) ("The general grant
of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be
exercised within the parameters of the Code itself"); *see also Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) ("We have

things, the court finds that any payment made by the debtor "for services or for costs and expenses" in connection with the case has either "been approved by, or is subject to the approval of, the court as reasonable."  11 U.S.C. § 1129(a) (4).  In these cases, such fees and expenses can only either be paid pursuant to the proper application of an applicable charging lien or section 503(b).

32.     Accordingly, the U.S. Trustee submits that the Court should not approve the confirmation of the E-Side Plan unless Article VI. Section R.1. of the E-Side Plan and the proposed E-Side Plan Confirmation order are amended and revised to: (i) set forth the legal and factual basis for the reasonableness of such payment; (ii) clarify that professionals subject to section 503(b), including without limitation professionals of the Indenture Trustees, shall be compensated only to the extent compensation is authorized and actually approved and awarded under section 503(b); and (iii) provide a reasonable opportunity for the U.S. Trustee and other parties-in-interest to object to such fees on any grounds, including without limitation the professionals' failure to satisfy the requirement of any portion or part of section 503(b).

## CONCLUSION

33.     As detailed above, the E-Side Plan is not presently confirmable because it seeks approval of certain relief that is contrary to applicable law, controlling precedent and the law of these cases.

34.     The U.S. Trustee reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required

---

long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code.") (citations omitted).

and to assert such other grounds as may become apparent upon further factual discovery and cross-examine any and all witnesses in support of the E-Side Plan.

WHEREFORE, the U.S. Trustee respectfully requests that this Court issue an order consistent with this Objection and/or granting such other relief as this Court deems appropriate, just and appropriate.

Dated:  February 2, 2017
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**
**REGION 3**

By:  */s/ Richard L. Schepacarter*
    Richard L. Schepacarter
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Room 2207, Lockbox 35
    Wilmington, DE 19801
    (302) 573-6491
    (302) 573-6497 (Fax)