## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| | (Jointly Administered) |
| Debtors.[1] | **Re: Docket No. 10535** |
| | **Hearing Date: February 14, 2017 at 1:00 p.m.**<br>**Objections Due: February 3, 2017 by 2 p.m.** |

**OBJECTION OF SHIRLEY FENICLE, WILLIAM FAHY, JOHN H. JONES, AND
DAVID HEINZMANN TO CONFIRMATION OF THE
DEBTORS' SEVENTH AMENDED JOINT PLAN OF REORGANIZATION
<u>AS IT RELATES TO THE EFH DEBTORS AND EFIH DEBTORS</u>**

*CONFIDENTIAL—FILED UNDER TEMPORARY SEAL*
**SUBJECT TO ENERGY FUTURE HOLDINGS
PROTECTIVE ORDER**

**[REDACTED]**

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

# **TABLE OF CONTENTS**

The Asbestos Debtors. ..................................................................................................2

The Objectors. .............................................................................................................5

The Plan. ......................................................................................................................6

I.  The Plan was proposed by a means forbidden by law:  it would violate the due process
    rights of Unmanifested Asbestos Claimants. ...........................................................8

A.  Due process requires that Unmanifested Asbestos Claimants must be represented
    in the bankruptcy process if their rights are affected. ...........................................8

B.  Unmanifested Asbestos Claimants cannot be identified, and have not been given
    constitutionally adequate notice. ........................................................................11

    1.  Whether notice is constitutionally adequate depends on the circumstances of
        the case. ...........................................................................................................11

        a.  *Mullane.* .................................................................................................12

        b.  *Covey*:  Incompetent persons without a legal representative cannot be
            provided notice. .....................................................................................13

    2.  Unmanifested Asbestos Claimants, like incompetent persons, cannot be given
        notice. ...............................................................................................................14

C.  The discharge of Unmanifested Asbestos Claims in the circumstances of these
    cases would violate due process. ........................................................................17

    1.  *Connecticut v. Doehr*: factors to be considered in determining whether due
        process has been afforded. ..............................................................................18

    2.  Application of the *Doehr* factors shows that the discharge of Unmanifested
        Asbestos Claims here would fall short of the demands of due process. ...........20

        a.  The private interests of the claimants are significant. ...............................20

        b.  Erroneous deprivation is certain, and the value of additional safeguards is
            apparent. .................................................................................................21

        c.  The Debtors have no legitimate countervailing interest, and the public
            interest in ensuring equitable treatment of claimants further militates
            against discharge. ....................................................................................23

    3.  Unmanifested Asbestos Claims cannot be discharged in the circumstances of
        these cases. .......................................................................................................25

D.  Retrospective reinstatement of claims cannot cure violation of the due process rights of Unmanifested Asbestos Claimants. ....................................................................29

II.  The Plan cannot be confirmed because it was not proposed in good faith. .............................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ACandS, Inc.*,
  311 B.R. 36 (Bankr. D. Del. 2004) ..............................................................33, 35, 38

*In re Am. Capital Equip., LLC*,
  688 F.3d 145 (3d Cir. 2012).........................................................................7, 37

*In re Amatex Corp.*,
  755 F.2d 1034 (3d Cir. 1985)..................................................................................9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................ *passim*

*Avellino v. M. Frenville Co.* (*In re M. Frenville Co.*),
  744 F.2d 332 (3d Cir. 1984), *overruled by JELD-WEN, Inc. v. Van Brunt* (*In
  re Grossman's, Inc.*), 607 F.3d 114 (3d Cir. 2010) ......................................9, 30, 31

*Bank of America Nat'l Trust and Sav. Ass'n v. 203 North LaSalle Street P'ship*,
  526 U.S. 434 (1999)......................................................................................24

*Butner v. United States*,
  440 U.S. 48 (1979), *superseded in part by statute*, Bankruptcy Reform Act,
  Pub. L. No. 103-394, 108 Stat. 4106 ......................................................24, 29, 34

*Castleman v. Liquidating Trustee*,
  No. 6:06-CV-1077 (LEK), 2007 WL 2492792 (N.D.N.Y. Aug. 28, 2007)............................26

*In re Cent. Hanover Bank & Tr. Co.*,
  75 N.Y.S.2d 397 (N.Y. Sur. Ct. 1947), *aff'd*, 80 N.Y.S.2d 127 (N.Y. App.
  Div. 1948) ..............................................................................................13

*In re Chateaugay Corp.*,
  Nos. 86 B 11270(BRL) to 86 B 11334(BRL), 86 B 11402(BRL), 86 B
  11464(BRL), 2009 WL 367490 (Bankr. S.D.N.Y. Jan. 14, 2009) .........................................26

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2004)...........................................................................9, 17

*Commodity Futures Trading Comm'n v. Weintraub*,
  471 U.S. 343 (1985).....................................................................................35

*Connecticut v. Doehr*,
  501 U.S. 1 (1991)........................................................................ *passim*

*In re Coram Healthcare Corp.*,
   271 B.R. 228 (Bankr. D. Del. 2001) ...................................................................35

*Covey v. Town of Somers*,
   351 U.S. 141 (1956)............................................................................... *passim*

*In re Eagle-Picher Indus. Inc.*,
   137 B.R. 679 (Bankr. S.D. Ohio 1992)..............................................................15

 *In re Energy Future Holdings Corp.*,
   522 B.R. 520 (Bankr. D. Del. 2015) ............................................................2, 4, 7

*Findley v. Falise (In re Joint E. & S. Dist. Asbestos Litig.)*,
   878 F. Supp. 473 (E.D.N.Y. and S.D.N.Y. 1995), *aff'd in part*, *vacated in
   part*, *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764 (2d Cir. 1996) ............................22

*In re Flintkote Co.*,
   486 B.R. 99 (Bankr. D. Del. 2012) ...................................................................14

*Fuentes v. Shevin*,
   407 U.S. 67 (1972)........................................................................................19

*In re Furley's Transp., Inc.*,
   272 B.R. 161 (Bankr. D. Md. 2001), *aff'd*, 306 B.R. 514 (D. Md. 2002) .............................35

*In re G-I Holdings, Inc.*,
   385 F.3d 313 (3d Cir. 2004)............................................................................34

*JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.)*,
   607 F.3d 114 (3d Cir. 2010) ..................................................................... *passim*

*Mathews v. Eldridge*,
   424 U.S. 319 (1976).......................................................................................19

*Mitchell v. W.T. Grant Co.*,
   416 U.S. 600 (1974).....................................................................................19, 21

*Mullane v. Cent. Hanover Bank & Trust*,
   339 U.S. 306 (1950).........................................................................11, 12, 13, 16

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*,
   330 F.3d 548 (3d Cir. 2003)...........................................................................16

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (U.S. 1999)..............................................................................9, 10

*Pepper v. Litton*,
   308 U.S. 295 (1939)........................................................................................38

*In re Placid Oil Co.*,
   753 F.3d 151 (5th Cir. 2014) ..................................................................................26

*Sniadach v. Family Fin. Corp. of Bay View*,
   395 U.S. 337 (1969).............................................................................................19

*In re Specialty Prods. Holding Corp.*,
   No. 10-11780, 2013 WL 2177694 (Bankr. D. Del. May 20, 2013).......................26

*Stellwagen v. Clum*,
   245 U.S. 605 (1918).............................................................................................25

*In re Tribune Co.*,
   464 B.R. 126 (Bankr. D. Del.), *on reconsideration*, 464 B.R. 208 (Bankr. D.
   Del. 2011) ...............................................................................................................7

*In re W.R. Grace & Co.*,
   475 B.R. 34 (D. Del. 2012)...............................................................................33, 34

*In re Waterman S.S. Corp.*,
   141 B.R. 552 (Bankr. S.D.N.Y. 1992), *vacated on other grounds*, 157 B.R.
   220 (S.D.N.Y. 1993)..........................................................................................14, 29

*Wolf v. Weinstein*,
   372 U.S. 633 (1963).............................................................................................34

*In re WR Grace & Co.*,
   729 F.3d 332 (3d Cir. 2013)..............................................................................33, 35

*Wright v. Owens Corning*,
   679 F.3d 101 (3d Cir. 2012)................................................................................8, 9

*Zerand-Bernal Grp., Inc. v. Cox*,
   23 F.3d 159 (7th Cir. 1994) ..............................................................................15, 24

**Statutes**

11 U.S.C. § 101(5) ...................................................................................................30

11 U.S.C. § 524(g) ........................................................................................... *passim*

11 U.S.C. § 1129(a)(3)......................................................................................1, 7, 33

section 363(f) of the Code........................................................................................24

**Other Authorities**

Georgene Vairo, *Mass Tort Bankruptcies: The Who, the Why and the How*, 78
   Am. Bankr. L.J. 93 (2004) ..................................................................................13

H.R. Rep. No. 103-835 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340 .................................... 18

Laura B. Bartell, *Due Process for the Unknown Future Claim in Bankruptcy—Is This Notice Really Necessary?* 78 Am. Bankr. L.J. 339 (2004) .............................................. 17

Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, and David Heinzmann ("**Objectors**") by their undersigned counsel, hereby submit this Objection ("**Objection**") to the *Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al., *Pursuant to Chapter 11 of the Bankruptcy Code*, dated January 4, 2017 (as may be further amended, the "**Plan**") (D.I. 10535), as it relates to the EFH Debtors and EFIH Debtors.[2]

## OVERVIEW

The Debtors' Plan is a flagrant abuse of the bankruptcy process. The Debtors vigorously opposed the appointment of a legal representative for Unmanifested Asbestos Claimants,[3] and no estate fiduciary was appointed to protect their interests. Now, the Debtors seek to discharge the claims of large numbers of those unidentifiable and unrepresented claimants without notice or compensation. Under the Plan, the Asbestos Debtors would shed their liabilities for future asbestos-related claims—and EFH Corp. and other Debtor affiliates would shed their derivative liability for such claims—in order to increase the value of the Asbestos Debtors[4] and their controlling parent EFH Corp. at the expense of the Debtors' asbestos victims. This result would violate the due process rights of Unmanifested Asbestos Claimants, is inconsistent with the objective and purposes of the Code, and epitomizes the bad faith that, under section 1129(a)(3), precludes confirmation.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan.

