# **<u>EXHIBIT 6</u>**

Page 1

1                ANTHONY HORTON
2    UNITED STATES BANKRUPTCY COURT
3    FOR THE DISTRICT OF DELAWARE
     ------------------------------------x
4    In Re:
     Energy Future Holdings Corporation, et.,
5
                    Debtors.
6
     Chapter 11
7    Case No. 14-10979
     Jointly Administered
8
9    ------------------------------------x
10
11        DEPOSITION OF ANTHONY HORTON
12            New York, New York
13            January 20, 2017
14
15
16
17
18
19
20
21
22
23   Reported by:
24   KATHY S. KLEPFER, RMR, RPR, CRR, CLR
25   JOB NO. 117929

Case 14-10979-CSS   Doc 10762-6   Filed 02/03/17   Page 3 of 6

Page 40

1                ANTHONY HORTON

2  them putting $1 aside and taking funds out of

3  the claims reserve account in order to pay the

4  professional fees.

5      Q.   Mr. Horton, I understand you're not a

6  lawyer, and this, frankly, may be more in Mr.

7  Wright's purview, but are you aware of any

8  provision in the plan that enables the Court to

9  override the determination by the EFH Plan

10 Administrator Board as to the amount of the

11 reserve for the professional fees of the board

12 and MLOC?

13          MR. McKANE:  Object to the form of the

14      question.  It calls for a legal conclusion.

15     A.   As you stated, I am not a lawyer.

16 It's my understanding, if you looked at Article

17 XI of the plan, that the Court will retain

18 jurisdiction over the confirmation order itself,

19 and there's several, you know, items and

20 paragraphs within that article that provides

21 that the Court has jurisdiction over the

22 confirmation plan, confirmation order, and

23 there's sections within that.

24          I would suggest that you spend some

25 time with Mr. Wright on the exact paragraphs.  I

Case 14-10979-CSS Doc 10762-6 Filed 02/03/17 Page 4 of 6

Page 97

1                    ANTHONY HORTON

2    rehearing that is pending should be withdrawn?

3        A.    Not that I'm aware of.

4        Q.    Have the debtors had any discussion

5    with the PIKs about whether, assuming the

6    petition for rehearing is denied, the MLOC will

7    direct a petition to be filed in the U.S.

8    Supreme Court seeking review of the Third

9    Circuit's decision?

10       A.    I know that there have been

11   discussions amongst the -- amongst K&E, Akin

12   about litigation strategies, and what I would

13   say generally coming out of those conversations

14   has been that the PIKs want to keep all of their

15   options open at this point in time.

16       Q.    Your last answer may be the same to

17   this question:  Have there been any discussions

18   with the PIKs or their counsel regarding

19   whether, if the Third Circuit decision becomes

20   final, they will continue to challenge the

21   make-whole claims?

22       A.    Again, I would say that a lot of

23   conversations regarding litigation strategy the

24   PIKs continue to want to keep all of their

25   options open.

1                    ANTHONY HORTON
2      Q.    And your understanding is they want to
3  keep their options open, for example, to
4  commence a Phase 2 of the make-whole litigation,
5  right?
6      A.    I don't know if it's specifically
7  Phase 2.  I would just say it encompasses all
8  options.
9      Q.    They want to keep, as you understand
10 it, all options on the table?
11     A.    There's a lot of uncertainty here, and
12 when there's uncertainty, options are very
13 valuable.
14     Q.    That's not my question.
15     A.    I just was clarifying.
16     Q.    I understand the value, theoretically,
17 of options or lack thereof.
18           Your understanding, based on the
19 communications the debtors have had with the
20 PIKs, is the PIKs want to keep all options as to
21 all potential challenges to the make-whole
22 claims available to them, right?
23     A.    Yes.
24     Q.    And they're not prepared today in
25 connection with the Bankruptcy Court's setting

1                    ANTHONY HORTON

2   of the reserve to set any limits on those

3   options, as far as you know, correct?

4        A.   That's correct.

5        Q.   I just have a few followup questions,

6   Mr. Horton.

7             You mentioned earlier that Kirkland --

8   that the debtors asked Kirkland to commission a

9   study of the length of litigation.  When did the

10  debtors do that?

11       A.   I'm going to say -- let me think about

12  the timeline.

13            I think the -- clearly, we had some

14  conversations as early as November 18 at a board

15  meeting, the day after the Third Circuit ruling,

16  we had a board meeting the very next day, talked

17  about litigation strategy in that --

18            Do you want me to finish or --

19       Q.   Yes.

20       A.   You know, in that board meeting, as I

21  discussed earlier, they talked about litigation

22  strategy, length, potential length of time, so

23  forth.  Somewhere around -- we were actually in

24  a board meeting on December 16, and we were

25  looking to approve what I would call the 24-hour