# **EXHIBIT 8**

1         PAUL M. KEGLEVIC
2  UNITED STATES BANKRUPTCY COURT
3  FOR THE DISTRICT OF DELAWARE
   ------------------------------------x
4  In Re:
   Energy Future Holdings Corporation, et.,
5
            Debtors.
6
   Chapter 11
7  Case No. 14-10979
   Jointly Administered
8
9  ------------------------------------x
10
11      DEPOSITION OF PAUL M. KEGLEVIC
12          New York, New York
13          January 18, 2017
14
15
16
17
18
19
20
21
22
23 Reported by:
24 KATHY S. KLEPFER, RMR, RPR, CRR, CLR
25 JOB NO. 117928

1                PAUL M. KEGLEVIC

2  reorganization channels the -- any recovery as

3  against the debtors of the first liens and the

4  second liens to the EFIH claim reserve?

5           MR. McKANE:  Objection to form.

6       A.   Well, my understanding of your

7  question is, yes, the EFIH claim reserve is the

8  pool of funds that the EFIH first and second

9  liens have to draw against to satisfy their

10 claims, but one of the important elements is --

11 two important elements that we have in the

12 agreement that provide protection to the EFIH

13 first and second lien claims are that, number

14 one, if the court decides that the three years

15 is not adequate, the number of the pool can get

16 bigger.

17           Regardless of the size of the pool of

18 the claim reserve stays under the jurisdiction

19 of the court, so to the extent that those fund

20 are eaten away in a way that provides your

21 clients' concern -- and I'm sure, Mr. Anker, we

22 can rely on you to be monitoring that with a

23 great degree of diligence -- you have the

24 opportunity to go into court at that time and

25 ensure that those funds never get to the -- to

1                    PAUL M. KEGLEVIC
2  zero or to a point where you're concerned about
3  your recovery, and I think those were important
4  provisions to me and to our board as we approved
5  the settlement.
6       Q.   Well, let me make sure I understand
7  the second point, because I really don't.
8            Is there any provision of the plan
9  that I've missed in which anyone is guaranteeing
10 the adequacy of that reserve?
11      A.   There's not a guarantee, but there is
12 certainly recourse with the court if the funds
13 get below a level that indicate that there will
14 not be full recovery.
15      Q.   Has NextEra agreed that the
16 reorganized debtors will be obligated if there's
17 a shortfall?
18      A.   It has nothing to do with NextEra.
19      Q.   Can you answer my question?
20           Has NextEra agreed that there --
21      A.   No, NextEra has not agreed.
22      Q.   Do you know of any provision in the
23 plan that imposes any liability, contingent or
24 otherwise, on the reorganized debtors if there's
25 a shortfall?

1              PAUL M. KEGLEVIC
2      A.    The plan provides an opportunity to go
3  to the Court and to make sure that those funds
4  remain sufficient down the road as the appeal
5  process takes place.  So that if the Court deems
6  that somewhere down the road that these funds
7  would be exhausted before payment of the claims,
8  the Court has, I believe -- and I'm not a
9  lawyer -- the jurisdiction to stop the appeal
10 activities, require bonds, or take some other
11 actions to make sure that your clients receive
12 their full claims.
13     Q.    Have the PIKs agreed that they will
14 backstop, to your knowledge -- let me rephrase
15 the question.
16           To the best of your knowledge, have
17 the PIKs agreed that, under any circumstances,
18 they will have liability if that escrow account
19 is drawn down and becomes inadequate?
20     A.    That's not a contractual liability
21 with the PIKs.  It's a process by which the
22 Court would have jurisdiction to get to the
23 outcome.
24     Q.    And you don't know what the Court
25 would do, do you, Mr. Keglevic?

1              PAUL M. KEGLEVIC
2    interest effect.
3         Q.   And so if, for example, the reserve
4    were set at three years, and the Court approved
5    it, but it turned out that the litigation lasted
6    four years, not three years, the reserve
7    potentially could be underfunded by close to
8    $200 million, correct?
9         A.   There's a lot of hypotheticals.  I
10   would hope -- and this ties back to the answer I
11   have given -- that to the extent -- the concept
12   was not to give the PIKs a free ride by using
13   funds that would otherwise be needed to pay the
14   first and second liens.  I'm sure you would make
15   that argument to the Court, and it is certainly
16   something that we understand.
17             Our intention in the plan is to fully,
18   and I guess the legal term is indubitably pay
19   the first and second lien claims, including
20   interest and interest on interest, so we have
21   come up with what we thought was a reasonable
22   timeframe, and we thought that if that wasn't,
23   the Court still could change the amount and,
24   finally, the Court could have jurisdiction over
25   the agreement and make amendments so as to not

1              PAUL M. KEGLEVIC
2  provide for what I'm sure you're concerned about
3  is a free-rider situation.
4      Q.   Let me go back to my question, which,
5  with all due respect, I don't think you have
6  answered.
7           If the Court sets a reserve of three
8  years, and I understand the Court may set a
9  longer reserve, but if the Court sets a reserve
10 of three years, and the litigation goes for four
11 years, not three years, and there's not some
12 ability later to bring in new money, doesn't the
13 math work that there could be a shortfall of
14 approximately $200 million in the reserve?
15          MR. McKANE:  Object to the form,
16      incomplete hypothetical, and to the extent
17      you're asking him to do math, as we all have
18      agreed is the subject of financial experts
19      and were provided in expert reports and
20      therefore is an inappropriate opinion.
21     Q.   You may answer.
22     A.   Number one, and just to be clear, I
23 don't agree with the hypothetical, but if the
24 hypothetical is correct, of course, we
25 calculated the reserve on three years.  If it