**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Energy Future Holdings Corp., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Hearing Date: February 14, 2017 at 10:00 a.m. |
| | ) | Objection Deadline: February 3, 2017 at 2:00 p.m. |
| | ) | Re: Docket No. 10551 |

**LIMITED OBJECTION OF THE AD HOC GROUP OF TCEH UNSECURED NOTEHOLDERS TO CONFIRMATION OF THE SEVENTH AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP.,** ***ET AL.****,* **PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The Ad Hoc Group of TCEH Unsecured Noteholders (the "Ad Hoc Group") hereby files its limited objection to confirmation of the *Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10551] (the "Plan") as it relates to the EFH/EFIH Debtors.[2] The Ad Hoc Group respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The Ad Hoc Group hereby renews its objections as set forth in the *Limited Objection of the Ad Hoc Group of TCEH Unsecured Noteholders to Confirmation of the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Amended and Restated Plan Support Agreement, dated September 19, 2016 [D.I. 9584-4] (the "E-side PSA"), as applicable.

*Chapter 11 of the Bankruptcy Code* [D.I. 10154], which objections remain unresolved despite numerous subsequent amendments to the Plan.

2. Pursuant to the now-consummated T-side plan, holders of T-side unsecured claims are the holders of the beneficial interest in substantially all of the prepetition equity of EFH Corp. Those equity interests are being cancelled under the Plan without distribution. Despite that economic reality, the Ad Hoc Group has patiently stood back, without protest, and allowed the EFH/EFIH Debtors to pursue their long-awaited emergence from chapter 11 pursuant to the Plan. Indeed, if that Plan had any sponsor other than NextEra Energy, Inc. ("NextEra"), or if NextEra was not insisting on an expansive third-party release on behalf of itself and dozens of other parties, the Ad Hoc Group would have no objection to the Plan at all. But NextEra *is* the Plan's sponsor, and as set forth herein NextEra *is* overreaching for releases in an attempt to avoid potential liability for what the Ad Hoc Group believes may have been substantial efforts to frustrate consummation of the *Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 7285-1] (the "Hunt Plan").

3. As the Court is well aware, in November 2015, NextEra filed a *Statement of NextEra Energy, Inc. with Respect to Pending Confirmation Matters and Feasible Alternative Restructuring* [D.I. 7028] (the "Statement") on the docket of the Chapter 11 Cases. That Statement informed all parties-in-interest that NextEra was willing to consummate a transaction with the Debtors that did not utilize a REIT structure but nonetheless portended to pay E-side creditors in full or otherwise unimpair them. Given its filing during the confirmation hearing on the Hunt Plan, the Statement, at the very least, appears to have been intended to influence certain of the Debtors' creditors to press objections to confirmation or to have the Court block the Hunt

Plan as being not feasible. Perhaps. But the Statement may have had another far more harmful effect in another jurisdiction.

4. As the Ad Hoc Group informed the Court repeatedly in the run up to confirmation of the Hunt Plan, the prospect of an alternate, less complicated, more traditional, but value constrained disposition of the Debtors' interests in Oncor was always going to impact severely and negatively the likelihood of the Hunt Plan garnering regulatory approval in Texas. NextEra knew this, just as it knew that it was prohibited by Texas law from having any ex parte contact with commissioners of the Public Utility Commission of Texas (the "PUC") while the application for approval of the Hunt Plan transaction was pending before the PUC.

5. Based on the limited information that it has uncovered to date (and again, the Ad Hoc Group is not seeking to turn this confirmation hearing into a sideshow), the Ad Hoc Group believes that NextEra may have intended to use the Court's docket as a means of communicating directly with the PUC. NextEra, a Florida corporation, had no standing on its own to appear before the PUC. It, however, certainly knew that the PUC was actively monitoring this Court's docket, and certainly intended to declare publicly that there was an alternate structure that might convince the PUC commissioners to pass on the Hunt Plan application. All NextEra had to say in the Statement was that it was ready, willing and able to close into a traditional structure and still pay all of the EFH/EFIH Debtors' creditors in full.[3]

