**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 14-10979 (CSS) |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., et al.,[1] | ) Jointly Administered |
| | ) |
| | ) Re: Docket No. 10750 |
| | ) |
| | ) <u>Hearing Date</u>: February 14, 2017 at 10:00 a.m. |
| | ) |
| Debtors. | ) |

**RESPONSE OF THE EFH INDENTURE TRUSTEE TO THE UNITED STATES
TRUSTEE'S OBJECTION, RESPONSE AND RESERVATION OF RIGHTS WITH
RESPECT TO THE SEVENTH AMENDED JOINT PLAN OF REORGANIZATION OF
ENERGY FUTURE HOLDINGS CORP., ET AL, PURSUANT TO CHAPTER 11 OF
THE BANKRUPTCY CODE AS IT APPLIES TO THE EFH AND THE EFIH DEBTORS**

American Stock Transfer & Trust Company, LLC ("<u>AST</u>"), as successor trustee to The

Bank of New York Mellon Trust Company, N.A. (in such capacity, the "<u>EFH Indenture</u>

<u>Trustee</u>") under the indentures for notes (the "<u>EFH Notes</u>") issued by EFH Future Holdings

Corp. ("<u>EFH Corp.</u>"), by its undersigned counsel, hereby files this response (the "<u>Response</u>") to

*The United States Trustee's Objection, Response and Reservation of Rights With Respect to the*

*Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al, Pursuant*

*to Chapter 11 of the Bankruptcy Code as it Applies to the EFH and the EFIH Debtors* [D.I.

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification Numbers is not provided herein.

10750] (the "UST Objection").[2]  In support of this Response, the EFH Indenture Trustee

respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The UST Objection should be overruled for three reasons.  First, in the context of

the unique facts and circumstances of these cases, payment of fees and expenses to the EFH

Indenture Trustee is appropriate under the Bankruptcy Code.  The contemplated payments to the

EFH Indenture Trustee are part of a carefully structured series of compromises embodied in the

Plan.  No EFH Corp. creditor adversely impacted by the proposed payment of the EFH Indenture

Trustee's fees and expenses voted against the Plan, thereby showing overwhelming creditor

support for the compromises, including the payment of fees and expenses.  This fact makes this

case distinct from every case where similar issues have been considered.

2.      Second, this Court has already determined that the fees and expenses incurred by

the EFH Indenture Trustee through December 7, 2015 are properly reimbursable as an

administrative expense because of the substantial contribution the EFH Indenture Trustee made

through that date.  The fees and expenses that the EFH Indenture Trustee incurred after that date

are also properly reimbursable in light of the substantial contributions made to the progress of

these cases.

3.      Lastly, the services of an indenture trustee at EFH Corp. were, in fact, actual and

necessary here because of the complexity of these cases and the desire of the Debtors to maintain

the possibility of reinstating certain of the EFH Notes.  Thus, the payment of the fees and

expenses of the EFH Indenture Trustee in accordance with the applicable indentures are, on these

---

[2]      Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the UST Objection or the *Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. plan] (the "Plan"), as applicable.

2

facts, properly classified as administrative expenses.  In these circumstances the compromises and settlements reflected in the Plan should be respected and the UST Objection should be overruled.

## REPLY

### A.    All Voting Creditors Impacted by Approval of Article IV, Section R.1 Have Voted to Accept the Plan

4.      The Plan represents a compromise between all parties of various claims and interests.  *See* Plan, at Art. IV. Sec. A. ("[T]he provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.").  The payment of the EFH Indenture Trustee's fees and expenses ahead of distributions to classes of unsecured creditors is an integral component of the dozens of compromises made to arrive at this Plan which all classes at EFH Corp. ultimately voted to approve.

5.      **All classes** of EFH Corp. creditors have voted to **accept the Plan** and the compromises contained therein.[3]  Thus, this is not a case where the voice of the U.S. Trustee is needed to protect the interests of small or unrepresented creditors.

