## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- X
In re:                                      :    Chapter 11
                                            :
Energy Future Holdings, Inc., et al.,       :    Case No. 14-10979 (CSS)
                                            :
                 Debtors.                   :    (Jointly Administered)
                                            :
-------------------------------------------------------- X
```

## RESPONSE OF NEXTERA ENERGY, INC. TO LIMITED OBJECTION OF THE AD HOC GROUP OF TCEH UNSECURED NOTEHOLDERS TO CONFIRMATION OF THE SEVENTH AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND JOINDER OF NEXTERA ENERGY, INC. THE TO DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE SEVENTH AMENDED JOINT PLAN OF REORGANIZATION AS IT APPLIES TO THE EFH/EFIH DEBTORS

NextEra Energy, Inc. and its wholly-owned subsidiary NextEra Energy Capital Holdings, Inc. (collectively, "NextEra"), file this response (the "Response") to the *Limited Objection of the Ad Hoc Group of TCEH Unsecured Noteholders to Confirmation of the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 10763] (the "Limited Objection") and joinder (the "Joinder") to the *Debtors' Memorandum of Law in Support of Confirmation of the Seventh Amended Joint Plan of Reorganization as it Applies to the EFH/EFIH Debtors* (the "Omnibus Response").[1]  In support of this Response, NextEra respectfully states as follows:

### PRELIMINARY STATEMENT

1.      The *Ad Hoc* Group of TCEH Unsecured Noteholders (the "TCEH Unsecured Ad Hoc Group") does not object to the inclusion of a third-party release in the Plan, but does argue

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan").

that a negotiated carve-out from the release must be modified, *inter alia*, to expand the carve-out from the release so as to exclude entities and individuals affiliated with NextEra.

2.      The "Limited Objection" seeks to bolster its legal argument with innuendo and baseless accusations—which it ultimately acknowledges are irrelevant to the Limited Objection—that NextEra behaved unlawfully in connection with the prior "E-Side" transaction. The Limited Objection presents not a shred of support for the assertion that NextEra acted improperly in connection with the Public Utility Commission of Texas ("PUCT") proceedings concerning the "Hunt Plan."   To the contrary, the fact that the TCEH Unsecured Ad Hoc Group spends the majority of its Limited Objection hurling unsupported accusations that have ***nothing*** to do with the legal or factual standards for approval of the release language underlines the substantive weakness of its arguments.

3.      The TCEH Unsecured Ad Hoc Group is correct in only one significant respect: Article VIII.D of the Plan mandates a broad third-party release in favor of NextEra and its affiliates, which are contributing approximately $9.8 billion and substantial additional support (on both the E-Side and the T-Side) to facilitate the reorganization.  As set forth in the Debtors' Omnibus Response, the release provisions of the Plan are warranted under the factors courts in this District apply when considering approval of such releases.  Specifically, the release is appropriate as a result of the enormous value NextEra is providing to the Debtors and their Estates, the necessity of the release to a successful reorganization, the overwhelming creditor support (on both the E-Side and the T-Side) for the Plan and the releases, and the value provided specifically to the TCEH Unsecured Ad Hoc Group.  The release is more than fair to the complaining TCEH Unsecured Ad Hoc Group, whose members are themselves beneficiaries of its protections and who received additional Plan consideration as a result of its existence.

Finally, while its speculation that it "may" have claims against NextEra is entirely baseless, the

TCEH Unsecured Ad Hoc Group nonetheless has shown itself through the course of these

proceedings to be extraordinarily fond of litigation.[2]  NextEra does not want to face future

frivolous litigation.  Consequently, the release is critical to the success of the reorganization—the

Plan cannot become effective without the release in place.

## JOINDER

4.      NextEra, by and through its undersigned counsel, hereby joins the Omnibus

Response.  In support of this joinder, NextEra respectfully asserts the arguments set forth in the

Debtors' Omnibus Response and incorporates the Debtors' Omnibus Response in its entirety as

if fully set forth herein.

