**Exhibit A**

**IN RE ENERGY FUTURE HOLDINGS CORP., *ET AL.*, CASE NO. 14-10979 (CSS)**

**STATUS CHART OF OBJECTIONS AND RESPONSES TO THE
SEVENTH AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY
FUTURE HOLDINGS CORP., *ET AL.*, PURSUANT TO CHAPTER 11 OF THE
BANKRUPTCY CODE AS IT APPLIES TO THE EFH DEBTORS AND EFIH DEBTORS[1]**

| | Objecting Party | Docket Number | Objection | Status of Objection |
|---|---|---|---|---|
| | **PLAN CONFIRMATION OBJECTIONS** | | | |
| 1 | The United States Trustee (the "U.S. Trustee") | 10750 | 1. The Plan is unconfirmable because it contemplates that the fees of the various Indenture Trustees for the funded debt at the EFH/EFIH Debtors will be paid with funds from the estate without providing a sufficient legal justification for doing so or adequate information regarding compliance with section 503 of the Bankruptcy Code.<br><br>2. The U.S. Trustee requests that Article VI.R.1 be amended to include the following provisions:<br><br>a. set forth the legal and factual basis for the reasonableness of the payments for the Indenture Trustees' fees;<br><br>b. clarify that professionals subject to section 503(b) of the Bankruptcy Code shall be compensated only to the extent the fees are authorized, approved, and awarded under section 503(b); and | 1. Objection will go forward. |

---

[1] Capitalized terms used but not defined herein shall be given the meanings ascribed to them in the *Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10551] (the "Plan") and the *Disclosure Statement for the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* [D.I. 10564] (the "EFH/EFIH Disclosure Statement"). All changes to the Plan referred to in this document remain subject to final approval from the Debtors' boards of directors, to the extent required.

The following parties filed reservations of rights: American Stock Transfer & Trust, as successor trustee for the EFH Unsecured Notes [D.I. 10754].

| | **Objecting Party** | **Docket Number** | **Objection** | **Status of Objection** |
|---|---|---|---|---|
| | | | c.  provide a reasonable opportunity for the U.S. Trustee and other parties-in-interest to object to fees on any grounds. | |
| 2 | Delaware Trust Company, as indenture and collateral trustee for the first-lien notes issued by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (the "EFIH First Lien Notes Trustee") | 10760 | 1. The Plan is unconfirmable because the Plan's treatment of the EFIH First Lien Notes does not comply with the requirements for cramdown of secured creditors under section 1129(b) of the Bankruptcy Code because the Plan does not provide for an indubitable equivalent, but rather substitutes over-secured claims with an inadequately funded reserve. Specifically, the the EFIH Claims Reserve is inadequate because:<br><br>a. it reserves funds on account of an insufficient time period, as it assumes that the PIK Group will not commence a "Phase Two" of the Makewhole Litigation on remand and does not take into account that the EFIH Claims Reserve must remain in place until the inter-creditor litigation is resolved, as well;<br><br>b. it does not adequately reserve funds for (1) fees and expenses of the EFIH First Lien Notes Trustee and EFIH Second Lien Notes Trustee, (2) the EFIH First Lien Notes Trustee's Claim against EFIH for breach of the Collateral Trust Agreement, (3) the EFIH Second Lien Notes Trustee's Future Interest Claims, and (4) daily compounding interest on the EFIH First Lien Notes and EFIH Second Lien Notes; and<br><br>c. the Plan improperly allows the EFH Plan Administrator Board to pay its fees and expenses out of the EFIH Claims Reserve, creating an opportunity for the collateral of the EFIH First Lien Notes and EFIH Second Lien Notes to be used against Holders of such Notes.<br><br>2. The EFIH First Lien Notes Trustee argues that the Plan should be modified as follows:<br><br>a. the EFIH Claims Reserve should be increased to a minimum of $2.1 billion, and no distribution should be | 1. The EFH/EFIH Debtors intend to file a revised Plan addressing certain of the issues raised in the EFIH First Lien Notes Trustee's Objection.<br><br>2. Objection will go forward. |

