**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------ x
In re:

ENERGY FUTURE HOLDINGS CORP., *et al.*,

                     Debtors.

------------------------------------------------------------ x

:
:
:
:
:
:
:
:

Chapter 11

Case No. 14-10979 (CSS)

(Jointly Administered)

**Related to Docket No. 10551,
10793, 10794, 10795**

**EFIH SECOND LIEN TRUSTEE'S
<u>SUPPLEMENTAL OBJECTION TO DEBTORS' PLAN OF REORGANIZATION</u>**

The EFIH Second Lien Trustee respectfully submits this supplemental objection (the "**Supplemental Objection**") to the Plan in response to the to the Debtors' Memorandum of Law in Support of the Plan (the "**Debtors' Confirmation Brief**") [Docket. No. 10795], Debtors' proposed confirmation order (the "**Proposed Confirmation Order**") [Docket No. 10793] and UMB's Statement in Support of Confirmation and Reply to Certain Objections to Confirmation of the Plan (the "**UMB Brief**") [Docket No. 10794].[1]

## PRELIMINARY STATEMENT

1.      Through their Confirmation Brief and Proposed Confirmation Order, the Debtors for the first time raise two new issues.  First, they try to avoid Future Interest claims on behalf of the Second Lien Noteholders by either (i) having the Court order the EFIH Second Lien Trustee to make distribution in violation of the terms of the Indenture and Notes, or (ii) doing an end-run around the Trustee by making distribution directly to DTC, in either case thereby circumventing the Trustee's right and obligation to take a Holdback, as indemnification from liability under the Intercreditor Litigation.  Second, they float the concept of a "top up or tap out" mechanism to allow the PIKs to receive a distribution before secured creditors are paid in full, subject to some form of relief if the Claims Reserve dwindles to dangerous levels.  As summarized briefly below, and will be explained in more detail at the Confirmation Hearing, neither the legally impermissible attempts to subvert the Second Lien Trustee's contractual rights and duties – as statutorily protected under the Trust Indenture Act – nor the uncertain promise of "top up or tap out" can allow an inappropriate distribution to the PIKs while putting the EFIH Second Lien Noteholders at risk of not receiving the required payment in full on their secured claims.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan, the Disclosure Statement [Docket No. 10564], the Amended Plan Supplement [Docket No. 10979], the Second Amended Plan Supplement [Docket No. 10752] and the EFIH Second Lien Trustee's Objection to the Plan [Docket No. 10762].

2.     *First*, the Proposed Confirmation Order seeks to deprive the EFIH Second Lien Trustee of substantive rights by directing the EFIH Second Lien Trustee to distribute all amounts immediately to holders (i.e., depriving the EFIH Second Lien Trustee's contractual right to maintain a Holdback).  The Debtors cannot rewrite the Trustee's rights and obligations, and cannot insulate the Trustee from potential liability for non-compliance with those obligations. Tacitly recognizing that it is inappropriate to order the EFIH Second Lien Trustee to put itself at risk, the Debtors' Proposed Confirmation Order offers a new alternative: the Debtors may direct that distributions be made to DTC, around the EFIH Second Lien Trustee, and direct DTC to pay the EFIH Second Lien Noteholders.  But such an end run would be in direct contravention of the Indenture, the terms of the Plan, applicable Federal law – Section 3.17 of the Trust Indenture Act – and the purpose of a common depository clearing system.  The drastic innovation of forcing DTC to in effect replace the EFIH Second Lien Trustee's role as Paying Agent also raises myriad issues as to whether DTC – which is not a participant in these proceedings and has not been given any opportunity to be heard – could (or would) comply with such an order consistently with its own legal and contractual obligations.

