Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3    _____

                                          )

4    In re:                               )Chapter 11

                                          )

5    ENERGY FUTURE HOLDINGS CORP., et al.,)Case No. 14-10979(CSS)

                                          )

6         Debtors.                        )

     _____ )

7

8

9                          United States Bankruptcy Court

10                         824 North Market Street

11                         Wilmington, Delaware

12

13                         February 13, 2017

14                         2:13 PM

15

16

17   B E F O R E :

18   HON CHRISTOPHER S. SONTCHI

19   U.S. BANKRUPTCY JUDGE

20

21

22

23

24

25   ECR OPERATOR:  LESLIE MURIN

Page 2

1    HEARING re Seventh Amended Joint Plan of Reorganization of

2    Energy Future Holdings Corp., et al., Pursuant to Chapter 11

3    of the Bankruptcy Code [Solicitation Version] [D.I. 10551;

4    filed January 4, 2017] (as amended, modified, and

5    supplemented from time to time, the "Plan")

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Nicole Yawn

```
 1    A P P E A R A N C E S :

 2    KIRKLAND & ELLIS LLP

 3         Attorneys for the Debtors and Debtors-in-Possession

 4         300 North LaSalle

 5         Chicago, IL 60654

 6

 7    BY:  CHAD J. HUSNICK, ESQ.

 8         MARK MCKANE, ESQ.

 9

10    WILMERHALE

11         Attorney for EFIH 1st Lien

12         7 World Trade Center

13         250 Greenwich Street

14         New York, NY 10007

15

16    BY:  PHILIP D. ANKER, ESQ.

17

18

19    KRAMER LEVIN NAFTALIS & FRANKEL

20         Attorneys for EFIH 2nd Lien Note Trustee

21         1177 Avenue of the Americas

22         New York, NY 10036

23

24    BY:  JOSHUA BRODY, ESQ.

25         GREGORY HOROWITZ, ESQ.
```

1    AKIN GUMP STRAUSS HAUER & FELD, LLP

2         Attorney for Creditor UMB Bank

3         One Bryant Park

4         Bank of America Tower

5         New York, NY 10036-6745

6

7    BY:  SCOTT L. ALBERINO, ESQ. (TELEPHONIC)

8

9    CHADBOURNE & PARKE, LLP

10        Attorney for NextEra

11        1301 Avenue of the Americas

12        New York, NY 10019-6022

13

14   BY:  HOWARD SEIFE, ESQ.

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Please be seated.

4          (Pause)

5              THE COURT:  Mr. Husnick, good morning -- or good

6      afternoon.

7              MR. HUSNICK:  Good afternoon, Your Honor.  Chad

8      Husnick, with Kirkland & Ellis, on behalf of the debtors.

9      We're here, Your Honor, on a pretrial conference in

10     connection with the hearing to confirm the plan of

11     reorganization for the EFH and EFIH debtors.  Before I turn

12     it over to Mr. McKane to go through the ordinary pretrial

13     conference information, we wanted to spend a moment, if it's

14     okay with Your Honor, updating the Court on some

15     developments in the case.

16             THE COURT:  Yes.

17             MR. HUSNICK:  Thank you.  Your Honor, I'm very

18     happy to report that the debtors, the PIK noteholders

19     representing more than two-thirds in the PIK holdings and

20     approximately 72 percent of the EFIH first lien lenders,

21     which are represented by Mr. Anker, from WilmerHale, and his

22     ad hoc group, have reached an agreement in principle on a

23     settlement of the make-whole disputes.

24             Your Honor, the settlement term would be --

25     there's two terms.  One is 95 percent of the make-whole on

1    the first lien claims.  And it will be at a lower amount for

2    the cross holders within that group.  So if a first lien

3    holder holds certain second lien bonds, they've agreed to

4    settle at a lower amount that we're not putting on the

5    record at the moment.

6            THE COURT:  Lower on the second liens not on the

7    first?

8            MR. HUSNICK:  Lower on the second liens, correct.

9    Just on the second liens.  Thank you.  So 95 percent on the

10   first liens.  Lower amount on the second liens.

