# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) Hearing Date: March 28, 2017 at 10:00 a.m. |
| | ) Objection Deadline: March 21, 2017 at 4:00 p.m. |

## MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER APPROVING THE EFIH SETTLEMENT BETWEEN THE DEBTORS, CERTAIN HOLDERS OF EFIH FIRST LIEN NOTE CLAIMS, CERTAIN HOLDERS OF EFIH SECOND LIEN NOTE CLAIMS, AND CERTAIN HOLDERS OF EFIH UNSECURED NOTE CLAIMS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), approving the settlement by and among (a) the Debtors; (b) the Supporting EFIH Unsecured Creditors (as defined herein); (c) the Supporting EFIH First Lien Creditors (as defined herein); and (d) the Supporting EFIH Second Lien Creditors (as defined herein), substantially in the form attached hereto as **Exhibit 1** to **Exhibit A** (the "EFIH Settlement"). In support of this Motion, the Debtors submit the *Declaration of Andrew M. Wright in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the EFIH Settlement Between the Debtors, Certain Holders of EFIH First Lien Note Claims, Certain Holders of EFIH Second Lien Note Claims, and Certain Holders of EFIH*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Unsecured Note Claims* (the "Wright Declaration"), attached hereto as **Exhibit B**. In further support of this Motion, the Debtors respectfully submit as follows.[2]

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested in this Motion are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

4. By this Motion, the Debtors seek entry of the Order approving and authorizing the Debtors to perform under the EFIH Settlement with (a) approximately 67.5% of the Holders of General Unsecured Claims Against the EFIH Debtors that are party to the EFIH Unsecured Plan Support Agreement (the "Supporting EFIH Unsecured Creditors"); (b) the Holders of EFIH First

---

[2] Capitalized terms used but not defined herein shall have the full meaning set forth in the Plan (as defined herein).

Lien Note Claims who become a party to the EFIH Settlement (the "Supporting EFIH First Lien Creditors");[3] (c) the Holders of EFIH Second Lien Note Claims who become a party to the EFIH Settlement (the "Supporting EFIH Second Lien Creditors" and, together with the Supporting EFIH First Lien Creditors, the "Supporting Secured Creditors");[4] and (d) the Debtors (collectively, (a)-(d), the "EFIH Settlement Parties"). The EFIH Settlement provides the following (among other things):[5]

(a) ***EFIH First Lien Claims.*** The Debtors will pay (a) 95% of (i) the Makewhole Claims in respect of the EFIH First Lien Notes, and (ii) the interest, at the contract rate, on the EFIH First Lien Makewhole Claims accrued as of the date of repayment; (b) pursuant to section 506(b) of the Bankruptcy Code, 100% of the documented fees, expenses, and indemnification claims, if any, incurred by the EFIH First Lien Notes Trustee and Supporting EFIH First Lien Creditors; and (c) 100% of any additional accrued and unpaid interest, again at the contract rate.

(b) ***EFIH Second Lien Claims.*** The Debtors will pay (a) 87.5% of (i) the Makewhole Claims in respect of the EFIH Second Lien Notes, and (ii) the interest, at the contract rate, on the EFIH Second Lien Makewhole Claims accrued as of the date of repayment; (b) pursuant to section 506(b) of the Bankruptcy Code, 100% of the documented fees, expenses, and indemnification claims, if any, incurred by the EFIH Second Lien Notes Trustee and Supporting EFIH Second Lien Creditors; (c) 100% of accrued and unpaid principal amount of EFIH Second Lien Notes and interest thereon accrued as of the date of repayment, and (d) 100% of any additional accrued and unpaid interest, again at the contract rate.

(c) ***Temporary Stay and Ultimate Termination of Makewhole Litigation.*** The Debtors will seek a temporary stay of litigation regarding the Makewhole Claims (the "Makewhole Litigation") and, upon entry of the

---

[3] To date, Holders of approximately 88% in dollar amount of EFIH First Lien Notes support the EFIH Settlement. Executed signature pages for over 50.1% of the EFIH First Lien Notes are expected to be released as of the date of the filing of this Motion and additional signature pages are being assembled.

