## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related to D.I. 4784** |
| | ) | **Hearing Date: March 28, 2017 at 10:00 a.m.** |
| | ) | **Objection Deadline: February 21, 2017 at** |
| | ) | **4:00 p.m.** |

**RESPONSE OF RAILROAD MANAGEMENT COMPANY LLC IN OPPOSITION TO DEBTORS' SEVENTEENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO (SUBSTANTIVE DUPLICATE, NO LIABILITY, AND NO CLAIM ASSERTED) CLAIMS PURSUANT TO SECTION 502(B) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003, AND 3007, AND LOCAL BANKRUPTCY RULE 3007-1 [D.I. 4784] WITH RESPECT TO PROOFS OF CLAIM NOS. 7840, 7841, AND 7842**

Railroad Management Company LLC ("Railroad Management") hereby responds in opposition to the *Debtors' Seventeenth Omnibus (Substantive) Objection to (Substantive Duplicate, No Liability, and No Claim Asserted) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 4784] (the "Claim Objection") filed by the above-captioned debtors and debtors in possession (the "Debtors") on June 16, 2015.

### RELEVANT BACKGROUND

**I.    License Agreements**

Railroad Management's claims against the Debtors (collectively, the "Claims") arise from a series of license agreements, dated as early as the 1920s and into the following decades, between predecessors in interest of certain of the Debtors and certain railway-related companies (the "License Agreements").[2]  In each such agreement, the applicable railway company granted a license to an electric

---

[1]    A complete list of the debtors in these jointly administered chapter 11 cases may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Railroad Management's proofs of claim (the "Proofs of Claim") were assigned numbers 7840, 7841, and 7842, respectively, and each provided a complete set of the License Agreements on which Railroad Management's

service company (collectively, the "Licenses"), allowing that electric service company to take actions such as installing and maintaining power lines and related wires and equipment on the railway's property. Each License Agreement provided that the electric service company pay a rental/license fee for its property use.  The following is a list of the License Agreements, copies of which were provided by Railroad Management in its Proofs of Claim, including both the original licensee name and the applicable Proof of Claim:

| Date of License Agreement | Page Number Where Agreement Can Be Located (in Claim #7840 pdf) | Licensee |
|---|---|---|
| Applicable Proof of Claim: #7480 | | |
| 01/29/1951 | 84 | Dallas Power & Light Company[3] |
| Applicable Proof of Claim: #7841 | | |
| 02/23/1939 | 65 | Texas Power and Light Company |
| 02/01/1958 | 63 | Texas Electric Service Company |
| 10/07/1964 | 68 | Texas Electric Service Company |
| 03/04/1966 | 28 | Texas Power and Light Company |
| 11/10/1966 | 8 | Texas Power and Light Company |
| 06/27/1967 | 11 | Texas Electric Service Company |
| 12/12/1969 | 20 | Texas Electric Service Company |
| 04/23/1970 | 71 | Texas Power and Light Company |
| 05/31/1972 | 52 | Texas Power and Light Company |
| 10/01/1973 | 57 | Texas Power and Light Company |
| 12/28/1977 | 76 | Texas Power and Light Company |

Claims are based.  For convenience, any references to these documents will be to the appropriate page number in the pdf file of Proof of Claim #7840.

[3] This was assigned to Texas Power & Light Company in 1962.  *See* Proof of Claim #7840 at 87.

| Applicable Proof of Claim: #7842 | | |
|---|---|---|
| 03/03/1926 | 49 | Community Power & Light Company |
| 12/01/1926 | 47 | Reagan Electric Company |
| 09/01/1927 | 38 | Community Power & Light Company |
| 11/08/1928 | 43 | Texas Utilities Company |
| 05/13/1931 | 91 | Texas Utilities Company |
| 08/03/1931 | 34 | Texas Utilities Company |
| 04/23/1954 | 50 | Texas Utilities Company |

## II.      Present-Day Entities

Throughout the years following, the original parties on both sides of the License Agreements merged, changed their names, and/or conveyed their interests in the Licenses. These changes are reflected in Railroad Management's records and in records available from the Secretary of State for the State of Texas. For example, in 1984, licensees Dallas Power & Light Company, Texas Electric Service Company, and Texas Power & Light Company merged into Texas Utilities Electric Company. *See* Proof of Claim #7840 at 101. On or about May 28, 1999, Texas Utilities Electric Company changed its name to TXU Electric Company, which according to Texas Secretary of State records, changed its name to TXU US Holdings Company, effective January 1, 2002. Finally, on or about October 5, 2007, TXU US Holdings Company changed its name to Energy Future Competitive Holdings Company, which in 2013 was converted to the limited liability company Energy Future Competitive Holdings Company, LLC, a debtor in these chapter 11 cases.

As to licensee Texas Utilities Company, according to Texas Secretary of State records, that entity merged with TUC Merger Corp. on or about August 5, 1997 and changed its name to Texas Energy Industries, Inc. On or about June 1, 1999, Texas Energy Industries, Inc. changed its name to TXU Energy Industries Company. On or about August 28, 2003, TXU Energy Industries Company merged with and

into TXU Corp., and, finally, on or about October 10, 2007, TXU Corp. changed its name to Energy Future Holdings Corp., another debtor in these chapter 11 cases.

