## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Obj. Deadline: Mar. 15, 2017 at 4:00 p.m. (EDT)** |
|  | ) | **Hearing Date: Mar. 28, 2017 at 10:00 a.m. (EDT)** |
|  | ) |  |

### OBJECTION OF ENERGY FUTURE HOLDINGS CORP.,
### *ET AL.*, TO PROOFS OF CLAIMS FILED BY THE INTERNAL
### REVENUE SERVICE OR, IN THE ALTERNATIVE, REQUEST TO
### ESTIMATE PROOFS OF CLAIMS FILED BY THE INTERNAL REVENUE SERVICE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this objection (this "Objection") to the proofs of claims set forth in **Exhibit 1** to **Exhibit A**,

attached hereto, filed by the Internal Revenue Service (the "IRS") for unpaid taxes or penalties

(collectively, the "Proofs of Claims")[2] or, in the alternative, request the Court estimate such

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]  The Proofs of Claims to which the Debtors object are claims numbers 5037, 5038, 5039, 5040, 5041, 5042, 5043, 5044, 5045, 5046, 5052, 5053, 5054, 5055, 5056, 5057, 5058, 5059, 5060, 5063, 5064, 5065, 5066, 5067, 5068, 5069, 5070, 5071, 5072, 5445, 6181, and 6182, which are asserted against Luminant Energy Company LLC; Oak Grove Management Company LLC; TXU SEM Company; LSGT SACROC, Inc.; TXU Retail Services Company; TXU Receivables Company; Energy Future Competitive Holdings Company LLC; EFH FS Holding Company; EFIH Finance Inc.; EFH Finance (No. 2) Holdings Company; Generation SVC Company; Luminant Energy Trading California Company; TCEH Finance, Inc.; Luminant ET Services Company; Luminant Generation Company LLC; Lone Star Pipeline Company, Inc.; Luminant Holding Company LLC; Luminant Mining Company LLC; LSGT Gas Company LLC; TXU Energy Retail Company LLC; EFH Corporate Services Company; TXU Electric Company, Inc.; EFH Australia (No. 2) Holdings Company; EECI, Inc.; EEC Holdings, Inc.; 4Change Energy Holdings LLC; 4Change Energy Company; Energy Future Holdings Corp.; Texas Competitive Electric Holdings Company LLC; Texas Utilities Company, Inc.; Energy Future Intermediate Holding Company LLC; Texas Utilities Electric Company, Inc.  Due to the voluminous nature of the Proofs of Claims, copies of the Proofs of Claims are not appended to this Objection.  Copies will be provided to the Court and are available at http://dm.epiq11.com/#/case/EFH/claims.

Proofs of Claims for purposes of enabling distributions to proceed.  In support of the Objection, the Debtors respectfully state as follows:[3]

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Objection are sections 502(b), 502(c), and 505 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 3001, 3003, and 3007.

## Background

4.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Court has entered an order for joint administration of these chapter 11 cases.  The Court has not appointed a trustee. On June 6, 2014, the Court entered a final order approving the use of cash collateral by Energy

---

[3]     To the extent additional evidence is necessary to support the relief requested herein, the Debtors will so provide in advance of the hearing on the Objection, if any.

Future Competitive Holdings Company LLC ("EFCH"), its direct subsidiary, Texas Competitive Electric Holdings Company LLC ("TCEH") and the direct and indirect Debtor subsidiaries of EFCH and TCEH (together with EFCH and TCEH, the "TCEH Debtors") [D.I. 855] (the "TCEH Cash Collateral Order") and a final order approving postpetition financing by the TCEH Debtors [D.I. 856] (the "TCEH DIP Order").

5.    The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of the TCEH Debtors and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company, LLC ("EFIH"), EFIH Finance, Inc., and EECI, Inc. (EFH Corp., EFIH, and EFIH Finance, and their direct and indirect Debtor subsidiaries excluding the TCEH Debtors, the "EFH/EFIH Debtors," such committee, the "EFH Creditors' Committee" and, together with the TCEH Creditors' Committee, the "Official Committees") on October 27, 2014 [D.I. 2570].    Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

6.    On August 29, 2016 the Court entered the *Order Confirming the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 9421], pursuant to which the Bankruptcy Court approved and confirmed the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code*, dated August 23, 2016 [D.I. 9374] (the "TCEH Plan"), as it applies to the TCEH Debtors and EFH Shared Services Debtors.    On October 3, 2016, the Debtors provided a

3

*Notice of Entry of TCEH Confirmation Order and Occurrence of TCEH Effective Date*
[D.I. 9742] (the "Notice").  As of the provision of this Notice, the TCEH Effective Date, as
defined in the Plan, occurred.

