**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | )| |
|---|---|---|
|In re:|)|Chapter 11|
| |)| |
|ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]|)|Case No. 14-10979 (CSS)|
| |)| |
|Debtors.|)|(Jointly Administered)|
| |)| |
| |)|Hearing: March 28, 2017 at 10:00 a.m.|
| |)|Objection Deadline: March 16, 2017 at 4:00 p.m.|

**MOTION OF ENERGY FUTURE HOLDINGS CORPORATION FOR ALLOWANCE OF AN ADMINISTRATIVE EXPENSE CLAIM FOR FIDELITY MANAGEMENT & RESEARCH COMPANY'S SUBSTANTIAL CONTRIBUTION PURSUANT TO SECTIONS 503(b)(3)(D) AND 503(b)(4) OF THE BANKRUPTCY CODE**

Energy Future Holdings Corp. ("EFH Corp.") files this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), allowing an administrative expense claim against EFH Corp. for reasonable and documented fees and expenses incurred by certain funds and accounts advised or sub-advised by Fidelity Management & Research Company or its affiliates (collectively, "Fidelity") on account of Fidelity's substantial contribution to these chapter 11 cases. In support of this Motion, EFH Corp. respectfully states as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. EFH Corp. confirms its consent, pursuant to rule 7008 of the Federal

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 503(b)(3)(D), 503(b)(4), and 507(a)(2) of title 11 of the United States Code (the "Bankruptcy Code").

**Relief Requested**

4. EFH Corp. respectfully requests that the Court enter the Order allowing an administrative expense claim against EFH Corp., pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, in favor of Fidelity in the aggregate amount of up to $20 million in reasonable and documented fees and expenses, including professional and other advisory fees and expenses (the "Substantial Contribution Claim"), subject to review by the fee review committee appointed in these chapter 11 cases [D.I. 1891] (the "Fee Committee") according to the procedures set forth in the Order, on account of Fidelity's substantial contributions to these chapter 11 cases.

**Background**

5. On April 29, 2014 (the "Petition Date"), each of the above-captioned debtors and debtors in possession (the "Debtors") filed a voluntary petition with the Court under the Bankruptcy Code. EFH Corp. is operating its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849]. The Court has

not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company ("EFIH"), LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

6. On August 29, 2016, the Court entered an order confirming the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al., *Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, the "TCEH Plan") as it applies to the TCEH and EFH Shared Services Debtors.[2] *See Order Confirming the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 9421]. The TCEH Debtors (which include Luminant) and EFH Shared Services Debtors emerged from chapter 11 on October 3, 2016, and are no longer debtors-in-possession. *See Notice of Entry of TCEH Confirmation Order and Occurrence of TCEH Effective Date* [D.I. 9742].

7. On February 17, 2017, the Court entered an order confirming the *Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al.*, Pursuant to Chapter 11 of*

---

[2] Capitalized terms used, but not otherwise defined, herein shall be ascribed the same meanings given to them in the TCEH Plan.

3

*the Bankruptcy Code* [D.I. 10853] (the "E-Side Plan"). The effective date of the E-Side Plan (the "Plan Effective Date") has not yet occurred.

**Fidelity's Substantial Contribution**

8. Fidelity has been an active and valuable participant in EFH Corp.'s restructuring since before these chapter 11 cases commenced. As of the Petition Date, Fidelity held a significant amount of EFIH first lien notes, almost a third by amount of EFIH second lien notes, and over two-thirds by amount of EFH unsecured notes, making it the largest single holder of EFH unsecured claims and the largest overall creditor of the E-Side Debtors. In mid-2013, almost a year before the Petition Date, Fidelity hired restructuring advisors, including Fried, Frank, Harris, Shriver & Jacobson LLP and Perella Weinberg Partners LP, as well as local Delaware counsel, and began engaging in negotiations with the Debtors. At each major stage in EFH Corp.'s restructuring since then, Fidelity has been either a critical participant, or a capital contributor, or both. Ultimately, Fidelity became an important supporter of the Debtors' restructuring efforts. Over the more than three years since Fidelity first became involved in the Debtors' restructuring efforts, Fidelity principals or advisors have attended countless meetings and hearings and participated materially and constructively at every stage of these chapter 11 cases.

9. In the earliest stages of these chapter 11 cases, Fidelity was an important supporter of the E-Side postpetition financing and the two makewhole settlements. In particular, Fidelity committed to and funded $500 million in cash under the EFIH first lien DIP facility [D.I. 859] and agreed to settle its makewhole claims under $400 million of its EFIH first lien notes, which were exchanged into EFIH first lien DIP loans, thus saving the Debtors' estates over $850 million. Moreover, Fidelity committed to funding $171 million of the proposed

second lien DIP and agreed to settle its makewhole claims under its EFIH second lien notes. Fidelity's critical engagement facilitated the Debtors' smooth entry into these chapter 11 cases.

10. In connection with the Debtors' first confirmed plan of reorganization,[3] Fidelity committed to invest $500 million in cash to facilitate the merger transaction and the E-Side Debtors' expeditious emergence from chapter 11. *See Stipulation* § 2.4 [D.I. 7181-1]. Fidelity also agreed to settle its EFIH second lien and EFH unsecured note claims in connection with that plan. *Id.* § 2. Although those transactions did not ultimately close, Fidelity's commitments with respect thereto are indicative of its continued willingness to support EFH Corp. and contribute financially to its reorganization. Indeed, in confirming the Sixth Amended Plan, the Court found that Fidelity made a substantial contribution to these chapter 11 cases, stating:

> Any professionals and certain parties representing parties receiving payment of fees and expenses pursuant to Article IV.R. of the Plan, excluding (a) professionals representing Holders of TCEH First Lien Secured Claims, EFIH First Lien Note Claims, and EFIH Second Lien Note Claims, and (b) those fees payable under the TCEH DIP Facility, EFIH First Lien DIP Facility, the Merger and Purchase Agreement, the Backstop Agreement, or the Cash Collateral Order (each a "Requesting Party" and collectively, "Requesting Parties"), all of which Requesting Parties ***the Court has found to have made, in accordance with sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code, a substantial contribution in these cases*** as set forth in the Confirmation Ruling . . . .

*Amended Order Confirming the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 7285], ¶ 118; *see also* Sixth Amended Plan, Article IV.R [D.I. 7285-1]; *see also* Ex. 1, 12/3/15 Hr.'g Tr. at

---

[3] *Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 7235] (the "Sixth Amended Plan").

5

78:17-24[4] ("As with the payment of professional fees under the Settlement Agreement, the record clearly supports a finding that the parties covered by Article 4(r) of the plan, Section 2.7(b) of the Settlement Agreement, Section 2.4 of the Fidelity settlement, and Section 2(c)(6) of the EFH committee settlement, that all provided a substantial contribution to the case, justifying the payment of their professional's reasonable fees and expenses . . . ."). Moreover, as the Court has repeatedly noted, the Settlement Agreement approved in conjunction with the Sixth Amended Plan (but which survived its withdrawal) laid the groundwork for the confirmation orders for TCEH, EFH, and EFIH that followed.

11.     Most recently, after the Sixth Amended Plan was abandoned and the Debtors engaged in multiple-bidder negotiations to obtain the highest and best offer for the E-Side Debtors, the E-Side Debtors entered into a merger agreement (the "NextEra Merger Agreement") and plan support agreement with NextEra Energy, Inc. ("NextEra") on July 29, 2016.[5] Even after the NextEra Merger Agreement was executed, efforts to maximize recoveries did not stop and the Debtors, NextEra, and certain creditors, including Fidelity, continued negotiations. *See* Ex. 2, D-DIR Keglevic_R, ¶19. Indeed, Fidelity objected to approval of the NextEra Merger Agreement[6] and simultaneously engaged in discussions with NextEra and other third-party potential bidders. As a direct result of Fidelity's efforts, NextEra increased its purchase price for the E-Side Debtors by $300 million cash <u>and</u> released $150 million from the asbestos escrow

---

[4]   Exhibits referenced herein are attached to the *Declaration of Bryan M. Stephany, Esq. in Support of Debtors' Motion of Energy Future Holdings Corporation for Allowance of an Administrative Expense Claim for Fidelity Management & Research Company's Substantial Contribution Pursuant to Sections 503(B)(3)(D) and 503(B)(4) of the Bankruptcy Code*, filed contemporaneously herewith.

[5]   *See* Ex. 1, 2 to the *Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry Into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into and Performance Under Plan Support Agreement* [D.I. 9190].

[6]   *See Objection of Certain Funds and Accounts Advised or Sub-advised by Fidelity Management & Research Company or its affiliates to Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry Into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into and Performance Under Plan Support Agreement* [D.I. 9397] ("Fidelity's Merger Agreement Objection").

6

account contemplated by the NextEra Merger Agreement, thereby increasing total distributable value by approximately $450 million. *See Amendment No. 1 to Agreement and Plan of Merger* [D.I. 9584-4]; *see also* Ex. 2, D-DIR Keglevic_R, ¶19; Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into Performance Under Plan Support Agreement [D.I. 9584], Exhibit C - Amendment No. 1 to Agreement and Plan of Merger; Ex. 3, DX124 Sept. 30, 2016 Presentation to Joint Boards – Restructuring Update [EFH06577922 at EFH06577934]; Ex. 4, DX125 Sept. 30, 2016 Minutes of Meeting of Joint Boards [EFH06578080]. This brought the total contribution under the NextEra transaction to $9.8 billion, after accounting for satisfaction of the EFIH first lien DIP obligations. Fidelity's efforts in this regard helped secure $450 million in additional value for all of EFH Corp.'s constituencies under the *Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10815] (the "Plan"). *See* Ex. 4, DX124 Sept. 30, 2016 Presentation to Joint Boards – Restructuring Update [EFH06577922 at EFH06577934] (summarizing the increase in distributable value from the Plan Sponsor and Fidelity's agreement to join the Plan Support Agreement).

12. As Mark Hickson, NextEra's Executive Vice President for Corporate Development, Strategy, Quality, and Integration, testified at the recent confirmation hearing for the Plan, discussions with Fidelity were one of the "primary reasons" NextEra increased the distributable value by $450 million. Ex. 5, 2/16/17 Hr.'g Tr. at 22:5–16. ("In addition to discussions that we had with the company from July 29th to September 19th, we also had discussions with Fidelity. And, similar to the interests of the company, Fidelity had an interest in us providing more value, an interest in NextEra providing more value to the estate. And we thought it—at the time, we thought it was very important to get Fidelity on board and have them

7

support our transaction. And so, the combination of the discussion—of discussions with EFH, as well as discussions with Fidelity, were the primary reasons why we increased our bid from 4.1 to 4.4 billion in the mid-September timeframe."); *see also* Ex. 6, D-DIR Hickson, ¶ 11.

13. In connection with the Plan, this Court has already held that the EFH Indenture Trustee—specifically as a result of its litigation efforts which "led to an increase of distributable value to the estates of approximately $400 million"—has made a substantial contribution. Ex. 7, 2/17/17 Hr.'g Tr. at 20:2321:1-5. The Court held that "[l]ike I found with the last plan that was confirmed in December of 2015, I believe that the indentured [sic] trustee for the EFH noteholders has provided a substantial contribution to the debtor's estate that would justify a payment of administrative expense claim for those fees and expenses." Ex. 7, 2/17/17 Hr.'g Tr. at 20:13-18. As the EFH Indenture Trustee has acknowledged, while the EFH Indenture Trustee pursued litigation, it was in fact Fidelity's Merger Agreement Objection and subsequent negotiation between Fidelity and NextEra that resulted in the increased purchase price for the E-Side Debtors. *See Response of the EFH Indenture Trustee to the United States Trustee's Objection, Response and Reservation of Rights with Respect to the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH and the EFIH Debtors* [D.I. 10790] at FN 13 ("While the leverage generated by the EFH Indenture Trustee's efforts surely contributed to the increase [in purchase price], the negotiations were led by Fidelity").

14. Importantly, Fidelity does not stand to benefit from this increase in purchase price with respect to its recovery on its EFH unsecured notes. As a result of the Third Circuit ruling regarding the allowance of makewhole claims, under the waterfall for distribution of proceeds contemplated by the Plan, the holders of the EFIH PIK notes are the chief beneficiaries of the

8

increase in purchase price negotiated by Fidelity. This fact does not negate Fidelity's substantial contribution. As this Court held with respect to the EFH Indenture Trustee, "[t]hat doesn't mean that there wasn't a contribution by the indentured [sic] trustee to the estate as a whole, although it ultimately is not going to inure—unfortunately, to the benefit of those creditors." 2/17/17 Hr.'g Tr. at 21:21-24.

15. Finally, following the Third Circuit ruling regarding the allowance of makewhole claims, Fidelity has agreed to the settlement of the makewhole claims in connection with the EFIH second lien notes, likely avoiding expensive and unnecessary claims reserve litigation and associated appeals, and freeing up greater Effective Date distributions that would otherwise be possible, once again demonstrating Fidelity's substantial contribution to navigating these chapter 11 cases towards conclusion.

## Basis for Relief

16. Fidelity is entitled to reimbursement of its expenses, pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, for its substantial efforts and contributions to the Debtors' chapter 11 cases. In addition, Fidelity's expenses incurred in making those contributions constitute an actual, necessary expense under the circumstances.

**I.    Fidelity Is Entitled to an Administrative Claim Pursuant to Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code for Its Substantial Contributions to EFH Corp.'s Chapter 11 Case.**

17. Section 503 of the Bankruptcy Code provides that after notice and a hearing, there shall be allowed, as an administrative expense, the actual necessary expenses incurred by "a creditor . . . in making a substantial contribution" to a chapter 11 case. 11 U.S.C. § 503(b)(3)(D). Section 503(b)(4) provides for reimbursement of related reasonable attorney's fees. *Id.* § 503(b)(4). Section 507(a)(2) establishes the priority of administrative expenses. *Id.* § 507(a)(2).

9

18.     The term "substantial contribution" is not defined in the Bankruptcy Code. In *Lebron v. Mecham Financial Inc.*, the Third Circuit adopted the substantial contribution test articulated by the Tenth Circuit:  "In determining whether there has been a 'substantial contribution' pursuant to section 503(b)(3)(D), the applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." 27 F.3d 937, 944 (3d. Cir. 1994) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)).  Under this test, "the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interest."  *Id*.  In determining whether a creditor's efforts amount to a substantial contribution, this Court has considered the following factors: "whether the services were provided to benefit the estate itself or all the parties in the bankruptcy case; whether the services conferred a direct benefit upon the estate; and whether [the] services were duplicative of services performed by others."  *In re Summit Metals*, 379 B.R. 40, 51 (Bankr. D. Del. 2007) (quoting *In re Gurley*, 235 B.R. 626, 636 (Bankr. W.D. Tenn. 1999) (citing *In re Best Products Co., Inc.*, 174 B.R. 862, 865-866 (Bankr. S.D.N.Y. 1994)); *In re FRG, Inc.*, 124 B.R. 653, 658 (Bankr. E.D. Pa. 1991); *In re Alert Holdings Inc.*, 157 B.R. 753, 757 (Bankr. S.D.N.Y. 1993)).

19.     Notably, "the existence of a self-interest cannot in and of itself preclude reimbursement."  *Lebron*, 27 F.4d at 944; *see also In re Worldwide Direct, Inc.*, 334 B.R. 112, 123 (Bankr. D. Del. 2003) (holding an applicant "must introduce 'something more than self-serving statements regarding [its] involvement in [the] case' to carry its burden" (quoting *Buckhead* 161 B.R. at 15 (Bankr. D. Del. 1993)).  In other words, the inquiry focuses on the nexus between the benefit received by the estate and the act undertaken by the creditor, and not primarily the creditor's particular state of mind or intentions in so acting.

10

20. Courts have noted that substantial contribution cases usually involve a "creditor t[aking] an active role in facilitating the negotiation and successful confirmation of the plan." *In re Granite Partners*, 213 B.R. 440, 446 (Bankr. S.D.N.Y. 1997). Courts have also recognized, however, that the finding of a substantial contribution is not necessarily contingent on approval or consummation of an underlying transaction or a direct financial contribution. *See In re Lister*, 846 F.2d at 58 (stating that a substantial contribution award "does not necessarily depend on the confirmation of a proposed plan of reorganization."); *In re Baldwin-United Corp.*, 79 B.R. 321, 344 (Bankr. S.D. Ohio 1987) (awarding substantial contribution claim where offer to purchase debtors' assets drew competing bid that debtors ultimately accepted). For example, courts have allowed administrative expenses under section 503(b)(3)(D) for potential lenders that provide alternative DIP financing for debtors, even though the debtor ultimately received DIP financing from a different lender. *See, e.g.*, *In re FF Holdings Corp.*, 343 B.R. 84, 87 (D. Del. 2006) ("That another lender was readily available to the Debtors undoubtedly assisted the Debtors in its [sic] negotiation with other parties.").

21. Ultimately, a creditor "who has engaged legal counsel, and as such provided legal services which have directly and materially contributed to a reorganization, and which were not rendered solely on behalf of that creditor's own interest, should be reimbursed for the cost of the legal services and related expenses incurred." *In re Glickman, Berkowitz, Levinson, & Weinder, P.C.*, 196 B.R. 291, 298 (Bankr. E.D. Pa. 1996).

22. Here, Fidelity, as the largest creditor of EFH Corp., has played an active, constructive, and unique role in these chapter 11 cases from the outset.

23. Fidelity has materially and substantially benefited the Debtors' estate during the pendency of these chapter 11 cases in at least three significant and tangible instances, each of which would satisfy the substantial contribution requirement standing alone:

- ***First***, Fidelity funded $500 million in EFIH first lien DIP loans, providing postpetition financing to the E-side that saved the estates substantial interest expense, ultimately increasing recovery to EFH creditors under any plan. Fidelity also agreed to settle its makewhole claims under $400 million of its EFIH first lien notes.

- ***Second***, in connection with the Sixth Amended Plan, Fidelity committed to invest an additional $500 million to facilitate the merger transaction. Indeed, in connection with confirmation of the Sixth Amended Plan, this Court found that Fidelity made a substantial contribution to these chapter 11 cases.[7]

- ***Third***, Fidelity assisted EFH Corp. in negotiating for an additional $300 million in the purchase price under the NextEra transaction and for the release of $150 million from the asbestos escrow account, increasing distributable value under the Plan by $450 million. This is a quintessential "substantial contribution" and is sufficient to support allowance of the Substantial Contribution Claim. In addition, in connection with the Plan, Fidelity has agreed to settle its EFIH second lien makewhole claims, helping ensure a smooth resolution to these chapter 11 cases and further affirming its commitment to working constructively with the Debtors for the benefit of the Debtors' estates.

These actions of Fidelity clearly resulted in actual and demonstrable benefits to the Debtors' estates. *See Lebron*, 27 F.3d at 944; *Summit Metals*, 379 B.R. at 51. While Fidelity's actions in these chapter 11 cases have often also benefited Fidelity to some extent, just as "[m]ost activities of an interested party that contribute to the estate will also, of course, benefit that party to some degree", Fidelity's efforts have always been focused on enhancing value for the estates and all parties, and that has been the tangible result. *Lebron*, 27 F.3d at 944; *see Summit Metals*, 379 B.R. at 51. And indeed, Fidelity's contributions to the Debtors' estates have not always

---

[7] *See Amended Order Confirming the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* ¶ 118 [D.I. 7285].

12

RLF1 17104285v.1

inured to Fidelity's benefit; notably, Fidelity does not stand to benefit significantly from the $450 million in additional distributable value it negotiated for under the NextEra transaction. Furthermore, Fidelity's efforts were not duplicative of others; as the EFH Indenture Trustee and NextEra have recognized, it was Fidelity, not they, that negotiated for the $450 million increase in distributable value. The unique benefits conferred on the Debtors' estates by Fidelity's actions plainly would not have been realized without Fidelity. *See id.* Accordingly, EFH Corp. respectfully requests that the Court award Fidelity its due consideration for its substantial contribution to these chapter 11 cases.

II. **The Expenses Incurred by Fidelity Were Actual, Necessary, and Reasonable in Accordance with Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code.**

24. The Substantial Contribution Claim constitutes an actual, necessary expense. Section 503(b)(3) provides for an administrative expense claim for "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection." 11 U.S.C. § 503(b)(3)(D). Section 503(b)(4), in turn, states that services rendered by an attorney or accountant are compensable under section 503(b)(3) when they are:

> reasonable . . . based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

*Id.* § 503(b)(4). To the extent this Court finds Fidelity made a substantial contribution to these chapter 11 cases, the amounts sought for professional fees are compensable in accordance with section 503(b)(3)(D) because they were actual and necessary costs of Fidelity making its contributions.

25. As a result, the only issue remaining regarding Fidelity's expenses for professional services is whether the expenses are reasonable. As set forth in the Order, the fees will be subject to detailed procedures for review by the Fee Committee, consistent with those

13

previously approved by the Court in its first order confirming the Debtors' plan of reorganization. Moreover, the Substantial Contribution Claim will be subordinated to the "Beneficiary Claims," as defined in the Settlement & Support Agreement [D.I. 7143] with the EFH Creditors' Committee. This ensures compliance with that settlement and also reduces the impact of the Substantial Contribution Claim on other creditor recoveries. Accordingly, subject to review by the Fee Committee, Fidelity has met all requirements to receive compensation for its reasonable professional fees under sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code.

## Notice

26.  EFH Corp. shall provide notice of this Motion on the date hereof via first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75%

EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (z) the Buyer; (aa) Luminant; and (bb) Greensport/Ship Channel Partners, L.P. EFH Corp. submits that, in light of the nature of the relief requested, no other or further notice need be given.

RLF1 17104285v.1

## **No Prior Request**

27. No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, EFH Corp. respectfully requests that the Court enter the Order and grant such other and further relief as is deemed appropriate under the circumstances.

Dated: March 2, 2017
       Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:   collins@rlf.com
   defranceschi@rlf.com
   madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   edward.sassower@kirkland.com
   stephen.hessler@kirkland.com
   brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   james.sprayregen@kirkland.com
   marc.kieselstein@kirkland.com
   chad.husnick@kirkland.com
   steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*