# EXHIBIT 1

Page 1

1  UNITED STATES BANKRUPTCY COURT
   DISTRICT OF DELAWARE
2
3  In re:                    :
                             :  Chapter 11
4  ENERGY FUTURE HOLDINGS    :
   CORP., et al.,    :   :   Case No. 14-10979(CSS)
5                    :
        Debtors.     :   (Jointly Administered)
6  _____:
7
8
9
10             United States Bankruptcy Court
11             824 North Market Street
12             Wilmington, Delaware
13             December 3, 2015
14             10:24 AM - 12:39 PM
15
16
17
18
19
20  B E F O R E :
21  HON CHRISTOPHER S. SONTCHI
22  U.S. BANKRUPTCY JUDGE
23
24  ECRO OPERATOR:  LESLIE MURIN
25  Transcribed by:  Sonya Ledanski Hyde

Page 2

1  A P P E A R A N C E S :
2
3  FOLEY & LARDNER LLP
4      Attorney for UMB Bank, NA as Indenture Trustee
5
6  BY:  MARK F. HEBBEIN
7       HAROLD KAPLAN
8
9  MORRIS JAMES LLP
10     Attorney for Law Debenture of New York, Indenture
11     Trustee
12
13  BY:  STEPHEN M. MILLER
14
15  PATTERSON BELKNAP
16     Attorney for Law Debenture of New York, Indenture
17     Trustee
18
19  BY:  DANIEL A. LOWENTHAL
20
21
22
23
24
25

Page 3

1  FOX ROTHSCHILD LLP
2      Attorney for Counsel to Ad Hoc Group of TCEH Unsecured
3      Noteholders
4
5  BY:  L. JOHN BIRD
6       JEFFREY M. SCHLERF
7
8  WHITE & CASE LLP
9      Attorney to Ad Hoc Committee of EFIH Unsecured
10     Noteholders and EFIH Second Lien DIP Commitment
11
12  BY:  THOMAS LAURIA
13       J. CHRISTOPHER SHORE
14
15  U.S. DEPARTMENT OF JUSTICE
16     Attorney for the U.S. Trustee
17
18  BY:  RICHARD L. SCHEPACARTER
19
20  MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP
21     Co-Counsel to the TCEH Debtors
22
23  BY:  DAVID H. PRIMACK
24
25

Page 4

1  MUNGER, TOLLES & OLSON LLP
2      Co-Counsel to the TCEH Debtors
3
4  BY:  THOMAS B. WALPER
5
6  KLEHR HARRISON HARVEY BRANZBURG LLP
7      Counsel to UMB Bank N.A. Indenture Trustee
8
9  BY:  RAYMOND H. LEMISCH
10
11  AKIN GUMP
12     Counsel to UMB Bank N.A. Indenture Trustee
13
14  BY:  SCOTT L. ALBERINO
15
16  SHEARMAN & STERLING LLP
17     Counsel to Deutsche Bank, agent to DIP Financing
18
19  BY:  NED S. SCHODEK
20
21  POTTER ANDERSON & CORROON LLP
22     Attorneys for Deutsche Bank New York
23
24  BY:  R. STEPHEN MCNEILL
25

Page 77

1  Furthermore, the creditors or the entities
2 responsible for the payments, the EFH Debtors, are
3 unimpaired and, thus, these payments do not affect any
4 creditors whose recovery might otherwise have been increased
5 in the absence of such payment obligation.
6  The Debtors further assert that Section 503(3)(b)
7 of the Bankruptcy Code has been met, based on the record in
8 these cases, because of the pivotal role played by the plan
9 sponsors and the necessity of their support in confirming
10 the plan.
11  When the estate does not pay for various fees that
12 are routine in the negotiation, creation and confirmation of
13 a plan, the Fifth Circuit has held that the Bankruptcy Court
14 need not mandate an expensive and unnecessary inquiry.
15 Mabey v. Southwestern Electric Power, 150 F.3d 503 at 517,
16 Fifth Circuit, 1998.
17  Nonetheless, Section 1129(a)(4) provides that,
18 quote, "any payment made or to be made by the proponent by
19 the Debtor or by a person issuing securities or acquiring
20 property under the plan, for services or for costs and
21 expenses in or in connection with the case, or in connection
22 with the plan and incident to the case, must be approved by
23 or subject to the approval of the Court as reasonable", end
24 quote.
25  Here, the fees are being paid by the reorganized

Page 78

1 Debtor and are being fronted by the plan sponsors.  In both
2 instances, the code requires that these fees be reviewed and
3 approved by the Court as to reasonableness.  And, as with
4 the Settlement Agreement, there is an argument to be made
5 that the Court could authorize these fees outside of Section
6 503 and 1120 9(a)(4) without Court review as to
7 reasonableness.  See, for example, In RE: Adelphia
8 Communications Corp., 411 B.R. 6 Bankruptcy, Southern
9 District of New York.
10  Once again, the Court is not rejecting the
11 reasoning of those cases, but believes in this case, it is
12 appropriate and more prudent to require compliance to
13 Sections 1129(a)(4) and 503 of the Bankruptcy Code.  The
14 professional fees may be evaluated as a substantial
15 contribution claim under Sections 503(b)(3)(d) and (4) of
16 the Code.
17  ==As with the payment of professional fees under the==
18 ==Settlement Agreement, the record clearly supports a finding==
19 ==that the parties covered by Article 4(r) of the plan,==
20 ==Section 2.7(b) of the Settlement Agreement, Section 2.4 of==
21 ==the Fidelity settlement, and Section 2(c)(6) of the EFH==
22 ==committee settlement, that all provided a substantial==
23 ==contribution to the case, justifying the payment of their==
24 ==professional's reasonable fees and expenses, but the Court==
25 cannot at this time make a finding of reasonableness.

Page 79

1  Again, in order for the professional fees and
2 expenses to be paid under the plan, the Settlement
3 Agreement, Fidelity settlement, and the EFH committee
4 settlement, each professional firm must submit its invoices
5 to the fee committee established in this case for the fee
6 committee's review and comment, with the fee committee
7 ultimately issuing a written recommendation or a report to
8 the Court.
9  The UST may also review and comment on the fees,
10 and may make a written submission to the Court in his
11 individual capacity, as opposed to as a member of the fee
12 committee, if he so desires.  The Court would then approve
13 those fees and expenses it determines to be reasonable.
14  The Court does not require that the professional
15 firm file a formal application, and does not expect the
16 submissions to satisfy the rules governing formal fee
17 applications or the UST fee guidelines.  The invoices need
18 not be filed on the docket, although the recommendation of
19 the fee committee and any objection or comment by the UST
20 should be docketed.
21  The parties should work with the fee committee and
22 the UST to establish the timing and parameters of this
23 process, including the level of review by the fee committee.
24 But, as with the Settlement Agreement, the Court will
25 authorize the payment on the effective date of up to 80

Page 80

1 percent of fees and 100 percent of expenses of the
2 professional seeking payment under Article 4(r) of the plan
3 and the Settlement Agreements.  Those fees and expenses
4 would remain subject to discouragement in the event the
5 Court ultimately found a lesser amount to be reasonable.
6  This ruling does not apply to the payment of
7 professional fees of the PIK noteholders indenture trustee,
8 as the Court understands that the PIK noteholders settlement
9 provides that those fees will be fronted by the Debtors, but
10 actually paid from the charging lien.
11  If the Court's understanding is incorrect, and the
12 professional fees of the PIK noteholders indenture trustee
13 are being paid by the estate, then this ruling would apply
14 to that payment.
15  The Court will sustain in part and overall in part
16 the UST's objection, and will approve the payment of
17 professional fees under Article 4(r) of the plan and the
18 settlements as a substantial contribution to the Debtor's
19 estate under Section 503(b)(3)(d) and (4) of the Code,
20 subject to a review for reasonableness, after compliance
21 with the fee committee review process.
22  Thus, in conclusion, for the reasons articulated
23 and based upon the extensive evidentiary record in this
24 case, subject to the ruling on professional fees, the Court
25 will confirm the Debtor's sixth amended plan of