# EXHIBIT 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF PAUL KEGLEVIC IN SUPPORT OF CONFIRMATION
OF THE SEVENTH AMENDED PLAN OF REORGANIZATION
AS IT APPLIES TO THE E-SIDE DEBTORS**

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## TABLE OF CONTENTS

**Page**

I.      **The Plan of Reorganization as to the EFH and EFIH Debtors.** ................................... **4**

II.     **Negotiation and Development of the NextEra Merger Transaction, Original NextEra Plan, and NextEra PSA Before the Third Circuit Makewhole Ruling.** ................................................................................................................. **6**

    A.      NextEra's Pursuit of Oncor. ................................................................. 6

    B.      Development of the Original NextEra Plan. ........................................ 8

III.    **Negotiation and Development of the Revised NextEra Plan and PIK PSA** ............... **12**

    A.      The Third Circuit's November 17, 2016 Makewhole Opinion. .......................... 12

    B.      Negotiations with NextEra, the EFIH Secured Creditors, and the PIK Group. ......................................................................................... 13

    C.      Settlement with the PIK Group. ........................................................ 16

IV.     **The Plan Maximizes Value for the Debtors' Estates.** ................................. **19**

V.      **The Plan is Feasible.** .............................................................................. **22**

    A.      The Merger is Highly Likely to Close. .............................................. 22

VI.     **The Non-Consensual Releases of NextEra are Proposed in Good Faith.** .................. **23**

Pursuant to 28 U.S.C. § 1746, I, Paul Keglevic, hereby declare as follows under penalty of perjury:

1.      I make this Declaration in support of confirmation of the *Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10551] (the "Plan" or "Revised NextEra Plan") as it applies to the EFH/EFIH Debtors.[2]

2.      I am the Chief Executive Officer, Chief Restructuring Officer ("CRO") and Chief Accounting Officer of Energy Future Holdings Corp. ("EFH Corp." or "EFH") and EFH Corp.'s direct subsidiary Energy Future Intermediate Holding Company LLC ("EFIH"). Before the TCEH and Shared Services Debtors emerged from bankruptcy on October 3, 2016, I was the Executive Vice President, Chief Financial Officer, and co-CRO of EFH, its direct subsidiary Energy Future Competitive Holdings Company LLC ("EFCH"), EFCH's direct subsidiary Texas Competitive Electric Holdings Company LLC ("TCEH"), and EFIH.

3.      EFH Corp. is a corporation organized under the laws of the state of Texas.  EFH Corp.'s direct subsidiary, EFIH, is a limited liability company organized under the laws of the state of Delaware. EFH, EFIH, and various other direct and indirect subsidiaries of EFH Corp. that are debtors in these chapter 11 cases, are collectively referred to herein as the "Debtors."[3]

4.      I have worked for the Debtors since July of 2008.  I am generally familiar with the Debtors' businesses, day-to-day operations, financial matters, results of operations, cash flows, and underlying books and records.  Except as otherwise indicated below, all facts set forth

---

[2]  Capitalized terms used but not defined herein have the meanings assigned to them in the Plan.

[3]  For the time period prior to October 3, 2016, "Debtors" also includes the TCEH Debtors and Shared Services Debtors, as defined in the Plan.  Those entities emerged from bankruptcy on October 3 and were spun off to the TCEH First Lien Creditors.  Prior to the TCEH Debtors' and Shared Service Debtors' emergence, I served as co-CRO for all the Debtors, along with Stacey Doré, the Debtors' General Counsel at the time.

are based upon my personal knowledge of the Debtors' businesses, operations, and related financial information gathered from my review of their books and records, relevant documents, including documents filed in this bankruptcy proceeding, and information supplied to me by members of the Debtors' management team and advisors.

5.     I understand that certain ███████████ creditors oppose confirmation of the Plan as to the E-Side Debtors.



- Certain asbestos claimants (the "<u>Asbestos Objectors</u>") argue, among other things, that the Plan is not offered in good faith because its only purpose as to the LSGT Debtors (defined below) is to discharge unmanifested asbestos liabilities without compensation.

## I.     The Plan of Reorganization as to the EFH and EFIH Debtors.

6.     The Plan implements the terms of the merger agreement entered into with NextEra on July 29, 2016 and amended on September 18, 2016 (the "<u>NextEra Merger</u>

Agreement").[4]   Pursuant to the NextEra Merger Agreement, on the EFH Effective Date, Reorganized EFH will (in a tax-free reorganization under section 368 of the Bankruptcy Code) merge with and into a new investment vehicle, Merger Sub, with Merger Sub surviving as a wholly owned subsidiary of NextEra.   Merger Sub will acquire all assets and liabilities of Reorganized EFH in exchange for a contribution of cash and stock.

7.      The Plan provides for a series of funds transfers in connection with the NextEra Merger.  Merger Sub will deliver the Merger Sub Cash Amount to the EFH Plan Administrator Board for deposit into the EFH/EFIH Distribution Account—except $100 million of that amount, which will be escrowed for the payment of asbestos liabilities, in accordance with the NextEra Merger Agreement.[5]  NextEra will deliver additional funds to EFIH to pay off the EFIH First Lien DIP Claims.  In addition, any cash on hand at EFIH will be deposited into the EFH/EFIH Distribution Account.

8.      Funds in the EFH/EFIH Distribution Account (i) will be used to pay any EFIH First Lien Note Claims and EFIH Second Lien Note Claims Allowed as of the Effective Date, (ii) the remainder will be segregated in the EFIH Claims Reserve, the Post-Effective Date Administrative Account, and various other sub-accounts, including a subaccount for MLOC (defined below) fees in accordance with the priority set forth in the Plan; and (iii) any non-segregated amounts thereafter will be distributed to the holders of EFIH Unsecured Note Claims ("EFIH PIKs").[6]

---

[4]   DX029 Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into Performance Under Plan Support Agreement [D.I. 9584], Exhibit 1 - Merger Agreement.

[5]   *Id.* at § 1.7; DX001 Seventh Amended Joint Plan, Art. IV.B.9 [D.I. 10551].

[6]   DX001 Seventh Amended Joint Plan, Art. IV.B.9 [D.I. 10551].

9.      The EFH unsecured creditors will receive the equivalent of cash on hand at EFH plus any excess value from the EFH/EFIH Distribution Account.

10.     The Plan, including the proposed transaction with NextEra (the "NextEra Merger"), is the best option available to all of the Debtors' constituencies.  It is the culmination of over three years of negotiation and analysis of alternatives by the Debtors and their advisors, the Disinterested Directors and their advisors, and the various creditor constituencies. Based on all the facts available to me, the Plan maximizes value to each of the E-Side Debtors' estates and allows for their timely emergence from bankruptcy.

## II.    Negotiation and Development of the NextEra Merger Transaction, Original NextEra Plan, and NextEra PSA Before the Third Circuit Makewhole Ruling.

### A.    NextEra's Pursuit of Oncor.

11.     NextEra has been involved in the marketing process for EFH's economic interests in Oncor Electric Delivery Company LLC ("Oncor") since early in these chapter 11 cases.  The Debtors' initial contact and negotiations with NextEra took place in the summer of 2014, when NextEra made an unsolicited bid for Oncor.[7]  In the fall of 2014, the Debtors sought to establish bidding procedures for a formal marketing process for Oncor, in an effort to obtain the highest and best value for their estates.[8]  As part of a robust marketing process between January and June 2015, the Debtors and their professionals contacted over 50 parties, including NextEra.   In parallel with the marketing process, the Debtors negotiated with creditor groups on their own competing proposals. The Debtors narrowed the proposals to two finalists—one from NextEra and one from a consortium led by the Hunts, in partnership with certain TCEH creditors (the

---

[7]    DX490 July 16, 2014 Letter from NEE, EFIH Second Liens to EFIH Board [EFH06128428].

[8]    DX088 Motion of Energy Future Holdings Corp., et al., for Entry of an Order Establishing Procedures to Make Certain Capital Investments and Purchases [D.I. 1925].

"Hunt Plan").[9]  Ultimately, the Debtors pursued the Hunt Plan, which was confirmed by the Bankruptcy Court in December 2015.

12.    In connection with the Hunt Plan, the Debtors had also entered into a plan support agreement with Ovation—the investment vehicle for the Hunt Plan—and certain TCEH creditors (the "2015 PSA").  Under the 2015 PSA, the parties' obligation to support the Hunt Plan would terminate on April 30, 2016, unless all approvals from the Public Utility Commission of Texas ("PUCT") had been obtained, subject to certain exceptions.[10]  Although the PUCT approved Oncor and Ovation's joint change in control application on March 25, 2016, it imposed certain conditions on the approval that affected the proposed transaction.[11]  Throughout April, counsel for the TCEH First Lien Creditors indicated that they would terminate support for the Hunt Plan on May 1, 2016 and, if the Debtors did not immediately file an alternative plan of reorganization, the TCEH First Lien creditors would file their own plan and attempt to take control of the case.[12]

13.    In light of these concerns, the Debtors and their advisors worked diligently to develop the terms of an alternative plan that would maximize value for all of the Debtors' constituencies.  As expected, on May 1, 2016, the TCEH First Lien creditors sent a letter to the Debtors and other parties to the 2015 PSA terminating their obligation to support the Hunt Plan.[13]  The occurrence of this "Plan Support Termination Event" rendered the Hunt Plan "null and void" under Article IX.D of the Hunt Plan and pursuant to paragraph 147 of the 2015

---

[9]    DX225 June 9, 2015 Presentation to the Joint Boards – Update Regarding Stalking Horse Marketing Process [EFH05551711].

[10]    DX063 Order Authorizing Debtors to Enter Into and Perform Under Plan Support Agreement [D.I. 6097], Exhibit A to Exhibit A - Plan Support Agreement, § 11(g).

[11]    DX670 Mar. 23, 2015 Order [PUCT Dkt. No. 45188, Item 671].

[12]    DX187 Apr. 7, 2016 Letter from A. Kornberg to T. Lauria re TCEH [EFH06366082 at EFH06366094]; *see also* DX185 Apr. 29, 2016 Joint Boards Restructuring Update Presentation [EFH06323765 at EFH06323767].

[13]    DX494 May 1, 2016 Plan Support Termination Notice [EFH06303995].

Confirmation Order.[14]   Immediately after receiving the TCEH First Liens' letter, the Debtors

filed a new plan of reorganization.[15]

### B.    Development of the Original NextEra Plan.

14.    On May 2, 2016, the day after the Hunt Plan was terminated, NextEra's CEO, Jim

Robo, emailed an EFH acquisition term sheet to John Young, his EFH counterpart.[16]   The bid

contemplated a pay down and assumption of E-Side debt, but was based on outdated cash

projections from the 2015 Oncor marketing process.[17]   On May 4, 2016, my co-CRO and I, with

the help of the Debtors' advisors, provided the Joint Boards with a restructuring update that

included a comparison of the Debtors' plan term sheet with the May 2 NextEra proposal.[18]   Two

weeks later, on May 18, NextEra sent the Debtors a revised bid and term sheet, featuring a higher

bid value, which was based on the Debtors' updated cash forecast.[19]   The Joint Boards were

updated about this new term sheet and discussions with other parties who had indicated that they

might submit proposals for Oncor.[20]

15.    The Debtors continued negotiations with NextEra over the next two months and,

in parallel, reached out to other potential bidders.  After contacting 18 potential bidders, eight of

---

[14]    DX050 Order Confirming the Sixth Amended Joint Plan of Reorganization [D.I. 7244].

[15]    DX047 Joint Plan of Reorganization [D.I. 8355]; DX046 Disclosure Statement for the New Joint Plan of Reorganization [D.I. 8356].

[16]    DX506 May 2, 2016 Email from S. Dore to A. Wright, et al. re EFH Proposal attaching Term Sheet [EFH06362905].

[17]    *Id.* at EFH06362925.

[18]    DX173 May 4, 2016 Minutes of Meeting of Joint Boards [EFH06365157 at EFH06365158].

[19]    DX504 May 18, 2016 Email from P. Keglevic to T. Horton forwarding NextEra Revised Bid Letter [EFH06337329].

[20]    *See* DX156 May 20, 2016 Presentation to Joint Boards - NextEra Proposal Analysis [EFH06364669]; DX157 May 20, 2016 Minutes of Meeting of Joint Boards [EFH06365191].

them, including NextEra, signed NDAs and were granted data room access.[21]  The Debtors also continued discussions with certain EFH and EFIH creditors, including Fidelity, EFIH Second Lien Note holders, and EFIH PIKs in an effort to reach a consensual plan that included the input of the key parties in interest.[22]  On June 20, the Debtors received a bid proposal from a second bidder ("Bidder 2").  This proposal offered a lower total enterprise value for Oncor than the NextEra proposal at that time.[23]

16.     In late June and July, the Debtors drove vigorous negotiations with both NextEra and Bidder 2 in their continued efforts to maximize creditor recoveries.  Draft transaction documents and plans of reorganization were exchanged and negotiated by phone and in person with both bidders.  The Debtors aimed to reach a final deal and amended plan proposal in the final week of July, to coincide with several board meetings that had been scheduled in anticipation of several restructuring milestones.  NextEra and Bidder 2 were aware of these upcoming board meetings, which accelerated negotiations on key outstanding points.

---

[21]  See DX154 June 10, 2016 Presentation to Joint Boards – Restructuring Update [EFH06326025 at EFH06326043]; DX155 June 10, 2016 Minutes of Meeting of Joint Boards [EFH06365715 at EFH06365717].

[22]  See DX152 June 24, 2016 Presentation to Joint Boards – Restructuring Update [EFH06364698 at EFH06364704]; DX153 June 24, 2016 Minutes of Meeting of Joint Boards [EFH06365718].

[23]  See DX152 June 24, 2016 Presentation to Joint Boards – Restructuring Update [EFH06364698 at EFH06364708].

July 21
NEE draft merger agreement
$3.786 bn purchase price
(increase of ~$50)
July 27 (Wed)
- NEE assumes asbestos liabilities ($250 mm escrow)
- NEE drops match right
- Increase to market break fee ($275 mm)
- Price increases to $3.986 bn
July 28 (Thurs) / July 29 (Fri)
- Purchase price increases by $110 mm to $4.096 bn
- PIKs cleared
August 3
NEE Merger Agreement filed
Jul
Aug
2016
Joint Board Meetings with Restructuring Updates
KEY NEGOTIATING ISSUES
Price (including Distributable Value)
Termination Fee
Match Right (including Go Shop)
Asbestos Liabilities
Closing Conditions
Oncor Letter Agreement
Representations & Warranties
Ancillary Agreements
EFIH 1L DIP Refinancing

*Figure 1*

17. As of July 21, the Debtors were still negotiating four key points with NextEra—the purchase price, a termination fee, a match right, and treatment of asbestos liabilities. On that day, NextEra agreed to increase the purchase price by $50 million—to $3.786 billion in cash.[24] By July 27, Bidder 2 had submitted a revised bid that put it in the lead with respect to distributable value. In turn, NextEra raised its bid by $200 million, agreed to assume the preserved asbestos liabilities and to escrow $250 million for those liabilities, increased the break fee, and dropped the match right, bringing NextEra into the lead once again in terms of distributable value.[25] Following further negotiations with the Debtors, on July 28 and 29, NextEra increased its purchase price by another $110 million, to $4.096 billion in cash.[26] This

24 DX513 July 22, 2016 Email from W. Greason to EFH and KE attaching Redline to Agreement and Plan of Merger [EFH06411142].

25 DX514 July 27, 2016 Email from W. Greason to EFH and KE attaching Redline [EFH06417897 at EFH06418047]; *see also* DX135 July 28, 2016 Presentation to Joint Boards – M&A Update [EFH06375541]; DX137 July 28, 2016 Minutes of Meeting of Joint Boards [EFH06523189].

26 *See* DX133 July 29, 2016 Presentation to Joint Boards – Proposal Comparison [EFH06375548]; DX134 July 29, 2016 Minutes of Meeting of Joint Boards [EFH06440533].

final deal fully cleared the EFIH capital structure, with excess value of $53 million flowing up to the EFH unsecured creditors.  In contrast, Bidder 2's final bid was insufficient to clear the EFIH PIKs and, therefore, offered no excess value for the EFH unsecured creditors.[27]  Additionally, the transaction documents with Bidder 2 required several days of additional negotiation.[28]  The Debtors' management and advisors presented these developments to the Joint Boards on July 28 and 29, and the Joint Boards authorized the Debtors to accept NextEra's bid.[29]

18.     The Debtors executed the merger agreement with NextEra on July 29 and filed an amended plan (the "Original NextEra Plan") and motion to approve the termination fee and the plan support agreement and merger agreement with NextEra in early August.[30]

19.     The Debtors' efforts to maximize creditor recoveries did not stop with the July 29 execution of the merger agreement.  In anticipation of the September 19 hearing on the Debtors' motion, the Debtors, NextEra, and certain creditors, including Fidelity (a holder of TCEH First Lien debt, EFIH First and Second Lien Notes, and EFH unsecured debt), continued discussions regarding the merger agreement with NextEra.  These discussions resulted in a settlement with Fidelity on September 18, amendment of the plan support agreement to add Fidelity as a signatory (as amended, the "NextEra PSA"), and amendment of the merger agreement with NextEra (as amended, the "NextEra Merger Agreement") to reflect a $300 million increase in the cash component of NextEra's purchase price—raising the price to $4.396 billion—and a release

---

[27]    DX133 July 29, 2016 Presentation to Joint Boards – Proposal Comparison [EFH06375548 at EFH06375549].

[28]    DX135 July 28, 2016 Presentation to Joint Boards – M&A Update [EFH06375541].

[29]    DX135 July 28, 2016 Presentation to Joint Boards – M&A Update [EFH06375541]; DX137 July 28, 2016 Minutes of Meeting of Joint Boards [EFH06523189]; DX133 July 29, 2016 Presentation to Joint Boards – Proposal Comparison [EFH06375548]; DX134 July 29, 2016 Minutes of Meeting of Joint Boards [EFH06440533].

[30]    DX038 Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement [D.I. 9190]; DX037 Third Amended Plan [D.I. 9199].  *See also* DX132 Aug. 2, 2016 Unanimous Written Consents [EFH06577296].

of $150 million out of the $250 million amount to be set aside for the asbestos escrow.[31]  In turn,

the additional distributable value nearly quadrupled the recoveries of the EFH unsecured

creditors.[32]

20.     This Court approved the Debtors' entry into the NextEra Merger Agreement and

NextEra PSA on September 19, and the EFH and EFIH boards formally affirmed the Debtors'

performance under the NextEra Merger Agreement and NextEra PSA on September 30.[33]

## III.    Negotiation and Development of the Revised NextEra Plan and PIK PSA.

### A.     The Third Circuit's November 17, 2016 Makewhole Opinion.

21.     From September 19 through November 17, the Debtors worked toward the

EFH/EFIH Confirmation Hearing—originally scheduled to begin on December 1, 2016—in

anticipation of the December 15, 2016 confirmation milestone under the NextEra PSA.[34]

Meanwhile, the EFIH First Liens proceeded with their appeal of the District Court's order

affirming the Bankruptcy Court's order disallowing their Makewhole Claims.  The EFIH First

Liens' appeal of that order had the potential to affect the Debtors' confirmation efforts because

the Original NextEra plan had a condition precedent requiring the Makewhole Claims to be

disallowed by the Bankruptcy Court by an order that had not been reversed, stayed, modified, or

---

[31]   DX029 Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into Performance Under Plan Support Agreement [D.I. 9584], Exhibit C - Amendment No. 1 to Agreement and Plan of Merger; *see also* DX124 Sept. 30, 2016 Presentation to Joint Boards – Restructuring Update [EFH06577922 at EFH06577934]; DX125 Sept. 30, 2016 Minutes of Meeting of Joint Boards [EFH06578080].

[32]   DX124 Sept. 30, 2016 Presentation to Joint Boards – Restructuring Update [EFH06577922 at EFH06577934].

[33]   DX125 Sept. 30, 2016 Minutes of Meeting of Joint Boards [EFH06578080 at EFH06578084].

[34]   DX029 Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into Performance Under Plan Support Agreement [D.I. 9584], Exhibit 2 - NextEra Plan Support Agreement, § 8.03(d).

amended (the "Makewhole Condition Precedent").[35]  The NextEra PSA further provided that if this condition precedent was not satisfied, NextEra could terminate the NextEra PSA.[36]  NextEra could, however, waive the condition in its sole discretion and agree to satisfy any allowed Makewhole Claims, without reducing recoveries for the EFIH PIKs.[37]  This, in turn, would increase the cash purchase price.

22.    On September 27, 2016, the Third Circuit heard oral argument on the EFIH First Liens' appeal.  To ensure that the Joint Boards were informed and prepared for all contingencies, on October 25, the Debtors' management and advisors updated the Boards regarding different scenarios for the treatment of makewhole claims under the Original NextEra Plan, depending on the outcome of the EFIH First Liens' appeal.[38]  On November 17, the Third Circuit issued a ruling on the appeal, holding that the EFIH First Liens are entitled to a makewhole premium (the "Makewhole Opinion").[39]  The Third Circuit's ruling effectively meant that the condition precedent to the consummation of the then-pending Plan could not be satisfied.

**B.    Negotiations with NextEra, the EFIH Secured Creditors, and the PIK Group.**

23.    With the December 15 confirmation milestone less than a month away, the Debtors quickly evaluated their options in light of the Makewhole Opinion and began

---

[35]    DX026 Fourth Am. Plan [D.I. 9612 at Art. IX.D.10].

[36]    DX029 Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into Performance Under Plan Support Agreement [D.I. 9584], Exhibit 2 - NextEra Plan Support Agreement, § 8.03(i).

[37]    DX026 Fourth Am. Plan [D.I. 9612 at Art. VI.A, n. 3].

[38]    DX123 Oct. 25, 2016 Presentation to Joint Boards – Restructuring Update [EFH06582482 at EFH06582487-90].

[39]    DX679 Opinion of the Court, *Delaware Trust Co. v. Energy Future Intermediate Holding Co., LLC, et al.*, No. 16-1351 (3d Cir. Nov. 17, 2016).

negotiating a forbearance agreement with NextEra to ensure that a termination event would not be triggered under the NextEra PSA.[40]

24.    On November 18, the Joint Boards met for an update on the Makewhole Opinion and engaged in a high level discussion with the Debtors' management and advisors on available alternatives, including the timing and probability of success of those alternatives.[41]

25.    On November 30, the Debtors' advisors and I provided the Joint Boards with a restructuring update, during which Kirkland informed the Boards that NextEra had orally confirmed to the Debtors' management and Kirkland that it would not agree to top up the EFIH PIKs' recovery.[42]   Instead, and as a result, the Joint Boards approved the filing of an amended plan deleting the Makewhole Condition Precedent.[43]   The Boards also approved circulation of a CRO term sheet that I prepared with Kirkland's assistance (the "CRO Term Sheet"), which contemplated settlement of the EFIH Secured Creditors' Makewhole Claims.   The CRO Term Sheet's key terms included deletion of the provision to top up the EFIH PIKs, deletion of the Makewhole Condition Precedent, and modification of the post-Effective Date makewhole risk so that NextEra would no longer bear that risk.

26.    On December 1, the Debtors and NextEra executed a forbearance agreement extending the December 15, 2016 confirmation milestone to February 22, 2017.[44]   As a result, the Debtors adjourned the confirmation hearing set to begin on December 1.

---

[40]   DX542 Nov. 18, 2016 Email from A. Yenamandra to Chadbourne, NextEra [EFH06582569].

[41]   DX118 Nov. 18, 2016 Minutes of a Meeting of Joint Boards [EFH06592897_R]; DX117 Nov. 18, 2016 Presentation to Joint Boards – Restructuring Update [EFH06592536_R].

[42]   DX116 Nov. 30, 2016 Minutes of a Meeting of Joint Boards [EFH06592899]; DX115 Nov. 30, 2016 Presentation to Joint Boards – Restructuring Update [EFH06592575].

[43]   DX116 Nov. 30, 2016 Minutes of a Meeting of Joint Boards [EFH06592899].

[44]   DX552 Dec. 1, 2016 NextEra Forbearance Agreement [EFH06583315 at EFH06583318].

27.     At NextEra's request, in early December, the Debtors and their advisors worked to facilitate settlement discussions with the EFIH Secured Creditors and an ad hoc group of EFIH PIKs (the "PIK Group").  On December 4, 2016, the Debtors shared the CRO Term Sheet with the EFIH Secured Creditors.[45]  The following day, the Debtors entered into a restrictive NDA with the EFIH Secured Creditors, which contained a December 14 disclosure date.[46]  Negotiations with the EFIH Secured Creditors continued.

28.     At the same time, the PIK Group reached out to the Debtors and affirmatively sought to enter into negotiations with the Debtors.  On December 8, 2016, the Debtors entered into a restrictive NDA with the PIK Group, and the PIK Group sent a letter discussing the material impact of the amended Plan on the PIK Group and requesting that the Debtors engage with the PIK Group to reach consensus on a confirmable plan.[47]  The Debtors promptly shared the PIK Group's letter with the Boards.[48]  On December 9, Debtors shared the CRO Term Sheet with the PIK Group.[49]

29.     After vigorous negotiations, the Debtors reached a general agreement with the EFIH Secured Creditors on the economic terms of a settlement.  On December 16, the Debtors' advisors and I advised the Boards of the terms of the proposed settlement, which had a three-tier structure that contemplated changing settlement amounts depending on whether the PIK Group

---

[45]  DX557 Dec. 4, 2016 Email from A. Yenamandra to P. Anker attaching EFIH Term Sheet [EFH06583604]; DX556 Dec. 4, 2016 Email from A. Yenamandra to J. Brody attaching EFIH Draft Term Sheet [EFH06583593]; DX113 Dec. 9, 2016 Presentation to Joint Boards – Restructuring Update [EFH06592611 at EFH06592614].

[46]  DX553 Dec. 5, 2016 Email from A. Yenamandra to P. Anker attaching EFIH Principal [EFH06583488].

[47]  DX114 Dec. 9, 2016 Minutes of a Meeting of Joint Boards [EFH06592908]; DX113 Dec. 9, 2016 Presentation to Joint Boards – Restructuring Update [EFH06592611].

[48]  *Id.*

[49]  DX564 Dec. 9, 2016 Email from C. Husnick to S. Alberino attaching EFIH Term Sheet [EFH06584387].

supported the proposed Plan and, if so, whether they agreed to accept within 24 hours.[50]  The

PIK Group did not accept the proposal within 24 hours.  The proposed settlement with the EFIH

Secured Creditors required additional negotiation of the terms of the proposed plan and a related

plan support agreement.  Importantly, the proposed settlement would include a fiduciary out at

least through confirmation.

30.      At the December 16 Joint Board meeting, Kirkland notified the Boards of an

email received during the meeting from counsel to the PIK Group, which expressed willingness

to resolve their plan confirmation issues in a manner that preserved the Debtors' ability to pursue

makewhole-related litigation against the EFIH Secured Creditors (the "Makewhole

Litigation").[51]  This PIK Group proposal was not fully developed.  Given that the proposed

settlement with the EFIH Secured Creditors included a fiduciary out that would allow the Boards

to fully consider the PIK Group proposal if and when it became more fully developed, the

Boards approved the proposed settlement with the EFIH Secured Creditors.

C.      **Settlement with the PIK Group.**

31.      Following the December 16, 2016 board meeting, the Debtors negotiated with the

EFIH Secured Creditors and the PIK Group on parallel paths—working with the EFIH Secured

Creditors to draft a plan support agreement, plan, and disclosure statement, while also working

with the PIK Group regarding their escrow proposal.  The latter discussions ultimately resulted

in agreement with the PIK Group on the Revised NextEra Plan currently before this Court.

---

[50]   DX112 Dec. 16, 2016 Minutes of a Meeting of Joint Boards [EFH06592909]; DX111 Dec. 16, 2016
       Presentation to Joint Boards – Restructuring Update [EFH06592621].

[51]   DX573 Dec. 16, 2016 Email from S. Alberino to C. Husnick [EFH06584753].

32.    On December 19, the Debtors filed an SEC Form 8-K disclosing that they had reached an agreement in principle with the EFIH Secured Creditors.[52]   That day, the PIK Group sent the Debtors a markup of a draft term sheet.[53]

33.    On December 27, 2016, the Debtors' advisors and I gave the Boards a restructuring update, and informed the Boards that a plan support agreement reflecting the settlement with the EFIH Secured Creditors was yet to be executed.[54]   We also provided the Boards with a summary of the more fully developed proposal with the PIK Group ████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████   The proposal ██████ provided for the EFIH Secured Creditors to be paid principal and interest on all allowed claims as of the Effective Date, while the EFIH PIKs could—but were not required—to receive a partial distribution as of that date.  The EFIH PIKs would then bear the risk and expense of pursuing the Makewhole Litigation, by means of the Makewhole Litigation Oversight Committee ("MLOC") and the EFH/EFIH Plan Administrative Board.  No EFH funds would be used to fund the ongoing litigation, although EFH unsecured creditors stood to benefit if the Makewhole Claims were ultimately disallowed.  The PIK Group's proposal was contingent on obtaining the support of at least 66⅔% of aggregate, outstanding principal amount of EFIH Unsecured Note Claims by January 3.  Having reviewed

---

[52]    DX571 Dec. 19, 2016 Energy Future Holdings Corp. SEC Form 8-K.

[53]    DX571 Dec. 19, 2016 Email from S. Alberino to A. Yenamandra [EFH06584693]; DX569 Dec. 19, 2016 Email from N. Moss to S. Alberino attaching Redline of EFIH PIK Term Sheet [EFH06584674 at  EFH06584683].

[54]    DX109 Dec. 27, 2016 Presentation to Joint Boards – Restructuring Update [EFH06592917]; DX110 Dec. 27, 2016 Minutes of a Meeting of Joint Boards [EFH06598485].

the risks and rewards of the PIK Group's proposal versus the EFIH Secured Creditors' proposal, the Boards authorized pursuit of a deal with the PIK Group.[55]

34.    On January 2, the PIK Group executed a plan support agreement with the Debtors (the "PIK PSA"),[56] and the Debtors filed the Revised NextEra Plan reflecting this deal the following day.[57]

35.    Below is an overview of the confirmation-related events discussed herein:



*Figure 2*

---

[55]    DX110 Dec. 27, 2016 Minutes of a Meeting of Joint Boards [EFH06598485].

[56]    DX631 Jan. 2, 2017 Email A. Yenamandra to C. Eisenhut attaching PIK PSA - Execution Version. [EFH06595056].

[57]    DX012 Seventh Amended Joint Plan [D.I. 10518].

**IV.    The Plan Maximizes Value for the Debtors' Estates.**

36.    The Debtors have been marketing Oncor for over two and a half years.  During that time, the Debtors have considered E-Side equitization plans and numerous other creditor proposals, and they have engaged with NextEra and other bidders, through a formal competitive bidding process and independent negotiations.  This transaction with NextEra represents the highest and best offer for the Debtors' interests in Oncor, and maximizes the value of the EFH and EFIH estates.

37.    *First*, the Plan provides for payment in full of all Allowed Claims of objecting EFIH secured creditors, including payment of any potential Makewhole Claims.  The Plan achieves this by reserving amounts in the EFIH Claims Reserve for a reasonable time period while the Makewhole Litigation proceeds.  *Second*, the Plan avoids cram-down litigation with the EFIH PIKs.  *Third*, ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ by allowing the Makewhole Litigation to continue, the Plan offers the possibility of adding substantial recoveries to EFIH and EFH creditors, if the Makewhole Claims are ultimately disallowed.  This possibility is available at no cost to the Debtors because the EFIH PIKs have agreed to bear the risk of pursuing that litigation.███████████████████████████████ ████████████████████████████████

38.    In contrast, further delay in the restructuring process will cause the Debtors' resources to dwindle, with no realistic upside.





██████████████████████████████████████████████

███████  ██████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████.

## V.    The Plan is Feasible.

### A.    The Merger is Highly Likely to Close.

42.    NextEra has been interested in Oncor since the beginning of the chapter 11 proceedings, and has submitted multiple bids for Oncor dating back to 2014. NextEra has also invested significant resources in support of the Plan and the transaction. Among other things, NextEra conducted extensive diligence on Oncor, including considerable work to vet and account for asbestos liabilities. NextEra has also invested considerable time in preparing and filing—jointly with Oncor—its change of control application with the PUCT.  NextEra also independently negotiated and reached agreement with TTI (Oncor's minority investor) and Oncor Management to acquire TTI's and Oncor Management's minority interests in Oncor.[59] When the Third Circuit issued its Makewhole Opinion, NextEra did not walk away from the transaction, but worked with the Debtors to amend their Plan and restructuring efforts in response to the changed circumstances.[60]

43.    In light of all the time and money NextEra has already invested in the transaction, and NextEra's long-demonstrated desire to acquire Oncor, NextEra has a very strong incentive to

---

[59]    *See* DX119 Oct. 31, 2016 Presentation to Joint Boards – TTHC and OMI Transactions [EFH06582499].

[60]    *See, e.g.*, DX552 Dec. 1, 2016 NextEra Forbearance Agreement [EFH06583315 at EFH06583318].

consummate the transactions contemplated by the Plan, including by working with Oncor to obtain regulatory approval from the PUCT.

44.    Furthermore, under the Revised NextEra Plan, NextEra no longer bears the risk of the Makewhole Claims being reinstated post-Effective Date.  Instead, the Debtors will escrow the maximum amount of EFIH First and Second Lien Claims that may ultimately be allowed in the EFIH Claims Reserve, while the EFIH PIKs pursue the Makewhole Litigation at their own expense.  ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

**VII.    The Non-Consensual Releases of NextEra are Proposed in Good Faith.**

██    ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

██    ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████

47.    *Second*, and as discussed at length in Sections II and III above, NextEra has made critical contributions to the Debtors' Plan and restructuring efforts.  NextEra will infuse $9.8 billion into the Debtors' estates (including satisfaction of the EFIH First Lien DIP Facility), setting the Debtors on the path to emergence.  The bidding that led to the Plan before the Court

was an active and robust process, particularly in the period from May through July 2016. Throughout the course of negotiations, I never saw any evidence of NextEra colluding or conspiring with any bidder in an effort to reduce the bid price—just the opposite, NextEra's involvement in the bidding process directly led to a more competitive bidding process for Oncor and corresponding increases in the Oncor purchase price.

48.     *Third*, NextEra approved key agreements, which enabled the tax-free spinoff of the TCEH Debtors—and, as a result, the TCEH Unsecured Creditors' $550 million recovery. Specifically, NextEra agreed to bind Merger Sub under the Tax Matters Agreement following the consummation of the NextEra Merger Agreement, and NextEra agreed to significant concessions regarding its indirect ownership of Oncor following the NextEra Merger.  These concessions included agreeing to refrain from (a) undertaking certain kinds of M&A transactions with respect to its interest in Oncor for a period of time and (b) taking other actions for a period of time that could put the tax treatment of the spin-off at risk. NextEra also agreed that Merger Sub would accept the risk of liability with respect to certain "no-fault" situations in which the spin-off becomes taxable.  Similarly, NextEra provided key consents with respect to the Separation Agreement, which enabled the transfer of EFH Corporate Services—thereby allowing Reorganized TCEH, as well as the E-Side Debtors, to continue their critical business services and functions after the TCEH Debtors emerged.  NextEra's commitments in these foundational agreements directly benefited the TCEH Debtors and their creditors.

49.     *Fourth*, to the best of my recollection, every bidder in the EFH sales process requested similar releases to achieve a "clean slate" post-emergence for their involvement in the EFH restructuring.

50.    ***Fifth***, based on all of my interactions with and observations of NextEra regarding the EFH bankruptcy, I am not aware of any potential claims against NextEra.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Dated: February 10, 2017

  */s/ Paul Keglevic*
Paul Keglevic

*Chief Executive Officer, Chief Restructuring Officer, and Chief Accounting Officer*

ENERGY FUTURE HOLDINGS CORP.