# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
|  | Re: D.I. 10853 |

## ORDER CONFIRMING THE EIGHTH AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AS IT APPLIES TO THE EFH DEBTORS AND EFIH DEBTORS

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] and the EFH Debtors and EFIH Debtors having, as applicable:

a. commenced, on April 29, 2014 (the "Petition Date"), the chapter 11 cases (including, collectively, the chapter 11 cases of the TCEH Debtors, the EFH Shared Services Debtors, the EFH Debtors, and the EFIH Debtors) (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b. continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed on August 10, 2015, (i) the *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* [D.I. 5249] (the "Settlement Motion") and (ii) *Motion of Energy Future Holdings Corp., et al., to Authorize the Debtors to Enter Into and Perform Under the Plan Support Agreement* [D.I. 5248];

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, the "EFH Confirmation Order") have the meanings given to them in the *Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* dated February 17, 2017 [D.I. 10853], attached hereto as **Exhibit A** (the "Plan"). The rules of interpretation set forth in Article I.B of the Plan apply to this EFH Confirmation Order.

d.  filed on November 23, 2015, the *Notice of Settlement Among Debtors, EFH Committee, EFH Notes Trustee, Plan Sponsors, Consenting TCEH First Lien Creditors, and TCEH Committee* [D.I. 7090]; as amended by the *Amended Notice of Settlement Among Debtors, EFH Committee, EFH Notes Trustee, Plan Sponsors, Consenting TCEH First Lien Creditors, and TCEH Committee* [D.I. 7031], filed on November 24, 2015 (the "EFH/EFIH Committee Settlement");

e.  filed on May 1, 2016, the (i) *Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8355], (ii) *Disclosure Statement for the New Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8356], (iii) *Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Approving the Disclosure Statement; (B) Establishing the Voting Record Date, Voting Deadline. and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [D.I. 8357], and (iv) *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [D.I. 8358];

f.  filed on May 11, 2016, the *Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8421] and the *Disclosure Statement for the Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8423];

g.  filed on June 10, 2016, the *Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8687];

h.  filed on June 13, 2016, the *Form of Tax Matters Agreement by and among Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, EFIH Finance Inc., and [Reorganized TCEH]* [D.I. 8699];

i.  filed on July 28, 2016, the (I) *Form of Tax Matters Agreement by and Among Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, EFIH Finance, Inc. and [Reorganized TCEH], (II) "Transition Services Agreement," and (III) "Separation Agreement" in Connection with Confirmation Proceedings on the "Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp."* et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8745];

j.  filed on August 5, 2016, the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9199] (the "TCEH Confirmed Plan");

k. filed on November 23, 2015, the *Notice of Settlement Among Debtors, EFH Committee, EFH Notes Trustee, Plan Sponsors, Consenting TCEH First Lien Creditors, and TCEH Committee* [D.I. 7090]; as amended by the *Amended Notice of Settlement Among Debtors, EFH Committee, EFH Notes Trustee, Plan Sponsors, Consenting TCEH First Lien Creditors, and TCEH Committee* [D.I. 7031], filed on November 24, 2015 (the "EFH/EFIH Committee Settlement");

l. filed on August 16, 2016, the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9321] with modifications, supplements, and amendments filed thereafter on August 23, 2016 [D.I. 9374];

m. filed on August 5, 2016, the (i) *Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holding Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* [D.I. 9200] as modified and supplemented thereafter on September 7, 2016 [D.I. 9493] and September 15, 2016 [D.I. 9557], and as amended by the *Disclosure Statement for the Fourth Amended Joint Plan of Reorganization of Energy Future Holding Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* filed on September 21, 2016 [D.I. 9616] (the "Disclosure Statement"); (ii) *Motion of the EFH/EFIH Debtors for Entry of an Order (A) Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the Debtors Joint Plan of Reorganization as it Relates to the EFH/EFIH Debtors, (B) Approving the EFH/EFIH Disclosure Statement, (C) Establishing the EFH/EFIH Voting Record Date, EFH/EFIH Voting Deadline and Other Dates, (D) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan, and (E) Approving the Manner and Forms of Notice and Other Related Documents* [D.I. 9201];

n. filed on September 19, 2016, the *Amended and Restated Plan Support Agreement dated September 19, 2016, by and among the EFH Debtors, the EFIH Debtors, the Fidelity Funds, and NextEra Energy, Inc.* [D.I. 9584-4] (the "Plan Sponsor Plan Support Agreement");

o. filed on September 21, 2016, the *Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9612] (the "Fourth Amended Plan");

p. caused notice of the EFH Confirmation Hearing to be published on October 5, 2016, in *The Wall Street Journal,* as evidenced by the *Affidavit of Publication of Jeb Smith of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan as it Applies to the EFH/EFIH Debtors and Related Voting and Objection Deadline in The Wall Street Journal* [D.I. 9948]; *Waco Tribune-Herald,* as evidenced by the *Affidavit of Publication of Ana Lozano-Harper of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan as it Applies to the EFH/EFIH Debtors and Related Voting and Objection Deadline in the Waco Tribune-Herald* [D.I. 9947]; *USA Today,* as evidenced by the *Affidavit of Publication of Toussaint Hutchinson of Notice of*

3

*Hearing to Consider Confirmation of the Chapter 11 Plan as it Applies to the EFH/EFIH Debtors and Related Voting and Objection Deadline in USA Today* [D.I. 9946]; *The Dallas Morning News*, as evidenced by the *Affidavit of Publication of David Ferster of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan as it Applies to the EFH/EFIH Debtors and Related Voting and Objection Deadline in The Dallas Morning News* [D.I. 9944]; *Houston Chronicle*, as evidenced by the *Affidavit of Publication of Jay H. Heyman of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan as it Applies to the EFH/EFIH Debtors and Related Voting and Objection Deadline in Houston Chronicle* [D.I. 9943]; *Fort Worth Star-Telegram*, as evidenced by the *Affidavit of Publication of Christine Lopez of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan as it Applies to the EFH/EFIH Debtors and Related Voting and Objection Deadline in Star-Telegram, Inc. at Fort Worth* [D.I. 9937]; and in the *Corpus Christi Caller Times*, as evidenced by the *Affidavit of Publication of Jay H. Heyman of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan as it Applies to the EFH/EFIH Debtors and Related Voting and Objection Deadline in the Corpus Christi Caller Times* [D.I. 9936] (collectively, the "EFH Publication Affidavits");

q.    filed on November 10, 2016, the (i) *Plan Supplement as it Relates to the EFH Debtors and EFIH Debtors for the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10101] (the "Plan Supplement"); and (ii) *Affidavit of Service of Solicitation Materials for the EFH/EFIH Debtors* [D.I. 10098] (the "Solicitation Affidavit");

r.    filed on December 1, 2016, the (i) *Fifth Amended Joint Plan of Reorganization of Energy Futures Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10290] and (ii) *Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* [D.I. 10293];

s.    filed on December 2, 2016, the *Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Cast on the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10301] (the "Voting Report");

t.    filed on December 8, 2016, the *Motion of the EFH/EFIH Debtors for Entry of a Supplemental Order (A) Binding Holders of Claims and Interests to Their Prior Ballots, Pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, (B) Approving the Revised EFH/EFIH Disclosure Statement, (C) Approving the Procedures and Timeline for the Limited Resolicitation of Votes on the Plan, and (D) Approving the Manner and Forms of Notice Related Thereto* [D.I. 10349];

u.    filed on December 28, 2016, the (i) *Sixth Amended Joint Plan of Reorganization of Energy Future Holding Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10453] and (ii) *Disclosure Statement for the Sixth Amended Joint Plan of*

*Reorganization of Energy Future Holdings Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code as it applies to the EFH Debtors and the EFIH Debtors* [D.I. 10446];

v.  filed on January 3, 2017, the *Notice of Filing of that Certain* Plan Support Agreement, *Dated January 2, 2017 by and between the EFH/EFIH Debtors, the PIK Notes Trustee, and Certain Creditor Parties Thereto* [D.I. 10530] (the "EFIH Unsecured Creditor Plan Support Agreement");

w.  filed on January 3, 2017, the *Seventh Amended Joint Plan of Reorganization of Energy Futures Holding Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10518], with modifications, supplements, and amendments filed thereafter on January 4, 2017 [D.I. 10535] and February 13, 2017 [D.I. 1081];

x.  filed on January 3, 2017, the *Amended Disclosure Statement for the Seventh Amended Joint Plan of Reorganization of Energy Future Holding Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* [D.I. 10520]; with modifications, supplements, and amendments filed thereafter on January 4, 2017 [D.I. 10533] (the "Supplemental Disclosure Statement" and, together with the Disclosure Statement, the "EFH Disclosure Statement");

y.  filed on January 27, 2017, the *Amended Plan Supplement as it Relates to the EFH Debtors and EFIH Debtors for the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10729] (the "Revised Plan Supplement");

z.  filed on February 6, 2017, the *Affidavit of Service of Solicitation Materials for the EFH/EFIH Debtors* [D.I. 10769] (the "Resolicitation Affidavit" and, together with the Solicitation Affidavit, the "EFH Solicitation Affidavits");

aa. filed on February 7, 2017, a further *Amended Plan Supplement as it Related to the EFH Debtors and EFIH Debtors for the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10780] (the "Amended Plan Supplement" and, together with the Plan Supplement and the Revised Plan Supplement, the "EFH Plan Supplement");

bb. filed on February 9, 2017, the proposed *Order Confirming the [Eighth] Amended Joint Plan of Reorganization of Energy Future Holding Corp.,* et al, *Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* [D.I. 10793-1];

cc. filed on February 9, 2017, the *Debtors' Memorandum of Law in Support of the Confirmation of the Seventh Amended Joint Plan of Reorganization as it Applies to the EFH/EFIH Debtors* [D.I. 10795] (the "EFH Confirmation Memorandum");

dd. filed on February 10, 2017, the *Declaration of Jonathan F. Ganter, Esq. in Support of Debtors' Memorandum of Law in Support of the Confirmation of Seventh Amended*

*Joint Plan of Reorganization as it Applies to the EFH/EFIH Debtors* [D.I. 10797] (the "EFH Confirmation Memorandum Declaration");

ee. filed on February 2, 2017, the *Supplemental Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Cast on the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH/EFIH Debtors* [D.I. 10791] (the "Resolicited Voting Report" and, together with the Voting Report, the "EFH Voting Report" and "D-DIR Sullivan");

ff. submitted on February 16, 2017, the *Declaration of Mark Hickson in Support of the Confirmation of the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* (the "Hickson Declaration" and "D-DIR Hickson");

gg. submitted on February 15, 2017, the *Declaration of Anthony Horton in Support of the Confirmation of the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* (the "Horton Declaration" and "D-DIR Horton");

hh. submitted on February 15, 2017, the *Declaration of Paul Keglevic in Support of the Motion of the Confirmation of the Seventh Amended Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* (the "Keglevic Declaration" and "D-DIR Keglevic");

ii. submitted on February 15, 2017, the *Declaration of John Stuart in Support of the Confirmation of the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* (the "Stuart Declaration" and "D-DIR Stuart");

jj. submitted on February 15, 2017, the *Declaration of Thomas Vasquez in Support of the Confirmation of the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* (the "Vasquez Declaration" and "D-DIR Vasquez");

kk. submitted on February 16, 2017, the *Declaration of Andrew Wright in Support of the Confirmation of the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* (the "Wright Declaration" and "D-DIR Wright");

ll. submitted on February 15, 2017, the *Declaration of David Ying in Support of the Confirmation of the Seventh Amended Joint Plan of Reorganization of Energy Future*

*Holdings Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* (the "Ying Declaration" and "D-DIR Ying");

mm.    submitted on February 15, 2017, the record designations submitted in connection with the December 5, 2016, hearing regarding the *Motion of Shirley Fenicle, David William Fahy, John H. Jones, and David Heinzmann to Dismiss Chapter 11 Petitions of Asbestos Debtors EECI, Inc., EEC Holdings Inc., LSGT Sacroc, Inc., and LSGT Gas Co., LLC Pursuant to 11 U.S.C. § 1112(B)* [D.I. 10074] (the "Motion to Dismiss"), including written direct testimony, exhibits admitted into evidence, deposition designations, and designated portions of the December 5, 2016, hearing transcript;

nn. filed on February 16, 2017, the *Eighth Amended Plan of Reorganization of Energy Future Holdings Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* [D.I. 10848]; and

oo. filed on February 16, 2017, the *Notice of Filing of Proposed EFH Confirmation Order* [D.I. 10848].

This Court having:

a.    entered the *Order Authorizing Debtors to Enter Into and Perform Under Plan Support Agreement* [D.I. 6097] (the "Original PSA Order" and the Plan Support Agreement approved thereto, the "Original PSA") on September 19, 2015;

b.    entered the Order Approving Settlement Among Debtors, EFH Committee, EFH Notes Trustee, and Certain Other Parties [D.I. 7143] on November 25, 2015;

c.    entered the *Order Granting the Motion of Energy Future Holdings Corp.,* et al., *to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 7243] on December 7, 2015;

d.    entered the *Order (Amended) Confirming the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 7285] (the "Original Confirmation Order" and the approved plan of reorganization attached thereto, the "Original Confirmed Plan") on December 9, 2015;

e.    entered the *Order Confirming the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 9421] (the "TCEH Confirmation Order") on August 29,2016;

f.    entered the *Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization As It Relates to the EFH/EFIH Debtors* [D.I. 9381] (the "Scheduling Order") on August 24, 2016;

7

g. entered the (i) *Order (A) Approving the EFH/EFIH Disclosure Statement, (B) Establishing the EFH/EFIH Voting Record Date, EFH/EFIH Voting Deadline, and other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [D.I. 9585] (the "Disclosure Statement Order") approving of the Disclosure Statement, solicitation procedures (the "Solicitation Procedures"), and related notices, forms, and ballots (collectively, the "Solicitation Packages"), and (ii) *Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* [D.I. 9584] (the "Plan Sponsor PSA Order") on September 19, 2016;

h. set November 15, 2016, at 2:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Fourth Amended Plan as it relates to the EFH Debtors and the EFIH Debtors (the "Original Voting Deadline");

i. entered the *Supplemental Order Approving the Revised Schedule for the EFH/EFIH Confirmation Proceedings* [D.I. 10327] on December 7, 2016 (the "Revised Scheduling Order" and, together with the Scheduling Order, the "EFH Scheduling Order");

j. entered the *Supplemental Order (A) Binding Holders of Claims and Interests to Their Prior Ballots, Pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, (B) Approving the Revised EFH/EFIH Disclosure Statement, (C) Approving the Procedures and Timeline for the Limited Resolicitation of Votes on the Plan, and (D) Approving the Manner and Forms of Notice Related Thereto* [D.I. 10560] on January 4, 2017 (the "Supplemental Disclosure Statement Order" and, together with the Disclosure Statement Order, the "EFH Disclosure Statement Order") approving of the Supplemental Disclosure Statement, solicitation procedures (the "Resolicitation Procedures" and, together with the Solicitation Procedures, the "EFH Solicitation Procedures"), related notices, forms, and ballots (collectively, the "Resolicitation Packages" and, together with the Solicitation Packages, the "EFH Solicitation Packages"), and the EFH/EFIH confirmation hearing notice (together with the EFH Publication Affidavits, the "EFH Confirmation Hearing Notice");

k. set February 3, 2017 as the deadline for filing objections to the Plan as it relates to the EFH Debtors and the EFIH Debtors;

l. set February 6, 2017, at 2:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan as it relates to the EFH Debtors and the EFIH Debtors for Holders of Class B3, Class B4, and Class B6 Claims (the "Resolicitation Voting Deadline" and, together with the Original Voting Deadline, the "Voting Deadline");

m. set February 14, 2017, at 1:00 p.m. (prevailing Eastern Time) as the date and time for the commencement of the EFH Confirmation Hearing in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

n.   reviewed the Plan, the EFH Disclosure Statement, the EFH Confirmation Memorandum, and the EFH Confirmation Memorandum Declaration, the EFH Settlement Reply Declaration, the EFH Voting Report, and all pleadings, exhibits, statements, responses, and comments regarding EFH Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases and all closing materials tendered to the Court at closing arguments heard on February 16, 2017;

o.   held the EFH Confirmation Hearing;

p.   heard the statements and arguments made by counsel in respect of EFH Confirmation;

q.   considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the EFH Confirmation Hearing;

r.   entered rulings on the record at the EFH Confirmation Hearing held on February 14-February 17, 2017 (the "<u>EFH Confirmation Ruling</u>");

s.   overruled any and all objections to the Plan as it relates to the EFH Debtors and EFIH Debtors and to EFH Confirmation, except as otherwise stated or indicated on the record, and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

t.   taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the EFH Confirmation Hearing and the opportunity for any party to object to the Confirmation of the Plan as it related to the EFH Debtors and the EFIH Debtors ("<u>EFH Confirmation</u>") has been adequate and appropriate as to all parties affected or to be affected by the Plan as it relates to the EFH Debtors and EFIH Debtors and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of EFH Confirmation and all evidence proffered or adduced by counsel at the EFH Confirmation Hearing and as to Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, William Fahy, John H. Jones, and David Heinzmann (collectively, the "<u>Asbestos Objectors</u>"), having considered the findings of fact and rationales for the conclusions of law announced by the Court in the Chapter 11 Cases related to asbestos, including but not limited to those made on the record at hearings (including but not

9

limited to the December 3, 2015, and September 19, 2016, hearings) and the Original Confirmation Order, the *Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form of and Manner for Filing Asbestos Proofs of Claims, and (C) Approving Notice Thereof* [D.I. 5171] entered on July 30, 2015, the *Order Denying the Amended Motion for Application of Fed. R. Bankr. P. 7023 to this Proceeding and to Certify a Class Pursuant to FRCP Rule 23* [D.I. 7383] entered on December 16, 2015, the TCEH Confirmation Order, and the opinion [D.I. 10414] and order [D.I. 10415] entered on December 19, 2016, denying the Motion to Dismiss, establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order:

## I.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.    Jurisdiction and Venue.**

1.    On the Petition Date, the Debtors commenced the Chapter 11 Cases.  Venue in this Court was proper as of the Petition Date and remains proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan as it relates to the EFH Debtors and EFIH Debtors is a core proceeding under 28 U.S.C. § 157(b)(2).  The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334.  The Court has exclusive jurisdiction to determine whether the Plan as it relates EFH Debtors and EFIH Debtors complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.    Eligibility for Relief.**

2.    The Debtors were and continue to be entities eligible for relief under section 109 of the Bankruptcy Code.

### C.    Commencement and Joint Administration of the Chapter 11 Cases.

3.    On June 5, 2014, the Court entered an order [D.I. 849] authorizing the joint administration of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b).    The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

4.    On May 13, 2014, the U.S. Trustee appointed the Official Committee of TCEH Unsecured Creditors representing the interests of the unsecured creditors of the TCEH Debtors and EFH Corporate Services in the Chapter 11 Cases [D.I. 420] (the "TCEH Committee").  On October 27, 2014, the U.S. Trustee appointed the Official Committee of Unsecured Creditors representing the interests of the unsecured creditors for EFH, EFIH, EFIH Finance, Inc., and EECI, Inc. in the Chapter 11 Cases [D.I. 2570] (the "EFH/EFIH Committee").

### D.    Plan Supplement.

5.    Commencing November 10, 2016 [D.I. 10101], and continuing thereafter on January 27, 2017 [D.I. 10729] and February 7, 2017 [D.I. 10780], the EFH Debtors and EFIH Debtors filed the EFH Plan Supplement with the Court.  The documents identified in the EFH Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Plan, the EFH Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the documents identified in the EFH Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal and notice of the EFH Plan Supplement (and all documents identified therein) was appropriate and satisfactory based

upon the circumstances of the Chapter 11 Cases and was conducted in good faith.  No other or further notice with respect to the EFH Plan Supplement (and all documents identified therein) is necessary or shall be required.  For the avoidance of doubt, upon entry of the EFH Confirmation Order, the letter agreement between Energy Future Holdings Corp. and NextEra Energy, Inc. included as <u>Exhibit L</u> in the Plan Supplement filed on November 10, 2016 [D.I. 10101–12] shall become binding upon the parties thereto in accordance with the terms and conditions set forth therein.

**E.    Modifications to the Plan as it Relates to the EFH Debtors and EFIH Debtors.**

6.    Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan described or set forth in this EFH Confirmation Order constitute technical changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest.  These modifications are consistent with the disclosures previously made pursuant to the EFH Disclosure Statement and solicitation materials served pursuant to the EFH Disclosure Statement Order, and notice of these modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases.

7.    In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims and Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan as it relates to the EFH Debtors and the EFIH Debtors.

**F.      Objections Overruled.**

8.      Any resolution or disposition of objections to EFH Confirmation explained or otherwise ruled upon by the Court on the record at the EFH Confirmation Hearing is hereby incorporated by reference.  All unresolved objections to Confirmation of the Plan as it relates to the EFH/EFIH Debtors are hereby overruled on the merits.

**G.      EFH Disclosure Statement Order.**

9.      On September 19, 2016, the Court entered the EFH Disclosure Statement Order [D.I. 9585], which, among other things, fixed November 15, 2016, as the deadline for voting to accept or reject the Fourth Amended Plan as it relates to the EFH Debtors and the EFIH Debtors, as well as the original deadline for objecting to the Plan as it relates to the EFH Debtors and the EFIH Debtors (the "Original Objection Deadline").

10.      On January 4, 2017, the Court entered the Supplemental Disclosure Statement Order [D.I. 10560], which, among other things, fixed February 6, 2017, as the deadline for Holders of Class B3, Class B4, and Class B6 to vote to accept or reject the Plan as it relates to the EFH Debtors and the EFIH Debtors, and fixed February 3, 2017, as the revised deadline for objecting to the Plan as it relates to the EFH Debtors and the EFIH Debtors (the "EFH Plan Objection Deadline").

**H.      Transmittal and Mailing of Materials; Notice.**

11.      As evidenced by the EFH Solicitation Affidavits, the EFH Publication Affidavits, and the EFH Voting Report, the EFH Debtors and EFIH Debtors provided due, adequate, and sufficient notice of the Plan as it relates to the EFH Debtors and the EFIH Debtors, the EFH Disclosure Statement, the EFH Disclosure Statement Order, the EFH Scheduling Order, the EFH Solicitation Packages, the EFH Confirmation Hearing Notice, the EFH Plan Supplement, and all

13

the other materials distributed by the Debtors in connection with EFH Confirmation in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), and the procedures set forth in the EFH Disclosure Statement Order.  The EFH Debtors and the EFIH Debtors provided due, adequate, and sufficient notice of the EFH Plan Objection Deadline, the EFH Confirmation Hearing (as may be continued from time to time), and any applicable bar dates and hearings described in the EFH Disclosure Statement Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the EFH Disclosure Statement Order.  No other or further notice is or shall be required.

## I. Solicitation.

12.    The EFH Debtors and the EFIH Debtors solicited votes for acceptance and rejection of the Plan as it relates to the EFH Debtors and the EFIH Debtors in good faith, and such solicitation complied with sections 1125 and 1126, and all other applicable sections, of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the EFH Disclosure Statement Order, and all other applicable rules, laws, and regulations.

## J. EFH Voting Report.

13.    Prior to the EFH Confirmation Hearing, the EFH Debtors and EFIH Debtors filed the EFH Voting Report.  The procedures used to tabulate ballots were fair and conducted in accordance with the EFH Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

14.    As set forth in the Plan and the EFH Disclosure Statement, Holders of Claims in Classes A4, A5, A6, A7, A8, A9, A10, A11, A12, B3, B4, B5, and B6 (collectively, the "Voting

Classes") were eligible to vote to accept or reject the Plan in accordance with the EFH Solicitation Procedures. Holders of Claims and Interests in Classes A1, A2, A3, B1, B2, and B9 (collectively, the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan as it relates to the EFH Debtors and the EFIH Debtors and, therefore, could not vote to accept or reject the Plan. Holders of Claims or Interests in Classes A14, A16, B8, and B10 (collectively, the "Deemed Rejecting Classes") are Impaired under the Plan, entitled to no recovery under the Plan, and are therefore deemed to have rejected the Plan as it relates to the EFH Debtors and the EFIH Debtors. Holders of Claims and Interests in Classes A13, A15, and B7 are either Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated), or are Impaired and deemed to reject the Plan (to the extent cancelled and released), and, in either event, are not entitled to vote to accept or reject the Plan as it relates to the EFH Debtors and the EFIH Debtors.

15.    As evidenced by the Voting Report, Holders of Claims in Classes A4, A5, A6, A7, A8, A9, A10, A12, and B5 voted to accept the Plan as it relates to the EFH Debtors and the EFIH Debtors. Holders of Claims in Class A11 were not solicited because their Claims were satisfied in full under the terms of the Plan pursuant to the TCEH Confirmation Order and were deemed to accept the Plan as it relates to the EFH Debtors and the EFIH Debtors. *See* TCEH Confirmation Order § D. Further, as evidenced by the Resolicited Voting Report, Holders of Claims in Class B6 voted to accept the Plan as it relates to the EFH Debtors and the EFIH Debtors. As reflected in the Resolicited Voting Report, Holders of Claims in Classes B3 and B4, initially voted to reject the Plan as it relates to the EFH Debtors and the EFIH Debtors, but, as set forth in paragraph 131, Supporting First Lien Creditors and Supporting Second Lien Creditors

are deemed to change any vote to reject the Plan to a vote to accept the Plan, subject only to paragraph 148 (Classes B3 and B4, the "Qualified Accepting Classes").

**K.      Bankruptcy Rule 3016.**

16.      The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).   The EFH Debtors and EFIH Debtors appropriately filed the EFH Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).

**L.      Burden of Proof.**

17.      The Debtors, as proponents of the Plan as it relates to the EFH Debtors and the EFIH Debtors, have satisfied their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation.   Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) by clear and convincing evidence.

18.      The EFH Debtors and the EFIH Debtors have satisfied their burden under section 363 of the Bankruptcy Code to demonstrate that all actions to be taken under the Plan as it relates to the EFH Debtors and the EFIH Debtors pursuant to the EFH Confirmation Order, and related transactions, transfers, and settlements are in the respective best interests of their estates.   For the avoidance of doubt, entry by the EFH Debtors and the EFIH Debtors into the Tax Matters Agreement, the Transition Services Agreement, and the Separation Agreement was approved pursuant to the TCEH Confirmation Order, effective as of the TCEH Effective Date.

**M.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

19.      The Plan as it relates to the EFH Debtors and the EFIH Debtors complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

RLF1 16988573v.1

a.    **Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

20.    The Plan as it relates to the EFH Debtors and the EFIH Debtors complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

i.    **Sections 1122 and 1123(a)(1)—Proper Classification.**

21.    The classification of Claims and Interests under the Plan as it relates to the EFH Debtors and the EFIH Debtors is proper under the Bankruptcy Code.  In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan as it relates to the EFH Debtors and EFIH Debtors provides for the separate classification of Claims and Interests into sixteen different Classes in respect of the EFH Debtors and ten different classes in respect of the EFIH Debtors, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are addressed in Article II of the Plan and are required not to be designated as separate Classes by section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan as it relates to the EFH Debtors and the EFIH Debtors, the classifications were not implemented for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims and Interests.

22.    In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims or Interests contains only Claims or Interests substantially similar to the other Claims or Interests within that Class.  Accordingly, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

ii.      **Section 1123(a)(2)—Specification of Unimpaired Classes.**

23.      Article III of the Plan specifies that Claims in the Deemed Accepting Classes are Unimpaired under the Plan as it relates to the EFH Debtors and the EFIH Debtors. Additionally, Article II of the Plan specifies that Administrative Claims and Priority Tax Claims are Unimpaired, although the Plan does not classify these Claims. Accordingly, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

iii.     **Section 1123(a)(3)—Specification of Treatment of Impaired Classes.**

24.      Article III of the Plan specifies the treatment of each Impaired Class under the Plan as it relates to the EFH Debtors and the EFIH Debtors. Accordingly, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

iv.     **Section 1123(a)(4)—No Discrimination.**

25.      Article III of the Plan as it relates to the EFH Debtors and the EFIH Debtors provides the same treatment to each Claim or Interest in any particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. Accordingly, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

v.      **Section 1123(a)(5)—Adequate Means for Plan Implementation.**

26.      The Plan as it relates to the EFH Debtors and the EFIH Debtors and the various documents included in the EFH Plan Supplement provide adequate and proper means for the execution and implementation of the Plan as it relates to the EFH Debtors and the EFIH Debtors, including: (a) the restructuring of the EFH Debtors' and EFIH Debtors' balance sheet and other

financial transactions provided for by the Plan as it relates to the EFH Debtors and the EFIH Debtors; (b) the implementation of the Merger Agreement, as contemplated by Article IV.B.9 of the Plan; (c) the New Organizational Documents; (d) the consummation of the transactions contemplated by the Plan Sponsor Plan Support Agreement, including the Merger Agreement; (e) the consummation of the transactions contemplated by the EFIH Unsecured Creditor Plan Support Agreement; (f) the cancelation of certain existing agreements, obligations, instruments, and Interests; (g) the continuance of certain agreements, obligations, instruments, and Interests, as provided in Article III of the Plan; (h) the vesting of the assets of the EFH Debtors' Estates and EFIH Debtors' Estates in the Reorganized EFH Debtors and the Reorganized EFIH Debtors as applicable; and (i) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents in furtherance of the Plan. Accordingly, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### vi.  Section 1123(a)(6)—Non-Voting Equity Securities.

27.   The New Organizational Documents prohibit the issuance of non-voting securities.[3] Accordingly, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### vii.  Section 1123(a)(7)—Directors, Officers, and Trustees.

28.   The Reorganized EFH Debtors and the Reorganized EFIH Debtors' initial directors and officers, to the extent known, have been disclosed prior to the EFH Confirmation Hearing and, to the extent not known, will be determined in accordance with the New Organizational Documents, which is consistent with the interests of creditors and equity holders

---

[3]   *See* D.I. 10101, *Plan Supplement as it Relates to the EFH Debtors and EFIH Debtors for the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code*, Ex. A.

and public policy.  Accordingly, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

### b.    Section 1123(b)—Discretionary Contents of the Plan.

29.    The Plan contains various provisions that may be construed as discretionary but not necessary for Confirmation under the Bankruptcy Code.  Any such discretionary provision in the Plan as it relates to the EFH Debtors and the EFIH Debtors complies with section 1123(b) of the Bankruptcy Code and is consistent with the applicable provisions of the Bankruptcy Code. Thus, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies section 1123(b).

### i.    Impairment/Unimpairment of Any Class of Claims or Interests.

30.    Pursuant to the Plan, Article III of the Plan as it relates to the EFH Debtors and the EFIH Debtors impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

### ii.    Assumption and Rejection of Executory Contracts and Unexpired Leases.

31.    The EFH Debtors and the EFIH Debtors (as applicable) have exercised sound business judgment in determining whether to assume or reject each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, and Article V of the Plan and as set forth in the EFH Plan Supplement.  Except as set forth herein and/or in separate orders entered by the Court relating to assumption of Executory Contracts and Unexpired Leases, the EFH Debtors and the EFIH Debtors have cured or provided adequate assurances that they will cure defaults (if any) under or relating to each Executory Contract and Unexpired Lease assumed under the Plan.

### iii.   Compromise and Settlement.

32.    In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan as it relates to the EFH Debtors and the EFIH Debtors, the provisions of the Plan as they relate to the EFH Debtors and EFIH Debtors constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest against an EFH Debtor and/or an EFIH Debtor may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.

### iv.   Debtor Release.

33.    The releases of Claims and Causes of Action by the EFH Debtors and the EFIH Debtors described in Article VIII.C of the Plan in accordance with section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of such Debtors' business judgment under Bankruptcy Rule 9019 (the "Debtor Release"). The pursuit by the EFH Debtors and the EFIH Debtors, or the Reorganized EFH Debtors and the Reorganized EFIH Debtors, of any such claims against the Released Parties is not in the best interest of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such Claims. The Debtor Release is furthermore an integral part of the Plan and the Settlement Agreement and is in the best interests of the Debtors' Estates.

34.    The Debtor Release appropriately offers protection to parties that constructively participated in the Debtors' restructuring process, including TEF, Texas Holdings, Kohlberg Kravis Roberts & Co. L.P., TPG Capital, L.P., and Goldman, Sachs & Co., as well as affiliates that hold direct or indirect interests in Texas Holdings, TEF, or EFH Corp. (collectively,

the "Prepetition Sponsors"), the Plan Sponsor, and each of the Initial Supporting Creditors. Such protections from liability facilitated the participation of many of the Debtors' stakeholders in the negotiations and compromises that led to the Original Confirmed Plan, the TCEH Confirmed Order, the Settlement Agreement, the Plan Sponsor Plan Support Agreement, the Merger Agreement, and the Plan as it relates to the EFH Debtors and the EFIH Debtors. Specifically, the Released Parties under the Plan as it relates to the EFH Debtors and the EFIH Debtors, including, the Plan Sponsor, the Original Plan Sponsors, the Holders of TCEH First Lien Claims (including the members of the TCEH First Lien Ad Hoc Committee), members of the TCEH Unsecured Ad Hoc Group, Holders of General Unsecured Claims against the EFIH Debtors (including the Initial Supporting Creditors) and the EFIH Unsecured Creditor Plan Support Agreement contributed to the Debtors' Chapter 11 Cases, including, as applicable, entering into the Original PSA (including the binding Alternative Restructuring Terms, as defined therein), the Plan Sponsor Plan Support Agreement, and the Settlement Agreement, and waiving substantial Claims against the Debtors. The Debtor Release for the Prepetition Sponsors is appropriate because the Prepetition Sponsors share an identity of interest with the Debtors and the Debtors' directors and officers, waived claims associated with the Chapter 11 Cases, and actively participated in joint board and committee meetings during the Chapter 11 Cases, and have provided other valuable consideration to the Debtors under the Settlement Agreement to facilitate the Debtors' reorganization.

35.    Pursuant to the TCEH Confirmation Order, the TCEH Debtors, the Reorganized TCEH Debtors, the EFH Shared Services Debtors, and the Reorganized EFH Shared Services Debtors were deemed to provide the release set forth in Article VIII.C. of the Plan as of the TCEH Effective Date, including with respect to any Intercompany Claims (other than the TCEH

Settlement Claim) held by or held against the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties. Nothing in this EFH Confirmation Order shall limit or impair any releases granted pursuant to the TCEH Confirmation Order.  The EFH Debtors, the Reorganized EFH Debtors, the EFIH Debtors, and the Reorganized EFIH Debtors shall be deemed to provide the release set forth in Article VIII.C. of the Plan as of the EFH Effective Date.  The TCEH Settlement Claim shall also be deemed to be treated, released, and discharged on the EFH Effective Date.

36.    The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Plan Sponsor Plan Support Agreement, and the Settlement Agreement, the Debtor Release is approved and authorized in its entirety.

###### v.    Release by Holders of Claims and Interests.

37.    The release by the Releasing Parties, set forth in Article VIII.D of the Plan as it relates to the EFH Debtors and the EFIH Debtors (the "Third Party Release"), is an essential provision of the Plan.  The Third Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the claims and Causes of Action released by the Third Party Release; (c) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and are important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in the Chapter 11 Cases; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) a bar to any of the Releasing Parties asserting

any claim or Cause of Action released by the Third Party Release against any of the other Released Parties; and (g) are consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

38.    The Third Party Release is an integral part of the Plan as it relates to the EFH Debtors and the EFIH Debtors.  Like the Debtor Release, the Third Party Release facilitated participation in the Original Confirmed Plan, the Plan as it relates to the EFH Debtors and the EFIH Debtors, and the chapter 11 process generally.  The Third Party Releases were instrumental to the Settlement Agreement that was critical in incentivizing the parties to support the Original Confirmed Plan, the TCEH Confirmation Order, the Plan Sponsor Plan Support Agreement, and the Plan as it relates to the EFH Debtors and the EFIH Debtors, and preventing potentially significant and time-consuming legacy litigation.  The Third Party Releases were a core negotiation point in connection with and instrumental in developing the Original Confirmed Plan, the Settlement Agreement, the TCEH Confirmation Order, the Plan Sponsor Plan Support Agreement, and the Plan as it relates to the EFH Debtors and the EFIH Debtors.  As such, subject to certain enumerated exceptions, the Third Party Release appropriately offers certain protection to parties who constructively participated in the Debtors' restructuring process by supporting the Original Confirmed Plan, the Original PSA, the Plan Sponsor Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Settlement Agreement, the TCEH Confirmation Order, and the Plan as it relates to the EFH Debtors and the EFIH Debtors; Unimpaired Creditors that are being paid in full in Cash or otherwise receiving a full recovery; or Holders of Claims or Interests that abstained from voting but did not opt out of the Third Party Release (to the extent such Holders of Claims or Interests were entitled to opt out of the Third Party Release under the Plan).

39.     Pursuant to the TCEH Confirmation Order, the Releasing Parties were deemed to provide the release set forth in Article VIII.D of the Plan as of the TCEH Effective Date for all Claims and Causes of Action that relate to the TCEH Debtors, the Reorganized TCEH Debtors, the EFH Shared Services Debtors, the Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors or the Reorganized EFH Shared Services Debtors as of the TCEH Effective Date.   Nothing in this EFH Confirmation Order shall limit or impair any releases granted pursuant to the TCEH Confirmation Order.  The Releasing Parties shall be deemed to provide the release set forth in Article VIII.D of the Plan for all Claims and Causes of Action that relate to the EFH Debtors, the Reorganized EFH Debtors, the EFIH Debtors, and the Reorganized EFIH Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized EFH Debtors as of the EFH Effective Date.

40.     The scope of the Third Party Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the Third Party Release.  In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Third Party Release to the Plan as it relates to the EFH Debtors and the EFIH Debtors, the Third Party Release is approved and authorized in its entirety.

###     vi.     Exculpation.

41.     The exculpation provisions set forth in Article VIII.E of the Plan are essential to the Plan as it relates to the EFH Debtors and the EFIH Debtors.  The record in the Chapter 11 Cases fully supports the exculpation and the exculpation provisions set forth in Article VIII.E of the Plan as it relates to the EFH Debtors and the EFIH Debtors, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

### vii.    Injunction.

42.    The injunction provisions set forth in Article VIII.F of the Plan are essential to the Plan as it relates to the EFH Debtors and the EFIH Debtors and are necessary to implement the Plan as it relates to such Debtors and to preserve and enforce the Debtor Release, the Third Party Release, and the exculpation provisions in Article VIII.E of the Plan.  Such injunction provisions are appropriately tailored to achieve those purposes.

### viii.    Preservation of Claims and Causes of Action.

43.    Article IV.Q of the Plan appropriately provides for the preservation by the EFH Debtors and the EFIH Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  Causes of Action not released by such Debtors or exculpated under the Plan will be retained by the Reorganized EFH Debtors, the Reorganized EFIH Debtors, or the EFH Plan Administrator Board, as applicable, as provided by the Plan. The provisions regarding Causes of Action in the Plan as it relates to the EFH Debtors and the EFIH Debtors are appropriate and in the best interests of the EFH Debtors and the EFIH Debtors, their respective Estates, and Holders of Claims against and Interests in the EFH Debtors and the EFIH Debtors.  For the avoidance of any doubt, Causes of Action released or exculpated under the Plan by the EFH Debtors and EFIH Debtors will not be retained by the Reorganized EFH Debtors and the Reorganized EFIH Debtors.

### c.    Section 1123(d)—Cure of Defaults.

44.    Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Any monetary defaults under each Assumed Executory Contract or Unexpired Lease to be assumed by the Reorganized EFH Debtors or the

Reorganized EFIH Debtors shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash by the EFH Debtors or the EFIH Debtors, as applicable, on the EFH Effective Date (and, with respect to Assumed Executory Contracts or Unexpired Leases of the EFH Debtors or the EFIH Debtors, by the EFH Debtors or the EFIH Debtors, as applicable, and, for the avoidance of doubt, not the Reorganized EFH Debtors or the Reorganized EFIH Debtors), subject to the limitations described in Article V.C of the Plan as it relates to the EFH Debtors and the EFIH Debtors, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.C of the Plan as it relates to the EFH Debtors and the EFIH Debtors, and applicable bankruptcy and nonbankruptcy law. As such, the Plan provides that the EFH Debtors and the EFIH Debtors, as applicable, will cure, or provide adequate assurance that they will promptly cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code, as applicable.  Thus, the Plan as it relates to the EFH Debtors and the EFIH Debtors complies with section 1123(d) of the Bankruptcy Code.

**d.      Section 1129(a)(2)—Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code.**

45.      The Debtors, as proponents of the Plan as it relates to the EFH Debtors and the EFIH Debtors, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

46.      The EFH Debtors and the EFIH Debtors and their agents solicited votes to accept or reject the Plan as it relates to the EFH Debtors and the EFIH Debtors after the Court approved

the adequacy of the EFH Disclosure Statement, pursuant to section 1125(a) of the Bankruptcy Code and the EFH Disclosure Statement Order.

47.    The EFH Debtors and the EFIH Debtors and their agents (including the Disbursing Agent) have solicited and tabulated votes on the Plan as it relates to the EFH Debtors and the EFIH Debtors and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e), and in a manner consistent with the applicable provisions of the EFH Disclosure Statement Order, the EFH Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII.E of the Plan.

48.    The EFH Debtors, the EFIH Debtors, the Reorganized EFH Debtors, the Reorganized EFIH Debtors, the Plan Sponsor, and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance (including the issuance and conversion of the Reorganized EFH Common Stock to NextEra Common Stock and the offering and issuance of the NextEra Common Stock), and distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan as it relates to the EFH Debtors and the EFIH Debtors, so long as such distributions are made consistent with and pursuant to the Plan as it relates to the EFH Debtors and the EFIH Debtors.

e.    **Section 1129(a)(3)—Proposal of Plan in Good Faith.**

49.    The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the EFH Disclosure Statement, the hearing on the EFH Disclosure Statement, and the record of the EFH Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

50.    The Plan as it relates to the EFH Debtors and the EFIH Debtors is the product of good faith, arm's-length negotiations by and among the Debtors, the Debtors' disinterested directors and managers, the Plan Sponsor, the EFH/EFIH Committee, certain Holders of EFH Unsecured Note Claims and EFIH Second Lien Note Claims party to the Plan Support Agreement, certain Holders of General Unsecured Claims against the EFIH Debtors Party to the EFIH Unsecured Creditor Plan Support Agreement, the Debtors' prepetition equity sponsors, and certain of the Debtors' other stakeholders.  The Plan as it relates to the EFH Debtors and the EFIH Debtors itself and the process leading to its formulation both provide independent evidence of the Debtors' and such other parties' good faith, serve the public interest, and assure fair treatment of Holders of Claims against and Interests in such Debtors.  Consistent with the overriding purpose of chapter 11, the Debtors filed the Chapter 11 Cases, and proposed the Plan as it relates to the EFH Debtors and the EFIH Debtors (and Merger Agreement), with the legitimate purpose of allowing the Debtors to maximize stakeholder value.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**f.      Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable.**

51.    Subject to paragraph 123, any payment made or to be made by the EFH Debtors and the EFIH Debtors, or by a person issuing securities or acquiring property under the Plan as it relates to the EFH Debtors or the EFIH Debtors, for services or costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan as it relates to the EFH Debtors and the EFIH Debtors and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable. Accordingly, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of section 1129(a)(4).

**g.      Section 1129(a)(5)—Disclosure of Directors and Officers and Consistency with the Interests of Creditors and Public Policy.**

52.    To the extent not disclosed in the EFH Plan Supplement, the identities of the Reorganized EFH Debtors' directors and officers shall be determined in accordance with the New Organizational Documents. Accordingly, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**h.      Section 1129(a)(6)—Rate Changes.**

53.    The Plan as it relates to the EFH Debtors and the EFIH Debtors does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan as it relates to the EFH Debtors and the EFIH Debtors.

**i.      Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

54.    The evidence in support of the Plan as it relates to the EFH Debtors and the EFIH Debtors that was proffered or adduced at the EFH Confirmation Hearing, and the facts and circumstances of the Chapter 11 Cases, establishes that each Holder of Allowed Claims or

RLF1 16988573v.1

Interests in Classes A1-A16 and Classes B1-B10 will recover as much or more value under the Plan on account of such Claim or Interest, as of the EFH Effective Date, than the amount such Holder would receive if the EFH Debtors and the EFIH Debtors were liquidated on the EFH Effective Date under chapter 7 of the Bankruptcy Code. As a result, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

 **j.** **Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Class.**

55. Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation of the Plan as it relates to the EFH Debtors and the EFIH Debtors under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code. Thus, although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan as it relates to the EFH Debtors and the EFIH Debtors is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and the Qualified Accepting Classes, if applicable, and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below. As a result, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of section 1129(b).

 **k.** **Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

56. The treatment of EFIH First Lien DIP Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims under Article II of the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

l.     **Section 1129(a)(10)—Acceptance by at Least One Impaired Class.**

57.    As set forth in the EFH Voting Report, the following Impaired Classes of Claims against the EFH Debtors and the EFIH Debtors that are entitled to vote on the Plan have voted to accept the Plan:  Classes A4, A5, A6, A7, A8, A9, A10, A11, A12, B5, and B6.  As such, there is at least one Class of Claims that is Impaired under the Plan and has accepted the Plan as it relates to the EFH Debtors and the EFIH Debtors, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code).  Accordingly, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

m.     **Section 1129(a)(11)—Feasibility of the Plan.**

58.    The Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at or before the EFH Confirmation Hearing:  (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan as it relates to the EFH Debtors and the EFIH Debtors is feasible and Confirmation of the Plan as it relates to the EFH Debtors and the EFIH Debtors is not likely to be followed by liquidation or the need for further financial reorganization; and (d) establishes that the EFH Debtors and the EFIH Debtors will have sufficient funds available to meet their obligations under the Plan—including sufficient amounts of Cash to reasonably ensure payment of, among other Allowed Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims Against the EFH Debtors, Allowed Professional Fee Claims, and other expenses in accordance with the terms of the Plan and

section 507(a) of the Bankruptcy Code. Accordingly, the Plan as it relates to the EFH Debtors

and the EFIH Debtors satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**n.     Section 1129(a)(12)—Payment of Statutory Fees.**

59.     Article XII.C of the Plan as it relates to the EFH Debtors and the EFIH Debtors

provides that all fees payable pursuant to section 1930(a) of the Judicial Code, as determined by

the Court at the EFH Confirmation Hearing in accordance with section 1128 of the Bankruptcy

Code, will be paid by the applicable Debtor (on the EFH Effective Date) or each of the

applicable Reorganized EFH Debtors and Reorganized EFIH Debtors, or the Disbursing Agent

on behalf of each of the applicable Reorganized EFH Debtors and Reorganized EFIH Debtors,

(after the EFH Effective Date) for each quarter (including any fraction of a quarter) until the

Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. Accordingly, the

Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of

section 1129(a)(12) of the Bankruptcy Code.

**o.     Section 1129(a)(13)—Retiree Benefits.**

60.     Pursuant to section 1129(a)(13) of the Bankruptcy Code, and as provided in

Article IV.P of the Plan and subject to the terms therein, the Reorganized EFH Debtors and the

Reorganized EFIH Debtors, as applicable, will continue to pay all obligations on account of

retiree benefits (as such term is used in section 1114 of the Bankruptcy Code) on and after the

EFH Effective Date in accordance with applicable law. As a result, the Plan as it relates to the

EFH Debtors and the EFIH Debtors satisfies the requirements of section 1129(a)(13) of the

Bankruptcy Code.

61.     Further, the EFH Non-Qualified Benefit Plans shall be terminated on or before the

EFH Effective Date, and any Allowed Claims arising from the termination of such EFH

Non-Qualified Benefit Plans shall be treated in accordance with Article III.B.8 of the Plan in a manner consistent with Internal Revenue Code Section 409A and the regulations promulgated thereunder. That certain split-dollar life insurance plan, amended and restated as of May 20, 2005, and as may be amended, modified, or restated from time to time (the "EFH Split-Dollar Plan"), shall be terminated on or before the EFH Effective Date, and any amounts that, under the terms of the EFH Spilt-Dollar Plan, would be payable to or recouped by, EFH on account of such termination shall be paid to the EFH Debtors or Reorganized EFH, as applicable, based on the date of termination.

### p.    Section 1129(a)(14), (15), and (16)—Domestic Support Obligations, Individuals, and Nonprofit Corporations

62.    The EFH Debtors and the EFIH Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations. Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Plan as it relates to the EFH Debtors and the EFIH Debtors.

### q.    Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Class.

63.    Notwithstanding the fact that the Deemed Rejecting Classes and the Qualified Accepting Classes, as applicable, have not accepted the Plan as it relates to the EFH Debtors and the EFIH Debtors, the Plan as it relates to the EFH Debtors and the EFIH Debtors may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because the Plan as it relates to the EFH Debtors and the EFIH Debtors does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes, the Qualified Accepting Classes, as applicable, and any Voting Class that did not vote to accept the Plan. As a result, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of section 1129(b) of the

Bankruptcy Code.  Thus, the Plan as it relates to the EFH Debtors and the EFIH Debtors may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied.  After entry of the EFH Confirmation Order and upon the occurrence of the EFH Effective Date, the Plan as it relates to the EFH Debtors and the EFIH Debtors shall be binding upon the members of the Qualified Accepting Classes, as applicable, and the Deemed Rejecting Classes.

64.    The Plan satisfies section 1129(b) under the Bankruptcy Code.  The EFIH Claims Reserve shall be established on the EFH Effective Date, only if the Settlement Approval Order is not entered as of the Effective Date, and on the terms set forth in paragraphs 127-129.  The determination of the size, duration, and amount of the EFIH Claims Reserve pursuant to the Reserve Order (and, if applicable, any subsequent Reserve Orders, if any) shall not impede the EFH Effective Date, whether made before, on, or after such EFH Effective Date, as set forth in paragraph 130 below.

r.    **Section 1129(c)—Only One Plan.**

65.    Other than the Plan (including previous versions thereof), no plan has been filed in the Chapter 11 Cases, except for plans that have been previously withdrawn.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

s.    **Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act.**

66.    No Governmental Unit has requested that the Court refuse to confirm the Plan as it relates to the EFH Debtors and the EFIH Debtors on the grounds that the principal purpose of the Plan as it relates to such Debtors is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan as it relates to the EFH Debtors and the EFIH Debtors is not such avoidance.  Accordingly, the Plan

as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements of section 1129(d) of the Bankruptcy Code.

      **t.**      **Section 1129(e)—Not Small Business Cases.**

      67.      The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

      **u.**      **Satisfaction of Confirmation Requirements.**

      68.      Based upon the foregoing, the Plan as it relates to the EFH Debtors and the EFIH Debtors satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

      **v.**      **Good Faith.**

      69.      The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders. The Plan as it relates to the EFH Debtors and the EFIH Debtors accomplishes this goal. Accordingly, the Debtors, the Reorganized EFH Debtors, and the Reorganized EFIH Debtors, as appropriate and applicable, have been, are, and will continue acting in good faith if they proceed to: (a) consummate the Plan as it relates to the EFH Debtors and the EFIH Debtors (including consummation of the Merger Agreement) and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this EFH Confirmation Order. Therefore, the Plan as it relates to the EFH Debtors and the EFIH Debtors has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

RLF1 16988573v.1

**w.    Conditions to EFH Effective Date.**

70.    The Plan as it relates to the EFH Debtors and the EFIH Debtors shall not become effective unless and until the conditions set forth in Article IX.D of the Plan have been satisfied or waived pursuant to Article IX.E of the Plan.

**x.    Implementation.**

71.    All documents and agreements necessary to implement the Plan as it relates to the EFH Debtors and the EFIH Debtors, including the Merger Agreement and those contained or summarized in the EFH Plan Supplement (including the Tax Matters Agreement, the Separation Agreement, and the Transition Services Agreement, which, for the avoidance of doubt, were approved with respect to the EFH Debtors and the EFIH Debtors pursuant to the TCEH Confirmation Order), and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The Plan Sponsor is authorized and the Debtors are authorized and directed to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby, in all cases consistent with the terms of the Plan as it relates to the EFH Debtors and the EFIH Debtors and the Merger Agreement.

72.    The terms of the Plan as it relates to the EFH Debtors and the EFIH Debtors, including the EFH Plan Supplement and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, or executed or to be executed in connection with the transactions contemplated by the Plan as it relates to the EFH Debtors and the EFIH Debtors, (including the Tax Matters Agreement, the Separation Agreement, and the Transition Services

Agreement, which, for the avoidance of doubt, were approved with respect to the EFH Debtors and the EFIH Debtors pursuant to the TCEH Confirmation Order), and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications are incorporated by reference, and approved in all respects, and constitute an integral part of this EFH Confirmation Order.

y.    **Vesting of Assets.**

73.    Except as otherwise provided in the Plan as it relates to the EFH Debtors and the EFIH Debtors, on the EFH Effective Date, all property in each EFH Debtor Estate and EFIH Debtor Estate, all Causes of Action, and all property acquired by each EFH Debtor and EFIH Debtor pursuant to the Plan shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, Interests, or other encumbrances.  Except as otherwise provided in the Plan as it relates to the EFH Debtors and the EFIH Debtors, on and after the EFH Effective Date, the EFH Plan Administrator Board, each of the Reorganized EFH Debtors, the Reorganized EFIH Debtors, and, as applicable, the Makewhole Litigation Oversight Committee may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

z.    **Retention of Jurisdiction.**

74.    The Court properly retains jurisdiction over the matters set forth in Article XI and other applicable provisions of the Plan.

## II. ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

75.    This EFH Confirmation Order confirms the Plan as it relates to the EFH Debtors and the EFIH Debtors and is effective as of the date hereof.

76.    This EFH Confirmation Order approves the EFH Plan Supplement, including the documents contained therein that may be amended through and including the EFH Effective Date in accordance with and as permitted by the Plan.

77.    All Holders of Claims and Interests in Classes A4, A5, A6, A7, A8, A9, A10, A11, A12, B5, and B6 that voted to accept the Plan are conclusively presumed to have accepted the Plan as modified.

78.    The Plan (including the EFH Plan Supplement and all documents or agreements included therein) as it relates to the EFH Debtors and the EFIH Debtors and this EFH Confirmation Order will be effective and binding on all parties in interest, including: (a) the Debtors; (b) the TCEH Committee; (c) the EFH/EFIH Committee; (d) the Original Plan Sponsors; (e) the Plan Sponsor; and (f) all Holders of Claims and Interests.

79.    The failure to include or refer to any particular article, section, or provision of the Plan as it relates to the EFH Debtors and the EFIH Debtors, the EFH Plan Supplement, or any related documents, agreements, or exhibits does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan as it relates to the EFH Debtors and the EFIH Debtors, the EFH Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

RLF1 16988573v.1

## A.    Objections.

80.    To the extent that any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled prior to entry of this EFH Confirmation Order, are not cured or resolved by the relief granted in this EFH Confirmation Order, or have not been otherwise resolved as stated by the Debtors on the record of the EFH Confirmation Hearing, all such objections to the EFH Confirmation Order are overruled.

## B.    Findings of Fact and Conclusions of Law.

81.    The findings of fact and the conclusions of law set forth in this EFH Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the EFH Confirmation Hearing in relation to EFH Confirmation, including the EFH Confirmation Ruling, are hereby incorporated into this EFH Confirmation Order.  In addition, all findings of fact and conclusions of law set forth in the *Order Granting The Motion of Energy Future Holdings Corp.,* et al., *to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 7243] are incorporated into this EFH Confirmation Order.  To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such. To the extent any finding of fact or conclusion of law set forth in this EFH Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the EFH Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

RLF1 16988573v.1

C.    **The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**

82.    The following releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan are hereby approved and authorized in their entirety as they relate to the EFH Debtors and the EFIH Debtors:

a.    **Releases by the Debtors.**

**In addition to any release provided in the Settlement Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Claims and Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, or the Disinterested Directors Settlement, as well as all other Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in--or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the Master Separation Agreement dated December 12, 2001, the TCEH Credit Agreement, the TCEH First Lien Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), the TCEH First Lien Intercreditor Agreement, the Liability Management Program, the Tax Sharing Agreements, the 2007 Acquisition, the Management Agreement, the 2009 amendment to the TCEH Credit Agreement, the 2011 Amend and Extend Transactions, the 2005 Oncor Transfer, the 2013 Revolver Extension, the Luminant Makewhole Settlement, the Tax and Interest Makewhole Agreements, the TCEH Intercompany Notes, the Shared Services, any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or Filing of the Terminated Restructuring Support Agreement, the Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Plan Sponsor Plan Support Agreement, the EFIH Settlement Agreement, the EFH/EFIH Committee Settlement, the EFIH First Lien Principal Settlement, the Original Confirmed Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered**

41

into in connection with the Plan Support Agreement, the Plan Sponsor Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the EFIH Settlement Agreement, the PIK Settlement and any direction taken by the EFIH Unsecured Notes Trustee in connection therewith, the EFH/EFIH Committee Settlement, the Terminated Restructuring Support Agreement, the Disclosure Statement(s), the Plan, the Transaction Agreements, the DIP Facilities, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Notwithstanding anything to the contrary in the foregoing, and for the avoidance of doubt, the TCEH Settlement Claim shall be treated, released, and discharged on the EFH Effective Date. Notwithstanding anything to the contrary in the foregoing, the claims and Causes of Action set forth in Section 6.12 of the Parent Disclosure Letter delivered in connection with the Merger Agreement shall not be released; *provided, however,* that such Claims and Causes of Action shall be subject to treatment pursuant to the Plan and shall be discharged as set forth in Article VIII.A hereof. For the avoidance of doubt, (i) the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, and Reorganized EFH Shared Services Debtors shall provide the release set forth in this Article VIII.C as of the TCEH Effective Date; and (ii) the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, and Reorganized EFIH Debtors shall provide the release set forth in this Article VIII.C as of the EFH Effective Date; *provided* that any and all Intercompany Claims (other than the TCEH Settlement Claim) held by or held against the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties, shall be released as of the TCEH Effective Date.

b. Releases by Holders of Claims and Interests.

Except as otherwise provided in the Plan, as of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Claims and Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, or the Disinterested Directors Settlement, as well as all other Claims and Causes of Action, whether known or unknown, including any derivative claims,

asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the Master Separation Agreement dated December 12, 2001, the TCEH Credit Agreement, the TCEH First Lien Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), the TCEH First Lien Intercreditor Agreement, the Liability Management Program, the Tax Sharing Agreements, the 2007 Acquisition, the Management Agreement, the 2009 amendment to the TCEH Credit Agreement, the 2011 Amend and Extend Transactions, the 2005 Oncor Transfer, the 2013 Revolver Extension, the Luminant Makewhole Settlement, the Tax and Interest Makewhole Agreements, the TCEH Intercompany Notes, the Shared Services, any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or Filing of the Terminated Restructuring Support Agreement, the Plan Support Agreement, the Plan Sponsor Plan Support Agreement, the EFIH Settlement Agreement, the Unsecured Creditor Plan Support Agreement, the EFH/EFIH Committee Settlement, the EFIH First Lien Principal Settlement, the Original Confirmed Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the Plan Sponsor Plan Support Agreement, the EFIH Unsecured Creditor Support Agreement, the EFH/EFIH Committee Settlement, the EFIH Settlement Agreement, the PIK Settlement and any direction taken by the EFIH Unsecured Notes Trustee in connection therewith the Terminated Restructuring Support Agreement, the Disclosure Statement(s), the Plan, the Transaction Agreements, the DIP Facilities, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor

Allocation Disputes, (ii) any post-Effective Date obligations of any party or Entity under the Plan, (iii) any Restructuring Transaction, (iv) any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (v) claims or Causes of Action asserted by any Holder of Allowed Class C3 Claims against one or more Holders of Allowed Class C3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, or (vi) the claims and Causes of Action set forth in Section 6.12 of the Parent Disclosure Letter delivered in connection with the Merger Agreement shall not be released; *provided, however*, that such Claims and Causes of Action set forth in Section 6.12 of the Parent Disclosure Letter delivered in connection with the Merger Agreement shall be subject to treatment pursuant to the Plan and shall be discharged as set forth in Article VIII.A hereof.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any claims or Causes of Action against one or more of NextEra and its current and former subsidiaries (the "Plan Sponsor Released Parties") relating to the pursuit of approval of the transactions contemplated in the Original Confirmed Plan (including, for the avoidance of doubt, claims or Causes of Action regarding the effect of the filing of Docket No. 7028 on approval of the transactions contemplated in the Original Confirmed Plan) or claims or Causes of Action that may be brought by one or more of the Plan Sponsor Released Parties against any party who brings a claim or Cause of Action against the Plan Sponsor Released Parties relating to the pursuit of approval of the transactions contemplated in the Original Confirmed Plan; *provided, however,* for the avoidance of doubt, that the releases set forth above shall apply to the Plan Sponsor Released Parties' current and former directors, managers, officers, individual equity holders (regardless of whether such interests are held directly or indirectly), attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.  Notwithstanding anything to the contrary in the foregoing, and for the avoidance of doubt, the TCEH Settlement Claim shall be treated, released, and discharged on the EFH Effective Date.  For the avoidance of doubt, (i) the Releasing Parties shall provide the release set forth in this Article VIII.D for all Claims and Causes of Action that relate to the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties, as of the TCEH Effective Date; and (ii) the Releasing Parties shall provide the release set forth in this Article VIII.D for all Claims and Causes of Action that relate to the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, or Reorganized EFIH Debtors as of the EFH Effective Date; *provided* that any and all Intercompany Claims (other than the TCEH Settlement Claim) held by or held against the TCEH Debtors, Reorganized TCEH Debtors, EFH

**Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties, shall be released as of the TCEH Effective Date.**

c.   **Exculpation.**

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Terminated Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Support Agreement, the Plan Sponsor Plan Support Agreement, the EFH/EFIH Committee Settlement, the Original Confirmed Plan, the Transaction Agreements, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Original Confirmed Plan, the Plan Support Agreement, the Plan Sponsor Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the EFIH Settlement Agreement, the EFH/EFIH Committee Settlement, the Transaction Agreements, or the DIP Facilities, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. For the avoidance of doubt, notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any (i) claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH**

45

First Lien Creditor Allocation Disputes, or (ii) claims or Causes of Action asserted by any Holder of Allowed Class C3 Claims against one or more Holders of Allowed Class C3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute. For the avoidance of doubt, (i) the Exculpated Parties that include or are related to the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, and Reorganized EFH Shared Services Debtors shall receive the exculpation set forth in this Article VIII.E as of the TCEH Effective Date; and (ii) the Exculpated Parties that include or are related to the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, and Reorganized EFIH Debtors shall receive the exculpation set forth in this Article VIII.E as of the EFH Effective Date.

d.  **Injunction.**

In addition to any injunction provided in the Settlement Order, except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.C or Article VIII.D of the Plan, shall be discharged pursuant to Article VIII.A of the Plan, or are subject to exculpation pursuant to Article VIII.E of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, or the Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan, including those related to the PIK Settlement and any direction taken by the EFIH Unsecured Notes Trustee in connection therewith. For the avoidance of

doubt, notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin (a) the TCEH First Lien Creditor Allocation Disputes, or any claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, or (b) the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, or claims or Causes of Action asserted in the Marathon Delaware Action (in accordance with and as that term is defined in the *Stipulation and Consent Order Regarding Limited Objection of Marathon Asset Management, LP to Confirmation of Debtors' Fifth Amended Plan of Reorganization,* dated November 10, 2015 [Docket No. 6932]) by any Holder of Allowed Class C3 Claims against one or more Holders of Allowed Class C3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute. Notwithstanding anything to the contrary in the foregoing, the Plan shall not enjoin any party from pursuing the claims and Causes of Action set forth in Section 6.12 of the Parent Disclosure Letter delivered in connection with the Merger Agreement; *provided, however,* that such Claims and Causes of Action shall be subject to treatment pursuant to the Plan and shall be discharged as set forth in Article VIII.A hereof. Solely in the event the Settlement Approval Order is not entered (or the EFIH Settlement Agreement is otherwise terminated), the Plan shall not enjoin or otherwise prevent Holders of the EFIH First Lien Notes, Holders of EFIH Second Lien Notes, the EFIH First Lien Notes Trustee, or the EFIH Second Lien Notes Trustee from prosecuting any appeal of any order with respect to any Makewhole Claims or any other Claims held by such parties; *provided, however,* that (x) the liens securing the collateral of the EFIH First Lien Notes and EFIH Second Lien Notes will be released on the EFH Effective Date, (y) the EFH Debtors, the EFIH Debtors, the EFIH First Lien Notes Trustee, the Holders of EFIH First Lien Notes, the Holders of EFIH Second Lien Notes, and the EFIH Second Lien Notes Trustee reserve all rights with respect to the rights, claims, and defenses of each of the EFH Debtors, EFIH Debtors, the EFIH First Lien Notes Trustee, the Holders of the EFIH First Lien Notes, the Holders of EFIH Second Lien Notes, and the EFIH Second Lien Notes Trustee with regard to the litigation over the allowance of any Makewhole Claims or any other Claims asserted by the EFIH First Lien Notes Trustee, the Holders of the EFIH First Lien Notes, the EFIH Second Lien Notes Trustee, and the Holders of the EFIH Second Lien Notes, and (z) the EFIH First Lien Notes Trustee and EFIH Second Lien Notes Trustee shall receive the Replacement EFIH First Lien and the Replacement EFIH Second Lien, respectively, on the EFIH Claims reserve, as set forth in Article III.B.19 and Article III.B.20 of this Plan and shall (together with Holders of

**the EFIH First Lien Notes and the Holders of EFIH Second Lien Notes) otherwise receive all protections and treatments set forth in the Plan.**

The foregoing releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan were approved and authorized in their entirety as they relate to the TCEH Debtors and the EFH Shared Services Debtors pursuant to the TCEH Confirmation Order and effective as of the TCEH Effective Date. For the avoidance of doubt, if the Settlement Approval Order is not entered, none of the Holders of EFIH First Lien Note Claims, the EFIH First Lien Notes Trustee, Holders of EFIH Second Lien Note Claims, or the EFIH Second Lien Notes Trustee shall be a Released Party or Releasing Party except as otherwise agreed to by such Trustee or Holder) and accordingly, for the avoidance of doubt, shall not be subject to the foregoing release and injunction of Claims or Interests released pursuant to Article VIII.D. of the Plan.

**D.      Federal Communications Commission.**

83.      No provision in the Plan or this EFH Confirmation Order relieves the Reorganized EFH Debtors or the Reorganized EFIH Debtors from their obligations to comply with the Communications Act of 1934, as amended, and the rules, regulations, and orders promulgated thereunder by the Federal Communications Commission ("FCC"). No transfer of control to the Reorganized EFH Debtors or the Reorganized EFIH Debtors of any federal license or authorization issued by the FCC shall take place prior to the issuance of FCC regulatory approval for such transfer of control pursuant to applicable FCC regulations. The FCC's rights and powers to take any action pursuant to its regulatory authority over the transfer of control to the Reorganized EFH Debtors or the Reorganized EFIH Debtors, including imposing any regulatory conditions on such transfer, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority.

## E.    Post-EFH Confirmation Notices, Professional Compensation, and Bar Dates.

84.    In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven Business Days after the EFH Effective Date, the Reorganized EFH Debtors must cause notice of EFH Confirmation and occurrence of the EFH Effective Date (the "Notice of EFH Confirmation") to be served by United States mail, first-class postage prepaid, by hand, or by overnight courier service to all parties served with the EFH Confirmation Hearing Notice; *provided, however,* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed an EFH Confirmation Hearing Notice but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.

85.    To supplement the notice procedures described in the preceding sentence, no later than five Business Days after the EFH Effective Date, the Reorganized EFH Debtors must cause the Notice of EFH Confirmation, modified for publication, to be published on one occasion in *The Wall Street Journal, USA Today, The Dallas Morning News, Houston Chronicle, Corpus Christi Caller-Times, Fort Worth Star-Telegram,* and *Waco Tribune-Herald.* Mailing and publication of the Notice of EFH Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). No further notice is necessary. All expenses associated with the Notice of EFH Confirmation shall be paid by the EFH Plan Administrator Board from the EFH/EFIH Distribution Account.

86.    The Notice of EFH Confirmation will have the effect of an order of the Court, will constitute sufficient notice of the entry of the EFH Confirmation Order to filing and

recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

**F.      Notice of Subsequent Pleadings.**

87.      Except as otherwise provided in the Plan as it relates to the EFH Debtors and the EFIH Debtors or in this EFH Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the EFH Effective Date will be limited to the following parties: (a) the U.S. Trustee; (b) counsel to the TCEH First Lien Ad Hoc Committee; (c) counsel to the Plan Sponsor; (d) counsel to the Makewhole Litigation Oversight Committee; (e) counsel to the EFH Plan Administrator Board, and (f) any party known to be directly affected by the relief sought by such pleadings.

**G.      Retention of Jurisdiction.**

88.      This Court retains jurisdiction over the matters set forth in Article XI and other applicable provisions of the Plan as it relates to the EFH Debtors and the EFIH Debtors.

**H.      Reports.**

89.      After the EFH Effective Date, the EFH Debtors and the EFIH Debtors have no obligation to file with the Court or serve on any parties reports that the EFH Debtors and the EFIH Debtors were obligated to file under the Bankruptcy Code or a Court order, including monthly operating reports (even for those periods for which a monthly operating report was not filed prior to the EFH Effective Date), ordinary course professional reports, and monthly or quarterly reports for Professionals; *provided, however,* that the EFH Debtors and the EFIH Debtors will comply with the U.S. Trustee's quarterly reporting requirements.  Through the EFH Effective Date, the EFH Debtors and the EFIH Debtors will file such reports as are required under the Local Bankruptcy Rules.

RLF1 16988573v.1

**I.   Effectiveness of All Actions.**

90.   Except as set forth in the Plan as it relates to the EFH Debtors and the EFIH Debtors, all actions authorized to be taken pursuant to the Plan as it relates to the EFH Debtors and the EFIH Debtors shall be effective on, prior to, or after the EFH Effective Date pursuant to the EFH Confirmation Order, without further application to, or order of the Court, or further action by the Debtors and/or the Reorganized EFH Debtors and their respective directors, officers, members, or stockholders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

**J.   Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.**

91.   This EFH Confirmation Order together with the order approving the Merger Agreement and the Plan Sponsor Plan Support Agreement shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan as it relates to the EFH Debtors and the EFIH Debtors and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan as it relates to the EFH Debtors and the EFIH Debtors, the EFH Plan Supplement, the EFH Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**K.   Plan Implementation Authorization.**

92.   Subject to the consent of the Plan Sponsor, the EFH Plan Administrator Board, the EFH Debtors and the EFIH Debtors, or the Reorganized EFH Debtors and the Reorganized EFIH Debtors, as the case may be, and their respective directors, officers, members, agents, and attorneys, financial advisors, and investment bankers are authorized and empowered from and

RLF1 16988573v.1

after the date hereof to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document related to the Plan as it relates to the EFH Debtors and the EFIH Debtors, as the same may be modified, amended, and supplemented, and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan as it relates to the EFH Debtors and the EFIH Debtors in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan as it relates to the EFH Debtors and the EFIH Debtors, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Court. To the extent applicable, any or all such documents shall be accepted upon presentment by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law. Pursuant to section 303 of the General Corporation Law of the State of Delaware and any comparable provision of the business corporation laws of any other state, as applicable, no action of the EFH Debtors' or the EFIH Debtors' boards of directors or the boards of directors of the Reorganized EFH Debtors and the Reorganized EFIH Debtors (or similar governing body, or their equity owners or managing member, as applicable) will be required to authorize such Debtors or the Reorganized EFH Debtors and the Reorganized EFIH Debtors, as applicable, to enter into, execute and deliver, adopt or amend, as the case may be, any such contract, instrument, release, or other agreement or document related to the Plan as it relates to the EFH Debtors and the EFIH Debtors, and following the EFH Effective Date, each of the documents related to the Plan as it relates to the EFH Debtors and the EFIH Debtors will be a legal, valid, and binding obligation of such Debtors or the Reorganized EFH Debtors and the Reorganized EFIH Debtors, as applicable, enforceable against such Debtors and the

Reorganized EFH Debtors and the Reorganized EFIH Debtors in accordance with the respective terms thereof.

**L.    Binding Effect.**

93.    On the date of and after entry of this EFH Confirmation Order, subject to the occurrence of the EFH Effective Date, and subject to the provisions of this EFH Confirmation Order, the Plan as it relates to the EFH Debtors and the EFIH Debtors, and the EFH Plan Supplement shall bind the Debtors, their estates, any party seeking to act on behalf of, or in respect of, the Debtors or the Debtors' estates, and any Holder of a Claim against or Interest in the EFH Debtors or the EFIH Debtors and such Holder's respective successor and assigns, regardless of whether:  (a) such Holder's Claim or Interest is Impaired under the Plan as it relates to the EFH Debtors and the EFIH Debtors; (b) such Holder has accepted the Plan as it relates to the EFH Debtors and the EFIH Debtors; (c) such Holder failed to vote to accept or reject the Plan or voted to reject the Plan as it relates to the EFH Debtors and the EFIH Debtors; (d) such Holder is entitled to a distribution under the Plan as it relates to the EFH Debtors and the EFIH Debtors; (e) such Holder will receive or retain any property or interests in property under the Plan as it relates to the EFH Debtors and the EFIH Debtors; or (f) such Holder has filed a Proof of Claim in the Chapter 11 Cases.  For the avoidance of doubt, the Tax Matters Agreement, the Separation Agreement, and the Transition Services Agreement became binding upon the Debtors, their estates, and any party seeking to act on behalf of, or in respect of, the Debtors or the Debtors' estates on the TCEH Effective Date pursuant to the TCEH Confirmation Order.  The Plan as it relates to the EFH Debtors and the EFIH Debtors and its related documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code,

the Plan as it relates to the EFH Debtors and the EFIH Debtors and its related documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

**M.  Directors and Officers of the Reorganized EFH Debtors and the Reorganized EFIH Debtors.**

94.    The Reorganized EFH Debtors' and the Reorganized EFIH Debtors' initial directors and officers, to the extent known, have been disclosed prior to the EFH Confirmation Hearing.    To the extent that any director or officer has not yet been determined, such determination will be made in accordance with the New Organizational Documents and such appointment is hereby approved.

**N.  Release of Liens.**

95.    Except as otherwise specifically provided in the Plan as it relates to the EFH Debtors and the EFIH Debtors, on the EFH Effective Date, and except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 (subject to the consent of the Plan Sponsor), III.B.17 (subject to the consent of the Plan Sponsor), III.B.27, or III.B.37 of the Plan as it relates to the EFH Debtors and the EFIH Debtors (and, with respect to any other Allowed Other Secured Claims Against the EFH Debtors asserted by the Taxing Units which the EFH Debtors shall Reinstate on the EFH Effective Date until such Allowed Other Secured Claims are satisfied in the full Allowed amount), all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates of the EFH Debtors or the EFIH Debtors shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors.    Notwithstanding anything to the contrary in the Plan or this EFH

Confirmation Order, the Liens on the collateral securing the EFIH First Lien Note Claims and the EFIH Second Lien Note Claims, as applicable, will be released on the EFH Effective Date; *provided, however*, that the EFIH First Lien Notes Trustee and EFIH Second Lien Notes Trustee will be granted Liens on the EFIH Claims Reserve, as described in Article III.B.19 and Article III.B.20 of the Plan as it relates to the EFH Debtors and the EFIH Debtors, or as otherwise set forth in the Reserve Order, or, in the alternative, the Settlement Approval Order, as applicable; *provided, further, however*, that such Liens on the EFIH Claims Reserve shall be released at such time when all Claims based upon or under the EFIH First Lien Notes (including for the avoidance of doubt, any Claims based upon or under the EFIH Collateral Trust Agreement) and all Claims based upon or under the EFIH First Lien Notes and EFIH Second Lien Notes have been (1) Allowed (whether before, on, or after the EFH Effective Date) and paid in full (to the extent Allowed) including all interest (to the extent Allowed), in Cash (2) disallowed by Final Order, or (3) paid, in full, in Cash to the EFIH First Lien Notes Trustee or EFIH Second Lien Notes Trustee, as applicable, pursuant to the Settlement Approval Order; *provided, further, however*, that upon release of such Liens on the EFIH Claims Reserve set forth in this sentence, the funds of the EFIH Claims Reserve shall revert to the EFH/EFIH Distribution Account; *provided, further, however*, that, except as otherwise set forth in the EFH Confirmation Order or the Reserve Order, nothing herein shall prevent the EFH Plan Administrator Board, the Makewhole Litigation Oversight Committee, or the EFIH Unsecured Notes Trustee from seeking entry of a Subsequent Reserve Order (as defined in paragraph 128 below) authorizing, and the Court granting, reductions of, and distributions from, the EFIH Claims Reserve to the extent permitted, and in accordance with, paragraph 128 set forth below.  For the avoidance of doubt, solely for purposes of determining whether any such Claims are Secured Claims entitled to

treatment as Class B3 or Class B4 Claims (rather than Unsecured Claims entitled to treatment as Class B6 Claims), the secured status of such Claims shall be determined as if such Liens had not been released on the EFH Effective Date and remained in effect to the same extent they did immediately before the EFH Effective Date.

**O.    Injunctions and Automatic Stay.**

96.    Unless otherwise provided in the Plan as it relates to the EFH Debtors and the EFIH Debtors or in this EFH Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court entered as of the EFH Confirmation Date (excluding any injunctions or stays contained in the Plan or the EFH Confirmation Order) shall remain in full force and effect through and including the EFH Effective Date.  All injunctions or stays contained in the Plan as it relates to the EFH Debtors and the EFIH Debtors or the EFH Confirmation Order shall remain in full force and effect in accordance with their terms.

**P.    Cancelation of Existing Securities and Agreements.**

97.    Except as otherwise provided in the Plan (including Article III.B.19 and III.B.20), on and after the EFH Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims or Interests, including Other Secured Claims Against the EFH Debtors, Other Priority Claims Against the EFH Debtors, Legacy General Unsecured Claims Against the EFH Debtors, EFH Legacy Note Claims, EFH Unexchanged Note Claims, EFH LBO Note Primary Claims, EFH Swap Claims, EFH Non-Qualified Benefit Claims, General Unsecured Claims Against EFH Corp., General Unsecured Claims Against the EFH Debtors Other than EFH Corp., Tex-La Guaranty Claims, TCEH Settlement Claim, EFH Debtor Intercompany Claims, Non-EFH Debtor Intercompany

Claims, Interests in EFH Debtors Other than EFH Corp., Interests in EFH Corp., Other Secured

Claims Against the EFIH Debtors, Other Priority Claims Against the EFIH Debtors, EFIH First

Lien Note Claims, EFIH Second Lien Note Claims, EFIH LBO Note Guaranty Claims, General

Unsecured Claims Against the EFIH Debtors, EFIH Debtor Intercompany Claims, Non-EFIH

Debtor Intercompany Claims, and Interests in EFIH Finance, shall be deemed canceled,

surrendered, and discharged without any need for further action or approval of the Bankruptcy

Court or a Holder to take further action with respect to any note(s) or security and the obligations

of the Debtors, the EFH Plan Administrator Board, or Reorganized EFH Debtors or Reorganized

EFIH Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied

in full and discharged, and the Indenture Trustees, and the EFIH First Lien DIP Agent shall be

released from all duties thereunder; *provided, however,* that (a) interests in the following debtors:

EFIH Debtors, LSGT Gas Company LLC, EECI, Inc., EEC Holding, Inc., and LSGT SACROC,

Inc. shall be Reinstated; and (b) notwithstanding Confirmation or Consummation, any such

indenture or agreement that governs the rights of the Holder of a Claim shall, subject to the terms

of the Plan and, as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, the

EFIH Settlement Agreement, to the extent such has been approved, continue in effect solely for

purposes of: (1) allowing Holders of Allowed Claims to receive distributions under the Plan and,

as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, under the EFIH

Settlement Agreement attached hereto as Exhibit B and the Plan; (2) allowing the Indenture

Trustees and the EFIH First Lien DIP Agent to make the distributions in accordance with the

Plan (if any), as applicable, and, as to the EFIH First Lien Note Claims and EFIH Second Lien

Note Claims under the EFIH Settlement Agreement attached hereto as Exhibit B and the Plan;

(3) preserving any rights of the EFIH First Lien DIP Agent, or the Indenture Trustees to payment

of fees, expenses, and indemnification obligations as against any money or property distributable to the relevant Holders under the Plan as it relates to the EFH Debtors and the EFIH Debtors, the EFIH First Lien DIP Agreement, including any rights to priority of payment and/or to exercise charging liens and, as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, under the EFIH Settlement Agreement attached hereto as Exhibit B and the Plan; (4) allowing the Indenture Trustees and EFIH First Lien DIP Agents to enforce any obligations owed to each of them under the Plan as it relates to the EFH Debtors and the EFIH Debtors (including any Indenture Trustee's pursuit of, solely in the event the Court does not enter the Settlement Approval Order (as defined in **Exhibit B**), as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, (x) the allowance and payment, pursuant to the Plan and this EFH Confirmation Order, of Makewhole Claims or any other Claims, and with respect to which the EFH Debtors and EFIH Debtors reserve all rights consistent with the EFIH Unsecured Creditor Plan Support Agreement and (y) the EFIH Intercreditor Litigation or any other pending proceeding); and (5) allowing the Indenture Trustees and EFIH First Lien DIP Agent to appear in the Chapter 11 Cases or any proceeding in which they are or may become a party; *provided, further, however*, that, without prejudice to the right of any Holder of an Allowed Claim to the rights of such party to receive distributions under the Plan, or the EFIH Settlement Agreement, the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the EFH Confirmation Order, or the Plan as it relates to the EFH Debtors and the EFIH Debtors, or result in any expense or liability to the Debtors, the EFH Plan Administrator Board, or Reorganized EFH Debtors or Reorganized EFIH Debtors, as applicable. Notwithstanding anything to the contrary in the foregoing, (x) the cancelation and discharge of the, collateral trust agreement by and between EFIH, Delaware Trust Company, as successor

collateral trustee to BNY, and other Secured Debt Representatives from time to time party thereto dated as of November 16, 2009 (the "EFIH Collateral Trust Agreement"), the EFIH First Lien Note Indentures, and the EFIH Second Lien Note Indenture, and all other notes, instruments, certificates, agreements, mortgages, security documents, and other documents evidencing any Claims or rights under the EFIH First Lien Notes or the EFIH Second Lien Notes shall be limited solely to the Debtors and the Reorganized Debtors and shall not affect the rights of the EFIH First Lien Notes Trustee or Holders of the EFIH First Lien Note Claims vis-à-vis any other party, and vice versa; (y) for the avoidance of doubt, the EFIH First Lien Note Indentures and the EFIH Second Lien Notes Indentures, the EFIH Collateral Trust Agreement, and all other notes, instruments, certificates, agreements, mortgages, security documents, and other documents evidencing any Claims or rights under the EFIH First Lien Notes or the EFIH Second Lien Notes shall remain in effect (and the EFIH Lien Notes Trustee and the EFIH Second Lien Notes Trustee shall remain as trustee, and registrar) for the purposes set forth in (1)-(5) of this provision, as applicable, and (z) the EFIH First Lien Note Indentures and the EFIH Second Lien Note Indenture, the EFIH Collateral Trust Agreement, and all other notes, instruments, certificates, agreements, mortgages, security documents, and other documents evidencing any Claim or rights under the EFIH First Lien Notes or the EFIH Second Lien Notes shall remain in place from and after the Effective Date, subject to entry of the Settlement Approval Order, for purposes of establishing the Claims against the EFIH Claims Reserve but, for the avoidance of doubt, not including Reorganized EFIH, associated with or under the EFIH First Lien Note Claims and the EFIH Second Lien Note Claims (including the right of the EFIH First Lien Notes Trustee and Holders of EFIH First Lien Notes and of the EFIH Second Lien Notes Trustee and Holders of EFIH Second Notes to seek and, if successful, receive interest at

the contractual rates accruing on all of their Allowed Claims, including Additional Interest and interest on interest until those Claims are paid in full and to receive their fees, costs and indemnification), until all EFIH First Lien Note Claims and all EFIH Second Lien Note Claims have either been Allowed by Final Order and been paid in full, in Cash, by the EFH Plan Administrator Board (with all applicable contractual interest), or have been disallowed by Final Order; *provided, however*, for the avoidance of doubt, the foregoing is intended solely to allow the EFIH First Lien Notes Trustee and the EFIH Second Lien Notes Trustee and the Holders of the EFIH First Lien Notes and the Holders of the EFIH Second Lien Notes to assert Claims that they may be entitled to under the foregoing documentation (including the EFIH First Lien Notes Indenture, the EFIH Second Lien Notes Indenture, the EFIH Collateral Trust Agreement, and the other foregoing notes, instruments, certificates, agreements, mortgages, security documents and other documents), and nothing herein shall prejudice any party from arguing that, notwithstanding the foregoing, the terms of the Plan, and the Bankruptcy Code, supersede the terms of such documentation for purposes of determining what constitutes an Allowed Claim, including, without limitation, with respect to post-effective date interest and fee entitlements.

**Q.    Cooperation by the DTC.**

98.    The Depository Trust Company ("DTC"), and any participants and intermediaries, shall fully cooperate and facilitate distributions, as applicable, pursuant to the Plan, including to Holders of Claims in Classes A4, A5, A6, and B5.

**R.    Cooperation by the EFIH Unsecured Notes Trustee.**

99.    The EFIH Unsecured Notes Trustee is authorized to fully cooperate with the directives of the Holders of Claims against the EFIH Debtors under the EFIH Unsecured Notes.

S.    **Securities Law Exemption.**

100.    Pursuant to section 1145 of the Bankruptcy Code, the issuance of the Reorganized EFH Common Stock as contemplated by the Plan is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration before the offering, issuance, distribution, or sale of such securities. The Reorganized EFH Common Stock is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and is freely tradable and transferable by any initial recipient thereof that (i) at the time of transfer, is not an "affiliate" of the Reorganized EFH, Reorganized EFIH, the Plan Sponsor, or Merger Sub, as the case may be, as defined in Rule 144(a)(1) under the Securities Act and has not been such an "affiliate" within 90 days of such transfer, and (ii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

101.    Pursuant to section 1145 of the Bankruptcy Code, the issuance of the NextEra Common Stock in exchange for the Reorganized EFH Common Stock as contemplated by the Plan is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration before the offering, issuance, distribution, or sale of such securities because the Plan Sponsor is, for purposes of Section 1145, a successor to EFH Corp. under the Plan and such NextEra Common Stock is to be issued in exchange for claims against or interests in the EFH Debtors and the EFIH Debtors. The NextEra Common Stock is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and is freely tradable and transferable by any initial recipient thereof that (i) at the time of transfer, is not an "affiliate" as defined in Rule 144(a)(1) under the Securities Act of the Plan Sponsor and has not been such an "affiliate" within 90 days of such

transfer, and (ii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

102.    Should the Reorganized EFH Debtors or the Reorganized EFIH Debtors elect on or after the EFH Effective Date to reflect any ownership of any of the Reorganized EFH Common Stock and NextEra Common Stock through the facilities of the DTC, the Reorganized EFH Debtors and the Reorganized EFIH Debtors need not provide any further evidence other than the Plan or the EFH Confirmation Order with respect to the treatment of the Reorganized EFH Common Stock and NextEra Common Stock under applicable securities laws.

103.    The DTC shall be required to accept and conclusively rely upon the Plan and EFH Confirmation Order in lieu of a legal opinion regarding whether any of the Reorganized EFH Common Stock and NextEra Common Stock, as applicable, are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

104.    Notwithstanding anything to the contrary in the Plan, no entity (including, for the avoidance of doubt, the DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan as it relates to the EFH Debtors and EFIH Debtors, including, for the avoidance of doubt, whether the Reorganized EFH Common Stock and NextEra Common Stock are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

**T.**      **Section 1146 Exemption.**

105.    Pursuant to, and to the fullest extent permitted by, section 1146 of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with, the Plan as it relates to the EFH Debtors and the EFIH Debtors, including (1) the Restructuring Transactions; (2) the Reorganized EFH Common Stock (including the exchange for NextEra

Common Stock pursuant to and in accordance with the Merger Agreement and the Plan); (3) the NextEra Common Stock issued in connection with the Plan Sponsor Investment; (4) the assignment or surrender of any lease or sublease; and (5) the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan as it relates to the EFH Debtors and the EFIH Debtors, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan as it relates to the EFH Debtors and the EFIH Debtors, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the EFH Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

U.      **Professional Compensation and Reimbursement Claims.**

106.    Except as otherwise specifically provided in the Plan, from and after the EFH Effective Date, the EFH Plan Administrator Board shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Bankruptcy Court, pay in Cash from the EFH/EFIH Distribution Account the reasonable legal, professional, or other fees and expenses related to implementation of the Plan as it relates to the EFH Debtors and the EFIH Debtors, and consummation of the Plan as it relates to the EFH Debtors and the EFIH Debtors incurred on or after the EFH Effective Date by (i) the EFH Debtors or the EFIH Debtors or the Reorganized EFH Debtors and the Reorganized EFIH Debtors, in the manner prescribed by the allocation set forth in Article II.A.2(d) of the Plan and (ii) the EFH/EFIH Committee.

107.  Upon the EFH Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered to the EFH Plan Administrator Board, the Reorganized EFH Debtors, and the Reorganized EFIH Debtors after such date shall terminate, subject only to the procedures set forth in the Interim Compensation Order, and the EFH Administrator Board, the Reorganized EFH Debtors, and the Reorganized EFIH Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, the EFH Debtors, the EFIH Debtors, the EFH Plan Administrator Board, the Reorganized EFH Debtors, and the Reorganized EFIH Debtors (as applicable) are authorized to pay any and all professional fees as contemplated by and in accordance with the Plan as it relates to the EFH Debtors and the EFIH Debtors, and the EFIH First Lien Final DIP Order; *provided, however*, that, for the avoidance of doubt, the Reorganized EFH Debtors and the Reorganized EFIH Debtors shall not be liable or otherwise responsible for the payment of any Professional Fee Claims.

108.  Following the Fee Committee's receipt of a Fee Request, within reasonable time periods, to be determined either by the Fee Committee and the relevant professionals or by the Court:

- (i) the Fee Committee shall send a confidential letter to the applicable Requesting Party regarding the Fee Committee's initial report and recommendation with respect to the applicable Fee Request;

- (ii) (a) the Fee Committee shall file with the Court a final report and recommendation ("Fee Committee Recommendation") with respect to such Fee Request and (b) the U.S. Trustee shall file with the Court any objection or comments it may have with respect to such Fee Request ("U.S. Trustee Objection");

- (iii) the applicable Requesting Party may file with the Court a response ("Fee Response") to such Fee Committee Recommendation or U.S. Trustee Objection; and

- (iv) the Court shall consider each Fee Request at the next omnibus hearing or at a scheduled Fee Committee hearing on Retained Professional fee applications.

109.  No later than the later of the Effective Date and 10 days following the Court's ruling with respect to a Fee Request, the EFH Plan Administrator Board shall pay any unpaid amounts with respect to such Fee Request as ordered by the Court, or the Requesting Party shall disgorge to the applicable Reorganized Debtor such amounts ordered by the Court, as applicable.

110.  For the avoidance of doubt, the Requesting Parties and the Fee Requests shall not be required to comply with (a) the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or other orders in these Cases with respect to fee applications, including the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896], or (b) *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases*, 78 Fed. Reg. No 116, page 36248 (June 17, 2013). With respect to the payment of fees and expenses pursuant to Article IV.R. of the Plan asserted by the EFH Notes Trustee, the Court has found to have made, in accordance with sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code, a substantial contribution in these cases as set forth in the Confirmation Ruling, shall submit to the Debtors a short-form invoice setting forth such amounts and the period(s) during which such amounts were incurred. No later than the later of five business days after the Debtors' receipt of each such short-form invoice or the Effective Date, the Debtors shall pay to the applicable Requesting Party 80% of the requested fees and 100% of the requested expenses, which amounts shall be subject to disgorgement if and to the extent the Court determines that such requested fees and expenses are not reasonable.  Within 45 days of receipt of payment, the applicable Requesting Party shall submit full invoices and LEDES data (a "Fee Request") to the Debtors, the U.S. Trustee, and the Fee Committee appointed in these Chapter 11

Cases (the "Fee Committee") in LEDES format (or, in the absence thereof, such other format as is mutually agreed among the applicable Requesting Party, the Debtors, the U.S. Trustee, and the Fee Committee).

## V.     Nonseverability of Plan Provisions upon EFH Confirmation.

111.    Each term and provision of the Plan, solely as it relates to the EFH Debtors and the EFIH Debtors, including the EFH Plan Supplement and all exhibits and schedules thereto and all other documents filed in connection with the Plan, or executed or to be executed in connection with transactions contemplated by the Plan and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications are: (a) valid and enforceable pursuant to their terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' consent, as applicable; and (c) nonseverable and mutually dependent.

## W.     Waiver or Estoppel.

112.    Each Holder of a Claim or Interest in Classes A1 through A16 and Classes B1 through B10 shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan as it relates to the EFH Debtors and the EFIH Debtors, the EFH Disclosure Statement, or papers filed with the Court before the EFH Confirmation Date.

## X.     Authorization to Consummate.

113.    The Debtors are authorized to consummate the Plan as it relates to the EFH Debtors and the EFIH Debtors at any time after the entry of the EFH Confirmation Order subject

to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX.B and Article IX.D of the Plan. The substantial consummation of the Plan as it relates to the EFH Debtors and the EFIH Debtors, within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code, is deemed to occur on the first date, on or after the EFH Effective Date, on which any distributions are made in accordance with the terms of the Plan to Holders of any Allowed Claims against the EFH Debtors or the EFIH Debtors.

**Y.    Treatment of Executory Contracts and Unexpired Leases.**

114.    The assumption of the Executory Contracts and Unexpired Leases set forth on Exhibit B of the EFH Plan Supplement and the rejection of the Executory Contracts and Unexpired Leases set forth on Exhibit C of the EFH Plan Supplement, in each case subject to the Separation Agreement as applicable, are hereby authorized.

115.    Unless otherwise agreed, the EFH Debtors and the EFIH Debtors will not assume, cure, or otherwise treat any contract pursuant to this EFH Confirmation Order that is the subject of (a) an outstanding objection to a proposed assumption or cure amount (an "Assumption Objection") at the time of entry of this EFH Confirmation Order (if any); or (b) certain outstanding orders extending the deadline by which the Debtors may make a determination as to whether to assume or reject a lease (the "Deadline Extension Orders").[4]    All outstanding Assumption Objections will be heard at the omnibus hearing scheduled for March 28, 2017, at 10:00 a.m. (prevailing Eastern Time), or another hearing that is convenient to the Court. Unless otherwise agreed, the Debtors will not assume any contract that is the subject of an Assumption

---

[4]    The Deadline Extension Orders comprise the following: *Order Further Extending the Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 4458]; *Order Further Extending the Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 6908]; and *Order Further Extending Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 8504].

Objection until the Assumption Objection has been consensually resolved or the Court has made a determination on the Assumption Objection.

**Z.**     **AppLabs.**

116.   To the extent any of the Reorganized Debtors (to which this EFH Confirmation Order relates) asserts any Claim or Causes of Action retained pursuant to the Plan (the "Retained Actions") against AppLabs Technologies Pvt Ltd. ("AppLabs"), nothing in the Plan, the EFH Confirmation Order or the Bankruptcy Code shall preclude AppLabs' exercise of any valid setoff rights or recoupment rights (if any) in connection with such Reorganized Debtors' assertion of any Retained Actions, and AppLabs' setoff and recoupment rights (if any) are explicitly preserved.

**AA.**     **EFH/EFIH Committee Provisions**.

117.   On the EFH Effective Date, any statutory committee appointed in the Chapter 11 Cases with respect to the EFH Debtors (including the EFH/EFIH Committee) shall dissolve; *provided*, *however*, that following the EFH Effective Date, the EFH/EFIH Committee shall continue in existence and have standing and a right to be heard for the following limited purposes:  (i) Claims and/or applications, and any relief related thereto, for compensation by professionals and requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (ii) appeals of the EFH Confirmation Order as to which the EFH/EFIH Committee is a party; *provided*, *however*, that the EFH Debtors and the EFIH Debtors shall not be liable or otherwise responsible for paying any fees or expenses from the EFH/EFIH Distribution Account incurred by the members of or advisors to the EFH Committee after the EFH Effective Date; *provided*, *further*, *however*, that

RLF1 16988573v.1

the Reorganized Debtors shall have no obligations with respect to any post-EFH Effective Date fees and expenses incurred by the members or advisors to the EFH Committee.

**BB.    Plan Sponsor Fee Provisions.**

118.    If the Settlement Approval Order is not entered, the EFH Plan Administrator shall pay the fees and expenses incurred by the Plan Sponsor, up to $200,000 and as set forth in the definition of Post-Effective Date Administrative Account, arising from or related to litigation with respect to the EFIH First Lien Makewhole Claims and/or the EFIH Second Lien Makewhole Claims, from the Post-Effective Date Administrative Account. If the Post-Effective Date Administrative Account is insufficient to satisfy such fees and expenses, the EFH Plan Administrator Board shall be authorized to deduct such fees and expenses from the EFIH Claims Reserve, as set forth in paragraph 127. If the Settlement Approval Order is entered, such $200,000 shall instead be available for distribution in the EFH/EFIH Distribution Account.

119.    The EFH Plan Administrator Board shall reimburse the Plan Sponsor from the EFH/EFIH Distribution Account for the reasonable and documented fees and out-of-pocket expenses in excess of $200,000 for any and all actions taken by the Plan Sponsor at the express written request of the EFH Plan Administrator Board arising from or related to any and all litigation, proceedings, and settlements relating to the EFIH First Lien Makewhole Claims and the EFIH Second Lien Makewhole Claims.

**CC.    Good Faith Protections.**

120.    NextEra Energy, Inc., and its affiliates are good faith purchasers within the meaning of section 363(m) of the Bankruptcy Code, and are therefore entitled to the protections afforded to good faith purchasers to the fullest extent permitted under the Bankruptcy Code.

RLF1 16988573v.1

121.   The purchase price to be provided by NextEra, Inc. pursuant to the Merger Agreement was not controlled by any agreement between NextEra, Inc. or its affiliates, on the one hand, and any potential bidders, on the other hand, and was not reduced or suppressed in any manner by any arrangement involving NextEra, Inc. or its affiliates, on the one hand, and any creditor, on the other hand.

**DD.    Indenture Trustee.**

122.   Any and all distributions made by the Debtors or the Disbursing Agent on account of (a) the EFH Note Claims shall be made to the EFH Notes Trustee, (b) the EFIH Unsecured Note Claims shall be made to the EFIH Unsecured Notes Trustee, (c) the EFIH First Lien Note Claims shall be made to the EFIH First Lien Notes Trustee, and (d) the EFIH Second Lien Note Claims shall be made to the EFIH Second Lien Notes Trustee.  As set forth in Article IV.I of the Plan, each Trustee shall be entitled to exercise its charging lien against any and all distributions it receives from the Debtors or the Disbursing Agent, in accordance with the terms of the applicable Indentures (and apply any charged amounts in accordance with the terms of such applicable Indenture).

**EE.    Payment of Non-Retained Professional Fees Incurred Pre-EFH Effective Date.**

123.   If entered, the Settlement Approval Order will approve the EFIH Settlement Agreement, which provides for payment of the fees and expenses incurred by the EFIH First Lien Notes Trustee and the EFIH Second Lien Notes Trustee, under their respective Indentures, and pursuant to Section 506(b) of the Bankruptcy Code (the "Secured Note Fees and Expenses") and Allows the Secured Note Fees and Expenses on the terms set forth therein.  If the Settlement Approval Order is not entered on the terms contemplated by the EFIH Settlement Agreement, the Court will establish the procedures for review and payment of (a) the Secured Note Fees and

Expenses; (b) fees and expenses incurred by a Holder of an Allowed EFIH Unsecured Note Claim or the EFIH Unsecured Notes Trustee, solely in the event there are sufficient amounts in the EFH/EFIH Distribution Account, after giving effect to the transactions and recoveries provided under the Plan, to provide all such EFIH Unsecured Note Holders with a 100% recovery on account of the Allowed EFIH Unsecured Note Claims; and (c) professionals for the Makewhole Litigation Oversight Committee, in each case pursuant to the Reserve Order. The payment of the EFIH Base Payment Amount shall be considered an exercise of the EFIH Unsecured Notes Trustee's charging lien rights.

FF.    **Administration of the EFH/EFIH Distribution Account**.

124.    The EFH/EFIH Distribution Account (which may consist of one or more interest-bearing escrow accounts, designated by EFH Corp. prior to the EFH Effective Date) shall be established on the EFH Effective Date. For the avoidance of doubt, the estimated fees and expenses of the Makewhole Litigation Oversight Committee shall be in the MLOC Fees and Expenses Account in an amount and duration determined pursuant to the Reserve Order. Such segregated account shall be funded solely to the extent additional funds remain after funding the EFIH Claims Reserve and the Post-Effective Date Administrative Account (each in accordance with the Plan and the Reserve Order). The funds in such segregated account shall not be distributed to Holders of Allowed Class B5 and Allowed Class B6 Claims until such time as the fees and expenses of the Makewhole Litigation Oversight Committee are paid in full, in Cash, subject to the procedures set forth herein and in the Plan. Distributions from the EFH/EFIH Distribution Account shall be in accordance with Article IV.B.9., Article IV.R., and Article VI.A-D of the Plan, this EFH Confirmation Order, the Reserve Order, and the Settlement Approval Order, as applicable, provided that in all instances such distributions shall be consistent

with Article VI.A. as approved pursuant to the Confirmation Order.  The Reorganized EFH Debtors and Reorganized EFIH Debtors shall have no liability in respect of Claims asserted against the EFH Debtors or Claims asserted against the EFIH Debtors, which shall be payable solely from the EFH/EFIH Distribution Account, including the EFIH Claims Reserve, as applicable, pursuant to, and in accordance with, the Plan as it relates to the EFH Debtors and the EFIH Debtors, this EFH Confirmation Order, and the Reserve Order.

**GG.    Post-Closing Audit.**

125.    After the EFH Effective Date, the Auditor shall conduct the Post-Closing Audit in accordance with the Merger Agreement. If the Adjusted Company Cash Amount is greater than the Estimated Company Cash Amount, NextEra shall deliver by wire transfer of immediately available funds to the EFH Plan Administrator Board an amount equal to the difference in such amounts, to be distributed in accordance with the Plan.  If the Adjusted Company Cash Amount is less than the Estimated Company Cash Amount, NextEra shall receive, by wire transfer of immediately available funds from the EFH Plan Administrator Board, an amount equal to the difference in such amounts.    Upon conclusion of the Post-Closing Audit, the EFH Plan Administrator Board shall direct that an amount of cash shall be transferred from the EFH/EFIH Distribution Account to (i) the EFH Creditor Recovery Pool equal to the amount, if any, by which the Adjusted Company Cash Amount exceeds the NextEra Class A Common Stock Investment or (ii) NextEra equal to the amount, if any, by which the NextEra Common Stock Investment exceeds the sum of the Adjusted Company Cash Amount and the amount, if any, the Merger Sub Cash Amount was reduced pursuant to Section 1.7(a)(vi) of the Merger Agreement. For the avoidance of doubt, the provisions in this paragraph are intended to ensure the satisfaction of the continuity of interest requirement under sections 355 and 368 of the Internal

Revenue Code, and reasonable adjustments shall be made, including by issuing additional shares of NextEra Common Stock (with a corresponding decrease in the Merger Sub Cash Amount), to the extent NextEra reasonably concludes such adjustments are necessary to ensure such satisfaction, and further reasonable adjustments shall be made to the allocation of NextEra Common Stock and the Merger Sub Cash Amount to account for the payment of Cash to the Holders of Allowed EFH Non-Qualified Benefit Claims in accordance with the Plan and the general provisions of this paragraph.

**HH. Approval of EFIH Claims Reserve**.

126. **Settlement Approval Order Entered Prior to EFH Effective Date**. If the Settlement Approval Order has been entered by the Effective Date, the Merger Sub Cash Amount and the Cash on hand at EFIH as of the EFH Effective Date shall be deposited into the EFH/EFIH Distribution Account and any Claims Allowed pursuant to the Settlement Approval Order shall be satisfied in full, by the EFH Plan Administrator Board, in Cash, from the EFH/EFIH Distribution Account as contemplated by the Settlement Approval Order.

127. **Settlement Approval Order Not Entered As of the EFH Effective Date**. If the Settlement Approval Order has not been entered by the Effective Date, the EFIH Claims Reserve shall be funded on the EFH Effective Date using all available Merger Sub Cash Amount funds as well as Cash on hand at EFIH, less any amounts determined by the EFIH Debtors to be amounts necessary to satisfy General Administrative Claims asserted against the EFIH Debtors and Priority Claims asserted against the EFIH Debtors, and (1) the Replacement EFIH First Lien and the Replacement EFIH Second Lien shall be granted on the EFIH Claims Reserve, on the EFH Effective Date, (2) any fees incurred by (x) the EFH/EFIH Debtors and (y) the Plan Sponsor, in an amount not to exceed $200,000, in each case arising from or related to any and all litigation

and settlements relating to the EFIH First Lien Makewhole Claims and the EFIH Second Lien Makewhole Claims and the Plan Sponsor, during the period between the EFH Effective Date and the earlier of (A) the denial of the Settlement Approval Motion and (B) entry of the Reserve Order shall be satisfied, by the EFH Plan Administrator Board in full, from the EFIH Claims Reserve, and (3) and payments required to be made pursuant to the Post-Closing Audit may be made from the EFIH Claims Reserve.

128.    The Parties to the EFIH Settlement Agreement (as defined therein) will seek a hearing from the Court, as expeditiously as possible, following the EFH Effective Date, and denial of the relief requested in the Settlement Motion, to obtain entry of a further order adjudicating the EFIH Claims Reserve (such hearing, the "Reserve Hearing", the order entered at the Reserve Hearing, the "Reserve Order" and any subsequent order, if any, entered with respect to the EFIH Claims Reserve after the Reserve Hearing, the "Subsequent Reserve Orders"). All Parties' rights with respect to the relief to be granted at the Reserve Hearing are fully preserved, including (a) the rights of the EFIH First Lien Notes Trustees and the EFIH Second Lien Notes Trustees to seek adjudication of the Reserve Objections as defined and set forth below in paragraph 148 (as defined below, the "Reservation of Rights Regarding EFIH Claims Reserve and Fee-Review Process") and (b) the rights of all Parties to challenge the duration and size of the EFIH Claims Reserve, as well as the categories of Claims required to be escrowed for in the EFIH Claims Reserve (and the related escrow amounts) (such Claims required to be escrowed, the "Permissible Claims"). Amounts included in the EFIH Claims Reserve (and any Liens thereon) immediately prior to entry of the Reserve Order or the Settlement Approval Order shall, subject to the terms of Article VI.A. hereof be released or distributed into segregated accounts into the EFH/EFIH Distribution Account, to the extent provided in accordance with the Reserve

Order or the Settlement Approval Order, as applicable, and only those amounts, if any, remaining in the EFIH Claims Reserve shall be subject to the Replacement Liens granted pursuant to the EFH Confirmation Order, subject to the terms of any Reserve Order.

129. For the avoidance of doubt, (a) none of the Plan Sponsor, Merger Sub, Reorganized EFH or Reorganized EFIH shall have any obligations with respect to the EFIH Claims Reserve, or the EFH/EFIH Distribution Account, following the funding of the EFH/EFIH Distribution Account on the EFH Effective Date in accord with the terms of the Plan and Merger Agreement and (b) the failure to obtain entry of the Settlement Approval Order by the EFH Effective Date shall not impair or otherwise affect the ability of the EFH Effective Date to occur.

130. The Bankruptcy Court shall retain jurisdiction with respect to any pleadings filed subsequent to the entry of this EFH Confirmation Order regarding the adequacy of the EFIH Claims Reserve, including any pleadings seeking additional funding on account of the Permissible Claims, whether or not such Permissible Claims have become Allowed Claims and any pleading seeking reductions to, or distributions from, the EFIH Claims Reserve.

## II.    EFIH Settlement Agreement.

131. Attached to this EFH Confirmation Order as **Exhibit B** is a settlement agreement (the "EFIH Settlement Agreement") by and between the EFIH Debtors, the Supporting EFIH Unsecured Creditors, the Supporting First Lien Creditors, and the Supporting Second Lien Creditors (each as defined in the EFIH Settlement Agreement) (each a "Settlement Party" and, collectively, the "Settlement Parties"). Upon execution of the EFIH Settlement Agreement, the EFIH Settlement Agreement shall be binding on all Settlement Parties (except that entry by the EFIH Debtors into the EFIH Settlement Agreement is subject to entry of the Settlement Approval Order; *provided* that, as set forth in the EFIH Settlement Agreement, the EFIH Debtors

will be bound upon execution of the EFIH Settlement Agreement to seek approval of the EFIH

Settlement and entry of the Settlement Approval Order and, subject to entry of the EFH

Confirmation Order, the EFIH Debtors will have no "fiduciary out" to terminate their

commitment to seek approval of the EFIH Settlement and entry of the Settlement Approval

Order), regardless of whether the EFH Effective Date with respect to the Plan contemplated by

the EFH Confirmation Order occurs or has occurred. Upon entry of the Settlement Approval

Order, the *Motion of Delaware Trust Company, as Trustee for the EFIH First Lien Notes, for an*

*Order Directing Payment and Reimbursement of Certain Fees and Expenses as Adequate*

*Protection or in the Alternative Pursuant to Sections 105(a) and 506(b) of the Bankruptcy Code*

[D.I. 10703] filed on January 23, 2017, shall be deemed withdrawn. Further, subject to the

Reservation of Rights Regarding EFIH Claims Reserve and Fee-Review Process set forth below

in paragraph 148, any Supporting First Lien Creditor and any Supporting Second Lien Creditor

that voted to reject the Plan is deemed to have changed its vote from a vote to reject the Plan to a

vote to accept the Plan, and the Supporting First Lien Creditors and Supporting Second Lien

Creditors are hereby directed to take all commercially reasonable actions necessary to effectuate

such vote change.

**JJ.     Limited Preservation of EFIH Intercreditor Litigation**.

132.    This EFH Confirmation Order is without prejudice to the rights of the EFIH First

Lien Notes Trustee or Holders of Allowed EFIH First Lien Note Claims on the one hand, and the

rights of the EFIH Second Lien Notes Trustee or Holders of Allowed EFIH Second Lien Note

Claims, on the other hand with respect to claims and disputes between one another in the EFIH

Intercreditor Litigation. Unless the Settlement Approval Order is entered, nothing contained in

the Plan or this EFH Confirmation Order (including anything to the contrary in paragraph 82

hereof ("The Releases, Injunction, Exculpation, and Related Provisions Under the Plan") shall constitute a release of the EFIH Second Lien Notes Trustee, the collateral agent thereof, the Holders of EFIH Second Lien Note Claims, or any of their respective direct or indirect subsidiaries, current and former directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants and attorneys and their respective partners, owners and members and all of their predecessors, successors and assigns, from any liability to the EFIH First Lien Notes Trustee, or Holders of EFIH First Lien Note Claims in connection with the EFIH Intercreditor Litigation. Upon dismissal of the EFIH Intercreditor Litigation with prejudice by Final Order, the EFIH Second Lien Notes Trustee and Holders of EFIH Second Lien Notes will be deemed Releasing Parties and Released Parties as against the EFIH First Lien Notes Trustee and Holders of EFIH First Lien Notes, and vice versa.

**KK.    Replacement Liens on EFIH Claims Reserve**.

133.    On the EFH Effective Date, (a) the EFIH First Lien Notes Trustee shall be granted the Replacement EFIH First Lien on the EFIH Claims Reserve, on the terms set forth in Article III.B.19 of the Plan and (b) the EFIH Second Lien Notes Trustee shall be granted the Replacement EFIH Second Lien on the EFIH Claims Reserve, on the terms set forth in Article III.B.20 of the Plan. Notwithstanding the grant of the Replacement EFIH Lien and the EFIH Second Lien on the EFIH Claims Reserve, nothing herein shall prevent the Makewhole Litigation Oversight Committee, the EFH Plan Administrator Board, the Initial Supporting Creditors, or the EFIH Unsecured Notes Trustee from seeking entry of an order by the Court authorizing, and the Court granting, reductions of, and distributions from, the EFIH Claims Reserve to the extent permitted, and in accordance with, paragraph 146 set forth below.

**LL.    No Continuing Makewhole Claim Liability.**

134.    The limitations on liability set forth in the next paragraph below shall not apply to the EFH/EFIH Distribution Account, or the EFIH Claims Reserve, each as established on the EFH Effective Date, and subject to entry of the Reserve Order at the Reserve Hearing.  All parties rights are reserved with respect to the Reserve Hearing.  Nothing in the next paragraph impairs, modifies, or otherwise affects the ability of Holders of Allowed Claims to receive distributions pursuant to the Plan, the EFH Confirmation Order, and the Settlement Approval Order on account of such Allowed Claims.

135.    Notwithstanding anything to the contrary in this EFH Confirmation Order, the Plan, the Merger Agreement, the EFIH Settlement Agreement, the Settlement Approval Order, or any related agreements or otherwise (including any provisions anywhere that also include the words "notwithstanding anything to the contrary" or similar references), none of (i) the Plan Sponsor; (ii) Merger Sub; (iii) the EFH Debtors; (iv) the Reorganized EFH Debtors; (v) EFIH; (vi) Reorganized EFIH; (vii) any other entity acquired, directly or indirectly, by the Plan Sponsor pursuant to the terms of, or as a result of, the Plan, the Merger Agreement, or any related agreement; or (viii) with respect to each of the foregoing Entities in clauses (i) through (vii), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, shall have or incur any liability whatsoever in connection with or

as a result of any Makewhole Claim being Allowed (whether pursuant to the Settlement Approval Order or, in the event the Settlement Approval Order is not entered by the Court, any other Final Order of a court of competent jurisdiction which Allows any Makewhole Claim).

**MM.  Dissolution of Subsidiaries.**

136.   To the extent not already disposed of, wound down, or liquidated in accordance with applicable law, all EFH Debtors and EFIH Debtors, excluding:  (a) EFH Corp.; (b) EFIH; (c) LSGT Gas Company LLC; (d) EECI, Inc., (e) EEC Holdings, Inc.; and (f) LSGT SACROC, Inc. are hereby deemed dissolved without any further court or corporate action, including the filing of any documents with the Secretary of State for any state in which any such subsidiary is incorporated or any other jurisdiction.  Equity interests in EFH Non-Debtors are hereby deemed abandoned pursuant to section 554 of the Bankruptcy Code; *provided*, *however*, that equity interests in EFH Non-Debtor EFH Vermont Insurance Company are not deemed to be abandoned and shall remain outstanding.  For the avoidance of doubt, none of (i) the Plan Sponsor; (ii) Merger Sub;  (iii) the  EFH  Debtors;  (iv) the  Reorganized  EFH  Debtors;  (v) EFIH; (vi) Reorganized EFIH; (vii) any other entity acquired, directly or indirectly, by the Plan Sponsor pursuant to the terms of, or as a result of, this EFH Confirmation Order, the Plan, the Merger Agreement, or any related agreement; or (viii) with respect to each of the foregoing Entities in clauses (i) through (vii), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants,

representatives, and other professionals, each in their capacity as such, shall have or incur any liability whatsoever in connection with or as a result of the wind-down, disposition, or liquidation of any entity, or the abandonment of the equity interests in any entity, in accordance with the terms of this EFH Confirmation Order and the Plan, including, for the avoidance of doubt, the liquidation of EFCH and TCEH in accordance with Article IV.B.10(a) of the Plan.

**NN.    Assumption of Oracle Agreements.**

137.    Notwithstanding anything to the contrary in the Plan as it relates to the EFH Debtors and the EFIH Debtors, this EFH Confirmation Order, or the Transition Services Agreement contemplated by the Plan, no shared use, license splitting, or other unauthorized use of any Oracle America, Inc. ("Oracle") license and services agreement will be allowed post-confirmation absent Oracle's express prior written consent.

**OO.    EFH Non-Qualified Benefit Plans**

138.    The EFH Non-Qualified Benefit Plans shall be terminated on or before the EFH Effective Date, and any Allowed Claims arising from the termination of such EFH Non-Qualified Benefit Plans shall be treated in accordance with Article III.B.8 of the Plan. The EFH Split-Dollar Plan shall be terminated on or before the EFH Effective Date, and any amounts payable to the EFH Debtors on account of such termination shall be paid to the EFH Debtors or Reorganized EFH, as applicable.

**PP.    Environmental Law.**

139.    Nothing in the Plan as it relates to the EFH Debtors and the EFIH Debtors or the EFH Confirmation Order shall release, discharge, or preclude the enforcement of, (or preclude, release, defeat, or limit the defense under non-bankruptcy law of): (i) any liability under Environmental Law to a Governmental Unit that is not a Claim; (ii) any Claim under

Environmental Law of a Governmental Unit arising on or after the EFH Effective Date; (iii) any liability under Environmental Law to a Governmental Unit on the part of any Entity to the extent of such Entity's liability under non-bankruptcy law on account of its status as owner or operator of such property after the EFH Effective Date; (iv) any liability to a Governmental Unit on the part of any Entity other than the Debtors or the Reorganized EFH Debtors and the Reorganized EFIH Debtors; or (v) any valid right of setoff or recoupment by any Governmental Unit. All parties' rights and defenses under Environmental Law with respect to (i) through (v) above are fully preserved. For the avoidance of doubt, the United States is not a Releasing Party under the Plan.

140.    Nothing in the Plan as it relates to the EFH Debtors and the EFIH Debtors or the EFH Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding paragraph. Nothing in the Plan as it relates to the EFH Debtors and the EFIH Debtors or the EFH Confirmation Order authorizes: (i) the transfer or assignment of any governmental license, permit, registration, authorization, or approval, or (ii) the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under Environmental Law. The Bankruptcy Court retains jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities asserted by any Governmental Unit are discharged or otherwise barred by the EFH Confirmation Order or the Plan as it relates to the EFH Debtors and the EFIH Debtors, or the Bankruptcy Code.

141.    For the avoidance of doubt, all Claims under Environmental Law arising before the EFH Effective Date, including penalty claims for days of violation prior to the EFH Effective Date, shall be subject to Article VIII of the Plan and treated in accordance with the Plan as it

RLF1 16988573v.1

relates to the EFH Debtors and the EFIH Debtors in all respects and the Bankruptcy Court shall retain jurisdiction as provided in Article XI of the Plan in relation to the allowance or disallowance of any Claim under Environmental Law arising before the EFH Effective Date.

142.   Without limiting the Bankruptcy Court's jurisdiction as set forth above, nothing in the Plan as it relates to the EFH Debtors and the EFIH Debtors or the EFH Confirmation Order shall divest or limit the jurisdiction of other tribunals over the Environmental Action, and upon the EFH Effective Date, the Environmental Action shall survive the Chapter 11 Cases and may be adjudicated in the court or tribunal in which such Environmental Action is currently pending; *provided, further, however*, any judgment for a Claim in the Environmental Action arising before the EFH Effective Date shall be treated in accordance with the Plan as it relates to the EFH Debtors and the EFIH Debtors in all respects; *provided, further, however*, that nothing in the Plan as it relates to the EFH Debtors and the EFIH Debtors shall preclude, release, defeat, or limit any grounds for asserting or opposing an alleged defense or affirmative defense under non-bankruptcy law in the Environmental Action based on any change in ownership, and all such grounds for asserting or opposing such defenses and affirmative defenses under non-bankruptcy law are expressly preserved; *provided, further, however*, that nothing in the Plan as it relates to the EFH Debtors and the EFIH Debtors or the EFH Confirmation Order shall prevent the Debtors or any other parties in interest from seeking to estimate Claims against the Debtors arising in connection with the Environmental Action.  With respect to the Environmental Action, Article VIII.H of the Plan does not alter any rights or defenses under non-bankruptcy law arising as a result of any changes of ownership provided in the Plan as it relates to the EFH Debtors and the EFIH Debtors or the EFH Confirmation Order.  The Governmental Units reserve all rights as to whether there are any such rights or defenses.

QQ.    **Certain IRS Matters.**

143.    Nothing in the Plan (or subsequently amended plan) or this EFH Confirmation Order shall be deemed to waive the right of the U.S. to object to confirmation of a subsequently amended plan or alternative chapter 11 plan to the extent the United States would be entitled to object to confirmation under applicable law.  Specifically, the Debtors may not oppose the U.S.'s objection on the grounds of failure to file an earlier objection, equitable mootness, laches, estoppel, or a similar theory.  The U.S. may move for a stay of the EFH Effective Date in conjunction with its objection, and the Debtors' rights to object to any such motion are preserved.

144.    Nothing in the Plan (or subsequently amended plan) or this EFH Confirmation Order shall affect the rights of the IRS or United States to assess or collect a tax arising on or after the Confirmation Date against Reorganized EFH, any member of its consolidated group, and/or any successor entities as permitted under applicable law.

RR.    **ERCOT.**

145.    Nothing contained in this EFH Confirmation Order or in the Plan as it relates to the EFH Debtors and the EFIH Debtors shall impair, modify, or otherwise affect the relief granted in the TCEH Confirmation Order with respect to the TCEH Debtors, the EFH Shared Services Debtors, the Reorganized TCEH Debtors, and the Reorganized EFH Shared Services Debtors to the Electric Reliability Council of Texas, Inc. ("ERCOT").

SS.    **Insurance.**

146.    Nothing in the Plan as it relates to the EFH Debtors and the EFIH Debtors or this EFH Confirmation Order is intended to decide or resolve any issues related to insurance coverage of Claims.

RLF1 16988573v.1

**TT.   Successors and Assigns.**

147.   Except as otherwise provided herein, or in the Plan, the rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**UU.   Reservation of Rights Regarding EFIH Claims Reserve and Fee-Review Process.**

148.   Notwithstanding anything to the contrary in this EFH Confirmation Order or the Plan, in the event that the Settlement Approval Order (as described and defined in **Exhibit B** to the EFH Confirmation Order) is not entered on the terms contemplated by the EFIH Settlement (as described and defined in **Exhibit B** to the EFH Confirmation Order) or the EFIH Settlement Agreement is otherwise terminated, the following terms shall apply:

    (a)   all objections (the "Reserve Objections") of the EFIH First Lien Notes Trustee and the EFIH Second Lien Notes Trustee regarding the amount of funding, duration and terms of the EFIH Claims Reserve required to satisfy the "indubitable equivalent" requirement of section 1129(b) of the Bankruptcy Code, and all objections regarding the fee-review process set forth in the Plan Supplement and Amended Plan Supplement (or any other supplement), in each case as set forth in the (i) the Objection of the EFIH First Lien Notes Trustee, [D.I. 10760], (ii) the Supplemental Objection of the EFIH First Lien Notes Trustee, [D.I. 10809], (iii) the Objection of the EFIH Second Lien Notes Trustee, D.I. 10762, and (iv) the Supplemental Objection of the EFIH Second Lien Notes Trustee, D.I. [10810], are fully preserved, and the rights of all parties in interest with respect to such Reserve Objections are fully reserved;

    (b)   the Reserve Hearing will be scheduled, for the presentation of evidence and arguments, to be heard (subject to the Court's schedule) as soon as possible following the denial of the Settlement Approval Order, to adjudicate the Reserve Objections, including the amount of funding, duration and terms of the EFIH Claims Reserve required to satisfy the "indubitable equivalent" requirement under section 1129(b) of the Bankruptcy Code, and to determine the Reserve Objections of the EFIH First Lien Notes Trustee and the EFIH Second Lien Notes Trustee to the fee-review process; and

RLF1 16988573v.1

(c)  in the event that an order adjudicating the Reserve Objections is not entered before the occurrence of the EFH Effective Date, there shall be no distribution to holders of Claims in Class B4 (EFIH Second Lien Note Claims) (including any payment of the outstanding principal amount and accrued interest on the EFIH Second Lien Notes), B5 (EFH LBO Note Guaranty Claims), or Class B6 (General Unsecured Claims Against the EFIH Debtors, including the EFIH Unsecured Note Claims) on the EFH Effective Date or thereafter, unless and until entry of the Reserve Order, and solely to the extent permitted in such Reserve Order after the EFIH Claims Reserve is fully funded in accordance with such Reserve Order; and

(d)  although the Supporting First Lien Creditors and the Supporting Second Lien Creditors are deemed pursuant to paragraph 131 of this EFH Confirmation Order to have changed their votes from votes to reject the Plan to votes to accept the Plan, that change is conditioned on and subject to the provisions of this paragraph 148 ("Reservation of Rights Regarding EFIH Claims Reserve and Fee-Review Process") providing that, in the event the Settlement Approval Order is not entered or the EFIH Settlement Agreement is otherwise terminated, the EFIH First Lien Notes Trustee, the Holders of the EFIH First Lien Note Claims, the EFIH Second Lien Notes Trustee and the Holders of the EFIH Second Lien Note Claims are entitled to treatment with respect to the EFIH Claims Reserve that satisfies the "indubitable equivalent" requirement of section 1129(b) of the Bankruptcy Code.

149.  Notwithstanding anything to the contrary in any provision in this EFH Confirmation Order or in the Plan providing that "nothing herein shall prevent the EFH Plan Administrator Board, the Makewhole Litigation Oversight Committee, or the EFIH Unsecured Notes Trustee from seeking entry of an order by the Court authorizing, and the Court granting, reductions of, and distributions from, the EFIH Claims Reserve" (or other substantively similar terms), the EFH Plan Administrator Board, the Makewhole Litigation Oversight Committee, the EFIH Unsecured Notes Trustee and Holders of the EFIH Unsecured Notes (including the Initial Supporting Creditors) shall not seek any such order or relief prior to the Reserve Hearing (subject to all objections thereto of the EFIH First Lien Notes Trustee, the EFIH Second Lien Notes Trustee and Holders of the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, which objections are fully reserved). The foregoing is without prejudice to the rights of

the EFIH Plan Administrator Board, the Makewhole Litigation Oversight Committee, or the EFIH Unsecured Notes Trustee to seek entry of an order or relief seeking reductions of, and distributions from the EFIH Claims Reserve subsequent to entry of an order at the Reserve Hearing, and without prejudice to the rights of any party to object to such requested relief.

**VV.    Effect of Non-Occurrence of EFH Effective Date.**

150.   If a condition to the occurrence of the EFH Effective Date does not occur, and is not otherwise waived, and it is determined that the EFH Effective Date shall not and cannot occur on the terms contemplated by the Plan and the EFH Confirmation Order, the provisions set forth in the EFH Confirmation Order shall not be binding on any party; *provided*, *however*, that the non-occurrence of the EFH Effective Date shall not affect (i) the relief granted in the Settlement Approval Order, whether the Settlement Approval Order is entered before, on, or after the EFH Effective Date or (ii) the EFH/EFIH Debtors' obligation to seek approval of the EFIH Settlement Agreement as set forth in paragraph 131 of this EFH Confirmation Order and as set forth in the EFIH Settlement Agreement.

**WW.    Final Order.**

151.   This EFH Confirmation Order is a Final Order and the period in which an appeal must be Filed will commence upon entry of the EFH Confirmation Order.

Dated: February 17, 2017
    Wilmington, Delaware

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

RLF1 16988573v.1