# Attachment A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION 2337<br>Plaintiff,<br>vs.<br><br>LUMINANT MINING COMPANY,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:14-cv-1762 |

**PLAINTIFF'S ORIGINAL COMPLAINT**
**SEEKING TO ENFORCE LABOR AGREMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Pursuant to the Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the Older Workers Benefit Protection Act, 29 U.S.C. 626 *et seq*., Plaintiff International Brotherhood of Electrical Workers, Local Union 2337 ("IBEW 2337") brings this suit against Luminant Mining Company, ("Luminant"), in order to set aside and vacate the arbitration award of the Honorable Arbitrator Robert B. Moberly dated November 23, 2013. In support thereof, IBEW 2337 respectfully states as follows:

### I. JURISDICTION

1. This Court has jurisdiction to hear the merits of Plaintiff's claims under 29 U.S.C. § 185, 28 U.S.C. §1331 and §1343(a)(4).

### II. PARTIES

2. Plaintiff International Brotherhood of Electrical Workers, Local Union 2337 ("IBEW 2337") is a labor union with offices and activities in Texas.

3. Defendant Luminant Mining Company LLC is a Domestic limited liability company with its corporate headquarters in Dallas, Texas, and it resides in and does

business in the State of Texas and within this District. Luminant may be served with process through its registered agent for service of process, CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201.

### III.  FACTUAL BACKGROUND and CAUSE OF ACTION FOR ENFORCEMENT OF LABOR AGREEMENT

4. Plaintiff and Defendant are parties to a Collective Bargaining Agreement ("CBA" or "Agreement") concerning facilities of Defendant named "Big Brown, Martin Lake, and Monticello." The CBA at issue in this litigation is dated for November 15, 2011 to November 15, 2014.

5. The CBA has a dispute resolution mechanism wherein the parties may submit grievances to an arbitrator.

6. Regarding the authority of the arbitrator, the CBA states, "[a]fter hearing the case, the arbitrator shall determine **whether or not there has been a violation of the Agreement** and render his decision which shall be both final and binding on the parties."

7. The CBA states, "The Company and the Union mutually agree in the application of the terms of this Agreement to comply with all applicable Federal and State statutes relating to discrimination against employees because of race, creed, color, sex, religion, national origin, age, veteran status, or disability.

8. On July 6, 2012, Defendant terminated a member of IBEW 2337, Mr. Chris Morris, allegedly because he did not work assigned overtime. Mr. Morris was a 33-year employee of Defendant at the time of his termination. Mr. Morris was over 40 years old at the time of his termination.

9. IBEW 2337 timely grieved Mr. Morris' termination and the parties held an arbitration before the Honorable Arbitrator Robert B. Moberly with hearing dates of

Febraury 7, 2013 and June 4, 2013 in Dallas, Texas. Both parties also submitted post-hearing briefs and reply/supplemental briefs to the Arbitrator.

10. IBEW 2337 argued at length that Mr. Morris' termination was due to his age in violation of federal and state age discrimination statutes and the Agreement which mandates compliance with anti-discrimination laws.

11. Luminant argued that it did not terminate Morris because of his age; but Luminant further argued, despite the CBA's incorporation of federal age discrimination statutes and despite the OWBPA, that the termination of Mr. Morris could not be arbitrated because a Last Chance Agreement dated April 28, 2011 (more than a year prior to the termination) purportedly waived any future right of Mr. Morris to grieve or arbitrate his termination.

12. Luminant's argument that the Last Chance Agreement is a future waiver of Mr. Morris' right to grieve or arbitrate his termination runs contrary to the express requirements of waivers of age discrimination claims found within the Older Workers Benefit Protection Act (OWBPA) as the Last Chance Agreement does not comport with the strict requirements of OWBPA.

13. The Arbitrator agreed that the issue of age discrimination was before him and the arbitrator accepted briefing by the parties regarding Mr. Morris' claims of age discrimination.

14. On November 23, 2013, the Arbitrator, contrary to law, the CBA, and in excess of this authority, ruled that "[u]nder the Last Chance Agreement entered into by the Company, Union, and Grievant waived [sic] any right to arbitration of the instant grievance. Accordingly, the grievance is not arbitrable, and is herewith dismissed."

15. In ruling that the Last Chance Agreement waived any right to grieve or arbitrate the termination of Mr. Morris, the Arbitrator's ruling was: (1) contrary to the express statutory requirements of OWBPA, (2) was contrary to the express terms of the CBA between the parties which require enforcement of discrimination laws such as OWBPA, and (3) was in excess of this authority.

16. The Older Workers Benefits Protection Act of 1990 ("OWBPA") imposes "strict, unqualified" statutory requirements upon employers who wish to enforce an employee's waiver of ADEA claims obtained by a release. *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 427, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998).

17. An employer must comply with all of the OWBPA requirements in order for an employee to effectively waive any ADEA claim. *Id.* Substantial compliance is not adequate. *Blakeney v. Lomas Info. Sys., Inc.,* 65 F.3d 482, 485 (5th Cir.1995), *cert. denied,* 516 U.S. 1158, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996).

18. A release either satisfies all OWBPA requirements, meaning a waiver made pursuant thereto may be considered "knowing and voluntary," or a release fails to meet the requirements and is voidable. *Id.*

19. Under the OWBPA, in order for a release to secure an enforceable ADEA waiver, it must, at minimum, (A) be written in a manner calculated to be understood; (B) specifically refer to rights or claims arising under the ADEA; (C) not waive rights or claims arising after the date the waiver is executed; (D) be supported by consideration; and (E) advise the employee to consult with an attorney before signing. In addition, it must (F) give the employee at least 21 days to consider the agreement, or 45 days if the severance package offered in exchange for the waiver is being offered to a group or class

of employees; (G) allow the employee to revoke the agreement for a period of at least 7 days following execution; and (H) if the employee's waiver is made in connection with an exit incentive or other employment termination program, the employer must provide written information concerning (i) the group of individuals covered by the program as well as any eligibility factors and applicable program time limits; and (ii) the job titles and ages of employees who were and were not selected for termination. 29 U.S.C. § 626(f)(1)(A)-(H) (2004).

20. The Last Chance Agreement does not comply with the requirements of OWBPA and cannot be a valid waiver of Mr. Morris' age discrimination rights.

21. IBEW 2337's post-hearing brief (Exhibit C hereto, p. 29) to the Arbitrator identified the federal age discrimination law incorporated into the CBA:

> The CBA expressly incorporates federal and state statutes that outlaw age iscrimination and employment. *See* Joint Ex. 1, Article II, Sections 4 and 5. It is beyond debate that an employer violates the federal and state laws against age discrimination when it gives differential treatment to employees based on age, giving less scrutiny to younger employees than to older employees. This was the holding of the Fifth Circuit Court of Appeals as far back as 1989 in *Uffelman v. Lonestar Steel Co.*, 863 F.2d 404, 408 (5th Cir. 1989). Over and over since that time, the Fifth Circuit has repeated this message to employers. *See, e.g., Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1477 (5th Cir. 1992); *Palasota v. Haggar Clothing Co,*, 499 F.3d 474, 482 (5th Cir. 2001); *Miller v. Raytheon Co.*, 717 F.3d 138, 144-45 (5th Cir. 2013).

*Id.*

22. IBEW 2337's Post-Hearing Brief specifically informed the Arbitrator, "**As a Matter of Black Letter Law, the Last Chance Warning Cannot Bar Mr. Morris's Federal Age Discrimination Claim**." (Exhibit C, p. 30). IBEW 2337 informed the Arbitrator:

> "Specifically, 29 U.S.C. § 626(f) sets forth detailed language that must be included in any agreement that effectively waives an employee's right to pursue an age discrimination claim. *See* **Attachment A** hereto. The ADEA Older Worker's Benefit Protection Act prohibits a waiver of "rightful claims that may arise after the date the waiver is executed." 29 U.S.C. § 626(f)(1)(C). In addition, an agreement for waiver of ADEA rights must provide for a seven day retreat right following execution of the agreement. *Id.*, § 626(f)(1)(G). The United States Supreme Court has specifically and strictly enforced these waiver requirements. *See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998)."

(*Id.*, p. 30).

23. The Arbitrator, in failing to review the merits of Mr. Morris's grievance exceeded his authority.

24. The Arbitrator, in determining that Mr. Morris had waived his grievance and arbitration rights, even regarding age discrimination claims, ruled contrary to the express requirements of the Agreement that the parties must comply with all Federal statutes relating to age discrimination and his decision does not draw its essence from the CBA. In addition, the Arbitrator exceeded his jurisdiction and his decision failed to draw its essence from the CBA when, despite the CBA's requirement that "[a]fter hearing the case, the arbitrator shall determine whether or not there has been a violation of the Agreement" his decision and award expressly failed to resolve the merits, failing to determine if there had been a violation of the Agreement. To the extent, if any, that the decision of November 23 2013 can survive these challenges under traditional review, the OWBPA is an express and strict federal statute that trumps the power and right of an arbitrator to disregard its requirements.

25. Because the Arbitrator exceeded his authority under the CBA, ruled contrary to OWBPA and the parties' express contract, and entered a decision and award that does not

draw its essence from the CBA, the decision of November 23, 2013 should be ruled void and remanded for a ruling on the merits.

26. Because the November 23, 2013 ruling failed to comply with the strict terms of the OWBPA despite the fact that IBEW 2337 placed these mandatory requirements before the Arbitrator, Plaintiff respectfully asks that the Court order that on remand, a new arbitrator be selected pursuant to the parties' selection process as stated within the Agreement.

27. This suit to vacate is timely filed within 4 years of the November 23, 2013 ruling.

28. Attached as Exhibit A is a true and correct copy of the November 23, 2013 arbitration award and ruling of the Honorable Arbitrator Robert B. Moberly.

29. Attached as Exhibit B is a true and correct copy of the relevant portions of the parties CBA.

30. Attached as Exhibit C is a true and correct copy of the Union's Brief to the Arbitrator.

## IV. PRAYER

WHEREFORE, Plaintiff requests that Defendant be cited to appear and answer, and that, after trial, Plaintiff take judgment against Defendant as follows:

    a. Judgment against Defendant for enforcement of the Labor Agreement including;

    b. Vacating the November 23, 2013 ruling of the Honorable Robert B. Moberly;

    c. Finding that the November 23, 2013 ruling of the Honorable Robert B. Moberly is contrary to the express requirements of OWBPA;

d. Finding that the November 23, 2013 ruling of the Honorable Robert B. Moberly is contrary to the express terms of the parties' Collective Bargaining Agreement;

e. Finding that the November 23, 2013 ruling of the Honorable Robert B. Moberly is in excess of the contractual authority of the Arbitrator as found within the parties' Collective Bargaining Agreement;

f. Finding that the November 23, 2013 decision and award of the Honorable Robert B. Moberly failed to draw its essence from the CBA;

f. Ordering a remand of the arbitration for hearing before a different arbitrator to be chosen pursuant to the parties' CBA who shall fully comply with the OWBPA; and

g. Such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

**GILLESPIE SANFORD LLP**
4925 Greenville Avenue, Suite 200
Dallas, Texas 75206
Phone: (214) 800-5111
Fax: (214) 838-0001

By: */s/ Joseph H. Gillespie*
　　　Hal K. Gillespie (lead counsel)
　　　State Bar No. 07925500
　　　hkg@gillespiesanford.com
　　　Joseph H. Gillespie
　　　State Bar No. 24036636
　　　joe@gillespiesanford.com

Date: Tuesday, May 13, 2014