1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4

5    In re:                        :

                                   :    Chapter 11

6    ENERGY FUTURE HOLDINGS CORP., :

     et al.,                       :    Case No. 14-10979

7                                  :

            Debtors.               :    (Jointly Administered)

8    _____:

9

10

11                              United States Bankruptcy Court

12                              824 North Market Street

13                              Wilmington, Delaware

14                              March 28, 2017

15                              10:42 a.m. – 11:10 a.m.

16

17

18

19

20

21    B E F O R E :

22    HON CHRISTOPHER S. SONTCHI

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO OPERATOR:   LESLIE MURIN

1  HEARING re Debtors' Seventeenth Omnibus (Substantive)

2  Objection to (Substantive Duplicate, No Liability, and No

3  Claim Asserted) Claims Pursuant to Section 502(b) of the

4  Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and

5  Local Bankruptcy Rule 3007-1 [D.I. 4784; filed June 16,

6  2015]

7

8  HEARING re Debtors' Thirty-Sevenths Omnibus (Substantive)

9  Objection to Certain Improperly Asserted Claims Pursuant to

10  Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

11  3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

12  7814; filed February 9, 2016]

13

14  HEARING re Motion of Delaware Trust Company, as Trustee for

15  the EFIH First Lien Notes, for an Order Directing Payment

16  and Reimbursement of Certain Fees and Expenses as Adequate

17  Protection or in the Alternative Pursuant to Sections 105(a)

18  and 506(b) of the Bankruptcy Code [D.I. 10703; filed January

19  23, 2017]

20

21  HEARING re Motion of Energy Future Holdings Corporation for

22  Entry of Order Approving Assumption of Oncor Tax Sharing

23  Agreement Prior to Plan Effective Date [D.I. 10908; filed

24  February 24, 2017]

25

1    HEARING re Motion of Energy Future Holdings Corp., et al,

2    for Entry for an Order Approving the EFIH Settlement Between

3    the Debtors, Certain Holders of EFIH First Lien Note Claims,

4    Certain Holders of EFIH Second Lien Note Claims, and Certain

5    Holders of EFIH Unsecured Note Claims [D.I. 10858; filed

6    February 17, 2017]

7

8    HEARING re Objection of Energy Future Holdings Corp., et

9    al., to Proofs of Claim Filed by the Internal Revenue

10   Service, or in the Alternative, Request to Estimate Proofs

11   of Claims Filed by the Internal Revenue Service [D.I. 10909;

12   filed February 24, 2017]

13

14   HEARING re Debtors' Forty-Fourth Omnibus (Non-Substantive)

15   Objection to Amended and Late Filed Claims Pursuant to

16   Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

17   3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

18   10915; filed February 24, 2017]

19

20   HEARING re Debtors' Forty-Fifth Omnibus (Substantive)

21   Objection to Substantive Duplicate and No Liability Claims

22   Pursuant to Section 502(b) of the Bankruptcy Code,

23   Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy

24   Rule 3007-1 [D.I. 10917; filed February 24, 2017]

25

1    HEARING re Motion of Energy Future Holdings Corporation for

2    Allowance of an Administrative Expense Claim for Fidelity

3    Management & Research Company's Substantial Contribution

4    Pursuant to Sections 503(b)(3)(d) and 503(b)(4) of the

5    Bankruptcy Code [D.I. 10948; filed March 2, 2017]

6

7    HEARING re Debtors' Motion for Entry of an Order Extending

8    the Deadline to File and Serve Objections to Claims Against

9    or Interests in the TCEH Debtors [D.I. 10976; filed March 7,

10   2017]

11

12   HEARING re Interim Fee Applications (E-side)

13

14   HEARING re Interim/Final Fee Applications (T-side)

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1   A P P E A R A N C E S :

2

3   GODFREY & KAHN, S.C.

4       Attorneys for the Fee Committee

5

6   BY:  KATHERINE STADLER

7

8   BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

9       Attorneys for the Fee Committee

10

11  BY:  KEVIN M. CAPUZZI

12

13  STEVENS & LEE

14      Attorneys for EFIH

15

16  BY:  JASON ANGELO

17

18  MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

19      Attorneys for TCEH, Debtor

20

21  BY:  DAVID P. PRIMACK

22

23

24

25

1   POTTER ANDERSON & COROON

2         Attorneys for Deustche Bank New York

3

4   BY:  R. STEPHEN MCNEILL

5

6   BIELLI & KLAUDER, LLC

7         Attorneys for EFH Group

8

9   BY:  DAVID M. KLAUDER

10

11  KLEHR HARRISON HARVEY BRANZBURG LLP

12        Attorneys for UMB Bank, N.A.

13

14  BY:  RAYMOND H. LEMISCH

15

16  UNITED STATES DEPARTMENT OF JUSTICE

17        Attorney for the U.S. Trustee

18

19  BY:  RICHARD L. SCHEPACARTER

20

21  GITLIN & CO. LLC

22        Fee Committee Chair

23

24  BY:  RICHARD GITLIN

25

1   ALSO PRESENT TELEPHONICALLY:

2

3   JACOB ALDERSTEIN

4   MATTHEW G. BOUSLOG

5   KELLIE CAIRNS

6   MARK A. CODY

7   MICHAEL A. CODY

8   MICHAEL CORDASCO

9   ERIC C. DAUCHER

10   CATHERINE N. EISENHUT

11   MARK A. FINK

12   JOSEPH A. FLORCZAK

13   TODD M. GOREN

14   TAYLOR B. HARRISON

15   HAROLD KAPLAN

16   ALEXA J. KRANZLEY

17   ALFREDO MATILLA

18   PATRICK C. MAXCY

19   PAMELA S. MORIN

20   RICHARD PEDONE

21   ERIK SCHNEIDER

22   NED S. SCHODEK

23   NOAH M. SCHOTTENSTEIN

24   JENNIFER SHARRET

25   ANGELO THALASSINOS

1   ANDREW M. THAU

2   AMER TIWANA

3   MEGAN WASSON

4   ERIN A. WEST

5   BRADY C. WILLIAM SON

6   ROLAND YOUNG

7   KATINA BROUNTZAS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              CLERK:  All rise.

3              THE COURT:  Please be seated.

4              MR. MADRON:  Good morning, Your Honor.

5              THE COURT:  Good morning.  Sorry for the delay.

6              MR. MADRON:  No worries at all, Your Honor.  For

7     the record, Jason Madron of Richards, Layton & Finger on

8     behalf of Energy Future Holdings Corp. and its affiliated

9     debtors.

10             Your Honor, we're here before the Court today for

11    a combination omnibus and uncontested fee hearing,

12    proceeding from the form of amended agenda, that I filed

13    yesterday in consultation with Your Honor's chambers.  Items

14    one through 10 on that agenda, represent the omnibus

15    component of today's hearing.  The good news is that will

16    not take up any of the Court's time, because all of those

17    matters have been resolved, either by an order, entered by

18    Your Honor, based on presentment of a certification of

19    counsel or certification of no objection, or by withdrawal

20    of the underlying matter or agreement of the parties to

21    continue a particular matter.

22             So, that will quickly bring us to the fee portion

23    of the hearing, which are Agenda Items 11 and 12.  Agenda

24    item 11, Your Honor, are a collection of interim period fee

25    applications for a group of go-forward professionals that

1    continue to provide services to the E-side of the business,

2    and Agenda Item 12, are a collection of interim and final

3    fee applications for professionals who exclusively rendered

4    services to the T-side of the business.  And as Your Honor

5    is well aware, the T-side emerged from Chapter 11 on October

6    3rd of last year.

7              So, with that, I will yield the lectern to counsel

8    to the Fee Committee, to make a presentation on Agenda Items

9    11 and 12.

10             THE COURT:  Okay.

11             MR. MADRON:  Thank you.

12             MR. CAPUZZI:  Good morning, Your Honor.  For the

13   record, Kevin Capuzzi of Benesch Friedlander Coplan &

14   Aronoff for the Fee Committee.  I'm joined by my co-counsel,

15   Katherine Stadler of Godfrey & Kahn, and Richard Gitlin, the

16   Chair of the Fee Committee.  Miss Stadler will address the

17   Court with Your Honor's permission.  Thank you.

18             THE COURT:  Thank you.

19             MS. STADLER:  Thank you.  Thank you, Kevin.  Thank

20   you, Judge.

21             As you know, Judge, we're before the Court today

22   to complete the Fee Committee's reporting on and to

23   recommend for the Court's approval, 19 interim, on 11 final

24   fee applications.  Primarily, but not exclusively, for the

25   seventh interim fee period, which ran from May through

1    August of last year.

2           For 11 professionals, as Mr. Madron said, those

3    are those that were billing only T-side entities or

4    committees.  This includes the additional month of September

5    and three days in October.

6           As detailed in our report, rather than wait for

7    the conclusion of these cases in total, the Fee Committee

8    asks for final fee applications from this group, and we have

9    processed and made final recommendations on those.

10          Today's agenda also includes two flat-fee

11   professionals that Mr. Gitlin would like to address briefly.

12   And just by way of status, we have remaining about 20

13   retained professionals, and eight non-retained

14   professionals, requesting substantial contribution fees

15   under 503(b) from the T-side settlement.  I believe that

16   latter group will be resolved and ready for court approval

17   at the next hearing.

18          Professionals already have filed eight interim fee

19   applications, covering September through December of 2016.

20   Those will be scheduled for hearing in June, if possible,

21   with an estimated April 30th effective date.  That leaves us

22   with one more interim fee period, the ninth, and we hope

23   final, which will run from January through April of 2017.

24          In addition, as the Court knows, we have a second

25   group of substantial contribution claimants that will have

1    their fee request reviewed by the Fee Committee.  We're in

2    the initial stages of communicating with those professionals

3    and intend to process their fee requests in the same manner

4    we did for the 503(b)s on the T-side, and intend to include

5    those with the final fee applications as well.

6              THE COURT:  Okay.

7              MS. STADLER:  I can answer any questions you may

8    have, otherwise, Mr. Gitlin has a few words he'd like to

9    say.

10             THE COURT:  All right.  Before we turn to Mr.

11   Gitlin, I'd been trying to keep, over the course of the

12   case, careful records of everything that's been requested,

13   produced -- reduced, et cetera.  And, unfortunately, at

14   least as far as I could figure out, my numbers and the Fee

15   Committee's numbers don't add up for four of the final fee

16   applications.

17             MS. STADLER:  Okay.

18             THE COURT:  They're not ... big difference --

19   This ... well, with all due respect, this last, Exhibit D,

20   was not the best chart you've come up with for letting me

21   ... for helping me ...

22             MS. STADLER:  B?  I'm sorry, are you talking about

23   Exhibit ...

24             THE COURT:  Exhibit A, I guess.

25             MS. STADLER:  Okay.

1          THE COURT:  I can't remember.  Anyway, the one

2     with the final fee ...

3          MS. STADLER:  The finals, okay.

4          THE COURT:  But I did the best I could, but.

5          MS. STADLER:  Okay.

6          THE COURT:  So let me tell you where, which ones

7     and maybe I might need ... I didn't have a chance to go back

8     and check every reduction to see if I made an error, which I

9     could do if I had more time, but I was keeping you waiting

10    as it was, so, I didn't want to waste that time.

11          So, for ... again, these aren't huge differences

12    but, you know, it does matter.  So, for KPMG, it looks like

13    the final fees allowed are going to be $15,246,311.03,

14    according to your chart.  And I have them at $15,169,579.63.

15    Again, not a huge difference, but about $80,000 off.

16          And with regard to the expenses I was right on,

17    so, something sort of fell between the cracks there, I

18    guess, and I'm not sure where.  It might make sense for

19    these four to hold off approving them today, and maybe I can

20    take the time to figure out where my records are wrong and

21    we can go through a reconciliation period and figure out

22    exactly where we are.

23          The other, the second one that I didn't quite add

24    up on was Morrison & Foerster.  And the problem there was,

25    again, not a huge difference, but a difference.  The fees

1   ... the expenses lined up fine.  You had final fees of

2   $36,502,452.25, and I had $36,555,916.75.  Again, only about

3   a 50,000 ... 55 ... $53,000 difference.  But I need to

4   figure that out.

5           And then the third was Lazard, and I think I must

6   be just missing a period on my charts that I've been

7   keeping.  But you had a final fee there of $16,270,161.29,

8   and I had $15,770,161.29, which makes me think I'm just

9   missing maybe a $500,000 interim allowance, so I'd have to

10  check.  And my expenses are off too.  You had $111,780.49

11  and I had $111,331.84.  So, something's amiss there.

12          And then, finally, Polsinelli, which has proven

13  challenging to keep up with ... the fees I have are off by,

14  literally, $9, so I don't care.  The expenses are off a

15  little bit more.  Again, not much at all, but you had

16  $111,849.01 and I had $108,666.57, so, $3,000 off.  I'll

17  approve those today because that kind of difference isn't

18  worth the estate's time and money to have you go through the

19  process of reconciling $9 and $3,009.  So, that won't be a

20  problem.

21          But with regard to KPMG, Morrison & Foerster and

22  Lazard, I'd like to take some more time to see if I can

23  figure out where the difference is and reconcile my numbers

24  with your numbers and then I'll let you know if I need more

25  information or if ... or whether it's okay and you can send

1   over an order, if that makes sense.

2          MS. STADLER:  Sure, that makes perfect sense.

3          THE COURT:  So, we could pull KPMG, Mo-Fo and

4   Lazard for now.

5          MS. STADLER:  Okay.

6          MR. GOREN:  Your Honor?

7          THE COURT:  Yes?

8          MR. GOREN:  This is Todd Goren from Morrison &

9   Foerster.  Just a suggestion for us.  It seemed like you had

10  us high by $53,000, so like had $53,000 more than we were

11  asking.  I mean, I don't ... I think we're pretty

12  comfortable that the number is right, so I don't ... is

13  there any reason to go through the heartburn in figuring out

14  for, you know, well, if there was an extra $53,000 in there,

15  we're fine dropping it at this point.

16         THE COURT:  Okay.  That's fine.

17         MR GOREN:  Okay.

18         MS. STADLER:  Judge ...

19         THE COURT:  Because I also ... was it similar with

20  KPMG, I had them owed more than they're asking for, in which

21  case, I hadn't really focused on that, but if that's the

22  case, then ... if there's an error, it's to their

23  disadvantage, so I don't ... let me look real quick ...

24  KPMG.

25         Yeah, KPMG, I have them making a little more than

1    I have calculated.  And Lazard ... yeah, and Lazard, I have

2    them making a little more than I have calculated, so let's

3    see if we can figure those two out.  So, I'll approve Mo-Fo

4    and Polsinelli.

5            MS. STADLER:  Okay.

6            THE COURT:  And everybody else, with regard to the

7    Fee Committee expenses, we did our job of going through

8    those, and I don't have any issues.  It was a little unclear

9    to me on the redline you gave me, are we not approving

10   Phillips Goldman on a final basis?

11           MS. STADLER:  That's correct.  I was informed that

12   they withdrew their fee application and tend to refile it.

13           THE COURT:  Okay.  All right, just keep me posted

14   on that then.

15           MS. STADLER:  I will.  Judge, if you would like, I

16   can go through some of the methodology of the exhibit, if

17   that would be helpful.  I agree that there were a lot ...

18           THE COURT:  It's a lot to keep track of.

19           MS. STADLER:  It's a lot to keep track of, and if

20   it would be helpful for you to have a little roadmap, I'd be

21   happy to provide that.

22           THE COURT:  Well, I mean so ... for Lazard, for

23   example, you ... I take it, looking at this exhibit, that

24   there were no reductions at any time.

25           MS. STADLER:  No.

1          THE COURT:  That ... yes, that's consistent with

2     what I have.  So, I'm not sure, while there were some

3     expense deductions ...

4          MS. STADLER:  Right, right.  So, the issue with

5     Lazard, and each professional is slightly different in

6     circumstances, Lazard made an agreement with the Fee

7     Committee to turn a billing of monthly flat fees, effective

8     October 2015.

9          THE COURT:  Right.

10          MS. STADLER:  And in their final fee application,

11     though they could have requested monthly compensation

12     through the effective date, October 3rd, 2016, they elected

13     to simply request the amount that they had pre-agreed with

14     the Fee Committee.  And, therefore, it does not show any

15     additional deductions, because they took all of our interim

16     deductions and the agreed flat-fee deduction out of their

17     final fee request.

18          So, the final fee award you see there is the sum

19     of their monthly flat fees, sum for pro-rated months, plus

20     their success fee, which is an adjust, adjusted by a credit

21     for their flat fees.  And that flat fee credit against the

22     transaction fee, or completion fee, is laid out, the tally

23     on that is laid out in the report, in more detail.

24          But we will certainly go back and reconcile that,

25     and KPMG and make sure all the questions are answered, and

1    get the professionals on board once again, to make sure

2    we're 100 percent comfortable with the chart.

3              THE COURT:  Right.  So, with there, I think ... I

4    just must be ... it's literally exactly ... what is it

5    exactly?  It looks like it's exactly ... what's 770 minus

6    270?  It's exactly $500,000 ...

7              MS. STADLER:  Five hundred ... right.

8              THE COURT:  It's exactly $500,000 off.  So, maybe

9    there's an interim period there where I had a different

10   number than ultimately was actually allowed.

11             MS. STADLER:  I bet I know what happened.  I bet I

12   know what happened.  They agreed to terminate monthly

13   billing effective in October 2015, but by the time they made

14   that agreement with the Fee Committee -- I'm remembering

15   this now -- by the time they made that agreement with the

16   Fee Committee they had already submitted monthly statements

17   for October and November of 2016.

18             THE COURT:  Okay.  So, those have never been

19   subject of an interim order.  They're monthlies, but I never

20   signed an interim order, and I'm only tracking interim

21   amounts, not monthly amounts on my chart.

22             MS. STADLER:  But I can't answer that one, for

23   sure.  That may be the case.

24             THE COURT:  Well, that makes sense.  That makes

25   sense.  So ...

1          MS. STADLER:  We did ask them not to submit

2     certificates of no objection for those monthlies.  So, it's

3     quite possible.

4          THE COURT:  Okay.

5          MS. STADLER:  You know what?  You're right.  They

6     stopped filing interim fee applications at that point too,

7     so you're right, it would not have been subject to an

8     interim order.

9          THE COURT:  All right.  So, there's two months of

10    250,000 each that they haven't previously sought interim

11    approval of, but they're seeing final approval of now.

12         MS. STADLER:  That is my best guess as to why

13    we're off.  Yes.

14         THE COURT:  Okay.  All right, that's acceptable.

15    And I think my ... that's why the expenses are off by,

16    literally, $400, which, again, is not worth fussing about.

17    And actually, there I think they're taking ... that's

18    actually ... yeah.  No, okay, that ... yeah, they're getting

19    a couple of hundred thousand more than I had.  No, a couple

20    of hundred more dollars than I had them listed for, but so

21    be it.  That's fine.  Okay, so, that just leaves Polsinelli.

22         MS. STADLER:  So, Polsinelli, the fact that we

23    have all the interim deductions listed below Polsinelli on

24    this exhibit --

25         THE COURT:  Right.

1          MS. STADLER:  -- indicates that they, when they

2     requested their final fee amount, requested all of the sum

3     of their interims without deducting the interim agreements

4     with the Fee Committee.  So, the $219,920 listed under Fee

5     Committee's interim fee adjustments, includes all the agreed

6     interim adjustments for periods 1 through 7 for Polsinelli,

7     and is deducted from the total request of two million six

8     hundred ... I'm sorry, it's $2,968,992.

9          So, the way this chart reads is:  $2,969,992 minus

10    $219,920, which is the interim.  The next column over is an

11    additional deduction of $8,384 for an error in the final fee

12    calculation.  And then, if you skip over to final fees

13    approved, that should be the result of that math.  We will

14    triple check it.

15         THE COURT:  Yeah, so, so I had ... I had them at

16    total fees requested of $2,960,608 ... $2,960,608, so about

17    ... oh, 8,000 off.  Maybe that's the 83, 84 issue.

18         MS. STADLER:  It might be the 83, 84.

19         THE COURT:  And that would give us finals of ...

20    that must be it, because my final actually lines up.  That's

21    the $9 difference on the final.  And then ...

22         MS. STADLER:  The other issue with Polsinelli that

23    is not reflected on this chart, not to make matters more

24    confusing, but their initial seventh interim fee period

25    request was an error.  So, the amount listed here under

1    Final Fees Documented, is what they ended up actually

2    substantiating that they were owed for the seventh interim

3    fee period rather than the amount that was on the face of

4    their interim application.

5              THE COURT:  But that should be reflected on ...

6    that should be reflected on Exhibit C ...

7              MS. STADLER:  Yes.

8              THE COURT:  B.

9              MS. STADLER:  Right.

10             THE COURT:  Which I did take account of.

11             MS. STADLER:  Okay.

12             THE COURT:  All right.  It's not enough to worry

13   about.  Who does that leave us with?  KPMG?

14             MS. STADLER:  I believe so.  Let me look.  KPMG

15   ... so, KPMG, because we only have the seventh interim

16   adjustments listed there, indicates that the $15,250,158.13

17   request already accounted for the interim deductions that we

18   agreed to with KPMG.  So, we deducted an additional $3,847

19   for the seventh interim fee period.  And then the final fee

20   figure in our column, the second to last column,

21   $15,247,311.03, should be the product, with the result, the

22   difference of those two numbers.

23             There were no further deductions for the final fee

24   period.  KPMG did not have final fee application preparation

25   time that they tacked on, that they had included all of that

1    in their original fee request.  And they didn't have a

2    success fee.  So, I'm a little bit at a loss to why we're

3    off, but we can figure it out.  I don't know of ...

4            THE COURT:  So, I had them -- I mean over the lie

5    of the case, I had them taking $90,860.39 in reductions on

6    fees.

7            MS. STADLER:  So, if you look at Footnote 50 ...

8    sorry, Footnote 7, it shows ... that might be where we're

9    off.  Their final fee requests already incorporated

10   $87,013.29 in interim fee reductions.  So, your number might

11   be the 87 plus the $3,847.

12           THE COURT:  Yeah, but the fees allowed number is

13   still too high.  That's what I ...

14           MS. STADLER:  All right, we'll go back and check

15   that.

16           THE COURT:  So, their fees allowed number ... is

17   off about $80,000.

18           MS. STADLER:  Okay.

19           THE COURT:  According to my calculations.  So,

20   maybe they said that and then they didn't actually do it.

21           MS. STADLER:  We attempted to verify all of those,

22   but again, we'll triple, quadruple check that and ...

23           THE COURT:  So, let's just figure KPMG out and

24   I'll look as well, but maybe you can just double check your

25   numbers as well.

1          MS. STADLER:  Yes, we will.

2          THE COURT:  And we'll communicate through Ms.

3     Werkheiser and figure it out.

4          MS. STADLER:  That works.

5          THE COURT:  Okay, all right.  So, I'll approve

6     everything except KPMG.

7          MS. STADLER:  Would you like me to strike them

8     from the exhibit or submit a revised exhibit?

9          THE COURT:  How does it look on the ... may I see

10    the order, the final order.

11         MS. STADLER:  Yes.

12         THE COURT:  And there was a small change to that.

13         MS. STADLER:  May I approach?

14         THE COURT:  Yeah.

15    (Pause)

16         THE COURT:  See, I've been keeping track.

17    (Pause)

18         THE COURT:  All right, Mr. Gitlin.  Sorry for the

19    holdup.

20         MR. GITLIN:  Good morning, Your Honor.

21         THE COURT:  Good morning.

22         MR. GITLIN:  Richard Gitlin, Chairman of the Fee

23    Committee.  Let me begin by saying, Your Honor has been very

24    effective at putting me out of business.

25         THE COURT:  (Laughs) Sorry.

1          MR. GITLIN:  And that's a compliment to the Court.

2     With your guidance we now have a confirmation of EFH, Samson

3     and (indiscernible).  And that was not an easy task.  What

4     I'd like to do today is just brief comments on two remaining

5     issues involving EFH.

6          THE COURT:  Okay.

7          MR. GITLIN:  As we've noted in the order, and we

8     discussed today, there have been agreements reached with

9     Lazard and Greenhill on their flat monthly fees.  And this

10    resulted from comments from Your Honor acknowledging that

11    this case had fits and starts that couldn't possibly, and

12    anticipated the beginning of the case.  And you requested

13    the Fee Committee look carefully at those periods of time

14    that might have been soft, where it might have been

15    inappropriate to pay these large monthly fees.  I'd just

16    like to commend Lazard and Greenhill for their

17    professionalism in dealing with us, identifying those areas

18    and agreeing with the Fee Committee.

19          We have also reached an agreement, in principle,

20    with Goldin, which will report to the Court when they do

21    their final fee application, but equally, professionalism

22    when dealing with the Fee Committee, Your Honor.

23          This afternoon, in fact, we have meetings

24    scheduled in New York with Evergreen and Guggenheim to

25    pursue discussions with them, and hopefully will be as

1     successful with them as we've been with the others, Your

2     Honor.

3              THE COURT:  Okay.

4              MR. GITLIN:  The only other key issue remaining,

5     which we've reserved in each of our reports with the

6     professionals, is rate increases, Your Honor.  We have

7     submitted some data from the Committee.  We've expressed our

8     concerns and we have scheduled some meetings to discuss that

9     issue.  And we'll be back to the Court to report on that,

10    Your Honor.

11             THE COURT:  Okay, very good.  Okay, I have signed

12    the interim and the final order striking KPMG.  We're going

13    to figure out where we are on that, and once that's

14    resolved, I'm going to be more than happy to sign that under

15    certification of counsel, and if you could just communicate

16    with Miss Werkheiser we'll see if we can reconcile.

17             I'll go back and check my math and try to figure

18    out where I come from, in coming from as well, and maybe I

19    can get that information to you through Miss Werkheiser, so

20    you can double check my numbers.

21             MS. STADLER:  Okay.  Thank you.

22             THE COURT:  I am spreadsheet challenged, so, do

23    the best I can.  Okay.  Anything else for today.  All right.

24    Thank you very much.  We're adjourned.

25                        * * * * *

Page 26

1                          I N D E X

2

3                              RULINGS

4    DESCRIPTION                              PAGE        LINE

5

6    All Interim and Final Fee Applications      23          5

7    Approved Except KPMG

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 27

1                    C E R T I F I C A T I O N

2

3         I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya Ledanski Hyde    Digitally signed by Sonya Ledanski Hyde
                            DN: cn=Sonya Ledanski Hyde, o, ou,
7                           email=digital1@veritext.com, c=US
                            Date: 2017.03.29 15:54:52 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  March 29, 2017