1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3

4

5   In re:                        :

                                  :    Chapter 11

6   ENERGY FUTURE HOLDINGS        :

    CORP., et al.,                :    Case No. 14-10979(CSS)

7                                 :

           Debtors.              :    (Jointly Administered)

8   _____ :

9

10

11

12

13                              United States Bankruptcy Court

14                              824 North Market Street

15                              Wilmington, Delaware

16

17                              April 17, 2017

18                              11:21 AM - 11:51 AM

19

20

21   B E F O R E :

22   HON CHRISTOPHER S. SONTCEHI

23   U.S. BANKRUPTCY JUDGE

24

25   ECR OPERATOR:  BRANDON MCCARTHY

Page 2

1    Eighth Amended Joint Plan of Reorganization of Energy Future

2    Holdings Corp., et al., Pursuant to Chapter 11 of the

3    Bankruptcy Code  [D.I. 10853; filed February 17, 2017] (as

4    amended, modified or supplemented from time to time, the

5    "Plan")

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sherri L. Breach

```
 1    A P P E A R A N C E S :

 2    KIRKLAND & ELLIS

 3         Attorney for the Debtors

 4

 5    BY:  CHAD HUSNICK, ESQ.

 6

 7    RICHARDS, LAYTON & FINGER

 8         Attorneys for the Debtors

 9

10    BY:  DANIEL J. DEFRANCESCHI, ESQ.

11         JASON MADRON, ESQ.

12

13    POTTER ANDERSON CARROON LLP

14         Attorney for Deutsche Bank New York

15

16    BY:  RYAN SLAUGH, ESQ.

17

18    SHEARMAN & STERLING, LLP

19         Attorneys for Deutsche Bank New York

20

21    BY:  FAY TELONI, ESQ.

22

23

24

25
```

1   PROSKAUER ROSE

2        Attorneys for EFH Corp.

3

4   BY:  PETER YOUNG, ESQ.

5        MARK THOMAS, ESQ.

6

7   BIELLI & KLAUDER

8        Attorneys for EFH Corp.

9

10   BY:  DAVID KLAUDER, ESQ.

11

12   VENABLE, LLP

13        Attorneys for Pimco

14

15   BY:  JEFFREY S. SABIN, ESQ.

16        JAMIE EDMONSON, ESQ.

17

18   CHADBOURNE & PARKE

19        Attorneys for NextEra Energy

20

21   BY:  ERIC DAUCHER, ESQ.

22        HOWARD SEIFE, ESQ.

23

24

25

1  PACHULSKI STANG ZIEHL & JONES

2       Attorney for Computershare

3

4  BY:  LAURA DAVIS JONES, ESQ.

5

6  KRAMER LEVIN NAFTALIS & FRANKEL

7       Attorneys for Computershare

8

9  BY:  GREGORY HOROWITZ, ESQ.

10

11  SULLIVAN & CROMWELL

12       Attorney for E-Side Committee

13

14  BY:  ALEXA KEASNEY, ESQ.

15

16  MONTGOMERY MCCRACKEN WALKER & RHOADS LLP

17       Attorney for E-Side Committee

18

19  BY:  NATALIE RAMSEY, ESQ.

20

21  KLEHR HARRISON HARVEY BRANZBURG LLP

22       Attorney for UMB Bank, Indenture Trustee

23

24  BY:  RAYMOND H. LEMISCH, ESQ.

25

```
 1   LANDIS, RATH & COBB
 2         Attorneys for Nextera
 3
 4   BY:  JOSEPH WRIGHT, ESQ.
 5
 6   STEVENS & LEE, P.C.
 7         Attorneys for EFIH Independent Members
 8
 9   BY:  JOSEPH H. HUSTON, JR., ESQ.
10
11   COLE SCHOTZ
12         Attorneys for First Lien Trustee
13
14   BY:  NORMAN PERNICK, ESQ.
15
16   KELLY ERNST
17         Attorneys for Fidelity
18
19   BY:  MICHAEL JOYCE, ESQ.
20
21   GODFREY & KAHN, S.C.
22         Attorneys for Fee Committee
23
24   BY:  BRADY WILLIAMSON, ESQ.
25
```

1                 P R O C E E D I N G S

2           THE CLERK:  All rise.

3           THE COURT:  Please be seated.  Good morning.

4           MR. HUSNICK:  Good morning, Your Honor.

5           THE COURT:  Give me just a second.

6        (Pause)

7           THE COURT:  Okee dokee.

8           MR. HUSNICK:  Good morning, again, Your Honor.

9     Chad Husnick with Kirkland & Ellis appearing on behalf of

10    the EFH and EFIH debtors and the rest of the debtors, quite

11    frankly.

12           This morning, Your Honor, we thought it would be

13    wise to use our regularly scheduled omnibus hearing to give

14    Your Honor and the rest of the parties in interest a status

15    update since the confirmation hearing.

16           Your Honor, as the parties may recall we held --

17    we began a merits hearing on the Encore and NextEra

18    application for a change of control in connection with the

19    NextEra merger on February 21st.  That was very shortly

20    after the file -- the confirmation of the EFH and EFIH plan.

21           The debtors are not a party to that application.

22    Instead, the application is filed by Encore and by NextEra.

23           On March 30th at an open meeting the PUCT, that is

24    the regulatory body in the State of Texas, unanimously

25    stated that they planned to issue an order finding that the

1    NextEra merger was not in the public interest.  Commissioner

2    Anderson, one of the three commissioners, also noted at that

3    open meeting on March 30th that the record had been closed

4    and that the PUCT could not consider any new arguments or

5    changes to the deal or deal sweeteners.  That was largely

6    driven by the fact that there was an April 28th statutory

7    deadline for the PUCT to rule, and any such changes would

8    run headlong into due process considerations with hitting

9    that deadline.

10         Not surprisingly on April 13th, Your Honor, the

11   PUCT entered an order consistent with their March 30th

12   comments formally finding that the NextEra transaction was

13   not in the public interest.  The finding in the order

14   indicated that the ruling was primarily the result of three

15   key issues.

16         The first issue, Your Honor, is ring fencing.

17   Encore is currently ring fenced.  It has an independent

18   board of directors and it is operated, financed and managed

19   independently from EFH and EFIH.  The ring fencing, as Your

20   Honor is aware, was created as part of the 2007 LBO and it

21   allowed Encore at that time to maintain its investment grade

22   credit rating following the 2007 LBO in the imposition of

23   the debt both on the T-side and at EFH.

24         NextEra, as the parent of the merged company,

25   wanted to be able to appoint, remove and replace directors

1    on the Encore board.  The PUCT for its part wanted, and the

2    PUCT staff wanted the board to be self-sustaining, meaning

3    that the directors on the board could only be removed or

4    replaced at the direction of the Encore board itself.

5         The second issue raised in the PUCT's order was

6    dividend restrictions.  To approve the PU -- or to approve

7    the change and control application the PUCT would have

8    required significant restrictions on upstream dividends,

9    including the vesting of complete authority over dividend

10   policy with the majority independent and disinterested

11   Encore board.

12        The third issue is what we call credit linking.

13   The PUCT would have required, in order to approve the deal,

14   implementation of various safeguards to ensure that Encore

15   and NextEra's credit link -- credit ratings were delinked.

16   That is to say that a NextEra downgrade, if one were to ever

17   occur, would not lead to an Encore downgrade.

18        These three issues were embodied in the order that

19   was entered on April 13th and on Friday, I believe, the

20   Texas Attorney General entered the order on Your Honor's

21   docket as a courtesy at Docket Number 11152.

22        THE COURT:  Yes.  And I have read it.

23        MR. HUSNICK:  Thank you, Your Honor.

24        The purpose of our status update this morning is

25   to give the debtors' reaction to the ruling and layout, Your

1    Honor, a road map for moving forward in these Chapter 11

2    cases.

3            The debtors were very disappointed and very

4    surprised at the result.  We obviously believed that the

5    NextEra deal presents the highest and best alternative, and

6    continues to present the highest and best alternative for

7    bringing these Chapter 11 cases to an end.

8            The deal killers, as they're noted in colloquy at

9    the hearing, are primarily driven by the absolute

10   requirement that Encore's board remain self-sustaining.  In

11   other words, not granting NextEra the ability to appoint,

12   remove and replace Encore's board even though its public

13   shareholders would fully expect that there would be adequate

14   control when there's nearly $12 billion of equity investment

15   being made into Encore.

16           In 2007 the ring fencing was primarily the product

17   of two factors.  First, the fact that EFH and EF -- its

18   competitive affiliates, that's the T-side, their credit

19   rating following the LBO was going to be of the non-

20   investment grade standard.

21           Second, Encore needed to maintain that investment

22   grade rating in order to have access to funds.  So the

23   credit rating agencies decided and demanded, in fact, that

24   there be an ironclad ring fence between EFH and Encore at

25   the time of the LBO.  That is, to allow Encore to maintain a

1    -- an investment grade credit rating while EFH debt was, in

2    effect, junk.

3              This ring fence between EFH and Encore including

4    the self-sustaining Encore board of directors was required

5    to maintain that credit rating following the LBO.  The

6    circumstances here, Your Honor, under the NextEra

7    transaction, we believe, are quite different.

8              As acknowledged by the PUCT NextEra, including its

9    competitive affiliates, are solidly investment grade.  In

10   fact, their rating is three to four notches above the non-

11   investment grade for Moody's and S&P respectively.

12             S&P characterizes entities within NextEra's

13   investment rating as holding "strong capacity to meet its

14   financial commitments."  Moody's characterization assesses

15   "moderate" and "risk -- credit risk" to institutions within

16   NextEra's risk basket.

17             Another reason is NextEra is inarguably -- another

18   reason it's different, NextEra is inarguably an experienced

19   utility operator with over a 90 year history of safely,

20   effectively and efficiently operating a large scale utility

21   in the transmission and distribution business.

22             The credit rating agencies, unlike in the 2007

23   LBO, are not insisting that Encore remain ring fenced in the

24   same manner as was required in the 2007 order approving the

25   LBO transaction.  In fact, the evidence at the PUCT hearing

1    suggested that the credit agencies were going to raise

2    Encore's credit rating as a result of the deal.

3             We are continuing to review the precedent

4    regarding ring fencing transactions.  But our initial

5    findings indicate, Your Honor, that such an impenetrable

6    ring fence in response to ownership by an experienced,

7    investment grade parent simply does not exist in Texas or

8    anywhere else in the United States.

9             At the same time, Your Honor, we believe that the

10   NextEra deal would serve the public interest of Texas by

11   ensuring that Encore would be owned by one of the most

12   established utility operators in the country with a $62

13   billion public market capitalization and a financial

14   incentive behind supporting Encore and that takes the form

15   of a $12 billion equity commitment.

16            Your Honor, that takes me to next steps.  We

17   understand that the stakeholders and parties in interest are

18   concerned about next steps in preserving value at EFH and

19   EFIH as is our duty.  Both the debtors and NextEra are

20   evaluating all viable next steps in connection with the PUCT

21   process and we understand that NextEra remains committed to

22   closing the merger transaction to the extent possible.  And

23   the debtors also remain so committed.

24            The debtors are more focused now than ever on

25   increasing and maximizing value.  We have a few options

1    available, Your Honor, and we continue to explore all of

2    these options.

3            For example, the parties are considering all of

4    their options for judicial review of the PUCT order.  This

5    may include, among other things, filing a motion for

6    rehearing.  That's, in effect, a regulatory appeal to the

7    PUCT.  And it could also include potentially utilizing the

8    appellate process provided by the Texas court system.

9            Because NextEra and Encore were the applicants

10   here the debtors are evaluating their options for

11   participating in those processes, including potentially

12   filing an AMICUS brief on behalf of the movants, or the

13   applicants.

14           Your Honor, at the same time NextEra is still

15   working on a potential settlement.  We understand that

16   NextEra is engaged with the PUCT interveners, including the

17   PUCT staff in an effort to try and reach a settlement.  And

18   the debtors will continue to work with NextEra on that front

19   as well.

20           Any successful and global settlement will likely

21   require economic and non-economic concessions related to the

22   PUCT's ring fencing requirements.  We are cognizant that any

23   resolution that results in a reduction in the merger price,

24   so that is the purchase price for the reorganized EFH assets

25   or stock, may require us to come back to Your Honor with a

1    modified disclosure statement and plan and seek an

2    unprecedented fourth, I think, confirmation hearing.

3            We also may need to revisit and revise certain

4    elements of the PLR process.  That's the private letter

5    ruling process with the IRS, and we cannot predict, as I

6    stand here today, exactly how long that would take.  It

7    would really depend on what the nature of any modifications

8    would be.

9            So it's difficult for me to predict, Your Honor,

10   as I stand here exactly how long the disclosure statement

11   and plan process could take, or how contentious that process

12   could be until we have a little bit more direction on

13   exactly what we're doing.  But we are working with NextEra

14   and creditors on that goal.

15           A number of parties in interest are concerned and

16   are asking a lot of questions about the next steps and

17   obligations under the NextEra agreement and related

18   agreements, including the Encore letter agreement.

19           For example, we understand that Encore is

20   considering terminating the Encore letter agreement because

21   Encore is concerned that operational restrictions may not be

22   appropriate in light of the PUCT denial of the NextEra

23   application.

24           At this time the debtors are still subject to the

25   NextEra agreement and the other related agreements remain in

1    effect.  The debtors will comply or will continue to comply

2    with the terms of these agreements.  The debtors are

3    committed and are focused on maximizing value and will work

4    with all of their stakeholders and other parties in interest

5    to accomplish that goal as quickly as possible.  We believe

6    that it makes most sense for parties to work together with

7    the debtors and not take any rash courses of action that

8    could harm either the debtors or their estates.

9              Your Honor, simultaneously with pursuing the

10   NextEra deal we are pursuing and starting to reengage with

11   the EFH and EFIH creditor constituencies and potentially

12   other parties in interest regarding a backup proposal.  This

13   is a process that is expressly contemplated under the

14   NextEra merger agreement, expressly contemplated and

15   permitted.

16             The structure of a backup proposal is very

17   difficult to predict.  Finding another strategic, for

18   example, it will come as no surprise to Your Honor that it

19   would be difficult to find another willing purchaser for

20   EFH's economic interests in Encore particularly one who is

21   willing to commit a significant equity contribution while

22   passively owning Encore and living with the now existing or

23   perhaps even more strenuous ring fence.

24             That may leave equitization as the only option.

25   In the absence of a strategic purchaser, the debtors would

1    be forced to pursue equitization in which creditors would

2    convert their claims into reorganized EFH equity and EFH

3    creditors, once again, would receive the cash that's set

4    forth at -- or that's on hand at EFH.

5             But a full equitization of all outstanding EFIH

6    and EFH claim -- or EFIH claims is not possible without full

7    consensus.  There's a couple of big hurdles in here that we

8    would like to highlight.

9             First, the EFIH DIP.  The EFIH DIP has a looming

10   maturity of June 30th.  We do have the ability under an

11   amendment that Your Honor approved late last year to further

12   extend the EFIH DIP from June 30th through the end of

13   December.  We do have to pay a fee in connection with that

14   extension, but we believe that the -- while the debtors are

15   likely to continue to develop consensus and expedite their

16   time line to the fullest extent possible, we believe we will

17   likely have to exercise that extension option if the NextEra

18   transaction does not close.

19            Importantly, with respect to the DIP, we can't

20   equitize a DIP without DIP lender consent.  So under the

21   terms of the DIP we can't equitize the one or the $5.5

22   billion of outstanding obligations under the DIP without the

23   consent.  So we will have to raise at least $5.5 billion of

24   funds to pay the EFIH DIP facility in full in cash.  That is

25   a large equity commitment hurdle that we would have to

1    overcome regardless of who or what path we go in an

2    equitization transaction.

3          Another hurdle, Your Honor, is the over $3 billion

4    of secured claims, and that amount continues to arise as

5    interest accrues on the first lien make hole claim, the

6    second lien make hole claim, the second lien principal and

7    interest on all of the above.

8          EFIH faces, as I said, about $3 billion of secured

9    claim as of April 30th, 2017.  The debtors will work to

10   develop consensus on an expedite -- on an equitization plan

11   if need be, but there's no doubt that providing equity

12   secured creditors presents certain confirmation challenges

13   under the Bankruptcy Code.  Under the Code it is very

14   difficult to confirm a plan of reorganization that provides

15   equity to secured creditors without their consent.

16         So, in short, while the debtors believe they may

17   be able to consummate -- would be able to consummate an

18   equitization plan if the circumstances required that, it's

19   not an easy path.  At a minimum EFH would have to raise

20   enough cash to pay the EFIH DIP in full, 5.4 or $5.5

21   billion, develop consensus with at least one tranche of the

22   secured creditors regarding converting their secured claims

23   into reorganized EFIH equity and successfully pay off or

24   obtain confirmation over the objection of the remaining

25   tranche of secured creditors.  That's in the absence of full

1    consensus.

2          Where does that leave us?  It bears repeating,

3    Your Honor, that NextEra and the debtors are committed to

4    reviving the NextEra deal if at all possible.  That is, the

5    debtors and NextEra's current focus.  As facts develop the

6    debtors very well may have to return to the drawing board on

7    a new path to exit.  And we'll keep Your Honor and everyone

8    else involved aware of these developments.

9          Until that time, however, it is prudent for all

10   parties to work together to explore all possible solutions

11   now that the PUCT has ruled.  It does not make sense for the

12   parties to act independently risking harm to the debtors or

13   their estates.

14         If the debtors do have to return to the drawing

15   board the debtors will, as they have done many times in the

16   past already in these Chapter 11 cases take the challenge

17   head on and work closely with our stakeholders and with all

18   other parties in interest and most importantly, Your Honor,

19   with you to address all of the issues and give everyone an

20   opportunity to be heard both formally and informally.

21         Your Honor, that concludes the status update

22   unless Your Honor has any questions.

23         THE COURT:  I have no questions from you.  Does

24   anyone else wish to comment on the current status, and not

25   commenting is certainly okay.

1          Mr. Seife.

2          MR. SEIFE:  Good morning, Your Honor.  Howard

3    Seife, Chadbourne & Parke representing NextEra.  I think Mr.

4    Husnick did an excellent job setting forth the current

5    status for Your Honor.  I would just emphasize that NextEra

6    was also very disappointed and surprised by the ruling by

7    the PUCT.  We remain committed to the transaction and the

8    merger agreement, and we're exploring every alternative and

9    action to try to resuscitate the deal.

10         So we continue to work very closely with the

11   debtors and we will certainly keep the Court apprised of

12   developments as they transpire.

13         THE COURT:  Okay.  Thank you.

14         Thank you very much for the update.  I would offer

15   a few comments.

16         Again, I read what was filed publicly by the PUCT

17   on this Court's docket, which was the order and I've heard

18   and listened to Mr. Husnick's comments very carefully.

19         First and foremost, I preface my comments with a

20   statement and acknowledgment of the authority and

21   jurisdiction of the PUCT to decide issues in front of it

22   based on the evidence and law that governs actions by the

23   PUCT.

24         The current plan in front of the court that was

25   confirmed specifically provides that the approval of the

1  PUCT is a condition precedent to the plan going effective,

2  and that is what it is and we are where we are in connection

3  with that piece of it.

4         Having said that, there were a couple comments in

5  the order or implications in the order that I think might be

6  at conflict with the interests that the -- this Court is

7  worried about, which is the running of the Chapter 11 case

8  and the recovery to the EFH and EFIH creditors.

9         First, there appears to be a concern that there

10  were insufficient funds or consideration being provided to

11  the rate payers.  To that I would say that my understanding

12  is that there is only so much money in any deal and there is

13  only so much money in the NextEra deal that is in front of

14  this court, and that the distribution of that consideration

15  among the EFIH and EFH creditors is a result of the law

16  governing waterfalls of distributions in plans that are

17  subject to confirmation as well as negotiations.

18         And it's unclear to me -- it's less than clear to

19  me that taking consideration away from EFIH or EFH creditors

20  potentially in order to provide consideration to Encore rate

21  payers is consistent with the federal bankruptcy law.  And

22  that will have to await further development.

23         But the Court is concerned with a requirement by

24  the PUCT to get its approval that takes, potentially takes

25  money away from the creditors of the bankrupt estate.  And

1    we'll just have to see how that plays out, but I -- that

2    concerns me.

3              There also appears to be a underlying sort of

4    theme which is that the court, or excuse me, the PUCT seems

5    unconcerned with the resolution of the bankruptcy estate as

6    a factor in making its determination.  And I find that

7    concerning because it is extremely important to resolve the

8    Chapter 11 case and it's important to do it sooner rather

9    than later.

10             The sustainability of this case is not indefinite

11   and it cannot run indefinitely.  Bankruptcy costs are high,

12   of course.  But if you need to understand the importance of

13   a decision being made sooner rather than later all you have

14   to look at is the EFIH DIP, five and a half billion dollars

15   which becomes mature on June 30th.  And even on an

16   extension, if one is sought and the debtors have that right,

17   is not an indefinite extension.  This case cannot stay under

18   its status quo indefinitely.

19             That's not say we're at a risk of a crisis in this

20   case in the next day, weeks, months even.  The case is

21   continuing to run.  It is not administratively insolvent.

22   But it -- the status quo cannot run indefinitely.  And I

23   think it's important for all parties at all levels to be

24   aware of that fact and to take that into account when making

25   decisions.

1          I would highly endorse Mr. Husnick's encouragement

2     that parties work together, together constructively with the

3     debtors to try to seek a resolution of these cases going

4     forward.  This case is in a delicate position.  I think that

5     it is to the benefit of all the parties in interest in the

6     bankruptcy case to work constructively with the debtors to

7     find a path forward, and that a course of action independent

8     of the current status would probably be value destructive.

9          That said, of course, creditors and parties in

10    interest have their rights.  They can take the actions they

11    deem appropriate and the Court will consider any motions or

12    applications in front of it according to the controlling law

13    and based on the evidence.  And you don't need me to tell

14    you how to strategize your case.

15         However, I would encourage, having said all that,

16    the parties to continue to work constructively with the

17    debtors on a path forward.

18         The equitization plan has some advantages,

19    arguably eliminates the requirement for PUCT approval, but

20    has significant challenges, as Mr. Husnick pointed out, the

21    largest of which, of course, is what do you do with this

22    five and a half billion dollar DIP, what do you do with $3

23    billion in secured claims, and how do you equitize that on a

24    consensual or non-consensual basis.

25         I can tell you to believe that the deal I

1    confirmed is the highest and best deal available for these

2    debtors and maximizes recovery to creditors of the E-side

3    debtors.  I think that any alternative to what was

4    confirmed, whether it be because of ongoing ring fencing

5    requirements or alternative deals, et cetera, at the end of

6    the day are probably value destructive for the estate.  And

7    that is highly unfortunate.

8           But we are where we are and we'll deal with the

9    hand that has been dealt us the best we can.  At the end of

10   the day the best thing, news for me is it's not my job to

11   fix this problem.  There are incredibly talented attorneys

12   and financial professionals and sophisticated clients that

13   will figure out the path forward.  All I can do is decide

14   issues that are brought in front of me which I will continue

15   to do and make myself available.  But hopefully the path

16   forward will become together quickly and constructively

17   under the debtors' sort of toolage working with the

18   stakeholders.

19          But I will continue to await developments, and if

20   anyone needs relief from the court you know where we are and

21   I will make myself available as quickly as possible, of

22   course, but always with the important caveat of the process

23   -- due process needing to be met.

24          But I'm here if you need me.

25          MR. HUSNICK:  Thank you, Your Honor.

1          THE COURT:  All right.  Anybody have any further

2    comment or issue before the Court today?

3          Okay.  I hear none.  We're adjourned.

4          Thank you.

5      (Whereupon these proceedings were concluded at 11:51

6    AM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    I N D E X

2

3                   R U L I N G S

4                                              PAGE

5  Eighth Amended Joint Plan of Reorganization of

6  Energy Future Holdings Corp., et al., Pursuant to

7  Chapter 11 of the Bankruptcy Code  [D.I. 10853;

8  filed February 17, 2017] (as amended, modified

9  or supplemented from time to time, the "Plan")      --

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                  C E R T I F I C A T I O N

2

3       I, Sherri L. Breach, certify that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sherri L.
     Breach

       Digitally signed by Sherri L. Breach
       DN: cn=Sherri L. Breach, o=Veritext,
       ou, email=digital@veritext.com,
       c=US
7    _____ Date: 2017.04.18 11:52:54 -04'00'

8    Sherri L. Breach

9    AAERT Certified Electronic Reporter & Transcriber CERT*D-397

10

11

12   Date:  April 18, 2017

13

14

15

16

17

18

19

20

21

22    Veritext Legal Solutions

23    330 Old Country Road

24    Suite 300

25    Mineola, NY 11501

**&**

**&** 3:2,7,18 4:7,18
5:1,6,11,16 6:1,6
6:21 7:9 19:3 26:9

**1**

**10853** 2:3 25:7
**11** 1:5 2:2 10:1,7
18:16 20:7 21:8
25:7
**11152** 9:21
**11501** 26:25
**11:21** 1:18
**12** 10:14 12:15
**13th** 8:10 9:19
**14-10979** 1:6
**17** 1:17 2:3 25:8
**18** 26:12

**2**

**2007** 8:20,22
10:16 11:22,24
**2017** 1:17 2:3 17:9
25:8 26:12
**21st** 7:19
**28th** 8:6

**3**

**3** 17:3,8 22:22
**300** 26:24
**30th** 7:23 8:3,11
16:10,12 17:9
21:15
**330** 26:23
**397** 26:9

**5**

**5.4** 17:20
**5.5** 16:21,23 17:20

**6**

**62** 12:12

**8**

**824** 1:14

**9**

**90** 11:19

**a**

**aaert** 26:9
**ability** 10:11
16:10
**able** 8:25 17:17,17
**absence** 15:25
17:25
**absolute** 10:9
**access** 10:22
**accomplish** 15:5
**account** 21:24
**accrues** 17:5
**accurate** 26:4
**acknowledged** 11:8
**acknowledgment** 19:20
**act** 18:12
**action** 15:7 19:9 22:7
**actions** 19:22 22:10
**address** 18:19
**adequate** 10:13
**adjourned** 24:3
**administered** 1:7
**administratively** 21:21
**advantages** 22:18
**affiliates** 10:18 11:9
**agencies** 10:23 11:22 12:1
**agreement** 14:17 14:18,20,25 15:14 19:8
**agreements** 14:18 14:25 15:2
**al** 1:6 2:2 25:6
**alexa** 5:14

**allow** 10:25
**allowed** 8:21
**alternative** 10:5,6 19:8 23:3,5
**amended** 2:1,4 25:5,8
**amendment** 16:11
**amicus** 13:12
**amount** 17:4
**anderson** 3:13 8:2
**anybody** 24:1
**appeal** 13:6
**appearing** 7:9
**appears** 20:9 21:3
**appellate** 13:8
**applicants** 13:9 13:13
**application** 7:18 7:21,22 9:7 14:23
**applications** 22:12
**appoint** 8:25 10:11
**apprised** 19:11
**appropriate** 14:22 22:11
**approval** 19:25 20:24 22:19
**approve** 9:6,6,13
**approved** 16:11
**approving** 11:24
**april** 1:17 8:6,10 9:19 17:9 26:12
**arguably** 22:19
**arguments** 8:4
**asking** 14:16
**assesses** 11:14
**assets** 13:24
**attorney** 3:3,14 5:2,12,17,22 9:20
**attorneys** 3:8,19 4:2,8,13,19 5:7 6:2,7,12,17,22

23:11
**authority** 9:9 19:20
**available** 13:1 23:1,15,21
**await** 20:22 23:19
**aware** 8:20 18:8 21:24

**b**

**b** 1:21
**back** 13:25
**backup** 15:12,16
**bank** 3:14,19 5:22
**bankrupt** 20:25
**bankruptcy** 1:1 1:13,23 2:3 17:13 20:21 21:5,11 22:6 25:7
**based** 19:22 22:13
**basis** 22:24
**basket** 11:16
**bears** 18:2
**began** 7:17
**behalf** 7:9 13:12
**believe** 9:19 11:7 12:9 15:5 16:14 16:16 17:16 22:25
**believed** 10:4
**benefit** 22:5
**best** 10:5,6 23:1,9 23:10
**bielli** 4:7
**big** 16:7
**billion** 10:14 12:13,15 16:22,23 17:3,8,21 21:14 22:22,23
**bit** 14:12
**board** 8:18 9:1,2,3 9:4,11 10:10,12 11:4 18:6,15
**body** 7:24

**brady** 6:24
**brandon** 1:25
**branzburg** 5:21
**breach** 2:25 26:3
  26:8
**brief** 13:12
**bringing** 10:7
**brought** 23:14
**business** 11:21

**c**

**c** 3:1 7:1 26:1,1
**call** 9:12
**capacity** 11:13
**capitalization**
  12:13
**carefully** 19:18
**carroon** 3:13
**case** 1:6 20:7 21:8
  21:10,17,20,20
  22:4,6,14
**cases** 10:2,7 18:16
  22:3
**cash** 16:3,24
  17:20
**caveat** 23:22
**cert** 26:9
**certain** 14:3 17:12
**certainly** 18:25
  19:11
**certified** 26:9
**certify** 26:3
**cetera** 23:5
**chad** 3:5 7:9
**chadbourne** 4:18
  19:3
**challenge** 18:16
**challenges** 17:12
  22:20
**change** 7:18 9:7
**changes** 8:5,7
**chapter** 1:5 2:2
  10:1,7 18:16 20:7
  21:8 25:7

**characterization**
  11:14
**characterizes**
  11:12
**christopher** 1:22
**circumstances**
  11:6 17:18
**claim** 16:6 17:5,6
  17:9
**claims** 16:2,6 17:4
  17:22 22:23
**clear** 20:18
**clerk** 7:2
**clients** 23:12
**close** 16:18
**closed** 8:3
**closely** 18:17
  19:10
**closing** 12:22
**cobb** 6:1
**code** 2:3 17:13,13
  25:7
**cognizant** 13:22
**cole** 6:11
**colloquy** 10:8
**come** 13:25 15:18
**comment** 18:24
  24:2
**commenting**
  18:25
**comments** 8:12
  19:15,18,19 20:4
**commissioner** 8:1
**commissioners**
  8:2
**commit** 15:21
**commitment**
  12:15 16:25
**commitments**
  11:14
**committed** 12:21
  12:23 15:3 18:3
  19:7

**committee** 5:12
  5:17 6:22
**company** 8:24
**competitive** 10:18
  11:9
**complete** 9:9
**comply** 15:1,1
**computershare**
  5:2,7
**concern** 20:9
**concerned** 12:18
  14:15,21 20:23
**concerning** 21:7
**concerns** 21:2
**concessions** 13:21
**concluded** 24:5
**concludes** 18:21
**condition** 20:1
**confirm** 17:14
**confirmation** 7:15
  7:20 14:2 17:12
  17:24 20:17
**confirmed** 19:25
  23:1,4
**conflict** 20:6
**connection** 7:18
  12:20 16:13 20:2
**consensual** 22:24
  22:24
**consensus** 16:7,15
  17:10,21 18:1
**consent** 16:20,23
  17:15
**consider** 8:4
  22:11
**consideration**
  20:10,14,19,20
**considerations**
  8:8
**considering** 13:3
  14:20
**consistent** 8:11
  20:21

**constituencies**
  15:11
**constructively**
  22:2,6,16 23:16
**consummate**
  17:17,17
**contemplated**
  15:13,14
**contentious** 14:11
**continue** 13:1,18
  15:1 16:15 19:10
  22:16 23:14,19
**continues** 10:6
  17:4
**continuing** 12:3
  21:21
**contribution**
  15:21
**control** 7:18 9:7
  10:14
**controlling** 22:12
**convert** 16:2
**converting** 17:22
**corp** 1:6 2:2 4:2,8
  25:6
**costs** 21:11
**country** 12:12
  26:23
**couple** 16:7 20:4
**course** 21:12 22:7
  22:9,21 23:22
**courses** 15:7
**court** 1:1,13 7:3,5
  7:7 9:22 13:8
  18:23 19:11,13,24
  20:6,14,23 21:4
  22:11 23:20 24:1
  24:2
**court's** 19:17
**courtesy** 9:21
**created** 8:20
**credit** 8:22 9:12
  9:15,15 10:18,23

11:1,5,15,22 12:1
12:2
**creditor** 15:11
**creditors** 14:14
16:1,3 17:12,15
17:22,25 20:8,15
20:19,25 22:9
23:2
**crisis** 21:19
**cromwell** 5:11
**css** 1:6
**current** 18:5,24
19:4,24 22:8
**currently** 8:17

**d**

**d** 7:1 25:1 26:9
**d.i.** 2:3 25:7
**daniel** 3:10
**date** 26:12
**daucher** 4:21
**david** 4:10
**davis** 5:4
**day** 21:20 23:6,10
**deadline** 8:7,9
**deal** 8:5,5 9:13
10:5,8 12:2,10
15:10 18:4 19:9
20:12,13 22:25
23:1,8
**deals** 23:5
**dealt** 23:9
**debt** 8:23 11:1
**debtors** 1:7 3:3,8
7:10,10,21 9:25
10:3 12:19,23,24
13:10,18 14:24
15:1,2,7,8,25
16:14 17:9,16
18:3,5,6,12,14,15
19:11 21:16 22:3
22:6,17 23:2,3,17
**december** 16:13

**decide** 19:21
23:13
**decided** 10:23
**decision** 21:13
**decisions** 21:25
**deem** 22:11
**defranceschi** 3:10
**delaware** 1:2,15
**delicate** 22:4
**delinked** 9:15
**demanded** 10:23
**denial** 14:22
**depend** 14:7
**destructive** 22:8
23:6
**determination**
21:6
**deutsche** 3:14,19
**develop** 16:15
17:10,21 18:5
**development**
20:22
**developments**
18:8 19:12 23:19
**different** 11:7,18
**difficult** 14:9
15:17,19 17:14
**dip** 16:9,9,12,19
16:20,20,21,22,24
17:20 21:14 22:22
**direction** 9:4
14:12
**directors** 8:18,25
9:3 11:4
**disappointed** 10:3
19:6
**disclosure** 14:1,10
**disinterested** 9:10
**distribution** 11:21
20:14
**distributions**
20:16

**district** 1:2
**dividend** 9:6,9
**dividends** 9:8
**docket** 9:21,21
19:17
**doing** 14:13
**dokee** 7:7
**dollar** 22:22
**dollars** 21:14
**doubt** 17:11
**downgrade** 9:16
9:17
**drawing** 18:6,14
**driven** 8:6 10:9
**due** 8:8 23:23
**duty** 12:19

**e**

**e** 1:21,21 3:1,1
5:12,17 7:1,1 23:2
25:1 26:1
**easy** 17:19
**economic** 13:21
13:21 15:20
**ecr** 1:25
**edmonson** 4:16
**ef** 10:17
**effect** 11:2 13:6
15:1
**effective** 20:1
**effectively** 11:20
**efficiently** 11:20
**effort** 13:17
**efh** 4:2,8 7:10,20
8:19,23 10:17,24
11:1,3 12:18
13:24 15:11 16:2
16:2,4,6 17:19
20:8,15,19
**efh's** 15:20
**efih** 6:7 7:10,20
8:19 12:19 15:11
16:5,6,9,9,12,24
17:8,20,23 20:8

20:15,19 21:14
**eighth** 2:1 25:5
**either** 15:8
**electronic** 26:9
**elements** 14:4
**eliminates** 22:19
**ellis** 3:2 7:9
**embodied** 9:18
**emphasize** 19:5
**encore** 7:17,22
8:17,21 9:1,4,11
9:14,17 10:15,21
10:24,25 11:3,4
11:23 12:11,14
13:9 14:18,19,20
14:21 15:20,22
20:20
**encore's** 10:10,12
12:2
**encourage** 22:15
**encouragement**
22:1
**endorse** 22:1
**energy** 1:6 2:1
4:19 25:6
**engaged** 13:16
**ensure** 9:14
**ensuring** 12:11
**entered** 8:11 9:19
9:20
**entities** 11:12
**equitization** 15:24
16:1,5 17:2,10,18
22:18
**equitize** 16:20,21
22:23
**equity** 10:14
12:15 15:21 16:2
16:25 17:11,15,23
**eric** 4:21
**ernst** 6:16
**esq** 3:5,10,11,16
3:21 4:4,5,10,15

4:16,21,22 5:4,9
5:14,19,24 6:4,9
6:14,19,24
**established** 12:12
**estate** 20:25 21:5
23:6
**estates** 15:8 18:13
**et** 1:6 2:2 23:5
25:6
**evaluating** 12:20
13:10
**evidence** 11:25
19:22 22:13
**exactly** 14:6,10,13
**example** 13:3
14:19 15:18
**excellent** 19:4
**excuse** 21:4
**exercise** 16:17
**exist** 12:7
**existing** 15:22
**exit** 18:7
**expect** 10:13
**expedite** 16:15
17:10
**experienced**
11:18 12:6
**explore** 13:1
18:10
**exploring** 19:8
**expressly** 15:13
15:14
**extend** 16:12
**extension** 16:14
16:17 21:16,17
**extent** 12:22
16:16
**extremely** 21:7

**f**

**f** 1:21 26:1
**faces** 17:8
**facility** 16:24

**fact** 8:6 10:17,23
11:10,25 21:24
**factor** 21:6
**factors** 10:17
**facts** 18:5
**fay** 3:21
**february** 2:3 7:19
25:8
**federal** 20:21
**fee** 6:22 16:13
**fence** 10:24 11:3
12:6 15:23
**fenced** 8:17 11:23
**fencing** 8:16,19
10:16 12:4 13:22
23:4
**fidelity** 6:17
**figure** 23:13
**file** 7:20
**filed** 2:3 7:22
19:16 25:8
**filing** 13:5,12
**financed** 8:18
**financial** 11:14
12:13 23:12
**find** 15:19 21:6
22:7
**finding** 7:25 8:12
8:13 15:17
**findings** 12:5
**finger** 3:7
**first** 6:12 8:16
10:17 16:9 17:5
19:19 20:9
**five** 21:14 22:22
**fix** 23:11
**focus** 18:5
**focused** 12:24
15:3
**following** 8:22
10:19 11:5
**forced** 16:1

**foregoing** 26:3
**foremost** 19:19
**form** 12:14
**formally** 8:12
18:20
**forth** 16:4 19:4
**forward** 10:1 22:4
22:7,17 23:13,16
**four** 11:10
**fourth** 14:2
**frankel** 5:6
**frankly** 7:11
**friday** 9:19
**front** 13:18 19:21
19:24 20:13 22:12
23:14
**full** 16:5,6,24
17:20,25
**fullest** 16:16
**fully** 10:13
**funds** 10:22 16:24
20:10
**further** 16:11
20:22 24:1
**future** 1:6 2:1
25:6

**g**

**g** 7:1 25:3
**general** 9:20
**give** 7:5,13 9:25
18:19
**global** 13:20
**go** 17:1
**goal** 14:14 15:5
**godfrey** 6:21
**going** 10:19 12:1
20:1 22:3
**good** 7:3,4,8 19:2
**governing** 20:16
**governs** 19:22
**grade** 8:21 10:20
10:22 11:1,9,11
12:7

**granting** 10:11
**gregory** 5:9

**h**

**h** 5:24 6:9
**half** 21:14 22:22
**hand** 16:4 23:9
**harm** 15:8 18:12
**harrison** 5:21
**harvey** 5:21
**head** 18:17
**headlong** 8:8
**hear** 24:3
**heard** 18:20 19:17
**hearing** 7:13,15
7:17 10:9 11:25
14:2
**held** 7:16
**high** 21:11
**highest** 10:5,6
23:1
**highlight** 16:8
**highly** 22:1 23:7
**history** 11:19
**hitting** 8:8
**holding** 11:13
**holdings** 1:6 2:2
25:6
**hole** 17:5,6
**hon** 1:22
**honor** 7:4,8,12,14
7:16 8:10,16,20
9:23 10:1 11:6
12:5,9,16 13:1,14
13:25 14:9 15:9
15:18 16:11 17:3
18:3,7,18,21,22
19:2,5 23:25
**honor's** 9:20
**hopefully** 23:15
**horowitz** 5:9
**howard** 4:22 19:2
**hurdle** 16:25 17:3

**[hurdles - modified]**

hurdles 16:7
husnick 3:5 7:4,8
 7:9 9:23 19:4
 22:20 23:25
husnick's 19:18
 22:1
huston 6:9

**i**

impenetrable
 12:5
implementation
 9:14
implications 20:5
importance 21:12
important 21:7,8
 21:23 23:22
importantly
 16:19 18:18
imposition 8:22
inarguably 11:17
 11:18
incentive 12:14
include 13:5,7
including 9:9 11:3
 11:8 13:11,16
 14:18
increasing 12:25
incredibly 23:11
indefinite 21:10
 21:17
indefinitely 21:11
 21:18,22
indenture 5:22
independent 6:7
 8:17 9:10 22:7
independently
 8:19 18:12
indicate 12:5
indicated 8:14
informally 18:20
initial 12:4
insisting 11:23

insolvent 21:21
institutions 11:15
insufficient 20:10
interest 7:14 8:1
 8:13 12:10,17
 14:15 15:4,12
 17:5,7 18:18 22:5
 22:10
interests 15:20
 20:6
interveners 13:16
investment 8:21
 10:14,20,21 11:1
 11:9,11,13 12:7
involved 18:8
ironclad 10:24
irs 14:5
issue 7:25 8:16
 9:5,12 24:2
issues 8:15 9:18
 18:19 19:21 23:14

**j**

j 3:10
jamie 4:16
jason 3:11
jeffrey 4:15
job 19:4 23:10
joint 2:1 25:5
jointly 1:7
jones 5:1,4
joseph 6:4,9
joyce 6:19
jr 6:9
judge 1:23
judicial 13:4
june 16:10,12
 21:15
junk 11:2
jurisdiction 19:21

**k**

kahn 6:21
keasley 5:14

keep 18:7 19:11
kelly 6:16
key 8:15
killers 10:8
kirkland 3:2 7:9
klauder 4:7,10
klehr 5:21
know 23:20
kramer 5:6

**l**

l 2:25 25:3 26:3,8
landis 6:1
large 11:20 16:25
largely 8:5
largest 22:21
late 16:11
laura 5:4
law 19:22 20:15
 20:21 22:12
layout 9:25
layton 3:7
lbo 8:20,22 10:19
 10:25 11:5,23,25
lead 9:17
leave 15:24 18:2
lee 6:6
legal 26:22
lemisch 5:24
lender 16:20
letter 14:4,18,20
levels 21:23
levin 5:6
lien 6:12 17:5,6,6
light 14:22
line 16:16
link 9:15
linking 9:12
listened 19:18
little 14:12
living 15:22
llp 3:13,18 4:12
 5:16,21

long 14:6,10
look 21:14
looming 16:9
lot 14:16

**m**

madron 3:11
maintain 8:21
 10:21,25 11:5
majority 9:10
making 21:6,24
managed 8:18
manner 11:24
map 10:1
march 7:23 8:3,11
mark 4:5
market 1:14
 12:13
mature 21:15
maturity 16:10
maximizes 23:2
maximizing 12:25
 15:3
mccarthy 1:25
mccracken 5:16
meaning 9:2
meet 11:13
meeting 7:23 8:3
members 6:7
merged 8:24
merger 7:19 8:1
 12:22 13:23 15:14
 19:8
merits 7:17
met 23:23
michael 6:19
mineola 26:25
minimum 17:19
moderate 11:15
modifications
 14:7
modified 2:4 14:1
 25:8

money   20:12,13
  20:25
montgomery   5:16
months   21:20
moody's   11:11,14
morning   7:3,4,8
  7:12 9:24 19:2
motion   13:5
motions   22:11
movants   13:12
moving   10:1

**n**

n   3:1 7:1 25:1,3
  26:1
naftalis   5:6
natalie   5:19
nature   14:7
nearly   10:14
need   14:3 17:11
  21:12 22:13 23:24
needed   10:21
needing   23:23
needs   23:20
negotiations
  20:17
new   3:14,19 8:4
  18:7
news   23:10
nextera   4:19 6:2
  7:17,19,22 8:1,12
  8:24 9:16 10:5,11
  11:6,8,17,18
  12:10,19,21 13:9
  13:14,16,18 14:13
  14:17,22,25 15:10
  15:14 16:17 18:3
  18:4 19:3,5 20:13
nextera's   9:15
  11:12,16 18:5
non   10:19 11:10
  13:21 22:24
norman   6:14

north   1:14
notches   11:10
noted   8:2 10:8
number   9:21
  14:15
ny   26:25

**o**

o   1:21 7:1 26:1
objection   17:24
obligations   14:17
  16:22
obtain   17:24
obviously   10:4
occur   9:17
offer   19:14
okay   18:25 19:13
  24:3
okee   7:7
old   26:23
omnibus   7:13
once   16:3
ongoing   23:4
open   7:23 8:3
operated   8:18
operating   11:20
operational   14:21
operator   1:25
  11:19
operators   12:12
opportunity
  18:20
option   15:24
  16:17
options   12:25
  13:2,4,10
order   7:25 8:11
  8:13 9:5,13,18,20
  10:22 11:24 13:4
  19:17 20:5,5,20
outstanding   16:5
  16:22
overcome   17:1

owned   12:11
ownership   12:6
owning   15:22

**p**

p   3:1,1 7:1
p.c.   6:6
pachulski   5:1
page   25:4
parent   8:24 12:7
parke   4:18 19:3
part   8:20 9:1
participating
  13:11
particularly
  15:20
parties   7:14,16
  12:17 13:3 14:15
  15:4,6,12 18:10
  18:12,18 21:23
  22:2,5,9,16
party   7:21
passively   15:22
path   17:1,19 18:7
  22:7,17 23:13,15
pause   7:6
pay   16:13,24
  17:20,23
payers   20:11,21
permitted   15:15
pernick   6:14
peter   4:4
piece   20:3
pimco   4:13
plan   2:1,5 7:20
  14:1,11 17:10,14
  17:18 19:24 20:1
  22:18 25:5,9
planned   7:25
plans   20:16
plays   21:1
please   7:3
plr   14:4

pointed   22:20
policy   9:10
position   22:4
possible   12:22
  15:5 16:6,16 18:4
  18:10 23:21
potential   13:15
potentially   13:7
  13:11 15:11 20:20
  20:24
potter   3:13
precedent   12:3
  20:1
predict   14:5,9
  15:17
preface   19:19
present   10:6
presents   10:5
  17:12
preserving   12:18
price   13:23,24
primarily   8:14
  10:9,16
principal   17:6
private   14:4
probably   22:8
  23:6
problem   23:11
proceedings   24:5
  26:4
process   8:8 12:21
  13:8 14:4,5,11,11
  15:13 23:22,23
processes   13:11
product   10:16
professionals
  23:12
proposal   15:12,16
proskauer   4:1
provide   20:20
provided   13:8
  20:10

provides  17:14
  19:25
providing  17:11
prudent  18:9
pu  9:6
public  8:1,13
  10:12 12:10,13
publicly  19:16
puct  7:23 8:4,7,11
  9:1,2,7,13 11:8,25
  12:20 13:4,7,16
  13:17 14:22 18:11
  19:7,16,21,23
  20:1,24 21:4
  22:19
puct's  9:5 13:22
purchase  13:24
purchaser  15:19
  15:25
purpose  9:24
pursuant  2:2 25:6
pursue  16:1
pursuing  15:9,10

**q**

questions  14:16
  18:22,23
quickly  15:5
  23:16,21
quite  7:10 11:7
quo  21:18,22

**r**

r  1:21 3:1 7:1 25:3
  26:1
raise  12:1 16:23
  17:19
raised  9:5
ramsey  5:19
rash  15:7
rate  20:11,20
rath  6:1
rating  8:22 10:19
  10:22,23 11:1,5
  11:10,13,22 12:2

ratings  9:15
raymond  5:24
reach  13:17
reaction  9:25
read  9:22 19:16
really  14:7
reason  11:17,18
recall  7:16
receive  16:3
record  8:3 26:4
recovery  20:8
  23:2
reduction  13:23
reengage  15:10
regarding  12:4
  15:12 17:22
regardless  17:1
regularly  7:13
regulatory  7:24
  13:6
rehearing  13:6
related  13:21
  14:17,25
relief  23:20
remain  10:10
  11:23 12:23 14:25
  19:7
remaining  17:24
remains  12:21
remove  8:25
  10:12
removed  9:3
reorganization
  2:1 17:14 25:5
reorganized
  13:24 16:2 17:23
repeating  18:2
replace  8:25
  10:12
replaced  9:4
reporter  26:9
representing  19:3

require  13:21,25
required  9:8,13
  11:4,24 17:18
requirement
  10:10 20:23 22:19
requirements
  13:22 23:5
resolution  13:23
  21:5 22:3
resolve  21:7
respect  16:19
respectively  11:11
response  12:6
rest  7:10,14
restrictions  9:6,8
  14:21
result  8:14 10:4
  12:2 20:15
results  13:23
resuscitate  19:9
return  18:6,14
review  12:3 13:4
revise  14:3
revisit  14:3
reviving  18:4
rhoads  5:16
richards  3:7
right  21:16 24:1
rights  22:10
ring  8:16,17,19
  10:16,24 11:3,23
  12:4,6 13:22
  15:23 23:4
rise  7:2
risk  11:15,15,16
  21:19
risking  18:12
road  10:1 26:23
rose  4:1
rule  8:7
ruled  18:11
ruling  8:14 9:25
  14:5 19:6

run  8:8 21:11,21
  21:22
running  20:7
ryan  3:16

**s**

s  1:22 3:1 4:15 7:1
  25:3
s&p  11:11,12
s.c.  6:21
sabin  4:15
safeguards  9:14
safely  11:19
scale  11:20
scheduled  7:13
schotz  6:11
seated  7:3
second  7:5 9:5
  10:21 17:6,6
secured  17:4,8,12
  17:15,22,22,25
  22:23
see  21:1
seek  14:1 22:3
seife  4:22 19:1,2,3
self  9:2 10:10 11:4
sense  15:6 18:11
serve  12:10
set  16:3
setting  19:4
settlement  13:15
  13:17,20
shareholders
  10:13
shearman  3:18
sherri  2:25 26:3,8
short  17:16
shortly  7:19
side  5:12,17 8:23
  10:18 23:2
significant  9:8
  15:21 22:20
simply  12:7

**simultaneously** 15:9
**slaugh** 3:16
**solidly** 11:9
**solutions** 18:10 26:22
**sontcehi** 1:22
**sooner** 21:8,13
**sophisticated** 23:12
**sort** 21:3 23:17
**sought** 21:16
**specifically** 19:25
**staff** 9:2 13:17
**stakeholders** 12:17 15:4 18:17 23:18
**stand** 14:6,10
**standard** 10:20
**stang** 5:1
**starting** 15:10
**state** 7:24
**stated** 7:25
**statement** 14:1,10 19:20
**states** 1:1,13 12:8
**status** 7:14 9:24 18:21,24 19:5 21:18,22 22:8
**statutory** 8:6
**stay** 21:17
**steps** 12:16,18,20 14:16
**sterling** 3:18
**stevens** 6:6
**stock** 13:25
**strategic** 15:17,25
**strategize** 22:14
**street** 1:14
**strenuous** 15:23
**strong** 11:13
**structure** 15:16

**subject** 14:24 20:17
**successful** 13:20
**successfully** 17:23
**suggested** 12:1
**suite** 26:24
**sullivan** 5:11
**supplemented** 2:4 25:9
**supporting** 12:14
**surprise** 15:18
**surprised** 10:4 19:6
**surprisingly** 8:10
**sustainability** 21:10
**sustaining** 9:2 10:10 11:4
**sweeteners** 8:5
**system** 13:8

**t**

**t** 8:23 10:18 26:1 26:1
**take** 14:6,11 15:7 18:16 21:24 22:10
**takes** 12:14,16 20:24,24
**talented** 23:11
**tell** 22:13,25
**teloni** 3:21
**terminating** 14:20
**terms** 15:2 16:21
**texas** 7:24 9:20 12:7,10 13:8
**thank** 9:23 19:13 19:14 23:25 24:4
**theme** 21:4
**thing** 23:10
**things** 13:5
**think** 14:2 19:3 20:5 21:23 22:4 23:3

**third** 9:12
**thomas** 4:5
**thought** 7:12
**three** 8:2,14 9:18 11:10
**time** 2:4,4 8:21 10:25 12:9 13:14 14:24 16:16 18:9 25:9,9
**times** 18:15
**today** 14:6 24:2
**toolage** 23:17
**tranche** 17:21,25
**transaction** 8:12 11:7,25 12:22 16:18 17:2 19:7
**transactions** 12:4
**transcribed** 2:25
**transcriber** 26:9
**transcript** 26:4
**transmission** 11:21
**transpire** 19:12
**true** 26:4
**trustee** 5:22 6:12
**try** 13:17 19:9 22:3
**two** 10:17

**u**

**u** 25:3
**u.s.** 1:23
**umb** 5:22
**unanimously** 7:24
**unclear** 20:18
**unconcerned** 21:5
**underlying** 21:3
**understand** 12:17 12:21 13:15 14:19 21:12
**understanding** 20:11
**unfortunate** 23:7

**united** 1:1,13 12:8
**unprecedented** 14:2
**update** 7:15 9:24 18:21 19:14
**upstream** 9:8
**use** 7:13
**utility** 11:19,20 12:12
**utilizing** 13:7

**v**

**value** 12:18,25 15:3 22:8 23:6
**various** 9:14
**venable** 4:12
**veritext** 26:22
**vesting** 9:9
**viable** 12:20

**w**

**walker** 5:16
**wanted** 8:25 9:1,2
**waterfalls** 20:16
**weeks** 21:20
**williamson** 6:24
**willing** 15:19,21
**wilmington** 1:15
**wise** 7:13
**wish** 18:24
**words** 10:11
**work** 13:18 15:3,6 17:9 18:10,17 19:10 22:2,6,16
**working** 13:15 14:13 23:17
**worried** 20:7
**wright** 6:4

**x**

**x** 25:1

**y**

**year** 11:19 16:11
**york** 3:14,19

| | |
|---|---|
| **young** | 4:4 |
| **z** | |
| **ziehl** | 5:1 |