1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3

4   In re:                          :

                                    :   Chapter 11

5   ENERGY FUTURE HOLDINGS          :

    CORP., et al.,                  :   Case No. 14-10979(CSS)

6                                   :

            Debtors.                :   (Jointly Administered)

7   _____ :

8   ELLIOTT ASSOCIATES, L.P.,       :

    ELLIOTT INTERN,                 :   Chapter 11

9           Plaintiffs,             :

10  v.                              :

11  ENERGY FUTURE INTERMEDIATE      :   Adv. No. 17-50479(CSS)

    HOLDING COMPANY,                :

12                                  :

            Defendants.             :   (Jointly Administered)

13  _____ :

14

15                                  United States Bankruptcy Court

16                                  824 North Market Street

17                                  Wilmington, Delaware

18

19                                  May 12, 2017

20                                  3:39 PM - 4:05 PM

21

22  B E F O R E :

23  HON CHRISTOPHER S. SONTCEHI

24  U.S. BANKRUPTCY JUDGE

25  ECR OPERATOR:  LESLIE MURIN

1   Status Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:   Sherri L. Breach

1   A P P E A R A N C E S :

2   KIRKLAND & ELLIS

3        Attorney for the Debtors

4

5   BY:  MARK MCKANE, ESQ.

6        CHAD HUSNICK, ESQ.

7        APARNA YENAMANDRA, ESQ.

8

9   RICHARDS, LAYTON & FINGER

10        Attorneys for the Debtors

11

12   BY:  DANIEL J. DEFRANCESCHI, ESQ.

13

14   NIXON PEABODY

15        Attorneys for AST as EFH Indenture Trustee

16

17   BY:  RICHARD PEDONE, ESQ.

18

19   BIELLI & KLAUDER

20        Attorneys for EFH Corp.

21

22   BY:  DAVID M. KLAUDER, ESQ.

23

24

25

Page 4

1   CHADBOURNE & PARKE

2        Attorneys for NextEra Energy

3

4   BY:  HOWARD SEIFE, ESQ.

5        ROBIN D. BALL, ESQ.

6

7   SULLIVAN & CROMWELL

8        Attorney for E-Side Committee

9

10  BY:  BRIAN GLUECKSTEIN, ESQ.

11

12  KRAMER, LEVIN, NAFTALIS & FRANKEL

13        Attorneys for Second Lien Indenture Trustee

14

15  BY:  JOSHUA BRODY, ESQ.

16

17  WILMER CUTLER PICKERING HALE & DORR, LLP

18        Attorneys for Delaware Trust Company

19

20  BY:  PHILLIP D. ANKER, ESQ.

21        ISLEY M. GOSTIN, ESQ.

22

23

24

25

1    JENNER & BLOCK, LLP

2        Attorneys for Energy Future Intermediate Holding Co

3

4    BY:  VINCENT LAZAR, ESQ.

5

6    BAYARD, P.A.

7        Attorneys for Elliott Associates, L.P., et al.

8

9    BY:  SCOTT D. COUSINS, ESQ.

10       ERIN FAY, ESQ.

11

12   ROPES & GRAY, LLP

13       Attorneys for Elliott Associates, L.P., et al.

14

15   BY:  GREGG M. GALARDI, ESQ.

16       PETER L. WELSH, ESQ.

17

18   OFFICE OF THE UNITED STATES TRUSTEE

19       Attorneys for U.S. Trustee

20

21   BY:  RICHARD SCHEPACARTER, ESQ.

22

23

24

25

1                      P R O C E E D I N G S

2              THE COURT:  Good afternoon, everybody.  This is

3     Judge Sontchi.  We are here in the Energy Future Holdings

4     matter and specifically the adversary brought by Elliott

5     Associates versus the debtors, Case 17-4 -- excuse me --

6     50479.  We have a large number of people on the telephone,

7     and so it's very important, please, that you keep your

8     telephone on mute unless you are speaking and that you

9     identify yourself every time that you do speak.

10             I will note before we start -- I'm going to turn

11    it over to plaintiffs' counsel in just a moment -- that I

12    received those pleadings yesterday.  I have read them.  And

13    in addition a little while ago I received the debtors'

14    letter response that I had requested and I have read that as

15    well.  So you don't need to spend a ton of time going over

16    what you've already put in your papers.

17             So at this point I'll turn it over to plaintiffs'

18    counsel.

19             MR. GALARDI:  Good afternoon, Your Honor.  It's

20    Gregg Galardi of Ropes & Gray on behalf of Elliott.  I

21    appreciate your allowing me to speak today.

22             Your Honor, we received the debtors letter as well

23    and I think this goes back to what we have been going back

24    and forth with the debtors for probably close to a month.

25    As we set forth in our papers, Your Honor, we are supportive

1    of the NextEra transaction.  We are the largest creditor and

2    we would like that transaction to close and close as soon as

3    possible, and we will hope that UCT grants a re-hearing

4    request in full.

5              However, we are concerned that that may not

6    happen.  And so that brought us to filing the motion we did

7    to make sure that there is, whether we want to call it a

8    backup plan, a restructuring alternative, or some other

9    name, we want to move forward with negotiating with that.

10             And we -- as the debtors' letters as ours -- as

11   well as our complaint says, we have been trying to negotiate

12   back and forth for -- to try to reach a resolution.

13             Your Honor, I'm going to start with the debtors'

14   letter because I think that will focus on a timeline and the

15   urgency with a timeline and perhaps try and resolve this

16   matter, although I would have preferred not to do it in

17   court.  I think that was the only way to do it.

18             Your Honor, on page I guess it is four of the

19   letter the debtors repeat again what we've called that

20   limited waiver or the unilateral waiver.  And they put the

21   same restriction on it as they had in our prior

22   correspondence.

23             In particular, they say the limited waiver does

24   not extend to the filing of prosecution of any financing or

25   restructuring proposals that are not supported by EFH or

```
 1   EFIH.  Again, we have separate issues with that with respect

 2   to exclusivity and where we are in the cases.  But I would

 3   like to just take that up for the purpose of their

 4   scheduling order.

 5           Your Honor is I believe aware that on May 18th

 6   there is a PUCT hearing scheduled on the NextEra deal on the

 7   rehearing.  Your Honor, I believe that there is a June 15th

 8   date before Your Honor and there is also a June 30th DIP

 9   maturity date.  And what prompted us to file our objection

10   -- our adversary and to seek the preliminary relief is our

11   concern that between now and that June 15th hearing a number

12   of matters may come up.

13           One is the rehearing request may simply be denied

14   and we want to prepared to move forward and move forward

15   quickly.

16           Second, Your Honor, the debtors do have a DIP

17   facility that can be extended by paying a fee.  At the same

18   time as a large holder of first lien and second lien and

19   pick notes we in fact want to propose to the debtor a

20   restructuring proposal -- well, a restructuring proposal or

21   DIP financing proposal and we want to be able to talk to

22   third parties and other funding partners to be able to do

23   so.

24           And in the event that we happen not to agree with

25   the debtor, and the debtor will be the proponent of any
```

1    financing proposal, this limited waiver did precluded us

2    from objecting to that financing proposal or other

3    restructuring proposals.  If and when that motion is filed,

4    and since June 15th looked like a date that, let's just say

5    20 days notice or 23 days notice, we sent our schedule so

6    that we would be in a position to know Your Honor's ruling

7    about the application of the, what we've called the PICK PSA

8    before that time so we could be free to object.

9         Your Honor, the debtors have come back with a June

10   8th schedule and, frankly, if Your Honor had that time we

11   would be willing to accept a June 8th schedule but for

12   certain events that we are concerned will occur and our

13   ability to come back to Your Honor to get the relief that we

14   would request.

15        So, for example, Your Honor, we don't believe that

16   all the discovery is necessary, but I don't think that's an

17   issue for today.  We can file objections to discovery.  They

18   can file to do their discovery.

19        But in the event between now and let's say we

20   agree on a June 8th date they file a motion for DIP

21   financing, we don't want to be handcuffed to be able to not

22   file an objection to that financing.  During the period of

23   time between now and whenever they might file a motion or if

24   they don't file a motion we want to be able to talk to third

25   parties, go out and propose that, talk to the debtor.  The

1    debtor has the right not to accept our DIP financing

2    proposal, but we should have the right to in fact raise our

3    concerns and our objections to the Court before anything is

4    approved by this Court.

5            And so subject to our ability to come back to Your

6    Honor about any sort of motion and subject to our ability to

7    object to any sort of motion between now and the June 15th

8    date, if we have that right to be able to do those things

9    without fear of the PS -- the PICK PSA being thrown at us

10   and standing and then threats of litigation over that, we

11   would be prepared to accept the June 8th date and work on a

12   schedule with the debtors with respect to discovery and

13   objections to discovery along the lines that they have

14   suggested.

15           If, however, we do not have that right to object,

16   then I think we will -- we would like to proceed with our

17   schedule.

18           THE COURT:  Okay.  Okay.  Thank you, Mr. Galardi.

19           Mr. McKane.

20           MR. MCKANE:  Thank you, Your Honor.

21           Let me just go -- you could crystallize it as I

22   think the number one issue for today and, you know, to be

23   clear we have tried to engage with Elliott specifically

24   related to the DIP multiple times.  They have not engaged

25   with us on this issue because they view as a gating item

1    whether they are bound by the PSA or not.

2            So just -- this may not come as a surprise, but we

3    have tried to work with them as a potential financing

4    partner for the DIP.  We are preparing a DIP motion that

5    will be ready to file as early as Monday to tee up the

6    extension and a potential effort to, you know, make certain

7    that we have sufficient financing for the remainder of the

8    case.

9            Our view is if the PSA applies to them as we

10   believe it does, they could not object to the DIP.  But they

11   -- they have even not engaged with us to know whether

12   there's an issue or not to begin with.  We think the

13   appropriate process would be we'll tell you what the DIP

14   financing is.  We'll discuss the terms and rather than

15   figuring out can I object or not, let's figure out if

16   there's an -- actually an issue to be disputed before

17   someone has to figure out if they have leave.

18           Our whole problem with this adversary proceeding

19   and this motion has been we think it is wholly unnecessary.

20   We put the language of the waiver in our letter to you so

21   that you could appreciate our efforts that we have gone to

22   rather than shackle Elliott, have them be able to engage

23   with us.  We recognize, given the position that they have in

24   the case, that we need to work with them.  But they have not

25   been shackled.  We've offered these waivers to avoid this

1    type of unnecessary litigation and be able to engage with

2    them.

3              But we are the fiduciary of multiple estates.  We

4    are the fiduciary both for EFIH and EFH.  They are a major

5    creditor, but they are solely a creditor now of EFIH.  To

6    expedite the consideration of this motion we've engaged in

7    trying to figure out what we can -- we might need.  They've

8    somewhat -- they've injected into the matter with regard to

9    specifically to knowledge and notice, and the factual

10   allegations both in the adversary and in the motion we need

11   some discovery.  It's very straightforward.

12             We'll just say it plainly.  It is inconceivable to

13   us that Elliott Associates did not discuss or engage with

14   the sellers of the notes that they acquired or conduct any

15   (indiscernible) of due diligence about whether they would

16   get plan support agreement, what was the latest version of

17   that plan support agreement, and whether there were any

18   obligations tied to that plan support agreement.

19             That does not square with us at all.  And we

20   believe based on the issues that they have raised we need to

21   pursue that discovery.  As Your Honor has known, we put

22   together aggressive schedules, you know, to move this case

23   forward.  This one with a June 8th hearing with document

24   requests and being served as early as Tuesday with a

25   response from them needing to tell us who they bought the

1   notes from and when and whether there was a broker involved

2   due Monday and documents being returned in less than two

3   weeks, a week of depositions and then (indiscernible), that

4   is as fast as we think anyone could move this process

5   forward.

6          So at -- when I hear that they're not having a

7   problem with our discovery schedule and, frankly, I'm not

8   surprised because you can't go faster than this.

9          And so we're prepared to engage.  We think

10  properly this issue really should be done, you know, outside

11  the courtroom.  But it's unfortunate that it has been

12  brought to the courtroom.  But we will address it as quickly

13  as we can consistent with our obligations to (indiscernible)

14  up the facts necessary to present the issue squarely to Your

15  Honor.

16         And for that we just ask that Your Honor enter a

17  scheduling order so we can move forward as needed on that.

18         THE COURT:   Thank you, Mr. McKane.

19         MR. GALARDI:  Your Honor, may I respond?

20         THE COURT:  Yes.

21         MR. GALARDI:  Your Honor, again, first we are the

22  largest EFIH creditor and I'm here for EFH and EFIH.  But

23  more importantly, Your Honor, you've heard exactly the

24  concern.  They're going to file a DIP financing motion.

25  They said that we can only oppose -- we can't oppose that

1    motion, but we can discuss it.  And we've been threatened

2    with the fact that there will be litigation.

3           The PSAs Your Honor has read.  Your Honor will

4    have to make a decision or our purchase is void in which

5    case we're not bound by it.  And Your Honor will have to

6    make a decision as to whether we're not bound by it because

7    of the -- our one L and two L positions.

8           Notwithstanding that, they have not clarified that

9    and they are now trying to preclude us from objecting to a

10   DIP financing proposal that will economically effect likely

11   all of our interests, and they are trying to put it off to a

12   hearing that's only eight days before what I believe will be

13   the DIP hearing.  And we are to stand down and not file

14   objections under threat of the litigation to a PSA we didn't

15   sign.  Your Honor will have to make a decision as to what

16   the status of those notes are.  But if we have the notes

17   voided we are not precluded from taking these steps.

18          So, Your Honor, if the position is they're going

19   to enforce the PSA against us as if we signed it, I think we

20   have to insist on our schedule to be expedited so we can be

21   in a position to know Your Honor's view on the limits and

22   bounds of that PSA with respect to the expected debtor-in-

23   possession financing.

24          MR. MCKANE:  Your Honor, may I have two minutes --

25          THE COURT:  Yes.

1          MR. MCKANE:  -- to respond?

2          THE COURT:  Yes.

3          MR. MCKANE:  I want to say it as plainly as this.

4    We are not seeking an injunction or trying to preclude them

5    from objecting to a DIP motion.  If they believe they need

6    to object to it, they can object to it.  We may take the

7    position that it's a breach of the agreement.  We believe

8    there have been multiple breaches of this agreement,

9    including we have reason to believe that Elliott has leaked

10   information to the press that would be a breach of the

11   agreement.

12          But you cannot file a motion addressing whether

13   they have any obligations under a (indiscernible) we believe

14   they've really stepped into.  And then try to put forward a

15   schedule that does not enable the due process appropriate

16   for the adjudication of that motion.

17          We've worked with them outside of the courtroom.

18   We've put forward a schedule that will enable it so that

19   adjudication can go as quickly as we think it's frankly

20   possible to enable to present to you the issues in -- that

21   need to be addressed, both contractual and factual including

22   the issue of notice and knowledge.

23          So if they feel like they need to object to a DIP

24   motion they can, but it was just simply going on the staff

25   of issues about whether there are breaches or not.  For us,

1    they can run on parallel paths.  We've been trying to engage

2    with them on this DIP motion for weeks now and see if

3    there's DIP financing that can be -- that, you know, they

4    want to participate in or offer an alternative to.

5             But they -- these issues have to be squared and

6    the only way you square those issues is to have a hearing,

7    but that -- the work that needs to be done to have that

8    hearing takes a few weeks.  That's the simple answer.

9             MR. GALARDI:  Your Honor, I'll just -- very short.

10   Your Honor has read I believe the first three counts.  The

11   preliminary injunction is on three counts.  The first count

12   goes to the PSA which is a complete agreement by its own

13   terms.  We believe it only applies to the PICK notes and we

14   have first lien and second lien notes.  That is something

15   that will not take till June 8th to resolve.

16            The other two arguments are straightforward on the

17   contract.  They may be complicated and there's UCC, but

18   again they're contractual issues.  They are not discovery

19   issues.  There is simply no reason that they should grant

20   themselves another four week extension of exclusivity that

21   we think is inappropriate and we actually think it will --

22   it's inappropriate to do so and we will make legal arguments

23   that they cannot do so.

24            But, Your Honor, there is no reason that this

25   schedule cannot be done by the end of May where Your Honor

1    has a hearing and we could be in a position to file an

2    objection without the threat of more piling breaches which

3    counsel has constantly reminded us that they think that

4    there are breaches.  We need this issue clear so that we can

5    go out and move on an alternative path.

6            MR. MCKANE:  Your Honor, if I could just have 90

7    seconds.

8            THE COURT:  Uh-huh.  That's fine.

9            MR. MCKANE:  Your Honor, they cannot inject the

10   notice and knowledge issues in the motion and in the

11   complaint and then try to tell you with a straight face that

12   this is just a contractual issue.

13           As it relates to the contract we do not understand

14   how it could be possible that with half their brain they

15   would oppose a plan and the other half through their first

16   lien and second lien holdings support a plan.  You can't --

17   you are bound, we believe bound by the PSA obligation.  They

18   have freely stepped into this contract.  They have spent

19   hundreds of millions of dollars to do it.  And now they are

20   -- they have to accept those burdens and obligations.

21           THE COURT:  All right.

22           MR. MCKANE:  And at the start of this call they

23   said that they were prepared to go forward on a June 8th

24   hearing.  Now what we're hearing is they can't because what

25   they really want to do is get a ruling without all of the

1    information presented in front of you.  That's all we're

2    asking to do.  Let us present to Your Honor both the

3    contract and the facts associated with regards to notice and

4    knowledge that we think are necessary to evaluate the

5    motion.

6              MR. GALARDI:  If I may --

7              MR. MCKANE:  (Indiscernible) --

8              MR. GALARDI:  -- two seconds, sir.

9              Your Honor, it is a preliminary injunction and

10   they are seeking to litigate the entire merits.  That is not

11   the purpose of the preliminary injunction and we would again

12   request Your Honor if we are not going to get the right to

13   file an objection without the consequences of more breach of

14   contracts, we would ask Your Honor to hold a hearing on the

15   preliminary injunction as soon as practical.

16             THE COURT:  Well, but it's not a TRO.  It's a

17   preliminary injunction.  So --

18             MR. GALARDI:  Understood, Your Honor.  And we

19   understand that.  But at the same time it is the dates that

20   are coming up with respect to the May 18th and the June 15th

21   which is why preliminary injunctions can still be on short

22   notice which is why we filed the schedule.  We could have

23   filed the TRO motion, but we understood that it wouldn't --

24   there's not a immediate irreparable harm.  But we've laid

25   out why we believe there is irreparable harm and I think

1   there's no dispute that they will be filing a DIP financing

2   motion.  And we are being threatened that if we object to it

3   add it to the breaches, add it to the pile of the breaches I

4   believe is the language that was used.

5           So we are entitled to having -- I think we have

6   cause for having a hearing on an expedited basis to clear up

7   that issue before the end of this month.

8           MR. MCKANE:  Your Honor, this is Mark McKane.  One

9   final point.  Just they have the (indiscernible) conditions.

10  If they believe what they say in their motions and their

11  pleadings, then they will have no problem if they feel it is

12  necessary opposing the DIP motion.

13          THE COURT:  All right.

14          MR. MCKANE:  (Indiscernible) as we all know is

15  necessary in the first element to a preliminary injunction.

16  We need to be able to present the evidence necessary for the

17  Court to evaluate the life of success.  If -- and we don't

18  even know if they will oppose the DIP motion, but it sounds

19  like they've already decided without seeing the papers that

20  they will.

21          But if they need to do it, if they have the

22  courage of their convictions, they should file the

23  objections.  We'll tee this up.  This is as expeditious as

24  possible.  This is tight.  And we are -- you know, and so

25  we're trying to move as quickly as we can.

1           We ask that you enter the scheduling order.

2           THE COURT:  Okay.  Thank you.

3           MR. GALARDI:  Your Honor, we would oppose the

4    scheduling order and the discovery requests as far as the

5    May 15th and 16th date goes.  I would point that out.  So I

6    would oppose that scheduling order, but also the discovery

7    request that they've asked for and wait to see those and

8    bring those issues to Your Honor.

9           THE COURT:  Okay.  Thank you very much.

10          While I think -- I think this is a preliminary

11   injunction and, of course, can be done and should be done as

12   quickly as possible consistent with concepts of due process

13   and practicality to allow discovery to occur.  And I think

14   that there are issues here that will be subject to discovery

15   under the motion that plaintiffs have brought.

16          I am sensitive to the timing concerns.  The DIP

17   financing expires the end -- or matures at the end of June.

18   And I do know, Mr. McKane has stated that they may file

19   something as early as Monday.  We had been asked to hold a

20   date in early June.  It purely is a procedural -- not even a

21   procedural, it purely is a ministerial matter in the event

22   that was filed of June 5th.  That obviously creates a

23   problem in connection with dealing with the preliminary

24   injunction in sufficient time to have that determined before

25   we are hearing the DIP financing.

1          So what we're going to do is -- unfortunately I

2     have another matter the week of June 5th.  I have the

3     Paragon confirmation hearing on the 7th, 8th and 9th.  And I

4     cannot move that.  And I'm not sure how long that will take.

5     It may be short, but I have no idea at this point so I have

6     to hold those dates.

7          So what we're going to do is have a hearing on the

8     preliminary injunction on Monday, June 12th at 10 a.m.  The

9     schedule that's been proposed by the debtors is generally

10    okay with the Court.  But I would ask you to work together

11    and submit it under certification of counsel.  You might

12    need -- you might be able to move a couple of the dates back

13    a day or two since you're having the hearing on the 12th as

14    opposed to the 8th, maybe not.  But we'll work through that.

15         That's the schedule -- but I -- the schedule

16    structure is okay with me that the debtors proposed.

17    Obviously, all rights are reserved in connection with

18    objecting to discovery, but I think it's appropriate to set

19    a discovery schedule to allow the matter to go forward.

20         The DIP financing will be heard so we're going to

21    take away the June 5 date that I've been holding and kick

22    that back to June 15 which is an omnibus date.  So that will

23    allow the Court to hear the preliminary injunction prior to

24    hearing on the DIP financing, and that will be at 10 a.m.

25         Now it's up to Elliott to object whenever they

1   think it is appropriate to do so and they can make their own

2   decision.  However, I would not hold -- it -- provided that

3   we have a hearing on the 12th and provided that I rule in a

4   way that Elliott believes it would be appropriate for them

5   to file an objection to the DIP after that ruling on the --

6   say the 13th or the 14th, I don't like late objections, but

7   if that's how they want to proceed I won't hold that against

8   them.  I understand their point of not wanting to default

9   or, excuse me, breach a contract that might be applicable to

10  them.

11          So I would allow for a late filing of a objection

12  if that's appropriate.

13          So we'll have the hearing June 12th at 10 a.m.

14  The general outline of the discovery schedule presented by

15  the debtors makes sense to me.  I would ask the parties to

16  work together and submit an order under certification of

17  counsel.

18          If there are any issues that arise in connection

19  with making that hopefully rather easy agreement I am

20  available all next week and you can get me on the phone in

21  short order and you shouldn't waste any time doing so.  And

22  we'll have the DIP financing at the omnibus hearing at 10

23  a.m. on the 15th.

24          Any questions?

25          MR. MCKANE:  Your Honor, it's Mark McKane for the

1    debtors.  Could we make one request because we totally

2    appreciate and understand your guidance as it relates to the

3    DIP objection and the later date for them to file a DIP

4    objection, you know.

5            Could we ask that, you know, Elliott submit to us

6    a draft of their objection at the notice -- at the date for

7    the objection deadline.  You know, they don't have to file

8    it.  We would get -- it's just so the debtors will have the

9    opportunity to respond in advance of the hearing on the

10   15th.

11           THE COURT:  I assume you would apply your proposed

12   waiver to providing you with --

13           MR. MCKANE:  Correct.

14           THE COURT:  -- that form?

15           MR. MCKANE:  Yes, Your Honor.  Absolutely.

16           THE COURT:  All right.  I think that's

17   appropriate, Mr. Galardi.

18           MR. GALARDI:  Your Honor, we'll discuss it with

19   them and make sure we can work that out as well.

20           THE COURT:  Okay.  Is there anything else for

21   today?

22           All right.  Thank you very much.  I'll await your

23   order and have a pleasant afternoon.  We are adjourned.

24           MR. GALARDI:  Thank you.

25           MR. MCKANE:  Thank you, Your Honor.

1          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

2      (Whereupon these proceedings were concluded at 4:05 PM)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                C E R T I F I C A T I O N

2

3        I, Sherri L. Breach, certify that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    Sherri L          Digitally signed by Sherri L Breach
                        DN: cn=Sherri L Breach, o, ou,
6    Breach             email=digital1@veritext.com,
                        c=US
7    _____    Date: 2017.05.17 15:27:09 -04'00'

8    Sherri L. Breach

9    AAERT Certified Electronic Reporter & Transcriber CERT*D-397

10

11

12   Date:  May 17, 2017

13

14

15

16

17

18

19

20

21

22    Veritext Legal Solutions

23    330 Old Country Road

24    Suite 300

25    Mineola, NY 11501