**EXHIBIT 1** to **EXHIBIT A**

**Stipulation**

## CLAIM SETTLEMENT STIPULATION

**THIS STIPULATION** (as may be amended or modified from time to time, this "Stipulation") is made and entered into as of April 5, 2017, by and among Energy Future Holdings Corp. (f/k/a TXU Corp.) ("EFH" or the "Debtor") and Citigroup Financial Products Inc. (together with any affiliates and successors thereto, the "Claimant" and, together with the Debtor, the "Parties").

**WHEREAS**, on April 29, 2014 (the "Petition Date"), Debtor and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which have been jointly administered under case number 14-10979 (CSS) (collectively, the "Chapter 11 Cases");

**WHEREAS**, the Debtor and Citibank, N.A. entered into one or more transactions that were governed by an ISDA Master Agreement, dated as of February 18, 2005 (as subsequently amended or supplemented and together with any schedules, exhibits, and annexes thereto, the "Master Agreement" and together with any confirmations issued pursuant thereto, collectively, the "Hedging Agreements");

**WHEREAS**, on April 29, 2014 Citibank, N.A. delivered a notice to EFH terminating all outstanding transactions under the Hedging Agreements and designating May 1, 2014 as the date on which all outstanding transactions under the Hedging Agreements would be terminated;

**WHEREAS**, Citibank, N.A. subsequently delivered a statement pursuant to the Hedging Agreements containing its calculation of the termination amount asserted to be due and payable under the Hedging Agreements;

**WHEREAS**, on September 3, 2014, Citibank, N.A. timely filed a proof of claim designated as claim number 4112 in respect of its claim against EFH arising under the Hedging Agreements in the amount of $8,246,500.00 plus interest, fees, costs and expenses (the "Filed Claim");

**WHEREAS**, as reflected in that certain Notice of Transfer of Claim filed on the docket with Bankruptcy Court on December 5, 2014 [D.I. 2952], the Filed Claim was transferred from Citibank, N.A. to the Claimant; and

**WHEREAS**, by this Stipulation, the Parties seek to settle any claims the Claimant may have against the Debtors arising under the Hedging Agreements, including the Filed Claim, and to agree to all other terms and provisions contained herein;

**NOW THEREFORE**, in consideration of the foregoing and of the mutual covenants set forth herein, the Parties agree as follows.

1.    **Conditions to Effectiveness.** Notwithstanding anything to the contrary herein, this Stipulation shall not be effective until the date that this Stipulation has been approved by the Bankruptcy Court (the "Effective Date").    The Parties' obligations with respect to this Stipulation, except for the Debtor's obligation to seek approval of this Stipulation, are expressly

subject to the occurrence of the Effective Date. The Debtor shall take reasonably necessary steps to obtain approval of this Stipulation, as soon as reasonably practicable after execution of this Stipulation by each of the Parties.

2.      **Agreed Claim.** The Claimant shall receive, on account of the Filed Claim: a valid and enforceable general unsecured claim against EFH in the amount of $8,101,850.00 which would receive the treatment provided to Claims against EFH that are derived from or based upon swaps entered into by EFH on an unsecured basis (the "Agreed Claim"). Payment of the Agreed Claim shall be in full and final satisfaction of the Filed Claim.

The Agreed Claim and any other charges described herein shall not be subject to change through application to the Federal Energy Regulatory Commission ("FERC") pursuant to the provisions of Sections 205 or 206 of the Federal Power Act or Sections 4 or 5 of the Natural Gas Act absent the agreement of all Parties hereto.

In order to reflect entry into this Stipulation and the allowance of the Agreed Claim, upon the Effective Date, EFH shall promptly instruct the claims agent, Epiq Bankruptcy Solutions LLC, to update the claims register accordingly.

3.      **No Further Action by Claimant.** The Parties hereto acknowledge and agree that the Claimant does not need to take any further action to seek to allow the Agreed Claim in the Chapter 11 Cases. Subject to Bankruptcy Court approval of this Stipulation, the Debtors and/or the Court-appointed claims agent may amend the claims register to reflect that the Agreed Claim is to be allowed solely against the Debtor and its estate in the amount and priority stipulated herein.

4.      **Release of the Debtors.** Except with respect to the Agreed Claim, which shall be allowed as provided in paragraph 2 of this Stipulation, and any of Debtors' obligations herein, for good and valuable consideration, the sufficiency of which is hereby acknowledged, upon the Effective Date, the Claimant agrees, to the maximum extent allowed by applicable law, to release, waive, and discharge the Debtors, their respective affiliates, parents, subsidiaries, members, partners, principals, shareholders, officers, directors, managers, employees, representatives, agents, financial advisors, attorneys, accountants, investment bankers, consultants, and other professionals, and any person or entity seeking to exercise the rights of the Debtors' estates, including any successors to the Debtors or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code and the Debtors' property (each, a "Debtor Released Party"), from any and all claims, interests, obligations, debts, rights, suits, damages, demands, causes of action, remedies, and liabilities, before or after the Petition Date whatsoever, including any derivative claims, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing or hereafter arising, in law, at equity or otherwise, any damages or administrative expenses before or after the Petition Date, including under sections 503(b)(1)(A) and (b)(9), whether for tort, contract, violations of federal or state securities laws, or otherwise, against any Debtor Released Party arising under or related to the Hedging Agreements, any transactions entered thereunder, the Filed Claim (other than the Agreed Claim), or the negotiation, execution, performance or any breaches of any of the foregoing; *provided, however*, that nothing herein shall be deemed to

release any claim of Claimant judicially determined to have arisen from fraud, bad faith, or willful misconduct.

5.    **Release of Claimant.**  For good and valuable consideration, the sufficiency of which is hereby acknowledged, upon the Effective Date, the Debtors (on behalf of themselves and any other party, person or entity claiming under or through them and including any successor to any of them) agree, to the maximum extent allowed by applicable law, to release, waive, and discharge the Claimant, its respective affiliates, parents, subsidiaries, members, partners, principals, shareholders, officers, directors, managers, employees, representatives, agents, financial advisors, attorneys, accountants, investment bankers, consultants, and other professionals, and any person or entity seeking to exercise the rights of the Claimant's estates, including any successors to the Claimant or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code and the Claimant's property (each, a "Claimant Released Party"), from any and all claims, interests, obligations, debts, rights, suits, damages, demands, causes of action, remedies, and liabilities, before or after the Petition Date whatsoever, including any derivative claims, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing or hereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, against any Claimant Released Party arising under or related to the Hedging Agreements, any transactions entered thereunder, or the negotiation, execution, performance or any breaches of any of the foregoing; *provided, however,* that nothing herein shall be deemed to release any claim of the Debtors judicially determined to have arisen from fraud, bad faith, or willful misconduct.

6.    **Successors and Assigns.**  The provisions of this Stipulation shall be binding on the Parties and their successors and assigns and shall inure to the benefit of the Parties and their successors and assigns.

7.    **Entire Agreement.**  This Stipulation constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof, and there are no representations, understandings, or agreements relative hereto which are not fully expressed herein.  This Stipulation may not be modified, altered, or amended in whole or in part except by a written instrument executed by each Party.

8.    **Governing Law.**  This Stipulation shall be governed by and construed under the laws of the State of New York (including Section 5-1401 of the New York General Obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

9.    **Jurisdiction.**  The Parties consent to the exclusive jurisdiction of the Bankruptcy Court with respect to this Stipulation.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Stipulation.  In the event the Bankruptcy Court declines to accept jurisdiction over any matter related to this Stipulation, the Parties agree to proceed in a state or federal court located in Manhattan, New York.

10. **No Reliance.** Each Party represents and warrants that in entering into this Stipulation it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. In entering into this Stipulation, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11. **Construction.** This Stipulation has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Stipulation so as to give rise to any presumption of convention regarding construction of this document. All terms of this Stipulation were negotiated in good faith and at arm's-length, and this Stipulation was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Stipulation is the free and voluntary act of the Parties.

12. **No Liability.** It is understood and agreed by the Parties that this Stipulation represents a settlement and compromise of disputed claims and neither this Stipulation itself, any of the payments or covenants described herein, nor anything else connected with this Stipulation is to be construed as an admission of fault or liability.

13. **Execution in Counterparts.** This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Stipulation may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

14. **Severability.** If any provision of this Stipulation is determined to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.

15. **Compliance with Applicable Law.** The Parties represent, warrant, and covenant that each document, notice, instruction, or request provided by each respective Party shall comply with applicable laws and regulations. Where, however, the conflicting provisions of any such applicable law may be waived, they are hereby irrevocably waived by the parties hereto to the fullest extent permitted by law, to the end that this Stipulation shall be enforced as written.

16. **No Third-Party Beneficiaries.** Nothing in this Stipulation, whether express or implied, shall be construed to give to any person or entity other than the Parties (and their successor and assigns) any legal or equitable right, remedy, interest or claim under or in respect of this Stipulation.

17. **Termination.** Upon the Effective Date of this Stipulation, to the extent not already terminated, the Hedging Agreements and the transactions thereunder are terminated and shall no longer be of any force or effect.

**IN WITNESS WHEREOF**, the Parties have executed this Stipulation as of the date set forth above.

**ENERGY FUTURE HOLDINGS CORP., on behalf of itself and the other Debtors**

By: _Anthony Horton_

Name: ANTHONY R HORTON

Title: CFO

**CITIGROUP FINANCIAL PRODUCTS INC.**

DocuSigned by:

4D05618B5CD9437...

By: _____

Name:

Title: Brian S. Broyles - Authorized Signatory