## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Hearing Date:  June 26, 2017 at 12:00 p.m.** |
|  | ) | **Objection Deadline:  June 19, 2017 at 4:00 p.m.** |

**MOTION OF ENERGY FUTURE INTERMEDIATE HOLDING
COMPANY LLC AND EFIH FINANCE, INC. FOR ENTRY OF AN ORDER (A)
APPROVING POSTPETITION REPLACEMENT FINANCING FOR ENERGY
FUTURE INTERMEDIATE HOLDING COMPANY LLC AND EFIH FINANCE INC.,
(B) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
EXPENSE CLAIMS, (C) EXTENDING THE USE OF CASH COLLATERAL BY
ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC AND EFIH
FINANCE INC., (D) AUTHORIZING REFINANCING OF POSTPETITION SECURED
DEBT, (E) AUTHORIZING PAYMENT OF ALLOWED EFIH FIRST LIEN
MAKEWHOLE CLAIMS, AND (F) MODIFYING THE AUTOMATIC STAY**

Energy Future Intermediate Holding Company LLC ("EFIH") and EFIH Finance Inc.

(together with EFIH, the "Borrowers" or the "EFIH Debtors," and together with the other

above-captioned debtors and debtors in possession, the "Debtors"), as debtors and debtors in

possession,[2] file this motion (this "Motion"[3]) for entry of an order (the "Order") (a) authorizing

refinancing of postpetition secured debt, (b) approving postpetition replacement financing on a

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    For the avoidance of doubt, only the EFIH Debtors are seeking authority herein.

[3]    Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to such terms in the Eighth Confirmed Plan, the EFIH First Lien DIP Credit Agreement or the Order as applicable. To the extent there exists any inconsistency between this Motion and the provisions of the EFIH First Lien DIP Credit Agreement or the Order, the provisions of the applicable EFIH First Lien DIP Credit Agreement or the Order, as applicable, shall control.

secured basis, (c) granting liens and providing superpriority administrative expense claims, (d) approving an extension of the use of cash collateral, (e) authorizing payment of allowed first lien makewhole claims, and (f) modifying the automatic stay.  In support thereof, the EFIH Debtors submit the *Declaration of David Ying in Support of the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc. for Entry of An Order (A) Approving Postpetition Replacement Financing for Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Extending the Use of Cash Collateral by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (D) Authorizing Refinancing of Postpetition Secured Debt, (E) Authorizing Payment of Allowed EFIH First Lien Makewhole Claims, and (F) Modifying the Automatic Stay* (attached hereto as **Exhibit C**, the "Ying Declaration").  In further support hereof, the Debtors respectfully state as follows.

### Relief Requested

1.      By this Motion, the Debtors seek entry of the Order, (a) approving the EFIH DIP credit agreement (as amended, restated, supplemented, or otherwise modified from time to time, the "EFIH First Lien DIP Credit Agreement), attached hereto as **Exhibit 1** to **Exhibit A**, with material terms substantially similar to those described herein, by and among the EFIH Debtors, as borrowers, the financial institutions from time to time party thereto, as lenders (collectively, the "EFIH First Lien DIP Lenders"), Citibank, N.A., as administrative and collateral agent (in such capacity, the "EFIH First Lien DIP Agent"), and other agents and entities from time to time party thereto, and authorizing the EFIH Debtors to enter into the EFIH First Lien DIP Credit Agreement to obtain additional financing flexibility ("EFIH  First Lien DIP Financing") pursuant to the proposed EFIH DIP facility (the "EFIH First Lien DIP Facility") , and authorizing each of the EFIH Debtors to execute and deliver the Fee Letter (as defined in the EFIH First Lien DIP

2

Credit Agreement), (b) authorizing the EFIH Debtors to enter into and perform under the applicable Security Documents (as defined in the EFIH First Lien DIP Credit Agreement), the related engagement letter (a copy of which is attached hereto as **Exhibit B**, the "Engagement Letter"), and other related documents (collectively, with the EFIH First Lien DIP Credit Agreement, the "EFIH First Lien DIP Documents"), (c) extending the use of EFIH Cash Collateral through June 30, 2018 (the use of which may be further extended through December 30, 2018, upon the satisfaction of certain conditions), (d) authorizing refinancing of the Existing EFIH First Lien DIP Facility (as defined below), (e) authorizing the EFIH Debtors to use up to $600 million of their cash (after accounting for consummation of the EFIH First Lien DIP Credit Agreement) to repay all allowed outstanding amounts under the EFIH First Lien Makewhole Claims as outlined in the EFIH Settlement (as defined below), including principal, accrued interest, and fees on the EFIH First Lien Makewhole Claims, on a pro rata basis, at or after the consummation of the EFIH First Lien DIP Credit Agreement (the "Repayment"), and (f) modifying the automatic stay.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012*.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware ("Local Bankruptcy Rules"), to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent

3

of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.　　　Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.　　　The bases for the relief requested in this Motion are sections 105, 361, 362, 363, 364, 502, 506, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 3012, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rules 2002, 4001, and 9014.

### Preliminary Statement

5.　　　The EFIH Debtors seek authorization to borrow up to $6,300 million under the EFIH First Lien DIP Credit Agreement, consisting of a first lien superpriority term loan of $5,475 million ("Term Loan Commitments"), and up to $825 million in incremental term loans ("Incremental Term Loans"), $600 million of which the EFIH Debtors intend to borrow upon the repayment of the Existing EFIH First Lien DIP Facility.[4]  Such authorization would allow the EFIH Debtors to refinance their obligations under the Existing EFIH First Lien DIP Credit Agreement, repay outstanding amounts related to the EFIH First Lien Makewhole Claims, and ensure sufficient liquidity to administer these chapter 11 cases.  The current EFIH First Lien DIP Facility ("Existing EFIH First Lien DIP Facility") and use of cash collateral expires on June 30, 2017 (subject to an allowed extension through December 30, 2017).  As discussed at the last omnibus hearing, the Debtors are in the midst of addressing certain issues associated with obtaining regulatory approvals for the proposed merger transaction involving Next Era Energy, Inc. ("NEE").  It is clear that the Debtors will not be able to emerge from chapter 11 by June 30,

---

[4]　The specific figures cited on account of the Term Loan Commitments and Incremental Term Loans are subject to variation pending the outcome of the EFIH Debtors' syndication efforts.  In any event, the EFIH Debtors expect the sum of the Term Loan Commitments and Incremental Term Loans to equal $6,300 million.

2017, and, to the extent they are forced to go "back to the drawing board" on a new plan of reorganization and path to emergence, may not be able to emerge from chapter 11 before December 30, 2017.

6.      As they have done throughout these chapter 11 cases, the Debtors will work as expeditiously as possible to either implement the NEE transaction or, alternatively, develop and implement a back-up plan of reorganization with as much consensus and certainty as possible. Nevertheless, these efforts will take additional time that was not contemplated when the Debtors entered into the Existing EFIH First Lien DIP Facility.

7.      Accordingly, the EFIH Debtors seek authority to enter into the EFIH First Lien DIP Facility.  As compared to the Existing EFIH First Lien DIP Facility, the EFIH First Lien DIP Facility, among other things, (a)  increases the principal amount of the Existing EFIH First Lien DIP Facility by up to $825 million, from $5,475 million to $6,300 million, consisting of (i) $5,475 million in Term Loan Commitments, and (ii) $825 million in Incremental Term Loans, $600 million of which the EFIH Debtors intend to borrow upon the repayment of the Existing EFIH First Lien DIP Facility, (b) provides that the EFIH Debtors agree not to borrow more than $6,075 million unless (i) NEE consents to such additional borrowing, (ii) the Court enters an order finding that NEE is acting unreasonably in withholding, conditioning and/or delaying its consent to such borrowing, or (iii) the Merger Agreement (as defined below) is terminated in accordance with its terms, (c) extends the maturity of the Existing EFIH First Lien DIP Facility and use of EFIH Cash Collateral by approximately one year, from June 30, 2017 to June 30, 2018, with the ability to further extend to December 30, 2018, subject to certain conditions to be contained in the EFIH First Lien DIP Facility, (d) reduces the liquidity covenant (which, as described below, establishes the minimum amount of unrestricted cash on hand that must be

available at EFIH at any point in time) by $50 million, from $150 million to $100 million, and (e) allows for the EFIH Debtors to seek permission to convert the EFIH First Lien DIP Facility into a post-emergence exit term facility (the "Exit Facility") with a term of seven years, and on other terms (the "Exit Facility Conversion"), to be mutually agreed.  The EFIH Debtors may only initiate the Exit Facility Conversion in the event that subsequent Court approval to execute the Exit Facility Conversion is granted at some point following entry of the Order.  **All other material terms of the Existing EFIH First Lien DIP Facility remain unchanged in the EFIH First Lien DIP Facility**.  Once the conditions precedent to the Exit Facility Conversion are either met or waived, a new credit agreement (which will be filed in connection with Court approval of the Exit Facility Conversion) will govern the Exit Facility.

8.    The EFIH First Lien DIP Credit Agreement is an important step in the EFIH Debtors' restructuring efforts, is supported by favorable market conditions, and is the product of the EFIH Debtors' diligent analysis of refinancing alternatives.  The EFIH Debtors have strong financial and restructuring rationales for pursuing the transactions contemplated herein.  *First*, as described in the Ying Declaration, approving the EFIH First Lien DIP Facility will allow the EFIH Debtors to repay the Existing EFIH First Lien DIP Facility and on a go-forward basis have a DIP on superior market terms.  *Second*, the potential for increased cash to be available through the EFIH First Lien DIP Facility will allow the EFIH Debtors' ability to currently pay the EFIH First Lien Makewhole Claims, thereby terminating the interest accrual on such claims (which is approximately $5.0 million per month and growing), and eliminating at least one potentially significant hurdle in the event the Debtors are required to pursue a backup plan.[5]  *Third*, the

---

[5]    As described in greater detail herein, the EFIH First Lien Claims and EFIH Second Lien Note Claims were Allowed (in the amount approved by the Bankruptcy Court) pursuant to the *Order Approving the EFIH Settlement Between the Debtors, Certain Holders of EFIH First Lien Note Claims, Certain Holders of EFIH Second Lien Note Claims, and Certain Holders of EFIH Unsecured Note Claims* [D.I. 11048] (the "EFIH

EFIH First Lien DIP Credit Agreement is the product of several formal and informal discussions that ultimately yielded several separate (and competitive) proposals from top investment banks.

9.      Assuming the EFIH Debtors emerge from these Chapter 11 Cases on December 31, 2017, the EFIH Debtors project gross interest savings of up to $30 million (the "Estimated Gross Savings") as a result of the Repayment.  The EFIH Debtors expect the interest rates incurred under the EFIH First Lien DIP Credit Agreement to be lower than those under the Existing EFIH First Lien DIP Facility.  Due to increased principal amounts under the EFIH First Lien DIP Facility, the EFIH Debtors may incur slightly higher interest payments under the EFIH First Lien DIP Facility than under the Existing EFIH First Lien DIP Facility (the "Incremental Cost Projection").

10.      The Incremental Cost Projection is based on the EFIH Debtors' most recent market-based diligence, which suggests that the interest rates of the EFIH First Lien DIP Credit Agreement may be comparable to those governing the Existing EFIH First Lien DIP Facility. Because the EFIH First Lien DIP Facility is not committed financing and, instead is a "best efforts" obligation of the lead arrangers, the EFIH Debtors will be unable to confirm the Incremental Cost Projection.  As a result, prior to any hearing (the "Hearing") on the merits of this motion, the EFIH Debtors will file a supplement with this Court detailing the interest rate terms under the executed EFIH First Lien DIP Credit Agreement.  As of the date of this Motion, and based upon most recent market-based diligence, the EFIH Debtors expect to realize significant savings—an estimated $35 million in interest expenses (the "Estimated Net Savings") over 12 months (assuming the EFIH Debtors' market-based diligence proves to be true), as well

---

Settlement Order").  As an "evergreen" settlement, the EFIH Settlement Order will remain binding on the Debtors and the Holders of Secured Claims asserted against the EFIH Debtors whether or not the Eighth Confirmed Plan is consummated.

as the related savings in professional fee obligations asserted by the EFIH First Lien Notes Trustee and Holders of EFIH First Lien Note Claims.

11.     In addition to the Estimated Net Savings that the EFIH Debtors expect to realize through the EFIH First Lien DIP Credit Agreement, the proposed Exit Facility helps assure the EFIH Debtors that post-exit financing will be available.  As the EFIH Debtors work to analyze the viability of the Eighth Confirmed Plan or a pivot to a backup proposal (as necessary), execution of the Exit Facility following court approval would eliminate a significant element of restructuring risk.  The Exit Facility also allows the EFIH Debtors to leverage the favorable lending terms available in the current lending market, all while allowing parties in interest a chance to be heard by the Court prior to the Exit Facility Conversion.

12.     The plan of merger by and among NEE, EFH Corp., and EFIH (as may be amended, supplemented, or otherwise modified from time to time, the "Merger Agreement") contains covenants that require EFH/EFIH to obtain NEE's consent for certain modifications or refinancing of the Existing DIP Credit Agreement.  The EFIH Debtors may conduct such modification or refinancing with the consent of NEE as evidenced through written approval. Merger Agreement, § 6.1(a)(v), (x).  Under section 6.1(a) of the Merger Agreement, this approval must "not be unreasonably withheld" by NEE.  At the time of this Motion's filing, the EFIH Debtors have not yet obtained written approval from NEE to conduct the transactions considered herein, but are in the process of negotiating a consent agreement.

13.     In sum, ensuring the EFIH Debtors have access to sufficient liquidity through the second quarter of 2018 is vital to the EFIH Debtors' ability to negotiate and consummate a consensual, value-maximizing path to exit.  The proposed EFIH First Lien DIP Credit Agreement (together with the requested use of EFIH Cash Collateral) provides the necessary

liquidity and allows for the use of additional unencumbered cash, based on reasonable, market-based terms.  The Debtors, therefore, respectfully request that the Court enter the Order granting the relief requested in this Motion.

### Overview of EFIH First Lien DIP Credit Agreement

**A.      Key Provisions**

14.      For these reasons and as stated below, the EFIH Debtors have determined to enter into the EFIH First Lien DIP Credit Agreement.  The EFIH First Lien DIP Credit Agreement contains terms that are materially consistent with the terms governing the Existing EFIH First Lien DIP Facility, except with respect to the key terms described below.  The EFIH First Lien DIP Facility will primarily be used to repay the Existing EFIH First Lien DIP Facility (on better market terms), offset projected decreases in EFIH cash on hand through June 30, 2018, and repay the EFIH First Lien Note Claims.  Additionally, the EFIH First Lien DIP Facility will provide for flexibility to convert the EFIH First Lien DIP Facility into the Exit Facility following conditions precedent to the conversion, which shall be mutually agreed to by the EFIH First Lien DIP Lenders.

15.      As compared to the Existing EFIH DIP Credit Agreement, the EFIH First Lien DIP Credit Agreement contains a few material differences:[6]

        a.      ***Increased Principal Amount.***  An increase in the principal amount of up to $825 million, from $5,475 million in the Existing EFIH First Lien DIP Facility to $6,300 million in the EFIH First Lien DIP Facility.  The $6,300 million includes $5,475 million in Term Loan Commitments and up to $825 million in Incremental Term Loans.[7]

---

[6]    This summary of the provisions of the EFIH First Lien DIP Credit Agreement is qualified in its entirety by the language of the proposed EFIH First Lien DIP Credit Agreement itself.  In the event of any inconsistencies between this summary and the EFIH First Lien DIP Credit Agreement, the EFIH First Lien DIP Credit Agreement shall control.

[7]    As noted above, the specific figures cited on account of the Term Loan Commitments and Incremental Term Loans are subject to variation pending the outcome of the EFIH Debtors' syndication efforts.  In any event, the

b.    ***Limit on Borrowing Under the EFIH First Lien DIP Facility.***  The EFIH Debtors are restricted from borrowing more than $6,075 million under the EFIH First Lien DIP Facility unless an Incremental Borrowing Condition has been met.

c.    ***Extension of Maturity Date.***  The extension of the maturity date the EFIH First Lien DIP Credit Agreement to June 30, 2018.

d.    ***Additional Six-Month Extension Option.***  The Maturity Date may be extended by the EFIH Debtors by another six months, from June 30, 2018 to December 30, 2018, subject to certain conditions.

e.    ***Reduction to Liquidity Covenant.***  A new liquidity covenant which reduces the required amount of unrestricted cash by $50 million, from $150 million to $100 million.

f.    ***Exit Facility Conversion.*** Permits the EFIH Debtors to seek permission, which shall only be granted pursuant to subsequent Court approval, to convert the EFIH First Lien DIP Facility to the Exit Facility.

16.    ***First***, as compared to the Existing EFIH First Lien DIP Facility, the EFIH Debtors seek to reduce the amount of unrestricted cash required by the minimum liquidity covenant by $50 million, from $150 million to $100 million.  The Existing EFIH First Lien DIP Facility contains a covenant requiring the EFIH Debtors to maintain at all times at least $150 million of unrestricted cash.  Interest obligations on the EFIH First Lien DIP Facility, ongoing professional fee obligations, and a projected reduction in the size of the quarterly dividends from Oncor will likely result in an overall reduction in unrestricted EFIH cash of approximately $225 million by June 30, 2018.  As a result, without a modification, there is some risk (although not currently expected) that the EFIH Debtors could breach the minimum liquidity covenant, particularly because compliance with the minimum liquidity covenant can be measured at any point in time.

---

EFIH Debtors expect the sum of the Term Loan Commitments and Incremental Term Loans to equal $6,300 million.

17.     *Second*, the EFIH First Lien DIP Facility provides the flexibility to increase the principal amount of first lien funding by up to $825 million over the Existing EFIH First Lien DIP Facility.  This increase in the principal amount would give the EFIH Debtors sufficient liquidity through June 30, 2018, and allow the EFIH Debtors to satisfy the EFIH First Lien Makewhole Claims (pursuant to the EFIH Settlement Order), thereby saving the EFIH Debtors approximately $5.0 million per month in interest accrual on the principal amount of the EFIH First Lien Makewhole Claim.  Current Holders of EFIH Second Lien Note Claims and EFIH Unsecured Note Claims will benefit from an early payment of the EFIH First Lien Makewhole Claims and the concurrent termination of interest accruals.  The EFIH First Lien DIP Credit Agreement authorizes the EFIH Debtors to borrow only up to $6,075 million under the EFIH First Lien DIP Facility unless a required condition ("Incremental Borrowing Condition") is satisfied.  Specifically, in the event that the Merger Agreement has not been terminated at the time of borrowing, the EFIH Debtors may borrow no more than $6,075 million under the EFIH First Lien DIP Facility unless the EFIH Debtors have: (a) the consent of NEE, or (b) an order from the Court finding that NEE's unwillingness to consent is unreasonable under the Merger Agreement.

18.     *Third*, the EFIH First Lien DIP Credit Agreement allows the EFIH Debtors to convert the EFIH First Lien DIP Facility into the Exit Facility, in the event that the EFIH Debtors receive subsequent court approval to initiate the Exit Facility Conversion.  Pledged exit financing—subject to conditions precedent to the Exit Facility Conversion—will mitigate any fears regarding the EFIH Debtors' ability to secure post-emergence financing in the event the EFIH Debtors are unable to consummate the Eighth Confirmed Plan.

19.    Other than the material differences outlined above, the EFIH First Lien DIP Credit Agreement does not represent material changes to the other terms of the Existing DIP Credit Agreement or the Existing DIP Order.

### B.    Concise Statement Pursuant to Bankruptcy Rule 4001(c)

20.    In accordance with Bankruptcy Rules 4001(c) and (d), the following summarizes the significant terms of the EFIH First Lien DIP Credit Agreement and the Order.[8]

| Material Terms | Summary of Material Terms | Provision |
|---|---|---|
| **EFIH First Lien DIP Credit Agreement Parties**<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B)* | Borrower:          EFIH and EFIH Finance, Inc.<br><br>Guarantors:        None<br><br>Joint Lead Arrangers:   Citibank, N.A., Morgan Stanley Senior Funding, Inc.<br><br>Lenders:           The lenders under the Term Facility.<br><br>Administrative Agent:  Citibank, N.A. | EFIH First Lien DIP Credit Agreement at § 1.1. |
| **EFIH First Lien DIP Financing**<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B); LBR 4001-2(a)(ii)* | Total Loan Commitment:          Up to $6.30 billion aggregate principal amount at Full Availability.<br><br>Incremental Term Facility:          One or more incremental term loan facilities that will rank junior in right of payment with the DIP Facility and will have the same guarantees as the DIP Facility, and be secured by a lien on the same Collateral securing the DIP Facility that is junior to the lien securing the DIP Facility, in a principal amount not to exceed $6,000,000,000 in the aggregate subject to certain provisos, including that the principal amount of the Junior Incremental Term Facility shall be convertible into equity under the Plan of Reorganization. | EFIH First Lien DIP Credit Agreement at § 1.1, 2.1, 2.2, 2.13. |
| **Interest Rate and Margins** | The Borrower may elect that the loans comprising each borrowing bear interest at a rate per annum equal to (a) an alternate base rate plus an applicable margin, to be agreed, or (b) the LIBOR Rate | EFIH First Lien DIP Credit Agreement at |

---

[8]    This statement is qualified in its entirety by the provisions of the EFIH First Lien DIP Documents and Order as eventually filed with the Court, and to the extent there exists any inconsistency between this concise statement and the provisions of the EFIH First Lien DIP Documents or the Order, the provisions of the EFIH First Lien DIP Documents or the Order, as applicable, shall control.

| Material Terms | Summary of Material Terms | Provision |
|---|---|---|
| *Fed. R. Bankr. P. 4001(c)(1)(B)* | plus an applicable margin, to be agreed. | § 2.8. |
| ***Fees***<br><br>*Fed R. Bankr. P. 4001(c)(1)(B)* | **Confidential, Filed Under Seal** | EFIH First Lien DIP Credit Agreement at § 3.1. |
| ***Maturity***<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B)* | The maturity date of the EFIH First Lien DIP Financing will be the earliest of:<br><br>• June 30, 2018, subject to extensions under certain conditions;<br><br>• the effective date of any Reorganization Plan;<br><br>• the date that is 120 days after the execution of the Commitment Letter if the Order has not been entered by such date;<br><br>• the consummation of a sale of all or substantially all of the EFIH Debtors' assets or stock under section 363 of the Bankruptcy Code; or<br><br>• the acceleration of any Loans and the termination of any then outstanding Commitments in accordance with the terms of this Agreement.<br><br>The Maturity Date will occur in any event no later than December 30, 2018. | EFIH First Lien DIP Credit Agreement at § 1.1. |
| ***Purpose/Use of Proceeds***<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B); LBR 4001-2(a)(ii)* | The proceeds of the DIP Facility will be used, in a manner consistent with the terms of the Agreement and contained in the Order. | EFIH First Lien DIP Credit Agreement at § 7.16. |
| ***Events of Default***<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B)* | The occurrence and continuance of any of the following events shall constitute an Event of Default under the DIP Facility (consistent, in each case, with the Documentation Principles):<br><br>• defaults usual and customary for financings of this type, including, without limitation, non-payment of principal, interest and fees, defaults under affirmative and negative covenants, breaches of representations and warranties, judgments or foreclosure actions exceeding certain thresholds, adverse modifications to the Order, and dismissal or conversion of the bankruptcy cases; and<br><br>• the Order Entry Date shall not have occurred or the Term Facility shall not have been funded in full within certain time frames. | EFIH First Lien DIP Credit Agreement at § 9. |

13

| Material Terms | Summary of Material Terms | Provision |
|---|---|---|
| ***Priority and Security of EFIH First Lien DIP Financing Liens***<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B)* | All obligations of the Debtors to the Agent and the Lenders (such Expected in Final persons, collectively, the "DIP Secured Parties") under the Loan Order Documents (the "Obligations"), including all Loans made under the DIP Facilities, shall, subject to the Carve-Out (defined below), and to the extent provided in the EFIH First Lien DIP Credit Agreement and subject to any limitations therein:<br><br>• pursuant to Bankruptcy Code section 364(c)(1), be entitled to joint and several superpriority administrative expense claim status in the Cases, on a pari passu basis;<br><br>• pursuant to Bankruptcy Code section 364(c)(2), be secured by a perfected first priority lien on substantially all now owned or hereafter acquired assets of the EFIH Debtors that are not otherwise subject to a lien, including, upon the entry of the Order, the proceeds of causes of action under chapter 5 of the Bankruptcy Code;<br><br>• pursuant to section 364(c)(3) of the Bankruptcy Code, be secured by a perfected junior lien on all other prepetition and postpetition property of the EFIH Debtors that is subject to valid, perfected and non-avoidable liens in existence immediately prior to the Petition Date or that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (other than the Adequate Protection Liens); and<br><br>• pursuant to Bankruptcy Code section 364(d), be secured by a perfected priming first-priority lien on all prepetition and postpetition property of the EFIH Debtors. | Requested in Order |
| ***Carve Out***<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B)* | All liens securing the Obligations, liens or claims securing the Obligations and other prepetition obligations, including, among others, those in connection with the Existing Primed Secured Facilities, shall be subject and subordinate to the Carve Out.<br><br>The "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the EFIH Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and any Creditors' Committee appointed in the Cases pursuant to section 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the EFIH First Lien DIP Agent of a Carve Out Trigger Notice (as | |

14

| Material Terms | Summary of Material Terms | Provision |
|---|---|---|
| | defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $25,000,000 incurred after the first business day following delivery by the EFIH First Lien DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by order, or otherwise (the amounts set forth in this clause (iv) being the "<u>Post- Carve Out Trigger Notice Cap</u>"). For purposes of the foregoing, "<u>Carve Out Trigger Notice</u>" shall mean a written notice delivered by  email (or other electronic means) by the EFIH First Lien DIP Agent to the EFIH Debtors, their lead restructuring counsel, the U.S. Trustee, and lead counsel to the Creditors' Committee and the Collateral Trustee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked. <br><br> The EFIH Debtors shall deposit and hold in a segregated account the Carve Out Reserves, which, following the delivery of certain Trigger Notices, shall be applied by the Borrower to pay obligations arising from the Carve-Out. <br><br> Nothing in the Order shall be construed to obligate the EFIH First Lien DIP Agent or the DIP Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the EFIH Debtors have sufficient funds to pay such compensation or reimbursement. | |
| ***Conditions to Borrowing*** <br><br> *Fed. R. Bankr. P. 4001(c)(1)(B)* | 1.  Bankruptcy Matters <br><br> •   Entry of the Order, as defined in the EFIH First Lien DIP Credit Agreement at § 5; <br><br> •   Entry of the Order, which shall provide for, among other things, funding of the EFIH First Lien DIP Facility and consummation of the Repayment, within 110 days after the date of the Commitment Letter; <br><br> •   No adverse modifications or stays to the Order without the consent of the Left Lead DIP Facility Arranger; <br><br> •   Any order with respect to cash collateral in respect of the EFIH First Lien Notes or EFIH Second Lien Notes shall be in form and substance satisfactory to the Left Lead DIP Facility Arranger; and <br><br> •   Certain other customary provisions relating to compliance with the Order, entry of "first day motions," no appointment of a trustee or examiner with expanded powers. <br><br> 2.  Financial Statements, Budgets and Reports <br><br> •   The EFIH Debtors shall provide certain customary budgeting | EFIH First Lien DIP Credit Agreement at § 5. |

| Material Terms | Summary of Material Terms | Provision |
|---|---|---|
| | information | |
| | 3.  Performance of Obligations<br>•  The EFIH Debtors shall be in compliance with all obligations under the EFIH First Lien DIP Documents.<br><br>4.  Customary Closing Documents and Other Conditions<br>•  Delivery of customary legal opinions and certain certificates and notices of borrowing; (ii) evidence of authority; and (iii) obtaining of any governmental consents, if any, necessary in connection with the DIP Facilities.<br><br>•  The Loan Documents (which shall be consistent with the Documentation Principles) shall have been entered into by the Debtors.<br><br>•  The Agent shall have received results of a Uniform Commercial Code search for the jurisdiction of organization of the Debtors and such other lien and/or other searches reasonably requested by the Agent as are customary for transactions of this type.<br><br>•  The Agent shall have received proper financing statements (Form UCC-1 or the equivalent) for filing under the UCC in the jurisdiction of organization of each Debtor.<br><br>•  As a result of the extension of such credit, usage of the Commitments shall not exceed (i) the applicable Commitments then in effect and (ii) the aggregate amount authorized by the Interim Order. | |
| *Acknowledgments*<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B)(iii)* | EFIH shall make customary representations and warranties regarding the perfection and priority of liens securing EFIH First Lien DIP Financing, and amount and nature of existing indebtedness. | Requested in Order |
| *Waivers and Consents*<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B)(iv, v), (vii-x)* | *Waiver of Automatic Stay:* Upon the occurrence of an Event of Default and following the giving of five calendar days' notice to EFIH (the "Remedies Notice Period"), the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated without further notice to or order of the Bankruptcy Court, and the Agent shall be permitted to exercise all rights against the Collateral in accordance with the Loan Documents and the Order, as applicable, and shall be permitted to satisfy the Obligations, without further order or application or motion to the Bankruptcy Court and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code. Notwithstanding anything herein to the contrary, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated for the purposes of giving any notice contemplated hereunder.<br><br>*Waiver of Nonbankruptcy Law*: The EFIH DIP Liens and other | Requested in Order |

16

| Material Terms | Summary of Material Terms | Provision |
|---|---|---|
| | interests granted to the Agent and EFIH First Lien DIP Lenders are deemed valid, binding, perfected, enforceable, first-priority liens, non-avoidable and not subject to re-characterization or subordination as of the date of the Order.<br><br>***Waiver of Section 506(c):*** Usual and customary § 506(c) waiver.<br><br>***Indemnification:*** Usual and customary for financings of this type, including that Borrower shall indemnify, pay and hold harmless the Agent, the Joint Lead Arrangers, and the Lenders and their affiliates (and their respective controlling persons, directors, officers, partners, employees, agents, advisors and other representatives (collectively, the "<u>Related Parties</u>")) (each, an "<u>Indemnified Person</u>") against any loss, claim, damage, liability or expense incurred in respect of EFIH First Lien DIP Financing contemplated hereby or the use of proceeds thereof or the Transactions or any claim, litigation, investigation or proceeding (a "<u>Proceeding</u>") relating to any of the foregoing, with customary exceptions for gross negligence, bad faith, willful misconduct or material breach of such Indemnified Person or its Related Parties.<br><br>***Release of Claims and Causes of Action:*** The EFIH Debtors release the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders and each of their respective participants, and each of their respective affiliates, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, of and from any and all claims arising out of, in connection with, or relating to the EFIH First Lien DIP Financing, the EFIH First Lien DIP Documents, or the transactions contemplated thereunder. | |

## **Provisions to be Highlighted Pursuant to Local Bankruptcy Rule 4001-2(a)(i)**

21.    Local Bankruptcy Rule 4001-2(a)(i) requires a debtor to: (a) recite whether the proposed form of the financing order contains certain provisions of the type enumerated therein; (b) identify the location of such provisions in the proposed financing order; and (c) justify the inclusion of such provisions in the proposed financing order (the "<u>Highlighted Provisions</u>"). *See* Del. Bankr. L.R. 4001-2(a)(i).   The EFIH Debtors disclose the following provisions that are expected to be included in the Order that require highlighting under Local Bankruptcy Rule 4001-2(a)(i), specifically with respect to Local Bankruptcy Rules 4001-2(a)(i)(E) and (G).

17

22.     ***Use of Postpetition Loans from Prepetition EFIH Secured Creditors.*** Local Bankruptcy Rule 4001-2(a)(i)(E) requires the disclosure of the use of the proceeds of postpetition financing to repay prepetition indebtedness. The EFIH Debtors will use a portion of the proceeds of the EFIH First Lien DIP Facility for the Repayment.

23.     ***Priming Liens***. Local Bankruptcy Rule 4001-2(a)(i)(G) requires disclosure of provisions that prime any secured liens *without that lienholder's consent*. The EFIH First Lien DIP Facility grants the EFIH First Lien DIP Lenders a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all prepetition and postpetition property of the EFIH Debtors pursuant to section 364(d)(1) of the Bankruptcy Code.

24.     Upon entry of the Order, the EFIH Debtors will use the funds available under the EFIH First Lien DIP Financing to effectuate the Repayment. As a result, the EFIH First Lien DIP Lenders are not priming the Holders of EFIH First Lien Note Claims.  The Debtors anticipate that the Holders of the EFIH Second Lien Note Claims will consent to the priming of their Claims given the benefit of the Repayment, notably the interest savings to be realized.  To the extent the EFIH Second Lien Note Claims do not consent, the Debtors will be prepared to demonstrate that the Holders' interests in the collateral are adequately protected.  The EFIH First Lien DIP Lenders are not priming other secured creditors (if any) of the EFIH Debtors.

25.     The EFIH Debtors and their advisors determined that the EFIH First Lien DIP Credit Agreement offered the best option for obtaining the financing the EFIH Debtors now require, and the EFIH Debtors are not able to obtain financing on equal or better terms. The imposition of priming liens under section 364(d) is necessary and appropriate under the circumstances.

26.     ***506(c) Waiver***. Local Bankruptcy Rule 4001-2(a)(i)(C) requires disclosure of provisions that constitute a waiver, without *notice*, of whatever rights the estate may have under section 506(c) of the Bankruptcy Code.   While the Order will waive section 506(c) of the Bankruptcy Code with respect to the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders, the Debtors are providing notice to all parties in interest of the Order by filing it on the docket and serving it on all parties entitled to notice under the Bankruptcy Rules. Accordingly, while the EFIH Debtors do not believe that the 506(c) waiver needs to be highlighted under Local Bankruptcy Rule 4001-2(a)(i)(C), they have done so out of an abundance of caution and for the convenience of the Court and other parties in interest.

27.     ***Carve Out***. Local Bankruptcy Rule 4001-2(a)(i)(F) requires disclosure of *disparate* treatment between the professionals retained by the EFIH Debtors and the professionals retained by the unsecured creditors' committee with respect to a professional fee carve out. Here, the Carve Out contemplated in the Order applies equally to professionals retained by the EFIH Debtors and any statutory committee. Accordingly, while the EFIH Debtors do not believe that the terms of the Carve Out require disclosure under Local Bankruptcy Rule 4001-2(a)(i)(F), they have disclosed the provision out of an abundance of caution and for the convenience of the Court and other parties in interest.

## Background

28.     On April 29, 2014 (the "Petition Date"), each of the EFIH Debtors filed a voluntary petition with the Court under the Bankruptcy Code.  The EFIH Debtors are operating their businesses and managing their properties as EFIH Debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an

19

official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420], and an official committee of unsecured creditors of EFIH, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570]. Further information regarding the EFIH Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the EFIH Debtors' first day motions [D.I. 98].[9]

A.    **Overview of Existing EFIH First Lien DIP Facility.**

a.    **The EFIH First Lien DIP Motion [April 2014].**

29.    On April 29, 2014, the EFIH Debtors filed the *Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc. for Entry of (I) an Interim Order (A) Approving Certain Fees Related to Postpetition Financing and Granting Such Fees Administrative Expense Priority and (B) Scheduling a Final Hearing; and (II) a Final Order (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Authorizing the EFIH First Lien Refinancing, (E) Authorizing Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Motion, (F) Determining the Value of Secured Claims, and (G) Modifying the Automatic Stay* [D.I. 74] (the "EFIH First Lien DIP Motion"). The EFIH First Lien DIP Motion requested authority for the EFIH Debtors to, among other things, enter into the Existing DIP Credit Agreement, use EFIH Cash Collateral, and consummate the Prior EFIH First Lien

---

[9]    On August 29, 2016, the Court entered an order confirming the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9421], as it applies to the TCEH and EFH Shared Services Debtors.[9]    The TCEH Effective Date occurred on October 3, 2016.    *See Notice of Entry of TCEH Confirmation Order and Occurrence of TCEH Effective Date* [D.I. 9742].

Repayment and the EFIH First Lien Settlement (as defined in the EFIH First Lien DIP Motion).

On May 1, 2014, the Bankruptcy Court granted the relief requested, approving certain

commitment fees and other relief under the EFIH First Lien DIP Motion [D.I. 289]; on June 6,

2014, the Bankruptcy Court entered an order approving the EFIH First Lien DIP Motion on a

final basis [D.I. 859].

### b.    The Prior EFIH Second Lien Repayment [March 2015].

30.    On February 12, 2015, the EFIH Debtors filed the *Motion of Energy Future*

*Holdings Corp., Energy Future Intermediate Holding Company LLC, and EFIH Finance Inc. for*

*Entry of (A) Order (I) Authorizing Partial Repayment of EFIH Second Lien Notes;*

*(II) Approving EFIH DIP Consent; and (III) Authorizing Consent Fee and (B) Revised EFIH*

*First Lien DIP Order* [D.I. 3527].  On March 10, 2015, the Bankruptcy Court entered an order

approving the EFIH second lien partial repayment and an amended order approving the Existing

DIP Credit Agreement DIP Credit Agreement, revised to permit the EFIH second lien partial

repayment  (the "Existing DIP Order") [D.I. 3856].  The EFIH second lien partial repayment

allowed the EFIH Debtors to pay off a portion of the EFIH second lien principal, thereby

terminating the interest accrual on such amounts.

### c.    The Amendment to the EFIH First Lien DIP Credit Agreement [September 2016].

31.    On September 20, 2016 the Court entered the *Order (A) Authorizing the EFIH*

*Debtors to Enter Into A First Amendment to the EFIH Debtor-in-Possession Credit Agreement*

*(B) Authorizing Entry Into An Engagement Letter, (C) Authorizing Payment of Related Fees and*

*Expenses, (D) Authorizing the Use of Cash Collateral and (E) Modifying the Automatic Stay*

(the "Amendment") [D.I. 9601].    Among other things, the Amendment: (a) extended the

Maturity Date of the Existing DIP Credit Agreement from December 19, 2016 to June 30, 2017,

(b) allowed for the parties to the Existing DIP Credit Agreement to negotiate an extension of the Maturity Date from June 30, 2017 to December 30, 2017; and (c) increased the principal amount of the Existing EFIH First Lien DIP facility, by $75 million, from $5,400 million to $5,475 million.

**B.      The EFIH Debtors' Chapter 11 Cases and the EFIH Settlement Order.**

32.      On February 17, 2017, the Court entered an order confirming the *Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10853], as it applies to the EFH Debtors and EFIH Debtors (the "Eighth Confirmed Plan").[10]  At the same time the Eighth Confirmed Plan was confirmed, the Debtors announced an agreement in principle with significant holders of EFIH First Lien Note Claims and holders of EFIH Second Lien Note Claims, pursuant to which the parties agreed on the types of Claims asserted by such holders that would become Allowed Claims, as well as the Allowed amount of such Claims (the "EFIH Settlement").  The Bankruptcy Court entered the EFIH Settlement Order on March 24, 2017, approving the EFIH Settlement, and binding non-consenting holders of EFIH First Lien Note Claims and holders of EFIH Second Lien Note Claims (as well as consenting holders and the Debtors) to the EFIH Settlement.  The EFIH Settlement is evergreen and remains binding on the Debtors and all holders of EFIH First Lien Note Claims and Second Lien Note Claims whether or not the Eighth Confirmed Plan is consummated.

33.      The occurrence of the EFH Effective Date (as defined in the Eighth Confirmed Plan) is subject to a number of conditions precedent, including obtaining approval from the

---

[10]   *See Order Confirming the Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code as It Applies to the EFH Debtors and EFIH Debtors* [D.I. 10859].

Public Utility Commission of Texas (the Texas regulatory agency with oversight of Oncor Electric Delivery Company LLC's operations) (the "PUCT").  On April 13, 2017, the PUCT entered an order finding that the transactions contemplated by the Eighth Confirmed Plan, in their current form, were not in the "public interest" (*i.e.*, the required standard for approval under Texas law).  In the absence of approval from the PUCT, the Eighth Confirmed Plan, in its current form, cannot be consummated.

34.    The EFIH Debtors, and the plan sponsor under the Eighth Confirmed Plan, NextEra Energy, Inc., are continuing to explore all viable options for reviving the transactions contemplated by the Eighth Confirmed Plan.  At the same time, consistent with their rights and obligations, the EFIH Debtors are beginning to reengage with parties in interest regarding a "backup proposal."[11]  Nevertheless, the Debtors must in light of these developments obtain an extension of their postpetition financing and cash collateral usage and access to additional funds necessary to ensure sufficient liquidity through the duration of these chapter 11 cases.

### C.    Bases for the Repayment.

35.    As noted above, the EFIH Settlement Agreement and the EFIH Settlement Order are binding on the Debtors whether or not the Eighth Confirmed Plan is ever consummated. Taking into consideration the EFIH Settlement Agreement, the EFIH Debtors accrue approximately $5.0 million per month (or approximately $60 million per year) in interest on the principal amount of the EFIH First Lien Note Claims.  Continued interest accrual reduces the assets available for distribution to other EFIH creditors.  The EFIH Debtors estimate that the

---

[11]    As previously stated on the record, discussions on backup proposals are expressly contemplated and authorized under the merger agreement with NEE. *See In re Energy Future Holdings Corp.*, April 17, 2017 Hr'g Tr. (Husnick, C.) ("Your Honor, simultaneously with pursuing the NextEra deal we are pursuing and starting to reengage with the EFH and EFIH creditor constituencies and potentially other parties in interest regarding a backup proposal.  This is a process that is expressly contemplated under the NextEra merger agreement, expressly contemplated and permitted.").

Repayment will capture approximately $60 million in Estimated Gross Savings over a twelve-month period, assuming the EFIH Debtors' current market projections prove to be true.  As noted above, the EFIH Debtors cannot identify the Estimated Net Savings with finality at this time, without completing the syndication of the EFIH First Lien DIP Facility.  Consequently, prior to the Hearing, the EFIH Debtors will file with this Court an updated Incremental Cost Projection detailing the interest rates under the executed EFIH First Lien DIP Credit Agreement.

### The Fees Associated with the EFIH First Lien DIP Credit Agreement

36.    The flat fees payable in connection with the EFIH First Lien DIP Credit Agreement and Engagement Letter are estimated to fall within a range of approximately $15 to $25 million, depending on arranger fees.  These fees shall only be payable upon consummation of the proposed EFIH First Lien DIP Financing.

### Basis for Relief

I.    **The Court Should Authorize the EFIH Debtors to Obtain Alternative Postpetition Financing Through the EFIH First Lien DIP Credit Agreement and Engagement Letter.**

A.    **The Repayment and Entry into the EFIH First Lien DIP Credit Agreement and Engagement Letter are an Exercise of the EFIH Debtors' Sound and Reasonable Business Judgment.**

37.    Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances as described in greater detail below. Provided that an agreement to obtain secured credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its sound business judgment in obtaining such credit.  *See, e.g.*, *Trans World Airlines, Inc. v. Travelers Int'l AG* (*In re Trans World Airlines, Inc.*), 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment."); *In re L.A. Dodgers LLC*, 457 B.R. 308, 313

24

(Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Barbara K. Enters., Inc.*, No. 08-11474, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (explaining that courts defer to a debtor's business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[c]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."); *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of postpetition financing requires, inter alia, an exercise of "sound and reasonable business judgment.").

38.      Specifically, to determine whether the business judgment standard is met, a court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code.") (citation omitted).

39.      Bankruptcy courts often approve the repayment of secured debt to prevent the accrual of postpetition interest claims where such repayment is a reasonable exercise of sound business judgment.  This Court has held that the repayment of secured debt "may be authorized by section 363(b) of the Bankruptcy Code as a use of estate property outside the ordinary course

25

of business." *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 510-12 (Bankr. D. Del. 2010) (Sontchi, J.); *see also Law Debenture Trust Co. v. Calpine Corp. (In re Calpine Corp.)*, 356 B.R. 585, 597 (S.D.N.Y. 2007) (affirming order of bankruptcy court allowing repayment of prepetition secured debt under section 363(b)); *United States ex rel. Rural Electrification Admin. v. Wabash Valley Power Ass'n (In re Wabash Valley Power Ass'n)*, 167 B.R. 885, 889 (S.D. Ind. 1994) (affirming order of bankruptcy court granting debtor permission to repay prepetition secured debt).    Indeed, as this Court has stated, "such payments are routinely made in a number of different contexts" and "there is ample authority for such a payment." *Capmark*, 438 B.R. at 510-12.

40.    The EFIH Debtors' execution of the EFIH First Lien DIP Credit Agreement and Engagement Letter and the Repayment is an exercise of their sound business judgment that warrants the Court's approval.    The EFIH First Lien DIP Credit Agreement and Engagement Letter, together, enable the EFIH Debtors to potentially access over $825 million in additional cash through June 30, 2018 and eliminate approximately $5 million per month in interest expenses currently accruing under the EFIH First Lien Makewhole Claims.

41.    The EFIH Debtors developed the EFIH First Lien DIP Credit Agreement and Engagement Letter in good faith, at arm's length, and with the assistance of their advisors to obtain the required postpetition financing on terms most favorable to the EFIH Debtors.    Based on the advice of counsel and other professionals, and the EFIH Debtors' own analysis, the EFIH Debtors have determined that the EFIH First Lien DIP Credit Agreement and Engagement Letter provide the necessary financing supplement on more favorable terms than any other reasonably available alternative.

42.     Entry into the EFIH First Lien DIP Credit Agreement and Engagement Letter will allow the EFIH Debtors to increase the amount of available financing, prevent an Event of Default under the Existing EFIH First Lien DIP Credit Agreement, and provide the EFIH Debtors with critical, additional time to push forward on a path to exit from chapter 11.  Thus, entry into the EFIH First Lien DIP Credit Agreement and Engagement Letter is an exercise of the EFIH Debtors' sound business judgment.

## II.     The Proposed Payment of Fees is Appropriate.

43.     The EFIH Debtors have agreed, subject to Court approval and the effectiveness of the EFIH First Lien DIP Credit Agreement, to pay certain fees to the EFIH First Lien DIP Lenders and the EFIH First Lien DIP Agent in exchange for such lenders providing, and the EFIH First Lien DIP Agent arranging, the EFIH First Lien DIP Credit Agreement.  In other words, the EFIH Debtors will be obligated to pay certain fees only in the event that the EFIH First Lien DIP Financing is consummated pursuant to the terms of the EFIH First Lien DIP Credit Agreement.  These fees, together with the other provisions of the EFIH First Lien DIP Credit Agreement and Engagement Letter, represent the most favorable terms to the EFIH Debtors on which the EFIH First Lien DIP Lenders and the EFIH First Lien DIP Agent would agree to make the EFIH First Lien DIP Credit Agreement available.  When assessing the appropriateness of the EFIH First Lien DIP Credit Agreement fee, it is important to consider the EFIH Debtors' alternatives for maintaining the Existing EFIH First Lien DIP Facility.

44.     The EFIH Debtors compared the potential fees associated with the EFIH First Lien DIP Credit Agreement with the fees proposed by other potential DIP lenders when determining in their sound business judgment that the EFIH First Lien DIP Credit Agreement and Engagement Letter constituted the best terms on which the EFIH Debtors would obtain the postpetition financing necessary to continue their operations and prosecute their chapter 11

27

cases.  The EFIH Debtors believe that paying these fees in connection with effectuating the EFIH

First Lien DIP Credit Agreement is in the best interests of the EFIH Debtors' estates, creditors,

and other parties in interest.

**III.    The EFIH First Lien DIP Credit Agreement and Engagement Letter Was Negotiated in Good Faith and Should Be Afforded the Protection of Section 364(e) of the Bankruptcy Code.**

45.    Section 364(e) of the Bankruptcy Code protects a good faith lender's right to

collect on loans extended to a debtor, and its right in any lien securing those loans, even if the

authority of the debtor to obtain such loans or grant such liens is later reversed or modified on

appeal.  Specifically, section 364(e) provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

46.    The EFIH First Lien DIP Credit Agreement and the Engagement Letter was

developed in good faith and at arm's length among the EFIH Debtors, the EFIH First Lien DIP

Agent, and all of the EFIH First Lien DIP Credit Agreement obligations will be extended by the

EFIH First Lien DIP Lenders in good faith (as such term is used in section 364(e) of the

Bankruptcy Code).  No consideration is expected to be provided to any party in connection with

the EFIH First Lien DIP Credit Agreement other than as described in this Motion, the EFIH First

Lien DIP Credit Agreement, and the Engagement Letter.  Moreover, the EFIH First Lien DIP

Credit Agreement and Engagement Letter have been executed in express reliance upon the

protections afforded by section 364(e) of the Bankruptcy Code.  The EFIH First Lien DIP Agent

28

and EFIH First Lien DIP Lenders are entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Order or any provision thereof are vacated, reversed, or modified on appeal or otherwise.  *See* 11 U.S.C. § 364(e).

**IV.    Modification of the Automatic Stay to Implement the EFIH First Lien DIP Credit Agreement and Order is Appropriate Under the Circumstances.**

47.     The Order will contain provisions that provide that the automatic stay imposed under section 362(a) of the Bankruptcy Code be lifted to extent necessary to effectuate all of the terms and provisions contained therein, including, without limitation: (a) permit the EFIH Debtors to incur all liabilities and obligations under the EFIH First Lien DIP Credit Agreement, Engagement Letter, and the Order; and (b) authorize the EFIH Debtors to make payments in accordance with the terms of the Order.  Stay modification provisions of this sort are ordinary and usual features of debtor in possession financing facilities and, in the EFIH Debtors' business judgment, are reasonable under the present circumstances.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

48.     To implement the foregoing successfully, the EFIH Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

49.     The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds;

29

and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad

30

Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

50.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page left intentionally blank.]*

WHEREFORE, the EFIH Debtors respectfully request that the Court enter the

Order, substantially in the form attached hereto as **Exhibit A**.

Dated:  June 5, 2017
       Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
        defranceschi@rlf.com
        madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
        stephen.hessler@kirkland.com
        brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
        marc.kieselstein@kirkland.com
        chad.husnick@kirkland.com
        steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*