# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) Case No. 14-10979 (CSS) |
| *Debtors*. | ) (Jointly Administered) |
| | ) Related to D.I. 11318 |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF DELAWARE TRUST COMPANY, AS TRUSTEE FOR THE EFIH FIRST LIEN NOTES, WITH RESPECT TO MOTION OF ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC AND EFIH FINANCE, INC. FOR ENTRY OF AN ORDER APPROVING POSTPETITION REPLACEMENT FINANCING**

Delaware Trust Company, indenture and collateral trustee ("Trustee" or "First Lien Trustee") for the first-lien notes ("Notes" or "EFIH First Lien Notes") issued by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (together, "EFIH" or the "EFIH Debtors"), submits this limited objection and reservation of rights (the "Objection") with respect to the *Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. for Entry of an Order (A) Approving Postpetition Replacement Financing for Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Extending the Use of Cash Collateral by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (D) Authorizing Refinancing of Postpetition Secured Debt, (E) Authorizing Payment of Allowed EFIH First Lien Makewhole Claims, and (F) Modifying the Automatic Stay*, D.I. 11318 (the "DIP Motion").[1]

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the DIP Motion.

1. The Debtors seek authorization to obtain up to $6.3 billion in EFIH First Lien DIP Financing and to grant related relief to the EFIH First Lien DIP Agent and EFIH First Lien DIP Secured Parties (collectively, the "DIP Lenders"), including liens and superpriority claims that would prime the liens and claims of the First Lien Trustee and holders of the Allowed EFIH First Lien Claims.[2]

2. The First Lien Trustee does not object to that relief **if**, at the same time, the Debtors use some or all of the loan proceeds, as well as (if necessary) other cash on hand, to indefeasibly pay the Allowed EFIH First Lien Claims in full, in cash (and the Court orders them to do so). While that appears to be the Debtors' intent, *see* DIP Motion at 3 (seeking authority to "repay all allowed outstanding amounts" as "outlined in the EFIH Settlement," "including principal, accrued interest, and fees"), the proposed order attached to the DIP Motion (the "DIP Order") is not entirely clear.

3. The First Lien Trustee therefore files this limited objection to make clear that if the DIP Order is not revised in the following respects to order the Debtors to promptly pay off all Allowed EFIH First Lien Claims in full and in cash, the First Lien Trustee *does* object to the grant of priming liens, superpriority claims and related protections to the DIP Lenders, and the First Lien Trustee reserves all rights with respect thereto. Attached as Exhibit A are proposed changes to the DIP Order that are designed to address the concerns described in this limited objection, with the changes shown in a

---

[2] The term "Allowed EFIH First Lien Claims" means the Allowed EFIH First Lien Claims as defined in the Settlement Agreement (the "EFIH Settlement") that is attached as Exhibit 1 to the *Order Approving the EFIH Settlement By and Among the Debtors, Certain Holders of EFIH First Lien Note Claims, Certain Holders of EFIH Second Lien Note Claims, and Certain Holders of EFIH Unsecured Note Claims*, dated March 24, 2017 [D.I. 11048] (the "EFIH Settlement Order") and that were allowed by this Court pursuant to the EFIH Settlement Order.

blackline mark-up against the version of the DIP Order that the Debtors filed with the DIP Motion. Counsel for the First Lien Trustee has begun and expects to continue to discuss the First Lien Trustee's concerns and proposed revisions to the DIP Order with counsel for the Debtors and hopes to resolve those issues, but in the interim the First Lien Trustee is filing this limited objection to protect its rights.

4. *First*, the DIP Order *authorizes* the EFIH Debtors to make the Repayment, but it does not *direct* them to do so. As noted, the First Lien Trustee objects to the DIP Order, including the grant of priming liens and other protections to the DIP Lenders, unless the Allowed EFIH First Lien Claims are being paid off in full. Accordingly, the DIP Order should provide that the EFIH Debtors are "directed," not merely authorized, to repay all Allowed EFIH First Lien Claims, in full, as soon as practicable after the DIP Financing is consummated and funded.

5. *Second*, and relatedly, the DIP Motion notes that the "EFIH First Lien DIP Facility is not committed financing and, instead is a 'best efforts' obligation of the lead arrangers." *See* DIP Motion at 7. In the event that this 'best efforts' financing is unsuccessful and the EFIH First Lien DIP Facility fails to close, the DIP Lenders obviously should not be obtaining liens and superpriority claims that prime the liens and claims of the First Lien Trustee and holders of the Allowed EFIH First Lien Claims. The DIP Order should therefore be clarified to make clear that, in the event the EFIH First Lien DIP Facility is not consummated and funded, the priming liens, superpriority claims and other protections afforded to the DIP Lenders under the DIP Order will have no force and effect with respect to the First Lien Trustee and holders of the Allowed EFIH First Lien Claims.

6.Furthermore, in the event the EFIH First Lien DIP Facility is consummated and funded only with respect to the $5.475 billion in Term Loan Commitments but not with respect to the $825 million in Incremental Term Loans, such that the loan proceeds are sufficient only to refinance the Existing EFIH First Lien DIP Credit Agreement but not to make the Repayment of the Allowed EFIH First Lien Claims, then the First Lien Trustee objects to the grant of priming liens, superpriority claims and related protections to the DIP Lenders and the EFIH Debtors' use of cash collateral unless the EFIH Debtors provide the First Lien Trustee and the holders of the Allowed EFIH First Lien Claims with adequate protection of their interests.  *See* 11 U.S.C. §§ 363(c)(2), 363(e), 364(d).  The DIP Order currently provides that the First Lien Trustee and holders of the Allowed EFIH First Lien Claims are adequately protected because they are being repaid in connection with the Repayment (*see* DIP Order ¶ L, p.19), but if the Repayment does not occur, that obviously will not be true.  Accordingly, in the event the $825 million in Incremental Term Loans are not consummated and funded, and the Repayment of all Allowed EFIH First Lien Claims (other than those not yet incurred or, in the case of EFIH First Lien Fees, not yet invoiced) does not occur contemporaneously, the EFIH Debtors should be authorized and directed to pay, as adequate protection, all unpaid EFIH First Lien Fees that have been incurred through the date of such payment, in full in cash.  The DIP Order should be revised to so provide.

7.*Third*, assuming the full $6.3 billion in EFIH First DIP Financing is consummated and funded, the DIP Order must clearly direct the Debtors to pay in full *all* Allowed EFIH First Lien Claims.  While the DIP Order authorizes the repayment of principal and accrued interest on the EFIH First Lien Makewhole Claims (DIP Order ¶

4

(viii) on p.7, ¶ F(v) on p.14, and ¶ 17 on p.36), it does not clearly provide for payment of the other Allowed EFIH First Lien Claims, including the EFIH First Lien Non-Makewhole Interest and the EFIH First Lien Fees (each as defined in the EFIH Settlement). The DIP Order should be clarified to provide that *all* such Claims must be paid in full, with all accrued interest through the date of payment.

8. In that regard, the DIP Order should also be clarified to direct the Debtors to pay not only those EFIH First Lien Fees that have been incurred through the date of the Repayment, but also those EFIH First Lien Fees that may be incurred and/or invoiced thereafter. Under the terms of the EFIH Settlement and the EFIH Settlement Order, the allowed EFIH First Lien Fees include the fees, expenses and indemnification claims that may be incurred and/or invoiced in the future, including after the Effective Date of the Eighth Confirmed Plan[3] (if the Plan goes effective). *See* EFIH Settlement at pp.6-7. The First Lien Trustee may, for example, incur additional fees and expenses in connection with distribution of the Repayment to the holders of the Allowed EFIH First Lien Claims, or in the event that any holder were to assert a purported claim (however baseless) against the First Lien Trustee. The EFIH Settlement provides for $2 million to be funded into an escrow account to be held by the First Lien Trustee as a reserve available to pay such fees, expenses, and indemnification claims (the "Escrow Account"). *See id.* The DIP Order should be clarified to provide that the Debtors will also fund the $2 million Escrow Account.

---

[3] *Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code*, confirmed on February 17, 2017 [D.I. 10853, 10859-1] (the "Eighth Confirmed Plan").

5

9. *Fourth*, the DIP Order might conceivably be read as capping the amount of the Repayment at $600 million. *See* DIP Order ¶ (viii) on p.7 (authorizing the EFIH Debtors "to use up to $600 million of their cash (including proceeds from the Incremental Term Loans)" to make the Repayment), ¶17 (providing that the "Repayment is hereby approved and shall be in full satisfaction of the EFIH First Lien Makewhole Claims").

10. However, the Allowed EFIH First Lien Claims may exceed $600 million. The First Lien Trustee currently estimates that the amount of the Allowed EFIH First Lien Claims as of June 30, 2017 will equal or be close to $600 million, plus $2 million for the Escrow Account. That estimate may be understated, however. In particular, the total amount of Allowed EFIH First Lien Claims may increase to the extent that the EFIH First Lien Fees may exceed current estimates, and to the extent that additional interest and EFIH First Lien Fees accrue in the future. As noted, additional fees and expenses may be incurred after the Repayment, and additional interest will unquestionably accrue after June 30, 2017, if the Repayment does not occur by then. Therefore, the amount of the Allowed EFIH First Lien Claims could well exceed $600 million, particularly if they are not promptly paid in full following the June 26 hearing (assuming the DIP Financing is approved) and additional interest and EFIH First Lien Fees continue to accrue.

11. It appears from the DIP Motion that the DIP Lenders may be unwilling to permit the EFIH Debtors to use more than $600 million of the DIP Financing proceeds to make the Repayment (and to fund the Escrow Account). While the First Lien Trustee has no objection if the DIP Lenders want to cap the total amount of the *DIP loan proceeds* used to fund the Repayment (and the Escrow Account) to $600 million, the First Lien Trustee does object to any provision purporting to limit the total amount of funding for

6

the Repayment (and the Escrow Account)—from *any source*—to $600 million.  If the total amount of Allowed EFIH First Lien Claims and the $2 million Escrow Account exceeds $600 million, the EFIH Debtors should be authorized and directed to use up to $600 million of the DIP Financing proceeds, *plus any additional cash on hand to the extent necessary,* to pay off all Allowed EFIH First Lien Claims and to fund the Escrow Account in full.  The DIP Order should be clarified accordingly.

12. *Fifth*, the DIP Order purports to direct the First Lien Trustee and the Prepetition EFIH First Lien Creditors to "take all actions reasonably requested by the EFIH Debtors to implement the Repayment" and to "enter into and deliver any instruments, documents, certifications, supplements, and agreements that may be reasonably necessary or desirable to implement the Repayment."  *See* DIP Order ¶ 17.  While the First Lien Trustee is of course willing to work with the EFIH Debtors to accommodate reasonable requests necessary to accomplish Repayment of all Allowed EFIH First Lien Claims in full, the DIP Order should be clarified to make clear that the EFIH Debtors will promptly reimburse the First Lien Trustee and holders of Allowed EFIH First Lien Creditors for any reasonable expenses they incur in connection with such requests, as provided in the indentures and other documents governing the Allowed EFIH First Lien Claims, as well as in the EFIH Settlement and the EFIH Settlement Order.  More broadly, the DIP Order should be clarified to make clear that nothing in the foregoing provisions, or elsewhere in the DIP Order, prejudice or affect any of the rights of the First Lien Trustee and the holders of the Allowed EFIH First Lien Claims under the terms of the EFIH Settlement and the EFIH Settlement Order, and that all such rights are fully preserved and continue in full force and effect.

13. The First Lien Trustee has provided counsel to the Debtors with a proposed mark-up of the DIP Order in an attempt to address the concerns discussed above. As noted, the First Lien Trustee will work with the Debtors in an attempt to reach a mutually satisfactory resolution. The First Lien Trustee reserves all rights with respect thereto, and with respect to any further revisions to the DIP Order or related relief that the EFIH Debtors or any other party in interest may request, whether in connection with the DIP Motion or otherwise.

Dated: June 19, 2017

COLE SCHOTZ P.C.

 */s/ J. Kate Stickles*

| | |
|---|---|
| Norman L. Pernick (Bar No. 2290) | Warren A. Usatine |
| J. Kate Stickles (Bar No. 2917) | Court Plaza North |
| 500 Delaware Avenue, Suite 1410 | 25 Main Street |
| Wilmington, DE 19801 | Hackensack, NJ 07602 |
| Telephone: 302-652-3131 | Telephone: 201-489-3000 |
| Facsimile: 302-652-3117 | Facsimile: 201-489-1536 |
| npernick@coleschotz.com | wusatine@coleschotz.com |
| kstickles@coleschotz.com | |

WILMER CUTLER PICKERING HALE AND DORR LLP

| | |
|---|---|
| Philip D. Anker | Joel Millar |
| 7 World Trade Center | David Gringer |
| 250 Greenwich Street | Isley Gostin |
| New York, NY 10007 | 1875 Pennsylvania Avenue, NW |
| Telephone: 212-230-8800 | Washington, DC 2006 |
| Facsimile: 212-230-8888 | Telephone: 202-663-6000 |
| Philip.Anker@wilmerhale.com | Facsimile: 202-663-6363 |
| | Joel.Millar@wilmerhale.com |
| | David.Gringer@wilmerhale.com |
| | Isley.Gostin@wilmerhale.com |

DRINKER BIDDLE & REATH LLP
James H. Millar
1177 Avenue of the Americas
41st Floor
New York, NY 10036-2714
Telephone: 212-248-3264
Facsimile: 212-248-3141
James.Millar@dbr.com

*Counsel for Delaware Trust Company, as trustee*