## Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket No. [•]** |

**ORDER (A) APPROVING POSTPETITION
REPLACEMENT FINANCING FOR ENERGY FUTURE INTERMEDIATE
HOLDING COMPANY LLC AND EFIH FINANCE INC., (B) GRANTING
LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS,
(C) EXTENDING THE USE OF CASH COLLATERAL BY ENERGY
FUTURE INTERMEDIATE HOLDING COMPANY LLC AND EFIH FINANCE INC.,
(D) AUTHORIZING REFINANCING OF POSTPETITION SECURED DEBT, (E)
AUTHORIZING PAYMENT OF ALLOWED EFIH FIRST LIEN MAKEWHOLE
CLAIMS, AND (F) MODIFYING THE AUTOMATIC STAY**

Upon (A) the motion (the "EFIH First Lien DIP Motion") of Energy Future Intermediate Holding Company LLC ("EFIH"), and EFIH Finance Inc. (together with EFIH, the "Borrowers"), each as a debtor and debtor-in-possession (the Borrowers and any Guarantors (as defined herein), collectively, the "EFIH Debtors") in the above-captioned chapter 11 cases of the EFIH Debtors (collectively, the "Cases"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-2 of the Local Rules of

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), seeking entry of an order (this "Order"), *inter alia*:

(i)        authorizing (a) the Borrowers to enter into that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement (as amended, restated, supplemented, or otherwise modified from time to time, including by the EFIH DIP Consent (as defined herein), the "EFIH First Lien DIP Credit Agreement"), among the Borrowers, Citibank, N.A., as administrative agent and collateral agent (in such capacities, the "EFIH First Lien DIP Agent")[2] and the other agents and entities from time to time party thereto, and the financial institutions from time to time party thereto as lenders or assignees of the EFIH First Lien DIP Agent (as defined herein), including, for the avoidance of doubt, certain funds and accounts advised or sub-advised by Pacific Investment Management Company LLC, as investment manager for various funds and accounts ("PIMCO") (collectively, the "EFIH First Lien DIP Lenders"), to obtain secured postpetition financing (the "EFIH First Lien DIP Financing") on a superpriority basis, consisting of a superpriority term loan in an aggregate principal amount of $[5,475,000,000] (as described in the EFIH First Lien DIP Credit Agreement, the "Term Loan Commitments") and (b) authorizing the Borrowers to incur up to $[825,000,000][3] under the Incremental Term Loan Facility (as defined below and as described in the EFIH First Lien DIP Credit Agreement, the "Incremental Term Loans"), $600,000,000 of which the EFIH Debtors intend to borrow

---

[2]    As used herein, the term "EFIH First Lien DIP Agent" refers to Citibank, N.A., as administrative agent under the EFIH First Lien DIP Credit Agreement, Citibank, N.A., as collateral agent under the EFIH First Lien DIP Credit Agreement, or both, as the context requires.  All references in this Order to the EFIH First Lien DIP Agent with respect to the Secured Hedge Banks or the Secured Cash Management Banks (each, as defined herein) shall mean Citibank, N.A., in its capacity as collateral agent.  Citibank, N.A., in its capacity as administrative agent, has no duties or obligations to the Secured Hedge Banks or the Secured Cash Management Banks.

[3]    The final allocation of the $6,300,000,000 as between the Term Loan Commitments and the Incremental Term Loans will be identified after the syndication of the EFIH First Lien DIP Financing.

immediately upon the closing of the EFIH First Lien DIP Financing, for total aggregate financing of up to $6,300,000,000;

(ii)     authorizing any other entities, if any, that subsequently commence jointly administered chapter 11 cases and become guarantors under the EFIH First Lien DIP Credit Agreement (the "Guarantors") to enter into the Guarantee (as defined in the EFIH First Lien DIP Credit Agreement);

(iii)     authorizing each of the EFIH Debtors to execute and deliver the EFIH First Lien DIP Credit Agreement, the Engagement Letter (as defined in the EFIH First Lien DIP Motion), the Fee Letter (as defined in the EFIH First Lien DIP Credit Agreement), the applicable Security Documents (as defined in the EFIH First Lien DIP Credit Agreement), and the other related documents (collectively, the "EFIH First Lien DIP Documents") (including any intercreditor agreements that are expressly permitted under the EFIH First Lien DIP Documents executed either in conjunction with any proposed second lien debtor-in-possession financing facility that is expressly permitted by the EFIH First Lien DIP Documents (the "EFIH Second Lien DIP Facility," and such intercreditor agreement, the "EFIH Second Lien DIP Intercreditor Agreement"), if any, or in conjunction with any proposed additional tranches of term loans that are expressly permitted by the EFIH First Lien DIP Documents that may be issued as part of the EFIH First Lien DIP Credit Agreement, as amended, or pursuant to a separate facility (the "Incremental Term Loan Facility," and such intercreditor agreement, the "Incremental DIP Intercreditor Agreement," and the Incremental DIP Intercreditor Agreement together with the EFIH Second Lien DIP Intercreditor Agreement, the "EFIH DIP Intercreditor Agreements"), if any) by and among the EFIH Debtors, the EFIH First Lien DIP Agent, any administrative agent and collateral agent under any EFIH Second Lien DIP Facility (the "EFIH Second Lien DIP

4

Agent"), if applicable, and any separate administrative agent and collateral agent under any Incremental Term Loan Facility (the "Incremental DIP Agent"), if applicable, and to perform such other acts as may be necessary or desirable in connection with the EFIH First Lien DIP Documents;

(iv)    granting allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (as defined herein) in respect of (a) the EFIH First Lien DIP Financing and all obligations owing thereunder and under the EFIH First Lien DIP Documents, (b) obligations (the "Secured Hedge Obligations") owing under or in connection with any Secured Hedging Agreements (as defined in the EFIH First Lien DIP Credit Agreement) with the EFIH Debtors, and (c) any obligations (the "Secured Cash Management Obligations") owing under or in connection with and any Secured Cash Management Agreements (as defined in the EFIH First Lien DIP Credit Agreement) to the EFIH First Lien DIP Agent and the EFIH First Lien DIP Secured Parties (as defined herein) (collectively, and including all "Obligations" as described in the EFIH First Lien DIP Credit Agreement, the "EFIH First Lien DIP Obligations");

(v)    granting to the EFIH First Lien DIP Agent, for the benefit of itself, any sub-agents, the EFIH First Lien DIP Lenders, Hedge Banks (as defined in the EFIH First Lien DIP Credit Agreement) that are or become parties to Secured Hedging Agreements (the "Secured Hedge Banks") with the EFIH Debtors,[4] and Cash Management Banks (as defined in the EFIH First Lien DIP Credit Agreement) that are or become parties to Secured Cash Management Agreements (the

---

[4]    For the avoidance of doubt, the EFIH Debtors have not requested or been granted any relief pursuant to the terms of the *Interim Order Authorizing the Debtors To (A) Continue Performing Under the Prepetition Hedging and Trading Arrangements, (B) Pledge Collateral and Honor Obligations Thereunder, and (C) Enter Into and Perform Under Trading Continuation Agreements and New Postpetition Hedging and Trading Arrangements*, and, as of the date of this Order, the EFIH Debtors have not otherwise been authorized by the Court to enter into or post collateral under any Hedging Agreements (as defined in the EFIH First Lien DIP Credit Agreement).

ActiveUS 163231841ActiveUS 163407148

"Secured Cash Management Banks" and, collectively with the EFIH First Lien DIP Lenders and the Secured Hedge Banks, the "EFIH First Lien DIP Secured Parties") with the EFIH Debtors, automatically perfected security interests in and liens upon all of the EFIH DIP Collateral (as defined herein), including, without limitation, all property constituting "cash collateral," as defined in section 363(a) of the Bankruptcy Code, which security interests and liens shall be subject to the priorities set forth in this Order;

(vi)    authorizing and directing the EFIH Debtors to irrevocably and indefeasibly repay in full, with the proceeds of the EFIH First Lien DIP Financing, all loan and other obligations (other than any indemnities and other contingent obligations that are intended to survive repayment of the obligations under the Existing DIP Credit Agreement (as defined below)) under that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement (as amended, restated, supplemented, or otherwise modified from time to time prior to such repayment, including by the EFIH Consent, the "Existing DIP Credit Agreement" and, together with the Mortgages, if any, (as referenced and defined in the Loan Documents) and all other documentation executed in connection therewith, the "Existing DIP Facility Documents"), between Borrowers, the financial institutions from time to time party thereto as lenders or assignees of the Existing DIP Agent (as defined below) (the "Existing DIP Lenders"), and Deutsche Bank AG New York Branch as administrative agent and collateral agent (in such capacities, the "Existing DIP Agent") and the other agents and entities from time to time party thereto (such repayment in full, the "Closing Date Refinancing").

(vii)    authorizing and directing the EFIH Debtors to pay the principal, interest, fees, expenses, and other amounts payable and/or reimbursable under the EFIH First Lien DIP Documents, including the Fee Letter, or this Order as such amounts become due, all invoiced

reasonable and documented out of pocket costs, fees, and expenses (in the case of legal fees, limited to the legal fees of one primary counsel and one local counsel) incurred by PIMCO in connection with the Cases, and closing fees, arrangement fees, incentive fees, and administrative agent's fees, all to the extent provided in, and in accordance with the terms of, the EFIH First Lien DIP Documents and this Order;

(viii)    authorizing the EFIH Debtors to use up to $600 million of their cash (including the proceeds from the Incremental Term Loans) to repay outstanding principal and accrued interest on the (plus any additional cash on hand, to the extent necessary) to irrevocably and indefeasibly repay in full all Allowed EFIH First Lien Makewhole Claims (as defined below in the Settlement Agreement (the "EFIH Settlement") that is attached as Exhibit 1 to the *Order Approving the EFIH Settlement By and Among the Debtors, Certain Holders of EFIH First Lien Note Claims, Certain Holders of EFIH Second Lien Note Claims, and Certain Holders of EFIH Unsecured Note Claims*, dated March 24, 2017 [D.I. 11048] (the "EFIH Settlement Order")), on a pro rata basis (as specified in and in accordance with the EFIH Settlement and Schedule 1 thereto), [5] at or after the consummation of the EFIH First Lien DIP Credit Agreement (the "Repayment");

(ix)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the EFIH First Lien DIP Documents, as limited pursuant hereto, and this Order;

(x)    authorizing the EFIH Debtors to use cash collateral and other collateral pursuant to sections 363(c) and 363(e) of the Bankruptcy Code and Rule 4001(b) of the Bankruptcy Rules

---

[5]  "Pro Rata" shall mean Pro Rata within each of (a) the EFIH First Lien Notes that bear interest under the applicable agreements at a rate of 7.375% per annum (CUSIPs 29269Q AE7 & U29197); (b) the EFIH First Lien Notes that bear interest under the applicable agreements at a rate of 10.000% per annum (CUSIP 29269QAA5); and (c) the EFIH First Lien Notes that bear interest under the applicable agreements at a rate of 10.500% per annum (CUSIPs 29269QAJ3 & U29197AG2).

ActiveUS 163231841 ActiveUS 163407148

and the Local Bankruptcy Rules, including Local Bankruptcy Rule 4001-2, on the terms and conditions set forth in this Order; and

(xi)    authorizing the EFIH Debtors to (a) incur an aggregate principal amount of up to $6,300,000,000, in the form of (a) $[5,475,000,000] in Term Loan Commitments, on account of (i) the Closing Date Refinancing, (ii) transaction fees, liabilities and expenses (including all Allowed Professional Fees) (as defined herein) and other administration costs incurred in connection with the Cases and the negotiation, syndication, documentation (including any engagement or commitment letters), execution and closing of the EFIH First Lien DIP Financing and the Closing Date Refinancing (which Closing Date Refinancing Amounts may be borrowed immediately upon entry of the Order, and on the terms set forth in the EFIH First Lien DIP Documents), and (b) $[825,000,000] in Incremental Term Loans (1) $600,000,000 of which shall be on account of the Repayment (which Repayment amounts may be borrowed immediately upon entry of the Order, and on the terms set forth in the EFIH First Lien DIP Documents), and (2) $225,000,000 of which shall be on account of working capital needs and other general corporate purposes of the EFIH Debtors, as provided for in the EFIH First Lien DIP Documents (including the EFIH First Lien DIP Credit Agreement) (the "Working Capital Refinancing"), *provided that*, the EFIH Debtors shall not be authorized to borrow under the EFIH First Lien DIP Financing on account of Working Capital Refinancing  unless (i) NextEra Energy, Inc. ("NEE") provides a written consent, authorizing such borrowings on account of the Working Capital Refinancing in accordance with that certain merger agreement approved by the Bankruptcy Court on September 19, 2016 [D.I. 9584] (the "Merger Agreement"), (ii) the Court enters an order finding that NEE is acting unreasonably in withholding, conditioning and/or delaying its consent to such borrowings

8

on account of the Working Capital Refinancing, or (iii) the Merger Agreement is terminated in accordance with its terms.[65]

The Court having considered the *EFIH First Lien DIP Motion*, the *Declaration of David Ying in Support of the Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc., for Entry of An Order (A) Approving Postpetition Replacement Financing for Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Extending the Use of Cash Collateral by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (D) Authorizing Refinancing of Postpetition Secured Debt, (E) Authorizing Payment of Allowed EFIH First Lien Makewhole Claims, and (F) Modifying the Automatic Stay,* sworn to on June 5, 2017, the EFIH First Lien DIP Documents, all filed objections and responses, and the evidence submitted or adduced and the arguments of counsel made at the hearing held on June 26, 2017 (the "Hearing"); and notice of the Hearing having been given in accordance with rules 4001(b), (c), and (d), and 9014 of the Bankruptcy Rules; and all objections, if any, to the relief set forth in this Order having been withdrawn, resolved, or overruled by the Court; and it appearing that it is fair and reasonable and in the best interests of the EFIH Debtors and their estates, creditors, and other parties in interest, and is appropriate for the continued operation of the EFIH Debtors' businesses; and it further appearing that the EFIH Debtors are unable to obtain unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code; and after due deliberation and consideration and for good and sufficient cause appearing therefor;

---

[65] The final allocation of the $6,300,000,000 as between the Term Loan Commitments and the Incremental Term Loans will be identified after the syndication of the EFIH First Lien DIP Financing.

ActiveUS 163231841ActiveUS 163407148

BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING BY THE EFIH DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[76]

      A.      <u>Petition Date</u>.  On April 29, 2014 (the "<u>Petition Date</u>"), each of the EFIH Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") commencing these Cases.  On June 5, 2014, the Court entered an order approving the joint administration of these Cases on a final basis.

      B.      <u>Debtors-in-Possession</u>.  The EFIH Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

      C.      <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over this matter, these proceedings, and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter as set forth in this Order is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the EFIH Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Bankruptcy Rules to the entry of a final order by the Court in connection with the EFIH First Lien DIP Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue for the Cases and the EFIH First Lien DIP Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[76]   Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

ActiveUS 163231841ActiveUS 163407148

D.     Committee Formation.   On October 27, 2014, the U.S. Trustee appointed a committee of unsecured creditors to represent the interests of unsecured creditors in the Cases and the chapter 11 cases of certain affiliates of the EFIH Debtors (the "Creditors' Committee").

E.     Existing DIP Orders.   The Court entered the *Final Order (I) Approving Postpetition Financing for Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Approving the Use of Cash Collateral by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (D) Authorizing the EFIH First Lien Repayment, (E) Authorizing Issuance of a Roll-Up Debt to the Extent Authorized by the Settlement Orders, and (F) Modifying the Automatic Stay* [D.I. 859] on June 6, 2014, the *Amended Final Order (I) Approving Postpetition Financing for Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Approving the Use of Cash Collateral by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (D) Authorizing the EFIH First Lien Repayment, (E) Authorizing Issuance of a Roll-Up Debt to the Extent Authorized by the Settlement Orders, and (F) Modifying the Automatic Stay* on March 10, 2015 [D.I. 3856], and the *Order (A) Authorizing the EFIH Debtors to Enter into a First Amendment to the EFIH Debtor-in-Possession Credit Agreement, (B) Authorizing Entry into an Engagement Letter, (C) Authorizing Payment of Related Fees and Expenses, (D) Authorizing the Use of Cash Collateral, and (E) Modifying the Automatic Stay* on September 20, 2016 [D.I. 9601] (collectively, the "Existing DIP Orders").

F.     EFIH Prepetition Indebtedness:

(i)     Prepetition EFIH First Lien Notes.   Prior to the Petition Date, the EFIH Debtors:  (a) issued (originally and/or in exchanges) the 10.00% Senior Secured First Lien Notes

ActiveUS 163231841ActiveUS 163407148

due 2020 (the "EFIH First Lien 2020 Notes"), under that certain Indenture dated as of August 17, 2010 (as amended, modified, or supplemented, the "EFIH First Lien 2020 Notes Indenture"); (b) issued (originally and/or in exchanges) the 6.875% Senior Secured First Lien Notes due 2017 (the "EFIH First Lien 2017 Notes", and, together with the EFIH First Lien 2020 Notes, the "EFIH First Lien Notes", and the holders of such EFIH First Lien Notes, the "Prepetition EFIH First Lien Creditors"), under that certain Indenture dated as of August 14, 2012 (as amended, modified, or supplemented the "EFIH First Lien 2017 Notes Indenture," and, together with the EFIH First Lien 2020 Notes Indenture, the "EFIH First Lien Indentures," and the trustee under the EFIH First Lien Indentures, the "EFIH First Lien Notes Trustee"); and (c) entered into the Security Documents (as defined in the EFIH First Lien Indentures, and collectively with the EFIH First Lien Indentures, the EFIH First Lien Notes, and the Registration Rights Agreements executed in connection therewith, the "EFIH First Lien Documents," and all ~~purported~~ Obligations as defined in and under the EFIH First Lien Documents, the "Prepetition First Lien Obligations").

(ii)     Prepetition EFIH Second Lien Notes.  Prior to the Petition Date, the EFIH Debtors (a) issued (originally and/or in exchanges) the 11.00% Senior Secured Second Lien Notes due 2021 (the "EFIH Second Lien 2021 Notes"), under that certain Indenture dated as of April 25, 2011 (as amended, modified, or supplemented, the "EFIH Second Lien Notes Indenture," and, the indenture trustee thereunder, the "EFIH Second Lien Notes Trustee," and the EFIH First Lien Notes Trustee, together with the EFIH Second Lien Notes Trustee, the "Prepetition Secured Notes Trustees" and the EFIH Second Lien Notes Indenture, together with the EFIH First Lien Notes Indentures, the "Prepetition EFIH Secured Indentures"); (b) issued (originally and/or in exchanges) the 11.75% Senior Secured Second Lien Notes due 2022 (the

12

"EFIH Second Lien 2022 Notes", collectively with the EFIH Second Lien 2021 Notes, the "EFIH Second Lien Notes," and the holders of EFIH Second Lien Notes, the "Prepetition EFIH Second Lien Creditors," and the Prepetition EFIH Second Lien Creditors, together with the Prepetition EFIH First Lien Creditors, the "Prepetition EFIH Secured Creditors," and the EFIH Second Lien Notes, together with the EFIH First Lien Notes, the "Prepetition EFIH Secured Notes"), under the EFIH Second Lien Indenture; and (c) entered into the Security Documents (as defined in the EFIH Second Lien Indenture, and collectively with the EFIH Second Lien Indenture, the EFIH Second Lien Notes, and the Registration Rights Agreements executed in connection therewith, the "EFIH Second Lien Documents," and all ~~purported~~ Obligations as defined in and under the EFIH Second Lien Documents, the "Prepetition Second Lien Obligations," and the Prepetition First Lien Obligations together with the Prepetition Second Lien Obligations, the "Prepetition Secured Obligations").   On March 10, 2015, the Bankruptcy Court entered the *Order (A) Authorizing Partial Repayment of EFIH Second Lien Notes; (B) Approving EFIH DIP Consent; and (C) Authorizing Consent Fee*, following which the EFIH Debtors satisfied approximately $750 million in Prepetition Second Lien Obligations [D.I. 3855].

       (iii)    EFIH Collateral Trust Agreement.  Prior to the Petition Date, the EFIH Debtors entered into the collateral trust agreement (the "EFIH Collateral Trust Agreement") by and among EFIH, and CSC Trust Company of Delaware (now known as Delaware Trust Company), in its capacity as EFIH First Lien Notes Trustee and Collateral Trustee under the EFIH First Lien Documents and EFIH Second Lien Documents, and Computershare, in its capacity as EFIH Second Lien Notes Trustee, relates to the relative rights and remedies of the Prepetition EFIH First Lien Creditors and the Prepetition EFIH Second Lien Creditors with respect to the collateral securing their respective obligations.

13

(iv)    <u>Prepetition EFIH Senior PIK Notes / Other Unsecured Indebtedness</u>.  Prior to the Petition Date, the Issuers issued (originally and/or in exchanges) the 11.25%/12.25% Senior Toggle Notes due 2018 (the "<u>EFIH Senior PIK Notes</u>," and the holders of such notes, the "<u>Prepetition EFIH PIK Note Creditors</u>") under that certain Indenture dated as of December 5, 2012 (as amended, modified, or supplemented, the "<u>EFIH Senior PIK Notes Indenture</u>," together with a related Registration Rights Agreement, the "<u>EFIH PIK Notes Documents</u>," and the indenture trustee thereunder, the "<u>EFIH PIK Notes Trustee</u>," and all purported Obligations as defined in and under the EFIH PIK Notes Documents, the "<u>Prepetition PIK Notes Obligations</u>"). Approximately $1.566 billion of EFIH Senior PIK Notes were outstanding as of the Petition Date.[87]

(v)    <u>Settled Claims</u>.  Pursuant to the *Order Approving EFIH First Lien Settlement* [D.I. 858] (the "<u>First Lien Settlement Order</u>"), the Court approved the settlement and compromise of the claims of certain holders of the EFIH First Lien Notes that are signatories to the Restructuring Support Agreement (as defined in the *First Day Declaration*) and other holders of the EFIH First Lien Notes that timely elected to participate in the EFIH First Lien Settlement (as defined in the First Lien Settlement Order) (collectively, the "<u>Settling EFIH First Lien Note Holders</u>," and the claims of the Settling EFIH First Lien Note Holders, the "<u>Settled First Lien Claims</u>").  On March 24, 2017, the Bankruptcy Court entered the *Order Approving the EFIH Settlement Between the Debtors, Certain Holders of EFIH First Lien Note Claims, Certain Holders of EFIH Second Lien Note Claims, and Certain Holders of EFIH Unsecured Note*

---

[87]    As described in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions* [D.I. 98] (the "<u>First Day Declaration</u>"), the EFIH Debtors also have approximately $2 million of additional unsecured notes outstanding and guarantee approximately $60 million of unsecured notes issued by EFH.

14

*Claims* [D.I. 11048] (the "EFIH Settlement Order," the makewhole claims in respect of the EFIH First Lien Notes allowed thereunder, the "EFIH First Lien Makewhole Claims," the remaining claims in respect of the EFIH First Lien Notes allowed thereunder (other than the EFIH First Lien Notes), the "Allowed EFIH First Lien Claims", the Allowed EFIH First Lien Makewhole Claims collectively with the other claims allowed pursuant to the EFIH Settlement Order and the Settled First Lien Claims, the "Settled Claims").*.*

(vi)    Rights Reserved.  Except with respect to (a) the Settled Claims or (b) as may be set forth in that certain plan support agreement, dated January 2, 2017 by and between the EFH/EFIH Debtors, the PIK Notes Trustee, and certain creditor parties thereto [D.I. 10530] (as may be amended, modified, or supplemented from time to time), until such time such plan support agreement is terminated in accordance with its terms, the EFIH Debtors do not stipulate to the validity or enforceability of the Prepetition Secured Obligations or the Prepetition PIK Notes Obligations and expressly reserve all rights related thereto, and all parties in interest in these Cases reserve rights with respect thereto.

G.    Findings Regarding Postpetition Financing.

(i)    Request for Postpetition Financing.  The EFIH Debtors seek authority to obtain the EFIH First Lien DIP Financing on the terms described in this Order and in the EFIH First Lien DIP Documents to allow them to administer their Cases, satisfy corporate obligations (including the Working Capital Financing on the terms herein), and consummate the Closing Date Refinancing and the Repayment.

(ii)    Priming of Prepetition EFIH Liens. The priming of (a) the liens purportedly securing the Prepetition First Lien Obligations (the "Prepetition First Priority Liens") and (b) the liens purportedly securing the Prepetition Second Lien Obligations (the "Prepetition Second

ActiveUS 163231841ActiveUS 163407148

Priority Liens") under section 364(d) of the Bankruptcy Code, as contemplated by the EFIH First Lien DIP Financing and as further described below, will enable the EFIH Debtors to obtain the EFIH First Lien DIP Financing and to maximize the value of the EFIH Debtors' estates for the benefit of the estates and their creditors.

(iii)    _Need for Postpetition Financing_.  Entry of this Order is necessary to allow the EFIH Debtors to consummate the Closing Date Refinancing and the Repayment, and to administer and preserve the value of their estates and satisfy other corporate expenses (including the Working Capital Financing, on the terms herein).  The EFIH Debtors do not have sufficient available sources of working capital and financing to satisfy their restructuring expenses and obligations, and consummate the Closing Date Refinancing and the Repayment without the EFIH First Lien DIP Financing.

(iv)    _No Credit Available on More Favorable Terms_.  Given their current financial condition, financing arrangements, and capital structure, the EFIH Debtors have been unable to obtain financing from sources other than the EFIH First Lien DIP Lenders on terms more favorable than the EFIH First Lien DIP Financing.  The EFIH Debtors have been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The EFIH Debtors have also been unable to obtain financing, in a sufficient amount or on adequate terms to satisfy the EFIH Debtors' obligations and enable the Closing Date Refinancing, and the Repayment solely by having the financing (a) have priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, (b) be secured by a lien on property of the EFIH Debtors and their estates that is not otherwise subject to a lien, or (c) be secured solely by a junior lien on property of the EFIH Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not

16

otherwise available on the terms available under the EFIH First Lien DIP Financing without granting the EFIH First Lien DIP Agent, for the benefit of itself, its sub-agents, and the EFIH First Lien DIP Secured Parties, (x) perfected security interests in and liens on (each, as provided in this Order) all of the EFIH Debtors' existing and after-acquired assets with the priorities set forth in this Order, (y) superpriority claims as set forth in this Order, and (z) the other protections set forth in this Order.

(v)      Separateness.  The EFIH Debtors, the EFIH First Lien DIP Agent, and the EFIH First Lien DIP Lenders hereby acknowledge and agree to the separateness provisions in Section 11.20 of the EFIH First Lien DIP Credit Agreement.

H.      Use of Proceeds of the EFIH First Lien DIP Financing and Payment of EFIH First Lien DIP Obligations.  As a condition to entry into the EFIH First Lien DIP Credit Agreement and the extension of credit under the EFIH First Lien DIP Financing, the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders require, and the EFIH Debtors have agreed, that proceeds of the EFIH First Lien DIP Financing shall be used, in each case in a manner consistent with the terms and conditions of the final EFIH First Lien DIP Documents and this Order, and the terms of the Budget (defined below) (but not subject to any Budget compliance covenant in respect thereof):  (a) first, using $5,475,000,000 of Term Loan Commitments, to (i) consummate the Closing Date Refinancing, and (ii) pay transaction fees, liabilities and expenses (including all Allowed Professional Fees) and other administration costs and fees incurred in connection with the Cases and the negotiation, syndication, documentation (including any engagement or commitment letters), execution and closing of the EFIH First Lien DIP Financing and the Closing Date Refinancing,   (b) second, [using the Incremental Term Loans and pursuant to the Incremental Term Loan Facility], to consummate the Repayment, and (c) third, [using the

Incremental Term Loans and pursuant to the Incremental Term Loan Facility], to finance working capital needs and other general corporate purposes of the EFIH Debtors (including the Working Capital Financing), as provided for in the EFIH First Lien DIP Credit Agreement and the EFIH First Lien DIP Documents.[98] In no event, however, shall the proceeds of the EFIH First Lien DIP Financing be used toward the payment of any Prepetition Second Lien Obligations without the consent of the EFIH First Lien DIP Agent and the Required Lenders (as defined in the EFIH First Lien DIP Credit Agreement.

I.      Section 506(c).  In light of the EFIH First Lien DIP Agent's, the EFIH First Lien DIP Lenders', the EFIH First Lien Notes Trustee's, and the Prepetition EFIH First Lien Creditors' agreement to subordinate their liens and superpriority claims to the Carve Out (as defined herein), the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, the EFIH First Lien Notes Trustee, and the Prepetition EFIH First Lien Creditors are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

J.      Good Faith of the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders.

(i)      Willingness To Provide Financing.  The EFIH First Lien DIP Lenders have indicated a willingness to provide financing to the EFIH Debtors subject to (a) the entry of this Order, (b) approval of the terms and conditions of the EFIH First Lien DIP Financing, and the EFIH First Lien DIP Documents, and (c) entry of findings by the Court that (1) such financing is in the best interests of the EFIH Debtors' estates, (2) the EFIH First Lien DIP Agent and each of the EFIH First Lien DIP Lenders are extending credit to the EFIH Debtors pursuant to the EFIH

---

[98]    The final allocation of the $6,300,000,000 as between the Term Loan Commitments and the Incremental Term Loans will be identified after the syndication of the EFIH First Lien DIP Financing.

ActiveUS 163231841ActiveUS 163407148

First Lien DIP Documents in good faith, and (3) the EFIH First Lien DIP Agent's and the EFIH First Lien DIP Lenders' claims, superpriority claims, security interests and liens, and other protections granted pursuant to this Order and the EFIH First Lien DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Order or any other order.

(ii)     Business Judgment and Good Faith Pursuant to Section 364(e).  The terms and conditions of the EFIH First Lien DIP Financing and the EFIH First Lien DIP Documents, and the fees and expenses paid and to be paid thereunder and hereunder, are fair, reasonable, and the best available to the EFIH Debtors under the circumstances, reflect the EFIH Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.   The EFIH First Lien DIP Financing was negotiated in good faith and at arms' length among the EFIH Debtors, the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders.   Credit to be extended under the EFIH First Lien DIP Financing shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code.   Accordingly, the EFIH First Lien DIP Agent and each of the EFIH First Lien DIP Lenders are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Order.

K.     Good Cause.  The relief requested in the EFIH First Lien DIP Motion as set forth in this Order is appropriate and in the best interests of, and will benefit, the EFIH Debtors and their estates, creditors, and other parties in interest, as its implementation will, *inter alia,* provide

ActiveUS 163231841ActiveUS 163407148

the EFIH Debtors with the necessary liquidity to preserve and maximize the value of the EFIH Debtors' estates for the benefit of all of the EFIH Debtors' creditors and other parties in interest.

L.      Adequate Protection.  The EFIH First Lien DIP Financing and the EFIH Debtors' use of cash collateral satisfy sections 363(c)(2) and 364(d)(4) of the Bankruptcy Code because (a) the Allowed EFIH First Lien ~~Makewhole~~ Claims are being repaid in connection with the Repayment authorized by this Order, and (b) the Prepetition EFIH Second Lien Creditors are adequately protected.

M.      Notice.  In accordance with rules 2002, 4001(c) and (d), and 9014 of the Bankruptcy Rules, and the Local Bankruptcy Rules, notice of the Hearing and the relief requested in the EFIH First Lien DIP Motion has been provided by the EFIH Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (a) the Office of the U.S. Trustee for the District of Delaware; (b) Wilmington Trust, N.A., in its capacity as administrative agent under the Texas Competitive Electric Holdings Company LLC ("TCEH LLC" and, together with Energy Future Competitive Holdings Company LLC ("EFCH") and their subsidiaries, "TCEH")) first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (c) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (d) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% Energy Future Holdings Corp. ("EFH") senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy

notes (series R) due 2034, and counsel thereto; (e) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (f) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (g) BOKF, NA, dba Bank of Arizona, in its capacity as indenture trustee under 11.50% TCEH senior secured notes due 2020, and counsel thereto; (h) ~~CSC~~Delaware Trust Company ~~of Delaware~~ in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020, and counsel thereto; (i) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (j) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (k) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (b) through (j); (l) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (m) the agent for the EFIH First Lien DIP Financing and counsel thereto; (n) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (o) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (p) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (q) counsel to Oncor Electric Delivery Company LLC, (r) the Securities and Exchange Commission; (s) the Internal Revenue Service; (t) the Office of the United States Attorney for the District of Delaware; (u) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (v) counsel to the Electric Reliability Council of Texas;

21

(w) Texas Transmission Investment LLC and counsel thereto; (x) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (y) counsel to the Creditors' Committee; (z) counsel to PIMCO; and (aa) those parties that have requested notice pursuant to Bankruptcy Rule 2002. Notice of the Hearing having been given by the EFIH Debtors in a manner consistent with the Bankruptcy Code and the Hearing having been held by this Court on June 15, 2017; and upon the record at the Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS HEREBY ORDERED that:

1. <u>Financing Approved and Closing Date Refinancing and Repayment Authorized</u>. The EFIH First Lien DIP Motion is granted, and (i) the EFIH First Lien DIP Financing is authorized and approved, (ii) the consummation of the Closing Date Refinancing is authorized and approved, (iii) the consummation of the Repayment is authorized and approved, (iv) the borrowings under the EFIH First Lien DIP Financing related to the Working Capital Financing are approved, subject to satisfaction of the applicable conditions precedent, and (v) the EFIH Debtors are authorized to use cash collateral, each subject to the terms and conditions set forth in this Order. This Order shall be effective immediately upon its entry, *provided*, *however*, that the provisions of this Order granting use of cash collateral and superpriority claims and liens shall be immediately effective upon (and in no event before) the Closing Date and the consummation of the Closing Date Refinancing as contemplated by paragraph 16 herein.

2. <u>Objections Overruled</u>. All objections to the EFIH First Lien DIP Motion, the EFIH First Lien DIP Financing, or entry of the Order, to the extent not withdrawn or resolved, each as set forth in this Order, are hereby overruled.

ActiveUS 163231841ActiveUS 163407148

**EFIH First Lien DIP Financing Authorization**

3.    _Authorization of the DIP Financing_.  The EFIH Debtors are expressly and immediately authorized and empowered to execute and deliver the EFIH First Lien DIP Documents and other documents related thereto and to incur and to perform the EFIH First Lien DIP Obligations in accordance with, and subject to, the terms of this Order, and the EFIH First Lien DIP Documents, and to deliver all instruments and documents which may be required or necessary or reasonably requested by the EFIH First Lien DIP Agent for the performance by the EFIH Debtors under the EFIH First Lien DIP Financing and the creation and perfection of the EFIH First Lien DIP Liens described in, and provided for by, this Order and the EFIH First Lien DIP Documents.  The EFIH Debtors are hereby authorized and directed to pay, as such become due and without need to obtain further Court approval, in accordance with this Order, the principal, interest, fees, expenses, reimbursement obligations, and the other amounts payable or reimbursable by the EFIH Debtors pursuant to the EFIH First Lien DIP Documents, including the Fee Letter, and all other documents comprising the EFIH First Lien DIP Financing including, without limitation, commitment fees, closing fees, arrangement fees, incentive fees, and administrative agent's fees, if the transactions contemplated hereby are consummated, as provided for in the EFIH First Lien DIP Credit Agreement, and the EFIH First Lien DIP Documents.  All collections and proceeds, whether ordinary course or otherwise, will be applied as required by this Order, and the EFIH First Lien DIP Documents.  Upon execution and delivery, the EFIH First Lien DIP Documents shall represent valid and binding obligations of the EFIH Debtors, enforceable against each of the EFIH Debtors and their estates in accordance with their terms.

4.    _Authorization to Borrow_.  Until the DIP Termination Date (as defined herein), and subject to the terms and conditions set forth in the EFIH First Lien DIP Documents, the EFIH

ActiveUS 163231841ActiveUS 163407148

First Lien DIP Financing, and this Order, the EFIH Debtors are hereby authorized to borrow money under the EFIH First Lien DIP Financing, and any Guarantors are hereby authorized to guarantee such borrowings, consisting of borrowings in an aggregate principal amount of up to $6,300,000,000. consisting of (a) $[5,475,000,000] in Term Loan Commitments and (b) up to $[825,000,000]109 in Incremental Term Loans, $600,000,000 of which the EFIH Debtors intend to borrow immediately upon the closing of the EFIH First Lien DIP Financing for the Repayment.

5. <u>Use of EFIH First Lien DIP Financing Proceeds</u>. Immediately upon entry of this Order, the EFIH Debtors are authorized to draw the entirety of the EFIH First Lien DIP Financing and use advances of credit under the EFIH First Lien DIP Financing only for the purposes specifically set forth in, and subject to the terms and conditions of, this Order and the EFIH First Lien DIP Documents.

6. <u>EFIH First Lien DIP Obligations</u>. The EFIH First Lien DIP Obligations shall be enforceable against the EFIH Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in the Cases, any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>"). On the DIP Termination Date, (a) the EFIH First Lien DIP Obligations shall be due and payable, without notice or demand, to the extent provided for under the EFIH First Lien DIP Credit Agreement and subject to any requirements in the EFIH First Lien DIP Credit Agreement to provide prior notice of acceleration, and (b) unless all the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations)

---

109 The final allocation of the $6,300,000,000 as between the Term Loan Commitments and the Incremental Term Loans will be identified after the syndication of the EFIH First Lien DIP Financing.

ActiveUS 163231841ActiveUS 163407148

have been indefeasibly paid in full, in cash, the use of the EFIH DIP Collateral, including cash collateral, shall automatically cease.

7.      <u>EFIH First Lien DIP Liens</u>.  To secure the EFIH First Lien DIP Obligations, effective pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the EFIH First Lien DIP Agent, for the benefit of itself, any sub-agents, and the EFIH First Lien DIP Secured Parties, is hereby granted the following continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests and liens (all property identified in clauses (a), (b), and (c) below being collectively referred to as the "<u>EFIH DIP Collateral</u>"), subject to the payment of the Carve Out (all such liens and security interests granted to the EFIH First Lien DIP Agent, for the benefit of itself, any sub-agents, and the EFIH First Lien DIP Secured Parties, pursuant to this Order and the EFIH First Lien DIP Documents, the "<u>EFIH First Lien DIP Liens</u>") and notwithstanding any agreement that may purport to prevent, hinder, or attach obligations with respect to the incurrence of the EFIH First Lien DIP Liens, including, but not limited to, that certain Investor Rights Agreement (as amended, modified, supplemented, restated, or waived from time to time), dated as of November 5, 2008, entered into by and among Oncor Electric Delivery Company LLC, Oncor Electric Delivery Holdings Company LLC, Texas Transmission Investment LLC, and EFH:

(a)      <u>First Lien on Cash Balances and Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all prepetition and postpetition property of the EFIH Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to valid, perfected, and non-avoidable liens, including, without limitation, all real and personal property, inventory, plant, fixtures, machinery, equipment,

25

cash, any investment of such cash, accounts receivable, other rights to payment whether arising

before or after the Petition Date (including, without limitation, postpetition intercompany claims

of the EFIH Debtors), deposit accounts, investment property, supporting obligations, minerals,

oil, gas, and as-extracted collateral, causes of action (including those arising under section 549 of

the Bankruptcy Code and any related action under section 550 of the Bankruptcy Code), royalty

interests, chattel paper, contracts, general intangibles, documents, instruments, interests in

leaseholds, letter of credit rights, patents, copyrights, trademarks, trade names, other intellectual

property, capital stock and stock equivalents of subsidiaries, books and records pertaining to the

foregoing, and to the extent not otherwise included, all proceeds, products, offspring, and profits

of any and all of the foregoing (the "Unencumbered Property").   Notwithstanding the prior

sentence, Unencumbered Property shall in any event exclude the EFIH Debtors' claims and causes

of action under chapter 5 of the Bankruptcy Code (other than causes of action arising under

section 549 of the Bankruptcy Code and any related action under section 550 of the Bankruptcy

Code), or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance

Actions"), but shall include any proceeds or property recovered, unencumbered, or otherwise the

subject of successful Avoidance Actions, whether by judgment, settlement, or otherwise.

      (b)    Liens Priming Prepetition EFIH Liens.   Pursuant to section 364(d)(1) of

the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior

priming security interest in and lien upon all prepetition and postpetition property of the EFIH

Debtors, whether existing on the Petition Date or thereafter acquired, that is subject to valid,

perfected, and non-avoidable liens presently held by the Collateral Trustee (as defined in the EFIH

Collateral Trust Agreement) (the "EFIH Prepetition Collateral Trustee") (for the benefit of the

Prepetition Secured Notes Trustees).   The priming security interests and liens granted pursuant to

ActiveUS 163231841ActiveUS 163407148

this paragraph 7(b) shall be senior in all respects to the interests in such property of any of the EFIH Prepetition Collateral Trustee, Prepetition Secured Notes Trustees, and Prepetition Secured Creditors arising from current and future liens of any of the EFIH Prepetition Collateral Trustee, Prepetition Secured Notes Trustees, and Prepetition EFIH Secured Creditors (including, without limitation, any and all forms of adequate protection granted to the foregoing), but shall not be senior to any valid, perfected, and non-avoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, or to any valid, perfected, and non-avoidable interests in such property arising out of liens to which the liens of the EFIH Prepetition Collateral Trustee or Prepetition Secured Notes Trustees become subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (the "Permitted Liens").

(c)    Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all prepetition and postpetition property of the EFIH Debtors (other than the property described in clause (a) or (b) of this paragraph 7, as to which the liens and security interests in favor of the EFIH First Lien DIP Agent will be as described in such clauses), whether existing on the Petition Date or thereafter acquired, that is subject to valid, perfected, and non-avoidable liens in existence immediately prior to the Petition Date, or to any valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the EFIH First Lien DIP Agent are junior to such valid, perfected, and non-avoidable liens.

(d)    Liens Senior to Certain Other Liens.  The EFIH First Lien DIP Liens shall be senior to and shall not be junior or subordinate to (i) any lien or security interest that is avoided

ActiveUS 163231841ActiveUS 163407148

and preserved for the benefit of the EFIH Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other domestic or foreign governmental unit (including any regulatory body), commission, board, or court for any liability of the EFIH Debtors.

(e)     Notwithstanding anything to the contrary in the EFIH First Lien DIP Documents or this Order, for the purposes of this Order, in no event shall the Unencumbered Property include, or the EFIH First Lien DIP Liens granted under this Order attach to, Excluded Collateral (as defined in the EFIH First Lien DIP Credit Agreement).

(f)     <u>National Flood Insurance Program Compliance</u>.  Notwithstanding anything to the contrary herein or in the EFIH First Lien DIP Documents, any enclosed structure (having two walls and a roof) or manufactured mobile home affixed to a permanent foundation, together with the contents thereof (each such structure or manufactured mobile home with the contents thereof being a "<u>Real Property Improvement</u>") shall not be included as EFIH DIP Collateral, and the same shall constitute Excluded Collateral (as defined in the EFIH First Lien DIP Credit Agreement), in each case until such time as the EFIH First Lien DIP Agent determines that such excluded Real Property Improvement (a) is not located in a special flood hazard area (or otherwise is not subject to the flood insurance requirements of the Federal Emergency Management Agency ("<u>FEMA</u>")), or (b) has sufficient flood insurance coverage to satisfy FEMA's flood insurance requirements.

8.     <u>DIP Lien Priority</u>.  The EFIH First Lien DIP Liens are valid, binding, continuing, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the EFIH DIP Collateral, except that the EFIH First

Lien DIP Liens shall be junior only to Permitted Liens and the Carve Out. Pursuant to section 364(d) of the Bankruptcy Code, the EFIH First Lien DIP Liens shall be senior to the Prepetition First Priority Liens, the Prepetition Second Priority Liens, and any and all forms of adequate protection (if any) granted in the Cases. For purposes of this Order, it shall be an Event of Default if, other than as set forth in this Order, the EFIH First Lien DIP Liens shall be made junior to, or *pari passu* with, any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the EFIH First Lien DIP Liens.

9.    <u>DIP Superpriority Claims</u>.  The EFIH First Lien DIP Agent and the EFIH First Lien DIP Secured Parties are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (collectively, the "<u>DIP Superpriority Claims</u>") for all EFIH First Lien DIP Obligations: (a) except as set forth in this Order, with priority over any and all administrative expense claims, diminution claims, unsecured claims, and all other claims against the EFIH Debtors or their estates in any of the Cases and any Successor Cases, existing on the Petition Date or thereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed

29

claims shall be payable from, and have recourse to, all prepetition and postpetition property of the EFIH Debtors and all proceeds thereof; and (b) which shall at all times be senior to the rights of the EFIH Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law.  Notwithstanding the foregoing, the DIP Superpriority Claims shall be subject only to the payment of the Carve Out, to the extent specifically provided for in this Order.

10.    No Obligation to Extend Credit.  The EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders shall have no obligation to make any loan or advance under the EFIH First Lien DIP Documents, unless all of the conditions precedent to the making of such extension of credit under the EFIH First Lien DIP Documents and this Order have been satisfied in full or waived in accordance with the terms of the EFIH First Lien DIP Documents.

**Use of Cash Collateral**

11.    The EFIH Debtors hereby are authorized to use the cash and cash equivalent proceeds of the collateral securing the EFIH Prepetition Secured Obligations that constitute "cash collateral" within the meaning of section 363 of the Bankruptcy Code and other property in which the EFIH Prepetition Collateral Trustee and Prepetition Secured Notes Trustees have an interest pursuant to sections 363(b) and 363(c) of the Bankruptcy Code in accordance with the terms and conditions of the EFIH First Lien DIP Credit Agreement and as set forth in this Order, *provided, however*, that use of cash or transfers of cash to any debtor other than the EFIH Debtors shall not be permitted, except to the extent permitted under the final order authorizing the EFIH Debtors to, among other things, continue using their cash management system (the "Cash Management Order"), *provided further, however*, that the foregoing shall not restrict intercompany payments and other transfers of cash collateral in connection with any bankruptcy-related expenses of the EFIH Debtors (including payment of professionals' fees of the EFIH Debtors) to the extent that

ActiveUS 163231841ActiveUS 163407148

such payments or other transfers are approved by the Cash Management Order, including, but not limited to, pursuant to any Shared Services Agreement or Tax Sharing Agreement (as defined in the EFIH First Lien DIP Credit Agreement).

**EFIH First Lien DIP Financing**

12.    <u>Amendments to the EFIH First Lien DIP Documents</u>.  The EFIH Debtors are hereby authorized to implement, in accordance with the terms of the EFIH First Lien DIP Documents, (a) any nonmaterial modifications (including, without limitation, any change to the number or composition of the EFIH First Lien DIP Lenders) of the EFIH First Lien DIP Documents without further order of the Court, and (b) any other modifications to the EFIH First Lien DIP Documents, *provided, however*, that notice of any material modification or amendment to the EFIH First Lien DIP Documents shall be provided to counsel for the Creditors' Committee, the U.S. Trustee, counsel for the EFIH First Lien Notes Trustee (until the Repayment of all Allowed EFIH First Lien Claims has occurred), and counsel for the group of EFIH PIK Notes (the "<u>PIK Note Group</u>"), each of whom shall have five (5) days from the date of such notice within which to object, in writing, to such modification or amendment.  If the Creditors' Committee, the U.S. Trustee, the EFIH First Lien Notes Trustee (until the Repayment of all Allowed EFIH First Lien Claims has occurred), or the PIK Note Group timely objects to any material modification or amendment to the EFIH First Lien DIP Documents, such modification or amendment shall only be permitted pursuant to an order of the Court.  The foregoing shall be without prejudice to the EFIH Debtors' right to seek approval from the Court of a material modification on an expedited basis.

13.    <u>Budget and Annual Forecast Reporting</u>.  Beginning on the date of entry of this Order, the Borrowers will provide the EFIH First Lien DIP Agent (for distribution to each of the

ActiveUS 163231841ActiveUS 163407148

EFIH First Lien DIP Lenders), the Creditors' Committee, and the PIK Note Group with a statement of cash sources and uses of all free cash flow for the next full three (3)-calendar months of the EFIH Debtors (on a consolidated basis) broken down by month (the "Budget"), in the form of the Initial Budget (as defined in the EFIH First Lien DIP Credit Agreement) attached to the EFIH First Lien DIP Credit Agreement as Exhibit I, including the anticipated uses of the EFIH First Lien DIP Financing for such period, and after such three (3)-calendar month period, at the end of each fiscal quarter (or, at the election of the Borrowers, at the end of each calendar month or such other earlier period as may be agreed), an updated Budget for the subsequent three (3)-calendar month period.  The borrowing under the EFIH First Lien DIP Financing is subject to, among other things, the Borrowers' delivery of the Initial Budget to the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders, which shall be in form and substance reasonably satisfactory to the EFIH First Lien DIP Agent and the Joint Lead Arrangers (as defined in the EFIH First Lien DIP Credit Agreement).  The Borrowers will also provide the First Lien DIP Agent (for distribution to each of the EFIH First Lien DIP Lenders), the Creditors' Committee, and the PIK Note Group on a monthly basis, with a variance report for each calendar month (delivered no later than the end of the subsequent calendar month), (a) showing a statement of actual cash sources and uses of all free cash flow for the immediately preceding calendar month, noting therein all material variances from values set forth for such historical periods in the most recently delivered Budget, including explanations for all material variances and (b) certified as to its reasonableness when made by an Authorized Officer (as defined in the EFIH First Lien DIP Credit Agreement) of the Borrowers.  Beginning on the date 60 days after the entry of this Order (and again no later than December 1, 2017 for the business plan and operating budget covering 2018), the Borrowers will provide the EFIH First Lien DIP Agent (for distribution to each of the

ActiveUS 163231841ActiveUS 163407148

EFIH First Lien DIP Lenders), the Creditors' Committee, and the PIK Note Group with the EFIH Debtors' approved annual business plan and projected operating budget through the EFIH First Lien DIP Financing's stated maturity date (the "Annual Operating Forecast"), (x) which shall be broken down by month, including, without limitation, income statements, balance sheets, cash flow statements, projected capital expenditures, asset sales, a line item for total available liquidity for the period of such Annual Operating Forecast and (y) which shall set forth the anticipated uses of the EFIH First Lien DIP Financing for such period, certified as to its reasonableness when made by an Authorized Officer of the Borrowers.  Both the Budget and the Annual Operating Forecast shall provide, among other things, for the payment of the fees and expenses relating to the EFIH First Lien DIP Financing, the Repayment, ordinary course administrative expenses, bankruptcy-related expenses and working capital, and other general corporate needs; *provided, however*, that the Allowed Professional Fees and fees and expenses related to the EFIH First Lien DIP Financing will be due and payable, and will be paid by the EFIH Debtors, whether or not consistent with the items or amounts set forth in the Initial Budget, the Budget, or the Annual Operating Forecast; and *provided, further*, that under no circumstance will the Initial Budget, the Budget, or the Annual Operating Forecast be construed as a cap or limitation on the amount of the Allowed Professional Fees or the fees and expenses related to the EFIH First Lien DIP Financing due and payable by the EFIH Debtors.

14.    Modification of the Automatic Stay.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Order, including, without limitation, to (a) permit the EFIH Debtors to grant the EFIH First Lien DIP Liens and the DIP Superpriority Claims, (b) permit the EFIH Debtors to perform such acts as the EFIH First Lien DIP Agent and the EFIH First Lien DIP

ActiveUS 163231841ActiveUS 163407148

Lenders each may request in its sole discretion to assure the perfection and priority of the liens granted in this Order, (c) permit the EFIH Debtors to incur all liabilities and obligations to the EFIH First Lien DIP Agent and the EFIH First Lien DIP Secured Parties under the EFIH First Lien DIP Documents and this Order, and (d) authorize the EFIH Debtors to make payments, and the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders to retain and apply payments made, in accordance with the terms of this Order.

15.      <u>Perfection of EFIH First Lien DIP Liens</u>.  This Order shall be sufficient and conclusive evidence of the granting, attachment, validity, perfection, and priority of all liens granted in this Order, including the EFIH First Lien DIP Liens  without the necessity of filing or recording any financing statement, patent filing, trademark filing, copyright filing, fixture filing, mortgage, notice of lien, or other instrument or document, which may otherwise be required under the law or regulation of any jurisdiction, or the taking possession of, or control over, assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, securities account control agreement, or other similar agreement) to grant, attach, validate, or perfect (in accordance with applicable non-bankruptcy law) the EFIH First Lien DIP Liens, or to entitle the EFIH First Lien DIP Agent, the EFIH First Lien DIP Secured Parties, or other secured parties pursuant to the EFIH First Lien DIP Documents to the priorities granted in this Order.  Notwithstanding the foregoing, the EFIH First Lien DIP Agent is authorized, but not required, to file, as it in its sole discretion deems necessary, such financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the EFIH First Lien DIP Liens, and all such financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of lien, and other documents shall

ActiveUS 163231841ActiveUS 163407148

be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the EFIH First Lien DIP Liens. The EFIH Debtors are authorized and directed to execute and deliver promptly following written demand to the EFIH First Lien DIP Agent all such financing statements, mortgages, notices, and other documents and information as the EFIH First Lien DIP Agent may reasonably request, in accordance with the EFIH First Lien DIP Documents. The EFIH First Lien DIP Agent, in its discretion, may file a photocopy of this Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to, or in lieu of, such financing statements, notices of lien, or similar instrument. In furtherance of the foregoing and without further approval of the Court, each Debtor is (a) authorized to do and perform all acts to make, execute, and deliver all instruments and documents and provide all information and (b) authorized and directed to pay all fees that, in each case, may be reasonably required or necessary for the EFIH Debtors' performance hereunder.

16.    <u>The Closing Date Refinancing</u>. On the Closing Date, the EFIH Debtors are hereby authorized and directed to use the proceeds of borrowings under the EFIH First Lien DIP Credit Agreement (in accordance with the terms of the EFIH First Lien DIP Credit Agreement) to irrevocably and indefeasibly repay in full all obligations (other than any indemnities and other contingent obligations that are intended to survive repayment of the obligations under the Existing DIP Credit Agreement) then due and payable to the Existing DIP Agent and the Existing DIP Lenders under the Existing DIP Facility Documents and the Existing DIP Orders, whereupon all liens, mortgages and security interests granted to the Existing DIP Agent and the Existing DIP Lenders under the Existing DIP Orders and the Existing DIP Facility Documents shall be deemed released and of no further force or effect. Subsequent to the Closing Date, (i) the EFIH Debtors

ActiveUS 163231841ActiveUS 163407148

shall promptly pay or reimburse the Existing DIP Agent and Existing DIP Lenders for any and all reasonable fees, costs, expenses, losses and damages incurred thereafter to the extent that the Existing DIP Credit Agreement or any other Existing DIP Facility Document entitled them to such payment, indemnity or reimbursement after termination of such Existing DIP Facility Document (subject to all parties' reservation of rights to contest whether the Existing DIP Agent or Existing DIP Lender is entitled to such payment, indemnity or reimbursement by the EFIH Debtors) and (ii) such amounts shall, until paid in full in cash, constitute superpriority administrative expense claims under section 507(b) of the Bankruptcy Code, senior in all respects to the Superpriority Claims granted in paragraph 9 above.

17.    The Repayment.    ~~The~~Provided that the EFIH First Lien DIP Financing is consummated and funded, then the Repayment is hereby approved, and ~~shall be in full satisfaction of the EFIH First Lien Makewhole Claims (calculated as of the date of Repayment).~~ the EFIH Debtors are hereby authorized and directed to use the proceeds of borrowings under the EFIH First Lien DIP Credit Agreement (in accordance with the terms of the EFIH First Lien DIP Credit Agreement) and cash on hand, as soon as reasonably practicable following the consummation and funding of the EFIH First Lien DIP Financing, to (a) irrevocably and indefeasibly repay in full in cash to the EFIH First Lien Notes Trustee all Allowed EFIH First Lien Claims (including the Allowed EFIH First Lien Makewhole Claims, the EFIH First Lien Fees, and the EFIH First Lien Non-Makewhole Interest, as such terms are defined in the EFIH Settlement), in the approximate amount of $[___] as of [date], with such amounts to be adjusted in accordance with the EFIH Settlement to reflect any interest, Additional Interest (as defined in the EFIH Settlement), interest on interest, and additional EFIH First Lien Fees that may accrue or be incurred through and including the date on which all Allowed EFIH First Lien Claims are paid in full in cash to the

EFIH First Lien Notes Trustee, and (b) fund into escrow $2,000,000 (the "EFIH First Lien Fee and Indemnification Reserve"), which EFIH First Lien Fee and Indemnification Reserve shall be held by the EFIH First Lien Notes Trustee (pursuant to a standard escrow or other account agreement with customary terms) and shall be available for the EFIH First Lien Notes Trustee to pay in full in cash any EFIH First Lien Fees and any indemnification claims under the EFIH First Lien Indentures and/or EFIH Collateral Trust Agreement that are incurred or invoiced after the date of the Repayment (which fees and claims may be paid by the EFIH First Lien Notes Trustee from the EFIH First Lien Fee and Indemnification Reserve without need for further approval by the Court, the EFIH Debtors, or anyone else); provided, for the avoidance of doubt, the EFIH Debtors and their Estates shall remain obligated to pay, without requiring the EFIH First Lien Notes Trustee to draw on the EFIH First Lien Fee and Indemnification Reserve, in full in cash to the EFIH First Lien Notes Trustee all such EFIH First Lien Fees (and all other Allowed EFIH First Lien Claims) in accordance with this Order, the EFIH Settlement and EFIH Settlement Order (and the EFIH First Lien Notes Trustee shall have the right, but not any obligation, to draw on the EFIH First Lien Fee and Indemnification Reserve to obtain payment or reimbursement for any such EFIH First Lien Fees or other Allowed EFIH First Lien Claims).  On the date that is six years after the funding of the EFIH First Lien Fee and Indemnification Reserve, all "Excess Funds" (as defined in the EFIH Settlement Order), if any, in the EFIH First Lien Fee and Indemnification Reserve shall be delivered (i) if the *Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code*, confirmed on February 17, 2017 [D.I. 10853, 10859-1] (the "Eighth Confirmed Plan") is consummated, to the EFH Unsecured Notes Trustee (or such designee appointed in writing by the EFIH Unsecured Notes Trustee) for the benefit of Class B6 Creditors (as defined in the Eighth

Confirmed Plan), or (ii) if the Eighth Confirmed Plan is not consummated, to the Debtors or such other party as required by a further order of the Court (including pursuant to an order confirming a chapter 11 plan).  The Repayment shall be applied by the EFIH First Lien Notes Trustee in accordance with the EFIH First Lien Indentures and the EFIH Settlement (including Schedule 1 thereto).  The Repayment, and any other payment of Allowed EFIH First Lien Claims, shall be indefeasible, irrevocable and not subject to disgorgement, setoff, recoupment, reallocation or avoidance of any kind.  The Debtors, EFIH Prepetition Collateral Trustee, EFIH First Lien Notes Trustee, and Prepetition EFIH First Lien Creditors are authorized and directed to (a) take all actions reasonably requested by the EFIH Debtors to implement the Repayment, and (b) enter into and deliver any instruments, documents, certifications, supplements, and agreements that may be reasonably necessary or desirable to implement the Repayment, with all reasonable expenses incurred by the EFIH Prepetition Collateral Trustee, the EFIH First Lien Notes Trustee, and any Prepetition EFIH First Lien Creditors in connection therewith to be promptly reimbursed by the EFIH Debtors; *provided that* nothing in the foregoing, and nothing elsewhere in this Order, shall prejudice, modify or affect the terms of the EFIH Settlement and EFIH Settlement Order or any rights of the EFIH First Lien Notes Trustee and/or the Supporting EFIH First Lien Creditors thereunder, all of which are fully preserved and shall remain in full force and effect. Notwithstanding anything to the contrary in this Order, if the EFIH First Lien DIP Financing is not consummated and funded, any protections, rights or remedies granted by this Order to the EFIH First Lien DIP Agent and the EFIH First Lien DIP Secured Parties in connection with the EFIH First Lien DIP Financing (including the grant of priming liens and superpriority claims) shall have no force and effect with respect to the EFIH First Lien Notes Trustee and the holders of the Allowed EFIH First Lien Claims.  Furthermore, notwithstanding anything to the contrary in this

38

Order, if the EFIH First Lien DIP Facility is consummated and funded in an amount sufficient to repay only the obligations under the Existing DIP Facility Documents but not the Allowed EFIH First Lien Claims, and the Repayment of the Allowed EFIH First Lien Claims in full in cash therefore does not occur substantially contemporaneous with the consummation and funding of the EFIH First Lien DIP Facility, then as adequate protection pursuant to sections 363(c)(2), 363(e), and 364(d) of the Bankruptcy Code, the EFIH Debtors are authorized and directed to pay in full in cash to the EFIH First Lien Notes Trustee all EFIH First Lien Fees that have accrued or been incurred through the date on which such EFIH First Lien Fees are paid in full, with the payment by the EFIH Debtors of all EFIH First Lien Fees that have accrued and as to which invoices have been furnished to the EFIH Debtors before such payment to be made at the same time as the consummation and funding of the EFIH First Lien DIP Facility, and with the payment by the EFIH Debtors of all other EFIH First Lien Fees to be made as soon as possible after invoices for such EFIH First Lien Fees are furnished to the EFIH Debtors.

18.     Working Capital Financing.  The EFIH Debtors are hereby authorized to incur the borrowings attributable to the Working Capital Financing on the terms set forth in the EFIH First Lien DIP Credit Agreement, *provided*, *however*, that the EFIH Debtors shall not borrow under the EFIH First Lien DIP Financing on account of Working Capital Refinancing  unless (i) NEE provides a written consent, authorizing such borrowings on account of the Working Capital Refinancing in accordance with the Merger Agreement, (ii) the Court enters an order finding that NEE is acting unreasonably in withholding, conditioning and/or delaying its consent to such borrowings on account of the Working Capital Refinancing, or (iii) the Merger Agreement is terminated in accordance with its terms.

19.     <u>Proceeds of Subsequent Financing</u>.  If the EFIH Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in the Cases or any Successor Cases, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code or in violation of the EFIH First Lien DIP Documents at any time prior to such time as the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, all Commitments have been terminated, including subsequent to the confirmation of any plan with respect to any or all of the EFIH Debtors and the EFIH Debtors' estates, and such facilities are secured by any EFIH DIP Collateral, then cash proceeds derived from such credit or debt shall be used to the extent necessary to indefeasibly repay in full, in cash the EFIH First Lien DIP Obligations.

20.     <u>Maintenance of EFIH DIP Collateral</u>.  Until such time as all EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, and all Commitments have been terminated, the EFIH Debtors shall (a) maintain and insure the EFIH DIP Collateral in amounts, for the risks, and by the entities as required under the EFIH First Lien DIP Documents and (b) maintain the cash management system in effect as of the Petition Date consistent with the Cash Management Order (as defined in the EFIH First Lien DIP Credit Agreement), as modified by any order that may be entered by the Court or as otherwise required by the EFIH First Lien DIP Documents.

21.     <u>Disposition of EFIH DIP Collateral; Rights of EFIH First Lien DIP Agent and EFIH First Lien DIP Lenders</u>.  The EFIH Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the EFIH DIP Collateral other than as permitted in the EFIH

ActiveUS 163231841ActiveUS 163407148

First Lien DIP Documents (and, no consent shall be implied from any action, inaction, or acquiescence by the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, or an order of the Court); *provided* that the EFIH Debtors may release liens on the EFIH DIP Collateral solely to the extent permitted by the EFIH First Lien DIP Documents (including the EFIH DIP Intercreditor Agreement). Without limiting the provisions of the EFIH DIP Intercreditor Agreement (if any), under no circumstances shall the EFIH Prepetition Collateral Trustee, the Prepetition Secured Notes Trustees, the EFIH Second Lien DIP Agent, if any, the Incremental DIP Agent, if any, any Prepetition EFIH Secured Creditor, or lenders or purchasers under any EFIH Second Lien DIP Facility (an "EFIH Second Lien DIP Note Purchaser"), if any, or lenders or purchasers under any Incremental Term Loan Facility (an "Incremental DIP Note Purchaser"), if any, have any enforcement rights against the EFIH First Lien DIP Collateral or any other rights or remedies that may interfere with or otherwise restrict the rights and remedies of the EFIH First Lien DIP Agent or the EFIH First Lien DIP Lenders hereunder, under the EFIH First Lien DIP Documents or otherwise with respect to EFIH First Lien DIP Obligations. Without limiting any rights or obligations under the EFIH DIP Intercreditor Agreements (if any), and, subject to an obligation of the EFIH First Lien DIP Agent to proceed in good faith, the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders shall have no obligations to the EFIH Prepetition Collateral Trustee, the Prepetition Secured Notes Trustees, the Incremental DIP Agent, if any, the EFIH Second Lien DIP Agent, if any, any Prepetition EFIH Secured Creditor, any Incremental DIP Note Purchaser, if any, or any EFIH Second Lien DIP Note Purchaser, if any, with respect to the EFIH DIP Collateral, including that, except as may otherwise be specifically provided in the EFIH DIP Intercreditor Agreement: (i) any collection, sale or other disposition of any or all of the EFIH DIP Collateral by the EFIH First Lien DIP Agent or EFIH First Lien DIP Lenders shall

ActiveUS 163231841ActiveUS 163407148

be free and clear of any and all security interests, liens and claims of the EFIH Prepetition Collateral Trustee, the Prepetition Secured Notes Trustees, the Incremental DIP Agent, if any, the EFIH Second Lien DIP Agent, if any, any Prepetition EFIH Secured Creditor, any Incremental DIP Note Purchaser, if any, or any EFIH Second Lien DIP Note Purchaser (provided that any such security interests, liens and claims shall attach to the proceeds of any such collection, sale or other disposition with the same priorities as existed against the EFIH DIP Collateral); (ii) none of the foregoing parties will oppose, interfere with or otherwise attempt to prevent the EFIH First Lien DIP Agent on behalf of itself and the EFIH First Lien DIP Lenders from enforcing their security interests in, or liens on, any of the EFIH DIP Collateral; and (iii) none of the foregoing parties shall have any right to require the EFIH First Lien DIP Agent and EFIH First Lien DIP Lenders to (a) marshal any property or assets of the EFIH Debtors, or (b) enforce any guaranty or any security interest or lien given by any person or entity other than any of the EFIH Debtors to secure the payment of any or all of the EFIH First Lien DIP Obligations as a condition precedent or concurrent to taking any action against or with respect to the EFIH DIP Collateral.

22.    <u>DIP Termination Date</u>.  On the DIP Termination Date, (a) the EFIH First Lien DIP Obligations shall be immediately due and payable and all Commitments shall terminate and (b) unless the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, all Commitments have been terminated and all authority to use the EFIH DIP Collateral, including cash collateral, shall cease, *provided, however*, that nothing in this Order shall prevent or hinder the EFIH Debtors from seeking the continued use of Cash collateral with the consent of the EFIH First Lien DIP Agent in accordance with the provisions of the EFIH First Lien DIP Documents but without the consent of the EFIH Prepetition Collateral Trustee or

ActiveUS 163231841ActiveUS 163407148

Prepetition Secured Notes Trustees to the extent necessary.  For purposes of this Order, the "DIP Termination Date" shall mean the Maturity Date as defined in the EFIH First Lien DIP Credit Agreement, or as otherwise provided in this Order.

23.    Events of Default.  The occurrence of an "Event of Default" under the EFIH First Lien DIP Documents shall constitute an Event of Default under this Order, unless waived in accordance with the EFIH First Lien DIP Documents.  Notwithstanding anything to the contrary contained herein or in the EFIH First Lien DIP Documents, any Event of Default under this Order or the EFIH First Lien DIP Documents, other than any Event of Default which cannot be waived without the written consent of each EFIH First Lien DIP Lender directly and adversely affected thereby, shall be deemed not to be "continuing" if the events, act, or condition that gave rise to such Event of Default have been remedied or cured (including by payment, notice, taking of any action, or omitting to take any action) or have ceased to exist and the Borrower is in compliance with the EFIH First Lien DIP Documents.

24.    Rights and Remedies Upon Event of Default.  Upon the occurrence of an Event of Default and following the giving of five business days' notice to the EFIH Debtors, counsel to the Creditors' Committee (the "Remedies Notice Period"), counsel to the EFIH First Lien Notes Trustee (until the Repayment of all Allowed EFIH First Lien Claims has occurred), and counsel to the PIK Note Group, the EFIH First Lien DIP Agent, on behalf of the EFIH First Lien DIP Lenders, may exercise all rights and remedies provided for in the EFIH First Lien DIP Documents and may declare (a) the termination, reduction, or restriction of any further Commitment to the extent any such Commitment remains, (b) all EFIH First Lien DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the EFIH Debtors, and (c) the termination of the EFIH First Lien DIP

ActiveUS 163231841ActiveUS 163407148

Documents as to any future liability or obligation of the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders, but without affecting any of the EFIH First Lien DIP Liens or the EFIH First Lien DIP Obligations.  During the Remedies Notice Period, the EFIH Debtors may continue to use the EFIH DIP Collateral, including cash collateral, in the ordinary course of business, consistent with past practices and the most recently delivered Budget, but may not enter into any transactions or arrangements (including, without limitation, the incurrence of indebtedness or liens, investments, restricted payments, asset sales, or transactions with non-Debtor affiliates) that are not in the ordinary course of business; *provided* that nothing in this Order shall limit the ability of the EFIH Debtors to (y) seek the use of EFIH DIP Collateral, including cash collateral, on a nonconsensual basis to the extent necessary, or (z) challenge whether an Event of Default has occurred and/or is continuing.  Unless the Court orders otherwise during the Remedies Notice Period, at the end of the Remedies Notice Period, (a) the EFIH Debtors shall no longer have the right to use or seek to use the EFIH DIP Collateral, including cash collateral, (b) the automatic stay pursuant to section 362 of the Bankruptcy Code, as to all of the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders, shall be automatically terminated without further notice to, or order of, the Court, and (c) the EFIH First Lien DIP Agent, on behalf of itself and the EFIH First Lien DIP Lenders shall be permitted to exercise all rights against the EFIH DIP Collateral in accordance with the EFIH First Lien DIP Documents and this Order, and shall be permitted to satisfy the EFIH First Lien DIP Obligations, without further order or application or motion to the Court and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code.  Notwithstanding anything in this Order to the contrary, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated for the purposes of giving any notice contemplated hereunder.  During the Remedies Notice Period, any party in interest

shall be entitled to seek an emergency hearing with the Court solely for the purpose of contesting whether an Event of Default has occurred and/or is continuing, and the EFIH Debtors waive their right to, and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the EFIH First Lien DIP Agent, on behalf of itself and the EFIH First Lien DIP Lenders, set forth in this Order or the EFIH First Lien DIP Documents, *provided, however*, that nothing in this paragraph shall (a) limit the EFIH Debtors' rights with respect to the EFIH Prepetition Collateral Trustee, the Prepetition Secured Notes Trustees, or the Prepetition EFIH Secured Creditors or the rights of such Trustees or Creditors with respect to the EFIH Debtors, including the EFIH Debtors' rights to seek, and the Trustees and Creditors rights to oppose, the nonconsensual use of cash collateral and other collateral securing the Prepetition EFIH Secured Notes to the extent necessary; or (b) impair the rights of (i) the EFIH Debtors to file a motion with the Court seeking approval of replacement financing or (ii) any party in interest from filing a motion seeking to purchase the EFIH First Lien DIP Obligations, in either case in such a manner that would provide for the immediate indefeasible payment in full, in cash, of the EFIH First Lien DIP Obligations following the conclusion of the Remedies Notice Period.

25.    <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Order</u>.  Based on the findings set forth in this Order and the record made during the Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Order are hereafter modified, amended, or vacated by a subsequent order of the Court or any other court, each of the EFIH First Lien DIP Agent and each of the EFIH First Lien DIP Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  To the fullest extent permitted under section 364(e) of the Bankruptcy Code, any liens or

ActiveUS 163231841ActiveUS 163407148

claims granted to the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders hereunder arising prior to the effective date of any such modification, amendment, or vacatur of this Order shall be governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges, and benefits granted in this Order.

26.    <u>DIP and Other Expenses</u>.  Except as set forth below, all fees paid and payable, and costs and/or expenses reimbursed or reimbursable, as set forth in the EFIH First Lien DIP Documents and/or this Order, by the EFIH Debtors to the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, and the Joint Lead Arrangers are hereby approved.  The EFIH Debtors are hereby authorized and directed to pay all such fees, costs, and expenses in accordance with the terms of the EFIH First Lien DIP Documents, without the necessity of any further application with the Court for approval or payment of such fees, costs, or expenses.  The EFIH Debtors are authorized and directed to reimburse on the Closing Date (with respect to all fees and expenses required to be paid on the Closing Date) and thereafter within ten (10) calendar days of written demand (together with reasonably detailed supporting documentation) the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, and the Joint Lead Arrangers for their reasonable and documented out-of-pocket expenses incurred in connection with the negotiation, documentation, syndication, and administration of the EFIH First Lien DIP Financing, any amendments or waivers with respect thereto, any Event of Default in respect of the EFIH First Lien DIP Financing, any exercise of remedies in respect thereof, and the reasonable and documented out-of-pocket prepetition and postpetition fees, charges, and disbursements of legal counsel, financial advisors, and third-party appraisers and consultants advising the EFIH First Lien DIP Agent and PIMCO incurred in connection with the EFIH First Lien DIP Agent's and PIMCO's participation in the Cases, limited in the case of legal counsel (A) with respect to the EFIH First Lien DIP Agent, to

one primary counsel (and (1) local counsel in applicable foreign and local jurisdictions, but limited to one local counsel in each such jurisdiction, (2) regulatory counsel, and (3) solely in the case of a conflict of interest, one additional counsel in each relevant jurisdiction to the affected indemnified persons similarly situated), and (B) with respect to PIMCO, one primary counsel and one Delaware counsel (as of the Closing Date (as defined in the EFIH First Lien DIP Credit Agreement), Morgan, Lewis & Bockius LLP and Venable LLP, respectively).  Payment of all such fees and expenses shall not be subject to allowance by the Court; *provided, however*, that, other than with respect to professional fees and expenses required to be paid on the date of entry of this Order or on the Closing Date, the EFIH Debtors shall promptly provide copies of invoices received on account of fees and expenses of the professionals retained as provided for in the EFIH First Lien DIP Credit Agreement, the EFIH First Lien DIP Documents, and this Order to counsel to the Creditors' Committee, counsel to the PIK Note Group, and the U.S. Trustee, and the Court shall have exclusive jurisdiction over any objections raised to the invoiced amount of the fees and expenses proposed to be paid, which objections may only be raised within ten (10) calendar days after the EFIH Debtors' receipt thereof.  In the event that within that ten (10) calendar day period the EFIH Debtors, the U.S. Trustee, counsel to the Creditors' Committee, or counsel to the PIK Note Group raises an objection to a particular invoice, (a) the EFIH Debtors shall promptly pay only the fees and expenses not subject to an objection, and (b) to the extent any objection is not resolved or withdrawn, the EFIH Debtors shall pay the disputed amounts only upon the entry of an order of the Court resolving such dispute and ordering the EFIH Debtors to pay the disputed amount.  Notwithstanding anything to the contrary in this Order, the fees, costs, and expenses of the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders (including PIMCO), and the Joint Lead Arrangers under the EFIH First Lien DIP Documents and this Order,

whether incurred prior to or after the Petition Date, shall be deemed fully earned, indefeasibly paid, irrevocable, and non-avoidable pursuant to, and in accordance with, the terms of the EFIH First Lien DIP Documents and, irrespective of any subsequent order approving or denying any other financing pursuant to section 364 of the Bankruptcy Code, fully entitled to all protections of section 364(e) of the Bankruptcy Code.  All unpaid fees, costs, and expenses payable under the EFIH First Lien DIP Documents and this Order to the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, and the Joint Lead Arrangers shall be included and constitute part of the EFIH First Lien DIP Obligations and be secured by the EFIH First Lien DIP Liens.

27.     <u>Proofs of Claim</u>.  The EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed in this Order.  Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to the EFIH First Lien DIP Agent or the EFIH First Lien DIP Lenders.

28.     <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders under the EFIH First Lien DIP Documents, the EFIH Debtors shall be, and hereby are, required to afford representatives, agents, and/or employees of the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, the Creditors' Committee, the EFIH First Lien Notes Trustee (until the Repayment of all Allowed EFIH First Lien Claims has occurred), and the PIK Note Group reasonable access to the EFIH Debtors' premises and its books and records in accordance with the EFIH First Lien DIP Documents and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the EFIH Debtors shall authorize their independent certified public accountants, financial advisors, investment

48

bankers, and consultants to cooperate, consult with, and provide to the EFIH First Lien DIP Agent, EFIH First Lien DIP Lenders, the EFIH First Lien Notes Trustee (until the Repayment of all Allowed EFIH First Lien Claims has occurred), the Creditors' Committee, and the PIK Note Group all such information as may be reasonably requested from the EFIH Debtors with respect to the business, results of operations, and financial condition of the EFIH Debtors, in each case subject to the EFIH First Lien DIP Documents.

ActiveUS 163231841ActiveUS 163407148

29.     Carve Out.

ActiveUS 163231841ActiveUS 163407148

(a)      Carve Out.  As used in this Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable and documented fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the EFIH Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and retained by the Creditors' Committee pursuant to section 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the EFIH First Lien DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $25,000,000 incurred after the first business day following delivery by the EFIH First Lien DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the EFIH First Lien DIP Agent to the EFIH Debtors, their lead restructuring counsel, the U.S. Trustee, lead counsel to the Creditors' Committee, and counsel to the PIK Note Group, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the EFIH First Lien DIP Obligations under the EFIH First

51

Lien DIP Financing, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

        (b)      <u>Carve Out Reserves</u>.  On the day on which a Carve Out Trigger Notice is given by the EFIH First Lien DIP Agent to the EFIH Debtors (the "<u>Termination Declaration Date</u>"), the Carve Out Trigger Notice shall constitute a demand to the EFIH Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The EFIH Debtors shall deposit and hold such amounts in two segregated accounts at the EFIH First Lien DIP Agent in trust to pay (a) such then unpaid Allowed Professional Fees (the "<u>Pre Carve Out Trigger Notice Reserve</u>") prior to any and all other claims; and (b) pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "<u>Post-Carve Out Trigger Notice Reserve</u>" and, together with the Pre Carve Out Trigger Notice Reserve, the "<u>Carve Out Reserves</u>") prior to any and all other claims.  All funds in the  Pre Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (ii) through (iii) of the definition of Carve Out set forth above, but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the EFIH First Lien DIP Agent for the benefit of the EFIH First Lien DIP Lenders, unless the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the EFIH Second Lien DIP Agent (in the event the EFIH Second Lien DIP Facility has been consummated and is outstanding) for application to the EFIH Second Lien DIP Facility.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above, and then, to the extent the Post Carve

ActiveUS 163231841ActiveUS 163407148

Out Trigger Notice Reserve has not been reduced to zero, to pay the EFIH First Lien DIP Agent for the benefit of the EFIH First Lien DIP Lenders, unless the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash.  Notwithstanding anything to the contrary in the EFIH First Lien DIP Documents or this Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 29, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 29, prior to making any payments to the EFIH First Lien DIP Agent, the Incremental DIP Agent, if any, or the EFIH Second Lien DIP Agent, if any, as applicable.  Notwithstanding anything to the contrary in the EFIH First Lien DIP Documents or this Order, following delivery of a Carve Out Trigger Notice, the EFIH First Lien DIP Agent, the Incremental DIP Agent, if any, the EFIH Second Lien DIP Agent, if any, the EFIH Prepetition Collateral Trustee, the Prepetition Secured Notes Trustees, and the EFIH PIK Notes Trustee shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the EFIH Debtors until the Carve Out Reserves have been fully funded, but the EFIH First Lien DIP Agent (for the benefit of itself and the EFIH First Lien DIP Secured Parties) shall have a security interest in, the Incremental DIP Agent, if any, shall have a *pari passu* or junior security interest in, and the EFIH Second Lien DIP Agent, if any, shall have a junior security interest in any residual interest in the Carve Out Reserves, with any excess paid to the EFIH First Lien DIP Agent for application in accordance with the EFIH First Lien DIP Documents and, if applicable, the Incremental Intercreditor Agreement, unless the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management

ActiveUS 163231841ActiveUS 163407148

Obligations, and Contingent Obligations) and, if the Incremental Term Loan Facility, if any, is *pari passu* in right of payment and security to the Term Loans (as defined in the EFIH First Lien DIP Credit Agreement), the non-contingent obligations under the Incremental Term Loan Facility, if any, have been indefeasibly paid in full, in cash, in which case any such excess shall, if the Incremental Term Loan Facility, if any, is junior in right of payment and security to the Term Loans, be paid to the Incremental DIP Agent, if any, for application in accordance with the definitive documentation governing any Incremental Term Loan Facility (the "Incremental DIP Documents"), if any, unless the non-contingent obligations thereunder have been indefeasibly paid in full, in cash, in which case any such excess shall, if applicable, be paid to the EFIH Second Lien DIP Agent, if any, for application in accordance with the definitive documentation governing any EFIH Second Lien DIP Facility (the "EFIH Second Lien DIP Documents"), if any, or, if not, as otherwise ordered by the Court.  Further, notwithstanding anything to the contrary in this Order, (i) disbursements by the EFIH Debtors from the Carve Out Reserves shall not constitute Loans or increase or reduce the EFIH First Lien DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget, Budget, Annual Operating Forecast, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the EFIH Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Order, the EFIH First Lien DIP Financing, the EFIH First Lien DIP Documents, the Incremental Term Loan Facility, the Incremental DIP Documents, the EFIH Second Lien DIP Facility, the EFIH Second Lien DIP Documents, the Prepetition EFIH Secured Notes, the EFIH First Lien Documents, the EFIH Second Lien Documents, the EFIH Senior PIK Notes, the EFIH PIK Notes

ActiveUS 163231841ActiveUS 163407148

Documents, or any other document or source, the Carve Out shall be senior to all liens and claims securing the EFIH First Lien DIP Financing, the Incremental Term Loan Facility (if any), the EFIH Second Lien DIP Facility (if any), and the Prepetition Obligations (if any), and any and all forms of adequate protection, liens, or claims securing or otherwise relating to the EFIH First Lien DIP Obligations, the obligations under any Incremental Term Loan Facility, the obligations under any EFIH Second Lien DIP Facility, the Prepetition Secured Obligations, and the Prepetition PIK Notes Obligations.

(c)    No Direct Obligation To Pay Allowed Professional Fees.  The EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Order or otherwise shall be construed to obligate the EFIH First Lien DIP Agent or the EFIH First Lien DIP Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the EFIH Debtors have sufficient funds to pay such compensation or reimbursement.

(d)    Payment of Allowed Professional Fees Prior to the Termination Declaration Date.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e)    Payment of Carve Out On or After the Termination Declaration Date.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the EFIH

First Lien DIP Obligations secured by the EFIH DIP Collateral and shall be otherwise entitled to the protections granted under this Order, the EFIH First Lien DIP Documents, the Bankruptcy Code, and applicable law.

30.    <u>Limitations on the EFIH First Lien DIP Financing, the EFIH DIP Collateral, and the Carve Out</u>.  Notwithstanding anything in this Order to the contrary, the EFIH Debtors shall not assert or prosecute, and no portion of the proceeds of the EFIH First Lien DIP Financing, the EFIH DIP Collateral, including cash collateral, or the Carve Out, and no disbursements set forth in the Budget, may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any person in connection with (a) incurring Indebtedness (as defined in the EFIH First Lien DIP Credit Agreement) except to the extent permitted under the EFIH First Lien DIP Credit Agreement; (b) preventing, hindering, or delaying any of the EFIH First Lien DIP Agent's and the EFIH First Lien DIP Lenders' (in the case of each of the foregoing, in their respective capacities as such) enforcement or realization upon any of the EFIH DIP Collateral once an Event of Default has occurred and after the Remedies Notice Period; (c) objecting, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the EFIH First Lien DIP Obligations or the EFIH First Lien DIP Liens, or any other rights or interest of the EFIH First Lien DIP Agent or the EFIH First Lien DIP Secured Parties (in the case of each of the foregoing, in their respective capacities as such); (d) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against any of the EFIH First Lien DIP Agent, the EFIH First Lien DIP Secured Parties, the Existing DIP Agent, the Existing DIP Lenders, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees (in the case of each of the foregoing, in their

ActiveUS 163231841ActiveUS 163407148

respective capacities as such); or (e) asserting, joining, commencing, supporting, investigating, or prosecuting any action for any claim, counter-claim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the material interests of the Released Parties (as defined herein and in the Existing DIP Orders), arising out of, in connection with, or relating to the EFIH First Lien DIP Financing, the EFIH First Lien DIP Documents, the Existing DIP Facility Documents, or the transactions contemplated hereunder or thereunder, including, without limitation, (i) any action arising under the Bankruptcy Code; (ii) any so-called "lender liability" claims and causes of action; (iii) any action with respect to the validity and extent of the EFIH First Lien DIP Obligations, the DIP Superpriority Claims, or the validity, extent, perfection, and priority of the EFIH First Lien DIP Liens; (iv) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counterclaims, or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against, or with respect to, the EFIH First Lien DIP Liens or the DIP Superpriority Claims, in whole or in part; (v) appeal or otherwise challenge this Order, the EFIH First Lien DIP Documents, or any of the transactions contemplated in this Order or therein; and/or (vi) any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders in respect of their liens and security interests in the EFIH DIP Collateral or any of their rights, powers, or benefits hereunder or in the EFIH First Lien DIP Documents anywhere in the world.  Any and all claims for fees or expenses incurred by the Creditors' Committee, if appointed, or by any party in interest in violation of this paragraph 30 shall not be allowed, treated, or payable as an administrative

ActiveUS 163231841ActiveUS 163407148

expense claim for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, and the non-payment of such fees and expenses shall not constitute grounds to deny confirmation of any plan of reorganization for any of the EFIH Debtors.

31.    <u>Payment of Compensation</u>.  Nothing in this Order shall be construed as a consent to the allowance of any professional fees or expenses of any Professional Person or shall affect the right of the EFIH First Lien DIP Agent or the EFIH First Lien DIP Lenders to object to the allowance and payment of such fees and expenses.

32.    <u>Release</u>.  The EFIH Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in the Cases or Successor Cases) and any party acting by, through, or under the EFIH Debtors or their estates, forever and irrevocably (a) release, discharge, waive, and acquit the current or future EFIH First Lien DIP Agent, the Joint Lead Arrangers, each of the EFIH First Lien DIP Lenders, each of their respective participants and each of their respective affiliates, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, and in each case in their capacities as such, the "<u>Released Parties</u>"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the

ActiveUS 163231841ActiveUS 163407148

EFIH First Lien DIP Financing, the EFIH First Lien DIP Documents, or the transactions contemplated hereunder or thereunder, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, with respect to or relating to the EFIH First Lien DIP Obligations, EFIH First Lien DIP Liens, or EFIH First Lien DIP Financing, as applicable,  (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) and any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the liens or secured claims of the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability of the EFIH First Lien DIP Obligations and the EFIH First Lien DIP Liens.  For the avoidance of doubt, the release in this paragraph shall not apply to, and the Released Parties shall not include, the EFIH Prepetition Collateral Trustee, the Prepetition EFIH Secured Creditors, or the Prepetition Secured Notes Trustees in their capacities as such.

33.     <u>No Third Party Rights</u>.  Except as explicitly provided for in this Order, this Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

34.     <u>Section 506(c) Claims</u>.  No costs or expenses of administration of the Cases or any future proceeding (including any Successor Cases) that may result therefrom, which have been or may be incurred in the Cases at any time, shall be charged against the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, the EFIH First Lien Notes Trustee, the Prepetition EFIH First Lien Creditors, or any of their respective claims or the EFIH DIP Collateral or other collateral, pursuant to section 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written

ActiveUS 163231841ActiveUS 163407148

consent of such persons, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by such person.

35.    <u>No Marshaling/Application of Proceeds</u>.  The EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the EFIH DIP Collateral, and proceeds shall be received and applied pursuant to the terms of the DIP Credit Documents notwithstanding any other agreement or provision herein to the contrary, *provided, however*, that nothing in this Order shall impair the rights of the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders with respect to the EFIH DIP Collateral.  Without limiting the foregoing, or any other provision of this Order, in any respect, in the event that the EFIH First Lien DIP Obligations and the Prepetition First Lien Obligations are indefeasibly paid in full (including any disputed portion of Prepetition First Lien Obligations (through final determination of such amounts including any appeals)) and are satisfied from Unencumbered Property, the Creditors' Committee shall be entitled to argue that upon such full, indefeasible, and complete satisfaction of the EFIH First Lien DIP Obligations and Prepetition First Lien Obligations, the proceeds of any EFIH DIP Collateral that does not constitute Unencumbered Property should be used to establish a fund to fully replenish the Unencumbered Property, provided that (i) such arguments would not be seeking to alter the rights of the EFIH First Lien DIP Agent or the EFIH First Lien DIP Lenders under this Order, the EFIH First Lien DIP Financing or the EFIH First Lien DIP Documents in any manner, and (ii) the rights of all parties to oppose such relief are fully preserved.

36.    <u>Joint and Several Liability</u>.  Nothing in this Order shall be construed to constitute a substantive consolidation of any of the EFIH Debtors' estates, it being understood, however, that the EFIH Debtors shall be jointly and severally liable for the obligations hereunder and in

accordance with the terms of the EFIH First Lien DIP Financing and the EFIH First Lien DIP Documents.

37.    <u>Discharge Waiver</u>.  The EFIH First Lien DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the EFIH First Lien DIP Obligations have been indefeasibly paid in full, in cash on or before the effective date of a confirmed plan of reorganization or liquidation.  It shall be an Event of Default if any of the EFIH Debtors propose or support any plan of reorganization or liquidation, sale of all or substantially all of the EFIH Debtors' assets, or entry of any confirmation order or sale order unless any such plan of reorganization or liquidation, sale, or confirmation order provides that the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) shall be indefeasibly paid in full, in cash on or prior to the earlier to occur of the effective date of any such plan of reorganization or liquidation or sale and the DIP Termination Date.

38.    <u>Rights Preserved</u>.  Notwithstanding anything in this Order to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the EFIH First Lien DIP Agent's or any of the EFIH First Lien DIP Lenders' right to seek any other or supplemental relief in respect of the EFIH Debtors; (b) any of the rights of the EFIH First Lien DIP Agent or any of the EFIH First Lien DIP Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject

61

to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the EFIH First Lien DIP Agent or any of the EFIH First Lien DIP Lenders.

39.    <u>No Waiver by Failure To Seek Relief</u>.  The delay or failure of the EFIH First Lien DIP Agent or the EFIH First Lien DIP Lenders to seek relief or otherwise exercise their rights and remedies under this Order, the EFIH First Lien DIP Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, the Creditors' Committee, the PIK Note Group, or any party in interest, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable EFIH First Lien DIP Documents.

40.    <u>Binding Effect; Successors and Assigns</u>.  The EFIH First Lien DIP Documents and the provisions of this Order, including all findings in this Order, shall be binding upon all parties in interest in the Cases, including, without limitation, the EFIH First Lien DIP Agent, the EFIH First Lien DIP Secured Parties, any statutory or nonstatutory committees appointed or formed in the Cases (including the Creditors' Committee), and the EFIH Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed for the estate of any of the EFIH Debtors) and shall inure to the benefit of the EFIH First Lien DIP Agent, the EFIH First Lien DIP Lenders, and the EFIH Debtors and their respective successors and assigns; *provided, however*, that the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the EFIH Debtors.  In determining to make any loan under the EFIH First Lien DIP Credit Agreement or in exercising any rights or remedies as

62

and when permitted pursuant to this Order or the EFIH First Lien DIP Documents, the EFIH First Lien DIP Agent and the EFIH First Lien DIP Lenders, in such capacities, (a) shall not be deemed to be in control of the operations of any of the EFIH Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the EFIH Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act (as amended), or any similar Federal or state statute) and (b) shall not owe any fiduciary duty to any of the EFIH Debtors, their creditors, or their estates, or shall not constitute or be deemed to constitute a joint venture or partnership with any of the EFIH Debtors.

41.    <u>No Modification of Order</u>.  Unless and until the EFIH First Lien DIP Obligations (excluding any Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations) have been indefeasibly paid in full, in cash (such payment being without prejudice to any terms or provisions contained in the EFIH First Lien DIP Financing which survive such discharge by their terms), an Event of Default shall occur if the EFIH Debtors seek or consent to, directly or indirectly, or if there is entered:  (a) without the prior written consent of the EFIH First Lien DIP Agent and the Required Lenders (as defined in the EFIH First Lien DIP Credit Agreement), (i) any modification, stay, vacatur, or amendment to this Order, (ii) a priority claim for any administrative expense or unsecured claim against the EFIH Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code, or section 506(c) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claims other than the Carve Out, or (iii) any

ActiveUS 163231841ActiveUS 163407148

lien on any of the EFIH DIP Collateral with priority equal or superior to the EFIH First Lien DIP

Liens, except as specifically provided in this Order or in the EFIH First Lien DIP Documents; (b)

without the prior written consent of the EFIH First Lien DIP Agent and the Required Lenders (as

defined in the EFIH First Lien DIP Credit Agreement), an order allowing use of the EFIH DIP

Collateral, including cash collateral, unless otherwise permitted in the EFIH First Lien DIP

Documents; (c) an order converting or dismissing any of the Cases; (d) an order appointing a

chapter 11 trustee in any of the Cases; or (e) an order appointing an examiner with enlarged

powers (having powers beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4))

in any of the Cases; *provided, however*, that notwithstanding anything to the contrary in this

Order, the EFIH Debtors may seek to use cash collateral on a non-consensual basis pursuant to an

order in form and substance acceptable to the EFIH First Lien DIP Agent.  No such consent shall

be implied by any other action, inaction, or acquiescence of the EFIH First Lien DIP Agent.

42.     Survival.  The provisions of this Order and any actions taken pursuant hereto shall

survive entry of any order which may be entered:  (a) confirming any plan of reorganization or

liquidation in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the

Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to

which the Court abstains from hearing any of the Cases or Successor Cases.  The terms and

provisions of this Order, including the claims, liens, security interests, and other protections

granted to the EFIH First Lien DIP Agent and the EFIH First Lien DIP Secured Parties pursuant

to this Order and/or the EFIH First Lien DIP Documents, notwithstanding the entry of any such

order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or

any Successor Cases, and shall maintain their priority as provided by this Order until, in respect of

the EFIH First Lien DIP Financing, all the EFIH First Lien DIP Obligations (excluding any

ActiveUS 163231841ActiveUS 163407148

Secured Hedge Obligations, any Secured Cash Management Obligations, and Contingent Obligations), pursuant to the EFIH First Lien DIP Documents and this Order, have been indefeasibly paid in full, in cash (such payment being without prejudice to any terms or provisions contained in the EFIH First Lien DIP Financing which survive such discharge by their terms).

43.     <u>Guarantors</u>.    Any Subsidiary (as defined in the EFIH First Lien DIP Credit Agreement) of the EFIH Debtors that hereafter becomes a debtor in a case under chapter 11 of the Bankruptcy Code in the Court and is or is required to be a Guarantor (as defined in the EFIH First Lien DIP Credit Agreement) under the EFIH First Lien DIP Credit Agreement automatically and immediately, upon the filing of a petition for relief for such Subsidiary, shall be deemed to be one of the "EFIH Debtors" hereunder in all respects, and all the terms and provisions of this Order, including, those provisions granting security interests in, and Liens on, the EFIH DIP Collateral, and DIP Superpriority Claims in each of the Cases, shall immediately be applicable in all respects to such Subsidiary and its chapter 11 estate, *provided, however*, that for the avoidance of doubt, nothing in this paragraph or elsewhere in this Order shall require Oncor Electric Delivery Holdings Company LLC or any of its direct or indirect subsidiaries, including Oncor Electric Delivery Company LLC, to be a Guarantor under the EFIH First Lien DIP Credit Agreement.    Within five (5) business days of the filing of a petition for relief for any such Subsidiary, the EFIH Debtors shall file a notice with the Court indicating that the Subsidiary is a Guarantor under the EFIH First Lien DIP Credit Agreement.

44.     <u>This Order Governs</u>.    In the event of any inconsistency between the provisions of this Order and the EFIH First Lien DIP Documents, the Incremental DIP Documents, if any, the EFIH Second Lien DIP Documents, if any, the Existing DIP Facility Documents, and related

~~ActiveUS 163231841~~ActiveUS 163407148

documents, the order of the Court approving the EFIH Second Lien DIP Facility, if any, and the Existing DIP Orders, the provisions of this Order shall govern.

45.    <u>Effect of this Order</u>.  This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution thereof.

46.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Order according to its terms.

Wilmington, Delaware
Dated: _____, 2017

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

ActiveUS 163231841ActiveUS 163407148