# **EXHIBIT H**

## **PUCT Regulatory Commitments**

**Regulatory Commitments**

**BOARD**

1. Separate Board Commitment. At closing and thereafter, Oncor Electric Delivery Company LLC ("Oncor") will have a separate board of directors that will not include any employees of Berkshire Hathaway Energy Company ("BHE") competitive affiliates in Texas, any members from the boards of directors of BHE's competitive affiliates in Texas, or any individuals other than the Chairman of the Board of BHE with direct responsibility for the management or strategies of the competitive affiliates.

2. Independent Board Commitment. Each of Oncor and Oncor Electric Delivery Holdings Company LLC ("Oncor Holdings") will have a board of directors comprised of at least ten (10) directors. A majority of the Oncor Holdings' board members and Oncor's board members will qualify as "independent" in all material respects in accordance with the rules and regulations of the New York Stock Exchange ("NYSE") (which are set forth in Section 303A of the NYSE Listed Company Manual), from BHE and its subsidiaries (including BHE's affiliated retail electric provider ("REP") and generation company). Oncor Holdings' and Oncor's boards of directors will not include any employees of BHE's competitive affiliates in Texas or any members from the boards of directors of BHE's competitive affiliates in Texas.

   a. The Oncor Board shall have six (6) Independent/Disinterested Directors, two (2) directors who will be officers of Oncor, and two (2) directors who will be designated by BHE.

   b. The Oncor Holdings Board shall have six (6) Independent/Disinterested Directors, two (2) directors who will be officers of Oncor Holdings, and two (2) directors who will be designated by BHE.

   c. The duties of the Board members of Oncor Holdings and Oncor will be to act in the best interests of Oncor consistent with the approved ring-fence and Delaware Law.

1

3. <u>Independence of Board Commitment</u>. Oncor Holdings' and Oncor's Boards cannot be overruled by the board of BHE or any of its subsidiaries on dividend policy, debt issuance, capital expenditures, management and service fees, and appointment or removal of board members, provided that such actions may also require the additional approval of Oncor Holdings' Board.

   a. The appointment or removal of the Chief Executive Officer or the Chief Financial Officer of Oncor shall require a majority vote of Oncor board of directors, which vote must include the unanimous vote of the BHE directors.

   b. Neither Oncor Holdings nor Oncor nor any of their subsidiaries may without the prior written consent of BHE: (1) enter into or authorize any material transactions with a third party outside ordinary course of business nor enter into any contract, or other similar agreement to effectuate such material transactions; or (2) institute an Oncor bankruptcy filing.

   c. Only the Oncor Holdings Nominating Committee can replace or remove any of the Independent/Disinterested Directors on the Oncor or Oncor Holdings Boards. If the Oncor Holdings Nominating Committee is required to fill a vacancy of an Independent Director on either the Oncor Holdings or Oncor Boards, the Nominating Committee will nominate a new director who is Disinterested. "Disinterested Directors" must: (1) be independent from BHE and its subsidiaries and affiliated entities in all material respects in accordance with the rules and regulations of the NYSE; and (2) have no material relationship with BHE or its subsidiaries or affiliated entities currently or within the previous ten years. Former officers of Oncor who otherwise meet these qualifications qualify as "Disinterested Directors."

   d. The Independent/Disinterested Directors may make recommendations to the Oncor Holdings Nominating Committee for any new Disinterested Directors. The Oncor Holdings Nominating Committee will always have a majority of Independent/Disinterested Directors. The appointment of new disinterested directors to either the Oncor Holdings or Oncor Boards shall be subject to the approval by a majority vote of Independent/Disinterested Directors.

    e.  A majority vote of the Independent and/or Disinterested Directors must approve an annual budget if the aggregate amount of such capital and operating and maintenance expenditures in such annual budget is more than a 10% decrease from the capital and operating and maintenance budget for the immediately prior fiscal year.

    f.  The Independent and/or Disinterested Directors have the right to approve any amendments or changes to the key provisions of LLC Agreements relating to: (1) the Independent Board; (2) the rights and powers of Independent/Disinterested Directors; (3) removal of Directors; and (4) Delaware as controlling law. Changes to the key provisions of the LLC Agreements shall be subject to Commission approval.

## DIVIDENDS

4. <u>Oncor Board's Right to Determine Dividends Commitment</u>.  The Oncor Board, comprised of a majority of Independent/Disinterested Directors, will have the sole right to determine dividends.

    a.  Any amendments or changes to the Dividend Policy have to be approved by a majority vote of the Independent/Disinterested Directors.

    b.  The Independent/Disinterested Directors, acting by majority vote, shall have the authority to prevent Oncor or Oncor Holdings from making any dividend if they determine that it is in the best interest of Oncor to retain such amounts to meet expected future requirements of Oncor (including continuing compliance with the debt-to-equity ratio described in Section 10).

5. <u>Oncor Credit Ratings and Dividends Commitment</u>.  To eliminate concerns regarding a negative impact on Oncor resulting from BHE's acquisition of Oncor, and in lieu of providing specifics regarding acquisition funding, BHE commits to the following:

    a.  BHE will ensure that, as of the closing of the transaction, Oncor's credit ratings at all three major ratings agencies (Standard & Poor's, Moody's Investor Service, or Fitch Ratings) will be at or above Oncor's credit ratings as of June 30, 2017; and

3

b.  If the credit rating by any one of the three major ratings agencies (Standard & Poor's, Moody's Investor Service, or Fitch Ratings) fall below BBB (Baa2) for Oncor senior secured debt, then Oncor will suspend payment of dividends until otherwise allowed by the Commission.

## DEBT

6.  Existing Legacy Debt and Liabilities.  BHE will extinguish all debt that resides above Oncor at EFIH and EFH, reducing it to zero immediately following the closing of the transaction and maintaining it at zero going forward.

7.  No Debt Solely Dependent on Oncor Commitment.  Without prior approval of the Commission, BHE will not incur, guaranty, or pledge assets in respect of any incremental new debt at the closing or thereafter that is dependent on:  (1) the revenues of Oncor in more than a proportionate degree than the other revenues of BHE; or (2) the stock of Oncor.

8.  No Transaction-Related Debt at Oncor Commitment.  Oncor will not incur, guaranty, or pledge assets in respect of any incremental new debt related to financing the transaction at the closing or thereafter.  Oncor's financial integrity will be protected from the separate operations of BHE's affiliated REP or generation company.

9.  Cross-Default Provisions, Financial Covenants or Rating Agency Triggers.  Oncor will not include in any of its debt or credit agreements cross-default provisions between Oncor's securities and the securities of BHE or any of its affiliates or subsidiaries.  Oncor will not include in its debt or credit agreements any financial covenants or rating agency triggers related to BHE or any other BHE affiliate.

10. Debt-to-Equity Ratio Commitment.  Oncor's debt will be limited so that its regulatory debt-to-equity ratio (as determined by the Commission) is at or below the assumed debt-to-equity ratio established from time to time by the Commission for ratemaking purposes.  Oncor's payment of dividends to BHE will be limited by compliance with the Commission-approved regulatory debt-to-equity ratio.

4

11. <u>No Inter-Company Debt Commitment</u>. Oncor will not enter into any inter-company debt transactions with BHE affiliates following consummation of the transaction.

12. <u>No Inter-Company Lending Commitment</u>. Oncor will not lend money to or borrow money from BHE or BHE's affiliates.

13. <u>Credit Facility Commitment</u>. Oncor will not share credit facilities with BHE or BHE's affiliates.

14. <u>No Pledging of Assets/Stock Commitment</u>. Oncor's assets or stock shall not be pledged for any entity other than Oncor.

15. <u>No Recovery of Affiliate REP Bad Debt Commitment</u>. So long as any BHE REP is affiliated with Oncor, Oncor will not seek to recover from its customers any costs incurred as a result of a bankruptcy of any BHE REP.

16. <u>Credit Rating Registration Commitment</u>. BHE and Oncor will be registered with major nationally and internationally recognized bond rating agencies, such as Standard & Poor's, Moody's Investor Service, or Fitch Ratings. Oncor's ratings shall reflect the ring-fence provision contemplated herein in order to provide Oncor with a stand-alone (non-linked) credit rating.

## BANKRUPTCY LIABILITIES

17. <u>Bankruptcy Expenses and Liabilities</u>. Oncor will not seek recovery in rates of any expenses or liabilities related to EFH's bankruptcy. This commitment includes the agreement that Oncor will not seek recovery in rates of amounts resulting from any:  (1) tax liabilities resulting from the spin-off of Texas Competitive Electric Holdings Company LLC; (2) asbestos claims relating to non-Oncor operations of or under EFH; or (3) make-whole claims by creditors of EFH or EFIH set forth in the EFH and EFIH Plan of Reorganization. Oncor's customers will not be required to pay for these items.

## NON-CONSOLIDATION

18. <u>Non-Consolidation Legal Opinion</u>.  BHE agrees to obtain a non-consolidation legal opinion that provides that, in the event of a bankruptcy of BHE or any affiliate of BHE, a bankruptcy court would not consolidate the assets and liabilities of Oncor with BHE or any affiliate of BHE.

## CAPEX

19. <u>Capital Expenditure Commitment</u>.  Oncor shall make minimum capital expenditures equal to a budget of at least $7.5 billion over the five-year period beginning January 1, 2018, and ending December 31, 2022, subject to the following adjustments to the extent reported to the Commission in Oncor's quarterly earnings monitor report:  Oncor may reduce capital spending due to conditions not under Oncor's control, including, without limitation, siting delays, cancellations of projects by third-parties, weaker than expected economic conditions, or if Oncor determines that a particular expenditure would not be prudent.

## CYBERSECURITY

20. <u>Cybersecurity Expenditure Commitment</u>. Oncor shall make minimum cybersecurity expenditures equal to a budget of $35 million over the five-year period beginning January 1, 2018, and ending December 31, 2022.  Oncor shall work cooperatively with other BHE entities with respect to cybersecurity issues.

## AFFILIATE ISSUES

21. <u>Affiliate Asset Transfer Commitment</u>.  Neither Oncor Holdings nor Oncor will transfer any material assets or facilities to any affiliates (other than Oncor Holdings, Oncor, and their subsidiaries, which are hereinafter referred to as the "ring-fenced entities"), other than a transfer that is on an arm's-length basis consistent with the Commission's affiliate standards applicable to Oncor, regardless of whether such affiliate standards would apply to the particular transaction.

22. <u>Arm's-Length Relationship Commitment</u>.  Each of the ring-fenced entities will maintain an arm's-length relationship with BHE or BHE's affiliates consistent with the Commission's affiliate standards applicable to Oncor.

23. <u>Separate Books and Records Commitment</u>.  Each of the ring-fenced entities will maintain accurate, appropriate, and detailed books, financial records and accounts, including checking and other bank accounts, and custodial and other securities safekeeping accounts that are separate and distinct from those of any other entity.

24. <u>FERC Preemption</u>.  Neither Oncor nor BHE or BHE's affiliates will assert before the Commission or a Texas court of competent jurisdiction that the Commission is preempted pursuant to the Federal Power Act (*e.g.*, under a FERC tariff) from making a determination regarding the prudence of affiliate costs sought to be allocated to Oncor.

## ADDITIONAL COMMITMENTS

25. <u>Holding Company Commitment</u>.  Oncor Holdings will be retained between BHE and Oncor.

26. <u>Continued Ownership Commitment</u>.  BHE will hold a majority of its ownership interest in Oncor for a period of more than five years after the closing date of the transaction.

27. <u>Compliance Report Commitment</u>.  For a period of five years after the closing date of the transaction, Oncor will make annual reports to the Commission regarding its compliance with these commitments.

28. <u>Name/Logo Commitment</u>.  BHE commits to maintaining a name and logo for Oncor that is separate and distinct from the names of BHE's REP and wholesale generation companies, if any.

29. <u>Headquarters/Management Commitment</u>.  Oncor will maintain its separate headquarters and management in Dallas, Texas.  Local management will remain the primary point of contact on all regulatory and operational matters.

30. <u>Oncor Senior Management Succession Plan</u>.  Effective upon closing of the transaction, Robert S. Shapard will assume the role of Executive Chairman of the Oncor Board, and E. Allen Nye, Jr. will assume the role of Chief Executive Officer of Oncor.

31. <u>Texas Utility Commitment</u>.  Oncor will continue to operate solely within the state of Texas as a public utility subject to the continuing jurisdiction of the Commission.

32. <u>Reliability.</u>  For purposes of Substantive Rule 25.52, system average interruption duration index ("SAIDI") and system average interuption frequency index ("SAIFI") standards should be calculated for Oncor's current service area based on Oncor's forced

interruption performance for years 2014, 2015, and 2016. These standards should go into effect starting with the calendar year 2018.

33. Reports of SAIDI and SAIFI to Commission. Oncor will report its actual system-level SAIDI and SAIFI statistics to the Commission in its Quarterly Performance Reports and yearly Service Quality Reports filed pursuant to 16 Tex. Admin Code ("TAC") §25.81.

34. Transaction Costs. None of the transaction costs will be borne by Oncor's customers, nor will Oncor seek to include transaction costs in rates. For purposes of this commitment, "Transaction Costs" are those incremental costs paid to advance or consummate the Proposed Transaction. Examples of Transaction Costs include, but are not limited to: BHE employee time and expenses; Oncor change of control payments; certain executive severance costs related to the transaction; and third party costs, including bank advisors, external legal advisors, rating agencies, and expert witnesses and consultants in each case paid to advance or consummate the Proposed Transaction. Transaction Costs do not include Oncor employee time.

35. Transition Costs. No BHE employee time and expenses, third party costs, fees, expenses or costs of the transition ("Transition Costs") will be borne by Oncor's customers, nor will Oncor seek to include Transition Costs in rates. Transition Costs are those costs necessary to integrate the two companies for Day 1 Readiness, including the one-time transition costs being incurred whether directly or indirectly through affiliate charges to transition Oncor to ownership by BHE and to integrate Oncor's operations and systems with those of BHE. Provided, however, that Transition Costs do not include Oncor employee time, costs to achieve savings or synergies or costs that reflect reasonable and necessary costs in providing service to the public. "Costs to achieve" reflect amounts incurred to realize operating enhancements, efficiency gains, or costs reduction initiatives.

36. Workforce. For two years after closing, each current Oncor employee who is employed on the closing date will be provided; (a) a base salary or wage rate no less favorable than the base salary or wage rate provided to such employee immediately prior to the closing date; (b) aggregate incentive compensation opportunities that are substantially

8

comparable in the aggregate to those provided to such employee immediately prior to the closing date; and (c) employee benefits that are substantially comparable in the aggregate to those provided to such employee immediately prior to the closing date. Oncor will not implement any material involuntary workforce reductions (with respect to either field or corporate personnel) of Oncor employees.

37. Collective Bargaining Agreements. With respect to any Oncor employee whose terms and conditions of employment are covered by a collective bargaining agreement, the terms and conditions of such employment will continue to be governed by the terms of the applicable collective bargaining agreement, as may be modified from time to time.

38. Code of Conduct. Oncor will continue to conduct its activities in compliance with its existing code of conduct.

39. Commission Jurisdiction. Oncor and Oncor Holdings will not own, operate, or construct capital assets outside of ERCOT without prior approval from the Commission or take any other action that would impair the Commission's regulatory jurisdiction. Neither Oncor, Oncor Holdings, BHE nor their respective affiliates will take any action that would subject ERCOT assets to the jurisdiction of the Federal Energy Regulatory Commission ("FERC"); provided, however, that FERC continues to have jurisdiction under sections 210, 211, and 212 of the Federal Power Act ("FPA") and may direct transmission and interconnection services over certain existing facilities outside of ERCOT; provided further that the existing reliability and critical infrastructure standards administered by the North American Electric Reliability Corporation ("NERC"), through delegation of authority from FERC, may affect the operations of assets that are deemed part of the bulk electric system.

40. Texas Reliability Entity. Oncor will not seek to have another NERC Regional Entity other than the Texas Reliability Entity serve as the lead regional entity responsible for monitoring Oncor's activities and ensuring compliance with NERC Reliability Standards.

41. Goodwill. Any costs of goodwill of BHE or its affiliates (including the pre-existing goodwill recognized by Oncor) will not be included in rate base, cost of capital, or

9

operating expenses in future Oncor ratemaking proceedings. Write-downs or write-offs of goodwill will not be included in the calculation of net income for dividend payment purposes.

42. Pushdown Accounting. BHE will not elect to apply pushdown accounting for the merger, i.e., the merger will have no impact on Oncor's assets being acquired; and any incremental goodwill will not be allocated to, or recognized within, Oncor's balance sheet.

43. Tangible and Quantifiable Benefits. At a minimum, Oncor will provide the following tangible and quantifiable benefits associated with the merger. Oncor will provide monthly bill credits to electric delivery rates for ultimate credits to customers in an amount equal to 90% of any interest rate savings achieved until: final rates are set in the next Oncor base rate case after the Oncor base rate case currently filed. Savings will not be included in credits if already realized in rates. Interest Rate Savings refers to the improvement in Oncor's borrowing costs post-close relative to those costs as of June 30, 2017 due to improvement in credit ratings and/or improvement in market spreads. Until final rates are set in the next Oncor base rate case after the Oncor base rate case that is currently filed, Oncor will file a report with the Commission every six months detailing any interest rate savings determined by the amount of debt issued by Oncor by at least 0.15% (amounts above 0.15% being based on actual interest rate savings by Oncor) and demonstrating a calculation of the credit. BHE and Oncor agree to work in good faith with interested parties to determine an acceptable method for implementation of any bill credit to effectuate this commitment, as approved by the Commission. At a minimum, Oncor shall provide retail electric providers 45-day notice of the amount of any customer credits (e.g., for each customer class, the amount per kwh or per-customer credit that would apply) prior to the effective date of the credits and shall implement updated bill credits simultaneously with other changes in Oncor's rates. In addition, one year after closing, Oncor will present a merger synergy savings analysis to the Commission and provide monthly bill credits to electric rates for inclusion in customer bills in an amount equal to 90% of any synergy savings until final rates are set in the next Oncor base rate proceeding, in which any total synergy savings shall be reflected in Oncor's rates.

10

44. The Oncor Holdings and Oncor LLC Agreements shall be amended to the extent necessary to effect all of the commitments herein.

The undersigned parties agree to support approval of a transaction by Berkshire Hathaway Energy Company to acquire 100% of Oncor Electric Delivery Company LLC (the "Transaction"), subject to review of the Application presented to the Public Utility Commission of Texas and confirmation that the Transaction (a) includes the foregoing Proposed Regulatory Commitments (the "Commitments") and (b)  the transaction otherwise meets the applicable Public Utility Commission of Texas requirements necessary to find that the Transaction is in the public interest.

**AGREED:**

**STAFF OF THE PUBLIC UTILITY COMMISSION OF TEXAS**

BY: _____

Brian Lloyd, Executive Director

**OFFICE OF PUBLIC UTILITY COUNSEL**

BY: _____

Tonya Baer, Public Counsel

**TEXAS INDUSTRIAL ENERGY CONSUMERS**

BY: _____

Phillip Oldham, Counsel for TIEC

**STEERING COMMITTEE OF CITIES SERVED BY ONCOR**

BY: _____

Geoffrey Gay, Counsel for Cities

12

**AGREED:**

**STAFF OF THE PUBLIC UTILITY COMMISSION OF TEXAS**

BY:_____

     Brian Lloyd, Executive Director

**OFFICE OF PUBLIC UTILITY COUNSEL**

BY:___*Tonya Baer*_____

     Tonya Baer, Public Counsel

**TEXAS INDUSTRIAL ENERGY CONSUMERS**

BY:_____

     Phillip Oldham, Counsel for TIEC

**STEERING COMMITTEE OF CITIES SERVED BY ONCOR**

BY:_____

     Geoffrey Gay, Counsel for Cities

13

**AGREED:**

**STAFF OF THE PUBLIC UTILITY COMMISSION OF TEXAS**

BY:_____

    Brian Lloyd, Executive Director

**OFFICE OF PUBLIC UTILITY COUNSEL**

BY:_____

    Tonya Baer, Public Counsel

**TEXAS INDUSTRIAL ENERGY CONSUMERS**

BY:_____

    Phillip Oldham, Counsel for TIEC

**STEERING COMMITTEE OF CITIES SERVED BY ONCOR**

BY:_____

    Geoffrey Gay, Counsel for Cities

13