**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: D.I. 11430** |

**DECLARATION OF DAVID YING IN SUPPORT OF THE**
**MOTION OF THE EFH/EFIH DEBTORS FOR ORDER AUTHORIZING**
**ENTRY INTO MERGER AGREEMENT AND APPROVING TERMINATION FEE**

I, David Ying, declare as follows:

1.      I am a Senior Managing Director of Evercore Group L.L.C. ("Evercore"), a financial advisory and investment banking firm with offices around the world and financial advisor and investment banker to the above-captioned debtors and debtors in possession, including the E-Side Debtors.  I submit this declaration (this "Declaration") in support of the *Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee* (the "Motion").[2]

2.      Except where specifically noted, the statements in this Declaration are based on either my personal knowledge, information supplied or verified by the Evercore financial team that I supervise or the Debtors' personnel and third-party advisors, my review of relevant documents, or my opinion based upon my experience and knowledge of the Debtors' operations and financial condition.  If I were called upon to testify, I could and would testify competently to

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]     Terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the facts set forth herein.  I am authorized to submit this Declaration on behalf of the E-Side

Debtors.

3.      Further information regarding the Motion is set forth in the *Declaration of Paul*

*Keglevic in Support of the Motion of the EFH/EFIH Debtors for Order Authorizing Entry into*

*Merger Agreement and Approving Termination Fee*, filed contemporaneously herewith (the

"Keglevic Declaration").

## I.      Qualifications.

4.      Evercore is one of the world's leading independent investment banking groups,

with more than 20 offices in more than eight countries, including an office located at 55 East

52nd Street, New York, NY 10055.  Evercore has expertise in domestic and cross border

restructurings, mergers and acquisitions, raising debt and equity capital, and other financial

advisory services.  Evercore has served as an experienced bankruptcy and restructuring advisor

to debtors, bondholders, creditors' committees, single creditor classes, and secured creditors in a

variety of industries.  Evercore is a member of the Financial Industry Regulatory Authority and

the Securities Investor Protection Corporation.

5.      I specialize in advising both debtors and creditors in financial restructurings and

distressed mergers and acquisitions; raising capital for troubled businesses; and representing

debtors and creditor constituencies in bankruptcy proceedings.  I joined Evercore in 2005 and

founded the firm's Restructuring and Debt Advisory Group.  I have over 30 years of experience

in restructuring advisory and leveraged finance.  Prior to joining Evercore, I held similar

positions at Miller Buckfire Ying & Co., Donaldson, Lufkin & Jenrette, Smith Barney, Drexel

Burnham Lambert, and in private equity investing, at JLL Partners.  I have a B.S. from the

RLF1 17803046v.1

Massachusetts Institute of Technology and an M.B.A. from the Wharton School at the University of Pennsylvania.

6.      I, together with my colleagues, have advised the Debtors in virtually all financial aspects of their restructuring process since before the Petition Date.  Evercore was retained to, among other things, evaluate the financial terms and the value of bids the Debtors received for the sale of their indirect economic interest in Oncor Electric Delivery Company LLC ("Oncor"), evaluate the feasibility of any plan of reorganization for purposes of 11 U.S.C. § 1129(a)(11), and advise the Debtors' management and boards of directors as to these and other financial matters.

## I.      Marketing of the E-Side Debtors' Interest in Oncor.

7.      The E-Side Debtors' indirect economic interest in Oncor has undergone an extensive formal and informal marketing process for more than three years.

### A.      Formal Two-Stage Marketing of the E-Side Debtors' Interest in Oncor.

8.      In January 2015, the Court approved bidding procedures governing a formal, two-stage marketing process for Oncor.  Over the next six months, the Debtors aggressively marketed that interest to a wide range of potential bidders through the Court-approved process. Throughout, the Debtors consulted with the conflicts matters advisors and the advisors to the E-Side and T-Side creditors' committees, including on twice-weekly standing update calls.

9.      After entry of the bidding procedures order, the Debtors and their advisors circulated a process letter to 50-plus potential strategic and financial bidders.  The process letter explained the opportunity to bid and invited potential bidders to participate.  Twenty-eight potential bidders requested and received nondisclosure agreements, and 17 signed them, gaining access to an extensive electronic data room maintained by the Debtors.  Over the following

3

weeks, potential bidders held diligence calls and meetings with the Debtors' advisors, and a number of the most interested bidders met with Oncor management.

10.     The Debtors received two first round bids and two second round bids from third-party bidders (i.e., non-creditors).   The Debtors negotiated value and key terms with these bidders over several months.   After receiving second round bids, the Debtors simultaneously negotiated definitive documentation for two third-party bids while continuing to advance plan discussions with creditor constituencies.   Ultimately, both remaining third-party acquisition proposals dissipated.   Toward the end of June 2015, the Debtors determined that the Oncor bidding process had not yielded a sufficiently high offer to justify selecting a stalking horse. Accordingly, the Debtors declined to do so and instead shifted their focus to the ongoing plan negotiations.

**B.     The Hunt Plan.**

11.     One of the third-party bids received through the Court-approved marketing process was submitted by Hunt Consolidated, Inc. and certain co-investors (collectively, the "Hunt Group").   After the formal Oncor marketing process terminated, ad hoc groups of TCEH creditors submitted a compromise proposal that contemplated a Hunt Group-sponsored merger with reorganized EFH Corp. (the "Hunt Merger"), in which EFH Corp. would convert to a real estate investment trust.   The proposal from the TCEH creditors also contemplated a global settlement of ongoing disputes, lien challenges, and legacy litigation.

12.     In August 2015, the Debtors, the Hunt Group, and various TCEH creditor parties entered into a plan support agreement contemplating the Hunt Merger (the "Hunt PSA").   The Hunt PSA includes provisions governing an alternative restructuring that remain in effect even after the primary plan support obligations terminate (the "Alternative Restructuring").   The Court

4

approved the Debtors' entry into the Hunt PSA on September 18, 2015, and confirmed the plan

of reorganization authorizing the Hunt Merger (the "Original Confirmed Plan") on December 9,

2015.

13.      Under the Hunt PSA, the parties' obligations to support the Original Confirmed

Plan could terminate under certain circumstances on April 30, 2016 unless regulatory approvals

from the Public Utility Commission of Texas ("PUCT") were obtained.  On March 24, 2016, the

PUCT entered an order that contained certain commitments for Oncor that the Hunt Group

deemed unacceptable.  Accordingly, on April 30, 2016, certain members of the Hunt Group as

parties to the Hunt PSA indicated that they would not elect to extend the date for regulatory

approvals.  As a result, on May 1, 2016, the ad hoc group of TCEH first lien creditors delivered a

plan support termination notice to the parties to the Hunt PSA, which caused the Original

Confirmed Plan to be null and void.  Shortly thereafter, the Debtors terminated the merger

agreement related to the Hunt Merger.

14.      Importantly, while this termination event terminated the parties' obligations to

support the Original Confirmed Plan, it did not terminate the Hunt PSA.  The Alternative

Restructuring provisions of the Hunt PSA, which generally restrict certain TCEH junior creditors

from objecting to an alternative plan that meets certain requirements, remain in effect.

### C.      The NextEra Plan.

15.      After the termination of the Original Confirmed Plan, the Debtors immediately

began implementing their contingency plans.  On the T-Side, the core framework for a

restructuring had been established and largely agreed upon by key stakeholders via the

Alternative Restructuring provisions of the Hunt PSA.  Accordingly, last summer, the

confirmation processes for the T-Side Debtors and E-Side Debtors diverged.  On August 29,

RLF1 17803046v.1

2016, the Court confirmed a plan in which TCEH was spun-off in a largely tax-free manner to the TCEH first lien creditors with a $550 million cash recovery to TCEH junior creditors, as contemplated by the Alternative Restructuring provisions under the Hunt PSA. On October 3, 2016, the Plan went effective as to the T-Side Debtors.

16.    Last spring, the E-Side Debtors restarted negotiations with creditors regarding a potential standalone plan in which reorganized EFH Corp. equity would be allocated among existing creditors. To that end, the E-Side Debtors submitted a standalone plan proposal to the advisors of various creditors at the end of April 2016. After years of such negotiations, however, the E-Side Debtors were aware of the distinct challenges associated with causing EFH Corp. and EFIH creditors to agree to allocations of reorganized EFH Corp. equity. Among other challenges, it may not be possible to compel the E-Side Debtors' prepetition secured lenders to accept equity on account of their secured claims.

17.    Informed by that experience, the E-Side Debtors also refreshed the Oncor marketing process. The E-Side Debtors contacted 18 potential strategic and financial bidders, most of whom were parties that previously showed interest in the asset, and sent process letters to 15 of them. Of those parties, eight parties signed nondisclosure agreements and obtained access to an updated electronic data room.

18.    At the time, NextEra, which had a longstanding interest in acquiring the Debtors' economic interest in Oncor, was the most engaged. NextEra and two other bidders engaged in negotiations with the E-Side Debtors. Negotiations progressed to documentation with NextEra and one other party—Berkshire Hathaway Energy Company ("BHE"). Throughout the negotiations, the E-Side Debtors sought to use the multiple-bidder dynamic to obtain the highest and otherwise best terms and conditions, particularly on the overall value of the bids.

6

19.     As described in more detail in the Keglevic Declaration, the E-Side Debtors ultimately determined to enter into a deal with NextEra.  After adverse rulings from the PUCT regarding the NextEra deal, the E-Side Debtors again considered alternative restructuring options, and ultimately determined it was in the best interests of their estates to enter into a transaction with BHE on July 6, 2017 (the "Transaction" and the agreement, the "Merger Agreement").

## II.     The Termination Fee in the BHE Merger Agreement.

20.     Upon Court approval of the Merger Agreement with BHE, EFH Corp. and EFIH are liable for the termination fee, in the amount of $270 million, as an allowed administrative expense claim, in the event of certain termination events under the Merger Agreement (the "Termination Fee").

21.     The Merger Agreement contemplates an E-Side transaction whereby BHE contributes approximately $9 billion in cash consideration ("EV") resulting in an approximate $18.1 billion implied total enterprise value ("TEV") for the 80% of Oncor owned by EFIH.  TEV and EV are commonly used as reference points for measuring the comparability of bids and other deal metrics, like termination fees.  In the tables below, EV represents offer price per share multiplied by the fully diluted shares outstanding.  TEV represents EV plus debt, the minority interest, and preferred equity, less cash and cash equivalents.  The table below summarizes the results from the comparable transactions described in the subsequent pages.

|  | BHE Transaction | Public Utility Transactions | Similarly Sized Transactions |
|---|---|---|---|
| Fee as a % of TEV | 1.5% | 2.0% | 2.7% - 2.8% |
| Fee as a % of EV | 3.0% | 3.0% - 3.1% | 3.3% |

RLF1 17803046v.1

22.    I believe the Termination Fee is comparable to fees payable by target companies in transactions of publicly traded utility companies since 2012 with equity values of $1 billion or greater, as depicted in the following tables:

**Termination Fee of Target as % of TEV for Publicly Traded Utility Transactions**

| Date Announced | Acquirer | Target | TEV $ (in millions) | Break Fee of Target | |
|---|---|---|---|---|---|
| | | | | $ (in millions) | % of TEV |
| 01/25/17 | AtlasGas | WGL Holdings | 6,299 | 136 | 2.2% |
| 07/29/16 | NextEra Energy | EFH Corp.[3] | 18,706 | 275 | 1.5% |
| 05/31/16 | Great Plains | Westar | 12,157 | 280 | 2.3% |
| 02/09/16 | Algonquin | Empire District | 2,364 | 53 | 2.2% |
| 02/09/16 | Fortis | ITC Holdings | 11,435 | 245 | 2.1% |
| 02/01/16 | Dominion | Questar | 5,979 | 99 | 1.7% |
| 10/26/15 | Duke Energy | Piedmont Natural Gas | 6,579 | 125 | 1.9% |
| 09/04/15 | Emera Inc. | TECO Energy | 10,389 | 213 | 2.0% |
| 08/24/15 | Southern Company | AGL Resources | 11,996 | 201 | 1.7%. |
| 02/25/15 | Iberdrola USA | UIL Holdings | 4,483 | 75 | 1.7%. |
| 12/03/14 | NextEra Energy | Hawaiian Electric Industries | 4,336 | 90 | 2.1% |
| 10/20/14 | Macquarie Group | Cleco Corporation | 4,720 | 120 | 2.5% |
| 06/23/14 | Wisconsin Energy Corp. | Integrys Energy Group | 9,137 | 175 | 1.9% |
| 04/30/14 | Exelon Corp. | Pepco Holdings | 11,928 | 293 | 2.5% |
| 12/11/13 | Fortis Inc. | UNS Energy | 4,276 | 64 | 1.5% |

---

3    EFH Corp. is not a publicly-traded utility.

8

| Date Announced | Acquirer | Target | TEV $ (in millions) | Break Fee of Target | |
|---|---|---|---|---|---|
| | | | | $ (in millions) | % of TEV |
| 05/29/13 | MidAm. Energy Holdings Company | NV Energy | 10,400 | 170 | 1.6% |
| | | | | **Mean** | **2.0%** |
| | | | | **Median** | **2.0%** |

9

RLF1 17803046v.1

**Termination Fee of Target as % of EV for Publicly Traded Utility Transactions**

| Date Announced | Acquirer | Target | EV $ (in millions) | Break Fee of Target | |
|---|---|---|---|---|---|
| | | | | $ (in millions) | % of EV |
| 01/25/17 | AtlasGas | WGL Holdings | 4,519 | 136 | 3.0% |
| 07/29/16 | NextEra Energy | EFH Corp.[4] | 9,796 | 275 | 2.8% |
| 05/31/16 | Great Plains | Westar | 8,537 | 280 | 3.3% |
| 02/09/16 | Algonquin | Empire District | 1,491 | 53 | 3.6% |
| 02/09/16 | Fortis | ITC Holdings | 7,055 | 245 | 3.5% |
| 02/01/16 | Dominion | Questar | 4,390 | 99 | 2.3% |
| 10/26/15 | Duke Energy | Piedmont Natural Gas | 4,795 | 125 | 2.6% |
| 09/04/15 | Emera Inc. | TECO Energy | 6,508 | 213 | 3.3% |
| 08/24/15 | Southern Company | AGL Resources | 7,944 | 201 | 2.5% |
| 02/25/15 | Iberdrola USA | UIL Holdings | 2,999 | 75 | 2.5% |
| 12/03/14 | NextEra Energy | Hawaiian Electric Industries | 2,636 | 90 | 3.4% |
| 10/20/14 | Macquarie Group | Cleco Corporation | 3,357 | 120 | 3.6% |
| 06/23/14 | Wisconsin Energy Corp. | Integrys Energy Group | 5,804 | 175 | 3.0% |
| 04/30/14 | Exelon Corp. | Pepco Holdings | 6,872 | 293 | 4.3% |
| 12/11/13 | Fortis Inc. | UNS Energy | 2,508 | 64 | 2.5% |
| 05/29/13 | MidAm. Energy Holdings Company | NV Energy | 5,629 | 170 | 3.0% |
| | | | | **Mean** | **3.1%** |
| | | | | **Median** | **3.0%** |

---

[4]   EFH Corp. is not a publicly-traded utility.

RLF1 17803046v.1

23.     Further, I believe the Termination Fee is comparable as a percentage of TEV and

EV to fees payable by target companies in recent, similarly-sized transactions across industries:

**Termination Fee of Target as % of TEV Across Industries**

| Date Announced | Acquirer | Target | TEV $ (in millions) | Break Fee of Target | |
|---|---|---|---|---|---|
| | | | | $ (in millions) | % of TEV |
| 07/07/16 | Danone SA | The WhiteWave Foods Co. | 12,494 | 310 | 2.5% |
| 03/20/16 | Sherwin-Williams Co. | Valspar Corp. | 11,292 | 300 | 2.7% |
| 11/17/15 | Air Liquide SA | Airgas Inc. | 13,346 | 400 | 3.0% |
| 10/21/15 | Lam Research Corp. | KLA-Tencor Corp. | 11,333 | 290 | 2.6% |
| 05/21/15 | CVS Health Corp. | Omnicare Inc. | 12,596 | 350 | 2.8% |
| 03/30/15 | UnitedHealth Group Inc. | Catamaran Corp. | 13,333 | 450 | 3.4% |
| 01/26/15 | Energy Transfer Partners LP | Regency Energy Partners LP | 18,024 | 450 | 2.5% |
| 10/05/14 | Becton Dickinson & Co. | CareFusion Corp. | 12,309 | 367 | 3.0% |
| | | | | **Mean** | **2.8%** |
| | | | | **Median** | **2.7%** |

11

**Termination Fee of Target as % of EV Across Industries**

| Date Announced | Acquirer | Target | EV $ (in millions) | Break Fee of Target | |
|---|---|---|---|---|---|
| | | | | $ (in millions) | % of EV |
| 07/07/16 | Danone SA | The WhiteWave Foods Co. | 10,345 | 310 | 3.0% |
| 03/20/16 | Sherwin-Williams Co. | Valspar Corp. | 9,350 | 300 | 3.2% |
| 11/17/15 | Air Liquide SA | Airgas Inc. | 10,641 | 400 | 3.8% |
| 10/21/15 | Lam Research Corp. | KLA-Tencor Corp. | 10,451 | 290 | 2.8% |
| 05/21/15 | CVS Health Corp. | Omnicare Inc. | 10,604 | 350 | 3.3% |
| 03/30/15 | UnitedHealth Group Inc. | Catamaran Corp. | 12,911 | 450 | 3.5% |
| 01/26/15 | Energy Transfer Partners LP | Regency Energy Partners LP | 11,287 | 450 | 4.0% |
| 10/05/14 | Becton Dickinson & Co. | CareFusion Corp. | 12,168 | 367 | 3.0% |
| | | | | **Mean** | **3.3%** |
| | | | | **Median** | **3.3%** |

24.     For the foregoing reasons, I believe that the Termination Fee is reasonable under the circumstances.  I also believe the Termination Fee is reasonable because, among other things, of the firm financial commitment from a credit-worthy acquirer that is one of America's most prominent and well-regarded utility holding companies; Oncor, BHE, PUCT staff, and certain interveners have reached agreement on a set of regulatory commitments that should facilitate a more consensual PUCT approval process; and the Transaction contemplates similar treatment for certain EFH creditor constituencies as in the NextEra deal and is designed to honor the prior

commitments of the E-Side Debtors in connection with the tax-efficient separation of the T-Side

Debtors.

*[Remainder of page intentionally left blank.]*

RLF1 17803046v.1

Pursuant to 28 U.S.C. § 1746, I hereby declare that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 7th day of July, 2017.

*/s/ David Ying*

David Ying
Senior Managing Director
Evercore Group L.L.C.
