# Exhibit C

## The Elliott Response Letter

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

|  |  |  |
|---|---|---|
| Chad J. Husnick , P.C.<br>To Call Writer Directly:<br>(312) 862-2009<br>chusnick@kirkland.com | 300 North LaSalle<br>Chicago, IL 60654<br><br>(312) 862-2000<br><br>www.kirkland.com | Facsimile:<br>(312) 862-2200 |

July 7, 2017

<u>Via E-Mail</u>

Mr. Gregg M. Galardi
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036

Re:     *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS)

Dear Gregg:

I write on behalf of the debtors in the above-referenced chapter 11 cases regarding your client's July 5, 2017 letter to the boards of Energy Future Holdings Corp. and Energy Future Intermediate Holding Company LLC (the "<u>Boards</u>").

The Boards are acutely aware of their fiduciary duties to maximize value for the Debtors' estates—for the benefit of all of the Debtors' stakeholders. Consistent with and in implementing those very duties, on July 7th, the Debtors executed a merger agreement contemplating a comprehensive transaction with Berkshire Hathaway Energy Company, a well-known, highly-rated company with $85 billion of assets as of December 31, 2016 ("<u>BHE</u>").

As you are aware, following our conversation on July 6th, among other key benefits, the proposed BHE transaction does not contain any financing conditions; appropriately reserves any determination on the allocation of a termination fee payable to NextEra (if any) to the determination of the respective disinterested directors and the approval of the Bankruptcy Court; and, critically, reflects the agreement of Oncor, the PUCT Staff, and two key interveners for regulatory commitments to be included in BHE's and Oncor's change of control application with the PUCT, laying the groundwork for a more consensual regulatory approval process.

The Debtors appreciate Elliott's efforts over the past several months, including good faith participation in lengthy principal-to-principal and advisor-to-advisor discussions, extensive negotiations on (and numerous exchanges of) drafts of term sheets and investor presentations, and Elliott's efforts to obtain committed financing. Despite those efforts, there continue to be material open issues (that have been communicated several times on a principal-to-principal basis and on an advisor-to-advisor basis) that remain gating items for resolution before the

## KIRKLAND & ELLIS LLP

Mr. Gregg M. Galardi
July 7, 2017
Page 2

Debtors, in an exercise of their fiduciary duties, could reach an agreement with Elliott on an Elliott-sponsored transaction.

Your letter presents a good opportunity to summarize again the issues that are impeding the Debtors from proceeding with an Elliott-sponsored transaction at this time. The Debtors view the following items, among others, as key open issues:

- despite Elliott's efforts over the last few months, the current absence of *any* committed financing—or even the form of any commitment papers—and the projected additional difficulties in obtaining such financing in light of, among other factors, indications from the PUCT and the Debtors' requested mandatory conversion provisions regarding the proposed DIP facilities;

- the fundamental disagreement on how to mitigate the Debtors' significant liquidation risk in the event the proposed DIP facilities are funded but the Elliott-sponsored transaction does not close;

- Elliott's insistence on conditions for any settlement between the disinterested directors of an allocation, if payable, of the NextEra termination fee;

- the comparatively limited certainty of closing associated with an Elliott-sponsored transaction compared to the BHE-sponsored transaction;

- the appropriate construct of the Debtors' fiduciary out, specifically regarding "Superior Proposals"; and

- the unknown timeline associated with confirming and consummating an Elliott-sponsored transaction (given that the timeline hinges on Elliott obtaining committed financing, an effort that the Debtors assume Elliott began upon signing a confidentiality agreement with the Debtors on May 17, 2017—50 days ago).

Faced with a final order from the PUCT rejecting the transactions contemplated by the previously-confirmed plan of reorganization, the Boards' fiduciary duty obligations require them to actively pursue other options for driving the Debtors' chapter 11 cases to a close. Waiting another 50 days for committed financing that may or may not be obtained, in pursuit of a transaction that currently has not only no regulatory support but also significant confirmation risk (as currently contemplated) is not a viable option for the Debtors at this time. Among other things, the continuing interest burn on the EFIH second lien notes will erode EFIH unsecured recoveries with each passing day.

## KIRKLAND & ELLIS LLP

Mr. Gregg M. Galardi
July 7, 2017
Page 3

    At the same time, the merger agreement with BHE permits the Debtors to (a) solicit, initiate, encourage, and enter into alternative proposals until entry of the Bankruptcy Court order approving the BHE merger agreement and (b) pursue superior proposals with any party that has provided a written, indicative bid prior to entry of such Bankruptcy Court order. The Debtors expect that the hearing to consider approval of the merger agreement will take place on August 11, 2017 -- 35 days from the date of signing.

    In other words, productive discussions with Elliott should not end; rather, the Debtors and Elliott should continue their discussions for a consensual path forward. Indeed, it is in that very spirit that the Debtors' representatives reached out to Elliott on July 6th to to preview the signing of the BHE merger agreement and express their desire to reach consensus, if possible.

    The Debtors, including their Boards, remain committed to maximizing the value of the Debtors' estates. Importantly, the Debtors believe a value-maximizing transaction should have committed financing (or no financing conditions), sufficient regulatory support, mitigated confirmation risk, and limited litigation contingencies. The Debtors have no obligation, however, to raise financing necessary for Elliott to implements its transaction. That said, the Debtors remain committed to continuing to explore an Elliott-sponsored transaction that is capable of satisfying those conditions.

    Sincerely,

    */s/ Chad J. Husnick, P.C.*

    Chad J. Husnick, P.C.

cc:    Paul Keglevic (EFH)
       Anthony Horton (EFH)
       Andrew M. Wright (EFH)