**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>ENERGY FUTURE<br>HOLDINGS CORP., *et al.*,<br><br>*Debtors*. | ) ) ) ) ) ) ) ) ) ) | Chapter 11<br><br>Case No. 14-10979 (CSS)<br>(Jointly Administered)<br><br>**Related D.I.: 11425** |

**THE ELLIOTT FUNDS' OBJECTION TO THE MOTION OF THE EFH/EFIH DEBTORS FOR ENTRY OF AN ORDER SCHEDULING CERTAIN HEARING DATES AND DEADLINES AND ESTABLISHING CERTAIN PROTOCOLS IN CONNECTION WITH CONFIRMATION OF THE JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, AND THE EFH/EFIH DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott" or the "Elliott Funds") respectfully object (the "Objection") to the *Motion of the EFH/EFIH Debtors for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11425] (the "Plan Scheduling Motion"). In support of this Objection, Elliott respectfully state as follows:

**PRELIMINARY STATEMENT**

1. Contemporaneously with the filing of this objection, Elliott filed its motion to adjourn (the "Motion to Adjourn") the hearing on the *Motion of the EFH/EFIH Debtors for Order Authorizing Entry Into Merger Agreement and Approving Termination Fee* [D.I. 11430] (the "Berkshire Merger Agreement Motion"). By the Motion to

Adjourn, Elliott requests that the Court temporarily delay consideration of the proposed sale transaction with Berkshire Hathaway Energy Company ("Berkshire") to provide Elliott—the Debtors' largest unsecured creditor— until early September to raise capital and equity financing commitments for a value-maximizing equitization plan. Specifically, in the Motion to Adjourn, Elliott requests that the Court adjourn the hearing on the Berkshire Merger Agreement Motion and approval of the $270 million termination fee that is currently scheduled for August 10, 2017 for 35 to 40 days.

2. By this Objection, Elliott similarly requests that the Court deny the Debtors' request for an August 11, 2017 hearing on the disclosure statement (the "Berkshire Disclosure Statement") with respect to the Debtors' plan of reorganization incorporating the proposed Berkshire Merger Agreement (the "Berkshire Plan") and instead schedule the Berkshire Disclosure Statement hearing on the same day as, or a day following, the requested adjourned hearing on the Berkshire Merger Agreement Motion.

**BASIS FOR RELIEF**

3. The basis for the requested adjournment of the hearing on the Berkshire Merger Agreement Motion is set forth in detail in the Motion to Adjourn. For the same reasons, the Debtors' request to hold a hearing on the Berkshire Disclosure Statement, which simply incorporates the Berkshire Merger Agreement, should be denied and scheduled instead for the date of the hearing on the Berkshire Merger Agreement, or, if appropriate, as soon thereafter as the Court determines appropriate.

4. To avoid burdening the Court with a duplicative discussion, Elliott incorporates by reference the arguments, background, and documents supporting the Motion to Adjourn as if set forth in full herein. In summary, the requested adjournments

are necessary to permit time for Elliott to raise $9.3 billion in capital to fund a creditor-led equitization plan, which will provide hundreds of millions of dollars in value above the value of the Berkshire transaction.

5. Elliott does **not** presently seek to adjourn the confirmation hearing currently proposed to commence October 24, 2017.  While that might ultimately be necessary, these Chapter 11 cases would still be able to be resolved within the timeframes contemplated by the Berkshire Merger Agreement.  The Berkshire Merger Agreement only requires that the Debtors use "commercially reasonable efforts" to obtain a confirmation order by November 22—a month after the currently requested October 24 confirmation hearing—and Berkshire's termination right provides a December 15 outside date for entry of a confirmation order.  *See* Berkshire Merger Agreement §§ 6.3(g)(v), 8.4(h)(iv).  Absent the Debtors further interfering with or impeding Elliott's efforts, neither the November 22 nor the December 15 date is at any risk.

## OBJECTION

6. Elliott requests that certain interim discovery deadlines and provisions set forth in the proposed order on the Plan Scheduling Motion (the "Proposed Scheduling Order") be modified to permit fair discovery with respect to the Berkshire Plan and the Berkshire Merger Agreement on which it rests, assuming that the Debtors are permitted to proceed with the Berkshire Plan on October 24, 2017.

7. Specifically, in addition to objecting to the proposed scheduling of a disclosure statement hearing for August 11, 2017, Elliott objects to several interim discovery deadlines and provisions in the Proposed Scheduling Order. Mindful that the Court has previously approved similar, fast-track confirmation discovery schedules in

this case, Elliott's objections and proposed alterations are focused on critical issues that would impair its right to a full and fair opportunity for discovery with respect to the Berkshire Plan and the Berkshire Merger Agreement. Unlike prior confirmation hearings, as a result of various resolutions of claims of other creditors, the likely number of litigants with respect to the Berkshire Plan will be limited. Thus, Elliott, as the obvious target of the proposed discovery limitations and protocols, requests that the Court grant Elliott's request for four modifications to the discovery provisions of the Proposed Scheduling Order without prejudice to Elliott's right to request additional time should the hearing on confirmation of the Berkshire Plan be adjourned.[1]

### A.  The July 27 Deadline for Written Discovery Requests Should Be Extended for One Week

8.  The Debtors have requested that all written discovery be served by July 27. Proposed Scheduling Order ¶ 10(a). This is only *one day* after the hearing date for the Debtors' Plan Scheduling Motion (July 26), and more than two weeks before the Debtors' requested August 11 hearing on the disclosure statement. This is a transparent attempt to limit Elliott's right to meaningful discovery into the Berkshire Plan and on other confirmation issues.

9.  The Debtors, on the other hand, reserve for themselves 41 days after receiving the requests to produce documents. Proposed Scheduling Order ¶ 10(c) (providing September 6 as the production deadline). This is particularly unfair because the schedule only provides receiving parties 12 days to review produced documents

---

[1] Elliott has conferred with the Debtors regarding its proposed modifications. The Debtors refused to agree to any changes to the Proposed Scheduling Order, other than Elliott's request that all parties be required to disclose the name of each intended expert and the subject matter(s) of each expert's contemplated expert testimony by September 12, 2017. This addition to the Proposed Scheduling Order will provide notice of experts and issues two weeks in advance of the exchange of initial expert reports, and provide parties the ability to submit expert reports on issues identified by other parties.

before the start of depositions.  Proposed Scheduling Order ¶ 10(e) (providing September 18 as the start of fact depositions).

10. This schedule is particularly problematic for Elliott.  Given the Debtors' abrupt shift from negotiating with Elliott to the Berkshire deal, Elliott has had to retain financial advisers and experts, and these advisers and experts will need time to not only pursue financing but also provide input into Elliott's discovery requests.  Elliott thus requests that it be afforded an additional week (until August 3) to prepare its document requests and to enable input from the advisers and experts it retains.  This would still provide the Debtors with 34 days to produce documents, which is more than sufficient.

### B. Rolling Productions of Documents Should Be Required

11. As noted above, there is a very short time period of 12 days to review documents between the completion of productions and the start of depositions.  As currently drafted, the Proposed Scheduling Order would permit a "document dump" less than two weeks before depositions, which is plainly insufficient time to review a large volume of documents and prepare for depositions.  Although the Debtors have indicated their intent to provide rolling productions, the scheduling order should expressly require that all producing parties make rolling productions, with at least two prior rounds of production before the September 6 production deadline.

### C. Limitations on Subjects of Prior Discovery

12. The Debtors request that participating parties, including Elliott, be prohibited from even *serving* discovery that was previously sought and produced:

> **Overlap with Prior Discovery.**  Participating Parties shall not serve discovery seeking the same documents from the same time period already produced by that Participating Party in response to other requests in these chapter 11 cases, including prior plan confirmation proceedings, nor shall the

{BAY:03088520v1}

5

> Participating Parties seek discovery on any topic that was resolved and settled in connection with the Settlement Order [D.I. 7243]

Proposed Scheduling Order ¶ 20.  That makes no sense and is completely unworkable.

13.  Elliott is already under an extremely tight timeframe to request relevant documents, and the Debtors now want to impose on Elliott the additional obligation—before even serving document requests—to somehow locate all prior document requests that any party has ever served on the Debtors in the more than three years of these cases, independently determine whether productions of such documents were actually made (and not withdrawn or otherwise limited by negotiation), and then locate the relevant documents among the 6 million pages of documents the Debtors have produced in a repository.

14.  There simply is no basis for the Debtors to limit Elliott's service of document requests in this manner.  Elliott—and all other creditors—should be permitted to serve discovery requests on all relevant matters, as permitted by the discovery rules.  The Debtors—who are in the best position to determine what documents have already been requested and produced—can then either produce the documents, or represent that a complete production of information relevant to particular requests has already been made in the data room and point Elliott to them.

### D. Interrogatories and Requests for Admission Should Not Be Precluded

15.  Lastly, the Debtors seek to prohibit Elliott from serving all interrogatories and requests for admission, except as to the identity of witnesses and authenticity of documents.  Proposed Scheduling Order ¶¶ 17-18.  The Debtors essentially want Elliott to hunt and peck through their prior document productions for relevant information.

16. Precluding interrogatories and requests for admission will prolong and complicate discovery, including depositions. Elliott will be forced to sort through over 1 million documents (totaling 6 million pages) to get answers to basic questions related to discovery, and will need time to do so before any depositions can take place.

17. The burden associated with answering written discovery like interrogatories and requests for admission (particularly when Elliott is likely the principal objecting party) is also comparatively minimal. Of course, if Debtors contend that any interrogatories or requests for admission are too burdensome, the parties will have the obligation to meet and confer and, if necessary, there are mechanisms for efficiently resolving those issues with the Court. Accordingly, the Proposed Scheduling Order should be modified to permit parties to serve 20 interrogatories and 20 requests for admission.

## CONCLUSION

WHEREFORE, Elliott respectfully requests that the Court (i) schedule a hearing on the disclosure statement for the Berkshire Plan on the same date of the hearing on the Berkshire Merger Agreement or as soon thereafter as the Court determines appropriate, and (ii) modify the interim discovery deadlines and procedures set forth in the Proposed Scheduling Order as set forth above.

*[signature page follows]*

| | |
|---|---|
| Dated:  July 19, 2017<br>       Wilmington, Delaware | BAYARD, P.A.<br><br>*/s/ Evan T. Miller*<br>Scott D. Cousins (No. 3079)<br>Erin R. Fay (No. 5268)<br>Evan T. Miller (No. 5364)<br>222 Delaware Avenue, Suite 900<br>Wilmington, Delaware  19801<br>Phone: (302) 655-5000<br>Facsimile: (302) 658-6395<br>Email: scousins@bayardlaw.com<br>       efay@bayardlaw.com<br>       emiller@bayardlaw.com<br><br>-and- |
| ROPES & GRAY LLP<br>Andrew G. Devore<br>Prudential Tower<br>800 Boylston Street<br>Boston, MA  02199-3600<br>Telephone: (617) 951-7000<br>Facsimile: (617) 951-7050<br>Email: Andrew.Devore@ropesgray.com | ROPES & GRAY LLP<br>Keith H. Wofford<br>Gregg M. Galardi<br>1211 Avenue of the Americas<br>New York, NY 10036-8704<br>Telephone: (212) 596-9000<br>Facsimile: (212) 596-9090<br>Email: Keith.Wofford@ropesgray.com<br>       Gregg.Galardi@ropesgray.com<br><br>*Counsel to the Elliott Funds* |