# EXHIBIT A

*K&E Draft 6-23-17*
*Confidential; Subject to FRE 408*

**-- EFH / EFIH --**
**Material Terms Regarding Backup EFH-EFIH Restructuring**

**This Term Sheet is for discussion purposes only, and is disseminated as a settlement communication under FRE 408. This Term Sheet is confidential and subject to all applicable confidentiality agreements. The Plan Sponsor, the boards, including the disinterested directors and managers of EFH and EFIH in consultation with the Debtors' respective conflicts matter advisors, are still evaluating the terms and conditions contained in this Term Sheet. The Plan Sponsor, Debtors' Chief Restructuring Officer and advisors are distributing this Term Sheet as a compromise framework proposal.**

**The disinterested directors and managers of EFH and EFIH, in consultation with the Debtors' respective conflicts matter advisors, will represent their respective Debtors in any negotiations regarding actual conflicts matters. This Term Sheet is subject in its entirety to, and the Debtors have not sought, approval of the boards and, with respect to actual conflicts matters, the disinterested directors and managers of the Debtors. The disinterested directors and managers have not approved the terms, conditions, substantive content, or substantive treatment of claims set forth in this Term Sheet. Moreover, none of the Debtors' stakeholders has approved of the terms and conditions contained in this Term Sheet.**

**THIS TERM SHEET IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY OR DEEMED BINDING ON ANY OF THE PARTIES HERETO. [1]**

| Term | Description |
|---|---|
| **Summary of Transaction** | The Debtors, Elliott Capital Management Corp. (the "Plan Sponsor"), and the parties hereto (collectively, the "Parties") will negotiate, in good faith, the terms of: (a) a Backup Plan; (b) the New EFIH 2L DIP Facility; (c) the New EFIH 1.5L DIP Facility; (d) the Exit Facilities; (d) any Additional Exit Facilities (if any); (e) the Committed Financing Documents; (f) the Exchange Offers (each as described herein); and (g) any other documents reasonably required to consummate the transactions contemplated herein (such transactions, collectively, the "Restructuring Transactions"). |
| | **Backup Plan**. The Backup Plan will incorporate the treatment of Allowed EFH and EFIH Claims[2] as described herein and use the sources |

---

[1]  The terms set forth herein are subject to K&E/R&G tax review. Capitalized terms used but not defined herein shall have the meaning set forth in the *Order Confirming the Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al., *Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors* [D.I. 10859]. Such terms may be revised pursuant to the Backup Plan.

[2]  Allowed EFIH First Lien Note Claims (excluding any other fees and expenses, if any, incurred (a) between the date on which the Debtors exercise the delayed draw term loan feature contemplated by the Existing DIP Credit Agreement and the effective date of a chapter 11 plan of reorganization as to the EFIH Debtors and (b) after such effective date) will be immediately satisfied in Cash in accordance with the terms of the Makewhole

| Term | Description |
|------|-------------|
| | and uses of funding on terms materially consistent with those described herein.  To the extent (a) the New EFIH 2L DIP Facility and the New EFIH 1.5L DIP Facility and (b) any other facility that is contemplated to be available on and after the EFH Effective Date are not approved by the Bankruptcy Court prior to confirmation of the Backup Plan (the "Exit Facilities"), the Backup Plan shall contain the material terms of those Exit Facilities (and which shall be approved pursuant to the order confirming the Backup Plan).[3]<br><br>**The New EFIH 1.5L DIP Facility**.  The New EFIH 1.5L DIP Facility shall consist of the new one and one-half lien DIP facility and with such other material terms and conditions as reflected on **Exhibit 2** hereto.<br><br>**The New EFIH 2L DIP Facility.**  The New EFIH 2L DIP Facility shall consist of the new second lien DIP Facility and with such other material terms and conditions as reflected on **Exhibit 3** hereto.<br><br>**The Exit Facilities**.  The EFIH Debtors expect there will be $4.0 billion of exit debt at EFIH.   The EFIH Debtors will use commercially reasonable efforts to obtain such debt on the best available terms in the market.<br><br>**The Additional Exit Facilities**.  The "Additional Exit Facilities" shall consist of any exit financing facilities necessary to confirm a Chapter 11 plan of reorganization other than the Exit Facilities.<br><br>**Committed Financing**.  The New EFIH 1.5L DIP Facility and the New EFIH 2L DIP Facility contemplate funding provided by (a) the Parties hereto (excluding the Debtors) and/or their financing sources, who have entered into committed financing agreements; (b) third-party financing sources that have agreed to provide committed financing in connection with the New EFIH 1.5L DIP Facility and/or New EFIH 2L DIP Facility; and/or (c) Participating EFIH Unsecured Creditors (as defined below) as part of the Exchange Offers and the Bankruptcy Court order approving the Exchange Offers.<br><br>The Debtors shall execute any definitive documentation related to the transactions contemplated pursuant to committed financing documents (in form and substance acceptable to the Debtors) (the "Committed |

Settlement Order (as defined below), following the exercise by the Debtors of the delayed draw term loan feature contemplated by the Existing DIP Amendment.

[3]     As used herein, "EFH Effective Date" means the effective date of the Backup Plan and "Effective Date" means the EFH Effective Date or the effective date as to the TCEH Debtors and EFH Shared Services Debtors, as applicable.

| Term | Description |
|---|---|
|  | <u>Financing Documents</u>") provided that such documents provide [reasonable certainty][4] that: <br><br> • The New EFIH 1.5L DIP Facility, once closed and funded, will be used to satisfy [at least $[1.5] billion and up to $[2] billion] of the facility provided for in the Existing DIP Amendment, with the final figure to be adjusted based on interest accrual as of the actual repayment date.[5] <br><br> • the New EFIH 2L DIP Facility, once closed and funded, is in an amount sufficient to satisfy, in Cash (x) all Allowed EFIH Second Lien Note Claims held by non-Rolling EFIH Second Lien Noteholders, in accordance with the Makewhole Settlement Order, after accounting for the application of cash from the EFIH Consideration Pool (excluding any such amounts escrowed for purposes of satisfying administrative claims at EFIH) (*provided* that any remaining EFIH cash amounts retained by EFIH will not be used to satisfy Allowed Claims against the EFH Debtors and will revert to Reorganized EFIH on the Effective Date) and (y) the amount outstanding under the Existing DIP that remains unpaid, after accounting for the Exit Facility and the proceeds from the New EFIH 1.5L DIP Facility; <br><br> • For the avoidance of doubt, after accounting for (a) the proceeds of the New EFIH 1.5L DIP Facility; (b) proceeds from the New EFIH 2L DIP Facility not applied to satisfy, in Cash, Allowed EFIH Second Lien Note Claims (held by non-Rolling EFIH Second Lien Noteholders and in accordance with the Makewhole Settlement Order); and (c) the Exit Facility, there shall be no outstanding amounts on account of the Existing DIP (after accounting for the Existing DIP Amendment). <br><br> • The Parties will also negotiate in good faith the need for, and the terms and conditions of, committed financing with respect to any Additional Exit Facilities. <br><br> **The Exchange Offers**.  The New EFIH 2L DIP Facility contemplates "rolling" (a) the EFIH Second Lien Note Claims held by the Rolling EFIH Second Lien Noteholders; (b) the EFH LBO Note Guaranty Claims held by Participating EFIH Unsecured Creditors, and (c) the EFIH Unsecured Note Claims held by the applicable Participating EFIH |

---

[4]    <u>TBD</u>:  The applicable standard used here is subject to K&E/EFH's review of the Committed Financing Documents.

[5] All figures included herein assume an execution date of June 30, 2017 and will need to be adjusted as such date is modified.  The definitive documentation reflecting the terms contemplated herein shall contain appropriate adjustments for all figures to reflect modifications to the EFH Effective Date.

63573813_5

| Term | Description |
|------|-------------|
| | Unsecured Creditors into the New EFIH 2L DIP Facility by means of substantially contemporaneous exchange offers ((a) and (b) collectively the "EFIH Unsecured Roll" and (a)-(c) collectively, the "Exchange Offers"). Pursuant to the Exchange Offers, the amounts set forth in (b) and (c) will be rolled into the Last-Out Tranche of the New EFIH 2L DIP Facility, in an amount not to exceed $814 million of the amount of such Claims (the "Last-Out Tranche Availability"). <br><br> The Parties will negotiate, in good faith, the terms of the Restructuring Transactions and any other documents reasonably required to consummate the transactions contemplated herein. |
| **The Exchange Offers** | In the Exchange Offers: <br><br> • **Holders of EFIH Second Lien Note Claims**. Each Holder of an EFIH Second Lien Note Claims will be eligible to elect to convert each dollar in face amount of such Claims into one dollar of principal obligation under the New EFIH 2L DIP Facility. [6] <br><br> • **EFIH Unsecured Roll**. <br><br>    • Subject to satisfaction of the Conversion Conditions (defined below), each Holder of EFH LBO Note Guaranty Claims and/or EFIH Unsecured Note Claims will be eligible to elect to convert up to 66.7% in face amount of such Claims that it holds into the Last-Out Tranche of the New EFIH 2L DIP Facility, at a conversion rate of one dollar in face amount of EFH LBO Note Guaranty Claims or EFIH Unsecured Note Claims to 0.75 cents of principal obligation under the Last-Out Tranche of the New EFIH 2L DIP Facility (each, a "Participating EFIH Unsecured Creditor") <br><br>    • **Conversion Conditions**. In order to be a Participating EFIH Unsecured Creditor, a Holder of an EFH LBO Note Guaranty Claim and/or EFIH Unsecured Note Claim must contemporaneously (a) satisfy Option 1, Option 2, or Option 3 below (collectively, the "Election Options"), in any combination elected by such Holder and (b) with respect to such Holder's EFH LBO Note Guaranty Claims and/or EFIH Unsecured Note Claims existing after the closing and funding of the New EFIH 2L DIP Facility, such Holder signs a plan support agreement in form and substance acceptable to the Plan Sponsor and the EFIH Debtors pursuant to which such Holder agrees to vote to accept the Backup Plan, subject to receipt of a Bankruptcy-Court approved disclosure statement: |

---

[6]    *See* "Equity Issuances" portion of the Term Sheet for additional detail on the treatment of New EFIH 2L DIP Facility Claims.

| Term | Description |
|------|-------------|
| | • **[The Election Options**. <br><br>      • **Option 1**. Participate in the New EFIH 1.5L DIP Facility. <br><br>      • **Option 2**. Provide committed financing for the New EFIH 2L DIP Facility. <br><br>      • **Option 3**. Participate in the New EFIH 2L DIP Facility as a Rolling EFIH Second Lien Noteholder (such funding into the New EFIH 1.5L DIP Facility and tendering and/or funding into the New EFIH 2L DIP Facility, as applicable, the "<u>Unsecured Creditor New Money Participation</u>");] <br><br> • **The Unsecured Creditor New Money Participation**. The amount of a Holder's Unsecured Creditor New Money Participation shall be calculated as the sum of (a) the face amount of such Holder's EFIH Second Lien Note Claims rolled into the New 2L EFIH DIP Facility (i.e., Option 3); (b) the face amount committed for new funding for the New EFIH 2L DIP Facility (i.e., Option 2); and (c) the face amount committed for new funding of the New EFIH 1.5L DIP Facility (i.e., Option 1). The Unsecured Creditor Money Participation of any Holder electing to be a Participating EFIH Unsecured Creditor must collectively equal at least the face amount of EFH LBO Note Guaranty Claims and EFIH Unsecured Note Claims held by such Holder and participating in the EFIH Unsecured Roll into the Last-Out Tranche of the New EFIH 2L DIP Facility <br><br> • **Allocation of Last-Out Tranche Availability**. If a Holder of EFH LBO Note Guaranty Claims and/or EFIH Unsecured Note Claims does not elect to participate in this exchange, the amount of availability of the Last-Out Tranche corresponding to such Holder's *pro rata* share of aggregate EFH LBO Note Guaranty Claims and EFIH Unsecured Note Claims shall be allocated to Participating EFIH Unsecured Creditors by increasing each Participating EFIH Unsecured Creditors' eligibility to convert EFH LBO Note Guaranty Claims and/or EFIH Unsecured Note Claims on a *pro rata* basis up to the amount of the Last-Out Tranche Availability. <br><br> The Parties will negotiate in good faith the materials necessary to implement the Exchange Offers, obtain Bankruptcy Court approval of the materials with respect to each of the Exchange Offers, and the Debtors will comply with all applicable corporate and securities laws regarding the terms of such Exchange Offers. |

63573813_5

| Term | Description |
|------|-------------|
| **[Timeline]** | The Parties further agree that adherence to the schedule set forth below is conditioned on the Parties' good-faith and arms'-length negotiation of the terms described herein.  The Parties will negotiate in good faith any deviations from the timeline set forth below.<br><br>• The Debtors will use commercially reasonable efforts to obtain Bankruptcy Court approval of the Existing DIP Amendment (as defined below) that will amend the Existing DIP (as defined below) on terms reasonably acceptable to the Plan Sponsor on or before **June 30, 2017.**<br><br>• The Debtors have advised Elliott that they will use commercially reasonable efforts to terminate the NextEra Merger Agreement within [five business days] of the the execution of the Elliott Plan Sponsor Agreement, as defined herein (and in any event prior to filing the Termination Fee Challenge, as defined below), expressly reserving all rights with respect to any obligation to make any payment with respect to the Termination Fee as defined therein.  The Debtors have advised Elliott that they will terminate the NextEra-Fidelity Plan Support Agreement substantially contemporaneously with the termination of the NextEra Merger Agreement.<br><br>• The Debtors will use commercially reasonable efforts to finalize and file the following with the Bankruptcy Court by **[July 15], 2017**:<br><br>  • The Elliott Plan Sponsor Agreement (as defined below); and<br><br>  • Notice of the Elliott Plan Sponsor Agreement.<br><br>• The Debtors will use commercially reasonable efforts to file the following pleadings with the Bankruptcy Court by **[August 1], 2017**:<br><br>  • The Backup Plan, related disclosure statement, and a motion seeking approval of a new schedule with respect to disclosure statement proceedings and Backup Plan confirmation proceedings;<br><br>  • Any pleadings necessary to complete the Exchange Offers; and<br><br>  • Any pleadings necessary to obtain approval of the New EFIH 1.5L DIP Facility and the New EFIH 2L DIP Facility.<br><br>• The Parties will use commercially reasonable efforts to close and fund the New EFIH 1.5L DIP Facility and New EFIH 2L DIP Facility as it relates to the Backup Plan by **[September 15], 2017** (the "Transaction Date").  For the avoidance of doubt, the New EFIH 1.5L DIP Facility Claims and New EFIH 2L DIP Facility Claims shall receive the treatment set forth in the Backup Plan (as described |

63573813_5

| Term | Description |
|---|---|
| | herein). |
| | • The Parties shall use commercially reasonable efforts to enter into a side letter with Oncor regarding Oncor's cooperation in connection with the PUCT approval process, and such side letter shall contemplate filing the change-of-control application (and any related documents) by **[____], 2017**. |
| | • The Debtors shall use commercially reasonable efforts to file such applications and pleadings as are necessary to obtain regulatory approvals of the transactions contemplated herein (other than from the IRS and the PUCT) by **[August 15], 2017**. |
| | • The Debtors shall seek to have a Disclosure Statement hearing with respect to the Backup Plan scheduled for no later than **[October 1], 2017**; *provided, however,* that the Debtors will not be obligated to commence a hearing with respect to the disclosure statement on the Backup Plan until such time as the New EFIH 1.5L DIP Facility and New EFIH 2L DIP Facility have been closed and funded. |
| | • The Debtors and the Plan Sponsor will cooperate with Oncor and facilitate its efforts to obtain PUCT and any other regulatory approvals prior to the commencement of any hearing on confirmation of the Backup Plan. |
| | • The Debtors will use commercially reasonable efforts to commence confirmation proceedings on the Backup Plan (as may be modified, amended, or supplemented from time to time with the consent of the other Parties) no later that **[December 1], 2017** and have an oral ruling confirming the Backup Plan by no later than **December 20, 2017**. |
| | • The Debtors will seek Bankruptcy Court approval of the Exit Facilities (if any) contemporaneously with confirmation of the Backup Plan. |
| **Existing DIP Amendment** | The Existing DIP Amendment consists of the following amendments to the existing DIP Facility (approved by the Bankruptcy Court on a final basis in July 2014 and as amended in September 2016, the "Existing DIP"), which amendments are subject to Bankruptcy Court approval and must be reasonably acceptable to Plan Sponsor: |
| | • refinancing of the Existing DIP with the proceeds from that certain DIP term loan facility (the "DIP Term Loan Facility"); |
| | • the DIP Term Loan Facility shall (i) authorize the incurrence of uncommitted incremental indebtedness up to $825 million; (ii) include a June 30, 2018 maturity date, which can be extended to |

7

| Term | Description |
|------|-------------|
| | December 30, 2018 (subject to certain conditions); and (iii) include a $100 million EFIH liquidity covenant; |
| | • the ability to repay the Allowed EFIH First Lien Claims pursuant to the Makewhole Settlement Order (as defined below) (provided, that, certain of the EFIH First Lien Trustee's fees and expenses allowed pursuant to the Makewhole Settlement Order will not be paid on the closing of the Existing DIP); and |
| | • EFIH shall be permitted to incur the indebtedness and obligations contemplated by the New EFIH 1.5L DIP Facility and the New EFIH 2L DIP Facility. |
| **Termination Fee** | **Allocation:** The disinterested directors and their advisors shall use commercially reasonable efforts to reach agreement on the allocation of the termination fee under the NextEra Merger Agreement, if any (the "Termination Fee"), as between EFH and EFIH by the date on which the Elliott Plan Sponsor Agreement is executed, and will provide such agreement to the Plan Sponsor contemporaneously therewith. |
| | **Challenge:** [The Debtors will make commercially reasonable efforts to file a [declaratory judgment action] in the Bankruptcy Court regarding the allowance of the Termination Fee under the terms of the NextEra Merger Agreement (the "Termination Fee Challenge") no later than the date on which the Backup Plan is filed] |
| | • To the extent that the Plan Sponsor moves to intervene in, and otherwise participate in the Termination Fee Challenge, at their own cost and expense and with their own counsel (such pleading, the "Intervening Pleading"), the Debtors shall not oppose the Plan Sponsor's motion, or knowingly take any action with the intent of preventing, restricting or hindering the Plan Sponsor from intervening and participating in the Termination Fee Challenge, and shall support the Plan Sponsor's right to intervene in the Termination Fee Challenge for any and all purposes related to the Termination Fee Challenge (including related counterclaims) with full rights of participation. |
| | • To the extent that, after the filing of the Termination Fee Challenge, the Parties have not otherwise settled with NextEra regarding the allowance of the Termination Fee, the Debtors shall prosecute the Termination Fee Challenge diligently until entry of an order by the Bankruptcy Court resolving the Termination Fee Challenge in its entirety (such order, regardless of the disposition set forth in such order, the "Termination Fee Challenge Order"), and, if necessary, pursue any appeals from an adverse Termination Fee Challenge Order, if any; *provided*, *that*, in the absence of a stay, entry of an adverse Termination Fee Challenge Order by the Bankruptcy Court |

| Term | Description |
|---|---|
| | shall not in any way prevent the EFIH Debtors from consummating the Backup Plan or any other plan of reorganization as to the Debtors; *provided*, *further*, *that* the Plan Sponsor shall not seek a stay of an adverse Termination Fee Challenge Order . <br><br> • The Debtors and the Plan Sponsor shall (and shall cause their respective attorneys and advisors to) cooperate with each other and use commercially reasonable efforts to take all actions, and or cause to be done, all things reasonably necessary or advisable to obtain a ruling from the Bankruptcy Court that the Termination Fee is not allowed, including preparing and filing all documentation reasonably required in connection therewith. <br><br> • Specifically, the Debtors and Plan Sponsor will enter into a Joint Defense and Prosecution Cooperation Agreement.  Each of the Debtors and the Plan Sponsor will bear their own costs with respect to the prosecution of the Termination Fee Challenge and any appeals. |
| **PUCT Rulings** | The Parties will negotiate in good faith the commitments that Reorganized EFH will accept as part of the change of control application to be filed with the PUCT, which terms shall include the Oncor ring-fencing remaining in place "as-is" (such commitments, as set forth in **Exhibit 5** hereto, the "<u>PUCT Commitments</u>").[7] <br><br> The Parties will use commercially reasonable efforts to obtain PUCT approval of the change of control application for the transactions contemplated by the Backup Plan by [____], **2017**.[8] |
| **The New EFIH 1.5L DIP Facility** | *See* **Exhibit 2** hereto. |
| **The New EFIH 2L DIP Facility** | *See* **Exhibit 3** hereto. |
| **Cash Projections** | The Debtors will agree to provide updated EFH and EFIH cash projections no less frequently than [every four weeks], starting from the date of execution of the Elliott Plan Sponsor Agreement and through the earlier of the Debtors' exercise of their Fiduciary Out and the EFH Effective Date, *provided*, *that*, such cash projections shall not, at any time, constitute a 'cap' on cash recoveries to any Holders of Allowed Claims. <br><br> The Debtors will consult in good faith with the Plan Sponsor with respect to the EFH and EFIH cash projections that will govern Backup Plan distributions and the funding of the EFH Professional Fee Escrow Account and EFIH Professional Fee Escrow Account. |

---

[7]     [NTD: Subject to further discussion].

[8]     [NTD: This date needs to be at least 180 days from the filing of the application]

63573813_5

| Term | Description |
|---|---|
| **Committed Financing** | Each of the funding sources for the New EFIH 1.5L DIP Facility and the New EFIH 2L DIP Facility shall either be a financially viable party or provide a guaranty from a financially viable party of the obligations contemplated by the definitive documentation governing its commitments as they relate to the New EFIH 1.5L DIP Facility and New EFIH 2L DIP Facility, in an amount sufficient to satisfy respective sources and uses set forth on **Exhibit 4** hereto and in the Backup Plan. |
| <div align="center">**BACKUP PLAN**</div> | |
| **Equity Issuances**[9] | **Reorganized EFH Common Stock**.  Pursuant to the Backup Plan, on the EFH Effective Date (a) the New EFIH 2L DIP Facility Claims will be exchanged for 100% of Reorganized EFH Common Stock, on a pro rata basis (the "<u>EFIH 2L Common Stock Pool</u>") and (b) the Allowed Claims in Class B5 and Class B6 receive, on a *pro rata* basis, the warrants described in **Exhibit 6** hereto (the "<u>Reorganized EFH Warrants</u>")**.**  The Reorganized EFH Common Stock Issuance is subject to dilution by the Reorganized EFH Preferred Stock (to the extent the Reorganized EFH Preferred Stock converts to Reorganized EFH Common Stock) and the Reorganized EFH Warrants (to the extent the Reorganized EFH Warrants are exercised).<br><br>The Reorganized EFH Common Stock will be listed and registered on the NYSE on the EFH Effective Date.  EFH shall use commercially reasonable efforts to file the Form S-1 with the SEC 90-120 days prior to the EFH Effective Date (and the other Parties shall reasonably cooperate with EFH, to the extent required, in connection with such filing). The Form S-1 shall include the registration of Plan Sponsor's resales of Reorganized EFH Common Stock.<br><br>There shall be a ruling in the Bankruptcy Court order approving the New New EFIH 2L DIP Facility that the New EFIH 2L DIP Claims can receive a recovery under a plan of reorganization (other than the Backup Plan) in the form of Reorganized EFH common stock at a value to be determined by the Bankruptcy Court in connection with proceedings to confirm such a plan.<br><br> **Reorganized EFH Preferred Stock**.  Pursuant to the Backup Plan, the New EFIH 1.5L DIP Facility will be exchanged for Reorganized EFH Preferred Stock, with substantially the terms and conditions set forth in **Exhibit 2** hereto, on the EFH Effective Date on a pro rata basis.<br><br>The Reorganized EFH Preferred Stock will be listed and registered on the NYSE on the EFH Effective Date.  EFH shall use commercially reasonable efforts to file the Form S-1 with the SEC such that it will be effective 90-120 days prior to the EFH Effective Date (and the other |

---

[9]     [Subject to further review by KE securities team]

| Term | Description |
|------|-------------|
| | Parties shall reasonably cooperate with EFH, to the extent required, in connection with such filing). The Form S-1 shall include the registration of Plan Sponsor's resales of Reorganized EFH Preferred Stock.<br><br>There shall be a ruling in the Bankruptcy Court order approving the New EFIH 1.5L DIP Facility that the New EFIH 1.5L DIP Claims can receive a recovery under a plan of reorganization (other than the Backup Plan) in the form of Reorganized EFH preferred stock at a value to be determined by the Bankruptcy Court in connection with proceedings to confirm such a plan.<br><br>**Reorganized EFH Warrants**.  Pursuant to the Backup Plan, the holders of Allowed Claims in Class B5 and B6 will receive their *pro rata* share of the Reorganized EFH Warrants. |
| **EFH Claims** | • EFH creditors will receive Cash on hand at EFH as of the EFH Effective Date (or, to the extent necessary to satisfy continuity of interest considerations (to the extent applicable), the value of Cash on hand at EFH as of the EFH Effective Date).<br><br>• The Backup Plan shall reinstate asbestos claims against the appropriate Debtors and any related intercompany claims.<br><br>• The Backup Plan shall preserve the EFH Committee Settlement.<br><br>• The Allocation Settlement, upon Bankruptcy Court approval (whether pursuant to the Backup Plan or a separate 9019 settlement) shall establish EFH's allocation of the payment, if any, on the Termination Fee, which allocated amount shall be paid from the EFH Cash Consideration Pool prior to distributions to EFH unsecured creditors.<br><br>• Any cash remaining at EFH, if any, after distributions to EFH creditors and payment of EFH's allocation of the Termination Fee pursuant to the Bankruptcy Court-approved Allocation Settlement shall revert to Reorganized EFH. |
| **EFIH Claims** | • EFIH creditors will receive distributions of Reorganized EFH Common Stock, Reorganized EFH Preferred Stock, and Reorganized EFH Warrants on the EFH Effective Date.<br><br>• Any cash remaining at EFIH, if any, after distributions to EFIH creditors and payment of EFIH's allocation of the Termination Fee pursuant to the Bankruptcy Court-approved Allocation Settlement, shall revert to Reorganized EFIH. |
| **The Elliott Plan Sponsor** | The Parties will negotiate in good faith the terms of a plan support |

11

| Term | Description |
|---|---|
| **Agreement** | agreement that will govern, among other things, the Parties' respective obligations regarding the approval of, funding of, and closing of the New EFIH 1.5L DIP Facility and New EFIH 2L DIP Facility, the Backup Plan voting obligations of the Plan Sponsor, as applicable, and the PUCT Commitments (the "Elliott Plan Sponsor Agreement"). The Elliott Plan Support Agreement shall further provide that if the Backup Plan is not consummated, and subject to the receipt of a disclosure statement that satisfies section 1125 of the Bankruptcy Code, the Plan Sponsor shall not object to an alternative plan of reorganization on the basis that it provides New EFIH 1.5L DIP Claims and New EFIH 2L DIP Claims with a recovery in the form of Reorganized EFH preferred stock or Reorganized EFH common stock, as applicable, at a value to be determined by the Bankruptcy Court in connection with proceedings to confirm such a plan. |
| **Plan Sponsor Expense Reimbursement** | [On the EFH Effective Date, the EFH Debtor and the EFIH Debtor shall reimburse the Plan Sponsor for reasonable and documented professional fees and expenses from their respective cash consideration pools in connection with the New EFIH 1.5L DIP Facility and the New EFIH 2L DIP Facility and formulation and support of the Backup Plan, in an aggregate amount not more than $[20] million, with [50]% of such reimbursement paid by each of EFH and EFIH.  This amount does not include fees and expenses incurred by the Plan Sponsor with respect to the Termination Fee Challenge Action and any appeals therefrom, in accordance with the terms set forth above regarding the Termination Fee Challenge Action.][10] |
| **The EFIH Unsecured Creditor Plan Support Agreement** | Any obligations of the Plan Sponsor under the EFIH Unsecured Creditor Plan Support Agreement dated as of January 2, 2017 as may have been amended or modified (the "EFIH Unsecured Creditor Plan Support Agreement"), shall be terminated as to the Plan Sponsor, to the extent it was ever applicable, on  the Transaction Date |
| **Conditions Precedent to Confirmation[11]** | The conditions precedent to confirmation of the Backup Plan shall include the following:<br><br>• the Bankruptcy Court shall have entered the order approving the disclosure statement related to the Backup Plan and the order confirming the Backup Plan in a manner consistent in all material respects with the Backup Plan and the Settlement Order in form and substance reasonably satisfactory to the EFH Debtors, the EFIH |

---

[10]      [NTD: Consider obtaining fees through New EFIH 1.5L DIP Facility and New EFIH 2L DIP Facility].

[11]    Conditions to debt funding in Commitment

| Term | Description |
|------|-------------|
| | Debtors, and the Plan Sponsor; |
| | • the Settlement Order shall remain in full force and effect; |
| | • the *Order Approving the EFIH Settlement by and among the Debtors, Certain Holders of EFIH First Lien Note Claims, Certain Holders of EFIH Second Lien Note Claims, and Certain Holders of EFIH Unsecured Note Claims* [Docket No. 11048] (the "Makewhole Settlement Order") shall remain in full force and effect; |
| | • the Bankruptcy Court shall have entered the Termination Fee Challenge Order; |
| | • the New EFIH 1.5L DIP Facility and New EFIH 2L DIP Facility shall have been funded and closed; |
| | The Confirmation Order shall, among other things: |
| | • authorize the EFH Debtors, the Reorganized EFH Debtors, the EFIH Debtors, and the Reorganized EFIH Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, including the Restructuring Transactions and the transaction agreements; |
| | • decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent; |
| | • authorize the EFH Debtors, the Reorganized EFH Debtors, the EFIH Debtors, and the Reorganized EFIH Debtors, as applicable/necessary, to: (i) implement the Restructuring Transactions; (ii) issue and distribute the Reorganized EFH Preferred Stock, the Reorganized EFH Common Stock, and the Reorganized EFH Warrants pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code or other exemption from such registration or pursuant to one or more registration statements; (iii) make all distributions and issuances as required under the Plan, including Cash, the Reorganized EFH Common Stock, and the Reorganized EFH Preferred Stock; and (iv) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement (as defined below); |
| | • provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order in furtherance of, or in connection with, any transfers of property pursuant to the Plan, including any deeds, mortgages, security interest filings, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan shall not be subject to |

13

| Term | Description |
|---|---|
| | any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment;<br><br>• provide that, from and after the EFH Effective Date, the Reorganized EFH Debtors and Reorganized EFIH Debtors shall have no liabilities other than those liabilities expressly set forth in the Backup Plan; and<br><br>• approve, a settlement by and among the disinterested directors of EFH and EFIH regarding the allocation of the Termination Fee in the event that the Bankruptcy Court determines that NextEra is entitled to the payment of any or all of the Termination Fee (the "Allocation Settlement"). |
| **Plan Administrators** | Pursuant to the Backup Plan, an "EFH Plan Administrator Board" shall be a one or two member board of directors comprised of a person or persons as determined by the EFH Debtors and EFIH Debtors in their sole and absolute discretion and disclosed in the plan supplement to be filed in connection with the Backup Plan, which board shall be appointed on or after the EFH Effective Date and tasked with directing the Disbursing Agent with respect to Cash distributions made on account of Allowed Claims asserted against the EFH Debtors and EFIH Debtors and, shall not, for the avoidance of doubt, be authorized to direct the Disbursing Agent with respect to any Cash distributions made on account of Allowed Claims asserted against the TCEH Debtors or EFH Shared Services Debtors, if any. |
| **Corporate Governance** | The initial board or boards of Reorganized EFH and Reorganized EFIH shall be selected by the Plan Sponsor and other persons that will hold more than 5% of either the Reorganized EFH Preferred Stock or the EFH Reorganized Common Stock as of the EFH Effective Date, (in accordance with applicable law and NYSE regulations) and be disclosed in the Plan Supplement.   The Plan Supplement shall also include organizational documents of Reorganized EFH acceptable to the Plan Sponsor. |
| **Conditions Precedent to Consummation of the Plan** | The conditions precedent to consummation of the Backup Plan shall include the following:<br><br>• the Confirmation Order shall have been duly entered in form and substance reasonably acceptable to the EFH Debtors, EFIH Debtors, and the Plan Sponsor, and shall be consistent in all material respects |

14

| Term | Description |
|------|-------------|
|  | with the TCEH Confirmation Order; |
|  | • the Settlement Order shall remain in full force and effect; |
|  | • the Allocation Settlement shall not be subject to a stay; |
|  | • Reorganized TCEH, and EFH Corp., as applicable, shall have obtained all necessary tax opinions (including those with respect to the Fundamental Opinions), to be determined; |
|  | • the final version of the Plan, the Plan Supplement, and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Backup Plan, the transaction agreements, and the Settlement Order, and shall be in form and substance reasonably acceptable to the Plan Sponsor, EFH Debtors and EFIH Debtors; |
|  | • the EFH Professional Fee Escrow Account and EFIH Professional Fee Escrow Amount shall have been funded in accordance with the Backup Plan; |
|  | • (i) no Debtor shall have taken any action that results in an ownership change of EFH Corp. within the meaning of Section 382(g) of the Internal Revenue Code (including by treating the equity interests of EFH Corp. as becoming worthless within the meaning of Section 382(g)(4)(D) of the Internal Revenue Code); and (ii) Texas Holdings shall not have (A) taken any action that results in an ownership change of EFH Corp. within the meaning of Section 382(g) of the Internal Revenue Code (including by treating the equity interests of EFH Corp. as becoming worthless within the meaning of Section 382(g)(4)(D) of the Internal Revenue Code and thereby resulting in an ownership change of EFH Corp. within the meaning of Section 382(g) of the Internal Revenue Code); (B) knowingly permitted any person (other than Texas Holdings) to own directly, indirectly or constructively (by operation of Section 318 as modified by Section 382(l)(3)(A) of the Internal Revenue Code) 50% or more of the equity interests of EFH Corp. during the three-year period ending on the Effective Date; or (C) changed its taxable year to be other than the calendar year; |
|  | • the EFH Debtors and EFIH Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Restructuring Transactions with respect to the EFH Debtors, including from the DOJ/FTC, FERC, PUCT, the Vermont Department of Financial Regulation, and FCC, as applicable; |
|  | • all conditions to the completion of the Restructuring Transactions shall have been satisfied or shall have been waived by the party |

15

| Term | Description |
|---|---|
| | entitled to waive them, and the transactions contemplated by the transaction agreements shall be completed; |
| | • the Restructuring Transactions, shall have been consummated in form and manner reasonably acceptable to the EFH Debtors, the EFIH Debtors, and the Plan Sponsor, and consistent in all material respects with the Backup Plan and the transaction agreements; |
| | • [the requirements in the transaction agreements with respect to the Supplemental Rulings, including with respect to IRS communications related to such Supplemental Rulings, shall have been satisfied]; |
| | • [the listing and registration of Reorganized EFH Common Stock with the NYSE shall have been completed]; |
| | • [the Private Letter Ruling as with regard to the Backup Plan and the Restructuring Transactions shall remain in full force and effect and not revoked or withdrawn];[12] |
| | • [the consummation of the Restructuring Transactions shall not be in violation of the provisions of the Tax Matters Agreement.]; and |
| | • [management and operational conditions precedent (including post-closing transition services agreement, plan administration and wind down services) to be determined and negotiated in good faith]. |
| **Debtor Releases** | In addition to any release provided in the Settlement Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party[13] is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Claims and Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, the Disinterested Directors Settlement, or the Adversary Proceeding, as well as all other Claims and Causes of Action,[14] whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in--or out-of-court restructuring efforts, intercompany transactions (including |

---

12       [NTD: RG tax and KE tax to discuss].

13       NTD: The term Released Party in the Backup Plan will exclude NextEra and include the Plan Sponsor and its affiliates.

14       The "Adversary Proceeding" is *Elliott Associates, L.P. v. Energy Future Intermediate Holding Company LLC (In re Energy Future Holdings Corp.)*, Adv. Pro. No. 17-50479 (CSS) (Bankr. D. Del.).

16

| Term | Description |
|------|-------------|
| | dividends paid), transactions pursuant and/or related to the Master Separation Agreement dated December 12, 2001, the TCEH Credit Agreement, the TCEH First Lien Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), the TCEH First Lien Intercreditor Agreement, the Liability Management Program, the Tax Sharing Agreements, the 2007 Acquisition, the Management Agreement, the 2009 amendment to the TCEH Credit Agreement, the 2011 Amend and Extend Transactions, the 2005 Oncor Transfer, the 2013 Revolver Extension, the Luminant Makewhole Settlement, the Tax and Interest Makewhole Agreements, the TCEH Intercompany Notes, the Shared Services, any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or Filing of the Terminated Restructuring Support Agreement, the Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the NextEra Plan Sponsor Plan Support Agreement, the Elliott Plan Sponsor Agreement, the EFIH Settlement Agreement, the EFH/EFIH Committee Settlement, the EFIH First Lien Principal Settlement, the Original Confirmed Plan, the Eighth Confirmed Plan, the or any Restructuring Transaction,[15] contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the NextEra Plan Sponsor Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Elliott Plan Sponsor Agreement, the EFIH Settlement Agreement, the PIK Settlement and any direction taken by the EFIH Unsecured Notes Trustee in connection therewith, the Termination Fee Challenge and Intervenor Pleading, the EFH/EFIH Committee Settlement, the Terminated Restructuring Support Agreement, the Disclosure Statement(s), the Plan, the Transaction Agreements, the DIP Facilities,[16] the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities  pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. |

---

[15]   The term Restructuring Transactions will be updated to include transactions contemplated by this Term Sheet.

[16]   The term DIP Facilities will be defined to include the New EFIH 1.5L DIP Facility and the New EFIH 2L DIP Facility.

| Term | Description |
|------|-------------|
| | Notwithstanding anything to the contrary in the foregoing, and for the avoidance of doubt, the TCEH Settlement Claim shall be treated, released, and discharged on the EFH Effective Date. For the avoidance of doubt, (i) the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, and Reorganized EFH Shared Services Debtors shall provide the release set forth in this article as of the TCEH Effective Date; and (ii) the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, and Reorganized EFIH Debtors shall provide the release set forth in this article as of the EFH Effective Date; *provided* that any and all Intercompany Claims (other than the TCEH Settlement Claim) held by or held against the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties, shall be released as of the TCEH Effective Date. |
| **Third Party Releases** | Except as otherwise provided in the Plan, as of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Claims and Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, the Disinterested Directors Settlement, or the Adversary Proceeding, as well as all other Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the Master Separation Agreement dated December 12, 2001, the TCEH Credit Agreement, the TCEH First Lien Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), the TCEH First Lien Intercreditor Agreement, the Liability Management Program, the Tax Sharing Agreements, the 2007 Acquisition, the Management Agreement, the 2009 amendment to the TCEH Credit Agreement, the 2011 Amend and Extend Transactions, the 2005 Oncor Transfer, the 2013 Revolver Extension, the Luminant Makewhole Settlement, the Tax and Interest Makewhole Agreements, the TCEH Intercompany Notes, the Shared Services, any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or Filing of the Terminated Restructuring Support Agreement, the Plan Support Agreement, the NextEra Plan Sponsor Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Elliott Plan Sponsor Agreement, the EFH/EFIH Committee Settlement, the EFIH Settlement Agreement, the EFIH First Lien Principal Settlement, the Original Confirmed Plan, the Eighth |

18

| Term | Description |
|------|-------------|
| | Confirmed Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the NextEra Plan Sponsor Plan Support Agreement, the EFIH Unsecured Creditor Support Agreement, the Elliott Plan Sponsor Agreement, the EFIH Settlement Agreement, the EFH/EFIH Committee Settlement, the PIK Settlement and any direction taken by the EFIH Unsecured Notes Trustee in connection therewith, the Termination Fee Challenge and the Intervenor Pleading, the Terminated Restructuring Support Agreement, the Disclosure Statement(s), the Plan, the Transaction Agreements, the DIP Facilities, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, (ii) any post-Effective Date obligations of any party or Entity under the Plan, (iii) any Restructuring Transaction, (iv) any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or (v) claims or Causes of Action asserted by any Holder of Allowed Class C3 Claims against one or more Holders of Allowed Class C3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute. Notwithstanding anything to the contrary in the foregoing, and for the avoidance of doubt, the TCEH Settlement Claim shall be treated, released, and discharged on the EFH Effective Date.  For the avoidance of doubt, (i) the Releasing Parties shall provide the release set forth in this article for all Claims and Causes of Action that relate to the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties, as of the TCEH Effective Date; and (ii) the Releasing Parties shall provide the release set forth in this article for all Claims and Causes of Action that relate to the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, or Reorganized EFIH Debtors as of the EFH Effective |

19

| Term | Description |
|---|---|
| | Date; *provided* that any and all Intercompany Claims (other than the TCEH Settlement Claim) held by or held against the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties, shall be released as of the TCEH Effective Date. |
| **Exculpation** | Except as otherwise specifically provided in the Plan, no Exculpated Party[17] shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Terminated Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Support Agreement, the NextEra Plan Sponsor Plan Support Agreement, the Elliott Plan Sponsor Agreement, the EFIH Settlement Agreement, the EFH/EFIH Committee Settlement, the Original Confirmed Plan, the Eighth Confirmed Plan (and related transaction agreements), the Transaction Agreements, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Original Confirmed Plan, the Plan Support Agreement, the NextEra Plan Sponsor Plan Support Agreement, the Elliott Plan Sponsor Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the EFH/EFIH Committee Settlement, the Transaction Agreements, or the DIP Facilities, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of |

---

[17] NTD: The term Exculpated Party in the Backup Plan will exclude NextEra and include the Plan Sponsor and its affiliates.

| Term | Description |
|---|---|
| | acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  For the avoidance of doubt, notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any (i) claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, or (ii) claims or Causes of Action asserted by any Holder of Allowed Class C3 Claims against one or more Holders of Allowed Class C3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.  For the avoidance of doubt, (i) the Exculpated Parties that include or are related to the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, and Reorganized EFH Shared Services Debtors shall receive the exculpation set forth in this article as of the TCEH Effective Date; and (ii) the Exculpated Parties that include or are related to the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, and Reorganized EFIH Debtors shall receive the exculpation set forth in this article as of the EFH Effective Date. |
| **Assumption of Executory Contracts** | The Debtors, in consultation with and subject to the reasonable approval of the Plan Sponsor, shall determine which executory contracts or unexpired leases of the EFH Debtors or the EFIH Debtors (not previously assumed or rejected) will be assumed or rejected on the EFH Effective Date. |
| **Indemnification of Prepetition Directors, Officers, Managers, et al.** | Consistent with applicable law, all indemnification obligations in place as of the EFH Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be assumed and remain in full force and effect after the EFH Effective Date, and shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive unimpaired and unaffected, irrespective of when such obligation arose.

Reorganized EFH shall assume the Indemnification Obligations for the current and former directors, officers, managers, employees, and other professionals (the "Indemnified Parties") of the EFH Debtors or EFIH Debtors in their capacities as such against any costs or expenses (including reasonable and necessary attorneys' fees and experts' fees), and sums which an Indemnified Party becomes legally obligated to pay solely as a result of judgments, judgments, fines, losses, claims, damages, settlements or liabilities (collectively, "Costs") arising out of any claim, |

21

| Term | Description |
|---|---|
| | action, suit, proceeding or investigation, whether civil, criminal, administrative or investigative, arising out of or related to such Indemnified Parties' service as a manager, director or officer of the Debtors or other services performed by such persons at the request of the Debtors at or prior to the EFH Effective Date, whether asserted or claimed prior to, at or after the EFH Effective Date, including the transactions contemplated by this Agreement; *provided, however*, that Reorganized EFH shall not indemnify any Indemnified Party for any Costs brought about or contributed to in fact by fraudulent act by such Indemnified Party; and *provided, further*, that Reorganized EFH shall not be obligated to reimburse any Indemnified Party for any Costs unless and until such Indemnified Party has exhausted the limits of recovery from any other person obligated to indemnify and reimburse such Indemnified Party (unless EFH agreed otherwise in writing prior to the date hereof with any such other Person, in which case this proviso shall be limited with respect to such other Person to the extent of such agreement). <br><br> The EFH Debtors shall purchase comparable D&O insurance for a six-year period post-EFH Effective Date extended reporting period with terms, conditions, retentions, and limits of liability that are at least as favorable as EFH's existing policies as of the date hereof.  If the EFH Debtors, after their good faith efforts to obtain such insurance, are unable to obtain such run-off insurance policies as of the EFH Effective Date, Reorganized EFH shall continue to maintain in effect for a period of at least six years from and after the EFH Effective Date, the insurance in place immediately prior to the EFH Effective Date on terms, conditions, retentions, and limits of liability that are at least as favorable as EFH's existing policies as of the date thereof. |
| **Tax Matters** | The EFH/EFIH Restructuring Transaction will be consummated in a manner consistent with the Tax Matters Agreement, at which time Reorganized EFH shall be the party to the Tax Matters Agreement. <br><br> After the EFH Effective Date, tax payments from Oncor will be made to Reorganized EFIH and, to the extent necessary, the tax sharing agreement governing such tax payments will be amended and modified to reflect that change. <br><br> The Parties will negotiate in good faith any modifications to the material terms set forth herein to the extent necessary to comply with the Internal Revenue Code (and applicable regulations) and/or to the extent such modifications may assist in obtaining IRS approval of the transactions contemplated herein. |

| Term | Description |
|---|---|
| **Global Settlement** | The *Order Granting the Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 7243] (the "Settlement Order") shall remain in full force and effect and the Backup Plan shall be consistent and subject to the rights of the Parties under the Settlement Order. |
| **Fiduciary Duties and Fiduciary Out** | [Until the Transaction Date, any EFH Debtor and/or EFIH Debtor can terminate its support of the Backup Plan (including the Exchange Offers, the New EFIH 2L DIP Facility, the New EFIH 1.5L DIP Facility, and the Exit Facilities, if any) reflecting the terms set forth herein if its board of directors, the board of managers, or any such similar governing body determines, in its sole discretion after consultation with its independent financial advisors and outside legal counsel, and based on the advice of such counsel, that proceeding with the Backup Plan reflecting the terms set forth herein, or the transactions contemplated by such agreements would be inconsistent with its applicable fiduciary duties (the "Fiduciary Out").<br><br>Subsequent to the Transaction Date and until confirmation of the Backup Plan, the Debtors may exercise the Fiduciary Out only in the event that the Debtors intend to pursue a Superior Proposal.  [A "Superior Proposal" is " is any proposed alternative transaction that the boards of EFH and EFIH determine, after consultation with their respective independent financial advisors and outside legal counsel, taking into account all relevant financial, legal, regulatory and other aspects of such alternative transaction, would, if consummated in accordance with its terms, result in a transaction more favorable to the creditors of EFH and EFIH when compared to the recovery those creditors are projected to receive upon consummation of the Backup Plan.]  Following the confirmation of the Backup Plan, the Debtors may no longer exercise the Fiduciary Out.<br><br>Subsequent to entry into the Elliott Plan Sponsor Agreement, the Debtors shall provide the Plan Sponsor with notice of any written proposals to consummate an alternative transaction and the materials terms thereof.  In the event that the Debtors intend to exercise the Fiduciary Out, the Debtors shall provide the Plan Sponsor with three (3) days written notice prior to exercising the Fiduciary Out (a "Fiduciary Out Notice").] |

| **TREATMENT OF CLAIMS AND INTERESTS OF THE DEBTORS UNDER THE BACKUP PLAN** | | | |
|---|---|---|---|
| **Class No.** | **Type of Claim** | **Treatment** | **Impairment / Voting** |

| | | Unclassified Non-Voting Claims Against the Debtors | |
|---|---|---|---|
| N/A | EFIH First Lien DIP Claims | Payment in full in Cash or such other less favorable treatment for such Holder as may be agreed to by such Holder and the EFIH Debtors (including agreement to convert a Holder's Allowed EFIH First Lien DIP Claim into a New EFIH 1L DIP Claim). | N/A |
| N/A | New EFIH 1.5L DIP Claims | Pro Rata share of 100% of Reorganized EFH Preferred Stock | |
| N/A | New EFIH 2L DIP Claims | Pro Rata share of 100% of the EFIH 2L Common Stock Pool (subject to dilution by the Reorganized EFH Preferred Stock and any exercise of Reorganized EFH Warrants). | |
| | | Classified Claims and Interests of the EFH Debtors | |
| A1 | Other Secured Claims Against the EFH Debtors | Payment in full from the EFH Cash Consideration Pool or other treatment rendering such Allowed Claim Unimpaired. | Unimpaired; deemed to accept |
| A2 | Other Priority Claims Against the EFH Debtors | Payment in full from the EFH Cash Consideration Pool or other treatment rendering such Allowed Claim Unimpaired. | Unimpaired; deemed to accept |
| A3 | Legacy General Unsecured Claims Against the EFH Debtors | Reinstated. | Unimpaired; deemed to accept |
| A4 | EFH Legacy Note Claims | Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Cash Consideration Pool. | Impaired; entitled to vote |
| A5 | EFH Unexchanged Note Claims | (a) Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Cash Consideration Pool; and (b) solely to the extent an Allowed Class A5 Claim constitutes an EFH Beneficiary Claim, and such Allowed Class A5 Claim is not paid in full pursuant to (a), its Pro Rata share of up to $5.8 million of the TCEH Settlement Claim Turnover Distribution. | Impaired; entitled to vote |
| A6 | EFH LBO Note Primary Claims | Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Cash Consideration Pool; *provided*, *that*, in no event shall a Holder of an Allowed Claim in Class A6 receive more | Impaired; entitled to vote |

24

| | | than a single satisfaction of such Allowed Claim, including any recovery received on account of an Allowed Class B5 Claim. | |
|---|---|---|---|
| A7 | EFH Swap Claims | Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Cash Consideration Pool. | Impaired; entitled to vote |
| A8 | EFH Non-Qualified Benefit Claims | (a) Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Cash Consideration Pool and (b) solely to the extent an Allowed Class A8 Claims constitutes an EFH Beneficiary Claim, and such Allowed Class A5 Claim is not paid in full pursuant to (a), its Pro Rata share of up to $30 million of the TCEH Settlement Claim Turnover Distribution. | Impaired; entitled to vote |
| A9 | General Unsecured Claims Against EFH Corp. | (a) Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Cash Consideration Pool and (b) solely to the extent an Allowed Class A8 Claims constitutes an EFH Beneficiary Claim, and such Allowed Class A5 Claim is not paid in full pursuant to (a), its Pro Rata share of up to $2 million of the TCEH Settlement Claim Turnover Distribution. | Impaired; entitled to vote |
| A10 | General Unsecured Claims Against the EFH Debtors Other Than EFH Corp. | Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Cash Consideration Pool. | Impaired; entitled to vote |
| A11 | Tex-La Guaranty Claims | Released in connection with payment of Allowed Class C1 Claim pursuant to TCEH Confirmation Order.[18] | Unimpaired; deemed to accept |
| A12 | TCEH Settlement Claim | Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Creditor Recovery Pool, *less* any TCEH Settlement Claim Turnover Distribution. | Impaired; entitled to vote |
| A13 | EFH Debtor Intercompany Claims | Reinstated or canceled and released without distribution on account of such Claims; *provided*, that Class A13 Claims of EFH Corp., LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., LSGT SACROC, Inc. against one or more of EFH Corp., | Deemed to have accepted or rejected, |

---

[18]    [K&E to confirm release language with V&E].

| | | LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. shall be Reinstated. | respectively |
|---|---|---|---|
| A14 | Non-EFH Debtor Intercompany Claims | Canceled and released. | Impaired; deemed to reject |
| A15 | Interests in the EFH Debtors Other Than EFH Corp. | Reinstated or canceled and released without any distribution on account of such Claims, *provided* that Interests in LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc., shall be Reinstated. | Deemed to have accepted or rejected, respectively |
| A16 | Interests in EFH Corp. | Canceled and released. | Impaired; deemed to reject |
| **Classified Claims and Interests of the EFIH Debtors** | | | |
| B1 | Other Secured Claims Against the EFIH Debtors | (a) Payment in full in Cash from the EFIH Cash Consideration Pool; (b) delivery of collateral securing any such Claim and payment of any interest required under section 506(b) of such Claim; (c) Reinstatement; or (d) other treatment rendering such Claim Unimpaired. | Unimpaired; deemed to accept |
| B2 | Other Priority Claims Against the EFIH Debtors | (a) Payment in full in Cash from the EFIH Cash Consideration Pool or (b) other treatment rendering such Claim Unimpaired. | Unimpaired; deemed to accept |
| B3 | EFIH First Lien Note Claims | Payment in full in Cash of the Allowed amount of the Claim (that has not already been satisfied in full) from the EFIH Cash Consideration Pool). | Unimpaired; deemed to accept |
| B4 | EFIH Second Lien Note Claims | Payment in full in Cash of the Allowed amount of the Claim (that has not already been satisfied in full) from the EFIH Cash Consideration Pool). | Unimpaired; deemed to accept |
| B5 | EFH LBO Note Guaranty Claims | In full and final satisfaction of each Allowed Claim, its *Pro Rata* share of the Reorganized EFH Warrants.[19] | Impaired; entitled to vote |
| B6 | General Unsecured | In full and final satisfaction of each Allowed Claim, its *Pro Rata* share of the Reorganized EFH Warrants.[20] | Impaired; entitled to |

---

[19] Holders in this Class consist of the non- Participating EFIH Unsecured Creditor Holders of EFH LBO Note Guaranty Claims

| | | | |
|---|---|---|---|
| | Claims Against the EFIH Debtors | | vote |
| B7 | EFIH Debtor Intercompany Claims | Reinstated or canceled and released without any distribution. | Deemed to have accepted or rejected, respectively |
| B8 | Non-EFIH Debtor Intercompany Claims | Canceled and released without any distribution. | Impaired; deemed to reject |
| B9 | Interest in EFIH | Reinstated. | Unimpaired; deemed to accept |
| B10 | Interests in EFIH Finance | Canceled and released without any distribution. | Impaired; deemed to reject |

---

[20] Holders in this Class consist of the non- Participating EFIH Unsecured Creditor Holders of PIK Notes and other general unsecured EFIH creditors.

**Exhibit 1[21]**

**Defined Terms**

| | |
|---|---|
| **EFH Cash Consideration Pool** | The Cash on hand at EFH as of the EFH Effective Date, *provided, however*, the EFH Cash Consideration Pool may include Reorganized EFH Common Stock to the extent necessary or beneficial for purposes of satisfying continuity of interest (to the extent applicable).  Cash received by Reorganized EFH after the EFH Effective Date shall be remitted to Reorganized EFH. |
| **EFIH Cash Consideration Pool** | (a) Cash on hand at the EFIH Debtors as of the EFH Effective Date, and (b) Cash funded to EFIH on or before the EFH Effective Date on account of the Exit Facilities. |
| **EFIH 2L Common Stock Pool** | 100% of Reorganized EFH Common Stock, (without accounting for dilution on account of the conversion of the Reorganized EFH Preferred Stock, if any, into Reorganized EFH Common Stock and exercise of any Reorganized EFH Warrants).  This percentage is based on a presumed TEV of $18.2 billion and reflects the allocation of Reorganized EFH Warrants being provided to non-Participating EFIH Unsecured Creditor in Class B5 and Class B6. |
| **Last-Out Tranche** | The last tranche of the New EFIH 2L DIP Facility into which the Participating Unsecured Note Holders will exchange their Allowed Class B5 Claim and/or Allowed Class B6 Claim, as applicable, for a New EFIH 2L DIP Facility Claim.  For the avoidance of doubt, such tranche shall be the last tranche of the New EFIH 2L DIP Facility to convert into Reorganized EFH Common Stock. |
| **Participating EFIH Unsecured Creditor** | A Holder of an Allowed Class B5 Claim or Allowed Class B6 Allowed Claim that satisfies the conditions in the Term Sheet under the Heading "Exchange Offers" for converting EFH Note Guaranty Claims and/or EFIH Second Lien Claims into the Last-Out Tranche and elects to do so. |
| **Reorganized EFH Common Stock** | One or more tranches of new, validly issued, fully paid, and non-assessable shares of common stock of Reorganized EFH to be issued and distributed in accordance with the Backup Plan. |
| **Reorganized EFH Preferred Stock** | One or more tranches of new, validly issued, fully paid, and non-assessable shares of preferred stock of Reorganized EFH to be issued and distributed in accordance with the Backup Plan.[22] |

---

[21]    [NTD: Economics of all exhibits are subject to further review by EFH, Evercore, and K&E]

[22]    [NTD to R&G: Not clear this definition appropriately picks up the trust-preferred construct you are aiming for]

| | |
|---|---|
| **Reorganized EFH Warrants** | Penny warrants for purchase of [2.0]% of the fully diluted Reorganized EFH Common Stock, with the terms set forth in **Exhibit 6** |
| **Rolling EFIH Second Lien Noteholder** | A Holder of an Allowed Class B4 Claim who agrees to exchange all or a portion of its Allowed Class B4 Claim in exchange for a New EFIH 2L DIP Claim. |
| **Settlement Order** | *Order Granting the Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 7243], entered in December 2015. |

2

**Exhibit 2**

**New EFIH 1.5L DIP Facility**

| Term | Details |
|------|---------|
| **Total Size** | At least $1.5 billion, as a 1.5-priority lien DIP facility |
| **Maturity** | June 30, 2018 (subject to a 6 month extension similar to the Existing DIP (as amended)) |
| **Funding Participants** | New money funding, subject to the committed financing provisions set forth herein. |
| **Committed Financing** | [The respective Committed Financing Documents must provide for sufficient funding to at least [$1.5 billion of the] outstanding portion of EFIH First Lien DIP Facility, in full, in Cash.] |
| **Conversion at EFH Effective Date** | New EFIH 1.5L DIP Claims will convert into 100% Reorganized EFH Preferred Stock on the EFH Effective Date. |
| **Interest Rate to EFH Effective Date** | [Coupon: 5.00% per annum; cash pay; payable quarterly] |
| **Issue Price** | [Par / No OID] |
| **Call Right Pre-EFH Effective Date** | • Call / cash take out option at any time up to and including at EFH Effective Date<br><br>• [_] of accreted principal amount of New EFIH 1.5 Lien DIP Facility at the date any time up to and including at EFH Effective Date.<br><br>• Requires call of New EFIH 2L DIP Facility in conjunction with and in order to exercise call of New EFIH 1.5L DIP Facility. |
| **EFIH 2L Roll Feature / EFIH PIK Roll Feature** | N/A |
| **Backstop Fees** | N/A |
| **Alternative Satisfaction of New EFIH 1.5L DIP Facility Claims** | There shall be a ruling in the Bankruptcy Court order approving the New EFIH 1.5L DIP Facility that the New EFIH 1.5L DIP Claims can receive a recovery under a plan of reorganization (other than the Backup Plan) in the form of Reorganized EFH preferred stock at a value to be determined by the Bankruptcy Court in connection with proceedings |

| | to confirm such a plan. |
|---|---|

**Reorganized EFH Preferred Stock Term Sheet**

| Term | Description |
|---|---|
| **Issuer** | EFH or EFH Capital Trust, a [Delaware] statutory business trust to be established in the event the Debtors and the Plan Sponsor determine to issue the Reorganized EFH Preferred Stock as a "hybrid" security.[23] |
| **Amount** | At least $[1.5] billion, such amount to be equivalent to the principal amount of the New EFIH 1.5L DIP. |
| **Priority** | The Reorganized EFH Preferred Stock will rank senior in all respects to the Reorganized EFH Common Stock. |
| **Dividends** | 4% annual Cash / 5% annual PIK Toggle at the election of Reorganized EFH, payable and compounding quarterly. |
| **Dividend Block** | At any time when any Reorganized EFH Preferred Stock PIK dividends remain outstanding and/or any Reorganized EFH Preferred Stock dividends have otherwise accrued but have not been paid, EFH shall not be entitled to declare or make any distributions, redemptions or repurchases in respect of any junior securities (including Reorganized EFH Common Stock). |
| **Liquidation Preference** | The greater of (i) the face amount (including all PIK accretion) plus accrued but unpaid dividends, and (ii) the amount that would be received in a liquidation on an as-converted basis.    The Liquidation Preference shall be due upon any (a) bankruptcy, liquidation or other winding up, (b) consolidation or merger of EFH with any other entity, (c) change of control or (d) sale, license, lease or other transfer of all or substantially all of EFH's assets.[24] |
| **Conversion Price** | Reorganized EFH Preferred Stock shall be |

---

[23]    [NTD: EFH would issue the debt instrument to the trust and then the equity interests in the trust would then be distributed to the New EFIH 2L DIP].

[24]    [NTD: Liquidation preference is drafted as if it's a liquidation preference vis a vis EFH and not the trust]

4

| Term | Description |
|---|---|
| | convertible by any holder thereof at any time at a conversion price reflecting a pre-money valuation equal to the set up value ($3.82 billion). |
| **Anti-Dilution** | The Conversion Price will provide for standard anti-dilution protection, including weighted average adjustments for issuances of Reorganized EFH Common Stock at prices below the Conversion Price. |
| **EFH Mandatory Conversion** | Reorganized EFH may mandatorily convert Reorganized EFH Preferred Stock into Reorganized EFH Common Equity at any time that the Reorganized EFH Common Stock trades above [130.0]% of the set up Reorganized EFH Common Equity Value on the EFH Effective Date (i.e. the $[3.84] billion in aggregate set up value) for any continuous 30-day period, subject to a trading volume condition and based on a percentage of shares trading to be determined in the definitive documentation and reasonably acceptable to the Plan Sponsor. |
| **EFH Call Right** | From and after the second anniversary of the EFH Effective Date, all or any part of the Reorganized EFH Preferred Stock shall be callable (on a pro rata basis amongst holders) by EFH at a call price equal to [115.0]% of the Liquidation Preference. |
| **Mandatory Redemption** | At any time following the fourth anniversary of the EFH Effective Date, upon the election of holders of a majority of the Reorganized EFH Preferred Stock (a "Majority Redemption Election"), EFH shall redeem all of the then-outstanding Reorganized EFH Preferred Stock at a redemption price equal to [110.0]% of the then Liquidation Preference. In the event that EFH does not satisfy the Majority Redemption Election in full, in cash within 60 calendar days of such election, the dividend rate applicable to the Reorganized EFH Preferred Stock shall be increased by 1.0%, and shall increase an additional 1.0% at the end of each subsequent calendar quarter unless and until the Reorganized EFH Preferred Stock has been redeemed in full in cash. |

5

**Exhibit 3**

**New EFIH 2L DIP Facility**

| Term | Details |
|---|---|
| **Total Size** | $[3.84] billion, as a second-priority lien DIP facility |
| **Maturity** | June 30, 2018 (subject to a 6 month extensions similar to the Existing DIP (as amended)) |
| **Funding Participants** | Participating EFIH Unsecured Creditors, Rolling EFIH Second Lien Noteholders (via exchange of Allowed EFIH Second Lien Note Claims), and/or new money funding, subject to the committed financing and backstop agreement provisions set forth herein.<br><br>A maximum of $[814] million in Allowed LBO Note Guaranty Claims and PIK Claims may be converted into New EFIH 2L DIP Claims.  This portion so converted (the "New PIK Converted 2L DIP Claims") will be the Last-Out Tranche.<br><br>If any Holder of a PIK Claim determines not to be a Participating EFIH Unsecured Creditors, such non- Participating EFIH Unsecured Creditors pro rata share of $[814] million will be allocated to Participating EFIH Unsecured Creditors on a pro rata basis. |
| **Committed Financing** | The committed financing and/or backstop commitments must provide for sufficient funding to pay all Allowed EFIH Second Lien Note Claims held by non-Rolling EFIH Second Lien Noteholders in Cash, in the amounts authorized by the Makewhole Settlement Order, and that portion of the DIP contemplated by the Existing DIP Amendment that is not satisfied by the exit conversion contemplated therein or proceeds from the New EFIH 1.5L DIP Facility. |
| **Conversion at EFH Effective Date** | New EFIH 2L DIP Claims will convert into 100% Reorganized EFH Common Stock provided that in order for the Last-Out Tranche to convert other than as set forth above in the definition of New PIK Converted 2L DIP Claims (or to be paid in full in cash), 2/3 of the outstanding principal amount of |

| | |
|---|---|
| | the EFIH Unsecured Rollup Claims as defined below) must consent to such other conversion. For the avoidance of doubt, nothing in the preceding sentence affects the ability of any Holder of an Allowed EFIH Second Lien Note Claim to exchange its Allowed EFIH Second Lien Note Claim into a New EFIH 2L DIP Facility Claim. |
| **Interest Rate to EFH Effective Date** | [Coupon: 6.50% per annum; full PIK; payable quarterly] |
| **Issue Price** | [Par / No OID] |
| **Call Right Pre-EFH Effective Date** | • Call / cash take out option at any time up to and including at EFH Effective Date<br><br>• At price equal to accreted principal amount of New EFIH 2L DIP Facility at the date any time up to, and including, at the EFH Effective Date, plus the following premium schedule:<br><br>   • Par plus 1/2 coupon or 103.25% of accreted principal amount from funding date to December 31, 2017 (Base Case Exit Date)<br><br>   • Par plus 1/4 coupon or 101.625% of accreted principal amount from January 1, 2018 to the Maturity Date[25]. |
| **Dividend Rate Post-EFH Effective Date** | No guaranteed dividend post Exit Date |
| **Conversion Feature Post-EFH Effective Date** | N/A |
| **Call Right Post EFH Effective Date** | N/A |
| **EFIH 2L Roll Feature** | Participation in the New EFIH 2L DIP Facility open to all current Holders of Allowed EFIH Second Lien Note Claims, on a pro rata and dollar-for-dollar basis. |
| **EFIH Unsecured Roll Feature** | Roll up of 66.7% of existing EFIH PIK Claims and existing EFH LBO Note Guaranty Claims at 75% of face value into Last-Tranche New EFIH 2L DIP Facility Claims calculated on the Transaction Date, subject to eligibility requirements set forth in Term Sheet.<br><br>Remaining 33.3% of EFIH PIKs and EFIH LBO |

---

[25] Elliott to confirm given possible 6 month extension to maturity.

7

| | |
|---|---|
| | Note Guaranty Claims to receive Pro Rata share of the EFIH Unsecured Common Stock Pool on the EFH Effective Date. |
| **Backstop Fees** | N/A |
| **Alternative Satisfaction of New EFIH 2L DIP Facility Claims** | There shall be a ruling in the Bankruptcy Court order approving the New EFIH 2L DIP Facility that New EFIH 2L DIP Claims can receive a recovery under a plan of reorganization (other than the Backup Plan) in the form of Reorganized EFH common stock at a value to be determined by the Bankruptcy Court in connection with proceedings to confirm such a plan. |

8

**Exhibit 4**

**Sources and Uses of New EFIH 2L DIP Facility and New EFIH 1.5L DIP Facility**

**Exhibit 5**

**PUCT Commitments**

**Exhibit 6**

**Reorganized EFH Warrants**

| Term | Details |
|---|---|
| **Amount** | Penny warrants for [2]% of the fully diluted Reorganized EFH Common Stock at exit |
| **Knock-In / Barrier Price** | Reorganized EFH Common Stock closing price for a period of 30 consecutive trading days is more than [112.5]% of the Reorganized EFH Common Stock price at the EFH Effective Date (where the Reorganized EFH Common Stock price at the EFH Effective Date reflects an equity valuation equal to the accreted value of the EFIH 2L DIP immediately prior to the EFH Effective Date. |
| **Term** | [3] years |
| **Additional Provisions** | Customary anti-dilution protection to the Knock-In/ Barrier Price for stock splits, reverse stock splits etc.   No anti-dilution adjustment to the Knock-In/ Barrier Price in respect of any conversion of Reorganized EFH Preferred Stock |