# EXHIBIT 15

*Execution Version*
*Privileged*

# CONFIDENTIALITY AGREEMENT

May 17, 2017

Elliott Management Corporation
40 West 57th Street
New York, New York 10019

Ladies and Gentlemen:

    1.    Elliott Management Corporation is an advisor or manager of affiliated funds and/or accounts (together with Elliott Management Corporation, referred to herein as "you" or "your") that are beneficial holders of various securities issued by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (together, "**EFIH**") (each a "**Creditor**" and the claims thereof, the "**EFIH Claims**"), and potentially securities of Energy Future Holdings Corp. ("**EFH**"), relating to the chapter 11 cases of EFIH and EFH (the "**Chapter 11 Cases**"). In connection therewith, you have requested, and the Company Parties are prepared to make available to you, certain proprietary and/or non-public information concerning the Chapter 11 Cases, the business, operations, projections, financial condition, and assets of the Company and the Company Parties. For purposes of this letter agreement: (i) the term "**Company Parties**" shall collectively refer to EFH and EFIH, a direct subsidiary of EFH and indirect parent of Oncor Electric Delivery Company LLC ("**Oncor**"); and (ii) the term "**Company**" shall collectively refer to the Company Parties and Oncor. As a condition to such information being furnished to you and your affiliates, and your and their respective employees, partners, managers, officers, directors, investment committee members, accountants, consultants, attorneys, financial advisors, and other advisors and agents, and each of their respective affiliates, who are assisting you in connection with matters relating to the Chapter 11 Cases, and advisors and existing and potential investors of any fund managed, advised, or sub-advised by you (collectively referred to herein as such person's "**Representatives**"), you agree to treat any information, except Lapsed Confidential Materials (defined below), whether oral, written or electronic, concerning the Company (whether prepared by the Company Parties, their respective Representatives or otherwise and irrespective of the form of communication) which is furnished, on or after the date hereof, to you or to your Representatives by the Company Parties or the Company Parties' Representatives (herein collectively referred to as the "**Confidential Information**") in accordance with the provisions of this letter agreement and to take or abstain from taking certain other actions as hereinafter set forth. "Lapsed Confidential Materials" means any Confidential Information (as defined below), whether oral, written, or electronic, given to you, any of your Representatives, any party working on or consulting with you in connection with the legal services you are providing to any Creditor, or any Creditor under any confidentiality agreement with any of the Company Parties and their present or former subsidiaries or Oncor, for which the period of confidentiality set forth in any confidentiality agreement executed by the Company Parties has expired. The Company Parties acknowledge that your employees or those of your general partner or manager may serve as directors or officers of your portfolio companies, and such portfolio companies will not be deemed to have received Confidential Information solely due to the dual role of such employee, so long as such employee does not provide any

Confidential Information to the other directors, officers, employees or other representatives of such portfolio companies in a manner that is inconsistent with this letter agreement.

2.     Entry into this agreement shall be without prejudice to any party's rights with respect to (i) whether you or any of your affiliates is bound to that certain plan support agreement entered into between certain holders of EFIH Claims and the Company Parties on January 2, 2017, as amended on January 19, 2017 and (ii) the termination fee set forth in a certain Agreement and Plan of Merger by and among NextEra Energy, Inc., EFH Merger Co., LLC, EFIH, and EFH, dated as of July 29, 2016 (as amended by that certain Amendment No. 1 to Agreement and Plan of Merger, dated as of September 18, 2016) (the "***Merger Agreement***"), including without limitation, with respect to the circumstances in which such fee may be triggered and the allocation of any such fee between the Company Parties' estates; provided, however, that with respect to the termination fee, each of (a) EFIH, EFH, and their affiliates that are parties to the Merger Agreement (the "***EFIH Parties***") and (b) you hereby waive, do not reserve any right to assert, and shall not assert, any claim or cause of action against you and the EFIH Parties, as applicable, alleging that you or your Representatives (or the EFIH Parties and their Representatives, as applicable) are liable for the termination fee, in the event that the termination fee is triggered as a result of the parties entering into this agreement or the disclosure of any confidential information permitted pursuant to the provisions of this agreement. Notwithstanding the foregoing, the EFIH Parties and you do not waive, and expressly reserve, their right to assert that you or your Representatives or the EFIH Parties, as applicable, are liable for the termination fee on any basis other than the entry into this agreement and/or the disclosure of any confidential information permitted by this agreement.

3.     The term "***Confidential Information***" shall be deemed to include (i) any information (including historical financial information that has not been publicly disclosed), concerning the business, operations, financial condition or projections or assets of the Company included in information that is furnished on or after the date hereof, by or on behalf of the Company Parties to you or your Representatives; (ii) such portions of notes, analyses, compilations, studies, interpretations, memoranda or other documents and writings prepared by you or your Representatives that contain, reflect, or are based upon, in whole or in part, any information described in clause (i) above, and (iii) proposed terms, proposed conditions, or the status of such transaction or any discussions or negotiations relating to such transaction, or that the Company, and/or the Creditors are evaluating a transaction. For the avoidance of doubt, Confidential Information may also include Confidential Information regarding Oncor or its subsidiaries, *provided* that the disclosure of Confidential Information regarding Oncor or its subsidiaries under this agreement, if any, is subject to the prior consent of Oncor. If, and to the extent that Oncor consents to the disclosure of Confidential Information pursuant to this paragraph 3, then such Confidential Information shall be permitted to be publicly disclosed pursuant to the terms and conditions of this agreement. Nothing in this agreement shall preclude you or your Representatives from speaking directly to Oncor and its representatives regarding Oncor Confidential Information or other information regarding Oncor that is not Confidential Information, or receiving Oncor Confidential Information or other information regarding Oncor from Oncor; *provided, however*, that this agreement in no way authorizes you to disclose Confidential Information about the Company Parties to Oncor (except that you and your Representatives are in discussions with the Company Parties) or vice versa; *provided, further, however*, that nothing in the foregoing sentence shall create any

cleansing obligations on the Company Parties with respect to the Oncor Confidential Information. For the avoidance of doubt, the Company Parties confirm that the unilateral waiver the Company Parties provided to you with respect to the PIK PSA and the waiver of liability set forth in this agreement applies to conversations between you and Oncor, subject to the foregoing sentence. For purposes of this agreement "Oncor Confidential Information" means any confidential, non-public information about Oncor and received from Oncor

    4.    The term "*Confidential Information*" does not include information which (a) is or becomes generally available to the public other than as a result of a disclosure by you or your Representatives in violation of this letter agreement; (b) was within your possession prior to it being furnished to you or your Representatives by or on behalf of the Company Parties, provided that such information is not, to your knowledge, subject to another confidentiality agreement with any of the Company Parties with respect to such information; (c) is obtained from a third party who, to your knowledge, is under no obligation to maintain its confidentiality; (d) was independently developed by you or your Representatives without reference to the Confidential Information; (e) is approved in writing for release by any Company Party; (f) has been admitted as evidence in any hearing, or attached to any pleading or other submission, in the Chapter 11 Cases or any adversary proceeding related thereto (unless expressly still subject to sealing); or (g) Lapsed Confidential Information. Nothing contained herein shall in any way restrict or impair your obligations to report your investments in the Company Parties in accordance with applicable laws and regulations without the requirement of notice to the Company Parties.

    5.    You hereby agree that (i) you will not use the Confidential Information other than in connection with the Chapter 11 Cases (and to the extent agreement is reached regarding the terms of a transaction in connection with the Chapter 11 Cases, execute documentation with respect to, and take other actions in furtherance of, such agreement), and (ii) you will, and you will direct your Representatives to, not disclose to any person any of the Confidential Information except as permitted herein; *provided*, *however*, for the avoidance of doubt, the Company Parties acknowledge that you may, without disclosing any Confidential Information, advise accounts and funds with respect to investments in entities engaged in businesses similar to those conducted by the Company and that the Confidential Information may influence your views on investments in entities engaged in businesses similar to those conducted by the Company or in entities in other businesses or industries; *provided*, *further*, for the avoidance of doubt, your employees or those of your general partner or manager may serve as directors or officers of your portfolio companies, and such portfolio companies will not be deemed to have received Confidential Information solely due to the dual role of such employee, so long as such employee does not provide any Confidential Information to the other directors, officers, employees or other representatives of such portfolio companies in a manner that is inconsistent with this letter agreement.

    6.    Notwithstanding the foregoing, Confidential Information may be disclosed by you or a Representative: (i) to any party to which any Company Party gives their prior written consent; (ii) to your Representatives who (x) are working on or consulted in connection with the legal services to the Creditor, including with respect to the Chapter 11 Cases and (y) have been directed by you to and have agreed to treat the Confidential Information in accordance with the terms of this letter agreement; (iii) pursuant to subpoena or court process or as otherwise compelled by applicable law or legal process, in each case, subject to the provisions set forth

below; (iv) to any Creditor or any Representative of a Creditor, with respect to the information described in clause (iii) of the definition of Confidential Information; (v) to any person you retain to assist you in providing legal services to the Creditor who, to your knowledge, has entered into a confidentiality agreement with the Company Parties or who executes an undertaking agreeing to be bound by the terms of this letter agreement; (vi) to any person that holds a claim or an administrative expense against the Company Parties or a Representative of such a person, who, to your knowledge, has entered into a confidentiality agreement with the Company Parties that is in effect; and (vii) to any person that agrees in writing to be bound as a party to this confidentiality agreement by submitting a signature page to this agreement in its execution form to your Representatives and the Company Parties' Representatives. You agree to inform your Representatives of the confidential nature of the Confidential Information. You agree to be responsible for any breach of this letter agreement by your Representatives, *provided*, *however*, that you shall not have any responsibility for any breach of this letter agreement by any of your Representatives who separately enters into a confidentiality agreement with the Company Parties. With respect to your Representatives, the obligations of confidentiality set forth in this letter agreement shall only apply to your Representatives that you provide, or authorize such Representative to receive, access to Confidential Information. The term "*person*" as used in this letter agreement shall be broadly interpreted to include the media, any governmental representative, authority or tribunal, and any corporation, partnership, limited liability company, group, individual or other entity.

7. In the event that you or any of your Representatives are requested or required pursuant to law, rule, regulation, court order or other similar process (whether by oral questions, interrogatories, requests for information or documents in legal or regulatory proceedings, subpoena, civil investigative demand or other similar process, or by the SEC or NYSE or any regulatory or self-regulatory authority) to disclose any Confidential Information, you shall, to the extent permitted by law or regulation, as applicable, and to the extent practicable, notify EFH of any such request or requirement so that the Company Parties may seek, at their sole expense, a protective order or other appropriate remedy. Pursuant to the terms of this letter agreement, you or any of your Representatives are permitted to make any such requested or required disclosure of Confidential Information, without liability hereunder, provided that, you or any of your Representatives will only disclose that portion of the Confidential Information that, in your reasonable judgment and on the advice of your counsel, is required by applicable law or regulation to be disclosed; *provided*, *however*, that you will use your reasonable efforts to assist the Company Parties at their sole expense, in obtaining an appropriate protective order or other reliable assurance that confidential treatment will be accorded the Confidential Information by such person. Notwithstanding the restrictions imposed by this paragraph, you and your Representatives shall be permitted to disclose any Confidential Information without notice pursuant to an ordinary course audit examination by, or a blanket document request from, a regulator, auditor, bank examiner, self-regulatory organization or similar person that does not specifically identify one or more Company Parties by name.

8. You acknowledge that, except as may otherwise expressly be set forth in any "definitive agreement" (as defined below), none of the Company Parties, nor any of their affiliates nor any of their directors, officers, employees or agents (including, without limitation, in each case any advisors, attorneys and accountants): (i) makes any express or implied representation or warranty as to the accuracy or completeness of the Confidential Information

disclosed under this letter agreement; (ii) to the fullest extent permitted by law, will have any liability to you or your Representatives on any basis (including, without limitation, in contract, tort, under federal, foreign or state securities laws or otherwise) as a result of the review, reliance, use or non-use by you or your Representatives of, the Confidential Information disclosed under this letter agreement, for any errors therein or omissions therefrom; (iii) shall have any liability or responsibility for any decisions made by you or your Representatives in reliance on any Confidential Information disclosed under this letter agreement and that neither you nor your Representatives is entitled to rely on the accuracy or completeness of the Confidential Information disclosed under this letter agreement; (iv) will be under any obligation or duty (express or implied) to make available to you or your Representatives any Confidential Information; and (v) will be under any duty or obligation (express or implied) to update, supplement, revise or correct any Confidential Information disclosed under this letter agreement regardless of the circumstances except, in each case, as otherwise provided in any definitive agreement that any such person enters into. Nothing in this Agreement shall release, or be deemed to release, (a) any claims, defenses or causes of actions that the Company Parties, or their directors, officers, employees or agents (including, without limitation, in each case any advisors, attorneys and accountants) may have against you, your Representatives, the Creditors, or their Representatives for matters unrelated to this Agreement or to the disclosure and consideration of Confidential Information pursuant hereto; and (b) any claims, defenses or causes of action that you, your Representatives, the Creditors or their Representatives may have against the Company Parties, or their directors, officers, employees, or agents (including, without limitation, in each case any advisors, attorneys and accountants) for matters unrelated to this Agreement or to the disclosure and consideration of Confidential Information pursuant hereto.

9.    Unless and until a definitive agreement regarding the transaction in connection with the Chapter 11 Cases has been executed and delivered, none of the Company Parties, or you or any of your Representatives will be under any legal obligation of any kind whatsoever with respect to a proposal or transaction by virtue of this letter agreement except for the matters specifically agreed to herein. For the purposes of this paragraph, the term "*definitive agreement*" shall not include an executed non-binding letter of intent or any other preliminary written agreement, nor does it include any written or verbal acceptance by the Company Parties of any offer or bid on your part or on behalf of you except for the matters specifically agreed to herein or as may be expressly provided in such letter of intent or other preliminary written agreement. You further acknowledge that the Company Parties reserve the right, in each of their sole discretion, to reject any and all proposals made by you or any of your Representatives with regard to a proposal or transaction between the Company Parties and you, and to terminate discussions and negotiations with you at any time.

10.    This Agreement does not alter or amend any rights or obligations under the bankruptcy code, applicable nonbankruptcy law, court rules, or existing agreements between the parties.

11.    At any time upon the written request of the Company Parties for any reason, you will, as promptly as practicable, redeliver to the Company Parties, as applicable all written or electronic Confidential Information provided to you or your Representatives by the Company Parties, the Company Parties Representatives (or, at your sole option, you may destroy all such Confidential Information), and neither you nor your Representatives shall retain any copies or

other reproductions in whole or in part of such Confidential Information, including any electronic, audio, digital or other back-up copies of the Confidential Information. All Confidential Information consisting of documents, memoranda, notes and other writings, whatsoever, prepared by you or your Representatives based on information in the Confidential Information, including any electronic, audio, digital or other back-up copies of the Confidential Information shall be destroyed and no copy thereof shall be retained. Notwithstanding the foregoing, you and your Representatives may retain the Confidential Information, including any reports, analyses, compilations, studies, notes or other documents or records prepared by you or your Representatives which contain or otherwise reflect or are generated from Confidential Information if required in order to comply with applicable laws, court orders, rules or regulations or internal compliance requirements, and any Confidential Information you believe cannot reasonably be destroyed (such as oral communications reflecting the Confidential Information, firm electronic mail back-up records, back-up server tapes and any records of similar such automated record-keeping or other retention systems), provided that any such materials so retained shall be held subject to the terms of this letter agreement. Notwithstanding the return, retention, or destruction of the Confidential Information, you and your Representatives will be bound by your obligations of confidentiality and other obligations hereunder, for the duration of the letter agreement.

    12. The parties recognize and acknowledge the competitive and confidential nature of the Confidential Information and that irreparable damage may result to such parties if such information contained therein or derived therefrom, as well as any other Confidential Information, is disclosed to any third-party except as herein permitted. It is further understood and agreed that money damages are not an appropriate remedy for any breach of this letter agreement. Accordingly, it is agreed by you that each of the Company Parties may be entitled to seek an injunction or injunctions without the posting of any bond and without proof of actual damages to prevent breaches or threatened breaches of this letter agreement and/or to specific performance of this letter agreement. Such injunctive remedies shall be deemed to be the sole and exclusive remedies for a breach of this letter agreement. Furthermore, you agree that you will notify EFH if you become aware of any unauthorized disclosure of any Confidential Information by you or your Representatives and, in the event of any disclosure of Confidential Information except as herein permitted (including any such disclosure of Confidential Information by any of your Representatives) you will use commercially reasonable efforts to cooperate in any attempt by any of the Company Parties to obtain any remedy or relief relative thereto.

    13. THIS LETTER AGREEMENT IS GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CHOICE OR CONFLICT OF LAW PROVISION OR RULE (WHETHER OF THE STATE OF NEW YORK OR ANY OTHER JURISDICTION) THAT WOULD CAUSE THE APPLICATION OF THE LAWS OF ANY JURISDICTION OTHER THAN THE STATE OF NEW YORK.

    14. Each party hereto hereby: (a) submits for itself and its property in any legal action or proceeding relating to this letter agreement, or for recognition and enforcement of any judgment in respect thereof, to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware and appellate courts with jurisdiction over such court; (b) consents

that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or any such action or proceeding that was brought in an inconvenient court, and agrees not to plead or claim the same; and (c) agrees that service of process in any such action or proceeding may be effected by service that would be effective under Bankruptcy Rule 7004, together with electronic service.  The provisions of this paragraph shall survive termination of this letter agreement.

15. This agreement shall not be used and shall not be admissible in any litigation related to the Chapter 11 cases, except with respect to litigation in connection with any purported or alleged breach of this agreement.

16. THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT THEY MAY HAVE TO TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING, DIRECTLY OR INDIRECTLY BASED UPON OR RELATING TO THIS LETTER AGREEMENT AND FOR ANY COUNTERCLAIM RELATED THERETO.

17. It is understood and agreed that no failure or delay by you, the Company Parties in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder. If any term, provision, covenant, or restriction of this letter agreement is held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of the terms, covenants, and restrictions of this letter agreement shall remain in full force and effect and shall in no way be affected, impaired or in any way invalidated by such court action, and such court shall have the authority to modify such provision, covenant, or restriction to the extent necessary to render it valid and enforceable, preserving as closely as possible the intent of the parties hereto.

18. Upon prior written notice to you, the Company Parties reserve the right to assign all of their rights, powers and privileges under this letter agreement, including without limitation, the right to enforce all of the terms of this letter agreement, to successors or affiliates the Company Parties or any person who acquires a majority of the outstanding stock or all or substantially all of the assets of the Company Parties.  Except as expressly permitted above, the Company Parties shall not have the right to assign this letter agreement or their rights or obligations under this letter agreement without your prior written consent.  You acknowledge and agree that you may not assign or otherwise delegate your obligations or duties under this letter agreement to any other person without the Company Party's prior written consent.  Any assignment in violation of this letter agreement shall be null and void *ab initio*.

19. You are aware, (and, if applicable, you have or will advise your Representatives who are apprised of this matter), that United States securities laws may prohibit any person who has material non-public information concerning a company or entity with publicly traded securities (including the Company) from purchasing or selling securities of such company or entity, or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities. None of the Company Parties, or their affiliates undertake to determine or make any representation as to which of or whether any of the Confidential Information may constitute

material non-public information with respect to the Company Parties under United States securities laws and you agree that you and your Representatives are solely responsible for compliance with this paragraph and the United States securities laws in respect of any Confidential Information with respect to the Company Parties, to the extent applicable. Notwithstanding the foregoing, nothing herein shall be construed as an acknowledgement that any claims or other forms of indebtedness you hold are subject to such securities laws.

20. On the earlier of (i) June 29, 2017; (ii) the date on which Bankruptcy Court orally or in writing indicates that it will grant your motion for a preliminary injunction, subject the terms of such oral or written ruling, and (iii) the date the PUCT announces (either by order or public statement) its intended disposition (grant, deny, modify or some combination thereof) with respect to the relief requested by NextEra in that certain motion for rehearing filed by NextEra on May 8, 2017, unless announcement is made prior to May 31,, 2017, in which case the announcement shall be deemed to have occurred on May 31, 2017 (the "*Disclosure Date*"), the Company Parties shall, in a manner consistent with this paragraph and the following paragraph, publicly disclose the Cleansing Material (as defined below). The Cleansing Materials shall be filed in such manner that the Company Parties reasonably determines results in public dissemination of such information. Notwithstanding anything to the contrary in this letter agreement, but subject to the rights and obligations of each of the parties as may be set forth in a separate agreement, each of the parties hereto reserves the right to take any action in connection with the Chapter 11 Cases at any time, in the sole discretion of such party's board of directors, board of managers, or other similar governing body.

21. "*Cleansing Material*" means, collectively, the following: (a) all of the Confidential Information provided to you (or your Representatives) by the Company Parties or the Company Parties' Representatives (or provided to you by another party that you are permitted to discuss Confidential Information with pursuant to this letter agreement, including but not limited to Oncor) that the Company Parties determines in its reasonable, good-faith judgment, and upon the advice of counsel, constitutes material non-public information (although you and your Representatives bear final responsibility for what constitutes material non-public information); (b) the fact that negotiations between the Company Parties and third parties concerning a transaction in connection with the Chapter 11 Cases have taken place; (c) whether such negotiations are or are not continuing; (d) that the Company Parties has provided such third parties with, or has provided such third parties access to, Confidential Information; and (e) if an agreement has been reached concerning the material terms of a transaction, a description of such terms; *provided, however,* that if an agreement has not been reached concerning the material terms of a transaction, (x) the Cleansing Material will include all of the information set forth in (a) through (e) of this paragraph 21 but (y) in connection with any written proposal and counterproposals exchanged by the parties to this agreement, the Cleansing Material shall include only the material terms of the last written proposal and counterproposal exchanged by the parties to this agreement, including the material information on which the proposal and counterproposal were based (each a "*Proposal*"). Notwithstanding the foregoing, nothing herein shall be construed to suggest that any Confidential Information that is required to be disclosed pursuant to this letter agreement, or that is disclosed, necessarily constitutes material non-public information for purposes of such securities laws.

22. At least one (1) business day before the Disclosure Date, the Company Parties shall provide to you and your counsel the Cleansing Material that the Company Parties intend to disclose pursuant to paragraph 21 and 21 (the "**Company Parties Cleansing Materials**") (including providing drafts of any related press release to you), it being understood that the Company Parties will undertake good faith efforts to provide the proposed Company Parties Cleansing Materials to you before the date required by this sentence. You shall have the right to comment on such Company Parties Cleansing Materials. The Company Parties will in good faith incorporate your reasonable requests for additions to or other modifications of the Cleansing Materials prior to the disclosure of such Cleansing Materials. If the Company Parties do not provide to you and your counsel the Company Parties Cleansing Materials at least one (1) business day prior to the Disclosure Date, you shall be authorized, but not obligated, to provide the Company Parties on the Disclosure Date with the Cleansing Material you expect the Company Parties to disclose. If the Company Parties do not disclose the Cleansing Materials on the Disclosure Date, you shall be authorized to disclose the Cleansing Materials at any time thereafter without further notice to the Company Parties and, upon such disclosure, the Cleansing Material shall not constitute Confidential Information.

23. If, after the Company Parties Cleansing Materials are made publicly available, you or your Representatives believe in good faith, after consulting with your legal counsel, that there are additional facts that constitute Confidential Information, you shall be permitted to make public disclosures of such Confidential Information (such additional permitted disclosures, the "**Additional Cleansing Materials**"); *provided*, *however*, that (i) if an agreement has not been reached concerning the material terms of a transaction, the Additional Cleansing Materials shall exclude all exchanges of the material terms proposed by the parties other than the Proposals (as defined in paragraph 21), and (ii) you (x) provide a copy of the proposed Additional Cleansing Materials on at least six business hours' notice to the Company Parties before disclosing the Additional Cleansing Materials and (y) in good faith, incorporate the Company Parties' reasonable requests for additions to or other modifications of the Additional Cleansing Materials. Notwithstanding the foregoing, if the Company Parties do not make the Cleansing Materials public on the Disclosure Date, do not provide the Company Parties Cleansing Materials at least one business day in advance or did not incorporate your timely and reasonable requests to the Cleansing Materials, in accordance with paragraph 22, you are authorized to make disclosure of Additional Cleansing Materials in accordance with this paragraph 23 on or after the Disclosure Date.

24. You acknowledge and agree that the rights set forth in the preceding two (2) paragraphs shall constitute your sole and exclusive remedy for any breach by the Company Parties of their disclosure obligations. You further acknowledge and agree that none of the Company Parties, or their respective affiliates, employees, officers or directors shall have any liabilities at law, equity, contract, tort or otherwise for any breach by the Company Parties of their disclosure obligations with respect to the Cleansing Material set forth herein.

25. This letter agreement shall terminate on the Disclosure Date.

26. No amendment or modification of this letter agreement (including any exhibits attached hereto) shall be binding unless made by written instrument signed by each party hereto. This letter agreement may be executed in one or more counterparts, each of which shall be

deemed to be an original, but all of which, taken together, shall constitute one and the same agreement.

[*Remainder of page intentionally left blank.*]

Please confirm your agreement with the foregoing by signing and returning one copy of this letter to the undersigned, whereupon this letter agreement shall become a binding agreement between you and each of the Company Parties.

Very truly yours,

**ENERGY FUTURE HOLDING CORP.**

By: _Andrew M. Wyett_
Name: _Andrew Wyett_
Title: _VP & Deputy GC_


**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

By: _Andrew M. Wyett_
Name: _Andrew Wyett_
Title: _VP & Deputy GC_

Please confirm your agreement with the foregoing by signing and returning one copy of this letter to the undersigned, whereupon this letter agreement shall become a binding agreement between you and each of the Company Parties.

Very truly yours,

**ENERGY FUTURE HOLDING CORP.**

By: _____
Name: _____
Title: _____

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

By: _____
Name: _____
Title: _____

Accepted and agreed as of the
date first written above:

**ELLIOTT MANAGEMENT CORPORATION**

By: _____
Name: _____Elliot Greenberg_____
Title: _____Vice President_____