IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>**Related Docket Nos.: 11425, 11505, 11509, 11510, and 11553** |
|---|---|

**BERKSHIRE HATHAWAY ENERGY COMPANY'S JOINDER IN EFH/EFIH DEBTORS' REPLY IN SUPPORT OF THE MOTION OF THE EFH/EFIH DEBTORS FOR ENTRY OF AN ORDER SCHEDULING CERTAIN HEARING DATES AND DEADLINES AND ESTABLISHING CERTAIN PROTOCOLS IN CONNECTION WITH CONFIRMATION OF THE JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, AND THE EFH/EFIH DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE IN FURTHER RESPONSE TO THE OBJECTIONS TO THE SCHEDULING MOTION**

Berkshire Hathaway Energy Company ("BHE"), as Plan Sponsor,[2] files this joinder to the EFH/EFIH Debtors' reply in support of the Scheduling Motion [D.I. 11553] (the "Debtors' Reply") in further response to the objections to the Scheduling Motion filed by the Elliott Funds [D.I. 11505] (the "Elliott Objection") and the Sunrise Partners Limited Partnership [D.I. 11509] (the "Sunrise Objection," and together with the joinder to the Elliott Objection filed by UMB Bank,

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the *Motion of the EFH/EFIH Debtors for the Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11425] (the "Scheduling Motion") and the Debtors' Reply.

N.A. [D.I. 11510], and the Elliott Objection collectively the "Objections").[3] In support of this joinder, BHE respectfully states as follows:

**JOINDER**

1. BHE, by and through its undersigned counsel, hereby supports the Scheduling Motion and joins the Debtors' Reply. In support of this joinder, BHE respectfully incorporates the arguments set forth in the Debtors' Reply and will not repeat those arguments here.

2. On July 7, 2017, BHE executed a Merger Agreement that provides for BHE's acquisition of EFH Corp.'s indirect interest in Oncor for $9 billion in cash plus the assumption of certain liabilities. Unlike Elliott's hypothetical proposal to date, the Merger Agreement has no financing contingencies and has the support of PUCT staff and seven other key Texas regulatory stakeholders with respect to the needed regulatory approvals that have thus far thwarted the EFH/EFIH Debtors' efforts to reorganize and exit Chapter 11. On July 7, the EFH/EFIH Debtors also filed a Plan and Disclosure Statement that implements the Merger Agreement, and results in substantial recoveries for creditors, including payment in full in cash of all priority and secured indebtedness.

3. Through the Scheduling Motion, the EFH/EFIH Debtors seek approval of a schedule for approval of the Debtors' Disclosure Statement and confirmation of the Plan. The first proposed hearing under the Scheduling Motion is the hearing for approval of the Disclosure Statement on August 11, 2017. Contemporaneous with the filing of the Scheduling Motion, the EFH/EFIH Debtors filed a separate motion for approval of the Merger Agreement, which has been noticed for hearing on August 10, 2017. The Objections seek to postpone the Debtors' path

[3] The Elliott Objection incorporates by reference the arguments set forth in the Elliott Funds' motion to adjourn the hearing to authorize entry into the Merger Agreement and approval of the Termination Fee [D.I. 11506] (the "Motion to Adjourn"). BHE reserves the right to file an opposition to the Motion to Adjourn prior to the deadline established by this Court.

forward by seeking an unwarranted extension of the hearings on the Disclosure Statement and Merger Agreement by more than a month, purportedly to allow Elliott to find funding and make progress with the PUCT,[4] neither of which has materialized or been concretely advanced by Elliott over the past several months. This delay would prevent the EFH/EFIH Debtors from satisfying the negotiated milestones in the Merger Agreement and cause BHE to terminate the Merger Agreement.

4. As explained in the Debtor's Reply, Elliott has no proposal that competes with the benefits and certainty of BHE's executed Merger Agreement—Elliott has not submitted any evidence suggesting that it can garner the necessary financial or PUCT support rising to a level anywhere close to being a viable alternative, let alone a superior proposal, notwithstanding the fact that Elliott has had the opportunity to garner such support since at least May 17, 2017.

5. The Objections are based on at least three false premises: (1) the Objections falsely assert that the schedule proposed by the EFH/EFIH Debtors and BHE is "truncated"; (2) the Objections allege that this Court should simply trust that BHE will waive its right to terminate the Merger Agreement if an order approving the Merger Agreement (as defined in the Merger Agreement, the "Approval Order") is not entered by August 21, 2017; and (3) the Objections falsely assert that the Merger Agreement is purportedly contingent on BHE acquiring the 20%

---

[4] A letter from Brian Lloyd, Executive Director of the PUCT, was filed by the EFH/EFIH Debtors with the declaration of Bryan M. Stephany in support of the Debtors' Reply [D.I. 11564] as Exhibit 1. BHE respectfully asks this Court to read that letter in its entirety. Mr. Lloyd stated, inter alia, that "[i]t was a great disappointment to me that your letter misrepresented the nature of the meeting and [Mr. Lloyd's] commitment." Mr. Lloyd's letter listed multiple misstatements made by Elliott's counsel about the meeting with the PUCT staff and specifically demanded that any future discussions "not be misrepresented to others." The letter goes on to state that future communications should be in writing and in coordination with the Office of the Attorney General of Texas, to prevent a repeat of the gross distortions about the progress with the PUCT regarding the equitization plan. In addition, the letter expressly states that Elliott has not yet even provided the information the staff would need to make an informed analysis. Nothing Elliott has submitted indicates that the PUCT is likely to approve an equitization scheme that leaves more than $5.5 billion of debt and preferred equity, which is effectively additional subordinated debt, at EFIH, when the PUCT conditions for NextEra and BHE included the complete absence of debt at the EFIH level.

minority interest in Oncor from TTI. Each premise is unfounded. The Objections also ignore the tremendous costs of delay in these cases.

**A. The Proposed Scheduling Timeline Is Not A "Truncated Timeline."**

6. Elliott states multiple times that the Merger Agreement requires a "truncated timeline" (Motion to Adjourn, ¶¶ 24, 29). However, as Elliott knows, the Scheduling Motion simply does not propose to shorten any applicable time periods in connection with these Court proceedings and is not in any way truncated when compared to bankruptcy cases generally or this Court's prior scheduling orders in this case. This table compares the milestones with the applicable rules:

| COURT APPROVAL | NOTICE REQUIRED FROM SERVICE OF MOTION REQUESTING COURT APPROVAL | PROPOSED SCHEDULE | MILESTONES IN MERGER AGREEMENT §8.4(h) |
|---|---|---|---|
| Court approval of BHE Merger Agreement | **18 to 21 days' notice** (Del. Bankr. L.R. 9006-1(c)(i)). | August 10, 2017 Hearing to Approve Merger Agreement: **34 days' notice** | Court Approval of Merger Agreement 45 days from date of the Merger Agreement (7/7/17); August 21, 2017 |
| Court approval of BHE-sponsored Disclosure Statement | **35 days' notice** (Del. Bankr. L.R. 3017-1(a)). | August 11, 2017 Hearing to Approve Disclosure Statement: **35 days' notice** | Court Approval of Disclosure Statement by September 5, 2017: **60 days from 7/7/17** |
| Court confirmation of BHE-sponsored Plan of Reorganization | **28 days' notice** (Fed. R. Bankr. P. 2002) | October 24, 2017 Hearing for Confirmation of Plan: **56 days' notice** (assuming service complete by August 29) | Court confirmation of Plan by December 15, 2017: **161 days from 7/7/17** |

The milestones in the Merger Agreement, which if breached provide BHE the option to terminate the transaction, do not truncate any of the notice requirements of this Court's local rules or the Federal Rules of Bankruptcy Procedure.

7. The hearing to approve the Merger Agreement is scheduled a full 34 days from service of the Approval Motion and within the 45-day milestone in the Merger Agreement. It is not uncommon for buyers in chapter 11 proceedings to require a much shorter time period, but here, as part of a multi-faceted transaction, BHE agreed to a maximum time period of 45 days from signing the Merger Agreement to obtain Court approval of the agreement. This was the same time period which this Court approved in connection with the NEE Merger Agreement.

8. The delay that the Objections seek is hardly cost-free. Professional fees continue to accrue. Interest on EFIH's DIP facility and the EFIH second lien notes accrues at almost $50 million in the aggregate per month. The Objections focus on the return to the junior most unsecured claims against EFIH, and ignore the reality that recoveries by holders of the second lien notes and DIP claim, which will be paid in full in cash with much greater certainty and more quickly under the Merger Agreement than under any not-yet financed Elliott alternative, would be jeopardized by jettisoning the Merger Agreement in the hope that Elliott may eventually fund and get regulatory approval of a viable superior proposal.

**B. BHE Will Terminate The Merger Agreement If The Reasonable Milestone For The Entry Of The Approval Order Is Not Met.**

9. Elliott is asking for an extension of the negotiated dates in the Merger Agreement, which were part of an overall agreement between, among others, EFH. Corp., EFIH, and BHE. If the Approval Order milestone is not met, BHE will terminate the Merger Agreement.

10. The Approval Order milestone in the Merger Agreement is reasonable from a bankruptcy process standpoint, and is further grounded in the financial terms of BHE's proposal. ***BHE's deal provides for a commitment of $9 billion in cash without any financing contingency***. The EFH/EFIH Debtors' commitment to proceed with the Merger Agreement becomes binding only after entry of the Approval Order. Even after entry of the Approval Order, the Debtors can

terminate the Merger Agreement if they receive a "Superior Proposal." Conversely, BHE is bound pending entry of the Approval Order. BHE has committed $9 billion in capital and continues to spend money on professionals and devote time of key personnel to seeking to implement the transactions under the Merger Agreement and to obtain PUCT and other necessary regulatory approvals. It would be commercially unreasonable for BHE to commit this type of capital and expend this level of resources, and not have the Merger Agreement approved (thereby binding the EFH/EFIH Debtors) in a reasonable amount of time.

11. It is patently unrealistic for Elliott to blithely assume that BHE will agree to waive its right to terminate and agree to remain committed to a contract in which BHE has committed $9 billion in cash and is bound to continue spending time and money, with no protections whatsoever because the EFH/EFIH Debtors have not obtained the Approval Order. The milestones negotiated in the Merger Agreement reflect a key component of the business deal for BHE. The Objections ignore that the terms of the Merger Agreement are an integrated whole.

12. As stated above, BHE will not waive the Approval Order milestone in the Merger Agreement. However, this may be the result Elliott is actually intending through its objection. Perhaps acknowledging that it will not be able to persuade the Court to deny entry of the Merger Agreement on the merits, Elliott's request, if granted, effectively kills the Merger Agreement by preventing the hearing on the Approval Order within the contractual milestones. Contemporaneous with its efforts to kill the Merger Agreement, Elliott is seeking to find the financing for a hypothetical competing bid and hopes that someday if it has a concrete proposal it may be able to persuade the PUCT to accept a proposal that leaves more than $5.5 billion of debt and preferred equity at reorganized EFIH. Nothing that Elliott has submitted to date suggests that the PUCT would ever support a transaction with this structure.

**C. The Merger Agreement Is Not Conditioned On BHE's Acquisition Of The Minority Interest In Oncor.**

13. In an unfounded effort to make it appear that BHE's Merger Agreement may be more contingent than it really is, perhaps to make the drastic differences in likelihood of implementation between the BHE Merger Agreement and Elliott's unfunded hypothetical alternative that has no current regulatory support appear slightly less daunting, Elliott erroneously states that a condition to BHE's obligation to close is that it must acquire the 20% Minority Interest in Oncor that the EFH/EFIH Debtors do not own. BHE intends to pursue a consensual acquisition of TTI's Minority Interest. Only if a consensual deal were not reached would litigation to enforce the drag-along rights become necessary. Even then, the condition in section 7.2(f) of the Merger Agreement provides it may be satisfied by obtaining a Court ruling and not that the minority interest acquisition close, as follows:

> (i) The TTI Minority Interest Acquisition shall have occurred or (ii) the Bankruptcy Court shall have entered an order to the effect that the Drag-Along Rights are valid and enforceable with respect to TTI in connection with the transactions contemplated hereby and that the Company is entitled to enforce the Drag-Along Rights if the total payments TTI receives in connection with the transactions contemplated hereby satisfy the IRR Hurdle, provided, however that nothing in this condition requires that the Bankruptcy Court issue an order finding that the total payments TTI receives in connection with the transactions contemplated hereby in fact satisfy the IRR Hurdle.

14. In connection with the Hunt transaction, this Court previously heard and considered argument and evidence regarding the enforcement of EFH Corp.'s Drag-Along Rights with respect to TTI's Minority Interest. While BHE will pursue a consensual agreement with TTI, any closing condition with respect to the Merger Agreement can be satisfied with a ruling by this Court on issues it has previously heard, and for which this Court had previously indicated it would grant relief. As a result, while BHE will seek to acquire TTI's Minority Interest in Oncor prior to

closing, that acquisition is not a condition to closing, and should not impact the timeline and milestones contemplated under the Scheduling Motion and the Merger Agreement.

**CONCLUSION**

15. Accordingly, for the reasons set forth herein and in the Debtors' Reply, BHE respectfully requests that the Court overrule the Objections and grant the relief requested in the Scheduling Motion.

Dated: July 22, 2017
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

/s/ William E. Chipman, Jr.

William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Facsimile: (302) 295-0199
Email: chipman@chipmanbrown.com
olivere@chipmanbrown.com

—and—

Jeffrey C. Krause (admitted *pro hac vice*)
Daniel B. Denny (admitted *pro hac vice*)
Michael S. Neumeister (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
Email: JKrause@gibsondunn.com
Email: DDenny@gibsondunn.com
Email: MNeumeister@gibsondunn.com

*Counsel for Berkshire Hathaway Energy Company*