## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 11430, 11506, 11553, 11564** |
| | ) | |

### THE DEBTORS' OBJECTION TO THE ELLIOTT FUNDS' MOTION TO ADJOURN THE HEARING ON THE MOTION OF THE EFH/EFIH DEBTORS FOR ORDER AUTHORIZING ENTRY INTO MERGER AGREEMENT AND APPROVING TERMINATION FEE

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] file

this objection (this "Objection") to the *Elliott Funds' Motion to Adjourn Hearing on the Motion*

*of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving*

*Termination Fee* [D.I. 11506] (together with the joinders filed by Sunrise Partners Limited

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of Debtors in these chapter 11 cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the *Debtors' Reply in Support of the Motion of the EFH/EFIH Debtors for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11553] (the "Scheduling Reply") and the declaration filed in support of the Scheduling Reply [D.I. 11564], the "Scheduling Declaration").

Partnership [D.I. 11508] and UMB Bank, N.A. [D.I. 11510], the "Motion to Adjourn").  The

Debtors respectfully state as follows[3]:

## OBJECTION

1.    The Motion to Adjourn should be denied, and the Court should consider the

Merger Agreement and the Disclosure Statement as scheduled on August 10th and August 11th,

respectively.

2.    Elliott's requested adjournment renders the Merger Agreement terminable by

Berkshire.  As fiduciaries for all of their stakeholders, the Debtors must weigh the actual and

potential risks of adjourning against the actual and potential benefits of taking such action.

Notably, the EFH Indenture Trustee (a fiduciary for EFH unsecured creditors) filed a statement

in support of the existing dates [D.I. 11554].

3.    The risks of adjournment are not illusory—they are actual, cognizable risks.  In its

joinder to the Scheduling Reply [D.I. 11585] (the "BHE Joinder"), Berkshire stated:  "If the

Approval Order milestone is not met, BHE will terminate the Merger Agreement."    BHE

Joinder, ¶ 9.  Indeed, as the record will show at the Merger Agreement hearing, the milestones in

the Merger Agreement are part of a holistic, integrated business deal in which the Debtors

obtained, among other significant benefits, zero financing contingencies and general regulatory

consensus from eight key intervenors, including the PUCT Staff—the absence of which has been

the primary obstacle in the Debtors' past emergence efforts.  There is no indication (let alone any

guarantee) that any other potential investor could ever obtain both the financing commitments

and the general regulatory consensus underlying the Merger Agreement.

---

[3] The Debtors hereby incorporate by reference the Scheduling Reply, the Scheduling Declaration, and all arguments and exhibits contained therein.

4.      By the time of the Debtors' proposed hearing date on the approval of the Merger Agreement (August 10, 2017), 35 days will have elapsed from the date the Merger Agreement was executed.    Berkshire has been exposed for this entire period, during which any party (including Elliott) could have topped Berkshire's public bid.    Berkshire would have had no opportunity to recoup its costs incurred in connection with execution of the Merger Agreement and no recourse to the Termination Fee under the Merger Agreement during that period.    The milestones in the Merger Agreement were specifically negotiated to prevent Berkshire's offer from being exposed to the market for more than 45 days—an ask that would likely be made by the vast majority of reasonable, credit-worthy investors infusing $9 billion into a capital structure.

5.      In contrast, the lack of financing commitments and regulatory support behind the transaction that Elliott is trying to develop make clear that there are no actual benefits associated with adjourning the proposed hearings.    The potential benefits are difficult to assess.    As detailed in the Scheduling Reply, Elliott's extensive misstatements and mischaracterizations to the Court, the PUCT Staff, and the Debtors regarding, among other things, the level of support for its transaction (and the assistance it has received from the Debtors) raise serious concerns as to whether Elliott will be able to develop a transaction that could ever coalesce into a higher or otherwise better offer than the Merger Agreement.    A higher or otherwise better offer would have to include not only the same amount of distributable value (or more) as provided under the Merger Agreement but also the same level of regulatory consensus (or more).

6.      Elliott's own pleadings indicate that it believes its proposal (to the extent it coalesces), will provide an additional $300 million in distributable value.    *See The Elliott Funds' Objection to the Motion of the EFH/EFIH Debtors for Entry of an Order Scheduling Certain*

*Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11505], ¶ 4.  This theoretical benefit is mitigated by the fact that the Debtors are currently accruing a combined $50 million in interest on account of the EFIH DIP facility and EFIH second lien notes, in addition to professional fees, all of which erode unsecured creditor recoveries.   Granting Elliott's proposed adjournments would push the Disclosure Statement Hearing to approximately September 19, 2017, effectively pushing back the solicitation deadline to October 5, 2017 (to accommodate 10 business days for service of a new Plan).  After factoring in the Plan objection deadline (28 days), the Debtors' Plan reply deadline, and evidentiary deadlines, an Elliott Confirmation Hearing could not begin until well into November.  For every month the Debtors languish in chapter 11, another $50 million (or 16.67% of the proposed incremental benefit of the transaction that Elliott is seeking to develop) moves from the hands of unsecured creditors to satisfy interest obligations.

7.      As of today, Elliott has had 69 days since signing its latest NDA with the Debtors to obtain financing and regulatory commitments.  To date, Elliott has failed.  During those 69 days, more than $100 million in interest fee obligations and several million in professional fee obligations depleted unsecured creditor recoveries.  Between today and August 10th, Elliott will have another 16 days to push forward on its proposal, for a total of 85 days.

8.      The Motion to Adjourn is replete with excuses for the obstacles Elliott allegedly faced in its capital raise and PUCT-related discussions.  As detailed in the Scheduling Reply, the perceived obstacles are simply excuses that are contradicted by the record of negotiations and/or the product of Elliott's own actions (*e.g.*, Elliott agreeing to adjourn the PIK PSA litigation

4

schedule twice, only to then argue that the PIK PSA litigation impeded its capital raise efforts). After wading through the excuses and misstatements, the Court should be highly skeptical of Elliott's promises and representations of what it can allegedly do with another 30-45 days that it has not been able to do in the last 69 days.

9.      The Debtors and their stakeholders should not bear the risk of Elliott's failures when the associated cost is the termination of the Merger Agreement. The potential benefits of Elliott's proposal are difficult to evaluate in the vacuum Elliott created by failing to provide any details regarding credit-worthy and willing financing sources (to the extent they exist) and regulatory commitments. If, however, Elliott is ultimately able to propose a higher or otherwise better offer to the Debtors, the Debtors would be obligated to (and eager to) explore such offer. The Merger Agreement provides the Debtors with such an opportunity.

10.      Elliott has dismissed the Debtors' ability to terminate the Merger Agreement after the approval hearing, referring to the Debtors' fiduciary out under the Merger Agreement as "illusory," because any higher or otherwise better will likely have to account for the potential termination fee under the Merger Agreement. As the record at the hearing to consider approval of the Merger Agreement will show, the Debtors' fiduciary out in the Merger Agreement (together with the milestones, the financing terms, and the regulatory commitments in the Merger Agreement) are part of an integrated transaction and are informed by three years of sales efforts and two prior unconsummated merger agreements. Cherry-picking provisions in the Merger Agreement is simply not an option.

11.      It bears repeating that the Debtors are fiduciaries for *all* of their stakeholders. In that capacity, they must weigh the costs and benefits—the "gives and gets"—of any proposed action. Here, the costs of adjourning the hearing to consider approval of the Merger Agreement

5

and the Disclosure Statement include termination of the Merger Agreement, further erosion of unsecured creditor recoveries, and continuing chapter 11 purgatory for the Debtors and their stakeholders.  On the other hand, the sole benefit of adjourning the hearing is that it provides Elliott with another 30-45 days to accomplish what it has been unable to accomplish in the last 69 days (the viability of which is questionable given Elliott's recent spate of misstatements and mischaracterizations regarding its restructuring efforts).  The Debtors believe the choice is clear and ask that the Court deny the relief requested in the Motion to Adjourn.

12.     While it is appropriate for the Court to deny the Motion to Adjourn under the circumstances, the Court could alternatively adjourn the Motion to Adjourn to August 10th to see whether Elliott is able to provide the Court, the Debtors, and other stakeholders with a higher or otherwise better proposal.

*[Remainder of page intentionally left blank.]*

6

Dated: July 25, 2017
      Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
          defranceschi@rlf.com
          madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
          stephen.hessler@kirkland.com
          brian.schartz@kirkland.com
          aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
          marc.kieselstein@kirkland.com
          chad.husnick@kirkland.com
          steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession