## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE | ) | Case No. 14-10979 (CSS) |
| HOLDINGS CORP., *et al.*, | ) | |
| | ) | (Jointly Administered) |
| *Debtors.* | ) | |
| | ) | |

## NOTICE OF DEPOSITION OF THE EFH/EFIH DEBTORS
## PURSUANT TO FED. R. CIV. P. 30(b)(6)

**TO:** Counsel for the above-captioned Debtors.

| | |
|---|---|
| Mark D. Collins, Esq. | Edward O. Sassower, Esq. |
| Daniel J. DeFranceschi, Esq. | Stephen E. Hessler, Esq. |
| Jason M. Madron, Esq. | Brian E. Schartz, Esq. |
| Richards, Layton & Finger, P.A. | Aparna Yenamandra, Esq. |
| 920 North King Street | Kirkland & Ellis LLP |
| Wilmington, DE 19801 | Kirkland & Ellis International LLP |
| | 601 Lexington Avenue |
| | New York, NY 10022 |
| | |
| -and- | -and- |
| | |
| Mark E. McKane, P.C. | James H.M. Sprayregen, Esq. |
| Kirkland & Ellis LLP | Chad J. Husnick, Esq. |
| Kirkland & Ellis International LLP | Marc Kieselstein, Esq. |
| 555 California Street | Steven N. Serajeddini, Esq. |
| San Francisco, CA 94104 | Kirkland & Ellis LLP |
| | Kirkland & Ellis International LLP |
| | 300 North LaSalle |
| | Chicago, IL 60654 |

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil

Procedure, as made applicable by Rule 7030 of the Federal Rules of Bankruptcy Procedure, and

the Local Rules of Bankruptcy Practice and Procedure for the United State Bankruptcy Court for

the District of Delaware, Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership  (collectively, "Elliott" or the "Elliott Funds"), by their counsel of record, will take the deposition upon oral examination of Energy Future Intermediate Holding Company LLC ("EFIH") and Energy Future Holdings Corp. ("EFH") (collectively, the "Debtors" or the "EFH/EFIH Debtors") in connection with the *Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee*, dated July 7, 2017 [D.I. 11430].  The deposition will take place on August 7, 2017 at a time and location to be mutually agreed upon by the parties.  The testimony will be recorded by stenographic and audiovisual means and will continue from day to day until completed.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Federal Rule of Bankruptcy Procedure 7030 and Federal Rule of Civil Procedure 30(b)(6), the Debtors must designate one or more persons to testify on their behalf with regard to all matters known or reasonably available to them on the matters set forth in **Schedule A** attached hereto.  Elliott requests that the Debtors provide, as soon as reasonably possible, a written designation of the name(s) and position(s) of the persons who consent to testify on behalf of the Debtors.

Date:  July 25, 2017
      Wilmington, DE

BAYARD, P.A.

*/s/ Erin R. Fay*_____ _____ _____
Scott D. Cousins (No. 3079)
Erin R. Fay (No. 5268)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
E-mail:scousins@bayardlaw.com
      efay@bayardlaw.com
      emiller@bayardlaw.com

--and--

ROPES & GRAY LLP
Keith H. Wofford
Gregg M. Galardi
D. Ross Martin
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: 212-596-9000
Facsimile:  212-596-9090
Email: Keith.Wofford@ropesgray.com
        Gregg.Galardi@ropesgray.com
        Ross.Martin@ropesgray.com

*Counsel to The Elliott Funds*

### SCHEDULE A – 30(b)(6) TOPICS
### CONCERNING MERGER APPROVAL MOTION

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and Rules 7030, and 9014 of the Federal Rules of Bankruptcy Procedure, the Debtors are required to designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on their behalf with respect to each of the subjects set forth below.  In addition, the Debtors are requested to provide Elliott with written notice, at least one business day in advance of the deposition, of the name and employment position of the designee who consents to testify on behalf of the Debtors.

This deposition seeks testimony that may be relevant to the *Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee*, dated July 7, 2017 ("Merger Approval Motion") [D.I. 11430].  The requesting parties reserve all rights to seek additional testimony in connection with subsequent phases of this proceeding.

### <u>DEFINITIONS</u>

The following definitions of terms apply to the deposition topics contained herein. Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

A.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

B.      "Berkshire" means Berkshire Hathaway Energy Company and any current or former parents, subsidiaries, or affiliates thereof, and any current or former officer, director, partner, agent, employee, or attorney thereof.

C.      "Berkshire Merger Agreement" means the Agreement and Plan of Merger, dated as of July 7, 2017, between Berkshire and the Debtors.

D.    "Berkshire Transaction" means (i) the proposed merger between Berkshire and Debtors whereby Berkshire would acquire an approximately 80% ownership stake in Oncor and related transactions, as contemplated by the Berkshire Merger Agreement, and (ii) any other actual or potential Transaction by and among Berkshire and Debtors.

E.    "Board" means the board of directors or board of managers of EFH or EFIH, including without limitation any subcommittee of any board of directors or managers and any individual member of any such board or subcommittee.

F.    "Chapter 11 Cases" means the chapter 11 cases, commenced by the Debtors in the Bankruptcy Court on April 29, 2014.

G.    "Communication" means the transmittal of information in any form.

H.    "Concerning," whether capitalized or not, means relating to, referring to, describing, evidencing, reflecting, regarding, constituting, discussing, mentioning, noting, memorializing, analyzing, commenting upon, evaluating, having any connection with, or having a tendency to prove or disprove.

I.    "Conflict Matter" shall have the definition set forth in the EFIH Board of Managers Resolutions, dated November 7, 2014 and December 9, 2014.

J.    "Debtors" or "EFH/EFIH Debtors" means, collectively, Energy Future Intermediate Holding Company LLC ("EFIH") and Energy Future Holdings Corp. ("EFH"), and any of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

K.    "Elliott" or the "Elliott Funds" mean Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership, and any current or former officer, director, partner, agent, employee, or attorney thereof, and any current or former parents, subsidiaries, or affiliates

of the above-listed companies.

L.      "Governor of Texas" means the Office of the Texas Governor, Governor Greg Abbott, any current or former officer, director, partner, agent, employee, or attorney thereof, and any former governor of Texas.

M.      "Joint Plan of Reorganization," means the Joint Plan of Reorganized, filed on July 7, 2017.

N.      "IRS" means the Internal Revenue Service.

O.      "Lieutenant Governor of Texas" means the Office of the Texas Lieutenant Governor, Lieutenant Governor Dan Patrick, and any current or former officer, director, partner, agent, employee, or attorney thereof, and any former lieutenant governor of Texas.

P.       "Merger Agreement Motion" means the Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee, dated July 7, 2017. [D.I. 11430]

Q.      "NextEra Transaction" means the proposed merger and related transactions between NextEra and Debtors whereby NextEra proposed to acquire an approximately 80% ownership stake in Oncor, as contemplated by the Agreement and Plan of Merger, dated as of July 29, 2016, between NextEra and Debtors.

R.      "NextEra" means NextEra Energy, Inc., and any current or former parents, subsidiaries, or affiliates thereof, and any current or former officer, director, partner, agent, employee, or attorney thereof.

S.      "Oncor" means Oncor Electric Delivery Company LLC, Oncor Electric Delivery Holdings Company LLC, and any current or former officer, director, partner, agent, employee, or attorney thereof.

T.      "OPUC" means the Texas Office of Public Utility Counsel.

U.      "Person" or "persons," whether capitalized or not, means any natural person or legal entity, including, without limitation, any business or governmental entity or association.

V.      "PUCT" means the Public Utility Commission of Texas, and any current or former commissioner, employee, agent, or attorney thereof.

W.      A "representative" of a person or an entity means any officer, director, partner, agent, employee, or attorney of such person or entity.

X.      "Steering Committee of Cities Served by Oncor" means that certain group of Oncor customers represented by Lloyd Gosselink Rochelle & Townsend, P.C.

Y.      "Texas Attorney General" means the Office of the Attorney General of the State of Texas, any current or former officer, director, partner, agent, employee, or attorney thereof, and any former attorney general of Texas.

Z.      "Texas Industrial Energy Consumers" means that certain group of Oncor customers represented by Thompson & Knight LLP.

AA.     "Transaction" means any actual or potential transaction for the direct or indirect sale or other disposition of EFIH's interest in Oncor, including by way of a merger, acquisition, a chapter 11 plan, or otherwise.

BB.     "You" and "your" mean the person responding to this Subpoena, and any of its, his, or her respective agents, assigns, representatives, attorneys, advisors and other persons acting or purporting to act for or on its, his, or her behalf.

## RULE 30(b)(6) DEPOSITION TOPICS

1.      Board consideration or discussion concerning the Berkshire Transaction and/or the termination fee thereunder, any actual or potential Transaction proposed by Elliott, including

without limitation any analyses concerning termination or break fees and/or recoveries by EFIH unsecured creditors.

2.      Any actual or potential Transaction with Elliott, including analyses and Communications concerning such an actual or potential Transaction.

3.      The termination fees contemplated by the Berkshire Merger Agreement, including the allocation of any termination fee or the impact of such allocation on any recovery by Elliott or any other EFH or EFIH creditor.

4.      Any termination fees that may be alleged to be payable in connection with the NextEra Transaction, including (i) any analyses or Communications concerning the timing of the termination of the NextEra Transaction and announcement of the Berkshire Transaction, and (ii) the allocation of any termination fee or the impact of such allocation on any recovery by Elliott or any other EFH or EFIH creditor.

5.      Communications and analyses concerning the Berkshire Merger Agreement, including without limitation the (i) likelihood and timing of obtaining the Supplemental Rulings, as defined in Section 6.14 of the Berkshire Merger Agreement, (ii) confirmability of the Joint Plan of Reorganization, filed on July 7, 2017, and/or (iii) the likelihood of Bankruptcy Court approval of the Berkshire Transaction and/or the termination fee thereunder.

6.      The initial proposal submitted by Berkshire referenced in paragraph 26 of the Merger Agreement Motion and the decision to move forward with the NextEra Transaction instead of the proposal submitted by Berkshire.

7.      Communications with any financial or other advisor concerning the Berkshire Transaction or any proposed Transaction with Elliott.

8.      Communications with Oncor concerning the Berkshire Transaction or any

proposed Transaction with Elliott, including without limitation Communications concerning any application, submission, or communication to or with PUCT.

9.      Communications concerning the PUCT's consideration, approval, or disapproval of the Berkshire Transaction, the NextEra Transaction, and/or any Transaction proposed by Elliott, including without limitation Communications concerning the likelihood of any such approval or disapproval by PUCT.

10.     The Debtors' efforts to secure regulatory approval from PUCT in connection with the Berkshire Transaction, including Berkshire's proposed regulatory commitments and Communications with Oncor, PUCT, OPUC, the Steering Committee of Cities Served by Oncor, Texas Industrial Energy Consumers, the Texas Attorney General, the Governor of Texas, the Lieutenant Governor of Texas, and any other actual or potential intervener.

11.     Confidentiality agreements considered, negotiated, executed, and/or terminated by the Debtors, their advisors in connection with the Berkshire Transaction.

12.     Valuations of the Berkshire Transaction.

13.     Valuations of any Transaction proposed by Elliott.

14.     Communications, whether direct or indirect, with news organizations (including but not limited to print, television, and Internet-based outlets such as Bloomberg L.P.) regarding the Berkshire Transaction and any other Transaction considered by the Debtors, and any other matter in the Chapter 11 Cases.

15.     The "key open issues" impeding an Elliott-sponsored Transaction, including those set forth in the letter dated July 7, 2017 from Chad J. Husnick to Gregg M. Galardi, including: (i) "the current absence of any committed financing," (ii) the fundamental disagreement on how to mitigate the Debtors' significant liquidation risk in the event the proposed DIP facilities are

funded but the Elliott-sponsored transaction does not close," (iii) "Elliott's insistence on conditions for any settlement between the disinterested directors of an allocation, if payable, of the NextEra termination fee," (iv) "the comparatively limited certainty of closing associated with an Elliott-sponsored transaction compared to the BHE-sponsored transaction," (v) "the appropriate construct of the Debtors' fiduciary out, specifically regarding 'Superior Proposals,'" and (vi) "the unknown timeline associated with confirming and consummating an Elliott-sponsored transaction."