# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date:  To Be Determined** |
| | ) | **Objection Deadline:  August 18, 2016 at 4:00 p.m.** |

## MOTION OF THE EFH/EFIH DEBTORS
## FOR ORDER (A) AUTHORIZING ENTRY INTO MERGER
## AGREEMENT, (B) APPROVING TERMINATION FEE, AND (C) AUTHORIZING
## ENTRY INTO AND PERFORMANCE UNDER PLAN SUPPORT AGREEMENT

Energy Future Holdings Corp. ("EFH Corp."), certain of its direct and indirect subsidiaries (together with EFH Corp., the "EFH Debtors"),[2] Energy Future Intermediate Holding Company LLC ("EFIH"), and EFIH Finance, Inc. (together with EFIH, the "EFIH Debtors," and together with the EFH Debtors, the "EFH/EFIH Debtors") file this motion ("Motion") seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Approval Order"):  (a) (i) authorizing the EFH/EFIH Debtors to enter into the Agreement and Plan of Merger, attached hereto as **Exhibit 1** to **Exhibit A** (the "Merger Agreement"), with NextEra Energy, Inc. ("NextEra") and EFH Merger Co., LLC, a wholly-

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]   The other EFH Debtors are Ebasco Services of Canada Limited, EEC Holdings, Inc., EECI, Inc., EFH Australia (No. 2) Holdings Company, EFH Finance (No. 2) Holdings Company, EFH FS Holdings Company, EFH Renewables Company LLC, Generation Development Company LLC, LSGT Gas Company LLC, LSGT SACROC, Inc., NCA Development Company LLC, and TXU Receivables Company.

owned subsidiary of NextEra (the "Merger Subsidiary"), and (ii) approving the payment of a termination fee to NextEra (the "Termination Fee") as an allowed administrative expense claim payable when due without further order of the Court, and (b) approving and authorizing the EFH/EFIH Debtors to enter into and perform under the plan support agreement, attached hereto as **Exhibit 2** to **Exhibit A** (the "PSA"), with the other parties thereto (the "PSA Parties").

In support of this Motion, the EFH/EFIH Debtors file (a) the *Declaration of William O. Hiltz in Support of the Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* and (b) the *Declaration of David Ying in Support of the Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into and Performance Under Plan Support Agreement*, both filed substantially contemporaneously herewith. In further support of this Motion, the EFH/EFIH Debtors respectfully submit as follows.

## Preliminary Statement

1.      The Merger Agreement and PSA are the basis for a value-maximizing transaction that collectively brings billions of dollars of cash and stock of NextEra into the EFH/EFIH Debtors' estates and sets the stage for the EFH/EFIH Debtors to confirm a plan of reorganization and emerge from chapter 11.  Specifically, NextEra will repay the EFIH first lien DIP facility as part of its contribution of approximately $9.5 billion—which is primarily cash but also includes stock (initially issued as stock of Reorganized EFH Corp. and later exchanged for stock of NextEra, a highly liquid, publicly-traded security listed on the New York Stock Exchange)— subject to post-closing adjustments.  As a result, the EFH/EFIH Debtors project that, assuming among other things a first quarter 2017 emergence, EFIH secured debt will be repaid in full,

2

EFIH unsecured claims will receive an estimated 100% recovery, and creditors of EFH Corp. will receive a recovery based, in part, on the adjusted estimated cash on hand at EFH Corp., plus anticipated additional cash.  The mixture of cash and NextEra common stock to be received is subject to allocation methodologies designed to ensure the satisfaction of certain tax requirements related to both the Merger and the spin-off of TCEH.

2.     The EFH/EFIH Debtors determined to enter into this transaction after an extensive marketing of their economic interest in Oncor over a period of years.  Virtually every available alternative has been considered and attempted, including a standalone equitization and a REIT restructuring.   The asset has been marketed formally and informally since 2014, including under a multistage Court-approved bidding process.  Beginning in May of this year, the Debtors reengaged all of the active participants in the original bidding process, and received interest from multiple bidders.   After this extensive and exhaustive process, the EFH/EFIH Debtors determined that the Merger Agreement represents the highest and best proposal to restructure their balance sheets, maximize creditor recoveries, and exit from bankruptcy.

3.     Critically, the Merger Agreement has no financing contingency and collectively provides billions of dollars in cash and stock consideration backed by the commitment of a publicly-traded company with a robust balance sheet, a credit rating that is among the strongest in the utility industry, an equity market capitalization of approximately $59 billion, and commitment to clean energy.  The Debtors have a specific performance right against NextEra and a fiduciary out to the extent they receive a higher or otherwise better proposal.  The transaction also permits the tax-efficient separation of the TCEH Debtors as contemplated by their ongoing confirmation process.

3

4.     The Merger Agreement is the result of hard-fought negotiations with NextEra beginning as far back as the summer of 2014.  Given the value of the consideration provided and the firmness of the commitment, the Merger Agreement is the clear choice to permit the EFH/EFIH Debtors to emerge from these chapter 11 cases.  Thus, the EFH/EFIH Debtors respectfully submit that entry into the Merger Agreement and PSA is a sound exercise of their business judgment and request that the Court approve the Motion.

## **Jurisdiction, Venue, and Procedural Background**

5.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

6.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.     The bases for the relief requested in this Motion are sections 105, 363(b), 503(b), 507(a)(2), and 1125 of title 11 of the United States Code (the "Bankruptcy Code") and rule 9006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

4

9.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary

petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating

their businesses and managing their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  Further information regarding the Debtors'

business operations and capital structure is set forth in the declaration of Paul Keglevic in

support of the Debtors' first day motions [D.I. 98] and the *Third Amended Disclosure Statement*

*for the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al.*,*

*Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8747].

## Relief Requested

10.     By this Motion, the EFH/EFIH Debtors respectfully request that the Court enter

the Approval Order, substantially in the form attached hereto as **Exhibit A**, (a) (i) authorizing the

EFH/EFIH Debtors to enter into the Merger Agreement and (ii) approving the Termination Fee

as an allowed administrative expense claim payable when due without further order of the Court;

and (b) approving and authorizing the EFH/EFIH Debtors to enter into and perform under the

PSA.

## Background

11.     The EFH/EFIH Debtors' indirect economic interest in Oncor Electric Delivery

Company LLC ("Oncor") has undergone an extensive formal and informal marketing process in

these chapter 11 cases over a period spanning more than two years.

**I.      Formal Two-Stage Marketing of the Debtors' Interest in Oncor.**

12.     In January of 2015, the Court approved bidding procedures governing a formal,

two-stage marketing process for the Oncor interest [D.I. 3295].  For over six months after entry

of that order, the EFH/EFIH Debtors aggressively marketed the Oncor interest to a wide range of

5

potential bidders through the Court-approved process.  Throughout the process, the EFH/EFIH Debtors consulted with the conflicts matters advisors and the advisors to the EFH and TCEH creditors' committees, including on twice-weekly standing update calls.

13.    After entry of the bidding procedures order, the EFH/EFIH Debtors and their advisors circulated a process letter to over 50 potential strategic and financial bidders.  The process letter explained the opportunity to bid for the EFH/EFIH Debtors' economic interests in Oncor and invited the potential bidders to participate in the process.  Twenty-eight of these potential bidders requested and received nondisclosure agreements and 17 signed them, gaining access to an extensive electronic data room maintained by the EFH/EFIH Debtors.  Over the following weeks, potential bidders held diligence calls and meetings with the EFH/EFIH Debtors' advisors, and a number of the most interested bidders met with Oncor management.

14.    Excluding creditors, the EFH/EFIH Debtors received two first round bids and two second round bids.  The EFH/EFIH Debtors negotiated both value and key terms with these bidders over a period of months.   After receiving second round bids, the EFH/EFIH Debtors simultaneously negotiated definitive documentation of the two final third-party bids while continuing to advance plan discussions with creditor constituencies.  Ultimately, both remaining third-party acquisition proposals dissipated.  Toward the end of June of 2015, the EFH/EFIH Debtors determined that the Oncor bidding process had not yielded a sufficiently high offer to justify selecting a stalking horse.  Accordingly, the EFH/EFIH Debtors declined to do so and instead shifted their focus to the ongoing plan negotiations.

## II.    The Hunt Merger Agreement and the Original Plan.

15.    One of the third-party bids received through the Court-approved marketing process was submitted by Hunt Consolidated, Inc. and certain co-investors (collectively,

6

the "Hunt Consortium").  After the formal Oncor marketing process terminated, *ad hoc* groups of

TCEH creditors submitted a compromise proposal to the EFH/EFIH Debtors that contemplated a

Hunt Consortium-sponsored merger with reorganized EFH Corp. (the "Hunt Merger").   The

Hunt Merger contemplated that Oncor would be restructured to permit reorganized EFH Corp. to

convert to a real estate investment trust ("REIT") for federal income tax purposes.  The proposal

from the TCEH creditors also contemplated a global settlement of ongoing disputes, lien

challenges, and legacy litigation.

16.     In August of 2015, the Debtors, the Hunt Consortium, and various TCEH creditor

parties entered into a plan support agreement contemplating the Hunt Merger (the "Original

PSA").    The Bankruptcy Court approved the Debtors' entry into the Original PSA on

September 18, 2015, and confirmed the plan of reorganization authorizing the Hunt Merger

(the "Original Plan") on December 9, 2015 [D.I. 6097, 7285].

17.     After confirmation of the Original Plan, the Debtors worked tirelessly to

effectuate the transaction.   Under the Original PSA, the parties' obligations to support the

Original Plan could terminate under certain circumstances on April 30, 2016 unless all required

regulatory approvals from the Public Utility Commission of Texas ("PUCT") had been obtained.

The Original PSA, however, contains provisions governing an alternative restructuring that

remain in effect even after the termination of those primary plan support obligations

(the "Alternative Restructuring").

18.     On March 24, 2016, the PUCT entered an order regarding the Oncor change of

control application submitted by the Hunt Consortium and Oncor.   The PUCT order contained

certain required commitments for Oncor and the Hunt Consortium related to the Hunt Merger

that were unacceptable to the Hunt Consortium.   Accordingly, on April 30, 2016, certain

members of the Hunt Consortium as parties to the PSA indicated that they would not elect certain voluntary extensions of the outside date under the Original PSA.  As a result, on May 1, 2016, the ad hoc group of TCEH first lien creditors delivered a plan support termination notice to the parties to the Original PSA, which caused the Original Plan to be null and void.  Shortly thereafter, the EFH/EFIH Debtors terminated the Hunt Merger agreement.

19.     Importantly, while the occurrence of this termination event terminated the parties' obligations to support the Original Plan, it did not terminate the Original PSA.  The Alternative Restructuring provisions of the Original PSA remain in effect, which generally obligate the TCEH junior creditor parties to refrain from objecting to an alternative plan that meets certain requirements.

### III.     The Amended Plan on the E-Side.

20.     After the termination of the Original Plan, the Debtors immediately began implementing their contingency plans.  On the T-side, the core framework for the TCEH restructuring had already been established and largely agreed by the key stakeholders through the Alternative Restructuring provisions of the Original PSA.  TCEH would be spun-off in a tax-free manner (in conjunction with a related taxable transaction designed to result in a step-up in the tax basis of certain of TCEH's assets using net operating losses of the EFH Corp. consolidated tax group) to the TCEH first lien creditors with a $550 million cash recovery to TCEH junior creditors, as contemplated by the Alternative Restructuring provisions.  Given that there was more work to be done on the E-side, the Debtors and parties in interest began to coalesce around the construct that TCEH would be spun-off and emerge from chapter 11 before the E-side, a process that is now well underway.

8

21.     On the E-side, as soon as it became clear that the Original Plan would terminate, the Debtors moved to rapidly restart negotiations with EFH Corp. and EFIH creditors regarding a potential standalone plan in which reorganized EFH Corp. equity was allocated among existing creditors.   To that end, the EFH/EFIH Debtors submitted a standalone plan proposal to the advisors to various E-side and T-side creditors at the end of April 2016.   After years of such negotiations, however, the EFH/EFIH Debtors were aware of the distinct challenges associated with causing EFH Corp. and EFIH creditors to agree to allocations of reorganized EFH Corp. equity.

22.     Informed by that experience, the EFH/EFIH Debtors also refreshed the Oncor marketing process promptly after the Original Plan terminated in April 2016.   In particular, the EFH/EFIH Debtors contacted 18 potential strategic and financial bidders, most of which were parties that had previously shown at least some level of interest, and sent process letters to 15 of them.   Of those parties, eight parties signed nondisclosure agreements and obtained access to an updated electronic data room.

23.     Of the potential bidders, NextEra was the most engaged from the outset.   NextEra is a leading clean energy company with consolidated revenues of approximately $17.5 billion and approximately 14,300 employees in 27 states and Canada as of year-end 2015, as well as approximately 45,000 megawatts of generating capacity.   Headquartered in Juno Beach, Florida, NextEra's principal subsidiaries are Florida Power & Light Company, which serves more than 4.8 million customer accounts in Florida and is one of the largest rate-regulated electric utilities in the United States, and NextEra Energy Resources, LLC, which, together with its affiliated entities, is the world's largest generator of renewable energy from the wind and sun.   Its common stock is listed on the New York Stock Exchange at a market capitalization of approximately $59

billion. Moreover, NextEra has among the strongest credit ratings in the utility industry. NextEra has had a longstanding interest in acquiring the Debtors' economic interest in Oncor, dating back to before the Court entered the bidding procedures order in January of 2015.

24.     Two other bidders, in addition to NextEra, engaged in extensive negotiations with the EFH/EFIH Debtors after termination of the Original Plan. With one of those other bidders, negotiations progressed to definitive documentation. Throughout the negotiations, the EFH/EFIH Debtors sought to use the multiple-bidder dynamic to obtain the highest and otherwise best terms and conditions, including, in particular, on the overall value of the bids. Ultimately, after three months of intensive multiparty negotiations, the boards of directors and managers of EFH Corp. and EFIH approved the execution of the Merger Agreement and the PSA with NextEra on July 28, 2016. The Debtors will soon file an amended plan of reorganization that contemplates the transaction contemplated by the Merger Agreement and the PSA (the "Amended Plan").

## IV.     Summary of the Merger Agreement.[3]

25.     The Merger Agreement contemplates a merger of EFH Corp. with and into the Merger Subsidiary whereby EFH Corp. will become a wholly-owned subsidiary of NextEra with an approximately $18.3 billion implied Oncor total enterprise value. This includes the repayment of the $5.4 billion EFIH first lien DIP facility as part of NextEra's contribution of approximately $9.5 billion—which is primarily cash plus a small piece of NextEra common stock to ensure continuity of ownership for tax purposes—subject to post-closing adjustments.

---

[3]     The descriptions of the Merger Agreement set forth in this Motion are intended only to serve as a summary of certain provisions of the Merger Agreement and are qualified in their entirety by reference to the Merger Agreement.

26.     Under the Amended Plan, the cash portion of the contribution will be distributed to pay EFIH administrative claims and secured indebtedness before the remainder is distributed to EFIH unsecured creditors together with remaining cash on hand at EFIH.  As a result, the EFH/EFIH Debtors project that, assuming among other things a first quarter 2017 emergence, EFIH secured debt will be repaid in full, EFIH unsecured claims will receive an estimated 100% recovery, and creditors of EFH Corp. will receive a recovery based, in part, on the adjusted estimated cash on hand at EFH Corp., plus anticipated additional cash.  The mixture of cash and NextEra common stock to be received is subject to allocation methodologies designed to ensure the satisfaction of certain tax requirements related to both the Merger and the spin-off of TCEH. Stock to be received by any creditor constituency will be received on the effective date of the Amended Plan.

## A.     Terms and Conditions of Merger Agreement.[4]

27.     The Merger Agreement sets forth the terms and conditions under which reorganized EFH Corp. would merge with and into the Merger Subsidiary, with the Merger Subsidiary surviving.  The following table highlights certain material provisions of the Merger Agreement.

| Provision | Summary of Provision |
|---|---|
| **Representations and Warranties of the Debtor Parties** | The Merger Agreement contains customary representations and warranties of EFH Corp. and EFIH primarily relating to Oncor.  (Merger Agmt., § 5.1) |
| **Representations and Warranties of NextEra** | The Merger Agreement contains customary representations and warranties of NextEra.  (Merger Agmt., § 5.2) |
| **Covenants of the Debtor Parties** | The EFH/EFIH Debtors covenant, subject to certain exceptions, to perform the following acts, among others:<br>• refrain from soliciting, negotiating, or entering into any Alternative Proposal, except with respect to certain pre-existing bidders or in the |

---

[4]   Capitalized terms that are not defined in the table below shall have the meanings ascribed to them in the Merger Agreement.

11

| Provision | Summary of Provision |
|---|---|
| | case of an unsolicited, a written proposal which would reasonably be expected to lead to a Superior Proposal;<br>• pursue and cooperate with the Purchasers in pursuing all necessary regulatory and IRS approvals;<br>• release Reorganized TCEH and its subsidiaries from any and all claims and causes of action; and<br>• enter into the Transition Services Agreement. (Merger Agmt., § 6) |
| **Covenants of NextEra** | The Purchasers covenant, subject to certain exceptions, to perform the following acts, among others:<br>• pursue and cooperate with the Debtors in pursuing all necessary regulatory and IRS approvals;<br>• indemnify each present and former director, manager, member, and officer of the Debtors; and<br>• release Reorganized TCEH and its subsidiaries from any and all claims and causes of action. (Merger Agmt., § 6) |
| **Mutual Conditions** | The EFH/EFIH Debtors' and NextEra's obligations to effect the Closing are subject to the following conditions, among others:<br>• the Court shall have entered final orders approving the Merger Agreement, including the Termination Fee, and the Amended Plan as to the TCEH Debtors and "E-Side Debtors";<br>• no court or other Governmental Entity shall have enacted, issued, promulgated, enforced or entered any Law or order (whether temporary, preliminary or permanent) that is in effect and restrains, enjoins, renders illegal or otherwise prohibits consummation of the Closing Date Transactions;<br>• EFH Corp. and Reorganized TCEH shall have obtained an opinion of nationally recognized counsel or accounting firm selected by EFH Corp. in form and substance reasonably acceptable to EFH Corp. and NextEra at a "should" or higher level, to the effect that the Reorganized TCEH Contributions, Reorganized TCEH Conversion and Reorganized TCEH Spin-Off meet the requirements of Sections 368(a)(1)(G), 355 and 356 of the Code and including the Fundamental Opinions listed in Exhibit I to the Merger Agreement;<br>• the Reorganized TCEH Spin-Off shall have occurred in all material respects in accordance with the Amended Plan and the Private Letter Ruling;<br>• assuming the Closing Date Transactions are consummated, neither EFH Corp. nor any of its Subsidiaries (other than the Oncor Entities) will have any indebtedness for borrowed money immediately following the Effective Time;<br>• the Initial Private Letter Ruling shall remain in full force and effect and shall not have been revoked or withdrawn, and the Supplemental Rulings shall have been obtained by the Company from the IRS in a form reasonably satisfactory to NextEra;<br>• the Tax Matters Agreement shall have been entered into between the EFH Corp. and Reorganized TCEH and shall be in full force and effect and shall not have been amended, modified or supplemented without the consent of NextEra;<br>• the Split Participant Agreement shall have been entered into between Oncor and Reorganized TCEH and shall be in full force and effect and shall not have been amended, modified or supplemented without the |

12

| Provision | Summary of Provision |
|---|---|
| | consent of NextEra; and<br>• shares of Parent Common Stock issuable pursuant to the Agreement shall have been approved for listing on the NYSE. (Merger Agmt., § 7.1) |
| **Conditions to the NextEra's Obligations** | NextEra's obligations to effect the Closing are subject to the following conditions, among others:<br>• the representations and warranties of the Debtors shall be true and correct;<br>• the representations and warranties of Oncor and Oncor Holdings in the Oncor Letter Agreement shall be true and correct;<br>• the Debtors shall have performed in all material respects all obligations required to be performed by it under this Merger Agreement at or prior to the Closing;<br>• Oncor and Oncor Holdings shall have performed in all material respects all obligations required to be performed by it under the Oncor Letter Agreement at or prior to the Closing;<br>• the FERC Approval, the FCC Approval, the PUCT Approval and the Vermont Insurance Approval shall have been obtained and shall remain in full force and effect and the applicable waiting period under the HSR Act shall have expired or been terminated, *provided that*, notwithstanding anything to the contrary included elsewhere in the Merger Agreement, no such consent or approval shall, individually or in the aggregate, impose a Burdensome Condition;<br>• the Debtors shall have received the tax opinion specified in section 7.3(c) of the Merger Agreement;<br>• NextEra shall have received an opinion of Chadbourne & Parke LLP or, under certain circumstances, McDermott, Will & Emery LLP, dated as of the Closing Date, wherein the party providing the opinion opines (1) to the effect that the Merger will qualify as a reorganization within the meaning of Section 368(a) of the Code and (2) the Fundamental Opinions listed in Exhibit I to the Merger Agreement;<br>• each member of the board of directors of Oncor Holdings and Oncor shall have resigned from such boards of directors, effective as of the Closing and the designees of NextEra shall constitute the entire board of directors of Oncor Holdings and Oncor, effective as of the Closing (subject to a limited exception);<br>• the Bankruptcy Court shall have confirmed the Amended Plan and made findings that (i) the Amended Plan and Merger Agreement satisfy, among other things, section 1129(a)(4) and section 1129(a)(5) of the Bankruptcy Code; (ii) NextEra is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protections afforded to good faith purchasers to the fullest extent permitted under the Bankruptcy Code; and (iii) the purchase price was not controlled by any agreement between NextEra and any potential bidders and was not reduced or suppressed in any manner by any agreement or arrangement involving Parent and any creditor;<br>• any third party consents and approvals necessary in connection with the consummation of the transactions contemplated by the Merger Agreement shall have been obtained and shall remain in full force and effect; |

| Provision | Summary of Provision |
|---|---|
| | • except as agreed by NextEra, EFH Corp. and its subsidiaries shall have no employees other than employees of the Oncor entities, and shall not be responsible for any liabilities or obligations owed to any pre-transaction employee of EFH Corp. or its subsidiaries (other than the Oncor entities);<br>• EFH Corp.'s ownership structure with respect to its subsidiaries shall be as disclosed in Section 7.2(j) of the Company Disclosure Letter;<br>• the facts presented and the representations made in the IRS Submissions are true, correct, and completed in all material respects;<br>• except as contemplated by the Amended Plan, no Debtor shall have taken any action that results in an ownership change of EFH Corp. within the meaning of Section 382(g) of the Internal Revenue Code and Texas Energy Future Holdings Limited Partnership shall not have taken any action that results in an ownership change of EFH Corp. within the meaning of Section 382(g) of the Internal Revenue Code or knowingly permitted any person (other than Texas Energy Future Holdings Limited Partnership) to own 50% or more of the equity interests in EFH Corp. during the three-year period prior to Closing or changed EFH Corp.'s taxable year to be other than the calendar year; and<br>• except for matters set forth in the Company Disclosure Letter, no Company Material Adverse Effect shall have occurred and be continuing as of the Closing Date. (Merger Agmt., § 7.2) |
| **Conditions to Debtor Parties' Obligations** | The EFH/EFIH Debtors' obligations to effect the Closing are subject to the following conditions, among others:<br>• the representations and warranties of NextEra shall be true and correct;<br>• NextEra shall have performed in all material respects all obligations required to be performed by it under the Merger Agreement at or prior to the Closing;<br>• unless waived by NextEra, EFH Corp. shall have received an opinion of Kirkland & Ellis LLP or, under certain circumstances, Cravath Swaine & Moore LLP, on the basis of the representations and warranties set forth or referred to in such opinion, dated as of the Closing Date, wherein the party providing the opinion opines (1) to the effect that the Merger will qualify as a reorganization within the meaning of Section 368(a) of the Code and (2) the Fundamental Opinions listed in Exhibit I to the Merger Agreement;<br>• NextEra shall have provided customary registration rights to any recipients of Parent Common Stock in connection with the Merger that are affiliates of NextEra; and<br>• any and all governmental consents and approvals shall have been obtained and shall remain in full force and effect and the applicable waiting period under the HSR Act shall have expired or been terminated. (Merger Agmt., § 7.3) |
| **Mutual Termination** | The EFH/EFIH Debtors and NextEra may mutually agree in writing to terminate the Merger Agreement any time before the Closing.  (Merger Agmt., § 8.1)<br><br>Either the EFH/EFIH Debtors or NextEra may terminate the Merger Agreement any time before the Closing if:<br>(i)   the Closing has not been consummated within two hundred forty (240) days of the date of the Merger Agreement, *provided* that such date shall |

14

| Provision | Summary of Provision |
|---|---|
| | be extended for 90 days if as of such date any of the FERC Approval, the PUCT Approval or the Private Letter Ruling (if applicable) shall not have been obtained (and such approval or Private Letter Ruling is still capable of being obtained within ninety (90) days); or<br>(ii) if an order of any court or other Governmental Entity permanently restraining, enjoining, rendering illegal or otherwise prohibiting consummation of the Closing Date Transactions shall become final and non-appealable. (Merger Agmt., § 8.2) |
| **Termination by the Debtor Parties** | The EFH/EFIH Debtors may terminate the Merger Agreement at any time before Closing if:<br>• NextEra breaches any representation, warranty, covenant, or agreement in the Merger Agreement such that a certain condition to the Debtors' obligation to consummate the Closing would fail, and the breach cannot be or is not cured within 30 days;<br>• NextEra fails to consummate the Closing;<br>• the Bankruptcy Court confirms a plan of reorganization that is not proposed or supported by the Debtors;<br>• the Debtors' chapter 11 cases are dismissed or converted to chapter 7 and the dismissal or conversion does not contemplate the Closing Date Transactions;<br>• the board of EFH Corp. or EFIH determines in its sole discretion, after consultation with independent financial advisors and outside legal counsel and based on advice of such counsel, that the failure to terminate the Merger Agreement is inconsistent with its fiduciary duties, *provided* that a material breach of EFH Corp.'s or EFIH's obligations under Section 6.2 of the Merger Agreement has not provided the basis for such determination; or<br>• the PSA is terminated. (Merger Agmt., § 8.3) |
| **Termination by NextEra** | NextEra may terminate the Merger Agreement at any time before Closing if:<br>• the Debtors breach any representation, warranty, covenant, or agreement in the Merger Agreement such that a certain condition to the Debtors' obligation to consummate the Closing would fail, and the breach cannot be or is not cured within 30 days;<br>• Oncor or Oncor Holdings breaches any representation, warranty, covenant, or agreement in the Oncor Letter Agreement such that a certain condition to the Oncor's or Oncor Holdings' obligation to consummate the Closing would fail, and the breach cannot be or is not cured within 30 days;<br>• the Debtors fail to consummate the Closing;<br>• the Debtors file or expressly support a plan of reorganization that is inconsistent with the Merger Agreement and the Amended Plan and such inconsistency cannot be cured within thirty (30) business days after the Debtors' receipt of written notice from NextEra;<br>• the Bankruptcy Court enters an order, or the Debtors file a motion seeking an order, approving any sale or other disposition of (i) any material portion of the assets of the Debtors or their Subsidiaries or (ii) any equity interests in EFIH or any of its Subsidiaries (including the Oncor Entities), to anyone other than NextEra;<br>• a trustee is appointed pursuant to section 1104 of the Bankruptcy Code;<br>• the Debtors' chapter 11 cases, other than cases relating to (i) LSGT Gas |

| Provision | Summary of Provision |
|---|---|
| | Company LLC, (ii) EECI, Inc., (iii) EEC Holdings, Inc., and (iv) LSGT SACROC, Inc., are dismissed or converted to chapter 7 and the dismissal or conversion does not contemplate the Closing Date Transactions;<br>• the Bankruptcy Court orders the substantive consolidation of the chapter 11 estates;<br>• the PSA is terminated;<br>• the Bankruptcy Court does not enter an order approving the Merger Agreement within 45 days of the date of the Merger Agreement; or<br>• Oncor and Oncor Holdings do not execute the Oncor Letter Agreement within seven (7) days of the date of the Merger Agreement, *provided* that this condition terminates 13 days after the initial seven-day period. (Merger Agmt., § 8.4) |

**B.     Specific Performance, Fiduciary Out, and Termination Fee.**

28.     So long as the Merger Agreement has not been validly terminated, the EFH/EFIH Debtors are entitled to the remedy of specific performance against NextEra—the publicly-traded parent entity—and Merger Subsidiary to compel closing of the transactions contemplated by the Merger Agreement.  Merger Agreement § 9.10.  The Merger Agreement is terminable by EFH Corp. or EFIH up to confirmation of the Amended Plan upon a determination of their respective boards based on advice of outside counsel that that the failure to terminate the Merger Agreement is inconsistent with its fiduciary duties.  *See id.* § 8.3(e)-(f).  This fiduciary out is available in all circumstances so long as a material breach by EFH Corp. and EFIH of the Merger Agreement's provisions governing solicitation and negotiation of competing proposals has not provided a basis for such termination.

29.     Upon Court approval of the Merger Agreement, EFH Corp. and EFIH are liable for the Termination Fee, in the amount of $275 million, as an allowed administrative expense claim, in the event of certain termination events in accordance with the Merger Agreement.  Merger Agreement § 8.5(b).  The Termination Fee is not payable in the event of, among other things, certain terminations resulting from breaches by NextEra or Merger Subsidiary or

16

following a termination by NextEra at the Termination Date (as defined in the Merger Agreement) where PUCT approval is the only closing condition not satisfied.  The Termination Fee is inclusive of all professional fees and expense reimbursements of NextEra and Merger Subsidiary.

**C.      Go-Shop Provisions.**

30.      The Merger Agreement includes provisions that allow for any higher or otherwise better bids to emerge.  From the execution of the Merger Agreement until entry of the Approval Order, the Debtors may solicit, initiate, and facilitate higher or otherwise better offers without paying the Termination Fee.  During the period between entry of the Approval Order and confirmation of the Plan, the Debtors may continue discussions or negotiations with any party that has executed a confidentiality agreement and satisfied certain other requirements set forth in the Merger Agreement.  If the Debtors terminate the Merger Agreement following entry of the Approval Order to accept another proposal, and the transaction contemplated by such other proposal is consummated, the Debtors would owe the $275 million Termination Fee.

**V.      Summary of the PSA.[5]**

31.      The PSA Parties—namely, the Debtors and NextEra—executed the PSA on July 29, 2016.  The PSA requires the PSA Parties to support the Amended Plan, which, after years of seeking to restructure the E-side, currently embodies the highest and otherwise best proposal for a restructuring of EFH Corp. and EFIH.  A summary of certain material terms of the PSA is provided below.

---

[5]      The descriptions of the PSA set forth in this Motion are intended only to serve as a summary of certain provisions of the PSA and are qualified in their entirety by reference to the PSA.

RLF1 14947689v.1

A.     **Milestones.**

32.     The PSA sets forth certain deadlines intended to facilitate the expeditious implementation of the Amended Plan and Merger Agreement.  These milestones provide that certain of the PSA Parties may terminate the PSA, subject to certain notice requirements or other conditions, in the event that:

- the Approval Order has not been entered or approved by the Court by September 20, 2016;

- the disclosure statement with respect to the EFH/EFIH Debtors is not approved by the Court by September 20, 2016;

- the Court has not entered the order confirming the Amended Plan as to the EFH/EFIH Debtors by December 15, 2016; and

- the Amended Plan has not become effective as to the EFH/EFIH Debtors by March 29, 2017, subject to a 90-day extension for certain required regulatory and tax approvals.

B.     **Other Termination Events.**

33.     In addition to the termination events associated with the milestones described above, the PSA provides that, upon written notice and subject to certain terms and conditions, the following events will trigger termination of the PSA:

- amendment or modification of the Amended Plan as to the EFH/EFIH Debtors in a manner inconsistent with the PSA and materially adverse to the terminating party;

- material breach of the PSA or the Merger Agreement in a manner that would have a material adverse effect on the Amended Plan as to the EFH/EFIH debtors and the transactions contemplated by the PSA;

- the issuance by a governmental authority or the Court of a final and non-appealable order or similar restraint prohibiting the transactions contemplated by the PSA;

- the appointment of a trustee or examiner with expanded powers in the chapter 11 cases of the EFH/EFIH Debtors;

- the filing of certain motions or pleadings by PSA Parties inconsistent with the PSA in a manner that is material and adverse to the terminating party and not timely withdrawn;

- the conversion or dismissal of one or more of the chapter 11 cases;

- a condition to the effectiveness of the Amended Plan as to the EFH/EFIH Debtors or the closing of the transactions contemplated by the Merger Agreement becoming incapable of being satisfied;

- the failure to consummate the Amended Plan as to the EFH/EFIH Debtors within 30 days of the satisfaction of all conditions thereto;

- the termination of the Merger Agreement; and

- until entry of the order confirming the Amended Plan, if the EFH Debtors or the EFIH Debtors determine that failure to terminate the PSA is inconsistent with their fiduciary duties, so long as a material breach by EFH Corp. and EFIH of the Merger Agreement's provisions governing solicitation and negotiation of competing proposals has not provided a basis for such determination.

## **Basis for Relief**

34.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Additionally, under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

35.     In the Third Circuit, courts have authorized a debtor's use of property of the estate outside the ordinary course of business when such use has a "sound business purpose" and is proposed in good faith. *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991). Courts authorize a debtor to use property of the estate outside the ordinary course of business if the debtor can show that: (a) a sound business reason or emergency

19

justifies the proposed use; (b) adequate and reasonable notice was provided to all interested parties; (c) the proposed use was requested in good faith; and (d) fair and reasonable consideration is provided in exchange for the use of estate assets. *See In re Exaeris, Inc.*, 380 B.R. 741 (Bankr. D. Del. 2008); *In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332749, at *7 (D. Del. May 20, 2002); *Hudson*, 124 B.R. at 176.

**I.    The Court Should Approve Entry Into the Merger Agreement and Payment of the Termination Fee.**

**A.    Entry Into the Merger Agreement Is a Sound Exercise of the EFH/EFIH Debtors' Business Judgment.**

36.    The EFH/EFIH Debtors submit that entering into the Merger Agreement is a sound exercise of their business judgment and is justified under the circumstances. The Debtors' economic interest in Oncor has been heavily-marketed for years. The universe of parties with the means and motivation to acquire the asset are at the table and fully aware of the investment opportunity.

37.    Against this backdrop, the Merger Agreement represents the highest and best available transaction to permit the EFH/EFIH Debtors to emerge from these chapter 11 cases. The transaction collectively infuses billions of dollars of cash and NextEra common stock into the EFH/EFIH Debtors' estates. Specifically, under the Amended Plan, the cash portion of the contribution will be distributed to pay EFIH administrative claims and secured indebtedness before the remainder is distributed to EFIH unsecured creditors together with remaining cash on hand at EFIH. As a result, the EFH/EFIH Debtors project that, assuming among other things a first quarter 2017 emergence, EFIH secured debt will be repaid in full, EFIH unsecured claims will receive an estimated 100% recovery, and creditors of EFH Corp. will receive a recovery based, in part, on the adjusted estimated cash on hand at EFH Corp., plus anticipated additional

20

cash.  The mixture of cash and NextEra common stock to be received is subject to allocation methodologies designed to ensure the satisfaction of certain tax requirements related to both the Merger and the spin-off of TCEH.  Stock to be received by any creditor constituency will be received on the effective date of the Amended Plan.

38.     Critically, the funding for the Merger Agreement is supported by the commitment of a highly credit-worthy acquirer with a long-standing strategic interest in acquiring the EFH/EFIH Debtors' Oncor interest.  This commitment is backed by a specific performance right for EFH Corp. and EFIH against that same credit-worthy strategic acquirer and is subject to customary terms and conditions.  In light of the termination of the Original Plan, this firm commitment by NextEra was a critical component of the EFH/EFIH Debtors' determination to enter into the Merger Agreement.

39.     This is an excellent outcome for all stakeholders in the EFH/EFIH Debtors in these lengthy and highly-contentious chapter 11 cases.  The Debtors have for years pursued all available avenues to restructure their balance sheets, including their efforts to consummate the Original Plan.  The Merger Agreement provides the value-maximizing transaction necessary to achieve that outcome.  The EFH/EFIH Debtors' therefore submit that entry into the Merger Agreement is a sound exercise of their business judgment.

**B.      The Termination Fee is Justified and in the Best Interests of the Estate.**

40.     The EFH/EFIH Debtors further submit that approval of the Termination Fee is in the best interest of the estates.  In light of the consideration provided by the Merger Agreement, and the firm commitment from a credit-worthy acquirer that supports it, the Termination Fee is reasonable under the circumstances.  Although the EFH/EFIH Debtors vigorously negotiated the

21

Termination Fee, it was ultimately necessary to induce NextEra to enter into the Merger
Agreement and commit to provide the billions of dollars in consideration that it contemplates.

41.     The Termination Fee is also consistent with market practice for similar
commitment fees on a percentage basis.  The Termination Fee is $275 million in cash, equal to
approximately 1.5% of the transaction's total enterprise value.   Courts in this district have
approved similar fees and premiums as a reasonable use of assets in other recent chapter 11
cases.  *See, e.g.*, *In re AMR Corp.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. May 10, 2013)
(approving termination fee of 1.2% of purchase price); *In re Pilgrim's Pride*, No. 08-45664
(DML) (Bankr. N.D. Tex. 2011) (approving termination fee of 1.6% of purchase price); *In re
Edision Mission Energy*, No. 12-49219 (JPC) (Bankr. N.D. Ill. Mar. 11, 2014) (approving
termination fee of 2.1% of purchase price).[6]

42.     The Termination Fee is also comparable on a percentage basis to fees approved in
transactions of publicly traded utility companies since 2012:

| Date Announced | Acquirer | Target | Enterprise Value ("TEV") (in millions) | Break Fee of Target | |
|---|---|---|---|---|---|
| | | | | $ (in millions) | % of TEV |
| 5/31/16 | Great Plains | Westar | $12,157 | $280 | 2.3% |
| 2/9/16 | Algonquin | Empire District | 2,364 | 53 | 2.2% |
| 2/9/16 | Fortis | ITC Holdings | 11,435 | 245 | 2.1% |
| 2/1/16 | Dominion | Questar | 5,979 | 99 | 1.7% |
| 10/26/15 | Duke Energy | Piedmont Natural Gas | 6,579 | 125 | 1.9% |

---

[6]     Because of the voluminous nature of the orders cited herein, such orders are not attached to the motion.  Copies
of these orders are available upon request of the Debtors' counsel.

| Date Announced | Acquirer | Target | Enterprise Value ("TEV") (in millions) | Break Fee of Target | |
|---|---|---|---|---|---|
| | | | | $ (in millions) | % of TEV |
| 9/4/15 | Emera Inc. | TECO Energy | 10,389 | 213 | 2.0% |
| 8/24/15 | Southern Company | AGL Resources | 11,996 | 201 | 1.7%. |
| 2/25/15 | Iberdrola USA | UIL Holdings | 4,483 | 75 | 1.7%. |
| 12/3/14 | NextEra Energy | Hawaiian Electric Industries | 4,336 | 90 | 2.1% |
| 10/20/14 | Macquarie Group | Cleco Corporation | 4,720 | 120 | 2.5% |
| 6/23/14 | Wisconsin Energy Corp. | Integrys Energy Group | 9,137 | 175 | 1.9% |
| 4/30/14 | Exelon Corp. | Pepco Holdings | 11,928 | 293 | 2.5% |
| 12/11/13 | Fortis Inc. | UNS Energy | 4,276 | 64 | 1.5% |
| 5/29/13 | MidAm. Energy Holdings Company | NV Energy | 10,400 | 170 | 1.6% |
| 2/21/12 | Fortis Inc. | CH Energy | 1,470 | 20 | 1.3% |
| | | | | **Mean** | **1.9%** |
| | | | | **Median** | **1.9%** |

43.     Accordingly, the Debtors submit that the agreement to pay the Termination Fee, if triggered, is a sound exercise of their business judgment and that the Court should approve such payment.

23

## II.    The Court Should Approve Entry Into the PSA.

### A.    Entry Into the PSA Is a Sound Exercise of the Debtors' Business Judgment.

44.    Entry into postpetition plan support agreements is governed by the same business judgment standard that governs other postpetition transactions. *See In re Residential Capital, LLC*, No. 12-12020, 2013 WL 3286198, at *19 (Bankr. S.D.N.Y. June 27, 2013).

45.    Here, approval of the PSA is extremely narrow relief. The PSA embodies the commitments of the EFH/EFIH Debtors and NextEra to support the Amended Plan as to the EFH/EFIH Debtors. And the EFH/EFIH Debtors commitment is subject to a fiduciary out. Thus, approval of entry into the PSA does little more than commit the PSA Parties to support the Amended Plan subject to the EFH/EFIH Debtors' fiduciary out.

46.    Courts in this and other districts have approved entry into postpetition plan support agreements. *See, e.g.*, *In re Aspect Software Parent, Inc.*, Case No. 16-10597 (MFW) (Bankr. D. Del. May 2, 2016); *In re Exide Techs,* Case No. 13-11482 (KJC) (Bankr. D. Del Feb. 4, 2015); *In re Nebraska Book Co.*, Inc., Case No. 11-12005 (PJW) (Bankr. D. Del Mar. 26, 2012); *In re Overseas Shipholding Grp., Inc.*, Case No. 12-20000 (PJW) (Bankr. D. Del. Apr. 7, 2014); *In re Visteon Corp.*, Case No. 09-11786 (CSS) (Bankr. D. Del. June 17, 2010); *In re Intermet Corp.*, Case No. 08-11859 (KG) (Bankr. D. Del. June 5, 2009); *see also In re Tronox Inc.*, Case No. 09-10156 (Bankr. S.D.N.Y. Dec. 23, 2009); *In re Bally Total Fitness of Greater New York*, Case No. 08-14818 (Bankr. S.D.N.Y. July 9, 2009); *In re Movie Gallery, Inc.*, Case No. 07-33849 (Bankr. E.D. Va. Feb. 6, 2008).[7]

### B.    The PSA Complies With Section 1125 of the Bankruptcy Code.

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

24

47.     Entering into the PSA does not constitute a "solicitation" of the PSA Parties' votes in favor of the Plan.  Section 1125(b) provides that "[a]n acceptance or rejection of a plan may not be solicited after the commencement of the case under this title . . . unless, at the time of or before such solicitation, there is transmitted . . . a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."   11 U.S.C. § 1125(b).  Courts considering both prepetition and postpetition plan support agreements have held that such agreements are not "solicitations" if they permit a party to the agreement to later vote to reject a plan if there are any material deviations from the representations made at the time of signing the plan support agreement.  *See, e.g.*, *In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del. Sept. 18, 2015) (approving postpetition plan support agreement pursuant to which creditor agreed to vote in favor of plan provided there were no material modifications to the agreed upon plan); *In re Indianapolis Down, LLC*, No. 11-11046 (Bankr. D. Del. June 21, 2012) (same); *In re Neb. Book Co.*, No. 11-12005 (Bankr. D. Del. Sep. 7, 2011) (same); *Internet Corp.*, Case No. 08-11859 (KG) (Bankr. D. Del. June 5, 2009) (same); *In re Owens Corning*, Case No. 00-03837 (KG) (Bankr. D. Del. June 29, 2006) (same); *In re Heritage Org., L.L.C.*, 376 B.R. 783, 789-95 (Bankr. N.D. Tex. 2007) (finding that agreement to vote for plan in term sheet does not constitute a solicitation of official vote); *In re Kellogg Square P'ship*, 160 B.R. 336 (Bankr. D. Minn. 1993) (holding that secured creditors' agreement to vote for plan prior to approval of disclosure statement did not violate statutory restrictions on solicitation); *Transworld Airlines, Inc. v. Texaco, Inc. (In re Texaco, Inc.)*, 81 B.R. 813 (Bankr. S.D.N.Y. 1988) (holding that parties' agreement to use best efforts to obtain confirmation of chapter 11 plan did not violate statutory restrictions on solicitation of votes for the plan).

25

48.     Bankruptcy courts have roundly rejected a broad reading of "solicitation." *See Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 101 (3d Cir. 1988) ("'[S]olicitation' must be read narrowly."); *see also In re Energy Future Holdings Corp.*, 9/17/2015 Hr. Tr. at 78 ("[S]olicitation means the formal sending out of ballots to parties in support of a plan asking them to vote on those ballots, mark yes or no and send them back for counting in connection with approval of the plan."); *In re Indianapolis Downs, LLC*, 486 B.R. 286 (Bankr. D. Del. 2013) ("[A] narrow construction of 'solicitation' affords [the] parties the opportunity to memorialize their agreements in a way that allows a Chapter 11 case to move forward.").

49.     Accordingly, the EFH/EFIH Debtors' and the other PSA Parties' negotiation and execution of the PSA do not constitute improper solicitation under section 1125(b) of the Bankruptcy Code, and the Debtors submit that they should be permitted to enter into the PSA.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

50.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Ryle 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Notice**

51.     The Debtors shall provide notice of this Motion via overnight delivery to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037

26

Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured

27

Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

52.     No prior request for the relief sought in this Motion has been made to this or any other court.

**Conclusion**

53.     Accordingly, the EFH/EFIH Debtors respectfully request that the Court enter the Approval Order.

*[Remainder of page intentionally left blank.]*

RLF1 14947689v.1

Dated: August 3, 2016
     Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
    defranceschi@rlf.com
    madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
    stephen.hessler@kirkland.com
    brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
    marc.kieselstein@kirkland.com
    chad.husnick@kirkland.com
    steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession