# EXHIBIT F

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>Re: Docket No. 9190<br><br>Hearing Date: September 19, 2016 at 10:00 a.m.<br>Objection Deadline: August 25, 2016 at 4:00 p.m. |

### OBJECTION OF SHIRLEY FENICLE, WILLIAM FAHY, AND JOHN H. JONES TO MOTION OF THE EFH/EFIH DEBTORS FOR ORDER (A) AUTHORIZING ENTRY INTO MERGER AGREEMENT, (B) APPROVING TERMINATION FEE, AND (C) AUTHORIZING ENTRY INTO AND PERFORMANCE UNDER PLAN SUPPORT AGREEMENT

Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, and John H. Jones (the "**Asbestos Objectors**"), by their undersigned counsel, hereby submit this Objection to the Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry Into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into and Performance Under Plan Support Agreement, dated August 3, 2016, D.I. 9190 (the "**Motion**").[1] In support of this Objection, the Asbestos Objectors respectfully state as follows:

### PRELIMINARY STATEMENT

In their Motion, the Debtors seek this Court's approval of a merger agreement (the "**Merger Agreement**") among Debtor Energy Future Holdings Corp. ("**EFH Corp.**"), Energy Future Intermediate Holding Co., LLC, NextEra Energy, Inc. ("**NextEra**"), and EFH Merger

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan.

Co., LLC (the "**Merger Subsidiary**"), a wholly-owned subsidiary of NextEra.  The Debtors also seek approval of a termination fee (the "**Termination Fee**") payable to NextEra as an allowable administrative claim when due under the Merger Agreement, without further order of the Court, and approval authorizing the EFH/EFIH Debtors to enter into a plan support agreement (the "**Plan Support Agreement**").

In principle, the Asbestos Objectors do not object to the merger transaction itself. However, they object to those provisions of the Merger Agreement and Plan Support Agreement that would bind the Debtors to support a plan that is unconfirmable.  As the Asbestos Objectors will demonstrate at the appropriate time, the proposed E-Side Plan is not confirmable (and, indeed, is not confirmable on its face) because, *inter alia*, it would violate the due process rights of holders of unmanifested asbestos claims by discharging their claims without notice and without any safeguards of their rights, and because it would cause the EFH Debtors to effect a fraudulent transfer of valuable assets of the EFH Debtors' estates.  But if the Debtors were to propose a revised plan that did not suffer from such infirmities, they would be in breach of the Merger Agreement and Plan Support Agreement.

The Asbestos Objectors also object to allowance of the Termination Fee provided for in the Merger Agreement, as the Debtors have not demonstrated that the Termination Fee was necessary to induce NextEra to bid, or that it is necessary to preserve the value of the estates.  If, as Asbestos Objectors contend, the current Plan cannot be confirmed, the Debtors will be constrained to propose a revised plan that would not violate the due process rights of Unmanifested Asbestos Claimants.  Under the Merger Agreement and Plan Support Agreement, if the Debtors were to do so, NextEra—which worked with EFH to develop the Third Amended Plan, and was fully aware of the due process challenge to the discharge provisions—could assert that it has the right to walk away from the deal, and obtain a Termination Fee of $275 million

upon confirmation of any revised plan. The Debtors have not demonstrated that the Termination Fee under any circumstances can be approved under controlling Third Circuit precedent, and, in any event, such a fee should not be approved to the extent that it would be triggered by a ruling that the Plan cannot be confirmed.

## BACKGROUND

The Asbestos Objectors have asbestos-related personal injury and wrongful death claims against the EFH Debtors. Ms. Fenicle is the successor-in-interest to the estate of George Fenicle, a mesothelioma victim, and was exposed to asbestos brought home by her husband on his clothing. Mr. Fahy is a mesothelioma claimant. Ms. Fenicle and Mr. Fahy filed proofs of claim, and are members of the E-Side official creditors' committee, which was appointed to represent the interests of unsecured creditors of certain Debtors, including EECI, Inc.[2] *See* Notice of Appointment of Committee of Unsecured Creditors, D.I. 2570. Mr. Jones was exposed to asbestos while working at the Hanford Nuclear Plant in Washington State, which is on the EECI site list filed in these bankruptcy cases. *See* Notice of Intent to Participate in Disclosure Statement Proceedings and Confirmation Proceedings for New Plan ¶ 3, Aug. 1, 2016, D.I. 9165 ("**Jones Notice of Intent**"); *see also* Aff. of Service at 34, Sept. 11, 2015, D.I. 5937. Mr. Jones was diagnosed with metastatic malignant mesothelioma on December 14, 2015. *See* Jones Notice of Intent ¶ 3. Mr. Jones did not file a proof of claim. *Id.*

The Debtors filed the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code, D.I. 7187 (the "**Sixth**

---

[2] The E-Side Committee is composed of creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. *See In re Energy Future Holdings Corp.* ("***EFH***"), 522 B.R. 520, 524 n.7 (Bankr. D. Del. 2015). No separate committee was appointed to represent the interests of creditors with claims against EEC Holdings, Inc., LSGT Gas Co. LLC, and LSGT SACROC, Inc. (together with EECI, Inc., the "**Asbestos Debtors**").

**Amended Plan**"), on December 1, 2015. Under the Sixth Amended Plan, asbestos-related personal injury and wrongful death claims for which timely proofs of claim were filed were reinstated, but the Sixth Amended Plan purported to discharge all other such claims for which proofs of claim had not been filed. Thus, it would discharge the claims of persons who were exposed to the Debtors' asbestos prepetition, but whose illnesses had not yet been diagnosed ("**Unmanifested Asbestos Claimants**"), even though such claims had not accrued under applicable state law ("**Unmanifested Asbestos Claims**").

The Court confirmed the Sixth Amended Plan, and overruled "on the merits" objections raised by Ms. Fenicle and Mr. Fahy that the discharge of Unmanifested Claims would violate the due process rights of Unmanifested Claimants. *See* Order Confirming the Sixth Am. Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code ¶ 8, at 10, Dec. 7, 2015, D.I. 7244, *amended* Dec. 9, 2015, D.I. 7285 (as amended, the "**Confirmation Order**").

Ms. Fenicle and Mr. Fahy appealed the Confirmation Order to the United States District Court for the District of Delaware (the "**Appeal**"). *See* Notice of Appeal, *Fenicle v. Energy Future Holdings Corp.*, No. 15-1183 (D. Del. Dec. 21, 2015) (D.I. 1); *see also* Br. of Appellants Shirley Fenicle and David William Fahy, *Fenicle*, No. 15-1183 (D. Del. Mar. 21, 2016) (D.I. 26) (the "**Opening Br. on Appeal**"). The Appeal, and the Debtors' motion to dismiss the Appeal,[3] are pending before the District Court.[4]

---

[3] On May 4, 2016, the Debtors moved to dismiss the Appeal as moot. *See* Appellees' Mot. to Dismiss Fenicle and Fahy Appeal, *Fenicle*, No. 15-1183 (D. Del. May 4, 2016) (D.I. 38). Ms. Fenicle and Mr. Fahy opposed that motion, and have demonstrated, *inter alia*, that the appeal is not moot because the Debtors' New Plan contains identical discharge provisions to those at issue in the Appeal. *See* Resp. of Appellants Fenicle and Fahy to Appellees' Mot. to Dismiss Fenicle and Fahy Appeal, *Fenicle*, No. 15-1183 (D. Del. May 23, 2016) (D.I. 47); *see also* Decl. of Leslie M. Kelleher in Support of Mot. for Leave to File Sur-Reply in Opp'n to Appellees' Mot. *(footnote continued)*

The Sixth Amended Plan was not consummated, and the Debtors filed a revised plan on May 1, 2016, which was subsequently amended on May 10 and June 16, 2016. *See* Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code, May 1, 2016, D.I. 8355; Am. Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code, May 10, 2016, D.I. 8421; Second Am. Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code, June 16, 2016, D.I. 8745.

On August 3, 2016, the Debtors filed the present Motion seeking this Court's (1) authority to enter into the Merger Agreement with NextEra,[5] (2) approval of the Termination Fee provided for in the Merger Agreement, and (3) authority to enter into and perform under the Plan Support Agreement with NextEra. On August 5, 2016, the Debtors filed the Third Amended Joint Plan, which was also an exhibit to the Merger Agreement. *See* Third Am. Joint Plan of Reorganization of Energy Future Holdings, *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code, D.I. 9199-1 (as amended, the "**Third Amended Plan**" or the "**Plan**");[6] *see also* Merger Agreement Ex. A, at 120, D.I. 9190-2. The Third Amended Plan was "developed by" EFH and

---

to Dismiss Fenicle and Fahy Appeal at Ex. A, *Fenicle*, No. 15-1183 (D. Del. June 8, 2016) (D.I. 54).

[4] Also pending before the District Court is a motion to join as an appellant Mr. Jones, an Unmanifested Claimant who was exposed the Debtors' asbestos prepetition, and was diagnosed with mesothelioma post-petition. *See* Mot. for Joinder of Putative Appellant John H. Jones, *Fenicle*, No. 15-1183 (D. Del. July 15, 2016) (D.I. 59).

[5] As set out in the Motion, the Merger Agreement "contemplates a merger of EFH Corp. with and into the Merger Subsidiary whereby EFH Corp. will become a wholly-owned subsidiary of NextEra with an approximately $18.3 billion implied Oncor total enterprise value." Motion ¶ 25, at 10.

[6] On August 23, 2016, the Debtors filed amendments to the Third Amended Plan. *See* Third Am. Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code, Aug. 23, 2016, D.I. 9374; Redline of Third Am. Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code, Aug. 23, 2016, D.I. 9375.

NextEra (Plan Support Agreement at 404, D.I. 9190-2), and, like the now-defunct previous plan, it would discharge Unmanifested Claims for which proofs of claim were not timely filed. Plan, Art. VII(f).

This Court ordered bifurcated confirmation proceedings for the New Plan with regard to the TCEH Debtors (the "**T-Side Plan**") and with regard to the E-Side Debtors (the "**E-Side Plan**").[7] The Court has ordered that confirmation hearings for the E-Side Plan will begin on December 1, 2016. *See* Order Scheduling Certain Hr'g Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the Debtors' Joint Plan of Reorganization as it relates to the EFH/EFIH Debtors, Aug. 23, 2016, D.I. 9373-1.

## ARGUMENT

**I.    The Merger Agreement and Plan Support Agreement Cannot be Approved Insofar as They Would Obligate the Debtors to Support an Unconfirmable Plan.**

Under the Merger Agreement and Plan Support Agreement, the Debtors are obligated to support the Third Amended Plan. The Plan, however, is patently unconfirmable. As the Asbestos Objectors have shown elsewhere, under the circumstances of these cases, discharging Unmanifested Asbestos Claims for which no proof of claim was filed would violate the due process rights of the holders of those claims. *See* Opening Br. on Appeal.[8] It is not possible to

---

[7]    *See* Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement, May 24, 2016, D.I. 8514; Supplement to Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement, July 11, 2016, D.I. 8883; Second Supplement to Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement, July 21, 2016, D.I. 8972 (as supplemented and amended, the "**Scheduling Order**").

[8]    In addition, the E-Side Plan cannot be confirmed because it would cause the EFH Debtors to transfer assets to the TCEH Debtors without compensation, in violation of their
*(footnote continued)*

give constitutionally adequate notice to holders of Unmanifested Asbestos Claims, just as it is not possible to give constitutionally adequate notice to persons who are incompetent. *See Covey v. Town of Somers*, 351 U.S. 141 (1956) (notice to a person known to be an incompetent and who is without the protection of a guardian does not satisfy due process, as the incompetent person cannot understand the notice and its implications). Just as incompetent persons cannot understand the nature and implications of a notice of proceedings that will affect their interests, holders of unmanifested claims cannot appreciate the implications of such notice. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 628 (1997) ("Even if they fully appreciate the significance of class notice, those [exposed to asbestos] without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out."). By definition, such claimants cannot identify themselves, and cannot be identified; they are "unselfconscious and amorphous." *Id*. *See generally* Opening Br. on Appeal, pt. I.

Thus, before such claims may be discharged without notice—as notice cannot be provided—the court must determine whether the Plan provides adequate safeguards of the Unmanifested Claimants' rights. *See, e.g.*, *Connecticut v. Doehr*, 501 U.S. 1, 10 (1991) (court must consider (1) the private interest that will be affected; (2) the risk of erroneous deprivation of the claimants' rights, and the probable value of additional safeguards; and (3) the interest of the party seeking the remedy, with due regard for any ancillary interest of the government in providing the procedure or forgoing the added burden of providing greater protection). The Asbestos Objectors contend that it is clear that adequate safeguards have not been provided, and that the discharge of claims under the circumstances of these cases would not satisfy due process.

---

fiduciary duties to their creditors, and thus does not comply with 11 U.S.C. § 1129(a)(1) and (3). Asbestos Objectors reserve the right to raise these and any other objections to the E-Side Plan at the appropriate time.

*See* Opening Br. on Appeal, pt. II.  Thus, under the circumstances of these cases, the Debtors cannot discharge Unmanifested Asbestos Claims.

In its order confirming the now-defunct previous plan, this Court rejected due process objections to the discharge of Unmanifested Claims, and the issue is now on Appeal before the District Court.  If the Appeal is successful, the Debtors will be obligated to revise their reorganization plan to provide either that Unmanifested Asbestos Claims will be passed through to the reorganized Debtors, or comply with Section 524(g) of the Bankruptcy Code.  NextEra could take the position that by supporting such a revised plan, the Debtors would be in breach of the Merger Agreement and the Plan Support Agreement and NextEra would be entitled to terminate the Merger Agreement, and the Debtors would be obligated to pay a $275 million Termination Fee to NextEra.

The Asbestos Objectors do not object to the merger transaction itself.  However, the Merger Agreement and Plan Support Agreement go much further than requiring the parties to support a plan that would implement the merger.  Rather, the agreements incorporate the Third Amended Plan in its entirety, including the provisions that would discharge Unmanifested Claims, and do not permit the Debtors to propose or support a Plan that does not contain those provisions without breaching the agreements.  Thus, the Merger Agreement and Plan Support Agreement dictate the terms of the Plan and effectively "preclude the possibility of alternate methods of reorganization."  *In re DRW Property Co. 82*, 54 B.R. 489, 498 (Bankr. N.D. Tex 1985).

As this Court has recognized, a transaction that "has the effect of dictating the terms of a prospective chapter 11 plan" will constitute a *sub rosa* plan, and will not be approved.  *In re Capmark Fin. Grp., Inc.*, 438 B.R. 471, 513 (Bankr. D. Del. 2010) (Sontchi, Bankr. J.) (internal citations omitted) (holding that a settlement will not be approved, "when the settlement has the

effect of dictating the terms of a prospective chapter 11 plan . . . . . To be found to dictate the terms of a plan, the settlement must either (i) dispose of all claims against the estate or (ii) restrict creditors' rights to vote."). "A transaction which would effect a lock-up of the terms of a plan will not be permitted" because it would subvert the protections afforded creditors by Chapter 11, such as the creditors' right to vote to accept or reject the plan. *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 885 (Bankr. S.D.N.Y. 1990). *See also In re Tower Auto., Inc.*, 241 F.R.D. 162, 168 (S.D.N.Y. 2006) ("A settlement which has the effect of dictating the terms of the debtor's plan of reorganization prior to the confirmation process cannot be approved."); *Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 940 (5th Cir. 1983) ("The debtor and the bankruptcy court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa*.").

Just as a debtor cannot be permitted to "lock up" the terms of the plan in a *sub rosa* plan that would infringe on the creditors' right to vote, so too the debtor cannot be permitted to lock up the terms of the plan in a manner that would impede the debtor's ability to fulfill its fiduciary duties to its creditors.[9] Here, the Merger Agreement and Plan Support Agreement would preclude the Debtors from formulating a plan that is fair to asbestos creditors, and that would respect their due process rights. The agreements thus conflict with the Debtors' fiduciary duties,

---

[9] *See Wolf v. Weinstein*, 372 U.S. 633, 649-50 (1963) ("[S]o long as the Debtor remains in possession, it is clear that the corporation bears essentially the same fiduciary obligation to the creditors as does the trustee for the Debtor out of possession. . . . [I]n practice these fiduciary responsibilities fall not upon the inanimate corporation, but upon the officers and managing employees who must conduct the Debtor's affairs under the surveillance of the court."); *see also Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355-56 (1985) (same); *FDIC v. Sea Pines Co.*, 692 F.2d 973, 976-77 (4th Cir. 1982) ("When the corporation becomes insolvent, the fiduciary duty of the directors shifts from the stockholders to the creditors.").

and the purposes of the Bankruptcy Code, and cannot be approved by the Court in the form proposed by the Debtors.

At the least, any order granting the Motion in any part should make clear that the Court is not approving or endorsing the Plan, and that all potential objections to the Plan are preserved, as in the Court's order approving the previous plan support agreement. *See* Order Authorizing Debtors to Enter Into and Perform Under Plan Support Agreement ¶ 4, Sept. 18, 2015, D.I. 6097 (providing that the Court made no findings as to the "negotiations, reasonableness, business purpose, or good faith of the Settlement Agreement, the Plan, or the terms of the Settlement Agreement or the Plan for any purpose other than the authorization and direction to enter into and perform under the PSA," and expressly preserving the rights of the objectors to later challenge the Plan or the agreement).

II. **The Termination Fee is Not Necessary to Preserve the Value of the Estate, and Cannot be Allowed Under Section 503(b) of the Bankruptcy Code.**

Under the Merger Agreement and Plan Support Agreement, the Debtors would be obligated to pay a Termination Fee of $275 million to NextEra—more than the maximum that may be placed in escrow for asbestos victims under the Third Amended Plan—under certain circumstances set out in the Merger Agreement, such as if the Debtors were to terminate the Merger Agreement, and sell Oncor to another bidder. *See* Motion ¶ 30 at 17. As noted above, the Termination Fee could also be payable if the Asbestos Objectors' Appeal were successful and the Third Amended Plan were determined to be unconfirmable. In that event, if the Debtors were to propose an alternate plan pursuant to which Unmanifested Claims would be passed through to the reorganized Debtors, or a trust established pursuant to Bankruptcy Code Section 524(g), NextEra could assert that its right to terminate the Merger Agreement was triggered, *see*

Merger Agreement § 8.4(d),[10] and then claim the $275 million Termination Fee. *See id.* § 8.5(b).[11]

Ignoring controlling Third Circuit law, and citing no precedent from any court in this circuit,[12] the Debtors assert that the agreement to pay the Termination Fee should be approved as a "sound exercise of [the Debtors'] business judgment." Motion ¶ 43, at 23. But that is not the legal standard this Court must apply: the law is clear in the Third Circuit that when considering a termination fee (often referred to as a "break up fee") "the business judgment rule should not be applied as such in the bankruptcy context." *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999). Rather, the Third Circuit has instructed that

> in considering requests for break up fees, [the court] will apply the general standard used for all administrative expenses—'the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's

---

[10]  Merger Agreement § 8.4(d) provides, in relevant part:

This agreement may be terminated at any time prior to the Closing by Parent [*i.e.* NextEra]

. . . .

(d) if the Company [*i.e.* EFH Corp.] or EFIH files or expressly supports in the Bankruptcy Court a plan of reorganization that is inconsistent in any substantive legal or economic respect with this Agreement and the Plan of Reorganization (solely as it the Plan of Reorganization relates to the E-Side Debtors) and such inconsistency cannot be or has not been cured within thirty (30) Business Days after the Company's or EFIH's receipt of written notice thereof from Parent (which notice must occur within five (5) Business Days of the filing of such Plan).

[11]  Merger Agreement § 8.5(b) provides, in relevant part:

If this Agreement is terminated pursuant to this Article VIII and any alternative transaction is consummated . . . pursuant to which neither Parent nor any of its Affiliates will obtain direct or indirect ownership of 100% of Oncor Holdings and Oncor Holdings' approximately 80% equity interest in Oncor, then, subject to the approval of the Bankruptcy Court . . . [EFH Corp.] and EFIH shall pay to [NextEra] the Termination fee [defined as] . . . an amount equal to $275,000,000.

[12]  The Debtors state that "[c]ourts in this district have approved similar fees," but the cases they cite are from the Southern District of New York, the Northern District of Texas, and the Northern District of Illinois. *See* Motion ¶ 41, at 22, and cases cited therein.

ability to show that the fees were actually necessary to preserve the value of the estate.'

*In re Reliant Energy Channelview LP*, 594 F.3d 200, 208 (3d Cir. 2010) (quoting *O'Brien*, 181 F.3d at 535).

Outside of bankruptcy, merger agreements often include break up fee provisions, which typically are intended to compensate a prospective acquirer "for the time and expense it has spent in putting together its offer if the transaction is not completed for some reason, usually because another buyer appears with a higher offer." *O'Brien*, 181 F.3d at 535. In the bankruptcy context, however, the focus must be on the value to the estate; thus "not all of the purposes that break-up fees serve in corporate transactions are permissible in bankruptcy." *Id*. It is permissible in bankruptcy to use a break up fee to induce an initial bid, and promote competitive bidding, or to ensure that a bidder adheres to its bid during an auction. *Reliant*, 594 F.3d at 206. It is not permissible, however, to "advantage a favored purchaser over other bidders by increasing the cost of the acquisition to the other bidders." *O'Brien*, 181 F.3d at 535. And even if the purpose of the fee is permissible, the debtor must show that the fee was necessary to effectuate the purpose, and to preserve the value of the estates. *See id*. "[A] break-up fee is not 'necessary to preserve the value of the estate' when the bidder would have bid even without the break-up fee." *Reliant*, 594 F.3d at 206.

Here, Debtors have made no effort to demonstrate, as they must, that NextEra would not have bid even without the Termination Fee. They provide no evidence to demonstrate that the Termination Fee was necessary to induce NextEra to bid. Rather, they state that NextEra was "the most engaged" of eight bidders (Motion ¶ 23, at 9), that the Debtors "sought to use the multiple-bidder dynamic to obtain the highest and otherwise best terms and conditions, including, in particular, on the overall value of the bids" (Motion ¶ 24, at 10), and that the Termination Fee was "ultimately necessary to induce NextEra to enter into the Merger

Agreement." Motion ¶ 40, at 22. Thus, by the Debtors' own account, it appears that the Termination Fee was not required to induce NextEra to bid, but, rather, was agreed to at the end of the bidding process. Thus, under controlling Third Circuit precedent, the Termination Fee was not necessary to preserve the value of the estates. For that reason alone, the Termination fee cannot be approved.

Here, Debtors have made no effort to demonstrate, as they must, that NextEra would not have bid even without the Termination Fee. They provide no evidence to demonstrate that the Termination Fee was necessary to induce NextEra to bid, or that NextEra would not have made its bid without the Termination Fee. Rather, they state that NextEra was "the most engaged" of eight bidders (Motion ¶ 23, at 9), and that the Debtors "sought to use the multiple-bidder dynamic to obtain the highest and otherwise best terms and conditions, including, in particular, on the overall value of the bids." Motion ¶ 24, at 10. Finally, the Debtors state that the Termination Fee was "ultimately necessary to induce NextEra to enter into the Merger Agreement." Motion ¶ 40, at 22. Thus, by the Debtors' own account, it appears that the Termination Fee was not required to induce NextEra to bid, but was agreed to at the end of the bidding process, and thus, under controlling Third Circuit precedent, was not necessary to preserve the value of the estates. For that reason alone, the Termination fee cannot be approved.

The Debtors have asked this Court to approve the Termination Fee before the confirmability of the Plan has been determined. The Court cannot do so. Even if the Debtors could show that a break-up fee was necessary to preserve the value of the estates because, for example, it was necessary to induce NextEra to bid—and the Debtors have provided no evidence that it was—this Court cannot approve a break up fee that would be triggered if the Third Amended Plan is not confirmed because it violates due process rights of the asbestos claimants, and the Debtors then support a plan that comports with due process. A break up fee in those

circumstances would penalize the Asbestos Objectors for pursuing their objections, by diminishing the value of the estates available as security for their claims. Just as a break up fee that would chill competing bids by "increasing the cost of the acquisition to the other bidders" is not permissible, *O'Brien*, 181 F.3d at 535, a break up fee that would increase the costs of plan objections in this manner cannot be approved.

NextEra and EFH developed the Third Amended Plan together, and made a deliberate decision to include provisions discharging Unmanifested Asbestos Claims, even though both parties were fully aware that the constitutionality of those provisions was the subject of an Appeal in the District Court, and that the Plan could be found unconfirmable. If the Termination Fee were approved now, and the Plan subsequently found to be unconfirmable, NextEra could be receive a $275 million windfall for having supported a plan that it knew could not be confirmed. Such a result cannot be countenanced by this Court.

In *In re AMR Corp.*, the bankruptcy court approved a merger, but did not approve a provision of a merger agreement proposing a severance payment for an insider, because the payment was not permitted by section 503(b) of the Code. *In re AMR Corp.*, 490 B.R. 158, 168-69 (Bankr. S.D.N.Y. 2013) (holding that 11 U.S.C. § 503(c) prohibited the authorization of a $20 million severance payment to the CEO under a merger agreement, and noting that "approval now would resolve this issue for purposes of this bankruptcy case and preclude any challenge to the merits of the severance payment during the confirmation hearing on a plan of reorganization."); *see also In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 983 (Bankr. N.D.N.Y. 1988) (refusing to approve the postpetition lease of the debtor's assets *nunc pro tunc* because "[t]he approval of this lease will effectively put the Court's imprimatur on the sale and confirm the Plan long before the hurdles of Chapter 11 are overcome. In encompassing the sole asset of the Debtor, this proposed lease 'boot-straps' the sale and 'short-circuits' the Chapter 11.").

Similarly, until the Plan has been confirmed, this Court cannot approve the payment of the Termination Fee that could be triggered by a finding that the Plan is not confirmable. The payment of the Termination Fee under these circumstances cannot be shown to be necessary to preserve the value of the estate, and is not an allowable administrative expense under Section 503.

## CONCLUSION

For the reasons set forth above, the Asbestos Objectors respectfully submit that this Court should enter an order denying the Motion.

Dated: August 25, 2016
Wilmington, Delaware

By: /s/ *Daniel K. Hogan*
Daniel K. Hogan (DE Bar # 2814)
**HOGAN♦McDANIEL**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7597
Facsimile: (302) 656-7599
dkhogan@dkhogan.com

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, and John H. Jones*

Steven Kazan (CA Bar # 46855)
Kazan McClain Satterley & Greenwood
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
Telephone: (510) 302-1000
Facsimile: (510) 835-4913

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle*

Ethan Early (CT Juris # 417930)
Early Lucarelli Sweeney & Meisenkothen
265 Church Street, 11th Floor
New Haven, CT 06508-1866

Telephone: (203) 777-7799
Facsimile: (203) 785-1671

*Counsel for David William Fahy*

Beth Gori
Gori Julian & Associates, P.C.
156 North Main Street
Edwardsville, IL 62025
Telephone: (618) 659-9833
Facsimile: (618) 659-9834

*Counsel for John H. Jones*