EXHIBIT L

# ORIGINAL

TRANSCRIPT OF PROCEEDINGS

BEFORE THE

PUBLIC UTILITY COMMISSION OF TEXAS

AUSTIN, TEXAS

OPEN MEETING

THURSDAY, SEPTEMBER 22, 2016

BE IT REMEMBERED THAT AT approximately
9:35 a.m., on Thursday, the 22nd day of September 2016,
the above-entitled matter came on for hearing at the
Public Utility Commission of Texas, 1701 North Congress
Avenue, William B. Travis Building, Austin, Texas,
Commissioners' Hearing Room, before DONNA L. NELSON,
Chairman, KENNETH W. ANDERSON, JR. and BRANDY MARQUEZ,
Commissioners; and the following proceedings were
reported by William C. Beardmore, Certified Shorthand
Reporter.

1223

2

1                       TABLE OF CONTENTS

2                                                        PAGE

3   PROCEEDINGS, THURSDAY, SEPTEMBER 22, 2016 .........   10

4                           WATER

5                    AGENDA ITEM NO. 1

6   DOCKET NO. 46120; SOAH DOCKET NO.
    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.WS - CITY OF MIDLOTHIAN'S
7   NOTICE OF INTENT TO SERVE AREA
    DECERTIFIED FROM MOUNTAIN PEAK SPECIAL
8   UTILITY DISTRICT IN ELLIS COUNTY ............. CONSENTED

9                    AGENDA ITEM NO. 2

10  DOCKET NO. 46140; SOAH DOCKET NO.
    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.WS - CITY OF LAMPASAS
11  NOTICE OF INTENT TO PROVIDE WATER
    SERVICE TO AREA DECERTIFIED FROM
12  KEMPNER WATER SUPPLY CORPORATION IN
    LAMPASAS COUNTY ............................. CONSENTED
13
                     AGENDA ITEM NO. 3
14
    DOCKET NO. 46247; SOAH DOCKET NO.
15  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.WS - APPLICATION OF DOUBLE
    DIAMOND PROPERTY CONSTRUCTION CO DBA
16  ROCK CREEK FOR A WATER RATE/TARIFF
    CHANGE ..................................... CONSENTED
17
                     AGENDA ITEM NO. 4
18
    DOCKET NO. 42860; SOAH DOCKET NO.
19  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.WS - APPLICATION OF DOUGLAS
    UTILITY COMPANY TO CHANGE WATER AND
20  SEWER RATE/TARIFF IN HARRIS COUNTY,
    TEXAS .........................................   11
21
                     AGENDA ITEM NO. 5
22
    DOCKET NO. 44911; SOAH DOCKET NO.
23  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.WS - APPLICATION OF
    BOLIVAR UTILITY SERVICES, LLC FOR A
24  RATE/TARIFF CHANGE .............................   12

25

3

# TABLE OF CONTENTS

PAGE

AGENDA ITEM NO. 6

DOCKET NO. 45645 - COMPLAINT OF MONICA
BRIEGER AGAINST SWWC UTILITIES, INC.
D/B/A HORNSBY BEND UTILITY .................. CONSENTED

AGENDA ITEM NO. 7

DOCKET NO. 45902 - PETITION OF CARMA
EASTON, LLC TO AMEND CREEDMOOR-MAHA
WATER SUPPLY CORPORATION'S CERTIFICATE
OF CONVENIENCE AND NECESSITY IN TRAVIS
COUNTY BY EXPEDITED RELEASE ...................... 13

AGENDA ITEM NO. 8

DOCKET NO. 46148 - PETITION OF LAS
COLINAS SAN MARCOS PHASE I, LLC TO
AMEND CRYSTAL CLEAR SPECIAL UTILITY
DISTRICT'S CERTIFICATE OF CONVENIENCE
AND NECESSITY IN HAYS COUNTY BY EXPEDITED
RELEASE ........................................ 13

AGENDA ITEM NO. 9

DOCKET NO. 46262 - PETITION FOR AN
ORDER APPOINTING A TEMPORARY MANAGER TO
PEACH CREEK DAM AND LAKE CLUB, INC. IN
MONTGOMERY COUNTY ........................... CONSENTED

AGENDA ITEM NO. 10

DOCKET NO. 46309 - PETITION FOR AN
ORDER APPOINTING A TEMPORARY MANAGER TO
AERO VALLEY WATER SERVICE IN DENTON
COUNTY ...................................... CONSENTED

AGENDA ITEM NO. 11

PROJECT NO. 46151 - PROJECT TO AMEND 16
TEX. ADMIN. CODE § 24.113, RELATING TO
REVOCATION OR AMENDMENT OF A WATER OR
SEWER CERTIFICATE AND § 24.120 RELATING
TO SINGLE CERTIFICATION IN INCORPORATED
OR ANNEXED AREAS ............................. NOT HEARD

1                          TABLE OF CONTENTS

2                                                              PAGE

3                          AGENDA ITEM NO. 12

4    DISCUSSION AND POSSIBLE ACTION
     REGARDING IMPLEMENTATION OF STATE
5    LEGISLATION AFFECTING WATER AND SEWER
     COMPANIES, CURRENT AND PROJECTED
6    RULEMAKING PROJECTS, AND COMMISSION
     PRIORITIES ................................. NOT HEARD

7                            COMMUNICATIONS

8
                           AGENDA ITEM NO. 13
9
     DOCKET NO. 42660; SOAH DOCKET NO.
10   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 - APPLICATION OF GS TEXAS
     VENTURES, LLC FOR DESIGNATION AS AN
11   ELIGIBLE TELECOMMUNICATIONS CARRIER (ETC)
     AND AS AN ELIGIBLE TELECOMMUNICATIONS
12   PROVIDER (ETP) ................................. 14

13                         AGENDA ITEM NO. 14

14   DOCKET NO. 46091; SOAH DOCKET NO.
     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 - NOTICE OF VIOLATION BY
15   GPSPS, INC. OF PURA § 55.303, RELATED
     TO VERIFICATION OF CHANGE, AND
16   § 17.151(a) (2), RELATED REQUIREMENTS
     FOR SUBMITTING CHARGES; AND 16 TAC
17   § 26.130(c) (1), RELATED TO CHANGES BY
     A TELECOMMUNICATIONS UTILITY AND
18   § 26.32(d), RELATED TO PROTECTION
     AGAINST UNAUTHORIZED BILLING CHARGES ......... CONSENTED

19
                           AGENDA ITEM NO. 15
20
     DOCKET NO. 45971 - APPLICATION OF DELL
21   TELEPHONE COOPERATIVE, INC. TO RECOVER
     FUNDS FROM THE TEXAS UNIVERSAL SERVICE
22   FUND PURSUANT TO PURA § 56.025 AND 16
     TAC § 26.406 ................................. 14

23

24

25

5

1                    TABLE OF CONTENTS

2                                                    PAGE

3                    AGENDA ITEM NO. 16

4  PROJECT NO. 45634 - 2017 REPORT ON THE
   SCOPE OF COMPETITION IN
5  TELECOMMUNICATIONS MARKETS IN TEXAS .............    25

6                    AGENDA ITEM NO. 17

7  DISCUSSION AND POSSIBLE ACTION
   REGARDING IMPLEMENTATION OF STATE AND
8  FEDERAL LEGISLATION AFFECTING
   TELECOMMUNICATIONS MARKETS, CURRENT
9  AND PROJECTED RULEMAKING PROJECTS, AND
   COMMISSION PRIORITIES ...................... NOT HEARD

10                       ELECTRIC

11                   AGENDA ITEM NO. 18

12
   DOCKET NO. 45084; SOAH DOCKET NO.
13 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 - APPLICATION OF ENTERGY
   TEXAS, INC. FOR APPROVAL OF A
14 TRANSMISSION COST RECOVERY FACTOR ............... 27/30

15                   AGENDA ITEM NO. 19

16 DOCKET NO. 45414; SOAH DOCKET NO.
   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 - REVIEW OF THE RATES OF
17 SHARYLAND UTILITY COMPANY ...................... 30/31

18                   AGENDA ITEM NO. 20

19 DOCKET NO. 45885; SOAH DOCKET NO.
   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 - APPLICATION OF EL PASO
20 ELECTRIC COMPANY FOR APPROVAL TO
   ADJUST ITS ENERGY EFFICIENCY COST
21 RECOVERY FACTOR AND REQUEST FOR
   REVISED COST CAP ........................... NOT HEARD

22

23

24

25

6

TABLE OF CONTENTS

PAGE

AGENDA ITEM NO. 21

DOCKET NO. 45915; SOAH DOCKET NO.
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 - APPLICATION OF ENTERGY
TEXAS, INC. FOR AUTHORITY TO ADJUST
ITS ENERGY EFFICIENCY COST RECOVERY
FACTOR ........................................   70

AGENDA ITEM NO. 22

DOCKET NO. 46106 - APPLICATION OF
INVENERGY WIND GLOBAL, LLC FOR
APPROVAL PURSUANT TO SECTION 39.158
OF THE PUBLIC UTILITY REGULATORY ACT ........ CONSENTED

AGENDA ITEM NO. 23

DOCKET NO. 46291 - AGREED NOTICE OF
VIOLATION AND SETTLEMENT AGREEMENT
RELATING TO CITY OF AUSTIN D/B/A
AUSTIN ENERGY'S NONCOMPLIANCE WITH
PURA § 39.151, 16 TAC §§ 25.503(f) AND
25.507(f)(2) AND ERCOT PROTOCOLS
§ 8.1.3.3.1, RELATED TO SUSPENSION OF
QUALIFICATION OF NON-WEATHER-SENSITIVE
EMERGENCY RESPONSE SERVICE RESOURCES
AND/OR THEIR QUALIFIED SCHEDULING
ENTITIES ..................................... CONSENTED

AGENDA ITEM NO. 24

DOCKET NO. 46307 - AGREED NOTICE OF
VIOLATION AND SETTLEMENT AGREEMENT
RELATING TO SOUTHWESTERN PUBLIC SERVICE
COMPANY'S VIOLATION OF PURA § 38.005
AND 16 TAC § 25.52, CONCERNING
RELIABILITY AND CONTINUITY OF SERVICE ........ CONSENTED

AGENDA ITEM NO. 25

PROJECT NO. 45633 - PROJECT TO IDENTIFY
ISSUES PERTAINING TO LUBBOCK POWER AND
LIGHT PROPOSAL TO BECOME PART OF THE
ELECTRIC RELIABILITY COUNCIL OF TEXAS ............   71

7

TABLE OF CONTENTS

PAGE

AGENDA ITEM NO. 26

PROJECT NO. 45635 - SCOPE OF COMPETITION
IN ELECTRIC MARKETS REPORT ....................... 78

AGENDA ITEM NO. 27

PROJECT NO. 40979 - PROCEEDING TO TRACK
COMPLIANCE WITH THE TERMS AND CONDITIONS
SET FORTH IN THE COMMISSION'S ORDER
ISSUED IN DOCKET NO. 40346 AND THE NUS,
AND ASSOCIATED STUDIES ARISING FROM THE
ORDER AND/OR NUS ............................ NOT HEARD

AGENDA ITEM NO. 28

PROJECT NO. 42302 - REVIEW OF THE
RELIABILITY STANDARD IN THE ERCOT
REGION ........................................ 82

AGENDA ITEM NO. 29

PROJECT NO. 42750 - MATTERS PERTAINING
TO OR ARISING OUT OF THE CHAPTER 11
BANKRUPTCY OF ENERGY FUTURE HOLDINGS .............. 86

AGENDA ITEM NO. 30

PROJECT NO. 37344 - INFORMATION RELATED
TO THE ENTERGY REGIONAL STATE COMMITTEE ...... NOT HEARD

AGENDA ITEM NO. 31

PROJECT NO. 41210 - INFORMATION RELATED
TO THE SOUTHWEST POWER POOL REGIONAL
STATE COMMITTEE ............................. NOT HEARD

AGENDA ITEM NO. 32

PROJECT NO. 41211 - INFORMATION RELATED
TO THE ORGANIZATION OF MISO STATES ........... NOT HEARD

1                         TABLE OF CONTENTS

2                                                           PAGE

3                     AGENDA ITEM NO. 33

4    DISCUSSION AND POSSIBLE ACTION ON
     ELECTRIC RELIABILITY; ELECTRIC MARKET
5    DEVELOPMENT; ERCOT OVERSIGHT;
     TRANSMISSION PLANNING, CONSTRUCTION,
6    AND COST RECOVERY IN AREAS OUTSIDE OF
     ERCOT; SPP REGIONAL STATE COMMITTEE
7    AND ELECTRIC RELIABILITY STANDARDS
     AND ORGANIZATIONS ARISING UNDER FEDERAL
8    LAW ...................................... NOT HEARD

9                     AGENDA ITEM NO. 34

10   DISCUSSION AND POSSIBLE ACTION
     REGARDING IMPLEMENTATION OF STATE AND
11   FEDERAL LEGISLATION, AFFECTING
     ELECTRICITY MARKETS, CURRENT AND
12   PROJECTED RULEMAKING PROJECTS, AND
     COMMISSION PRIORITIES ....................... NOT HEARD

13                         GENERAL

14                   AGENDA ITEM NO. 35

15   PROJECT NO. 38639 - PROJECT RELATING
16   TO LIVE INTERNET BROADCAST OF PUBLIC
     HEARINGS AND MEETINGS PURSUANT TO
17   PURA § 12.204 ............................... CONSENTED

18                   AGENDA ITEM NO. 36

19   PROJECT NO. 46244 - REQUEST FOR
     PROPOSAL FOR ASSISTANCE IN REVIEWING
20   THE CHANGE IN CONTROL FILING OF ENERGY
     FUTURE HOLDINGS CORPORATION ................. CONSENTED

21                   AGENDA ITEM NO. 37

22   PROJECT NO. 45746 - REQUEST FOR
23   QUALIFICATIONS FOR OUTSIDE COUNSEL TO
     REPRESENT THE PUBLIC UTILITY COMMISSION
24   OF TEXAS WITH REGARD TO FEDERAL
     PROCEEDINGS .................................. CONSENTED
25

9

```
1              TABLE OF CONTENTS

2                                                PAGE

3                   AGENDA ITEM NO. 38
```

PROJECT NO. 45872 - REQUEST FOR
PROPOSALS TO PROVIDE RELAY ACCESS
SERVICES ...................................... CONSENTED

```
6                   AGENDA ITEM NO. 39
```

DISCUSSION AND POSSIBLE ACTION
REGARDING AGENCY REVIEW BY SUNSET
ADVISORY COMMISSION, OPERATING BUDGET,
STRATEGIC PLAN, APPROPRIATIONS
REQUEST, PROJECT ASSIGNMENTS,
CORRESPONDENCE, STAFF REPORTS, AGENCY
ADMINISTRATIVE ISSUES, FISCAL MATTERS
AND PERSONNEL POLICY ........................ NOT HEARD

```
11                  AGENDA ITEM NO. 40
```

DISCUSSION AND POSSIBLE ACTION
REGARDING CUSTOMER SERVICE ISSUES,
INCLUDING BUT NOT LIMITED TO
CORRESPONDENCE AND COMPLAINT ISSUES .......... NOT HEARD

```
15                  AGENDA ITEM NO. 41
```

DISCUSSION AND POSSIBLE ACTION ON
INFRASTRUCTURE RELIABILITY, EMERGENCY
MANAGEMENT, AND HOMELAND SECURITY ............ NOT HEARD

PROJECT NO. 45448 - OPEN MEETING AGENDA
ITEMS WITHOUT AN ASSOCIATED CONTROL NUMBER ........   96

```
19                  AGENDA ITEM NO. 42
```

ADJOURNMENT FOR CLOSED SESSION ....................   97

RECONVENING OF OPEN MEETING .......................   98

PROCEEDINGS CONCLUDED .............................   98

REPORTER'S CERTIFICATE ............................   99

10

```
 1                  P R O C E E D I N G S
 2              THURSDAY, SEPTEMBER 22, 2016
 3                      (9:35 a.m.)
 4          CHAIRMAN NELSON:  Good morning.  This
 5  meeting of the Public Utility Commission of Texas will
 6  come to order to consider matters that have been duly
 7  posted with the Texas Secretary of State for today,
 8  September 22, 2016.
 9               Stephen, would you please walk us through
10  the concern agenda?
11          MR. JOURNEAY:  Good morning,
12  Commissioners.  By individual ballot the following items
13  were place on your consent agenda:  1, 2, 3, 6, 9, 10,
14  14, 22 through 24, 35 through 38.
15          CHAIRMAN NELSON:  The Chair will entertain
16  a motion to approve the consent agenda.
17          COMM. ANDERSON:  You have the motion.
18          COMM. MARQUEZ:  And I second.
19          CHAIRMAN NELSON:  Okay.  And we're not
20  taking up Items 11 and 20 today.  So 1 through 3 were
21  consented.
22
23
24
25
```

11

```
 1                        WATER

 2                  AGENDA ITEM NO. 4

 3   DOCKET NO. 42860; SOAH DOCKET NO.
     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.WS - APPLICATION OF DOUGLAS
 4   UTILITY COMPANY TO CHANGE WATER AND
     SEWER RATE/TARIFF IN HARRIS COUNTY,
 5   TEXAS

 6                 CHAIRMAN NELSON:  Let me pull up Item 4,

 7   Docket No. 4286 --

 8                 COMM. ANDERSON:  What was the other one?

 9   I'm sorry.  Oh, 20.

10                 CHAIRMAN NELSON:  11 and 20.

11                 COMM. ANDERSON:  20.  I see it.  I'm

12   sorry.

13                 CHAIRMAN NELSON:  Let me call up Item 4,

14   Docket No. 42860.  Commissioner Marquez filed a memo,

15   and I agree and I would adopt the PFD with the changes

16   that you have set out in your memo.

17                 COMM. ANDERSON:  I agree --

18                 COMM. MARQUEZ:  Okay.

19                 COMM. ANDERSON:  -- and would so move.

20                 CHAIRMAN NELSON:  Do we need to discuss

21   the time frame?  Do you agree with the time frame for

22   the ALJ?

23                 COMM. MARQUEZ:  You know, I think that

24   they made a well-reasoned argument.  So I'm fine.

25                 CHAIRMAN NELSON:  I do, too.
```

12

1          COMM. ANDERSON:  I agree.  It's close

2   enough for government work, so to speak.

3          COMM. MARQUEZ:  So you made the motion?

4          CHAIRMAN NELSON:  So you move?

5          COMM. ANDERSON:  I would move, yes.

6          COMM. MARQUEZ:  And I second.

7          CHAIRMAN NELSON:  Okay.  Thank you.  Okay.

8                AGENDA ITEM NO. 5

9   DOCKET NO. 44911; SOAH DOCKET NO.
    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.WS - APPLICATION OF
10  BOLIVAR UTILITY SERVICES, LLC FOR A
    RATE/TARIFF CHANGE
11

12          CHAIRMAN NELSON:  That brings us to item

13  5 -- I actually consented this one -- Docket No. 44911.

14          COMM. MARQUEZ:  I think I may have not

15  consented this one because I think that Staff wanted to

16  make a few stylistic changes to the language.

17          CHAIRMAN NELSON:  Okay.  Maybe we

18  shouldn't have consented it.  Okay.

19          COMM. ANDERSON:  I would move that we

20  approve -- we approve the proposed order but delegate to

21  Staff the ability to make nonsubstantive changes.

22          COMM. MARQUEZ:  I second.

23          CHAIRMAN NELSON:  Okay.  That takes us to

24  Item 6 which was consented.

25

13

1                           AGENDA ITEM NO. 7

2  DOCKET NO. 45902 - PETITION OF CARMA
   EASTON, LLC TO AMEND CREEDMOOR-MAHA
3  WATER SUPPLY CORPORATION'S CERTIFICATE
   OF CONVENIENCE AND NECESSITY IN TRAVIS
4  COUNTY BY EXPEDITED RELEASE

5                  CHAIRMAN NELSON:  Item 7.  Commissioner

6  Marquez filed a memo, and I would adopt the proposed

7  order of the changes set out in your memo.

8                  COMM. ANDERSON:  I agree and would so

9  move.

10                 COMM. MARQUEZ:  And I second.

11                 CHAIRMAN NELSON:  Okay.

12                         AGENDA ITEM NO. 8

13 DOCKET NO. 46148 - PETITION OF LAS
   COLINAS SAN MARCOS PHASE I, LLC TO
14 AMEND CRYSTAL CLEAR SPECIAL UTILITY
   DISTRICT'S CERTIFICATE OF CONVENIENCE
15 AND NECESSITY IN HAYS COUNTY BY EXPEDITED
   RELEASE
16

17                 CHAIRMAN NELSON:  Item 8, Docket No.

18 46148.  This is groundhog day.

19                 (Laughter)

20                 CHAIRMAN NELSON:  You filed a memo,

21 Commissioner Marquez, and I would adopt the proposed

22 order with the changes set out in the memo and would so

23 entertain a motion.

24                 COMM. ANDERSON:  You have that motion.

25                 COMM. MARQUEZ:  And I second.

1           CHAIRMAN NELSON:  9 is consented.  10 is

2    consented.  11 and 12 are not taken up.  So if you came

3    here for water you can leave.

4                    COMMUNICATIONS

5              AGENDA ITEM NOS. 13 AND 15

6    DOCKET NO. 42660; SOAH DOCKET NO.
     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 - APPLICATION OF GS TEXAS
7    VENTURES, LLC FOR DESIGNATION AS AN
     ELIGIBLE TELECOMMUNICATIONS CARRIER (ETC)
8    AND AS AN ELIGIBLE TELECOMMUNICATIONS
     PROVIDER (ETP)
9
     DOCKET NO. 45971 - APPLICATION OF DELL
10   TELEPHONE COOPERATIVE, INC. TO RECOVER
     FUNDS FROM THE TEXAS UNIVERSAL SERVICE
11   FUND PURSUANT TO PURA § 56.025 AND 16
     TAC § 26.406
12

13           CHAIRMAN NELSON:  Okay.  That takes us to

14   Item 13.

15           I'm going to call up 13 and 15 together

16   just momentarily and that is -- Item 13 is Docket No.

17   42660, and this is the Application of GS Texas Ventures

18   that we talked about last time, and then Item 15 is an

19   Application of Dell Telephone Cooperative to recover

20   funds from the TUSF fund.

21           The reason I pulled this up is just to

22   elaborate on what we have enforced as public policy

23   here, and that is to continue to shrink the size of the

24   USF.

25           In this case -- and I don't know.  Maybe

1   we need to get Staff to open a project or something, but
2   in Docket No. 45971 it's an application of a company to
3   recover funds from USF, and Texas is now covering almost
4   $900,000 of replacement funds from the Federal USF as
5   the Federal USF has cut funding.

6          So I think we need to look at what we need
7   to do to continue to make the fund solvent.  Now let me
8   go back to Item 13, and I want to start just by saying,
9   you know, this is an application for a company to be
10  designated as an ETC and ETP which would allow them to
11  get funding under the USF fund for both Texas and the
12  federal government.

13         And when I go back to 1995, which was a
14  long time ago, but that's when Texas opened the telecom
15  market, and in the late '90s we put in place the USF
16  fund, and that was really to make those subsidies that
17  previously had been, you know, just flowing from
18  customer to customer or service to service more explicit
19  so that the market could be restructured.

20         And then in 2000 when we made -- when the
21  Commission made the decision about what the standard
22  should be on USF funding, you know, they set out a
23  standard that, "Okay, you don't have to be out there
24  providing service but you need to be offering service."
25         And now we're faced with this case today

1    where it's a company that will only provide service as I

2    understand it from the application in AT&T and Verizon

3    territory.

4              Well, those -- AT&T and Verizon --

5    territories have been deregulated.  So starting in 2005

6    and continuing on the Legislature set a policy that if

7    areas were deregulated, that because we had to find

8    there was competition in those areas that those

9    companies would not receive USF funding.

10             So, in other words, if you want to be free

11   from the reigns of regulation then you don't get USF

12   funding.  So last session some of the CLECs came in and

13   said, "We want to" -- to the Legislature -- "We want to

14   continue receiving funding even though these areas have

15   been deregulated," and the Legislature agreed to do it

16   for a two-year period.

17             One concern is I think they are going to

18   go in and ask for a continuation again and it will end

19   up like the PTC, and, you know, maybe that's not the

20   case, but -- so when I look at the policies that -- you

21   know, because so many of our decisions are driven by

22   public policy considerations and not black-letter law --

23   so when I look at the policy I just want to make sure

24   that we are not lessening the standards for getting

25   these designations from what they were in 2000.

1          So, as I said, when we asked for briefing

2  on the issue of 9-1-1, I still -- I think at this point

3  we can go down one of two ways.  I think we can continue

4  with the remand on the 9-1-1 issue.

5          The applicant does not seem to think

6  that's necessary and wants for us to make a decision.

7  So I would -- as I said at the last Open Meeting, I

8  would deny it on several grounds.

9          I think Staff did a really good job, as I

10  said at the last meeting.  First, I don't believe

11  they've met their burden of proof for designation as an

12  ETC or ETP.  The burden is with them.  It has to be more

13  than mere promises to act.

14          I think the information in the record at

15  least as far as I'm concerned about how their company is

16  going to move forward from a technological standpoint is

17  very weak and confusing, and I think as the hearing went

18  on, you know, various aspects of the case changed over

19  time.

20          So because it is -- I don't think they've

21  met their burden of proof.  I would deny it, but I also

22  don't think GSTV has satisfied the own facilities

23  requirement.

24          I do agree with Staff that this is -- that

25  a company must provide all four functionalities.  Even

18

1  the ALJ recognized that that was an open question, and I
2  would also find that their ETP designation is not
3  consistent with the public interest.

4          You know, their service is not innovative
5  or new technology.  Keep mind in again that they are
6  applying in an area and they would be getting government
7  funds in an area that has been deregulated.  So this
8  Commission has found that there is competition in the
9  area.

10         So for all those reasons I would deny it.
11         COMM. MARQUEZ:  I think your points on the
12  public policy considerations here are very well taken,
13  and I am very open to having conversations regarding the
14  scope of competition report on how this Commission
15  should advise the Legislature in this next upcoming
16  session regarding those funds.

17         However, I do still think that this
18  application under the law as it's written today I think
19  that they meet the qualifications and I would still
20  adopt the PDF today.

21         CHAIRMAN NELSON:  Commissioner Anderson.
22         MR. JOURNEAY:  Before we go further I
23  might point out, we're only posted to consider a
24  preliminary order.  So we weren't foresightful enough
25  to --

19

1              CHAIRMAN NELSON:  Okay.  I was going by
2  the queues from -- by the applicant who asked for us to
3  make a decision today.  So --
4              MR. JOURNEAY:  I think you can discuss the
5  issues if you want to.
6              COMM. ANDERSON:  Yeah.  Let me deal with a
7  preliminary matter of the issue before us.
8              I would not grant -- not grant Staff leave
9  to file the response to the Applicant's response, and I
10  was then prepared to issue the preliminary order
11  thinking that that's what we had -- that we had more or
12  less decided to refer it to SOAH.
13              And I guess now we -- well, let me finish.
14              CHAIRMAN NELSON:  Okay.
15              COMM. ANDERSON:  Now that -- I mean -- and
16  so I don't think we can do anything but issue the
17  preliminary order, but if either of -- or -- either --
18  if both of you are ready to vote at the next Open
19  Meeting then I think we can delay the issue of the
20  preliminary order and I can -- and, frankly, I hadn't
21  mentally prepared to make a cut.
22              I'm inclined to go -- well, I was inclined
23  to go with the Chairman on this, but I'm willing
24  alternatively to refer it to SOAH on this fact question
25  because it does turn.

1              I mean, I can be persuaded, you know,
2   otherwise and I think Commissioner Marquez reaches a --
3   I mean, I understand where she's coming from given the
4   prior precedent.
5              So this is one of those really close
6   calls; although, again, I think the Chairman may have a
7   slightly better result based on the burden of proof, but
8   I'm really not ready to make that cut and we can't
9   anyway.
10              So depending on your preference we can
11  either vote the preliminary order out or --
12              (Simultaneous discussion)
13              CHAIRMAN NELSON:  Let's just -- my
14  preference would be to hold it.
15              COMM. ANDERSON:  -- or we can vote at the
16  next meeting.
17              CHAIRMAN NELSON:  Yeah.  My preference
18  would be to hold it and rule on the merits at the
19  next --
20              COMM. ANDERSON:  And then I can go back
21  and -- to be honest, I've got to refresh me recollection
22  on the record report.
23              CHAIRMAN NELSON:  Okay.  So let's --
24              COMM. ANDERSON:  And I apologize for sort
25  of not being prepared in that regard.

```
 1              COMM. MARQUEZ:  Well, it sounds like we're
 2   only, you know, posted for --
 3              (Simultaneous discussion)
 4              CHAIRMAN NELSON:  Posted, yeah.  You're
 5   prepared for what's posted.  Okay.  So let's just then
 6   move the final decision to the next Open Meeting.
 7              MR. JOURNEAY:  And that's fine, and we can
 8   push the good cause -- I mean, the leave request to that
 9   time if you want to also.
10              COMM. ANDERSON:  Well, I mean, I don't --
11   well --
12              MR. JOURNEAY:  I mean, because I wouldn't
13   want to issue -- my preference is we would not issue an
14   order separately on that.  We would incorporate your
15   ruling in the --
16              CHAIRMAN NELSON:  That's fine.
17              COMM. ANDERSON:  Oh, okay.  Then I
18   withdraw my motion at this time.
19              CHAIRMAN NELSON:  Okay.  And I also -- I
20   don't have a problem with striking Staff's pleading, but
21   I also think that the filing of GSTV doesn't meet the
22   order we issued either, because they put out an order
23   that said -- Staff put out -- Stephen's group put out an
24   order that asked for this issue to be responded to.
25              GSTV filed something, elected not to file
```

22

1   a response, and then when Staff filed their response
2   then GSTV responded on the merits of it, not really just
3   limiting their response to Staff's issue.

4           So I would strike their pleading as well,
5   but we can take this up next time.  Okay.  Let's move to
6   Item 14 which was consented.  15, I took -- we took the
7   two up together just to show you.  Let me go back to 13.
8   I just can't let 13 go.

9           COMM. MARQUEZ:  I'm kind of with you.  I
10  have some comments on 13, too.

11          CHAIRMAN NELSON:  Okay.  All I want to say
12  about 13 is this:  I understand what you're saying and
13  totally get it.

14          I'm not suggesting that we change the law
15  or even -- I'm suggesting that what we interpret is
16  consistent with the law as it exists.

17          All I'm saying is from a public policy
18  standpoint, if we grant this application I think we're
19  going back in time and I think we're loosening the
20  standard that we adopted in 2000, and that's my point.

21          I'm not saying that because I disagree
22  with the statute that was passed that we should deny
23  this.  I'm absolutely not saying that.  So I just wanted
24  to clarify that.

25          COMM. MARQUEZ:  No.  And I totally

1   understand that, and here's where I'm coming from:
2   These laws were written in a broad way to allow the
3   market to explode.  It has, and it may be time to
4   revisit all of that, and I'm so happy to have that
5   conversation and let's do a thorough breakdown of that
6   so we can advise the Legislature in a really meaningful
7   way of what they should be thinking about when they're
8   approached next session.
9                  But at the same time we have another
10  policy interest and this Commission long before I ever
11  came to it has been renown for being efficient, and this
12  case has languished for two years.
13                 And this is a company that -- and so I
14  appreciate the fact that you're ready to make a decision
15  today because -- you know, cut the pain.  If the answer
16  is going to be "No," let's let them go, but I think that
17  they are operating under the rules as written currently
18  today, and so I would say let's maintain the spirit of
19  this Commission.
20                 Let's let them go do business.  If they
21  don't meet the requirements then they will not be able
22  to make it in this market, and -- but I just -- I feel
23  like this administratively has not been something that
24  is what I'm used to seeing from this Commission.
25                 CHAIRMAN NELSON:  Well, I think these

1    cases are complex and they take a long time.

2              I agree that this could have been

3    processed more quickly, but I also think that they need

4    to be thorough because I think we're giving subsidies.

5              USF are subsidies, and I think it is --

6    and every ratepayer or every telephone customer has a

7    line item on their bill where they're paying for this.

8              And so -- and you can say, "Well, that

9    really goes to the issue of whether they should get

10   payment once they file, but the thing is they get

11   payment once they file.  Once they become -- once they

12   get this designation they get payment.

13             So we're giving government money in a

14   competitive market, and I just think we need to tread

15   carefully.  So we will take that up next time.  Let's go

16   to Item 15.

17             And, again, I think I would like Staff to

18   look at -- outside of this docket the concept of what

19   options we have, and maybe it's something that goes in

20   our legislative recommendation, but what options we have

21   with respect to payments and federal USF going down and

22   then Texas being required to make those payments, but,

23   otherwise, I'm okay with this order.

24             COMM. ANDERSON:  Then I would move

25   adoption of the order.

```
 1                    COMM. MARQUEZ:  I second.
 2                    AGENDA ITEM NO. 16
 3   PROJECT NO. 45634 - 2017 REPORT ON THE
     SCOPE OF COMPETITION IN
 4   TELECOMMUNICATIONS MARKETS IN TEXAS
 5                    CHAIRMAN NELSON:  Okay.  Then, that takes
 6   us to Item 16 --
 7                    (Simultaneous discussion)
 8                    COMM. ANDERSON:  Which actually is sort of
 9   relevant to what --
10                    CHAIRMAN NELSON:  -- is the scope of
11   competition report.
12                    COMM. ANDERSON:  -- that's relevant to
13   with what you've been talking about.
14                    CHAIRMAN NELSON:  So are you guys ready
15   to -- you guys.  Sorry.  Are the two of you ready to
16   start looking at recommendations?
17                    I think maybe at this -- at the next
18   meeting or maybe the one after that we should be
19   prepared to start giving Staff our legislative
20   recommendations.
21                    I've always found in the past that --
22   because we have so many weighty issues in front of us,
23   sometimes this slips until about December, not because
24   of Staff.  The legislative recommendations come from us.
25                    So I think the sooner the better.  And
```

1  I -- in terms of the draft I really -- I know some of it

2  needs to be updated -- right -- but I also just need

3  probably a little more time to look at it.

4         COMM. ANDERSON:  I have it read it and

5  really don't have a lot of comments.

6         I have a couple of grammatical things of

7  such, you know, earth-shaking importance such as

8  replacing the word "impacted" with "effect," but I do

9  think that your -- that the issue you raised in the

10  other dockets probably would make a good legislative

11  recommendation.

12         COMM. MARQUEZ:  Yeah.  And I'm glad we're

13  starting --

14         COMM. ANDERSON:  But I'm also more than

15  happy to engage in a substantive conversation at the

16  next Open Meeting or the meeting thereafter.

17         CHAIRMAN NELSON:  And I do really think

18  both of those issues need to be fleshed out as

19  recommendations, the one with respect to funding for

20  CLECs after the issue has been deregulated which -- and

21  the other, though, would as well be the issue of Texas

22  paying when the Federal USF fund stops paying.

23         COMM. ANDERSON:  Well, the real issue

24  is -- I mean, it seems to me the most important is that

25  latter, that as the federal support is curtailed we end

1  up picking up at least part of the gap, and that was

2  directed by the Legislature and the Legislature needs

3  to --

4              COMM. MARQUEZ:  At least get our input.

5              COMM. ANDERSON:  Yeah.  We need to tell

6  them that this -- remind them, "This is what's

7  happening.  Is this what you still want" --

8              CHAIRMAN NELSON:  Pam might quit.

9              COMM. ANDERSON:  -- "want to happen."

10             COMM. MARQUEZ:  And -- yeah.

11             CHAIRMAN NELSON:  Okay.  That sounds fine

12  with me.  So we'll be back in touch.

13             MS. KAYSER:  Thank you.

14             CHAIRMAN NELSON:  Okay.  So 17 is not

15  taken up.

16                       ELECTRIC

17                   AGENDA ITEM NO. 18

18  DOCKET NO. 45084; SOAH DOCKET NO.
    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 - APPLICATION OF ENTERGY
19  TEXAS, INC. FOR APPROVAL OF A
    TRANSMISSION COST RECOVERY FACTOR
20

21             CHAIRMAN NELSON:  That takes us to

22  electric.  Let's move to Docket No. 45084.  This is the

23  Application of Entergy for approval of TCRF, and,

24  Commissioner Anderson, you filed a memo.  If you would

25  like to lay out your memo.

1          COMM. ANDERSON:  Yeah.  I would -- there
2  were both -- this before us is on motions for rehearing
3  that were filed by TIEC, the Texas Industrial Energy
4  Consumers, as well as the Company itself.

5          TIEC raised the issue of whether load
6  growth ought to be evaluated.  As much as I sympathize
7  with that approach we've consistently said, "No."  So I
8  would -- because they haven't raised any new argument, I
9  would deny their motion for rehearing.

10         The Company raised -- raised five issues
11 in their motion for rehearing, and I would grant the
12 motion for rehearing to modify and supplement our order,
13 but with respect to the particular issues I would deny
14 their -- I reject any changes to the order that -- how
15 do I say this?

16         I'm granting the motion for rehearing but
17 rejecting their substantive -- rejecting their arguments
18 on the merits --

19         CHAIRMAN NELSON:  Right.

20         COMM. ANDERSON:  -- and would affirm the
21 decision but with the modifications that are laid out in
22 my memo with respect to some of the particular issues.

23         CHAIRMAN NELSON:  And I was fine with your
24 memo.  I did think with respect to the issue of the MISO
25 Schedule 11 revenues that that was another area where

1   that should be reconsidered in the next rate case.

2               We didn't specifically state that, but I

3   think that would be consistent with the concept of

4   revisiting load growth, too, but --

5               COMM. ANDERSON:  Yes.

6               CHAIRMAN NELSON:  -- but I'm fine with the

7   way your memo is written.

8               COMM. MARQUEZ:  I am, too.

9               COMM. ANDERSON:  And with that, I would

10  move adoption of the order as modified by our memo

11  and -- or, rather -- I'm sorry.

12              CHAIRMAN NELSON:  Reject motions for

13  rehearing.

14              COMM. ANDERSON:  -- reject the motions for

15  rehearing -- well, I would grant --

16              (Simultaneous discussion)

17              MR. JOURNEAY:  Grant rehearing.

18              CHAIRMAN NELSON:  Yes.

19              COMM. ANDERSON:  -- I would reject TIEC's

20  motion for rehearing, grant ETI's motion for rehearing

21  and modify the order consistent with my memo and our

22  discussion.

23              COMM. MARQUEZ:  And I second.

24              CHAIRMAN NELSON:  Okay.

25

30

```
1                         AGENDA ITEM NO. 19
2    DOCKET NO. 45414; SOAH DOCKET NO.
     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 - REVIEW OF THE RATES OF
3    SHARYLAND UTILITY COMPANY
4                    CHAIRMAN NELSON:  And that brings us to
5    Item 19.  This is the Sharyland rate case, and some of
6    the parties have filed a joint proposal and a joint
7    motion for approval of entry of a joint proposal in lieu
8    of ruling on threshold issues.
9                    COMM. ANDERSON:  Oh, one thing I forgot.
10   Can we go back to the other item?
11                   CHAIRMAN NELSON:  18?
12                   COMM. ANDERSON:  Yes.  I had --
13                      AGENDA ITEM NO. 18 (CONT'D)
14   DOCKET NO. 45084; SOAH DOCKET NO.
     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 - APPLICATION OF ENTERGY
15   TEXAS, INC. FOR APPROVAL OF A
     TRANSMISSION COST RECOVERY FACTOR
16
17                   CHAIRMAN NELSON:  Let me call back Item
18   18.
19                   COMM. ANDERSON:  I had raised the issue of
20   reopening the TCRF rule with respect to non-ERCOT
21   utilities to deal with some of the issues that have been
22   raised in litigation in these -- in these proceedings,
23   and so with your -- if you agree that that ought to be
24   done, we would so direct Staff --
25                   CHAIRMAN NELSON:  I'm fine with that.
```

31

```
 1                    COMM. ANDERSON:  -- as laid out in my
 2    memo.
 3                    COMM. MARQUEZ:  Yeah, I agree.
 4                    COMM. ANDERSON:  I apologize for skipping
 5    over that.
 6                    CHAIRMAN NELSON:  Okay.  So --
 7                    COMM. ANDERSON:  It's Rule 25.239.
 8                    CHAIRMAN NELSON:  I agree with that.
 9                    COMM. MARQUEZ:  Yeah.
10                    CHAIRMAN NELSON:  We're just piling the
11    work on Staff.
12                    AGENDA ITEM NO. 19 (CONT'D)
13    DOCKET NO. 45414; SOAH DOCKET NO.
      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 - REVIEW OF THE RATES OF
14    SHARYLAND UTILITY COMPANY
15                    CHAIRMAN NELSON:  Okay.  So let's call --
16    let me call back up docket -- Item 19, Docket No. 45414.
17                    I've got some questions.  I don't know if
18    you-all have questions after the filing.  So if all the
19    parties who wish to be heard could come up, that would
20    be great.
21                    And really I would like to start by just
22    getting -- I know Sharyland and several of the parties
23    filed that joint proposal, and in the documents they
24    filed they indicated that they were trying to be
25    responsive to the concerns that we have with respect to
```

1  how this case moves forward from a procedural
2  standpoint.

3              I would really like for specifically
4  anybody, but Sharyland and Staff, to lay out this
5  proposal and explain what the purpose of it is and what
6  it's meant to accomplish and what it's not meant to
7  accomplish, and then we'll give a chance for anyone else
8  to respond.

9              COMM. ANDERSON: And in so doing could you
10 explain what it is you actually are asking the
11 Commission to do, because before us is a preliminary
12 order and the proposal which we'll get into the actual
13 merits of sort of the issues laid out, but -- so if we
14 agree with all or part of the proposal what -- you know,
15 what procedurally are we to do?

16             Are we going to just modify our
17 preliminary order and then issue it? I mean, you asked
18 for us to grant the proposal except -- or to adopt it,
19 except I don't know what that means. What's the --
20 there almost seems to be -- and Staff can address it a
21 little bit -- I won't say a difference of opinion but
22 the proposal is artfully drafted so as to smooth over
23 nuances of interpretation in order to live to fight
24 another day, if that's the way to phrase it.

25             So I'm sort of trying to understand the

 1    supporters of the proposal what they -- okay.  Even if
 2    we adopt it all or part of it, what does that really
 3    mean?  I mean, what does that mean procedurally in this
 4    case?
 5                  CHAIRMAN NELSON:  Go ahead.
 6                  MR. MENDIOLA:  Commissioners, Lino
 7    Mendiola on behalf of Sharyland Utilities.  I'm happy to
 8    start and we can certainly hear from Staff or others as
 9    you direct.
10                  Thank you for the opportunity to share
11    some thoughts about the joint proposal.  It was a strong
12    effort.  As you know, it's supported obviously by
13    Sharyland and by the Staff, also by the cities of
14    Midland and McAllen and Colorado City and the St.
15    Lawrence Cotton Growers; not opposed by several others
16    and then opposed by a couple of parties.
17                  The purpose of the joint proposal was to
18    create some clarity around how to proceed on this case.
19    So the background I think is well established.  Everyone
20    knows it.  Had a restructuring order from 35287, and
21    that order really did two things.  It approved a
22    restructuring and approved a methodology for ratemaking
23    under that restructuring.
24                  And then when the draft preliminary order
25    came out, as I understand it, the draft preliminary

34

1  order was going to not change the approval of the

2  restructuring -- made no effort to upset the

3  restructuring -- but it was going to change how the

4  rates were going to be set as they were determined in

5  35287, the ratemaking treatment under the restructuring.

6           So that created a bit of a disconnect

7  between the restructuring is still approved, the way the

8  Company has been operating for eight years is still

9  approved, but how rates are going to be set is going to

10 be different.

11          So that led to a lot of discussion, as you

12 can imagine.  And, again, to just set the history, the

13 way that rates have been previously set, including in

14 the prior rate case, are that rates were established on

15 a combined books and records basis for both the Asset

16 Company, SDTS, annual the Operating Company, Sharyland

17 Utilities; combine everything, calculate a single rate

18 of return, have that approved and then collect that from

19 ratepayers.

20          But the preliminary order -- the draft

21 preliminary order said it's not going to change the

22 restructuring, but now there needs to be a separate

23 regulatory review of the rates of the AssetCo, SDTS, and

24 the rates of Sharyland Utilities, the Operating Company.

25 We understand that.

1          And the concern was that there was some
2  uncertainty around how that was going to be done, and
3  some of the uncertainty is very practical and some of it
4  is very policy oriented and important.

5          So the practical uncertainties are things
6  like what rate filing package does an asset company use
7  when there isn't really a rate filing package designed
8  for that because the RFPs all have class allocation
9  schedules and things like that, and then practically
10 when should those two filings be made?

11         SDTS hasn't been called in to submit a
12 Rate Filing Package before.  Sharyland Utilities, the
13 Operating Company, has done that in the past.  So, you
14 know, what does it mean for SDTS to be called in and how
15 much time do we need to prepare a rate filing package
16 for SDTS?  Again, those are the practical concerns.

17         The more policy and fundamental concerns
18 were, we think that what the Commission was trying to do
19 was, again, to not upset the structuring, to maintain
20 the consideration of the allowance for the Company to
21 proceed as a REIT and a fundamental part of that REIT
22 structure -- maybe the fundamental part -- is this true
23 lease concept that I think is fairly set out in the
24 Staff's motion in support of the joint proposal.

25         And the true lease concept means that

36

1  there has to be a lease between asset company and
2  operating company that's an actual lease, not just a --
3  nominally a lease but not really a lease.

4         And the key part of that is that there has
5  to be an opportunity for profit and loss, and that lease
6  has to be set at fair market value.

7         So the way that has been done in the past,
8  as the Commission is well aware, is that the lease
9  payment has essentially been set at 97 percent of the
10 amount that the asset company would otherwise be allowed
11 to earn if it owned and operated the assets itself.

12        So, what we were trying to do in the joint
13 proposal is to say, "Look, it's very clear what the
14 Commission wants to do in some respects."  What the
15 Commission wants to do is regulate that lease payment.
16 The Commission wants to review the rates and the cost of
17 service of SDTS, the Asset Company, also wants to review
18 the rates of Sharyland and it wants to do it all in one
19 case for efficiency reasons to not just ramp up the rate
20 case expenses unnecessarily.

21        So what we were trying to do in the joint
22 proposal is to say, "All right.  How can we take those
23 things that the Commission seems to want in the draft
24 preliminary order and actually operationalize that so
25 that we know what Rate Filing Package to use, when we're

1   going to use it, how will the true lease concept be

2   considered and whether anybody is waiving any rights to

3   raise any concern later?"

4              And on that point I think that

5   Commissioner Anderson is exactly right.  We're trying to

6   get to the point where we can prosecute the rate case

7   with knowing what the rules of the road are and we're

8   not trying to jump to the conclusion at the end on any

9   topic.

10             That's why we called it a "joint proposal"

11  which is somewhat vague, but the idea is, it is a

12  proposal and no one -- the signatories and the

13  nonsignatories are foreclosing a right to make any

14  argument under the joint proposal or under the rate

15  case, including the viability of the REIT itself.

16             But what we're trying to do is establish

17  the rules under which this new regulatory regime,

18  regulation of the lease and regulation of the AssetCo

19  can proceed.  That's it.  There's really nothing more

20  than that.

21             COMM. MARQUEZ:  So you're trying to set

22  the rules, but Rule 1A is you don't have to follow the

23  rules.

24             MR. MENDIOLA:  No.

25             COMM. MARQUEZ:  I mean, everyone gets to

38

1  argue.  You're setting out this proposal of what the

2  rules are, but you just said that nobody is foreclosed

3  for arguing all of those same agreements that you came

4  to?

5          MR. MENDIOLA:  Well -- so -- good

6  question.  Let me clarify.  It kind of goes back to what

7  Commissioner Anderson was asking, "What are you asking

8  us to do here?"

9          COMM. MARQUEZ:  Yeah.  I mean, there is a

10 whole new piece of paper in front of us.

11         MR. MENDIOLA:  Sure.  So what we're asking

12 is for approval of the joint proposal in lieu of

13 answering the threshold questions but still issuing the

14 preliminary order on the issues that you typically see

15 in a preliminary order to be considered for each of the

16 two utilities.

17         So we're not trying to modify the issue

18 list in the preliminary order.  What we're trying to do

19 is present the Commission a way to answer the threshold

20 questions in a way that allows us to proceed and know

21 how to prosecute the case.

22         And so the questions that would be

23 foreclosed are, when do you need -- when does SDTS need

24 to file this rate case?  What Rate Filing Package would

25 you use?  But the questions that would not be foreclosed

39

1  are the -- is the return reasonable, are the expenses

2  reasonable, are the rates just and reasonable, all of

3  those issue.

4          So to be specific -- and Stephen can speak

5  to this further, obviously, but what we're asking is to

6  adopt the joint proposal in lieu of answering the

7  threshold questions, issue a preliminary order that

8  looks like a traditional preliminary order in the rate

9  case.

10          COMM. ANDERSON:  Can I ask this question

11  unless Commissioner Marquez continues to have questions.

12          COMM. MARQUEZ:  That's okay.

13          COMM. ANDERSON:  Okay.  When I sort of was

14  looking at this, it took me a bit to get my head

15  around -- I had to go back and look at the preliminary

16  order and sort of mesh.

17          It seems to me that the preliminary order,

18  there were seven threshold issues, and whether we

19  formally adopt the proposal or not or maybe -- again,

20  I'm going to lay that aside because I'm still a

21  little -- I'm trying to figure out exactly what it is we

22  do here, but -- of the -- I have, I guess, five out of

23  the seven are resolved or slashed in dispute as a result

24  of this joint proposal.

25          We could, for example -- or let me -- if,

```
 1  for example -- and it appears there's really only one
 2  big issue that separates you-all and the objectors.
 3             I'll give Phillip his opportunity to
 4  either agree or disagree in a minute, but it seemed to
 5  me that the CCN for PropCo, the lease as a tariff and a
 6  file package that separately includes -- or a file
 7  package -- a separate file package for each, for the
 8  PropCo and the AssetCo, that there's agreement there in
 9  effect.
10             So, theoretically, rather than issues --
11  threshold issues, we could even move those to issues not
12  to be addressed laying out what we think the
13  understanding is, and then we could eliminate -- because
14  I'm not sure it's necessary anyway -- we could eliminate
15  Threshold Issue No. 7 which is the issue of -- it was on
16  Page 13.  Bear with me because I flip around.  That was
17  the threshold issue about the question --
18             CHAIRMAN NELSON:  Of whether the order is
19  void.
20             COMM. ANDERSON:  Yes, or whether -- well,
21  it's a -- "Does the Commission order adopting this
22  stipulation and is contrary to PURA continue to have any
23  force and effect?
24             I don't know that whatever we decide here
25  seems to me supersedes that anyway.  So I'm not even
```

1   sure we need to have a threshold issue other than a

2   statement that this order -- that ultimately the

3   decision here will supersede -- to the extent it

4   conflicts with the prior order it supersedes it.

5             So that solves four of the seven threshold

6   issues, leaving the one that I am still sort of

7   pondering the -- this issue of the PropCo only getting

8   97 percent of the revenue requirement and the 3 percent

9   going to the property -- I mean, the operating company

10   which flows out of the concern about a real lease.

11             And I'll get to those questions later in

12   the discussion with both you and Staff and any other

13   party that wants to help me understand it.

14             Now, as I've laid that out, is that a

15   clear -- I mean, is that one way to analyze this problem

16   where -- you know, these issues sort of have been

17   addressed.  We would modify the preliminary order and

18   move them from -- excuse me -- from threshold issues

19   to -- maybe threshold issues not to be addressed.

20             I don't know what you call them, but where

21   we say, "This is what's" -- and in doing so might

22   actually help clarify in my mind the gray area

23   between -- in the proposed order that sort of brushes

24   over what may be agreements to fight another day to kind

25   of get me to the point where I understand what we're

42

1  doing here today with your proposal.

2              MR. MENDIOLA:  Sure.  I think that

3  generally --

4              CHAIRMAN NELSON:  If I'm not being

5  clear --

6              MR. MENDIOLA:  No, no.  I think you're

7  being clear, and I think that generally that's right,

8  but the starting point is a little bit different in

9  that, you know, when the Commission issued the request

10 for briefing on threshold issues and all the parties

11 filed very substantive briefs there was, you know, to

12 say the least, very wide disputes on how those issues

13 should be resolved.

14             And so at base what the joint proposal is

15 is an effort to eliminate those disputes and to say, "We

16 can agree on the vast majority of this," and that's

17 where I think, Commissioner Anderson, you're exactly

18 heading in the right direction.

19             And, for example, if we can agree that the

20 AssetCo needs to have a CCN, we agree with that.  We

21 agree that the Commission has regulatory oversight, full

22 regulatory review of the lease payments.  We agree with

23 that.

24             And then the question is, "All right.

25 Well, the 35287 order said that rates would be set on a

1   combined books and records basis."  We understood how to
2   do that.  We've done that a couple of times, and we
3   understand that the Commission wants us to do something
4   differently now on that.

5             So then the problem that we're solving for
6   is, "All right.  How can we do what the Commission wants
7   us to do and not -- you know, not put at risk the
8   business organization, the REIT structure," which we
9   don't believe the Commission wants to do.

10            In fact, there is a sentence in the draft
11  preliminary order that says that.  So that's the nut of
12  the real challenge, is how can we do that?

13            And through the effort of Staff and others
14  we've had several meetings and we thought that we had a
15  way to do exactly that; that is, proceed with the rate
16  case, two separate rate filing packages, one rate case,
17  file it in 90 days.

18            And our proposal for the true lease is the
19  way we've been historically doing it and others may have
20  other proposals for how to do the true lease, but that's
21  going to probably require some development in the record
22  and it will be presented back to the Commission for
23  ultimate approval.

24            COMM. ANDERSON:  So you would not --
25  because the joint proposal -- I want to take your line

44

1   of thought because that -- I mean, I'm inclined to try
2   to find a way forward here, and I am in no way
3   dismissing the concerns of Commissioner Marquez which
4   are real, particularly over this one open issue.

5            The joint proposal implied -- what you
6   said, you know, is a little different than what the
7   joint proposal implied, and that is that the parties
8   would somehow not be able to visit on the merits this
9   issue of the revenue requirement, the 100 percent that's
10  attributable to invested capital owned by the PropCo
11  but, in fact, the rates under the tariff, a/k/a lease,
12  would only be about 97 percent.

13           If, in fact -- again, if, in fact, that
14  issue remains alive for purposes of the parties engaging
15  in the rate case, that's one thing.  Then, in fact, we
16  solve, I think, the problem.  We may have a solution
17  that allows us to move forward.  If, on the other hand,
18  as I read the joint proposal, and without addressing the
19  merits of the request, that issue was foreclosed from
20  being debated in the rate case.  So which -- just to get
21  on the record, which is it so that I understand,
22  because, again, I'm trying here to see if there's a
23  way -- it's one thing to say the issue is foreclosed.

24           It's another to say, "We're not going to
25  decide it as a threshold issue and leave it to the rate

1    case to be hashed out with the facts later," because
2    that actually would be a good solution in my mind
3    because I have questions about the true lease.

4             I have questions.  Staff made some
5    assertions that the true lease would be explained or
6    fleshed out later was the statement, and my note is,
7    "How, when" -- you know, "how and "when?"

8             CHAIRMAN NELSON:  Yeah.  And I would like
9    to hear from Staff.

10            COMM. ANDERSON:  But if, in fact, the
11   "how" and "when" is the rate case, well, then that's a
12   different matter.  If, in fact, the objectors have the
13   opportunity to say, "This is improper" or "This is" --
14   whatever -- "the amount is wrong, the allocation is
15   wrong," well, those are the kind of things that are
16   generally hashed out in a rate case.

17            MR. MACK:  This is Stephen Mack for
18   Commission Staff, and that is right.  The "how" and
19   "when" would be the rate case.

20            What this proposal is is basically how
21   should Sharyland file their case.  In the preliminary
22   stages of this case we were in discussions with
23   Sharyland about their rate filing package and how we
24   thought the Commission wanted it to look.

25            And even after the draft preliminary order

46

1    we didn't think that it was going to get filed the way
2    the Commission wanted.  So we entered into negotiations
3    with them in order to get a rate filing package -- or
4    two rate filing packages put together that seemed to be
5    what was intended by the Commission.
6              The one issue, of course, is this true
7    lease issue, and we wanted that laid out to be known
8    not -- we didn't necessarily want a ruling on it right
9    now, but we wanted it to be known so that if it is
10   something that can be done, but we believe the
11   Commission has the authority to do it, but if that's not
12   the case that would be nice to know now.
13             COMM. ANDERSON:  And I don't know now that
14   I'm -- because it's -- the way it's come up, I'm not
15   prepared even to rule on that, and I would actually
16   prefer facts fleshed out before I do make a decision on
17   that.
18             Let me you this because it's related:  The
19   joint proposal -- I think it's the invested capital for
20   distribution -- it generally punts it to -- that the
21   parties will work later to figure it out.
22             Is that to figure it out in the rate case
23   or is it --
24             MR. MACK:  In the rate case there would
25   have to be a baseline set for a DCRF.  That's one

1   necessary issue to be decided in a rate case.  The

2   reason behind there being sort of --

3              COMM. ANDERSON:  I don't mean to cut you

4   off, but -- so is that a "yes" or "no"?  I mean, again,

5   I'm trying to understand what we would be deciding under

6   the joint motion.

7              Is it the way that the distribution is

8   handled, going to be resolved in the rate case?  You

9   said parties agreed to work together to come up with a

10  solution.  Is that in the rate case or in a rulemaking

11  subsequently?  That's really what I'm trying to get at.

12             MR. MACK:  In the rate case.

13             MR. MENDIOLA:  I agree with that.  It's in

14  the rate case.

15             COMM. ANDERSON:  Okay.  So where you say

16  the parties are going to work together, possibly to come

17  up with other alternatives, you're talking about the

18  rate case?

19             MR. MENDIOLA:  Yes.

20             COMM. ANDERSON:  Didn't say that and I

21  was -- again, I have a "how" and "when" --

22             MR. GAY:  That's correct.

23             COMM. ANDERSON:  -- note in my -- okay.

24             COMM. MARQUEZ:  So I have a question for

25  Staff.  So when -- what sounds like what you were just

48

```
 1  saying is that, you know, you-all just needed to get
 2  together to figure out how to even get this thing going
 3  and process.
 4            MR. MACK:  Right.
 5            COMM. MARQUEZ:  So since there has been
 6  kind of an agreement between you two, why do we need to
 7  approve anything up here?
 8            I mean, I think that there may be
 9  questions on what we include on the proposed order and
10  I'm certainly open.  Everybody --
11            CHAIRMAN NELSON:  Preliminary order.
12            COMM. MARQUEZ:  Yeah -- thank you -- the
13  preliminary order.  Everybody should have -- I mean, you
14  know where you're starting from.  You know the order
15  that the Commission has passed, but everybody should
16  have an opportunity to argue what they want to argue.
17  So there may be questions on what we include on that,
18  but why do we need to -- if you-all have agreed
19  procedurally how they should file, why do we have to
20  approve this or why are we being --
21            MR. MACK:  I think the point is to get an
22  understanding from the Commission.  If this is not what
23  you were intending we would certainly like to know that
24  now before a case is put together, because the case,
25  putting it together, may take 90 days.
```