EXHIBIT V

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) | Chapter 11 |
| | ) | Bankruptcy Case No. 14-10979 (CSS) |
| *Debtors.*[1] | ) | |
| | ) | |
| | ) | |
| | ) | |
| SHIRLEY FENICLE, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO THE ESTATE OF GEORGE FENICLE, DAVID WILLIAM FAHY, AND JOHN H. JONES, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | BAP No. 16-47 |
| *Appellants*, | ) | Civil Action No. 16-CV-888 (RGA) |
| | ) | |
| v. | ) | |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) | **Re: D.I. 17** |
| | ) | |
| | ) | |
| *Appellees*. | ) | |
| | ) | |

## APPELLEES' MOTION TO DISMISS APPEAL

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Bankruptcy Procedure 8012, the Appellees, Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (collectively "EFIH"), provide the following disclosure:

1.  EFIH is a wholly owned subsidiary of Energy Future Holdings Corp., ("EFH Corp.") the main debtor in the consolidated chapter 11 bankruptcy case from which this appeal has been taken.

2.  No publicly held company holds 10% or more of the EFIH's stock. EFH also provides the following disclosure:

3.  EFH Corp.'s parent is Texas Energy Future Holdings Limited Partnership ("TEF").

4.  No publicly held company holds 10% or more of EFH Corp.'s stock. Through various private equity funds, Goldman Sachs Capital Partners, a subsidiary of publicly traded Goldman Sachs Group Inc., and publicly traded KKR & Co. L.P. each own in aggregate more than 10% of the membership interests of TEF's general partner, Texas Energy Future Capital Holdings LLC.

EFH Corp., certain of its direct and indirect subsidiaries (together with EFH Corp., the "EFH Debtors[1]"), and EFIH (collectively, the "Debtors"[2] or "Appellees") respectfully request that this Court dismiss the appeal docketed as Civil Action No. 16-888 (RGA) (the "Appeal") filed by Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, and John H. Jones (together, the "Appellants") taken from the *Order (A) Authorizing Entry Into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into and Performance Under Plan Support Agreement* [Bk. D.I. 9584] (the "Authorization Order") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").[3]  In support of the motion, Appellees state as follows:

## PRELIMINARY STATEMENT

1.    The Appeal represents another premature attempt by Appellants to obtain a ruling that the discharge of unpreserved, unmanifested asbestos claims is

---

[1]    "EFH Debtors" is defined in further detail in the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Bankr. D. Del. 14-10979 ("Bk.") D.I. 10290] (as may be further amended, the "Plan").

[2]    References to the Debtors before October 3, 2016 encompass all the debtors in these chapter 11 proceedings, including the T-Side debtors, which emerged on that date.

[3]    Exhibits referenced are attached to the *Declaration of Mark E. McKane, P.C. in Support of Appellees' Motion to Dismiss Appeal*, filed contemporaneously herewith.

unconstitutional.   As with earlier plan-related appeals in this bankruptcy, the appellate cart is careening ahead of the plan confirmation horse.   This Court should dismiss the Appeal for two independent reasons.

2.      ***First***, this Court does not have statutory jurisdiction to hear the Appeal because the Authorization Order is not a final order and does not warrant interlocutory appeal.   That order ***merely authorizes*** the Debtors to enter into a plan support agreement (the "PSA") and merger agreement (the "Merger Agreement") with NextEra Energy, Inc. and to pay a termination fee (the "Termination Fee") to the extent it becomes due.   The hearing to consider confirmation of the Plan—the mechanism for performing the commitments in the PSA and incorporating the transactions contemplated by the Merger Agreement—is nearly ***two months*** away (the "E-Side Confirmation Hearing").

3.      As this Court counseled when dismissing a premature appeal of an earlier plan support agreement:  "[T]here's a lot that can happen between now and the end of the Confirmation Hearing."[4]   True to form, a lot has happened since the Bankruptcy Court entered the Authorization Order.   For example, the Debtors have twice amended the Plan and—just this week—announced an agreement in principle on the economic terms of a settlement with certain holders of EFIH first lien claims and EFIH second lien claims, requiring further Plan amendments.   In

---

[4]      Ex. 1.

short, "final" does not describe the Authorization Order or the Debtors' ongoing restructuring efforts. Nor is this an "exceptional case" warranting interlocutory review under 28 U.S.C. § 158(a)(3).

4.      ***Second***, even if this Court had jurisdiction to hear the Appeal, Appellants lack both constitutional and appellate standing to bring it. The Authorization Order poses no actual or imminent injury to Appellants, nor are they "aggrieved" by it. Even if the Termination Fee were triggered, as Judge Sontchi recognized, "that value is not taken away from the asbestos creditors."[5]

5.      Appellants will have their day in this Court—when they appeal the Bankruptcy Court's order confirming a Plan for the Debtors against which Appellants have claims. This Appeal illustrates why there are jurisdictional hurdles to appellate relief. The interests of judicial economy are not furthered by hearing an appeal that (a) challenges the confirmability of a Plan that will be further amended and that has not been fully solicited, (b) attacks a Termination Fee that has not been and may never be triggered, and (c) raises unlikely outcomes of remote, hypothetical scenarios.

## BACKGROUND

6.      On July 29, 2016, the Debtors executed the PSA and Merger Agreement with NextEra Energy, Inc. ("NextEra"), which contemplated $4.1

---

[5]      Ex. 2 at 122:25-123:1.

billion of consideration (and satisfaction of a $5.4 billion debtor-in-possession facility). The Debtors sought Bankruptcy Court approval to enter into the PSA and Merger Agreement on August 3, 2016.[6] They also filed a revised Plan[7] to incorporate the transactions contemplated by the Merger Agreement and perform the commitments in the PSA.[8]

7.     Appellants objected to the Authorization Motion.[9] The Merger Agreement and PSA were then amended on September 18, 2016, to add an EFH unsecured creditor and to reflect a $300 million increase in the cash purchase price, increasing the cash consideration to $4.4 billion.[10] On September 19, 2016, after an evidentiary hearing, the Bankruptcy Court entered the Authorization Order, authorizing the Debtors to (a) enter into the Merger Agreement, (b) enter into the

---

[6]     *Motion of the EFH/EFIH Debtors For Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* [Bk. D.I. 9190].

[7]     Plan [Bk. D.I. 9199-1].

[8]     *See, e.g.*, Authorization Order at Ex. 1, Merger Agreement at 13 ("WHEREAS, the transactions contemplated by this Agreement . . . will be consummated pursuant to the order confirming the Plan of Reorganization to be entered in the Chapter 11 Cases.").

[9]     *Objection of Shirley Fenicle, William Fahy, and John H. Jones to Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry Into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into and Performance Under Plan Support Agreement* [Bk. D.I. 9398].

[10]    *See* Ex. 3.

PSA, and (c) pay the $275 million Termination Fee to the extent it becomes due and payable pursuant to the Merger Agreement.[11]

8.      The Merger Agreement includes provisions that allow the Debtors to consider any higher or otherwise better bids that emerge.   The Debtors were permitted to solicit, initiate, and facilitate higher or otherwise better offers without paying the Termination Fee from execution of the Merger Agreement until entry of the Authorization Order.[12]  During that 47-day period, no party came forward with an actionable proposal that did not have a break-up fee.[13]  Now, until confirmation of the Plan, the Debtors may continue discussions or negotiations with any party that has executed a confidentiality agreement and satisfied certain other requirements set forth in the Merger Agreement.[14]  Following entry of the Authorization Order, if the Debtors terminate the Merger Agreement in order to accept another proposal, and the transaction contemplated by such other proposal is consummated, NextEra could claim entitlement to the $275 million Termination Fee.[15]

---

[11]     The Authorization Order included a provision allowing the parties to amend the PSA and Merger Agreement with notice to the court.   Authorization Order at ¶ 7.

[12]     Authorization Order at Ex. 1, Merger Agreement § 6.2(a)(i).

[13]     *See* Ex. 2 at 28:9-29:2 (Horton Proffer).

[14]     Authorization Order at Ex. 1, Merger Agreement § 6.2(a)(ii).

[15]     *Id.* at § 8.5(b).

9. On September 30, 2016, Appellants noticed an appeal of the Authorization Order.[16] Appellants raise three issues on appeal: (1) whether the Bankruptcy Court erred in approving the Merger Agreement and PSA "when those agreements obligate the Debtors[] to support a plan that is not confirmable because it violates due process in that it would discharge" certain asbestos-related claims; (2) whether the Bankruptcy Court erred by "approving the payment of the Termination Fee as an allowed administrative expense *to the extent that* it becomes due and payable"; and (3) whether the Bankruptcy Court erred in approving the Termination Fee "*to the extent that* it becomes due and payable . . . even though the Termination Fee could become due and payable if the Debtors were to support and have confirmed a plan that would not contain the discharge provisions that would violate the due process rights of Unmanifested Asbestos Claimants."[17]

10. Appellants allege unmanifested and manifested asbestos injuries, as detailed below.

---

[16]     *Notice of Appeal* [Bk. D.I. 9719].

[17]     *Appellants' Statement of Issues on Appeal, Certificate Regarding Transcripts, and Designation of Items to be Included on the Record on Appeal* [D. Del. 16-CV-888-RGA, D.I. 8] at ¶¶ 1-3 (emphases added).

Case 16-10979-CSS  Doc 11638-23  Filed 07/29/17  Page 9 of 21

| Appellant | Alleged Injury | Preserved Claim? | Plan Treatment[18] |
|---|---|---|---|
| Shirley Fenicle (individually) | Unmanifested asbestos injury | Yes[19] | Reinstated |
| Shirley Fenicle (as successor-in-interest to her husband's estate) | Manifested asbestos injury | Yes[20] | Reinstated |
| David William Fahy | Manifested asbestos injury | Yes[21] | Reinstated |
| John H. Jones | Manifested asbestos injury | Unpreserved—no attempt to file late proof of claim | Discharged |

11.    When Appellants noticed the Appeal, the E-Side Confirmation Hearing was scheduled to start on December 1, 2016.[22]  On November 17, 2016,

---

[18]    The Official Committee of Unsecured Creditors of EFH Corp., EFIH, EFIH Finance, Inc., and EECI, Inc. (the "EFH Committee"), which represented the interests of manifested and unmanifested asbestos claimants, among other creditors, reached a settlement with the Debtors on November 23, 2015; that settlement requires reinstatement of preserved asbestos claims under any plan proposed by the Debtors.  *See Notice of Settlement Among Debtors, EFH Committee, EFH Notes Trustee, Plan Sponsors, Consenting TCEH First Lien Creditors, and TCEH Committee* [Bk. D.I. 7090] at Ex. A, ("Settlement & Support Agreement") § 6.  Appellants Fenicle and Fahy are two of the five members of the EFH Committee.  *Notice of Appointment of Committee of Unsecured Creditors* [Bk. D.I. 2570].

[19]    Ex. 4.

[20]    Exs. 5-9.

[21]    Ex. 10.

[22]    *See Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection With Confirmation of the*

however, the United States Court of Appeals for the Third Circuit issued an opinion regarding the Makewhole Claims asserted by certain holders of EFIH First Lien Notes and EFIH Second Lien Notes (the "Makewhole Opinion").[23] As a result of the Makewhole Opinion, the Debtors could not satisfy a condition precedent in the Plan, without NextEra waiving such condition.[24] To facilitate discussions with key creditor constituencies and NextEra, the Debtors adjourned the E-Side Confirmation Hearing.[25] On December 1, 2016, the Debtors filed an amended Plan which, among other things, deleted the makewhole-related condition precedent.[26] Thereafter, the Bankruptcy Court scheduled the E-Side Confirmation Hearing to begin on February 14, 2017.[27]

12.    On December 19, 2016, the Debtors filed an SEC Form 8-K, disclosing that they had reached agreement in principle with the EFIH First Lien and Second Lien Noteholders on a potential settlement of makewhole claims asserted by such holders, subject to the negotiation of another, separate plan

---

*Debtors Joint Plan of Reorganization as it Relates to the EFH/EFIH Debtors* [Bk. D.I. 9381].

[23]    *Opinion of the Court* [3d Cir. No. 16-1351].

[24]    Plan [Bk. D.I. 9612] at Art. IX(D)(10), (E).

[25]    *Notice Regarding Scheduling Order and Commencement of Plan Confirmation Proceedings* [Bk. D.I. 10235].

[26]    *See* Plan [Bk. D.I. 10290] at Art. IX(D).

[27]    *See Supplemental Order Approving Revised Schedule for the EFH/EFIH Confirmation Proceedings* [Bk. D.I. 10327].

support agreement.[28]    The Debtors also disclosed that they would file a further

amended Plan, consistent with that separate, to-be-finalized plan support

agreement.[29]

## ARGUMENT

13.    This Court should dismiss the Appeal for two independent reasons.

***First***, the Authorization Order is not a final order under 28 U.S.C. § 158(a)(1), and

this is not an "exceptional case" warranting interlocutory review under 28 U.S.C.

§ 158(a)(3).    ***Second***, Appellants lack standing because the Authorization Order

has neither injured nor aggrieved them.

## I.    This Court Does Not Have Statutory Jurisdiction To Hear The Appeal.

### A.    The Authorization Order Is Not A Final Order Under 28 U.S.C. § 158(a)(1).

14.    "District courts have mandatory jurisdiction to hear appeals from final

judgments, orders, and decrees [] of bankruptcy judges entered in cases and

proceedings."    *In re Energy Future Holdings Corp., et al.* ("*Fenicle & Fahy*

*Confirmation Order Appeal*"), No. 15-CV-1183-RGA, 2016 WL 5402186, at *2

(D. Del. Sept. 26, 2016) (quoting 28 U.S.C. § 158(a)(1)) (internal quotation marks

omitted).    With respect to a bankruptcy plan confirmation process, the relevant

"proceeding" is the "entire process culminating in confirmation [of a plan] or

---

[28]    *See* Ex. 11.

[29]    *Id.*

dismissal [of a bankruptcy case]." *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686 (2015) (holding that order denying confirmation was not "final" under 28 U.S.C. § 158(a)).

15.     "Generally, a final order is one which finally resolves a discrete set of issues, leaving no related issues for later determination." *In re Delaware & Hudson Ry. Co.*, 129 B.R. 388, 393 (D. Del. 1991) (citing *In re Taylor*, 913 F.2d 102, 104 (3d Cir. 1990)).   In determining whether a bankruptcy court decision is final, the Third Circuit has considered:   "(1) the impact of the matter on the assets of the bankruptcy estate, (2) the preclusive effect of a decision on the merits, and (3) whether the interests of judicial economy will be furthered." *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314 (3d Cir. 2011) (citation and internal quotation marks omitted).

16.     While the Third Circuit "takes a pragmatic view of the finality of bankruptcy appeals," *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 97 (3d Cir. 1988), the "inefficient use of judicial resources is as objectionable in bankruptcy appeals as in other fields," *In re Natale*, 295 F.3d 375, 379 (3d Cir. 2002).  *See also In re New Century TRS Holdings, Inc.*, 407 B.R. 558, 571 (Bankr. D. Del. 2009) (citing decisions recognizing "the purpose of the Bankruptcy Code includes . . . the need to protect creditors and reorganizing debtors from piecemeal litigation").

17.     Applying these principles, this Court dismissed an appeal from an order approving a different plan support agreement because that order was not "final."[30]  As this Court explained, "there's a lot that can happen between now and the end of the Confirmation Hearing."[31]  Likewise, this Court dismissed Appellants Fenicle and Fahy's appeal from a defunct confirmation order because the Debtors had "proposed an alternate plan that [was and still is] the subject of ongoing litigation" and "[t]hat plan is subject to further amendment and may be objected to during this ongoing proceeding."  *See Fenicle & Fahy Confirmation Order Appeal*, 2016 WL 5402186 at *2 (internal quotation marks omitted).

18.     Here, once again, the Authorization Order has ***not*** finally resolved any set of issues as to the Merger Agreement, the PSA, or any other aspect of the confirmation process; ***instead***, the Authorization Order merely authorizes the Debtors to enter into those agreements—as part of their broader confirmation efforts—and to pay the Termination Fee if it becomes payable.  Indeed, since the Bankruptcy Court entered the Authorization Order, the Debtors have:  (a) twice amended the Plan,[32] (b) adjourned the E-Side Confirmation Hearing for 75 days,[33]

---

[30]     *See Order* [D. Del. 15-CV-885-RGA, D.I. 32]; Ex. 1 at 47:21-48:1.

[31]     *See* Ex. 1 at 47:15-16.

[32]     Plan [Bk. D.I. 9612]; Plan [Bk. D.I. 10290].

[33]     *See Supplemental Order Approving Revised Schedule for the EFH/EFIH Confirmation Proceedings* [Bk. D.I. 10327].

(c) not completed the solicitation process,[34] and (d) disclosed a further agreement in principle to enter into another, separate plan support agreement and to amend the Plan accordingly.[35]  Meanwhile, Appellants unsuccessfully moved to dismiss the chapter 11 cases of the EFH Debtors with asbestos liabilities,[36] and objected to confirmation of a prior version of the Plan, raising the same due process issues on appeal here.[37]

19.     Final does not describe this state of affairs.  *See Bullard*, 135 S. Ct. at 1693.  Until the E-Side Confirmation Hearing, the Bankruptcy Court cannot determine whether the current Plan is confirmable and cannot rule on Appellants' due process objection.  In short, "[t]he parties' rights and obligations remain unsettled." *Id.*

20.     As for the Termination Fee, many courts have concluded that orders regarding termination fees are not final.  *See, e.g.*, *In re Reliant Energy Channelview, LP*, 397 B.R. 697, 700 (D. Del. 2008) (concluding that order denying termination fee was not final until bankruptcy court entered sale order); *In re Integrated Resources, Inc.*, 3 F.3d 49, 53 (2d Cir. 1993) (dismissing appeal of order approving termination fee arrangement); *In re Great N. Paper, Inc.*, 289 B.R.

---

[34]     *Id.*

[35]     Ex. 11.

[36]     *See Order Denying Motion to Dismiss* [Bk. D.I. 10415].

[37]     *Objection* [Bk. D.I. 10142].

497, 499 (D. Me. 2003) (denying motion for leave to file interlocutory appeal of order approving termination fee). Adopting the approach taken in other circuits, the *Reliant* court reasoned, "[I]t is best to wait and see how the sale proceeds before making any final determinations regarding break-up fees and/or the other procedures used." *Id. See also Great N. Paper, Inc.*, 289 B.R. at 499 ("We do not know now and will not know until the bid deadline has passed whether other bidders have been deterred. . . . I conclude that it is better to wait to see what develops during the bidding process, whether there is an auction, and what the consequences are . . . .").

21. This case illustrates why *Reliant*'s "wait-and-see" approach is sensible. The Termination Fee has not been triggered. Even if it were triggered, the Authorization Order expressly defers, rather than allocates, any such fee between EFIH (of which Appellants are not creditors) and the EFH Debtors (of which Appellants purport to be creditors).[38] Accordingly, the parties' rights and obligations with respect to the Termination Fee remain unsettled and are subject to later determination. *See Bullard*, 135 S. Ct. at 1693; *In re Delaware & Hudson Ry. Co.,* 129 B.R. at 393.

22. Finally, Appellants' statement of issues itself demonstrates the preliminary nature of the Authorization Order and acknowledges that further

---

[38] *See* Authorization Order at ¶ 4.

actions by the Bankruptcy Court are needed to resolve Appellants' confirmation concerns. For example, Appellants' first issue complains that the Merger Agreement and PSA obligate the Debtors to support a plan that is not confirmable "because it violates due process in that it would discharge the claims of [unmanifested asbestos claimants] . . . who did not file proofs of claim[.]"[39] As discussed above, the Bankruptcy Court has not yet authorized the Debtors to complete solicitation of the Plan, let alone considered confirmation of it. Similarly, Appellants' third issue poses a hypothetical that has not and may never come to pass: "Did the Bankruptcy Court err in approving the payment of the Termination Fee . . . even though the Termination Fee *could* become due and payable *if* the Debtors were to support . . . a plan that would not contain the discharge . . . ?"[40] The Bankruptcy Court considered—and rejected as *de minimis*—the possibility that Appellants might prevail on their due process arguments before plan confirmation, and thereby trigger the Termination Fee.[41]

---

[39] *Appellants' Statement of Issues on Appeal, Certificate Regarding Transcripts, and Designation of Items to be Included on the Record on Appeal* [D. Del. 16-CV-888-RGA, D.I. 8] at ¶ 1.

[40] *Id.* at ¶ 3 (emphasis added).

[41] *See* Ex. 2 at 119:15-124:9 ("[T]here's *no impediment* based on the pending appeal or the argument that this plan being put before the Court is not consistent with due process so as *to give the Court any concern that it's locking in a breakup fee* based on that argument either being successful on appeal or a confirmation of the plan.") (emphases added).

23.     Appellants' core theory is that the discharge of unpreserved, unmanifested asbestos claims is unconstitutional.  That dispute is still subject to final resolution by the Bankruptcy Court.  While the current proposed Plan would discharge such claims, one theme of these chapter 11 cases is that circumstances can change.  Appellants may not seek this Court's review before the Bankruptcy Court decides the issue.[42]

**B.      Hearing this Appeal Would Not Materially Advance the Ultimate Termination of the Confirmation Proceedings, and No Exceptional Circumstances Justify an Interlocutory Appeal.**

24.     A district court has discretionary jurisdiction under 28 U.S.C. § 158(a)(3) to hear appeals from interlocutory orders.  *See In re Fisker Auto. Holdings, Inc.*, 2014 WL 546036, at *2 (D. Del. Feb. 7, 2014) (citing *In re Bertoli,* 812 F.2d 136, 139-40 (3d Cir. 1987)).

25.     Applying 28 U.S.C. § 1292(b), district courts have such discretion "only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial grounds for a difference of opinion, and (3) if

---

[42]     *See Fenicle & Fahy Confirmation Order Appeal*, 2016 WL 5402186 at *2 ("Appellants note that the discharge provisions of Debtors' new proposed plan are identical to those in the original confirmed plan that are the subject of this appeal.  This is irrelevant to the finality analysis, however, as the provisions of the new plan are not finally determined until the Bankruptcy Court enters an order confirming the new plan.  If and when this happens, Appellants will be free to appeal the new confirmation order.") (footnote and citation omitted).

appealed immediately, may materially advance the ultimate termination of the litigation." *See In re Culp*, 550 B.R. 683, 694 (D. Del. 2015).

26.    In addition, Appellants must establish that "exceptional circumstances justify a departure from the basic policy of postponing the review until after the entry of final judgment." *See In re Magic Restaurants, Inc.*, 202 B.R. 24, 26 (D. Del. 1996); *see also Chase Bank USA, N.A. v. Hess*, 2011 WL 4459604, at *1 (D. Del. Sept. 26, 2011) ("Interlocutory appeal is meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation."); *In re SemCrude, L.P.*, 407 B.R. 553, 557 (D. Del. 2009) (interlocutory appeal may be denied for other reasons, including "the desire to have a full record before considering the disputed legal issue").

27.    This Court has already declined to hear an interlocutory appeal by Appellants Fenicle and Fahy on the question of whether the discharge of unpreserved, unmanifested claims comports with due process.[43]  Recognizing that confirmation proceedings (for a now defunct plan) were in progress, this Court explained, "I am confident that allowing this interlocutory appeal while the confirmation hearing is going on makes no sense."[44]  Similarly, here, the E-Side

---

[43]    *Order* [D. Del. 15-MC-265-RGA, D.I. 3].

[44]    *Id.*

Confirmation Hearing is set to begin on February 14, 2017; there, the Bankruptcy Court will decide whether unmanifested asbestos claims will be discharged.  This Appeal cannot "materially advance the ultimate termination of the litigation," *In re Culp*, 550 B.R. at 694, until the Bankruptcy Court answers that question.[45]  Nor does the Bankruptcy Court's application of section 503(b) of the Bankruptcy Code to the Termination Fee satisfy the standard for an interlocutory appeal.  That analysis was fact-driven; and in the Bankruptcy Court, Appellants did not raise a question of law regarding the Termination Fee.

28.    Further, there are no "exceptional circumstances" here.  *See Magic Restaurants, Inc.*, 202 B.R. at 26.  Appellants argue that the Termination Fee could "have a chilling effect that would effectively preclude the possibility of an alternate plan that would not violate the due process rights of [asbestos] claimants."[46]  But the record is clear—there is no reason to believe such an alternative exists.[47]  In the 47-day period between the Debtors announcement of the Merger Agreement and the Bankruptcy Court's entry of the Authorization Order—

---

[45]    *Id.* (further reasoning that the Bankruptcy Court "has not decided whether the proposed treatment complies with the law or not" and would not decide that question until the confirmation hearing).

[46]    *See* Ex. 12.

[47]    *See* Ex. 2 at 28:9-29:2 (Horton Proffer).

a period in which the bid protections were not in place—no party came forward

with an actionable proposal that did not have a break-up fee.[48]

## II.  Even If This Court Had Jurisdiction to Hear the Appeal, Appellants Lack Standing to Bring It.

29.  The Appeal is procedurally deficient for a second, independent

reason:  Appellants cannot establish they have constitutional *and* appellate

standing to bring it.  *See In re Flintkote Co.*, 526 B.R. 515, 521 (D. Del. 2014).

### A.  Appellants Cannot Prove They Have Constitutional Standing Because the Authorization Order Poses No Actual or Imminent Injury to Them.

30.  While section 1109(b) of the Bankruptcy Court  "confers broad

standing at the trial level," *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir.

2000), a bankruptcy litigant "must, in the first instance, meet the requirements for

standing that litigants in all federal cases face under Article III of the

Constitution," *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (en

banc).  In short, the party "must demonstrate an 'injury in fact' that is 'concrete,'

'distinct and palpable,' and 'actual or imminent.'"  *Id.* (quoting *Whitmore v.

Arkansas*, 495 U.S. 149, 155 (1990)).  The "injury in fact" standard is met if the

party "alleges a specific, identifiable trifle of injury or a personal stake in the

outcome of the litigation."  *Id.* (internal quotations, citations, and brackets

omitted).

---

[48]  *See id.*

31.     The Authorization Order poses no actual or imminent injury in fact to Appellants.  The Authorization Order merely authorizes the Debtors to enter into the PSA and Merger Agreement.  Those agreements do not affect the legal rights of any creditors (except signatories thereto) until the Bankruptcy Court confirms the Plan, which incorporates the underlying merger transactions, PSA commitments, and proposed treatment of claims.

32.     As for the Termination Fee, the Bankruptcy Court has not directed the Debtors to pay it, nor has it been triggered.  Even if it were someday triggered, the Authorization Order expressly defers any decision as to allocation between EFIH and the EFH Debtors.[49]  But even if the Termination Fee were triggered, and even if some or all of it were allocated to the EFH Debtors, Appellants still could not allege an injury.  If the Bankruptcy Court confirms the Plan currently on file, asbestos-related claims against the EFH Debtors would either (a) be reinstated in full, if the claimant timely filed a proof of claim (Fenicle, Fahy),[50] or (b) discharged, if the claimant did not file a proof of claim (Jones).[51]  In short, the Termination Fee will not affect Appellants' recoveries.  As the Bankruptcy Court reasoned:

---

[49]     *See* Authorization Order at ¶ 4.

[50]     Plan [Bk. D.I. 10290] at Art. III(B)(3).

[51]     *Id.* at Art. VIII(A).

"I think importantly, with regard to the breakup fee, it's really not an asbestos claimant issue because . . . the value that is potentially taken away from creditors, *if the breakup fee is triggered, that value is not taken away from the asbestos creditors*. . . . That . . . money never works its way to the asbestos claimants."[52]

33.     Appellants speculate that they could be injured if the Termination Fee has a chilling effect on other bidders.  This contention is unavailing for two reasons.  First, the evidence shows that no party came forward with **any other** actionable proposal during the 47-day period when NextEra's bid protections were not in effect,[53] and no party has ever filed a competing Plan that reinstates unpreserved asbestos claims.  Second, the story remains incomplete because the Merger Agreement allows the Debtors to continue discussions with other bidders until the Bankruptcy Court confirms the Plan.  In other words, nothing in the record suggests there has been a "chilling effect," and the hypothetical risk of one in the future in some different, as-yet-unproposed plan cannot constitute an "actual or imminent" injury.  *See In re Glob. Indus. Techs., Inc.*, 645 F.3d at 210.

34.     To the extent that Appellants argue their injury arises from a prospective chilling effect, the issue is **not ripe** for consideration.  *See Byrne v. Sec'y U.S. Dep't of Homeland Sec.*, 618 F. App'x 143, 146 (3d Cir. 2015) ("This issue, therefore, is not ripe for our consideration because it is not 'of sufficient

---

[52]     Ex. 2 at 122:21-123:7 (emphasis added).

[53]     *See id.* at 28:9-29:2 (Horton Proffer).

immediacy and reality' to justify judicial resolution.'") (citation omitted); *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 559 (D. Del. 2005) ("the Court also concludes that this matter is not ripe, because any injury suffered by Appellants is speculative.").

> **B.** **Even if Appellants Have Constitutional Standing, They Cannot Satisfy the Heightened Standards for Appellate Standing Because They Are Not "Aggrieved" by the Authorization Order.**

35. Appellants also cannot meet the "more stringent appellate standing requirement." *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 215 (2004). "Appellate standing in bankruptcy cases is more limited than standing under Article III[.]" *PWS Holding Corp.*, 228 F.3d at 248 (citation omitted); *see also Combustion Eng'g, Inc.*, 391 F.3d at 215 ("This more stringent appellate standing requirement rests on the particularly acute need to limit appeals in bankruptcy proceedings, which often involve a myriad of parties indirectly affected by every bankruptcy court order.") (citation omitted).[54]

36. In bankruptcy cases, appellate standing "is limited to 'persons aggrieved' by an order of the bankruptcy court." *Combustion Eng'g*, 391 F.3d at 214. A person is aggrieved "only if the bankruptcy court's order diminishes their property, increases their burdens, or impairs their rights." *PWS Holding Corp.*,

---

[54] Likewise, appellate standing is narrower than the "party in interest" standard from section 1109(b) of the Bankruptcy Court. *See Combustion Eng'g*, 391 F.3d at 217 (rejecting argument that being "party in interest" suffices to confer appellate standing).

228 F.3d at 249 (internal citations and quotation marks omitted). In addition, the rights or interests of a "person aggrieved" must be "directly and adversely affected pecuniarily" by the bankruptcy court order. *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993) (citation omitted); *see also In re Pittsburgh Corning Corp.*, 260 F. App'x 463, 466 (3d Cir. 2008) (appellants are without standing to appeal an order "unless they can show that they are directly and adversely affected by [it]"). "A showing of potential harm incidental to the order is not enough." *In re Hawkins*, 513 B.R. 634, 638 (D. Del. 2013), *aff'd*, 594 F. App'x 71 (3d Cir. 2015).

37.     Here, Appellants Fenicle and Fahy cannot articulate a direct and pecuniary harm to them—from the Authorization Order—***even if there were a chilling effect*** on bidders who might propose a plan of reorganization that does not discharge unpreserved asbestos claims. Their claims will be fully reinstated under the Plan, and the Debtors are bound to reinstate those claims pursuant to their settlement with the EFH Committee under any other plan they propose.[55]

38.     Likewise, Appellant Jones, a purported manifested asbestos claimant, cannot establish a direct and pecuniary harm, *Combustion Eng'g*, 391 F.3d at 220, resulting from the Authorization Order or articulate how that order diminishes his property, increases his burdens, or impairs his rights, *PWS Holding Corp.*, 228 F.3d at 249. First, there is no evidence in the record that Appellant Jones is indeed

---

[55]     Plan [Bk. D.I. 10290] at Art. III(B)(3); Settlement & Support Agreement § 6.

a manifested claimant and—if he is a manifested claimant—what he knew about these chapter 11 cases and when. He has not filed a proof of claim or sought leave to file a late proof of claim.[56] Second, to the extent that Appellant Jones is a manifested asbestos claimant, the ***Authorization Order*** does not affect his rights one way or another, even if the Bankruptcy Court ultimately discharges unpreserved asbestos claims. The alleged harm—that the PSA and Merger Agreement obligate the Debtors to support a plan that discharges Appellant Jones's purported claim against the EFH Debtors—is speculative and "incidental" to the Authorization Order. *See In re Hawkins*, 513 B.R. at 638.

## CONCLUSION

39. For the foregoing reasons, the Debtors respectfully request that this Court enter an order dismissing this Appeal and granting such other and further relief as is just and proper.

---

[56]    *Opinion* [Bk. D.I. 10414] at 25.

Dated: December 22, 2016
Wilmington, Delaware

By: /s/ Andrew M. Dean

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (DE No. 2981)
Daniel J. DeFranceschi (DE No. 2732)
Jason M. Madron (DE No. 4431)
Andrew M. Dean (DE No. 6147)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

KIRKLAND & ELLIS LLP
Mark E. McKane (admitted *pro hac vice*)
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

- and -

Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Co-Counsel to Appellees*

# CERTIFICATION

**Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:** This motion complies with the type-volume limitation of Fed. R. App. P. Rule 27(d)(1), made applicable to this motion by Fed. R. Bankr. P. 8013(f)(1), because this motion does not exceed 5,200 words, excluding any parts of the motion exempted by applicable rule. This motion complies with the typeface requirements of Fed. R. App. P. Rule 27(d)(1), made applicable to this motion by Fed. R. Bankr. P. 8013(f)(1), because this motion has been prepared in a proportionally spaced typeface using Microsoft Word 2010, in 14-point Times New Roman.

*/s/ Andrew M. Dean*
Andrew M. Dean (DE 6147)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that, on December 22, 2016, I electronically filed the *Appellees' Motion to Dismiss Appeal* using CM/ECF which will send notification of such filing to the following:

Daniel K. Hogan
HOGAN♦McDANIEL
1311 Delaware Avenue
Wilmington, DE 19806
dkhogan@dkhogan.com

   I hereby certify that, on December 22, 2016, I served via Federal Express *Appellees' Motion to Dismiss Appeal* on the following non-registered participants:

Jeanne Mirer
MIRER MAZZOCCHI SCHALET
 & JULIEN, PLLC
150 Broadway, Suite 1200
New York, NY 10038
Jeanne@jmirerlaw.com

Peter Van N. Lockwood
Leslie M. Kelleher
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, DC 20005
plockwood@capdale.com
lkelleher@capdale.com

Elihu Inselbuch
CAPLIN & DRYSDALE, CHARTERED
600 Lexington Avenue, 21st Floor
New York, NY 10022
einselbuch@capdale.com

Ethan Early
EARLY LUCARELLI SWEENEY & STRAUSS
265 Church Street, 11th Floor
New Haven, CT 06508-1866

Steven Kazan
KAZAN MCCLAIN SATTERLEY &
GREENWOOD, A PROFESSIONAL LAW
CORPORATION
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
skazan@kazanlaw.com

*Certificate of Service - Appellees' Motion to Dismiss Appeal*

          */s/ Andrew M. Dean*
Andrew M. Dean (DE 6147)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:  302-651-7700
Facsimile:  302-651-7701
E-mail:  dean@rlf.com

RLF1 16323662v.1