# Exhibit A



Control Number: 46238



Item Number: 535

Addendum StartPage: 0

RECEIVED
2017 MAR 30  AM 10: 10

# OPEN MEETING COVER SHEET

COMMISSION
FILING CLERK

**MEETING DATE:** March 30, 2017

**DATE DELIVERED:** March 30, 2017

**AGENDA ITEM NO.:** 16

**CAPTION:** Docket No. 46238 Joint Report and Application of Oncor Electric Delivery Company, LLC and NextEra Energy, Inc. for Regulatory Approvals Pursuant to PURA §§ 14.101, 39.262 and 39.915

**ACTION REQUESTED:** Memo from Commissioner Anderson

Distribution List:
  Commissioners' Office (9)
  Lloyd, Brian
  Whittington, Pam
  Phillips, Michael
  Central Records
  Rogas, Keith (2)
  Pemberton, Margaret (5)
  Journeay, Stephen
  Burch, Chris
  Tietjen, Darryl (2)
  Smyth, Scott (2)
  Long, Mick (2)
  Benter, Tammy (3)

535

# Public Utility Commission of Texas

## Memorandum

RECEIVED

2017 MAR 30  AM 10: 10

PUBLIC UTILITY COMMISSION
FILING CLERK

TO:     Chairman Donna L. Nelson
        Commissioner Brandy Marty Marquez

FROM:   Commissioner Kenneth W. Anderson, Jr.

DATE:   March 30, 2017

RE:     **Open Meeting of March 30, 2017 – Agenda Item No. 16; Docket No. 46238** — *Joint Report and Application of Oncor Electric Delivery Company, LLC and NextEra Energy, Inc. for Regulatory Approvals Pursuant to PURA §§ 14.101, 39.262 and 39.915*

---

The transaction before us would cause Oncor Electric Delivery Company, LLC (Oncor), the largest transmission and distribution utility in Texas (in 2016 it transmitted approximately 35% of the MWhs in ERCOT) to cease to be independent and become a wholly-owned subsidiary of NextEra Energy, Inc. (NextEra or NEE). This case presents us with a difficult decision because the applicant, NextEra, is an extremely well-regarded utility holding company that generally is considered to be among the best operators of regulated utilities and merchant generation in the country. Among its virtues is a strong and stable investment grade credit rating. It is also generally agreed that its reputation, at least in part, is based upon focused and disciplined management out of its corporate headquarters in Florida. Furthermore, it is something of a known quantity to us because it owns renewable merchant generation, a transmission service provider and retail electric providers in Texas. However, in a paradoxical sense that is also one of the problems that we face because its' Texas competitive affiliates create certain real and potential conflicts of interest.

After re-reviewing the transcripts and my notes of the hearing on the merits, the evidence admitted into the record and all of the argument set out in post-hearing briefs, I was going to file a detailed memorandum laying out the many conditions that I would need imposed in order to find the proposed transaction in the public interest. However, the more I reflected upon the history of and record in this case, the more I came to believe that such a memorandum was premature. Instead, I decided to wait to file such a memorandum until after we have had today's discussion. I so concluded because laying out all of those conditions pre-supposes that I find the transaction before us to be in the *Public Interest*. The problem is that on balance I do not believe that the transaction as proposed by the joint applicants, including the conditions as currently proffered by NEE, are in the *Public Interest*. I do not find that the tangible and quantifiable benefits to Oncor's ratepayers are such a significant improvement over the status quo as to justify approval. I can and will, if necessary, point out the creditable evidence that rebuts almost all of the arguments in favor of approving the transaction. For now let me limit my discussion to the problems associated with NextEra's conditions.

With respect to conditions, it is worth mentioning here that I believe that NEE has been forthright and candid in their dealings with the Commission, or at least this Commissioner. From the earliest contacts, well before the sale merger transfer application was filed, NextEra's representatives have been very clear and consistent about the conditions that they could not accept and the reasons why those conditions were unacceptable. As the Chairman noted perceptively toward the end of the Hearing on the Merits, among the core issues in this case is whether "our deal killers are NEE's deal-killers". At least for this Commissioner, I fear that they do indeed correlate negatively.

I will not now go over all of the conditions proffered by the various parties, but will instead focus on *three key issues* that I think are among the main obstacles. Namely: (1) the nature, composition and independent authority of Oncor's Board of Directors, including, but not limited to that board's independent authority over distributions; (2) additional restrictions on upstream distributions; and (3) the related linking of Oncor's credit rating with NEE. In each case I believe that NEE's deal killers are also mine. I believe that a majority of Oncor's board must be truly independent, disinterested and have all of the authority they currently possess as well as those requested by Staff, TIEC and other intervening parties. Without limiting that, I also have concluded that we must impose more restrictive parameters around upstream distributions in order to ensure that Oncor retains sufficient retained earnings to fund the equity portion of capital expenditures approved by its board as well as to maintain the company's liquidity to provide for operations and its overall financial integrity. Indeed Oncor since 2007 has been able to fund the equity portion of its capital investment program by retaining internally generated earnings as noted by Bob Shapard in response to a question from this commissioner. Finally and without belaboring at this time all of the reasons (which can wait upon a more detailed memorandum if it becomes necessary), I see as much downside as upside to linking Oncor's credit rating to NEE. Therefore I would require Staff's version of the condition de-linking the respective credit ratings. These are not the only requirements that I would impose, but given that they are all also NEE deal-killers it seems to me that we would be wasting time and resources to proceed further down the road of appearing to approve the transactions with such conditions.

For those reasons therefore, it seems to me that we should take NEE at its word that it cannot and will not consummate the transactions with foregoing conditions in place, and find that NextEra's proposed transactions are not in the *Public Interest*. If, however, my colleagues seem to want to proceed in that direction, I intend to file a more detailed memorandum in advance of the next open meeting.

I look forward to discussing this with you at the open meeting.