# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>ENERGY FUTURE<br>HOLDINGS CORP., *et al.*,<br><br>*Debtors*. | ) Chapter 11<br>)<br>) Case No. 14-10979 (CSS)<br>)<br>) (Jointly Administered)<br>) |

**THE ELLIOTT FUNDS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
CONCERNING MOTION OF THE EFH/EFIH DEBTORS FOR ORDER
AUTHORIZING ENTRY INTO MERGER AGREEMENT AND APPROVING
TERMINATION FEE TO THE EFH/EFIH DEBTORS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rules 7026-1 to 7026-3 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively "Elliott" or the "Elliott Funds"), hereby request that Energy Future Intermediate Holding Company LLC ("EFIH") and Energy Future Holdings Corp. ("EFH") produce for inspection and copying all documents concerning the Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee in their possession, custody, or control that are responsive to the requests for production enumerated herein (the "Requests"). All documents and material items requested herein should be produced no later than August 1, 2017, at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036-8704.

{BAY:03088057v1}

## DEFINITIONS

The following definitions form an integral part of the Requests.

A.    "Berkshire" means Berkshire Hathaway Energy Company and any current or former parents, subsidiaries, or affiliates thereof, and any current or former officer, director, partner, agent, employee, or attorney thereof.

B.    "Berkshire Merger Agreement" means the Agreement and Plan of Merger, dated as of July 7, 2017, between Berkshire and the Debtors.

C.    "Berkshire Transaction" means (i) the proposed merger between Berkshire and Debtors whereby Berkshire would acquire an approximately 80% ownership stake in Oncor and related transactions, as contemplated by the Berkshire Merger Agreement, and (ii) any other actual or potential Transaction by and among Berkshire and Debtors.

D.    "Board" means the board of directors or board of managers of EFH or EFIH, including without limitation any subcommittee of any board of directors or managers and any individual member of any such board or subcommittee.

E.    "Communication" means the transmittal of information in any form.

F.    "Concerning," whether capitalized or not, means relating to, referring to, describing, evidencing, reflecting, regarding, constituting, discussing, mentioning, noting, memorializing, analyzing, commenting upon, evaluating, having any connection with, or having a tendency to prove or disprove.

G.    "Conflict Matter" shall have the definition set forth in the EFIH Board of Managers Resolutions, dated November 7, 2014 and December 9, 2014.

H.    "Debtors" or "EFH/EFIH Debtors" means, collectively, Energy Future Intermediate Holding Company LLC ("EFIH") and Energy Future Holdings Corp. ("EFH"), and

any of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

I. "Document" is defined to be synonymous in meaning and equal in scope to the use of this term in Federal Rule of Civil Procedure 34(a), and shall include therefore, without limitation, any recording of information in whatever form, including but not limited to memoranda, correspondence, e-mails, personal notes, spreadsheets, databases, work papers, telephone logs, text messages, calendars, plan books, diaries, journals and daily records of activity, drawings, graphs, charts, maps, photographs, video and/or audio recordings and other data compilations from which information can be obtained or translated (with or without the use of detection devices), including electronic files, records, and archives. For purpose of these Requests, a document which is a copy of another document is intended to be separately requested if the copy differs in any way by virtue of any changes, additions, redactions, annotations, or recipients.

J. "Elliott" or the "Elliott Funds" mean Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership, and any current or former officer, director, partner, agent, employee, or attorney thereof, and any current or former parents, subsidiaries, or affiliates of the above-listed entities.

K. "Keglevic Declaration" means the Declaration of Paul Keglevic in Support of the Merger Agreement Motion, dated July 7, 2017. [D.I. 11431]

L. "Merger Agreement Motion" means the Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee, dated July 7, 2017. [D.I. 11430]

M. "NextEra Transaction" means the proposed merger and related transactions between NextEra and Debtors whereby NextEra proposed to acquire an approximately 80% ownership stake in Oncor, as contemplated by the Agreement and Plan of Merger, dated as of July 29, 2016, between NextEra and Debtors.

N. "NextEra" means NextEra Energy, Inc., and any current or former parents, subsidiaries, or affiliates thereof, and any current or former officer, director, partner, agent, employee, or attorney thereof.

O. "Oncor" means Oncor Electric Delivery Company LLC, Oncor Electric Delivery Holdings Company LLC, and any current or former officer, director, partner, agent, employee, or attorney thereof.

P. "Person" or "persons" means any natural person or legal entity, including, without limitation, any business or governmental entity or association.

Q. "PUCT" means the Public Utility Commission of Texas, and any current or former commissioner, employee, agent, or attorney thereof.

R. A "representative" of a person or an entity means any officer, director, partner, agent, employee, or attorney of such person or entity.

S. "Transaction" means any actual or potential transaction for the direct or indirect sale or other disposition of EFIH's interest in Oncor, including by way of a merger, acquisition, a chapter 11 plan, or otherwise.

T. "You" and "your" mean the person responding to these Requests, and any of its, his, or her respective agents, assigns, representatives, attorneys, advisors and other persons acting or purporting to act for or on its, his, or her behalf.

U.      "Ying Declaration" means the Declaration of David Ying in Support of the Merger Agreement Motion, dated July 7, 2017. [D.I. 11432]

## INSTRUCTIONS

The following instructions apply to these Requests:

A.      Documents to be produced include, without limitation, any responsive Document that was or is prepared, kept, or maintained for the personal use, in the personal files, or as the personal property of any representative of the persons responding hereto.

B.      A Request for any Document shall be deemed to include a request for all actual, proposed, or contemplated envelopes, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document, in addition to the Document itself.

C.      A Request for any Document shall be deemed to include a request for all actual, proposed, or contemplated drafts or mark-ups thereof; revisions, modifications, or amendments thereto; and non-identical copies thereof, in addition to the Document itself.

D.      The fact that a Document is produced by another Party or non-party does not relieve you of the obligation to produce its copy of the same Document, even if the two Documents are identical.

E.      All information is to be produced with a Bates number on each page, regardless of the form of production.

F.      **Electronic Documents (other than databases)**.  You shall produce responsive Documents and Communications, other than databases, in single-page TIFF image format with the exception of spreadsheets, including Microsoft Excel spreadsheets and audio or video files, which shall be produced in native format with load files in .DAT format.  TIFF images shall be

produced in a manner that preserves the Document's original format. Elliott reserves the right to request the original native file for any document that cannot be converted to TIFF image. Additionally, you shall deliver extracted text on a document level, representing the textual content of the electronic Document. In addition to single-page TIFF images and document-level text files, you shall provide load files in .OPT format linking the TIFF images with their associated text file such that the document productions shall be loadable into document management software such as Relativity, or other similar programs.

G. **Databases**. You shall produce responsive databases as databases, or in a format that may be loaded into a database. Specifically, for responsive databases, you shall provide all tables, table schemas, relationships, and data contained therein in a manner that would enable the recreation of said structures and data in Elliott's own environment. As you identify databases or portions of databases that are discoverable, you shall inform Elliott that such a database has been identified before any conversion of the database is prepared so that the parties can meet and confer to discuss production details.

H. **Hardcopy Documents**. You shall produce responsive hardcopy Documents in single-page TIFF image format. Additionally, OCR text shall be delivered on a document level, representing the textual content of hardcopy documents. In addition to the single-page TIFF images and document-level text files, you shall provide load files linking the TIFFs with their associated text file such that the document productions shall be loadable into document management software such as Relativity, or other similar programs.

I. **Video and Audio Recordings and Analogous Media**. You shall produce such responsive media in a duplicate copy.

J. All electronic Documents and Communications shall include the metadata described in Exhibit A.

K. If any Document or Communication, or any portion of a Document or Communication, is withheld under a claim of privilege or otherwise claimed to be protected against production, for each such Document or Communication state the following in a manner sufficient to allow the Court to rule upon the applicability of the claimed protection:

a. The nature of the privilege(s) or other protection claimed;

b. The legal and factual basis for the privilege(s) or other protection claimed;

c. The type of document (e.g., letter, memorandum, handwritten notes);

d. A description of the subject matter of the document;

e. The date of the document; and

f. The name of the author(s), addressee(s), and all recipients of the document and, where not apparent, the relationship of the author(s), addressee(s), and recipients to each other.

A log containing such information concerning any withheld Documents or Communications shall be produced to Elliott no later than August 1, 2017, at the office of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036-8704.

L. The following rules of construction apply to all Requests:

1. <u>All/Any/Each</u>: The terms "all," "any," and "each" shall each be construed as encompassing any and all.

2. <u>And/Or</u>: The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

    3. <u>Number</u>:  The use of the singular form of any word includes the plural and vice versa.

    4. <u>Gender</u>: The use of one gender shall include the other, and vice versa.

 M. If you claim not to understand all or part of any Request, definition, or instruction, please advise Elliott's counsel immediately so that any lack of understanding may promptly be corrected.

 N. If you are aware of documents responsive to any Request, which are not available to you or subject to your reasonable access or control, identify to Elliott's counsel any information you may have regarding the location and possessor of such documents.  If the addresses and telephone numbers of an individual or source identified in such response is available, please provide that contact information.

 O. The Requests shall be deemed continuing and the responding party and any present or former affiliate or representative of the party responding hereto are required to supplement their production of documents as required by Rule 26(e) of the Federal Rules of Civil Procedure.

 P. Each Request shall be deemed to seek production of Documents only to the extent such Documents are not already encompassed by prior Requests.

 Q. Elliott reserves the right to amend, supplement, and/or modify these Requests.

 R. Unless expressly indicated otherwise, the time period of these Requests shall include all documents created, sent, received, dated, modified, or existing from June 1, 2017 to the present.

## REQUESTS FOR DOCUMENTS

### REQUEST NO. 1

All Documents, including minutes, agendas, resolutions, analyses, presentations, and other materials, prepared for, provided to, or approved by any Board concerning the Berkshire Transaction and/or the termination fee thereunder, any Transaction proposed by Elliott, or any other Transaction considered in any respect, including without limitation any analyses concerning termination or break fees and/or recoveries by EFIH unsecured creditors.

### REQUEST NO. 2

All drafts of the Ying Declaration.

### REQUEST NO. 3

All drafts of the Keglevic Declaration.

### REQUEST NO. 4

All Documents, including without limitation all analyses and communications, concerning any actual or potential Transaction with Elliott.

### REQUEST NO. 5

All analyses of, and all Communications concerning, the Berkshire Transaction, including without limitation all analyses and Communications concerning (i) the timing of the termination of the NextEra Transaction and announcement of the Berkshire Transaction, (ii) termination or break fees and/or recoveries by EFIH unsecured creditors, and (iii) all drafts of the foregoing.

### REQUEST NO. 6

All Documents concerning any actual or potential conflicts of interest involving any Board or its members, including without limitation all Documents concerning whether the Berkshire

Transaction or any other contemplated Transaction constituted a Conflict Matter, and all Documents concerning any efforts by any Board to resolve or otherwise address such conflicts.

**REQUEST NO. 7**

All Documents from April 1, 2016 to August 1, 2016 concerning the initial proposal submitted by Berkshire referenced in paragraph 26 of the Merger Agreement Motion, including without limitation all internal and external analyses, strategies, negotiations, agreements, projections and budgets, timelines, planning, and/or marketing documents, concerning the decision to move forward with the NextEra Transaction instead of the proposal submitted by Berkshire.

**REQUEST NO. 8**

All Communications with any financial or other advisor for Debtors concerning the Berkshire Transaction, any proposed Transaction with Elliott, or any other proposed Transaction considered in any respect by any Board.

**REQUEST NO. 9**

All Communications with Oncor concerning the Berkshire Transaction, any proposed Transaction with Elliott, or any other Transaction considered in any respect by any Board, including without limitation all Communications concerning any application, submission, or communication to or with the PUCT.

**REQUEST NO. 10**

All Documents concerning the termination fees contemplated by the Berkshire Transaction and/or the NextEra Transaction, including without limitation any analyses or Communications concerning the allocation of any termination fee or the impact of such allocation on any recovery by Elliott or any other EFH or EFIH creditor.

**REQUEST NO. 11**

All Documents, including without limitation all Communications and all internal notes or summaries of such Communications, concerning PUCT's consideration, approval, or disapproval of the Berkshire Transaction, the NextEra Transaction, and/or any Transaction proposed by Elliott, including without limitation all documents concerning the likelihood of any such approval or disapproval by PUCT.

**REQUEST NO. 12**

All Communications and analyses concerning the likelihood and timing of obtaining the Private Letter Ruling, as defined in Section 6.14 of the Berkshire Merger Agreement.

**REQUEST NO. 13**

All Communications and analyses concerning the confirmability of the Joint Plan of Reorganization, filed on July 7, 2017, and/or the likelihood of bankruptcy court approval of the Berkshire Transaction and/or the termination fee thereunder.

Respectfully submitted,

/s/ Evan T. Miller
BAYARD, P.A.
Scott D. Cousins (No. 3079)
Erin R. Fay (No. 5268)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
E-mail:  scousins@bayardlaw.com
         efay@bayardlaw.com
         emiller@bayardlaw.com

 --AND--

ROPES & GRAY LLP
| | |
|---|---|
| Keith H. Wofford | Andrew G. Devore |
| Gregg M. Galardi | Prudential Tower |
| 1211 Avenue of the Americas | 800 Boylston Street |
| New York, NY 10036-8704 | Boston, MA  02199-3600 |
| Telephone: 212-596-9000 | Telephone: 617-951-7000 |
| Facsimile:  212-596-9090 | Facsimile: 617-951-7050 |
| Keith.Wofford@ropesgray.com | Andrew.Devore@ropesgray.com |
| Gregg.Galardi@ropesgray.com | |

*Counsel to the Elliott Funds*

# EXHIBIT A

| Field Name | Description |
| --- | --- |
| BATES BEGIN | Beginning Bates number |
| BATES END | Ending Bates number |
| BEGATTACH | Beginning Bates number of the first document in an attachment range |
| ENDATTACH | Ending Bates number of the last document in an attachment range |
| CUSTODIAN | Name of the Custodian the file was sourced from |
| TO | To field extracted from an email message |
| FROM | From field extracted from an email message |
| CC | CC field extracted from an email message |
| BCC | BCC field extracted from an email message |
| SUBJECT | Subject line extracted from an email message |
| DATE SENT | Sent date of an email message |
| TIME SENT | Sent time of an email message |
| FILE EXTENSION | The file type extension representing the email or non-email file document |
| FILE NAME | The name of the original file including extension |
| AUTHOR | Author field extracted from the metadata of a non-email document |
| DATE CREATED | Date that a file was created |
| TIME CREATED | Time that a file was created |
| DATE MOD | Date that a file was last modified |
| TIME MOD | Time that a file was last modified |
| PRINTED DATE | Date that a file was last printed |
| INTMSGID | Message ID assigned to an email message by the outgoing mail server |
| MD5HASH | MD5 hash value for the document |
| EXTRACTED TEXT | Path to document level extracted text |
| NATIVE LINK | Path to native files |