# EXHIBIT F

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) |
| | ) Case No. 14-10979 (CSS) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |

## DEBTORS' AMENDED INTERROGATORIES AND REQUESTS FOR PRODUCTION TO ELLIOTT ASSOCIATES, L.P., ELLIOTT INTERNATIONAL, L.P., AND THE LIVERPOOL LIMITED PARTNERSHIP IN CONNECTION WITH THE DEBTORS' MOTION TO APPROVE THE BHE MERGER AGREEMENT

Pursuant to rules 26 and 34 of the Federal Rule of Civil Procedure (the "Federal Rules"), made applicable to this proceeding pursuant to rules 7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 7026-1 and 7026-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") submit the following amended interrogatories and document requests (originally dated July 20, 2017, the "Debtors' Amended Requests") to Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott") in connection with the *Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee*, dated July 7, 2017 [D.I. 11430] (the "BHE Approval Motion").

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

The Debtors' Amended Requests incorporate by reference all definitions and rules of construction set forth in Rule 34 and any applicable rules of the Local Rules that apply to each request set forth herein.

## **AMENDED INTERROGATORIES TO ELLIOTT**

1. Identify any witness with knowledge of discoverable information regarding Elliott's efforts to pursue financing in connection with an Alternative Transaction, including but not limited to all indications of interest, nondisclosure agreements, and commitment papers.

2. Identify any witness with knowledge of discoverable information regarding Communications and negotiations with any financial sources, financial advisors, or investment banks regarding an Alternative Transaction, including but not limited to Communications and negotiations with entities listed on ELX-11, the "Project Alamo Buyer List and Contact Log Summary," dated July 26, 2017.

3. Identify any witness with knowledge of discoverable information regarding Elliott's diligence on the creditworthiness of inbound expressions of interest and potential financing sources in connection with an Alternative Transaction, including its evaluation of the likelihood of such parties making definitive funding commitments.

4. Identify any witness with knowledge of discoverable information regarding Communications and negotiations regarding ELX-12, the "Equity Commitment with respect to Merger Agreement," dated July 26, 2017, and the incorporation of Texas Wires Company and its entry into the "Equity Commitment with respect to Merger Agreement," dated July 26, 2017.

5. Identify any witness with knowledge of discoverable information regarding Communications and negotiations regarding ELX-13, an email regarding "Oncor soft indication," dated July 25, 2017.

6. Identify any witness with knowledge of discoverable information regarding Elliott's holdings in the Debtors' capital structure and Elliott's efforts to acquire such holdings, including any review, analysis, or evaluation of any information provided to or requested by Elliott or any of its representatives in connection with such acquisition or potential acquisition, including Elliott's investment thesis.

7. Identify any witness with knowledge of discoverable information regarding Elliott's interests or contracts to acquire interests in securities of EFIH and EFH, including the nature and amount of the interests, the consideration delivered or agreed to be delivered by Elliott in exchange for each interest, and the date on which each interest was acquired or is expected to be acquired.

8. Identify any witness with knowledge of discoverable information regarding agreements governing the terms of Elliott's acquisition of interests in securities of EFIH or EFH and all related documents, including any agreement relating to participation rights, rights to proceed, voting rights, rights with respect to any chapter 11 plan of reorganization, or repurchase rights.

9. Identify any witness with knowledge of discoverable information regarding agreements between Elliott and any other party concerning or relating to EFIH or EFH, or any security issued by either of them, including any credit default insurance, acquisition agreements, participation agreements, repurchase agreements, hedging arrangements, or guarantees.

10. Identify any witness with knowledge of discoverable information regarding Elliott's efforts to secure regulatory approval from the IRS in connection with an Alternative Transaction.

11. Identify any witness with knowledge of discoverable information regarding Elliott's efforts to secure regulatory approval from the PUCT in connection with an Alternative Transaction, including Elliott's proposed regulatory commitments and Communications with Oncor, the PUCT, PUCT Staff, OPUC, the Steering Committee of Cities Served by Oncor, Texas Industrial Energy Consumers, the Texas Attorney General, the Governor of Texas, the Lieutenant Governor of Texas, and any other actual or potential intervener.

12. Identify any witness with knowledge of discoverable information regarding statements in *The Elliott Funds' Motion to Adjourn Hearing on the Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee* [D.I. 11506] that "Elliott has taken upon itself to retain Moelis & Company LLC ("Moelis") as its investment banker to assist with, among other things, the capital raise," including but not limited to the nature of the retention and Moelis's compensation structure and when Moelis began working on such matters, including before being retained formally.

13. Identify any witness with knowledge of discoverable information regarding confidentiality agreements considered, negotiated, executed, and/or terminated by Elliott, its advisors, and/or potential financing sources (including any joinders thereto), since April 15, 2017.

14. Identify any witness with knowledge of discoverable information regarding the "presentation for potential financing partners" referenced in paragraph 19 of *The Elliott Funds' Motion to Adjourn Hearing on the Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee* [D.I. 11506], or any other presentation to potential financing sources, including but not limited to EFH/EFIH Restructuring and Debt Capital Needs Update presentation.

15. Identify any witness with knowledge of discoverable information regarding statements in the letter dated July 11, 2017 from Gregg M. Galardi to Chad J. Husnick that "the PUCT staff advised Elliott that it would accept the proposed equitization plan, subject to setting the terms out in a formal agreement" and "[t]here is no challenge unique to the equitization plan that the PUCT staff has identified that stands in the way of that transaction being consummated before year-end."

16. Identify any witness with knowledge of discoverable information regarding the EFIH PIK PSA and Amended EFIH PIK PSA and the Debtors' waivers of certain provisions thereof.

17. Identify any witness with knowledge of discoverable information regarding Elliott's understanding and analysis of projected creditor recoveries in connection with the Berkshire Transaction, including, but not limited to, projected creditor recoveries for different emergence dates.

18. Identify any witness with knowledge of discoverable information regarding Elliott's understanding and analysis of projected creditor recoveries in connection with an Alternative Transaction, including, but not limited to, projected creditor recoveries for different emergence dates.

19. Identify any witness with knowledge of discoverable information regarding Communications, whether direct or indirect, with news organizations (including but not limited to print, television, and Internet-based outlets such as Bloomberg L.P.) regarding the EFIH PIK PSA, the Amended EFIH PIK PSA, the Berkshire Transaction, and any Alternative Transaction (including Elliott's efforts to secure financing, creditor support, and IRS and PUCT approval thereof).

5

20. Identify any witness with knowledge of discoverable information regarding all fees, expenses, or other costs (including without limitation legal and financial advisor fees and expenses) incurred by Elliott in connection with these Chapter 11 Cases.

21. Identify any witness with knowledge of discoverable information regarding Communications between (a) Elliott and all of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on its behalf and (b) Berkshire and all of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on its behalf.

22. Identify any witness with knowledge of discoverable information regarding Communications between (a) Elliott and all of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on its behalf and (b) Sunrise and all of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on its behalf.

23. Identify any witness with knowledge of discoverable information regarding Communications between (a) Elliott and all of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on its behalf and (b) creditors of the Debtors and all of their agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on their behalf.

24. Identify any witness with knowledge of discoverable information regarding Communications between (a) Elliott and all of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on its behalf and (b) financing sources for an Alternative Transaction (including, but not limited to, prospective financing sources) and all

of their agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on their behalf

25. Identify any witness that Elliott intends to call at the hearing on the BHE Approval Motion.

**AMENDED DOCUMENT REQUESTS TO ELLIOTT**

1. All Documents and Communications reflecting executed commitment papers regarding the funding of an Alternative Transaction.

2. All Documents and Communications regarding Elliott's efforts to pursue financing in connection with an Alternative Transaction, including but not limited to all indications of interest (including of the type reflected in ELX-13, an email regarding "Oncor soft indication," dated July 25, 2017), nondisclosure agreements, and draft commitment papers.

3. All Documents and Communications reflecting negotiations with and/or proposals to any financial sources, financial advisors, or investment banks regarding an Alternative Transaction, including but not limited to Communications and negotiations with entities listed on ELX-11, the "Project Alamo Buyer List and Contact Log Summary," dated July 26, 2017.

4. All Documents and Communications regarding Elliott's diligence on the creditworthiness of inbound expressions of interest and potential financing sources in connection with an Alternative Transaction, including its evaluation of the likelihood of such parties making definitive funding commitments.

5. All Documents and Communications regarding ELX-12, the "Equity Commitment with respect to Merger Agreement," dated July 26, 2017.

6. All Documents and Communications regarding the incorporation of Texas Wires Company and its entry into the "Equity Commitment with respect to Merger Agreement," dated July 26, 2017.

7. All Documents and Communications regarding ELX-13, an email regarding "Oncor soft indication," dated July 25, 2017.

8. All Documents and Communications regarding Elliott's holdings in the Debtors' capital structure and Elliott's efforts to acquire such holdings, including any review, analysis, or evaluation of any information provided to or requested by Elliott or any of its representatives in connection with such acquisition or potential acquisition, including Elliott's investment thesis.

9. All Documents and Communications regarding Elliott's interests or contracts to acquire interests in securities of EFIH and EFH, including the nature and amount of the interests, the consideration delivered or agreed to be delivered by Elliott in exchange for each interest, and the date on which each interest was acquired or is expected to be acquired.

10. All Documents and Communications regarding agreements governing the terms of Elliott's acquisition of interests in securities of EFIH or EFH and all related documents, including any agreement relating to participation rights, rights to proceed, voting rights, rights with respect to any chapter 11 plan of reorganization, or repurchase rights.

11. All Documents and Communications regarding agreements between Elliott and any other party concerning or relating to EFIH or EFH, or any security issued by either of them, including any credit default insurance, acquisition agreements, participation agreements, repurchase agreements, hedging arrangements, or guarantees.

12. All Documents and Communications regarding Elliott's efforts to secure regulatory approval from the IRS in connection with an Alternative Transaction.

13. All Documents and Communications regarding Elliott's efforts to secure regulatory approval from the PUCT in connection with an Alternative Transaction, including Elliott's proposed regulatory commitments and Communications with Oncor, the PUCT, PUCT Staff, OPUC, the Steering Committee of Cities Served by Oncor, Texas Industrial Energy Consumers, the Texas Attorney General, the Governor of Texas, the Lieutenant Governor of Texas, and any other actual or potential intervener.

14. All Documents and Communications regarding statements in *The Elliott Funds' Motion to Adjourn Hearing on the Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee* [D.I. 11506] that "Elliott has taken upon itself to retain Moelis & Company LLC ("Moelis") as its investment banker to assist with, among other things, the capital raise," including but not limited to the nature of the retention and Moelis's compensation structure and when Moelis began working on such matters, including before being retained formally.

15. All Documents and Communications regarding confidentiality agreements considered, negotiated, executed, and/or terminated by Elliott, its advisors, and/or potential financing sources (including any joinders thereto), since April 15, 2017.

16. All Documents and Communications regarding the "presentation for potential financing partners" referenced in paragraph 19 of *The Elliott Funds' Motion to Adjourn Hearing on the Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee* [D.I. 11506], or any other presentation to potential financing sources, including but not limited to EFH/EFIH Restructuring and Debt Capital Needs Update presentation.

17. All Documents and Communications regarding statements in *The Elliott Funds' Motion to Adjourn Hearing on the Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee* [D.I. 11506] that "Elliott has also received in-bound expressions of interest from multiple strategic bidders following the announcement of the Berkshire transaction" and "Elliott is confident that it will be able to have committed financing for the equitization plan by early September."

18. All Documents and Communications regarding statements in the letter dated July 11, 2017 from Gregg M. Galardi to Chad J. Husnick that "the PUCT staff advised Elliott that it would accept the proposed equitization plan, subject to setting the terms out in a formal agreement" and "[t]here is no challenge unique to the equitization plan that the PUCT staff has identified that stands in the way of that transaction being consummated before year-end."

19. All Documents and Communications regarding the EFIH PIK PSA and Amended EFIH PIK PSA and the Debtors' waivers of certain provisions thereof.

20. All Documents and Communications regarding Elliott's understanding of creditor support for the Berkshire Transaction, including Communications between (a) Elliott and all of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on its behalf (b) and creditors of the Debtors and all of their agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on their behalf.

21. All Documents and Communications regarding Elliott's understanding of creditor support for an Alternative Transaction, including Communications between (a) Elliott and all of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on its behalf (b) and creditors of the Debtors and all of their agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on their behalf.

22. All Documents and Communications regarding Elliott's understanding and analysis of projected creditor recoveries in connection with the Berkshire Transaction, including, but not limited to, projected creditor recoveries for different emergence dates.

23. All Documents and Communications regarding Elliott's understanding and analysis of projected creditor recoveries in connection with an Alternative Transaction, including, but not limited to, projected creditor recoveries for different emergence dates.

24. All Documents and Communications regarding Elliott's valuation of the Berkshire Transaction.

25. All Documents and Communications regarding Elliott's valuation of an Alternative Transaction.

26. All Documents and Communications between (a) Elliott and all of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on its behalf and (b) Berkshire and all of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on its behalf.

27. All Documents and Communications between (a) Elliott and all of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on its behalf and (b) Sunrise and all of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on its behalf.

28. All Documents and Communications between (a) Elliott and all of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on its behalf and (b) creditors of the Debtors and all of their agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on their behalf.

29. All Documents and Communications between (a) Elliott and all of its agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on its behalf and (b) financing sources for an Alternative Transaction (including, but not limited to, prospective financing sources) and all of their agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on their behalf.

30. All Documents and Communications regarding all fees, expenses, or other costs (including without limitation legal and financial advisor fees and expenses) incurred by Elliott in connection with these Chapter 11 Cases.

31. All Documents and Communications, whether direct or indirect, with news organizations (including but not limited to print, television, and Internet-based outlets such as Bloomberg L.P.) regarding the EFIH PIK PSA, the Amended EFIH PIK PSA, the Berkshire Transaction, and any Alternative Transaction (including Elliott's efforts to secure financing, creditor support, and IRS and PUCT approval thereof).

32. All Documents and Communications that have been or will be provided to testifying experts in connection with the BHE Approval Motion.

33. All Documents and Communications that may be introduced into evidence at any hearing in connection with the BHE Approval Motion.

34. Any and all demonstratives, exhibits, or other materials that will be relied upon at any hearing in connection with the BHE Approval Motion, regardless of whether introduced into evidence.

## DEFINITIONS

The definitions set forth below are to be construed in the broadest sense with reference to all applicable rules.

1. "Alternative Transaction" means any actual or potential transaction for the direct or indirect sale or other disposition of EFIH's interest in Oncor that has been considered, contemplated, or developed since October 1, 2016 as an alternative to any and all transactions or plans of reorganization proposed by the Debtors in these Chapter 11 Cases (including any standalone plan of reorganization, any transaction by which a party other than NextEra or Berkshire seeks to acquire any portion of the Debtors' direct or indirect economic interest in Oncor, or any transaction that is conditioned or premised on an equitization).

2. "Amended EFIH PIK PSA" means that certain plan support agreement, as amended or modified on January 19, 2017, entered into by the EFH Debtors, the EFIH Debtors, the EFIH Unsecured Notes Trustee, and the EFIH Supporting Unsecured Creditors, originally dated January 2, 2017.

3. "And" and "Or," whether capitalized or not, are intended as terms of inclusion, and not exclusion, and should be construed both disjunctively and conjunctively so as to bring within the scope of the requests specified above and information which might otherwise be considered to be outside of their scope.

4. "Berkshire" means Berkshire Hathaway Energy Company.

5. "Berkshire Transaction" means the transaction reflected in the Agreement and Plan of Merger by and among Berkshire Hathaway Energy Company, O.E. Merger Sub Inc., O.E. Merger Sub II, LLC, O.E. Merger Sub III, LLC, Energy Future Intermediate Holding Company LLC, and Energy Future Holdings Corp., dated as of July 7, 2017 [D.I. 11430-2].

6. "Communication" means any contact whatsoever or any transmission or exchange of words, numbers, ideas, opinions, thoughts, concepts, graphs, symbols, images, or

other information, emotion, feeling, or sentiment, whether complete or partial. Any request for communication includes all attachments and links contained in an electronic communication.

7. "Chapter 11 Cases" means the chapter 11 cases, commenced by the Debtors in the United States Bankruptcy Court for the District of Delaware on April 29, 2014.

8. "Document," whether capitalized or not, means any recording of information in whatever form, including, but not limited to, memoranda, correspondence, personal notes, spreadsheets, databases, work papers, telephone logs, calendars, plan books, diaries, journals and daily records of activity, drawings, graphs, charts, maps, photographs, video and/or audio recordings and other data compilations from which information can be obtained or translated (with or without the use of detection devices), including electronic files, records, and archives. For purpose of these requests, a document which is a copy of another document is intended to be separately requested if the copy differs in any way by virtue of any changes, additions, redactions, annotations, or recipients.

9. "EFH/EFIH Restructuring and Debt Capital Needs Update" means that certain presentation disclosed by Elliott on July 10, 2017 and any versions thereof.

10. "EFIH PIK PSA" means that certain plan support agreement entered into by the EFH Debtors, the EFIH Debtors, the EFIH Unsecured Notes Trustee, and the EFIH Supporting Unsecured Creditors, on January 2, 2017.

11. "Elliott" means Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership and any or all of their agents, advisors, employees, representatives, staff, attorneys, and all other persons or entities acting on their behalf or under their control, including but not limited to Moelis & Company LLC.

12. "Governor of Texas" means the Office of the Texas Governor, Governor Greg Abbott, any current or former officer, director, partner, agent, employee, or attorney thereof, and any former governor of Texas.

13. "Including," whether capitalized or not, shall mean including, but not limited to. Phrases following the term "including" are not intended to be exhaustive of the topics or information sought and shall not in any way be read to limit the scope of the requests specified above.

14. "IRS" means the Internal Revenue Service.

15. "Lieutenant Governor of Texas" means the Office of the Texas Lieutenant Governor, Lieutenant Governor Dan Patrick, and any current or former officer, director, partner, agent, employee, or attorney thereof, and any former lieutenant governor of Texas.

16. "NextEra" means NextEra Energy, Inc.

17. "Oncor" means Oncor Electric Delivery Holdings Company LLC and its direct and indirect subsidiaries.

18. "OPUC" means the Texas Office of Public Utility Counsel.

19. "PUCT" means the Public Utility Commission of Texas.

20. "PUCT Staff" means the Staff of the Public Utility Commission of Texas.

21. "Regarding," whether capitalized or not, shall mean concerning, referring to, relating to, evidencing, explaining, constituting, or comprising.

22. "Sunrise" means Sunrise Partners Limited Partnership.

23. "Steering Committee of Cities Served by Oncor" means that certain group of Oncor customers represented by Lloyd Gosselink Rochelle & Townsend, P.C.

24. "Texas Attorney General" means the Office of the Attorney General of the State of Texas.

25. "Texas Industrial Energy Consumers" means that certain group of Oncor customers represented by Thompson & Knight LLP.

26. "Texas Wires Company" means that certain Delaware corporation party to the "Equity Commitment with respect to Merger Agreement," dated July 26, 2017.

27. "You" or "Your," whether capitalized or not, means the party responding to these discovery requests, including any agents, representatives or any person with any ownership interest thereof, or other persons acting, or purporting to act on behalf or under the control of the party responding to these discovery requests.

## INSTRUCTIONS

1. Unless expressly indicated otherwise, the time period for these Requests shall be March 31, 2017 to present.

2. If You object to any part of a request, state the specific basis for the objection and produce Documents and information responsive to all parts of the request to which You do not object. If any information called for by any discovery request is withheld because You claim that such information is privileged, provide a description that will enable other parties to assess the claim, consistent with Federal Rule 26(b)(5)(A).

3. You are under an obligation to supplement Your responses under the circumstances specified in Federal Rule 26(e).

4. As used herein, the singular shall include the plural and the plural shall include the singular whenever necessary to bring within the scope of these discovery requests that which might otherwise be outside their scope.

5. The information sought in the preceding discovery requests includes all Your knowledge and information and all materials in Your possession, custody, or control, including, but not limited to, that information and those Documents in the custody or possession of current or former members, direct or indirect subsidiaries, parents, Affiliates, divisions, predecessors, successors, officers, directors, agents, employees, representatives, consultants, or investigators, or your attorneys or their agents, employees, representatives, or investigators.

6. If You are aware of documents responsive to these document requests, which are not available to You or not subject to Your reasonable access or control, identify any information You may have regarding the location and possessor of such documents. If the addresses and telephone numbers of an individual or source identified in Your responses are available, please provide them.

7. In responding to each such request, furnish all exhibits, schedules, annexes, appendices, or any other ancillary Documents related to each Document produced. Each paragraph and subparagraph hereof and the definitions herein are to be construed independently, and not by or with reference to any paragraph or subparagraph or definition herein for purposes of limiting the scope of any particular request or the subject matter thereof.

8. Please produce the documents requested below for inspection and copying at the law offices of Richards, Layton & Finger, P.A., Attention: Jason M. Madron, 920 North King Street, Wilmington, Delaware 19801. Please furnish the information requested in the interrogatories via letter to Richards, Layton & Finger, P.A., Attention: Jason M. Madron, 920 North King Street, Wilmington, Delaware 19801.

[*Remainder of page intentionally left blank.*]

| | |
|---|---|
| Wilmington, Delaware<br>Dated:   July 29, 2017 | */s/ Jason M. Madron*<br>**RICHARDS, LAYTON & FINGER, P.A.**<br>Mark D. Collins (No. 2981)<br>Daniel J. DeFranceschi (No. 2732)<br>Jason M. Madron (No. 4431)<br>920 North King Street<br>Wilmington, Delaware 19801<br>Telephone:     (302) 651-7700<br>Facsimile:      (302) 651-7701<br>Email:            collins@rlf.com<br>                        defranceschi@rlf.com<br>                        madron@rlf.com<br><br>-and-<br><br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Edward O. Sassower, P.C. (admitted *pro hac vice*)<br>Stephen E. Hessler, P.C. (admitted *pro hac vice*)<br>Brian E. Schartz (admitted *pro hac vice*)<br>Aparna Yenamandra (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022-4611<br>Telephone:     (212) 446-4800<br>Facsimile:      (212) 446-4900<br>Email:            edward.sassower@kirkland.com<br>                        stephen.hessler@kirkland.com<br>                        brian.schartz@kirkland.com<br>                        aparna.yenamandra@kirkland.com<br><br>James H.M. Sprayregen, P.C. (admitted *pro hac vice*)<br>Marc Kieselstein, P.C. (admitted *pro hac vice*)<br>Chad J. Husnick, P.C. (admitted *pro hac vice*)<br>Steven N. Serajeddini (admitted *pro hac vice*)<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Telephone:     (312) 862-2000<br>Facsimile:      (312) 862-2200<br>Email:            james.sprayregen@kirkland.com<br>                        marc.kieselstein@kirkland.com<br>                        chad.husnick@kirkland.com<br>                        steven.serajeddini@kirkland.com<br><br>Mark McKane, P.C. (admitted *pro hac vice*)<br>555 California Street<br>San Francisco, CA 94104<br>Telephone:     (415) 439-1400<br>Facsimile:      (415) 439-1500<br>Email:            mark.mckane@kirkland.com<br><br>*Co-Counsel to the Debtors and Debtors in Possession* |