# **<u>EXHIBIT D</u>**

**Kenneth W. Anderson, Jr.**
Commissioner

**Brandy Marty Marquez**
Commissioner

**Brian H. Lloyd**
Executive Director



**Greg Abbott**
Governor

## *Public Utility Commission of Texas*

---

July 17, 2017

Mr. Gregg M. Galardi
Ropes and Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704

Dear Mr. Galardi,

     I write to you to express concern regarding several of the statements made in your July 11, 2017 letter[1] to Mr. Chad Husnick of Kirkland & Ellis, LLP and to clear up any miscommunication. Specifically, there are several misstatements in your correspondence concerning the interactions between the Public Utility Commission of Texas ("PUCT") Staff and Elliott Management Corporation ("Elliott"). I am also in receipt of Elliott's letter to the Oncor Board of Directors dated July 12, 2017 which was forwarded to me by your client.[2] While I appreciate the attempts in that letter to correct those misstatements, I believe it is important that there be complete clarity as to the positions of the PUCT Staff. I apologize for the delay in providing you this letter as I was out of the state on vacation last week.

     Your July 11 letter represented that, based upon the June 28, 2017 meeting attended by representatives of the Public Utility Commission of Texas (PUCT) Staff (including myself), the Office of the Attorney General of Texas, Oncor, and Elliott (including you and Jeff Rosenbaum), that "... the PUC Staff advised Elliott that it would accept the proposed equitization plan, subject to setting out the terms in a formal agreement." No such advisement occurred at this meeting, as the attendees from the Office of the Attorney General of Texas and Oncor can attest.

     As of the date of the June 28th meeting, the Commissioners had not yet acted upon the second motion for rehearing in Docket No. 46238, and thus our discussions remained at a very high level whereby we discussed possible scenarios should the Commission finalize its order denying that transaction the following day.[3] However, in our discussion, I believe I made it abundantly clear that the PUCT Staff would need to examine the details of a specific equitization or sale proposal in order to ensure that the public interest requirement of Texas law was met, to ensure that the proposal adequately addressed concerns expressed by Commissioners in their open meeting discussions and memorialized in the written orders issued during the prior proposed transactions, and to analyze any needed assurances necessary to protect Oncor's captive ratepayers.

---

[1] http://elliottdocs.com/assets/downloads/Elliott-Response-to-Husnick-Letter.pdf
[2] http://elliottdocs.com/assets/downloads/Elliott-Letter-to-Board-of-Directors-of-Oncor.pdf
[3] So that there is no confusion on this matter, I remind you that PUCT Commissioners serve in a quasi-judicial capacity and deliberate independently of the PUCT Staff (including myself) that actively participate in contested proceedings as required by the Texas Administrative Procedures Act.

 Printed on recycled paper

An Equal Opportunity Employer

**1701 N. Congress Avenue   PO Box 13326 Austin, TX 78711   512/936-7000   Fax: 512/936-7003  web site: www.puc.texas.gov**

Because our June 28th meeting was at a conceptual level, PUCT Staff did not receive key details about how an equitization transaction might be structured. In order to be able to meaningfully opine on such a transaction, we would need, at a minimum, the details of the following information:

- the composition of the new proposed ownership group;
- how the potential transaction will be financed;
- the continued debt levels at Oncor and Oncor Holdings;
- the continued debt levels at Energy Future Holdings (EFH) and Energy Future Intermediate Holdings (EFIH);
- whether there are potential code of conduct issues with any of the potential ownership group with respect to their interests in other Texas electricity market participants;
- the governance and levels of independence of the Oncor, Oncor Holdings, EFH, and EFIH boards;
- the composition and independence of the management of Oncor;
- how certain liabilities or potential liabilities related to asbestos litigation, certain income tax issues, and other issues will be treated;
- analyses or discussions with rating agencies about the impacts of the above items on the credit ratings of Oncor, Oncor Holdings, EFH, and EFIH; and
- any assurances that will be made to ensure that the new owners will not slash capital expenditures, operating expenses, vegetation management, cyber-security investments or otherwise unduly restrict the ability of Oncor to fulfill its statutory obligation to reliably serve customers at just and reasonable rates.[4]

The commitment I made at the June 28th meeting was an offer to assist in convening the major consumer representatives and other stakeholders in advance of a new change in control filing proposing an equitization transaction if that was the path chosen by Energy Future Holdings ("EFH"), Oncor, and the creditors. It was of great disappointment to me that your letter misrepresented the nature of the meeting and my commitment.

While Elliott's July 12th letter to the Oncor Board begins to address a number of the above issues, it also further illustrates the necessity of Elliott providing significant details regarding any potential transaction. For example, this letter includes a discussion of a slide deck disseminated by Elliott[5] that appeared to suggest a method to increase distributions available to the potential new owners of Oncor from $180 million per year to $301 million per year, or 67%, through significant capital expenditure cuts. While Elliott's letter appears to disavow this cut, this discussion reflects precisely the types of concerns that the PUCT Staff and other parties have analyzed in great detail during the prior transactions. At such time that Elliott and EFH have developed a proposal that contains sufficient detail to enable productive discussions and evaluation of these concerns, we look forward to working with you and other stakeholders. [6]

In light of the misstatements in your July 11 letter, prior to any meeting in which the PUCT staff participates, I will require express written acknowledgement by Elliott and its representatives that any discussions concerning a possible equitization transaction will remain confidential between the parties to those discussions and not be misrepresented to others. Second, I have instructed my staff that any future communications between the PUCT Staff and Elliott outside of these face-to-face meetings shall take place only

---

[4] This list is intended to be neither exhaustive or represent the items of concern or interest of other Texas stakeholders.
[5] http://elliottdocs.com/assets/downloads/Restructuring-and-Debt-Capital-Needs-Presentation.pdf
[6] Again, I remind you that any agreements entered into by the PUCT Staff and other parties are not binding upon the PUCT Commissioners.

in writing, and in coordination with the Office of the Attorney General of Texas.  Finally, any meeting should include representatives of the Office of Public Utility Counsel, Steering Committee of Cities Served by Oncor, Texas Industrial Energy Consumers, and representatives of the major retail electric providers and/or their trade associations, as I expect all of these parties to continue to actively participate in proceedings regarding this matter.


Sincerely,



Brian H. Lloyd
Executive Director
Public Utility Commission of Texas










cc:  Chad Husnick, Kirkland & Ellis, LLP
Robert Shapard, Chief Executive Officer, Oncor Electric Delivery
Allen Nye, Senior Vice President and General Counsel, Oncor Electric Delivery
Patricia J. Villeareal, Jones Day
Matthew Henry, Vinson & Elkins, LLP
Tonya Baer, Public Counsel, Office of Public Utility Counsel
Geoffrey Gay, Counsel of the Steering Committee of Cities Served by Oncor
Phillip Oldham, Counsel for Texas Industrial Energy Consumers
Margaret Pemberton, Director, Legal Division, Public Utility Commission of Texas
Hal Morris, Assistant Attorney General, Office of the Attorney General of Texas
Ashley Bartram, Office of the Attorney General of Texas