**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 14-10979 (CSS) |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., et al.,[1] | ) Jointly Administered |
| | ) |
| | ) Re: Docket Nos. 11430 & 11699 |
| | ) |
| | ) <u>Hearing Date</u>:  August 21, 2017 at 10:00 a.m. |
| | ) <u>Objection Deadline</u>: August 9, 2017 at 4:00 p.m. |
| Debtors. | ) |

**EFH INDENTURE TRUSTEE'S (I) LIMITED OBJECTION AND RESERVATION OF RIGHTS TO THE MOTION OF THE EFH/EFIH DEBTORS FOR ORDER AUTHORIZING ENTRY INTO MERGER AGREEMENT AND APPROVING <u>TERMINATION FEE AND (II) JOINDER IN EFH/EFIH COMMITTEE'S OBJECTION</u>**

American Stock Transfer & Trust Company, LLC ("<u>AST</u>"), as successor trustee to The Bank of New York Mellon Trust Company, N.A. (in such capacity, the "<u>EFH Indenture Trustee</u>") under the indentures for certain unsecured notes issued by Energy Future Holdings Corp. ("<u>EFH Corp.</u>"), by its undersigned counsel, hereby (i) joins in the *Limited Objection and Reservation of Rights of the Official Committee of Unsecured Creditors of Energy Future Holdings Corporation, Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. to Motion of the EFH/EFIH Debtors for Order Authorizing Entry Into Merger Agreement and Approving Termination Fee* (the "<u>Committee Objection</u>") filed by the EFH/EFIH Committee (as defined in the Committee Objection), and (ii) further objects (the "<u>Limited Objection</u>") to the *Motion of the EFH/EFIH Debtors for Order Authorizing Entry into*

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.

*Merger Agreement and Approving Termination Fee* [D.I. 11430] (the "<u>Motion</u>")[2] to the extent

that it seeks approval of the Termination Fee in the amount of $270,000,000 (the "<u>BHE</u>

<u>Termination Fee</u>").

In addition to joining in the arguments set forth in the Committee Objection, the EFH

Indenture Trustee states that it does not believe that EFH Corp. has met its burden to establish

that a termination fee of this extraordinary size is required in these circumstances.  To the extent

the BHE Termination Fee is approved, the EFH Indenture Trustee also objects to the

apportionment of **<u>any</u>** amount of the BHE Termination Fee to EFH Corp.  Finally, the EFH

Indenture Trustee reserves the right to supplement this Limited Objection and raise additional

arguments following the completion of discovery, which is currently ongoing.  In support of this

Limited Objection, the EFH Indenture Trustee respectfully states as follows:

<u>**BACKGROUND**</u>

1.      This Merger Agreement is the Debtors' fourth attempt at restructuring the E-Side

Debtors.  This time they seek to conclude these cases through the sale of their economic interest

in Oncor Electric Delivery Company, LLC ("<u>Oncor</u>") to Berkshire Hathaway Energy Company

("<u>BHE</u>").  By the time the Debtors accepted the offer from BHE, the due diligence, sale process

— and notably here — the regulatory approval process were well underway.

2.      Article VIII of the Merger Agreement provides that upon the occurrence of

certain termination events, EFH Corp. and EFIH would be required to pay BHE a Termination

Fee in the amount of $270 million within five (5) days of consummation of an alternative

restructuring of the E-Side Debtors, including "any transaction or proceeding that permits the E-

---

[2]      Capitalized terms used but not defined herein, shall have the meaning given to them in the Motion.

4813-3250-1324

Side Debtors that are the direct or indirect owners of Oncor Holdings to emerge from the Chapter 11 Cases." Merger Agreement, section 8.5(b).

3.    The Debtors seek authority to pay this potential Termination Fee as an administrative expense payable by **both** EFIH and EFH Corp.  *Id*.  Approval of the Merger Agreement and payment of the Termination Fee are expressly conditioned on approval by this Court. *Id*.

## JOINDER

4.    The EFH Indenture Trustee joins in the Committee Objection and adopts the arguments in the Committee Objection as if fully set forth herein.

## LIMITED OBJECTION

### A.    The Size of BHE Termination Fee is Excessive and Inappropriate

5.    Under the applicable Third Circuit standard, and particularly where the Debtors are seeking payment of the Termination Fee as an administrative expense, the Debtors bear the burden of demonstrating under section 503 of the Bankruptcy Code that the Termination Fee is necessary to preserve value for the estates. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999).  Here, to date, there has been no showing that a termination fee in the amount of $270 million is necessary.

6.    The Termination Fee is analogous to bid protections afforded to a qualified and Court-approved stalking horse bidder.  While the Court of Appeals for the Third Circuit has held that bid protections may be permissible as administrative expenses when shown to preserve the value of a debtor's estate, the party supporting the protection must show that such bid protections are required to induce an initial bid.  *See In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010); *O'Brien*, 181 F.3d at 535.

7.      In the Motion, the Debtors argue that the Transaction "provides significant value to the E-Side Debtors' creditors and minimizes the level of conditionality necessary to set the E-Side Debtors on a path to emergence."   Motion, ¶ 53.   The Debtors further argue that the Termination Fee is reasonable and consistent with market practices because it represents approximately 1.5% of the total enterprise value of the transaction. *Id*. ¶ 54.  The record contains no detailed facts regarding how the amount of the Termination Fee was negotiated and the record does not contain sufficient evidence for the Court to find that a fee of this size is justified.  Here, the Termination Fee in the amount proposed may very well be inappropriate since the period during which BHE is at risk is relatively brief.   Notably, (i) BHE has already started the regulatory approval process and (ii) a PUCT decision is expected prior to the hearing on confirmation of the Plan.

8.      At the hearing held on July 26, 2017, counsel for the Debtors explained that BHE has **<u>already started</u>** the regulatory approval process in advance of approval of Merger Agreement and confirmation of the Plan:

> What did Berkshire do that was different? They went down to Texas and they negotiated with the intervenors. And what has come out of that is an agreement first with eight, actually first it was with two, then it was with eight, and now just of yesterday, they've added two additional intervenors. Berkshire is locking down these intervenors as they move forward and building momentum towards approval in the PUCT for this transaction. This is a previously unheard level of consensus in the PUCT process.
>
> ***
>
> After confirmation, there's no fiduciary, but again, as I said at the last hearing, we actually think that's not really a relevant time period anymore because **we will have obtained approval from the PUCT in advance of confirmation, so it's going to proceed quite quickly to closing.**

Hr'g Tr. 8:25; 9:1-8; 10:5-10 (July 26, 2017)(Husnick, C.)(emphasis added)

9.      Accordingly, the period of time in which BHE is uncertain of whether the proposed transaction will receive court and regulatory approval will be brief.  Based on those factors and the current record, (the Motion and supporting declarations) the BHE Termination Fee should not be approved in the amount requested.

10.      The Court is not required to defer to the judgment of a debtor-in-possession when analyzing the propriety of a break-up fee or expense reimbursement in a bankruptcy context.  *See O'Brien*, 181 F.3d at 535.  Under the applicable Third Circuit standard, "the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate."  *Id*.  The Debtors have not sufficiently demonstrated that such a sizeable "bid protection" is necessary to preserve the value of the estate.  In these unusual circumstances, ahead of approval of a fee of this proposed magnitude, the Debtors should be required to establish that the size of the fee in question is necessary and appropriate.

**B.      None of the Termination Fee Should be Apportioned to EFH Corp.**

11.      To the extent the BHE Termination Fee is approved, the EFH Indenture Trustee submits that no portion of the fee should be apportioned to EFH Corp. and contests any such apportionment.  As of the date of the filing of this Limited Objection, the EFH Indenture Trustee continues to evaluate the Debtors' proposal that the apportionment of the BHE Termination Fee — to the extent it ever becomes due — between EFIH and EFH Corp. be determined at a later date.

12.      In the event that an agreement regarding deferral of the allocation issues is not reached, the EFH Indenture Trustee requests that EFH Corp. — not just EFIH or the Debtors collectively — demonstrate how EFH Corp. has met its burden of proving that it is fair and

4813-3250-1324

proportional to have EFH Corp.'s estate liable for satisfying **any portion** of the BHE

Termination Fee to the extent it ever comes due.  *See O'Brien*, 181 F.3d at 536 (stating that

termination fee must "provide some benefit to the debtor's estate.").  In the absence of any such

showing, BHE should be required to limit its recourse for recovery of the BHE Termination Fee

to EFIH, or, to the extent any recovery of the BHE Termination Fee is sought from EFH Corp.,

subordinate recovery of any such fee to existing unsecured creditors of EFH Corp.

## RESERVATION OF RIGHTS

13.     The EFH Indenture Trustee reserves all rights it may have in law or in equity with

respect to confirmation of the Plan and to supplement this Limited Objection and raise additional

issues in the event of further amendments or modifications to the Merger Agreement or

Termination Fee, and facts clarified or revealed during ongoing discovery.

## CONCLUSION

WHEREFORE, the EFH Indenture Trustee respectfully requests that the Court (i) deny

approval of the BHE Termination Fee in the amount proposed, and (ii) grant such relief as is just

and proper.

Dated: Wilmington, DE
      August 9, 2017

**CROSS & SIMON, LLC**

By: */s/Christopher P. Simon*
Christopher P. Simon (Del. Bar No. 3697)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

-and-

NIXON PEABODY LLP
Amanda D. Darwin
Richard C. Pedone
Erik Schneider
100 Summer Street

Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com
eschneider@nixonpeabody.com

-and-

Christopher J. Fong
55 West 46th Street
New York, NY 10036
Telephone: 212-940-3724
Facsimile: 855-900-8613
cfong@nixonpeabody.com

*Co- Counsel to American Stock Transfer & Trust Company, LLC, as Indenture Trustee*

7