# Exhibit H

Case 14-10979-CSS   Doc 11703   Filed 07/29/17   Page 1 of 28

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re<br><br>ENERGY FUTURE<br>HOLDINGS CORP., *et al.*,<br><br>     *Debtors*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Chapter 11

Case No. 14-10979 (CSS)
(Jointly Administered)

<u>Hearing Date</u>:  **Sept. 19, 2017 at 10:00 a.m.**
<u>Obj. Deadline</u>:  **August 25, 2017 at 4:00 p.m.**

**THE ELLIOTT FUNDS' MOTION TO RECONSIDER IN PART**
**THE SEPTEMBER 19, 2016 ORDER [DKT. NO 9584]**
<u>**APPROVING THE NEXTERA TERMINATION FEE**</u>

   Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership

(collectively, "<u>Elliott</u>"), as beneficial owners of EFIH secured and unsecured notes, hereby move

(the "<u>Motion</u>") this Court to reconsider in part the *Order Authorizing Entry Into Merger*

*Agreement, Approving Termination Fee, and Entry Into and Performance Under Plan Support*

*Agreement* (Dkt. No. 9584) (the "<u>Termination Fee Order</u>") to clarify that Energy Future

Holdings Corp. ("<u>EFH</u>") and Energy Future Intermediate Holding Company LLC, ("<u>EFIH</u>," and

together with EFH, the "<u>Debtors</u>") are not obligated to pay NextEra Energy, Inc. ("<u>NextEra</u>") a

termination fee in the amount of $275 million (the "<u>Termination Fee</u>") pursuant to the merger

agreement (the "<u>Merger Agreement</u>") among NextEra and the Debtors.  In support of the Motion,

Elliott represents as follows:

<u>**PRELIMINARY STATEMENT**</u>

   1.  Justice and the law require this Court to reconsider in part the Termination Fee

Order.  That order approved a Termination Fee based on disclosures to this Court that in one

instance was flatly wrong and in others omitted the Termination Fee's key structural defects. As a result, the Termination Fee Order should be revised in part to rescind approval of the Termination Fee payment in certain limited circumstances.

2.      The Termination Fee, as approved in the Termination Fee Order, is potentially payable beyond the common circumstances when the associated merger transaction benefits the estates by spurring superior offers or by "locking in" a buyer commitment to a realizable transaction. As alleged by NextEra, the Termination Fee provisions permit NextEra to receive the Termination Fee even when the fee provides no benefit at all to the Debtors' estates—namely, when NextEra simply could not close. To the extent the Termination Fee provisions allow this result, the Termination Fee could not have been approved by this Court under the Third Circuit's decision in *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999).

3.      The Termination Fee is allegedly payable even if the Public Utility Commission of Texas ("PUCT") denied approval of the NextEra deal ***unless*** NextEra terminated the deal itself and thereby waived its fee. The Debtors did not make clear to this Court that the estates could owe NextEra $275 million if the PUCT denied approval of the merger unless NextEra voluntarily terminated the Merger Agreement, thereby waiving its fee.

4.      This absurd result would have required a clear and candid explanation to the Court and the creditors. None was given. In fact, the disclosures made were precisely to the contrary. The Debtors specifically said no fee would be due following a PUCT merger denial. At other times, the Debtors said there would be no fee if the PUCT rejected the merger ***and*** NextEra voluntarily walked from the deal. But the Debtors did not explain to the Court (despite the Court's pointed questions about the terms of the fee) that as long as NextEra could stall and keep the deal theoretically alive, NextEra could preserve the right to claim a fee that had yielded

the estates nothing.  What is now alleged is that if NextEra refused to walk after PUCT denial, the estates could be saddled with a $275 million exit tax in order to complete any other plan of reorganization.  The failure to fully explain and vet any such structure, prior to the approval of the Termination Fee, resulted in erroneous factual findings and the misapplication of governing law, and thus compels reconsideration of the Termination Fee Order consonant with justice.

5.     The Termination Fee Order is infirm as a matter of law.  If the alleged contours of the provisions governing the payment of the Termination Fee had been fully and properly disclosed, its approval would have been shown to run afoul of the Third Circuit's *O'Brien* standard.  *See* 181 F.3d at 527.  This Court could not properly find, as *O'Brien* requires, that the payment of a termination fee provided an "actual benefit" when the transaction fails to close due to a regulatory veto (unless the buyer voluntarily waives such fee).  In that scenario, the Debtors' estates, through no fault of their own, would have neither the merger consideration nor an alternative "higher and better" consideration with which to pay the fee.  The extension of the Termination Fee's coverage to such a scenario is impermissible under *O'Brien*.

6.     Therefore, this Court should grant the Motion and revise in part the Termination Fee Order to revoke approval of the Termination Fee in these circumstances and disallow any claim (whether administrative expense or otherwise) by NextEra to the Termination Fee in these Chapter 11 cases.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, the Amended Order of Reference from the United States District Court for the District of Delaware dated February 29, 2014, and the express terms of the Termination Fee Order, *id.* ¶ 10.

8.      The Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Pursuant to Local Rule 9013-1(f), Elliott consents to entry of a final order with respect to the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.      Venue with respect to the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.      The bases for the relief requested in the Motion are Bankruptcy Code §§ 105(a) and 363, Rule 9024 of the Federal Rules of Bankruptcy Procedure, and this Court's inherent power to revise any interlocutory order it has issued.

## RELIEF REQUESTED

11.      Elliott requests that this Court reconsider the Termination Fee Order to the limited extent that it authorized the Debtors to pay the Termination Fee when no PUCT approval was obtained for NextEra's proposed purchase of the Debtors' 80 percent equity stake in Oncor (the "NextEra Transaction").

## BACKGROUND

### *The NextEra Merger Agreement and Termination Fee Approval*

12.      In July 2016, after three months of negotiations with three interested parties, the Debtors entered into the Merger Agreement with NextEra and sought its approval by this Court. The Merger Agreement contained a broad "break fee" provision that allegedly entitled NextEra to $275 million in cash even if the PUCT rejected the Merger Agreement. That Termination Fee, which was originally set at $110 million, increased by $165 million in the last hours of negotiating the Merger Agreement, allegedly in exchange for NextEra's agreement to drop its

request for a "matching right," to increase the cash consideration being offered to the Debtors' estates, and to assume certain asbestos liabilities. *See* Sept. 19, 2016 Hearing Transcript (Dkt. No. 9606) ("Hr'g Tr."), Exhibit A to the *Declaration of Erin R. Fay Filed in Connection with the Elliott Funds' Motion to Reconsider In Part the September 19, 2016 Order* [Dkt. No. 9584] Approving the NextEra Termination Fee (the "Fay Decl."), dated July 29, 2017, at 21–28.

13.     On August 3, 2016, the Debtors moved this Court for an order authorizing entry into the Merger Agreement (the "Sale Motion").   (Dkt. Nos. 9190-92, Fay Decl. Exs. B-D). Several creditors objected to the Sale Motion on August 25, 2016, including Fidelity Management & Research Company ("Fidelity"); the Estate of George Fenicle, David William Fahy, and John H. Jones (the "Asbestos Objectors"); American Stock Transfer & Trust Company, LLC, as successor trustee to The Bank of New York Mellon Trust Company, N.A. (in such capacity, the "EFH Indenture Trustee"); and Contrarian, which joined in the briefs of the EFH Indenture Trustee.  (Dkt. Nos. 9397-99 & 9402, Fay Decl. Exs. E-H).  None of these objections nor the Debtors' reply (Dkt. Nos. 9536-37, Fay Decl. Exs. I-J) focused the Court on a critical fact: the Merger Agreement did not set a date by which PUCT approval had to be obtained. Consequently, no party alerted the Court to what is now alleged: that *if* the PUCT did not approve the NextEra Transaction, the Debtors could eventually be required to terminate the Merger Agreement and trigger the Termination Fee unless NextEra terminated first of its own volition.

14.     By the time of the hearing on September 19, 2016, all of the objecting creditors, except the Asbestos Objectors, had withdrawn their objections.  Although the Asbestos Objectors pressed their objection to the Termination Fee, they focused primarily on the argument that the Termination Fee violated due process requirements.  *See* Fay Decl. Ex. A, Hr'g Tr. at 111:7–13,

Case 14-10979-CSS   Doc 11736   Filed 07/29/17   Page 7 of 32

114:4–116:4.  The Asbestos Objectors also objected to the Termination Fee under *O'Brien* but did not argue that the fee was impermissible because it could be payable when the Debtors had received no actual benefit.  *Id.* at 111:21–114:3.

15.     The testimony at the September 19 hearing focused on the reasonableness of the Termination Fee, stating that the size of the fee was "market" in the witnesses' view.  The witnesses downplayed the circumstances in which the Termination Fee would be triggered, with the Debtors' investment banker emphasizing that any fee would be paid upon EFH entering into "another transaction."[1]  *See id.* at 76:12–17 (affirmation by Debtors' banker that the termination fee will be paid "in the unlikely event that the deal isn't consummated and EFH enters into another transaction"); *see also id.* at 28:9–11 (proffer of EFH Treasurer Anthony Horton expressing his "confiden[ce] that the proposed transaction with NextEra will close and belie[f that] there's a low possibility that the termination fee will be triggered").  No mention was made of any instance when the Termination Fee could be triggered in the absence of a higher or better alternative transaction.

16.     The Debtors, as the moving party, never stated that, should the PUCT not approve the NextEra Transaction, NextEra nonetheless could claim the Termination Fee unless NextEra terminated the Merger Agreement of its own accord.  When this Court inquired directly of Debtors' counsel, Debtors' counsel was unclear on the issue, in the following colloquy:

> THE COURT:     I actually have a question. . . .  And this goes to when the break-up fee is payable in the event there is a regulatory problem.
>                 . . .

---

[1] Although the Court was apparently concerned with the situation that has actually occurred, upon inquiry, the Court's concern may not have been fully addressed.  *See* Fay Decl. Ex. A, Hr'g Tr. at 77:25-78:23; *see also id.* at 82:6–84:10 (discussed *infra* at Paragraph 16).

| THE COURT: | So, I read [Sections 8.5(b) and 8.2(a)] to be is – and maybe – is this your understanding that the plan gets confirmed, they go to the PUCT, the PUCT shuts it down, and NextEra – or it sets terms on it that NextEra doesn't like, and NextEra terminates, that the break-up fee is not payable? |
| | . . . |
| MR. HUSNICK: | . . . [Y]ou're 100 percent right about if the PUCT denies approval. |
| | . . . |
| THE COURT: | So if they simply disapprove and the parent – and NextEra walks, no break-up fee? |
| MR. HUSNICK: | Correct.[2] |

The initial response stated there would be no break-up fee if "NextEra walks"—but in no way disclosed that if NextEra *did not* walk after a PUCT denial, the Termination Fee could be payable when the Debtors were forced to terminate. Shortly after that exchange, counsel for the Debtors then made the following statement to the Court to "clarify" the earlier statements:

| MR: HUSNICK: | Your Honor, the second thing I wanted to clarify was just the break fee. I think we are on the same page now about when that gets paid, but just to cover it one more time, it's an incredibly detailed provision. Suffice to say *there's no break-up fee if the PUC* [sic] *just denies – outright denies approval.*[3] |

17.    After hearing closing statements, the Court overruled the remaining objection and approved the Merger Agreement, including the Termination Fee. Fay Decl. Ex. A, Hr'g Tr. at 119-24. While noting that the Termination Fee was "large," the Court found it "an appropriate number for a case of this size." *Id.* at 121:4–19. It also found that the amount was "supported by the market" and that the evidence indicated that the fee was "necessary to induce NextEra to make a bid." *Id.* Importantly, the Court had received clear guidance from Debtors' counsel that the Termination Fee was simply not payable if the PUCT denied approval of the NextEra merger.

---

[2] Fay Decl. Ex. A, Hr'g Tr. at 82:6–84:10.

[3] Fay Decl. Ex. A. Hr'g Tr. at 90:10–15 (emphasis added).

18.     Following the hearing, the Court entered the Termination Fee Order.  (Dkt. No. 9584, Fay Decl. Ex. K).  The Termination Fee Order did not include a finding regarding the actual benefit to the Debtors' estates from the imposition of a $275 million Termination Fee. The Court did not limit or preclude assertion of the Termination Fee by NextEra if the PUCT denied the change-in-control application submitted by NextEra.  It is reasonable to infer that the failure to address the alleged defect in the Termination Fee structure was prompted by the foregoing statements to this Court by Debtors' counsel.

***The PUCT Expresses Concern over the Merger Agreement and the Termination Fee***

19.     On September 22, 2016, three days after the Termination Fee Order was entered, the PUCT held a hearing at which the Commissioners expressed concerns regarding the Debtors' potential liability for the Termination Fee and the position in which it placed the Commissioners:

COMM:          [T]his merger agreement does something much more, and that is it appears to be an effort to really tie the Commission's hands in the proceeding.

               What they propose is that . . . if I read [the Merger Agreement] correctly, if the Commission rejects the transaction in its entirety, is not in the public interest subject to some caveats, there's no termination fee.

               If, on the other hand, the Commission purports to approve it but with what they call "burdens of condition" . . . they can walk and get paid $275 million.  Now that's an extraordinary requirement.[4]

20.     To Commissioner Anderson, the Termination Fee would be paid if the PUCT imposed "burdensome conditions," not if the PUCT rejected the application.  So, it really was an "improper attempt" to constrain the PUCT in the exercise of its statutory duties under Texas law,

---

[4] Sept. 22, 2016 PUCT Hr'g Tr. ("PUCT Sept. 22 Hr'g Tr."), Fay Decl. Ex. L, at 88–89 (comments of Commissioner Anderson).

Fay Decl. Ex. L, PUCT Sept. 22 Hr'g Tr. at 89:22–25, a view seemingly shared by
Commissioner Nelson*, id.* at 94:23–95:4.

21.     Following Commissioner Anderson's remarks, on September 25, counsel for the
Debtors and NextEra submitted a joint letter to the Court seeking to clarify when the
Termination Fee would be paid (the "September 25 Letter") (Dkt. No. 9655, Fay Decl. Ex. M).
Since this letter was composed after the Termination Fee Order, it was not part of the record
supporting the order's entry.  The September 25 Letter starts by stating that NextEra would not
receive the Termination Fee if NextEra terminated the Merger Agreement because ***"the
Commission either approves the merger agreement with 'burdensome conditions' (as defined
in the merger agreement) or does not approve the merger agreement transaction."***  *See*
September 25 Letter (emphasis added)

22.     After adding a paragraph to clarify that representation, the September 25 Letter
then stated:

> In other words, the $275 million termination fee *is triggered* if EFH and/or EFIH
> terminate the merger agreement as a consequence of the Commission either not
> approving the merger agreement transaction or approving the merger transaction with the
> imposition of a burdensome condition.

And the next two sentences seek to assure the Court that the payment of the Termination Fee is
unlikely because:

> In order for EFH and/or EFIH to pursue an alternative transaction, EFH and EFIH believe
> they would only terminate in such a situation if they had an alternative proposal to pursue.
> The termination fee is not triggered if, *under the same circumstances*, NextEra Energy
> terminates the merger agreement instead of EFH and/or EFIH.[5]

23.     The September 25 Letter suggests that the Termination Fee would be triggered
only if the Debtors opted to "pursue" an "alternative proposal."  There is, however, no definition

---

[5] *See* Fay Decl. Ex. M, September 25 Letter (emphasis added).

of "alternative proposal" in the Merger Agreement. Nor is there a fixed definition for "alternative transaction," which the Merger Agreement simply describes as any transaction "(including any transaction or proceeding that permits the E-Side Debtors that are the direct or indirect owners of Oncor Holdings to emerge from the Chapter 11 Cases) ***pursuant*** to which neither [NextEra] nor any of its Affiliates will obtain direct or indirect ownership of 100% of Oncor Holdings and Oncor Holdings' approximately 80% equity interest in Oncor." *See* Merger Agreement, Fay Decl. Ex. N, § 8.5(b) (emphasis added). But the payment of the Termination Fee did not stop with transactions that the Debtors would ***"pursue"*** to emerge from their Chapter 11 cases because the Termination Fee was also payable in a Chapter 7 liquidation or a liquidating Chapter 11 plan for EFIH. *See id.* §§ 8.3(d), 8.4(g), 8.5(b).

24.     At the September 26, 2016 Bankruptcy Court hearing, the Court recognized the "unusual and troubling" pressure that the Termination Fee placed on both the PUCT and the Court. Sept. 16, 2016 Hearing Transcript (Dkt. No. 9693) ("Sept. 26 Hr'g Tr."), Fay Decl. Ex. O, at 12:20-13:8. But the Court apparently took comfort in the clarification provided by the September 25 Letter:

> Late last evening, however, EFH and NextEra sent a joint letter to the Court regarding the termination fee. In that letter the parties clarified their position with regard to the termination fee. More specifically, the parties state that it is their view that NextEra is not entitled to a termination fee under the merger agreement if NextEra terminates the merger agreement because the PUCT either approves the merger agreement transaction with burdensome conditions or does not approve the merger agreement transaction.
>
> In addition, the parties clarified that in any event, NextEra will not seek to collect any portion of the termination fee contemplated by the merger agreement in the event NextEra terminates the merger agreement and the circumstances just described by the Court and more specifically detailed in the letter.[6]

---

[6] Fay Decl. Ex. O, Sept. 26 Hr'g Tr. at 13:9–24.

25.     Unfortunately, no one brought to the Court's attention that NextEra would never be **required** to terminate and could simply wait for mounting financial pressures to force the Debtors to do so instead.

***The PUCT Process and NextEra's Efforts to Extort Value from Its Delay***

26.     On October 31, 2016, NextEra and Oncor submitted their joint change of control application for the PUCT's approval ("Joint Application").  The Joint Application asked that the PUCT drop two key features of a "ring-fence" the regulator had erected around Oncor in connection with the 2007 leveraged buyout:  first, the requirement that Oncor maintain an independent Board of Directors; and second, certain minority shareholders' ability to veto dividends.  NextEra was unwilling to concede the governance terms, going so far as to call them "deal killers."

27.     On March 30, 2017, the PUCT held an open meeting on the NextEra Transaction. During the meeting, the Commissioners expressed significant concerns about the transaction's terms and its impact on the public interest.   As Commissioner Anderson explained in a memorandum he filed the same day,

> From the earliest contacts, ***well before the sale merger transfer application was filed***, NextEra's representatives have been very clear and consistent about the conditions that they could not accept and the reasons why those conditions were unacceptable.  As the Chairman noted perceptively toward the end of the Hearing on the Merits, among the core issues in this case is whether "our deal[-]killers are [NextEra's] deal-killers."  At least for this Commissioner, I fear that they do indeed correlate negatively.[7]

28.     Knowing full well at that point that the PUCT would deny the Joint Application if it did not alter the "deal killer" conditions, NextEra began seeking financial concessions from creditors using the threat of the Termination Fee as leverage.  On April 5, 2017, NextEra met

---

[7] *See* Mem. from Commissioner Kenneth W. Anderson, Jr. on Open Meeting of Mar. 30, 2017 (PUCT Dkt. No. 46238), Fay Decl. Ex. P, at 2 (emphasis added).

11

with certain large holders of the Debtors' institutional debt in New York.  NextEra described for the creditors a strategy that NextEra hoped to use to circumvent the PUCT's "deal-killer" conditions.  But NextEra would attempt that strategy only if the debt holders, including Elliott, committed to contribute $500 million to the modified transaction.  It quickly became apparent that the meeting's real purpose was to force the debt holders into a Hobson's choice:  yield to NextEra's financial demands of at least $500 million or risk triggering the $275 million Termination Fee.  NextEra's representative expressed confidence that the Merger Agreement gave it tremendous leverage.  As the representative made clear, the payment of the Termination Fee was "sacrosanct."  NextEra would never terminate the Merger Agreement and would take whatever steps were necessary to keep the deal "alive" until the Debtors were sufficiently fatigued that they decided to pay the Termination Fee to escape. The creditors did not yield.  *See* Declaration of Jeff Rosenbaum Filed in Support of the Elliott Funds' Motion to Reconsider In Part the September 19, 2016 Order [Dkt. No. 9584] Approving the NextEra Termination Fee, dated July 29, 2017.

29.     On April 13, 2017, the PUCT denied the Joint Application, predictably citing, among other things, the impasse between the PUCT and NextEra over the critical "deal-killer" terms, as well as a number of other fundamental defects in the Joint Application.[8]  On May 8, 2017, NextEra filed a rehearing request without Oncor joining and simply rearguing the same contentions the PUCT had rejected after months of debate.[9]  The deadline for a decision was set at June 7, 2017, but NextEra sought to prolong the process, requesting an extension to "the

---

[8] Notice of Order Entered by the Pub. Util. Comm'n of Tex. Related to the Change of Control Appl. of Oncor, *In re Energy Future Holdings Corp.*, Case No. 14-10979-CSS (Bankr. D. Del. Apr. 13, 2017) (Dkt. No. 11152) ("April 13 Order"), Fay Decl. Ex. Q.

[9] NextEra Energy, Inc.'s Mot. for Reh'g Filed Before the Pub. Util. Comm'n of Tex., *In re Energy Future Holdings Corp.*, Case No. 17-50479-CSS (Bankr. D. Del. May 11, 2017) (Dkt. Nos. 6-7) ("Rehearing Request"), Fay Decl. Ex. R.

maximum extent allowed by law"—effectively July 22, 2017.  The PUCT denied that request
and again rejected the Joint Application on June 7, 2017 for the same reasons cited in its April 13
decision.[10]  NextEra promptly filed a second rehearing request, again refusing to budge on the
"deal-killer" conditions.  The PUCT again rejected NextEra's rehearing request, issuing a terse,
one-sentence order on June 29, 2017.[11]

30.    With the deal now done, NextEra still took no action to terminate the Merger
Agreement.  Indeed, it was clear that NextEra would appeal the PUCT's decision to all levels of
review, leaving the Debtors no choice but to terminate the Merger Agreement and risk triggering
the Termination Fee or else incur months or years of continued interest and fee obligations.

***The Debtors Terminate the NextEra Merger and Join Hands with Berkshire***

31.    In May 2017, with the NextEra Transaction effectively dead, the Debtors began
negotiations with Elliott regarding a "backup plan."  These negotiations came after Elliott filed
an adversary complaint that sought a declaration that Elliott was not bound by the "PIK PSA"
and was free to commence discussion with other creditors and potential financing sources
regarding an alternative restructuring.  Elliott's discussions with the Debtors were progressing on
a consensual creditor-led reorganization plan that valued the Debtors' interest in Oncor at $9.3
billion; however, late on July 6, 2017, Elliott was advised that the Debtors had chosen to proceed
with a sale transaction with Berkshire Hathaway Energy Corporation ("BHE").  Shortly
thereafter, the Debtors terminated the Merger Agreement and entered into a merger agreement

---

[10] Notice of Order Entered by the Pub. Util. Comm'n of Tex. in the Admin. Proceeding Related
to the Change of Control Appl. of Oncor Elec. Delivery Co., *In re Energy Future Holdings Corp.*,
Case No. 14-10979-CSS (Bankr. D. Del June 7, 2017) (Dkt. No. 11325) ("June 7 Order"), Fay
Decl. Ex. S.

[11] Notice of Order Entered by the Pub. Util. Comm'n of Tex. in the Admin. Proceeding Related
to Change of Control Appl. of Oncor Elec. Delivery Co., *In re Energy Future Holdings Corp.*,
Case No. 14-10979-CSS (Bankr. D. Del June 29, 2017) (Dkt. No. 11398) ("June 29 Order"), Fay
Decl. Ex. T.

with BHE (the "<u>Berkshire Merger Agreement</u>").   The Debtors terminated the NextEra Merger Agreement based on both NextEra's failure to obtain regulatory approval and breach of the Merger Agreement, while reserving their rights to assert other grounds for terminating.[12]

32.     The Berkshire Merger Agreement provides ***substantially less*** total consideration than the NextEra Merger Agreement, and substantially less than the bid Berkshire submitted a year ago.   The Berkshire Merger Agreement includes a $270 million termination fee (the "<u>Berkshire Termination Fee</u>").   Although the payment of the Berkshire Termination Fee is not expressly conditioned on PUCT approval, it is subject to a number of other conditions.   The hearing on approval of the Berkshire Merger Agreement and Berkshire Termination Fee is scheduled for August 21, 2017.

## BASIS FOR RELIEF REQUESTED

33.     As an interlocutory order, the Termination Fee Order is subject to review and modification by this Court to the extent necessary to avoid an unjust result. "'The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence.'"   *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Because the Termination Fee Order approved the payment of a $275 million Termination Fee to NextEra in circumstances when it provided ***no actual benefit*** to the Debtors' estates and made that determination on an incomplete and inaccurate factual record, the approval was erroneous as a matter of law and fact.   The Court should thus revise the Termination Fee Order to disallow the payment of the Termination Fee consonant with justice and controlling Third Circuit precedent.

---

[12] *See* Notice of Filing of Termination Ltrs. (July 7, 2017), *In re Energy Future Holdings Corp.*, Case No. 14-10979-CSS (Bankr. D. Del. July 7, 2017) (Dkt. No. 11424), Fay Decl. Ex. U (terminating Merger Agreement pursuant to Sections 8.2(a) and 8.3, and reserving rights to assert other grounds).

## I.    THE TERMINATION FEE ORDER IS AN INTERLOCUTORY ORDER THAT MAY BE RECONSIDERED AND MODIFIED BY THIS COURT.

34.     The Termination Fee Order is an interlocutory order.  Indeed, the Debtors sought to dismiss the Asbestos Objectors' appeal of the Termination Fee Order because issues remained that were "unsettled and subject to later determination."  *See* Appellee's Motion to Dismiss Appeal ¶ 13, 20–21, *In re Energy Future Holdings Corp.*, No. 16-cv-888-RGA (D. Del. Dec. 22, 2016) (Dkt. No. 18), Fay Decl. Ex. V; Appellees' Reply in Support of Motion to Dismiss Appeal ¶ 10 (Feb. 3, 2017) (Dkt. No. 21), Fay Decl. Ex. W.

35.     In determining whether an order is final or interlocutory, the Third Circuit takes a flexible, "pragmatic" approach.  *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 97 (3d Cir. 1988); *In re Reliant Energy Channelview, LP*, 397 B.R. 697, 699 (D. Del. 2008).  While "no specific combination of factors is dispositive on the question of finality," the *Reliant* court considered four factors relevant here. [13]  Application of those factors shows the Termination Fee Order to be an interlocutory order.

36.     ***First,*** as the Debtors argued to the District Court in the appeal from the Termination Fee Order taken by the Asbestos Objectors, the Termination Fee Order does not resolve all issues relating to the Termination Fee.  *See* Fay Decl. Ex. V, Appellee's Motion to Dismiss Appeal ¶ 13, 20–21, *In re Energy Future Holdings Corp.*, No. 16-cv-888-RGA (D. Del. Dec. 22, 2016) (Dkt No. 18); Fay Decl. Ex. W, Appellees' Reply in Support of Motion to Dismiss Appeal ¶ 10 (Feb. 3, 2017) (Dkt. No. 21).  That order expressly requires this Court to

---

[13] This Court "should consider, among other things: (1) whether the order leaves additional work to be done by the Bankruptcy Court, (2) whether the order implicates purely legal issues, (3) the impact of the Bankruptcy Court's order upon the assets of the debtor's estate, (4) the necessity for further fact-finding on remand to the Bankruptcy Court, (5) the preclusive effect of the District Court's decision on the merits of subsequent litigation, and (6) the furtherance of judicial economy."  *Reliant*, 397 B.R. at 699.  The fourth and fifth *Reliant* factors play no role when a Bankruptcy Court reviews its own order.

(i) approve an agreed-upon allocation of the Termination Fee between the estates, (ii) determine how the Termination Fee will be allocated, and/or (iii) rule on the appropriate allocation of the Termination Fee should the parties request it. *See* Fay Decl. Ex. K, Order ¶ 4.

37.    Additionally, the Termination Fee is only to be paid when it becomes "due and payable pursuant to the terms and conditions of the Merger Agreement." *Id.* ¶ 4.  As the Debtors' Notice of Termination makes clear, there is an issue as to whether NextEra breached the Merger Agreement and, thus, whether it is entitled to the Termination Fee at all.  The Court expressly retained jurisdiction for exactly this dispute. *Id.* ¶ 10.

38.    ***Second,*** it is also clear that the Termination Fee Order implicates both legal and factual issues.  The Termination Fee was not payable at the time the Termination Fee Order was entered.  It is only payable "to the extent it becomes due and payable pursuant to the terms and conditions of the Merger Agreement."  But the Debtors have stated they believe NextEra did not fulfill its obligations under the Merger Agreement, and Elliott contends the record on which the Court approved the Termination Fee was inadequate and flawed.  *See, e.g.*, *In re Tribune Co.*, 464 B.R. 208, 215 (Bankr. D. Del. 2011) ("[R]econsideration is appropriate when the Court has overlooked facts that might reasonably have altered or impacted the decision.").  Thus, both legal and factual issues require further inquiry.

39.    ***Third***, while the Termination Fee clearly has a negative impact on the assets of the Debtors' estates, the Termination Fee—calculated by the Debtors at 1.47 percent of TEV[14]— is not so large a proportion of the estate as to make the Termination Fee Order final under

---

[14] *See* Fay Decl. Ex. A, Hr'g Tr. at 121:8–9 ("[The] percentage basis [is] at, I believe, approximately 1.47 percent of TEV as we sit here today based on the most recent changes to the deal.").

relevant precedent. *See Reliant*, 397 B.R. at 700 (concluding that when the termination fee amounted to less than 3% of the debtors' estate, the order approving the fee was not final).

40.     **Fourth**, judicial economy and the avoidance of piecemeal litigation favor finding that the Termination Fee Order is interlocutory. *See, e.g.*, *In re New Century TRS Holdings, Inc.*, 407 B.R. 558, 571 (Bankr. D. Del. 2009) (citing "the need to protect creditors and reorganizing debtors from piecemeal litigation" and supporting case law). Significant litigation regarding allocation will follow if the Termination Fee is determined to be payable. Allocation litigation would greatly impact plan confirmation proceedings by affecting the Debtors' ability to demonstrate that administrative expenses will be paid and that the "best interests test" is satisfied. Together, the relevant factors all favor a finding that the Termination Fee Order is interlocutory.

## II.     THIS COURT SHOULD RECONSIDER ITS ORDER IN PART BECAUSE, IF THE FULL CONTOURS OF THE TERMINATION FEE HAD BEEN KNOWN AT THE HEARING, THE COURT WOULD NOT HAVE FOUND THE FEE QUALIFIED AS AN ADMINISTRATIVE EXPENSE.

41.     "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe*, 176 F.3d at 677. Here, the Court should reconsider the Order because it was based on a materially incomplete and inaccurate record. NextEra, the Debtors, and their counsel whitewashed key aspects of the Termination Fee provision, *see infra* Part II.A, and did not raise to the Court's attention the import of its terms as now alleged, *see infra* Part II.B. The Termination Fee Order was thus based on a mistake of material fact. Had the Court known the terms of the Termination Fee as now alleged, Elliott believes this Court would not have approved it on the circumstances of this case, because to do so would be legal error under *O'Brien*. *See infra* Part II.C.

A.   **The Debtors Obscured That NextEra Could Collect The Termination Fee Simply By Forcing The Debtors To Terminate Following A PUCT Denial.**

42.     The Debtors had the evidentiary burden to establish the Termination Fee was permissible under law.   To the extent NextEra's allegations regarding the provisions of the Termination Fee were accurate, the Debtors have failed to meet that burden by failing to candidly explain the material terms of the Fee.   In fact, the Debtors and their counsel omitted key facts and misstated others.   The Court's Order was thus predicated on a materially incomplete and inaccurate record or was erroneous as a matter of fact.   *Cf. McWilliams v. Cmty. Educ. Centers.*, No. C.A. No. 14-4783, 2015 WL 12843826, *7 (E.D. Pa. Nov. 13, 2015) (granting motion for reconsideration where post-order briefing raised undisputed facts "previously downplayed or not mentioned" by the parties); *see also In re United Artists Theatre Co.*, No. 00-3514 (PJW), 2004 WL 1906162 (Bankr. D. Del. Aug. 25, 2004) (granting motion for reconsideration where new evidence presented was directly contrary to counsel's representations at oral argument).

43.     No one at the hearing—including the Debtors as movants—made clear to the Court what would happen if the PUCT rejected the transaction and both NextEra and the Debtors were in a position to terminate.   No one stated that NextEra would receive the Termination Fee should the PUCT not approve the NextEra Transaction unless NextEra terminated the Merger Agreement on its own accord.   No one advised the Court that the Merger Agreement would not simply expire on its own terms. In fact, Debtors' counsel ***affirmatively stated*** to the Court that "there's no break-up fee if the PUC [*sic*] just denies – outright denies approval."   Ex. Fay Decl. A, Hr'g Tr. at 90:14–15.   These omissions and counsel's statements presented the impression that if the PUCT denied the Joint Application, there simply would be no fee paid.

18

44.     To be sure, NextEra and the Debtors tried to "clarify" the record a week later through the September 25 Letter.  But they cannot defend the payment of the Termination Fee based on the joint letter, nor the Court's statements at the hearing on September 26, 2016.  As of September 19, the record was closed, and the September 25 Letter could not retroactively insulate the Termination Fee Order from legal infirmity.

45.     Even more importantly, the September 25 Letter still did not address the perverse incentives the Merger Agreement gave NextEra (*see infra* Part II.B) and downplayed the fact that – to the extent that NextEra's interpretation of the Termination Fee were correct – the Debtors were likely to have to pay the Termination Fee as a practical matter.   The letter emphasized what happened if NextEra terminated the Merger Agreement:  notably, the parties "would like to make clear that, in any event, NextEra will not seek to collect any portion of the Termination Fee . . . in the event *it* terminates the agreement" following PUCT denial.[15]  The Court appears to have found comfort in exactly this portion of the September 25 Letter when the Court said the letter addressed certain "unusual and troubling" aspects of the Termination Fee.[16]  The parties' September 25 Letter purported to alleviate the PUCT's concerns that the Termination Fee put "pressure" on the Court and the PUCT "to approve a provision that would otherwise be unacceptable in order to avoid blowing up the transaction."  Ex. Fay Decl. A, Hr'g Tr. at 13:5–8.  But if the Court did draw any comfort, such comfort may have rested on the assumption that NextEra would terminate the Merger Agreement if the transaction were not approved.  Elliott submits that any such presumption, based on the record and September 25 Letter, was simply false.

---

[15] Fay Decl. Ex. M, September 25 Letter (emphasis added).

[16] *See* Fay Decl. Ex. A, Hr'g Tr. at 13:9–24, quoted *supra* at ¶ 24.

46.     The September 25 Letter also minimized the risk of the Debtors paying the

Termination Fee.  It acknowledged that the Debtors might have to pay the fee if *they* terminated

after PUCT denial, but then went on to assure the Court that such an event was unlikely:

> In order for EFH and/or EFIH to pursue an alternative transaction, EFH and EFIH believe
> they would only terminate in such a situation if they had an alternative proposal to pursue.
> The termination fee is not triggered if, *under the same circumstances*, NextEra Energy
> terminates the merger agreement instead of EFH and/or EFIH.[17]

47.     As the Debtors and NextEra knew at the time, there was no definition of

"alternative proposal" and no fixed definition of "alternative transaction" in the Merger

Agreement.   And given the accrual of interest, fees, and costs, the Debtors would face a

Hobson's choice:  terminate the Merger Agreement or become administratively insolvent and

convert to Chapter 7.  But even in Chapter 7, the Termination Fee was payable.  *See* Fay Decl.

Ex. N, Merger Agreement §§ 8.3(d), 8.4(g), 8.5(b).  The parties never brought this dynamic to

the Court's attention—even as they sought to assure the Court that the Termination Fee was

unlikely to ever be paid.

**B.     The Termination Provisions In The Merger Agreement Created Perverse Incentives For NextEra To Exploit Its Terms.**

48.     The Merger Agreement gave both sides a right to terminate if the PUCT failed to

approve the NextEra Transaction.  *See* Fay Decl. Ex. N, Merger Agreement § 8.2.  If NextEra

used that right, it forfeited its claim to the Termination Fee.  But if the Debtors used that right,

NextEra could still claim the Termination Fee.  Of course, NextEra had absolutely no incentive

to terminate the Merger Agreement, since the Debtors would be forced to terminate in order to

exit from bankruptcy.

---

[17] Fay Decl. Ex. M, September 25 Letter (emphasis added).

49.     The Merger Agreement had no outside date by which it would terminate on its own terms and without financial consequences.  NextEra was given the right to put the Debtors between a rock and a hard place—pay $275 million for a deal from which the Debtors could never benefit, or stay trapped in bankruptcy.

### C.     The Termination Fee As Structured Is Not Properly Allowable Under *O'Brien* As An Administrative Expense.

50.     It appears that the Court approved the Termination Fee based on an unstated, reasonable, but incorrect assumption:  NextEra could and would terminate the Merger Agreement if PUCT approval were not obtained.  Had the relevant provisions been accurately, fully, and timely raised with the Court, Elliott submits that this Court would not and could not, as a matter of law, have approved the Termination Fee as an administrative expense.  *See In re Tribune Co.*, 464 B.R. at 215 ("[R]econsideration is appropriate when the Court has overlooked facts that might reasonably have altered or impacted the decision."); *cf. In re Sportsman's Warehouse, Inc.*, 457 B.R. 372, 397 (Bankr. D. Del. 2011) (allowing claim under Fed. R. Civ. P. 60(b) to proceed when, as alleged, a contract's complexity and ambiguity had obscured its consequences, and when the contract's true meaning would have changed the court's decision if known at the time).  There simply is no reading of *O'Brien* under which this Court could find that the Termination Fee was a ***necessary expense*** for the Debtors to obtain ***an actual benefit*** from entering into a merger agreement that ultimately could not consummated.

51.     The Termination Fee exposed the Debtors and creditors to an unjust result that this Court cannot let stand.  *See In re Athanassious*, 418 F. App'x 91, 95 (3d Cir. 2011) (noting that a trial court "should" reconsider an issue "whenever it appears that a previous ruling . . . might lead to an unjust result") (citation omitted); *see also United States v. Jerry*, 487 F.2d 600,

605 (3d Cir. 1973) (recognizing courts' power to reconsider interlocutory orders "when it is consonant with justice to do so").

52.     The Third Circuit permits the payment of termination fees out of an estate only in certain narrow circumstances prescribed by Bankruptcy Code Section 503(b).  *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 532 (3d Cir. 1999).  To be allowed as an administrative expense, the Termination Fee must be one of the "***actual, necessary costs and expenses of preserving the estate.***"  11 U.S.C. § 503(b)(1)(A) (emphasis added).  In general, administrative expenses are narrow in scope and allowed only to the extent that the expense "provided an actual benefit to the estate" and was "necessary to preserve the value of the estate assets."  *In re Bernard Techs., Inc.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006); *see In re Reliant Energy Channelview, LP*, 403 B.R. 308, 311 (Bankr. D. Del. 2009) (emphasizing that it is not enough that a termination fee provide "some benefit" to the estate; it must be "actually necessary to preserve the value of the estate").  And with respect to certain administrative expenses, hindsight is not prohibited.  *See In re RS Legacy Corp.*, No. 15-10197 (BLS), 2016 WL 1084400, at *3 (Bankr. D. Del. Mar. 17, 2016) (noting that under Section 503(b)(4), administrative expense claims for professional services are "analyzed in hindsight with particular scrutiny upon the actual benefits provided to the entire bankruptcy case").

53.     Under *O'Brien*, the standard is no different, but the timing and circumstances make the Court's approval far more challenging.  The Court is required to determine whether the movant has carried the "heavy burden" of demonstrating that a post-petition transaction "***provided an actual benefit***" to the debtor's estate, justifying the ***future payment*** of a termination fee as one of the ***necessary costs or expenses of the estate***.  181 F.3d at 533 (quoting district court opinion).  For this reason, bankruptcy courts considering approval of termination

fees focus not only on whether the expense is necessary to induce a transaction, but also on the conditions that must be met to consummate the transaction (*e.g.,* financing, due diligence, regulatory approvals, etc.). The lack of conditions or the certainty of meeting them ensures that the termination fee, as distinct from mere expense reimbursement, provides a debtor's estate with an ***actual benefit.***

54.   The regular situation in which a termination fee provides an actual benefit consistent with *O'Brien* is when the fee induces a bid that results in higher competitive bidding for the debtor's asset. *See O'Brien*, 181 F.3d at 537; *In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) (explaining that a termination fee is permissible where it "induce[s] an initial bid"); *In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005) (similar). Moreover, even if an auction does not occur, a termination fee may be justified when it "increase[es] the likelihood that the price at which the debtor is sold will reflect its true worth." *O'Brien*, 181 F.3d at 537. By contrast, no actual benefit is provided when the stalking horse is not a catalyst for other bids. *See In re Beth Israel Hosp. Ass'n of Passaic*, No. 06-16186 (NLW), 2007 WL 2049881, at *13 (Bankr. D.N.J. July 12, 2007).

55.   Because Bankruptcy Code Section 503(b) and *O'Brien* required the Court to find **both** that the Termination Fee was not only a necessary expense **and** that it also provided an actual benefit, it was crucial that the Court fully appreciate the complex terms of the Merger Agreement and the events triggering the payment of the Termination Fee. The record of inquiries followed by repeated "clarifications" demonstrates that the Court may not have fully appreciated the scenario we have here—where the Termination Fee is triggered without the benefit of the NextEra deal. Since the Termination Fee structure presented as of September 19

opened the door to this odd result, any benefit from the Merger Agreement was **speculative, not actual,** and as hindsight has shown, never materialized.

56.     The events that have now unfolded—specifically the PUCT's rejection of the NextEra Transaction and NextEra's failure to terminate in response—are not circumstances under which payment is allowed by *O'Brien*.   First and foremost, even if the Termination Fee had induced NextEra to submit its bid, there is no evidence in the record that NextEra's bid fostered a competitive sale process.   *See O'Brien*, 181 F.3d at 536; *see also In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) (stressing that break-up fees are generally allowed where they "enhance" the bidding).   Indeed, as detailed above, Debtors advised the Court that the fee decreased the likelihood of competitive bids.   *See* Fay Decl. Ex. A, Sept. 26, 2016 Hr'g Tr. at 12:20–25.

57.     What was not shown, and could not be shown, at the September 19 hearing was that the Merger Agreement provided the Debtors with an actual benefit.   The value that was to come to the Debtors' estates was speculative and illusory, not actual.   The NextEra Transaction could not be closed, due in no part to the Debtors' fault.   The Debtors' termination of the Merger Agreement was not to pursue a higher or better offer but to proceed with a transaction that provides **substantially less in value** to the Debtors' estates.   Accordingly, had the Court fully understood the provisions that triggered the Termination Fee, it would not, and could not as a matter of law, have approved the Termination Fee under *O'Brien*.

## III.     RULE 60(B) WOULD PERMIT THIS COURT TO RELIEVE THE DEBTORS OF THEIR OBLIGATION TO PAY THE TERMINATION FEE EVEN IF THE TERMINATION FEE ORDER WERE FINAL

58.     Even if this Court were to find that the Termination Fee Order is a final order, this Court should revise the Termination Fee Order pursuant to Federal Rule of Civil Procedure 60(b), made applicable to this Court by Federal Rule of Bankruptcy Procedure 9024.

59.     Prior to issuing the Termination Fee Order, the Court did not have the benefit of key facts only revealed *after* this Court entered its Termination Fee Order.  This mistake of fact provides clear grounds for revision of the Termination Fee Order under Rule 60(b)(1).  For example, in *In re 310 Assocs.*, 346 F.3d 31 (2d Cir. 2003), the court affirmed the lower court order vacating a prior ruling under Rule 60(b)(1) for mistake of fact when the lower court had initially approved a termination fee, with the understanding it would encourage later bidders, only to later find out that there were already two engaged bidders interested at the time the termination fee was approved.  *Id.* at 34-36.  Similarly, at the September 26 hearing, this Court understandably assumed that NextEra would be the one to terminate if the PUCT denied approval.  No one informed the Court that the Merger Agreement created a perverse incentive for NextEra to engage in a high-stakes staring contest with the Debtors and simply wait them out. *See Sportsman's*, 457 B.R. at 397 (vacating Assumption Order following misunderstanding of consequences).  This Court should thus rescind the Termination Fee Order and relieve Debtors of the obligation to pay the unnecessary Termination Fee, which confers no benefit and, in fact, only harms the estates and the Debtors' creditors.

## CONCLUSION

60.     For the foregoing reasons, Elliott respectfully requests that the Court enter an

order in substantially the form attached to the Motion and granting such other relief as the Court

deems just and proper.

Wilmington, Delaware
Date: July 29, 2017

**BAYARD, P.A.**

*/s/ Erin R. Fay*
Scott D. Cousins (No. 3079)
Erin R. Fay (No. 5268)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
scousins@bayardlaw.com
efay@bayardlaw.com
emiller@bayardlaw.com

--and--

**ROPES & GRAY LLP**
Keith H. Wofford
Gregg M. Galardi
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: 212-596-9000
Facsimile:  212-596-9090
Keith.Wofford@ropesgray.com
Gregg.Galardi@ropesgray.com

*Counsel for Elliot Associates, L.P., Elliott International,*
*L.P., and the Liverpool Limited Partnership*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ) | |
| In re ) | Chapter 11 |
| ) | |
| ENERGY FUTURE ) | Case No. 14-10979 (CSS) |
| HOLDINGS CORP., *et al.*, ) | (Jointly Administered) |
| ) | |
| *Debtors*. ) | **Hearing Date**: Sept. 19, 2017 at 10:00 a.m. |
| ) | **Obj. Deadline**: August 25, 2017 at 4:00 p.m. |

## NOTICE OF THE ELLIOTT FUNDS' MOTION TO RECONSIDER
## IN PART THE SEPTEMBER 19, 2016 ORDER APPROVING
## THE NEXTERA TERMINATION FEE

PLEASE TAKE NOTICE that on July 29, 2017, Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott") filed with the United States Bankruptcy Court for the District of Delaware (the "Court") *The Elliott Funds' Motion to Reconsider In Part The September 19, 2016 Order Approving the NextEra Termination Fee* (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing on the Motion will be held on **September 19, 2017 at 10:00 a.m. (Eastern)** before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, at the Court, 824 Market Street, 5th Floor, Courtroom No. 6, Wilmington, Delaware 19801.

PLEASE TAKE FURTHER NOTICE that objections to the Motion or the relief requested therein must be filed on or before **August 25, 2017 at 4:00 p.m. (Eastern)** (the "Objection Deadline") with the Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801.  At the same time, you must serve a copy of the response upon the undersigned counsel to Elliott so as to be received on or before the Objection Deadline.

PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO PROPERLY FILE AND SERVE A RESPONSE ON OR BEFORE THE OBJECTION DEADLINE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: July 29, 2017
      Wilmington, DE

BAYARD, P.A.

*/s/ Erin R. Fay*
Scott D. Cousins (No. 3079)
Erin R. Fay (No. 5268)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
E-mail:scousins@bayardlaw.com
     efay@bayardlaw.com
     emiller@bayardlaw.com

--AND—

ROPES & GRAY LLP
Keith H. Wofford
Gregg M. Galardi
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: 212-596-9000
Facsimile:  212-596-9090
E-mail: Keith.Wofford@ropesgray.com
     Gregg.Galardi@ropesgray.com

ROPES & GRAY LLP
Andrew G. Devore
Prudential Tower
800 Boylston Street
Boston, MA  02199-3600
Telephone: 617-951-7000
Facsimile: 617-951-7050
E-mail: Andrew.Devore@ropesgray.com

*Counsel to the Elliott Funds*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | ) Chapter 11 |
|  | ) |
| ENERGY FUTURE | ) Case No. 14-10979 (CSS) |
| HOLDINGS CORP., *et al.*, | ) |
|  | ) (Jointly Administered) |
| *Debtors*. | ) |
|  | ) Re: D.I. 9584, _____ |

**ORDER GRANTING THE ELLIOTT FUNDS' MOTION TO RECONSIDER
IN PART THE SEPTEMBER 19, 2016 ORDER [DKT. NO 9584]
APPROVING THE NEXTERA TERMINATION FEE**

Upon the motion (the "Motion") of the Elliott Funds[1] to reconsider in part the *Order Authorizing Entry Into Merger Agreement, Approving Termination Fee, and Entry Into and Performance Under Plan Support Agreement* (Dkt. No. 9584) (the "Termination Fee Order"); and the Court having found that it has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that proper, timely, adequate, and sufficient notice, including notice of the Motion and the relief requested therein, has been provided in accordance with the Bankruptcy Rules, the Local Rules of this Court, and/or by order of the Court and no other or further notice of the Motion is or shall be required; and the Court having reviewed the Motion and having heard arguments and testimony presented at the hearing before the Court (if any); and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having determined that the legal and factual

---

[1] All capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

bases, including new evidence not previously considered at the time the Termination Fee Order was entered, establish just cause for the relief granted herein; and any objections (if any) to the Motion having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing, it is hereby **ORDERED**:

1.      The Motion is **GRANTED**.

2.      Reconsideration of the Termination Fee Order is appropriate under the circumstances set forth in the Motion and as further described on the record at the hearing on the Motion.

3.      All objections to the Motion (if any) that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights included in such objections, are specifically overruled in all respects on the merits.

4.      The Termination Fee, to the extent it becomes due and payable pursuant to the terms and conditions of the Merger Agreement, is disallowed, and the EFH/EFIH Debtors are not authorized to pay the Termination Fee as a qualified administrative expense under 11 U.S.C. § 503(b) or otherwise.

5.      Accordingly, the Termination Fee Order (Dkt. No. 9584) is hereby amended to delete in its entirety the language at paragraph 4 of such order and to replace it with the following: [2]

---

[2] Paragraph 4 previously stated:

> The Termination Fee, upon the terms and conditions of the Merger Agreement, is approved, and the EFH/EFIH Debtors are authorized and directed to pay the Termination Fee as an allowed administrative expense to the extent it becomes due and payable pursuant to the terms and conditions of the Merger Agreement, at the time and in the manner provided for therein, without any further proceedings before, or order of, the Court; *provided, however,* that in the event that the Termination Fee becomes payable in accordance with section 8.5(b) of the Merger Agreement, the EFH Debtors, on the one hand, and the EFIH Debtors, on the other hand, either will agree on the allocation of the Termination Fee between their respective estates (and seek Bankruptcy Court approval of such allocation) or each estate reserves the right to request that the Bankruptcy Court

> The Termination Fee, upon the terms and conditions of the Merger Agreement, is disallowed, and the EFH/EFIH Debtors are not authorized to pay the Termination Fee as a qualified administrative expense or otherwise, to the extent it becomes due and payable pursuant to the terms and conditions of the Merger Agreement.

6.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(a), 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Order shall be effective and enforceable immediately upon entry.

7.    The EFH/EFIH Debtors are hereby authorized and empowered to take all actions necessary to implement the relief granted in this Order.

8.    The Court shall retain jurisdiction over any matter or disputes arising from or relating to the interpretation, implementation, or enforcement of this Order.

Dated: _____, 2017
    Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

---

determine the appropriate allocation of the Termination Fee between the EFH Debtors and the EFIH Debtors; *provided, further, however* that the Termination Fee shall be payable as provided in the Merger Agreement and both the EFH Debtors and the EFIH Debtors agree that any such payment of the Termination Fee, by either or both estates, shall be without prejudice to the rights of each estate to seek a subsequent Bankruptcy Court ruling regarding the appropriate allocation of the paid Termination Fee between the EFH Debtors and the EFIH Debtors.

{BAY:03092352v1}