# Exhibit M



Control Number: 47453



Item Number: 1

Addendum StartPage: 0

PUC DOCKET NO. **47453**    RECEIVED

2017 JUL 28  PM 2: 50

PUBLIC UTILITY COMMISSION

**JOINT REPORT AND APPLICATION** §
**OF TEXAS TRANSMISSION** §
**HOLDINGS CORPORATION AND** § **PUBLIC UTILITY COMMISSION**
**NEXTERA ENERGY, INC. FOR** §
**REGULATORY APPROVALS** § **OF TEXAS**
**PURSUANT TO PURA §§ 14.101,** §
**39.262, AND 39.915** §

## TABLE OF CONTENTS

| **Section** | **Page** |
|---|---|
| Joint Report and Application | 2 |
| Exhibit A – Application for Sale, Transfer, or Merger | 15 |
| Exhibit B – Proposed Direct and Newspaper Notice | 31 |
| Exhibit C – Proposed Protective Order | 32 |
| Direct Testimony of Mark Hickson | 50 |

PUC DOCKET NO. _____

| | | |
|---|---|---|
| **JOINT REPORT AND APPLICATION** | § | |
| **OF TEXAS TRANSMISSION** | § | |
| **HOLDINGS CORPORATION AND** | § | **PUBLIC UTILITY COMMISSION** |
| **NEXTERA ENERGY, INC. FOR** | § | |
| **REGULATORY APPROVALS** | § | **OF TEXAS** |
| **PURSUANT TO PURA §§ 14.101,** | § | |
| **39.262, AND 39.915** | § | |

### JOINT REPORT AND APPLICATION OF
### TEXAS TRANSMISSION HOLDINGS CORPORATION AND
### NEXTERA ENERGY, INC. FOR REGULATORY APPROVALS

TO THE HONORABLE PUBLIC UTILITY COMMISSION OF TEXAS:

Texas Transmission Holdings Corporation ("TTHC") and NextEra Energy, Inc. ("NextEra Energy") (collectively "Applicants") file this Joint Report and Application for Regulatory Approvals ("Application") pursuant to §§ 14.101, 39.262(l)-(m), and 39.915 of the Public Utility Regulatory Act ("PURA").[1] This Application involves NextEra Energy's proposed acquisition of the 19.75 percent minority interest in Oncor Electric Delivery Company LLC ("Oncor") that is indirectly held by TTHC (the "Proposed Transaction"). Applicants respectfully request that the Public Utility Commission of Texas ("Commission") issue an order to disclaim jurisdiction over the Proposed Transaction or, in the alternative, find that the Proposed Transaction is in the public interest and approved. In support of this Application and to assist the Commission with its review, Applicants are providing:

- the pre-filed, Direct Testimony of Mr. Mark Hickson;

- the Commission's Application for Sale, Transfer, or Merger form, which is completed and attached hereto as Exhibit A;

- a proposed form of Notice attached as Exhibit B; and

- a proposed Protective Order attached as Exhibit C.

---

[1] PURA, Tex. Util. Code Ann. §§ 11.001-66.016 (West 2016 & Supp. 2016).

## I.   **BACKGROUND AND INTRODUCTION**

Oncor is an electric utility that provides transmission and distribution service in Texas pursuant to PURA and the Commission's rules. In its current structure and ownership, Oncor is a Delaware limited liability company that is 80.03 percent owned by Oncor Electric Delivery Holdings Company LLC ("Oncor Holdings"), a Delaware limited liability company,[2] and 19.75 percent owned by Texas Transmission Investment LLC ("TTI"), which is wholly owned by TTHC.[3] The remaining interest in Oncor is 0.22 percent owned by Oncor Management Investment LLC.[4] The rights and obligations of the members of Oncor are set forth in the Second Amended and Restated Limited Liability Company Agreement of Oncor dated as of November 5, 2008 (the "Oncor LLC Agreement") and the Investor Rights Agreement dated as of November 5, 2008, by and among Oncor, Oncor Holdings, Energy Future Holdings Corp. ("EFH"), TTI and any other persons that may become a party thereto.

Upon approval and closing of the Proposed Transaction, TTI's 19.75 percent interest in Oncor will be indirectly owned by NextEra Energy. The Proposed Transaction does not involve EFH's approximately 80 percent indirect interest in Oncor. Additionally, the Proposed Transaction will not have any impact on Oncor's existing operations or existing ring-fence structure.

---

[2] Oncor Holdings is wholly owned by Energy Future Intermediate Holding Company LLC, which in turn is a wholly owned subsidiary of EFH. As the Commission is aware, on April 29, 2014, EFH and 70 of its affiliates excluding Oncor and Oncor Holdings (collectively, the "Debtors"), filed for Chapter 11 bankruptcy protection in bankruptcy court in Delaware. In re Energy Future Holdings Corp., et al., No. 14-10979 (CSS) (Bankr. D. Del.) (petition filed Apr. 29, 2014).
[3] TTI is wholly owned by TTHC, which is owned by Cheyne Walk Investment Pte Ltd (49.5 percent), BPC Health Corporation and Borealis Power Holdings Inc. (49.5 percent), and Hunt Strategic Utility Investment LLC (1 percent). TTHC's ownership interest is not impacted by EFH's bankruptcy filing.
[4] Oncor Management Investment LLC is an entity owned by certain members of the management and directors of Oncor.

## II.    JOINT APPLICANTS AND AFFECTED UTILITY

### A.    TTHC

TTHC is owned by Cheyne Walk Investment Pte Ltd (49.5 percent), BPC Health Corporation and Borealis Power Holdings Inc. (49.5 percent), and Hunt Strategic Utility Investment LLC (1 percent). TTHC's ownership interest is not impacted by EFH's bankruptcy filing. Pursuant to the Oncor LLC Agreement, TTI, a wholly owned subsidiary of TTHC, is entitled to designate two members of the Oncor Board of Directors. Under certain limited circumstances, the TTI directors have a veto right over the capital and operating budgets of Oncor, and may prevent Oncor from paying dividends to its members when the payment of dividends would not be in the best interests of Oncor. TTI's rights under the Oncor LLC Agreement are not impacted by EFH's bankruptcy filing.

### B.    NextEra Energy

NextEra Energy (NYSE: NEE) is a Fortune 200 company with consolidated 2016 revenues of approximately $16.2 billion, total market equity capitalization of approximately $68 billion, and total assets of approximately $90 billion. NextEra Energy has approximately 14,700 employees in 30 states and Canada, including Texas. NextEra Energy's practices of careful financial stewardship are reflected in its strong investment grade credit ratings: "A-" at Standard and Poor's and Fitch Ratings, and "Baa1" at Moody's Investors Service.

NextEra Energy has a 92-year history in the electric utility industry and, like Oncor, has extensive experience in cost-effectively constructing, owning, operating, and maintaining electric utility systems. NextEra Energy subsidiaries own and operate approximately 800 substations and 76,700 miles of transmission and distribution lines. NextEra Energy's principal utility subsidiary, Florida Power & Light Company ("FPL"), serves more than 4.9 million retail customers in Florida

4

and is one of the largest rate-regulated electric utilities in the nation. FPL is one of the most reliable among all large U.S. utilities and the most reliable among Florida investor-owned utilities.

NextEra Energy's other principal subsidiary, NextEra Energy Resources, LLC ("NEER"), primarily develops, owns, and operates electric generation facilities. NEER is one of the largest wholesale generators in the U.S., with approximately 20 gigawatts of generating capacity across 29 states, Canada and Spain. NextEra Energy, principally through NEER and FPL, owns and operates approximately 45.9 gigawatts of electric generating capacity, including nuclear, gas, and renewable energy resources.

NextEra Energy has had a meaningful presence in Texas since 1999. NextEra Energy has been a substantial contributor to the Texas economy, having invested $8.6 billion in transmission, power generation, gas pipelines, and other businesses in the state. NextEra Energy's subsidiary Lone Star Transmission, LLC is a transmission service provider that constructed and, since 2013, has owned and operated 330 linear miles of 345 kV lines and related transmission facilities in the Electric Reliability Council of Texas, Inc. ("ERCOT"). NextEra Energy provides hundreds of competitive, well-paying jobs across Texas and pays over one hundred million dollars annually in payroll, property taxes, and lease payments to landowners in Texas.

## C.    **Oncor**

The Proposed Transaction involves the acquisition of a minority ownership interest in Oncor, the largest transmission and distribution utility in Texas. Oncor transmits and distributes electricity to more than 3.4 million points of delivery representing approximately ten million people. Oncor serves over 400 cities across 91 counties throughout large portions of West, North, Central, and East Texas within the ERCOT control area. Oncor has approximately 3,700 employees.

To provide electric delivery service, Oncor owns, operates, and maintains one of the largest integrated electric systems in the United States and the largest in Texas. Oncor's facilities include approximately 16,000 circuit miles of transmission lines, more than 1,000 substations and switching stations, and over 100,000 miles of distribution lines within ERCOT. Oncor also provides limited open access wholesale transmission and interconnection service under tariffs on file with the Federal Energy Regulatory Commission.

## III.   SUMMARY OF THE PROPOSED TRANSACTION

The proposed indirect acquisition of TTI's 19.75 percent interest in Oncor will occur pursuant to an Agreement and Plan of Merger ("TTHC Merger Agreement"), by and among TTHC, Borealis Power Holdings Inc., BPC Health Corporation, Cheyne Walk Investment Pte Ltd, NextEra Energy, and a NextEra Energy affiliate, WSS Acquisition Company. Under the TTHC Merger Agreement, WSS Acquisition Company will merge with and into TTHC, with TTHC continuing as the surviving company. This will result in NextEra Energy owning 100 percent of TTHC and TTI, including TTI's 19.75 percent minority interest in Oncor. The TTHC Merger Agreement is included as Exhibit MH-1 to the Direct Testimony of Mark Hickson. The Proposed Transaction has a value of approximately $2.4 billion. Transaction financing is discussed by Mr. Hickson in his Direct Testimony.

## IV.   JURISDICTION

This Application is filed out of an abundance of caution in order to ensure regulatory compliance with the Commission's Order on Rehearing in Docket No. 46238, which held that the sale of TTI constitutes the transfer of a controlling interest or operational control in Oncor under

5

6

PURA §§ 39.262(l)(3) or 39.915(a)(3).[5]  The Commission further held in Docket No. 46238 that the Commission had jurisdiction over a transaction involving the sale of TTI under PURA §§ 14.101, as well as 39.262(o), and 39.915.[6]

PURA § 14.101 requires a public utility to report a transaction in which it will "sell, acquire, or lease plant as an operating unit or system" or "merge or consolidate with another public utility operating" or a transaction that involves the sale of at least 50 percent of the utility's stock. PURA §§ 39.262(1) and 39.915(a) require Commission approval of a transaction that will (1) merge or consolidate a utility with another utility, or (2) sell or transfer at least 50 percent of a utility's stock, or (3) transfer a "controlling interest or operational control" of a utility. Notably, the Proposed Transaction does not involve the sale of plant as an operating unit or system, the merger or consolidation with another public utility operating in Texas, or the sale of at least 50 percent of a utility's stock. Thus, PURA § 14.101 is not implicated by the Proposed Transaction. Further, the Proposed Transaction does not involve a merger or consolidation with another utility, the sale or transfer of 50 percent of Oncor's stock, or the acquisition of a "controlling interest or operational control" of Oncor. As described above, TTI's rights do not constitute a controlling interest in or operational control over Oncor. As explained in further detail in Mr. Hickson's Direct Testimony, NextEra Energy's acquisition of the minority interest in Oncor will not vest NextEra Energy with the right to control, manage, or direct the operations of Oncor. For these reasons, neither the approval requirements set forth under PURA §§ 39.262 or 39.915 or the reporting requirement under PURA § 14.101 are implicated by the Proposed Transaction.

---

[5] *See* Docket No. 46238, Order on Rehearing at CoL No. 2 (issued June 7, 2017). NextEra Energy has filed an appeal of the Order on Rehearing in Docket No. 46238 with the Travis County District Court. Accordingly, the filing of the Application does not and shall not be construed to waive NextEra Energy's position that the Commission has no authority to exercise jurisdiction over the subject matter of this docket under PURA §§ 14.101, 39.262, and 39.915.
[6] *Id.* at CoL No. 1.

The conclusion that Commission review of the Proposed Transaction is not required under PURA §§ 14.101, 39.262, and 39.915 is further supported by Commission precedent and the creation of the minority interest in Oncor. When TTHC acquired the minority interest from EFH, no report or prior approval was required by the Commission. Similarly, the Commission did not review or specify the terms to be included in the Oncor LLC Agreement, which is included as Exhibit MH-2 to the Direct Testimony of Mr. Hickson, and the special rights granted to TTHC under that agreement. Moreover, while the Commission, in Docket No. 34077, approved a settlement between EFH and the parties to that case, the Commission did not require EFH to transfer a minority interest in Oncor. The only requirement in the Commission's Order on Rehearing in Docket No. 34077 was that the transfer of the minority interest, if such a transfer occurred, must be to a non-affiliated third party. It is also clear that EFH sought authority to transfer a minority interest in Oncor to address concerns raised by the ratings agencies. The ratings agencies required a minority owner for Oncor to maintain Oncor's investment grade credit ratings despite the non-investment grade status of EFH. These facts are supportive of Applicants' request for a determination that Commission approval is not required to close the Proposed Transaction.

Alternatively, if the Commission determines that it does have jurisdiction over the Proposed Transaction, Applicants request that the Commission approve the Proposed Transaction consistent with the public interest pursuant to PURA §§ 39.262 and 39.915 and further issue a favorable public interest determination under PURA § 14.101. The Direct Testimony of Mr. Hickson demonstrates that the Proposed Transaction satisfies the statutory criteria necessary to warrant a favorable public interest determination and Commission approval. Applicants further request that the Commission render a determination on the Proposed Transaction promptly, and in

any event, pursuant to Sections 39.262(m) and 39.915(b) of PURA, not later than 180 days from the date of this filing, which is January 24, 2018.

## V.    **REQUESTED REGULATORY APPROVALS**

Subject to and without waiving NextEra Energy's position that the Proposed Transaction does not require the public interest evaluation provided for under PURA §§ 14.101, 39.262, or 39.915, if the Commission exercises jurisdiction over the Proposed Transaction, PURA §§ 39.262(l)-(m) and 39.915 set forth three factors for the Commission's consideration: whether the Proposed Transaction will adversely affect the reliability of service, availability of service, or cost of service of the electric utility or transmission and distribution utility.[7] PURA § 14.101 similarly instructs the Commission to consider whether the proposed acquisition is consistent with the public interest[8] based on whether the Proposed Transaction will result in the transfer of jobs to workers outside of Texas, adversely affect the health or safety of the utility's customers or employees, or result in a decline in service. The Commission must also consider the reasonable value of the property, facilities, or securities to be acquired, and whether the utility will receive consideration equal to the reasonable value of the assets when it sells, leases, or transfers assets.[9]

As explained in Mr. Hickson's Direct Testimony, the Proposed Transaction is limited to the acquisition of an indirect minority interest in Oncor from a third party, and NextEra Energy will not have the right to control, manage, or direct the operations of Oncor. As such, Oncor's current day-to-day operation, management, or service will not be adversely affected by the Proposed Transaction. Mr. Hickson also testifies that the availability, reliability, and cost of Oncor's service will not be adversely affected by the Proposed Transaction. Likewise, the

---

[7] PURA §§ 39.262(m) & 39.915(b).

[8] PURA § 14.101(a) & (b); 16 Texas Administrative Code § 25.74(b) (TAC).

[9] PURA § 14.101(b).

Proposed Transaction will not result in the transfer of jobs to workers outside of Texas, adversely affect the health or safety of the utility's customers or employees, or result in a decline in service. Accordingly, the Proposed Transaction fully satisfies the statutory public interest criteria.

In terms of benefits, the Proposed Transaction offers the opportunity to obtain a strategic, U.S. based, minority investor for Oncor, NextEra Energy, which has many decades of experience in owning and operating a large electric utility and the long-term intent of investing in utilities. Further, NextEra Energy provides Oncor with the kind of financially strong, minority owner that the credit rating agencies have determined is necessary to maintain Oncor's investment grade credit rating under its current parent, EFH, which is in bankruptcy.

The Proposed Transaction will also not change the ring-fence structure approved for Oncor by the Commission in Docket No. 34077. Further, the minority rights required by ratings agencies in order for Oncor to maintain an investment grade credit rating under EFH's ownership will be maintained. These minority rights include the ability to veto dividends declared by the Oncor board of directors and, in certain circumstances, veto capital and operating budgets. Approval of the Proposed Transaction will preserve these minority rights, as well as Oncor's existing ring-fence structure.

## VI.   PERSONS POTENTIALLY AFFECTED BY THE PROPOSED TRANSACTION

As noted above, the Proposed Transaction is limited to the acquisition of an indirect minority interest in Oncor. The current manner of delivery, availability, and level of service provided will not be affected, and it is not anticipated that any persons will be directly affected by the Application. To the extent a person is affected by the Proposed Transaction, persons potentially affected could include retail electric providers ("REPs") that take electric delivery service from Oncor, other electric service providers located in ERCOT, other wholesale market

9

10

participants in ERCOT, and retail end-use customers who are connected to Oncor's electric system.

## VII.  NOTICE

Applicants will provide notice of this filing by mailing a notice substantially in the form attached as Exhibit B to this Application by first class mail to: (1) all municipalities in Oncor's service area; (2) all entities listed in the Commission's transmission matrix in Docket No. 46604, *Commission Staff's Application to Set 2017 Wholesale Transmission Service Charges for the Electric Reliability Council of Texas*; (3) all electric cooperatives and municipally owned utilities with dually certificated areas with Oncor; (4) all REPs currently certified by the Commission; and (5) all authorized representatives for parties in Docket No. 38929, *Application of Oncor Electric Delivery Company LLC for Authority to Change Rates* and Docket No. 46238, *Joint Report and Application of Oncor Electric Delivery LLC and NextEra Energy, Inc. for Regulatory Approvals Pursuant to PURA §§ 14.101, 39.262 and 39.915*.  Applicants submit that this proposed notice complies with Commission Procedural Rule 22.55, which requires "reasonable notice to affected persons."  Applicants further note that notice by publication is not required in this docket since no change to Oncor's certificate of convenience and necessity is requested.

## VIII.  REQUESTED PROTECTIVE ORDER

Attached to this Application as Exhibit C is the Commission's standard Protective Order as set out in Commission Procedural Rule 22.142(c) for the protection of materials associated with this proceeding containing privileged, confidential, competitively sensitive, proprietary trade secret data, and commercial and financial information.  Applicants request that the Commission issue this protective order and require all parties to adhere to its terms.

## IX.  DESIGNATED REPRESENTATIVES AND SERVICE OF PLEADINGS

TTHC's designated legal and business representatives for purposes of this proceeding are:

> Philip F. Ricketts
> State Bar No. 16882500
> Jessica H. Miller
> State Bar No. 24074719
> Bracewell LLP
> 111 Congress Ave., Suite 2300
> Austin, Texas 78701
> 512.494.3606
> 800.404.3970 (fax)

NextEra Energy's designated legal and business representatives for purposes of this proceeding are:

> Ann M. Coffin
> State Bar No. 00787941
> Julie Caruthers Parsley
> State Bar No. 15544920
> Mark Santos
> State Bar No. 24037433
> Parsley Coffin Renner LLP
> P.O. Box 13366
> Austin, Texas 78711
> 512.879.0900
> 512.879.0912 (fax)

All pleadings, orders, discovery requests, and other matters related to this Application should be served on TTHC via email at jessica.miller@bracewell.com or fax at (800) 404-3970, and on NextEra Energy via email at ann.coffin@pcrllp.com.

## X.  CONCLUSION AND REQUESTED ACTIONS

Based on the Application and evidence in this proceeding, Applicants respectfully request, subject to the reservation of rights that NextEra Energy has set forth in Section IV of this Application, that the Commission:

(1)  issue an order that disclaims jurisdiction over the Proposed Transaction; or

11

(2) find that the Proposed Transaction is in the public interest in accordance with PURA §§ 14.101, 39.262(l)-(m), and 39.915;

(3) approve the Proposed Transaction in accordance with PURA §§ 39.262(l)-(m) and 39.915; and

(4) grant Applicants any other necessary relief to which they are entitled.

Respectfully submitted,

By: _____
Ann M. Coffin
State Bar No. 00787941
Julie Caruthers Parsley
State Bar No. 15544920
Mark Santos
State Bar No. 24037433
Parsley Coffin Renner LLP
P.O. Box 13366
Austin, Texas 78711
512.879.0900
512.879.0912 (fax)
ann.coffin@pcrllp.com
julie.parsley@pcrllp.com
mark.santos@pcrllp.com

**ATTORNEYS FOR NEXTERA ENERGY, INC.**

By: _____
Philip F. Ricketts
State Bar No. 16882500
Jessica H. Miller
State Bar No. 24074719
Bracewell LLP
111 Congress Ave., Suite 2300
Austin, Texas 78701
512.494.3606
800.404.3970 (fax)

**ATTORNEYS FOR TTHC**

12

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been hand delivered to Commission Staff and the Office of Public Utility Counsel on this the 28th day of July, 2017.

Ann M. Coffin

**EXHIBIT A**

PUBLIC UTILITY COMMISSION OF TEXAS
1701 N. CONGRESS AVENUE
AUSTIN, TEXAS 78701
(512) 936-7000

## APPLICATION FOR SALE, TRANSFER, OR MERGER

This form should be used by public utilities for:

1) seeking authority to sell assign, or lease a Certificate of Convenience and Necessity or any rights obtained under a certificate;

2) reporting the sale, acquisition, lease or rental by or to any public utility of any plant as an operating system or unit for a total consideration in excess of $10,000,000;

3) reporting the merger or consolidation of two or more public utilities; and

4) reporting the purchase by one public utility of voting stock in another public utility.

See Sections 14.101, 37.154, 39.262(l)-(m), and 39.915 of the Public Utility Regulatory Act, Tex. Util. Code Ann. §§ 11.001-66.016 (West 2016 & Supp. 2016) (PURA).

1.    Proposed action or subject of report:

_____ Sale, transfer, or lease of an entire Certificate of Convenience and Necessity

_____ Sale, transfer or lease of a portion of Applicant's service area or facilities to which it is certificated (including certificate rights)

_____ Sale, transfer or lease of a utility plant as an operating system or unit for more than $10,000,000 (including certificate rights)

_____ Merger or consolidation of public utilities

_____ Purchase by a public utility of voting stock in another public utility

__X__ Other

**NextEra Energy, Inc. ("NextEra Energy") proposes to acquire the 19.75 percent minority interest in Oncor Electric Delivery Company LLC ("Oncor") held by Texas Transmission Holdings Corporation ("TTHC") (the "Minority Interest"). For a more detailed description of the proposed action, please refer to the *Joint Report and Application of Texas Transmission Holdings Corporation and NextEra Energy, Inc. for Regulatory Approvals Pursuant to PURA §§ 14.101, 39.262, and 39.915.***

List all counties in which the utility's service area will be affected by this transaction:

**There will be no effect to Oncor's service area. The counties in Texas served by Oncor are listed in Attachment A hereto.**

2.      Applicants:      **NextEra Energy and TTHC. Oncor is not an applicant, but is the affected utility.**

Mark one:

     __X__   Oncor holds Certificate of Convenience and Necessity Nos. **30158, 30160, 30043, 30152.**

     __X__   NextEra Energy does not hold a certificate from the Public Utility Commission.

     __X__   TTHC does not hold a certificate from the Public Utility Commission.

The Applicants are the:

     __X__   Seller (transferor or lessor)

     __X__   Purchaser (transferee or lessor)

     _____   One of the merging or consolidating utilities

     _____   Other (please explain)

     **Please see the response to Question No. 1.**

Business Address:      **Texas Transmission Holdings Corporation
1105 North Market Street, Suite 1300
Wilmington, DE 19801
416-361-5675**

                     **NextEra Energy, Inc.
700 Universe Boulevard
Juno Beach, Florida 33408
561-694-4000**

While Oncor is not an applicant in this proceeding, its business address is provided below:

                     **Oncor Electric Delivery Company LLC
1616 Woodall Rodgers Freeway
Dallas, Texas 75202
214-486-2000**

2

3.      Applicants are:

**TTHC is a Delaware corporation**
**NextEra Energy is a Florida corporation**

4.      If applicable, list the names, addresses and office of all partners or all officers of Applicants:

**Officers of TTHC:**

| Rhys Evenden | Senior Vice President and Treasurer | Cheyne Walk Investment Pte Ltd 1st Floor, York House 45 Seymour Street London W1H 7LX, United Kingdom |
|---|---|---|
| Steven Zucchet | Senior Vice President | Borealis Infrastructure Corporation Borealis Infrastructure Management Inc. Royal Bank Plaza, South Tower 200 Bay Street, Suite 1200, PO Box 56 Toronto, Ontario M5J 2J2, Canada |
| John Knowlton | Secretary | Borealis Infrastructure Corporation Borealis Infrastructure Management Inc. Royal Bank Plaza, South Tower 200 Bay Street, Suite 1200, PO Box 56 Toronto, Ontario M5J 2J2, Canada |

**Officers of NextEra Energy:**

| James L. Robo | Chairman of the Board, President and Chief Executive Officer | 700 Universe Blvd. Juno Beach, FL 33408 |
|---|---|---|
| Manoochehr K. Nazar | President Nuclear Division and Chief Nuclear Officer | 700 Universe Blvd. Juno Beach, FL 33408 |
| Charles E. Sieving | Executive Vice President & General Counsel | 700 Universe Blvd. Juno Beach, FL 33408 |
| Deborah H. Caplan | Executive Vice President, Human Resources and Corporate Services | 700 Universe Blvd. Juno Beach, FL 33408 |
| John W. Ketchum | Executive Vice President, Finance and Chief Financial Officer | 700 Universe Blvd. Juno Beach, FL 33408 |
| Joseph T. Kelliher | Executive Vice President, Federal Regulatory Affairs | 700 Universe Blvd. Juno Beach, FL 33408 |
| Miguel Arechabala | Executive Vice President, Power Generation Division | 700 Universe Blvd. Juno Beach, FL 33408 |

3

| William L. Yeager | Executive Vice President, Engineering, Construction and Integrated Supply Chain | 700 Universe Blvd. Juno Beach, FL 33408 |
|---|---|---|
| Mark E. Hickson | Executive Vice President, Corporate Development, Strategy, Quality and Integration | 700 Universe Blvd. Juno Beach, FL 33408 |
| Ashish Gupta | Vice President and Chief Information Officer | 700 Universe Blvd. Juno Beach, FL 33408 |
| Jessica Wang | Vice President, Finance & Chief Investment Officer | |
| Michael Sole | Vice President, Environmental Services | 700 Universe Blvd. Juno Beach, FL 33408 |
| Christopher T. Chapel | Vice President, Governmental Affairs - Federal | 700 Universe Blvd. Juno Beach, FL 33408 |
| John J. Coneys | Vice President and Chief Tax Officer | 700 Universe Blvd. Juno Beach, FL 33408 |
| Kate E. Stengle | Vice President, Internal Audit | 700 Universe Blvd. Juno Beach, FL 33408 |
| Ronald R. Reagan | Vice President, Integrated Supply Chain | 700 Universe Blvd. Juno Beach, FL 33408 |
| Terrell Kirk Crews II | Vice President, Controller and Chief Accounting Officer | 700 Universe Blvd. Juno Beach, FL 33408 |
| Thomas F. Broad | Vice President, Engineering and Construction | 700 Universe Blvd. Juno Beach, FL 33408 |
| W. Scott Seeley | Vice President, Compliance & Corporate Secretary | 700 Universe Blvd. Juno Beach, FL 33408 |
| Paul I. Cutler | Treasurer and Assistant Secretary | 700 Universe Blvd. Juno Beach, FL 33408 |
| Daisy Jacobs | Assistant Controller | 700 Universe Blvd. Juno Beach, FL 33408 |
| M. Beth Farr | Assistant Controller | 700 Universe Blvd. Juno Beach, FL 33408 |
| Charlotte B. Anderson | Assistant Secretary | 700 Universe Blvd. Juno Beach, FL 33408 |
| Melissa A. Plotsky | Assistant Secretary | 700 Universe Blvd. Juno Beach, FL 33408 |
| Aldo Portales | Assistant Treasurer | 700 Universe Blvd. Juno Beach, FL 33408 |
| Amanda M. Finnis | Assistant Treasurer | 700 Universe Blvd. Juno Beach, FL 33408 |

| Joseph Balzano | Assistant Treasurer | 700 Universe Blvd. Juno Beach, FL 33408 |
| Judith J. Kahn | Assistant Treasurer and Assistant Secretary | 700 Universe Blvd. Juno Beach, FL 33408 |

5.    If applicable, list names, addresses and positions of Applicant's five largest shareholders.

TTHC's shareholders are:

BPC Health Corporation
200 Bay Street, Suite 1200, PO Box 56
Toronto, Ontario M5J 2J2, Canada

Cheyne Walk Investment Pte Ltd
1st Floor, York House
45 Seymour Street
London W1H 7LX, United Kingdom

Hunt Strategic Utility Investment, L.L.C.
1900 North Akard Street
Dallas, TX 75201

Borealis Power Holdings Inc.
Royal Bank Plaza, South Tower
200 Bay Street, Suite 1200, PO Box 56
Toronto, Ontario M5J 2J2, Canada

NextEra Energy:

NextEra Energy is a Florida corporation, which is publicly traded on the New York Stock Exchange under the symbol "NEE." As of December 31, 2016, NextEra Energy's five largest shareholders are as follows:

| Shareholder | Shares Held | Position | Address |
|---|---|---|---|
| The Vanguard Group, Inc. | 35,000,629 | 1 | 100 Vanguard Blvd. Malvern, PA 19355 |
| State Street Global Advisors (SSgA) | 24,881,941 | 2 | One Lincoln St., 27th Fl. Boston, MA 02111-2900 |
| Black Rock Fund Advisors | 23,515,597 | 3 | 400 Howard St. San Francisco, CA 94105 |
| Wellington Management Company, LLP | 19,794,269 | 4 | 280 Congress St., 31st Fl. Boston, MA 02210 |
| T. Rowe Price Associates, Inc. | 10,212,708 | 5 | 100 E. Pratt St. Baltimore, MD 21202 |

6.    Applicants designate the following persons to be contacted with respect to any questions regarding the filing:

| **TTHC** | **NextEra Energy** |
|---|---|
| Philip F. Ricketts | Ann M. Coffin |
| State Bar No. 16882500 | State Bar No. 00787941 |
| Jessica H. Miller | Julie Caruthers Parsley |
| State Bar No. 24074719 | State Bar No. 15544920 |
| Bracewell LLP | Mark Santos |
| 111 Congress Ave, Suite 2300 | State Bar No. 24037433 |
| Austin, TX 78701 | Parsley Coffin Renner LLP |
| 512-494-3606 | P.O. Box 13366 |
| 800-404-3970 (fax) | Austin, Texas 78711 |
| phil.ricketts@bracewell.com | 512-879-0900 |
| jessica.miller@bracewell.com | 512-879-0912 (fax) |
| | ann.coffin@pcrllp.com |
| | julie.parsley@pcrllp.com |
| | mark.santos@pcrllp.com |

7.    If Applicants are represented by an attorney:

| **TTHC** | **NextEra Energy** |
|---|---|
| Philip F. Ricketts | Ann M. Coffin |
| State Bar No. 16882500 | State Bar No. 00787941 |
| Jessica H. Miller | Julie Caruthers Parsley |
| State Bar No. 24074719 | State Bar No. 15544920 |
| Bracewell LLP | Mark Santos |
| 111 Congress Ave, Suite 2300 | State Bar No. 24037433 |
| Austin, TX 78701 | Parsley Coffin Renner LLP |
| 512-494-3606 | P.O. Box 13366 |
| 800-404-3970 (fax) | Austin, Texas 78711 |
| phil.ricketts@bracewell.com | 512-879-0900 |
| jessica.miller@bracewell.com | 512-879-0912 (fax) |
| | ann.coffin@pcrllp.com |
| | julie.parsley@pcrllp.com |
| | mark.santos@pcrllp.com |

8.    Do Applicants presently have a tariff on file with the Commission?

_____ Yes.    If yes, date of filing:

**TTHC does not have tariffs on file with the Commission.**

**NextEra Energy does not have tariffs on file with the Commission.**

_X_    No.  If no, attach a written schedule of present rates and services.

6

20

**Oncor is the electric utility affected by this filing. Oncor's base tariffs were approved by the Commission on August 26, 2011, in Docket No. 38929. Oncor's base tariffs have been amended from time to time, with Oncor's current Tariff for Retail Electric Delivery Service having been approved effective March 1, 2017, and Oncor's current Tariff for Transmission Service having been approved effective September 15, 2016.**

9.    Please indicate the proposed effect of this transaction on rates to be charged affected customers:

_X_    All customers will be charged the same rates as they were charged before the transaction.

_____    (Some) (all) customers will be charged different rates than they were charged before the transaction. If so, please explain.

_____    Applicant intends to file with the Commission an application to change rates of (some) (all) of its customers as a result of this transaction. If so, please explain.

_____    Other: Please explain.

10.    Other party to this transaction: **TTHC and NextEra Energy are the only parties to the Transaction. While not a party to the Transaction, as stated in response to Question No. 1, Oncor is the affected utility. For convenience, the Certificate of Convenience and Necessity Nos. held by Oncor and its business address are provided below.**

_X_    Oncor holds Certificate of Convenience and Necessity Nos. **30158, 30160, 30043, 30152**.

_____    The other party does not hold a Certificate of Convenience and Necessity.

The other party is the:

_____    Seller (transferor or lessor)

_____    Purchaser (transferee or lessee)

_____    One of the merging or consolidating utilities

_____    Other:

Business Address:    **Oncor Electric Delivery Company LLC**
**1616 Woodall Rodgers Freeway**
**Dallas, Dallas County, Texas 75202**
**214-486-2000**

7

If there are more than two parties to this transaction, please attach sheets providing the information required in Question No. 9 through 16 for each party.

11.   Other party is ____N/A____.   **TTHC and NextEra Energy are the only parties to the Transaction.**

12.   If applicable, list the names, addresses and office of all partners or all officers of the other parties.  **N/A**

13.   If applicable, list the names and addresses of the other party's five (5) largest shareholders.  **N/A**

14.   The other party designates the following person to be contacted with respect to any question regarding the filing:  **N/A**

15.   If the other party has retained an engineer:  **N/A**

      The Public Utility Commission should be informed of any change of engineer prior to the completion of a project in process.

16.   If the other party is represented by an attorney:  **N/A**

17.   List all neighboring utilities, cities, political subdivisions, or other parties directly affected by this application.

      **Because this transaction would result in NextEra Energy acquiring the 19.75 percent minority interest in Oncor held indirectly by TTHC, the only other affected parties are Oncor, Energy Future Intermediate Holding Company LLC, and Energy Future Holdings Corp. (EFH).  Attachment A to this Application contains a list of cities and counties served by Oncor and a list of the electric cooperatives and municipal utilities that have dual certification in Oncor's service territory.**

18.   Please describe the nature of the transaction.  Indicate if it involves the transfer of certificated facilities and/or service area.

      **For a description of the transaction, see the response to Question No. 1.  The transaction does not involve the transfer of certificated facilities and/or service area.**

19.   If the transaction involves the transfer of certificated facilities and/or service area please describe the qualifications of the purchaser (or transferee) to provide adequate utility service.  **N/A**

20.   State the purchase price and/or the other consideration for the transaction:

      **Please see the Direct Testimony of Mr. Mark Hickson.**

21. If applicable, state the original cost of plant to be sold or merged, as recorded - on books of Seller (or merging companies): **N/A**

22. If applicable, state the amount of accumulated depreciation and the date of acquisition: $ _____ as of _____, 20___ **N/A**

23. If applicable, state the amount recorded as plant acquisition adjustment on books of selling company(ies): **N/A**

24. Complete the following proposed entries in books of purchasing (or surviving) company to record purchase (or merger): **N/A**

> Utility plant in service
>
> Plant acquisition adjustment
>
> Extraordinary loss on purchase
>
> Accumulated depreciation plant
>
> Cash
>
> Notes payable
>
> Mortgage payable
>
> Other list

25. If utility plant in service is traded for utility plant in service, give details of original cost - accumulated depreciation, and reasons for or justification of the trade: **N/A**

26. Provide analysis of tax consequences in transaction and recognition given in books to parties concerned: **N/A**

27. Describe type of plant facilities, and number of connections affected by this application. **N/A**

28. Describe the location of plant facilities involved in this application with respect to streets, highways, cities, known landmarks, water courses, coordinates of transmitter sites, etc.: **N/A**

29. Regarding the utility being sold, provide details of the following: **N/A**
    a. Planned or needed capital improvements;
    b. Estimated cost of such improvements;
    c. Whether required to make such improvements by a federal or state agency;
    d. Any time limits imposed for such improvements.

9

23

30.   Please describe anticipated impact of this transaction on the quality of utility service. Please explain anticipated changes in quality of service.

**This transaction will not have any adverse impact on the quality of Oncor's utility service.  Please see the Direct Testimony of Mark Hickson.**

31.   If a merger or combination is sought by this application, please provide the following:  **N/A**
   a.   A balance sheet for each entity;
   b.   An income statement for each entity;
   c.   Articles of Incorporation of a newly created entity;
   d.   A preliminary prospectus if stock of a newly created entity is to be publicly held.

If the Affiant(s) to this form is any person other than the sole owner, partner, or officer of the applicant or its attorney, a properly verified Power of Attorney must be enclosed.

<u>OATH</u>

PROVINCE OF ONTARIO

CANADA


      I, Steven Zucchet, Senior Vice President, Texas Transmission Holdings Corporation, being duly sworn and authorized as a representative of the Applicants, file this application and affirm that in such capacities, I am qualified and authorized to file and verify such application, are personally familiar with the documents filed with this application, and have complied with all the requirements contained in the application; and, that all such statements made and matters set forth therein with respect to Applicants are true and correct. Statements about other parties are made on information and belief.  I further state that the application is made in good faith, that notice of its filing was given to all necessary parties, and that this application does not duplicate any filing presently before the Commission.


Steven Zucchet

_____

      SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public in and for the Province of Ontario, this 28th day of July 2017.

Notary Public

JENNIFER ELLEN GUERARD

NOTARY PUBLIC ONTARIO

11

25

OATH

STATE OF FLORIDA

COUNTY OF PALM BEACH

I, Mark E. Hickson, Executive Vice President of Corporate Development, Strategy, Quality & Integration of NextEra Energy, Inc. being duly sworn and authorized as a representative of the Applicants, file this application and affirm that in such capacities, I am qualified and authorized to file and verify such application, am personally familiar with the documents filed with this application, and have complied with all the requirements contained in the application; and, that all such statements made and matters set forth therein with respect to the Applicants are true and correct. Statements about other parties are made on information and belief. I further state that the application is made in good faith, that notice of its filing was given to all necessary parties, and that this application does not duplicate any filing presently before the Commission.

Mark E. Hickson

SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public in and for the State of Florida, this 25 day of July 2017.

Notary Public

SANDRA COX CLARCHICK
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF165449
Expires 10/2/2018

12

26

## Cities served by Oncor Electric Delivery:

| | | |
|---|---|---|
| Abbott | Burkburnett | Denton |
| Ackerly | Burke | DeSoto |
| Addison | Burleson | Diboll |
| Aledo | Bynum | Dish |
| Allen | Caddo Mills | Dodd City |
| Alma | Cameron | Dorchester |
| Alto | Campbell | Dublin |
| Alvarado | Caney City | Duncanville |
| Alvord | Canton | Early |
| Andrews | Carbon | Eastland |
| Angus | Carrollton | Ector |
| Anna | Cashion Community | Edgecliff Village |
| Annetta | Cedar Hill | Edgewood |
| Annetta North | Celina | Edom |
| Annetta South | Centerville | Electra |
| Annona | Chandler | Elgin |
| Appleby | Chico | Elkhart |
| Archer City | Chireno | Emhouse |
| Argyle | Clarksville | Enchanted Oaks |
| Arlington | Cleburne | Ennis |
| Arp | Coahoma | Euless |
| Athens | Cockrell Hill | Eureka |
| Aurora | Colleyville | Eustace |
| Austin | Collinsville | Everman |
| Azle | Colorado City | Fairfield |
| Balch Springs | Comanche | Fairview (Collin Co.) |
| Bangs | Commerce | Farmers Branch |
| Bardwell | Como | Fate |
| Barry | Cool | Ferris |
| Bartlett | Coolidge | Florence |
| Bedford | Cooper | Flower Mound |
| Bellevue | Coppell | Forest Hill |
| Bellmead | Copperas Cove | Forney |
| Bells | Corinth | Forsan |
| Belton | Corsicana | Fort Worth |
| Benbrook | Coupland | Frankston |
| Beverly Hills | Crandall | Frisco |
| Big Spring | Crane | Frost |
| Blanket | Cresson | Gainesville |
| Blooming Grove | Crockett | Gallatin |
| Blue Mound | Crossroads | Garland |
| Bonham | Crowley | Garrett |
| Boyd | Cumby | Georgetown |
| Breckenridge | Cushing | Gholson |
| Bridgeport | Dallas | Glenn Heights |
| Brownsboro | Dalworthington Gardens | Godley |
| Brownwood | Dawson | Golinda |
| Bruceville-Eddy | Dean | Goodlow |
| Buckholts | Decatur | Gorman |
| Buffalo | DeLeon | Graford |
| Bullard | Denison | Graham |

Grand Prairie
Grandfalls
Grandview
Granger
Grapeland
Grapevine
Groesbeck
Gun Barrel City
Gunter
Haltom City
Harker Heights
Haslet
Heath
Hebron
Henrietta
Hewitt
Hickory Creek
Hideaway
Highland Park
Hillsboro
Holland
Holliday
Honey Grove
Howe
Hubbard
Hudson
Hudson Oaks
Huntington
Hurst
Hutchins
Hutto
Iowa Park
Irving
Italy
Itasca
Jacksboro
Jacksonville
Jarrell
Jewett
Jolly
Josephine
Joshua
Justin
Kaufman
Keene
Keller
Kemp
Kennedale
Kerens
Killeen
Knollwood
Krum
Lacy-Lakeview
Ladonia
Lake Bridgeport
Lake Dallas

Lake Worth
Lakeside
Lakeside City
Lamesa
Lancaster
Latexo
Lavon
Leona
Leroy
Lewisville
Lindale
Lindsay
Lipan
Little Elm
Little River Academy
Loraine
Lorena
Lott
Lovelady
Lowry Crossing
Lucas
Lufkin
Mabank
Malakoff
Malone
Manor
Mansfield
Marlin
Marquez
Mart
Maypearl
McGregor
McKinney
McLendon-Chisholm
Melissa
Mertens
Mesquite
Mexia
Midland
Midlothian
Milano
Mildred
Milford
Millsap
Mineral Wells
Mobile City
Monahans
Moody
Morgan's Point Resort
Mount Calm
Muenster
Murchison
Murphy
Mustang
Nacogdoches
Navarro

Nevada
New Chapel Hill
New Fairview
New Summerfield
Newark
Neylandville
Nolanville
Noonday
Northlake
North Richland Hills
O'Donnell
Oak Grove
Oak Leaf
Oak Point
Oak Valley
Oakwood
Odessa
Oglesby
Overton
Ovilla
Palestine
Palmer
Pantego
Paradise
Paris
Parker
Payne Springs
Pecan Gap
Pecan Hill
Penelope
Pflugerville
Plano
Pleasant Valley
Ponder
Post Oak Bend
Pottsboro
Powell
Poynor
Princeton
Prosper
Pyote
Quinlan
Ranger
Ravenna
Red Oak
Reno (Lamar Co.)
Reno (Parker Co.)
Retreat
Rhome
Rice
Richardson
Richland
Richland Hills
Riesel
River Oaks
Roanoke

Robinson
Rockdale
Rockwall
Rogers
Roscoe
Rosebud
Rosser
Round Rock
Rowlett
Roxton
Royse City
Runaway Bay
Rusk
Sachse
Sadler
Saginaw
Salado
Sanctuary
Sansom Park
Savoy
Seagoville
Shady Shores
Sherman
Snyder
Southlake
Southmayd
Springtown

St. Paul
Stanton
Stephenville
Streetman
Sulphur Springs
Sunnyvale
Sweetwater
Taylor
Teague
Tehuacana
Temple
Terrell
The Colony
Thorndale
Thornton
Thorntonville
Thrall
Tira
Tool
Trinidad
Trophy Club
Troup
Troy
Tyler
University Park
Valley View
Van

Van Alstyne
Venus
Waco
Watauga
Waxahachie
Weatherford
Weir
Wells
West
Westbrook
Westover Hills
Westworth Village
Whitehouse
White Settlement
Wichita Falls
Wickett
Willow Park
Wills Point
Wilmer
Windom
Wink
Wolfe City
Woodway
Wortham
Wylie
Yantis
Zavalla

## Counties served by Oncor Electric Delivery:

Anderson
Andrews
Angelina
Archer
Bastrop
Baylor
Bell
Borden
Bosque
Brown
Burnet
Cherokee
Clay
Coke
Coleman
Collin
Comanche
Cooke
Coryell
Crane
Culberson
Dallas
Dawson
Delta
Denton

Fisher
Freestone
Gaines
Glasscock
Grayson
Henderson
Hill
Hood
Hopkins
Houston
Howard
Hunt
Jack
Johnson
Kaufman
Kent
Lamar
Lampasas
Leon
Limestone
Loving
Lynn
Martin
McLennan
Midland

Palo Pinto
Parker
Pecos
Rains
Reagan
Red River
Reeves
Rockwall
Rusk
Scurry
Shackelford
Smith
Stephens
Sterling
Tarrant
Terry
Tom Green
Travis
Trinity
Upton
Van Zandt
Ward
Wichita
Wilbarger
Williamson

| | | |
|---|---|---|
| Eastland | Milam | Winkler |
| Ector | Mitchell | Wise |
| Ellis | Montague | Wood |
| Erath | Nacogdoches | Young |
| Falls | Navarro | |
| Fannin | Nolan | |

**Electric cooperatives and municipal utilities with whom Oncor Electric Delivery is dually certificated within portions of its service area:**

Austin Energy
Bartlett Electric Cooperative
Big Country Electric Cooperative
Bluebonnet Electric Cooperative
Bowie Utilities
City of Bridgeport
Cherokee County Electric Cooperative
Coleman County Electric Cooperative
Comanche Electric Cooperative
Concho Valley Electric Cooperative
Cooke County Electric Cooperative
Coserv Electric
Deep East Texas Electric Cooperative
Denton Municipal Utilities
Electra Electric Department
Fannin County Electric Cooperative
City of Farmersville
Farmers Electric Cooperative
Fort Belknap Electric Cooperative
Garland Power & Light System
Georgetown Utility Systems
Grayson Collin Electric Cooperative
Greenville Electric Utility System
Heart of Texas Electric Cooperative Inc.
HILCO Electric Cooperative
Houston County Electric Cooperative
J-A-C Electric Cooperative
Jasper-Newton Electric Cooperative
Lamar County Electric Cooperative
Lyntegar Electric Cooperative
Navarro County Electric Cooperative
Navasota Valley Electric Cooperative
Pedernales Electric Cooperative
Rio Grande Electric Cooperative
Rusk County Electric Cooperative
Sam Houston Electric Cooperative
Sanger Electric Utilities
City of Seymour
Southwest Rural Electric Association
Taylor Electric Cooperative
Tri-County Electric Cooperative
Trinity-Valley Electric Cooperative
United Cooperative Services

Upshur Rural Electric Cooperative
Wise Electric Cooperative
Weatherford Municipal Utility System
Wood County Electric Cooperative

## NOTICE OF APPLICATION
### FILED WITH THE PUBLIC UTILITY COMMISSION OF TEXAS

August ___, 2017

Title
Address
City, TX Zip

Dear Title and Name:

On _____, 2017, Texas Transmission Holdings Corporation ("TTHC") and NextEra Energy, Inc. ("NextEra Energy") filed an Application for Sale, Transfer or Merger with the Public Utility Commission of Texas ("PUC" or "Commission"), copies of which are kept at the offices of Parsley Coffin Renner LLP, 98 San Jacinto Blvd., Suite 1450, Austin, TX 78701. The Application requests that the Commission issue an order to disclaim jurisdiction over NextEra Energy's proposed transaction to acquire the 19.75 percent minority ownership interest in Oncor Electric Delivery Company LLC ("Oncor"), a regulated electric transmission and distribution company, that is indirectly held by TTHC or, in the alternative, find that the proposed transaction is in the public interest and approved. The Application does not seek Commission approval of a modification to Oncor's rates or services.

Any person wishing to intervene in this proceeding must file a written request with the Public Utility Commission of Texas, 1701 North Congress Avenue, P.O. Box 13326, Austin, TX 78711-3326, no later than _____. This case has been assigned PUCT Docket No. _____.

Sincerely,

[Applicant's Representative]

**EXHIBIT C**

## PUC DOCKET NO. _____

| | | |
|---|---|---|
| **JOINT REPORT AND APPLICATION** | § | |
| **OF TEXAS TRANSMISSION** | § | **PUBLIC UTILITY COMMISSION** |
| **HOLDINGS CORPORATION AND** | § | |
| **NEXTERA ENERGY, INC. FOR** | § | **OF TEXAS** |
| **REGULATORY APPROVALS** | § | |
| **PURSUANT TO PURA §§ 14.101,** | § | |
| **39.262, AND 39.915** | § | |

### PROTECTIVE ORDER

This Protective Order shall govern the use of all information deemed confidential (Protected Materials) or highly confidential (Highly Sensitive Protected Materials), including information whose confidentiality is currently under dispute, by a party providing information to the Public Utility Commission of Texas (Commission) or to any other party to this proceeding.

It is ORDERED that:

1.   **Designation of Protected Materials.** Upon producing or filing a document, including, but not limited to, records on a computer disk or other similar electronic storage medium in this proceeding, the producing party may designate that document, or any portion of it, as confidential pursuant to this Protective Order by typing or stamping on its face "PROTECTED PURSUANT TO PROTECTIVE ORDER ISSUED IN DOCKET NO. _____" (or words to this effect) and consecutively Bates Stamping each page. Protected Materials and Highly Sensitive Protected Materials include the documents so designated, as well as the substance of the information contained in the documents and any description, report, summary, or statement about the substance of the information contained in the documents.

2.   **Materials Excluded from Protected Materials Designation.** Protected Materials shall not include any information or document contained in the public files of the Commission or any other federal or state agency, court, or local governmental authority subject to the Public Information Act.[1] Protected Materials also shall not include documents or information which at the time of, or prior to disclosure in, a proceeding is or was public

---

[1] TEX. GOV'T CODE ANN. §§ 552.001-552.353 (West 2012 & Supp. 2016).

knowledge, or which becomes public knowledge other than through disclosure in violation of this Protective Order.

3.   **Reviewing Party**.  For the purposes of this Protective Order, a "Reviewing Party" is any party to this docket.

4.   **Procedures for Designation of Protected Materials**.  On or before the date the Protected Materials or Highly Sensitive Protected Materials are provided to the Commission, the producing party shall file with the Commission and deliver to each party to the proceeding a written statement, which may be in the form of an objection, indicating: (a) any exemptions to the Public Information Act claimed to apply to the alleged Protected Materials; (b) the reasons supporting the producing party's claim that the responsive information is exempt from public disclosure under the Public Information Act and subject to treatment as protected materials; and (c) that counsel for the producing party has reviewed the information sufficiently to state in good faith that the information is exempt from public disclosure under the Public Information Act and merits the Protected Materials designation.

5.   **Persons Permitted Access to Protected Materials**.  Except as otherwise provided in this Protective Order, a Reviewing Party may access Protected Materials only through its "Reviewing Representatives" who have signed the Protective Order Certification Form (see Attachment A).  Reviewing Representatives of a Reviewing Party include its counsel of record in this proceeding and associated attorneys, paralegals, economists, statisticians, accountants, consultants, or other persons employed or retained by the Reviewing Party and directly engaged in this proceeding.  At the request of the PUC Commissioners, copies of Protected Materials may be produced by Commission Staff. The Commissioners and their staff shall be informed of the existence and coverage of this Protective Order and shall observe the restrictions of the Protective Order.

6.   **Highly Sensitive Protected Material Described**.  The term "Highly Sensitive Protected Materials" is a subset of Protected Materials and refers to documents or information that a producing party claims is of such a highly sensitive nature that making copies of such documents or information or providing access to such documents to employees of the Reviewing Party (except as specified herein) would expose a producing party to

unreasonable risk of harm. Highly Sensitive Protected Materials include but are not limited to: (a) customer-specific information protected by § 32.101(c) of the Public Utility Regulatory Act;[2] (b) contractual information pertaining to contracts that specify that their terms are confidential or that are confidential pursuant to an order entered in litigation to which the producing party is a party; (c) market-sensitive fuel price forecasts, wholesale transactions information and/or market-sensitive marketing plans; and (d) business operations or financial information that is commercially sensitive. Documents or information so classified by a producing party shall bear the designation "HIGHLY SENSITIVE PROTECTED MATERIALS PROVIDED PURSUANT TO PROTECTIVE ORDER ISSUED IN DOCKET NO. _____" (or words to this effect) and shall be consecutively Bates Stamped. The provisions of this Protective Order pertaining to Protected Materials also apply to Highly Sensitive Protected Materials, except where this Protective Order provides for additional protections for Highly Sensitive Protected Materials. In particular, the procedures herein for challenging the producing party's designation of information as Protected Materials also apply to information that a producing party designates as Highly Sensitive Protected Materials.

7.  **Restrictions on Copying and Inspection of Highly Sensitive Protected Material**. Except as expressly provided herein, only one copy may be made of any Highly Sensitive Protected Materials except that additional copies may be made to have sufficient copies for introduction of the material into the evidentiary record if the material is to be offered for admission into the record. The Reviewing Party shall maintain a record of all copies made of Highly Sensitive Protected Material and shall send a duplicate of the record to the producing party when the copy or copies are made. The record shall specify the location and the person possessing the copy. Highly Sensitive Protected Material shall be made available for inspection only at the location or locations provided by the producing party, except as specified by Paragraph 9. Limited notes may be made of Highly Sensitive Protected Materials, and such notes shall themselves be treated as Highly Sensitive Protected Materials unless such notes are limited to a description of the document and a

---

[2] Public Utility Regulatory Act, Tex. Util. Code Ann. §§ 11.001-66.016 (West 2016 & Supp. 2016) (PURA).

general characterization of its subject matter in a manner that does not state any substantive information contained in the document.

8.    **Restricting Persons Who May Have Access to Highly Sensitive Protected Material**. With the exception of Commission Staff, the Office of the Attorney General (OAG), and the Office of Public Utility Counsel (OPC), and except as provided herein, the Reviewing Representatives for the purpose of access to Highly Sensitive Protected Materials may be persons who are (a) outside counsel for the Reviewing Party, (b) outside consultants for the Reviewing Party working under the direction of Reviewing Party's counsel, or (c) employees of the Reviewing Party working with and under the direction of Reviewing Party's counsel who have been authorized by the presiding officer to review Highly Sensitive Protected Materials. The Reviewing Party shall limit the number of Reviewing Representatives that review Highly Sensitive Protected Materials to the minimum number of persons necessary. The Reviewing Party is under a good faith obligation to limit access to each portion of any Highly Sensitive Protected Materials to two Reviewing Representatives whenever possible. Reviewing Representatives for Commission Staff, OAG, and OPC, for the purpose of access to Highly Sensitive Protected Materials, shall consist of their respective counsel of record in this proceeding and associated attorneys, paralegals, economists, statisticians, accountants, consultants, or other persons employed or retained by them and directly engaged in these proceedings.

9.    **Copies Provided of Highly Sensitive Protected Material**. A producing party shall provide one copy of Highly Sensitive Protected Materials specifically requested by the Reviewing Party to the person designated by the Reviewing Party who must be a person authorized to review Highly Sensitive Protected Material under Paragraph 8. Representatives of the Reviewing Party who are authorized to view Highly Sensitive Protected Material may review the copy of Highly Sensitive Protected Materials at the office of the Reviewing Party's representative designated to receive the information. Any Highly Sensitive Protected Materials provided to a Reviewing Party may not be copied except as provided in Paragraph 7. The restrictions contained herein do not apply to Commission Staff, OPC, and the OAG when the OAG is representing a party to the proceeding.

10.   **Procedures in Paragraphs 10-14 Apply to Commission Staff, OPC, and the OAG and Control in the Event of Conflict**.  The procedures in Paragraphs 10 through 14 apply to responses to requests for documents or information that the producing party designates as Highly Sensitive Protected Materials and provides to Commission Staff, OPC, and the OAG in recognition of their purely public functions.  To the extent the requirements of Paragraphs 10 through 14 conflict with any requirements contained in other paragraphs of this Protective Order, the requirements of these Paragraphs shall control.

11.   **Copy of Highly Sensitive Protected Material to be Provided to Commission Staff, OPC and the OAG**.  When, in response to a request for information by a Reviewing Party, the producing party makes available for review documents or information claimed to be Highly Sensitive Protected Materials, the producing party shall also deliver one copy of the Highly Sensitive Protected Materials to the Commission Staff, OPC (if OPC is a party), and the OAG (if the OAG is representing a party) in Austin, Texas.  Provided however, that in the event such Highly Sensitive Protected Materials are voluminous, the materials will be made available for review by Commission Staff, OPC (if OPC is a party), and the OAG (if the OAG is representing a party) at the designated office in Austin, Texas.  The Commission Staff, OPC (if OPC is a party) and the OAG (if the OAG is representing a party) may request such copies as are necessary of such voluminous material under the copying procedures specified herein.

12.   **Delivery of the Copy of Highly Sensitive Protected Material to Commission Staff and Outside Consultants**.  The Commission Staff, OPC (if OPC is a party), and the OAG (if the OAG is representing a party) may deliver the copy of Highly Sensitive Protected Materials received by them to the appropriate members of their staff for review, provided such staff members first sign the certification specified by Paragraph 15.  After obtaining the agreement of the producing party, Commission Staff, OPC (if OPC is a party), and the OAG (if the OAG is representing a party) may deliver the copy of Highly Sensitive Protected Materials received by it to the agreed, appropriate members of their outside consultants for review, provided such outside consultants first sign the certification in Attachment A.

13.    **Restriction on Copying by Commission Staff, OPC and the OAG.**  Except as allowed by Paragraph 7, Commission Staff, OPC and the OAG may not make additional copies of the Highly Sensitive Protected Materials furnished to them unless the producing party agrees in writing otherwise, or, upon a showing of good cause, the presiding officer directs otherwise.  Commission Staff, OPC, and the OAG may make limited notes of Highly Sensitive Protected Materials furnished to them, and all such handwritten notes will be treated as Highly Sensitive Protected Materials as are the materials from which the notes are taken.

14.    **Public Information Requests**.  In the event of a request for any of the Highly Sensitive Protected Materials under the Public Information Act, an authorized representative of the Commission, OPC, or the OAG may furnish a copy of the requested Highly Sensitive Protected Materials to the Open Records Division at the OAG together with a copy of this Protective Order after notifying the producing party that such documents are being furnished to the OAG.  Such notification may be provided simultaneously with the delivery of the Highly Sensitive Protected Materials to the OAG.

15.    **Required Certification**.  Each person who inspects the Protected Materials shall, before such inspection, agree in writing to the following certification found in Attachment A to this Protective Order:

> I certify my understanding that the Protected Materials are provided to me pursuant to the terms and restrictions of the Protective Order in this docket, and that I have been given a copy of it and have read the Protective Order and agree to be bound by it.  I understand that the contents of the Protected Materials, any notes, memoranda, or any other form of information regarding or derived from the Protected Materials shall not be disclosed to anyone other than in accordance with the Protective Order and unless I am an employee of the Commission or OPC shall be used only for the purpose of the proceeding in Docket No. _____.  I acknowledge that the obligations imposed by this certification are pursuant to such Protective Order.  Provided, however, if the information contained in the Protected Materials is obtained from independent public sources, the understanding stated herein shall not apply.

In addition, Reviewing Representatives who are permitted access to Highly Sensitive Protected Material under the terms of this Protective Order shall, before inspection of such

material, agree in writing to the following certification found in Attachment A to this Protective Order:

> I certify that I am eligible to have access to Highly Sensitive Protected Material under the terms of the Protective Order in this docket.

The Reviewing Party shall provide a copy of each signed certification to Counsel for the producing party and serve a copy upon all parties of record.

16. **Disclosures between Reviewing Representatives and Continuation of Disclosure Restrictions after a Person is no Longer Engaged in the Proceeding**. Any Reviewing Representative may disclose Protected Materials, other than Highly Sensitive Protected Materials, to any other person who is a Reviewing Representative provided that, if the person to whom disclosure is to be made has not executed and provided for delivery of a signed certification to the party asserting confidentiality, that certification shall be executed prior to any disclosure. A Reviewing Representative may disclose Highly Sensitive Protected Material to other Reviewing Representatives who are permitted access to such material and have executed the additional certification required for persons who receive access to Highly Sensitive Protected Material. In the event that any Reviewing Representative to whom Protected Materials are disclosed ceases to be engaged in these proceedings, access to Protected Materials by that person shall be terminated and all notes, memoranda, or other information derived from the protected material shall either be destroyed or given to another Reviewing Representative of that party who is authorized pursuant to this Protective Order to receive the protected materials. Any person who has agreed to the foregoing certification shall continue to be bound by the provisions of this Protective Order so long as it is in effect, even if no longer engaged in these proceedings.

17. **Producing Party to Provide One Copy of Certain Protected Material and Procedures for Making Additional Copies of Such Materials**. Except for Highly Sensitive Protected Materials, which shall be provided to the Reviewing Parties pursuant to Paragraphs 9, and voluminous Protected Materials, the producing party shall provide a Reviewing Party one copy of the Protected Materials upon receipt of the signed certification described in Paragraph 15. Except for Highly Sensitive Protected Materials, a Reviewing Party may make further copies of Protected Materials for use in this proceeding pursuant to this

Protective Order, but a record shall be maintained as to the documents reproduced and the number of copies made, and upon request the Reviewing Party shall provide the party asserting confidentiality with a copy of that record.

18.  **Procedures Regarding Voluminous Protected Materials**.  P.U.C. PROC. R. 22.144(h) will govern production of voluminous Protected Materials.   Voluminous Protected Materials will be made available in the producing party's voluminous room, in Austin, Texas, or at a mutually agreed upon location, Monday through Friday, 9:00 a.m. to 5:00 p.m. (except on state or Federal holidays), and at other mutually convenient times upon reasonable request.

19.  **Reviewing Period Defined**.  The Protected Materials may be reviewed only during the Reviewing Period, which shall commence upon entry of this Protective Order and continue until the expiration of the Commission's plenary jurisdiction. The Reviewing Period shall reopen if the Commission regains jurisdiction due to a remand as provided by law. Protected materials that are admitted into the evidentiary record or accompanying the evidentiary record as offers of proof may be reviewed throughout the pendency of this proceeding and any appeals.

20.  **Procedures for Making Copies of Voluminous Protected Materials**.  Other than Highly Sensitive Protected Materials, Reviewing Parties may take notes regarding the information contained in voluminous Protected Materials made available for inspection or they may make photographic, mechanical or electronic copies of the Protected Materials, subject to the conditions in this Protective Order; provided, however, that before photographic, mechanical or electronic copies may be made, the Reviewing Party seeking photographic, mechanical or electronic copies must provide written confirmation of the receipt of copies listed on Attachment B of this Protective Order identifying each piece of Protected Materials or portions thereof the Reviewing Party will need.

21.  **Protected Materials to be Used Solely for the Purposes of These Proceedings**.  All Protected Materials shall be made available to the Reviewing Parties and their Reviewing Representatives solely for the purposes of these proceedings.  Access to the Protected Materials may not be used in the furtherance of any other purpose, including, without limitation: (a) any other pending or potential proceeding involving any claim, complaint,

or other grievance of whatever nature, except appellate review proceedings that may arise from or be subject to these proceedings; or (b) any business or competitive endeavor of whatever nature. Because of their statutory regulatory obligations, these restrictions do not apply to Commission Staff or OPC.

22.   **Procedures for Confidential Treatment of Protected Materials and Information Derived from Those Materials**. Protected Materials, as well as a Reviewing Party's notes, memoranda, or other information regarding or derived from the Protected Materials are to be treated confidentially by the Reviewing Party and shall not be disclosed or used by the Reviewing Party except as permitted and provided in this Protective Order. Information derived from or describing the Protected Materials shall be maintained in a secure place and shall not be placed in the public or general files of the Reviewing Party except in accordance with the provisions of this Protective Order. A Reviewing Party must take all reasonable precautions to insure that the Protected Materials including notes and analyses made from Protected Materials that disclose Protected Materials are not viewed or taken by any person other than a Reviewing Representative of a Reviewing Party.

23.   **Procedures for Submission of Protected Materials**. If a Reviewing Party tenders for filing any Protected Materials, including Highly Sensitive Protected Materials, or any written testimony, exhibit, brief, motion or other type of pleading or other submission at the Commission or before any other judicial body that quotes from Protected Materials or discloses the content of Protected Materials, the confidential portion of such submission shall be filed and served in sealed envelopes or other appropriate containers endorsed to the effect that they contain Protected Material or Highly Sensitive Protected Material and are sealed pursuant to this Protective Order. If filed at the Commission, such documents shall be marked "PROTECTED MATERIAL" and shall be filed under seal with the presiding officer and served under seal to the counsel of record for the Reviewing Parties. The presiding officer may subsequently, on his/her own motion or on motion of a party, issue a ruling respecting whether or not the inclusion, incorporation or reference to Protected Materials is such that such submission should remain under seal. If filing before a judicial body, the filing party: (a) shall notify the party which provided the information within sufficient time so that the producing party may seek a temporary sealing order; and (b) shall otherwise follow the procedures in Rule 76a, Texas Rules of Civil Procedure.

24.  **Maintenance of Protected Status of Materials during Pendency of Appeal of Order Holding Materials are not Protected Materials**.  In the event that the presiding officer at any time in the course of this proceeding finds that all or part of the Protected Materials are not confidential or proprietary, by finding, for example, that such materials have entered the public domain or materials claimed to be Highly Sensitive Protected Materials are only Protected Materials, those materials shall nevertheless be subject to the protection afforded by this Protective Order for three (3) full working days, unless otherwise ordered, from the date the party asserting confidentiality receives notice of the presiding officer's order.  Such notification will be by written communication.  This provision establishes a deadline for appeal of a presiding officer's order to the Commission.  In the event an appeal to the Commissioners is filed within those three (3) working days from notice, the Protected Materials shall be afforded the confidential treatment and status provided in this Protective Order during the pendency of such appeal.  Neither the party asserting confidentiality nor any Reviewing Party waives its right to seek additional administrative or judicial remedies after the Commission's denial of any appeal.

25.  **Notice of Intent to Use Protected Materials or Change Materials Designation**.  Parties intending to use Protected Materials shall notify the other parties prior to offering them into evidence or otherwise disclosing such information into the record of the proceeding. During the pendency of Docket No. _____ at the Commission, in the event that a Reviewing Party wishes to disclose Protected Materials to any person to whom disclosure is not authorized by this Protective Order, or wishes to have changed the designation of certain information or material as Protected Materials by alleging, for example, that such information or material has entered the public domain, such Reviewing Party shall first file and serve on all parties written notice of such proposed disclosure or request for change in designation, identifying with particularity each of such Protected Materials.  A Reviewing Party shall at any time be able to file a written motion to challenge the designation of information as Protected Materials.

26.  **Procedures to Contest Disclosure or Change in Designation**.  In the event that the party asserting confidentiality wishes to contest a proposed disclosure or request for change in designation, the party asserting confidentiality shall file with the appropriate presiding officer its objection to a proposal, with supporting affidavits, if any, within five (5) working

days after receiving such notice of proposed disclosure or change in designation. Failure of the party asserting confidentiality to file such an objection within this period shall be deemed a waiver of objection to the proposed disclosure or request for change in designation. Within five (5) working days after the party asserting confidentiality files its objection and supporting materials, the party challenging confidentiality may respond. Any such response shall include a statement by counsel for the party challenging such confidentiality that he or she has reviewed all portions of the materials in dispute and, without disclosing the Protected Materials, a statement as to why the Protected Materials should not be held to be confidential under current legal standards, or that the party asserting confidentiality for some reason did not allow such counsel to review such materials. If either party wishes to submit the material in question for in camera inspection, it shall do so no later than five (5) working days after the party challenging confidentiality has made its written filing.

27.    **Procedures for Presiding Officer Determination Regarding Proposed Disclosure or Change in Designation**. If the party asserting confidentiality files an objection, the appropriate presiding officer will determine whether the proposed disclosure or change in designation is appropriate. Upon the request of either the producing or Reviewing Party or upon the presiding officer's own initiative, the presiding officer may conduct a prehearing conference. The burden is on the party asserting confidentiality to show that such proposed disclosure or change in designation should not be made. If the presiding officer determines that such proposed disclosure or change in designation should be made, disclosure shall not take place earlier than three (3) full working days after such determination unless otherwise ordered. No party waives any right to seek additional administrative or judicial remedies concerning such presiding officer's ruling.

28.    **Maintenance of Protected Status during Periods Specified for Challenging Various Orders**. Any party electing to challenge, in the courts of this state, a Commission or presiding officer determination allowing disclosure or a change in designation shall have a period of ten (10) days from: (a) the date of an unfavorable Commission order; or (b) if the Commission does not rule on an appeal of an interim order, the date an appeal of an interim order to the Commission is overruled by operation of law, to obtain a favorable ruling in state district court. Any party challenging a state district court determination allowing

disclosure or a change in designation shall have an additional period of ten (10) days from the date of the order to obtain a favorable ruling from a state appeals court. Finally, any party challenging a determination of a state appeals court allowing disclosure or a change in designation shall have an additional period of ten (10) days from the date of the order to obtain a favorable ruling from the state supreme court, or other appellate court. All Protected Materials shall be afforded the confidential treatment and status provided for in this Protective Order during the periods for challenging the various orders referenced in this paragraph. For purposes of this paragraph, a favorable ruling of a state district court, state appeals court, Supreme Court or other appellate court includes any order extending the deadlines in this paragraph.

29.    **Other Grounds for Objection to Use of Protected Materials Remain Applicable**. Nothing in this Protective Order shall be construed as precluding any party from objecting to the use of Protected Materials on grounds other than confidentiality, including the lack of required relevance. Nothing in this Protective Order constitutes a waiver of the right to argue for more disclosure, provided, however, that unless the Commission or a court orders such additional disclosure, all parties will abide by the restrictions imposed by the Protective Order.

30.    **Protection of Materials from Unauthorized Disclosure**. All notices, applications, responses or other correspondence shall be made in a manner which protects Protected Materials from unauthorized disclosure.

31.    **Return of Copies of Protected Materials and Destruction of Information Derived from Protected Materials**. Following the conclusion of these proceedings, each Reviewing Party must, no later than thirty (30) days following receipt of the notice described below, return to the party asserting confidentiality all copies of the Protected Materials provided by that party pursuant to this Protective Order and all copies reproduced by a Reviewing Party, and counsel for each Reviewing Party must provide to the party asserting confidentiality a letter by counsel that, to the best of his or her knowledge, information, and belief, all copies of notes, memoranda, and other documents regarding or derived from the Protected Materials (including copies of Protected Materials) that have not been so returned, if any, have been destroyed, other than notes, memoranda, or other

documents which contain information in a form which, if made public, would not cause disclosure of the substance of Protected Materials. As used in this Protective Order, "conclusion of these proceedings" refers to the exhaustion of available appeals, or the running of the time for the making of such appeals, as provided by applicable law. If, following any appeal, the Commission conducts a remand proceeding, then the "conclusion of these proceedings" is extended by the remand to the exhaustion of available appeals of the remand, or the running of the time for making such appeals of the remand, as provided by applicable law. Promptly following the conclusion of these proceedings, counsel for the party asserting confidentiality will send a written notice to all other parties, reminding them of their obligations under this Paragraph. Nothing in this Paragraph shall prohibit counsel for each Reviewing Party from retaining two (2) copies of any filed testimony, brief, application for rehearing, hearing exhibit or other pleading which refers to Protected Materials provided that any such Protected Materials retained by counsel shall remain subject to the provisions of this Protective Order.

32. **Applicability of Other Law.** This Protective Order is subject to the requirements of the Public Information Act, the Open Meetings Act,[3] the Texas Securities Act[4] and any other applicable law, provided that parties subject to those acts will notify the party asserting confidentiality, if possible under those acts, prior to disclosure pursuant to those acts. Such notice shall not be required where the Protected Materials are sought by governmental officials authorized to conduct a criminal or civil investigation that relates to or involves the Protected Materials, and those governmental officials aver in writing that such notice could compromise the investigation and that the governmental entity involved will maintain the confidentiality of the Protected Materials.

33. **Procedures for Release of Information under Order.** If required by order of a governmental or judicial body, the Reviewing Party may release to such body the confidential information required by such order; provided, however, that: (a) the Reviewing Party shall notify the producing party of the order requiring the release of such information within five (5) calendar days of the date the Reviewing Party has notice of the

[3] TEX. GOV'T CODE ANN. § 551.001-551.146 (West 2012 & Supp. 2015).

[4] TEX. REV. CIV. STAT. ANN. arts. 581-1 to 581-43 (West 2010 & Supp. 2013).

order; (b) the Reviewing Party shall notify the producing party at least five (5) calendar days in advance of the release of the information to allow the producing party to contest any release of the confidential information; and (c) the Reviewing Party shall use its best efforts to prevent such materials from being disclosed to the public. The terms of this Protective Order do not preclude the Reviewing Party from complying with any valid and enforceable order of a state or federal court with competent jurisdiction specifically requiring disclosure of Protected Materials earlier than contemplated herein. The notice specified in this section shall not be required where the Protected Materials are sought by governmental officials authorized to conduct a criminal or civil investigation that relates to or involves the Protected Materials, and those governmental officials aver in writing that such notice could compromise the investigation and that the governmental entity involved will maintain the confidentiality of the Protected Materials.

34.    **Best Efforts Defined**.  The term "best efforts" as used in the preceding paragraph requires that the Reviewing Party attempt to ensure that disclosure is not made unless such disclosure is pursuant to a final order of a Texas governmental or Texas judicial body, the written opinion of the Texas Attorney General sought in compliance with the Public Information Act, or the request of governmental officials authorized to conduct a criminal or civil investigation that relates to or involves the Protected Materials. The Reviewing Party is not required to delay compliance with a lawful order to disclose such information but is simply required to timely notify the party asserting confidentiality, or its counsel, that it has received a challenge to the confidentiality of the information and that the Reviewing Party will either proceed under the provisions of §552.301 of the Public Information Act, or intends to comply with the final governmental or court order. Provided, however, that no notice is required where the Protected Materials are sought by governmental officials authorized to conduct a criminal or civil investigation that relates to or involves the Protected Materials, and those governmental officials aver in writing that such notice could compromise the investigation and that the governmental entity involved will maintain the confidentiality of the Protected Materials.

35.    **Notify Defined**.  "Notify" for purposes of Paragraphs 32, 33 and 34 means written notice to the party asserting confidentiality at least five (5) calendar days prior to release; including when a Reviewing Party receives a request under the Public Information Act.

However, the Commission, OAG, or OPC may provide a copy of Protected Materials to the Open Records Division of the OAG as provided herein.

36.  **Requests for Non-Disclosure**.   If the producing party asserts that the requested information should not be disclosed at all, or should not be disclosed to certain parties under the protection afforded by this Protective Order, the producing party shall tender the information for in camera review to the presiding officer within ten (10) calendar days of the request. At the same time, the producing party shall file and serve on all parties its argument, including any supporting affidavits, in support of its position of non-disclosure. The burden is on the producing party to establish that the material should not be disclosed. The producing party shall serve a copy of the information under the classification of Highly Sensitive Protected Material to all parties requesting the information that the producing party has not alleged should be prohibited from reviewing the information.

Parties wishing to respond to the producing party's argument for non-disclosure shall do so within five working days.  Responding parties should explain why the information should be disclosed to them, including why disclosure is necessary for a fair adjudication of the case if the material is determined to constitute a trade secret.  If the presiding officer finds that the information should be disclosed as Protected Material under the terms of this Protective Order, the presiding officer shall stay the order of disclosure for such period of time as the presiding officer deems necessary to allow the producing party to appeal the ruling to the Commission.

37.  **Sanctions Available for Abuse of Designation**.   If the presiding officer finds that a producing party unreasonably designated material as Protected Material or as Highly Sensitive Protected Material, or unreasonably attempted to prevent disclosure pursuant to Paragraph 36, the presiding officer may sanction the producing party pursuant to P.U.C. PROC. R. 22.161.

38.  **Modification of Protective Order**.   Each party shall have the right to seek changes in this Protective Order as appropriate from the presiding officer.

39.  **Breach of Protective Order**.   In the event of a breach of the provisions of this Protective Order, the producing party, if it sustains its burden of proof required to establish the right to injunctive relief, shall be entitled to an injunction against such breach without any

requirements to post bond as a condition of such relief. The producing party shall not be relieved of proof of any element required to establish the right to injunctive relief. In addition to injunctive relief, the producing party shall be entitled to pursue any other form of relief to which it is entitled.

## ATTACHMENT A

### Protective Order Certification

I certify my understanding that the Protected Materials are provided to me pursuant to the terms and restrictions of the Protective Order in this docket and that I have received a copy of it and have read the Protective Order and agree to be bound by it.  I understand that the contents of the Protected Materials, any notes, memoranda, or any other form of information regarding or derived from the Protected Materials shall not be disclosed to anyone other than in accordance with the Protective Order and unless I am an employee of the Commission or OPC shall be used only for the purpose of the proceeding in Docket No. _____.  I acknowledge that the obligations imposed by this certification are pursuant to such Protective Order.  Provided, however, if the information contained in the Protected Materials is obtained from independent public sources, the understanding stated here shall not apply.

Signature _____   Party Represented _____

Printed Name _____   Date _____

I certify that I am eligible to have access to Highly Sensitive Protected Material under the terms of the Protective Order in this docket.

Signature _____   Party Represented _____

Printed Name _____   Date _____

**ATTACHMENT B**

I request to view/copy the following documents:

| Document Requested | # of Copies | Non-Confidential | Protected Materials and/or Highly Sensitive Protected Materials |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

_____          _____
Signature                                                    Party Represented


_____          _____
Printed Name                                             Date

49

PUC DOCKET NO. _____

| | | |
|---|---|---|
| JOINT REPORT AND APPLICATION | § | |
| OF TEXAS TRANSMISSION | § | |
| HOLDINGS CORPORATION AND | § | PUBLIC UTILITY COMMISSION |
| NEXTERA ENERGY, INC. FOR | § | |
| REGULATORY APPROVALS | § | OF TEXAS |
| PURSUANT TO PURA §§ 14.101, | § | |
| 39.262 AND 39.915 | § | |

DIRECT TESTIMONY

AND EXHIBITS

OF

MARK HICKSON

ON BEHALF OF

NEXTERA ENERGY, INC.

July 28, 2017

## INDEX TO THE DIRECT TESTIMONY OF
## MARK HICKSON, WITNESS FOR
## NEXTERA ENERGY, INC.

| | | |
|---|---|---|
| I. | INTRODUCTION AND PURPOSE | 1 |
| II. | OVERVIEW OF NEXTERA ENERGY AND ONCOR | 3 |
| III. | SUMMARY OF THE PROPOSED TRANSACTION AND REQUESTED RELIEF | 7 |
| IV. | COMMISSION REVIEW OF THE PROPOSED TRANSACTION IS NOT REQUIRED UNDER PURA § 14.101, 39.262 OR 39.915 | 9 |
| V. | IF THE COMMISSION ELECTS TO EXERCISE JURISDICTION OVER THE PROPOSED TRANSACTION, THE TRANSACTION IS IN THE PUBLIC INTEREST AND SHOULD BE APPROVED | 12 |
| VI. | CONCLUSIONS | 17 |

## LIST OF EXHIBITS

Exhibit MH-1    TTHC Merger Agreement (Voluminous – Provided on CD)
Exhibit MH-2    Oncor LLC Agreement (Voluminous – Provided on CD)

1    **DIRECT TESTIMONY OF MARK HICKSON**

2    **I.    INTRODUCTION AND PURPOSE**

3    **Q.    PLEASE STATE YOUR NAME AND BUSINESS ADDRESS.**

4    A.    My name is Mark Hickson. My business address is 700 Universe Boulevard, Juno

5    Beach, Florida 33408.

6    **Q.    PLEASE BRIEFLY DESCRIBE YOUR PROFESSIONAL EXPERIENCE**

7    **AND EDUCATIONAL BACKGROUND.**

8    A.    I am employed by NextEra Energy, Inc. ("NextEra Energy") and hold the title of

9    Executive Vice President of Corporate Development, Strategy, Quality, and

10    Integration. Prior to joining NextEra Energy in 2012, I served as Managing

11    Director in the Global Mergers and Acquisitions Group at Merrill Lynch & Co. I

12    hold a Bachelor of Science degree in Aerospace Engineering from Texas A&M

13    University and a Master of Business Administration degree from Columbia

14    University.

15    **Q.    ON WHOSE BEHALF ARE YOU SUBMITTING THIS TESTIMONY?**

16    A.    I am testifying on behalf of NextEra Energy in support of the Joint Report and

17    Application for Regulatory Approvals ("Application") of Texas Transmission

18    Holdings Corporation ("TTHC") and NextEra Energy (collectively "Applicants").

19    This Application involves NextEra Energy's proposed indirect acquisition of the

20    19.75 percent minority interest in Oncor Electric Delivery Company LLC

21    ("Oncor") that is indirectly held by TTHC (the "Proposed Transaction").

1    Q.    **WHAT IS THE PURPOSE OF YOUR TESTIMONY IN THIS**
2          **PROCEEDING?**

3    A.    The purpose of my testimony is to provide an overview of NextEra Energy and
4          Oncor, discuss the Proposed Transaction, and describe the specific relief requested.
5          With regard to the relief requested, I first explain the facts supporting the requested
6          determination by the Public Utility Commission of Texas ("Commission") that
7          approval of the Proposed Transaction is not required under PURA §§ 39.262(o) or
8          39.915. I also explain why the reporting requirement under PURA § 14.101 is not
9          implicated by the Proposed Transaction.  These facts support Applicants' request
10         that the Commission issue an order to disclaim jurisdiction over the Proposed
11         Transaction.   Alternatively, if the Commission exercises jurisdiction over the
12         Application, I explain that the Proposed Transaction meets the statutory standards
13         for approval and support the Applicants' request for a favorable public interest
14         determination under PURA §§ 14.101, 39.262(o) and 39.915.[1]

15   Q.    **HOW IS THE REMAINDER OF YOUR TESTIMONY ORGANIZED?**

16   A.    Section II of my testimony provides a brief description of NextEra Energy and
17         Oncor.  In Section III, I explain the details of the Proposed Transaction and the
18         requested relief that Applicants seek from the Commission.  Section IV explains
19         the basis for my opinion that the Proposed Transaction is not subject to the reporting
20         set forth in PURA §§ 14.101 or the approval requirements in PURA §§ 39.262(o)
21         and 39.915. Section V of my testimony demonstrates that the Proposed Transaction

---

[1] As discussed in Section IV of the Application, NextEra Energy expressly reserves and does not waive its right to challenge the Commission's jurisdictional authority over the Proposed Transaction under PURA §§ 14.101, 39.262(l)-(m), and 39.915.

1    satisfies the public interest criteria set forth in the relevant statutes and supports a

2    favorable public interest determination by the Commission should the Commission

3    exercise jurisdiction over the Application.    Section VI provides my

4    recommendations and conclusions.

5    ## II.  OVERVIEW OF NEXTERA ENERGY AND ONCOR

6  **Q.   PLEASE DESCRIBE NEXTERA ENERGY AND ITS INDUSTRY**

7  **EXPERIENCE.**

8  A.    NextEra Energy (NYSE: NEE) is a Fortune 200 company with consolidated 2016

9    revenues of approximately $16.2 billion, total market equity capitalization of

10    approximately $68 billion, and total assets of approximately $90 billion.  NextEra

11    Energy has approximately 14,700 employees in 30 states and Canada, including

12    Texas.  NextEra Energy's practices of careful financial stewardship are reflected in

13    its strong investment grade credit ratings:  "A-" at Standard and Poor's and Fitch

14    Ratings, and "Baa1" at Moody's Investors Service.

15          NextEra Energy has a 92-year history in the electric utility industry and,

16    like Oncor, has extensive experience in cost effectively constructing, owning,

17    operating, and maintaining electric utility systems.  NextEra Energy subsidiaries

18    own and operate approximately 800 substations and 76,700 miles of transmission

19    and distribution lines. NextEra Energy's principal utility subsidiary, Florida Power

20    & Light Company ("FPL"), serves more than 4.9 million retail customers in Florida

21    and is one of the largest rate-regulated electric utilities in the nation.  FPL is one of

22    the most reliable among all large U.S. utilities and the most reliable among Florida

23    investor-owned utilities.

1        NextEra Energy's other principal subsidiary, NextEra Energy Resources,

2        LLC ("NEER"), primarily develops, owns, and operates electric generation

3        facilities.  NEER is one of the largest wholesale generators in the U.S., with

4        approximately 20 gigawatts of generating capacity across 29 states, Canada and

5        Spain.  NextEra Energy, principally through NEER and FPL, owns and operates

6        approximately 45.9 gigawatts of electric generating capacity, including nuclear,

7        gas, and renewable energy resources.

8        NextEra Energy has had a meaningful presence in Texas since 1999.

9        NextEra Energy has been a substantial contributor to the Texas economy, having

10        invested $8.6 billion in transmission, power generation, gas pipelines, and other

11        businesses in the state.  NextEra Energy's subsidiary Lone Star Transmission, LLC

12        is a transmission service provider that constructed and, since 2013, has owned and

13        operated 330 linear miles of 345 kV lines and related transmission facilities in the

14        Electric Reliability Council of Texas, Inc. ("ERCOT").  NextEra Energy provides

15        hundreds of competitive, well-paying jobs across Texas and pays over one hundred

16        million dollars annually in payroll, property taxes, and lease payments to

17        landowners in Texas.

18  **Q.**    **PLEASE DESCRIBE ONCOR AND ITS OPERATIONS.**

19  A.    Oncor is the largest transmission and distribution utility in Texas.  Oncor transmits

20        and distributes electricity to more than 3.4 million points of delivery representing

21        approximately ten million people.  Oncor serves over 400 cities across 91 counties

22        throughout large portions of West, North, Central, and East Texas within the

23        ERCOT control area.  Oncor has approximately 3,700 employees.

1         To provide electric delivery service, Oncor owns, operates, and maintains

2         one of the largest integrated electric systems in the United States and the largest in

3         Texas.   Oncor's facilities include approximately 16,000 circuit miles of

4         transmission lines, more than 1,000 substations and switching stations, and over

5         100,000 miles of distribution lines within ERCOT.  Oncor also provides limited

6         open access wholesale transmission and interconnection service under tariffs on file

7         with the Federal Energy Regulatory Commission.

8 **Q.     WHAT IS ONCOR'S CURRENT OWNERSHIP STRUCTURE?**

9 A.     In its current structure and ownership, Oncor is a Delaware limited liability

10         company that is: (1) 80.03 percent owned by Oncor Electric Delivery Holdings

11         Company LLC ("Oncor Holdings"), a Delaware limited liability company, which

12         is wholly owned by Energy Future Intermediate Holding Company LLC, which in

13         turn is a wholly owned subsidiary of Energy Future Holdings Corp. ("EFH");

14         (2) 19.75 percent owned by Texas Transmission Investment LLC ("TTI"), which

15         is wholly owned by TTHC;[2] and (3) 0.22 percent owned by Oncor Management

16         Investment LLC.[3]

---

[2] TTI is wholly owned by TTHC, which is owned by Cheyne Walk Investment Pte Ltd (49.5 percent), BPC Health Corporation and Borealis Power Holdings Inc. (49.5 percent), and Hunt Strategic Utility Investment LLC (1 percent).

[3] Oncor Management Investment LLC is an entity owned by certain members of the management and directors of Oncor.

---

Mark Hickson – Direct Testimony
NextEra Energy, Inc.

1    Q.   **WHAT IS THE CURRENT STATUS OF ONCOR'S PARENT COMPANY,**

2         **EFH?**

3    A.   On April 29, 2014, EFH and 70 of its affiliates filed voluntary petitions for relief

4         under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court.[4]

5         The Chapter 11 cases are jointly administered under Case Number 14-10979 before

6         the Honorable Christopher Sontchi. Neither Oncor nor Oncor Holdings is a Debtor

7         in the Bankruptcy Cases or any other bankruptcy case.

8    Q.   **IS    THE    PROPOSED    TRANSACTION    AFFECTED    BY    EFH'S**

9         **OWNERSHIP   INTEREST   IN   ONCOR   OR   DEPENDENT   UPON   THE**

10        **RESOLUTION OF EFH'S BANKRUPTCY FILING?**

11   A.   No.   The Proposed Transaction is a straightforward financial transaction that

12        involves only TTHC's 19.75 percent interest in Oncor. The Proposed Transaction

13        is not affected by or dependent on anything having to do with EFH's approximately

14        80 percent indirect interest in Oncor or the pending EFH bankruptcy and would not

15        affect a future transaction for EFH's 80 percent indirect interest.

16   Q.   **WILL  THE  PROPOSED  TRANSACTION  HAVE  ANY  IMPACT  ON**

17        **ONCOR'S EXISTING RING FENCE?**

18   A.   No. In PUC Docket No. 34077, *Joint Report and Application of Oncor Electric*

19        *Delivery Company and Texas Energy Future Holdings Limited Partnership*

20        *Pursuant to PURA §14.101*, the parties seeking to purchase then TXU Electric

21        Delivery filed a stipulation with the Commission providing conditions on which

22        the purchase would occur, which were approved by the Commission in its order on

---

[4] *See In re Energy Future Holdings Corp.*, No. 14-10979 (CSS), Docket No. 1 (Bankr. D. Del. Apr. 29, 2014).

1    rehearing and became the basis of the current ring fence under which Oncor

2    operates.   Approval of the Proposed Transaction will not change or eliminate

3    Oncor's current ring-fence protections.

4    **III.  SUMMARY OF THE PROPOSED TRANSACTION**
5    **AND REQUESTED RELIEF**

6  Q.   **PLEASE DESCRIBE THE PROPOSED TRANSACTION.**

7  A.   The Proposed Transaction is a privately negotiated agreement that provides for

8      NextEra Energy to indirectly acquire the 19.75 percent interest in Oncor held

9      indirectly by TTHC.   The proposed acquisition of the 19.75 percent interest in

10     Oncor will occur pursuant to an Agreement and Plan of Merger ("TTHC Merger

11     Agreement"), by and among TTHC, Borealis Power Holdings Inc., BPC Health

12     Corporation, Cheyne Walk Investment Pte Ltd, NextEra Energy, and a NextEra

13     Energy affiliate, WSS Acquisition Company.  Under the TTHC Merger Agreement,

14     WSS  Acquisition  Company  will  merge  with  and  into  TTHC,  with  TTHC

15     continuing as the surviving company.  As a result, NextEra Energy will indirectly

16     acquire TTHC's wholly owned subsidiary, TTI, and TTI's 19.75 percent minority

17     interest in Oncor.  The TTHC Merger Agreement is included as Exhibit MH-1 to

18     my Direct Testimony.

19         If  approved,  the  Proposed  Transaction  will  provide  Oncor  with  a  new

20     minority owner, NextEra Energy, which will hold the same voting rights currently

21     held by TTI while also offering the financial backing of an "A-" rated, $90 billion,

22     traditional utility holding company.

1    **Q.**    **PLEASE DESCRIBE THE FINANCIAL ASPECTS OF THE PROPOSED**

2           **TRANSACTION.**

3    A.    Upon the close of the merger transaction with TTHC, NextEra Energy will fund

4           approximately $2.4 billion in cash, primarily as merger consideration to the TTHC

5           stockholders for their shares of TTHC, with the remainder to repay any existing

6           debt that currently resides at TTHC or TTI.

7    **Q.**    **WILL ANY ONCOR CERTIFICATES OF CONVENIENCE AND**

8           **NECESSITY ("CCNS") BE TRANSFERRED AS PART OF THE**

9           **PROPOSED TRANSACTION REQUIRING EVALUATION UNDER PURA**

10          **§ 37.154?**

11    A.    No. The Proposed Transaction will not result in a transfer of any Oncor CCNs.

12    **Q.**    **WILL ANY ONCOR PROPERTY, FACILITIES, OR SECURITIES BE**

13           **ACQUIRED, DISPOSED OF, MERGED, TRANSFERRED OR**

14           **CONSOLIDATED, AS A RESULT OF THE PROPOSED TRANSACTION?**

15    A.    No. The Proposed Transaction will result only in NextEra Energy indirectly

16           holding the 19.75 percent interest in Oncor equity securities currently held by TTI.

17           No Oncor property or other assets will be sold, transferred, or otherwise affected.

1   **Q.**   **PLEASE DESCRIBE THE SPECIFIC RELIEF REQUESTED IN THIS**

2          **PROCEEDING.**

3   **A.**   Applicants request that the Commission issue an order to disclaim jurisdiction over

4          the Proposed Transaction or, in the alternative, find that the Proposed Transaction

5          is in the public interest and approved.[5]

6   **IV.**  **COMMISSION REVIEW OF THE PROPOSED TRANSACTION IS NOT**
7         **REQUIRED UNDER PURA § 14.101, 39.262 OR 39.915**

8   **Q.**   **WHAT IS THE BASIS FOR YOUR OPINION THAT THE TERMS OF THE**

9          **PROPOSED TRANSACTION DO NOT TRIGGER THE REPORTING**

10         **REQUIREMENT UNDER PURA § 14.101?**

11   **A.**   Under PURA § 14.101(a), if a utility does not report a transaction within a

12         "reasonable time," it "may not sell, acquire, or lease plant as an operating unit or

13         system" in Texas for more than $10 million, nor can it "merge or consolidate with

14         another public utility operating in this state." Under § 14.101(b), a utility also must

15         report each transaction that involves the sale of at least 50 percent of the utility's

16         stock.  The terms of the Proposed Transaction do not implicate any of these

17         provisions.  The Proposed Transaction does not involve the sale of plant as an

18         operating unit or system, the merger or consolidation with another public utility

19         operating in Texas, or the sale of at least 50 percent of a utility's stock. Therefore,

20         PURA § 14.101 is not applicable.  The same is true with respect to PURA

21         §§ 39.262(l)(1-2) and 39.915(a)(1-2).

---

[5] As discussed in Section IV of the Application, NextEra Energy expressly reserves and does not waive its right to challenge the Commission's jurisdictional authority over the Proposed Transaction under PURA §§ 14.101, 39.262(l)-(m), and 39.915.

1  **Q.  WITH REGARD TO PURA §§ 39.262(l)(3) AND 39.915(a)(3), WHAT IS THE**

2  **BASIS FOR YOUR OPINION THAT TTI DOES NOT HOLD A**

3  **CONTROLLING INTEREST OR OPERATIONAL CONTROL IN**

4  **ONCOR?**

5  A.    As a practical matter, a "controlling interest" gives a shareholder or group of

6        shareholders the ability to direct the management and/or policies of a company.

7        PURA §§ 39.262(1)(3) and 39.915(a)(3) do not contain definitions of "controlling

8        interest," so it is reasonable to look to other sections of PURA or Commission rules

9        for guidance.    While I am not a lawyer, it is my understanding that when

10       determining whether an entity is an affiliate of a public utility because it is under

11       "common control with a public utility," the Commission, under PURA § 11.006(b),

12       looks at whether a person has "direct or indirect possession of the power to direct

13       or cause the direction of the management or policies of another."  I am also aware

14       that Commission Rule 25.107(b)(3) defines "control" as, "the possession, direct or

15       indirect, of the power to direct or cause the direction of the management and

16       policies of a person, whether through ownership of voting securities, by contract,

17       or otherwise."  Here, TTHC holds only a 19.75 percent ownership interest in Oncor,

18       with the approximately 80 percent ownership interest held indirectly by EFH.

19       Because EFH indirectly holds the approximately 80 percent ownership interest in

20       Oncor, and TTI's voting rights, as described in the Application, do not confer the

21       power to direct management or policies of a utility, it is only reasonable to conclude

22       that TTI does not hold a controlling interest or operational control in Oncor.

1    **Q.**    **DOES PAST COMMISSION PRACTICE ALSO SUPPORT A**

2          **CONCLUSION THAT THE TRANSFER OF THE MINORITY INTEREST**

3          **SHOULD NOT REQUIRE PRIOR COMMISSION APPROVAL?**

4    A.    Yes.  When TTHC acquired the minority interest from EFH, no report or prior

5          approval was required by the Commission.  Similarly, the Commission did not

6          review or specify the terms to be included in the Oncor LLC Agreement and the

7          special rights granted to TTHC under that agreement.  The Oncor LLC agreement

8          is included as Exhibit MH-2 to my Direct Testimony.  Moreover, while the

9          Commission, in Docket No. 34077, approved a settlement between EFH and the

10        parties to that case, the Commission did not require EFH to transfer a minority

11        interest in Oncor.  The only requirement in the Commission's Order on Rehearing

12        in Docket No. 34077 was that the transfer of the minority interest, if such a transfer

13        occurred, must be to a non-affiliated third party.  It is also clear that EFH sought

14        authority to transfer a minority interest in Oncor to address concerns raised by the

15        ratings agencies.  The ratings agencies required a minority owner for Oncor to

16        maintain Oncor's investment grade credit rating despite the non-investment grade

17        status of EFH.  In my opinion, these facts support a conclusion that Commission

18        approval of the Proposed Transaction should not be required to transfer the minority

19        interest in Oncor to NextEra Energy.

1    **V.**   **IF THE COMMISSION ELECTS TO EXERCISE JURISDICTION OVER**
2           **THE PROPOSED TRANSACTION, THE TRANSACTION IS IN THE**
3           **PUBLIC INTEREST AND SHOULD BE APPROVED**

4    **Q.**   **IF THE COMMISSION CHOOSES TO EXERCISE JURISDICTION OVER**

5           **THE PROPOSED TRANSACTION, DOES THE TRANSACTION MEET**

6           **ALL REQUIREMENTS NECESSARY TO SATISFY THE PUBLIC**

7           **INTEREST?**

8    A.   Yes. Although I am not a lawyer, it is my understanding that if the Commission

9           exercises jurisdiction over the Application, the Commission will review the

10         Proposed Transaction pursuant to the public interest factors set forth in §§ 14.101,

11         39.262, and 39.915 of PURA. Past cases involving these provisions of PURA are

12         distinguishable from the Proposed Transaction in that those transactions either

13         involved the acquisition of full ownership or a majority interest in a utility or a

14         merger of two utilities. In contrast, the Proposed Transaction is a straightforward

15         transaction that is limited to NextEra Energy's acquisition of TTHC which

16         indirectly owns a 19.75 percent ownership interest in Oncor. This coupled with the

17         fact that approval of the Proposed Transaction will not change Oncor's current ring-

18         fence structure and the minority rights that the credit rating agencies consider to be

19         necessary to maintaining Oncor's credit ratings warrants an uncomplicated

20         application of the statutory public interest factors. Under any objective measure,

21         the Proposed Transaction satisfies these criteria and warrants a favorable public

22         interest determination.

1  Q.    **WHAT ARE THE FACTORS THAT THE COMMISSION MUST**

2      **CONSIDER IN CONNECTION WITH ITS REVIEW OF THE PROPOSED**

3      **TRANSACTION?**

4  A.    In making a determination of whether the Proposed Transaction is in the public

5      interest under PURA § 14.101(b), the Commission must consider the following

6      factors:

7          • the reasonable value of the property, facilities, or securities to be acquired,
8            disposed of, merged, transferred, or consolidated;

9          • whether the Proposed Transaction will adversely affect the health or safety
10           of customers or employees;

11         • whether the Proposed Transaction will result in the transfer of jobs of
12           citizens of Texas to workers domiciled outside Texas;

13         • whether the Proposed Transaction will result in the decline of service;

14         • whether the public utility will receive consideration equal to the reasonable
15           value of the assets when it sells, leases, or transfers assets; and

16         • whether the Proposed Transaction is consistent with the public interest.

17         In making the determination of whether a transaction is in the public interest

18     under PURA §§ 39.262(m) and 39.915(b), the Commission must consider whether

19     the transaction:

20         • will adversely affect the reliability of service of the electric utility or
21           transmission and distribution ("T&D") utility;

22         • will adversely affect the availability of service of the electric utility or T&D
23           utility; or

24         • will adversely affect the cost of service of the electric utility or T&D utility.

1  Q.    **WILL ONCOR RECEIVE CONSIDERATION EQUAL TO THE**

2  **REASONABLE VALUE OF THE ASSETS WHEN IT SELLS, LEASES, OR**

3  **TRANSFERS ASSETS?**

4  A.    As I mentioned in Section III of my Direct Testimony, the Proposed Transaction

5  will result in NextEra Energy acquiring TTHC's indirect interest in the equity

6  securities of Oncor. No assets of Oncor will be directly sold, leased, or transferred.

7  Q.    **DO YOU EXPECT THE RELIABILITY OF ONCOR'S SERVICE TO BE**

8  **IMPACTED BY THE PROPOSED TRANSACTION?**

9  A.    No. After the Proposed Transaction, I have no reason to believe that Oncor will

10  not continue to successfully operate and maintain the T&D system in a safe,

11  reliable, and cost effective manner, consistent with its obligations as a regulated

12  utility. Additionally, while NextEra Energy will have no control over Oncor's

13  operations, NextEra Energy is a leader in the industry with a history of providing

14  safe and reliable electric service. Therefore, there is no reason to believe that

15  NextEra Energy as Oncor's minority owner will adversely affect Oncor's ability to

16  provide reliable service after the completion of the Proposed Transaction.

17  Q.    **DO YOU EXPECT THE PROPOSED TRANSACTION TO CAUSE ANY**

18  **DECLINE IN THE SERVICE ONCOR CURRENTLY PROVIDES?**

19  A.    No. The Proposed Transaction will not result in a decline of service. Again, while

20  NextEra Energy will not have operational control over Oncor's service, I have no

21  reason to believe that Oncor will not continue to successfully operate and maintain

22  the T&D system in a safe, reliable, and cost effective manner, consistent with its

23  obligations as a regulated utility. While NextEra Energy will have no control over

1        Oncor's operations, NextEra Energy is a leader in the industry with a history of

2        providing safe and reliable electric service.  Therefore, there is no reason to believe

3        that NextEra Energy as Oncor's minority owner will cause any decline in the

4        service Oncor currently provides.

5  **Q.**     **DO YOU EXPECT THE PROPOSED TRANSACTION TO ADVERSELY**

6        **AFFECT THE AVAILABILITY OF SERVICE?**

7  **A.**     No.  After the Proposed Transaction, I have no reason to believe that Oncor will

8        not continue to successfully operate and maintain the T&D system in a safe,

9        reliable, and cost effective manner, consistent with its obligations as a regulated

10       utility.  Thus, the Proposed Transaction will not adversely affect the availability of

11       service.

12  **Q.**    **DO YOU EXPECT THE HEALTH AND SAFETY OF ONCOR'S**

13       **CUSTOMERS AND EMPLOYEES TO BE ADVERSELY AFFECTED BY**

14       **THE PROPOSED TRANSACTION?**

15  **A.**    No.  Again, the Proposed Transaction will not have an impact on the daily

16       operations of Oncor and I have no reason to believe that Oncor will not continue to

17       operate its system using the same employees and processes as before the Proposed

18       Transaction.  As a result, the health or safety of its customers or employees will

19       not, in my view, be adversely affected nor will the Proposed Transaction result in

20       the transfer of jobs of Texas citizens to workers domiciled outside of Texas.

1    Q.    **WILL THE PROPOSED TRANSACTION ADVERSELY AFFECT**
2          **ONCOR'S COST OF SERVICE?**

3    A.    No.   Again, the Proposed Transaction will not have an impact on the daily
4          operations of Oncor and I have no reason to believe that Oncor will not continue to
5          operate its system using the same employees and processes as before the Proposed
6          Transaction.  The Proposed Transaction will not adversely affect Oncor's cost of
7          service.

8    Q.    **TO THE EXTENT THAT THE COMMISSION IMPOSES A BENEFITS**
9          **STANDARD ON THE PROPOSED TRANSACTION UNDER PURA**
10         **§§ 14.101, 39.262(m) OR 39.915(b), DOES THE PROPOSED**
11         **TRANSACTION OFFER BENEFITS TO ONCOR AND ITS CUSTOMERS?**

12   A.    Yes.  The Proposed Transaction offers the opportunity to obtain a strategic, U.S.
13         based, minority investor for Oncor, NextEra Energy, which has many decades of
14         experience in owning and operating a large electric utility and the long-term intent
15         of investing in utilities.  Most importantly, NextEra Energy provides Oncor with a
16         financially strong, minority owner that the credit rating agencies have determined
17         is necessary to maintain Oncor's investment grade credit rating under its current
18         parent, EFH.  This is especially important given that Oncor continues to operate
19         under EFH and an intermediate holding company that are in bankruptcy, all of the
20         debt that is currently above Oncor continues to reside above Oncor, and existing
21         legacy liabilities continue to reside at EFH and its subsidiaries.

1
## VI. <u>CONCLUSIONS</u>

2  **Q.    DOES THE PROPOSED TRANSACTION SATISFY THE STATUTORY**

3  **PUBLIC INTEREST CRITERIA IN PURA?**

4  A.    Yes.  The Proposed Transaction satisfies the public interest criteria set forth under

5        PURA §§ 14.101, 39.262, and 39.915 and should be approved pursuant to

6        §§ 39.262 and 39.915.

7  **Q.    IS THE PROPOSED TRANSACTION IN THE PUBLIC INTEREST?**

8  A.    Yes, the Proposed Transaction is in the public interest and should be approved.  The

9        Proposed Transaction will not change Oncor's existing ring-fence structure and will

10       maintain the minority interest owner presence that the credit rating agencies have

11       found to be essential for maintaining Oncor's credit ratings under its existing

12       parent, EFH.

13 **Q.    DOES THIS CONCLUDE YOUR DIRECT TESTIMONY?**

14 A.    Yes.

STATE OF FLORIDA         §
                                   §

COUNTY OF PALM BEACH    §

### AFFIDAVIT OF MARK HICKSON

BEFORE ME, the undersigned authority, on this day personally appeared Mark Hickson,

who having been placed under oath by me did depose as follows:

1. "My name is Mark Hickson. I am of sound mind and capable of making this affidavit. The facts stated herein are true and correct based on my personal knowledge. My current position is Executive Vice President of Corporate Development, Strategy, Quality and Integration for NextEra Energy, Inc.

2. I have prepared the foregoing direct testimony and the information contained in this document is true and correct to the best of my knowledge."

Further affiant sayeth not.

_____
Mark Hickson

SUBSCRIBED AND SWORN TO BEFORE ME by the said Mark Hickson on this 25 day of July, 2017.

_____
Notary Public, State of Florida

My commission expires: 10 - 2 - 18

SANDRA COX CLARCHICK
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF165449
Expires 10/2/2018

69

Exhibits MH-1 and MH-2 are voluminous and are being provided on CD.