Exhibit D

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Case No. 08-12606 (BLS) |
| | ) |
| VERASUN ENERGY CORPORATION, et al., | ) *Chapter 11* |
| | ) |
| Debtors. [1] | ) Jointly Administered |
| | ) |
| | ) |
| | ) |

**ORDER PURSUANT TO 11 U.S.C. §§ 105(A), 363, 365 AND FED. R. BANKR. P.
2002, 6004, 6006 (A) ESTABLISHING BIDDING AND AUCTION
PROCEDURES RELATED TO THE SALE OF SOME OR ALL OF THE
DEBTORS' ASSETS; (B) APPROVING BID PROTECTIONS FOR SALE OF
VSE ASSETS; (C) ESTABLISHING PROCEDURES FOR THE DEBTORS TO
ENTER INTO ADDITIONAL STALKING HORSE AGREEMENTS WITH BID
PROTECTIONS IN CONNECTION WITH SALE OF ASSETS; (D)
SCHEDULING AN AUCTION AND SALE HEARING FOR THE SALE OF
THE DEBTORS' ASSETS; (E) PERMITTING CREDIT BIDDING PURSUANT
TO BANKRUPTCY CODE SECTION 363(K);
(F) ESTABLISHING CERTAIN NOTICE PROCEDURES FOR
DETERMINING CURE AMOUNTS; (G) APPROVING FORM AND MANNER
OF NOTICE OF ALL PROCEDURES, PROTECTIONS, SCHEDULES AND
AGREEMENTS; AND (H) GRANTING CERTAIN RELATED RELIEF**

---

[1] The Debtors consist of: VeraSun Energy Corporation (EIN: 20-3430241); ASA OpCo Holdings, LLC (EIN: 68-0609122); US BioEnergy Corporation (EIN: 20-1811472); VeraSun Albert City, LLC (EIN: (20-2264707); VeraSun Albion, LLC (EIN: 55-0907221); VeraSun Aurora Corporation (EIN: 40-0462174); VeraSun BioDiesel, LLC (EIN: 20-3790860); VeraSun Bloomingburg, LLC (EIN: 55-0907224); VeraSun Central City, LLC (EIN: (55-0816855); VeraSun Charles City, LLC (EIN: 20-3735184); VeraSun Dyersville, LLC (20-5765890); VeraSun Fort Dodge, LLC (EIN: 42-1630527); VeraSun Granite City, LLC (EIN: 20-5909621); VeraSun Hankinson, LLC (90-0287129); VeraSun Hartley, LLC (EIN: 20-5381200); VeraSun Janesville, LLC (EIN: 20-4420290); VeraSun Linden, LLC (EIN: 55-0907228); VeraSun Litchfield, LLC (EIN: 20-8621370); VeraSun Marion, LLC (EIN: 20-34377343); VeraSun Marketing, LLC (EIN: 20-3693800); VeraSun Ord, LLC (75-3204878); VeraSun Reynolds, LLC (EIN: 20-5914827); VeraSun Tilton, LLC (EIN: 26-1539139); VeraSun Welcome, LLC (EIN: 20-4115888); and VeraSun Woodbury, LLC (20-0647425).

Upon consideration of motion (the "Motion"),[2] dated February 6, 2009, of the above-captioned debtors and debtors-in-possession (the "Debtors"), for entry of an order (the "Bid Procedures Order") (A) establishing bidding and auction procedures (the "Bidding Procedures") in connection with the sale of substantially all of the Debtors assets (the "Assets") free and clear of all claims (as defined in section 101(5) of the Bankruptcy Code) and any other interests, liens, mortgages, pledges, security interests, rights of first refusal, obligations and encumbrances of any kind whatsoever (collectively, the "Interests"), except to the extent identified in a Successful Bidder's (defined below) asset purchase agreement; (B) approving the proposed bid protections (the "VSE Stalking Horse Break-Up Fee and Expense Reimbursement") to Valero Renewable Fuels Company, LLC ("Valero" or the "VSE Stalking Horse Bidder") in accordance with that certain Asset Purchase Agreement dated February 6, 2009, (the "VSE Asset Purchase Agreement") for the purchase of the VSE Assets; (C) establishing procedures for the Debtors to enter into stalking horse agreements (each, an "Additional Stalking Horse Agreement") containing bid protections with respect to any additional stalking horse bidders (the "Additional Stalking Horse Bidders") for the sale of all or a portion of the Assets; (D) scheduling an auction (the "Auction") and sale hearing (the "Sale Hearing") for the Sale of the Debtors' Assets; (E) permitting credit bidding pursuant to Bankruptcy Code section 363(k); (F) establishing certain notice procedures for determining cure amounts (the

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or in the VSE Asset Purchase Agreement.

"Cure Amounts") and for the Sale; and (G) approving form and manner of notice of all procedures, protections, schedules and agreements; and (H) granting certain related relief; and the Court having considered the Motion and objections thereto, and the arguments of counsel made, and the evidence adduced, at the hearing on the Motion (the "Bidding Procedures Hearing") and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other interested parties; and upon the record of the Bidding Procedures Hearing and these Chapter 11 Cases, and after due deliberation thereon, and good cause appearing therefore, it is hereby

### FOUND AND DETERMINED THAT:

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, and 365[3] and Fed. R. Bankr. P. 2002, 6004, and 6006. Venue of these cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Notice of the Motion, the proposed entry of the Bid Procedures Order, the Bidding Procedures, the Assumption and Assignment

---

[3]      All section references herein shall be to title 11 of the United States Code, unless otherwise indicated.

Procedures, the Auction, and Bid Procedures Hearing has been provided to the Notice Parties. The Debtors' notice of the Motion, the proposed entry of the Bid Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, and Bid Procedures Hearing is appropriate and reasonably calculated to provide all interested parties with timely and proper notice under Bankruptcy Rules 2002, 4001, 6004, and 6006, and no other or further notice of, or hearing on, the Motion or this Order is required.

C.     The Debtors' proposed notices of (i) the proposed Sale of the VSE Assets, (ii) the assumption and assignment of the Assumed Contracts, (iii) the VSE Asset Purchase Agreement, (iv) the Transition Services Agreement, (v) the proposed procedures for noticing and determining Cure Amounts, and (vi) the Bidding Procedures, substantially in the form attached to the Motion, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of each, and no further notice of, or hearing on, each is necessary or required.

D.     The Bidding Procedures, the Assumption and Assignment Procedures substantially in the form set forth in the Motion are fair, reasonable, and appropriate and are designed to maximize the value of the Debtors' estates.

E.     The Debtors have demonstrated a compelling and sound business justification for approving the payment of the VSE Stalking Horse Break-Up Fee and Expense Reimbursement under the circumstances and timing set forth in the Motion and the VSE Asset Purchase Agreement.

4

F.     The Debtors' granting of bid protections to the VSE Stalking Horse Bidder of the VSE Stalking Horse Break-Up Fee and Expense Reimbursement is (a) an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates, (c) effectively compensates the VSE Stalking Horse Bidder for granting of unsecured credit to the Debtors within the meaning of §364(c)(1) in the form of uncompensated efforts and expenditure of human and monetary capital necessary to drive the entire auction process, capital which would not have been and will not be expended absent a the granting of a superpriority, administrative expense claim, and (d) fair, reasonable and appropriate, in light of, among other things, (i) the size and nature of the proposed Sale of the VSE Assets, (ii) the substantial efforts that have been expended by the VSE Stalking Horse Bidder, and (iii) the benefits the VSE Stalking Horse Bidder has provided to the Debtors' estates and creditors and all parties in interest herein.

G.     The Debtors have (i) articulated good and sufficient reasons to this Court to grant the relief requested in the Motion and the VSE Asset Purchase Agreement and (ii) demonstrated sound business justifications to support such relief.

H.     The Debtors have demonstrated a compelling and sound justification for authorizing the Additional Stalking Horse Procedures. The Additional Stalking Horse Procedures set forth in the Motion are fair, reasonable, and appropriate and are designed to maximize the value of the Debtors estates.

5

I.      Entry of this Bid Procedures Order is in the best interests of the Debtors and their respective estates and creditors, and all other parties in interest.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT:**

1.      The (i) Bidding Procedures, including references to the VSE Asset Purchase Agreement and (ii) the Assumption and Assignment Procedures are hereby APPROVED, and fully incorporated into this Order, and shall apply with respect to the proposed Sale of the Assets and assumption and assignment of contracts and leases contemplated by the Motion. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

2.      All objections to the relief requested in the Motion with respect to (i) the Bidding Procedures and (ii) the Assumption and Assignment Procedures that have not been withdrawn, waived or settled as announced at the Bid Procedures Hearing on the Motion, or resolved by stipulation filed with Court, are overruled.

<u>**Auction and Bidding Procedures**</u>

3.      The Debtors are authorized (i) to conduct an auction (the "<u>Auction</u>") with respect to all or some of the Assets. The Auction, if any, shall be conducted at One Rodney Square, P.O. Box 636, Wilmington, Delaware 19899 (the "<u>Auction Site</u>") at 11:00 a.m. (prevailing Eastern time) on March 16, 2009 (the "<u>Auction Date</u>"), or such other place and time as the Debtors shall notify all

6

Qualified Bidders who have submitted Qualified Bids and expressed their intent to participate in the Auction as set forth in the Bidding Procedures, and (ii) subject to terms of this Bid Procedures Order, to take all actions necessary, in the discretion of the Debtors, to conduct and implement such Auction.

4.      The Debtors may (i) select, in their business judgment, pursuant to the Bidding Procedures the highest or otherwise best offer(s) and the Successful Bidder or Bidders, and (ii) reject any bid that, in the Debtors' business judgment, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules or the Bidding Procedures, or (c) contrary to the best interests of the Debtors and their estates, creditors, interest holders or parties in interest.

5.      The failure to specifically include or reference any particular provision, section or article of the Bidding Procedures in this Bid Procedures Order shall not diminish or impair the effectiveness of such procedures, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

6.      Nothing in this Bid Procedures Order or the Bidding Procedures shall preclude the Secured Lenders, and any other party from exercising their rights under Bankruptcy Code section 363(k) to make a credit bid at the Auctions to the extent permitted by Bankruptcy Code section 363(k).

7.      Buyer is deemed a Qualified Bidder, and Buyer's bid for the VSE Assets is deemed a Qualified Bid.

## The Bidding Protections

8.      Pursuant to sections 105, 363, 364, 503, 506 and 507 of the Bankruptcy Code, the Debtors are hereby authorized to pay the VSE Stalking Horse Break-Up Fee and Expense Reimbursement pursuant to the terms and conditions set forth in the VSE Asset Purchase Agreement and the Bidding Procedures.

9.      The VSE Break-Up Fee is hereby approved and (i) shall be paid to the VSE Stalking Horse Bidder under conditions outlined in the VSE Asset Purchase Agreement, Section 11.2, (ii) shall be funded from the VSE Bid Deposit of the Successful Bidder for the VSE Assets, or to the extent necessary, from the Debtors' other assets, (iii) shall be secured by a first priority, unprimable security interest in the VSE Bid Deposit of the Successful Bidder  for the VSE Assets (except that such security interest shall be subordinate to the interest of such Successful Bidder in the VSE Bid Deposit in the event a sale transaction with such Successful Bidder is not ultimately consummated) and fully perfected, without need for further action to perfect such security interest, and (iv) shall automatically be deemed an allowed super priority administrative expense under Sections 503(b)(1) and 364(c)(1) of the Bankruptcy Code in the Bid Procedures Order.

10.     The Debtors shall pay the VSE Stalking Horse Bidder the VSE Stalking Horse Expense Reimbursement for the reasonable documented out-of-pocket costs and expenses of the VSE Stalking Horse Bidder (including, without limitation, reasonable expenses of counsel, investment bankers and other outside consultants, reasonable legal expenses and all filing fees under the HSR Act) related

8

to negotiating the VSE Asset Purchase Agreement and performing due diligence on the assets and business of the Debtors related thereto, up to a maximum of $1,000,000. The VSE Stalking Horse Expense Reimbursement is hereby approved and (i) shall be paid to the VSE Stalking Horse Bidder under conditions outlined in VSE Asset Purchase Agreement Section 11.2 (ii) shall be funded from the VSE Bid Deposit of the Successful Bidder for the VSE Assets, or to the extent necessary, from the Debtors' other assets, (iii) shall be secured by a first priority, unprimable security interest in the VSE Bid Deposit of the Successful Bidder for the VSE Assets (except that such security interest shall be subordinate to the interest of such Successful Bidder in the VSE Bid Deposit in the event a sale transaction with such Successful Bidder is not ultimately consummated) and fully perfected, without need for further action to perfect such security interest, and (iv) shall automatically be deemed an allowed super priority administrative expense under Sections 503(b)(1) and 364(c)(1) of the Bankruptcy Code in the Bid Procedures Order.

11.     The VSE Break-Up Fee and Expense Reimbursement shall be the sole remedy of the VSE Stalking Horse Bidder if the VSE Asset Purchase Agreement is terminated under circumstances where the VSE Break-Up Fee and Expense Reimbursement is payable. The VSE Stalking Horse Bidder shall have no other remedy against the Debtors or the Debtors' board of directors or their respective advisors.

9

**Additional Stalking Horse Procedures**

12.    The Additional Stalking Horse Procedures are hereby approved.

13.    The Debtors shall have until March 2, 2009 (the "Additional Stalking Horse Date") to select a Qualified Bid of a Qualified Bidder to be an Additional Stalking Horse Bid. The Debtors, in consultation with the Committee and the Secured Lenders, shall finalize any purchase agreement with an Additional Stalking Horse Bidder (each, an "Additional Stalking Horse Agreement") by no later than the Additional Stalking Horse Date. Within one (1) day of the Additional Stalking Horse Date the Debtors shall request a hearing (the "Additional Stalking Horse Hearing") to approve any Additional Stalking Horse Agreement on an expedited basis and file with the Bankruptcy Court a notice (the "Additional Stalking Horse Notice") containing the date and time of such Additional Stalking Horse Hearing and a copy of any Additional Stalking Horse Agreement.

14.    The Debtors shall serve such Additional Stalking Horse Notice on (i) counsel for the Committee, (ii) counsel to the Secured Lenders, (iii) all entities known to have expressed an interest in a transaction with respect to any of the Assets, individually or as part of a package, during the past six (6) months, and (iv) any known lienholder and any other person or entity asserting an interest in the Assets that either has filed notice of such interest as a matter of public record, or has provided notice of such interest in writing to the Debtors (the "Additional Stalking Horse Notice Parties").

15.     In the event an Additional Stalking Horse Bidder is not

approved by this Court with respect to the sale of any Assets other than the VSE

Assets and Valero submits a bid for such Assets, the Debtors shall provide Valero

with the number of Qualified Bids received for such Assets and a copy of the highest

or otherwise best Qualified Bid for such Assets after the Bid Deadline.

## Additional Notice Provisions

16.     Within three (3) days after the entry of the Bidding Procedures

Order (the "Mailing Date") or as soon thereafter as practicable, the Debtors (or their

agents) shall serve the Motion, the VSE Asset Purchase Agreement, the Bidding

Procedures and a copy of the Bidding Procedures Order by first-class mail, postage

prepaid, upon (i) all entities known to have expressed an interest in a transaction with

respect to any of the Assets, individually or as part of a package, during the past six

(6) months; (ii) all entities known to have asserted any lien, claim, interest or

encumbrance in or upon any of the Assets; (iii) all parties to executory contracts and

unexpired leases; (iv) the DIP Lenders; (v) the Prepetition Secured Lenders; (vi) all

federal, state, and local regulatory or taxing authorities or recording offices which

have a reasonably known interest in the relief requested by the Motion; (vii) the

United States Attorney's office; (viii) the Securities and Exchange Commission; (ix)

the Internal Revenue Service; (x) the Office of the United States Trustee; (xi)

counsel to any official committee established in these Chapter 11 Cases; and (xii) all

entities on the 2002 Service List (the "Sale Notice Parties").

11

17.     On the Mailing Date or as soon thereafter as practicable, the Debtors (or their agents) shall serve by first class mail, postage prepaid, a sale notice (the "Sale Notice") upon all other known creditors of the Debtors.

18.     On the Mailing Date or as soon as practicable thereafter, the Debtors shall publish the Sale Notice in *The Wall Street Journal* and *Sioux Falls Argus Leader*, and such publication notice shall be deemed proper notice to any other interested parties whose identities are unknown to the Debtors.

### Assumption and Assignment Procedures

19.     The Assumption and Assignment Procedures are approved.

20.     Within five (5) business days after entry of an order approving the Bidding Procedures or as soon thereafter as practicable, the Debtors will file a notice of cure amount (the "Cure Notice"), substantially in the form attached to the Motion as Exhibit F, with the Court and serve the Cure Notice on all non-debtor parties to any executory contracts and unexpired leases for any or all Segments (the "Contract Notice Parties") that the Debtors' determine, in the exercise of their business judgment, are necessary to maximize value of any proposed transaction.

21.     The Cure Notice shall state the cure amounts that the Debtors believe are necessary to assume such executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code (the "Cure Amount") and notify the non-debtor party that such party's contract or lease may be assumed and assigned to a purchaser of the Assets to be identified at the conclusion of the Auction. The Cure Notice shall set a deadline by which the non-debtor party shall file an objection to

12

the Cure Amount. The Cure Notice shall also provide that objections to any Cure Amount will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors.

22. All objections by non-debtor parties to the Cure Amount, must be filed within ten (10) days after service of the Cure Notice (the "Cure Objection Deadline").

23. Unless a non-debtor party to any Assumed Contract files an objection to the Cure Amount by the Cure Objection Deadline, then such counterparty shall be (i) forever barred from objecting to the Cure Amount; and (ii) forever barred and estopped from asserting or claiming against the Debtors, any Successful Bidder or any other assignee of the relevant contract.

24. All timely filed objections to any Cure Amount must set forth (i) the basis for the objection, (ii) the exact amount the party asserts as the Cure Amount, and (iii) sufficient documentation to support the Cure Amount alleged.

25. Hearings on objections to any Cure Amount may be held at the Sale Hearing or upon such other date as the Court may designate upon request by Debtors with prior consent of the Successful Bidder.

26. As soon as possible after the conclusion of the Auction, the Debtors shall file with the Bankruptcy Court a Post Auction Notice that identifies any Successful Bidder and provides notice that the Debtors will seek to assume and assign the Assumed Contracts at the Sale Hearing.

27. In addition, in the event the Court approves Valero as the purchaser of the VSE Assets, pursuant section 2.5 of the VSE Asset Purchase Agreement, Valero may elect to take assignment of certain contracts and leases listed on Schedule 1.1(a)-1 and 1.1(b)-1 of the VSE Asset Purchase Agreement for up to thirty (30) days after the closing of the Sale (the "Valero Assumed Contracts"). Upon designation of such Valero Assumed Contracts by Valero, the Debtors will file with the Bankruptcy Court and serve a notice, substantially in the form attached to the Motion as Exhibit G (the "Valero Assumption Notice"), on Contract Notice Parties that identifies Valero as the purchaser of the VSE Assets and provides notice that the Debtors are assuming and assigning the Valero Assumed Contracts to Valero.

## Additional Provisions

28. The Debtors are authorized and empowered to take such actions as may be necessary to implement and effect the terms and requirements established under this Order.

29. This Order does not in any way affect the terms of, or rights under, executory contracts or unexpired leases to which the Debtors and Cargill, Incorporated or any of its affiliates are parties thereto including, without limitation, rights of setoff, if any.

30. The Town of Linden, VeraSun Linden, LLC, and the pre-petition and post-petition lenders for VeraSun Linden,LLC and the agents, employees, servants, representatives, and administrators of each of the foregoing

14

have reserved their respective rights, if any, as to certain funds on deposit with or on behalf of the Town of Linden (the "<u>Linden Debt Service Reserve Fund</u>"). Notwithstanding anything in this Order or the Bid Procedures to the contrary, the entry of this Order, the approval of the Bid Procedures, or the passage of time shall not affect such rights, if any, or otherwise prejudice the ability of the aforementioned parties to seek a determination by the Court as to the extent of their respective interest, if any, in, to, or under the Linden Debt Service Reserve Fund.

31.    Notwithstanding any other provision of this Order, Northern Natural Gas Company may (1) on or before the Cure Objection Deadline, object to Cure Amount, and any other defaults under their proposed Assumed Contracts that must be cured pursuant to Bankruptcy Code section 365(b), (2) assert any objections available pursuant to applicable law pertaining to adequate assurance of future performance until the conclusion of the Sale Hearing, and (3) on or before the Sale Objection Deadline (defined below), assert any other objections it may have pursuant to applicable law pertaining to the proposed assumption and assignment of their Assumed Contracts.

32.    A Sale Hearing to approve the sale of any of the Assets, individually or as part of a group to any Successful Bidder and authorizing the assumption and assignment of certain executory contracts and unexpired leases shall be held on March 18, 2009 at 12:00 p.m. (eastern standard time), unless otherwise continued by the Debtors.

15

33.     Objections, if any, to any Sale must be filed and served on counsel for the Debtors by March 9, 2009 at 4:00 p.m. (eastern standard time) (the "Sale Objection Deadline").

34.     This Order shall be binding on and inure to the benefit of any Successful Bidder and its affiliates, successors and assigns, and the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

35.     This Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

36.     Notwithstanding the possible applicability of Fed. R. Bankr. P. 6004(h), 6006(d), 7062, 9014, or otherwise, the Court, for good cause shown, orders that the terms and conditions of this Bid Procedures Order shall be immediately effective and enforceable upon its entry.

37.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order, including, but not limited to, any matter, claim or dispute arising from or relating to the VSE Stalking Horse Break-Up Fee and Expense Reimbursement, the VSE Asset Purchase Agreement, the Bidding Procedures and the implementation of this Order

Dated:  Wilmington, Delaware
        February 19, 2009

                                        UNITED STATES BANKRUPTCY JUDGE