Exhibit E

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------------x
                                          :
                                          :
In re:                                    :  Chapter 11
                                          :
WORLDSPACE, INC., et al.,[1]              :  Case No. 08 – 12412 (PJW)
                                          :
              Debtors.                    :  (Jointly Administered)
                                          :
                                          :  Related Docket No. 1002
                                          :
-----------------------------------------------------------------x
```

### ORDER (I) APPROVING THE SALE OF ALL OR SUBSTANTIALLY ALL ASSETS OF WORLDSPACE, INC. AND ITS DEBTOR AND NON-DEBTOR AFFILIATES FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES TO YAZMI USA LLC; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE AND RELATED PROCEDURES AND (III) GRANTING RELATED RELIEF

Upon the motion dated May 19, 2010 (Docket No. 1002) (the "Motion")[2] of

WorldSpace, Inc. ("WorldSpace") on behalf of itself and its affiliated debtors and debtors in

possession in the above-captioned cases (collectively, the "Debtors" and together with certain of

its non-debtor affiliates, the "Sellers"), seeking the entry of an order (this "Order") approving the

sale (the "Proposed Sale") of substantially all of the Debtors' assets related to their satellite radio

business to Yazmi USA LLC ("Buyer") for a total purchase consisting of (i) $5,500,000 cash

plus the funding of certain reasonable operating expenses of the Debtors, as more fully described

---

[1]     The Debtors in these proceedings, along with the last four digits of each Debtor's federal tax identification number, are: WorldSpace, Inc. (2881); AfriSpace, Inc. (3956); and WorldSpace Systems Corporation (0695), each with a mailing address of 8515 Georgia Avenue, Silver Spring, MD 20910; and WorldSpace Satellite Company Ltd. (7577), with a mailing address of Craigmuir Chambers, P.O. Box 71, Road Town, Tortola, BVI.

[2]     Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Motion or the Asset Purchase Agreement (as defined herein), as the case may be.

in the Motion, (ii) the assumption of the Assumed Liabilities, and (iii) the payment of cure costs,

if any, pursuant to the asset purchase agreement, dated May 9, 2010 (as may be amended from

time to time) by and among the Debtors and Buyer, a true and correct copy of which is attached

hereto as Exhibit A (the "APA"); and the entry in to the ancillary agreements contemplated by

the APA, including that certain Transition Services Agreement, dated as of the Closing Date,

between Buyer and Seller (the "Transition Services Agreement"); and approving the assumption

and assignment of the executory contracts and unexpired leases identified in Exhibit B of the

Sale Motion (the "Assigned Contracts"); and the Sale Hearing having been held on June 1, 2010;

and adequate and sufficient notice of the Motion, Proposed Sale, the APA and all transactions

contemplated thereunder and in this Order having been given to all parties in interest in these

cases; and all interested parties having been afforded an opportunity to be heard with respect to

the Motion and all relief related thereto; and this Court having reviewed and considered (i) the

Motion, (ii) the objections thereto, if any and (iii) the arguments of counsel made and the

evidence proffered or adduced at the Sale Hearing; and after due deliberation thereon and

sufficient cause appearing therefor, it is hereby:

FOUND AND DETERMINED THAT:

1.      On October 17, 2008 (the "Petition Date"), each of the Debtors other than

SatCo filed a voluntary petition in the Court for relief under chapter 11 of title 11 of the United

States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). On the date of the Motion,

SatCo filed a petition under Chapter 11 of the Bankruptcy Code. The Debtors continue to

operate their business and manage their properties as debtors in possession pursuant to

sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in

the Debtors' cases. An official committee of unsecured creditors (the "Committee") was

appointed on October 29, 2008 in the cases of the Debtors other than SatCo.  The Debtors have

filed a motion for SatCo's chapter 11 case to be jointly administered with that of the other

Debtors, and for the Committee to serve as the Committee is SatCo's chapter 11 case.

      2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding pursuant to 28 U.S.C. § 157(b).

      3.      Proper, timely, adequate and sufficient notice of the Motion, the Proposed

Sale, and the Sale Hearing has been provided to all parties entitled thereto in accordance with

sections 102, 105 and 363 of the Bankruptcy Code, Rules 2002, 6004, 6006, 7004, 9006, 9007,

9008 and 9014 of the Federal Rules of the Bankruptcy Procedure (the "Bankruptcy Rules") and

Rules 2002-1(b) and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware (the "Local Rules") as evidenced by

the affidavits of service filed with this Court and based on representations of counsel at the Sale

Hearing, and no other or further notice of the Motion, the Proposed Sale, or the Sale Hearing is

or shall be required.

      4.      A reasonable opportunity to object or be heard regarding the Proposed

Sale, has been afforded to all interested persons and entities, in accordance with sections 102,

105 and 363 of the Bankruptcy Code, Rules 2002, 6004, 6006, 7004, 9006, 9007, 9008 and 9014

of the Bankruptcy Rules and Local Rules 2002-1(b) and 9006-1 including:  (i) the Office of the

United States Trustee for the District of Delaware (the "U.S. Trustee"); (ii) the DIP Lenders and

Prepetition Secured Noteholders; (iii) Buyer; (iv) the Committee; (v) all applicable local, state

and federal taxing authorities; (vi) all known persons who have asserted a lien on part or all of

the assets of the Debtors and their non-debtor affiliates; and (vii) those persons who have requested notice pursuant to Rule 2002 of the Bankruptcy Rules.

5.      The Debtors have properly exercised their reasonable business judgment in determining to sell the Acquired Assets to Buyer pursuant to the APA.  The Debtors have shown good and sufficient business justification under sections 363(b) and (l) and section 105(a) of the Bankruptcy Code for the Proposed Sale of the Acquired Assets to Buyer, outside a plan of reorganization.

6.      Through marketing efforts and a competitive sale process, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtors' assets, (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Acquired Assets, and (iii) considered any bids submitted on or before the deadline established by the court for the submission of bids.

7.      The approval of the Proposed Sale is in the best interests of the Debtors, their estates, creditors and other parties in interest in that, without exclusion:

(i) The APA was negotiated, proposed and entered into in good faith, from arm's length bargaining positions between the Sellers and Buyer;

(ii) the Sellers were free to deal with any other party interested in acquiring the Acquired Assets to be sold pursuant to the APA; and

(iii) the Sellers have provided for adequate notice and an opportunity to be heard in connection with the Proposed Sale.

8.      The Debtors have full corporate power and authority to execute the APA and all other documents contemplated thereby, and the sale of the Acquired Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the

transactions contemplated by the APA.  No consents or approvals, other than as expressly

provided for in the APA, are required by the Debtors to consummate such transactions.

9.     The consideration to be paid by Buyer to the Debtors, pursuant to the APA

(i) represents the highest and best offer for the Acquired Assets, (ii) is fair and reasonable,

(iii) will provide a greater recovery for the Debtors' creditors than would be provided by any

other practical, available alternative, including, without limitation, a de-orbiting of the Debtors'

satellites, and (iv) constitutes reasonably equivalent value and fair consideration under the

Bankruptcy Code and under the laws of the United States, any state, territory, possession or the

District of Columbia.

10.    The sale of the Acquired Assets was proposed, negotiated and entered into

by the parties in good faith, from arm's length bargaining positions and without collusion.

Neither the Debtors nor Buyer has engaged in any conduct that would prevent the application of

section 363(m) of the Bankruptcy Code or permit the APA to be avoided under section 363(n) of

the Bankruptcy Code.  Consequently, Buyer will be a purchaser in good faith under

section 363(m) of the Bankruptcy Code and entitled to the protections afforded thereby.

11.    The transfer of the Acquired Assets to Buyer will constitute a legal, valid,

and effective transfer of the Acquired Assets and vest Buyer with all of the Debtors' right, title,

and interest in the Acquired Assets free and clear of all indebtedness, claims, liens and

encumbrances, including mortgages, security interests, conditional sale or other title retention

agreements, pledges, liens (as that term is defined in § 101(37) of the Bankruptcy Code), claims

(as that term is defined in § 101(5) of the Bankruptcy Code), interests, obligations, demands,

guaranties of or by the Debtors, debts, rights, contractual commitments, restrictions, interests and

matters of any kind and nature, judgments, charges, encumbrances, defects, and restrictions of all

kind (including, without limitation, encumbrances and rights, whether arising prior to or subsequent to the commencement of these chapter 11 cases and whether imposed by agreement, understanding, law, equity or otherwise), except as otherwise provided herein or in the APA.

12. The Debtors may sell the Acquired Assets free and clear of all Claims against the Debtors or their estates (except as expressly stated under the APA) because, in each case, one or more of the standards set forth in § 363(f)(1)-(5) of the Bankruptcy Code has been or will be satisfied. Subject to the foregoing and the other terms and conditions of this Order, those holders of Claims, in each case, against the Debtors or their estates who did not object, or who withdrew their objections to the Motion, are deemed to have consented pursuant to § 363(f)(2) of the Bankruptcy Code and their Claims, if any, in each instance against the Debtors or their estates, shall attach to the cash consideration to be received by the Debtors under the APA, subject to the same extent, validity and priority (and subject to the defenses and objections of the Debtors, if any, with respect thereto) as are presently existing against the Acquired Assets in which they allege such an interest. Those holders of Claims who asserted their objections at the Sale Hearing, if any, fall within one or more of the other subsections of § 363(f) and are adequately protected by having their Claims, if any, in each instance against the Debtors or their estates, attach to the cash consideration to be received by the Debtors under the APA, subject to the same extent, validity and priority (and subject to the defenses and objections of the Debtors, if any, with respect thereto) as are presently existing against the Acquired Assets in which they allege such an interest.

13. The holders of all liens on and other interests in the Debtors' assets including, without limitation, Liberty (as defined below), have consented to the sale of the Debtors' assets free and clear of all such liens and interests pursuant to section 363(f)(2) of the

Bankruptcy Code; provided, that to the extent any such holder has not so consented, the Debtors

may sell their assets to Yazmi under the APA free and clear of all such holder's liens on and

other interests in the Debtors' assets pursuant to section 363(f)(4) and/or Section 363(f)(5) of the

Bankruptcy Code.

**ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED CONTRACTS**

14.     The assumption and assignment of the Assigned Contracts are integral to

the APA, are in the best interests of the Debtors and their estates and represent the reasonable

exercise of the Debtors' sound business judgment.

15.     With respect to each of the Assigned Contracts, the Debtors have met all

requirements of section 365(b) of the Bankruptcy Code. Further, the Buyer has provided all

necessary adequate assurances of future performance under the Assigned Contracts in

satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code. Accordingly, the Assigned

Contracts can be assumed by the Debtors and assigned to the Buyer, as provided for in the Sale

Motion and the APA.

16.     For the avoidance of doubt, and notwithstanding anything else in this Sale

Order to the contrary the Debtors are neither assuming nor assigning to the Buyer any of those

contracts referred to as "Excluded Contracts" in the APA and listed in Schedule 1.2(b) of the

Disclosure Schedule.

**BREAK-UP FEE**

17.     The Debtors have articulated good and sufficient reasons for, and the best

interests of their estates will be served by, this Court granting certain of the relief requested in

the Motion, including approval of the break-up fee, as provided for in the APA.

18.    The break-up fee to be paid under the circumstances described herein to the Buyer is (i) actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (ii) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Buyer's entry into the APA and (iii) reasonable and appropriate in light of the size and nature of the Proposed Sale and comparable transactions, the commitments that have been made and the efforts that have been and will be expended by the Buyer.

19.    Moreover, the break-up fee is an essential inducement and condition of Buyer's entry into, and continuing obligations under, the APA.  Unless it is assured that the break-up fee will be available, the Buyer is unwilling to remain obligated to consummate the Proposed Sale or otherwise be bound under the APA.  The Buyer has provided a material benefit to the Debtors and their creditors by increasing the net value to the estate.  Accordingly, the break-up fee is reasonable and appropriate and the Propose Sale represents the best method for maximizing value for the benefit of the Debtors' estates.

20.    The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of the break-up fee under the circumstances.

21.    The Proposed Sale must be approved and consummated promptly to preserve the viability of the Debtors' businesses as a going concern, to maximize the value of the Debtors' estates and to position the Debtors to emerge from chapter 11.

22.    Except as otherwise expressly set forth in the APA, the transfer of the Acquired Assets to Buyer does not and will not subject or expose Buyer or any of its respective affiliates, successors, predecessors, shareholders, members, partners, directors, officers, managers, employees, insiders, agents, representatives and advisors, to any liability, claim, cause

of action or remedy by reason of such transfer under (A) the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, including, without limitation, any theory of tort, creditors' rights, equity, antitrust, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity, or (B) any employment contract, understanding or agreement, including, without limitation collective bargaining agreements, employee pension plans, employee welfare or benefit plans.

23.     For purposes of section 363(b)(1) of the Bankruptcy Code, the Debtors have not, in connection with offering a product or service, disclosed to any individual a policy prohibiting the transfer of "personally identifiable information" (as defined in section 101(41A) of the Bankruptcy Code) about individuals to persons that are not affiliated with the Debtors.

24.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

25.     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

a.     The Motion is granted in its entirety, and the Proposed Sale and all other transactions contemplated under the APA hereby are approved.

b.     All terms and provisions of the Motion which related to the proposed assumption and assignment of executory contracts are hereby adjourned until further notice; and:

(i) The rights of any contract counterparty that has filed an objection to the assumption and assignment of their contract are fully preserved, and (ii) the rights of the Debtors and Buyer with respect to any party that received a notice of the proposed assumption and assignment of their contract and failed to file a timely objection to such assumption and assignment are fully reserved.

c.      Any objections to the entry of this Order or the relief granted herein that have not been adjourned, withdrawn, waived, resolved or settled, and all reservations of rights included therein, are hereby overruled.

### Approval of the Asset Purchase Agreement

d.      The terms and conditions of the APA, including, without limitation, (i) the sale of the Acquired Assets to Buyer and (ii) the assumption by Buyer of the Assumed Liabilities, hereby are authorized and approved in all respects, pursuant to sections 363(b), 365(a), 365(b), 365(f), 365(k) and 105(a) of the Bankruptcy Code.

e.      Pursuant to sections 363(b) and 365(a) of the Bankruptcy Code, and subject to the terms and conditions of the APA, the Sellers hereby are authorized, directed and empowered to assume fully, perform under, consummate and implement the APA, together with any and all additional instruments and documents, including without limitation any Ancillary Agreements, that reasonably may be necessary or desirable to implement the APA and consummate the Proposed Sale, and to take all further actions as may reasonably be requested by Buyer for the purpose of assigning, transferring, granting, conveying and conferring to Buyer or reducing to Buyer's possession the Acquired Assets, including assuming and assigning the Assigned Contracts and the Assumed Liabilities, or as may be necessary or appropriate to the performance of the Sellers' obligations as contemplated by the APA.

f.      The Debtors are hereby authorized to pay, subject to the terms and conditions set forth in the APA, the break-up fee and termination fees as applicable, in each case in an amount of $850,000.  The payment of the break-up fee shall be expressly conditioned on the consummation of a sale of substantially all the Acquired Assets with a party that is not the Buyer or affiliated with the Buyer.  Such fees, if payable, shall be a superpriority administrative expense claim against the Debtors' estates under sections 503(b) and 507(b) of the Bankruptcy Code.

### Transfer of the Acquired Assets

g.      The transfer of the Acquired Assets to Buyer pursuant to the APA shall constitute a legal, valid and effective transfer of the Acquired Assets and shall vest Buyer with all right, title, and interest of the Sellers in and to the Acquired Assets.  Pursuant to section 363(f) of the Bankruptcy Code such transfer shall be free and clear of all liens and encumbrances or any other interest of any entity.

h.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code and on the terms set forth in the APA, and subject to the terms and conditions of this Order (including paragraph n and dd below), the Acquired Assets shall be transferred, licensed and assigned to Buyer effective on the Closing Date free and clear of all Claims arising or relating to any period prior to the Closing Date, with all such Claims to attach to any amounts payable to the Debtors under the APA, in the order of their priority, and with the same extent, validity, force and effect that they now have as against the Acquired Assets, subject to any claims and defenses the Debtors may possess with respect thereto.  Except as provided in this Order, the assumption and assignment of any Assigned Contract is also free and clear of any claims other than the payment of any necessary cure costs.  The Acquired Assets shall be transferred to the Buyer, and upon

consummation of the transactions contemplated by the APA, such transfer (a) shall be a valid, legal, binding and effective transfer; (b) shall vest the Buyer with all right, title and interest of the Debtors in the Acquired Assets; and (c) shall be free and clear of all Claims except for Assumed Liabilities with all such Claims to attach to the proceeds of the Proposed Sale ultimately attributable to the Acquired Assets against or in which such Claims are asserted, or other specifically dedicated funds, in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

        i.     All proceeds of the consummated Proposed Sale shall be directed in the manner prescribed in the APA. Except as otherwise provided in the APA, the liens and security interests of the DIP Lenders and Prepetition Secured Noteholders shall attach to the proceeds of the Proposed Sale with the same priority, validity, force and effect as such interests existed with respect to the Acquired Assets immediately prior to the Closing. So long as any amounts remain outstanding under the Debtors' debtor in possession financing or the Debtors' prepetition secured notes, the proceeds from the Proposed Sale shall not be used by the Debtors absent the consent of the DIP Lenders or the Prepetition Secured Lenders, as applicable. Notwithstanding the foregoing, in the event the APA is terminated under the circumstances contemplated in Sections 13.3(b) or 13(c) therein, any amounts for Administrative Costs of the Debtors that are funded by Buyer prior to the Closing Date shall be considered a superpriority administrative expense of the Debtors' estate, subject only to the security interests of the DIP Lenders.

        j.     Subject to the terms and conditions of this Order, on the Closing Date, each creditor of the Debtors is authorized and directed to execute such documents and take all

other actions as may be necessary to release Claims on the Acquired Assets, if any, as provided for herein, as such Claims may have been recorded or may otherwise exist.

### Ancillary Agreements

k.      Buyer is hereby authorized to enter into any ancillary agreements contemplated under the APA, including the Transition Services Agreement. Debtors are authorized to take any actions as may be necessary, desirable or appropriate to effect, implement and/or consummate these ancillary agreements.

### Assumption and Assignment of Assigned Contracts

l.      Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, the Debtors' assumption and assignment or other transfer to the Buyer of all of the Debtors' right, title and interest in or under the Assigned Contracts are hereby approved, with only such exceptions as Buyer may agree in writing, and all requirements of section 365 of the Bankruptcy Code are hereby deemed satisfied. For the avoidance of doubt, the Debtors shall be deemed to have assumed and assigned each of the Assigned Contracts as of the date of and effective only upon the Closing Date and, absent such Closing, each of the Assigned Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtors under the Bankruptcy Code.

m.      Except as provided herein, the Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign, sell and otherwise transfer the Assigned Contracts of all of the Debtors' right, title or interest therein or thereunder to the Buyer free and clear of all Claims, and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Buyers.

n.      The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer.  There shall be no rent accelerations, assignment fees, penalties, increases or any other fees charged to the Buyer or the Debtors as a result of the assumption or assignment of the Assigned Contracts.  No Assigned Contract may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the transactions contemplated by the APA.

o.      To the extent that the Buyer exercises its right to exclude any Assigned Contract from prior to the Closing Date, such Assigned Contract shall (a) be deemed never to have been assumed by the Debtors or assigned to the Buyer and (b) remain subject to assumption, rejection or assignment by the Debtors at any time in the future.

p.      Except as may be otherwise agreed to by the parties the cure costs and Assigned Contract will be paid by the Buyer as soon as practicable.  With respect to disputed cure costs, the Buyer shall reserve sufficient funds to pay the full amount of any disputed cure costs related to the Proposed Sale until such time as there is a resolution among the parties or a final order of this Court determining the correct cure costs.

q.      Payment of the cure costs shall be a full satisfaction of any and all defaults under the Assigned Contracts, whether monetary or non-monetary, and upon payment of the Cure Costs any default of the Debtors thereunder shall have been irrevocably cured.  Upon the assumption and assignment of an Assigned Contract, the Debtors shall be released from any liability whatsoever arising under the Assigned Contracts and the cure costs and ongoing

obligations under the Assigned Contract shall be solely the obligation of the Buyer.  Except as otherwise provided in this Sale Order, each non Debtor counterparty to an Assigned Contract hereby is forever barred, estopped and permanently enjoined from asserting against the Debtors or the Buyer, their successors or assigns or the property of any of them, any default existing as of the date of the assumption of the Assigned Contract.

r.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assigned Contracts.

s.     Upon the Closing Date, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assigned Contracts.

t.     The assignments of each of the Assigned Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

### Additional Provisions

u.     Buyer is a good faith purchaser of the Acquired Assets.  Accordingly, in the absence of a stay pending appeal, if Buyer consummates the Proposed Sale at any time after entry of this Order, Buyer shall be entitled to the benefits and protections of section 363(m) of the Bankruptcy Code in the event of a reversal or modification on appeal of this Order.

v.     Each and every federal, state, and local governmental agency, unit or department is hereby directed to accept this Order as sole and sufficient evidence of the transfer of title of the Acquired Assets and such agency or department may rely upon this Order in consummating the transactions contemplated by the APA.

w.    Notwithstanding any other provision in the Motion or this Order, no assignment of any rights and interests of the Debtors in any Federal Communications Commission (the "FCC") license shall take place prior to the issuance of FCC regulatory approval for such assignment pursuant to the Communications Act of 1934, as amended and the rules and regulations promulgated there under.  The FCC's rights and powers to take any action pursuant to its regulatory authority, including imposing any regulatory conditions and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

x.    The consideration provided by Buyer for the Acquired Assets under the APA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia, and may not be avoided under section 363(n) of the Bankruptcy Code.

y.    The terms and provisions of the APA, together with the terms and provisions of this Order, shall be binding in all respects upon the Sellers, Buyer and their respective Affiliates, successors and assigns, including, without limitation, any trustee or examiner appointed in the Sellers' chapter 11 cases or any case under chapter 7 of the Bankruptcy Code to which the Sellers' chapter 11 cases may be converted, any affected third parties, including, without limitation, all persons asserting a claim against or interest in the Sellers' estates or any of the Acquired Assets.

z.    The failure to include specifically any particular provisions of the APA in this Order shall not diminish or impair the efficacy of such provisions, it being the intent of this Court that the APA be authorized and approved in its entirety.

aa.     The APA and any related agreements, documents or other instruments, including, without limitation, any ancillary agreements in connection therewith, may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court, provided that any such modification, amendment or supplement has no material adverse effect on the Sellers' estates or their creditors.

bb.     Except as expressly provided herein and in the APA, Buyer is not (nor shall be deemed to be) a successor to the Debtors or the estates by reason of any theory of law or equity or as a result of the consummation of the transactions or otherwise. Buyer shall not assume or in any way be responsible for any liability or obligation of the Debtors and/or the estates accruing, arising or relating to a period prior to the Closing Date, except as otherwise expressly provided as Assumed Liabilities in the APA.

cc.     In accordance with the powers available to this Court under 11 U.S.C. § 105, all claimants, creditors, employees and shareholders of the Debtors shall, upon Closing of the Sale be permanently and forever barred, restrained, precluded and enjoined from asserting any claims, commencing or continuing in any manner any action or other proceeding of any kind against the Buyer with respect to the Purchased Assets sold to the Buyer under the APA and the transactions contemplated therein, any theory of successor liability, de facto merger, or substantial continuity, whether based in law or equity, employee benefit obligations (including, without limitation, under WARN, the Employee Retirement Income Security Act, the Comprehensive Omnibus Budget Reconciliation Act and/or employee severance claims), CERCLA and all other Environmental Laws, any security interest, mortgage, lien, charge against or interest in property, adverse claim, claim of possession, right of way, license, easement or restriction of any kind, including, but not limited to, any restriction on the use, voting, transfer,

receipt of income or other exercise of any attributes of ownership or any option to purchase,

option, charge, retention agreement which is intended as security or other matters of any person

or entity that encumber or relate to or purport to encumber or relate to the Purchased Assets,

except for and to the extent of the Assumed Liabilities and specific obligations to be assumed or

taken subject to by the Buyer thereunder or as set forth in the APA.

    dd. Notwithstanding any other provision of this Order, all Claims of Liberty

Satellite Radio, Inc. and Liberty Satellite Radio Holdings, LLC (collectively, "Liberty")

(including any Liens of Liberty) shall attach to the Closing Date Payment described in Section

2.1 of the APA, and the Closing Date Payment shall not hereafter be used for any purpose

pending either (a) approval of the settlement agreement between the Debtors, Liberty, the

Committee, Buyer and certain representatives of certain such parties, which settlement

agreement was described to the Court at the Sale Hearing, or (b) further order of the Bankruptcy

Court.

    ee. Notwithstanding any other provision of this Order or the APA to the

contrary, the Debtors are not authorized hereby to assign, sell, transfer, or deliver in any form

any rights, software or proprietary information arising under the software license agreement with

SAP America, Inc. ("SAP") dated October 3, 2005 including all schedules, appendices and

amendments thereto (the "License Agreement"), including such rights, software or proprietary

information embedded in or loaded on any equipment, hardware or property, without the consent

of SAP. The Debtors are not authorized to provide the Buyer or any other party with any

transition services utilizing any rights, software or proprietary information arising out of the

License Agreement. The entry of this Order is without prejudice to the rights, remedies, and

claims of SAP against the Debtors, the Buyer or other recipients of the Debtors' equipment,

hardware or property relating to the transfer of any SAP licensed products, software or proprietary information without SAP's consent and compliance with the terms and conditions of the License Agreement.

ff.     In the event that the Sellers and Buyer do not consummate a final closing of the sale pursuant to the APA, Sellers shall be authorized to consummate the sale with Omnisat, LLC (the "Back-Up Bidder") on substantially the same terms and conditions as the APA (the "Back-Up Bid"), without any other or further order or authorization from the Court, and the Back-Up Bidder shall have all of the rights and privileges of the Buyer for purposes of this Order, and shall be treated as the Buyer under the terms of this Order, including, without limitation, the right to consummate the Back-Up Bid. Notwithstanding the above, should closing with the Buyer pursuant to the APA not occur prior to September 30, 2010, the Back-Up Bidder may elect to terminate the Back-Up Bid without any liability to the Back-Up Bidder or the Sellers.

gg.     If the APA is terminated, then the Debtors shall notify the Back-Up Bidder (with a copy to the Committee). Such notice shall provide the Back-Up Bidder with the right, within 30 days of the giving of such notice, to consummate the Back-Up Bid. The Debtors will provide with such notice a good faith estimate of amounts needed to continue their operations pending any closing of a sale to the Back-Up Bidder. If at any time the Back-Up Bidder declines or fails to fund the amounts reasonably needed to continue the Debtors' operations pending any closing of a sale to the Back-Up Bidder, the Debtors may take any actions permitted by law including, without limitation, de-orbiting their satellites and/or seeking to convert these cases to cases under chapter 7 of the Bankruptcy Code. Neither the taking of any such action by the Debtors, nor the refusal to fund by the Back-Up Bidder, shall result in any

claim or cause of action by or against any of the Debtors or the Back-Up Bidder, or their respective agents, representatives or professional advisors.

hh. Each and every term and provision of the APA, together with the terms and provisions of this Order, shall be binding in all respects upon, the Debtors, the Debtors' estates, its claimants, creditors, employees and the Debtors' shareholders, Skill Ventures, all entities and third parties, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, maintaining any authority relating to ERISA, COBRA, WARN Environmental Laws and/or Tax Laws, and their respective successors or assigns, including, but not limited to all non-debtor parties to the Assigned Contracts which may be assigned to the Buyer under the APA and persons asserting any Lien against or interest in the estates or any of the Purchased Assets to be sold and assigned to the Buyer, irrespective of any action commenced which contests the Debtors' authority to sell and assign the Purchased Assets or which seeks to enjoin such sale and/or assignment.

ii. Except to the extent expressly included in the Assumed Liabilities, and subject to (i) the terms of the APA; (ii) the closing and consummation of the Proposed Sale; and (iii) applicable law, pursuant to Bankruptcy Code sections 105 and 363, after the Closing Date, all persons and entities, including, but not limited to, the Debtors, the Committee, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Claim any kind or nature whatsoever against, in or with respect to any of the Debtors or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors,

the Acquired Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Acquired Assets to Buyer, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Claim, whether by payment, setoff, or otherwise, directly or indirectly, against Buyer and/or its successors or assigns or the Acquired Assets.

jj.　　This Court retains jurisdiction (i) to enforce and implement the terms and provisions of the APA, all amendments thereto authorized by this Order, any waivers and consents thereunder, and of each of the agreements, documents and instruments executed in connection therewith, (ii) to compel delivery of the Acquired Assets to Buyer, (iii) to resolve any disputes, controversies or claims arising out of or relating to the APA and (iv) to interpret, implement and enforce the provisions of this Order.

kk.　　Nothing contained in any subsequent order of this Court, or in any plan of reorganization or any order of this Court confirming such plan in the Sellers' chapter 11 cases, shall conflict with or impair the provisions of the APA or the terms of this Order.

ll.　　The transactions contemplated in the APA are being undertaken by the Debtors in good faith (as that term is used in section 363(m) of the Bankruptcy Code), and Buyer is and shall continue to be in good faith (as that term is used in section 363(m) of the Bankruptcy Code) by proceeding to close the transactions.  Accordingly, the reversal or modification on appeal of the authorization to consummate the APA and the transactions approved hereby shall not affect the validity and enforceability of such transactions, unless such authorization is duly stayed pending such appeal.  Buyer is a good faith purchaser of the Acquired Assets and entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.  Each and every

entity is enjoined from commencing or continuing an action seeking relief under section 363(n) of the Bankruptcy Code.

      mm.    This Order constitutes an itemized statement of the property sold, the name of Buyer and the price received for the property as a whole as required pursuant to Rule 6004(f)(1) of the Bankruptcy Rules.

      nn.    The Debtors are authorized and empowered to take all actions necessary to implement the relief and authorizations granted in this Order.

      oo.    Pursuant to Bankruptcy Rules 6004(g) and 6006(d), this Order shall be effective and enforceable immediately upon entry.

Dated: June **2**, 2010

                                               Honorable Peter J. Walsh
                                               United States Bankruptcy Judge