**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 )  ) Case No. 14-10979 (CSS) ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) (Jointly Administered) ) |
| Debtors. | ) **Re: D.I. 11427** ) **Hearing Date**: August 29, 2017 at 10:00 a.m. ET ) **Objection Deadline**: August 18, 2017 at 4:00 p.m. ET |

**OBJECTION OF UMB BANK, N.A.
IN CONNECTION WITH THE DISCLOSURE STATEMENT FOR THE
JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP.,
ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, AND THE
EFH/EFIH DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25% Senior Toggle Notes Due 2018 (the "PIK Notes"), by and through its undersigned counsel, files this objection (the "Objection") in connection with the Debtors' *Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11427] (the "Disclosure Statement" and such plan, the "Plan" [D.I. 11426]).[1] In support of this Objection, the Trustee respectfully submits as follows:

**PRELIMINARY STATEMENT**

The Trustee recognizes that, given the structure of the Plan and the proposed treatment of EFIH Unsecured Note Claims, issues concerning adequacy of the Disclosure Statement with respect to EFIH Unsecured Note Claims are limited. Nevertheless, the Disclosure Statement fails to provide certain "adequate information" as required by section 1125 of the Bankruptcy

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

PHIL1 6411251v.1

Code. In particular, the Disclosure Statement fails to provide adequate information with respect to the following issues, among others: (i) expected distributions and recoveries to holders of EFIH Unsecured Note Claims, (ii) the EFH Plan Administrator Board, (iii) allocation of Administrative Claims among the EFH Debtors and the EFIH Debtors, (iv) the payment of the EFIH Unsecured Notes Trustee Fees and Expenses, and (v) the Debtors' ability to cram down creditors under the current Plan.

For the foregoing reasons and those set forth below, approval of the Disclosure Statement should be denied unless the modifications to the Plan and Disclosure Statement set forth in this Objection are adopted by the Debtors.

## OBJECTION

### I. THE DISCLOSURE STATEMENT DOES NOT PROVIDE ADEQUATE DISCLOSURE

1. The Disclosure Statement fails to provide "adequate information" as required by section 1125 of the Bankruptcy Code and should not be approved in its current form. A disclosure statement may be approved as adequate only if it contains "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 322 (3d Cir. 2003) ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court.") (internal quotations omitted); *Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988). Furthermore, in determining whether a disclosure statement provides adequate information, section 1125 of the Bankruptcy Code requires that the Court consider "the benefit of additional

2

information to creditors and other parties in interest." 11 U.S.C. § 1125(a).  Courts have ample discretion to determine what constitutes adequate information.  *In re Lower Bucks Hosp.*, 571 F. App'x 139, 142 (3d Cir. 2014) (citing *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988)).  It is impossible to "overemphasize the debtor's obligation to provide sufficient data to satisfy the [Bankruptcy] Code standard of 'adequate information.'"  *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988).  Indeed, the "preparing and filing of a disclosure statement is a critical step in the reorganization of a Chapter 11 debtor," *id*., and, as such, "must clearly and succinctly inform the average unsecured creditor ***what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution***."  *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) (emphasis added).

2. As detailed below, the Disclosure Statement fails to provide adequate information with respect to, among other things:  (i) expected distributions and recoveries to holders of EFIH Unsecured Note Claims, (ii) the EFH Plan Administrator Board, (iii) allocation of Administrative Claims among the EFH Debtors and the EFIH Debtors, (iv) the payment of the EFIH Unsecured Notes Trustee Fees and Expenses, and (v) the Debtors' ability to cram down creditors under the current Plan.

    **A. The Disclosure Statement Does Not Adequately Address Expected Distributions and Recoveries to Holders of EFIH Unsecured Note Claims**

3. The Disclosure Statement fails to provide adequate information regarding the treatment of EFIH Unsecured Note Claims under the Plan, including ***what*** the holders of EFIH Unsecured Note Claims are going to get and ***when*** they are going to get it.  *In re Ferretti*, 128 B.R. at 19.  Section VI.A of the Plan, which discusses distributions to holders of EFIH Unsecured Note Claims, provides only general statements about the timing of distributions ("holders of Allowed Class B6 claims *may* receive a distribution on the EFH Effective Date")

3

and the size of such distributions ("the actual size of the distribution cannot be determined with finality at this time and is dependent on certain factors"). The Disclosure Statement provides no additional clarity. As such, the Debtors should be required to revise the Disclosure Statement to provide additional information on each point, as more fully addressed below.

            i.      *The Disclosure Statement Does Not Contain Adequate Information Regarding **What** Recoveries Will be to Holders of Allowed EFIH Unsecured Note Claims*

    4.    Although the Disclosure Statement estimates that EFIH unsecured creditors in Classes B5 and B6 (collectively, the "EFIH Unsecured Classes" and such creditors, the "EFIH Unsecured Creditors") will receive a projected [18]% recovery, it fails to include any additional discussion of how this recovery is estimated. At a minimum, the Debtors should be required to include a waterfall analysis outlining how this [18]% recovery is projected, as well as a discussion of what factors, if any, may further impact this estimated recovery. The Trustee is aware of at least one significant factor that could impact the [18]% estimated recovery that should be addressed in further detail – the argument over allocation of the $275 million NEE Termination Fee (if it is determined to be payable)[2] and other Administrative Claims. Given the significant impact that this allocation could have on recoveries, the Disclosure Statement must include additional information regarding the Administrative Claims (including the NEE Termination Fee) that will be allocated among the Debtors, the litigation risks and costs

---

[2] On July 29, 2017, Elliott filed its *Motion to Reconsider in Part the September 19, 2016 Order* [D.I. 9584] *Approving the NextEra Termination Fee* [D.I. 11636] (the "Motion to Reconsider"). On July 31, 2017, NextEra applied for payment of the NEE Termination Fee. *See Application of NextEra Energy, Inc. for Payment of Administrative Claim* [D.I. 11649] (the "NextEra Application"). On August 3, 2017, the Debtors initiated an adversary proceeding against NextEra seeking, among other things, a declaration that the NEE Termination Fee is not payable. *See* Complaint, *Energy Future Holdings Corp. v. NextEra Energy, Inc. (In re Energy Future Holdings Corp.)*, No. 17-50942 (CSS) (Bankr. D. Del. 2017) (the "Adversary Proceeding"). While the Motion to Reconsider is set to go forward at the September 19, 2017 hearing, the litigation schedule for the NextEra Application and the Adversary Proceeding remain uncertain at this time. The Disclosure Statement must be updated to reflect the commencement of these proceedings and the costs and risks associated with the NextEra Application and the Adversary Proceeding, especially in light of the fact-intensive nature of these disputes.

associated therewith, and the impact that such allocation could have on recoveries to EFIH Unsecured Creditors.  *See also* Section I.C below for a further discussion.

5. The Disclosure Statement also fails to discuss what could be distributed to creditors in the EFIH Unsecured Classes on the Effective Date.  As noted above, Section VI.A of the Plan provides that certain factors will impact the size of the distributions to EFIH Unsecured Creditors on the Effective Date.  While the Plan lists out what some of these factors are, neither the Plan nor Disclosure Statement provides any additional details.  The Debtors should be required to commit to a minimum Effective Date distribution and provide an estimate of the factors impacting initial distributions as part of the Plan Supplement, similar to what was done in the Prior Plan.[3]  *See* Amended Plan Supplement as it Relates to the EFH Debtors and EFIH Debtors for the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 10729] at <u>Exhibit B</u>.  Specifically, the Plan Supplement should include further details on each category that may impact any initial and further distributions to the EFIH Unsecured Creditors, including, without limitation:  (i) the amounts that will be funded into the EFIH Professional Fee Escrow Account, (ii) the estimated unpaid fees and expenses owed to the EFIH Unsecured Notes Trustee, (iii) the anticipated reserve amounts for General Administrative Claims Against the EFIH Debtors and Priority Tax Claims Against the EFIH Debtors, (iv) the costs of winding down the EFIH Debtors, and (v) any other factors that may impact distributions to EFIH Unsecured Creditors.

6. Lastly, the Plan and Disclosure Statement indicate that BHE Stock may be issued as alternative consideration to the EFIH Unsecured Creditors under certain circumstances.  Although the Plan provides that additional information regarding adjustments to the

---

[3] "Prior Plan" means the Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 10853].

consideration given to the EFIH Unsecured Creditors will be set forth in the Tax Contingency Disclosure (which will be filed as part of the Plan Supplement), the Trustee reserves all rights to request additional disclosure if it believes that the Tax Contingency Disclosure is not sufficient.

        ii.       *The Disclosure Statement Does Not Adequately Address **When** Holders of Allowed EFIH Unsecured Note Claims Will Receive Plan Distributions*

7.       As discussed above, neither the Plan nor the Disclosure Statement provides any degree of specificity regarding when holders of EFIH Unsecured Note Claims will receive initial distributions under the Plan.  Under the "Treatment of Claims and Interests" section, the Plan is completely silent on when holders of Allowed claims in Class B6 will receive distributions.  *See* Plan at Section III.B(21).  Section VI.A of the Plan provides some additional discussion regarding timing of distributions, but no more clarity; it merely provides that holders of Allowed Class B5 and B6 Claims "*may*" receive a distribution on the Effective Date, but that this is dependent on a number of factors not currently known.  The Trustee, however, believes that the Debtors are able to, and should, estimate and set aside appropriate reserves to account for these additional factors so that initial distributions ***will*** be made to EFIH Unsecured Creditors ***on*** the Effective Date.  As such, the Trustee submits that the Debtors should commit to make initial distributions to the EFIH Unsecured Creditors ***on the Effective Date*** and that the Plan and Disclosure Statement should be revised accordingly.[4]  If the Debtors are unable, or unwilling, to commit to make initial distributions to EFIH Unsecured Creditors on the Effective Date, then they should be required to highlight that factor and explain the reasons for taking such position.

---

[4]    While the Plan and Disclosure Statement provides that any Holder of a Claim can seek to compel the EFH Plan Administrator Board to make distributions from the EFH/EFIH Cash Distribution Account (*see* Plan at VI.B), the Trustee does not believe that this burden should be placed on the holders of EFIH Unsecured Notes in order to receive an initial distribution on the Effective Date.  Rather, the onus should be on the Debtors to put appropriate reserves in place and to make distributions to creditors of the EFIH Unsecured Classes on the Effective Date.

8.      In addition, the Plan contains ambiguous language regarding whether holders of EFIH Unsecured Notes will be kept from receiving distributions under the Plan until all disputes concerning the "Allowed" amount of their claim is resolved.  Specifically, the Plan provides that an "Allowed EFIH General Unsecured Claim" will include certain crystallized amounts as well as "any additional amounts ordered by the Bankruptcy Court but excluding, for the avoidance of doubt, any recovery on account of asserted Makewhole Claims".  *See* Plan at I.A(15).  The Plan and Disclosure Statement should be clarified to provide that any outstanding claim or litigation, if any, concerning such "additional amounts" will not delay distributions with respect to the known portions of the EFIH Unsecured Note Claims.

**B.   The Disclosures Regarding the EFH Plan Administrator Board are Insufficient**

9.      Under the Plan, recoveries and distributions to all EFIH Unsecured Creditors will be squarely within the control of the EFH Plan Administrator Board.  As such, additional disclosure above what is in the current Disclosure Statement is required to provide more insight into this construct:

- *The governance and organization of the EFH Plan Administrator Board is not described in the Disclosure Statement:*  The Disclosure Statement provides that the EFH Plan Administrator Board "may, but is not required to, establish governance and organization documents before or after the EFH Effective Date. . . ."  *See* Disclosure Statement, I.E.  At a minimum, the Debtors should be required to include, as part of the Plan Supplement, form governance and organization documents of the EFIH Plan Administrator Board so that those constituencies most directly impacted by the actions of the EFH Plan Administrator Board – the holders of the EFIH Unsecured Notes – have full disclosure related to the procedures and rules governing the EFH Plan Administrator Board.

- *The compensation of the members of the EFH Plan Administrator Board is not disclosed, nor is the funding amount available to the EFH Plan Administrator Board discussed.*  The Disclosure Statement or the Plan Supplement must include (a) the compensation that each member of the EFH Plan Administrator Board will receive, and (b) the funding that will be allocated to the EFH Plan Administrator Board to administer its duties, which includes the wind-down of the estates and distributions to creditors.  In addition, there is no discussion of how the fees and expenses of the EFH Plan Administrator Board members will be reviewed for reasonableness.  The Disclosure Statement must address this issue.

- *There is no discussion of what litigation the EFH Plan Administrator Board will pursue and whether the holders of the EFIH Unsecured Notes will have any ability to direct the EFH Plan Administrator Board to pursue, settle, or dismiss such litigation.*  As the creditor constituencies that likely will be most directly impacted as a result of the litigation related to the NEE Termination Fee or otherwise, the holders of EFIH Unsecured Notes should have a mechanism to direct the EFH Plan Administrator Board to pursue, settle or dismiss such litigation.  Similar to the construct that was put in place in the Prior Plan regarding the Makewhole Litigation, the holders of the EFIH Unsecured Notes should have the right to direct the EFH Plan Administrator Board.  If the Debtors decline to give the holders of the EFIH Unsecured Notes this power, the Disclosure Statement should state this and should explain the basis for such decision.

- *The Disclosure Statement fails to sufficiently explain how the EFH/EFIH Cash Distribution Account will be managed by the EFH Plan Administrator Board.*  The Plan provides that the EFH/EFIH Cash Distribution Account will consist of, among other things, the Cash Deposit Amount, the EFH Cash Account and the cash on hand of the EFIH Debtors as of the EFH Effective Date.  Despite these various categories, there is no commitment that these funds will be placed in separate interest-bearing escrow accounts (nor do the Debtors contemplate filing a form escrow agreement as part of the Plan Supplement).  The Disclosure Statement should include a discussion of how these various funds will be segregated and managed by the EFH Plan Administrator Board.  Further, currently, the Plan only requires the EFH Plan Administrator Board to provide an accounting to the professionals for holders of claims and interest against the EFH and EFIH Debtors, but does not set forth how often this accounting will be delivered nor does it allow this information to be shared with the actual creditors.  *See* Plan, VI.B.  The EFH Plan Administrator Board should be required to file with the Court quarterly reports on the status of the various account and distributions (which first report should include the initial EFIH cash on hand as of the Effective Date) and the Disclosure Statement should be revised to reflect this.

C. **The Disclosure Statement Contains Inadequate Information Regarding Allocation of Administrative Claims Among the EFH Debtors and the EFIH Debtors**

10. One of the significant issues that will impact distributions to all EFIH Unsecured Creditors is the allocation of Administrative Claims (i.e., professional fees and the NEE Termination Fee (if payable)) among the EFH and the EFIH Debtors.  The Disclosure Statement only provides a brief reference to how such a determination will be made – it provides that allocations between the EFH Debtors and the EFIH Debtors for any Administrative Claims or for satisfaction of liabilities to be paid or assumed under the Plan will be determined either (i) pursuant to a settlement reached between the EFH Debtors and the EFIH Debtors, acting at the

8

direction of the disinterested director, with details to be included in the Disclosure Statement by the date of the Disclosure Statement approval hearing or (ii) in such amounts as the Bankruptcy Court determines by Final Order. *See* Disclosure Statement V.F(10). Given the impact that such allocation could have on recoveries to EFIH Unsecured Creditors, additional and full disclosure is required as to whether, when and how any party in interest can review and possibly challenge any such "settlement" reached between the independent directors of the EFH and the EFIH Debtors, as well as estimates and disclosures regarding the litigation risks and costs associated with the allocation.

    **D.   The Disclosure Statement Fails to Address the Timing of the Payment of the EFIH Unsecured Notes Trustee Fees and Expenses**

11.    In the Prior Plan, language was included that specifically addressed the timing and availability of cash for the payment of the EFIH Unsecured Notes Trustee Fees and Expenses. *See* Prior Plan at I.A(161), IV.R. Such clarity is lacking in this Plan and Disclosure Statement and must be rectified. Specifically, the Plan and Disclosure Statements should be modified to provide that the EFIH Unsecured Notes Trustee Fees and Expenses owed as of the Effective Date will be paid ***on*** the Effective Date, similar to what was provided for in the Prior Plan, and the Disclosure Statement should indicate that such payment will limit the accrual of further trustee fees and expenses, including any interest claims.

    **E.   The Disclosure Statement and Solicitation Procedures Should Clarify that the Debtors Must Have an Impaired Consenting Class at EFIH in Order to Cram Down the Plan on EFIH Creditors**

12.    Section VIII.B(5) of the Disclosure Statement discusses the Debtors' ability to cram down the Plan on certain creditors and risk factors associated therewith. Specifically, the Disclosure Statement states that, to the extent some, but not all, Voting Classes vote to accept the Plan, the Debtors may seek to "cram down" the rejecting Classes. *See id.*

13. In discussing the possibility that the Debtors may seek confirmation of a nonconsensual plan pursuant to the cram down requirements, the Disclosure Statement does not address the Plan's failure to comply with the cram down provision of section 1129(a)(10) as interpreted by Delaware bankruptcy courts, which would have this Court evaluate whether cram-down is available on a *per-debtor* basis rather than on a *per-plan* basis. In other words, the Debtors ignore the risk that, without an impaired accepting class at EFIH, they will have no recourse to the cram-down powers of section 1129(b) to confirm the Plan as it relates to EFIH. As such, the Disclosure Statement should thus address how section 1129(a)(10) is implicated in seeking confirmation of the Plan.[5]

14. Section 1129(a)(10) provides that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10). This provision requires an impaired class to vote in favor of a plan. But additional analysis is required when a joint plan is filed for several debtors in an administratively consolidated case.[6] The Delaware bankruptcy courts have required an impaired accepting class from *each* debtor in a jointly administered chapter 11 case. *See, e.g.*, *In re Tribune Co.*, 464 B.R. 126, 180 (Bankr. D. Del. 2011), *on reconsideration*, 464 B.R. 208 (Bankr. D. Del. 2011) (concluding that absent substantive consolidation, there must be a consenting class for each individual debtor in a joint plan); Findings of Fact, Conclusions of Law, and Order Confirming

---

[5] Even if the Debtors argue that confirmation on a "per-plan" basis is appropriate in evaluating whether cram down is available (which it is not), the Disclosure Statement and the Plan recognize that the Plan constitutes a separate plan of reorganization for each of the EFH/EFIH Debtors. *See* Disclosure Statement at I.C(2). As such, the Debtors will be required to demonstrate their ability to cram down a particular creditor class as it relates to that specific Plan Debtor, rather than all Plan Debtors taken together.

[6] *See* Disclosure Statement at 2, 12 [Docket No. 11427] ("Each of the EFH/EFIH Debtors is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan does not contemplate the substantive consolidation of the EFH/EFIH Debtors' estates . . . The Plan constitutes a separate plan of reorganization for each of the EFH/EFIH Debtors.")

First Amended Joint Chapter 11 Plan Nortel Networks, Inc. and Certain of Its Affiliated Debtors, *In re Nortel Networks, Inc.*, No. 09-10138 (KG) (Bankr. D. Del. Jan. 24, 2017) [D.I. 17795], at ¶ 38 ("[T]here is at least one Class of Claims that is impaired under the Plan that has accepted the Plan *as to each Debtor* …) (emphasis added).  This interpretation of section 1129(a)(10) is known as the "per-debtor" approach.[7]  *See* COLLIER ON BANKRUPTCY ¶ 1129.02[10][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

15. While few cases have formally analyzed section 1129(a)(10), *In re Tribune* persuasively reasons for the per-debtor approach.  The court there considered two competing jointly administered plans, neither of which received the affirmative vote of an impaired class for each debtor entity included in the plan.  464 B.R. at 180.  In denying confirmation, the court first noted the Bankruptcy Code's statutory rule of construction that "the singular includes the plural." 11 U.S.C. § 102(7).  The court reasoned that section 1129(a)(10)'s reference to "plan" in the singular was not a sufficient basis on which to hang the per-plan interpretation.  Rather, the court considered section 1129(a)(10) in context with the other confirmation requirements.  464 B.R. at 182.  Just as, for example, section 1129(a)(7) (best interests of creditors test) requires satisfaction at each individual debtor, section 1129(a)(10) should be similarly interpreted to require that each debtor have an impaired accepting class.  464 B.R. at 183; *see also In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293 (Bankr. D. Del. 2011) (dismissing case where no realistic chance of reorganization existed because of the lack of an impaired accepting class).

---

[7] The competing approach—known as a "per-plan" basis—interprets section 1129(a)(10) to require only one impaired consenting class from across all debtors.  *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*, 419 B.R. 221, 266 (Bankr. S.D.N.Y. 2009) (noting that "it is appropriate to test compliance with section 1129(a)(10) on a per-plan basis, not, as the . . . Noteholders argue, on a per-debtor basis.").  The Debtors have previously recognized the Third Circuit's "per-debtor" approach in its confirmation brief filed in support of the seventh amended plan [Docket No. 10795] ("[T]here is an impaired consenting class of non-insider claims at *each* Debtor with a class of impaired Claims.  Accordingly, the Plan as it relates to the EFH/EFIH Debtors satisfies the requirements of section 1129(a)(10)).

16. As such, in order to provide adequate disclosure, the Disclosure Statement *and* solicitation procedures should be modified to include a full discussion of the Debtors' ability to cram down the Plan on EFIH creditors based on the current state of law that has been adopted by Delaware courts.

## II. THE PLAN HAS DEFICIENCIES THAT MAY MAKE IT UNCONFIRMABLE

17. While this Court indisputably has authority to consider confirmation issues at the disclosure statement stage that would make a debtor's chapter 11 plan patently unconfirmable (s*ee In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012)), the Trustee recognizes that, more often, the proper time to consider confirmation issues is at the hearing on confirmation of the Plan. The Trustee submits that the Plan may be susceptible to Plan-related objections (including the per-debtor versus per-plan issue addressed in section I.E above) that may make confirmation of the Plan impossible. As such, the Trustee reserves all rights to raise these confirmation issues at or before the Plan confirmation hearing.

## RESERVATION OF RIGHTS

18. The Trustee continues to evaluate the Disclosure Statement, Plan and related documents. In addition, the Trustee notes that the Plan Supplement documents have not yet been filed with the Court. As such, this Objection is submitted without prejudice to, and with a full reservation of, the Trustee's rights to supplement this Objection in advance of, or in connection with, the hearing to approve the Disclosure Statement. Nothing herein shall be deemed to waive the Trustee's right to assert any arguments in connection with confirmation of the Plan, including the right to seek discovery in connection therewith.

## **CONCLUSION**

**WHEREFORE**, for the reasons set forth in this Objection, the Trustee respectfully requests that the Court deny approval of the Disclosure Statement unless the Plan and Disclosure Statement are modified as set forth in the Objection.

| | |
|---|---|
| Dated: August 18, 2017<br>Wilmington, Delaware | By: */s/ Raymond H. Lemisch*<br>**KLEHR HARRISON HARVEY BRANZBURG LLP**<br>Raymond H. Lemisch (No. 4204)<br>919 Market Street, Suite 1000<br>Wilmington, DE 19801<br>Telephone: (302) 426-1189<br>Facsimile: (302) 426-9193<br>E-mail: rlemisch@klehr.com |
| **AKIN GUMP STRAUSS HAUER & FELD LLP**<br>Ira S. Dizengoff (admitted *pro hac vice*)<br>Abid Qureshi (admitted *pro hac vice*)<br>One Bryant Park<br>New York, NY 10036<br>Telephone:   (212) 872-1000<br>Facsimile:   (212) 872-1002<br>Email:   idizengoff@akingump.com<br>         aqureshi@akingump.com | *-and-*<br><br>**FOLEY & LARDNER LLP**<br>Harold L. Kaplan (admitted *pro hac vice*)<br>Mark F. Hebbeln (admitted *pro hac vice*)<br>Lars A. Peterson (admitted *pro hac vice*)<br>321 North Clark Street, Suite 2800<br>Chicago, IL 60654-5313<br>Telephone: (312) 832-4500<br>Facsimile: (312) 832-4700<br>Email: hkaplan@foley.com<br>     mhebbeln@foley.com<br>     lapeterson@foley.com |
| Scott L. Alberino (admitted *pro hac vice*)<br>Joanna F. Newdeck (admitted *pro hac vice*)<br>1333 New Hampshire Avenue, N.W.<br>Washington, D.C. 20036<br>Telephone:   (202) 887-4000<br>Facsimile:   (202) 887-4288<br>Email:   salberino@akingump.com<br>         jnewdeck@akingump.com | Barry G. Felder (admitted *pro hac vice*)<br>Jonathan H. Friedman (admitted *pro hac vice*)<br>90 Park Avenue<br>New York, NY 10016<br>Telephone: (212) 682-7474<br>Facsimile: (212) 687-2329<br>E-mail: bgfelder@foley.com<br>     jfriedman@foley.com |

*Co-Counsel for UMB BANK, N.A., as Trustee*