**<u>Exhibit A</u>**

**Amendment No. 1**

**Execution Version**

# CLARIFICATION AND AMENDMENT NO. 1 TO AGREEMENT AND PLAN OF MERGER

THIS CLARIFICATION AND AMENDMENT NO. 1 TO AGREEMENT AND PLAN OF MERGER (this "Clarification and Amendment") dated as of August 19, 2017 is by and among Energy Future Holdings Corp., a Texas corporation, Energy Future Intermediate Holding Company LLC, a Delaware limited liability company, Berkshire Hathaway Energy Company, an Iowa corporation ("Parent"), O.E. Merger Sub Inc., a Delaware corporation and direct wholly owned subsidiary of Parent ("EFH Merger Sub"), O.E. Merger Sub II, LLC, a Delaware limited liability company and direct wholly owned subsidiary of EFH Merger Sub ("EFIH Merger Sub"), and O.E. Merger Sub III, LLC, a Delaware limited liability company and direct wholly owned subsidiary of EFIH Merger Sub.

## RECITALS

WHEREAS, the parties hereto entered into that certain Agreement and Plan of Merger on July 7, 2017 (the "Merger Agreement") and wish to clarify and amend certain terms of the Merger Agreement in accordance with Section 9.2 thereof.

**NOW, THEREFORE**, in consideration of the premises, representations, warranties, covenants and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows:

1. Initially capitalized terms used but not defined herein shall have the respective meanings given to them in the Merger Agreement.

2. The parties hereto agree as a clarification of the Merger Agreement that the parties intend that assuming the Closing occurs prior to December 31, 2017, the following amounts shall be transferred to the EFH/EFIH Cash Distribution Account (as defined in the Plan of Reorganization) to be distributed pro rata to all Holders of an Allowed Unsecured Claim against one or more of the EFIH Debtors: (a) all distributions by Oncor to Oncor Holdings on account of dividends actually paid from and after Closing through December 31, 2017, and (b) a pro rata share of all dividends actually paid during the first quarter of 2018 based on Oncor's net income during the fourth quarter of 2017, pro-rated based on the number of days during the fourth quarter prior to Closing (including the Closing Date) and the number of days during the fourth quarter after Closing. By way of example, if the Closing occurs on October 31, 2017, and Oncor declares and pays a dividend during February 2018 based on Oncor's net income during the fourth quarter of 2017, the transfer to the EFH/EFIH Cash Distribution Account would be equal to the amount of the dividend *multiplied by* the fraction equal to (i) 31 days *divided* by (ii) 92 days.

3. The Merger Agreement is hereby amended by deleting the last sentence of subclause 6.19(b) thereof in its entirety.

4. The Merger Agreement is hereby amended by deleting the reference to "the condition set forth in Section 7.2(f)(ii) has been satisfied, but" contained in the first sentence of Section 6.22 thereof in its entirety.

5.   The Merger Agreement is hereby amended by deleting subclause 7.2(f) thereof in its entirety and replacing it with the following:

   (f) RESERVED.

6.   The Merger Agreement is hereby amended by adding the following as subclause 8.3(g):

   (g)   by the Company and EFIH (acting together) if the PUCT issues an order denying the approval sought in the PUCT Filing or the PUCT issues an order that imposes a Burdensome Condition, 30 days after the issuance of that order, if the order has not been vacated or materially modified (such that the modified order no longer denies the approval sought in the PUCT Filing) or such Burdensome Condition has not been vacated, withdrawn, materially modified or accepted by Parent during that 30 day period.

7.   The Merger Agreement is hereby amended by adding the following as subclause 8.3(h):

   (h)   by the Company and EFIH (acting together) if the IRS has indicated to the Company (and the Company to Parent) that one or more of the Supplemental Rulings would require the issuance of Parent Preferred Stock or other Parent stock as part of the EFH Consideration and/or EFIH Consideration and, within 30 Business Days of a Final Determination on such matter from the IRS Parent has not agreed to issue the amount or type of Parent stock required in order to obtain such Supplemental Rulings (or the tax opinions, to the extent such tax opinions will not be issued because the Supplemental Rulings have not been obtained due to such failure by Parent to agree).  For this purpose, a "Final Determination" means the date on which, after giving a preliminary indication of the amount and type of such Parent stock it believes is required, the IRS has received (orally or in writing) the Company's and Parent's responses to the IRS indication (and any modifications to such indication) and has communicated to the Company (and the Company to Parent) that the IRS has completed its consideration of the issue and the Company's position and will not be making any changes or further changes to its determination of the required amount or type of Parent stock.

8.   The Merger Agreement is hereby amended by adding the following as subclause 8.3(i):

   (i)   by the Company and EFIH (acting together) if (1) the Bankruptcy Court has entered an order to the effect that the Drag-Along Rights are not valid and enforceable with respect to TTI in connection with the transactions contemplated by the Merger Agreement and/or that the Company is not entitled to enforce the Drag-Along Rights if the total payments TTI receives in connection with the transactions contemplated by the Merger Agreement satisfy the IRR hurdle and (2) within 30 Business Days of such ruling, Parent has not informed the Company that it is continuing to pursue the acquisition of the TTI Minority Interest.

9. The Merger Agreement is hereby amended by deleting subclause 8.5(b) thereof in its entirety and replacing it with the following:

(b) If this Agreement is terminated pursuant to this Article VIII and any alternative transaction is consummated (including any transaction or proceeding that permits the E-Side Debtors that are the direct or indirect owners of Oncor Holdings to emerge from the Chapter 11 Cases) pursuant to which neither Parent nor any of its Affiliates will obtain direct or indirect ownership of 100% of Oncor Holdings and Oncor Holdings' approximately 80% equity interest in Oncor, then, if the Approval Order has been entered, no later than five (5) days following the consummation of such alternative transaction, the Company and EFIH shall pay to Parent the Termination Fee (as defined below), by wire transfer, as directed by Parent, in immediately available funds; *provided*, *however*, that the Termination Fee (as defined below) will not be payable if this Agreement is terminated (i) pursuant to Section 8.1, (ii) by Parent or the Company/EFIH pursuant to Section 8.2(b) if such final and non-appealable order has been issued by the PUCT, (iii) by Parent or the Company/EFIH pursuant to Section 8.2(a) and the only conditions set forth in Article VII not satisfied or waived in accordance with this Agreement as of the date of such termination are (A) those conditions that by their nature or pursuant to the terms of this Agreement are to be satisfied at the Closing (and such conditions were, at the time of termination, capable of being satisfied at the Closing) and (B)(1) the receipt of the PUCT Approval as required under Section 7.2(c) and/or (2) the Supplemental Rulings being obtained (or tax opinions being issued) as required under Section 7.1(f) (*provided that*, this clause (iii)(B)(2) of this Section 8.5(b) shall not apply unless the IRS has indicated that one or more Supplemental Rulings would require the issuance of Parent Preferred Stock or other Parent stock as part of the EFH Consideration and/or EFIH Consideration, and Parent has not agreed to issue the required amount or type of Parent stock in order to obtain such Supplemental Rulings (or the tax opinions, to the extent such tax opinions will not be issued because the Supplemental Rulings have not been obtained due to such failure by Parent to agree)), (iv) by Parent pursuant to Section 8.4(h)(iv) and one or more of the following conditions set forth in Article VII had not yet been satisfied as of the time of termination: (A) the receipt of the PUCT Approval as required under Section 7.2(c) and/or (B) the Supplemental Rulings being obtained (or the tax opinions being issued) as required under Section 7.1(f) (*provided that* this clause (iv)(B) of this Section 8.5(b) shall not apply unless the IRS has indicated that one or more Supplemental Rulings would require the issuance of Parent Preferred Stock or other Parent stock as part of the EFH Consideration and/or EFIH Consideration, and Parent has not agreed to issue the required amount or type of Parent stock in order to obtain such Supplemental Rulings (or the tax opinions, to the extent such tax opinions will not be issued because the Supplemental Rulings have not been obtained due to such failure by Parent to agree)), (v) by Parent pursuant to Section 8.4(g) (unless the Chapter 11 Cases are dismissed or converted to Chapter 7 of the Bankruptcy Code with respect to the Company or EFIH in which case the Termination Fee is payable), or (vi) by the Company pursuant to Section 8.3(a), 8.3(b), 8.3(g), 8.3(h), or 8.3(i). In the event the Company and EFIH pay the Termination Fee pursuant to this Section 8.5(b), such payment shall be the sole and exclusive remedy of Parent and Merger Subs against the Company, EFIH and their respective Affiliates, Representatives, creditors or

3

shareholders with respect to any breach of this Agreement prior to such termination. If the Approval Order has been entered, the Company's and EFIH's obligation to pay the Termination Fee pursuant to this Section 8.5(b) shall survive the termination of this Agreement. If the Approval Order has been entered, the Termination Fee shall constitute an administrative expense of the Company and EFIH under the Bankruptcy Code. "Termination Fee" shall mean an amount equal to $270,000,000, inclusive of all expense reimbursements, including reasonable and documented professional fees of Parent and Merger Subs; *provided that*, in no event shall such claim be senior or *pari passu* with the superpriority administrative claims granted to the secured parties pursuant to the DIP Facility (as in effect on the date hereof).

10.    Other than as expressly modified pursuant to this Clarification and Amendment, all of the terms, conditions and other provisions of the Merger Agreement are hereby ratified and confirmed and shall continue to be in full force and effect in accordance with their respective terms.

11.    All references to the Merger Agreement (including "hereof," "herein," "hereunder," "hereby" and "this Agreement") shall refer to the Merger Agreement as clarified and amended by this Clarification and Amendment. Notwithstanding the foregoing, references to the date of the Merger Agreement (as amended hereby) and references in the Merger Agreement to "the date hereof," "the date of this Agreement" and terms of similar import shall in all instances continue to refer to July 7, 2017.

12.    This Clarification and Amendment may be executed in any number of counterparts (including by electronic means), each such counterpart being deemed to be an original instrument, and all such counterparts taken together constituting one and the same agreement.

13.    The provisions of Article IX of the Merger Agreement shall apply to this Clarification and Amendment *mutatis mutandis*, and to the Merger Agreement as modified by this Clarification and Amendment, taken together as a single agreement, reflecting the terms as modified hereby.

[*Remainder of Page Intentionally Left Blank; Signature Page to Follow*]

**IN WITNESS WHEREOF**, this Clarification and Amendment has been duly executed and delivered by the duly authorized officers of the parties hereto as of the date first written above.

**ENERGY FUTURE HOLDINGS CORP.**

By: *[signature: Andrew M. Wyatt]*
Name: Andrew Wyatt
Title: EVP & General Counsel

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

By: *[signature: Andrew M. Wyatt]*
Name: Andrew Wyatt
Title: EVP & General Counsel

*[Signature Page to Clarification and Amendment No. 1 to Agreement and Plan of Merger]*

Execution Version

BERKSHIRE HATHAWAY ENERGY COMPANY

By: /s/ Patrick J. Goodman
Name: Patrick J. Goodman
Title: EVP + CFO

O.E. MERGER SUB INC.

By: /s/ Patrick J. Goodman
Name: Patrick J. Goodman
Title: Chairman and President

O.E. MERGER SUB II, LLC

By: /s/ Patrick J. Goodman
Name: Patrick J. Goodman
Title: Manager

O.E. MERGER SUB III, LLC

By: O.E. Merger Sub II, LLC, its sole member

By: /s/ Patrick J. Goodman
Name: Patrick J. Goodman
Title: Manager

*[Signature Page to Clarification and Amendment No. 1 to Agreement and Plan of Merger]*