1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4    In re:                          :

5                                    :    Chapter 11

6    ENERGY FUTURE HOLDINGS CORP., :    Case No. 14-10979 (CSS)

7    et al.,                         :

8             Debtors.              :    (Jointly Administered)

9    _____:

10

11                                United States Bankruptcy Court

12                                824 North Market Street

13                                Wilmington, Delaware

14                                August 21, 2017

15                                9:13 a.m. - 9:28 a.m.

16

17

18

19

20

21    B E F O R E :

22    HON CHRISTOPHER S. SONTCHI

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO OPERATOR:  AL LUGANO

1   HEARING re Motion of the EFH/EFIH Debtors for Order

2   Authorizing Entry into Merger Agreement and Approving

3   Termination Fee [D.I. 11430; filed July 7, 2017] (the

4   "Merger Agreement Motion")

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    MONTGOMERY MCCRACKEN WALKER & RHOADS, LLP

4         Attorneys for the E-Side Committee

5

6    BY:  NATALIE RAMSEY

7

8    SULLIVAN & CROMWELL

9         Attorneys for the E-Side Committee

10

11   BY:  BRIAN GLUECKSTEIN

12        ALEXA J. KRANZLEY

13

14   FRESHFIELDS BRUCKHAUS DERINGER US LLP

15        Attorneys for Sunrise

16

17   BY:  ABBEY WALSH

18        STEVEN FRUCHTER

19

20   GELLERT SCALI BUSENKELL & BROWN, LLC

21        Attorneys for Sunrise

22

23   BY:  MIKE BUSENKELL

24

25

1  O'KELLY ERNST & JOYCE, LLC

2      Attorneys for Fidelity

3

4  BY:  MICHAEL J. JOYCE

5

6  POTTER ANDERSON & CORROON LLP

7      Attorneys for EFIH DIP Agent

8

9  BY:  R. STEPHEN MCNEILL

10

11 KIRKLAND & ELLIS LLP

12     Attorneys for Debtors

13

14 BY:  JONATHAN GANTER

15     BRYAN STEPHANY

16     MICHAEL ESSER

17     APARNA YENAMANDRA

18     MARK MCKANE

19     CHAD HUSNICK

20

21 RICHARDS LAYTON & FINGER

22     Attorneys for Debtors

23

24 BY:  DANIEL DEFRANCESCHI

25     JASON MADRON

1   ROPES & GRAY LLP

2        Attorneys for Elliott

3

4   BY:  GREGG GALARDI

5        KEITH WOFFARD

6

7   BAYARD LAW FIRM

8        Attorneys for Elliott

9

10  BY:  SCOTT COUSINS

11

12  JENNER & BLOCK LLP

13       Attorneys for EFIH DIP Agent

14

15  BY:  RICHARD LEVIN

16

17  STEVENS & LEE P.C.

18       Attorneys for EFIH DIP Agent

19

20  BY:  JOSEPH H. HUSTON, JR.

21       JASON D. ANGELO

22

23

24

25

1   LANDIS RATH & COBB LLP

2        Attorneys for Next Era Energy, Inc.

3

4   BY:  KIM BROM

5

6   NORTON ROSE FULLBRIGHT

7        Attorneys for Next Era Energy, Inc.

8

9   BY:  ANDREW ROSENBLATT

10

11  VENABLE LLP

12        Attorneys for PIMCO

13

14  BY:  JAMIE MARINO

15        JEFFREY SABIN

16

17  BIELLI & KLAUDER, LLC

18        Attorneys for EFH

19

20  BY:  DAVID KLAUDER

21

22

23

24

25

1    PROSKAUER ROSE LLP

2         Attorneys for EFH

3

4    BY:  MARK THOMAS

5         PETER YOUNG

6

7    KLEHR HARRISON HARVEY BRANZBURG LLP

8         Attorneys for UMB Bank

9

10   BY:  RAYMOND LEMISCH

11

12   AIKEN GUMP STRAUSS HAUER & FELD LLP

13        Attorneys for UMB Bank

14

15   BY:  ABID GURESHI

16

17   HOGAN MCDANIEL

18        Attorneys for Fenicle Fahy Heinzmann & Jones

19

20   BY:  DANIEL HOGAN

21

22

23

24

25

1    PACHULSKI STANG ZIEHL & JONES

2          Attorneys for Computershare

3

4    BY:  LAURA DAVIS JONES

5

6    KRAMER LEVIN

7          Attorneys for Computershare

8

9    BY:  JENNIFER SHARRET

10

11   UNITED STATES DEPARTMENT OF JUSTICE

12

13   BY:  RICHARD SCHEPACARTER

14

15   NIXON PEABODY

16

17   BY:  RICHARD PADONE

18

19   ALSO PRESENT TELEPHONICALLY:

20

21   JACOB A. ALDERSTEIN

22   SCOTT L. ALBERINO

23   RYAN APPLEBY

24   SAM M. ASHURAEY

25   ROBIN D. BALL

1   NEGISA BALLUKU

2   JULIE BELL

3   ROB BERNTSEN

4   LAUREN BILZIN

5   LAURIE BINDER

6   PEG A. BRICKLEY

7   CAITLIN K. CAHOW

8   ALLISTER CHAN

9   MARK A. CODY

10  DAVID DUNN

11  GIANCARLO FINIZIO

12  MARK A. FINK

13  MICHAEL FIRESTEIN

14  MARK FLANNIGAN

15  JOSEPH A. FLORCZAK

16  SIMON E. FRASER

17  JULIE FROST-DAVIS

18  ADAM GUBNER

19  PETER HANLON

20  TAYLOR B. HARRISON

21  JEREMY HOLLEMBEAK

22  HAROLD KAPLAN

23  EMILY L. KATZ

24  THOMAS KRELLER

25  ROB LASICH

1    IAN LONG

2    DAWN MCCARTY

3    HAL F. MORRIS

4    TINA MOSS

5    CYNTHIA MULLEN

6    MICHAEL S. NEURNEISTER

7    JOANNA S. NEWDECK

8    JOSEPH A. PACK

9    RICHARD PEDONE

10   JASON T. PRAGER

11   MATTHEW M. ROOSE

12   RAVI SARAWGI

13   NED S. SCHOTTENSTEIN

14   HOWARD SEIFE

15   CHARLES E. SIEVING

16   JOHN SILVETZ

17   FREDRIC SOSNICK

18   ANGELO THALASSINOS

19   ANDREW M. THAU

20   AMER TIWANA

21   CARL TULLSON

22   MICHAEL TURKEL

23   PATRICK VENTER

24   MEGAN WASSON

25   BEADY C. WILLIAMSON

1    GRENVILLE DAY

2    GREGG GALARDI

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      P R O C E E D I N G S

2              CLERK:  All rise.

3              THE COURT:  Please be seated.  If you can call

4     your first witness, Mr. Husnick.

5              MR. HUSNICK:  There are so many people in this

6     room that I'd like to do that to.

7              Your Honor, good morning, Chad Husnick with

8     Kirkland & Ellis.  I'm here with my colleagues, Mark McKane

9     and Aparna Yenamandra on behalf of the Debtors.

10             Your Honor, as the Court is aware, we were

11    scheduled to be here today on the Debtor's motion to approve

12    a merger agreement with Berkshire Energy.  Late yesterday,

13    Your Honor, the Debtors ultimately determined to pursue

14    another path.  That path, Your Honor, late last night, the

15    Debtors entered into a new merger agreement with Sempra

16    Energy.  And their counsel is here today, and I'll summarize

17    that agreement in a moment.

18             At the same time as entering into that merger

19    agreement, the Debtors were able to execute a plan support

20    agreement that has the support of the Debtor's single

21    largest creditor, Elliott, across each of the remaining

22    Debtor's estates.  That plan support agreement contains

23    various milestones that I'll summarize, but ultimately

24    contains Elliott's support for confirmation of a plan that

25    embodies the Sempra deal.

1              The Sempra transaction represents a number --

2      provides a number of incremental benefits to the transaction

3      to the estates over and above the Berkshire transaction.

4      I'll just summarize a few here, Your Honor.

5              First, and perhaps most importantly, the Semper

6      transaction represents a higher or otherwise better bid in

7      terms of its headline number.  It's at $9.45 billion.  The

8      Berkshire deal being at 9 billion, this is an increase of

9      $450 million.

10             Next, the Sempra transaction reduces the size of

11     the termination fee from 270 million to 190 million.  And

12     importantly as to the breakup fee, Your Honor, there is a

13     much more limited set of circumstances under which the

14     Debtor's would be obligated to pay the breakup fee.  For

15     example, if EFIH or EFH breached their obligations under the

16     merger agreement or if the Debtors exercised their right to

17     terminate the merger agreement and close on a higher or

18     otherwise better offer.

19             Importantly, there are no -- there's no triggers

20     for failure of confirmation, failure to drag TTI.  In fact,

21     as I'm going to mention in a second, the TTI drag, that is

22     the minority shareholder at Oncor Holdings -- I'm sorry --

23     at Oncor, is not a condition to closing this deal.  This

24     deal does not contemplate that that ownership interest will

25     change.

1            The reduction in conditionality, the reduction in

2     the breakup fee were all very important.  But I think most

3     importantly to the Debtor's decision to pursue this path was

4     the support of Elliott and the reduction of confirmation

5     risk that was associated with other proposals that we had

6     seen to date.

7            Your Honor, just a brief moment on Sempra.  Sempra

8     is a publicly traded California-based utility holding

9     company that operates in two business segments along with

10    its three primary subsidiaries, Southern California Gas

11    Company, San Diego Gas and Electric, and Sempra South

12    American Utilities.  The Southern California Gas has the

13    largest customer base of any U.S. natural gas distribution

14    utility, and Sempra has domestic business operations in

15    California, internationally, and most notably, here in

16    Texas.

17           Like Berkshire, Sempra is a financially stable and

18    well-regarded utility holding company.  Sempra is a Fortune

19    500 company with an enterprise value of over $49 billion and

20    has over 16,000 employees.

21           At this time, Your Honor, given the increased

22    purchase price, the reduction in the break fee, the

23    reputation of Sempra, and the Debtor's belief as to the

24    overall size of the transaction and the benefit to the

25    estates, the Debtors did determine to pursue the Sempra bid

1    as the highest or otherwise best offer on the table at this

2    time.

3            So late last night, simultaneously with executing

4    the revised merger agreement with Sempra, the Debtors did

5    terminate the merger agreement, enter into the merger

6    agreement with Sempra, and execute a plan support agreement

7    with Elliott and Sempra.  The Debtor's plan to file an

8    amended motion to approve the Semper merger agreement and

9    add in supplemental relief on the plan support agreement.

10           Additionally, as soon as humanly possible, the

11   Debtors will file with the Court an amended plan of

12   reorganization, an amended disclosure statement, amended

13   motion to approve that disclosure statement, and we will

14   work together with Elliott and Sempra on a proposal for

15   modifying the scheduling order that Your Honor previously

16   approved in connection with the Berkshire transaction.

17           The Debtors had planned to request that the Court

18   hear the amended motion to approve the Sempra merger

19   agreement, the plan support agreement, and the disclosure

20   agreement -- or disclosure statement on August 29th, which

21   was the date that the Court had set for approval of the

22   Berkshire disclosure statement.

23           However, Your Honor, in discussions with Elliott,

24   Sempra, and the Office of the United States Trustee -- and

25   this is just late breaking, so I want to make sure I don't

Case 14-10979-CSS   Doc 11794   Filed 08/22/17   Page 16 of 23

Page 16

```
1    get it wrong and I'll let everybody respond -- but I believe
2    we've -- that the Office of the United States Trustee is
3    comfortable with us moving forward on the merger agreement
4    approval motion on the 29th, but that the plan support
5    agreement approval would not be heard until June 6th -- I'm
6    sorry -- August 6th.  I'm getting my months mixed up.
7                GROUP:  September.
8                MR. HUSNICK:  September 6th.  I don't want summer
9    to end.
10               THE COURT:  Okay, so that's the merger agreement
11   on the 29th.  And the PSA?
12               MR. HUSNICK:  On the September 6th.
13               THE COURT:  What about the disclosure statement?
14               MR. HUSNICK:  And the disclosure statement, I
15   believe, we would keep on September 29th because we do not
16   expect -- August 29th -- oh my Lord -- August 29th, because
17   the changes will be relatively minor.  Obviously, I think
18   parties will have the ability to raise whatever objections
19   they have to those amended documents probably up until the
20   hearing.
21               Your Honor, unless you have any questions, I
22   should set out that there are a number of milestones set
23   forth in the plan support agreement and it probably helps
24   for the record for folks to understand kind of how we see
25   this playing out over the next few months.  And at the risk
```

212-267-6868              www.veritext.com              516-608-2400

1    of getting these months all wrong, I'm going to read them

2    right off the page.

3            We plan to file the plan and disclosure statement

4    and amended documents no later than August 28th.  But as I

5    said, I expect to file those within the next 24 to 48 hours.

6    We have a deadline of obtaining approval of the plan support

7    agreement and merger agreement by September 30th at the same

8    -- that same date for the deadline in the disclosure

9    statement order that's September 30th.

10            We have a deadline of obtaining plan confirmation

11    within 30 days of the PUCT's approval.  This is very

12    important.  As we represented to the Court in connection

13    with the Berkshire agreement, so too do we do here with the

14    Sempra agreement.  We plan to proceed to get PUCT approval

15    before we ask Your Honor to confirm the plan.  This is

16    consistent with, I believe, the preferences of the PUCT.

17            We do have a deadline of obtaining a POR

18    confirmation -- or effective date.  That is 240 days from

19    yesterday.  That is subject to a 90-day extension to the

20    extent the Debtors have not yet obtained confirmation or

21    obtained approval from the PUCT, but all other conditions

22    have been satisfied.

23            Unless you have any questions, Your Honor, that's

24    our status update.  But I can report the Debtors are very

25    happy to have been able to generate consensus around this

1    deal.  We're happy that we didn't have to have an all-day

2    trial.  But we are now laser focused on getting approval of

3    this transaction in Texas as quickly as we possibly can.

4         THE COURT:  Could you talk a little bit about what

5    Sempra has agreed to in connection with conditions in front

6    of -- in connection with approval from the PUCT?

7         MR. HUSNICK:  Absolutely, Your Honor.  Sempra has

8    agreed to accept the ring fence as is where is.  They are

9    not seeking to modify any elements of the ring fence.  In

10   addition, Sempra has agreed to step down the debt above EFIH

11   over time.  While there will be debt on EFIH at exit, that

12   debt will be paid off over a defined period of time.

13        There are a number of additional commitments that

14   Sempra is working on and will negotiate with the interveners

15   and the PUCT staff.  But we think the headline of accepting

16   the ring fence as it is right now is a very, very important

17   distinction from prior deals -- not Berkshire, but prior

18   deals that we have brought to the PUCT for approval.  And

19   notably distinct from the Berkshire deal is this deal is not

20   conditioned upon eliminating the 20 percent minority holder,

21   which was one of the ring fence protections that was put in

22   place in 2007 or immediately following 2007.

23        THE COURT:  I had another question and it's just

24   escaped me.  All right, that's fine.  Thank you.

25        MR. HUSNICK:  Okay.  Thank you, Your Honor.

1            THE COURT:  Anyone else with to be heard?  Mr.

2    Galardi?

3            MR. GALARDI:  Your Honor, very briefly.  As noted,

4    Elliott has signed the plan support agreement.  We're

5    supportive of the Sempra transaction, which provides

6    substantially greater recoveries to the unsecured creditors.

7    And, Your Honor, we'd also support the schedule that the

8    Debtors have proposed to Your Honor.  Thank you.

9            THE COURT:  You're welcome.  Mr. Husnick, I

10   remembered my question.  And if I could, Mr. Schepacarter,

11   real quick.  I assume Berkshire did not -- was not willing

12   to either increase its bid or extend the time by which the

13   termination fee and the merger agreement had to be approved?

14           MR. HUSNICK:  That's correct, Your Honor.  We did

15   have, or my client did have conversations with Berkshire,

16   certainly over the last few days.  But last night one last

17   time, and we were confirmed that Berkshire did not want to

18   improve its economic terms.

19           THE COURT:  Okay.  Thank you.

20           MR. HUSNICK:  Thank you.

21           THE COURT:  Sorry.  Mr. Schepacarter.

22           MR. SCHEPACARTER:  Good morning, Your Honor.

23   Richard Schepacarter, United States Trustee.

24           I have agreed to -- we've agreed to that the

25   shortened time with Mr. Galardi and with counsel for Sempra.

1    As Mr. Husnick had indicated, hopefully, those documents

2    will be filed quickly.  I don't want them to be extended out

3    with respect to filing both the PSA, the motion to approve

4    the PSA, as well as the amended motion to approve the new

5    merger agreement.

6             I've also agreed that I'm going to be provided, I

7    think, with a blacklined -- hopefully, quickly -- that I can

8    review and, hopefully, have no issues or I can address those

9    issues with counsel briefly.

10            But having said that, my real concern is that the

11   papers get filed quickly in the next 24 to 48 hours, which

12   would be perfect so that people will have the opportunity to

13   review those documents and be able to have those both

14   documents and both matters vetted before the Court.  Thank

15   you.

16            THE COURT:  Thank you.  Mr. Glueckstein.

17            MR. GLUECKSTEIN:  Good morning, Your Honor.

18            THE COURT:  Good morning.

19            MR. GLUECKSTEIN:  Brian Glueckstein, Sullivan &

20   Cromwell, for the official E-side creditors committee.

21            Just very briefly, we have been working closely

22   over the past number of days with the Debtors and other

23   parties in interest to get to this point.

24            The committee is supportive of moving forward with

25   this transaction and the process for confirmation and would

1    support moving forward as expeditiously as the Court is

2    comfortable doing.  Thank you.

3            THE COURT:  Thank you, Mr. Glueckstein.  Mr.

4    Padone.

5            MR. PADONE:  Your Honor, Richard Padone for

6    American Stock Transfer Indenture Trustee for the EFH bonds.

7    We, too, support the expedited schedule.  Thank you.

8            THE COURT:  Thank you.  Mr. Qureshi, you filed an

9    objection, so I'm going to ask you to comment.

10           MR. QURESHI:  Good morning.  I'm Abid Qureshi,

11   Akin Gump Strauss Hauer Feld, on behalf of UMB as Indenture

12   Trustee for the PIK notes.  We, too, are supportive of the

13   proposed schedule.

14           THE COURT:  All right, thank you.  Anyone else?

15   All right.  Well, how about -- this is a big change.

16   Clearly, a change to the benefit of the estate and the

17   creditors.  And I know the product of tremendous amount of

18   effort and work by all the parties, and I very much

19   appreciate that.

20           But I am uncomfortable with having this hearing on

21   the 29th.  So what I'd like to do is have the disclosure

22   statement, the PSA, the merger agreement, and the

23   termination fee all heard on the 6th at 2:00, and let's set

24   an objection deadline of the 31st.  And whenever you file

25   your amended motions, just send over an Order shortening

Page 22

1    time.

2            MR. HUSNICK:  Thank you, Your Honor.  We will do

3    that.

4            THE COURT:  Is there anything else we need to do

5    today?

6            MR. HUSNICK:  That's all I have for Your Honor

7    today.  Thank you very much for your time.

8            THE COURT:  All right.  Thank you very much.

9    Thank you for freeing up my day, although that wasn't your

10   purpose in life.  All right, we're adjourned.

11

12                        * * * * *

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 23

1              C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya

     Ledanski Hyde

7

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital1@veritext.com, c=US
Date: 2017.08.22 15:20:49 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  August 22, 2017