**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 11801** |

**DECLARATION OF ANTHONY HORTON**
**IN SUPPORT OF THE AMENDED AND SUPERSEDING**
**MOTION OF THE E-SIDE DEBTORS FOR AN ORDER**
**(A) AUTHORIZING ENTRY INTO THE MERGER AGREEMENT**
**AND APPROVING THE TERMINATION FEE AND (B) AUTHORIZING**
**ENTRY INTO AND PERFORMANCE UNDER THE PLAN SUPPORT AGREEMENT**

I, Anthony Horton, hereby declare as follows:

1.      I make this Declaration in support of the *Amended and Superseding Motion of the E-Side Debtors for an Order (A) Authorizing Entry into the Merger Agreement and Approving the Termination Fee and (B) Authorizing Entry Into and Performance Under the Plan Support Agreement* [D.I. 11801] (the "Motion"), filed contemporaneously herewith.[2]

2.      I am the Chief Financial Officer, Executive Vice President, and Treasurer of Energy Future Holdings Corp. ("EFH Corp.") and Energy Future Intermediate Holding Company LLC ("EFIH" and together with EFH Corp. and certain of their respective direct and indirect subsidiaries, the "E-Side Debtors"). I have worked for EFH Corp., EFIH, and their

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined herein have the meanings assigned to them in the Motion. *See also Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee* [D.I. 11430], dated July 7, 2017.

predecessors for 30 years.  Before October 3, 2016, I was the Senior Vice President, Treasurer, and Assistant Secretary of EFH Corp., Senior Vice President and Treasurer of EFIH, and the Treasurer of the former Texas Competitive Electric Holdings Company LLC ("TCEH" and together with certain of its subsidiaries and the E-Side Debtors, the "Debtors").

3.      I am generally familiar with the Debtors' businesses, day-to-day operations, financial matters, results of operations, cash flows, and underlying books and records.  I have worked on numerous financial transactions, including capital markets transactions and credit facility financings, for the Debtors.  During these chapter 11 cases, I participated in negotiations and development of the Debtors' plans of reorganization and related transactions.

4.      I was part of the team that negotiated the Agreement and Plan of Merger with Berkshire Hathaway Energy Company ("BHE") (dated July 7, 2017, the "BHE Merger Agreement") and the $270 million termination fee (the "BHE Termination Fee").  I was also part of the team that negotiated the Agreement and Plan of Merger with Sempra Energy ("Sempra") (dated August 21, 2017, the "Sempra Merger Agreement") and the $190 million termination fee (the "Sempra Termination Fee").

5.      Further information regarding the E-Side Debtors' recent marketing efforts is available in the *Declaration of Paul Keglevic in Support of the Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee* [D.I. 11431] and the *Declaration of David Ying in Support of the Motion of the EFH/EFIH Debtors for Order Authorizing Entry into Merger Agreement and Approving Termination Fee* [D.I. 11432], both dated July 7, 2017.

I.      **The Sempra Deal Reflects the Best Path Forward for the E-Side Debtors at This Time.**

6.      After preliminary negotiations, on August 15, 2017, the E-Side Debtors received an alternative proposal from Sempra that largely preserved the structure of the transaction contemplated by the BHE Merger Agreement, but which contemplated a purchase price of $9.3 billion.

7.      On Wednesday, August 16, a significant creditor at both estates—Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott")—stated its intention to block confirmation of a plan of reorganization reflecting the BHE deal.[3]

8.      On Friday, August 18, the E-Side Debtors' boards of directors and managers (the "Boards") met and discussed the path forward.  Following a lengthy discussion, the Boards continued to view the BHE Merger Agreement as superior.  While the E-Side Debtors had emphasized that creditor support would be a factor in any decision to move forward with Sempra, that support had not materialized on August 18.

9.      Consistent with their duties to maximize value for all stakeholders, the E-Side Debtors worked on parallel paths over the weekend.  The E-Side Debtors continued to engage with Sempra ***and*** prepare for the August 21 hearing to seek approval of the BHE Merger Agreement.  In light of the ongoing negotiations and recent developments, the Boards agreed to meet again, on Sunday, August 20.

10.     After additional discussions, Sempra increased its proposed purchase price, improved other terms, and obtained a commitment from Elliott to support and not object to the

---

[3] *See Notice of Disapproval of the BHE Merger Agreement and Rejection of the BHE Plan* [D.I. 11764].

Sempra proposal.  Following another lengthy call on August 20, the Boards (a) determined that a Sempra deal represented a Superior Proposal (as defined in the BHE Merger Agreement) and (b) terminated the BHE Merger Agreement.  Working into the early morning hours of August 21, the E-Side Debtors negotiated and ultimately entered into the Sempra Merger Agreement *and* a plan support agreement with Sempra and Elliott (the "Sempra / Elliott PSA").

11.     Pivoting from BHE to Sempra, the Boards considered, among other things, the following:

- The consideration *increased from $9.0 billion to at least $9.45 billion*, which improves expected recoveries for EFIH unsecured creditors.

- The Sempra Termination Fee is *$80 million lower* (from $270 million to $190 million) and *has fewer triggers* than the BHE Termination Fee.  It would be payable upon consummation of an alternative transaction only if the Sempra Merger Agreement is terminated due to EFH Corp. or EFIH (a) breaching the Sempra Merger Agreement, (b) exercising its fiduciary out, or (c) supporting an inconsistent plan or restructuring transaction.[4]  The Sempra Termination Fee is not payable if the Sempra Merger Agreement is terminated following the occurrence of the Termination Date (*i.e.*, 240 days following execution of the Sempra Merger Agreement, with a 90-day extension if certain outstanding regulatory approvals are capable of being obtained).[5]

- Regarding the Public Utility Commission of Texas (the "PUCT"), Sempra has agreed to substantially the same regulatory commitments as BHE, other than (i) an increase in the size of the Oncor board through the addition of one more Oncor officer (the board will remain majority independent) and (ii) the incurrence of debt above Oncor at closing.  Sempra, however, has agreed to pay off debt incurred at closing in less than seven years and to not incur any other debt at Reorganized EFH or Reorganized EFIH.  Further, Sempra agreed to an additional commitment not contained in the BHE Merger Agreement: working in good faith with Oncor's other owners to cause an equity contribution into Oncor within 180 days of closing in an amount sufficient to achieve the equity ratio prescribed by the PUCT in Oncor's rate case settlement.

---

[4]   The Sempra Termination Fee is also payable if the Bankruptcy Court enters an order approving the sale of a material portion of EFH assets or EFIH equity interests to a party other than Sempra.

[5]   Additionally, the parties can terminate the Sempra Merger Agreement if the PUCT issues an order either denying the approval sought in the PUCT Filing or approving the PUCT Filing but imposing a Burdensome Condition (that has not been accepted by Sempra) and such order has not been vacated or materially modified (in a way that grants PUCT Approval or eliminates a Burdensome Condition) within 30 days.  Under such circumstances, the Sempra Termination Fee would not be payable.

RLF1 18035874v.1

- Sempra garnered Elliott's support, reducing confirmation risk.

- Closing is not conditioned on Sempra's ability to acquire the minority stake in Oncor held by Texas Transmission Investment LLC.

- Finally, Sempra did not condition its offer on the receipt of financing.  Like BHE, Sempra is a financially stable and well-regarded utility holding company.  Sempra is a Fortune 500 company with an enterprise value of over $49 billion and over 16,000 employees.

12.     While the Sempra transaction does not yet have the same level of regulatory support as BHE, Sempra has agreed to make significant commitments, including by maintaining the ring fence "as is, where is" and paying off certain debt above Oncor in less than seven years. The E-Side Debtors believe that costly and protracted litigation regarding confirmation outweighs the risk associated with pivoting to a deal that lacks an executed settlement with the PUCT Staff or intervenors.

13.     In sum, the Sempra Merger Agreement represents a higher and otherwise better offer because, among other things, of the increased purchase price, creditor support, smaller termination fee, and the elimination of certain termination fee triggers.  For those reasons, the Sempra deal is the right path for the E-Side Debtors to pursue at this time, and I submit that entry into the Sempra Merger Agreement and Sempra / Elliott PSA are sound decisions reflecting the reasonable business judgment of the E-Side Debtors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Dated: August 23, 2017
        Dallas, Texas


                                            */s/ Anthony Horton*
                                            Anthony Horton
                                            EFH Corp., EFIH
                                            Chief Financial Officer
                                            Executive Vice President
                                            Treasurer

6