## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
|  | **Hearing Date: September 19, 2017 at 10:00 a.m.** |
|  | **Objection Deadline: September 12, 2017 at 4:00 p.m.** |

## MOTION OF THE EFH/EFIH DEBTORS FOR ORDER AUTHORIZING THE EFH/EFIH DEBTORS TO CONSENT TO ONCOR'S ENTRY INTO THE SHARYLAND MERGER AGREEMENT

Energy Future Holdings Corp. ("EFH Corp."), certain of its direct and indirect subsidiaries (together with EFH Corp., the "EFH Debtors"),[2] Energy Future Intermediate Holding Company LLC ("EFIH"), and EFIH Finance, Inc. (together with EFIH, the "EFIH Debtors," and together with the EFH Debtors, the "EFH/EFIH Debtors") file this motion (this "Motion") seeking entry of an order, substantially in the form attached as **Exhibit A** (the "Order") authorizing the EFH/EFIH Debtors to consent to Oncor Electric Delivery Holdings

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The other EFH Debtors are Ebasco Services of Canada Limited, EEC Holdings, Inc., EECI, Inc., EFH Australia (No. 2) Holdings Company, EFH Finance (No. 2) Holdings Company, EFH FS Holdings Company, EFH Renewables Company LLC, Generation Development Company LLC, LSGT Gas Company LLC, LSGT SACROC, Inc., NCA Development Company LLC, and TXU Receivables Company.

Capitalized terms used but not defined herein shall have the meanings ascribed in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11426] (the "Sempra Plan").

Company LLC ("Oncor Holdings") and Oncor Electric Delivery Company LLC's ("Oncor Electric" and together with Oncor Holdings, "Oncor") entry into and completion of the transactions provided for in the Agreement and Plan of Merger, attached as **Exhibit 1** to **Exhibit A** (the "Sharyland Merger Agreement"), with Sharyland Distribution & Transmission Services, L.L.C. ("SDTS"), Sharyland Utilities, L.P. ("SU") and SU AssetCo, L.L.C. ("SU AssetCo"), and to which SDTS AssetCo, L.L.C. ("SDTS AssetCo," and together with SDTS, SU and SU AssetCo, "Sharyland") will become a party upon the formation of such entity and execution by it of a joinder agreement.

In support of this Motion, the EFH/EFIH Debtors file the *Declaration of Anthony R. Horton in Support of the Motion of the EFH/EFIH Debtors for Order Authorizing the EFH/EFIH Debtors to Consent to Oncor's Entry Into the Sharyland Merger Agreement*, attached as **Exhibit B**.  In further support of this Motion, the EFH/EFIH Debtors respectfully state as follows:

## Preliminary Statement

1.    On July 21, 2017, Oncor and Sharyland signed an agreement that provides for, among other things, an exchange by Sharyland and its affiliates of approximately $401 million in electric transmission and distribution assets for approximately $380 million of Oncor's electric transmission assets and approximately $27.5 million in cash (the "Sharyland Transaction"). Pursuant to the Sharyland Transaction, Oncor will acquire Sharyland's retail electricity distribution business, while relinquishing certain of its transmission assets.  Sharyland's customers pay higher retail electric delivery rates than Oncor's customers.  The Sharyland Transaction will provide those customers with significant rate relief.  Concurrently, Oncor has been prosecuting an application for authority to change rates ("Rate Case") before the Public Utility Commission of Texas (the "PUCT").  In July 2017, Oncor reached a favorable settlement

2

of its Rate Case (the "Rate Case Stipulation") subject to the consummation of the Sharyland Transaction. *See Stipulation*, PUCT Docket No. 46957 (Tex. Public Util. Comm'n July 21, 2017).

2.      EFH and EFIH indirectly own approximately 80% of Oncor. The EFH Debtors benefit from the Sharyland Transaction because of Oncor's favorable resolution of its Rate Case through the Rate Case Stipulation. The Rate Case Stipulation and the limited impact of exchanging assets with Sharyland maximizes value at Oncor (an underlying EFIH asset). This is particularly important to EFIH at this time, as the Rate Case Stipulation provides for a settlement of the Rate Case, thus removing the regulatory risk associated with several contested issues and providing for a rate increase that is expected to result in a 3.4% increase in total electric delivery revenues at Oncor, an indirect benefit to the EFH/EFIH Debtors.

3.      On August 23, 2017, the EFH/EFIH Debtors filed the *Amended and Superseding Motion of the E-Side Debtors for an Order (A) Authorizing Entry into the Merger Agreement and Approving the Termination Fee and (B) Authorizing Entry into and Performance Under the Plan Support Agreement* [D.I. 11801] (the "Merger Agreement Approval Motion"), seeking authorization to enter into the plan of merger with Sempra Energy ("Sempra" and such plan of merger, the "Sempra Merger Agreement"). The Court is currently scheduled to rule on the Merger Agreement Approval Motion on September 6, 2017. Because the Sharyland Merger Agreement constitutes an asset swap for "substantially similar value" to be approved by the PUCT, even in the event that the Court approves the Merger Agreement Approval Motion prior to entry of the Order, the consent of Sempra is not required for Oncor to consummate the Sharyland Merger Agreement. Sempra Merger Agreement, § 6.20(b). Sempra, however, is well aware of the Rate Case Stipulation and the Sharyland Transaction and their positive impact upon

Oncor.   Indeed, Sempra has committed to provide additional equity to Oncor following consummation of the transactions contemplated by the Sempra Merger Agreement in order to increase its equity capital to meet a new 57.5%/42.5% debt-to-equity ratio, replacing its current 60%/40% ratio.  Sempra Merger Agreement, Exh. D ¶ 45.

4.      Under section 10(i)(i)(B) of the Second Amended and Restated Limited Liability Company Agreement of Oncor Electric Delivery Holdings Company LLC, dated November 5, 2008 (the "Oncor Holdings LLC Agreement"), the prior written consent of EFIH is required for Oncor Holdings to enter into or authorize any material transactions with a third party outside the ordinary course of business, including mergers or acquisitions and substantial dispositions or transfers.  Similarly, under corresponding provisions of the limited liability company agreement of Oncor Electric[3], the prior written consent of Oncor Holdings is required for Oncor Electric to enter into or authorize any material transactions with a third party outside the ordinary course of business.  Oncor Holdings and the EFH/EFIH Debtors believe that entry into the Sharyland Merger Agreement by Oncor meets this standard and requires EFIH's prior written consent.

5.      On July 20, 2017, subject to the approval of the Court (as defined below) sought by this Motion, the Board of Directors of EFH and the Board of Managers of EFIH authorized Oncor to enter into the Sharyland Merger Agreement.

6.      Because the Sharyland Merger Agreement and the related Rate Case Stipulation maximize Oncor's value as an asset to the EFH/EFIH Debtors and their creditors in these chapter 11 cases, the Debtors respectfully request that this Court provide the requested relief.

---

[3]  Section 10(i)(i) of the Second Amended and Restated Limited Liability Company Agreement of Oncor Electric Delivery Company LLC, dated as of November 5, 2008, requires the prior written consent of Oncor Holdings for Oncor Electric to enter into or authorize any material transactions with a third party outside the ordinary course of business.

## Jurisdiction, Venue and Procedural Background

7.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

8.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the EFH/EFIH Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The bases for the relief requested in this Motion are sections 105, 363(b), and 1125 of title 11 of the United States Code (the "Bankruptcy Code") and rule 9006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

11.     On April 29, 2014, each of the EFH/EFIH Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

## Relief Requested

12.     By this Motion, the EFH/EFIH Debtors respectfully request that the Court enter the Order, substantially in the form attached as **Exhibit A**, authorizing the EFH/EFIH Debtors to

provide their written consent to Oncor's entry into the Sharyland Merger Agreement and performance of its obligations thereunder (the "Written Consent").

**Background**

13.    The transactions contemplated under the Sharyland Merger Agreement (and the related Rate Case Stipulation) will create immediate benefits to the EFH/EFIH Debtors as well as all stakeholders in these chapter 11 cases.

**I.    Sharyland and Its Distribution Charges.**

14.    SDTS is a subsidiary of InfraREIT, Inc. ("InfraREIT") a publicly traded real estate investment trust that owns and leases rate-regulated transmission and distribution assets primarily located in the Electric Reliability Council of Texas ("ERCOT"). InfraREIT is managed by a subsidiary of Hunt Consolidated, Inc. Currently, Sharyland provides electricity distribution services to approximately 54,000 customers, primarily in west central Texas, in addition to parts of south and east Texas. The customer base in Sharyland's service territory is small in comparison to Oncor, which serves nearly 10 million customers. In part due to its size and location, Sharyland's distribution charges far exceed those paid by retail distribution customers in other utilities' services territories in ERCOT, including Oncor's service territory. In recent years, key Texas stakeholders identified the harm caused by this rate imbalance and recognized the need to resolve the situation.

**II.    The Oncor Rate Case.**

15.    Oncor operates the largest electricity distribution and transmission system in Texas, currently servicing more than 3.4 million homes, 10 million residents (approximately 35 percent of the state), and 122,000 miles of transmission and distribution lines. On March 20, 2017, Oncor filed an application with the PUCT and Oncor's original jurisdiction cities

6

("Cities")[4] to increase the rates it charges Texas ratepayers for its services, the first such filing since 2011. *See Application of Oncor Delivery Company LLC for Authority to Change Rates*, PUCT Docket No. 46957 (Tex. Public Util. Comm'n July 21, 2017) (the "Rate Case Application"). The PUCT and Cities has jurisdiction over rate case proceedings of the type set forth in the Rate Case Application. As is typical with rate cases, the litigation surrounding the Rate Case Application was expected to be highly complex and expensive.

**III.   The Negotiation of the Sharyland Merger Agreement.**

16.    In 2016, key Texas-based regulatory stakeholders, including the PUCT Staff and the Office of the Public Utility Counsel (collectively, the "Key Stakeholders") began discussions with Oncor to gauge Oncor's interest in potentially acquiring Sharyland's electricity distribution business. Because of Oncor's vast adjacent electricity transmission and distribution network, Oncor is uniquely positioned to incorporate the distribution assets of Sharyland into its service territory and to achieve economies of scale with respect to costs of distribution. If Sharyland's distribution assets were to be acquired by Oncor, the distribution charges to the ratepayers in Sharyland's service territory are expected to decrease substantially as compared to current Sharyland rates.

17.    Following negotiations between Oncor, Sharyland, and the Key Stakeholders, Oncor and Sharyland entered into the Sharyland Merger Agreement and the Key Stakeholders and other parties agreed to the Rate Case Stipulation.

18.    Oncor, with the approval and advice of its independent Board of Directors, negotiated the terms of the Sharyland Merger Agreement and the Rate Case Stipulation. The

---

[4] Typically, as is the case here, in Texas the utility files a rate case with both the PUCT and the Cities. The Rate Case Stipulation is structured so that, if approved, it will result in new rates that will be applicable to all Oncor customers, regardless of their location.

efforts of these parties, however, provide a benefit to the EFH/EFIH Debtors. The terms of the Sharyland Merger Agreement and the Rate Case Stipulation maintain or increase EFIH's value in Oncor's business and pave the way for Oncor to achieve growth and improve profitability. Often referred to as the "crown jewel" asset of the EFH/EFIH Debtors, preserving and enhancing the value of Oncor is a key priority for all of EFH/EFIH Debtors' stakeholders.

IV.    **Summary of the Sharyland Merger Agreement.**[5]

19.    The Sharyland Merger Agreement (sometimes referred to publicly as the "asset swap") contemplates an exchange of Sharyland and Oncor assets and is structured to qualify, in part, as a simultaneous tax deferred like kind exchange of assets to the extent that the assets exchanged are of "like kind" (within the meaning of section 1031 of the Internal Revenue Code). Specifically, pursuant to separate mergers: (a) Oncor is to receive electricity transmission and distribution-related assets and liabilities of SDTS and SU (consisting of substantially all of the electricity distribution business of SDTS and SU); (b) SDTS will receive certain portions of Oncor's electricity transmission-related assets and liabilities (consisting of approximately 258 miles of transmission lines) in addition to $21 million in cash; and (c) SU will receive approximately $6.5 million in cash. As necessary, other post-closing adjustments will be made to ensure that equivalent value is exchanged between Oncor and Sharyland.

20.    The Sharyland Merger Agreement provides that no later than fourteen days following July 21, 2017, the parties to the Sharyland Merger Agreement would submit the following filings or approval requests to the PUCT: (a) the Rate Case Stipulation; (b) a proposed conditional dismissal of SU and SDTS's pending rate case (the "Sharyland Stipulation"); and (c)

---

[5]    Capitalized terms that are not defined in the table below shall have the meanings ascribed to them in the Sharyland Merger Agreement. The descriptions of the Sharyland Merger Agreement in this Motion are intended only as a summary of certain provisions thereof and are qualified in their entirety by the Sharyland Merger Agreement attached as **Exhibit 1** to **Exhibit A**.

a joint application for sale, transfer, or merger and other necessary approvals required to effect the Sharyland Transaction ("Joint Application"). To satisfy these conditions, along with the Rate Case Stipulation, Sharyland and Oncor have filed the Sharyland Stipulation and the Joint Application with the PUCT. *See Joint Unanimous Motion to Admit Evidence, Remand Proceeding, and Dismiss the Amended Application of Sharyland Utilities, L.P. and Sharyland Distribution & Transmission Services, L.L.C.*, PUCT Docket No. 45414 (Tex. Public Util. Comm'n Aug. 4th, 2017) (providing signed unanimous stipulation dismissing SU and SDTS's pending rate case); *Joint Report and Application of Sharyland Utilities, L.P., Sharyland Distribution & Transmission Services, L.L.C., and Oncor Electric Delivery Company LLC for Transfer of Facilities, Transfer of Rights Under and Amendment of Certificates of Convenience and Necessity, and for Other Regulatory Approvals*, PUCT Docket No. 47469 (Tex. Public Util. Comm'n Aug. 4th, 2017) (joint application for transfer).

### A.    Material Terms of Sharyland Merger Agreement.

21.    The following table highlights certain material provisions of the Sharyland Merger Agreement:

| Provision | Summary of Provision (Capitalized terms used in this table but not defined herein shall have the meanings ascribed in the Sharyland Merger Agreement.) |
|---|---|
| Representations and Warranties of Oncor and Sharyland | The Sharyland Merger Agreement contains mutual, customary representations and warranties for items including: organization, authority, no conflicts, capitalization, absence of changes or events, material contracts, real property, ownership and maintenance of assets, legal proceedings, environmental, tax, compliance with law, insurance, employee benefits, labor, sophisticated industry participant; brokers and finders; energy regulatory matters and intellectual property. |
| Covenants of Oncor and Sharyland | The Sharyland Merger Agreement contains mutual, customary interim operating covenants for items including: conduct of operations, preservation of relationships with third parties, modification of organizational documents, issuance of equity or incurrence of indebtedness, adoption of a plan of liquidation or other reorganization, sale or transfer of any of the assets being transferred, creation of Liens, entry into or assumption of Contracts that would be included in the transferred asset package, capital expenditures, settlement or compromise of tax claims or Legal Proceedings, failure to pay or satisfy liabilities, amendment or termination of Permits, changes to accounting principles and failure to maintain |

| Provision | Summary of Provision (Capitalized terms used in this table but not defined herein shall have the meanings ascribed in the Sharyland Merger Agreement.) |
|---|---|
| | insurance. |
| **Conditions to Oncor and Sharyland's Obligations** | The Sharyland Merger Agreement contains the following closing conditions:<br>• No legal injunctions or restraints;<br>• Receipt of the Bankruptcy Court approval for EFIH's consent to the Sharyland Merger Agreement and the Sharyland Transaction;<br>• Satisfaction of the applicable Regulatory Conditions;<br>• Representations and warranties of the other party or parties are true and correct as of the Closing Date;<br>• The other party has performed or complied with all required obligations and covenants;<br>• The other party has made all necessary payments and delivered each of the agreements, certificates and other documents required;<br>• In the case of Sharyland, receipt of consent from the holders of SDTS senior secured notes to the Sharyland Transaction; and<br>• No material adverse effect has occurred with respect to the other party's operations. |
| **Mutual Termination** | The parties may terminate the Sharyland Merger Agreement by (a) mutual written consent or (b) any of the parties if:<br>• Closing does not occur within 240 days of signing (with one 90 day extension permitted if PUCT approval is still pending);<br>• The PUCT issues an order finding that the required PUCT Approval will not be granted or that results in a failure of a Regulatory Condition applicable to such party. |
| **Termination by Oncor** | Oncor may terminate the Sharyland Merger Agreement if:<br>• SU and/or SDTS has become incapable of fulfilling the applicable closing conditions by the Outside Date; or<br>• An SDTS or SU entity has breached any representation, warranty, covenant or agreement contained in the Sharyland Merger Agreement and such breach (A) if it occurred or was continuing as of the Closing Date would give rise to a failure of a conditions to the obligations of SDTS or SU to close and (B) is not cured within 30 days after receipt of written notice. |
| **Termination by Sharyland** | Sharyland may terminate the Sharyland Merger Agreement if:<br>• Oncor has become incapable of fulfilling the applicable closing conditions by the Outside Date; or<br>• An Oncor entity has breached any representation, warranty, covenant or agreement contained in the Sharyland Merger Agreement and such breach (A) if it occurred or was continuing as of the Closing Date would give rise to a failure of a conditions to the obligations of SDTS or SU to close and (B) is not cured within 30 days after receipt of written notice. |
| **Indemnity** | Each party is indemnified by the other for customary breaches of representations and warranties and covenants and for liabilities to be assumed or retained by each party.<br><br>Indemnification for breaches of representation and warranties is subject to the following limitations:<br>• A party is not entitled to indemnification unless and until such party has incurred losses in excess of 2% of the value of the SDTS, SU Assets or Oncor |

| Provision | Summary of Provision (Capitalized terms used in this table but not defined herein shall have the meanings ascribed in the Sharyland Merger Agreement.) |
|---|---|
|  | T Assets (including environmental claims), as applicable.<br>• Indemnification obligations are capped at 10% of the value of the SDTS and SU Assets and Oncor T Assets (including environmental claims), as applicable.<br>• The general survival period for representations and warranties is 18 months.<br><br>The Sharyland Merger Agreement also contains a standalone indemnity for breaches of representations and warranties related to environmental matters which is subject to the following limitations:<br>• A party is not entitled to indemnification unless and until such party has incurred losses in excess of 1% of the value of the SDTS, SU Assets and Oncor T Assets (solely with respect to environmental claims), as applicable.<br>• Indemnification obligations are capped at 4.5% of the value of the SDTS, SU Assets and Oncor T Assets (solely with respect to environmental claims), as applicable.<br>• The survival period for environmental representations and warranties is 24 months. |

## B.    Rate Case Stipulation and Settlement of Rate Case.

22.    In connection with Oncor's entry into the Sharyland Merger Agreement, Oncor and the Key Stakeholders and other parties agreed to a settlement of the Rate Case Application, pursuant to the terms of the Rate Case Stipulation. Among others, the Rate Case Stipulation included the following parties as signatories: PUCT Staff; Office of Public Utility Counsel; Steering Committee of Cities Served by Oncor; Texas Industrial Energy Consumers; Alliance of Oncor Cities; Alliance for Retail Markets; Energy Freedom Coalition of America; Environmental Defense Fund, Inc. and North Texas Renewable Energy Group; Luminant Energy Company LLC, Luminant Generation Company LLC, and TXU Energy Retail Company LLC; NRG Retail Companies; Texas Energy Association for Marketers; and the United States Department of Defense (collectively, the "Signatories").

23.    The Rate Case Stipulation requests that the PUCT enter an order reflecting a series of agreed-upon terms between the Signatories and Oncor (including the transactions contemplated in the Sharyland Merger Agreement). These terms strengthen Oncor financially

RLF1 18052624v.1

and operationally on a go-forward basis, and therefore preserve and enhance the strength and value of the EFH/EFIH Debtors' core business unit. Specifically, under the Rate Case Stipulation, the Signatories agree to authorize a 7.44% weighted average cost of capital, a 9.8% return on equity, and a capital structure consisting of 42.5% equity and 57.5% long-term debt (a 2.5% increase in equity as compared to the existing authorized maximum regulatory equity/debt ratio). This additional capacity for equity investments promotes Oncor's future growth and potentially increases future value in Oncor for the EFH/EFIH Debtors and their stakeholders.

24.     Favorable features of the Rate Case Stipulation also include, among other things, certainty to Oncor's business by avoiding the risks associate with a highly complex litigation dispute on topics such as operating expenses, the calculation of a rate base, cost of debt and equity, and prudence of capital expenditures. These benefits are in addition to a cost-of-service adjustment of approximately $40 million to account for the increased operating costs and depreciation expenses associated with Oncor's acquisition of the Sharyland retail distribution business. The Rate Case Stipulation provides for the new rates to take effect on November 27, 2017, contingent upon the closing of the Sharyland Transaction. These benefits from the Sharyland Transaction (and the related Rate Case Stipulation) are to be achieved at no monetary cost to the EFH/EFIH Debtors.

## C.     Required Consent.

25.     The Oncor Holdings LLC Agreement provides that the prior written consent of EFIH is necessary for Oncor to enter into or authorize any material transactions with a third party outside the ordinary course of business.

26.     Additionally, closing of the Sharyland Merger Agreement is subject to entry of an Order by the Court authorizing EFIH to provide its written consent for Oncor to enter into the Sharyland Merger Agreement and consummate the Sharyland Transaction. On July 20, 2017,

12

the Board of Directors of EFH Corp. and the Board of Managers of EFIH authorized EFIH to

provide the Written Consent, subject to the Court approval sought in this Motion.  On this same

day, the Boards determined, on the advice of management and the EFH/EFIH Debtors' advisors,

that the transactions contemplated in the Sharyland Merger Agreement constituted an asset swap

of substantially similar value.

27.     As noted above, under section 6.20(b) of the Sempra Merger Agreement, the

consent of Sempra is not required for Oncor to consummate an asset swap for "substantially

similar value."  Based on this determination by the Board of Directors of EFH Corp. and the

Board of Managers of EFIH, the EFH/EFIH Debtors have not sought Sempra's approval of the

asset swap proposed under the Sharyland Merger Agreement.

<u>**Basis for Relief**</u>

I.      **The Court Should Grant the Motion Because Entry Into the Sharyland Merger Agreement Is a Sound Exercise of the EFH/EFIH Debtors' Business Judgment.**

28.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor,

"after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate."  11 U.S.C. § 363(b)(1).  Additionally, under section 105(a) of the

Bankruptcy Code, "[t]he court may issue any order . . . that is necessary or appropriate to carry

out the provisions of this title."  11 U.S.C. § 105(a).

29.     In the Third Circuit, courts have authorized a debtor's use of property of the estate

outside the ordinary course of business when such use has a "sound business purpose" and is

proposed in good faith.  *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward

Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169,

176 (D. Del. 1991).  Courts authorize a debtor to use property of the estate outside the ordinary

course if the debtor shows (a) a sound business reason or emergency justifies the proposed use;

(b) adequate and reasonable notice was provided to all interested parties; (c) the proposed use was requested in good faith; and (d) fair and reasonable consideration is provided in exchange for the use of estate assets. *See In re Exaeris, Inc.*, 380 B.R. 741 (Bankr. D. Del. 2008); *In re Decora Indus., Inc.*, No. 00–4459 (JJF), 2002 WL 32332749, at *7 (D. Del. May 20, 2002); *In re Del. & Hudson*, 124 B.R. at 176.

30.     The EFH/EFIH Debtors submit that providing the Written Consent for Oncor to enter into the Sharyland Merger Agreement is a sound exercise of their business judgment. The proposed transactions provide clear direct benefits to Oncor. As an 80% owner of Oncor, the EFH/EFIH Debtors will realize these same benefits. The Rate Case Stipulation will enhance Oncor's earnings, thereby preserving, if not enhancing, the value of EFH and EFIH's indirect equity stake in Oncor. Simply put: what is good for Oncor is good for the EFH/EFIH Debtors.

31.     There is no basis to deny the EFH/EFIH Debtors their narrow requested relief. It is specifically due to Oncor's distinctive position—namely its cost and operational efficiencies, its management team's credibility and reputation, and its size—that the outcome set forth in the Sharyland Merger Agreement and the Rate Case Stipulation was achievable. The unique circumstances of this situation are distinguishable from situations where a debtor's business judgment would be challenged based on the availability of a higher or more actionable transaction.

32.     Although the transactions contemplated by the Sharyland Merger Agreement are designed to qualify, in large part, as a tax-deferred exchange, the EFH/EFIH Debtors have evaluated the potential tax implications associated with the Sharyland Merger Agreement. After this review, due in large part to EFH's current tax position and the Oncor Tax Sharing Agreement, which was assumed by EFH pursuant to order dated March 13, 2017 [D.I. 10908],

RLF1 18052624v.1

the EFH/EFIH Debtors believe that if there are any unexpected adverse tax consequences attributable to the Sharyland Transaction, any resulting tax would be mitigated. The EFH/EFIH Debtors, in consultation with their respective Boards and their advisors, believe that the minimal risk of tax triggering in any material amount is substantially outweighed by the benefits the EFH/EFIH Debtors stand to realize from Oncor's consummation of the Sharyland Merger Agreement and the resulting Rate Case Stipulation. This conclusion is based on the fact that aside from potential tax obligations, the benefits of the Sharyland Merger Agreement (and the resulting Rate Case Stipulation) come at no economic cost to the EFH/EFIH Debtors.

33.    In conclusion, the Sharyland Merger Agreement (and the resulting Rate Case Stipulation) represents a unique opportunity to maximize the value of the EFH/EFIH Debtors' estates. Accordingly, the EFH/EFIH Debtors respectfully request that the Court enter an order authorizing the EFH/EFIH Debtors to consent to Oncor's entry into the Sharyland Merger Agreement.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

34.    The EFH/EFIH Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

35.    The EFH/EFIH Debtors shall provide notice of this Motion on the date hereof via first class mail to: (a) the U.S. Trustee; (b) counsel to the EFH Creditors' Committee; (c) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the

6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (d) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (e) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (f) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020; (g) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (f); (h) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (i) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (j) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (k) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (l) Oncor Electric Delivery Company LLC and counsel thereto; (m) the Securities and Exchange Commission; (n) the Internal Revenue Service; (o) the Office of the United States Attorney for the District of Delaware; (p) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (q) counsel to the Electric Reliability Council of Texas; and (r) those parties that have requested notice pursuant to Bankruptcy Rule 2002. The EFH/EFIH Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## Conclusion

36.    Based on the foregoing, the EFH/EFIH Debtors respectfully request that the Court enter the Order.

Dated: August 29, 2017
       Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
              defranceschi@rlf.com
              madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        edward.sassower@kirkland.com
              stephen.hessler@kirkland.com
              brian.schartz@kirkland.com
              aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
              marc.kieselstein@kirkland.com
              chad.husnick@kirkland.com
              steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession

RLF1 18052624v.1