UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| EFH FUTURE HOLDING CORP., et al., | : : : Case No. 14-10979 (CSS) : : Chapter 11 Debtor. : : Judge Christopher Sontchi : ECRO Operator: Al Lugano |

OBJECTION OF CERTAIN EFIH 9.75% DUE 10/15/19 1ˢᵗ LIEN BONDHOLDERS CUSIP 292681AA1 (the "UNEXCHANGED BONDS) TO
<u>CONFIRMATION OF THE PLAN AND MERGER AGREEMENT AND DISCLOSURE STATEMENT</u>

A group of smaller investors which own the above identified Unexchanged Bonds hereby object to approval and confirmation of the Plan and Merger Agreement and Disclosure Statement submitted by the Debtor (the "Stripped Lien Plan"). For the multiple reasons described below, the Plan does not meet the confirmation requirements by the Bankruptcy court which is a court vested with equitable powers to act when fundamental fairness and justice require that smaller stakeholders, without the means to protect their interests in a case with huge prohibitive legal costs, are treated unfairly and lost the value of the bonds they purchased when their 1ˢᵗ lien was stripped without compensation. Accordingly, the Stripped Lien Plan should not be approved or confirmed until these wrongs are righted and these small investors are treated fairly and get the value of the bonds they bought.

The Unexchanged Bonds in the aggregate now represent approximately $2 million in principal amount. The individuals bought the Unexchanged Bonds which had a 1ˢᵗ Lien at the time of making this investment. They largely hold the Unexchanged Bonds in retirement accounts or college savings accounts and they will suffer significant damage if their lien is not reinstated or they are not carved out from Unsecured creditors who never had a 1ˢᵗ Lien.

In late 2012/early 2013 the Unexchanged Bonds had a 1st Lien secured by the Oncor stock owned by EFIH. These individuals would not purchased the investment otherwise and still own them. As part of Debtor's desperate effort to stay afloat an exchange offer was crafted to allow Qualified Institutional Buyers (QIB) to exchange their bonds and these investors kept a 1st Lien and now have been paid in full plus interest. This small group of individual investors were excluded by the QIB offer and then had their Lien stripped by the Debtor without any offsetting compensation and the Debtor is now treating them as unsecureds under the Stripped Lien Plan.

Contemporary complaints to the Debtor that their actions were grossly unfair and inconsistent with the requirements of the Trust Indenture Act, and Federal and state securities laws were just ignored. The Texas SEC was sympathetic but took the position that they had no jurisdiction over the Debtors actions once the Bankruptcy case was pending.

During much of the time the Bankruptcy case was pending, it appeared the 1st Lien stripping would not cause much harm to the Unexchanged Bond owners because even if they were improperly lumped in with the Unsecured PIKs it was then projected they would be receiving par plus accrued interest so the plight of the Unexchanged Bond owners was not addressed in past reorganization plans. But when the make whole decision was reversed on appeal to the Third Circuit—contrary to the reasonable legal advice this small band of Unexchanged Bond owners was getting—they devastating saw their par plus recovery fall to about 75%immediately, to a 18-20% recovery under the Berkshire bid and now still perhaps in the 40s with the Sempra bid if things go well under the Stripped Lien Plan. A dramatic and devastating loss; whereas had their 1st Lien been respected they would have recovered par plus interest and a make whole and already been paid off!

In the context of the Stripped Lien Plan which values what should be the Oncor security for the Unexchanged Bonds at $9.4 billion and with a MONTHLY expense run rate of roughly

-3-

$30-40 million for interest and professional fees in the bankruptcy case, it is apparent on its face that any reasonable plan would provide for reinstating the 1st Lien status for the Unexchanged Bonds or carving out a special category for them so they receive the value of their bargain when they bought the then secured bonds.

For the reasons outlined herein the Stripped Lien Plan cannot be approved as presented and must be modified to accommodate this small group of aggrieved Unexchanged Bond owners.

Dated: August 31, 2017

Respectfully submitted,

*/s/ Robert J. Miller*

Robert J. Miller
E-mail: Miller.rj.1@gmail.com
Telephone: 513.310.4501