# Exhibit F



Control Number: 46238



Item Number: 538

Addendum StartPage: 0

PUC DOCKET NO. 46238

~~RECEIVED~~

2017 APR 13 AM 11: 00

PUBLIC UTILITY COMMISSION

| | | |
|---|---|---|
| JOINT REPORT AND APPLICATION | § | |
| OF ONCOR ELECTRIC DELIVERY | § | **PUBLIC UTILITY COMMISSION** |
| COMPANY LLC AND NEXTERA | § | |
| ENERGY, INC. FOR REGULATORY | § | **OF TEXAS** |
| APPROVALS PURSUANT TO PURA | § | |
| §§ 14.101, 39.262, AND 39.915 | § | |

## ORDER

This Order addresses the joint report and application of Oncor Electric Delivery Company LLC and NextEra Energy, Inc. (NextEra Energy) for Commission approval of transactions by which NextEra Energy would acquire all equity interests in Oncor. Based on the evidence and testimony presented during a hearing held by the Commission, the Commission finds that the transactions described in the application are not in the public interest under Public Utility Regulatory Act[1] (PURA) §§ 14.101, 39.262(m), and 39.915(b). Accordingly, the application is denied for the reasons discussed in this Order.

### I.  Discussion

The joint report and application filed by NextEra Energy and Oncor proposed transactions by which NextEra Energy would acquire both the approximately 80% interest in Oncor indirectly held by Energy Future Holdings Corp. and the 19.75% interest indirectly held by Texas Transmission Holdings Corporation. In addition, the application also discussed NextEra Energy's agreement to purchase the 0.22% interest in Oncor held by Oncor Management Investment LLC, subject to closing the proposed transaction with Energy Future Holdings. As a result of these proposed transactions, NextEra Energy would own all of the equity securities of Oncor.

Commission Staff, the Office of Public Utility Counsel, the Steering Committee of Cities Served by Oncor, the Texas Industrial Energy Consumers, TXU Energy Retail Company, LLC, NRG Companies,[2] Nucor Steel – Texas, CMC Steel Texas, Golden Spread Electric Cooperative,

---

[1] Public Utility Regulatory Act, Tex. Util. Code §§ 11.001-58.303 (West 2016), §§ 59.001-66.017 (West 2007 & Supp. 2016) (PURA).

[2] The NRG Companies include: NRG Texas Power LLC, Cedro Hill Wind LLC, Elbow Creek Wind Project, LLC, Goat Wind, LP, Gregory Power Partners LLC, Langford Wind Power, LLC, NRG Cedar Bayou Development Company LLC, NRG South Texas LP, Petra Nova Power I LLC, Sherbino I Wind Farm LLC, South

Texas Energy Association for Marketers, and APEX Bethel Energy Center LLC were granted intervention in this docket. A hearing on the merits was held by the Commission from February 21-24, 2017. The Commission considered this docket at the March 30, 2017 open meeting.

### A.    The Proposed Transactions

NextEra Energy proposed to acquire the 80.03% share of Oncor held indirectly by Energy Future Holdings in a transaction governed by an agreement and plan of merger by and among Energy Future Holdings, Energy Future Intermediate Holdings, LLC, NextEra Energy Inc., and EFH Merger Co., LLC. Under the agreement, Energy Future Holdings would be merged with and into EFH Merger Co., LLC, a wholly-owned subsidiary of NextEra Energy, with EFH Merger Co. existing as the surviving company, and the successor to Energy Future Holdings. As a result, NextEra Energy would own 100% of Energy Future Holdings and its subsidiaries, including Energy Future Intermediate Holdings, and Oncor Holdings, which holds an 80.03% ownership interest in Oncor. This transaction was part of the eighth amended plan of reorganization of Energy Future Holdings, which was confirmed by the bankruptcy court for the district of Delaware on February 17, 2017.[3]

The joint applicants also sought Commission approval of a transaction in which NextEra Energy would acquire Texas Transmission Holdings Corporation's indirect 19.75% ownership interest in Oncor in a transaction governed by an agreement and plan of merger by and among Texas Transmission Holdings Corporation, NextEra Energy, and NextEra Energy affiliate WSS Acquisition Company. Under this agreement, WSS Acquisition would merge with and into Texas Transmission Holdings, with Texas Transmission Holdings existing as the surviving company. As a result, NextEra Energy would own 100% of Texas Transmission Holdings Corporation and Texas Transmission Investments, LLC, including the latter's 19.75% interest in Oncor.

---

Trent Wind LLC, Reliant Energy Retail Services LLC, Green Mountain Energy Company, Everything Energy LLC, US Retailers LLC, NRG Curtailment Solutions LLC, and NRG Power Marketing LLC.

[3] *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS), Order Confirming the Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code at Exhibit A, Art. IV § B.9. (Bankr. D. Del. Feb. 17, 2017).

The application also addressed NextEra Energy's privately negotiated agreement to purchase the remaining 0.22% minority interest in Oncor held by Oncor Management Investment LLC, subject to closing the proposed transaction with Energy Future Holdings.[4]

NextEra Energy intended to fund $12.2 billion in order to obtain 100% of Oncor.[5]  Of this amount, $9.8 billion would be used to obtain the 80.03% stake in Oncor currently held indirectly by Energy Future Holdings.  The financing of the $9.8 billion was to include approximately $7.5 billion in debt funding financed at NextEra Energy Capital Holdings.[6]  In addition to the $9.8 billion, $2.4 billion would be used to obtain the 19.75% interest held by Texas Transmission Holdings, and NextEra Energy proposed to pay for this acquisition in cash.[7]

The joint applicants have sought the Commission's approval for all transactions as part of a single application.  The Commission considered whether the proposed transactions, as a whole, are in the public interest, and the Commission's denial of the application applies to each of the transactions described in the application.

### B.    Increased Risk to Oncor Ratepayers

While NextEra Energy is a well-regarded utility holding company, the expansive and diversified structure of NextEra Energy and its affiliates would subject Oncor to new and potentially substantial risks.  NextEra Energy's method of financing the proposed transactions does not entirely eliminate the debt above Oncor, but merely refinances that debt with new debt at NextEra Energy Capital Holdings.[8]  The revenues of Oncor would continue to support repayment of that debt, albeit to a lesser extent.  Including the debt from the proposed transactions, the total amount of consolidated debt at NextEra Energy would be about $45 billion, and Oncor would be required to support about 15% of that debt.[9]  In addition, Moody's Investors Service has noted that "[t]he acquisition-related debt, without a material amount of deleveraging, would exhaust [NextEra Energy's] debt capacity at its current rating" and "make the company more vulnerable

---

[4] Mark Hickson Direct Testimony, NextEra Ex. 1 at 4:11-14.
[5] NextEra Energy Reply Brief at 6.
[6] Tr. at 331:3-7 (Hickson Cross) (Feb. 22, 2017).
[7] NextEra Ex. 1 at 21:11-14.
[8] Direct Testimony of Charles Griffey, TIEC Ex. 1 at 22:3-6.
[9] Open Meeting Tr. at 59:1-9 (Feb. 23, 2017); TIEC Ex. 1C (HSPM Griffey Errata) at 7.

to unforeseen events or margin shortfalls."[10]    The substantial amounts of leverage at NextEra Energy increases the financial risk to Oncor, particularly if Oncor's existing ring fence is to be weakened substantially as requested by NextEra Energy (as discussed below in section D).

In addition to exposing Oncor to the substantial amount of debt at NextEra Energy, the proposed transactions would introduce Oncor to risks associated with NextEra Energy's unregulated businesses, including generation development.[11]  As a result of the spin-off of Texas Competitive Energy Holdings, Oncor is not currently subject to risks related to unregulated generation development.[12]  The evidence admitted in this docket shows that the ratings agencies have found that NextEra Energy has a limited tolerance for financial risk due to unforeseen circumstances, and have identified risks that could lead to a downgrade in the credit rating of NextEra Energy.[13]  The evidence in this case has shown that NextEra Energy, including its subsidiary NextEra Energy Resources, LLC, is subject to numerous risks, including, but not limited to, potential changes in renewable demand resulting from changes in climate or tax policy, commodity risks, retail electric provider risks, as well as power and nuclear generation risks.[14]  These new risks, in conjunction with the high amount of leverage at NextEra Energy, increase the likelihood that unforeseen events could jeopardize Oncor's financial stability, yet NextEra Energy suggests that the Commission weaken the ring fence protecting Oncor and its ratepayers from such financial troubles.

### C.    Lack of Tangible Benefits

In determining whether a transaction is in the public interest under PURA §§ 14.101, 39.262, and 39.915, the Commission must evaluate whether the transaction would provide tangible and quantifiable benefits to Texas ratepayers that are specific to the transaction at issue.[15]  Under NextEra Energy's proposal, the tangible benefits of the proposed transactions to Texas ratepayers are minimal in comparison to the status quo.  The sole tangible and quantifiable benefit offered by NextEra Energy in its rebuttal testimony is a commitment to share 90% of the interest-rate savings

---

[10] Direct Testimony of John Reed, NextEra Energy Exhibit 4, Exhibit JR-6 at 5.
[11] Direct Testimony of Randall Vickroy, Commission Staff Ex. 3A at 22:24-25.
[12] TIEC Ex. 1 at 35:20-36:4.
[13] TIEC Ex. 1 (HSPM Griffey Dir.) at 48:28-49:2.
[14] Direct Testimony of Ralph Smith, Joint TIEC, Cities, & OPUC Ex. 1 at 39-40; Commission Staff Ex. 3A at 21-22.
[15] Preliminary Order Issues 8(a)-(g) and 43(a)-(g) (Dec. 1, 2016).

on Oncor's cost of debt between the closing of the transaction and Oncor's next rate case after the rate case filed on March 17, 2017.[16]  At most, this quantifiable benefit to Texas ratepayers would amount to credits of approximately $3.2 million per year for the first four years after the closing of the transaction.[17]

Beyond the interest rate savings, NextEra Energy identified benefits of the transaction that include a commitment to fund expenditures in Oncor's five-year long-range capital plan (subject to certain limitations),[18] opportunities for collaboration between Oncor and Florida Power & Light,[19] no material involuntary workforce reductions at Oncor for two years,[20] the possible consolidation of NextEra Energy's subsidiary Lone Star Transmission into Oncor,[21] and the resolution of the Energy Future Holdings Corporation's bankruptcy proceeding.[22]  While these may be benefits of the transaction, NextEra Energy has made no attempt to quantify these benefits, and most are not exclusive to this proposal.  A commitment to Oncor's five-year long-range capital plan would likely be a minimum threshold for the Commission to find any transaction in the public interest.  The alleged benefit of increased collaboration between Florida Power & Light and Oncor was not quantified in any way, and NextEra Energy stated that they had not investigated whether any synergy savings would result from the proposed transactions.[23]

In addition, the conclusion of the bankruptcy proceeding is not a benefit that is unique to NextEra Energy's proposal; removal of Energy Future Holdings and its un-ring-fenced subsidiaries from bankruptcy will be obtained by any transaction that the Commission approves. Further, throughout the pendency of the Energy Future Holdings' bankruptcy proceeding, Oncor has safely provided reliable service to Texas customers.[24]  Oncor has made $6 to $7 billion in capital investments over the past five years, funding the equity portion of these investments using Oncor's retained earnings, and there is no evidence even suggesting that Oncor would be unable

---

[16] Rebuttal Testimony of Mark Hickson, NextEra Energy Exhibit 5 at Exhibit MH-R-2 (Errata 2), 6:32-38, Commitment 67.
[17] Tr. at 568:18-569:24 (Griffey Clarifying Exam.) (Feb. 23, 2017).
[18] NextEra Energy Ex. 5a at Exhibit MH-R-2 at 2 (Revised Regulatory Commitment 10).
[19] NextEra Energy Initial Brief at 20-21.
[20] NextEra Energy Ex. 5, Exhibit MH-R-2 at 4-5.
[21] NextEra Energy Initial Brief at 22-23.
[22] Id. at 23; Direct Testimony of Robert Shapard, Oncor Ex. 1 at 13:6-11.
[23] Tr. (Hickson Cr.) at 218:13-19 (Feb. 21, 2017).
[24] Tr. (Shapard Cr.) at 132:4-17 (Feb. 21, 2017).

to continue to do so in the future.[25]  In light of the additional risks to Oncor's ratepayers that would materialize as a result of NextEra Energy's ownership, the record evidence in this case does not support a conclusion that the tangible benefits would outweigh the risks.

### D.   Elimination of Existing Oncor Ring-Fencing Protections

NextEra Energy's proposal is premised on the ability to link Oncor's credit profile with that of NextEra Energy.[26]  NextEra Energy sought to achieve sufficient financial control over the actions and resources of Oncor to enable the linkage of Oncor and NextEra Energy's credit profiles.[27]  To accomplish this goal, NextEra Energy requested that the Commission grant NextEra Energy the ability to eliminate the following two protections from Oncor's existing ring fence: (1) restrictions on NextEra Energy's ability to appoint, remove, and replace members of the Oncor and Oncor Holdings boards of directors, with the exception of three disinterested directors on the Oncor board of directors, and (2) the ability of the Texas Transmission Investment shareholders to veto dividends declared by the Oncor board of directors and, in certain circumstances, capital and operating budgets.[28]    NextEra Energy noted that if the Commission required the preservation of either of these two ring-fencing protections, the credit profiles of Oncor and NextEra Energy could not be linked, and NextEra Energy would not be able to close the proposed transactions.[29]

As discussed above, NextEra Energy ownership of Oncor would subject Oncor ratepayers to new and potentially substantial risks.  Since the 2007 leveraged buyout of TXU Corp. by Energy Future Holdings, a robust ring fence has protected Oncor and Oncor's ratepayers from financial difficulties.[30]  Oncor has not been made a party to the bankruptcy of its indirect parent company, Energy Future Holdings, as a result of this robust ring fence.    Among the most important provisions of Oncor's existing ring fence are the two provisions that NextEra Energy seeks to eliminate.[31]  A truly independent board of directors at Oncor, with control over Oncor's decisions on capital expenditures and operating expenses is a critical part of the ring fence protecting Oncor.

---

[25] *Id.* at 175:9-12; 175:24-176:2.
[26] NextEra Energy Ex. 1 at 27:7-13.
[27] NextEra Energy Ex. 4 at 36:17-19.
[28] Joint Report and Application at 15-16.
[29] NextEra Energy Ex. 1 Commission Staff Ex. 3A at 27:7-13.
[30] Commission Staff Ex. 3A at 16:2-4.
[31] Commission Staff Ex. 3A at 42:13-16.

The ability for a majority of independent and disinterested directors to limit dividends or other upstream distributions from Oncor is another critical layer of ring-fencing.

Oncor's existing ring fence requires that both Oncor and Oncor Holdings each have a majority independent board and that the Oncor board has the sole right to determine dividends.[32] The ring fence was critical in protecting Oncor from the bankruptcy of its indirect parent company.[33] Under the proposed transactions, a robust ring fence is still necessary to protect Oncor if NextEra Energy or one of its subsidiaries were to file for bankruptcy. The ring fence contains restrictive parameters for upstream distributions to ensure that Oncor retains sufficient earnings to maintain the company's liquidity to provide for operations and its overall financial integrity. The ability of the Oncor board to make an independent decision about when it is appropriate to pay dividends and when it is necessary to retain funds for operations, without undue interference from a parent company, is an essential part of the ring fence. The Commission finds that if the proposed transactions were to close, a majority of Oncor's board would need to be independent and disinterested and retain all of the authority the Oncor board currently possesses, and a majority of the independent and disinterested directors would need the authority to veto dividends. Without these protections, the Commission finds that Oncor will not be adequately insulated from the additional risks resulting from NextEra Energy ownership. Because NextEra Energy has stated that these conditions would be unacceptable, the Commission finds that the proposed transactions are not in the public interest. The Commission notes that all ring-fencing conditions placed on Oncor continue to have full force and effect.

### E.    Potential Effects of Ring Fence Elimination

As discussed above, the elimination of the ring fence would subject Oncor to additional risks from NextEra Energy ownership that could subject Oncor to financial harm. If Oncor were to be subject to a NextEra Energy bankruptcy or financial distress, without the protection of the ring fence, the reliability, availability, and cost of Oncor's service to Texas ratepayers could be adversely affected. While the Commission acknowledges that NextEra Energy has been a successful owner and operator of its regulated subsidiary, Florida Power & Light, the Commission

---

[32] *Joint Report and Application of Oncor Electric Delivery Company and Texas Energy Future Holdings Limited Partnership Pursuant to PURA § 14.101*, Docket No. 34077, Order on Rehearing at finding of fact nos. 54 and 58 (Apr. 28, 2008); *see also*, Tr. at 178:1 – 179:5 (Shapard Cross) (Feb. 21, 2017).
[33] Commission Staff Ex. 3A at 28:2-3.

cannot subject Oncor to the additional financial risks entailed by NextEra Energy ownership without the protection of a robust ring fence.

### F.   Public Interest Determination

After evaluating the evidence in the record, the Commission finds that the proposed transactions are not in the public interest under PURA §§ 14.101, 39.262, and 39.915. Under PURA §§ 39.262(m) and 39.915(b), the Commission shall approve a transaction only if the Commission finds it is in the public interest. Without Commission approval, a transaction cannot close under PURA §§ 39.262(l) and 39.915(a). The public interest is an amorphous concept.[34] PURA §§ 39.262 and 39.915 sets forth certain items for the Commission to consider, such as whether the transaction will adversely affect the reliability, availability, or cost of service, but the Commission is not limited to consideration of those items when evaluating the public interest. PURA recognizes that electric-utility regulation in Texas is part of a complex regulatory scheme, and it grants the Commission the authority to protect customers of electric service.[35] The determination of whether any transaction that would change the ownership of the largest utility in Texas is in the public interest is squarely within the scope of the Commission's area of technical expertise.

NextEra Energy ownership of Oncor would subject Oncor and its ratepayers to significant new risks. The tangible benefits to Texas ratepayers that are specific to the proposed transactions are minimal, and would do little to compensate ratepayers for any of the additional risks imposed. When the Commission weighs the additional risks and the lack of tangible benefits, combined with NextEra Energy's insistence on eliminating two critical ring-fencing protections, the Commission finds that the proposed transactions are not in the public interest, and the application is denied.

The Commission adopts the following findings of fact and conclusions of law.

---

[34] *See Railroad Com'n of Texas v. Texas Citizens for a Safe Future and Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011).
[35] PURA § 11.002(c)

## II.   Findings of Fact

### *Procedural History*

1.   On October 31, 2016, Oncor Electric Delivery Company LLC and NextEra Energy, Inc. (collectively, the applicants) jointly filed an application for Commission approval of transactions that would transfer control of Oncor under PURA §§ 14.101, 39.262(m), and 39.915(b).

2.   On November 1, 2016, the Commission issued an order requesting each interested party to file a list of issues to be addressed by the Commission in this docket.

3.   On November 9, 2016, Commission Staff filed a recommendation on notice.

4.   On November 14, 2016, matters relating to discovery in the docket were referred to the State Office of Administrative Hearings (SOAH) for handling.

5.   On November 15, 2016, the Commission issued Order No. 3, approving the amended form of notice and directing the applicants to provide notice.

6.   On November 18, 2016, the Commission issued Order No. 4, finding the application sufficient.

7.   On November 18, 2016, a prehearing conference was held.  The following parties entered an appearance: the applicants, the Steering Committee of Cities Served by Oncor (Cities), the Texas Industrial Energy Consumers (TIEC), the Office of Public Utility Counsel (OPUC), IBEW Local 69, TXU Energy Retail Company, the NRG Companies,[36] and Commission Staff.  Also at the prehearing conference, the following motions to intervene were granted: Cities, OPUC, TIEC, IBEW Local 69, TXU Energy Retail Company, and the NRG Companies.

8.   On November 21, 2016, the Commission ALJ issued Order No. 5, memorializing the prehearing conference and adopting a procedural schedule.

---

[36] The NRG Companies include: NRG Texas Power LLC, Cedro Hill Wind LLC, Elbow Creek Wind Project, LLC, Goat Wind, LP, Gregory Power Partners LLC, Langford Wind Power, LLC, NRG Cedar Bayou Development Company LLC, NRG South Texas LP, Petra Nova Power I LLC, Sherbino I Wind Farm LLC, South Trent Wind LLC, Reliant Energy Retail Services LLC, Green Mountain Energy Company, Everything Energy LLC, US Retailers LLC, NRG Curtailment Solutions LLC, and NRG Power Marketing LLC.

9.     On November 22, 2016, Oncor filed an affidavit attesting to the provision of notice.

10.    On November 30, 2016, Chairman Nelson and Commissioner Anderson filed respective memoranda regarding the issues to be addressed in this docket.

11.    On December 1, 2016, the Commission issued a preliminary order identifying issues to be addressed.

12.    On December 28, 2016, the Commission issued Order No. 6, which granted the motions to intervene of Nucor Steel—Texas, CMC Steel Texas, Texas Energy Association for Marketers, Apex Bethel Energy Center, and Golden Spread Electric Cooperative, Inc.

13.    On January 11, 2017, OPUC filed the direct testimonies of Karl Nalepa and Cynthia Zamora.

14.    On January 11, 2017, Cities filed the direct testimonies of Lane Kollen and Richard A. Baudino.

15.    On January 11, 2017, TIEC filed the direct testimony of Charles S. Griffey.

16.    On January 11, 2017, TIEC, OPUC, and Cities jointly filed the direct testimony of Ralph Smith.

17.    On January 11, 2017, the NRG Companies and the Texas Energy Association of Marketers filed statements of position.

18.    On January 18, 2017, Commission Staff filed the direct testimonies of Randall Vickroy, John Antonuk, Darryl Tietjen, and Constance McDaniel Wyman.

19.    On February 1, 2017, the Commission ALJ issued Order No. 7, establishing procedures and guidelines for the prehearing conference and the hearing on the merits.

20.    On February 2, 2017, NextEra Energy filed the rebuttal testimony of John Reed, Mark Hickson, and Jess Totten.

21.    On February 2, 2017, Oncor filed the rebuttal testimony of James Greer, Stephen Ragland, David Davis, and Robert Shapard.

22.    On February 7, 2017, TIEC filed a notice of intention to take the oral deposition of Mark Hickson.

23.    On February 8, 2017, TIEC filed a notice of intention to take the oral deposition of Robert Shapard.

24.    On February 10, 2017, Nucor Steel filed a statement of position.

25.    On February 13, 2017, IBEW Local 69, OPUC, Golden Spread Electric Cooperative, TXU Energy Retail Company, and Commission Staff filed statements of position.

26.    On February 14, 2017, TIEC filed a notice of intention to take the oral deposition of John Reed.

27.    On February 14, 2017, the SOAH ALJ issued Discovery Order No. 2, ruling on objections to discovery.  The SOAH ALJ sustained NextEra Energy's objections to requests for information from the NRG Companies as being outside the scope of the rebuttal testimony. The SOAH ALJ also sustained Oncor's objection to TIEC's request for production of documents contained in the notice of intention to take the oral deposition of Oncor witness Robert Shapard.   The ALJ found that the requested documents related to alternate transactions and were therefore irrelevant to the application in this docket.

28.    On February 15, 2017, the Commission ALJ issued Order No. 8, denying TIEC's motion to strike portions of the rebuttal testimony of Mark Hickson and John Reed.

29.    On February 16, 2017, SOAH issued Discovery Order No. 3, sustaining Oncor's objection to TIEC RFI's 6-1, 6-2, and 6-17b, finding that the requested documents related to alternate transactions and were therefore irrelevant to the application in this docket.   Discovery Order No. 3 also sustained in part and overruled in part NextEra Energy's objections to TIEC requests for information.

30.    On February 16, 2017, TIEC appealed SOAH Discovery Order Nos. 2 and 3.

31.    On February 16, 2017, the Commission voted to add TIEC's appeal of SOAH Discovery Order Nos. 2 and 3 to the agenda for the February 21, 2017 open meeting.

32.    The Commission granted TIEC's appeal of SOAH Discovery Order Nos. 2 and 3 at the February 21, 2017 open meeting, finding that the requested evidence was relevant and must be provided.

33.    The Commission convened the hearing on the merits on February 21, 2017, and the hearing concluded on February 24, 2017.

34.    On March 10, 2017, initial post-hearing briefs were filed by Cities, Nucor Steel – Texas, the Texas Energy Association for Marketers, OPUC, Commission Staff, NextEra Energy, Oncor, Golden Spread Electric Cooperative, and TIEC.

35.    On March 17, 2017, reply briefs were filed by Cities, OPUC, the Texas Energy Association for Marketers, Oncor, the NRG Companies, Golden Spread Electric Cooperative, Commission Staff, NextEra Energy, and TIEC.

36.    The Commission considered this docket at the March 30, 2017 open meeting.

37.    On March 30, 2017, Commissioner Anderson filed a memorandum discussing his conclusion that the proposed transactions are not in the public interest.

### *Notice*

38.    Notice of the transactions at issue in this docket was provided by first-class mail to the following: (a) all municipalities in Oncor's service area; (b) all entities listed in the Commission's transmission matrix in Docket No. 45382, *Commission Staff's Application to Set 2016 Wholesale Transmission Service Charges for the Electric Reliability Council of Texas*; (c) all electric cooperatives and municipally-owned utilities that have dually certified areas with Oncor; (d) all retail electric providers currently certificated by the Commission; and (e) all authorized representatives for parties in Docket No. 38929, *Application of Oncor Electric Delivery Company for Authority to Change Rates*. Further notice of this docket was provided by publication of an approved notice in local newspapers of general circulation in Oncor's service territory once a week for two consecutive weeks in accordance with 16 TAC § 22.55.

### *Description of the Transactions in the Application*

39.    As detailed in findings of fact 40 through 56, the joint report and application and the direct testimony of NextEra Energy witness Mark Hickson described the proposed transactions.

40.    The application requested Commission approval of two, separately negotiated private transactions.

41.     The first transaction involves NextEra Energy's proposed acquisition of the 80.03% interest in Oncor indirectly held by Energy Future Holdings Corporation.

42.     The second transaction involves NextEra Energy's proposed acquisition of Texas Transmission Holdings Corporation's indirect 19.75% ownership interest in Oncor, held by its wholly-owned subsidiary, Texas Transmission Investment LLC..

43.     A third transaction is NextEra Energy's agreement to purchase Oncor Management Investment LLC's 0.22% interest in Oncor, subject to the closing of the first transaction.

44.     The applicants estimate that the proposed transactions have a combined enterprise value of approximately $18.7 billion, assuming a 100% ownership interest in Oncor. This valuation has not been evaluated or approved by the Commission, and the Commission expresses no opinion as to the validity or appropriateness of this valuation.

45.     The proposed acquisition of Energy Future Holding's 80.03% indirect interest in Oncor was to occur under an agreement and plan of merger by and among Energy Future Holdings, Energy Future Intermediate Holdings, NextEra Energy, and EFH Merger Co., LLC. EFH Merger Co., LLC is a direct, wholly-owned subsidiary of NextEra Energy formed specifically to effectuate NextEra Energy's acquisition of Energy Future Holdings.

46.     Under the merger agreement, Energy Future Holdings was to be merged with and into EFH Merger Co., LLC, and EFH Merger Co., LLC was to continue as the surviving company and successor to the reorganized Energy Future Holdings.

47.     The agreement and plan of merger by and among Energy Future Holdings, Energy Future Intermediate Holdings, NextEra Energy, and EFH Merger Co., LLC was entered into on July 29, 2016, and amended on September 18, 2016.

48.     In conjunction with the September 18, 2016 amendment to the agreement and plan of merger discussed in finding of fact 47, certain funds advised by Fidelity Management and Research Company, which funds are creditors of Energy Future Holdings and Energy Future Intermediate Holdings, entered into an amended and restated plan support agreement with Energy Future Holdings, Energy Future Intermediate Holdings, and NextEra Energy.

49.     On September 19, 2016, Energy Future Holdings and Energy Future Intermediate Holdings received authorization from the bankruptcy court to enter into and perform under both the agreement and plan of merger, as amended, and the amended and restated plan support agreement.

50.     This transaction was part of the eighth amended plan of reorganization of Energy Future Holdings, which was confirmed by the bankruptcy court for the district of Delaware on February 17, 2017.

51.     The proposed acquisition of Texas Transmission Holding Corporation's indirect 19.75% interest in Oncor was to occur under an agreement and plan of merger by and among Texas Transmission Holding Corporation, NextEra Energy, and a NextEra Energy affiliate, WSS Acquisition Company.

52.     Under the merger agreement, WSS Acquisition was to merge with and into Texas Transmission Holdings Corporation, with Texas Transmission Holdings Corporation continuing as the surviving company.

53.     Upon the closing of the proposed transactions with Energy Future Holdings, NextEra Energy intended to fund $9.8 billion, primarily for the repayment of Energy Future Intermediate Holdings' debt.  The proposed transactions would also repay the debt of Energy Future Holdings.

54.     NextEra Energy's proposed financing of the $9.8 billion acquisition of Energy Future Holdings was to include approximately $7.8 billion of debt funding financed at NextEra Energy Capital Holdings.

55.     Upon the closing of the proposed transaction with Texas Transmission Holdings Corporation, NextEra Energy intended to fund approximately $2.4 billion in cash primarily for the purchase of shares in Texas Transmission Holdings Corporation, with the remainder to repay all existing debt residing at Texas Transmission Holdings Corporation.

56.     Oncor's net existing debt of approximately $6.5 billion was to be unaffected by the proposed transactions, except insofar as the credit rating of Oncor would become linked to NextEra Energy's credit rating.

## _Risks to Oncor Ratepayers_

57.   NextEra Energy's method of financing the proposed transactions would not truly eliminate the debt above Oncor but would refinance that debt with new debt at NextEra Energy Capital Holdings.

58.   Oncor's revenues would continue to support repayment of that debt, though to a lesser extent.

59.   Including the debt from the proposed transactions, the total amount of consolidated debt at NextEra Energy would be approximately $45 billion.

60.   The revenues of Oncor would be required to support about 15% of that $45 billion in debt.

61.   Moody's Investors Service noted that "[t]he acquisition-related debt, without a material amount of deleveraging, would exhaust [NextEra Energy's] debt capacity at its current ratings" and "make the company more vulnerable to unforeseen events or margin shortfalls."[37]

62.   The substantial amounts of leverage at NextEra Energy increases the financial risk to Oncor.

63.   The proposed transactions would introduce to Oncor risks associated with NextEra Energy's unregulated businesses, including generation development.

64.   Oncor is not currently subject to risks related to unregulated generation development.

65.   The ratings agencies have found that NextEra Energy has a limited tolerance for financial risk due to unforeseen circumstances, and have identified risks that could lead to a downgrade in the credit rating of NextEra Energy.

66.   NextEra Energy, including NextEra Energy Resources, is subject to numerous risks, including potential changes in renewable-energy demand resulting from changes to climate or tax policy, commodity risks, retail-electric-provider risks, and power- and nuclear-generation risks.

---

[37] Direct Testimony of John Reed, NextEra Energy Exhibit 4, Exhibit JR-6 at 5.

67.  The additional risks, in conjunction with the high amount of leverage at NextEra Energy, increases the likelihood that unforeseen events could affect Oncor's financial stability.

### *Lack of Tangible Benefits*

68.  In determining whether a transaction is in the public interest under PURA §§ 14.101, 39.262, and 39.915, the Commission has evaluated whether the transaction would provide tangible and quantifiable benefits to Oncor's ratepayers that are specific to the transaction at issue.

69.  The sole tangible and quantifiable benefit offered by NextEra Energy is a commitment to share 90% of the interest-rate savings on Oncor's cost of debt between the closing of the transactions and Oncor's next rate case after the rate case filed on March 17, 2017.

70.  At most, this quantifiable benefit would amount to credits of approximately $3.2 million per year for the first four years after the closing of the transactions.

71.  NextEra Energy identified benefits of the transactions that include a commitment to fund expenditures in Oncor's five-year long-range capital plan (subject to certain limitations), opportunities for collaboration between Oncor and Florida Power & Light, no material involuntary workforce reductions at Oncor for two years, the possible consolidation of NextEra Energy's subsidiary Lone Star Transmission into Oncor, and the resolution of the Energy Future Holdings bankruptcy proceeding.

72.  NextEra Energy has made no attempt to quantify the listed benefits.

73.  NextEra Energy made no estimate of synergy savings resulting from the proposed transactions.

74.  The conclusion of the Energy Future Holdings bankruptcy proceeding is not a benefit unique to the proposed transactions.

75.  Throughout the pendency of Energy Future Holdings' bankruptcy proceeding, Oncor has safely provided reliable service to Texas customers.

76.  Oncor has made $6 to $7 billion in capital investments over the past five years.

77.  The equity portion of these investments have been funded using Oncor's retained earnings.

## *Elimination of Existing Oncor Ring-fencing Protections*

78.     NextEra Energy's proposal is premised on the ability to link Oncor's credit profile with that of NextEra Energy.

79.     NextEra Energy needed to achieve sufficient financial control over the actions and resources of Oncor to enable the linkage of Oncor's and NextEra Energy's credit profiles.

80.     .NextEra Energy requested that the Commission grant NextEra Energy the ability to eliminate two protections from Oncor's existing ring fence: (1) restrictions on NextEra Energy's ability to appoint, remove, and replace members of the Oncor and Oncor Holdings boards of directors, with the exception of three disinterested directors on the Oncor board of directors, and (2) the ability of Texas Transmission Investments shareholders to veto dividends declared by the Oncor board of directors and, in certain circumstances, veto capital and operating budgets.

81.     NextEra Energy noted that if the Commission required the preservation of either of these two ring-fencing protections, the credit profiles of Oncor and NextEra Energy could not be linked, and NextEra Energy would not close the proposed transactions.

82.     The ring fence protecting Oncor since the 2007 leveraged buyout of TXU Corp. by Energy Future Holdings has protected Oncor and Oncor's ratepayers from any financial difficulties.

83.     Oncor has not been made a party to the bankruptcy of its indirect parent company, Energy Future Holdings.

84.     The two ring-fencing provisions that NextEra Energy seeks to eliminate are among the most important provisions of Oncor's ring fence.

85.     To protect Oncor if NextEra Energy or one of its subsidiaries files for bankruptcy, Oncor would still need a ring fence that includes a majority of independent and disinterested board of directors at Oncor and that retains both all of the authority that Oncor's board currently possesses and the ability of a majority of independent and disinterested directors to veto dividends.

86.    The ring fence contains restrictive parameters for upstream distributions to ensure that Oncor retains sufficient earnings to maintain the company's liquidity to provide for operations and its overall financial integrity.

87.    The ability of the Oncor board to make an independent decision about when it is appropriate to pay dividends and when it is necessary to retain funds for operations, without undue interference from a parent company, is an essential part of the ring fence.

88.    Without a majority independent board and the ability of a majority of independent and disinterested directors to veto dividends, Oncor will not be adequately insulated from the additional risks resulting from NextEra Energy ownership.

89.    Because NextEra Energy has stated that conditions requiring Oncor to have a majority independent board and the ability of a majority of independent and disinterested directors to veto dividends are unacceptable, the Commission finds that the proposed transactions are not in the public interest.

90.    All ring fence conditions placed on Oncor continue to have full force and effect.

### *Potential Impacts of Ring Fence Elimination*

91.    If Oncor were to be subject to a NextEra Energy bankruptcy, without the protection of the ring fence, the reliability of Oncor's service could be adversely affected.

92.    If Oncor were to be subject to a NextEra Energy bankruptcy, without the protection of the ring fence, the availability of Oncor's service could be adversely affected.

93.    If Oncor were to be subject to a NextEra Energy bankruptcy, without the protection of the ring fence, the cost of Oncor's service could be adversely affected.

### *Public Interest Determination*

94.    Under PURA §§ 39.262(m) and 39.915(b), the Commission shall approve a transaction only if the Commission finds it is in the public interest.

95.    Without the Commission's approval, a proposed transaction cannot close under PURA §§ 39.262(l) and 39.915(a).

96.    The public interest is an amorphous concept.

97.    PURA §§ 39.262 and 39.915 set forth certain items for the Commission to consider, such as whether the transaction will adversely affect the reliability, availability, or cost of service.

98.    The Commission is not limited to consideration of the items referenced in §§ 39.262 and 39.915.

99.    PURA recognizes that electric-utility regulation in Texas is part of a complex regulatory scheme, and it grants the Commission authority to protect customers of electric service.

100.   The determination of whether a transaction that would change the ownership of the largest transmission and distribution utility in Texas is squarely within the scope of the Commission's area of technical expertise.

101.   NextEra Energy's ownership of Oncor would subject Oncor and its ratepayers to significant new risks.

102.   The tangible benefits to Texas ratepayers that are specific to this transaction are minimal and would do little to compensate ratepayers for the additional risks imposed.

103.   Because of the proposed transactions' additional risks and lack of tangible benefits, combined with NextEra Energy's insistence on the elimination of two critical ring-fencing protections, the proposed transactions are not in the public interest.

104.   Based on the record evidence in this case, the proposed transactions are not in the public interest.

### III.  Conclusions of Law

1.     The Commission has jurisdiction over the parties and the subject matter of this docket under PURA §§ 14.101, 39.262(o), and 39.915.

2.     Each of the proposed transactions discussed in the joint report and application are not in the public interest under PURA §§ 14.101, 39.262(l)-(m), and 39.915.

3.     Because the Commission is not approving the transactions discussed in the joint report and application, under PURA §§ 39.262(l) and 39.915(a), the proposed transactions may not close.

### IV.  Ordering Paragraphs

In accordance with these findings of fact and conclusions of law, the Commission issues the following orders:

1.     The Commission does not approve the purchase of Oncor Electric Delivery Company LLC, by NextEra Energy, Inc. because the proposed transactions addressed in the joint report and application are not in the public interest under §§ 14.101, 39.262(l)-(m), and 39.915.

2.     Because the Commission's approval was not obtained by Oncor Electric Delivery Company LLC and NextEra Energy, Inc., the proposed transactions shall not close.

3.     All motions or requests for entry of specific findings of fact and conclusions of law, and other requests for general or specific relief not expressly granted, are denied.

Signed at Austin, Texas the 13th day of April 2017.

PUBLIC UTILITY COMMISSION OF TEXAS


_____

DONNA L. NELSON, CHAIRMAN


_____

KENNETH W. ANDERSON, JR., COMMISSIONER


_____

BRANDY MARTY MARQUEZ, COMMISSIONER


W2013
q:\cadm\orders\final\46000\46238 fo.docx

0000022