## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 11636** |
| | ) | |

### THE DEBTORS' OBJECTION TO THE ELLIOTT FUNDS'
### MOTION TO RECONSIDER IN PART THE SEPTEMBER 19, 2016 ORDER
### [DOCKET NO. 9584] APPROVING THE NEXTERA TERMINATION FEE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this objection to the *Elliott Funds' Motion to Reconsider in Part the September 19, 2016 Order*

*[Docket No. 9584] Approving the NextEra Termination Fee* [D.I. 11636] (the "Reconsideration

Motion" and "Elliott," respectively).  The Debtors respectfully state as follows:[2]

### OBJECTION

1.     Putting aside the Debtors' views on the allowance of the Termination Fee under

the Merger Agreement, Elliott's Reconsideration Motion should be denied for at least four

reasons.  ***First***, the Reconsideration Record makes clear that the Bankruptcy Court's decision to

enter the Termination Order was based on a complete and accurate record—the fact that the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of Debtors in these chapter 11 cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Reconsideration Motion or the *Stipulation and Order Regarding Elliott's Motion to Reconsider* [D.I. 11716], as applicable.

record may be complex, requiring clarification, does not suggest otherwise. Any allegations that the Debtors masked any provisions of the Termination Fee from the Bankruptcy Court are baseless and appear to be a disturbing attempt to convert complexity into bad faith. ***Second***, the Termination Order is a final, non-appealable order and the Reconsideration Motion does not provide a sufficient basis to satisfy the high bar set by Federal Rule of Civil Procedure 60(b) (the "Federal Rules"). ***Third***, Elliott's interpretation and application of the *O'Brien* standard is fatally flawed, insofar as it requires a bankruptcy court to evaluate the approval of a termination fee based on subsequent facts that render the underlying transaction incapable of being consummated. Such a standard would turn *O'Brien* on its head and make it exceedingly difficult for debtors to obtain approval of termination fees and for prospective good faith purchasers to rely on bankruptcy court approval of termination fees. ***Fourth***, Elliott's arguments that the relief granted in the Reconsideration Motion would "conserve judicial resources" by eliminating the need for the current, pending litigation as to the allowance of the Termination Fee (and the projected future settlement and allocation of such Termination Fee as between EFH and EFIH) is meritless. There is no basis for believing that NextEra would not appeal the relief granted pursuant to the Reconsideration Motion, thereby embroiling all parties in a three-track litigation: (a) litigation as to appeals of the Reconsideration Motion; (b) the pending litigation on the allowance of the Termination Fee; and (c) litigation related to any settlement of the allocation of the Termination Fee, should it become an allowed administrative claim.[3]

---

[3] It is true that summary dispositions (like the one Elliott seeks in connection with the Reconsideration Motion) generally avoid trials in the short run. That being said, however, the potential for avoiding a lengthier trial is not a sufficient rationale for granting a motion like the Reconsideration Motion when such motion itself has no merit.

(Continued…)

2.      In short, the Reconsideration Record is complete and any allegations that the Debtors concealed any material facts from the Bankruptcy Court or any other party-in-interest are nothing more than baseless rhetoric, belied by (a) the terms of the Merger Agreement; (b) statements made on the record at the hearing to consider entry of the Termination Fee Order (by, among others, Mr. Hiltz and counsel to the very holders whose claims Elliott now holds); and (c) the Debtors' swift action to remedy any inadvertent overstatements.  By its own terms, the Termination Fee Order is a final order, and, as described below, the extraordinary circumstances justifying Federal Rule 60(b) do not apply.  Faced with the high standard of Federal Rule 60(b) and the unambiguous terms of the Termination Fee Order, Elliott offers an alternative and perverse interpretation of *O'Brien* that is not supported by law in this circuit or any other circuit, and would effectively render it impossible for a debtor to ever obtain approval of a termination fee.  Finally, the relief requested in the Reconsideration Motion would condemn all parties-in-interest to pursue multiple litigation tracks that ultimately tie to the same core issue: whether the Termination Fee is payable.  For these reasons, the Debtors respectfully request that the Bankruptcy Court deny the relief in the Reconsideration Motion, allowing the parties to focus on the substantive, factually-intensive litigation related to the allowance of the Termination Fee under the Merger Agreement.

A.      **Nothing in the Reconsideration Record Suggests the Bankruptcy Court Did Not Understand the Termination Fee Provisions**.

3.      There is nothing in the Reconsideration Record to support Elliott's assertions that the Reconsideration Record is "materially incomplete and inaccurate." ***First***, the Merger

---

In addition, as all parties are aware, the Debtors (through other Delaware counsel) and certain intervenors (including Elliott) have filed substantive pleadings seeking to disallow the Termination Fee. Nothing herein shall prejudice the rights or arguments of any parties with respect to such proceedings.

RLF1 18093180v.1

Agreement was filed on August 3, 2016—47 days before the hearing to consider approval of the Merger Agreement.  During that 47 day period, all parties-in-interest had an opportunity to analyze the Merger Agreement.  Yet no party (including the four parties that objected to the Merger Agreement) raised any objections (formally or informally) on the basis that the Merger Agreement was not clear regarding when the Termination Fee was payable.  In addition, at the time the Debtors entered into the Merger Agreement, Elliott did not own any Claims (to the best of the Debtors' knowledge).  Indeed, counsel to the EFIH Unsecured Notes Trustee and the then-Holders of EFIH Unsecured Notes stated the following at the hearing to consider approval of the Termination Fee:

> A lot of work has occurred over the last couple of months between NextEra and the company and a number of other constituencies and I do want to recognize, at least from the creditor perspective, that, you know, **this agreement has been thoroughly reviewed and vetted by the principal beneficiaries of this agreement.**

9/19/16 Hr'g Tr. 107:23-108:5 (emphasis added).

4.      Moreover, it goes without saying that when Elliott subsequently purchased its EFIH Unsecured Note Claims, it did so with full knowledge of the Merger Agreement, the existence of the Termination Fee, and the effect of the Termination Fee on EFIH unsecured creditor recoveries.

5.      *Second*, while it is true that the Debtors inadvertently overstated the circumstances in which the Termination Fee would not be payable, such overstatements were made in good faith and were ultimately non-prejudicial given (a) other statements made on the record at the hearing and (b) the submission of the September 25 Letter (as defined below), prior to entry of the Termination Fee Order.  During the cross-examination of Mr. Hiltz, a senior managing director at Evercore, Mr. Hiltz testified that, assuming there was no other alternative valid termination right with respect to which the Termination Fee was not payable, the

4

Termination Fee would be payable if the transactions contemplated by the Merger Agreement

were not consummated and EFH entered into another transaction:

> Q: And so the purpose of negotiating this break-up fee -- one of the purposes is in the unlikely event that the deal isn't consummated and EFH enters into another transaction, that the termination fee will be paid to, in this case NextEra --
>
> A: Correct.

*Id.* at 76:12-17.

> Q: [I]f that plan isn't consummated and another plan is drawn up or otherwise proffered by the Debtors, or they do a deal with someone else, [] the termination fee will have to be paid?
>
> A: Correct.

*Id.* at 77:14-18.

6.     While this of course compresses the Merger Agreement, it clearly shows that

parties interpreted "alternative proposal" to broadly encompass any transaction that did not

culminate in NextEra or its affiliates owning Oncor, even if not higher or otherwise better.

7.     Importantly, the Bankruptcy Court had a direct colloquy with Mr. Hiltz regarding

whether the Termination Fee would be payable in the absence of PUCT approval.  During that

exchange, Mr. Hiltz made clear that, absent an alternative valid termination right with respect to

which the Termination Fee would not be payable, if the PUCT does not approve the transaction

and the Debtors subsequently confirm a different plan, the Termination Fee would be payable.

> Q: [I]f the Court confirms the plan, and by that I mean the one on the table here, or the NextEra deal, and that plan does not consummate because of a failure to achieve regulatory approval, is the break-up fee payable?
>
> A: If the Debtor enters into another transaction, the answer is yes.
>
> Q: But if this transaction simply falls apart because you don't get regulatory approval from the Public Utility Commission?
>
> A: Well, again, I think if the Debtor enters into another transaction including a

reorganization involving its own creditors … it would be payable.

Q: [B]ecause if this plan gets confirmed for Debtors -- [and] not [because of] anything the Debtors do wrong, they don't get the regulatory approval they need -- **this falls apart and a year and a half from now, they confirm a different plan that's not even a sale plan, say it's a standalone plan, that break-up fee would be payable?**

A: **I believe so.**

*Id.* at 78:3-23 (emphasis added).

8.      ***Third***, the *Joint Letter from NextEra Energy, Inc. and Energy Future Holdings Corp. to the Honorable Christopher S. Sontchi Concerning Termination Fee and Proposed Oncor Transaction*, filed on September 25, 2016 [D.I. 9655] (the "September 25 Letter") makes abundantly clear that the Termination Fee may become payable if EFH and EFIH terminate the Merger Agreement in the face of PUCT denial.

In other words, the $275 million termination fee is triggered if EFH and/or EFIH terminate the merger agreement as a consequence of the Commission either not approving the merger agreement transaction or approving the merger transaction with the imposition of a burdensome condition.

September 25 Letter at 1.

9.      Elliott fixates on the argument that the September 25 Letter did not define the phrase "alternative transaction."  First, were there any doubt as to what "alternative transaction" meant in the context of the Termination Fee, the logical place to search for clarity would be in the provision of the Merger Agreement governing the Termination Fee.  Section 8.5(b) defines alternative transaction as "including any transaction or proceeding that permits the E-Side Debtors that are the direct or indirect owners of Oncor Holdings to emerge from the Chapter 11 Cases, pursuant to which neither Parent nor any of its Affiliates will obtain direct or indirect ownership of 100% of Oncor Holdings and Oncor Holdings' approximately 80% equity interest in Oncor."  Merger Agreement, ¶ 8.5(b).  Second, regardless of whether parties interpreted such

RLF1 18093180v.1

language to include a chapter 7 or a transaction that did not have the Debtors' support or any

other possible definition, no party disputes that an alternative transaction *does* include a

transaction actively supported by the Debtors.

> In order for EFH and/or EFIH to pursue an alternative transaction, EFH and EFIH believe
> that they would only terminate in such a situation if they had an alternative proposal to
> pursue.

*Id.*

10.    Finally, Elliott alleges that the Debtors and NextEra concealed from the

Bankruptcy Court that the Termination Fee was payable if EFH and EFIH terminated the Merger

Agreement but not if under the same circumstances, NextEra terminated the Merger Agreement.

Again, the September 25 Letter could not be clearer on this point.

> In other words, the $275 million termination fee is triggered if EFH and/or EFIH
> terminate the merger agreement as a consequence of the Commission either not
> approving the merger agreement transaction or approving the merger transaction with the
> imposition of a burdensome condition.  **The termination fee is not triggered if, under
> the same circumstances, NextEra Energy terminates the merger agreement instead
> of EFH and/or EFIH**.

*Id.* (emphasis added).

11.    The question for reconsideration purposes is not whether the substantive

provisions of the Merger Agreement did or did not properly incentivize NextEra, but rather

whether the underlying record—when viewed holistically—was materially complete.  From this

perspective, the September 25 Letter should be considered part of the Reconsideration Record

because it remedied any potential miscommunications made during the hearing to consider the

Merger Agreement and, based on the letter, the Bankruptcy Court had ample opportunity to

amend or revisit its decision (including at the hearing held the day after the letter was submitted,

on September 26th).  Even without consideration of the rest of the Reconsideration Record, the

September 25 Letter made abundantly clear that (a) potential payment of the Termination Fee

depended, in part, on whether NextEra terminated or whether EFH/EFIH terminated; (b) the Termination Fee could be payable if EFH/EFIH terminated following PUCT denial; and (c) EFH and EFIH would not terminate the Merger Agreement unless and until they had an alternative proposal to pursue.

**B.     The Termination Fee Order Is a Final Order**.

12.     "In the bankruptcy context, finality is accorded a somewhat flexible pragmatic definition. . . [Where] the order fully and finally resolves a discrete set of issues, leaving no related issues for later determination, we conclude that that order is final and appealable." *Matter of Taylor*, 913 F.2d 102, 104 (3d Cir. 1990).    Based on this guiding principle, the Termination Fee Order is a final order, with respect to the "discrete set of issues" concerning the Termination Fee.    Indeed, the notion that this "discrete set of issues" could be freely revisited and revised completely guts the protections that are standard fare in chapter 11 cases.

13.     The Bankruptcy Court entered the Termination Fee Order on September 19, 2016. The Termination Fee Order approved the Debtors' entry into the Merger Agreement "in its entirety" and corresponding plan support agreement, and did not adjourn any issues for future adjudication other than the allocation of the Termination Fee as between EFH and EFIH. Termination Fee Order ¶ 3.

14.     Furthermore, there is no pending appeal of the Termination Fee Order.    The Asbestos Objectors appealed the Termination Fee Order on September 30, 2016 [D.I. 9719], with respect to the effect of authorizing the Debtors' entry into the Merger Agreement, related plan support agreement, and the Termination Fee, on certain plan confirmation issues.    No other party appealed the Termination Fee Order and no party (including the Asbestos Objectors) sought to stay the Termination Fee Order.    Following termination of the NextEra plan, the

8

Asbestos Objectors voluntarily dismissed their appeal of the Termination Fee Order. In the absence of a stay, and in the absence of any appeals of the Bankruptcy Court's *O'Brien* ruling, the Termination Fee Order is a final, non-appealable order.

15.    In arguing that the Termination Fee Order is an interlocutory order, Elliott points to the Debtors' motion to dismiss the Asbestos Objectors' appeal of the Termination Fee Order. Under *Taylor*, this comparison is irrelevant.  In their appeal, the Asbestos Objectors argued that the Bankruptcy Court's approval of the Merger Agreement should be overruled on appeal because pursuant to the plan implementing the Merger Agreement, unmanifested asbestos claims were to be discharged, which the Asbestos Objectors argued was an alleged violation of due process.  As the Debtors noted in their motion to dismiss, "[p]lan provisions "are not finally determined until the Bankruptcy Court enters an order confirming the new plan."  Because the Asbestos Objectors were seeking an appeal of the Termination Fee Order *with respect to an issue that would not become ripe for adjudication until confirmation of the plan* (*i.e.*, the discharge of unmanifested asbestos claims), the Termination Fee Order was not a final order, *with respect to the "discrete set of issues" raised in the Asbestos Objectors'* appeal.

16.    In contrast, the NextEra plan was rendered null and void on July 6, 2017.  *See Notice that the NextEra Plan and NextEra Plan Confirmation Order Have Been Rendered Null and Void* [D.I. 11446].  The current, substantive dispute—whether EFH and EFIH should be joint and severally liable for the Termination Fee—is not dependent on, or affected by, any subsequent facts, including confirmation of the Debtors' current plan of reorganization, consummation of such plan of reorganization, or any Bankruptcy Court approval of any allocation of the Termination Fee.  No further facts or events are required for the Termination Fee dispute to become ripe and, as a result, under the flexible *Taylor* standard, the Termination

Fee Order is a final order.

**C.    The Reconsideration Motion Does Not Merit Extraordinary Relief under Federal Rule 60(b)**.

17.    Relief under Federal Rule 60(b) is available only where the "overriding interest in the finality and repose of judgments may properly be overcome." *Harris v. Martin*, 834 F.2d 361, 364 (3d Cir. 1987); *see also Tobin v. Gordon*, 614 F. Supp. 2d 514, 530 (D. Del. 2009) (denying motion for reconsideration, noting "[t[he remedy provided by Rule 60(b) is 'extraordinary, and special circumstances must justify granting relief under it.'" (quoting *Moolenaar v. Gov't of Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987)).

18.    Extraordinary circumstances are not present here.  Specifically, as discussed in greater detail below, no facts were revealed after this Court entered the Termination Fee Order that warrant relief under Federal Rule 60(b).  Indeed, there is nothing in the Reconsideration Record to indicate that the Court failed to understand the terms of the Termination Fee Order at the time of its entry, and Elliott offers nothing otherwise demonstrating that there are extraordinary circumstances warranting relief from the Termination Fee Order.  *See Kieffer v. Allenwood*, 642 F. App'x. 77, 80 at n.3 (3d Cir. 2016) (holding that "to the extent that Kieffer also sought relief under Rule 60(b)(1) . . ., he failed to show any mistake that called the validity of the prior judgment into doubt or any 'extraordinary circumstances'"); *Andela v. Admin. Office of U.S. Courts*, 569 F. App'x. 80, 84 (3d Cir. 2014) (denying Federal Rule 60(b)(1) motion because "Andela failed to prove any mistake or neglect on the Court's part"); *Cottrell v. Good Wheels*, 458. App'x. 98, 102 (3d Cir. 2012) (denying Federal Rule 60(b)(1) motion where movant sought relief from summary judgment on the ground that counsel misread a brief and failed to address relevant portions on the record.

19.    Elliott cites *In re Sportsman's Warehouse, Inc.*, 457 B.R. 372 (Bankr. D. Del.

2011), in support of its request for relief under Federal Rule 60(b). That case is entirely inapposite. There, Sportsman's Warehouse, Inc. ("SWI"), mistakenly moved to assume a lease agreement because it believed the lease provided SWI an option to purchase the property, rather than required SWI to purchase the property. *Id.* at 395. The Court ruled that there was a mistake because "the Lease Agreement . . . is rife with ambiguities." *Id.* Specifically, the lease stated "both that SWI has the 'exclusive option and right to purchase' the property, and that SWI 'shall exercise its option to purchase the Property,' and includes other provisions that collectively make it unclear whether SWI ultimately must buy the Property or has merely the option to buy it at its discretion." *Id.* (quoting the Lease Agreement). Because of these conflicting provisions, the court concluded SWI adequately pled entitlement to relief under Federal Rule 60(b)(1) based on mistake.

20.    Unlike *Sportsman's Warehouse*, there are no conflicting provisions in the Merger Agreement governing payment of the Termination Fee. Instead, one provision in the Merger Agreement governs when the termination fee may be payable in the event the PUCT denied approval of the transaction and, as discussed below, there is nothing in the Reconsideration Record to suggest that parties-in-interest and the Court did not understand those terms before entry of the Termination Fee Order.

21.    *In re 310 Assocs.*, 346 F.3d 31 (2d Cir. 2003), is likewise distinguishable. There, a court approved a termination fee in part because in the bankruptcy auction sale context "they provide an incentive for an initial bidder to serve as a so-called 'stalking horse,' whose initial research, due diligence, and subsequent bid may encourage later bidders." *Id.* at 34. The Court granted relief under Federal Rule 60(b) based on, among other things, a mistake of fact when it learned that the purported buyer was "not a stalking horse after all, because there were already

11

two engaged bidders interested in the property." In contrast to *310 Assocs.*, Elliott does not allege that the Termination Fee Order was based on a mistake about any *fact* on which the Court ruled, such as the amount of the Termination Fee. Indeed Elliott's alleged "mistake of fact" is not a mistake of fact at all, but is instead an alleged "mistake" based on an *interpretation* of *settled* facts—the text of the Merger Agreement. *310 Assocs.* is therefore entirely beside the point and relief under Federal Rule 60(b) should be denied.

**D.    Elliott's Application of the *O'Brien* Standard Is Not Supported by Law or Logic.**

22.    Elliott argues in the Reconsideration Motion that "this Court could not properly find, as *O'Brien* requires, that the payment of a termination fee provided an 'actual benefit' when the transaction fails to close due to a regulatory veto (unless the buyer voluntarily waives such fee)." In short, Elliott appears to be arguing that the *O'Brien* standard allows Courts to re-evaluate approved termination fees based on subsequent developments that potentially give rise to the termination fee. Taken to its logical conclusion, termination fees could only ever be approved once sales have been completed—at which point every such termination fee would be worthless. No rational purchaser would ever serve as a stalking horse to purchase assets from a chapter 11 debtor if that were the case.

23.    On the contrary, the Third Circuit analyzes whether a termination fee provided a benefit to a debtor's estate *at the time of approval*. *In re Reliant Energy Channelview LP*, 594 F.3d 200, 208 (3d Cir. 2010) (discussing how the bankruptcy court had properly used its discretion to determine if the estate benefited from the termination fee at the time of the approval hearing). On this, the Reconsideration Motion speaks for itself—three witnesses testified in a full-day trial regarding the Termination Fee and the benefits, at the time, of entering into the Merger Agreement. In addition, Elliott's arguments ignore the evidence presented at the hearing

12

to consider approval of the Merger Agreement regarding the immediate, quantifiable, and recorded benefits of entry into the Merger Agreement at the time (including, among others, support from all creditor constituencies except the Asbestos Objectors, whose objections related to plan confirmation issues).

**E.      Judicial Economy Weighs in Favor of Denying the Reconsideration Motion**.

24.      Finally, Elliott argues that judicial economy weighs in favor of granting the Reconsideration Motion on the basis that granting such relief will forgo the need for protracted substantive litigation on (a) whether, under the terms of the Merger Agreement, NextEra is entitled to the Termination Fee and (b) the allocation of the Termination Fee as between EFH and EFIH.

25.      It is somewhat baffling for Elliott—a serial litigant—to suggest that granting the Reconsideration Motion will magically eliminate the need for the substantive litigation on the Termination Fee.  The record of litigation in these chapter 11 cases speaks for itself and, with $275 million at stake, there is no basis for believing that any order granting the Reconsideration Motion will avoid extensive appellate litigation.  Under those circumstances, all parties-in-interest would be embroiled in both the substantive litigation—regarding whether the Termination Fee is payable under the Merger Agreement—as well as this litigation on whether the Merger Agreement ever became binding on the Debtors.[4]  Such a result would waste resources and time for all parties in interest.  Given that the Termination Fee Order is a final order that fully and finally settled the parties' rights regarding the Termination Fee, ultimately setting the stage for the current litigation on the allowance of the Termination Fee, the parties'

---

[4] *See Order Consolidating Certain Termination Fee Proceedings And Setting A Rule 7016 Scheduling Conference* ¶ 2 [D.I. 11774].

time and resources would be better spent on focusing on the substantive litigation.  In any case,

even if it were true that granting a motion would conserve judicial resources, such motion would

have to have merit.  The Reconsideration Motion does not.

## CONCLUSION

26.    The Termination Fee Order, unlike many of the other orders entered in these

chapter 11 cases, is a final order that established the parties' rights vis-à-vis each other regarding

the Termination Fee.  No further facts are necessary for the current, substantive litigation

regarding the allowance of the Termination Fee to ripen.  Moreover, contrary to Elliott's

assertions, the Reconsideration Record is neither misleading nor materially incomplete—it *is*

lengthy and complex, an unsurprising result given the intricacies of the central issues.  Any

allegations to the contrary are baseless and, frankly, a disappointing departure from the level of

professionalism that has otherwise governed these chapter 11 cases.  In light of the foregoing, the

Debtors respectfully request that the Court deny the relief in the Reconsideration Motion and

allow all parties-in-interest to focus on the substantive litigation regarding the allowance of the

Termination Fee.

*[Remainder of page intentionally left blank.]*

RLF1 18093180v.1

Dated: September 7, 2017
Wilmington, Delaware

_/s/ Jason M. Madron_

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
              defranceschi@rlf.com
              madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted _pro hac vice_)
Stephen E. Hessler, P.C. (admitted _pro hac vice_)
Brian E. Schartz (admitted _pro hac vice_)
Aparna Yenamandra (admitted _pro hac vice_)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900
Email:        edward.sassower@kirkland.com
              stephen.hessler@kirkland.com
              brian.schartz@kirkland.com
              aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted _pro hac vice_)
Marc Kieselstein, P.C. (admitted _pro hac vice_)
Chad J. Husnick, P.C. (admitted _pro hac vice_)
Steven N. Serajeddini (admitted _pro hac vice_)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
              marc.kieselstein@kirkland.com
              chad.husnick@kirkland.com
              steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession

RLF1 18093180v.1