```
                                                      Page 1
 1    UNITED STATES BANKRUPTCY COURT
 2    DISTRICT OF DELAWARE
 3    In re:                        :
                                    :   Chapter 11
 4    ENERGY FUTURE HOLDINGS        :
      CORP., ET AL.,                :   Case No. 14-10979(CSS)
 5                                  :
               Debtors.            :   (Jointly Administered)
 6    _____ :
                                    :
 7    ENERGY FUTURE HOLDINGS CORP. :
                 -and-              :
 8    ENERGY FUTURE INTERMEDIATE    :
      HOLDING COMPANY, LLC.,        :
 9                                  :
                                    :
10          Plaintiffs,             :   Adv. Pro No. 17-50942(CSS)
                                    :
11    v.                            :
                                    :
12    NEXTERA ENERGY, INC.,         :
                                    :
13          Defendant.              :
      _____ :
14
15                        United States Bankruptcy Court
16                        824 North Market Street
17                        Wilmington, Delaware
18
                          September 19, 2017
19
                          10:03 PM
20
21    B E F O R E :
22    HON CHRISTOPHER S. SONTCEHI
23    U.S. BANKRUPTCY JUDGE
24
25
```

1   HEARING re Motion of the EFH/EFIH Debtors for Order

2   Authorizing the EFH/EFIH Debtors to Consent to Oncor's Entry

3   into the Sharyland Merger Agreement [D.I. 11837; filed

4   August 29, 2017]

5

6   HEARING re Application of Energy Future Holdings Corp., et

7   al., for Entry of an Order Authorizing the Debtors to Retain

8   and Employ Shaw Fishman Glantz & Towbin LLC as Special

9   Delaware Counsel Effective Nunc Pro Tunc to August 14, 2017

10  [D.I. 11838; filed August 29, 2017]

11

12  HEARING re The Elliott Funds' Motion to Reconsider in Part

13  the September 19, 2016 Order [Dkt. No. 9584] Approving the

14  NextEra Termination Fee [D.I. 11636; filed July 29, 2017]

15

16  HEARING re Motion of Shirley Fenicle, William Fahy, John H.

17  Jones, and David Heinzmann to Intervene Pursuant to Rule 24

18  of the Federal Rules of Civil Procedure and Rule 7024 of the

19  Federal Rules of Bankruptcy Procedure [Adv. D.I. 27; filed

20  August 25, 2017]

21

22  HEARING re Elliott's Motion to Intervene and for Derivative

23  Standing [Adv. D.I. 28; filed August 25, 2017]

24

25

```
 1   A P P E A R A N C E S :

 2   KIRKLAND & ELLIS

 3        Attorneys for the Debtors

 4

 5   BY:  MARK KIESELSTEIN, ESQ.

 6        MARK MCKANE, ESQ.

 7        APARNA YENAMANDRA, ESQ.

 8

 9   RICHARDS, LAYTON & FINGER

10        Attorneys for the Debtors

11

12   BY:  DANIEL J. DEFRANCESCHI, ESQ.

13        JASON MADRON, ESQ.

14

15   SHAW FISHMAN GLANTZ & TOWBIN LLC

16        Attorney for Debtors

17

18   BY:  THOMAS HORAN, ESQ.

19

20   PACHULSKI STANG ZIEHL & JONES

21        Attorney for Second Lien Indenture Trustee

22

23   BY:  LAURA DAVIS JONES, ESQ.

24

25   SULLIVAN & CROMWELL
```

1          Attorneys for E-Side Committee

2

3    BY:  ANDREW G. DIETDERICH, ESQ.

4         ALEXA KANNZLEY, ESQ.

5

6    NIXON PEABODY

7          Attorney for EFH Indenture Trustee

8

9    BY:  RICHARD PEDONE, ESQ.

10

11   MONTGOMERY MCCRACKEN WALKER & RHOADS LLP

12         Attorney for E-Side Committee

13

14   BY:  MARK A. FINK, ESQ.

15

16   PROSKAUER ROSE

17         Attorney for EFH Corp.

18

19   BY:  PETER YOUNG, ESQ.

20

21   UNITED STATES DEPARTMENT OF JUSTICE

22         Attorney for U.S. Trustee

23

24   BY:  RICHARD L. SCHEPACARTER, ESQ.

25

1    LANDIS RATH & COBB

2          Attorney for NextEra

3

4    BY:  JOSEPH WRIGHT, ESQ.

5

6    ROPES & GRAY

7          Attorney for Elliott

8

9    BY:  GREGG M. GALARDI, ESQ.

10

11   BAYARD, P.A.

12         Attorney for Elliott

13

14   BY:  SCOTT COUSINS, ESQ.

15

16   NORTON ROSE FULBRIGHT US LLP

17         Attorneys for NextEra

18

19   BY:  HOWARD SEIFE, ESQ.

20        ERIC DAUCHER, ESQ.

21

22   BIELLI & KLAUDER, LLC

23         Attorney for EFH Corp.

24

25   BY:  NELLA BLOOM, ESQ.

1

2    POTTER ANDERSON

3         Attorney for EFIH DIP Agent

4

5    BY:  R. STEPHEN MCNEILL, ESQ.

6    AKIN GUMP

7         Attorney for UMB Bank Indenture Trustee

8

9    BY:  ABID QURESHI, ESQ.

10

11   KLEHR HARRISON HARVEY BRANZBURG LLP

12         Attorneys for UMB Bank Indenture Trustee

13

14   BY:  SEAN BREMECKE, ESQ.

15         RAYMOND LEMISCH, ESQ.

16

17   CROSS AND SIMON LLC

18         Attorney for EFH

19

20   BY:  CHRISTOPHER SIMON, ESQ.

21

22   STEVENS & LEE P.C.

23         Attorney for EFIH

24

25   BY:  JOSEPH H. HUSTON, JR., ESQ.

1   WINSTON & STRAWN

2        Attorneys for NextEra

3

4   BY:  DAN WEBB, ESQ.

5        TOM BUCHANAN, ESQ.

6        JOHN HARDING, ESQ.

7

8   VENABLE

9        Attorney for PIMCO

10

11  BY:  J. SABIN, ESQ.

12

13  ALSO PRESENT:

14  BY:  DANIEL K. HOGAN, ESQ.

15

16

17

18

19

20

21

22

23

24  Transcribed by:  Dawn South, Jamie Gallagher, and Tracey

25  Williams

1              P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Please be seated.  Good morning.

4              MR. KIESELSTEIN:  Good morning, Your Honor.  Mark

5       Kieselstein, Kirkland & Ellis LLP, on behalf of the debtors.

6       With me are my colleagues, Mark McKane and Aparna

7       Yenamandra.

8              Your Honor, we have three items on the agenda this

9       morning.  Elliott's motion for reconsideration, Elliott's

10      motion for standing with respect to the NextEra adversary,

11      and the asbestos creditors, a motion to intervene, and we

12      propose to handle them in that order if that's all right

13      with Your Honor.

14             THE COURT:  That's fine with me.

15             MR. KIESELSTEIN:  In that case I'll cede the

16      podium to Mr. Galardi.

17             THE COURT:  All right.  Thank you,

18      Mr. Kieselstein.

19             Mr. Galardi, good morning.

20             MR. GALARDI:  Good morning, Your Honor.  Gregg

21      Galardi on behalf of Elliott with the law firm of Ropes &

22      Gray.

23             Your Honor, first I'll wish Your Honor a happy

24      anniversary.  On September 19th a year ago Your Honor

25      approved the termination fee that's subject to today's order

1    I believe.  So happy anniversary.  I was not here to share

2    it.

3            THE COURT:  You're not starting with your

4    strongest --

5        (Laughter)

6            MR. GALARDI:  That's okay, Your Honor, I have to

7    recognize the fact.

8            THE COURT:  Yes, absolutely.

9            MR. GALARDI:  But, Your Honor -- and I know the

10   parties have briefed and I see this more in the form of an

11   oral argument with respect to attempting to have Your Honor

12   reconsider that order, which was entered a year ago today.

13           Your Honor, I think Your Honor has to decide three

14   issues today.  Two are what I'll call the fundamental issues

15   and then one is what I'll call a sub issue of the second

16   issue.

17           The first issue that I think Your Honor has to

18   decide is whether the termination fee order is interlocutory

19   or final.

20           The second issue is once Your Honor decides that

21   issue is whether the termination fee order should be

22   modified because it rests on -- and you get different

23   versions of this depending on 59(3), 60 inherent -- but

24   really I think it comes down whether it rested on manifest

25   errors of law or fact or whether you need to modify that

1    order to prevent manifest injustice or to make it consistent

2    with or consonant with justice.

3            And, Your Honor, I think one of the cases, and I

4    cannot pronounce the Greek name, but it's In re: Athenisous

5    (ph), 418 Fed. Appx. 91, 2011, which is a Third Circuit

6    decision.  It's very instructive with respect to this

7    Court's both power and need to enter or revise orders.

8            Your Honor, starting with the first issue, whether

9    the Court's approval of the NextEra $275 million break-up

10   fee is an interlocutory order.  Not surprisingly we have two

11   different positions.

12           First the debtors and NextEra contend that the

13   order is under the flexible or pragmatic approach to

14   finality of bankruptcy orders accepted by the Third Circuit

15   in 28 U.S.C. 158, it is a final order.

16           It's not clear to me exactly however whether they

17   agree about when that order became final, if it's final at

18   all.  The debtors seem to suggest the termination fee became

19   final this year when the asbestos objection became moot.

20   They have argued that there was an appeal of that order, as

21   Your Honor knows we also noted that the asbestos objectors

22   contested that, but ultimately that became moot or null and

23   void because the NextEra plan was withdrawn, but that was

24   not withdrawn until July of this year.

25           NextEra seems to ignore the asbestos objectors and

1    challenges Elliott on the grounds of laches or reliance

2    saying it was final -- suggesting it may have been ten

3    months ago that it was final and that we delayed filing the

4    motion for reconsideration to timely pursue the challenge of

5    the termination fee and saying that the termination fee

6    order left nothing more to do.

7              Elliott on the other hand says the termination fee

8    is interlocutory, not a final order, and reliance on the

9    Supreme Court's decision most recently 2015 in Bullard (ph),

10   as well as the Third Circuit's decision in Reliant Energy

11   and certain -- and the District of Delaware, I think it's

12   Judge Farnan's opinion in Reliant Energy with respect to

13   break-up fees being interlocutory in nature.

14             So that's the position on the first issue.

15             The second issue, whether the order approving the

16   NextEra termination fee should be modified because it rests

17   on manifest errors of law or fact which would prevent

18   injustice.

19             Again, the debtors and NextEra contend the

20   termination fee was entered September 19th, 2016, that the

21   Court fully understand (sic) the termination fee provisions

22   of the merger agreement, and properly applied O'Brien, a

23   503(b)(3) standard, and properly found that that termination

24   fee was a necessary expense that provided an actual benefit.

25             Elliott contends otherwise -- and, Your Honor, I'm

1   not going to get into the language that's gone back and

2   forth before counsel regarding misstatements or omissions --

3   what I think we will say is that Elliott contends that the

4   record was at least confused and that with a full and proper

5   understanding of the termination fee provisions the Court

6   could not properly find that the $275 million termination

7   fee was a necessary expense that provided the estate with an

8   actual benefit in the facts and circumstances that

9   transpired.  Those facts and circumstances could have been

10  known and could have been set forth on the record at the

11  September 19th hearing.

12          So I want to turn first to the first issue.

13  First, the debtors acknowledge on the interlocutory issue in

14  the asbestos appeal and relied on Reliant that termination

15  fees are often determined to be interlocutory in nature, and

16  despite the citation to Fruit of the Loom the Reliant per

17  Judge Farnan, District Court, found that the Fruit of the

18  Loom case did not require otherwise.

19          So, Your Honor, the approach to the orders

20  approving the termination fee and break-up fees is

21  consistent with the Supreme Court's decision in Bullard.  I

22  think the Court said there it ain't over 'til it's over.

23          And in response the debtors contend the

24  termination fee is final under the Third Circuit's ruling in

25  Taylor because the termination fee order fully and finally

1    resolved a discreet set of issues.  Again, that is an

2    appropriate way to frame a final issue, but that's not the

3    facts here.

4              NextEra adds to that that the final order because

5    the fee may be paid "without any further proceedings before

6    or order of the Court."  The Court should simply not be

7    persuaded by that on the finality of the order.

8              First, leaving aside the debtors' change in the

9    position from the asbestos appeal application of Taylor here

10   would result in exactly the piecemeal litigation that

11   Bullard cited and again other courts have cited that you're

12   supposed to avoid when determining when an order is final or

13   not.

14             Specifically the order retained jurisdiction,

15   determined the allocation of the termination fee, I

16   understand the debtors' argument now that that was a plan

17   issue as opposed to a termination fee issue, but that issue

18   still was outstanding.

19             Second, the Court retained jurisdiction to

20   interpret the termination fee.

21             Both of those things could suggest that the order

22   is not final.

23             But the most important fact and the fact that Your

24   Honor is now going to spend six to eight months litigating,

25   is the paragraph 4 of the termination fee order, the

1    termination fee said there was a possibility of further

2    proceedings, because the termination fee is only paperable

3    to the extent it becomes due and payable pursuant to the

4    terms and conditions of the merger agreement.  That is what

5    paragraph 4 said.

6             NextEra's entitlement to the payment of the

7    termination fee is exactly the subject of piecemeal

8    litigation at this stage.  Your Honor is all too familiar

9    the contested matter NextEra commenced allowance on the

10   termination fee.  The adversary proceeding commenced by the

11   debtors seeking a declaration that the termination fee

12   should not be allowed.

13            So NextEra's termination fee is not simply due and

14   payable and there are litigations.  For that reason alone

15   the order should not be determined to be final.

16            And as we set forth in our opening brief and also

17   in the reply the other factors regarding legal issues all

18   stem to reason and justify this Court finding that the

19   termination fee is not a final order.

20            To the extent it resolved a discreet issue it was

21   simply a preliminary issue as to whether O'Brien should be

22   applied.

23            So I'll turn to the second issue now.

24            Does the termination fee rest on manifest errors

25   of law and fact?  It doesn't need to be modified to avoid

1     injustice.  Again, the debtors and NextEra say no.  However,

2     the first issue -- and I'm going to say the sub issue that

3     Your Honor has to rule on in our view to set the record

4     straight -- is what is the record that the Court is supposed

5     to use to determine whether or not the September 19th order

6     was appropriate?

7                    Your Honor, Elliott contends that the facts and

8     the law and the circumstances had to be fixed as of

9     September 19th.

10                    There is much back and forth about the open

11    meeting that subsequently transpired, the letter to the

12    Court on September 25th, and the hearing on September 26th,

13    and Your Honor's remarks.

14                    With respect to the hearing on September 19th,

15    Your Honor, the debtors concede that the debtors

16    inadvertently overstated the circumstance in which the

17    termination fee would not be payable.  They contend however

18    that because those statements were made in good faith and

19    ultimately non-prejudicial given other statements made at

20    the 19th hearing and the submission of the September 25th

21    letter the termination fee order does not rest on manifest

22    issues -- manifest errors of law and fact.

23                    NextEra on the other hand maintains that the

24    September 19th hearing was adequate and simply characterizes

25    the September 25th letter as merely an attempt to avoid

1    confusion created by post approval by Commissioner

2    Anderson's incorrect characterization of the terms of the

3    termination fee would be payable.

4            Let's start with NextEra's position.

5            NextEra concedes in the title of that section that

6    it was a letter to clarify the position, but that's not

7    enough.  Why clarify the commissioner's confusion to this

8    Court when the statement was made in open meetings of the

9    PUCT by the PUCT commissioner unless NextEra believed that

10   the order was not clear on its face and that there was some

11   deficiency in the record?

12           So, Your Honor, we think that you cannot rely on

13   the September 25th, the open meeting, or the September 26

14   hearing to determine whether there was in fact a

15   misstatement or an error or law.  And we contend therefore

16   that the record had to be complete as of the 19th.

17           So let's take the record on the 19th.  Were there

18   manifest errors of law and fact?

19           Your Honor, what is critical here is none of us

20   knows what was in your mind, and that really is the

21   fundamental issue.  I don't even know if you recall.  I know

22   I couldn't recall a year ago today what would have been in

23   my mind, but Your Honor, it's really what Your Honor

24   understood at the time that you approved that hearing --

25   that order on September 19th.  Did the Court -- and I'll

1    just ask the Court questions in that to make decisions.

2            Did the Court understand that there was no outside

3    date by which the NextEra transaction had to be approved by

4    the PUCT where the debtors would have to and be relieved --

5    the debtors be relieved of the obligation?  There is no

6    outside date.  They could have appealed this for years or a

7    year or two years.

8            And did Your Honor understand that if they did not

9    receive the PUCT approval the debtors would clip along at

10   $50 million and have to either terminate and risk the 275-

11   or continue to pay those expense?

12           Did the Court understand that the concept of an

13   alternative transaction or an alternative proposal was not

14   what we in the bankruptcy court often think of an

15   alternative higher or better proposal, but the concept was

16   simply any transaction in which the equity interest changed?

17           So, for example, it was a fee payable in a Chapter

18   7 liquidation which is exactly the contrary of the events in

19   which the Court understood to approve the NextEra agreement

20   because that was part of the NextEra plan and the plan would

21   have to be confirmed.

22           The Court -- we say, Your Honor, if those facts

23   and the others, which we don't need to debate, Your Honor

24   has gone through the record I am sure with respect to the

25   declarations and all of the statements -- Your Honor, we

1    believe the Court could not approve if it understood that

2    happenstance, the expense as an actual and necessary

3    expense.

4            Your Honor, I think you recall when O'Brien came

5    down the issue was how do you on a record determine an

6    actual and necessary expense in advance of seeing how a

7    transaction is going to have an affect on bidding and an

8    auction?

9            Your Honor will probably recall when you practice

10   and probably before Your Honor that the taboos are do not

11   have a due diligence out, do not have a financing out, and I

12   recall Judge Walsh saying don't go to the auction, you will

13   not earn the break-up fee unless those conditions are either

14   waived or satisfied before the auction.

15           Your Honor, we have now expanded beyond O'Brien

16   for conditionality.  This deal was exceptionally conditional

17   and put Your Honor in a difficult position to determine

18   whether it would have been an actual and necessary expense

19   if Your Honor approved the termination fee but certain

20   conditions never got satisfied.

21           There is no dispute, the debtors have never

22   received any consideration from the NextEra transaction.

23   The debtors -- the NextEra transaction did not induce any

24   other bid, and maybe Your Honor can say well it was

25   necessary to induce the NextEra bid.  But when it's

1    necessary to induce the NextEra bid it is important to set a

2    floor.  This did not set a floor with any firm foundation.

3    The fact of the matter is the conditions, the one that

4    actually happened, made it so that they could not close.

5           So, Your Honor, we also have expanded in Delaware

6    and elsewhere to say, okay, some conditionality is allowed.

7    HSR is the one that comes to mind.  But in that circumstance

8    you can get HSR approval before closing.

9           These were expansions of conditionality well

10   beyond what I think O'Brien anticipated for any court to

11   determine whether or not there was an actual or necessary

12   expense.

13          So, Your Honor, again, I cannot say what's in your

14   mind, but had Your Honor played out those events, had Your

15   Honor -- and maybe you did -- understood there was no

16   termination event, had Your Honor understood that if the

17   PUCT did not approve what seemed like a reasonable

18   assumption that NextEra would terminate, no it would not

19   because it would lose a $275 million break-up fee.  Had Your

20   Honor understood that there was an 85 or so amount break-up

21   fee payable by NextEra.  And whether Your Honor understood

22   the clip would Your Honor have approved and could Your Honor

23   have approved the NextEra termination fee under O'Brien?

24          We submit Your Honor could not as a matter of law

25   have approved that fee.

1    And so, Your Honor, again, only you know, we

2    submit that Your Honor knows the law so it could not be the

3    case that you fully understood the implications and the

4    strategy that NextEra could have employed with this

5    transaction.

6    Indeed Your Honor what should have been the case

7    and what Your Honor sees many times is this is an expense

8    reimbursement situation.  It is exactly something that

9    NextEra and the debtors did not include in the document.

10   You get paid for your effort to try to get those conditions,

11   you do not get paid a $275 million break-up fee.

12   So, Your Honor, we would submit that Your Honor

13   should reconsider the order and modify the termination fee

14   order.

15   Don't know if Your Honor has any questions for me.

16   THE COURT:  I don't, Mr. Galardi.  Thank you.

17   MR. GALARDI:  Thank you.  Mr. Kieselstein.

18   MR. KIESELSTEIN:  Good morning, again, Your Honor.

19   Mark Kieselstein on behalf of the debtors.

20   Your Honor, the motion to reconsider reflects a

21   profound confusion of ends with means.

22   Your Honor, the debtor shares an objective with

23   Elliott, we also believe that NextEra is not entitled to a

24   $275 million break-up fee against EEFH and EFIH estates.  We

25   have filed an adversary proceeding to that effect and that

1    will have its day in court, today is not that day.

2            But unlike Elliott, Your Honor, the debtor is

3    unwilling to pursue our shared objective by any means

4    necessary, as they used to say back in the 60s'.

5            How does that translate, Your Honor?

6            Well first, Your Honor, it means we are unwilling

7    to assert that this Court was bamboozled into thinking that

8    the break-up fee was payable only for an alternative

9    transaction that yielded a higher and better result.  The

10   record is clear on that point, the merger agreement and the

11   definition of alternative transaction are both clear on that

12   point, and there are circumstances beyond the failure of

13   regulatory approval where it was manifestly clear that you

14   might have no closed transaction, no higher and better

15   offer, and still have a break-up fee entitlement.  That's

16   the fact, and we're not willing to say otherwise.

17           The second way in which our unwillingness to

18   pursue this by any means necessary manifests itself is to do

19   what Mr. Galardi just engaged in, which is to pull Your

20   Honor off the bench, put you on the examining couch, and

21   plum your innermost thoughts as to what was in your mind at

22   the time you made the decision.  What did Judge Sontchi know

23   and when did he know it?

24           THE COURT:  Not much and never.

25       (Laughter)

1          MR. KIESELSTEIN:  Your Honor, we think the

2    transcript of the hearing, we think the order that Your

3    Honor entered, we think the September 25th clarifying

4    letter, to the extent it was necessary for clarification

5    purposes, all add up to a very sound and logical conclusion

6    by Your Honor supported by the overwhelming amount of E-Side

7    creditors, that this was a calculated risk worth taking,

8    that with the enhanced recoveries, full payout for EFIH,

9    substantial recoveries at the EFH box, that this was a

10   transaction worth entering into even with the unusual

11   features that Mr. Galardi now says are per se not allowed

12   under Third Circuit law.  We think everyone went into this

13   with their eyes wide open.  So we're not going to conduct a

14   Freudian analysis of Your Honor's thought process.

15          Your Honor, the third way in which we are

16   unwilling to pursue our shared objective is to suggest that

17   orders of this Court are a femoral, they're evanescent, the

18   benefits could be here today and gone tomorrow depending on

19   how things pan out.  We think that's a bad practice in

20   general, we think it's a bad practice in this case.

21          We hope the third time is the charm down in

22   Austin, we pray to the southeast five times a day that it is

23   the outcome in Austin, but the circumstances may still

24   transpire where we are back in front of Your Honor with yet

25   another stalking horse, someone that we may need to tell

1    that they can rely on the integrity of this Court's order,

2    notwithstanding subsequent developments, especially

3    subsequent developments that are foreseen and accounted for

4    in the approval order itself.  We just don't think that's

5    the way to go about our business in this court or any other.

6            Your Honor, with respect to the record in this

7    case, we think it's very clear.  We think it's entirely

8    clear.

9            We had testimony from Mr. Hiltz (ph), which we

10   cited in our papers on several occasions talking about the

11   circumstances under which the break-up fee was payable or

12   not payable.

13           We have the definition of alternative transaction

14   in the merger agreement, which is far ranging and makes it

15   clear that under all but an enumerated set of circumstances

16   the break-up fee will be earned even in the absence of a

17   higher and better deal.

18           Now that, you know, may not be something that

19   people agreed on at the time, but again, people withdrew

20   their objections.

21           I would note that Elliott in its papers notes that

22   it was not a significant creditor at the time last year of

23   this hearing, by which I take it they were a creditor, they

24   had notice, they had a chance to review the merger

25   agreement, that they thought there was either ambiguity

1    about the circumstances under which the break-up fee was

2    payable or that the terms of the merger agreement crossed

3    some O'Brien red line such that it could not be permitted.

4    They could have raised it at the time.  Neither they nor any

5    other economic stakeholder did.

6         Now, if we all engaged in a thought experiment and

7    said on September 19th before you rendered your ruling we

8    were going to pile into Doc Brown's DeLorean and take a trip

9    back to the future to Austin, Texas in February of 2017 and

10   hover over the PUCT hearing room as a decree that they did

11   not believe the NextEra transaction was in the public

12   interest, we'd have all used 1.33 million gigahertz and

13   gotten our way back to Wilmington, and we would have said

14   let's not go forward on this transaction.

15        But the state of the record and the information at

16   the time was that this was a risk, one that most of the

17   regulatory professionals on all sides thought was going to

18   pan out.  People at the time in good faith thought that this

19   transaction was more likely than not to get approved.  We

20   were all wrong, Your Honor.

21        The fact that we were all wrong does not mean that

22   it is a basis to revisit this Court's well-considered order

23   about the risks and benefits of approving a merger

24   agreement, which Your Honor did.

25        And so, Your Honor, I struggle notwithstanding the

1    fact that we're uncomfortable with these means, sure we

2    would love it if the NextEra fee got knocked out, we intend

3    to try to knock it out, but not this way, it's not the

4    appropriate way to go about it, being this objective.

5          And I would note that when I first read the motion

6    my reaction was my God, how mocky of Elliott this is, but

7    then I thought about it for a while and I realized that was

8    harsh and unfair to Mockey Aveley (ph), who said --

9       (Laughter)

10         MR. KIESELSTEIN:  -- who said in the prince in the

11   action of all men and especially of princes where there is

12   no court to appeal to one looks to the end.  So let the

13   prince win and maintain his state, the means will always be

14   judged honorable and will be praised by everyone.

15         Well we're not in the legislative forum, we're not

16   in a back room making a deal, we're in a court of law, and

17   the means don't always justify the ends.  In this case, Your

18   Honor, they don't.

19         So we would ask that the motion for

20   reconsideration be denied.

21         THE COURT:  Thank you.  Thank you,

22   Mr. Kieselstein.

23         Mr. Sea or whoever.

24         MR. WEBB:  Your Honor --

25         THE COURT:  It's the cast of thousands over there.

1          MR. WEBB:  -- excuse me, my name is Dan Webb and I

2    represent NextEra and very nice to meet Your Honor.  This is

3    my first time here in this proceeding.

4          THE COURT:  Welcome, Mr. Webb.

5          MR. WEBB:  Your Honor, I'm not going to repeat

6    what the debtors' lawyer I think has set forth very

7    effectively exactly why this motion to reconsider should be

8    denied, I simply want to just without repeating his

9    arguments emphasize a few points and make a couple of

10   arguments on my own which I think are unique to my client,

11   NextEra.

12          As far as -- but the basis arguments that are

13   being made here if you cut through -- as I look at this

14   motion to reconsider the bottom line is whether Elliott's

15   motion to reconsider should be granted is based on the

16   validity or invalidity of Elliott's allegation that this

17   Court did not understand the structure of the termination

18   fee at the time the Court approved the termination fee on

19   September 19th, 2016.

20          So to me that is the whole ballgame, because it's

21   that allegation that they say because you didn't understand

22   it you could not have approved this under O'Brien.

23          When I sat down as a non-bankruptcy lawyer

24   representing my client and I looked at the hearing that was

25   conducted on September 19th and I look at this allegation

1    that you as the Court did not understand the structure and

2    nature of the termination fee and I look at the proceedings

3    that occurred that day, the truth is when you look at what

4    actually happened you had an extraordinary and keen

5    understanding and knowledge about the termination fee

6    provisions and you knew exactly what it said concerning this

7    issue that whether or not if the PUCT did not approve and

8    there was an alternative transaction consummated even if it

9    wasn't at a higher price that the termination fee would

10   still be paid.  That's clear when you read the record.

11         And the most compelling thing I saw -- excuse me

12   -- in reading that record, Your Honor, is that when the

13   debtors' representative, Mr. Hiltz, was put on the witness

14   stand as an expert who knows this transaction and is going

15   to explain it to Your Honor, and he actually by -- everyone

16   agrees he made a mistake.  During the course of his

17   testimony he incorrectly testified that the termination fee

18   would be payable to NextEra following the PUCT denial

19   regardless of which party to the merger agreement terminated

20   the merger agreement after that denial.  That was a mistake

21   by Mr. Hiltz.

22         But after that mistake and testimony took place,

23   after it took place, Your Honor, you then directed Hiltz to

24   the relevant provisions of the merger agreement and you

25   questioned Mr. Hiltz in a very appropriate way to point out

1   that he had made a mistake, he had made a misstatement.  And

2   you actually called his attention to certain pages and

3   section numbers that showed Mr. Hiltz that he made a

4   misstatement and he then acknowledged that he made a

5   misstatement.

6          And so that obviously showed just how intimately

7   familiar with the structure and operation of the termination

8   fee that you were and that you understood the totality.  And

9   this fundamental argument that's being made that the record

10  actually reflects that you did not understand the

11  transaction and therefore under O'Brien approved a

12  termination fee that at the time did not satisfy O'Brien is

13  totally, totally incorrect and is contradicted by the clear

14  face of what happened by Your Honor in your questioning of

15  witnesses on that date.  So that's point one.

16         Point two.  On this issue of -- when I read

17  Elliott's brief over they're clearly saying, look, when a

18  termination fee gets approved under O'Brien and you said in

19  your order this is -- that this resolves this issue and a

20  bidder like my client is going to go forward and expend what

21  turned out here to be about $300 million in order to

22  ultimately not get accomplished what we wanted, but when a

23  bidder buying an asset at a bankruptcy is going to run that

24  kind of financial risk there could be no question that we're

25  going to have to judge your order on the decision made on

1    the 19th of September.

2            This hindsight going forward for ten months and

3    then saying well now that we've looked at what happened for

4    ten months we're now going to go back and we're going to

5    say, you know what, we're going to reconsider that order and

6    we're going to void that order and void this termination

7    fee.

8            Respectfully, Your Honor, in the real world, in

9    the practical world when bidders think that they could not

10   rely upon a determination that had approved a termination

11   fee and they're going to go forward in reliance and spend

12   that amount of money, then you're going have fewer bidders

13   willing to come forward and to participate in a process that

14   I believe everybody in bankruptcy court feels is critical to

15   the successful operation of handling this phase.

16           So this idea of using some hindsight test that

17   we're going to look ten months in the future and then decide

18   whether O'Brien is satisfied I respectfully suggest is not

19   supported by any law whatsoever.

20           Now, I will say we pointed out to Your Honor that

21   after the hearing on the 19th there was a letter filed on

22   the 25th, and my position is I'm not arguing that that was

23   part of what happened on the 19th.  My argument is that if

24   when that was filed on the 25th if Your Honor when you read

25   that letter thought you saw something in that letter that

1    was different than your understanding seven days earlier on

2    the 19th of September obviously Your Honor would have had

3    the ability to make a change if you wanted to and that did

4    not happen, which is why the September 25th letter I believe

5    is important and in the record.

6         My third point.  On this issue of untimeliness and

7    the right of Elliott just to sit back on its hands for ten

8    months and do nothing and then come before the Court and

9    say, Your Honor, we want to file a motion to reconsider now.

10        We cite the case law in our brief that the

11   standard is for them to file a motion to reconsider they've

12   got the burden of proof of coming before Your Honor today in

13   this hearing and establishing it that the reasonable time

14   standard has to be satisfied.  They had to file this motion

15   to reconsider within a reasonable time.  And when you

16   looking at the Third Circuit cases three months in one case,

17   five and a half months in another case was found to be

18   unreasonable.  I couldn't find any case that suggested ten

19   months is reasonable, so I'm looking at Elliott to come

20   forward and explain maybe in this hearing, if they didn't do

21   it in their brief, what is it that caused them to wait ten

22   months before they filed this brief?  What is the "plausible

23   explanation" that would satisfy Your Honor that they

24   satisfied the reasonable time standard?

25        And when you think about it when (indiscernible)

1    Elliott's brief that the entire grounds for reconsideration

2    is this basic allegation that the Court had a

3    misunderstanding of the operation of the termination fee at

4    the time of the hearing.  So if -- that's the basis for the

5    motion to reconsider.

6              So when did they know that basis?  When did they

7    know or believe that you had a misunderstanding of the

8    operation of the termination fee?

9              And what's interesting is that Elliott does not

10   contend that it or its predecessors in interest did not

11   understand the termination fee at the time on September 19th

12   when you approved it.  They're not saying they didn't

13   understand it or their predecessors in interest didn't

14   understand it, they're saying the Court did not understand

15   it.

16             So if that's the grounds that when you entered

17   that ruling on the 19th of September and sat -- and made

18   your ruling, approved the termination fee and satisfied

19   yourself in your ruling under the O'Brien standard, they

20   knew right there standing in court that you must have made a

21   serious mistake.  And so why wouldn't they file the motion

22   to reconsider 2 days later, 7 days later, 30 days later?

23   Why would they wait ten months and then come into court?

24             And the answer is they told you nothing other than

25   they want to use hindsight, because now they don't want the

1    termination fee paid.

2          But we have to judge this based on they knew on

3    that date or their predecessors in interest did and I guess

4    they knew because it's my understanding Elliott was a

5    creditor at this time, albeit according to them small, but

6    -- by the way no one objected -- I mean there were some

7    objections, everybody withdrew their objections, no one came

8    in wanting a motion to reconsider, no one tried to appeal,

9    and then everyone sits on it for ten months.  That does not

10   satisfy the law of when you can file a motion to reconsider.

11         Now, let me turn quickly to two kind of

12   independent points, Your Honor, I'd like to make that

13   basically relate to my client and kind of some unique facts

14   I just want to point out that I guess are more relevant to

15   NextEra.

16         First, Your Honor, I want to make sure it's clear

17   that from the record it was clearly -- there's an enormous

18   amount of evidence that is presented that this termination

19   fee, if it had not been agreed to, NextEra would not have

20   pursued the acquisition without the guarantee of the

21   termination fee.  And in arguing for this reconsideration I

22   think Elliott is just completely knowing what actually

23   happened on September 19th and the history in this

24   bankruptcy proceeding, because on the 19th Mr. Horton

25   testified --

1            THE COURT:  Wait a minute.  So you're saying if I

2     had properly understood the terms of the termination fee and

3     said that I was not going to approve the transaction as

4     contemplated and then you're going to say well no, then I

5     won't approve it that really gets you nowhere, because I'm

6     happy to play that game of chicken when anybody comes into

7     this court and adds relief that's not appropriate, and there

8     were other bidders.  They didn't have to go with you, there

9     was another bidder.

10            MR. WEBB:  Yes.

11            THE COURT:  So I don't see how that argument gets

12     you anywhere.

13            MR. WEBB:  The argument that you understood the

14     termination agreement?

15            THE COURT:  The argument that you would walk if I

16     hadn't approved the termination fee.  Don't care.

17            MR. WEBB:  Okay.  I accept that.  I was just going

18     to point at least Mr. Horton testified that it was

19     necessary.

20            THE COURT:  I understand.

21            MR. WEBB:  Okay.  That's all --

22            THE COURT:  But the point is if I had taken

23     Mr. Galardi's argument, if I had understood the parameters

24     of the termination fee and had decided that I thought the

25     parameters were inappropriate --

```
 1            MR. WEBB:  Yes.

 2            THE COURT:  -- and I had said no it certainly

 3    would have been your ability, your client's ability to

 4    either agree or not agree, buy or not buy.

 5            But my point is I don't see where this argument

 6    gets you, because I'm happy to have that conversation any

 7    time somebody comes into my court and asking for relief that

 8    I think is inappropriate.  So I'm just -- I'm not sure where

 9    that gets you.

10            MR. WEBB:  Well here's my only point and I'm

11    leaving it behind, okay?

12            THE COURT:  Okay.

13            MR. WEBB:  My only point is that under the O'Brien

14    case as far as when you're weighing the benefit to the

15    estate --

16            THE COURT:  Right.

17            MR. WEBB:  -- of a termination fee O'Brien on its

18    face and other cases after it talk about that if a

19    termination fee is an inducement to bring forth a strong bid

20    and that the termination fee is then agreed to that it is a

21    benefit to the estate to have a bidder that is willing to go

22    forward with the termination fee so that if the termination

23    fee itself induces a bidder to go forward and pursue a bid

24    with the risks that are involved in that, that that in and

25    of itself is a benefit to the estate, which Your Honor
```

1    acknowledged that day on September 19th as being a benefit

2    to the estate.  And so that's my only point.

3              THE COURT:  Okay.

4              MR. WEBB:  And I'll leave it behind.

5              But there was significant evidence presented that

6    there was -- it was an inducement to get NextEra to go

7    forward.

8              And Your Honor, the --

9              THE COURT:  Well there can be -- look, there can

10   be no question that NextEra relied on the Court's order in

11   going forward.

12             MR. WEBB:  And let me --

13             THE COURT:  And I certainly understand the point

14   that they may not have been willing to go forward if it

15   didn't -- if it contained different conditions.

16             But the point I think for today isn't that you

17   relied on that order, it isn't that you spend $300 million

18   in pursuing the appeal -- or pursuing the transaction, I

19   completely -- I'll take that at face value.  I understand

20   all that.  The question is in making the decision that

21   you've relied on did the Court make a mistake?

22             MR. WEBB:  And I --

23             THE COURT:  Which would chance the decision

24   arguably, provided that it meets the high burden of

25   reconsideration after a year's delay.

1          MR. WEBB:  I completely agree with that.  The only

2     reason I was even going to talk about the reliance and our

3     $300 million was only because in Elliott's brief they

4     contend that we're going to get a windfall if we end up with

5     this $275 million termination fee.  And when you look at the

6     extraordinary efforts that we actually went to to get the

7     PUCT to approve this transaction, I mean, the number of

8     consultants and lawyers we hired, what we went through and

9     file a thousand -- anyway.  We had enormous amount of effort

10    to get that done and then -- and we had to go out and get --

11    the PUCT was not going to approve this unless we could prove

12    that we had the financing in place.

13         So we had to go out and get the financing in

14    place, which ended up by the way, because then -- we didn't

15    get PUCT approval because they came along and -- they being

16    the debtors, terminated the merger agreement because they

17    found an alternative transaction.

18         That in and of itself, just trying to unwind those

19    bank commitments, cost a huge sum of money to my client.

20    And then we then filed an appeal.  We weren't going to give

21    up.  We thought we could still get PUCT approval and we

22    started two different tracks.

23         We appealed into the Court system to get the

24    administrative decision overturned.  We were still using

25    consultants and we were talking continually to interveners

1    and trying to get -- a way to get a second bite at the

2    apple, to come back and get PUCT approval.  And it was right

3    to the top of the company, to Mr. Robo at the top of the

4    company, we were doing everything humanly possible, spending

5    huge sums of money, and then the debtor terminated the

6    merger agreement right in the middle of where we were

7    hoping, anyway, we were making progress on those fronts to

8    get the PUCT to reconsider.  And then they terminated.

9            And so the idea that we're getting a huge windfall

10   here, I just wanted to make sure we pointed out to the Court

11   that I don't think that's the case.  We had a great deal of

12   reliance and thank you very much for listening to me, Your

13   Honor.

14           THE COURT:  Of course.  Mr. Galardi, could you --

15   in your reply, could you please address the timing of your

16   motion?

17           MR. GALARDI:  Sure.  Your Honor, before I address

18   that, and I'll put it on the timing of the motion, let's

19   just take all of the podium testimony we just heard, about

20   $300 million, right?  The critical fact is this was on

21   stipulated papers.

22           Your Honor, and again I don't want to be called

23   Machiavellian, but if Your Honor relies on anything the

24   gentleman said, about $300 million on the efforts, that

25   would be inappropriate with respect to this matter.  In

1    fact, their own pleading says tens of millions.  And now we

2    learn it's hundreds of millions of dollars.  So I'd ask to

3    just not consider any of those statements.  That would go

4    more to a substantial contribution claim or other type of

5    claim, which I'm going to come back to in a second.  And I'm

6    going to address the timing at the last issue because I have

7    my list of issues and I'm going to try to go in my order,

8    Your Honor, first.

9           I guess Mr. Kieselstein, benefits here today and

10   gone tomorrow.  Subsequent developments.  The fact of the

11   matter, Your Honor, is we are saying there was no actual

12   benefit that Your Honor could find -- make a proper finding

13   on September 19th that in the events that transpired, which

14   were predictable, you could conclude under O'Brien and under

15   503(b) that there was an actual benefit.  Period.  End of

16   story.  That finding could not be made.  There was no

17   consideration in that finding.

18          Now, they then respond, well, that's a risk and

19   everybody did the risk wide open.  Your Honor, that's not

20   O'Brien.  That's business judgment, which O'Brien rejected.

21   The people here thought it was a wise risk to make and their

22   judgment goes to a different standard.  The standard is

23   whether there was an actual and necessary expense and that

24   that was an actual benefit.

25          Your Honor, you can induce me.  I could have bid

1   on these assets.  I'll bid $30 billion.  If I have

2   conditions I can't satisfy, it doesn't mean anything.  The

3   question is whether my bid set a floor.  And if these

4   conditions cannot be satisfied and there is no actual

5   benefit, it doesn't matter whether it induced the gentlemen

6   to bid.  It doesn't matter that they spent all of this

7   money.  The fact of the matter is sophisticated counsel

8   should have done two things: one, make sure there was an

9   actual benefit; and two, if the conditions are not

10  satisfied, put in an expense reimbursement.  They didn't do

11  it.  And that's a different standard.

12          Now, I do agree with NextEra, I don't agree with

13  Mr. Kieselstein.  The fundamental point is the point I

14  raised before.  What was Your Honor -- I'm not trying to do

15  a Freudian analysis of Your Honor and where we are, or take

16  you off the bench and put you on the couch.  All very clever

17  statements.  The fact of the matter is the issue is simply:

18  what did Your Honor think you were approving based on that

19  record with Mr. Hiltz's statements, with Mr. Husnick's

20  statements, with your own questions and your understanding,

21  and the questions I asked before.

22          If Your Honor determines that you understood it

23  fully.  You'd do it as you did today.  You'd do it again

24  tomorrow.  And frankly, Your Honor, I'm going to challenge

25  you.  I will bet you, you will not look at another

1    termination fee provision and not ask exactly this question

2    when it has these conditions when it has this kind of

3    conditionality, Your Honor, that cannot be approved under

4    O'Brien.

5           Now, Your Honor, I'm going to point out another

6    fact about O'Brien and we hear the word hindsight, it's bad.

7    Hindsight, it's bad.  Let's read O'Brien.  First, as I've

8    said, you had to determine on the 19th whether it was an

9    actual benefit.  So we think you could have determined that

10   had we played out these events.  And indeed, we were going

11   to play these events out with respect to the Berkshire bid

12   because it was exactly the same problem.  Although this

13   time, they got a little wiser.  They put a termination

14   event, 180 to 240 days there.  So there was a deadline.

15   There was no deadline in this deal.

16          O'Brien specifically says you have to determine

17   under the Bankruptcy Code, not under precedent, not under

18   cases, whether the fee satisfies 503(b).  It doesn't say

19   (b)(1), (b)(2), (b)(3), (b)(4), or any of the other b's.

20   It's not a business judgment standard.  And, Your Honor,

21   though I don't want to apply hindsight, the fact of the

22   matter is hindsight is not all that bad with break-up fees.

23   The question is, did it provide an actual benefit?

24          The words of the statute are actual benefit.  Not

25   speculative.  Not possible.  Actual benefit.  And taking a

1     risk is to make it speculative.  So while everyone wants to

2     criticize hindsight, we're not saying you had to apply it

3     here because the events actually could have been laid out

4     before the Court.

5               Now, let's get back to Your Honor's question, the

6     timeliness.  Your Honor, the fact of the matter is by the

7     time that Elliott reviewed this, we commenced a litigation.

8     As Your Honor is well aware, the debtors took the position

9     that the PSA precluded Elliott from taking any position

10    contrary to the NextEra deal.  We started that litigation,

11    Your Honor.  And that was the litigation that we purportedly

12    became a party of because we bought debt in March or April

13    of this year.

14              So one answer for the question of could we pursue

15    this is it would have been a litigation.  Your Honor, with

16    respect to the other aspect of this, which I think everybody

17    keeps going to ten months, the order was not final and the

18    debtors took the position, and Your Honor can read the

19    record and again make your own determination, that the order

20    was interlocutory.  So there was no need to go as fast as

21    that, Your Honor, even if we could have, which our hands

22    were tied.

23              And could they rely on that order, Your Honor.  So

24    if we had gone into that order and there was no

25    determination, right, what would the arguments have been?

1    Well, why are you pursuing this now?  We don't know.  It's

2    premature to pursue it because we don't have a ruling.  And

3    here's the debtor which we'll hear in the next matter,

4    saying we support the NextEra deal.  The NextEra deal is

5    going to be done.  The NextEra deal didn't get final PUC

6    denial until June 26th.

7              Now, it's not part of the record, Your Honor, but

8    we were in discussions with the debtors regarding this the

9    entire time.  So I don't go any further than that.  So, Your

10   Honor, we don't think there was an untimely delay.  We think

11   that the facts that transpired enabled us to make the

12   motion.  And we think, Your Honor, that because of the

13   positions taken by the debtor with respect to the appeal and

14   its being interlocutory, we didn't have to act faster.  In

15   fact, we acted as fast as we could in the sense that we

16   asked the debtors to pursue it.  They didn't as set forth in

17   our papers.  And they moved -- and we started the avalanche

18   of proceedings because as soon as we moved for

19   reconsideration, an administrative claim motion was filed

20   and then the complaint was filed.  So we think we were the

21   first to move.

22             So, Your Honor, we would ask Your Honor to

23   reconsider the order and modify the break-up fee --

24   termination fee.  Thank you.

25             MR. KIESELSTEIN:  Your Honor, Mark Kieselstein

1    again on behalf of the debtors.  Very briefly.

2            First, Your Honor, in this world of shifting

3    alliances, let me agree with Mr. Galardi and disagree with

4    Mr. Webb on something.  I think I heard Mr. Webb, all pro

5    that he is, working the referee on the issue of whether they

6    acted in a commercially reasonable fashion in pursuing

7    approval of the deal in front of the PUC.  We're at quite a

8    litany.

9            We're obviously by our silence not acquiescing or

10   agreeing that they, in fact, did any of those things, that

11   they acted commercially reasonably, so I just wanted to make

12   that clear.  That's way beyond the purview of this hearing.

13           I want to address the finality point for just a

14   minute because Mr. Galardi, and perhaps Your Honor, think it

15   matters in terms of the outcome here.  We obviously think

16   they don't satisfy Rule 59 or Rule 60, and thus, we don't

17   spend a lot of time on finality.  But to the extent it goes

18   to this issues of whether they could have raised their hand

19   and objected to or appealed the September 19th order, as we

20   said in the appeal of the asbestos creditors, an order which

21   can contain many, many provisions can be final as to certain

22   things and either interlocutory as to others or simply

23   irrelevant as to others.

24           What the asbestos creditors were objecting to, as

25   they have a want to do and as there's a right to do, was

1   their treatment under the plan of reorganization that the

2   NextEra transaction was a building block of.  But obviously,

3   that was going to be a plan issue and in our many plans, it

4   always is a plan issue.  But as to the merger approval

5   order, that appeal was, in our view, inappropriate and

6   interlocutory.  That doesn't mean that the protections that

7   were baked in on day one for our stalking horse were not

8   fully final.  They were.  And so that issue could have and

9   should have been raised at the time.

10          Mr. Webb correctly points out all of the facts

11  were clear to the sophisticated creditors.  You heard Mr.

12  Galardi say any bankruptcy attorney worth his salt would

13  have put in expense reimbursement, would have time limited

14  the period for which this could hang out there in limbo,

15  etcetera.  Obviously he appreciated it, all of the other

16  esteemed counsel who are hearing this seemed either not to

17  appreciate it or to think that it was worthwhile to pursue

18  this transaction notwithstanding.

19          And so, Your Honor, we think they could have moved

20  more quickly.  They knew everything they needed to know to

21  move more quickly.  They were a creditor at the time.  I

22  don't know what an insignificant creditor is in the Elliott

23  universe.  Probably more money than I'll see in a lifetime.

24  But my guess is they had a substantial claim and they chose

25  to wait and that has consequences, Your Honor.

1          THE COURT:  Thank you, Mr. Kieselstein.  Mr. Webb,

2     anything further?

3          MR. WEBB:  Yes, very briefly, Your Honor.  Just to

4     -- just on the finality point.  I would supplement what

5     counsel just said that as far as whether the termination fee

6     approval was final, all of the arguments have been made it

7     was.  But I would just point out that on the face of the

8     order, when the termination fee approval was approved on its

9     order, it expressly provided for allowance and payment of

10    the termination fee, and I'm quoting, "Without any further

11    proceedings before or order of the Court."

12         And so there's no question that at least I take

13    that language based on the other laws that's been cited as

14    to when an order becomes final, that while there may have

15    been other issues that might have to be addressed related to

16    a lot of issues at that point that would be ancillary, the

17    approval of the termination fee was a final order.

18         And -- but by the way, I also agree that whether

19    you're talking about Rule 59 or Rule 60, counsel has to

20    explain an unreasonable delay to the Court in filing a

21    motion to reconsider.  And counsel, just actually as he just

22    got up, did not address the fundamental point that I made

23    which is that they knew.  They're the ones that knew on

24    September 19th -- apparently knew that they understood the

25    structure of the termination fee.  Their whole position of

```
1   motion to reconsider is that you misunderstood it.  And to

2   the -- they obviously knew that on that date and they took

3   no action whatsoever.  And this motion is clearly untimely.

4           And I would also under O'Brien make one point that

5   while counsel talks about O'Brien, O'Brien on its face, Your

6   Honor -- this idea -- Your Honor, the idea that the only

7   type of termination fee that should be approved under

8   O'Brien is a fee which has -- that if, in fact, a regulatory

9   approval does not occur, that there has to be a subsequent

10  bidder that comes in higher than the person who had the

11  termination fee.  Only then could you ever find a benefit to

12  the estate that would satisfy O'Brien.

13          I -- there is no case that I have found that says

14  that.  And O'Brien, on its face, talks about the fact that

15  just having a termination fee that induces a bidder to come

16  forward and pursue a bid is a benefit to the estate under

17  O'Brien.  Thank you, Your Honor.

18          THE COURT:  All right.

19          MR. GALARDI:  May I just say two very quick --

20          THE COURT:  Last words.

21          MR. GALARDI:  Yes.  Your Honor, first, I didn't

22  say higher.  So that takes care of that point.  Second, Your

23  Honor, I would only counsel -- ask you to look at paragraph

24  4 of the order which is what's been quoted.  It's a

25  provided, however, paragraph that says the termination fee
```

1    shall be payable as provided in the merger agreement.  It

2    says that.

3            But in the very beginning, as I mentioned earlier,

4    it does say that it has to be determined to be payable

5    pursuant to the terms and conditions of the merger

6    agreement.  And as we know, the litigation is ongoing as to

7    whether or not it is payable pursuant to the terms of the

8    merger agreement.  Thank you.

9            THE COURT:  Okay.  Very good.  Thank you very

10   much.  We're going to take a short recess, say 5 or 10

11   minutes and I'm going to come out and rule.

12       (Recessed at 11:00 a.m.; reconvened at 11:14 a.m.)

13            THE CLERK:  All rise.

14            THE COURT:  Please be seated.  Okay.  I hate to be

15   read to, so I'm going to read to you.  It will be brief.

16            All right, before the Court is a timely motion for

17   reconsideration of an order entered one year ago today,

18   approving among other things a termination fee in favor of

19   NextEra in the amount of $275 million.  I am going to issue

20   an opinion and enter an order at a later date.  But given

21   the impact my ruling may have on the pending litigation over

22   the termination fee, I'm going to state my conclusion now,

23   which is subject in all respects to the opinion and order

24   that will be issued at a future date.

25            This oral, tentative ruling is by its very nature

1    brief and incomplete.  More detail and analysis will be

2    offered in the forthcoming opinion.

3           I do not take this motion lightly.  The finality

4    of judgments and orders is very important and, thus, the

5    movant has a very high burden.  But nonetheless, I'm going

6    to grant the motion for reconsideration.

7           Regardless of whether the order approving the

8    termination fee is interlocutory or final, the Court's

9    decision was based on the serious misapprehension of the

10   facts that constitutes manifest error.  At the time of the

11   approval of the termination fee, until NextEra sought

12   payment of the termination fee, I do not understand that the

13   termination fee would be payable under the present

14   circumstances.  I would not have approved the termination

15   fee if I had understood that it would be due if the PUC

16   denied the merger application and two motions for

17   reconsideration, while NextEra bided its time, pursuing a

18   fruitless appeal, thus forcing the debtors to terminate the

19   merger agreement.

20          While perhaps unartfully worded, this was the

21   issue I was concerned with when I inquired at the hearing on

22   September 19 if the termination fee would be payable if the

23   PUCT did not approve the transaction.  The responses I

24   received at the hearing were only partially responsive.  I

25   missed the critical nuance that the termination fee would

1    not be payable if the PUCT failed to approve the merger and

2    NextEra terminated the deal, but would be payable if the

3    PUCT failed to approve the merger and the debtors terminated

4    the deal.  Shame on me.

5          At the end of the day, approval of payment of the

6    termination fee under these circumstances could not satisfy

7    the O'Brien standard.  And had I properly understood the

8    issue at the time the termination fee was considered in

9    September 2016, I would have so ruled.  And to do otherwise

10   was a manifest error of fact and law.

11         The Court will find that under the extraordinary

12   circumstances here, and due to the Court's misapprehension

13   of the facts on a critical issue that if properly understood

14   would have fundamentally changed the Court's conclusion, it

15   is appropriate to reconsider the Court's order approving the

16   termination fee such that the termination fee will not be

17   payable under the present circumstances.

18         As I said, an opinion and order will follow and I

19   don't -- I stopped predicting how long it takes to draft

20   opinions a long time ago.  So that will happen when it

21   happens.  So that's my tentative ruling.  I don't know how

22   that affects the other orders or motion that are in front of

23   the Court, or the other proceedings, but I'm perfectly

24   willing to go forward with those today.  I assume that when

25   I do issue an order, it will be appealed and it may make

1    sense to continue the litigation in any event.  But we can

2    certainly proceed today, unless the parties would like a

3    recess to discuss it.

4              MR. MCKANE:  Your Honor, if we could have just

5    five minutes to confer --

6              THE COURT:  Yeah.  Take as long as you want.

7              MR. MCKANE:  -- with the creditors, thank you.

8              THE COURT:  That's fine.  We have the day.

9         (Recessed at 11:18 a.m.; reconvened at 11:37 a.m.)

10             THE CLERK:  All rise.

11             THE COURT:  Please be seated.  Mr. McKane, good

12   morning.

13             MR. MCKANE:  Good morning, Your Honor.  For the

14   record, Mark McKane of Kirkland & Ellis on behalf of the

15   debtors.

16             We had an opportunity to confer with Elliott and

17   the creditors committee, NextEra, all the parties in

18   interest for the remaining motions today.  And the

19   collective view of the parties is that if -- with your

20   Court's -- with Your Honor's indulgence, we think it makes

21   sense to proceed forward with today's motions given that

22   they're all teed up and crystallized.  That will resolve the

23   issues of who's in the case, who are the parties, who are

24   the intervenors, what's the operative complaint, and who has

25   settlement authority.

1          And then if Your Honor has time on your calendar

2    sometime in the next 7 to 10 days, if we all could have the

3    opportunity to confer with our clients about how -- what to

4    do with the case, not just the application, but the

5    adversary proceeding, we may have a -- there may be nothing

6    to resolve.  There may be a collective agreement.  But given

7    how -- if there were to be a $275 million payout and if the

8    plan were to be approved, and consummated, and potential

9    reserve issues, it's not as straightforward as it may seem.

10          THE COURT:  Yeah.  I knew it had a lot of nuances

11    and that's certainly fine.  So I'm happy to proceed along

12    those lines.

13          MR. MCKANE:  Very good.

14          THE COURT:  And yeah.  We'll figure it out.  It

15    will probably be the week of the 25th, because we lost next

16    Thursday and Friday to the Jewish holidays.  So I can make

17    time the week of the 25th for a status conference.

18          MR. MCKANE:  Thank you, Your Honor.

19          THE COURT:  Do you want to do that and should we

20    schedule that now or?

21          MR. MCKANE:  That would be great if we could just

22    get that out of the way.

23          THE COURT:  Wait a minute, I'm looking at the

24    wrong thing.  Just give me a second.

25          MR. MCKANE:  Your Honor, if you happen to have

1    time in the second half of that week, either Wednesday,

2    Thursday, or Friday.

3            THE COURT:  The Friday won't work again because of

4    the holiday.

5            MR. MCKANE:  Holiday.  You're absolutely right,

6    Your Honor.

7            THE COURT:  Let's see.  Just give me a minute.  It

8    takes my calendar -- I've got the government computer here.

9    It just takes a good kick.  We can do this by phone.  Is it

10   -- I assume -- or do you want to do it by phone or in

11   person?  How do you want to proceed, Mr. McKane?

12           MR. MCKANE:  Well, I think Your Honor has said in

13   the past if there's general collective views, phone might be

14   best.  But if there's going to be a substantial argument,

15   like to the extent that NextEra says this should be stayed,

16   but yet the collective view of the debtors and the creditors

17   is this should go forward, we may need to do that in person.

18           THE COURT:  Okay.

19           MR. MCKANE:  So --

20           THE COURT:  Can we do Wednesday, the 27th?

21           MR. MCKANE:  Yes, Your Honor.

22           THE COURT:  I mean, I can fit you -- Thursday is a

23   little tricky because I have a disclosure statement in the

24   afternoon.  We could do Friday morning.

25           MR. MCKANE:  Your Honor, I believe Wednesday works

1    for folks.

2              THE COURT:  Okay.

3              MR. MCKANE:  As best I can tell from head nods.

4              THE COURT:  Okay.  Heads are nodding.  All right.

5    11 o'clock?

6              MR. MCKANE:  Sounds good.

7              THE COURT:  Okay.

8              MR. MCKANE:  Thank you, Your Honor.

9              THE COURT:  Let me write that down.

10             MR. MCKANE:  I'll cede the podium to Elliott.

11             MR. GALARDI:  Your Honor, again for the record,

12   Greg Galardi on behalf of Elliott.

13             Your Honor, despite all of the pleadings, I think

14   there is a fairly narrow issue with respect to Elliott's

15   request to intervene and derivative standing.  In

16   particular, I don't think any of the parties disagree with

17   Elliott's right to intervene in the pleadings -- in the

18   matter -- in the adversary pleading.

19             Where there is disagreement is, and I think the

20   committee put it the best, is since the debtors have amended

21   their complaint, since we have everybody at the party so to

22   speak, really the issue is who's prosecuting, who's taking

23   the lead.  Those are things that the counsel can work out.

24   Everybody is participating.  Probably everybody is going to

25   take the lead in that.  So I don't think the issue, as far

1    as Elliott is concerned, is since the debtors amended their

2    complaint, since it's only needing really one complaint, we

3    have no objection to the way that Elliott has -- I mean, the

4    way that the debtors have formulated the issues.  So we are

5    prepared to let it proceed on the debtors' complaint and we

6    intervene.

7            So the ultimate question now comes down to -- and

8    again, Your Honor's decision has some ramifications on this,

9    but I don't think it changes the playing field completely,

10   because all parties should always consider settlement.  The

11   issue is assuming that the debtors and, in particular, the

12   committees -- the EFIH committee are participating, Elliott

13   is participating, the EFH trustee is participating, and UMB

14   is participating, the real issue is should a settlement

15   arise?  What role should the creditors play in that?  And

16   I'll use the term creditors broadly.

17           Elliott originally requested standing to be the

18   party that determines to settle or not settle the litigation

19   and did so on the facts that the debtors were parties to the

20   negotiations regarding the asset purchase agreement that's

21   at issue.  The debtors will be witnesses, and so might their

22   counsel be witnesses, so the ethics rules are implicated.

23   The debtors determined not to file the complaint, although

24   they don't render it -- the conflict issue irrelevant by

25   simply filing the claim.

1              And more importantly, and I think this comes to a

2     very fundamental critical issue that Your Honor has had

3     before and ruled on this, the four claims that Elliott

4     brought focus on the time period from March 30th to June

5     26th.  During that time period, Elliott, in an adversary

6     proceeding commenced with respect to the PSA sought

7     discovery from the debtors regarding communications between

8     themselves and NextEra and communications that involved in

9     which NextEra has used with respect to the complaint to say

10    during that period of time, the debtor has filed amicus

11    briefs.

12             The debtors took to the view that that was subject

13    to common interest privilege, and that therefore, we were

14    not privy to that information.  Now, we're back at saying

15    that we should be able to obtain that information.  That

16    will be an issue in the underlying adversary proceeding.

17    But more importantly, that goes to the fundamental view that

18    we believe, and I think the committee shares, is that if

19    this litigation is settled, and as Your Honor witnessed in

20    the first matter, there are disputes about what this

21    agreement provides, how it was to be interpreted, what the

22    provisions were, how -- and the roles that the debtors and

23    their counsel played in that.

24             Now, while we believe that the debtors will

25    vigorously pursue the litigation, there's clearly a

1    difference of opinion, often, between Elliott and the

2    debtors regarding how best to proceed and what would be --

3    and may very well be a dispute as to the value of the

4    settlement, any settlement that ultimately is put before the

5    Court.

6              So Elliott sought derivative standing and I think,

7    again, the committee said it best.  It really does not make

8    a difference if all of the parties are in the litigation who

9    prosecutes the claims, all will prosecute.  But when it

10   comes time to settlement, who should have the authority to

11   settle with NextEra should there be a settlement?

12             Elliott originally sought standing.  Elliott

13   understands that it is not a fiduciary even though it is the

14   largest creditor in both -- in the EFIH estate and it may be

15   one of the largest creditors, if not the largest creditor,

16   in the EFH estate.  That, however, Your Honor, does not

17   justify.  I mean, we think we could have standing on

18   settlement.  But given that the committee has now joined in

19   that and the EFH, EFIH committee has said that they share

20   the same concerns, Your Honor, we would request that the

21   standing to settle, and essentially a veto right on the

22   settlement, should go to the committee, the EFH and the EFIH

23   committee.

24             We also think, Your Honor, that will avoid

25   litigation down the line over such settlements.  That is, it

1    will be avoiding conflict issues that should a 9019

2    settlement come before us, then we would be challenging,

3    perhaps, the debtors' judgment, why the debtor is selling --

4    settling, the basis for the settlement.  Is this is a way,

5    and I'm not suggesting they will, to, you know, put under

6    the rug issues with respect to the contract, what they were

7    thinking, why they handled it this way, why they filed the

8    amicus brief.

9            So, Your Honor, we would request that the

10   committee be granted standing with respect to settlement

11   authority under 9019.  But assume that all parties will

12   participate and cooperate with that, but I think it's a way

13   to avoid future litigation.  And for the reasons of

14   conflicts, the potential testimony, we think it's

15   appropriate for the committee to get standing on these

16   matters.

17           THE COURT:  Thank you.

18           MR. GALARDI:  Thank you.

19           MS. KANZLEY:  Good morning, Your Honor.  Alexa

20   Kranzley from Sullivan & Cromwell on behalf of the official

21   EFH, EFIH committee.

22           Your Honor, as we stated in our joinder and

23   statement, we support Elliott's motion and the statements

24   made by Mr. Galardi.  We agree that it boils down to

25   settlement authority.  The committee shares Elliott's

1    concerns about the debtor's unilateral control over the

2    resolution of the litigation.  And as a result, a potential

3    premature and potentially inadequate settlement that does

4    not reflect any input from the EFH and EFIH creditors.

5            THE COURT:  So just let me understand clearly

6    where you're coming from.  So is it a situation you proposed

7    where the debtors and the committee would need to agree on a

8    settlement before it could be proposed to the Court?  Or

9    would it -- would you be able to settle around the debtors

10   or they could try to settle around you and you would be able

11   to come in, and they would be able to come in and exercise

12   some sort of veto right?

13           MS. KRANZLEY:  We are proposing a consent right.

14   So we are proposing that we would work together with the

15   debtors, with the other parties that are involved, but that

16   the committee have a consent right over any settlement in

17   the adversary proceeding.  So we propose --

18           THE COURT:  That would work both ways.  You

19   couldn't settle without their consent and they can't settle

20   without your consent.

21           MS. KRANZLEY:  That's correct, Your Honor.

22           THE COURT:  Okay.

23           MS. KRANZLEY:  We believe this is the most

24   reasonable path and a good compromise to the standing

25   dispute.  The committee is a mutual third party and a

1    fiduciary to all of the unsecured creditors.

2             THE COURT:  Well, don't you have a conflict?  I

3    mean, how does your committee deal with the issue, assuming

4    this is due and payable, there's an underlying conflict your

5    committee has, which who owes the money?  EFIH, EFH?  Some

6    pro rata split among the two?  So you're as conflicted as

7    the debtor.

8             MS. KRANZLEY:  Well, our view is that this

9    adversary proceeding is focused on the allowance of the --

10   and whether the fee is payable to NextEra or not.  To the

11   extent that it is determined to be payable, there's going to

12   be subsequent litigation as to the allocation of that.  So

13   our view is about the settlement just with NextEra, not on

14   the issue of allocation.

15            THE COURT:  Okay.

16            MS. KRANZLEY:  And finally, we echo Mr. Galardi's

17   point that our involvement now will alleviate, and hopefully

18   avoid, any further expenses for unnecessary litigation with

19   respect to a settlement.

20            THE COURT:  Well, that's assuming Elliott agrees

21   with a settlement you agree to and I would never risk

22   predicting what Elliott will agree to or not agree to.

23            MS. KRANZLEY:  Yes.  I can't predict Mr. Galardi's

24   position.

25            THE COURT:  Understood.  All right.  Mr. Pedone,

1    good morning.

2              MR. PEDONE:  Good morning, Your Honor, Richard

3    Pedone on behalf of EFH Indenture Trustee.

4              Your Honor, we support the resolution of this

5    issue with the committee having a consent right with the

6    debtors to resolve settlement primarily for two reasons.  We

7    have a variety of intervenors here and that raises questions

8    about how this could be settled in the first place with the

9    various intervenors being complete parties now to the case

10   and essentially joined plaintiffs.  The committee and

11   debtors' ability to settle it, formulate an order now we

12   think dictates efficiency.  And, frankly, it increases the

13   likelihood of driving the case towards a settlement and

14   addressing those issues that we frankly have faced in the

15   past in this case where we have disputes over settlement,

16   and is it appropriate and when is it appropriate to settle

17   at a later date.

18             So we think this is a perfect way to proceed.

19   Thank you.

20             THE COURT:  Okay.  Thank you.  Anyone else?

21             Mr. McKane, help me out as a preliminary matter.

22   Is this a conflict matter where you're taking direction from

23   the independent directors or is this being handled as a non-

24   conflict matter by the EFH board?

25             MR. MCKANE:  Your Honor, the adversary proceeding,

1    you know, because it simply is us against NextEra, not

2    addressing the allegation is not a conflicts matter.

3    There's been no determination by either -- by any of the

4    disinterested directors that it would be and given that that

5    is not part of any of the claims that are being raised at

6    this point in time.  It's simply whether it is owed by

7    either of the two counterparties to the contract, Your

8    Honor.

9             And so with that, we have to step back a little

10   bit, because Elliott has requested derivative standing only

11   -- and if you've read their -- if you read their motion and

12   you look at their proposed order, there is no request for

13   settlement authority in the Elliott motion.  The first time

14   the request for settlement authority comes up is in the

15   joinder filed by the EFH committee.  There's no basis for

16   Elliott to have standing at all, there's no unjustified

17   refusal and this issue of conflicts that they raise, I'm

18   going to walk through each of them to kind of rebut

19   factually what is being raised by Elliott in the first

20   place.

21            But as it relates to what they're asking for now,

22   which is raised solely in the joinder and solely in the

23   reply, it is to our knowledge unprecedented, we cannot find

24   a case in which the debtors are actively pursuing claims and

25   do not have the ability to go forward and propose a

1    settlement of their claims.  In their own joinder, the EFH

2    committee doesn't suggest we are going to breach our

3    fiduciary duty.  Mr. Galardi didn't suggest we were going to

4    breach our fiduciary duty, but he acknowledges what the ask

5    is, it is a veto right, right?  What they are asking for is

6    an ability to block a proposed settlement before it comes

7    before the Court.  That is 100-percent diametrically opposed

8    to what is Rule 9019.

9           Rule 9019 says the trustee shall come forward,

10   right?  There's an established process for the approval of a

11   settlement motion and what the committee and what Elliott is

12   actually proposing is that a creditor or a committee have

13   the ability to block a proposed settlement before -- even if

14   the trustee determines that it believes it is in the best

15   interest of the estate before it gets to the Court or other

16   creditors, so that there can be an evaluation by the other

17   creditors and parties can take a position.

18           THE COURT:  I understood Mr. Galardi's request not

19   to be that Elliott have this veto right, that it would --

20   now his position is that the E-Side Committee should have

21   the veto right --

22           MR. MCKANE:  Right.  In the reply --

23           THE COURT:  -- which is a fiduciary.

24           MR. MCKANE:  They are a fiduciary for some

25   creditors --

1             THE COURT:  Yes.

2             MR. MCKANE:  -- we do recognize that.  But they

3    are not the trustee, right?

4             THE COURT:  Understood.

5             MR. MCKANE:  The debtor in possession is the

6    statutory trustee.

7             So why don't I first walk through whether there's

8    a conflict, as what Elliott has identified as a potential

9    conflict, whereas in their papers this is not a conflicts

10   matter as it relates to an allocation between the estates,

11   and then we can address some authority.

12            So what is the alleged conflict?  First, the

13   debtors are allegedly conflicted because they actually

14   sought the approval of the NextEra termination fee and by

15   filing a motion.  Your Honor, that can't be a conflict,

16   because the debtors have to come forward and seek authority

17   for any transaction where they incur a potential

18   administrative claim, right?  The fact that we sought the

19   Court's approval, it can't be a basis for a conflict; we're

20   the counterparty to the contract.  To the extent that we

21   believe, you know, another party to a contract didn't

22   perform their obligations, we the debtor, the EFH and EFIH,

23   the counterparties, have the ability to pursue the

24   litigation.  So that can't be enough.

25            Second, that the debtors filed amicus briefs in

1    support of the rehearing request.  As Your Honor remembers

2    from Mr. Husnick when he gave the status conference, at that

3    point in time the debtors were attempting to resuscitate the

4    merger agreement after the PUCT denied the application,

5    right?  You know, to the extent that the Court would have

6    approved that, it would have been better recoveries for --

7    sorry, the PUCT had approved that, that would have been

8    better recoveries for everyone.  The fact that the debtors

9    complied with their obligations under a contract can't be

10   enough for them to be somehow foreclosed from pursuing

11   litigation against a counterparty when we don't believe the

12   counterparty performed their obligations under the contract.

13            The third thing Mr. Galardi raised was somehow the

14   fact that we had an earlier discovery dispute with Elliott

15   about the relevance and applicability of discovery materials

16   between the debtors and NextEra as it relates to the pending

17   motion for approval of the BHE merger agreement.  That was

18   the context in which that came up, right, that somehow we

19   took a discovery -- that we opposed Elliott there somehow

20   forecloses us from properly being able to prosecute this

21   matter, that can't be enough, Your Honor.  The fact that we

22   are adverse to NextEra here, right, and do not believe that

23   they have done everything they were supposed to do under

24   their contract, they didn't perform under the contract, the

25   fact that we have -- at one point in time we had a common-

1   interest agreement with them, that may be a discovery

2   dispute in this adversary proceeding down the road, but it

3   doesn't foreclose us from the ability to actually prosecute

4   the matter or settle it.

5          The fourth is that somehow the debtors were

6   reluctant litigants and that we somehow were reluctant to

7   bring this.  Mr. Galardi knows better, right, because we

8   were working with Elliott for these potential claims before

9   we filed them and we were reporting to Elliott kind of where

10  the debtors were in the decision-making process, including

11  the fact that in early, I believe it was early July that we

12  were seeking authority from the boards to proceed in the

13  matter.  We did get that authority, we did report to Elliott

14  that we had that authority, and what they're challenging as

15  a reluctant litigant is the fact that there was a three-week

16  period between that and the filing of the complaint.  Mr.

17  Galardi knows why, because we engaged with NextEra in an

18  effort to resolve it pre-litigation, to avoid additional

19  administrative costs pre-filing.  Those failed and, when

20  they failed, we sued.  That can't be enough for somehow the

21  debtors to be removed from the ability to prosecute and

22  settle a matter.

23          Finally, they say that somehow the debtors'

24  directors would need to somehow admit the error of their

25  ways.  They don't say what mistakes were made, that somehow

1    -- whatever the debtors did, but what we do know from the

2    facts is the debtors' directors have authorized this lawsuit

3    to proceed.  The debtors filed claims, there was no demand

4    by Elliott at that time to file additional claim, they

5    didn't raise any of this, there's no demand on us that the

6    claim was futile, we proved that it wasn't.  When they

7    explained what additional theories they wanted to pursue, we

8    amended the claims and are continuing to go forward.

9           There's nothing about somehow some suggestion that

10   the debtors' directors aren't authorizing this litigation,

11   they already did.  They authorized it before the motion was

12   filed, so there are no missteps that the debtors need to

13   acknowledge.

14          And then the last area that I think that I saw in

15   their reply briefs, it didn't come up today, is that somehow

16   Elliott can advance arguments that the debtor can't or that

17   the committee can advance arguments that the debtor can't.

18   Your Honor, they have their position as intervenors, they

19   can make whatever arguments they want.  We actually have

20   worked well with them, you know, to date.  But the notion

21   that somehow a person seeking derivative standing or

22   derivate authority to settle from the debtors could be

23   anywhere other than standing in the same shoes of the debtor

24   has been flatly rejected, right?  If you get derivative

25   standing, you get the -- you are just as -- you have the

1    same arguments, you have the same law, you have the same

2    defenses as the debtor, you don't get more, it's just

3    derivative.  So whatever arguments Elliott can make, they

4    wear what we wear in terms of getting standing or

5    prosecuting to go forward.

6              So when you step back and you say to yourself,

7    what's the conflict that's been identified, nothing in the

8    things that they've raised is a conflict.  And the

9    allocation issue, which admittedly we've always identified

10   would be a matter that could be a potential conflict matter

11   that the disinterested directors would need to resolve, not

12   subject to this adversary proceeding.  So there is no basis

13   by which the debtors as the statutory trustee don't have the

14   ability to prosecute the matter as they have by filing and

15   amending their complaint and moving forward and then

16   comprising the matter.

17             And as to that issue, where we struggle here, Your

18   Honor, is that there's no basis to prevent the debtors -- by

19   preventing someone else a veto right, because I think that's

20   what Mr. Galardi acknowledged it was, it's essentially a

21   veto right, that if the trustee is prosecuting matter and we

22   recognized and we reached a potential settlement, our job is

23   to file a motion under Rule 9019 and bring it before all the

24   creditors at the same time and the Court for evaluation.

25   What they may not like is they don't like the 9019 standard

1    for whether it's appropriate to be compromised, we are -- we

2    have been in this case long enough to know we are going to

3    want creditors' support before we strike a compromise.  But

4    to create a situation where someone has a blocking position

5    and only -- even another fiduciary, a blocking position

6    before we can take a matter to the Court and have all

7    creditors weigh in and find out whether some agree and some

8    may not agree, that is inconsistent with Rule 9019 and

9    there's no basis that we have seen in the law for it.

10            And in fact what we've seen in the law, and

11   quoting in Delaware courts, is that even the granting of

12   standing to another party doesn't prevent the debtor from

13   attempting to compromise the case.  And so if you're able to

14   grant standing to someone else to prosecute a matter and the

15   debtors still have the ability to compromise the case, how

16   could it be when the debtors are actually prosecuting the

17   case and have done everything they're supposed to do.

18   They're not refusing to prosecute the case, but somehow

19   there's a specter of question of their ability to come

20   forward with a good-faith compromise of the case.

21            And so given that, Your Honor, we truly believe a

22   ruling that would allow the creditors committee, Elliott or

23   anyone else to have a veto right to us coming forward with a

24   settlement would truly be unprecedented in this district and

25   the circuit, and for that reason we ask that Your Honor deny

1    the motion.

2               THE COURT:  Thank you.

3               MR. BUCHANAN:  Good afternoon, Your Honor, Thomas

4    Buchanan on behalf of NextEra.

5               As indicated in our pleadings, we agree with the

6    debtor, debtor's counsel, that whether it's the creditors

7    committee or Elliott, they should not have a veto power over

8    any settlement.

9               I'd also point out that in our brief we argued and

10   the -- Elliott did not really respond that the additional

11   claims were not colorable, in other words there's no basis

12   in law in fact for those claims.  We made that argument; I'm

13   not going to repeat it here.  I just want to make sure

14   that's on the record and so if the Court did rule, and I

15   think that Elliott has conceded this, that the debtor will

16   go forward with its complaint, we are not acknowledging that

17   those new claims are colorable and we would move to dismiss

18   those.

19              So I just want to make that clear for the record,

20   but otherwise we agree with the position of the debtor on

21   who should control the litigation.

22              THE COURT:  Thank you.

23              MR. GALARDI:  May I respond, Your Honor?

24              THE COURT:  Yes.

25              MR. GALARDI:  Your Honor, Mr. McKane is -- points

1    out six things, none of which adds up.  The problem is they

2    all add up together.  We thought we were trying to get a

3    compromise.  We could clearly pursue standing and say that

4    the committee could have standing, because we do believe

5    that there is a conflict.  So let's go back to some basic

6    Delaware law.

7            The fact of the matter is you have two ways to get

8    standing.  First, you can ask or make a demand, and the

9    demand could be refused, you could say it was a wrongful

10   refusal, or you can say it's futile.  We argued and said it

11   was futile.  And on what basis?  The basis that there were

12   fundamental conflicts and issues that we did not believe the

13   debtors and their counsel are the proper advocates of those

14   positions.

15           Merely filing an amended complaint that sets forth

16   the four claims that they did not file in the first place

17   does not show that these debtors are un-conflicted and that

18   they could vigorously prosecute those claims.  If that were

19   the case, every chancery court would have a new complaint

20   afterwards and in fact be dismissed.  The fact of the matter

21   is, you have to show that there's an independent group

22   within the debtors that are un-conflicted.  The debtors have

23   not --

24           THE COURT:  Well, no, first you have to prove

25   there's a conflict.

```
1              MR. GALARDI:  First you have to prove --

2              THE COURT:  You don't --

3              MR. GALARDI:  -- that there's a conflict.

4              THE COURT:  -- just say there is one, you have to

5     actually prove it.

6              MR. GALARDI:  Fine.  So now let's go to the

7     conflict, Your Honor.

8              First, it cannot be disputed that the debtors

9     prosecute a cert approval of the termination fee order,

10    opposed the relief we requested today, and continue to

11    oppose certain of the relief, so we do believe that they are

12    conflicted.  They are prosecuting the underlying claims.

13             Second, Your Honor, the amicus briefs.  The fact

14    of the matter is those were absolutely critical in the time

15    line.  They were filed after March 30th, before January --

16    before June 26th, when Elliott raised the issue in its

17    complaint, I believe it's May 10th, regarding April 5, and

18    the threat by NextEra, which is now in this complaint, the

19    threat of NextEra to go ahead and try to extort a value from

20    certain noteholders.  Knowing that and knowing that that

21    claim was out there, the debtors file an amicus brief and

22    now they want to prosecute a claim that we have raised as

23    anticipatory breach of the agreement.  That -- NextEra has

24    pointed out, how can they take that position?  That position

25    is inconsistent with the legal position that there was an
```

1    anticipatory breach.  So we believe that's a fundamental

2    conflict on those claims.

3              Next, on the discovery materials, there is a

4    fundamental issue as to what to do with the common-interest

5    materials.  We do believe that those materials should be

6    disclosed, should be discovered, but that I believe the

7    debtors will have to take the position they cannot do so.

8    That is not a position that they can advocate, but that is a

9    critical position.  Why during this period of time from

10   September 19th through June 26th or, more importantly, from

11   March 30th to June 26th, was there a common interest, why --

12   how do you defend on that, again going back to the amicus.

13   That is not a position that the debtors have an independent

14   group of board members to decide, but that is a conflict

15   issue.

16             Now, the debtors say they were not reluctant to

17   file, but they never filed and didn't file in the first

18   instance the four causes of action despite the Elliott

19   complaint, they have and shown a reluctance.  It's only

20   after Elliott filed the reconsideration motion, only after

21   NextEra filed the administrative motion, and only after

22   Elliott then moved to intervene on and put four new claims

23   on that the debtors decided to bring those causes of action.

24   Again, that shows a fundamental conflict back to the period

25   of time March 30th to June 26th.

1           Finally, there are arguments, especially with

2    respect to privilege and, as Your Honor will understand when

3    we get to these matters, there are privileges that the

4    estate can be the beneficiary of and creditors can be the

5    beneficiary of.  The debtors will have to defend the

6    privilege in light of the common interest doctrine, but the

7    committee can make those arguments, the committee and

8    Elliott can make arguments about the common interest, about

9    the impropriety we believe of filing amicus briefs if they

10   had those facts.  So we do believe the debtors and their

11   counsel are in a conflict position.

12           So, yes, we are asking for extraordinary relief,

13   but as we've said many times, this is an extraordinary case.

14   Derivative standing we think would be appropriate, but we've

15   tried to compromise since we recognize the fact that

16   everybody is here.  So it's not just the debtor is

17   prosecuting, it's the committee.

18           The unique aspect of this is how do you proceed on

19   a settlement?  And our proposal, and I think supported by

20   the committee, is whether it's a joint application with the

21   trustee, we've not asked for exclusive standing, whether

22   it's an application that can be vetoed by the committee,

23   those are technicalities, I think the point is that we would

24   support the committee being a proponent of the settlement.

25   And we believe that under those circumstances that one, it

1    will eliminate certain litigation on down the line and give

2    us comfort as the largest creditor of EFIH and as one of the

3    largest creditors of EFH confidence in the settlement

4    authority of the committee when the committee supports it.

5              Thank you.

6              THE COURT:  Thank you, Mr. Galardi.

7              MS. KANNZLEY:  Just one quick point, Your Honor,

8    adding on to what Mr. Galardi said.  The committee's view is

9    that the order can be issued on a balance of harms.  We have

10   confidence in the process and the committee does not intend

11   to misuse a consent right over settlement, obviously with a

12   settlement that's beneficial to the creditors, we would be

13   on board with that.

14             THE COURT:  All right.

15             MR. MCKANE:  Your Honor, if I could respond?

16             THE COURT:  Yes, Mr. McKane.

17             MR. MCKANE:  And, Your Honor, I apologize, but Mr.

18   Galardi in his opening remarks, you were saying that he had

19   confidence that the debtors would vigorously pursue and

20   prosecute the matter, and then in rebuttal came back and

21   basically alleged that we are conflicted and not able to

22   pursue the matter.

23             As relates to whether the demand was futile,

24   essentially Mr. Galardi likes to rely on some Delaware

25   chancery law as to a demand of futility, the Third Circuit

1   is very clear about standing in this context and in the

2   bankruptcy context, it has to be an unjustifiable refusal,

3   and that record is plain.  The boards authorized the filing

4   of this lawsuit, we filed the lawsuit.  We actually had been

5   working with Elliott; at no point in time did they come

6   forward and ask us to add additional claims, right?  They

7   filed their motion without engaging with us.  We immediately

8   engaged with them and said, you know, we're prepared to add

9   these claims and we added them.  There's nothing in that

10  record that could ever lead to unjustified refusal, there is

11  no refusal at all.

12          And I think the law is clear and I think there's

13  Second Circuit case law on this that basically says when the

14  debtor is engaging, the burden is higher, right?  It's a

15  higher burden, because there are no shoes to fill.  We are

16  here proceeding as we always have.

17          Now, what Mr. Galardi has essentially come down to

18  say is like the committee may want to make arguments and

19  Elliott might want to make arguments, they're intervenors,

20  they're already in, no one disputing that.  They are going

21  to be participating in this litigation, right?  We actually

22  have worked together on discovery requests, on meet-and-

23  confers, they have a seat.  So it's not about the

24  prosecution of the matter.  So everything that Mr. Galardi

25  raises with regards to should the standing be granted, he

1    hasn't established a record for that.

2            And so then we come to what is the ultimate

3    request, which is the veto right.  And I've heard nothing to

4    suggest that they could overcome why Rule 9019 is written

5    the way it is, which is the trustee.  There have always been

6    circumstances where a creditor would like to propose a

7    settlement, but it's the trustee, here the debtor in

8    possession, that is authorized under that rule to bring it

9    forward.  Yes, we're going to want to have creditor support

10   to do that, but to have a veto right before it gets to the

11   public, before it gets to all creditors is problematic and

12   there's not a record for it, especially when everyone is

13   saying they have no doubts the debtors are going to fulfill

14   their fiduciary duties in prosecuting the matter.  What is

15   the basis for this relief?  We believe there is none.

16           THE COURT:  All right.

17           MR. MCKANE:  Thank you.

18           THE COURT:  Thank you.  Thank you everybody.

19           Well, as a preliminary matter, certainly the Court

20   will approve the intervention of Elliott, that's not an

21   issue.  The question comes down to the request for standing

22   to pursue the claims and, as modified now, a proposal that

23   the E-Side Committee be given a consent right or a veto

24   right, however you want to put it, to co -- have co-

25   authority to settle with the debtors under Rule 9019.

1            So with regard to those allegations, I do not

2    believe that there's been any allegation sufficient to

3    establish a conflict that the debtors might have that would

4    disable their ability to vigorously pursue these actions.

5    There is also no wrongful refusal, there's no refusal at all

6    in connection with the debtors pursuing the claims,

7    including the claims that Elliott identified.  And I think

8    that it would create an untenable situation to have co-

9    trustees, if you will, for purposes of prosecuting the

10   claims to give the E-Side Committee a veto right or a

11   consent right in connection with the debtor's ability to

12   settle these claims.

13            This debtor I think has pretty consistently sought

14   creditor consensus throughout the case, but certainly has

15   worked very hard recently to develop creditor consensus,

16   including with Elliott, in seeking to pursue the Sempra (ph)

17   transaction and I have every belief they will pursue -- seek

18   consensus in any settlement negotiations or settlement, but

19   there has to be a boss.  There has to be some entity or

20   person in charge who can make the ultimate decision and I

21   think it's appropriate that that be the debtors as trustee

22   in this case, but of course anything they do has to be

23   subject to Court approval and the right of creditors to

24   object.

25            I would certainly encourage the debtors not to cut

1     a deal, file a motion and then engage in creditor -- in

2     trying to build creditor consensus, that's just going to

3     lead to a lot of papers being filed and litigation

4     posturing, and that they keep the creditors involved

5     throughout the process and particularly the committee as a

6     fiduciary of the estate or -- well, as a fiduciary.

7              So I'll deny that relief and ask the parties to

8     submit an order under certification.

9              MR. MCKANE:  Will do, Your Honor.

10             THE COURT:  Okay.  I think that takes us to Mr.

11    Hogan's motion.

12             MR. MCKANE:  Yes, Your Honor.  We actually have a

13    form of order that we can share with the parties now and see

14    if that will be sufficient.

15             THE COURT:  Okay.

16        (Pause)

17             THE COURT:  Good afternoon, Mr. Hogan.

18             MR. HOGAN:  Would you care for me to wait with the

19    milling around, Your Honor?  It's your courtroom.

20             THE COURT:  Well, yeah, I don't want to be

21    distracted and you certainly deserve the full attention of

22    the Court, so you can talk about the order.

23        (Pause)

24             THE COURT:  I'll tell you what, Mr. McKane, why

25    don't -- I'm going to let Mr. Hogan go forward.  Everybody

1    can read it and the next time we take a break you can talk

2    about the order amongst yourselves, because --

3            MR. MCKANE:  Very good, Your Honor --

4            THE COURT:  -- there's so many --

5            MR. MCKANE:  -- I apologize.

6            THE COURT:  Well, no, no, there are so many

7    parties involved, it takes a little while.

8            Mr. Hogan?

9            MR. HOGAN:  Thank you, Your Honor.

10           Your Honor, let me just deal with a preliminary

11   matter relative to the reply that we filed on Friday.  There

12   was a component of that which was filed under seal --

13           THE COURT:  Yes.

14           MR. HOGAN:  -- I'm sure the Court is aware of it,

15   but we've had dialogue with the debtors regarding the issues

16   relative thereto, as well as with the U.S. Trustee.  Mr.

17   Schepacarter was here in the courtroom, Your Honor, and gave

18   me permission to articulate to the Court that in fact we've

19   reached agreement about the utilization of the first

20   redaction, but not the second redaction.  And the debtors I

21   believe are in agreement with that statement and so we'll

22   proceed in that manner, if that is to the Court's

23   satisfaction.

24           THE COURT:  That's fine.

25           MR. MCKANE:  I can confirm that's true.

1           THE COURT:  Okay.  Do we need an order?

2           MR. MCKANE:  No, Your Honor.  I think we're -- for

3   the purposes of today we are not going to oppose the public

4   disclosure of what was previously redacted, consistent with

5   Mr. Hogan's earlier representation as to which redaction

6   he's referring to.

7           THE COURT:  Okay.

8           MR. HOGAN:  Okay.

9           THE COURT:  Very good.

10          MR. HOGAN:  And I'll be careful not to --

11          THE COURT:  All right, yes.

12          MR. HOGAN:  Thank you, Your Honor.

13          THE COURT:  Thank you.

14          MR. HOGAN:  So, Your Honor, obviously we're here

15  today, the asbestos objectors are here today to intervene in

16  this adversary proceeding.  Obviously, an issue that's come

17  up is the burden.  The asbestos objectors and the un-

18  manifested asbestos claimants are obviously creditors in

19  this case.  We have primary claims against the asbestos

20  debtors, but there may also be potential derivative claims

21  against EFH.

22          As the Court is aware, under Rule 24(a)(1), as

23  made applicable by Bankruptcy Rule 7024(a)(1), a party has a

24  right to intervene in an adversary proceeding as a matter of

25  right, if granted by statute.  It's our position that

1   1109(b) grants us that right.  We also believe, Your Honor,

2   substantially that the Third Circuit has established that a

3   case involves an adversary proceeding, which is what it is

4   we're looking to intervene into.

5          The debtors and NextEra have both pointed out,

6   Your Honor, that the Third Circuit makes it clear that a

7   party has an 1109 right to intervene only if the party has

8   standing, and that standing under 1109 is coextensive with

9   standing under Article III of the Constitution.

10          They have challenged our standing accordingly and

11  have argued that we can't show any injury.  We don't argue

12  that all creditors have standing to intervene in all

13  adversary proceedings, but all unsecured creditors do have

14  standing and the right to intervene in a proceeding such as

15  this one which will affect the value of the estate and which

16  will impact ultimately the ultimate waterfall.

17          As this case has taught myself and I'm sure many

18  in this courtroom, the sands are perpetually shifting in

19  this case, Your Honor, and what we're looking for is a seat

20  inside the tent.  We want to understand the deal, we want to

21  understand the negotiations; we want to understand why it is

22  that this NextEra termination fee litigation as to how it's

23  going to be resolved.

24          Now, we're not secured creditors, as NextEra has

25  relied upon in the Stone & Webster case.  And as the

1   committee has pointed out in its brief supporting Elliott's

2   intervention, the economic interests of all unsecured

3   creditors are at stake.  All unsecured creditors will be

4   injured if the estates are reduced by $275 million.  Now,

5   granted, when I made those -- made my notes in preparation

6   for this hearing, Your Honor, I did not anticipate your

7   earlier ruling.

8          The injury-in-fact argument misses the point, as

9   we like to say, Your Honor.  The debtors and NextEra argue

10  essentially that we can't demonstrate injury in fact

11  required for standing because under the proposed plan the

12  asbestos claims for which proof of claims have been filed

13  will pass through to the reorganized debtors.  Thus, under

14  the proposed plan, asbestos claimants will not receive

15  distributions from the estate when the plan goes effective,

16  only other unsecured creditors will get such distributions.

17  But the vast majority of un-manifested asbestos claims who

18  did not file proof of claims and which are not passed

19  through, they will be discharged and, as we've argued,

20  that's in violation of due process rights.

21          In any event, the terms of the proposed plan,

22  which may change before confirmation as we've seen again and

23  again in this case and which may not go effective until it

24  is confirmed, are not determinative of standing.  The issue

25  here has nothing to do with the terms of the new plan, the

1    Sempra plan, it concerns whether a large portion of the

2    estate assets will be paid to NextEra pursuant to the terms

3    of a now-defunct NextEra merger agreement; that is it

4    directly affects the value of the estates and has a

5    significant impact on the value.  Payment of a large

6    termination fee increases significantly the danger of an

7    administrative insolvency in this case.

8            At this point the debtors anticipate that there

9    will be just over $200 million left in each of EFH and EFIH

10   estates at the end of this year.  The more these proceedings

11   multiply, the greater the legal expenses, the more likely we

12   are going to whittle that number down to nearly nothing.

13           The Court will recall last year that when the

14   Court approved a previous plan the asbestos objectors, we

15   appealed.  The debtors moved to have our appeal dismissed.

16   And I believe in fact it was a termination appeal, Your

17   Honor, if not it was the main appeal.  The new plan -- and

18   this is the debtors, they said the new plan has not been

19   confirmed and may not -- and may well change considerably

20   before it is.  Neither the debtors nor the appellants can

21   predict the future; neither knows with certainty how

22   negotiations will proceed.  It is conceivable that whatever

23   plan the bankruptcy court ultimately confirms could differ

24   substantially in its treatment of un-manifested asbestos

25   claims, either because the parties come to a consensual

1    resolution or because the bankruptcy court requires a

2    material change.

3              The district court agreed and in granting the

4    motion the district court noted that the plan was not final.

5    That court indicated, and I quote, "that the debtors has

6    proposed an alternative plan that is subject to ongoing

7    litigation.  That plan is subject to further amendment and

8    may be objected to during this ongoing proceeding."

9              Final does not describe the state of affairs.

10   Similarly, this plan, the Sempra plan is not final.  And at

11   this time asbestos claims will pass through, but that could

12   change by either agreement of the parties or as required by

13   this Court or maybe the district court.

14             For example, the parties could agree that the

15   asbestos debtors should propose a plan that would comport

16   with 524.  Now, the Court will recall that NextEra made such

17   a proposal to the debtors last year, although the debtors

18   rejected it as too time-consuming and expensive.  Whether

19   the termination fee must be paid and what portion of that

20   fee must be paid by EFH will obviously impact the

21   discussions of proposed alternative plans and the amount of

22   the fees that will be contributed to such trusts by EFH.

23             Now, NextEra argues that the EFH/EFIH committee

24   settlement requires that a plan that reinstates asbestos

25   claims and thus that it can't be a plan which holders of

1    asbestos claims would have an interest in the estate race,

2    but the settlement did nothing to protect the rights of un-

3    manifested asbestos claimants.  Clearly the debtor believes

4    that the settlement could be renegotiated or revised by

5    order of this Court or they would not have made those

6    arguments to the district court.

7            The interest of the asbestos objectors and the un-

8    manifested asbestos claimants are not adequately represented

9    by the debtor or by the committee.  The committee has

10   pointed out that the debtors are seriously conflicted in

11   this matter and we agree.  And throughout these bankruptcy

12   cases and this adversary proceeding the debtors have sought

13   to shut out the asbestos objectors from meaningful dialogue

14   on issues related to important issues to the asbestos

15   objectors.

16           The committee is also conflicted, in our opinion,

17   Your Honor.  It does not represent the creditors of three of

18   the asbestos debtors, no committee does.  It cannot

19   adequately represent the interests of un-manifested asbestos

20   claimants, as the Supreme Court has recognized in Amco, and

21   the committee itself recognized during the briefing on the

22   asbestos bar date.  And it is inherently conflicted in any

23   discussion or argument on the allocation of fees between

24   EFIH and EFH, as it represents creditors of both companies.

25           Now, I understand that that allocation issue isn't

1    technically at issue in this adversary proceeding, Your

2    Honor, but as I've seen in this case, just because it isn't

3    teed up as an issue doesn't mean that it's not going to get

4    resolved in 9019 motion settlement resolution, and so I just

5    wanted to make that point.

6           Your Honor, in sum, we're not looking to add a

7    multiplier to these proceedings, we're looking for a seat at

8    the tent so we can have an understanding about what's going

9    on.  We didn't serve any additional discovery last Friday

10   when the discovery deadline came.  We've reviewed what's

11   been filed by the various parties, we're interested in what

12   the answers to that discovery is.  But, Your Honor, we have

13   concluded that it is necessary for us to intervene to

14   protect our interests and the interests of otherwise

15   unrepresented un-manifested asbestos claimants.

16          Thank you.

17          THE COURT:  Thank you.

18          Mr. McKane?

19          MR. MCKANE:  Thank you, Your Honor, and I'll be

20   brief.

21          Your Honor, it's important to put the asbestos

22   objectors' motion to intervene in context and the context is

23   that there are four other intervenors that are already

24   involved in that adversary.  So with those four other, we

25   have 14 law firms proceeding.  Ultimately this boils down

1    to, first, we don't believe the adversary proceeding will

2    affect the interests of the asbestos objectors and, second,

3    even if it did affect those interests, the debtors, the E-S

4    Side Committee and the other intervenors are adequately

5    protected in those interests.

6          So specifically what we're saying is, under Rule

7    24(a), Mr. Hogan show that somehow we're impairing those

8    interests.  He goes back to 1109, 1109 then goes back to

9    standing.  What do you have to prove for standing, you know,

10   back to first-year -- you know, contra -- common law.

11   Injury in fact that's concrete, distinct and palpable, and

12   actual or imminent, and it's actual or imminent where I

13   think Mr. Hogan fails as of now, right?  So you look at

14   where he is now.  Now he cannot establish that this stand-

15   alone proceeding about whether the termination fee is

16   payable to NextEra impacts the asbestos objectors.

17          When he refers to estate assets, what are we

18   talking about?  We're talking about EFH and EFIH.  And a

19   year ago, Your Honor, you concluded that, you know, the

20   termination fee is not an asbestos claimant issue.  Why?

21   Because under the plan proposed then, under the plan

22   proposed now, under every plan that we've proposed, the

23   claims are either reinstated or discharged.  And therefore

24   whether the fee is triggered doesn't directly impact his

25   interests, right?  That was part of the record that was very

1     clear last year.  So if the fee is triggered, value isn't

2     taken away from the reinstated asbestos claimants, and if

3     the fee is not triggered, there's no benefit to the asbestos

4     objectors because the additional money won't flow to them.

5     Their claims ride through or they're discharged.

6             So, Your Honor, under any other outcome, they

7     can't -- whether -- where do they go?  They say, okay, what

8     about an alternative plan?  What about an alternative

9     context?  Your Honor, we're asking for the Court to deny the

10    motion to intervene without prejudice, because right now

11    based on the current context of this motion and this plan as

12    you evaluate their interests, there's no basis for them to

13    say that it's actual or imminent.  If down the road there

14    was an alternative plan that put forward the 524(g) trust

15    that Mr. Hogan seeks or some alternative construct and their

16    interests may be affected that they can prove it might be

17    more imminent, they can refile at that point in time.  But,

18    Your Honor, we think that that is at this point in time,

19    looking at all the plans that we've filed in the last three

20    and a half years, remote or speculative, not actual or

21    imminent.

22            And, Your Honor, when you say to yourself what if

23    we are in that non-reinstatement scenario, what are we

24    really talking about?  It's not claims against the asbestos

25    debtors.  The only potential claim would be a claim against

1    the EFH estate and that's clear under Section 8.5 of the

2    merger agreement.  It's only the company or EFIH that's on

3    the hook for any termination fee.  And as Your Honor knows,

4    the asbestos claims are legacy liabilities, EFH is the

5    ultimate parent with never having any operating liabilities.

6    So they would have to -- you would have to conclude in a

7    scenario that's not currently before you, so in a non-

8    reinstatement scenario, that there would be a potential

9    allowed claim by an asbestos debtor against the ultimate

10   parent that never had any operations, and that to us seems

11   speculative or remote.  And that's why we don't believe that

12   they have sufficient standing and therefore no basis for

13   intervention as a matter of right under 24(a).

14          So then you pivot to -- sorry, bad word -- you

15   transition to permissive intervention and there, Your Honor,

16   we think their interests are adequately covered.  Who are

17   the asbestos objectors?  Two of the asbestos objectors are

18   members of the EFH committee, the others haven't filed

19   proofs of claim.  So those who haven't filed proofs of claim

20   are discharged under any plan because they failed to file a

21   claim under the bar date.  It's a bar date issue, so it's

22   really not even a plan issue.  The others have to be

23   adequately represented by the EFH committee and while there

24   may be conflicts, the debtors don't weigh in on this, maybe

25   there are conflicts between the EFH committee and the

1    asbestos objectors on other issues, on this issue they have

2    to be aligned.

3           And so with that, Your Honor, we think there is no

4    allocation issue, as Mr. Hogan acknowledges, and so if the

5    EFH -- between the debtors and the EFH committee all

6    vigorously opposing the termination fee, we think their

7    interests are adequately represented.  And, Your Honor, I'm

8    sure you're wondering, what's the harm?  What's one more

9    person at the table?  Your Honor, we -- as the e-committee

10   professionals know best, they've had to work and coordinate,

11   you know, discovery with the asbestos objectors and

12   everything else.  For example Mr. Kazin (ph), who takes the

13   lead in the depositions, he doesn't travel, at least he

14   doesn't travel from the West Coast, so you have to set up

15   video feeds for Mr. Kazin to participate and we have to

16   allocate time for the asbestos objectors.

17          To be absolutely clear, NextEra is standing on the

18   Federal Rules that we get seven hours for any deposition.

19   So to the extent there are depositions and we're allocating

20   time between the debtors and Elliott and the committee and

21   the EFH indenture trustee and the EFIH indenture trustee,

22   and while they may be Elliott me-too's and allocate their

23   time to Elliott, to have another person to say that they

24   need additional time, that their interests aren't protected

25   for that same seven hours, those are the kind of practical

1    concerns that we have.

2             So we're not saying no, never, we're just saying

3    there's no basis to do it now and, therefore, we ask that

4    the Court deny the motion without prejudice.

5             THE COURT:  All right.  Thank you.

6             Anyone else?  Mr. Hogan, reply?

7             MR. HOGAN:  Thank you, Your Honor.  I'll be brief.

8    As I said earlier, the sands are shifting here.  The

9    conflicts that I recited in my opening statements remain as

10   we see them.

11            With regard to standing under 24(a)(2), Your

12   Honor, it's a very flexible standard and it's a practical

13   analysis that looks at the facts and circumstances of each

14   case, as you're well aware.  And it's our position that

15   we've satisfied those requirements, that we're entitled to

16   be at -- inside the tent, as it were, and that we should be

17   allowed to intervene in this matter.

18            Thank you.

19            THE COURT:  Thank you, Mr. Hogan.  All right.

20            While I am going to deny the motion, I find that

21   in order for a mandatory intervention to be in play the

22   movants have to establish constitutional standing.  And I

23   agree with Mr. McKane, it really comes down to is there any

24   actual or imminent harm that's flowing towards the movants

25   that would give them a reason or standing, constitutional

1     standing to appear in the adversary proceeding over the

2     termination fee, and there is not.

3              As we sit here today, the debtors have a plan on

4     file.  That plan continues to allow for the reinstatement of

5     asbestos claims where the movant filed a timely proof of

6     claim.  Under that plan, this is the one on file, whether or

7     not $275 million is owed to NextEra is neither here nor

8     there, completely unaffected, those claims are completely

9     unaffected.

10             With regard to the un-manifested claimants who did

11    not file a proof of claim, there is a bar date that is a

12    final non-appealable order that I have ruled on numerous

13    times.  This is not a plan issue, this isn't an intervention

14    issue, that is done and dusted, and they simply have no

15    standing to participate in any way.  They're not creditors

16    to the estate at this point -- I mean, well, they're

17    creditors, but they're going to be discharged under the

18    current plan.  So that doesn't give rise to intervention

19    under the constitutional standard, so there is no standing.

20             And then if we go to permissive intervention, I

21    agree again with Mr. McKane's presentation that there is

22    full and fair representation of their interests by the

23    numerous parties who have already intervened in the estate,

24    including the fact that a committee that contains two of Mr.

25    Hogan's clients is already a party that has intervened by

1    agreement in the case.  And, again, the others are un-

2    manifested claims that are subject to disallowance under the

3    bar date order.  So I believe that in a sense they're not

4    entitled to representation, basically, at this point.

5              So, based on all of that, I will deny the motion.

6              MR. MCKANE:  Your Honor, may I approach with the

7    proposed order?

8              THE COURT:  Yes.

9         (Pause)

10             THE COURT:  Oh, and yes, just to be clear and this

11   is what the order says, this is without prejudice.  So if

12   the facts change and they might in this case, who knows, and

13   their constitutional standing arises, of course the movants

14   can come forward with an amended or substitute motion.

15             All right, I have to sign that order.  What about

16   the other order?

17             MR. MCKANE:  Your Honor, I just received some

18   comments from Mr. Galardi, which are I think totally fine,

19   but rather than submitting a delineated order, we can clean

20   it up and then submit it to Your Honor later today?

21             THE COURT:  Okay, that's fine.  Submit it under

22   COC, that's fine.

23             MR. MCKANE:  Thank you.

24             THE COURT:  And we have a status conference the

25   27th at 11:00 a.m.

1           MR. MCKANE:  Yes, Your Honor.  Thank you.

2           THE COURT:  Okay.  Anything else for today?

3           MR. MCKANE:  Not today, Your Honor.

4           THE COURT:  All right, thank you very much.  We're

5    adjourned.

6        (A chorus of thank you)

7        (Whereupon these proceedings were concluded at 12:36

8    PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2                           RULINGS

3                                                      PAGE

4     The Elliott Funds' Motion to Reconsider in Part the

5     September 19, 2016 Order [Dkt. No. 9584] Approving

6     the NextEra Termination Fee [D.I. 11636; filed

7     July 29, 2017]                                    47

8

9     Motion of Shirley Fenicle, William Fahy, John H.

10    Jones, and David Heinzmann to Intervene Pursuant to

11    Rule 24 of the Federal Rules of Civil Procedure and

12    Rule 7024 of the Federal Rules of Bankruptcy

13    Procedure [Adv. D.I. 27; filed August 25, 2017]    76

14

15    Asbestos Motion                                    91

16

17

18

19

20

21

22

23

24

25

Page 96

1                      C E R T I F I C A T I O N

2

3    We, Dawn South, Jamie Gallagher, and Tracey Williams,

4    certify that the foregoing transcript is a true and accurate

5    record of the proceedings.

6    Dawn South    Digitally signed by Dawn South
                   DN: cn=Dawn South, o=Veritext, ou,
                   email=digital@veritext.com, c=US
7    _____    Date: 2017.09.20 11:26:43 -04'00'

8    Dawn South

9    Certified Electronic Transcriber

     Jamie Gallagher    Digitally signed by Jamie Gallagher
                        DN: cn=Jamie Gallagher, o=Veritext, ou,
                        email=digital@veritext.com, c=US
10   _____    Date: 2017.09.20 11:27:03 -04'00'

11   Jamie Gallagher

12   Certified Electronic Transcriber

     Tracey Williams    Digitally signed by Tracey Williams
                        DN: cn=Tracey Williams, o=Veritext, ou,
                        email=digital@veritext.com, c=US
13   _____    Date: 2017.09.20 11:27:32 -04'00'

14   Tracey Williams

15   AAERT Certified Electronic Transcriber CET-914

16

17

18   Date:  September 20, 2017

19

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501

| & | |
|---|---|
| **&** 2:8 3:2,9,15,20 | |
| 3:25 4:11 5:1,6,22 | |
| 6:22 7:1 8:5,21 | |
| 50:14 57:20 81:25 | |

| 1 | |
|---|---|
| **1** 40:19 80:22,23 | |
| **1.33** 24:12 | |
| **10** 47:10 51:2 | |
| **100** 62:7 | |
| **10:03** 1:19 | |
| **10th** 71:17 | |
| **11** 1:3 53:5 | |
| **1109** 81:1,7,8 87:8 | |
| 87:8 | |
| **11501** 96:25 | |
| **11636** 2:14 95:6 | |
| **11837** 2:3 | |
| **11838** 2:10 | |
| **11:00** 47:12 93:25 | |
| **11:14** 47:12 | |
| **11:18** 50:9 | |
| **11:37** 50:9 | |
| **14** 2:9 86:25 | |
| **14-10979** 1:4 | |
| **158** 10:15 | |
| **17-50942** 1:10 | |
| **180** 40:14 | |
| **19** 1:18 2:13 48:22 | |
| 95:5 | |
| **19th** 8:24 11:20 | |
| 12:11 15:5,9,14 | |
| 15:20,24 16:16,17 | |
| 16:25 24:7 26:19 | |
| 26:25 29:1,21,23 | |
| 30:2 31:11,17 | |
| 32:23,24 35:1 | |
| 38:13 40:8 43:19 | |
| 45:24 72:10 | |

| 2 | |
|---|---|
| **2** 31:22 40:19 | |
| 91:11 | |

| 20 | 96:18 |
|---|---|
| **200** 83:9 | |
| **2011** 10:5 | |
| **2015** 11:9 | |
| **2016** 2:13 11:20 | |
| 26:19 49:9 95:5 | |
| **2017** 1:18 2:4,9,10 | |
| 2:14,20,23 24:9 | |
| 95:7,13 96:18 | |
| **24** 2:17 80:22 87:7 | |
| 89:13 91:11 95:11 | |
| **240** 40:14 | |
| **25** 2:20,23 95:13 | |
| **25th** 15:12,20,25 | |
| 16:13 22:3 29:22 | |
| 29:24 30:4 51:15 | |
| 51:17 | |
| **26** 16:13 | |
| **26th** 15:12 42:6 | |
| 55:5 71:16 72:10 | |
| 72:11,25 | |
| **27** 2:19 95:13 | |
| **275** 10:9 12:6 | |
| 17:10 19:19 20:11 | |
| 20:24 36:5 47:19 | |
| 51:7 82:4 92:7 | |
| **27th** 52:20 93:25 | |
| **28** 2:23 10:15 | |
| **29** 2:4,10,14 95:7 | |

| 3 | |
|---|---|
| **3** 9:23 11:23 40:19 | |
| **30** 31:22 39:1 | |
| **300** 28:21 35:17 | |
| 36:3 37:20,24 | |
| 96:24 | |
| **30th** 55:4 71:15 | |
| 72:11,25 | |
| **330** 96:23 | |

| 4 | |
|---|---|
| **4** 13:25 14:5 40:19 | |
| 46:24 | |
| **418** 10:5 | |

| 47 | 95:7 |
|---|---|

| 5 | |
|---|---|
| **5** 47:10 71:17 | |
| **50** 17:10 | |
| **503** 11:23 38:15 | |
| 40:18 | |
| **524** 84:16 88:14 | |
| **59** 9:23 43:16 | |
| 45:19 | |

| 6 | |
|---|---|
| **60** 9:23 43:16 | |
| 45:19 | |
| **60s** 21:4 | |

| 7 | |
|---|---|
| **7** 17:18 31:22 51:2 | |
| **7024** 2:18 80:23 | |
| 95:12 | |
| **76** 95:13 | |

| 8 | |
|---|---|
| **8.5** 89:1 | |
| **824** 1:16 | |
| **85** 19:20 | |

| 9 | |
|---|---|
| **9019** 57:1,11 62:8 | |
| 62:9 67:23,25 | |
| 68:8 76:4,25 86:4 | |
| **91** 10:5 95:15 | |
| **914** 96:15 | |
| **9584** 2:13 95:5 | |

| a | |
|---|---|
| **a.m.** 47:12,12 50:9 | |
| 50:9 93:25 | |
| **aaert** 96:15 | |
| **abid** 6:9 | |
| **ability** 30:3 34:3,3 | |
| 60:11 61:25 62:6 | |
| 62:13 63:23 65:3 | |
| 65:21 67:14 68:15 | |
| 68:19 77:4,11 | |
| **able** 55:15 58:9,10 | |
| 58:11 64:20 68:13 | |

| 74:21 | |
|---|---|
| **absence** 23:16 | |
| **absolutely** 9:8 | |
| 52:5 71:14 90:17 | |
| **accept** 33:17 | |
| **accepted** 10:14 | |
| **accomplished** | |
| 28:22 | |
| **accounted** 23:3 | |
| **accurate** 96:4 | |
| **acknowledge** | |
| 12:13 66:13 | |
| **acknowledged** | |
| 28:4 35:1 67:20 | |
| **acknowledges** | |
| 62:4 90:4 | |
| **acknowledging** | |
| 69:16 | |
| **acquiescing** 43:9 | |
| **acquisition** 32:20 | |
| **act** 42:14 | |
| **acted** 42:15 43:6 | |
| 43:11 | |
| **action** 25:11 46:3 | |
| 72:18,23 | |
| **actions** 77:4 | |
| **actively** 61:24 | |
| **actual** 11:24 12:8 | |
| 18:2,6,18 19:11 | |
| 38:11,15,23,24 | |
| 39:4,9 40:9,23,24 | |
| 40:25 87:12,12 | |
| 88:13,20 91:24 | |
| **add** 22:5 70:2 | |
| 75:6,8 86:6 | |
| **added** 75:9 | |
| **adding** 74:8 | |
| **additional** 65:18 | |
| 66:4,7 69:10 75:6 | |
| 86:9 88:4 90:24 | |
| **address** 37:15,17 | |
| 38:6 43:13 45:22 | |
| 63:11 | |

addressed  45:15
addressing  60:14
  61:2
adds  13:4 33:7
  70:1
adequate  15:24
adequately  85:8
  85:19 87:4 89:16
  89:23 90:7
adjourned  94:5
administered  1:5
administrative
  36:24 42:19 63:18
  65:19 72:21 83:7
admit  65:24
admittedly  67:9
adv  1:10 2:19,23
  95:13
advance  18:6
  66:16,17
adversary  8:10
  14:10 20:25 51:5
  53:18 55:5,16
  58:17 59:9 60:25
  65:2 67:12 80:16
  80:24 81:3,13
  85:12 86:1,24
  87:1 92:1
adverse  64:22
advocate  72:8
advocates  70:13
affairs  84:9
affect  18:7 81:15
  87:2,3
afternoon  52:24
  69:3 78:17
agenda  8:8
agent  6:3
ago  8:24 9:12 11:3
  16:22 47:17 49:20
  87:19
agree  10:17 34:4
  34:4 36:1 39:12

39:12 43:3 45:18
57:24 58:7 59:21
59:22,22 68:7,8
69:5,20 84:14
85:11 91:23 92:21
agreed  23:19
  32:19 34:20 84:3
agreeing  43:10
agreement  2:3
  11:22 14:4 17:19
  21:10 23:14,25
  24:2,24 27:19,20
  27:24 33:14 36:16
  37:6 47:1,6,8
  48:19 51:6 54:20
  55:21 64:4,17
  65:1 71:23 79:19
  79:21 83:3 84:12
  89:2 93:1
agrees  27:16
  59:20
ahead  71:19
ain't  12:22
akin  6:6
al  1:4 2:7
albeit  32:5
alexa  4:4 57:19
aligned  90:2
allegation  26:16
  26:21,25 31:2
  61:2 77:2
allegations  77:1
alleged  63:12
  74:21
allegedly  63:13
alleviate  59:17
alliances  43:3
allocate  90:16,22
allocating  90:19
allocation  13:15
  59:12,14 63:10
  67:9 85:23,25
  90:4

allow  68:22 92:4
allowance  14:9
  45:9 59:9
allowed  14:12
  19:6 22:11 89:9
  91:17
alternative  17:13
  17:13,15 21:8,11
  23:13 27:8 36:17
  84:6,21 88:8,8,14
  88:15
ambiguity  23:25
amco  85:20
amended  53:20
  54:1 66:8 70:15
  93:14
amending  67:15
amendment  84:7
amicus  55:10 57:8
  63:25 71:13,21
  72:12 73:9
amount  19:20
  22:6 29:12 32:18
  36:9 47:19 84:21
analysis  22:14
  39:15 48:1 91:13
ancillary  45:16
anderson  6:2
anderson's  16:2
andrew  4:3
anniversary  8:24
  9:1
answer  31:24
  41:14
answers  86:12
anticipate  82:6
  83:8
anticipated  19:10
anticipatory
  71:23 72:1
anybody  33:6
anyway  36:9 37:7

aparna  3:7 8:6
apologize  74:17
  79:5
apparently  45:24
appeal  10:20
  12:14 13:9 25:12
  32:8 35:18 36:20
  42:13 43:20 44:5
  48:18 83:15,16,17
appealable  92:12
appealed  17:6
  36:23 43:19 49:25
  83:15
appear  92:1
appellants  83:20
apple  37:2
applicability
  64:15
applicable  80:23
application  2:6
  13:9 48:16 51:4
  64:4 73:20,22
applied  11:22
  14:22
apply  40:21 41:2
appreciate  44:17
appreciated  44:15
approach  10:13
  12:19 93:6
appropriate  13:2
  15:6 25:4 27:25
  33:7 49:15 57:15
  60:16,16 68:1
  73:14 77:21
approval  10:9
  16:1 17:9 19:8
  21:13 23:4 36:15
  36:21 37:2 43:7
  44:4 45:6,8,17
  46:9 48:11 49:5
  62:10 63:14,19
  64:17 71:9 77:23

**approve** 17:19
  18:1 19:17 27:7
  33:3,5 36:7,11
  48:23 49:1,3
  76:20
**approved** 8:25
  16:24 17:3 18:19
  19:22,23,25 24:19
  26:18,22 28:11,18
  29:10 31:12,18
  33:16 40:3 45:8
  46:7 48:14 51:8
  64:6,7 83:14
**approving** 2:13
  11:15 12:20 24:23
  39:18 47:18 48:7
  49:15 95:5
**appx** 10:5
**april** 41:12 71:17
**area** 66:14
**arguably** 35:24
**argue** 81:11 82:9
**argued** 10:20 69:9
  70:10 81:11 82:19
**argues** 84:23
**arguing** 29:22
  32:21
**argument** 9:11
  13:16 28:9 29:23
  33:11,13,15,23
  34:5 52:14 69:12
  82:8 85:23
**arguments** 26:9
  26:10,12 41:25
  45:6 66:16,17,19
  67:1,3 73:1,7,8
  75:18,19 85:6
**arises** 93:13
**article** 81:9
**articulate** 79:18
**asbestos** 8:11
  10:19,21,25 12:14
  13:9 43:20,24

80:15,17,18,19
  82:12,14,17 83:14
  83:24 84:11,15,24
  85:1,3,7,8,13,14
  85:18,19,22 86:15
  86:21 87:2,16,20
  88:2,3,24 89:4,9
  89:17,17 90:1,11
  90:16 92:5 95:15
**aside** 13:8
**asked** 39:21 42:16
  73:21
**asking** 34:7 61:21
  62:5 73:12 88:9
**aspect** 41:16
  73:18
**assert** 21:7
**asset** 28:23 54:20
**assets** 39:1 83:2
  87:17
**assume** 49:24
  52:10 57:11
**assuming** 54:11
  59:3,20
**assumption** 19:18
**athenisous** 10:4
**attempt** 15:25
**attempting** 9:11
  64:3 68:13
**attention** 28:2
  78:21
**attorney** 3:16,21
  4:7,12,17,22 5:2,7
  5:12,23 6:3,7,18
  6:23 7:9 44:12
**attorneys** 3:3,10
  4:1 5:17 6:12 7:2
**auction** 18:8,12
  18:14
**august** 2:4,9,10,20
  2:23 95:13
**austin** 22:22,23
  24:9

**authority** 50:25
  56:10 57:11,25
  61:13,14 63:11,16
  65:12,13,14 66:22
  74:4 76:25
**authorized** 66:2
  66:11 75:3 76:8
**authorizing** 2:2,7
  66:10
**avalanche** 42:17
**aveley** 25:8
**avoid** 13:12 14:25
  15:25 56:24 57:13
  59:18 65:18
**avoiding** 57:1
**aware** 41:8 79:14
  80:22 91:14

**b**

**b** 1:21 11:23
  38:15 40:18,19,19
  40:19,19 81:1
**b's** 40:19
**back** 12:1 15:10
  21:4 22:24 24:9
  24:13 25:16 29:4
  30:7 37:2 38:5
  41:5 55:14 61:9
  67:6 70:5 72:12
  72:24 74:20 87:8
  87:8,10
**bad** 22:19,20 40:6
  40:7,22 89:14
**baked** 44:7
**balance** 74:9
**ballgame** 26:20
**bamboozled** 21:7
**bank** 6:7,12 36:19
**bankruptcy** 1:1
  1:15,23 2:19
  10:14 17:14 26:23
  28:23 29:14 32:24
  40:17 44:12 75:2
  80:23 83:23 84:1

85:11 95:12
**bar** 85:22 89:21
  89:21 92:11 93:3
**based** 26:15 32:2
  39:18 45:13 48:9
  88:11 93:5
**basic** 31:2 70:5
**basically** 32:13
  74:21 75:13 93:4
**basis** 24:22 26:12
  31:4,6 57:4 61:15
  63:19 67:12,18
  68:9 69:11 70:11
  70:11 76:15 88:12
  89:12 91:3
**bayard** 5:11
**beginning** 47:3
**behalf** 8:5,21
  20:19 43:1 50:14
  53:12 57:20 60:3
  69:4
**belief** 77:17
**believe** 9:1 18:1
  20:23 24:11 29:14
  30:4 31:7 52:25
  55:18,24 58:23
  63:21 64:11,22
  65:11 68:21 70:4
  70:12 71:11,17
  72:1,5,6 73:9,10
  73:25 76:15 77:2
  79:21 81:1 83:16
  87:1 89:11 93:3
**believed** 16:9
**believes** 62:14
  85:3
**bench** 21:20 39:16
**beneficial** 74:12
**beneficiary** 73:4,5
**benefit** 11:24 12:8
  34:14,21,25 35:1
  38:12,15,24 39:5
  39:9 40:9,23,24

40:25 46:11,16
88:3
**benefits** 22:18
24:23 38:9
**berkshire** 40:11
**best** 52:14 53:3,20
56:2,7 62:14
90:10
**bet** 39:25
**better** 17:15 21:9
21:14 23:17 64:6
64:8 65:7
**beyond** 18:15
19:10 21:12 43:12
**bhe** 64:17
**bid** 18:24,25 19:1
34:19,23 38:25
39:1,3,6 40:11
46:16
**bidder** 28:20,23
33:9 34:21,23
46:10,15
**bidders** 29:9,12
33:8
**bidding** 18:7
**bided** 48:17
**bielli** 5:22
**billion** 39:1
**bit** 61:10
**bite** 37:1
**block** 44:2 62:6
62:13
**blocking** 68:4,5
**bloom** 5:25
**board** 60:24 72:14
74:13
**boards** 65:12 75:3
**boils** 57:24 86:25
**boss** 77:19
**bottom** 26:14
**bought** 41:12
**box** 22:9

**branzburg** 6:11
**breach** 62:2,4
71:23 72:1
**break** 10:9 11:13
12:20 18:13 19:19
19:20 20:11,24
21:8,15 23:11,16
24:1 40:22 42:23
79:1
**bremecke** 6:14
**brief** 14:16 28:17
30:10,21,22 31:1
36:3 47:15 48:1
57:8 69:9 71:21
82:1 86:20 91:7
**briefed** 9:10
**briefing** 85:21
**briefly** 43:1 45:3
**briefs** 55:11 63:25
66:15 71:13 73:9
**bring** 34:19 65:7
67:23 72:23 76:8
**broadly** 54:16
**brought** 55:4
**brown's** 24:8
**buchanan** 7:5
69:3,4
**build** 78:2
**building** 44:2
**bullard** 11:9
12:21 13:11
**burden** 30:12
35:24 48:5 75:14
75:15 80:17
**business** 23:5
38:20 40:20
**buy** 34:4,4
**buying** 28:23

**c**

**c** 3:1 8:1 96:1,1
**calculated** 22:7
**calendar** 51:1
52:8

**call** 9:14,15
**called** 28:2 37:22
**care** 33:16 46:22
78:18
**careful** 80:10
**case** 1:4 8:15
12:18 20:3,6
22:20 23:7 25:17
30:10,16,17,18
34:14 37:11 46:13
50:23 51:4 60:9
60:13,15 61:24
68:2,13,15,17,18
68:20 70:19 73:13
75:13 77:14,22
80:19 81:3,17,19
81:25 82:23 83:7
86:2 91:14 93:1
93:12
**cases** 10:3 30:16
34:18 40:18 85:12
**cast** 25:25
**caused** 30:21
**causes** 72:18,23
**cede** 8:15 53:10
**cert** 71:9
**certain** 11:11
18:19 28:2 43:21
71:11,20 74:1
**certainly** 34:2
35:13 50:2 51:11
76:19 77:14,25
78:21
**certainty** 83:21
**certification** 78:8
**certified** 96:9,12
96:15
**certify** 96:4
**cet** 96:15
**challenge** 11:4
39:24
**challenged** 81:10

**challenges** 11:1
**challenging** 57:2
65:14
**chance** 23:24
35:23
**chancery** 70:19
74:25
**change** 13:8 30:3
82:22 83:19 84:2
84:12 93:12
**changed** 17:16
49:14
**changes** 54:9
**chapter** 1:3 17:17
**characterization**
16:2
**characterizes**
15:24
**charge** 77:20
**charm** 22:21
**chicken** 33:6
**chorus** 94:6
**chose** 44:24
**christopher** 1:22
6:20
**circuit** 10:5,14
22:12 30:16 68:25
74:25 75:13 81:2
81:6
**circuit's** 11:10
12:24
**circumstance**
15:16 19:7
**circumstances**
12:8,9 15:8 21:12
22:23 23:11,15
24:1 48:14 49:6
49:12,17 73:25
76:6 91:13
**citation** 12:16
**cite** 30:10
**cited** 13:11,11
23:10 45:13

civil 2:18 95:11
claim 38:4,5 42:19
  44:24 54:25 63:18
  66:4,6 71:21,22
  88:25,25 89:9,19
  89:19,21 92:6,11
claimant 87:20
claimants 80:18
  82:14 85:3,8,20
  86:15 88:2 92:10
claims 55:3 56:9
  61:5,24 62:1 65:8
  66:3,8 69:11,12
  69:17 70:16,18
  71:12 72:2,22
  75:6,9 76:22 77:6
  77:7,10,12 80:19
  80:20 82:12,12,17
  82:18 83:25 84:11
  84:25 85:1 87:23
  88:5,24 89:4 92:5
  92:8 93:2
clarification 22:4
clarify 16:6,7
clarifying 22:3
clean 93:19
clear 10:16 16:10
  21:10,11,13 23:7
  23:8,15 27:10
  28:13 32:16 43:12
  44:11 69:19 75:1
  75:12 81:6 88:1
  89:1 90:17 93:10
clearly 28:17
  32:17 46:3 55:25
  58:5 70:3 85:3
clerk 8:2 47:13
  50:10
clever 39:16
client 26:10,24
  28:20 32:13 36:19
client's 34:3

clients 51:3 92:25
clip 17:9 19:22
close 19:4
closed 21:14
closing 19:8
coast 90:14
cobb 5:1
coc 93:22
code 40:17
coextensive 81:8
colleagues 8:6
collective 50:19
  51:6 52:13,16
colorable 69:11
  69:17
come 29:13 30:8
  30:19 31:23 37:2
  38:5 46:15 47:11
  57:2 58:11,11
  62:9 63:16 66:15
  68:19 75:5,17
  76:2 80:16 83:25
  93:14
comes 9:24 19:7
  33:6 34:7 46:10
  54:7 55:1 56:10
  61:14 62:6 76:21
  91:23
comfort 74:2
coming 30:12
  58:6 68:23
commenced 14:9
  14:10 41:7 55:6
comments 93:18
commercially
  43:6,11
commissioner
  16:1,9
commissioner's
  16:7
commitments
  36:19

committee 4:1,12
  50:17 53:20 54:12
  55:18 56:7,18,19
  56:22,23 57:10,15
  57:21,25 58:7,16
  58:25 59:3,5 60:5
  60:10 61:15 62:2
  62:11,13,20 66:17
  68:22 69:7 70:4
  73:7,7,17,20,22
  73:24 74:4,4,10
  75:18 76:23 77:10
  78:5 82:1 84:23
  85:9,9,16,18,21
  87:4 89:18,23,25
  90:5,9,20 92:24
committee's 74:8
committees 54:12
common 55:13
  64:25 72:4,11
  73:6,8 87:10
communications
  55:7,8
companies 85:24
company 1:8 37:3
  37:4 89:2
compelling 27:11
complaint 42:20
  50:24 53:21 54:2
  54:2,5,23 55:9
  65:16 67:15 69:16
  70:15,19 71:17,18
  72:19
complete 16:16
  60:9
completely 32:22
  35:19 36:1 54:9
  92:8,8
complied 64:9
component 79:12
comport 84:15
comprising 67:16

compromise
  58:24 68:3,13,15
  68:20 70:3 73:15
compromised
  68:1
computer 52:8
concede 15:15
conceded 69:15
concedes 16:5
conceivable 83:22
concept 17:12,15
concerned 48:21
  54:1
concerning 27:6
concerns 56:20
  58:1 83:1 91:1
conclude 38:14
  89:6
concluded 86:13
  87:19 94:7
conclusion 22:5
  47:22 49:14
concrete 87:11
conditional 18:16
conditionality
  18:16 19:6,9 40:3
conditions 14:4
  18:13,20 19:3
  20:10 35:15 39:2
  39:4,9 40:2 47:5
conduct 22:13
conducted 26:25
confer 50:5,16
  51:3
conference 51:17
  64:2 93:24
confers 75:23
confidence 74:3
  74:10,19
confirm 79:25
confirmation
  82:22

**confirmed** 17:21
82:24 83:19
**confirms** 83:23
**conflict** 54:24
57:1 59:2,4 60:22
60:24 63:8,9,12
63:15,19 67:7,8
67:10 70:5,25
71:3,7 72:2,14,24
73:11 77:3
**conflicted** 59:6
63:13 70:17,22
71:12 74:21 85:10
85:16,22
**conflicts** 57:14
61:2,17 63:9
70:12 89:24,25
91:9
**confused** 12:4
**confusion** 16:1,7
20:21
**connection** 77:6
77:11
**consensual** 83:25
**consensus** 77:14
77:15,18 78:2
**consent** 2:2 58:13
58:16,19,20 60:5
74:11 76:23 77:11
**consequences**
44:25
**consider** 38:3
54:10
**considerably**
83:19
**consideration**
18:22 38:17
**considered** 24:22
49:8
**consistent** 10:1
12:21 80:4
**consistently** 77:13

**consonant** 10:2
**constitutes** 48:10
**constitution** 81:9
**constitutional**
91:22,25 92:19
93:13
**construct** 88:15
**consultants** 36:8
36:25
**consuming** 84:18
**consummated**
27:8 51:8
**contain** 43:21
**contained** 35:15
**contains** 92:24
**contemplated**
33:4
**contend** 10:12
11:19 12:23 15:17
16:15 31:10 36:4
**contends** 11:25
12:3 15:7
**contested** 10:22
14:9
**context** 64:18
75:1,2 86:22,22
88:9,11
**continually** 36:25
**continue** 17:11
50:1 71:10
**continues** 92:4
**continuing** 66:8
**contra** 87:10
**contract** 57:6 61:7
63:20,21 64:9,12
64:24,24
**contradicted**
28:13
**contrary** 17:18
41:10
**contributed** 84:22
**contribution** 38:4

**control** 58:1 69:21
**conversation** 34:6
**cooperate** 57:12
**coordinate** 90:10
**corp** 1:4,7 2:6
4:17 5:23
**correct** 58:21
**correctly** 44:10
**cost** 36:19
**costs** 65:19
**couch** 21:20 39:16
**counsel** 2:9 12:2
39:7 44:16 45:5
45:19,21 46:5,23
53:23 54:22 55:23
69:6 70:13 73:11
**counterparties**
61:7 63:23
**counterparty**
63:20 64:11,12
**country** 96:23
**couple** 26:9
**course** 27:16
37:14 77:22 93:13
**court** 1:1,15 8:3
8:14,17 9:3,8
11:21 12:5,17,22
13:6,6,19 14:18
15:4,12 16:8,25
17:1,2,12,14,19
17:22 18:1 19:10
20:16 21:1,7,24
22:17 23:5 25:12
25:16,21,25 26:4
26:17,18 27:1
29:14 30:8 31:2
31:14,20,23 33:1
33:7,11,15,20,22
34:2,7,12,16 35:3
35:9,13,21,23
36:23 37:10,14
41:4 45:1,11,20
46:18,20 47:9,14

47:16 49:11,23
50:6,8,11 51:10
51:14,19,23 52:3
52:7,18,20,22
53:2,4,7,9 56:5
57:17 58:5,8,18
58:22 59:2,15,20
59:25 60:20 62:7
62:15,18,23 63:1
63:4 64:5 67:24
68:6 69:2,14,22
69:24 70:19,24
71:2,4 74:6,14,16
76:16,18,19 77:23
78:10,15,17,20,22
78:24 79:4,6,13
79:14,18,24 80:1
80:7,9,11,13,22
83:13,14,23 84:1
84:3,4,5,13,13,16
85:5,6,20 86:17
88:9 91:4,5,19
93:8,10,21,24
94:2,4
**court's** 10:7,9
11:9 12:21 23:1
24:22 35:10 48:8
49:12,14,15 50:20
63:19 79:22
**courtroom** 78:19
79:17 81:18
**courts** 13:11
68:11
**cousins** 5:14
**covered** 89:16
**create** 68:4 77:8
**created** 16:1
**creditor** 23:22,23
32:5 44:21,22
56:14,15 62:12
74:2 76:6,9 77:14
77:15 78:1,2

**creditors** 8:11
22:7 43:20,24
44:11 50:7,17
52:16 54:15,16
56:15 58:4 59:1
62:16,17,25 67:24
68:3,7,22 69:6
73:4 74:3,12
76:11 77:23 78:4
80:18 81:12,13,24
82:3,3,16 85:17
85:24 92:15,17
**critical** 16:19
29:14 37:20 48:25
49:13 55:2 71:14
72:9
**criticize** 41:2
**cromwell** 3:25
57:20
**cross** 6:17
**crossed** 24:2
**crystallized** 50:22
**css** 1:4,10
**current** 88:11
92:18
**currently** 89:7
**cut** 26:13 77:25

**d**

**d** 8:1 95:1
**d.i.** 2:3,10,14,19
2:23 95:6,13
**dan** 7:4 26:1
**danger** 83:6
**daniel** 3:12 7:14
**date** 17:3,6 28:15
32:3 46:2 47:20
47:24 60:17 66:20
85:22 89:21,21
92:11 93:3 96:18
**daucher** 5:20
**david** 2:17 95:10
**davis** 3:23

**dawn** 7:24 96:3,8
**day** 21:1,1 22:22
27:3 35:1 44:7
49:5 50:8
**days** 30:1 31:22
31:22,22 40:14
51:2
**deadline** 40:14,15
86:10
**deal** 18:16 23:17
25:16 37:11 40:15
41:10 42:4,4,5
43:7 49:2,4 59:3
78:1 79:10 81:20
**debate** 17:23
**debt** 41:12
**debtor** 20:22 21:2
37:5 42:3,13
55:10 57:3 59:7
63:5,22 66:16,17
66:23 67:2 68:12
69:6,15,20 73:16
75:14 76:7 77:13
85:3,9 89:9
**debtor's** 58:1 69:6
77:11
**debtors** 1:5 2:1,2
2:7 3:3,10,16 8:5
10:12,18 11:19
12:13,23 13:8,16
14:11 15:1,15,15
17:4,5,9 18:21,23
20:9,19 26:6
27:13 36:16 41:8
41:18 42:8,16
43:1 48:18 49:3
50:15 52:16 53:20
54:1,4,5,11,19,21
54:23 55:7,12,22
55:24 56:2 57:3
58:7,9,15 60:6,11
61:24 63:13,16,25
64:3,8,16 65:5,10

65:21,23 66:1,2,3
66:10,12,22 67:13
67:18 68:15,16
70:13,17,22,22
71:8,21 72:7,13
72:16,23 73:5,10
74:19 76:13,25
77:3,6,21,25
79:15,20 80:20
81:5 82:9,13 83:8
83:15,18,20 84:5
84:15,17,17 85:10
85:12,18 87:3
88:25 89:24 90:5
90:20 92:3
**decide** 9:13,18
29:17 72:14
**decided** 33:24
72:23
**decides** 9:20
**decision** 10:6 11:9
11:10 12:21 21:22
28:25 35:20,23
36:24 48:9 54:8
65:10 77:20
**decisions** 17:1
**declaration** 14:11
**declarations**
17:25
**decree** 24:10
**defend** 72:12 73:5
**defendant** 1:13
**defenses** 67:2
**deficiency** 16:11
**definition** 21:11
23:13
**defranceschi** 3:12
**defunct** 83:3
**delaware** 1:2,17
2:9 11:11 19:5
68:11 70:6 74:24
**delay** 35:25 42:10
45:20

**delayed** 11:3
**delineated** 93:19
**delorean** 24:8
**demand** 66:3,5
70:8,9 74:23,25
**demonstrate**
82:10
**denial** 27:18,20
42:6
**denied** 25:20 26:8
48:16 64:4
**deny** 68:25 78:7
88:9 91:4,20 93:5
**department** 4:21
**depending** 9:23
22:18
**deposition** 90:18
**depositions** 90:13
90:19
**derivate** 66:22
**derivative** 2:22
53:15 56:6 61:10
66:21,24 67:3
73:14 80:20
**describe** 84:9
**deserve** 78:21
**despite** 12:16
53:13 72:18
**detail** 48:1
**determination**
29:10 41:19,25
61:3
**determinative**
82:24
**determine** 15:5
16:14 18:5,17
19:11 40:8,16
**determined** 12:15
13:15 14:15 40:9
47:4 54:23 59:11
**determines** 39:22
54:18 62:14

**determining**
  13:12
**develop** 77:15
**developments**
  23:2,3 38:10
**dialogue** 79:15
  85:13
**diametrically**
  62:7
**dictates** 60:12
**dietderich** 4:3
**differ** 83:23
**difference** 56:1,8
**different** 9:22
  10:11 30:1 35:15
  36:22 38:22 39:11
**difficult** 18:17
**diligence** 18:11
**dip** 6:3
**directed** 27:23
**direction** 60:22
**directly** 83:4
  87:24
**directors** 60:23
  61:4 65:24 66:2
  66:10 67:11
**disable** 77:4
**disagree** 43:3
  53:16
**disagreement**
  53:19
**disallowance** 93:2
**discharged** 82:19
  87:23 88:5 89:20
  92:17
**disclosed** 72:6
**disclosure** 52:23
  80:4
**discovered** 72:6
**discovery** 55:7
  64:14,15,19 65:1
  72:3 75:22 86:9
  86:10,12 90:11

**discreet** 13:1
  14:20
**discuss** 50:3
**discussion** 85:23
**discussions** 42:8
  84:21
**disinterested** 61:4
  67:11
**dismiss** 69:17
**dismissed** 70:20
  83:15
**dispute** 18:21
  56:3 58:25 64:14
  65:2
**disputed** 71:8
**disputes** 55:20
  60:15
**disputing** 75:20
**distinct** 87:11
**distracted** 78:21
**distributions**
  82:15,16
**district** 1:2 11:11
  12:17 68:24 84:3
  84:4,13 85:6
**dkt** 2:13 95:5
**doc** 24:8
**doctrine** 73:6
**document** 20:9
**doing** 37:4
**dollars** 38:2
**doubts** 76:13
**draft** 49:19
**driving** 60:13
**due** 14:3,13 18:11
  48:15 49:12 59:4
  82:20
**dusted** 92:14
**duties** 76:14
**duty** 62:3,4

**e**
**e** 1:21,21 3:1,1 4:1
  4:12 8:1,1 22:6
  62:20 76:23 77:10
  87:3 90:9 95:1
  96:1
**earlier** 30:1 47:3
  64:14 80:5 82:7
  91:8
**early** 65:11,11
**earn** 18:13
**earned** 23:16
**echo** 59:16
**economic** 24:5
  82:2
**eefh** 20:24
**effect** 20:25
**effective** 2:9 82:15
  82:23
**effectively** 26:7
**efficiency** 60:12
**effort** 20:10 36:9
  65:18
**efforts** 36:6 37:24
**efh** 2:1,2 4:7,17
  5:23 6:18 22:9
  54:13 56:16,19,22
  57:21 58:4 59:5
  60:3,24 61:15
  62:1 63:22 74:3
  80:21 83:9 84:20
  84:22,23 85:24
  87:18 89:1,4,18
  89:23,25 90:5,5
  90:21
**efih** 2:1,2 6:3,23
  20:24 22:8 54:12
  56:14,19,22 57:21
  58:4 59:5 63:22
  74:2 83:9 84:23
  85:24 87:18 89:2
  90:21

**eight** 13:24
**either** 17:10 18:13
  23:25 34:4 43:22
  44:16 52:1 61:3,7
  83:25 84:12 87:23
**electronic** 96:9,12
  96:15
**eliminate** 74:1
**elliott** 2:12 5:7,12
  8:21 11:1,7,25
  12:3 15:7 20:23
  21:2 23:21 25:6
  30:7,19 31:9 32:4
  32:22 41:7,9
  44:22 50:16 53:10
  53:12 54:1,3,12
  54:17 55:3,5 56:1
  56:6,12,12 59:20
  59:22 61:10,13,16
  61:19 62:11,19
  63:8 64:14,19
  65:8,9,13 66:4,16
  67:3 68:22 69:7
  69:10,15 71:16
  72:18,20,22 73:8
  75:5,19 76:20
  77:7,16 90:20,22
  90:23 95:4
**elliott's** 8:9,9
  26:14,16 28:17
  31:1 36:3 53:14
  53:17 57:23,25
  82:1
**elliott's** 2:22
**ellis** 3:2 8:5 50:14
**emphasize** 26:9
**employ** 2:8
**employed** 20:4
**enabled** 42:11
**encourage** 77:25
**ended** 36:14
**ends** 20:21 25:17

**energy** 1:4,7,8,12
  2:6 11:10,12
**engage** 78:1
**engaged** 21:19
  24:6 65:17 75:8
**engaging** 75:7,14
**enhanced** 22:8
**enormous** 32:17
  36:9
**enter** 10:7 47:20
**entered** 9:12
  11:20 22:3 31:16
  47:17
**entering** 22:10
**entire** 31:1 42:9
**entirely** 23:7
**entitled** 20:23
  91:15 93:4
**entitlement** 14:6
  21:15
**entity** 77:19
**entry** 2:2,7
**enumerated** 23:15
**equity** 17:16
**eric** 5:20
**error** 16:15 48:10
  49:10 65:24
**errors** 9:25 11:17
  14:24 15:22 16:18
**especially** 23:2
  25:11 73:1 76:12
**esq** 3:5,6,7,12,13
  3:18,23 4:3,4,9,14
  4:19,24 5:4,9,14
  5:19,20,25 6:5,9
  6:14,15,20,25 7:4
  7:5,6,11,14
**essentially** 56:21
  60:10 67:20 74:24
  75:17 82:10
**establish** 77:3
  87:14 91:22

**established** 62:10
  76:1 81:2
**establishing** 30:13
**estate** 12:7 34:15
  34:21,25 35:2
  46:12,16 56:14,16
  62:15 73:4 78:6
  81:15 82:15 83:2
  85:1 87:17 89:1
  92:16,23
**estates** 20:24
  63:10 82:4 83:4
  83:10
**esteemed** 44:16
**et** 1:4 2:6
**etcetera** 44:15
**ethics** 54:22
**evaluate** 88:12
**evaluation** 62:16
  67:24
**evanescent** 22:17
**event** 19:16 40:14
  50:1 82:21
**events** 17:18
  19:14 38:13 40:10
  40:11 41:3
**everybody** 29:14
  32:7 38:19 41:16
  53:21,24,24 73:16
  76:18 78:25
**evidence** 32:18
  35:5
**exactly** 10:16
  13:10 14:7 17:18
  20:8 26:7 27:6
  40:1,12
**examining** 21:20
**example** 17:17
  84:14 90:12
**exceptionally**
  18:16
**exclusive** 73:21

**excuse** 26:1 27:11
**exercise** 58:11
**expanded** 18:15
  19:5
**expansions** 19:9
**expend** 28:20
**expense** 11:24
  12:7 17:11 18:2,3
  18:6,18 19:12
  20:7 38:23 39:10
  44:13
**expenses** 59:18
  83:11
**expensive** 84:18
**experiment** 24:6
**expert** 27:14
**explain** 27:15
  30:20 45:20
**explained** 66:7
**explanation** 30:23
**expressly** 45:9
**extent** 14:3,20
  22:4 43:17 52:15
  59:11 63:20 64:5
  90:19
**extort** 71:19
**extraordinary**
  27:4 36:6 49:11
  73:12,13
**eyes** 22:13

**f**

**f** 1:21 96:1
**face** 16:10 28:14
  34:18 35:19 45:7
  46:5,14
**faced** 60:14
**fact** 9:7,25 11:17
  13:23,23 14:25
  15:22 16:14,18
  19:3 21:16 24:21
  25:1 37:20 38:1
  38:10 39:7,17
  40:6,21 41:6

42:15 43:10 46:8
  46:14 49:10 63:18
  64:8,14,21,25
  65:11,15 68:10
  69:12 70:7,20,20
  71:13 73:15 79:18
  82:8,10 83:16
  87:11 92:24
**factors** 14:17
**facts** 12:8,9 13:3
  15:7 17:22 32:13
  42:11 44:10 48:10
  49:13 54:19 66:2
  73:10 91:13 93:12
**factually** 61:19
**fahy** 2:16 95:9
**failed** 49:1,3
  65:19,20 89:20
**fails** 87:13
**failure** 21:12
**fair** 92:22
**fairly** 53:14
**faith** 15:18 24:18
  68:20
**familiar** 14:8 28:7
**far** 23:14 26:12
  34:14 45:5 53:25
**farnan** 12:17
**farnan's** 11:12
**fashion** 43:6
**fast** 41:20 42:15
**faster** 42:14
**favor** 47:18
**features** 22:11
**february** 24:9
**fed** 10:5
**federal** 2:18,19
  90:18 95:11,12
**fee** 2:14 8:25 9:18
  9:21 10:10,18
  11:5,5,7,16,20,21
  11:24 12:5,7,20
  12:24,25 13:5,15

13:17,20,25 14:1
14:2,7,10,11,13
14:19,24 15:17,21
16:3 17:17 18:13
18:19 19:19,21,23
19:25 20:11,13,24
21:8,15 23:11,16
24:1 25:2 26:18
26:18 27:2,5,9,17
28:8,12,18 29:7
29:11 31:3,8,11
31:18 32:1,19,21
33:2,16,24 34:17
34:19,20,22,23
36:5 40:1,18
42:23,24 45:5,8
45:10,17,25 46:7
46:8,11,15,25
47:18,22 48:8,11
48:12,13,15,22,25
49:6,8,16,16
59:10 63:14 71:9
81:22 83:6 84:19
84:20 87:15,20,24
88:1,3 89:3 90:6
92:2 95:6
**feeds** 90:15
**feels** 29:14
**fees** 11:13 12:15
12:20 40:22 84:22
85:23
**femoral** 22:17
**fenicle** 2:16 95:9
**fewer** 29:12
**fiduciary** 56:13
59:1 62:3,4,23,24
68:5 76:14 78:6,6
**field** 54:9
**figure** 51:14
**file** 30:9,11,14
31:21 32:10 36:9
54:23 66:4 67:23
70:16 71:21 72:17

72:17 78:1 82:18
89:20 92:4,6,11
**filed** 2:3,10,14,19
2:23 20:25 29:21
29:24 30:22 36:20
42:19,20 55:10
57:7 61:15 63:25
65:9 66:3,12
71:15 72:17,20,21
75:4,7 78:3 79:11
79:12 82:12 86:11
88:19 89:18,19
92:5 95:6,13
**filing** 11:3 45:20
54:25 63:15 65:16
65:19 67:14 70:15
73:9 75:3
**fill** 75:15
**final** 9:19 10:15
10:17,17,19 11:2
11:3,8 12:24 13:2
13:4,12,22 14:15
14:19 41:17 42:5
43:21 44:8 45:6
45:14,17 48:8
84:4,9,10 92:12
**finality** 10:14 13:7
43:13,17 45:4
48:3
**finally** 12:25
59:16 65:23 73:1
**financial** 28:24
**financing** 18:11
36:12,13
**find** 12:6 30:18
38:12 46:11 49:11
61:23 68:7 91:20
**finding** 14:18
38:12,16,17
**fine** 8:14 50:8
51:11 71:6 79:24
93:18,21,22

**finger** 3:9
**fink** 4:14
**firm** 8:21 19:2
**firms** 86:25
**first** 8:23 9:17
10:8,12 11:14
12:12,12,13 13:8
15:2 21:6 25:5
26:3 32:16 38:8
40:7 42:21 43:2
46:21 55:20 60:8
61:13,19 63:7,12
70:8,16,24 71:1,8
72:17 79:19 87:1
87:10
**fishman** 2:8 3:15
**fit** 52:22
**five** 22:22 30:17
50:5
**fixed** 15:8
**flatly** 66:24
**flexible** 10:13
91:12
**floor** 19:2,2 39:3
**flow** 88:4
**flowing** 91:24
**focus** 55:4
**focused** 59:9
**folks** 53:1
**follow** 49:18
**following** 27:18
**forcing** 48:18
**foreclose** 65:3
**foreclosed** 64:10
**forecloses** 64:20
**foregoing** 96:4
**foreseen** 23:3
**form** 9:10 78:13
**formulate** 60:11
**formulated** 54:4
**forth** 12:2,10
14:16 15:10 26:6
34:19 42:16 70:15

**forthcoming** 48:2
**forum** 25:15
**forward** 24:14
28:20 29:2,11,13
30:20 34:22,23
35:7,11,14 46:16
49:24 50:21 52:17
61:25 62:9 63:16
66:8 67:5,15
68:20,23 69:16
75:6 76:9 78:25
88:14 93:14
**found** 11:23 12:17
30:17 36:17 46:13
**foundation** 19:2
**four** 55:3 70:16
72:18,22 86:23,24
**fourth** 65:5
**frame** 13:2
**frankly** 39:24
60:12,14
**freudian** 22:14
39:15
**friday** 51:16 52:2
52:3,24 79:11
86:9
**front** 22:24 43:7
49:22
**fronts** 37:7
**fruit** 12:16,17
**fruitless** 48:18
**fulbright** 5:16
**fulfill** 76:13
**full** 12:4 22:8
78:21 92:22
**fully** 11:21 12:25
20:3 39:23 44:8
**fundamental** 9:14
16:21 28:9 39:13
45:22 55:2,17
70:12 72:1,4,24
**fundamentally**
49:14

**funds'** 2:12 95:4
**further** 13:5 14:1
  42:9 45:2,10
  59:18 84:7
**futile** 66:6 70:10
  70:11 74:23
**futility** 74:25
**future** 1:4,7,8 2:6
  24:9 29:17 47:24
  57:13 83:21

**g**

**g** 4:3 8:1 88:14
**galardi** 5:9 8:16
  8:19,20,21 9:6,9
  20:16,17 21:19
  22:11 37:14,17
  43:3,14 44:12
  46:19,21 53:11,12
  57:18,24 62:3
  64:13 65:7,17
  67:20 69:23,25
  71:1,3,6 74:6,8,18
  74:24 75:17,24
  93:18
**galardi's** 33:23
  59:16,23 62:18
**gallagher** 7:24
  96:3,11
**game** 33:6
**general** 22:20
  52:13
**gentleman** 37:24
**gentlemen** 39:5
**getting** 37:9 67:4
**gigahertz** 24:12
**give** 36:20 51:24
  52:7 74:1 77:10
  91:25 92:18
**given** 15:19 47:20
  50:21 51:6 56:18
  61:4 68:21 76:23
**glantz** 2:8 3:15

**go** 18:12 23:5
  24:14 25:4 28:20
  29:4,11 33:8
  34:21,23 35:6,14
  36:10,13 38:3,7
  41:20 42:9 49:24
  52:17 56:22 61:25
  66:8 67:5 69:16
  70:5 71:6,19
  78:25 82:23 88:7
  92:20
**god** 25:6
**goes** 38:22 43:17
  55:17 82:15 87:8
  87:8
**going** 12:1 13:24
  15:2 18:7 22:13
  24:8,17 26:5
  27:14 28:20,23,25
  29:2,4,4,5,6,11,12
  29:17 33:3,4,17
  35:11 36:2,4,11
  36:20 38:5,6,7
  39:24 40:5,10
  41:17 42:5 44:3
  47:10,11,15,19,22
  48:5 52:14 53:24
  59:11 61:18 62:2
  62:3 68:2 69:13
  72:12 75:20 76:9
  76:13 78:2,25
  80:3 81:23 83:12
  86:3,8 91:20
  92:17
**good** 8:3,4,19,20
  15:18 20:18 24:18
  47:9 50:11,13
  51:13 52:9 53:6
  57:19 58:24 60:1
  60:2 68:20 69:3
  78:17 79:3 80:9
**gotten** 24:13

**government** 52:8
**grant** 48:6 68:14
**granted** 26:15
  57:10 75:25 80:25
  82:5
**granting** 68:11
  84:3
**grants** 81:1
**gray** 5:6 8:22
**great** 37:11 51:21
**greater** 83:11
**greek** 10:4
**greg** 53:12
**gregg** 5:9 8:20
**grounds** 11:1 31:1
  31:16
**group** 70:21 72:14
**guarantee** 32:20
**guess** 32:3,14 38:9
  44:24
**gump** 6:6

**h**

**h** 2:16 6:25 95:9
**half** 30:17 52:1
  88:20
**hand** 11:7 15:23
  43:18
**handle** 8:12
**handled** 57:7
  60:23
**handling** 29:15
**hands** 30:7 41:21
**hang** 44:14
**happen** 30:4
  49:20 51:25
**happened** 19:4
  27:4 28:14 29:3
  29:23 32:23
**happens** 49:21
**happenstance**
  18:2
**happy** 8:23 9:1
  33:6 34:6 51:11

**hard** 77:15
**harding** 7:6
**harm** 90:8 91:24
**harms** 74:9
**harrison** 6:11
**harsh** 25:8
**harvey** 6:11
**hate** 47:14
**head** 53:3
**heads** 53:4
**hear** 40:6 42:3
**heard** 37:19 43:4
  44:11 76:3
**hearing** 2:1,6,12
  2:16,22 12:11
  15:12,14,20,24
  16:14,24 22:2
  23:23 24:10 26:24
  29:21 30:13,20
  31:4 43:12 44:16
  48:21,24 82:6
**heinzmann** 2:17
  95:10
**help** 60:21
**high** 35:24 48:5
**higher** 17:15 21:9
  21:14 23:17 27:9
  46:10,22 75:14,15
**hiltz** 23:9 27:13
  27:21,23,25 28:3
**hiltz's** 39:19
**hindsight** 29:2,16
  31:25 40:6,7,21
  40:22 41:2
**hired** 36:8
**history** 32:23
**hogan** 7:14 78:17
  78:18,25 79:8,9
  79:14 80:8,10,12
  80:14 87:7,13
  88:15 90:4 91:6,7
  91:19

hogan's  78:11
  80:5 92:25
holders  84:25
holding  1:8
holdings  1:4,7 2:6
holiday  52:4,5
holidays  51:16
hon  1:22
honor  8:4,8,13,20
  8:23,23,24 9:6,9
  9:11,13,13,17,20
  10:3,8,21 11:25
  12:19 13:24 14:8
  15:3,7,15 16:12
  16:19,23,23 17:8
  17:22,23,25 18:4
  18:9,10,15,17,19
  18:24 19:5,13,14
  19:15,16,20,21,22
  19:22,24 20:1,2,6
  20:7,12,12,15,18
  20:20,22 21:2,5,6
  21:20 22:1,3,6,15
  22:24 23:6 24:20
  24:24,25 25:18,24
  26:2,5 27:12,15
  27:23 28:14 29:8
  29:20,24 30:2,9
  30:12,23 32:12,16
  34:25 35:8 37:13
  37:17,22,23 38:8
  38:11,12,19,25
  39:14,15,18,22,24
  40:3,5,20 41:6,8
  41:11,15,18,21,23
  42:7,10,12,22,22
  42:25 43:2,14
  44:19,25 45:3
  46:6,6,17,21,23
  50:4,13 51:1,18
  51:25 52:6,12,21
  52:25 53:8,11,13
  55:2,19 56:16,20

56:24 57:9,19,22
58:21 60:2,4,25
61:8 63:15 64:1
64:21 66:18 67:18
68:21,25 69:3,23
69:25 71:7,13
73:2 74:7,15,17
78:9,12,19 79:3,9
79:10,17 80:2,12
80:14 81:1,6,19
82:6,9 83:17
85:17 86:2,6,12
86:19,21 87:19
88:6,9,18,22 89:3
89:15 90:3,7,9
91:7,12 93:6,17
93:20 94:1,3
honor's  15:13
  22:14 41:5 50:20
  54:8
honorable  25:14
hook  89:3
hope  22:21
hopefully  59:17
hoping  37:7
horan  3:18
horse  22:25 44:7
horton  32:24
  33:18
hours  90:18,25
hover  24:10
howard  5:19
hsr  19:7,8
huge  36:19 37:5,9
humanly  37:4
hundreds  38:2
husnick  64:2
husnick's  39:19
huston  6:25

**i**

idea  29:16 37:9
  46:6,6

identified  63:8
  67:7,9 77:7
ignore  10:25
iii  81:9
immediately  75:7
imminent  87:12
  87:12 88:13,17,21
  91:24
impact  47:21
  81:16 83:5 84:20
  87:24
impacts  87:16
impairing  87:7
implicated  54:22
implications  20:3
important  13:23
  19:1 30:5 48:4
  85:14 86:21
importantly  55:1
  55:17 72:10
impropriety  73:9
inadequate  58:3
inadvertently
  15:16
inappropriate
  33:25 34:8 37:25
  44:5
include  20:9
including  65:10
  77:7,16 92:24
incomplete  48:1
inconsistent  68:8
  71:25
incorrect  16:2
  28:13
incorrectly  27:17
increases  60:12
  83:6
incur  63:17
indenture  3:21
  4:7 6:7,12 60:3
  90:21,21

independent
  32:12 60:23 70:21
  72:13
indicated  69:5
  84:5
indiscernible
  30:25
induce  18:23,25
  19:1 38:25
induced  39:5
inducement  34:19
  35:6
induces  34:23
  46:15
indulgence  50:20
information  24:15
  55:14,15
inherent  9:23
inherently  85:22
injured  82:4
injury  81:11 82:8
  82:10 87:11
injustice  10:1
  11:18 15:1
innermost  21:21
input  58:4
inquired  48:21
inside  81:20 91:16
insignificant
  44:22
insolvency  83:7
instance  72:18
instructive  10:6
integrity  23:1
intend  25:2 74:10
interest  17:16
  24:12 31:10,13
  32:3 50:18 55:13
  62:15 65:1 72:4
  72:11 73:6,8 85:1
  85:7
interested  86:11

**interesting** 31:9
**interests** 82:2
  85:19 86:14,14
  87:2,3,5,8,25
  88:12,16 89:16
  90:7,24 92:22
**interlocutory**
  9:18 10:10 11:8
  11:13 12:13,15
  41:20 42:14 43:22
  44:6 48:8
**intermediate** 1:8
**interpret** 13:20
**interpreted** 55:21
**intervene** 2:17,22
  8:11 53:15,17
  54:6 72:22 80:15
  80:24 81:4,7,12
  81:14 86:13,22
  88:10 91:17 95:10
**intervened** 92:23
  92:25
**interveners** 36:25
**intervenors** 50:24
  60:7,9 66:18
  75:19 86:23 87:4
**intervention**
  76:20 82:2 89:13
  89:15 91:21 92:13
  92:18,20
**intimately** 28:6
**invalidity** 26:16
**involved** 34:24
  55:8 58:15 78:4
  79:7 86:24
**involvement**
  59:17
**involves** 81:3
**irrelevant** 43:23
  54:24
**issue** 9:15,16,17
  9:20,21 10:8
  11:14,15 12:12,13

13:2,17,17,17
14:20,21,23 15:2
15:2 16:21 18:5
27:7 28:16,19
30:6 38:6 39:17
43:5 44:3,4,8
47:19 48:21 49:8
49:13,25 53:14,22
53:25 54:11,14,21
54:24 55:2,16
59:3,14 60:5
61:17 67:9,17
71:16 72:4,15
76:21 80:16 82:24
85:25 86:1,3
87:20 89:21,22
90:1,4 92:13,14
**issued** 47:24 74:9
**issues** 9:14,14
13:1 14:17 15:22
38:7 43:18 45:15
45:16 50:23 51:9
54:4 57:1,6 60:14
70:12 79:15 85:14
85:14 90:1
**items** 8:8

**j**

**j** 3:12 7:11
**jamie** 7:24 96:3
  96:11
**january** 71:15
**jason** 3:13
**jewish** 51:16
**job** 67:22
**john** 2:16 7:6 95:9
**joinder** 57:22
  61:15,22 62:1
**joined** 56:18
  60:10
**joint** 73:20
**jointly** 1:5
**jones** 2:17 3:20,23
  95:10

**joseph** 5:4 6:25
**jr** 6:25
**judge** 1:23 11:12
  12:17 18:12 21:22
  28:25 32:2
**judged** 25:14
**judgment** 38:20
  38:22 40:20 57:3
**judgments** 48:4
**july** 2:14 10:24
  65:11 95:7
**june** 42:6 55:4
  71:16 72:10,11,25
**jurisdiction** 13:14
  13:19
**justice** 4:21 10:2
**justify** 14:18
  25:17 56:17

**k**

**k** 7:14
**kannzley** 4:4 74:7
**kanzley** 57:19
**kazin** 90:12,15
**keen** 27:4
**keep** 78:4
**keeps** 41:17
**kick** 52:9
**kieselstein** 3:5 8:4
  8:5,15,18 20:17
  20:18,19 22:1
  25:10,22 38:9
  39:13 42:25,25
  45:1
**kind** 28:24 32:11
  32:13 40:2 61:18
  65:9 90:25
**kirkland** 3:2 8:5
  50:14
**klauder** 5:22
**klehr** 6:11
**knew** 27:6 31:20
  32:2,4 44:20
  45:23,23,24 46:2

51:10
**knock** 25:3
**knocked** 25:2
**know** 9:9 16:21
  16:21 20:1,15
  21:22,23 23:18
  29:5 31:6,7 42:1
  44:20,22 47:6
  49:21 57:5 61:1
  63:21 64:5 66:1
  66:20 68:2 75:8
  87:9,10,19 90:10
  90:11
**knowing** 32:22
  71:20,20
**knowledge** 27:5
  61:23
**known** 12:10
**knows** 10:21
  16:20 20:2 27:14
  65:7,17 83:21
  89:3 93:12
**kranzley** 57:20
  58:13,21,23 59:8
  59:16,23

**l**

**l** 4:24
**laches** 11:1
**laid** 41:3
**landis** 5:1
**language** 12:1
  45:13
**large** 83:1,5
**largest** 56:14,15
  56:15 74:2,3
**laughter** 9:5
  21:25 25:9
**laura** 3:23
**law** 8:21 9:25
  11:17 14:25 15:8
  15:22 16:15,18
  19:24 20:2 22:12
  25:16 29:19 30:10

32:10 49:10 67:1
68:9,10 69:12
70:6 74:25 75:12
75:13 86:25 87:10
**laws**  45:13
**lawsuit**  66:2 75:4
75:4
**lawyer**  26:6,23
**lawyers**  36:8
**layton**  3:9
**lead**  53:23,25
75:10 78:3 90:13
**learn**  38:2
**leave**  35:4
**leaving**  13:8 34:11
**lee**  6:22
**left**  11:6 83:9
**legacy**  89:4
**legal**  14:17 71:25
83:11 96:22
**legislative**  25:15
**lemisch**  6:15
**letter**  15:11,21,25
16:6 22:4 29:21
29:25,25 30:4
**liabilities**  89:4,5
**lien**  3:21
**lifetime**  44:23
**light**  73:6
**lightly**  48:3
**likelihood**  60:13
**likes**  74:24
**limbo**  44:14
**limited**  44:13
**line**  24:3 26:14
56:25 71:15 74:1
**lines**  51:12
**liquidation**  17:18
**list**  38:7
**listening**  37:12
**litany**  43:8
**litigant**  65:15

**litigants**  65:6
**litigating**  13:24
**litigation**  13:10
14:8 41:7,10,11
41:15 47:6,21
50:1 54:18 55:19
55:25 56:8,25
57:13 58:2 59:12
59:18 63:24 64:11
65:18 66:10 69:21
74:1 75:21 78:3
81:22 84:7
**litigations**  14:14
**little**  40:13 52:23
61:9 79:7
**llc**  1:8 2:8 3:15
5:22 6:17
**llp**  4:11 5:16 6:11
8:5
**logical**  22:5
**long**  49:19,20
50:6 68:2
**look**  26:13,25
27:2,3 28:17
29:17 35:9 36:5
39:25 46:23 61:12
87:13
**looked**  26:24 29:3
**looking**  30:16,19
51:23 81:4,19
86:6,7 88:19
**looks**  25:12 91:13
**loom**  12:16,18
**lose**  19:19
**lost**  51:15
**lot**  43:17 45:16
51:10 78:3
**love**  25:2

**m**

**m**  5:9
**machiavellian**
37:23

**madron**  3:13
**main**  83:17
**maintain**  25:13
**maintains**  15:23
**majority**  82:17
**making**  25:16
35:20 37:7 65:10
**mandatory**  91:21
**manifest**  9:24
10:1 11:17 14:24
15:21,22 16:18
48:10 49:10
**manifested**  80:18
82:17 83:24 85:3
85:8,19 86:15
92:10 93:2
**manifestly**  21:13
**manifests**  21:18
**manner**  79:22
**march**  41:12 55:4
71:15 72:11,25
**mark**  3:5,6 4:14
8:4,6 20:19 42:25
50:14
**market**  1:16
**material**  84:2
**materials**  64:15
72:3,5,5
**matter**  14:9 19:3
19:24 37:25 38:11
39:5,6,7,17 40:22
41:6 42:3 53:18
55:20 60:21,22,24
61:2 63:10 64:21
65:4,13,22 67:10
67:10,14,16,21
68:6,14 70:7,20
71:14 74:20,22
75:24 76:14,19
79:11 80:24 85:11
89:13 91:17
**matters**  43:15
57:16 73:3

**mccracken**  4:11
**mckane**  3:6 8:6
50:4,7,11,13,14
51:13,18,21,25
52:5,11,12,19,21
52:25 53:3,6,8,10
60:21,25 62:22,24
63:2,5 69:25
74:15,16,17 76:17
78:9,12,24 79:3,5
79:25 80:2 86:18
86:19 91:23 93:6
93:17,23 94:1,3
**mckane's**  92:21
**mcneill**  6:5
**mean**  24:21 32:6
36:7 39:2 44:6
52:22 54:3 56:17
59:3 86:3 92:16
**meaningful**  85:13
**means**  20:21 21:3
21:6,18 25:1,13
25:17
**meet**  26:2 75:22
**meeting**  15:11
16:13
**meetings**  16:8
**meets**  35:24
**members**  72:14
89:18
**men**  25:11
**mentioned**  47:3
**merely**  15:25
70:15
**merger**  2:3 11:22
14:4 21:10 23:14
23:24 24:2,23
27:19,20,24 36:16
37:6 44:4 47:1,5,8
48:16,19 49:1,3
64:4,17 83:3 89:2
**middle**  37:6

milling  78:19
million  10:9 12:6
  17:10 19:19 20:11
  20:24 24:12 28:21
  35:17 36:3,5
  37:20,24 47:19
  51:7 82:4 83:9
  92:7
millions  38:1,2
mind  16:20,23
  19:7,14 21:21
mineola  96:25
minute  33:1 43:14
  51:23 52:7
minutes  47:11
  50:5
misapprehension
  48:9 49:12
missed  48:25
misses  82:8
misstatement
  16:15 28:1,4,5
misstatements
  12:2
missteps  66:12
mistake  27:16,20
  27:22 28:1 31:21
  35:21
mistakes  65:25
misunderstanding
  31:3,7
misunderstood
  46:1
misuse  74:11
mockey  25:8
mocky  25:6
modified  9:22
  11:16 14:25 76:22
modify  9:25 20:13
  42:23
money  29:12
  36:19 37:5 39:7
  44:23 59:5 88:4

montgomery  4:11
months  11:3
  13:24 29:2,4,17
  30:8,16,17,19,22
  31:23 32:9 41:17
moot  10:19,22
morning  8:3,4,9
  8:19,20 20:18
  50:12,13 52:24
  57:19 60:1,2
motion  2:1,12,16
  2:22 8:9,10,11
  11:4 20:20 25:5
  25:19 26:7,14,15
  30:9,11,14 31:5
  31:21 32:8,10
  37:16,18 42:12,19
  45:21 46:1,3
  47:16 48:3,6
  49:22 57:23 61:11
  61:13 62:11 63:15
  64:17 66:11 67:23
  69:1 72:20,21
  75:7 78:1,11 84:4
  86:4,22 88:10,11
  91:4,20 93:5,14
  95:4,9,15
motions  48:16
  50:18,21
movant  48:5 92:5
movants  91:22,24
  93:13
move  42:21 44:21
  69:17
moved  42:17,18
  44:19 72:22 83:15
moving  67:15
multiplier  86:7
multiply  83:11
mutual  58:25

n

n  3:1 8:1 95:1
  96:1
name  10:4 26:1
narrow  53:14
nature  11:13
  12:15 27:2 47:25
nearly  83:12
necessary  11:24
  12:7 18:2,6,18,25
  19:1,11 21:4,18
  22:4 33:19 38:23
  86:13
need  9:25 10:7
  14:25 17:23 22:25
  41:20 52:17 58:7
  65:24 66:12 67:11
  80:1 90:24
needed  44:20
needing  54:2
negotiations
  54:20 77:18 81:21
  83:22
neither  24:4 83:20
  83:21 92:7
nella  5:25
never  18:20,21
  21:24 59:21 72:17
  89:5,10 91:2
new  69:17 70:19
  72:22 82:25 83:17
  83:18
nextera  1:12 2:14
  5:2,17 7:2 8:10
  10:9,12,23,25
  11:16,19 13:4
  14:9 15:1,23 16:5
  16:9 17:3,19,20
  18:22,23,25 19:1
  19:18,21,23 20:4
  20:9,23 24:11
  25:2 26:2,11
  27:18 32:15,19

35:6,10 39:12
  41:10 42:4,4,5
  44:2 47:19 48:11
  48:17 49:2 50:17
  52:15 55:8,9
  56:11 59:10,13
  61:1 63:14 64:16
  64:22 65:17 69:4
  71:18,19,23 72:21
  81:5,22,24 82:9
  83:2,3 84:16,23
  87:16 90:17 92:7
  95:6
nextera's  14:6,13
  16:4
nice  26:2
nixon  4:6
nodding  53:4
nods  53:3
non  15:19 26:23
  60:23 88:23 89:7
  92:12
north  1:16
norton  5:16
note  23:21 25:5
noted  10:21 84:4
noteholders  71:20
notes  23:21 82:5
notice  23:24
notion  66:20
notwithstanding
  23:2 24:25 44:18
nuance  48:25
nuances  51:10
null  10:22
number  36:7
  83:12
numbers  28:3
numerous  92:12
  92:23
nunc  2:9
ny  96:25

| **o** | oh   93:10 | 20:13,14 22:2 | **pan**   22:19 24:18 |
|---|---|---|---|
| **o**   1:21 8:1 96:1 | **okay**   9:6 19:6 | 23:1,4 24:22 | **paperable**   14:2 |
| **o'brien**   11:22 | 33:17,21 34:11,12 | 28:19,21,25 29:5 | **papers**   23:10,21 |
| 14:21 18:4,15 | 35:3 47:9,14 | 29:6 35:10,17 | 37:21 42:17 63:9 |
| 19:10,23 24:3 | 52:18 53:2,4,7 | 38:7 41:17,19,23 | 78:3 |
| 26:22 28:11,12,18 | 58:22 59:15 60:20 | 41:24 42:23 43:19 | **paragraph**   13:25 |
| 29:18 31:19 34:13 | 78:10,15 80:1,7,8 | 43:20 44:5 45:8,9 | 14:5 46:23,25 |
| 34:17 38:14,20,20 | 88:7 93:21 94:2 | 45:11,14,17 46:24 | **parameters**   33:23 |
| 40:4,6,7,16 46:4,5 | **old**   96:23 | 47:17,20,23 48:7 | 33:25 |
| 46:5,8,12,14,17 | **omissions**   12:2 | 49:15,18,25 60:11 | **parent**   89:5,10 |
| 49:7 | **once**   9:20 | 61:12 71:9 74:9 | **part**   2:12 17:20 |
| **o'clock**   53:5 | **oncor's**   2:2 | 78:8,13,22 79:2 | 29:23 42:7 61:5 |
| **object**   77:24 | **ones**   45:23 | 80:1 85:5 91:21 | 87:25 95:4 |
| **objected**   32:6 | **ongoing**   47:6 84:6 | 92:12 93:3,7,11 | **partially**   48:24 |
| 43:19 84:8 | 84:8 | 93:15,16,19 95:5 | **participate**   29:13 |
| **objecting**   43:24 | **open**   15:10 16:8 | **orders**   10:7,14 | 57:12 90:15 92:15 |
| **objection**   10:19 | 16:13 22:13 38:19 | 12:19 22:17 48:4 | **participating** |
| 54:3 | **opening**   14:16 | 49:22 | 53:24 54:12,13,13 |
| **objections**   23:20 | 74:18 91:9 | **originally**   54:17 | 54:14 75:21 |
| 32:7,7 | **operating**   89:5 | 56:12 | **particular**   53:16 |
| **objective**   20:22 | **operation**   28:7 | **outcome**   22:23 | 54:11 |
| 21:3 22:16 25:4 | 29:15 31:3,8 | 43:15 88:6 | **particularly**   78:5 |
| **objectors**   10:21 | **operations**   89:10 | **outside**   17:2,6 | **parties**   9:10 50:2 |
| 10:25 80:15,17 | **operative**   50:24 | **outstanding**   13:18 | 50:17,19,23 53:16 |
| 83:14 85:7,13,15 | **opinion**   11:12 | **overcome**   76:4 | 54:10,19 56:8 |
| 86:22 87:2,16 | 47:20,23 48:2 | **overstated**   15:16 | 57:11 58:15 60:9 |
| 88:4 89:17,17 | 49:18 56:1 85:16 | **overturned**   36:24 | 62:17 78:7,13 |
| 90:1,11,16 | **opinions**   49:20 | **overwhelming** | 79:7 83:25 84:12 |
| **obligation**   17:5 | **opportunity** | 22:6 | 84:14 86:11 92:23 |
| **obligations**   63:22 | 50:16 51:3 | **owed**   61:6 92:7 | **party**   27:19 41:12 |
| 64:9,12 | **oppose**   71:11 80:3 | **owes**   59:5 | 53:21 54:18 58:25 |
| **obtain**   55:15 | **opposed**   13:17 | **p** | 63:21 68:12 80:23 |
| **obviously**   28:6 | 62:7 64:19 71:10 | **p**   3:1,1 8:1 | 81:7,7 92:25 |
| 30:2 43:9,15 44:2 | **opposing**   90:6 | **p.a.**   5:11 | **pass**   82:13 84:11 |
| 44:15 46:2 74:11 | **oral**   9:11 47:25 | **p.c.**   6:22 | **passed**   82:18 |
| 80:14,16,18 84:20 | **order**   2:1,7,13 | **pachulski**   3:20 | **path**   58:24 |
| **occasions**   23:10 | 8:12,25 9:12,18 | **page**   95:3 | **pause**   78:16,23 |
| **occur**   46:9 | 9:21 10:1,10,13 | **pages**   28:2 | 93:9 |
| **occurred**   27:3 | 10:15,17,20 11:6 | **paid**   13:5 20:10 | **pay**   17:11 |
| **offer**   21:15 | 11:8,15 12:25 | 20:11 27:10 32:1 | **payable**   14:3,14 |
| **offered**   48:2 | 13:4,6,7,12,14,21 | 83:2 84:19,20 | 15:17 16:3 17:17 |
| **official**   57:20 | 13:25 14:15,19 | **palpable**   87:11 | 19:21 21:8 23:11 |
|  | 15:5,21 16:10,25 |  | 23:12 24:2 27:18 |

47:1,4,7 48:13,22
49:1,2,17 59:4,10
59:11 87:16
**payment** 14:6
45:9 48:12 49:5
83:5
**payout** 22:8 51:7
**peabody** 4:6
**pedone** 4:9 59:25
60:2,3
**pending** 47:21
64:16
**people** 23:19,19
24:18 38:21
**percent** 62:7
**perfect** 60:18
**perfectly** 49:23
**perform** 63:22
64:24
**performed** 64:12
**period** 38:15
44:14 55:4,5,10
65:16 72:9,24
**permission** 79:18
**permissive** 89:15
92:20
**permitted** 24:3
**perpetually** 81:18
**person** 46:10
52:11,17 66:21
77:20 90:9,23
**persuaded** 13:7
**peter** 4:19
**ph** 10:5 11:9 23:9
25:8 77:16 90:12
**phase** 29:15
**phone** 52:9,10,13
**piecemeal** 13:10
14:7
**pile** 24:8
**pimco** 7:9
**pivot** 89:14

**place** 27:22,23
36:12,14 60:8
61:20 70:16
**plain** 75:3
**plaintiffs** 1:10
60:10
**plan** 10:23 13:16
17:20,20 44:1,3,4
51:8 82:11,14,15
82:21,25 83:1,14
83:17,18,23 84:4
84:6,7,10,10,15
84:24,25 87:21,21
87:22 88:8,11,14
89:20,22 92:3,4,6
92:13,18
**plans** 44:3 84:21
88:19
**plausible** 30:22
**play** 33:6 40:11
54:15 91:21
**played** 19:14
40:10 55:23
**playing** 54:9
**pleading** 38:1
53:18
**pleadings** 53:13
53:17 69:5
**please** 8:3 37:15
47:14 50:11
**plum** 21:21
**pm** 1:19 94:8
**podium** 8:16
37:19 53:10
**point** 21:10,12
27:25 28:15,16
30:6 32:14 33:18
33:22 34:5,10,13
35:2,13,16 39:13
39:13 40:5 43:13
45:4,7,16,22 46:4
46:22 59:17 61:6
64:3,25 69:9

73:23 74:7 75:5
82:8 83:8 86:5
88:17,18 92:16
93:4
**pointed** 29:20
37:10 71:24 81:5
82:1 85:10
**points** 26:9 32:12
44:10 69:25
**portion** 83:1
84:19
**position** 11:14
13:9 16:4,6 18:17
29:22 41:8,9,18
45:25 59:24 62:17
62:20 66:18 68:4
68:5 69:20 71:24
71:24,25 72:7,8,9
72:13 73:11 80:25
91:14
**positions** 10:11
42:13 70:14
**possession** 63:5
76:8
**possibility** 14:1
**possible** 37:4
40:25
**post** 16:1
**posturing** 78:4
**potential** 51:8
57:14 58:2 63:8
63:17 65:8 67:10
67:22 80:20 88:25
89:8
**potentially** 58:3
**potter** 6:2
**power** 10:7 69:7
**practical** 29:9
90:25 91:12
**practice** 18:9
22:19,20
**pragmatic** 10:13

**praised** 25:14
**pray** 22:22
**pre** 65:18,19
**precedent** 40:17
**precluded** 41:9
**predecessors**
31:10,13 32:3
**predict** 59:23
83:21
**predictable** 38:14
**predicting** 49:19
59:22
**prejudice** 88:10
91:4 93:11
**prejudicial** 15:19
**preliminary**
14:21 60:21 76:19
79:10
**premature** 42:2
58:3
**preparation** 82:5
**prepared** 54:5
75:8
**present** 7:13
48:13 49:17
**presentation**
92:21
**presented** 32:18
35:5
**pretty** 77:13
**prevent** 10:1
11:17 67:18 68:12
**preventing** 67:19
**previous** 83:14
**previously** 80:4
**price** 27:9
**primarily** 60:6
**primary** 80:19
**prince** 25:10,13
**princes** 25:11
**privilege** 55:13
73:2,6

**privileges** 73:3
**privy** 55:14
**pro** 1:10 2:9 43:4
  59:6
**probably** 18:9,10
  44:23 51:15 53:24
**problem** 40:12
  70:1
**problematic**
  76:11
**procedure** 2:18
  2:19 95:11,13
**proceed** 50:2,21
  51:11 52:11 54:5
  56:2 60:18 65:12
  66:3 73:18 79:22
  83:22
**proceeding** 14:10
  20:25 26:3 32:24
  51:5 55:6,16
  58:17 59:9 60:25
  65:2 67:12 75:16
  80:16,24 81:3,14
  84:8 85:12 86:1
  86:25 87:1,15
  92:1
**proceedings** 13:5
  14:2 27:2 42:18
  45:11 49:23 81:13
  83:10 86:7 94:7
  96:5
**process** 22:14
  29:13 62:10 65:10
  74:10 78:5 82:20
**professionals**
  24:17 90:10
**profound** 20:21
**progress** 37:7
**pronounce** 10:4
**proof** 30:12 82:12
  82:18 92:5,11
**proofs** 89:19,19

**proper** 12:4 38:12
  70:13
**properly** 11:22,23
  12:6 33:2 49:7,13
  64:20
**proponent** 73:24
**proposal** 17:13,15
  73:19 76:22 84:17
**propose** 8:12
  58:17 61:25 76:6
  84:15
**proposed** 58:6,8
  61:12 62:6,13
  82:11,14,21 84:6
  84:21 87:21,22,22
  93:7
**proposing** 58:13
  58:14 62:12
**prosecute** 56:9
  64:20 65:3,21
  67:14 68:14,18
  70:18 71:9,22
  74:20
**prosecutes** 56:9
**prosecuting** 53:22
  67:5,21 68:16
  71:12 73:17 76:14
  77:9
**prosecution** 75:24
**proskauer** 4:16
**protect** 85:2 86:14
**protected** 87:5
  90:24
**protections** 44:6
**prove** 36:11 70:24
  71:1,5 87:9 88:16
**proved** 66:6
**provide** 40:23
**provided** 11:24
  12:7 35:24 45:9
  46:25 47:1
**provides** 55:21

**provision** 40:1
**provisions** 11:21
  12:5 27:6,24
  43:21 55:22
**psa** 41:9 55:6
**public** 24:11
  76:11 80:3
**puc** 42:5 43:7
  48:15
**puct** 16:9,9 17:4,9
  19:17 24:10 27:7
  27:18 36:7,11,15
  36:21 37:2,8
  48:23 49:1,3 64:4
  64:7
**pull** 21:19
**purchase** 54:20
**purportedly**
  41:11
**purposes** 22:5
  77:9 80:3
**pursuant** 2:17
  14:3 47:5,7 83:2
  95:10
**pursue** 11:4 21:3
  21:18 22:16 34:23
  41:14 42:2,16
  44:17 46:16 55:25
  63:23 66:7 70:3
  74:19,22 76:22
  77:4,16,17
**pursued** 32:20
**pursuing** 35:18,18
  42:1 43:6 48:17
  61:24 64:10 77:6
**purview** 43:12
**put** 18:17 21:20
  27:13 37:18 39:10
  39:16 40:13 44:13
  53:20 56:4 57:5
  72:22 76:24 86:21
  88:14

| q |
| --- |

**question** 28:24
  35:10,20 39:3
  40:1,23 41:5,14
  45:12 54:7 68:19
  76:21
**questioned** 27:25
**questioning** 28:14
**questions** 17:1
  20:15 39:20,21
  60:7
**quick** 46:19 74:7
**quickly** 32:11
  44:20,21
**quite** 43:7
**quote** 84:5
**quoted** 46:24
**quoting** 45:10
  68:11
**qureshi** 6:9

| r |
| --- |

**r** 1:21 3:1 6:5 8:1
  96:1
**race** 85:1
**raise** 61:17 66:5
**raised** 24:4 39:14
  43:18 44:9 61:5
  61:19,22 64:13
  67:8 71:16,22
**raises** 60:7 75:25
**ramifications**
  54:8
**ranging** 23:14
**rata** 59:6
**rath** 5:1
**raymond** 6:15
**reached** 67:22
  79:19
**reaction** 25:6
**read** 25:5 27:10
  28:16 29:24 40:7
  41:18 47:15,15
  61:11,11 79:1

reading  27:12
real  29:8 54:14
realized  25:7
really  9:24 16:20
  16:23 33:5 53:22
  54:2 56:7 69:10
  88:24 89:22 91:23
reason  14:14,18
  36:2 68:25 91:25
reasonable  19:17
  30:13,15,19,24
  43:6 58:24
reasonably  43:11
reasons  57:13
  60:6
rebut  61:18
rebuttal  74:20
recall  16:21,22
  18:4,9,12 83:13
  84:16
receive  17:9 82:14
received  18:22
  48:24 93:17
recess  47:10 50:3
recessed  47:12
  50:9
recited  91:9
recognize  9:7 63:2
  73:15
recognized  67:22
  85:20,21
reconsider  2:12
  9:12 20:13,20
  26:7,14,15 29:5
  30:9,11,15 31:5
  31:22 32:8,10
  37:8 42:23 45:21
  46:1 49:15 95:4
reconsideration
  8:9 11:4 25:20
  31:1 32:21 35:25
  42:19 47:17 48:6
  48:17 72:20

reconvened  47:12
  50:9
record  12:4,10
  15:3,4 16:11,16
  16:17 17:24 18:5
  21:10 23:6 24:15
  27:10,12 28:9
  30:5 32:17 39:19
  41:19 42:7 50:14
  53:11 69:14,19
  75:3,10 76:1,12
  87:25 96:5
recoveries  22:8,9
  64:6,8
red  24:3
redacted  80:4
redaction  79:20
  79:20 80:5
reduced  82:4
referee  43:5
referring  80:6
refers  87:17
refile  88:17
reflect  58:4
reflects  20:20
  28:10
refusal  61:17
  70:10 75:2,10,11
  77:5,5
refused  70:9
refusing  68:18
regard  77:1 91:11
  92:10
regarding  12:2
  14:17 42:8 54:20
  55:7 56:2 71:17
  79:15
regardless  27:19
  48:7
regards  75:25
regulatory  21:13
  24:17 46:8

rehearing  64:1
reimbursement
  20:8 39:10 44:13
reinstated  87:23
  88:2
reinstatement
  88:23 89:8 92:4
reinstates  84:24
rejected  38:20
  66:24 84:18
relate  32:13
related  45:15
  85:14
relates  61:21
  63:10 64:16 74:23
relative  79:11,16
relevance  64:15
relevant  27:24
  32:14
reliance  11:1,8
  29:11 36:2 37:12
reliant  11:10,12
  12:14,16
relied  12:14 35:10
  35:17,21 81:25
relief  33:7 34:7
  71:10,11 73:12
  76:15 78:7
relies  37:23
relieved  17:4,5
reluctance  72:19
reluctant  65:6,6
  65:15 72:16
rely  16:12 23:1
  29:10 41:23 74:24
remain  91:9
remaining  50:18
remarks  15:13
  74:18
remembers  64:1
remote  88:20
  89:11

removed  65:21
render  54:24
rendered  24:7
renegotiated  85:4
reorganization
  44:1
reorganized
  82:13
repeat  26:5 69:13
repeating  26:8
reply  14:17 37:15
  61:23 62:22 66:15
  79:11 91:6
report  65:13
reporting  65:9
represent  26:2
  85:17,19
representation
  80:5 92:22 93:4
representative
  27:13
represented  85:8
  89:23 90:7
representing
  26:24
represents  85:24
request  53:15
  56:20 57:9 61:12
  61:14 62:18 64:1
  76:3,21
requested  54:17
  61:10 71:10
requests  75:22
require  12:18
required  82:11
  84:12
requirements
  91:15
requires  84:1,24
reserve  51:9
resolution  58:2
  60:4 84:1 86:4

resolve 50:22 51:6
60:6 65:18 67:11
resolved 13:1
14:20 81:23 86:4
resolves 28:19
respect 8:10 9:11
10:6 11:12 15:14
17:24 23:6 37:25
40:11 41:16 42:13
53:14 55:6,9 57:6
57:10 59:19 73:2
respectfully 29:8
29:18
respects 47:23
respond 38:18
69:10,23 74:15
response 12:23
responses 48:23
responsive 48:24
rest 14:24 15:21
rested 9:24
rests 9:22 11:16
result 13:10 21:9
58:2
resuscitate 64:3
retain 2:7
retained 13:14,19
review 23:24
reviewed 41:7
86:10
revise 10:7
revised 85:4
revisit 24:22
rhoads 4:11
richard 4:9,24
60:2
richards 3:9
ride 88:5
right 8:12,17 30:7
31:20 34:16 37:2
37:6,20 41:25
43:25 46:18 47:16
52:5 53:4,17

56:21 58:12,13,16
59:25 60:5 62:5,5
62:10,19,21,22
63:3,18 64:5,18
64:22 65:7 66:24
67:19,21 68:23
74:11,14 75:6,14
75:21 76:3,10,16
76:23,24 77:10,11
77:23 80:11,24,25
81:1,7,14 87:13
87:25 88:10 89:13
91:5,19 93:15
94:4
rights 82:20 85:2
rise 8:2 47:13
50:10 92:18
risk 17:10 22:7
24:16 28:24 38:18
38:19,21 41:1
59:21
risks 24:23 34:24
road 65:2 88:13
96:23
robo 37:3
role 54:15
roles 55:22
room 24:10 25:16
ropes 5:6 8:21
rose 4:16 5:16
rug 57:6
rule 2:17,18 15:3
43:16,16 45:19,19
47:11 62:8,9
67:23 68:8 69:14
76:4,8,25 80:22
80:23 87:6 95:11
95:12
ruled 49:9 55:3
92:12
rules 2:18,19
54:22 90:18 95:11
95:12

ruling 12:24 24:7
31:17,18,19 42:2
47:21,25 49:21
68:22 82:7
rulings 95:2
run 28:23

**s**

s 1:22 3:1 8:1 87:3
sabin 7:11
salt 44:12
sands 81:18 91:8
sat 26:23 31:17
satisfaction 79:23
satisfied 18:14,20
29:18 30:14,24
31:18 39:4,10
91:15
satisfies 40:18
satisfy 28:12
30:23 32:10 39:2
43:16 46:12 49:6
saw 27:11 29:25
66:14
saying 11:2,5
18:12 28:17 29:3
31:12,14 33:1
38:11 41:2 42:4
55:14 74:18 76:13
87:6 91:2,2
says 11:7 22:11
38:1 40:16 46:13
46:25 47:2 52:15
62:9 75:13 93:11
scenario 88:23
89:7,8
schedule 51:20
schepacarter 4:24
79:17
scott 5:14
se 22:11
sea 25:23
seal 79:12

sean 6:14
seat 75:23 81:19
86:7
seated 8:3 47:14
50:11
second 3:21 9:15
9:20 11:15 13:19
14:23 21:17 37:1
38:5 46:22 51:24
52:1 63:25 71:13
75:13 79:20 87:2
section 16:5 28:3
89:1
secured 81:24
see 9:10 33:11
34:5 44:23 52:7
78:13 91:10
seeing 18:6
seek 63:16 77:17
seeking 14:11
65:12 66:21 77:16
seeks 88:15
seen 68:9,10
82:22 86:2
sees 20:7
seife 5:19
selling 57:3
sempra 77:16
83:1 84:10
sense 42:15 50:1
50:21 93:3
september 1:18
2:13 8:24 11:20
12:11 15:5,9,12
15:12,14,20,24,25
16:13,13,25 22:3
24:7 26:19,25
29:1 30:2,4 31:11
31:17 32:23 35:1
38:13 43:19 45:24
48:22 49:9 72:10
95:5 96:18

serious  31:21 48:9
seriously  85:10
serve  86:9
set  12:10 13:1
   14:16 15:3 19:1,2
   23:15 26:6 39:3
   42:16 90:14
sets  70:15
settle  54:18,18
   56:11,21 58:9,10
   58:19,19 60:11,16
   65:4,22 66:22
   76:25 77:12
settled  55:19 60:8
settlement  50:25
   54:10,14 56:4,4
   56:10,11,18,22
   57:2,4,10,25 58:3
   58:8,16 59:13,19
   59:21 60:6,13,15
   61:13,14 62:1,6
   62:11,13 67:22
   68:24 69:8 73:19
   73:24 74:3,11,12
   76:7 77:18,18
   84:24 85:2,4 86:4
settlements  56:25
settling  57:4
seven  30:1 90:18
   90:25
shame  49:4
share  9:1 56:19
   78:13
shared  21:3 22:16
shares  20:22
   55:18 57:25
sharyland  2:3
shaw  2:8 3:15
shifting  43:2
   81:18 91:8
shirley  2:16 95:9
shoes  66:23 75:15

short  47:10
show  70:17,21
   81:11 87:7
showed  28:3,6
shown  72:19
shows  72:24
shut  85:13
sic  11:21
side  4:1,12 22:6
   62:20 76:23 77:10
   87:4
sides  24:17
sign  93:15
significant  23:22
   35:5 83:5
significantly  83:6
silence  43:9
similarly  84:10
simon  6:17,20
simply  13:6 14:13
   14:21 15:24 17:16
   26:8 39:17 43:22
   54:25 61:1,6
   92:14
sit  30:7 92:3
sits  32:9
situation  20:8
   58:6 68:4 77:8
six  13:24 70:1
small  32:5
solely  61:22,22
solutions  96:22
somebody  34:7
sontcehi  1:22
sontchi  21:22
soon  42:18
sophisticated  39:7
   44:11
sorry  64:7 89:14
sort  58:12
sought  48:11 55:6
   56:6,12 63:14,18
   77:13 85:12

sound  22:5
sounds  53:6
south  7:24 96:3,8
southeast  22:22
speak  53:22
special  2:8
specifically  13:14
   40:16 87:6
specter  68:19
speculative  40:25
   41:1 88:20 89:11
spend  13:24 29:11
   35:17 43:17
spending  37:4
spent  39:6
split  59:6
stage  14:8
stake  82:3
stakeholder  24:5
stalking  22:25
   44:7
stand  27:14 87:14
standard  11:23
   30:11,14,24 31:19
   38:22,22 39:11
   40:20 49:7 67:25
   91:12 92:19
standing  2:23
   8:10 31:20 53:15
   54:17 56:6,12,17
   56:21 57:10,15
   58:24 61:10,16
   66:21,23,25 67:4
   68:12,14 70:3,4,8
   73:14,21 75:1,25
   76:21 81:8,8,9,10
   81:12,14 82:11,24
   87:9,9 89:12
   90:17 91:11,22,25
   92:1,15,19 93:13
stang  3:20
start  16:4

started  36:22
   41:10 42:17
starting  9:3 10:8
state  24:15 25:13
   47:22 84:9
stated  57:22
statement  16:8
   52:23 57:23 79:21
statements  15:18
   15:19 17:25 38:3
   39:17,19,20 57:23
   91:9
states  1:1,15 4:21
status  51:17 64:2
   93:24
statute  40:24
   80:25
statutory  63:6
   67:13
stayed  52:15
stem  14:18
step  61:9 67:6
stephen  6:5
stevens  6:22
stipulated  37:21
stone  81:25
stopped  49:19
story  38:16
straight  15:4
straightforward
   51:9
strategy  20:4
strawn  7:1
street  1:16
strike  68:3
strong  34:19
strongest  9:4
structure  26:17
   27:1 28:7 45:25
struggle  24:25
   67:17
sub  9:15 15:2

**subject** 8:25 14:7
47:23 55:12 67:12
77:23 84:6,7 93:2
**submission** 15:20
**submit** 19:24 20:2
20:12 78:8 93:20
93:21
**submitting** 93:19
**subsequent** 23:2,3
38:10 46:9 59:12
**subsequently**
15:11
**substantial** 22:9
38:4 44:24 52:14
**substantially** 81:2
83:24
**substitute** 93:14
**successful** 29:15
**sued** 65:20
**sufficient** 77:2
78:14 89:12
**suggest** 10:18
13:21 22:16 29:18
62:2,3 76:4
**suggested** 30:18
**suggesting** 11:2
57:5
**suggestion** 66:9
**suite** 96:24
**sullivan** 3:25
57:20
**sum** 36:19 86:6
**sums** 37:5
**supplement** 45:4
**support** 42:4
57:23 60:4 64:1
68:3 73:24 76:9
**supported** 22:6
29:19 73:19
**supporting** 82:1
**supports** 74:4
**supposed** 13:12
15:4 64:23 68:17

**supreme** 11:9
12:21 85:20
**sure** 17:24 25:1
32:16 34:8 37:10
37:17 39:8 69:13
79:14 81:17 90:8
**surprisingly**
10:10
**system** 36:23

**t**

**t** 96:1,1
**table** 90:9
**taboos** 18:10
**take** 16:17 23:23
24:8 35:19 37:19
39:15 45:12 47:10
48:3 50:6 53:25
62:17 68:6 71:24
72:7 79:1
**taken** 33:22 42:13
88:2
**takes** 46:22 49:19
52:8,9 78:10 79:7
90:12
**talk** 34:18 36:2
78:22 79:1
**talking** 23:10
36:25 45:19 87:18
87:18 88:24
**talks** 46:5,14
**taught** 81:17
**taylor** 12:25 13:9
**technicalities**
73:23
**technically** 86:1
**teed** 50:22 86:3
**tell** 22:25 53:3
78:24
**ten** 11:2 29:2,4,17
30:7,18,21 31:23
32:9 41:17
**tens** 38:1

**tent** 81:20 86:8
91:16
**tentative** 47:25
49:21
**term** 54:16
**terminate** 17:10
19:18 48:18
**terminated** 27:19
36:16 37:5,8 49:2
49:3
**termination** 2:14
8:25 9:18,21
10:18 11:5,5,7,16
11:20,21,23 12:5
12:6,14,20,24,25
13:15,17,20,25
14:1,2,7,10,11,13
14:19,24 15:17,21
16:3 18:19 19:16
19:23 20:13 26:17
26:18 27:2,5,9,17
28:7,12,18 29:6
29:10 31:3,8,11
31:18 32:1,18,21
33:2,14,16,24
34:17,19,20,22,22
36:5 40:1,13
42:24 45:5,8,10
45:17,25 46:7,11
46:15,25 47:18,22
48:8,11,12,13,14
48:22,25 49:6,8
49:16,16 63:14
71:9 81:22 83:6
83:16 84:19 87:15
87:20 89:3 90:6
92:2 95:6
**terms** 14:4 16:2
24:2 33:2 43:15
47:5,7 67:4 82:21
82:25 83:2
**test** 29:16

**testified** 27:17
32:25 33:18
**testimony** 23:9
27:17,22 37:19
57:14
**texas** 24:9
**thank** 8:17 20:16
20:17 25:21,21
37:12 42:24 45:1
46:17 47:8,9 50:7
51:18 53:8 57:17
57:18 60:19,20
69:2,22 74:5,6
76:17,18,18 79:9
80:12,13 86:16,17
86:19 91:5,7,18
91:19 93:23 94:1
94:4,6
**theories** 66:7
**thereto** 79:16
**thing** 27:11 51:24
64:13
**things** 13:21
22:19 39:8 43:10
43:22 47:18 53:23
67:8 70:1
**think** 9:13,17,24
10:3 11:11 12:3
12:22 16:12 17:14
18:4 19:10 22:1,2
22:3,12,19,20
23:4,7,7 26:6,10
29:9 30:25 32:22
34:8 35:16 37:11
39:18 40:9 41:16
42:10,10,12,20
43:4,14,15 44:17
44:19 50:20 52:12
53:13,16,19,25
54:9 55:1,18 56:6
56:17,24 57:12,14
60:12,18 66:14
67:19 69:15 73:14

timeliness 41:6
timely 11:4 47:16
   92:5
times 20:7 22:22
   73:13 92:13
timing 37:15,18
   38:6
title 16:5
today 9:12,14
   16:22 21:1 22:18
   30:12 35:16 38:9
   39:23 47:17 49:24
   50:2,18 66:15
   71:10 80:3,15,15
   92:3 93:20 94:2,3
today's 8:25 50:21
told 31:24
tom 7:5
tomorrow 22:18
   38:10 39:24
too's 90:21
top 37:3,3
totality 28:8
totally 28:13,13
   93:18
towbin 2:8 3:15
tracey 7:24 96:3
   96:14
tracks 36:22
transaction 17:3
   17:13,16 18:7,22
   18:23 20:5 21:9
   21:11,14 22:10
   23:13 24:11,14,19
   27:8,14 28:11
   33:3 35:18 36:7
   36:17 44:2,18
   48:23 63:17 77:17
transcribed 7:24
transcriber 96:9
   96:12,15
transcript 22:2
   96:4

73:19,23 75:12,12
   77:7,13,21 78:10
   80:2 87:13 88:18
   89:16 90:3,6
   93:18
thinking 21:7
   57:7
third 10:5,14
   11:10 12:24 22:12
   22:15,21 30:6,16
   58:25 64:13 74:25
   81:2,6
thomas 3:18 69:3
thought 22:14
   23:25 24:6,17,18
   25:7 29:25 33:24
   36:21 38:21 70:2
thoughts 21:21
thousand 36:9
thousands 25:25
threat 71:18,19
three 8:8 9:13
   30:16 65:15 85:17
   88:19
thursday 51:16
   52:2,22
tied 41:22
time 16:24 21:22
   22:21 23:19,22
   24:4,16,18 26:3
   26:18 28:12 30:13
   30:15,24 31:4,11
   32:5 34:7 40:13
   41:7 42:9 43:17
   44:9,13,21 48:10
   48:17 49:8,20
   51:1,17 52:1 55:4
   55:5,10 56:10
   61:6,13 64:3,25
   66:4 67:24 71:14
   72:9,25 75:5 79:1
   84:11,18 88:17,18
   90:16,20,23,24

transition 89:15
translate 21:5
transpire 22:24
transpired 12:9
   15:11 38:13 42:11
travel 90:13,14
treatment 44:1
   83:24
tricky 52:23
tried 32:8 73:15
triggered 87:24
   88:1,3
trip 24:8
true 79:25 96:4
truly 68:21,24
trust 88:14
trustee 3:21 4:7
   4:22 6:7,12 54:13
   60:3 62:9,14 63:3
   63:6 67:13,21
   73:21 76:5,7
   77:21 79:16 90:21
   90:21
trustees 77:9
trusts 84:22
truth 27:3
try 20:10 25:3
   38:7 58:10 71:19
trying 36:18 37:1
   39:14 70:2 78:2
tunc 2:9
turn 12:12 14:23
   32:11
turned 28:21
two 9:14 10:10
   17:7 28:16 32:11
   36:22 39:8,9
   46:19 48:16 59:6
   60:6 61:7 70:7
   89:17 92:24
type 38:4 46:7

**u**

u.s. 1:23 4:22
   79:16
u.s.c. 10:15
ultimate 54:7 76:2
   77:20 81:16 89:5
   89:9
ultimately 10:22
   15:19 28:22 56:4
   81:16 83:23 86:25
umb 6:7,12 54:13
un 70:17,22 80:17
   82:17 83:24 85:2
   85:7,19 86:15
   92:10 93:1
unaffected 92:8,9
unartfully 48:20
uncomfortable
   25:1
underlying 55:16
   59:4 71:12
understand 11:21
   13:16 17:2,8,12
   26:17,21 27:1
   28:10 31:11,13,14
   31:14 33:20 35:13
   35:19 48:12 58:5
   73:2 81:20,21,21
   85:25
understanding
   12:5 27:5 30:1
   32:4 39:20 86:8
understands
   56:13
understood 16:24
   17:19 18:1 19:15
   19:16,20,21 20:3
   28:8 33:2,13,23
   39:22 45:24 48:15
   49:7,13 59:25
   62:18 63:4
unfair 25:8

unilateral 58:1
unique 26:10
  32:13 73:18
united 1:1,15 4:21
universe 44:23
unjustifiable 75:2
unjustified 61:16
  75:10
unnecessary
  59:18
unprecedented
  61:23 68:24
unreasonable
  30:18 45:20
unrepresented
  86:15
unsecured 59:1
  81:13 82:2,3,16
untenable 77:8
untimeliness 30:6
untimely 42:10
  46:3
unusual 22:10
unwilling 21:3,6
  22:16
unwillingness
  21:17
unwind 36:18
use 15:5 31:25
  54:16
utilization 79:19

**v**

v 1:11
validity 26:16
value 35:19 56:3
  71:19 81:15 83:4
  83:5 88:1
variety 60:7
various 60:9
  86:11
vast 82:17
venable 7:8

veritext 96:22
versions 9:23
veto 56:21 58:12
  62:5,19,21 67:19
  67:21 68:23 69:7
  76:3,10,23 77:10
vetoed 73:22
video 90:15
view 15:3 44:5
  50:19 52:16 55:12
  55:17 59:8,13
  74:8
views 52:13
vigorously 55:25
  70:18 74:19 77:4
  90:6
violation 82:20
void 10:23 29:6,6

**w**

wait 30:21 31:23
  33:1 44:25 51:23
  78:18
waived 18:14
walk 33:15 61:18
  63:7
walker 4:11
walsh 18:12
want 12:12 26:8
  30:9 31:25,25
  32:14,16 37:22
  40:21 43:13,25
  50:6 51:19 52:10
  52:11 66:19 68:3
  69:13,19 71:22
  75:18,19 76:9,24
  78:20 81:20,20,21
wanted 28:22
  30:3 37:10 43:11
  66:7 86:5
wanting 32:8
wants 41:1
waterfall 81:16

way 13:2 21:17
  22:15 23:5 24:13
  25:3,4 27:25 32:6
  36:14 37:1 43:12
  45:18 51:22 54:3
  54:4 57:4,7,12
  60:18 76:5 92:15
ways 58:18 65:25
  70:7
we've 29:3 67:9
  68:10 73:13,14,21
  79:15,18 82:19,22
  86:10 87:22 88:19
  91:15
wear 67:4,4
webb 7:4 25:24
  26:1,1,4,5 33:10
  33:13,17,21 34:1
  34:10,13,17 35:4
  35:12,22 36:1
  43:4,4 44:10 45:1
  45:3
webster 81:25
wednesday 52:1
  52:20,25
week 51:15,17
  52:1 65:15
weigh 68:7 89:24
weighing 34:14
welcome 26:4
went 22:12 36:6,8
west 90:14
whatsoever 29:19
  46:3
whittle 83:12
wide 22:13 38:19
william 2:16 95:9
williams 7:25 96:3
  96:14
willing 21:16
  29:13 34:21 35:14
  49:24

wilmington 1:17
  24:13
win 25:13
windfall 36:4 37:9
winston 7:1
wise 38:21
wiser 40:13
wish 8:23
withdrawn 10:23
  10:24
withdrew 23:19
  32:7
witness 27:13
witnessed 55:19
witnesses 28:15
  54:21,22
wondering 90:8
word 40:6 89:14
worded 48:20
words 40:24
  46:20 69:11
work 52:3 53:23
  58:14,18 90:10
worked 66:20
  75:22 77:15
working 43:5 65:8
  75:5
works 52:25
world 29:8,9 43:2
worth 22:7,10
  44:12
worthwhile 44:17
wright 5:4
write 53:9
written 76:4
wrong 24:20,21
  51:24
wrongful 70:9
  77:5

**x**

x 95:1

| y |
| --- |
| **yeah**   50:6 51:10 51:14 78:20 |
| **year**   8:24 9:12 10:19,24 16:22 17:7 23:22 41:13 47:17 83:10,13 84:17 87:10,19 88:1 |
| **year's**   35:25 |
| **years**   17:6,7 88:20 |
| **yenamandra**   3:7 8:7 |
| **yielded**   21:9 |
| **young**   4:19 |

| z |
| --- |
| **ziehl**   3:20 |