## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.,*[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: To be determined**<br>**Objection Deadline: To be determined** |

## MOTION OF THE REORGANIZED TCEH DEBTORS FOR ENTRY
## OF AN ORDER ENFORCING THE TCEH CONFIRMATION ORDER AND
## IMPOSING COSTS AND FEES FOR THE WILLFUL DISREGARD OF THE SAME

Pursuant to sections 524 and 1141 of the Bankruptcy Code, Articles VIII.A, VIII.D, VIII.F, and XI of the TCEH Plan, and paragraphs 89 and 97 of the TCEH Confirmation Order, the reorganized debtors formerly known as the TCEH Debtors (collectively, the "Reorganized TCEH Debtors")[2] file this motion ( "Motion") for entry of an order, substantially in the form attached as **Exhibit A** (the "Order"):   (a) enforcing the TCEH Plan injunction and TCEH Confirmation Order discharge against plaintiff Vance Dotson ("Plaintiff") regarding the filing and prosecution of *Vance Dotson v. Energy Future Holdings Corp. d/b/a TXU Energy, et al.,*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined here shall have the meanings ascribed in the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code,* dated August 29, 2016 [D.I. 9421-1] (the "TCEH Plan") or the *Order Confirming the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors,* dated August 29, 2016 [D.I. 9241] (the "TCEH Confirmation Order"), as applicable.

Case No. CIV-17-575-D in the United States District Court for the Western District of Oklahoma (the "Action") and (b) permitting the Reorganized TCEH Debtors to recover their actual costs and attorneys' fees from Plaintiff in connection with the Action for Plaintiff's willful disregard of the TCEH Confirmation Order.

In support of the Motion, the Reorganized TCEH Debtors submit the Affidavit of Sidney Garabato of Epiq Bankruptcy Solutions, LLC (the "Garabato Decl."), filed contemporaneously herewith.[3]  In further support of the Motion, the Reorganized TCEH Debtors respectfully state as follows.

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; Article XI of the TCEH Plan; paragraph 89 of the TCEH Confirmation Order; and *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly [has] jurisdiction to interpret and enforce its own prior orders.").[4]

2.      This is a core proceeding pursuant to, *inter alia*, 28 U.S.C. § 157(b)(2)(L).[5]

---

[3]  Given the exigent nature of the Motion, and the attendant time constraints in finalizing and filing the Motion, the Reorganized TCEH Debtors anticipate filing supplemental affidavit(s) in support of the Motion as soon as practicable in the coming days.

[4]  The Reorganized TCEH Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

[5]  A bankruptcy court's interpretation and enforcement of an order relating to a core proceeding, including a confirmation order, is also a core proceeding. *See, e.g., Jamaica Shipping Co. Ltd. v. Orient*
(Continued...)

3.     Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The statutory predicates for the relief sought in this matter are 11 U.S.C. §§ 105, 524(a)(2), 1141(a)-(c), and 1141(d)(1).

## Relief Requested

5.     By this Motion, the Reorganized TCEH Debtors seek to enjoin Plaintiff from prosecuting the Action, which arises from prepetition claims that were discharged in the TCEH Debtors' chapter 11 cases. Accordingly, the Reorganized TCEH Debtors seek entry of the Order (a) enforcing the discharge, release, and injunction provisions in the TCEH Plan and TCEH Confirmation Order, (b) directing Plaintiff to dismiss the Action with prejudice against all remaining defendants except Experian Information Solutions, Inc. ("Experian") (which is unrelated to the Debtors), (c) forever and permanently enjoining Plaintiff from commencing or continuing any action or otherwise acting to assert any of the claims and/or causes of action asserted or that could have been asserted against the TCEH Debtors in the Action, and (d) permitting the Reorganized TCEH Debtors to recover their actual costs and attorneys' fees from Plaintiff in connection with the Action, including the prosecution of this Motion.

---

*Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.)*, 458 F.3d 92, 95 (2d Cir. 2006) (citing, *inter alia, Mt. McKinsley Ins. Co., f/k/a Gibralter Cas. Co. v. Corning Inc.*, 399 F.3d 436, 449 (2d Cir. 2005)); *Tenet Healthsystem Phila., Inc. v. Nat'l Union of Hosp. & Health Care Emp'ees, AFSCME, AFL-CIO, District 1199C (In re Allegheny Health Educ. & Research Foundation)*, 383 F.3d 169, 175 (3d Cir. 2004); *In re Land Am. Fin. Grp., Inc.*, Case No. 08-35994-KRH, slip op. at 5 (Bankr. E.D. Va. Apr. 30, 2013) ("This Court has core jurisdiction to interpret its Confirmation Order at issue here, and to enforce the terms of the confirmed Plan."); *In re Lyondell Chem. Co.*, 445 B.R. 227, 287 (Bankr. S.D.N.Y. 2011) ("[A] bankruptcy court retains core jurisdiction to interpret and enforce its own prior orders, including and especially confirmation orders."); *In re Jones*, No. 09-14499, 2011 Bankr. LEXIS 4083, at *1 (Bankr. E.D. Va. Oct. 21, 2011) ("Bankruptcy Courts plainly have jurisdiction to interpret and enforce their own prior orders." (citing *Travelers*, 557 U.S. 137)).

## Background

### I.    These Chapter 11 Cases

####    A.    Overview

6.    On April 29, 2014 (the "Petition Date"), each of the above-captioned debtors and debtors in possession (the "Debtors"), including TXU Energy Retail Company LLC, filed voluntary petitions with the Court under the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].

7.    The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company on May 13, 2014 [D.I. 420], and an official committee of unsecured creditors of Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. on October 27, 2014 [D.I. 2570].

8.    Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

####    B.    The TCEH Plan and TCEH Confirmation Order

9.    On August 29, 2016, the Bankruptcy Court entered the TCEH Confirmation Order confirming the TCEH Plan. On October 3, 2016, the TCEH Plan went effective as to

4

certain of the Debtors, who became the Reorganized TCEH Debtors (the "Effective Date"). There has been no final decree closing any of the chapter 11 cases.

10.    Paragraph 97 of the TCEH Confirmation Order provides that "[a]ll injunctions or stays contained in the Plan as it relates to the TCEH Debtors . . . or the TCEH Confirmation Order shall remain in full force and effect in accordance with their terms."

11.    Article VIII.A ("Discharge of Claims and Termination of Interests") of the TCEH Plan states:

> Pursuant to section 1141 (d) of the Bankruptcy Code. . . the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims . . . and Causes of Action of any nature whatsoever . . . regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date . . . , in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. . . . The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

12.    Article VIII.F ("Injunction") of the TCEH Plan states:

> [A]ll Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to . . . Article VIII.D of the Plan, . . . are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, or the Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests . . . .

13.    Article VIII.D ("Releases by Holders of Claims and Interests") of the Plan provides:

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all . . . Claims and Causes of Action, whether known or unknown, . . . based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), . . . or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

14.    Article I.334 of the Plan defines "Releasing Parties" to include all holders of a "claim"—as defined by section 101(5) of the Bankruptcy Code—against the Debtors.

15.    Article I.333 of the Plan defines "Released Parties" to include:

[W]ith respect to each of the Debtors, the Reorganized Debtors . . . such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

16.    Paragraph 89 of the TCEH Confirmation Order and Article XI of the TCEH Plan grant the Bankruptcy Court the exclusive jurisdiction to interpret and enforce the TCEH Confirmation Order and the TCEH Plan.

## II.    Plaintiff and These Chapter 11 Cases

### A.    Plaintiff's Pre-Petition Conduct

17.    Based on the Debtors' books and records, Plaintiff was a customer during the prepetition period.

18.     On January 23, 2013, TXU Energy sent a letter to Plaintiff, informing him that he

owed an outstanding balance of $107.85. *See* Ex. 1, M. Thompson Letter to B. Ponder (June 26,

2017) at Exhibit A.[6]    The letter also notified Plaintiff that if he failed to make payment

arrangements within 10 days, TXU Energy could "report [his] account to one or more credit

bureaus to make it part of [his] credit record where it may impact [his] ability to obtain credit."

The letter referenced a customer account number ending in XXXXXX573928.[7]

19.     Based on the Debtors' books and records, TXU Energy reported Plaintiff's debt to

the credit bureaus on April 24, 2013.

20.     On February 5, 2014—nearly three months before the Petition Date—Plaintiff

faxed a letter to TXU Energy, stating:

> "[Y]our firm has violated the law (including but not limited to) . . .
> the Fair Credit Reporting Act . . . . You have communicated and
> are continuing to communicate incorrect and defamatory
> information to third parties, including, but not limited to, Equifax,
> Experian, and TransUnion."

Plaintiff's letter referenced the same customer account number (XXXXXX573928) that was

referenced in the Debtors' January 23, 2013 letter. *See* Ex. 1, M. Thompson Letter to B. Ponder

(June 26, 2017) at Exhibit B.

21.     Further, on information and belief, Plaintiff filed a direct dispute with the credit

bureaus on or about April 21, 2014—again, ***before*** the Petition Date.

---

[6] Exhibits referenced herein are attached to the *Declaration of Bryan M. Stephany, Esq. in Support of the Motion of the Reorganized TCEH Debtors for Entry of an Order Enforcing the TCEH Confirmation Order and Imposing Costs and Fees for the Willful Disregard of the Same*, filed contemporaneously herewith.

[7] Out of an abundance of caution, the Reorganized TCEH Debtors have redacted the first six digits of Plaintiff's customer account number, as well as address information, in Exhibit 1 to the Stephany Declaration.

22.     Accordingly, Plaintiff's Fair Credit Reporting Act claim—for the same debt at issue in the complaint—arose prepetition.

**B.    The Customer Bar Date**

23.     On the Petition Date, the Debtors filed the *Motion of Energy Future Holdings Corp., et al., for Entry of (A) An Order Authorizing the Debtors to (I) Maintain and Administer Customer Programs and Customer Agreements, (II) Honor Prepetition Obligations Related Thereto, (III) Pay Certain Expenses on Behalf of Certain Organizations, (IV) Fix the Deadline to File Proofs of Claim for Certain Customer Claims, and (V) Establish Procedures for Notifying Customers of Commencement of the Debtors Chapter 11 Cases, Assumption of Customer Agreement, and the Bar Date for Customer Claims and (B) An Order Authorizing Certain of the Debtors to Assume the Customer Agreements* (the "Customer Programs Motion").

24.     Pursuant to the Customer Programs Motion, the Debtors sought, among other things, to fix a bar date of October 27, 2014 at 5:00 p.m. (prevailing Eastern Time) (the "Customer Bar Date") for filing proofs of claim for any customer against any Debtor and to establish noticing procedures to provide notice to current and former customers of commencement of the Chapter 11 Cases.

25.     On May 2, 2014, the Bankruptcy Court set the Customer Bar Date and approved the noticing procedures with respect to the Customer Bar Date [D.I. 307].

26.     Plaintiff received actual notice of the Customer Bar Date at a location that matches an address on Plaintiff's February 5, 2014 letter. *See* Garabato Aff. at ¶ 4. Service was not returned undeliverable. *See id.* Plaintiff did not file a proof of claim in these chapter 11 cases. *See id.* at ¶ 5.

8

### III.    Plaintiff's Action

27.    On May 19, 2017, Plaintiff filed the Action in the United States District Court for the Western District of Oklahoma (the "Oklahoma District Court") against sixteen defendants: Experian, EFH Corp., and fifteen entities that were TCEH Debtors or predecessors and affiliates of the TCEH Debtors. *See* Ex. 2, Complaint, dated May 19, 2017 (W.D. Okla. Case No. CIV-17-575-D, D.I. 1). As detailed in paragraph 36 below, many of the non-Experian defendants are inactive entities, including some that were inactive long before the Petition Date.

28.    Plaintiff alleged that on *May 5, 2016*, he "discovered" and "observed" a debt of *$107* from TXU Energy that "is likely the result of identity theft because Mr. Dotson has never done business with TXU Energy Defendants."[8] *See* Ex. 2, Complaint at ¶¶ 8, 9. Plaintiff sought relief under the Fair Credit Reporting Act, which provides, under certain circumstances, a private right of action against a person that furnishes information to credit rating agencies.

29.    The prepetition correspondence summarized above raises serious questions about the inquiry into the evidentiary support for the factual allegations in the Complaint. The matching references to a $107 charge in the Complaint and TXU Energy's January 23, 2013 letter—and the matching account numbers in that letter and Plaintiff's February 5, 2014 letter—clearly demonstrate that Plaintiff's allegations arose from prepetition conduct.

30.    On June 21, 2017, the Reorganized TCEH Debtors filed a notice of suggestion of bankruptcy in the Oklahoma District Court. *See* Ex. 3, *Notice of (I) Suggestion of Pendency of Bankruptcy for Energy Future Holdings Corp., et al. and Automatic Stay of These Proceedings, (II) Confirmation Order and Injunction, and (III) Exclusive Jurisdiction of Bankruptcy Court to*

---

[8] Plaintiff defined "TXU Energy Defendants" to include all non-Experian defendants, including EFH Corp.

*Interpret and Enforce the Confirmation Order*, dated June 21, 2017 (W.D. Okla. Case No. CIV-17-575-D, D.I. 11). The notice identified TCEH Plan and TCEH Confirmation Order provisions excerpted in Part I(B) above (except Art. VIII.A of the TCEH Plan) and attached the chapter 11 petition of EFH Corp., the TCEH Confirmation Order, and the TCEH Plan.

31. On June 22, 2017, Plaintiff filed a response to the notice. *See* Ex. 4, *Response to Notice [11] Filed by Defendant Energy Future Holdings Corp.* (W.D. Okla. Case No. CIV-17-575-D, D.I. 12) (the "Response"). Plaintiff stated, among other things, that "Dotson's instant action is not one which could have been commenced before EFH's commencement of its case chapter 11 of title 11 of the United States Code." *See id.* Plaintiff relied solely on his unsubstantiated allegations in the complaint.

32. On June 27, 2017, Plaintiff voluntarily dismissed EFH Corp., TXU Energy Retail Company LLC, and TXU Energy Solutions Company LLC from the Action. *See* Ex. 5, *Notice of Voluntary Dismissal* (W.D. Okla. Case No. CIV-17-575-D, D.I. 14). As a result of Plaintiff's dismissal of EFH Corp., issues concerning the automatic stay applicable to EFH Corp. became moot. (The EFH/EFIH Debtors are not participating in this Motion.)

33. On June 30, 2017, Plaintiff filed a motion with the Clerk of the Oklahoma District Court, requesting entry of default against TXU Energy Solutions Management Company LLC, TXU Energy Industries Company, and TXU Energy Services Company LLC. Ex. 6, *Motion for Entry of Default* (W.D. Okla. Case No. CIV-17-575-D, D.I. 15).

34. On September 19, 2017, the Oklahoma District Court entered an order concluding, "as alleged by Plaintiff, . . . the TXU Energy Defendants' conduct giving rise to Plaintiff's claim occurred postpetition. . . . As such, Plaintiff's claim is not subject to the automatic stay." Ex. 7, Order at 4. The Oklahoma District Court did not make any evidentiary

findings. The Oklahoma District Court did not address the discharge and injunction provisions in the TCEH Plan and TCEH Confirmation Order, which are separate and apart from the automatic stay issue.

35.    On September 21, 2017, the three defendants against which Plaintiff sought entry of default—TXU Energy Solutions Management Company LLC, TXU Energy Industries Company, and TXU Energy Services Company LLC—filed a motion for leave to object to the motion for entry of default. *See* Ex. 8, *Amended Motion for Leave to File Objection to Entry of Default and Brief in Support* (W.D. Okla. Case No. CIV-17-575-D, D.I. 24). Those defendants noted they had "made a good-faith determination to refrain from filing any responsive pleading for reasons including, but not limited to, concerns regarding potential confusion about the court of proper jurisdiction over certain matters." *Id.* at ¶ 6.

36.    The status of the following non-Experian defendants in the Action is summarized below. All three defendants against whom Plaintiff moved for entry of a default are predecessors to the three entities that Plaintiff dismissed.

| Defendant | Status |
|---|---|
| **Voluntarily Dismissed by Plaintiff** | |
| Energy Future Holdings Corp. | Debtor. |
| TXU Energy Retail Company LLC | Reorganized TCEH Debtor. |
| TXU Energy Solutions Company LLC | Former Debtor. Merged into TXU Energy Retail Company LLC in 2016. Plaintiff dismissed TXU Energy Retail Company LLC on June 27, 2017. |
| **Case Pending - Motion for Entry of Default Filed** | |
| TXU Energy Industries Company | Merged into EFH Corp. in 2003. Plaintiff dismissed EFH Corp. on June 27, 2017. |
| TXU Energy Services Company LLC | Merged into TXU Energy Retail Company LP in 2001. TXU Energy Retail Company LP is not an active entity and is the former name of TXU Energy Retail Company LLC, which Plaintiff dismissed on June 27, 2017. |

| Defendant | Status |
|---|---|
| TXU Energy Solutions Management Company LLC | Merged into TXU Energy Solutions Company LLC in 2007. Plaintiff dismissed TXU Energy Solutions Company LLC on June 27, 2017. |
| **Case Pending - Motion for Entry of Default Not Filed** | |
| TXU Energy Trading (Canada) Company | Dissolved in 2004. |
| TXU Portfolio Management Company LP | Converted to Luminant Energy Company LLC in 2007. |
| TXU Portfolio Optimization Company LLC | Merged into Luminant Holding Company LLC in 2007. |
| TXU Energy Gas Asset Management Company | Dissolved in 2004. |
| TXU Energy Holdings Company | Dissolved in 2007. |
| TXU Energy Retail Company LP | Former name of TXU Energy Retail Company LLC. |
| TXU Energy Retail Management Company LLC | Dissolved in 2010. |
| TXU Energy Services Company | Merged into TXU Transition Energy Services Company LLC in 2001. |
| TXU Energy Solutions Company LP | Merged into TXU Energy Retail Company LLC in 2016. |

## IV.    The Reorganized TCEH Debtors' Good-Faith Efforts to Inform Plaintiff's Counsel

37.    The Reorganized TCEH Debtors worked in good-faith to inform Plaintiff's counsel of the procedural roadblocks to the Action and to avoid burdening the Court with this issue.

38.    On June 19, 2017, Debtors' counsel sent a letter to Plaintiff's counsel about the Action. *See* Ex. 9, M. Thompson Letter to B. Ponder (June 19, 2017). The letter stated:

> Based on the Debtors' preliminary review of their books and records, the Lawsuit is an attempt to recover a claim against the Debtors that arose before the Petition Date. Regardless, Plaintiff alleges the cause of action arose on May 5, 2016—before the Confirmation Order and the Effective Date. Accordingly, your attempt to pursue the Lawsuit as to the Reorganized TCEH Debtors violates the injunction in the Plan and the Confirmation Order and multiple provisions of the Bankruptcy Code. As to EFH, the Lawsuit is subject to the automatic stay.

The letter also provided information about the provisions of the TCEH Plan, TCEH Confirmation Order, and Bankruptcy Code provisions that the Action violates. The TCEH Debtors noted that they reserved the right to pursue remedies for any violations of the Bankruptcy Code, the TCEH Confirmation Order, and the TCEH Plan, and any costs regarding the same.

39.     That same day, Plaintiff's counsel requested—and Debtors' counsel agreed to—a phone call to discuss the matter. During the call, Debtors' counsel reiterated the position set forth in the June 19, 2017 letter.

40.     On June 23, 2017, Debtors' counsel sent another letter to Plaintiff's counsel, sharing the Debtors' position that Plaintiff's June 22, 2017 Response "demonstrates a complete disregard by you and your client of the Bankruptcy Code and the Confirmation Order—despite our good-faith effort to notify you of the same before taking protective action." *See* Ex. 10, M. Thompson Letter to B. Ponder (June 23, 2017). Debtors' counsel reiterated that the Reorganized TCEH Debtors would pursue remedies in the Bankruptcy Court, including the recovery of costs, unless Plaintiff dismissed the Action with prejudice.

41.     Later that day, at the request of Plaintiff's counsel, the parties held another call to discuss the matter.

42.     On June 26, 2017, the Debtors' counsel sent a third letter to Plaintiff's counsel. *See* Ex. 1, M. Thompson Letter to B. Ponder (June 26, 2017). The letter attached and summarized some of the prepetition correspondence between Plaintiff and TXU Energy that demonstrate Plaintiff could have brought his Fair Credit Reporting Act claims before the Petition Date. The Reorganized TCEH Debtors warned Plaintiff—for a ***third*** time—that they would

13

pursue remedies in the Bankruptcy Court, including the recovery of costs, unless Plaintiff dismissed the Action with prejudice.

43.    On September 20, 2017—following the automatic stay order by the Oklahoma District Court—Debtors' counsel again called Plaintiff's counsel and stated that the Reorganized TCEH Debtors planned to file the Motion.

## ARGUMENT

I.    **Plaintiff Knowingly Continues to Pursue the Action Despite Notice that it Violates the Discharge and Injunction.**

A.    **Consummation of the TCEH Plan Discharged All Pre-Effective Date Claims Against the Reorganized TCEH Debtors and their Predecessors.**

44.    It is well-settled that consummation of a confirmed chapter 11 plan discharges any and all debts of the debtor that arose prior to the effective date of the plan in accordance with the provisions of the plan and the Bankruptcy Code. 11 U.S.C. § 1141(d)(1). Sections 1141(a)-(c) and (d)(1) of the Bankruptcy Code provide, in relevant part:

> (a) [T]he provisions of a confirmed plan bind . . . any creditor . . . whether or not the claim . . . of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan.
>
> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
>
> (c) [E]xcept as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors . . . .
>
> (d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>
> > (A) discharges the debtor from any debt that arose before the date of such confirmation, . . . whether or not—
> >
> > > (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title . . . .

14

11 U.S.C. §§ 1141(a)-(c) and (d)(1)(A)(i).

46.    This Court confirmed the TCEH Plan on August 29, 2016, and it became effective on October 3, 2016.[9] Pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the bankruptcy estate vested in the Reorganized TCEH Debtors, "*free and clear* of all *claims* and interests of creditors,*" including the claims asserted by Plaintiff in the Action. *See* 11 U.S.C. § 1141(c) (emphasis added). Moreover, pursuant to section 1141(d)(1) of the Bankruptcy Code, all "debts"[10] of the Reorganized TCEH Debtors that arose prior to the TCEH Confirmation Date (*i.e.*, August 29, 2016) were discharged whether or not a proof of claim based on such debt was filed.

46.    Section 524(a) of the Bankruptcy Code provides the statutory authority for the discharge of the Reorganized TCEH Debtors. It operates as a permanent injunction against the commencement or continuation of any action to recover or offset any discharged claim against them. Specifically, section 524(a)(2) of the Bankruptcy Code provides:

(a) A discharge in a case under this title—

\*        \*        \*

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

11 U.S.C. § 524(a)(2).

---

[9] *See Notice of Entry of TCEH Confirmation Order and Occurrence of TCEH Effective Date* [D.I. 9742].

[10] The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12).

47.    The legislative history of section 524 of the Bankruptcy Code leaves no question about the finality and sweeping and "complete effect" of the discharge and permanent injunction: Section 524(a) "is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it.  In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that." H.R. Rep. 595, 95th Cong., 1st Sess. 365-66 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 80 (1978).

48.    Consistent with section 524(a)(2) of the Bankruptcy Code, the TCEH Plan and TCEH Side Confirmation Order contain a discharge of all pre-effective Date claims and a permanent injunction forever restraining the pursuit of discharged claims against the Debtors. Paragraph 97 of the TCEH Confirmation Order provides that "[a]ll injunctions or stays contained in the Plan as it relates to the TCEH Debtors . . . or the TCEH Confirmation Order shall remain in full force and effect in accordance with their terms."

49.    Article VIII.A ("Discharge of Claims and Termination of Interests") of the TCEH Plan states:

> Pursuant to section 1141 (d) of the Bankruptcy Code. . .  the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims . . . and Causes of Action of any nature whatsoever . . . regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date . . . , in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. . . . The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

50.    Article VIII.F of the TCEH Plan ("Injunction") provides:

[A]ll Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to . . . Article VIII.D of the Plan, . . . are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, or the Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests . . . .

51.    Article VIII.D of the TCEH Plan ("Releases by Holders of Claims and Interests")

provides:

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all . . . Claims and Causes of Action, whether known or unknown, . . . based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), . . . or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

52.    Article I.334 of the TCEH Plan defines "Releasing Parties" to include all holders

of a "claim"—as defined by section 101(5) of the Bankruptcy Code—against the Debtors.

53.    Article I.333 of the TCEH Plan defines "Released Parties" broadly and to include:

[W]ith respect to each of the Debtors, the Reorganized Debtors . . . such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

54.    Based on a review of their books and records, all Debtor-defendants other than

EFH Corp., which Plaintiff dismissed, are current and former affiliates or predecessors of the

Reorganized TCEH Debtors. Thus, all remaining defendants to Plaintiff's Action are "Released Parties" as defined by the TCEH Plan.

55.     Accordingly, pursuant to the Bankruptcy Code, the TCEH Confirmation Order, and the TCEH Plan, all claims asserted by Plaintiff against the Debtors that arose prior to the October 3, 2016 Effective Date were discharged, and Plaintiff is permanently enjoined from prosecuting such claims.

**B.     The Action Asserts Claims that Were Discharged in the TCEH Debtors' Chapter 11 Cases.**

56.     As demonstrated above, all pre-Effective Date "claims" against the Reorganized TCEH Debtors were discharged. The Bankruptcy Code defines "claim" broadly in section 101(5)(A) as a "right to payment" against a debtor whether or not contingent, unmatured, or unliquidated at the time of the bankruptcy case. 11 U.S.C. § 101(5).

57.     The legislative history of the Bankruptcy Code underscores Congressional intent to broadly define "claim" to afford a debtor the "broadest possible relief" under the Bankruptcy Code: "[T]he bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R. Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5807-08.

58.     Based on the foregoing, courts overwhelmingly have recognized and given effect to the broad scope of the Bankruptcy Code's definition of "claim." *Ohio v. Kovacs*, 469 U.S. 274, 279 (1985) ("[I]t is apparent that Congress desired a broad definition of a 'claim' and knew how to limit [its] application[.]"); *In re Continental Airlines*, 125 F.3d 120, 132 (3d Cir. 1997) ("The term 'claim' as defined in the bankruptcy code is construed broadly to permit debtors to meet all of their legal obligations in bankruptcy and to enable holders of claims to participate in the bankruptcy proceedings.").

18

59.    A claim arises "when an individual is exposed pre-petition to . . . conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." *JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 125 (3d Cir. 2010); *see also In re Chateaugay Corp.*, 112 B.R. 513, 520 (S.D.N.Y. 1990) (claim arises "'at the time when acts giving rise to the alleged liability are performed'"), *aff'd*, 944 F.2d 997 (2d Cir. 1991) (quoting *In re Johns-Manville Corp.*, 57 B.R. 680, 689 (Bankr. S.D.N.Y. 1986)).  This is consistent with Congressional intent to define "claim" broadly in the Bankruptcy Code so that practically all claims against the debtor can be dealt with in the bankruptcy case. *In re Mazzeo*, 131 F.3d 295, 302 (2d Cir. 1997) ("In sum, by defining 'claim' so broadly and by defining 'debt' in terms of 'claim,' Congress has 'adopt[ed] the 'broadest possible' definition of 'debt.'") (citations omitted).

60.    Plaintiff's own prepetition correspondence demonstrates that his claim arises from prepetition conduct. *See* Ex. 1, M. Thompson Letter to B. Ponder (June 26, 2017) at Exhibit A and B.  While the Reorganized TCEH Debtors firmly believe those documents are dispositive, even assuming *arguendo* that Plaintiff's claim arose postpetition, such claims still arose before the Effective Date. *See* Ex. 2, Complaint at ¶¶ 8, 9 (alleging that on May 5, 2016, he "discovered" and "observed" a debt of $107 from TXU Energy).  Accordingly, Plaintiff's claims relate to conduct that occurred prior to the Petition Date—or, at the very least, the Effective Date—and, thus, were discharged by operation of the TCEH Confirmation Order and applicable bankruptcy law.

61.    In light of Plaintiff's own refusal to abide by this Court's TCEH Confirmation Order, any further litigation of the Action may cause or encourage others to file actions in venues

other than this Court, creating unnecessary confusion and added interference with these chapter 11 cases.

62.     Indeed, Plaintiff bills himself as the "Credit Doctor" and may attempt to bring similar litigations, including on behalf of others. *See* Vance The Credit Doctor, http://www.vancethecreditdoctor.com (last visited on Sept. 22, 2017). Plaintiff "has been a consumer advocate since 2004" and "is focused on helping ***consumers throughout the country*** with consumer protection laws mainly dealing with the Fair Credit Reporting Act." *See* Vance The Credit Doctor - Meet Our Team, http://www.vancethecreditdoctor.com/about.php (last visited on Sept. 22, 2017) (emphasis added).   In short, if the relief requested herein is not granted, other parties may also decide to institute improper actions against the Reorganized TCEH Debtors outside of this Court's jurisdiction.

### C.     Plaintiff Had Actual Notice of the Debtors' Chapter 11 Cases and is Bound by the TCEH Confirmation Order.

63.     The chapter 11 filing of the TCEH Debtors received significant regional and national media attention. *See, e.g.,* James Osborne, *Energy Future files for bankruptcy, company splitting up,* Dallas News (Apr. 29, 2014), https://www.dallasnews.com/business/business/2014/04/29/energy-future-files-for-bankruptcy-company-splitting-up; Mike Spector, Emily Glazer & Rebecca Smith, *Energy Future Holdings Files for Bankruptcy,* Wall St. J. (Apr. 29, 2014), https://www.wsj.com/articles/energy-future-holdings-files-for-chapter-11-bankruptcy-1398767452.   Simultaneously, the Debtors invested in significant outreach efforts to their retail customers, providing notice to more than ***3.5 million*** customers shortly after the Petition Date. *See* Garabato Aff. at ¶ 4.

64.     The Debtors provided actual notice of the Customer Bar Date to Plaintiff at a location that matches an address on Plaintiff's February 5, 2014 letter. *See id.*  Service was not

20

returned undeliverable. *See id.* Therefore, Plaintiff was on notice that, to preserve any purported claim, he had to file a proof of claim prior to the Customer Bar Date on October 27, 2014. Fed. R. Bankr. P. 3003(c)(2). Moreover, a putative claimholder with actual knowledge of a chapter 11 case has a duty to investigate the proceedings to determine whether its rights are implicated. *See, e.g., In re Christopher*, 28 F.2d 512, 518 (5th Cir. 1994) ("We have concluded that it does not offend due process to view actual notice of a debtor's bankruptcy to a prepetition creditor as placing a burden on the creditor to come forward with his claim."); *In re Sam*, 894 F.2d 778, 781-82 (5th Cir. 1990) ("When [appellant] received the Notice of Automatic Stay eighteen days prior to the bar date, he was on notice that his . . . claim against [the debtor] was affected by [the debtor's] bankruptcy, and he had eighteen days to inquire as to the bar date and file his complaint or a motion to extend the bar date. Thus, [appellant] had the 'actual knowledge of the case' necessary to permit him to take steps to protect his rights. Such notice is all that is required . . . .").

65.    Plaintiff did not file *any* proof of claim in these chapter 11 cases, let alone a timely filed claim. *See* Garabato Aff. at ¶ 5. Therefore, Plaintiff is now enjoined from prosecuting the prepetition claims underlying the Action against the Reorganized TCEH Debtors.

**II.    Section 105(a) of the Bankruptcy Code Permits This Court to Require Plaintiff to Pay the Reorganized TCEH Debtors' Costs and Fees.**

66.    "A bankruptcy court has the inherent power, under [section 105 of the Bankruptcy Code], to hold parties in civil contempt for violation of its orders." *In re Masterwear Corp.*, 229 B.R. 301, 310 (Bankr. S.D.N.Y. 1999) (citing *In re Ionosphere Clubs, Inc.*, 171 B.R. 18, 21 (Bankr. S.D.N.Y 1992). To hold a party in contempt, "the movant must show (1) that the order not complied with is clear and unambiguous, (2) the proof of the noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable

21

manner." *In re Masterwear Corp.*, 229 B.R. at 310 (citing *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).

67.     Recovery of costs is one method of redress. *See, e.g., In re Ritchey*, 512 B.R. 847, 872 (Bankr. S.D. Tex. 2014) ("The Court concludes that the Debtors are entitled to recover $13,431.69—representing $1,373.10 for actual damages, $11,209.00 of their requested fees, and $849.59 of their requested expenses—as a form of sanctions for Ductwork's violation of the Discharge Order.")

68.     Plaintiff's continued prosecution of the Action despite full knowledge of this Court's TCEH Confirmation Order—and being repeatedly informed that Plaintiff's actions violate federal law and a federal court order—warrants an order requiring Plaintiff to pay the actual costs and attorneys' fees incurred by the Reorganized TCEH Debtors in connection with the Action.

69.     *First*, the application of the TCEH Confirmation Order cannot be clearer. It granted the Reorganized TCEH Debtors and their predecessors a broad injunction against all pre-Effective Date causes of action. Plaintiffs' own prepetition correspondence shows his claim regarding the $107 outstanding balance arose before the *Petition Date*, let alone the Effective Date. *See* Ex. 1, M. Thompson Letter to B. Ponder (June 26, 2017) at Exhibit A and Exhibit B.

70.     *Second*, Plaintiff has clearly and convincingly ignored this Court's order. Debtors' counsel notified Plaintiff's counsel *at least six times* that the Action violated the Bankruptcy Code and the TCEH Confirmation Order.

71.     *Third*, Plaintiff has not attempted—much less, diligently attempted—to comply with either the Bankruptcy Code or the TCEH Confirmation Order. Plaintiff has repeatedly ignored requests to dismiss the Action and has given no indication that he intends to do so. In

22

fact, on September 20, 2017, Plaintiff renewed his motion for entry of a default by emailing a proposed order to the Oklahoma District Court directly.

72.    Accordingly, this Court should permit the Reorganized TCEH Debtors to recover their actual costs and attorneys' fees from Plaintiff in connection with the Action and the prosecution of this Motion.    In addition to compensating them for defending against this frivolous litigation, such an order will serve as an important reminder and deterrent to those, like Plaintiff, who seek to flaunt this Court's orders.

## Notice

73.    The Reorganized TCEH Debtors shall provide notice of this Motion on the date hereof via overnight delivery to: (a) the U.S. Trustee; (b) Plaintiff (and counsel to Plaintiff); and (c) those parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b).  The Reorganized TCEH Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

74.    The Reorganized TCEH Debtors anticipate providing the Oklahoma District Court with a copy of this Motion.

## Prior Request

75.    No prior request for the relief sought herein has been made to this or any other court.

## Conclusion

The Reorganized TCEH Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and such other and further relief as is appropriate under the circumstances.

Dated: September 22, 2017
Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:        (302) 651-7700
Facsimile:        (302) 651-7701
Email:             collins@rlf.com
                      defranceschi@rlf.com
                      madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:             edward.sassower@kirkland.com
                      stephen.hessler@kirkland.com
                      brian.schartz@kirkland.com
                      aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:             james.sprayregen@kirkland.com
                      marc.kieselstein@kirkland.com
                      chad.husnick@kirkland.com
                      steven.serajeddini@kirkland.com

Co-Counsel to the Reorganized TCEH Debtors