IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: D.I. 11932** |

**DECLARATION OF TIM HARTLEY IN SUPPORT OF THE
MOTION OF THE REORGANIZED TCEH DEBTORS FOR ENTRY
OF AN ORDER ENFORCING THE TCEH CONFIRMATION ORDER AND
IMPOSING COSTS AND FEES FOR THE WILLFUL DISREGARD OF THE SAME**

I, Tim Hartley, hereby declare as follows:

1. I make this declaration in support of the *Motion of the Reorganized TCEH Debtors for Entry of an Order Enforcing the TCEH Confirmation Order and Imposing Costs and Fees for the Willful Disregard of the Same*, dated September 22, 2017 [D.I. 11932] (the "Motion").[2]

2. I am a Senior Collections Manager for TXU Energy, a subsidiary of Vistra Energy Corp. I have worked for TXU Energy and its predecessors for 28 years. I have been a Senior Collections Manager for the past three years. Prior to that, I was a Collections Manager for 11 years, which was the position I held as of April 29, 2014, when the TCEH Debtors filed for chapter 11 protection.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined herein have the meanings assigned to them in the Motion.

3.      As a Collections Manager and Senior Collections Manager, I am generally familiar with TXU Energy's businesses and day-to-day operations, particularly as it relates to outstanding customer balances. I oversee a team of approximately 45 specialists, about one-third of whom operate from Irving, Texas, and two-thirds of whom operate from Guatemala City, Guatemala. My team and I are primarily responsible for addressing customer inquiries, disputes, and collections; investigating and addressing fraud-related matters; coordinating TXU Energy's reporting and validations to the credit bureaus; and managing the refund department.

4.      In the course of its regularly conducted business activities, TXU Energy uses various systems to record all interactions and communications with its customers. Such records are made by a person with knowledge of the customer communication, or from information transmitted by a person with knowledge, all in the ordinary course of TXU Energy's business. TXU Energy utilizes two primary platforms to record customer interactions related to credit reporting and consumer disputes:

- **CARE** is software that captures customer contacts with TXU Energy. This is the system of record for customer accounts.

- **SalesForce** is TXU Energy's repository to capture and log incoming issues.[3] The SalesForce platform also facilitates TXU Energy's efforts to coordinate appropriate responses. When a customer sends an inbound communication to TXU Energy (*i.e.*, an e-mail or fax), the system generates an automatic response, thanking the customer for reaching out. TXU Energy then coordinates a more substantive response.

5.      My team and I are also responsible for reporting and responding to debt validations requests from the credit bureaus. TXU Energy utilizes two platforms to ensure responsible and direct reporting to—and receipt of information from—the credit bureaus:

---

[3] TXU Energy has used SalesForce since 2014. Prior to Salesforce, TXU Energy used a similar system known as RightNow.

- **Metro2** allows TXU Energy to report customer information directly to the major consumer credit bureaus.

- **E-Oscar** allows consumers to lodge disputes directly with the major consumer credit bureaus. When a consumer submits a dispute to a credit bureau, E-Oscar provides an electronic notification to TXU Energy, which can respond using the platform. E-Oscar supports the automatic consumer dispute verification forms ("ACDVs").

6. Following TXU Energy's receipt of the complaint in *Vance Dotson v. Energy Future Holdings Corp. d/b/a TXU Energy, et al.*, Case No. CIV-17-575-D, dated May 19, 2017, in the United States District Court for the Western District of Oklahoma, my team and I used the platforms noted above to collect (a) prior communications between Mr. Dotson and TXU Energy related consumer credit bureau reporting and validations and (b) the disputes that Mr. Dotson lodged directly with the consumer credit bureaus. Those communications, along with other documents regarding the applicable account, are summarized below. The attachments are true and accurate copies of the prepetition communications collected from TXU Energy's databases and/or files.[4]

7. TXU Energy has no record of any its communications with Mr. Dotson (via postal mail or otherwise) being returned undeliverable.

I. **Account Enrollment and Failure to Pay.**

8. On December 2, 2012, a customer account was created for the property located at XXXX Vantage Point Dr., Apt. XXX, Dallas, TX 75243-0526 (the "Account"). TXU Energy assigned it a customer account number of XXXXXX573928 (the "Account Number"). TXU Energy began providing electric service to the property on December 3, 2012.

---

[4] Out of an abundance of caution, *de minimis* redactions have been applied herein and to the exhibits to avoid unnecessary disclosure of personal information.

9. On December 19, 2012, a person identified as Mr. Dotson called TXU Energy to request a move-out (or "MVO"). The caller stated there was no forwarding address. TXU Energy discontinued service that day.

10. On December 21, 2012, TXU Energy mailed the applicable invoice for the outstanding balance of $107.85 to the service address associated with the Account. *See* **Exhibit 1**. The invoice referenced the Account Number.

11. From December 21, 2012 until February 15, 2013, TXU Energy placed the Account in its Early Out Program ("EOP"). TXU Energy uses the EOP to work constructively with its customers to facilitate resolution of outstanding invoices before TXU Energy refers any accounts to a collections firm or a consumer credit bureau. TXU Energy provides every customer approximately 115 days from a MVO before TXU Energy makes any report to any consumer credit bureau.

12. On January 23, 2013, TXU Energy sent a letter to Mr. Dotson at the service address associated with the Account, reminding him that he owed an outstanding balance of $107.85. *See* **Exhibit 2**. This letter referenced the Account Number that appeared on the December 21, 2012 invoice. The letter also notified Mr. Dotson that if he failed to make payment arrangements within 10 days, TXU Energy could "report [his] account to one or more credit bureaus to make it part of [his] credit record where it may impact [his] ability to obtain credit."

13. Despite not receiving any response from Mr. Dotson, TXU Energy did not report him at this time to the credit bureaus. Instead, it made another attempt to contact Mr. Dotson. On March 1, 2013, TXU Energy generated an account history and sent it to the service address associated with the Account. *See* **Exhibit 3**. The report again referenced the Account Number.

14. On April 24, 2013, after approximately 124 days and numerous attempts to work with Mr. Dotson directly to resolve his outstanding balance, TXU Energy finally reported Mr. Dotson's debt to the credit bureaus via the Metro2 system.

**II. TXU Energy's Efforts to Address Mr. Dotson's Prepetition Debt Validation Requests.**

15. On June 19, 2013, TXU Energy received a letter from Mr. Dotson requesting a validation of his debt. TXU Energy responded that day with a debt validation letter to an updated mailing address of XXXX Albany Ave., Oklahoma City, OK 73111. *See* **Exhibit 4**. The letter referenced the Account Number.

16. On June 26, 2013, Mr. Dotson called TXU Energy to dispute the outstanding balance on the Account. A member of my fraud management team spoke with Mr. Dotson, who asserted that he had certain rights under the Fair Credit Reporting Act ("FCRA"). The specialist explained the debt was valid unless and until Mr. Dotson could provide documentation to the contrary. To facilitate Mr. Dotson's efforts to contest the debt, my team mailed Mr. Dotson a packet that included an identity theft victim claim letter (which sought a police report, fraud or identity theft affidavit, and other supporting documents), the final bill, and an account history.

17. On July 10, 2013, TXU Energy again received a letter from Mr. Dotson requesting a validation of the debt.

18. On July 16, 2013, TXU Energy made an entry in the Metro2 system, notifying the credit bureaus that Mr. Dotson was disputing the debt.

19. On October 8, 2013, TXU Energy received another letter from Mr. Dotson requesting a validation of the debt. On October 15, 2013, one of my specialists called Mr. Dotson, who indicated he would contact his lawyer if TXU Energy did not provide him certain documentation. When the TXU Energy representative advised Mr. Dotson of the paperwork he

5

needed to submit to dispute the outstanding balance, Mr. Dotson hung up the phone. That same day, TXU Energy sent a letter to Mr. Dotson's address in Oklahoma City requesting further information. *See* **Exhibit 5**.

20. On January 7, 2014, TXU Energy again received a letter from Mr. Dotson requesting a validation of the debt. TXU Energy responded that same day with a debt verification letter. *See* **Exhibit 6**.

21. On January 22, 2014, Mr. Dotson called TXU Energy and stated he never had an account with TXU Energy. When a member of my team explained the dispute documentation Mr. Dotson needed to submit, Mr. Dotson referenced his FCRA rights.

22. On February 5, 2014, Mr. Dotson faxed a letter to TXU Energy. *See* **Exhibit 7**. TXU Energy received the fax at 2:43 p.m. Central Time that day. *See* **Exhibit 8**. In the letter, Mr. Dotson stated:

> "[Y]our firm has violated the law (including but not limited to) . . . the Fair Credit Reporting Act . . . . You have communicated and are continuing to communicate incorrect and defamatory information to third parties, including, but not limited to, Equifax, Experian, and TransUnion."

Mr. Dotson's letter referenced the same Account Number (ending in XXXXXX573928) that was referenced in TXU Energy's prior correspondence to Mr. Dotson. That same day, one of my specialists called Mr. Dotson and expressed a desire to resolve the matter. Mr. Dotson, however, again refused to send any documentation supporting his contention that the outstanding balance was not valid.

23. On February 13, 2014, Mr. Dotson called TXU Energy and stated that someone had stolen his Social Security number to set up the Account. Mr. Dotson stated he has always

6

lived with his parents at XXXX Albany Ave., Oklahoma City, OK 73111. One of my specialists asked Mr. Dotson to submit proof of residency. No such proof was provided to TXU Energy.

24. On April 1, 2014, Mr. Dotson again called TXU Energy, disputed the debt associated with the Account, and requested that TXU Energy eliminate the debt. A customer care agent advised Mr. Dotson that he still owed the debt.

25. On April 21, 2014, TXU Energy received an ACDV message that Mr. Dotson had filed a direct dispute with the credit bureaus. Consistent with applicable law, TXU submitted a debt validation response to the ACDV. TXU Energy also took an extra step—one not required by law—and mailed Mr. Dotson an identity theft claim letter which sets forth steps to facilitate Mr. Dotson's efforts to dispute the debt.[5] TXU Energy did not receive a response or any documentation supporting the debt dispute.

[*Remainder of page intentionally left blank.*]

---

[5] In addition to the instances recited here where TXU Energy responded to Mr. Dotson's letters requesting validation of the debt associated with the Account, Mr. Dotson sent three other letters with requests for validation of debt on November 25, 2013, March 6, 2014, and April 23, 2014. In these instances, no response letter was issued per TXU Energy's standard practice of not taking action when the matter was already addressed in the 30 days prior to receipt of the correspondence.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Dated: September 28, 2017
      Irving, Texas

                                        */s/ Tim Hartley*
                                        Tim Hartley
                                        Senior Collections Manager
                                        TXU Energy

RLF1 18199604v.1