1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4    In re:                        :

5    ENERGY FUTURE HOLDINGS CORP., :   Chapter 11

6    et. al.,                      :   Case No. 14-10979 (CSS)

7          Debtors.                :   (Jointly Administered)

8    _____:

9

10                                 United States Bankruptcy Court

11                                 824 North Market Street

12                                 Wilmington, Delaware

13                                 October 3, 2017

14                                 10:10 AM - 11:02 AM

15

16

17

18

19

20

21   B E F O R E :

22   HON CHRISTOPHER S. SONTCHI

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO OPERATOR:   UNKNOWN

1    HEARING re Motion of the Reorganized TCEH Debtors for Entry

2    of an Order Enforcing the TCEH Confirmation Order and

3    Imposing Costs and Fees for the Willful Disregard of the

4    Same [D.I. 11932; filed September 22, 2018]

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    RICHARDS, LAYTON & FINGER LLP

4         Attorneys for the Debtors

5

6    BY:  JASON M. MADRON

7

8    KIRKLAND & ELLIS LLP

9         Attorneys for the Debtors

10

11   BY:  MCLAIN THOMPSON

12        BRIAN STEPHANY

13

14   VENABLE LLP

15        Attorneys for PIMCO

16

17   BY:  JAMIE L. EDMONSON (TELEPHONICALLY)

18

19   POTTER ANDERSON & CORROON LLP

20        Attorneys for EFIH DIP Agent

21

22   BY:   R. STEPHEN MCNEILL

23

24

25

1   KLEHR HARRISON HARVEY BRANZBURG LLP

2        Attorney for UMB Bank, NA Indenture Trustee

3

4   BY:  RAYMOND H. LAMISCH

5

6   PACHULSKI STANG ZIEHL JONES

7        Attorney for Computershare

8

9   BY:  LAURA DAVIS JONES

10

11   TIM HARTLEY - Witness

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   ALSO PRESENT TELEPHONICALLY:

2   SCOTT L. ALBERINO

3   ASHLEY F. BARTRAM

4   PEG A. BRICKLEY

5   MARIA CHUTCHIAN

6   MARK A. CODY

7   JOSEPH A. FLORCZAK

8   CHRISTIAN JENSEN

9   JOANNA S. NEWDECK

10   JOSEPH A. PACK

11   NOAH M. SCHOTTENSTEIN

12   ANGELO THALASSINOS

13   FOTEINI TELONI

14   AMER TIWANA

15   PATRICK VENTER

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              CLERK:  All rise.

3              THE COURT:  Please be seated.  Good morning.

4              MR. STEPHANY:  Good morning, Your Honor.  Bryan

5    Stephany, Kirkland & Ellis on behalf of the reorganized TCEH

6    Debtors.  With me here today, Jason Madron and McClain

7    Thompson.  We're also joined in the courtroom by the two

8    declarants in support of the Debtor's, the TCEH, reorganized

9    TCEH Debtor's motion today for Tim Hartley, of TXU Energy,

10   and Mr. Sidney Garabato from Epic Bankruptcy Solutions.

11             THE COURT: Okay.

12             MR. STEPHANY: We're here today, Your Honor, on the

13   reorganized TCEH Debtor's motion to enforce this Court's

14   August 2016 T-side confirmation order, docket entry number

15   11932. If it's okay with Your Honor, we would propose the

16   following to kind of organize this morning's hearing.

17             I--my understanding is that Mr. Dawson is not

18   present today. And so, we would--I would turn it over

19   briefly to Mr. Madron, just to describe the Debtor's efforts

20   in ensuring that Mr. Dawson receive notice and was aware of

21   today's hearing, a brief opening statement, the Debtor's

22   presentation of evidence in support of their motion. And

23   then, if Your Honor would like, we could provide some brief

24   closing remarks.

25             THE COURT: Okay. That's fine. Thank you. Mr.

1    Madron?

2             MR. STEPHANY: We'll now turn it over to Mr.

3    Madron.

4             THE COURT: Thank you. Mr. Madron, good morning.

5             MR. MADRON: Good morning Your Honor, I'm well. How

6    are you?

7             THE COURT: I'm well, thank you.

8             MR. MADRON: Excellent. For the record, Jason

9    Madron of Richards Layton & Finger on behalf of the

10   reorganized TCEH.  Your Honor, if I may approach, I have a -

11   - well, call it a demonstrative that I think might be

12   helpful to the Court in --

13            THE COURT:  (indiscernible) --

14            MR. MADRON:  -- educating the Court of our

15   efforts.

16            THE COURT:  Excellent.  Yeah.  Thank you.

17            MR. MADRON:  Your Honor, as Mr. Stephany noted,

18   given that Mr. Dotson is not present, either by phone or in

19   Court today, we thought it would be helpful to the Court to

20   explain the efforts that we went to to ensure that Mr.

21   Dotson was well aware of today's hearing, as well as how to

22   participate in the hearing, in addition to formal service,

23   which was accomplished by overnight delivery through Epic,

24   our noticing agent in these cases.

25            And there are affidavits of the service --

1    affidavits of service on the Court's docket, memorializing

2    those efforts, which included overnight delivery, both to

3    Mr. Dotson's known home address, his known business address,

4    as well as overnight delivery of the papers to Mr. Ponder,

5    who is Mr. Dotson's counsel of record in the Oklahoma

6    litigation, as well as Ms. Hill, who is his other counsel of

7    record in the Oklahoma litigation.

8              So in addition to those formal efforts, Your

9    Honor, which of course, included all of the papers, Your

10   Honor's shortening notice, the agenda, the amended agenda,

11   et cetera, if you start on Page 6 of the chain of email that

12   I just handed to the Court, Your Honor will see at the top

13   there is an email from me to Counsel, to Mr. Dotson at 7:07

14   p.m. on Friday September the 22nd.

15             Your Honor, this was within 30 minutes of

16   receiving word from Your Honor's chambers, what the

17   scheduling for today's motion would be.  We sent an email

18   that clearly outlined today's hearing date, as well as the

19   objection deadline.

20             If Your Honor pages back one page to Page 5, there

21   is an email from me on Monday September the 25th at 10:17

22   a.m.  This was very shortly after Your Honor formally

23   entered the order shortening notice setting the dates and

24   deadlines relative to today's hearing.

25             Again, clearly delineating, in addition to

1   attaching, which I realize the attachment doesn't show up,

2   but I'll represent to Your Honor that the order shortening

3   notice was attached to that email.  We also delineate in the

4   text of the email, the same dates and deadlines.  And then,

5   if we page back in the email chain, two additional pages.

6          There is an email from me, September 29th email at

7   1:38 p.m. Eastern Time, again, to Mr. Dotson's counsel.

8   Both sets of counsel, attaching a courtesy copy of the

9   hearing agenda, with respect to today's hearing.

10         Your Honor, in addition to underscoring again, the

11  date of today's hearing, Your Honor will see that we have

12  also set forth the deadline for registering telephonic

13  appearances, as well as drawing specific reference to the

14  Footnote 2 in our hearing agenda, which delineates how to

15  contact Court Call, how to participate in today's hearing by

16  telephone, and the deadline for doing so.

17         Then, paging back to the first page of the email

18  that I sent.  There are two additional emails, the first

19  that I'll draw Your Honor's attention to as dated October

20  the 2nd, yesterday, at 1:54 p.m.  I will give a shout-out to

21  Ms. Yenamandra for noticing this.

22         But Mr. Dotson, through his Counsel, although the

23  papers were signed pro se, as I know Your Honor is aware,

24  provided us with two written objections over the weekend,

25  which were provided to chambers yesterday morning.  Ms.

1    Yenamandra noted that Mr. Dotson had written or typed

2    October 4th, 2017 at 10 a.m. in the caption of both of his

3    papers as being the hearing date.

4              Therefore, after being informed of that by Ms.

5    Yenamandra, we immediately sent an email at 1:54 p.m. again,

6    clarifying for the avoidance of doubt that the hearing is

7    today, October the 3rd at 10 a.m. Eastern Time.  And also,

8    again, asking for confirmation as to who intended to

9    participate on behalf of Mr. Dotson at today's hearing.

10             I will represent to Your Honor that this email

11   went unresponded to.  And then, lastly, yesterday afternoon

12   at 3:14 p.m., after having received permission from Your

13   Honor's chambers, we did file an amended agenda, with

14   respect to today's hearing to pick up the two undocketed

15   responses that we received from Mr. Dotson's Counsel over

16   the weekend.

17             And again, I did send a courtesy copy, I'll

18   represent to Your Honor attached to this, was a copy of the

19   amended agenda to Counsel, again, underscoring that it was

20   an agenda with respect to tomorrow being today's 10 a.m.

21   hearing.  Again, that email went unresponded to.

22             And then, lastly, Your Honor, I will note that we

23   did file a notice on the docket of the Court in the Western

24   District of Oklahoma, and that notice did attach a copy of,

25   among other things, Your Honor's order of shortening notice,

1    which again, clearly set forth the dates and deadlines

2    relative to today's hearing.

3            So again, on information and belief, we would

4    certainly believe that Mr. Dotson's Counsel in that action

5    would've also received further notice of the dates and

6    deadlines of which there is no ambiguity in our opinion

7    through that filing as well.

8            So unless Your Honor had any questions, I just

9    thought it was important to let Your Honor know that in

10   addition to the normal service efforts, which are obviously

11   sufficient under the federal and local rules, that given

12   that we were dealing with someone who purports to be acting

13   pro se, as I think Your Honor would expect of us, we did go

14   above and beyond to do everything possible to underscore

15   that the hearing is today, and to attempt to secure

16   participation by the claimant.

17           THE COURT:  All right.  Thank you, Mr. Madron.

18           MR. MADRON:  Thank you, Your Honor.  With that,

19   I'll turn it back over to Mr. Stephany.

20           THE COURT:  Okay.

21           MR. STEPHANY:  Thank you, Your Honor.  Again, for

22   the record, Bryan Stephany, Kirkland & Ellis on behalf of

23   the reorganized TCEH Debtors.  Your Honor, the reorganized

24   TCEH Debtors bring this motion to enforce, because Mr.

25   Dotson is knowingly and willfully continuing to pursue a

1   pre-petition claim in the Western District of Oklahoma --

2          THE COURT:  But didn't the District Court Judge

3   find it was a post-petition claim?

4          MR. STEPHANY:  Your Honor, the District Court in

5   the Western District of Oklahoma issued an order that was

6   not requested or sought by either party, accepting as true

7   the allegations as pled in Mr. Dotson's complaint.  I have a

8   copy of the Court's order, if it would be helpful --

9          THE COURT:  I have it.  It was attached to the

10  objection.

11         MR. STEPHANY:  Okay.

12         THE COURT:  Mr. Dotson filed.

13         MR. STEPHANY:  In Mr. Dotson's objection, he

14  omitted a portion of the phrase that made clear that the

15  Court's determination was based on the facts as alleged by

16  the plaintiff.  The Court has made no evidentiary finding in

17  the Western District of Oklahoma.  The issue has not been

18  litigated in the Western District of Oklahoma.

19         In fact, the reorganized TCEH Debtors have

20  explicitly not made any substantive filings to date in that

21  proceeding in action upon the belief that this Court has

22  sole and exclusive jurisdiction over the discharge and

23  injunction provisions of Your Honor's T-side confirmation

24  order.

25         THE COURT:  Mm hmm

1            MR. STEPHANY:  And we believe that Mr. Dotson's

2     claim is a pre-petition claim.  That is the evidence we're

3     prepared to present today.  And as such, it is barred by the

4     discharge and injunction.

5            THE COURT:  Now if it were an -- if it were a

6     post-petition pre-effective date of confirmation claim, I

7     think you also argue it would be barred by the discharge

8     injunction.  Is that right?

9            MR. STEPHANY:  That is correct, Your Honor.  It

10     was a post-petition claim, pre-effective date claim.  We

11     would argue that it's still barred by that injunction.

12     However, I believe the evidence is -- that we're prepared to

13     present today is without question, will demonstrate that

14     this is a pre-petition claim.

15            The Western District of Oklahoma was not presented

16     with that evidence again, specifically because the Debtors

17     believe that this Court has sole and exclusive jurisdiction

18     over the provisions of that T-side confirmation order.

19            THE COURT:  So when the Judge in Oklahoma issued

20     its -- his or her order, there was no actual pending dispute

21     before the Court?

22            MR. STEPHANY:  That's correct, Your Honor.  And if

23     I can, I'm happy to walk through kind of the procedural

24     steps that have taken place in the Western District of

25     Oklahoma, if that's helpful to Your Honor.

1           Mr. Dotson filed his complaint on May 19th, 2017.

2     Obviously, the Debtor's, the reorganized TCEH Debtors have

3     engaged with Mr. Dotson's counsel in an effort to resolve

4     the issue outside of the Court, and not having to bring this

5     motion to enforce, as evidenced by the fact that four months

6     have transpired, since the filing of the complaint to the

7     time when the reorganized TCEH Debtors brought the motion to

8     enforce.

9           In those four months, in addition to engaging and

10    providing information to Mr. Dotson's counsel, establishing

11    that his claim was in fact a pre-petition claim, we filed a

12    standard notice of bankruptcy in the Western District of

13    Oklahoma.

14          Now Mr. Dotson's complaint originally named EFH

15    Corporation, 14 T-side entities, and Experian, a non-Debtor

16    entity.  The notice, the standard notice of stay that the

17    reorganized TCEH Debtors filed in the Western District of

18    Oklahoma raised two issues.

19          One, the automatic stay as it applied to EFH

20    Corp., and number two, that the T-side discharge and

21    injunction provisions contained in Your Honor's confirmation

22    order barred suit as to the other non-Experian defendants in

23    that action.

24          As I mentioned, because the belief is that this

25    Court had sole and exclusive jurisdiction over Your Honor's

1    confirmation order, we didn't make any substantive filings.

2    And for the same reason, we didn't present the -- any

3    factual evidence, establishing the pre-petition nature of

4    Mr. Dotson's claim in the Western District of Oklahoma.

5            And notably, as I mentioned, we did not ask or

6    seek for any sort of order or relief.  We just filed the

7    standard notice of bankruptcy or suggestion of bankruptcy.

8    In June, in the Western District of Oklahoma action, Mr.

9    Dotson voluntarily dismissed three entities, including EFH

10   Corp.

11           As of that time, as of that voluntary dismissal,

12   from our point of view, the automatic stay issue was off the

13   table, because that only really applied to EFH Corp. in the

14   first instance.  With their dismissal, that was no longer an

15   issue on the table from our perspective.

16           Also in June, Mr. Dotson moved for entry of

17   default against several of the entities.  The Clerk in

18   Oklahoma has not acted on the plaintiff's motion for entry

19   of default.  And things have been quiet for several months

20   in that action, until, on September 19th, as Your Honor is

21   aware, the Western District of Oklahoma issued an order

22   indicating that the automatic stay did not apply.

23           And quoting from the District Court's ruling, it

24   was as alleged by plaintiffs, the Court finds that

25   (indiscernible) defendant's conduct giving rise to the

1    plaintiff's claim occurred post-petition.

2            Your Honor, the Debtor's, or the reorganized TCEH

3    Debtors intend to seek to challenge the Court's order in the

4    Western District of Oklahoma out of an abundance of caution.

5    We frankly believe that it's moot, given the voluntary

6    dismissal of EFH Corp., which is the only defendant to whom

7    the automatic stay would be applicable.

8            But out of an abundance of caution, to ensure that

9    the record is clear, and given that it was not a final

10   order, it was not adjudicated on the merits, we feel it's

11   important to protect the record.  And so, for that reason,

12   we intend to move to vacate, and we still have, I believe

13   it's 16 days to do that in the Western District of Oklahoma.

14   And we fully intend to do so to challenge that order.

15           THE COURT:  So not a motion for reconsideration

16   under 59, but a motion to vacate?

17           MR. STEPHANY:  A motion to vacate.  I believe we

18   were still discussing internally and with our client, but we

19   intend to challenge it in some form or fashion, and likely,

20   a motion to vacate, particularly because neither party had

21   requested that finding of relief.

22           THE COURT:  Right.  All right, can I ask you

23   another question, if I may?

24           MR. STEPHANY:  Yes.

25           THE COURT:  And then, I'll shut up.  I promise.

1    With regard to assuming arguendo, at least for purposes of

2    making this decision, the Court were to say, you know, the

3    allegations of the complaint are sufficient, we don't need

4    to have a factual dispute here.

5            Assuming arguendo, it's a post-petition, pre-

6    effective date claim.  You argue in your papers the

7    discharge injunction nonetheless applies.  Was there an -- I

8    just don't remember.  Was there an administrative claim bar

9    date, in connection with the T-side claim?

10           MR. STEPHANY:  There was, Your Honor.

11           THE COURT:  Okay.  And do we know whether this

12   person received actual notice of that?

13           MR. STEPHANY:  I do not believe that the

14   administrative claim bar date was --

15           THE COURT:  Sent to the customer list?

16           MR. STEPHANY:  -- sent to the current and former

17   customers.  The universe of current and former customers, as

18   Your Honor may recall from the customer bar date noticing

19   efforts was three and a half -- approximately three and a

20   half million individuals.

21           And as (indiscernible) of that, and given the

22   context, which I'm happy to provide in terms of why we

23   believe Mr. Dotson had actual notice and why he was not --

24   his claim was pre-petition, and therefore, not somebody that

25   needed to receive actual notice of the administrative claim

1    bar date, putting that aside --

2              THE COURT:  Was there a publication notice at the

3    end in the bar date, do we know?

4              MR. STEPHANY:  I believe so, Your Honor.  Counsel

5    indicated that that is correct.  I don't have it at my

6    fingertips, but I believe that is correct.

7              THE COURT:  All right, if Mr. Madron doesn't know,

8    no one doesn't know, so I'll trust his representation.

9              MR. STEPHANY:  He does have a good memory.

10             THE COURT:  And I'm done interrupting you.  You

11   can go forward with your presentation.

12             MR. STEPHANY:  Thank you, Your Honor.  I think

13   Your Honor's questions have touched on a number of the

14   issues that we intended to address today.  As I stated at

15   the outset, we believe that the evidence that you'll hear

16   today or that you'll be presented with today in connection

17   with this motion will unquestionably establish that Mr.

18   Dotson's claim was in fact a pre-petition claim, or a claim

19   that he could have certainly answered at pre-petition.

20             As a result of the customer bar date noticing

21   efforts, which Mr. Garabato from Epic is -- describes in his

22   declaration, the fact that that notice was not returned as

23   undeliverable to Mr. Dotson, the fact that Mr. Dotson did

24   not file a proof of claim in response to that customer bar

25   date notice, and the information -- the evidence that you'll

1     hear from Mr. Hartley, a long time employee of the

2     reorganized TCEH Debtors, who is a senior collections

3     manager and interacts with customers on these types of

4     issues on a regular basis, he personally investigated and is

5     prepared to present evidence of his efforts in that respect,

6     determining that this was in fact a claim that Mr. Dotson in

7     fact raised with the TCEH Debtors pre-petition, and

8     certainly could have been brought pre-petition.

9              And for those reasons, we believe that it is in

10    direct violation of this Court's order, as Your Honor has

11    noted, even if it was a post-petition, pre-effective date,

12    we believe that it's still in violation of the Court's

13    discharge and injunction provisions.

14             The only other point to flag at the outset here,

15    Your Honor, is we will ask the Court to take judicial notice

16    of some of the exhibits filed in support of the -- my

17    declaration in connection with the motion to enforce, as

18    well as the customer bar date order, which we believe made

19    clear at the time that Mr. Dotson received that, that he

20    needed to -- if he wanted to preserve his claim, that he

21    needed to file a proof of claim in that respect.

22             Mr. Dotson has raised several objections in the

23    materials that he sent over to the Court.  We believe that

24    the declarations themselves are sufficient, but both

25    declarants are in the courtroom today to attest to their

1    personal knowledge, should Your Court have any questions.

2    And we in fact intend to call briefly Mr. Hartley, just to

3    explain his process and his personal knowledge of the

4    events.

5            And we believe that will be sufficient to allow

6    Your Honor to overrule the objections Mr. Dotson has raised

7    in his motion.  The only other substantive objection that he

8    has raised is res judicata.  I -- Your Honor, we don't

9    believe that that's an applicable legal principle in this

10   context because the issue was not actually adjudicated in

11   the Western District of Oklahoma, as we've discussed.

12           And so, for that reason, never having been

13   litigated, the Western District of Oklahoma, never being

14   presented with any of the factual evidence that we're

15   prepared to provide to Your Honor today, no briefing, no

16   hearing, and certainly we believe it's an interlocutory

17   order that, as I mentioned, we intend to challenge.

18           And so, for those reasons, we believe it's not,

19   certainly not res judicata, and if Mr. Dotson intended to

20   suggest that it was collateral estopple, we certainly

21   believe that.  That's (indiscernible) as well.  And we'd ask

22   Your Honor to overrule those objections.

23           With that, Your Honor, I believe we're prepared to

24   present the evidence, and I'm happy to summarize at the end

25   with a few closing remarks, including what the relief that

1    the reorganized TCEH Debtors are seeking.  And if that's

2    acceptable to Your Honor, I'll turn it over at this time to

3    my colleague Mr. McClain Thompson.

4             THE COURT:  Okay.  And that's fine.  Just before

5    we do that, just so the record's clear, is there anyone who

6    wishes to be heard in connection with this matter, either

7    participating in Court or on the telephone?  All right, I

8    hear none.  You may -- or you may proceed.

9             MR. STEPHANY:  Thank you, Your Honor.

10            MR. THOMPSON:  Your Honor, for the record, McClain

11   Thompson, Kirkland & Ellis, on behalf of the reorganized

12   TCEH Debtors.  The reorganized TCEH Debtors would call Mr.

13   Tim Hartley to the stand.

14            THE COURT:  All right.  Mr. Hartley?  Please take

15   the stand, sir, and remain standing for your affirmation.

16            CLERK:  Please raise your right hand.  Do you

17   affirm your word that you will tell the truth, the whole

18   truth, and nothing but the truth to the best of your

19   knowledge and ability?

20            MR. HARTLEY:  I do.

21            CLERK:  Please state and spell your name for the

22   record.

23            MR. HARTLEY:  Tim Hartley.  T-i-m.  H-a-r-t-l-e-y.

24            CLERK:  Thank you.

25            THE COURT:  Thank you.  Please be seated sir, and

1    make yourself as comfortable as you can.  If you could stay

2    close to the microphone, that would be helpful.

3              MR. HARTLEY:  Okay, yes sir.

4              THE COURT:  Thank you.

5              MR. THOMPSON:  Your Honor, as has been our

6    standard of practice in this case, we have prepared witness

7    binders for the Court.

8              THE COURT:  Yes, please approach.  Thank you.

9                DIRECT EXAMINATION OF MR. TIM HARTLEY

10   BY MR. THOMPSON:

11   Q    Good morning, Mr. Hartley.

12   A    Good morning.

13   Q    By whom are you employed?

14   A    TXU Energy.

15   Q    And how long have you worked for TXU Energy and its

16   predecessors?

17   A    A little over 28 years.

18   Q    And what is your current title?

19   A    I'm a senior manager in the credit and collections

20   department.

21   Q    Could you briefly describe for the Court your day to

22   day role as a senior collections manager?

23   A    Certainly.  I'm responsible for a team of 45 to 46

24   employees.  We handle consumer issues associated with credit

25   collections, anything ranging from disputes of debt to large

1    balance, small balance claims.

2          We also -- I'm also responsible for a group that

3    handles fraud awareness and fraud detection and prevention

4    tactics.  In addition to this, we're response -- I have the

5    refund organization, where we send credits back to customers

6    as under my watch.  And then, in addition, I'm responsible

7    for our credit reporting piece of the process.  So anything

8    to do with sending the information to the Credit Bureaus, as

9    well as responding to disputes that we receive from the

10   Credit Bureaus or from the consumer direct.

11   Q    Mr. Hartley, could you please describe the TXU Energy's

12   systems to manage the information and interaction it has

13   with its customers?

14   A    Yes, we have a couple of different platforms.

15   Primarily, our system of record is known as CARE.  C-A-R-E.

16   The CARE platform contains all of our customer data points,

17   all of our customer information, otherwise, if a customer

18   makes a phone call in to our system, a representative logs

19   in that interaction, it's captured in the system.  It's our

20   billing engine.  It's our notice engine.  It also contains

21   historical representations of anything that we've sent out

22   to customers.

23          Then, we have a second system, known as

24   SalesForce.com, and this is a repository to allow us to

25   receive facts and/or email from customers.  In addition to

1    this, if we receive regular mail, we'll scan it into this

2    system, so that we can associate it back to a case.  And

3    then, that case is then, of course, tied to the customer's

4    account number.

5    Q    And is there a -- does TXU Energy have a case file for

6    Mr. Dotson?

7    A    Yes, we do.

8    Q    Mr. Hartley, did you prepare a declaration in

9    connection with your testimony today?

10   A    Yes, I did.

11   Q    Could you please turn to the tab in your binder labeled

12   DDIR Hartley?

13   A    Okay.

14   Q    Do you recognize this document?

15   A    I do.

16   Q    What is it?

17   A    This is my declaration.

18   Q    Did you authorize the e-signature on that document?

19   A    I did authorize that, yes.

20   Q    Okay.  Could you please review the tabs numbered one

21   through eight in the binder?

22   A    Okay.

23   Q    Do you recognize those?

24   A    I do.

25   Q    What are they, Mr. Hartley?

1    A    It's various information, but it's records out of our

2    system.  There's a bill in there, the final bill.  There's a

3    notification letter in that was sent to Mr. Dotson.  There

4    are -- a letter from him, as well as a screen shot that

5    shows tracking information from receipt of the date of the

6    letter that he sent to us.

7    Q    Did you personally review these records?

8    A    I did.

9    Q    And is the information contained in your declaration

10   and exhibits true and accurate, to the best of your

11   knowledge and belief?

12   A    Yes.

13        MR. THOMPSON:  Your Honor, at this time, the

14   reorganized TCEH Debtors would move Mr. Hartley's

15   declaration as filed at Docket Number 11965, as well as the

16   exhibits thereto into evidence, in overruling Mr. Dotson's

17   objections.

18        THE COURT:  Any objection?  I hear none.  They're

19   admitted.

20   Q    Mr. Hartley, let's walk through just three tabs in that

21   binder.  Could you please turn to Tab 2 in your binder?

22   A    Okay.

23   Q    Do you recognize this document?

24   A    I do.

25   Q    And what is it, Mr. Hartley?

1   A    This is a letter that we send out to customers that have

2   final billed with us or have -- no longer have -- or are no

3   longer receiving service from TXU.  And where they've left a

4   balance owed, it is a notification letter of intent to

5   collect, but that could lead anything from pursuing the debt

6   through a third party collection agency, referring to an

7   attorney for a small claims court, or -- and/or placing it

8   on the person's credit report.

9   Q    When is the letter dated?

10  A    This letter was sent on January 23rd of 2013.

11  Q    Does the letter reference an amount due?

12  A    Yes, the amount referenced is $107.85.

13  Q    Mr. Hartley, have you reviewed the complaint that Mr.

14  Dotson filed in Oklahoma?

15  A    I have.

16  Q    Are you generally aware of Mr. Dotson's allegation about

17  a debt owed to TXU Energy in that complaint?

18  A    Yes.

19  Q    How much is it, in the complaint?

20  A    $107.

21  Q    On Tab 2, in the letter, does it reference an account

22  number?

23  A    It does.

24  Q    Could you please read the last six digits of that

25  account number?

1    A    Yes.  They're 573928.

2    Q    Mr. Hartley, in your binder, could you please turn to

3    Tab 7?

4    A    Okay.

5    Q    Do you recognize this document?

6    A    I do, yes.

7    Q    What is it?

8    A    This is a letter dispute received from Vance Dotson.

9    Q    Could you please turn to Tab 8 in your binder?

10   A    Okay.

11   Q    Do you recognize this document?

12   A    Yes, I do.

13   Q    And what it is, Mr. Hartley?

14   A    This is a screenshot from our SalesForce.com system that

15   basically is logging receipt of the letter.  It shows the

16   date we received the facts, a response to that facts that's

17   initial, and then, as the process goes on our system, these

18   come into a work case queue.  And the work case is then,

19   someone on my team has access to the work case queue, and

20   they'll go in and read the letters or whatever the

21   information is that's received.  And then, associate that

22   back to a customer account.  So we've got four records here,

23   and that's a receipt of, and then the latter part at 2:43

24   p.m. is actually where we associated it to Mr. Dotson's

25   account.

1   Q    And what are the dates on -- when the facts was

2   received, on what date?

3   A    It was initially received February the 5th of 2014 at

4   1:59 p.m.  And then, associated to his account, the same

5   date, February 5th of 2014 at 2:43 p.m.

6   Q    Mr. Hartley, could you please turn back to Tab 7 in your

7   binder?

8   A    Okay.

9   Q    Did Mr. Dotson include an address there?

10  A    Yes, that's an Albany Avenue address in Oklahoma City.

11  Q    Did Mr. Dotson reference an account number in his

12  letter?

13  A    He did.

14  Q    And what are the last six digits of that account number?

15  A    573928.

16  Q    Is that the same account number that we reviewed on Tab

17  2?

18  A    Yes, it is.

19  Q    And Mr. Hartley, could you please read the first

20  paragraph of Mr. Dotson's February 5th, 2014 letter?

21  A    Certainly.  "Your firm has failed to send the legally

22  required validation of this debt.  You have been notified

23  that your actions are detrimental to me, and that your firm

24  has violated the law, including, but not limited to the

25  Consumer Credit Protection Act, the Fair Credit Reporting

1    Act."

2    Q   Mr. Hartley, do you have an understanding of when TXU

3    filed for bankruptcy?

4    A   Yes.

5    Q   When was -- when did they file for bankruptcy?

6    A   April of 2014.

7    Q   Did TXU Energy receive Mr. Dotson's facts before or

8    after filing for bankruptcy?

9    A   This was received in February, before the filing.

10           MR. THOMPSON:  Your Honor, at this time, we have

11   no further questions for Mr. Hartley.  To the extent a party

12   wishes to cross-examine Mr. Hartley, we would respectfully

13   reserve or ask an opportunity for redirect.

14           THE COURT:  Does anyone wish to cross-examine the

15   witness?  I hear none.  I have no questions.  Thank you, Mr.

16   Hartley.  You may step down.

17           MR. HARTLEY:  Thank you.

18           MR. THOMPSON:  Your Honor, the Debtors, Mr. Sidney

19   Garabato, the client services manager for the EFH case on

20   behalf of Epic is in the courtroom today.  He submitted a

21   declaration in support of the motion to enforce.  That

22   declaration is at Docket Number 11934.

23           In that declaration, Mr. Garabato stated that Epic

24   served the customer bar date package on approximately 3.5

25   million current and former customers.  Epic served Mr.

1   Dotson with the customer bar date package at his address in

2   Oklahoma City.

3           The service -- Mr. Garabato stated that service to

4   Mr. Dotson was not returned on deliverable.  And Mr.

5   Garabato stated that after reviewing the claim to register,

6   that Epic maintains in these cases, that Mr. Dotson did not

7   file a proof of claim.

8           Your Honor, in Mr. Dotson's objection to the

9   motion to enforce, Mr. Dotson challenges Mr. Garabato's

10  declaration on the grounds that his statements are not based

11  on his personal knowledge.  Your Honor, we believe the

12  appropriate foundation for Mr. Garabato's statements are

13  relayed in the declaration itself.  That is especially the

14  case here in the context of the Debtor's efforts to notice

15  more than three million customers.

16          Nonetheless, the reorganized TCEH Debtors are

17  prepared to call Mr. Garabato to the stand, should Your

18  Honor have any questions, or to weigh any additional

19  evidentiary foundation that Your Honor deems necessary.

20  Otherwise, we request that Your Honor overrule the

21  evidentiary objections, and admit the as filed declaration

22  and exhibit thereto.  And that's at Docket Number 11934 into

23  evidence.

24          THE COURT:  Does anyone wish to cross-examine the

25  witness?  I hear none.  I have no questions.

1          MR. THOMPSON:  Thank you, Your Honor.  I'll turn

2     the -- cede the podium to Mr. --

3          THE COURT:  Oh, and just so the record's clear,

4     Mr. Garabato's declaration, or actually, affidavit at Docket

5     Number 11934 is admitted without objection.

6        (Docket Number 11934 Admitted into Evidence)

7          MR. THOMPSON:  Thank you, Your Honor.  I will turn

8     the podium to Mr. Bryan Stephany.

9          THE COURT:  Okay.

10         MR. STEPHANY:  Your Honor, again, Bryan Stephany,

11    Kirkland & Ellis on behalf of the reorganized TCEH Debtors.

12    Before we close the evidentiary record, we would ask that

13    Your Honor just take judicial notice of the declaration.

14    It's the Stephany declaration, the declaration filed in

15    support of a motion to enforce at Docket Entry Number 11933,

16    the TCEH confirmation order at Docket Number 9421 and the

17    customer bar date order at Docket Number 307.

18         THE COURT:  Any objection?  I hear none.  The

19    Court takes judicial notice of those documents.  I need to

20    back up a minute.  I said that Mr. Garabato's affidavit was

21    admitted without objection.  There was an objection, which

22    was basically lack of foundation.  Based on the affidavit, I

23    believe that there is sufficient foundation, and Mr.

24    Garabato is competent to testify on the matters set forth in

25    the affidavit.  So that objection is overruled, and the

1    document is admitted into evidence.

2         MR. STEPHANY:  Thank you, Your Honor.

3         THE COURT:  You're welcome.

4         MR. STEPHANY:  If it's acceptable to Your Honor,

5    just a few kind of brief remarks in closing?  Your Honor, we

6    believe that the evidence presented today in both Mr.

7    Hartley's testimony, his declaration, and Mr. Garabato's

8    declaration unquestionably establishes one, that the claim

9    that Mr. Dotson is seeking to pursue in the Western District

10   of Oklahoma action is a pre-petition claim that would be

11   barred by this Court's T-side confirmation order, the --

12   specifically, the injunction and discharge provisions of

13   that order.

14        You heard from Mr. Hartley that he personally

15   investigated that Mr. Dotson had sent correspondence to the

16   company, pre-petition, February 2014, asserting the claim

17   that his rights under the Fair Credit Reporting Act had been

18   violated.

19        There is no question that Mr. Dotson at that time

20   believed he had a claim, and that he could have brought that

21   claim pre-petition.  There is also uncontroverted evidence

22   that Mr. Dotson received actual notice of the customer bar

23   date, along with the other approximately three and a half

24   million current and former customers.

25        That customer bar date order, specifically

1    Paragraph 11 of Docket Entry 307 made clear that the failure

2    to file a proof of claim would prejudice his ability to

3    pursue that claim or could prejudice his ability to pursue

4    that claim.  Despite that actual notice, and more than ample

5    time to file, the -- Mr. Garabato's declaration establishes

6    that Mr. Dotson's notice was sent out on May 30th 2014, and

7    that bar date and customer bar date was October 27th, 2014,

8    as set forth in the Court's order.

9          So that's nearly five months, despite that ample

10   of time, and despite the awareness of the consequences of

11   failing to file a proof of claim, Mr. Dotson filed no such

12   proof of claim.  There's been no evidence to the contrary.

13   We believe that this establishes unquestionably that Mr.

14   Dotson's claim was a pre-petition claim, and therefore, is

15   barred by the injunction and discharge provisions of the

16   Court's order.

17         The continued pursuit of Mr. Dotson's claim in the

18   Western District of Oklahoma is not a mistake.  Mr. Dotson,

19   as we have done our research, has filed at least nine

20   different actions in the Western District of Oklahoma

21   related to the Fair Debt Collection Act, or the Fair Credit

22   Reporting Act.  And we have a copy of the -- a printout of

23   those case numbers, if Your Honor would like to take

24   judicial notice.

25         He's certainly no stranger to the court system.

1    And specifically, after his action was filed in May, the

2    Debtors immediately within two days filed a suggestion of

3    bankruptcy on the docket in the Western District of

4    Oklahoma, and then, engaged directly with his counsel, Mr.

5    Brian Ponder, who represents Mr. Dotson in connection with

6    that Western District of Oklahoma case.

7            We sent three letters, had multiple phone calls.

8    Those letters are all attached to the Stephany declaration,

9    and made every effort to make it clear and make Mr. Dotson's

10   counsel aware that we had documentation definitively

11   establishing that Mr. Dotson's claim was in fact a pre-

12   petition claim, and therefore, barred.

13           Despite the Debtor's efforts in this respect, Mr.

14   Dotson has continued to attempt to pursue his claim in the

15   Western District of Oklahoma, and we believe that's in

16   blatant disregard of this Court's order.

17           The relief that the Debtors seek today in their

18   motion to enforce, we believe is important to establish the

19   precedent for knowing willful violations of this Court's

20   order, specifically the discharge and injunction provisions

21   of the T-side confirmation order.

22           So the relief that the Debtors seek today, or the

23   reorganized TCEH Debtors seek today is an order requiring

24   Mr. Dotson to dismiss his complaint in the Western District

25   of Oklahoma with prejudice, dismiss it against all non-

1    Experian defense.

2              An order permanently enjoining him from re-raising

3    his claims elsewhere, and a provision that makes it clear

4    that if Mr. Dotson wants to challenge this Court's orders,

5    including today's proposed order, that he does it here in

6    Delaware and doesn't attempt to make an end run in other

7    jurisdictions.

8              And fourth, Your Honor, the reorganized TCEH

9    Debtors believe that an award of fees and costs in this case

10   would serve as an appropriate deterrent for other future

11   litigants that may seek to pursue litigation in violation of

12   this Court's order.

13             As the reorganized TCEH Debtors outlined in the

14   motion to enforce, Mr. Dotson bills himself as the credit

15   doctor.  As I mentioned previously, he is no stranger to

16   litigation, having filed nine such credit related actions.

17   And just in the Western District of Oklahoma, since 2010.

18             Although we believe it's a misguided claim, Mr.

19   Dotson and Mr. Ponder are obviously not novices to the legal

20   system.  And an order allowing the reorganized TCEH Debtors

21   to recover their fees would serve as an appropriate

22   deterrent, we believe, to both Mr. Dotson and Mr. Ponder, as

23   well as others who wish to disregard this Court's order.

24             If the Court is inclined to consider an award of

25   fees, we'd respectfully request that the Court set a future

1    hearing date, at which time we could present evidence

2    supporting both the efforts to engage, and the knowing and

3    willful nature of Mr. Dotson's continued pursuit of his

4    claim in the Western District of Oklahoma, as well as the

5    quantum of fees incurred in defending that action and in

6    pursuing the relief sought today before this Court.  And

7    unless Your Court -- Your Honor has any questions, that's

8    all we have, other than the proposed order.

9              THE COURT:  All right.  Does anyone else wish to

10   be heard?  I have no questions.  Please approach with the

11   order.  Thank you.

12             MR. STEPHANY:  Your Honor, apologies.  I just

13   wanted to flag one point.  Thank you to Mr. Madron for

14   calling this to our attention.  In Paragraph 5 of the

15   proposed order, we have the provision requesting or for

16   contemplating the award of fees.  We have left that amount

17   blank.  As I mentioned, if the Court is inclined to award

18   such fees, we would request a future hearing date to present

19   the evidence necessary for that award.

20             THE COURT:  Okay, thank you.

21             MR. STEPHANY:  Thank you, Your Honor.

22             THE COURT:  All right, I am going to grant the

23   motion in part and deny it without prejudice in part.  And

24   I'll get to that in just a second.  But with regard to the

25   merits, based on the uncontested evidentiary record

1    presented to the Court, it is clear as a matter of evidence

2    that the claim Mr. Dotson has asserted against the

3    reorganized T-side Debtors in Oklahoma arose prior to the

4    petition date, and as such, is a pre-petition claim.

5           It's also clear from the undisputed record that

6    Mr. Dotson received actual notice of the bar date, and

7    failed to file a proof of claim.  As a result of that, Mr.

8    Dotson was not a creditor of the Debtor's estate.  He had no

9    claim because he failed to file a claim.

10          But in any event, any pre-petition claim he might

11   have had filed or unfiled was discharged by the confirmation

12   order that went effective in October of 2016.  He, again,

13   because he failed to file a proof of claim, he received no

14   money from the estate in connection with that claim, but

15   that all -- does not mean his claim was not discharged.  It

16   was clearly discharged because it was a pre-petition claim

17   and no proof of claim was filed.

18          The District Court's line or comment in its order

19   that it entered, the Oklahoma District Court, I'm speaking

20   of, that the order that it entered recently is not based on

21   an evidentiary presentation, it merely states what is

22   alleged in a complaint.

23          The Debtor's have overcome the allegation made in

24   that complaint with actual evidence presented to the Court

25   today.  In any event, that finding does not constitute res

1    judicata or a collateral estopple as asserted by Mr. Dotson

2    in his objection, because that issue was never adjudicated,

3    based on any kind of evidentiary record, and certainly was

4    not finally adjudicated, in any event, by the Oklahoma

5    District Court.

6           As Counsel stated, it's an interlocutory order,

7    and subject to appeals.  It's -- the clock on that hasn't

8    started since it's interlocutory.  But in the event the

9    Debtors intend to contest that for the record.  But even

10   that finding was a finding that the automatic stay was in

11   connection with a discussion of whether the automatic stay

12   was applicable, the automatic stay was relevant only in

13   terms of the EFH defendant, which had been previously

14   dismissed.

15          As we all know, the automatic stay ceased to be

16   applicable brought confirmation in the discharge injunction

17   is what matters.  And the Debtors were clear in the notice

18   and suggestion of bankruptcy they filed, that they were

19   raising both the automatic stay for EFH, but also the

20   discharge injunction.

21          And the District Court's order does not discuss

22   the discharge injunction in any event.  So it's not really

23   even applicable to the T-side Debtors, in my mind.  But at

24   the end of the day, it is what it is.  It's an order of a

25   sister court, and I provided with a lot of deference, though

1    my initial thought when I received the papers was, you know,

2    why are you trying to do an (indiscernible) around the

3    district court by filing here?

4             I do not believe that is what has occurred at all.

5    And the Debtors are acting appropriately under the express

6    terms of the confirmation order, asking this Court to

7    enforce the confirmation order and the discharge injunction.

8             So there's no question this is a pre-petition

9    claim, and no question it -- no proof of claim was filed, no

10   question that the claim was discharged, and no question that

11   there is no ability to proceed against the Debtors.  And in

12   fact, under the confirmation order, Mr. Dotson is enjoined

13   by that actual order from pursuing this claim as he is

14   currently doing.

15            So I will grant the relief with that regard, and

16   the requests for an in junction, and requirement of

17   dismissal.  I am going to deny, without prejudice, the

18   request for fees and costs in connection with this action

19   and prosecution of the motion.

20            I believe that the colloquy between the parties to

21   date has not been overly problematic.  Obviously, Mr.

22   Dotson's counsel and Mr. Dotson have been on notice of the

23   Debtor's position for several months.  I would note that

24   there was no specific action taken, which prompted -- by Mr.

25   Dotson, which prompted the order by the District Court.

1          If Mr. Dotson had been sort of proactive and

2    forced the District Court's hand there, I would see a

3    different situation.  However, if Mr. Dotson continues to

4    prosecute this in Oklahoma or elsewhere or continues to

5    prosecute it here, other than by pursuing an appropriate

6    motion for reconsideration or you know, a procedurally

7    proper, or an appeal, or another procedurally proper way to

8    proceed, the Court will absolutely reconsider granting the

9    cost and fees associated with this motion with the action in

10   Oklahoma, and which -- whatever future action that the

11   Court, or that Mr. Dotson decides to pursue in violation of

12   this Court's order, actually, now in violation of the second

13   order of this Court.

14          So he's had two shots, and he doesn't get any more

15   -- any further violation that the injunction will result in

16   the awarded fees.  So I'd ask Counsel to submit a revised

17   order under certification of Counsel that addresses the fee

18   issue along the lines of what the Court just said.  I could

19   just strike it out, but for optics, I'd rather have a clean

20   order that doesn't have a strike out.

21          MR. STEPHANY:  Absolutely, Your Honor.  We'll

22   revise that and work (indiscernible) revised.

23          THE COURT:  Okay.

24          MR. STEPHANY:  Yes, Mr. Madron?

25          MR. MADRON:  Your Honor, obviously, we would, in

1    the conventional fashion circulate a form of order to

2    opposing counsel --

3              THE COURT:  That's not necessary.  That's not

4    necessary.

5              MR. MADRON:  Thank you very much, Your Honor.

6              THE COURT:  Okay.  All right, any further

7    questions, any clarity requests that -- no?  Any further

8    matters for the Court?

9              MR. MADRON:  No, Your Honor.

10             THE COURT:  No?

11             MR. STEPHANY:  No, Your Honor.

12             THE COURT:  Okay.  Thank you very much.  Thank you

13   for a well organized, competent, and thorough presentation,

14   and we are adjourned.

15             MR. STEPHANY:  Thank you, Your Honor.

16                        *  *  *  *  *

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4   DESCRIPTION                              PAGE        LINE

5   Grant the relief and the requests for an in junction, and

6   requirement of dismissal                  36          23

7

8   Deny, without prejudice, the request for fees and costs in

9   connection with this action and prosecution of the motion

10                                            36          23

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya

7    Ledanski Hyde

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital1@veritext.com, c=US
Date: 2017.10.04 16:21:05 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  October 4, 2017