## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Hearing Date:  November 8, 2017 10:00 a.m.** |
|  | ) | **Objection Deadline:  November 1, 2017 4:00 p.m.** |

## DEBTORS' MOTION FOR ENTRY OF FINAL DECREE
## (A) CLOSING CERTAIN OF THE CHAPTER 11 CASES,
## (B) TRANSFERRING CLAIMS AGAINST AND INTERESTS ASSERTED IN THE
## TCEH DEBTORS TO THE LEAD CASE; AND (C) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession, and reorganized debtors (collectively, the "Debtors") file this motion (this "Motion")[2] for entry of an order the ("Order"), substantially in the form attached hereto as **Exhibit A**: (a) closing the cases of Energy Future Competitive Holdings Company LLC ("EFCH") and the direct and indirect subsidiaries of Texas Competitive Electric Holdings Company LLC (such entity, "TCEH," its subsidiaries, "TCEH Subsidiaries" and the TCEH Subsidiaries together with EFCH, collectively, the "Closing Cases");[3] (b) transferring all claims against, and interests asserted in, the Closing Cases to TCEH (the "Lead Case"); and (c) granting related relief.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the order confirming the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 9421] (the "TCEH Plan").

[3] The Closing Cases are those cases of: 4Change Energy Company, Case No. 14-10980; 4Change Energy Holdings LLC, Case No. 14-10981; Big Brown 3 Power Company LLC, Case No. 14-10983; Big

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference* from the United States District Court for the District of Delaware,

dated February 29, 2012.    The Debtors confirm their consent, pursuant to rule 7008 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Bankruptcy Rules"), to entry of a final order by the Court in

connection with this Motion to the extent that it is later determined that the Court, absent consent

of the parties, cannot enter final orders or judgments in connection herewith consistent with

Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

Brown Lignite Company LLC, Case No. 14-10986; Big Brown Power Company LLC, Case No. 14-10988; Collin Power Company LLC, Case No. 14-10998; DeCordova Power Company LLC, Case No. 14-10982; DeCordova II Power Company LLC, Case No. 14-11003; Eagle Mountain Power Company LLC, Case No. 14-10984; Generation MT Company LLC, Case No. 14-11021; Generation SVC Company, Case No. 14-11025; Lake Creek 3 Power Company LLC, Case No. 14-11029; Luminant Big Brown Mining Company LLC, Case No. 14-11018; Luminant Energy Company LLC, Case No. 14-11023; Luminant Energy Trading California Company, Case No. 14-11026; Luminant ET Services Company, Case No. 14-11030; Luminant Generation Company LLC, Case No. 14-11032; Luminant Holding Company LLC, Case No. 14-11037; Luminant Mineral Development Company LLC, Case No. 14-11040; Luminant Mining Company LLC, Case No. 14-11042; Luminant Renewables Company LLC, Case No. 14-11044; Martin Lake 4 Power Company LLC, Case No. 14-11010; Monticello 4 Power Company LLC, Case No. 14-11011; Morgan Creek 7 Power Company LLC, Case No. 14-11014; NCA Resources Development Company LLC, Case No. 14-11019; Oak Grove Management Company LLC, Case No. 14-11022; Oak Grove Mining Company LLC, Case No. 14-11024; Oak Grove Power Company LLC, Case No. 14-11027; Sandow Power Company LLC, Case No. 14-11033; TCEH Finance, Inc., Case No. 14-11028; Tradinghouse 3 & 4 Power Company LLC, Case No. 14-11046; Tradinghouse Power Company LLC, Case No. 14-10985; TXU Energy Receivables Company LLC, Case No. 14-10993; TXU Energy Retail Company LLC, Case No. 14-10997; TXU Energy Solutions Company LLC, Case No. 14-11002; TXU Retail Services Company, Case No. 14-11009; TXU SEM Company, Case No. 14-11013; Valley NG Power Company LLC, Case No. 14-11015; and Valley Power Company LLC, Case No. 14-11020.

RLF1 18261345v.1

3.      The statutory bases for the relief requested herein are sections 105(a) and 350(a) of title 11 of the United States Code 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rule 3022, and Local Bankruptcy Rule 3022-1.

## Relief Requested

4.      The Debtors seek entry of the Order: (a) closing the Closing Cases and leaving the chapter 11 case of TCEH open for purposes of resolving the outstanding matters against the Closing Cases; (b) transferring all claims against, and interests asserted in, the TCEH Debtors to the Lead Case; and (c) granting related relief.

## Background

5.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of EFCH, TCEH, the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].   Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

6.      On August 23, 2016, the Debtors filed the TCEH Plan.  On August 29, 2016, the Court entered the *Order Confirming the Third Amended Joint Plan of Reorganization of Energy*

3

*Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 9421], whereby the Court confirmed the TCEH Plan.  The TCEH Plan became effective on October 3, 2016 (the "<u>TCEH Effective Date</u>") and the TCEH Debtors emerged as the Reorganized TCEH Debtors on that date.  *See Notice of Entry of TCEH Confirmation Order and Occurrence of TCEH Effective Date* [D.I. 9742] (the "<u>TCEH Confirmation Order</u>").    Following the TCEH Effective Date, the Reorganized TCEH Debtors began operating as TCEH Corp., and soon after, Vistra Energy.

7.    To make meaningful and timely distributions to holders of Class C4 and C5 claims, the TCEH Debtors—in consultation with the TCEH Creditors' Committee—determined that estimation of the maximum potential value of the TCEH Asbestos Claims was necessary to facilitate distribution of the TCEH Cash Payment.  On September 22, 2016, the TCEH Debtors filed a *Motion for Entry of an Order Estimating Asbestos Claims Filed Against the TCEH Debtors* [D.I. 9365].[4]  No party formally objected to the motion.  *See Certification of Counsel Regarding "TCEH Debtors' Motion for Entry of an Order Estimating Asbestos Claims Filed Against the TCEH Debtors [D.I. 9365]"* [D.I. 9789].

8.    On October 12, 2016, the Court entered an order that, among other things, the "high-end nominal value of $17.2 million for the aggregate resolution costs (including, but not limited to, indemnity and defense costs) for present and future asbestos-related claims against the TCEH Debtors shall constitute, for distribution purposes only, the maximum value of the TCEH Asbestos Claims (the '<u>Maximum Value</u>')."  *See Order Estimating Asbestos Claims Filed Against the TCEH Debtors* [D.I. 9794] at 2.  The Maximum Value is subject to the same pro rata

---

[4] In support of that motion, the TCEH Debtors attached the *Summary Report Regarding Forecast of the Cost of Resolving All Pending and Proofs of Claim Filings of Asbestos-Related Bodily Injury Claims against Energy Future Holdings Corp. – Claims Associated with TCEH*, prepared by Thomas Vasquez, Ph.D. of the Ankura Consulting Group [D.I. 9365-1].

recovery as other Class C5 claims.  Because that recovery is less than 10 percent, the total

distributable dollars available for TCEH Asbestos Claims is less than $2 million.

I.      **The TCEH Debtors' Businesses.**

9.      TCEH, EFCH, and the TCEH Subsidiaries (collectively, the "TCEH Debtors")

have two distinct business units:  (a) the electricity generation, mining, wholesale electricity

sales, and commodity risk management and trading activities of Luminant Holding Company

LLC and its subsidiaries ("Luminant") and (b) the competitive retail electricity sales and related

operations of the entities known as TXU Energy ("TXU Energy").

10.     Luminant owns and operates power plants and surface lignite coal mines in Texas

that supply coal to certain of Luminant's units.  TXU Energy, the single largest retail electric

provider by customer count in Texas, sells electricity to approximately 1.7 million residential

and business customers.

11.     As operating companies with a significant customer base, the TCEH Debtors

defended and otherwise addressed numerous ordinary course claims and causes of action from

vendors, customers, and employees.  Also, given the nature of the businesses of some of the

TCEH Debtors, prior to the Petition Date, they were named, although infrequently, as defendants

in actions asserting asbestos-related liability.

II.     **The Debtors' Claims Administration Process.**

12.     On May 2, 2014, the Court entered an order establishing October 27, 2014, at

5:00 p.m. (prevailing Eastern Time) (the "Customer Claims Bar Date") as the final date and time

for certain customer claimants holding or asserting a claim against the Debtors arising on or

before the Petition Date to file proofs of claim in these chapter 11 cases and approving the form

and manner of notice of the Customer Claims Bar Date [D.I. 307].

RLF1 18261345v.1

13.    Written notice of the Customer Claims Bar Date was mailed to current and certain former customers of the Debtors.[5]  In addition to mailing such actual notice, the Debtors also published notice of the Customer Claims Bar Date in *The Wall Street Journal*, *USA Today*, *The Dallas Morning News*, *Houston Chronicle*, *Corpus Christi Caller Times*, *Fort Worth Star-Telegram*, and *Waco Tribute Herald*.

14.    On June 30, 2014, the Debtors filed their schedules of assets and liabilities (the "Schedules") and statements of financial affairs (the "Statements" and together, with the Schedules, the "Schedules and Statements") [D.I. 1237–1307, 1319–1329, 1331–1343, 1345]. On September 26, 2014, the Debtors filed their amended Schedules and Statements [D.I. 2146–2216], addressing certain discrete issues.

15.    On August 18, 2014, the Court entered an order (the "General Bar Date Order") establishing October 27, 2014, at 5:00 p.m. (prevailing Eastern Time) (the "General Bar Date") as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim in these chapter 11 cases, except for claims specifically exempt from complying with the General Bar Date as set forth in the General Bar Date Order, and approving the form and manner of notice of the General Bar Date [D.I. 1866].

16.    Written notice of the General Bar Date was mailed to, among others, all known creditors and other known holders of claims against the Debtors as of the date of entry of the

---

[5] The procedures for notifying the Debtors' current and former customers are set forth in the *Motion of Energy Future Holdings Corp.*, et al*., for Entry of (A) an Order Authorizing the Debtors to (I) Maintain and Administer Customer Programs and Customer Agreements, (II) Honor Prepetition Obligations Related Thereto, (III) Pay Certain Expenses on Behalf of Certain Organizations, (IV) Fix the Deadline to File Proofs of Claim for Certain Customer Claims, and (V) Establish Procedures for Notifying Customers of Commencement of the Debtors' Chapter 11 Cases, Assumption of Customer Agreements, and the Bar Date for Customer Claims and (B) an Order Authorizing Certain of the Debtors to Assume the Customer Agreements* [D.I. 31].

General Bar Date Order, including all entities listed in the Schedules as holding claims against the Debtors, and to all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the General Bar Date Order.  In addition to mailing such actual notice, the Debtors also published notice of the General Bar Date in more than 200 publications nationwide, as detailed in Exhibit 4 to the General Bar Date Order.

17.     On January 7, 2015, the Court issued a lengthy, published opinion holding that it could establish a bar date for claims of unknown persons that had yet to manifest any signs of illness from exposure to asbestos (the "Unmanifested Proofs of Claim").  *See In re Energy Future Holdings Corp.*, 522 B.R. 520, 523 (Bankr. D. Del. 2015).

18.     On July 30, 2015, the Court entered an order establishing December 14, 2015, at 5:00 p.m. (prevailing Eastern Time) (the "Asbestos Bar Date") as the final date and time for all persons and entities holding or asserting an asbestos-related claim against the Debtors to file proofs of claim in these chapter 11 cases (the "Asbestos Proofs of Claim" and, together with the Non-Asbestos Proofs of Claim, the "Proofs of Claim") and approving the form and manner of notice of the Asbestos Bar Date [D.I. 5171].  The Debtors provided written notice of the Asbestos Bar Date via mail on current and former employees and contractors as well as known asbestos claimants.

### III.     The Remaining Claims Asserted Against the TCEH Debtors.

19.     To date, over 42,000 Proofs of Claim have been filed against the Debtors in these chapter 11 cases, consisting of over 32,000 Asbestos Proofs of Claim and over 10,000 Non-Asbestos Proofs of Claim.  Over the course of these chapter 11 cases, the Debtors have conducted an intensive process to review and reconcile the Proofs of Claim.

20.     So far, the Debtors have filed forty-nine omnibus objections to approximately 5,600 Non-Asbestos Proofs of Claim, entered into hundreds of stipulations with various non-

asbestos claimants, and filed notices of satisfaction with respect to approximately 1,000 scheduled or filed claims.  The result of these efforts is that only 11 Non-Asbestos Proofs of Claim remain pending against the TCEH Debtors, in the aggregate. These 11 claims are currently asserted against EFCH, Luminant Generation Company LLC, Luminant Holding Company LLC, Luminant Mining Company LLC, Big Brown Power Company LLC, EFCH, and TCEH.

21.    Based on the Debtors' and their advisors' analysis of the Asbestos Proofs of Claim, the Debtors identified approximately 5,000 Asbestos Proofs of Claim asserted against the TCEH Debtors (the "TCEH Asbestos Proofs of Claim").  Of the TCEH Asbestos Proofs of Claim, the Debtors preliminarily identified approximately 1,000 proofs of claim for which claimants had alleged manifested signs of illness from exposure to asbestos ("Manifested Proofs of Claim") and approximately 4,000 Unmanifested Proofs of Claim.  Claimants asserted Manifested Proofs of Claim against *every* TCEH Debtor and Unmanifested Proofs of Claim against seven of the TCEH Debtors: Big Brown Power Company LLC, Collin Power Company LLC, DeCordova Power Company LLC, EFCH, Luminant Generation Company LLC, Tradinghouse Power Company LLC, and Valley NG Power Company LLC.[6]

22.    Therefore, the remaining unresolved claims against the TCEH Debtors can be categorized as follows:

| | |
|---|---:|
| **Total** | **5,168** |
| Non-Asbestos Proofs of Claim | 11 |
| TCEH Asbestos Proofs of Claim | 5,157 |
| *Manifested Proofs of Claim* | *1,021* |
| *Unmanifested Proofs of Claim* | *4,132* |
| *Other Asbestos Proofs of Claim* | *4* |

---

[6] The Debtors continue to review the Asbestos Proofs of Claim and reserve all rights to object to such claims to the extent the Debtors determine that any claim is not valid.

23.     The TCEH Plan provides that Holders of Allowed Unsecured Claims against the TCEH Debtors—which comprise Allowed Unsecured Debt Claims in Class C4 and Allowed General Unsecured Claims (including any Allowed Claim against the TCEH Debtors derived from or based upon liabilities based on asbestos) in Class C5—receive their pro rata share of the TCEH Cash Payment, calculated based on the aggregate amount of Allowed Class C4 Claims and Allowed Class C5 Claims.  TCEH Plan, Art. III.A.30–31. Therefore, Allowed Unsecured Claims receive the same rate of recovery regardless of the specific TCEH Debtor against which the claim is asserted and Allowed.[7]

24.     The TCEH Cash Payment was funded in the amount of $550,000,000, less certain adjustments, in each case pursuant to the Plan.  TCEH Plan, Art. I.A.393.  To date, the Debtors have made initial distributions on account of approximately $7.8 billion of Allowed Claims in Class C4 and Class C5.  Certain funds remain escrowed in the TCEH Cash Payment Account on account of the 5,168 remaining unresolved Proofs of Claim against the TCEH Debtors.

**IV.     The Benefits of Closing Cases.**

25.     The Reorganized TCEH Debtors file reports each calendar quarter on account of the Closing Cases and are charged between $325.00 and $30,000.00 in U.S. Trustee fees per entity each quarter based on such entities' level of cash disbursements.  There are no outstanding matters related to the Closing Cases other than the unresolved Proofs of Claim.[8]  Closure of such

---

[7] There are 55 unresolved General Unsecured Proofs of Claim currently asserted against EFCH. Under Art.III.B.32 of the TCEH Plan, General Unsecured Claims against EFCH are canceled and released without a distribution.  Due to the fact that these Claims are released without a distribution, the relief requested herein does not prejudice these Claims.

[8] The Closing Cases will either pay, or make provision for the payment of, all expenses arising from the administration of the Closing Cases, including court fees and fees required under 28 U.S.C. § 1930(a)(6) prior to the hearing on this Motion.

9

cases will allow the Debtors to avoid unnecessarily incurring further U.S. Trustee fees on account of the Closing Cases ("U.S. Trustee Fees").  *See, e.g.*, 28 U.S.C. § 1930(a)(6) (requiring the payment of quarterly fees to the trustee).  At present, the TCEH Debtors' cases accrue approximately $255,000.00 per quarter in U.S. Trustee Fees.

26.    Therefore, the Debtors seek to transfer to TCEH (the "Lead Case") the 5,156 Asbestos Proofs of Claim (including 1,020 Manifested Asbestos Proofs of Claim, 4,132 Unmanifested Proofs of Claim, and 4 other Asbestos Proofs of Claim) and the 9 Non-Asbestos Proofs of Claim that were asserted against TCEH Debtors other than TCEH, thus enabling the Debtors to close cases that remain open unnecessarily, saving time and resources.

### Basis for Relief

27.    Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case."  Bankruptcy Rule 3022, which implements section 350 of the Bankruptcy Code, further provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."  Local Bankruptcy Rule 3022 1(a) provides that, "[u]pon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been fully administered provided that all required fees due under 28 U.S.C. § 1930 have been paid."

28.    The term "fully administered" is not defined in the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules.  The Advisory Committee Note to Bankruptcy Rule 3022 (the "Advisory Committee Note"), however, sets forth the following non-exclusive factors to be considered in determining whether a case has been fully administered:

    a.    whether the order confirming the plan has become final;

RLF1 18261345v.1

b.      whether deposits required by the plan have been distributed;

c.      whether the property proposed by the plan to be transferred has been transferred;

d.      whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;

e.      whether payouts under the plan have commenced; and

f.      whether all motions, contested matters, and adversary proceedings have been finally resolved.

Courts in this district and others adopt the view that "these factors are but a guide in determining whether a case has been fully administered, and not all factors need to be present before the case is closed." *In re SLI, Inc.*, No. 02-12608, 2005 WL 1668396, at *2 (Bankr. D. Del. June 24, 2005) (citing *In re Mold Makers, Inc.*, 124 B.R. 766, 768–69 (Bankr. N.D. Ill. 1990)); *see also In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999) (recognizing that bankruptcy courts weigh the factors contained in the Advisory Committee Note when deciding whether to close a case); *In re Jay Bee Enters., Inc.*, 207 B.R. 536, 538 (Bankr. E.D. Ky. 1997) (same); *Walnut Assocs. v. Saidel*, 164 B.R 487, 493 (E.D. Pa. 1994) ("[A]ll of the factors in the Committee Note need not be present before the Court will enter a final decree.").

29.      In addition to the factors set forth in the Advisory Committee Note, courts have considered whether the plan of reorganization has been substantially consummated. *See, e.g.*, *In re Gates Cmty. Chapel of Rochester, Inc.*, 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997)

(considering substantial consummation as a factor in determining whether to close a case); *Walnut Assocs.*, 164 B.R at 493 (same).[9]

30.    As of the date hereof, the Closing Cases have been "fully administered" within the meaning of section 350 of the Bankruptcy Code, making it appropriate for the Court to enter the Order for the Closing Cases.  In particular, as described above:

a.    the TCEH Confirmation Order is final and no party has pursued an appeal;

b.    upon the TCEH Effective Date, the Restructuring Transactions were consummated, thereby effectuating the transfers of property contemplated by the TCEH Plan;

c.    the Reorganized TCEH Debtors have assumed the business and management of the property dealt with by the TCEH Plan;

d.    initial distributions to Holders of Allowed Class C4 and C5 claims have been made and distributions to Holders of all other Allowed Claims against the TCEH Debtors have been completed;

e.    the TCEH Cash Payment Account has been funded to make go-forward payments to all Holders of Allowed Class C4 and Class C5 Claims;

f.    because of the vesting of all of the TCEH Debtors' assets and liabilities in the Reorganized TCEH Debtors, upon the transfer of the remaining unresolved Proofs of Claim against the Closing Cases to TCEH, there will be no need to resolve any further matters in the Closing Cases; and

g.    the TCEH Plan has been substantially consummated within the meaning of section 1101(2) of the Bankruptcy Code.

---

[9] Section 1101(2) of the Bankruptcy Code defines substantial consummation as the:  (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.

31.     As noted above, given the operation of the TCEH Plan, closure of the Closing Cases shall not prejudice any party in interest or otherwise negatively affect the administration of the Debtors' consolidated estates, which will take place without interruption in the Lead Case. Specifically, under the construct of the TCEH Plan, all Allowed Class C4 and Class C5 Claims receive their pro rata share of the TCEH Cash Payment regardless of the TCEH Debtor against which the claim is asserted. Moving these Proofs of Claim to the Lead Case will not affect the consideration which will be distributed to these claimants on account of their Proofs of Claim.

32.     Moreover, continuing operation of the Closing Cases would hamper both the Reorganized Debtors and U.S. Trustee with an unnecessary administrative burden. For each of the Closing Cases, the Reorganized Debtors file quarterly reports that the U.S. Trustee is obligated to review. Given the large number of Closing Cases, this process requires substantial effort from the Reorganized Debtors and the U.S. Trustee. The ongoing administrative and financial burden on the Closing Cases provides little corresponding benefit to any party in these chapter 11 cases, including the potential creditors of the Closing Cases' estates.

33.     All restructuring steps contemplated under the TCEH Plan have been consummated, all assets have vested in the Reorganized TCEH Debtors, and the Reorganized TCEH Debtors have been successfully running and operating their businesses since their emergence over a year ago. And, importantly, the resolution of the only remaining matter in the Closed Cases—claims that remain disputed and/or contingent—is not dependent on the Closed Cases remaining open. The specific TCEH Debtor against which a claim is asserted does not affect the Reorganized TCEH Debtors' administration or resolution of such claim, nor does it affect the distribution to be made on account of a claim that is ultimately Allowed.

RLF1 18261345v.1

34.     Furthermore, bankruptcy courts in this district have issued final decrees closing chapter 11 cases while retaining jurisdiction over certain pending matters.  *See, e.g., In re Building Materials Holding Corp.*, Case No. 09-12074 (KJC) (Bankr. D. Del. June 28, 2011) (granting motion for final decree for some, but not all reorganized debtors, with all remaining motions, contested matters, and adversary proceedings to be administered under the remaining chapter 11 case); *In re Stock Building Supply Holdings, LLC*, Case No. 09-11554 (MFW) (Bankr. D. Del. Feb. 19, 2010 (same); *In re KCMVNO, Inc.*, Case No. 08-10600 (BLS) (Bankr. D. Del. Dec. 3, 2010) (closing chapter 11 case notwithstanding pending adversary proceeding).

35.     Thus, the fact that the claims administration process is ongoing in the Closing Cases does not require the Closing Cases to remain open.  This is particularly so where addressing the Asbestos Proofs of Claim could take many years.

36.     The Debtors further request that any and all disputed claims, motions, contested matters and adversary proceedings against the Closing Cases that remain open, or that are opened in the future with respect to the Closing Cases, be administered under the Lead Case. Thus, closing the Closing Cases will not prejudice the rights of any party in interest, including claimants, in these chapter 11 cases, as such rights may be asserted in the Lead Case.  The Debtors reserve the right to object in the future to any of the claims, motions, contested matters and adversary proceedings against the Closing Cases that remain open, or that are opened in the future with respect to the Closing Cases.

37.     By closing the Closing Cases, it is not the Debtors' intent to impair, prejudice, or otherwise affect the rights of any party in interest, including, without limitation, with respect to the claims-reconciliation process and TCEH Plan distributions.  Rather, the continued operation

of the Closing Cases is simply unnecessary to the continued administration of matters related to the Debtors.

38.     Because the Lead Case is not being closed at this time, and because there are various outstanding and ongoing cases—currently being administered against the EFH/EFIH Debtors and the EFH Shared Services Debtors—the Debtors are not filing a final report at this time.  Instead, the Debtors will file a consolidated final report for all the TCEH Debtors at the time that all of these chapter 11 cases are closed, in accordance with Local Bankruptcy Rule 3022-1(c).  As a result, the Debtors seek a waiver of the obligation to file a final report in the Lead Case in connection with this Motion at this time.

39.     Finally, all U.S. Trustee Fees payable pursuant to section 1930 of title 28 of the United States Code with respect to the Closing Cases have been paid, will be paid, or provision for the payment thereof will be made, in the amounts due as soon as reasonably practicable after the closure of the Closing Cases.

40.     In light of the foregoing, the Debtors submit that ample justification exists for entry of a final decree closing the Closing Cases.

## Notice

41.     The Debtors shall cause a copy of the Motion to be served on the date hereof via first class mail on:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i)

RLF1 18261345v.1

the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and

RLF1 18261345v.1

counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities

and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States

Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of

the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas;

and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors

shall also cause a notice of the Motion providing recipients with instructions on how to obtain a

copy of the Motion at no charge (but not actually attaching a copy of the Motion), substantially

in the form attached as **Exhibit 1** to the Order to be served on the date hereof via first class mail

on:  (i) each of the holders of the unresolved Non-Asbestos Proofs of Claims; and (ii) each of the

Holders of the unresolved TCEH Asbestos Proofs of Claim.  The Debtors submit that, in light of

the nature of the relief requested, no other or further notice need be given.

### No Prior Request

42.     No prior motion for the relief requested herein has been made to this or any other

court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the

Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief

requested herein and such other and further relief as the Court deems appropriate.

Dated:  October 10, 2017
      Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
        defranceschi@rlf.com
        madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
        stephen.hessler@kirkland.com
        brian.schartz@kirkland.com
        aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
        marc.kieselstein@kirkland.com
        chad.husnick@kirkland.com
        steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession

RLF1 18261345v.1