1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3

4   In re:                          :
                                    :   Chapter 11
5   ENERGY FUTURE HOLDINGS          :
    CORP., et al.,                  :   Case No. 14-10979(CSS)
6                                   :
              Debtors.             :   (Jointly Administered)
7   _____ :
                                    :
8   ENERGY FUTURE HOLDINGS CORP., :   Adversary Proceeding
                                    :   No. 17-51785(CSS)
9              Plaintiff,          :
                                    :
10        v.                        :
                                    :
11  VISTRA ENERGY CORP.,            :
                                    :
12             Defendant.          :
    _____ :

13

14                          United States Bankruptcy Court

15                          824 North Market Street

16                          Wilmington, Delaware 19081

17

18                          October 13, 2017

19                          11:09 AM - 12:20 PM

20

21

22

23  B E F O R E :

24  HON CHRISTOPHER S. SONTCEHI

25  U.S. BANKRUPTCY JUDGE

1    HEARING re Energy Future Holdings Corp.'s Motion for a

2    Temporary Restraining Order and Preliminary Injunction

3    (Filed: 10/10/2017; Adv. D.I. 10) [filed under seal]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

1  A P P E A R A N C E S :

2  BIELLE & KLAUDER, LLC

3       Attorney for EFH Corp.

4

5  BY:  DAVID M. KLAUDER, ESQ.

6

7  PROSKAUER ROSE LLP

8       Attorneys for EFH Corp.

9

10  BY:  MARK K. THOMAS, ESQ.

11       MICHAEL A. FIRESTEIN, ESQ.

12

13  ROPES & GRAY

14       Attorney for Elliott

15

16  BY:  GREGG GALARDI, ESQ.

17

18  SULLIVAN & CROMWELL

19       Attorney for E-Side Official Committee

20

21  BY:  BRIAN GLUECKSTEIN, ESQ.

22

23

24

25

1    KLEHR HARRISON HARVEY BRANZBURG LLP

2         Attorney for UMB Bank, N.A., Indenture Trustee

3

4    BY:  RAYMOND H. LEMISCH, ESQ.

5

6    PAUL, WEISS, RIFKIND, WHARTON & GARRISON

7         Attorneys for Vista Energy Corp.

8

9    BY:  ANDREW EHRLICH, ESQ.

10        JACOB A. ADLERSTEIN, ESQ.

11        GEORGE W. KROUP, ESQ.

12

13   YOUNG CONAWAY STARGATT & TAYLOR, LLP

14        Attorney for Vistra Energy Corp.

15

16   BY:  PAULINE MORGAN, ESQ.

17        JOHN T. DORSEY, ESQ.

18

19   BAYARD, P.A.

20        Attorney for Elliott

21

22   BY:  SCOTT D. COUSINS, ESQ.

23

24

25

1    POTTER ANDERSON CARROON LLP

2        Attorney for EFIH DIP Agent

3

4    BY:  R. STEPHEN MCNEILL, ESQ.

5

6    AKIN GUMP STRAUSS HAUER & FELD

7        Attorney for EFIH PIK Trustee - UMB

8

9    BY:  CHRISTOPHER CAREY, ESQ.

10

11   PACHULSKI STANG ZIEHL & JONES

12       Attorney for EFIH Second Lien Indenture Trustee

13

14   BY:  COLIN R. ROBINSON, ESQ.

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Please be seated.  Good morning.

4         (A chorus of good morning)

5              MR. THOMAS:  Thank you, Your Honor.  Mark Thomas

6    of Proskauer Rose, counsel to Energy Future Holdings Corp.,

7    debtor and debtor in possession, and plaintiff in adversary

8    proceeding 17-51785.

9              Your Honor, we're here this morning on a motion

10   for temporary restraining order that was filed by EFH, the

11   plaintiff, on October 11th, and you set for hearing by order

12   yesterday.

13             As we stated in yesterday's status conference, we

14   had been working prior to the filing of the complaint in

15   attempting to reach a consensual agreement on a path to

16   resolving the disputes between Vistra and EFH.  We are

17   somewhat successful, but unfortunately not entirely

18   successful.

19             We do have a resolution set forth in a stipulation

20   and scheduling order between the plaintiff, EFH, and the

21   defendant, Vistra, on a method to have the dispute resolved.

22   That resolution is not supported by Elliott, and they will

23   object to that today, and the committee, I'm not exactly

24   sure where they stand, they may object, but they have not

25   indicated they support.

1            If I may briefly, Your Honor.

2            The dispute under the TMA, which is a contract

3    between EFH and Vistra, one of the key disputes is around

4    the correct method to allocate earnings and profits.

5            And, Your Honor, I don't know if you have a binder

6    in front of you, but there is the TMA in the binder.

7            THE COURT:  Okay.

8            MR. THOMAS:  It's the declaration exhibits binder

9    for hearing on October 13th --

10           THE COURT:  Yes.

11           MR. THOMAS:  -- binder 1 of 2.

12           THE COURT: Yes, I have it.

13           MR. THOMAS:  And, Your Honor, Exhibit A to the

14   declaration of Michael Firestein --

15           THE COURT:  Uh-huh.

16           MR. THOMAS:  -- is the TMA.

17           THE COURT:  Yes.

18           MR. THOMAS:  And, Your Honor, if I may direct your

19   attention to Section 2.04(e), which is page 18 of 79 on the

20   top.

21           THE COURT:  Yes.

22           MR. THOMAS:  And at the bottom of that page it's

23   entitled, allocation of tax attributes.

24           THE COURT:  Yes.

25           MR. THOMAS:  And I'll skip around, but that

1    provision provides that tax attributes shall be allocated

2    between EFH and reorganized TCH, which is now Vistra, and

3    continuing on page 15 of the TMA three lines from the top,

4    and it says, "And with respect to earnings and profits as

5    initially requested in the IRS submissions."

6           There is a dispute between EFH and Vistra as to

7    the appropriate allocation of earnings and profits "as

8    originally requested in the IRS submissions."  And one

9    sentence later it says, "Any disputes shall be resolved by

10   the accounting firm in accordance with Section 9.02."

11          THE COURT:  Uh-huh.

12          MR. THOMAS:  Your Honor, further in the TMA on

13   page 24 of the TMA, page 28 of 79 at the top, Section 9.02,

14   dispute resolution, provides,:

15          "In the event of any dispute among the parties as

16      to any matter covered by Sections 2.02, 2.03, or 2.04

17      the parties shall appoint a nationally recognized

18      independent public accounting firm."

19          And it goes on from there to set forth the dispute

20   resolution procedure in the TMA.

21          And, Your Honor, the TMA was part of the

22   confirmation submissions and supplement that was approved by

23   this Court when the Court confirmed the TCH plan, which

24   became effective on October 16th.

25          So, Your Honor, we have worked on a process that

1    we think protects the estate yet incorporates the dispute

2    resolution procedure in the TMA.

3              And if I can briefly walk you through the

4    stipulation and scheduling order.

5              THE COURT:  Okay.

6              MR. THOMAS:  And we've provided copies of the

7    stipulation and scheduling order to counsel to Elliott and

8    counsel to (indiscernible), and we have extra copies, Your

9    Honor.

10             So, Your Honor, on page -- starting on page 3

11   carrying over to page 4 of the stipulation and proposed

12   order, paragraph 1, this paragraph provides a detailed

13   defined definition of the earnings and profit allocation

14   dispute.  And at the top of page 4 it provides that EFH

15   contends that -- I'll skip to Romanette (ii), the separate

16   approach is the E&P allocation method that initially

17   requested in the IRS submissions.  That is the language that

18   is identical to the language in Section 2.04(e) we reviewed

19   previously.

20             And going down through this single spaced

21   paragraph the second to last sentence provides:

22             "That in accordance with TMA Section 9.02 the

23        accounting firm shall function as an expert and not an

24        arbitrator, and shall make a determination in favor of

25        either EFH or Vistra regarding which of their

1        respective preferred E&P allocation approach" -- I'll

2        skip the parenthetical -- "is the method to alloy

3        indication E&P."

4            And the final sentence provides:

5            "the accounting firm shall be required to choose

6        either the separate approach or the aggregate

7    approach."

8            Now, Your Honor, this is not -- there may be other

9    disputes under the TMA between Vistra and EFH, and at

10   paragraph 12 on page 6 of the stipulation and order there is

11   in effect a reservation -- page 12, paragraph 6, there's a

12   reservation of rights, and it provides:

13           "That other than the disputes noted in paragraph 1

14       above legal issues and disputes regarding the TMA will

15       be reserved for the bankruptcy court, if necessary,

16       including issues relating to whether the TMA has been

17       breached."

18           And there's a further reservation that if other

19   issues arise parties can reserve the right to argue those

20   issues, are subject to the accounting firm dispute

21   resolution procedures.

22           Your Honor, on paragraph 15 of the stipulation at

23   the bottom of page 6 the Court reserves jurisdictions over

24   the parties with respect to this stipulation, and the

25   proposal is that the adversary proceeding be stayed for a

1    status hearing to be held in January, which is about 90 days

2    out.  And the reason is we -- under the TMA dispute

3    resolution procedures the accounting firm is required to

4    issue its determination within 30 days of submission, and we

5    have a schedule, paragraphs 2 through 6 of this order, that

6    sets forth a schedule and timetable for accounting firm

7    resolution so that the accounting firm can resolve the

8    dispute on or before December 8th.

9         Your Honor, we have other provisions in the

10   stipulation and order that we think address the concerns

11   that were set forth in our pleadings, that were set forth in

12   our complaint, and that were set forth in our moving papers

13   for the temporary retraining order.

14        For example, again on page 6 of the stipulation

15   and order and up on page -- at paragraph 10 there has been a

16   concern by EFH, as well as Elliott as a potential

17   intervenor, that Vistra is having discussions with the

18   Internal Revenue Service, which by the way is its taxing

19   authority, discussions clearly occur between a taxpayer and

20   its taxing authority.  However, to protect the estate

21   paragraph 10 provides, and there's a mutual provision in

22   paragraph 11, "that Vistra shall put the IRS audit team on

23   notice in writing regarding the dispute described in the

24   stipulation."  And we will -- EFH will have the ability to

25   review and approve any such disclosure to the IRS.  So the

1    IRS will have notice of the dispute.

2              And, Your Honor, going back to page 5, paragraph 8

3    of the stipulation, and this is again a key issue.  We were

4    not able to come to resolution or agreement with Vistra on a

5    provision whereby they would file a tax return that we

6    directed them to file.  Rather they have agreed in

7    paragraph 8 that they will file their tax return as they

8    desire, provided that if the accounting firm rules that the

9    EFH approach is the right approach and the method to be used

10   to allocate E&P, Vistra must file an amended return.

11             Your Honor, the debtors' estate believes there are

12   several benefits to the stipulation and proposed order as

13   opposed to proceeding with litigation.  The order complies

14   with the TMA dispute resolution procedure, it provides for a

15   speedy court supervised resolution of the E&P allocation

16   dispute arising under Section 2.04(e) of the TMA, it puts

17   the IRS on notice of the dispute, it requires the accounting

18   firm to choose either the EFH approach or the Vistra

19   approach, it requires Vistra to amend its return if its

20   approach is not chosen, and it provides certainty.

21             Your Honor, the options and alternatives to this

22   stipulation have been vetted and discussed with EFH as

23   recently as an hour ago, and we've continued to evaluate our

24   options and alternatives, and as a party to the contract EFH

25   believes the proposed consensual process to resolve this

1   dispute is appropriate under 2.04(e) of the TMA, is a proper

2   exercise of our business judgment, and will protect the

3   estate.

4            So, Your Honor, we would urge the Court to

5   consider and approve the proposed stipulation and order.

6            THE COURT:  Thank you, Mr. Thomas.

7            MR. THOMAS:  Thank you.

8            THE COURT:  Vistra?

9            MR. EHRLICH:  Good morning, Your Honor.

10           THE COURT:  Good morning.

11           MR. EHRLICH:  Andrew Ehrlich from Paul, Weiss, on

12  behalf of Vistra.

13           We are pleased that we have reached an agreement

14  with EFH in the form of the stipulation and order submitted

15  to the Court this morning.  We believe it honors both the

16  letter and the spirit of the TMH -- of the TMA -- excuse me

17  -- which provides that with respect to technical tax

18  disputes and the parties clearly anticipated in the heavily

19  negotiated court-approved TMA, that the disentanglement of

20  Vistra and EFH through the spin would require the resolution

21  of certain tax attributes, and that would be complex and

22  from time to time the parties might not agree, but there is

23  a system set up that would allow in 2.02 Vistra to file, as

24  the taxpayer, its return, and EFH, if the issues with EFH's

25  return correspondingly as the taxpayer under penalty of

1    perjury, file its return in the way that it believes

2    appropriate, in good faith, but that provides for expedited

3    resolution by an expertized independent accountant.  And

4    that's the agreement we've reached.

5            We believe it is efficient.  We believe it will

6    provide certainty.  And we believe there will be no harm

7    visited on any party by virtue of a hearing to this TMA

8    provision.

9            I would just note, because we have been unable to

10   reach agreement with all stakeholders, that the sticking

11   point I believe that you will hear from those who do not

12   agree with the stipulation is that Vistra should not file

13   its return on Monday using its proposed approach.

14           Setting aside that the TMA we think in Section

15   2.02(c) on page 12 of the TMA is crystal clear that in the

16   nature of when there is a dispute that Vistra shall provide

17   the return to EFH, there shall be a negotiation, there shall

18   be a comment period, and in the event that there is not

19   agreement, and I quote,:

20           "Reorganized TCH shall determine the reporting of

21       such item or matter in good faith and consultation with

22       ECH, and in the event any dispute is not resolved prior

23       to the due date of the filing of any tax return such

24       tax return shall be timely filed as prepared by

25       reorganized TCH, and such tax return shall be amended

1          as necessary to reflect the resolution of such dispute

2          in a manner consistent with such resolution."

3                  And that's precisely what the stipulation order

4          proposes to do.

5                  And you know, frankly notwithstanding the TMA

6          language, Your Honor, if Vistra believed that it could hold

7          off filing the form it would.  October 16th is the last

8          extended date that it may file with respect to the taxable

9          treatment of its payment to shareholders at the end of 2016.

10         That is the issue I think dividing the parties at this

11         point.

12                 We are not trying to be obstructionists by filing

13         a tax return.  Based on the tax advice, and I do not profess

14         to be a tax expert, but based on the advice from those who

15         are Vistra is under the obligation to file its return and it

16         proposes to do so consistent with the TMA.

17                 THE COURT:  I think I read in the papers that

18         there is an ability for Vistra to receive an additional

19         60-day extension of that time period.  Isn't that correct?

20                 MR. EHRLICH:  Your Honor, we don't believe that to

21         be the case.  That is simply a disagreement between the

22         parties.  The form 5452 was amended in 1992, any mention of

23         extension was removed from the form.  It is required to be

24         filed, as Vistra has been advised by its tax advisors,

25         together with its return, and there's no further extension

1    available.

2            THE COURT:  Okay.

3            MR. EHRLICH:  And with respect to the filing of

4    the form, Your Honor, respectfully what we're talking about

5    here is the question of harm that could result from the

6    pendency of a form with the service for a period of eight

7    weeks, ten weeks on the outside, during the pendency of the

8    dispute resolution proceeding.  And respectfully with

9    respect to Elliott I don't think they have come close to

10   making a showing with facts rather than speculation as to

11   how it is possible that harm could result from that near

12   pendency.

13           To be clear, Vistra has been candid with the

14   Service about the existence of a dispute.  Indeed EFH and

15   Vistra for a period of time were in agreement to pursue a

16   joint private letter ruling with the Service, and approach

17   the Service to see if that was a possibility.  The Service

18   agreed, EFH then declined to proceed on that path, which we

19   note in our papers we continue to believe would have been

20   the most effective certain method of resolution.

21           But setting that aside, that ship has sailed at

22   this point.  The Service knows there's a dispute.  This

23   dispute is publicized.  We've agreed in our papers in the

24   stipulation and order to make clear if and when an audit --

25   and it's an if -- when an audit beginnings to make clear in

1    a writing that EFH has the ability to approve, advice the

2    Service of the existence of the dispute.

3              There will be nothing that the Service is shielded

4    from, and indeed I believe Vistra's position would be

5    substantially compromised if it was required to take the EFH

6    adopted position and then later, if proven correct by the

7    accountant, required to amend to take a position that would

8    result in the payment of lost tax in terms of its position,

9    vis-à-vis, the service.

10             So we see no hardship visited on the EFH estates.

11   There is potential prejudice to Vistra's position before the

12   Service, but certainly there's no need to prohibit Vistra

13   from speaking with the Service, its regulator, during this

14   multi-week procedure to resolve with the accounting firm

15   what the proper treatment is.

16             So we believe the stipulation and order is a good

17   way forward, it is efficient, and perhaps most importantly,

18   it is entirely consistent with the heavily negotiated and

19   court-approved TMA.

20             So unless the Court has any questions.

21             THE COURT:  Oh, no, I do not.  Thank you,

22   Mr. Ehrlich.

23             MR. EHRLICH:  Thank you very much.

24             THE COURT:  Mr. Glueckstein, Mr. Galardi, I don't

25   know, whoever wants to go first.  I could resolve that

Page 18

1    dispute for you if you'd like.

2         (Laughter)

3              MR. GALARDI:  Your Honor, I'm not used to having

4    people on my side, so I guess that's -- I will go first.

5              Your Honor, first I'm going take care of what may

6    be a procedural matter, I understand there's no objection.

7              One, we are proposed intervenor, so at least with

8    respect to this matter I'd ask Your Honor to grant us

9    authority to intervene on that particular matter at least.

10             THE COURT:  On the adversary proceeding?

11             MR. GALARDI:  On the adversary proceeding and with

12   respect to the TRO, them I'm going to ask you about the TRO,

13   because we joined the TRO.  I can make an oral motion for a

14   TRO, but normally when you join something and I guess

15   they're probably withdrawing it, I'm not going to lose -- I

16   don't want to lose my standing to prosecute the TRO, because

17   we do think the TRO is something that the Court should

18   consider and issue today, and I'll give you arguments as to

19   why.

20             THE COURT:  All right.  Is there any objection to

21   the intervention?

22             MR. THOMAS:  Your Honor, not per se.  I think

23   there have been precedent in this case where the intervening

24   parties do not -- the debtor, who brought the action,

25   controls settlement, and the intervenors do not control

1    settlement, and it's fine for them to come in and argue as

2    an intervenor, but ultimately the debtor has control of

3    settlement.

4              MR. GALARDI:  And, Your Honor, I don't see this

5    as --

6              THE COURT:  Hang on, let me ask Mr. Ehrlich.

7    Mr. Ehrlich, any comment?

8              MR. EHRLICH:  The only thing I would note, Your

9    Honor, is that the TMA on its face provides that it does not

10   have any third-party beneficiaries.  The TMA is an

11   agreement, and that is quite clear in the TMA.  The TMA is

12   an agreement between Vistra and EFH.  I don't know that --

13   it's Section 9.09 of the TMA, nothing in this agreement

14   expressed or implied is intended or to be confer upon any

15   person any legal or equitable -- other than the parties --

16   any legal or equitable right, benefit, or remedy of any

17   nature whatsoever under or by reason of this agreement.

18             So I would note that TMA on its terms does not

19   provide for third-party beneficiaries.

20             THE COURT:  So you oppose intervention?

21             MR. EHRLICH:  Your Honor, I understand --

22             THE COURT:  That's the question I asked.

23             MR. EHRLICH:  We'll take no position on the

24   intervention.

25             THE COURT:  All right.  Well I'm not going to sign

1    an order.  I will certainly allow the intervention of

2    Elliott for purposes of, and solely for purposes at this

3    point, of disputing the propriety of entering the

4    stipulation and order, and --

5              MR. GALARDI:  So, Your Honor --

6              THE COURT:  -- to the extent necessary pursuing

7    the TRO.

8              MR. GALARDI:  Okay.  And, Your Honor --

9              THE COURT:  And all other -- an actual order will

10   await further activity, if necessary.

11             MR. GALARDI:  And that's fine, Your Honor.

12             And given what the EFH fiduciary has done here

13   we're reserving all rights to seek standing to prosecute the

14   adversary proceeding, because we actually believe that it is

15   not in the best interest of the estate.  So I'll just put

16   that --

17             THE COURT:  Well your rights are reserved, but

18   they are the fiduciary of the estate, you are not.

19             MR. GALARDI:  We understand that, Your Honor.

20             THE COURT:  And I know you're going to intervene

21   in everything that happens in the case, but you're not the

22   fiduciary, you're not the trustee.

23             MR. GALARDI:  We understand that, Your Honor.

24             THE COURT:  All right.

25             MR. GALARDI:  So what I'd like to now do is turn

1    to the actual document upon which Mr. Thomas and the

2    stipulation is based.  And I think we have, truly with

3    respect to the TRO and why it's necessary, a fundamental

4    difference of opinion regarding the Court's jurisdiction and

5    what is actually said in the TMA and why we think the TRO is

6    in fact appropriate in light of the contractual dispute.

7              What Your Honor has been told and has been walked

8    through is 2.02(c), that they can file the tax return as

9    they see fit, and then that 2.4(e) and 9.02, send this to an

10   accounting firm.

11             Where I think all of the parties have agreed and

12   have agreed for the last week is that this matter needs to

13   be resolved expeditiously.

14             But, Your Honor, what I would like to do is first

15   start with Section 2.02, because I don't believe it is

16   nearly as clear as to what kind of dispute and good faith

17   efforts have to be made and what matters go to a dispute.

18             Your Honor, if you look at 2.02(c), and I believe

19   you have it in front of you.

20             THE COURT:  Yes.

21             MR. GALARDI:  Okay.  If you go to the very middle

22   of that paragraph, which is the language that they are

23   asking Your Honor to look at it says:

24             "The parties shall negotiate in good faith to

25        resolve all disputed issues.  All disputes that the

1          parties are unable to resolve shall be resolved by an

2          accounting firm pursuant to 9.02."

3               And I'll get to that.

4               "And in the event that any dispute is not

5          resolved, whether pursuant to good faith negotiations

6          or the accounting firm prior to the due date" -- which

7          they're now going to say is October 16th, which we

8          disagree -- "for the filing of any tax return, such tax

9          return shall be filed as prepared by the reorganized

10         TCH."

11              And then it goes on.

12              Your Honor, first I think that that is too broad

13    of a reading of Section (c), and it -- and if you go simply

14    one line above that sentence it starts with:

15              "In the event that neither the intended tax

16         treatment, the tax materials, nor commercial practice

17         are applicable to a particular item or matter,

18         reorganized TCH shall determine the reporting of such

19         item or matter in good faith and consultation."

20              Your Honor, the fact of the matter is the

21    discretion to file in good faith in our reading of this

22    document depends upon the fact that there is neither an

23    intended tax treatment or a tax material at issue.

24              Now, if Your Honor goes back to the definition of

25    the agreement and goes back to the definition of tax

1    materials, which I find on page 10.

2              THE COURT:  Uh-huh.

3              MR. GALARDI:  Tax materials specially provides:

4              "Means a private letter ruling, any opinion, the

5         IRS submissions, any representation or letter from a

6         party or any affiliate thereof supporting an opinion,

7         and any other materials delivered or delivered by a

8         party or any affiliate thereof in connection with the

9         rendering of an opinion or the issuance of the IRS of a

10        private letter ruling."

11             So, Your Honor, first I don't believe, and this is

12   why I think we have a legal matter for Your Honor in the

13   very first instance, this is not in our view a simple

14   2.02(c) matter, because it involves the tax materials, an

15   uncontroverted fact.

16             Your Honor, now let's go to 2. -- now they rely on

17   -- and so, Your Honor, we think in that first instance there

18   is a contractual issue.  That is not a matter.  This is a

19   matter of how to read this contract.  That is a matter for

20   Your Honor.

21             Now, they may suggest that there's nothing for

22   Your Honor, but if Your Honor would now turn to 9.16 of the

23   document, and this is a provision that again they did not

24   call out.  It says, "Jurisdiction and service of process."

25   I think if Your Honor looks at the very last sentence that

1    is in bold, which will also now bring us back to 9.02 --

2    2.04, and 9.02, it says specifically:

3              "Notwithstanding this section" -- I think it's

4         supposed to be 9.16, that was just a typo -- "any

5         dispute regarding 2.02, 2.03, or 2.04 shall be resolved

6         in accordance with Section 9.02 provided that the terms

7         of Section 9.02 may be enforced by either a party in

8         accordance with the terms of 9.16."

9              And that's this section, and that gives Your Honor

10   jurisdiction to decide legal issues.  Interpretation of the

11   contract.

12             So you can use all the words any interpretation

13   that you want or any dispute, but at least -- there's at

14   least an ambiguity in the contract and there's a legal

15   issue.

16             Let's now turn to Section 2.04, which is what

17   they're relying on.  2.04(e) is an allocation of tax

18   attributes.

19             First of all, there's no dispute that tax

20   attributes are property of the estate, and as was pointed

21   out, with a private letter ruling or if not just in the

22   private letter ruling as initially requested in the IRS

23   submissions.

24             Now, it says at the end of that:

25             "The EFH parties or reorganized TCH hereby agree

1        to compute all taxes consistently with the

2        determination of the allocation of taxes pursuant to

3        this" -- 2.4 -- "unless otherwise required by a final

4        determination."

5             The final determination is when the tax person

6    resolves the issue.

7             So, Your Honor, we believe that there's a

8    contractual issue.  How do you resolve this?  Now they want

9    to keep it to an arbitrator, and we'll talk about that in a

10   second under 9.2, but we think that's a legal issue that

11   Your Honor cannot give to an arbitrator.

12            Let's go to 9.02, Your Honor, which is the other

13   provision they're relying on for jurisdiction.

14            Your Honor, this is the dispute resolution

15   procedure.  And again, I'm not going to criticize the

16   drafters, I wasn't here, but it says:

17            "In the event of any dispute among the parties as

18       to any matter under 2.02, 2.03, 2.04" -- that would

19       sound like you're reading everything, every kind of

20       dispute, but then you have a problem with 9.16 in our

21       view, it says, "that matter shall go to the accounting

22       firm."

23            Okay.  Now is a legal dispute breach or not breach

24   of the contract to go to an accounting firm?

25            THE COURT:  It's arbitratable.

1          MR. GALARDI:  It's arbitratable, but Your Honor,

2     that's why I want to go to now line 6.

3          THE COURT:  There are plenty of cases that say

4     that arbitrators, including accountants, can decide legal

5     issues.

6          MR. GALARDI:  One hundred percent agreement.

7          THE COURT:  Okay.

8          MR. GALARDI:  But I think, Your Honor, let's look

9     at what that specifically says.  It says, "Not by

10    independent review."  I'm now reading five lines, "And shall

11    function only as an expert and not as an arbitrator."

12          Your Honor, I understand what the case law says,

13    but this specific provision says this financial accounting

14    firm is not to serve as an arbitrator, and all the papers

15    that Paul, Weiss put in there, as Your Honor was cited to

16    just now, are about when they serve as an arbitrator.

17          So, Your Honor, I think there's a fundamental

18    issue which we have a difference of opinion about here, is

19    what does that contract permit and not permit?

20          We believe that the contract does not permit them

21    to file the tax return with an allocation different than the

22    allocation that EFH advocates.

23          You heard the gentleman from Paul, Weiss say, well

24    you know, we can't go back and change, but they can, that's

25    exactly what 2.02(c) says you should do.  If the opinions,

1    and that's what we're asking us to do, what they're asking

2    us to do is take two separate opinions and then change fact,

3    but the contract specifically says if you take one position

4    and it turns out by a final determination to be different

5    you can amend your returns.  That's what they bargained for

6    under the TMA.  That's what we are advocating for on behalf

7    of EFH.  I'm not sure why the fiduciary is not saying you

8    cannot do this.

9            So now we come to the irreparable harm.  What's

10   the harm?  Well, Your Honor, the harm has already been done,

11   we already said there's anticipatory breach.  They've

12   already done something we do not believe they could do under

13   the contract, go and advocate a different position.

14           Moreover, they did that and want to rely on 2.02

15   when I don't believe, and I'll ask them if it's contested,

16   they've never given EFH the full tax return.  And if we go

17   back to 2.02(c) the 30 days only runs from when you get the

18   full tax return.  Yet they're in here saying, oh, well it's

19   October 16th, we have to do it now.  They could have, and we

20   cited the regulations, I have it for you, they could have

21   requested an extension, whether it's 60 or 90 days more, I

22   don't know, we think they can still do it within the time

23   frame if they filed it today.

24           So, Your Honor, we believe, though we agree some

25   of these issues can go to an accounting firm in the first

1    instance on an expedited procedure, Your Honor could easily

2    decide is this a contract issue or not and direct to the

3    accounting firm you need to apply this method as I read the

4    contract.

5            Your Honor, we would ask for that relief and that

6    Your Honor supervise, obviously as the debtors have

7    requested, supervise the process.

8            I want to note a few things about the stipulation,

9    Your Honor, and why we do object to the stipulation.  And I

10   haven't gotten all of the comments.

11           First, Your Honor, we have our concerns obviously

12   about Proskauer's producing -- providing that.  Your Honor

13   has already said we are not the fiduciary, we will address

14   that issue separately.

15           What we do have is there are three approaches

16   actually with respect to the accounting.  One is the

17   Proskauer approach.  I will say there's win that's a Ropes

18   approach and there's one that there is in fact an approach

19   by Paul, Weiss.

20           I would note, Your Honor, we think, as I've said,

21   paragraph 10, they already are in breach and Your Honor

22   cannot countenance, and the debtors are in fact waiving the

23   argument of breach by permitting them to go to the IRS and

24   to have already gone to the IRS.

25           Though Your Honor reserves rights -- Your Honor

1    reserves jurisdiction other than the disputes in

2    paragraph 1, which we think are legal disputes, legal issues

3    and disputes regarding the TMA will be reserved for the

4    bankruptcy court decision.  I don't know how they do such a

5    broad reading of the all disputes language and then suggest

6    to Your Honor but then we can come back to you about legal

7    issues.

8              Your Honor, I note on 14, and I don't think there

9    was notice of this and I don't think the stipulation can so

10   provide, but you -- it's up to Your Honor, there's a lifting

11   of the stay.  We actually think that the tax attributes are

12   property of the estate, and by filing the returns there is a

13   seizure of that property of the estate, and the debtors I

14   think agreed and that's why they put that language in that

15   last -- in the stipulation they circulated last night, we

16   happen to disagree that the stay can be so lifted.

17             We also have other issues with it, Your Honor, but

18   our view is the TRO should be entered, that the parties can

19   either not file form 5452, or they can file it according to

20   the way in which the debtor suggests and they can amend it

21   later.

22             The irreparable harm, Your Honor, is the fact that

23   two positions will be advocated and now it's probably

24   already occurred, but we have to -- we can stop it with

25   advocacy to not have them being advocates of a position in a

1    proceeding that EFH can itself not participate in with

2    respect to the tax.  You have to do these two processes

3    separately.  You allocate, you audit, and EFH is not

4    involved in the district tax return.

5             So, Your Honor, we would request that you enter

6    the TRO.

7             THE COURT:  Okay.  Thank you, Mr. Galardi.

8             Mr. Glueckstein.

9             MR. GLUECKSTEIN:  Good morning, Your Honor.  For

10   the record Brian Glueckstein, Sullivan & Cromwell, for the

11   E-side official committee, and I would ask Your Honor to be

12   permitted to be heard on the limited issues today before the

13   Court on the TRO and the stipulation that's proposed.

14            THE COURT:  Okay.

15            MR. GLUECKSTEIN:  As I said yesterday on the

16   status conference, the committee intends to seek to

17   intervene in the action more broadly, assuming it goes

18   forward, but that will be for another day.

19            Your Honor, the committees' position here and I

20   think a lot of what we've heard this morning is that the

21   issues here have narrowed substantially, and the parties

22   have worked very hard over the last couple of weeks to do

23   so.

24            The committee believes, and we heard Vistra's

25   counsel say this morning that they are committed to an

1   expedited process.  We believe having this resolved

2   expeditiously on the time frame that's been suggested is

3   critical.

4           We do have concerns, Your Honor, around the

5   stipulation as proposed for two reasons.

6           Primarily the first of which is we agree with

7   Elliott that the questions in order to resolve the dispute

8   go beyond accounting in nature and include questions

9   regarding the tax matters agreement and the interpretation

10  thereof.  Unquestionably the submissions -- the initial

11  submissions that are referenced in Section 2.4(e) of the tax

12  matters agreement will need to be interpreted and will need

13  to be reviewed thoroughly in coming to a conclusion as to

14  what the parties have agreed to do.

15          We believe the other issues that are laid out in

16  the papers and as highlighted by Mr. Galardi around contract

17  interpretation are part of this analysis.

18          We are okay frankly either way whether the Court

19  wants to address those issues or whether the process with an

20  accounting firm, I think we could all come up with an

21  appropriate individual from what we're calling an accounting

22  firm, to deal with the issues here if the parties were

23  committed to a fulsome expedited resolution with that sort

24  of dispute resolution process.

25          But our concern with paragraph 1 of the

1    stipulation, as drafted, is that it appears to us to limit

2    this specifically to the accounting issues and will not take

3    into account what are really kind of mixed questions of fact

4    and law around the interpretation of the accounting

5    agreement.

6          So we're okay proceeding on that path, Your Honor,

7    but we -- if Your Honor so desires, but we believe that the

8    scope of the direction to the accounting firm needs to be

9    expanded in a way that accomplishes a resolution of the

10   dispute in its entirety.

11         And with respect to the TRO issue specifically

12   before the Court today we do agree with Elliott, Your Honor,

13   the committee does, that we're all committed to it sounds

14   like now an expeditious resolution of the process.

15         Our concern around the submission of the returns

16   as Vistra wants it, Monday as we believe from our tax

17   colleague, that ultimately the positions taken in these

18   returns will be if not dispositive, very important, and

19   we're concerned about the continued discussions with the

20   Service.

21         We do believe the appropriate way to proceed here

22   is to maintain the status quo for what everyone know

23   acknowledges is a limited period of time.  We do believe

24   Vistra would have the ability to obtain an extension that

25   would get it out past the eight or ten-week period, and we

1    think it's appropriate for -- given that we are here on an

2    expedited basis -- to maintain the status quo, allow the

3    parties to resolve the threshold issues either before Your

4    Honor or through a comprehensive process with an agreed upon

5    accounting firm with the necessary expertise to -- and

6    consider also the contract-related issues and have this

7    resolved in short order, after which the parties will have

8    clarity and can proceed with an appropriate filing of the

9    Service.

10           Thank you, Your Honor.

11           THE COURT:  Thank you, Mr. Glueckstein.

12           Mr. Thomas?

13           MR. THOMAS:  Thank you, Your Honor.  Your Honor,

14   just briefly.

15           So without disclosing anything confidentially the

16   gist of the dispute between Vistra and EFH regarding E&P

17   allocation that the IRS will see boils down to one thing,

18   Vistra paid -- made a distribution to its shareholders.

19   Under Vistra's approach that distribution is tax-free and no

20   taxable -- no tax revenue is received by the IRS.  Under

21   EFH's position that distribution is a taxable dividend and

22   the IRS collects taxes from the Vistra shareholder.

23           That's it is gist of what the IRS is going to be

24   faced with if it goes off unilaterally and attempts to

25   resolve these massive tax returns in less than eight weeks

1   after they've been put on notice by the parties that a

2   dispute, if there exists a dispute, it's before the

3   bankruptcy court and before an accounting firm.

4            You know, with respect to some of the language

5   objections regarding paragraph 12, which is the reservation

6   of rights, including issues relating to whether the TMA has

7   been breached, we have urged and requested the parties and

8   the objectors to provide us any additions, comments, or

9   whatnot, we haven't received any.  We did the best we can

10  with no real input.

11           With respect to the comment by Elliott counsel

12  that there may be more than two approaches to E&P

13  allocation, again paragraph 12 reserves the rights for

14  parties to bring up other approaches either to the

15  accounting firm or to this Court.  We just have the defined

16  issue in paragraph 1.

17           And, Your Honor, with respect to the provisions of

18  paragraph 2.04(e) there is a sentence that clearly says in

19  that paragraph, which sets forth that earnings and profits

20  shall be allocated as initially requested in the IRS

21  submissions.  The second sentence thereafter says, "Any

22  disputes shall be placed to the accounting firm."

23           So we think this is the appropriate method to

24  solve a path to resolve our disputes.  Thank you.

25           THE COURT:  Thank you.  Mr. Ehrlich?

1           MR. EHRLICH:  Thank you, Your Honor.  Andrew

2     Ehrlich on behalf of Vistra.

3           Your Honor, contrary to suggestion of Elliott's

4     counsel I don't believe there's any ambiguity in the TMA

5     about the scope of dispute resolution.  Paragraph 9.16

6     concludes in all capital letters I would note,

7           "That notwithstanding this section, any dispute

8        regarding Sections 2.03, 3, and, 4" -- and I think

9        there is -- if there's agreement on anything it's that

10        we're here this morning on disputes under 2.02 and 2.04

11        -- "shall be resolved in accordance with Section 9.02"

12        -- that's the accountant procedure -- "provided that

13        the terms of Section 9.02 may be enforced by either

14        party in accordance with the terms of this section."

15           Well what is this section?  This section is that

16     the Court of course retains jurisdiction to hear disputes

17     under the agreement.  In other words, this is a standard if

18     there's a dispute about the arbitrability of a dispute you

19     go to court.  That's all this last sentence says.  It's

20     quite clear that if there's a -- if one party wants to

21     pursue 9.02 and the other is resisting 9.02 may be enforced

22     by an application to the Court.

23           So we don't see this sentence as providing any

24     ambiguity or in any way mitigating the breadth of Section

25     9.02, which is of course also incorporated in 2.0 and 2.4.

1           In terms of the propriety of the disputes for the

2    accounting firm, setting aside the plain language of the

3    TMA, which in no less than four places says any disputes

4    under 2.02 and 2.04, are to be resolved by the accountant,

5    the reference that EFH and Vistra agree to in the proposed

6    stipulation addresses two points.

7           First, our view is the TMA is clear that E&P

8    should in the first instance be allocated with reference to

9    the IRS submissions.  So the accountant will need to look at

10   those IRS submissions as initially requested in the IRS

11   submission.  And if the Court wishes to look at the language

12   it's on the top of page 15.  With respect to earnings and

13   profits as initially requested in the IRS submissions.

14          Now, our position is that those initial requests

15   did not speak to the present matter of the allocation of the

16   deficit because that was not the circumstance, and indeed

17   the relevant regs weren't even cited.  EFH takes a different

18   view.  That it's a good faith dispute and the accountant can

19   read, weigh those submissions, and determine the positions

20   taken as a matter of accounting.

21          If he or she agrees with Vistra we then go back up

22   to the code and the regs and the accountant makes the

23   determination under the code and the regs as to their proper

24   treatment, as to which again we have a good faith dispute.

25          So that question we believe is squarely in the

1    realm of not only under the TMA language an appropriate

2    question for the accountant, but also appropriate in light

3    of the nature of the questions.  They are not -- although as

4    the Court noted accounting firms, and indeed we cite

5    authority in our papers for accounting firms essentially

6    being subject to FAA and this type of clausing enforceable,

7    could determine a legal question, but it's not really a

8    legal question.  They're accounting questions quite clearly.

9            So we believe it's an appropriate reference and

10   consistent with the terms of the TMA.

11           THE COURT:  Thank you.

12           MR. EHRLICH:  Thank you, Your Honor.

13           THE COURT:  Thank you.

14           Mr. Gilardi, anything more?

15           MR. GALARDI:  Nothing further, Your Honor.

16           THE COURT:  Okay.  Mr. Glueckstein?

17           MR. GLUECKSTEIN:  Nothing further, Your Honor.

18           THE COURT:  All right.  I'm going take a short

19   recess and I want to check something and I'll come back out

20   and give a ruling.  So a short recess.

21       (Recessed at 11:56 a.m.; reconvened at 12:08 p.m.)

22           THE CLERK:  All rise.

23           THE COURT:  Please be seated.

24           All right.  Thank you very much for your

25   submissions this morning, now afternoon.

1          The Court is going to approve the stipulation and

2     order -- stipulation and scheduling order that has been

3     submitted by EFH and Vistra and is not going to enter a

4     further temporary restraining order as requested by Elliott

5     and supported, I believe, by the committee.

6          The existing TRO will remain in place but expires

7     by its own terms at 5 p.m. this afternoon, which is well in

8     advance of the ability for Vistra to file the tax return and

9     the debtor to file the tax return on Monday.

10          In arriving at this decision I rely on a number of

11     things.

12          First, notwithstanding the argument of Elliott I

13     believe that the plain meaning of the tax matters agreement

14     here provides that this dispute, which has been put before

15     the Court, is properly subject to Section 9.02 of that

16     agreement, and the appointment of a qualified accounting --

17     national accounting firm to act as an expert and make a

18     decision with regard to whether the separate or combined

19     method is the appropriate method for determining the

20     allocation of the tax attributes and of course ultimately

21     the taxability to the shareholders of Vistra of the

22     distribution that occurred late 2016.

23          The cross points that Mr. Galardi raised in his

24     argument I think are immaterial to the basic point and the

25     clear thrust of the TMA that disputes under 2.02 and 2.04 go

1    to this process under 9.02.

2            Now, there is a reservation contained in the

3    stipulation and order, I think that's both appropriate and

4    important, because as Mr. Galardi pointed out, there may be

5    further disputes between the parties or between Vistra and

6    some other party, Elliott or committee or whoever, acting on

7    behalf of the debtors' estate, if necessary, that go beyond

8    what is going to be sent to the accounting firm.  Those

9    rights are fully reserved in connection with the stipulation

10   and order, And they don't need to be -- importantly I

11   believe -- do not need to be litigated today in this court.

12   They can await further developments in the case.

13           With regard to whether to enter the TRO,

14   notwithstanding the fact that the debtor is not seeking to

15   pursue that motion as we sit here today, I think they're

16   withdrawing it, but they're not pursuing it, I find that the

17   provision of the stipulation and order that allows Vistra to

18   file its own choice of method -- use its own chose of method

19   in filing its return on Monday does not constitute

20   irreparable harm to the debtors' estate.

21           Specifically the stipulation and scheduling order

22   provides that if Vistra loses in connection with the dispute

23   that's being sent to the tax expert that they rely on that

24   return to properly reflect what the tax expert rules is

25   appropriate.

1            So the difference is does it somehow constitute

2    irreparable harm for Vistra to instead of filing a return as

3    the debtors insist and amending if they win to file a return

4    on their grounds and amend if they lose?  Does that

5    difference somehow constitute irreparable harm?  I think

6    that's the nub of the dispute.

7            And I find first of all there's no evidence one

8    way or the other with how that would somehow skew things in

9    a way that was harmful to the debtor.

10           But I find that given how the stipulation and

11   scheduling order is going to play out that the point will in

12   all likelihood be moot because this issue is going to be

13   determined by the tax expert well before it would ever be

14   determined by the Service, and even communications to the

15   IRS audit team about what's appropriate or not appropriate

16   are going to fall away if the return is amended to take a

17   different position.  And the Service isn't going to fight an

18   amendment that gives more tax to the Service to collect.

19   And they generally aren't in the idea -- they generally

20   don't audit to get less tax for the government.  It happens,

21   but that's not their motion.

22           So I think it's appropriate to approve the

23   stipulation and scheduling order.

24           You know, I think this is exactly what the courts

25   are looking at when they talk about arbitration, and this

Page 41

1    accounting firm is not going to be an arbitrator, it's going

2    to be an expert.  But you know, this is the kind of dispute

3    that belongs in the hands of experts on tax.  I'm no expert

4    on tax.  I was sharing with my clerks during the break that

5    it was the worst grade I got in law school was corporate

6    tax, so -- and that's saying something, because I got some

7    bad grades.

8         (Laughter)

9              THE COURT:  So, you know, it's more appropriate

10   that it be decided by someone who really knows what they're

11   talking about.

12             I mean I make -- I decide stuff I don't know

13   anything about all the time, it's part of the job, I get

14   informed by the evidence, I get informed by the briefs, and

15   I do the best I can, but I think in this instance it's

16   definitely more appropriate to be given to the accounting

17   firm.

18             So the Court will take no action on the TRO,

19   neither deny nor grant.  The existing TRO remains in place

20   and will expire by its own terms at 5 p.m.

21             The Court will sign a clean copy of the

22   stipulation and scheduling order if you have one to hand up.

23   I marked mine up that you provided me earlier.

24             And we should set a time in January for the status

25   conference that's set in the scheduling order.

1          MR. GALARDI:  Your Honor, one quick comment and it

2     need not hold up the stipulation, but I think the gentleman

3     from Paul, Weiss specifically said the two issues that would

4     go to the accounting firm, and I understand that's going to

5     be embodied in the direction.  Is that -- Mr. Thomas, as

6     opposed to dirtying up the stipulation here with respect to

7     the accounting firm looking at the IRS submissions and doing

8     that, I think he said it the best way, but I want to make

9     sure it's in the directions, if not in the stipulation.

10          MR. THOMAS:  Your Honor, the -- EFH and Vistra

11     have agreed to provide detailed mutually agreeable

12     directions to the accounting firm no later than Friday,

13     October 20th.

14          Mr. Galardi is referencing Mr. Ehrlich explained

15     to the Court that the first -- in the first instance the

16     accounting firm will be asked to determine which approach

17     applies under the "as initially requested in the IRS

18     submissions" that are 2.04(e).  Then it would go to the next

19     issue about the method required by the code and regulations,

20     and that is what we will put in the detailed directions to

21     the accounting firm.

22          THE COURT:  Is that okay, Mr. Galardi?

23          MR. GALARDI:  That's fine, Your Honor.  We had

24     talked about it in the order, but I think we get the order

25     in and with that on the record we're fine.

1           THE COURT:  Okay.

2           MR. THOMAS:  With that may I approach?

3           THE COURT:  Yes, you may.

4           MR. THOMAS:  Thank you, Your Honor.

5           THE COURT:  You're welcome.

6           MR. THOMAS:  There's a blank date in the order.

7           THE COURT:  Yeah, let's figure that out.

8      (Pause)

9           THE COURT:  Okay.  Let me look at my calendar.

10      (Pause)

11           THE COURT:  I'm going to be a little slow here, we

12   have a new calendaring system at the court, so I'm a bit

13   challenged in knowing how to operate it.

14      (Pause)

15           THE COURT:  Okay.  It looks wide open.  So can I

16   propose -- the accounting firm is supposed to make its

17   decision by December 8th?

18           MR. THOMAS:  Yes, Your Honor.

19           THE COURT:  Approximately?

20           MR. THOMAS:  Yes.

21           THE COURT:  All right.  So how about we have a

22   hearing on January 8th at 10 a.m.?

23           MR. THOMAS:  That's fine, Your Honor.

24           THE COURT:  Is that acceptable?

25           UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

1           MR. THOMAS:  Thank you, Your Honor.

2           THE COURT:  Let me write that in.  That's a

3    Monday.

4           Okay.  Any anything else?

5           MR. THOMAS:  Nothing else.  Thank you very much,

6    Your Honor.

7           THE COURT:  All right.  You're welcome.  We're

8    adjourned.

9        (A chorus of thank you)

10       (Whereupon these proceedings were concluded at 12:20

11   PM)

12                          *  *  *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 45

1                             I N D E X

2

3                              RULINGS

4    DESCRIPTION                                              PAGE

5    Energy Future Holdings Corp.'s Motion for a Temporary

6    Restraining Order and Preliminary Injunction (Filed:

7    10/10/2017; Adv. D.I. 10) [filed under seal]             38

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 46

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5    Dawn South  Digitally signed by Dawn South
                 DN: cn=Dawn South, o, ou,
6    _____
                 email=digital1@veritext.com, c=US
                 Date: 2017.10.16 16:02:03 -04'00'

7    Dawn South

8    Certified Electronic Transcriber

9

10

11

12

     Date:  October 16, 2017

13

14

15

16

17

18

19

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501