**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>**Objections Due: November 7, 2017 at 4:00 pm (EST)** |

### SUMMARY COVER SHEET TO THE SEVENTH INTERIM FEE APPLICATION OF JENNER & BLOCK LLP, INDEPENDENT COUNSEL FOR ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, FOR THE PERIOD MAY 1, 2017 THROUGH AUGUST 31, 2017

Jenner & Block LLP ("**Jenner**"), independent counsel to Energy Future Intermediate Holding Company LLC, debtor and debtor in possession ("**EFIH**"), submits this Summary of fees and expenses sought in the fee application for the period from May 1, 2017 through August 31, 2017 (the "**Fee Period**") to which this Summary is attached (the "**Fee Application**").[2]

Jenner submits the Fee Application as an interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 2066] (the "**Interim Compensation Order**") and the *Stipulation and Order Appointing a Fee Committee* [Docket No. 1896] (the "**Fee Committee Order**").

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined in this Summary have the meanings ascribed to them in the Fee Application.

2612201.2

| General Information | |
|---|---|
| Name of Applicant: | Jenner & Block LLP |
| Authorized to Provide Services to: | Energy Future Intermediate Holding Company LLC, Debtor and Debtor in Possession |
| Petition Date: | April 29, 2014 |
| Date of Order Authorizing EFIH to Employ Jenner [Docket No. 3321]: | July 8, 2015, *nunc pro tunc* to May 18, 2015 |

| Summary of Fees and Expenses Sought in the Fee Application | |
|---|---|
| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | May 1, 2017 through August 31, 2017 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period: | $430,151.25 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $3,172.83 |
| Total Compensation and Expense Reimbursement Requested for the Fee Period: | $433,324.08 |

| Rate Increases Applicable to the Fee Period | |
|---|---|
| Total Amount of Compensation Sought for the Fee Period, Calculated Using Rates as of the Date of Employment:[3] | $389,773.50 |

---

[3] Current rates are used for professionals not employed by the firm as of the date of employment.

2612201.2

**Summary of Past Requests for Compensation and Prior Payments**

| | |
|---|---|
| Total Amount of Compensation Previously Requested Under the Interim Compensation Order to Date: | $1,719,211.00 |
| Total Amount of Expense Reimbursement Previously Requested Under the Interim Compensation Order to Date: | $28,977.34 |
| Total Compensation Approved Under the Interim Compensation Order to Date: | $1,661,511.00[4] |
| Total Amount of Expense Reimbursement Approved Under the Interim Compensation Order to Date: | $26,986.04[3] |
| Total Allowed Compensation Paid to Date: | $1,231,359.75 |
| Total Allowed Expenses Paid to Date: | $23,813.21 |
| Compensation Sought in this Application Already Paid Under the Interim Compensation Order But Not Yet Allowed: | $67,752.00 |
| Expenses Sought In This Application Already Paid Under the Interim Compensation Order But Not Yet Allowed: | $137.58 |

DATED: October 17, 2017

/s/ Richard Levin
Richard Levin (rlevin@Jenner.com)

**JENNER & BLOCK LLP**
919 Third Avenue
New York, NY 10022
+1 (212) 891-1600

*Independent Counsel for Energy Future*
*Intermediate Holding Company LLC*

---

[4]Includes monthly interim fees and expenses for July and August 2017, which as of the date of this Application have not yet been submitted and/or paid.

4

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>**Objections Due: November 7, 2017 at 4:00 pm (EST)** |

**SEVENTH INTERIM FEE APPLICATION**
**OF JENNER & BLOCK LLP, INDEPENDENT COUNSEL FOR**
**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC,**
**FOR THE PERIOD MAY 1, 2017 THROUGH AUGUST 31, 2017**

Jenner & Block LLP ("**Jenner**"), independent counsel to debtor and debtor in possession Energy Future Intermediate Holding Company LLC ("**EFIH**"), submits this Seventh Interim Fee Application for allowance of compensation for professional services provided in the amount of $430,151.25 and reimbursement of actual and necessary expenses in the amount of $3,172.83 that Jenner incurred for the period May 1, 2017 through August 31, 2017 (the "**Fee Period**"). In support of this Fee Application, Jenner submits the Declaration of Richard Levin, a partner in Jenner, which is attached as **Exhibit A** and incorporated by this reference. In further support of this Fee Application, Jenner respectfully states as follows:

### I.    Jurisdiction

1.    This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This Fee Application is a core proceeding under 28 U.S.C. § 157(b)(2).

2.    Venue is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

3.      The bases for the relief requested in this Fee Application are sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2016-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**"), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 2066] (the "**Interim Compensation Order**"), and the *Stipulation and Order Appointing a Fee Committee* [Docket No. 1896] (the "**Fee Committee Order**").

## II.      Background

4.      On April 29, 2014 (the "**Petition Date**"), EFIH commenced its chapter 11 case by filing a voluntary petition in this Court under chapter 11 of the Bankruptcy Code.

5.      The Debtor continues to operate its business and manage its property as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

6.      On May 13, 2014, the Office of the United States Trustee, Region 3 formed and appointed an Official Committee of Unsecured Creditors under section 1102(a)(1) of the Bankruptcy Code. [ECF 420.] On October 27, 2014, the Office of the United States Trustee, Region 3 formed and appointed another Official Committee of Unsecured Creditors under section 1102(a)(1) of the Bankruptcy Code. [ECF 2570.]

7.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in all of the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

8.      On August 21, 2014, the Court entered the Fee Committee Order, appointing a fee committee (the "**Fee Committee**") to review and report, as appropriate, on interim and final fee

2

applications filed by the Debtors' retained professionals in accordance with sections 328, 330, and 331 of the Bankruptcy Code and the Interim Compensation Order and establishing the procedures governing the Fee Committee's review of the Debtors' retained professionals applications for compensation and the resolution of any concerns raised during such review. The Fee Committee distributed an initial memorandum dated October 3, 2014 regarding guidelines for expense reimbursements to those professionals retained in the Chapter 11 Cases. Jenner believes that the relief requested in this Fee Application complies with the guidelines.

### III.    Jenner's Employment, Disinterestedness, and Fee Request

9.    On July 8, 2015, the Court entered the *Order Approving The Employment of Jenner & Block LLP As Counsel To Energy Future Intermediate Holding Company LLC Effective* Nunc Pro Tunc to May 18, 2015 [Docket No. 4945] (the "**Employment Order**"), attached as **Exhibit B**. The Employment Order authorizes EFIH to compensate Jenner at Jenner's hourly rates charged for services of this type and to reimburse Jenner for Jenner's actual and necessary out-of-pocket expenses incurred, subject to application to this Court in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Interim Compensation Order, and the Fee Committee Order. The terms of Jenner's engagement are detailed in the engagement letter by and between Jenner and EFIH, effective as of May 18, 2015, and attached as **Exhibit C** (the "**Engagement Letter**").

10.    To the best of the Jenner's knowledge and as disclosed in the *Declaration Of Richard Levin In Support Of Application For Order Approving The Employment Of Jenner & Block LLP As Counsel To Energy Future Intermediate Holding Company LLC Under Sections 327(a) And 1107(b) Of The Bankruptcy Code, Effective* Nunc Pro Tunc *To May 18, 2015* [Docket No. 4792, Ex. E] (the "**Levin Declaration**"), the *Supplemental Declaration Of Richard Levin In Support Of Application For Order Approving The Employment Of Jenner & Block LLP*

3

*As Counsel To Energy Future Intermediate Holding Company LLC Under Sections 327(a) And 1107(b) Of The Bankruptcy Code, Effective* Nunc Pro Tunc *To May 18, 2015* [Docket No. 4901] (the "**First Supplemental Levin Declaration**"), the *Second Supplemental Declaration of Richard Levin Relating to Application for Order Approving the Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC* [Docket No. 5169] (the "**Second Supplemental Levin Declaration**"), the *Third Supplemental Declaration of Richard Levin Relating to Application for Order Approving the Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC* [Docket No. 5585] (the "**Third Supplemental Levin Declaration**"), the *Fourth Supplemental Declaration of Richard Levin Relating to Application for Order Approving the Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC* [Docket No. 7122] (the "**Fourth Supplemental Levin Declaration**"), the *Fifth Supplemental Declaration of Richard Levin Relating to Application for Order Approving the Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC* [Docket No. 8437] (the "**Fifth Supplemental Levin Declaration**"), the *Sixth Supplemental Declaration of Richard Levin Relating to Application for Order Approving the Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC* [Docket No. 9636] (the "**Sixth Supplemental Levin Declaration**"), the *Seventh Supplemental Declaration of Richard Levin Relating to Application for Order Approving the Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC* [Docket No. 10823] (the "**Seventh Supplemental Levin Declaration**"), and the *Eighth Supplemental Declaration of Richard Levin Relating to Application for Order Approving the Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC* [Docket No.11350] (the "**Eighth**

4

**Supplemental Levin Declaration**" and together with the Levin Declaration, First Supplemental Levin Declaration, Second Supplemental Levin Declaration, Third Supplemental Levin Declaration, Fourth Supplemental Levin Declaration, Fifth Supplemental Levin Declaration, Sixth Supplemental Levin Declaration and Seventh Supplemental Levin Declaration, the "**Levin Declarations**"), Jenner is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code, and does not hold or represent an interest adverse to the EFIH's estate, as required by section 328(a) of the Bankruptcy Code, and except as otherwise specified in the Levin Declarations Jenner's partners, associates and special attorneys do not hold or represent any interest adverse to EFIH or its estate.

11.    Jenner might have in the past represented, might currently represent, and likely in the future will represent parties in interest in this case in connection with matters unrelated to EFIH or its chapter 11 case. In the Levin Declarations, Jenner disclosed its connections to parties in interest in the EFIH case that it has been able to ascertain using its reasonable efforts. Jenner will update such disclosures, as appropriate, if Jenner becomes aware of relevant and material new information.

12.    Jenner performed the services for which it is seeking compensation on behalf of EFIH and its estate and not on behalf of any committee, creditor, or other entity.

13.    Commencing with July 2015 and through August 2017, except as otherwise noted, Jenner submitted monthly budgets to EFIH, all of which EFIH approved as submitted.

14.    Copies of the monthly budgets for the Fee Period are attached to this Application as **Exhibit J**.  The following table shows Jenner's actual incurred fees compared to the budgeted fees for the Fee Period:

5

2612201.2

|  | May | June | July | August | Total |
|---|---|---|---|---|---|
| **Budget** | $61,050.00 | $74,825.00 | $45,925.00 | $42,300.00 | **$224,100.00** |
| **Actual** | $35,047.50 | $49,642.50 | $110,399.75 | $235,061.50 | **$430,151.25** |
| **Difference** | $26,002.50 | $25,182.50 | -$64,474.75 | -$192,761.50 | **-$206,051.25** |
| **% Budget** | **57%** | **66%** | **240%** | **556%** | **192%** |

A more detailed comparison is shown in **Exhibit K**.

15.    Jenner did not discuss the reason for the 92% variation with EFIH.  The principal reasons for the variation related to the difficulty in estimating the amount and timing of work that might need to be performed on behalf of EFIH during July and August 2017 in connection with pursuit of an amended plan of reorganization for EFIH, including significant litigation that could not be predicted at the time the budgets were prepared.

16.    Jenner seeks interim compensation for professional services provided to the Debtors during the Fee Period in the amount of $430,151.25 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $3,172.83   During the Fee Period, Jenner attorneys and paraprofessionals worked 411.7 hours for which compensation is requested.

17.    Jenner has submitted monthly fee statements and been paid on some of them.  The following table shows amounts submitted and paid:

| Invoice Period | Amount Billed | Fees Billed | Fees at 80% | Exps Billed | Pmts Rec'd |
|---|---|---|---|---|---|
| May-17 | $35,047.50 | $35,047.50 | $28,038.00 | $88.02 | $28,126.02 |
| Jun-17 | $49,642.50 | $49,642.50 | $39,714.00 | $49.56 | $39,763.56 |
| Jul-17 | $110,399.75 | $110,399.75 | $88,319.80 | $1,638.37 | $0.00 |
| Aug-17 | $235,061.50 | $235,061.50 | $188,049.20 | $1,396.88 | $0.00 |
| **Total** | **$430,151.25** | **$430,151.25** | **$344,121.00** | **$3,172.83** | **$69,527.95** |

10/17/2017 SL1 1489167v1 109285.00005

2612201.2

18.    None of Jenner's fees or expenses sought in this Fee Application have been previously approved by the Court. Jenner's First Interim Fee Application was filed on October 22, 2015 [ECF 6567]; the hearing on Jenner's First Interim Application was held on February 18, 2016, following which the Court entered its order allowing fees in the amount of $424,647.50 and reimbursement of $5,446.69 in expenses [ECF 7883]. Jenner's Second Interim Fee Application was filed on February 16, 2016 [ECF 7881]; the hearing on Jenner's Second Interim Application was held on June 27, 2016, following which the Court entered its order allowing fees in the amount of $281,802.50 and reimbursement of $10,157.44 in expenses [ECF 8824]. Jenner's Third Interim Fee Application was filed on June 15, 2016 [ECF 8735]; the hearing on Jenner's Third Interim Application was held on October 27, 2016, following which the Court entered its order allowing fees in the amount of $237,948.75 and reimbursement of $3,635.99 in expenses [ECF 9963]. Jenner's Fourth Interim Fee Application was filed on October 17, 2016 [ECF 9824]; the hearing on Jenner's Fourth Interim Application was held on March 28, 2017, following which the Court entered its order allowing fees in the amount of $178,442.25 and reimbursement of $3,411.59 in expenses [ECF 11071]. Jenner's Fifth Interim Fee Application was filed on February 16, 2017 [ECF 10843]; the hearing on Jenner's Fifth Interim Application was held on July 10, 2017, following which the Court entered its order allowing fees in the amount of $108,518.73 and reimbursement of $1,141.50 in expenses [ECF 11437]. Jenner's Sixth Interim Fee Application was filed on June 15, 2017 [ECF 11354]; the hearing on Jenner's Sixth Interim Application has not yet been scheduled. The fees and expenses requested in this Fee Application are shown in the prior paragraph.

19.     Jenner has not received payment or promise of payment from any source other than EFIH for services provided or to be provided in any capacity whatsoever in connection with the EFIH case.

20.     Jenner does not share fees with any attorneys except to the extent permitted by section 504 of the Bankruptcy Code.

21.     By this Fee Application, and to the extent not already paid by the time of the hearing on this Fee Application, Jenner seeks approval and payment of all amounts, including the remaining 20% holdback on fees incurred during the Fee Period and any prior periods, for which it has sought compensation.

## IV.      Fees and Expenses Incurred During Fee Period

### A.      Customary Billing Disclosures

22.     Jenner's hourly rates are set at a level designed to compensate Jenner fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. The hourly rates and corresponding rate structure utilized by Jenner in this cases are equivalent to the hourly rates and corresponding rate structure used by Jenner for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required. The rates and rate structure reflect that such complex matters typically are national in scope and typically involve great complexity, high stakes, and intense time pressures.

23.     **Exhibit D** to this Fee Application is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to EFIH during the Fee Period, as required by the "Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 for Attorneys in

2

Larger Chapter 11 Cases" promulgated by the Executive Office of the United States Trustee, as applied to this case by the Interim Compensation Order.

**B.    Fees Incurred During Fee Period**

24.    In the ordinary course of Jenner's practice, Jenner maintains records of the time spent on the professional services required by EFIH and its estate. **Exhibit E** to this Fee Application is a summary of fees incurred and hours worked during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time worked and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each such attorney and paraprofessional at Jenner's current billing rates; and

- a calculation of the total compensation requested by Jenner.

**C.    Expenses Incurred During Fee Period**

25.    In the ordinary course of Jenner's practice, Jenner maintains a record of expenses incurred in rendering professional services required by EFIH and its estate and for which reimbursement is sought. **Exhibit F** to this Fee Application is a summary for the Fee Period of the total amount of expenses for which Jenner seeks reimbursement with respect to each category of expenses. The out-of-pocket disbursement sum is broken down into categories of charges.

## V.    Proposed Payment Allocation

26.    In accordance with paragraph 2(b) of the Interim Compensation Order, all of the fees and expenses that Jenner seeks in this Fee Application are allocated to EFIH.

3

## VI.        Summary of Legal Services Provided During the Fee Period

27.        During the Fee Period, Jenner provided important professional services to EFIH in connection with EFIH's restructuring efforts, related litigation and other matters.   Jenner's services largely related to negotiations and litigation concerning alternative plan options after the Public Utility Commission of Texas ("**PUCT**") ruled that the NextEra Energy transaction contemplated by the Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al. Pursuant to Chapter 11 of the Bankruptcy Code dated February 17, 2017 ("**Eighth Plan**") was not in the public interest.  Jenner's efforts on behalf of EFIH have been essential to the progress made to date in these cases.

28.        Jenner has established, in accordance with its internal billing procedures, ten subject matters categories (each, a "**Matter Category**") for keeping time records for the work performed for EFIH.   A schedule setting forth a description of each Matter Category utilized in this case, the number of hours worked by Jenner attorneys and paraprofessionals for each Matter Category, and the aggregate fees associated with each Matter Category is attached as **Exhibit G**. In addition, subject to redaction for attorney-client privilege, work product doctrine, and confidentiality where necessary to protect EFIH and its estate, Jenner's records of time worked providing professional services to EFIH and its estate are attached hereto as **Exhibit H**, and Jenner's records of expenses incurred during the Fee Period in the rendition of professional services to EFIH and its estate are attached as **Exhibit I**.

29.        The following is a summary, by Matter Category, of the professional services provided by Jenner during the Fee Period. This summary is organized in accordance with Jenner's internal system of matter numbers.

### 1.        Chapter 11 General and Administrative (Matter No. 1)

Fees: $ 0.00     Total Hours: 0.0

4

30.     Jenner did not perform any services during the Fee Period related solely to Chapter 11 and Administrative matters.

**2.      Governance (Matter No. 2)**

Fees: $0.00      Total Hours: 0.00

31.     Jenner did not perform any services during the Fee Period related solely to governance matters.

**3.      Plan and Disclosure Statement (Matter No. 3)**

Fees: $405,970.00      Total Hours: 380.3

32.     During the Fee Period, Jenner's services largely related to negotiations and litigation concerning EFIH's options after the PUCT ruled that the NextEra Energy transaction contemplated by the Eighth Plan was not in the public interest.

33.     On behalf of EFIH with respect to Conflict Matters, and in coordination with Kirkland, Jenner participated in discovery concerning the selection of Berkshire Hathaway Energy Company ("**Berkshire**") as the stalking horse bidder for EFIH's assets and the submission of an amended plan incorporated the terms of the proposed merger agreement with Berkshire; responded to discovery requests directed at the EFIH Disinterested Manager and his advisors; prepared for and defended the EFIH Disinterested Manager's deposition; participated in the depositions of other key witnesses; prepared for and attended hearings addressing the objections of Elliot Associates, L.P. and certain affiliates (collectively, "**Elliott**") to the Debtors' selection of Berkshire as the stalking horse bidder and approval of the Berkshire merger agreement; and attended meetings and hearings on scheduling and discovery matters, many by telephone.

34.     On behalf of EFIH with respect to Conflict Matters, and in coordination with Kirkland and Cravath, Jenner evaluated and commented on plan amendments, evaluated EFIH's

5

options and advised EFIH's Disinterested Manager concerning allocation disputes with EFH that appear to be Conflict Matters, and advised the EFIH Disinterested Manager concerning the offer received by the Debtors from Sempra Energy.

35.     Jenner also participated in board meetings, engaged in discussions with other Conflicts Matter counsel, and provided advice on numerous matters related to EFIH's efforts to emerge from bankruptcy.  It remained in frequent communication, by email, by telephone, and in person, with Kirkland and the other Conflict Matters counsel regarding sale and plan developments.

36.     Jenner made recommendations to EFIH's Disinterested Manager regarding plan terms and the positions that were being taken by parties both supporting and opposing various proposed plan provisions.  In coordination with Cravath, Jenner also reviewed certain of the key operative agreements, including the Berkshire merger agreement, the Sempra merger agreement and related documents, and provided advice to EFIH's Disinterested Manager concerning those agreements.

37.     After the Debtors determined that Sempra's offer was superior to that of Berkshire, Jenner participated in a series of board meetings, engaged in discussions with other Conflicts Matter counsel, and provided advice to the EFIH Disinterested Manager concerning EFIH's options and Conflicts Matters, including cost allocation issues. That work is ongoing.

### 4.     Intercompany Claims (Matter No. 4)

Fees: $0.00     Total Hours: 0.00

38.     Jenner did not perform any services during the Fee Period related solely to Intercompany Claims.

### 5.     Tax Issues (Matter No. 5)

Fees: $0.00     Total Hours: 0.0

39.     Jenner did not perform any services during the Fee Period related solely to Tax Issues matter.

**6.      Oncor Sale Process (Matter No. 6)**

Fees: $0.00    Total Hours: 0.00

40.     Jenner did not perform any services during the Fee Period related solely to the Oncor Sale Process matter.

**7.      Financing (Matter No. 7)**

Fees: $0.00    Total Hours: 0.00

41.     Jenner did not perform any services during the Fee Period related solely to the Financing matter.

**8.      Employment and Fee Applications (Matter No. 8)**

Fees: $13,230.00    Total Hours: 12.6

42.     During the Fee Period, Jenner prepared and filed its Sixth Interim Application for Compensation and Reimbursement, Cravath's Eighth Interim Application for Compensation and Reimbursement, and monthly fee statements with this Court.

43.     Jenner also prepared and submitted to its client and to the Fee Review Committee, combined monthly budget and staffing plans for itself and its co-counsel Cravath, all of which were approved.

**9.      Non-Working Travel (Matter No. 9)**

Fees: $10,951.25    Total Hours: 18.8

44.     During the Fee Period, Jenner attorneys traveled to and from New York and Delaware for hearings in this case, and to and from Chicago for negotiations.  The fees in this Matter Category are billed at 50% of regular hourly rates.

10.    **Claims Litigation (Matter No. 10)**

Fees: $0.00    Total Hours: 0.00

45.    Jenner did not perform any services during the Fee Period related solely to claims

Litigation matter.

### VII.    Actual and Necessary Expenses Incurred by Jenner

46.    As summarized in Exhibit F and as set forth in Exhibit I, Jenner has incurred a

total of $3,172.08 in expenses on behalf of EFIH during the Fee Period. These charges are

intended to reimburse Jenner's direct costs that are not included in Jenner's hourly billing rates.

Only clients who actually use services of the types set forth in Exhibit I of this Fee Application

are separately charged for such services.

### VIII.    Jenner's Requested Compensation and Reimbursement Should be Allowed

47.    As explained below, Jenner submits that the services for which it seeks

compensation in this Fee Application were, at the time provided, necessary for and beneficial to

the EFIH and its estate and were provided to protect and preserve the EFIH estate. Jenner further

believes that it performed the services for EFIH economically, effectively, and efficiently, and

they benefited EFIH and its constituents. Jenner further submits that the compensation requested

is reasonable in light of the nature, extent, and value of such services to EFIH and its estate and

all parties in interest. Accordingly, Jenner submits the compensation sought in this Fee

Application is warranted and should be approved.

### A.    Reasonable and Necessary Fees Incurred in Providing Services to the Debtors

48.    Section 331 of the Bankruptcy Code authorizes interim compensation of

professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code

to govern the Court's award of interim compensation. Section 330(a)(1) of the Bankruptcy Code

8

provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered … and reimbursement for actual, necessary expenses." Section 330(a)(3) sets forth the criteria for such an award:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)  the time spent on such services;
>
> (B)  the rates charged for such services;
>
> (C)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

49.     As analyzed below, Jenner submits the elements governing awards of compensation justify the allowance requested.

### 1.     The Time and Labor Required

50.     During the Fee Period, Jenner's partners, associates, and paraprofessionals spent 411.7 hours in providing professional services for EFIH. Jenner coordinated its efforts with Kirkland and Cravath to prevent duplication of efforts and thereby not spend more time than required. Jenner required this amount of time to research and analyze the numerous, complex issues in the Chapter 11 Cases, to advise its client with respect to the issues, to participate in

9

2612201.2

negotiations with other parties in interest in these Chapter 11 Case, and to perform the other tasks described above.

### 2.    The Rates Charged for Such Services

51.    During the Fee Period, Jenner's hourly billing rates ranged from $635.00 to $1,250.00 per hour for partners, from $445.00 to $795.00 for regular associates, from $305.00 to $365.00 for paraprofessionals, and from $205.00 to $215.00 for project assistants.  Based on the recorded hours expended by Jenner's attorneys and paraprofessionals, the average hourly billing rate for Jenner's services (after taking into account discounted travel time) was $1,044.81.

52.    Jenner's hourly rates are set at a level designed to compensate Jenner fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

53.    The hourly rates and corresponding rate structure that Jenner charges in this case are equivalent to or less than the hourly rates and corresponding rate structure that Jenner charges for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required.

### 3.    The Necessity of the Services and the Benefit to the Estate

54.    The services Jenner provided to EFIH have conferred substantial benefit on EFIH's estate and are necessary because EFIH needs independent counsel to advise and represent it on Conflict Matters. Without independent counsel, EFIH would likely be unable to protect its interests as against the other Debtors in the Chapter 11 Cases.

10

2612201.2

4. **The Reasonableness of the Time Spent, Based on the Complexity, Importance, Nature of the Issues**

55.    Jenner performed the services in a reasonable amount of time, given the complexity of the issues involved and the various intercompany legal issues facing EFIH. Jenner's detailed time records show that the time spent on each of the matters was necessary and appropriate to advising and representing EFIH on conflict matters.

5. **The Experience, Reputation, and Ability of the Attorneys Providing Services**

56.    Jenner attorneys have achieved a high degree of expertise and positive reputations in their respective fields. Jenner's Restructuring and Litigation departments frequently receive recognition for their skill and achievements, and Jenner is frequently cited as one of the leading U.S. law firms in these fields.

6. **Customary Compensation**

57.    Jenner relies on the Court's experience and knowledge with respect to the compensation awards in similar cases as well as for other counsel in these Chapter 11 Cases. In addition, as noted above, the compensation Jenner seeks in this Fee Application is comparable to the compensation it would have sought for comparable work outside of a chapter 11 case.

58.    Jenner submits that the compensation requested is reasonable under all the factors considered under sections 330 and 331 of the Bankruptcy Code and that the factors justify the allowance in full of Jenner's compensation and reimbursement request.

B. **Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors**

59.    For the Fee Period, Jenner requests reimbursement of $3,172.83 for reasonable and necessary costs and expenses incurred on behalf of EFIH.

60.     Jenner's normal billing rates do not take these costs and expenses into consideration. Rather, Jenner bills each cost and expense to the applicable client. Because of the disparity between the different clients' requirements for expenses such as travel, computer-assisted research, teleconference services, postage, courier and messenger services, and photocopying, it is difficult to charge costs and expenses fairly and equitably by including them in Jenner's ordinary billing rates. Accordingly, Jenner generally charges each client for such costs and expenses separately, in each case, at Jenner's costs.

61.     Jenner does not include the amortization of the cost of any investment, equipment, or capital outlay in its charges for these services.

62.     Under Rule 2016-2 of the Local Bankruptcy Rules, Jenner represents that its rate for duplication for black-and-white copies is $0.10 per page and for color copies is $0.50 per page, there is no charge for telecopier transmissions, and there is no surcharge for computer-assisted research.

63.     Any services billed by a third-party vendor, with the exception of certain computer-assisted research charges, are charged to EFIH in the amount billed to and paid by Jenner. Like many large law firms, Jenner has negotiated a special arrangement with computerized research companies under which Jenner pays a flat rate monthly fee for computerized research services. Consistent with its general policy of billing out-of-pocket expenses only to clients for which the use of such services is required, Jenner separately charges each client for computer-assisted research. To account for such charges while passing through Jenner's cost savings resulting from its special arrangements, Jenner charges those clients for which such services are required at a reduced rate that is less than the rate charged by the

computerized research companies to the general public for such services. These charges are intended to cover Jenner's direct costs for computerized research.

64.     Jenner has made reasonable efforts to minimize its costs and expenses in the Chapter 11 Cases. Each of the costs and expenses Jenner has incurred in providing professional services to EFIH was necessary, reasonable, and justified under the circumstances to serve the needs of EFIH and its estate.

**IX.     Statement by Jenner Under ¶ C(5) of the U.S. Trustee Guidelines**

65.     Jenner did not agree to any variations from, or alternatives to, its standard or customary billing rates, fees or terms for services pertaining to the engagement that were provided during the Fee Period, except as required by the U.S. Trustee Guidelines and the Fee Committee guidelines.

66.     Jenner did not discuss with EFIH the reasons for the variation between its budget and actual fees for the Fee Period.  The principal reasons for the variation related to the difficulty in estimating the amount and timing of work that might need to be performed on behalf of EFIH during July and August 2017 in connection with pursuit of an amended plan of reorganization for EFIH, including significant litigation that could not be predicted at the time the budgets were prepared.

67.     None of the professionals included in this Application varied their hourly rate based on the geographic location of the Chapter 11 Cases.

68.     The Application does not include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices.

69.     The Application does not include time or fees for reviewing time records to redact any privileged or other confidential information.

13

2612201.2

70.    The rates charged by Jenner for certain of its attorneys in 2017 were increased effective as of the beginning of the 2017.  The monthly fee statements submitted to EFIH and the Fee Committee take into account those rate increases.  Jenner's engagement letter with EFIH provides that Jenner's scheduled hourly rates are periodically adjusted, generally at the beginning of a calendar year.

## X.    Reservation of Rights and Notice

71.    It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Fee Application. Jenner reserves the right to include such amounts in future fee applications. EFIH has provided notice of this Fee Application to: (a) the U.S. Trustee; (b) counsel to the agent of the EFIH First Lien DIP Facility; (c) counsel to the agent of the TCEH DIP Facility; (d) counsel to the Creditors' Committees; and (e) the Fee Committee (collectively, the "**Notice Parties**").

72.    Under the Interim Compensation Order and the Fee Committee Order, (a) any Notice Party (other than the Fee Committee) who wishes to object to the Fee Application must file its objection with the Court, with a copy to Chambers, and serve it on Jenner and the Notice Parties so that it is actually received on or before November 7, 2017 at 4:00 p.m. (Eastern Time) and (b) any member of the Fee Committee that wishes to object to the Fee Application must comply with the procedures set forth in the Fee Committee Order and if such member wishes to object to the Fee Application after complying with such procedures, such member must file its objection with the Court, with a copy to Chambers, and serve it on Jenner and the Notice Parties, within the time specified under the Fee Committee Order.

## XI.    No Prior Request

73.    No prior application for the relief requested by this Fee Application has been made to this or any other court.

14

**WHEREFORE**, Jenner respectfully requests that the Court enter an order (a) awarding Jenner interim compensation for professional and paraprofessional services provided during the Fee Period in the amount of $430,151.25, and reimbursement of actual, reasonable and necessary expenses incurred in the Fee Period in the amount of $3,172.83; (b) authorizing and directing EFIH to remit payment to Jenner for such fees and expenses; (c) authorizing and directing the payment of any amounts previously approved by the Court as to which payment has been withheld; and (d) granting such other relief as is appropriate under the circumstances.

DATED: October 17, 2017

/s/ Richard Levin
Richard Levin (rlevin@Jenner.com)

JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
+1 (212) 891-1600

*Independent Counsel for Energy Future Intermediate Holding Company LLC*

2612201.2