## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline: November 8, 2017 at 4:00 p.m.** |

## SUMMARY COVER SHEET TO THE
## TENTH INTERIM FEE APPLICATION
## OF KIRKLAND & ELLIS LLP AND KIRKLAND
## & ELLIS INTERNATIONAL LLP, ATTORNEYS FOR THE
## DEBTORS AND DEBTORS IN POSSESSION, FOR THE PERIOD
## FROM MAY 1, 2017 THROUGH AND INCLUDING AUGUST 31, 2017

In accordance with the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland"), attorneys for the above-captioned debtors and debtors in possession (collectively, the "Debtors"), submit this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the tenth interim fee application to which this Summary is attached (the "Fee Application")[2] for the period from May 1, 2017 through and including August 31, 2017 (the "Fee Period").[3] Kirkland submits the Fee Application as an interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order") and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896].

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]  Capitalized terms used but not otherwise defined in this Summary shall have the meanings ascribed to such terms in the Fee Application.

[3]  Texas Competitive Electric Holdings Company LLC ("TCEH" and, together with its direct parent company, Energy Future Competitive Holdings Company LLC ("EFCH") and certain of TCEH's direct and indirect subsidiaries, the "TCEH Debtors") and certain EFH Debtors (defined in the Plan as the EFH Shared Services Debtors) emerged from bankruptcy on October 3, 2016 (the "TCEH Effective Date"), and are no longer debtors in possession.

| **General Information** | |
| --- | --- |
| Name of Applicants: | Kirkland & Ellis LLP and Kirkland & Ellis International LLP |
| Authorized to Provide Services to: | Energy Future Holdings Corp., *et al.* |
| Petition Date: | April 29, 2014 |
| Date of Order Authorizing the Debtors to Retain Kirkland: | September 16, 2014, *nunc pro tunc* to April 29, 2014 [D.I. 2052] |

| **Summary of Fees and Expenses Sought in the Fee Application**[4] | |
| --- | --- |
| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | May 1, 2017 through and including August 31, 2017 |
| Voluntary Fee Waiver and Expense Reduction in this Fee Period: [5] | Reduced fees by $330,227.00 and expenses by $31,491.05 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period: | $10,208,548.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $251,875.14 |

---

[4]    Of the amount of fees and expenses sought in the Fee Application, as of the date hereof, $2,041,709.60 represents the amount for which Kirkland has not sought compensation in the monthly fee statements it has filed for the following periods:  May 1, 2017 to May 31, 2017 [D.I. 11402] (the "<u>May Monthly Fee Statement</u>"), June 1, 2017 to June 30, 2017 [D.I. 11717] (the "<u>June Monthly Fee Statement</u>"), July 1, 2017 to July 31, 2017 [D.I. 11915] (the "<u>July Monthly Fee Statement</u>"), and August 1, 2017 to August 31, 2017 [D.I. 12024] (the "<u>August Monthly Fee Statement</u>" and, collectively with the other above-referenced fee statements, the "<u>Monthly Fee Statements</u>").  The total fees and expenses sought in the Fee Application include (a) fees for work performed and expenses incurred for a specific Debtor's estate totaling $801,693.30 (comprised of $797,887.00 in fees and $3,806.30 in expenses) (the "<u>Direct Benefit Fees</u>") and (b) fees for work performed and expenses incurred for all Debtors' estates totaling $9,658,729.84 (comprised of $9,410,661.00 in fees and $248,068.84 in expenses) (the "<u>Collective Benefit Fees</u>").  Specifically, the Direct Benefit Fees include fees and expenses of (a) $24,229.40 for the EFH Corp. Debtors and (b) $777,463.90 for the EFIH Debtors.  The Collective Benefit Fees include fees and expenses of (a) $2,034,018.58 for the EFH Corp. Debtors and (b) $7,624,711.26 for the EFIH Debtors.

[5]    Kirkland voluntarily reduced its fees and expenses by the amounts described above and consequently does not seek payment of these fees and expenses in this Fee Application.

| | |
|---|---|
| Total Compensation and Expense Reimbursement Requested for the Fee Period: | $10,460,423.14 |

**Rate Increases Applicable to the Fee Period**

| | |
|---|---|
| Total Amount of Compensation Sought for the Fee Period, Calculated Using Rates as of the Date of Retention: | $7,946,814.00 |

**Summary of Past Requests for Compensation and Prior Payments[6]**

| | |
|---|---|
| Total Amount of Compensation Previously Requested Pursuant to the Interim Compensation Order to Date:[7] | $172,372,445.00 |
| Total Amount of Expense Reimbursement Previously Requested Pursuant to the Interim Compensation Order to Date: | $11,172,820.38 |
| Total Compensation Approved Pursuant to the Interim Compensation Order to Date: | $151,730,141.85 |
| Total Amount of Expense Reimbursement Approved Pursuant to the Interim Compensation Order to Date: | $9,848,714.72 |
| Total Allowed Compensation Paid to Date: | $150,767,730.28 |
| Total Allowed Expenses Paid to Date: | $9,848,714.72 |
| Compensation Sought in this Fee Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $5,049,046.00 |

---

[6]    Kirkland filed the Amended May Monthly Fee Statement on June 30, 2017 [D.I. 11402], the June Monthly Fee Statement on August 10, 2017 [D.I. 11717], the July Monthly Fee Statement on September 15, 2017 [D.I. 11915], and the August Monthly Fee Statement on October 11, 2017 [D.I. 12024]. As of the date hereof, Kirkland has received payments totaling $2,882,249.75 relating to compensation and expenses sought in the Monthly Fee Statements.

[7]    Kirkland filed the *Ninth Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from January 1, 2017 Through and Including April 30, 2017* on June 14, 2017 [D.I. 11349], with respect to which Kirkland and the Fee Committee are currently in negotiations. On October 13, 2017, the Bankruptcy Court entered the *Order Awarding Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses* [D.I. 12052], approving, on an interim basis, $962,41.57 of the fees and expenses requested in the Ninth Interim Fee Application. Kirkland and the Fee Committee and currently in negotiations with respect to the remaining amounts requested therein.

Expenses Sought in this Fee Application Already Paid
Pursuant to the Interim Compensation Order But Not Yet          $89,317.13
Allowed:


Dated: October 17, 2017
       Chicago, Illinois

*/s/ Chad J. Husnick*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        edward.sassower@kirkland.com
              stephen.hessler@kirkland.com
              brian.schartz@kirkland.com
              aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
              marc.kieselstein@kirkland.com
              chad.husnick@kirkland.com
              steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline: November 8, 2017 at 4:00 p.m.** |

**TENTH INTERIM FEE APPLICATION OF
KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS
INTERNATIONAL LLP, ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION, FOR THE PERIOD FROM
MAY 1, 2017 THROUGH AND INCLUDING AUGUST 31, 2017**

Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland"), attorneys for the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submits its tenth interim fee application (the "Fee Application") for allowance of compensation for professional services provided in the amount of $10,208,548.00 and reimbursement of actual and necessary expenses in the amount of $251,875.14 that Kirkland incurred for the period from May 1, 2017 through and including August 31, 2017 (the "Fee Period"). In support of this Fee Application, Kirkland submits the declaration of Chad J. Husnick, the president of Chad J. Husnick, P.C., a partner of Kirkland & Ellis LLP, and a partner of Kirkland & Ellis International LLP, which is attached hereto as **Exhibit A** and incorporated by reference. In further support of this Fee Application, Kirkland respectfully states as follows.[2]

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]  Capitalized terms used but not otherwise defined in this Fee Application shall have the meanings ascribed to such terms in the *Summary Cover Sheet to the Tenth Interim Fee Application of Kirkland & Ellis LLP and*

## **Jurisdiction**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Debtors confirm their consent pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Fee Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2016 of the Bankruptcy Rules, rules 2016-1 and 2016-2 of the Local Bankruptcy Rules, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order") and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order").[3]

---

*Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from May 1, 2017 Through and Including August 31, 2017.*

[3]    On October 3, 2014, October 7, 2014, December 1, 2014, March 9, 2015, June 9, 2015, and December 15, 2015, the Fee Committee (as defined herein) distributed guidelines to those professionals retained in these chapter 11 cases regarding a number of topics, including, expense reimbursement, fee review criteria, and the contents of interim fee applications (collectively, the "Fee Committee Guidelines").

In accordance with the order confirming the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9199], Texas Competitive Electric Holdings Company LLC ("TCEH" and, together with its direct parent company, Energy Future Competitive Holdings Company LLC ("EFCH") and certain of TCEH's direct and indirect subsidiaries, the "TCEH

## Background

1.      On April 29, 2014, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of the TCEH Debtors (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company, LLC ("EFIH"), EFIH Finance, Inc., and EECI, Inc. (EFH Corp., EFIH, and EFIH Finance Inc., and their direct and indirect Debtor subsidiaries excluding the TCEH Debtors, the "EFH/EFIH Debtors," such committee, the "EFH Creditors' Committee" and, together with the TCEH Creditors' Committee, the "Official Committees") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

2.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all retained professionals in these cases.

---

Debtors") and certain EFH Debtors (defined in the Plan as the EFH Shared Services Debtors) emerged from bankruptcy on the TCEH Effective Date, and are no longer debtors in possession.

Following the TCEH Effective Date, fees and expenses attributable to TCEH Debtors and the EFH Shared Services Debtors will be paid from the Professional Fee Escrow Account (defined in the Plan), on the terms set forth in the Plan and TCEH Confirmation Order.  As the TCEH Effective Date occurred prior to the first day of the Fee Period, time billed to the TCEH Debtors and the EFH Shared Services Debtors are not reflected in this Fee Application.

3.      Given the size and complexity of the Debtors' chapter 11 cases, the U.S. Trustee, the Debtors, and the TCEH Creditors' Committee agreed to recommend that the Court appoint a fee committee to review and report on, as appropriate, interim and final fee applications filed by all retained professionals in accordance with sections 328, 330, and 331 of the Bankruptcy Code and the Interim Compensation Order (the "Fee Committee").  On August 21, 2014, the Court entered the Fee Committee Order, appointing the Fee Committee and establishing the procedures governing the Fee Committee's review of the Debtors' retained professionals' applications for compensation and the resolution of any concerns raised during such review.

### Preliminary Statement

4.      There were a number of very important developments during the Fee Period.  First, following the ruling by the Public Utility Commission of Texas (the Texas regulatory agency with oversight of Oncor Electric Delivery Company LLC's operations) (the "PUCT") that the EFH/EFIH Debtors' proposed merger transaction with NextEra Energy, Inc. ("NEE" and the related merger agreement, the "NEE Merger Agreement") was not in the public interest, the EFH/EFIH Debtors worked to continue to comply with their obligations under the NEE Merger Agreement (primarily by filing amicus curae briefs in support of NEE's rehearing and appellate efforts in connection with the PUCT's ruling in early May 2017). At the same time, the EFH/EFIH Debtors began to explore alternative restructuring options (as permitted by the NEE Merger Agreement).

5.      In early May, Elliott Associates, L.P., Elliott International, L.P. and the Liverpool Limited Partnership (collectively, "Elliott"), who purported to be the largest holder of EFIH unsecured note claims, commenced an adversary proceeding against the EFH/EFIH Debtors, seeking a ruling that the plan support agreement entered into between the EFH/EFIH Debtors and

4

certain holders of EFIH unsecured note claims in January 2017 could not be enforced against Elliott. While the EFH/EFIH Debtors prepared to respond to that adversary proceeding, they simultaneously encouraged Elliott to engage in productive negotiations regarding an alternative restructuring proposal in the event the NEE Merger Agreement was terminated. Ultimately, these efforts resulted in the EFH/EFIH Debtors and Elliott executing a confidentiality agreement in mid-May 2017 and an agreement between the parties to stay the adversary proceeding.

6.      Over the next several weeks, the EFH/EFIH Debtors assisted Elliott in its efforts to develop a comprehensive restructuring proposal. In addition to various in-person and telephonic meetings between the EFH/EFIH Debtors, their management team, and their advisors, and Elliott and its advisors, the EFH/EFIH Debtors provided significant diligence to Elliott to support its financing efforts. Despite the parties' efforts, there remained significant open issues in Elliott's proposal, and ultimately the parties' discussions did not yield an actionable path forward.

7.      In late June 2017, Berkshire Hathaway Energy Company ("BHE") submitted a proposal that largely preserved the structure of the NEE transaction. After several weeks of intensive negotiations, the EFH/EFIH Debtors determined it was in the best interests of their stakeholders to terminate the NEE Merger Agreement and seek approval from the Bankruptcy Court of a merger agreement with BHE. The EFH/EFIH Debtors and BHE negotiated the terms of a merger agreement (the "BHE Merger Agreement"), a plan of reorganization, a scheduling order, and a disclosure statement. The BHE Merger Agreement contemplated a $9 billion purchase price, and had the support of key players in the regulatory process, including the PUCT staff and various intervenors. The EFH/EFIH Debtors believed that early agreement with the PUCT staff and key intervenors would facilitate a more consensual PUCT approval process. The

Bankruptcy Court was scheduled to consider approval of the BHE Merger Agreement in late August 2017.

8.      In mid-August 2017, the EFH/EFIH Debtors received an alternative transaction proposal from Sempra Energy ("Sempra") that largely preserved the structure of the BHE transaction, but which contemplated a purchase price of $9.3 billion.    Substantially contemporaneously therewith, Elliott indicated that it had purportedly purchased a large position in certain EFH unsecured notes as well as increased its EFIH unsecured note holdings.  With its new purported position, the EFH/EFIH Debtors faced certain significant hurdles in pursuing confirmation of a plan of reorganization that did not reflect Elliott's support.  As a result, the EFH/EFIH Debtors rededicated their efforts to developing consensus with Elliott (who indicated that it did not support the BHE transaction, absent a material increase in purchase price consideration).  Following several days of discussions and negotiations, Sempra, among other things (a) increased its purchase price by another $150 million and agreed to certain dividend relief that potentially increased distributable value to EFIH unsecured creditors and (b) improved certain other terms, including terms related to the size and "when payable" terms of the termination fee.  Perhaps most significantly, the EFH/EFIH Debtors (a) obtained a commitment from Elliott to support and not object to a Sempra-led transaction and (b) obtained agreement with Elliott and Sempra that the EFH/EFIH Debtors would not pursue confirmation of a plan of reorganization reflecting the Sempra transaction until the PUCT entered an order approving such contemplated transaction.  On August 21, 2017, EFH and EFIH terminated the BHE Merger Agreement and entered into a merger agreement with Sempra (the "Sempra Merger Agreement") and a plan support agreement with Sempra and Elliott (the "Sempra Plan Support Agreement").

9.      In addition to negotiating various potential restructuring paths forward during the Fee Period, EFIH also worked to address the June 30, 2017 maturity on the EFIH first lien DIP facility.  While the EFIH first lien DIP facility had an extension option for six months (through December 31, 2017) following payment of certain extension fees, the Debtors determined that it was possible, given the current state of the cases, that they may not be able to emerge from chapter 11 before the end of 2017. After several weeks of negotiations with multiple banks (and counsel for Elliott), EFIH sought Bankruptcy Court approval of a $6.3 billion refinanced EFIH first lien DIP Facility (the "EFIH First Lien DIP Facility"), consisting of a first lien superpriority term loan of $5.475 billion and up to $825 million in incremental term loans.[4]  In addition to the refinancing relief, EFIH sought authority to repay allowed EFIH first lien claims (thereby terminating significant interest accrual on such claims).  After several weeks of negotiations that resulted in the consensual resolution of all objections, the Bankruptcy Court entered an order approving the requested relief in late June 2017.[5]

10.      Finally, during the Fee Period, EFH and EFIH filed a complaint seeking a declaratory judgment that EFH and EFIH did not owe NEE the termination fee set forth in the NEE Merger Agreement (the "NEE Termination Fee") and a motion to consolidate the related pleadings filed by Elliott and NEE.  During the Fee Period, the Debtors addressed a variety of issues related to the NEE Termination Fee, including (a) the mechanics for consolidating all of

---

[4]     *See Motion of Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc. for Entry of an Order (A) Authorizing Postpetition Replacement Financing for Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Extending the Use of Cash Collateral by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (D) Authorizing Refinancing of Postpetition Secured Debt, (E) Authorizing Payment of Allowed EFIH First Lien Claims, and (F) Modifying the Automatic Stay* [D.I. 11318] (the "EFIH First Lien DIP Motion").*

[5]     *See Order* [D.I. 11388]

the related pleadings; (b) the discovery and document production protocols related to the adversary proceeding; and (c) developing a litigation schedule.

11.     The services performed during the Fee Period benefited all of the EFH/EFIH Debtors.  The EFH/EFIH Debtors moved forward in the face of the PUCT ruling (while complying with their obligations under the NEE Merger Agreement) and spent significant time and resources towards identifying an actionable path forward.

### Case Status Summary

12.     Pursuant to the Sempra Plan Support Agreement, the EFH/EFIH Debtors are not pursuing confirmation of the Sempra plan of reorganization until after the PUCT enters an order approving the transactions contemplated by the Sempra Merger Agreement.  On October 4, 2017, Sempra and Oncor jointly filed a change of control application with the PUCT. A hearing to consider the merits of such application is expected to be scheduled for late February 2018.

### The Debtors' Retention of Kirkland

13.     On September 16, 2014, the Court entered the *Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 2052] (the "Retention Order"), attached hereto as **Exhibit B** and incorporated by reference. The Retention Order authorizes the Debtors to compensate and reimburse Kirkland in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Fee Committee Order, and the Interim Compensation Order.  The Retention Order also authorizes the Debtors to compensate Kirkland at Kirkland's hourly rates charged for services of this type and to reimburse Kirkland for actual and necessary out-of-pocket expenses incurred, subject to

application to this Court.[6]  The particular terms of Kirkland's engagement are detailed in the

engagement letter by and between Kirkland and the Debtors, effective as of June 19, 2012, and

attached hereto as **Exhibit C**.

14.     The Retention Order authorizes Kirkland to provide the following services

consistent with and in furtherance of the services enumerated above:

     a. advising the Debtors with respect to their powers and duties as debtors-in-possession in the continued management and operation of their businesses and properties;

     b. preparing pleadings, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates and consistent with the services identified in the Retention Order;

     c. appearing before the Court and any appellate courts to represent the interests of the Debtors' estates before those courts in connection with the services in the Retention Order; and

     d. performing all other legal services reasonably necessary or otherwise beneficial for the Debtors in connection with these chapter 11 cases.

### Disinterestedness of Kirkland

15.     To the best of the Debtors' knowledge and as disclosed in:  the *Declaration of

Edward O. Sassower, P.C. in Support of the Debtors' Application for the Entry of an Order

Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors

and Debtors in Possession Effective Nunc Pro Tunc to the Effective Date* [D.I. 660] (the "First

Sassower Declaration"); the *Amended Declaration of Edward O. Sassower in Support of the*

*Debtors Application for Entry of an Order Authorizing the Retention and Employment of Kirkland*

*& Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to*

*the Effective Date* [D.I. 1733] (the "Amended Sassower Declaration"); the *First Supplemental*

---

[6]     In accordance with the Retention Order, Kirkland does not seek reimbursement of expenses for office supplies pursuant to this Fee Application.

*Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 2005] (the "First Supplemental Sassower Declaration"); the *Second Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 2949] (the "Second Supplemental Sassower Declaration"); the *Third Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 3041] (the "Third Supplemental Sassower Declaration"); the *Fourth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 4963] (the "Fourth Supplemental Sassower Declaration"); the *Fifth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 6240] (the "Fifth Supplemental Sassower Declaration"); the *Sixth Supplemental Declaration of James H.M. Sprayregen in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis*

*International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 7418] (the "<u>Sixth Supplemental Sprayregen Declaration</u>");  the *Seventh Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 8734] (the "<u>Seventh Supplemental Sassower Declaration</u>"); the *Eighth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 9216] (the "<u>Eighth Supplemental Sassower Declaration</u>"); the *Ninth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 10280] (the "<u>Ninth Supplemental Sassower Declaration</u>"); the *Tenth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 10408] (the "<u>Tenth Supplemental Sassower Declaration</u>"); the *Eleventh Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 11124] (the "<u>Eleventh Supplemental Sassower Declaration</u>"); the

11

*Twelfth Supplemental Declaration of Chad J. Husnick in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 11363] (the "Twelfth Supplemental Husnick Declaration"); the *Thirteenth Supplemental Declaration of Chad J. Husnick in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 11849] (the "Thirteenth Supplemental Husnick Declaration"); and the *Fourteenth Supplemental Declaration of Chad J. Husnick in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [D.I. 12054] (the "Fourteenth Supplemental Husnick Declaration" and together with the First Sassower Declaration, the Amended Sassower Declaration, the First Supplemental Sassower Declaration, the Second Supplemental Sassower Declaration, the Third Supplemental Sassower Declaration, the Fourth Supplemental Sassower Declaration, the Fifth Supplemental Sassower Declaration, the Sixth Supplemental Sprayregen Declaration, the Seventh Supplemental Sassower Declaration, the Eighth Supplemental Sassower Declaration, the Ninth Supplemental Sassower Declaration, the Tenth Supplemental Sassower Declaration, the Eleventh Supplemental Sassower Declaration, the Twelfth Supplemental Husnick Declaration, and the Thirteenth Supplemental Husnick Declaration, the "Kirkland Declarations"), Kirkland (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and

12

(c) has no connection to the Debtors, their creditors, or other parties-in-interest, except as may be disclosed in the Kirkland Declarations.

16.    Kirkland may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors in these chapter 11 cases.    In the Kirkland Declarations, Kirkland disclosed its connections to parties-in-interest that it has been able to ascertain using its reasonable efforts.    Kirkland will update the Kirkland Declarations or file additional ones, as appropriate, if Kirkland becomes aware of relevant and material new information.

17.    Kirkland performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

18.    Except to the extent of the advance payments paid to Kirkland that Kirkland previously disclosed to this Court in the Kirkland Declarations, Kirkland has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these chapter 11 cases.

19.    Pursuant to Bankruptcy Rule 2016(b), Kirkland has not shared, nor has Kirkland agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of Kirkland or (b) any compensation another person or party has received or may receive.

## Summary of Compliance with Interim Compensation
## Order and Fee Committee Order

20.    This Fee Application has been prepared in accordance with the Interim Compensation Order and the Fee Committee Order.    Kirkland seeks interim compensation for professional services rendered to the Debtors during the Fee Period in the amount of $10,208,548.00 and reimbursement of actual and necessary expenses incurred in connection with

13

providing such services in the amount of $251,875.14.  During the Fee Period, Kirkland attorneys and paraprofessionals expended a total of 11,071.40 hours for which compensation is requested.

21.    Kirkland has sought payments totaling $8,166,838.40 under the Interim Compensation Order and the Fee Committee Order pursuant to the Monthly Fee Statements. Kirkland has submitted the Monthly Fee Statements seeking payment of (a) 80% of the fees incurred by the Debtors for reasonable and necessary professional services rendered by Kirkland and (b) 100% of the actual and necessary costs and expenses incurred by Kirkland in connection with the services provided to the Debtors for each month.

22.    Accordingly, by this Fee Application, and to the extent such amounts have not been paid by the time of the hearing on this Fee Application, Kirkland seeks payment of the remaining $2,041,709.60, which represents the 20% holdback period on fees incurred during the Fee Period.[7]

## Fees and Expenses Incurred During Fee Period

### A.    Customary Billing Disclosures.

23.    Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  The hourly rates and corresponding rate structure utilized by Kirkland in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by Kirkland for other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect that such restructurings and other complex matters typically are national in

---

[7]    As of the filing of this Fee Application, 80% of the fees and 100% of the expenses set forth in the August Monthly Fee Statement have not been paid.  Kirkland anticipates receiving such amounts in advance of the hearing on this Fee Application.  Consequently, Kirkland seeks approval of (but not payment of) such amounts pursuant to this Fee Application.

14

scope and typically involve great complexity, high stakes, and severe time pressures. For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit D** is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to the Debtors during the Fee Period.

**B.      Fees Incurred During Fee Period**.

24.      In the ordinary course of Kirkland's practice, Kirkland maintains computerized records of the time expended to render the professional services required by the Debtors and their estates. For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit E** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at Kirkland's current billing rates;

- the hourly billing rate for each attorney and each paraprofessional as disclosed in the first interim fee application;

- the number of rate increases since the inception of the case; and

- a calculation of total compensation requested using the rates disclosed in the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 660] (the "Retention Application").

**C.      Expenses Incurred During Fee Period**.

25.      In the ordinary course of Kirkland's practice, Kirkland maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their

estates and for which reimbursement is sought.  Kirkland currently charges $0.16 per page for standard duplication in its offices in the United States.  Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, Kirkland charged no more than $0.10 per page for standard duplication services in these chapter 11 cases.  Kirkland does not charge its clients for incoming facsimile transmissions.

26.    For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit F** is a summary of expenses incurred during the Fee Period and setting forth the total amount of reimbursement sought with respect to each category of expenses for which Kirkland is seeking reimbursement.

### Proposed Payment Allocation

27.    In accordance with paragraph 2(b) of the Interim Compensation Order, Kirkland proposes the following allocation of the fees and expenses sought in this Fee Application among (a) EFH Corp. and (b) EFIH:

| Direct Benefit Fees:  $801,693.30<br>(comprised of $797,887.00 fees and $3,806.30 expenses) ||
|---|---|
| **Debtor(s)** | **Amount** |
| EFH Corp. | $24,229.40 |
| EFIH | $777,463.90 |
| *Total:* | $801,693.30 |
| Collective Benefit Fees:  $9,658,729.84<br>(comprised of $9,410,661.00 fees and $248,068.84 expenses) ||
| **Debtor(s)** | **Amount** |
| EFH Corp. | $2,034,018.58 |
| EFIH | $7,624,711.26 |
| *Total:* | $9,658,729.84 |
| *Grand Total:* | $10,460,423.14 |

### Summary of Legal Services Rendered During the Fee Period

28.    As discussed above, during the Fee Period, Kirkland provided extensive and important professional services to the Debtors in connection with these chapter 11 cases.  These

services were often performed under severe time constraints and were necessary to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

29.   To provide a meaningful summary of Kirkland's services provided on behalf of the Debtors and their estates, Kirkland has established, in accordance with its internal billing procedures, certain subject matter categories (each, a "Matter Category") in connection with these chapter 11 cases.   The following is a summary of the fees and hours billed for each Matter Category in the Fee Period:[8]

| Matter Number | Project Category Description | Hours Billed | Total Compensation Billed |
|---|---|---|---|
| 0006 | [ALL E-SIDE] Case Administration | 39.10 | $16,410.00 |
| 0008 | [ALL E-SIDE] Claims Administration & Objections | 24.80 | $20,210.00 |
| 0009 | [ALL E-SIDE] Contested Matters & Adv. Proceed. | 5,039.10 | $4,278,934.50 |
| 0010 | [ALL E-SIDE] Corp. Governance and Sec. Issues | 977.40 | $889,687.00 |
| 0011 | [ALL E-SIDE] Exec. Contracts & Unexpired Leases | 0.60 | $573.00 |
| 0012 | [ALL E-SIDE] Hearings | 176.60 | $135,778.50 |
| 0014 | [ALL E-SIDE] Kirkland Retention and Fee Applications | 299.70 | $132,060.50 |
| 0017 | [ALL E-SIDE] Non-Kirkland Retentions & Fee Apps | 25.30 | $18,963.50 |
| 0018 | [ALL E-SIDE] Non-Working Travel | 200.20 | $193,951.50 |
| 0021 | [ALL E-SIDE] Plan and Disclosure Statements | 3,010.70 | $3,169,605.00 |
| 0023 | [ALL E-SIDE] Regulatory Issues | 8.40 | $10,598.00 |
| 0029 | [ALL E-SIDE] Tax Issues | 402.00 | $543,889.50 |
| 0066 | [EFIH] Cash Collat./DIP Finan./Makewhole | 836.50 | $764,182.00 |
| 0068 | [EFIH] Contested Matters & Advers. Pro. | 9.00 | $12,497.00 |
| 0082 | [EFH] Asset Dispositions and Purchases | 22.00 | $21,208.00 |

30.   The following is a summary, by Matter Category, of the most significant professional services provided by Kirkland during the Fee Period.   This summary is organized in accordance with Kirkland's internal system of matter numbers.   The detailed descriptions demonstrate that Kirkland was heavily involved in performing services for the Debtors on a daily

---

[8]   In certain instances Kirkland may have billed the same amount of fees, but different amount of hours to different Matter Categories.   This difference is the result of different staffing of each such Matter Category.

Matter Categories that have the prefix [ALL E-SIDE] represent time billed to the EFH Debtors and the EFIH Debtors.

17

basis, often including night, weekend, and holiday work, to meet the needs of the Debtors' estates in these chapter 11 cases.

31.     A schedule setting forth a description of the Matter Categories utilized in this case, the number of hours expended by Kirkland partners, associates, and paraprofessionals by matter, and the aggregate fees associated with each matter is attached hereto as **Exhibit G**.  **Exhibit H** is Kirkland's budget and staffing plan for this Fee Period, which has been approved by the Debtors, and **Exhibit I** is a comparison of hours and fees budgeted for each matter category to which Kirkland professionals and paraprofessionals billed time during the Fee Period against the hours and fees for which Kirkland seeks compensation for the Fee Period.

32.     In addition, Kirkland's computerized records of time expended providing professional services to the Debtors and their estates are attached hereto as **Exhibit J**, and Kirkland's records of expenses incurred during the Fee Period in the rendition of professional services to the Debtors and their estates are attached as **Exhibit K**.

### (a)      [ALL E-SIDE] Case Administration (Matter No. 6)

Total Fees:      $16,410.00
Total Hours:    39.10

33.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period on tasks assuring the smooth and efficient administration of the EFH/EFIH Debtors' chapter 11 cases.     Specifically, Kirkland attorneys and paraprofessionals spent time:

     i.      coordinating work streams, client communications, and creditor communications;

     ii.     monitoring critical dates and case developments and maintaining and disseminating case calendars, task lists, work-in-progress reports, and key deadlines in the chapter 11 case regarding the EFH/EFIH Debtors;

> iii.     corresponding with the Kirkland working group and the EFH/EFIH
>          Debtors regarding the status of pending workstreams; and
>
> iv.      reviewing docket entries as they are filed to apprise the EFH/EFIH
>          Debtors, as well as Kirkland working groups, of developments in the
>          chapter 11 cases, in real-time.

**(b)    [ALL E-SIDE] Claims Administration & Objections (Matter No. 8)**

Total Fees:    $20,210.00
Total Hours:   24.80

34.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the administration and resolution of claims filed against the EFH/EFIH Debtors' estates. Specifically, Kirkland attorneys and paraprofessionals spent time:

> i.      analyzing and researching issues related to claims against the EFH/EFIH
>         Debtors and corresponding with parties-in-interest regarding the same;
>
> ii.     analyzing and responding to litigation filed by certain pro se claimants;
>         and
>
> iii.    analyzing asbestos-related claims and litigation issues.

**(c)    [ALL E-SIDE] Contested Matters & Adversary Proceedings (Matter No. 9)**

Total Fees:    $4,278,934.50
Total Hours:   5,039.10

35.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to contested matters and adversary proceedings, and preparing for approval of the BHE Merger Agreement and the Sempra Merger Agreement.  Specifically, Kirkland attorneys and paraprofessionals spent time:

> i.      monitoring the docket to ensure compliance with certain requirements of a
>         confidentiality agreement and protective order and fulfilling requirements
>         to maintain confidentiality of designated material;

19

ii.       planning collection and processing of documents from the EFH/EFIH Debtors for review and potential production in connection with the BHE Merger Agreement and the Sempra Merger Agreement approval process;

iii.      defending against efforts by interested parties to intervene in the chapter 11 cases, and addressing and disputing discovery requests regarding such efforts;

iv.      drafting, reviewing and analyzing materials and exhibits in preparation for a contested hearing regarding the scheduling of the BHE Merger Agreement approval;

v.       following lengthy reviews for privilege and responsiveness, producing 3,154 documents and 38,985 pages of materials;

vi.      preparing for and defending depositions of EFH/EFIH Debtors' representatives and expert witnesses in preparation for approval of the BHE Merger Agreement and the Sempra Merger Agreement; and

vii.     contesting actions surrounding the consolidation and intervention of interested parties in adversary proceedings disputing the proposed allocation of the NEE Termination Fee

**(d)      [ALL E-SIDE] Corporate and Securities Issues (Matter No. 10)**

Total Fees:     $889,687.00
Total Hours:    977.40

36.     This Matter Category includes time spent by Kirkland attorneys during the Fee Period related to corporate governance issues involving the EFH/EFIH Debtors.  Specifically, Kirkland attorneys spent time:

i.        reviewing and analyzing provisions of the BHE Merger Agreement and the Sempra Merger Agreement in conjunction with development of the Plan; and

ii.       preparing materials to update the EFH/EFIH Debtors' respective boards regarding developments in these chapter 11 cases.

**(e)      [ALL E-SIDE] Exec. Contracts & Unexpired Leases (Matter No. 11)**

Total Fees:     $573.00
Total Hours:    0.60

37.     This Matter Category includes time spent by Kirkland attorneys during the Fee

20

Period examining issues related to the EFH/EFIH Debtors' executory contracts and unexpired leases.

**(f)    [ALL E-SIDE] Hearings (Matter No. 12)**

Total Fees:    $135,778.50
Total Hours:    176.60

38.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period preparing for and attending hearings, including various status and scheduling-related hearings.    Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.    preparing for and attending a hearing to approve the BHE Merger Agreement Sempra Merger Agreement; and

    ii.    preparing for and attending a hearing regarding a motion to adjourn a hearing to approve the BHE Merger Agreement.

**(g)    [ALL E-SIDE] Kirkland Retention and Fee Applications (Matter No. 14)**

Total Fees:    $132,060.50
Total Hours:    299.70

39.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to Kirkland's retention and fee materials for the EFH/EFIH Debtors.    Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.    preparing budget materials;

    ii.    reviewing and revising invoices regarding privilege and compliance with applicable guidelines and rules;

    iii.    conducting, reviewing, and analyzing conflicts reports for any potential conflicts of interest and filing the Twelfth Supplemental Husnick Declaration; and

iv.      preparing Kirkland's ninth interim fee application.[9]

**(h)      [ALL E-SIDE] Non-Kirkland Retentions and Fee Applications (Matter No. 17)**

Total Fees:    $18,963.50
Total Hours:   25.30

40.      This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to the retention of professionals other than Kirkland.  Specifically, Kirkland attorneys and paraprofessionals spent time:

i.       corresponding with the EFH/EFIH Debtors' professionals, including ordinary course professionals, regarding, among other things, projected post-EFH Effective Date fees;

ii.      drafting an engagement letter regarding the retention of special local counsel; and

iii.     assisting other professionals in receiving compensation in accordance with the interim compensation process.

**(i)      [ALL E-SIDE] Non-Working Travel (Matter No. 18)**

Total Fees:    $193,951.50
Total Hours:   200.20

41.      This Matter Category includes non-working travel time spent by Kirkland attorneys and paraprofessionals during the Fee Period in connection with their representation of the EFH/EFIH Debtors.  The amounts requested in the Fee Application reflect a reduction of one-half of the charges for travel time not spent working on matters related to these chapter 11 cases.

---

[9]    *See Ninth Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from January 1, 2017 Through and Including April 30, 2017* [D.I. 11349].

22

**(j)      [ALL E-SIDE] Plan and Disclosure Statements (Matter No. 21)**

Total Fees:      $3,169,605.00
Total Hours:    3,010.70

42.      This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period working to develop the Plan as it applies to the EFH/EFIH Debtors.  Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.      communicating with the EFH/EFIH Debtors and the disinterested directors and their advisors;

    ii.      negotiating terms and mechanics of potential plans of reorganization with various potential plan sponsors and interested parties;

    iii.      drafting a new disclosure statement in connection with terminating the NEE Merger Agreement (the "EFH/EFIH Disclosure Statement");

    iv.      drafting, negotiating, and achieving court approval of the Sempra Merger Agreement;

    v.      drafting, negotiating, and achieving court approval of the BHE Merger Agreement;

    vi.      discussing and negotiating restructuring terms with creditor constituencies and the disinterested directors' advisors;

    vii.      communicating and coordinating with the EFH/EFIH Debtors and their other advisors regarding consummation of the transactions contemplated by the Plan and preceding plans of reorganization; and

    viii.      analyzing the regulatory approval process related to the transactions contemplated by the Plan.

**(a)      [ALL E-SIDE] Regulatory Issues (Matter No. 23)**

Total Fees:      $10,598.00
Total Hours:    8.40

43.      This Matter Category includes time spent by Kirkland attorneys during the Fee Period providing services related to various regulatory issues.  Specifically, Kirkland attorneys spent time:

    i.      reviewing and revising EFH/EFIH Hart-Scott-Rodino filings; and

23

ii.      analyzing regulatory issues and considerations related to the Plan.

**(b)      [ALL E-SIDE] Tax Issues (Matter No. 29)**

Total Fees:     $543,889.50
Total Hours:   402.00

44.     This Matter Category includes time spent by Kirkland attorneys during the Fee Period conducting legal research, preparing correspondence, pleadings, and disclosures, and generally advising the EFH/EFIH Debtors in connection with tax issues.  Specifically, Kirkland attorneys spent time:

i.      researching and analyzing certain tax issues associated with current business operations, the BHE Merger Agreement, the Sempra Merger Agreement, and related transactions; and

ii.      communicating and coordinating with the IRS regarding filings to support compliance of proposed transactions.

**(c)      [EFIH] Cash Collateral / DIP Financing / Make-whole Issues (Matter No. 66)**

Total Fees:     $764,182.00
Total Hours:   836.50

45.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to EFIH financing issues. Specifically, Kirkland attorneys and paraprofessionals spent time:

i.      drafting and filing the EFIH First Lien DIP Motion; and

ii.      negotiating with counsel to lenders and preparing documentation regarding terms of the amendment to the EFIH First Lien DIP Credit Agreement (as defined in the EFIH First Lien DIP Motion).

**(d)** **[EFIH] Contested Matters and Adversary Proceedings (Matter No. 68)**

Total Fees:    $12,497.00
Total Hours:    9.00

46.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period related to the EFIH Debtors' contested matters and adversary proceedings with EFIH creditors.  Specifically, Kirkland attorneys spent time:

    i.    analyzing litigation and related issues in connection with a preliminary injunction motion; and

    ii.    drafting and analyzing discovery-related correspondence to the Bankruptcy Court.

**(e)** **[EFH] Asset Dispositions and Purchases (Matter No. 82)**

Total Fees:    $21,208.00
Total Hours:    22.00

47.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period regarding an agreement to exchange certain assets between the Oncor Electric Delivery Company LLC and another public utility (the "Asset Swap").  Specifically, Kirkland attorneys spent time:

    i.    analyzing background information, merger materials, public filings, and related issues and communicating with the EFH/EFIH Debtors and parties in interest regarding the same; and

    ii.    analyzing, drafting, and preparing a motion to approve the Asset Swap.[10]

**Actual and Necessary Expenses Incurred by Kirkland**

48.    As set forth in **Exhibit K** attached hereto, and as summarized in **Exhibit F** attached hereto, Kirkland has incurred a total of $251,875.14 in expenses on behalf of the Debtors during the Fee Period.  These charges are intended to reimburse Kirkland's direct operating costs,

---

[10]    *See Motion of the EFH/EFIH Debtors for Order Authorizing the EFH/EFIH Debtors to Consent to Oncor's Entry into the Sharyland Agreement* [D.I. 11837].

which are not incorporated into the Kirkland hourly billing rates. Kirkland charges external copying and computer research at the provider's cost without markup. Only clients who actually use services of the types set forth in **Exhibit K** of this Fee Application are separately charged for such services. The effect of including such expenses as part of the hourly billing rates would be to impose that cost upon clients who do not require extensive photocopying and other facilities and services.

## Reasonable and Necessary Services Provided by Kirkland

**A.      Reasonable and Necessary Fees Incurred in Providing Services to the Debtors.**

49.      The foregoing professional services provided by Kirkland on behalf of the Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

50.      Many of the services performed by partners and associates of Kirkland were provided by Kirkland's Restructuring Group. Kirkland has a prominent practice in this area and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies, with more than 100 attorneys focusing on this area of the law. The attorneys at Kirkland have represented either the debtor or a creditors' committee or have acted as special counsel in many large chapter 11 cases.

51.      In addition, due to the facts and circumstances of these chapter 11 cases, attorneys from Kirkland's Litigation, Corporate, and Tax Groups were heavily involved with Kirkland's representation of the Debtors during the Fee Period. These practice groups also enjoy a national and international reputation for their expertise. Overall, Kirkland brings to these chapter 11 cases a particularly high level of skill and knowledge, which inured to the benefit of the Debtors and all stakeholders.

26

**B.      Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors.**

52.      The time constraints imposed by the circumstances of these chapter 11 cases required Kirkland attorneys and other employees to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtors.  These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties-in-interest on a timely basis, satisfy the demands of the Debtors' businesses, and ensure the orderly administration of their estates.  Consistent with firm policy and the Fee Committee Guidelines, and as further disclosed in the Retention Application, Kirkland attorneys and other Kirkland employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs.  Kirkland's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of legal services.

53.      In addition, due to the location of the Debtors' businesses, co-counsel, creditors, and other parties-in-interest in relation to Kirkland's offices, frequent multi-party telephone conferences involving numerous parties were required.  On many occasions, the exigencies and circumstances of these chapter 11 cases required overnight delivery of documents and other materials.  The disbursements for such services are not included in Kirkland's overhead for the purpose of setting billing rates, and Kirkland has made every effort to minimize its disbursements in these chapter 11 cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

54.      Among other things, Kirkland makes sure that all overtime meals, travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement.

27

Specifically, Kirkland regularly reviews its bills to ensure that the Debtors are billed for only services that were actual and necessary, and also, where appropriate, prorates expenses across the Debtors' estates.  In accordance with the Retention Order, Kirkland does not seek reimbursement of expenses for office supplies pursuant to this Fee Application.  In addition, Kirkland has waived certain fees and reduced certain expenses to comply with the Fee Committee Guidelines.  Kirkland will not seek reimbursement of expenses related to, among other things, in-office and out-of-office meals in excess of that allowed under the Fee Committee Guidelines and local travel expenses for those Kirkland employees who work on weekends or late in the evenings that do not meet the Fee Committee Guidelines.   In the Fee Period, Kirkland voluntarily reduced its fees by $330,227.00 and its expenses by $31,491.05.  Consequently, Kirkland does not seek payment of such fees or reimbursement of such expenses in this Fee Application.

### Kirkland's Requested Compensation and Reimbursement Should be Allowed

55.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (a)    the time spent on such services;
>
> (b)    the rates charged for such services;

28

(c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(e)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

56.    Kirkland respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time rendered, necessary for and beneficial to the Debtors and their estates and were rendered to protect and preserve the Debtors' estates.  Kirkland further believes that it performed the services for the Debtors economically, effectively, and efficiently, and that the results obtained benefited not only the Debtors, but also the Debtors' estates and the Debtors' stakeholders.  Kirkland further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties-in-interest.

57.    During the Fee Period, Kirkland's hourly billing rates for attorneys ranged from $555.00 to $1,625.00.  The hourly rates and corresponding rate structure utilized by Kirkland in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by Kirkland for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.  Kirkland strives to be efficient in the staffing of matters. These rates and the rate structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in these chapter 11 cases.

29

58.    Moreover, Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

59.    In sum, Kirkland respectfully submits that the professional services provided by Kirkland on behalf of the Debtors and their estates during these chapter 11 cases were necessary and appropriate given the complexity of these chapter 11 cases, the time expended by Kirkland, the nature and extent of Kirkland's services provided, the value of Kirkland's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code.  Accordingly, Kirkland respectfully submits that approval of the compensation sought herein is warranted and should be approved.

60.    No previous application for the relief sought herein has been made to this Court or any other.

**Reservation of Rights and Notice**

61.    It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Fee Application.  Kirkland reserves the right to include such amounts in future fee applications.  In addition, the Debtors have provided notice of this Fee Application to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer

30

& Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor

Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) the Fee Committee; and (z) those parties that have requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

62.     Pursuant to the Interim Compensation Order and the Fee Committee Order, any Notice Party (other than the Fee Committee) that wishes to object to the Fee Application must file its objection with the Court, with a copy to Chambers and serve it on Kirkland and the Notice Parties so that it is **actually received on or before November 8, 2017 at 4:00 p.m. (Eastern Standard Time)**.

### No Prior Request

63.     No prior application for the relief requested herein has been made to this Court or any other.

*[Remainder of page intentionally left blank.]*

RLF1 18293797v.1

WHEREFORE, Kirkland respectfully requests that the Court enter an order (a) awarding Kirkland interim compensation for professional and paraprofessional services provided during the Fee Period in the amount of $10,208,548.00, and reimbursement of actual, reasonable, and necessary expenses incurred in the Fee Period in the amount of $251,875.14; (b) authorizing and directing the Debtors to remit payment to Kirkland for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Dated: October 17, 2017
     Chicago, Illinois

*/s/ Chad J. Husnick*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
    stephen.hessler@kirkland.com
    brian.schartz@kirkland.com
    aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
    marc.kieselstein@kirkland.com
    chad.husnick@kirkland.com
    steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*