# EXHIBIT O
## Disclosure Regarding All Cash Merger Consideration

As disclosed by Sempra Energy on October 6, 2017,[1] following discussions (i) with various stakeholders in Texas to gain their perspectives on how best Sempra Energy can meet the needs of Oncor customers and improve the likelihood of approval of the Merger[2] by the PUC and (ii) among Sempra Energy, EFH, EFIH and Oncor, Sempra Energy has updated (a) its plan regarding its anticipated ownership of EFH after consummation of the Merger and (b) its plan to finance the approximately $9.45 billion of total cash consideration payable in connection with the Merger. Under this updated ownership and financing plan, Sempra Energy currently expects to directly or indirectly own 100 percent of the membership interests of EFH and will not raise any equity financing from third party investors in EFH, and EFH Merger Sub and Reorganized EFH will not incur any debt to finance any portion of the total Merger consideration. This updated ownership and financing plan impacts the Plan in two primary ways, as discussed below.

**Reorganized EFH Will Not Enter Into the Exit Facilities**

Pursuant to the Merger Agreement, and as contemplated in Article IV.C.4 of the Plan, on the EFH Effective Date, EFH Merger Sub and, upon consummation of the Merger, Reorganized EFH were to potentially enter into Exit Facilities and incur debt obligations in accordance with the Exit Facility Agreement. The Exit Facilities, which were to be used primarily to fund a portion of the cash consideration payable in connection with the Merger (and thereby reduce Sempra Energy's required cash payment of Merger consideration), were to include (a) the Exit Term Loan Facility, consisting of a senior secured term loan in an aggregate principal amount of up to $3 billion, and (b) the Exit Revolving Facility, consisting of a senior secured revolving loan facility with permitted borrowings of up to $120 million. Because of Sempra Energy's updated ownership and financing plan in connection with its acquisition of EFH, the proceeds of the potential Exit Facilities are no longer necessary, and such loan facilities will not be entered into on the Effective Date of the Plan.

**The Non-Rollover Trust Will Not Be Formed, and the Rollover Trust Will Only Be Formed if Required by the IRS**

As disclosed by Sempra Energy on August 25, 2017,[3] the mechanics for which are also described in Article IV.B.4 of the Plan, following the consummation of the Plan and the Merger, Sempra Energy expected that it would indirectly own approximately 60 percent of the membership interests of EFH, with the remaining 40 percent indirectly owned by either the Rollover Trust or the Non-Rollover Trust or a combination thereof, for the benefit of, respectively, (i) holders of Allowed Claims that participated in the Rollover Trust Investment Election or are required by the IRS to receive Rollover Trust Certificates in order for the IRS to issue the necessary Supplemental Rulings and (ii) third-parties who wished to participate in Sempra Energy's investment in EFH. Because of Sempra Energy's updated ownership and financing plan in connection with its acquisition of EFH, Sempra Energy will not seek third party investors in EFH, and will not offer the Rollover Trust Investment Election to holders of Allowed Second Lien Note Claims. Accordingly, at this time, the Debtors do not contemplate the issuance of Rollover Trust Certificates, Non-Rollover Trust Certificates or entry into the Rollover Trust Agreement or the Non-Rollover Trust Agreement, except as disclosed in the Tax Contingency Disclosure attached as Exhibit M to the Plan Supplement, to which this Exhibit O is attached.[4]

---

[1] Sempra Energy, Current Report (Form 8-K) (filed on Oct. 6, 2017).

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 11887] (the "**Plan**").

[3] Sempra Energy, Current Report (Form 8-K) (filed on Aug. 25, 2017).

[4] The Tax Contingency Disclosure attached as Exhibit M to the Plan Supplement, to which this Exhibit O is attached, describes the terms on which an alternative recovery, other than the recovery as contemplated in the Plan, may be required by the IRS. If such "Alternative Recovery" (as defined in the Tax Contingency Disclosure) is required, Holders of certain Allowed Claims may receive New Holdco Class A Units, which will be, or deemed to be, contributed to the Rollover Trust in exchange for Rollover Trust Certificates, in which case the Rollover Trust may be formed and the Rollover Trust Certificates may be issued, as contemplated by, and in accordance with, the terms of the Plan and Section 1.8 of the Merger Agreement.