## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| **ENERGY FUTURE HOLDINGS** | : | Case No. 14-10979 (CSS) |
| **CORP.,** *et al.*, | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | **Hearing Date: To Be Determined** |
| | : | **Preliminary Objections Due: 10/30/17 by 4:00 p.m.** |

**THE UNITED STATES TRUSTEE'S PRELIMINARY LIMITED OBJECTION,
RESPONSE AND RESERVATION OF RIGHTS WITH RESPECT TO THE FIRST
AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS
CORP., ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, AND THE
EFH/EFIH DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE
(D.I. 11870, 11887)**

Andrew R. Vara, the Acting United States Trustee for Region 3 (the "U.S. Trustee"),

hereby files this Preliminary Limited Objection, Response and Reservation of Rights to the First

Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future

Intermediate Holding Company LLC and the EFH//EFIH Debtors (collectively the "E-Side

Debtors") Pursuant to Chapter 11 of the Bankruptcy Code (the "E-Side Plan") Pursuant to

Chapter 11 of the Bankruptcy Code (D.I. 11870, 11887).[1]

## PRELIMINARY STATEMENT

The E-Side Plan may be otherwise confirmed but only to the extent that approval of the

payment of the reasonable fees and expenses of the EFH Notes Trustee[2], and any other such

---

[1]    Unless otherwise defined herein, capitalized terms shall have the same meaning and context as those capitalized
terms included in the E-Side Plan or any other referenced, relevant or cited document or pleading.

[2]    American Stock Transfer & Trust Company is the indenture trustee (the "EFH Unsecured Notes Trustee") for
the $1.864B in unsecured EFH Legacy Notes, $60M in EFH LBO Notes and $5.0M in the EFH Unexchanged
Notes; and a guaranty related to $63.467M of unsecured EFIH notes. American Stock Transfer & Trust Company is
also a member of the Official Committee of Unsecured Creditors for the EFH and EFIH Debtors (D.I. 3313).

other party, are authorized by the Bankruptcy Code under section 503(b) and such allowance and payment is consistent with applicable bankruptcy law and prior rulings by this Court in these Chapter 11 cases.

Accordingly, any order confirming the E-Side Plan should be consistent with the concerns raised herein and in concert with this Preliminary Limited Objection.

## JURISDICTION

1.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this Preliminary Limited Objection.

2.      Pursuant to 28 U.S.C. § 586(a) (3), the "U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District.  Such oversight is part of the "U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the "U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest).

3.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised in this Preliminary Limited Objection.

## FACTUAL BACKGROUND

4.      On April 29, 2014, the Debtors commenced these Chapter 11 cases.

5.      On April 14, 2015, the Debtors filed their initial plan of reorganization and disclosure statement (collectively, the "Initial Documents") (D.I. 4142 & 4143). On December 1, 2015, and subsequent to several amendments to the Initial Documents, the Debtors filed the

Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") (D.I. 7187)[3].

6.      On November 3, 2015, the Court commenced the hearing on the confirmation of the Plan in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code and after many hours and several days of trial, on December 3, 2015, this Court announced its findings and made certain rulings on the record. (D.I. 7255).

7.      On December 9, 2015[4], the Court entered the Amended Order Confirming the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*, Pursuant to Chapter 11 of the Bankruptcy Code (the "First Confirmed  Plan") (D.I. 7235, 7285).

8.      On or about May 1, 2016, upon information and belief, written notice was delivered to the Debtors and other relevant parties notifying the Debtors and such parties of the occurrence of a Plan Support Termination Event (as defined in the Plan Support Agreement[5]), the delivery of which notice caused the First Confirmed Plan to not become effective.

9.      On May 1, 2016, the Debtor filed a Joint Plan of Reorganization and Disclosure Statement of Energy Future Holdings Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 8355, 8356), and after several amendments, the Debtors filed a Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.,* Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 8745).

---

[3]     On December 6, 2015, the Debtors filed a Modified Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 7235).

[4]     On December 9, 2015, this Court also entered the Order Granting the Motion of Energy Future Holdings Corp., et al to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform under the Settlement Agreement. (D.I. 7243).

[5]     The Order Authoring the Debtors to Enter Into and Perform Under the Plan Support Agreement was entered on September 18, 2015 (D.I. 6097).

10.     On August 5, 2016 the Debtors filed a Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.,* Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 9199).

11.     On August 23, 2016 the Debtors filed another Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.,* Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 9374).

12.     The Third Amended Joint Plan of Reorganization as it applies to the TCEH Debtors and the EFH Shared Services Debtors (the "T-Side Plan")[6] was confirmed on August 29, 2016 (D.I. 9421).

13.     On September 21, 2016, the Debtors filed the Plan and the Disclosure Statement for the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code as it applies to the EFH Debtors and EFIH Debtors (D.I. 9616)[7].

14.     On December 1, 2016 the Debtors filed the Plan and the Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors (D.I. 10290, 10293).

15.     On December 28, 2016 the Debtors filed the Plan and the Disclosure Statement for the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*.,

---

[6]     The Disclosure Statement related to the New Plan is the Third Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors filed on June 16, 2016 (D.I. 8747, 8753) and approved by Court order on June 17, 2016 (D.I. 8761).

[7]     On September 21, 2016, the Debtors filed the Notice of Hearing to Consider Confirmation of the Chapter 11 Plan as it Applies to the EFH/EFIH Debtors and Related Voting and Objection Deadlines (D.I. 9620).

Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH

Debtors (D.I. 10446, 10453).

16.     On January 3, 2017, the Debtors filed the E-Side Plan and the Disclosure

Statement for the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings

Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors

and EFIH Debtors (D.I. 10518, 10520).

17.     On January 3, 2017, the Debtors filed a Notice of the Filing of that Certain Plan

Support Agreement, Dated January 2, 2017 by and Between the EFH/EFIH Debtors, the PIK

Notes Trustee[8], and Certain Creditor Parties Thereto (the "**EFIH Unsecured Creditor Plan**

**Support Agreement**") (D.I. 10530).

18.     On January 4, 2017, the Debtors filed the E-Side Plan and the Disclosure

Statement for the Seventh Amended Joint Plan of Reorganization of Energy Future Holdings

Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors

and EFIH Debtors (D.I. 10533, 10535)[9].

19.     On February 2, 2017, the U.S. Trustee filed his Objection, Response and

Reservation of Rights With Respect to the Seventh Amended Joint Plan of Reorganization of

Energy Future Holdings Corp., et al, Pursuant to Chapter 11 of the Bankruptcy Code as it

Applies to the EFH and the EFIH Debtors (D.I. 10750).

---

[8]     UMB Bank, NA, the EFIH Unsecured Notes Trustee is also the PIK Notes Trustee.
[9]     On January 4, 2017, the Court approved the Disclosure Statement related to the E-Side Plan and entered the Supplemental Order (A) Binding Holders of Claims and Interests to Their Prior Ballots, Pursuant To Section 1127 of The Bankruptcy Code and Bankruptcy Rule 3019, (B) Approving the Revised EFH/EFIH Disclosure Statement, (C) Approving the Procedures and Timeline for the Limited Resolicitation of Votes on the Plan, and (D) Approving the Manner and Forms of Notice Related Thereto was entered on January 4, 2017 (D.I. 10560). In addition, the Debtors filed a solicitation version of the E-Side Plan on January 4, 2017 (D.I. 10551) along with an Amended Disclosure Statement (D.I. 10564).

20.    On February 17, 2017, the Debtors filed the Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 10853).

21.    After several days of trial, on February 17, 2017, the Court entered the Order Confirming the Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors. (D.I. 10859).

22.    On July 11, 2017, the Debtors filed the Notice that the Nextera Plan (D.I. 10853) and the Nextera Plan Confirmation Order (D.I. 10859) were rendered null and void as of July 7, 2017. (D.I. 11446).

23.    Following a series of events, the Debtors filed a Joint Plan of Reorganization for the E-Side Debtors on July 7, 2017 (D.I. 11426), a First Amended Joint Plan of  Reorganization for the E-Side Debtors on August 23, 2017 (D.I. 11803), and another First Amended Joint Plan of Reorganization for the E-Side Debtors on September 5, 2017 (D.I. 11854).  In addition, the E-Side Debtors filed several Disclosure Statements in relation thereto. (D.I. 11427, 11805 and 11856).

24.    On August 23, 2017, the E-Side Debtors filed the Amended and Superseding Motion for an Order (A) Authorizing Entry into the Merger Agreement and Approving the Termination Fee and (B) Authorizing Entry into and Performance Under the Plan Support Agreement (D.I. 11801).[10]  On September 7, 2017, the Court entered the Corrected Order (A)

---

[10] Section 4.03(a)(xvii) of the Plan Support Agreement ("PSA") (D.I. 11801-2) provides as follows:

> "[u]ntil such time this Agreement has been terminated in accordance with Section 8, it shall request a finding in the Confirmation Order under Section 503(b) of the Bankruptcy Code, supporting the payment of the fees and expenses (including but not limited to fees and expenses

Authorizing Entry into Merger Agreement and Approving Termination Fee, and (B) Authorizing

Entry Into and Performance Under Plan Support Agreement. (D.I. 11873).[11]

      25.      On September 6, 2017, the Court entered the Order (A) Approving the EFH

Disclosure Statement[12], (B) Establishing the Voting Record Date, Voting Deadline and Other

Dates, (C) Approving Procedures for Soliciting Receiving, and Tabulating Votes on the Plan,

---

> of legal counsel, financial advisors, consultants, and rating agencies) of the Supporting Creditors incurred in connection with the Chapter 11 Cases (collectively, the "Supporting Creditor Fees") as an allowed Administrative Claim against EFIH under the Plan in an aggregate amount not to exceed $35 million; provided, that, failure to obtain this relief or failure to obtain this relief on terms acceptable to the Supporting Creditors shall not affect the Supporting Creditors' obligations under this Agreement, and the Supporting Creditors will continue to be bound by the terms of this Agreement, whether or not the Bankruptcy Court grants the Debtors' requested relief; . . ."

Paragraph 7 of the PSA Motion states that:

> "[u]ntil the PSA has been terminated in accordance with its terms, the E-Side Debtors will request a finding in the Confirmation Order under section 503(b) of the Bankruptcy Code, supporting the payment of the fees and expenses of the Supporting Creditors as an Allowed Administrative Claim against EFIH, in an aggregate amount not to exceed $35 million. If the E-Side Debtors do not successfully obtain this relief on terms acceptable to the Supporting Creditors, the Supporting Creditors are nevertheless bound by the PSA. ***For the avoidance of doubt, all other parties' rights to this relief are preserved and can be raised at the hearing to consider confirmation of the Plan.***" (Emphasis Added).

The "Supporting Creditors" are defined in the PSA as the beneficial holders or investment advisors or managers of discretionary accounts of such beneficial holders that hold, or direct the vote of, Claims against the EFH/EFIH Debtors. The E-Side Plan provides for the payment of certain fees and expenses of certain professionals, but is silent with respect to the payment of or the review of the Supporting Creditors' fees and expenses. See E-Side Plan Article IV. N.

[11] Accordingly under the PSA, any requested allowance, review and payment of such fees and expenses of the Supporting Creditors will be consistent with prior rulings, the law of these cases and the application of the Bankruptcy Code concerning the review and payment of such fees pursuant to and in accordance with Sections 503(a)(1), 503(b)(3)(d) and 503(b)(4) and any applicable case law and precedent, including the review of those fees and expenses by the Fee Review Committee.

[12] See the Disclosure Statement for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code filed on September 5, 2017 (D.I. 11856).

and (D) Approving the Manner and Forms of Notice and Other Related Documents. (D.I. 11870).

26.     On September 11, 2017, the Debtors filed the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code (Solicitation Version) (the "E-Side Plan") (D.I. 11887).

27.     Not unlike previously-filed and confirmed plans, the E-Side Plan provides for the payment of certain fees.  The relevant E-Side Plan provision states that:

> The EFH Plan Administrator Board shall pay from the EFH Cash Account the EFH Notes Trustee's reasonable and documented fees and expenses (a) incurred between the Petition Date and February 17, 2017 that are Allowed pursuant to the EFH Notes Trustee Substantial Contribution Ruling, which is incorporated herein, and (b) incurred after February 17, 2017, to the extent such fees and expenses are payable as an Administrative Claim pursuant to any finding by the Bankruptcy Court that (i) the EFH Notes Trustee has made, in accordance with sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code, a substantial contribution in the Chapter 11 Cases, ***or (ii) such fees and expenses are otherwise payable as an Administrative Expense.*** In each case of subclause (a) and (b) above, the payment of such fees and expenses shall be subject to the review and approval procedures set forth below; provided that, for the avoidance of doubt, such fees and expenses, if paid pursuant to the provisions of this Section, shall not be included in the amount of any Allowed Claims under the EFH Notes Indentures.

E-Side Plan, Article VI. Section N.1. (Emphasis Added).

22.     Although the E-Side Plan provides for the payment of EFH Notes Trustee's reasonable professional fees and expenses in accordance with prior rulings of this Court and specifically pursuant to section 503(b)(3)(D), 503(b)(4) and 503 (b)(5) of the Bankruptcy Code, the highlighted language of the above-cited E-Side Plan provision potentially opens a door to the possibility that in the event that this Court does not find that the EFH Notes Trustee (or other party seeking such fees) has made a substantial contribution in these cases subsequent to

February 17, 2017, such fees and expenses may otherwise be allowed as an administrative expense.  E-Side Plan, Article IV. Section N.1.[13]

28.     The quandary engendered by this particular caveat in Article IV. Section N.1. of the E-Side Plan is such fees and expenses might be allowed and paid without an underlying valid legal basis or justification for such payment under the Bankruptcy Code. This caveat also conflicts with prior rulings by this Court in these cases.[14]

<u>**LAW AND ANALYSIS**</u>

**A.    General Standards**

29.     In order to obtain confirmation, a plan proponent has the burden to establish compliance with all the requirements of section 1129(a) of the Bankruptcy Code (the "Code"). *See* 11 U.S.C. § 1129(a). The plan proponent bears the burden of proof with respect to each and every element of section 1129(a).  *See, e.g. In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001); *In re Wash Mut.,* 442 B.R. 314, 328 (Bankr. D. Del. 2011).

**B.    The E-Side Plan Provides for the Payment of Non-Estate Retained Professionals Without Adequate Disclosure or Legal Justification**

30.     The EFH Notes Trustee's professional fee payments are specifically statutorily governed by 11 U.S.C. §§ 503(b)(3)(D), 503(b)(4) and 503(b)(5) of the Bankruptcy Code. Although such professionals might be eligible to be compensated from the bankruptcy estate,

---

[13]     On October 20, 2017 the Debtors filed the Plan Supplement for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 12104).

[14]     As may be alluded to in other documents, it is understood that the EFH (and the EFIH) Notes Indenture Trust documents provide for the payment of such fees and expenses as part of the Indenture Trustee's charging liens. To the extent that such fees and expenses are paid pursuant to and in accordance with the charging liens asserted upon the respective creditors E-Side Plan distributions, the U.S. Trustee has no objection where a particular creditor's plan distribution, subject to a proper and valid charging lien, is sur-charged in accordance with such indenture as may be applicable.

.

section 503 imposes detailed requirements that must be met before approval and payment, including the timely filing of a request for payment by the professional, *see* 11 U.S.C. § 503(a); notice and a hearing before the court, *see* 11 U.S.C. § 503(b); a showing that such expenses were "actual" and "necessary," *see* 11 U.S.C. § 503(b)(3); a showing that the creditor, unofficial committee, or indenture trustee has made a "substantial contribution" to the bankruptcy case, *see* 11 U.S.C. § 503(b)(3)(D); and a finding by the court that any compensation paid to an attorney or accountant is "reasonable." *See* 11 U.S.C. § 503(b) (4).

31.    Additionally, such party's right to payment under section 503(b) is not automatic but "depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir.1999). The legal justification for the payment of such fees under the E-Side Plan is found in section 503(b)[15].

32.    The professionals must satisfy the requirement that such indenture trustees, and their professionals, have made a "substantial contribution" to the bankruptcy cases.

---

[15]    Section 503(b) (3) (D) of the Bankruptcy Code provides for the allowance administrative expenses of the estate for the "actual, necessary expenses" incurred by a "creditor" or an "equity security holder... in making a substantial contribution in a case." Section 503(b) (4) provides for the allowance for the "reasonable compensation for professional services rendered by an attorney or an accountant if an entity whose expense is allowable under" section 503(b) (3). Section 503(b)(5) permits the allowance of reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a Chapter 11 case based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title. These provisions are governed in this District by the Third Circuit's decision in *Lebron v. Mechem Financial, Inc.*, 27 F.3d 937 (3d Cir. 1994). A creditor makes a substantial contribution if its efforts provide an "actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Financial Inc.*, 927 F.3d at 943-44 (citation omitted) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)). *See also In re Worldwide Direct, Inc.*, 334 B.R. at 121. However, a benefit that the estate receives as an incident to a creditor's protecting its own interests is not a substantial contribution. *See Lebron*, 27 F.3d at 944. *See also In re Essential Therapeutics, Inc.*, 308 B.R. 170, 174 (Bankr. D. Del. 2004) ("Inherent in substantial contribution, however, is the requirement that the benefit received by the estate be more than incidental to the applicant's self-interest."). Creditors are presumed to act in their own interest "until they satisfy the court that their efforts have transcended self-protection." *Lebron*, 27 F.3d at 944 (citations omitted). The activities that a Section 503(b)(3)(D) applicant has engaged in are "presumed to be incurred for the benefit of the engaging party and are reimbursable if, but only if, the services 'directly and materially contributed' to the reorganization." *Lebron v. Mechem Financial Inc.*, 27 F.3d at 943-44 (citation omitted).

33.     This Court previously ruled,[16] among other things, that:

> Thus, courts have found that a creditor or ad hoc committee of
> creditors is entitled to payment of its professional fees and
> expenses by virtue of making a substantial contribution to the
> bankruptcy case, see *Davis v. Elliot Management Corp In Re:
> Lehman Brothers Holding Inc.*, 508 BR 283 of 296 Southern
> District New York 2014. But the Court must make an independent
> determination as to the existence of the substantial contribution
> and whether the fees and expenses are reasonable. It cannot defer
> to the Debtor's business judgment.

Transcript of December 3, 2015 Hearing, Tr. 35: 16-25; 36: 1.[17]

34.     In particular, this Court stated and ruled in connection of the confirmation of the

Eighth Amended Joint Plan that, among other things:

> So where I come down on this is not to reject the arguments under
> 363, or the actual and necessary argument, but to avoid making a
> decision on the 363 and the actual and necessary argument.
> Because I find that based on my experience in the case, as well as
> the specific record that was not challenged and not an overly thick
> record, but a record as to substantial contribution that was not

---

[16]     In *In re Continental Airlines, Inc.*, 279 F.3d 226 (3d Cir. 2002), the Third Circuit describes the law on "claim and issue preclusion" which were formerly known as "res judicata and collateral estoppel" in the Circuit. 279 F.3d at 332. The Third Circuit described the concepts as follows:

> Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive
> litigation of the very same claim, whether or not relitigation of the claim raises the same issues as
> the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing
> successive litigation of an issue of fact or law actually litigated and resolved in a valid court
> determination essential to the prior judgment, whether or not the issue arises on the same or a
> different claim.

*Id.* (quoting *New Hampshire v. Maine,* 532 U.S. 742 (2001)). The "two doctrines share the 'dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.'" *Id.* (quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 (1979)). The doctrines may be implicated here as they were in *Continental*, because the Court will be asked to rule on "an issue that was unambiguously identified, properly presented and ably and vigorously argued by extremely able counsel of all parties." 279 F.3d at 233 (3d Cir. 2002).

[17]     In addition, see Paragraphs 118, 119 and 122 of the Order Confirming the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.,* Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 7244); Paragraphs 142 and Sections K, L, M and P of the Order Granting the Motion of Energy Future Holdings Corp., *et al* to Approve a Settlement of Litigation Claims and Authorize The Debtors to Enter into and Perform under the Settlement Agreement (D.I. 7243) and the Transcript of the December 3, 2015 Hearing, Tr. 34: 11-18; Tr. 34: 19-23; Tr. 35: 16-25; Tr. 36: 1; Tr. 36: 7-14; Tr. 37: 15-25; Tr. 38: 1-4; and Tr. 38: 12-21.

> specifically challenged by the Office of the U.S. Trustee. Like I
> found with the last plan that was confirmed in December of 2015,
> I believe that the indentured trustee for the EFH noteholders has
> provided a substantial contribution to the debtor's estate that
> would justify a payment of administrative expense claim for those
> fees and expenses.

*See, e.g.*, Transcript of February 17, 2017 Hearing, Tr. 20: 5-18.

35.     The fact that the payments of such professional fees are proposed as part of a

chapter 11 plan does not relieve the third-party professionals of their obligation to comply with

the requirements of section 503, which is the "sole source" of authority to pay post-petition

professional fees on an administrative basis.  *Davis v. Elliot Management Corp. (In re Lehman*

*Bros. Holdings Inc.)*, 508 B.R. 283, 290 (S.D.N.Y. 2014).  In *Lehman*, the court roundly rejected

an attempt by certain committee members to circumvent section 503(b)(4) by seeking payment

under a "permissive" plan provision which purported to pay third-party professional fees without

regard to whether they could be authorized under section 503.  As that court explained, plans pay

only claims and administrative expenses:

> Although the Bankruptcy Code does not explicitly forbid payments
> [of] professional fees that are not administrative expenses, no such
> explicit prohibition is necessary.  Reorganization plans exist to pay
> claims and expenses . . . Therefore, the Individual Members'
> professional fee expenses are either administrative expenses or not,
> and if the latter, they cannot be paid under a plan.

*Id.* at 293. Indeed, the court recognized that any contrary result "could lead to serious mischief,"

since it would allow plan proponents to distribute the estate's assets without regard to the

Bankruptcy Code's priority scheme.  *Id.*

36.     The *Lehman* court's reasoning applies with equal force here.  Like the fees at

issue in *Lehman*, the third-party professional fees "are either administrative expenses or not." *Id.*

Because the third-party professionals seek to enjoy the benefits of administrative priority under

section 503—the sole possible source of statutory authorization permitting them to be paid by the Debtors in full on the Effective Date—they must also comply with the disclosure obligations and substantive limitations imposed by that section.

37.    Even possibly apart from the applicability of section 503(b), this particular provision in Article IV Section N.1. of the E-Side Plan cannot be approved with this caveat because it violates 11 U.S.C. § 1129(a) (4) of the Code.[18] That section provides that a court may approve a chapter 11 plan only if, among other things, the court finds that any payment made by the debtor "for services or for costs and expenses" in connection with the case has either "been approved by, or is subject to the approval of, the court as reasonable."  11 U.S.C. § 1129(a) (4). In these cases, such fees and expenses can only either be paid pursuant to the proper application of an applicable charging lien or section 503(b).

38.    Accordingly, the U.S. Trustee submits that in the event that the Court confirms the E-Side Plan, the Court should first find that the EFH Notes Trustee, or any such claimant, has made a substantial contribution subsequent to February 17, 2017, in these cases and that such professional fees and expenses may be allowed and such professionals shall be compensated solely to the extent such compensation is authorized, approved and awarded under section 503(b).

---

[18]    To be clear, the U.S. Trustee does not suggest that section 1129(a)(4) may be used as a substitute for review under section 503(b).  *See Lehman*, 508 B.R. at 294 n.9 (rejecting argument that section 1129(a)(4) could be used to authorize fees prohibited by section 503(b)).  But even assuming that any of the proposed fees did fall outside the scope of section 503(b), they would nevertheless remain subject to the more general disclosure and court approval requirements of section 1129(a)(4). Under section 105(a) cannot be used to override the prohibitions of another section of the Code.  *See In re Combustion Engineering, Inc.,* 391 F.3d 190, 236 (3rd Cir. 2004) ("The general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself"); *see also Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) ("We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code.") (citations omitted).

## CONCLUSION

39.     As detailed above, the E-Side Plan should be confirmed only to the extent that such approval is consistent with and in accordance with applicable law, controlling precedent and the law of these cases.

40.     The U.S. Trustee reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Preliminary Limited Objection, file a subsequent objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery and cross-examine any and all witnesses in support of the E-Side Plan.[19]

**WHEREFORE,** the U.S. Trustee respectfully requests that this Court grant relief consistent with this Preliminary Limited Objection and/or granting such other relief as this Court deems appropriate, just and appropriate.

Dated:  October 30, 2017
          Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**
**REGION 3**

By: */s/ Richard L. Schepacarter*
       Richard L. Schepacarter
       Trial Attorney
       United States Department of Justice
       Office of the United States Trustee
       J. Caleb Boggs Federal Building
       844 King Street, Room 2207, Lockbox 35
       Wilmington, DE 19801
       (302) 573-6491
       (302) 573-6497 (Fax)

---

[19] In addition, the U.S. Trustee reserves the right to object to any relief inconsistent with applicable law including but not limited to section 503(b).