IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- X
                                                           :
In re:                                                     :    Chapter 11
                                                           :
Energy Future Holdings Corp., *et al.*,[1]                 :    Case No. 14-10979 (CSS)
                                                           :
                    Debtors.                               :    (Jointly Administered)
                                                           :
                                                           :    **Re: D.I. 11854**
                                                           :
---------------------------------------------------------- X

**PRELIMINARY LIMITED OBJECTION OF NEXTERA ENERGY, INC. TO FIRST
AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS
CORP., ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, AND THE
EFH/EFIH DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

NextEra Energy, Inc. ("NextEra") hereby submits this preliminary limited objection (the "Preliminary Objection") to the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11854] (the "Plan"). In support of the Preliminary Objection, NextEra respectfully states as follows:

**PRELIMINARY STATEMENT[2]**

Confirmation of the Plan should be conditioned on the Debtors reserving $275 million for payment of the Termination Fee. Through the Reconsideration Order, the Court took the extraordinary step of disallowing the Termination Fee, depriving NextEra of bargained-for protections that it had relied on for a year. NextEra has appealed the Reconsideration Order.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed to them in the Background section. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

When and if NextEra is successful in that appeal and overcomes whatever other objections parties may raise, the Termination Fee would become an Allowed General Administrative Claim and the Debtors will be required to pay NextEra $275 million.  Both the Bankruptcy Code and the Plan's own terms compel this result.

Despite that requirement, if the dispute concerning the Termination Fee is not finally resolved before the effective date of the Plan, the Debtors may nevertheless seek to distribute their remaining cash to unsecured creditors, impermissibly shifting the risk of collection of an administrative expense claim to NextEra.  Indeed, as formulated, the Plan gives the Debtors discretion to determine the amount to reserve for General Administrative Claims (in contrast with the robust escrow protections provided for future professional fee administrative claims). The Plan should not go forward on this basis.  The Termination Fee, now on appeal, is a known quantity—$275 million.  The Debtors cannot be left with discretion to refuse to reserve for that unresolved administrative expense claim based on their hope that they will not ultimately be required to pay NextEra.

## BACKGROUND

1.      On April 29, 2014 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (the "Debtors") commenced these Chapter 11 cases by filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.      In April 2016, after an extensive marketing process and various other efforts, the Debtors engaged in discussions with NextEra for the sale of their economic interest in Oncor Electric Delivery Company LLC ("Oncor").  Only "after three months of intensive multiparty negotiations" did the Debtors commit to move forward with and seek approval of a transaction with NextEra.[3]

---

[3]     Approval Motion (as defined below) ¶ 24.

3.     On July 29, 2016, certain of the Debtors, NextEra, and EFH Merger Co., LLC ("Merger Sub")—a newly formed subsidiary of NextEra—executed definitive documentation to govern this transaction, including an Agreement and Plan of Merger among Energy Future Holdings Corp. ("EFH"), Energy Future Intermediate Holding Company LLC ("EFIH"), NextEra, and Merger Sub, dated July 29, 2016 (the "Merger Agreement").

4.     The Merger Agreement, as amended, contemplated a merger of EFH with and into Merger Sub, whereby EFH would have become a wholly-owned subsidiary of NextEra with an approximately $18.7 billion implied Oncor total enterprise value.

5.     A critical element of the Merger Agreement was the inclusion of a "Termination Fee" in the amount of $275 million in favor of NextEra (the "Termination Fee"), which would be payable, with certain limited exceptions, following (i) termination of the Merger Agreement by the Debtors and (ii) the Debtors' consummation of an "alternative transaction."

6.     Also on July 29, 2016, EFH, EFIH, EFIH Finance Inc., certain direct and indirect subsidiaries of EFH, and NextEra entered into a *Plan Support Agreement* (as modified, amended or supplemented from time to time, the "Plan Support Agreement") in support of the *Amended Joint Plan of Reorganization of Energy Future Holdings Corp. et al., pursuant to Chapter 11 of the Bankruptcy Code*, as modified and filed with the Bankruptcy Court on August 5, 2016 [D.I. 9199] (as modified, amended or supplemented from time to time, the "NextEra Plan").

7.     By motion dated August 3, 2016 (the "Approval Motion"), the Debtors sought approval of their entry into the Plan Support Agreement and the Merger Agreement.

8.     In the Approval Motion, the Debtors not only sought approval of the Merger Agreement generally, but also explicitly sought a ruling approving the Termination Fee.

9.     On September 19, 2016, the Court held a full evidentiary hearing concerning approval of the Merger Agreement and Plan Support Agreement (the "Approval Hearing").

10.     Following the close of argument at the Approval Hearing, the Court entered its *Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* [D.I. 9584] (the "Termination Fee Approval Order"), overruling any remaining objections on the merits and approving the Termination Fee.  The Court ruled that "the EFH/EFIH Debtors are authorized and directed to pay the Termination Fee as an allowed administrative expense to the extent it becomes due and payable pursuant to the terms and conditions of the Merger Agreement, at the time and in the manner provided for therein, without any further proceedings before, or order of, the Court . . . ."[4]

11.     On February 17, 2017, the Court confirmed the NextEra Plan, entering its *Order Confirming the Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Relates to the EFH Debtors and EFIH Debtors* [D.I. 10859].

12.     Following entry of the Termination Fee Approval Order, NextEra expended massive resources and efforts in seeking to obtain approval from the Public Utility Commission of Texas (the "PUCT") and to close the transaction.  Nevertheless, on March 30, 2017, PUCT Commissioner Anderson released a memorandum stating that he was inclined to deny approval of the transaction because he viewed strict ring-fencing of Oncor as essential, and was aware that NextEra was not obligated to, and would not, accept such burdensome conditions.  Later that day, during an open meeting of the PUCT, the other PUCT Commissioners indicated that they shared Commissioner Anderson's concerns.  On April 13, 2017, the PUCT held a brief open meeting and thereafter issued a final order that denied approval of the proposed transactions.

13.     Following the PUCT's order, NextEra filed motions for rehearing (which, under

---

[4]    Termination Fee Approval Order ¶ 4.

applicable Texas law, were required steps before the PUCT's order could be challenged in court). These motions were fully supported by the Debtors, who submitted *amicus* briefs urging the PUCT to reverse its decision and approve the transaction. When those efforts proved unsuccessful, NextEra continued its efforts to obtain regulatory approval by filing an appeal of the PUCT's decision with the Travis County District Court.

14.     On July 6, 2017, thirteen days after the occurrence of the Merger Agreement's "drop dead" date, but with NextEra continuing in earnest to pursue regulatory approval, the Debtors terminated the Merger Agreement without any prior notice to NextEra. The following day, the Debtors terminated the Plan Support Agreement. Immediately thereafter, the Debtors pivoted to a fully signed transaction pursuant to which Berkshire Hathaway Energy Company and related entities (collectively, "Berkshire") would acquire Oncor.

15.     On July 29, 2017—more than ten months after the Court approved the Termination Fee—Elliott Associates L.P and certain affiliated entities filed a *Motion to Reconsider in Part the September 19, 2016 Order [Dkt. No. 9584] Approving the NextEra Termination Fee* [D.I. 11636] (the "Reconsideration Motion").

16.     On July 31, 2017, NextEra filed its *Application of NextEra Energy, Inc. for Payment of Administrative Claim* [D.I. 11649], seeking payment of the Termination Fee upon the consummation of the Berkshire transaction or any other alternative transaction (the "Application").

17.     On August 2, 2017, the Debtors commenced an adversary proceeding against NextEra (the "Adversary Proceeding"), seeking a declaration that the Termination Fee would not become due and payable.

18.     On August 23, 2017, the Debtors abandoned the proposed transaction with Berkshire and proposed the current Plan, in which Sempra Energy would indirectly acquire

Oncor.

19.      On September 6, 2016 the Court entered an order approving the disclosure statement for the Plan, authorizing the Debtors to solicit acceptances in respect of the Plan, and establishing notice and objection procedures for confirmation of the Plan [D.I. 11870] (the "Disclosure Statement Order").  Among other things, the Disclosure Statement Order requires parties that wish to submit "final" objections to the Plan (at a date that remains to be determined), to submit "preliminary" objections by October 30, 2017.

20.      On September 7, 2017, the Debtors and NextEra filed objections to the Reconsideration Motion.

21.      On September 19, 2017, the Court held a hearing on, among other things, the Reconsideration Motion.  Following argument on the Reconsideration Motion, the Court issued a tentative ruling, indicating that it would grant the Reconsideration Motion because "the Court's decision was based on the serious misapprehension of the facts that constitutes manifest error."[5]

22.      On October 18, 2017, the Court entered its order granting the Reconsideration Motion [D.I. 12075] (the "Reconsideration Order").  The Court, through the Reconsideration Order, also dismissed the Application and stayed the Adversary Proceeding.

23.      On October 30, 2017, NextEra filed its notice of appeal of the Reconsideration Order.

## RELIEF REQUESTED

24.      NextEra requests that the Court condition confirmation of the Plan on the establishment of a reserve in respect of NextEra's disputed Termination Fee, in the amount of $275 million.

---

[5]    Hr'g Tr. Sept. 19, 2017 48:8-10.

## ARGUMENT

25.    A plan of reorganization cannot be confirmed unless it provides for payment in full, in cash, on the effective date, of all allowed administrative expense claims. *See* 11 U.S.C. §§ 503(b), 1129(a)(9)(A); *see also In re Hechinger Inv. Co. of Delaware*, 298 F.3d 219, 224 (3d Cir. 2002) ("[i]n a Chapter 11 case, a court cannot confirm a distribution plan unless the plan provides full cash payment of all § 503(b) administrative expense claims or the claim holder agrees to different treatment."). Consistent with this requirement, the Plan provides that, "unless the Holder of an Allowed General Administrative Claim and the Debtors or the Reorganized EFH/EFIH Debtors, as applicable, agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will receive, in full satisfaction of its General Administrative Claim, Cash equal to the amount of such Allowed General Administrative Claim . . . ." Plan Art. II.A.1. As required by the Bankruptcy Code, the Plan provides for this payment to occur "on the Effective Date." *Id.* However, in recognition of the fact that certain administrative expense claims may not be Allowed (or disallowed) by a Final Order as of the Effective Date, the Plan further provides that "if the General Administrative Claim is not Allowed as of the EFH Effective Date," the Debtors shall pay such claims within "60 days after the date on which an order allowing such General Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable . . . ." *Id.*

26.    The Plan does not, however, provide any assurance that sufficient cash will be retained by the Debtors' estates to ensure that all General Administrative Claims Allowed after the Effective Date are paid as required by the Plan. Instead, the Plan simply provides that distributions to unsecured creditors shall not be made until "the EFIH Debtors have made determinations with respect to," among other things, whether "sufficient reserves are in place to fund (1) General Administrative Claims Against the EFIH Debtors . . . ." Plan Art. VI.A. In

other words, the Plan currently provides that the estates' remaining cash may be distributed to unsecured creditors on the Effective Date if the Debtors "determine" that they have reserved sufficiently for General Administrative Claims that may become Allowed after the Effective Date. The Plan establishes no mechanism for challenging the Debtors' apparently unilateral determinations on this issue or for protecting holders of General Administrative Claims that become Allowed after the Effective Date if the Debtors' determinations regarding the appropriate amount of reserves are insufficient.

27.     As a result of the Reconsideration Order, the Termination Fee is not an Allowed General Administrative Claim. However, it may become an Allowed General Administrative Claim. NextEra has appealed the Reconsideration Order. If NextEra is successful in that appeal and overcomes any further objections to payment of the Termination Fee (and assuming the Debtors are ultimately able to close an alternative transaction), the Termination Fee will become an Allowed General Administrative Claim notwithstanding the Court's previous disallowance of the claim. Indeed, the Plan's definition of the term "Allowed" specifically includes all claims or interests that are "upheld or otherwise allowed . . . by Final Order (*including any such Claim to which the Debtors had objected or which the Bankruptcy Court had disallowed prior to such Final Order*)." Plan Art. I.A.16 (emphasis added).

28.     Thus, by the Plan's own terms, and as required by the Bankruptcy Code, the Termination Fee will become an Allowed General Administrative Claim and the Debtors will be required to pay the full amount of the Termination Fee if and when NextEra prevails, even if that occurs well-after the Effective Date. The Debtors, however, have made no commitment that they will voluntarily "determine" to reserve cash pursuant to Article VI.A of the Plan for payment of the Termination Fee, leaving a very real prospect that they will be unable to meet their obligations to NextEra under the Plan and the Bankruptcy Code. To avoid that situation,

confirmation of the Plan should be conditioned on the Debtors reserving in full for payment of the Termination Fee, as is regularly required with respect to disputed administrative expense claims. *See, e.g., In re Spansion, Inc.*, 426 B.R. 114, 146 (Bankr. D. Del. 2010) ("the Debtors can satisfy the confirmation requirement of § 1129(a)(9)(A) by setting aside a reserve in the amount of [creditor's] estimated claim"); *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 419 (Bankr. S.D.N.Y. 2003) (requiring the debtors to set aside a reserve for a creditor's disputed administrative expense claim before a plan of reorganization could go effective.).

29.    Establishing the required reserve will impose only a limited burden on creditors. In the event that NextEra is ultimately unsuccessful in achieving Allowance of the Termination Fee, reserved funds can be easily distributed to creditors in a supplemental distribution. Moreover, NextEra is working to minimize any potential burden by seeking to ensure that the dispute is resolved as quickly as possible, including by seeking direct review of the Reconsideration Order by the Third Circuit. In contrast, the alternative—allowing the funds to be dissipated among unsecured creditors—would impose a substantial burden on NextEra by forcing it to pursue creditors or the Reorganized Debtors for payment of the Termination Fee and thus impermissibly shifting the burden of collection to NextEra.[6] *See In re Spansion, Inc.*, 426 B.R. at 146 (requiring a reserve for a disputed administrative expense claim because "the Code grants a right to priority of payment to administrative claimants. This priority should not be subject to the risk that the newly reorganized debtor lacks the funds or the motivation to resolve the outstanding dispute.").

---

[6]    Although NextEra would possess the right to seek such disgorgement as a matter of common law, the Plan should also be amended to make clear that NextEra will be entitled to disgorgement from unsecured creditors, or to recover from the Reorganized Debtors, to the extent necessary to satisfy the Debtors' ultimate obligations in respect of the Termination Fee.

## RESERVATION OF RIGHTS

30.    This Preliminary Objection is preliminary in all respects.  NextEra expressly reserves all rights, *inter alia*, to: object to the Plan on any and all grounds, regardless of whether or not addressed herein; complement, supplement, augment, alter or modify this Preliminary Objection; file any appropriate motion; and conduct any discovery that NextEra deems appropriate.

## CONCLUSION

Wherefore, NextEra requests that the Court condition confirmation of the Plan on the establishment of a reserve in respect of NextEra's disputed Termination Fee, in the amount of $275 million.

Dated: October 30, 2017
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Joseph D. Wright (No. 5669)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:    (302) 467-4400
Facsimile:    (302) 467-4450
Email:  landis@lrclaw.com
       mcguire@lrclaw.com
       wright@lrclaw.com

– and –

NORTON ROSE FULBRIGHT US LLP
Howard Seife (admitted *pro hac vice*)
Andrew Rosenblatt (admitted *pro hac vice*)
Eric Daucher (admitted *pro hac vice*)
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone:     (212) 408-5100
Facsimile:     (212) 541-5369
Email: howard.seife@nortonrosefulbright.com
        andrew.rosenblatt@nortonrosefulbright.com
        eric.daucher@nortonrosefulbright.com

Robin Ball (admitted *pro hac vice*)
555 South Flower Street, 41st Floor
Los Angeles, California 90071
Telephone:     (213) 892-9200
Facsimile:     (213) 892-9494
Email: robin.ball@nortonrosefulbright.com

– and –

WINSTON & STRAWN LLP
Dan K. Webb (admitted *pro hac vice*)
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone:     (312) 558-5600
Facsimile:     (312) 558-5700
Email: dwebb@winston.com

Thomas M. Buchanan (admitted *pro hac vice*)
1700 K Street, NW
Washington, D.C. 20006
Telephone:     (202) 282-5000
Facsimile:     (202) 282-5100
Email: tbuchana@winston.com

*Counsel to NextEra Energy, Inc.*