# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## SUMMARY COVER SHEET TO THE EIGHTH INTERIM APPLICATION OF SOLIC CAPITAL ADVISORS, LLC, FINANCIAL ADVISOR FOR DEBTOR ENERGY FUTURE HOLDINGS CORP., FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED

| Name of Applicant: | SOLIC Capital Advisors, LLC ("<u>SOLIC</u>") |
|---|---|
| Authorized to provide professional services to: | Energy Future Holdings Corp. (the "<u>Debtor</u>") |
| Date of retention: | Retention order entered on February 6, 2015 (effective as of December 18, 2014) [D.I. 3467] |
| Period for which compensation and reimbursement is sought: | May 1, 2017 through August 31, 2017 |
| Amount of compensation sought as actual, reasonable and necessary: | $378,412.50 |
| Amount of expense reimbursement sought as actual, reasonable and necessary: | $1,217.40 |

This is a __ monthly _X_ interim __ final application. Seven prior applications filed.[2]

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Notice of this interim fee application shall be served in accordance with the Interim Compensation Order (as defined herein) and Fee Committee Order (as defined herein) and objections, if any, to the monthly fee statement shall be addressed in accordance with the Interim Compensation Order and Fee Committee Order.

**_Prior Statements, Applications and Allowances_**

| Fee Statement Period Covered | Docket No. | Fees Requested | Fees Paid or to be Paid | Holdback (20%) | Expenses Requested | Expenses Paid or to be Paid (100%) |
|---|---|---|---|---|---|---|
| **_First Interim Fee Application_** December 18, 2014 through April 30, 2015 | 4892 | $ 890,322.58 | $ 890,322.58 | $0.00 | $ 41,787.51 | $ 41,459.01 [1] |
| **_Second Interim Fee Application_** May 1, 2015 through August 31, 2015 | 6509 | $ 800,000.00 | $ 800,000.00 | $0.00 | $ 27,676.85 | $ 27,676.85 |
| **_Third Interim Fee Application_** September 1, 2015 through December 31, 2015 | 7864 | $ 800,000.00 | $ 800,000.00 | $0.00 | $ 13,709.16 | $ 13,709.16 |
| **_Fourth Interim Fee Application_** January 1, 2016 through April 30, 2016 | 8752 | $ 800,000.00 | $ 800,000.00 | $0.00 | $ 24,173.43 | $ 23,323.38 [2] |
| **_Fifth Interim Fee Application_** May 1, 2016 through August 31, 2016 | 9843 | $ 800,000.00 | $ 800,000.00 | $0.00 | $ 11,149.42 | $ 11,149.42 |
| **_Sixth Interim Fee Application_** September 1, 2016 through December 31, 2016 | 10999 | $800,000.00 | $640,000.00 | $0.00 | $ 3,742.09 | $ 3,742.09 |
| _January 1, 2017 through January 31, 2017_ | 11168 | $200,000.00 | $160,000.00 | $40,000.00 | $ - | $ - |
| _February 1, 2017 through February 28, 2017_ | 11207 | $200,000.00 | $160,000.00 | $40,000.00 | $ - | $ - |
| _March 1, 2017 through March 31, 2017_ | 11248 | $200,000.00 | $160,000.00 | $40,000.00 | $ - | $ - |
| _April 2, 2017 through April 30, 2017_ | 11288 | $200,000.00 | $160,000.00 | $40,000.00 | $ - | $ - |
| **_Seventh Interim Fee Application_** _January 1, 2017 through April 30, 2017_ | | $800,000.00 | $640,000.00 | $160,000.00 | $ - | $ - |
| _May 1, 2017 through May 31, 2017_ | 11623 | $200,000.00 | $160,000.00 | $40,000.00 | $ 1,217.40 | $ 1,217.40 |
| _June 1, 2017 through June 30, 2017_ | 11792 | $41,701.50 | $33,361.20 | $8,340.30 | $ - | $ - |
| _July 1, 2917 through July 31, 2017_ | 11930 | $80,478.00 | $64,382.40 | $16,095.60 | $ - | $ - |
| _August 1, 2017 through August 31, 2017_ | 12065 | $56,233.00 | $44,986.40 | $11,246.60 | $ - | $ - |
| **_Eighth Interim Fee Application_** _May 1, 2017 through August 31, 2017_ | | $378,412.50 | $302,730.00 | $75,682.50 | $ 1,217.40 | $ 1,217.40 |
| **SUBTOTAL** | | **$ 6,068,735.08** | **$ 5,673,052.58** | **$235,682.50** | **$ 123,455.86** | **$ 122,277.31** |

[1] This amount represents an agreed upon proposed reduction of the expenses encompassed in the First Interim Fee Application [Doc 4892] in the amount of $328.50

[2] This amount represents an agreed upon proposed reduction of the expenses encompassed in the Fourth Interim Fee Application [Doc 8752] in the amount of $850.05

**SUMMARY OF PROFESSIONAL SERVICES RENDERED**

SOLIC professionals rendering services during the Month of May were:

| NAME OF PROFESSIONAL | TITLE | TOTAL HOURS BILLED |
|---|---|---|
| Neil Luria | Sr. Managing Director | 17.00 |
| Raoul Nowitz | Managing Director | 140.50 |
| Matt Cumbee | Associate Director | 3.00 |
| **TOTAL** | | **160.50** |
| **$200,000.00 Monthly Fixed Fee** | | |

For the month of May 2017, SOLIC did not charge hourly rates to the Debtor in accordance with its retention in this Case and had no hourly rates associated with these professionals in this case until June 1, 2017 when SOLIC's retention was amended as provided forin the original Retention Order per the Supplemental Declaration of Neil F. Luria filed with the Bankruptcy Court on May 25, 2017 to provide that SOLIC would be paid on an hourly basis. .

SOLIC professionals rendering services on an hourly basis during the Months of June through

August:

| NAME OF PROFESSIONAL | TITLE | TOTAL HOURS BILLED | HOURLY RATE | TOTAL FEES BILLED |
|---|---|---|---|---|
| Neil Luria | Sr. Managing Director | 13.90 | $825.00 | $11,467.50 |
| Raoul Nowitz | Managing Director | 172.50 | $695.00 | $119,887.50 |
| Paul Hogan | Director | 3.50 | $575.00 | $2,012.50 |
| Matt Cumbee | Associate Director | 85.80 | $525.00 | $45,045.00 |
| **TOTAL** | | **275.70** | | **$178,412.50** |

Beginning on June 1, 2017, the structure of SOLIC's fee arrangement changed from a Monthly Fixed Fee rate to an hourly one as described above.  As such, the hourly rates and total fees billed are reflected in the above schedule.

| Dates of Service | Fees |
|---|---|
| May 1 – May 31, 2017 | $200,000.00 |
| June 1 – August 31, 2017 | $178,412.50 |
| **TOTAL FEES REQUESTED** | **$378,412.50** |

**SUMMARY OF HOURS EXPENDED BY SUBJECT MATTER**

| TASK DESCRIPTION | TOTAL HOURS |
|---|---|
| 705 -Plan Development & Testimony Review & Analysis | 103.3 |
| 711 – Retention Revision Matter | 6.5 |
| 718 - Meeting with Counsel & with other Constituents | 19.5 |
| 725 - Dataroom and Diligence Materials Review[i] | 93.9 |
| 729 - EFH Board Meeting Attendance | 17.2 |
| 730 - Project Management and Support | 11.0 |
| 749 – Financial Analysis Related to Potential Conflict Matters | 154.7 |
| 750 – Travel Time | 8.0 |
| 795 - Fee Applications/Retention Application | 22.1 |
| Total | 436.2 |

**SUMMARY OF ACTUAL AND NECESSARY EXPENSES INCURRED**

| EXPENSE CATEGORY | AMOUNT |
|---|---|
| Airfare | $603.40 |
| Ground Transportation | $216.87 |
| Hotels & Lodging | $323.65 |
| Meals | $40.00 |
| Mileage | $33.48 |
| **TOTAL** | **$1,217.40** |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**EIGHTH INTERIM APPLICATION OF SOLIC CAPITAL ADVISORS, LLC, FINANCIAL
ADVISOR FOR DEBTOR ENERGY FUTURE HOLDINGS CORP., FOR COMPENSATION
FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM
MAY 1, 2017 THROUGH AUGUST 31, 2017**

SOLIC Capital Advisors, LLC ("SOLIC"), financial advisor for Energy Future Holdings

Corp. ("EFH Corp." or the "Debtor"), hereby submits this application (the "Fee Application"),

pursuant to sections 327(a), 328(a), 330 and 331 of title 11 of the United States Code (the

"Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), Rules 2016-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of

the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"),

the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses

for Professionals* dated September 16, 2014 [D.I. 2066] (the "Interim Compensation Order"),

and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee

Order"), for (a) interim approval and allowance of compensation for professional services

rendered in the amount of $378,412.50 from May 1, 2017 through August 31, 2017 (the "Fee

Period"); and (b) reimbursement of actual and necessary expenses in the amount of $1,217.40

incurred during the Fee Period.  In support of the Fee Application, SOLIC submits the

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of
the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these
chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their
federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on
the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

declaration of Neil F. Luria, which is attached hereto as **Exhibit A** and incorporated herein by reference.  In further support of the Fee Application, SOLIC respectfully represents as follows:

### Jurisdiction

1.      The Court has jurisdiction over the Fee Application under 28 U.S.C. §§ 157 and 1334.

2.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 327(a), 328(a), 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, Local Bankruptcy Rules 2016-1 and 2016-2, the Interim Compensation Order, and the Fee Committee Order.

### Background

5.      On April 29, 2014 (the "Petition Date"), EFH Corp. and each of its above-captioned debtor and debtor-in-possession affiliates (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an order for the joint administration of these chapter 11 cases.  The Court has not appointed a trustee or examiner in these chapter 11 cases.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed (a) an official committee of unsecured creditors representing the interests of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") in these chapter 11 cases on May 13, 2014 [D.I. 420] and (b) an official committee of unsecured creditors representing the interests of EFH Corp., Energy Future Intermediate Holding Company LLC,

EFIH Finance, Inc. and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration [D.I. 98] of Paul Keglevic in support of the Debtors' first day motions.

6.    On August 21, 2014, the Court entered the Fee Committee Order, which appointed a fee committee (the "Fee Committee") to, among other things, review and report as appropriate on all interim and final fee applications filed by professionals retained under sections 105, 327, 363 or 1103 of the Bankruptcy Code, in accordance with sections 328, 330 and 331 of the Bankruptcy Code and the Interim Compensation Order.

7.    On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all retained professionals in these chapter 11 cases.

### EFH Corp.'s Retention of SOLIC

8.    EFH Corp. sought approval of this Court to retain SOLIC as financial advisor, pursuant to sections 327(a), 328(a) and 330 of the Bankruptcy Code, by application filed on January 16, 2015 [D.I. 3324] (the "SOLIC Retention Application"). As set forth in the SOLIC Retention Application and SOLIC's engagement letter, EFH Corp. engaged SOLIC to render professional services to EFH Corp.'s disinterested directors (the "Disinterested Directors") in connection with Conflict Matters (used herein as such term is defined in and pursuant to the authority delegated to EFH Corp.'s Disinterested Directors pursuant to resolutions of EFH Corp.'s board of directors) and in determining whether a matter constitutes a Conflict Matter, reporting to and at the direction of EFH Corp.'s Disinterested Directors. SOLIC's retention was approved by this Court by order dated February 6, 2015 [D.I. 3467] (the "Retention Order"), effective *nunc pro tunc* to December 18, 2014. A true and correct copy of the Retention Order is attached hereto as **Exhibit B**. The Retention Order provides that SOLIC's compensation is

approved pursuant to section 328 of the Bankruptcy Code, subject to the terms of the Retention Order.

9.      As is typical of financial advisory firms, SOLIC prior to June 1, 2017 was not compensated by the hour, but through fixed fees through a portion of the fee period[2].   The Retention Order authorized EFH Corp. to compensate SOLIC as set forth in its engagement letter, consisting of (a) a $200,000 monthly fixed fee payment (pro-rated for any periods less than a month) and (b) reimbursement of reasonable and documented out-of-pocket expenses (including all fees of counsel), subject to any limitations or modifications as set forth in the Retention Order.   The fixed fee charged by SOLIC is typical for SOLIC's engagements both inside and outside of bankruptcy.   Although SOLIC typically also is provided an "incentive fee" or "success fee" in addition of fixed fees in other engagements both inside and outside of bankruptcy, SOLIC has not sought such a fee in this case.

10.     In light of the circumstances of EFH Corp.'s chapter 11 case and the desire to limit costs going forward, Donald L. Evans and Billie I. Williamson, EFH Corp.'s disinterested directors, on behalf of EFH Corp., and SOLIC agreed to a change in fee structure, effective June 1, 2017, to provide that, in lieu of the Monthly Fee, SOLIC would be compensated on an hourly basis, subject to any objections and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of the Court. All other provisions remain unmodified and in full force and effect. Such amendment was described in the Supplemental Declaration of Neil F. Luria filed on May 26, 2017 with the Bankruptcy Court which is attached hereto as **Exhibit C**.  No objection has been raised to the supplemental declaration announcing the change in fee structure, dated May 25, 2017 and attached hereto as **Exhibit C**.

---

[2] Prior to the Supplemental Declaration of Neil F. Luria of SOLIC Capital Advisors, dated 05/26/2017

**Summary of Professional Compensation and Reimbursement of Expenses**

**Requested**

11.    This Fee Application has been prepared in accordance with the Interim Compensation Order and the Fee Committee Order.

12.    By this Fee Application, SOLIC seeks: (a) approval and allowance of compensation for professional services rendered by SOLIC as financial advisor for EFH Corp. during the Fee Period in the amount of $378,412.50; and (b) reimbursement of actual and necessary expenses incurred by SOLIC in connection with rendering professional services to EFH Corp. during the Fee Period of $1,217.40.

13.    Pursuant to the Interim Compensation Order, SOLIC has already received payment, or has filed fee statements and is awaiting payment, from EFH Corp. in the amount of $302,730.00, which represents 80% of SOLIC's fees for the Fee Period, and $1,217.40, which represents 100% of the expenses invoiced for the Fee Period.  Except as described in this Fee Application, SOLIC has not entered into any agreement with any other party for the purpose of fixing of sharing fees or other compensation to be paid for professional services rendered in EFH Corp.'s chapter 11 case.  No promises have been received by SOLIC or any member thereof as to compensation in connection with EFH Corp.'s chapter 11 case other than in accordance with the provisions of the Bankruptcy Code.

14.    SOLIC's fees for this Fee Period are in accordance with the agreed-upon terms for this period set forth in the SOLIC Retention Application as outlined in the SOLIC Retention Order and the Amended Retention Order.  .

15.     During the Fee Period, SOLIC's professionals spent an aggregate of 436.2 hours performing services for EFH Corp. in connection with its chapter 11 case.

16.     SOLIC's fees for the services rendered are reasonable and appropriate given the complexity of the matter and the level of expertise required to best serve EFH Corp.  In particular, the depth and complexity of the issues involved in EFH Corp.'s chapter 11 case and the sophistication and breadth of expertise necessary to successfully guide EFH Corp. through its chapter 11 case, is best served by employing a financial advisor with SOLIC's sophistication, experience, and expertise in handling large and complex matters for corporations.  SOLIC believes that its fees are comparable to the fees charged by other highly skilled practitioners experienced in advising clients with large, complex operations while in chapter 11.

**Proposed Payment Allocation**

17.     Pursuant to paragraph 8 of the Retention Order, absent an order of the Court, the fees and expenses incurred by SOLIC are paid by EFH Corp.  As such, no allocation pursuant to paragraph 2(b) of the Interim Compensation Order is applicable.

**Summary of Professional Services Rendered**

18.     SOLIC has structured its time records using its internal system of project codes. The following descriptions provide a summary of the primary services rendered by SOLIC during the Fee Period with respect to each project code.  Given the scope of the work performed, these summaries do not cover all work performed but instead highlight the major areas of work. Descriptions of the day-to-day services provided by SOLIC and the time expended performing such services in each project category are attached hereto as **Exhibit D**.  Such descriptions demonstrate that SOLIC was heavily involved in the performance of services for EFH Corp. on a

daily basis, including night and weekend work, often under extreme time constraints, to meet the needs of EFH Corp. in its chapter 11 case.

**A.  Plan Development and Testimony Review and Analysis (103.3 Hours)**

19.  This category centers around the critical and necessary need for SOLIC to monitor the impact of Plan matters as it relates to EFH Corp. treatment and potential Conflicts Matters, and includes review of restructuring proposals, as applicable, as well as meetings with constituents regarding plan formulation, review of plan proposals and term sheets, review of PUCT materials, including but not limited to, PUCT Advocacy Plan materials, review of PUC amicus brief and related court filings, and analysis of proposed settlements of Conflict Matters. These procedures were all necessary during the fee period to ensure that elements specifically pertaining to the EFH Corp. Plan were being actively monitored including the identification and action of elements insofar as they relate to Conflict Matters.   This category also includes, but is not limited to, the review of relevant filings and motions filed on the bankruptcy court docket as it relates to financial developments and related impacts, deposition and court testimony transcript review related to various parties, including, but not limited to,  the J. Rosenbaum (Elliot Management), Chuck Cremens (EFIH Disinterested Director), and D. Prager (Goldin & Associates) depositions during August 2017 insofar as their respective testimony impacts on Conflicts Matters, review of various potential strategic alternatives from an EFH cash and overall value recovery standpoint, and review of relevant financial analyses associated with recovery analyses. This category also included the review of materials provided to the Board of Directors ahead of Board calls, and the review of materials, letters, objections, and relevant notices pertaining to termination fee matters, insofar as these relate to Conflicts Matters and a primary area of attention for many constituents during the fee period. Significant time also spent during the fee period addressing Plan elements associated with termination fee matters, at times at the

direction of counsel. Furthermore, during the fee period, SOLIC spent time tracking, monitoring and reviewing elements of the Berkshire Hathaway Energy bid and the Sempra Energy bid as related to elements of recovery impacting the EFH Corp estate. The review of the latest versions of the Disclosure Statement was an additional area undertaken by SOLIC staff, a necessary area of review as elements insofar as they related to Conflicts matters were embodied therein.

### B.  Retention Revision Matter (6.5 Hours)

20.    This category relates to the work required by SOLIC Capital Advisors in potential work plan revisions related to the change in SOLIC's fee arrangement starting from June 1, 2017. This included a review of SOLIC's Declaration for its on-going role as well as communications with the working team and counsel pertaining to same.

### C.  Meeting with Counsel and with Other Constituents (19.5)

21.    This category includes telephonic meetings with counsel to EFH pertaining to Conflict Matters and calls with Evercore pertaining to developments and assumptions regarding various aspects of Elliott Management proposals that were made during the fee period, creditor claim assumptions and latest developments all insofar as they relate to EFH Corp. recoveries and potential Conflicts Matters.  This category also includes, telephonic meetings and follow-up with Proskauer Rose including discussions related to on-going case developments related to Conflict Matters, NextEra Energy termination fee matters and other related analyses that impact EFH cash at emergence as well as status updates on depositions, next steps, and areas for attention and review as it pertains to potential Conflicts Matters.  Finally, this category also includes calls attended with financial advisors and counsel to various creditor groups, and related follow-up on same.

### D.  Dataroom and Diligence Materials Review (93.9 Hours)

22.  This category remains central to the ongoing work performed by SOLIC as it addresses the important and necessary task of tracking and monitoring of EFH Corp. cash, the primary form of recovery to EFH claimants, based on recent Plan proposals received. The work performed includes, but is not limited to, the download, review and related analysis of materials posted to the debtors' dataroom, and follow-up with the Debtors' professionals pertaining to (i) items posted to the dataroom and (ii) follow-up information being sought in the dataroom, and (iii) items previously posted to the dataroom requiring additional review and revisiting by the SOLIC team.  Key areas of focus include, but are not limited to, (i) updates to EFH Corp. pre-emergence cash projections provided directly to SOLIC and/or included in Board materials including run-rate on professional fee spend and timing of tax receipts, (ii) cash deductions and adjustments as of various emergence dates to reflect net cash at emergence available to EFH Corp. claimants, (iii) allocation of professional fees to the EFH Corp. estate including the assessment of reasonableness of allocations in the event certain professionals provide services across multiple Debtor estates, (iv) review of cash proceeds pertaining to the sale of ancillary EFH Corp. assets, (v) review of Monthly Operating Reports and Finance Operating Reports as provided to the Board including reconciliation to opening balances of cash projections and variance analysis of actual results vs. forecasted results, (vi) review of expert reports produced by various financial advisors, including but not limited to, E-side liquidation analyses and reports forecasting the E-side asbestos liability, (vii) review of Debtor-prepared recovery financial analyses,  (viii) other ancillary financial reports such as financial details included in PUCT filings, and (ix) review of restructuring workshop materials provided to the Board in May 2017. SOLIC's review of the allocation and monitoring of EFH Corp. specific cash, and the impacts insofar as it related to Conflict Matters, continues to be an essential element of SOLIC's work up to and during the Eighth Interim Fee period, SOLIC has, to date, provided a range of questions covering, but not limited, to the above categories with a focus on the reasonableness of EFH Corp. emergence cash available for distribution with a focus on elements insofar as they may relate to Conflict Matters. As

mentioned above, SOLIC's procedures have also included the review of responses received from management and SOLIC, in turn, has followed-up with additional questions as necessary. The monitoring and tracking of projected cash at the emergence date continues to be essential in providing the necessary context to how recoveries to EFH Corp. creditors are projected at various emergence date, and specific recoveries allocable to the various creditor groups within EFH Corp.

**E.  EFH Board Meeting Attendance (17.2 Hours)**

23. This category includes the time spent by SOLIC's professionals attending in-person and telephonic EFH Corp. board meetings, including engaging in pre-meeting preparation, and post-Board meeting follow-up with SOLIC's attention on matters insofar as they relate to Conflicts Matters.

**F.  Project Management and Support (11.0 Hours)**

24.  This category includes key elements of project management on the engagement including work plan development and internal discussion pertaining to same, as well as general review and research of case filings, addressing SOLIC team's budgeting matters, fee statement review and assessment of prospective workplan matters.

**G.  Financial Analysis Related to Potential Conflict Matters (154.7 Hours)**

25.  During the fee period, Counsel to the EFH Corp. Disinterested Directors tasked SOLIC to perform various financial analyses and provide various iterations and revisions to these financial analyses associated with termination fees allocations and professional fees allocations, insofar as these each relate to Conflicts Matters. This category includes the actual and necessary time spent undertaking the development and review of various financial analyses pertaining to termination fee allocation analytics. These analyses were at the request of Proskauer Rose, and included internal review and updating of SOLIC-developed analyses on NextEra Energy termination fee allocation analyses, including related analyses regarding the

distribution of EFH Corp cash to its' creditors under various Plan scenarios and discussions related to the cash balance information as reflected on various Disclosure Statements. This category also included drafting of communications to Proskauer Rose pertaining to feedback from Evercore and from diligence performed by SOLIC pertaining to insights to certain cash information in the Disclosure Statement as well as review of EFH MOR and analysis related thereto.

**H.  Travel Time (8.0 Hours)**

26.    This category includes required travel by select SOLIC professionals to attend in-person meetings during the Eighth Interim Fee Application period for status update meetings and discussions on elements with Evercore on 05/25/2017 pertaining to matters insofar as they relate to Conflicts Matters pertaining to EFH Corp.

**I.  Fee Applications/Retention Applications (22.1 Hours)**

27.    This category includes the required preparation of monthly fee statements, preparation of monthly budgets for submission to the Fee Committee, and interim fee applications, as well as the review and preparation of responses to inquiries made by parties of interest, including the Fee Committee.

## Allowance of Compensation

28.    The foregoing professional services rendered by SOLIC on behalf of EFH Corp. during the Fee Period were reasonable, necessary and appropriate to the administration of EFH Corp.'s chapter 11 case and related matters and in the best interests of EFH Corp. and its estate. The compensation requested for the foregoing services is commensurate with the complexity, importance and nature of the problems, issues and tasks involved. The professional services were performed expediently and in an efficient manner.

29.  During the Fee Period, the professional services performed by SOLIC on behalf of EFH Corp. required an aggregate expenditure of 436.2 hours by SOLIC professionals and a fair market value of $378,412.50.  As demonstrated by this Fee Application, SOLIC's services were rendered economically and without unnecessary duplication of efforts.  In addition, the work involved and the time expended was carefully assigned in consideration of the experience and expertise required of each particular task.

### Actual and Necessary Expenses Incurred by SOLIC

30.  SOLIC seeks reimbursement of $1,217.40 on account of expenses incurred in performing professional services during the Fee Period.  SOLIC records all expenses incurred in connection with the performance of professional services and a detailed descriptions of these expenses were attached to and filed as exhibits to the monthly fee statements submitted during the Fee Period – see attached hereto as **Exhibit E**.

31. SOLIC seeks reimbursement only for the actual cost of such expenses to SOLIC. Throughout the Fee Period, SOLIC has been cognizant of cost considerations and has tried to minimize the expenses charged to the EFH Corp.'s estate.  SOLIC respectfully submits that the actual expenses incurred, except where limits have been set forth by the Fee Committee (with hotels not being reimbursable in New York City above $500 or above $350 in an all other locations, meals being capped at $40 per person per meal and cars to and from an airport being capped at $100 in New York City, $75 in Dallas and $75 in Chicago) in providing professional services during the Fee Period and billed to EFH Corp. were necessary, reasonable and justified under the circumstances to serve the needs of EFH Corp. in its chapter 11 case.

**The Requested Compensation Should be Allowed**

32. SOLIC respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Fee Application were necessary for and beneficial to EFH Corp.'s orderly administration of its estate and its efforts in its chapter 11 case. SOLIC worked diligently to anticipate or respond to EFH Corp.'s needs and assist in EFH Corp.'s chapter 11 case. SOLIC's services and expenditures were necessary to, and in the best interests of, EFH Corp.'s estate and creditors. SOLIC submits further that the services its professionals and paraprofessionals provided for EFH Corp. were performed economically, effectively and efficiently, and that the results obtained to date have benefited not only EFH Corp. but all stakeholders in its chapter 11 case. The services provided by SOLIC were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved. Accordingly, SOLIC respectfully submits that the compensation requested herein is reasonable in light of the nature, extent and value of such services to EFH Corp., its estate and all parties in interest.

**Reservation of Rights**

33. It is possible that some expenses incurred during the Fee Period are not reflected in the Fee Application. SOLIC reserves the right to include such amounts in future fee applications.

**Notice**

34. SOLIC provided notice of this Fee Application to: (a) the Debtor; (b) co-counsel to the Debtors, Kirkland & Ellis LLP; (c) co-counsel to the Debtors, Richards, Layton & Finger, P.A.; (d) the Office of the United States Trustee; (e) counsel for the agent of the EFIH First Lien

DIP Financing Facility; (f) counsel for the agent of the TCEH DIP Financing Facility; (g) counsel to the TCEH Creditors' Committee; (h) counsel to the EFH Creditors' Committee; and (i) counsel to the Fee Committee (collectively, the "Notice Parties").  Pursuant to the Interim Compensation Order, any party, other than the Notice Parties, that wishes to object to the Fee Application, must file its objection with the Court, with a copy to Chambers and serve it on SOLIC and the Notice Parties so that it is actually received on or before December 19, 2017 at 4:00 p.m. (prevailing Eastern Time).

## No Prior Request

35. Other than the monthly fee statements, no prior request for the relief requested herein has been made to this or any other Court.

## Conclusion

WHEREFORE, SOLIC respectfully requests that the Court enter an order (i) awarding SOLIC the sum of $378,412.50 as compensation for services rendered and $1,217.40 for reimbursement of actual and necessary expenses SOLIC incurred during the Fee Period; (ii) that the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to SOLIC's right to seek additional compensation for services rendered and for expenses incurred during the Fee Period which were not processed at the time of this Fee Application; and (iii) granting such other and further relief as the Court deems appropriate.

Dated: November 28, 2017        /s/ Neil F. Luria
                                SOLIC Capital Advisors, LLC
                                Neil F. Luria, Senior Managing Director
                                1603 Orrington Avenue, Suite 1600
                                Evanston, Illinois 60201

## **Exhibit A**

[Declaration]

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## Verification of Neil F. Luria

1.      I am a Senior Managing Director and President of SOLIC Capital Advisors, LLC

("SOLIC"),[2] which maintains a central office at 1603 Orrington Avenue, Suite 1600, Evanston,

Illinois 60201.  I am one of the lead professionals from SOLIC working on EFH Corp.'s chapter

11 case.

2.      I have personally performed many of the services rendered by SOLIC as financial

advisor to EFH Corp. and am familiar with all other work performed on behalf of EFH Corp. by

SOLIC.

3.      The facts set forth in the foregoing Fee Application are true and correct to the best

of my knowledge, information and belief.

4.      I have reviewed Rule 2016-2 of the Local Rules of Bankruptcy Practice and

Procedures of the United States Bankruptcy Court for the District of Delaware and believe that

SOLIC's Fee Application complies with Rule 2016-2 to the extent not waived or otherwise

modified pursuant to the terms of the Retention Order.

---

[1]      The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]      Each capitalized term used but not otherwise defined herein shall have the meaning ascribed thereto in the *First Interim Application of SOLIC Capital Advisors, LLC, Financial Advisor for Debtor Energy Future Holdings Corp., for Compensation for Services Rendered and Reimbursement of Expenses Incurred from December 18, 2014 Through April 30, 2015* (the "Fee Application").

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: <u>November 28, 2017</u>          <u>*/s/ Neil F. Luria*</u>

                                        Name:  Neil F. Luria
                                        Title:   Senior Managing Director

**<u>Exhibit B</u>**

[Retention Order]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF SOLIC CAPITAL ADVISORS, LLC AS FINANCIAL ADVISOR FOR DEBTOR AND DEBTOR IN POSSESSION ENERGY FUTURE HOLDINGS CORP. EFFECTIVE *NUNC PRO TUNC* TO DECEMBER 18, 2014

Upon the application (the "Application")[2] of debtor and debtor in possession Energy Future Holdings Corp. ("EFH Corp.") for the entry of an order (this "Order") authorizing EFH Corp., under the supervision of its disinterested directors, Donald L. Evans and Billie I. Williamson, to retain and employ SOLIC Capital Advisors, LLC ("SOLIC") as financial advisor, effective *nunc pro tunc* to December 18, 2014, in connection with Conflict Matters as defined in and pursuant to the authority delegated to EFH Corp.'s disinterested directors pursuant to resolutions of the EFH Corp. Board of Directors attached to the Application as Exhibit B (the "Resolutions"), including the determination by EFH Corp.'s disinterested directors regarding whether any matter constitutes a Conflict Matter, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

District of Delaware (the "Local Bankruptcy Rules"); and the Court having reviewed the Application and the Declaration of Neil F. Luria, a Senior Managing Director and President of SOLIC (the "Luria Declaration"); and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found, based on the representations made in the Application and in the Luria Declaration, that (a) SOLIC does not hold or represent an interest adverse to EFH Corp.'s estate and (b) SOLIC is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having determined that the terms and conditions of SOLIC's employment, including the fee and expense structure set forth in the Engagement Letter (attached hereto as **Exhibit 1**), are reasonable as required by section 328 (a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of EFH Corp.'s estate, its creditors, and other parties in interest; and the Court having found that EFH Corp. provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application; and the Court having determined that the legal and factual bases set forth in the Application just cause having been shown for the relief granted herein; and any objections to the relief requested herein having been either withdrawn or overruled; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted to the extent set forth herein.

2

2.      EFH Corp. is authorized to retain and employ SOLIC as its financial advisor to advise it on Conflict Matters, including whether a matter constitutes a Conflict Matter, consistent with the terms and conditions set forth in the Engagement Letter, effective *nunc pro tunc* to December 18, 2014, and to pay fees and reimburse expenses to SOLIC on the terms and times specified in the Engagement Letter attached hereto as **Exhibit 1**; *provided, however*, that nothing in the Engagement Letter shall supersede any provisions of the Bankruptcy Code during the pendency of EFH Corp.'s chapter 11 case; *provided further, however*, that to the extent the Application, the Luria Declaration, and any later declaration or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern

3.      The terms of the Engagement Letter are approved in all respects except as limited or modified herein.

4.      SOLIC's compensation set forth in the Engagement Letter is approved pursuant to section 328(a) of the Bankruptcy Code and SOLIC shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court, including but not limited to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* dated September 16, 2014 [D.I. 2066].

5.      Pursuant to the terms of the Engagement Letter, SOLIC is entitled to reimbursement by EFH Corp. for reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, including, without limitation, the reasonable fees, disbursements and other charges of SOLIC's counsel (which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise), in

3

47349969v2

accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any applicable orders of this Court and the Fee Guidelines promulgated by the Office of the United States Trustee, *provided however*, that SOLIC shall not seek reimbursement for any services provided by SOLIC's counsel to EFH Corp.; *provided further*, that SOLIC shall submit the invoices of SOLIC's counsel, together with any application seeking allowance of reimbursement for the fees, disbursements and other charges of its counsel.

6.     With respect to the provision of the Engagement Letter reflecting that SOLIC may perform *de novo* analyses as may be required and approved by the Disinterested Directors, in such events, SOLIC shall file a supplemental application or applications requesting authority to undertake such analyses, which shall generally outline the scope of the *de novo* analyses and identify the SOLIC professionals designated to perform such *de novo* analyses and their corresponding hourly rates.

7.     None of the fees payable to SOLIC shall constitute a "bonus" or fee enhancement under applicable law.

8.     Absent further order of this Court, fees and expenses incurred by SOLIC shall be paid by EFH Corp.

9.     SOLIC shall use its reasonable efforts to avoid any duplication of services provided by any of EFH Corp.'s other retained professionals in EFH Corp.'s chapter 11 case.

10.    Notwithstanding any provision to the contrary in this Order, the U.S. Trustee shall have the right to object to SOLIC's request(s) for interim and final compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the

4

47349969v2

U.S. Trustee to challenge the reasonableness of SOLIC's fees under the standard set forth in the preceding sentence. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of SOLIC's fees.

11.     SOLIC shall include in its fee applications, among other things, time records setting forth, in summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of ECF Corp. in half-hour increments, but SOLIC shall be excused from keeping time in tenth-hour increments.

12.     SOLIC is granted a waiver of the information requirements relating to compensation requests set forth in Local Rule 2016-2(d) to the extent requested in the Application.

13.     SOLIC shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code; provided, however, the fee applications filed by SOLIC shall be subject to review only pursuant to the standard of review set forth in section 328 of the Bankruptcy Code and not subject to the standard of review set forth in section 330 of the Bankruptcy Code, except as otherwise expressly set forth herein.

14.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in EFH Corp.'s chapter 11 case, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of EFH Corp.'s chapter 11 case to a case under chapter 7.

15.     The indemnification provisions set forth in the Engagement Letter are hereby approved, subject during the pendency of these cases to the following:

5

47349969v2

a. subject to the provisions of subparagraph d., *infra*, EFH Corp. is authorized to indemnify, and to provide contribution and reimbursement to, and shall indemnify, and provide contribution and reimbursement to, the Indemnified Persons (as defined in the Engagement Letter) in accordance with the Engagement Letter for any claim arising from, related to, or in connection with the services provided for in the Engagement Letter; notwithstanding any provisions of the Engagement Letter to the contrary;

b. EFH Corp. shall have no obligation to indemnify SOLIC or provide contribution or reimbursement to SOLIC (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from SOLIC's bad faith, self-dealing, breach of fiduciary duty (if any), willful misconduct or gross negligence, (ii) for a contractual dispute in which EFH Corp. alleges the breach of SOLIC's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Company, et. al.*, 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph d., *infra*, to be a claim or expense for which SOLIC should not receive indemnity, contribution or reimbursement under the terms of the Indemnification Letter, as modified by this Order;

c. if during the pendency of EFH Corp.'s case the indemnification is held unenforceable by reason of the exclusions set forth in subparagraph b. above and SOLIC makes a claim for the payment of any amounts by EFH Corp. on account of EFH Corp.'s contribution obligations, then the contribution provisions in the Engagement Letter shall not apply; and

d. if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in EFH Corp.'s case (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing EFH Corp.'s case, SOLIC believes that it is entitled to the payment of any amounts by EFH Corp. on account of EFH Corp.'s indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, SOLIC must file an application therefor in this Court, and EFH Corp. may not pay any such amounts to SOLIC before the entry of an order by this Court approving the payment. This subparagraph d. is intended only to specify the period of time during which the Court shall have jurisdiction over any request for compensation and expenses by SOLIC for indemnification, contribution, or reimbursement and is not a provision limiting the duration of EFH Corp.'s obligation to indemnify SOLIC.

6

16.     Notwithstanding anything to the contrary in the Application or the Engagement Letter, SOLIC will not seek reimbursement of expenses for office supplies.

17.     EFH Corp. and SOLIC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

18.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Bankruptcy Rules are satisfied by the contents of the Application.

19.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20.     Notwithstanding any contrary provision in the Application or the Engagement Letter, the Court shall retain jurisdiction to hear and determine all matters arising from or related to implementation of this Order.

Dated:     2/6/15
          Wilmington, Delaware

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

47349969v2

**Exhibit 1** (to Order)

[Engagement Letter]



**SOLIC Capital Advisors, LLC**
1603 Orrington Avenue, Suite 1600
Evanston, Illinois  60201
847.583.1619   Phone
847.583.1426   Fax

December 18, 2014

<u>Personal and Confidential</u>
The Honorable Donald L. Evans
Executive Chairman
Board of Directors
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201
dle@donevans34.com

Billie I. Williamson
Director
Board of Directors
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201
billie.williamson@forresterco.com

Dear Mr. Evans and Ms. Williamson:

Subject to approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), this letter confirms the retention of SOLIC Capital Advisors, LLC ("SOLIC") by Energy Future Holdings Corp. (the "Company"), <u>nunc pro tunc</u> to December 18, 2014, in accordance with the terms set forth in this letter, pursuant to which SOLIC will provide to the Company, at the direction of its disinterested directors, Donald L. Evans and Billie I. Williamson (the "Disinterested Directors"), the services described below in connection with the Company's chapter 11 case (the "Case").

On April 29, 2014 (the "Commencement Date"), the Company commenced its Case by filing a voluntary petition for relief under chapter 11 title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.  This engagement letter (this "Engagement Letter"), and SOLIC's obligations and responsibilities relating to this engagement (the "Engagement"), shall be effective as of December 18, 2014, subject to obtaining Bankruptcy Court approval in this Case; <u>provided</u>, <u>however</u>, that either party may, in its sole discretion and without any liability arising therefrom, terminate this Engagement in the event that (a) a final order authorizing the employment of SOLIC as financial advisors for the Company (the "Order") is not issued by the Bankruptcy Court in this Case on or before one hundred twenty (120) days from the date hereof on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to SOLIC, or (b) the application of the Company seeking the Order is denied by the Bankruptcy Court in this Case.  In such event, the Company hereby agrees to withdraw, promptly upon SOLIC's request, any application filed or to be filed with the Bankruptcy Court to retain SOLIC's services in this Case.

47349969v2

Energy Future Holdings Corp.
December 18, 2014

Specifically, the terms and conditions of our engagement and the services that it is anticipated that SOLIC will provide are as follows:

1.  **Services.** Pursuant to this Engagement, SOLIC will provide a variety of financial advisory and other services to the Company, at the direction of its Disinterested Directors, in connection with "Conflict Matters" as defined in and pursuant to the authority delegated to the Disinterested Directors pursuant to resolutions of the Company's Board of Directors attached hereto as Exhibit A (the "Resolutions"), including the determination by the Company's Disinterested Directors regarding whether any matter constitutes a Conflict Matter. Such services will include:

    (a) Reviewing bid procedures and progress in developing a plan of reorganization;
    (b) reviewing inter-company claims between the Company and other affiliates;
    (c) reviewing financial elements pertaining to key tax issues;
    (d) reviewing financing proposals received to date and future financing needs of the Company; and
    (e) such other matters as may be agreed upon which are consistent with SOLIC's experience.

    It is the parties' desire that SOLIC rely on the work of the Company's legal and other financial advisors to provide the basis of any reviews and analysis provided hereunder unless *de novo* analysis is required and approved by the Disinterested Directors. For purposes hereof, "*de novo* analysis" shall mean any analysis where SOLIC is required to undertake independent review of source documentation or data (i.e., documents or data other than actual reports and analyses prepared by the Company's other advisors) or the development of new independent analyses as directed by the Disinterested Directors. For the sake of clarification, any reviews performed by SOLIC on existing work product produced by the Company's legal and other financial advisors will not constitute *de novo* analysis.

2.  **Information.** In connection with SOLIC's activities hereunder, the Company agrees to cooperate with SOLIC and will use its good faith efforts to furnish to, or cause to be furnished to, SOLIC all information and data concerning the Company (the "Information") which SOLIC reasonably deems appropriate and will use its good faith efforts to assist SOLIC in obtaining access to the Company's officers, directors, employees and advisors, as necessary

    The Company acknowledges and agrees that the Company's management is responsible for supplying materially complete and accurate Information, representations, and books and records upon which we must rely in providing our services to the Company. The Company agrees to promptly notify SOLIC if the Company believes that any Information which was previously provided to SOLIC has become materially misleading. The Company acknowledges and agrees that, in rendering its services hereunder, SOLIC will be using and relying on Information (and information available from public sources and other sources deemed reliable by SOLIC) without independent verification thereof or independent appraisal or evaluation of the Company, or any other party. SOLIC does not assume responsibility for the accuracy or completeness of Information or any other information regarding the Company. SOLIC will have no obligation to update any report(s) that it may produce or to revise the information contained therein because of events and transactions occurring subsequent thereto. It is further understood that any advice rendered by SOLIC pursuant to its Engagement hereunder, including any advice rendered during the course of participating in negotiations and meetings with the Company and its representatives, as well as any written materials provided by SOLIC, are intended solely for the

2

47349969v2

Energy Future Holdings Corp.
December 18, 2014

benefit and use of the Company, its Disinterested Directors and professionals, and may not be relied upon by any other person or entity without SOLIC's prior written consent.

3.    **Compensation.** In consideration of SOLIC's efforts, SOLIC shall be compensated as follows by the Company and/or from the Company's estate (subject to allowance and approval by the Bankruptcy Court):

SOLIC will be paid a monthly fixed fee payment of $200,000 (the "Monthly Fee"), via wire transfer per the wire instructions set forth on Exhibit B attached hereto, with the first payment (including the pro-rated Monthly Fee for the period December 18 through December 31, 2014 and any other accrued but unpaid Monthly Fees for periods thereafter) to be made upon the Court's approval of SOLIC's retention and, thereafter, in advance on the first day of each month during the term of our Engagement hereunder. The parties hereto hereby agree that the Monthly Fee may be reviewed and potentially adjusted prospectively, if appropriate, based upon mutual agreement, taking into account, among other things, the contribution of SOLIC's professionals to the Case, the aggregate work performed over the course of the Engagement, and such other factors as may be mutually agreed upon, and as approved by the Bankruptcy Court, if necessary.

In addition to the Monthly Fees, if SOLIC is requested by the Company and the Disinterested Directors, to perform any "*de novo* analysis" or to provide litigation support or testimony (or support thereof) in support of any litigation matters, such services will be provided at SOLIC's standard billing rates as set forth on Exhibit C pursuant to a budget agreed upon by SOLIC and the Disinterested Directors on behalf of the Company and any such related fees and expenses will be subject to Bankruptcy Court approval and be paid in accordance with the following paragraph.

SOLIC will be reimbursed monthly for all of its reasonable and documented expenses and hourly fees, if any, related to this Engagement, including travel, document production, reasonable fees and expenses of our legal counsel (other than the cost of internal legal counsel), including amounts attributable to our obligation to respond to discovery requests, participate in depositions or appear in court in connection with services under this Engagement Letter, and other costs incurred in providing the services hereunder.

SOLIC understands that the Company will seek authorization of the Bankruptcy Court for it to fulfill its obligations under this Engagement Letter.

The Company has been informed that SOLIC intends to apply for compensation for professional services to be rendered in connection with this Case and for reimbursement of expenses incurred, in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware and any applicable order of the Bankruptcy Court (the "Payment Rules"). Payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court. SOLIC will maintain internal time records for all work performed for the Company. The request for Bankruptcy Court approval of our retention, and the proposed order to be submitted in connection therewith, shall be provided to SOLIC prior to submission and must be acceptable to SOLIC in its sole discretion.

Energy Future Holdings Corp.
December 18, 2014

To the extent that, at any time during this Case, the Bankruptcy Court reviews any of the terms of this Engagement Letter, such review shall be subject to the standard of review of Section 328(a) of the Bankruptcy Code and the Payment Rules, and not subject to any other standard of review under Section 330 of the Bankruptcy Code. SOLIC will submit reasonably detailed invoices and statements of expenses to the Company in accordance with that certain *Order Establishing Professional Interim Compensation Procedures* entered in the Case. Because SOLIC does not ordinarily maintain contemporaneous time records in one-tenth hour (0.1) increments, the Company agrees to request that SOLIC be excused from compliance with such requirements and should be required only to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a description of services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Company.

In agreeing to these provisions, the Company acknowledges that it believes that our general restructuring experience and expertise will inure to the benefit of the Company and that the value to the Company and/or its constituents derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of fees above are reasonable, regardless of the number of hours to be expended by our professionals in the performance of the services to be provided hereunder.

4.    Termination.  SOLIC's engagement hereunder may be terminated by either the Company or SOLIC at any time, with or without cause, upon 30 days' written notice to the other party; provided, however, that no such termination will affect SOLIC's right to expense reimbursement or the payment of any accrued and unpaid fees pursuant to Section 3 hereof or the Indemnity Agreement (as defined below), and the provisions related thereto contained in this Engagement Letter will survive the expiration or termination of this engagement. Furthermore, if the Order is not obtained, or is later reversed or set aside for any reason, SOLIC may terminate this Engagement Letter and SOLIC shall be reimbursed for all fees and expenses reasonably incurred prior to the date of expiration or termination.

5.    Collection.  In the event SOLIC prevails in any action to enforce collection of amounts due or other rights under this Engagement Letter, SOLIC's reasonable legal fees and other collection costs incurred by SOLIC, plus interest on amounts otherwise due but unpaid at the prime rate (Bank of America prime) plus 2 percent until paid, shall be paid by the Company and/or the Company's estate.

6.    Governing Law.  This Engagement Letter will be deemed made in New York and will be governed by the laws of the State of New York. The Company and SOLIC irrevocably submit to the jurisdiction of the Bankruptcy Court as long as the Case is open, and once the Case is closed, to any court of the State of New York or the United States District Court for the Southern District of New York (Manhattan Division), for the purpose of any suit, action or other proceeding arising out of this Engagement Letter, or any of the agreements or transactions contemplated hereby, which is brought by or against the Company. Each of the Company and SOLIC hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with, this Engagement Letter and the transactions contemplated hereby). SOLIC will act under this Engagement Letter as an independent contractor with duties solely to the Company. Because we will be acting on the Company's behalf in this capacity, it is our practice to receive indemnification. A copy of our standard indemnity form is attached ~~hereto~~ as Exhibit D ("Indemnity Agreement"). The terms of

4

Energy Future Holdings Corp.
December 18, 2014

the Indemnity Agreement are incorporated by reference into this Engagement Letter. In no event will SOLIC's liability in connection with this Engagement Letter exceed the total fees paid to SOLIC hereunder. In no event shall SOLIC, the Company or their respective personnel be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage or expense relating to this Engagement.

7.   Successors and Assigns. This Engagement Letter shall be binding upon and inure to the benefit of the parties hereto, their respective successors and assigns. Neither party may delegate or assign its rights or obligations under this Engagement Letter without the written consent of the other party.

8.   Review. The services to be provided by SOLIC hereunder will not constitute (a) a fairness or solvency opinion or (b) a compilation, examination, review or audit of any entity's information, financial or otherwise, historical or prospective, as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants. In addition, SOLIC does not make any predictions or provide any opinions or other assurances concerning the outcome of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt. SOLIC reserves the right to issue a tombstone announcement with respect to SOLIC's involvement in connection with the Engagement consistent with the Order.

9.   Limitations. This Engagement Letter does not create, and will not be construed as creating, rights enforceable by any person or entity not a party hereto, except those entitled thereto by virtue of the Indemnity Agreement. The Company acknowledges and agrees that (a) SOLIC will act as an independent contractor and is being retained solely to assist the Company and the Disinterested Directors and, unless separately requested by the Company, that SOLIC is not being retained to provide a formal opinion as to any possible restructuring or outcome, (b) nothing in this Engagement Letter or in the nature of services in connection with the Engagement or otherwise shall be deemed to create a fiduciary duty or fiduciary or agency relationship between SOLIC and the Company, or any other party, (c) SOLIC is a professional advisor to the Company and is not and will have no duties or liabilities to the equityholders or creditors of the Company, any affiliate of the Company or any other person by virtue of this Engagement Letter and the retention of SOLIC hereunder (other than as set forth herein), all of which duties and liabilities are hereby expressly waived, and (d) any advice rendered by SOLIC does not constitute a recommendation to any creditor or stakeholder that such creditor or stakeholder might or should take in connection with a possible restructuring; provided, however, this clause (d) shall not apply to the advice rendered by SOLIC to the Disinterested Directors as part of the services provided under the terms of this Engagement Letter. Neither equityholders nor creditors of the Company are intended beneficiaries hereunder. The Company recognizes and acknowledges that by performing the services set forth in this Engagement Letter, SOLIC is not acting in any management capacity and that Company has not requested SOLIC to make, nor has SOLIC agreed to make, any business decisions on behalf of the Company. All decisions about the business of the Company remain the sole responsibility of the Company (and to the extent applicable, the Disinterested Directors). The Company and each Disinterested Director hereby expressly acknowledges that SOLIC does not guarantee, warrant, or otherwise provide any assurances that the Company will restructure successfully. SOLIC is not a law, accounting, tax, or actuarial firm and will not be providing any legal, accounting, tax advice, or actuarial services

5

Energy Future Holdings Corp.
December 18, 2014

hereunder. In addition, the Company confirms that it will rely on its own counsel for legal advice. SOLIC's services are not designed, nor should they be relied upon, to disclose internal weaknesses in internal controls, financial statement errors, irregularities, illegal acts or disclosure deficiencies.

10.   **Counterparts.** This Engagement Letter, and any modification or amendment thereto, may be executed in counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument.

11.   **Notices.** All correspondence and notices shall be sent to the parties as listed hereafter or to such other persons or addresses as may be given by one party to the other, and will be deemed effective the earlier of actual delivery or three days after mailing.

Personal and Confidential

The Honorable Donald L. Evans
Executive Chairman
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201

with a copy to:

General Counsel
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201

Neil F. Luria
Senior Managing Director
SOLIC Capital Advisors, LLC
1603 Orrington Avenue
Suite 1600
Evanston, IL 60201

13.   **Entire Agreement.** This Engagement Letter is the entire agreement between the parties pertaining to its or their subject matter and supersedes all prior agreements, representations and understandings of the parties. No modification of this Engagement Letter shall be binding unless agreed to in writing by the parties.

14.   **Retention Application.** The Company agrees to file the necessary retention applications in the Bankruptcy Court in order to properly retain SOLIC in accordance with the terms set forth in this letter.

6

Energy Future Holdings Corp.
December 18, 2014

If this Engagement Letter meets with your approval, please indicate your consent and agreement to be bound by the terms of this Engagement Letter by executing the attached copy and forwarding it to me.

Very truly yours,

SOLIC CAPITAL ADVISORS, LLC


By: /s/ Neil F. Luria
       Neil F. Luria
       Senior Managing Director




ACKNOWLEDGED AND AGREED:


ENERGY FUTURE HOLDINGS CORP.

By: /s/ Donald L. Evans
       Donald L. Evans
       Executive Chairman
       Board of Directors
       Energy Future Holdings Corp.

Date: December 18, 2014

7

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "A"** (to Engagement Letter)

Energy Future Holdings Corp.
December 18, 2014

## ENERGY FUTURE HOLDINGS CORP. ("EFH")
### BOARD OF DIRECTORS RESOLUTIONS
### DECEMBER 9, 2014

The following recitals and resolutions supplement the Board of Directors Resolutions dated as of November 7, 2014 ("November 7th Resolutions") and, in the event of any inconsistency, these resolutions shall supersede and control.

WHEREAS, EFH and certain of its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries), including TCEH (the "Debtors") on April 29, 2014, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Chapter 11 Case") in the Bankruptcy Court for the District of Delaware ("Bankruptcy Court");

WHEREAS, the members of the Board of Directors of EFH ("Board") having relationships or interests with other affiliated or related companies and their direct or indirect equity holders and other material relationships have disclosed certain facts that they believe to be material to the Board;

WHEREAS, as described in the material presented and reviewed by the Board and based on a review of the known facts and circumstances, the Board has determined and confirmed by the November 7th Resolutions that Donald L. Evans and Billie I. Williamson are the only current members of the Board that are disinterested with respect to any matter pertaining to the Chapter 11 Case on which an actual conflict exists between EFH, on the one hand, and any other Debtor, on the other hand ("Conflict Matters"), and were designated the Disinterested Directors ("Disinterested Directors") as set forth in *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters*, approved by the Bankruptcy Court on September 16, 2014 ("Stipulation");

WHEREAS, the members of the Board considered the Stipulation related to, among other things, the authority of the Disinterested Directors to retain independent legal counsel and other advisors under certain circumstances;

WHEREAS, the Board resolved by the November 7th Resolutions to delegate the authority to the Disinterested Directors to seek and retain, at EFH's sole expense, independent legal counsel and such other advisors ("Independent Advisors") as the Disinterested Directors deem necessary to represent and advise EFH, reporting to the Disinterested Directors, on the Conflict Matters;

WHEREAS, the Disinterested Directors interviewed and engaged certain Independent Advisors effective as of November 19, 2014 to represent and advise EFH, and reporting solely to the Disinterested Directors, as set forth herein; and

WHEREAS, pursuant to the Stipulation and Section 21.416 of the Texas Business Organizations Code, the members of the Board desire to delegate to the Disinterested Directors certain rights, authority, and powers in connection with Conflict Matters, among other matters set forth herein;

NOW, THEREFORE, BE IT,

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to review and act upon (as set forth herein) any Conflict Matters; and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to investigate and determine whether any matter constitutes a Conflict Matter, in the exercise of their business judgment and with the advice of the Independent Advisors, and any such determination shall be binding on EFH and EFH's subsidiaries (other than Energy Future Intermediate Holding Company LLC and its direct and indirect subsidiaries and

47349969v2

Energy Future Holdings Corp.
December 18, 2014

Energy Future Competitive Holdings Company LLC and its direct and indirect subsidiaries (the "Excluded Subsidiaries")); and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to make all decisions, and to implement or direct the implementation of all such decisions, in each case on EFH's behalf, with respect to Conflict Matters as the Disinterested Directors deem appropriate, in the exercise of their business judgment and with the advice of the Independent Advisors or others with whom the Disinterested Directors determine it is appropriate or necessary to consult, and to act on behalf of and bind EFH in connection therewith, including taking action on EFH's behalf, as the direct and indirect holder of 100% of the equity interests in its subsidiaries, causing such subsidiaries (other than the Excluded Subsidiaries) to abide by and implement the decisions and actions of the Disinterested Directors with respect to Conflict Matters and the Disinterested Directors' determination of whether a matter constitutes a Conflict Matter; and further

RESOLVED that the Disinterested Directors will update the Board at board meetings on the status of their (i) review of and decisions on whether any matter constitutes a Conflict Matter, and (ii) review of and decisions on Conflict Matters, in each case in the manner that the Disinterested Directors determine is appropriate and necessary to fulfill their duties and obligations as the Disinterested Directors, taking into account the confidentiality or privilege of the Disinterested Directors' work and the advice of the Independent Advisors; and further

RESOLVED that EFH shall, as the direct and indirect holder of 100% of the equity interests in its subsidiaries, direct and cause each of such subsidiaries (other than the Excluded Subsidiaries) to abide by and comply with these resolutions; and further

RESOLVED that the officers, employees, advisors and agents of EFH (collectively, the "Authorized Persons"), acting alone or with one or more other Authorized Persons, be, and hereby are, directed to furnish to the Disinterested Directors and the Independent Advisors all information as the Disinterested Directors or the Independent Advisors may request, in a manner that shall not effect a waiver of any applicable privilege, and to cooperate with the Disinterested Directors and the Independent Advisors in all respects; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and hereby are, authorized, empowered and directed to implement any decision made by the Disinterested Directors in respect of a Conflict Matter on behalf of EFH as directed by the Disinterested Directors; provided that the Disinterested Directors retain the right to implement any such decision on behalf of EFH and its subsidiaries (other than the Excluded Subsidiaries) themselves or through the Independent Advisors; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and they hereby are, authorized, empowered and directed to take any and all action that they deem necessary or proper to assist the Disinterested Directors in carrying out the foregoing, in each case as requested by and under the direction of the Disinterested Directors; and further

RESOLVED that the Disinterested Directors shall control any attorney-client, work product, or other privilege belonging to EFH in connection with the Independent Advisors or their work or privileged communications on the Conflict Matters and on whether any matter constitutes a Conflict Matter; and further

RESOLVED that each member of the Board has agreed and hereby agrees that he or she shall not have access to, and shall not seek access to, and hereby directs that each Authorized Person shall not have access to and shall not seek access to, the work or privileged material of the Independent

2

Energy Future Holdings Corp.
December 18, 2014

Advisors on the Conflict Matters or on whether any matter constitutes a Conflict Matter, except as permitted by the Disinterested Directors; and further

RESOLVED that the Disinterested Directors be, and hereby are, authorized to take all such further action, at EFH's expense, as the Disinterested Directors shall deem necessary, proper or advisable consistent with these resolutions or in order to carry out fully the intent and purposes of these resolutions; and further

RESOLVED that all actions previously done or approved, or caused to be done or approved, by the Disinterested Directors or the Authorized Persons, including the retention of Independent Advisors, in each case only to the extent consistent with these resolutions, or to otherwise carry out the intent of these resolutions, be and hereby are approved, adopted, confirmed and ratified in all respects.

3

47349969v2

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "B"** (to Engagement Letter)

Wiring Instructions

Please direct wire to:

|  |  |
|---|---|
| Account Name: | SOLIC Capital Advisors, LLC |
| Account Number: | 3800869411 |
| Bank: | Northern Trust Bank |
| Address: | 50 S. LaSalle, Chicago, IL 60675 |
| ABA#: | 071000152 |
| SWIFT: | CNORUS44 |
| | |
| Beneficiary Name: | SOLIC Capital Advisors, LLC |

47349969v2

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "C"** (to Engagement Letter)

Standard Hourly Rates

| | |
|---|---|
| Senior Managing Directors | $750-895/hr |
| Managing Directors | $695-825/hr |
| Directors | $550-695/hr |
| Associate Directors | $450-550/hr |
| Managing Consultants | $350-450/hr |
| Consultants/Associates | $245-350/hr |
| Paraprofessionals | $95-125/hr |

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "D"** (to Engagement Letter)

December 18, 2014

SOLIC Capital Advisors, LLC
1603 Orrington Avenue
Suite 1600
Evanston, IL 60201

Ladies and Gentlemen:

This agreement will confirm that Energy Future Holdings Corp. (the "Company"), has engaged SOLIC Capital Advisors, LLC ("SOLIC") to advise and assist it in connection with the matters referred to in our engagement letter, dated of even date herewith (the "Engagement Letter"). Capitalized terms used herein without definition shall have the meanings ascribed to them in the Engagement Letter. In connection with the terms of the Engagement Letter (the "Engagement"), the Company agrees to indemnify and hold harmless SOLIC and its affiliates and their respective members, officers, directors, employees and agents and each other person, if any, controlling SOLIC or any of its affiliates and their respective successors, assigns, independent contractors, agents, heirs and personal representatives (each referred to herein as a " SOLIC Indemnified Person") to the fullest extent permitted by law from and against any losses, claims, damages, obligations, penalties, judgments, awards, costs, disbursements or liabilities, including amounts paid in settlement (collectively, "Losses"), based upon, related to, arising out of or in connection the Engagement and will reimburse each SOLIC Indemnified Person for all expenses (including fees and expenses of counsel) ("Expenses") as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation, or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any SOLIC Indemnified Person is a party. Notwithstanding the foregoing, (i) in no event shall the Company be responsible for any Losses or Expenses that arise out of or in connection with the Engagement to the extent such Losses or Expenses are finally judicially determined to have resulted from the willful misconduct, bad faith or gross negligence of SOLIC or any other SOLIC Indemnified Person and (ii) if any SOLIC Indemnified Person to whom such Expenses have been advanced shall be determined pursuant to clause (i) to not be eligible for reimbursement of such Expenses, such SOLIC Indemnified Person shall promptly repay such expenses to the Company. If any litigation, investigation or proceeding is commenced as to which SOLIC proposes to demand indemnification, SOLIC will notify the Company with reasonable promptness; provided, however, that any failure by SOLIC to notify the Company will relieve the Company from their obligations hereunder only to the extent the Company have been materially prejudiced by such failure or delay.

The Company will, if requested by any SOLIC Indemnified Party, assume the defense of any proceeding in respect of which indemnity may be sought hereunder, including the employment of counsel reasonably satisfactory to SOLIC and the payment of the fees and expenses of such counsel, in which event, except as provided below, the Company shall not be liable for the fees and expenses of any other counsel retained by any SOLIC Indemnified Party in connection with such proceeding. In any such proceeding the defense of which the Company shall have so assumed, any SOLIC Indemnified Party shall have the right to participate in such Proceeding and to retain its own counsel, but the fees and expenses of such counsel shall be at the expense of such SOLIC Indemnified Party unless (i) the Company and such

47349969v2

Energy Future Holdings Corp.
December 18, 2014

SOLIC Indemnified Party shall have mutually agreed in writing to the retention of such counsel or (ii) the named parties to any such proceeding (including any impleaded parties) include such SOLIC Indemnified Party and representation of the Company and such SOLIC Indemnified Party by the same counsel would, in the opinion of counsel to such SOLIC Indemnified Party, be inappropriate due to actual or potential conflicts of interests between the Company and such SOLIC Indemnified Party, including situations in which there are one or more legal defenses available to the SOLIC Indemnified Party that are different from or additional to those available to the Company. The Company shall not be liable for any settlement of any proceeding effected without its written consent, such consent not to be unreasonably withheld, but if settled with such consent or if there is a final judgment against an SOLIC Indemnified Party, the Company agrees to indemnify the SOLIC Indemnified Party from and against any Loss by reason of such settlement or judgment.

If, for any reason, the foregoing indemnification is unavailable to any of the SOLIC Indemnified Parties or is insufficient to hold them harmless in respect of any Losses or Expenses, then the Company will contribute to the amount paid or payable by any of the SOLIC Indemnified Parties as a result of such Losses and Expenses in such proportion as is appropriate to reflect the relative benefits (or anticipated benefits) to the Company and the Disinterested Directors on the one hand and the SOLIC Indemnified Parties on the other hand, but also the relative fault of the Company and the Disinterested Directors, and their shareholders, members, agents and advisers (other than SOLIC) on the one hand and the SOLIC Indemnified Parties on the other hand, as well as any other relevant equitable considerations. The relative benefits received (or anticipated to be received) by the Company and the Disinterested Directors on the one hand and by the SOLIC Indemnified Parties on the other hand will be deemed to be in the same proportion as such benefit bears to the total fees paid to SOLIC pursuant to the Engagement Letter. The relative fault of any party or other person will be determined by reference to such party's or person's knowledge, access to information and opportunity to prevent or correct any misstatement, omission, misconduct or breach of duty. In no event will the amount required to be contributed by the SOLIC Indemnified Parties hereunder exceed the total amount of fees paid to SOLIC pursuant to the Engagement Letter. You and we agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above.

The reimbursement, indemnity and contribution obligations of the Company hereunder will (i) be in addition to any liability which the Company may otherwise have, (ii) survive the completion or termination of SOLIC's engagement under the Engagement Letter and (iii) shall be binding upon any successors and assigns of the Company.

The Company agree that without the prior written consent of SOLIC, the Company will not consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claims, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not any SOLIC Indemnified Person is a party thereto) unless (i) such settlement, compromise, consent or termination includes an unconditional release of each SOLIC Indemnified Person from all claims and liabilities arising out of such action, claim, suit or proceeding and (ii) there is no statement in connection therewith as to an admission of fault, culpability or failure to act by or on behalf of any SOLIC Indemnified Party.

The provisions of this agreement shall apply to the Engagement and any modification thereof and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement will be deemed made in New York. The validity and interpretation of this agreement will be governed by, and construed and enforced in accordance with, the laws of the State of New York applicable to agreements made and to be fully performed therein (excluding the conflicts of laws rules).

47349969v2                                    2

Energy Future Holdings Corp.
December 18, 2014

So long as the Case (as that term is defined in the Engagement Letter) is open, the Company and SOLIC irrevocably submit to the jurisdiction of the Bankruptcy Court with respect to any suit, action or proceeding arising out of the Engagement.  However, once the Case is closed, the Company irrevocably submit to the jurisdiction of any court of the State of New York or the United States District Court of the Southern District of the State of New York (Manhattan Division) for the purpose of any suit, action or other proceeding arising out of this agreement which is brought by or against the Company.  Each of the Company and SOLIC hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with this agreement.

Very truly yours,

ENERGY FUTURE HOLDINGS CORP.

By: /s/ Donald L. Evans
    Name:  Donald L. Evans
    Title:    Executive Chairman
          Board of Directors
          Energy Future Holdings Corp.

Date:  December 18, 2014

Accepted and agreed to:

SOLIC CAPITAL ADVISORS, LLC

By: /s/ Neil F. Luria
    Neil F. Luria
    Senior Managing Director

Date:  December 18, 2014

47349969v2

3



~~SOLIC Capital Advisors, LLC~~
~~1603 Orrington Avenue, Suite 1600~~
~~Evanston, Illinois  60201~~
~~847.583.1619   Phone~~
~~847.583.1426   Fax~~

1603 Orrington Avenue, Suite 1600
Evanston, Illinois  60201
847.583.1619   Phone
847.583.1426   Fax

December 18, 2014

**Personal and Confidential**
The Honorable Donald L. Evans
Executive Chairman
Board of Directors
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201
dle@donevans34.com

Billie I. Williamson
Director
Board of Directors
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201
billie.williamson@forresterco.com

Dear Mr. Evans and Ms. Williamson:

Subject to approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), this letter confirms the retention of SOLIC Capital Advisors, LLC ("SOLIC") by Energy Future Holdings Corp. (the "Company"), *nunc pro tunc* to December 18, 2014, in accordance with the terms set forth in this letter, pursuant to which SOLIC will provide to the Company, at the direction of its disinterested directors, Donald L. Evans and Billie I. Williamson (the "Disinterested Directors"), the services described below in connection with the Company's chapter 11 case (the "Case").

On April 29, 2014 (the "Commencement Date"), the Company commenced its Case by filing a voluntary petition for relief under chapter 11 title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.  This engagement letter (this "Engagement Letter"), and SOLIC's obligations and responsibilities relating to this engagement (the "Engagement"), shall be effective as of December 18, 2014, subject to obtaining Bankruptcy Court approval in this Case; provided, however, that either party may, in its sole discretion and without any liability arising therefrom, terminate this Engagement in the event that (a) a final order authorizing the employment of SOLIC as financial advisors for the Company (the "Order") is not issued by the Bankruptcy Court in this Case on or before one hundred twenty (120) days from the date hereof on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to SOLIC, or (b) the application of the Company seeking the Order is denied

Energy Future Holdings Corp.
December 18, 2014

by the Bankruptcy Court in this Case. In such event, the Company hereby agrees to withdraw, promptly upon SOLIC's request, any application filed or to be filed with the Bankruptcy Court to retain SOLIC's services in this Case.

Specifically, the terms and conditions of our engagement and the services that it is anticipated that SOLIC will provide are as follows:

1.  Services. Pursuant to this Engagement, SOLIC will provide a variety of financial advisory and other services to the Company, at the direction of its Disinterested Directors, in connection with "Conflict Matters" as defined in and pursuant to the authority delegated to the Disinterested Directors pursuant to resolutions of the Company's Board of Directors attached hereto as Exhibit A (the "Resolutions"), including the determination by the Company's Disinterested Directors regarding whether any matter constitutes a Conflict Matter. Such services will include:

    (a)  Reviewing bid procedures and progress in developing a plan of reorganization;
    (b)  reviewing inter-company claims between the Company and other affiliates;
    (c)  reviewing financial elements pertaining to key tax issues;
    (d)  reviewing financing proposals received to date and future financing needs of the Company; and
    (e)  such other matters as may be agreed upon which are consistent with SOLIC's experience.

    It is the parties' desire that SOLIC rely on the work of the Company's legal and other financial advisors to provide the basis of any reviews and analysis provided hereunder unless *de novo* analysis is required and approved by the Disinterested Directors. For purposes hereof, "*de novo* analysis" shall mean any analysis where SOLIC is required to undertake independent review of source documentation or data (i.e., documents or data other than actual reports and analyses prepared by the Company's other advisors) or the development of new independent analyses as directed by the Disinterested Directors. For the sake of clarification, any reviews performed by SOLIC on existing work product produced by the Company's legal and other financial advisors will not constitute *de novo* analysis.

2.  Information. In connection with SOLIC's activities hereunder, the Company agrees to cooperate with SOLIC and will use its good faith efforts to furnish to, or cause to be furnished to, SOLIC all information and data concerning the Company (the "Information") which SOLIC reasonably deems appropriate and will use its good faith efforts to assist SOLIC in obtaining access to the Company's officers, directors, employees and advisors, as necessary

    The Company acknowledges and agrees that the Company's management is responsible for supplying materially complete and accurate Information, representations, and books and records upon which we must rely in providing our services to the Company. The Company agrees to promptly notify SOLIC if the Company believes that any Information which was previously provided to SOLIC has become materially misleading. The Company acknowledges and agrees that, in rendering its services hereunder, SOLIC will be using and relying on Information (and information available from public sources and other sources deemed reliable by SOLIC) without independent verification thereof or independent appraisal or evaluation of the Company, or any other party. SOLIC does not assume responsibility for the accuracy or completeness of Information or any other information regarding the Company. SOLIC will have no obligation to update any report(s) that it may produce or to revise the information contained therein because

2

47349969v2

Energy Future Holdings Corp.
December 18, 2014

of events and transactions occurring subsequent thereto. It is further understood that any advice rendered by SOLIC pursuant to its Engagement hereunder, including any advice rendered during the course of participating in negotiations and meetings with the Company and its representatives, as well as any written materials provided by SOLIC, are intended solely for the benefit and use of the Company, its Disinterested Directors and professionals, and may not be relied upon by any other person or entity without SOLIC's prior written consent.

3.   Compensation.  In consideration of SOLIC's efforts, SOLIC shall be compensated as follows by the Company and/or from the Company's estate (subject to allowance and approval by the Bankruptcy Court):

SOLIC will be paid a monthly fixed fee payment of $200,000 (the "Monthly Fee"), via wire transfer per the wire instructions set forth on Exhibit B attached hereto, with the first payment (including the pro-rated Monthly Fee for the period December 18 through December 31, 2014 and any other accrued but unpaid Monthly Fees for periods thereafter) to be made upon the Court's approval of SOLIC's retention and, thereafter, in advance on the first day of each month during the term of our Engagement hereunder.  The parties hereto hereby agree that the Monthly Fee may be reviewed and potentially adjusted prospectively, if appropriate, based upon mutual agreement, taking into account, among other things, the contribution of SOLIC's professionals to the Case, the aggregate work performed over the course of the Engagement, and such other factors as may be mutually agreed upon, and as approved by the Bankruptcy Court, if necessary.

In addition to the Monthly Fees, if SOLIC is requested by the Company and the Disinterested Directors, to perform any "de novo analysis" or to provide litigation support or testimony (or support thereof) in support of any litigation matters, such services will be provided at SOLIC's standard billing rates as set forth on Exhibit C pursuant to a budget agreed upon by SOLIC and the Disinterested Directors on behalf of the Company and any such related fees and expenses will be subject to Bankruptcy Court approval and be paid in accordance with the following paragraph.

SOLIC will be reimbursed monthly for all of its reasonable and documented expenses and hourly fees, if any, related to this Engagement, including travel, document production, reasonable fees and expenses of our legal counsel (other than the cost of internal legal counsel), including amounts attributable to our obligation to respond to discovery requests, participate in depositions or appear in court in connection with services under this Engagement Letter, and other costs incurred in providing the services hereunder.

SOLIC understands that the Company will seek authorization of the Bankruptcy Court for it to fulfill its obligations under this Engagement Letter.

The Company has been informed that SOLIC intends to apply for compensation for professional services to be rendered in connection with this Case and for reimbursement of expenses incurred, in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware and any applicable order of the Bankruptcy Court (the "Payment Rules").  Payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court.  SOLIC will maintain internal time records for all work performed for the Company.  The request for Bankruptcy Court approval of our retention, and the proposed order to be submitted

3

47349969v2

Energy Future Holdings Corp.
December 18, 2014

in connection therewith, shall be provided to SOLIC prior to submission and must be acceptable to SOLIC in its sole discretion.

To the extent that, at any time during this Case, the Bankruptcy Court reviews any of the terms of this Engagement Letter, such review shall be subject to the standard of review of Section 328(a) of the Bankruptcy Code and the Payment Rules, and not subject to any other standard of review under Section 330 of the Bankruptcy Code. SOLIC will submit reasonably detailed invoices and statements of expenses to the Company in accordance with that certain *Order Establishing Professional Interim Compensation Procedures* entered in the Case. Because SOLIC does not ordinarily maintain contemporaneous time records in one-tenth hour (0.1) increments, the Company agrees to request that SOLIC be excused from compliance with such requirements and should be required only to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a description of services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Company.

In agreeing to these provisions, the Company acknowledges that it believes that our general restructuring experience and expertise will inure to the benefit of the Company and that the value to the Company and/or its constituents derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of fees above are reasonable, regardless of the number of hours to be expended by our professionals in the performance of the services to be provided hereunder.

4. **Termination.** SOLIC's engagement hereunder may be terminated by either the Company or SOLIC at any time, with or without cause, upon 30 days' written notice to the other party; provided, however, that no such termination will affect SOLIC's right to expense reimbursement or the payment of any accrued and unpaid fees pursuant to Section 3 hereof or the Indemnity Agreement (as defined below), and the provisions related thereto contained in this Engagement Letter will survive the expiration or termination of this engagement. Furthermore, if the Order is not obtained, or is later reversed or set aside for any reason, SOLIC may terminate this Engagement Letter and SOLIC shall be reimbursed for all fees and expenses reasonably incurred prior to the date of expiration or termination.

5. **Collection.** In the event SOLIC prevails in any action to enforce collection of amounts due or other rights under this Engagement Letter, SOLIC's reasonable legal fees and other collection costs incurred by SOLIC, plus interest on amounts otherwise due but unpaid at the prime rate (Bank of America prime) plus 2 percent until paid, shall be paid by the Company and/or the Company's estate.

6. **Governing Law.** This Engagement Letter will be deemed made in New York and will be governed by the laws of the State of New York. The Company and SOLIC irrevocably submit to the jurisdiction of the Bankruptcy Court as long as the Case is open, and once the Case is closed, to any court of the State of New York or the United States District Court for the Southern District of New York (Manhattan Division), for the purpose of any suit, action or other proceeding arising out of this Engagement Letter, or any of the agreements or transactions contemplated hereby, which is brought by or against the Company and SOLIC hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with, this Engagement Letter and the transactions contemplated hereby). SOLIC will act under this Engagement Letter as an

Energy Future Holdings Corp.
December 18, 2014

independent contractor with duties solely to the Company. Because we will be acting on the Company's behalf in this capacity, it is our practice to receive indemnification. A copy of our standard indemnity form is attached hereto as Exhibit D ("Indemnity Agreement"). The terms of the Indemnity Agreement are incorporated by reference into this Engagement Letter. In no event will SOLIC's liability in connection with this Engagement Letter exceed the total fees paid to SOLIC hereunder. In no event shall SOLIC, the Company or their respective personnel be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage or expense relating to this Engagement.

7.  **Successors and Assigns.** This Engagement Letter shall be binding upon and inure to the benefit of the parties hereto, their respective successors and assigns. Neither party may delegate or assign its rights or obligations under this Engagement Letter without the written consent of the other party.

8.  **Review.** The services to be provided by SOLIC hereunder will not constitute (a) a fairness or solvency opinion or (b) a compilation, examination, review or audit of any entity's information, financial or otherwise, historical or prospective, as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants. In addition, SOLIC does not make any predictions or provide any opinions or other assurances concerning the outcome of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt. SOLIC reserves the right to issue a tombstone announcement with respect to SOLIC's involvement in connection with the Engagement consistent with the Order.

9.  **Limitations.** This Engagement Letter does not create, and will not be construed as creating, rights enforceable by any person or entity not a party hereto, except those entitled thereto by virtue of the Indemnity Agreement. The Company acknowledges and agrees that (a) SOLIC will act as an independent contractor and is being retained solely to assist the Company and the Disinterested Directors and, unless separately requested by the Company, that SOLIC is not being retained to provide a formal opinion as to any possible restructuring or outcome, (b) nothing in this Engagement Letter or in the nature of services in connection with the Engagement or otherwise shall be deemed to create a fiduciary duty or fiduciary or agency relationship between SOLIC and the Company, or any other party, (c) SOLIC is a professional advisor to the Company and is not and will have no duties or liabilities to the equityholders or creditors of the Company, any affiliate of the Company or any other person by virtue of this Engagement Letter and the retention of SOLIC hereunder (other than as set forth herein), all of which duties and liabilities are hereby expressly waived, and (d) any advice rendered by SOLIC does not constitute a recommendation to any creditor or stakeholder that such creditor or stakeholder might or should take in connection with a possible restructuring; provided, however, this clause (d) shall not apply to the advice rendered by SOLIC to the Disinterested Directors as part of the services provided under the terms of this Engagement Letter. Neither equityholders nor creditors of the Company are intended beneficiaries hereunder. The Company recognizes and acknowledges that by performing the services set forth in this Engagement Letter, SOLIC is not acting in any management capacity and that Company has not requested SOLIC to make, nor has SOLIC agreed to make, any business decisions on behalf of the Company. All decisions about the business of the Company remain the sole responsibility of the Company (and to the extent applicable, the Disinterested Directors). The Company and each Disinterested Director hereby

5

Energy Future Holdings Corp.
December 18, 2014

expressly acknowledges that SOLIC does not guarantee, warrant, or otherwise provide any assurances that the Company will restructure successfully. SOLIC is not a law, accounting, tax, or actuarial firm and will not be providing any legal, accounting, tax advice, or actuarial services hereunder. In addition, the Company confirms that it will rely on its own counsel for legal advice. SOLIC's services are not designed, nor should they be relied upon, to disclose internal weaknesses in internal controls, financial statement errors, irregularities, illegal acts or disclosure deficiencies.

10.   Counterparts. This Engagement Letter, and any modification or amendment thereto, may be executed in counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument.

11.   Notices. All correspondence and notices shall be sent to the parties as listed hereafter or to such other persons or addresses as may be given by one party to the other, and will be deemed effective the earlier of actual delivery or three days after mailing.

Personal and Confidential

The Honorable Donald L. Evans
Executive Chairman
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201

with a copy to:

General Counsel
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201

Neil F. Luria
Senior Managing Director
SOLIC Capital Advisors, LLC
1603 Orrington Avenue
Suite 1600
Evanston, IL 60201

13. Entire Agreement. This Engagement Letter is the entire agreement between the parties pertaining to its or their subject matter and supersedes all prior agreements, representations and understandings of the parties. No modification of this Engagement Letter shall be binding unless agreed to in writing by the parties.

14. Retention Application. The Company agrees to file the necessary retention applications in the Bankruptcy Court in order to properly retain SOLIC in accordance with the terms set forth in this letter.

6

47349969v2

Energy Future Holdings Corp.
December 18, 2014

If this Engagement Letter meets with your approval, please indicate your consent and agreement to be bound by the terms of this Engagement Letter by executing the attached copy and forwarding it to me.

Very truly yours,

SOLIC CAPITAL ADVISORS, LLC

By: _/s/ Neil F. Luria_____
      Neil F. Luria
      Senior Managing Director

ACKNOWLEDGED AND AGREED:

ENERGY FUTURE HOLDINGS CORP.

By: _/s/ Donald L. Evans_____
      Donald L. Evans
      Executive Chairman
      Board of Directors
      Energy Future Holdings Corp.

Date: December 18, 2014

47349969v2

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "A"** (to Engagement Letter)

Energy Future Holdings Corp.
December 18, 2014

## ENERGY FUTURE HOLDINGS CORP. ("EFH")
### BOARD OF DIRECTORS RESOLUTIONS
#### DECEMBER 9, 2014

The following recitals and resolutions supplement the Board of Directors Resolutions dated as of November 7, 2014 ("November 7th Resolutions") and, in the event of any inconsistency, these resolutions shall supersede and control.

WHEREAS, EFH and certain of its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries), including TCEH (the "Debtors") on April 29, 2014, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Chapter 11 Case") in the Bankruptcy Court for the District of Delaware ("Bankruptcy Court");

WHEREAS, the members of the Board of Directors of EFH ("Board") having relationships or interests with other affiliated or related companies and their direct or indirect equity holders and other material relationships have disclosed certain facts that they believe to be material to the Board;

WHEREAS, as described in the material presented and reviewed by the Board and based on a review of the known facts and circumstances, the Board has determined and confirmed by the November 7th Resolutions that Donald L. Evans and Billie I. Williamson are the only current members of the Board that are disinterested with respect to any matter pertaining to the Chapter 11 Case on which an actual conflict exists between EFH, on the one hand, and any other Debtor, on the other hand ("Conflict Matters"), and were designated the Disinterested Directors ("Disinterested Directors") as set forth in *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters*, approved by the Bankruptcy Court on September 16, 2014 ("Stipulation");

WHEREAS, the members of the Board considered the Stipulation related to, among other things, the authority of the Disinterested Directors to retain independent legal counsel and other advisors under certain circumstances;

WHEREAS, the Board resolved by the November 7th Resolutions to delegate the authority to the Disinterested Directors to seek and retain, at EFH's sole expense, independent legal counsel and such other advisors ("Independent Advisors") as the Disinterested Directors deem necessary to represent and advise EFH, reporting to the Disinterested Directors, on the Conflict Matters;

WHEREAS, the Disinterested Directors interviewed and engaged certain Independent Advisors effective as of November 19, 2014 to represent and advise EFH, and reporting solely to the Disinterested Directors, as set forth herein; and

WHEREAS, pursuant to the Stipulation and Section 21.416 of the Texas Business Organizations Code, the members of the Board desire to delegate to the Disinterested Directors certain rights, authority, and powers in connection with Conflict Matters, among other matters set forth herein;

NOW, THEREFORE, BE IT,

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to review and act upon (as set forth herein) any Conflict Matters; and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to investigate and determine whether any matter constitutes a Conflict Matter, in the exercise of their business judgment and with the advice of the Independent Advisors, and any such determination shall be binding on EFH and EFH's subsidiaries (other than

47349969v2

Energy Future Holdings Corp.
December 18, 2014

Energy Future Intermediate Holding Company LLC and its direct and indirect subsidiaries and Energy Future Competitive Holdings Company LLC and its direct and indirect subsidiaries (the "Excluded Subsidiaries")); and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to make all decisions, and to implement or direct the implementation of all such decisions, in each case on EFH's behalf, with respect to Conflict Matters as the Disinterested Directors deem appropriate, in the exercise of their business judgment and with the advice of the Independent Advisors or others with whom the Disinterested Directors determine it is appropriate or necessary to consult, and to act on behalf of and bind EFH in connection therewith, including taking action on EFH's behalf, as the direct and indirect holder of 100% of the equity interests in its subsidiaries, causing such subsidiaries (other than the Excluded Subsidiaries) to abide by and implement the decisions and actions of the Disinterested Directors with respect to Conflict Matters and the Disinterested Directors' determination of whether a matter constitutes a Conflict Matter; and further

RESOLVED that the Disinterested Directors will update the Board at board meetings on the status of their (i) review of and decisions on whether any matter constitutes a Conflict Matter, and (ii) review of and decisions on Conflict Matters, in each case in the manner that the Disinterested Directors determine is appropriate and necessary to fulfill their duties and obligations as the Disinterested Directors, taking into account the confidentiality or privilege of the Disinterested Directors' work and the advice of the Independent Advisors; and further

RESOLVED that EFH shall, as the direct and indirect holder of 100% of the equity interests in its subsidiaries, direct and cause each of such subsidiaries (other than the Excluded Subsidiaries) to abide by and comply with these resolutions; and further

RESOLVED that the officers, employees, advisors and agents of EFH (collectively, the "Authorized Persons"), acting alone or with one or more other Authorized Persons, be, and hereby are, directed to furnish to the Disinterested Directors and the Independent Advisors all information as the Disinterested Directors or the Independent Advisors may request, in a manner that shall not effect a waiver of any applicable privilege, and to cooperate with the Disinterested Directors and the Independent Advisors in all respects; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and hereby are, authorized, empowered and directed to implement any decision made by the Disinterested Directors in respect of a Conflict Matter on behalf of EFH as directed by the Disinterested Directors; provided that the Disinterested Directors retain the right to implement any such decision on behalf of EFH and its subsidiaries (other than the Excluded Subsidiaries) themselves or through the Independent Advisors; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and they hereby are, authorized, empowered and directed to take any and all action that they deem necessary or proper to assist the Disinterested Directors in carrying out the foregoing, in each case as requested by and under the direction of the Disinterested Directors; and further

RESOLVED that the Disinterested Directors shall control any attorney-client, work product, or other privilege belonging to EFH in connection with the Independent Advisors or their work or privileged communications on the Conflict Matters and on whether any matter constitutes a Conflict Matter; and further

RESOLVED that each member of the Board has agreed and hereby agrees that he or she shall not have access to, and shall not seek access to, and hereby directs that each Authorized Person shall not have access to and shall not seek access to, the work or privileged material of the Independent

2

Energy Future Holdings Corp.
December 18, 2014

Advisors on the Conflict Matters or on whether any matter constitutes a Conflict Matter, except as permitted by the Disinterested Directors; and further

RESOLVED that the Disinterested Directors be, and hereby are, authorized to take all such further action, at EFH's expense, as the Disinterested Directors shall deem necessary, proper or advisable consistent with these resolutions or in order to carry out fully the intent and purposes of these resolutions; and further

RESOLVED that all actions previously done or approved, or caused to be done or approved, by the Disinterested Directors or the Authorized Persons, including the retention of Independent Advisors, in each case only to the extent consistent with these resolutions, or to otherwise carry out the intent of these resolutions, be and hereby are approved, adopted, confirmed and ratified in all respects.

3

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "B"** (to Engagement Letter)

Wiring Instructions

Please direct wire to:

|  |  |
|---|---|
| Account Name: | SOLIC Capital Advisors, LLC |
| Account Number: | 3800869411 |
| Bank: | Northern Trust Bank |
| Address: | 50 S. LaSalle, Chicago, IL 60675 |
| ABA#: | 071000152 |
| SWIFT: | CNORUS44 |
|  |  |
| Beneficiary Name: | SOLIC Capital Advisors, LLC |

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "C"** (to Engagement Letter)

Standard Hourly Rates

| | |
|---|---|
| Senior Managing Directors | $750-895/hr |
| Managing Directors | $695-825/hr |
| Directors | $550-695/hr |
| Associate Directors | $450-550/hr |
| Managing Consultants | $350-450/hr |
| Consultants/Associates | $245-350/hr |
| Paraprofessionals | $95-125/hr |

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "D" (to Engagement Letter)**

December 18, 2014

SOLIC Capital Advisors, LLC
1603 Orrington Avenue
Suite 1600
Evanston, IL 60201

Ladies and Gentlemen:

This agreement will confirm that Energy Future Holdings Corp. (the "Company"), has engaged SOLIC Capital Advisors, LLC ("SOLIC") to advise and assist it in connection with the matters referred to in our engagement letter, dated of even date herewith (the "Engagement Letter"). Capitalized terms used herein without definition shall have the meanings ascribed to them in the Engagement Letter. In connection with the terms of the Engagement Letter (the "Engagement"), the Company agrees to indemnify and hold harmless SOLIC and its affiliates and their respective members, officers, directors, employees and agents and each other person, if any, controlling SOLIC or any of its affiliates and their respective successors, assigns, independent contractors, agents, heirs and personal representatives (each referred to herein as a " SOLIC Indemnified Person") to the fullest extent permitted by law from and against any losses, claims, damages, obligations, penalties, judgments, awards, costs, disbursements or liabilities, including amounts paid in settlement (collectively, "Losses"), based upon, related to, arising out of or in connection the Engagement and will reimburse each SOLIC Indemnified Person for all expenses (including fees and expenses of counsel) ("Expenses") as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation, or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any SOLIC Indemnified Person is a party. Notwithstanding the foregoing, (i) in no event shall the Company be responsible for any Losses or Expenses that arise out of or in connection with the Engagement to the extent such Losses or Expenses are finally judicially determined to have resulted from the willful misconduct, bad faith or gross negligence of SOLIC or any other SOLIC Indemnified Person and (ii) if any SOLIC Indemnified Person to whom such Expenses have been advanced shall be determined pursuant to clause (i) to not be eligible for reimbursement of such Expenses, such SOLIC Indemnified Person shall promptly repay such expenses to the Company. If any litigation, investigation or proceeding is commenced as to which SOLIC proposes to demand indemnification, SOLIC will notify the Company with reasonable promptness; provided, however, that any failure by SOLIC to notify the Company will relieve the Company from their obligations hereunder only to the extent the Company have been materially prejudiced by such failure or delay.

The Company will, if requested by any SOLIC Indemnified Party, assume the defense of any proceeding in respect of which indemnity may be sought hereunder, including the employment of counsel reasonably satisfactory to SOLIC and the payment of the fees and expenses of such counsel, in which event, except as provided below, the Company shall not be liable for the fees and expenses of any other counsel retained by any SOLIC Indemnified Party in connection with such proceeding. In any such proceeding the defense of which the Company shall have so assumed, any SOLIC Indemnified Party shall have the right to participate in such Proceeding and to retain its own counsel, but the fees and expenses of such counsel shall be at the expense of such SOLIC Indemnified Party unless (i) the Company and such

Energy Future Holdings Corp.
December 18, 2014

SOLIC Indemnified Party shall have mutually agreed in writing to the retention of such counsel or (ii) the named parties to any such proceeding (including any impleaded parties) include such SOLIC Indemnified Party and representation of the Company and such SOLIC Indemnified Party by the same counsel would, in the opinion of counsel to such SOLIC Indemnified Party, be inappropriate due to actual or potential conflicts of interests between the Company and such SOLIC Indemnified Party, including situations in which there are one or more legal defenses available to the SOLIC Indemnified Party that are different from or additional to those available to the Company. The Company shall not be liable for any settlement of any proceeding effected without its written consent, such consent not to be unreasonably withheld, but if settled with such consent or if there is a final judgment against an SOLIC Indemnified Party, the Company agrees to indemnify the SOLIC Indemnified Party from and against any Loss by reason of such settlement or judgment.

If, for any reason, the foregoing indemnification is unavailable to any of the SOLIC Indemnified Parties or is insufficient to hold them harmless in respect of any Losses or Expenses, then the Company will contribute to the amount paid or payable by any of the SOLIC Indemnified Parties as a result of such Losses and Expenses in such proportion as is appropriate to reflect the relative benefits (or anticipated benefits) to the Company and the Disinterested Directors on the one hand and the SOLIC Indemnified Parties on the other hand, but also the relative fault of the Company and the Disinterested Directors, and their shareholders, members, agents and advisers (other than SOLIC) on the one hand and the SOLIC Indemnified Parties on the other hand, as well as any other relevant equitable considerations. The relative benefits received (or anticipated to be received) by the Company and the Disinterested Directors on the one hand and by the SOLIC Indemnified Parties on the other hand will be deemed to be in the same proportion as such benefit bears to the total fees paid to SOLIC pursuant to the Engagement Letter. The relative fault of any party or other person will be determined by reference to such party's or person's knowledge, access to information and opportunity to prevent or correct any misstatement, omission, misconduct or breach of duty. In no event will the amount required to be contributed by the SOLIC Indemnified Parties hereunder exceed the total amount of fees paid to SOLIC pursuant to the Engagement Letter. You and we agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above.

The reimbursement, indemnity and contribution obligations of the Company hereunder will (i) be in addition to any liability which the Company may otherwise have, (ii) survive the completion or termination of SOLIC's engagement under the Engagement Letter and (iii) shall be binding upon any successors and assigns of the Company.

The Company agree that without the prior written consent of SOLIC, the Company will not consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claims, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not any SOLIC Indemnified Person is a party thereto) unless (i) such settlement, compromise, consent or termination includes an unconditional release of each SOLIC Indemnified Person from all claims and liabilities arising out of such action, claim, suit or proceeding and (ii) there is no statement in connection therewith as to an admission of fault, culpability or failure to act by or on behalf of any SOLIC Indemnified Party.

The provisions of this agreement shall apply to the Engagement and any modification thereof and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement will be deemed made in New York. The validity and interpretation of this agreement will be governed by, and construed and enforced in accordance with, the laws of the State of New York applicable to agreements made and to be fully performed therein (excluding the conflicts of laws rules).

Energy Future Holdings Corp.
December 18, 2014

So long as the Case (as that term is defined in the Engagement Letter) is open, the Company and SOLIC irrevocably submit to the jurisdiction of the Bankruptcy Court with respect to any suit, action or proceeding arising out of the Engagement. However, once the Case is closed, the Company irrevocably submit to the jurisdiction of any court of the State of New York or the United States District Court of the Southern District of the State of New York (Manhattan Division) for the purpose of any suit, action or other proceeding arising out of this agreement which is brought by or against the Company. Each of the Company and SOLIC hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with this agreement.

Very truly yours,

ENERGY FUTURE HOLDINGS CORP.

By: /s/ Donald L. Evans
    Name:  Donald L. Evans
    Title:   Executive Chairman
           Board of Directors
           Energy Future Holdings Corp.

Date:  December 18, 2014

Accepted and agreed to:

SOLIC CAPITAL ADVISORS, LLC

By: /s/ Neil F. Luria
    Neil F. Luria
    Senior Managing Director

Date:  December 18, 2014

**<u>Exhibit C</u>**

[Supplemental Declaration Authorizing the Retention of SOLIC Capital Advisors]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**SUPPLEMENTAL DECLARATION OF NEIL F. LURIA IN
SUPPORT OF DEBTOR ENERGY FUTURE HOLDINGS CORP.'S
APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION
AND EMPLOYMENT OF SOLIC CAPITAL ADVISORS, LLC AS FINANCIAL
ADVISOR FOR DEBTOR AND DEBTOR IN POSSESSION ENERGY FUTURE
HOLDINGS CORP. EFFECTIVE *NUNC PRO TUNC* TO DECEMBER 18, 2014**

I, Neil F. Luria, being duly sworn, state the following under penalty of perjury:

1.     I am a Senior Managing Director and President of SOLIC Capital Advisors, LLC ("SOLIC"), which maintains a central office at 1603 Orrington Avenue, Suite 1600 Evanston, Illinois 60201.

2.     I submit this supplemental declaration in further support of *Debtor Energy Future Holdings Corp.'s Application for Entry of an Order Authorizing the Retention and Employment of SOLIC Capital Advisors, LLC as Financial Advisor for Debtor and Debtor in Possession Energy Future Holdings Corp. Effective* Nunc Pro Tunc *to December 18, 2014* [D.I. 3324] (the "Application").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

## **Background**

3.      On January 16, 2015, debtor Energy Future Holdings Corp. ("EFH Corp.") filed the Application. In support of the Application, EFH Corp. filed, as Exhibit C to the Application, the *Declaration of Neil F. Luria in Support of Debtor Energy Future Holdings Corp.'s Application for Entry of an Order Authorizing the Retention and Employment of SOLIC Capital Advisors, LLC as Financial Advisor for Debtor and Debtor in Possession Energy Future Holdings Corp. Effective* Nunc Pro Tunc *to December 18, 2014* [D.I. 3324, Exhibit C].

## **Supplemental Disclosure**

4.      The engagement letter (the "Engagement Letter") attached as Exhibit 1 to the *Order Authorizing the Retention and Employment of SOLIC Capital Advisors, LLC as Financial Advisor for Debtor and Debtor in Possession Energy Future Holdings Corp. Effective* Nunc Pro Tunc *to December 18, 2014* [D.I. 3467] provided that SOLIC would be paid a monthly fixed fee (the "Monthly Fee"), which "may be reviewed and potentially adjusted prospectively, if appropriate, based upon mutual agreement, taking into account, among other things, the contribution of SOLIC's professionals to the Case, the aggregate work performed over the course of the Engagement, and such other factors as may be mutually agreed upon." Engagement Letter § 3.

5.      In light of the circumstances of EFH Corp.'s chapter 11 case and the desire to limit costs going forward, Donald L. Evans and Billie I. Williamson, EFH Corp.'s disinterested directors, on behalf of EFH Corp., and SOLIC have agreed to modify the Engagement Letter, effective June 1, 2017, to provide that, in lieu of the Monthly Fee, SOLIC will be compensated on an hourly basis, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other

applicable procedures and orders of the Court, including the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] and any case-specific fee protocols approved by the Court pursuant to the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896].  All other provisions of the Engagement Letter remain unmodified and in full force and effect.

6.       SOLIC's current hourly rates for matters related to this chapter 11 case range as follows:

| | |
|---|---|
| Senior Managing Directors | $750-950 |
| Managing Directors | $695-825 |
| Directors | $550-695 |
| Associate Directors | $450-550 |
| Managing Consultants | $350-450 |
| Consultants/Associates | $245-350 |
| Paraprofessionals | $95-125 |

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  May 25, 2017                         */s/ Neil F. Luria*
_____

                                   Name:   Neil F. Luria
                                   Title:    Senior Managing Director and
                                             President, SOLIC Capital Advisors, LLC

3

## **Exhibit D**

[Detailed Description of Services Provided]

# Energy Future Holdings Corp - May 2017

| Date | Person | Activity Code | Duration |
|------|--------|---------------|----------|
| 5/1/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 2.00 |
| | | Attention to further follow-up on financial analyses included in the Restructuring Workshop materials dated May 1, 2017 | |
| 5/1/2017 | Luria, Neil | 729 - EFH Board Meeting Attendance | 3.00 |
| | | Attention to EFH Board Education Session via teleconference. | |
| 5/1/2017 | Nowitz, Raoul | 729 - EFH Board Meeting Attendance | 3.00 |
| | | Attention to telephonic attendance on Director Education Session/Restructuring Workshop | |
| 5/1/2017 | Cumbee, Matthew | 729 - EFH Board Meeting Attendance | 3.00 |
| | | Attention to telephonic attendance to the EFH Board workshop meeting | |
| 5/2/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 3.00 |
| | | Attention to further review of the Restructuring Workshop materials from May 1st, with attention on cash receipts and other elements; including discussion with Proskauer on same | |
| 5/2/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 3.50 |
| | | Attention to further review of materials post Director Workshop | |
| 5/2/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 3.00 |
| | | Attention to further review of EFH Corp. professional fees run-rate based on trend analysis produced; discussion with Proskauer and sharing of same. | |
| 5/2/2017 | Luria, Neil | 705 - Plan Development and Testimony | 2.50 |
| | | Attention to follow-up review of various EFH issues arising as a result of lack of PUC approval of NEE transaction and impact of various potential structures or transactions on EFH stakeholders. | |
| 5/3/2017 | Nowitz, Raoul | 718 - Meeting with counsel and with other | 0.50 |
| | | Attention to attendance on call with Proskauer regarding case status and next steps | |
| 5/3/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 2.50 |
| | | Attention to initial review of Feb 2017 MORs | |
| 5/4/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 2.00 |
| | | Attention to further review of backup plan hurdles to equitization plan follow-up on same | |
| 5/4/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 3.00 |
| | | Attention to review and reconciliation of cash balance in the Restructuring Workshop May 1, 2017 materials; follow-up on same | |
| 5/4/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 2.00 |
| | | Attention to comparative review of key EFH Corp. items in the Feb 2017 MOR compared to the Jan 2017 MOR and Dec 2016 MOR; follow-up on same. | |
| 5/5/2017 | Nowitz, Raoul | 730 - Project Management and Support | 2.00 |
| | | Attention to addressing budgeting and invoicing requirements | |
| 5/5/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 2.50 |
| | | Attention to further review of various files and cash projections pertaining to EFH Corp. cash | |
| 5/5/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 1.50 |
| | | Attention to further revision and updating of due diligence tracker for Evercore, send of cover note and draft to Proskauer for review. | |
| 5/6/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 2.00 |
| | | Attention to review of Evercore-prepared valuation metrics in the board materials of 05.01.2017 | |

## Energy Future Holdings Corp - May 2017

| Date | Person | Activity Code | Duration |
|------|--------|---------------|----------|
| 5/7/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.50 |
| | | Attention to review of draft PUCT Advocacy Plan deck | |
| 5/8/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 3.00 |
| | | Attention to further review of MORs and related cash projections; updating of financial due diligence tracker; sending to Evercore of same | |
| 5/8/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.50 |
| | | Attention to review of various court filings associated with the stipulation with Citigroup Financial Products; correspondence with Proskauer on same | |
| 5/9/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 1.00 |
| | | Attention to further review of the Citi hedging settlement stipulation including further correspondence with Proskauer on recovery impacts. | |
| 5/9/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 2.00 |
| | | Attention to various information on the NEE discussions with the PUCT on 05.08.2017 | |
| 5/9/2017 | Nowitz, Raoul | 730 - Project Management and Support | 2.00 |
| | | Attention to review of monthly fee submission report for required hours; review of same | |
| 5/10/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 3.00 |
| | | Attention to review of board materials for 05.10.2017 board meeting; follow-up on same. | |
| 5/10/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.50 |
| | | Attention to review of PUCT docket 46238 Joint Report and Application of Oncor and NextEra for regulatory approvals | |
| 5/10/2017 | Nowitz, Raoul | 729 - EFH Board Meeting Attendance | 2.00 |
| | | Attention to attendance on telephonic board call | |
| 5/10/2017 | Nowitz, Raoul | 718 - Meeting with counsel and with other | 0.50 |
| | | Attention to attendance on call with Proskauer post board meeting | |
| 5/10/2017 | Luria, Neil | 729 - EFH Board Meeting Attendance | 1.50 |
| | | Attention to Attendance on EFH board of director's teleconference. | |
| 5/10/2017 | Luria, Neil | 705 - Plan Development and Testimony | 2.00 |
| | | Attention to review of due diligence request list items for Evercore related to EFH cash roll-forward; review of issues associated with Elliott PIK positions; review of various other matters associated with PUC ruling impact. | |
| 5/11/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 4.50 |
| | | Attention to further review of March 2017 Finance Operating Report; comparison against prior projections; comparative analysis; development of questions; updating of due diligence tracker; distribution of draft to Proskauer for review | |
| 5/11/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 1.50 |
| | | Attention to review of professional fees projection schedule by firm per the March 2017 Monthly Reporting package and discussion with team on same. | |
| 5/11/2017 | Luria, Neil | 705 - Plan Development and Testimony | 2.00 |
| | | Attention to review of March 2017 Monthly Operating Report and review of cash roll-forward issues; review of diligence request list items provided to Evercore. | |

# Energy Future Holdings Corp - May 2017

| Date | Person | Activity Code | Duration |
|------|--------|---------------|----------|
| 5/12/2017 | Luria, Neil | 705 - Plan Development and Testimony Review & Analysis | 1.50 |
| | | Attention to review of PUC amicus brief filed by EFH and Elliot Management verified complaint. | |
| 5/12/2017 | Luria, Neil | 729 - EFH Board Meeting Attendance | 0.50 |
| | | Attention to Attendance on EFH board teleconference. | |
| 5/12/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony Review & Analysis | 2.50 |
| | | Attention to review of Elliott Associates adversary proceeding; follow-up on same | |
| 5/12/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony Review & Analysis | 1.00 |
| | | Attention to review of board materials ahead of 05.12.2017 board call | |
| 5/12/2017 | Nowitz, Raoul | 729 - EFH Board Meeting Attendance | 0.50 |
| | | Attention to attendance on board call | |
| 5/12/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 1.00 |
| | | Attention to updating of diligence tracker based on feedback from Proskauer; distribution of same to Evercore. | |
| 5/14/2017 | Luria, Neil | 705 - Plan Development and Testimony Review & Analysis | 1.00 |
| | | Attention to review of Amicus Curiae brief of EFH and EFIH in support of a rehearing filed with the Texas Public Utilities Commission. | |
| 5/14/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony Review & Analysis | 2.50 |
| | | Attention to review of the EFH Amicus Curiae brief PUC docket no 46238 | |
| 5/15/2017 | Nowitz, Raoul | 730 - Project Management and Support | 2.00 |
| | | Attention to review and editing of June 2017 fee budget and review of the March 2017 fee statement. | |
| 5/15/2017 | Luria, Neil | 718 - Meeting with counsel and with other constituents | 1.00 |
| | | Attention to teleconference with M. Thomas regarding blow-out matters related to Elliott NDA and other matters; Follow-up discussion with R. Nowitz re same. | |
| 5/15/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony Review & Analysis | 3.00 |
| | | Attention to discussions with team and Proskauer on status, next steps, key issues; follow-up on same | |
| 5/16/2017 | Luria, Neil | 729 - EFH Board Meeting Attendance | 1.00 |
| | | Attention to EFH Board call via teleconference. | |
| 5/16/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 2.00 |
| | | Attention to review of latest docket with focus on professional fees filings; follow-up on same. | |
| 5/16/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony Review & Analysis | 1.50 |
| | | Attention to review of board materials; follow-up with team on same | |
| 5/16/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony Review & Analysis | 1.00 |
| | | Attention to debrief/follow-up post Board call | |
| 5/16/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 1.50 |
| | | Attention to review of professional fees run-rate and follow-up on same. | |
| 5/16/2017 | Luria, Neil | 718 - Meeting with counsel and with other constituents | 0.50 |
| | | Attention to discussion with M. Thomas regarding current status of plan process and revisions to SOLIC engagement; Follow-up discussion with R. Nowitz re same. | |
| 5/17/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 2.50 |

# Energy Future Holdings Corp - May 2017

| Date | Person | Activity Code | Duration |
|------|--------|---------------|----------|
| | | Attention to review of latest version of financial due diligence tracker; follow-up on same | |
| 5/17/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 1.00 |
| | | Attention to review of latest docket for relevant filings and related | |
| 5/18/2017 | Luria, Neil | 729 - EFH Board Meeting Attendance | 0.50 |
| | | Attention to attendance on EFH Board Meeting. | |
| 5/18/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony Review & Analysis | 2.50 |
| | | Attention to review of board materials; post- board call further review and discussion of same | |
| 5/18/2017 | Nowitz, Raoul | 718 - Meeting with counsel and with other constituents | 0.50 |
| | | Attention to status discussions with Proskauer | |
| 5/18/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 3.00 |
| | | Attention to further review of professional fees run-rate per recent discussions with Proskauer; discussions with team on same | |
| 5/18/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 2.50 |
| | | Attention to review of enterprise value and reorganized capital structure construct outline per board materials | |
| 5/22/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.00 |
| | | Attention to review of materials pertaining to 05.19.2017 court hearing on Elliott complaint | |
| 5/22/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 1.50 |
| | | Attention to review of professional fee applications pertaining to EFH Corp.; follow-up on same | |
| 5/22/2017 | Nowitz, Raoul | 711 - Retention Revision Matter | 2.00 |
| | | Attention to areas of potential work plan revisions in light so change of SOLIC fee arrangement; follow-up on same. | |
| 5/22/2017 | Nowitz, Raoul | 711 - Retention Revision Matter | 1.50 |
| | | Attention to review of draft SOLIC Declaration for on-going role; communications with working team and counsel | |
| 5/23/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 3.00 |
| | | Attention to review of professional fee spend in light of revision in fee structure | |
| 5/24/2017 | Nowitz, Raoul | 711 - Retention Revision Matter | 3.00 |
| | | Attention to further elements pertaining to SOLIC supplemental declaration | |
| 5/24/2017 | Nowitz, Raoul | 730 - Project Management and Support | 2.00 |
| | | Attention to review and feedback on actual hours pre-submission of time; assessment of prospective workplan matters in light of change to hourly fee | |
| 5/24/2017 | Nowitz, Raoul | 750 - Travel Time | 4.00 |
| | | Attention to travel to New York for meeting with Evercore pertaining to financial elements covering EFH Corp. | |
| 5/25/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 3.00 |
| | | Attention to further review of professional hours pertaining run-rate and projection | |
| 5/25/2017 | Nowitz, Raoul | 750 - Travel Time | 4.00 |
| | | Attention to travel from New York post Evercore meeting | |
| 5/25/2017 | Nowitz, Raoul | 718 - Meeting with counsel and with other | 1.00 |
| | | Attention to meeting with Evercore, including post-meeting follow-up and debrief. | |
| 5/25/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 3.50 |

# Energy Future Holdings Corp - May 2017

| Date | Person | Activity Code | Duration |
|------|--------|---------------|----------|
| | | Attention to review of various diligence items post Evercore meeting. | |
| 5/26/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 2.00 |
| | | Attention to follow-up on certain cash diligence matters post discussion with Evercore | |
| 5/28/2017 | Nowitz, Raoul | 730 - Project Management and Support | 3.00 |
| | | Attention to review of prior work plan and related required revisions and requested by team | |
| 5/28/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 3.00 |
| | | Attention to further review of professional fees spend | |
| 5/29/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 2.00 |
| | | Attention to review of progress of EFH Corp recoveries pertaining to potential conflict matter discussions | |
| 5/29/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 3.50 |
| | | Attention to review of material elements of recoveries under the NEE Plan in favor of EFH Corp. recoveries as it relates to future conflict matters | |
| 5/30/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 4.00 |
| | | Attention to review of most recent received pre-emergence cash projection, deductions ate emergence, impact at different projected emergence, comparison again prior versions | |
| 5/31/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials Review | 3.50 |
| | | Attention to initial review of March 2017 MORs | |

# Energy Future Holdings Corp - June 2016

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| 6/7/2017 | Luria, Neil | 718 - Meeting with counsel and with other | 0.80 | $ 660.00 |
| | | Attention to teleconference with M. Thomas and M. Cumbee regarding analysis related to NEE termination fee allocation; Follow-up call with M. Cumbee re same | | |
| 6/7/2017 | Luria, Neil | 749 - Financial Analysis Related to Potential | 0.40 | $ 330.00 |
| | | Attention to review of initial draft analysis prepared by M. Cumbee based on conversations with M. Thomas at Proskauer Rose. | | |
| 6/7/2017 | Luria, Neil | 749 - Financial Analysis Related to Potential | 0.20 | $ 165.00 |
| | | Attention to discussion with R. Nowitz regarding analysis requested by Proskauer Rose with respect to termination fee allocations. | | |
| 6/7/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 0.70 | $ 486.50 |
| | | Attention to attendance on call with SOLIC team members to debrief on discussions with Proskauer on required termination fee allocation analysis (0.2), insofar as this relates to conflict matters, with required post-call follow-up on same (0.5). | | |
| 6/7/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.70 | $ 1,181.50 |
| | | Attention to review of prior board materials as referenced pertaining to analysis to be included in termination fee allocation analysis, as requested by Proskauer. | | |
| 6/7/2017 | Cumbee, Matthew | 718 - Meeting with counsel and with other | 1.20 | $ 630.00 |
| | | Attention to call with Proskauer to discuss Plan status updates and related ad hoc financial analyses (0.8), including internal follow-up discussion with SOLIC team (0.4) | | |
| 6/7/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 3.90 | $ 2,047.50 |
| | | Attention to preparation of analysis re: potential allocation of the NEE termination fee between EFH / EFIH estates | | |
| 6/8/2017 | Luria, Neil | 749 - Financial Analysis Related to Potential | 0.90 | $ 742.50 |
| | | Attention to review of termination fee allocation analysis prepared at the request of Proskauer Rose by M. Cumbee. | | |
| 6/8/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 3.80 | $ 2,641.00 |
| | | Attention to review of initial draft of SOLIC termination fee allocation analysis as requested by Proskauer, including details provided on follow-up requirements and edits as sought from team members. | | |
| 6/8/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.80 | $ 1,251.00 |
| | | Attention to additional requested edits to draft termination fee allocation analysis, discussion with team on same, follow-up on recovery analysis elements as sought from Evercore. | | |
| 6/8/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 2.40 | $ 1,260.00 |
| | | Attention to internal review and further update of the NEE termination fee allocation analysis | | |
| 6/8/2017 | Cumbee, Matthew | 718 - Meeting with counsel and with other | 0.40 | $ 210.00 |
| | | Attention to call with Evercore to discuss the latest developments and assumptions re: the Elliott proposal | | |
| 6/8/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 3.30 | $ 1,732.50 |
| | | Attention to continued review and update of the NEE termination fee allocation analysis based on feedback from counsel | | |
| 6/8/2017 | Luria, Neil | 749 - Financial Analysis Related to Potential | 0.40 | $ 330.00 |
| | | Attention to review of past board presentations with respect to total value of previous plans. | | |

# Energy Future Holdings Corp - June 2016

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| 6/9/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.30 | $ 903.50 |
| | | Attention to further review of the draft termination fee allocation analysis pertaining to confirmation of numbers as shown relative to underlying recovery analyses, further review of sensitivity tables for output and formatting, and elements as presented on same. | | |
| 6/9/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 0.70 | $ 367.50 |
| | | Attention to ongoing communication with counsel, Proskauer, in review of the NEE termination fee allocation analysis | | |
| 6/11/2017 | Luria, Neil | 749 - Financial Analysis Related to Potential | 0.30 | $ 247.50 |
| | | Attention to review of revised termination fee analysis prepared by M. Cumbee at the request of Proskauer Rose. | | |
| 6/11/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 2.30 | $ 1,598.50 |
| | | Attention to review of comments sought by Proskauer pertaining to requested revisions to the termination fee analysis, insofar as it relates to conflict matters, provision of comments to team on same, and required follow-up on same including further review of supporting schedules. | | |
| 6/11/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 2.70 | $ 1,417.50 |
| | | Attention to further internal review and update of the NEE termination fee allocation analysis | | |
| 6/11/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 2.10 | $ 1,102.50 |
| | | Attention to continued update and refinement of the NEE termination fee allocation analysis | | |
| 6/16/2017 | Luria, Neil | 729 - EFH Board Meeting Attendance | 0.60 | $ 495.00 |
| | | Attention to review of board materials distributed in advance of EFH Board meeting; Discussion with R. Nowitz regarding board meeting and status of Elliott proposed transaction and analysis requested by Proskauer. | | |
| 6/16/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.40 | $ 1,668.00 |
| | | Attention to review of 06.16.2017 board materials in the context of EFH potential conflict matters and details included pertaining to treatment of EFH cash. | | |
| 6/16/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.70 | $ 1,181.50 |
| | | Attention to correspondence with team members pertaining to Proskauer needs post board call; review of supplementary information pertaining to same. | | |
| 6/16/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 3.70 | $ 2,571.50 |
| | | Attention to review of key elements associated with Proskauer-directed required financial analysis; further discussion with team on same; review of supporting materials pertaining to required analysis. | | |
| 6/16/2017 | Cumbee, Matthew | 718 - Meeting with counsel and with other | 0.50 | $ 262.50 |
| | | Attention to call with Proskauer to review NEE termination fee and other related analyses that impact EFH cash at emergence | | |
| 6/16/2017 | Cumbee, Matthew | 718 - Meeting with counsel and with other | 0.60 | $ 315.00 |
| | | Attention to call with Evercore to confirm EFH/EFIH cash at emergence assumptions and creditor claim assumptions | | |
| 6/16/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 3.10 | $ 1,627.50 |
| | | Attention to preparation of analysis regarding the distribution of EFH Corp cash to its creditors under various Plan scenarios | | |
| 6/17/2017 | Luria, Neil | 749 - Financial Analysis Related to Potential | 0.30 | $ 247.50 |

# Energy Future Holdings Corp - June 2016

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| | | Review of analysis prepared by M. Cumbee with respect to distribution of EFH cash. | | |
| 6/17/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.50 | $ 1,042.50 |
| | | Attention to review of draft of Proskauer-requested financial analysis and comparative review of various elements of supporting documentation | | |
| 6/17/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 0.70 | $ 367.50 |
| | | Attention to internal call with SOLIC team to discuss Plan updates and next steps / timing | | |
| 6/17/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.10 | $ 764.50 |
| | | Attention to development of list of outstanding elements, relating to ad hoc requests, for further review and discussion with circulation to team | | |
| 6/17/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 0.70 | $ 486.50 |
| | | Attention to discussion with SOLIC team regarding various financial analyses requested by Proskauer, including follow up on same | | |
| 6/18/2017 | Luria, Neil | 749 - Financial Analysis Related to Potential | 0.40 | $ 330.00 |
| | | Attention to discussion with R. Nowitz and M. Cumbee regarding analysis prepared at the request of Proskauer. | | |
| 6/18/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 0.50 | $ 347.50 |
| | | Attention to team call pertaining to Proskauer-requested financial analysis | | |
| 6/18/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.40 | $ 973.00 |
| | | Attention to further review of analysis as requested by Proskauer | | |
| 6/18/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 0.90 | $ 472.50 |
| | | Attention to internal call to discuss latest Plan developments, and likely impact of EFH cash, and next steps | | |
| 6/18/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 1.10 | $ 577.50 |
| | | Attention to internal call with SOLIC team to review the analysis re: distribution of EFH cash to its creditors across various Plan scenarios, including follow up of same | | |
| 6/19/2017 | Cumbee, Matthew | 795 - Fee Applications/Retention | 3.80 | $ 1,995.00 |
| | | Attention to preparation and review of 7th Interim Fee Application | | |
| 6/20/2017 | Nowitz, Raoul | 795 - Fee Applications/Retention | 2.30 | $ 1,598.50 |
| | | Attention to drafting, editing and updating the latest draft of SOLIC Capital Advisors' Seventh Interim Fee App; including various communications with team. | | |
| 6/21/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.20 | $ 834.00 |
| | | Attention to review of financial elements pertaining to potential termination fee allocation post EFH board call | | |
| 6/26/2017 | Nowitz, Raoul | 718 - Meeting with counsel and with other | 0.30 | $ 208.50 |
| | | Attention to update call with Proskauer; follow-up on same | | |
| 6/29/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 1.70 | $ 1,181.50 |
| | | Attention to review of latest April 2017 MOR; reviewed relative to prior MORs; specific questions posted for management's input on same. | | |
| 6/29/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 1.50 | $ 1,042.50 |
| | | Attention to review of latest EFH pre-emergence cash projection and emergence date cash projection; comparison against prior versions with identification of key variances; questions posed for management input on same. | | |

## Energy Future Holdings Corp - June 2016

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| 6/30/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.90 | $ 625.50 |
| | | Attention to review of docket for relevant motions, filings, and updates. | | |
| 6/30/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 1.70 | $ 1,181.50 |
| | | Attention to further review of latest company-prepared cash flow projection, attention on cash balances at various illustrative emergence dates, development of key observations and distribution to Proskauer of same. | | |

$ 41,701.50

# Energy Future Holdings Corp - July 2017

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| 7/3/2017 | Nowitz, Raoul | 795 - Fee Applications/Retention | 2.10 | $ 1,459.50 |
| | | Attention to review of latest required SOLIC draft fee app edits | | |
| 7/5/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 1.40 | $ 973.00 |
| | | Attention to initial review of May 2015 MORs filed on the docket with focus on EFH Corp. | | |
| 7/6/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.80 | $ 1,251.00 |
| | | Attention to review of 07.06.2017 Board materials as it relates to Plan matters insofar as it relates to Conflict Matters pertaining to EFH Corp. | | |
| 7/7/2017 | Hogan, Paul | 795 - Fee Applications/Retention | 3.50 | $ 2,012.50 |
| | | Attention to review and submission of SOLIC's 7th Interim Fee Statement covering the period January through April 2017. | | |
| 7/10/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.70 | $ 486.50 |
| | | Attention to review of the Declaration of David Ying in support of the motion of the EFH/EFIH Debtors for order authorizing entry into the BHE merger agreement and approving the termination fee; including follow-up on same, insofar as it relates to conflict matters. | | |
| 7/10/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.80 | $ 556.00 |
| | | Attention to the declaration of P. Keglevic in support of the motion of the EFH/EFIH debtors for authorizing the entry into the BHE merger agreement and approving the termination fee, including follow-up on same, insofar as it relates to conflict matters. | | |
| 7/10/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.80 | $ 1,946.00 |
| | | Attention to the review of the EFH/EFIH Plan and Disclosure Statement with attention on elements insofar as they relate to elements pertaining to conflicts matters; follow-up on same including communications with team. | | |
| 7/11/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.10 | $ 1,459.50 |
| | | Attention to review of letters and notices filed on the docket (Elliott and K&E) insofar as they relates to Conflicts Matters pertaining to EFH Corp.; follow-up on same. | | |
| 7/11/2017 | Nowitz, Raoul | 718 - Meeting with counsel and with other | 0.50 | $ 347.50 |
| | | Attention to attendance on call with Proskauer pertaining to matters associated with recent case developments insofar as they relate to conflicts matters; follow-up on same. | | |
| 7/11/2017 | Cumbee, Matthew | 718 - Meeting with counsel and with other | 0.50 | $ 262.50 |
| | | Attention to call with Proskauer to discuss ongoing case developments and potential conflict matters arising from such | | |
| 7/12/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.80 | $ 1,251.00 |
| | | Attention to required follow-up on matters post call with Proskauer on 07.11.17 insofar as they relate to Conflict Matters; update of team on same | | |
| 7/12/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 0.50 | $ 347.50 |
| | | Attention to review of Proskauer draft slides on elements insofar as they relate to Conflicts Matters as requested by Proskauer, update and distribution of same to Proskauer | | |
| 7/12/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 3.10 | $ 1,627.50 |
| | | Attention to review of materials and confirmation of analyses presented by Proskauer as it relates to conflict matters and EFH cash | | |
| 7/13/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 2.70 | $ 1,876.50 |

## Energy Future Holdings Corp - July 2017

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| | | Attention to review of underlying supporting materials for confirmation of select amounts reflected in Proskauer-requested analysis; follow-up on same. | | |
| 7/13/2017 | Nowitz, Raoul | 718 - Meeting with counsel and with other | 1.00 | $ 695.00 |
| | | Attention to attendance on call with Proskauer to discuss next steps insofar as they relate to Conflicts Matters | | |
| 7/13/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 0.70 | $ 486.50 |
| | | Attention to preparation ahead of call with Proskauer. | | |
| 7/13/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.90 | $ 1,320.50 |
| | | Attention to further review of historical time-based elements of bid development insofar as it relates to elements associated with Conflicts Matters. | | |
| 7/13/2017 | Cumbee, Matthew | 718 - Meeting with counsel and with other | 1.00 | $ 525.00 |
| | | Attention to internal call with SOLIC team and Proskauer to discuss status update re: plan proposals and next steps | | |
| 7/14/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.80 | $ 1,251.00 |
| | | Attention to follow-up on certain elements pertaining to Proskauer-directed analysis insofar as they relate to Conflicts Matters | | |
| 7/15/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.90 | $ 625.50 |
| | | Attention to review of K&E produced point-counterpoint on Elliott letter to Husnick with focus on elements insofar as they relate to Conflicts Matters. | | |
| 7/16/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 3.60 | $ 2,502.00 |
| | | Attention to further review of elements associated with review of prior board materials, recovery analyses and related for financial analysis as requested by Proskuaer insofar as it related to Conflicts Matters. | | |
| 7/16/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 2.80 | $ 1,946.00 |
| | | Attention to review of latest Proskauer analysis, as requested by Proskauer, with elements identified for revision, confirmation of select numbers, and correspondence with Proskauer on same including suggested edits to Proskauer presentation. | | |
| 7/17/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 2.30 | $ 1,598.50 |
| | | Attention to revisiting of draft materials developed for Proskauer; confirmation of numbers; review of prior board materials as it relates to elements considered within the prepared financial analysis | | |
| 7/18/2017 | Luria, Neil | 705 - Plan Development and Testimony | 0.30 | $ 247.50 |
| | | Attention to review of allocation of professional fees analysis requested by Proskauer and prepared by M. Cumbee. | | |
| 7/18/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.00 | $ 695.00 |
| | | Attention to development of professional fees allocation schedule as requested by Proskauer; review of same with team and Proskauer. | | |
| 7/18/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 2.60 | $ 1,807.00 |
| | | Attention to review of prior versions of professional allocations; follow-up on same | | |
| 7/18/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 3.20 | $ 1,680.00 |
| | | Attention to continued iterations of cash related analysis as requested by Proskauer | | |
| 7/19/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 3.50 | $ 1,837.50 |

# Energy Future Holdings Corp - July 2017

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| | | Attention to development and review of requested analysis regarding allocation of EFH Cash amongst its creditors based on various emergence dates | | |
| 7/19/2017 | Luria, Neil | 729 - EFH Board Meeting Attendance | 1.00 | $ 825.00 |
| | | Attention to attendance on EFH/EFIH Board teleconference. | | |
| 7/19/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 2.80 | $ 1,946.00 |
| | | Attention to review of various financial analyses and materials for Proskauer ahead of Proskauer meeting with EFH DDs, communications with Proskauer on same; follow-up on related | | |
| 7/19/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.30 | $ 903.50 |
| | | Attention to review of updated analyses based on edits as directed by Proskauer. | | |
| 7/19/2017 | Nowitz, Raoul | 718 - Meeting with counsel and with other | 1.10 | $ 764.50 |
| | | Attention to review of professional fee analysis in terms of discussion with Proskauer, follow-up on same. | | |
| 7/19/2017 | Nowitz, Raoul | 718 - Meeting with counsel and with other | 0.80 | $ 556.00 |
| | | Attention to attendance on call with and review of correspondence from Proskauer post counsel's discussion with select DDs of EFH Corp; follow-up on same. | | |
| 7/19/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 3.10 | $ 1,627.50 |
| | | Attention to development of requested analysis showing allocation of professional fees amongst EFH/EFIH estates | | |
| 7/19/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 3.20 | $ 1,680.00 |
| | | Attention to internal review and edit of professional fee analysis between EFH/EFIH estates | | |
| 7/20/2017 | Luria, Neil | 705 - Plan Development and Testimony | 0.60 | $ 495.00 |
| | | Attention to review of board materials circulated by Ashley Burton in advance of EFH/EFIH board meeting. | | |
| 7/20/2017 | Luria, Neil | 705 - Plan Development and Testimony | 0.90 | $ 742.50 |
| | | Attention to teleconference with M. Thomas, R. Nowitz and M. Cumbee to review issues raised by Fidelity with respect to allocation of Termination Fee related to NEE transaction. | | |
| 7/20/2017 | Luria, Neil | 705 - Plan Development and Testimony | 0.30 | $ 247.50 |
| | | Attention to review of Termination Fee analysis prepared by R. Nowitz and M. Cumbee. | | |
| 7/20/2017 | Nowitz, Raoul | 718 - Meeting with counsel and with other | 2.10 | $ 1,459.50 |
| | | Attention to attendance on various calls with Proskauer pertaining to required updated financial analysis, discussions with team on same, related follow-up. | | |
| 7/20/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 3.80 | $ 2,641.00 |
| | | Attention to development and review of financial analysis pertaining to termination fee analytics, discussion with team on same, follow-up and review of prior Board materials pertaining to same. | | |
| 7/20/2017 | Cumbee, Matthew | 718 - Meeting with counsel and with other | 2.10 | $ 1,102.50 |
| | | Attention to calls with Proskauer to review and discuss ad hoc analyses as it relates to conflict matters and EFH cash | | |
| 7/20/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 5.30 | $ 2,782.50 |
| | | Attention to further development and refinement of cash related analyses as it relates to EFH cash and potential conflict matters | | |
| 7/21/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 2.10 | $ 1,459.50 |
| | | Attention to review of initial files provided by Proskauer pertaining to professional fees allocations. | | |

# Energy Future Holdings Corp - July 2017

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| 7/21/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.60 | $ 1,112.00 |
| | | Attention to review of select fee applications as it relates to background for professional fees allocations | | |
| 7/21/2017 | Nowitz, Raoul | 718 - Meeting with counsel and with other | 0.70 | $ 486.50 |
| | | Attention to attendance on call with Proskauer, and creditor constituent advisors pertaining to termination fee and other elements insofar as they relate to Conflict Matters. | | |
| 7/21/2017 | Cumbee, Matthew | 718 - Meeting with counsel and with other | 0.70 | $ 367.50 |
| | | Attention to attendance on call with Proskauer, and creditor constituent advisors pertaining to termination fee and other elements insofar as they relate to Conflict Matters. | | |
| 7/21/2017 | Cumbee, Matthew | 718 - Meeting with counsel and with other | 0.50 | $ 262.50 |
| | | Attention to call with Proskauer to provide further update on analyses relating to conflict matters and EFH cash | | |
| 7/21/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 1.20 | $ 630.00 |
| | | Attention to review of prior Board materials and bankruptcy docket filings as it relates to development of analyses as it relates to EFH recoveries based on various plan proposals | | |
| 7/21/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 1.10 | $ 577.50 |
| | | Attention to update of analyses showing recoveries to EFH creditors under various plan proposals and at various emergence dates | | |
| 7/23/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 2.80 | $ 1,946.00 |
| | | Attention to review of background materials pertaining to EFH Corp DD requested analysis on comparative recoveries by constituent by estate | | |
| 7/24/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 0.80 | $ 556.00 |
| | | Attention to updates from team pertaining to latest requests from Proskauer; discussion on same. | | |
| 7/24/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 3.70 | $ 2,571.50 |
| | | Attention to further review of background materials pertaining to EFH Corp DD requested analysis on comparative recoveries by constituent by estate, including understanding basis of allocations of value by estate. | | |
| 7/24/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 3.40 | $ 1,785.00 |
| | | Attention to continued update of analyses relating to EFH cash, including termination fee, professional fees, and distribution of recoveries at various emergence dates | | |
| 7/24/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 0.90 | $ 472.50 |
| | | Attention to internal review of ad hoc analyses prepared relating to EFH cash and related potential conflict matters | | |
| 7/25/2017 | Luria, Neil | 705 - Plan Development and Testimony | 0.40 | $ 330.00 |
| | | Attention to review of NEE Termination Fee allocation analysis prepared by M. Cumbee; Review of past board presentations with respect to value of merger agreements. | | |
| 7/25/2017 | Luria, Neil | 705 - Plan Development and Testimony | 0.30 | $ 247.50 |
| | | Attention to discussions with R. Nowitz re current status of Termination Fee allocations and next steps. | | |
| 7/25/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.70 | $ 1,181.50 |
| | | Attention to review of latest version of various analyses, insofar as they relate to Conflict Matters, as shared with Proskauer on 07.24.2017. | | |
| 7/25/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.40 | $ 973.00 |

# Energy Future Holdings Corp - July 2017

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| | | Attention to review of requested edits to analysis as requested by Proskauer after discussions with select EFH Corp. Disinterested Directors; follow-up on same. | | |
| 7/25/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.60 | $ 1,112.00 |
| | | Attention to review of draft summary recovery analysis as requested by EFH Corp. DDs, with edits made, discussions with team, and recommended cover letter. | | |
| 7/25/2017 | Luria, Neil | 705 - Plan Development and Testimony | 0.40 | $ 330.00 |
| | | Attention to further review of termination fee allocation analysis requested by Proskauer. | | |
| 7/25/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.80 | $ 1,251.00 |
| | | Attention to further review and confirmation of build-up of select numbers against background materials; update of analysis on same and revisions to formatting. | | |
| 7/25/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 1.40 | $ 735.00 |
| | | Attention to refinement of illustrative EFH cash analyses based on review by Proskauer | | |
| 7/25/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 3.40 | $ 1,785.00 |
| | | Attention to development of comparative analysis showing recoveries to both E-side and T-side creditors based on various plan proposals | | |
| 7/25/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 1.80 | $ 945.00 |
| | | Attention to review of analyses comparing E-side and T-side recoveries at various emergence dates | | |
| 7/25/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 2.70 | $ 1,417.50 |
| | | Attention to update of E-side and T-side recovery analyses based on internal review | | |
| 7/26/2017 | Nowitz, Raoul | 795 - Fee Applications/Retention | 2.60 | $ 1,807.00 |
| | | Attention to review of May 2017 SOLIC hours, allocations, narratives, and expenses, provide revisions, follow-up on same with team members and SOLIC accounting dept; subsequent sign-off on same. | | |
| 7/27/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.90 | $ 625.50 |
| | | Attention to various communications with the lead bidder on update and status | | |
| 7/28/2017 | Luria, Neil | 729 - EFH Board Meeting Attendance | 0.60 | $ 495.00 |
| | | Attention to attendance on EFH telephonic board call. | | |
| 7/28/2017 | Nowitz, Raoul | 795 - Fee Applications/Retention | 1.80 | $ 1,251.00 |
| | | Attention to review of select EFH hourly Financial Advisor billers' sample bills for formatting of recent monthly invoices in preparation for the initial hourly bill for SOLIC on an hourly reported basis; discussion with SOLIC accounting on same; follow-up on same | | |
| 7/28/2017 | Nowitz, Raoul | 795 - Fee Applications/Retention | 0.50 | $ 347.50 |
| | | Attention to drafting of email and correspondence with Proskauer pertaining to formatting or reporting of SOLIC time and invoicing for June 2017 onwards; follow-up on same. | | |
| 7/28/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.50 | $ 347.50 |
| | | Attention to review of board materials post Board meeting pertaining to elements insofar as they relate to conflicts matters. | | |
| 7/31/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 3.20 | $ 2,224.00 |

## Energy Future Holdings Corp - July 2017

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| | | Attention to review of various briefs, motions, and declarations filed on the docket pertaining to termination fee litigation and related and required review insofar as it relates to Conflicts Matters, including filings from Elliott Associates; distribution to team of same, and follow-up on same. | | |
| | | | | $ 80,478.00 |

# Energy Future Holdings Corp - August 2017

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| 8/1/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.60 | $ 1,807.00 |
| | | Attention to review of docket #11649 Application of NextEra Energy for Payment of Administrative Claim insofar as it relates to conflicts matters pertaining to termination fee payment; follow-up on same. | | |
| 8/2/2017 | Nowitz, Raoul | 795 - Fee Applications/Retention | 0.70 | $ 486.50 |
| | | Attention to communications with Proskauer and SOLIC Accounting Dept. pertaining to the draft June 2017 invoice details; follow-up on same | | |
| 8/2/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.30 | $ 208.50 |
| | | Attention to review of Docket #11666 Elliott Objection to the Application of NEE for Payment of an Admin Claim as it relates to Conflicts Matter for payment of a termination fee; follow-up on same | | |
| 8/3/2017 | Luria, Neil | 705 - Plan Development and Testimony | 0.40 | $ 330.00 |
| | | Review of NextEra application for payment of Termination Fee and Elliott's preliminary objection. | | |
| 8/3/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.80 | $ 1,251.00 |
| | | Attention to review of latest elements filed on docket pertaining to termination fee insofar as it relates to conflicts matters, including review of docket 11649 and docket 11666; communications with team on same. | | |
| 8/4/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.90 | $ 625.50 |
| | | Attention to review of the Debtor's Adversary Complaint (docket #11668) pertaining to the Termination fee, as it relates to Conflicts Matters. | | |
| 8/7/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.60 | $ 1,112.00 |
| | | Attention to review of various filings and objections on the docket pertaining to termination fee litigation insofar as it relates to conflicts matters; follow-up on same. | | |
| 8/8/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 2.60 | $ 1,807.00 |
| | | Attention to review of 07/07/2017 Disclosure Statement and related for specific details on cash balances, as directed by Proskauer, in the context of sharing of information with a specific creditor group; including post-review follow-up | | |
| 8/8/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 3.30 | $ 2,293.50 |
| | | Attention to review of waterfall and recoveries materials in 07.06.2017 Board materials and SOLIC analysis for comparison against recoveries in the 07.07.2017 Disclosure Statement as part of Proskauer-directed request pertaining to details in cash balance provided relative to specific creditor request; comparison and follow-up on same | | |
| 8/8/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 0.40 | $ 278.00 |
| | | Attention to communications with Evercore on cash-related questions in the 07.07.2017 Disclosure Statement as directed by Proskauer | | |
| 8/8/2017 | Nowitz, Raoul | 795 - Fee Applications/Retention | 0.60 | $ 417.00 |
| | | Attention to review of draft June SOLIC invoice and time entries; correspondence with team on same | | |
| 8/8/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 3.30 | $ 1,732.50 |
| | | Attention to review of the latest Disclosure Statement (filed 7.7.17) to understand plan proposals regarding creditor treatment and ultimate recoveries | | |

# Energy Future Holdings Corp - August 2017

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| 8/8/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 3.90 | $ 2,047.50 |
| | | Attention to update of creditor recovery models, based on review of Disclosure Statement, to reflect latest deal terms, including internal review and iteration of same | | |
| 8/9/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 0.50 | $ 347.50 |
| | | Attendance on call with team to review analysis as it relates to Proskauer enquiry on cash balance information reflected on the 07.07.2017 Disclosure Statement | | |
| 8/9/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 0.70 | $ 486.50 |
| | | Attention to drafting of communications to Proskauer pertaining to feedback from Evercore and from diligence performed by SOLIC team pertaining to Proskauer-requested insights to certain cash information in the Disclosure Statement | | |
| 8/9/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 3.30 | $ 2,293.50 |
| | | Attention to review of the 07.26.2017 court hearing transcript including attention on the review of testimony from R. Wood of Moelis pertaining to various elements insofar as they relate to bid implications and conflict matters | | |
| 8/10/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.90 | $ 625.50 |
| | | Attention to review of UCC Limited Objections and Reservation of Rights on the BHE Termination Fee (Docket # 11699), correspondence with Proskauer, follow-up on same | | |
| 8/10/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.30 | $ 1,598.50 |
| | | Attention to review of Elliott objection to motion to enter in the BHE merger agreement and termination fee (Docket #11700) insofar as this related to conflicts matters; follow-up on same | | |
| 8/11/2017 | Nowitz, Raoul | 718 - Meeting with counsel and with other | 0.70 | $ 486.50 |
| | | Attendance on calls with Proskauer pertaining to latest status and updates on depositions | | |
| 8/11/2017 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 2.10 | $ 1,459.50 |
| | | Attention to review of prior materials and prepared analyses pertaining to items mentioned in depositions on 08.11.2017 per discussions with Proskauer insofar as they relate to conflicts matters; follow-up on same | | |
| 8/11/2017 | Luria, Neil | 705 - Plan Development and Testimony | 0.70 | $ 577.50 |
| | | Review of Board of Directors materials distributed to Board in advance of Board Meeting; Review of impact on EFH cash from various potential strategic alternatives. | | |
| 8/11/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.20 | $ 1,529.00 |
| | | Attention to review of Board materials with focus on conflicts matters and status on key case matters; review and comparison against prior information re cash trends and related | | |
| 8/11/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 1.80 | $ 945.00 |
| | | Attention to review of the latest Board Materials for identification of matters that may impact EFH cash | | |
| 8/16/2017 | Nowitz, Raoul | 795 - Fee Applications/Retention | 1.70 | $ 1,181.50 |
| | | Attention to development of the September 2017 budget; discussion with team; follow-up on same | | |
| 8/16/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.80 | $ 556.00 |
| | | Attention to review of Elliott letter to EFIH dated 08.16.2017; discussion with team on same | | |
| 8/16/2017 | Luria, Neil | 705 - Plan Development and Testimony | 0.90 | $ 742.50 |

# Energy Future Holdings Corp - August 2017

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| | | Attention to initial summary review of deposition transcript of Chuck Cremens, EFIH disinterested director, and David Prager, advisor to the EFIH disinterested director. | | |
| 8/16/2017 | Luria, Neil | 705 - Plan Development and Testimony | 0.60 | $ 495.00 |
| | | Review of correspondence from Elliott Management forwarded by Kirkland & Ellis regarding purchase of Fidelity interests and review of impact thereof; Discussions with R. Nowitz re same. | | |
| 8/16/2017 | Luria, Neil | 705 - Plan Development and Testimony | 0.40 | $ 330.00 |
| | | Review of Cremens and Prager depositions transcripts related to Elliott issues | | |
| 8/17/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.80 | $ 1,946.00 |
| | | Attention to review of various docket filings and related analyses/filings pertaining to the Elliott Letter issued on 08.16.2017 insofar as it relates to Conflicts Matters for EFH Corp; related discussions with team on same | | |
| 8/17/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.90 | $ 1,320.50 |
| | | Attention to review of docket #11762 BHE joinder in motion for entry into the merger agreement and approving the termination fee as it relates to elements on the termination fee insofar as these are Conflicts Matters; follow-up with team on same | | |
| 8/17/2017 | Nowitz, Raoul | 795 - Fee Applications/Retention | 0.70 | $ 486.50 |
| | | Attention to required follow-up and editing to the draft SOLIC June 2017 invoice, follow-up with team and SOLIC accounting on same. | | |
| 8/17/2017 | Cumbee, Matthew | 705 - Plan Development and Testimony | 0.60 | $ 315.00 |
| | | Attention to review of Elliot's official objection to the BHE plan and Disclosure Statement | | |
| 8/17/2017 | Cumbee, Matthew | 705 - Plan Development and Testimony | 1.10 | $ 577.50 |
| | | Attention to review of Berkshires Motion regarding the proposed NEE Termination Fee | | |
| 8/18/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.30 | $ 1,598.50 |
| | | Attention to review of the 08.18.2017 board materials with focus on recent developments on elements insofar as they relate to Conflicts matters, including bidder revisions to termination fee terms; review of other materials; follow-up on same. | | |
| 8/18/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.70 | $ 1,876.50 |
| | | Attention to further review of D. Prager deposition dated 8/11/2016 as provided by Proskauer with focus on elements insofar as it relates to Conflicts Matters; including follow-up on same on elements insofar as they relate to potential Conflicts Matters. | | |
| 8/18/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.60 | $ 1,112.00 |
| | | Attention to further review of C. Cremens deposition dated 8/11/2016 as provided by Proskauer with focus on elements insofar as it relates to Conflicts Matters; including follow-up on same. | | |
| 8/18/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 2.50 | $ 1,312.50 |
| | | Attention to review of the latest Board Materials in the context of identifying potential conflict matters, including revised bids, treatment of EFH cash, and related termination fee provisions | | |
| 8/18/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 1.60 | $ 840.00 |

# Energy Future Holdings Corp - August 2017

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| | | Attention to review of the latest waterfall analysis presented by Evercore, including comparison of BHE and Sempra deals, for comparison against internally developed analyses | | |
| 8/19/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.80 | $ 1,946.00 |
| | | Attention to review of J. Rosenbaum (Elliot) deposition dated 8/17/2016 as provided by Proskauer with focus on elements insofar as it relates to Conflicts Matters; including follow-up on same. | | |
| 8/19/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.70 | $ 486.50 |
| | | Attention to review of NEE limited objection to the Disclosure Statement (Docket # 11776) insofar as it relates to Conflicts Matters on termination fee matters | | |
| 8/19/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.90 | $ 625.50 |
| | | Attention to review of Elliott Fund's objection to an entry of an order approving the Disclosure Statement (Docket #11778) insofar as it relates to elements associated with Conflicts Matters. | | |
| 8/20/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.60 | $ 1,112.00 |
| | | Attention to review of 08.20.2017 Board materials as it relates to key elements of Board voting and potential Conflicts Matters; follow-up on same. | | |
| 8/20/2017 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 1.50 | $ 787.50 |
| | | Attention to review of the latest Board Materials | | |
| 8/22/2017 | Luria, Neil | 705 - Plan Development and Testimony | 0.40 | $ 330.00 |
| | | Update call with R. Nowitz regarding current status of Sempra transaction and board matters. | | |
| 8/22/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 2.70 | $ 1,876.50 |
| | | Attention to review of June 2017 MOR; follow-up on same; communications with team pertaining to case updates | | |
| 8/23/2017 | Luria, Neil | 749 - Financial Analysis Related to Potential | 0.70 | $ 577.50 |
| | | Review of EFH MOR and analysis related thereto prepared by R. Nowitz and analyzing impact on cash roll-forward and comparing to previous estimates. | | |
| 8/23/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 2.70 | $ 1,876.50 |
| | | Attention to further review of June 2017 EFH Corp. MOR, review of prior MORs as it relates to select balances and trends on amounts, drafting of email for distribution to counsel on key observations and follow-up items to be sought via Evercore. | | |
| 8/24/2017 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 0.70 | $ 486.50 |
| | | Attention to communications with Proskauer regarding June 2017 MOR questions sent to management with replies; follow-up on same | | |
| 8/24/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.90 | $ 625.50 |
| | | Attention to review of the amended and superseding motion (Docket #11801) for an order entering into the Sempra termination fee and Plan Support Agreement, with focus on elements insofar as they relate to Conflicts Matters for EFH Corp. | | |
| 8/24/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 3.80 | $ 2,641.00 |

# Energy Future Holdings Corp - August 2017

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| | | Attention to review of the Disclosure Statement for the First Amendment Joint Plan of Reorganization of EFH Corp and EFIH LLC (docket # 11806) as it relates to various updates and focus on financial elements insofar as they relate to Conflicts Matters; follow-up on same. | | |
| 8/24/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.80 | $ 1,251.00 |
| | | Attention to tabulation of observations and questions, including related drafting of email to Proskauer pertaining to review of the latest Disclosure Statement with attention required on specific elements insofar as they relate to Conflicts Matters | | |
| 8/25/2017 | Nowitz, Raoul | 795 - Fee Applications/Retention | 1.80 | $ 1,251.00 |
| | | Attention to initial review of July 2017 SOLIC time and expenses entries in preparation of the July 2017 invoice; follow-up with accounting staff on same. | | |
| 8/30/2017 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.50 | $ 347.50 |
| | | Attention to review of the motion to consent to specific Oncor transaction and its impact, if any, on EFH Corp. (Docket #11837) | | |
| 8/30/2017 | Luria, Neil | 705 - Plan Development and Testimony | 0.70 | $ 577.50 |
| | | Review of roll-forward of EFH cash forecast and estimated closing date cash balances and accruals of liabilities. | | |
| | | | | $ 56,233.00 |

## **Exhibit E**

[Detailed Description of Expenses Incurred]

# Energy Future Holdings Corp – May 2017

| Date | Person | Expense Code | Fee |
|---|---|---|---|
| 5/24/2017 | Nowitz, Raoul | AIR - Airfare | $ 603.40 |
| | | Round-trip, economy class from ATL to LGA for meeting with Evercore | |
| | | Total Airfare: | **$ 603.40** |
| | | | |
| 5/24/2017 | Nowitz, Raoul | GRTRAN - Ground Transportation | $ 68.00 |
| | | Hartsfield Jax Atl Int'l Airport parking | |
| 5/24/2017 | Nowitz, Raoul | GRTRAN - Ground Transportation | $ 22.49 |
| | | Taxi from hotel to dinner | |
| 5/24/2017 | Nowitz, Raoul | GRTRAN - Ground Transportation | $ 52.73 |
| | | Taxi from LGA airport to hotel | |
| 5/25/2017 | Nowitz, Raoul | GRTRAN - Ground Transportation | $ 45.00 |
| | | Car service post meeting to LGA airport | |
| 5/25/2017 | Nowitz, Raoul | GRTRAN - Ground Transportation | $ 11.40 |
| | | Taxi from hotel to dinner | |
| 5/25/2017 | Nowitz, Raoul | GRTRAN - Ground Transportation | $ 17.25 |
| | | Taxi from dinner to hotel | |
| | | Total Ground Transportation: | **$ 216.87** |
| | | | |
| 5/25/2017 | Nowitz, Raoul | HOTEL - Hotel and Lodging | $ 323.65 |
| | | Room rate and taxes - 1 night | |
| | | Total Hotel and Lodging: | **$ 323.65** |
| | | | |
| 5/24/2017 | Nowitz, Raoul | MEALS - Out of Town Meals | $ 40.00 |
| | | Attendee(s):   R. Nowitz | |
| | | Total Out of Town Meals: | **$ 40.00** |
| | | | |
| 5/24/2017 | Nowitz, Raoul | MILES - USA - Mileage | $ 16.74 |
| | | From home to airport | |
| 5/25/2017 | Nowitz, Raoul | MILES - USA - Mileage | $ 16.74 |
| | | From airport to home | |
| | | Total USA - Mileage: | **$ 33.48** |
| | | | **$ 1,217.40** |