## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) Case No. 14-10979 (CSS) |
| | ) |
| *Debtors.* | ) (Jointly Administered) |
| | ) |
| | ) **Re: Dkt. No. 12243** |

### ELLIOTT FUNDS' OBJECTION TO NEXTERA ENERGY, INC.'S
### MOTION TO STAY THE RECONSIDERATION ORDER PENDING APPEAL

Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively "Elliott" or the "Elliott Funds"), by and through their undersigned counsel, hereby object to the motion (the "Stay Motion") of NextEra Energy, Inc. ("NextEra") for a stay pending NextEra's appeal of this Court's *Order Granting the Motion to Reconsider of Elliott Associates, L.P. and Denying the Application of NextEra Energy Inc. for Payment of Administrative Claim* [Dkt. No. 12075] (the "Reconsideration Order"). In support hereof, Elliott respectfully states as follows:

### PRELIMINARY STATEMENT

NextEra's request for a stay pending appeal should be denied. A stay pending appeal is extraordinary relief and, as explained below, entirely unwarranted under the circumstances. *First*, NextEra has not met its burden of demonstrating a strong likelihood of success on the merits. This Court properly found that the Termination Fee (as defined below) was originally approved based on a confusing and obscured record resulting from misstatements and the omission of material facts. It was not until mid-2017 when the proposed merger transaction between the above-captioned debtors (the "Debtors") and NextEra was finally denied by the Public Utility Commission of Texas (the "PUCT") that the true facts—known all the while to

NextEra but muddled and withheld from the Court and other parties in interest—came to light. Once regulatory approval for the NextEra merger was denied, thus making it impossible for the merger to close, NextEra could simply bide its time until the Debtors had no choice but to terminate if any alternative restructuring deal was to be pursued (even one for substantially less consideration than the NextEra merger). Under such circumstances, a Termination Fee provides no actual benefit to the Debtors' estates and is inconsistent with applicable Third Circuit law.

Promptly after the merger agreement was terminated and NextEra demanded payment of its $275 million fee, Elliott filed its motion seeking reconsideration, in part, of the Court's order approving the Termination Fee. The Court considered the agreed-upon record and arguments of counsel and determined, in the exercise of its discretion, that its prior approval of the Termination Fee was "based on a fundamental misapprehension of critical facts."

The Court found that it made a manifest error of law and fact and would not have approved the Termination Fee in its original form had the Court been aware of the true facts. The Court also found that (i) because the Termination Fee order did not finally resolve all discrete Termination Fee issues but rather left "additional work to be done," such order was interlocutory, and (ii) Elliott's reconsideration motion was timely because Elliott acted promptly and without unreasonable delay. These decisions were based on a sound exercise of the Court's discretion and were proper given the facts and circumstances. Accordingly, NextEra is unlikely to succeed in its arguments on the merits in its appeal. The Stay Motion should be denied on that basis alone.

*Second*, NextEra cannot meet its burden of demonstrating irreparable harm and has provided no evidentiary basis for this Court to find irreparable harm. NextEra acknowledges that any purported harm is monetary in nature, and even concedes that there are other avenues

-2-

available to it to address this potential harm (*i.e.*, seeking disgorgement from creditors).  Under well-settled law, economic injuries that can be redressed through alternative means do not constitute irreparable harm.  Further, any alleged harm is not imminent as plan confirmation proceedings and potential plan distributions are not expected to take place until at least March or April of 2018.  Accordingly, the Stay Motion fails for this reason as well.

*Third*, the estates and creditors would be harmed by the imposition of a stay.  Creditors have already waited more than three and a half years with no distribution on their claims.  They should not be forced to endure further delays in distributions and shoulder the burden of NextEra pursuing a meritless appeal.  Courts frequently recognize that unnecessary delays in creditor distributions weigh in favor of denying a stay request, particularly where the appellant has not shown a strong likelihood of success on the merits (as is the case here).

*Fourth*, NextEra's contention that a stay is consistent with public interest also fails.  Contrary to NextEra's arguments, the Reconsideration Order will not have a chilling effect on the market or adversely affect the willingness of potential buyers to submit bids.  As recognized by the Court, the Reconsideration Order will not impact termination fees that are properly negotiated, structured, and disclosed and that meet the standards for approval under applicable law.  Plainly, *all* termination fees should satisfy these basic standards and, thus, should not be affected by the Reconsideration Order.  Indeed, the public interest is served by upholding this Court's determination that termination fees should not be approved where such fees do not comport with applicable law and are presented to the Court for approval based on inaccurate and incomplete records.

For these reasons and as further set forth below, the Court should deny the Stay Motion.

## RELEVANT BACKGROUND

**A.    The NextEra Merger Transaction**

1.      In July 2016, Debtors Energy Future Holdings Corp. ("EFH") and Energy Future Intermediate Holding Company LLC ("EFIH") entered into an Agreement and Plan of Merger, dated as of July 29, 2016 (the "NextEra Merger Agreement"), with NextEra.  *See* Dkt. No. 9190.

2.      The NextEra Merger Agreement contemplated a merger of EFH with and into a newly formed subsidiary of NextEra.  The merger was subject to certain conditions precedent, including regulatory approval from the Public Utility Commission of Texas (the "PUCT").  *See* NextEra Merger Agreement, §§ 7.2(c) and 7.3(e).  EFH would then become a wholly owned subsidiary of NextEra with an approximately $18.3 billion implied total enterprise value for Oncor Electric Delivery Company LLC ("Oncor").  *See* Dkt. No. 9190.  As part of the merger transaction, NextEra agreed to provide approximately $9.5 billion in consideration to the Debtors' estates.  *Id.*

3.      The NextEra Merger Agreement also contained a broad provision that purportedly entitled NextEra to a $275 million cash termination fee (the "Termination Fee") payable by EFIH under certain conditions.  *See* NextEra Merger Agreement, § 8.5.

4.      On August 3, 2016, the Debtors moved this Court for an order authorizing them to enter into the NextEra Merger Agreement and approving the Termination Fee (the "Approval Motion").  Dkt. No. 9190.  Neither the Debtors nor NextEra alerted the Court to any possibility that if the PUCT did not approve the NextEra merger transaction, NextEra had no incentive to terminate the NextEra Merger Agreement and could engage in an endless process requiring the Debtors to eventually terminate and trigger the Termination Fee.

**B.      The September 19, 2016 Hearing**

5.      A hearing to consider the Approval Motion was held on September 19, 2016. Dkt. No. 9606.[1]  During the hearing, this Court asked several direct questions regarding the Termination Fee and was told (erroneously) that if the PUCT did not approve the NextEra transaction and, as a result, NextEra terminated the deal, the Termination Fee would not be payable.  Sept. 19, 2016 Hr'g Tr. 78:3–84:10.

6.      The parties presented to the Court that if PUCT approval was denied, a real and likely outcome would be for NextEra to terminate.  This was not true.  The Court was never informed that NextEra would have no incentive to actually terminate, including because there was no outside termination date or date by which PUCT approval had to be obtained. Consequently, NextEra could simply sit tight and wait until the Debtors had no choice but to terminate, thereby allegedly triggering the Termination Fee even in the absence of a higher or better alternative transaction.

7.      Exacerbating the situation, Debtors' counsel made the following statement to the Court on the record at the September 19, 2016 hearing:

> Your Honor, the second thing I wanted to clarify was just the break fee.  I think we are on the same page now about when that gets paid, but just to cover it one more time, it's an incredibly detailed provision.  Suffice to say ***there's no break-up fee if the PUC [sic] just denies – outright denies approval***.

Sept. 19, 2016 Hr'g Tr. 90:10–15 (emphasis added).

8.      Debtors' counsel purportedly intended this statement to clarify for the Court any confusion that may have existed regarding the circumstances under which the Termination Fee would be payable.  The problem was that this statement was inaccurate.

---

[1]      Transcript of hearing held on September 19, 2016 (the "<u>Sept. 19, 2016 Hr'g Tr.</u>").

9.      As NextEra acknowledges in the Stay Motion, NextEra did not address the Court during the hearing.  Stay Motion, ¶ 79.  Instead, it chose to remain silent during the Court's inquiries as to whether the Termination Fee would be payable if the PUCT did not approve the merger, even after Debtors' counsel made an inaccurate statement about the circumstances that would trigger the Termination Fee.  Relying on counsel's representations, the Court proceeded with the hearing.

10.     On September 19, 2016, based on the record and statements of counsel, the Court entered the *Order Authorizing Entry Into Merger Agreement, Approving Termination Fee, and Entry Into and Performance Under Plan Support Agreement* (the "Termination Fee Order") which, among other things, (a) authorized the Debtors to enter into the NextEra Merger Agreement, (b) approved the Termination Fee in an amount equal to $275 million, and (c) authorized the Debtors to pay the Termination Fee to NextEra as an allowed administrative expense to the extent it became due and payable under the terms and conditions of the NextEra Merger Agreement.  Dkt. No. 9584.

11.     The Termination Fee Order further provided that in the event the Termination Fee became payable in accordance with the NextEra Merger Agreement, the parties then must agree on an allocation of such fee as between the estates and seek Court approval of the allocation. Termination Fee Order, ¶ 4.  The parties also had the right to request that the Court determine the appropriate allocation of the Termination Fee.  *Id.*  Moreover, the Court retained jurisdiction to resolve any disputes relating to the Termination Fee Order or NextEra Merger Agreement. Termination Fee Order, ¶ 10.  As set forth below, such a dispute did arise as the Debtors have asserted that NextEra breached the terms of the NextEra Merger Agreement.  Dkt. Nos. 11424 and 11668.

**C.      PUCT Denies Approval of the NextEra Merger Transaction**

12.     On April 13, 2017, the PUCT denied Oncor's and NextEra's joint application to approve the merger transaction, citing, among other things, certain critical "deal-killer" terms, as well as a number of other fundamental defects in the joint application.  Dkt. No. 11152.

13.     On May 8, 2017, NextEra filed a rehearing request simply rearguing the same issues that the PUCT had rejected after months of debate.  Dkt. No. 11638-19.  Oncor did not join in that rehearing request.  Dkt. No. 11325.  The deadline for a decision was set at June 7, 2017, but NextEra sought to prolong the process, requesting an extension to "the maximum extent allowed by law"—effectively July 22, 2017.  Dkt. No. 11638-19 at 7.  The PUCT denied that extension request and rejected the rehearing request.  Dkt. No. 11325.  NextEra filed a second rehearing request, again refusing to budge on the "deal-killer" conditions.  Dkt. No. 11878, Ex. G.  By order dated June 29, 2017, the PUCT again rejected the rehearing request. Dkt. No. 11398.

14.     It was then clear that the deal was dead.  Yet, NextEra did not terminate the NextEra Merger Agreement, choosing instead to pursue an appeal in the courts.[2]  This left the Debtors no choice but to terminate the NextEra Merger Agreement or else incur months or years of continued interest and fee obligations, which monthly interest and fee obligations the Debtors estimated at approximately $50 million.  Dkt. No. 11424.  Accordingly, on July 7, 2017, the Debtors delivered to NextEra a notice terminating the NextEra Merger Agreement.  Dkt. No. 11424.

**D.      The Berkshire and Sempra Transactions**

15.     In July 2017, knowing the NextEra transaction was dead, the Debtors entered into a merger agreement with Berkshire Hathaway Energy Company ("Berkshire") whereby

---

[2]     *See* Case No. D-1-GN-003234, Travis County Dist. Ct., 201st Judicial Dist.

Berkshire would acquire the Debtors' interest in Oncor for $9 billion, a cash purchase price substantially less than the cash provided to the Debtors' estates under the NextEra Merger Agreement.  Dkt. No. 11430.

16.    The Berkshire merger agreement was subject to higher or better offers and included a 45-day "go-shop" window during which the Debtors could, in the exercise of their fiduciary duties, consider competing proposals.  Prior to the hearing on approval of the merger agreement with Berkshire, the Debtors received a competing proposal from Sempra Energy ("Sempra").

17.    The Debtors determined that the Sempra proposal was superior to the Berkshire proposal and would result in greater recovery for the Debtors' estates and creditors, although substantially lower than the recoveries that would have been provided to the Debtors' estates and creditors under the NextEra Merger Agreement.  Accordingly, the Debtors terminated the Berkshire merger agreement and entered into an Agreement and Plan of Merger, dated as of August 21, 2017 (the "Sempra Merger Agreement"), with Sempra and its wholly-owned affiliate Power Play Merger Sub I, Inc.  Dkt. No. 11801.

**E.      The Reconsideration Motion and Order**

18.    On July 29, 2016, just a few weeks after the Debtors terminated the NextEra Merger Agreement, Elliott filed its *Motion to Reconsider in Part the September 19, 2016 Order [Dkt. No. 9584] Approving the NextEra Termination Fee* (the "Reconsideration Motion").  Dkt. No. 11636.  By the Reconsideration Motion, Elliott sought entry of an order reconsidering the Termination Fee Order to the limited extent that it authorized the Debtors to pay the Termination Fee when no PUCT approval was obtained for the proposed NextEra merger and the Debtors were forced to terminate the NextEra Merger Agreement to pursue an alternative transaction.  *Id.*

19.     On July 31, 2017, NextEra filed its *Application of NextEra Energy, Inc. for Payment of Administrative Claim* (the "NextEra Application") seeking allowance and payment of the Termination Fee as an administrative expense upon the consummation of the Berkshire transaction or any alterative transaction.  Dkt. No. 11649.  On August 2, 2017, Elliott filed a preliminary objection to the NextEra Application arguing, among other things, that the NextEra Application should be denied for the reasons set forth in the Reconsideration Motion.  Dkt. No. 11666.

20.     On August 3, 2017, the Debtors commenced an adversary proceeding (the "Adversary Proceeding") by filing a complaint against NextEra seeking a declaratory judgment that NextEra breached the NextEra Merger Agreement and that the Termination Fee is not payable to NextEra.  Dkt. No. 11668.

21.     Following meet-and-confer and related negotiations, Elliott, the Debtors, and NextEra entered into *Stipulation and Order Regarding Elliott's Motion to Reconsider* setting forth the parties' agreement on, among other things, scheduling, discovery, and the contents of the record for purposes of the Reconsideration Motion (the "So-Ordered Stipulation"), which So-Ordered Stipulation was approved by the Court on August 10, 2017.  Dkt. No. 11716.  In the So-Ordered Stipulation, the parties agreed that the record for the Court's consideration of the Reconsideration Motion would consist of twenty-six (26) specific, enumerated documents and items, and that arguments and factual assertions relating to the Reconsideration Motion would be confined to facts contained in those documents (the "Reconsideration Record").  So-Ordered Stipulation, ¶¶ 7–10.

22.     On September 7, 2017, NextEra filed its objection to the Reconsideration Motion (the "NextEra Objection").  Dkt. No. 11876.  That same day, the Debtors filed an objection to the

Reconsideration Motion.  Dkt. No. 11879.  On September 14, 2017, Elliott filed its reply in further support of the Reconsideration Motion.  Dkt. No. 11905.

23.    On September 19, 2017, this Court held a hearing to consider the Reconsideration Motion.  After careful consideration of the record and parties' arguments, the Court concluded that it would grant the Reconsideration Motion.  The Court explained in detail the bases for its ruling, including that its prior decision to approve the Termination Fee under circumstances that could have been anticipated and actually transpired "was based on the serious misapprehension of the facts that constitutes manifest error."  Sept. 19, 2016 Hr'g Tr. 48:5–14.

24.    On October 3, 2017, this Court issued its Opinion on the Reconsideration Motion (the "Reconsideration Opinion").  Dkt. No. 11998.  In the Reconsideration Opinion, this Court found that it "fundamentally misapprehended the facts" and that, had it properly apprehended the facts, it would not have approved the Termination Fee as an administrative expense under the standard set forth in *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999).  Reconsideration Opinion, p. 32.  The Court, due to an incomplete, incorrect, and confusing record presented by the Debtors and NextEra, did not understand that the Termination Fee could be payable if the PUCT declined to approve the merger transaction and the Debtors (as opposed to NextEra) were subsequently required to terminate the NextEra Merger agreement.  *Id.* at 25–26.  The Court thus found that it made a "manifest error of fact and law" in approving the Termination Fee as being payable under those circumstances.  *Id.* at 3.

25.    On October 18, 2017, this Court entered the Reconsideration Order.  Dkt. No. 12075.  As set forth in more detail in the Reconsideration Order, the Court, among other things, (a) granted the Reconsideration Motion, (b) denied the NextEra Application, (c) stayed all

further actions and proceedings in the Adversary Proceeding, and (d) amended the Termination

Fee Order to provide, in part, that:

> The Termination Fee, upon the terms and conditions of the Merger Agreement, is approved in part and disallowed in part. The Termination Fee is disallowed in the event that the PUCT declines to approve the transaction contemplated in the Merger Agreement and, as a result, the Merger Agreement is terminated, regardless of whether the Debtors or NextEra subsequently terminates the Merger Agreement. In those circumstances, the EFH/EFIH Debtors are not authorized to pay the Termination Fee as a qualified administrative expense or otherwise. The Termination Fee is otherwise approved.

Reconsideration Order, ¶ 5.

26.     The Court also expressly found that "[t]he Termination Fee Order must be

modified because it approved a provision in the NextEra Merger Agreement that authorized the

Debtors to pay NextEra the Termination Fee in circumstances in which the payment was not a

necessary expense and the Debtors' estates would not receive an actual benefit, which is a

manifest error of law." *Id.* ¶ 4.

**F.     The Appeal and Stay Motion**

27.     On October 30, 2017, NextEra filed a notice of appeal of the Reconsideration

Order.  Dkt. No. 12141.

28.     On November 10, 2017, NextEra, Elliott, and the Debtors submitted to this Court

a joint certification for direct appeal to the Third Circuit Court of Appeals on the ground that an

immediate appeal "may materially advance the progress of the case."  Dkt. No. 12222.

29.     On November 16, 2017, nearly two months after the Court provided its oral ruling

on the Reconsideration Motion, NextEra filed the Stay Motion seeking to stay the effect of the

Reconsideration Order until final resolution of NextEra's appeal.  Dkt. No. 12243.

30.     On November 22, 2017, NextEra filed with the Third Circuit Court of Appeals a

petition seeking direct appeal from the Reconsideration Order (the "Petition for Direct Appeal").

In the Petition for Direct Appeal, NextEra asserts that grounds for direct appeal exist because all parties certify that a direct appeal will materially advance the progress of the bankruptcy cases. However, NextEra added an additional proposed ground that Elliott opposes—that the Reconsideration Order involves a matter of public importance. Elliott believes that NextEra's inclusion of this additional, disputed ground will delay the Third Circuit's consideration of the request for an immediate direct appeal.

## ARGUMENT

### I.    NEXTERA HAS NOT CARRIED, AND CANNOT CARRY, ITS BURDEN FOR OBTAINING A STAY PENDING APPEAL

31.    Bankruptcy Rule 8007 governs stays pending appeal. Fed. R. Bankr. P. 8007. A stay pending appeal is "extraordinary" relief to be granted in limited circumstances. *See In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012) (citing *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978)); *Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, No. 13-1144, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013); *In re Great Barrington Fair & Amusement, Inc.*, 53 B.R. 237, 239 (Bankr. D. Mass. 1985) (a stay pending appeal "involve[s] extraordinary relief and the discretion of the court.").

32.    The requirements for obtaining a stay pending appeal are generally the same as those for obtaining a preliminary injunction. *See In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015) (citing *Republic of Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991)). When considering whether to stay the effect of a bankruptcy court's order, courts in the Third Circuit consider the following factors: (a) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (b) whether the applicant will be irreparably injured absent a stay; (c) whether the public interest lies in favor of granting a stay; and (d) whether

issuance of the stay will substantially injure the other parties interested in the proceeding. *See id.* at 568.

33.     According to the Third Circuit in *Revel AC*:

> "[T]he most critical factors . . . are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm - the latter referring to harm that cannot be prevented or fully rectified by a successful appeal. . . . Though both are necessary, the former is arguably the more important piece of the stay analysis."

*Id.* (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

34.     If NextEra fails to make the requisite showings on either of the first two factors, then "inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis." *See Revel AC*, 802 F.3d at 571 (citing *In re Forty–Eight Insulations, Inc.*, 115 F.3d 1294, 1300-01 (7th Cir. 1997)); *see also Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 374 (3d Cir. 2012) ("Because . . . [movant] was unable to show a likelihood of success on the merits of its claims, we need not address the remaining preliminary injunction factors.").

35.     NextEra fails to meet its burden on all four factors and, thus, the Stay Motion should be denied.

**A.     NextEra Cannot Show A Likelihood Of Success On The Merits**

36.     To make the strong showing necessary to meet the likelihood of success prong, "[i]t is not enough that the chance of success on the merits be 'better than negligible'" because "[m]ore than a mere 'possibility' of relief is required." *Nken v. Holder*, 556 U.S. at 434. The movant must demonstrate "a reasonable chance, or probability, of winning." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (*en banc*).

37.    "The moving party's failure to show a likelihood of success on the merits 'must necessarily result in the denial of a preliminary injunction.'"  *Am. Express Travel*, 669 F.3d at 366 (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)); *see also Conestoga Wood*, 2013 WL 1277419, at *3 (denying request for stay because appellant had not established likelihood of success on merits).

### i.    NextEra Is Unlikely To Succeed On Its Arguments That The Court Abused Its Discretion In Granting Reconsideration

38.    NextEra argues that there was no manifest injustice or clear error of law or fact warranting reconsideration because it believes the Debtors presented a clear record to the Court and that, regardless, the Debtors and NextEra somehow retroactively corrected defects in the record.  These arguments simply have no basis in fact or law and were rightly rejected by the Court.

39.    "'The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence.'"  *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)); *In re Tribune Co.*, 464 B.R. 208, 215 (Bankr. D. Del. 2011) ("[R]econsideration is appropriate when the Court has overlooked facts that might reasonably have altered or impacted the decision.").  The standard of review on appeal of an order with respect to a motion for reconsideration is for an abuse of discretion and findings of fact are reviewed for clear error. *See*, *e.g.*, *Long v. Atl. City Police Dep't*, 670 F.3d 436, 446–47 (3d Cir. 2012); *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

40.    The movant bears the burden of demonstrating that a break-up fee and the circumstances under which it is payable make such fee an actual and necessary expense of the estate in accordance with *O'Brien*.  NextEra cannot seriously contend that the Debtors somehow

-14-

satisfied this burden even though the Debtors never properly and candidly explained to the Court the circumstances under which the Termination Fee could be payable, and indeed admittedly misinformed the Court (even if inadvertently) as to such circumstances.  The Termination Fee Order was thus predicated on a materially incomplete and inaccurate record and was erroneous as a matter of fact and law.

41.     At the September 19, 2016 hearing, Debtors' counsel directly stated that the Termination Fee is not payable if the PUCT outright denies approval.  *See* Sept. 19, 2016 Hr'g Tr. 90:13–15.  In its Stay Motion, NextEra concedes that this statement was incorrect.  Stay Motion ¶ 73.  Yet, NextEra downplays the inaccuracy and argues that the Court was unreasonable in relying on such statement.  This argument does not hold water.  Courts should always expect full and honest disclosure by attorneys.  Anything less would completely undermine the legal system and the integrity of the adjudicative process.  This is a primary reason why the applicable rules of professional conduct require full candor and accurate statements of both fact and law by counsel to a tribunal.  *See* Del. R. Prof. Conduct 3.3; *State v. Guthman*, 619 A.2d 1175, 1179 (Del. 1993) ("An attorney, acting as an officer of the court, has a duty to respond with complete candor to court inquiries.  Counsel may not, knowingly or otherwise, engage in conduct which may reasonably be perceived as misleading either to the court or to opposing counsel." (internal citations omitted)).

42.     Elliott is not suggesting that Debtors' counsel acted with any malice or intent to make a false or misleading statement.  Nonetheless, Debtors' counsel did make an inaccurate statement that was material to the issue at hand.  The Court and other parties in interest certainly have an expectation that statements made by counsel on the record will be accurate and can be relied upon.  The Debtors' and NextEra's omissions and statements on the record created the

impression that if the PUCT denied the joint application, the Termination Fee would not be payable. That was simply not true. Accordingly, the Court's approval of the Termination Fee was based on a fundamental misunderstanding of key facts.

43.   As recognized by the Court, NextEra made no effort to correct the record during the September 19 hearing and, instead, remained conspicuously silent notwithstanding the factually inaccurate statement made regarding the Termination Fee.  *See* Reconsideration Opinion, p. 28.  NextEra seeks to explain away its silence by asserting that it "had no role in that proceeding."  Stay Motion, ¶ 79.  Such a position is entirely inconsistent with its effort to "correct" the record six days later.  *See infra*, ¶ 45.  More importantly, the contention strains all credibility—the Debtors were seeking approval of a multi-billion dollar merger transaction with NextEra and a potential $275 million termination fee payable to NextEra under certain circumstances.  Accordingly, if an incorrect or unclear statement was made to the Court regarding the circumstances under which the Termination Fee would be payable to NextEra, then it should have been expected of and incumbent upon NextEra to address the Court and clarify the record at the hearing.

44.   The Termination Fee Order was based on a materially incomplete and inaccurate record.  Accordingly, ample grounds existed for the Court to grant reconsideration.  *See McWilliams v. Cmty. Educ. Ctrs.*, No. 14-4783, 2015 WL 12843826, *7 (E.D. Pa. Nov. 13, 2015) (granting motion for reconsideration where post-order briefing raised undisputed facts "previously downplayed or not mentioned" by the parties); *see also In re United Artists Theatre Co.*, No. 00-3514 (PJW), 2004 WL 1906162 (Bankr. D. Del. Aug. 25, 2004) (granting motion for reconsideration where new evidence presented was directly contrary to counsel's representations at oral argument).

45.     Nor does NextEra's attempt to clarify the record—six days **after** the record was closed—support NextEra's merits argument for a stay.  Stay Motion, ¶ 74; Dkt. No. 9655.  *First*, as the Court determined, the September 25 Letter (as defined in the Stay Motion) could not retroactively remedy a defect in the record that served as a basis for this Court's decision on September 19, 2016.  The central question raised by the Reconsideration Motion was whether the Court properly approved the Termination Fee on September 19, 2016, the date on which the Court held a full evidentiary hearing and entered the Termination Fee Order.  The only record that matters is the record before the Court at the September 19 hearing.  *See* Reconsideration Opinion, pp. 26–27 (finding the September 25 Letter insufficient because, among other reasons, "the Court approved the Termination Fee by order dated September 19, 2016 following a hearing that same day.  The record on the Termination Fee was closed on September 19th.").

46.     *Second*, notwithstanding the timing issues, the September 25 Letter failed to clarify the defects in the record.  As correctly found by the Court, the letter *still* omitted critical facts regarding the NextEra Merger Agreement and the circumstances under which the Termination Fee could be payable.  The September 25 Letter never brought to the Court's attention that NextEra had no incentive to terminate the NextEra Merger Agreement in the event the PUCT declined to approve the transaction or approved it only with conditions that NextEra did not accept, and there was no outside date for PUCT approval to be obtained.  NextEra could simply engage in a standoff with the Debtors and bind them indefinitely until the Debtors had no choice but to terminate.  *See* Reconsideration Opinion, p. 27.

47.     Moreover, the letter also implied that the Debtors were not likely to terminate unless they opted to pursue an "alternative proposal."  Dkt. No. 9655.  As observed by the Court in the Reconsideration Opinion, this term is not defined in the NextEra Merger Agreement.

Reconsideration Opinion, p. 12.  Under typical circumstances, an alternative proposal would be one that a debtor may choose to pursue in the exercise of its fiduciary duties—as an alternative to an existing, viable transaction—because the debtor believed such alternative proposal was a higher and better offer.  That scenario was not the case here.  Here, the NextEra Merger Agreement was no longer viable.  Accordingly, the Debtors were stuck between the proverbial rock and a hard place.  They could either wait for NextEra to terminate (which had no economic incentive to do so), all while accruing substantial fees, costs, and interests that would threaten administrative insolvency and conversion of the case to chapter 7 (in which case the Termination Fee would *still* be payable), or they could find a path forward that would be acceptable to regulators and that would require them to terminate the NextEra Merger Agreement.

48.    Thus, the Debtors had no real choice but to get out from under the deal if *any* transaction was to be pursued for the estates.  NextEra, meanwhile, had every incentive to simply wait out the Debtors in order to collect the Termination Fee.  Any possibility of NextEra terminating following PUCT denial of the transaction was completely illusory, and the September 25 Letter did not clarify this critical fact.  Accordingly, the Court correctly found that even if the September 25 Letter were part of the record, it did not remedy the issue.

49.    The Court properly found that the Termination Fee Order was entered based on a fundamental misunderstanding of critical facts.  Its factual findings in this regard were not clearly erroneous and reconsideration was appropriate and well within the Court's discretion.

**ii.    NextEra Is Unlikely To Succeed On Its Arguments That The Termination Fee, In Its Original Form, Satisfied *O'Brien***

50.    NextEra also argues that Court incorrectly found on reconsideration that the Termination Fee, in general, failed to satisfy *O'Brien* and that the Court's ruling effectively "tak[es] breakup fees off the table" for potential acquirers of businesses and/or assets in

regulated industries.  Stay Motion, ¶ 91.  These arguments are based on a false premise that the Court denied the Termination Fee outright.  That did not happen.  Rather, the Court found that the Termination Fee did not satisfy *O'Brien* and could not be payable as an administrative expense or otherwise under the specific, limited circumstances where "PUCT declines to approve the transaction contemplated in the Merger Agreement and, as a result, the Merger Agreement is terminated, regardless of whether the Debtors or NextEra subsequently terminates the Merger Agreement."  Reconsideration Order, ¶ 5.  The Court further provided that "[t]he Termination Fee is otherwise approved."  *Id.*  Accordingly, the Termination Fee could still be payable as an administrative expense under any other circumstance provided for in Section 8.5 of the NextEra Merger Agreement.  In addition, the Court's ruling does not impact termination fees in other cases where such fees satisfy Third Circuit standards for approval and are properly structured and disclosed to the Court (presumably, this should mean *all* other cases).

51.    The Debtors bore the burden to demonstrate that the Termination Fee satisfied the applicable Third Circuit standard to qualify as an administrative expense.  The Debtors failed to meet that burden here, and the Court properly exercised its discretion in rejecting the problematic aspects of the Termination Fee on reconsideration.  *See In re Reliant Energy Channelview LP*, 594 F.3d 200, 205 (3d Cir. 2010) ("We review the Bankruptcy Court's legal determinations *de novo,* its factual determinations for clear error, and its decision denying the break-up fee on an abuse of discretion standard.").

52.    In *Reliant Energy*, the Third Circuit noted that "the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate."  *Reliant Energy*, 594 F.3d at 206 (quoting *O'Brien*, 181 F.3d at 535).  The Third Circuit ruled that "a bidder must seek

a break-up fee under 11 U.S.C. § 503(b), which, so far as germane here, permits payment of post-petition administrative expenses for the actual, necessary costs and expenses of preserving the estate." *Id.* It also held that there was no "compelling justification for treating an application for a break-up fee and expenses under § 503(b) differently from other applications for administrative expenses under the same provision." *Id.* at 206 (citing *O'Brien,* 181 F.3d at 535).

53.     The facts and circumstances under which a proposed expense would become payable are critical to an analysis of whether such an expense can constitute an actual, necessary cost and expense of preserving the estate.    An expense cannot be found to be necessary to preserve the estate's value where it would become payable under circumstances in which the estate is left worse off.    Such was the case here, where the Termination Fee was payable even though a closing condition failed (making the transaction impossible to consummate), forcing the Debtors to terminate and pursue a lower-value alternative.    The Termination Fee, *inter alia*, did not set a floor to induce competitive bidding, did not generate any consideration for the estate, and did not prompt any higher and better offers.    It was not an actual, necessary cost of preserving the estates' value and did not meet the standards for approval under *O'Brien*.    *See O'Brien*, 181 F.3d at 532–33 (requiring that "the consideration supporting the claimant's right to" an administrative claim "be beneficial to the debtor-in-possession"); *see also Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976) (creditor's right to an administrative claim turns on whether "the consideration supporting the claimant's right . . . was both supplied to and beneficial to the debtor-in-possession in the operation of the business.").

54.     Contrary to NextEra's assertions, the Court need not (and did not) take a "hindsight approach" to determine that the Termination Fee, in its original form, did not satisfy

*O'Brien.* Rather, the Court found that an incomplete and inaccurate record led to fundamental misunderstandings of fact and mistakes of law at the time of the original hearing, and that had the record been complete and accurate <u>at the time of such hearing</u>, the Court would not have approved the Termination Fee as a proper administrative expense under *O'Brien.* Reconsideration Order, p. 31 ("In short, had the Court properly apprehended the facts at the time of its approval of the Termination Fee it could not have approved the Termination Fee under *O'Brien.* To do so constituted legal error.").

55.     As found by the Court, a Termination Fee payable even where the PUCT declined to approve the transaction and the Debtors or NextEra then terminated could not be considered to have conferred any benefit on the estates.

### iii.     Reconsideration Was Appropriate Regardless Of Whether the Termination Fee Order Was Final Or Interlocutory

56.     As set forth below (*see infra* section I.A.iv), this Court correctly concluded that the Termination Fee Order was interlocutory. Regardless, this Court also properly found that reconsideration would have been appropriate even if the Termination Fee Order was a final order. *See* Reconsideration Opinion, p. 32 ("However, even if the order approving the Termination Fee is a final order and, thus, the motion for reconsideration is reviewable under Federal Rule of Civil Procedure Rule 60 (made applicable by Bankruptcy Rule 9024), the interest of justice outweigh the interest of finality in this instance.").

57.     The critical substantive issue for a motion to reconsider, regardless of whether final or interlocutory, is whether there was a mistake of fact or misunderstanding that led to a manifest error of fact and law. As set forth above and in the Reconsideration Opinion, there was such a mistake and misunderstanding and it did lead to manifest error. *See supra* section I.A.i; Reconsideration Opinion, p. 3 ("The Court's misapprehension of the facts led to an incorrect

application of the legal standard.  In short, the Court made a manifest error of fact and law.").
This Court determined that it fundamentally misunderstood the facts surrounding when the
Termination Fee could be payable.  *See id.* at 32.  NextEra has not shown that it is likely to
succeed on its arguments that the Court's factual findings in this regard were clearly erroneous.
Indeed, NextEra does not even dispute that this Court misunderstood the facts in entering the
Termination Fee Order.  Accordingly, Elliott satisfied the standard for reconsideration regardless
of whether the Termination Fee Order was final or interlocutory.

58.    The Court then explained that "[t]he interests of justice – ensuring that the
approval of a payment of $275 million to NextEra is based on a complete record and the proper
application of the law – clearly outweighs the interest of finality of the Termination Fee Order."
Reconsideration Opinion, p. 32.[3]  This decision was proper under the circumstances and in
accordance with applicable law.  *See Carr v. New Century TRS Holdings, Inc. (In re New
Century TRS Holdings, Inc.)*, No. 07-10416 KJC, 2012 WL 38974, at *2 (Bankr. D. Del. Jan. 9,
2012), *aff'd*, No. 12-288-SLR, 2013 WL 1196605 (D. Del. Mar. 25, 2013) (recognizing the
court's interest "that justice be done in light of *all* the facts." (emphasis in original)).
Accordingly, NextEra's arguments as to the finality of the Termination Fee Order are to no avail
as the substantive outcome of the Court's ruling would have remained the same.

### iv.    NextEra Is Unlikely To Succeed On Its Arguments That The Termination Fee Order Was A Final Order

59.    NextEra also contends that it is likely to succeed on the merits of its appeal
because the Court applied the wrong legal standard and that the Termination Fee Order should
have been bifurcated for purposes of determining finality.  NextEra is wrong on both accounts.

---

[3]    As noted by the Court, the interests of justice also include "requiring parties seeking relief from the Court to be accurate in their representations . . . ."  Reconsideration Opinion, p. 33.

60.    In determining whether an order is final or interlocutory, bankruptcy courts should consider, among other things, (a) whether the order leaves additional work to be done by the court, (b) whether the order implicates purely legal issues, (c) the impact of the order on estate assets, and (d) the necessity for further fact-finding on remand.  *See Culp v. Stanziale (In re Culp)*, 550 B.R. 683, 692–93 (D. Del. 2015) (citations omitted).  The Court considered these factors and appropriately found that the Termination Fee Order was interlocutory.  NextEra sets forth no legitimate basis for this Court to find any likelihood that it will be reversed on appeal with respect to this issue.

61.    NextEra mistakenly argues that the Court failed to apply a "flexible and pragmatic approach" that has been recognized by the Third Circuit.  *See* Stay Motion, ¶¶ 43–46.  In so arguing, NextEra ignores that the Court expressly found that [i]in making its determination [on finality], the court ***is required to take a flexible, pragmatic approach***."  Reconsideration Opinion, p. 23 (emphasis added) (citing *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 97 (3d Cir. 1988); *Kelson Channelview LLC v. Reliant Energy Channelview LP (In re Reliant Energy Channelview LP)*, 397 B.R. 697, 699 (D. Del. 2008), *aff'd*, 594 F.3d 200 (3d Cir. 2010)).  The Court then set forth its analysis and determined that, "***[a]pplying a flexible and pragmatic approach***, the Court finds that the order approving the Termination Fee is an interlocutory order because it left considerable 'additional work to be done' by the Court."  Reconsideration Opinion, p. 25 (emphasis added) (citing *Reliant Energy*, 397 B.R. at 699–700).  Accordingly, notwithstanding NextEra's assertions, this Court applied the proper legal standard.

62.    NextEra also criticizes the Court for citing to *Official Committee of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 3 F.3d 49, 53 (2d Cir. 1993).  In support, NextEra cites only to a Fifth Circuit decision finding that *Integrated Resources* was of

"limited persuasiveness" because that Court had rejected a "rigid rule of finality" applied by the Second Circuit in bankruptcy appeals.  *See ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, Inc.)*, 650 F.3d 593, 599 (5th Cir. 2011).

63.     Again, NextEra ignores the Court's analysis.  This Court cited *Integrated Resources* only for the principle that for an order to be final, it "need not resolve all the issues raised by the bankruptcy; but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to proper relief."  Reconsideration Opinion, p. 23.  This very principle has been adopted and applied by the Third Circuit.  In *In re Am. Capital Equip., LLC*, the Third Circuit found that "the same concepts of finality apply in bankruptcy as in any other case, but they are applied to the discrete controversies within the administration of the estate; the separate dispute being assessed must have been finally resolved and leave nothing more for the bankruptcy court to do."  296 F. App'x 270, 277 (3d Cir. 2008) (internal citations omitted).

64.     Applying that principle, the Third Circuit found that an order denying a motion to dismiss "does not resolve a discrete claim or proceeding within the case" and, therefore, was interlocutory and not final.  *Id.*  Further, in *Reliant Energy*, the Delaware District Court found that its conclusion that a break-up fee order is interlocutory was consistent with other courts considering such orders, including the Second Circuit in *Integrated Resources*.  *See Reliant Energy*, 397 B.R. at 700.

65.     The Fifth Circuit's decision in *Asarco* utilized this same basic principle of finality.  *In re ASARCO*, 650 F.3d at 600 (analyzing whether the underlying order "constitutes a final disposition of a discrete dispute within the larger case.").  Unlike the situation here, however, in *ASARCO* the discrete dispute of whether the debtors could reimburse bidders for due

diligence expenses was finally disposed of by the bankruptcy court in the reimbursement order, and such order was "sufficiently separable from the rest of the bankruptcy proceeding . . . ." *Id.*

66.    This Court applied the proper legal standard in analyzing finality and considered the appropriate factors, including whether there was additional work to be done by the Court in connection with the Termination Fee Order itself (as opposed to the bankruptcy proceeding generally).    As recognized by this Court, the Termination Fee Order required the Court to (a) approve any agreed-upon allocation of the Termination Fee between the estates, (b) determine how the Termination Fee would be allocated, (c) rule on an appropriate allocation if so requested by the parties, and (d) make any determination as to whether the Termination Fee was due and payable under the terms of the NextEra Merger Agreement.    Reconsideration Opinion, p. 23.    Indeed, the Debtors have initiated litigation contending that NextEra breached the NextEra Merger Agreement—providing another reason why the Termination Fee is not payable to NextEra—and, in the Termination Fee Order, this Court expressly retained jurisdiction to resolve such disputes.    Dkt. No. 9584, ¶ 10.    There were undoubtedly open, unresolved issues for the Court.

67.    NextEra does not dispute that the Termination Fee Order left additional work to be done by the Court, which is a hallmark of an interlocutory order.    *See Reliant Energy*, 397 B.R. at 700; *U.S. v. Pelullo*, 178 F.3d 196, 200–01 (3d Cir. 1999).    Instead, NextEra argues that the order should be "bifurcated" such that the Court should ignore the additional work to be done and, instead, isolate aspects of the Termination Fee (to the extent convenient to NextEra) in analyzing finality.[4]    This is improper and inconsistent with applicable law.

---

[4]    In so arguing, NextEra focuses on the "without any further proceedings" language in paragraph 4 of the Termination Fee Order, but such language was expressly subject to the additional work to be done by the Court as specified in the language that immediately followed, including with respect to allocation.

68.    In support of its bifurcation theory, NextEra cites only to *In re Colon*, 941 F.2d 242 (3d Cir. 1991).  That decision is inapposite.  The Court in *Colon* simply recognized a limited exception on finality, articulated by the U.S. Supreme Court in *White v. New Hampshire Department of Employment Security*, that a merits determination can be "final for appeal purposes if attorneys' fees are not a part of the merits judgment."  *Id.* at 244.  The sole purpose of the limited exception was to avoid a situation where (a) "counsel would forfeit their right to fees if they did not file a request in conjunction with each 'final' order" and (b) "lawyers predictably would respond by entering fee motions in conjunction with nearly every interim ruling."  *See White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 453 (1982).[5]  That exception does not apply here.

69.    The Termination Fee Order did not finally resolve all issues relating to the Termination Fee.  Therefore, this Court properly concluded that such order was interlocutory.[6]

### v.    NextEra Is Unlikely To Succeed On Its Arguments That The Reconsideration Motion Was Untimely

70.    NextEra has also not demonstrated any likelihood of success on its argument that the Reconsideration Motion was not made within a reasonable time.[7]  NextEra contends that Elliott unduly delayed in filing the Reconsideration Motion, and should have raised its arguments

---

[5]    NextEra also improperly contends that the Delaware District Court's decision in *In re Fruit of the Loom, Inc.* somehow supports its novel argument that, in analyzing the finality of a termination fee order, a termination fee's allowability should be considered separately from allocation issues.  Stay Motion, ¶ 45.  That case does not support NextEra's position.  *See Reliant Energy*, 397 B.R. at 700 ("the Court does not find *Fruit of the Loom* to be dispositive or instructive, because it provides no analysis of the finality issue and does not indicate whether the finality issue[] was even disputed by the parties.").

[6]    The Court was also correct in finding that at least two additional arguments support that the Termination Fee Order was interlocutory.  Reconsideration Opinion, n. 77.  *First*, the Termination Fee was not so large in proportion to the estates as to make the Termination Fee Order final under relevant precedent.  *See Reliant Energy*, 397 B.R. at 700.  *Second*, judicial economy and the avoidance of piecemeal litigation favor a finding that the Termination Fee Order is interlocutory.  *See, e.g.*, *In re New Century TRS Holdings, Inc.*, 407 B.R. 558, 571 (Bankr. D. Del. 2009).  These points are ignored by NextEra in its Stay Motion.

[7]    NextEra's arguments as to timeliness also improperly assume that the order was final as opposed to interlocutory.

regarding the Termination Fee at the time of the September 19, 2016 hearing.  NextEra's arguments, however, are contradicted by the record, which supports this Court's determination that the Reconsideration Motion was timely under the circumstances.

71.    A court's determination as to timeliness is reviewed for abuse of discretion.  *See Bailey v. United Airlines*, 279 F.3d 194, 202 (3d Cir. 2002).  "What constitutes a 'reasonable time' depends upon the facts and circumstances of each case.  Factors that a court should consider include the interest in finality, the reasons for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties."  *In re Doe*, 681 F. App'x 106, 108 (3d Cir. 2017) (internal citations omitted).  Here, the timeframe for Elliott's filing of the Reconsideration Motion was entirely reasonable and justified.

72.    NextEra contends that Elliott should have objected to the Termination Fee at the September 19, 2016 hearing.  However, in making that argument NextEra is improperly seeking to introduce purported facts that were simply not in the Reconsideration Record and cannot be properly relied upon in any appeal.  *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 802 (E.D. Pa. 1986) ("Items not before the Bankruptcy Court and not considered by it in rendering its decision may not be included in the record." (internal citations omitted)); *NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't Stores, Inc.)*, 320 B.R. 518, 521 (Bankr. S.D.N.Y. 2005) ("The record on appeal should contain all items considered by the bankruptcy court in reaching a decision. . . .  Conversely, if an item was not considered by the court, it should be stricken from the record on appeal.").

73.    Regardless, this Court and parties in interest were misled by an inaccurate and incomplete record.  Debtors' counsel stated in open court that "there's no break-up fee if the PUC[T] just denies—outright denies approval."  *See* Sept. 19, 2016 Hr'g Tr. 90:13–15.  Parties,

relying on that statement, had no sufficient reason to challenge the Termination Fee on the grounds set forth in the Reconsideration Motion.  Indeed, the Termination Fee could have become validly payable under different circumstances, such as a breach of the NextEra Merger Agreement by the Debtors.

74.     The objectionable circumstances under which NextEra would purport to seek payment of the Termination Fee arose around the time when the PUCT denied the parties' regulatory approval application and, notwithstanding such denial, NextEra refused to terminate the NextEra Merger Agreement.  At that point, NextEra's self-serving tactics and the confusion surrounding the Termination Fee became clear.

75.     Accordingly, as recognized by the Court, the issues raised in the Reconsideration Motion were not ripe until at least July 7, 2017 when the Debtors terminated the NextEra Merger Agreement.  *See* Reconsideration Opinion, p. 21.  Elliott promptly filed its Reconsideration Motion within a matter of weeks thereafter.  Accordingly, Elliott acted diligently and without delay.

76.     The Debtors' misstatements and the parties' omissions created a confusing and distorted record upon which the Court and all parties in interest were relying.  There is simply no reason to believe that Elliott or any other creditor was inexcusably neglecting its rights under such circumstances.  *See In re Network Access Solutions, Corp.*, 330 B.R. 67, 79 (Bankr. D. Del. 2005) (listing among laches' elements that there must be "inexcusable delay in bringing the action" and the party must have "knowledge of a claim"); *see also Cantor v. Perelman*, 414 F.3d 430, 439–40 (3d Cir. 2005) (same).  Further, NextEra cannot have reasonably relied on an order that was based on an incomplete and inaccurate record, and where aspects of the Termination Fee would allow an unjustifiable windfall to NextEra without providing an actual benefit to the

estates.  Further, any purported reliance by NextEra is of limited import because the Court found

that the Termination Fee Order is interlocutory as opposed to final.  NextEra's arguments that the

Reconsideration Motion was untimely and should be barred by laches were properly rejected by

the Court.

77.    In sum, NextEra has failed to satisfy its burden of showing a strong likelihood of

success on appeal.[8]  Therefore, the Stay Motion should be denied.

**B.    NextEra Has Not Demonstrated Any Irreparable Harm If A Stay Is Denied**

78.    Irreparable harm is an injury that "cannot be redressed by a legal or equitable

remedy following a trial."  *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck*

*Consumer Pharms. Co.*, 290 F.3d 578, 595 (3d Cir. 2002).  A stay must be the only way of

protecting the movant from harm.  *See Campbell Soup Co. v. ConArga, Inc.*, 977 F.2d 86, 91

(3rd Cir. 1992).  To show irreparable harm if the stay is denied, the movant must prove

irreparable harm that is "actual and imminent," not "remote []or speculative."  *In re W.R. Grace*

*& Co.*, 475 B.R. 34, 206 (D. Del. 2012) (citations omitted).

79.    An appeal resulting from purely economic injury does not satisfy the irreparable

injury requirement.  *See Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir.

2011); *see also Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 727 (3d Cir. 2004) ("Irreparable

harm must be of a peculiar nature, so that compensation in money alone cannot atone for it."

---

[8]    In the Stay Motion, NextEra simply rehashes many of the same arguments it made and lost on in the NextEra
Objection.  As courts have repeatedly found, a party who simply rehashes old arguments that were previously
considered cannot show a likelihood of success on the merits of its appeal.  *See, e.g.*, *Loppert v. WindsorTech,*
*Inc.*, No. 441-N, 2004 WL 3092338, at *1 (Del. Ch. Sept. 21, 2004) ("With respect to the likelihood of success
on appeal, defendant's briefing is devoid of argument that addresses the purported erroneous legal conclusions I
made in my June 25, 2004 ruling. Instead, defendant's reply brief merely rehashes the same arguments made to
the Court at the summary judgment stage . . . ."); *In re Innovative Commc'ns*, 390 B.R. 184, 189 (Bankr. D.V.I.
2008) (finding no likelihood of success on the merits where the applicant "merely rehashes old arguments that
were previously considered by this Court and ruled against him").

(citation omitted)); *W.R. Grace*, 475 B.R. at 207 ("monetary loss alone cannot constitute irreparable harm.").

80.     The loss of money is not an irreparable harm so long as the opportunity remains for it to be recovered, even if there is time, effort, and expense associated with such recovery. As the U.S. Supreme Court has explained:

> The key word in this consideration is irreparable.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974).

81.     NextEra has failed to satisfy its burden of showing irreparable harm.  *First*, the Stay Motion is procedurally defective as allegations by NextEra of irreparable harm are not supported by any affidavit, declaration, or other evidence.  *See Gusdonovich v. Bus. Info. Co.*, 119 F.R.D. 15, 17 (W.D. Pa. 1987) (finding that movant "failed to sufficiently show that the denial of the stay will cause them irreparable harm" where "assertions in defendants' brief are not verified in any way; nor have the defendants provided any affidavits or corporate documents to support their claim of irreparable harm."); *see also Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F.Supp.2d 277, 282 (S.D.N.Y. 1998) (denying injunctive relief where "[t]he only evidence . . . [of irreparable harm is] the conclusory and unsubstantiated assertions of irreparable injury").

82.     *Second*, even if this Court were to consider NextEra's unsubstantiated, conclusory assertions, NextEra has not shown any actual harm that cannot be redressed by other means if a stay is not granted.  Here, any potential loss to NextEra would be purely monetary, and NextEra even concedes that it would be able to address this harm without a stay by seeking disgorgement

from other creditors.  *See* Stay Motion, ¶ 97 & n. 51 (acknowledging that NextEra "would possess the right to seek disgorgement as a matter of common law" and could "pursue creditors or the Reorganized Debtors for payment of the Termination Fee.").  Accordingly, in the unlikely event NextEra were to succeed on appeal, it would have an adequate remedy available to it. Because there is a clear alternative path for NextEra to pursue, NextEra cannot establish that it will be irreparably harmed and that a stay is the "only way" to protect it in the event it succeeds on appeal.

83.    *Third*, NextEra has not shown that any alleged harm is imminent.  NextEra argues that absent a stay, the Debtors likely will refuse to maintain a reserve in connection with their chapter 11 plan.  No plan distributions are imminent, however, and any plan confirmation hearing is likely months away.[9]  Elliott maintains that a reserve is inappropriate, but NextEra can seek a plan reserve at the appropriate time in connection with the Debtors' plan confirmation proceedings.[10]  Indeed, NextEra has already filed a preliminary limited objection to the Debtors' plan preserving its right to argue that confirmation should be conditioned upon establishment of a reserve.  Dkt. No. 12139.  Accordingly, NextEra's arguments regarding a plan reserve are premature.

84.    Further, NextEra's arguments of imminent harm are belied by its delay thus far in the appeal process.  NextEra waited nearly the full statutory period before filing its notice of appeal from the Reconsideration Order.  Then, notwithstanding that the parties had jointly certified that a direct appeal would materially advance the bankruptcy, NextEra added an additional, disputed ground to its Petition for Direct Appeal.  NextEra's inclusion of this disputed

---

[9]    The Debtors have recently filed a proposed supplement to their chapter 11 plan scheduling order that contemplates a plan confirmation hearing in late March 2018.  Dkt. No. 12265.

[10]    Elliott reserves all rights and arguments in connection with any request by NextEra for the Debtors to establish a reserve in connection with the Debtors' chapter 11 plan on account of the Termination Fee.

ground will lead to briefing by the parties in the Third Circuit on the issue, thus causing further delay and potentially jeopardizing any authorization from the Third Circuit for a direct appeal. NextEra's actions and delays are directly contrary to any claims of imminent, irreparable harm. *See Young v. IRS (In re Young)*, 132 B.R. 395, 397 (S.D. Ind. 1990) ("a well-known maxim of equity guides the court here, that being that equity aids the vigilant, not those who slumber upon their rights.").

85.      Accordingly, NextEra has not satisfied its burden of showing immediate and irreparable harm.

**C.      Imposing A Stay Pending Appeal Will Harm Creditors**

86.      As set forth above, NextEra has adequate remedies available to it at law and cannot show any imminent harm if a stay is not imposed.  The estates and creditors, on the other hand, will be harmed if a stay is imposed.

87.      NextEra suggests (but does not specifically request) that a reserve should be established in connection with the Debtors' chapter 11 plan.  Creditors have already been forced to wait more than three and a half years for any distribution on their claims, and any reserve would needlessly tie up plan distributions for an indeterminate additional amount of time. Creditors would then be deprived of the right to utilize and invest funds to which they are otherwise entitled.

88.      In balancing the harms for purposes of a stay request, courts have found that unnecessary delays in creditor distributions weigh in favor of denying the stay, particularly where there is not a substantial likelihood of success on the merits.  *See Halperin v. Moreno (In re Green Field Energy Servs., Inc.)*, No. 13-12783(KG), 2017 WL 2729065, at *3 (Bankr. D. Del. June 23, 2017); *In re BGI, Inc.*, No. 11-10614 (MG), 2012 WL 5392208, at *6 (Bankr. S.D.N.Y.

Nov. 2, 2012) (finding that holders of allowed general unsecured claims would face significant harm from a stay of plan distributions pending an appeal, "including the loss of valuable working capital for an indefinite period of time [and] lost opportunities to invest the funds"); *In re One Vision Park, Inc.*, No. 09-31130 TEC, 2010 WL 3951548, at *3 (Bankr. N.D. Cal. Oct. 7, 2010) ("[a] delay in payment to holders of allowed claims . . . is not justified where the merits of the appeal are so weak."); *In re St. Mary Hosp.*, 157 B.R. 235, 238 (E.D. Pa. 1993) (denying stay pending appeal where there was "no substantial likelihood of success on the merits" and "creditors could be harmed by a further delay of payment"); *In re Public Serv. Co. of N.H.*, 116 B.R. 347, 350 (Bankr. D. N.H. 1990) ("the delay caused to creditors receiving their payments is also a significant harm warranting denial of a stay").

89.    These cases have been ongoing since April 2014, and the Debtors are now seemingly on a path towards confirmation in the first half of 2018.  Creditors have waited long enough to receive recoveries on their claims.  They should not be forced to now bear the burden of a meritless appeal by NextEra and wait even longer to receive their distributions.

90.    Therefore, this factor weighs in favor of denying NextEra's stay request.

**D.    A Stay Is Not In The Public Interest**

91.    In the context of a stay pending appeal, the public interest generally supports "quick and successful reorganizations" and the "finality of bankruptcy judgments."  *Grimes v. Genesis Health Ventures, Inc. (In re Genesis Health Ventures, Inc.)*, 280 B.R. 339, 346–47 (Bankr. D. Del. 2002); *see also In re LCI Holding Co., Inc.*, 519 B.R. 461, 466 (D. Del. 2014), *aff'd* 802 F.3d 547 (3d Cir. 2015) ("the public interest is better served by allowing the estates to be administered swiftly and efficiently"); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 284

(Bankr. S.D.N.Y. 2007) ("[t]he public interest requires bankruptcy courts to consider the good of the case as a whole, and not individual creditors' investment concerns.").

92.    In support of its public policy arguments, NextEra inappropriately characterizes this Court's ruling as an attack on all termination fees that will have a chilling effect on the market.    This is not the case.    In issuing the Reconsideration Opinion and entering the Reconsideration Order, this Court clearly recognized the unique, extraordinary circumstances present in this case that led to reconsideration of the Termination Fee Order.    As noted by the Court, the Reconsideration Order will not impact cases where the parties properly negotiate, structure, and disclose termination fees to the court and demonstrate that such fees constitute an actual, necessary cost and expense of preserving the estate.    Reconsideration Opinion, p. 24–25.

93.    Further, NextEra's public policy arguments are belied by actual events that have unfolded in these cases.    Since Elliott filed the Reconsideration Motion, the Debtors entered into a merger agreement with Sempra providing for a termination fee.    The key distinction, however, is that the termination fee under the Sempra deal is not payable if the merger agreement is terminated *by either party* (a) following an outside termination date or (b) if the PUCT issues an order either denying approval of the merger or imposing a burdensome condition that is not accepted by Sempra.    *See* Dkt. No. 11801, ¶ 3.    The then-pending challenge to NextEra's termination fee did not dissuade Sempra from pursuing a merger transaction, and there was no "chilling effect" as NextEra heedlessly warns.    Rather, Sempra agreed to eliminate the defects that previously existed in NextEra's deal and move forward with a deal and termination fee that satisfies the *O'Brien* standard.

94.    Moreover, NextEra overlooks clear countervailing public policy that supports a denial of its stay request.    It would be contrary to public policy to allow a bidder to rely on an

inaccurate and incomplete record in order to receive a massive termination fee that never actually satisfied controlling Third Circuit precedent.  The Reconsideration Order reinforces the well-established standards for termination fee approval within the Third Circuit.  It also sends a clear message that parties cannot circumvent that standard and gain a windfall by relying on a court order obtained based on obscured facts and misrepresentations.

95.    Accordingly, public policy considerations do not support a stay pending appeal.

## II.    IF THE COURT WERE TO GRANT A STAY PENDING APPEAL THAT DELAYS OR DECREASES PLAN DISTRIBUTIONS, NEXTERA SHOULD BE REQUIRED TO POST A SUBSTANTIAL BOND

96.    As demonstrated above, NextEra's request for a stay should be denied on multiple grounds.  In the event that this Court determines that a stay should be granted, and if the imposition of the stay has the effect of decreasing or delaying initial distributions by the Debtors under a plan, then at such time NextEra should be ordered to provide a substantial bond.

97.    When a stay pending appeal is granted, Bankruptcy Rule 8007 authorizes the Court to condition the stay on the posting of an appropriate bond.  *See* Fed. R. Bankr. P. 8007. "The purpose of the supersedeas bond under Rule 62(d) is to preserve the status quo during the pendency of an appeal and protect the winning party from the possibility of loss resulting from the delay in execution."  *VICI Racing, LLC v. T-Mobile USA, Inc.*, 921 F. Supp. 2d 317, 335 (D. Del. 2013), *vacated in part on other grounds*, 763 F.3d 273 (3d Cir. 2014); *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 351, 368 (S.D.N.Y. 2007) (requiring appellants to "post a substantial bond that is commensurate with the threatened loss to the non-moving parties" and that protects the prevailing parties "against any loss that might be sustained as a result of an ineffectual appeal").

98.    If a stay pending appeal is likely to harm the appellee or other parties in interest, "and there is no good reason not to require the posting of a bond, then the court should set a bond

at or near the full amount of the potential harm to the non-moving parties." *Adelphia*, 361 B.R. at 351.  Where a party seeks a stay without a bond, that party "has the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of a supersede bond." *De la Fuente v. DCI Telecomm. Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003); *W.R. Grace*, 475 B.R. at 209.

99.    NextEra should not be entitled to a free litigation option to pursue its appeal without any obligation to make the Debtors and creditors whole in the event NextEra is unsuccessful.  There are no pending plan distributions and, therefore, no immediate irreparable harm.  If, however, a stay is granted and such stay has the effect of delaying or decreasing initial distributions under the Debtors' chapter 11 plan (if confirmed), creditors will be harmed, including the lost ability to receive an investment return on distributions.

100.    Accordingly, if the Court determines that a stay is warranted and, in connection with plan confirmation proceedings, distributions are delayed or decreased as a result of the stay,[11] then at that time the Court should determine the appropriate amount of the bond to be posted by NextEra.  Elliott reserves all rights and arguments, but maintains that any such bond should be in a principal amount to be determined by the Court, plus interest at a rate and for such duration to be determined by the Court (which Elliott believes should be no less than the non-default interest rate on the senior unsecured notes due December 1, 2018 issued by EFIH for a period of three years) that will adequately compensate parties for their lost opportunity costs and

---

[11]    Elliott will oppose any request by NextEra for a plan reserve and reserves all rights and arguments in connection with such issue.

investment return for the potential duration of any appeal periods, including any potential appeal to the U.S. Supreme Court or until any other final resolution on appeal.[12]

## CONCLUSION

For the foregoing reasons, the Court should enter an order denying the Stay Motion and ordering such other and further relief as is just and proper.

Wilmington, Delaware
Date: November 30, 2017

**BAYARD, P.A.**

*/s/ Erin R. Fay*
Scott D. Cousins (No. 3079)
Erin R. Fay (No. 5268)
Evan T. Miller (No. 5364)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
scousins@bayardlaw.com
efay@bayardlaw.com
emiller@bayardlaw.com

–and–

**ROPES & GRAY LLP**
Keith H. Wofford (admitted *pro hac vice*)
Gregg M. Galardi
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile:  (212) 596-9090
Keith.Wofford@ropesgray.com
Gregg.Galardi@ropesgray.com

*Counsel for Elliot Associates, L.P.,*
*Elliott International, L.P., and*
*the Liverpool Limited Partnership*

---

[12]    Even if the Reconsideration Order were to be reversed on appeal, Elliott and the Debtors still contend that NextEra is not entitled to the Termination Fee based on the Adversary Proceeding, which proceeding could take many years to reach a final resolution, including appeals.