IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- X
In re:                                          : Chapter 11
                                                :
Energy Future Holdings Corp., *et al.*,         : Case No. 14-10979 (CSS)
                                                :
　　　　　　Debtors.                              : (Jointly Administered)
                                                :
                                                : **Re: D.I. 12243, 12287, 12288,**
                                                : **12289**
----------------------------------------------------------- X

## NEXTERA'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE RECONSIDERATION ORDER PENDING APPEAL

NextEra Energy, Inc. ("NextEra") hereby submits this Reply (the "Reply") in support of its motion to stay the Court's *Order Granting the Motion To Reconsider of Elliott Associates, L.P. and Denying the Application of NextEra Energy Inc. for Payment of Administrative Claim* [D.I. 12075] (the "Reconsideration Order") pending appeal (the "Motion"). In support of the Reply, NextEra respectfully states as follows:

### PRELIMINARY STATEMENT

1.　　None of the objecting parties dispute the extraordinary nature of the relief granted in the Reconsideration Order. Nor can they meaningfully dispute that there are "substantial grounds for a difference of opinion" about the merits of an order on which the Court itself had a different opinion just a year ago. As to irreparable harm, NextEra has cited multiple decisions from this District establishing that a potential distribution of estate assets prior to the adjudication of an appeal concerning those assets—the very harm at issue here—warrants a finding of irreparable harm. None of the objecting parties even acknowledge, never mind distinguish, those authorities.

2.　　As to the balance of harms, the objectors ignore the fundamental facts of the situation: that if the stay is granted, the creditors' only potential harm is (at most) a short delay in

the distribution of a portion of the bankruptcy estate, while if the stay is denied, NextEra faces the possibility that $275 million to which it is entitled might be distributed among dozens or hundreds of creditors, recoverable (if at all) only after years of costly litigation. There is no comparison between those two potential injuries. Finally, none of the objectors squarely grapple with the strong public interest in providing certainty to bidders in bankruptcy sales, whose incentive to offer attractive bids and vigorously pursue approval will be seriously impaired by the possibility that the courts will approve a bargained-for allocation of risk only to pull the rug out from under them later, if that risk is actually realized.

**ARGUMENT**

3.  The Motion should be granted because NextEra has met the four-factor test to justify a stay pending appeal by showing that (1) there is a strong likelihood of success on the merits, (2) there will be irreparable injury to NextEra absent a stay, (3) the balance of harms favors NextEra, and (4) a stay is in the public interest.

**I.    NextEra is Likely to Succeed on the Merits**

4.  NextEra has shown the necessary "substantial grounds for a difference of opinion" as to the Reconsideration Order needed to issue a stay pending appeal. *See, e.g., In re Genesis Health Ventures, Inc.*, 367 B.R. 516, 521 (Bankr. D. Del. 2007) ("For the purposes of this motion, it does not matter whether this Court believes that Defendants should succeed on appeal . . . [A] court may grant a motion for a stay pending appeal even when it has confidence in the rectitude of its decision."). Without revisiting in full the arguments it has already made, NextEra provides four key considerations on this factor in response to Elliott's, the Debtors', and the Committee's Objections.[1]

---

[1] *Objection of the EFH/EFIH Debtors to NextEra's Motion to Stay the Reconsideration Order Pending Appeal* [D.I. 12287] ("Debtors Objection"); *Elliott Funds' Objection to NextEra Energy, Inc.'s Motion to Stay the*

5.   *First*, while Debtors and Elliott both argue that a stay is unwarranted because the relief is "extraordinary,"[2] both fail to grapple with or even acknowledge the "extraordinary" circumstances that led NextEra to request the stay. As the Court itself recognized, it took the "extraordinary step" of "reconsidering an order it entered over a year ago and upon which parties have relied."[3] Because of the Court's "extraordinary step," it is entirely appropriate for the Court to also require that the status quo that was in place for over one year—a status quo relied on by NextEra—remain in place while NextEra pursues its appeal.

6.   *Second*, nobody disputes that the Termination Fee Approval Order finally disposed of the discrete dispute that Elliott asked the Court to reconsider and the only dispute regarding the Termination Fee before the Court on September 19, 2016—whether the Termination Fee satisfies the *O'Brien* standard. Rather, Elliott argues that the Termination Fee Approval Order left "additional work to be done by the Court" including "(a) approve any agreed-upon allocation of the Termination Fee between the estates, (b) determine how the Termination Fee would be allocated, (c) rule on an appropriate allocation if so requested by the parties, and (d) make any determination as to whether the Termination Fee was due and payable under the terms of the NextEra Merger Agreement." Elliott Objection ¶¶ 66-67. However, the Court specifically authorized payment of the termination fee without any "additional work,"

---

*Reconsideration Order Pending Appeal* [D.I. 12288] ("Elliott Objection"); *Objection tf the Official Committee of Unsecured Creditors of Energy Future Holdings Corporation, Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. to NextEra's Motion to Stay the Reconsideration Order Pending Appeal* [D.I. 12289] ("EFH/EFIH Committee Objection").

[2]   *See* Elliott Objection at 1 ("A stay pending appeal is extraordinary relief and . . . entirely unwarranted); Debtors Objection at ¶ 6 (NextEra is "not entitled to the 'extraordinary remedy' of a stay pending appeal"). The EFH/EFIH Committee Objection focuses only on the substantial harm to other parties and thus did not address this consideration.

[3]   Reconsideration Opinion at 2-3.

providing that payment was authorized "without any further proceedings before, or order of, the Court . . . ."[4]

7. Rather, any "additional work" was not required by the Termination Fee Approval Order, but was created by the Debtors when they raised a new dispute as to whether the circumstances triggering payment of the Termination Fee had in fact arisen. But that issue is wholly distinct from the issue addressed by the Termination Fee Approval Order and attacked by Elliott—approval of the specific circumstances in which the Termination Fee *would* be payable. The Court completely disposed of that issue on September 19, 2016 when it ruled that the Termination Fee would be payable "to the extent it becomes due and payable pursuant to the terms and conditions of the Merger Agreement, at the time and in the manner provided for therein,"[5] leaving "nothing further for the bankruptcy court to do." *In re West Elecs., Inc.*, 852 F.2d 79, 82 (3d Cir. 1988). The Order was thus final as to that discrete issue—exactly the issue challenged by Elliott.

8. ***Third***, Elliott does not dispute, nor can it, that it was a creditor during the 2016 proceedings and chose not to object, or even participate, until it became clear that the NextEra deal would not receive regulatory approval.[6] As a threshold matter, Elliott's suggestion that its purported confusion and decision not to timely object to the Termination Fee was a result of the

---

[4] Termination Fee Approval Order ¶ 4.

[5] *Id.*

[6] Elliott's argument that "NextEra is improperly seeking to introduce purported facts that were simply not in the Reconsideration Record and cannot be properly relied upon in any appeal" is without merit. It was Elliott that introduced the fact that it was a creditor on September 19, 2016 in its Reply, and it is thus estopped from now arguing that this should not be considered. *See The Elliott Funds' Reply Supporting Their Motion To Reconsiders In Part The September 19, 2016 Order [DKT. No. 9584] Approving The NextEra Termination Fee* [D.I. 11905] ¶ 31 ("Elliott was not a substantial creditor at the time of the September 19 hearing."). Moreover, courts can, and do, take judicial notice of creditors. *See e.g.*, *In re Morris*, 570 B.R. 708, 710 (Bankr. M.D. Pa. 2017) ("A bankruptcy court may take judicial notice of the docket events in a case and the contents of the bankruptcy schedules to determine the timing and status of case events, as well as other facts not reasonably in dispute").

Debtors' counsel's misstatements at the Approval Hearing makes no sense—it would literally require effect to come before cause. The Approval Motion was filed and served on August 3, 2016. The deadline to object to the Termination Fee was August 18, 2016. Elliott had a full opportunity to review the Merger Agreement, including the provisions relating to the Termination Fee. Other creditors "thoroughly reviewed and vetted" the Merger Agreement prior to the objection deadline.[7] Elliott did not object. The Approval Hearing—during which the purportedly misleading statement was made—occurred on September 19, 2016, more than a month *after* Elliott had chosen not to object. It could not be clearer that Elliott is using Debtors' counsel's misstatement as a retroactive justification for its failure to timely object. Unless time runs backwards for Elliott, that statement could not have been the cause of Elliott's behavior.

9. Moreover, the notion that Elliott could not understand that the Debtors accepted the risk of regulatory rejection as part of the Termination Fee is ridiculous when the record is examined in its entirety. The terms of the Merger Agreement—which were available to all creditors—specifically allocated the risk of regulatory rejection, and nothing about that allocation changed between September 2016 and July 2017. If anything, the risk allocated to Debtors was *over*stated by the witnesses during the September 19, 2016 hearing. *See Seife Declaration* Ex. A, Hr'g Tr. Sept. 19, 2016 at 78:17-23 (explaining that the breakup fee would be payable upon consummation of an alternative transaction "if the Court confirms the plan . . . and that plan does not consummate because of a failure to achieve regulatory approval"). Elliott's Motion to Reconsider was thus untimely regardless of whether the Termination Fee Approval Order was final or interlocutory because Elliott sat on its hands for nearly a year while it either knew or easily could have known the proffered basis for reconsideration.

---

[7] *Declaration of Howard Seife in Support of Objection of NextEra Energy, Inc. to Elliott Funds' Motion to Reconsider in Part The September 19, 2016 Order [DKT. No. 9584] Approving the NextEra Termination Fee* [D.I. 11878] ("Seife Declaration") Ex. A, Hr'g Tr. Sept. 19, 2016 at 108:1–5.

10. ***Finally***, Elliott fails to cite anything to support its core argument on the merits: the proposition that "[a]n expense cannot be found to be necessary to preserve the estate's value where it would become payable under circumstances in which the estate is left worse off."[8] Nor can it, for this is not the law. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1991) (merely requiring that the termination fee "increas[e] the ***likelihood*** that the price at which the debtor is sold will reflect its true worth") (emphasis added).

11. As the court in *O'Brien* recognized, a key purpose of termination fees is allocating risk between a bidder and debtor in order to come to the optimal value or "true worth" of the estate. *See id.* at 533 (noting from *In re 995 Fifth Avenue Associates, L.P.*, 96 B.R. 24 (Bankr. S.D.N.Y. 1989) that termination fees provide "some form of compensation for the risks [the bidder] is undertaking"). That is exactly what occurred here.

12. Contrary to Elliott's assertion that the Termination Fee "did not generate any consideration for the estate,"[9] the record is replete with significant consideration provided by NextEra for the Termination Fee, including a $410 million increase in purchase price[10] and a dropped "match right"[11] that was eliminated to increase competitive bidding. In exchange for this consideration, Debtors accepted some of the risk of a potential failed transaction caused by either regulatory rejection or alternative bidders. This negotiation between Debtors, creditors, and NextEra "increas[ed] the likelihood that the price at which the debtor is sold will reflect its true worth," *O'Brien*, 181 F.3d at 537.

---

[8] Elliott Objection ¶ 53.

[9] Elliott Objection ¶ 53.

[10] *Debtors' Reply in Support of Approval Motion* ¶¶ 3, 19; *Seife Declaration* Ex. A, Hr'g Tr. Sept. 19, 2016 at 13:23-15-3.

[11] *Seife Declaration* Ex. A, Hr'g Tr. Sept. 19, 2016 at 97:6-7.

13. The effectiveness of this negotiation in unlocking Debtors' "true worth" is demonstrated by the fact that NextEra valued the company significantly higher than the current Sempra deal. Indeed, Sempra's "substantially lower"[12] price is clear evidence of what occurs when the buyer is required to accept all regulatory risk, as Elliott asserts is required by *O'Brien*. Allowing parties to negotiate for and allocate risk unlocks the "true worth" of the estate because bidders are no longer required to discount the value of the estate because of risk.[13] That is why termination fees exist. Debtors, creditors (including Elliott), and even the Court understood this at time of the Termination Fee approval. Indeed, as the Debtors subsequently explained in response to the Reconsideration Motion, the value provided by the NextEra transaction was worth the risks associated with the Termination Fee:

> Your Honor, we think the transcript of the hearing, we think the order that Your Honor entered, we think the September 25th clarifying letter, to the extent it was necessary for clarification purposes, all add up to a very sound and logical conclusion by Your Honor supported by the overwhelming amount of E-Side creditors, that ***this was a calculated risk worth taking***, that with the enhanced recoveries, full payout for EFIH, substantial recoveries at the EFH box, that this was a transaction worth entering into even with the unusual features that Mr. Galardi now says are per se not allowed under Third Circuit law. We think ***everyone went into this with their eyes wide open***.[14]

Moreover, as the Court clearly explained only a few days after approving the Termination Fee, when "deciding whether to approve the merger agreement and termination fee" the Court "found it highly significant that the creditors of EFH and EFIH which would be directly harmed by the

---

[12] Elliott Objection ¶ 17.

[13] Understanding the Termination Fee as an allocation of risk elucidates Elliott's argument that the lack of an outside date created poor incentives for NextEra as the red herring that it is. Elliott is merely arguing that debtors cannot allocate the risk of regulatory rejection, which in turn decreases the value of the estate and chills bids. This does not "increas[e] the likelihood that the price at which the debtor is sold will reflect its true worth," *O'Brien*, 181 F.3d at 537.

[14] *Declaration of Thomas Buchanan in Support of NextEra's Reply in Support of its Motion to Stay the Reconsderation Order Pending Appeal* ("Buchanan Declaration") Ex. A, Hr'g Tr. Sept. 19, 2017 at 22:1–13.

imposition of the termination fee supported the transaction, notwithstanding the *real possibility* of the imposition of a $275 [m]illion administrative expense." *Seife Declaration* Ex. C, Hr'g Tr. Sept. 26, 2016 at 14:8-15:1 (emphasis added).

14.     Because there are "substantial grounds for a difference of opinion" as to the Reconsideration Order and Opinion, NextEra has shown a sufficient likelihood of success on the merits to justify a stay pending appeal.

## II.     NextEra Will Be Irreparably Harmed Absent A Stay

15.     NextEra has also shown that it will be irreparably harmed absent a stay. Irreparable harm sufficient to grant a stay pending appeal exists when the movant will suffer an injury during the pendency of the litigation that cannot be prevented or fully rectified by the tribunal's final decision. *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015). For this reason, two courts within this jurisdiction have explicitly held that distribution of estate assets to diverse parties prior to the adjudication of an appeal concerning those assets warrants a finding of irreparable harm. *See In re Tribune Co.*, 477 B.R. 465, 476 (Bankr. D. Del. 2012); *In re Finova Grp., Inc.*, No. 01-698-PJW, 2007 WL 3238764, at *2 (D. Del. Oct. 31, 2007). Importantly, these courts noted that once distributions are made "it is unlikely that the distributions could be recovered, or, if recoverable, would be challenging and costly." *In re Tribune Co.*, 477 B.R. at 477; *In re Finova Grp., Inc.*; 2007 WL 3238764, at *2 (D. Del. Oct. 31, 2007) ("Once this distribution is made, Appellant will have little or no recourse available to reclaim the funds.").

16.     This appeal represents an identical situation. "[N]umerous individual and smaller creditors" would be entitled to distributions under a confirmed plan of reorganization. EFH/EFIH Committee Objection ¶ 9. NextEra would have to individually pursue disgorgement from each creditor, an unwieldy and expensive process which courts have already recognized cannot make NextEra whole. Tellingly, not a single one of the objections address this authority

squarely resolving the dispute in NextEra's favor. Instead, the Debtors and Elliott raise a number of equally unavailing arguments.[15]

17.  *First*, Debtors and Elliott claim that NextEra's alleged harm is not imminent, because the plan confirmation date has not been set and there is no Effective Date for making distributions. Debtors Objection ¶ 11; Elliott Objection ¶ 83.[16] But this objection is a sleight of hand. The relevant issue is whether the Effective Date will occur during the pendency of the appeal, not whether it could happen as of the exact moment NextEra filed its motion. *See In re Revel AC, Inc.*, 802 F.3d at 571. Debtors are boring full steam ahead to obtain approval of the Sempra transaction, which if approved could extinguish NextEra's claim to estate assets within a matter of months. *See* Elliott Objection ¶ 89 ("[T]he Debtors are now seemingly on a path towards confirmation in the first half of 2018."). Considering that the Third Circuit has not even yet considered the parties' motion for a direct appeal, it is entirely possible that the pendency of the appeal will carry beyond the Effective Date, even if months away. *See Blossom S., LLC v. Sebelius*, No. 13-CV-6452L, 2014 WL 204201, at *3 (W.D.N.Y. Jan. 17, 2014) (finding an event set to occur four months after the date of the appealed order satisfied irreparable harm requirement because "[a] decision on plaintiff's appeal [was] likely months away").

---

[15]   These cases also easily refute two of Debtors and Elliott's most misleading arguments against a stay. First, they flatly contradict the sweeping assertion that irreparable harm can **never** result from a monetary loss. *See* Debtors Objection ¶ 10; Elliott Objection ¶¶ 79, 82. NextEra's monetary losses cannot be compensable if no assets remain to satisfy Debtors' obligations to NextEra. Second, they dispel the idea that NextEra's showing of irreparable harm is somehow procedurally defective or conclusory, because disgorgement fails as a remedy as a matter of law in these circumstances. *See* Debtors Objection ¶ 14; Elliott Objection ¶ 81. Indeed, the appellants in *Finova* simply argued that its irreparable harm was "self-evident" in light of Debtors' intention to make distributions before resolution of the appeal. No. 1:07-cv-00480-JJF, Dkt. No. 4, at 11 (D. Del., Aug. 31, 2017). Similarly, the appellants in *Tribune Co.* solely relied on the debtors' expressed intent to consummate the plan as expeditiously as possible. No. 08-13141-KCJ, Dkt. No. 12080, at 17 (Bankr. D. Del., July 23, 2012). Here, Elliott and the EFH/EFIH Committee expressly intend to force Debtors to make distributions without regard to NextEra's claim to the Termination Fee. Elliott Objection ¶ 83; EFH/EFIH Committee Objection ¶¶ 9-10.

18. Tellingly, despite claiming that NextEra faces no imminent risk of harm due to the absence of a set Effective Date, the Objectors simultaneously complain that a stay will somehow "tie up plan distributions for an indeterminate additional amount of time" due to the lengthiness of the appeal. Elliott Objection ¶ 87; Debtors Objection ¶ 20 (describing the appellate process as "indefinite" because "NextEra has no control over how long it may take the Third Circuit to ultimately render a decision."); EFH/EFIH Committee Objection ¶ 10 (explaining that unsecured creditors would "suffer the opportunity cost of having distributions further delayed").[17] This raises an obvious question—how could a stay harm the creditors by delaying distributions if such distributions were not imminent?

19. **Second,** Debtors and Elliott suggest the possibility of a reserve or an alternative remedy that would allow NextEra to collect upon a final, non-appealable order. Debtors Objection ¶ 12; Elliott Objection ¶ 83. NextEra would readily accept a full and binding reserve in respect of the Termination Fee in lieu of a stay of the Reconsideration Order. However, the relevant creditors have already stated that they intend to object to a reserve or any other remedy that would preserve NextEra's claim. Elliott Objection ¶ 83; EFH/EFIH Committee Objection ¶¶ 9-10. Thus, while NextEra reserves all its rights with respect to the imposition of a reserve requirement, the hypothetical possibility of a reserve cannot obviate the very real threat posed by creditors' desire to obtain distributions without regard to NextEra's claim to the Termination Fee. If Debtors' and Elliott's claims were true, then appellees could defeat motions for stays

---

[17] The fact that NextEra does not control the timing of the appeals process also disproves Elliott's suggestion that the purported delay in filing a notice of appeal somehow vitiates NextEra's showing of irreparable harm. Elliot Objection ¶ 84. Elliott cites no evidence that NextEra unreasonably or intentionally delayed this filing. Elliott also does not point to anything evidencing that filing any earlier could have expedited the timing of the Third Circuit's decision. And importantly, the timing of the filing merely reflects that NextEra diligently sought consent to a direct appeal from all of the relevant parties, a prerequisite to guaranteeing certification by the Bankruptcy Court.

pending appeal in all instances by simply providing non-binding promises to preserve the disputed asset during the pendency of the litigation.

20.     Therefore, absent a binding full reserve on account of the Termination Fee, a stay pending appeal represents the only real means for protecting NextEra from imminent irreparable harm.

### III.    The Balance of Harm Weighs in NextEra's Favor

21.     When viewed in comparison with the potentially dire consequences to NextEra if no stay is granted, the harm to other parties is miniscule.  NextEra does not dispute that delayed distributions to creditors represent a relevant consideration when evaluating the balance of harm. However, the Objectors grossly overstate the consequences of a stay by operating under the assumption that it will somehow delay distributions of the estate in its entirety.  *See* Elliott Objection ¶ 89; Debtors Objection ¶ 20; EFH/EFIH Committee ¶ 9.  NextEra has not moved to stay the Chapter 11 proceedings as a whole.  Rather, NextEra merely asks the Court to ensure that a portion of the distributions is temporarily set aside to preserve NextEra's claim against the estate.  Even if the Court institutes a stay, the creditors will nonetheless obtain a significant portion of the distributions to which they will be entitled to upon plan confirmation, and none of the Objectors provide any indication otherwise.  *See Disclosure Statement For The First Amended Joint Plan Of Reorganization Of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, And The EFH/EFIH Debtors Pursuant To Chapter 11 Of The Bankruptcy Code* [D.I. 11889] at 21-31 (providing recovery ranges depending on allocation of Termination Fee).  And as NextEra stated in the Motion, reserved funds can be easily distributed to creditors in a supplemental distribution in the unlikely event that NextEra is ultimately unsuccessful on appeal.  Therefore, the harm to creditors, properly understood, pales

in comparison to NextEra's potential to entirely lose its ability to recover the Termination Fee. *See In re Finova Grp., Inc.*, 2007 WL 3238764, at *1.

### IV.     A Stay is in The Public Interest

22.     As fully addressed in the Motion, the public interest also weighs in favor of a stay because of the chilling effect caused by the Reconsideration Order. Elliott's argument that this chilling effect is "belied by actual events that have unfolded in these cases"[18] is careless at best and dishonest at worst. The Sempra termination fee was negotiated long before the Court's Reconsideration Opinion and Order and so could not evidence the absence of a chilling effect. What is more, while Sempra's termination fee does not allocate the risk of regulatory rejection to the Debtors, Sempra's assumption of that risk corresponds with a "substantial"[19] discount to the value of the estate. This is logical and inevitable: the more risk the bidder is required to bear, the less it will be willing to pay for the target company. If anything, the Sempra transaction demonstrates the consequences of forcing bidders to bear more risk: depressed bid prices and less money for creditors. Thus, the public interest favors a stay until this issue can be properly addressed by the Third Circuit.

### V.     NextEra Should Not be Forced to Post a Bond

23.     The Debtors argue that NextEra should post a bond of the full amount of the $275 million fee; Elliott argues for a "substantial" bond. They offer no justification for this extraordinary request, and there is none. The purpose of an appeal bond is to "preserve the status quo pending appeal." *In re Advanced Elecs., Inc.*, 283 F. App'x 959, 966 (3d Cir. 2008) (quoting *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190-1191 (5th Cir. 1979)). In the ordinary case, the appellant posts a bond to stay execution of the

---

[18]   Elliott Objection ¶ 93.

[19]   Elliott Objection ¶ 17.

judgment and forestall paying the appellee the judgment amount. The bond is ordinarily issued in the amount of the judgment, because the risk to the appellee is that the money won't be there following an unsuccessful appeal. Here, unlike the ordinary case, Appellant NextEra is not the source of the disputed funds. Instead, the $275 million will be paid from the consideration for the Sempra deal. Because there is no risk that the money will somehow disappear during the appeal, there is no reason to force NextEra to post a massive bond.

24.     Instead, if a bond is required at all, it should be commensurate in amount to the risk of loss actually faced by the appellees. See, e.g., *VICI Racing, LLC v. T-Mobile USA, Inc.*, 921 F. Supp. 2d 317, 335 (D. Del. 2013), *vacated in part on other grounds*, 763 F.3d 273 (3d Cir. 2014) ("The purpose of the supersedeas bond under Rule 62(d) is to preserve the status quo during the pendency of an appeal and protect the winning party from the possibility of loss resulting from the delay in execution."). Here, the only risk faced by the creditors is opportunity cost—the possibility that distribution of the $275 million will be delayed, denying the creditors use of that money for some period of time. At this point, of course, it is not at all clear that the stay would delay any distributions at all: the parties are seeking expedited appeal in the Third Circuit, which may well resolve the appeal before any distribution could occur.[20] And even if there is some delay in distributing the $275 million, it is likely to be brief—a few weeks, perhaps, or at most a few months. The correct value for a bond is thus not $275 million, but the

---

[20] Elliott alleges that NextEra is not advancing the appeal as quickly as possible because NextEra has asserted a basis for direct appeal (i.e., that the appeal involves a matter of public importance) with which Elliott disagrees. Elliott contends that including that additional grounds will "lead to briefing" and "jeopardize any authorization from the Third Circuit . . . ." Elliott Objection ¶ 84. These assertions are unfounded for multiple reasons. First, Elliott itself signed on to the parties' joint certification, which specifically stated that NextEra would advance the public importance argument as a basis for direct appeal. *See Joint Supplemental Statement on Certification* [D.I. 12224] ¶ 24 ("NextEra, believes, and will assert before the Third Circuit, that under 28 U.S.C. § 158(d)(2)(A)(i), the Reconsideration Order and related Opinion involve a matter of a public importance."). Second, an additional potential ground for direct appeal could only enhance the chance that a direct appeal is authorized. Third, additional briefing was only necessary because *Elliott* chose to oppose the proffered ground for a direct appeal. Elliott's effort to blame NextEra for Elliott's own decision to object to a direct appeal is the height of hypocrisy.

amount of money the creditors would likely earn on $275 million over a delay period of a few months, discounted by the possibility that there will be no delay in distribution at all. That amount is likely measured in six figures, not nine.

25. If the Court determines that a bond is necessary to protect the creditors from that miniscule risk, NextEra joins the Debtors in requesting that the Court order briefing on the appropriate amount of the bond.

## CONCLUSION

Wherefore, NextEra requests the entry of an Order staying the effect of the Reconsideration Order until the final resolution of NextEra's appeal and such further relief as is just and proper.

Dated: December 6, 2017
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:    landis@lrclaw.com
              mcguire@lrclaw.com
              wright@lrclaw.com

- and –

**WINSTON & STRAWN LLP**
Dan K. Webb (admitted *pro hac vice*)
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone:  (312) 558-5600
Facsimile:  (312) 294-5700
Email:    dwebb@winston.com

Thomas M. Buchanan (admitted *pro hac vice*)
1700 K Street, NW
Washington, D.C. 20006
Telephone: (312) 282-5000
Facsimile: (202) 282-5100
Email: tbuchana@winston.com

- and –

**NORTON ROSE FULBRIGHT US LLP**
Howard Seife (admitted *pro hac vice*)
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369
Email:    howard.seife@nortonrosefulbright.com

Robin Ball (admitted *pro hac vice*)
555 South Flower Street, 41st Floor
Los Angeles, California 90071
Telephone:  (213) 892-9200
Facsimile:  (213) 892-9494
robin.ball@nortonrosefulbright.com

*Counsel to NextEra Energy, Inc.*