# EXHIBIT 7

# BRAUNHAGEY & BORDEN LLP

San Francisco & New York

J. Noah Hagey, Esq.
hagey@braunhagey.com

November 15, 2017

**VIA EMAIL**

EFH Fee Committee
C/o Brady C. Williamson, Esq.
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
Madison, Wisconsin 53703
Email: Bwilliam@gklaw.com

[Other Members of the Fee Committee below]

  Re: **Elliott Management – EFH Fee Committee Composition**

Dear Mr. Williamson:

  As you know, we serve as special counsel to Elliott Management Corporation ("Elliott") in connection with an examination of professional fees in the pending EFH bankruptcy proceedings captioned *In Re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS). We write further to our recent discussions around (1) adding Elliott to the Fee Committee, and (2) obtaining a concrete proposal from the Committee for further streamlining professional fees and expenditures in this case. We look forward to discussing those issues during next week's Committee call scheduled for November 20, 2017.

  For context, as of October 30, 2017, over $560 million in professional fees have been approved and/or recommended for approval by the Committee. This does not include hundreds of millions of dollars in additional accrued and accruing fees, success fees and related advisor costs currently scheduled to be spent against the estate's limited assets. The Court itself has acknowledged that such fees in the aggregate are "eye-popping" – particularly in relation to the disappointing quantum of creditor recoveries, which have declined by billions of dollars since the petition was filed.

  We appreciate your acknowledging these concerns and Elliott's perspective regarding the Fee Committee and its important work in this case. We also appreciate your November 13 memorandum in response to some of the items discussed on our call and ensuing email exchange. (There are a few additional open items from that exchange that we will raise under separate cover.) To help guide the Committee's thinking in advance of next week's call, we offer the following for consideration.

November 15, 2017
Page 2

1. **Elliott Seeks the Committee's Support to Join as a Member**

Elliott requests the Fee Committee's support to be included as a voting member through confirmation. As is well known, our client holds a significant majority of EFH/EFIH's remaining unsecured debt and will be a useful advocate for helping to review, negotiate and streamline fees being expended through confirmation. You noted on our call that the Committee and its members recognize that approximately 65 cents of every dollar spent (or saved) by the estate directly affects Elliott's position, and that our client has a material stake in preserving estate assets. Further, as the largest remaining unsecured creditor, Elliott is uniquely motivated to contribute meaningfully to the Committee's work. It also is ready and willing to dedicate time and resources to that task. This work will not only benefit Elliott, but all similarly situated unsecured creditors whose recoveries will be diminished by the remaining spend on professional advisors.

Elliott's support and information access will also allow it to directly participate in the final fee approval process, rather than on the back-end. This will help eliminate "second guessing" and give professionals greater confidence that, when reaching compromises with the Committee, they will not be subject to secondary inquiry from the estate's largest unsecured creditor. Doing so also will help conserve the Court's and other professional's time and resources in connection with final plan confirmation. While all parties obviously hold and reserve the right to challenge a given fee applications, few, if any, are likely to expend the resources necessary to evaluate and present such challenges, *i.e.*, aside from the U.S. Trustee, who also is on the Committee.

Regarding process, Judge Sontchi's August 21, 2014 Stipulation and Order (Dkt. 1896) establishing the Committee would seem to hold no objection or issue with adding a new member. There are a couple of approaches that the Committee might consider. The simplest would be to elect Elliott as a voting member alongside the existing UCC representative. That vote could then be presented to the Court by the Committee as a [Proposed] Order. Alternatively, Elliott could present its own application to the Court, with the Committee's approval noted therein. We would be happy to prepare either of those proposed orders for your consideration.

Additionally, if relevant to the Committee's or Court's consideration, Elliott is willing to forego estate compensation for its counsel participating on the Committee (our firm, BraunHagey & Borden LLP) to ensure the estate does not incur additional expense as a result of Elliott's joinder; such forbearance would not affect Elliott's entitlement or right to reimbursement for the services of its other advisors in the case generally.

2. **The Committee Should Promptly Evaluate the Existing Professional Landscape and Propose Changes to Further Minimize Estate Spend**

Elliott also have requested that the Committee undertake a prompt review of existing professionals and responsibilities in order to present a recommendation to the Court, *viz*, regarding practical steps to streamline and more efficiently conserve estate resources from now

November 15, 2017
Page 3

through plan confirmation. We have requested that such exercise be made as part of the upcoming meeting so that the issue can be presented to the Court at the next Status Conference.

On the merits, Elliott appreciates that the Committee recently informed all retained professionals that fees should remain "minimal" during the remaining months of the case. However, according to the most recent filing by the Committee, there are still numerous overlapping professionals (both law firms and financial advisors) actively billing or accruing fees (monthly and otherwise) against the estate. While there may have been need for such activity and layering at one point, that no longer appears to be true. The path to confirmation is now relatively linear, and the number of potential conflicts and material issues affecting E-Side constituencies have now collapsed with the pending Sempra transaction, as well as Elliott's position as the undisputed fulcrum security.

Finally, Elliott's request that the Committee critically examine the existing professional landscape indisputably is in the interest of all creditors and the estate. We accordingly request that the Committee and its advisors promptly develop specific recommendations for the parties and the Court to prevent any unnecessary advisor duplication or resource expenditure pending confirmation.

* * *

We explained during our introductory call that Elliott's goal is to play a productive role in helping to conserve estate assets. Elliott is uniquely vested to help further the Committee's mandate and support its work. Rather than looking in from the outside, allowing our client to participate will help the Committee conserve estate assets, negotiate serious reductions to professional fees, and eliminate future conflict.

We look forward to discussing these issues further. Feel free to contact me if you have any questions.

Very truly yours,

J. Noah Hagey

Cc: Richard Schepacarter, Counsel for U.S. Trustee (via Email)
Counsel for Members of Fee Committee (via Email)

# EXHIBIT 8

## Kim Berger

| | |
|---|---|
| **From:** | Kim Berger |
| **Sent:** | Friday, November 17, 2017 4:39 PM |
| **To:** | 'Williamson, Brady' |
| **Cc:** | Noah Hagey; Andrew Levine; 'Schepacarter, Richard (USTP)' |
| **Subject:** | Follow up Requests |

Hi Brady,

Thanks again for your November 13 memo. As mentioned in Noah's letter from Wednesday, we also wanted to follow up on some of the outstanding requests from my November 9 email to you below.

1. Regarding our request for a "map" summarizing the various professional advisors and their representatives (and fees incurred to-date), you referred us to exhibits to the Court's latest orders, and attached an exhibit to an earlier order showing fees paid to professionals who are no longer involved in the proceedings. This is not quite what we were hoping to receive. Presumably the Committee has a document that sets out those relationships in connection with your work. Can you share that with us?

2. We requested a summary of on-going roles of active advisors and their anticipated budgets. We understand you are in discussions with some advisors to reduce monthly payments, but that does not address our request for the Committee's expectation, especially as to burn for both active and accruing fees.

3. You also did not address our request for information regarding agreements with Financial Advisors halting payments. Can you identify and provide those agreements?

4. We requested the Committee to present a recommendation regarding ways in which to avoid unnecessary work by the myriad estate professionals, as well as any other plan to conserve estate resources. We hope that issue can be addressed on Monday's call.

Last, as a related item to No. 1, Elliott is requesting that the Committee disclose information regarding all pre-petition fees paid to professional advisors leading up to the April 2016 filing, i.e., as to professionals who have served as estate advisors, together with a brief explanation of their pre-petition role(s). We believe the Court and the parties should be apprised of the total fee spend incurred by the estate prior to the petition by professionals who also are seeking additional fees, including success fees, post-petition.

These items are somewhat time sensitive and we appreciate your efforts to help address the requests. (Hopefully most of the above are materials that already are well within your office's domain.)

We look forward to working with you to help conserve estate assets. Let me know if you have any questions.

Regards,
Kim

BRAUNHAGEY & BORDEN LLP
Direct: (415) 599-0213
Cell: (415) 271-8457

San Francisco (Main Office)
220 Sansome Street, 2nd Floor
San Francisco, CA 94104

1

Tel. & Fax: (415) 599-0210

New York
7 Times Square
27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges. If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system. Thank you.

**From:** Kim Berger
**Sent:** Thursday, November 9, 2017 11:50 AM
**To:** Williamson, Brady <Bwilliam@gklaw.com>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Andrew Levine <levine@braunhagey.com>
**Subject:** Fee Committee

Brady,

It was good to talk today. As a follow-up to our conversation, you were going to look into circulating the following:

1. Recent Committee memo sent yesterday or today to professional advisors re: need to reduce future work leading up to confirmation.
2. Dates of upcoming formal Committee meetings (November and December).
3. Overview "map" summarizing the various advisor groups (law firms and FAs) and constituencies, together with fees paid and fees accrued for each through October 2017 (or most recent summary easily available).
4. Committee's current expectation / assessment of each active advisors' ongoing roles heading toward final confirmation, together with expected budget for each: i.e., including "active burn" and "accruing" burn.
5. Summary / timing of FA agreements to halt monthly payments beginning September/October 2016.
6. Any internal procedure or protocol governing the Committee's operation, i.e., in addition to the Court's April 2014 mandate.

We also appreciate the Committee's work to date. Elliott's interest is to be a constructive team player at the Committee level. To do so, we discussed that Elliott will need more than just an advising role. Thank you for agreeing to discuss that issue with both Richard Gitlin and Richard Schepacarter. We would like a decision on that issue before the next scheduled meeting of the Fee Committee on November 20, i.e., so that Elliott can participate in that process. We would prefer to have consensus of the other Committee members, but will file an application with the court if need be.

Finally, we discussed Elliott's request that the Fee Committee begin preparing a recommendation for Judge Sontchi around streamlining / reducing professional fees over the next six months leading to confirmation. We look forward to your and Mr. Gitlin's perspective and input on that (as well as that of other members).

Thanks again. We look forward to working with you and the other Committee members.

Best,
Kim

Kim A. Berger
BRAUNHAGEY & BORDEN LLP
Direct: (415) 599-0213
Cell: (415) 271-8457

San Francisco (Main Office)

220 Sansome Street, 2nd Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**
7 Times Square
27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges. If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system. Thank you.

# EXHIBIT 9

# Kim Berger

| | |
|---|---|
| **From:** | Kim Berger |
| **Sent:** | Monday, November 20, 2017 10:15 AM |
| **To:** | 'Williamson, Brady' |
| **Cc:** | Noah Hagey; Andrew Levine; 'rgitlin@gitlinco.com'; 'Schepacarter, Richard (USTP)' |
| **Subject:** | Questions for the Fee Committee |
| **Attachments:** | Questions for Fee Committee.pdf |

Brady,
Thank you for giving us the opportunity to talk to the Fee Committee members today. Attached are the questions that we wanted to discuss with the Committee members this morning.

Let us know if you have time to discuss tomorrow or Wednesday.

Thanks.

Kim A. Berger
BRAUNHAGEY & BORDEN LLP
Direct: (415) 599-0213
Cell: (415) 271-8457

**San Francisco (Main Office)**
220 Sansome Street, 2nd Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**
7 Times Square
27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges. If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system. Thank you.

1

**BRAUNHAGEY & BORDEN** LLP

### Preliminary Questions for Fee Committee by Elliott Management

November 20, 2017

1. Does the Committee have any **existing** document that details for each professional advisor retained by the various constituencies (both active and inactive): name of lead principal(s), advisor role in BK, fees paid, fees accrued, fees reduced, and current budget? (If so, will you share it with us?)

2. Does the Committee have any **existing** projections concerning anticipated reductions in the fees accrued, but unpaid, to the various professional advisors? (If so, will you share it with us?)

3. Does the Committee have any **existing** evaluation or analysis of the "success" of specific "success fee" advisors in the case? (If so, will you share it with us?)

4. Does the Committee have any **existing** plans to re-evaluate and further reduce fees addressed in the various interim fee applications? (If so, will you share it with us?)

5. What database or software (if any) has the Committee utilized to review the fee applications submitted by the professional advisors to-date?

   a. Will the Committee allow Elliott access to any electronic data and software program regardless of whether Elliott becomes a member of the Committee?

   b. Is the data access remotely (via web browser)?

6. Does the Committee have any **existing** written protocol outlining in general terms the process by which it reviews fee applications and proposes fee reductions? (If so, will you share it with us?)

7. Does the Committee have any **existing** analysis of whether professional advisors for similarly situated constituencies were performing duplicative analysis and generating duplicative work product? (If so, will you share it with us?)

8. Does the Committee have any **existing** analysis of whether duplicative and/or redundant work product was generated by professional advisors over the course of the proceedings as the various plans evolved (assignments from year 1 or 2 vs. year 3)? (If so, will you share it with us?)

9. Has the Committee tracked the number of "new" fee earners that have billed to "get up to speed" on the case for each advisor over the course of the BK? (If so, will you share it with us?)

10. Is there any record of Committee meetings? (If so, will you share it with us?)

November 20, 2017
Page 2


11. Have all of the Committee's decisions been unanimous; if not, is there a record of any disagreements and, if so, can you provide that to us?

12. Has the Committee tracked the reduction in fees (in $ or %) for each professional over the course of the proceedings? (If so, will you share it with us?)

\* \* \*

# EXHIBIT 10

# Kim Berger

**From:** Kim Berger
**Sent:** Monday, November 27, 2017 3:39 PM
**To:** 'Williamson, Brady'
**Cc:** 'rgitlin@gitlinco.com'; Noah Hagey; Andrew Levine; Amy Brown
**Subject:** Elliott Management/Fee Committee

Brady,
Thanks for your email today. I hope you enjoyed the Thanksgiving holiday. A quick phone call probably makes sense. Here's a summary of our follow-up questions:

1. Can you let us know by this Wednesday, November 29 what the Fee Committee's position is with respect to Elliott's request to have a representative on the Committee so that we can be prepared to file a motion with the Court later this week if necessary?

2. We understand that the professionals' budgets are not binding and not public, but is there any legal basis that prevents you from sharing those budgets with us? Can you confirm that all such advisors have provided budgets? If so, can you disclose the gross budget on a firm-by-firm basis? Regarding confidentiality generally, are you able to further explicate the grounds for that? We note that the Court's September 2014 Order establishing the Fee Committee does not appear to include any overriding confidentiality on the Committee's work or work product. (Your email today noted that confidentiality of negotiations with professionals is protected by the Federal Rules of Evidence and the Federal Rules of Bankruptcy Procedure. We can appreciate why FRE 408 might apply as to the *admissibility* of settlement negotiations, but are unaware of any rule precluding disclosure of those terms.)

3. We renew our request (initially made on November 9) regarding any agreements between the Fee Committee and the various Financial Advisors regarding halting payments beginning in the fall of 2016. Please provide us with those agreements.

4. We also have not received a response to our request that the Committee present a recommendation to the Court regarding ways to avoid unnecessary work by the many remaining active professionals through confirmation. Please let us know the Committee's position on that request.

5. We renew our request of November 17 for disclosure of pre-petition fees paid to all professionals.

Finally, we ask the Committee to respond to the following questions that we sent to you on November 20:

6. Does the Committee have any **existing** projections concerning anticipated reductions in the fees accrued, but unpaid, to the various professional advisors? (If so, will you share it with us?)

7. Does the Committee have any **existing** evaluation or analysis of the "success" of specific "success fee" advisors in the case? (If so, will you share it with us?)

8. Does the Committee have any **existing** plans to re-evaluate and further reduce fees addressed in the various interim fee applications? (If so, will you share it with us?)

9. We understand that the Committee receives data from the law firms in LEDES format. Will you provide us access to that data?

1

   a. What about the form in which the Committee receives data from the various Financial Advisors? Will you provide us access to that data as well?

10. Does the Committee have any **existing** written protocol outlining in general terms the process by which it reviews fee applications and proposes fee reductions? (If so, will you share it with us?)

11. Is there any record of Committee meetings? (If so, will you share it with us?)

12. Have all of the Committee's decisions been unanimous; if not, is there a record of any disagreements and, if so, can you provide that to us?

13. Has the Committee tracked the reduction in fees (in $ or %) for each professional over the course of the proceedings? (If so, will you share it with us?)

\* \* \*

Thanks again.

Kim Berger
BRAUNHAGEY & BORDEN LLP
Direct: (415) 599-0213
Cell: (415) 271-8457

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges. If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system. Thank you.

# EXHIBIT 11

# Kim Berger

| | |
|---|---|
| **From:** | Williamson, Brady <Bwilliam@gklaw.com> |
| **Sent:** | Wednesday, November 29, 2017 2:06 PM |
| **To:** | Kim Berger |
| **Subject:** | Elliott Management/Fee Committee - response to your most recent email |

Kim: we have sent each of your emails and our responses to each member of the Fee Committee, who continue to evaluate them. In addition, the Fee Committee chair has been in touch with the counsel for the Creditors' Committee to determine its position with respect to Elliott Management's request, as an active creditor and litigant, to replace Peter Kravitz as the creditors' representative. While the Fee Committee discussed your proposal at length at its telephone meeting earlier this month in conjunction with your presentation, it will continue to do so at its next meeting, on December 18, 2017, in New York. Your request to join the Fee Committee is a significant one that warrants careful consideration.

Your Monday evening email asked for a response, by today, describing the Fee Committee's position, and pending the next meeting and further discussions, this note reflects the Fee Committee's position. We are now in the tenth interim fee period (May-August 2017) for which we anticipate a hearing on uncontested fee applications sometime in February. Given the status of the Texas regulatory proceedings, moreover, it is doubtful that there would be a final fee hearing until early summer of next year. In short, adequate time for your client to evaluate interim and final fee applications—either on its own or as a member of the Fee Committee. If, in the meantime, you decide to file a motion to join the Fee Committee, we will distribute it immediately to every Committee member.

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

# EXHIBIT 12

# BRAUNHAGEY & BORDEN LLP

San Francisco & New York

**Kim A. Berger, Esq.**
berger@braunhagey.com

December 4, 2017

**VIA EMAIL**

Richard Gitlin
C/o Brady C. Williamson, Esq.
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
Madison, Wisconsin 53703
Email: Bwilliam@gklaw.com

Re:   **Majority Creditors' Request for Membership – EFH Fee Committee**

Dear Brady:

Reference is made to our prior November 9, 15 and 20, 2017, communications on behalf of the Majority Creditors to have their representative join the Fee Committee.

We write to advise that this afternoon the Unsecured Creditors Committee ("UCC") informed us of its support of the application, *i.e.*, for replacement of the current creditor representative in favor of one designated by the Majority Creditors. This now solidifies the Majority Creditors' support amongst the majority of E-Side constituencies, including the EFIH Indenture Trustee.

We also are in receipt of your communication last week suggesting that the Committee has made no decision on the membership question and will continue to deliberate. By way of response, I wanted to communicate a few concerns. Foremost, it has now been almost a month since we first addressed the issue to you and other members. We have heard little feedback, other than general support from the UCC and other E-Side constituencies. Meanwhile, time is running out to meaningfully reform the existing professional landscape, or for the Majority Creditors to play a productive and meaningful role in that process.

As such, we wanted to advise – and to seek the Independent Member's position on – our clients' impending motion for admission to the Committee. We are setting the application for hearing on shortened notice on December 21. In doing so, we still encourage and welcome any questions which Mr. Gitlin or any other members of the Committee may have.

The motion will be filed this Wednesday afternoon, November 6. Please let us know by Noon that day whether your client or other Members have any position on the application.

| San Francisco | New York |
|---|---|
| 220 Sansome Street, 2nd Floor | 7 Times Square, 27th Floor |
| San Francisco, CA 94104 | New York, NY 10036-6524 |
| Tel. & Fax: (415) 599-0210 | Tel. & Fax: (646) 829-9403 |

December 4, 2017
Page 2

    We would be happy to discuss the above tomorrow at your convenience.

                            Very truly yours,

                            Kim A. Berger