**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------- X

| | |
|---|---|
| In re: | Chapter 11 |
| Energy Future Holdings Corp., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 11854** |

------------------------------------------------------------- X

**OBJECTION OF NEXTERA ENERGY, INC. TO FIRST AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, AND THE EFH/EFIH DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

NextEra Energy, Inc. ("NextEra") hereby submits this objection (the "Objection") to the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11854] (the "Plan"). In support of the Objection, NextEra respectfully states as follows:

**PRELIMINARY STATEMENT**

Confirmation of the Plan should be denied unless the Debtors[2] reserve $275 million for payment of the Termination Fee. Through the Reconsideration Order, the Court took the extraordinary step of disallowing the Termination Fee, depriving NextEra of bargained-for protections that it had relied on for a year. NextEra has appealed the Reconsideration Order.

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]   Capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed to them in the Background section. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

When and if NextEra is successful in that appeal and overcomes whatever other objections parties may raise, the Termination Fee would become an allowed General Administrative Claim and the Debtors would be required to pay NextEra $275 million.  Both the Bankruptcy Code and the Plan's own terms compel this result.

Despite that requirement, if the dispute concerning the Termination Fee is not finally resolved before the effective date of the Plan, the Debtors may nevertheless seek to distribute their remaining cash to unsecured creditors, impermissibly shifting to NextEra the risk of collection of an administrative expense claim.  Indeed, as formulated, the Plan gives the Debtors discretion to determine the amount to reserve for General Administrative Claims (in contrast with the robust escrow protections provided for future professional fee claims).  The Plan should not go forward on this basis.  The Termination Fee, now on appeal, is a known quantity—$275 million.  The Debtors cannot be left with discretion to refuse to reserve for that unresolved administrative expense claim based on their hope that they will not ultimately be required to pay NextEra.

Nor may the Plan require the Court to "estimate" the Termination Fee—which is a known quantity of $275 million—at zero dollars, and then use that estimate to establish an artificial "maximum limitation" on payment of the Termination Fee in the event that is becomes allowed after the Effective Date.  The Bankruptcy Code requires that, as a condition to confirmation of a Chapter 11 plan, allowed administrative expense claims must be paid in full—full stop.  Claims estimation, to the extent even applicable to administrative expenses, cannot circumvent that requirement.

## BACKGROUND

1.      On April 29, 2014 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (the "Debtors") commenced these Chapter 11 cases by filing voluntary petitions

for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.      In April 2016, after an extensive marketing process and various other efforts, the Debtors engaged in discussions with NextEra for the sale of their economic interest in Oncor Electric Delivery Company LLC ("Oncor"). Only "after three months of intensive multiparty negotiations" did the Debtors commit to move forward with and seek approval of a transaction with NextEra.[3]

3.      On July 29, 2016, certain of the Debtors, NextEra, and EFH Merger Co., LLC ("Merger Sub")—a newly formed subsidiary of NextEra—executed definitive documentation to govern this transaction, including an Agreement and Plan of Merger among Energy Future Holdings Corp. ("EFH"), Energy Future Intermediate Holding Company LLC ("EFIH"), NextEra, and Merger Sub, dated July 29, 2016 (the "Merger Agreement").

4.      The Merger Agreement, as amended, contemplated a merger of EFH with and into Merger Sub, whereby EFH would have become a wholly-owned subsidiary of NextEra with an approximately $18.7 billion implied Oncor total enterprise value.

5.      A critical element of the Merger Agreement was the inclusion of a "Termination Fee" in the amount of $275 million in favor of NextEra (the "Termination Fee"), which would be payable, with certain limited exceptions, following (i) termination of the Merger Agreement by the Debtors and (ii) the Debtors' consummation of an "alternative transaction."

6.      Also on July 29, 2016, EFH, EFIH, EFIH Finance Inc., certain direct and indirect subsidiaries of EFH, and NextEra entered into a *Plan Support Agreement* (as modified, amended or supplemented from time to time, the "Plan Support Agreement") in support of the *Amended Joint Plan of Reorganization of Energy Future Holdings Corp. et al., pursuant to Chapter 11 of the Bankruptcy Code*, as modified and filed with the Bankruptcy Court on August 5, 2016 [D.I.

---

[3]    Approval Motion (as defined below) ¶ 24.

9199] (as modified, amended or supplemented from time to time, the "NextEra Plan").

7.    By motion dated August 3, 2016 (the "Approval Motion"), the Debtors sought approval of their entry into the Plan Support Agreement and the Merger Agreement.[4]

8.    In the Approval Motion, the Debtors not only sought approval of the Merger Agreement generally, but also explicitly sought a ruling approving the Termination Fee.

9.    On September 19, 2016, the Court held a full evidentiary hearing concerning approval of the Merger Agreement and Plan Support Agreement (the "Approval Hearing").

10.    Following the close of argument at the Approval Hearing, the Court entered its *Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* [D.I. 9584] (the "Termination Fee Approval Order"), overruling any remaining objections on the merits and approving the Termination Fee. The Court ruled that "the EFH/EFIH Debtors are authorized and directed to pay the Termination Fee as an allowed administrative expense to the extent it becomes due and payable pursuant to the terms and conditions of the Merger Agreement, at the time and in the manner provided for therein, without any further proceedings before, or order of, the Court . . . ."[5]

11.    On February 17, 2017, the Court confirmed the NextEra Plan, entering its *Order Confirming the Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Relates to the EFH Debtors and EFIH Debtors* [D.I. 10859].

12.    Following entry of the Termination Fee Approval Order, NextEra expended massive resources and efforts in seeking to obtain approval from the Public Utility Commission

---

[4]    *See Motion Of The EFH/EFIH Debtors For Order (A) Authorizing Entry Into Merger Agreement, (B) Approving Termination Fee, And (C) Authorizing Entry Into And Performance Under Plan Support Agreement* [D.I. 9190].

[5]    Termination Fee Approval Order ¶ 4.

of Texas (the "PUCT") and to close the transaction. Nevertheless, on March 30, 2017, PUCT

Commissioner Anderson released a memorandum stating that he was inclined to deny approval

of the transaction because he viewed strict ring-fencing of Oncor as essential, and was aware that

NextEra was not obligated to, and would not, accept such burdensome conditions. Later that

day, during an open meeting of the PUCT, the other PUCT Commissioners said that they shared

Commissioner Anderson's concerns. On April 13, 2017, the PUCT held a brief open meeting

and thereafter issued a final order that denied approval of the proposed transactions.[6]

13.    Following the PUCT's order, NextEra filed motions for rehearing (which, under

applicable Texas law, were required steps before the PUCT's order could be challenged in

court).[7] These motions were fully supported by the Debtors, who submitted *amicus* briefs urging

the PUCT to reverse its decision and approve the transaction.[8] When those efforts proved

unsuccessful, NextEra continued its efforts to obtain regulatory approval by filing an appeal of

the PUCT's decision with the Travis County District Court.[9]

14.    On July 6, 2017, thirteen days after the occurrence of the Merger Agreement's

"drop dead" date, but with NextEra continuing in earnest to pursue regulatory approval, without

any prior notice to NextEra the Debtors terminated the Merger Agreement.[10] The following day,

---

[6]    *See Order*, dated April 13, 2017, PUCT Docket No. 46238, Item No. 538, a true and correct copy of which is attached as **Exhibit A** to the *Declaration of Howard Seife in Support of NextEra's Objection to Confirmation of the Plan*, dated December 19, 2017, which is being filed contemporaneously herewith (the "Seife Declaration").

[7]    *See Motion for Rehearing*, PUCT Docket No. 46238, Item No. 543, a true and correct copy of which is attached as **Exhibit B** to the Seife Declaration; *Second Motion for Rehearing*, PUCT Docket No. 46238, Item No. 554, a true and correct copy of which is attached as **Exhibit D** to the Seife Declaration.

[8]    *See Amicus Curiae Brief of Energy Future Holdings Corp. and Energy Future Intermediate Holdings LLC in Support of Rehearing*, PUCT Docket No. 46238, Item No. 545, a true and correct copy of which is attached as **Exhibit C** to the Seife Declaration; *Amicus Curiae Brief*, PUCT Docket No. 46238, Item No. 555, a true and correct copy of which is attached as **Exhibit E** to the Seife Declaration.

[9]    *See Original Petition*, Case No. D-1-GN-17-003234, a true and correct copy of which is attached as **Exhibit F** to the Seife Declaration.

[10]    *See Notice of Filing of Letters Terminating (A) the NEE Plan Support Agreement and (B) the NEE Merger Agreement*, at Exh. B [D.I. 11424].

the Debtors terminated the Plan Support Agreement.[11]   Immediately thereafter, the Debtors

pivoted to a fully signed transaction pursuant to which Berkshire Hathaway Energy Company

and related entities (collectively, "Berkshire") would acquire Oncor.[12]

15.   On July 29, 2017—more than ten months after the Court approved the

Termination Fee—Elliott Associates L.P and certain affiliated entities filed a *Motion to*

*Reconsider in Part the September 19, 2016 Order [Dkt. No. 9584] Approving the NextEra*

*Termination Fee* [D.I. 11636] (the "Reconsideration Motion").

16.   On July 31, 2017, NextEra filed its *Application of NextEra Energy, Inc. for*

*Payment of Administrative Claim* [D.I. 11649], seeking payment of the Termination Fee upon the

consummation of the Berkshire transaction or any other alternative transaction (the

"Application").

17.   On August 3, 2017, the Debtors commenced an adversary proceeding against

NextEra (the "Adversary Proceeding"), seeking a declaration that the Termination Fee would not

become due and payable.[13]

18.   On August 23, 2017, the Debtors abandoned the proposed transaction with

Berkshire and proposed the current Plan, in which Sempra Energy would indirectly acquire

Oncor.

19.   On September 6, 2017, the Court entered an order approving the disclosure

statement for the Plan, authorizing the Debtors to solicit acceptances in respect of the Plan, and

establishing notice and objection procedures for confirmation of the Plan [D.I. 11870] (the

"Disclosure Statement Order").   Among other things, the Disclosure Statement Order required

---

[11]   *See id.* at Exh. A.

[12]   *See, e.g., Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11426].

[13]   *See Adversary Complaint* [D.I. 11668].

parties that wish to submit "final" objections to the Plan to submit "preliminary" objections by October 30, 2017.

20.     On September 7, 2017, the Debtors and NextEra filed objections to the Reconsideration Motion.

21.     On September 19, 2017, the Court held a hearing on, among other things, the Reconsideration Motion. Following argument on the Reconsideration Motion, the Court issued a tentative ruling, stating that it would grant the Reconsideration Motion because "the Court's decision was based on the serious misapprehension of the facts that constitutes manifest error."[14]

22.     On October 18, 2017, the Court entered its order granting the Reconsideration Motion [D.I. 12075] (the "Reconsideration Order"). The Reconsideration Order also dismissed the Application and stayed the Adversary Proceeding.

23.     On October 20, 2017, the Debtors filed the Plan Supplement, which included, among other things, an "EFH/EFIH Cash Distribution Account Disclosure."[15]

24.     On October 30, 2017, NextEra filed a notice of intent to participate in the plan confirmation proceedings, as well as a preliminary limited objection to the Plan.[16]

25.     Also on October 30, 2017, NextEra timely appealed the Reconsideration Order.[17]

26.     On November 10, 2017, NextEra, Elliott, and the Debtors jointly certified that a direct appeal of the Reconsideration Order to the United States Court of Appeals for the Third

---

[14]   Hr'g Tr. Sept. 19, 2017 48:8-10.

[15]   *See Supplement for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12104]; *EFH/EFIH Cash Distribution Account Disclosure.* [D.I. 12104-17].

[16]   *See Notice of Intent of NextEra Energy, Inc. to Participate in Confirmation Proceedings* [D.I. 12138]; *Preliminary Limited Objection of NextEra Energy, Inc. to First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12139].

[17]   *See Notice of Appeal* [D.I. 12141].

Circuit was appropriate.[18]  On November 14, 2017, the Clerk of the Bankruptcy Court attested

that all parties had certified the appeal for direct consideration by this Court and the Clerk

transmitted the record on appeal to the Third Circuit.[19]

27.    On November 16, 2017, NextEra moved to stay the Reconsideration Order

pending the appeal (the "Stay Motion").[20]

28.    On November 24, 2017, NextEra filed with the Third Circuit a petition for direct

appeal, including a motion for an expedited appeal.[21]  On November 28 and 29, respectively,

Elliott and the Debtors filed responses to NextEra's petition for direct appeal, agreeing that an

expedited direct appeal should be authorized, but disputing one of the bases on which NextEra

requested such relief.[22]  On November 30, 2017, NextEra replied to Elliott's and the Debtors'

responses.[23]

29.    On November 30, 2017, the Debtors, Elliott, and the EFH/EFIH Committee

objected to the Stay Motion.[24]

30.    On December 6, 2017, NextEra submitted a reply in support of the Stay Motion.[25]

31.    On December 11, 2017, the Court held a hearing to consider the Stay Motion.

---

[18]    *See Certification to Court of Appeals by All Parties* [D.I. 12222].

[19]    *See Clerk's Notice Regarding the Filing of a Request for Certification of Direct Appeal* [D.I. 12232].

[20]    *See NextEra's Motion to Stay the Reconsideration Order Pending Appeal* [D.I. 12243].

[21]    *See Appellant's Petition for Permission for Direct Appeal and Motion to Expedite Appeal*, No. 17-8063 (3d Cir. Nov. 24, 2017).

[22]    *See Answer of the Elliott Funds to Petition of NextEra Energy, Inc., for Permission for Direct Appeal and Motion to Expedite Appeal*, No. 17-8063 (3d Cir. Nov. 28, 2017); *Debtors' Statement on Petition for Direct Appeal*, No. 17-8063 (3d Cir. Nov. 29, 2017).

[23]    *See Appellant's Reply in Support of Petition for Permission for Direct Appeal and Motion to Expedite Appeal*, No. 17-8063 (3d Cir. Nov. 30, 2017).

[24]    *See Objection of the EFH/EFIH Debtors to NextEra's Motion to Stay the Reconsideration Order Pending Appeal* [D.I. 12287]; *Elliott Funds' Objection to NextEra Energy, Inc.'s Motion to Stay the Reconsideration Order Pending Appeal* [D.I. 12288]; *Objection of the Official Committee of Unsecured Creditors of Energy Future Holdings Corporation, Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. to NextEra's Motion to Stay the Reconsideration Order Pending Appeal* [D.I. 12289].

[25]    *See NextEra's Reply in Support of its Motion to Stay the Reconsideration Order Pending Appeal* [D.I. 12308].

During that hearing the Court ruled that NextEra had more than a negligible chance of succeeding on the merits appeal and perhaps a "plurality" chance of success.[26] In particular, the Bankruptcy Court noted that the Reconsideration Order faced "appellate risk" on at least three key holdings: (a) that the Reconsideration Order was an interlocutory order; (b) that the Reconsideration Motion was timely; and (c) "maybe most [important] to the ruling," the conclusion that the Termination Fee was not allowable under *O'Brien*.[27]  Nevertheless, the Bankruptcy Court denied NextEra's motion for a stay pending appeal as premature, finding that "a [confirmed] plan stands between NextEra and harm."[28]

## RELIEF REQUESTED

32.    NextEra requests that the Court deny confirmation of the Plan unless the Plan is modified to: (a) establish a reserve in the amount of $275 million with respect to NextEra's disputed Termination Fee; (b) provide that NextEra's claim in respect of the Termination Fee shall only be discharged in exchange for payment in full, in cash, of any amount ultimately allowed as administrative expense; and (c) either expressly exempt administrative expense claims from Article VII.C's estimation procedures or, alternatively, provide that any such estimation shall not "constitute a maximum limitation" on any administrative expense claim that is ultimately allowed.

## ARGUMENT

I.    **The Debtors Must Establish a Reserve of Not Less than $275 Million for Payment of the Termination Fee**

33.    A plan of reorganization cannot be confirmed unless it provides for payment in full, in cash, on the effective date, of all allowed administrative expense claims.  *See* 11 U.S.C.

---

[26]    *See* Hr'g Tr. Dec. 11, 2017 at 47:9-22.  A true and correct copy of the hearing held before the Bankruptcy Court on December 11, 2017 is attached as **Exhibit G** to the Seife Declaration.

[27]    *See id.* at 46:25-47:8.

[28]    *Id.* at 49:13.

§§ 503(b), 1129(a)(9)(A); *see also In re Hechinger Inv. Co. of Delaware*, 298 F.3d 219, 224 (3d Cir. 2002) ("[i]n a Chapter 11 case, a court cannot confirm a distribution plan unless the plan provides full cash payment of all § 503(b) administrative expense claims or the claim holder agrees to different treatment."). Consistent with this requirement, the Plan provides that, "unless the Holder of an Allowed General Administrative Claim and the Debtors or the Reorganized EFH/EFIH Debtors, as applicable, agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will receive, in full satisfaction of its General Administrative Claim, Cash equal to the amount of such Allowed General Administrative Claim . . . ." Plan Art. II.A.1. As required by the Bankruptcy Code, the Plan provides for this payment to occur "on the Effective Date." *Id.* However, in recognition of the fact that certain administrative expense claims may not be allowed (or disallowed) by a Final Order as of the Effective Date, the Plan further provides that "if the General Administrative Claim is not Allowed as of the EFH Effective Date," the Debtors shall pay such claim within "60 days after the date on which an order allowing such General Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable . . . ." *Id.*

34.    The Plan does not, however, provide any assurance that sufficient cash will be retained by the Debtors' estates to ensure that all General Administrative Claims allowed after the Effective Date are paid as required by the Plan. Instead, the Plan simply provides that distributions to unsecured creditors shall not be made until "the EFIH Debtors have made determinations with respect to," among other things, whether "sufficient reserves are in place to fund (1) General Administrative Claims Against the EFIH Debtors . . . ." Plan Art. VI.A. In other words, the Plan currently provides that the estates' remaining cash may be distributed to unsecured creditors on the Effective Date if the Debtors "determine" that they have reserved sufficiently for General Administrative Claims that may become allowed after the Effective

Date.  The Plan establishes no mechanism for challenging the Debtors' apparently unilateral determinations on this issue or for protecting holders of General Administrative Claims that become allowed after the Effective Date if the Debtors' determinations regarding the appropriate amount of reserves are insufficient.

35.     As a result of the Reconsideration Order, the Termination Fee is not an allowed General Administrative Claim.  However, it may become an allowed General Administrative Claim.  NextEra has appealed the Reconsideration Order.  If NextEra is successful in that appeal and overcomes any further objections to payment of the Termination Fee (and assuming the Debtors are ultimately able to close an alternative transaction), the Termination Fee will become an allowed General Administrative Claim notwithstanding the Court's previous disallowance of the claim.  Indeed, the Plan's definition of the term "Allowed" specifically includes all claims or interests that are "upheld or otherwise allowed . . . by Final Order (*including any such Claim to which the Debtors had objected or which the Bankruptcy Court had disallowed prior to such Final Order*)."  Plan Art. I.A.16 (emphasis added).

36.     Thus, by the Plan's own terms, and as required by the Bankruptcy Code, the Termination Fee will become an allowed General Administrative Claim and the Debtors will be required to pay the full amount of the Termination Fee if and when NextEra prevails, even if that occurs well after the Effective Date.  There is a substantial probability that this is exactly what will occur.  NextEra has already briefed before this Court the reasons that it believes it will succeed on the merits of its appeal and obtain an allowed claim in respect of the Termination Fee.[29]  Elliott and the Debtors have likewise briefed, at equal length, the reasons that they believe

---

[29]  NextEra has briefed the reasons that it is likely to succeed on the merits of its appeal from the Reconsideration Order in the Stay Motion and in *NextEra's Reply in Support of its Motion to Stay the Reconsideration Order Pending Appeal* [D.I. 12308] and hereby incorporates by reference the facts and arguments set forth therein. NextEra has likewise expressed in the Application the reasons that it will ultimately be entitled to payment of the Termination Fee if and when it prevails on its appeal of the Reconsideration Order, and hereby expressly incorporates by references the facts and arguments set forth therein.

Case 14-10979-CSS    Doc 12369    Filed 12/19/17    Page 12 of 19

NextEra will not ultimately succeed. While the parties may disagree over who will prevail, ultimately the appellate court will decide. What is indisputable, however, is that this Court has already acknowledged that NextEra possesses some probability of success on the merits—certainly more than a negligible chance.[30] Indeed, this Court identified no less than three outcome-determinative rulings contained in the Reconsideration Order that face substantial appellate risk, including the Court's central conclusion that the Termination Fee as structured could not have satisfied the *O'Brien* standard.[31] Thus, by the Court's own analysis, there is a substantial probability that the Debtors will be required to pay NextEra the Termination Fee.

37.    Despite this substantial probability, the Debtors have made no commitment that they will voluntarily "determine" to reserve cash pursuant to Article VI.A of the Plan for payment of the Termination Fee. To the contrary, the Debtors have merely expressed a willingness to explore purported protection for NextEra's rights in respect of the Termination Fee. This "protection" would fall far short of an actual reserve and would still impose on NextEra the requirement to seek recovery from creditors (with all of the expense and credit risk that such recovery activities imply).[32]

38.    Moreover, the Debtors' current "Non-Binding, Good Faith Estimate" of General Administrative and Priority Claims Asserted Against the EFH Debtors and the EFIH Debtors is only $108 million and $45 million respectively—amounts that are insufficient, even in aggregate, to pay the Termination Fee.[33] Indeed, at least with respect to claims against the EFIH Debtors, the Debtors have specifically noted that the estimated amount "does not include . . . any

---

[30]    *See* Hr'g Tr. Dec. 11, 2017 at 47:9-12 (the Court declaring that "I hope I made my rulings clear on that. I stand behind them, but reasonable minds can differ and there [is] a risk that an Appellate Court could rule otherwise. And I think, to be fair, it's more than a negligible risk . . . .").

[31]    *See id.* at 46:25-47:8.

[32]    *See Objection of the EFH/EFIH Debtors to NextEra's Motion to Stay the Reconsideration Order Pending Appeal* [D.I. 12287] ¶ 12 ("the Debtors are open to amending the Plan to create a mechanism to allow NextEra to recover any portion of the $275 million that becomes allowed . . . from creditor distributions.").

[33]    *See EFH/EFIH Cash Distribution Account Disclosure* [12104-17].

12

amounts on account of the NEE Termination Fee."[34]   Key creditor constituencies, including

Elliott and the EFH/EFIH Committee, have likewise stated that they intend to oppose any effort

by the Debtors to reserve for payment of the Termination Fee.[35]

39.     The Debtors' apparent intent not to reserve funds with respect to the Termination

Fee leaves a very real prospect that they will be unable to meet their obligations to NextEra

under the Plan and the Bankruptcy Code to pay the Termination Fee in full, in cash, if it is

ultimately allowed following NextEra's appeal of the Reconsideration Order.   To avoid that

situation, confirmation of the Plan should be conditioned on the Debtors reserving in full for

payment of the Termination Fee, as is regularly required with respect to disputed administrative

expense claims.   *See, e.g., In re Spansion, Inc.*, 426 B.R. 114, 146 (Bankr. D. Del. 2010) ("the

Debtors can satisfy the confirmation requirement of § 1129(a)(9)(A) by setting aside a reserve in

the amount of [creditor's] estimated claim"); *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415,

419 (Bankr. S.D.N.Y. 2003) (requiring the debtors to set aside a reserve for a creditor's disputed

administrative expense claim before a plan of reorganization could go effective.).

40.     Establishing the required reserve will impose only a limited burden on creditors.

If a reserve is imposed, creditors will nevertheless be able to receive substantial distributions on

the Effective Date.[36]   Further, in the event that NextEra is ultimately unsuccessful in achieving

Allowance of the Termination Fee, reserved funds can be easily distributed to creditors in a

---

[34]   *Id.* (emphasis in original).   It also does not appear that the estimate of claims against the EFH Debtors reflects any amounts on account of the Termination Fee, but the Debtors have made no definitive statement on that point.

[35]   *See Elliott Funds' Objection to NextEra Energy, Inc.'s Motion to Stay the Reconsideration Order Pending Appeal* [D.I. 12288] ¶ 83 ("Elliott maintains that reserve is inappropriate"); *Objection of the Official Committee of Unsecured Creditors of Energy Future Holdings Corporation., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc. and EECI, Inc. to NextEra's Motion to Stay the Reconsideration Order Pending Appeal* [D.I. 12289] ¶¶ 9-11.

[36]   *See Disclosure Statement for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11889] at 21-31 (providing recovery ranges depending on allocation of Termination Fee).

supplemental distribution. Moreover, NextEra is working to minimize any potential burden by seeking to ensure that the dispute is resolved as quickly as possible, including by seeking direct and expedited review of the Reconsideration Order by the Third Circuit.[37]

41. In contrast, the alternative—allowing the funds to be distributed to unsecured creditors—would impose a substantial burden on NextEra by forcing it to pursue creditors or the Reorganized Debtors for payment of the Termination Fee.[38] Courts in this District have on multiple occasions recognized that imposing such a burdensome process constitutes irreparable harm because "it is unlikely that the distributions could be recovered, or, if recoverable, would be challenging and costly." *In re Tribune Co.*, 477 B.R. 465, 477 (Bankr. D. Del. 2012); *see also In re Finova Grp., Inc.*, No. 01-698-PJW, 2007 WL 3238764, at *2 (D. Del. Oct. 31, 2007) ("Once this distribution is made, Appellant will have little or no recourse available to reclaim the funds."). To avoid impermissibly shifting the burden of collection to NextEra, a potential administrative priority creditor, a full reserve is required.[39] *See In re Spansion, Inc.*, 426 B.R. at 146 (requiring a reserve for a disputed administrative expense claim because "the Code grants a right to priority of payment to administrative claimants. This priority should not be subject to the risk that the newly reorganized debtor lacks the funds or the motivation to resolve the outstanding dispute.").

---

[37] *Certification to Court of Appeals by All Parties* [D.I. 12222]; *Clerk's Notice Regarding the Filing of a Request for Certification of Direct Appeal* [D.I. 12232]; *Appellant's Petition for Permission for Direct Appeal and Motion to Expedite Appeal*, No. 17-8063 (3d Cir. Nov. 24, 2017).

[38] *See Objection of the Official Committee of Unsecured Creditors of Energy Future Holdings Corporation., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc. and EECI, Inc. to NextEra's Motion to Stay the Reconsideration Order Pending Appeal* [D.I. 12289] ¶ 9 (noting that "numerous individual and smaller creditors" would be entitled to distributions under a confirmed plan of reorganization).

[39] Although NextEra would possess the right to seek such disgorgement as a matter of common law, the Plan should also be amended to make clear that NextEra will be entitled to disgorgement from unsecured creditors, or to recover from the Reorganized Debtors, to the extent necessary to satisfy the Debtors' ultimate obligations in respect of the Termination Fee.

II.     **The Plan Cannot Discharge NextEra's Administrative Expense Claim in Respect of the Termination Fee Without Providing for Payment in Full of that Claim**

42.    The Plan provides that:

> [p]ursuant to section 1141(d) of the Bankruptcy Code . . . the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the EFH Effective Date of . . . any Administrative Claims, *including without limitation any claims by NextEra Energy arising directly or indirectly from its post-petition agreements with the Debtors*, . . . regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims . . . .

Plan Art. VIII.A (emphasis added).    As noted above, the Bankruptcy Code conditions confirmation of a Chapter 11 plan on payment in full, in cash, of administrative expense claims on the effective date and the Plan provides for payment in full of General Administrative Claims, whether allowed before or after the Effective Date. *See* 11 U.S.C. § 1129(a)(9); Plan Art. II.A.1. Accordingly, the above language could, and should, be read to provide that NextEra's claims in respect of the Termination Fee shall only be discharged in exchange for "the distributions, rights, and treatment provided for in the Plan"—*i.e.*, payment in full of all amounts ultimately allowed.

43.    However, and for the avoidance of doubt, NextEra notes that the Plan may not discharge NextEra's administrative expense claim in respect of the Termination Fee "regardless of whether any property shall have been distributed" to NextEra on account of that claim. *See In re Forklift LP Corp.*, 363 B.R. 388, 398 (Bankr. D. Del. 2007) (citing *Miller v. United States (In re Miller)*, 253 B.R. 455, 460 (Bankr.N.D.Cal.2000)) ("no effect can be given to any Plan provisions that may apply to give Defendant anything less than the full payment required by § 1129(a)(9)(A)."); *cf. In re Scopac*, 624 F.3d 274, 280–81 (5th Cir. 2010), *opinion modified on denial of reh'g*, 649 F.3d 320 (5th Cir. 2011) ("because the payment of administrative priority claims must be made in cash, in full to confirm a reorganization plan (unless the parties agree otherwise), 11 U.S.C. § 1129(a)(9)(A), all parties were on notice of the legal priority of the . . .

15

§ 507(b) claim and thus of its potential financial effect on confirmation."). To the contrary, NextEra's claim in respect of the Termination Fee—assuming NextEra prevails on appeal and receives an allowed administrative expenses claim—may only be discharged in exchange for the treatment of administrative claims mandated by the Bankruptcy Code: payment in full.

## III.   The Plan Cannot Impose a Binding Estimate on the Amount of the Termination Fee for Purposes of Distribution

44.   As presently drafted, the Plan provides that:

> Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

Plan Art. VII.C. Because the Plan defines "Claim" to include all claims against the Debtors' estates, rather than just prepetition claims, *see* Plan Art. I.A.45, the above provision could be construed as seeking to estimate at zero dollars and permanently prohibit any distribution on account of administrative expense claims, such as the Termination Fee, that happen to be disallowed as of the Effective Date but that are on appeal.

45.   It is not clear whether the Court has authority to estimate administrative expense claims under any circumstances—although some courts have certainly done so—given that the statutory authority for estimation exists only under Section 502(c) of the Bankruptcy Code, and not under section 503. *Compare* 11 U.S.C § 502(c) (providing for estimate of claims) *with* 11 U.S.C. § 503 (providing for allowance of administrative expenses, without authorizing any estimation of administrative expenses). However, even if the Court does possess authority to estimate administrative expense claims for purposes of determining plan feasibility, it cannot use

the estimation process to impose a binding limitation on the amount ultimately distributable on administrative expense claims. *See, e.g., In re Adelphia Bus. Sols., Inc.*, 341 B.R. at 423 (authorizing estimation for purposes of determining plan feasibility, but noting that "were the estimation process to set the outer limits of allowance for such claims, the due process rights of such claimants would be jeopardized to a troublesome degree."); *In re Indian Motocycle Co., Inc.*, 261 B.R. 800, 810 (B.A.P. 1st Cir. 2001) (rejecting use of estimation to set "outer limit" of recovery on administrative expense claim); *In re MacDonald*, 128 B.R. 161, 167 (Bankr. W.D. Tex. 1991) ("This court does not find that the *Baldwin–United* analysis dictates that the estimated amount of a post-petition administrative claim necessarily sets the outer limit of a claimant's right of recovery, as it apparently does for pre-petition claims."). Accordingly, the Plan must be revised to either expressly exempt administrative expense claims from Article VII.C's estimation procedures or, alternatively, provide that any such estimation shall not "constitute a maximum limitation" on any administrative expense claim that is ultimately allowed.

## CONCLUSION

Wherefore, NextEra requests that the Court deny confirmation of the Plan unless the Plan is modified to: (a) establish a reserve in the amount of $275 million with respect to NextEra's disputed Termination Fee; (b) provide that NextEra's claim in respect of the Termination Fee shall only be discharged in exchange for payment in full, in cash, of any amount ultimately allowed as administrative expense; and (c) either expressly exempt administrative expense claims from Article VII.C's estimation procedures or, alternatively, provide that any such estimation shall not "constitute a maximum limitation" on any administrative expense claim that is ultimately allowed.

Dated: December 19, 2017
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
Email:      landis@lrclaw.com
          mcguire@lrclaw.com

– and –

**NORTON ROSE FULBRIGHT US LLP**
Howard Seife (admitted *pro hac vice*)
Andrew Rosenblatt (admitted *pro hac vice*)
Eric Daucher (admitted *pro hac vice*)
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369
Email:      howard.seife@nortonrosefulbright.com
          andrew.rosenblatt@nortonrosefulbright.com
          eric.daucher@nortonrosefulbright.com

Robin Ball (admitted *pro hac vice*)
555 South Flower Street, 41st Floor
Los Angeles, California 90071
Telephone:  (213) 892-9200
Facsimile:  (213) 892-9494
Email:      robin.ball@nortonrosefulbright.com

– and –

**WINSTON & STRAWN LLP**
Dan K. Webb (admitted *pro hac vice*)
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-5600
Facsimile:  (312) 558-5700
Email:       dwebb@winston.com

Thomas M. Buchanan (admitted *pro hac vice*)
1700 K Street, NW
Washington, D.C. 20006
Telephone: (202) 282-5000
Facsimile:  (202) 282-5100
Email:       tbuchana@winston.com

*Counsel to NextEra Energy, Inc.*