# Exhibit G

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4    In re:                          :

5                                    :      Chapter 11

6    ENERGY FUTURE HOLDINGS          :      Case No. 14-10979 (CSS)

7    CORP., et al.                   :

8            Debtors.                :      (Jointly Administered)

9    _____:

10

11                                   United States Bankruptcy Court

12                                   824 North Market Street

13                                   Wilmington, Delaware

14                                   December 11, 2017

15                                   10:03 a.m. - 11:29 a.m.

16

17

18

19

20

21    B E F O R E :

22    HON CHRISTOPHER S. SONTCHI

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO OPERATOR:   UNKNOWN

Page 2

1    HEARING re Motion of the Reorganized TCEH Debtors for Entry

2    of an Order Enforcing the October 3, 2017 Order [D.I 1240;

3    filed November 16, 2017]

4

5    HEARING re EFH Indenture Trustee's Motion for Payment of

6    Allowed Administrative Expense Claim Pursuant to 11 U.S.C. §

7    503(b)(1)(A) [D.I. 12262; filed November 20, 2017]

8

9    HEARING re NextEra's Motion to Stay the Reconsideration

10   Order Pending Appeal [D.I. 12243; filed November 16, 2017]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    MONTGOMERY MCCRACKEN WALKER & RHOADS, LLP

4        Attorneys for the E-Side Committee

5

6    BY:  MARK A. FINK

7

8    SULLIVAN & CROMWELL

9        Attorneys for the E-Side Committee

10

11   BY:  BRIAN GLUCKSTEIN

12

13   VENABLE LLP

14       Attorneys for PIMCO

15

16   BY:  JAMIE EDMONSON

17

18   WINSTON & STRAWN LLP

19       Attorneys for NextEra

20

21   BY:  TOM BUCHANAN

22       JOHN HARDING

23

24

25

Page 4

1    NORTON ROSE

2         Attorneys for NextEra

3

4    BY:  ANDREW ROSENBLATT

5         ERIC DOWCHER

6

7    LANDIS RATH & COBB LLP

8         Attorneys for NextEra

9

10   BY:  MATTHEW MCGUIRE

11

12   POTTER ANDERSON & CORROON LLP

13        Attorneys for EFIH First Lien DIP Agent

14

15   BY:  R. STEPHEN MCNEILL

16

17   NIXON PEABODY

18        Attorneys for AST Indenture Trustee at EFH

19

20   BY:  RICHARD PEDONE

21

22   KLEHR HARRISON HARVEY BRANZBURG LLP

23        Attorneys for UMB Bank, N.A. Indenture Trustee

24

25   BY:  RAY LEMISCH

Page 5

1  ROPES & GRAY LLP

2      Attorneys for Elliott

3

4  BY:  GREGG GALARDI

5

6  BAYARD

7      Attorneys for Elliott

8

9  BY:  ERIN FAY

10

11  KIRKLAND & ELLIS LLP

12      Attorneys for the Debtors

13

14  BY:  BRYAN STEPHANY

15      MARC KIESELSTEIN

16

17  UNITED STATES DEPARTMENT OF JUSTICE

18      Attorneys for the U.S. Trustee

19

20  BY:  LINDA CASEY

21

22  BIELLI & KLAUDER

23      Attorneys for EFH Corp

24

25  BY:  DAVID KLAUDER

Page 6

1   STEVENS & LEE

2       Attorneys for EFIH

3

4   BY:  JOSEPH H. HUSTON, JR.

5

6   RICHARDS, LAYTON & FINGER, P.A.

7       Attorneys for the Debtors

8

9   BY:  DANIEL J. DEFRANCESHI

10      JASON M. MADRON

11

12  HOGAN MCDANIEL

13      Attorneys for Fencle, Fahy, Jones & Heizmann, et al

14

15  BY:  DANIEL K. HOGAN

16

17  ALSO PRESENT TELEPHONICALLY:

18  SCOTT L. ALBERINO

19  ARLENE R. ALVES

20  SAM N. ASHURAEY

21  ASHLEY F. BARTRAM

22  PEG A. BRICKLEY

23  CHRISTOPHER L. CARTER

24  ALISTAR CHAN

25  MARK A. CODY

Page 7

1    MICHAEL FIRESTEIN

2    JOSEPH A. FLORCZAK

3    GREGG M. G ALARDI

4    TAYLOR B. HARRISON

5    HAL F. MORRIS

6    TINA MOSS

7    MICHAEL S. NEUMEISTER

8    JOANNA S. NEWDECK

9    RICHARD PEDONE

10    ERIK SCHNEIDER

11    NED S. SCHODEK

12    NOAH M. SCHOTTENSTEIN

13    CHARLES E. SIEVING

14    NACIF TAOUSSE

15    ANGELO THALASSINOS

16    AMER TIWANA

17    MEGAN WASSON

18    BRADY C. WILLIAMSON

19    KEITH WOFFARD

20    PETER YOUNG

21

22

23

24

25

```
 1                       P R O C E E D I N G S

 2              [SEE EXAMPLES] P R O C E E D I N G S

 3              CLERK:  All rise.

 4              THE COURT:  Please be seated.  Good morning.

 5              MR. KIESELSTEIN:  Good morning, Your Honor.  Mark

 6    -- I'm sorry.

 7              THE COURT:  That's okay.  I have something to say

 8    before we get started.

 9              MR. KIESELSTEIN:  Sure.

10              THE COURT:  First of all, just an announcement

11    that starting today, recordings of all proceedings in this

12    court will be made available on the CM/ECF system, so you're

13    being recorded.  This is separate from and in addition to a

14    formal transcript.  You will be able to download the actual

15    audio recordings directly.

16              The second thing, and more important, is I wanted

17    to comment on something that was filed Friday, which is

18    titled the Majority Creditors Notice of Accepting

19    Appointment of Representative to the EFH Fee Committee.  And

20    I read that, and under it the official committee of

21    unsecured creditors to the T-side official committee

22    purports to assign its role as a constituent that has the

23    power to nominate a representative to the Fee Committee to a

24    consortium of Elliott and Paloma Partners.  And then through

25    that, which designate themselves as the majority creditor --
```

Page 9

1    and through that they accept that assignment of that power.

2    And then they've appointed or purported to appoint a person

3    named Kim Berger to the official -- to the Fee Committee.

4            And they rely Section 90.7 of the Fee Committee

5    order, which goes way back to 2014.  I reviewed that as

6    well, and I have doubts that the Fee Committee order section

7    that's been cited is authority to the Official Committee of

8    T-side Creditors to transfer its right to appoint a member

9    to the Fee Committee to a separate constituency, such as the

10   majority creditors.  I think that the provision as written

11   gives the initial committee the right to replace its

12   representative, but not the right to assign the ability to

13   designate a representative.  But I'm openminded usually, and

14   I'm openminded about this, and I'm certainly happy to

15   discuss it.

16           So, what I'd like to do is schedule this for a

17   hearing on January 8th, which we have a hearing -- I'm

18   having trouble with my calendar; I apologize -- oh, for

19   goodness sakes -- at 10:00 AM in EFH.  It's actually the

20   Vistra matter that we haven't -- that time designated.  So,

21   let's add this to the agenda for that date.

22           I would welcome responses of any nature to be

23   filed by the 3rd at 4:00, and we'll discuss it at that time

24   and what the status of it is.  But in the meantime, absent

25   further action by the Court, Ms. Berger is not a member of

1    the Fee Committee.  I suppose Mr. Kravitz has resigned, so

2    he's no longer a member of the Fee Committee.  And what

3    we'll do with that and how it will proceed will be discussed

4    on the 8th.  I would make that statement.

5           MR. KIESELSTEIN:  Your Honor, I take it you prefer

6    we'll hold our comments on that subject for the time being?

7           THE COURT:  Yeah, I do prefer that, because even

8    my own comments are very preliminary.  I mean, I've just

9    done over the weekend a quick review of what was filed and

10   the order, and I'd rather people submit them in writing.  I

11   know that counsel that filed this are not present in court

12   or on the phone, so it would be unfair to have a discussion

13   without them present.  So, we'll do that on the 8th.

14          MR. KIESELSTEIN:  I think maybe just one factual

15   correction, Your Honor.

16          THE COURT:  Yes.

17          MR. KIESELSTEIN:  It's our understanding that it

18   was not in fact the T Committee, but the E-side Committee --

19          THE COURT:  Oh, I apologize.

20          MR. KIESELSTEIN:  -- that made that purported

21   authorization of transfer.

22          THE COURT:  Okay.  My mistake.  Thank you.

23          MR. HAGEY:  Your Honor, if I could be heard.  I'm

24   Noah Hagey of BraunHagey & Borden, that filed the notice

25   with the Court.  Our only suggestion would be we had

Page 11

1    actually intended to file a motion on shortened time.  I

2    believe the Court has a hearing scheduled for the 21st of

3    December.

4         The reason for some of the expediency is the

5    number of matters that are coming before the Fee Committee

6    that Elliott and the other majority creditor were interested

7    to participate in, both in terms of information exchange and

8    in terms of the construction of this case, where

9    approximately 75 cents of every dollar that's getting spent

10   directly hits our client's bottom line.

11        And so, Your Honor's point is well taken.  We're

12   happy to have a full hearing with interested parties

13   submitting paper to Your Honor.  We would just ask that it

14   be moved up.

15        THE COURT:  Well, I don't think it constitutes --

16   yeah, this is a three and a half year process,

17   unfortunately, that's been going on, and I don't think a

18   couple weeks is going to make a difference, especially over

19   the holidays, the Christmas holidays.  Although I do know

20   people who work harder than I do over those holidays.

21        Also, I'm not sure that hearing will stay because

22   we have preliminary indications that hearing may be

23   resolved.  And that really was a special hearing

24   specifically for that matter, as opposed to other matters.

25   So, I'd really rather keep the 8th, although I certainly

Page 12

1    appreciate your comments.

2           MR. HAGEY:  Well, we're happy to accede to

3    allowing people to take some holiday time off.  I guess the

4    only point would be if, given the Court's preliminary

5    indication, we would likely file a motion in the alternative

6    to have Elliott and Paloma appointed to the Fee Committee.

7    And I know there's a lot of other issues scheduled for

8    today, or at least an important one regarding NextEra, so

9    we'll cede the podium.  But I just wanted to give Your Honor

10   a heads-up that that's coming.

11          THE COURT:  That's fine.  Thank you.  I appreciate

12   that.  And that's four weeks away, so there's no need to

13   even short notice.  If you get it done this week, you can

14   just notice it up for the 8th, and you have my permission to

15   do that.

16          MR. HAGEY:  Okay.  Thank you, Your Honor.

17          THE COURT:  You're welcome.

18          MR. KIESELSTEIN:  Good morning.  Again, Mark

19   Kieselstein, Your Honor, on behalf of the Debtors.  We had a

20   mercifully brief agenda to start with, a three-item agenda,

21   and we are down to only one item that's going forward, Your

22   Honor, and that's NextEra's motion to stay the

23   reconsideration order pending appeal.  So, I would simply

24   yield the podium to Mr. Buchanan.  It's his motion.

25          THE COURT:  Okay.

Page 13

1           MR. BUCHANAN:  Good morning, Your Honor.

2           THE COURT:  Good morning

3           MR. BUCHANAN:  I'm Thomas Buchanan, on behalf of

4    NextEra.  John Harding of Winston & Strawn is also here, as

5    well as Andrew Rosenblatt, Eric Daucher of Norton Rose, and

6    Matt McGuire of Landis Roth, all on behalf of NextEra.

7    Thank you for hearing this argument.

8           We're here to argue a motion to stay of the

9    Court's October 18th, 2017 reconsideration order.  We seek

10   that stay because we believe, and I think all the parties

11   believe, that the confirmation plan in the Sempra deal will

12   be confirmed and the corresponding funds will be distributed

13   to the creditors prior to the time that our appeal is

14   resolved.

15          For your information, we have a direct appeal.

16   The parties have all joined in on at least one issue.  And

17   we all agree that there should be expedited briefing, and

18   we're waiting to hear from the Third Circuit on that.  We

19   haven't heard that.

20          So, I think if you read the briefs from the

21   parties, they're all in agreement that it's most likely that

22   those funds will be distributed pursuant to a confirmation

23   plan prior to the resolution of the appeal.  So, we figure

24   that a stay could maintain the status quo, which had been in

25   place for months, would be appropriate here and protect us,

1    NextEra, from having to chase that money down the road,

2    which could be very difficult, particularly when you're

3    dealing with hedge funds and investors and the money goes

4    out.  How are we going to retrieve that fund and those

5    monies?  So, that's why we asked for the stay.

6         Now, the factors the Court is aware of -- there's

7    four factors.  The primary factors are likelihood of success

8    on the merits and our irreparable injury in order to get at

9    the stay.  And we would submit that we can meet that

10   standard.  I will begin with likelihood of success on the

11   merits.

12        So, the standard for considering the likelihood of

13   success on the merits is not that we will most probably win,

14   that we have to prove 90 percent chance of winning.  It's

15   actually somewhere between negligible and 50 percent.  In

16   the cases we've cited, In re Revel, make it clear that we

17   don't even need to prove 50 percent chance of success on the

18   merits in order to get a stay under that provision to meet

19   that requirement, likelihood of success on the merits.

20        And with regard to the merits, I'd like to focus

21   on the Court's finding that the motion by Elliott was

22   timely.  So, the Court did an analysis, obviously, whether

23   it was final or interlocutory.  However, the Court found

24   that under either condition, whether it was final or

25   interlocutory, the matter was timely.  And the Court relied

1    on some language from the reply brief of Elliott, that the

2    motion for reconsideration was not timely -- was timely,

3    because it was not ripe until July 7th of 2017, when a

4    Debtor terminated the merger agreement.

5              And we would take issue with that and we submit

6    that there is a good probability that a reviewing court, two

7    judges sitting on the Third Circuit, would find that that

8    analysis cannot stand, because as the Court knows, ripeness

9    is a constitutional issue.  And in order for something to be

10   reconsidered, it has to be an order or decision.  It can't

11   be unripe.

12             So, basically, the court has found with the help

13   of Elliott, that on September 16th when it did its analysis

14   under O'Brien and allowed the termination fee of $275

15   million, that that was an advisory opinion based on a

16   hypothetical.  Because that's what an issue is if it's not

17   ripe.

18             And we submit the Court does not agree with that.

19   But that is effectively how the Court allowed Elliott to

20   wait 10 months, because what the Court did was to

21   essentially change the goalposts, the starting point, by

22   finding that the issue was not ripe until July 7th of 2017.

23   It essentially wiped out the 10 months.  And so, essentially

24   Elliott filed two weeks after the issue was ripe.

25             Of course, Rule 60 requires as a starting point

Page 16

1  that you look at the time the order was issued.  That goes

2  back to September 19th.  So, from a constitutional

3  standpoint and a statutory standpoint, the issue was ripe on

4  September 19th, not on July 7, 2017.  There is no way, in

5  our view, the Third Circuit would find that the Court issued

6  an advisory opinion on a hypothetical set of circumstances

7  on September 19.

8          So, by doing that, the Court essentially

9  eliminated any analysis of what Elliott knew, should have

10 known, and why they waited so long.  In fact, at oral

11 argument, the Court specifically asked lawyers for Elliott,

12 why did you wait 10 months.  They never responded, other

13 than to say it wasn't ripe.

14         So, here we have a party that knew everything that

15 everybody else did, specifically NextEra and the Debtor, as

16 of September 19th, but they waited 10 months.  The Court

17 never considered that in its reconsideration order.  The

18 Court never considered why they waited that long and what

19 they knew.  And they knew everything we did.

20         So, we would submit that the Court's finding on

21 ripeness, that it wasn't ripe until July 7th of 2017, that

22 the Court couldn't consider it until that time, and that

23 therefore it was timely, is illegally incorrect.  And we

24 submit that a court -- there's a probability that the Court

25 will so find.

1          So, you know, that takes us to some other issues

2     that the Court didn't consider, such as waiver and equitable

3     estoppel.  So, those are things that if the Court looked at

4     the 10-month period and said, okay, they waited 10 months,

5     why did they wait so long?  There's nothing in the record to

6     indicate that they gave any reason why they waited so long.

7     Then the Court would ask, what did they know, when did they

8     know it?  They knew -- Elliott and all the other parties,

9     including 100-and-some lawyers, all knew on September 19th

10    that if the PUCT rejected the merger, that we could

11    (indiscernible) NextEra get the fee.  And they also knew

12    there was no end date.  That's absolutely clear.

13          Not a single lawyer has asserted to this Court

14    that they didn't know those facts on September 19th.

15          THE COURT:  I haven't asked any of them.

16          MR. BUCHANAN:  Well, it's --

17          THE COURT:  They're not parties to the case.  I

18    frankly don't care what they think.

19          MR. BUCHANAN:  You don't care what the moving

20    party thinks?

21          THE COURT:  No, I don't care what the lawyers in

22    the gallery think.

23          MR. BUCHANAN:  Well, the lawyers --

24          THE COURT:  The question is what did I understand.

25          MR. BUCHANAN:  Well, actually, it's not just what

Page 18

1    the Court understood, it's what the moving party understood.

2    So, again, the next provision is was there a manifest

3    injustice done --

4            THE COURT:  Mm hmm.

5            MR. BUCHANAN:   -- and the Court cited Black's Law

6    Dictionary, which in its definition of manifest injustice

7    refers to the situation where a defendant involuntarily

8    pleads guilty.  So, that would be facts on the record where

9    he involuntarily pled guilty, that he stated on the record I

10   don't understand what I'm pleading guilty to.  It's clear on

11   the record.

12           And the standard, as the Court cites it, is that

13   it has to be obvious, indisputable and manifestly clear.

14   There has to be a corruption and taint in the record that

15   reveals to the Court that the Court did not see at the time.

16   So, it's an objective standard.  And so, the Court has

17   stated that it did not know there was an end date and it

18   suggests that NextEra had an obligation to bring this

19   forward.

20           So, the Court said it didn't care about the

21   lawyers, but the standard is, is it obvious to everybody

22   involved.  So, obviously, it's not only the principals, it's

23   the lawyers who represent them, their agents at the hearing.

24   So, every principal and every lawyer present knew that there

25   was no end date and that NextEra could get the fee, even if

Page 19

1    the PUCT rejected it.  So, that taint, that corruption, is

2    just not present.

3            But the point is, it's not just what the Court

4    thought, because the benefit here is going to the creditors

5    and it's being taken away from NextEra.  And the Court, at

6    least eight different times, challenged NextEra's opinion

7    for its ethical obligations.  It basically claimed eight

8    different times that we sat on our hands, we that in the

9    tall grass, we didn't come forward, and we should have come

10   forward on September 19th.

11           Now, Elliott conveniently points to the Rules of

12   Professional Responsibility, saying under Rule 3.3 of the

13   Delaware Rules of Professional Responsibility, NextEra and

14   its lawyers -- because this is a lawyer provision -- had to

15   come forward, and they didn't.  Well, the last time I

16   looked, those ethical provisions apply to all lawyers that

17   were present.

18           So, why didn't any of the other lawyers come

19   forward and meet their ethical responsibilities?  Because

20   they believed at the time that there was no end date and

21   that NextEra could get the fee, and even if the PUCT denied

22   the merger agreement.  There can't be any other way.

23           And then, if not on September 19th, on September

24   25th NextEra, signed by its general counsel, submitted a

25   letter to the Court.  And that letter made it absolutely

Page 20

1    clear that we would get the fee if the PUCT rejected the

2    deal.  We still could get it unless NextEra terminated it

3    and made it absolutely clear.

4            Now, the Court has said, well, the record was

5    closed.  That's an argument put forward by Elliott.  Well,

6    how could the record be closed, and the issue not be ripe?

7    So, if the record was closed on September 19th, 2016, then

8    obviously, the issue had to be ripe at that time because

9    there was nothing else that came before the Court between

10   September 19th and July 7th of a factual matter.  All that

11   happened was the Debtor terminated the deal.

12           So, we would submit that a Court that's going to

13   review this will find that that ripeness argument is not

14   sound under law and it will reject that.  And if it does

15   that, then it opens up the Court's ruling as to all the

16   other factors it didn't consider.

17           Other factors the Court didn't consider was the

18   negotiations that went on prior to the closing of the deal.

19   NextEra obviously negotiated for quite some time on the

20   merger agreement and the fee.  Its original fee was $110

21   million.  It had a match right.  It gave up the match right

22   so as to open up other parties to compete, so it couldn't

23   just block them out.  That clearly incentivized other

24   parties to compete, and we gave that right up.

25           We increased our bid by $100 million, and then

Page 21

1    increased it by $300 million, all to bring all the other

2    creditors together to approve it.  So, we filed a motion

3    some five weeks before September 19th.  Everybody reviewed

4    it.  They objected or didn't object.  All objections were

5    withdrawn at the time of the hearing.

6              So, all these lawyers, some of who are ranked as

7    the best bankruptcy lawyers in the country, they discussed

8    these issues with their client, they explained them to them,

9    and they were absolutely clear on the two issues that the

10   Court has found were essentially so confusing that they

11   corrupted the record.  But not one of them, not one of them

12   has come forward with an affidavit and argument to suggest

13   they didn't understand the issues, or that NextEra or the

14   Debtor somehow misled.  There is no facts to suggest that.

15             So, we would submit, Your Honor, that for their

16   legal issue with regard to the timeliness, the facts were

17   not properly considered.  And in terms of the manifest

18   injustice, we would submit that there was no manifest

19   injustice because the record is not so tainted, corrupt by

20   the evidence of the testimony.

21             Again, on the end date, nobody suggested that

22   there was an end date.  There's no testimony, no document to

23   suggest there was an end date.  And that's the key point

24   that the judge makes in his opinion.  The judge repeatedly

25   said, "I did not know there was an end date.  It would not

1    have satisfied the O'Brien test in my view if I knew there

2    was no end date."

3            There's no way for the lawyers or NextEra or the

4    Debtor to know that the Court wouldn't have known that.

5    There is no way, because the record is clear that there is

6    no end date.  Where would we find the end date?  It's in the

7    merger agreement.  It's one page on the issue of the fee.

8    There is no end date.  (indiscernible) we never asked was an

9    end date because we believed it was obvious from the

10   agreement.

11           And all the people that were involved -- remember,

12   manifest injustice says all the parties involved, it has to

13   be obvious, indisputable to them, that the record is so

14   corrupt on the issue that it needs to be reversed.  That's

15   the standard set by the Court.  And we submit that on the

16   end date, the record is not corrupt at all.  It's not

17   tainted; it's clear.

18           With regard to the issue of whether the Court knew

19   that the PUCT could reject the merger agreement, again,

20   there was one statement on the record.  But that's not the

21   issue.  You've got to look at the whole record.  And I know

22   the Court did that.  But if you look at the whole record,

23   it's clear that if you look at the entire record, that it's

24   not so tainted, so corrupt on that issue, as to be obvious

25   to everyone.  As we know, everybody else understood it.

Page 23

1          In hindsight, the Court found that that was an

2    issue for it.  But we submit that that's not the standard.

3    You look at the actual record and you look at all of the

4    testimony, and I think from that testimony it's clear that

5    NextEra could still get the fee, even though the PUCT

6    (indiscernible) the deal.  And if not, certainly on

7    September 25th -- and the Court has acknowledged this in its

8    opinion, that while it refuses to consider the letter of

9    September 25th, it acknowledges that the cleared up that

10   issue.  But the Court says it still didn't clear up the end

11   date issue, and we would submit that the end date is

12   something that was clear in the record.

13          So, the final point on that issue with the merits

14   is the O'Brien test.  Again, we would submit that the Court

15   analyzed this in hindsight and looked at what's the impact

16   of the fee on the creditors today.  And certainly, when

17   anyone has to pay the fee, it's not a benefit.

18          But if you look at it at the time -- and the Court

19   has admitted that we would not have gone forward with the

20   deal but for that fee.  But we negotiated that fee in good

21   faith, lawyers on both sides, and the principals all signed

22   off on it.  They knew exactly how it worked.  And so, it did

23   incentivize us to go forward with the deal, it incentivized

24   them to accept the deal, and by us dropping the match right,

25   it certainly opened up the gates to other people to compete.

1        And so, the idea that in hindsight and it would be

2   against public interest as well to have a situation where

3   people would come in and get a termination fee and it could

4   be subject to being attacked, it would be considered not to

5   be ripe, it could not final, and then it could be attacked

6   10 months, a year later, who knows when?

7        And back to one other point on the Court's finding

8   on ripeness, if it wasn't ripe until July 7th, 2017 when the

9   Debtor terminated, then it wouldn't have been ripe until the

10  money came in from the deal being approved, or when the

11  litigation was over.  I mean, you could have any number of

12  factors.  They're all equal in terms of why is it that would

13  make it ripe?

14       So, we would submit that on those issues we would

15  prevail on the merits.  And on O'Brien, one final point on

16  that is, again, we believe that it did benefit the estate.

17  We were the largest offer by any purchaser and we made

18  concessions that incentivized others, opened it up for

19  others to compete.

20       Now, there's other factors as well.  Irreparable

21  injury, balancing of the hardships in the public interest.

22  So, the other parties, the opposing parties, have attacked

23  our position on irreparable injury and said, look, there's

24  no confirmation plan, you're premature.  At the same time

25  Elliott says we're premature, they say we're too late, we

Page 25

1    should've filed our motion earlier.

2            That being said, all the parties agree, I believe,

3    that the money from the Sempra deal when it flows into the

4    Bankruptcy Court will be gone by the time of the appeal

5    being done.  So, we believe that maintaining the status quo

6    is something that is important because otherwise, it's

7    highly likely if that money is gone, we'll never retrieve

8    it.

9            In addition, if we do win on appeal, the parties,

10    the opposing parties, the creditors and the Debtor, they

11    could actually ask for a hearing on bond.  They could

12    continue the matter.  And I'm sure they'll argue that once

13    that's done and we come back, if we do win and we have a

14    final appellate decision, they'll say you've got to go

15    litigate the declaratory judgment.  So, we could be years

16    out before we had a chance to even pursue the money.

17            So, again, they say, well look, wait until there's

18    a confirmation and discuss a reserve.  Well, the Court's

19    ruled retroactively, has disallowed the termination fee.

20    The parties vehemently oppose the creditors and the Debtor

21    any reserve.  Now, if the Court would (indiscernible) that,

22    look, I think a reserve would be appropriate here,

23    considering this, considering particularly if we have a

24    direct appeal and its expedited and it's moving along, we're

25    talking about a matter of months, then that would moot out

Page 26

1   our need for a stay.

2            But if in fact the Court finds I'm not going to do

3   a reserve, then we're put in a very irreparable position.

4   And they suggest, well it's not imminent.  Well, it is

5   imminent because it's not that far off by the time of the

6   confirmation  hearing.  And again, you know, there's no

7   reason for us to wait until then to file it, particularly

8   when they're suggesting we're already too late.  So, we

9   wanted to bring it to the Court now and give the Court a

10  chance to consider it.

11           But as I said, the opposing parties, the creditor

12  and the Debtor, have not suggested any mechanism by which we

13  could protect ourselves.  They want the money gone.  And I

14  can tell you, once it's gone, we'll be out of luck.  It'll

15  be difficult for us to chase investors and hedge funds down

16  the road.

17           And what we're talking about is really, when you

18  get to the balance of the hardships, we're not asking them

19  to wait that long.  If we do get an expedited briefing

20  schedule and a direct appeal, you know, we could have a

21  decision and, you know, it could be close.  Maybe it's three

22  or four months later.  And that would not, in the balance of

23  hardships -- clearly, the balance of hardships would favor

24  us.

25           And on the public interest, as we have pointed

Page 27

1   out, we submit that, you know, the idea of parties

2   negotiating in good faith and all the parties and their

3   lawyers understanding the deal, and the deal does in fact in

4   our view pass O'Brien, that that is important public

5   interest.

6            Now, Elliott says, well look, it doesn't really --

7   hasn't impacted other bidders in termination beings; look at

8   the Sempra deal.  But the Sempra deal occurred prior to the

9   motion for reconsideration order and the argument and the

10  decision.  So, it's really of no moment.

11           So, that is the points I want to make.  I don't

12  know if the Court has any questions?

13           THE COURT:  I do not.  Thank you, Mr. Buchanan.

14           MR. BUCHANAN:  Okay.  Thank you, Your Honor.

15           MR. KIESELSTEIN:  Good morning again, Your Honor.

16  Mark Kieselstein, on behalf of the Debtors.

17           Your Honor, I agree with Mr. Buchanan, at least in

18  terms of laying out the factors.  I think we all agree with

19  the factors are.  I think the law is also clear in the Third

20  Circuit under Revel that if you don't satisfy either of the

21  first two factors, you don't actually spend a lot of time or

22  any time considering the third and fourth factors.  So, I

23  want to focus on those first two, as Mr. Buchanan did, only

24  I would flip it around.

25           As Your Honor is well aware, we were with NextEra

1   and opposed to the motion for reconsideration.  So, it would

2   be disingenuous for me to do a longwinded speech about the

3   merits, other than to say that, Your Honor, you've stated

4   what your state of mind was when you entered the order.  And

5   frankly, we think that's highly relevant to how a reviewing

6   court is going to look at the situation.

7           And there was a whiff from Mr. Buchanan's remarks

8   of, well, everyone else understood it so you must have also,

9   or perhaps, Your Honor, you had buyer's remorse and, you

10  know, you say you don't understand it but you kind of really

11  do.  Obviously, we take you at your word, Your Honor, that

12  you didn't understand the full import of what was laid out.

13  Reasonable people could disagree about the impact of that

14  lack of understanding.

15          As far as other creditors and other lawyers

16  understanding, that's the benefit of being able to pick up

17  the phone and call other lawyers or other creditors, and

18  spent hours and hours going through scenarios and

19  permutations and issues, which Your Honor doesn't have the

20  benefit of.

21          So, I don't think getting into whether you are

22  confused about your state of confusion is a fruitful avenue

23  to go down.  Suffice to say that we think a reviewing court

24  will give a very significant degree of deference to what you

25  say your own state of mind was on a particular date.  So, I

Page 29

1  think they have difficulties on the likelihood of success.

2  And I don't agree that negligible qualifies, or anything

3  close to negligible.

4        And I remember being in front of the great Judge

5  Wedoff once, and he told a young lawyer -- it might have

6  been me, perhaps -- "Mr. Kieselstein, if I was going to --

7  if I thought you were going to win on the merits I'd have

8  ruled to you in the first place.", which is sort of the

9  bottom line of that prong.  And maybe this is just a way to

10  get up to the District Court, and you have to go through the

11  Bankruptcy Court to do it.

12        But I do want to spend a little bit more time on

13  the irreparable harm because I think it's abundantly clear

14  that as we stand here today, there is no prospect of

15  irreparable harm in the near term.  Not one dollar of that

16  $275 million is going to leave these estates and land in the

17  pockets of creditors, other than in the context of a

18  confirmed and consummated plan of reorganization.  There is

19  no mechanic for us to get that money siphoned out the door

20  to creditors, other than in that context.

21        And in that context, there will be a full and fair

22  opportunity for NextEra, as holder of a disputed, disallowed

23  administrative claim, to say that it is entitled to some or

24  all of the mechanisms that Mr. Buchanan spoke of, a reserve,

25  a claw-back, maybe neither.  We're all reserving our rights.

Page 30

1    We're not here arguing today what mechanism, if any, is

2    required to safeguard the rights of NextEra as the appeal

3    goes forward.

4         We don't have a firm confirmation date yet.  We're

5    all anxiously awaiting the events in Austin.  Until those

6    events have actually come to pass, hopefully, positively,

7    we're not scheduling a confirmation date.  When we do, we

8    will give all the notice, and then some, that the rules

9    require for parties such as NextEra, and my guess is they

10   will have the stage almost to themselves to argue that the

11   confirmation standards require that certain protections be

12   afforded to them.  And that's a different set of legal

13   requirements that we either have to satisfy or not.  The

14   burden will be on us to do it.  So frankly, I think they're

15   better positioned at that time to make their objections and

16   their arguments as to what protections they need.

17        But between now and then, there is no conceivable

18   way for NextEra to suffer irreparable harm, to suffer any

19   harm, as a matter of fact.  Nothing is happening between now

20   and when a plan gets confirmed and ultimately consummated

21   that will impact the $275 million.  And the cases that were

22   cited in reply by NextEra only underscore that point.

23        They pointed to the Tribune case, where there was

24   irreparable harm, stay pending appeal.  But that was stay

25   pending appeal of a confirmed plan.  The plan had been

Page 31

1    confirmed and the debtor was ready to consummate, and the

2    money was going to go out the door.  That, again, is not our

3    scenario.  That's the scenario actually I'm talking about

4    that will come to pass when NextEra can stand up and ask for

5    whatever relief it deems appropriate to protect itself.

6              Similarly, the Finova case, which is very short on

7    facts, but if you dig into the background of that case, they

8    had a plan of liquidation that they were seeking to in

9    essence consummate by making distribution.  So then, much

10   further down the road, much nearer to the moment when the

11   money was going to leave the system, than where we are

12   today.

13             And I think because there's an utter lack of

14   irreparable harm here, this motion should be denied, really

15   deferred more than denied, because they'll have again the

16   full opportunity to raise these same exact arguments about

17   reserves and claw-backs when we hopefully, Your Honor, come

18   before you to confirm our plan.

19             THE COURT:  Thank you, Mr. Kieselstein.  Mr.

20   Galardi?

21             MR. GALARDI:  Your Honor, I want to start with a

22   few of the things said in the papers.  First is Your Honor

23   clearly took an extraordinary step, and they make a big deal

24   out of the extraordinary step.  And they say that means

25   there's got to be a material issue on the merits.  And I

1    think it's quite the contrary.

2         In order for Your Honor to have taken that step,

3    you had to be absolutely convinced in your mind that that

4    there was a manifest error of law and fact.  And the Court

5    was.  So, in order to overcome that, they're going to have

6    to do something significant.  And we think it's extremely

7    unlikely that they'll prevail, and the likelihood is

8    negligible at best.

9         I want to start first with what's the applicable

10   standard for Your Honor to be reversed on appeal.  A

11   reconsideration motion, Your Honor will have to he found to

12   have abused your discretion and have made a clear error on

13   factual findings.  That's the standard.  They don't say how

14   you abused your discretion, or what the clear erroneous

15   factual findings are.

16         With respect to the argument that Mr. Buchanan

17   leads with, he gives the timeliness argument.  Again, that

18   is an abuse of discretion standard.  For the first time,

19   they are now making a constitutional argument on ripeness.

20         THE COURT:  Yeah.

21         MR. GALARDI:  They never made that argument

22   before.

23         THE COURT:  Yeah, I was flipping through the

24   briefs.  I didn't see that.

25         MR. GALARDI:  No, there wasn't a constitutional

Page 33

1    argument.  And more importantly, Your Honor -- and again,

2    NextEra has taken a lot of liberties with the record, and

3    Your Honor will remember, we came into this court to get a

4    stipulation for the record and a specific provision that

5    says you cannot argue other than facts in the record.  So

6    again, while I think it's irrelevant whether there was

7    hundreds or thousands of lawyers in the courtroom that day,

8    it really comes down to what Your Honor said to them, what

9    did Your Honor think with the presentation that was made.

10              And finally, even if we get to the merits, Your

11   Honor, let's take the O'Brien standard.  To get reversed on

12   a breakup fee, let's pretend this was September 19th, 2016.

13   The legal standards reviewed de novo, they don't argue that

14   you didn't apply O'Brien.  They had to have a factual -- you

15   have to make a clear error.  And even so, the application to

16   approve a breakup fee is, again, an abuse of discretion

17   standard.

18              So, if you simply look at the standards without

19   going to the facts or what Your Honor said, the likelihood

20   of getting reversed on appeal is negligible at best.  But

21   now let's look at the substantive arguments.

22              If you turn to what NextEra has argued in its

23   opening brief, it all comes down to, Your Honor should've

24   known by implication, not by express provision.  If I direct

25   your attention to paragraphs 72, 70 -- let me get them out.

1   It's all about, Your Honor should've just known.  Everybody

2   else in the courtroom knows.  I didn't understand why you

3   didn't know, Your Honor.

4         So it says, 72, "The repeated reference to the

5   elimination of the fee, if NextEra terminated the

6   transaction, were neither incomplete nor confusing.  The

7   clear implication is that" -- the debtors emphasize --

8   "terminated, the fee would be payable, a concession.  It was

9   not said on the record."

10        Next, the Court never asked or expressed any

11  interest in the outcome if the PUCT rejected the

12  transactions and the debtor is terminated.  That's also in

13  Paragraph 2, 72.

14        Your Honor, then it goes and said, "Well," and Mr.

15  Buchanan said it here, "Litigants are not required to be

16  clairvoyant, and for the Court to retroactively identify a

17  clearer of fact based on the litigant's failure to answer a

18  question that nobody ever asked was wholly unreasonable."

19  That's in Paragraph 77.

20        So, Your Honor, again breakup fees -- and they can

21  say, "Well, you should've just looked at the agreement.  You

22  should've just seen that there's a termination fee."  That's

23  not the (indiscernible) of presenting evidence in support of

24  a breakup fee as Your Honor mentioned.  They were the

25  beneficiaries.  To say that they could simply stand silent

1    when they had a $275 million stake is misleading that they

2    can just simply stay silent.

3           And second, Your Honor, it is for the litigants --

4    the debtors, NextEra, anyone supporting it -- to put forth

5    the fact so that there is a clear picture.  And as Your

6    Honor found -- Your Honor found that the record was

7    confusing or misleading at best regardless of parties'

8    intentions.  So we think the likelihood of their prevailing

9    on appeal is highly unlikely.

10           With respect to the untimeliness, Your Honor,

11    again, everybody seems to ignore certain facts that were in

12    the record and Your Honor did look to the ripeness issue,

13    but Your Honor was also aware of the following.

14           One, there was an appeal of this termination fee.

15    That appeal did not get terminated or mooted as we pointed

16    out until the NextEra deal was terminated.  Two, there's

17    still the issue of whether it was interlocutory.  And three,

18    there's no self-effectuating nature to this fee.

19           As Your Honor can recall and we made the point,

20    one, we filed a reconsideration but if it was so clear that

21    it was self-effectuating, why did they file a motion for a

22    termination fee that would self-effectuate?  Your Honor

23    properly ruled it was interrogatory -- interlocutory.  So,

24    Your Honor, we think their likelihood of winning on any of

25    the issues they've raised is negligible.

1        Now, going to the irreparable harm and the

2    immediate irreparable harm, Your Honor, I think Mr.

3    Kieselstein and we do absolutely agree.  There is no

4    imminent or irreparable harm.  In fact, NextEra concedes

5    that in certain circumstances, the fact of the matter is you

6    can get money back.  But that's not the issue we are at

7    today, and it comes down to the reserve issue.  Obviously.

8    We will oppose the reserve, but this is still months away,

9    Your Honor.

10        Now, I will take issue with Mr. Buchanan again

11    saying, "Oh, all the parties agree that the appeal will not

12    get resolved before the confirmation."  I can't say that for

13    sure.  Only I can say is it's unlikely that they'll stop at

14    the Third Circuit.  They'll probably go for (indiscernible).

15    They'll probably go to the Supreme Court, and then we'll be

16    back here again.  So, Your Honor, I don't -- I think that we

17    will have to deal with this issue, but it is a confirmation

18    issue.

19        As to the public interest, Your Honor, I've read

20    "already approved a breakup fee" with some concerns in a

21    situation where the Court may not approve it.  People are

22    coming in for breakup fees still.  What the lesson to be

23    learned in the Third Circuit is, is that if you're going to

24    have a breakup fee approved and a termination fee approved,

25    you should be clear to the Court as to the circumstances.

1   You should seriously consider an expense reimbursement if

2   you're going to have a condition.  They did not have that

3   here.  That was the old standard.  One part breakup fee for

4   a higher and better, one part for the expense reimbursement.

5               And finally, Your Honor, they say that there was

6   some sort of actual benefit here because they got the true

7   value.  I think as I argued at the first hearing, there was

8   no actual benefit.  They dropped the matching right, we

9   agreed.  They increased the price, we agreed.  The problem

10  was they never set the floor.  They never gave the actual

11  benefit.

12              So to say that they induced bidding, arguably, by

13  increasing the bid and increasing the number, they actually

14  stopped the bidding.  No one ever came out of the woodwork,

15  but they did so with a deal that was conditional.  So

16  there's nothing, and no one has challenged that there was an

17  actual benefit that got to the estate as a result of the

18  approval of this termination fee.

19              So, we think the chances of success are negligible

20  on appeal.  We think there's no immediate irreparable harm.

21  We think there are harms to creditors at this point, and we

22  think the public interest is served by being clear about

23  breakup fees.  Thank you.

24              THE COURT:  Thank you, Mr. Galardi.  Yes, Mr.

25  Glueckstein?

Page 38

1          MR. GLUECKSTEIN:  Good morning, Your Honor.  Brian

2     Glueckstein, Sullivan and Cromwell, on behalf of the E-side

3     Creditors Committee.  Your Honor, we submitted a short

4     opposition primarily going to the issue of creditor harm

5     should Your Honor reach that prong of the test.

6          But I rise today to really just point out in

7     addition to the comments made this morning by Mr.

8     Kieselstein and Mr. Galardi, we heard today from counsel to

9     NextEra, I think candidly, that if Your Honor were to set a

10    reserve, they have no need for a stay.  And so what we're

11    really talking about here, Your Honor, is it's effectively

12    trying to prejudge the reserve issue which the Committee

13    agrees is a confirmation issue.

14         I think all parties have kind of signaled where

15    they are in that issue.  But that would come before Your

16    Honor on the facts as presented at the time we get the

17    confirmation.  There certainly is no irreparable harm to

18    NextEra today, as has been pointed out, and we think, Your

19    Honor, granting of a stay under the circumstances is

20    effectively trying to prejudge and effectively prejudice the

21    other parties when that issue becomes ripe and becomes

22    before Your Honor.

23         The other point, Your Honor, counsel today, you

24    know, argued kind of both sides of saying well, any harm to

25    creditors really would only be a short delay because we're

1    pursuing expedited appeal in the Third Circuit.

2            On the other hand, when talking about the

3    potential inability to call back funds or get back monies

4    once distributed should a reserve not be set, counsel points

5    out that additional appeals could be taken and this could be

6    years until resolution.  And so while as a preview certainly

7    of the reserve issue from our perspective, that's precisely

8    the concern we have from the committee's perspective and

9    distributions to creditors.

10           Certainly, that delay in and of itself, if we're

11   talking any significant period of time beyond confirmation,

12   is -- and we point out in our papers -- recognizes a harm to

13   creditors in and of itself.  So, we reserve all rights with

14   respect to the reserve issue.  We think Your Honor should as

15   well, and we've heard nothing today that suggests any harm

16   whatsoever to NextEra.  In fact, they've candidly admitted

17   that if Your Honor's going to consider the reserve issue

18   they don't need a stay.

19           So we would submit, Your Honor, that the motion

20   for a stay should be reserved and Your Honor should take up

21   the reserve issue in due course in connection with

22   confirmation.

23           THE COURT:  All right.  Thank you, Mr.

24   Glueckstein.  Mr. Buchanan, anything further?

25           MR. BUCHANAN:  Just briefly, Your Honor, thank

Page 40

1   you.

2            THE COURT:  You're welcome.

3            MR. BUCHANAN:  So, Judge, and we put this in our

4   brief, I'll just read briefly in terms of the standard with

5   regard to likelihood of success on the merits.  Under the

6   Revel cases, "A sufficient degree of success for a strong

7   showing is if there's a reasonable chance or probability of

8   winning.  It must be better than negligible but need not

9   rise to the level of more likely than not."

10           It goes on to say that this could be 50 percent.

11  So just briefly on the issue of ripeness.  We may not have

12  used the word constitutional, but ripeness is a

13  constitutional issue.  It's not something that just can be

14  waived, and so, again, no one here on the side of the

15  creditors or debtor has pointed out that the Court has dealt

16  with the issue that the Court found that it was timely

17  because it wasn't ripe.

18           So that again would mean the Court is -- stated

19  that as of July 7th, 2017, that the issue of whether the

20  termination fee complied with O'Brien was merely an advisory

21  opinion.  That that is unmistakable, and we submit that a

22  Court that reviews that will say that can't be true.  It had

23  to be ripe.  You can't reconsider something that is not

24  ripe.  An order or decision has to be decided to pass

25  constitutional muster or to pass Rule 60.  It has to be

1    decided on the issue.

2          THE COURT:  Well, let me just say that while this

3    perhaps is a constitutional issue, it can't be waived.  If

4    you want a Court to consider arguments, it's helpful that

5    you put them in the briefs and perhaps this argument

6    could've been made at the time the motion for

7    reconsideration was briefed.  It wasn't.  Perhaps this

8    argument could've been briefed in connection with your

9    motion for stay.  It wasn't.

10          You have two arguments, but you can't spring them

11   on the Court when you're into your third or fourth

12   opportunity to brief the exact same issues and expect me to

13   be in a position to rule on them.

14          MR. BUCHANAN:  If I --

15          THE COURT:  Those arguments are what they are, and

16   you can preserve them for the Appellate Court.

17          MR. BUCHANAN:  Just --

18          THE COURT:  But frankly, I'm not going to sit here

19   and consider it.  You've had more than a fair opportunity to

20   raise every argument that you can conceive of.  This is the

21   second round of briefing on these facts.

22          MR. BUCHANAN:  So, Your Honor, the first time the

23   word ripeness was used, was in Elliot's reply brief with

24   regard to the motion for reconsideration.  The Court

25   incorporated that argument verbatim in its opinion.  We

Page 42

1    raised the ripeness issue in our brief in our motion for

2    stay.  It's fully briefed there.

3              Now, did I use the word or did we use the word

4    constitutional?  But we argued the word ripeness.  There's a

5    page or two on ripeness in there.  And we go through all the

6    factors I've outlined today that the Court cannot rely on

7    them, and so it's there.  I apologize that, you know, it

8    wasn't clear but it -- we did make that argument and it was

9    the first time we saw it and it being irrelevant to us was

10   in the Court's opinion.

11             So, you know, I do think we have made that

12   argument, and I think it needs to be considered here.  It

13   wouldn't be fair to say we didn't raise it.  And I think

14   they can't deal with that.  That issue is crucial, and I

15   don't think there's any chance they can succeed on the

16   merits, and I think we will, any judge that looks at that.

17             And I think that the Court, you know, is

18   obviously, you know, that the Judge is extremely bright and

19   talented judge and has a great reputation.  I'm not trying

20   to suggest it missed some issue.  But I think that the Court

21   would want to make its decision on this matter clear and can

22   deal with that issue of ripeness and not suggest that we

23   missed the boat, because we really didn't, Your Honor, and I

24   apologize the Court believes that.  But we did make the

25   argument in our brief.

1          And then on the issue, finally, on whether the

2     Court was confused and the Court has asked -- suggested to

3     me that's what matters, it's an objective standard under

4     manifest injustice.  You look at the record and what's in

5     the record, and I don't think you can suggest that the

6     record is obviously and indisputably clear that there was a

7     corruption on the record, whether it was caused by NextEra

8     or the debtor or somebody else on the issue of whether there

9     was an end date.

10          I mean, we submitted the merger agreement, it has

11    no end date.  In hindsight, the Court obviously didn't like

12    that fact, and I understand that.  But there was no

13    deception.  There's no corruption or taint by anyone.  It

14    was there.  And it's not where the Court looks back and

15    says, "Gee, I didn't know that."  It's whether somehow the

16    Court was deceived.  Somehow there's something on the record

17    that led the Court not to understand that.

18          And if you add then the September 25th letter,

19    again, assuming that NextEra missed the train and didn't

20    make the September 19th hearing, wouldn't we have an ethical

21    obligation to come before the Court to try to clarify the

22    issue of whether we get the fee or the PUCT, and I realize

23    it was a separate hearing that caused that, but we did

24    submit that letter.  And -- so I just think that there is a

25    probability that we'll prevail in the merits.

Page 44

1    The irreparable injury, I've argued that, and I

2    just think that from what I can see here that they would be

3    opposed vigorously, it's a separate issue, a separate

4    standard on whether there's a reserve.  This is a separate

5    issue, and I think we've made out a case of a probability.

6    The Court may not think it's right, in fact, that's what the

7    cases say, the Court may think that they shouldn't win --

8    that we shouldn't win, that the Court is absolutely right.

9    But if the Court thinks there's a probability on

10   these issues we presented today and the Court has said it's

11   an extraordinary situation, the facts, an extraordinary

12   remedy the Court's imposed.  So we would submit that we do

13   that that probability and we'd ask for the stay.

14   Now, the Court can always revisit the stay if, in

15   fact, appeal takes too long and, you know, we lose three-

16   zero.  But, you know, we would probably -- we may probably

17   oppose that but right now we're just trying to preserve the

18   status quo which was in place for some time until the

19   Court's reconsideration (indiscernible).

20   THE COURT:  Has the Third Circuit at this point

21   accepted the direct appeal?

22   MR. BUCHANAN:  It has not, Your Honor.

23   THE COURT:  Okay.

24   MR. BUCHANAN:  We're still waiting.  Thank you,

25   Your Honor.

1          THE COURT:  You're welcome, Mr. Buchanan.  Anyone

2     -- any further comment?  All right.  Court will take a

3     recess and then come out and rule.

4        (Recess)

5          THE COURT:  Please be seated.

6          All right, thank you for your arguments today.

7     The Court is going to deny the motion for a stay pending

8     appeal, and I'll explain why.

9          First of all, a preliminary comment, and I hope

10    this is clear from my decision earlier this year that's on

11    appeal.  After the Hunt transaction failed in that there

12    were closing conditions imposed or conditions imposed by the

13    PUCT that were required to be met in order for the PUCT to

14    agree with the deal and they were not sustainable or

15    acceptable to the merger parties -- which is, of course,

16    fine and that terminated -- I was very focused on not

17    approving any transaction or breakup fee that would've been

18    payable if the PUCT did not approve the merger.  Period,

19    full stop.

20          The deal and hearing as presented to the Court, I

21    think it's fair to say that it's obvious that I was

22    interested in making sure that that didn't happen, at least

23    in the context of a situation where NextEra terminated the

24    transaction.  The record is thin and contradictory on the

25    issue relating to what would happen if the debtor terminated

Page 46

1    the transaction and the PUCT had not approved the merger.

2            That, of course, is ultimately what happened and

3    the record at the hearing is devoid of any discussion about

4    the lack of a end date to the transaction, the combination

5    of which lack of an end date and the fact that the

6    termination fee would be payable if the debtors terminated

7    the transaction, led us to where we are today and I think as

8    I said, had I been aware of those facts and the nuances, I

9    would not have approved the deal.

10           It is, perhaps, an objective standard, perhaps

11   not.  Had I been better at my job, maybe I would've caught

12   it, maybe not, but the reality is I was focused on it.  I

13   didn't catch it.  Had I caught it, I wouldn't have approved

14   it.  And that's the underlying key factual point that

15   underlies my decision earlier today granting the motion for

16   reconsideration.

17           So, when we get to the issue of whether to approve

18   a stay pending appeal, we all know the factors as they were,

19   I think, very helpfully clarified by the Third Circuit

20   recently in the Revel decision, and the two key factors are

21   likelihood of success on the merits and irreparable harm.

22           With regard to likelihood of success on the

23   merits, for the purpose of the motion today, I am happy to

24   assume arguendo that there is, indeed, a likelihood of

25   success on the merits.  I've said internally to my clerks

1    all along, you know, that there is appellate risk with

2    regard to the Court's decision.  Perhaps to the finding that

3    it's interlocutory, perhaps to the finding that there was no

4    undue delay, that it was properly filed when it was filed,

5    and perhaps to the ruling, and maybe most to the ruling,

6    with regard to whether a transaction that -- a transaction

7    fee that's payable if a deal is ultimately not consummated

8    can satisfy O'Brien.

9              I hope I made my rulings clear on that.  I stand

10   behind them, but reasonable minds can differ and there a

11   risk that an Appellate Court could rule otherwise.  And I

12   think, to be fair, it's more than a negligible risk,

13   although I, like any trial court, I don't think -- I don't

14   see how any trial court could find there was a probability

15   it was wrong, and not just grant a motion for reargument or

16   reconsideration as opposed to a stay pending appeal.

17             But I suppose it happens, and Revel makes it clear

18   we don't need to go there.  You can get a ruling on

19   probability of success on the merits with maybe a plurality

20   of success on the merits or something below a 50 percent.

21   So, I'm happy to assume arguendo there's a likelihood of

22   success on the merits.

23             But where, I think, NextEra fails is the immediate

24   threat of irreparable harm which they have not established

25   either by the introduction of facts -- new facts or any kind

1   of evidence today nor by arguing the record as it exists.

2   It really comes down to whether money will flee the estate

3   before they have an opportunity to have their appellate

4   rights fully litigated on the merits of the appeal and then

5   possibly depending on the outcome of the appeal, the

6   underlying litigation which has been stayed, and that could

7   take some time.

8           But as we sit here today, we have a merger

9   transaction that is in front of the PUCT that has not been

10  approved by the PUCT.  I, meaning no pejorative statement

11  whatsoever in any connection with what is going on, has gone

12  on, or is going on in Austin and with the PUCT, I'm not

13  going to sit here today and make a prediction about whether

14  that transaction will be approved or not.

15          The PUCT will act according to the facts and law

16  in front of it, and I'm sure will do an excellent job and

17  will make the decision it makes.  It's particularly

18  difficult, perhaps, to figure it out or predict what might

19  happen in that we have two out of three commissioners who

20  are new to EFH, just like we've got children who are now in

21  preschool who weren't born when this case was filed, so, you

22  know, everybody's new.

23          So, it is what it is.  So, but I'm not willing to

24  predict that'll happen.  I don't think I can safely say

25  that'll happen and we won't even get to whether to confirm a

Page 49

1    plan or the details as they may evolve of the plan until

2    after the PUCT approves this transaction, the Sempra

3    transaction, if it does and when it does.  So, I think that

4    this is simply premature.

5            The rights in connection with confirmation of the

6    plan which is where the money will exit the estate that

7    might otherwise be payable to NextEra will be in the context

8    of a plan.  Or, God forbid, if we're years and years down

9    the road and still not there, it might sort of raise its

10   head again if the case starts to tinker or teeter on

11   administrative insolvency, but we're not there yet and

12   hopefully will never get close.

13           But -- so, a plan stands between NextEra and harm,

14   and all of NextEra's rights to object to that plan and to

15   argue for a reserve at that time or some other protection

16   that would have the effect of a reserve, are fully preserved

17   and having started a stay now, they certainly can't be

18   vulnerable to a objection in April, May, or June of this

19   year that they should've acted earlier.  They have sought

20   the stay and acted to protect their rights.

21           So, I just don't see this as a situation -- oh,

22   and I'm sorry.  And bottom line, we're talking about money.

23   There are no property rights other than the right to money.

24   There are no equitable rights involved here that might merit

25   or constitute irreparable harm.  We're just talking about

Page 50

1    money, and that money's not going anywhere until

2    confirmation so I don't think there is immediate irreparable

3    harm risk at this time.

4          We can deal with these issues and will deal with

5    these issues fully at the time of confirmation of a plan, if

6    we get there, assuming it's before the appeal process works

7    out in the Third Circuit.  I hope it will be before the

8    Third Circuit can act.  I hope we get this transaction

9    approved, the Semper transaction approved, soon.  I hope

10   that we're at confirmation in early spring, and if all that

11   happens we'll deal with these issues at that time.

12         I don't have to get into the other factors.  The

13   Third Circuit made that clear in Revel.  If you don't

14   satisfy the first two, you don't even need to talk about the

15   third and the fourth.  My only comment is with regard to

16   those, to sort of pay lip service if nothing else, with

17   balancing of the harms, I think it cuts both ways.  I -- you

18   know, there's a definite potential harm to creditors here

19   other than NextEra if I rule in NextEra's favor and there's

20   a harm to NextEra if I rule against them.  And not

21   irreparable, but I mean you could argue there's harm in

22   connection to NextEra.  So I think that's a wash.

23         The public interest -- certainly I think there's a

24   public interest in knowing the parameters of when you can

25   get a termination fee in a Chapter 11 case.  It's a common

1    aspect of sale cases.  Sale cases pervade this Court's

2    docket and other court's dockets and they are a fundamental

3    piece of the Chapter 11 practice that affects thousands of

4    creditors, billions of dollars, and many, many, many debtors

5    and buyers and employees.  So, it's important.

6          Whether that public interest supports a

7    injunction, I think, is a different issue.  But there's no

8    question the public interest favors a resolution of these

9    issues, and it'll be interesting to see what the Appellate

10   Courts do with this Court's ruling, hopefully finally on the

11   merits about whether O'Brien was satisfied or not.

12         I'm happy to be right, I'm happy to be wrong.  As

13   long as they don't fire me, everything's good, so I'm going

14   to deny the motion for the reasons set forth on the record.

15   The Court will enter an order.

16         MR. KIESELSTEIN:  Would you like an order, Your

17   Honor, from the parties, or is that not necessary?

18         THE COURT:  Unless anyone objects to just the one-

19   page order saying denied for the reasons set forth on the

20   record.  If you'd like something more specific, for the

21   District Court or the Third Circuit, I welcome the

22   submission.

23         MR. BUCHANAN:  I think the one-line order is fine.

24         THE COURT:  Okay.  Very good.

25         MR. KIESELSTEIN:  Fine with us as well.

Page 52

1              THE COURT:  All right.  Very good.  The Court will

2       enter an order.  Thank you.  We're adjourned.

3              MR. KIESELSTEIN:  Thank you.

4                         * * * * *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 53

1                              I N D E X

2

3                            RULINGS

4    DESCRIPTION                                PAGE        LINE

5

6    Stay Motion Denied                          45          7

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 54

```
1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5
     Sonya                        Digitally signed by Sonya Ledanski
                                  Hyde
6                                 DN: cn=Sonya Ledanski Hyde, o,
     Ledanski Hyde                ou, email=digital1@veritext.com,
                                  c=US
7                                 Date: 2017.12.12 12:46:24 -05'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 12, 2017
```

## &

**&**  3:3,8,18 4:7,12
5:1,11,22 6:1,6,13
10:24 13:4

## 1

**1**  2:7
**10**  15:20,23 16:12
16:16 17:4,4 24:6
**100**  17:9 20:25
**10:00**  9:19
**10:03**  1:15
**11**  1:5,14 2:6
50:25 51:3
**110**  20:20
**11501**  54:23
**11:29**  1:15
**12**  54:25
**12243**  2:10
**12262**  2:7
**1240**  2:2
**14-10979**  1:6
**16**  2:3,10
**16th**  15:13
**18th**  13:9
**19**  16:7
**19th**  16:2,4,16
17:9,14 19:10,23
20:7,10 21:3
33:12 43:20

## 2

**2**  34:13
**20**  2:7
**2014**  9:5
**2016**  20:7 33:12
**2017**  1:14 2:2,3,7
2:10 13:9 15:3,22
16:4,21 24:8
40:19 54:25
**21st**  11:2
**25th**  19:24 23:7,9
43:18

**275**  15:14 29:16
30:21 35:1

## 3

**3**  2:2
**3.3**  19:12
**300**  21:1 54:22
**330**  54:21
**3rd**  9:23

## 4

**45**  53:6
**4:00**  9:23

## 5

**50**  14:15,17 40:10
47:20
**503**  2:7

## 6

**60**  15:25 40:25

## 7

**7**  16:4 53:6
**70**  33:25
**72**  33:25 34:4,13
**75**  11:9
**77**  34:19
**7th**  15:3,22 16:21
20:10 24:8 40:19

## 8

**824**  1:12
**8th**  9:17 10:4,13
11:25 12:14

## 9

**90**  14:14
**90.7**  9:4

## a

**a.m.**  1:15,15
**ability**  9:12
**able**  8:14 28:16
**absent**  9:24
**absolutely**  17:12
19:25 20:3 21:9
32:3 36:3 44:8

**abundantly**  29:13
**abuse**  32:18 33:16
**abused**  32:12,14
**accede**  12:2
**accept**  9:1 23:24
**acceptable**  45:15
**accepted**  44:21
**accepting**  8:18
**accurate**  54:4
**acknowledged**
23:7
**acknowledges**
23:9
**act**  48:15 50:8
**acted**  49:19,20
**action**  9:25
**actual**  8:14 23:3
37:6,8,10,17
**add**  9:21 43:18
**addition**  8:13 25:9
38:7
**additional**  39:5
**adjourned**  52:2
**administered**  1:8
**administrative**
2:6 29:23 49:11
**admitted**  23:19
39:16
**advisory**  15:15
16:6 40:20
**affidavit**  21:12
**afforded**  30:12
**agenda**  9:21 12:20
12:20
**agent**  4:13
**agents**  18:23
**agree**  13:17 15:18
25:2 27:17,18
29:2 36:3,11
45:14
**agreed**  37:9,9
**agreement**  13:21
15:4 19:22 20:20

22:7,10,19 34:21
43:10
**agrees**  38:13
**al**  1:7 6:13
**alardi**  7:3
**alberino**  6:18
**alistar**  6:24
**allowed**  2:6 15:14
15:19
**allowing**  12:3
**alternative**  12:5
**alves**  6:19
**amer**  7:16
**analysis**  14:22
15:8,13 16:9
**analyzed**  23:15
**anderson**  4:12
**andrew**  4:4 13:5
**angelo**  7:15
**announcement**
8:10
**answer**  34:17
**anxiously**  30:5
**apologize**  9:18
10:19 42:7,24
**appeal**  2:10 12:23
13:13,15,23 25:4
25:9,24 26:20
30:2,24,25 32:10
33:20 35:9,14,15
36:11 37:20 39:1
44:15,21 45:8,11
46:18 47:16 48:4
48:5 50:6
**appeals**  39:5
**appellate**  25:14
41:16 47:1,11
48:3 51:9
**applicable**  32:9
**application**  33:15
**apply**  19:16 33:14
**appoint**  9:2,8

| | | | |
|---|---|---|---|
| **appointed** 9:2 12:6 | 34:18 43:2 | 29:11 | **branzburg** 4:22 |
| **appointment** 8:19 | **asking** 26:18 | **bartram** 6:21 | **braunhagey** 10:24 |
| **appreciate** 12:1 12:11 | **aspect** 51:1 | **based** 15:15 34:17 | **breakup** 33:12,16 |
| **appropriate** 13:25 25:22 31:5 | **asserted** 17:13 | **basically** 15:12 19:7 | 34:20,24 36:20,22 |
| **approval** 37:18 | **assign** 8:22 9:12 | **bayard** 5:6 | 36:24 37:3,23 |
| **approve** 21:2 33:16 36:21 45:18 46:17 | **assignment** 9:1 | **behalf** 12:19 13:3 13:6 27:16 38:2 | 45:17 |
| **approved** 24:10 36:20,24,24 46:1 46:9,13 48:10,14 50:9,9 | **assume** 46:24 47:21 | **beings** 27:7 | **brian** 3:11 38:1 |
| | **assuming** 43:19 50:6 | **believe** 11:2 13:10 13:11 24:16 25:2 25:5 | **brickley** 6:22 |
| | **ast** 4:18 | **believed** 19:20 22:9 | **brief** 12:20 15:1 33:23 40:4 41:12 41:23 42:1,25 |
| **approves** 49:2 | **attacked** 24:4,5 24:22 | **believes** 42:24 | **briefed** 41:7,8 42:2 |
| **approving** 45:17 | **attention** 33:25 | **beneficiaries** 34:25 | **briefing** 13:17 26:19 41:21 |
| **approximately** 11:9 | **attorneys** 3:4,9,14 3:19 4:2,8,13,18 4:23 5:2,7,12,18 5:23 6:2,7,13 | **benefit** 19:4 23:17 24:16 28:16,20 37:6,8,11,17 | **briefly** 39:25 40:4 40:11 |
| **april** 49:18 | **audio** 8:15 | **berger** 9:3,25 | **briefs** 13:20 32:24 41:5 |
| **arguably** 37:12 | **austin** 30:5 48:12 | **best** 21:7 32:8 33:20 35:7 | **bright** 42:18 |
| **argue** 13:8 25:12 30:10 33:5,13 49:15 50:21 | **authority** 9:7 | **better** 30:15 37:4 40:8 46:11 | **bring** 18:18 21:1 26:9 |
| **argued** 33:22 37:7 38:24 42:4 44:1 | **authorization** 10:21 | **beyond** 39:11 | **bryan** 5:14 |
| **arguendo** 46:24 47:21 | **available** 8:12 | **bid** 20:25 37:13 | **buchanan** 3:21 12:24 13:1,3,3 17:16,19,23,25 18:5 27:13,14,17 27:23 29:24 32:16 34:15 36:10 39:24 39:25 40:3 41:14 41:17,22 44:22,24 45:1 51:23 |
| | **avenue** 28:22 | **bidders** 27:7 | |
| **arguing** 30:1 48:1 | **awaiting** 30:5 | **bidding** 37:12,14 | |
| **argument** 13:7 16:11 20:5,13 21:12 27:9 32:16 32:17,19,21 33:1 41:5,8,20,25 42:8 42:12,25 | **aware** 14:6 27:25 35:13 46:8 | **bielli** 5:22 | |
| | **b** | **big** 31:23 | |
| | **b** 1:21 2:7 7:4 | **billions** 51:4 | |
| | **back** 9:5 16:2 24:7 25:13 29:25 36:6,16 39:3,3 43:14 | **bit** 29:12 | |
| | | **black's** 18:5 | |
| **arguments** 30:16 31:16 33:21 41:4 41:10,15 45:6 | **background** 31:7 | **block** 20:23 | |
| | **backs** 31:17 | **boat** 42:23 | **buchanan's** 28:7 |
| **arlene** 6:19 | **balance** 26:18,22 26:23 | **bond** 25:11 | **burden** 30:14 |
| **ashley** 6:21 | **balancing** 24:21 50:17 | **borden** 10:24 | **buyer's** 28:9 |
| **ashuraey** 6:20 | **bank** 4:23 | **born** 48:21 | **buyers** 51:5 |
| **asked** 14:5 16:11 17:15 22:8 34:10 | **bankruptcy** 1:1 1:11,23 21:7 25:4 | **bottom** 11:10 29:9 49:22 | **c** |
| | | **brady** 7:18 | **c** 3:1 7:18 8:1,2 54:1,1 |
| | | | **calendar** 9:18 |
| | | | **call** 28:17 39:3 |

candidly 38:9 39:16
can't 36:12 40:22 40:23 41:3,10 42:14 49:17
care 17:18,19,21 18:20
carter 6:23
case 1:6 11:8 17:17 30:23 31:6 31:7 44:5 48:21 49:10 50:25
cases 14:16 30:21 40:6 44:7 51:1,1
casey 5:20
catch 46:13
caught 46:11,13
caused 43:7,23
cede 12:9
cents 11:9
certain 30:11 35:11 36:5
certainly 9:14 11:25 23:6,16,25 38:17 39:6,10 49:17 50:23
certified 54:3
challenged 19:6 37:16
chan 6:24
chance 14:14,17 25:16 26:10 40:7 42:15
chances 37:19
change 15:21
chapter 1:5 50:25 51:3
charles 7:13
chase 14:1 26:15
children 48:20
christmas 11:19
christopher 1:22 6:23

circuit 13:18 15:7 16:5 27:20 36:14 36:23 39:1 44:20 46:19 50:7,8,13 51:21
circumstances 16:6 36:5,25 38:19
cited 9:7 14:16 18:5 30:22
cites 18:12
claim 2:6 29:23
claimed 19:7
clairvoyant 34:16
clarified 46:19
clarify 43:21
claw 29:25 31:17
clear 14:16 17:12 18:10,13 20:1,3 21:9 22:5,17,23 23:4,10,12 27:19 29:13 32:12,14 33:15 34:7 35:5 35:20 36:25 37:22 42:8,21 43:6 45:10 47:9,17 50:13
cleared 23:9
clearer 34:17
clearly 20:23 26:23 31:23
clerk 8:3
clerks 46:25
client 21:8
client's 11:10
close 26:21 29:3 49:12
closed 20:5,6,7
closing 20:18 45:12
cm 8:12
cobb 4:7

cody 6:25
combination 46:4
come 19:9,9,15,18 21:12 24:3 25:13 30:6 31:4,17 38:15 43:21 45:3
comes 33:8,23 36:7 48:2
coming 11:5 12:10 36:22
comment 8:17 45:2,9 50:15
comments 10:6,8 12:1 38:7
commissioners 48:19
committee 3:4,9 8:19,20,21,23 9:3 9:4,6,7,9,11 10:1 10:2,18,18 11:5 12:6 38:3,12
committee's 39:8
common 50:25
compete 20:22,24 23:25 24:19
complied 40:20
concedes 36:4
conceivable 30:17
conceive 41:20
concern 39:8
concerns 36:20
concession 34:8
concessions 24:18
condition 14:24 37:2
conditional 37:15
conditions 45:12 45:12
confirm 31:18 48:25
confirmation 13:11,22 24:24 25:18 26:6 30:4,7

30:11 36:12,17 38:13,17 39:11,22 49:5 50:2,5,10
confirmed 13:12 29:18 30:20,25 31:1
confused 28:22 43:2
confusing 21:10 34:6 35:7
confusion 28:22
connection 39:21 41:8 48:11 49:5 50:22
consider 16:22 17:2 20:16,17 23:8 26:10 37:1 39:17 41:4,19
considered 16:17 16:18 21:17 24:4 42:12
considering 14:12 25:23,23 27:22
consortium 8:24
constituency 9:9
constituent 8:22
constitute 49:25
constitutes 11:15
constitutional 15:9 16:2 32:19 32:25 40:12,13,25 41:3 42:4
construction 11:8
consummate 31:1 31:9
consummated 29:18 30:20 47:7
context 29:17,20 29:21 45:23 49:7
continue 25:12
contradictory 45:24

contrary 32:1
conveniently
  19:11
convinced 32:3
corp 1:7 5:23
correction 10:15
corresponding
  13:12
corroon 4:12
corrupt 21:19
  22:14,16,24
corrupted 21:11
corruption 18:14
  19:1 43:7,13
could've 41:6,8
counsel 10:11
  19:24 38:8,23
  39:4
country 21:7
  54:21
couple 11:18
course 15:25
  39:21 45:15 46:2
court 1:1,11 8:4,7
  8:10,12 9:25 10:7
  10:11,16,19,22,25
  11:2,15 12:11,17
  12:25 13:2 14:6
  14:22,23,25 15:6
  15:8,12,18,19,20
  16:5,8,11,16,18
  16:22,24,24 17:2
  17:3,7,13,15,17
  17:21,24 18:1,4,5
  18:12,15,15,16,20
  19:3,5,25 20:4,9
  20:12,17 21:10
  22:4,15,18,22
  23:1,7,10,14,18
  25:4,21 26:2,9,9
  27:12,13 28:6,23
  29:10,11 31:19
  32:4,20,23 33:3

34:10,16 36:15,21
  36:25 37:24 39:23
  40:2,15,16,18,22
  41:2,4,11,15,16
  41:18,24 42:6,17
  42:20,24 43:2,2
  43:11,14,16,17,21
  44:6,7,8,9,10,14
  44:20,23 45:1,2,5
  45:7,20 47:11,13
  47:14 51:15,18,21
  51:24 52:1,1
court's 12:4 13:9
  14:21 16:20 20:15
  24:7 25:18
courtroom 33:7
  34:2
courts 51:10
court's 42:10
  44:12,19 47:2
  51:1,2,10
creditor 8:25 11:6
  26:11 38:4
creditors 8:18,21
  9:8,10 13:13 19:4
  21:2 23:16 25:10
  25:20 28:15,17
  29:17,20 37:21
  38:3,25 39:9,13
  40:15 50:18 51:4
cromwell 3:8 38:2
crucial 42:14
css 1:6
cuts 50:17

|   d   |
| --- |

d 8:1,2 53:1
d.i 2:2
d.i. 2:7,10
daniel 6:9,15
date 9:21 17:12
  18:17,25 19:20
  21:21,22,23,25
  22:2,6,6,8,9,16

23:11,11 28:25
  30:4,7 43:9,11
  46:4,5 54:25
daucher 13:5
david 5:25
day 33:7
de 33:13
deal 13:11 20:2,11
  20:18 23:6,20,23
  23:24 24:10 25:3
  27:3,3,8,8 31:23
  35:16 36:17 37:15
  42:14,22 45:14,20
  46:9 47:7 50:4,4
  50:11
dealing 14:3
dealt 40:15
debtor 15:4 16:15
  20:11 21:14 22:4
  24:9 25:10,20
  26:12 31:1 34:12
  40:15 43:8 45:25
debtors 1:8 2:1
  5:12 6:7 12:19
  27:16 34:7 35:4
  46:6 51:4
deceived 43:16
december 1:14
  11:3 54:25
deception 43:13
decided 40:24
  41:1
decision 15:10
  25:14 26:21 27:10
  40:24 42:21 45:10
  46:15,20 47:2
  48:17
declaratory 25:15
deems 31:5
defendant 18:7
deference 28:24
deferred 31:15

definite 50:18
definition 18:6
defranceshi 6:9
degree 28:24 40:6
delaware 1:2,13
  19:13
delay 38:25 39:10
  47:4
denied 19:21
  31:14,15 51:19
  53:6
deny 45:7 51:14
department 5:17
depending 48:5
description 53:4
designate 8:25
  9:13
designated 9:20
details 49:1
devoid 46:3
dictionary 18:6
didn't 34:2,3
  42:13,23 43:11,15
  43:19 45:22 46:13
differ 47:10
difference 11:18
different 19:6,8
  30:12 51:7
difficult 14:2
  26:15 48:18
difficulties 29:1
dig 31:7
dip 4:13
direct 13:15 25:24
  26:20 33:24 44:21
directly 8:15
  11:10
disagree 28:13
disallowed 25:19
  29:22
discretion 32:12
  32:14,18 33:16

**discuss** 9:15,23
25:18
**discussed** 10:3
21:7
**discussion** 10:12
46:3
**disingenuous** 28:2
**disputed** 29:22
**distributed** 13:12
13:22 39:4
**distribution** 31:9
**distributions** 39:9
**district** 1:2 29:10
51:21
**docket** 51:2
**dockets** 51:2
**document** 21:22
**doing** 16:8
**dollar** 11:9 29:15
**dollars** 51:4
**don't** 36:16 39:18
42:15 43:5 47:13
47:13,18 48:24
49:21 50:2,12,13
50:14 51:13
**door** 29:19 31:2
**doubts** 9:6
**dowcher** 4:5
**download** 8:14
**dropped** 37:8
**dropping** 23:24
**due** 39:21

**e**

**e** 1:21,21 3:1,1,4,9
7:13 8:1,1,2,2
10:18 38:2 53:1
54:1
**earlier** 25:1 45:10
46:15 49:19
**early** 50:10
**ecf** 8:12
**ecro** 1:25

**edmonson** 3:16
**effect** 49:16
**effectively** 15:19
38:11,20,20
**effectuate** 35:22
**effectuating** 35:18
35:21
**efh** 2:5 4:18 5:23
8:19 9:19 48:20
**efih** 4:13 6:2
**eight** 19:6,7
**either** 14:24 27:20
30:13 47:25
**eliminated** 16:9
**elimination** 34:5
**elliott** 5:2,7 8:24
11:6 12:6 14:21
15:1,13,19,24
16:9,11 17:8
19:11 20:5 24:25
27:6
**elliot's** 41:23
**ellis** 5:11
**emphasize** 34:7
**employees** 51:5
**energy** 1:6
**enforcing** 2:2
**enter** 51:15 52:2
**entered** 28:4
**entire** 22:23
**entitled** 29:23
**entry** 2:1
**equal** 24:12
**equitable** 17:2
49:24
**eric** 4:5 13:5
**erik** 7:10
**erin** 5:9
**erroneous** 32:14
**error** 32:4,12
33:15
**especially** 11:18

**essence** 31:9
**essentially** 15:21
15:23,23 16:8
21:10
**established** 47:24
**estate** 24:16 37:17
48:2 49:6
**estates** 29:16
**estoppel** 17:3
**et** 1:7 6:13
**ethical** 19:7,16,19
43:20
**events** 30:5,6
**everybody** 16:15
18:21 21:3 22:25
34:1 35:11
**everybody's**
48:22
**everything's**
51:13
**evidence** 21:20
34:23 48:1
**evolve** 49:1
**exact** 31:16 41:12
**exactly** 23:22
**examples** 8:2
**excellent** 48:16
**exchange** 11:7
**exists** 48:1
**exit** 49:6
**expect** 41:12
**expediency** 11:4
**expedited** 13:17
25:24 26:19 39:1
**expense** 2:6 37:1
37:4
**explain** 45:8
**explained** 21:8
**express** 33:24
**expressed** 34:10
**extraordinary**
31:23,24 44:11,11

**extremely** 32:6
42:18

**f**

**f** 1:21 6:21 7:5
54:1
**fact** 10:18 16:10
26:2 27:3 30:19
32:4 34:17 35:5
36:4,5 39:16
43:12 44:6,15
46:5
**factors** 14:6,7,7
20:16,17 24:12,20
27:18,19,21,22
42:6 46:18,20
50:12
**facts** 17:14 18:8
21:14,16 31:7
33:5,19 35:11
38:16 41:21 44:11
46:8 47:25,25
48:15
**factual** 10:14
20:10 32:13,15
33:14 46:14
**fahy** 6:13
**failed** 45:11
**fails** 47:23
**failure** 34:17
**fair** 29:21 41:19
42:13 45:21 47:12
**faith** 23:21 27:2
**far** 26:5 28:15
**favor** 26:23 50:19
**favors** 51:8
**fay** 5:9
**fee** 8:19,23 9:3,4,6
9:9 10:1,2 11:5
12:6 15:14 17:11
18:25 19:21 20:1
20:20,20 22:7
23:5,16,17,20,20
24:3 25:19 33:12

33:16 34:5,8,22
34:24 35:14,18,22
36:20,24,24 37:3
37:18 40:20 43:22
45:17 46:6 47:7
50:25
**fees** 34:20 36:22
37:23
**fencle** 6:13
**figure** 13:23 48:18
**file** 11:1 12:5 26:7
35:21
**filed** 2:3,7,10 8:17
9:23 10:9,11,24
15:24 21:2 25:1
35:20 47:4,4
48:21
**final** 14:23,24
23:13 24:5,15
25:14
**finally** 33:10 37:5
43:1 51:10
**find** 15:7 16:5,25
20:13 22:6 47:14
**finding** 14:21
15:22 16:20 24:7
47:2,3
**findings** 32:13,15
**finds** 26:2
**fine** 12:11 45:16
51:23,25
**finger** 6:6
**fink** 3:6
**finova** 31:6
**fire** 51:13
**firestein** 7:1
**firm** 30:4
**first** 4:13 8:10
27:21,23 29:8
31:22 32:9,18
37:7 41:22 42:9
45:9 50:14

**five** 21:3
**flee** 48:2
**flip** 27:24
**flipping** 32:23
**floor** 37:10
**florczak** 7:2
**flows** 25:3
**focus** 14:20 27:23
**focused** 45:16
46:12
**following** 35:13
**forbid** 49:8
**foregoing** 54:3
**formal** 8:14
**forth** 35:4 51:14
51:19
**forward** 12:21
18:19 19:9,10,15
19:19 20:5 21:12
23:19,23 30:3
**found** 14:23 15:12
21:10 23:1 32:11
35:6,6 40:16
**four** 12:12 14:7
26:22
**fourth** 27:22
41:11 50:15
**frankly** 17:18
28:5 30:14 41:18
**friday** 8:17
**front** 29:4 48:9,16
**fruitful** 28:22
**full** 11:12 28:12
29:21 31:16 45:19
**fully** 42:2 48:4
49:16 50:5
**fund** 14:4
**fundamental** 51:2
**funds** 13:12,22
14:3 26:15 39:3
**further** 9:25
31:10 39:24 45:2

**future** 1:6

**g**

**g** 7:3 8:1,2
**galardi** 5:4 31:20
31:21 32:21,25
37:24 38:8
**gallery** 17:22
**gates** 23:25
**gee** 43:15
**general** 19:24
**getting** 11:9 28:21
33:20
**give** 12:9 26:9
28:24 30:8
**given** 12:4
**gives** 9:11 32:17
**gluckstein** 3:11
**glueckstein** 37:25
38:1,2 39:24
**go** 23:23 25:14
28:23 29:10 31:2
36:14,15 42:5
47:18
**goalposts** 15:21
**god** 49:8
**goes** 9:5 14:3 16:1
30:3 34:14 40:10
**going** 11:17,18
12:21 14:4 19:4
20:12 26:2 28:6
28:18 29:6,7,16
31:2,11 32:5
33:19 36:1,23
37:2 38:4 39:17
41:18 45:7 48:11
48:12,13 50:1
51:13
**good** 8:4,5 12:18
13:1,2 15:6 23:20
27:2,15 38:1
51:13,24 52:1
**goodness** 9:19

**grant** 47:15
**granting** 38:19
46:15
**grass** 19:9
**gray** 5:1
**great** 29:4 42:19
**gregg** 5:4 7:3
**guess** 12:3 30:9
**guilty** 18:8,9,10

**h**

**h** 6:4
**hagey** 10:23,24
12:2,16
**hal** 7:5
**half** 11:16
**hand** 39:2
**hands** 19:8
**happen** 45:22,25
48:19,24,25
**happened** 20:11
46:2
**happening** 30:19
**happens** 47:17
50:11
**happy** 9:14 11:12
12:2 46:23 47:21
51:12,12
**harder** 11:20
**harding** 3:22 13:4
**hardships** 24:21
26:18,23,23
**harm** 29:13,15
30:18,19,24 31:14
36:1,2,4 37:20
38:4,17,24 39:12
39:15 46:21 47:24
49:13,25 50:3,18
50:20,21
**harms** 37:21
50:17
**harrison** 4:22 7:4
**harvey** 4:22

head 49:10
heads 12:10
hear 13:18
heard 10:23 13:19
  38:8 39:15
hearing 2:1,5,9
  9:17,17 11:2,12
  11:21,22,23 13:7
  18:23 21:5 25:11
  26:6 37:7 43:20
  43:23 45:20 46:3
hedge 14:3 26:15
heizmann 6:13
help 15:12
helpful 41:4
helpfully 46:19
higher 37:4
highly 25:7 28:5
  35:9
hindsight 23:1,15
  24:1 43:11
hits 11:10
hmm 18:4
hogan 6:12,15
hold 10:6
holder 29:22
holdings 1:6
holiday 12:3
holidays 11:19,19
  11:20
hon 1:22
honor 8:5 10:5,15
  10:23 11:13 12:9
  12:16,19,22 13:1
  21:15 27:14,15,17
  27:25 28:3,9,11
  28:19 31:17,21,22
  32:2,10,11 33:1,3
  33:8,9,11,19,23
  34:1,3,14,20,24
  35:3,6,6,10,12,13
  35:19,22,24 36:2
  36:9,16,19 37:5

38:1,3,5,9,11,16
38:19,22,23 39:14
39:19,20,25 41:22
42:23 44:22,25
51:17
honor's 11:11
honor's 39:17
hope 45:9 47:9
  50:7,8,9
hopefully 30:6
  31:17 49:12 51:10
hours 28:18,18
hundreds 33:7
hunt 45:11
huston 6:4
hyde 2:25 54:3,8
hypothetical
  15:16 16:6

i

idea 24:1 27:1
identify 34:16
ignore 35:11
illegally 16:23
immediate 36:2
  37:20 47:23 50:2
imminent 26:4,5
  36:4
impact 23:15
  28:13 30:21
impacted 27:7
implication 33:24
  34:7
import 28:12
important 8:16
  12:8 25:6 27:4
  51:5
importantly 33:1
imposed 44:12
  45:12,12
inability 39:3
incentivize 23:23
incentivized
  20:23 23:23 24:18

including 17:9
incomplete 34:6
incorporated
  41:25
incorrect 16:23
increased 20:25
  21:1 37:9
increasing 37:13
  37:13
indenture 2:5
  4:18,23
indicate 17:6
indication 12:5
indications 11:22
indiscernible
  17:11 22:8 23:6
  25:21 34:23 36:14
  44:19
indisputable
  18:13 22:13
indisputably 43:6
induced 37:12
information 11:7
  13:15
initial 9:11
injunction 51:7
injury 14:8 24:21
  24:23 44:1
injustice 18:3,6
  21:18,19 22:12
  43:4
insolvency 49:11
intended 11:1
intentions 35:8
interest 24:2,21
  26:25 27:5 34:11
  36:19 37:22 50:23
  50:24 51:6,8
interested 11:6,12
  45:22
interesting 51:9
interlocutory
  14:23,25 35:17,23

47:3
internally 46:25
interrogatory
  35:23
introduction
  47:25
investors 14:3
  26:15
involuntarily 18:7
  18:9
involved 18:22
  22:11,12 49:24
irrelevant 33:6
  42:9
irreparable 14:8
  24:20,23 26:3
  29:13,15 30:18,24
  31:14 36:1,2,4
  37:20 38:17 44:1
  46:21 47:24 49:25
  50:2,21
issue 13:16 15:5,9
  15:16,22,24 16:3
  20:6,8 21:16 22:7
  22:14,18,21,24
  23:2,10,11,13
  31:25 35:12,17
  36:6,7,10,17,18
  38:4,12,13,15,21
  39:7,14,17,21
  40:11,13,16,19
  41:1,3 42:1,14,20
  42:22 43:1,8,22
  44:3,5 45:25
  46:17 51:7
issued 16:1,5
issues 12:7 17:1
  21:8,9,13 24:14
  28:19 35:25 41:12
  44:10 50:4,5,11
  51:9
it'll 26:14

**item** 12:20,21
**it'll** 51:9
**it's** 34:1 36:13
  38:11 40:13 41:4
  42:2,7 43:3,14,15
  44:3,6,10 45:21
  45:21 47:3,12
  48:17 50:6,25
  51:5
**i'll** 40:4 45:8
**i'm** 41:18 42:19
  47:21 48:12,16,23
  49:22 51:12,12,13
**i've** 36:19 42:6
  44:1 46:25

**j**

**j** 6:9
**jamie** 3:16
**january** 9:17
**jason** 6:10
**joanna** 7:8
**job** 46:11 48:16
**john** 3:22 13:4
**joined** 13:16
**jointly** 1:8
**jones** 6:13
**joseph** 6:4 7:2
**jr** 6:4
**judge** 1:23 21:24
  21:24 29:4 40:3
  42:16,18,19
**judges** 15:7
**judgment** 25:15
**july** 15:3,22 16:4
  16:21 20:10 24:8
  40:19
**june** 49:18
**justice** 5:17

**k**

**k** 6:15
**keep** 11:25
**keith** 7:19

**key** 21:23 46:14
  46:20
**kieselstein** 5:15
  8:5,9 10:5,14,17
  10:20 12:18,19
  27:15,16 29:6
  31:19 36:3 38:8
  51:16,25 52:3
**kim** 9:3
**kind** 28:10 38:14
  38:24 47:25
**kirkland** 5:11
**klauder** 5:22,25
**klehr** 4:22
**knew** 16:9,14,19
  16:19 17:8,9,11
  18:24 22:1,18
  23:22
**know** 10:11 11:19
  12:7 17:1,7,8,14
  18:17 21:25 22:4
  22:21,25 26:6,20
  26:21 27:1,12
  28:10 34:3 38:24
  42:7,11,17,18
  43:15 44:15,16
  46:18 47:1 48:22
  50:18
**knowing** 50:24
**known** 16:10 22:4
  33:24 34:1
**knows** 15:8 24:6
  34:2
**kravitz** 10:1

**l**

**l** 6:18,23
**lack** 28:14 31:13
  46:4,5
**laid** 28:12
**land** 29:16
**landis** 4:7 13:6
**language** 15:1

**largest** 24:17
**late** 24:25 26:8
**law** 18:5 20:14
  27:19 32:4 48:15
**lawyer** 17:13
  18:24 19:14 29:5
**lawyers** 16:11
  17:9,21,23 18:21
  18:23 19:14,16,18
  21:6,7 22:3 23:21
  27:3 28:15,17
  33:7
**laying** 27:18
**layton** 6:6
**leads** 32:17
**learned** 36:23
**leave** 29:16 31:11
**led** 43:17 46:7
**ledanski** 2:25 54:3
  54:8
**lee** 6:1
**legal** 21:16 30:12
  33:13 54:20
**lemisch** 4:25
**lesson** 36:22
**letter** 19:25,25
  23:8 43:18,24
**level** 40:9
**liberties** 33:2
**lien** 4:13
**likelihood** 14:7,10
  14:12,19 29:1
  32:7 33:19 35:8
  35:24 40:5 46:21
  46:22,24 47:21
**linda** 5:20
**line** 11:10 29:9
  49:22 51:23 53:4
**lip** 50:16
**liquidation** 31:8
**litigants** 34:15
  35:3

**litigant's** 34:17
**litigate** 25:15
**litigated** 48:4
**litigation** 24:11
  48:6
**little** 29:12
**llp** 3:3,13,18 4:7
  4:12,22 5:1,11
**long** 16:10,18
  17:5,6 26:19
  44:15 51:13
**longer** 10:2
**longwinded** 28:2
**look** 16:1 22:21
  22:22,23 23:3,3
  23:18 24:23 25:17
  25:22 27:6,7 28:6
  33:18,21 35:12
  43:4
**looked** 17:3 19:16
  23:15 34:21
**looks** 42:16 43:14
**lose** 44:15
**lot** 12:7 27:21
  33:2
**luck** 26:14

**m**

**m** 6:10 7:3,12
**madron** 6:10
**maintain** 13:24
**maintaining** 25:5
**majority** 8:18,25
  9:10 11:6
**making** 31:9
  32:19 45:22
**manifest** 18:2,6
  21:17,18 22:12
  32:4 43:4
**manifestly** 18:13
**marc** 5:15
**mark** 3:6 6:25 8:5
  12:18 27:16

[market - objections]

market  1:12
match  20:21,21
  23:24
matching  37:8
material  31:25
matt  13:6
matter  9:20 11:24
  14:25 20:10 25:12
  25:25 30:19 36:5
  42:21
matters  11:5,24
  43:3
matthew  4:10
mccracken  3:3
mcdaniel  6:12
mcguire  4:10 13:6
mcneill  4:15
mean  10:8 24:11
  40:18 43:10 50:21
meaning  48:10
means  31:24
mechanic  29:19
mechanism  26:12
  30:1
mechanisms
  29:24
meet  14:9,18
  19:19
megan  7:17
member  9:8,25
  10:2
mentioned  34:24
mercifully  12:20
merely  40:20
merger  15:4
  17:10 19:22 20:20
  22:7,19 43:10
  45:15,18 46:1
  48:8
merit  49:24
merits  14:8,11,13
  14:18,19,20 23:13
  24:15 28:3 29:7

31:25 33:10 40:5
  42:16 43:25 46:21
  46:23,25 47:19,20
  47:22 48:4 51:11
met  45:13
michael  7:1,7
million  15:15
  20:21,25 21:1
  29:16 30:21 35:1
mind  28:4,25 32:3
minds  47:10
mineola  54:23
misleading  35:1,7
misled  21:14
missed  42:20,23
  43:19
mistake  10:22
mm  18:4
moment  27:10
  31:10
money  14:1,3
  24:10 25:3,7,16
  26:13 29:19 31:2
  31:11 36:6 48:2
  49:6,22,23 50:1
money's  50:1
monies  14:5 39:3
montgomery  3:3
month  17:4
months  13:25
  15:20,23 16:12,16
  17:4 24:6 25:25
  26:22 36:8
moot  25:25
mooted  35:15
morning  8:4,5
  12:18 13:1,2
  27:15 38:1,7
morris  7:5
moss  7:6
motion  2:1,5,9
  11:1 12:5,22,24
  13:8 14:21 15:2

21:2 25:1 27:9
  28:1 31:14 32:11
  35:21 39:19 41:6
  41:9,24 42:1 45:7
  46:15,23 47:15
  51:14 53:6
moved  11:14
moving  17:19
  18:1 25:24
muster  40:25

## n

n  3:1 6:20 8:1,2
  53:1 54:1
n.a.  4:23
nacif  7:14
named  9:3
nature  9:22 35:18
near  29:15
nearer  31:10
necessary  51:17
ned  7:11
need  12:12 14:17
  26:1 30:16 38:10
  39:18 40:8 47:18
  50:14
needs  22:14 42:12
negligible  14:15
  29:2,3 32:8 33:20
  35:25 37:19 40:8
  47:12
negotiated  20:19
  23:20
negotiating  27:2
negotiations
  20:18
neither  29:25 34:6
neumeister  7:7
never  16:12,17,18
  22:8 25:7 32:21
  34:10 37:10,10
  49:12
new  47:25 48:20
  48:22

newdeck  7:8
nextera  3:19 4:2,8
  12:8 13:4,6 14:1
  16:15 17:11 18:18
  18:25 19:5,13,21
  19:24 20:2,19
  21:13 22:3 23:5
  27:25 29:22 30:2
  30:9,18,22 31:4
  33:2,22 34:5 35:4
  35:16 36:4 38:9
  38:18 39:16 43:7
  43:19 45:23 47:23
  49:7,13 50:19,20
  50:22
nextera's  2:9
  12:22 19:6
nextera's  49:14
  50:19
nixon  4:17
noah  7:12 10:24
nominate  8:23
north  1:12
norton  4:1 13:5
notice  8:18 10:24
  12:13,14 30:8
november  2:3,7
  2:10
novo  33:13
nuances  46:8
number  11:5
  24:11 37:13
ny  54:23

## o

o  1:21 8:1,2 54:1
o'brien  15:14 22:1
  23:14 24:15 27:4
  33:11,14
object  21:4 49:14
objected  21:4
objection  49:18
objections  21:4
  30:15

[objective - preliminary]

**objective** 18:16
43:3 46:10
**objects** 51:18
**obligation** 18:18
43:21
**obligations** 19:7
**obvious** 18:13,21
22:9,13,24 45:21
**obviously** 14:22
18:22 20:8,19
28:11 36:7 42:18
43:6,11
**occurred** 27:8
**october** 2:2 13:9
**offer** 24:17
**official** 8:20,21
9:3,7
**oh** 9:18 10:19
36:11 49:21
**okay** 8:7 10:22
12:16,25 17:4
27:14 44:23 51:24
**old** 37:3 54:21
**once** 25:12 26:14
29:5 39:4
**open** 20:22
**opened** 23:25
24:18
**opening** 33:23
**openminded** 9:13
9:14
**opens** 20:15
**operator** 1:25
**opinion** 15:15
16:6 19:6 21:24
23:8 40:21 41:25
42:10
**opportunity**
29:22 31:16 41:12
41:19 48:3
**oppose** 25:20 36:8
44:17

**opposed** 11:24
28:1 44:3 47:16
**opposing** 24:22
25:10 26:11
**opposition** 38:4
**oral** 16:10
**order** 2:2,2,10 9:5
9:6 10:10 12:23
13:9 14:8,18 15:9
15:10 16:1,17
27:9 28:4 32:2,5
40:24 45:13 51:15
51:16,19,23 52:2
**original** 20:20
**outcome** 34:11
48:5
**outlined** 42:6
**overcome** 32:5
**o'brien** 40:20
47:8 51:11

**p**

**p** 3:1,1 8:1,2
**p.a.** 6:6
**page** 22:7 42:5
51:19 53:4
**paloma** 8:24 12:6
**paper** 11:13
**papers** 31:22
39:12
**paragraph** 34:13
34:19
**paragraphs** 33:25
**parameters** 50:24
**part** 37:3,4
**participate** 11:7
**particular** 28:25
**particularly** 14:2
25:23 26:7 48:17
**parties** 11:12
13:10,16,21 17:8
17:17 20:22,24
22:12 24:22,22
25:2,9,10,20

26:11 27:1,2 30:9
36:11 38:14,21
45:15 51:17
**parties'** 35:7
**partners** 8:24
**party** 16:14 17:20
18:1
**pass** 27:4 30:6
31:4 40:24,25
**pay** 23:17 50:16
**payable** 34:8
45:18 46:6 47:7
49:7
**payment** 2:5
**peabody** 4:17
**pedone** 4:20 7:9
**peg** 6:22
**pejorative** 48:10
**pending** 2:10
12:23 30:24,25
45:7 46:18 47:16
**people** 10:10
11:20 12:3 22:11
23:25 24:3 28:13
36:21
**percent** 14:14,15
14:17 40:10 47:20
**period** 17:4 39:11
45:18
**permission** 12:14
**permutations**
28:19
**person** 9:2
**perspective** 39:7,8
**pervade** 51:1
**peter** 7:20
**phone** 10:12
28:17
**pick** 28:16
**picture** 35:5
**piece** 51:3
**pimco** 3:14

**place** 13:25 29:8
44:18
**plan** 13:11,23
24:24 29:18 30:20
30:25,25 31:8,18
49:1,1,6,8,13,14
50:5
**pleading** 18:10
**pleads** 18:8
**please** 8:4 45:5
**pled** 18:9
**plurality** 47:19
**pockets** 29:17
**podium** 12:9,24
**point** 11:11 12:4
15:21,25 19:3
21:23 23:13 24:7
24:15 30:22 35:19
37:21 38:6,23
39:12 44:20 46:14
**pointed** 26:25
30:23 35:15 38:18
40:15
**points** 19:11
27:11 39:4
**position** 24:23
26:3 41:13
**positioned** 30:15
30:6
**positively** 30:6
**possibly** 48:5
**potential** 39:3
50:18
**potter** 4:12
**power** 8:23 9:1
**practice** 51:3
**precisely** 39:7
**predict** 48:18,24
**prediction** 48:13
**prefer** 10:5,7
**prejudge** 38:12,20
**prejudice** 38:20
**preliminary** 10:8
11:22 12:4 45:9

[premature - representative]

Page 11

| | | | |
|---|---|---|---|
| premature 24:24 24:25 49:4 | property 49:23 | **r** | 33:2,4,5 34:9 35:6 35:12 43:4,5,6,7 |
| preschool 48:21 | prospect 29:14 | r 1:21 3:1 4:15 | 43:16 45:24 46:3 |
| present 6:17 10:11,13 18:24 19:2,17 | protect 13:25 26:13 31:5 49:20 | 6:19 8:1,2 54:1 | 48:1 51:14,20 54:4 |
| | protection 49:15 | raise 31:16 41:20 42:13 49:9 | recorded 8:13 |
| presentation 33:9 | protections 30:11 30:16 | raised 35:25 42:1 | recordings 8:11 8:15 |
| presented 38:16 44:10 45:20 | prove 14:14,17 | ranked 21:6 | reference 34:4 |
| presenting 34:23 | provision 9:10 14:18 18:2 19:14 33:4,24 | rath 4:7 | refers 18:7 |
| preserve 41:16 44:17 | | ray 4:25 | refuses 23:8 |
| preserved 49:16 | provisions 19:16 | reach 38:5 | regard 14:20 21:16 22:18 40:5 |
| pretend 33:12 | public 24:2,21 26:25 27:4 36:19 37:22 50:23,24 51:6,8 | read 8:20 13:20 36:19 40:4 | 41:24 46:22 47:2 47:6 50:15 |
| prevail 24:15 32:7 43:25 | | ready 31:1 | regarding 12:8 |
| prevailing 35:8 | | reality 46:12 | regardless 35:7 |
| preview 39:6 | puct 17:10 19:1 19:21 20:1 22:19 23:5 34:11 43:22 45:13,13,18 46:1 48:9,10,12,15 49:2 | realize 43:22 | reimbursement 37:1,4 |
| price 37:9 | | really 11:23,25 26:17 27:6,10 28:10 31:14 33:8 38:6,11,25 42:23 48:2 | reject 20:14 22:19 |
| primarily 38:4 | | | rejected 17:10 19:1 20:1 34:11 |
| primary 14:7 | | | relating 45:25 |
| principal 18:24 | | reargument 47:15 | relevant 28:5 |
| principals 18:22 23:21 | purchaser 24:17 | reason 11:4 17:6 26:7 | relied 14:25 |
| prior 13:13,23 20:18 27:8 | purported 9:2 10:20 | reasonable 28:13 40:7 47:10 | relief 31:5 |
| probability 15:6 16:24 40:7 43:25 44:5,9,13 47:14 47:19 | purports 8:22 | reasons 51:14,19 | rely 9:4 42:6 |
| | purpose 46:23 | recall 35:19 | remarks 28:7 |
| | pursuant 2:6 13:22 | recess 45:3,4 | remedy 44:12 |
| | pursue 25:16 | recognizes 39:12 | remember 22:11 29:4 33:3 |
| probably 14:13 36:14,15 44:16,16 | pursuing 39:1 | reconsider 40:23 | remorse 28:9 |
| | put 20:5 26:3 35:4 40:3 41:5 | reconsideration 2:9 12:23 13:9 15:2 16:17 27:9 28:1 32:11 35:20 41:7,24 44:19 46:16 47:16 | reorganization 29:18 |
| problem 37:9 | | | reorganized 2:1 |
| proceed 10:3 | | | repeated 34:4 |
| proceedings 8:11 54:4 | **q** | | repeatedly 21:24 |
| | qualifies 29:2 | reconsidered 15:10 | replace 9:11 |
| process 11:16 50:6 | question 17:24 34:18 51:8 | record 17:5 18:8 18:9,11,14 20:4,6 20:7 21:11,19 22:5,13,16,20,21 22:22,23 23:3,12 | reply 15:1 30:22 41:23 |
| professional 19:12,13 | questions 27:12 | | represent 18:23 |
| prong 29:9 38:5 | quick 10:9 | | representative 8:19,23 9:12,13 |
| properly 21:17 35:23 47:4 | quite 20:19 32:1 | | |
| | quo 13:24 25:5 44:18 | | |

reputation   42:19
require   30:9,11
required   30:2
   34:15 45:13
requirement
   14:19
requirements
   30:13
requires   15:25
reserve   25:18,21
   25:22 26:3 29:24
   36:7,8 38:10,12
   39:4,7,13,14,17
   39:21 44:4 49:15
   49:16
reserved   39:20
reserves   31:17
reserving   29:25
resigned   10:1
resolution   13:23
   39:6 51:8
resolved   11:23
   13:14 36:12
respect   32:16
   35:10 39:14
responded   16:12
responses   9:22
responsibilities
   19:19
responsibility
   19:12,13
result   37:17
retrieve   14:4 25:7
retroactively
   25:19 34:16
reveals   18:15
revel   14:16 27:20
   40:6 46:20 47:17
   50:13
reversed   22:14
   32:10 33:11,20
review   10:9 20:13

reviewed   9:5 21:3
   33:13
reviewing   15:6
   28:5,23
reviews   40:22
revisit   44:14
rhoads   3:3
richard   4:20 7:9
richards   6:6
right   9:8,11,12
   20:21,21,24 23:24
   37:8 39:23 44:6,8
   44:17 45:2,6
   49:23 51:12 52:1
rights   29:25 30:2
   39:13 48:4 49:5
   49:14,20,23,24
ripe   15:3,17,22,24
   16:3,13,21 20:6,8
   24:5,8,9,13 38:21
   40:17,23,24
ripeness   15:8
   16:21 20:13 24:8
   32:19 35:12 40:11
   40:12 41:23 42:1
   42:4,5,22
rise   8:3 38:6 40:9
risk   47:1,11,12
   50:3
road   14:1 26:16
   31:10 49:9 54:21
role   8:22
ropes   5:1
rose   4:1 13:5
rosenblatt   4:4
   13:5
roth   13:6
round   41:21
rule   15:25 19:12
   40:25 41:13 45:3
   47:11 50:19,20
ruled   25:19 29:8
   35:23

rules   19:11,13
   30:8
ruling   20:15 47:5
   47:5,18 51:10
rulings   47:9 53:3

                s

s   1:22 3:1 7:7,8,11
   8:1,2
safeguard   30:2
safely   48:24
sakes   9:19
sale   51:1,1
sam   6:20
sat   19:8
satisfied   22:1
   51:11
satisfy   27:20
   30:13 47:8 50:14
saw   42:9
saying   19:12
   36:11 38:24 51:19
says   22:12 23:10
   24:25 27:6 33:5
   34:4 43:15
scenario   31:3,3
scenarios   28:18
schedule   9:16
   26:20
scheduled   11:2
   12:7
scheduling   30:7
schneider   7:10
schodek   7:11
schottenstein   7:12
scott   6:18
seated   8:4 45:5
second   8:16 35:3
   41:21
section   9:4,6
see   8:2 18:15
   32:24 44:2 47:14
   49:21 51:9

seek   13:9
seeking   31:8
seen   34:22
self   35:18,21,22
semper   50:9
sempra   13:11
   25:3 27:8,8,8 49:2
separate   8:13 9:9
   43:23 44:3,3,4
september   15:13
   16:2,4,7,16 17:9
   17:14 19:10,23,23
   20:7,10 21:3 23:7
   23:9 33:12 43:18
   43:20
seriously   37:1
served   37:22
service   50:16
set   16:6 22:15
   30:12 37:10 38:9
   39:4 51:14,19
short   12:13 31:6
   38:3,25
shortened   11:1
should've   25:1
shouldn't   44:7,8
should've   33:23
   34:1,21,22 49:19
showing   40:7
side   3:4,9 8:21 9:8
   10:18 38:2 40:14
sides   23:21 38:24
sieving   7:13
signaled   38:14
signed   19:24
   23:21
significant   28:24
   32:6 39:11
silent   34:25 35:2
similarly   31:6
simply   12:23
   33:18 34:25 35:2
   49:4

single   17:13
siphoned   29:19
sit   41:18 48:8,13
sitting   15:7
situation   18:7
   24:2 28:6 36:21
   44:11 45:23 49:21
solutions   54:20
somebody   43:8
sontchi   1:22
sonya   2:25 54:3,8
soon   50:9
sorry   8:6 49:22
sort   29:8 37:6
   49:9 50:16
sought   49:19
sound   20:14
special   11:23
specific   33:4
   51:20
specifically   11:24
   16:11,15
speech   28:2
spend   27:21 29:12
spent   11:9 28:18
spoke   29:24
spring   41:10
   50:10
stage   30:10
stake   35:1
stand   15:8 29:14
   31:4 34:25 47:9
standard   14:10,12
   18:12,16,21 22:15
   23:2 32:10,13,18
   33:11,17 37:3
   40:4 43:3 44:4
   46:10
standards   30:11
   33:13,18
standpoint   16:3,3
stands   49:13

start   12:20 31:21
   32:9
started   8:8 49:17
starting   8:11
   15:21,25
starts   49:10
state   28:4,22,25
stated   18:9,17
   28:3 40:18
statement   10:4
   22:20 48:10
states   1:1,11 5:17
status   9:24 13:24
   25:5 44:18
statutory   16:3
stay   2:9 11:21
   12:22 13:8,10,24
   14:5,9,18 26:1
   30:24,24 35:2
   38:10,19 39:18,20
   41:9 42:2 44:13
   44:14 45:7 46:18
   47:16 49:17,20
   53:6
stayed   48:6
step   31:23,24 32:2
stephany   5:14
stephen   4:15
stevens   6:1
stipulation   33:4
stop   36:13 45:19
stopped   37:14
strawn   3:18 13:4
street   1:12
strong   40:6
subject   10:6 24:4
submission   51:22
submit   10:10 14:9
   15:5,18 16:20,24
   20:12 21:15,18
   22:15 23:2,11,14
   24:14 27:1 39:19
   40:21 43:24 44:12

submitted   19:24
   38:3 43:10
submitting   11:13
substantive   33:21
succeed   42:15
success   14:7,10,13
   14:17,19 29:1
   37:19 40:5,6
   46:21,22,25 47:19
   47:20,22
suffer   30:18,18
suffice   28:23
sufficient   40:6
suggest   21:12,14
   21:23 26:4 42:20
   42:22 43:5
suggested   21:21
   26:12 43:2
suggesting   26:8
suggestion   10:25
suggests   18:18
   39:15
suite   54:22
sullivan   3:8 38:2
support   34:23
supporting   35:4
supports   51:6
suppose   10:1
   47:17
supreme   36:15
sure   8:9 11:21
   25:12 36:13 45:22
   48:16
sustainable   45:14
system   8:12 31:11

t

t   8:21 9:8 10:18
   54:1,1
taint   18:14 19:1
   43:13
tainted   21:19
   22:17,24

take   10:5 12:3
   15:5 28:11 33:11
   36:10 39:20 45:2
   48:7
taken   11:11 19:5
   32:2 33:2 39:5
takes   17:1 44:15
talented   42:19
talk   50:14
talking   25:25
   26:17 31:3 38:11
   39:2,11 49:22,25
tall   19:9
taousse   7:14
taylor   7:4
tceh   2:1
teeter   49:10
telephonically
   6:17
tell   26:14
term   29:15
terminated   15:4
   20:2,11 24:9 34:5
   34:8,12 35:15,16
   45:16,23,25 46:6
termination   15:14
   24:3 25:19 27:7
   34:22 35:14,22
   36:24 37:18 40:20
   46:6 50:25
terms   11:7,8
   21:17 24:12 27:18
   40:4
test   22:1 23:14
   38:5
testimony   21:20
   21:22 23:4,4
thalassinos   7:15
thank   10:22 12:11
   12:16 13:7 27:13
   27:14 31:19 37:23
   37:24 39:23,25
   44:24 45:6 52:2,3

that'll  48:24,25
that's  34:12,19,22
  36:6 39:7 43:3
  44:6 45:10 46:14
  47:7 50:22
there's  34:22
  35:16,18 37:16,20
  40:7 42:4,15
  43:13,16 44:4,9
  47:21 50:18,19,21
  50:23 51:7
they'll  36:13,14
  36:15
they've  35:25
  39:16
thin  45:24
thing  8:16
things  17:3 31:22
think  9:10 10:14
  11:15,17 13:10,20
  17:18,22 23:4
  25:22 27:18,19
  28:5,21,23 29:1
  29:13 30:14 31:13
  32:1,6 33:6,9 35:8
  35:24 36:2,16
  37:7,19,20,21,22
  38:9,14,18 39:14
  42:11,12,13,15,16
  42:17,20 43:5,24
  44:2,5,6,7 45:21
  46:7,19 47:12,13
  47:23 48:24 49:3
  50:2,17,22,23
  51:7,23
thinks  17:20 44:9
third  13:18 15:7
  16:5 27:19,22
  36:14,23 39:1
  41:11 44:20 46:19
  50:7,8,13,15
  51:21

thomas  13:3
thought  19:4 29:7
thousands  33:7
  51:3
threat  47:24
three  11:16 12:20
  26:21 35:17 44:15
  48:19
time  9:20,23 10:6
  11:1 12:3 13:13
  16:1,22 18:15
  19:15,20 20:8,19
  21:5 23:18 24:24
  25:4 26:5 27:21
  27:22 29:12 30:15
  32:18 38:16 39:11
  41:6,22 42:9
  44:18 48:7 49:15
  50:3,5,11
timeliness  21:16
  32:17
timely  14:22,25
  15:2,2 16:23
  40:16
times  19:6,8
tina  7:6
tinker  49:10
titled  8:18
tiwana  7:16
today  8:11 12:8
  23:16 29:14 30:1
  31:12 36:7 38:6,8
  38:18,23 39:15
  42:6 44:10 45:6
  46:7,15,23 48:1,8
  48:13
told  29:5
tom  3:21
train  43:19
transaction  34:6
  45:11,17,24 46:1
  46:4,7 47:6,6 48:9
  48:14 49:2,3 50:8

  50:9
transactions
  34:12
transcribed  2:25
transcript  8:14
  54:4
transfer  9:8 10:21
trial  47:13,14
tribune  30:23
trouble  9:18
true  37:6 40:22
  54:4
trustee  4:18,23
  5:18
trustee's  2:5
try  43:21
trying  38:12,20
  42:19 44:17
turn  33:22
two  15:6,24 21:9
  27:21,23 35:16
  41:10 42:5 46:20
  48:19 50:14

**u**

u.s.  1:23 5:18
u.s.c.  2:6
ultimately  30:20
  46:2 47:7
umb  4:23
underlies  46:15
underlying  46:14
  48:6
underscore  30:22
understand  17:24
  18:10 21:13 28:10
  28:12 34:2 43:12
  43:17
understanding
  10:17 27:3 28:14
  28:16
understood  18:1,1
  22:25 28:8

undue  47:4
unfair  10:12
unfortunately
  11:17
united  1:1,11 5:17
unknown  1:25
unmistakable
  40:21
unreasonable
  34:18
unripe  15:11
unsecured  8:21
untimeliness
  35:10
use  42:3,3
usually  9:13
utter  31:13

**v**

value  37:7
vehemently  25:20
venable  3:13
verbatim  41:25
veritext  54:20
view  16:5 22:1
  27:4
vigorously  44:3
vistra  9:20
vulnerable  49:18

**w**

wait  15:20 16:12
  17:5 25:17 26:7
  26:19
waited  16:10,16
  16:18 17:4,6
waiting  13:18
  44:24
waived  40:14 41:3
waiver  17:2
walker  3:3
want  26:13 27:11
  27:23 29:12 31:21
  32:9 41:4 42:21

| | |
|---|---|
| **wanted** 8:16 12:9 26:9 | **winston** 3:18 13:4 |
| **wash** 50:22 | **wiped** 15:23 |
| **wasn't** 40:17 41:7 41:9 42:8 | **withdrawn** 21:5 |
| **wasson** 7:17 | **woffard** 7:19 |
| **way** 9:5 16:4 19:22 22:3,5 29:9 30:18 | **won't** 48:25 |
| **ways** 50:17 | **woodwork** 37:14 |
| **we've** 14:16 | **word** 28:11 40:12 41:23 42:3,3,4 |
| **wedoff** 29:5 | **work** 11:20 |
| **week** 12:13 | **worked** 23:22 |
| **weekend** 10:9 | **works** 50:6 |
| **weeks** 11:18 12:12 15:24 21:3 | **wouldn't** 42:13 43:20 46:13 |
| **welcome** 9:22 12:17 40:2 45:1 51:21 | **would've** 45:17 46:11 |
| **went** 20:18 | **writing** 10:10 |
| **weren't** 48:21 | **written** 9:10 |
| **we'd** 44:13 | **wrong** 47:15 51:12 |

**x**

**x** 53:1

**y**

| | |
|---|---|
| **we'll** 36:15 43:25 50:11 | **yeah** 10:7 11:16 32:20,23 |
| **we're** 38:10,25 39:10 44:17,24 49:8,11,22,25 50:10 52:2 | **year** 11:16 24:6 45:10 49:19 |
| **we've** 39:15 44:5 48:20 | **years** 25:15 39:6 49:8,8 |
| **whatsoever** 39:16 48:11 | **yield** 12:24 |
| **what's** 43:4 | **young** 7:20 29:5 |
| **whiff** 28:7 | **you'd** 51:20 |
| **wholly** 34:18 | **you're** 36:23 37:2 40:2 41:11 45:1 |
| **williamson** 7:18 | **you've** 41:19 |

**z**

| | |
|---|---|
| **willing** 48:23 | **zero** 44:16 |
| **wilmington** 1:13 | |
| **win** 14:13 25:9,13 29:7 44:7,8 | |
| **winning** 14:14 35:24 40:8 | |