**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re:* | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| | (Jointly Administered) |
| Debtors.[1] | **Re: Docket Nos. 11854; 12142** |
| | **Hearing Date: TBD**<br>**Objections Due: December 19, 2017** |

**OBJECTION OF SHIRLEY FENICLE, DAVID WILLIAM FAHY, JOHN H. JONES, DAVID HEINZMANN, HAROLD BISSELL, KURT CARLSON, ROBERT ALBINI, AND DENIS BERGSCHNEIDER TO CONFIRMATION OF THE FIRST AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS, CORP., ENERGY FUTURE INTERMEDIATE HOLDING COMPANY, LLC, AND THE EFH/EFIH DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE, <u>FILED SEPTEMBER 11, 2017</u>**

**[REDACTED]**
*CONFIDENTIAL—FILED UNDER TEMPORARY SEAL*
**SUBJECT TO ENERGY FUTURE HOLDINGS
PROTECTIVE ORDER**

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

# TABLE OF CONTENTS

Table of Authorities ................................................................**Error! Bookmark not defined.**

BACKGROUND ................................................................................................1

JURISDICTIONAL STATEMENT ..................................................................4

ARGUMENT.....................................................................................................9

I.  The Plan was proposed by a means forbidden by law:  Discharging Unmanifested Asbestos Claims in these cases would violate due process..................................................................10

   A.  Unmanifested Asbestos Claimants are unidentifiable even to themselves: the notice directed to them was not constitutionally adequate or effective...........................10

      1.  Adequacy of notice depends on the circumstances of the case. ................................11

      2.  Forms of notice generally deemed sufficient are not constitutionally adequate or effective when directed to Unmanifested Asbestos Claimants. .............................13

   B.  Due process requires that Unmanifested Asbestos Claimants must be adequately represented in bankruptcy proceedings. ........................................................................16

   C.  The threefold inquiry set out by the Supreme Court in *Mathews v. Eldrige* and *Connecticut v. Doehr* shows that due process was not been afforded.............................19

      1.  The private interests of the claimants are significant. ................................22

      2.  Erroneous deprivation is certain, and the value of additional safeguards is apparent.................................................................................................................23

      3.  The Debtors have no legitimate countervailing interest, and the governmental interest in ensuring equitable treatment of claimants militates against discharge. ................................................................................................................26

      4.  Unmanifested Asbestos Claims cannot be discharged in the circumstances of these cases. ............................................................................................................31

   D.  The Court must determine whether discharging Unmanifested Asbestos Claims would violate due process before the Plan can be confirmed. .........................................33

II.  The Plan cannot be confirmed because it was not proposed in good faith.............................36

Conclusion.......................................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 15375 Mem'l Corp. v. Bepco, L.P.,*
589 F.3d 605 (3d Cir. 2009) ..............................................................................37

*In re ACandS, Inc.,*
311 B.R. 36 (Bankr. D. Del. 2004) .............................................................. 36, 38

*In re Am. Capital Equip., LLC,*
688 F.3d 145 (3d Cir. 2012) ........................................................................9, 36

*In re Amatex Corp.,*
755 F.2d 1034 (3d Cir. 1985)............................................................................17

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ...............................................................................*passim*

*Avellino v. M. Frenville Co.,*
744 F.2d 332 (3d Cir. 1984), *overruled by, JELD-WEN, Inc. v. Van Brunt* (*In
re Grossman's, Inc.*), 607 F.3d 114 (3d Cir. 2010)......................................... 34, 35

*Bank of America Nat'l Trust and Sav. Ass'n v. 203 North LaSalle Street P'ship,*
526 U.S. 434 (1999) ........................................................................................28

*Begier v. IRS,*
496 U.S. 53 (1990) ..........................................................................................30

*Butner v. United States,*
440 U.S. 48 (1979) ..........................................................................................28

*Carey v. Population Servs. Int'l,*
431 U.S. 678 (1977) ..........................................................................................5

*Castleman v. Liquidating Trustee,*
No. 6:06-CV-1077 (LEK), 2007 WL 2492792 (N.D.N.Y. Aug. 28, 2007) .........................32

*In re Cent. Hanover Bank & Tr. Co.,*
75 N.Y.S.2d 397 (N.Y. Surr. Ct. 1947)...............................................................14

*In re Chateaugay Corp.,*
2009 WL 367490 (Bankr. S.D.N.Y. Jan. 14, 2009)............................................32

*In re Combustion Eng'g, Inc.,*
391 F.3d 190 (3d Cir. 2004) ....................................................................*passim*

*Commodity Futures Trading Comm'n v. Weintraub*,
    471 U.S. 343 (1985) ............................................................................... 37

*Connecticut v. Doehr*,
    501 U.S. 1, 9 (1991) ...................................................................... *passim*

*In re Coram Healthcare Corp.*,
    271 B.R. 228 (Bankr. D. Del. 2001) ..................................................... 37

*Covey v. Town of Somers*,
    351 U.S. 141 (1956) ....................................................................... 12, 13

*In re Craft Plumbing Serv.*,
    53 B.R. 654 (Bankr. M.D. Fla. 1985) .................................................. 27

*In re Duke & King Acquisition Corp.*,
    508 B.R. 107 (Bankr. D. Minn. 2014) .................................................. 27

*In re Eagle-Picher Indus. Inc.*,
    137 B.R. 679 (Bankr. S.D. Ohio 1992) ............................................... 16

*In re Energy Future Holdings Corp.*,
    522 B.R. 520 (Bankr. D. Del. 2015) ............................................ *passim*

*In re Federal-Mogul Glob., Inc.*,
    330 B.R. 133 (D. Del. 2005) ................................................................. 3

*Findley v. Falise (In re Joint E. & S. Dist. Asbestos Litig.)*,
    878 F. Supp. 473 (E.D.N.Y. and S.D.N.Y. 1995), *aff'd in part, vacated in*
    *part, In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764 (2d Cir. 1996) ........................... 25

*In re Flintkote Co.*,
    486 B.R. 99 (Bankr. D. Del. 2012) ..................................................... 16

*Fuentes v. Shevin*,
    407 U.S. 67 (1972) .............................................................................. 23

*In re Furley's Transp., Inc.*,
    272 B.R. 161 (Bankr. D. Md. 2001), *aff'd*, 306 B.R. 514 (D. Md. 2002) ............................ 38

*In re G-I Holdings, Inc.*,
    313 B.R. 612 (Bankr. D.N.J. 2004) ..................................................... 26

*In re G-I Holdings, Inc.*,
    385 F.3d 313 (3d Cir. 2004) ............................................................... 37

*Georgine v. Amchem Prods., Inc.*,
    83 F.3d 610 (3d Cir. 1996) ................................................................. 15

*In re Global Indus. Techs., Inc.*,
   645 F.3d 201 (3d Cir. 2011) (*en banc*), *cert denied*, 132 S. Ct. 551 (2011) ...........................7

*In re Grossman's Inc.*,
   607 F.3d 114 (3d Cir. 2010) ............................................................................ 25, 33, 34, 35

*In re Hechinger Inv. Co. of Delaware*,
   274 B.R. 71 (D. Del. 2002)..............................................................................................27

*In re Hooker Invs.*,
   937 F.2d 833 (2d Cir. 1991) ..............................................................................................6

*JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.)*,
   No. 07-51602 (Bankr. D. Del. June 28, 2011)....................................................................35

*In re Keene Corp.*,
   188 B.R. 903 (Bankr. S.D.N.Y. 1995) ..............................................................................29

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004) ..........................................................................................................5

*Lippe v. Bairnco Corp.*,
   218 B.R. 294 (S.D.N.Y. 1998)........................................................................................26

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..........................................................................................................7

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ........................................................................................................19

*Mitchell v. W.T. Grant*,
   416 U.S. 600 (1974) ........................................................................................................24

*Mullane v. Cent. Hanover Bank & Trust*,
   339 U.S. 306 (1950) ................................................................................................*passim*

*North Georgia Fishing v. Di-Chem*,
   419 U.S. 601 (1975) ........................................................................................................24

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*,
   330 F.3d 548 (3d Cir. 2003) ............................................................................................15

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ........................................................................................................17

*Pepper v. Litton*,
   308 U.S. 295 (1939) ........................................................................................................39

*In re Placid Oil Co.*,
    753 F.3d 151 (5th Cir. 2014) ......................................................................32

*In re PWS Holding Corp.*,
    303 F.3d 308 (3d Cir. 2002) .......................................................................26

*In re Quigley Co.*,
    346 B.R. 647 (Bankr. S.D.N.Y. 2006) ......................................................29

*Smith v. Org. of Foster Families for Equality & Reform*,
    431 U.S. 816 (1977) ....................................................................................5

*In re Specialty Prods. Holding Corp.*,
    Case No. 10-11780, 2013 WL 2177694 (Bankr. D. Del. May 20, 2013) .........3, 31

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
    128 S. Ct. 2531 (2008) ................................................................................5

*Stellwagen v. Clum*,
    245 U.S. 605 (1918) ..................................................................................29

*Stephenson v Dow Chem. Co.*,
    273 F.3d 249 (2d Cir. 2001), *aff'd in relevant part and rev'd in part sub nom.*
    *Dow Chem. Co. v. Stephenson*, 539 U.S. 111 (2003)...............................15

*In re STN Enterprises, Inc.*,
    99 B.R. 218 (D. Vt. 1988) ...........................................................................6

*In re Tribune Co.*,
    464 B.R. 126 (Bankr. D. Del.), *on reconsideration*, 464 B.R. 208 (Bankr. D.
    Del. 2011) ...............................................................................................9, 10

*U.S. v. James Daniel Good Real Prop.*,
    510 U.S. 43 (1993) ...............................................................................22, 23

*In re W.R. Grace & Co.*,
    281 B.R. 852 (Bankr. D. Del. 2002) .......................................................26, 38

*In re W.R. Grace & Co.*,
    475 B.R. 34 (D. Del. 2012), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d
    332 .........................................................................................................36, 37

*In re Waterman S.S. Corp.*,
    141 B.R. 552 (Bankr. S.D.N.Y. 1992) ......................................................33

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ....................................................................................5

*Wolf v. Weinstein*,
  372 U.S. 633 (1963) ................................................................................................37

*In re WR Grace & Co.*,
  729 F.3d 332 (3d Cir. 2013) ................................................................ 35, 36, 38

*Wright v Owens Corning*,
  679 F.3d 101 (3d Cir. 2012) ............................................................ 10, 12, 17, 21

*Zerand-Bernal Grp., Inc. v. Cox*,
  23 F.3d 159 (7th Cir. 1994) ................................................................ 16, 29

**Statutes**

11 U.S.C. § 524(g) ..........................................................................*passim*

11 U.S.C. § 524(g)(2)(B)(ii)(V) ................................................................25

11 U.S.C. § 524(g)(4)(B)(i) ................................................................ 17, 25, 31

11 U.S.C. § 544(b) ................................................................................26

11 U.S.C. § 1129(a)(3) ........................................................................ 4, 9, 36

Cal. Civ. Proc. Code § 377.34 ................................................................24

**Dockets**

*In re Armstrong World Indus., Inc.*,
  No. 00-4471 (D. Del.)................................................................................29

*In re Combustion Eng'g, Inc.*,
  No. 03-10495 (Bankr. D. Del.) ................................................................29

*In re Congoleum Corp.*,
  No. 03-51524 (Bankr. D.N.J.)................................................................29

*In re Federal-Mogul Global, Inc.*,
  No. 01-10578 (Bankr. D. Del.) ................................................................29

*Fenicle v. Energy Future Holdings Corp. (In re Energy Future Holdings Corp.)*,
  No. 15-265 (D. Del.) ........................................................................1, 6

*In re Global Indus. Techs., Inc.*,
  No. 02-21626 (Bankr. W.D. Pa.) ................................................................29

*In re JT Thorpe*,
  02-14216 (Bankr. C.D. Cal.)................................................................29

*In re Kaiser Aluminum Corp*,
    No. 02-10429 (Bankr. D. Del.) ......................................................................29

*In re Mid-Valley, Inc.*,
    No. 03-35592 (Bankr. W.D. Pa.) ...................................................................29

*In re N. Am. Refractories Co.*,
    No. 02-20198 (Bankr. W.D. Pa.) ...................................................................29

*Owens Corning v. Credit Suisse First Boston (In re Owens Corning)*,
    Nos. 00-3837-3854 (D. Del.) ........................................................................29

**Other Authorities**

5 Collier on Bankruptcy ¶ 548.01 (2016) ...............................................................27

Agency for Toxic Substances & Disease Registry, U.S. Dep't of Health & Human
    Servs., *Toxicological Profile for Asbestos* 6 (2001),
    http://www.atsdr.cdc.gov/toxprofiles/tp61.pdf. ...........................................2

Am. Thoracic Soc'y, *The Diagnosis of Nonmalignant Diseases Related to
    Asbestos*, 134 Am. Rev. of Respiratory Disease 363 (1986) ......................2

Georgene Vairo, *Mass Tort Bankruptcies: The Who, the Why and the How*, 78
    Am. Bankr. L.J. 93 (2004) ...........................................................................14

H.R. Rep. No. 103-835 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3349........................17

Laura B. Bartell, *Due Process for the Unknown Future Claim in Bankruptcy—Is
    This Notice Really Necessary?* 78 Am. Bankr. L.J. 339, 354, 366 (2004) ............................16

Nat'l Inst. for Occupational Safety and Health, Pub. No. 95-123, *Report to
    Congress on Workers' Home Contamination Study Conducted Under the
    Workers' Family Protection Act (29 U.S.C. 671a)* (1995),
    http://www.cdc.gov/niosh/docs/95-123/pdfs/95-123.pdf ........................2

S. Jane Henley et al., *Mesothelioma Incidence in 50 States and the District of
    Columbia, United States, 2003-2008*, 19 Int'l J. of Occupational and Envtl.
    Health, No. 1, 2013,
    http://www.ncbi.nlm.nih.gov/pmc/articles/PMC4406225/ .................................1, 2

Sonya Lunder, *Asbestos Kills 12,000 – 15,000 People per Year in the U.S.*,
    http://www.asbestosnation.org/facts/asbestos-kills-12000-15000-people-per-
    year-in-the-u-s/ (visited on December 17, 2017) ....................................2

William J. Nicholson et al., *Occupational Exposure to Asbestos: Population at
    Risk and Projected Mortality—1980-2030*, 3 Am. J. of Indus. Med. 259
    (1982) ............................................................................................................2

Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, David Heinzmann, Harold Bissell, Kurt Carlson, Robert Albini, individually and as successor-in-interest to the Estate of Gino Albini, and Denis Bergschneider[2] ("**Objectors**") by their undersigned counsel, hereby submit this Objection ("**Objection**") to the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al., *Pursuant to Chapter 11 of the Bankruptcy Code*, dated September 11, 2017 (D.I. 11854) (as supplemented on October 20, 2017 (D.I. 12104), and as may be further amended, the "**Plan**"), as it relates to the EFH Debtors and EFIH Debtors.[3]

## BACKGROUND

Exposure to asbestos can cause malignant mesothelioma and other cancers, as well as non-malignant diseases, including asbestosis.[4]  As this Court has noted, asbestos-related diseases have unusually long latency periods.  *See In re Energy Future Holdings Corp.* ("**In re EFH Corp.**"), 522 B.R. 520, 523 (Bankr. D. Del. 2015).  Even a low-level or relatively brief exposure to asbestos

---

[2]    Mr. Bergshneider was not a party to the preliminary objections filed on October 30, 2017. *See* Objection of Shirley Fenicle, William Fahy, John H. Jones, David Heinzmann, Harold Bissell, Kurt Carlson, and Robert Albini to Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings, Corp., Energy Future Intermediate Holding Company, LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code, Sept. 11, 2017, D.I. 12142.  A notice of intent to participate was filed on Mr. Bergschneider's behalf on November 27, 2017.  *See* Notice of Intent to Participate in Confirmation Proceedings for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code, D.I. 12271 ("**Bergschneider Notice of Intent**"). A motion to join Mr. Bergschneider as an Objector is being filed contemporaneously with these final objections.

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan.

[4]    S. Jane Henley et al., *Mesothelioma Incidence in 50 States and the District of Columbia, United States, 2003-2008* at 1, 19 Int'l J. of Occupational and Envtl. Health, No. 1, 2013, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC4406225/.

may cause mesothelioma,[5] which is inevitably fatal, "often within a few months of diagnosis."[6]

Only a percentage of those exposed to asbestos will develop mesothelioma or another asbestos-related disease. More than 27 million Americans were occupationally exposed to asbestos between 1940 and 1979, and their family members also were exposed to the asbestos brought home on the workers' clothing.[7] Approximately 3,000 exposed persons are expected to succumb to mesothelioma each year.[8] One study estimates that another 9,000 to 12,000 die each year in the United States from other asbestos-related cancers and asbestosis.[9]

Debtors EECI, Inc.,[10] EEC Holdings, Inc., LSGT Gas Co. LLC, and LSGT SACROC, Inc. (the "**Asbestos Debtors**") were in the business of building, maintaining, and servicing power plants, or are successors to entities that were engaged in that business. *See In re EFH Corp.*, 522 B.R. at 523. Asbestos-containing insulation was installed throughout the power plants, and was disturbed on a regular basis when workers drilled or cut into it, releasing toxic asbestos fibers that

---

[5]      *Id.*

[6]      *See* Agency for Toxic Substances & Disease Registry, U.S. Dep't of Health & Human Servs., *Toxicological Profile for Asbestos* 6 (2001),http://www.atsdr.cdc.gov/toxprofiles/tp61.pdf.

[7]      *See* William J. Nicholson et al., *Occupational Exposure to Asbestos: Population at Risk and Projected Mortality—1980-2030*, 3 Am. J. of Indus. Med. 259, 259 (1982). *See also* Am. Thoracic Soc'y, *The Diagnosis of Nonmalignant Diseases Related to Asbestos*, 134 Am. Rev. of Respiratory Disease 363 (1986) (noting that at least 27 million people were occupationally exposed to asbestos); *see* Nat'l Inst. for Occupational Safety and Health, Pub. No. 95-123, *Report to Congress on Workers' Home Contamination Study Conducted Under the Workers' Family Protection Act (29 U.S.C. 671a)* (1995), http://www.cdc.gov/niosh/docs/95-123/pdfs/95-123.pdf.

[8]      *See* Henley, *supra* note 4.

[9]      *See* Sonya Lunder, *Asbestos Kills 12,000 – 15,000 People per Year in the U.S.*, http://www.asbestosnation.org/facts/asbestos-kills-12000-15000-people-per-year-in-the-u-s/ (visited on December 17, 2017).

[10]     EECI was formerly known as EBASCO, "which was at various times affiliated with Boise Cascade, Halliburton and Raytheon Corporation (all of which have had asbestos-related personal injury liability)." *In re EFH Corp.*, 522 B.R. at 524. EBASCO built power plants nationwide.

became airborne and were inhaled by everyone in the plant. *Id.* at 524. As this Court found, "[a]sbestos exposure was virtually unavoidable in power plants built prior to 1980." *Id.*

Generally-accepted epidemiology teaches that workers and their family members who were exposed to the Debtors' asbestos decades ago will continue to succumb to asbestos-related illnesses caused by those exposures for decades in the future.[11] But not all of those who were exposed will develop asbestos-related illnesses, and there is no way to predict who will. They hold bankruptcy "claims" within the meaning of the Bankruptcy Code, even though their tort claims have not yet accrued and are not cognizable under state law, and even though they may not even be aware of their asbestos exposures. Their families hold claims also, including future spouses and unborn children who will suffer injury when their loved ones succumb to asbestos-related illnesses.

The Debtors vigorously—and successfully—opposed the appointment of a legal representative to protect the interests of these absent and unidentifiable claimants. Under the Plan, the Asbestos Debtors would shed their liabilities for Unmanifested Asbestos Claims[12]—and EFH Corp. and other Debtor affiliates would shed their derivative liability for such claims—without adequate notice or compensation, in order to benefit equity at the expense of the Debtors' asbestos victims. Discharging their claims would violate the due process rights of the Unmanifested

---

[11]     S*ee, e.g.*, *In re Federal-Mogul Glob., Inc*., 330 B.R. 133, 158 (D. Del. 2005) (finding that expert's methodology of estimation of future claims, which assumed claims will arise through 2049, was reliable (related expert report found at 2004 WL 3569872)); *In re Specialty Prods. Holding Corp*., Case No. 10-11780, 2013 WL 2177694 (Bankr. D. Del. May 20, 2013) (adopting expert's methodology for estimating asbestos liabilities, which forecasted claims through 2050).

[12]     As used herein, the term "**Unmanifested Asbestos Claimants**" refers to persons who had not suffered cognizable injuries caused by pre-petition exposure to the Debtors' asbestos-containing products before the bar date set in these cases, but who have since suffered or will suffer such injuries. "**Unmanifested Asbestos Claims**" refers to the claims of such claimants.

Asbestos Claimants, is inconsistent with the objective and purposes of the Code, and epitomizes the bad faith that, under § 1129(a)(3), precludes confirmation.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Confirmation of a reorganization plan is a core proceeding within the Bankruptcy Court's adjudicatory authority under 28 U.S.C. § 157(b)(2)(L).

The Objectors have standing to object to the Plan under 11 U.S.C. § 1109(b) and Article III of the Constitution.  Each has asbestos-related personal injury and/or wrongful death claims against the Asbestos Debtors.  Ms. Fenicle is the successor-in-interest to the estate of George Fenicle, a mesothelioma victim, and was exposed to asbestos brought home on her husband's clothing.  Mr. Fahy is a mesothelioma claimant.  Ms. Fenicle and Mr. Fahy each filed proofs of claim, and each are members of the E-Side official creditors' committee, which was appointed to represent the interests of unsecured creditors of certain Debtors, including EECI, Inc.[13]  *See* Notice of Appointment of Committee of Unsecured Creditors, D.I. 2570.  Because no separate estate fiduciary adequately represents the interests of absent Unmanifested Asbestos Claimants, Ms. Fenicle and Mr. Fahy should be accorded fiduciary standing to represent those claimants.  Just as a trustee has standing to sue by virtue of its status as the legal representative of the trust, and need not show that it has personally suffered an injury, Ms. Fenicle and Mr. Fahy need not demonstrate injury.  *See Sprint Commc'ns Co. v. APCC Servs., Inc.*, 128 S. Ct. 2531, 2543 (2008) (noting that

---

[13]   The E-Side Committee is composed of creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc.  *See In re EFH Corp.*, 522 B.R. at 524 n.7.  No committee was appointed to represent the interests of creditors with claims against the other three Asbestos Debtors: EEC Holdings, Inc., LSGT Gas Co. LLC, and LSGT SACROC, Inc.

the constitutional requirements for standing are satisfied when a trustee sues to recover for the trust, or a guardian *ad litem* for its ward, even though the trustee or guardian has not personally suffered the injury, because "trustees, guardian *ad litem*, and the like have some sort of 'obligation' to the parties whose interests they vindicate through litigation."); *see also Smith v. Org. of Foster Families for Equality & Reform*, 431 U.S. 816, 841 n.44 (1977) (recognizing third-party standing for foster parents to raise claims on behalf of foster children).

In the absence of a court-appointed legal representative, Ms. Fenicle and Mr. Fahy should be accorded standing as "next friends" of absent Unmanifested Asbestos Claimants.  The Supreme Court has instructed that next-friend standing is appropriate where (i) there is a hindrance to the real party-in-interests' ability to protect their own interests, and (ii) the party seeking next-friend standing is truly dedicated to the best interests of, and has a significant relationship with, the real parties-in-interest.  *See Whitmore v. Arkansas*, 495 U.S. 149, 161-64 (1990); *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).  Here, Unmanifested Asbestos Claimants were hindered in protecting their interests because they were not provided adequate notice.  *See* part I.A, below.  Ms. Fenicle and Mr. Fahy's dedication to the best interests of absent Unmanifested Asbestos Claimants is demonstrated by their tireless advocacy in these cases.  Moreover, Ms. Fenicle herself has been exposed to the Debtors' asbestos, and may develop an asbestos-related illness in the future.

In any event, the remaining six Objectors—Messrs. Jones, Heinzmann, Bissell, Carlson, Albini, and Bergschneider—have standing as Unmanifested Asbestos Claimants.  *See In re EFH Corp.*, 522 B.R. at 526 ("Unmanifested Claimants would have standing to object to the bar date . . . .").  Thus, this Court has jurisdiction to rule on these Objections, and need not reach the question of Ms. Fenicle's and Mr. Fahy's standing.  *See Carey v. Population Servs. Int'l*, 431 U.S.

678, 682 (1977) (finding that one appellee had the requisite standing and holding, therefore, that

the Court had "no occasion to decide the standing of the other appellees.").

Each of these six Objectors or their decedents worked at one or more power plants named

in the list of power plants where, according to the Debtors, workers were exposed to the Debtors'

asbestos (the "**Power Plants List**").[14]  None were diagnosed with asbestos-related illnesses before

the bar date for asbestos claims in these cases (the "**Bar Date**"),[15] and they were not aware of the

---

[14]     *See* Affidavit of Service, Sept. 11, 2015, D.I. 5937.  The Power Plants List can be viewed
at http://dm.epiq11.com/#/case/EFH/documents/2578878 (Asbestos Related Documents).

[15]     *See* Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the
Form of and Manner for Filing Asbestos Proofs of Claim and (C) Approving Notice Thereof, July
30, 2015, D.I. 5171 (the "**Bar Date Order**").  The Debtors have noted that the Bar Date Order
was not appealed, and have contended that an objection on due process grounds is an
"inappropriate collateral attack" on the Bar Date Order.  Hr'g Tr. 57:16-22, Dec. 3, 2015.  But the
Bar Date Order, like the Court's earlier order rejecting disclosure statement objections, was
interlocutory because the Court "ha[d] not decided whether the proposed treatment [of
Unmanifested Claims] complies with the law or not."  Order at 2, *Fenicle v. Energy Future
Holdings Corp. (In re Energy Future Holdings Corp.)*, No. 15-265 (D. Del. Nov. 9, 2015) (holding
that Bankruptcy Court's order rejecting objections to the disclosure statement for the Debtors'
Sixth Amended Reorganization Plan was not a final order.) "The issuance of a bar date order is a
largely ministerial act designed to bring to light all claims against the estate; the order resolves no
claim by or against the debtor, nor does it have any direct effect on the disposition of the assets of
the estate."  *In re Hooker Invs.*, 937 F.2d 833, 836 (2d Cir. 1991) (quotation marks and citation
omitted)).  A bar date order by its nature is interlocutory, not final, as it "merely set[s] the date by
which creditors were required to file proofs of claim in order to participate in the distribution of
the bankruptcy estate, an administrative procedure that would not appear to resolve any particular
dispute."  *Id. See also In re STN Enterprises, Inc.*, 99 B.R. 218, 220 (D. Vt. 1988) ("Orders issued
pursuant to Bankruptcy Rule 3003(c)(3) are not final orders for purposes of Bankruptcy Rule 9024
and Fed. R. Civ. P. 60(b).").

Indeed, this Court emphasized the interlocutory nature of a bar date order at the August 13,
2014 hearing:

> I want to make it clear that setting a bar date is just one set [sic].  I'm not making
> any kind of position as to whether a discharge would be appropriate.  I'm not
> approving or not approving a plan that deals with these claims, it very well may be
> that these claims ultimately are required or voluntarily passed through unaffected
> by a plan, I don't know . . . objections to discharge or any kind of injunction, or any

Bar Date. They did not file proofs of claim, and their claims will be discharged if the Plan is confirmed, depriving them of their rights to pursue their now-ripe tort claims in non-bankruptcy courts. The discharge of their claims under the Plan is a concrete, imminent "injury in fact," and they each have standing to object to confirmation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (party asserting constitutional standing must demonstrate an "injury in fact" that is "concrete and particularized," and "actual or imminent," and that is "fairly . . . trace[able] to the challenged action" and is "likely" to be "redressed by a favorable decision"). *See also In re Global Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (*en banc*), *cert denied*, 132 S. Ct. 551 (2011) ("*GIT*") (same). Each of these Objectors filed a Notice of Intent to Participate in these confirmation proceedings.[16] Neither the Debtors nor any other Participating Parties objected to

---

kind of discharge in a plan are fully preserved. Individual claimants' due process rights in the future are fully preserved.

Hr'g Tr. 90:13-19, 25; 91:1-3, Aug. 13, 2014. *See also In re EFH Corp.*, 522 B.R. at 537 ("No plan has been filed and no discharge is being sought. The ultimate treatment of the Unmanifested Claims is not before the Court. The sole issue is whether to establish a bar date for those claims.").

[16]     *See* Notice of Intent to Participate in Disclosure Statement Proceedings and Confirmation Proceedings for New Plan, Aug. 1, 2016, D.I. 9165; Notice of Intent to Participate in Disclosure Statement Proceedings and Confirmation Proceedings for New Plan, Nov. 3, 2016, D.I. 10030; Notice of Intent to Participate in Confirmation Proceedings for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code, Oct. 27, 2017 D.I. 12121; Notice of Intent to Participate in Confirmation Proceedings for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code, Oct. 27, 2017 D.I. 12122; Notice of Intent to Participate in Confirmation Proceedings for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code, Oct. 27, 2017 D.I. 12127; Bergschneider Notice of Intent.

their Notices of Intent or their standing within the time period set by this Court for such objections.[17]

Objector John H. Jones was exposed to the Debtors' asbestos during the period 1963 through 1965 while working as an electrician for independent contractors at the Hanford Nuclear Plant in Washington State.  *See* Exs. 2-6 to Declaration of Beth Gori, December 18, 2017 (attached as **Ex**. **A**) ("**Gori Decl.**").  The Hanford Nuclear Plant is on the Debtors' Power Plants List.  *See* Power Plants List at PDF p. 34.  Mr. Jones was diagnosed with metastatic malignant mesothelioma on December 14, 2015, the Bar Date.  *See* Ex. 1 to Gori Decl.

Objector David Heinzmann has claims against the Debtors for personal injury arising from his exposure to asbestos at the Mountain Creek Power Plant in Dallas, Texas, the Stryker Creek Power Plant in Jacksonville, Texas, and the FPL Power Plant in Fort Myers, Florida during the period from 1957 through 1965.  *See* Exs. 2-4 to Declaration of Jonathan Ruckdeschel, dated December 18, 2017 (attached as **Ex. B**) ("**Ruckdeschel Decl.**").  All three sites are on the Power Plants List.  *See* Power Plants List at PDF pp. 26, 31, 32.  Mr. Heinzmann was diagnosed on July 15, 2016 with malignant mesothelioma caused by his exposure to asbestos.  *See* Ex. 1 to Ruckdeschel Decl.

Objector Harold Bissell was exposed to the Debtors' asbestos during the period from 1967 through 1973 while working at the Millstone Nuclear Power Plan in Waterford, CT (the "**Millstone**

---

[17]    The Bankruptcy Court's Scheduling Order provides that the Debtors and other participating parties "shall, within ten days of the filing of any Notice of Intent, have the right to object to that Notice of Intent on any and all grounds, including the Notice of Intent . . . was served by persons that are not parties in interest . . . or does not demonstrate a legally cognizable interest in . . . the Confirmation Proceedings."  *See* Order Scheduling Certain Hr'g Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement, May 24, 2016, D.I. 8514 ("**Scheduling Order**").  The Scheduling Order has been supplemented and amended several times, most recently at D.I. 11835 and D.I. 12279.

Plant"). *See* Exs. 6-9 to Declaration of Ethan Early, dated December 15, 2017 (attached as **Ex. C**) ("**Early Decl.**"). The Millstone Plant is on the Debtors' Power Plant List. *See* Power Plants List at PDF p. 25. Mr. Bissell was diagnosed on January 17, 2017 with metastatic malignant mesothelioma caused by his exposure to asbestos. *See* Ex. 5 to Early Decl.

Objector Kurt Carlson was exposed to the Debtors' asbestos while working at the Millstone plant during the period 1981 through 1991. *See* Exs. 11-16 to Early Decl. He was diagnosed on July 11, 2017 with malignant metastatic mesothelioma caused by asbestos exposure. *See* Ex. 10 to Early Decl.

Objector Robert Albini is the executor of the estate of his father, Gino Albini, who died on June 22, 2017. *See* Ex. 4 to Early Decl. Gino Albini worked at the Millstone Plant on numerous occasions from 1968 to 1972. *See* Exs. 2-4 to Early Decl. His cause of death was determined to be metastatic mesothelioma caused by asbestos exposure. *See* Ex. 1 to Early Decl.

Objector Denis Bergschneider was exposed to the Debtors' asbestos during the period from 1969 through 1973 while working at Kansas City Power & Light at the Montrose Station, which is on the Debtors' Power Plant List. *See* Exs. 2 & 3 to Declaration of Matthew Thiel, dated December 18, 2017 (attached as **Ex. D**) ("**Thiel Decl.**"). *See* Power Plants List at PDF p. 28. On September 14, 2017, Mr. Berschneider was diagnosed with metastatic malignant mesothelioma caused by his exposure to asbestos. *See* Ex. 1 to Thiel Decl.

## ARGUMENT

Bankruptcy Code Section 1129(a)(3) provides that a "court shall confirm a plan only if, *inter alia*, it 'has been proposed in good faith and not by any means forbidden by law.'" *In re Am. Capital Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012) (internal citation omitted). "The plan proponent bears the burden of establishing the plan's compliance with each of the requirements set forth in § 1129(a)." *In re Tribune Co.*, 464 B.R. 126, 151-52 (Bankr. D. Del.), *on*

*reconsideration*, 464 B.R. 208 (Bankr. D. Del. 2011) (internal citation omitted). The Debtors cannot meet that burden in these cases.

The Debtors' Plan cannot be confirmed because it was proposed by a means forbidden by law. *See* part I, below. The Fifth Amendment requires that a claimant be afforded due process before his or her claim is discharged in bankruptcy. The Third Circuit has instructed that "if a claimant is not afforded due process, a plan of reorganization and confirmation order that purport to discharge claims will not do so." *Wright v Owens Corning*, 679 F.3d 101, 107 n.6 (3d Cir. 2012). Unmanifested Asbestos Claimants in these cases have not been afforded due process: they were not given constitutionally adequate notice, have not been adequately represented by an unconflicted estate fiduciary, and have not been afforded any other protections of their rights.

The Plan also cannot be confirmed because it was not proposed in good faith. *See* part II, below. The Plan was not proposed to deal fairly with, and maximize the recovery of, the Debtors' asbestos victims. Rather, it would discharge the future claims of Unmanifested Asbestos Claimants without compensation, for the benefit of equity and other stakeholders, in breach of the Debtors' fiduciary duties to those claimants, and in an abuse of the bankruptcy process.

## I.      THE PLAN WAS PROPOSED BY A MEANS FORBIDDEN BY LAW: DISCHARGING UNMANIFESTED ASBESTOS CLAIMS IN THESE CASES WOULD VIOLATE DUE PROCESS.

### A.      Unmanifested Asbestos Claimants are unidentifiable even to themselves: the notice directed to them was not constitutionally adequate or effective.

The Debtors assert that the notice by mail and publication provided all the process Unmanifested Abestos Claimants were due, relying on *Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306 (1950). But *Mullane* is inapposite. Unlike the trust beneficiaries in *Mullane*, the Unmanifested Asbestos Claimants here were not just unknown to the Debtors—they were unidentifiable even to themselves. Even if they saw and appreciated the significance of the notice,

they did not have the necessary information or foresight to make an intelligent decision about whether to file claims. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 628 (1997). Thus, the notice was not constitutionally adequate or effective.

### 1. *Adequacy of notice depends on the circumstances of the case.*

In *Mullane*, the Supreme Court held that, at a minimum, the due process clause requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314. In confirming now-defunct previous plans in these cases, this Court relied on *Mullane*, holding the Debtors' Bar Date notice program satisfied the requirements of due process for Unmanifested Asbestos Claimants, and their claims could be discharged by the Plan. *See* Hr'g Tr. 58:2-6, Dec. 3, 2015, D.I. 7255; Hr'g Tr. 25:19-23, 26:13-16, Feb. 17, 2017. The circumstances of the *Mullane* case, however, were far different from the circumstances of these cases.

*Mullane* involved a proceeding for judicial settlement of the accounts of a common trust fund created by pooling a number of small trust funds for administrative purposes. *Mullane*, 339 U.S. at 310. As required by state law, the lower court appointed two special guardians: one to represent persons known or unknown who did not otherwise appear in the proceeding and had interests in the income of the fund, and another to represent similar persons with interests in the principal of the fund. *Id*. As was also required by state law, beneficiaries of the trust were notified of the proposed trust settlement by publication in a local newspaper. *Id*. at 309. The special guardian for the income beneficiaries challenged the constitutional adequacy of the notice.

The Supreme Court held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. at 314. The means employed to provide notice, the

Court emphasized, "must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id*. at 315.  Thus, the Court held that present beneficiaries with known addresses were entitled to personal notice by mail.  The Court also held that, under the circumstances of that case, publication notice was adequate for the unknown beneficiaries.  *Id.* at 318.  "[I]n view of the character of the proceedings and the nature of the interest" involved, the Court held, the trustee was not required to undertake extensive searches to locate unknown "conjectural or future" beneficiaries, as the expense of extended searches would outweigh the potential advantages.  *Id.* at 317-18.  Rather, the Court held, the unknown beneficiaries could be noticed by publication, which, the Court found, was "all that the situation permits."  *Id*. at 317.

The Supreme Court has emphasized the "truism" that due process, "unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Connecticut v. Doehr*, 501 U.S. 1, 10 (1991) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).  "Whether adequate notice has been provided depends on the circumstances of a particular case." *Wright*, 679 F.3d at 108.  In *Mullane*, notice by mail or (in the case of unknown persons) by publication was sufficient; in other circumstances, the Supreme Court has made clear, additional measures may be required to satisfy the mandates of due process.

Six years after the *Mullane* decision, the Supreme Court was presented with such circumstances in *Covey v. Town of Somers*, 351 U.S. 141 (1956).  In that case, the Court held that where the person to whom the notice is addressed is incompetent and not represented by a guardian—and thus cannot be informed by notice, or make an intelligent decision—notice by mail or publication will not satisfy the requirements of due process set out in *Mullane*.  *Id.* at 146.  In *Covey*, the Town of Somers foreclosed on property owned by Nora Brainard, in order to enforce tax liens.  Notice of the foreclosure was sent by mail, posted at the post office, and published in

two local papers. *Id.* at 144. Ms. Brainard was a long-time resident of the town, and town officials were aware that she did not have the "mental capacity to handle her affairs or to understand the meaning of any notice served upon her." *Id.* at 146. Shortly after the foreclosure, Ms. Brainard was declared of unsound mind, and committed. *Id.* at 144. Appellant was appointed her fiduciary, and sought to overturn the foreclosure, asserting that her due process rights had been violated. *Id.*

In response, the town argued that the due process clause "does not require the State to take measures in giving notice to an incompetent beyond those deemed sufficient in the case of the ordinary taxpayer." *Id.* The Court rejected that argument. Quoting *Mullane*, the Court reiterated that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties" of the action, that "process which is a mere gesture is not due process," and that the means of providing notice must be what one would use if one were "desirous of actually informing the absentee." *Id.* "Notice to a person known to be an incompetent who is without the protection of a guardian," the Court held, "does not measure up to this requirement." *Id.* Because Ms. Brainard could not understand the notice and its implications, the Court held, it did not satisfy due process. *Id.* at 147.

### 2. *Forms of notice generally deemed sufficient are not constitutionally adequate or effective when directed to Unmanifested Asbestos Claimants.*

In these cases as well, notice by mail and publication, which would be deemed sufficient in most cases, was not constitutionally adequate or effective with respect to unidentifiable and unselfconscious Unmanifested Asbestos Claimants. The Debtors' notice to Unmanifested Asbestos Claimants, who were not represented by an independent estate fiduciary, was a "mere gesture" that was not "reasonably calculated" to effectively reach them, and does not meet the requirements of *Mullane*, just as notice directed to an incompetent person not represented by a guardian does not suffice. *Covey*, 351 U.S. at 146. Unlike the unknown "conjectural or future"

beneficiaries of the trusts in *Mullane*—who could be identified and could recognize themselves as the persons to whom an appropriate notice was directed[18]—Unmanifested Asbestos Claimants could not possibly be identified, even by themselves, as they could not know that they or their loved ones would succumb to asbestos-related illnesses in the future.  Without such prescience, they could not make an informed, intelligent decision about whether to file claims. [19]

The Supreme Court in *Amchem* recognized these "impediments to the provision of adequate notice" to claimants who have "no perceptible asbestos-related disease."  *Amchem*, 521 U.S. at 628.  That case involved an effort to provide opt-out notice to a putative class of asbestos victims under Federal Rule of Civil Procedure 23.  The Court emphasized that even if unmanifested asbestos claimants were to see and fully appreciate the significance of a notice, they do not have the information or foresight necessary to make an intelligent decision:

---

[18]    The trust fund at issue in *Mullane* was comprised of 113 participating estates or trusts with 315 known beneficiaries.  *See In re Cent. Hanover Bank & Tr. Co.*, 75 N.Y.S.2d 397, 408 (N.Y. Surr. Ct. 1947).  The "unknown" interested parties could have been identified, albeit only by "extensive investigations . . . of the births, deaths and other occurrences which might increase, decrease or otherwise change the groups of interested persons."  *Id.  See* Georgene Vairo, *Mass Tort Bankruptcies: The Who, the Why and the How*, 78 Am. Bankr. L.J. 93, 134 (2004) ("[N]either *Mullane* nor any case following it involved claimants who were not only unknown to the party sending the notice but who were in essence unknown to themselves and who therefore would not recognize themselves as the intended targets of the notice even were the notice actually received.").

[19]    The Debtors have argued that, because nearly 14,000 proofs of claim were submitted by persons who had not been diagnosed with asbestos-related illnesses, the notice program was successful.  *See* Debtors' Memorandum of Law in Support of Confirmation of the Seventh Amended Joint Plan of Reorganization as it Applies to the EFH/EFIH Debtors ¶ 193, Feb. 10, 2017, D.I. 10795 ("**Debtors' Feb. 10, 2017 Conf. Br.**").  That some who were exposed but not ill filed claims does not prove that the notice was constitutionally sufficient.  According to the Debtors, almost 70,000 notices were mailed to known potential claimants; tens of thousands additional potential claimants, including household members who were exposed when workers brought the Debtors' asbestos home on their clothing, are unknown to the Debtors.  It is apparent that the bulk of Unmanifested Asbestos Claimants, including the Objectors, did not file claims, and that the notice program was *not* successful in providing effective notice.

> Many persons in the exposure-only category . . . may not even know of their exposure, or realize the extent of the harm they may incur.  Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out.
>
> Family members of asbestos-exposed individuals may themselves fall prey to disease or may ultimately have ripe claims for loss of consortium.  Yet large numbers of people in this category—future spouses and children of asbestos victims—could not be alerted to their class membership.  And current spouses and children of the occupationally exposed may know nothing of that exposure.

*Id.*

In *Amchem*, the Court affirmed the Third Circuit's denial of class certification on the ground that Rule 23's requirements of common issue predominance and adequacy of representation were not satisfied.  Thus, the Court did not reach the issue of whether the class notice was constitutionally adequate.  Nonetheless, the Court emphasized "the gravity of the question whether class action notice sufficient under the Constitution and Rule 23 could ever be given to legions so unselfconscious and amorphous." *Id.*[20]  *See also Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 633 (3d Cir. 1996) ("Problems in adequately notifying and informing exposure-only claimants of what is at stake . . . may be insurmountable."); *Stephenson v Dow Chem. Co.,*

---

[20]    That the Supreme Court's statements are, technically, dicta does not mean that they may be ignored.  The Third Circuit has instructed that lower courts:

> . . . should not idly ignore considered statements the Supreme Court makes in dicta. The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket.  'Appellate courts that dismiss these expressions [in dicta] and strike off on their own increase the disparity among tribunals (for other judges are likely to follow the Supreme Court's marching orders) and frustrate the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there.'

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 561 (3d Cir. 2003) (citation omitted).

273 F.3d 249, 261 n.9 (2d Cir. 2001) ("*Amchem* indicates that effective notice could likely not

ever be given to exposure-only class members."), *aff'd in relevant part and rev'd in part sub nom.*

*Dow Chem. Co. v. Stephenson*, 539 U.S. 111 (2003).[21]

> **B.      Due process requires that Unmanifested Asbestos Claimants must be adequately represented in bankruptcy proceedings.**

In *Amchem*, the Supreme Court instructed that unmanifested asbestos claims must be

adequately represented in legal proceedings that may affect their rights, and that the same persons

cannot adequately represent both the currently-afflicted and those whose asbestos-related illnesses

have not yet been diagnosed. *See Amchem*, 521 U.S. at 626. "In significant respects," the Court

stated, "the interests of those within the single class are not aligned. Most saliently, for the

currently injured, the critical goal is generous immediate payments. That goal tugs against the

interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future."

*Id.* Because of this inherent conflict of interest, the same persons cannot represent the interests of

both those currently-afflicted and those who will fall ill or suffer injury in the future. *Id.*

The Third Circuit has clearly instructed that the principles set out in *Amchem* mandate that

unmanifested asbestos claimants must be adequately represented by an unconflicted representative

---

[21]      Lower courts also have held that constitutionally adequate notice cannot be provided to unmanifested asbestos claimants. *See, e.g., In re Flintkote Co.*, 486 B.R. 99, 128 (Bankr. D. Del. 2012) ("An exposed asbestos creditor who has not yet manifested an injury . . . is one who is impossible to identify, such that providing actual notice is, itself, impossible."); *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir. 1994) (notice to future claimants "might well be infeasible"); *In re Eagle-Picher Indus. Inc.*, 137 B.R. 679, 680 (Bankr. S.D. Ohio 1992) (noting that "[f]uture claimants, of course, would not be affected by a bar date, for they are as a class inherently unknown and unknowable."). *See also* Laura B. Bartell, *Due Process for the Unknown Future Claim in Bankruptcy—Is This Notice Really Necessary?* 78 Am. Bankr. L.J. 339, 354, 366 (2004) ("[N]otice by publication is an exercise in futility as applied to creditors who are not only unknown to the debtor, but are also unknown to themselves. . . . [W]hen an individual cannot recognize that he or she has a claim in a bankruptcy case and, therefore, cannot make a decision about how to assert that claim, that person is functionally or constructively 'incompetent' for purposes of the bankruptcy case.").

in bankruptcy proceedings as well, regardless of whether they hold bankruptcy claims under Section 101(5): "In the resolution of future asbestos liability, under bankruptcy or otherwise, future claimants [including those exposed pre-petition] must be adequately represented throughout the process." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 (3d Cir. 2004) (citing *Amchem*, 521 U.S. at 625–28)); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999); 11 U.S.C. § 524(g)(4)(B)(i). *See also In re Amatex Corp.*, 755 F.2d 1034, 1041-43 (3d Cir. 1985) (declining to decide whether unmanifested asbestos claimants held bankruptcy claims within the scope of Code 101(5), and ruling that such claimants were entitled to representation by a separate estate fiduciary regardless); *Wright*, 679 F.3d at 108 n.7 (noting that future claimants' representatives have been appointed in bankruptcy proceedings "in part, to address the broader issue of whether discharging unknown future claims comports with due process.").

When it enacted Bankruptcy Code Section 524(g), Congress also recognized that unidentifiable future claimants (including unmanifested claimants exposed prepetition) "do not have their own voice"[22] and that a legal representative must be appointed to represent their interests. Thus Section 524(g), which addresses the "unique problems and complexities associated with asbestos liability," provides that "the court must appoint a legal representative to act as fiduciary for the interests of future claimants." *Combustion Eng'g*, 391 F.3d at 234, 237.

In these cases, the Debtors vigorously—and successfully—opposed the appointment of a legal representative for Unmanifested Asbestos Claimants, arguing, among other things, that a legal representative was not required because Unmanifested Asbestos Claimants were already adequately represented by the E-Side creditors' committee. *See* Obj. of Energy Future Holdings Corp., *et al.*, to the Mot. of Charlotte Liberda and Curtis Liberda to Appoint Legal Representative

---

[22]    H.R. Rep. No. 103-835, at 40 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3349.

and Joinder of Shirley Fenicle, as Successor-in-Interest to the Estate of George Fenicle, and David

William Fahy to the Mot. of Charlotte and Curtis Liberda to Appoint Legal Representative ¶¶ 5,

Aug. 4, 2015, D.I. 5209.[23]    But the E-Side committee could not adequately represent both

currently-afflicted claimants and Unmanifested Asbestos Claimants, because their interests are

inherently in conflict.  *See Amchem*, 521 U.S. at 626.[24]  The Debtors argued also that their asbestos

liabilities were not material, and that the Debtors' bankruptcies were not a result of those liabilities.

*See* Obj. to App't of Legal Rep. ¶¶ 1, 8.[25]  The Debtors since have acknowledged that the Asbestos

Debtors' bankruptcies were indeed asbestos-driven,[26] but did not do so until long after this Court

---

[23]    The Debtors also pointed to the law firms that had stepped forward seeking to protect the interests of these claimants.  The Court subsequently found that the law firms did not have standing.  *In re EFH Corp.,* 522 B.R. at 526.

[24]    The E-Side Committee recognized the conflict, noting "potential, if not actual, conflict of interests between the Unmanifested Asbestos Claimants and other persons and entities within the constituency represented by . . . " the E-Side Committee because the interests of those other persons and entities was "to maximize their own recovery, which may require minimizing the claims of Unmanifested Asbestos Claims."  Notice of Emergency Mot. of the EFH Official Committee for Entry of an Order (I) Adjourning the Hearing, Currently Scheduled for June 1, 2015, on the Debtors' Proposed Form of Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form of and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof ¶ 9 & n.4, May 21, 2015, D.I. 4553.

[25]    *See also* Debtors' Reply in Support of Bar Date with Respect to Asbestos Claims ¶ 6, Aug. 11, 2014, D.I. 1804 ("**Debtors' Bar Date Reply**").  *See also In re EFH Corp.*, 522 B.R. at 525 ("The Debtors believe that litigation and settlement expenses incurred in connection with asbestos claims against the Debtors are not material."); *id.* at n.8 (citing Hr'g Tr. 71:14-16, Aug. 13, 2014 (comparing $3 million estimated annual expenses with estimated $36 billion in assets, $49 billion in liabilities, including funded indebtedness, and $5.9 billion in consolidated annual revenues for the year ending December 31, 2013)).

[26]    *See* Opposition of Energy Future Holdings Corp., *et al.*, to the Motion of Shirley Fenicle, David William Fahy, John H. Jones, and David Heinzmann to Dismiss Chapter 11 Petitions of Asbestos Debtors EECI, Inc., EEC Holdings, Inc., LSGT SACROC, Inc., and LSGT Gas Co. LLC Pursuant to 11 U.S.C. § 1112(b) at 2, 14, Nov. 23, 2016, D.I. 10249 (asserting that the Asbestos Debtors "had no realistic alternative to filing for bankruptcy" (¶ 2, at 2) because they were about to be overwhelmed by their asbestos liabilities: "the impending bankruptcy filing of the other Debtors risked cutting off the sole cash source to fund asbestos liabilities" (¶ 33, at 14).  *See also* Op. at 2, Dec. 19, 2016, D.I. 10414.

had already declined to appoint a legal representative.  *See* Order Denying Mot. of Charlotte Liberda and Curtis Liberda to Appoint Legal Representative, Aug. 11, 2015, D.I. 5265.

> ### C.  The threefold inquiry set out by the Supreme Court in *Mathews v. Eldrige* and *Connecticut v. Doehr* shows that due process was not been afforded.

The Objectors do not contend that it would never be possible to discharge unmanifested asbestos claims in a manner that comports with due process.  But such a discharge is not constitutionally permissible where, as here, no legal representative was appointed to protect their interests, and they were afforded no other protections of their rights.

In *Connecticut v. Doehr*, the Supreme Court considered what process must be afforded where, as in these cases, a private party enlists the aid of the government to deprive others of property without constitutionally adequate notice.  501 U.S. 1, 9 (1991).  There, a plaintiff in a civil suit petitioned to attach defendant Brian Doehr's home.  The suit did not involve, and the plaintiff had no pre-existing interest in, the home.  Nonetheless, Connecticut law permitted attachment on the plaintiff's verification that there was "probable cause" to sustain the validity of the plaintiff's claims.  Mr. Doehr filed suit in federal court, asserting that the attachment violated due process.  The district court upheld the state statute; the Court of Appeals for the Second Circuit reversed.

The Supreme Court affirmed the decision of the Court of Appeals, and instructed that, in determining what process must be afforded when a private party enlists the aid of the government to deprive another of property by prejudgment attachment or similar procedure, a court must apply the threefold inquiry set out by the Court in *Mathews v. Eldridge*, which requires, in such cases:

> [F]irst, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, . . . principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the

government may have in providing the procedure or forgoing the added burden of providing greater protections.

*Doehr*, 501 U.S. at 11 (citing *Mathews v. Eldridge*, 424 U.S. at 335).

Applying these factors, the Court found, first, that the property interests affected by attachment are significant. *Id.*, at 12.  The Court noted that attachment clouds title and impairs the ability to sell the property, and found that even such a temporary or partial impairment of property rights is "sufficient to merit due process protection."  *Id.*  Second, the Court found that the risk of erroneous deprivation was high, because at most the state statute required only that the plaintiff demonstrate probable cause to believe judgment would be rendered in favor of the plaintiff, which could be made on the basis of conclusory, self-serving statements, with no response from the defendant. *Id.* at 14.  That a prompt post-attachment hearing was available did not reduce the risk, as it would not cure the temporary deprivation that would already have occurred. *Id.* at 15.  Finally, the interests of the plaintiff were too minimal to justify pre-judgment attachment:  his only interest was "to ensure the availability of assets to satisfy his judgment if he prevailed on the merits of his action," and he had not even alleged that Mr. Doehr was going to take steps to encumber the real estate or make it unavailable to satisfy a judgment, or that there was any other exigent circumstance. *Id.* at 16.  Moreover, there was no governmental interest at stake.  *Id.*  Thus, the Court held, the statute "clearly falls short of the demands of due process." *Id.* at 18.

Congress provided a means of dealing with unmanifested asbestos claims that passes muster under the *Mathews/Doehr* inquiry when it enacted Bankruptcy Code Section 524(g) to address the "unique problems and complexities associated with asbestos liability," while supporting the "equitable resolution of asbestos-related claims" and making it "possible for future asbestos claimants to obtain substantially similar recoveries as current claimants in a manner consistent with due process."  *Combustion Eng'g*, 391 F.3d at 234.  Under that statute, a debtor

against whom asbestos-related claims were asserted prepetition may propose and have confirmed

a plan under which all current and future asbestos claims will be channeled to a trust that will step

into the debtor's shoes and assume responsibility for the resolution and payment of such claims.

In exchange for funding the trust, the debtor will be released from liability for the asbestos claims.

The channeling injunction will issue only if the debtor's plan provides certain safeguards for the

rights of future, unmanifested asbestos claimants.  As set out by the Third Circuit in *Combustion

Engineering*:

> . . . [t]he several prerequisites set forth in § 524(g) are designed to protect the
> interests of future claimants whose claims are permanently enjoined.  Among these,
> the plan must be approved by a super-majority of current claimants, and must
> provide substantially similar treatment to present and future claimants.
> Furthermore, the court must appoint a futures representative to act as fiduciary for
> the interests of future claimants.

*Combustion Eng'g*, 391 F.3d at 237 (citing 11 U.S.C. §§ 524(g)(2)(B)(ii)(IV)(bb),

524(g)(4)(B)(1), 524(g)(2)(B)(i)(V)).

Here, the Debtors ensured that no legal representative was appointed to protect the interests

of Unmanifested Asbestos Claimants, and have proposed a plan that does not provide any of the

protections for claimants set out in Section 524(g).  Having deliberately eschewed the path

provided by Congress to deal with asbestos claims, the Debtors cannot, in the circumstances of

these cases, have their Plan confirmed, insofar as it would purport to discharge Unmanifested

Asbestos Claims.

An examination of the *Mathews/Doehr* factors demonstrates that the discharge of

Unmanifested Asbestos Claims under the Plan in these cases would "clearly fall[] short of the

demands of due process."  *Doehr*, 501 U.S. at 11.  Thus, the claims cannot be discharged: "[I]f a

claimant is not afforded due process, a plan of reorganization and confirmation order that purport

to discharge claims will not do so."  *Wright*, 679 F.3d at 107 n.6.

### 1.  *The private interests of the claimants are significant.*

The private interests of Unmanifested Asbestos Claimants—including the Objectors—are significant.[27]  The right to pursue an action for damages caused by a tortfeasor is "a private interest of historic and continuing importance."  *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53-54 (1993) (discussing right to maintain control over one's home).  Discharging their claims would deprive Unmanifested Asbestos Claimants of their rights to pursue their otherwise valid claims and obtain compensation for their injuries.

The Court has previously stated that if claimants' due process rights are violated, they may return to this Court after confirmation to seek reinstatement of their claims.  *See* Hr'g Tr., 62:15-63:4, Dec. 3, 2015.  The Debtors argue that if, post-confirmation, the Court finds that claimants' due process rights were violated by the discharge, the confirmation order could not have discharged their claims, and thus they could not have been deprived of their rights.  *See* Debtors' Feb. 10, 2017 Conf. Br. ¶ 198.  This is mere sophistry: even if the claims were reinstated, the deprivation of property, and violation of due process, would have already occurred.

In *Doehr*, the Court emphasized that the "temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection."  *Doehr*, 501 U.S. at 12.  By the same token, a temporary impairment of the claimants' rights to pursue their claims in non-bankruptcy courts also triggers due process concerns.  "Any significant taking of property by the State is within the purview of the Due Process Clause."

---

[27]    The Debtors have suggested that the private interests affected are less important because not all persons exposed to the Debtors' asbestos will fall ill.  *See* Debtors' Feb. 10, 2017 Conf. Br. ¶ 197.  This makes no sense: the fact that some of those exposed to the Debtors' asbestos will never suffer injury from that exposure does not mean that the interests of Unmanifested Asbestos Claimants, who have suffered or will suffer injuries after the Bar Date, are less significant.

*Fuentes v. Shevin*, 407 U.S. 67, 86 (1972).  As in *Doehr*, a post-confirmation hearing in these cases "would not cure the temporary deprivation" caused by the discharge.  *Doehr*, 501 U.S. at 15.

## 2.  *Erroneous deprivation is certain, and the value of additional safeguards is apparent.*

The risk of erroneous deprivation is not just substantial in these cases:  it is certain.  Because notice was insufficient, and no legal representative was appointed to protect the interests of Unmanifested Asbestos Claimants and preserve their claims, hundreds if not thousands of otherwise valid and compensable non-bankruptcy claims will be discharged if the Plan is confirmed.[28]  Indeed, this Court has acknowledged that "there may be unmanifested claimants for whom the bar date, as applied to their specific case may not comport with due process."  Hr'g Tr., 59:6-11, Dec. 3, 2015.  No protections have been provided to these claimants, and the risk of erroneous deprivation is unacceptable.  *See James Daniel Good Real Property*, 510 U.S. at 55 (holding that "[t]he practice of *ex parte* seizure" at issue in that case "creates an unacceptable risk of error" because "[t]he *ex parte* preseizure proceeding affords little or no protection to the innocent owner.").

The availability of a post-confirmation hearing on a motion by claimants to reinstate their claims provides no assurance against erroneous deprivation.  Given the congestion in the federal courts, a ruling on such a motion could take many months, or even years, especially if appeals are involved.  *Cf. James Daniel Good Real Property*, 510 U.S. at 56 (noting the delay that would be caused by "the congested civil dockets in federal courts").  That delay could result in the loss of

---

[28]    Objectors need not demonstrate that they will succeed on the merits of their non-bankruptcy claims in order to demonstrate that their due process rights would be violated by discharge of those claims pursuant to the Plan.  *See Fuentes v. Shevin*, 407 U.S. 67 (1972) (internal citation omitted) ("To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merit.").

claims for damages for pain and suffering, which, in some jurisdictions, do not survive the death of the injured party. *See, e.g.*, Cal. Civ. Proc. Code § 377.34 (West) ("In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death . . . and do not include damages for pain, suffering, or disfigurement.").

Moreover, the Debtors would not bear the burden of proof in a later hearing on a reinstatement motion. *Cf. Mitchell v. W.T. Grant*, 416 U.S. 600, 610 (1974) (upholding prejudgment seizure statute because, among other protections, it provided for an immediate post-deprivation hearing at which the lienholder who sought seizure of property bore the burden of proof);[29] *North Georgia Fishing v. Di-Chem*, 419 U.S. 601, 606-08 (1975) (finding garnishment statute violated due process because, among other things, "[t]here is no provision for an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment."). Rather, claimants would bear the burden of moving to reinstate their claims (or face motions for contempt if they commence suits in non-bankruptcy courts without doing so), and would bear the burden of proving that their due process rights were violated.

This is not a mere procedural speedbump, as the Debtors suggest. *See* Debtors' Feb. 10, 2017 Conf. Br. ¶ 198. The burden of having to commence proceedings before this Court, which may be far from the claimant's home, in which the claimant must carry the burden of demonstrating a violation of due process, is a significant barrier to suit that imposes substantial costs and burdens on the plaintiff, and on an already over-burdened federal court system.

---

[29]    Moreover, the Court in *Mitchell* found that prejudgment seizure of the property was justified in order to prevent alienation or waste of the encumbered property. 416 U.S. at 609. By contrast, in these cases, as in *Doehr*, there are no exigent circumstances that would justify extinguishing the rights of the claimholders without notice.

The value of additional safeguards—including appointing a legal representative for Unmanifested Asbestos Claimants, and providing for equitable compensation when they suffer asbestos-related injuries—is obvious, and has been recognized by courts and by Congress. For example, District Court Judge Weinstein, at that time designated to hear asbestos cases in the Eastern and Southern Districts of New York, observed that "future interests are best protected 'by requiring that "fair and just recovery procedures be[] made available" to future claimants, including unmanifested claimants, "and by ensuring that they receive vigorous and faithful vicarious representation.'" *Findley v. Falise (In re Joint E. & S. Dist. Asbestos Litig.)*, 878 F. Supp. 473, 565 (E.D.N.Y. and S.D.N.Y. 1995) (citation omitted), *aff'd in part, vacated in part, In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764 (2d Cir. 1996). *See* part I.B, above.

Congress also has recognized the value of such safeguards. Thus, Bankruptcy Code Section 524(g) requires, among other things, that a legal representative for future claimants (including unmanifested claimants exposed pre-petition) be appointed, and that mechanisms be in place to ensure that similar current and unmanifested claims will obtain substantially similar recoveries. *See* 11 U.S.C. §§ 524(g)(2)(B)(ii)(V), 524(g)(4)(B)(i); *Combustion Eng'g*, 391 F. 3d at 234. Whether or not Section 524(g) provides the exclusive route for bankruptcy treatment of Unmanifested Asbestos Claims need not be decided here. It bears noting, however, that the Third Circuit has instructed that one of the factors to be considered in determining whether such claims may be discharged is "whether it was reasonable or possible for the debtor to establish a trust for future claimants as provided by § 524(g)." *JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.)*, 607 F.3d 114, 127-28 (3d Cir. 2010). Here, the Debtors chose not to establish a Section 524(g) trust. Because the Unmanifested Asbestos Claimants were not—and could not be—given constitutionally sufficient notice of the Bar Date, were not adequately represented, and were not

provided any other protections of their rights, their claims cannot be discharged under the Debtors' Plan.

> ### 3. The Debtors have no legitimate countervailing interest, and the governmental interest in ensuring equitable treatment of claimants militates against discharge.

The Debtors have no legitimate countervailing interest in having Unmanifested Asbestos Claims discharged. In the past, the Debtors have asserted that discharging these claims was necessary to convince bidders to agree to take on remaining asbestos liabilities, and to reinstate the intercompany claims among the Asbestos Debtors and EFH Corp. so that reinstated asbestos claims may be paid. *See, e.g.*, Debtors' Feb. 10, 2017 Conf. Br. ¶ 186. This argument rests on the false premise that if the intercompany claims were not reinstated, they would be treated like any other unsecured claims, and the Asbestos Debtors would receive pennies on the dollar. But if EFH had not agreed to the reinstatement, it could have been subject to a fraudulent conveyance action to recover the funds borrowed from the Asbestos Debtors.[30] The remedy would be avoidance of

---

[30]  *See* 11 U.S.C. § 544(b) (incorporating state law or fraudulent conveyance). "Fraudulent conveyance law aims 'to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away.'" *In re PWS Holding Corp.*, 303 F.3d 308, 313 (3d Cir. 2002). These purposes are "only more acute where [as here] the creditors are personal injury claimants." *In re W.R. Grace & Co.*, 281 B.R. 852, 868 (Bankr. D. Del. 2002). In cases involving tort claimants under Section 544(b), the limitations period will typically begin to run when the fraud was discovered. *See Lippe v. Bairnco Corp.*, 218 B.R. 294, 296 (S.D.N.Y. 1998) (holding that claimants "who were unaware of any asbestos injury prior to two years before Keene filed for bankruptcy are not barred from asserting an actual fraud claim against any of the corporate defendants because the actual fraud claim is not timebarred. This category of claimants can be considered "actual creditors" pursuant to § 544(b) and they can attack any of the [t]ransactions pursuant to [New York Debtor and Creditor Law § 276]."); *In re G-I Holdings, Inc.*, 313 B.R. 612, 648-49 (Bankr. D.N.J. 2004) (holding that the "Committee could rely on the one-year discovery rule . . . to avoid the Pushdown Transaction as an actual fraud pursuant to § 544(b) on behalf of asbestos tort victims . . . [p]rovided that the Committee could identify in its complaint at least one asbestos victim that did not become aware of an asbestos-related injury until one year prior to the date G-I Holdings filed for bankruptcy.").

the transfer, and any funds found to have been fraudulently conveyed would be part of the Asbestos Debtors' estates, not EFH's.[31]  And if a fraudulent transfer claim were not made in the bankruptcy cases, the reorganized parent EFH Corp. could find itself liable for asbestos claims against the Asbestos Debtors on theories of alter ego and fraudulent conveyance.  ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████  *See also In re Craft Plumbing Serv.*, 53 B.R. 654, 60 (Bankr. M.D. Fla. 1985) ("[I]f the recipient of a preferential or a fraudulent transfer is permitted to retain what was transferred just because he or she received a discharge in bankruptcy, this interpretation would produce a totally unacceptable result, totally contrary to the well-established policy of the Bankruptcy Code and would frustrate the intent of Congress in granting the special voiding powers to the Trustee found in § 547 and § 548.").  Thus, reinstatement of the intercompany claims was as much—or more—for the benefit and protection of reorganized EFH and its new owners as for asbestos claimants.

The Debtors have asserted that bidders insisted that Unmanifested Asbestos Claims be discharged.  *See* Debtors' Feb. 10, 2017 Conf. Br. ¶ 186.  ███████████████

████████████████████████████████████████████████████████████████

---

[31]    *See In re Hechinger Inv. Co. of Delaware*, 274 B.R. 71, 89 (D. Del. 2002) ("[T]he remedy for a fraudulent transfer claim is avoidance of the transfer and recovery from the transferee."); *In re Duke & King Acquisition Corp.*, 508 B.R. 107, 143 (Bankr. D. Minn. 2014) ("This vehicle [avoidance of a fraudulent transfer] for relief is available only where there is a preexisting relationship of debtor and creditor.  Through it, a debtor's transfer to a third party may be undone—reversed in legal effect—on proof of statutorily-prescribed elements.").  *See also* 5 Collier on Bankruptcy ¶ 548.01 (2016) ("Avoidance," or "nullification," "generally means that the transfer is retroactively ineffective and that the transferee legally acquired nothing as a result of the transfer.").

██ █ ████████████████████████████████████████ A 524(g)

plan, of course, would have provided the certainty regarding asbestos liabilities that the Debtors say they were seeking to achieve, *see* Debtors' Feb. 10, 2017 Conf. Br. ¶ 185, and would do so without violating the due process rights of Unmanifested Asbestos Claimants. The Debtors rejected the suggestion.

The Debtors also have asserted that if a bidder had agreed to assume liability for all Unmanifested Asbestos Claims, "such a concession would have undoubtedly come at a material and significant cost, to the detriment of every other EFH Corp. and EFIH stakeholder." Feb. 10, 2017 Conf. Memo ¶ 186, D.I. 10795. Essentially, the Debtors argue that discharging Unmanifested Asbestos Claims is justified because it increased the purchase price, resulted in higher payments to creditors of the Asbestos Debtors' parent, EFH Corp., and lowered the asbestos-related liabilities of the Reorganized Debtors and their new owners. But discharging the claims of a group of creditors of the Asbestos Debtors in order to benefit their parent, EFH, and EFIH's creditors, is not a valid bankruptcy purpose. To the contrary, it is fundamentally unjust and unfair to Unmanifested Asbestos Claimants, and is in direct contravention of the fundamental principle of bankruptcy that creditors must be paid before stockholders retain equity. *Cf. Bank of America Nat'l Trust and Sav. Ass'n v. 203 North LaSalle Street P'ship*, 526 U.S. 434, 444 (1999) (noting "the danger inherent in any reorganization plan proposed by a debtor . . . that the plan will simply turn out to be too good a deal for the debtor's owners.").

The Supreme Court has instructed that debtors should not be permitted to "use the reorganization process to gain an unfair advantage," *203 N. LaSalle St. P'ship*, 526 U.S. at 444, and should not obtain a windfall by the mere happenstance of bankruptcy. *See Butner v. United States*, 440 U.S. 48, 55 (1979). Allowing the Debtors in these cases to use bankruptcy to escape

their tort liabilities would create a "further incentive to enter bankruptcy for reasons that have nothing to do with the purposes of bankruptcy law." *Zerand-Bernal Grp., Inc.*, 23 F.3d at 163 (holding that a sale under Code § 363 could not be used to discharge the successor liabilities of non-debtors for future bankruptcy claims in order to maximize the value of the assets sold) (citing Douglas G. Baird & Thomas H. Jackson, *Cases, Problems, and Materials on Bankruptcy* 48–55 (2d ed. 1990)).

Moreover, there is no "ancillary interest of the government" weighing in favor of discharging Unmanifested Asbestos Claims in these cases. The Debtors cite to "the mandate under the Federal Rules of Bankruptcy that a bankruptcy court 'shall' set a bar date for claims." Debtors' Feb. 10, 2017 Conf. Br. ¶ 199 (citing Fed. R. Bankr. P. 3003(c)). But both the District Court and the Bankruptcy Court in this district have regularly held that Rule 3003 does not require that *all* claims be subject to a bar date, and that bar dates are not necessary for asbestos-related claims.[32] In any event, the question here is whether the government has an interest in discharging Unmanifested Asbestos Claims, not whether the Debtors had a valid bankruptcy purpose for seeking the Bar Date three years ago.

In most reorganization cases, the goal of providing the debtors a fresh start weighs heavily in favor of discharging claims for which proofs of claims were not filed. *See Stellwagen v. Clum*, 245 U.S. 605, 617 (1918) (noting that the bankruptcy goal of affording debtor a "fresh start" is of

---

[32]     *See, e.g., In re Armstrong World Indus., Inc.*, No. 00-4471 (D. Del.); *Owens Corning v. Credit Suisse First Boston (In re Owens Corning)*, Nos. 00-3837-3854 (D. Del.); *In re Combustion Eng'g, Inc.*, No. 03-10495 (Bankr. D. Del.); *In re Federal-Mogul Global, Inc.*, No. 01-10578 (Bankr. D. Del.); *In re Kaiser Aluminum Corp*, No. 02-10429 (Bankr. D. Del.). Other courts in this circuit and elsewhere are in accord. *See, e.g., In re Global Indus. Techs., Inc.*, No. 02-21626 (Bankr. W.D. Pa.); *In re N. Am. Refractories Co.*, No. 02-20198 (Bankr. W.D. Pa.); *In re Mid-Valley, Inc.*, No. 03-35592 (Bankr. W.D. Pa.); *In re Congoleum Corp.*, No. 03-51524 (Bankr. D.N.J.); *In re JT Thorpe*, 02-14216 (Bankr. C.D. Cal.); *In re Quigley Co.*, 346 B.R. 647, 653 (Bankr. S.D.N.Y. 2006); *In re Keene Corp.*, 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995).

"great public interest").  Here, however, the Debtors are not seeking a discharge of Unmanifested

Asbestos Claims to obtain a fresh start: asbestos claims for which proofs of claim have been timely

filed are going to be reinstated, or "passed through" to the Reorganized Debtors.  *See* Plan art.

III(B)(13).  According to the Debtors, the Reorganized Debtors will be able to pay all asbestos

claims as they arise in the future, regardless of how many claims arising from pre-petition exposure

are asserted.  Hr'g Tr. 57:12-15, Dec. 3, 2015.  ███████████████████

████████████████████████████████████████████████████

███████████████████████████ ███████████████████████████

████████████████████████████████████████████████████

█████████████████████ ██

        The relevant governmental interest here is the interest in ensuring equality of distribution

among creditors in bankruptcy.  *See Begier v. IRS*, 496 U.S. 53, 58 (1990) ("Equality of distribution

is a central policy of the Bankruptcy Code.").  The Third Circuit has instructed that this central

bankruptcy policy requires consideration of "the Plan's considering the treatment of current

asbestos claimants relative to future asbestos claimants (including those exposed pre-petition)."

*Combustion Eng'g*, 391 F.3d at 242. The fundamental bankruptcy goal of equitable treatment of

---

██ ██ ██████████████████████████████ ███████████████████

████████████████████████████████████ █████████

████████████████████████████████████████████████████

██████████████████████████████

██ ██ ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

creditors, which was enshrined by Congress in Section 524(g),[35] dictates that the Unmanifested Asbestos Claims cannot be discharged in the circumstances of these cases.

### 4.   *Unmanifested Asbestos Claims cannot be discharged in the circumstances of these cases.*

The issue before this Court is whether discharging Unmanifested Asbestos Claims in the circumstances of these cases would violate due process.  The Court need not decide whether such claims can ever be discharged, or the circumstances under which a discharge would comport with due process.  Objectors note, however, that they are not aware of any case in which a court entered an order discharging unmanifested asbestos claims without compensation where, as here, the debtor was aware that a significant number of such claims would arise in the future.[36]

---

[35]    *See* 11 U.S.C. § 524(g)(4)(B)(i) (The trust established to assume and resolve debtor's current and future asbestos claims must "operate through mechanisms . . . that provide reasonable assurance that the trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner.").

[36]    Objectors are aware of only one other case in which a court indicated an intention to impose a bar date on unmanifested asbestos claims.  *In re Specialty Prods. Holding Corp.*, No. 10-11780, 2013 WL 2177694 (Bankr. D. Del. May 20, 2013) ("*Bondex*").  Unlike in these cases, the *Bondex* court appointed a legal representative for future claimants, who stated his intention to assert a claim on behalf of the unmanifested claimants.  *See* Supplement of the Future Claimants' Representative to the Joint Objection of the Committee of Asbestos Personal Injury Claimants and the Future Claimants' Representative to the Debtors' Certification of Counsel Regarding Order Establishing Bar Dates for Filing Proofs of Claim and Approving Related Relief, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (Bankr. D. Del. Jan. 2, 2014) (D.I. 4441); Hr'g Tr. 50:4-16, Dec. 17, 2013.  Moreover, the *Bondex* court never ruled that the unmanifested claims in that case would be discharged.  The parties ultimately agreed to a 524(g) plan in that case, and a bar date was never imposed.  *See* Order Confirming the Joint Plan of Reorganization of Specialty Prods. Holding Corp., Bondex Int'l, Inc., Republic Powdered Metals, Inc. and NMBFiL, Inc., as Modified, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (Bankr. D. Del. Dec. 10, 2014) (D.I. 5261); Findings of Fact and Conclusions of Law Regarding Confirmation of the Joint Plan of Reorganization of Specialty Prods. Holding Corp., Bondex Int'l, Inc., Republic Powdered Metals, Inc. and NMBFiL, Inc., as Modified, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (Bankr. D. Del. Dec. 11, 2014) (D.I. 5262).

In the few cases where courts have found that unmanifested asbestos claims had been discharged without the holders of those claims being afforded the protections of Bankruptcy Code Section 524(g), the courts found that the debtors had not been subject to asbestos claims pre-petition, or were not aware that significant numbers of such claims would arise in the future.  In *In re Placid Oil Co.*, for example, the Fifth Circuit noted that "no instances of asbestos-related injury or illness were known to Placid prior to confirmation."  753 F.3d 151, 157 (5th Cir. 2014). Similarly, in *In re Chateaugay Corp.*, Nos. 86 B 11270(BRL) to 86 B 11334(BRL), 86 B 11402(BRL), 86 B 11464(BRL), 2009 WL 367490, at *6 (Bankr. S.D.N.Y. Jan. 14, 2009), the court noted that "there had been no prepetition asbestos incidents or events that would suggest an awareness of a potential class of asbestos claimants."  And the court in *Castleman v. Liquidating Trustee* found that in that case there was "insufficient evidence suggesting that [the debtor] had reason to believe it was subject to mass tort litigation resulting from exposure to asbestos at the time it filed for bankruptcy or published notice of the bar date such that it could reasonably expect there to be future unknown claimants with injuries that had not yet manifested themselves."  No. 6:06-CV-1077 (LEK), 2007 WL 2492792, at *8 (N.D.N.Y. Aug. 28, 2007).

Here, by contrast, the Debtors have been subject to asbestos claims in the past,[37] and are well aware that a significant number of such claims will arise in the future: ████████████

---

[37]     The Debtors scheduled 392 asbestos-related cases involving some 800 claims, including approximately 121 cases that were being defended (20 of which were related to the Debtors' electricity generation activities).  Debtors' Bar Date Reply ¶ 6; Hr'g Transcript, 71:5-8, Aug. 13, 2014.  In addition, asbestos claims associated with discontinued gas distribution businesses had been asserted pre-petition against EECI and other Asbestos Debtors.  Debtors' Bar Date Reply ¶ 6; Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., *et al.*, in Support of First Day Motions ¶ 52, Apr. 29, 2014, D.I. 98.

███████████████████████████████████████ ▪ Rather than propose a plan that satisfies the requirements of Section 524(g), the Debtors have proposed a plan under which asbestos claims would pass through to the Reorganized Debtors. That is their prerogative. But having made that choice, the Debtors cannot shed their liability for these claims by running roughshod over the due process rights of the Unmanifested Asbestos Claimants, while vigorously opposing all efforts of the Objectors and others to safeguard those rights. This Court should not tolerate the Debtors' efforts to "sandbag" absent asbestos claimants. *In re Waterman S.S. Corp.*, 141 B.R. 552, 558 (Bankr. S.D.N.Y. 1992).

### D. The Court must determine whether discharging Unmanifested Asbestos Claims would violate due process before the Plan can be confirmed.

In confirming a now-defunct prior plan that also would have discharged Unmanifested Asbestos Claims, this Court stated:

> [T]he standard of due process here is prospective. It is entirely possible that an unmanifested claimant may bring a claim after the bar date, argue the Debtors' notice scheme was unconstitutional, as applied to her, and be correct in that argument. She would have her claim reinstated and the Debtors would then be free to dispute its validity and/or her damages. But that is a retrospective determination, an unconstitutional, as applied, determination. That determination is irrelevant to whether the Debtor's notice scheme prospectively satisfies due process.

Hr'g Tr. 62:15-25, Dec. 3, 2015.

In so ruling, the Court adopted the Debtors' argument that, under the Third Circuit's decision in *Grossman's*, any analysis of whether the discharge of Unmanifested Claims violates due process must be made retrospectively, on a case-by-case basis, and cannot be made prospectively, before claims are discharged. Objectors respectfully submit that the Debtors led this Court into error by mischaracterizing the Third Circuit's decision in *Grossman's*. Nothing in

---

▪ ███  ████  ████  ████  ██████████████████████████████
████████████████████

the Third Circuit's opinion suggests that a bankruptcy court has authority to confirm a plan that would discharge Unmanifested Asbestos Claims even though the discharge would violate the due process rights of the holders of those claims.

The plan of reorganization in *Grossman's* was confirmed in December 1997.  Almost 10 years later, Mary Van Brunt, who had been exposed to Grossman's asbestos products pre-petition, was diagnosed with mesothelioma.  She and her husband sued Grossman's successor in interest, JELD-WEN.  Both the bankruptcy and district courts, relying on the Third Circuit's decision in *Frenville*,[39] found that, when the plan was confirmed, the Van Brunts did not have "claims" within the meaning of Section 101(5) of the Bankruptcy Code, as their claims had not accrued under state law until 2007, when Ms. Van Brunt was diagnosed, and therefore their claims were not discharged at confirmation.

On appeal, the Third Circuit overruled the *Frenville* "accrual" test for when a claim arose, holding that a bankruptcy claim arises "when an individual is exposed pre-petition to a product or other conduct giving rise to an injury."  *Grossman's*, 607 F.3d at 125.  Thus, the court held, the Van Brunts' claims arose pre-petition.  *Id.*  The court emphasized, however, that its ruling "d[id] not necessarily mean that the Van Brunts' claims were discharged by the Plan of Reorganization." *Id*.  The court remanded the matter to the district court, noting that the determination of whether the claims were discharged "depends on factors applicable to the particular case and is best determined by the appropriate bankruptcy court or the district court."  *Id.* at 127.  The court also suggested a number of factors that the lower court "may wish to consider" in making that determination:

---

[39]    *Avellino v. M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984), *overruled by*, *JELD-WEN, Inc. v. Van Brunt* (*In re Grossman's, Inc.*), 607 F.3d 114 (3d Cir. 2010).

> [T]he circumstances of the initial exposure to asbestos, whether and/or when the claimants were aware of their vulnerability to asbestos, whether the notice of the claims bar date came to their attention, whether the claimants were known or unknown creditors, whether the claimants had a colorable claim at the time of the bar date, and other circumstances specific to the parties, including whether it was reasonable or possible for the debtor to establish a trust for future claimants as provided by § 524(g).

*Id*. at 127-28.  The court then remanded the case to the district court for further proceedings.[40]

It is not surprising that the bankruptcy court in *Grossman's* did not consider the due process rights of unmanifested asbestos claimants in connection with confirmation:  under the extant *Frenville* "accrual" test, their claims were not bankruptcy claims under Section 101(5).  It was only when the Third Circuit overruled *Frenville* and changed the definition of "claim" that the question of whether the Van Brunts' claims had been discharged even arose.

Nothing in the Third Circuit's opinion in *Grossman's* can be read as supporting the proposition that, in deciding whether the Plan meets the requirements for confirmation, this Court cannot consider whether the Plan's discharge provisions would violate due process.  Nor does *Grossman's* suggest that the Court may consider the due process issues retrospectively only, on a case-by-case basis, when a claimant falls ill and challenges the discharge of his or her claim.  Indeed, such a rule would be directly contrary to the Supreme Court's instruction in *Doehr* that, before issuing an order that would deprive a person of property without notice, a court must ensure that the order comports with due process.  *See Doehr*, 501 U.S. at 9.

A primary purpose of these confirmation proceedings is to ensure that the Plan "will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code."  *In re WR Grace & Co.*, 729 F.3d 332, 346 (3d Cir. 2013).  Such a determination necessarily involves a

---

[40]    The parties settled, and the district court never decided whether the claims had been discharged.  *See* Notice of Settlement, *JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.)*, No. 07-51602 (Bankr. D. Del. June 28, 2011) (D.I. 71).

determination of whether the discharge of their claims violates the due process rights of the Objectors and other Unmanifested Asbestos Claimants who did not file claims, many of whom may not even be aware that they or their loved ones were exposed to asbestos, or that their rights may be affected by this bankruptcy. That question is ripe for determination now.

## II.    THE PLAN CANNOT BE CONFIRMED BECAUSE IT WAS NOT PROPOSED IN GOOD FAITH.

Bankruptcy Code § 1129(a)(3) provides that a plan cannot be confirmed unless it "has been proposed in good faith." 11 U.S.C. § 1129(a)(3). "The good faith standard requires that the plan be 'proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code.'" *In re ACandS, Inc.*, 311 B.R. 36, 42 (Bankr. D. Del. 2004) (internal citations omitted). "[T]he important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code," which include "preserving going concerns and maximizing property available to satisfy creditors," "giving debtors a fresh start in life," "discourag[ing] debtor misconduct," "the expeditious liquidation and distribution of the bankruptcy estate to its creditors," and "achieving fundamental fairness and justice." *WR Grace*, 729 F.3d at 346 (internal citations and quotation marks omitted).

A determination of good faith "requires a factual inquiry into a totality of the circumstances surrounding the plan's proposal." *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012), *aff'd sub nom. WR Grace*, 729 F.3d 332. *See also Am. Capital Equip.*, 688 F.3d at 157 ("[I]nformation affecting the good faith determination might be added to the record throughout the process leading up to confirmation."). The subjective intent of the plan proponents is one factor to be considered by the court. *See WR Grace*, 729 F.3d at 348 ("Subjective intent . . . is one factor in determining that a Plan is not being used for purposes contrary to the Code's objectives."). "A lack of good

faith is evident when 'the debtor seeks to delay or frustrate the legitimate efforts of creditors to enforce their rights.'" *W.R. Grace*, 475 B.R. at 89 (citation omitted).

Here, the Plan was not proposed in good faith, with honesty and good intentions. Instead of dealing fairly with, and seeking to maximize the recovery of, their asbestos victims, the Debtors have proposed a plan that would "delay or frustrate the legitimate efforts" of Unmanifested Asbestos Claimants to enforce their rights, while steadfastly refusing to provide any protections for these claimants.

As debtors-in-possession, the Asbestos Debtors and their controlling parent "bear[] essentially the same fiduciary obligation to the creditors as does the trustee for the Debtor out of possession." *Wolf v. Weinstein*, 372 U.S. 633, 649-50 (1963); *see also In re G-I Holdings, Inc.*, 385 F.3d 313, 319 (3d Cir. 2004) ("[D]ebtor-in-possession is a fiduciary of the creditors."). "[T]hese fiduciary responsibilities fall . . . upon the officers and managing employees who must conduct the Debtor's affairs under the surveillance of the court." *Wolf*, 372 U.S. at 649-50. "Indeed, the willingness of courts to leave debtors in possession is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) (internal citation omitted). The debtor's "duty of loyalty . . . includes an obligation to refrain from self dealing, to avoid conflicts of interests and the appearance of impropriety." *In re Coram Healthcare Corp.*, 271 B.R. 228, 235 (Bankr. D. Del. 2001). Here, the Asbestos Debtors' directors and managers are officers and employees of their corporate parent, EFH Corp. *See* Op. at 7 ns 6 & 7, Dec. 19, 2016, D.I. 10414. The Third Circuit has instructed that such "mixed allegiances" may prevent a debtor's decision-makers from adequately protecting the debtor's interests. *In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 624 (3d Cir. 2009) (finding that

the debtors' representative, who was also employed as an officer of the debtors' parents, was primarily concerned with protecting the debtors' parents, not the debtors; and that his "mixed allegiances prevented him from adequately protecting the Debtors' interests.").

The Debtors' "job . . . is to make sure the creditors are paid." *In re Furley's Transp., Inc.*, 272 B.R. 161, 176-77 (Bankr. D. Md. 2001), *aff'd*, 306 B.R. 514 (D. Md. 2002) (internal citation omitted). But rather than make sure that all of their creditors will be paid, the Debtors have fought tooth and nail to make sure that large swathes Unmanifested Asbestos Claimants are not. The Plan would cleanse the Asbestos Debtors of future asbestos liabilities for Unmanifested Asbestos Claims—and would cleanse their parent EFH Corp. and the other Debtor affiliates of any successor-in-interest or similar derivative liability for such claims—without providing any compensation for those claims.

In *ACandS*, the bankruptcy court found that the plan was not proposed in good faith because it had been drafted primarily by and for the benefit of a group of claimants, to the detriment of other claimants. *ACandS*, 311 B.R. at 43. "[G]iven . . . the obvious self-dealing that resulted from control of the debtor," the court held, "it is impossible to conclude that the plan was consistent with the objectives and purposes of the Bankruptcy Code." *Id.*; *W.R. Grace*, 729 F.3d at 348 (discussing *ACandS*). Here too, it is "impossible to conclude that this plan is imbued with fundamental fairness." *ACandS*, 311 B.R. at 43. It is fundamentally unfair to discharge the claims of Unmanifested Asbestos Claimants without compensation, while all other claims against the Asbestos Debtors are reinstated, and equity retains value. To allow the Debtors to have confirmed a Plan that would discharge such claims in the circumstances of these cases would be a perversion of reorganization law and an abuse of the bankruptcy process. The Supreme Court has instructed that a bankruptcy court "[i]n the exercise of its equitable jurisdiction . . . has the power . . . to see

that injustice or unfairness is not done in administration of the bankrupt estate." *Pepper v. Litton*, 308 U.S. 295, 307-08 (1939).  The Court should exercise that power here, and deny confirmation.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Objectors respectfully submit that the Plan cannot be confirmed with respect to the Asbestos Debtors, and, with respect to the remaining EFH/EFIH Debtors, cannot be confirmed insofar as it would discharge Unmanifested Asbestos Claims.

Dated:  December 19, 2017          Respectfully submitted:
        Wilmington, Delaware

                         By:    */s/ Daniel K. Hogan*
                                Daniel K. Hogan (DE Bar # 2814)
                                HOGAN MCDANIEL
                                1311 Delaware Avenue
                                Wilmington, Delaware  19806
                                Telephone:  (302) 656-7540
                                Facsimile: (302) 656-7599
                                dkhogan@dkhogan.com

                                *Counsel for Shirley Fenicle, individually and as
                                successor-in-interest to the Estate of George
                                Fenicle, David William Fahy, John H. Jones, David
                                Heinzmann, Harold Bissell, Kurt Carlson, and
                                Robert Albini, individually and as successor-in-
                                interest to the Estate of Gino Albini, and Denis
                                Bergschneider*

                                -and-

                                Steven Kazan (admitted *pro hac vice*)
                                KAZAN MCCLAIN SATTERLEY &
                                GREENWOOD
                                A Professional Law Corporation
                                Jack London Market
                                55 Harrison Street, Suite 400
                                Oakland, CA 94607
                                Telephone: (510) 302-1000
                                Facsimile: (510) 835-4913

                                *Counsel for Shirley Fenicle, individually and as
                                successor-in-interest to the Estate of George
                                Fenicle, and Denis Bergschneider*

                                -and-

                                Ethan Early (admitted *pro hac vice*)
                                EARLY LUCARELLI SWEENEY &
                                MEISENKOTHEN
                                265 Church Street, 11th Floor
                                New Haven, CT 06508-1866
                                Telephone: (203) 777-7799
                                Facsimile: (203) 785-1671

*Counsel for David William Fahy, David Heinzmann, Harold Bissell, Kurt Carlson, and Robert Albini, individually and as successor-in-interest to the Estate of Gino Albini*

-and-

Jonathan Ruckdeschel (admitted *pro hac vice*)
THE RUCKDESCHEL LAW FIRM LLC
8357 Main Street
Ellicott City, MD 21043
Telephone:  410-750-7825
Facsimile: 443-583-0430

*Counsel for David Heinzmann*

-and-

Beth Gori (admitted *pro hac vice*)
Gori Julian & Associates, P.C.
156 North Main Street
Edwardsville, IL 62025
Telephone: (618) 659-9833
Facsimile: (618) 659-9834

*Counsel for John H. Jones*