# EXHIBIT 2

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

e-Filed
Case No: 2016L 000283
Trans ID: 14847
Date: Mar 01 2016
Mark Von Nida
Clerk of Circuit Court
Third Judicial Circuit,
Madison County Illinois

JOHN H. JONES AND ALICE JONES,       )
                                     )
              Plaintiffs,            )
                                     )
    -vs.-                            )      NO. 16-L-
                                     )
A. W. CHESTERTON, INC.,              )
A.O. SMITH CORPORATION,              )
ABB, INC., Individually and as Successor-in-   )
    Interest to ITE ELECTRICAL       )
    PRODUCTS CO., and BBC Brown Boveri, )
AGCO CORPORATION, f/k/a MASSEY-      )
    FERGUSON,                        )
ALBANY INTERNATIONAL CORP., Individually )
    and as Successor-in-Interest to ALBANY )
    FELTS and APPLETON WIRE WORKS,   )
AMERICAN OPTICAL CORPORATION,        )
AMERON INTERNATIONAL CORPORATION,    )
    Individually and as Successor-in-Interest to )
    BONDSTRAND,                      )
ARMSTRONG PUMPS, INC.,               )
ASTENJOHNSON, INC.,                  )
AURORA PUMP COMPANY,                 )
AVOCET ENTERPRISES, INC., f/k/a      )
    VENTFABRICS, INC.,               )
BEAZER EAST, Individually and as successor-in- )
    interest to THIEM and as successor-in- )
    interest to UNIVERSAL REFRACTORIES, )
BORG-WARNER MORSE TEC LLC, as        )
    Successor-By-Merger To BORG-WARNER )
    CORPORATION,                     )
BURNHAM LLC,                         )
BWDAC, INC. f/k/a BWD AUTOMOTIVE     )
    CORPORATION,                     )
CARRIER CORPORATION d/b/a BRITISHER  )
    HTG AND COOLING,                 )
CBS CORPORATION, a DELAWARE CORP.,   )
    f/k/a VIACOM, INC., successor by merger )
    to CBS CORP., a PENNSYLVANIA     )
    CORP., f/k/a WESTINGHOUSE        )
    ELECTRIC CORPORATION,            )
CERTAIN-TEED CORPORATION,            )
CHICAGO GASKET COMPANY,              )

CLARK-RELIANCE CORPORATION,                              )
CLEAVER-BROOKS, a division of                            )
    AQUA-CHEM, INC.,                                   )
CNH INDUSTRIAL AMERICA LLC, f/k/a CASE                   )
    INTERNATIONAL HARVESTER, and                       )
    NEW HOLLAND NORTH AMERICA,                         )
THE COMP PERFORMANCE GROUP,                              )
    Individually and as successor-in-interest to       )
    ZEX,                                               )
CONWED CORPORATION, Individually and as                  )
    Successor-in-interest to WOOD                      )
    CONVERSION COMPANY,                                )
COOPER CROUSE-HINDS, LLC,                                )
COOPER INDUSTRIES LLC,                                   )
CRANE COMPANY,                                           )
CROWN CORK & SEAL USA, INC.,                             )
DANA COMPANIES, LLC.,                                    )
DAP, INC.,                                               )
DOW CHEMICAL COMPANY,                                    )
DURO DYNE CORPORATION,                                   )
EATON CORPORATION, Individually and as                   )
    successor-in-interest to CUTLER                    )
    HAMMER, INC.,                                      )
ECODYNE CORPORATION,                                     )
FERRO ENGINEERING DIVISION OF ON                         )
    MARINE SERVICES COMPANY, LLC,                      )
BW/IP, INC.,                                             )
FLOWSERVE CORPORATION f/k/a THE                          )
    DURIRON COMPANY, INC.,                             )
FLOWSERVE U.S., INC., Solely as Successor to             )
    Rockwell Manufacturing Company, Edward             )
    Valves, Inc., McCanna Corporation and              )
    Nordstrom Valves, Inc.,                            )
FLOWSERVE US INC. as successor in interest to            )
    DURAMETALLIC CORPORATION,                          )
FORD MOTOR COMPANY,                                      )
FORMOSA PLASTICS CORPORATION, USA,                       )
    Individually and as Successor-in-Interest to       )
    JM AC,                                             )
FOSTER WHEELER CORPORATION,                              )
GARDNER DENVER, INC.,                                    )
GENERAL CABLE TECHNOLOGIES                               )
    CORPORATION,                                       )
GENERAL ELECTRIC COMPANY,                                )
GENERAL REFRACTORIES COMPANY,                            )
GENUINE PARTS COMPANY,                                   )
GEORGIA-PACIFIC LLC, f/k/a GEORGIA                       )

PACIFIC CORPORATION,                                                )
GOODYEAR TIRE & RUBBER CO.,                          )
THE GORMAN RUPP COMPANY,                             )
GOULD ELECTRONICS, INC., Individually and       )
    as Successor-in-Interest to BULLDOG,              )
GOULDS PUMPS (IPG), INC.,                                    )
GREENE TWEED & COMPANY,                                 )
GRINNELL, LLC,                                                          )
HERCULES, INC.,                                                        )
HONEYWELL INTERNATIONAL, INC.,                   )
ILLINOIS TOOL WORKS, INC., Individually           )
    and as Successor-in-Interest to DEVCON        )
    CORPORATION,                                                 )
IMO INDUSTRIES, INC.,                                          )
INDUSTRIAL HOLDINGS CORPORATION,            )
    f/k/a CARBORUNDUM COMPANY,                   )
INGERSOLL RAND COMPANY, Individually         )
    and as Successor-in-Interest to                        )
    THERMO KING,                                                 )
INTERNATIONAL PAPER COMPANY,                     )
    Individually and as successor-in-interest to    )
    U.S. PLYWOOD CORPORATION and                )
    CHAMPION INTERNATIONAL                            )
    CORPORATION,                                                 )
ITT CORPORATION, Individually and as             )
    Successor-in-Interest to KENNEDY                  )
    VALVE COMPANY,                                           )
J-M MANUFACTURING COMPANY, INC.,             )
JOHN CRANE, INC.,                                                )
JOHN DEERE COMPANY,                                       )
KAISER-GYPSUM COMPANY, INC.,                      )
KCG, INC., as Successor-in-interest to REW       )
    MATERIALS, INC., RUCO EQUIPMENT,       )
    and MAGNUM PRODUCTS, and as                  )
    Successor by Merger to KC WALL                   )
    PRODUCTS, INC.,                                            )
KUBOTA TRACTOR CORPORATION,                    )
LENNOX INDUSTRIES, INC.,                                  )
3M COMPANY,                                                        )
MARLEY ENGINEERED PRODUCTS LLC,            )
McKESSON CORPORATION, Individually and as )
    Successor-in-Interest to Barada & Page,          )
MCMASTER-CARR SUPPLY COMPANY,               )
MEADWESTVACO CORPORATION, as                  )
    Successor-in-interest to THE MEAD                 )
    CORPORATION,                                                 )
MOTOROLA SOLUTIONS, INC.,                           )

MOUNT VERNON MILLS INC,                                          )
NAVISTAR INC.,                                                  )
NAVISTAR INC., successor-in-interest to                          )
    FARMALL,                                                     )
ORBITAL ATK, INC., Individually and as                           )
    Successor-in-Interest to ALLIANT                             )
    TECHSYSTEMS, INC., and MORTON                                )
    THIOKOL INC.,                                                )
PENTAIR VALVES & CONTROLS US LP, for                            )
    TYCO VALVES & CONTROLS, as                                   )
    successor to J.E. LONERGAN, and                              )
    KUNKLE VALVE,                                                )
PLASTICS ENGINEERING COMPANY,                                    )
PNEUMO ABEX LLC, successor-in-interest                           )
    to ABEX CORPORATION,                                         )
RHEEM MANUFACTURING COMPANY,                                     )
RIC-WIL, INC.,                                                  )
RILEY POWER INC., f/k/a RILEY STOKER                            )
    CORPORATION,                                                 )
ROCKWELL AUTOMATION, INC., f/k/a                                )
    ALLEN-BRADLEY COMPANY, INC.,                                 )
    Individually and Successor-in-Interest to                    )
    ROSTONE CORPORATION,                                         )
RUST INTERNATIONAL, INC.,                                        )
SAINT-GOBAIN ABRASIVES, INC.,                                    )
SEARS, ROEBUCK AND COMPANY,                                      )
SPECIAL ELECTRIC COMPANY, INC.,                                  )
    Individually and successor in interest to                    )
    SPECIAL MATERIALS, INC., SPECIAL                             )
    SHIPPING, INC., and CALAVERAS                                )
    MINE,                                                        )
SPENCE ENGINEERING COMPANY, INC.,                                )
SPIRAX SARCO INC.,                                              )
SPX COOLING TECHNOLOGIES, INC., as                              )
    Successor-in-Interest to MARLEY                              )
    COOLING TOWER,                                               )
SQUARE D, a Brand of Schneider Electric,                         )
STERLING FLUID SYSTEMS (USA), LLC, f/k/a                         )
    PEERLESS PUMP COMPANY,                                       )
SULZER PUMPS (US) INC., Individually and as                      )
    Successor-in-Interest to BINGHAM                             )
    PUMPS,                                                       )
TPI CORPORATION Individually and as Successor)
    -in-Interest to MARKEL MECHANICAL,                           )
TRANE US, INC., f/k/a AMERICAN                                  )
    STANDARD INC.,                                               )
TRECO CONSTRUCTIONS SERVICES, INC.,                              )

```
              f/k/a RUST ENGINEERING CO.,                    )
TRIANGLE ENTERPRISES, INC.,                                  )
UNION CARBIDE CORPORATION,                                   )
UNIROYAL, INC.,                                              )
URS CORPORATION, Parent of URS ENERGY                        )
       & CONSTRUCTION, INC., f/k/a                           )
       WASHINGTON GROUP                                      )
       INTERNATIONAL, INC., f/k/a                            )
       MORRISON KNUDSEN CORPORATION,                         )
       as Successor-in-Interest to United Engineers          )
       & Constructors, H.K. Ferguson, Raytheon               )
       Engineering & Constructors, Catalytic,                )
       Stearns-Rogers Corp., and The Badger                  )
       Company, Inc. f/k/a TCBI Corp.,                        )
WARREN PUMPS, LLC. f/k/a WARREN                              )
       PUMPS, INC.,                                          )
THE WILLIAM POWELL COMPANY,                                  )
YORK INTERNATIONAL CORPORATION,                              )
YUBA HEAT TRANSFER, LLC,                                     )
ZURN INDUSTRIES, L.L.C. f/k/a ZURN                           )
       INDUSTRIES, INC.,                                     )
and                                                          )
METROPOLITAN LIFE INSURANCE CO.,                             )
                                                             )
              Defendants.                                    )
```

## COMPLAINT

### COUNT I
### (NEGLIGENCE COUNT AS TO MANUFACTURERS OF ASBESTOS PRODUCTS)

Now come the Plaintiffs, JOHN H. JONES AND ALICE JONES, by their attorneys, GORI, JULIAN

& ASSOCIATES, P.C., and for their cause of action against the Defendants, states:

1.    The Plaintiff, who resides at ███████████████████████, served in the U.S.

Army from 1947 to 1949 as a Radio Operator, and in the U.S. Air Force from 1950 to 1954 as a Radio

Maintenance Man at Blaine Air Force Base, Geiger Air Force Base, and Scott Air Force Base in Illinois. The

Plaintiff was raised on a farm, and worked from 1954 to 1960 as an Owner/Operator/Electrician at Blaine

Electric, Heating & Plumbing, in 1960 as an Electrician for Local 91, from 1961 to 1962 as a Residential

Electrician at Pasco Electric, from 1963 to 1964 as a General Electrician at Empire Electric, in 1965 as an

Electrician at Lower Monumental Dam, in 1966 as an Electrician for Local 112, from 1968 to 1973 as an

Electrician for Highland Electric Company, from 1973 to 1982 as an Owner/Operator at Inland Appliance

Parts, from 1982 to 1988 as an Owner/Operator at Jones Supply, and from 1984 to present as an

Owner/Operator at Total Services.

2.     At various times during the course of Plaintiff's work history, Plaintiff was exposed to and

inhaled, ingested or otherwise absorbed large amounts of asbestos fibers emanating from certain products he

was working with and around which were manufactured, sold, distributed or installed by the Defendants.

Plaintiff's exposure to the materials, products, equipment, activates and conditions attributable to the various

Defendants occurred at different times as to each and not necessarily throughout Plaintiff's entire career or life

as to any particular Defendant. The Defendants at issue include the following:

A. W. CHESTERTON, INC., A.O. SMITH CORPORATION, ABB, INC., Individually and as Successor-

in-Interest to ITE ELECTRICAL PRODUCTS CO., and BBC Brown Boveri, AGCO CORPORATION,

f/k/a MASSEY-FERGUSON, ALBANY INTERNATIONAL CORP., Individually and as Successor-in-

Interest to ALBANY FELTS and APPLETON WIRE WORKS, AMERICAN OPTICAL

CORPORATION, AMERON INTERNATIONAL CORPORATION, Individually and as Successor-in-

Interest to BONDSTRAND, ARMSTRONG PUMPS, INC., ASTENJOHNSON, INC., AURORA PUMP

COMPANY, AVOCET ENTERPRISES, INC., f/k/a VENTFABRICS, INC., BEAZER EAST,

Individually and as successor-in-interest to THIEM and as successor-in-interest to UNIVERSAL

REFRACTORIES, BORG-WARNER MORSE TEC LLC, as Successor-By-Merger To BORG-WARNER

CORPORATION, BURNHAM LLC, BWDAC, INC. f/k/a BWD AUTOMOTIVE CORPORATION,

CARRIER CORPORATION d/b/a BRITISHER HTG AND COOLING, CBS CORPORATION, a

DELAWARE CORP., f/k/a VIACOM, INC., successor by merger to CBS CORP., a PENNSYLVANIA

CORP., f/k/a WESTINGHOUSE ELECTRIC CORPORATION, CERTAIN-TEED CORPORATION,

CHICAGO GASKET COMPANY, CLARK-RELIANCE CORPORATION, CLEAVER-BROOKS, a

division of AQUA-CHEM, INC., CNH INDUSTRIAL AMERICA LLC, f/k/a CASE INTERNATIONAL

HARVESTER, and NEW HOLLAND NORTH AMERICA, THE COMP PERFORMANCE GROUP,

Individually and as successor-in-interest to ZEX, CONWED CORPORATION, Individually and as

Successor-in-interest to WOOD CONVERSION COMPANY, COOPER CROUSE-HINDS, LLC,

COOPER INDUSTRIES LLC, CRANE COMPANY, CROWN CORK & SEAL USA, INC., DANA

COMPANIES, LLC., DAP, INC., DOW CHEMICAL COMPANY, DURO DYNE CORPORATION,

EATON CORPORATION, Individually and as successor-in-interest to CUTLER HAMMER, INC.,

ECODYNE CORPORATION, FERRO ENGINEERING DIVISION OF ON MARINE SERVICES

COMPANY, LLC, BW/IP, INC., FLOWSERVE CORPORATION f/k/a THE DURIRON COMPANY,

INC., FLOWSERVE U.S., INC., Solely as Successor to Rockwell Manufacturing Company, Edward

Valves, Inc., McCanna Corporation and Nordstrom Valves, Inc., FLOWSERVE US INC. as successor in

interest to DURAMETALLIC CORPORATION, FORD MOTOR COMPANY, FORMOSA PLASTICS

CORPORATION, USA, Individually and as Successor-in-Interest to JM AC, FOSTER WHEELER

CORPORATION, GARDNER DENVER, INC., GENERAL CABLE TECHNOLOGIES

CORPORATION, GENERAL ELECTRIC COMPANY, GENERAL REFRACTORIES COMPANY,

GENUINE PARTS COMPANY, GEORGIA-PACIFIC LLC, f/k/a GEORGIA PACIFIC

CORPORATION, GOODYEAR TIRE & RUBBER CO., THE GORMAN RUPP COMPANY, GOULD

ELECTRONICS, INC., Individually and as Successor-in-Interest to BULLDOG, GOULDS PUMPS

(IPG), INC., GREENE TWEED & COMPANY, GRINNELL, LLC, HERCULES, INC., HONEYWELL

INTERNATIONAL, INC., ILLINOIS TOOL WORKS, INC., Individually and as Successor-in-Interest to

DEVCON CORPORATION, IMO INDUSTRIES, INC., INDUSTRIAL HOLDINGS CORPORATION,

f/k/a CARBORUNDUM COMPANY, INGERSOLL RAND COMPANY, Individually and as Successor-

in-Interest to THERMO KING, INTERNATIONAL PAPER COMPANY, Individually and as successor-

in-interest to U.S. PLYWOOD CORPORATION and CHAMPION INTERNATIONAL

CORPORATION, ITT CORPORATION, Individually and as Successor-in-Interest to KENNEDY

VALVE COMPANY, J-M MANUFACTURING COMPANY, INC., JOHN CRANE, INC., JOHN

DEERE COMPANY, KAISER-GYPSUM COMPANY, INC., KCG, INC., as Successor-in-interest to

REW MATERIALS, INC., RUCO EQUIPMENT, and MAGNUM PRODUCTS, and as Successor by

Merger to KC WALL PRODUCTS, INC., KUBOTA TRACTOR CORPORATION, LENNOX

INDUSTRIES, INC., 3M COMPANY, MARLEY ENGINEERED PRODUCTS LLC, McKESSON

CORPORATION, Individually and as Successor-in-Interest to Barada & Page, MCMASTER-CARR

SUPPLY COMPANY, MEADWESTVACO CORPORATION, as Successor-in-interest to THE MEAD

CORPORATION, MOTOROLA SOLUTIONS, INC., MOUNT VERNON MILLS INC, NAVISTAR

INC., NAVISTAR INC., successor-in-interest to FARMALL, ORBITAL ATK, INC., Individually and as

Successor-in-Interest to ALLIANT TECHSYSTEMS, INC., and MORTON THIOKOL INC., PENTAIR

VALVES & CONTROLS US LP, for TYCO VALVES & CONTROLS, as successor to J.E.

LONERGAN, and KUNKLE VALVE, PLASTICS ENGINEERING COMPANY, PNEUMO ABEX LLC,

successor-in-interest to ABEX CORPORATION, RHEEM MANUFACTURING COMPANY, RIC-WIL,

INC., RILEY POWER INC., f/k/a RILEY STOKER CORPORATION, ROCKWELL AUTOMATION,

INC., f/k/a ALLEN-BRADLEY COMPANY, INC., Individually and Successor-in-Interest to ROSTONE

CORPORATION, RUST INTERNATIONAL, INC., SAINT-GOBAIN ABRASIVES, INC., SEARS,

ROEBUCK AND COMPANY, SPECIAL ELECTRIC COMPANY, INC., Individually and successor in

interest to SPECIAL MATERIALS, INC., SPECIAL SHIPPING, INC., and CALAVERAS MINE,

SPENCE ENGINEERING COMPANY, INC., SPIRAX SARCO INC., SPX COOLING

TECHNOLOGIES, INC., as Successor-in-Interest to MARLEY COOLING TOWER, SQUARE D, a

Brand of Schneider Electric, STERLING FLUID SYSTEMS (USA), LLC, f/k/a PEERLESS PUMP

COMPANY, SULZER PUMPS (US) INC., Individually and as Successor-in-Interest to BINGHAM

PUMPS, TPI CORPORATION Individually and as Successor-in-Interest to MARKEL MECHANICAL,

TRANE US, INC., f/k/a AMERICAN STANDARD INC., TRECO CONSTRUCTIONS SERVICES,

INC., f/k/a RUST ENGINEERING CO., TRIANGLE ENTERPRISES, INC., UNION CARBIDE CORPORATION, UNIROYAL, INC., URS CORPORATION, Parent of URS ENERGY & CONSTRUCTION, INC., f/k/a WASHINGTON GROUP INTERNATIONAL, INC., f/k/a MORRISON KNUDSEN CORPORATION, as Successor-in-Interest to United Engineers & Constructors, H.K. Ferguson, Raytheon Engineering & Constructors, Catalytic, Stearns-Rogers Corp., and The Badger Company, Inc. f/k/a TCBI Corp., WARREN PUMPS, LLC. f/k/a WARREN PUMPS, INC., THE WILLIAM POWELL COMPANY, YORK INTERNATIONAL CORPORATION, YUBA HEAT TRANSFER, LLC, ZURN INDUSTRIES, L.L.C. f/k/a ZURN INDUSTRIES, INC., and METROPOLITAN LIFE INSURANCE CO.

3.    SPECIAL ELECTRIC COMPANY, INC. sold and distributed raw asbestos, which was used in certain products to which Plaintiff was exposed, as a joint venture with related entities SPECIAL MATERIALS, INC. – WISCONSIN F/K/A SPECIAL ASBESTOS COMPANY, INC., SPECIAL MATERIALS, INC. – ILLINOIS, SPECIAL MATERIALS, INC. – DELAWARE, and SPECIAL SHIPPING, INC., all of which were owned and controlled by Richard Wareham. Additionally and/or alternatively, SPECIAL ELECTRIC COMPANY, INC. otherwise engaged in acts and omissions to promote and facilitate such sales and distribution of raw asbestos from which it derived substantial financial benefit. Additionally and/or alternatively, SPECIAL ELECTRIC COMPANY, INC. is liable as the alter ego of said related entities and each of them, and/or as the successor-in-interest to said related entities and each of them. Additionally and/or alternatively, as the only surviving company formerly owned by Richard Wareham, SPECIAL ELECTRIC COMPANY, INC. possesses title and ownership to the insureds' interests in policies of liability insurance providing coverage for the injuries alleged herein.

4.    Plaintiff's exposure to the materials, products, equipment, activates and conditions attributable to the various Defendants occurred at different times as to each and not necessarily throughout Plaintiff's entire career of life as to any particular Defendant.

5.    At all times herein set forth, the Defendants' products were being employed in the manner and for the purposes for which they were intended.

6.    The Plaintiff's exposure to and inhalation, ingestion or absorption of the asbestos fibers emanating from the above-mentioned products was completely foreseeable and could or should have been anticipated by the Defendants.

7.    The Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them.

8.    That on or about December 14, 2015, Plaintiff first became aware that he had developed Mesothelioma, an asbestos-induced disease, and that at a subsequent time learned said disease was wrongfully caused.

9.    At all times herein relevant, the Defendants had a duty to exercise reasonable care and caution for the safety of the Plaintiff and others working with and around the products of the Defendants containing asbestos.

10.    The Defendants failed to exercise ordinary care and caution for the safety of the Plaintiff in one or more of the following respects:

    (a)    Included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons such as the Plaintiff working with or around them would inhale, ingest or otherwise absorb great amounts of that asbestos;

    (b)    Included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

    (c)    Included asbestos in their products when adequate substitutes for the asbestos in them were available;

(d)     Failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers contained in them;

(e)     Failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them; and

(f)     Failed to conduct tests on the asbestos containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which workers such as the Plaintiff might be exposed while working with the products.

11.     The Federal Courts lack subject matter jurisdiction over this action, as there is no federal question and incomplete diversity of citizenship due to the presence of an Illinois Defendant.  Removal is improper.  Every claim arising under the constitution, treaties, or laws of the United States is expressly disclaimed (including any claim arising from an act or omission on a federal enclave, or of any officer of the U.S. or any agency or person acting under him occurring under color of such office).  No claim of admiralty or maritime law is raised.  Plaintiffs sue no foreign state or agency.  Venue is proper in this county in Illinois.

12.     That as a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants mentioned above, the Plaintiff was exposed to and inhaled, ingested or otherwise absorbed great amounts of asbestos fibers causing Plaintiff to develop the asbestos disease aforesaid, which has disabled and disfigured the Plaintiff; the Plaintiff has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced Mesothelioma; the Plaintiff has in the past and will in the future experience great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of said asbestos fibers; that as a further result of his asbestos-induced Mesothelioma, the Plaintiff has in the past and will in the future be hindered and prevented from pursuing his normal course of work history, thereby losing large sums of money which otherwise would have accrued to him.

WHEREFORE, Plaintiffs pray judgment be entered against the Defendants for a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS which will fairly and reasonably compensate for the Plaintiff's injuries.

Respectfully Submitted,
JOHN H. JONES AND ALICE JONES, Plaintiffs

COUNT II
(WILLFUL AND WANTON COUNT AS TO MANUFACTURERS OF ASBESTOS PRODUCTS)
Now comes the Plaintiffs, JOHN H. JONES AND ALICE JONES, by their attorneys, GORI, JULIAN & ASSOCIATES, P.C., and for their cause of action against the Defendants, states:

1. - 9.  Plaintiffs repeat and re-allege Paragraphs 1 through 9 of Count I as and for Paragraphs 1 through 9 of this Count II.

10.  Defendants are guilty of one or more of the following acts or omissions amounting to wilful and wanton misconduct:

(a)  Intentionally or with a reckless disregard for the safety of Plaintiff, included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons such as the Plaintiff working with or around them would inhale, ingest or otherwise absorb great amounts of that asbestos;

(b)  Intentionally or with a reckless disregard for the safety of Plaintiff, included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

(c)  Intentionally or with a reckless disregard for the safety of Plaintiff, included asbestos in the products when adequate substitutes for the asbestos in them was available;

(d)  Intentionally or with a reckless disregard for the safety of the Plaintiff, failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

(e)    Intentionally or with a reckless disregard for the safety of the Plaintiff, failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them; and

(f)    Intentionally or with a reckless disregard for the safety of the Plaintiff, failed to conduct tests on the asbestos containing products manufactured, sold or delivered by the Defendants in order to determine the hazards to which workers such as the Plaintiff might be exposed while working with the products.

11.    Plaintiffs repeat and re-allege Paragraph 9 of Count I as and for Paragraph 9 of this Count II.

WHEREFORE, Plaintiffs pray that they be awarded, in addition to their compensatory damages, punitive and exemplary damages in an amount in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

Respectfully Submitted,
JOHN H. JONES AND ALICE JONES, Plaintiffs

## COUNT III
### (CONSPIRACY AGAINST METROPOLITAN LIFE INSURANCE COMPANY, AND PNEUMO ABEX CORPORATION, AS SUCCESSOR-IN-INTEREST TO ABEX CORPORATION)

Comes now the Plaintiffs, JOHN H. JONES AND ALICE JONES, by their attorneys, GORI, JULIAN & ASSOCIATES, P.C., and for their cause of action against the Defendant, METROPOLITAN LIFE INSURANCE COMPANY, and PNEUMO ABEX CORPORATION, as successor-in-interest to ABEX CORPORATION, states:

1.    Plaintiffs repeat and re-allege Paragraph 1 of Count I as and for Paragraph 1 of this Count III.

2.    During the course of his work history, Plaintiff was exposed to and inhaled, ingested or otherwise absorbed large amounts of asbestos fibers emanating from certain products he was working with and around which were manufactured, sold or distributed by the Defendants named in Count I above.

3.    The Defendants, including METROPOLITAN LIFE INSURANCE COMPANY, and PNEUMO ABEX CORPORATION, as successor-in-interest to ABEX CORPORATION, individually and as

agents of one another and as co-conspirators, agreed and conspired among themselves and with other asbestos manufacturers, distributors, and trade organizations, to injure the Plaintiff in the following manner.

4.       Beginning in the late 1920's, the conspirators, Johns-Manville, Raybestos-Manhattan, Metropolitan Life Insurance Company, Pneumo Abex Corporation, as successor-in-interest to Abex Corporation, and others conducted research on asbestos-related health problems and as a result undertook a duty to inform the consuming public about any health risks that could be associated therewith.  In approximately 1929, the conspirator, Metropolitan Life Insurance Company, through its agents and employees acting within the scope of their employment, notably Dr. Anthony J. Lanza, began an investigation of asbestos-related health hazards in the United States, by studying asbestos mines in Canada and on the Eastern seaboard of the United States.  In 1935, this study was altered by Lanza, with the full knowledge of Metropolitan, at the request of and in concert with the asbestos industry, and the conspirators named herein in order wrongly to influence the United States Public Health Service, the United States medical community and various state legislatures, including the New Jersey Worker's Compensation Commission.  At all times mentioned herein, Metropolitan Life Insurance Company was the general medical, disability and life insurance carrier, both occupational and non-occupational, for the conspirators Johns-Manville in the U.S. and Canada, and Raybestos-Manhattan, as well as others in the industry.

5.       Dr. Lanza's omission of any citation to the significant English literature from his 1935 published report was a continuation of the policy of Metropolitan Life and its co-conspirators, to misrepresent and suppress relevant information about the seriousness of asbestosis disease, especially to asbestos industry employees and consumers of asbestos products.

6.       The following conspirators were members of the trade association known as the Quebec Asbestos Mining Association ("Q.A.M.A."): Johns-Manville Corporation, Carey Canada, individually and as successor to Quebec Asbestos Corporation, National Gypsum Company and Turner & Newall, individually and successor to Bell Asbestos.  These conspirators, members of the Q.A.M.A., participated in the above-

described material misrepresentations of the work of Dr. Leroy Gardner published by Dr. Arthur Vorwald in the <u>AMA Archives of Industrial Health in 1951</u>. Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Johns-Manville's membership in the Q.A.M.A., as well as correspondence from co-conspirators dated 10/29/47, 11/26/47, 3/6/38, 10/15/48, 3/8/49, 3/21/51 and 9/6/50 and all indicating close monitoring of the editing process of Dr. Gardner's work by Q.A.M.A.'s representative Mr. Ivan Sabourin, acting on behalf of all Q.A.M.A. members, and also acting in close concert with the Metropolitan Life Insurance Company and Dr. Anthony J. Lanza.

7.    In addition to the above described actions, the conspirators, through their agent, Dr. Anthony J. Lanza of the Metropolitan Life Insurance Company, made a concerted effort to discredit and to terminate the studies and experiments of certain scientists who were developing data of profound importance for the area of public health in relation to the lung cancer hazard which in fact did exist for workers and bystanders in the asbestos industry.

8.    Because of the above-described efforts of Dr. Lanza of Metropolitan Life, and the other co-conspirators, many other active scientists in the field of environmental cancer were driven out of their laboratories soon after describing their findings on cancer hazards of asbestos/industrial health origin. This included Dr. Gerritt Schepers, who had conducted in-patient studies in South Africa. (Lanza and Vandiver Brown suppressed the publication of Schepers work while Schepers was affiliated at New York University.) These efforts wrongfully obstructed and confused the real asbestos hazard situation, and had a profound retarding effect on the evaluation of the truth in asbestos and asbestos-related health and cancer research.

9.    In addition to all allegations above, the conspirators actively suppressed publications concerning asbestosis in the <u>Asbestos Magazine</u>, a trade magazine and important source of information to the public, and also to users of asbestos products, including users such as the Plaintiff herein. This magazine was read by sales and marketing personnel in the asbestos industry.

10.    The acts of the defendant conspirators, as described above, constitute a fraudulent misrepresentation/concealment which proximately caused the injuries to the Plaintiff in the following manner:

A.    The material published or caused to be published by the conspirators was false and incomplete in that the Defendants knowingly and deliberately deleted references to the known health hazards of asbestos and asbestos-related products.

B.    The Defendants individually, as members of a conspiracy, and as agents of other co-conspirators, intended the publication of false and misleading reports, and/or the non-disclosure of documented reports of the health hazards of asbestos:

1.    To maintain a favorable atmosphere for the continued sale and distribution and use of asbestos and asbestos-related products;

2.    To assist in the continued pecuniary gain of the Defendants through the sale of asbestos products to an ignorant public;

3.    To influence in the Defendant's favor legislation to regulate asbestos exposures and limit medical and disability claims for compensation;

4.    To provide a defense in lawsuits brought for injury resulting from asbestos disease;

5.    To prevent relevant medical inquiry about asbestos disease;

6.    To mislead the general public, and the Plaintiff herein, about the hazards associated with asbestos products; and

7.    To induce the Plaintiff to use and continue to use asbestos products.

C.    The Plaintiff reasonably relied upon the published medical and scientific data documenting the purported safety of asbestos and asbestos-related products, and the absence of published medical and scientific reports on the hazards of asbestos and asbestos-related products to asbestos because Plaintiff believed it to be safe.

D.     Defendants individually, and as members of a conspiracy, and as agents of other co-conspirators intended that the Plaintiff rely upon the published reports regarding the safety of asbestos and asbestos-related products and upon the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products, to continue their exposure to those products.

E.     Defendants individually, and as members of a conspiracy, and as agents of other co-conspirators were in a position of superior knowledge regarding the health hazards of asbestos and therefore the Plaintiff and others deciding to use said asbestos-containing products to which Plaintiff was exposed had a right to rely and did rely on the published reports commissioned by the Defendant regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products.

F.     Plaintiff suffered injuries as a direct and proximate result of the acts alleged above.

11.    As a direct and proximate result of Metropolitan Life's intentional publication of deceptive and misleading medical data and information, as described in the preceding paragraphs, upon which data the Plaintiff reasonably relied, the Defendant caused asbestos and/or asbestos-containing products to be used by Plaintiff and Plaintiff has inhaled or otherwise ingested hazardous asbestos dust, and/or will inhale or ingest hazardous asbestos dust, resulting in injuries.

12.    Additionally and alternatively, as a direct and proximate result of Metropolitan Life, and Pneumo Abex Corporation's actions and omissions as described above, the Plaintiff was caused to remain ignorant concerning the danger of human exposure to asbestos, resulting in damage to the Plaintiff by depriving the Plaintiff, his agents, employees and the general public, of opportunities to be aware of the hazards of asbestos exposure, and thus the opportunity to take proper safety precautions and/or avoid exposure to asbestos dust. Because of this ignorance on the part of the Plaintiff, Metropolitan Life, and Pneumo Abex

Corporation's failure to warn, Metropolitan Life, and Pneumo Abex Corporation 's concealment from the Plaintiff of the alteration of its published test results, and the actions and omissions and concerted design and conspiracy of Metropolitan Life, and Pneumo Abex Corporation and others, all as described above, the Plaintiff was occupationally exposed to asbestos and/or asbestos-containing products used at his places of work and has inhaled or otherwise ingested hazardous asbestos dust resulting in his developing Mesothelioma.

13.     As a direct and proximate result of one or more of the foregoing acts or omissions on the part of Metropolitan Life, and Pneumo Abex Corporation, the Plaintiff was exposed to and inhaled, ingested or otherwise absorbed great amount of asbestos fibers causing Plaintiff to develop the asbestos disease aforesaid, which has disabled and disfigured the Plaintiff; the Plaintiff has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced Mesothelioma; the Plaintiff has in the past and will in the future experience great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of said asbestos fibers; that as a further result of his asbestos-induced Mesothelioma, the Plaintiff has in the past and will in the future be hindered and prevented from pursuing his normal course of work history, thereby losing large sums of money which otherwise would have accrued to him.

WHEREFORE, Plaintiffs pray that they be awarded, in addition to their compensatory damages, punitive and exemplary damages in an amount in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

Respectfully Submitted,
JOHN H. JONES AND ALICE JONES, Plaintiffs

COUNT IV

Come now, Plaintiffs, by and through their attorneys, GORI, JULIAN & ASSOCIATES, P.C., and for their cause of action against the Defendant Honeywell International, Inc., states:

1.     Plaintiffs repeat and re-allege Paragraphs 1 through 7 in Count I above.

2.      Upon information and belief, Defendant Honeywell International, Inc., manufactured, sold, and/or distributed asbestos-containing products as late as 2001, and possibly continued to manufacture, sell, and/or distribute said products from 2001-present. Investigation continues as to the last date Defendant Honeywell, International, Inc., manufactured, sold, and/or distributed asbestos-containing products.

3.      At the time Defendant Honeywell International, Inc., manufactured, sold, and/or distributed asbestos-containing products to which Plaintiff was exposed, said products were in a defective condition and were unreasonably dangerous in that:

    a.    Said products contain asbestos as a constituent substance;

    b.    Said asbestos was highly toxic, deleterious, poisonous, carcinogenic and harmful to the health of Plaintiff and others similarly situated;

    c.    Said products were not accompanied by any or adequate warnings advising of the danger of exposure to asbestos or of precautions to the development and the use of asbestos-containing products.

4.      Said substances and products reached Plaintiff's work site and/or home in substantially the same condition as when manufactured, distributed and sold.

5.      At all times relevant hereto, said products were used in the manner and environment intended, and in a manner reasonably foreseeable and anticipated by Defendants.

6.      The aforesaid asbestos products or processes containing each were in a defective condition and constituted abnormally hazardous and ultra hazardous substances.

7.      As a direct and proximate result of said defective, unreasonably dangerous and ultra hazardous conditions of said products and processes Plaintiff was exposed to and inhaled, ingested or otherwise absorbed great amounts of asbestos and products or processes containing each causing Plaintiff to develop the asbestos-related disease aforesaid, which has disabled and disfigured Plaintiff. Plaintiff has in the past and will in the future expend large sums of monies for hospital, medical and healthcare

services necessary for the treatment of his chemically-induced diseases and conditions, including the

medical monitoring of his condition; and that Plaintiff further fears that he will contract additional

diseases as a result of his exposure.

WHEREFORE, Plaintiffs pray judgment be entered against the Defendant jointly and severally for

actual compensatory damages as are fair and reasonable, in excess of $50,000.00, including the cost of

this action and any other such relief as the Court deems just and equitable.

Respectfully Submitted,
JOHN H. JONES AND ALICE JONES, Plaintiffs

## COUNT V
## NEGLIGENT SPOLIATION OF EVIDENCE

1.      At a point in time prior to the commencement of this case, Defendants, J-M

MANUFACTURING COMPANY, INC. had in their possession, custody and control certain documents

and information relating to asbestos-containing products, which J-M MANUFACTURING COMPANY,

INC. sold, distributed and applied.

2.      Upon information and belief, said documents and information were relevant to issues in

this case, including, but not limited to: the identification of asbestos-containing products sold, distributed

and applied by J-M MANUFACTURING COMPANY, INC. the locations to, and at, which J-M

MANUFACTURING COMPANY, INC. sold, distributed and applied asbestos-containing products; the

identity of the manufacturers and wholesale distributors of said products; and, J-M MANUFACTURING

COMPANY, INC. knowledge, notice and information regarding the hazards of asbestos and whether or

not it was negligent.

3.      It was foreseeable to a reasonable person/entity in the position of J-M

MANUFACTURING COMPANY, INC. that said documents and information constituted evidence,

which was material to potential civil litigation-namely, asbestos litigation.  J-M MANUFACTURING

COMPANY, INC. had a duty to maintain and preserve said documents and information because they

knew or should have known that said documents and information were material evidence in potential asbestos litigation.

4. J-M MANUFACTURING COMPANY, INC. breached their duty to preserve said material evidence by destroying and otherwise disposing of said documents and information, at a time when they knew or should have known that the same constituted material evidence in potential civil litigation.

5. As a direct and proximate result of J-M MANUFACTURING COMPANY, INC. destruction and disposal of said material evidence, Plaintiff has been prejudiced and impaired in proving his claims against all potentially liable parties, including, but not limited to, J-M MANUFACTURING COMPANY, INC. and, as a further result thereof, has been compelled to dismiss and/or compromise said claims against other defendants.

6.    As a result of this prejudice and impairment, Plaintiff has been caused to suffer damages in the form of impaired ability to recover against J-M MANUFACTURING COMPANY, INC. and lost of reduced compensation from potentially liable parties in this litigation.

WHEREFORE, Plaintiffs pray this Court to enter judgment against Defendants J-M MANUFACTURING COMPANY, INC. and to award compensatory damages in an amount to be proved at trial, but believed to exceed $50,000, and for such other and further relief that this Court deems appropriate.

Respectfully Submitted,
JOHN H. JONES AND ALICE JONES, Plaintiffs

## COUNT VI
### WILLFUL AND WANTON SPOLIATION OF EVIDENCE
1. At a point in time prior to the commencement of this case Defendants J-M MANUFACTURING COMPANY, INC. had in their possession, custody and control certain documents and information relating to asbestos-containing products, which J-M MANUFACTURING COMPANY, INC. sold, distributed and applied.

2. Upon information and belief, said documents and information were relevant to issues in this case, including, but not limited to: the identification of asbestos-containing products sold distributed and applied by J-M MANUFACTURING COMPANY, INC. the locations to, and at, which J-M MANUFACTURING COMPANY, INC. sold, distributed and applied asbestos-containing products; the identity of the manufacturers and wholesale distributors of said products; and, J-M MANUFACTURING COMPANY, INC. knowledge, notice and information regarding the hazards of asbestos and whether or not it was negligent.

3.     It was foreseeable to a reasonable person/entity in the position of J-M MANUFACTURING COMPANY, INC. that said documents and information constituted evidence, which was material to potential civil litigation-namely, asbestos litigation. J-M MANUFACTURING COMPANY, INC. had a duty to maintain and preserve said documents and information because they knew or should have known that said documents and information were material evidence in potential asbestos litigation.

4. J-M MANUFACTURING COMPANY, INC. breached its duty to preserve said material evidence by destroying and otherwise deposing of said documents and information, at a time when it knew or should have known that the same constituted material evidence in potential civil litigation. In destroying and disposing of said material evidence, J-M MANUFACTURING COMPANY, INC. acted intentionally and/or in reckless disregard of its duty to preserve the same.

5. As a direct and proximate result of J-M MANUFACTURING COMPANY, INC. destruction and disposal of said material evidence, Plaintiff has been prejudiced and impaired in proving his claims against all potentially liable parties, including, but not limited to, J-M MANUFACTURING COMPANY, INC. and, as a further result thereof, has been compelled to dismiss and/or compromise said claims against other defendants.

6.     As a result of this prejudice and impairment, Plaintiff has been caused to suffer

damages in the form of impaired ability to recover against J-M MANUFACTURING COMPANY, INC. and lost or reduced compensation from potentially liable parties in this litigation.

WHEREFORE, Plaintiffs pray this Court to enter judgment against Defendants J-M MANUFACTURING COMPANY, INC. and to award: compensatory damages in an amount to be proved at trial, but believed to exceed $50,000,; punitive damages in an amount sufficient to punish J-M MANUFACTURING COMPANY, INC. for their misconduct and to deter similarly situated parties from committing like acts of misconduct in the future; and for such other and further relief that this Court deems appropriate.

Respectfully Submitted,
JOHN H. JONES AND ALICE JONES, Plaintiffs

COUNT VII
LOSS OF CONSORTIUM
1.      Plaintiff, ALICE JONES, hereby incorporates the allegations contained in Counts I-VII of the Complaint.

2.      That as a direct and proximate result of one or more of the foregoing acts or omissions of the Defendants, the Plaintiff, ALICE JONES, as well as other family members, has been deprived of the companionship, society and services with her husband, JOHN H. JONES, all to her damage in an amount in excess of $50,000.00.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants for a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS which will fairly and reasonably compensate for the Plaintiff's injuries.

Respectfully Submitted,
ALICE JONES, Plaintiff

GORI, JULIAN & ASSOCIATES, P.C.,


By: _____ /s/ Randy L. Gori
            Randy L. Gori, #6257394
            Barry Julian #06229519
            Attorneys for Plaintiff
            156 N. Main St.
            Edwardsville, IL 62025
            Phone: (618) 659-9833
            Fax: (618) 659-9834
            randy@gorijulianlaw.com