**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP. *et al.*, | : | Case No. 14-10979 (CSS) |
| Debtors-in-Possession. | : | (Jointly Administered) |
| | : | Hearing Date: January 8, 2018 at 11:00 a.m. (Eastern Standard Time) |
| | : | Re: D.I. 12358 |

**FEE COMMITTEE'S RESPONSE TO THE MAJORITY CREDITORS'**
**MOTION TO APPOINT ITS REPRESENTATIVE TO THE FEE COMMITTEE**

The Fee Committee appointed in the above-captioned chapter 11 cases (the "**Fee Committee**") respectfully submits this response (the "**Response**") to the *Motion to Appoint a Representative of the Majority Creditors to the Fee Committee* [D.I. 12358] (the "**Motion**"), filed on December 17, 2017 by Elliott Management and others.

**INTRODUCTION**

1.  Every party in interest has a statutory right to challenge a monthly, interim, or final fee application of any Retained Professional. In these proceedings, however, the Fee Committee is not just an interested party; it is a fiduciary. Mandated by the Court's authorizing order, the Fee Committee's obligation is to apply the law governing professional fees in Chapter 11 cases to pending applications to assist the Court in fulfilling its statutory duty under the Bankruptcy Code. To that end, the Fee Committee has reviewed the fee and expense applications of more than 39 Retained Professionals; evaluated them for compliance with the Bankruptcy Code, the local rules, the U.S. Trustee Guidelines, and other standards; reached consensual resolutions on adjustments; and, made recommendations to the Court. The four members of the Fee Committee—an independent chair joined by the U.S. Trustee, a

10700673

representative of the Debtors, and a representative of the Official Committee of Unsecured Creditors—are "officers of the Court." *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "**Fee Committee Order**") at § G(1).  They are not themselves stakeholders nor are they direct beneficiaries of their own analysis.

2. For more than three and a half years, the Fee Committee has conducted the review and confidential negotiation process with the Retained Professionals based on consensus and confidentiality—within the Fee Committee itself and in the negotiated and publicly-reported recommendations to the Court.  While the U.S. Trustee and other parties in interest always maintained the right to object to a fee application separately or to take positions contrary to the Fee Committee's, no one has.  Similarly, this Court has not been asked to resolve disputed issues regarding Retained Professional fees.

3. This continuity has provided Retained Professionals with the assurance that the Fee Committee will not take a second bite at the apple once interim agreement has been reached.  That assurance makes the Fee Committee more effective—creating an incentive for professionals to participate meaningfully in the fee review process.  A Fee Committee that seeks to re-open issues that have been resolved in prior interim fee periods significantly weakens its effectiveness and position.  Why would a professional engage meaningfully in discussions with the Fee Committee only to face re-examination and yet another round of scrutiny as part of a second, contested and expensive process?

4. Throughout the Fee Committee's work, Retained Professionals have been open to significant negotiated adjustments to their fees and expenses, precisely because they know that the Fee Committee applies its standards consistently, that differences of opinion once resolved will not be re-litigated, and that the confidential or sensitive information they provide will not be improperly disclosed or misused by any of its members.  The process depends, in sum, upon the

Retained Professionals' confidence that the Fee Committee's treatment will be fair, impartial, and plenary—subject, as always, to Court approval.

5. Throughout these proceedings, Fee Committee members have shared with each other material, non-public information about the cases to inform the analysis. Such openness and free exchange of information within the Fee Committee would not be possible if members were permitted to use non-public or confidential material provided them for a purpose other than the Fee Committee's work.

6. Over the course of reviewing more than 200 interim fee applications, Peter Kravitz has served as a representative of the unsecured creditors on the Fee Committee. He is willing to serve until the appointment of a successor. And the Fee Committee itself does not object if the Creditors' Committee designates an appropriate successor. Indeed, the Fee Committee welcomes the participation of any new member appointed to represent all creditors. Yet any newly-appointed member must steadfastly honor his or her fiduciary duties and maintain the integrity and efficacy of the fee review process. The Fee Committee remains concerned that Elliott Management or its chosen representative is not the appropriate party to fulfill this role. The appointment of a member with conflicting or competing motives will unnecessarily impair the Fee Committee's functioning through the conclusion of these proceedings when finality and closure are more important than ever.

## BACKGROUND

7. Near the outset of these cases, the principal parties in interest and the U.S. Trustee stipulated to the creation of the Fee Committee. Their stipulation, ratified by Court order, provided for four members:

    (i)    [O]ne member appointed by and representative of the Debtors;[1]

    (ii)    one member appointed by and representative of the [Official] Committee of [Unsecured Creditors];

    (iii)    one member appointed by and representative of the U.S. Trustee, . . . and

    (iv)    one independent member (the "Independent Member") . . . who is unaffiliated with any party in the Chapter 11 cases and who is a "disinterested person" within the meaning of 11 U.S.C. § 101(14).

Fee Committee Order at § A(2).

8. The Fee Committee Order recognizes that changing circumstances might necessitate adjustments in the Fee Committee's membership. Accordingly, it provides that "[t]he Debtors, the Committee, and the U.S. Trustee may, in their discretion, replace or rotate their respective Fee Committee designees without order of the Court." *Id.*

9. By the Motion, the movants seek to replace the unsecured creditors' representative on the Fee Committee with a proxy for a significant stakeholder and litigant in the remaining estates.

## FEE COMMITTEE CONCERNS ABOUT ELLIOTT MANAGEMENT'S PARTICIPATION ON THE FEE COMMITTEE

**The Fee Committee is an estate fiduciary, its members committed primarily to the proper application of the legal standards governing fees in Chapter 11.**

10. Since the Fee Committee's appointment, its members have exercised their responsibilities as "officers of the Court." Fee Committee Order at § G(1). Committee members (other than the Independent Member) may not be paid "for service on the Fee Committee or time expended on Fee Committee matters," and Retained Professionals may not serve as Fee Committee members. *Id.* at §§ E(1), (A)(4). These provisions were designed to ensure that,

---

[1] Unless defined otherwise herein, capitalized terms shall have the meanings set forth in the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [D.I. 2066] (the "**Interim Compensation Order**") and the Fee Committee Order.

4

while Fee Committee members are representative of their constituent groups, they do not themselves have a direct pecuniary interest in the outcome of any fee application or the fee process as a whole.  They are fiduciaries.  The presence of the U.S. Trustee and Independent Member helps ensure that the interests of a single group or constituency do not improperly drive the Fee Committee's process or results, but the members also police themselves to ensure that interests beyond the Fee Committee's charter do not improperly influence their decision making.

11. The Fee Committee evaluates professional fees against the standards outlined in the Fee Committee Order (including the Bankruptcy Code and rules, the Interim Compensation Order, the Court's local rules and standing orders, the U.S. Trustee Guidelines, and case-specific guidelines promulgated by the Fee Committee), reaches conclusions about appropriate treatment, and reports its assessment to the Court.  *See* Fee Committee Order at §§ C(1)(a)-(e) and C(2)(f).  The goal of this process is to apply the law, not to impose arbitrary standards or allocations between Debtors and among creditors.

12. The Fee Committee process is comprehensive.  The Fee Committee, through its counsel, reviews every fee application, every invoice, and every time entry line-by-line.  They evaluate, among other things:

    1. The hourly rates charged, including:

- Reviewing billing rates for each professional to verify consistency with the applicable retention order or supplement;
- Calculating blended rates;
- Evaluating multiple rates billed by individual attorneys; and,
- Evaluating rates and services provided by attorneys not yet admitted to the bar and by law students.

    2. The number of hours billed, including:

- Calculating fees or billable hours for preparation of firm retention documents and fee applications as a percentage of total fees and hours;
- Eliminating fees for routine billing and invoicing activities;

- Evaluating legal research to determine whether it is necessary and conducted at the lowest appropriate rate;
- Reviewing clerical and administrative tasks to determine either the propriety of the billing rate to the task or whether it is non compensable;
- Determining if time is billed contemporaneously in one-tenth of an hour increments;
- Identifying vague task descriptions that do not permit a reviewer to determine the task's necessity;
- Identifying improperly "lumped" or "block billed time";
- Reviewing the use of properly segregated matter numbers and project categories,
- Identifying meetings, hearings, depositions, or other events attended by an apparently unnecessary, unexplained, or non-contributing timekeepers;
- Verifying that non-working travel is billed at 50 percent;
- Identifying calculation or other billing errors;
- Examining whether tasks are, in general, appropriately delegated to the professional with the lowest suitable billing rate; and
- Identifying "transitory" timekeepers that may not have contributed meaningfully to the representation.

3. The Retained Professional's team structure and staffing patterns,

    including:

    - Identifying timekeepers by title, seniority, and specialization, if any;
    - Determining the role of each timekeeper; and
    - Monitoring internal team management, workflow, and other processes that might result in inefficiencies or inaccuracies.

4. Propriety of expenses, including:

    - Eliminating first class or inappropriate travel;
    - Applying meal, lodging, and transportation caps;
    - Verifying appropriate receipts and other documentation;
    - Recommending for disallowance charges for office supplies, staff overtime, printer use, and other overhead expenses;
    - Eliminating expenses associated with unnecessary meeting or hearing attendance;
    - Checking the use of in-house catering, working meal charges, and after-hours car service;
    - Limiting the reimbursement rate for photocopies; and
    - Prohibiting reimbursement for alcohol, client entertainment, marketing, and other business development activities.

While this is not an exhaustive list of the matters the Fee Committee addresses, these issues are raised with the Retained Professionals frequently, and they are given the opportunity to explain their invoices. What follows is typically a robust dialogue with the professionals and, where appropriate, consensual fee reductions.

### Elliott Management may not be an appropriate party to serve as a fiduciary on the Fee Committee.

13. Elliott Management and other similarly situated creditors unquestionably have a substantial interest in these proceedings and in the fee approval process that remains. Their belated campaign to join the Fee Committee, however, raises concerns that implicate the Fee Committee's fiduciary role and function. Elliott has emphasized repeatedly in the Motion and its communications with the Fee Committee that 75 cents of every fee dollar reduced flows directly to the Elliott creditor group and that its objective is to reduce fees to improve creditor return. While this is certainly a legitimate strategic objective for a significant creditor, it is entirely inconsistent with the Fee Committee's fiduciary role.

14. Rather than seek to arbitrarily reduce fees, the Fee Committee monitors, verifies, and publicly reports its conclusions about professional fees and their compliance with the law. In some cases, the result is a significant reduction in fees. That is not the beginning of the Fee Committee process, though it is sometimes the result.

15. The Fee Committee continues to fulfill its duty. It has reported on and noticed hearings for interim and final fee applications at least 15 times. *See* [D.I. 3024, 3147, 3356, 3522, 3554, 4774, 4807, 6548, 7850, 7873, 8800, 9908, 11038, 11413, 12148] (the "**Summary Reports**"). All parties in interest received notice of fee hearings, had the opportunity to review the fee applications and Summary Reports, and were free to object or comment. Through three

and a half years of proceedings, no party has objected to or even commented on the Fee Committee's reporting and recommendations—until now.

16. Fee Committee members regularly receive confidential non-public information about the Debtors and from the Debtors as part of the committee's work. Committee members acknowledge their obligation to deal with that information in confidence. It may be inconsistent with Elliott's strategy to obtain the confidential non-public information that is available to the Fee Committee. That result would prejudice the Fee Committee's ability to negotiate compromises with Retained Professionals that could later be used against them.

17. The Fee Committee determined at one of its first meetings that communications with Retained Professionals through the negotiation and resolution phase would remain confidential, consistent with Fed. R. Evid. 408 and the Independent Member's experience in other complex Chapter 11 proceedings. Without such protection, Retained Professionals would have been deterred from participating fully—and candidly—in the Fee Committee's process and from agreeing to adjust their fee requests.

18. The Fee Committee has consistently represented to professionals that their discussions and negotiations would not be shared outside the Fee Committee or used for another purpose. The Fee Committee has kept that promise—to Elliott's dissatisfaction. If a contested matter were to arise—and so far none has—the Fee Committee has resolved not to prejudice Retained Professionals' right and opportunity to request restricted treatment of sensitive or confidential material prior to any public filing.

19. The Fee Committee's process relies heavily, but not exclusively, on the data submitted by Retained Professionals in support of their fee applications. Counsel has, on occasion, requested that material redacted from an application be disclosed and explained. In obtaining and reviewing budgets, the Fee Committee recognizes that they can contain strategic or

tactical information otherwise protected by attorney-client privilege or the work product doctrine. In the energy sector, some professionals' materials could include strategic infrastructure information or other data subject to regulatory restrictions. Participation in the Fee Committee process should not waive any party's privilege or reasonable expectation of confidentiality.

20. A Fee Committee member necessarily embraces the commitment to a collaborative and communicative process with Retained Professionals and to using Fee Committee work product exclusively to advance the Fee Committee's fiduciary role. A representative of Elliott Management—be it an attorney, accountant, advisor, or paid trustee—cannot fulfill these expectations. Their oft-stated goals and objectives for the fee review process are inconsistent with a fiduciary role. If the Court alters the Fee Committee's structure or composition, any changes should address the need for continued protection of confidential and sensitive information shared in meetings and draft recommendations and in Retained Professional billing records, prohibit the use of Fee Committee work product for tactical advantage elsewhere, and re-emphasize the crucial fiduciary obligations of a Fee Committee member.

**Elliott would use a seat on the Fee Committee to revisit agreements reached regarding prior interim fee periods.**

21. The Retained Professionals have just completed their work during the Eleventh Interim Fee Period (September 1, 2017 through December 31, 2017). Interim Fee Applications for that work will be due on or around February 15, 2018. The Debtors have estimated a March 30, 2018 effective date (the "Effective Date"), which would make the last Interim Fee Period—the Twelfth—three months long (January 1, 2018 through the Effective Date). Final fee applications then would be due around May 15, 2018—45 days after the Effective Date pursuant

to the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11887] (the "**Plan**").  Barring unanticipated delay or ancillary litigation, the Fee Committee plans to report on final fee applications throughout the summer, discussing them with Retained Professionals, and make recommendations for final Court approval no later than next fall.

      22.      As part of its final review process, the Fee Committee will review and report aggregated data from all fee periods: average hourly rates, for example, and time Retained Professionals have spent on the fee application process itself.  The Fee Committee has reserved its rights on a number of issues that are most appropriately addressed at the conclusion of these cases—such as rate increases and notably high blended rates—when complete data for the whole case are available.  On most issues, however, the Fee Committee does not anticipate reexamining concerns that were reported and consensually resolved in prior interim fee periods.  In the absence of a remarkable change in circumstances, such as administrative insolvency, it would be neither efficient nor fair to re-litigate consensually-resolved issues in interim applications already approved by the Court in the absence of any objections.

      23.      Retained Professionals have participated in the Fee Committee process in good faith, reaching agreements on interim issues that the Fee Committee, the Retained Professionals, and the Court all have concluded are reasonable.  Cooperation and compliance with the Court-ordered Fee Committee process should not be punished by a reconstituted Fee Committee that reevaluates its prior conclusions on reimagined standards.  To allow that would result in reduced cooperation and compliance from Retained Professionals as they enter the case's final stages—undermining one of the Fee Committee's primary purposes.

24. In its most recent communications with the Fee Committee, Elliott has suggested that the Fee Committee advise Retained Professionals about the compensable work they will be permitted to perform. This, too, is inconsistent with the Fee Committee's fiduciary and advisory role. The Fee Committee's approach has not been to tell professionals how to manage the cases or represent their clients; rather, it has articulated the Fee Committee's reasonableness standards and applied them. For example, the Fee Committee has informed professionals that, for their fees to be recommended for estate payment, all timekeepers billing to attend a hearing should play a documented or specific role in the hearing. The Fee Committee routinely asks professionals to justify the attendance of timekeepers whose role is not readily apparent from a transcript or pleading. This practice places professionals on notice that bringing associates to court for experience is certainly not prohibited, but the Fee Committee will not recommend it for estate reimbursement.

25. Every creditor retains the right to participate, on its own, in the fee review process. Every creditor with concerns about that process or any pending application can and should communicate with the Fee Committee. Notwithstanding the outcome of the Motion, the Fee Committee will continue to stay in contact with Elliott's representatives and welcome its comments and suggestions.

## CONCLUSION

The creditors always have had a representative on the Fee Committee and that representation—in some form—should continue. Peter Kravitz, a UCC member representative of a major EFH Corporate Services vendor that held claims against both T-Side and E-Side entities, has expressed a willingness to continue to serve until replaced. But the discretion to self-select a successor afforded to the Fee Committee members cannot be unlimited.

Every member of the Fee Committee, whether involved from the outset or newly-designated, is an "officer of the Court," requiring the application of fiduciary judgment untroubled by conflicting or contradictory motives. When and if the Movants or the Creditors' Committee itself identifies a representative that can fulfill these criteria, the Fee Committee will welcome the new member's contributions to the Fee Committee's remaining work through the final phase of these cases later this year.

Dated: January 3, 2018.

**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**

*/s/ William M. Alleman, Jr.*
Jennifer R. Hoover, Esquire (5111)
William M. Alleman, Jr., Esquire (5449)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
Telephone: 302-442-7010
Facsimile: 302-442-7012
E-mail: jhoover@beneschlaw.com
           walleman@beneschlaw.com

- and -

GODFREY & KAHN, S.C.

*/s/ Katherine Stadler*
Katherine Stadler, *Admitted Pro Hac Vice*

GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Telephone: 608-257-3911
Facsimile: 608-257-0609
E-mail: kstadler@gklaw.com

*Attorneys for the Fee Committee*

18262465.9