# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) Re: D.I. 12358 |
| | ) Hearing Date: January 8, 2018 at 10:00 a.m. |

## DEBTORS' OBJECTION TO ELLIOTT'S MOTION TO APPOINT A REPRESENTATIVE OF THE MAJORITY CREDITORS TO THE FEE COMMITTEE

Energy Future Holdings Corp. ("EFH"), Energy Future Intermediate Holding Company, LLC ("EFIH," and, together with EFH and the above-captioned debtors and debtors in possession, the "Debtors") hereby file this objection (this "Objection") to the *Motion to Appoint a Representative of the Majority Creditors to the Fee Committee* [D.I. 12358] (the "Motion to Appoint") filed by Elliott Associates L.P., The Liverpool Limited Partnership, and Gatwick Securities (together, "Elliott") along with Paloma Partners Management Company and Sunrise Partners Limited Partnership (together, "Paloma," and collectively, with Elliott, the "Elliott Creditors"). In support of this Objection, the Debtors respectfully state as follows:[2]

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of Debtors in these Chapter 11 Cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to them in the Motion to Appoint.

RLF1 18715124v.1

## PRELIMINARY STATEMENT

1. Three and a half years ago, this Court appointed the Fee Committee. Approximately one year ago, the Elliott Creditors first purchased Claims against the EFIH Debtors. Approximately four months ago, the Elliott Creditors first purchased Claims against the EFH Debtors. Since the commencement of these chapter 11 cases, over 100 interim fee applications and nearly a thousand monthly fee statements have been filed. The Fee Committee, as an officer of the Court, is tasked with maintaining the delicate balance between maximizing value for the benefit of all of the Debtors' stakeholders with one of the most basic tenets of section 330 of the Bankruptcy Code: ensuring that the ability of retained professionals to provide services to chapter 11 debtors is preserved.

2. Now, nearly four years into the Debtors' chapter 11 cases, and with emergence at long last on the horizon, the Elliott Creditors (one of the Debtors' newest constituencies), through the Motion to Appoint, have disrupted such balance in at least three ways. *First*, the Motion to Appoint makes clear that, from the perspective of the Elliott Creditors, the purpose of a fee committee is to reduce fees and expenses to non-market levels. This notion not only contravenes section 330 of the Bankruptcy Code, but also harkens back to the now-defunct "efficiency of administration" standard set forth in the former Bankruptcy Act. *Second*, Ms. Berger, the proposed Elliott-appointed Fee Committee representative, cannot serve on the Fee Committee, given that her firm (BraunHagey, as defined below) represents the Elliott Creditors (and, therefore, cannot act as a fiduciary for all unsecured creditors) and given such firm's refusal, to date, to provide any information regarding the compensation agreement between BraunHagey and the Elliott Creditors. *Third*, even assuming the Elliott Creditors offer to replace Ms. Berger with a non-lawyer representative, there is no viable alternative. No "Elliott-directed"

representative can serve on the Fee Committee given the serious confidentiality, fiduciary, and abuse of process considerations described below. For these reasons, the Debtors respectfully request that the Court deny the relief requested in the Motion to Appoint and preserve the current composition of the Fee Committee.

## BACKGROUND

3. On December 8, 2017, the Elliott Creditors filed the *Majority Creditors' Notice Accepting Appointment of Representative to the EFH Fee Committee* [D.I. 12323] (the "Elliott Notice").[3] The Notice formalized Elliott's stated goal of obtaining a representative on the Fee Committee, which, as detailed further in the Motion to Appoint, allows Elliott, a non-fiduciary, to exercise control over its "appointed" Fee Committee representative in an attempt to reduce fees and expenses to non-market based levels.

4. Beginning on or around December 21, 2017, the Elliott Creditors' law firm, BraunHagey & Borden LLP ("BraunHagey"), served certain of the retained professionals in the chapter 11 cases with informal discovery regarding their incurred and yet-to-be incurred fees and expenses (although, to the best of the Debtors' knowledge, no discovery was served on any of the retained professionals acting at the direction of the EFH disinterested directors). This informal discovery—which was served even after the Court's clarification that Elliott's representative was not a Fee Committee member—was extremely broad (*e.g.*, "All documents or communications regarding the success, failure or outcome of the EFH bankruptcy.") and included a request for *pre*-petition fee summaries, which could encompass information dating back at least five years.[4]

---

[3] The Elliott Notice has since been withdrawn [D.I. 12357].

[4] In connection with the Motion to Appoint, representatives of the Debtors and BraunHagey engaged in several formal and informal "meet and confers" in an attempt to narrow the scope of dispute.

3

5.  As detailed below, the Notice and the Motion to Appoint were filed over three years after the Fee Committee was first appointed. On May 13, 2014, the U.S. Trustee appointed the TCEH Official Committee [D.I. 420]. Peter Kravitz (through his affiliation with HCL America, Inc.) was appointed to the TCEH Official Committee under this order. On August 21, 2014, the Court entered the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order"). At this time, the TCEH Official Committee represented the only official creditors' committee. Mr. Kravitz was appointed to represent the TCEH Official Committee's interests as a member of the Fee Committee.

6.  Two months later, on October 27, 2014, the U.S. Trustee filed an additional *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 2570] to appoint an official committee to represent the interests of unsecured creditors of EFH, EFIH, EFIH Finance, Inc. and EECI, Inc (the "EFH Committee"). Following the appointment of the EFH Committee, the Fee Committee was not formally reconstituted to include a separate representative of the EFH Committee. Instead, over the course of reviewing over 100 interim fee applications, and based on communications among the TCEH Official Committee, the EFH Committee and the Fee Committee, Mr. Kravitz served as a fiduciary for *all* unsecured creditors. No motion seeking to formalize this understanding was ever filed, and prior to this current dispute, no party has raised an objection to the manner in which the Fee Committee has operated.

---

These efforts were unsuccessful in light of the fundamental dispute between the Elliott Creditors and the Debtors regarding the purpose of fee committees in general and the continued implication that the Elliott-appointed Fee Committee representative would act as a fiduciary for the Elliott Creditors reporting to Elliott as opposed to a fiduciary for all unsecured creditors. The Elliott Creditors did not make the Debtors aware of the informal discovery requests either before or after issuing such requests, nor did the Elliott Creditors discuss with the Debtors the appropriate scope of such requests prior to issuing them.

RLF1 18715124v.1

## **OBJECTION**

I. **A FEE COMMITTEE IS AN OFFICER OF THE COURT, CHARGED WITH EVALUATING REASONABLENESS OF FEES—NOT REDUCE FEES TO A NON-MARKET LEVEL.**

   A. **The Role of a Fee Committee.**

   7. Fee committee members are officers of the Court.[5] The most important role of a fee committee is "not to reduce fees, but to maintain the integrity of the bankruptcy system." Effective Review of Compensation in Large Bankruptcy Cases, 88 Am. Bankr. L.J. 127 (2014). Effective fee review appropriately balances (a) the obligations of the debtors, as fiduciaries for their estates, to maximize recoveries for creditors, against (b) the need to ensure that professionals who provide essential services during the bankruptcy proceedings are treated fairly. *Id.*

   8. The evolution of the Bankruptcy Code standards for reviewing retained professional fees provides support for this role. Under the former Bankruptcy Act, courts applied an "economy of administration" standard, that required courts to consider the public interest in conserving and administering the estate as efficiently as possible. 11 U.S.C. § 67(c) (1968). Under the Bankruptcy Reform Act of 1978, Congress expressly rejected this standard, stating that "notions of economy of the estate in fixing fees are outdated and have no place in a bankruptcy code," and making clear that "attorneys and other professionals serving in a case under title 11 [are entitled to be] compensated at the same rate as professionals performing comparable services in cases other than under title 11." 124 Cong. Rep. 32, 394-95 (1978) (statement of Rep. Edwards).

---

[5] Fee Committee Order, at § G(1) (stating that the four members of the Fee Committee are "officers of the Court").

9. These Congressional sentiments ultimately resulted in section 330 of the Bankruptcy Code, which provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a). To determine whether requested fees are reasonable, section 330 establishes a non-exclusive list of factors, including (a) the time spent on such services; (b) the rates charged for such services; (c) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (d) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (e) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (f) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. *Id.*

10. In what has now become relatively common practice, courts have appointed fee examiners or fee committees in large, complex cases to assist the court in monitoring, reviewing, and assessing retained professional fee applications for compliance with the Bankruptcy Code and applicable rules. Again, this appointment is not done with the intention of materially reducing fees, but rather to ensure the reasonableness of such fees under section 330 of the Bankruptcy Code.

11. Consistent with such practice, and pursuant to the Fee Committee Order, the Fee Committee is charged with "monitoring, reviewing, and assessing fee applications" filed by retained professionals for compliance with sections 328, 330, and 331 of the Bankruptcy Code,

as applicable, Rule 2016 of the Federal Rules of Bankruptcy Procedure, the Local Rules, and the applicable guidelines promulgated by the Office of the United States Trustee.[6] None of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules, or the U.S. Trustee guidelines suggest that the Fee Committee's mission statement should be to effectuate non-market based retained professional fees and expenses—indeed, the elimination of the "economy of administration" standard under the former Bankruptcy Act expressly eliminated this standard.[7]

### B. The Fee Committee Has Fulfilled Its Role for Over Three Years.

12. Although the various retained professionals have not always agreed with the positions taken by the Fee Committee during individual fee negotiations (or even the end result of such negotiations), the Fee Committee *has* supported the efforts of the Debtors' retained professionals to maximize enterprise value every step of the way. In those circumstances where the professionals disagreed with the Fee Committee, the professionals and the Fee Committee have largely been able to resolve their differences consensually. In the over three years since its appointment, the Fee Committee has developed a productive and professional relationship with the various professionals and adequately balanced the fundamental competing needs evaluated by fee committees.

- *First*, the Fee Committee has negotiated fee and expense reductions with virtually every retained professional, with respect to fees and expenses requested in interim fee applications.

- *Second*, in addition to such reductions (which are reflected in the Fee Committee's docketed reports), the Fee Committee has also engaged in confidential negotiations with various professionals to negotiate reductions during less active periods in the chapter 11 cases—such reductions have, in many instances, been agreed-upon even before the

---

[6] Fee Committee Order, at § C(1).

[7] 11 U.S.C. § 67(c) (1968).

professional filed its fee application and, therefore, are in addition to the docketed reductions.

- ***Third***, the retained professionals have modified their timekeeping and invoicing process over time to preemptively accommodate the Fee Committee's anticipated requests, thereby reducing the final reductions and accelerating the negotiation period between each professional and the Fee Committee. Hr'g Tr. June 26, 2016 29:5-13 (the Court noting a "squeezing or lessening of reductions" and stating that a result is indicative of the "Fee Committee being successful in doing their job over time, and the professionals adapting to the rules that have been set down and procedures that have been set down") (Sontchi, J.).

- ***Fourth***, at the direction of the Court, the Fee Committee has reviewed certain non-retained professional fee applications (*e.g.*, professionals who file applications under section 503(b) of the Bankruptcy Code and the professionals retained by the TCEH junior creditors in connection with the evergreen settlement approved by the Bankruptcy Court in December 2015). Collectively, these efforts have improved the integrity of the Debtors' chapter 11 cases by subjecting the professionals' requested fees and expenses to Fee Committee scrutiny while ensuring that negotiations over fees and expenses did not disrupt or delay the Debtors' larger—and infinitely more complex and time-consuming—restructuring efforts.

## II. ELLIOTT'S PROPOSED REPRESENTATIVE ONLY REPRESENTS ELLIOTT'S PAROCHIAL INTERESTS—NOT THE INTERESTS OF ALL UNSECURED CREDITORS OF THE DEBTORS' ESTATES.

13. The Fee Committee Order states that the Fee Committee will consist of four members, including "one member appointed by and representative of the Committee . . . ." Fee Committee Order, § Art. A.2(ii). An Elliott-appointed representative is not a "Committee" representative: she is an Elliott representative. Therefore, no Elliott-appointed representative, including Ms. Berger, can serve on the Fee Committee.

14. *First*, both the notion of a creditor-appointed representative—as opposed to an official committee appointed representative—and the assertion that a creditor or official committee representative take "direction" from any constituency are fundamentally flawed. By its own admission, Elliott itself was not a material creditor until one year ago. It cannot be that the Committee representative must take direction from or report to a revolving door of creditors.

8

RLF1 18715124v.1

But, even if the creditor body makeup was etched in stone, that would make no difference to the question of how the Fee Committee is supposed to function.

15. More fundamentally, even the Committee representative on the Fee Committee does not report to, or take direction from, either official committee.[8] The role of the Committee-representative (which, pursuant to the terms of the Fee Committee Order, is a TCEH Official Committee representative and, at best, could be a representative jointly designated by the TCEH Official Committee and the EFH Committee if the Court so orders) is to represent the interests of unsecured creditors vis-à-vis the identified purpose of the Fee Committee. It is not to report on confidential negotiations or be a transmitter of proprietary data received from any one professional. The Elliott Creditors (or their proposed representative) either do not appreciate or simply seek to trample this distinction. The alternative—that the Committee representative takes direction from, or reports to, unsecured creditors—is simply untenable.

16. *Second*, it is neither appropriate nor viable for any Elliott-appointed representative to serve on the Fee Committee. Ms. Berger is unqualified. The fiduciary responsibility owed by attorneys to their clients is a fundamental bedrock of American jurisprudence. Contrary to Elliott's assertions, the purposes of the Fee Committee are not directly aligned with Elliott's interests. For exactly these reasons, it is inconceivable that Ms. Berger—or any Elliott attorney—could simultaneously act as a member of the Fee Committee and a fiduciary of his or her client's interests.

17. Even assuming the Elliott Creditors offer a different Elliott-appointed representative, such representative cannot act impartially given the relationship between such a

---

[8] *See* Motion to Appoint, ¶ 57 ("In other words, the spirit of the Committee Order would strongly counsel in favor of the unsecured creditors' control over designation of a seat reserved for that constituency. The UCC's direction in favor of the [Elliott] Creditors satisfies that mandate, which the parties and the Court should honor.").

RLF1 18715124v.1

representative and the Elliott Creditors and the ability of such a representative to adequately represent the interests of EFH and EFIH unsecured creditors in a manner keeping with the advisory function of the Fee Committee. There is simply no individual who could accomplish this task for the following reasons:

- ***No Guarantee of Confidentiality or Appropriate Treatment of Material Non-Public Information Renders Elliott Creditors Incapable of Acting as Fiduciaries.*** It is not appropriate for a representative on the Fee Committee to share confidential information obtained in connection with his or her role on the Fee Committee with individual creditors. If the Elliott Creditors improperly obtain otherwise confidential information made available to the Fee Committee through Ms. Berger or a potential alternative candidate, the Debtors have no reason to believe the Elliott Creditors will keep such non-public information confidential, discontinue trading in the Debtors' securities, or refrain from using such confidential information in other abusive ways.

    ***Unknown Compensation Structure May Violate Fee Committee Order.*** The Debtors have contacted Elliott and requested information regarding the Elliott Creditors' fee arrangement with Ms. Berger. Elliott has refused to provide this information. The existence of a fee arrangement precludes Ms. Berger or any other replacement representative from serving on the Fee Committee.[9]

- ***Skewed Economic Incentives Render Elliott Creditors Incapable of Acting as Fiduciaries.*** Although the Elliott Creditors hold claims against both the EFH Debtors and the EFIH Creditors, they are not economically neutral as to both sets of claims. The Elliott Creditors' claims against the EFIH Debtors are materially larger than their claims against the EFH Debtors.[10] As purely economic actors owing fiduciary duties only to their own investors, there is nothing in the Bankruptcy Code that prohibits the Elliott Creditors from seeking to maximize their own recovery, including by potentially sacrificing their EFH interests for the sake of their EFIH interests.[11] This

---

[9] Article E.1 of the Fee Committee Order, entitled "Compensation of Fee Committee Members," states: "No Fee Committee Member, except the Independent Member, shall receive compensation for service on the Fee Committee or time expended on Fee Committee matters." Fee Committee Order, § Art. E.1.

[10] As detailed in the Motion to Appoint, the Elliott Creditors hold 90% of the EFIH unsecured debt and only 40% of the unsecured debt at EFH, and all of their claims were purchased within the last year. As the Debtors have noted, due to the large holdings of the Elliott Creditors, their "support is critical to a smooth confirmation process." *See Amended and Superseding Motion of the E-Side Debtors for an Order (A) Authorizing Entry Into the Merger Agreement and Approving the Termination Fee and (B) Authorizing Entry Into and Performance Under the Plan Support Agreement* [D.I. 11801].

[11] For example, assuming Elliott holds the amounts of EFH/EFIH unsecured debt referenced in footnote 10, *infra*, for each dollar of fees allocated to EFH, Elliott loses approximately $0.20 in potential recovery. But, for each dollar of fees allocated to EFIH, Elliott loses $0.90 in potential recovery.

10

is particularly important given that at EFH, the Elliott Creditors only control three of the eight classes of unsecured creditors.[12]

- ***Abuse of Process to Gain a Litigation Advantage Renders Elliott Creditors Incapable of Acting as Fiduciaries.*** Finally, it is no secret that the Elliott Creditors have been adversaries in the Debtors' chapter 11 cases. There remain potential disputed issues between the Debtors and certain of their stakeholders on the one hand, and the Elliott Creditors on the other hand. In addition, the Elliott Creditors substantial contribution claim under section 503(b) of the Bankruptcy Code may be the subject of Fee Committee review. The ability of the Elliott Creditors directly, or indirectly through their "appointed" Fee Committee representative to use the implied threat of non-compensable fee and expense litigation as a sword in the Debtors' restructuring efforts—potentially to the detriment of the Debtors' other stakeholders—disqualifies an Elliott representative from serving on the Fee Committee.

18. Finally, the Elliott Creditors also hold (to the best of the Debtors' knowledge), no claims against the TCEH Debtors. The TCEH Official Committee has not dissolved with respect to issues at the very heart of the Fee Committee's fiduciary charge—those relating to fee applications. *Order Confirming the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 9421], § D.D. (stating that the TCEH Official Committee shall dissolve on the TCEH Effective Date, provided that after the TCEH Effective Date, <u>the TCEH Committee shall continue in existence with respect to "Claims and/or applications, and any relief related thereto, for compensation by professionals. . ."</u>) (emphasis added). Additionally, a number of TCEH-retained professionals have not had their final fee applications approved by final order, and if the Elliott Creditors are contemplating reopening all

---

Therefore, for each dollar of fees transferred from EFH to EFIH, Elliott stands to realize an increase in net recovery of up to approximately $0.70. The Elliott Creditors themselves made this point in the Motion to Appoint, stating that "[e]very dollar spent (or saved) by the estate at this juncture directly affects approximately 75 cents of [the Elliott Creditors]' recovery." Motion to Appoint, ¶ 1.

[12] *See First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, § Art. III(A)(1). [D.I. 11887].

RLF1 18715124v.1

prepetition and postpetition fees, the TCEH Official Committee has an undeniable interest in maintaining the current Fee Committee composition. Thus, it is hardly surprising that counsel to the TCEH Official Committee was not consulted—and indeed had no idea—that Mr. Kravitz was to be replaced by an Elliott representative with zero interest in TCEH matters.

## **CONCLUSION**

19. For the foregoing reasons, the Debtors respectfully request that the Court deny Elliott's Motion to Appoint.

*[Remainder of page intentionally left blank.]*

Dated: January 3, 2018
       Wilmington, Delaware

/s/ *signature*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
               defranceschi@rlf.com
               madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900
Email:        edward.sassower@kirkland.com
               stephen.hessler@kirkland.com
               brian.schartz@kirkland.com
               aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
               marc.kieselstein@kirkland.com
               chad.husnick@kirkland.com
               steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession