# EXHIBIT 1

BRAUNHAGEY & BORDEN LLP

Please find attached a copy of correspondence mailed earlier today.

BRAUNHAGEY & BORDEN LLP
San Francisco & New York

J. Noah Hagey
hagey@braunhagey.com

December 18, 2017

**VIA E-MAIL**

Brady C. Williamson, Esq.
Counsel to Chairman of EFH Fee Committee
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Email: Bwilliam@gklaw.com

**Re: Request to Fee Committee – *In re Energy Future Holdings Corp., et al.* , Case No. 14-10979 (CSS)**

Dear Mr. Williamson:

As you know, we serve as special counsel to a majority of unsecured EFIH and EFH creditors, including Elliott Management Corporation ("Elliot") and Paloma Partners (collectively, the "Majority Creditors"). As further detailed below, we write to respectfully request that the Fee Committee promptly advise all constituent E-Side advisors to cease attendance at proceedings for which they have no active matter or motion in issue, lest such fees and costs not be approved.

Since September, our clients have sought to work with the Committee to understand and address the expenditure of professional fees in this case. Committee representatives met with Elliott in late September and held conversations with our office in early November. On November 15, 2017, we wrote you to memorialize concerns about the quantum of professional and advisor fees and to formally request that the Committee promptly develop a recommendation for the Court to address the level of ongoing advisor expenditures. We noted that there are numerous overlapping professionals (both law firms and financial advisors) actively billing or accruing fees against the estate. While such activity from multiple sets of advisors may have been warranted at one point in this case, that no longer is true. The path to confirmation through Sempra is linear and there are no conflicts requiring involvement from these numerous advisors.

The Committee has yet to address the Majority Creditors' request or to present any recommendation to the Court or to the retained professionals. As a result, professionals continue to expend estate resources without clear direction or guidance. The recent December 11, 2017 hearing before the Court illustrates the point. The sole issue before the Court was NextEra's motion for a stay of the Court's decision regarding NextEra's break fee. The only attorneys whose in-person presence was necessary were lawyers arguing for NextEra, the debtors and Elliott. Yet, according to the sign-in sheet, at least 22 lawyers attended the hearing, with dozens

more monitoring telephonically. Many of these were national and local counsel, including senior partners from out of state who incurred travel fees, costs and hotel expenditures.

At this point in the case, attorneys with no motion pending before the Court (and/or no active role in other proceedings, such as a deposition) should *not* be expending estate resources. Accordingly, pending our clients' application to be appointed to the Committee, the Majority Creditors request that the Committee promptly advise all advisors who might seek payment from the estate of the following additional guidelines pending final plan confirmation:

1. No professional seeking reimbursement or payment by the estate shall perform services already being performed by other counsel absent a direct conflict of interest requiring separate representation under applicable bar rules. Professionals aligned within a similar "box," such as those representing the EFH Independent Director and the EFH Indenture Trustee, shall promptly meet and confer and give notice to the Committee regarding the reduction in fee spend and division of labor to monitor estate activity. Monitoring activity should be conducted by a junior member of the professional's staff, not a senior partner.

2. To the extent a client joins in a position being advanced by debtors' counsel, the professional representing that client shall file a simple statement of joinder, rather than preparing and filing a document that mirrors points made by debtors' counsel.

3. Absent a true conflict or motion pending before the Court, no professional should attend a court hearing, deposition, or other matter in-person. To the extent a professional believes it necessary to monitor proceedings on behalf of his or her client, he or she should monitor the proceedings by phone and, if possible, delegate the task to a junior colleague familiar with the case.

4. Professionals should anticipate receiving objection from the Fee Committee to any application that does not reflect counsel's compliance with these guidelines.

If you have additional suggestions about how to reduce fees and expenses, we would be happy to discuss them. We look forward to working with you on the important task of preserving estate assets – hopefully through our clients' direct membership on the Committee.

Very truly yours,

J. Noah Hagey

Cc: UCC Representative Peter Kravitz (C/o Brian Gluckstein, Sullivan & Cromwell LLP)
Acting U.S. Trustee Andrew Vara (C/o Richard Schepacarter, Department of Justice)
Debtors' Representative (Paul Keglevic)

# EXHIBIT 2

BRAUNHAGEY & BORDEN LLP
San Francisco & New York

J. Noah Hagey, Esq.
hagey@braunhagey.com

January 4, 2018

**VIA EMAIL**

Richard Gitlin
Richard Schepacarter
Paul Keglevic
C/o Edward O. Sassower, Esq.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Email: edward.sassower@kirkland.com

**Re: Fee Committee Composition**

Dear Messrs. Gitlin, Shepacarter and Keglevic:

As you know, we serve as special counsel to Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively "Elliott") and Paloma Partners Management Company and Sunrise Partners Limited Partnership (collectively "Paloma" and, together with Elliott, the "Majority Creditors") in connection with an examination of professional fees in the pending bankruptcy proceedings captioned *In Re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS). We write further to our recent discussions and the motion practice around the Majority Creditor's request to have a representative on the Fee Committee.

As we indicated in our meet and confer calls before your respective objections and responses to the motion were filed, the Majority Creditors remain willing to identify an independent trustee as their representative on the Fee Committee. One that is not employed by the Majority Creditors or BraunHagey & Borden LLP. In that regard, we would like to propose James P. Carroll to serve as the Majority Creditors' representative on the Fee Committee. As you will see from Jim's curriculum vitae (a copy of which is attached), he has extensive experience in complex restructuring matters across varied industries. For example, from January 2001 through January 2004, Jim was the President and Chief Restructuring Officer of Stone & Webster, Inc. in Boston. From January 2004 through the present, Jim has served as the Managing Member of Carroll Services, LLC where he has performed a wide range of financial, restructuring and accounting matters for a wide range of clients. Jim has also served as an independent director and fiduciary in similar matters. As we mentioned in our meet and confer calls, Jim would not be compensated by the estate, but would be compensated for his time and

work on the Fee Committee through the official committee of unsecured creditors by the Majority Creditors or by the Majority Creditors directly. This should alleviate any concern expressed in the Statement and Response of the EFH/EFIH Official Committee to the motion that the Majority Creditors' representative on the Fee Committee not be the beneficiary of any contingency fee arrangement. (D.I. 12415 at ¶ 14). We also believe Jim's appointment is consistent with the sentiment expressed in the Fee Committee's Response to the motion that any newly designated member of the Fee Committee apply "fiduciary judgement untroubled by conflicting or contradictory motives." (D.I. 12414 at 12).

We look forward to discussing this issue further.

Very truly yours,

J. Noah Hagey

Encls.

# EXHIBIT 1

**James P. Carroll**
**c/o Carroll Services LLC**
**4450 Bonita Beach Road, Suite 9**
**Bonita Springs, FL 34134**
(617) 899-9007 Mobile
jim.carroll@carrollservicesllc.com

## Carroll Services, LLC, January 2004 to Present

**Managing Member**

- Perform a wide variety of financial, accounting and restructuring/reorganization tasks for clients in numerous industry groups. Specific tasks have included budgeting, forecasting, oversight and preparation of federal and state tax filings, oversight of insurance and risk, contract negotiation, document retention, orderly wind down of employee benefit plans pursuant to ERISA guidelines, assuming the role of plan fiduciary for DB and DC employee benefit plans, claim disputes, pursuits of causes of action and litigation. Also, serve as independent director and independent fiduciary to utilize my personal skill set to guide and advise boards through challenging circumstances.
- ***Clients include:***
  - **ReEquip Solutions, Inc December 2017 – Assignee (Assignment for the Benefit of Creditors)**
  - **Eichner Norris & Neumann PLLC, May 2017 – Present (Chief Liquidation Officer)**
  - **Alliance Holdings – June – July 2017 (Independent Fiduciary)**
  - **Bostwick Laboratories, Inc 401k Plan – May 2017 – Present (Plan Trustee)**
  - **Bostwick Laboratories, Inc. March 2017 – Present (Independent Director & Chief Restructuring Officer)**
  - **Apple Gold Group – September 2016 – Present (Financial Advisor)**
  - **Scout Media Holdings, Inc. September 2016 (Independent Director)**
  - **RP Energy Services LLC September 2016 – Present (Chief Liquidation Officer)**
  - **Lee Enterprises, Lee Retiree Medical Plan, August 2016 (Independent Fiduciary)**
  - **Allianz Asset Management of America L.P. 401(k) Savings and Retirement Plan – June 2016 (Special Fiduciary)**
  - **Dickstein Shapiro LLP, February 2016 – Present (Chief Liquidation Officer)**
  - **Dickstein Shapiro LLP Profit Sharing and 401(k) Plan, February 2016 – Present (Plan Administrator)**
  - **New York State Teamsters Conference Pension and Retirement Fund October 2015 (Fiduciary Procedures Expert)**
  - **Alliance Holdings, Inc. April 2015 and March 2017 (Independent Fiduciary)**
  - **Noble Logistics Inc. March 2015 – Present (Chief Liquidation Officer)**
  - **ICC Liquidation Trust November 2012 to Present (Liquidation Trustee)**
  - **Cadence Innovation LLC 2011 to June 2017 (Liquidation Trustee)**
  - **SPhinX Funds 2010 to July 2014 (Liquidation Committee Member)**
  - **Velocity Express Corporation 2010 to November 2013 (Wind Down Professional)**
  - **Stant, Inc August 2009 to December 2009 (Chief Restructuring Officer)**
  - **Tweeter Home Entertainment April 2009 to September 2016 (Chief Liquidation Officer)**
  - **Goody's Family Clothing Stores October 2008 to Present (Plan Administrator)**
  - **Plastech Engineered Products August 2008 to Present (Liquidation Trustee)**
  - **The Estate of Jeffrey J. Prosser October 2007 to Present (Ch 7 Trustee)**
  - **Radnor Holdings Corporation March 2007 to October 2012 (Plan Administrator)**
  - **SPhinX Investment Funds, LP June 2006 to Present (Liquidator)**
  - **Freedom Rings LLC April 2006 to December 2008 (Liquidation Trustee)**
  - **Wolf Hollow I, LP, Granbury TX January 2005 to December 2005(Chief Restructuring Officer)**
  - **J.A. Jones, Inc, Charlotte, NC February 2004 to September 2008 (Plan Administrator)**
  - **Consolidated SWINC Estate, Boston, MA January 2004 to Present (Plan Administrator)**
  - **Stone & Webster Asbestos Trust, Boston MA, January 2004 to Present (Trustee)**

**James P. Carroll**

- **Reorganized SWINC, Inc. Boston ,MA January 2004 to Present (Board Chairman/Receiver)**
- **The Art Store, Milford, MA December 2004 to June 2007**
- **SHC Inc (Top Flite), Chicopee, MA July 2004 to November 2006**

**Employee Work Experience:**

## Stone & Webster Incorporated, Boston, MA (1999 to January 2004)

**President and Chief Restructuring Officer (January 2001 to January 2004)**

Responsibilities include:

- Completion or successful settlement of all contracts not assumed as part of the sale of assets and liabilities of the company at a court sponsored auction.
- Coordinate and establish strategies to settle all claims presented against the Estate as part of the bankruptcy.
- Coordination of defenses to adversarial complaints brought against the Estate and the development and coordination of legal actions brought by the Estate to recover assets.
- Work with and direct the Estate's financial advisors, FTI Consulting, in the preparation of all necessary financial disclosure required by the US Trustee including monthly operating reports and cash budgeting and forecasting.
- Coordinate the closure of 150 legal entities in connection with the Chapter 11 proceeding.
- Development of a comprehensive plan of reorganization.
- Coordinate the preparation for the termination of all the defined contribution and defined benefit plans of Stone & Webster including the Employee Retirement Plan, ESOP, and 401K plans.
- Management of plan assets in excess of $700 million.
- Responsible for the filing of all federal, state, local and international tax returns.

**Treasurer (December 2000 to January 2004)**

- Responsible for all facets of cash management for the over $100 million of cash proceeds realized from the sale of substantially all assets and liabilities of Stone & Webster, Incorporated at a court supervised auction.

**Vice President and Corporate Controller (September 1999 to January 2004)**

Responsibilities Include:

All corporate and field accounting functions (staff of approximately 150) worldwide:

- Internal and External Financial Reporting in accordance with SEC rules and regulations for this $1.2B Engineering and Construction Company.
- Budgeting and Forecasting routines and procedures.
- All General Accounting Functions (Accounts Payable, Accounts Receivable, Payroll and Billing)
- Project Accounting including direct supervision of approximately 45 field accountants and timekeepers.
- Federal Government Contract Reporting and Compliance
- Maintenance and support of Oracle Financial Systems on a worldwide basis
- Maintenance and support of Hyperion Enterprise (Financial Reporting) and Pillar (Budgeting) software packages

Lead the finance group, along with assistance from Lazard Freres & Co and PriceWaterhouseCoopers Restructuring Group, in developing and implementing a complete restructuring and reorganization program including:

- Filing for protection under Chapter 11 of the US Bankruptcy Code
- Renegotiations with existing bank group on three separate occasions for amendments to the current credit agreement.
- Developed cash forecasting routines and procedures and tightened controls over cash company-wide.
- Sale of $187M office building in downtown Boston.
- Various office closings within the US.

- Divestiture of two non-core businesses to raise working capital.
- Early Retirement Programs and strategic reductions in force.
- Led communications efforts to customers, vendors and subcontractors to address where the company was going and how it would affect relationships.
- Attended all company Board of Directors meetings and kept the Directors apprised of all developments as they arose.

Those efforts culminated in the planned sale of substantially all of the assets of the company through a 363C asset sale as overseen by the Bankruptcy court.

## Invensys Intelligent Automation, Foxboro, MA (1991 to 1999)

**Vice President, Corporate Controller (1998-1999)**
Responsibilities Include:

- Internal and External Financial Reporting in accordance with USGAAP and UKSAP for this $4.0B division of Invensys plc.
  - ❖ Supervised the monthly consolidation of over 350 operating units worldwide
  - ❖ Supervised the quarterly and semi-annual completion of statutory filings in the US and in the UK.
- Strategic Planning and Analysis function
  - ❖ Supervises the completion of the Annual Budget, Six Year Strategic Plan Review, Board of Directors Report Forecasts, and the monthly rolling forecasts included within the management accounts reports.
- Integration of New Acquisitions
- Act as the principle liaison between the Executive Vice President, CFO of Invensys Intelligent Automation and the financial staffs of newly acquired companies.
- Established initial Acquisition reserves as well as organized third party asset valuations and appraisals
- Responsible for the integration of financial accounting and reporting routines and procedures as well as financial systems conversions.
- Financial Information Systems
- Oversees the maintenance and continued development of the Hyperion Financial reporting system, on a worldwide basis.
- Supervises the upgrade and maintenance of the LAN within the Corporate Headquarters facility, including server and client sever software and hardware requirements.

**Director of Financial Systems (1997)**

**Director of Finance, (Control Valves Division, 1996-1997)**

**Manager of Strategic Pricing and Commissions (1995-1996)**

**Assistant Corporate Controller, The Foxboro Company (1992-1995)**
**(Division of Invensys Intelligent Automation)**

**Manager of Corporate Audit (SIEBE Inc 1991-1992)**
**(Division of Invensys, Plc)**

## Bull Information Systems, Billerica MA (1988 – 1990)

**Manager of Financial Controls (1990)**

**Manager of Corporate Audit (1988 – 1990)**

## Riley Stoker Corporation, Worcester MA (1986 – 1988)

**James P. Carroll**

**Manager of Construction Accounting**

## Touche Ross & Co Boston MA/Melbourne Australia (1981 – 1986)

**Audit Supervisor**

**Education:**
University of Massachusetts – Lowell, Lowell MA
BS degree in Business Administration, dual concentration in accounting and economics, graduated Magna Cum Laude, May 1981

**Achievements:**
Certified Public Accountant, Massachusetts

# EXHIBIT 3

# E-SIDE ADVISOR MAP - EFH BANKRUPTCY (Dist. Del. Bankruptcy Court)

