# EXHIBIT 3

CONFIDENTIAL


E-SERVICE
60331917
Mar 13 2017
02:57PM
File & ServeXpress

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

IN RE:  BALTIMORE CITY          *
ASBESTOS LITIGATION             *
                                *
*   *   *   *   *   *   *   *   *   *   *   *   *
                                *
DAVID A. HEINZMANN and          *
MARTHA KAYE C. HEINZMANN,       *
                                *       CT4- Other Asbestos Cases
        Plaintiffs,             *
                                *
        vs.                     *
                                *       CASE NO.
BW/IP, INC., *et. al.,*          *
                                *
        Defendants.             *
                                *
*   *   *   *   *   *   *   *   *   *   *   *   *

## PLAINTIFFS' ANSWERS TO DEFENDANTS' MASTER SET OF INTERROGATORIES

Plaintiffs, DAVID A. HEINZMANN and MARTHA KAYE C. HEINZMANN, by their undersigned attorneys, file these Answers to Defendants' Master Set of Interrogatories propounded by the Defendants, without waiving any objection as to the relevancy or admissibility of any of the information contained herein.

## INTRODUCTION

A.      The information supplied in these answers is not based solely on the knowledge of the Plaintiffs, but includes the knowledge of the Plaintiffs and their attorneys, unless privileged.  The signature of the Plaintiff at the conclusion of these answers does not necessarily mean the Plaintiff has any personal knowledge as to any particular answer which is given.

CONFIDENTIAL

B.    The word usage and sentence structure may be that of the attorney assisting in the preparation of these answers and thus does not necessarily purport to be the precise language of the Plaintiffs.

C.    By responding to these Interrogatories, Plaintiffs are not waiving any ground for objecting to the admissibility of the information.

## PART ONE - DAMAGES

1.    State the following:
   (a)    All names by which you have been known;
   (b)    Your date and place of birth;
   (c)    If deceased, date of death, place and location of death, and cause of death;
   (d)    The date and place of each marriage and the name of each spouse; and
   (e)    Social Security number.

   **Answer:**    (a)    David Arthur Heinzmann
               (b)    ███████████████
               (c)    N/A
               (d)    ████████████████████
               (e)    ███████████

2.    State the address of each place of residence that you have occupied from age 16 to date.

   **Answer:**    Upon information and belief, Plaintiff lived at the following locations.  All dates are approximate.

   - May 1999 – Present    ████████████████████
   - 1992 – 1999    ██████████████████
   - 1967 – 1992    ██████████████████
   - 1965 – 1967    ████████████████
   - 1965    ████████
   - 1958 -1964    ████████████████
   - 1957 -1958    ███
   - 1953 – 1957    ███████████████
   - 1949 - 1953    ██████████
   - 1942 – 1949    █████████
   - 1935 – 1942    ████████████████

CONFIDENTIAL

- 1935 ██████████████

3.    State the names, ages, and present address of any children, identifying of which marriage, if by different marriages.

> **Answer:**    Karen Louise Heinzmann (Daughter)
> DOB: ████████████████
> ████████████████████████
>
> Jill Marie Smith (Daughter)
> DOB: ███████████████
> ████████████████████████████

4.    Identify all persons presently dependent upon you, or concerning whom you intend to make any claim in this lawsuit as to dependency, setting forth the inclusive dates of such dependency and the nature of such dependency, i.e., dependent, meaning financial support and maintenance or otherwise.  As to each dependent, set forth whether totally or partially dependent, and extent of any partial dependency.

> **Answer:**    Martha Kaye C. Heinzmann.  Mrs. Heinzmann is financially and otherwise dependent upon Mr. Heinzmann for all of the things husbands do for wives, physically, emotionally and otherwise.

5.    Set forth completely your education, including public and private schooling, and/or specialized training for any trade or profession, stating the dates of attendance and grade or proficiency level attained.

> **Answer:**    Bachelors Degree, 1957, North Carolina State University, Raleigh, NC
> High School Graduate, 1953, Greensboro High School, Greensboro, NC

6.    Have you ever been a member of the armed forces of the United States?  If so, state the following:

    (a)    The branch of the service, serial number, and the highest rank held;
    (b)    The beginning and ending dates of your military service;
    (c)    The type of discharge that you received;
    (d)    Whether you were given a physical examination, which included x-rays, prior to the time you entered the service;
    (e)    Whether you received any injury while in the military service;

CONFIDENTIAL

(f)     Whether you sustained or incurred any illness while in the military service;

(g)     Whether you were given a physical examination which included x-rays upon leaving the service; and

(h)     Whether you claim disability for any injury or physical condition arising out of your military service, and, if so, the details thereof, including the date on which the claim was made, the nature of claim, the claimed disability, and the disability rating, if any was given you, and the compensation for such disability.

**Answer:**     No.

7.     Have you ever been convicted of any crime other than minor traffic violations?  If so, for each conviction, state fully and in detail the date, place, docket number, and crime of which convicted.

**Answer:**  Plaintiff objects to Master Interrogatory No. 7 as overbroad and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving the objection, Plaintiff will respond only to the extent of the information allowed under Maryland Rule of Evidence 5-609, and states:  No.

8.     State the periods during which you were exposed to asbestos fibers.

**Answer:**  To the best of Plaintiff's belief, Plaintiff was exposed to asbestos fibers during the time period between 1957 through the 1970s.  Plaintiffs make no claim in this case for any exposure to asbestos occurring after December 31, 1979.

9.     State the name and address of each employer for whom you have worked to date, stating as to each employer:

(a)     The beginning and ending dates of employment;

(b)     The nature of the business of the employer;

(c)     The position held; and

(d)     All occupational or incidental exposures to chemicals and/or dust, listing the types of chemical or dust involved and describing the process or dust involved.

**Answer:**
1)     (a) Colonial Stores, Inc., 1951
       (b) Grocery Store
       (c) Bagger

CONFIDENTIAL

(d) Plaintiff has no information at this time to believe that he was exposed to asbestos in any way during this employment. Investigation continues.

2)      (a) Cone Mills, 06/1952-09/1953
        (b) Textile Company
        (c) Examiner of finished textile goods
        (d) Plaintiff has no information at this time to believe that he was exposed to asbestos in any way during this employment. Investigation continues.

3)      (a) Carolina Steel Corporation, 06/1953-09/1953
        (b) Iron / Steel Company
        (c) Laborer & office employee
        (d) Plaintiff has no information at this time to believe that he was exposed to asbestos in any way during this employment. Investigation continues.

4)      (a) Lowenstein & Sons, Inc., 06/1954-09/1954
        (b) Textile Company
        (c) Clerk / Clerical
        (d) Plaintiff has no information at this time to believe that he was exposed to asbestos in any way during this employment. Investigation continues.

5)      (a) Tomlinson Co. Inc., 1954
        (b) Investigation continues.
        (c) Investigation continues.
        (d) Investigation continues.

6)      (a) County of Los Angeles, 08/1955-09/1955
        (b) County government
        (c) Laborer/ditch digger
        (d) Plaintiff has no information at this time to believe that he was exposed to asbestos in any way during this employment. Investigation continues.

7)      (a) Celanese Corp. of America, 06/1956-09/1956
        (b) Chemical Company
        (c) Assistant/Technician
        (d) Plaintiff has no information at this time to believe that he was exposed to asbestos in any way during this employment. Investigation continues.

8)      (a) Babcock & Wilcox, 1957-1965
        (b) Boiler company.

CONFIDENTIAL

(c) Boiler start-up and field engineer, sales (5-6 months)
(d) Plaintiff believes he was exposed to asbestos dust during the performance of his job duties for Babcock & Wilcox. See Answer to Interrogatory No. 88.

9)    (a) The McBurney Corp., 1965-2000
(b) Steam generation engineering, construction, installation, and maintenance.
(c) Boiler engineer, Project Manager, Sales
(d) Plaintiff believes he was exposed to asbestos dust during the performance of his job duties. See Answer to Interrogatory No. 88.

10.    State whether you have in your possession: any pieces or examples of any of the asbestos-containing products to which you allege exposure; work histories or diaries; product photos; job lists; newspaper articles regarding work sites or asbestos; or sales literature or other writings concerning the sale or use of asbestos-containing products.  If so, identify each such item.

**Answer:**    Not at this time.

11.    Set forth each time you worked in the insulation trade (or a related trade) as:

(a)    An apprentice; or
(b)    A journeyman or its equivalent.

**Answer:**    Plaintiff never worked in the insulation trade.

12.    Please identify all employers in whose employ you have come into contact with chromium, cadmium, coal, sheet-silicate, diatomaceous earth, brucite, fibrous glass, aluminum silicates, carborundum, lamp black, or fiberglass, or materials, alloys, or pigments containing those substances.  Include in your answer for each such employer:

(a)    Name and address;
(b)    Job title and work description;
(c)    Type and identity of each such substance with which you had contact;
(d)    Whether the employer provided safety equipment of a type to reduce or prevent exposure to such substances; and
(e)    Whether company-sponsored physical examinations were required or made available.

**Answer:**    Plaintiff objects to the Interrogatory on the grounds that the information sought is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  None of the substances referred to in the Interrogatory cause mesothelioma.  Without waiving these objections, Plaintiff refers Defendants to his responses to Interrogatory Nos. 9 and 88 and his Social Security printout.

CONFIDENTIAL

13.    Did any employer in whose employ you were exposed to asbestos ever sponsor, require, or make available physical examinations?  If your answer is "yes," state:

    (a)    Whether the examinations were required or optional;

    (b)    The name of the employer who required the physical examination;

    (c)    The frequency with which examinations were available;

    (d)    The frequency--including specific dates and times--with which you submitted to such examinations;

    (e)    If you failed to submit to any examination at any time, your detailed reasons for failing to submit;

    (f)    The nature and extent of the examinations;

    (g)    Whether x-rays were taken each time;

    (h)    The names and addresses of each examining physician, nurse, or technician; and

    (i)    The result of each exam.

    **Answer:**    Not that Plaintiff recalls.

14.    Apart from, or in addition to, any examinations identified in answer to interrogatory 13, did you take any annual physical examinations?  If your answer is "yes," state:

    (a)    The date of each examination;

    (b)    The name and address of each physician under whose supervision the examinations were given;

    (c)    The nature and extent of the examination;

    (d)    Whether x-rays were taken; and

    (e)    The results of each examination.

    **Answer:**    Plaintiff objects to the Interrogatory as being overly broad, ambiguous, and unduly burdensome.  Without waiving the objection, Mr. Heinzmann states that he will produce all of the medical records in his possession and will produce authorizations for Defendants to obtain medical records not in his possession.

15.    For each examination identified in answer to interrogatories 13 and 14, state:

    (a)    Whether reports of the results were made to you;

    (b)    For each report made, whether the report was written or oral;

    (c)    The precise time when each report was made to you; and

    (d)    For each written report, the location of the original and/or copy of the report.

    **Answer:**    See Answers to Interrogatories 13 and 14.

16.    Have you ever been discharged or voluntarily left a position or changed residence due to health reasons?  If so, please state in detail the times, places, and circumstances.

CONFIDENTIAL

**Answer:**       No.

17.    Has any health care professional at any time told you of any type of employment in which you should or should not engage?  If so, please identify each such person, and in addition, state the following as to each such person:

    (a)    The types of employment in which, in that person's opinion, you will and will not be able to engage;

    (b)    The factors taken into consideration in arriving at such opinion;

    (c)    The date of the opinion;

    (d)    The time and place of each consultation with such person;

    (e)    Identify each person present at each such consultation, other than yourself;

    (f)    Whether any written reports were received by you subsequent to the consultations; and

    (g)    Identify all documents relating to the opinion.

**Answer:**       No.

18.    After being informed that you were suffering from asbestosis, pulmonary disease, or any alleged asbestos-related illness, did you continue to engage in any activity or occupation in which you encountered subsequent exposure to asbestos or asbestos-containing materials?  If your answer is in the affirmative, please state:

    (a)    The nature and description of each such activity or occupation; and

    (b)    Identify your employer(s) at the time of, and subsequent to, the diagnosis of any of the ailments referred to in the interrogatory.  Please include in your answer:
        1. Your job title and description of work activities and duties; and
        2. Manner and extent of subsequent exposure to asbestos or asbestos-containing materials.

**Answer:**       No.

19.    Have you ever been hospitalized, operated upon, or confined to an institution, including any nursing home, extended care facility, etc.?  If so, please state:

    (a)    The names and addresses of all such hospitals, institutions or facilities;

    (b)    The beginning and ending dates of each such period of care;

    (c)    The nature of the illness, injury, or complaint for which you were treated;

    (d)    The names and addresses of all persons who treated or examined you; and

    (e)    The nature and extent of any permanent disabilities or residual effects from such condition for which you were treated.

CONFIDENTIAL

**Answer:** Plaintiff objects to the Interrogatory as being overly broad and unduly burdensome. For example, it would require Plaintiff to identify any hospitalization, no matter when and no matter what the reason therefor was, e.g., if Plaintiff had his tonsils taken out at age 8 or broke his arm at age 13 or even had his wisdom teeth removed as a young adult. Plaintiff will provide Defendants with an executed authorization form to obtain his medical records. Without waiving the objection, and without stating that this list is complete, the following physicians and/or medical providers have treated Mr. Heinzmann or provided medical consultations regarding his diagnosis:

- Northeast Georgia Medical Center, 743 Spring Street NE, Gainesville, GA
- Dr. Christy Wagner, 1856 Thompson Bridge Rd., #14, Gainesville, GA 30501
- Dr. Wesley D. Head, 1240 Jesse Jewel Parkway, #500, Gainesville, GA 30501
- Dr. A. Daniel Winston, Gainesville, GA
- Dr. Christina Saurel, 1240 Jesse Jewel Parkway, #500, Gainesville, GA 30501
- Dr. David Woo, 1240 Jesse Jewel Parkway, #200, Gainesville, GA 30501
- Dr. Abhishek Gaur, 200 S. Enota Drive, Gainesville, GA 30501

Mr. Heinzmann's medical care is ongoing in nature. Investigation continues.

20.     Have you ever been an outpatient of any hospital, clinic, nursing home, extended care, or other medical facility? If so, state:

    (a)     The names and addresses of all such hospitals, institutions, or facilities;

    (b)     The beginning and ending dates of each such period of care;

    (c)     The nature of the illness, injury, or complaint for which you were treated;

    (d)     The names and addresses of all persons who treated or examined you; and

    (e)     The nature and extent of any permanent disabilities or residual effects from such condition for which you were treated.

**Answer:** Please see answer to Interrogatory No. 19. Mr. Heinzmann will provide authorizations for Defendants to obtain medical records for any of his providers.

21.     With respect to each physician or medical practitioner who has treated or examined you at any time from your birth to the present, state the following:

    (a)     The name and address of each such physician or practitioner;

    (b)     The date of each treatment or examination;

    (c)     The complaint that caused you to see the particular physician or practitioner on each occasion; and

9

CONFIDENTIAL

(d)    The nature and extent of each treatment or examination.

**Answer:**    Please see Plaintiff's response to Interrogatory No. 19.  Over Mr. Heinzmann's lifetime, he has, on occasion seen other physicians for various, transient reasons.

Mr. Heinzmann has been able to identify the following past health care providers:

Dr. Wai Yun Syn, Internist, Atlanta, GA

Dr. Basil Margolis, General Practioner/Cardiology, Atlanta, GA

Dr. Adam Liederman, Internist, Atlanta, GA

Dr. Vinni Reddy, Gastroenterologist, Gainesville, GA

Dr. Pierpont Brown, III, General Surgeon, Gainesville, GA

Dr. Judd Williams, Urologist, Gainesville, GA

Dr. Margaret Kopchick, Dermatologist, Toccoa, GA

Dr. Geoffrey Weidener, Radiation Oncologist, Gainesville, GA

Dr. Leimbach, Cardiologist, Gainesville, GA

22.    For each examination or treatment identified in answer to interrogatory 21 that involves involving personal injury or illness, state:

(a)    The date, place, and circumstances surrounding each such injury or illness and the names of persons involved in any accidents which caused any injury; and

(b)    The nature and extent of each injury or illness including any ill effects or disabilities remaining at the time of answering these interrogatories.

**Answer:**  Plaintiff refers Defendants to his objections and Answers to Interrogatories Nos. 19, 20 and 21.  This Interrogatory would require Mr. Heinzmann to identify any doctor or even the school nurse who may have seen him for a common cold, an upset stomach or any other transient illness.  It is hopelessly overly broad.

23.    If you have ever been confined to bed or home as a result of any injury, illness, or emotional or psychological illness or distress, state in detail:

(a)    The dates during which you were confined to your home or bed;

(b)    The address at which such confinement took place;

(c)    Identity of those persons who have had knowledge of such confinement;

(d)    Identity of those persons who cared for you during such confinement; and

10

CONFIDENTIAL

(e)    The reason for said confinement.

**Answer:** A complete answer to this Interrogatory would require Mr. Heinzmann to state every time he was ever in bed with the flu or other transient illness.  Mr. Heinzmann is not capable of doing so.  Without waiving this objection, Mr. Heinzman refers defendants to his responses to Interrogatories 19, 20 and 21 and identifies his mesothelioma as such an illness and has provided the medical records in his possession regarding his mesothelioma.  Mr. Heinzmann will also provide Defendants an executed authorization form to obtain his medical records.

24.    State the dates, place and circumstances and results, including any interpretive or diagnostic conclusions or possibilities, of each and every x-ray or radiological examination of your body during your lifetime.  Include in your answer for each such examination:

    (a)    The identity of each prescribing physician for each examination;
    (b)    The identity of the examining physician for each examination;
    (c)    Identification of the medical institution for each examination;
    (d)    The number of x-rays taken;
    (e)    The identification of the custodian of each such x-ray;
    (f)    The specific areas of your body of which the x-ray examination was made;
    (g)    The interpretive or diagnostic results conclusions or possibilities derived from each such examination.  State the date, time, place, source, and nature of each such result, conclusion, or possibility at the time same was made known to you, or anyone related to you, or acting in your behalf; and
    (h)    Any treatment, recommendation, or prescribed therapy resulting from such examinations, including:
        1.    Purpose and objective of same;
        2.    Success or failure of same;
        3.    Date, time, and duration of each such course of treatment or therapy;
        4.    Name of medication and the prescribed dosage;
        5.    Accomplishments or degree of success of such treatment, therapy, or combination thereof; and
        6.    Whether you cooperated completely, or in part, or ignored any such treatment, recommendation, prescription, or course of treatment or therapy and the reasons for any such behavior on your part, other than complete cooperation.

**Answer:** Please see Mr. Heinzmann's response to Interrogatory No. 19, 20, 21, 22 & 23 and the medical records produced in this matter that reflect imaging studies taken in

11

CONFIDENTIAL

connection with his mesothelioma.  Mr. Heinzmann is not able to provide any additional information regarding this Interrogatory at this time.

25.     State the dates, places, and circumstances of each and every cardiological examination, or examination related to the circulatory system in any fashion, conducted upon you during your lifetime.  For each and every examination:

    (a)     Identify each prescribing physician;

    (b)     Identify each examining physician;

    (c)     Identify each medical institution in which such examination was conducted;

    (d)     Identify the custodian of any results of any such examination;

    (e)     Set forth the interpretive or diagnostic results, conclusions, or possibilities derived from each such examination.  Include in your answer the date, time, place, source, and nature of each such result, conclusion, or possibility at the time that of each result, conclusion, or possibility at the time same was made known to you, or anyone related to you, or acting in your behalf; and

    (f)     Describe any treatment, recommendation, or prescribed therapy resulting from such examination including:

        1.     Purpose or objective of same;

        2.     Success or failure of same;

        3.     Date, time, and duration of same;

        4.     Name and dosage of prescribed medications;

        5.     Accomplishments or degree of success of such treatment, therapy, or combination thereof; and

        6.     Whether you cooperated completely, or in part, or ignored any such treatment, recommendation, prescription, or course of treatment or therapy and the reasons for any such behavior on your part, other than complete cooperation.

**Answer:** Please see Mr. Heinzmann's response to Interrogatory Nos. 19-23 and the medical records produced herewith which reflect any cardiologic examinations taken in connection with his mesothelioma.  Mr. Heinzmann is not able to provide any additional information regarding this Interrogatory at this time.  Investigation continues.

26.     State the dates, places and circumstances of each and every pulmonary or respiratory system related examination conducted upon you during your lifetime.  For each examination:

    (a)     Identify each prescribing physician;

    (b)     Identify each examining physician;

    (c)     Identify each medical institution in which such examination was conducted;

CONFIDENTIAL

(d)     Identify the custodian of any results of any such examination;

(e)     Set forth the interpretive or diagnostic results, conclusions, or possibilities derived from each such examination.  Include in your answer the date, time, place, source, and nature of each such result, conclusion, or possibility, at the time that the same was made known to you, or anyone related to you, or acting in your behalf; and

(f)     Describe any treatment, recommendation, or prescribed therapy resulting from such examination including:

1.     Purpose or objective of same;

2.     Success or failure of same;

3.     Date, time, and duration of same;

4.     Name and dosage of prescribed medications;

5.     Accomplishments or degree of success of such treatment, therapy, or combination thereof; and

6.     Whether you cooperated completely, or in part, or ignored any such treatment, recommendation, prescription, or course of treatment or therapy, and the reasons for any such behavior on your part, other than complete cooperation.

**Answer:**  Please see Plaintiff's response to Interrogatory Nos. 19-23 and the medical records produced herewith.  Plaintiff is not able to provide any additional information regarding this Interrogatory at this time.  Investigation continues.  Plaintiff will execute properly completed authorizations submitted by Defendants in order that each Defendant may obtain for itself Mr. Heinzmann's medical records.

27.     In addition to any medical records identified above, do you have knowledge, or possession, of any medical reports from persons, hospitals, doctors, or medical practitioners or institutions that have ever treated or examined you at any time?  If so,

(a)     Identify same; and

(b)     Identify by name and address the custodian of any documents not in your possession.

**Answer:**     Subject to Plaintiffs' objections to the overbreadth of the preceding interrogatories (Nos. 19-23) asking for identification of every medical condition – no matter how slight – and every health care provider, no matter how transient, Plaintiffs state: No.

CONFIDENTIAL

28.    Identify by name and address each and every physician or medical facility who you consulted for any, a combination of, or all the following complaints, together with the date of each such consultation:

    (a)      Shortness of breath;
    (b)      Crackling noises in the lungs;
    (c)      Coughing;
    (d)      Clubbing of the fingers;
    (e)      Discoloration of the skin;
    (f)      Bronchitis;
    (g)      Chest pain;
    (h)      Abdominal swelling;
    (i)      Weight loss;
    (j)      Respiratory discomfort or pain; or
    (k)      Dizziness.

**Answer:** Please see Plaintiff's response to Interrogatory Nos. 19 & 23 and the medical records produced herewith.  Plaintiff is not able to provide any additional information at this time.

29.    With regard to any symptoms which you now contend are related to your asbestos exposure,

(a) State the date, with as much specificity as possible, that you first noticed the symptoms;

(b) State the date, with as much specificity as possible, that you first sought medical treatment for such symptoms;

(c) State the date, with as much specificity as possible, that you first considered that the symptoms were caused by dust in the place of employment;

(d) Identify by name and address the physician and/or medical practitioner or facility which furnished treatment for such symptoms; and

(e) Describe the treatment received from each physician, medical practitioner and facility.

**Answer:** Beginning in May 2016, Plaintiff began experiencing shortness of breath, cough, fatigue, loss of appetite, and chest discomfort.  Plaintiff first sought medical care and treatment for these symptoms in June 2016.  Plaintiff first considered that his symptoms were caused by asbestos dust after his physicians diagnosed his mesothelioma in July 2016.

CONFIDENTIAL

Please see Plaintiff's response to Interrogatory Nos. 19 & 23 and the medical records produced herewith. Plaintiff is not able to provide any additional information at this time.

30.  As a result of any illnesses or condition you allegedly sustained as a result of any exposure to asbestos or asbestos containing products, please state whether or not any prognosis of your medical condition has been made or whether any diagnosis of your medical condition has been made. If your answer is in the affirmative, please state:

(a) Each and every prognosis and diagnosis made;
(b) The date of each such prognosis or diagnosis; and
(c) Identify each person making such prognosis or diagnosis.

**Answer:** Mr. Heinzmann was diagnosed with malignant mesothelioma. Mr. Heinzmann was diagnosed with Stage 4 malignant mesothelioma and his family have been advised that there is no cure for mesothelioma but that various treatments may be able to extend his life.

31.  Have you ever, at any time, made a claim for, or received, any health or accident insurance benefits, Workmen's Compensation payments, disability benefits, pensions, accident compensation payments, or veterans, disability compensation awards. If so, state for each:

(a)  The circumstances under which you received the benefits, awards, or payments;
(b)  The illness, injury, or injuries for which you received the benefits, awards, or payments;
(c)  The names and addresses of your employers at the time of each injury or illness for which such an award was received or claimed;
(d)  The names and addresses of the examining doctors for each injury or illness;
(e)  The names of the superiors, officers, boards, or tribunals before which, or to whom, the claim or claims were made or filed, and the dates made or filed;
(f)  The amount of the benefits, awards, or payments;
(g)  The dates covering the times during which you received the benefits, awards or payments; and
(h)  The agencies or insurance companies from whom you received the awards, benefits, or payments.

**Answer:**  Plaintiff states not to the best of his recollection.

32.  Have you ever made claims for damages for any personal injury? If so, state:

(a)  The persons against whom said claim was made;

15

CONFIDENTIAL

(b)    The basis of such claim;

(c)    The nature and extent of the injuries claimed; and

(d)    The present status of such claim; and if concluded, the final result, including the amount of any settlement.

**Answer:**  To the best of Mr. Heinzmann's recollection, no.

33.    Have you filed a suit or action for damages for any personal injury?  If so, state:

(a)    The names and addresses of all plaintiffs, defendants, other parties, and their attorneys;

(b)    The Court and place where each suit was filed and the date of filing;

(c)    The nature and extent of the injuries claimed and;

(d)    The present status of each suit, and, if concluded, the final result, including the amount of any settlement or judgment.

**Answer:**  To the best of Mr. Heinzmann's recollection, none other than this lawsuit.

34.    Have you ever been a party to any other litigation?  If so, describe:

(a)    The nature of the suit; and

(b)    The date, Court and place where the suit was filed.

**Answer:**    Plaintiff objects that Interrogatory No. 34 is overly broad as it is not limited to any type of litigation.  Without waiving this objection, Plaintiff states: Not to the best of Plaintiff's knowledge.

35.    Have you ever filed for bankruptcy (state or federal).  If the answer is yes, state all of the particulars, including the date filed, court in which filed, case number, and disposition.

**Answer:** No.

36.    Have you ever submitted a claim in any bankruptcy or reorganization proceeding or have you given anyone authorization to file such a claim or to include you as a member of any class or group of persons making such claims?  If the answer is yes, state the date of filing or authorization, person or entity against whom claim is/was being made, the disease(s) asserted in the claim, the court in which claim was made, case number, and name and address of counsel representing your interest.

CONFIDENTIAL

**Answer:**  Plaintiff objects to Interrogatory No. 36 on the grounds that it is overly broad, not reasonably calculated to lead to the discovery of admissible evidence, seeks confidential settlement communications information and improperly demands production of documents. Plaintiff further objects on the ground that the request reflects a misconception of the claim process in various bankruptcy trusts.  Without waiving these objections, Plaintiff states that in the event that he or his attorneys file a claim in any bankruptcy proceeding regarding his mesothelioma, he will produce to the Defendants the claim form and any supporting documentation provided by the Plaintiff to any such Bankruptcy trust but that Plaintiff will NOT provide copies of any settlement documents prior to the time required under Maryland law.

37.    Has any member of your family or other person with whom you have lived or resided ever used, or worked for, or been associated with any person, enterprise, or association who used in any manner any products containing asbestos or materials containing asbestos?  If so, please state:

    (a)    The name and address of each person;
    (b)    Your relationship to each person and the inclusive dates during which he or she lived or resided with you;
    (c)    The nature of each person's use or work with materials or products containing asbestos; and
    (d)    The name and address of employers or associates.

**Answer:**  Not to the best of Plaintiff's knowledge.

38.    State whether or not each of your parents, siblings, and children, including half brothers, half sisters, adopted siblings, stepparents, and adopted children, suffer from any respiratory impairment, illness or condition or suffer from any form of cancer.  If so, identify each such person, specifying:

    (a)    The nature of that respiratory impairment (e.g., bronchitis) or the nature and site of that cancer;
    (b)    Whether that respiratory impairment or cancer is alleged to be occupationally related;
    (c)    When that respiratory impairment or cancer first developed and/or was diagnosed;
    (d)    Whether that respiratory impairment or cancer is totally or partially disabling; and
    (e)    Whether that respiratory impairment or cancer is or has been treated by any physician, and if so, the name and address of all treating and/or diagnosing physicians.

17

CONFIDENTIAL

**Answer:** Plaintiff is unaware of the full medical histories of his parents, siblings and children. Further to the extent that he had information regarding their personal health information, he would object to providing it in this publicly available document based upon privacy concerns. Without waiving this objection, Plaintiff states that, to the best of his knowledge, information and belief, none of his family members have contracted any asbestos-related health condition.

39.    Have any of the persons listed in response to Interrogatory 38 ever instituted any legal proceedings against any person based upon any claim to cancer or respiratory impairment? If your answer is in the affirmative, identify each such person, specifying:

   (a)    The tribunal in which any such suit or claim was filed and/or prosecuted;
   (b)    The date any such suit or claim was filed; and
   (c)    The name of all attorneys representing each such person with respect to any such suit or claim.

   **Answer:**  See Objection and Answer to Interrogatory 38.

40.    Have you had, or do you now have, any health, accident, life, or hospitalization insurance policies (individual or group)? If so, state the name, type of insurance, the address of the insurance company, the dates of commencement and expiration of coverage, policy limits, and policy number.

   **Answer:**  Mr. Heinzmann has medical coverage through Medicare and a Medicare supplemental plan with Blue Cross Blue Shield of Georgia effective since his retirement in 2000.

41.    State the policies, whether or not identified in answer to interrogatory 40, that indemnify you against the type of risk or claim upon which your complaint in this lawsuit is based. For each such policy not identified in answer to interrogatory 40 identify the same and state in detail:

   (a)    The name and address of each insurance carrier and number of each insurance policy;
   (b)    The amount of the insurance coverage;
   (c)    The date of effective period of each policy;
   (d)    The name and address of the person or entity having possession of each insurance policy;
   (e)    Whether you are the named insured in each of the insurance policies;
   (f)    The nature and extent of the coverage under the policy or all provisions of such policy or policies;

CONFIDENTIAL

     (g)     Whether you have made any claim under any such policy, and if so, the result thereof; and

     (h)     Whether you intend to make any such claim under any such policy.

**Answer:** See Plaintiff's Answer to Master Interrogatory No. 40, above.

42.     Have you ever been refused insurance coverage for health, life, disability, or accident (excluding auto liability) whether by way of denial of initial application, refusal to renew an existing policy, or cancellation of an existing policy?  If your answer is in the affirmative, state the nature and date of the action taken by the insurer, the name and full address of the insurer, and the reason given for such action, if any.

**Answer:** Not to the best of Plaintiff's recollection.

43.     State whether or not you claim any permanent, total, or partial disability to date, or to date of death, as the case may be.  If so, set forth the details thereof.

**Answer:**  Yes.  Mr. Heinzmann's asbestos-cancer has disabled him.  Mr. Heinzmann will claim losses for his injuries and their disabling effects.  Because his care is just beginning, Mr. Heinzmann cannot "set forth the details thereof" at this time.

44.     State whether or not you claim any diminution in earning power.  If so, set forth the details thereof.

**Answer:**  Not at this time.

45.     State in detail the time that you claim you missed from work as a result of the conditions complained of herein.

**Answer:**  N/A.

46.     With respect to any and all special damages being claimed, set forth:
     (a)     The hospital bills with dates and amounts thereof;
     (b)     Medical bills with dates and amounts and name of persons rendering the same;
     (c)     Nursing bills with dates and amounts and identity of persons rendering the same;
     (d)     Loss of earnings, with identity of employers;

CONFIDENTIAL

(e)     Any other special damages, specifying the type, amount, and nature of same. This is to include any and all damages being claimed in this action, including any funeral expense where wrongful death is claimed; and

(f)     Identify all documents related to your answer to this interrogatory.

**Answer:** Plaintiff will claim all of the medical expenses that he has incurred and will incur as a result of his mesothelioma as special damages, and all incidental costs incurred in connection with securing his medical care.  Plaintiff will provide the Defendants with an itemized list of his medical bills when the bills have been obtained and tabulated. Additionally, Plaintiff will produce bills in his possession and will provide authorizations for Defendants to get the bills on their own as well.

47.     State your average weekly or monthly earnings at the time of your last full time employment.

**Answer:**  Plaintiff does not recall at this time but has produced his social security printout and has no reason to dispute the figures on it at this time.

48.     State fully and in detail, your annual earnings for the past ten years, setting forth the names of employers and amount, if different employers were involved during this period of time.

(a)     Identify all W-2 forms and income tax returns filed by you or on your behalf during the past ten years to the present date; and

(b)     For each year, give itemized sources of income, gross income, adjustments to gross income, and net taxable income

**Answer:** Plaintiff is unable to provide this information in detail at this time. Additionally, as Plaintiff has stated (See Interrogatory No. 49 – reflecting retirement) he was not working at the time he became ill, Plaintiff objects that this information is not relevant nor reasonably calculated to lead to the discovery of admissible information. Nevertheless, Plaintiff will provide his Social Security Printout.

49.     Are you retired?  If so, state:

(a)     Your date of retirement;

(b)     Your reason for retirement and

(c)     The type of retirement.

**Answer**:     Yes.
(a) 2000
(b) To enjoy life
(c) Full

CONFIDENTIAL

50.     Do you smoke or use, or have you ever smoked or used, cigarettes, cigars, pipes, or any other tobacco products?

>       **Answer:** Plaintiff objects to this interrogatory on the basis that cigarettes, cigars, pipe smoking and other tobacco products do not cause or contribute to the development of mesothelioma.

51.     If your answer to the preceding interrogatory is in the affirmative, state in detail:
    (a)     The type of tobacco products that you smoke or have smoked, i.e., cigarettes, cigars, pipes, etc., stating whether you inhale or inhaled the smoke or not;
    (b)     The daily frequency that you smoke or have smoked the same, e.g., two packages of cigarettes daily, two pipes full of tobacco daily, three cigars a day, etc;
    (c)     The inclusive dates during which you have smoked;
    (d)     For any time(s) when you ceased smoking tobacco products, your reasons for stopping;
    (e)     For any time(s) when you commenced smoking tobacco products after having stopped smoking, your reasons for resuming;
    (f)     If you smoke or have smoked cigarettes, please state the average number of packs per day so consumed in each of the years that you have smoked; and
    (g)     Whether you were ever advised by any physician to stop smoking, and, if so, the date, name, and address of each physician who gave you any such advice and whether you followed the advice.  If so, for what time did you follow said advice?

>       **Answer:** Plaintiff objects to this interrogatory on the basis that cigarettes, cigars, pipe smoking and other tobacco products do not cause or contribute to the development of mesothelioma.

52.     Are you aware of the United States Surgeon General's warning(s) placed on all cigarette packages and advertisements?  If so, when did you become so aware?

>       **Answer:** Plaintiff incorporates the objections and responses to Interrogatories Nos. 50 and 51.

53.     Have you ever read the warnings(s) referred to in the preceding interrogatory?

>       **Answer:** Plaintiff incorporates the objections and responses to Interrogatories Nos. 50 - 52.

21

CONFIDENTIAL

54.    Have you ever smoked cigarettes subsequent to being aware of or reading the warning(s) referred to in the above interrogatory?

**Answer:** Plaintiff incorporates the objections and responses to Interrogatories Nos. 50 – 53.

55.    Have you ever smoked tobacco products other than cigarettes subsequent to being aware of or reading the warning(s) referred to in the above interrogatory?

**Answer:**  Plaintiff incorporates the objections and responses to Interrogatories Nos. 50 - 54.

56.    Were you a member of any labor union at any time from 1940 to the present time?  If so, state for each such union membership:
    (a)    Identity of such union;
    (b)    Dates during which you maintained membership in such union; and
    (c)    All offices you have held, or committees on which you have served, in both your local and international union, including dates and places of service.

**Answer:**  No.

57.    Whether you were a member of the International Association of Heat and Frost Insulators and Asbestos Workers or not, did you receive the publication known as "The Asbestos Worker"? State in detail:
    (a)    Manner of receipt, i.e., subscription, provided by union or employer, purchase, etc.;
    (b)    Frequency of receipt, i.e., regularly, occasionally, etc.;
    (c)    Identity of each and every person or entity that provided this publication to you;
    (d)    Pertinent inclusive dates during which you received any issue of said publication;
    (e)    Publication date, issue, and volume number of each issue of said publication received by you in any fashion; and
    (f)    Whether you read such publication.

**Answer:**  No.

58.    If you were a member of a labor union, other than the International Association of Heat and Frost Insulators and Asbestos Workers, did you receive any newspapers, newsletters, or other publications from such union?

22

CONFIDENTIAL

**Answer:** No.

59.    If your answer to the preceding interrogatory is in the affirmative, state:

    (a)    Manner of receipt, i.e., subscription, provided by union or employer, purchase, etc.;

    (b)    Frequency of receipt, i.e., regularly, occasionally, etc.;

    (c)    Identity of each and every person or entity which provided this publication to you;

    (d)    Pertinent inclusive dates during which you received any issue of said publication;

    (e)    Publication date, issue, and volume number of each issue of said publication received by you in any fashion; and

    (f)    Whether you read such publication.

**Answer:** N/A

60.    Have you ever been informed by any person in an official capacity in your local or international union of any possible hazards associated with exposure to asbestos products?

**Answer:** N/A

61.    If your answer to the preceding interrogatory is in the affirmative, state:

    (a)    The identity and official capacity of the individual or individuals who furnished you with such information;

    (b)    The date and place such information was furnished;

    (c)    The manner in which such information was communicated;

    (d)    The nature of such information furnished; an

    (e)    What action, if any, you took in response to such information.

**Answer:** N/A

62.    Have you ever completed, in whole or in part, a questionnaire provided to you by any labor union, relating to the subjects of occupational health and exposure to asbestos?  If your answer is in the affirmative, please state as to each questionnaire:

    (a)    The date you received such questionnaire;

    (b)    The date you completed such questionnaire;

    (c)    The name of the union providing such questionnaire;

CONFIDENTIAL

(d)     The name and address of the individual, union, or entity to whom the questionnaire was returnable;

(e)     Whether or not you possess a copy of the questionnaire as completed by you; and

(f)     The name and address of each individual, union, or entity possessing a copy of your completed questionnaire.

**Answer:**  N/A

63.     Have you ever been requested by a labor union to complete a questionnaire related to the subjects of occupational health and exposure to asbestos and failed to do so?  If your answer is in the affirmative, as to each such request, state:

(a)     The date you were requested to complete such questionnaire; and

(b)     The name of the labor union making such request.

**Answer:**  N/A

64.     Have you ever attended any international or local union meetings, seminars, conferences, or conventions where the subjects of occupational health and exposure to asbestos were discussed?  If your answer is in the affirmative, please state:

(a)     The date and place of such meeting, seminar, conference or convention;

(b)     The name and address of the speaker or discussion; and

(c)     A summary of such speech, presentation, or discussion.

**Answer:**  N/A

65.     Did you at any time receive, have knowledge of, or possess any publication, warning, order, directive, requirement, or advice, recommendation, written or oral, which purported:

(a)     To advise or warn you of the possible harmful effects of exposure to or inhalation of asbestos-containing products; or

(b)     To advise or recommend the techniques, methods, or equipment which would serve to reduce or guard against such potentially harmful exposure.

**Answer:**  Not to the best of Plaintiff's recollection.  At some point in approximately the early 1980s Plaintiff gained some general awareness that asbestos could be harmful if breathed; however, Plaintiff has no specific recollection of how he became so aware. Plaintiff has no reason to believe he was exposed to airborne asbestos dust after becoming so aware.

CONFIDENTIAL

66.    If your answer to any part of the preceding interrogatory is in the affirmative, please state:

    (a)    The nature and exact wording of such advice, warning or recommendation, or if not the exact wording, the substance thereof;

    (b)    The complete identity of each source of such advice, warning, recommendation, etc.

    (c)    The date, time, place, manner, and circumstances when each such advice, warning, recommendation, etc., was given;

    (d)    The identity of each and every witness to plaintiff's receipt of such advice, warning, recommendation, etc.; and

    (e)    The identity and job title of each and every co-worker or similar member of your trade and occupation who also received to your knowledge the same or similar advice, warning, recommendation, etc.

**Answer:**  Plaintiff has no additional information to add to his response to Interrogatory No. 65.

67.    State which magazines and/or newspapers you and/or your spouse have subscribed to and/or which you and/or your spouse regularly purchased over-the-counter for the past twenty years.

    **Answer:**    Newspapers:  Atlanta Journal-Constitution
                    Magazines:     AARP (Mr. Heinzmann)
                    Cooking and Computer magazines, Vanity Fair (Mrs. Heinzmann)
                    ACBL Bridge Magazine (both)

68.    State whether you ever saw or received any documents or publications, including newspapers, trade journals, and magazine articles concerning the alleged relation between the handling of asbestos and/or asbestos products and asbestosis, mesothelioma, bronchogenic cancer, lung cancer, gastrointestinal cancer, or other alleged asbestos-related diseases.  If your answer is in the affirmative, for each document:

    (a)    Identify each such document;

    (b)    Identify each person or firm from whom you received it;

    (c)    State its date and the date when seen and/or received;

    (d)    Identify each person, if any, with whom you discussed the subject; and

    (e)    State by whom the document was published.

CONFIDENTIAL

**Answer:**  Not to the best of Plaintiff's recollection.  See also, Plaintiff's answer to Interrogatory No. 65.

69.    State whether you ever received orally, by telephone, by television, and/or by radio, any information concerning the alleged relation between the exposure to asbestos and/or asbestos products and asbestosis, mesothelioma, bronchogenic cancer, lung cancer, gastrointestinal cancer, or any other alleged asbestos related diseases.  If your answer is in the affirmative, state for each communication:

(a)    The date;

(b)    By what person or medium the communication was made, together with the identification of such; and

(c)    The name and address of each person with whom, if any, you discussed the subject.

**Answer:** To the best of Plaintiff's recollection, prior to his diagnosis of mesothelioma, Mr. Heinzmann had only a general understanding of the dangers of asbestos.  Mr. Heinzmann cannot identify any specific source of this understanding other than that in the approximately the late 1980s or early 1990s, after a washing machine overflowed in the Heinzmann's basement, the insurance company advised them that the glue holding down the asphalt floor tile in the laundry room had asbestos in it.  The company hired contractors to remove the tile and glue, who set up barriers and, to the best of the Heinzmann's knowledge, the work was done correctly.  See also, Plaintiff's answer to Interrogatory No. 65.

70.    Describe when and under what circumstances you first heard of any worker who was exposed to asbestos or asbestos containing products filing a claim for Workmen's Compensation benefits or lawsuit against manufacturers of asbestos containing products.

**Answer:**  Plaintiff states that he does not have any recollection of ever receiving such information.

71.    On what date did you first become aware that asbestosis was a compensable occupational disease under a State Workmen's Compensation Act or a Federal Compensation Act and state the specific Act that you became aware of?

**Answer:** Mr. Heinzmann has no recollection of knowing this information.

CONFIDENTIAL

72.    Have you ever discussed this lawsuit, or the injuries you allege you sustained as a result of exposure to asbestos containing materials, with any official of your local or international union?  If your answer is in the affirmative please state:

      (a)    The name, address, and official capacity of the individual or individuals with whom you had such discussions or other communications;

      (b)    The date, place, and circumstances under which such discussions or communications took place; and

      (c)    The substance of the discussion or communication.

      **Answer:**  N/A

73.    State the date when you first began to consider whether you should consult an attorney concerning your alleged illness that is the subject of this case (if you do not recall the exact date, please provide your best estimate).

      **Answer:**  Objection.  This interrogatory seeks information protected from disclosure by the attorney-client privilege and is not reasonably calculated to lead to admissible evidence.  Plaintiff objects to Interrogatories 73-76 on the ground that they appear to be targeted at individuals who may have participated in "screening" programs such as those conducted at various union halls or other similar places at various times in the past.  While Plaintiff disputes that these Interrogatories would be reasonably calculated to lead to the discovery of admissible evidence even in a "screening" case, there can be no dispute that they have no applicability in a case of a confirmed malignant mesothelioma diagnosis.  Without waiving this objection, Mr. Heinzmann states that it was not until after he was diagnosed with mesothelioma.

74.    Describe all the steps you took, and the actual or approximate dates for each step, to find an attorney with whom to consult concerning your alleged illness that is the subject of this case.

      **Answer:**  Objection.  This interrogatory seeks information protected from disclosure by the attorney-client privilege.  Additionally, Plaintiff objects to this interrogatory because it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.

75.    Identify by name and address the first attorney with whom you consulted concerning your alleged illness that is the subject of this case.

CONFIDENTIAL

**Answer:** Objection. This interrogatory seeks information protected from disclosure by the attorney-client privilege. Additionally, Plaintiff objects to this interrogatory because it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.

76. For each attorney identified in answer to Interrogatory 74, state:

   (a)   How you learned of the attorney's identity;

   (b)   When you learned of the attorney's identity;

   (c)   The date you first contacted that attorney or the office of that attorney for the purpose of setting up an appointment to discuss your alleged illness that is the subject of this case;

   (d)   The date of your first communication from that attorney, whether it be by means of telephone, mail, or personal meeting, and state the means by which the communication took place; and

   (e)   The date of your first personal meeting with the attorney.

**Answer:** Objection. This interrogatory seeks information protected from disclosure by the attorney-client privilege. Additionally, Plaintiff objects to this interrogatory because it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.

77. State the name and address of each person whom you expect to call as an expert witness at trial as to any contention whether medical, cause and effect, activity of the defendant, or any other matter for which you intend to have expert testimony. With respect to each such expert, state the following:

   (a)   Describe the expert's educational background;

   (b)   Describe the expert's employment and other professional history; and

   (c)   Identify all asbestos-related cases in which the expert has testified as an expert witness, including title and number of the case, court in which the case was pending, and the party for whom the expert testified.

**Answer:** Plaintiff has not yet determined whom he will call as an expert witness at trial. Plaintiff will identify his expert witnesses in accordance with the requirements of the Maryland Rules and the Pretrial Scheduling Order entered in this case.

CONFIDENTIAL

78.    State separately as to each expert the subject matter on which the said expert is expected to testify, state the substance of the facts and opinions to which the expert is expected to testify, and set forth a summary of the grounds of each such opinion.  Supplement this answer as you ascertain any additional expert witnesses.

**Answer:** See answer to Interrogatory No. 77.

79.    For each expert whom you expect to call as a witness at trial, identify by case name, date, court, and docket number any deposition and/or trial testimony given by each expert, and identify the custodian, and location, of such transcripts.

**Answer:** Plaintiff cannot answer Interrogatory No. 79 because he has not selected what experts he may call at trial.

80.    State whether any expert whom you expect to call as a witness at trial has performed any examination, test, modeling, or other analysis of any product at issue in this action.  If so:

    (a)    Identify the product involved by trade name, and brand name;
    (b)    Identify the defendant whom you claim sold the product; and
    (c)    With respect to such examination, test, modeling or other analysis:
        1.    Identify the expert who performed it;
        2.    State the date it was performed;
        3.    State its purpose;
        4.    State its nature;
        5.    State the results;
        6.    State the expert's conclusions based on it;
        7.    State whether any notes of the examination, test, modeling, or other analysis were made; and
        8.    State whether the expert has issued a report which mentions or is based upon, in whole or in part, any such examination, test, modeling, or other analysis.  If so, please attach a copy of the report to your answers to these interrogatories.

**Answer:** Plaintiff cannot answer Interrogatory No. 80 because he has not selected what experts he may call at trial.

81.    State whether any expert whom you expect to call as a witness at trial has ever inspected, visited, or otherwise viewed the plaintiff's work place.  If so:

CONFIDENTIAL

(a)     Identify the expert;

(b)     Identify each site inspected, visited, or otherwise viewed;

(c)     State the date of each such inspection, visit, or viewing;

(d)     State whether any notes were made by the expert with respect to such inspection, visit, or viewing;

(e)     State the opinions of the expert based in whole or in part upon the inspection, visit, or view; and

(f)     State whether the expert issued any report concerning the inspection, visit, or view.  If so, please attach a copy to your answers to these interrogatories.

**Answer:**     Plaintiff cannot answer Interrogatory No. 81 because he has not selected what experts he may call at trial.

82.    For each person whom you expect to call as a non-expert witness on your behalf at trial who previously has testified in a trial or deposition in a Court or administrative proceeding involving asbestos-related injury, identify each such person, identify by case name, date, Court or administrative agency, and docket number, each such proceeding, and identify the custodian and location of each transcript of that persons testimony in such proceeding.

**Answer:** Plaintiff objects to this Interrogatory on the grounds that it seeks work product and information regarding the Plaintiff's trial strategy.  Plaintiff will provide information about the fact witnesses he intends to call as required by the <u>Maryland Rules</u> and the Pretrial Scheduling Order entered in this case.  Without waiving these objections, Plaintiff states that numerous individuals have been deposed in the Baltimore Asbestos Litigation historically about work at the CP Crane power plant and the work that occurred there.

83.    Identify any statement that was reduced to writing concerning the facts of this lawsuit or events concerning the same, and the damages claimed, to any person, including but not limited to, any police or law officer, insurance company representative, investigator, state or federal agent, or employee of any kind, or anyone else, and state the name and address of each and every such person or organization to whom these statements or reports were made, the dates made, and the purpose for which they were made.

**Answer:** Not applicable at this time regarding Mr. Heinzmann specifically.  Individuals in other cases may have provided testimony regarding or relating to the facts of this lawsuit generally that have been reduced to writing.

30

CONFIDENTIAL

84.    Have any investigative reports or other reports been prepared, compiled, submitted, or made by you, or on your behalf, or utilized by you in any way in this action?  If so, as to each such report state in detail:

    (a)    The identification of the documents;

    (b)    The identification of the person to whom addressed or directed;

    (c)    The purpose of such preparation; and

    (d)    The identification of the person having present custody or control.

**Answer:**  Plaintiff objects to Interrogatory No. 84 on the ground that it seeks information that may be protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  Without waiving this objection, Plaintiff states that such reports may be prepared by experts retained by the Plaintiff or by the agents of Plaintiff's counsel in connection with counsel's representation of Plaintiff.  To the extent that such reports are prepared, they will be produced in accordance with any requirements imposed by the Maryland Rules and the Pretrial Scheduling Order entered in this case.

85.    Have you settled with any person or party any claim or part of a claim being asserted in this case for which money or other benefit was received?  If so, state the name of the person with whom you have settled, the date settlement was reached, the disease(s) released, and the type of release (e.g., "Jones", "Swigert" or "pro-tanto") given by you.

**Answer:** Plaintiff objects to Interrogatory No. 85 on grounds that it is overly broad and not reasonably calculated to lead to discovery of admissible evidence. Plaintiff will provide, prior to trial, a list of Defendants with whom Plaintiff has reached settlements and will identify the type of release, i.e., *pro tanto*, Swigert, etc., given to each such Defendant.

86.    Identify any documents related to your answer to Interrogatory No. 85.

**Answer:**  See answer to Interrogatory No. 85.

87.    State whether any person, other than the named plaintiffs, claims or is entitled to claim any subrogation interest in any judgment or settlement that results from this action.  For each such person, state the following:

    (a)    The full name, address, principal place of business, and state of incorporation of such person

    (b)    The extent and amount of the claimed subrogation interest; and

    (c)    Identify all documents granting or describing the subrogation interest.

31

CONFIDENTIAL

**Answer:** To the best of Plaintiff's knowledge, none as of the present date.  Plaintiff's health insurer may be entitled to a subrogation claim.

## PART TWO - LIABILITY

88.    If you have been exposed, or are being exposed, to any asbestos-containing product(s) in your work environment, state:

(a)    The employer's name and address;

(b)    Your job title and work description, including an exact description of job duties and responsibilities;

(c)    The duration of the job (month/day/year through month/day/year);

(d)    The duration of your exposure to asbestos on that job (month/day/year through month/day/year);

(e)    The location of the job;

(f)    The identity of your foreman or supervisor;

(g)    The identity of workers who you remember or your decedent remembered;

(h)    The identity of workers who recall the identity of asbestos-containing products and recall you or your decedent being exposed to those products;

(i)    The identity of workers who have a recollection of the identity of asbestos-containing products to which you claim exposure at the site;

(j)    A description of the types of asbestos-containing products to which you claim exposure (i.e., pipe covering, block, cement, cloth, etc.);

(k)    The identity of the supplier or distributor of each type of asbestos-containing product;

(l)    The identity of the manufacturer(s) of each type of asbestos-containing product;

(m)    The trade or brand names of each type of asbestos containing products;

(n)    The name of any contractors using asbestos-containing products at the site, stating the types of products they were using, names and manufacturers of the products, and the identity of persons working for any such contractors at the site.

**Answer:**

**Ongoing Investigation**

Please note that the following lists of jobsites and brands of materials and machinery is NOT complete.  Plaintiff continues to investigate and recall brands of machinery and products that he worked with and around during his decades in the boiler trade.  Plaintiff continues to attempt to narrow down the time frame of the various visits to various jobsites.  Should additional information become available in the future regarding these

CONFIDENTIAL

topics, Plaintiff will produce that information, whether in supplement to this set of Interrogatories, through document productions or responses to other discovery requests.

NOTE ALL DATES ARE APPROXIMATE and based upon Plaintiff's best recollection at this time.  Investigation continues.


**Babcock & Wilcox:**

From 1957- 1965, Plaintiff was employed by Babcock & Wilcox as a boiler start-up and field engineer and salesman (5-6 months only).  Plaintiff worked at numerous sites, including power plants, paper mills, refineries, and manufacturing and other industrial facilities. These sites were located in the United States and abroad.  Some of the facilities at which Plaintiff worked during this employment, include, but are not limited to:

1957-1958 Assigned to Texas

| | |
|---|---|
| 1957-58 | Refinery, Port Arthur, TX (assist start up of new carbon monoxide unit, approximately one month). |
| 1958 | Stryker Creek Power Plant, Jacksonville, TX (construction observation, approximately one month); |
| 1958 | Mountain Creek Power Plant, Dallas, TX (assist new unit start up, approximately one month); |
| 1958 | Int. Paper, Millville, FL (monitor operation, approximately one month); |

1958-1963 Assigned to Atlanta

- Florida Power & Light, Ft. Myers, FL (assist new unit start up, approximately one month);
- Budweiser, Tampa, FL (new unit start up, approximately 2-3 months);
- Small refinery, Savannah, GA (new package boiler start up, approximately 1-2 months);
- Jacksonville Electric, Jacksonville, FL (new unit start up, approximately 2-3 months);
- Proctor & Gamble, Perry, FL (monitor operation, approximately one month);
- City of Lakeland, Florida Power Plant, Lakeland, FL (new unit start up, approximately 2-3 months);
- Unknown facility, San Juan, Puerto Rico (inspect furnace, one day);
- American Can Co., Marathon Southern, Naheola, AL (new unit start up, approximately 2-3 months);
- City Utility Power Plant, Ft. Pierce, Florida (courtesy call, one day);
- Tampa Electric, Tampa, FL (assist testing, 1-2 weeks);
- Gilman Paper Mill, St. Mary's GA, (courtesy call, one day)

CONFIDENTIAL

- Unidentified sugar mill, Florida (service call, several days)
- Bowater, Catawba, SC (assist new unit start up, approximately one month)

1962 −1963

- Kahe Power Plant Unit 2 (new unit), Hawaii (new unit start up, approximately 2-3 months);
- TVA Colbert Station, Northern Alabama (assist new unit start up, approximately one month)
- BG&E, Charles P. Crane Unit 2, Baltimore, MD (assist new unit start up, approximately one month, best recollection 1963);

Overseas Work 1962-1965

| | |
|---|---|
| 1962 | Pulp & paper mill, Nepanager, India (monitor operations, 1-2 months) |
| 1963 | Utility Power Plant, Bangkok, Thailand (new unit start up, approximately 2-3 months); |
| 11/1963 | Himeji Power Plant, Japan (assist universal pressure, new unit start up, approximately one month) |
| 12/1963 | Utility Power Plant, South Korea (assist new unit start up, approximately one month) |
| 3/64-6/64 | Pulp mill, North of Calcutta, India (new unit start up, approximately 2-3 months); |
| Late 1964 | Utility power plant, Puerto de Pollensa, Spain, (new unit start up, approximately 2-3 months); |

Again, this list of jobsites is not complete and reflects only the jobsites Plaintiff has been able to recall at this time.

Except where specified above, Mr. Heinzmann's typical job assignments involved the start up of new boiler units and lasted aproximately 2-3 months, plus or minus a week or so. His job duties as a start-up engineer included inspecting new boiler units before they were placed in service and placing new boiler units in service. This process can generally be described as the "start-up" of the boiler and involves boiling out the boiler, blowing down the system, setting safety valves, installation of thermocouples (sometimes), and generally working with the customer until the entire system is up and running. Plaintiff typically did not begin his work at a particular site until after the construction and/or installation of the unit had already been substantially completed. Plaintiff's role was as a consultant and advisor to the premises owner and operators with regard to the initial start-up and operation of the new boiler units. During these projects, the premises owner (who was B&W's customer) operated the machinery. Mr. Heinzmann could provide suggestions, guidance and advice to the customer's employees, but he had no authority over those employees and did not control their actions.

CONFIDENTIAL

At each facility where Plaintiff was involved in the start-up of a new unit, Plaintiff was routinely present while other workers (who were not employed by Babcock & Wilcox but rather employed by the premises owners and/or subcontractors) performed insulation, maintenance and repair work on various types of equipment, including steam pipes, valves, pumps, boilers, turbines and related machinery.  Plaintiff was exposed to and breathed asbestos dust that was created and became airborne as a result of others' work with asbestos-containing products, such as thermal insulation materials, refractory materials, packing and gaskets, on the various pieces of equipment.

On occasion, he was involved in the monitoring and servicing of units already in operation, sometimes merely collecting information for analysis.  Those instances are noted above in the parentheticals.  On these occasions, normal plant operations and maintenance were ongoing around Plaintiff.

### McBurney Corporation (pre-1980)

From 1965-2000, Plaintiff was employed by McBurney Corporation as a salesman, field service engineer, and project manager.  Plaintiff worked at numerous sites, including power plants, paper mills, refineries, and manufacturing and other industrial facilities.  These sites were located in the United States and abroad.  Some of the facilities at which Plaintiff worked during the 1960s and 1970s, include, but are not limited to:

| | |
|---|---|
| 1965/66 | Georgia Pacific plywood plant, Emporia, VA (monitor progress, several site visits); |
| 1967/68 | Sugar residue dust-fired boiler, outside Kingston, Jamaica (new package boiler start up, several weeks x two trips); |
| Late 1960s | International Paper (?) sawmill, Folkston, GA (sales visits); |
| Late 1960s | International Paper (?) sawmill, Higgston, GA (sales visits); |
| 1970 | Duraflake, Albany, OR (new unit start up, approximately one month); |
| 1970 | Willamette Industries, Bend, OR (new unit start up, approximately one month); |
| Early 1970s | Virginia Fibers, outside Lynchburg, VA (sales and on-site project management for construction of new unit, approximately 4-6 months); |
| 1977 | Uncle Ben's Rice, Granada, MS (new unit sales); |
| 1977 | Uncle Ben's Rice, Houston, TX (new unit sales); |

McBurney Projects – Dates Unclear – Currently Believed To Be Prior To 1980

Collins Pine (built new unit), Chester, CA (new unit sales);
Weyerhauser, Jacksonville, NC (new unit start up, approximately one month)
Russell Mills, Alexander City, AL (new unit, resolved performance issue)

35

CONFIDENTIAL

> T-Pak, Sandy Run, SC (new unit sales);
> CRA Refinery, Coffeeville, KA (new unit sales);
> Agrilectric Utility, Lake Charles, LA (rice hull fired, new unit sales);

The projects on which Plaintiff work could last from days to months.

The start-up process of these boilers and related machines for McBurney was essentially the same as what Mr. Heinzmann did while working for B&W. The units that McBurney installed and started up, however, were generally "package" boilers and smaller field-erected that were substantially smaller than the huge units B&W installed and started up in places like the CP Crane Generating Station. The work was similar and Mr. Heinzmann's role was the same when working as a start-up engineer for McBurney. When Mr. Heinzmann was working as a salesman for McBurney, his responsibilities changed, but he was frequently at the jobsites during start up (and construction) as the liaison between McBurney and the customer.

### Brands of Materials and Machinery

Plaintiff recalls that during the time he worked as a boiler start-up engineer, project manager, and salesman during the 1950s, 1960s and 1970s, the brand, trade, or manufacturer name of some of the machinery and asbestos-containing products to which he was exposed include: Byron Jackson (pumps), Goulds (pumps); Cochrane (deaerators, water softeners); Westinghouse (turbines, pumps and related equipment), General Electric (turbines), Ingersoll Rand (pumps), Kaylo (insulation), Koppers (precipitators), Babcock & Wilcox (boilers and boiler components), Keeler (boilers and boiler components), Harbison Walker (refractory products), AP Green (refractory products), Erie City (boiler components), Celotex (insulating cement), and Garlock (gaskets). Again, this list of products and machinery is NOT complete and reflects only the best of Plaintiff's recollection, knowledge, information and belief at this time.

89. If you have been exposed, or are being exposed, to any asbestos-containing products aboard any ship, boat, or barge or other vessel, please state the following with respect to each such vessel:

    (a)    Name and type of the vessel;
    (b)    Dates on which you were aboard the vessel;
    (c)    Type of work you performed;
    (d)    The location of the vessel at the time you were aboard; and
    (e)    The circumstances in which you were exposed.

**Answer:** N/A.

CONFIDENTIAL

90.    If you have been exposed, or are being exposed, to any asbestos-containing products other than in your work environment, state:

(a)    The place where your exposure occurred;

(b)    The date(s) of the exposure(s);

(c)    The name and address of the place where the asbestos originated;

(d)    The name and address of the person(s) ("contact"), if any, who transported the asbestos to the place where your exposure occurred;

(e)    A description of the activities which resulted in your exposure;

(f)    The duration of the activities which resulted in your exposure (month/day/year through month/day/year);

(g)    The location of the activities which resulted in your exposure;

(h)    The identity of the "contact's" foreman or supervisor;

(i)    The identity of the "contact's" co-workers;

(j)    A description of the types of asbestos-containing products to which you claim exposure (i.e., pipe covering, block, cement, cloth, etc.);

(k)    The identity of the supplier or distributor of each type of asbestos-containing product;

(l)    The identity of the manufacturer(s) of each type of asbestos-containing product;

(m)    The trade or brand names of each type of asbestos-containing product; and

(n)    The name of any contractors using asbestos-containing products at the site, stating the types of products they were using, names and manufacturers of the products, and the identity of persons working for any such contractors at the site.

**Answer:** None known to Plaintiff at this time.  Investigation continues.

91.    If you allege that you have been exposed, or are being exposed, to any asbestos-containing products of any defendant on board any ship, boat, barge or other vessel, please state the following with respect to each such vessel:

(a)    Name and type of the vessel;

(b)    Dates on which you worked on the vessel;

(c)    Type of work performed; and

(d)    The location of the vessel at the time of your work thereon (e.g., Bethlehem Steel Sparrows Point, Bethlehem Steel Key Highway, etc.) and the circumstances under which you were exposed.

**Answer:** N/A.

CONFIDENTIAL

92.    State verbatim, or with as complete and accurate detail as is possible, all instructions, recommendations, or warnings of any kind that accompanied each asbestos-containing product of each defendant to which you claim you were exposed (i.e., printing on tag, tag covering, instruction sheet accompanying the product, shipping carton, the product itself, or in any other manner).

   **Answer:**  Plaintiff does not recall seeing any health related instructions or information on products or packages regarding the health hazards of asbestos contained in such products. To the extent that it is claimed that such information or instructions were on any packages or products, such information must not have been conspicuous enough to draw attention to it.

93.    In regard to any persons having personal knowledge of facts relevant to your exposure to asbestos-containing products of each defendant, including but not limited to the types of products, and the suppliers or manufacturer of those products:

   (a)    Identify the workers, including any fellow workers, foremen, superiors, etc., as to each defendant who have such knowledge.
   (b)    Identify any other persons, i.e., other than workers, as to each defendant, who have such knowledge.
   (c)    Identify those persons whom you intend to produce as witnesses in the trial in this action.

   **Answer:** Investigation continues.

94.    Identify any written statements from any person identified in your Answer to Interrogatory No. 93.

   **Answer:** N/A.

95.    For each job referred to in your Answers to Interrogatory No. 88-91, state the following:

   (a)    Whether the employer on each job suggested, recommended, or required that you might, or should, use any device to reduce your possible exposure to, or inhalation of, asbestos dust or fibers.  If so, state:
      1.    The date, time, and place when such suggestion, recommendation, or requirement was made;
      2.    The exact wording and content of each such suggestion, recommendation, or requirement, or the substance thereof;
      3.    Company or employer recommendations regarding use;

CONFIDENTIAL

4.      Company or employer requirements regarding use;
5.      The identity of any writing containing or regarding such suggestion, recommendation, or requirement;
6.      The identity of each person present when such suggestion, recommendation, or requirement was given;
7.      The identity of each person who received the same or similar suggestion, recommendation, or requirement.
8.      The date and time of each period of your use of such device;
9.      The make, model, and type of device; and
10.     Your detailed reasons for any response to such suggestion, recommendation, or requirement, short of complete conformity thereto;

(b)     Whether the employer on each job provided protective clothing for your use;
(c)     Whether the employer provided separate lockers for work and personal clothing; and
(d)     Whether the employer provided showers.

**Answer:** Please see Plaintiff's Answer to Interrogatory No. 65.

96.     State whether you contend that any of the plaintiff's employers knew or should have known about asbestos-related hazards to which the plaintiff allegedly was exposed at his place(s) of employment.  If so:

(a)     Identify each employer as to whom you make this contention and identify each work place involved;
(b)     Explain in detail the factual basis for this contention;
(c)     Identify all persons whom you know, or believe, to have personal knowledge of information that supports this contention; and
(d)     Identify all documents that contain information that supports this contention.

**Answer:** Plaintiff makes no contention regarding what Mr. Heinzmann's employers knew or should have known.

97.     State whether you contend that any doctors or other health or safety personnel employed by any of the plaintiff's employers knew or should have known about asbestos-related hazards to which the plaintiff allegedly was exposed at his place(s) of employment.  If so:

(a)     Identify each such doctor or other personnel;
(b)     Identify each employer as to whom you make this contention and identify the work place(s) involved;
(c)     Explain in detail the factual basis for this contention;

39

CONFIDENTIAL

(d)    Identify all persons whom you know, or believe, to have personal knowledge or information that supports this contention; and

(e)    Identify all documents that contain information that supports this contention.

**Answer:** Plaintiff makes no contention regarding what any such employees of Mr. Heinzmann's employers, if such employees in fact existed, knew or should have known.

98.    Apart from any actions, suggestions, recommendations or requirements by any employer, did you take any measures or precautions to reduce exposure to or inhalation of asbestos dust, even if not using a specific device, such action including, but not limited to, use of handkerchiefs, home medications, or any other method of precaution, including limiting your exposure thereto?  Give a complete description in detail of any such precaution or measure taken by you, and identify the times or the jobs on which such precautions were used.

**Answer:** Please see Plaintiff's Answer to Master Interrogatory No. 65.

99.    State separately as to each defendant when and by what means you contend that defendant became aware of the alleged hazards of exposure to asbestos dusts, fibers, and/or products to the health of persons coming into contact with, handling, or using asbestos products.

**Answer:** Plaintiff objects to these interrogatories as being improper or not susceptible of being answered at this stage of the case.  These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and as such are inappropriate.  Certainly each Defendant knows as well, and in all likelihood far better than the Plaintiff, the answer to each of these questions.  All these matters are or will be the subject of Plaintiff's discovery to Defendants.  Without waiving his objection, Plaintiff states that the requested information is set forth in the interrogatory answers, deposition transcripts and exhibits related to the numerous asbestos cases in which each Defendant has participated.  Those documents provide the facts upon which Plaintiff would otherwise respond to this improper interrogatory.  Finally, the interrogatory assumes that Plaintiff intends and/or is required to prove actual knowledge of such materials on behalf of the Defendants, which is not required under Maryland law.

Without waiving these objections, Plaintiff states that, by the time Mr. Heinzmann began working with and around materials that may have contained asbestos, all of the defendants knew or should have known of the hazards of asbestos.

100.    State separately as to each defendant when and by what means you contend that defendant became aware that exposure to asbestos dusts, fibers, and/or products was

CONFIDENTIAL

acknowledged to be hazardous to the health of persons coming in contact with, handling, or using asbestos products.

> **Answer:** Plaintiff objects to these interrogatories as being improper as to form and substance and not susceptible of being answered at this stage of the case. These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and are inappropriate. Certainly each Defendant knows as well, and in all likelihood far better than the Plaintiff, the answer to each of these so-called questions. All these matters are or will be the subject of Plaintiff's discovery to Defendants. See answer to Master Interrogatory No. 99.

101.    State <u>separately as to each defendant</u> whether you contend the defendant ever learned that there is a causal connection between exposure to asbestos dust and:

- A)    Asbestosis;
- B)    Pneumoconiosis;
- C)    Lung cancer;
- D)    Mesothelioma; or
- E)    Other cancers.

> **Answer:** Yes.

102.    If your Answer to Interrogatory No. 101 is in the affirmative, please identify the following as to each such disease listed therein:

> (a)    When and by what means you contend that defendant first became aware of such causal connection.

> **Answer:** Plaintiff objects to these interrogatories as being improper as to form and substance and not susceptible of being answered at this stage of the case. These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and are inappropriate. Certainly each Defendant knows as well, and in all likelihood far better than the Plaintiff, the answer to each of these so-called questions. All these matters are or will be the subject of Plaintiff's discovery to Defendants. See answer to Master Interrogatory No. 99.

> Without waiving these objections, by the time Mr. Heinzmann began working with and around materials that may have contained asbestos, all of the Defendants knew or should have known of the connection between asbestos and each of these diseases.

CONFIDENTIAL

103.  <u>State separately as to each defendant</u> when you contend that defendant first determined that any other material could be used in place of asbestos for high-temperature insulation, a refractory, or any other use to or for which asbestos has been applied, and with regard to each:

    (a)  The identity of such material; and

    (b)  The particular use for which such substitute could be used.

**Answer:** Plaintiff objects to these interrogatories as being improper as to form and substance and not susceptible of being answered at this stage of the case.  These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and are inappropriate.  Certainly each Defendant knows as well, and in all likelihood far better than the Plaintiff, the answer to each of these so-called questions.  All these matters are or will be the subject of Plaintiff's discovery to Defendants.  See answer to Master Interrogatory No. 99.

Without waiving these objections, by the time by the time Mr. Heinzmann began working with and around materials that may have contained asbestos, substitutes for asbestos were available or readily could have been developed for all of the potentially asbestos containing materials to which Mr. Heinzmann was exposed.

104.  Please state your contention as to the meaning of "threshold limit value" as it pertains to asbestos exposure and disease.

**Answer:** Plaintiff makes no contention in this case as to the "meaning of threshold limit value".  The term was defined by the various organizations who used and/or propounded it.

105.  With reference to "threshold limit value"

    (a)  <u>State separately as to each defendant</u> when and by what means you contend the defendant obtained information related thereto; and

    (b)  State the substance of an information imparted to each defendant regarding the same.

**Answer:** Plaintiff objects to these interrogatories as being improper as to form and substance and not susceptible of being answered at this stage of the case.  These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and are inappropriate.  Certainly each Defendant knows as well, and in all likelihood far better than the Plaintiff, the answer to each of these so-called questions.  All these matters are or will be the subject of Plaintiff's discovery to Defendants. See answer to Master Interrogatory No. 99.

CONFIDENTIAL

106. <u>State separately as to each defendant</u> whether you contend that defendant ever knew that any governmental, private agency, and/or other entity issued guidelines suggesting a "threshold limit value" for exposure to asbestos dust and/or fibers.  If so, state:

    (a)    The identity of the agency or other entity that issued said guidelines;

    (b)    The verbatim content said guidelines;

    (c)    The date said guidelines were issued;

    (d)    The date you contend that defendant was first aware of the purpose of said guidelines; and

    (e)    The custodian, location and identity of all documents related thereto.

**Answer:** Plaintiff objects to these interrogatories as being improper as to form and substance and not susceptible of being answered at this stage of the case.  These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and are inappropriate.  Certainly each defendant knows as well and in all likelihood, far better than the Plaintiff, the answer to each of these so-called questions.  All these matters are or will be the subject of Plaintiff's discovery to defendants.  See answer to Master Interrogatory No. 99.

107. <u>State separately as to each defendant</u> whether you contend that defendant ever possessed knowledge of documents indicating that existing or proposed threshold limit values were not safe or proper or that lower threshold limit values were necessary in order to prevent diseases caused by exposure to asbestos.  If so, please identify:

    (a)    The source of such knowledge;

    (b)    The persons who obtained such knowledge;

    (c)    All documents relating thereto; and

    (d)    The custodian and location of all documents identified in your answer to part [c] of this interrogatory.

**Answer:** Plaintiff objects to these interrogatories as being improper as to form and substance and not susceptible of being answered at this stage of the case.  These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and are inappropriate.  Certainly each Defendant knows as well, and in all likelihood far better than the Plaintiff, the answer to each of these so-called questions.  All these matters are or will be the subject of Plaintiff's discovery to Defendants.  See answer to Master Interrogatory No. 99.

108. <u>State separately as to each defendant</u> whether you contend that defendant was ever made aware that a better method for determining levels of asbestos in air was to test concentrations of asbestos fibers in the air rather than the total number of dust particles in the air.  If so, please state:

43

CONFIDENTIAL

(a)    The source of such knowledge
(b)    The persons who obtained such knowledge;
(c)    All documents relating thereto; and
(d)    The custodian and location of all documents identified in your Answer to part [c] of this interrogatory.

**Answer:** Plaintiff objects to these interrogatories as being improper as to form and substance and not susceptible of being answered at this stage of the case.    These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and are inappropriate.    Certainly each Defendant knows as well, and in all likelihood far better than the Plaintiff, the answer to each of these so-called questions.    All these matters are or will be the subject of Plaintiff's discovery to Defendants.    See Plaintiff's Answer to Master Interrogatory No. 99.

109.    State whether you contend that asbestos-containing products cannot be manufactured or treated so as to eliminate potential asbestos health hazards to workers who use such products.    If so:

(a)    Explain in detail the factual basis for this contention;
(b)    Identify all persons whom you know, or believe, to have personal knowledge of information that supports this contention; and
(c)    Identify all documents that contain information that supports this contention.

**Answer:** Plaintiff objects to these interrogatories as being improper as to form and substance and not susceptible of being answered at this stage of the case.    These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and are inappropriate.    Certainly each Defendant knows as well, and in all likelihood far better than the Plaintiff, the answer to each of these questions.    See Plaintiff's Answer to Master Interrogatory No. 99.

Without waiving these objections, Plaintiff states that it may be hypothetically possible to manufacture a product containing asbestos such that it would eliminate potential health hazards to workers who use the product.    For example, perhaps a product could be developed that was used exclusively underwater in the ocean.    How such a product would get from the manufacturer to the undersea environment without potentially releasing asbestos into the air is unknown.    Perhaps the manufacturer could ship the item sealed in water, however the water and container would likely then be contaminated. With that said, Plaintiff is unaware of any such product.

110.    State separately as to each defendant whether you contend asbestos-containing products of that defendant are inherently dangerous.    If so:

44

CONFIDENTIAL

(a)  Identify by manufacturer name, trade name, and all other identifying information available to you the specific product(s) that you contend is inherently dangerous;

(b)  Explain in detail the factual basis for this contention;

(c)  Identify all persons whom you know, or believe, to have personal knowledge of information that supports this contention; and

(d)  Identify all documents that contain information that supports this contention.

**Answer:** Plaintiff objects to these interrogatories as being improper as to form and substance and not susceptible of being answered at this stage of the case.  These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and are inappropriate.  Certainly each Defendant knows as well, and in all likelihood far better than the Plaintiff, the answer to each of these so-called questions.  All these matters are or will be the subject of Plaintiff's discovery to Defendants.  See Plaintiff's Answer to Master Interrogatory No. 99.

111.  State separately as to each defendant, and as to each of that defendant's asbestos-containing products, whether you contend that the particular product(s) of that defendant presented a hazard or risk of exposure to asbestos to its users such that the defendant should have warned users of such a hazard or risk.  If so:

(a)  Identify separately for each defendant each of that defendant's products for which you make such contention;

(b)  Identify the specific hazards and risks which you contend each such product presented to the user;

(c)  Explain in detail the factual basis for this contention;

(d)  Identify all persons whom you know, or believe, to have personal knowledge of information that supports this contention; and

(e)  Identify all documents that contain information that supports this contention.

**Answer:** Plaintiff objects to these interrogatories as being improper as to form and substance and not susceptible of being answered at this stage of the case.  These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and are inappropriate.  Certainly each Defendant knows as well, and in all likelihood far better than the Plaintiff, the answer to each of these so-called questions.  All these matters are or will be the subject of Plaintiff's discovery to Defendants.  See Plaintiff's Answer to Master Interrogatory No. 99.

Without waiving these objections, Plaintiff states that all of the asbestos products described in Master Interrogatory 88 were hazardous and required effective warnings.  The specific hazards include death from mesothelioma.  The factual basis for the contention that the risk of death constitutes a "hazard" is self-evident.  Mr. Heinzmann and his family have personal knowledge of the seriousness of the hazard of

45

CONFIDENTIAL

mesothelioma, among others.  Please see Mr. Heinzmann's medical records for additional information supporting the serious nature of this hazard.

112.    <u>State separately as to each defendant</u> whether you contend that the defendant failed to perform adequate tests of the safety of each of the asbestos products of that defendant from which you claim injury.  If so:

(a)    State in detail all information in possession of you and/or your attorneys concerning the nature, purpose, and extent of the safety testing that each defendant <u>did</u> perform on such products;

(b)    State in detail the nature, purpose, and specifics of the safety tests that you contend the defendant <u>should</u> <u>have</u> performed on such products;

(c)    Explain in detail the factual basis for this contention;

(d)    Identify all persons whom you know, or believe, to have personal knowledge of information that supports this contention; and

(e)    Identify all documents that you contend contain information that supports this contention.

**Answer:** Plaintiff objects to these interrogatories as being improper as to form and substance and not susceptible of being answered at this stage of the case.  These "contention" interrogatories seek trial strategy and tactical information rather than facts or knowledge, and are inappropriate.  Certainly each Defendant knows as well, and in all likelihood far better than the Plaintiff, the answer to each of these so-called questions.  All these matters are or will be the subject of Plaintiff's discovery to Defendants.

Without waiving these objections, Plaintiff is aware that various Defendants performed various tests regarding their products and the potential dangers of those products.  Indeed, many of the Defendants then took extraordinary steps to protect their own employees from the deadly danger of their products while failing to take similar steps to protect their customers.  Plaintiff's exhibits in this case and the documents produced in discovery reflect these tests.

113.    <u>State separately as to each defendant</u> whether you contend that particular defendant conspired with any other defendant or other person to allow asbestos products to be used without adequate warnings, or without any warnings, regarding the hazards or risks of use of and/or exposure to such products.  If so:

(a)    Identify separately as to each defendant every person with whom you contend that defendant so conspired;

(b)    Explain in detail the factual basis for this contention;

(c)    Identify all persons whom you know, or believe, to have personal knowledge of information that support this contention; and

CONFIDENTIAL

(d)     Identify all documents that contain information that supports this contention.

**Answer:**  Plaintiff is not able to answer Master Interrogatory No. 113 at this time. Discovery continues.

114.    State whether you contend that there are no circumstances under which asbestos products can be safely handled and/or used.  If so:

(a)     Explain in detail the factual basis for this contention;
(b)     Identify all persons whom you know, or believe, to have personal knowledge of information that supports this contention; and
(c)     Identify all documents that contain information that supports this contention.

**Answer:** See Plaintiff's Answer to Master Interrogatory No. 109.

115.    State whether you admit that there are circumstances under which asbestos products can be safely handled and/or used.  If so:

(a)     State the circumstances under which asbestos product can be safely handled and used;
(b)     Explain in detail the factual basis for your admission;
(c)     Identify all persons whom you know, or believe, to have personal knowledge of information that supports your admission; and
(d)     Identify all documents that contain information that supports your admission.

**Answer:** See Plaintiff's Answer to Master Interrogatory No. 109.

116.    State whether you contend that there never has been a distinction made by scientific or medical professionals between one or more of the following with respect to the use of, and exposure to, asbestos-containing products and the health hazards or risks relating thereto: miners, millers, textile workers, asbestos plant workers, insulators, shipyard workers, steel plant workers, building tradesmen, industrial workers, and brake lining mechanics.  If so:

(a)     Explain in detail the factual basis for this contention;
(b)     Identify all persons whom you know, or believe, to have personal knowledge of information that supports this contention; and
(c)     Identify all documents that contain information that supports this contention.

**Answer:** Plaintiff objects to these interrogatories as improper.  Each of these questions is really a disguised request for admission.  If Defendants will frame them as such, Plaintiff will respond, assuming such requests for admissions are not otherwise objectionable.

47

Without waiving these objections, Plaintiff's claims in this case make no such contention. For example, Defendants' highly paid experts so contend in these cases, despite having not had any contemporaneous involvement in this field.

117.    State whether you admit that, at least in the past, distinctions have been made by scientific or medical professionals between one or more of the following with respect to the use of, and exposure to, asbestos-containing products and the health hazards or risks relating thereto: miners, millers textile workers, asbestos plant workers, insulators, shipyard workers, steel plant workers, building tradesmen, industrial workers, and brake lining mechanics.  If so:

    (a)    Explain in detail the factual basis for admission;
    (b)    State the most recent dates upon which such distinction was made;
    (c)    Identify all scientific or medical professionals who have made such a distinction;
    (d)    Identify all persons whom you know, or believe, to have personal knowledge of information that supports your answer to any portion of this interrogatory; and
    (e)    Identify all documents that you contend contain information that supports any portion of your answer to this interrogatory.

**Answer:** Plaintiff objects to these interrogatories as improper.  Each of these questions is really a disguised request for admission.  If Defendants will frame them as such, Plaintiff will respond, assuming such requests for admissions are not otherwise objectionable.

Without waiving these objections, Plaintiff admits that Defendants' highly paid experts so contend in these cases, despite having not had any contemporaneous involvement in this field.

118.    State whether you contend that a distinction has never been made by scientific or medical professionals between asbestos fiber types (chrysotile, amosite, crocidolite, actinolite, anthophyllite or tremolite) with regard to the relative risks of such fiber types causing disease.  If so:

    (a)    Explain in detail the factual basis for this contention;
    (b)    Identify all persons whom you know, or believe, to have personal knowledge of information that supports this contention; and
    (c)    Identify all documents that contain information that supports this contention.

**Answer:** Plaintiff objects to these interrogatories as improper.  Each of these questions is really a disguised request for admission.  If Defendants will frame them as such, Plaintiff will respond, assuming such requests for admissions are not otherwise objectionable.

CONFIDENTIAL

Without waiving these objections, Plaintiff's claims in this case make no such contention. For example, Defendants' highly paid experts so contend in these cases, despite having not had any contemporaneous involvement in this field.

119.   State whether you admit that at least some scientific or medical professionals have made distinctions between asbestos fiber types (chrysotile, amosite, crocidolite, actinolite, anthophyllite or tremolite) with regard to the relative risks of such fiber types causing disease.  If so:

(a)   Identify each such scientific or medical professional;
(b)   Explain in detail the factual basis for your admission;
(c)   Identify all persons whom you know or believe to have personal knowledge of information which supports your admission; and
(d)   Identify all documents that contain information that supports your admission.

**Answer:** Plaintiff objects to these interrogatories as improper.  Each of these questions is really a disguised request for admission.  If Defendants will frame them as such, Plaintiff will respond, assuming such requests for admissions are not otherwise objectionable.

Without waiving these objections, Plaintiff admits that, for example, Defendants' highly paid experts so contend in these cases, despite having not had any contemporaneous involvement in this field.

120.   State whether you contend that the injuries alleged in this case are caused, in whole or in part, by an act or omission of the injured worker's employer.  If so:

(a)   Identify each such employer;
(b)   Explain in detail the factual basis for this contention;
(c)   Identify all persons whom you know, or believe, to have personal knowledge of information that supports this contention; and
(d)   Identify all documents that contain information that supports this contention.

**Answer:** Plaintiff objects to these interrogatories as improper.  Each of these questions is really a disguised request for admission.  If Defendants will frame them as such, Plaintiff will respond, assuming such requests for admissions are not otherwise objectionable.

Without waiving this objection, Plaintiff incorporates his Answer to Interrogatory No. 96.

121.   State whether you deny that the injuries alleged in this case were caused, in whole or in part, by an act or omission of the injured worker's employer.  If so:

(a)   Explain in detail the factual basis for this denial;

CONFIDENTIAL

(b)    Identify all persons whom you know, or believe, to have personal knowledge of information that supports this denial; and

(c)    Identify all documents that contain information that supports this denial.

**Answer:** Plaintiff objects to these interrogatories as improper. Each of these questions is really a disguised request for admission. If Defendants will frame them as such, Plaintiff will respond, assuming such requests for admissions are not otherwise objectionable.

Without waiving this objection, Plaintiff incorporates his Answer to Interrogatory No. 96.

122.    State whether you contend that the Plaintiff's injuries were caused by an act or omission of a person who is not a party to this case. If so:

(a)    Identify each such person;

(b)    Explain in detail the factual basis for this contention;

(c)    Identify all persons whom you know, or believe, to have personal knowledge of information that supports this contention; and

(d)    Identify all documents that contain information that supports this contention.

**Answer:** Plaintiff objects to these interrogatories as improper. Each of these questions is really a disguised request for admission. If Defendants will frame them as such, Plaintiff will respond, assuming such requests for admissions are not otherwise objectionable.

Without waiving these objections, Plaintiff states that it is not for him to admit or deny whether third parties' actions were a cause of his injuries – he has made no such contention in his complaint. That is an issue for the Defendants to assert if they so believe.

123.    State whether you deny that the Plaintiff's injuries were caused, in whole or in part, by an act or omission of another who is not a party to this case. If so:

(a)    Explain in detail the factual basis for this denial;

(b)    Identify all persons whom you know or believe to have personal knowledge of information that supports this denial; and

(c)    Identify all documents that contain information that supports this denial.

**Answer:** Plaintiff objects to these interrogatories as improper. Each of these questions is really a disguised request for admission. If Defendants will frame them as such, Plaintiff will respond, assuming such requests for admissions are not otherwise objectionable.

Without waiving these objections, Plaintiff states that it is not for him to admit or deny whether third parties' actions were a cause of his injuries – he has made no such

50

CONFIDENTIAL

contention in his complaint.  That is an issue for the Defendants to assert if they so believe.

124.  State whether you admit that the Plaintiff's injuries were caused, in whole or in part, by an act or omission of another who is not a party to this case.  If so:

    (a)     Explain in detail the factual basis for this admission;

    (b)     Identify all persons whom you know or believe to have personal knowledge of information that supports this admission; and

    (c)     Identify all documents that contain information that supports this admission.

**Answer:** Plaintiff objects to these interrogatories as improper.  Each of these questions is really a disguised request for admission.  If Defendants will frame them as such, Plaintiff will respond, assuming such requests for admissions are not otherwise objectionable.

Without waiving these objections, Plaintiff states that it is not for him to admit or deny whether third parties' actions were a cause of his injuries – he has made no such contention in his complaint.  That is an issue for the Defendants to assert if they so believe.

125.  <u>State separately as to each defendant</u>, and with particularity, the facts upon which you base any claim that the defendant acted negligently.

**Answer:** By not later than the 1930s, the life-threatening hazard posed by inhalation of dust-containing asbestos at levels undetectable to the naked eye was an established fact which each of the Defendants knew or should have been aware of prior to the production, use and/or distribution of asbestos-containing products.  The failure of the Defendants to act on this knowledge, which each had or should have had, breached their duty of care to users and consumers of their products, and persons, such as Mr. Heinzmann.  The failure to advise users and consumers and persons at premises which they controlled of the life-threatening hazard of breathing dust from asbestos-containing products is just one such act of negligence.

126.  <u>State separately as to each defendant</u>, and with particularity, the facts upon which you base any claim that the defendant is strictly liable to you for your alleged damages resulting from exposure to asbestos-containing products.

**Answer:** Each and all of the manufacturer, distributor, and supplier/installer Defendants is responsible for having placed in the stream of commerce an asbestos-containing product which was expected to and did reach Mr. Heinzmann's workplace in substantially the same condition as when it left the control of the respective Defendant.

CONFIDENTIAL

The asbestos products were defective and unreasonably dangerous in that such products caused his mesothelioma. In addition, or alternatively, the Defendants placed into the stream of commerce products which by their very presence in the market were accompanied by an implied representation that such products would safely do the job for which it was manufactured. The Defendants' asbestos-containing products failed to satisfy such ordinary consumer expectations as to safety in that each and all such asbestos products of each and all Defendants caused Mr. Heinzmann to develop his asbestos-related cancer.

127. <u>State separately as to each defendant</u>, and with particularity, the facts upon which you base any claim that the defendant breached any express or implied warranty to Plaintiffs.

**Answer:** Defendants breached any express or implied warranty related to their asbestos products by virtue of the fact that Mr. Heinzmann developed an asbestos-related disease that was caused by exposure to the asbestos products of the Defendants even though the products were expressly or impliedly warranted to be fit for their normal and intended use.

128. <u>State separately as to each defendant</u>, and with particularity, the facts upon which you base any claim that you are entitled to punitive damages from that defendant.

**Answer:** Plaintiff states that Defendants and each of them were members of industry organizations which addressed the issue of asbestos and disease, participated in research, obtained the results of research, attended meetings and received or were aware of compensation claims or lawsuits concerning asbestos exposure and disease, were aware of the compensability of asbestos disease under various state workers' compensation laws and otherwise had knowledge of the serious and life threatening hazards of asbestos-containing dust but nevertheless failed and refused to act on this knowledge so as to prevent injury and disease to Mr. Heinzmann and the using and consuming public.

129. Identify each and every writing, oral conversation, or other communication with, or in the presence of, any representative of each defendant, relating directly or indirectly to the subject matter of the complaint, and give the substance of each such oral conversation or other communication, and the names of all persons in attendance or who have personal knowledge of each such conversation or communication.

**Answer:** Plaintiff objects to Interrogatory No. 129 on the ground that it is hopelessly overbroad and would require identification of every document. Assuming that Interrogatory No. 129 refers to Mr. Heinzmann and his worksites at the time the he was at his worksites, Plaintiff knows of no such communication at present. Plaintiff's exhibits

CONFIDENTIAL

will contain writings, conversations, etc. regarding the general subject matter of this case and will be produced in accordance with the Maryland Rules and any scheduling order entered in this case.

130.    State whether, in addition to your claim for asbestos caused injury, you also are making claim in this case for injury or other damages caused by toxic or otherwise harmful chemicals, minerals, or other non-asbestos substances.  If so:

    (a)    Explain in detail the factual basis for this claim;

    (b)    State the name of each such chemical, mineral or other substances;

    (c)    Identify each product that you claim contained such chemical, mineral or substance and identify the manufacturer of such product;

    (d)    Identify all persons whom you know, or believe, to have information that supports this claim; and

    (e)    Identify all documents that contain information that supports this claim.

**Answer:** No such claim is presently being made.

131.    Identify any person not heretofore mentioned in your answers to these interrogatories having personal knowledge of facts material to this case.

**Answer:** This matter is still being investigated.  Plaintiff will identify any such person in accordance with the Pre-Trial Scheduling Order entered in this case.

132.    Identify all documents not heretofore mentioned in your answers to these interrogatories that you contend contain facts material to this case.

**Answer:** Plaintiff objects to this interrogatory as overly broad, unduly burdensome and an improper method for obtaining the identification and production of documents.

CONFIDENTIAL

*/s/ Jonathan Ruckdeschel*
Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
8357 Main Street
Ellicott City, Maryland 21043
(410) 750-7825 [O]
(443) 583-0430 [F]

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of March, 2017, a copy of the foregoing Plaintiffs'

Answers to Defendants' Master Set of Interrogatories was served Lexis File & ServeXpress.

*/s/ Jonathan Ruckdeschel*
Jonathan Ruckdeschel

CONFIDENTIAL

**I SOLEMNLY DECLARE AND AFFIRM**, under the penalties of perjury that the foregoing Answers to interrogatories are true and correct to the best of my knowledge, information and belief.

_David A. Heinzmann_    3/11/17

David A. Heinzmann                          Date

CONFIDENTIAL