# BRAUNHAGEY & BORDEN LLP

San Francisco & New York

**J. Noah Hagey, Esq.**
hagey@braunhagey.com

January 30, 2018

**VIA ECF**

Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, DE 19801

> **Re:**     ***In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS) (Bankr. D. Del.) – Majority Creditors' Statement re. Proposed Orders on Amendment of Fee Committee Order**

Dear Judge Sontchi:

Together with Friedlander & Gorris, P.A., we serve as special counsel for Majority Creditors Elliott Associates L.P., The Liverpool Limited Partnership, Gatwick Securities, Paloma Partners Management Company and Sunrise Partners Limited Partnership. We write in brief response to the dueling Certifications of Counsel and [Proposed] Orders filed yesterday on behalf of the E-Side UCC (D.I. 12529, the "UCC Proposal"), and by Debtors (D.I. 12528 and 12528-1, the "Debtors Proposal"). As explained below, the Majority Creditors express reservation about aspects of the Debtors Proposal which contradict the spirit of the Court's January 8, 2018 rulings and ignore pragmatic issues flowing from that decision.

For context, the proposals arrive after approximately three weeks of multi-party negotiation guided by the Court's January 8, 2018 rulings on the Majority Creditors' Motion for Appointment of a Representative to the Fee Committee (D.I. 12415). The E-Side UCC's counsel served as primary draftsperson and facilitator amongst Debtors, Majority Creditors, and Fee Committee, *viz*, in hopes of reaching a consensual proposed order. That process ultimately was unsuccessful, but the Court and parties benefit from its fruits.[1] The final UCC Proposal embodies material compromises by the Majority Creditors and E-Side UCC during negotiations with Debtors and the Fee Committee, and attempts to fashion a workable solution to various issues that arise from the Court's ruling. We briefly explicate these issues below in aid of Your Honor's review.

***First,*** the UCC Proposal addresses concerns expressed by the Court about improving the Fee Committee's process, which currently lacks both major creditor buy-in and visibility, to allow greater transparency. *See* 1-8-2018 Hearing Tr. at 88:12-18 (acknowledging lack of

---

[1] While perhaps unrelated, it is noteworthy that the Debtors' support for a consensual proposal suddenly faded once the UCC elected a creditor representative other than one nominated by Debtors' counsel or Fee Committee counsel.

**San Francisco**
220 Sansome Street, 2nd Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**
80 Broad Street, Suite 1302
New York, NY 10004
Tel. & Fax: (646) 829-9403

transparency to creditors and need to bolster buy-in amongst estate constituents)*; Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses in Larger Chapter 11 Cases (§ G(1) (a fee review committee should "bring consistency, predictability and transparency to the process") and § (1)(h) ("Goals: … (h) To increase public confidence in the integrity and soundness of the bankruptcy compensation process").

The UCC Proposal embraces these principles in a straight-forward manner.  Section H(1) provides that the Fee Committee shall use commercially reasonable efforts to support "increased transparency into the Fee Committee's process, work product, and agreements entered with Retained Professionals."  At the same time, it recognizes the need for protection of legitimately confidential information and broad protection of any sensitive material produced by Retained Professionals pursuant to the Court's existing August 13, 2014 *Confidentiality Agreement and Stipulated Protective Order* (the "Protective Order") (D.I. 1833).

By comparison, the Debtors Proposal flips the Court's transparency motivation on its head.  The word "transparency" is found nowhere in Debtors' draft; nor is there any other mandate to provide information to creditors about the Fee Committee's processes and work product, such as the electronic fee database funded by the estate to parse invoices submitted in this action.  In fact, Debtors go a step further in the opposite direction.  They newly attempt to *prohibit* any consultation between the creditors' representative and its actual constituents, thereby limiting access to all but a few lawyers working for the E-Side UCC's counsel.  *See* Debtor Proposal at § A(5) (revising the existing Fee Committee Order to limit consultation to constituent "attorneys").  By eliminating Fee Committee member consultation with constituent group members, Debtors erect a new roadblock that uniquely affects only creditors – and which perversely is even more restrictive than the *original* Fee Committee Order.  Such restriction would preclude the Majority Creditors and their counsel from engaging in non-confidential consultation together with the creditors' representative and the UCC, and potentially could be read to bar any provision of the Majority Creditors' own work product to the creditors' representative.  In short, the restriction amounts to a clever information "gag" directly undermining the Court's stated interest in fostering greater party involvement and buy-in.

*Second*, the UCC Proposal adopts the Court's preexisting Protective Order procedures and standards regarding the use and treatment of "Confidential" or "Highly Confidential" material disclosed by the Fee Committee and/or the creditors' representative.  *See* UCC Proposal at § H(2)-(6).  Doing so eliminates any uncertainty regarding the definition of "Confidential Material", and how that information should be handled, used and otherwise protected.  This comports with the Court's colloquy with Debtors' counsel at the hearing about practical issues facing counsel in receipt of confidential information.  1-8-2018 Hearing Tr. at 92:9-20.

The Debtors Proposal is different.  It largely ignores the Court's existing Protective Order and instead would erect a brand new confidentiality process governing the Fee Committee's work that is as sweeping as it is ill-defined.  *See* Debtors' Proposal at § H(2)-(3).  Debtors fabricate a new definition of "Confidential Material" that is both under and over inclusive.  Their proposal also introduces a newly defined "attorneys' eyes only" restriction utterly without the protocols and guidelines embodied in the existing Protective Order process designed to provide

clear instructions to counsel regarding the proper handling of "High Confidential" material with vendors, staff, and the Court itself.

Respectfully, the Debtors' approach is needless and administratively dysfunctional. Parties have been producing and working with sensitive information in this case for almost four years under the existing Protective Order.  There is no reason to adopt a less precise – and much more risky and abstruse – standard here, *i.e.*, where the parties will want to guidance regarding basic issues such as the manner of sealing documents, disclosure to experts, use during depositions, return and destruction, *et cetera*.

**Last**, the UCC Proposal provides reasonable compensation for the creditors' representative, a respected New York attorney, Howard Kaplan.  Mr. Kaplan will require resources to get up to speed and meaningfully participate in the Fee Committee's work.  (*Id.* at § E(1).)  The Majority Creditors initially proposed that such representative should be paid at least $50,000 per month, particularly in view of the Fee Committee counsel's own $250,000 monthly allotment.  The parties ultimately bargained the monthly fee down to $30,000, as reflected in the final UCC Proposal, thereby making the monthly fee for the creditors' representative broadly consistent with the $40,000 to $50,000 monthly fee paid to the Independent Member.  (*See* D.I. 12503 ¶12)

The Debtors Proposal seeks to halve the amount of the creditor representative's compensation, demanding that it accept $15,000 per month, less than 40% of the amount paid to the Independent Member and less than what many advisors spend preparing fee applications to the Court.  If Debtors are, indeed, concerned about the expenditure of estate resources in favor of Mr. Kaplan's work, the Court and parties might consider offsetting his fees from those charged by Fee Committee counsel.  Alternatively, Mr. Kaplan could submit fee invoices without any cap for review and approval under Sections 327 and 330.  However fashioned, the Court's final order should not undermine the creditor representative's work by starving it of resources.  This, sadly, appears to be the Debtors' objective.

\*   \*   \*

We welcome a conference at the Court's convenience and appreciate Your Honor's consideration of these issues.

Very truly yours,

J. Noah Hagey

Cc:    All Counsel of Record (Via ECF)