# EXHIBIT A

# Deloitte.

**Deloitte & Touche LLP**
JPMorgan Chase Tower
2200 Ross Avenue
Suite 1600
Dallas, TX 75201-6778
USA

Tel: +1 214 840 7000
www.deloitte.com

August 22, 2017

Ms. Billie Williamson
Chairperson
Audit Committee of Energy Future Holdings Corp.
Energy Plaza 1601 Bryan Street
Dallas, TX 75201

Mr. Tony R. Horton
Executive Vice President, Chief Financial Officer and Treasurer
Energy Future Holdings Corp.
Energy Plaza, 1601 Bryan Street
Dallas, TX 75201

Dear Ms. Williamson and Mr. Horton:

Deloitte & Touche LLP ("D&T" or "we" or "us") is pleased to serve as independent auditors for Energy Future Holdings Corp. ("EFH", the "Company", or "you" or "your"). Mr. Thomas Kilkenny will be responsible for the services that we perform for the Company hereunder.

In addition to the audit services we are engaged to provide under this engagement letter, we would also be pleased to assist the Company on issues as they arise throughout the year. Hence, we hope that you will call Mr. Kilkenny whenever you believe D&T can be of assistance.

The services to be performed by D&T pursuant to this engagement are subject to the terms and conditions set forth herein and in the accompanying appendices. Such terms and conditions shall be effective as of the date of the commencement of such services.

## Audit of Financial Statements

Our engagement is to perform an audit in accordance with auditing standards generally accepted in the United States of America ("generally accepted auditing standards"). The objective of an audit conducted in accordance with generally accepted auditing standards is to express an opinion on whether the Company's financial statements for the year ending December 31, 2017, are presented fairly, in all material respects, in accordance with accounting principles generally accepted in the United States of America ("generally accepted accounting principles").

Appendix A contains a description of the auditor's responsibilities and the scope of an audit in accordance with generally accepted auditing standards.

## D&T Reports

We expect to issue a written report upon the completion of our audit. Our ability to express an opinion or to issue any report as a result of this engagement and the wording thereof will, of course, be dependent on the facts and circumstances at the date of our report. If, for any reason, we are unable to complete our audit or are unable to form or have not formed an opinion, we may decline to express an opinion or decline to issue any report as a result of this engagement. If we are unable to complete our audit, or if any report to be issued by D&T as a result of this engagement requires modification, the reasons for this will be discussed with the Audit Committee and the Company's management.

## Management's Responsibilities

Appendix B describes management's responsibilities.

## Responsibility of the Audit Committee

As independent auditors of the Company, we acknowledge that the Audit Committee is directly responsible for the appointment, compensation, and oversight of our work, and accordingly, except as otherwise specifically noted, we will report directly to the Audit Committee. You have advised us that the services to be performed under this engagement letter, including, where applicable, the use by D&T of affiliates or related entities as subcontractors in connection with this engagement, have been approved by the Audit Committee in accordance with the Audit Committee's established preapproval policies and procedures.

## Communications with the Audit Committee

Appendix C describes various matters that we are required by generally accepted auditing standards to communicate with the Audit Committee and management.

### Fees

Consistent with our audits since the Company has been in bankruptcy, our fees for this engagement consist of (a) a fee related to base audit services and (b) fees specific to additional audit procedures expected to be performed due to the continuation of the chapter 11 cases. We estimate the base audit fee to be $107,000 and we currently estimate fees related to bankruptcy specific audit services to be $58,000. Bankruptcy specific audit services include specified audit procedures, and may include accounting and financial reporting research and consultation services related to the restructuring and emergence transactions and related financing activities customarily provided by the independent auditor. D&T will charge the base audit hourly rates set forth below for base audit services, and bankruptcy specific audit procedures. D&T will charge the consultation hourly rates set forth below for accounting and financial reporting research and consultation services related to the restructuring and emergence transactions and related financing activities. Both the base audit and consultation hourly rates detailed below are Bankruptcy Court approved rates.[1]

| Personnel Classification | Applicable Hourly Rates (base audit) | Applicable Hourly Rates (consultation) |
|---|---|---|
| Partner/Principal/Director | $ 365 | $ 720 |
| Senior Manager | $ 290 | $ 620 |
| Manager | $ 265 | $ 540 |
| Senior Staff | $ 215 | $ 425 |
| Staff | $ 175 | $ 350 |

In addition, engagement-related expenses, including travel, report production, delivery services, and other expenses incurred in providing the services, will be included in the total amount billed.

The fees for this engagement would ordinarily be billed according to an agreed upon schedule.

---

[1] Approved rates were obtained from the application of EFH Corp. to retain Deloitte & Touche LLP as independent auditor filed at docket 656 on May 29, 2014 with the Bankruptcy Court.

However, while the Company is operating under the purview of the Bankruptcy Court, the timing of billings will be subject to the fee application process of the Court.  Bankruptcy related audit procedures and Out of Scope services described above will be billed as incurred.

D&T acknowledges that the timing and form of the Company's emergence from bankruptcy is uncertain, but that such emergence could occur before the audit contemplated by this engagement letter is completed. D&T and the Company will cooperate to efficiently plan and implement the audit so as to incur as much of the fees after December 31, 2017 as is feasible.

Our estimated fees are based on certain assumptions, including (1) timely and accurate completion of the requested entity participation schedules and additional supporting information, (2) no inefficiencies during the audit process or changes in scope caused by events that are beyond our control, (3) the effectiveness of internal control over financial reporting throughout the period under audit, (4) a minimal level of audit adjustments (recorded or unrecorded), and (5) no changes to the timing or extent of our work plans. We will notify you promptly of any circumstances we encounter that could significantly affect our estimate and discuss with you any additional fees, as necessary.

Notwithstanding anything herein to the contrary, EFH will compensate D&T for invoices submitted in connection with this agreement in accordance with any order entered by the Bankruptcy Court governing the compensation or reimbursement of fees of parties employed pursuant to section 327(a) of the Bankruptcy Code.

## Inclusion of D&T Reports or References to D&T in Other Documents or Electronic Sites

Nothing in this engagement letter is intended to restrict the ability of the Company to distribute to other parties our independent auditor's report together with, and only with a complete set of the Company's financial statements and related notes thereto for all periods to which such report relate. However, if the Company intends to publish or otherwise reproduce in any document any report issued as a result of this engagement, or otherwise make reference to D&T in a document that contains other information in addition to the audited financial statements  (e.g., in a periodic filing with a regulator, in a debt or equity offering circular, or in a private placement memorandum), thereby associating D&T with such document, the Company agrees that its management will provide D&T with a draft of the document to read and obtain our approval for the inclusion or incorporation by reference of any of our reports, or the reference to D&T, in such document before the document is printed and distributed. The inclusion or incorporation by reference of any of our reports in any such document would constitute the reissuance of such reports. The Company also agrees that its management will notify us and obtain our approval prior to including any of our reports on an electronic site.

Notwithstanding the foregoing, the Company may post our report to an internal use only electronic site, or to its electronic site at www.energyfutureholdings.com after we have issued our report, provided that any such electronic site is controlled by the Company, is for informational purposes only, and is not associated to or referenced in a document in electronic form that contains other information in addition to the audited financial statements (e.g., a debt or equity offering circular, a private placement memorandum, or other similar offering), and, provided that the Company's financial statements (the complete financial statements and related notes thereto for all periods to which our report relates) and our report thereon are reproduced in their entirety and that the Company understands and agrees that we will not be associated with any other information contained on any such electronic site.

Our engagement to perform the services described herein does not constitute our agreement to be associated with any such documents published or reproduced by or on behalf of the Company. Any request by the Company to reissue any report issued as a result of this engagement, to consent to, any such report's inclusion or incorporation by reference in an

offering or other document, or to agree to any such report's inclusion on an electronic site will be considered based on the facts and circumstances existing at the time of such request.  The estimated fees outlined herein do not include any procedures that would need to be performed in connection with any such request. Should D&T agree to perform such procedures, fees for such procedures would be subject to the mutual agreement of the Company and D&T.

* * * * *

The parties acknowledge and agree that D&T is being engaged under this engagement letter to provide only the services described herein. Should the Company or the Audit Committee request, and should D&T agree to provide, services (including audit services) beyond those described herein, such services will constitute a separate engagement and will be governed by a separate engagement letter.

This engagement letter, including Appendices A through E attached hereto and made a part hereof, constitutes the entire agreement between the parties with respect to this engagement and supersedes any other prior or contemporaneous agreements or understandings between the parties, whether written or oral, relating to this engagement.

If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,

*Deloitte & Touche LLP*

Acknowledged and approved on behalf of
the Audit Committee of Energy Future Holdings Corp.:

By: _____

Title: _____

Date: _____

Accepted and agreed to by Energy Future Holdings Corp.:

By: _____

Title: _____

Date: _____

offering or other document, or to agree to any such report's inclusion on an electronic site will be considered based on the facts and circumstances existing at the time of such request. The estimated fees outlined herein do not include any procedures that would need to be performed in connection with any such request. Should D&T agree to perform such procedures, fees for such procedures would be subject to the mutual agreement of the Company and D&T.

* * * * *

The parties acknowledge and agree that D&T is being engaged under this engagement letter to provide only the services described herein. Should the Company or the Audit Committee request, and should D&T agree to provide, services (including audit services) beyond those described herein, such services will constitute a separate engagement and will be governed by a separate engagement letter.

This engagement letter, including Appendices A through E attached hereto and made a part hereof, constitutes the entire agreement between the parties with respect to this engagement and supersedes any other prior or contemporaneous agreements or understandings between the parties, whether written or oral, relating to this engagement.

If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,

*Deloitte & Touche LLP*

Acknowledged and approved on behalf of
the Audit Committee of Energy Future Holdings Corp.:

By: _____

Title: _____

Date: _____

Accepted and agreed to by Energy Future Holdings Corp.:

By: _____

Title: _____ *EVP/CFO* _____

Date: _____ *11/01/17* _____

4

**APPENDIX A**

# AUDITOR'S RESPONSIBILITIES AND SCOPE OF AN AUDIT IN ACCORDANCE WITH GENERALLY ACCEPTED AUDITING STANDARDS

This Appendix A is part of the engagement letter dated August 22, 2017, between Deloitte & Touche LLP and Energy Future Holdings Corp. and approved by the Audit Committee of Energy Future Holdings Corp.

## Auditor's Responsibilities

Our responsibilities under generally accepted auditing standards include forming and expressing an opinion about whether the financial statements that have been prepared by management with the oversight of the Audit Committee are presented fairly, in all material respects, in accordance with generally accepted accounting principles. The audit of the financial statements does not relieve management or the Audit Committee of their responsibilities.

## Scope of an Audit

Generally accepted auditing standards require that we plan and perform the audit to obtain reasonable, rather than absolute, assurance about whether the financial statements as a whole are free from material misstatement, whether caused by fraud or error. However, because of the inherent limitations of an audit, together with the inherent limitations of internal control, an unavoidable risk exists that some material misstatements may not be detected, even though the audit is properly planned and performed in accordance with generally accepted auditing standards. We have no responsibility to plan and perform the audit to obtain reasonable assurance that misstatements, whether caused by fraud or error, that are not material to the financial statements as a whole are detected.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on our judgment, including the assessment of the risks of material misstatement of the financial statements, whether caused by fraud or error. In making those risk assessments, we consider internal control relevant to the Company's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

<b>APPENDIX B</b>

## MANAGEMENT'S RESPONSIBILITIES

This Appendix B is part of the engagement letter dated August 22, 2017, between Deloitte & Touche LLP and Energy Future Holdings Corp. and approved by the Audit Committee of Energy Future Holdings Corp.

## Financial Statements

Management is responsible for the preparation, fair presentation, and overall accuracy of the financial statements in accordance with generally accepted accounting principles. In this regard, management has the responsibility for, among other things:

- Selecting and applying the accounting policies

- Designing, implementing, and maintaining effective internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error

- Identifying and ensuring that the Company complies with the laws and regulations applicable to its activities and informing us of all instances of identified or suspected noncompliance with such laws or regulations

- Providing us with (1) access to all information of which management is aware that is relevant to the preparation and fair presentation of the financial statements, such as records, documentation, and other matters, (2) additional information that we may request from management for the purpose of our audit, and (3) unrestricted access to personnel within the Company from whom we determine it necessary to obtain audit evidence

## Management's Representations

We will make specific inquiries of the Company's management about the representations embodied in the financial statements. In addition, we will request that management provide us with the written representations the Company is required to provide to its independent auditors under generally accepted auditing standards. The responses to those inquiries and the written representations of management are part of the evidential matter that D&T will rely on in forming its opinion on the Company's financial statements. Because of the importance of management's representations, the Company agrees to release and indemnify D&T, its subcontractors, and their respective personnel from all claims, liabilities, and expenses relating to our services under this engagement letter attributable to any knowing misrepresentation by management.

## Process for Obtaining Preapproval of Services

Management is responsible for the coordination of obtaining the preapproval of the Audit Committee, in accordance with the Audit Committee's preapproval process, for any services to be provided by D&T to the Company.

## Independence Matters

In connection with our engagement, D&T, management, and the Audit Committee will assume certain roles and responsibilities in an effort to assist D&T in maintaining independence. D&T will communicate to its partners, principals, and employees that the Company is an attest

client. Management of the Company will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the consolidated financial statements, has policies and procedures in place for the purpose of ensuring that neither the Company nor any such subsidiary or other entity will act to engage D&T or accept from D&T any service that under American Institute of Certified Public Accountants (AICPA) or other applicable rules would impair D&T's independence. All potential services are to be discussed with Mr. Kilkenny.

In connection with the foregoing paragraph, the Company agrees to furnish to D&T and keep D&T updated with respect to a corporate tree that identifies the legal names of the Company's affiliates, as defined in AICPA *Code of Professional Conduct* Interpretation No. 101-18 (e.g., parents, subsidiaries, investors, or investees) ("Company Affiliates"), together with the ownership relationship among such entities. Such information will be maintained in a database accessible by D&T in connection with their compliance with AICPA or other applicable independence rules.

Management will coordinate with D&T to ensure that D&T's independence is not impaired by hiring former or current D&T partners, principals, or professional employees in a key position, as defined in the AICPA *Code of Professional Conduct*. Management of the Company will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the consolidated financial statements, also has policies and procedures in place for purposes of ensuring that D&T's independence will not be impaired by hiring a former or current D&T partner, principal, or professional employee in a key position that would cause a violation of the AICPA *Code of Professional Conduct* or other applicable independence rules. Any employment opportunities with the Company for a former or current D&T partner, principal, or professional employee should be discussed with Mr. Kilkenny (with notice to the Audit Committee) before entering into substantive employment conversations with the former or current D&T partner, principal, or professional employee.

For purposes of the preceding sections entitled "Independence Matters" and "Process for Obtaining Preapproval of Services," "D&T" shall mean Deloitte & Touche LLP and its subsidiaries; Deloitte Touche Tohmatsu Limited, its member firms, the affiliates of Deloitte & Touche LLP, Deloitte Touche Tohmatsu Limited and its member firms; and, in all cases, any successor or assignee.

# COMMUNICATIONS WITH THE AUDIT COMMITTEE

This Appendix C is part of the engagement letter dated August 22, 2017, between Deloitte & Touche LLP and Energy Future Holdings Corp. and approved by the Audit Committee of Energy Future Holdings Corp.

We are responsible for communicating with the Audit Committee significant matters related to the audit that are, in our professional judgment, relevant to the responsibilities of the Audit Committee in overseeing the financial reporting process.

In connection with the foregoing, we will communicate to the Audit Committee any fraud we identify or suspect that involves (1) management, (2) employees of the Company who have significant roles in internal control, or (3) other employees of the Company when the fraud results in a material misstatement of the financial statements. In addition, we will communicate with the Audit Committee any other matters related to fraud that are, in our professional judgment, relevant to their responsibilities. We will communicate to management any fraud perpetrated by lower-level employees of which we become aware that does not result in a material misstatement of the financial statements; however, we will not communicate such matters to the Audit Committee, unless otherwise directed by the Audit Committee.

We will also communicate to the Audit Committee matters involving the Company's noncompliance with laws and regulations that have come to our attention during the course of our audit, other than when such matters are clearly inconsequential.

We will also communicate in writing to management and the Audit Committee any significant deficiencies or material weaknesses in internal control (as defined in generally accepted auditing standards) that we have identified during the audit, including those that were remediated during the audit.

Generally accepted auditing standards do not require us to design procedures for the purpose of identifying other matters to communicate with the Audit Committee. However, we will communicate to the Audit Committee matters required by AICPA AU-C 260, *The Auditor's Communication with Those Charged with Governance*.

**APPENDIX D**

# GENERAL BUSINESS TERMS

This Appendix D is part of the engagement letter to which these terms are attached (the engagement letter, including its appendices, the "engagement letter") dated August 22, 2017, between Deloitte & Touche LLP and Energy Future Holdings Corp. and approved by the Audit Committee of Energy Future Holdings Corp.

1.  <u>Independent Contractor.</u> D&T is an independent contractor and D&T is not, and will not be considered to be, an agent, partner, fiduciary, or representative of the Company or the Audit Committee.

2.  <u>Survival.</u> The agreements and undertakings of the Company and the Audit Committee contained in the engagement letter will survive the completion or termination of this engagement.

3.  <u>Assignment and Subcontracting.</u> Except as provided below, no party may assign any of its rights or obligations (including, without limitation, interests or claims) relating to this engagement without the prior written consent of the other parties. The Company and the Audit Committee hereby consent to D&T subcontracting a portion of its services under this engagement to any affiliate or related entity, whether located within or outside of the United States. Professional services performed hereunder by any of D&T's affiliates or related entities shall be invoiced as professional fees, and any related expenses shall be invoiced as expenses, unless otherwise agreed.

4.  <u>Severability.</u> If any term of the engagement letter is unenforceable, such term shall not affect the other terms, but such unenforceable term shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

5.  <u>Force Majeure</u>. No party shall be deemed to be in breach of the engagement letter as a result of any delays or non-performance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

6.  <u>Confidentiality.</u> To the extent that, in connection with this engagement, D&T comes into possession of any confidential information of the Company ("Confidential Information"), D&T shall not disclose such Confidential Information to any third party without the Company's consent, using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care. The Company and the Audit Committee hereby consent to D&T disclosing such Confidential Information (1) as may be required by law or regulation, or to respond to governmental inquiries, provided that D&T will, to the extent permitted by applicable law or regulation, notify the Company of such a disclosure so the Company may seek a protective order or other appropriate remedy and/or waive D&T's compliance with the non-disclosure provisions of this paragraph, and further provided that if, in the absence of such a protective order or other remedy or receipt of such a waiver by the Company, D&T is compelled to disclose such Confidential Information, D&T will only disclose that portion of such Confidential Information that is required to be disclosed, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; (2) to the extent such Confidential Information (i) is or becomes publicly available other than as the result of a disclosure in breach hereof, (ii) becomes available to D&T on a nonconfidential basis from a source that D&T believes is not prohibited from disclosing such Confidential Information to D&T, (iii) is already known by D&T without any obligation of confidentiality with respect thereto, or (iv) is developed by D&T independently of any disclosures made to D&T hereunder; or (3) to contractors providing administrative, infrastructure, and other

support services to D&T and subcontractors providing services in connection with this engagement, in each case, whether located within or outside of the United States, provided that such contractors and subcontractors have agreed to be bound by confidentiality obligations similar to those in this paragraph.

7. Dispute Resolution. Any controversy or claim between the parties arising out of or relating to the engagement letter or this engagement (a "Dispute") shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as Appendix E and made a part hereof.

# DISPUTE RESOLUTION PROVISION

This Appendix E is part of the engagement letter dated August 22, 2017, between Deloitte & Touche LLP and Energy Future Holdings Corp. and approved by the Audit Committee of Energy Future Holdings Corp.

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of Disputes and shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise.

<u>Mediation:</u> All Disputes shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

<u>Arbitration Procedures:</u> If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in Dallas, Texas. The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "Rules").

The arbitration shall be conducted before a panel of three arbitrators. Each of the Company and Deloitte & Touche LLP shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the engagement letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision. Except with respect to the interpretation and enforcement of these arbitration procedures (which shall be governed by the Federal Arbitration Act), the arbitrators shall apply the laws of the State of Texas (without giving effect to its choice of law principles) in connection with the Dispute. The arbitrators shall have no power to award punitive, exemplary or other damages not based on a party's actual damages (and the parties expressly waive their right to receive such damages). The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

<u>Costs:</u> Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.

# Deloitte.

**Deloitte & Touche LLP**
JPMorgan Chase Tower
2200 Ross Avenue
Suite 1600
Dallas, TX 75201-6778
USA

Tel: +1 214 840 7000
www.deloitte.com

November 1, 2017

Ms. Billie Williamson
Chairperson
Audit Committee of Energy Future Holdings Corp.
Energy Plaza, 1601 Bryan Street
Dallas, TX 75201

Mr. Tony Horton
Executive Vice President, Chief Financial Officer, and Treasurer
Energy Future Holdings Corp.
Energy Plaza, 1601 Bryan Street
Dallas, TX 75201

Dear Ms. Williamson and Mr. Horton:

Deloitte & Touche LLP ("D&T" or "we" or "us") is pleased to confirm its engagement to perform a review of the interim financial information of Energy Future Holdings Corp. ("EFH", the "Company" or "you" or "your") for the nine-months ended September 30, 2017 and September 30, 2016. Mr. Kilkenny will be responsible for the services that we perform for the Company hereunder.

The services to be performed by D&T pursuant to this engagement are subject to the terms and conditions set forth herein and in the accompanying appendices. Such terms and conditions shall be effective as of the date of the commencement of such services.

## Review of Interim Financial Information

Our engagement is to perform a review of the Company's condensed interim financial information (the "interim financial information") in accordance with auditing standards generally accepted in the United States of America applicable to review of interim financial information ("interim review standards") ("interim review"). The objective of an interim review is to obtain a basis for reporting whether we are aware of any material modifications that should be made to the interim financial information for it to be in accordance with accounting principles generally accepted in the United States of America ("generally accepted accounting principles").

Appendix A contains a description of the auditor's responsibilities and the scope of an interim review in accordance with the interim review standards.

We expect to issue a written report upon the completion of our interim review. Our ability to issue a report as a result of this engagement and the wording thereof will, of course, be dependent on the facts and circumstances at the date of our report. If, for any reason, we are unable to complete an interim review, we would be precluded from issuing a review report. If we are unable to complete our interim review, or if any report to be issued by D&T as a result of this engagement requires modification, the reasons for this will be discussed with the Audit Committee of Energy Future Holdings Corp (the "Audit Committee") and the Company's management.

## Management's Responsibilities

Appendix B describes management's responsibilities.

## Responsibility of the Audit Committee

As independent auditors of the Company, we acknowledge that the Audit Committee is directly responsible for the appointment, compensation, and oversight of our work, and accordingly, except as otherwise specifically noted, we will report directly to the Audit Committee. You have advised us that the services to be performed under this engagement letter, including, where applicable, the use by D&T of affiliates or related entities as subcontractors in connection with this engagement, have been approved by the Audit Committee in accordance with the Audit Committee's established preapproval policies and procedures.

## Communications with the Audit Committee

Appendix C describes various matters that we are required by the interim review standards to communicate with the Audit Committee and management.

## Other Services

We may agree to perform procedures in connection with the inclusion or incorporation by reference of the interim information in securities offerings documents related to a potential transaction with a potential buyer of the Company (the "Other Services").

## Fees

We estimate our fees for this engagement to be approximately $126,000. Such fees include an estimate for the Other Services. The services being provided under this engagement are incremental to our services for the audit of the 2017 financial statements that are covered in a separate engagement letter dated August 22, 2017. D&T will charge the hourly rates set forth below for the interim review and any additional procedures we agree to perform.

| Personnel Classification | Applicable Hourly Rates |
|---|---|
| Partner/Principal/Director | $ 720 |
| Senior Manager | $ 620 |
| Manager | $ 540 |
| Senior Staff | $ 425 |
| Staff | $ 350 |

Interim review and other procedures described above will be billed as incurred subject to any applicable orders, rules of procedures of the United States Bankruptcy Court of the District of Delaware.

Our estimated fees are based on certain assumptions, including (1) timely and accurate completion of the requested entity participation schedules and additional supporting information, (2) no inefficiencies during the interim review process or changes in scope caused by events that are beyond our control, (3) the effectiveness of internal control over financial reporting throughout the period under interim review, (4) a minimal level of adjustments (recorded or unrecorded), and (5) no changes to the timing or extent of our work plans. We will notify you promptly of any circumstances we encounter that could significantly affect our estimate and discuss with you any additional fees, as necessary.

Notwithstanding anything herein to the contrary, EFH will compensate D&T for invoices submitted in connection with this agreement in accordance with any order entered by the

Bankruptcy Court governing the compensation or reimbursement of fees of parties employed pursuant to section 327(a) of the Bankruptcy Code.

## Restriction on Distribution of D&T's Report

The Company agrees that D&T's report to be issued on the Company's interim financial information will not be included, incorporated by reference, or referred to in any public filings with the Securities and Exchange Commission or any other regulatory body. The Company also agrees that D&T's report will not be used by, or circulated, quoted, disclosed, or distributed to, nor will reference to it be made to, anyone who is not a member of management or of the Audit Committee of the Company.

* * * * *

The parties acknowledge and agree that D&T is being engaged under this engagement letter to provide only the services described herein. Should the Company or the Audit Committee request, and should D&T agree to provide, services (including review services) beyond those described herein, such services will constitute a separate engagement and will be governed by a separate engagement letter.

This engagement letter, including Appendices A through E attached hereto and made a part hereof, constitutes the entire agreement between the parties with respect to this engagement and supersedes any other prior or contemporaneous agreements or understandings between the parties, whether written or oral, relating to this engagement.

If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,

*Deloitte & Touche LLP*

Acknowledged and approved on behalf of

the Audit Committee of Energy Future Holdings Corp.:

By: _____

Title: _____

Date: _____

Accepted and agreed to by Energy Future Holdings Corp.:

By: _____

Title: _____

Date: _____

The parties acknowledge and agree that D&T is being engaged under this engagement letter to provide only the services described herein. Should the Company or the Audit Committee request, and should D&T agree to provide, services (including review services) beyond those described herein, such services will constitute a separate engagement and will be governed by a separate engagement letter.

This engagement letter, including Appendices A through E attached hereto and made a part hereof, constitutes the entire agreement between the parties with respect to this engagement and supersedes any other prior or contemporaneous agreements or understandings between the parties, whether written or oral, relating to this engagement.

If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,

Deloitte & Touche LLP

Acknowledged and approved on behalf of

the Audit Committee of Energy Future Holdings Corp.:

By: _____

Title: _____

Date: _____

Accepted and agreed to by Energy Future Holdings Corp.:

By: _____

Title: _____ E VP/CFO _____

Date: _____ 11/01/17 _____

<strong>APPENDIX A</strong>

## AUDITOR'S RESPONSIBILITIES AND SCOPE OF AN INTERIM REVIEW IN ACCORDANCE WITH THE INTERIM REVIEW STANDARDS

This Appendix A is part of the engagement letter dated November 1, 2017, between Deloitte & Touche LLP and Energy Future Holdings Corp. and approved by the Audit Committee of Energy Future Holdings Corp.

### Auditor's Responsibilities

We are responsible for conducting the interim review in accordance with the interim review standards. An interim review is substantially less in scope than an audit conducted in accordance with auditing standards generally accepted in the United States of America, the objective of which is the expression of an opinion regarding the financial information as a whole. Accordingly, we will not express an opinion on the interim financial information.

### Scope of an Interim Review

An interim review consists principally of performing analytical procedures and making inquiries of persons responsible for financial and accounting matters, and does not contemplate (1) tests of accounting records through inspection, observation, or confirmation; (2) tests of controls to evaluate their effectiveness; (3) the obtainment of corroborating evidence in response to inquiries; or (4) the performance of certain other procedures ordinarily performed in an audit. An interim review may bring to our attention significant findings or issues affecting the interim financial information, but it does not provide assurance that we will become aware of all significant findings or issues that would be identified in an audit.

An interim review includes obtaining sufficient knowledge of the Company's business and internal control, as it relates to the preparation and fair presentation of both annual and interim financial information, to enable us to (1) identify the types of potential material misstatements in the interim financial information and consider the likelihood of their occurrence, and (2) select the inquiries and analytical procedures that will provide us with a basis for reporting whether we are aware of any material modifications that should be made to the interim financial information for it to be in accordance with generally accepted accounting principles.

An interim review is not designed to provide us with a basis for obtaining reasonable assurance on internal control or to identify significant deficiencies or material weaknesses in internal control.

# APPENDIX B

## MANAGEMENT'S RESPONSIBILITIES

This Appendix B is part of the engagement letter dated November 1, 2017, between Deloitte & Touche LLP and Energy Future Holdings Corp. and approved by the Audit Committee of Energy Future Holdings Corp.

### Interim Financial Information

Management is responsible for the preparation, fair presentation, and overall accuracy of the interim financial information in accordance with Financial Accounting Standards Board Accounting Standards Codification 270, *Interim Reporting*, and Article 10 of Securities and Exchange Commission Regulations S-X. In this regard, management has the responsibility for, among other things:

- Selecting and applying the accounting policies

- Designing, implementing, and maintaining effective internal control sufficient to provide a reasonable basis for the preparation and fair presentation of interim financial information in accordance with generally accepted accounting principles

- Identifying and ensuring that the Company complies with the laws and regulations applicable to its activities and informing us of all instances of identified or suspected noncompliance with such laws or regulations

- Providing us with (1) access to all information of which management is aware that is relevant to the preparation and fair presentation of the interim financial information, such as records, documentation, and other matters, (2) additional information that we may request from management for the purpose of our interim review, and (3) unrestricted access to personnel within the Company of whom we determine it necessary to make inquiries

### Management's Representations

We will make specific inquiries of the Company's management about the representations embodied in the interim financial information. In addition, we will request that management provide its independent auditors with the written representations the Company is required to provide to us under the interim review standards. The responses to those inquiries and the written representations of management are part of the basis for our conclusion on whether we are aware of any material modifications that should be made to the interim financial information for it to be in accordance with generally accepted accounting principles. Because of the importance of management's representations, the Company agrees to release and indemnify D&T, its subcontractors, and their respective personnel from all claims, liabilities, and expenses relating to our services under this engagement letter attributable to any knowing misrepresentation by management.

### Process for Obtaining Preapproval of Services

Management is responsible for the coordination of obtaining the preapproval of the Audit Committee, in accordance with the Audit Committee's preapproval process, for any services to be provided by D&T to the Company.

### Independence Matters

In connection with our engagement, D&T, management, and the Audit Committee will assume

certain roles and responsibilities in an effort to assist D&T in maintaining independence. D&T will communicate to its partners, principals, and employees that the Company is an attest client. Management of the Company will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the consolidated financial statements, has policies and procedures in place for the purpose of ensuring that neither the Company nor any such subsidiary or other entity will act to engage D&T or accept from D&T any service that under American Institute of Certified Public Accountants (AICPA) or other applicable rules would impair D&T's independence. All potential services are to be discussed with Mr. Kilkenny.

In connection with the foregoing paragraph, the Company agrees to furnish to D&T and keep D&T updated with respect to a corporate tree that identifies the legal names of the Company's affiliates, as defined in AICPA *Code of Professional Conduct* Interpretation No. 101-18 (e.g., parents, subsidiaries, investors, or investees) ("Company Affiliates"), together with the ownership relationship among such entities. Such information will be maintained in a database accessible by D&T in connection with their compliance with AICPA or other applicable independence rules.

Management will coordinate with D&T to ensure that D&T's independence is not impaired by hiring former or current D&T partners, principals, or professional employees in a key position, as defined in the AICPA *Code of Professional Conduct*. Management of the Company will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the consolidated financial statements, also has policies and procedures in place for purposes of ensuring that D&T's independence will not be impaired by hiring a former or current D&T partner, principal, or professional employee in a key position that would cause a violation of the AICPA *Code of Professional Conduct* or other applicable independence rules. Any employment opportunities with the Company for a former or current D&T partner, principal, or professional employee should be discussed with Mr. Kilkenny (with notice to the Audit Committee) before entering into substantive employment conversations with the former or current D&T partner, principal, or professional employee.

For purposes of the preceding sections entitled "Independence Matters" and "Process for Obtaining Preapproval of Services", "D&T" shall mean Deloitte & Touche LLP and its subsidiaries; Deloitte Touche Tohmatsu Limited, its member firms, the affiliates of Deloitte & Touche LLP, Deloitte Touche Tohmatsu Limited and its member firms; and, in all cases, any successor or assignee.

**APPENDIX C**

# COMMUNICATIONS WITH THE AUDIT COMMITTEE

This Appendix C is part of the engagement letter dated November 1, 2017, between Deloitte & Touche LLP and Energy Future Holdings Corp. and approved by the Audit Committee of Energy Future Holdings Corp.

As required by the interim review standards, we are responsible for communicating to management matters that come to our attention during our interim review that cause us to believe that (1) material modifications should be made to the interim financial information for it to be in accordance with generally accepted accounting principles, or (2) the Company issued the interim financial information before the completion of our interim review. If, in our professional judgment, management does not respond appropriately to our communication within a reasonable period of time, we will communicate such matters to the Audit Committee.

We will communicate directly to the Audit Committee any fraud of which we become aware that involves senior management or results in a material misstatement of the interim financial information. We will communicate to management any fraud perpetrated by lower-level employees of which we become aware that does not cause a material misstatement of the interim financial information; however, we will not communicate such matters to the Audit Committee, unless otherwise directed by the Audit Committee.

We will also communicate to the Audit Committee matters that have come to our attention during the course of our interim review involving the Company's noncompliance with laws and regulations whose effects should be considered when preparing interim financial information, other than when such matters are clearly inconsequential.

In addition, we will also communicate to management and the Audit Committee any significant deficiencies or material weaknesses in internal control (as defined in the interim review standards) as it relates to the preparation and fair presentation of annual and interim financial information that we identified during our interim review.

Interim review standards require that, if, in our professional judgment, we determine that any of the matters described in AICPA AU-C 260, *The Auditor's Communication with Those Charged with Governance,* as they relate to the interim financial information have been identified during our review, we will communicate such matters to the Audit Committee.

<strong>APPENDIX D</strong>

## GENERAL BUSINESS TERMS

This Appendix D is part of the engagement letter to which these terms are attached (the engagement letter, including its appendices, the "engagement letter") dated November 1, 2017, between Deloitte & Touche LLP and Energy Future Holdings Corp. and approved by the Audit Committee of Energy Future Holdings Corp.

1.  <u>Independent Contractor.</u> D&T is an independent contractor and D&T is not, and will not be considered to be, an agent, partner, fiduciary, or representative of the Company or the Audit Committee.

2.  <u>Survival.</u> The agreements and undertakings of the Company and the Audit Committee contained in the engagement letter will survive the completion or termination of this engagement.

3.  <u>Assignment and Subcontracting.</u> Except as provided below, no party may assign any of its rights or obligations (including, without limitation, interests or claims) relating to this engagement without the prior written consent of the other parties. The Company and the Audit Committee hereby consent to D&T subcontracting a portion of its services under this engagement to any affiliate or related entity, whether located within or outside of the United States. Professional services performed hereunder by any of D&T's affiliates or related entities shall be invoiced as professional fees, and any related expenses shall be invoiced as expenses, unless otherwise agreed.

4.  <u>Severability.</u> If any term of the engagement letter is unenforceable, such term shall not affect the other terms, but such unenforceable term shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

5.  <u>Force Majeure.</u> No party shall be deemed to be in breach of the engagement letter as a result of any delays or non-performance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

6.  <u>Confidentiality.</u> To the extent that, in connection with this engagement, D&T comes into possession of any confidential information of the Company ("Confidential Information"), D&T shall not disclose such Confidential Information to any third party without the Company's consent, using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care. The Company and the Audit Committee hereby consent to D&T disclosing such Confidential Information (1) as may be required by law or regulation, or to respond to governmental inquiries, provided that D&T will, to the extent permitted by applicable law or regulation, notify the Company of such a disclosure so the Company may seek a protective order or other appropriate remedy and/or waive D&T's compliance with the non-disclosure provisions of this paragraph, and further provided that if, in the absence of such a protective order or other remedy or receipt of such a waiver by the Company, D&T is compelled to disclose such Confidential Information, D&T will only disclose that portion of such Confidential Information that is required to be disclosed, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; (2) to the extent such Confidential Information (i) is or becomes publicly available other than as the result of a disclosure in breach hereof, (ii) becomes available to D&T on a nonconfidential basis from a source that D&T believes is not prohibited from disclosing such Confidential Information to D&T, (iii) is already known by D&T without any obligation of confidentiality with respect thereto, or (iv) is developed by D&T independently of any disclosures made to

D&T hereunder; or (3) to contractors providing administrative, infrastructure, and other support services to D&T and subcontractors providing services in connection with this engagement, in each case, whether located within or outside of the United States, provided that such contractors and subcontractors have agreed to be bound by confidentiality obligations similar to those in this paragraph.

7. <u>Dispute Resolution.</u> Any controversy or claim between the parties arising out of or relating to the engagement letter or this engagement (a "Dispute") shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as Appendix E and made a part hereof.

**APPENDIX E**

## DISPUTE RESOLUTION PROVISION

This Appendix E is part of the engagement letter dated November 1, 2017, between Deloitte & Touche LLP and Energy Future Holdings Corp. and approved by the Audit Committee of Energy Future Holdings Corp.

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of Disputes and shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise.

<u>Mediation:</u> All Disputes shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

<u>Arbitration Procedures:</u> If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in Dallas, Texas. The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "Rules").

The arbitration shall be conducted before a panel of three arbitrators. Each of the Company and Deloitte & Touche LLP shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the engagement letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision. Except with respect to the interpretation and enforcement of these arbitration procedures (which shall be governed by the Federal Arbitration Act), the arbitrators shall apply the laws of the State of Texas (without giving effect to its choice of law principles) in connection with the Dispute. The arbitrators shall have no power to award punitive, exemplary or other damages not based on a party's actual damages (and the parties expressly waive their right to receive such damages). The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

<u>Costs:</u> Each party shall bear its own costs in both the mediation and the arbitration; however the parties shall share the fees and expenses of both the mediators and the arbitrators equally.