## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date (Requested):** **February 16, 2018 at 11:00 a.m.** |
| | **Objection Deadline (Requested):** **February 12, 2018 at 4:00 p.m.** |

## MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT BETWEEN THE DEBTORS AND SEMPRA AND APPROVING THE AGREED AMENDMENT TO THE MERGER AGREEMENT

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), approving the settlement by and among (a) the Debtors, (b) Sempra Energy ("Sempra"); and (c) Sempra Texas Merger Sub I, Inc. (formerly known as Power Play Merger Sub I, Inc.) ("Merger Sub" and together with the Debtors and Sempra, the "Parties"), substantially in the form attached hereto as **Exhibit 1** to **Exhibit A** (the "Settlement Agreement"), and approving the agreed upon amendment (the "Merger Agreement Amendment"), attached hereto as **Exhibit 2** to **Exhibit A**, to the Agreement and Plan of Merger between Sempra, Merger Sub, Energy Future Intermediate Holding Company LLC, and Energy

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

Future Holdings Corp. dated as of August 21, 2017 (the "Merger Agreement"). In support of this Motion, the Debtors submit the *Declaration of Andrew M. Wright in Support of the Motion of Energy Future Holdings Corp.*, et al., *for Entry of an Order Approving the Settlement Between the Debtors and Sempra and Approving the Agreed Amendment to the Merger Agreement* (the "Wright Declaration"), attached hereto as **Exhibit B**. In further support of this Motion, the Debtors respectfully submit as follows:[2]

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.    This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[2] Capitalized terms used but not defined herein shall have the full meaning set forth in the Plan (as defined herein).

RLF1 18839473v.1

## Relief Requested

4.    By this Motion, the Debtors seek entry of the Order approving and authorizing entry into, and performance under the Settlement Agreement which compromises certain disputes between the Parties with respect to their rights and obligations under the Merger Agreement, the PSA (defined below), the Oncor TSA (defined below), and other transaction documents, specifically with respect to:

- the dividend declared by Oncor Electric Delivery Company LLC ("Oncor") on October 25, 2017 (the "Q3 2017 Dividend");

- any dividend that may be declared thereafter, including in respect of amounts earned by Oncor during the period starting as of October 1, 2017 and ending on December 31, 2017 (the "Q4 2017 Dividend") (any such dividends, including the Q3 2017 Dividend and Q4 2017 Dividend, the "Dividends");

- the disposition by Oncor Electric Delivery Holdings Company LLC ("OEDH") of those Dividends, Key Regulatory Term 45 (titled "Equity Commitment"), attached as Exhibit D to the Merger Agreement ("Key Regulatory Term 45"); and

- certain claims EFH may have against Oncor's immediate parent, Oncor Electric Delivery Holdings Company LLC ("OEDH") and/or Oncor under the Oncor TSA with respect to tax years 2016, 2017, and 2018 (collectively, the "TSA Claims").

5.    The Debtors also seek approval of the Merger Agreement Amendment, which is required to implement the agreement of the Parties under the Settlement Agreement.

## Background

### A.    The Chapter 11 Cases and Path to Proposed Sempra Transaction.

6.    On April 29, 2014, the Debtors filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases

RLF1 18839473v.1

[D.I. 849]. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of EFH Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. on October 27, 2014 [D.I. 2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

7.    On August 21, 2017, after two confirmed plans failed to obtain regulatory approval by the Public Utility Commission of Texas (the "PUCT"), the Debtors entered into the Merger Agreement with Sempra and Merger Sub, whereby Sempra would acquire EFH's indirect 80.03% ownership interest in Oncor. The transaction would be implemented pursuant to the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (as amended or modified from time to time in accordance with its terms, the "Plan"). Also on August 21, 2017, the Debtors entered into the Plan Support Agreement ("PSA") with Sempra and Elliott Associates, L.P., Elliott International, L.P., the Liverpool Limited Partnership, and Gatwick Securities LLC (collectively, the "Elliott Funds"), whereby, among other things, the parties agreed to support the Plan.

8.    On August 23, 2017, the Debtors filed the Plan and a disclosure statement with respect to the Plan (the "Disclosure Statement"). On September 6, 2017, the Court approved the Disclosure Statement and the Debtors' entry into and performance under the Merger Agreement and PSA. Solicitation versions of the Plan and Disclosure Statement were then filed by the Debtors on September 11, 2017 [D.I. 11887 and 11889].

RLF1 18839473v.1

B.    **Clear Path to Consummation of the Sempra Transaction and Chapter 11 Exit**.

9.    On October 5, 2017, Oncor and Sempra submitted their joint regulatory approval application to the PUCT (the "PUCT Application") regarding the change of control of Oncor contemplated by the Merger Agreement. On October 13, 2017, in an unrelated rate case before the PUCT involving Oncor, the PUCT issued an order that allowed for, among other things, a change to Oncor's existing debt to equity ratio to 42.5% equity and 57.5% long-term debt (the "Modified Debt/Equity Ratio").

10.    In early January, Sempra, Oncor, and several key intervenors, including the PUCT Staff, the Office of Public Utility Counsel, the Steering Committee of Cities Served by Oncor, the Texas Industrial Energy Consumers, the Texas Energy Association for Marketers, and the Alliance for Retail Markets, executed a stipulation reflecting agreement on the terms of the PUCT Application. *Joint Motion to Admit Revised Stipulation, Affidavit of Notice, and Supporting Testimony into Evidence and for Approval of Proposed Order,* PUCT Docket No. 47675 (filed January 5, 2018) (the "Stipulation"). This was a significant development, particularly because a number of these parties had objected to previous change of control applications filed in connection with the Debtors' chapter 11 cases. Following entry into the Stipulation, Sempra and Oncor continued to engage in constructive settlement negotiations with the remaining intervenors, and Sempra recently announced that *all* intervenors now support the PUCT Application and have signed the stipulation. Given the unanimous settlement with all relevant parties, the Debtors expect the PUCT to consider approval of the PUCT Application in the near term.

5

11.     Additionally, by late January 2018, Sempra closed on the debt and equity financings necessary to consummate the Merger. *See* Sempra Energy, Form 8-Ks (January 12, 2018, January 17, 2018).

12.     Finally, on January 25, 2018, the Bankruptcy Court entered an order scheduling Plan confirmation for February 26, 2018 and February 27, 2018. **As a result, the Debtors and Sempra are poised to obtain regulatory *and* Bankruptcy Court approval of a comprehensive Merger transaction that will, at long last, allow the Debtors to emerge from chapter 11.**

**C.     Overview of Key Dividend Issues.**

13.     Pursuant to the Merger Agreement, the Debtors and Sempra agreed that any Q4 2017 Dividend would be shared 75%/25% between the Debtors' estates and for the benefit of Sempra, respectively.    Importantly, however, the Merger Agreement does not explicitly reference the Q3 2017 Dividend. The Debtors expected, however, that if the Q3 2017 Dividend was paid in a manner and timeline consistent with historical practices, it would likely have been included in EFIH's cash on hand as of the projected Plan effective date, and, by extension, ultimately available for distribution to EFIH creditors.

14.     Separately, the Merger Agreement also included as Exhibit D thereto, certain "Key Regulatory Terms" that were required to be included in the PUCT Application, including Key Regulatory Term 45, which provided that Sempra would commit to "work in good faith with … Oncor's other members so that, as promptly as practicable and in no event later than 180 days after closing of the transaction, an equity investment is made in Oncor sufficient to achieve [the Modified Debt/Equity Ratio]." Merger Agreement at Ex. D, ¶ 45.

6

15.     Following entry of the PUCT order allowing for the Modified Debt/Equity Ratio, in late October 2017, Oncor declared the Q3 2017 Dividend, but provided that such dividend would only be paid if additional equity contributions are made to Oncor from its members in the total amount of approximately $250 million on or before the date of the closing of the Merger Agreement, in which case the Debtors expected that Oncor would likely apply such retained earnings towards the Modified Debt/Equity Ratio. *See* Oncor Electric Delivery Company LLC, Quarterly Report (Form 10-Q) (Oct. 27, 2017).

16.     As a result, certain disputes arose among the Debtors, Elliott, and Sempra with respect to their rights and obligations under the Merger Agreement, the PSA, Key Regulatory Term 45, and other transaction documents relating to, among other things: (a) the declaration— but nonpayment—of the Q3 2017 Dividend; (b) the potential non-payment of the Q4 2017 Dividend; and (c) whether Sempra was required to make an equity investment in Oncor at closing of the Merger Agreement in an amount of approximately $250 million (which would satisfy the condition to payment of the Q3 2017 Dividend, thereby enabling Oncor to pay the Q3 2017 Dividend and, potentially, declare and pay the Q4 2017 Dividend).

**D.     The Oncor TSA.**

17.     In connection with the ring-fencing measures required as part of the 2007 LBO, EFH, Oncor, and OEDH executed a tax sharing agreement, known as the Oncor TSA. At a high level, under the Oncor TSA, each of Oncor and OEDH (a) must calculate its taxable income and determine how much tax it would be required to pay if it were a standalone corporation and (b) pay an amount equal to such hypothetical tax liability to the parties specified in the agreement. EFIH is not a party to the Oncor TSA. EFH assumed the Oncor TSA on March 13, 2017 [D.I. 10998] (the "Oncor TSA Order") and made a cure payment at that time (the "Cure

<u>Amount</u>") (with the terms of the Oncor TSA Order contemplating that such Cure Amount would be adjusted based on Oncor's actual or projected taxable income or loss).

18.    There are two key facts related to the application of the Oncor TSA that drive the Settlement Agreement. *First*, because Oncor and OEDH are obligated to make payments to EFH based on *estimated* taxable income, it is often the case that once the final tax calculations are made, there is a need for a true-up payment. This true-up payment could "swing" either way—in other words, the true-up payment may require a further payment from Oncor or OEDH to EFH (*i.e.*, if Oncor or OEDH underestimated its estimated tax liability) *or* EFH may owe Oncor or OEDH a refund (*i.e.*, if Oncor or OEDH overestimated its estimated tax liability). *Second*, for any particular year's taxable income, the Oncor TSA provides that (a) quarterly payments are made in the current year and (b) true-up payments are made in the following year.[3]

19.    These two key issues directly affect Plan distributions—payments from Oncor and OEDH to EFH potentially increase cash available at EFH for distribution to creditors, while payments from EFH to Oncor and OEDH potentially decrease cash available at EFH for distribution to creditors.  Moreover, whether such payments *actually* affect distributable cash depends on the timing of such payments vis-à-vis the closing of the Merger (*i.e.*, whether it is EFH or Reorganized EFH that bears the burden and benefits of such payments).

20.    Specifically, the Settlement Agreement addresses (and resolves) certain timing and payment obligation considerations related to Claims Oncor and/or OEDH may have EFH (and, after the Merger closing, Reorganized EFH) and, conversely, Claims EFH (and, after the Merger closing, Reorganized EFH) may have against Oncor and/or OEDH, in connection with tax years 2016, 2017, and 2018.

---

[3] This timing is dictated by when a corporation would make payments to the IRS under the Internal Revenue Code.

RLF1 18839473v.1

21.    The Debtors and Sempra have executed the Settlement Agreement and believe the proposed Settlement Agreement not only provides additional distributable value to EFH and EFIH creditors that may not have otherwise been available to such creditors, but also prevents value-destructive litigation related to the Parties' disputes while providing finality and certainty to the Debtors, their creditors, and Sempra with respect to Merger Agreement and Oncor TSA obligations.

### The Settlement Agreement[4]

22.    Under the terms of the Settlement Agreement, the Parties agree that:

    i.    ***Settlement Payment and Adjustments***. Sempra shall pay, or cause to be paid, (a) $27.25 million to EFIH (the "EFIH Settlement Payment") and (b) $3.75 million to EFH (the "EFH Settlement Payment" and, together with the EFIH Settlement Payment, the "Settlement Payment") at closing of the Merger Agreement, subject to certain potential adjustments.

    ii.    ***Use of Dividend and EFH-OEDH 2017 TSA Proceeds***. Subject to the Merger Closing occurring, if (A) Oncor has paid the Q3 2017 Dividend or declares and/or pays a Q4 2017 Dividend or any other dividend on or prior to the Merger Closing (other than any dividend declared and/or paid prior to July 1, 2017) and/or (B) OEDH makes any payments with respect to the EFH-OEDH 2017 TSA Claims,[5] then Sempra, as the indirect owner of Reorganized EFH, Reorganized EFIH, and OEDH, shall be entitled to retain the benefit of such dividends or payments, as applicable. Alternatively, Sempra may distribute such dividends or payments to EFIH or EFH, as applicable, for distribution to creditors and to satisfy its obligation to make the Settlement Payment, in which case the applicable Settlement Payment will be reduced on a dollar-for-dollar basis.

    iii.    ***2016 Tax Year***. EFH will pay Oncor approximately $19 million on account of tax year 2016.[6]

---

[4] The summary contained in this Motion is qualified in its entirety by the provisions of the Settlement Agreement. To the extent anything in this Motion is inconsistent with the Settlement Agreement, the terms of the Settlement Agreement shall control. Capitalized terms used but not defined in this section shall have the meanings ascribed to them in the Settlement Agreement.

[5] The EFH-OEDH 2017 TSA Claims are a subset of the TSA Claims related to payments OEDH owes EFH in connection with 2017.

[6] This amount reflects an adjustment of the Cure Amount based on actual taxable income and loss for 2016.

    iv.   ***2017 Tax Year and 2018 Tax Year.*** EFH and its estate will not be obligated to make any payment to Oncor or OEDH under the Oncor TSA in connection with tax years 2017 or 2018 (and, conversely, Oncor and OEDH will not be obligated to make any payment to EFH and its estate for such tax years). If Oncor or OEDH does, in fact, make payments related to tax years 2017 and 2018, then such payments will be for the benefit of Reorganized EFH. In other words, Reorganized EFH bears the benefits and burdens for tax years 2017 and 2018.

23.    Under the Settlement Agreement, the Parties have also agreed to mutual releases of claims and causes of action relating to the Q3 2017 Dividend, the Q4 2017 Dividend, or any other dividend with respect to any periods prior to or after the closing of the Merger Agreement, the Modified Debt/Equity Ratio, Key Regulatory Term 45, and the TSA Claims. In addition, the Settlement Agreement provides that the Merger Agreement shall be amended pursuant to the Merger Agreement Amendment to implement certain terms of the settlement.

**Basis for Relief**

**I.    The Settlement Agreement Satisfies Section 363(b)(1) of the Bankruptcy Code.**

24.    Section 363(b)(1) of the Bankruptcy Code provides that a bankruptcy court, after notice and a hearing, may authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In the Third Circuit, courts have authorized a debtor's use of property of the estate outside the ordinary course of business when such use has a "sound business purpose" and is proposed in good faith. *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991). Courts also require adequate and reasonable notice to be provided to all interested parties and that fair and reasonable consideration be provided in exchange for the use of estate assets. *See In re Exaeris, Inc.*, 380 B.R. 741 (Bankr. D. Del. 2008); *In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332749, at *7 (D. Del. May 20, 2002); *Del. & Hudson,* 124 B.R. at 176.

10

25.    The Debtors submit that the Settlement Agreement satisfies section 363(b)(1) of the Bankruptcy Code. Specifically, the proposed Settlement Agreement was negotiated at arm's length and in good faith.    The Settlement Agreement would, if approved, resolve the disagreements among the Parties relating to the Dividends and TSA Claims at this critical juncture in these Chapter 11 cases. *First*, absent the Settlement Agreement, there is significant risk that Oncor—and after closing, Sempra—would retain all of the value related to any actual or potential Dividends, and EFH may not receive certain payments under the Oncor TSA from OEDH (which relies on Oncor dividends to make such Oncor TSA payments).    Under the Settlement Agreement, Sempra is providing a *guaranteed* payment of $31 million to the EFH and EFIH estates (subject to potential adjustment in the event Oncor actually pays the Q3 2017 Dividend or Q4 2017 Dividend or OEDH makes any payment with respect to the EFH-OEDH 2017 TSA Claims on or prior to the Merger Closing).    Further, the Settlement Agreement avoids the need for discovery and potentially protracted litigation relating to the Dividends and Key Regulatory Term 45, all of which the Debtors believe could delay or disrupt consummation of the Merger, resulting in significantly increased costs to the estates.

26.    *Second*, absent the Settlement Agreement, there would likely be litigation between, at minimum, the Debtors and Sempra regarding the TSA Claims—more specifically, whether it is EFH or Reorganized EFH that bears the burdens and benefits with respect to obligations and refunds associated with tax years 2016, 2017, and 2018. Such litigation could conceivably extend into the post-Effective Date period (and the fees incurred in connection with such litigation would reduce distributable value available to creditors).    In this respect, the Settlement Agreement provides certainty and finality for *all* stakeholders by ensuring there is no material, costly litigation that could delay emergence or continue post-emergence.

RLF1 18839473v.1

27.    With an approximate $50 million in monthly interest burn, the Debtors and their

stakeholders benefit by eliminating any potential delays in confirming and consummating the

Plan and Merger Agreement.    Accordingly, the Debtors respectfully request that the Court

approve the Settlement Agreement.

**II.    The Settlement Agreement is Fair and in the Best Interests of the Debtors' Estates, Is a Proper Exercise of the Debtors' Business Judgment, and Should Be Approved.**

28.    Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a
> hearing, the court may approve a compromise or settlement.
> Notice shall be given to creditors, the United States trustee, . . . and
> indenture trustee as provided in Rule 2002 and to any other entity
> as the court may direct.

Fed. R. Bankr. P. 9019(a).

29.    The Settlement Agreement is subject to approval by the Court under Bankruptcy

Rule 9019(a).    Settlements and compromises are tools often utilized to expedite case

administration and to reduce unnecessary administrative costs; as such, they are favored in

bankruptcy. *See In re Nutraquest, Inc.,* 434 F.3d 639, 646 (3d Cir. 2006) ("It is axiomatic that

settlement will almost always reduce the complexity and inconvenience of litigation.");

*In re Key3Media Grp., Inc.,* 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006).    Pursuant to

Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing,

approve a compromise or settlement so long as the proposed compromise is fair, reasonable, and

in the best interest of the estate. *See In re Marvel Entm't Grp., Inc.,* 222 B.R. 243, 249 (D. Del

1998) ("The ultimate inquiry [is] whether the compromise is fair, reasonable, and in the interest

of the estate.'" (citation and internal quotation marks omitted)); *In re Nw. Corp.,* 2008 WL

2704341, at *6 (Bankr. D. Del. July 10, 2008) ("The bankruptcy court must determine whether

the compromise is fair, reasonable, and in the best interests of the estate." (citation omitted));

*In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005) ("[T]he bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable.").

30.     A proposed compromise need not be the best result that a debtor could have achieved, but only must fall within the "reasonable range of litigation possibilities." *In re Energy Corp.*, 886 F.2d 921, 929 (7th Cir. 1989); *In re Sea Containers Ltd.*, 2008 WL 4296562, at *5 (Bankr. D. Del. Sept. 19, 2008); *Key3Media Grp.*, 2006 WL 2842462, at *3.

31.     The Third Circuit has adopted a balancing test to determine whether to approve a particular compromise or settlement as fair and equitable. Courts examine: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Nutraquest*, 434 F.3d at 643; *see also Key3Media*, 336 B.R. at 93 (when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" (internal citations omitted)).

32.     Based on the above factors, the Debtors believe the Settlement Agreement represents a fair and reasonable compromise that is in the best interests of the Debtors' estates. The Debtors believe that any continued dispute between the Debtors and Sempra with respect to the issues settled by the Settlement Agreement may distract from efforts to consummate the transactions contemplated by the Merger Agreement, and, as stated above, implicates the approximate $50 million monthly interest burn and distributable cash available for creditors.[7]

---

[7] Among other potential disputes, Sempra believes that Key Regulatory Term 45 was only a means to get the PUCT Staff on board with the proposed transaction, and that the Debtors are not able to enforce the provision other than for that purpose. It is Sempra's position that the Debtors cannot pursue claims against Sempra after the Merger closing because the Plan contemplates the Debtors providing releases to Sempra.

RLF1 18839473v.1

The Settlement Agreement adequately resolves the disputes between the Parties and guarantees the EFH and EFIH estates the $31 million Settlement Payment, thereby enhancing value for the benefit of creditors.   Absent approval of the Settlement Agreement, the Debtors and their stakeholders risk receiving no value with respect to the Dividends and incur significant litigation risk related to the TSA Claims.   The Debtors respectfully request that the Court approve the Settlement Agreement pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code.

### Notice

33.     The Debtors shall provide notice of the Motion on the date hereof via overnight delivery to:  (a) the U.S. Trustee; (b) counsel to the EFH Creditors' Committee; (c) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (d) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (e) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (f) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; and (ii) the 10.0% EFIH senior secured notes due 2020; (g) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (f); (h) the agent for the TCEH

debtor-in-possession financing facility and counsel thereto; (i) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (j) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (k) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (l) Oncor Electric Delivery Company LLC and counsel thereto; (m) the Securities and Exchange Commission; (n) the Internal Revenue Service; (o) the Office of the United States Attorney for the District of Delaware; (p) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (q) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (r) the Elliott Funds; and (s) Sempra Energy.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

34.     No prior request for the relief sought in this Motion has been made to this or any other court.

RLF1 18839473v.1

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: February 2, 2018
        Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:     (302) 651-7701
Email:         collins@rlf.com
             defranceschi@rlf.com
             madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email:         edward.sassower@kirkland.com
             stephen.hessler@kirkland.com
             brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted pro hac vice)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Email:         james.sprayregen@kirkland.com
             marc.kieselstein@kirkland.com
             chad.husnick@kirkland.com
             steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*