**Robert J. Miller**
**425 Dockside Dr, #706**
**Naples, FL  34110**

Writer's Email:  miller.rj.1@gmail.com
Writer's phone number:  513-310-4501

February 6, 2018

The Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, DE 19801

**Via E-mail and U.S. Mail**

Re: *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS)

Dear Judge Sontchi:

I write on behalf of the 'little people' holders of the Energy Futures Intermediate Holdings 9.75% Unexchanged notes, who are widows on a fixed income, kids hoping for a college education and working class Americans seeking a voice amid this crowded field of high priced lawyers and advisors.  The US Trustee's counsel, Mr. Richard Schepacarter, recognized these folks needed representation and reserved a spot for them on the UCC.  However, Mr. Husnick as Debtor's counsel has ignored our pleas for equity and justice to remedy their stripped 1st lien Unexchanged Bonds and pay them at par plus pre-petition accrued interest which would be in the aggregate about $2 million.  More details follow below.

Further, in connection with the excessive professional fees assessed to the Estate which have greatly reduced and threaten to reduce further the ultimate recovery due the creditors, we respectfully request that you expand the Fee Committee's charge to include evaluating these fees and expenses in light of the results achieved.  This is how the commercial world works—when litigation and transaction results fall short, the client demands that the lawyers and advisors

'help out' and reduce fees. Further, I request that you use your equitable authority to enhance recovery for the small investors as noted.

The recent exchanges regarding the appointment of a new person to the Fee Committee are illustrative as your Docket is now littered with excessive, low value-added papers. And these filings are no doubt just the tip of the billing iceberg as multiple negotiating sessions, meetings and phone calls preceded these filings. A major thrust of Mr. Husnick's paper seems to be restricting access to the Billings and trying to dis-incentivize the new member by reducing his pay. Of course, light and air are great disinfectants and the stakeholders should be able to examine fully these Billings with only redactions permitted where clearly needed to protect legal privilege. The Debtor's counsel is clearly concerned the Wall Street Journal, DebtWire or other substantial publications might expose these outrageous charges and upset the system which this small club presently enjoys.

Throughout this process there has been virtually no consideration paid to handling this matter in a cost-effective or efficient manner. Large teams of lawyers regularly overflow your courtroom where their entrance is reminiscent of the Alabama football team taking the field (only eleven play at a time but there are so many players they have to repeat player numbers). In your court only a small handful of lawyers actual speak while many are there to 'learn' and others' principal duty seem to be getting bottled water (these water guys and ladies often bill $800+/ hour). This staffing is often repeated in large meetings. Clients in the 'real' world stop paying for this overstaffing over two decades ago and these creditors should not be stuck with these charges here.

Unlike some very large investors here which acquired a substantial position in their bonds at a deep discount, my constituents of smaller bondholders owning CUSIP 292681AA1 Energy Future Intermediate Holding Co. Unexchanged Bonds acquired their 1st lien bonds years ago at about PAR. As noted, total value of the Unexchanged Bonds is roughly $2 million, less than half of the reported annual profits per partner of Mr. Husnick's law firm, likely less than the fees the Estate incurred on just the recent Fee Committee issue and about 1-2 days ongoing expenses for this case.

I'd like to share the stories of a couple of these individual bondholders. One example is a 60+ age woman (I will call her Linda—not her real name to protect

her privacy) working as a home healthcare aid earning slightly above minimum wage . She awakens early every work day to help elderly patients with their daily routines such as bathing, dressing and grooming. Linda is exhausted at days end and is counting on recovering her principal and accrued interest as she bought a 1ST lien bond to help in her in retirement someday soon. Second are parents that bought a bond for a child's college fund.  Due to a self-serving, non responsive EFH CFO and devious advisors, they now struggle to pay Jake's (another pseudonym) ever rising college tuition and college expenses while trying to save for their own retirement.

Why would these types of folks acquire these bonds?  Because when they acquired the 1st lien Unexchanged Bonds they were secured bonds with a 1st lien on Oncor stock which was a regulated utility.  Net, these bonds should have been safe from any loss of principal given their 1st lien secured interest, and they would be safe excepting the EFH CFO and advisors taking advantage of these little people with an exchange which did not allow them to participate.

These small investors saw their 1st lien stripped when they were unable to participate as (QIB) Qualified Institutional Buyers in an exchange offer where the large sophisticated investors were able to exchange their bonds for other secured bonds.  Those able to exchange have now been paid off in full plus receiving make whole and both pre-petition and post-petition interest.  The inequity of this situation is clear to all.  Pleas early on to EFH (Paul Keglevic, CFO, who prior to helping take EFH south had a similar experience taking advantage of small investors at Enron) went unanswered.  Keglevic knowingly took advantage of smaller investors without offering any offsetting compensation.  His sinister plan was to bolster EFH while taking advantage of creditors, and particularly those 'little people' who had their 1st lien stripped.  See Moody's investor Service Global Research Report dated 26 February 2013 on Energy Futures Intermediate Holdings (EFIH).

Despite the Inequitable and unfair treatment of the owners of the Unexchanged Bond, for a brief time they appeared to be recovering at least Par and pre-petition interest.  As did others, they relied on advice of their legal and financial advisors that the lower court rulings on make whole would be affirmed and they were entitled to a good recovery.  As we and you know now, with the Third Circuit

rejecting and chastising EFH's credit machinations (which history has shown were not successful broadly) and the Unexchanged Bond values fell precipitously.

Certainly the advice rendered to these creditors was made in good faith but the results show it was the wrong advice and equally concerning to this small group of creditors is that there was no thought through backup or fallback plan in place to protect their interests in light of what actually happened when the Third Circuit reversed. This is the exact type of circumstances that leads influential commercial clients to ask for and obtain fee reductions.

Requests to Mr. Husnick on behalf of the small Unexchanged Bond investors have so far been unsuccessful, while the firm meter continues to whirl on at a furious, excessive pace. Beyond the fees, the professional expenses in the case are also excessive including 5-star hotel stays and Michelin-rated restaurant fine dining meals. Fortunately, there are significant hold backs in this matter which are available to help do justice and right the wrongs inflicted on this modest group of individual Unexchanged Bond owners and other creditors by reducing the outrageous fees and expenses that have been billed and which at bottom are the creditors' money. I understand some professionals have made Fee concessions and all must do so.

We respectfully request you to exercise your equitable authority and power to ensure this small cadre of individual Unexchanged Bond Investors which were wronged and taken advantage of when their 1st lien was stripped away either have their 1st lien reinstated or be paid out at par plus accrued pre-petition interest. Your Honor, these 'little people' investors desperately need your help.

Very truly yours,


/s/ROBERT J. MILLER
For Kurt Altman EFH/EFIH Unsecured Creditors Committee (UCC) member


Cc  Richard L. Schepacarter, U.S. Trustee Trial Attorney