## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 12571** |

## CERTIFICATION OF NO OBJECTION REGARDING "MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT BETWEEN THE DEBTORS AND SEMPRA AND APPROVING THE AGREED AMENDMENT TO THE MERGER AGREEMENT" [D.I. 12571]

The undersigned hereby certifies that, as of the date hereof, he has received no answer, objection or any other responsive pleading to the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Settlement Between the Debtors and Sempra and Approving the Agreed Amendment to the Merger Agreement* [D.I. 12571] (the "Motion") filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"), with the United States Bankruptcy Court for the District of Delaware (the "Court") on February 2, 2018.[2]

The undersigned further certifies that he has reviewed the Court's docket in this case and no answer, objection or other responsive pleading to the Motion appears thereon. Pursuant to the *Order Shortening Notice and Setting Response Deadline for the Motion of Energy Future*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] On February 2, 2018, the Debtors also filed the *Declaration of Andrew M. Wright in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Settlement Between the Debtors and Sempra and Approving the Agreed Amendment to the Merger Agreement* [D.I. 12571; Ex. B] in connection with, and in support of, the Motion.

*Holdings Corp., et al., for Entry of an Order Approving the Settlement Between the Debtors and*

*Sempra and Approving the Agreed Amendment to the Merger Agreement,* dated February 5, 2018

[D.I. 12575], responses to the Motion were to be filed and served no later than 4:00 p.m. (Eastern

Standard Time) on February 12, 2018.

The Debtors therefore respectfully request that the proposed form of order attached

hereto as **Exhibit A**, which is materially in the same form filed with the Motion[3], be entered at

the earliest convenience of the Court.


[*Remainder of page intentionally left blank.*]

---

[3] The Settlement Agreement attached as "Exhibit 1" to the proposed order has been re-dated to February 5, 2018 and is now fully-executed, however, is otherwise unchanged from the form of Settlement Agreement originally filed with the Motion on February 2, 2018.

RLF1 18879219v.1

Dated: February 13, 2018
Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:          collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com
                aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          james.sprayregen@kirkland.com
                marc.kieselstein@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A

## Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 12571** |

## ORDER APPROVING THE (I) SETTLEMENT BETWEEN THE DEBTORS AND SEMPRA AND (II) THE AGREED AMENDMENT TO THE MERGER AGREEMENT

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a), approving the Settlement Agreement between the Debtors and Sempra (the "Parties") substantially in the form attached hereto as **Exhibit 1**, and approving the agreed amendment to the Merger Agreement, attached hereto as **Exhibit 2**, all as set forth more fully in the Motion; and upon the Wright Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors,

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion, the Wright Declaration and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Settlement Agreement, attached hereto as **Exhibit 1**, is hereby approved.

3.      The Merger Agreement Amendment, attached hereto as **Exhibit 2**, is hereby approved.

4.      This Order (including the Settlement Agreement and Merger Agreement Amendment attached hereto and incorporated herein by reference) is and shall be final, binding, and effective on all parties-in-interest in the Debtors' chapter 11 cases, *provided*, *that* the Merger is consummated.

5.      The Parties are authorized to enter into, execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers and to take any and all actions necessary or appropriate to immediately continue and fully implement the Settlement Agreement and Merger Agreement Amendment in accordance with the terms, conditions, agreements, and releases set forth therein, all of which are hereby approved in their entirety.

2

6.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

8.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: February _____, 2018
          Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

3

**EXHIBIT 1** to **EXHIBIT A**

**Settlement Agreement**

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "**Agreement**") is made and entered into as of ~~January~~ February 5, 2018, by and among the following parties (each a "**Party**," and collectively, the "**Parties**"):

(i)     Energy Future Holdings Corp., a Texas corporation ("**EFH**");

(ii)    Energy Future Intermediate Holding Company LLC ("**EFIH**"), a Delaware limited liability company and a direct, wholly-owned subsidiary of EFH;

(iii)   EFIH Finance Inc., a Delaware corporation and a direct, wholly-owned subsidiary of EFIH; ("**EFIH Finance**," and together with EFIH, the "**EFIH Debtors**");

(iv)    each of EFH's other direct and indirect subsidiaries listed on the signature pages hereto (each of the foregoing entities identified in subclauses (i) through (iv) an "**EFH/EFIH Debtor**" and, collectively, the "**EFH/EFIH Debtors**");

(v)     Sempra Energy, a California corporation ("**Sempra**"); and

(vi)    Sempra Texas Merger Sub I, Inc. (formerly known as Power Play Merger Sub I, Inc.), a Delaware corporation and wholly owned indirect subsidiary of Sempra ("**Merger Sub**").

Unless otherwise indicated, capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Plan, as defined below, and, if not defined therein, the PSA, as defined below.

### RECITALS

**WHEREAS**, on April 29, 2014, the Debtors commenced chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), which chapter 11 cases are being jointly administered and are captioned *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS);

**WHEREAS**, EFIH owns 100% of Oncor Electric Delivery Holdings Company LLC ("**OEDH**"), which owns 80.03% of the equity interests in Oncor Electric Delivery Company LLC ("**Oncor**"); and Texas Transmission Investment LLC ("**TTI**") holds a 19.75% ownership interest in Oncor, and Oncor Management Investment LLC ("**OMI**", and together with TTI, the "**Minority Interest Holders**") holds a 0.22% ownership interest in Oncor;

**WHEREAS**, Oncor, EFH, and OEDH are party to that certain Amended and Restated Tax Sharing Agreement dated as of November 5, 2008 (as amended from time to time, the "**Oncor TSA**"), which was assumed by EFH pursuant to the *Order Approving Assumption of Oncor Tax Sharing Agreement Prior to Plan Effective Date*, entered by the Bankruptcy Court on March 13, 2017 [D.I. 10998] (the "**Oncor TSA Assumption Order**"), which Oncor TSA Assumption Order, among other things, provided for a cure payment to be made by EFH to Oncor in the amount of $134,979,783, which amount EFH has paid, and which amount is

subject to adjustment "to reflect the date of payment and Oncor's projected or actual taxable income or loss" (the "**Oncor TSA Cure Amount**");

**WHEREAS**, on August 21, 2017, EFH, EFIH, Sempra, and Merger Sub entered into that certain Agreement and Plan of Merger (as may be amended or supplemented from time to time, the "**Merger Agreement**"), pursuant to which Sempra will become the indirect owner of 80.03% of the ownership interests in Oncor;

**WHEREAS**, on August 21, 2017, the EFH/EFIH Debtors, Sempra, and Elliott Management Corporation, for and on behalf of itself and its affiliates, funds, and accounts advised or sub-advised by Elliott Management Corporation (collectively, "**Elliott**") entered into that certain Plan Support Agreement (the "**PSA**"), pursuant to which the parties agreed, among other things, to support consummation of the transactions contemplated by the Merger Agreement and the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors, Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, or modified from time to time in accordance therewith, the "**Plan**") and not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, or consummation of the Plan;

**WHEREAS**, on October 13, 2017, the Public Utilities Commission of Texas (the "**PUCT**") issued an order in PUCT Docket No. 46957 approving a settlement between Oncor and certain interested parties that, among other things, modifies Oncor's authorized regulatory capital structure from 60% debt and 40% equity to 57.5% debt and 42.5% equity (the "**Modified Debt/Equity Ratio**"), effective November 27, 2017;

**WHEREAS**, on October 25, 2017, the Oncor board of directors declared a cash dividend (the "**Q3 Oncor 2017 Dividend**") to be paid to its members as of October 25, 2017; *provided*, that such dividend would only be paid if additional equity contributions are made to Oncor from its members in the total amount of approximately $250 million on or before the date of the Merger Closing;

**WHEREAS**, certain disputes arose among the Parties and Elliott with respect to their rights and obligations under the Merger Agreement, the PSA, and other transaction documents, including with respect to: (a) the Q3 Oncor 2017 Dividend; (b) any dividend that may be declared thereafter, prior to the Merger Closing, including in respect of amounts earned by Oncor during the period starting as of October 1, 2017 and ending on December 31, 2017 (the "**Q4 Oncor 2017 Dividend**"); (c) OEDH's disposition of any Q3 Oncor 2017 Dividend; (d) OEDH's disposition of any Q4 Oncor 2017 Dividend or other dividend paid by Oncor to OEDH and dividended to EFIH (collectively, as described in subclauses (a)-(d), the "**Dividends**"); and (e) Key Regulatory Term 45 (titled "Equity Commitment"), attached as Exhibit D to the Merger Agreement ("**Key Regulatory Term 45**");

**WHEREAS**, certain additional disputes arose among the Parties and Elliott with respect to EFH's rights and obligations, on the one hand, and OEDH's and Oncor's rights and obligations, on the other hand, under the Oncor TSA with respect to (a) certain EFH claims

against OEDH under the Oncor TSA with respect to payments for the third quarter of 2017 and fourth quarter of 2017 (the "**EFH-OEDH 2017 TSA Claims**"); (b) the amount of the necessary adjustment to the Oncor TSA Cure Amount (the "**TSA Cure Adjustment**"); (c) claims by and between EFH and Oncor under the Oncor TSA with respect to 2017 (the "**EFH-Oncor 2017 TSA Claims**"); and (d) claims by and between EFH, on the one hand, and Oncor and OEDH, on the other hand, under the Oncor TSA with respect to 2018 (the "**TSA 2018 Claims**") (collectively, the claims described in subclauses (a)-(d) the "**TSA Claims**"); and

**WHEREAS**, the Parties negotiated in good faith to resolve their disputes with respect to the Dividends and the TSA Claims and they have reached agreement on the terms and conditions set forth in this Agreement.

*AGREEMENT*

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound, agrees as follows:

**Section 1.    Agreement Effective Date**.

This Agreement shall be effective and binding on each Party upon entry by the Bankruptcy Court of an order approving this Agreement (the "**Settlement Order**"); *provided, however,* that Section 2.1 and Section 3 shall be effective immediately upon the execution by all Parties and delivery to EFH, EFIH and Sempra of a duly executed signature page to this Agreement.

**Section 2.    Settlement Terms**.

2.1    Promptly following execution of this Agreement, the Parties shall jointly communicate to Oncor and OEDH and their respective boards of directors that all issues and disputes among the Parties regarding the treatment of the Q3 Oncor 2017 Dividend, the Q4 Oncor 2017 Dividend, the EFH-OEDH 2017 TSA Claims, any other dividend prior to or after the Merger Closing (other than any dividend declared and/or paid prior to August 2, 2017), OEDH's disposition of any amount of the Q3 Oncor 2017 Dividend, Q4 Oncor 2017 Dividend, or any other dividend declared and/or paid by Oncor, the TSA Cure Adjustment, the EFH-Oncor 2017 TSA Claims, the TSA 2018 Claims, and Key Regulatory Term 45 have been resolved and that they have reached a settlement that:

(a)    contemplates Sempra, directly or indirectly, making a settlement payment to EFIH and EFH at the Merger Closing, in the amount and on the terms set forth in Section 2.2 herein;

(b)    permits Sempra to, on and after the Merger Closing, receive and retain the full benefit, in its capacity as indirect owner of EFIH and OEDH, of the Q3 Oncor 2017 Dividend, Q4 Oncor 2017 Dividend, and any other dividend prior to or after the Merger Closing (other than any dividend declared and/or paid prior to August 2, 2017) declared and/or paid (except for amounts that are paid by

3

Oncor to the Minority Interest Holders in respect of their membership interests in Oncor);

(c)     contemplates EFH making a TSA Cure Adjustment payment to Oncor in the amount of $19,082,160 on or before the Merger Closing, and resolves any potential dispute between the Parties with respect to the treatment, timing and payment of EFH-Oncor 2017 TSA Claims and TSA 2018 Claims under the Plan; and

(d)     in light of the foregoing, the Parties have no objection to (i) Oncor not declaring or paying, to the extent applicable, the Q3 Oncor 2017 Dividend, the Q4 Oncor 2017 Dividend, and/or any other dividend prior to the Merger Closing such that any amounts that might otherwise be distributed pursuant to such dividends can instead be retained by Oncor and applied to attain the Modified Debt/Equity Ratio (and thereby reduce any amounts that may otherwise be required to be contributed to Oncor by its members) and (ii) OEDH not paying to EFH any amount with respect to the EFH-OEDH 2017 TSA Claims based on EFH's waiver and release of such EFH-OEDH 2017 TSA Claims under this Agreement.

2.2     In lieu of and in full and final settlement of all rights, interest, claims, Causes of Action and remedies of the EFH/EFIH Debtors and their estates with respect to the payment (or non-payment) by Oncor of any Q3 Oncor 2017 Dividend, Q4 Oncor 2017 Dividend, and any other dividend (other than any dividend declared and/or paid prior to August 2, 2017) prior to or after the Merger Closing (including the amount, timing, conditions and any and all other terms with respect to any such dividends), the disposition (or non-disposition) of the proceeds of any such dividends by OEDH (including the amount, timing, conditions and any and all other terms with respect to such proceeds), and the EFH-OEDH 2017 TSA Claims, the Parties agree as follows:

(a)     At the Merger Closing, (i) Sempra shall pay, or cause to be paid, $27,250,000 to EFIH (the "**EFIH Settlement Payment**") and $3,750,000 to EFH (the "**EFH Settlement Payment**" and, together with the EFIH Settlement Payment, the aggregate $31,000,000.00 shall be the "**Settlement Payment**"), subject to the potential adjustments set forth in Section 2.2(b), as applicable, and (ii) in consideration of such Settlement Payment, Sempra, in its capacity as indirect owner of Reorganized EFH, Reorganized EFIH and OEDH, shall be entitled to receive and retain on and after the Merger Closing the full benefit of Oncor's earnings for the third and fourth quarters of 2017 (except for amounts that are attributable to the Minority Interest Holders in respect of their membership interests in Oncor), whether or not paid as a Q3 Oncor 2017 Dividend, Q4 Oncor 2017 Dividend, or any other dividend, or in respect of the EFH-OEDH 2017 TSA Claims.

(b)     Subject to the Merger Closing occurring, if Oncor pays the Q3 Oncor 2017 Dividend or declares and pays a Q4 Oncor 2017 Dividend or any other dividend on or prior to the Merger Closing (other than any dividend declared and/or paid prior to August 2, 2017), or if OEDH makes any payment with respect to the EFH-OEDH 2017 TSA Claims, then:

(i)        the entire amount of (A) any such dividends (except for amounts that are paid by Oncor to the Minority Interest Holders in respect of their membership interests in Oncor) paid to and received by EFIH shall be transferred by EFIH to a segregated account at EFIH and (B) any such payment in respect of the EFH-OEDH 2017 TSA Claims paid to and received by EFH shall be transferred by EFH into a segregated account at EFH and, in each case, shall be held therein and shall not be distributed to the EFH/EFIH Cash Distribution Account;[1] and

(ii)        Sempra, in its capacity as indirect owner of Reorganized EFH, Reorganized EFIH and OEDH, shall be entitled to receive and retain on and after the Merger Closing the entire amount of such dividends and/or such payment in respect of the EFH-OEDH 2017 TSA Claims, together with any interest earned in such segregated accounts on such dividends or payment from the date of payment; *provided* that, Sempra, in its sole and absolute discretion, may utilize (A) such dividends to satisfy all or a portion of its obligations under Section 2.2(a) hereof with respect to the EFIH Settlement Payment by providing written instruction to EFIH to transfer an amount of such dividends to the EFH/EFIH Cash Distribution Account for distribution in accordance with the Plan, in which case, the amount of the EFIH Settlement Payment to be made by Sempra at the Merger Closing under Section 2.2(a) hereof shall be reduced dollar-for-dollar by the amount so transferred to the EFH/EFIH Cash Distribution Account and (B) such payment in respect of the EFH-OEDH 2017 TSA Claims to satisfy all or a portion of its obligations under Section 2.2(a) hereof with respect to the EFH Settlement Payment by providing written instruction to EFH to transfer an amount of such dividends and/or payment in respect of the EFH-OEDH 2017 TSA Claims to the EFH Cash Account in the EFH/EFIH Cash Distribution Account for distribution in accordance with the Plan, in which case the amount of the EFH Settlement Payment to be made by Sempra at the Merger Closing under Section 2.2(a) hereof shall be reduced dollar-for-dollar by the applicable amount so transferred to the EFH Cash Account in the EFH/EFIH Cash Distribution Account.

Except as expressly set forth in this Agreement, nothing in this Agreement modifies, expands, or reduces the rights and obligations of any party under the Plan.

2.3    With respect to the TSA Cure Adjustment, EFH-Oncor 2017 TSA Claims, and TSA 2018 Claims the Parties agree that:

(a)        EFH owes to Oncor a TSA Cure Adjustment in the amount of $19,082,160, such TSA Cure Adjustment is currently payable under the definition of "EFH Corp. Cash" in the Plan, and EFH shall pay to Oncor on or prior to the Merger Closing the amount of such TSA Cure Adjustment; and

---

[1]        For the avoidance of doubt, if EFIH receives any payment in respect of the EFH-OEDH 2017 TSA Claims or EFH receives any Oncor dividends, the entire amount of such payment or dividends shall also be transferred to and held in the applicable segregated account and shall not be distributed to the EFH/EFIH Cash Distribution Account.

(b)      the EFH-Oncor 2017 TSA Claims and TSA 2018 Claims are not currently payable under the definition of "EFH Corp. Cash" in the Plan and will not be deemed to become payable under such definition on or prior to the Merger Closing, and therefore (i) EFH and its estate shall not be required to make any payment to Oncor or OEDH under the Oncor TSA before, on or after the Merger Closing other than the TSA Cure Adjustment set forth in 2.3(b) above (but, for the avoidance of doubt, Reorganized EFH will remain obligated to Oncor under and in accordance with the terms of the Oncor TSA); (ii) Oncor and OEDH shall not be required to make any payment to EFH or its estate under the Oncor TSA before, on or after the Merger Closing (but, for the avoidance of doubt, Oncor will remain obligated to Reorganized EFH under and in accordance with the terms of the Oncor TSA); and (iii) subject to the Merger Closing occurring, if Oncor or OEDH makes any payment with respect to the EFH-Oncor 2017 TSA Claims or TSA 2018 Claims, the entire amount of such payment shall be transferred by EFH to a segregated account at EFH and held therein and shall not be distributed to the EFH/EFIH Cash Distribution Account, and Sempra, in its capacity as indirect owner of Reorganized EFH, Reorganized EFH, OEDH and Oncor, shall be entitled to receive and retain on and after the Merger Closing the entire amount of such payment together with any interest earned in such segregated account on such payment from the date of payment.

2.4      The EFH/EFIH Debtors shall:

(a)      use reasonable best efforts to work together with EFH/EFIH stakeholders to resolve by agreement in advance of the hearing on confirmation of the Plan any issues related to allocations as between EFH and EFIH and any distribution reserves, and if an agreement is not reached with respect to all such issues, (i) such unresolved issues shall be tendered to the Bankruptcy Court for determination in connection with confirmation of the Plan (including pursuant to a settlement agreement executed between the EFH/EFIH Debtors' disinterested directors), and each of the Parties agree that (ii) the resolution of such unresolved issues shall not delay or be an obstacle to confirmation and consummation of the Plan and the transactions contemplated thereby, including the Merger Closing;

(b)      support and use reasonable best efforts to obtain from the Court a ruling that the Confirmation Order shall be immediately effective upon entry and shall not seek to stay the effectiveness of the Confirmation Order for any reason; *provided*, however, that if the Bankruptcy Court declines to waive Federal Rule of Bankruptcy Procedure 3020(e), such a decision shall not be grounds for termination of this Agreement by any Party; and

(c)      not directly or indirectly seek to influence Oncor, OEDH, the members of their board of directors or their employees or advisors with respect to the payment (or non-payment) of any Q3 Oncor 2017 Dividend, Q4 Oncor 2017 Dividend or any other dividend, the EFH-OEDH 2017 TSA Claims, the EFH-Oncor 2017 TSA Claims, or the TSA 2018 Claims; *provided*, that nothing in this Section 2.4 shall modify, limit or otherwise affect the rights or duties of the boards of directors of Oncor and OEDH, including such directors appointed by EFIH.

2.5      The Parties shall, upon approval of this Agreement by the Bankruptcy Court, enter into Amendment No. 2 to the Agreement and Plan of Merger in the form attached hereto as **Exhibit A**.

2.6     Subject to entry of the Settlement Order, each of the Parties shall and hereby does release and discharge the other Parties, each Reorganized EFH/EFIH Debtor, Oncor, OEDH, and each of their current and former Affiliates, and each of their and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, from any and all claims and Causes of Action, whether known or unknown, arising out of or in connection with any Q3 Oncor 2017 Dividend, Q4 Oncor 2017 Dividend, or any other dividend declared and/or paid from and after August 2, 2017, the Modified Debt/Equity Ratio and Key Regulatory Term 45, the EFH-OEDH 2017 TSA Claims, the EFH-Oncor 2017 TSA Claims, and the TSA 2018 Claims.

For the avoidance of doubt, notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) the Parties with respect to (i) their rights and obligations under this Agreement (including, for the avoidance of doubt, the obligations set forth in Section 2.2); (ii) except as expressly set forth herein, their rights and obligations under the Plan Support Agreement; and (iii) except as expressly set forth herein, their rights and obligations under the Merger Agreement; or (b) rights of Sempra and the Reorganized EFH/EFIH Debtors, as applicable, with respect to (i) dividends declared, paid or payable on or after the Merger Closing and (ii) obligations of OEDH and Oncor under the Oncor TSA.  For the avoidance of doubt, the releases set forth in this Section 2.6 shall be of no force and effect and shall become null and void upon a termination of this Agreement in accordance with Section 4.

### Section 3.     Bankruptcy Court Approval.

(a)     The EFH/EFIH Debtors  shall (i) as soon as reasonably practicable following execution of this Agreement file with the Bankruptcy Court (A) a motion seeking approval of the Agreement under Bankruptcy Rule 9019, and entry of the Settlement Order (the "**Settlement Approval Motion**"); (B) a declaration in support of the Settlement Approval Motion; and (C) a motion to shorten notice with respect to the Settlement Approval Motion (the "**Motion to Shorten**" and, together with the Settlement Approval Motion, the "**Settlement Motions**"); and (ii) support and take all commercially reasonable steps necessary to obtain entry by the Bankruptcy Court of orders approving the Settlement Motions, including the Settlement Order, as soon as reasonably practicable; and

(b)     Sempra shall support and take all commercially reasonable steps necessary to assist the EFH/EFIH Debtors in obtaining entry by the Bankruptcy Court of orders approving the Settlement Motions, including the Settlement Order, as soon as reasonably practicable.

### Section 4.     Termination.

(a)     This Agreement shall be automatically terminated with respect to all Parties upon the valid termination of the Merger Agreement in accordance with Article VIII thereof.

(b)    Upon termination of this Agreement, this Agreement shall be of no further force and effect, and each Party shall be released from its commitments, undertakings, and agreements under this Agreement and shall have the rights that it would have had, had it not entered into this Agreement, and shall be entitled to take all actions that it would have been entitled to take had it not entered into this Agreement.

**Section 5.        Miscellaneous**.

5.1    <u>Complete Agreement</u>.

This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes and nullifies all prior agreements, oral or written, among the Parties with respect thereto; *provided*, that the Parties' agreements and obligations under the PSA shall not be affected by the Parties' entry into this Agreement.

5.2    <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.

(a)    This Agreement shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of Delaware, without giving effect to the conflict of laws principles thereof.  Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement in the Bankruptcy Court (the "**Chosen Court**"), and solely in connection with claims arising under this Agreement: (i) irrevocably submits to the exclusive jurisdiction and the authority of the Chosen Court; (ii) waives any objection to laying venue in any such action or proceeding in the Chosen Court; and (iii) waives any objection that the Chosen Court is an inconvenient forum, does not have jurisdiction over any Party hereto, or lacks the constitutional authority to enter final orders in connection with such action or proceeding.

(b)    Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of, or relating to, this Agreement or the transactions contemplated hereby (whether based on contract, tort, or any other theory).  Each Party (i) certifies that no representative, agent, or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Parties have been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section 5.2.

5.3    <u>Execution of Agreement</u>.

This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. Each individual executing this Agreement on behalf of a Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of such Party.

5.4    Interpretation and Rules of Construction.

This Agreement is the product of negotiations among the Parties and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof. The Parties were each represented by counsel during the negotiations and drafting of this Agreement and continue to be represented by counsel. In addition, this Agreement shall be interpreted in accordance with section 102 of the Bankruptcy Code.

5.5    Amendment.

This Agreement may not be modified, amended, or supplemented in any manner except in writing signed by each of the Parties. Any proposed modification, amendment, or supplement that is not signed by each of the Parties shall be ineffective and void *ab initio*.

5.6    Settlement Discussions.

This Agreement and the transactions contemplated herein are part of a proposed settlement among the Parties. Nothing herein shall be deemed an admission of any kind. To the extent provided by Federal Rule of Evidence 408, and any applicable state rules of evidence, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Agreement.

5.7    Successors and Assigns; No Third Party Beneficiaries.

This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable. Except as otherwise explicitly set forth herein, nothing in this Agreement is intended to benefit or create any right or cause of action in or on behalf of any person other than the Parties hereto (and their affiliated persons and entities who are intended to be beneficiaries of the releases and settlements set forth herein).

5.8    Notices.

All notices hereunder shall be deemed given if in writing and delivered, if sent by electronic mail, courier, or registered or certified mail (return receipt requested) to the following addresses (or at such other addresses as shall be specified by like notice):

    (a)    if to the EFH/EFIH Debtors, to:

        Energy Future Holdings Corp.
        1601 Bryan Street, Dallas, Texas 75201
        Attention: Andrew Wright
        E-mail addresses: awright@energyfutureholdings.com,
        with copies (which shall not constitute notice) to:

        Kirkland & Ellis LLP

601 Lexington Avenue
New York, New York 10022
Facsimile:  (212) 446-4900
Attention:  Edward O. Sassower, P.C. and Aparna Yenamandra
E-mail addresses:  edward.sassower@kirkland.com,
aparna.yenamandra@kirkland.com

--and--

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Facsimile:  (312) 862-2200
Attention:  James H.M. Sprayregen, P.C., Marc Kieselstein, P.C., and Chad J.
Husnick
E-mail addresses:  james.sprayregen@kirkland.com,
marc.kieselstein@kirkland.com,
chad.husnick@kirkland.com

--and--

Proskauer Rose LLP
Three First National Plaza
70 W. Madison Street, Suite 3800
Chicago, Illinois 60602
Facsimile:  (312) 962-3551
Attention:  Mark. K. Thomas and Peter J. Young
E-mail addresses:  mthomas@proskauer.com, pyoung@proskauer.com

--and--

Jenner & Block LLP
919 Third Avenue
New York, New York 10022
Facsimile:  (212) 891-1699
Attention:  Richard Levin, Vince Lazar
E-mail address:  rlevin@jenner.com, vlazar@jenner.com

(b)    if to Sempra or Merger Sub, to:

Sempra Energy
488 8th Avenue
San Diego, California 92101
Attention: Martha B. Wyrsch, Executive Vice President and General Counsel
E-mail address: mwyrsch@sempra.com

with copies (which shall not constitute notice) to:

White & Case LLP

Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, Florida 33131
Attention: Thomas E Lauria and Matthew C. Brown
E-mail addresses: tlauria@whitecase.com and mbrown@whitecase.com

or such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above. Any notice given by delivery, mail, or courier shall be effective when received.

5.9     Specific Performance; Attorney Fees.

It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party, that such breach would represent irreparable harm, and that each non-breaching Party shall be entitled to specific performance of the terms hereof and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages), including an order of the Bankruptcy Court requiring any Party to comply promptly with any of its obligations hereunder, which remedy of specific performance shall be the Parties' sole and exclusive remedies for any breach of the terms of this Agreement, unless otherwise expressly set forth in this Agreement.

If a Party is determined by final order of a court of competent jurisdiction to be in breach of its obligations under this Agreement, then the other Parties shall each be entitled to recover from the breaching Party all fees, costs and expenses of enforcing their rights under this Agreement, including without limitation, such reasonable fees and expenses of attorneys, which shall include, without limitation, all fees, costs and expenses of appeals.

5.10     Severability and Construction.

If any term or other provision of this Agreement shall be held by a court of competent jurisdiction to be invalid, illegal or unenforceable, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of this Agreement is not affected in any manner materially adverse to any Party. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the essential terms and conditions of this Agreement are fulfilled to the extent possible.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

[Signature Pages Follow]

**SEMPRA ENERGY**

Name: J. Walker Martin
Title: Executive VP and CFO


**SEMPRA TEXAS MERGER SUB I, INC.**

Name: TREVOR MIHALIK
Title: VICE PRESIDENT

*[Signature Page to Settlement Agreement]*

**ENERGY FUTURE HOLDINGS CORP.**

Ebasco Services of Canada Limited
EEC Holdings, Inc.
EECI, Inc.
EFH Australia (No. 2) Holdings Company
EFH Finance (No. 2) Holdings Company
EFH FS Holdings Company
EFH Renewables Company LLC
EFIH Finance Inc.
Energy Future Intermediate Holding Company LLC
Generation Development Company LLC
LSGT Gas Company LLC
LSGT SACROC, Inc.
NCA Development Company LLC
TXU Receivables Company

Name: Andrew Wright
Title: EVP & GC

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

Name: Andrew Wright
Title: EVP & GC

**EFIH FINANCE, INC.**

Name: Andrew Wright
Title: EVP & GC

*[Signature Page to Settlement Agreement]*

## Exhibit A

AMERICAS 94034185

**AMENDMENT NO. 2**

**TO THE AGREEMENT AND PLAN OF MERGER**

This Amendment No. 2 to the Agreement and Plan of Merger (this "Amendment"), dated as of [●], 2018, is entered into by and among Energy Future Holdings Corp., a Texas corporation (the "Company"), Energy Future Intermediate Holding Company LLC, a Delaware limited liability company ("EFIH"), Sempra Energy, a California corporation ("Parent"), and Sempra Texas Merger Sub I, Inc. (formerly known as Power Play Merger Sub I, Inc.), a Delaware corporation ("Merger Sub" and, collectively with the Company, EFIH, and Parent, the "Parties").

RECITALS

WHEREAS, reference is hereby made to that certain Agreement and Plan of Merger, dated as of August 21, 2017 (the "Merger Agreement"), by and among the Parties, as waived and amended by that certain Waiver Agreement, dated as of October 3, 2017, by and among the Parties (the "Waiver Agreement"); and

WHEREAS, in connection with that certain Settlement Agreement, dated as of January [●], 2018, by and among the Parties, EFIH Finance Inc., and each of the Company's direct and indirect subsidiaries listed on the signature pages thereto (the "Settlement Agreement"), the Parties wish to amend certain terms of the Merger Agreement in accordance with Section 9.2 thereof.

NOW, THEREFORE, in consideration of the premises, representations, warranties, covenants, and agreements contained herein, in the Merger Agreement and in the Settlement Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

Section 1.    Definitions. Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Merger Agreement.

Section 2.    Amendment to Section 1.7. Section 1.7 of the Merger Agreement is hereby deleted and replaced in its entirety with the following:

"**Section 1.7**        Accessible Account Deposit. At the Closing, (a) Parent shall cause Merger Sub to deliver the Cash Deposit Amount by wire transfer of immediately available funds to the EFH Plan Administrator Board (as defined in the Plan of Reorganization), (b) subject to Section 1.8, the Company will send any cash held by the Company as of the Closing Date, by wire transfer of immediately available funds, to the EFH/EFIH Cash Distribution Account (as defined in the Plan of Reorganization), and (c) EFIH will send any cash held by EFIH as of the Closing Date, by wire transfer of immediately available funds, to the EFH/EFIH Cash Distribution Account (such deposits in clause (a), clause (b) and clause (c) herein, the "Accessible Account Deposit"); provided, however, that, unless otherwise instructed in writing by Parent in its sole and absolute discretion in accordance with that certain Settlement Agreement by and among the Company, EFIH, Parent and Merger Sub, among others, dated as of February 2, 2018, in no event shall cash paid to or held by the Company or any of its Subsidiaries to the extent comprising any dividend or distribution declared and/or paid by Oncor (or any earnings or interest thereon) from and after August 2, 2017, or any payment by Oncor or Oncor Holdings under the Oncor Tax Sharing Agreement (as defined in the Plan of Reorganization) from and after August 30, 2017, be sent to the EFH/EFIH Cash Distribution Account or any other Person (other than the Company and its

Subsidiaries) before, on or after the Closing Date, but instead shall be retained by the Company and its Subsidiaries. The EFH Plan Administrator Board shall distribute the amounts from the Accessible Account Deposit in accordance with the Plan of Reorganization. For the avoidance of doubt, the EFH Plan Administrator Board shall be entitled to create such sub-accounts in the EFH/EFIH Cash Distribution Account as necessary to consummate the transactions contemplated by the Plan of Reorganization. "Cash Deposit Amount" shall mean $9,450,000,000, less the DIP Repayment; provided, that the Cash Deposit Amount shall be reduced in accordance with Section 1.8. In no event shall the amount deposited by Merger Sub pursuant to Section 1.7(a), plus the DIP Repayment, plus the value of the Trust Certificates issued pursuant to Section 1.8, exceed $9,450,000,000."

Section 3.    Amendment to Definitions. The table of defined terms shall be amended to delete: (a) "2017 Dividend", (b) "Dividend Reduction Amount", and (c) "Payable Dividend Amount".

Section 4.    Miscellaneous; No Other Waivers.  The provisions of Sections 9.4, 9.5, 9.6, 9.8, 9.9, 9.12, 9.13, 9.14 and 9.15 of the Merger Agreement shall apply to this Amendment *mutatis mutandis*. Except as specifically amended hereby, the Merger Agreement, as amended by the Waiver Agreement, shall continue in full force and effect as written.

Section 5.    Entire Agreement. The agreements listed in Section 9.7 of the Merger Agreement, the Waiver Agreement, this Amendment, and the Settlement Agreement constitute the entire agreement of the Parties with respect to the subject matter hereof and thereof and supersede all prior agreements, both written and oral, by the Parties with respect to the subject matter thereto.

Section 6.    Construction. All references to the Merger Agreement (including "hereof," "herein," "hereunder," "hereby" and "this Agreement") shall refer to the Merger Agreement as clarified and amended by the Waiver Agreement and this Amendment. Notwithstanding the foregoing, references to the date of the Merger Agreement (as amended hereby and by the Waiver Agreement) and references in the Merger Agreement to "the date hereof," "the date of this Agreement" and terms of similar import shall in all instances continue to refer to August 21, 2017.

*[Remainder of Page Intentionally Left Blank]*

2

**<u>EXHIBIT 2</u> to <u>EXHIBIT A</u>**

**Merger Agreement Amendment**

# AMENDMENT NO. 2

## TO THE AGREEMENT AND PLAN OF MERGER

This Amendment No. 2 to the Agreement and Plan of Merger (this "Amendment"), dated as of [●], 2018, is entered into by and among Energy Future Holdings Corp., a Texas corporation (the "Company"), Energy Future Intermediate Holding Company LLC, a Delaware limited liability company ("EFIH"), Sempra Energy, a California corporation ("Parent"), and Sempra Texas Merger Sub I, Inc. (formerly known as Power Play Merger Sub I, Inc.), a Delaware corporation ("Merger Sub" and, collectively with the Company, EFIH, and Parent, the "Parties").

RECITALS

WHEREAS, reference is hereby made to that certain Agreement and Plan of Merger, dated as of August 21, 2017 (the "Merger Agreement"), by and among the Parties, as waived and amended by that certain Waiver Agreement, dated as of October 3, 2017, by and among the Parties (the "Waiver Agreement"); and

WHEREAS, in connection with that certain Settlement Agreement, dated as of January [●], 2018, by and among the Parties, EFIH Finance Inc., and each of the Company's direct and indirect subsidiaries listed on the signature pages thereto (the "Settlement Agreement"), the Parties wish to amend certain terms of the Merger Agreement in accordance with Section 9.2 thereof.

NOW, THEREFORE, in consideration of the premises, representations, warranties, covenants, and agreements contained herein, in the Merger Agreement and in the Settlement Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

Section 1.    Definitions. Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Merger Agreement.

Section 2.    Amendment to Section 1.7. Section 1.7 of the Merger Agreement is hereby deleted and replaced in its entirety with the following:

"**Section 1.7**        Accessible Account Deposit. At the Closing, (a) Parent shall cause Merger Sub to deliver the Cash Deposit Amount by wire transfer of immediately available funds to the EFH Plan Administrator Board (as defined in the Plan of Reorganization), (b) subject to Section 1.8, the Company will send any cash held by the Company as of the Closing Date, by wire transfer of immediately available funds, to the EFH/EFIH Cash Distribution Account (as defined in the Plan of Reorganization), and (c) EFIH will send any cash held by EFIH as of the Closing Date, by wire transfer of immediately available funds, to the EFH/EFIH Cash Distribution Account (such deposits in clause (a), clause (b) and clause (c) herein, the "Accessible Account Deposit"); provided, however, that, unless otherwise instructed in writing by Parent in its sole and absolute discretion in accordance with that certain Settlement Agreement by and among the Company, EFIH, Parent and Merger Sub, among others, dated as of February 2, 2018, in no event shall cash paid to or held by the Company or any of its Subsidiaries to the extent comprising any dividend or distribution declared and/or paid by Oncor (or any earnings or interest thereon) from and after August 2, 2017, or any payment by Oncor or Oncor Holdings under the Oncor Tax Sharing Agreement (as defined in the Plan of Reorganization) from and after August 30, 2017, be sent to the EFH/EFIH Cash Distribution Account or any other Person (other than the Company and its

Subsidiaries) before, on or after the Closing Date, but instead shall be retained by the Company and its Subsidiaries. The EFH Plan Administrator Board shall distribute the amounts from the Accessible Account Deposit in accordance with the Plan of Reorganization. For the avoidance of doubt, the EFH Plan Administrator Board shall be entitled to create such sub-accounts in the EFH/EFIH Cash Distribution Account as necessary to consummate the transactions contemplated by the Plan of Reorganization. "Cash Deposit Amount" shall mean $9,450,000,000, less the DIP Repayment; provided, that the Cash Deposit Amount shall be reduced in accordance with Section 1.8. In no event shall the amount deposited by Merger Sub pursuant to Section 1.7(a), plus the DIP Repayment, plus the value of the Trust Certificates issued pursuant to Section 1.8, exceed $9,450,000,000."

Section 3.  Amendment to Definitions. The table of defined terms shall be amended to delete: (a) "2017 Dividend", (b) "Dividend Reduction Amount", and (c) "Payable Dividend Amount".

Section 4.  Miscellaneous; No Other Waivers.  The provisions of Sections 9.4, 9.5, 9.6, 9.8, 9.9, 9.12, 9.13, 9.14 and 9.15 of the Merger Agreement shall apply to this Amendment *mutatis mutandis*. Except as specifically amended hereby, the Merger Agreement, as amended by the Waiver Agreement, shall continue in full force and effect as written.

Section 5.  Entire Agreement. The agreements listed in Section 9.7 of the Merger Agreement, the Waiver Agreement, this Amendment, and the Settlement Agreement constitute the entire agreement of the Parties with respect to the subject matter hereof and thereof and supersede all prior agreements, both written and oral, by the Parties with respect to the subject matter thereto.

Section 6.  Construction. All references to the Merger Agreement (including "hereof," "herein," "hereunder," "hereby" and "this Agreement") shall refer to the Merger Agreement as clarified and amended by the Waiver Agreement and this Amendment. Notwithstanding the foregoing, references to the date of the Merger Agreement (as amended hereby and by the Waiver Agreement) and references in the Merger Agreement to "the date hereof," "the date of this Agreement" and terms of similar import shall in all instances continue to refer to August 21, 2017.

*[Remainder of Page Intentionally Left Blank]*

RLF1 18839505v.1