**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>    *Debtors.* | ) Chapter 11<br>)<br>) Case No. 14-10979 (CSS)<br>)<br>) (Jointly Administered)<br>)<br>) **Re: D.I. 11887 and 12369**<br>) |

**DECLARATION OF MICHAEL A. KRAMER IN SUPPORT OF THE ELLIOTT FUNDS' REPLY TO THE OBJECTION OF NEXTERA ENERGY, INC. TO FIRST AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, AND THE EFH/EFIH DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

I, Michael A. Kramer, declare as follows:

1. I am a founding Partner and Chief Executive Officer of Ducera Partners LLC ("Ducera"), an investment banking firm which has its principal office at 499 Park Avenue, 16th Floor, New York, NY 10022. Ducera has been retained by Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott" or the "Elliott Funds") in connection with the above-captioned chapter 11 cases.

2. I have extensive experience with restructuring and reorganization matters and financing transactions. Prior to forming Ducera in 2015, I was a Partner at Perella Weinberg Partners, where I also served as a member of its Management Committee, Global Head of its Restructuring Practice, and U.S. Head of its Technology, Media & Telecom and Power Practices. Prior to that, I was a Founding Partner of Kramer Capital Partners; a Partner at Greenhill & Co., Global Head of Greenhill's Restructuring Practice, and a member of Greenhill's Management

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

Committee; and Managing Director at Houlihan Lokey where I was Co-Head of the Global Restructuring Practice and Co-Head of the Eastern Region.

3. I submit this declaration (the "Declaration") in support of Elliott's reply (the "Elliott Reply") to the objection (the "Objection") of NextEra Energy, Inc. ("NextEra") to the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I 11887] (the "EFH/EFIH Plan").[2]

4. All matters set forth herein are based upon (a) my personal knowledge, (b) my review of relevant documents, including the EFH/EFIH Plan, (c) information supplied to me by counsel for Elliott, and (d) analyses prepared by Ducera in support of this Declaration. If called upon to testify, I could and would testify competently to the facts set forth herein.

5. I have been asked by counsel for Elliott to consider the likely harm to EFIH's and EFH's creditors in the event the Court requires the EFH and EFIH Debtors (the "E-Side Debtors") to set aside a reserve in the amount of $275 million for a termination fee that NextEra contends was payable under a merger agreement with the E-Side Debtors (the "Termination Fee") as a condition to confirmation of the EFH/EFIH Plan, as requested by NextEra in the Objection pending NextEra's appeal of an order of the Court disallowing payment of the Termination Fee (the "Reconsideration Order").

6. As discussed in more detail below, if the E-Side Debtors are required to set aside a $275 million reserve pending final resolution of NextEra's appeal of the Reconsideration Order, then a reasonable quantification of the potential harm that creditors would suffer as a result of such reserve would be $31.7 million and could potentially be much greater than such

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Elliott Reply or, if not defined in the Elliott Reply, in the EFH/EFIH Plan.

amount. This amount reflects the opportunity costs for EFIH's and EFH's creditors due to the delay in receiving the immediate distributions under the EFH/EFIH Plan equal to the amount of the reserve.

### Assumptions and Understandings

7. The analysis and conclusions set forth in this Declaration are based on my understanding of certain facts and assumptions that I have been asked to make by counsel for Elliott.

8. I understand that currently pending in the Third Circuit Court of Appeals is NextEra's appeal of the Reconsideration Order entered on October 18, 2017, in which this Court disallowed the Termination Fee and denied NextEra's application for payment thereof. I understand that the notice of appeal was filed by NextEra on October 30, 2017, and that the appeal was officially docketed in the Third Circuit on January 19, 2018.

9. Based on information provided by counsel for Elliott, I assume that any reserve for NextEra could remain in place for up to eighteen months or more. Accordingly, I conservatively estimate that a reserve may remain in place for eighteen months.

10. I understand that if the Debtors are required to set aside $275 million in a reserve as requested by NextEra, such amount would be held by the EFH Plan Administrator Board in a segregated account pending resolution of NextEra's appeal.

11. I have assumed that the allocation of the requested reserve will be weighted 50% to the EFH creditors and 50% to the EFIH creditors.

12. I understand that absent a reserve for NextEra, in accordance with the terms of the EFH/EFIH Plan, the Disbursing Agent, on behalf of the Reorganized EFH/EFIH Debtors, would

distribute the full amount of the requested reserve (*i.e.*, $275 million) to holders of Allowed Claims against EFIH and EFH on or shortly after the Effective Date.

13. During the period in which any reserve would be in place, however, holders of Allowed Claims against EFIH and EFH would be unable to access or reinvest the $275 million that would otherwise be distributed to creditors on or shortly after the Effective Date of the EFH/EFIH Plan absent a reserve.

## Methodology and Calculations

14. Based on my experience, the harm to creditors on account of any reserve should be measured by the difference between (a) the amount of anticipated returns that the types of investors that make up the EFIH and EFH creditor bodies could reasonably earn if the reserve amount was distributed on the Effective Date and creditors were then able to invest such amount during the period when a reserve may otherwise remain in place and (b) the amount of anticipated returns that the EFH Plan Administrator Board would be able to earn on the reserve amount during the period when such reserve may remain in place.  The difference between such amounts is the opportunity cost to creditors that would result from any reserve ("Opportunity Cost").

15. In order to determine the Opportunity Cost, it is necessary to estimate a rate of return that EFIH and EFH creditors could be reasonably expected to earn if they were able to invest the reserve amount during the length of any reserve.  I refer to such rate as the "Opportunity Return Rate" for purposes of this declaration.

16. Any analysis of an Opportunity Return Rate is dependent on numerous variables, including investment strategies pursued by the creditors and uncertainty with respect to future market performance.  In calculating the Opportunity Return Rate, as reflected in Exhibit A, I

have looked to indicators of the market's past performance, as reflected in Exhibit B. My analysis does not account for the possibility of future inflation or rising interest rates.

17. Though past performance does not guarantee future performance, historical results provide information on the levels of returns that different investment strategies have generated in the past and levels of returns that investors may therefore expect to receive in the future. Based on my professional judgment, annual returns should be viewed over a period of ten to twenty years in order to account for one or more market cycles. Viewing results over a significantly longer period of time than this range may result in estimated future returns that are not consistent with current market dynamics. Further, viewing results over a short time period (*e.g.*, one to three years) may not provide a reasonable basis for estimating future market performance given the potential for skewed results due to heightened volatility over short periods of time. For these reasons, as reflected in Exhibit B, I have looked at returns for relevant asset classes over the past fifteen years.

18. In addition to considering fifteen years of annualized returns for certain indices, as further discussed below, my approach to calculating the Opportunity Return Rate relies on certain assumptions about the population of EFIH and EFH unsecured creditors. I understand that special situation hedge funds, including Elliott, hold no less than 80% in principal amount of aggregate outstanding unsecured claims against EFIH and no less than 40% in principal amount of aggregate outstanding unsecured claims against EFH. I further understand that Vistra Energy Corporation ("Vistra") holds approximately 50% in principal amount of aggregate outstanding unsecured claims against EFH. For the purpose of this analysis, I assume that unaccounted for creditors, whose identities are unknown based on my understanding, are high yield investors.

This assumption is predicated on the type of investor that likely would have held EFH and EFIH unsecured obligations both prior to and during the bankruptcy cases.

19. In order to estimate expected returns for special situation hedge funds and high yield fixed income investors, I utilized returns on well-known indices as proxies for their respective investment returns; for special situation hedge funds I utilized the Credit Suisse Distressed Index and for high yield fixed income investors I utilized the Barclays Unhedged US High Yield Total Return Index. As Vistra is a corporation whose primary operations do not include making investments, a more appropriate expected return measure for it is its weighted average cost of capital ("WACC"). Vistra's WACC, from a corporate finance perspective, is equivalent to its required return for new projects. Therefore, it is reasonable to expect that if Vistra were able to invest the amounts held in reserve during the appeal, it would invest in projects with returns at least equal to its WACC. Given that Vistra would only seek to pursue investments that equal or exceed its WACC, I view this as a conservative estimate of its expected returns.

20. In order to estimate the Opportunity Return Rate, I did calculations based on the selected indices and Vistra's WACC. Specifically, I estimated expected returns for EFIH and EFH creditors separately by calculating a weighted average of expected returns for each investor type at each entity. For special situation hedge funds and high-yield fixed income investors, I utilized the median return for relevant indices over the last fifteen years. For Vistra, I utilized the Company's WACC, as published by Bloomberg. Based on my understanding that the allocation of the reserve amount will be weighted 50% to EFH and 50% to EFIH, I then took a weighted average of the calculated Opportunity Return Rates at both EFH and EFIH to calculate

an aggregate Opportunity Return Rate, as detailed in Exhibit A. This methodology yielded an Opportunity Return Rate of 9.11% per year.

21.     If the $275 million reserve were allocated mostly to EFIH (rather than weighted 50% to EFH and 50% to EFIH), the Opportunity Return Rate would increase.

### **Opportunity Cost**

22.     Based upon my analysis, the Opportunity Cost, assuming an 18-month appeal, an Opportunity Return Rate of 9.11% per year, and annual compounding, is equal to $31.7 million, as illustrated in Exhibit A. This amount is equivalent to the returns that investors would be reasonably expected to achieve were the reserve not in place, less expected returns for the reserve based on money market rates (calculated based on the 3-month U.S. Treasury Bill rate). I believe this is a conservative estimate of the potential harm that EFH and EFIH unsecured creditors will suffer as a result of the reserve. I have additionally provided a sensitivity analysis assuming appeal lengths between 18 and 30 months under a range of Opportunity Return Rates in Exhibit C.

23.     While the previously discussed methodology is the basis of my calculation for estimating the likely harm to EFIH's and EFH's creditors in the event this Court requires the Debtors to set aside a reserve in the amount of $275 million for the Termination Fee, I additionally calculated the Opportunity Return Rate based on an alternative methodology utilizing an adjusted mean ("Trimmed Mean") for hedge fund and high-yield fixed income investors. The Trimmed Mean was calculated based on the average of the middle thirteen annual returns over the past fifteen years (*i.e.*, the highest and lowest annual returns for the last fifteen years were excluded). I calculated Vistra's expected return based on its WACC, consistent with the previously discussed methodology. This methodology would have yielded an Opportunity

-8-

Return Rate of 8.64% per year.  Based upon my analysis, the Opportunity Cost under this methodology, assuming an 18-month appeal, an Opportunity Return Rate of 8.64%, and annual compounding, would be equal to $29.7 million.

## **Conclusions**

24.    Based on the foregoing analysis, in the event this Court orders a reserve in connection with the Termination Fee, the potential harm to EFIH's and EFH's creditors would be no less than $31.7 million.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 17, 2018
New York, New York

*/s/* Michael Kramer
Michael Kramer

# EXHIBIT A – CALCULATION OF OPPORTUNITY COST

*$ in millions*

| EFIH Unsecured Creditor Opportunity Return Rate Calculation | | |
|---|---:|---:|
| EFIH Unsecured Creditor Type | % of EFIH Unsecured Creditors | Opportunity Return Rate |
| Hedge Fund Investor | 80% | 10.26% |
| High Yield Fixed Income Investor | 20% | 7.50% |
| **Weighted Average Opportunity Return Rate** | | **9.71%** |

| EFH Unsecured Creditor Opportunity Return Rate Calculation | | |
|---|---:|---:|
| EFH Unsecured Creditor Type | % of EFH Unsecured Creditors | Opportunity Return Rate |
| Hedge Fund Investor | 40% | 10.26% |
| Vistra | 50% | 7.31% |
| High Yield Fixed Income Investor | 10% | 7.50% |
| **Weighted Average Opportunity Return Rate** | | **8.51%** |

| Aggregate Opportunity Rate Calculation | | |
|---|---:|---:|
| Unsecured Creditor Entity | Opportunity Return Rate Weighting | Opportunity Return Rate |
| EFIH | 50% | 9.71% |
| EFH | 50% | 8.51% |
| **Weighted Average Opportunity Return Rate** | | **9.11%** |

| Opportunity Cost Calculation | |
|---|---:|
| Investor Returns | $38.4 |
| Less: Expected Reserve Returns | 6.7 |
| **Opportunity Cost** | **$31.7** |

# EXHIBIT B – HISTORICAL INDEX RETURNS

| Asset Class | Index | Annual Returns | | | | | | | | | | | | | | Summary Statistics | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Simple Average | Median | Trimmed Mean[1] |
| Fixed Income | Barclays HY Total Return Index (Unhedged) | 28.97% | 11.13% | 2.74% | 11.85% | 1.87% | (26.16%) | 58.21% | 15.12% | 4.98% | 15.81% | 7.44% | 2.45% | (4.47%) | 17.13% | 7.50% | 10.31% | 7.50% | 9.43% |
| Hedge Fund | Credit Suisse Distressed Hedge Fund Index | 25.12% | 15.62% | 11.74% | 15.58% | 8.35% | (20.48%) | 20.95% | 10.26% | (4.24%) | 11.77% | 16.00% | 2.55% | (5.30%) | 6.38% | 7.27% | 8.10% | 10.26% | 9.00% |

1) Excludes highest and lowest return over fifteen year period.

Source: Bloomberg

# EXHIBIT C –TIME AND OPPORTUNITY RETURN RATE SENSITIVITY ANALYSIS OF OPPORTUNITY COST

*$ in millions*

| | |
|---|---|
| Reserve Amount | $275.0 |
| Opportunity Return Rate | 9.11% |
| Projected Reserve Return Rate[1] | 1.62% |

| Illustrative Opportunity Return | Number of Months | | | | |
|---|---|---|---|---|---|
| | 18 | 21 | 24 | 27 | 30 |
| 8.00% | $26.9 | $31.8 | $36.8 | $41.9 | $47.1 |
| 9.00% | $31.2 | $36.9 | $42.7 | $48.7 | $54.8 |
| 9.11% | $31.7 | $37.5 | $43.4 | $49.5 | $55.7 |
| 10.00% | $35.6 | $42.1 | $48.8 | $55.6 | $62.7 |

1) 3-month U.S. Treasury Bill rate.