# **EXHIBIT D**

```
                                                           Page 1
 1   UNITED STATES BANKRUPTCY COURT
 2   DISTRICT OF DELAWARE
 3
 4   In re:                         :
 5                                  :   Chapter 11
 6   ENERGY FUTURE HOLDINGS         :   Case No. 14-10979 (CSS)
 7   CORP., et al.                  :
 8           Debtors.               :   (Jointly Administered)
 9   _____   :
10
11                            United States Bankruptcy Court
12                            824 North Market Street
13                            Wilmington, Delaware
14                            December 11, 2017
15                            10:03 a.m. - 11:29 a.m.
16
17
18
19
20
21   B E F O R E :
22   HON CHRISTOPHER S. SONTCHI
23   U.S. BANKRUPTCY JUDGE
24
25   ECRO OPERATOR:   UNKNOWN
```

1    of evidence today nor by arguing the record as it exists.
2    It really comes down to whether money will flee the estate
3    before they have an opportunity to have their appellate
4    rights fully litigated on the merits of the appeal and then
5    possibly depending on the outcome of the appeal, the
6    underlying litigation which has been stayed, and that could
7    take some time.
8            But as we sit here today, we have a merger
9    transaction that is in front of the PUCT that has not been
10   approved by the PUCT.  I, meaning no pejorative statement
11   whatsoever in any connection with what is going on, has gone
12   on, or is going on in Austin and with the PUCT, I'm not
13   going to sit here today and make a prediction about whether
14   that transaction will be approved or not.
15           The PUCT will act according to the facts and law
16   in front of it, and I'm sure will do an excellent job and
17   will make the decision it makes.  It's particularly
18   difficult, perhaps, to figure it out or predict what might
19   happen in that we have two out of three commissioners who
20   are new to EFH, just like we've got children who are now in
21   preschool who weren't born when this case was filed, so, you
22   know, everybody's new.
23           So, it is what it is.  So, but I'm not willing to
24   predict that'll happen.  I don't think I can safely say
25   that'll happen and we won't even get to whether to confirm a

1   plan or the details as they may evolve of the plan until
2   after the PUCT approves this transaction, the Sempra
3   transaction, if it does and when it does.  So, I think that
4   ==this is simply premature.==
5           The rights in connection with confirmation of the
6   plan which is where the money will exit the estate that
7   might otherwise be payable to NextEra will be in the context
8   of a plan.  Or, God forbid, if we're years and years down
9   the road and still not there, it might sort of raise its
10  head again if the case starts to tinker or teeter on
11  administrative insolvency, but we're not there yet and
12  hopefully will never get close.
13          ==But -- so, a plan stands between NextEra and harm,==
14  and all of NextEra's rights to object to that plan and to
15  argue for a reserve at that time or some other protection
16  that would have the effect of a reserve, are fully preserved
17  and having started a stay now, they certainly can't be
18  vulnerable to a objection in April, May, or June of this
19  year that they should've acted earlier.  They have sought
20  the stay and acted to protect their rights.
21          So, I just don't see this as a situation -- oh,
22  and I'm sorry.  And bottom line, we're talking about money.
23  There are no property rights other than the right to money.
24  There are no equitable rights involved here that might merit
25  or constitute irreparable harm.  We're just talking about

1   money, and that money's not going anywhere until

2   confirmation so I don't think there is immediate irreparable

3   harm risk at this time.

4               We can deal with these issues and will deal with

5   these issues fully at the time of confirmation of a plan, if

6   we get there, assuming it's before the appeal process works

7   out in the Third Circuit.  I hope it will be before the

8   Third Circuit can act.  I hope we get this transaction

9   approved, the Semper transaction approved, soon.  I hope

10  that we're at confirmation in early spring, and if all that

11  happens we'll deal with these issues at that time.

12              I don't have to get into the other factors.  The

13  Third Circuit made that clear in Revel.  If you don't

14  satisfy the first two, you don't even need to talk about the

15  third and the fourth.  My only comment is with regard to

16  those, to sort of pay lip service if nothing else, with

17  balancing of the harms, I think it cuts both ways.  I -- you

18  know, there's a definite potential harm to creditors here

19  other than NextEra if I rule in NextEra's favor and there's

20  a harm to NextEra if I rule against them.  And not

21  irreparable, but I mean you could argue there's harm in

22  connection to NextEra.  So I think that's a wash.

23              The public interest -- certainly I think there's a

24  public interest in knowing the parameters of when you can

25  get a termination fee in a Chapter 11 case.  It's a common