1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4

5    In re:                          :

6    ENERGY FUTURE HOLDINGS          :   Chapter 11

7    CORP., et al.,                  :   Case No. 14-10979 (CSS)

8          Debtors.                  :   (Jointly Administered)

9    _____ :

10

11

12

13                                   United States Bankruptcy Court

14                                   824 North Market Street

15                                   Wilmington, Delaware

16

17                                   February 16, 2018

18                                   11:08 AM - 11:48 AM

19

20

21    B E F O R E :

22    HON CHRISTOPHER S. SONTCEHI

23    U.S. BANKRUPTCY JUDGE

24

25

1    Hearing re:    Telephonic Status Hearing

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:    Dawn South

1   A P P E A R A N C E S :

2   KIRKLAND & ELLIS

3       Attorney for the Debtors

4

5   BY:  MARC KIESELSTEIN, ESQ. (TELEPHONIC)

6        MARK E. MCKANE, ESQ. (TELEPHONIC)

7        APARNA YENAMANDRA, ESQ. (TELEPHONIC)

8

9   NORTON ROSE FULBRIGHT US LLP

10       Attorney for NextEra Energy

11

12  BY:  ERIC DAUCHER, ESQ. (TELEPHONIC)

13

14  ROPES & GRAY LLP

15       Attorney for Elliott Management Corporation

16

17  BY:  GREGG GALARDI, ESQ. (TELEPHONIC)

18

19  HOGAN MCDANIEL

20       Attorney for Creditor/Claimant

21

22  BY:  DANIEL K. HOGAN, ESQ. (TELEPHONIC)

23

24

25

1              P R O C E E D I N G S

2          THE COURT:  Good morning, counsel, this is Judge

3     Sontchi.  Thank you for making yourselves available on

4     obviously what was extremely short notice; however, given

5     the fact that the Court is closed on Monday for the federal

6     holiday and confirmation is scheduled for the next week I

7     felt it was important to discuss these issues sooner rather

8     than later.

9          The reason I asked you to appear today is that we

10    had received communication through my clerk about -- from

11    the debtors -- about some developments in connection or I

12    guess requests for hearing dates, et cetera, in connection

13    with a possible or a probable dispute as to damages and

14    interest that might be payable to or from NextEra, depending

15    on the results of the appeal currently pending before the

16    Third Circuit and how that might affect the ability for the

17    debtors' plan, assuming it's confirmed on the 26th or 27th,

18    to go effective.

19         So that's why I asked you to be on the phone, and

20    if you could just -- I'll turn right to the debtors -- and

21    allow you to make your presentation.

22         MR. KIESELSTEIN:  Thank you, Judge Sontchi.  It's

23    Mark Kieselstein, Kirkland & Ellis, on behalf of the

24    debtors.  I believe on the line as well are Mark McKane and

25    Aparna Yenarmandra.

1           Thank you for giving us the opportunity, Your

2    Honor.

3           With your indulgence before I turn to that issue I

4    did want to provide a brief update on yesterday's activities

5    in Austin.  There was a very brief and positive discussion

6    with regard to the Sempra transaction.

7           As I believe Your Honor is aware all of the issues

8    raised by intervenors have been resolved and there is no

9    live objection from any intervenor to approval of the change

10   of control obligation.

11          In light of that the PUC commission yesterday

12   canceled the merits hearing that was scheduled for next

13   week, which would have dealt with objections, but they've

14   all gone away, and they asked the staff to prepare an order

15   to approve the transaction, which the commission would take

16   up at its open meeting on March 8th.

17          So as always, we don't want to be at all

18   presumptuous about what happens in the PUC process, but I

19   don't think it's going out on a limb to say that all the

20   signals are positive and we think this validates Your

21   Honor's willingness to hold the confirmation hearing even

22   before the approval order is officially entered.

23          So I wanted Your Honor to be aware of that, I

24   think we had committed to report back when there were

25   developments, and that's the positive development.

1          THE COURT:  Did you say March 8th or March 9th?

2          MR. KIESELSTEIN:  March 8th.

3          THE COURT:  March 8th.  Thank you.

4          MR. KIESELSTEIN:  Your Honor, with that I'll turn

5   to the issues that you raised.

6          We're obviously trying very hard to streamline the

7   confirmation hearing.  As you know we have two primary

8   remaining objections, those are the asbestos claimants and

9   that of NextEra.

10          With regard to the asbestos claimants I think

11   Mr. Husnick and Mr. Hogan probably can recite their

12   arguments by heart by now, nevertheless, you know, there'll

13   be an encore presentation of those at the confirmation

14   hearing.

15          We've been focusing I think our energy on trying

16   to resolve the NextEra objection to streamline the

17   confirmation hearing, and what we -- and in consultation

18   with Elliott have discussed and committed to is to fully

19   fund the $275 million break-up fee into a reserve,

20   notwithstanding the procedural posture that that is

21   currently a disallowed claim and notwithstanding the fact

22   that we think there is law that would support us taking a

23   harder line position nonetheless in an effort to try to

24   resolve differences and make the confirmation hearing

25   simpler as opposed to more complex, and we have offered that

1   up.

2          However, as Your Honor noted, there are ancillary

3   issues associated with that reserve once funded that go both

4   ways really.  The question in the first instance if NextEra

5   ultimately prevails a year or two down the road and that

6   claim is allowed, you know, are they entitled to

7   compensation for not having received the break-up fee

8   earlier in time?  And conversely if a year or two from now

9   the NextEra appeal fails are creditors entitled to be

10  compensated for the fact that their distributions have been

11  delayed?

12         We don't view either of those as a gaiting item to

13  confirmation, and we were hoping the offer of fully funding

14  the reserve would be sufficient to resolve NextEra's

15  objection while we all reserved on those ancillary interest

16  issues.  Unfortunately that does not appear to be the case.

17  We're a little puzzled as to why NextEra is not taking yes

18  for an answer, but they can speak to that.

19         We do think it's beneficial for us to know prior

20  to emergence, you know, whether we need to add money on top

21  of the 275- to protect NextEra in the event they ultimately

22  prevail.  We think there are legal arguments about whether

23  that claim is entitled to interest or not under the NextEra

24  merger agreement of olden times under the plan, et cetera,

25  under the law, but that's again something we would be all

1    reserving on.  And we also obviously think that there is an

2    entitlement on the part of creditors to receive compensation

3    if there are distributions or a large portion of the

4    distributions are withheld for some lengthy period of time.

5              And I don't want to get into the merits, I don't

6    think that's appropriate on this call, but we obviously

7    think there's case law, Tribune, GM, and others that stand

8    for that proposition.

9              So again, it would be beneficial I think for us to

10   know the answers to those questions prior to emergence.  If

11   we don't know them prior to emergence then we would have to

12   I think over fund the 275- to account for whatever decision

13   Your Honor might reach on the interest question, the

14   interest running in favor of NextEra, and on the, you know,

15   converse question we think it would be additional for

16   creditors to know, you know, what rate of return, if you

17   will, or interest rate would be assessed against NextEra if

18   they ultimately did not prevail in their appeal.

19             So we think all that clarity is beneficial, and

20   that's why we asked for the hearing prior to an expected

21   emergence day probably March 9th and thereabouts.

22             We understand, Your Honor, we jammed up your

23   schedule by asking you to move heaven and earth to give us

24   the 26th and 27th, so we all understand it's subject to your

25   docket, Your Honor, but that's what we're striving to

1    accomplish really for the benefit of all the parties and

2    that's where we stand.  And I'd invite others to chime in if

3    they'd like.

4         THE COURT:  Well before you do that I'm wondering

5    why doing this at confirmation doesn't make the most sense,

6    because I have two full days, the issues are narrow with

7    regard to the asbestos plaintiffs solely if for no other

8    reason that we've dealt with them previously, obviously we

9    have to deal with the evidence, et cetera, and that would

10   give me the maximum amount of time to make a decision.

11        I don't want to be in a position where if I have a

12   hearing on March, you know, 8th I'm the one holding up

13   confirmation -- the plan going effective, which is taking --

14   every day taking dollars out of unsecured creditors, but I

15   don't know if I'm going to be able to rule from the bench,

16   and if you push it back too far, you know, frankly you're

17   pressuring me in a way that -- requiring me to make a

18   decision perhaps faster than is appropriate or taking the

19   time that I think is appropriate in reducing creditor

20   recoveries.  So maybe you could address why --

21        MR. KIESELSTEIN:  Sure.

22        THE COURT:  -- the confirmation doesn't work for

23   this issue.

24        MR. KIESELSTEIN:  So I was going to turn it over

25   to Mr. McKane for part of the answer, but one thing I want

1    to stress, Your Honor, is while we think it's certainly

2    preferable and desirable to have answers to these questions

3    prior to emergence, if Your Honor were not ready to rule we

4    would emerge on the same time frame, we would simply, you

5    know, be conservative in terms of how much we -- we would

6    refund more than 275- into that escrow, we would fund a good

7    deal more to make sure that we are covering what we need to

8    cover if Your Honor rules that there's a substantial amount

9    of interest that NextEra could earn and we would apply a

10   conservative time frame to that in terms of duration.  And

11   you'll recall we had this exercise with Mr. Anker's (ph)'s

12   clients back one or two plans ago, and we would scope out

13   how long we would have to reserve for.

14          So, Your Honor, I don't see it as something that

15   we would allow to hold up emergence given the million dollar

16   a day run rate on interest plus (indiscernible), so -- but

17   we certainly wouldn't intend to jam Your Honor.

18          With regard to why not on the 26th or 27th, why

19   don't I turn it over to Mr. McKane, because there actually

20   is a fair amount witness and other presentation that we're a

21   little concerned might consume that time.

22          MR. MCKANE:  For the record, Your Honor, Mark

23   McKane of Kirkland & Ellis for the debtors.

24          With regards to the timing, we recognize you set

25   aside two days, and to the extent that we're really dealing

1   with largely an asbestos objection only at confirmation or

2   that to the extent that essentially the NextEra issue as

3   opposed to confirmation is crystallized and narrowed that

4   would not take in and of itself two days.

5           The issue as to what amount of interest would be

6   appropriate to compensate unsecured creditors if NextEra

7   lost or to the extent NextEra tries to argue that it is

8   entitled to compensation, that you know, in and of itself we

9   don't view frankly as a confirmation issue in that it's not

10  an 1129 issue.

11          Nonetheless we would be in a position to put

12  forward any argument at that time to use those two days if

13  you just wanted to consider it a joint hearing on what is

14  the amount of the reserve, you know, given that we are

15  offering to put together a $275 million reserve, which was

16  the confirmation objection that NextEra made.

17          So from a -- you know, from a maximizing the use

18  of time that's available from the debtors' perspective we

19  could do that.

20          Now, what would we anticipate in terms of

21  testimony?  Mr. Kieselstein has already eluded to the fact

22  that other courts have addressed essentially this issue, and

23  what it really boils down to is from a perspective of the

24  unsecured creditors who are going to be not receiving

25  distributions to the extent that NextEra loses are they

1    entitled -- are the unsecured creditors who essentially will

2    have a stay of their distribution to allow NextEra to pursue

3    an appeal of a denied claim, are they entitled to

4    compensation?  And on that issue there is precedent, there

5    are other courts that have looked at this both in the

6    confirmation and in -- and not in a confirmation context.

7    And it really comes down to essentially is there a bond or

8    other undertaking that could be imposed?

9           That does sometimes -- you know, in other courts

10   they look to receive some testimony as to what would be an

11   appropriate rate of -- you know, investment rate of return

12   for those unsecured creditors who are being injured by not

13   receiving that distribution.

14          So there would be some testimony that you would

15   receive, for example, from Mr. Ying for the debtors, I think

16   Elliott would have a witness as well, I expect NextEra may

17   have a witness as well or they may just cross-examine these

18   witnesses to address what is that issue.

19          And Judge Carey looked at that in Tribune, Judge

20   Gerber looked at that in GM as well.  I don't distinct that

21   being days, not at all, I think it's a relatively

22   straightforward analysis, but it would be testimony that

23   would be needed, and I can't speak to how much time NextEra

24   would need to terms of evaluating that.

25          On the flip side I don't -- you know, in terms of

1    interest from NextEra, I think it's a different analysis,

2    it's much more just straight up what does the contract

3    provide and if not the contract is there another argument

4    that can be put forth legally for NextEra to justify an

5    interest rate?

6              But you know, that's a long way of saying -- and I

7    apologize for taking your time -- but it's a long way of

8    saying it is essentially a one-day hearing, I think, but it

9    would probably be the better part of a day given that there

10   might be two to three witnesses presenting testimony on

11   these, we'll call them interest rate issues.

12             Hopefully that's helpful to Your Honor.

13             THE COURT:  I understand.  Yes, that's helpful to

14   get an idea about the context and what I'm -- as I think

15   through these issues I'm struggling, and I'll certainly open

16   it up to other comment, why -- what compensation the

17   creditors might be entitled to if NextEra loses is remotely

18   a confirmation or effective date issue since presumably

19   NextEra isn't on the verge of bankruptcy and we can go -- we

20   can deal with that issue two years from now if it ever

21   arises, and really anything I would decide in the next

22   couple weeks would probably be advisory since no reserve is

23   being sought in any way against NextEra.

24             MR. MCKANE:  Well let me try to address that, Your

25   Honor, if I could just to give you some context.

1              The -- when the courts have looked to can a

2      litigant, you know, essentially stay distributions of

3      unsecured creditors to allow them to pursue an appellate

4      path other courts have said that in that context a bond or

5      other form of undertaking would be appropriate so as to

6      compensate unsecured creditors for the loss -- the

7      opportunity cost for the -- essentially the stay of the

8      distributions from the point of time from when they would

9      have received the distributions to after the length of that

10     appellate process has run at that point in time.

11             I think the debtors' view is -- recognizing that

12     NextEra is investment rate -- that well we would -- you

13     know, we would just want a determination as to what would

14     that compensation be, and so long as NextEra remained at

15     investment rate we would just incorporate that into an order

16     so that if they were to ultimately lose on that that the

17     compensation would be resolved.

18             And I think what Your Honor is saying is that's

19     something you need to decide now or can you decide it later?

20     And what I would find for Your Honor is we don't view it as

21     an advisory opinion because other courts have adjudicated it

22     on the front end as well because the injury accrues to the

23     unsecured creditors through the appellate process the moment

24     that the litigation process extends further than when the

25     distributions would have occurred otherwise.

1          MR. GALARDI:  Right.  Your Honor, it's Gregg

2     Galardi.  May I speak on behalf of Elliott for a minute?

3          THE COURT:  Yes.

4          MR. GALARDI:  Your Honor -- and we're framing it

5     as Your Honor has framed it in the context of a

6     confirmation, but I'd like to take a different perspective

7     on it slightly so that you can understand the creditors'

8     perspective on the matter.

9          Let's assume this was an ordinary confirmation and

10    as Mr. Kieselstein pointed out it's a disallowed claim.

11    Your Honor could confirm a plan and allow distributions to

12    go forward, and what would the average remedy be?  It would

13    be a stay pending appeal.

14          It's not common to have that as the confirmation

15    hearing itself, it is common for people to seek a stay

16    pending appeal, and in essence what NextEra is saying and

17    what the creditors are essentially conceding if we can go

18    forward this way, is we won't fight a stay pending appeal,

19    we don't even request that you post a bond because there's

20    going to be a reserve, but in essence there's got to be a

21    bond for what would have been the distributions to the

22    creditors, we're saving NextEra money, as it admitted in its

23    own stay pending appeal motion, that would be costly and

24    risky to go and receive the money from the creditors and

25    then seek disgorgement.

1           And as Mr. McKane has said, there are courts that

2    say when you post a stay pending appeal of a confirmation or

3    otherwise you look to creditors' interest as to what those

4    funds could be invested at if they were in their hands.

5           So we're doing two things here to try to

6    consensually move this forward.  And what we see this as is,

7    is really a partial stay pending appeal of a confirmation

8    order saying don't make distributions.  Creditors, at least

9    Elliott, is prepared to say don't make distributions, hold

10   the money, but that comes at an expense and at a risk, and

11   just like any stay pending appeal it is ripe on the day that

12   you're staying those distributions.

13          So while we're talking about it in a reserve it's

14   not to administrative solvency, that issue will be taken

15   care of, it's simply we don't need to chase the money to the

16   creditors to get the disgorgement risk, we don't need to

17   take that risk, and what is the quid pro quo for the estate

18   and the creditors saying don't subject you to that risk, but

19   we're not getting our money to invest.

20          And so it is, yes, unusual, but I think it's not a

21   confirmation issue at all, it really is in essence a stay

22   pending appeal of a distribution under a plan, and we're

23   saying we're not going to harm you but you can't ask for

24   that benefit without paying a commercial rate of interest

25   that again Your Honor said it's investment grade or may not

1   be a worry, we've had conversations with the debtors about

2   that, but that doesn't mean it's just simple put the money

3   in a fund and let's see if a year or two from now, you know,

4   whether or not the Third Circuit, the Supreme Court affirms,

5   and if it affirms at least for that period of time creditors

6   may be heard, and we've talked with NextEra, if it doesn't

7   affirm and it reverses then you have to go back to square

8   one, and we have legal views as well as views about whether

9   then the estate would have to be posting some sort of

10  interest or bond, and you know, we'll reserve rights on

11  that.

12          But I think there is an immediate issue as to

13  creditors are denied a distribution and that to me is

14  nothing more than a stay pending appeal.

15          MR. DAUCHER:  Good morning, Your Honor, this is

16  Eric Daucher from Norton Rose Fulbright on behalf of

17  NextEra.

18          We've sat back and listened patiently, and I think

19  Mr. Galardi put his finger on exactly what we think is wrong

20  with their view of the world.  They are looking at this as

21  though it is a stay pending appeal.  That presumes that we

22  do not have a valid objection to confirmation, that the

23  debtors are not obligated to reserve for disputed

24  administrative expense claims.  Frankly we think that's

25  wrong.

1          Before I go further I want to make clear that

2     NextEra's goal isn't to halt confirmation, we don't

3     fundamentally oppose the business deal that's being offered

4     here, we want to see EFH exit bankruptcy as among other

5     reasons frankly that's the only way we get our termination

6     fee paid at the end of the day, and as Your Honor is aware

7     direct appeal has been granted by the Third Circuit, that

8     appeal has been expedited, we've submitted our brief, if my

9     calendar is correct, we're going to have all briefing done

10    by March 20th at which point the Third Circuit has said they

11    will schedule our appeal for the next available panel.

12          So things are moving ahead relatively quickly and

13    it's against that backdrop, but I just want to make clear

14    our sole goal is to make sure that the debtors are able to

15    pay our term medication fee claim at the end of the day.

16          Now, until very recently we've gotten lots of push

17    back from the debtors, from Elliott, regarding establishment

18    of a reserve and all.  They've of course had our preliminary

19    objection on file since the end of October, they've had a

20    final objection on file since the middle of December, is my

21    best recollection, so they've known it was an issue, and we

22    haven't heard until very, very recently that they're willing

23    to post a $275 million reserve.

24          Now, we regard that as a very positive

25    development, but we don't think it's anything more than

1    what's already required by the plan.  Article 6(a) of the

2    plan says that the debtors are supposed to ensure that they

3    have reserved sufficient funds to pay general administrative

4    expense claims.  Now, the definition of allowed in the plan

5    includes claims that become allowed at some point after the

6    effective date.

7              And we can all have our various views about how

8    likely our appeal is to succeed, but the reality is right

9    now what we have is a disputed administrative expense claim,

10   the quantum of which is completely known and which the

11   debtors are now saying they'll reserve for but they want to

12   attach strings, multi-million dollar strings to that

13   reserve.  There are a couple of problems with that.

14             First, the very portion of the plan -- again

15   Section 6(a) -- that discusses making a reserve for

16   administrative expense claim also makes clear that

17   distributions on secured creditors, whether that's Elliott

18   or anybody else, are entirely contingent upon that reserve

19   being established.  That's (indiscernible).

20             Second the very same section states that unsecured

21   creditors are not entitled to any other interest or accrual

22   or anything else on their claim, and it specifically says

23   that's true, even with respect to distributions that are not

24   made on the effective date but ultimately have to be made at

25   some later date.

1          So to us this is really an open and shut issue.

2    The debtors have the burden of establishing the reserve, our

3    objection is that they don't want to do it without

4    establishing now multi-million strings.

5          We think there is an eminently sensible solution

6    to this, and I want to make clear that NextEra isn't going

7    to be the greedy party here, if the debtors are inclined to

8    set aside $275 million in standard escrow and have the

9    interest actually earned on that escrow, run to whoever wins

10   this dispute at the end of the day, whether it's NextEra or

11   whether it flows back into the distribution account, if that

12   satisfies NextEra we're protected, our confirmation

13   objection would be withdrawn, and it can proceed on this

14   basis.

15         But instead what you have, it seems to us -- and

16   again this is all happening in the last few days -- is

17   Elliott saying no, no, no, notwithstanding that the plan

18   says that the debtors are supposed to reserve for

19   administrative expense claims, including ones that may be

20   allowed in the future, and notwithstanding that the plan

21   specifically says that unsecured creditors don't get any

22   accruals on their claims, even with respect to distributions

23   that ultimately have to happen far after the effective date,

24   NextEra should somehow be obligated to post a bond for that.

25         Your Honor, there's nothing in the plan that says

1    anything of the sort.  So if that's the position they're

2    going to stand on then we have to stand on our objections as

3    well, and our objections include the right to pursue our

4    claims, to the extent they're ultimately allowed, against

5    the whole range of potentially liable parties.

6            Now, that could be in the event a satisfactory

7    reserve isn't established, that could be against creditors,

8    disgorgement from creditors, it could also of course be

9    requiring the reorganized debtors to pay the administrative

10   expense claim.

11           The Third Circuit has spoken to this in the past,

12   in the relatively recent past, and said the right thing to

13   do here when there is a disallowed administrative expense

14   claim that goes up on appeal is for the debtors to reserve.

15   The Philadelphia newspapers case.  And the result there if

16   the debtors don't reserve the administrative claim still

17   gets paid at the end of the day.

18           Now, that's not the way we want this to go, we

19   think a reserve with no strings attached solves the problem,

20   but if the debtors and Elliott aren't willing to take yes

21   for an answer, to use Mr. Kieselstein's phrase, then we're

22   going to have a contested confirmation hearing.

23           Thank you, Your Honor.

24           MR. KIESELSTEIN:  Thank you, Your Honor.  It's

25   Marc Kieselstein for the debtors again.

1          A couple of points, and I'll start on something

2    that Mr. Daucher said at the end.  You know, they -- NextEra

3    says they wanted the transaction to go through, but I think

4    the comment about trying to pin this on reorganized EFH is

5    actually a comment that imperils the entire transaction.

6          The merger agreement with Sempra is crystal clear,

7    could not be any clearer about what liabilities the

8    reorganized entity would be taking on, and that's the

9    asbestos liabilities and I think a couple of stray real

10   estate tax issues.  That merger agreement was approved by

11   Your Honor, I don't recall Sempra objecting to it in any

12   way, shape, or form.

13         So I think, you know, that that sort of talk is

14   candidly reckless and could put all of the good work that

15   we're doing now that we're at the one-yard line in jeopardy.

16   So I just wanted to state that very clearly from the

17   debtors' perspective.

18         With regard to the issues of whether reserves have

19   to be set aside for claims that have been disallowed.

20   Again, we don't think the law dictates that such a reserve

21   has to be set up when we have a denied disallowed claim as

22   opposed to one that has not yet been dealt with by the

23   Bankruptcy Court or indeed, you know, has not even yet been

24   filed, and our understanding by the way is NextEra is filing

25   a back-up administrative claim in the event that they are

1    unsuccessful on their appeal, but that's an issue for

2    another day.

3           We simply I think have a fundamental disagreement,

4    but it's happily a legal disagreement about whether or not

5    there needs to be compensation paid for what Mr. Galardi

6    correctly characterized is a stay of a large distribution to

7    a large number of creditors for a potentially long period of

8    time on a claim Your Honor has said has no merit and is

9    disallowed.

10          So, you know, I think that issue can be hashed out

11   by Your Honor, probably not on a call such as this, but you

12   know, with appropriate argument and briefing at the

13   confirmation hearing.

14          So just to bring it back full circle, Your Honor,

15   we think there are these ancillary issues, we're willing to

16   establish the reserve, which we think fully protects

17   NextEra, we're willing to live with whatever Your Honor

18   ultimately tells us in terms of interest running in favor of

19   NextEra, if any, that might have to be put in there, and

20   we're seeking Your Honor's ruling on whether compensation

21   would be due to other creditors.  But we intend to emerge as

22   soon as humanly possible after the PUC enters the approval

23   order, assuming they enter the approval order.  And as we've

24   said all signals are go there.

25          So I think, Your Honor, it probably is not

1    constructive for people to dive into their legal arguments

2    on this sort of call beyond what we've done already.  So

3    that's the debtors' position.

4          THE COURT:  All right.  Well thank you.  It has

5    been helpful to get sort of a 30,000-foot survey of the

6    issues, because it's always difficult when you're receiving

7    these communications, you know, ex parte, which are supposed

8    to be basically procedural in nature and you don't want to

9    delve into the substance of arguments on the telephone over

10   scheduling something.

11         Here's the problem -- here's what you have.  You

12   have confirmation on the 26th and the 27th.  What I heard

13   from NextEra is absent a deal they're going to press a

14   confirmation objection.  To me that sounds like you have to

15   deal with it at confirmation, but that may or may not be the

16   case.

17         If you don't want to deal with it on the 26th and

18   27th the next best date I can give you is something the week

19   of March 19th, which would require me to cancel some

20   vacation I had on the schedule, which is fine, I could give

21   you multiple days that week.  After that we're talking

22   April 2nd, one day.

23         So the Court's calendar is extremely busy.  After

24   April 2nd I don't even know where we go.  Oh, I can do the

25   following week, April 9th and 10th, but we get into April.

1    I cannot meet the request that was made through counsel of

2    March -- early March basically.

3              So I'm kind of going to kick it back to, it sounds

4    like the parties that matter are the debtor, Elliott, and

5    NextEra to figure out how they want to proceed.  But unless

6    we deal with it at confirmation the best I can do for you is

7    the week of March 19th.  I have trials, I have to be out of

8    the office, I have a mediation, I mean I have stuff I just

9    can't move.

10             MR. GALARDI:  Your Honor, from Elliott's

11   perspective, I'm sure this is entirely predictable, we would

12   prefer it to then be heard at confirmation.

13             THE COURT:  Well that's fine expect you have a

14   scheduling issue.  I mean we'll smack dab as much we can in

15   those two days, but you know, there's a lot to do --

16             MR. GALARDI:  Understood.

17             THE COURT:  -- and we can work from, you know,

18   9:30 to 6:00 or so with a short break for lunch and see what

19   we can accomplish.

20             But what I'd prefer is you work offline with each

21   other to figure out how you want to proceed and then you

22   just communicate with chambers.  But I'm happy to hear it

23   the 26th and the 27th, I'm happy to hear it the week of the

24   -- well I'm not happy -- but I will hear it the week of

25   March 19th or April 2nd.

1           MR. DAUCHER:  Your Honor, this is Eric Daucher

2     again with Norton Rose Fulbright on behalf of NextEra.

3           One further point to raise regarding scheduling

4     and testimony.  I think part of what you heard from the

5     debtors and perhaps from Elliott as well is they're

6     anticipating putting on previously undisclosed expert

7     testimony regarding appropriate interest rates, market rates

8     of return, things like that.  Of course the deadline to

9     submit expert reports and disclose this so we can have a

10    proper opportunity to take depositions and develop positions

11    on that they blew those deadlines back in November.

12          So if we're talking about expert testimony we

13    have, you know, a separate issue here and that's something

14    we'll need to hash out between the parties, and the

15    alternative is filing a motion in limine to exclude

16    testimony on those points.

17          THE COURT:  When is the deadline on motions in

18    limine?  Mr. Kieselstein will know.

19          MR. MCKANE:  Your Honor, it's Mark McKane.  We

20    apologize (indiscernible) Mr. Kieselstein.  It was yesterday

21    but we moved it a day to I believe to today to basically

22    allow the parties to continue to discuss the issues.

23          THE COURT:  Yeah, I'm sorry, you moved it to when?

24          MR. MCKANE:  Today.

25          THE COURT:  Oh.

1          MR. MCKANE:  But to cut through all this, Your

2    Honor, the -- this testimony is -- you never want -- there's

3    -- I would not even characterize this as expert testimony,

4    it's not complicated math, nonetheless, you know, we're not

5    trying to jam NextEra in terms of due process, and if they

6    think that they're -- as you know we filed written directs,

7    right, and in those written directs we'll lay out the

8    analysis, you know, in detail, and if they feel like they

9    need a deposition we'll coordinate a deposition.

10          MR. GALARDI:  As will we, Your Honor.

11          MR. MCKANE:  This is not a situation where it

12    takes days and days of due process.  I apologize, go ahead,

13    Mr. Daucher.

14          MR. DAUCHER:  I mean that's an interesting offer,

15    but again, we had deadlines, we had expert report

16    requirements, and those were in November.  We're not talking

17    about -- and this was an issue by the way that NextEra put

18    on the table for you in October.  So I don't know why we're

19    talking three months after the fact --

20          THE COURT:  All right.

21          MR. DAUCHER:  -- about you're not trying to jam us

22    up on due process.

23          THE COURT:  Okay.  I can't -- I'm not going to

24    decide that issue sitting here today.  You can either

25    resolve it or you can file your motions and I'll decide it

1    in short order.  I just -- I don't want to delve -- I just

2    don't want to delve early.  I mean this is turning into a

3    conversation amongst you, which is fine, but generally when

4    I'm involved you talk to me and not to each other.  So let's

5    save that for it being probably ponied up.  If you have to

6    file your motion in limine today I think you'll just have to

7    do that.

8              MR. DAUCHER:  Thank you, Your Honor.

9              THE COURT:  Your you're welcome.

10             MR. HOGAN:  Your Honor, this is Daniel Hogan, the

11   asbestos objectors.

12             I just wanted to make a point, Your Honor, just so

13   the Court was clear, that we've been working diligently with

14   the debtors to streamline both the record from the prior

15   proceedings as well as the documentary record that we intend

16   to admit at the trial all in an effort to streamline the

17   presentation of the asbestos objectors.  You've heard it all

18   before, and there'll be a few little spins on it, but

19   largely it's going to be what you've heard before as you can

20   imagine.  And so hopefully those endeavors inure to the

21   benefit of the Court and to the parties in a somewhat

22   redacted presentation by the asbestos objectors and

23   hopefully that'll inure to your benefit.

24             THE COURT:  Thank you, Mr. Hogan.  I have heard

25   that you were working through the grapevine of -- through my

1   clerk -- very cooperatively with the debtors on this issue

2   and I absolutely appreciate it and I thank you very much,

3   and we will certainly give you the full attention and

4   thoughtfulness to your presentation and we'll see what

5   happens.  But thank you very much.

6           MR. HOGAN:  Thank you, Your Honor.  No problem.

7           THE COURT:  Anything else before I hang up?

8           And if you could -- if I could bother you to get

9   to us by say -- the end of business Tuesday on how we're

10  going to proceed, whether it's going to be at confirmation

11  or in March on these issues I would very much appreciate it.

12          If it turns out you don't have an answer by the

13  end of the day on Tuesday I suppose that's fine as long as

14  you communicate with chambers that that is the case, and you

15  know, give me -- give us some sort of deadline by which we

16  can expect to know exactly what's going forward on the 26th

17  and the 27th.

18          MR. MCKANE:  We will keep you posted, Your Honor,

19  absolutely.  So we thank you.  I think we've tortured you

20  sufficiently for one Friday.

21          THE COURT:  All right.  Thank you very much, and

22  thank you again for making yourself available on such short

23  notice.  I apologize for that.  We're adjourned.

24      (A chorus of thank you)

25      (Whereupon these proceedings were concluded at 11:48

Page 30

1    AM)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 31

1                C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5    Dawn South

Digitally signed by Dawn South
DN: cn=Dawn South, o, ou,
email=digital@veritext.com, c=US
Date: 2018.02.19 15:26:27 -05'00'

6    _____

7    Dawn South

8    Certified Electronic Transcriber

9

10

11   Date:   February 19, 2018

12

13

14

15

16

17

18

19

20

21

22    Veritext Legal Solutions

23    330 Old Country Road

24    Suite 300

25    Mineola, NY 11501

**&**

**&**  3:2,14 4:23
10:23

**1**

**10th**  24:25
**11**  1:6
**1129**  11:10
**11501**  31:25
**11:08**  1:18
**14-10979**  1:7
**16**  1:17
**19**  31:11
**19th**  24:19 25:7
25:25

**2**

**2018**  1:17 31:11
**20th**  18:10
**26th**  4:17 8:24
10:18 24:12,17
25:23 29:16
**275**  6:19 7:21 8:12
10:6 11:15 18:23
20:8
**27th**  4:17 8:24
10:18 24:12,18
25:23 29:17
**2nd**  24:22,24
25:25

**3**

**30,000**  24:5
**300**  31:24
**330**  31:23

**6**

**6**  19:1,15
**6:00**  25:18

**8**

**824**  1:14
**8th**  5:16 6:1,2,3
9:12

**9**

**9:30**  25:18
**9th**  6:1 8:21 24:25

**a**

**ability**  4:16
**able**  9:15 18:14
**absent**  24:13
**absolutely**  29:2,19
**accomplish**  9:1
25:19
**account**  8:12
20:11
**accrual**  19:21
**accruals**  20:22
**accrues**  14:22
**accurate**  31:4
**activities**  5:4
**add**  7:20
**additional**  8:15
**address**  9:20
12:18 13:24
**addressed**  11:22
**adjourned**  29:23
**adjudicated**  14:21
**administered**  1:8
**administrative**
16:14 17:24 19:3
19:9,16 20:19
21:9,13,16 22:25
**admit**  28:16
**admitted**  15:22
**advisory**  13:22
14:21
**affect**  4:16
**affirm**  17:7
**affirms**  17:4,5
**ago**  10:12
**agreement**  7:24
22:6,10
**ahead**  18:12 27:12
**al**  1:7
**allow**  4:21 10:15
12:2 14:3 15:11

26:22
**allowed**  7:6 19:4,5
20:20 21:4
**alternative**  26:15
**amount**  9:10 10:8
10:20 11:5,14
**analysis**  12:22
13:1 27:8
**ancillary**  7:2,15
23:15
**anker's**  10:11
**answer**  7:18 9:25
21:21 29:12
**answers**  8:10 10:2
**anticipate**  11:20
**anticipating**  26:6
**anybody**  19:18
**aparna**  3:7 4:25
**apologize**  13:7
26:20 27:12 29:23
**appeal**  4:15 7:9
8:18 12:3 15:13
15:16,18,23 16:2
16:7,11,22 17:14
17:21 18:7,8,11
19:8 21:14 23:1
**appear**  4:9 7:16
**appellate**  14:3,10
14:23
**apply**  10:9
**appreciate**  29:2
29:11
**appropriate**  8:6
9:18,19 11:6
12:11 14:5 23:12
26:7
**approval**  5:9,22
23:22,23
**approve**  5:15
**approved**  22:10
**april**  24:22,24,25
24:25 25:25

**argue**  11:7
**argument**  11:12
13:3 23:12
**arguments**  6:12
7:22 24:1,9
**arises**  13:21
**article**  19:1
**asbestos**  6:8,10
9:7 11:1 22:9
28:11,17,22
**aside**  10:25 20:8
22:19
**asked**  4:9,19 5:14
8:20
**asking**  8:23
**assessed**  8:17
**associated**  7:3
**assume**  15:9
**assuming**  4:17
23:23
**attach**  19:12
**attached**  21:19
**attention**  29:3
**attorney**  3:3,10
3:15,20
**austin**  5:5
**available**  4:3
11:18 18:11 29:22
**average**  15:12
**aware**  5:7,23 18:6

**b**

**b**  1:21
**back**  5:24 9:16
10:12 17:7,18
18:17 20:11 22:25
23:14 25:3 26:11
**backdrop**  18:13
**bankruptcy**  1:1
1:13,23 13:19
18:4 22:23
**basically**  24:8
25:2 26:21

**basis** 20:14
**behalf** 4:23 15:2
 17:16 26:2
**believe** 4:24 5:7
 26:21
**bench** 9:15
**beneficial** 7:19
 8:9,19
**benefit** 9:1 16:24
 28:21,23
**best** 18:21 24:18
 25:6
**better** 13:9
**beyond** 24:2
**blew** 26:11
**boils** 11:23
**bond** 12:7 14:4
 15:19,21 17:10
 20:24
**bother** 29:8
**break** 6:19 7:7
 25:18
**brief** 5:4,5 18:8
**briefing** 18:9
 23:12
**bring** 23:14
**burden** 20:2
**business** 18:3 29:9
**busy** 24:23

**c**

**c** 3:1 4:1 31:1,1
**calendar** 18:9
 24:23
**call** 8:6 13:11
 23:11 24:2
**cancel** 24:19
**canceled** 5:12
**candidly** 22:14
**care** 16:15
**carey** 12:19
**case** 1:7 7:16 8:7
 21:15 24:16 29:14

**certainly** 10:1,17
 13:15 29:3
**certified** 31:8
**certify** 31:3
**cetera** 4:12 7:24
 9:9
**chambers** 25:22
 29:14
**change** 5:9
**chapter** 1:6
**characterize** 27:3
**characterized**
 23:6
**chase** 16:15
**chime** 9:2
**chorus** 29:24
**christopher** 1:22
**circle** 23:14
**circuit** 4:16 17:4
 18:7,10 21:11
**claim** 6:21 7:6,23
 12:3 15:10 18:15
 19:9,16,22 21:10
 21:14,16 22:21,25
 23:8
**claimant** 3:20
**claimants** 6:8,10
**claims** 17:24 19:4
 19:5 20:19,22
 21:4 22:19
**clarity** 8:19
**clear** 18:1,13
 19:16 20:6 22:6
 28:13
**clearer** 22:7
**clearly** 22:16
**clerk** 4:10 29:1
**clients** 10:12
**closed** 4:5
**comes** 12:7 16:10
**comment** 13:16
 22:4,5

**commercial** 16:24
**commission** 5:11
 5:15
**committed** 5:24
 6:18
**common** 15:14,15
**communicate**
 25:22 29:14
**communication**
 4:10
**communications**
 24:7
**compensate** 11:6
 14:6
**compensated** 7:10
**compensation** 7:7
 8:2 11:8 12:4
 13:16 14:14,17
 23:5,20
**completely** 19:10
**complex** 6:25
**complicated** 27:4
**conceding** 15:17
**concerned** 10:21
**concluded** 29:25
**confirm** 15:11
**confirmation** 4:6
 5:21 6:7,13,17,24
 7:13 9:5,13,22
 11:1,3,9,16 12:6,6
 13:18 15:6,9,14
 16:2,7,21 17:22
 18:2 20:12 21:22
 23:13 24:12,14,15
 25:6,12 29:10
**confirmed** 4:17
**connection** 4:11
 4:12
**consensually** 16:6
**conservative** 10:5
 10:10
**consider** 11:13

**constructive** 24:1
**consultation** 6:17
**consume** 10:21
**contested** 21:22
**context** 12:6
 13:14,25 14:4
 15:5
**contingent** 19:18
**continue** 26:22
**contract** 13:2,3
**control** 5:10
**conversation** 28:3
**conversations**
 17:1
**converse** 8:15
**conversely** 7:8
**cooperatively**
 29:1
**coordinate** 27:9
**corp** 1:7
**corporation** 3:15
**correct** 18:9
**correctly** 23:6
**cost** 14:7
**costly** 15:23
**counsel** 4:2 25:1
**country** 31:23
**couple** 13:22
 19:13 22:1,9
**course** 18:18 21:8
 26:8
**court** 1:1,13 4:2,5
 6:1,3 9:4,22 13:13
 15:3 17:4 22:23
 24:4 25:13,17
 26:17,23,25 27:20
 27:23 28:9,13,21
 28:24 29:7,21
**court's** 24:23
**courts** 11:22 12:5
 12:9 14:1,4,21
 16:1

cover 10:8
covering 10:7
creditor 3:20 9:19
creditors 7:9 8:2
   8:16 9:14 11:6,24
   12:1,12 13:17
   14:3,6,23 15:7,17
   15:22,24 16:3,8
   16:16,18 17:5,13
   19:17,21 20:21
   21:7,8 23:7,21
cross 12:17
crystal 22:6
crystallized 11:3
css 1:7
currently 4:15
   6:21
cut 27:1

**d**

d 4:1
dab 25:14
damages 4:13
daniel 3:22 28:10
date 13:18 19:6
   19:24,25 20:23
   24:18 31:11
dates 4:12
daucher 3:12
   17:15,16 22:2
   26:1,1 27:13,14
   27:21 28:8
dawn 2:25 31:3,7
day 8:21 9:14
   10:16 13:8,9
   16:11 18:6,15
   20:10 21:17 23:2
   24:22 26:21 29:13
days 9:6 10:25
   11:4,12 12:21
   20:16 24:21 25:15
   27:12,12
deadline 26:8,17
   29:15

deadlines 26:11
   27:15
deal 9:9 10:7
   13:20 18:3 24:13
   24:15,17 25:6
dealing 10:25
dealt 5:13 9:8
   22:22
debtor 25:4
debtors 1:8 3:3
   4:11,17,20,24
   10:23 11:18 12:15
   14:11 17:1,23
   18:14,17 19:2,11
   20:2,7,18 21:9,14
   21:16,20,25 22:17
   24:3 26:5 28:14
   29:1
december 18:20
decide 13:21
   14:19,19 27:24,25
decision 8:12 9:10
   9:18
definition 19:4
delaware 1:2,15
delayed 7:11
delve 24:9 28:1,2
denied 12:3 17:13
   22:21
depending 4:14
deposition 27:9,9
depositions 26:10
desirable 10:2
detail 27:8
determination
   14:13
develop 26:10
development 5:25
   18:25
developments
   4:11 5:25
dictates 22:20

differences 6:24
different 13:1
   15:6
difficult 24:6
diligently 28:13
direct 18:7
directs 27:6,7
disagreement
   23:3,4
disallowed 6:21
   15:10 21:13 22:19
   22:21 23:9
disclose 26:9
discuss 4:7 26:22
discussed 6:18
discusses 19:15
discussion 5:5
disgorgement
   15:25 16:16 21:8
dispute 4:13
   20:10
disputed 17:23
   19:9
distinct 12:20
distribution 12:2
   12:13 16:22 17:13
   20:11 23:6
distributions 7:10
   8:3,4 11:25 14:2,8
   14:9,25 15:11,21
   16:8,9,12 19:17
   19:23 20:22
district 1:2
dive 24:1
docket 8:25
documentary
   28:15
doing 9:5 16:5
   22:15
dollar 10:15 19:12
dollars 9:14
due 23:21 27:5,12
   27:22

duration 10:10

**e**

e 1:21,21 3:1,1,6
   4:1,1 31:1
earlier 7:8
early 25:2 28:2
earn 10:9
earned 20:9
earth 8:23
effective 4:18 9:13
   13:18 19:6,24
   20:23
effort 6:23 28:16
efh 18:4 22:4
either 7:12 27:24
electronic 31:8
elliott 3:15 6:18
   12:16 15:2 16:9
   18:17 19:17 20:17
   21:20 25:4 26:5
elliott's 25:10
ellis 3:2 4:23
   10:23
eluded 11:21
emerge 10:4
   23:21
emergence 7:20
   8:10,11,21 10:3
   10:15
eminently 20:5
encore 6:13
endeavors 28:20
energy 1:6 3:10
   6:15
ensure 19:2
enter 23:23
entered 5:22
enters 23:22
entire 22:5
entirely 19:18
   25:11
entitled 7:6,9,23
   11:8 12:1,3 13:17

19:21
entitlement 8:2
entity 22:8
eric 3:12 17:16
26:1
escrow 10:6 20:8
20:9
esq 3:5,6,7,12,17
3:22
essence 15:16,20
16:21
essentially 11:2
11:22 12:1,7 13:8
14:2,7 15:17
establish 23:16
established 19:19
21:7
establishing 20:2
20:4
establishment
18:17
estate 16:17 17:9
22:10
et 1:7 4:12 7:24
9:9
evaluating 12:24
event 7:21 21:6
22:25
evidence 9:9
ex 24:7
exactly 17:19
29:16
examine 12:17
example 12:15
exclude 26:15
exercise 10:11
exit 18:4
expect 12:16
25:13 29:16
expected 8:20
expedited 18:8
expense 16:10
17:24 19:4,9,16

20:19 21:10,13
expert 26:6,9,12
27:3,15
extends 14:24
extent 10:25 11:2
11:7,25 21:4
extremely 4:4
24:23

**f**

f 1:21 31:1
fact 4:5 6:21 7:10
11:21 27:19
fails 7:9
fair 10:20
far 9:16 20:23
faster 9:18
favor 8:14 23:18
february 1:17
31:11
federal 4:5
fee 6:19 7:7 18:6
18:15
feel 27:8
felt 4:7
fight 15:18
figure 25:5,21
file 18:19,20
27:25 28:6
filed 22:24 27:6
filing 22:24 26:15
final 18:20
find 14:20
fine 24:20 25:13
28:3 29:13
finger 17:19
first 7:4 19:14
flip 12:25
flows 20:11
focusing 6:15
following 24:25
foot 24:5
foregoing 31:3

form 14:5 22:12
forth 13:4
forward 11:12
15:12,18 16:6
29:16
frame 10:4,10
framed 15:5
framing 15:4
frankly 9:16 11:9
17:24 18:5
friday 29:20
front 14:22
fulbright 3:9
17:16 26:2
full 9:6 23:14 29:3
fully 6:18 7:13
23:16
fund 6:19 8:12
10:6 17:3
fundamental 23:3
fundamentally
18:3
funded 7:3
funding 7:13
funds 16:4 19:3
further 14:24
18:1 26:3
future 1:6 20:20

**g**

g 4:1
gaiting 7:12
galardi 3:17 15:1
15:2,4 17:19 23:5
25:10,16 27:10
general 19:3
generally 28:3
gerber 12:20
getting 16:19
give 8:23 9:10
13:25 24:18,20
29:3,15,15
given 4:4 10:15
11:14 13:9

giving 5:1
gm 8:7 12:20
go 4:18 7:3 13:19
15:12,17,24 17:7
18:1 21:18 22:3
23:24 24:24 27:12
goal 18:2,14
goes 21:14
going 5:19 9:13
9:15,24 11:24
15:20 16:23 18:9
20:6 21:2,22
24:13 25:3 27:23
28:19 29:10,10,16
good 4:2 10:6
17:15 22:14
gotten 18:16
grade 16:25
granted 18:7
grapevine 28:25
gray 3:14
greedy 20:7
gregg 3:17 15:1
guess 4:12

**h**

halt 18:2
hands 16:4
hang 29:7
happen 20:23
happening 20:16
happens 5:18 29:5
happily 23:4
happy 25:22,23
25:24
hard 6:6
harder 6:23
harm 16:23
hash 26:14
hashed 23:10
hear 25:22,23,24
heard 17:6 18:22
24:12 25:12 26:4
28:17,19,24

**[hearing - march]**

**hearing** 2:1,1 4:12
5:12,21 6:7,14,17
6:24 8:20 9:12
11:13 13:8 15:15
21:22 23:13
**heart** 6:12
**heaven** 8:23
**helpful** 13:12,13
24:5
**hogan** 3:19,22
6:11 28:10,10,24
29:6
**hold** 5:21 10:15
16:9
**holding** 9:12
**holdings** 1:6
**holiday** 4:6
**hon** 1:22
**honor** 5:2,7,23 6:4
7:2 8:13,22,25
10:1,3,8,14,17,22
13:12,25 14:18,20
15:1,4,5,11 16:25
17:15 18:6 20:25
21:23,24 22:11
23:8,11,14,17,25
25:10 26:1,19
27:2,10 28:8,10
28:12 29:6,18
**honor's** 5:21
23:20
**hopefully** 13:12
28:20,23
**hoping** 7:13
**humanly** 23:22
**husnick** 6:11

**i**

**idea** 13:14
**imagine** 28:20
**immediate** 17:12
**imperils** 22:5
**important** 4:7

**imposed** 12:8
**inclined** 20:7
**include** 21:3
**includes** 19:5
**including** 20:19
**incorporate** 14:15
**indiscernible**
10:16 19:19 26:20
**indulgence** 5:3
**injured** 12:12
**injury** 14:22
**instance** 7:4
**intend** 10:17
23:21 28:15
**interest** 4:14 7:15
7:23 8:13,14,17
10:9,16 11:5 13:1
13:5,11 16:3,24
17:10 19:21 20:9
23:18 26:7
**interesting** 27:14
**intervenor** 5:9
**intervenors** 5:8
**inure** 28:20,23
**invest** 16:19
**invested** 16:4
**investment** 12:11
14:12,15 16:25
**invite** 9:2
**involved** 28:4
**issue** 5:3 9:23
11:2,5,9,10,22
12:4,18 13:18,20
16:14,21 17:12
18:21 20:1 23:1
23:10 25:14 26:13
27:17,24 29:1
**issues** 4:7 5:7 6:5
7:3,16 9:6 13:11
13:15 22:10,18
23:15 24:6 26:22
29:11

**item** 7:12

**j**

**jam** 10:17 27:5,21
**jammed** 8:22
**jeopardy** 22:15
**joint** 11:13
**jointly** 1:8
**judge** 1:23 4:2,22
12:19,19
**justify** 13:4

**k**

**k** 3:22
**keep** 29:18
**kick** 25:3
**kieselstein** 3:5
4:22,23 6:2,4 9:21
9:24 11:21 15:10
21:24,25 26:18,20
**kieselstein's** 21:21
**kind** 25:3
**kirkland** 3:2 4:23
10:23
**know** 6:7,12 7:6
7:19,20 8:10,11
8:14,16,16 9:12
9:15,16 10:5 11:8
11:14,17 12:9,11
12:25 13:6 14:2
14:13 17:3,10
22:2,13,23 23:10
23:12 24:7,24
25:15,17 26:13,18
27:4,6,8,18 29:15
29:16
**known** 18:21
19:10

**l**

**large** 8:3 23:6,7
**largely** 11:1 28:19
**law** 6:22 7:25 8:7
22:20

**lay** 27:7
**legal** 7:22 17:8
23:4 24:1 31:22
**legally** 13:4
**length** 14:9
**lengthy** 8:4
**liabilities** 22:7,9
**liable** 21:5
**light** 5:11
**limb** 5:19
**limine** 26:15,18
28:6
**line** 4:24 6:23
22:15
**listened** 17:18
**litigant** 14:2
**litigation** 14:24
**little** 7:17 10:21
28:18
**live** 5:9 23:17
**llp** 3:9,14
**long** 10:13 13:6,7
14:14 23:7 29:13
**look** 12:10 16:3
**looked** 12:5,19,20
14:1
**looking** 17:20
**lose** 14:16
**loses** 11:25 13:17
**loss** 14:6
**lost** 11:7
**lot** 25:15
**lots** 18:16
**lunch** 25:18

**m**

**making** 4:3 19:15
29:22
**management** 3:15
**marc** 3:5 21:25
**march** 5:16 6:1,1
6:2,3 8:21 9:12
18:10 24:19 25:2
25:2,7,25 29:11

mark   3:6 4:23,24
  10:22 26:19
market   1:14 26:7
math   27:4
matter   15:8 25:4
maximizing   11:17
maximum   9:10
mcdaniel   3:19
mckane   3:6 4:24
  9:25 10:19,22,23
  13:24 16:1 26:19
  26:19,24 27:1,11
  29:18
mean   17:2 25:8,14
  27:14 28:2
mediation   25:8
medication   18:15
meet   25:1
meeting   5:16
merger   7:24 22:6
  22:10
merit   23:8
merits   5:12 8:5
middle   18:20
million   6:19 10:15
  11:15 18:23 19:12
  20:4,8
mineola   31:25
minute   15:2
moment   14:23
monday   4:5
money   7:20 15:22
  15:24 16:10,15,19
  17:2
months   27:19
morning   4:2
  17:15
motion   15:23
  26:15 28:6
motions   26:17
  27:25
move   8:23 16:6
  25:9

moved   26:21,23
moving   18:12
multi   19:12 20:4
multiple   24:21

**n**

n   3:1 4:1 31:1
narrow   9:6
narrowed   11:3
nature   24:8
need   7:20 10:7
  12:24 14:19 16:15
  16:16 26:14 27:9
needed   12:23
needs   23:5
never   27:2
nevertheless   6:12
newspapers   21:15
nextera   3:10 4:14
  6:9,16 7:4,9,17,21
  7:23 8:14,17 10:9
  11:2,6,7,16,25
  12:2,16,23 13:1,4
  13:17,19,23 14:12
  14:14 15:16,22
  17:6,17 20:6,10
  20:12,24 22:2,24
  23:17,19 24:13
  25:5 26:2 27:5,17
nextera's   7:14
  18:2
north   1:14
norton   3:9 17:16
  26:2
noted   7:2
notice   4:4 29:23
notwithstanding
  6:20,21 20:17,20
november   26:11
  27:16
number   23:7
ny   31:25

**o**

o   1:21 4:1 31:1
objecting   22:11
objection   5:9 6:16
  7:15 11:1,16
  17:22 18:19,20
  20:3,13 24:14
objections   5:13
  6:8 21:2,3
objectors   28:11
  28:17,22
obligated   17:23
  20:24
obligation   5:10
obviously   4:4 6:6
  8:1,6 9:8
occurred   14:25
october   18:19
  27:18
offer   7:13 27:14
offered   6:25 18:3
offering   11:15
office   25:8
officially   5:22
offline   25:20
oh   24:24 26:25
okay   27:23
old   31:23
olden   7:24
once   7:3
ones   20:19
open   5:16 13:15
  20:1
opinion   14:21
opportunity   5:1
  14:7 26:10
oppose   18:3
opposed   6:25 11:3
  22:22
order   5:14,22
  14:15 16:8 23:23
  23:23 28:1

ordinary   15:9

**p**

p   3:1,1 4:1
paid   18:6 21:17
  23:5
panel   18:11
part   8:2 9:25 13:9
  26:4
parte   24:7
partial   16:7
parties   9:1 21:5
  25:4 26:14,22
  28:21
party   20:7
path   14:4
patiently   17:18
pay   18:15 19:3
  21:9
payable   4:14
paying   16:24
pending   4:15
  15:13,16,18,23
  16:2,7,11,22
  17:14,21
people   15:15 24:1
period   8:4 17:5
  23:7
perspective   11:18
  11:23 15:6,8
  22:17 25:11
ph   10:11
philadelphia
  21:15
phone   4:19
phrase   21:21
pin   22:4
plaintiffs   9:7
plan   4:17 7:24
  9:13 15:11 16:22
  19:1,2,4,14 20:17
  20:20,25
plans   10:12

**plus** 10:16
**point** 14:8,10
  18:10 19:5 26:3
  28:12
**pointed** 15:10
**points** 22:1 26:16
**ponied** 28:5
**portion** 8:3 19:14
**position** 6:23 9:11
  11:11 21:1 24:3
**positions** 26:10
**positive** 5:5,20,25
  18:24
**possible** 4:13
  23:22
**post** 15:19 16:2
  18:23 20:24
**posted** 29:18
**posting** 17:9
**posture** 6:20
**potentially** 21:5
  23:7
**precedent** 12:4
**predictable** 25:11
**prefer** 25:12,20
**preferable** 10:2
**preliminary**
  18:18
**prepare** 5:14
**prepared** 16:9
**presentation** 4:21
  6:13 10:20 28:17
  28:22 29:4
**presenting** 13:10
**press** 24:13
**pressuring** 9:17
**presumably** 13:18
**presumes** 17:21
**presumptuous**
  5:18
**prevail** 7:22 8:18
**prevails** 7:5

**previously** 9:8
  26:6
**primary** 6:7
**prior** 7:19 8:10,11
  8:20 10:3 28:14
**pro** 16:17
**probable** 4:13
**probably** 6:11
  8:21 13:9,22
  23:11,25 28:5
**problem** 21:19
  24:11 29:6
**problems** 19:13
**procedural** 6:20
  24:8
**proceed** 20:13
  25:5,21 29:10
**proceedings**
  28:15 29:25 31:4
**process** 5:18
  14:10,23,24 27:5
  27:12,22
**proper** 26:10
**proposition** 8:8
**protect** 7:21
**protected** 20:12
**protects** 23:16
**provide** 5:4 13:3
**puc** 5:11,18 23:22
**pursue** 12:2 14:3
  21:3
**push** 9:16 18:16
**put** 11:11,15 13:4
  17:2,19 22:14
  23:19 27:17
**putting** 26:6
**puzzled** 7:17

**q**

**quantum** 19:10
**question** 7:4 8:13
  8:15
**questions** 8:10
  10:2

**quickly** 18:12
**quid** 16:17
**quo** 16:17

**r**

**r** 1:21 3:1 4:1 31:1
**raise** 26:3
**raised** 5:8 6:5
**range** 21:5
**rate** 8:16,17 10:16
  12:11,11 13:5,11
  14:12,15 16:24
**rates** 26:7,7
**reach** 8:13
**ready** 10:3
**real** 22:9
**reality** 19:8
**really** 7:4 9:1
  10:25 11:23 12:7
  13:21 16:7,21
  20:1
**reason** 4:9 9:8
**reasons** 18:5
**recall** 10:11 22:11
**receive** 8:2 12:10
  12:15 15:24
**received** 4:10 7:7
  14:9
**receiving** 11:24
  12:13 24:6
**recite** 6:11
**reckless** 22:14
**recognize** 10:24
**recognizing** 14:11
**recollection** 18:21
**record** 10:22
  28:14,15 31:4
**recoveries** 9:20
**redacted** 28:22
**reducing** 9:19
**refund** 10:6
**regard** 5:6 6:10
  9:7 10:18 18:24
  22:18

**regarding** 18:17
  26:3,7
**regards** 10:24
**relatively** 12:21
  18:12 21:12
**remained** 14:14
**remaining** 6:8
**remedy** 15:12
**remotely** 13:17
**reorganized** 21:9
  22:4,8
**report** 5:24 27:15
**reports** 26:9
**request** 15:19
  25:1
**requests** 4:12
**require** 24:19
**required** 19:1
**requirements**
  27:16
**requiring** 9:17
  21:9
**reserve** 6:19 7:3
  7:14 10:13 11:14
  11:15 13:22 15:20
  16:13 17:10,23
  18:18,23 19:11,13
  19:15,18 20:2,18
  21:7,14,16,19
  22:20 23:16
**reserved** 7:15
  19:3
**reserves** 22:18
**reserving** 8:1
**resolve** 6:16,24
  7:14 27:25
**resolved** 5:8 14:17
**respect** 19:23
  20:22
**result** 21:15
**results** 4:15
**return** 8:16 12:11
  26:8

reverses 17:7
right 4:20 15:1
 19:8 21:3,12 24:4
 27:7,20 29:21
rights 17:10
ripe 16:11
risk 16:10,16,17
 16:18
risky 15:24
road 7:5 31:23
ropes 3:14
rose 3:9 17:16
 26:2
rule 9:15 10:3
rules 10:8
ruling 23:20
run 10:16 14:10
 20:9
running 8:14
 23:18

**s**

s 1:22 3:1 4:1
 10:11
sat 17:18
satisfactory 21:6
satisfies 20:12
save 28:5
saving 15:22
saying 13:6,8
 14:18 15:16 16:8
 16:18,23 19:11
 20:17
says 19:2,22 20:18
 20:21,25 22:3
schedule 8:23
 18:11 24:20
scheduled 4:6
 5:12
scheduling 24:10
 25:14 26:3
scope 10:12
second 19:20

section 19:15,20
secured 19:17
see 10:14 16:6
 17:3 18:4 25:18
 29:4
seek 15:15,25
seeking 23:20
sempra 5:6 22:6
 22:11
sense 9:5
sensible 20:5
separate 26:13
set 10:24 20:8
 22:19,21
shape 22:12
short 4:4 25:18
 28:1 29:22
shut 20:1
side 12:25
signals 5:20 23:24
simple 17:2
simpler 6:25
simply 10:4 16:15
 23:3
sitting 27:24
situation 27:11
slightly 15:7
smack 25:14
sole 18:14
solely 9:7
solution 20:5
solutions 31:22
solvency 16:14
solves 21:19
somewhat 28:21
sontcehi 1:22
sontchi 4:3,22
soon 23:22
sooner 4:7
sorry 26:23
sort 17:9 21:1
 22:13 24:2,5
 29:15

sought 13:23
sounds 24:14 25:3
south 2:25 31:3,7
speak 7:18 12:23
 15:2
specifically 19:22
 20:21
spins 28:18
spoken 21:11
square 17:7
staff 5:14
stand 8:7 9:2 21:2
 21:2
standard 20:8
start 22:1
state 22:16
states 1:1,13
 19:20
status 2:1
stay 12:2 14:2,7
 15:13,15,18,23
 16:2,7,11,21
 17:14,21 23:6
staying 16:12
straight 13:2
straightforward
 12:22
stray 22:9
streamline 6:6,16
 28:14,16
street 1:14
stress 10:1
strings 19:12,12
 20:4 21:19
striving 8:25
struggling 13:15
stuff 25:8
subject 8:24 16:18
submit 26:9
submitted 18:8
substance 24:9
substantial 10:8

succeed 19:8
sufficient 7:14
 19:3
sufficiently 29:20
suite 31:24
support 6:22
suppose 29:13
supposed 19:2
 20:18 24:7
supreme 17:4
sure 9:21 10:7
 18:14 25:11
survey 24:5

**t**

t 31:1,1
table 27:18
take 5:15 11:4
 15:6 16:17 21:20
 26:10
taken 16:14
takes 27:12
talk 22:13 28:4
talked 17:6
talking 16:13
 24:21 26:12 27:16
 27:19
tax 22:10
telephone 24:9
telephonic 2:1 3:5
 3:6,7,12,17,22
tells 23:18
term 18:15
termination 18:5
terms 10:5,10
 11:20 12:24,25
 23:18 27:5
testimony 11:21
 12:10,14,22 13:10
 26:4,7,12,16 27:2
 27:3
thank 4:3,22 5:1
 6:3 21:23,24 24:4
 28:8,24 29:2,5,6

29:19,21,22,24
**thereabouts** 8:21
**thing** 9:25 21:12
**things** 16:5 18:12
26:8
**think** 5:19,20,24
6:10,15,22 7:19
7:22 8:1,6,7,9,12
8:15,19 9:19 10:1
12:15,21 13:1,8
13:14 14:11,18
16:20 17:12,18,19
17:24 18:25 20:5
21:19 22:3,9,13
22:20 23:3,10,15
23:16,25 26:4
27:6 28:6 29:19
**third** 4:16 17:4
18:7,10 21:11
**thoughtfulness**
29:4
**three** 13:10 27:19
**time** 7:8 8:4 9:10
9:19 10:4,10,21
11:12,18 12:23
13:7 14:8,10 17:5
23:8
**times** 7:24
**timing** 10:24
**today** 4:9 26:21
26:24 27:24 28:6
**top** 7:20
**tortured** 29:19
**transaction** 5:6,15
22:3,5
**transcribed** 2:25
**transcriber** 31:8
**transcript** 31:3
**trial** 28:16
**trials** 25:7
**tribune** 8:7 12:19
**tries** 11:7

**true** 19:23 31:4
**try** 6:23 13:24
16:5
**trying** 6:6,15 22:4
27:5,21
**tuesday** 29:9,13
**turn** 4:20 5:3 6:4
9:24 10:19
**turning** 28:2
**turns** 29:12
**two** 6:7 7:5,8 9:6
10:12,25 11:4,12
13:10,20 16:5
17:3 25:15

**u**

**u.s.** 1:23
**ultimately** 7:5,21
8:18 14:16 19:24
20:23 21:4 23:18
**understand** 8:22
8:24 13:13 15:7
**understanding**
22:24
**understood** 25:16
**undertaking** 12:8
14:5
**undisclosed** 26:6
**unfortunately**
7:16
**united** 1:1,13
**unsecured** 9:14
11:6,24 12:1,12
14:3,6,23 19:20
20:21
**unsuccessful** 23:1
**unusual** 16:20
**update** 5:4
**use** 11:12,17
21:21

**v**

**vacation** 24:20
**valid** 17:22

**validates** 5:20
**various** 19:7
**verge** 13:19
**veritext** 31:22
**view** 7:12 11:9
14:11,20 17:20
**views** 17:8,8 19:7

**w**

**want** 5:4,17 8:5
9:11,25 14:13
18:1,4,13 19:11
20:3,6 21:18 24:8
24:17 25:5,21
27:2 28:1,2
**wanted** 5:23
11:13 22:3,16
28:12
**way** 9:17 13:6,7
13:23 15:18 18:5
21:18 22:12,24
27:17
**ways** 7:4
**we've** 6:15 9:8
17:1,6,18 18:8,16
23:23 24:2 28:13
29:19
**week** 4:6 5:13
24:18,21,25 25:7
25:23,24
**weeks** 13:22
**welcome** 28:9
**willing** 18:22
21:20 23:15,17
**willingness** 5:21
**wilmington** 1:15
**wins** 20:9
**withdrawn** 20:13
**withheld** 8:4
**witness** 10:20
12:16,17
**witnesses** 12:18
13:10

**wondering** 9:4
**work** 9:22 22:14
25:17,20
**working** 28:13,25
**world** 17:20
**worry** 17:1
**written** 27:6,7
**wrong** 17:19,25

**y**

**yard** 22:15
**yeah** 26:23
**year** 7:5,8 17:3
**years** 13:20
**yenamandra** 3:7
**yenarmandra**
4:25
**yesterday** 5:11
26:20
**yesterday's** 5:4
**ying** 12:15