[3] "**Unmanifested Asbestos Claimants**" refers to persons who had not suffered cognizable injuries caused by pre-petition exposure to the Debtors' asbestos-containing products before the bar date set in these cases, but who have since suffered or will suffer such injuries. "**Unmanifested Asbestos Claims**" refers to the claims of such claimants.

[4] "**Asbestos Debtors**" refers to EECI, Inc. (Case No. 14-10992), EEC Holdings, Inc. (Case No. 14-10990), LSGT Gas Co. LLC (Case No. 14-11039), and LSGT SACROC, Inc. (Case No. 14-11012).

## BACKGROUND

Energy Future Holdings Corp. ("**EFH Corp.**") and 69 of its direct and indirect subsidiaries (the "**Debtors**") filed petitions for reorganization under Chapter 11 on April 29, 2014 (the "**Petition Date**"). *See* Voluntary Petition, Apr. 29, 2014. The Debtors' bankruptcies were consolidated "for procedural purposes only" and have been administered jointly, pursuant to Federal Rule of Bankruptcy Procedure 1015 and Local Bankruptcy Rule 1015-1. *See* Interim Order Directing Joint Administration of the Debtors' Chapter 11 Cases ¶ 2, May 1, 2014, D.I. 287. The bankruptcy cases are not substantively consolidated. *Id.* ¶ 5. Each of the Debtors, including EECI, Inc.,[5] EEC Holdings, Inc., LSGT SACROC, Inc., and LSGT Gas Co. LLC, ("**Asbestos Debtors**")[6] has a separate bankruptcy case.

***The Asbestos Debtors.***

The Asbestos Debtors were in the business of building, servicing, maintaining, and repairing power plants, or are successors to entities that were engaged in that business. *See In re EFH Corp.*, 522 B.R. at 523. Asbestos-containing insulation was installed throughout the power plants. *Id.* at 524. As this Court has found, anyone working in those power plants inevitably was exposed to asbestos: "[a]sbestos exposure was virtually unavoidable in power plants built prior to 1980." *Id.*

---

[5]    EECI, Inc. was formerly known as EBASCO, "which was at various times affiliated with Boise Cascade, Halliburton and Raytheon Corporation (all of which have had asbestos-related personal injury liability)." *In re Energy Future Holdings Corp.* ("***In re EFH Corp.***"), 522 B.R. 520, 524 (Bankr. D. Del. 2015). EBASCO built, serviced, maintained, and repaired power plants nationwide.

[6]    EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. are all subsidiaries of LSGT Gas Co. LLC. LSGT Gas Company, LLC, in turn, is a subsidiary of Debtor EFH Corp. *See* Declaration of Paul Keglevic in Support of the Motion of Energy Future Holdings Corp., *et al.*, to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement and Confirmation of the Fifth Amended Plan of Reorganization ("**Keglevic 10/30/15 Decl.**") ¶ 84, Oct. 30, 2015.

The Asbestos Debtors had been sued pre-petition for asbestos-related injuries associated with the Asbestos Debtors' electricity generation activities and discontinued gas distribution businesses. *See* Debtors' Reply in Support of Bar Date with Respect to Asbestos Claims ("**Debtors' Bar Date Reply**") ¶ 6, Aug. 11, 2014, D.I. 1804; Hr'g Tr. 71:5-8, Aug. 13, 2014; Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., *et al.*, in Support of First Day Motions ¶ 52, Apr. 29, 2014, D.I. 98. ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███ ████████████████████████████████████████████████████

---

[7]    *See* ██████████████████████████    In connection with the confirmation of the now-defunct previous plan, this Court observed that reinstatement of the Asbestos Debtors' $990 million in inter-company claims "ensures that a reorganized EFH will continue to fund asbestos-related expenses that may arise at the Asbestos Debtor[s]."  Hr'g Tr. 57:13-15, Dec. 3, 2015. The court noted also that "reorganized EFH will be a solvent entity."  *Id.* at 61:23.

[8]    *See* ██████████████████████

███████████████████████████████[9] All of these admittedly valid intercompany receivables will be

reinstated by the Plan.  *See* Plan art. III(B)(13).  ████████████████████████████████████

████████████████████████████████████████████████████████[10]  █████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████[11]  ████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

9 ████████████████████████████████████████████████████████
████████████████████████████████████████████.

10    *See In re EFH Corp.*, 522 B.R. at 525 ("The Debtors estimate that their asbestos expenses average up to $3 million annually."). The Debtors have maintained throughout these bankruptcy cases that their asbestos liabilities are not material. Debtors' Bar Date Reply ¶ 6. *See In re EFH Corp.*, 522 B.R. at 525 ("The Debtors believe that litigation and settlement expenses incurred in connection with asbestos claims against the debtors are not material."); *id.* at n.8 (citing Hr'g Tr. 71:14-16, Aug. 13, 2014 (comparing $3 million estimated annual expenses with estimated $36 billion in assets, $49 billion in liabilities, including funded indebtedness, and $5.9 billion in consolidated annual revenues for the year ending December 31, 2013)). ██████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████

*The Objectors.*[12]

Ms. Fenicle is the successor-in-interest to the estate of George Fenicle, a mesothelioma victim, and also was exposed to Debtors' asbestos brought home by her husband on his clothing. Mr. Fahy is a mesothelioma claimant. They each filed timely proofs of claim in these cases. They are both members of the "E-Side" Unsecured Creditors' Committee, which was appointed to represent the interests of the unsecured creditors of Debtors EFH Corp., EFIH Corp., EFIH Finance, and EECI, Inc. (the "**E-Side Committee**"). *See* Notice of Appointment of Committee of Unsecured Creditors, Oct. 27, 2014, D.I. 2570; *see also* Second Amended Notice of Appointment of Committee of Unsecured Creditors, Jan. 30, 2015, D.I. 3403.[13]

At various times during the period from 1963 through 1965, Mr. Jones was exposed to the Debtors' asbestos while working as an electrician for independent contractors at the Hanford Nuclear Plant in Washington State, which is on the EECI site list filed in the Debtors' bankruptcy cases. *See* Notice of Intent to Participate in Disclosure Statement Proceedings and

---

[12]    Each of the Objectors has filed a Notice of Intent to participate in the bankruptcy cases, pursuant to the Order Scheduling Certain Hr'g Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement, D.I. 8514 ("**Scheduling Order**") (as supplemented and amended, most recently at D.I. 10327). *See* D.I. 8441, 8442, 9165, and 10030. The Scheduling Order provides that the Debtors and other participating parties "shall, within ten days of the filing of any Notice of Intent, have the right to object to that Notice of Intent on any and all grounds, including that the Notice of Intent . . . was served by persons that are not parties in interest . . . or does not demonstrate a legally cognizable interest in . . . the Confirmation Proceedings." *See* Scheduling Order. The Debtors did not object to these Objectors' Notices of Intent, or challenge any of the statements made therein.

[13]    No estate fiduciary was appointed to represent the interests of unsecured creditors of EEC Holdings, Inc., LSGT Gas Co. LLC, and LSGT SACROC, Inc. and, as discussed in footnote 15, *infra*, the E-Side Committee cannot represent the interests of both the Unmanifested Asbestos Claimants and the current asbestos claimants. The Court denied a motion to appoint a legal representative to protect the interests of Unmanifested Asbestos Claimants. *See* Order Denying Motion of Charlotte Liberda and Curtis Liberda to Appoint Legal Representative ("**Order Denying Motion to Appoint Legal Rep.**"), Aug. 11, 2015, D.I. 5265.

Confirmation Proceedings for New Plan ¶ 3, Aug. 1, 2016, D.I. 9165.  Mr. Jones was diagnosed with metastatic malignant mesothelioma on December 14, 2015 (*id.*) (one week after entry of the Confirmation Order), which was the relevant bar date for filing proofs of claim in the Debtors' bankruptcy cases.  Mr. Jones did not receive notice of and was unaware of the bar date, and he did not file a proof of claim in these bankruptcy cases.  *Id.*

Mr. Heinzmann has claims against the Debtors for personal injury arising from his exposure to asbestos at the Mountain Creek Power Plant in Dallas, Texas, the Stryker Creek Power Plant in Jacksonville, Texas, and the FPL Power Plant in Ft. Myers, Florida.  *See* Notice of Intent to Participate in Disclosure Statement Proceedings and Confirmation Proceedings for New Plan ¶ 2, Nov. 3, 2016, D.I. 10030.  All three power plants are on the EECI site list provided by Debtors in these bankruptcies.  *Id.*  Mr. Heinzmann was diagnosed with mesothelioma on July 15, 2016.  *Id.*  He was not notified of, and was unaware of, the bar date in these cases, and did not file a proof of claim.  *Id.*

**The Plan.**

Under the Plan, asbestos-related claims against the Asbestos Debtors (Class A3 claims) for which proofs of claim were timely filed would be paid in full or reinstated.  *See* Plan art. III(B)(3).  Asbestos claims for which proofs of claim were not timely filed would be discharged, including claims of persons who, post-confirmation, have suffered or will suffer cognizable injuries caused by pre-petition exposure to the Debtors' asbestos-containing products ("**Unmanifested Asbestos Claimants**").  *See* Plan art. VII(F).  Thus, Unmanifested Asbestos Claims for which no proofs of claim were filed would be discharged without compensation— including the claims of those who had not been diagnosed with asbestos-related illnesses before the bar date, the claims of persons who are unaware that they were exposed to the Debtors' asbestos, the claims of persons who will suffer loss when a family members succumbs to an

asbestos-related illness caused by pre-petition exposure, and even the claims of future spouses or unborn children of those persons.

## ARGUMENT

Section 1129(a)(3) of the Bankruptcy Code provides that a "court shall confirm a plan only if, *inter alia*, it 'has been proposed in good faith and not by any means forbidden by law.'" *In re Am. Capital Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012) (internal citations omitted). "The plan proponent bears the burden of establishing the plan's compliance with each of the requirements set forth in § 1129(a)." *In re Tribune Co.*, 464 B.R. 126, 151-52 (Bankr. D. Del.) (quoting *In re Exide Techs.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003)), *on reconsideration*, 464 B.R. 208 (Bankr. D. Del. 2011). The Debtors cannot meet that burden in these cases.

The Plan cannot be confirmed because it was proposed by a means forbidden by law: it would violate the due process rights of Unmanifested Asbestos Claimants by discharging their claims without constitutionally adequate notice, without compensation, without representation, and without any other protections of their rights. *See* Part I, below. A claimant must be afforded due process before his or her claim may be discharged in bankruptcy. As this Court previously has recognized, Unmanifested Asbestos Claimants by definition cannot be identified and cannot identify themselves. *See In re EFH Corp.*, 522 B.R. at 523 (Unmanifested Asbestos Claimants "as of the date hereof, do not know, even with appropriate due diligence, that they will become ill, due to the potential for a long latency period between asbestos exposure and illness."). It is not possible to provide these unselfconscious claimants constitutionally adequate notice, just as it is not possible to provide notice to an incompetent person. Before approving a reorganization plan that would deprive claimants of their claims without prior notice, the court must consider the factors set out by the Supreme Court in *Connecticut v. Doehr*, 501 U.S. 1 (1991), to ensure that the demands of due process are met. An analysis of those factors shows that due process has

not been afforded to Unmanifested Asbestos Claimants in these cases.  Large numbers of absent claimants would be deprived of their claims, without any safeguards of their rights:  there has been no separate estate fiduciary appointed to protect their interests, and no procedures provided to ensure fair compensation.  Moreover, there is no valid bankruptcy purpose for discharging these claims.  Permitting the discharge in the circumstances of these cases would run counter to the fundamental bankruptcy goal of equitable treatment of creditors.

The Plan also cannot be confirmed because it was not proposed in good faith.  *See* Part II, below.  The Plan was not proposed to deal fairly with, and pay the claims of, the Debtors' asbestos victims.  Rather, the discharge of Unmanifested Asbestos Claims under the Plan will increase the value of the Asbestos Debtors and their controlling parent, EFH Corp., at the expense of the absent asbestos victims.  This kind of self-dealing is a breach of the Debtors' fiduciary duties to their asbestos creditors, and an abuse of the bankruptcy process.

## I.  THE PLAN WAS PROPOSED BY A MEANS FORBIDDEN BY LAW:  IT WOULD VIOLATE THE DUE PROCESS RIGHTS OF UNMANIFESTED ASBESTOS CLAIMANTS.

The Fifth Amendment requires that a claimant be afforded due process before his or her claim may be discharged in bankruptcy.  The Third Circuit has instructed that "if a claimant is not afforded due process, a plan of reorganization and confirmation order that purport to discharge claims will not do so."  *Wright v. Owens Corning*, 679 F.3d 101, 107 n.6 (3d Cir. 2012).  In these cases, Unmanifested Asbestos Claimants have not been afforded due process, and their claims cannot be discharged under the Plan.

### A.  Due process requires that Unmanifested Asbestos Claimants must be represented in the bankruptcy process if their rights are affected.

As the Third Circuit has recognized, the Supreme Court has clearly instructed that due process requires that persons who will, in the future, suffer cognizable injuries caused by exposure to a debtor's asbestos must be adequately represented in bankruptcy or in any other

legal proceeding if their rights would be affected: "In the resolution of future asbestos liability, under bankruptcy or otherwise, future claimants[14] must be adequately represented throughout the process." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 (3d Cir. 2004) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-28 (1997)); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (U.S. 1999); *see also In re Amatex Corp.*, 755 F.2d 1034, 1043-44 (3d Cir. 1985) (holding that future asbestos claimants (*i.e.*, those who had been exposed to the debtor's asbestos but not yet been diagnosed with asbestos-related illnesses) were entitled to representation during bankruptcy proceedings); *Wright*, 679 F.3d at 108 n.7 (noting that future claimants' representatives have been appointed in bankruptcy proceedings "in part, to address the broader issue of whether discharging unknown future claims [*i.e.*, unmanifested asbestos claimants] comports with due process.").[15]

In *Amchem*, the Supreme Court made clear that the same persons cannot adequately represent the interests of both current asbestos victims and unmanifested ("exposure-only")

---

[14]     In these bankruptcy cases, the Debtors and this Court have used the term "future claimants" to refer only to persons who were not exposed to the Debtors' asbestos pre-petition, but who will be exposed and suffer injury post-petition. The Third Circuit in *Combustion Eng'g* and other cases has used the term "future claimants" to refer also to persons exposed pre-petition but not yet diagnosed, *i.e.*, unmanifested, or "exposure-only," claimants.

[15]     In *Wright*, the Third Circuit ruled that it would violate due process to discharge the claims of unmanifested claimants who had been exposed to the debtor's asbestos pre-petition because, at the time the plan was confirmed, it was understood that they did not have claims, pursuant to the court's *Frenville* decision, which had only recently been overruled by the court's decision in *JELD-WEN, Inc. v. Van Brunt* (*In re Grossman's, Inc.*), 607 F.3d 114 (3d Cir. 2010). *Wright*, 679 F.3d at 104 (citing *Avellino v. M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984)). Noting that no legal representative had been appointed for future, unmanifested claimants, the court did not express any "opinion on the broader issue of whether discharging unknown future claims comports with due process." *Wright*, 679 F.3d at 108 n.7. "Because a future claims representative was not appointed in these bankruptcy cases," the court stated, "we leave open whether, when such a representative provides persons with unknown future claims an opportunity to participate in the bankruptcy case through that representation, they are afforded due process through otherwise adequate notice to the future claims representative." *Id.*

asbestos victims, because the interests of those two groups "are not aligned." *Amchem*, 521 U.S. at 626. "Most saliently," the Court held, "for the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future." *Id.* Subsequently, in *Ortiz*, the Court held that "[i]t is obvious after *Amchem* that a class divided between holders of present and future claims (some of the latter involving no physical injury and attributable to claimants not yet born) requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel." *Ortiz*, 527 U.S. at 856. That conflict is particularly apparent in these bankruptcy cases, where the Plan would discharge large numbers of claims of absent Unmanifested Asbestos Claimants without compensation, while reinstating the claims of others. *Id.* (disparity of interest between groups of asbestos claimants illustrated by allocation decisions in proposed settlement, including provision that would extinguish certain claims with no compensation).

In these cases, the Debtors vigorously—and successfully—opposed the appointment of a separate legal representative for Unmanifested Asbestos Claimants. Thus, no estate fiduciary was appointed to represent the interests of these absent claimants.[16] *See* Order Denying Motion

---

[16] The "E-Side" Unsecured Creditors' Committee was appointed to represent the interests of the unsecured creditors of Debtors EFH Corp., EFIH Co., EFIH Finance, and EECI, Inc. *See* Notice of Appointment of Committee of Unsecured Creditors, D.I. 2570; *see also* Second Amended Notice of Appointment of Committee of Unsecured Creditors, D.I. 3403. No estate fiduciary was appointed to represent the interests of unsecured creditors of three of the Asbestos Debtors: EEC Holdings, Inc., LSGT Gas Co. LLC, and LSGT SACROC, Inc. Moreover, as the *Amchem* decision makes clear, the E-Side Committee cannot represent the interests of both current and unmanifested asbestos claimants. *See Amchem*, 521 U.S. at 626. Indeed, the E-Side Committee itself recognized as much, noting "potential, if not actual, conflict of interests between the Unmanifested Asbestos Claimants and other persons and entities within the constituency represented by" the E-Side Committee because the interests of those other persons and entities was "to maximize their own recovery, which may require minimizing the claims of Unmanifested Asbestos Claims." Notice of Emergency Motion of the EFH Official Committee *(footnote continued)*

to Appoint Legal Rep., D.I. 5265.  For that reason alone, those claims cannot be discharged in these bankruptcy cases, and the Plan cannot be confirmed.

**B.      Unmanifested Asbestos Claimants cannot be identified, and have not been given constitutionally adequate notice.**

Having ensured that Unmanifested Asbestos Claimants were denied representation by an estate fiduciary throughout these bankruptcy proceedings, the Debtors cannot now rely on the pretext that these absent, unidentifiable, and unselfconscious claimants have been afforded due process through the Debtors' notice program.

*1.      Whether notice is constitutionally adequate depends on the circumstances of the case.*

In confirming the now-defunct previous plan, this Court relied on the Supreme Court's decision in *Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 314 (1950) in support of its ruling that publication notice under the Debtors' bar date notice program satisfied the requirements of due process for Unmanifested Asbestos Claimants.  *See* Hr'g Tr. 58:2-6, Dec. 3, 2015.  The situation in *Mullane*, however, was far different from that in these cases.  More pertinent is the decision in *Covey v. Town of Somers*, 351 U.S. 141 (1956), in which the Supreme Court held that constitutionally adequate notice had not been provided to a person known to be incompetent and for whom no legal representative had been appointed.

---

for Entry of an Order (I) Adjourning the Hearing, Currently Scheduled for June 1, 2015, on the Debtors' Proposed Form of Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form of and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof ¶ 9 & n.4, May 21, 2015, D.I. 4553.  Ultimately, the E-Side Committee agreed to the Debtors' proposed Plan, which would purport to discharge the claims of large groups of Unmanifested Asbestos Claimants without compensation, while reinstating other unsecured claims against the Asbestos Debtors.

a.    *Mullane.*

*Mullane* involved a proceeding for judicial settlement of the accounts of a common trust fund created by pooling a number of small trust funds for administrative purposes. *Mullane*, 339 U.S. at 310. As required by state law, the lower court appointed two special guardians, one to represent persons known or unknown who did not otherwise appear in the proceeding and who had an interest in the income of the fund, and another to represent similar persons with an interest in the principal of the fund. *Id*. Notification of the proposed settlement was given by publication in a local newspaper, as provided by state law. *Id*. at 309. The special guardian for the income beneficiaries challenged the constitutionality of the notice of the proposed settlement.

The Supreme Court held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. at 314. The means employed to provide notice, the Court emphasized, "must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id*. at 315. Thus, the Court held, while known present beneficiaries with known addresses were entitled to personal notice by mail, under the circumstances of that case, publication notice was adequate for the unknown beneficiaries. *Id.* at 318. "[I]n view of the character of the proceedings and the nature of the interest" involved, the Court held, the trustee was not required to undertake extensive searches to locate unknown "conjectural or future" beneficiaries, as the expense of extended searches would outweigh the potential advantages. *Id.* at 317-18. Rather, the Court held, the unknown beneficiaries could be noticed by publication, which, the Court found, was "all that the situation permits." *Id*. at 317.

Significantly, unlike the Unmanifested Asbestos Claimants here, the unknown "conjectural or future" beneficiaries of the trusts in *Mullane* were identifiable, and could

recognize themselves as the persons to whom an appropriate notice was directed.[17]    Moreover, the state statute under which the *Mullane* action proceeded required the appointment of guardians to represent the interests of those unknown beneficiaries, whereas in the bankruptcy cases at bar, no legal representative was appointed to represent the interests of Unmanifested Asbestos Claimants

> b.    *Covey*:  Incompetent persons without a legal representative cannot be provided notice.

Six years after the *Mullane* decision, in *Covey v. Town of Somers* , the Supreme Court made clear that, where the person to whom the notice is addressed is known to be incompetent and thus incapable of being informed by the notice, no form of purported notice can satisfy due process.  351 U.S. 141.  In *Covey*, the Town of Somers foreclosed on property owned by Nora Brainard, in order to enforce tax liens.  Notice was given by mail, by posting at the post office, and by publication in two local papers.  Ms. Brainard was a long-time resident of the town, and town officials and citizens knew that she was "a person without mental capacity to handle her affairs or to understand the meaning of any notice served upon her."  *Id*. at 146.  Shortly after the foreclosure, Ms. Brainard was declared of unsound mind, and committed.  The appellant, Edwin Covey, was appointed her fiduciary, and sought to overturn the foreclosure, asserting that Ms. Brainard's due process rights had been violated.

---

[17]    The trust fund at issue in *Mullane* was comprised of 113 participating estates or trusts with 315 known beneficiaries.  *See In re Cent. Hanover Bank & Tr. Co.* , 75 N.Y.S.2d 397, 408 (N.Y. Sur. Ct. 1947), *aff'd*, 80 N.Y.S.2d 127 (N.Y. App. Div. 1948).  The Court noted that the "unknown" interested parties could have been identified, albeit only by "extensive investigations . . . of the births, deaths and other occurrences which might increase, decrease or otherwise change the groups of interested persons."  *Id*.  *See* Georgene Vairo, *Mass Tort Bankruptcies: The Who, the Why and the How*, 78 Am. Bankr. L.J. 93, 134 (2004) ("[N]either *Mullane* nor any case following it involved claimants who were not only unknown to the party sending the notice but who were in essence unknown to themselves and who therefore would not recognize themselves as the intended targets of the notice even were the notice actually received.").

The Court agreed, rejecting the argument that the due process clause "does not require the State to take measures in giving notice to an incompetent beyond those deemed sufficient in the case of the ordinary taxpayer." *Id*.  Quoting *Mullane*, the Court reiterated that notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties'" of the action, that "'process which is a mere gesture is not due process,'" and that the means of providing notice must be what one would use if one were "'desirous of actually informing the absentee.'" *Id*. (quoting *Mullane*, 339 U.S. at 314-15).  "Notice to a person known to be an incompetent who is without the protection of a guardian," the Court held, "does not measure up to this requirement." *Id*.  Because Ms. Brainard could not understand the notice and its implications, the Court held, it did not satisfy due process. *Id*. at 147.

>    2.    *Unmanifested Asbestos Claimants, like incompetent persons, cannot be given notice.*

Just as the incompetent person in *Covey* was not given constitutionally adequate notice, so too the Unmanifested Asbestos Claimants in these cases were not given notice:  they cannot identify themselves, and they cannot know whether their interests will be affected.   As Bankruptcy Judge Fitzgerald (since retired) stated, "[a]n exposed asbestos creditor who has not yet manifested an injury . . . is one who is impossible to identify, such that providing actual notice is, itself, impossible." *In re Flintkote Co.*, 486 B.R. 99, 128 (Bankr. D. Del. 2012).  The Bankruptcy Court for the Southern District of New York ruled to the same effect, finding that no Unmanifested Asbestos Claimant, "who, by definition, had yet to manifest any detectible injury prior to confirmation, could be deemed to have relinquished substantive rights when, even if that individual had read the 'notice,' those individuals would have remained completely unaware that their substantive rights were affected." *In re Waterman S.S. Corp.* , 141 B.R. 552, 559 (Bankr. S.D.N.Y. 1992), *vacated on other grounds* , 157 B.R. 220 (S.D.N.Y. 1993).  Other courts are in

accord. *See Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir. 1994) (notice to persons who had not yet been injured by the debtor's products "might well be infeasible"); *In re Eagle-Picher Indus. Inc.*, 137 B.R. 679, 680 (Bankr. S.D. Ohio 1992) ("Future claimants, of course, would not be affected by a bar date, for they are as a class inherently unknown and unknowable.").

The Supreme Court itself recognized the practical "impediments" to providing "adequate notice" to unmanifested asbestos claimants in *Amchem*, which involved opt-out notice to a putative class of asbestos victims under Federal Rule of Civil Procedure 23.   The Court instructed that:

> Many persons in the exposure-only category . . . may not even know of their exposure, or realize the extent of the harm they may incur.  Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out.
>
> Family members of asbestos-exposed individuals may themselves fall prey to disease or may ultimately have ripe claims for loss of consortium.  Yet large numbers of people in this category—future spouses and children of asbestos victims—could not be alerted to their class membership.  And current spouses and children of the occupationally exposed may know nothing of that exposure.

*Amchem*, 521 U.S. at 628.

The Court did not reach the issue of whether the class notice in that case was constitutionally adequate, as it affirmed the Third Circuit's denial of class certification on the ground that Rule 23's requirements of common issue predominance and adequacy of representation were not satisfied.  However, the Court emphasized that it "recognize[d] the

gravity of the question whether class action notice sufficient under the Constitution and Rule 23 could ever be given to legions so unselfconscious and amorphous." *Id.*[18]

Like the unmanifested asbestos victims in *Amchem*, the Unmanifested Asbestos Claimants in these cases could not be identified, even by themselves. And "even if they fully appreciate the significance of [a bar date] notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to [file a claim]." *Id.* at 628.

The purpose of notice is to afford interested persons the opportunity to be heard. *Mullane*, 339 U.S. at 314. But because Unmanifested Asbestos Claimants were not—and could not be—given adequate notice, and no representative was appointed to protect their interests, they were not given an opportunity to be heard. Given the "unselfconscious and amorphous" nature of Unmanifested Asbestos Claimants (*Amchem*, 521 U.S. at 628), purported notice necessarily is a "mere gesture," and is not "reasonably calculated" to reach them (*Mullane*, 339 U.S. at 314), just as notice cannot reach an incompetent person. *Covey*, 351 U.S. at 146. "[N]otice by publication is an exercise in futility as applied to creditors who are not only unknown to the debtor, but are also unknown to themselves. . . . [W]hen an individual cannot recognize that he or she has a claim in a bankruptcy case and, therefore, cannot make a decision

---

[18]    That the Supreme Court's statements are dicta does not mean that they may be ignored. As the Third Circuit has instructed:

> [W]e should not idly ignore considered statements the Supreme Court makes in dicta. The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket. 'Appellate courts that dismiss these expressions [in dicta] and strike off on their own increase the disparity among tribunals (for other judges are likely to follow the Supreme Court's marching orders) and frustrate the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there.'

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 561 (3d Cir. 2003) (internal citations omitted).

about how to assert that claim, that person is functionally or constructively 'incompetent' for purposes of the bankruptcy case." Laura B. Bartell, *Due Process for the Unknown Future Claim in Bankruptcy—Is This Notice Really Necessary?* 78 Am. Bankr. L.J. 339, 354, 366 (2004).

### C.    The discharge of Unmanifested Asbestos Claims in the circumstances of these cases would violate due process.

The Objectors do not contend that it is never possible to discharge future, unmanifested asbestos claims in a manner that comports with due process.  To the contrary:  Congress provided a means of doing so in asbestos bankruptcies when it enacted section 524(g) to address the "unique problems and complexities associated with asbestos liability," while supporting the "equitable resolution of asbestos-related claims" and making it "possible for future asbestos claimants to obtain substantially similar recoveries as current claimants in a manner consistent with due process." *Combustion Eng'g*, 391 F.3d at 234.  Under that statute, a debtor against whom asbestos-related claims have been asserted in the past may propose and have confirmed a plan under which all current and future asbestos claims will be channeled to a trust, which will step into the debtor's shoes and assume responsibility for the resolution and payment of such claims.  In exchange for funding the trust, the debtor will be released from liability for the asbestos claims, provided that the debtor's plan provides specific safeguards for the rights of future, unmanifested asbestos claimants.  As set out by the Third Circuit in *Combustion Engineering*, "[t]he several prerequisites set forth in § 524(g) are designed to protect the interests of future claimants whose claims are permanently enjoined.  Among these, the plan must be approved by a super-majority of current claimants, and must provide substantially similar treatment to present and future claimants.  Furthermore, the court must appoint a futures representative to act as fiduciary for the interests of future claimants." *Id.* at 237 (citing 11 U.S.C. §§ 524(g)(2)(B)(ii)(IV)(bb), 524(g)(4)(B)(1), 524(g)(2)(B)(i)(V)).  These are the kinds of

safeguards of the future, unmanifested claimants' rights required under the Supreme Court's factors test in *Connecticut v. Doehr.*

As Congress recognized when it enacted section 524(g), future unmanifested asbestos claimants "do not have their own voice,"[19] and due process requires that a legal representative be appointed to represent their interests.   In these cases, the Debtors have ensured that no representative was appointed to protect the interests of Unmanifested Asbestos Claimants, and have proposed a Plan that contains none of the safeguards required by section 524(g).   Having deliberately eschewed the path provided by Congress for bankruptcy treatment of asbestos liability, the Debtors cannot, in the circumstances of these cases, have their Plan confirmed, insofar as it would purport to discharge Unmanifested Asbestos Claims.

1.    Connecticut v. Doehr*: factors to be considered in determining whether due process has been afforded.*

In its oft-cited decision in *Connecticut v. Doehr* , the Supreme Court considered what process must be afforded where, as in these cases, a private party enlists the aid of the government to deprive another of his or her property without providing prior notice and an opportunity to be heard.  501 U.S. 1, 9 (1991).  In that case, a plaintiff in a civil suit for assault and battery petitioned for prejudgment attachment of the defendant Brian Doehr's home.  The suit did not involve, and the plaintiff had no pre-existing interest in, the property.   Under Connecticut law, prejudgment attachment was available on verification by the plaintiff that there was "probable cause" to sustain the validity of the plaintiff's claims.  When his property was attached, Mr. Doehr filed suit in federal court, asserting that the attachment violated the due process clause of the Fourteenth Amendment.  The district court upheld the state statute, and the Court of Appeals for the Second Circuit reversed.

---

[19]    H.R. Rep. No. 103-835, at 40 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3349.

The Supreme Court affirmed the decision of the Court of Appeals, citing a long line of Supreme Court authority, including *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337 (1969), *Fuentes v. Shevin*, 407 U.S. 67 (1972), *Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1974), and *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Court instructed that, in determining what process must be afforded when a private party enlists the aid of the government to deprive another of property by prejudgment attachment or similar procedure, the court must consider three factors:

> [F]irst, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, . . . principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections.

*Doehr*, 501 U.S. at 11.

In *Doehr*, the Court found, first, that the property interests affected by the pre-judgment attachment were significant, noting that, among other things, attachment clouds title and impairs the ability to sell the property. Even temporary or partial impairments of property rights, the Court held, "are sufficient to merit due process protection." *Id*. at 12. Second, the Court found that the risk of erroneous deprivation was high, because at most the state statute required only that the plaintiff demonstrate probable cause to believe judgment would be rendered in favor of the plaintiff, which could be made out on the basis of conclusory, self-serving statements, with no response from the defendant. *Id*. at 14. That a prompt post-attachment hearing was available did not reduce the risk, as it would not cure the temporary deprivation that would already have occurred. *Id*. at 15. Finally, the interests of the plaintiff were too minimal to justify pre-judgment attachment: his only interest was "to ensure the availability of assets to satisfy his judgment if he prevailed on the merits of his action," and he had not even alleged that Mr. Doehr

19

was going to take steps to encumber the real estate or make it unavailable to satisfy a judgment, or that there was any other exigent circumstance.  *Id.* at 16.  Moreover, there was no governmental interest at stake.  *Id.*  Thus, the Court held, the statute "clearly falls short of the demands of due process."  *Id.* at 18.

> 2.    *Application of the* Doehr *factors shows that the discharge of Unmanifested Asbestos Claims here would fall short of the demands of due process.*

An examination of the *Doehr* factors demonstrates that the discharge of Unmanifested Asbestos Claims under the Plan in these bankruptcy cases would also "clearly fall[] short of the demands of due process."  *Id.* at 18.

> a.    <u>The private interests of the claimants are significant.</u>

The private interests affected by the discharge of Unmanifested Asbestos Claims in these cases are significant.  The discharge would be a complete deprivation of the Unmanifested Asbestos Claimants' rights to pursue otherwise valid and compensable claims in the tort system. The Court has previously noted that a claimant whose due process rights have been violated by the discharge may file a motion with the Bankruptcy Court to permit a late-filed claim.  *See* Hr'g Tr. 62:15-63:4, Dec. 3, 2015.  Moreover, also as in *Doehr*, there are no exigent circumstances in these cases that would justify extinguishing the rights of the holders of Unmanifested Asbestos Claims without adequate notice.

If the Plan were confirmed, an Unmanifested Asbestos Claimant who did not file a proof of claim would be required to make a motion to the Bankruptcy Court in order to file a late claim; if the claimant commenced suit in state court without doing so, the claimant would face a motion for contempt in Bankruptcy Court.  The requirements of having to make a motion to the Bankruptcy Court, which may be far from the claimant's home, and having to bear the burden of demonstrating a violation of due process, are significant barriers to suit that the claimant must overcome before that claimant can assert state law claims.  Those requirements would impose

costs and burdens on the claimant that may be substantial.[20]  And even if the claimant were to succeed in having his or her claim reinstated, the deprivation of property would have already occurred.  As in *Doehr*, the availability of a post-deprivation hearing in the Bankruptcy Court does not cure the due process violation.[21]  Just as "temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection" (*Doehr*, 501 U.S. at 12), the discharge of claims here, regardless of how temporary, also triggers due process concerns.  As the Supreme Court has instructed, the Constitution does not draw "'bright lines around three-day, 10–day or 50–day deprivations of property.  Any significant taking of property by the State is within the purview of the Due Process Clause.'"  *Id.* at 15 (internal citations omitted).

    b.    Erroneous deprivation is certain, and the value of additional safeguards is apparent.

    The risk of erroneous deprivation is not just substantial in these cases:  it is certain that there are Unmanifested Asbestos Claimants who have or will have otherwise valid and compensable claims did not file proofs of claim, including Mr. Jones and Mr. Heinzmann.  As the Court acknowledged during confirmation hearings on the previous plan: "there may be unmanifested claimants for whom the bar date, as applied to their specific case may not comport

---

[20]    Even if the claimant were reimbursed for those costs, it would not cure the deprivation of rights.  *See Doehr*, 501 U.S. at 15 (holding that provision for double damages did not diminish the need for predeprivation hearing).

[21]    This is not a situation like that in *Mitchell v. W. T. Grant Co* ., in which the Supreme Court upheld Louisiana's sequestration statute because, among other things, an immediate post-deprivation hearing was available.  416 U.S. 600.  In *Mitchell*, prejudgment seizure of property subject to a vendor's lien was justified in order to prevent alienation or waste of the encumbered property.  *Doehr*, 501 U.S. at 15 (citing *Mitchell*, 416 U.S. at 609-10).  In these cases, as in *Doehr*, there are no exigent circumstances that would justify extinguished the rights of Unmanifested Asbestos Claimants without prior notice or hearing.  Moreover, unlike in these cases, in which erroneous deprivation is certain, "the risk of error" in *Mitchell* "was minimal because the likelihood of recovery involved uncomplicated matters that lent themselves to documentary proof."  *Id.* (citing *Mitchell*, 416 U.S. at 609-10).

with due process." Hr'g Tr. 59:6-11, Dec. 3, 2015.  Regardless of whether these claimants were aware of the Debtors' bankruptcy or saw the Debtors' notice program, by definition they could not know that they would suffer injury in the future, and thus, under *Amchem*, they were not provided constitutionally adequate notice.  Under the Plan, these Unmanifested Asbestos Claimants would be deprived of their claims without any notice and opportunity for a determination of the merits of those claims.

The value of additional safeguards of the Unmanifested Asbestos Claimants' rights—including appointing a legal representative, and providing fair procedures for compensating those claimants when they suffer asbestos-related injuries—is apparent.  As District Court Judge Weinstein (at that time designated to hear asbestos cases in the Eastern and Southern Districts of New York), observed, "future interests are best protected 'by requiring that "fair and just recovery procedures be[] made available to [future claimants]" . . . and by ensuring that they receive vigorous and faithful vicarious representation.'"  *Findley v. Falise (In re Joint E. & S. Dist. Asbestos Litig.)*, 878 F. Supp. 473, 565 (E.D.N.Y. and S.D.N.Y. 1995) (internal citations omitted), *aff'd in part*, *vacated in part*, *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764 (2d Cir. 1996).

Indeed, Congress has recognized that due process requires safeguards to protect the interests of future, unmanifested asbestos claimants, and enacted section 524(g) of the Bankruptcy Code specifically to provide such safeguards.  This Court need not decide whether or not section 524(g) provides the exclusive route for bankruptcy treatment of future, unmanifested asbestos claims.  However, as the Third Circuit instructed in *Grossman's*, one of the factors that should be considered in determining whether unmanifested asbestos claims may be discharged is "whether it was reasonable or possible for the debtor to establish a trust for future claimants as provided by § 524(g)."  *Grossman's*, 607 F.3d at 127-28.  Here, the Debtors chose not to

establish such a trust and did not provide any other safeguards of the Unmanifested Asbestos Claimants' rights. Thus, the Unmanifested Asbestos Claims cannot be discharged.

> c. <u>The Debtors have no legitimate countervailing interest, and the public interest in ensuring equitable treatment of claimants further militates against discharge.</u>

As discussed in greater detail in Part II, below, the Asbestos Debtors have no valid bankruptcy purpose for seeking to discharge Unmanifested Asbestos Claims. They are not restructuring their debts, and have no need to discharge asbestos claims in order to have a "fresh start." Under the Plan, all asbestos claims for which proofs of claim have been timely filed would be reinstated, or "passed through" to the Reorganized Debtors. *See* Plan art. III(B)(13). The Debtors have represented to this Court that the Reorganized Debtors will be able to pay all Unmanifested Asbestos Claims as they arise in the future, regardless of how many such claims are asserted.[22] *See* Hr'g Tr. 57:12-15, Dec. 3, 2015. ██████████████████

██████████████████████████████████████████

████████████████████████ ██ ██████████████████

██████████████████████████████████████████

██████████████████████████████ ██

The Debtors' only interest in discharging the Unmanifested Asbestos Claims is to benefit equity by increasing their value and that of their controlling parent EFH Corp. at the expense of their creditors. This is not a valid bankruptcy purpose. To the contrary, it is in direct

---

[22]    *See supra* note 10 and accompanying text.

[23]    *See* ██████████████ Objectors do not concede the accuracy or reasonableness of the Debtors' estimate.

[24]    *See* ██████████████████████████████████
██████████████████████████████████████████
██████████████

contravention of the fundamental principle of bankruptcy that creditors be paid before stockholders retain equity. The Plan is simply "too good a deal" for the Debtors. *Bank of America Nat'l Trust and Sav. Ass'n v. 203 North LaSalle Street P'ship*, 526 U.S. 434, 444 (1999) (noting "the danger inherent in any reorganization plan proposed by a debtor . . . that the plan will simply turn out to be too good a deal for the debtor's owners.").

The Supreme Court has instructed that debtors should not be permitted to "use the reorganization process to gain an unfair advantage." *Id.* at 444. The Supreme Court has also instructed that a debtor should not obtain a windfall by the mere happenstance of bankruptcy. *See Butner v United States* , 440 U.S. 48, 55 (1979), *superseded in part by statute* , Bankruptcy Reform Act, Pub. L. No. 103-394, 108 Stat. 4106. Allowing the solvent Asbestos Debtors to use bankruptcy to escape their tort liabilities by extinguishing the future claims of unidentifiable and unselfconscious Unmanifested Asbestos Claimants without notice or compensation for their claims would not only violate the due process rights of claimants in these cases, it would also create a "further incentive to enter bankruptcy for reasons that have nothing to do with the purposes of bankruptcy law." *Zerand-Bernal Grp., Inc.* , 23 F.3d at 163 (holding that section 363(f) of the Code cannot be employed to extinguish future successor product-line liability claims against the purchaser in order to maximize the sale price, noting that doing so would not only "make the property of bankrupts more valuable than other property," but also "harm to third parties," and create "a further incentive to enter bankruptcy for reasons that have nothing to do with the purposes of bankruptcy law.").

Moreover, in these cases, there is no "ancillary interest of the government" that would weigh in favor of permitting discharge of Unmanifested Asbestos Claims. To the contrary: the only governmental interest relevant here is the strong governmental interest in ensuring equitable treatment of creditors and payment of their claims in bankruptcy, which dictates that the

Unmanifested Asbestos Claims cannot be discharged.  *See Stellwagen v. Clum* , 245 U.S. 605, 617 (1918) (noting bankruptcy goal of distributing the debtors' property among creditors).  In most bankruptcy cases, the bankruptcy goal of providing the debtors a fresh start will weigh heavily in favor of discharging claims for which proofs of claims were not filed.  *See id.* at 617 (noting that the bankruptcy goal of affording debtor a "fresh start" is of "great public interest").  Here, however, the Asbestos Debtors are not seeking to distribute their assets among their creditors in an equitable manner and get a fresh start.  Rather, they are seeking to shed asbestos liabilities in order to increase the value of their controlling parent, EFH Corp. [25]  That is not a valid bankruptcy purpose.

> 3.    *Unmanifested Asbestos Claims cannot be discharged in the circumstances of these cases.*

This Court need determine only whether it would violate due process to discharge the Unmanifested Asbestos Claims in the circumstances of these cases.  The Court need not decide whether unmanifested asbestos claims can ever be discharged, or the circumstances under which such a discharge may occur.  Objectors note, however, that they are not aware of any case in

---

[25]    *See* Hr'g Tr. 93:19-94:17, Dec. 5, 2016:

Q.    Paragraph 14 of your declaration talks about the marketing process. . . . "Potential interested parties repeatedly expressed both a concern about reinstating asbestos liabilities and a desire for the debtors to quantify the potential exposure of the LSGT debtors and that the Hunt consortium and NextEra urged EFH to establish a bar date 'as a means to affording some certain degree of certainty regarding the alleged asbestos related liabilities.'"

Do you recall that statement?

A.    (Mr. Horton) I do.

. . . .

Q.    So the aggregate liabilities would affect the value of the asbestos debtors, isn't that correct?

A.    (Mr. Horton)  There were liabilities so it would impact the value of the, again, negative value entity from an asbestos perspective.

which a court entered an order discharging unmanifested asbestos claims without any provisions for compensation where, as here, the debtor was aware that a significant number of such claims would arise in the future.[26]

In cases where courts have found that future, unmanifested asbestos claims could be discharged without the holders of those claims being afforded the protections of section 524(g), the courts found that the debtors had not been subject to asbestos claims pre-petition, or were not aware that significant numbers of such claims would arise in the future.  In *In re Placid Oil Co.*, for example, the Fifth Circuit noted that "no instances of asbestos-related injury or illness were known to Placid prior to confirmation."  753 F.3d 151, 157 (5th Cir. 2014).  Similarly, in *In re Chateaugay Corp.*, Nos. 86 B 11270(BRL) to 86 B 11334(BRL), 86 B 11402(BRL), 86 B 11464(BRL), 2009 WL 367490, at *6 (Bankr. S.D.N.Y. Jan. 14, 2009), the court noted "there had been no prepetition asbestos incidents or events that would suggest an awareness of a potential class of asbestos claimants."  And the court in *Castleman v. Liquidating Trustee*, No. 6:06-CV-1077 (LEK), 2007 WL 2492792, at *8 (N.D.N.Y. Aug. 28, 2007), found that "there is

---

[26]      Objectors are aware of only one other case in which a court indicated an intention to impose a bar date on future, unmanifested asbestos claims.  *In re Specialty Prods. Holding Corp.* ("***Bondex***"), No. 10-11780, 2013 WL 2177694 (Bankr. D. Del. May 20, 2013).  Unlike in these cases, the *Bondex* court appointed a legal representative for future claimants, who stated his intention to assert a claim on behalf of the unmanifested claimants.  *See* Supplement of the Future Claimants' Representative to the Joint Objection of the Committee of Asbestos Personal Injury Claimants and the Future Claimants' Representative to the Debtors' Certification of Counsel Regarding Order Establishing Bar Dates for Filing Proofs of Claim and Approving Related Relief, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (Bankr. D. Del. Jan. 2, 2014) (D.I. 4441); Hr'g Tr. 50:4-16, Dec. 17, 2013.  Significantly, the *Bondex* court never ruled that the unmanifested claims in that case would be discharged.  The parties ultimately agreed to a 524(g) plan, and a bar date was never imposed.  *See* Order Confirming the Joint Plan of Reorganization of Specialty Prods. Holding Corp., Bondex Int'l, Inc., Republic Powdered Metals, Inc. and NMBFiL, Inc., as Modified, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (Bankr. D. Del. Dec. 10, 2014) (D.I. 5261); Findings of Fact and Conclusions of Law Regarding Confirmation of the Joint Plan of Reorganization of Specialty Prods. Holding Corp., Bondex Int'l, Inc., Republic Powdered Metals, Inc. and NMBFiL, Inc., as Modified, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (Bankr. D. Del. Dec. 11, 2014) (D.I. 5262).

insufficient evidence suggesting that [the debtor] had reason to believe it was subject to mass tort litigation resulting from exposure to asbestos at the time it filed for bankruptcy or published notice of the bar date such that it could reasonably expect there to be future unknown claimants with injuries that had not yet manifested themselves."

Here, the Asbestos Debtors were subject to a significant number of asbestos claims pre-petition, and the Debtors do not dispute that a significant number of such claims will arise in the future: ███████████████████████████████████████████████████████

████████████████████[27] When the Debtors opposed the appointment of a legal representative for Unmanifested Asbestos Claims, they told this Court, *inter alia*, that these bankruptcy cases are not driven by asbestos liabilities, and that their asbestos liabilities are not material.[28] More recently, they told the Court that the Asbestos Debtors' bankruptcies were asbestos-driven after all. According to the Debtors, the Asbestos Debtors "had no realistic alternative to filing for bankruptcy" because they were about to be overwhelmed by their asbestos liabilities: "the impending bankruptcy filing of the other Debtors risked cutting off the sole cash source to fund asbestos liabilities."[29] ███████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

---

[27]    *See* ████████████████████ Objectors do not concede the reasonableness or accuracy of this estimate or its underlying assumptions, and contend that the Debtors' aggregate liability for current and future asbestos claims will prove to be significantly higher.

[28]    *See* Objection of Energy Future Holdings Corp., *et al.*, to the Motion of Charlotte Liberda and Curtis Liberda to Appoint Legal Representative and Joinder of Shirley Fenicle, as Successor-in-Interest to the Estate of George Fenicle, and David William Fahy to the Motion of Charlotte and Curtis Liberda to Appoint Legal Representative ¶ 8, Aug. 4, 2015, D.I. 5209.

[29]    Opposition of Energy Future Holdings Corp., *et al.*, to the Motion of Shirley Fenicle, David William Fahy, John H. Jones, and David Heinzmann to Dismiss Chapter 11 Petitions of Asbestos Debtors EECI, Inc., EEC Holdings, Inc., LSGT SACROC, Inc., and LSGT Gas Co. LLC Pursuant to 11 U.S.C. § 1112(b), ¶¶ 2, 33, Nov. 23, 2016, D.I. 10249.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

The proposed Plan would address those claims in a manner that would violate the due process rights of large numbers of Unmanifested Asbestos Claimants.  Rather than propose a plan that would deal fairly with all of the asbestos claims, current and unmanifested, the Debtors chose to propose a Plan under which asbestos claims for which proofs of claim were filed would be reinstated, while large swathes of Unmanifested Asbestos Claims would be discharged without compensation, in order to reduce the total liability for asbestos claims that would pass-through to the Reorganized Asbestos Debtors, and thus make their controlling parent, EFH Corp. more attractive to bidders.[31]  As Mr. Moldovan put it, establishing a bar date (and, ultimately, discharging claims) was "the path to getting a plan sponsor to agree to purchase EFH."  Hr'g Tr. 135:8-11, Dec. 5, 2016.  And discharging as many claims as possible was the path to increasing the purchase price.

The Debtors chose not to propose a Plan for the Asbestos Debtors that satisfies the requirements of section 524(g), under which all asbestos claims would be channeled to a Trust and fairly compensated.  That is their prerogative.  But it is not their prerogative to run roughshod over the rights of absent Unmanifested Asbestos Claimants and discharge their claims without compensation.  Such a discharge would result in a windfall to solvent Asbestos Debtors

---

[30] ████████████████████████████████████████████████████
████████████████████████████████

[31]      *See supra* note 25.

and their controlling parent at the expense of their tort victims.[32]  The Debtors seek to obtain this windfall through the pretense that they have provided "notice" to unidentifiable and unselfconscious Unmanifested Asbestos Claimants, while opposing all efforts of the Objectors and others to ensure that the rights of these claimants are represented and their claims are preserved.  This Court should not tolerate the Debtors' "efforts to sandbag" a large group of creditors.  *Waterman*, 141 B.R. at 558.  Under the circumstances of these cases, the mandates of due process do not permit the discharge.  The Plan cannot be confirmed.

>        **D.**    **Retrospective reinstatement of claims cannot cure violation of the due process rights of Unmanifested Asbestos Claimants.**

At the previous confirmation hearing, this Court acknowledged the likelihood that certain Unmanifested Asbestos Claimants would be able to successfully challenge the discharge of their claims after confirmation on the ground that their due process rights had been violated.  Nonetheless, the Court confirmed the prior plan which, like the present Plan, would have discharged such claims, holding that "[t]he fact that there may be unmanifested claimants for whom the bar date, as applied to their specific case may not comport with due process, is simply irrelevant.  As long as the notice given by the Debtors is reasonably calculated, the bar date is facially constitutional."  Hr'g Tr. 59:6-11, Dec. 3, 2015.  The Court continued:

> [T]he standard of due process here is prospective.  It is entirely possible that an unmanifested claimant may bring a claim after the bar date, argue the Debtors' notice scheme was unconstitutional, as applied to her, and be correct in that argument.  She would have her claim reinstated and the Debtors would then be free to dispute its validity and/or her damages.  But that is a retrospective determination, an unconstitutional, as applied, determination.  That determination is irrelevant to whether the Debtor's notice scheme prospectively satisfies due process.

---

[32]    *Cf. Butner*, 440 U.S. at 55 (noting that debtors should not receive a windfall because of the happenstance of bankruptcy).

*Id.* at 62:15-25.  In so ruling, the Court adopted an argument made previously by the Debtors that, under the Third Circuit's decision in *Grossman's*, an analysis of whether the discharge of Unmanifested Asbestos Claims violates due process must be made retrospectively, on a case-by-case basis, and cannot be made prospectively, before the Plan is confirmed and the claims discharged.

Objectors respectfully submit that the Debtors led this Court into error with a mischaracterization of the Third Circuit's decision in *Grossman's*.  Nowhere in its opinion does the Third Circuit even suggest that a bankruptcy court may confirm a plan that would discharge unmanifested asbestos claims even though, as in these cases, it is clear that the discharge would violate the due process rights of the holders of those claims.

The plan of reorganization in *Grossman's* was confirmed in December 1997.  Almost 10 years later, Mary Van Brunt, who had been exposed to Grossman's asbestos products pre-petition, was diagnosed with mesothelioma.  She and her husband sued Grossman's successor in interest, JELD-WEN.  Relying on the Third Circuit's decision in *Frenville*,[33] both the bankruptcy and district courts found that, when the plan was confirmed in 1997, the Van Brunts did not hold "claims" within the meaning of section 101(5) of the Bankruptcy Code, as their claims had not accrued under state law until 2007, when Ms. Van Brunt was diagnosed, and therefore their claims were not discharged at confirmation.  The Third Circuit reversed, overruling the *Frenville* "accrual" test for when a claim arose, and holding that a bankruptcy claim arises "when an individual is exposed pre-petition to a product or other conduct giving rise to an injury." *Grossman's*, 607 F.3d at 125.  Thus, the court held, the Van Brunts' bankruptcy claims arose pre-petition. *Id.*

---

[33]    *Avellino v. M. Frenville Co.    (In re M. Frenville Co.*), 744 F.2d 332 (3d Cir. 1984), *overruled by JELD-WEN, Inc. v. Van Brunt* (*In re Grossman's, Inc.*), 607 F.3d 114.

The court emphasized, however, that its ruling "d[id] not necessarily mean that the Van Brunts' claims were discharged by the Plan of Reorganization." *Id.* The court remanded the matter to the district court, noting that the determination of whether the claims were discharged "depends on factors applicable to the particular case and is best determined by the appropriate bankruptcy court or the district court." *Id.* at 127. The court also noted a number of factors that the lower court "may wish to consider" in making that determination:

> [T]he circumstances of the initial exposure to asbestos, whether and/or when the claimants were aware of their vulnerability to asbestos, whether the notice of the claims bar date came to their attention, whether the claimants were known or unknown creditors, whether the claimants had a colorable claim at the time of the bar date, and other circumstances specific to the parties, including whether it was reasonable or possible for the debtor to establish a trust for future claimants as provided by § 524(g).

*Id.* at 127-28.[34]

It is not surprising that, when it issued the confirmation order, the bankruptcy court in *Grossman's* did not consider the due process rights of unmanifested asbestos victims. Nor is it surprising that the confirmation order in that case was not appealed on the grounds that it violated the due process rights of those victims: under the *Frenville* "accrual" test that was controlling law at that time, it was understood that unmanifested asbestos victims did not even hold bankruptcy "claims." It was only when the Third Circuit overruled *Frenville* and changed the definition of "claim" that the question of whether the Van Brunts' claims could be discharged even arose.

Nothing in the Third Circuit's opinion in *Grossman's* can be read as supporting the proposition that, before issuing an order confirming a reorganization plan, a court cannot

---

[34]    The question of whether the claims had been discharged was never presented to the District Court, as the parties in *Grossman's* settled. *See* Notice of Settlement, *JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.)*, No. 07-51602 (Bankr. D. Del. June 28, 2011) (D.I. 71).

consider whether, under the circumstances of the cases, the discharge of claims under the plan would violate the due process rights of absent, unidentifiable, and unmanifested asbestos claimants.  Nor does *Grossman's* support the proposition that a court may consider the due process issue retrospectively only, on a case-by-case basis, when individual claimants challenge the purported discharge of their claims.  Indeed, such a rule would be directly contrary to the Supreme Court's decision in *Doehr*, which teaches that, before issuing an order that would deprive a person of property without notice, a court must ensure that the order comports with due process.

The purpose of the due process clause is to prevent or minimize unfair or erroneous deprivations of property.  If the Plan is confirmed and Unmanifested Asbestos Claims are discharged, such unfair and erroneous deprivations certainly will occur.  It is undisputed that Unmanifested Asbestos Claimants, such as Mr. Jones and Mr. Heinzmann, have suffered injuries caused by exposures to the Debtors' asbestos, and more will suffer injuries in the future.  It is also undisputed that those who will suffer injury in the future cannot be identified, even by themselves, until their illnesses are diagnosed.  They were not—and could not be—provided constitutionally adequate notice, no legal representative was appointed to represent their interests,[35] no provision was made for their compensation, and no other steps were taken to safeguard their rights.  Thus, the discharge of their claims would not comport with due process, and the Plan cannot be confirmed.

---

[35]    *See Covey*, 351 U.S. at 146 ("Notice to . . . an incompetent who is without the protection of a guardian does not measure up" to the requirements of due process.).

## II.    THE PLAN CANNOT BE CONFIRMED BECAUSE IT WAS NOT PROPOSED IN GOOD FAITH.

Section 1129(a)(3) provides that a plan cannot be confirmed unless it "has been proposed in good faith." 11 U.S.C. § 1129(a)(3). In *In re WR Grace & Co.*, the Third Circuit instructed that "'the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'" 729 F.3d 332, 346 (3d Cir. 2013) (internal citations omitted). A plan will be found to have been proposed in good faith where it "'(1) fosters a result consistent with the [Bankruptcy] Code's objectives . . . (2) has been proposed with honesty and good intentions and with a basis for expecting that reorganization can be effected . . . and (3) [exhibited] a fundamental fairness in dealing with the creditors.'" *In re W.R. Grace & Co.*, 475 B.R. 34, 87-88 (D. Del. 2012) (citing *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001)), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013). *See also In re ACandS, Inc.*, 311 B.R. 36, 43 (Bankr. D. Del. 2004) ("The good faith standard requires that the plan be 'proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code.'") (internal citations omitted).

Here, insofar as it would discharge Unmanifested Asbestos Claims without compensation or other safeguards of the claimants' rights, the Plan is not consistent with the general objectives of the Bankruptcy Code. The objectives and purposes of the Bankruptcy Code include "'preserving going concerns and maximizing property available to satisfy creditors,'" "'the expeditious liquidation and distribution of the bankruptcy estate to its creditors,'" and "'achieving fundamental fairness and justice.'" *Grace*, 729 F.3d at 346 (internal citations omitted). Instead of dealing fairly with, and distributing their estates to, their asbestos victims, the Debtors have put forward a plan that would purport to discharge the future claims of large

swathes of those victims without compensation, and without constitutionally adequate notice or other safeguards of their rights, all for the benefit of equity.  The Plan thus runs directly counter to the bedrock principle of bankruptcy law that a debtor should not receive "a windfall merely by reason of the happenstance of bankruptcy." *Butner*, 440 U.S. at 55 (internal citations omitted).

The Plan was not proposed with the requisite honesty and good intentions.  *See Grace*, 475 B.R. at 88 ("The Third Circuit provides the Court with guidance on this point, stating that '[a]t its most fundamental level, the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy[.]'" (quoting *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004))).  Here, as shown above, the aims of the Plan are antithetical to the purposes of bankruptcy, as it would discharge claims without compensation, in order to benefit equity.

Finally, in discharging claims without notice or compensation, the Plan does not exhibit the requisite fundamental fairness to all creditors.  "In order to satisfy this requirement, the plan must treat all parties fairly and ensure that its confirmation comports with due process." *Grace*, 475 B.R. at 89 (internal citations omitted).  "A lack of good faith is evident when 'the debtor seeks to delay or frustrate the legitimate efforts of creditors to enforce their rights.'" *Id.* (internal citations omitted).  Here, as shown in Part I above, the Plan does not comport with due process, and would prevent claimants from enforcing their rights.  Thus the Plan cannot be confirmed.

As debtors-in-possession, the Asbestos Debtors "bear[] essentially the same fiduciary obligation to the creditors as does the trustee for the Debtor out of possession." *Wolf v. Weinstein*, 372 U.S. 633, 649 (1963); *see also In re G-I Holdings, Inc* ., 385 F.3d 313, 319 (3d Cir. 2004) ("[D]ebtor-in-possession is a fiduciary of the creditors.").   "[T]hese fiduciary responsibilities fall . . . upon the officers and managing employees who must conduct the Debtor's affairs under the surveillance of the court." *Wolf*, 372 U.S. at 649-50.  "Indeed, the

34

willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'" *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) (internal citations omitted). The debtor's "duty of loyalty . . . includes an obligation to refrain from self dealing, to avoid conflicts of interests and the appearance of impropriety." *In re Coram Healthcare Corp.*, 271 B.R. 228, 235 (Bankr. D. Del. 2001).

A plan cannot be confirmed where it would benefit controlling stakeholders who were the primary drafters of the plan, to the detriment of another group of stakeholders. Thus, for example, in *ACandS*, the bankruptcy court found that the plan was not proposed in good faith because it had been drafted primarily by and for the benefit of a group of claimants, to the detriment of other claimants. "[G]iven . . . the obvious self-dealing that resulted from control of the debtor," the court held, "it is impossible to conclude that the plan was consistent with the objectives and purposes of the Bankruptcy Code." *ACandS*, 311 B.R. at 43; *W.R. Grace*, 729 F.3d at 348 (discussing *ACandS*).

Here, too, the Plan would benefit the Asbestos Debtors' controlling shareholder, and evidences "obvious self-dealing that resulted from control of the debtor." *ACandS*, 311 B.R. at 43. The Debtors' "'job . . . is to make sure the creditors are paid.'" *In re Furley's Transp., Inc.*, 272 B.R. 161, 176-77 (Bankr. D. Md. 2001), *aff'd*, 306 B.R. 514 (D. Md. 2002) (internal citations omitted). But rather than ensure that all of their creditors will be paid, the Asbestos Debtors are seeking to shed their liabilities for Unmanifested Asbestos Claims—and parent Debtor EFH Corp. and the other Debtor affiliates are seeking to shed any successor-in-interest or similar derivative liability for such claims—without compensation. The discharge serves only one interest—that of EFH Corp.—at the expense of the asbestos victims. This kind of self-dealing precludes a finding of good faith.

The Debtors have no valid reorganizational purpose for discharging these claims.  They have maintained throughout these bankruptcy cases that their asbestos liabilities are not material, and that the Asbestos Debtors will have sufficient funds to pay all such liabilities.[36]  The Debtors have also consistently maintained that asbestos liabilities would not be an impediment to feasibility even if no claims were barred by the discharge provisions of the Plan, and all Unmanifested Asbestos Claims were passed-through to the Reorganized Debtors.  When Ms. Fenicle and Mr. Fahy objected to confirmation of the previous plan on feasibility grounds, pointing out that the bar date was after the confirmation hearing, and that the claims that had not been liquidated could result in a significant liability that had not been estimated,[37] the Debtors stated the asbestos liabilities were forecastable and that "[i]n the context of th[eir] $42 billion reorganization, that liability is no[t an] impediment to feasibility, no matter the ultimate size of Class A3 [asbestos claims against the EFH Debtors] (including any Claims filed between confirmation and the asbestos bar date)."  Debtors' Omnibus Reply to Plan Confirmation Objections ¶ 174, Oct. 31, 2015, D.I. 6817.  ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████  ██  ██

████████████████████████████████████████████████████████

---

[36]    *See supra* note 10 and accompanying text.

[37]    Trial Brief and Omnibus Objection of Fenicle and Fahy to (I) Motion of Energy Future Holdings Corp., *et al.*, to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement and (II) Confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.* ¶¶ 38-39, Oct. 23, 2015, D.I. 6610.

[38]    *See* ████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████[39]

This Court's previous ruling that the Asbestos Debtors filed their bankruptcy petitions in good faith[40] does not determine whether the Plan was proposed in good faith.  As the Third Circuit has instructed:

> A prior determination that a bankruptcy petition was filed or proceeded in good faith does not necessarily preclude a later inquiry into whether a plan under that petition is proposed in good faith for purposes of confirmation.  The question of whether a Chapter 11 bankruptcy petition is filed in good faith is a judicial doctrine, distinct from the statutory good faith requirement for confirmation pursuant to § 1129(a)(3). . . . It might be that a bankruptcy case which is filed and proceeds in good faith nevertheless results in a plan that does not fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

*Am. Capital Equip.*, 688 F.3d at 157.

The Plan here "does not fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code."  It would allow the Asbestos Debtors to shed significant asbestos liabilities without compensating their asbestos victims.  Indeed, that is the only change to the Asbestos Debtors' assets and liabilities made by the Plan as it relates to the Asbestos Debtors:  the Reorganized Asbestos Debtors would remain separate corporate entities, wholly-owned by Reorganized EFH Corp., which, in turn, will be wholly owned by NextEra, Inc., and all claims against the Asbestos Debtors would be reinstated, other than claims for which no proofs of claim were filed, including the claims of large swathes of Unmanifested Asbestos Claimants.  *See* Plan art. III(B)(3)(13).  It is fundamentally unfair, and violative of due process, to discharge the claims of absent Unmanifested Asbestos Claimants who have no estate fiduciary

---

[39]     Ying, ████████████

[40]     *See* Opinion, Dec. 19, 2016, D.I. 10414.  That decision is on appeal to the District Court. Notice of Appeal, No. 1:17-cv-00009 (D. Del. Jan. 4, 2017) (D.I. 1).

to represent their interests, without compensating those claimants, while all other claims are paid in full, and the Debtors and their controlling parent retains value. As in *ACandS*, it is "impossible to conclude that this plan is imbued with fundamental fairness." *ACandS*, 311 B.R. at 43. Allowing the Debtors to have confirmed a Plan that would discharge Unmanifested Asbestos Claims in the circumstances of these cases would permit a perversion of reorganization law and an abuse of the bankruptcy process.

The Supreme Court has instructed that a bankruptcy court "in the exercise of its equitable jurisdiction . . . has the power . . . to see that injustice or unfairness is not done in administration of the bankrupt estate." *Pepper v. Litton*, 308 U.S. 295, 307-08 (1939). The Court should exercise that power here, and deny confirmation.

## **CONCLUSION**

For the foregoing reasons, Objectors respectfully submit that the Plan cannot be confirmed.

Dated:  February 3, 2017
   Wilmington, Delaware

Respectfully submitted:


By:
*/s/ Daniel K. Hogan*
Daniel K. Hogan (DE Bar # 2814)
HOGAN MCDANIEL
1311 Delaware Avenue
Wilmington, Delaware  19806
Telephone:  (302) 656-7540
Facsimile: (302) 656-7599
dkhogan@dkhogan.com

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, and David Heinzmann*

-and-

Leslie M. Kelleher (admitted *pro hac vice*)
Jeanna M. Koski (admitted *pro hac vice*)
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, DC 20005
Telephone: (202) 862-5000

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle and David William Fahy*


-and-

Steven Kazan (admitted *pro hac vice*)
KAZAN MCCLAIN SATTERLEY & GREENWOOD
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
Telephone: (510) 302-1000
Facsimile: (510) 835-4913

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle*

39

-and-

Ethan Early (admitted *pro hac vice*)
EARLY LUCARELLI SWEENEY &
MEISENKOTHEN
265 Church Street, 11th Floor
New Haven, CT 06508-1866
Telephone: (203) 777-7799
Facsimile: (203) 785-1671

*Counsel for David William Fahy*

-and-

Jonathan Ruckdeschel (admitted *pro hac vice*)
THE RUCKDESCHEL LAW FIRM LLC
8357 Main Street
Ellicott City, MD 21043
Telephone:  410-750-7825
Facsimile: 443-583-0430

*Counsel for David Heinzmann*

-and-

Beth Gori
Gori Julian & Associates, P.C.
156 North Main Street
Edwardsville, IL 62025
Telephone: (618) 659-9833
Facsimile: (618) 659-9834

*Counsel for John H. Jones*