6. From the Ad Hoc Group's perspective, the reasons why the Hunt Plan did not receive PUC approval should be entirely irrelevant to the Court's approval of the present Plan. NextEra, however, is insisting otherwise. As part of the Plan, it is seeking to have the Court absolve it of any liability for its prior conduct in the Chapter 11 Cases, even if, in fact, it actively

---

[3] In that regard, it is somewhat remarkable that all of the E-side creditors who are now receiving far less than payment in full seem willing to release NextEra from its prior commitments made in the Statement.

and illegally interfered with the consummation of the Hunt Plan and destroyed billions of dollars of distributable value in its fervent pursuit of Oncor.

7.  As previously discussed with the Court in connection with confirmation of the *Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9612], NextEra opened the bidding by insisting that the order confirming that plan include a finding that NextEra has acted in good faith "in all respects in connection with the Chapter 11 Cases."  Only after the Ad Hoc Group refused to drop the issue did NextEra finally agree to eliminate any such proposed finding from the confirmation order.[4]  That modification, carried through to this Plan, now makes clear that this Court is not in any way addressing NextEra's conduct prior to the termination of the Hunt Plan.  However, NextEra has remained unwilling to modify or eliminate other Plan provisions that could impact claims and Causes of Action that the members of the Ad Hoc Group, T-side creditors or the other Original Plan Sponsors may have against NextEra, its Affiliates and their agents.

8.  More specifically, as set forth below, NextEra has insisted that, as a condition to consummation of the Plan, the Court (1) must provide all of its officers, directors, employees, agents and affiliates with non-consensual third-party releases for any and all conduct relating to the Chapter 11 Cases, and (2) must provide NextEra itself with a non-consensual third-party release of any and all claims relating to the Chapter 11 Cases other than those specifically

---

[4]   The Ad Hoc Group objected to such a proposed finding as it would have applied to conduct in connection with the Hunt Plan – not just the Plan – and is beyond what is permitted under section 363(m) of the Bankruptcy Code.  See 11 U.S.C. § 363(m) (providing that reversal or modification on appeal of an authorization of a sale under section 363(b) does not affect the validity of the sale "to an entity that *purchased* . . . such property in good faith") (emphasis added); In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986) ("'The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct *in the course of the sale proceedings*.'") (emphasis added) (citation omitted); Sheehan v. Dobin, Civ. Action No. 10-5054 (FLW), 2011 U.S. Dist. LEXIS 46004, at *9 (D.N.J. Apr. 28, 2011) ("Typically, 'good faith' involves the integrity of the purchaser *in the course of conduct at the sales proceedings*.") (emphasis added) (citation omitted).

4

relating to "the Debtors' pursuit of regulatory approvals" under the Hunt Plan (although, in fact, it was Oncor Electric, not the Debtors, that sought regulatory approval from the PUC).

9. Consistent with its desire not to impact confirmation of the E-side Plan, the Ad Hoc Group has maintained a light presence and has taken extremely limited discovery to determine whether the relief being requested by NextEra is appropriate. Most notably, the Ad Hoc Group deposed Mr. Mark Hickson, NextEra's lead officer on the Oncor acquisition, in connection with the prior plan. NextEra subsequently designated substantially all of the questions and Mr. Hickson's answers in that eighty-page deposition as "Confidential." Indeed, despite numerous meet and confers with its counsel, NextEra refused to de-designate any of that testimony, even though it covers non-confidential matters such as:

- Which officers of NextEra were placed in charge of the Oncor acquisition beginning in 2014;
- How those officers learned of the Hunt Plan, which interfered with their acquisition plans;
- What those officers' initial reactions were to the Hunt Plan that proposed to pay all of NextEra's $45 million of EFIH PIK Note claims[5] in full with post-petition interest;
- How it came to be that a NextEra subsidiary, Gexa Energy, LP ("Gexa"), filed and actively prosecuted an objection to the Hunt Plan application before the PUC, including a specific objection to a proposed income tax allowance in Oncor Electric's rates;
- What control NextEra had over the operations and funding of Gexa and over any decision to prosecute a PUC objection to the Hunt Plan application;
- Why NextEra filed the Statement on the Court's docket;
- What NextEra knew about the potential effect of the Statement on approval of the Hunt Plan transactions;
- What NextEra knew about the PUC's monitoring of the Court's docket; and
- What NextEra knew about the prohibition in Texas on making ex parte contacts with PUC commissioners regarding an active application process.

None of those matters are "confidential" within the meaning of section 107 of the Bankruptcy

---

[5] See D.I. 6898 ("NextEra beneficially owns over $45 million in principal amount of EFIH PIK Notes.").

Americas 92396591

Code, and none of the testimony given should be sealed if the Ad Hoc Group's limited objection needs to be prosecuted at the confirmation hearing.

10.     The Court need not, however, address all of the factual details surrounding what NextEra may or may not have done to frustrate consummation of the Hunt Plan in order to obtain its prize. As set forth below, NextEra's present attempts, by way of non-consensual third-party releases, to insulate itself and its "Affiliates" from potential liability to T-side stakeholders, are objectionable as a matter of law.

## LIMITED OBJECTION

**The Non-Consensual Release of Claims and Causes of Action of the Original Plan Sponsors and the Holders of TCEH Unsecured Notes Against NextEra and Its Affiliates Is Impermissible.**

11.     The members of the Ad Hoc Group (in their capacities as Original Plan Sponsors[6] (i.e., the Equity Investors and Backstop Purchasers (each as defined in the Hunt Plan)) and Holders of TCEH Unsecured Notes) have not consented to the release of any of their claims or Causes of Action against NextEra, its Affiliates or any of their agents under the Plan. Nor have the members of the Ad Hoc Group been solicited in connection with the Plan or been given the opportunity to "opt out" of the Plan releases. Therefore, the Ad Hoc Group objects to the Plan insofar as it seeks to effectuate such releases.

12.     Article VIII.D of the Plan, entitled "Releases by Holders of Claims and Interests," provides that as of the Effective Date, the Original Plan Sponsors and Holders of TCEH Unsecured Note Claims among others are deemed to have released and discharged each Released

---

[6] The "Original Plan Sponsors" include the Equity Investors and the Backstop Purchasers and, on and after the date that the Merger and Purchase Agreement (as defined in the Hunt Plan) was executed by the parties thereto, and where consent, approval or waiver of the Original Plan Sponsors was required under or in connection with the Hunt Plan, Ovation Acquisition I, L.L.C. ("Ovation"). See Hunt Plan Art. I.A.274. Because no such consent, approval or waiver *under or in connection with the Hunt Plan* is being sought from the Original Plan Sponsors in connection with the Plan, Ovation is not an Original Plan Sponsor, and thus, not a Releasing Party, under the Plan.

6

Party, including Plan Sponsor NextEra, its wholly-owned subsidiary NextEra Energy Capital Holdings, Inc., its subsidiary EFH Merger Co., LLC, and such entities' current and former Affiliates and the current and former directors, managers and officers of such entities and their Affiliates, "from any and all Claims and Causes of Action." See Plan Art. VIII.D ("As of the Effective Date, each Releasing Party is deemed to have released and discharged each . . . Released Party from any and all Claims and Causes of Action . . . ."); id. at Art. I.A.361 (defining "Releasing Parties"); id. at Art. I.A.360 (defining "Released Parties"); id. at Art. I.A.35 (defining "Causes of Action").[7]  Although, this proposed third-party, non-Debtor release contains a carve-out for "any claims or Causes of Action against the Plan Sponsor relating to the Debtors' pursuit of regulatory approvals under the [Hunt] Plan" (the "Release Carve-Out"), see id. at Art. VIII.D, such Release Carve-Out is too narrow and fails to sufficiently protect the Original Plan Sponsors' ability to pursue claims and Causes of Action against NextEra, its Affiliates or any of their agents for any misconduct during these Chapter 11 Cases that may have interfered with consummation of the Hunt Plan.

---

[7]  As defined in the Plan, "Causes of Action" means

> any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

Id. at Art. I.A.35.

13. For example, the Release Carve-Out does not exempt from release any claims or Causes of Action against NextEra relating to the pursuit of regulatory approvals under the Hunt Plan by parties *other than* the Debtors, such as Ovation or Oncor Electric. Technically, it was those latter two entities that sought regulatory approval and, given the ring-fence measures in place, the Debtors had a minimal role in the approval process. It seems the spirit of the Release Carve-Out is to include the regulatory approvals, regardless of the entity that was seeking such approvals, but that is not technically what it provides. Nor does the Release Carve-Out exempt from release any claims or Causes of Action against NextEra's Affiliates such as Gexa or its officers, employees or representatives who may have engaged in interfering conduct. Moreover, the Release Carve-Out does not exempt from release any claims or Causes of Action against NextEra, its Affiliates or their agents for any of their actions not strictly related to the Debtors' pursuit of regulatory approvals under the Hunt Plan (that is, actions that may have been only tangentially related to such approvals). The members of the Ad Hoc Group therefore object to the Plan's third-party release provision solely as it relates to NextEra, its Affiliates and their agents and to the extent that the release would bar the members of the Ad Hoc Group from pursuing claims or Causes of Action related to the Hunt Plan or the consummation thereof.[8]

---

[8] In an attempt to resolve this limited objection, the Ad Hoc Group had previously proposed to the Debtors and NextEra that the Release Carve-Out be modified as follows:

> **Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any claims or Causes of Action against** ~~the Plan Sponsor~~ **one or more of NextEra and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such (the "Plan Sponsor Released Parties") relating to the** ~~Debtors' pursuit of regulatory approvals under the~~ **Original Confirmed Plan or the consummation thereof or claims or Causes**

14. The Third Circuit has declined to establish a blanket rule permitting or prohibiting the non-consensual releases of non-debtors by third parties, see Gillman v. Cont'l Airlines (In re Cont'l Airlines), 203 F.3d 203, 213-14 (3d Cir. 2000), but courts in this District have held that a bankruptcy court does not have the power to grant a third-party release of a non-debtor unless the releasing party consents to such release, for example through contract or by voting in favor of the plan. See In re Wash. Mut., Inc., 442 B.R. 314, 352 (Bankr. D. Del. 2011) (citing In re Coram Healthcare Corp., 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties"); In re Zenith Elecs. Corp., 241 B.R. 92, 111 (Bankr. D. Del. 1999) (holding that releases of non-derivative third-party claims against non-debtors "cannot be accomplished without the affirmative agreement of the creditor affected")). This Court has also recognized other very limited circumstances under which non-consensual releases of non-debtors may be approved, stating that:

> [N]on-consensual releases may be approved only in an "extraordinary" case if all of the following four factors are present: (i) the non-consensual release is necessary to the success of the reorganization; (ii) the releasees have provided a critical financial contribution to the Debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is fair to the non-consenting [parties], i.e., whether the non-consenting [parties] received reasonable compensation in exchange for the release.

In re Exide Techs., 303 B.R. 48, 75 (Bankr. D. Del. 2003) (citing In re Genesis Health Ventures, Inc., 266 B.R. 591, 607-08 (Bankr. D. Del. 2001)); see also In re Tribune Co., 464 B.R. 126, 203

---

**of Action that may be brought by <u>one or more of</u> the Plan Sponsor <u>Released Parties</u> against another party who brings a claim or Cause of Action against the Plan Sponsor <u>Released Parties</u> in connection with the ~~Debtors' pursuit of regulatory approvals under the~~ Original Confirmed Plan <u>or the consummation thereof</u>.**

NextEra rejected this proposed modification.

(Bankr. D. Del. 2011). The proposed releases of NextEra, its Affiliates and their agents do not satisfy any standard for approval of non-consensual releases of non-debtors.

15. <u>First</u>, the members of the Ad Hoc Group (in their capacity as Holders of TCEH Unsecured Notes) are not voting parties with respect to the Plan and were not provided the option to opt-out of the releases therein. Nor have they consented to the release of their claims or Causes of Action against NextEra, its Affiliates or their agents through contract or otherwise. On this basis alone, the Court should not approve *any* non-consensual release of NextEra, its Affiliates or their agents except to the extent a person or entity may have affirmatively consented to that release.

16. <u>Second</u>, the proposed releases fail to satisfy the <u>Exide</u> criteria required for approval of such non-consensual releases. With respect to the proposed releases of NextEra's Affiliates and their agents, such parties are not entering into any transactions with the EFH/EFIH Debtors in connection with the Plan. Nor are they providing any financial contribution to the Plan, let alone a "critical" financial contribution necessary to make the Plan feasible. These parties do not appear to have designated any confirmation witness to testify on their behalf to demonstrate that the releases of NextEra's Affiliates and their agents were critical to the EFH/EFIH Debtors' approval of the NextEra transaction or are necessary to the success of the Plan. Lastly, the proposed Affiliate and agent releases are unfair to the members of the Ad Hoc Group who are receiving no compensation, let alone reasonable compensation, in exchange for releasing their claims and Causes of Action against Affiliates and agents.[9] Indeed, the beneficial interests they hold in substantially all of the prepetition equity of EFH Corp. are being cancelled

---

[9] The "disarmament and drag" agreed to by the Original Plan Sponsors and the Debtors in the Settlement Agreement and Plan Support Agreement did not reference, much less contemplate the release of claims or Causes of Action against third parties like NextEra or its Affiliates (or their agents) who may have interfered with the Original Plan Sponsors' efforts to consummate the Hunt Plan.

under the Plan without distribution.  For all those reasons, the Court should deny the requested releases of NextEra's Affiliates and their agents.

17. With respect to the proposed non-consensual release of NextEra, although NextEra is providing a financial contribution to the Plan, such contribution is being provided at a market price and does not include any allocation of consideration for the release of NextEra. Again, the members of the Ad Hoc Group are not receiving *any* consideration in exchange for their release of NextEra under the Plan.  Moreover, although NextEra has agreed to the Release Carve-Out, and therefore has acknowledged that certain claims or Causes of Action against the Plan Sponsors relating to the PUC regulatory approval process for the Hunt Plan can proceed post-consummation of the Plan, it has not provided any justification for rejecting the Ad Hoc Group's proposed modifications to the Release Carve-Out, which relate to the very same regulatory approval process and simply clarify what should be carved out.  There is no indication that modification of the Release Carve-Out to protect the Ad Hoc Group's members' ability to pursue claims and Causes of Action against NextEra relating to the non-consummation of the Hunt Plan will in any way undermine the success of the transactions contemplated by the Plan or the EFH/EFIH Debtors' reorganization.  In other words, if NextEra will fund the Plan in the face of a legal action by T-side interests, they can hardly claim that they will not transact if that action contains additional claims for relief.

*[Remainder of page intentionally left blank.]*

18.  In light of the foregoing, the proposed non-consensual releases of NextEra, its Affiliates and their agents are impermissible as a matter of law, and the Court should refuse to grant them.

Dated: Wilmington, Delaware
February 3, 2017

FOX ROTHSCHILD LLP

By: */s/ Jeffrey M. Schlerf*
Jeffrey M. Schlerf (No. 3047)
L. John Bird (No. 5310)
919 North Market St., Suite 300
Wilmington, DE  19801
Telephone:  (302) 654-7444
Facsimile:  (302) 656-8920
jschlerf@foxrothschild.com
lbird@foxrothschild.com

and

WHITE & CASE LLP
Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL  33131
Telephone:  (305) 371-2700
Facsimile:  (305) 358-5744
tlauria@whitecase.com
mbrown@whitecase.com

and

WHITE & CASE LLP
J. Christopher Shore (admitted *pro hac vice*)
Gregory M. Starner (admitted *pro hac vice*)
1155 Avenue of the Americas
New York, NY  10036
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113
cshore@whitecase.com
gstarner@whitecase.com

*Counsel to the Ad Hoc Group of TCEH Unsecured Noteholders*