6.      Indeed, this case distinguishable from all others that have considered similar issues, because 100% of EFH Corp. creditors that would be adversely affected by the payment of the EFH Indenture Trustee's fees and expenses before distributions (*i.e.*, creditors that are not holders of EFH Notes) and that submitted ballots voted in favor of the Plan.[4]  Other than the

---

[3]      *See Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Cast on the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 10301], at Ex. B.  Holders of EFH Notes with claims against EFH Corp. are classified in Class A4 (EFH Legacy Note Claims), Class A5 (EFH Unexchanged Notes Claims) or Class A6 (EFH LBO Note Primary Claims) and have accepted the plan.  *Id.*

[4]      *See id.*, at Ex. B, showing 100% of creditors in Classes A7 (EFH Swap Claims), A8 (EFH Non-Qualified Benefit Claims), A9 (General Unsecured Claims Against EFH Corp., and A12 (TCEH Settlement Claim) voted in favor of the Plan.  While a few creditors voted to reject the Plan in classes A4 (EFH Legacy Note

*(Footnote continued on next page)*

United States Trustee, no party-in-interest has objected to the payment of the EFH Indenture

Trustee's fees and expenses.  Moreover, the predecessor to the largest creditor impacted by the

proposed payment of the EFH Indenture Trustee's fees and expenses — *i.e.,* holders of the

TCEH Settlement Claim in Class A12 — was a Plan proponent and Class A12 voted to accept

the Plan.[5]

**B.**    **The EFH Indenture Trustee Has Made A Substantial Contribution**

7.    The record in these cases contains sufficient facts for this Court to determine that

all of the reasonable fees and expenses of the EFH Indenture Trustee may be treated as

administrative expenses pursuant to Sections 503(b)(3)(D) and 503(b)(5) of the Bankruptcy

Code.  Most importantly, this Court already determined that the work performed by the EFH

Indenture Trustee through December 7, 2015 provided a substantial contribution to these chapter

11 cases:

> Any professionals and certain parties representing parties receiving payment of fees and expenses pursuant to Article IV.R. of the Plan, excluding (a) professionals representing Holders of TCEH First Lien Secured Claims, EFIH First Lien Note Claims, and EFIH Second Lien Note Claims, and (b) those fees payable under the TCEH DIP Facility, EFIH First Lien DIP Facility, the Merger and Purchase Agreement, the Backstop Agreement, or the Cash Collateral Order (each a "Requesting Party" and collectively, "Requesting Parties"), all of which Requesting Parties ***the Court has found to have made, in accordance with sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code, a substantial contribution in these cases*** as set forth in the Confirmation Ruling . . . .

---

Claims) and A6 (EFH LBO Note Primary Claims), these creditors are not adversely impacted by the payment of the EFH Indenture Trustee's fees and expenses, as the EFH Indenture Trustee has the right under the applicable indenture to exercise its charging lien and withhold its fees and expenses from distributions to holders of those Notes.

[5]    *See Plan* at 4 ("The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code").

December 2015 Confirmation Order, at ¶ 118 (emphasis added).[6]  Accordingly, at most, the UST

Objection should only apply to fees and expenses incurred by the EFH Indenture Trustee after

December 7, 2015.

8.      With respect to the fees and expenses incurred by the EFH Indenture Trustee

subsequent to the entry of the December 2015 Confirmation Order, the EFH Indenture Trustee

respectfully submits that it made a substantial contribution to the Chapter 11 cases under sections

503(b)(3)(D) and 503(b)(5), as evidenced by the current record.[7]

9.      As this Court has noted, these cases have been among the most complex cases

ever filed.  Here, where the EFH Committee's voice has been limited since the EFH Committee

Settlement in 2015, the EFH Indenture Trustee has engaged in advocacy that has benefitted all

EFH Corp. creditors.[8]

10.      For example, the Court itself observed that following approval of the EFH

Committee Settlement, the EFH Indenture Trustee actively participated in the August 2016

Confirmation Hearing and established that EFH Corp.'s net operating losses ("NOLs") could

have significant value.[9]

---

[6]      Article IV, Section R.1 of the *Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* provided that: "As may be further described in the EFH/EFIH Committee Settlement Order, the EFH Debtors shall pay in cash on the Effective Date, up to $5.5 million of the reasonable and documented fees and expenses (including professional and other advisory fees and expenses) of the EFH Notes Trustee incurred through the Effective Date, and for fees and expenses in excess of such amount . . . ."). *See also* Hr'g Tr. 78:17-25 (Dec. 3, 2015).

[7]      The EFH Indenture Trustee reserves the right to request an evidentiary hearing on the issue of its contribution, but believes that such a finding can be made without a hearing.

[8]      The EFH Committee was contractually barred from objecting to subsequent plans pursuant to the EFH Committee Settlement.

[9]      Notably, at the trial in August 2016, Paul Keglevic and Carla Howard both estimated the value of the retained NOLs to EFH Corp. to be $380 million.  *See e.g. Declaration of Paul Keglevic in Support of Confirmation of the Third Amended Plan of Reorganization*, D-DIR Keglevic, served on August 13, 2016, moved into evidence on August 18, 2016, at ¶ 30.

11.    Furthermore, the Court can also take note that certain subsequent actions taken by the EFH Indenture Trustee, along with the efforts of other parties, contributed to the creation of circumstances from which the economic stakeholders were able to negotiate an increase of approximately $450 million of distributable value to creditors.  After the Debtors filed the Merger Agreement Motion[10] seeking authority to sell the Debtors' interest in Oncor Electric Delivery Co., LLC, the EFH Indenture Trustee filed an objection regarding certain provisions in the Merger Agreement[11] and was prepared to litigate issues related to the Plan, including the value of EFH Corp.'s NOLs and their allocation.  In connection with efforts to resolve this and other creditors' objections, the purchase price was increased by over $300 million and the amount deposited into the Asbestos Account[12] was substantially reduced.  The resulting increase in purchase price and distributable value facilitated the current situation where the Plan is now supported by an overwhelming majority of EFH Corp. creditors, including all who could be adversely impacted by the allowance of the EFH Indenture Trustee's fees and expenses as administrative expenses. [13]

---

[10]    *Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* [D.I. 9190] (the "Merger Agreement Motion").

[11]    *See EFH Indenture Trustee's Objection to Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry Into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into and Performance Under Plan Support Agreement* [D.I. 9399].

[12]    As defined in the Merger Agreement.

[13]    *See Amended Disclosure Statement for the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* [Docket No. 10564], at 10 ("These discussions were productive and on September 18, 2016, NextEra agreed to increase the purchase price by $300 million to $4.4 billion . . . ."). While the leverage generated by the EFH Indenture Trustee's efforts surely contributed to the increase, the negotiations were led by Fidelity, which ultimately signed a Plan Support Agreement.

6

**C.    The Fees and Expenses of the EFH Indenture Trustee Are Actual and Necessary Under Section 503(b)(1)**

12.    The fees and expenses of the EFH Indenture Trustee should be allowed as administrative expenses because facts established in these cases demonstrate that the Debtors needed an indenture trustee in place for a variety of reasons, including to preserve the option to reinstate certain of the EFH Notes.[14]

13.    As verified by the testimony of Mr. Tony Horton, the Debtors contracted with the EFH Indenture Trustee for the required indenture trustee services on the eve of filing these cases because they understood that they needed an indenture trustee for these cases.  *See* Hr'g Tr. 162:15-18 (Nov. 11, 2015) ("Q: At the time that you signed those documents, you had an understanding that EFH Corp, in fact, needed an indenture trustee in the bankruptcy proceedings, didn't you? A: Generally speaking, yes.").

14.    Further, under the Fifth Plan,[15] the Debtors reserved the right to reinstate the "EFH Legacy Series Q Claims" and "EFH Legacy R Claims."  *See* Fifth Plan, at Article B.4.(c)(ii).   Likewise, the Debtors' earlier settlements with Fidelity [Docket No. 7142] and the EFH Indenture Trustee [Docket no. 7143], both expressly preserved the Debtors' right to reinstate the EFH Notes in an "Alternative Restructuring" (as defined in such settlements).

15.    In order to maintain that reinstatement option, the Debtors needed to comply with the Trust Indenture Act of 1929 (the "TIA"), which requires that a qualified indenture trustee be

---

[14]    This argument is briefed in full in the *EFH Indenture Trustees Objection and Pretrial Brief for Phase I Trial Regarding Confirmation of Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al.* [Docket No. 6609] (the "EFH Indenture Trustee Brief"), at pp. 35-38.  The EFH Indenture Trustee hereby incorporates the legal arguments set forth on pages 35-38 of that brief as if fully set forth herein in support of this Reply.  For avoidance of doubt, the arguments are only incorporated for the purpose of replying to the UST Objection.  The EFH Indenture Trustee is not opposing confirmation of the Plan.

[15]    *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 6122] (the "Fifth Plan").

in place.  Here, on the eve of the commencement of these cases, the EFH Indenture Trustee

agreed to serve provided that it receive compensation, including reimbursement of its fees and

expenses in accordance with the terms of the indentures.

16.     The testimony of Mr. Horton, the requirements of the TIA, and the Debtors desire

to preserve flexibility to reinstate some of the EFH Notes in these unique cases, establish that the

services of the EFH Indenture Trustee were actual and necessary.

**D.     Cases Cited by U.S. Trustee Are Distinguishable**

17.     The authorities cited by the U.S. Trustee in its objection are distinguishable and

do not control the Court's decision in this case.  For example, *Davis v. Elliot Mgmt. Corp. (In re*

*Lehman Bros. Holdings Inc.),* 508 B.R. 283 (S.D.N.Y. 2014) is distinguishable because in that

case the plan provided for the payment of the professional fees of individual committee members

as administrative expenses solely based on committee membership.  *Id*. at 291.  Here, the EFH

Indenture Trustee is not seeking payment of fees and expenses solely based on committee

membership.  Rather, as detailed above, reimbursement is appropriate for multiple reasons,

including the fact that the Court has already determined that the EFH Indenture Trustee has made

a substantial contribution.

18.     Further, after the EFH Committee Settlement was approved, the EFH Indenture

Trustee engaged in zealous advocacy that, together with the actions of others, greatly increased

the potential recoveries at EFH Corp., thereby providing a substantial contribution.  *See e.g.,*

*Marcus Montgomery Wolfson & Burten, P.C. v. AM Int'l (In re AM Int'l)*, 203 B.R. 898, 904-05

(D. Del. 1996) (finding that equity committee made substantial contribution through

negotiations); *In re Syntax-Brillian Corp.*, Nos. 08-11407 (BLS), 1167, 2009 Bankr. LEXIS

1407, at *5 (Bankr. D. Del. June 5, 2009) ("When determining whether a movant's activities

amount to a substantial contribution, courts have examined 'whether the services were provided

to benefit the estate itself or all of the parties in the bankruptcy case; whether the services

conferred a direct benefit upon the estate; and whether services were duplicative of services

performed by others.'").  Thus, the cases cited by the U.S. Trustee are not analogous.

WHEREFORE, the EFH Indenture Trustee respectfully request the Court overrule the

United States Trustee's Objection and grant such other relief as is just and proper.

Dated: Wilmington, DE             **CROSS & SIMON, LLC**
       February 9, 2017

                                  By: /s/*Christopher P. Simon*
                                  Christopher P. Simon (Del. Bar No. 3697)
                                  1105 North Market Street, Suite 901
                                  Wilmington, Delaware 19801
                                  Telephone: (302) 777-4200
                                  Facsimile: (302) 777-4224
                                  csimon@crosslaw.com

                                  - and –

                                  NIXON PEABODY LLP
                                  Amanda D. Darwin
                                  Richard C. Pedone
                                  Erik Schneider
                                  100 Summer Street
                                  Boston, Massachusetts 02110
                                  Telephone: (617) 345-1000
                                  Facsimile: (617) 345-1300
                                  adarwin@nixonpeabody.com
                                  rpedone@nixonpeabody.com
                                  eschneider@nixonpeabody.com

                                  -and-

                                  Christopher J. Fong
                                  437 Madison Avenue
                                  New York, NY 10022
                                  Telephone: 212-940-3724
                                  Facsimile: 855-900-8613
                                  cfong@nixonpeabody.com

4814-4710-6113 10

*Co- Counsel to American Stock Transfer & Trust Company, LLC, as Indenture Trustee*