## RESPONSE

### I.      The TCEH Unsecured Ad Hoc Group's Insinuations of NextEra Wrongdoing Are Completely Baseless

5.      The TCEH Unsecured Ad Hoc Group devotes the overwhelming majority of its

Limited Objection to unsupported allegations regarding NextEra's purported conduct rather than

to legal argument regarding the releases.  *See, e.g.*, Limited Objection ¶ 5 ("the Ad Hoc Group

believes that NextEra may have . . . .").  Yet, remarkably, the TCEH Unsecured Ad Hoc Group

concedes that its mudslinging is entirely irrelevant here, declaring that "[t]he court need not,

---

[2] *See, e.g.*, *Motion of the Ad Hoc Group of TCEH Unsecured Noteholders for Entry of an Order Granting Standing and Authority to Commence, Prosecute and Settle Certain Claims for Declaratory Judgment, Avoidance, and Recovery of Liens, Security Interests, Obligations, Fees, and Interest Payments, and Disallowance of Claims* [Docket No. 3603] (attempting, over the objection of the Official Committee of TCEH Unsecured Creditors [Docket No. 3733], to seize control of estate causes of action); *Objection of the Ad Hoc Group of TCEH Unsecured Noteholders to the Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [Docket No. 4327] (opposing entry of a scheduling order).

however, address . . . what NextEra may or may not have done . . . ."[3]   NextEra agrees that this attempted character assassination is irrelevant.   Nonetheless, NextEra believes that these mendacious claims cannot go unchallenged on the public record.   They demonstrate why NextEra needs the release at issue.

6.      The TCEH Unsecured Ad Hoc Group suggests that NextEra's November 18, 2015 filing in this Court [Docket No. 7028] (the "November 2015 Statement") was an improper *ex parte* communication with the PUCT.   Stranger still, the TCEH Unsecured Ad Hoc Group contends that the November 2015 Statement somehow caused the failure of the Hunt Plan before the PUCT.   Neither branch of this fanciful tale survives the barest of scrutiny.   The Texas Administrative Procedures Act and the PUCT Rules bar *ex parte* communications with PUCT commissioners about an application pending before them to prevent private communications designed to influence the decision-maker.[4]   But NextEra's filing in this Court (with service on the TCEH Unsecured Ad Hoc Group and other participants) was the antithesis of a private, *ex parte* communication with the PUCT.   It was a public communication, and was therefore not proscribed by the applicable state regulations.   *See* Texas State Bar Professional Ethics Committee Opinion 604 (Jan. 2011), *available at* https://www.texasbar.com/AM/Template.cfm?Section=Texas_Bar_Journal&Template=/CM/ContentDisplay.cfm&ContentID=12680 (written communications with state regulatory agency that are promptly provided to opposing counsel are not *ex parte* communications).   Thus, even if the TCEH Unsecured Ad Hoc Group were correct in its unsupported supposition that NextEra "may" have intended to

---

[3]   Limited Objection ¶ 10.   In light of the TCEH Unsecured Ad Hoc Group's accusation that NextEra said too much in notifying this Court that it was open to a transaction, Limited Objection ¶ 5, one must question why the TCEH Unsecured Ad Hoc Group has filed an 11-page pleading with 6 pages describing alleged misdeeds that the Group itself acknowledges have no bearing on the legal question to which the Limited Objection is addressed.

[4]   *See* Tex. Gov't Code Sec. 2001.061 (APA); Tex. PUC R. No. 22.3.

communicate with the PUCT by way of this Court's docket—an incorrect assumption—their argument is meritless as a matter of law.[5]

7.    The TCEH Unsecured Ad Hoc Group's insinuations are particularly disingenuous because it was *the proposed purchasers* under the Hunt Plan, not NextEra or any affiliated party, who immediately and expressly directed the PUCT's attention to the November 2015 Statement. *See* Ovation Acquisition I, L.L.C., Ovation Acquisition II, L.L.C., Ovation Acquisition II, L.L.C., and Shary Holdings, L.L.C.'s Emergency Request for Enforcement of the Protective Order, PUCT Docket. No. 45188, Item No. 301 (Nov. 20, 2015) (noting NextEra's "continued interest in submitting a competing proposal for Oncor").[6]    Moreover, when a third party's witness later referenced the November 2015 Statement in testimony, the Commission granted the proposed Hunt Plan purchasers' motion to strike, explicitly holding that any potential alternative NextEra-sponsored transaction was not relevant to the PUCT's consideration of the Hunt-sponsored transaction.    *See* Order No. 11, Ruling on Ovation Acquisition I, L.L.C., Ovation Acquisition II, L.L.C.'s Objections and Motion to Strike, PUCT Docket. No. 45188, Item No.

---

[5] To the extent the Limited Objection implies that NextEra's subsidiary, Gexa Energy, L.P.—a retail electric provider in Texas that is a major customer of Oncor—could not properly intervene in the PUCT proceedings, its claim is patently false.    Gexa properly participated in those proceedings, making entirely appropriate public-record filings before the PUCT.

[6] Attachment A hereto is a true and correct copy of this document filed on the public docket of the PUCT in the matter captioned *In re Joint Report and Application of Oncor Electric Delivery Company LLC, Ovation Acquisition I, L.L.C., Ovation Acquisition II, L.L.C., and Shary Holdings, L.L.C. for Regulatory Approvals Pursuant to PURA §§ 14.101, 37.154, 39.262(l)-(m), and 39.915* (PUCT Docket No. 45188).    NextEra requests judicial notice of the document under Fed. R. Evid. 201.    *See Nantucket Investors II v. Cal. Fed. Bank (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 205 (3d Cir. 1995) ("the filing of documents in the case record provides competent evidence of certain facts" sufficient to permit a court to take judicial notice of them, including the fact "that a specific document was filed, that a party took a certain position, [and/or] that certain judicial findings, allegations, or admissions were made."); *Furnari v. Warden*, 218 F.3d 250, 255 (3d Cir. 2000) ("it is proper for this Court to take judicial notice of decisions of an administrative agency").

464 (Dec. 17, 2015).[7]  Nor is the TCEH Unsecured Ad Hoc Group correct in asserting that "the Hunt Plan did not receive PUC approval."  Limited Objection ¶ 6.  The PUCT approved the Hunt Plan, albeit subject to conditions that Hunt Plan proponents apparently found unacceptable.  *See* Order, PUCT Docket. No. 45188, Item No. 671.[8]

8.      Lacking any actual evidence supporting its attempt to smear NextEra, the TCEH Unsecured Ad Hoc Group laments that portions of the deposition of NextEra Executive Vice President Mark Hickson were designated confidential.  *See* Limited Objection ¶ 9.  But such confidentiality designations do not bar parties from using the material in question in these proceedings; they needed only to file the material under seal (which initiates a process under which material may be unsealed if appropriate), and comply with the Protective Order's procedural provisions if they seek to use such material at the hearing.[9]  *See* Confidentiality Agreement and Stipulated Protective Order, ¶¶ 16, 17 [Docket No. 1833].  Other parties have complied with these requirements and used information designated confidential in their objections.[10]  Had there been anything in the material at issue that supported the TCEH

---

[7] Attachment B hereto is a true and correct copy of Order No. 11, filed on PUCT Docket No. 45188.  NextEra also requests judicial notice of the document under Fed. R. Evid. 201.  *See* fn. 6, *supra.*

[8] Attachment C hereto is a true and correct copy of Order, Item No. 671, filed on PUCT Docket No. 45188.  NextEra also requests judicial notice of the document under Fed. R. Evid. 201.  *See* fn. 6, *supra.*

[9] On February 7, 2017, after filing the Limited Objection, the TCEH Unsecured Ad Hoc Group finally began taking the procedural steps required under the Protective Order to enable use of the deposition testimony in question when Mr. Hickson testifies at trial.  NextEra has re-reviewed the designations, has concluded that they are no longer necessary, and will not object on confidentiality grounds to the otherwise proper use of the portions of Mr. Hickson's deposition testimony at issue in open Court at the hearing.  As discussed in text, they contain nothing which supports the TCEH Unsecured Ad Hoc Group's baseless claims.

[10] *See* Objection of Shirley Fenicle, William Fahy, John H. Jones, and David Heinzmann to Confirmation of the Debtors' Seventh Amended Joint Plan of Reorganization as it Relates to the EFH Debtors and EFIH Debtors [Docket No. 10756 (Filed Under Seal)].

Unsecured Ad Hoc Group's tale, it could have done likewise.  The Limited Objection, however, quotes nothing from these portions of the Hickson deposition, undoubtedly because the TCEH Unsecured Ad Hoc Group recognized that quoting Mr. Hickson's actual statements in its Limited Objection would undermine their effort to smear NextEra.  It is left instead to insinuate support for claims where none exists.

## II.    The Release Satisfies the Criteria for Approval of a Third-Party Release

9.    As stated above, NextEra joins the Debtors' Omnibus Response, including the Debtors' argument that the release provisions of the Plan are appropriate as to NextEra and its related parties.  In suggesting that the criteria for such a release have not been satisfied, the TCEH Unsecured Ad Hoc Group makes unfounded assertions that the Court should disregard the extraordinary contributions NextEra has made to the Chapter 11 Cases.

10.    As the TCEH Unsecured Ad Hoc Group acknowledges, the Third Circuit has not prohibited the issuance of third-party releases pursuant to a confirmed chapter 11 plan of reorganization.  *See Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 212-14 (3d Cir. 2000).  Nor has the Third Circuit articulated a test for when such releases are appropriate beyond the requirement that they be "fair[], necess[ary] to the reorganization, and [supported by] specific factual findings."  *Id.* at 214.  Courts in this District evaluating the propriety of third-party releases have considered, among other things, whether (a) the releasee has provided critical contribution to the debtor's plan and (b) whether the release is fair to the nonconsenting creditors.  *See In re Spansion, Inc.*, 426 B.R. 114, 145 (Bankr. D. Del. 2010) (citing *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 607-08 (Bankr. D. Del. 2001) (describing proper bases for approval of nonconsensual third-party releases).  Certain courts have expanded on this analysis and developed a list of four factors, including whether:

7

(i) the non-consensual release is necessary to the success of the reorganization; (ii) the releasees have provided a critical financial contribution to the Debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is fair to the non-consenting creditors, i.e., whether the non-consenting creditors received reasonable compensation in exchange for the release.

*In re Exide Techs.*, 303 B.R. 48, 75 (Bankr. D. Del. 2003) (citing *Genesis Health Ventures, Inc.*, 266 B.R. at 607-8); *see also In re Zenith Elecs. Corp.*, 241 B.R. 92,110 (Bankr. D. Del. 1999) (developing factors for consideration of releases by Debtors rather than third-parties). It is not necessary that every factor be met in order for a nonconsensual release to be appropriate. *See In re Washington Mutual, Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011) ("These factors are neither exclusive nor conjunctive."). Under either version of the analysis, the relevant considerations weigh conclusively in favor of granting the release set forth in Article VIII.D of the Plan.

A.    <u>NextEra has Made the Critical Financial Contribution to the Plan</u>

11.    As an initial matter, NextEra is contributing truly enormous value to the Debtors' reorganization, including:

- approximately ***$9.8 billion*** to fund the reorganization of the EFH Debtors and EFIH Debtors and allow these cases to be successfully concluded after nearly 3 years of acrimony;

- agreeing to fund substantial pension and OPEB liability;

- providing for timely asbestos claims to be reinstated in full;

- entering into the Tax Matters Agreement and approving, among other things, the Separation Agreement, that made the spin-off of the T-Side—and thus any recovery at all for the TCEH Unsecured Ad Hoc Group—possible; and

- allowing the EFH Shared Services Debtors to remain with the T-Side following the spin-off and approving the Shared Services Agreement to ensure the viability of the T-Side post-Effective Date.

12.    Moreover, NextEra provided key non-financial contributions to the development of the Plan. The Tax Matters Agreement, which will apply to Merger Sub after the Merger is

8

completed, was carefully negotiated in a process guided by NextEra and in which NextEra agreed to concessions designed to ensure the feasibility of the T-Side.

13.     The TCEH Unsecured Ad Hoc Group's complaint that funds did not flow directly from NextEra's coffers to their wallets, Limited Objection ¶ 16, is irrelevant to whether NextEra's contribution warrants the release.  Whether third party releases are supported by a substantial contribution depends on the value provided to the Debtors' estates, not to the individual holders of released claims.  *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 292 (Bankr. S.D.N.Y. 2016) ("[T]he [objectors] insist that there can be no benefit to the Debtors' estates without a benefit to their own pockets.  They are simply wrong.").

14.     Simply put, it is NextEra's financial and non-financial contributions that allow the Plan to move forward.  While the TCEH Unsecured Ad Hoc Group acknowledges NextEra's essential contribution to these cases, they nevertheless attack the release on the grounds that (a) such a contribution cannot support a release in favor of any of NextEra's affiliated entities or individuals and (b) NextEra paid a "market price" that does not justify a release.  Neither argument has merit.

15.     First, NextEra's contribution can easily support releases of its related entities, because without those releases the contribution would not have been made.  *Cf. In re TCI 2 Holdings, LLC*, 428 B.R. 117, 139 (Bankr. D.N.J. 2010) (release was not necessary to the reorganization because it was severable from remainder of settlement).  Moreover, courts have found that releases may be justified on the basis of contributions made by one entity on behalf of another.  *See, e.g., In re Ingersoll, Inc.*, 562 F.3d 856, 862 (plan provision releasing debtor's management was valid and could be enforced); *In re Am. Family Enters.*, 256 B.R. 377, 390 (D.N.J. 2000) (approving release of approximately forty entities based on the contribution of one

CPAM: 11712447.9

entity and stating that the court "need not speculate as to the appropriate contribution of each defendant," provided that the total contribution was appropriate).

16.     Second, NextEra's "market price" bid, which is vastly more than any other bid submitted, has consistently been coupled with a release in favor of NextEra and its affiliates. The TCEH Unsecured Ad Hoc Group does not and cannot provide evidence to support its baseless assertion that the release is not reflected in the consideration NextEra provides, when the release has been a part of NextEra's bid from the beginning.

     B.     The Release is Necessary to the Reorganization

17.     In addition, the release is warranted because the reorganization cannot proceed without approval of the release.  The release is, and always has been, of critical importance to NextEra.  Moreover, NextEra, as Plan Sponsor, has an absolute right to decline to close the transaction if the release is not provided by the Confirmation Order.  *See* Plan Art. IX.D.1; *see also* Plan Sponsor Plan Support Agreement § 7.02 ("the Alternative E-Side Confirmation Order shall be in a form and substance acceptable to NEE, and the Alternative E-Side Confirmation Order shall not be, in any respect that is materially adverse to NEE, altered, amended, modified or supplemented without the consent of NEE.").  Similarly, the Plan prohibits the removal of the release without NextEra's consent.  *See* Plan Art. X.A ("it shall be reasonable for the Plan Sponsor to deem unacceptable any alteration, amendment, or modification that (1) results in the imposition or reinstatement of any Claim against or Interest in the Reorganized EFH Debtors, the Reorganized EFIH Debtors, the Plan Sponsor, or any Affiliate of the Plan Sponsor").

18.     Bizarrely, the TCEH Unsecured Ad Hoc Group asserts that "if NextEra will fund the Plan in the face of a legal action by T-Side interests, they can hardly claim that they will not transact if that action contains additional claims for relief."  Limited Objection ¶ 17.  Apparently the TCEH Unsecured Ad Hoc Group seeks to substitute its business judgment for NextEra's, and

CPAM: 11712447.9

believes that if some limited litigation is tolerable, unbounded litigation against a vastly wider swath of defendants, including both entities and individuals, should be agreeable.  By that logic, the TCEH Unsecured Ad Hoc Group's members—who are likewise subject to a limited carve-out from the third-party release—would happily volunteer to forfeit the entirety of their release under the Plan.  The TCEH Unsecured Ad Hoc Group ignores the basic fact that defending against baseless litigation costs time and money, and that NextEra has an obvious interest in protecting itself, and its employees, from frivolous litigation by a discontented minority of creditors.

C.    The Release was Overwhelmingly Accepted by
      Creditors and is Fair to the TCEH Unsecured Ad Hoc Group

19.    Approval of the release is further justified by the fact that the Plan has been accepted by the overwhelming majority of  creditors, including every class of creditors with the exception of the EFIH First Lien Noteholders and the EFIH Second Lien Noteholders.[11]  It was even accepted by the overwhelming majority of the only class of creditors to object to the release—the TCEH Unsecured Noteholders.  *See* TCEH Voting Report, Exh. B – Tabulation Summary at 6-12.  Moreover, the third-party release is eminently fair to the members of the complaining TCEH Unsecured Ad Hoc Group, whose members are themselves beneficiaries of the release, *see* Plan Art. VIII.D, and who have previously highlighted the critical importance of the release structure to their constituency:

---

[11]    *See Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Cast on the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 10301]  (the "EFIH Voting Report"); *Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Cast on the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [Docket No. 9296] (the "TCEH Voting Report"), *Exh. B – Tabulation Summary* at 6-12.

CPAM: 11712447.9

> We've talked a lot and you've heard a lot of testimony about the $550 million booby prize payment that will be made if the plan is confirmed. But an essential part of the Plan B treatment is also that the T-Side unsecured parties are the beneficiaries of all equity distributions made at EFH after the first $15 million of that is paid to the sponsors ***provided that the sponsors' release stays in place. And there is a release of the sponsors in place***.

8/24/16 Hr'g Tr. At 93:1-9 (emphasis added).  The TCEH Unsecured Ad Hoc Group cannot be permitted to cherry-pick the portions of the release that it deems an "essential part" of the Plan while rejecting others.  The TCEH Unsecured Ad Hoc Group actively supported the release in its entirety when its stood to benefit.  It cannot now plausibly assert that the releases—without which its members would have forfeited potentially valuable consideration under the Plan—stopped being essential as soon as it got what they wanted out of the Plan.

CPAM: 11712447.9

WHEREFORE, for all of the above-stated reasons, NextEra respectfully requests that the

Court  (i) overrule the Limited Objection; and (ii) grant such other and further relief as this Court

deems just and proper.


Dated: February 9, 2017
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Joseph D. Wright*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Joseph D. Wright (No. 5669)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:   (302) 467-4450
Email: landis@lrclaw.com
        mcguire@lrclaw.com
        wright@lrclaw.com

- *and* –

**CHADBOURNE & PARKE LLP**
Howard Seife *(admitted pro hac vice)*
Robin Ball *(admitted pro hac vice)*
Eric Daucher *(admitted pro hac vice)*
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone:  (212) 408-5100
Facsimile:   (212) 541-5369
Email: hseife@chadbourne.com
        rball@chadbourne.com
        edaucher@chadbourne.com

*Counsel to NextEra Energy, Inc. and NextEra
Capital Holdings, Inc.*

CPAM: 11712447.9