3

| Objecting Party | Docket Number | Objection | Status of Objection |
|---|---|---|---|
| | | made to the PIK Group on the Effective Date;<br><br>b. include protections with respect to the first-priority lien on the EFIH Claims Reserve granted to the EFIH First Lien Notes Trustee, including (1) a requirement that the lien be perfected or that a control agreement be in place, (2) a bar on additional liens on the EFIH Claims Reserve, (3) clarification that the Collateral Trust Agreement governs the inter-creditor rights and obligations between the EFIH Secured Creditors, (4) specification of how funds will be invested, and (5) a restriction on disbursements;<br><br>c. removal of provisions that use the EFIH Secured Creditors' collateral to fund litigation against them (*i.e.*, the payment of the EFH Plan Administrator Board's post-Effective Date fees and expenses from the EFIH Secured Creditors' collateral and, if there is a shortfall, out of the EFIH Claims Reserve); and<br><br>d. the Plan must make clear that the EFIH First Lien Note Indentures, Notes, and Collateral Trust Agreement all continue in force after the Effective Date for the purposes of the intercreditor action and establishing the Claims and rights of the EFIH First Lien Notes Trustee and Holders of EFIH First Lien Notes.<br><br>3. The Plan is unconfirmable and not feasible under section 1129(a)(11) of the Bankruptcy Code because the funding of the EFIH Claims Reserve is insufficient.<br><br>4. The proposed review process for the EFIH First Lien Notes Trustee's fees and expenses is objectionable because (a) the fee review process provides excessive delay for the review of post-Effective Date fees and (b) the timeline is unnecessarily long given that invoices were previously submitted nearly a year ago.<br><br>5. The Plan is unconfirmable under section 1129(a)(1) of the Bankruptcy Code, which requires a plan to comply with applicable provisions of bankruptcy law, because the Plan: | |

| | **Objecting Party** | **Docket Number** | **Objection** | **Status of Objection** |
|---|---|---|---|---|
| | | | a. improperly asserts a "blanket objection" to the noteholders' claims without articulating a factual or legal basis for the objection;<br><br>b. contains provisions which could be interpreted to unlawfully enjoin the EFIH First Lien Notes Trustee and Holders of EFIH First Lien Notes from pursuing claims against the Released Parties; and<br><br>c. contains language which could be impair the EFIH rights of the EFIH First Lien Notes Trustee and holders of EFIH First Lien Notes of their rights to pursue an appeal as well as prosecute the makewhole appeal and receive related claims.[2] | |
| 3 | Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacity as indenture trustee (the "EFIH Second Lien Notes Trustee") | 10762 | 1. The Plan is unconfirmable because the Plan's treatment of the EFIH Second Lien Notes does not comply with the requirements for cramdown of secured creditors under section 1129(b)(2)(A) of the Bankruptcy Code because the EFIH Claims Reserve does not provide a mechanism for full payment of all EFIH Second Lien Note Claims.<br><br>a. Specifically, the EFIH Claims Reserve is inadequate because it (i) accounts only for the accrual of three years of interest, at the wrong rate, when many examples of litigation in connection with bankruptcies have lasted over 5 years; (ii) does not include Future Interest Claims; (iii) improperly erodes the equity cushion that currently exists on the EFIH Second Lien Note Claims; and (iv) | 1. The EFH/EFIH Debtors intend to file a revised Plan addressing certain of the issues raised in the EFIH Second Lien Notes Trustee's Objection.<br><br>2. Objection will go forward. |

---

[2] The EFIH First Lien Notes Trustee suggests that the following bolded language from the Plan's definition of "Allowed" (Plan Art. I.A.13) could mean some unspecified Plan language *is* intended to impair the noteholders' rights regarding the makewhole appeal: "[A] Claim . . . is upheld or otherwise allowed . . . by Final Order (including any such Claim to which the Debtors had objected or which the Bankruptcy Court had disallowed prior to such Final Order); *provided, however,* that **unless otherwise expressly specified in the Plan** the consummation of the Plan and the occurrence of the Effective Date is not intended to impair the right of any Holder or any of the Indenture Trustees to prosecute an appeal from, or otherwise petition for review of, any order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) disallowing any Claim . . . ."

5

| Objecting Party | Docket Number | Objection | Status of Objection |
|---|---|---|---|
| | | does not provide for daily compounding of interest on the Makewhole Claims.<br><br>2. The Plan must be amended to provide for:<br><br>   a. the recordation and perfection of the EFIH Secured Creditors' liens on the EFIH Claims Reserve and the creation of a control account to ensure proper investment of the EFIH Claims Reserve funds;<br><br>   b. a lien on the EFH/EFIH Distribution Account to appropriately account for contingent claims, including Trustee Indemnification Claims, which may not be paid under the EFIH Claims Reserve in certain scenarios; and<br><br>   c. the EFIH Second Lien Notes Trustee to be able to access remaining funds in the Post-Effective Date Administrative Account and to seek disgorgement from counsel to the Plan Administrator in the event the EFIH Claims Reserve is deficient to satisfy all of the Allowed EFIH Second Lien Note Claims.  Otherwise, the EFIH Secured Creditors would be forced to fund litigation against themselves.<br><br>3. The Plan improperly calls for (i) a charging lien advance for the fees and expenses of the EFIH Unsecured Notes Trustee, the amounts for which should be held in the EFIH Claims Reserve until the EFIH Second Lien Note Claims are paid in full; and (ii) payment of the fees and expenses of the PIK Group without review by the Fee Committee and to the detriment of the Holders of EFIH Second Lien Notes, who may not receive payment in full under the EFIH Claims Reserve.<br><br>4. The Non-Retained Professionals Fee Process Disclosure creates unnecessary delay and "new (and unfair standards) for approval of such fees and expenses."  Specifically, the EFIH Second Lien Trustee asserts:<br><br>   a. the EFIH Second Lien Notes Trustee should not be subject to a proposal process which requires the Court to | |

6

| | Objecting Party | Docket Number | Objection | Status of Objection |
|---|---|---|---|---|
| | | | rule on a requested proposal that improperly shifts the burden of approval to the EFIH Second Lien Notes Trustee; <br><br> b. the period of time allotted for the EFH/EFIH Debtors and the Makewhole Litigation Oversight Committee to review and pay fees is too lengthy; and <br><br> c. the Plan establishes an unjustified disparity between a cumbersome and time-consuming review of secured creditor fees, and a lack of any proposed review of the fees incurred by the EFIH Unsecured Notes Trustee, Makewhole Litigation Oversight Committee, and PIK Group. | |
| 4 | Ad Hoc Group of TCEH Unsecured Noteholders (the "TCEH Unsecured Ad Hoc Group")[3] | 10763 | 1. The non-consensual releases of claims and causes of action against NextEra and its officers, directors, employees, agents, and affiliates (the "NextEra Releases") are impermissible because the carve-out for conduct concerning consummation of the Hunt Plan and related PUCT proceedings is too narrow and fails to protect the sponsors of the Hunt Plan's ability to pursue claims and causes of action against NextEra for any misconduct that may have interfered with the consummation of the Hunt Plan. Specifically, the Release Carve-Out does not: <br><br> a. exempt claims against NextEra relating to regulatory approval under the Hunt Plan brought by parties other than the Debtors, such as Ovation or Oncor Electric; <br><br> b. exempt claims against NextEra's affiliates, such as Gexa, or its officers, employees, or representatives; or <br><br> c. exempt claims against NextEra, its affiliates, or agents | 1. Objection will go forward. |

---

[3] Law Debenture Trust Company of New York, as successor Indenture Trustee for the TCEH Unsecured Notes, filed a Joinder to the TCEH Unsecured Ad Hoc Group's Objection [D.I. 10765].

| | Objecting Party | Docket Number | Objection | Status of Objection |
|---|---|---|---|---|
| | | | for any actions that are not strictly related to the Debtors' pursuit of regulatory approvals under the Hunt Plan.<br><br>2. The NextEra Releases are impermissible under Third Circuit law because:<br>   a. Holders of TCEH Unsecured Notes did not have an opportunity to opt out of the releases and have not consented to the NextEra Releases;<br>   b. NextEra's affiliates and agents are not entering into any transactions in connection with the Plan or providing critical financial contribution (and have not provided any evidence to the contrary);<br>   c. the Holders of TCEH Unsecured Notes are not receiving any compensation in exchange for releases of NextEra's affiliates and agents; and<br>   d. the consideration being provided by NextEra does not include any allocation of consideration for the release of NextEra, resulting in the Holders of TCEH Unsecured Notes not receiving any compensation in exchange for release of NextEra.<br><br>3. The TCEH Unsecured Ad Hoc Group also requests that none of Mr. Hickson's deposition testimony be sealed (despite NextEra's designation of such testimony as "confidential") if the TCEH Unsecured Ad Hoc Group must prosecute its objection at the Confirmation Hearing. | |
| 5 | Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, William Fahy, John H. Jones, and David Heinzmann | 10756 | 1. The Plan is unconfirmable because it would violate the due process rights of unmanifested asbestos claimants under (a) Third Circuit law, (b) the Fifth Amendment to the U.S. Constitution, and (c) section 524(g) of the Bankruptcy Code by discharging their claims without notice, compensation, representation, or safeguarding other rights through the establishment of a trust. Specifically, due process violations arise because:<br>   a. the unmanifested asbestos claimants did not have a legal | 1. Objection will go forward. |

| | Objecting Party | Docket Number | Objection | Status of Objection |
|---|---|---|---|---|
| | (collectively, the "Asbestos Objectors") | | representative separate from that of the manifested asbestos claimants;<br><br>b. the unmanifested asbestos claimants did not receive adequate notice because they, like legally incompetent persons, cannot receive notice;<br><br>c. unmanifested asbestos claims will be discharged despite (1) being significant, (2) the risk for erroneous deprivation of unmanifested asbestos claimants' interests, and (3) the lack of a valid purpose for the discharge; and<br><br>d. retrospective reinstatement of an unmanifested asbestos claim cannot cure a deprivation of due process.<br><br>2. The Plan is unconfirmable because it does not satisfy the "good faith" requirement embodied in section 1129(a)(3) of the Bankruptcy Code. The Asbestos Objectors assert that:<br><br>a. the Plan discharges claims without compensation in order to benefit equity holders;<br><br>b. prevents unmanifested asbestos claimants from enforcing their rights; and<br><br>c. the Asbestos Debtors do not have a valid reorganizational purpose for discharging the unmanifested asbestos claims. | |
| 6 | Sommervell County, Sommervelle County Water Improvement District, Glen Rose ISD, Sommervelle Hospital District, Nolan County, Wes Texas Groundwater, Nolan County | 10751 | 1. The plan is unconfirmable to the extent that:<br><br>a. the Taxing Units' claims are treated as anything other than a secured claim;<br><br>b. it does not provide the Taxing Units' secured claims with the interim statutory interest at the rate specified under Section 33.01(c) of the Texas Property Tax Code;<br><br>c. it provides for payment to lower priority creditors prior to the full satisfaction of the Taxing Units' claims;<br><br>d. it provides that any lien, other than Texas tax liens, has a | 1. Resolved by agreement of the parties to the following:<br>a. inclusion of language in Artice VIII.B of the Plan clarifying that Liens of Taxing Units will be reinstated if their Allowed Secured Claims are not paid in full on the EFH Effective Date;<br><br>b. incorporation of language into the Confirmation Order stating that: (i) Allowed Other Secured Claims that are undisputed as of the EFH Effective |

9

| Objecting Party | Docket Number | Objection | Status of Objection |
|---|---|---|---|
| Hospital District, Sweetwater ISD, City of Sweetwater, Blackwell ISD (the "Taxing Units") | | higher priority than the Taxing Units' liens;<br><br>e. it does not expressly provide for the retention of the Taxing Units' property tax liens until all taxes, penalties, and interest secured by those liens have been paid;<br><br>f. it fails to clearly state when payment for the Taxing Units' secured claim can be expected;<br><br>g. it fails to contain cure provisions in case of a default in plan payments to the Taxing Unit; and<br><br>h. it fails to contain a clear deadline for objecting to the Taxing Units' secured tax claim. | Date are to be paid within 60 days of the EFH Effective Date and (ii) the EFH/EFIH Debtors shall file any objections to timely filed Proofs of Claim within 60 days of the EFH Effective Date. |