3.     *Second*, as Your Honor anticipated, even after withdrawing the Second Amended Plan Supplement the Debtors argue that their proposed "top up or tap out" Plan amendments would be an appropriate solution and that, in any event, the Court always maintains jurisdiction to require that the PIKs put more money into the EFIH Claims Reserve or terminate the Makewhole Litigation if the amount in the Claims Reserve approaches insufficiency.  While this may seem an elegant solution in theory, in practice it raises many difficulties.  For example, the complex term sheet the Debtors submitted as a Second Amended Plan Supplement provided that if the MLOC failed to "top up" when called upon to do so it would agree to "terminate" the

Makewhole Litigation – but what would this mean if at the relevant time there was no judgment in place, and the Secured Trustees were the parties appealing from an adverse decision?  When this and similar questions were raised, the Debtors immediately withdrew the amendment – strongly indicating their recognition that "top up or tap out" is easier said than done. As described in more detail below, "top up or tap out" simply does not work in the real world without putting the EFIH Second Lien Noteholders at risk of not receiving a full recovery as required by the Bankruptcy Code and the Plan.

4.    Finally, UMB on behalf of the PIKs has for the first time advanced a new contention that is contrary to what the Debtors have repeatedly told creditors and the Court about the Plan: that the EFIH Second Lien Noteholders may not be entitled to contract rate of interest on their Makewhole Claims after the Effective Date.  This argument fundamentally misreads the Plan the PIKs have unconditionally agreed to support, and has no basis in the Bankruptcy Code. Contrary to UMB's selective citations, the Plan expressly provides that the terms of the EFIH Second Lien Indenture "shall remain in place from and after the Effective Date for purposes of establishing the Claims associated with or under the . . . EFIH Second Lien Notes."  Even absent this assurance of continued contract rights, there is no basis in common sense or the Bankruptcy Code to suggest that the claims of oversecured creditors can be satisfied by providing that they will be paid, <u>at some later day</u>, whatever they are eventually determined to have been owed as of the Effective Date, without any interest to compensate for the time they were deprived of their proper recovery.  The EFIH Second Lien Noteholders are indisputably entitled to accrue interest at the contract rate until all claims have been paid in full.

## OBJECTION

### I.   Distributions to the EFIH Second Lien Notes Must Be Made to the EFIH Second Lien Trustee, as Paying Agent

5.      The Proposed Confirmation Order directs the EFIH Second Lien Trustee to make the distributions to the EFIH Second Lien Noteholders without maintaining a Holdback to cover the right to indemnification as expressly provided under § § 6.13 and 7.07 of the EFIH Second Lien Indenture. Alternatively, the Debtors will make distributions directly to DTC (bypassing the EFIH Second Lien Trustee as Paying Agent). Proposed Confirmation Order at ¶ 135.

6.      The Debtors' suggestion that the Court direct the EFIH Second Lien Trustee to not maintain a Holdback would impermissibly modify the EFIH Second Lien Trustee's contractual rights and force risk upon the EFIH Second Lien Trustee that it is not expressly required to assume. One of the EFIH Second Lien Trustee's fundamental rights and protections under the EFIH Second Lien Indenture (and this is true of indenture trustees under virtually every corporate bond indenture) is the ability to assert a charging lien against all amounts distributable to the EFIH Second Lien Noteholders (*see* Sections 6.13, 7.07 and 12.02 of the Indenture). *See The Trustee's Role in Asset-Backed Securities*, American Bankers Association, Corporate Trust Committee, 2010, at 4 ("Thus, trustees require indemnification and a lien against trust assets for their expenses in enforcing the indenture and defending themselves against claims."). Moreover, the Debtors' suggestion is inconsistent with the terms of the Plan, which provides that the EFIH Second Lien Indenture survives for a variety of purposes, including for the Trustee to make distributions and exercise a charging lien (Article IV.I of the Plan).[2] The

---

[2] *See* Plan, Art IV.I ("For the avoidance of doubt, the EFIH First Lien Note Indentures, the EFIH Second Lien Notes Indenture, and the EFIH Collateral Trust Agreement shall remain in effect (and the EFIH First Lien Notes Trustee and the EFIH Second Lien Notes Trustee shall remain as trustee, registrar, and paying agent for the purposes set forth in (1)-(5) of this section, as applicable." Section 3 includes: "preserving any rights of the . . . Indenture Trustees to payment of fees, expenses, and indemnification obligations as against any money or property

Debtors should not be permitted to change the substantive rights of the EFIH Second Lien Trustee – set forth in the Plan for months – by language in a proposed order submitted a few days before the Confirmation Hearing.[3]

7.      Failing to maintain a Holdback may ultimately be held to a violation of the Collateral Trust Agreement exposing the EFIH Second Lien Indenture Trustee to liability (*see* Section 2.04 of the Collateral Trust Agreement).  The Confirmation Order specifically provides that the EFIH First Lien Trustee maintains all claims against the EFIH Second Lien Trustee. Proposed Confirmation Order at ¶ 137.  In the Intercreditor Litigation, the EFIH First Lien Indenture Trustee has already asserted that the EFIH Second Lien Indenture Trustee is obligated to hold any distribution in trust pending resolution of the Makewhole Litigation.  Forcing the EFIH Second Lien Indenture Trustee to distribute all funds to the EFIH Second Lien Noteholders without any Holdback under these circumstances would expose the Trustee to inappropriate risk in contravention of the Indenture.  *See* EFIH Second Lien Indenture § 7.02(f) of the Indenture ("None of the provisions of this Indenture shall require the Trustee to expend or risk its own funds or otherwise to incur any liability, financial or otherwise, in the performance of any of its duties hereunder . . . if it shall have reasonable grounds for believing that repayment of such funds or indemnity satisfactory to it against such risk of liability is not assured to it.").

8.      The Debtors' proposed alteration – that distributions will be made directly to DTC – violates the terms of the Indenture and the Trust Indenture Act.[4]

---

distributable to the Holders under the relevant indenture. . . including any rights to priority of payment, and/or to exercise charging liens.").

[3] The language contained in Article IV.I of the Plan was specifically negotiated to avoid objection by the EFIH First Lien Trustee and Second Lien Trustee and has been a feature of the Plan for months.

[4] The absurdity of the Debtors' position is highlighted by paragraph 135 of the Confirmation Order, which expressly provides that DTC is not authorized to "deal" with the Indenture Trustee with respect to plan distributions.  While it is not entirely clear what the Debtors mean by "deal", it is clear that the Debtors are seeking some form of gag order. Aside from being highly questionable whether the Court has jurisdiction to issue such an order, this proposed

9.      Section 2.04 of the Indenture provides that "upon any bankruptcy or reorganization proceedings relating to the Issuer, the [Indenture] Trustee shall serve as Paying Agent for the Notes." Thus, as a result of the bankruptcy filing the EFIH Second Lien Indenture Trustee is the Paying Agent for the EFIH Second Lien Notes; nothing in the Plan purports to or could alter this fact. The purpose of this provision is to ensure that after default – and expressly after bankruptcy – all distributions must come through the Trustee, who can then ensure that proceeds are appropriately applied in accordance with the Indenture. In particular, the Trustee is contractually obligated to apply post-default proceeds in accordance with the waterfall set forth in § 6.13 – including that proceeds are first applied to amounts due under § 7.07, for compensation and indemnification of the Trustee. Until last night, all of the Debtors' Plan documents acknowledged that distributions must go through the EFIH Second Lien Trustee. See Plan Articles IV.C and I.71.

10.     Because complying with the EFIH Second Lien Indenture would result in a Holdback and (as explained in the EFIH Second Lien Trustee's Objection) in turn give rise to a claim for Future Interest, the Debtors alternatively propose to go around the EFIH Second Lien Trustee and transfer funds directly to DTC, with instructions that DTC make distribution to the EFIH Second Lien Noteholders, thereby depriving the EFIH Second Lien Trustee of funds to indemnify it from liability under the Intercreditor Litigation. This proposal would impermissibly subvert the fundamental purposes of the Trust Indenture Act, which was enacted precisely to ensure that indenture trustees are adequately equipped to protect and enforce the rights, and represent the interests, of noteholders. *See* Trust Indenture Act of 1939, § 317, 15 U.S.C.A § 77bbb. The Act itself recites Congress's conclusion that noteholder interests are adversely

---

language highlights that the Debtors are far from certain DTC is required to comply with such an order and the only way that can be hope DTC will comply *is to prevent DTC from even talking to the indenture trustee.*

affected when the indenture trustee "does not have the adequate rights and powers . . . in connection with matters relating to the protection and enforcement of the rights" of the noteholders, and when the trustee did "not have resources commensurate with its responsibilities" to enforce the rights of the noteholders. *Id*. Seeking to direct payment around the EFIH Second Lien Trustee would undermine the purpose of the Trust Indenture Act and the integrity of the indenture trustee's position.

11.    Making distribution around the EFIH Second Lien Trustee would effectively strip the EFIH Second Lien Trustee of its charging lien – in direct contravention of the Indenture. *See* Indenture § 6.13.  As discussed in the Objection, the EFIH Second Lien Trustee is entitled to exercise its charging lien from distributions to cover any potential loss, including for potential indemnification claims.[5]  Any attempt to circumvent the EFIH Second Lien Trustee's charging lien would violate Section 3.17 of the Trust Indenture Act, which expressly addresses the powers of the indenture trustee and duties of paying agents after default, including in bankruptcy.  15 U.S.C.A § 77qqq.  Section 3.17(a) of the Act provides that after the trustee is authorized to "recover judgment, in its own name and as trustee of an express trust against the obligor." Section 317(a)(2) authorizes the indenture trustee "to file proofs of claim and other papers and documents as may be necessary and advisable in order to have the claims of the trustee and of the indenture security holders allowed in any judicial proceedings" – i.e., in bankruptcy.

12.    Additionally, under Section 3.17(b) of the Trust Indenture Act, the paying agent is statutorily required to hold the distribution in trust for the indenture trustee. 15 U.S.C.A § 77qqq (the paying agent "shall hold in trust for the benefit of the indenture security holders or the

---

[5] As discussed in the Objection, the Debtors have refused to acknowledge the Trustee Indemnification Claims or include any amounts for it in the EFIH Claims Reserve and the EFIH Second Lien Trustee cannot be forced to accept a risk of liability with no means of collection.

indenture trustee all sums held by the paying agent"). Distributing payments to any party other than the EFIH Second Lien Trustee, who as noted above is indisputably the Paying Agent under the Indenture, would be inconsistent with the Trust Indenture Act. And it serves nothing for the Debtors to contend, as they do, that they are not making distribution pursuant to the EFIH Second Lien Indenture but rather pursuant to the Plan. The Trust Indenture Act (§ 303(13)) defines "paying agent" as "any person authorized by an obligor [] to pay the principal of or interest on such security on behalf of such obligor." If a transfer were made to DTC for distribution as the Debtors propose, then by definition DTC would be a "paying agent" under the statute, and hence required to hold the transferred funds in trust.

13.    Finally, because the EFIH First Lien Trustee has preserved its rights to seek disgorgement from EFIH Second Lien Noteholders, distributions around the EFIH Second Lien Trustee would lead to disorder in the securities market as holders, buyers, or sellers of EFIH Second Lien Notes would have no notice of whether they are subject to disgorgement risk.

14.    The Debtors have also failed to demonstrate that DTC would comply with an order such as they propose, or that it could do so consistent with its own legal obligations and contractual arrangements with its participant institutions. Nor have the Debtors explained how this Court has jurisdiction over DTC to compel it to comply with any such direction. DTC is not a party to these bankruptcy proceedings, and does not appear even to have been given notice of what the Debtors propose. Clearly, neither DTC nor the EFIH Second Lien Trustee has been given a reasonable opportunity to respond, and adequately develop the complex legal and factual issues raised by to this novel and highly problematic innovation.

15.    A plan may only be confirmed if it is not "by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The Trust Indenture Act provides that in default situations (including

bankruptcies), the indenture trustee must be empowered to enforce all its rights.  The Debtors'
proposal to either direct the EFIH Second Lien Trustee not to maintain a Holdback or deliver
distributions around the EFIH Second Lien Trustee violates the Trust Indenture Act and, if not
rectified, renders the Plan unconfirmable.

16.    The Debtors know that distributions must be made through the EFIH Second Lien
Trustee.[6]  *See* Wright 01/26/2017 Dep., 151:13-24 ("[T]he indenture provides that you will make
payments to the Indenture Trustee . . ."); *see also* Keglevic 01/18/2017 Dep., 102:08-103:16
("All I know is that we will pay the amount to the trustee to whom we're required to pay…").
(excerpts of these depositions transcripts attached hereto as **Exhibit 1**).

17.    The Debtors devised this last minute scheme in an effort to avoid having to
reserve for and ultimately pay Future Interest Claims.  Such heroic efforts are misplaced and
unnecessary.  The PIKs have agreed to support a Plan regardless of the size of the EFIH Claims
Reserve.  The Court should not include provisions in the Proposed Confirmation Order that
would violate a federal statute and deprive the EFIH Second Lien Trustee of its substantive
rights.

## II.    The "Top Up or Tap Out" Structure Does Not Actually Protect the EFIH second Lien Noteholders

18.    The withdrawn Second Amended Plan Supplement contained a term sheet
incorporating a "top up or tap out" structure for adjustments to the EFIH Claims Reserve – both
for the MLOC to ask for money to be released from the EFIH Claims Reserve early and for the
EFIH First Lien Trustee and EFIH Second Lien Trustee to ask for money to be added to the

---

[6] The Debtors already tried once before to have payments go around the EFIH Second Lien Trustee – and then
quickly corrected their mistake.  In connection with the Motion to Approve the EFIH Second Lien DIP at the
beginning of this case, the Debtors filed a proposed order contemplating distributions to be made directly to DTC.
In response to objections by both the EFIH First Lien Trustee and EFIH Second Lien Trustee, the Debtors amended
the order to provide that payments would be made through the  Paying Agent, the EFIH Second Lien Trustee.  *See*
Debtors' Omnibus Reply to Objections to Second Lien DIP Motion [Docket No. 1192], *see also* Revised Proposed
Form of Final Order Approving Postpetition Second Lien Financing [Docket No. 1230].

EFIH Claims Reserve if it looks like there may be a shortfall. In their Confirmation Brief, the Debtors argue that this structure was a means to address objections to the size and duration of the EFIH Claims Reserve and would be a way for this Court to exercise jurisdiction over the EFIH Claims Reserve. Confirmation Brief at ¶ 157.

19.     Whatever good intentions there might have been, "top up or tap out" is a better idea in theory than in practice. As an initial matter, "top up or tap out" suffers a fatal flaw as the Debtors do not propose to include *any* amounts in the EFIH Claims Reserve for Future Interest Claims.[7]  If both the Makewhole Claims and Future Interest Claims are Allowed at the conclusion of three years but Future Interest has not been reserved for, there will necessarily be insufficient funds in the EFIH Claims Reserve to pay both. The structure did not require immediate disgorgement if there was a shortfall (which itself may not be practicable or reliable); it only required the MLOC to post further funds to the EFIH Claims Reserve or stop the Makewhole Litigation.[8]  The EFIH Second Lien Noteholders therefore continue to face substantial risk of non-payment of part of their EFIH Second Lien Note Claims, and the Plan fails the indubitable equivalent requirement. *See In re Wiersa*, 227 F. App'x 603, 607 (9th Cir. 2007) (quoting *In re Arnold & Baker Farms*, 85 F.3d 1415, 1422 (9th Cir. 1996)).

---

[7] The Debtors argue that the Future Interest Claims are contingent and unliquidated and the Court can estimate these claims under Section 502(c) of the Bankruptcy Code. As an initial matter, the Debtors have not complied with any of the procedural notice or substantive requirements to estimate claims. In addition, the Plan provides that all EFIH Second Lien Notes Claims will be paid in cash – *whenever Allowed*. *See* Plan, Art. III.B.20. Estimating Future Interest Claims at zero deprives the EFIH Second Lien Noteholders of their practical ability to collect on these claims if such a decision is reversed on appeal, which such appellate rights have been expressly preserved by the Plan, *see* Art. III.B.20, and in numerous statements to the Court, *see e.g.,* Debtors' Omnibus Reply to Objections to Disclosure Statement Motion [Docket No. 10979], ¶4; 1/3/17 Hearing Tr., 14:4-9 ("[W]e agree that the PIK deal fully protects the first and second lien claims with a cash escrow that allows the EFH creditors to take their recovery, the cash on hand at EFH to potentially see a recovery to the expense that the third parties' make whole decision is reversed and the make whole claims are ultimately disallowed by final order.")

[8] The top up or tap out structure also did not address what would happen if the provision in the Proposed Confirmation Order directing that the EFIH Claims Reserve not include amounts for Future Interest Claims was reversed on appeal.

20.    Even if the EFIH Claims Reserve were increased to provide for Future Interest Claims, there are still significant other flaws in the top up or tap out structure as spelled out in the term sheet, including:

- The term sheet contemplated that following entry of a Final Order disallowing the Makewhole Claims, the Plan Administrator Board can request a hearing seeking to release funds from the escrow and distribute it to the PIKs.  Further, the MLOC or the PIK Trustee would have the right to ask the Court to reduce the size of the EFIH Claims Reserve, or compel the Plan Administrator board to make distributions.  But as discussed through the Objection, the EFIH Second Lien Trustee and EFIH Second Lien Noteholders have other claims – including the Future Interest Claims – that must be reserved for and remain in place until these claims are allowed or rejected by final order.  Therefore, the funds in the EFIH Claims Reserve should not be released until (i) all disputed claims are resolved by Final Order (not a lower court ruling subject to appeal) and (ii) both the Intercreditor Litigation and potential Trustee Indemnification Claims are fully resolved.

- The term sheet contemplates that if additional claims are Allowed by Final Order and in doing a periodic comparison, the escrow obligations are more than 90.01% of the EFIH Claims Reserve (the "Escrow Trigger Point"), the EFIH First Lien Trustee and EFIH Second Lien Trustee can request a hearing to increase the size of the EFIH Claims Reserve.  As the Debtors have previously stated, the EFIH First Lien Trustee and EFIH Second Lien Trustee always have the right to ask the Court for additional relief; this provision is inappropriate to the extent it seeks to limit when the respective trustees can exercise these rights.

- Once it is clear there are insufficient funds in the EFIH Claims Reserve to cover claims that have already been allowed (by any court, not just by Final Order), there should be an immediate hearing to re-evaluate the size of the EFIH Claims Reserve (without the burden being placed on the EFIH First Lien Trustee and EFIH Second Lien Trustee).  Upon reaching an Escrow Trigger Point, the MLOC should not be permitted to raise new arguments why they should not have to immediately top up or tap out, and should not be able to appeal an adverse ruling requiring them to do so (because the delay attendant to such an appeal could well render the top up/tap out protection meaningless).

- The term sheet provides after the Court finds that the EFIH Claims Reserve must be increased, the MLOC has 21 days to ask the PIKs to disgorge distributions, fund the reserve via other means, or immediately terminate the litigation (whatever that means).  The moment it is clear that there is an insufficient cushion in the EFIH Claims Reserve with potential for shortfall, there should be a very short window for the PIKs to "top up."

- The EFIH First Lien Trustee and EFIH Second Lien Trustee are entitled to protections to know that if the PIKs do not "top up" the "tap out" will be immediate and self-implementing.  At a minimum, this would require the MLOC to consent to immediate entry of a non-appealable order Allowing the EFIH First Lien and EFIH Second Lien

Makewhole Claims in the full claimed amount, including interest at the contract rate with daily compounding, and immediate distribution of the funds in the EFIH Claims Reserve to the EFIH First Lien Notes and EFIH Second Lien Notes.

21.    The Debtors' assertion that the Court always retains jurisdiction (pursuant to the retention of jurisdictions provisions of the Plan) to order relief with respect to the EFIH Claims Reserve similarly misses the mark.  While it is correct that the Court retains jurisdiction over the Plan until such time as there has been a remand to the Court, the Court does not have jurisdiction over the litigation still on appeal, and it is far from clear that the Court can simply order the PIKs to put more money in the EFIH Claims Reserve or allow the funds in such reserve to be released to the EFIH First and Second Lien Noteholders.

### III.    The EFIH Second Lien Noteholders are Entitled to Post-Effective Date Interest on the Makewhole Claims at the Contract Rate

22.    UMB (and, notably, *not* the Debtors) advance a strained argument that the Debtors' proposal for the EFIH Claims Reserve already has a huge cushion because it contains contract rate of interest on the Makewhole Claims and the Court may later determine that the EFIH Second Lien Noteholders are entitled to a lower rate of interest.  To refresh the Court's recollection, after abandoning the Makewhole Settlements (which would have settled all claims on the Effective Date), the Debtors and the PIKs jointly proposed the EFIH Claims Reserve to include contract rate of interest on the Makewhole Claims for three years post-Effective Date.  As all parties therefore agree that the Claims Reserve must provide for post-Effective Date interest at the contract rate, at least in the first interest, there is no need or occasion for the Court to address this newly-raised issue at the Confirmation Hearing.  Nonetheless, given UMB's questionable motives for trying to call the secured creditors' right to interest into question, we are compelled to make the following observations.

23.     It is correct that after the Effective Date, the Plan will control what rate of interest applies – but the Plan expressly acknowledges that the Indenture survives for the purpose of establishing the EFIH Second Lien Note Claims.    UMB appears to ignore the following provision:

> The EFIH First Lien Note Indentures and the EFIH Second Lien Note Indenture, and all other agreements governing those notes, shall remain in place from and after the Effective Date for purposes of establishing the Claims associated with or under the EFIH First Lien Notes and the EFIH Second Lien Notes (***including the right . . . to seek and, if successful, receive interest at the contractual rates*** accruing on all of their Allowed Claims, including Additional Interest and interest on interest until those Claims are paid in full and to receive their fees, costs and indemnification) until all EFIH First Lien Note Claims and all EFIH Second Lien Note Claims have either been Allowed by Final Order and been paid in full, in Cash (***with all applicable contractual interest***), or have been disallowed by Final Order.

Article IV, Section I of the Plan (emphases added).    This provision was also disclosed in the Disclosure Statement as part of the PIK Proposal.  Disclosure Statement at p. 22.

24.     In yet another last minute innovation, in the Proposed Confirmation Order, immediately after repeating the Plan language quoted above ensuring survival of the Indentures for purposes of – among other things – preserving the right to contract interest after the Effective Date, the Debtors have now added the following language:

> provided, *however*, for the avoidance of doubt, the foregoing is intended solely to allow the EFIH First Lien Notes Trustee and the EFIH Second Lien Notes Trustee to assert Claims that they may be entitled to under the applicable Indentures and nothing herein shall prejudice any party from arguing, and the Court finding, that, notwithstanding the foregoing, the terms of the Plan, and the Bankruptcy Code, supersede the terms of the Indentures for purposes of determining what constitutes an Allowed Claim, including, without limitation, with respect to post-effective date interest and fee entitlements.

Proposed Confirmation Order at 56.  This newly-proposed language is curious and inappropriate, because there simply are no "terms of the Plan [or] the Bankruptcy Code" addressing the right of

the secured creditors to post-Effective Date interest other than the repeated assurance that the Indentures remain in place for that purpose.

25.     Moreover, even if the Plan did not expressly provide that the Second Lien Noteholders' contract rights with regard to interest survive after the Effective Date, and even if that result were not required (as it is) to ensure that these secured creditors receive the indubitable equivalent of their claims, UMB's suggestion that interest should accrue after the Effective Date only at the Federal Judgment Rate reflects a fundamental misconception about what the "Federal <u>Judgment</u> Rate" means.  By its terms, it is the rate that applies <u>after</u> the legal right to payment has been established until payment is made.  Thus, it might make sense to say that holders would be entitled to the Federal Judgment Rate on the Makewhole Claims after they are allowed – but of course once they are allowed they will promptly be paid so no such issue will arise.  Until such time, holders are entitled to their right to contract interest, *see NML Capital v. Argentina*, 621 F.3d 230, 240 (2d Cir 2010).

26.     To the extent UMB (or any party) intends to argue at the confirmation hearing that the terms of the Indenture providing for contract rate of interest no longer apply, that would be a significant modification to the Plan and impairment of the EFIH Second Lien Note Claims.

## IV.     <u>Joinder in EFIH First Lien Trustee's Supplemental Objection to Plan</u>

27.     The Trustee hereby joins in the objections asserted in the *EFIH First Lien Trustee's Supplemental Objection to Debtors' Plan of Reorganization*, filed contemporaneously herewith, to the extent the EFIH First Lien Trustee's Supplemental Objection addresses proposed terms of the Plan that also apply to the EFIH Second Lien Trustee and Noteholders.

## V.    Reservation of Rights on Confirmation Order and Plan

28.    The Confirmation Order appears to provide additional language that departs from the filed Plan.  For example, the Confirmation Order provides that "the EFH Debtors, the EFIH Debtors, and the EFH Plan Administrator Board shall be authorized to deduct amounts from the EFIH Claims Reserve solely to the extent necessary to satisfy any Allowed General Administrative Claims or Priority Claims"  (Confirmation Order at ¶  132) which is contrary to Plan and Amended Plan Supplement providing that these amounts will be paid out of the EFH/EFIH Distribution Account.[9]  The EFIH Second Lien Trustee reserves all rights to address any other new issues raised in the Confirmation Order that depart from the filed Plan or further modifications to the Plan.

---

[9] It is entirely inappropriate for the PIKs to receive a distribution on the Effective Date when the Debtors contemplate they may need to invade the EFIH Claims Reserve to pay administrative or priority claims.

**<u>CONCLUSION</u>**

WHEREFORE, for the reasons stated above and in the Objection, the EFIH Second Lien Trustee respectfully requests that the Court deny confirmation of the Plan unless appropriate modifications are made and grant such other relief as is just and proper.

Dated: February 10, 2017           PACHULSKI STANG ZIEHL & JONES LLP

                                   */s/ Laura Davis Jones*
                                   Laura Davis Jones (Bar No. 2436)
                                   Robert J. Feinstein (NY Bar No. RF-2836)
                                   919 N. Market Street, 17th Floor
                                   P.O. Box 8705
                                   Wilmington, DE 19899-8705 (Courier 19801)
                                   Telephone: (302) 652-4100
                                   Facsimile: (302) 652-4400
                                   Email: ljones@pszjlaw.com
                                          rfeinstein@pszjlaw.com

                                   *- and –*

                                   KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                   Thomas Moers Mayer
                                   Gregory A. Horowitz
                                   Joshua K. Brody
                                   Kramer Levin Naftalis & Frankel LLP
                                   1177 Avenue of the Americas
                                   New York, New York 10036
                                   Telephone: (212) 715-9100
                                   Facsimile: (212) 715-8000
                                   Email: tmayer@kramerlevin.com
                                   ghorowitz@kramerlevin.com
                                   jbrody@kramerlevin.com

*- and -*

BRYAN CAVE LLP
Stephanie Wickouski
1290 Avenue of the Americas
New York, New York 10104-3300
Telephone: (212) 541-1114
Facsimile: (212) 904-0514
Email: stephanie.wickouski@bryancave.com

*Counsel to the EFIH Second Lien Trustee*