11           We are in discussions with the other EFIH second

12   lien holders, predominately represented by Mr. Brody and

13   Mr. Horowitz, of the Kramer Levin firm.  And we'll continue

14   to push forward on that.  We're still working out the

15   logistics of how the hearing will run, the confirmation

16   hearing, which was scheduled to begin tomorrow at 10 o'clock

17   A.M. Eastern time.  And I'll talk about the start time in a

18   second.

19           While we work through those logistics, it may

20   result in a significant narrowing of the issues that need to

21   be addressed by the Court in connection with confirmation.

22   It could result in, for example, moving the escrow issue off

23   the confirmation hearing to a future hearing and, effect,

24   the Court confirming the plan as containing the indubitable

25   equivalents because Your Honor would determine the size of

1    the reserve at some future date, should the settlement not

2    come through.  But those logistics are still being worked

3    out.

4            While we work on that, I believe we coordinated

5    with chambers as to moving back tomorrow's start time from

6    10:00 A.M. Eastern time to 1:30 P.M. Eastern time for a

7    hearing -- or start time so that we can continue to work

8    though these logistics and hopefully have a more streamlined

9    confirmation hearing for Your Honor.  Unless you have any

10   questions, I would just conclude by saying the debtors will

11   work hard.  The milestones are incredibly important to the

12   debtors, and we intend to do everything we can to hold to

13   and get confirmation in advance of the February 22nd

14   milestone.  So we are committed to that.  Thank you.

15           THE COURT:  You're welcome.

16           Anyone?

17           Mr. Anker?

18           MR. ANKER:  Good afternoon, Your Honor.  For the

19   record, Philip Anker, Wilmer Cutler Pickering Hale and Dorr,

20   for Delaware Trust, as the Indenture Trustee for the EFIH

21   first liens and as for the Ad Hoc Group of first lien

22   holders.  And we filed an updated 2019 last week to disclose

23   the holders in those groups.

24           Like Mr. Husnick, I am pleased to confirm that we

25   have an agreement in principle.  Just to add a little bit

1    more flesh to the bones but hopefully not to take too much

2    time, the 95 percent is 95 percent of the principal amount

3    of the make-whole plus interest at the contract rates with

4    semi-annual compounding running from the date of the

5    redemption, June 19, 2014, to the actual date on which

6    payment will be made.  If the plan goes effective April 30

7    of this year, then presumably, April 30 of this year.  And

8    in addition, without interest, all of the fees and expenses

9    of the First Lien Indenture Trustee will be paid at the time

10   when the settlement is implemented.

11           It is critically important to our clients -- and I

12   think there's agreement on this -- that this settlement will

13   not have with it the traditional fiduciary out for the

14   debtors.  We are settling.  The PIKs are settling, and the

15   debtors are settling.  And subject, obviously, to the Court

16   entering an order, we all take the risk of what may happen

17   in other litigation, including the pending petition for

18   rehearing in the Third Circuit.

19           But we are truly settling.  And without troubling

20   the Court with all the fits and starts that have occurred,

21   certainty matters here a lot.  And there has been a lot of

22   difficulty sometimes getting to finality after agreements in

23   principle.  That is critical here.  Therefore, we do expect

24   that whether this goes by a plan process, a 9019 process, or

25   a combination of both, that this will be teed up quickly.

1         Your Honor, obviously, will decide how much time

2    is needed.  But we intend to roll up our sleeves and work

3    with the debtors immediately and continuously to get this

4    teed up and papered very quickly, including some sort of

5    plan support agreement with the PIK so that we are all

6    contractually bound.

7         Finally, to the extent that the settlement ends up

8    including the second liens and so they are fully settled, I

9    think it is the anticipation that we would then dismiss the

10   inter-creditor action.  If there is not a settlement,

11   however, with the second liens or it's a partial settlement

12   but partial non-settlement, I think our contemplation is we

13   would reserve those rights.  But hopefully, the second liens

14   come onboard and we get it done.

15        And finally, I think Your Honor asked the question

16   -- we got the clarification on the record.  My understanding

17   is that to the extent there are cross holders, they have

18   agreed to support a settlement of their second lien

19   positions at a lower percentage than 95 percent.  But as to

20   their first lien positions, they would get the same 95 cent

21   on the dollar treatment as every other first lien holder.

22   Thank you, Your Honor.

23        THE COURT:  Thank you.

24        Mr. Brody?

25        MR. BRODY:  Thank you, Your Honor.  Josh Brody,

1    from Kramer Levin, on behalf of Computer Share, a Second

2    Lien Indenture Trustee.

3              I think all I'd say, Your Honor, is everything

4    that you heard so far from Mr. Husnick and Mr. Anker is

5    accurate.  We are still discussing with the PIKs over what a

6    settlement would look like.  I think the simplest way to

7    think about it is the construct that Mr. Anker laid out and

8    some of the specifics about, you know, how you calculate the

9    claim and fees and all those likely stay the same.  It's a

10   question of what kind of discount we would be taking, if

11   any.

12             And, you know, I'm not going to say that hope

13   springs eternal, because every time I've said that, I've

14   proven wrong.  So I'm hoping that maybe by not saying it,

15   they actually will work out.

16             And obviously, the same thing is true with respect

17   to the idea of pushing off the claims reserve litigation in

18   connection with confirmation.  In theory, I agree with what

19   Mr. Husnick said about sort of just pushing that off and the

20   indubitable equivalents will be satisfied by whatever Your

21   Honor rules it needs to be.  I think there are a couple of

22   specific issues in the plan that relate to the claims

23   reserve but aren't directly related that we have been

24   discussing with the debtors about modifying as well to make

25   pushing off the -- any claim reserve litigation, if

1    necessary, doable so the rest of the confirmation hearing

2    can move forward relatively smoothly.  Obviously, we still

3    have some other issues that we need to raise with Your

4    Honor, but they shouldn't take very long.

5              THE COURT:  Okay.

6              MR. BRODY:  Thank you.

7              THE COURT:  Thank you.

8              Mr. Alberino?

9              MR. ALBERINO:  Good afternoon, Your Honor.  Scott

10   Alberino, from Akin Gump, on behalf of UMB, the PIK Trustee.

11   Very minor comments, Your Honor.

12             The deal came together very quickly.  I think

13   principles, advisers are all kind of catching up and dealing

14   with it in real time here.  We are, you know, hopeful that

15   over the next 24 hours, we will all sit in a room and figure

16   out, you know, the best way to execute upon at least the

17   settlement that we've reached, you know, with Mr. Anker's

18   clients.

19             We'll see what happens over the next 24 to 48

20   hours with Mr. Brody's clients to see whether they're able

21   to create critical mass on a settlement with the second lien

22   group.  I think we are happy about the fact that we will now

23   at least take some of the issues off the table for

24   confirmation.  We're all mindful of the deadlines under the

25   NextEra agreement.  We're happy to see the case proceed

1    towards confirmation in an expedited way.

2              And obviously, if for some reason, there's a snag

3    in the deal, we'll be back in front of Your Honor very

4    quickly.  I would assume at the end of the day, we're going

5    to get there on all the documents.  And we'll figure out how

6    to -- you know, how to execute on the settlements.

7              If not, as, you know, we've discussed before, I

8    think, you know, the concept of taking out the modules, so

9    to speak, on the reserve issues, dealing with them after the

10   fact -- obviously, all parties' rights are reserved on all

11   fronts in that regard.  And we'll, hopefully, never be back

12   in front of Your Honor on those points.  But if not,

13   obviously, all rights are all reserved there.

14              THE COURT:  All right.  Very good.

15              MR. SEIFE:  Good afternoon, Your Honor.  Howard

16   Seife, from Chadbourne & Parke, for NextEra, one of the --

17   the plan proponent here with the debtors.  We find it

18   encouraging that the parties seem to have reached these

19   tentative agreements.

20              We find -- we echo the remarks of Mr. Husnick that

21   the benchmark of the 22nd for obtaining a confirmation order

22   remains of paramount importance.  And I was reassured by

23   each of the parties that are discussing potential

24   resolution, counsel for the 1 L's, the 2 L's, the PIKs, that

25   however this comes together, it will not create a delay in

1      the ability to seek a confirmation order from Your Honor.

2      As all the parties know, the regulatory hearings in Texas

3      start on the 21st.  And it'll be extremely relevant to those

4      proceedings that we have a confirmation order in place.  So

5      that is of paramount importance to us, and we're reassured

6      that the parties understand that is a hard deadline for

7      NextEra in the transaction.

8                   THE COURT:  Okay.

9                   MR. SEIFE:  Thank you.

10                  THE COURT:  Thanks a lot.  Well, we will start

11     tomorrow at 1:30 with a chambers conference at 1:00.  And

12     tomorrow will only be opening argument.

13                  MR. MCKANE:  Very good, Your Honor.

14                  THE COURT:  Okay.

15                  MR. MCKANE:  Your Honor, for the record, Mark

16     McKane, of Kirkland & Ellis, for the debtors.  Transitioning

17     to the actual issues for the pretrial conference, very

18     pleased to announce that, as a precursor to the settlement

19     that we just discussed, there was continued collaboration

20     among the participants in the hearing to streamline this

21     week's hearing and reflecting that collaboration, the

22     parties have filed a series of stipulations on the docket

23     that will make this week's proceedings, regardless of

24     whether we're doing -- and addressing the reserve issue or

25     not, much more compact.  Specifically, at Docket Number

1    10776 is what we refer to as the financial adviser

2    stipulation between the debtors, the EFIH First Lien Trustee

3    and the EFIH Second Lien Trustee, in which the parties and

4    their respective advisers worked together to eliminate the

5    need for live expert testimony on the size of the EFIH

6    claims reserve.

7            So whether we try that issue this week or at

8    another time, we will have streamlined that proceeding.

9    Specifically, we've all agreed that the size of the EFIH

10   claims reserve in six different scenarios result is simple

11   math that we've all agreed to.  So as to those issues, the

12   parties will not call expert witnesses live and will not

13   seek to cross-examine any of those experts.  And the parties

14   have stipulated to the admissibility of the expert reports

15   that were filed -- that were exchanged between the

16   respective parties as the written directs for the EFIH

17   claims reserve.

18           Now, the debtors will call Mr. David Ying in

19   connection with their obligations under Section 1129(a)(11)

20   of the Bankruptcy Code but not as it relates to the reserve.

21   So that is the financial adviser's stipulation.  It will be

22   very helpful in presenting the issues of the reserve size to

23   the Court.

24           A second stipulation was entered into with the

25   asbestos objectors at Docket Entry 10766.  And it's also

1    attached to the initial pretrial order.  On that as it

2    relates to that issue, on Wednesday, the debtors plan to

3    call Dr. Thomas Vasquez from Ankura Consulting Group, to

4    testify about his forecasts of the costs of resolving the E-

5    Side debtors alleged asbestos liabilities.

6            In the Ankura stipulation, the parties agree that

7    Dr. Vasquez's opinions will be admissible for the E-Side

8    confirmation hearing for the purposes of determining

9    feasibility and other Section 1129 confirmation issues.

10   However, the parties have agreed that, so as to avoid

11   potentially unnecessary motions practice, that any findings

12   entered into as it relates to the size of the claims in this

13   proceeding will not serve as a cap or a floor as to the

14   amounts actually due on such claims and will not be binding

15   on the parties, to the extent that there are claims issues

16   down the road.  And for that, we thank Mr. Hogan and his

17   side for working together with us.

18           In addition, there are two other stipulations we

19   want to call to the Court's attention.  The first is at D.I.

20   10804, and that's a stipulation between the debtors and the

21   EFIH Secured Trustees regarding the size of fees relating to

22   their work pre-emergence.  In the event that there is no

23   settlement or the settlement falls apart for some reason,

24   those amounts will matter as it relates to what will be paid

25   out on the effective date and what will be potentially

1    reserved.  But we will not be having a dispute as to what

2    the number is.  And to that, we're grateful to the EFIH

3    First Lien and Second Lien Trustees.

4         And then finally, at Docket Entry 10805, the EFIH

5    Secured Trustees entered into a stipulation with certain PIK

6    signatories to the PSA.  And this stipulation avoided a

7    series of depositions of PIK group members and potentially

8    the need for one or more of those members of the PIK group

9    to testify at confirmation.  And again, we're grateful to

10   those parties for working out those issues.

11        And then finally, Your Honor, the debtors and the

12   counsel for the asbestos objectors, specifically, Mr. Hogan,

13   have worked collaboratively to streamline the presentation

14   of evidence as it relates to the asbestos issues.  And

15   consistent with paragraph 3 of your initial pretrial order,

16   the debtors and Mr. Hogan have agreed to a set of

17   designations relating to the December 5 motion to dismiss

18   hearing.  Those include joint deposition designations, the

19   agreement as to what would be admitted with regards to

20   written direct testimony of Mr. Horton (ph), Mr. Muldavan

21   (ph), and Mr. Hunter filed in connection with that motion to

22   dismiss.  And agreed-upon designations for trial testimony

23   with regards to Mr. Horton, Mr. Muldavan, and Mr. Hunter and

24   certain exhibits and hearing demonstratives entered into

25   evidence at that trial.

1          So, Your Honor, consistent with paragraph 3, on

2     Wednesday, we will be moving certain portions of that record

3     into evidence in this proceeding.  And we, again, appreciate

4     and acknowledge Mr. Hogan's efforts in working with us on

5     those matters.  So based on all of that work that we have

6     done prepetition, we are very confident that we will be able

7     to get this hearing done this week.

8          THE COURT:  Thanks a lot.

9          MR. MCKANE:  So, Your Honor, with regards to the

10    final pretrial order, last Tuesday, the debtors had an all-

11    hands meeting to confer, telephonic conference, with the

12    parties to discuss the final pretrial order.  And on

13    Wednesday evening, the debtors filed a notice of the

14    parties' joint proposed stipulation for that.  And that's at

15    Docket Number 10787.  And, Your Honor, we believe there are

16    no outstanding objections or issues as it relates to that

17    order.  And we have a copy.  I'll just submit it up.

18         THE COURT:  I saw something in the certification

19    of counsel to the extent there was still a dispute with

20    Mr. Anker and Mr. Birdie (ph), I take it.  But that's been

21    resolved?

22         MR. MCKANE:  The good news is since the filing of

23    that, we did file our reply brief.  They did file their

24    supplemental objections.  That issue is --

25         THE COURT:  Moot?

1          MR. MCKANE:  -- water under the bridge.

2          THE COURT:  Okay.  Very good.  Please approach.

3      (Pause)

4          THE COURT:  Now, I received a notebook with some

5    written directs, but I don't think I've received, at least

6    in a handy notebook collection, the stipulations of fact.  I

7    think it's probably buried in the five volume set that is

8    currently cropping up.

9          MR. MCKANE:  Yes.

10         THE COURT:  My table -- could you send over just

11    the stips.?

12         MR. MCKANE:  Absolutely, Your Honor.

13         THE COURT:  In a binder?  That would be very --

14    two sets.

15         MR. MCKANE:  Yeah.

16         THE COURT:  One for me and one for Ms. Whitehouse

17    (ph).

18         MR. MCKANE:  Absolutely, Your Honor.  And just to

19    make sure we have a complete set, on Friday, the debtors

20    served the written directs of Mr. Keglovic (ph) and

21    Mr. Horton.  And we do anticipate them to likely be our

22    first two witnesses.

23         On Saturday, we served the written directs of

24    Dr. Vasquez, Mr. Ying, and Mr. Stewart (ph).  And we also

25    provided a service copy of Jane Sullivan's voting report,

1    which is at D.I. 10791.  And on Sunday, we served the

2    written direct of Mr. Wright (ph).

3              There are two non-debtor written directs, and

4    that's Mr. Hixon (ph) of NextEra and, I believe, Mr. Major

5    from Computer Share.  So that is the comprehensive set of

6    written directs.  We'll make certain that you have all of

7    those as well as the stipulations.

8              THE COURT:  Yeah, please, do.  I don't know if my

9    notebook has all of those.

10             MR. MCKANE:  That's our concern as well.  So we'll

11   follow-up.

12             THE COURT:  Okay.  That'd be great.

13             MR. MCKANE:  Okay.  Thank you, Your Honor.

14             THE COURT:  You're welcome.

15             All right.  I signed the -- well, I was going to

16   say I signed the order, but maybe I shouldn't say that.

17             MR. ANKER:  Philip Anker, Wilmer Cutler Pickering

18   Hale and Dorr, for the EFH First Liens.  No objection, Your

19   Honor, to signing the order.  I stood -- and this may

20   reflect the fact that we really are acting in truly real

21   time.

22             But if we had not announced an agreement in

23   principle, I would have been, for example, saying to Your

24   Honor we have some objections to some of the direct

25   testimony that deals with our issues.  We have deposition

1   designations and some disagreements about them and

2   objections.  And I'd want to make sure, because if we were

3   really litigating this week the size of the reserve, I think

4   those depositions would be quite important.  And I'd want to

5   make sure they got to Your Honor.

6          I also would be leaving this courtroom today to

7   work harder to trim down an overly long opening statement

8   that I have.  But my, at least, working assumption, subject

9   to Your Honor agreeing -- obviously, it's your courtroom.

10  If you don't like the process, we need to do what you want.

11  But my understanding was that fundamentally, I'd be sitting

12  down over the next several days.

13         All of my rights with respect to the size of the

14  reserve would be preserved.  And if we -- and I really don't

15  think this is going to happen.  But if for some reason the

16  settlement fell apart and we ended up having to litigate

17  whether the reserve as proposed by the debtors, the 1.3

18  billion, or a greater amount had to be put in reserve in the

19  EFIH claims reserve, that would be, including opening

20  statements and presentation of evidence, done at a later

21  date between now and the effective date, or potentially, I

22  supposed, after the effective date but with none of the

23  money going out to the PIK holders on the effective date so

24  that it's all maintained.

25         I just rise because I think that is the most

1    efficient process, frankly.  I think it's a better use of my

2    time and everyone else's time that we try to get this

3    settlement done and papered.  But obviously, I want to be at

4    Your Honor's disposal, and I wanted to make sure my

5    understanding was not inconsistent with others' about what

6    we're doing and what tomorrow will be.

7              I'm happy to be on the podium tomorrow, Your

8    Honor, but I really do think it would be more productive to

9    do other things.

10             MR. MCKANE:  And, Your Honor, I don't think I

11   heard anything that I disagree with.  The fact that we

12   worked out a pretrial order that enables for written directs

13   and those type of things -- all of his rights are reserved

14   as it relates to the objections that he served with regards

15   to those written directs as well as working out deposition

16   designations.  We agreed that may not be the best exercise

17   or use of our time.

18             And to the extent that we were going to call

19   witnesses, obviously, that's one way to obviate any

20   objections to the written direct is to lay additional

21   foundation to try to moot out the objection.  But all of his

22   rights are preserved on that, and there's nothing in the

23   order you just signed that would address that.  And we do

24   agree that the best use of our time over the next 22 hours

25   is to try to finalize this deal and have a process going

1    forward.  But regardless of how we proceed, between starting

2    at 1:30 tomorrow, if we had to do the whole thing, we'd

3    still be done.

4                THE COURT:  Okay.

5                MR. MCKANE:  -- on Friday.

6                MR. HOROWITZ:  Good afternoon, Your Honor.

7                THE COURT:  Good afternoon.

8                MR. HOROWITZ:  Gregory Horowitz, from Kramer Levin

9    Naftalis & Frankel, for the EFIH Second Lien Note Trustee.

10   I only rise to make a couple of points.  First, with regard

11   to the written direct testimony, while Mr. Anker did serve

12   some written objections, it was our understanding that the

13   appropriate time to object to the written testimony is when

14   the witness shows up.  And we do have objections to some of

15   that testimony, but we'll raise those objections if and when

16   that becomes necessary.

17                With regard to the testimony of Mr. Major, who is

18   a representative of Computer Share, we served his written

19   testimony on the debtors and other parties on Friday.  We

20   did not present to the Court.  I think that, based on

21   developments, Your Honor, it's very likely that we'll be

22   making some changes to that testimony.

23                There are -- in the new proposed confirmation

24   order that the debtors served early Friday morning, there

25   were some new proposals concerning directing Computer Share

1    or potentially making distribution directly to DTC that, as

2    we spelled out in our supplemental objection, we took strong

3    issue with.  Based on developments, it looks fairly likely

4    that that's not going to be an issue, that that proposal is

5    going to be removed.  And while I don't want to prejudge

6    things, Your Honor, it's very likely that we will want to

7    revise Mr. Major's written testimony before submitting it to

8    take out unnecessary references that address that issue.  So

9    given that tomorrow's just going to be argument and not

10   witness testimony, Your Honor, I think that we will wait

11   until the end of the day tomorrow, if that's okay with Your

12   Honor, to provide you with the written testimony.

13            THE COURT:  Mr. McKane?

14            MR. MCKANE:  There is no order, no offense, that

15   you just signed that says that, you know, written directs

16   must be exchanged four days before the person testifies.

17   That's been a burden the debtors have carried, you know,

18   throughout the number of confirmation proceedings.  I fully

19   understand what Mr. Horowitz is saying, which is we may trim

20   down and narrow the scope of his testimony.

21            We have been working with Mr. Horowitz to schedule

22   a deposition for Mr. Major.  That will -- it's currently

23   scheduled to go forward Tuesday after the end of the court

24   proceedings.  Whether -- I don't think I can consent to a

25   revised written direct at this time, but that doesn't mean

1    I'm trying to be obstructionist.  I just want to work with

2    him to figure out a better way for the testimony to be

3    presented to Your Honor.  And that most likely would be

4    live.

5              THE COURT:  I assume you would have no objection

6    to him deleting --

7              MR. MCKANE:  No, I have no problem with that.

8              THE COURT:  -- what you've already received?

9              MR. MCKANE:  That's --

10             THE COURT:  Your issue is is he going to add

11   additional modifications.

12             MR. MCKANE:  That's right.  That's right.  I have

13   no problem with him paring back.  And, you know, all I'd ask

14   -- and that would be it.  It'd be a piece of cake.

15             MR. HOROWITZ:  For clarity, Your Honor, that is

16   all I was referring to is removing material, not --

17             THE COURT:  All right.

18             MR. HOROWITZ:  -- adding.

19             THE COURT:  So we have no issue.

20             MR. HUSNICK:  And I can represent, Your Honor, as

21   Mr. Horowitz mentioned, one of the issues that was raised in

22   the confirmation order is the direction to the Indenture

23   Trustee or distribution around the Indenture Trustee if we

24   do moving the escrow out off confirmation, moving that

25   debate out.  Those two findings would not be needed at

Page 25

1    confirmation.  So I think that entire issue shifts off.  So

2    that's what we're after.

3              MR. HOROWITZ:  Just for clarity, Your Honor, it's

4    not the findings.  Those are actually directions in the

5    confirmation order.  That is something that we're not sure

6    we --

7              THE COURT:  Correct.  Findings and rulings, yeah.

8              MR. HOROWITZ:  Okay.  Thank you.

9              THE COURT:  Excellent.  All right.

10             Sounds like a tremendous amount of work is being

11   done, and I very much appreciate it.  We're getting to the

12   point in this case where we could have a confirmation

13   hearing without actual -- it's like happens like that.  So

14   that's excellent.

15             And not to be facetious, that's a sign of lawyers

16   working very, very hard and clients being cooperative.  And

17   I truly appreciate that.

18             So I've signed this order.  We'll have a chambers

19   conference at 1:00.  We'll start oral argument at 1:30.

20             How much time have we set aside for that?  Three

21   hours?  Three-and-a-half?

22             MR. MCKAY:  Your Honor, that's right, three-and-a-

23   half hours.  The objectors had asked for two, and we were

24   going to hold ourselves to one-and-a-half.

25             THE COURT:  Okay.  Fine.  All right.  We'll work

1    within the confines of that.  There won't be a problem.  And

2    hopefully, it'll be shorter because some people won't feel

3    obligated to make oral argument.  Certainly, I have no

4    problem reserving all rights in connection with the reserve

5    litigation.  But we'll see how events continue to transpire

6    over the next 48 hours -- 24 hours.

7            Very good.  Anything else?

8            MR. MCKANE:  No, Your Honor.

9            THE COURT:  All right.  See you tomorrow at 1

10   o'clock.

11           MR. MCKANE:  Thank you.

12           THE COURT:  Thank you.

13       (Whereupon these proceedings were concluded at 2:42 PM)

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3     I, Nicole Yawn certify that the foregoing transcript is a

4     true and accurate record of the proceedings.

5

6

7        Nicole Yawn    Digitally signed by Nicole Yawn
                        DN: cn=Nicole Yawn, o=Veritext,
8     _____ ou, email=digital@veritext.com,
                        c=US
                        Date: 2017.02.14 14:38:22 -05'00'

9     Nicole Yawn

10

11

12

13    Date:  February 14, 2017

14

15

16

17

18

19

20

21

22

23    Veritext Legal Solutions

24    330 Old Country Road - Suite 300

25    Mineola, NY 11501