[4] To date, Holders of over 85% in dollar amount of EFIH Second Lien Notes Claims support the EFIH Settlement. The Holders of EFIH Second Lien Notes are working to finalize issues with respect to a Direction Letter and hope to deliver executed signature pages in a timely fashion (and prior to the deadline to object to this Motion).

[5] The summary contained in this Motion is qualified in its entirety by the provisions of the EFIH Settlement. To the extent anything in this Motion is inconsistent with the EFIH Settlement, the terms of the EFIH Settlement shall control.

3

        Order, file a notice or pleading withdrawing the request for rehearing currently pending with the Third Circuit. Upon remand to the Bankruptcy Court, the Debtors and the EFIH Secured Trustees will enter a stipulation of dismissal of the Makewhole Litigation with prejudice.

    (d)    ***Vote to Accept the Plan.*** The Supporting Secured Creditors shall be deemed by entry of the EFH Confirmation Order to have changed any vote to reject the Plan to a vote to accept the Plan.

    5.    The Debtors are also seeking to bind all Holders of EFIH First Lien Notes, EFIH Second Lien Notes, and EFIH Unsecured Notes that have not otherwise entered into the EFIH Settlement (the "Non-Signing Creditors") to the terms of the EFIH Settlement. The Supporting EFIH First Lien Creditors and the Supporting EFIH Second Lien Creditors hold the requisite amounts to direct their respective trustees to support the EFIH Settlement, and the EFIH First Lien Notes Trustee and the EFIH Second Lien Notes Trustee (together, the "EFIH Secured Trustees") are empowered by their respective indentures and the Trust Indenture Act (the "TIA") to bind the Non-Signing Creditors. The Debtors are also seeking approval of the following robust notice program to the Non-Signing Creditors: the Debtors propose to (a) mail or cause to be mailed the notice, substantially in the form as attached hereto as **Exhibit C** (the "Settlement Notice"), to all Holders of EFIH First Lien Note Claims and all Holders of EFIH Second Lien Note Claims as of February 15, 2017, and (b) publish the Settlement Notice (i) on one occasion in *The Wall Street Journal*, *USA Today*, *The Dallas Morning News*, the *Houston Chronicle*, the *Corpus Christi Caller Times*, the *Fort Worth Star-Telegram*, and the *Waco Tribune-Herald* and (ii) on the restructuring website established by the Debtors' claims and noticing agent, available at http://www.efhcaseinfo.com, on February 22, 2017, or as soon as reasonably practicable thereafter.

RLF1 16988718v.1

**Background**

6. On April 29, 2014, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

7. On November 17, 2016, just weeks before the hearing to consider confirmation of the as-then-drafted plan of reorganization (the "Prior Plan") with respect to the EFH/EFIH Debtors, the United States Court of Appeals for the Third Circuit (the "Third Circuit") issued an opinion (the "Makewhole Opinion") reversing the Bankruptcy Court's order disallowing the EFIH First Lien Makewhole Claims and the EFIH Second Lien Makewhole Claims (together, the "Makewhole Claims"). The Makewhole Opinion rendered the Makewhole Claims neither Disallowed Makewhole Claims nor Allowed Makewhole Claims, meaning that the EFH/EFIH Debtors could no longer satisfy a condition precedent to the Prior Plan.

8.  The EFH/EFIH Debtors engaged in negotiations with key creditor groups at EFIH to attempt to negotiate a consensual path forward and, ultimately, developed and filed a plan of reorganization (the "Seventh Amended Plan") that reflected a settlement reached with the Supporting EFIH Unsecured Creditors to continue to pursue the Makewhole Litigation and, in the meantime, escrow funds on account of disputed Claims asserted by the EFIH Secured Trustees and Holders of EFIH First Lien Notes Claims and EFIH Second Lien Notes Claims. On the eve of the hearing to consider confirmation of the Seventh Amended Plan, the EFH/EFIH Debtors, the Supporting Secured Creditors, and the Supporting EFIH Unsecured Creditors reached an agreement in principle to settle the Makewhole Claims, which is reflected in the *Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan"), which was confirmed by the Court on the record at the EFH Confirmation Hearing on February 17, 2017.

### The EFIH Settlement

9.  The Makewhole Litigation has been a significant and long-standing dispute in these chapter 11 cases. Following the Third Circuit's issuance of the Makewhole Opinion, it became clear that obtaining a Final Order disallowing the Makewhole Claims would be significantly less certain than previously thought, expensive, time-consuming, and result in a substantial depletion of the consideration available to satisfy claims, to the detriment of all junior EFIH stakeholders.[6] In addition to the nearly $1 billion in Makewhole Claims and interest thereon that could become Allowed as a result of the Makewhole Litigation, the Debtors faced

---

[6] Indeed, in evaluating potential appellate avenues, the Debtors have concluded that the Makewhole Litigation could take as many as three years following the EFH Effective Date to resolve—three years during which interest would potentially accrue at a significant rate.

mounting legal fees and other expenses. The EFIH Settlement provides for payment of less than 100 percent of the Makewhole Claims and cuts off the run-rate for interest and litigation costs.

10. Importantly, the EFIH Settlement obviates the need to escrow billions of dollars pending resolution of the Makewhole Litigation. In the absence of the EFIH Settlement, the Debtors were prepared to escrow $1.301 billion on account of the Makewhole Claims and asserted Claims for interest, fees, and expenses. Had the EFIH Secured Creditors' objections to the Seventh Amended Plan been sustained, the Debtors may have been required to escrow up to all of the remaining distributable consideration from the Merger transaction, resulting in over $4.3 billion being withheld from creditors for an indeterminate period. Instead, approval of the EFIH Settlement will allow *over a billion dollars to flow to junior stakeholders on the EFH Effective Date.*[7]

11. The EFIH Settlement is the product of active, arm's-length negotiations between the EFH/EFIH Debtors, the Supporting Secured Creditors, and the Supporting EFIH Unsecured Creditors. The result is a fair settlement of significant disputed claims that achieves prompt closure and avoids further protracted and uncertain litigation. The EFH/EFIH Debtors believe the EFIH Settlement is in the best interests of their estates and stakeholders. Resolving the Makewhole Litigation *now* will save significant time and costs, accelerate substantial distributions Plan to various creditors, and maximize value for the Debtors' estates.

---

[7] The Settlement Term Sheet contemplates a limited reserve for each of the EFIH First Lien Trustee and EFIH Second Lien Trustee to cover post-EFH Effective Date fees, expenses, and indemnification claims.

## Basis for Relief

**I.  The EFIH Settlement Satisfies Section 363(b)(1) of the Bankruptcy Code.**

12.  Section 363(b)(1) of the Bankruptcy Code provides that a bankruptcy court, after notice and a hearing, may authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In the Third Circuit, courts have authorized a debtor's use of property of the estate outside the ordinary course of business when such use has a "sound business purpose" and is proposed in good faith. *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991). Courts also require adequate and reasonable notice to be provided to all interested parties and that fair and reasonable consideration be provided in exchange for the use of estate assets. *See In re Exaeris, Inc.*, 380 B.R. 741 (Bankr. D. Del. 2008); *In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332749, at *7 (D. Del. May 20, 2002); *Del. & Hudson*, 124 B.R. at 176.

13.  The Debtors submit that the EFIH Settlement satisfies section 363(b)(1) of the Bankruptcy Code. Specifically, the proposed EFIH Settlement was negotiated at arm's length and in good faith. The EFIH Settlement would, if approved, resolve the Makewhole Litigation, cut off the accrual of interest and fees, allow approximately $2 billion in EFIH Second Lien Notes principal and interest to be distributed to Holders on the EFH Effective Date, and immediately release over $1 billion in consideration to Holders of EFIH Unsecured Notes. Accordingly, the Debtors respectfully request that the Court approve the EFIH Settlement.

**II.  The EFIH Settlement is Fair and in the Best Interests of the Debtors' Estates, Is a Proper Exercise of the Debtors' Business Judgment, and Should Be Approved.**

14.  Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement.

8

> Notice shall be given to creditors, the United States trustee, . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

15. The EFIH Settlement is subject to approval by the Court under Bankruptcy Rule 9019(a). Settlements and compromises are tools often utilized to expedite case administration and to reduce unnecessary administrative costs; as such, they are favored in bankruptcy. *See In re Nutraquest, Inc.*, 434 F.3d 639, 646 (3d Cir. 2006) ("It is axiomatic that settlement will almost always reduce the complexity and inconvenience of litigation."); *In re Key3Media Grp., Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006). Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed compromise is fair, reasonable, and in the best interest of the estate. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("The ultimate inquiry [is] whether the compromise is fair, reasonable, and in the interest of the estate.'" (citation and internal quotation marks omitted)); *In re Nw. Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("The bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate." (citation omitted)); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005) ("[T]he bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable.").

16. A proposed compromise need not be the best result that a debtor could have achieved, but only must fall within the "reasonable range of litigation possibilities." *In re Energy Corp.*, 886 F.2d 921, 929 (7th Cir. 1989); *In re Sea Containers Ltd.*, 2008 WL 4296562, at *5 (Bankr. D. Del. Sept. 19, 2008); *Key3Media Grp.*, 2006 WL 2842462, at *3.

17. The Third Circuit has adopted a balancing test to determine whether to approve a particular compromise or settlement as fair and equitable. Courts examine: "(1) the probability

9

of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Nutraquest,* 434 F.3d at 643; *see also Key3Media,* 336 B.R. at 93 (when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" (internal citations omitted)).

18. Based on the above factors, the Debtors believe the EFIH Settlement represents a fair and reasonable compromise that is in the best interests of the Debtors' estates. In the first instance, the EFIH Settlement was prompted by the significant shift in the Debtors' probability of success in the Makewhole Litigation created by the Third Circuit's Makewhole Opinion. While further appellate options remain available to the Debtors, further litigation would undoubtedly be complex, time-consuming, and expensive and require the Debtors to escrow for an indeterminate amount of time billions of dollars that would otherwise be distributable to parties in interest. In lieu of continuing costly and uncertain litigation, the Debtors determined to settle to preserve value for the benefit of EFIH stakeholders. The EFIH Settlement resolves the Makewhole Litigation for less than the asserted amount of the Makewhole Claims, which—particularly in light of the Third Circuit's Makewhole Opinion—falls well within the "reasonable range of litigation possibilities." This compromise, therefore, preserves value for the Debtors' estates and the Debtors respectfully request that the Court approve the EFIH Settlement pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code.

### III. The EFIH Settlement is Fair With Respect to All EFIH Secured Creditors.

19. As a general matter, a trustee is entitled, upon the proper direction from holders representing the requisite amount under the applicable indenture, to give effect to compromises and settlements on their behalf. *See, e.g., In re Delta Air Lines, Inc.,* 370 B.R. 537, 548 (Bankr.

10

S.D.N.Y. 2007) (finding that "[i]mplicit in the authority to commence proceedings to remedy defaults is the power to negotiate and agree upon settlements, subject to the power to direct in writing by a majority in amount of the Bondholders"); *In re Residential Capital, LLC*, 497 B.R. 720, 748 (Bankr. S.D.N.Y. 2013) (holding that trustees "have the authority to enter into settlement agreements").

20.  The EFIH Secured Trustees may support and give effect to the EFIH Settlement without express consent of the minority holders. As the Second Circuit noted, "***Section 316(b) could not have been intended to impair the capacity of a debtor and its creditors to restructure debt in the context of bankruptcy***" and the "***cases have uniformly recognized that reorganization proceedings in Chapter 11 are not within the purview of TIA Section 316(b).***" *In re Bd. of Directors of Telecom Argentina, S.A.*, 528 F.3d 162, 172 (2d Cir. 2008) (emphasis added) (quoting *Delta*, 370 B.R. at 550); *Residential Capital*, 497 B.R. at 749 (same).

21.  Furthermore, the legislative history of the TIA and applicable case law make clear that, so long as a settlement is approved as fair and reasonable, a trustee may obtain instructions from a court of competent jurisdiction and/or relief from existing indenture obligations in situations where, as here, obtaining consent from every holder is impossible and existing holders' rights would be affected. *See* H.R. Rep. No. 76-1016 at 56 (1939); *see also Marblegate Asset Mgmt., LLC v Education Mgmt. Fin. Corp.*, 846 F.3d 1, 13-14 (2d Cir. 2017) (holding that in enacting Section 316(b) of the TIA, "Congress sought to prohibit formal modifications to indentures without the consent of all bondholders, but did not intend to go further by banning other well-known forms of reorganization like foreclosures"); *In re Conseco, Inc.*, No. 02-B-49672, Slip. Op. at ¶¶ Y, 1, 9, and 10 (Bankr. N.D. Ill. March 14, 2003). It is well-settled law that where a "compromise is made [conditioned on] proper court approval, the trustee may safely

RLF1 16988718v.1

do so and such is binding upon the beneficiaries." *Redmond v. Commerce Trust Co.*, 144 F.2d 140, 155 (8th Cir. 1944) (internal citation omitted). Moreover, courts have recognized that they have the equitable power under Section 105(a) to bind third parties to settlements. *In re Grau*, 267 B.R. 896 (Bankr. S.D. Fla. 2001). As such, the Debtors respectfully request that the Court bind Non-Signing Creditors to the terms of the EFIH Settlement.

22. The EFIH Settlement reflects a fair and reasonable resolution of the Makewhole Litigation for the Non-Signing Creditors as well as the Supporting Secured Creditors and the Supporting EFIH Unsecured Creditors. The EFIH Settlement terminates what could be protracted litigation and will deliver hundreds of millions of dollars into the hands of Holders of EFIH First Lien Notes—and ***billions*** of dollars into the hands of Holders of EFIH Second Lien Notes—on the EFH Effective Date. These Holders are, collectively, foregoing the potential for less than $70 million in the future (the value of the 5 percent of First Lien Makewhole Claims and 12.5 percent of Second Lien Makewhole Claims being relinquished under the EFIH Settlement) in exchange for payment *today* of the vast majority of their Makewhole Claims (and payment of the EFIH Second Lien Notes principal and interest thereon, and all other interest, fees, and expenses).

23. For all the foregoing reasons, the Debtors respectfully request the Court enter an order approving the EFIH Settlement and finding that the EFIH Settlement is fair with respect to the Non-Signing Creditors.

## Notice

24. The Debtors shall provide the Settlement Notice via first class mail to: (a) the U.S. Trustee; (b) counsel to the EFH Creditors' Committee; (c) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the

12

10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (d) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (e) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (f) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020; (g) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (f); (h) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (i) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (j) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (k) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (l) Oncor Electric Delivery Company LLC and counsel thereto; (m) the Securities and Exchange Commission; (n) the Internal Revenue Service; (o) the Office of the United States Attorney for the District of Delaware; (p) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (q) counsel to the Electric Reliability Council of Texas; (r) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (s) Holders of EFIH First Lien Notes Claims, Holders of EFIH Second Lien Notes Claims, and Holders of EFIH Unsecured Notes. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

RLF1 16988718v.1

## No Prior Request

25.   No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: February 17, 2017
       Wilmington, Delaware

/s/ *[signature]*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:   collins@rlf.com
          defranceschi@rlf.com
          madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   edward.sassower@kirkland.com
          stephen.hessler@kirkland.com
          brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   james.sprayregen@kirkland.com
          marc.kieselstein@kirkland.com
          chad.husnick@kirkland.com
          steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*