In 2001, Strong Capital I, LP, a Delaware limited partnership, acquired certain rights and obligations under certain of the Licenses from Union Pacific Railroad Company, including the right to collect and administer the rental/license fees.  *See* Proof of Claim #7840 at 100.  Similarly, in 2006, Strong Capital VI LLC (together with Strong Capital I, LP, the "Strong Capital Entities"), a Delaware limited liability company, acquired certain rights and obligations under the remaining Licenses, including the right to collect and administer the rental/license fees, from BNSF Railway Company. Railroad Management and an affiliate assumed responsibility for administering and implementing the rights acquired by the Strong Capital Entities as managing agent with respect to the Licenses.  *Id.*

III.    **Rental/License Payments**

Throughout and following these various changes, the Debtors, their predecessors, or, as applicable, their affiliates maintained power lines and related equipment on railway property covered by the Licenses and paid rental/license fees.  Pursuant to the License Agreements, the railway companies increased these fees based on the fair market value of the property being used.  *See, e.g.*, Proof of Claim #7450 at 19, 27, 56, 61, 67, 75, and 128.  Since approximately 2002, however, the Debtors and Railroad Management have been in a dispute regarding some of the rental payment increases, and the Debtors failed to pay the full rental payment amounts on all of the Licenses.  *See* Proof of Claim #7450 at 3-4, 106-33.  Railroad Management has made efforts to resolve this dispute, while making it clear that by choosing to maintain equipment on the railway property, the Debtors owed the full rental payments based on updated property values.  *See* Proof of Claim #7450 at 106-33.

4

## IV.    Proofs of Claim and Procedure

On October 27, 2014, Railroad Management filed its three Proofs of Claim (Claim Nos. 7840, 7841, and 7842) in advance of the claims bar date.[4]  In the Proofs of Claim, Railroad Management asserted its Claims against certain Debtors[5] in the amounts indicated below on account of outstanding rental/license payments:

| Claim No. | Claim Amount |
|-----------|--------------|
| 7840 | $664.21 |
| 7841 | $1,504,129.59 |
| 7842 | $21,243.95 |

With its Proofs of Claim, Railroad Management provided documentation for each of the Licenses, including copies of the original License Agreements, correspondence regarding rental increases, and certain documents relating to entity mergers or name changes.

On June 16, 2015, the Debtors filed the Claim Objection.[6]  In Exhibit A to the Claim Objection, the Debtors state the following regarding their basis for objecting to Railroad Management's three filed claims: "According to the Debtors' books and records, Debtors are not liable for the asserted claim. The Debtors believe that liability, if any, is owed by a non-Debtor entity, Oncor Electric Delivery Company

---

[4]   As provided in the Court's *Order (A) Setting Bar Dates For Filing Non-Customer Proofs Of Claim And Request For Payment, (B) Approving The Form Of And Manner For Filing Non-Customer Proofs Of Claim And Request For Payment. And (C) Approving The Notice* [Docket No. 1866].

[5]   Railroad Management originally filed its Proofs of Claim against TXU Electric Co., Inc., Texas Utilities Electric Co., and Southwestern Electric Services, Inc., respectively, based on its records and merger/name-change information it was aware of at the time.  Subsequent searches with the Texas Secretary of State's office and a review of additional name and other changes within the Debtors' complex corporate structure have revealed that the Debtor entities liable on the Claims are Energy Future Competitive Holdings Company, LLC (Claims #7840 and 7841) and Energy Future Holdings Corp. (Claim #7842) (together, the "Liable Debtors"). Railroad Management has contacted Debtor's counsel about this issue and, if necessary, will seek this Court's leave to amend its Proofs of Claim to correct this technical error.

[6]   The Court has entered several orders sustaining Claim Objection, including most recently its December 13, 2016 *Order (Fourth) Sustaining Debtors' Seventeenth Omnibus (Substantive) Objection to (Substantive Duplicate, No Liability, and No Claim Asserted) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [Docket No. 10380].

LLC" ("Oncor").  Claim Objection, Exhibit A at 26-27.  In the Claim Objection, the Debtors provided no additional documentation or the basis for their position that non-Debtor Oncor is the liable party.

## ARGUMENT

Bankruptcy Rule 3001(f) provides that a proof of claim executed and filed in accordance with the rules of procedure constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).  The proof of claim is prima facie valid if it alleges facts sufficient to support the debtor's legal liability to the claimant. *In re Allegheny Int'l, Inc*., 954 F.2d 167, 173 (3d Cir. 1992); *In re Tribune Co.*, No. 08-13141 (Bankr. D. Del. September 6, 2013) (quoting *Allegheny*).  To overcome the prima facie validity of a claim, the burden rests on the objecting debtor, who must provide sufficient evidence to refute liability.  *Allegheny*, 954 F.2d at 173.   Such evidence must be "equal in force to the prima facie case" and must, if believed, "refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id.* at 173-74.  Only when the objecting debtor produces sufficient rebuttal evidence does the burden of proof shift back to the claimant. *Id*. at 174.

**I.      Documents Provided by Railroad Management Show That Liable Debtors are Liable for Unpaid Rental/License Payments.**

In its Proofs of Claim, Railroad Management provided the Debtors with documentation of, among other things, the underlying basis for liability (the License Agreements and related documents regarding the rental payment obligations) and for how the claim amounts were calculated (spreadsheet showing billed, paid, and outstanding rental payment amounts broken out by Debtor).  Each of the License Agreements provides the applicable rental payment, and increases are shown in the provided notifications.  *See, e.g*., Proof of Claim #7450 at 19, 27, 56, 61, 67, 75, and 128.  These documents provide numerous facts in support of a "legal liability." *See Allegheny Int'l, Inc*., 954 F.2d at 173.

**II.     Debtors Have Produced No Evidence to Refute Liable Debtors' Liability.**

To overcome the prima facie validity of the Claim on this basis, the Debtors instead must come forward with sufficient evidence that Oncor is liable—or at least that the Liable Debtors are not liable— for the amounts set forth in the Proofs of Claim. *See Allegheny Int'l, Inc*., 954 F.2d at 173-74.  However,

in the Claim Objection, the Debtors fail to offer any evidence for their assertion that Oncor, not the Liable Debtors, is the party liable on the Claims. *See* Claim Objection, Exhibit A at 26-27. In their Claim Objection, the Debtors provided no details for why they believe the Debtor entities named in the Proofs of Claims are no longer the liable parties. The Debtors only reference their "books and records" as the reason they "believe" any liability is owed by Oncor. *Id.* Therefore, the Debtors have failed to meet their burden in contesting the prima facie validity of Railroad Management's Claims. Further, having left Railroad Management and the Court guessing in their Claim Objection as to the factual basis for the assertion that Oncor is the liable party, the Debtors have left Railroad Management with little objection to which to respond.

**III.    Any Purported Assignment or Transfer of the Licensees' Rights Under the Licenses is Invalid Under the Terms of the License Agreements.**

After contacted by Railroad Management counsel, Debtors' counsel provided information claiming that transmission-related assets (purportedly including rights under the Licenses) were conveyed to Oncor in 2002. However, any such purported assignment or transfer of the Liable Debtors' interest in the Licenses is prohibited by the License Agreements. Under Texas law, "anti-assignment clauses are enforceable unless rendered ineffective by a statute." *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 721 (Tex. App.—Dallas 2004, no pet.) (citing *Reef v. Mills Novelty Co.*, 89 S.W.2d 210, 211 (Tex. 1936)). All but one of the above License Agreements contain anti-assignment language stating that the licensee may not transfer or assign its rights under the agreement without the written permission of the licensor. *See, e.g.*, Proof of Claim #7840 at 8 (§ 3), 13 (§ 10), and 34 (§ 7). Absent proof of a valid assignment, approved in writing in accordance with each applicable License Agreement, the Liable Debtors remain the Licensees and liable on Railroad Management's Claims.

As the documents provided in the Proofs of Claim reflect, in more recent years Railroad Management has received payments from Oncor on account of the Licenses and discussed such payments (including lack of full payment) with Oncor. However, such receipt and contact has no bearing on which legal entities are Licensees or on which entities are liable for the underlying obligation. Companies with

complex corporate structures such as the Debtors may have one entity take over the administration of a payment obligation for another entity's asset.  Without knowing the details regarding the purported transfer to Oncor, Railroad Management is ill-equipped to address the Debtor's Claim Objection beyond pointing to the insufficiency of the Debtors' evidence.[7]

## RESERVATION OF RIGHTS

Railroad Management reserves all rights, claims and defenses, including, without limitation, the right to discovery in connection with the Debtors' Claim Objection.

## CONCLUSION

Railroad Management's Claims have been properly asserted and, being subject to no other basis for objection by the Debtors, should be allowed in full.  Accordingly, Debtors' Claim Objection should be overruled.

WHEREFORE, Railroad Management respectfully requests that the Court enter an Order allowing its Claims in the amounts stated in the Proofs of Claim and requests such other and further relief that this Court deems necessary and just.

[Remainder of Page Intentionally Left Blank]

---

[7]    Accordingly, Railroad Management asserts that discovery is needed in this matter should the Court allow the Debtors to proceed with their Claim Objection.

Dated: February 21, 2017

By:___/s/ Jessica Lewis_____

Judith W. Ross
State Bar No. 21010670
Eric Soderlund
State Bar No. 24037525
Jessica Lewis
State Bar No. 24060956
**Law Offices of Judith W. Ross**
700 N. Pearl Street, Suite 1610
Dallas, Texas 75201
Telephone: 214-377-7879
Facsimile: 214-377-9409
Email: judith.ross@judithwross.com
      eric.soderlund@judithwross.com
      jessica.lewis@judithwross.com

**COUNSEL TO**
**RAILROAD  MANAGEMENT  COMPANY,**
**LLC**