7.    On February 17, 2017, the Court entered the *Order Confirming the Eighth
Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to
Chapter 11 of the Bankruptcy Code as It Applies to the EFH Debtors and EFIH Debtors.*
[D.I. 10859], pursuant to which the Bankruptcy Court approved and confirmed the *Eighth
Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to
Chapter 11 of the Bankruptcy Code*, dated February 17, 2017 [D.I. 10853] (the "EFH/EFIH
Plan"), as it applies to the EFH Debtors and EFIH Debtors.  The EFH/EFIH Debtors anticipate
that they will emerge from chapter 11 on or as soon as reasonably practicable after April 30,
2017 (the "Target EFH/EFIH Effective Date").

### The IRS' Proofs of Claims

8.    On October 9, 2014, October 16, 2014, and October 23, 2014, the IRS filed the
Proofs of Claims, asserting tax and penalty claims in the aggregate amount of approximately
$244 million[4] against each and every one of 32 of the Debtors.  The Debtors generally
understand the Proofs of Claims to all relate to the same asserted tax liability with respect to a
large number of prepetition tax years that were in certain IRS administrative processes, under
audit (or subject to adjustment based on the results of ongoing audits) as of the Petition Date.[5]

---

[4]    The Proofs of Claims range from $244,200,360.95 to $244,526,829.95.

[5]    The Debtors are generally of the view that the Proofs of Claims are not properly asserted against entities that
were disregarded entities or not otherwise part of EFH Corp.'s consolidated tax group for the years subject to
audit.  However, the Debtors are hopeful that this issue will not be relevant if the Proofs of Claims are
expeditiously amended to reflect the proper amount owed, as EFH Corp. would pay such amount on the
EFH/EFIH Effective Date.

The addenda to the Proofs of Claims state that the Proofs of Claims are comprised of unsecured priority claims under section 507(a)(8) of the Bankruptcy Code.

9.      The Proofs of Claims have always represented a "placeholder" that did not account for the resolution of substantially all of the tax issues raised with respect to the ongoing audits.  The scope of the issues addressed by the Proofs of Claims is extensive:  the Proofs of Claim address potential tax adjustments, together with certain interest and refund issues, ranging from tax year 1999 through 2013.  As of the Petition Date, the Debtors and the IRS had resolved the vast majority of the material issues for these audits.  However, a substantial amount of work, including the satisfaction of certain procedural requirements, remained necessary to finalize the calculations for certain of the prepetition years—and, accordingly, a correct amount for the Proofs of Claims.

10.      Throughout the course of these bankruptcy cases, the Debtors and the IRS have diligently worked together to complete this work.  Indeed, the Revenue Agent Report (a form that reflects final calculations with respect to open audit periods) for tax years 2010–2013—the final prepetition years outstanding—was finalized in July 2016.  Since then, the only thing standing in the way of finally reconciling the Proofs of Claims has been certain calculations necessary to appropriately account for interest.  Unfortunately, these calculations have not been completed and, as a result, the IRS has not amended the Proofs of Claims.  Despite this, ultimately, the Debtors believe that the IRS *agrees* that the Proofs of Claims are substantially overstated.

11.      The Debtors believe that the Proofs of Claims should be amended to reflect a total amount owed of approximately $47.6 million, [6] which amount accounts for (a) finalized

---

[6]      This amount reflects the Debtors' current estimate of the total liability; calculations are being finalized and remain subject to adjustment.

RLF1 17060683v.1

computations agreed with the IRS for tax years 1999–2009; (b) an agreed principal amount for 2011; (c) the Debtors' estimate for accrued interest; and (d) amounts owed to the Debtors with respect to certain refunds (and related interest) claimed for tax years 2014 and 2015.  Of those amounts, the Debtors believe that the only potential disagreement with the IRS relates to amount of interest accrued on the principal; but, to date, the IRS has not provided its interest calculations to the Debtors.[7]

12.    As indicated above, the vast majority of the work needed to finalize the Proofs of Claims has been completed since the middle of 2016.  However, the IRS has not been able to provide a date certain to the Debtors as to when it anticipates completing its final computations for tax years 2010-2014 (which the Debtors believe is the last set of information necessary to come to agreement on the accurate amount of the liabilities asserted by the Proofs of Claims).  As the EFH/EFIH Debtors now progress toward emergence from chapter 11, time is now a major factor, and reconciliation of the Proofs of Claims must be resolved without further delay.

13.    Should the Proofs of Claims remain on the register as asserted—again, approximately $244 million in priority claims against *each* of 32 of the Debtors—they will likely interfere with the EFH/EFIH Debtors' ability to emerge from chapter 11.  The transactions and distributions contemplated by the EFH/EFIH Plan take into account the Debtors' estimate of the reconciled amount of the Proofs of Claims—that is, that only approximately $47.6 million in cash will be necessary to satisfy the IRS' claims.  The EFH Debtors do not have sufficient cash

---

[7]    While the IRS has not specifically indicated that it agrees with the claimed refunds for 2014 and 2015, the Debtors filed a request for prompt determination of their tax liabilities for those years under Section 505 of the Bankruptcy Code.  The IRS completed audits of the returns for each of those years and, to date, has not raised any objection with respect to the claimed refunds.  The total $47.6 million estimate does, however, account for the IRS's published position (which the Debtors do not contest) that their claimed refunds are subject to a 6.9% sequestration under certain provisions of the Balanced Budget and Emergency Deficit Control Act of 1985, P.L. 99-177.  *See Effect of Sequestration on the Alternative Minimum Tax Credit For Corporations*, available online at https://www.irs.gov/businesses/effect-of-sequestration-on-the-alternative-minimum-tax-credit-for-corporations (Oct. 4, 2016).

to account for the Proofs of Claim as currently filed (which, again, the Debtors do not believe the IRS actually believes are owed) and, as a result, there would be no ability to make distributions to EFH Corp.'s unsecured creditors. However, the Debtors expect that the overall tax structure of EFH Corp.'s acquisition by NextEra *requires* that there be stock issued to creditors on the Effective Date. As a result, the EFH/EFIH Debtors would likely be unable to emerge from chapter 11 unless the IRS claims are reduced to the correct amount.

14.     The Debtors' hope and expectation is that resolution of these Proofs of Claims can occur consensually with the IRS. However, with the EFH/EFIH Plan now confirmed and the Target EFH/EFIH Effective Date fast approaching, the Proofs of Claims must promptly be modified to reflect the true amount of the Debtors' aggregate liability.

## Relief Requested

15.     By this Objection, the Debtors request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) modifying the Proofs of Claims to more accurately reflect the actual value of the IRS' claims or, in the alternative, (b) estimating the Proofs of Claims under sections 502(c) and 505 of the Bankruptcy Code in the aggregate amount of $47.6 million, solely for the purposes of allowing distributions to be made pursuant to the EFH/EFIH Plan.

## Objection

16.     A chapter 11 debtor "has the duty to object to the allowance of any claim that is improper." *Int'l Yacht & Tennis, Inc. v. Wasserman (In re Int'l Yacht & Tennis, Inc.)*, 922 F.2d 659, 661-62 (11th Cir. 1991); *see also* 11 U.S.C. §§ 704(a)(5), 1106(a)(1), and 1107(a).

17.     The burden of proof for determining the validity of claims rests on different parties at different stages of the objection process.  As explained by the United States Court of Appeals for the Third Circuit:

> Initially, the claimant must allege facts sufficient to support the claim.  If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid.  In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward.   The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. . . .  In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.  If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.

*In re Allegheny Int'l Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) (citation omitted).  Once the *prima facie* validity of a claim is rebutted, "it is for the claimant to prove his claim, not for the objector to disprove it."  *In re Kahn*, 114 B.R. 40, 44 (Bankr. S.D.N.Y. 1990) (citations omitted).

18.     As described herein, based upon the Debtors' calculations and their discussions with the IRS concerning the Debtors' actual tax liability, the Proofs of Claims are, at the very least, asserted in an incorrect amount.  Therefore, the Debtors object to the Proofs of Claims and seek entry of the Order (a) modifying the Proofs of Claims so that such Proofs of Claims are replaced with a single proof of claim in the amount of $47.6 million that asserts joint and several liability against the Debtors listed in **Exhibit 2** to **Exhibit A**[8] (the "Modified IRS Claim") and (b) authorizing the Claims Agent to reflect such modifications on the claims register. Notwithstanding the above, by requesting relief with respect to the Proofs of Claims, the Debtors

---

[8]     The Debtors listed in Exhibit 2 to Exhibit A are the same 32 Debtors against which the IRS filed the Proofs of Claim.  As noted above, the Debtors do not believe the Proofs of Claims are properly asserted against certain entities and reserve the right to object in the future to the Modified IRS Claim as it relates to a liability owed by any specific Debtor against which the Modified IRS Claim is asserted.

are not asking for an allowance of the Modified IRS Claim, but only that the Proofs of Claims be modified at this time.  The Debtors reserve the right to object in the future to the Proofs of Claims or the Modified IRS Claim on any grounds permitted by bankruptcy or nonbankruptcy law, subject to any limitations set forth in the Local Bankruptcy Rules.  *See generally* 11 U.S.C. § 502(a).

19.     As an alternative to modification, the Debtors request that the Court estimate the Proofs of Claims under section 502(c) of the Bankruptcy Code in the aggregate amount of $47,600,000.00, for the purposes of distribution only.  Section 502(c) of the Bankruptcy Code provides that "[t]here shall be estimated for purpose of allowance under this section . . . any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ."  11 U.S.C. § 502(c)(1).  Where the allowed value of a claim cannot be determined, that claim is unliquidated.  *In re Mazzeo*, 131 F.3d 295, 304 (2d Cir. 1997) ("The terms 'liquidated' and 'unliquidated' generally refer to a claim's value . . . and the ease with which that value can be ascertained.").  There is no universal procedure for estimating claims under section 502(c).  Rather, a court should apply "whatever method is best suited to the particular contingencies at issue."  *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982).  Courts have estimated claims under section 502(c) without absolute certainty as to the ultimate value of the claim, requiring only "sufficient evidence on which to base a reasonable estimate of the claim."  *Id.* at 135.  In addition, section 505 of the Bankruptcy Code provides that "the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."  11 U.S.C. § 505(a).

9

20.     As described herein, allowing the Proofs of Claims to remain on the claims register as asserted prejudices the EFH/EFIH Debtors' ability to emerge from chapter 11 on the Target EFH/EFIH Effective Date because the Debtors do not believe the intended tax structure of the EFH/EFIH Plan can be achieved if distributions cannot be made to EFH Corp.'s unsecured creditors on the date of emergence:  if the liabilities asserted in the Proofs of Claims really were over $244 million at even just one of the EFH Debtors against which the Proofs of Claim are asserted, the mix of consideration being received by creditors would need to be fundamentally reconsidered.  Thus, in order for the EFH/EFIH Debtors to emerge from chapter 11, at the very least, the Proofs of Claims must promptly be estimated at an aggregate amount that reflects the true value of the asserted liabilities.  *See In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) ("Estimation, authorized under section 502(c) of the Code, provides a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine."); *see also In re RNI Wind Down Corp.*, 369 B.R. 174, 191 (Bankr. D. Del. 2007) ("The purpose of section 502(c) is to prevent the administration of the debtor's estate from being held hostage by the fixing or liquidation of an unliquidated or contingent claim.").  While the IRS continues to refine its calculations of the precise amount it believes is the Debtors' ultimate liability, there is no question that the Proofs of Claims currently on file vastly overstate the amount that could possibly be owed.  Therefore, there should be no controversy in estimating the Proofs of Claims at an amount that is significantly lower than the currently-filed Proofs of Claims, thereby allowing the EFH/EFIH Debtors to make the distributions contemplated by the EFH/EFIH Plan and to emerge from chapter 11 on the Target EFH/EFIH Effective Date.

**Reservation of Rights**

21.    Nothing contained in this Objection or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity of any particular claim (including the Proofs of Claims) against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim (including the Proofs of Claims) on any grounds; (c) a promise or requirement to pay any particular claim (including the Proofs of Claims); (d) an implication or admission that any particular claim (including the Proofs of Claims) is of a type specified or defined in this Objection; (e) an admission by the Debtors that any contract or lease is executory or unexpired, as applicable; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (g) a request or authorization to assume or reject any agreements under section 365 of the Bankruptcy Code; (h) a waiver of any party's rights to assert that any other party is in breach or default of any agreement; or (i) an admission that any contract or lease is integrated with any other contract or lease.

22.    The Debtors hereby reserve their right to amend, modify, and/or supplement this Objection, including to object to any of the Proofs of Claims on any additional grounds, prior to the hearing before the Court on this Objection, if any (the "Hearing"), and nothing in this Objection shall affect the Debtors' right to object to the Proofs of Claims at a future date on a basis other than as set forth in this Objection as permitted by bankruptcy or nonbankruptcy law, subject to any limitations set forth in the Local Bankruptcy Rules.

**Notice**

23.    The Debtors shall provide notice of this Objection on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to

RLF1 17060683v.1

the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii) , the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:   (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims

against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

24.    No prior request for the precise relief sought in this Objection has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

Dated:  February 24, 2017
        Wilmington, Delaware

*/s/ Joseph C. Barsalona II*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Joseph C. Barsalona II (No. 6102)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
              defranceschi@rlf.com
              madron@rlf.com
              barsalona@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        edward.sassower@kirkland.com
              stephen.hessler@kirkland.com
              brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
              marc.kieselstein@kirkland.com
              chad.husnick@kirkland.com
              steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession