## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- X
                                                        :
In re:                                                  :    Chapter 11
                                                        :
Energy Future Holdings, Inc., *et al.*,[1]              :    Case No. 14-10979 (CSS)
                                                        :
                    Debtors.                            :    (Jointly Administered)
                                                        :
                                                        :    **Objection Deadline: TBD**
                                                        :    **Hearing Date: TBD**
------------------------------------------------------- X

## APPLICATION OF NEXTERA ENERGY, INC. FOR
## ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM

NextEra Energy, Inc. ("NextEra") hereby submits this application (the "Expense Application") for the allowance and payment of an administrative claim for expenses incurred in its efforts to close on the purchase of EFH and EFIH.[2] NextEra respectfully represents:

### PRELIMINARY STATEMENT

This Expense Application is made in the alternative to NextEra's application for payment of the Termination Fee, which is the subject of an appeal from this Court's October 18, 2017 Reconsideration Order now pending in the Third Circuit.[3] If the Reconsideration Order is affirmed, instead of the Termination Fee, NextEra will be entitled to recover its out-of-pocket expenses and other costs incurred in its efforts to complete the transaction, obtain the requisite

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed to them in the Background section.

[3]    Given the current schedule, NextEra's appeal of the Reconsideration Order likely will not be resolved before confirmation. NextEra, as the Court is aware, contends that the Debtors should be required to reserve for the Termination Fee. While NextEra recognizes that this Expense Application should be resolved after resolution of the pending appeal, NextEra presents it now so that the Court's determinations concerning appropriate reserving can be made in light of this alternative claim.

regulatory approvals, and complete the acquisition of Debtors' Oncor assets from the time the Merger Agreement was executed until the Debtors gave notice of termination.[4]  Indeed, such expense reimbursement is exactly what counsel for Elliott, arguing in support of its Reconsideration Motion, asserted that an unsuccessful acquirer should recover (rather than a termination fee) in circumstances like those here.[5]

NextEra's Expense Application is on all fours with the court's decision in *In re Women First Healthcare, Inc.*, 332 B.R. 115 (Bankr. D. Del 2005).  There, the court awarded a stalking horse bidder expenses it had incurred in preparing to close on the acquisition of certain assets of a chapter 11 debtor before the court rescinded its order approving the sale and ordered a new auction.   The unsuccessful purchaser was entitled to recover its expenses under section 503(b)(1)(A) of the Bankruptcy Code because the expenditures benefitted the estate (even though the transaction was not consummated). [6]

NextEra is similarly entitled to recover under section 503(b)(1)(A) for its expenditures incurred in an effort to complete and close the transaction as contemplated by the Merger Agreement.  As the Debtors have acknowledged, that transaction "provide[d] massive value to the EFH/EFIH Debtors' estates . . . ."[7]  Indeed, the Merger Agreement would have realized over $9.8 billion for the estate (hundreds of millions more than the Sempra transaction currently under consideration).

---

[4]    NextEra's appeal of the Reconsideration Order takes issue, *inter alia*, with a number of the Court's determinations concerning the Debtors' presentations in support of their motion for approval of the Termination Fee.  This Expense Application assumes in the alternative that the Court's determinations on those matters are upheld by the Third Circuit.

[5]    Hr'g Tr., Sept. 19, 2017, at 39:9-10.

[6]    *In re Women First Healthcare*, 332 B.R. at 121-22.

[7]    Hr'g Tr., Sept. 19, 2016, at 121:17-19; *EFH/EFIH Debtors' Omnibus Reply to Objections to Motion of Energy Future Holdings Corp. et al., for Entry of an Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* [D.I. 9536] ("Approval Reply") ¶ 21.

As the Court has recognized, NextEra expended tens of millions of dollars seeking to complete the transaction and close on the Merger Agreement.[8]  In fact, as explained in the declaration of Mark Hickson submitted herewith, NextEra incurred a total of over $59 million, including expenses for regulatory approval efforts, financing-related expense, and other transaction-related expenses.  (This is a conservative number which excludes hundreds of millions of dollars in financing and other costs that could be ascribed to the terminated transaction.)  If the Court's Reconsideration Order is affirmed and NextEra's application for the $275 million Termination Fee is rejected, NextEra is entitled instead to be fully reimbursed for these expenses.

## BACKGROUND

1.      On April 29, 2014, the above-captioned debtors and debtors-in-possession (the "Debtors") commenced these Chapter 11 cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.      In April 2016, after an extensive and strategic marketing process and various other efforts to sell their approximately 80% economic interest in Oncor Electric Delivery Company LLC ("Oncor"), the Debtors engaged in discussions with NextEra which eventuated in the Merger Agreement.[9]  NextEra had consistently demanded a Termination Fee in earlier discussions with the Debtor, and continued to do so throughout these negotiations.  As the Debtors noted, "NextEra has insisted [the Termination Fee] be included in their proposed transaction in every term sheet and merger agreement draft exchanged . . . ."[10]

---

[8]   *Opinion on Motion for Reconsideration of an Order Approving, Among Other Things, a Termination Fee in the Amount of $275 million* [D.I. 11998] ("Reconsideration Opinion") at 32.

[9]   *See Motion Of The EFH/EFIH Debtors For Order (A) Authorizing Entry Into Merger Agreement, (B) Approving Termination Fee, And (C) Authorizing Entry Into and Performance Under Plan Support Agreement* [D.I. 9190] ("Approval Motion").

[10]  Approval Reply ¶ 3.

3.      On July 25, 2016, NextEra made an "eleventh hour" concession, agreeing to surrender its demand for a right to match any competing bids, and to increase the purchase price by $110 million, in exchange for an increase in the amount of the Termination Fee to $275 million.[11]  Thus, as the Debtors explained, the Termination Fee was a vigorously negotiated term that was "ultimately necessary to induce NextEra" to enter into a deal that would provide "massive value" to the Debtors' estates.[12]

4.      On July 29, 2016, certain of the Debtors, NextEra, and related entities entered into the Agreement and Plan of Merger by and among NextEra, EFH Merger Co., LLC, Energy Future Intermediate Holding Company LLC ("EFIH"), and Energy Future Holdings Corp. ("EFH"), dated July 29, 2016 (the "Merger Agreement").[13]  Under the Agreement, NextEra would acquire assets with approximately $6.7 billion in debt (as well as other liabilities, including asbestos liabilities) and infuse approximately $9.5 billion (later increased to $9.8 billion), largely in cash, into the estate.[14]  The Merger Agreement provided for a termination fee in the amount of $275 million, payable to NextEra under certain conditions if the proposed transaction could not be consummated (the "Termination Fee"), which NextEra agreed to accept in lieu of reimbursement for its expenses (including its professional fees).[15]  The Merger Agreement would become enforceable against Debtors only upon an Approval Order by the Bankruptcy Court.[16]  Further, NextEra was entitled to terminate the Agreement if it was not approved by the Bankruptcy Court within forty-five days.[17]

---

[11]    Approval Reply ¶¶ 2, 19.

[12]    Approval Motion ¶¶ 40-43.

[13]    Approval Motion, Exh. 1 to Exh. A (Merger Agreement).

[14]    Approval Reply ¶ 21; Hr'g Tr. Sept. 19, 2016 [D.I. 9606] at 13:23–15:3.

[15]    Merger Agreement § 8.5(b); *see also id.* § 6.7.

[16]    Merger Agreement § 5.1(c).

[17]    Merger Agreement § 8.4(j).

5.      Also on July 29, 2016, EFH, EFIH, certain of their affiliates, and NextEra entered into a Plan Support Agreement (the "Plan Support Agreement")[18] in support of the Amended Joint Plan of Reorganization of Energy Future Holdings Corp. et al., pursuant to Chapter 11 of the Bankruptcy Code, as modified and filed with the Bankruptcy Court on August 5, 2016 [D.I. 9199]. The Plan Support Agreement was not "effective and binding" on the Debtors until the Bankruptcy Court approved the Plan Support Agreement and Merger Agreement.[19] As with the Merger Agreement, NextEra was entitled to terminate the Plan Support Agreement if the Court did not timely enter an order approving the Plan Support Agreement and Merger Agreement (including the Termination Fee as set forth in the Merger Agreement); ultimately, the deadline for entry of the order was extended to September 20, 2016.[20]

6.      The Debtors undertook the duty to and responsibility for presenting the Merger Agreement and its Termination Fee to this Court for approval. All written submissions, evidentiary presentations, and arguments concerning approval were made by the Debtors, not NextEra. This was entirely consonant with the allocation of roles under the Plan Support Agreement.[21] The Debtors knew and intended that NextEra would be dependent upon the Debtors to obtain the requisite Approval Order from the Bankruptcy Court, and would rely upon the Debtors to properly do so.

7.      By motion dated August 3, 2016 (the "Approval Motion"), the Debtors sought approval of their entry into the Plan Support Agreement and the Merger Agreement, and, in particular, of the Merger Agreement's Termination Fee. The Debtors submitted supporting

---

[18]   Approval Motion, Exh. 2 to Exh. A (Plan Support Agreement). *See also* Amended and Restated Plan Support Agreement, dated September 19, 2016 [D.I. 9584-4].

[19]   Plan Support Agreement § 2.

[20]   Plan Support Agreement §§ 3(a), 3(b), and 8.03(b); Amended and Restated Plan Support Agreement § 8.03(b).

[21]   Compare Plan Support Agreement §§ 4.02(a)(i), 4.02(a)(iv) (requiring Debtors to make filings and take all steps reasonably necessary to obtain approval), with *id.* § 4.03(a)(iii) (requiring only that NextEra to make "good faith efforts to assist").

declarations by key members of the Debtors' advisory team, including William Hiltz and David Ying.[22]  Among other things, the Debtors observed that the Termination Fee was "one part of a larger transaction" that "provide[d] massive value to the EFH/EFIH Debtors' estates,"[23] acknowledged the risks NextEra was assuming by entering into the Merger Agreement, and demonstrated that the "negotiation history proves, [the Termination Fee] is one protection that has *always* been required by NextEra."[24]  The Debtors further explained that the size of the Termination Fee was directly related to NextEra's commitment to increase its purchase price at the "eleventh hour," and to drop its demand for a right to match competing offers.[25]

8.      Several creditors objected to the Approval Motion and, in particular, to the Termination Fee, including Fidelity Management & Research Company; the Estate of George Fenicle, David William Fahy, and John H. Jones (the "Asbestos Objectors"); American Stock Transfer & Trust Company, LLC, as successor trustee to The Bank of New York Mellon Trust Company, N.A. (the "EFH Indenture Trustee"); and Contrarian Capital Management, LLC, which joined in the briefs of the EFH Indenture Trustee.[26]

9.      Working to garner additional creditor support, NextEra again agreed to increase its offer, this time by an additional $300 million (in addition to its prior $110 million increase), in exchange for which certain major creditors agreed to drop their objections to the Termination Fee

---

[22]    *See Declaration of William O. Hiltz in Support of the Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* [D.I. 9191]; *Declaration of David Ying in Support of the Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* [D.I. 9192].

[23]    Approval Reply, ¶¶ 16, 21.

[24]    *Id.* at ¶ 22; *see also id.* at ¶ 3.

[25]    *Id.* at ¶¶ 2, 19.

[26]    D.I. 9397-99 and 9402.

and support the deal in its entirety.[27]  By the time of the hearing on September 19, 2016, all of the objecting creditors except the Asbestos Objectors had withdrawn their objections.

10.    On September 19, 2016, the Court held a full evidentiary hearing concerning approval of the Merger Agreement and Plan Support Agreement (the "Approval Hearing").  In the hearing, the Debtors presented evidence, including the testimony of William Hiltz addressing the Termination Fee, and argument by counsel in support of the merger and the Termination Fee. The Asbestos Creditors presented their objections.

11.    NextEra, which attended the hearing, did not make a presentation.  The fact that NextEra did not interject itself into the proceedings is not remarkable.  The purpose of the approval hearing was for the Debtors to establish the estates' interest in entering into the Merger Agreement.  NextEra was the Debtors' counterparty, the party against whom the Debtors negotiated.  Demonstrating that the transaction benefitted the estates was properly the province of the Debtors.  The Debtors knew that NextEra would not be an active participant in the proceedings, and intended that this would be the case.

12.    Following the close of argument, the Court entered the Approval Order, overruling any remaining objections on the merits and approving the Termination Fee as an allowable administrative expense.  The Court found that "the evidence overwhelmingly indicates that a breakup fee was necessary to induce NextEra to make a bid, and to move forward with a merger agreement."[28]  And the Court specifically ruled that "the EFH/EFIH Debtors are authorized and directed to pay the Termination Fee as an allowed administrative expense to the extent it becomes due and payable pursuant to the terms and conditions of the Merger

---

[27]    Hr'g Tr., Sept. 19, 2016 at 13:23–15:3.

[28]    *Id.* at 121:17-19.

Agreement, at the time and in the manner provided for therein, without any further proceedings before, or order of, the Court . . . ."[29]

13.    Three days later, on September 22, 2016, Commissioner Anderson of the Public Utility Commission of Texas ("PUCT") expressed concerns that the Merger Agreement, and in particular the Termination Fee, were contrary to public policy because they would "tie the [PUCT]'s hands" by forcing it to choose between approving the transaction without burdensome conditions and (somehow) risking placing a burden on *ratepayers* (not the Debtors' estate) from the Termination Fee.[30]  The two other PUCT members, Commissioner Marquez and Chairman Nelson, appeared to share Commissioner Anderson's concerns.[31]

14.    In response, NextEra drafted a letter to the Court confirming the circumstances in which the Termination Fee would be payable to NextEra.  NextEra shared a draft of that letter with the Debtors, who then requested to join the letter as signatories.  NextEra agreed and the parties jointly submitted the final letter to the Court on September 25, 2016 (the "Clarification Letter").  In that letter, the parties explained that:

> the $275 million termination fee is triggered if EFH and/or EFIH terminate the merger agreement as a consequence of the [PUCT] either not approving the merger agreement transaction or approving the merger transaction with the imposition of a burdensome condition.  In order for EFH and/or EFIH to pursue an alternative transaction, EFH and EFIH believe that they would only terminate in such a situation if they had an alternative proposal to pursue.[32]

The parties went on to confirm that "[t]he termination fee is not triggered if, under the same circumstances, NextEra Energy terminates the merger agreement instead of EFH and/or EFIH."[33]

---

[29]    *Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* [D.I. 9584] ("Approval Order") ¶ 4.

[30]    Tr. September 22, 2016 Open Meeting before the PUCT [D.I. 11878-3] at 88-89.

[31]    *See id.*

[32]    Clarification Letter [D.I. 9655].

[33]    *Id.*

15.     At a previously scheduled September 26, 2016 hearing, the Court departed from the agenda and responded to Commissioner Anderson's concern "as to whether the merger agreement is contrary to public policy because the termination fee of 275 million is payable to NextEra if the PUCT approves the transaction but NextEra declines to close the transaction because the PUCT has imposed a burdensome condition as defined in the merger agreement."[34] The Court noted the parties' statement in the Clarification Letter that "NextEra is not entitled to a termination fee under the merger agreement if NextEra terminates the merger agreement because the PUCT either approves the merger agreement transaction with burdensome conditions or does not approve the merger transaction" and that "NextEra will not seek to collect any portion of the termination fee contemplated by the merger agreement in the event NextEra terminates the merger agreement" after regulatory disapproval.[35] The Court then reviewed the Termination Fee provision and reiterated its approval of the Fee as an administrative expense.[36]

16.     Following its entry into the Merger Agreement, and, in particular, the Court's approval of the Merger Agreement, NextEra, believing that the Merger Agreement and Termination Fee had been properly approved as written, labored to bring the transaction to a successful close.  Indeed, the Merger Agreement required that NextEra make "reasonable best efforts" to do so.[37]  Among other efforts, NextEra worked to make the requisite regulatory filings and obtain the regulatory approvals necessary to satisfy the conditions precedent to closing, including Hart-Scott-Rodino filings, and approvals and consents from the Federal Communications Commission, the Federal Energy Regulatory Commission, the Vermont

[34]    Hr'g Tr., Sept. 26, 2016 [D.I. 9693] at 11:21-25.

[35]    Id. at 13:13-24, 13: 20-22.

[36]    Id. at 14:8-15:1.

[37]    Merger Agreement § 6.3(a); see also id. § 6.3(d).

9

Insurance Department, and the PUCT.[38]    NextEra also worked to assure that financing arrangements were in place so that it could consummate the transaction when the conditions to closing were fulfilled.[39]  In addition to devoting many thousands of hours of its employees' time to these efforts (and travel and other expense related thereto), NextEra incurred substantial legal expenses, voluminous fees for consultants, advisers and experts, investment banking fees, other financing fees and expenses (including asset-sale expenses and bridge loan fees under arrangements designed to assure NextEra had financing in place to close), and other expenses necessary to close the transaction and facilitate its acquisition of the Oncor assets.[40]

17.    For example, on October 31, 2016, NextEra and Oncor submitted their joint change of control application for the PUCT's approval ("Joint Application").  NextEra assigned employees on full-time basis and hired numerous outside consultants to prepare the Joint Application and conduct necessary public, legislative and regulatory outreach to address issues that might impede approval.[41]  NextEra hired experienced government relations specialists and outside regulatory counsel.  It retained expert witnesses to testify in support of the application. NextEra officials (with the assistance of staff and legal counsel) provided direct and rebuttal testimony, and responded to extensive and burdensome discovery demands.[42]

18.    On March 30, 2016, Commissioner Anderson released a memorandum stating that he was inclined to deny approval of the transaction because he viewed strict ring-fencing of Oncor as essential, and was aware that NextEra was not obligated to, and would not, accept such burdensome conditions.[43]  Later that day, during an open meeting of the PUCT, the other PUCT

---

[38]    Hickson Decl. ¶¶ 4-5, 9-10.

[39]    *Id.* ¶ 4, 11-12.

[40]    *Id.* ¶ 4-5.

[41]    *Id.* ¶ 5.

[42]    *Id.*

[43]    *See Memorandum*, dated March 30, 2017, from Commissioner Kenneth W. Anderson, Jr. [D.I. 11878-5] at 4.

Commissioners indicated that they shared Commissioner Anderson's concerns.[44]  Accordingly, the PUCT Commissioners instructed the PUCT staff to prepare an order denying approval of the transaction, which order would be considered on April 13, 2017 during the PUCT's next open meeting.  The Commissioners, however, left open the possibility that they would reach a different decision if NextEra were able to present a unanimous settlement among the intervenors in the PUCT proceeding.[45]

19.    Between March 30 and April 13, 2017, NextEra worked with interested stakeholders to facilitate a unanimous settlement, but was unable to achieve that objective.[46]

20.    On April 13, 2017, the PUCT held a brief open meeting, as it had previously indicated it would do if no unanimous settlement was presented, and thereafter issued a final order denying approval of the proposed transactions.[47]

21.    On April 17, 2017, at a status conference following entry of the PUCT's order, the Debtors told the Court that "NextEra and the debtors are committed to reviving the NextEra deal if at all possible." (Hr'g Tr., Apr. 17, 2017 at 18:2–4.)  The Debtors recognized and applauded NextEra's continuing efforts to reach a settlement with the PUCT staff that could still permit the deal to go forward.  (*Id.* at 13:14–19 ("[A]t the same time NextEra is still working on a potential settlement.  We understand that NextEra is engaged with the PUCT interveners, including the PUCT staff in an effort to try and reach a settlement.  And the debtors will continue to work with NextEra on that front as well."))

22.    The Merger Agreement ***required*** NextEra to pursue approval of the transaction through appeal.[48]    Accordingly, NextEra filed two motions for rehearing (which, under

---

[44]    *See* Tr. March 30, 2017 Open Meeting before the PUCT [D.I. 11878-6] at 18:18–19:9, 27:17–28:4.

[45]    *See id.* at 26:5-23.

[46]    Hr'g Tr., Apr. 17, 2017 [D.I. 11167] at 7:23-8:15.

[47]    *See Order*, dated April 13, 2017 [D.I. 11878-7].

applicable Texas law, were required steps before the PUCT's order could be appealed to a court.[49]   Those motions were fully supported by the Debtors, who submitted *amicus* briefs urging the PUCT to reverse its decision and approve the transaction.[50]   When those motions were rejected, NextEra appealed the PUCT's decision to the Travis County District Court.[51]

23.    Throughout these proceedings, the Debtors praised NextEra's performance, supported its efforts to challenge the PUCT's decision and close the transactions, and agreed that the PUCT's insistence on the "ring fence" was unwarranted.  Notably, in one of their *amicus* filings with the PUCT, the Debtors specifically touted NextEra's agreement to "maintain many key elements of the ring-fence," commitments that the Debtors described as "far from commonplace in a parent-subsidiary relationship."[52]  The Debtors also characterized the various ring-fencing restrictions that NextEra could not reasonably accept as "anomalous conditions" and expressed their agreement with NextEra's unwillingness to accept such Burdensome Conditions.[53]  In particular, the Debtors noted that "the credit ratings agencies have informed NextEra that if it retains [the ring-fence] restrictions, then its (and some of its affiliates) own credit rating may be downgraded, ***which understandably is not a tolerable outcome for NextEra***."[54]  The Debtors also acknowledged and praised "the ***many efforts*** NextEra made to

---

[48]   Merger Agreement § 6.3(d)(iii) (requiring all parties to use reasonable best efforts to obtain reversal of any regulatory decision enjoining consummation of the transaction).

[49]   *See NextEra Energy, Inc.'s Motion for Rehearing* [D.I. 11878-8]; *NextEra Energy, Inc.'s Second Motion for Rehearing* [D.I. 11878-10]; Tex. Gov't Code §§ 2001.145, 2001.146(h) (West, Westlaw through 2017 R.S and 1st C.S., 85th Legislature).

[50]   *See Amicus Curiae Brief of Energy Future Holdings Corp. and Energy Future Intermediate Holdings Company LLC in Support of Rehearing* [D.I. 11878-9] (the "First EFH PUCT Amicus Brief"); *Amicus Curiae Brief of Energy Future Holdings Corp. and Energy Future Intermediate Holdings Company LLC in Support of Second Motion for Rehearing* [D.I. 11878-11] (the "Second EFH PUCT Amicus Brief").

[51]   *See* Case No. D-1-GN-003234, Travis County Dist. Ct., 201st Judicial Dist.

[52]   *See First EFH PUCT Amicus Brief*, at 6.

[53]   *Id.* at 8.

[54]   *Id.* at 9 (emphasis added).

address concerns about debt issuance, capital structure, and bankruptcy exposure in its 73 regulatory commitments."[55]

24.    Nonetheless, the Debtors shifted their focus to a competing transaction in which Berkshire Hathaway Energy Company and related entities (collectively, "Berkshire") would instead acquire Oncor—terminating the NextEra Merger Agreement on July 6, 2017.[56] The following day, the Debtors terminated the Plan Support Agreement[57] and entered into a deal with Berkshire.[58]

25.    On July 29, 2017, Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott") filed The Elliott Funds' Motion to Reconsider in Part the September 19, 2016 Order [D.I. 9584] Approving the NextEra Termination Fee (the "Motion to Reconsider").[59] The Debtors and NextEra objected to the Motion to Reconsider.[60]

26.    On July 31, 2017, NextEra filed its Application of NextEra Energy, Inc. for Payment of Administrative Claim [D.I. 11649], seeking payment of the Termination Fee upon the consummation of the Berkshire transaction or any other alternative transaction (the "Termination Fee Application").

---

[55]    *Second EFH PUCT Amicus Brief* at 2 (emphasis added).

[56]    *See Notice of Filing of Letters Terminating (A) the NEE Plan Support Agreement and (B) the NEE Merger Agreement,* at Exh. B [D.I. 11424].

[57]    *See id.* at Exh. A.

[58]    *See, e.g., Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11426] (the "Berkshire Plan").

[59]    *Motion to Reconsider In Part the September 19, 2016 Order Approving the NextEra Termination Fee* [D.I. 11636] ("Motion to Reconsider").

[60]    *The Debtors' Objection to Elliott Funds' Motion to Reconsider in Part the September 19, 2016 Order [Docket No.9584] Approving the NextEra Termination Fee* [D.I. 11879]; *Objection of NextEra Energy, Inc. to Motion to Reconsider In Part the September 19, 2016 Order Approving the NextEra Termination Fee* [D.I. 11876].

27.    On August 2, 2017, Debtors commenced an adversary proceeding against NextEra (the "Adversary Proceeding"),[61] seeking a declaration that the Termination Fee, although an allowable administrative expense, would not become due and payable because of alleged breaches by NextEra of its contractual obligations under the Merger Agreement.

28.    On the same day, Debtors moved to consolidate the Motion to Reconsider, the Termination Fee Application and the Adversary Proceeding.[62]

29.    On August 18, 2017, the Court consolidated proceedings on the Termination Fee Application and the Adversary Proceeding (the "Consolidated Proceedings") and set a schedule for the first stages of the Consolidated Proceedings.

30.    On August 23, 2017, Debtors abandoned the proposed transaction with Berkshire and pivoted to a reorganization plan in which Sempra Energy would acquire Oncor.[63] The PUCT hearing on this roughly $9.45 billion deal is currently scheduled for February 21, 2018, and a hearing on plan confirmation is currently scheduled to begin in this Court on February 26, 2018.

31.    On September 19, 2017, the Court held a hearing on the Motion to Reconsider (the "Reconsideration Hearing"). At the conclusion of the hearing, the Court provided a tentative oral ruling granting the Motion to Reconsider, subject to issuance of a formal opinion and entry of an order.

32.    On October 3, 2017, the Court issued its opinion in support of the oral ruling, [D.I. 11998] (the "Reconsideration Opinion"). The Court concluded that it had a "fundamental misunderstanding of the critical facts when it approved the Termination Fee," because the record

---

[61]    *See Adversary Complaint, Energy Future Holdings Corp. v. NextEra Energy, Inc. (In re Energy Future Holdings Corp.), No. 17-50942 (CSS) (Bankr. D. Del.) [Adv. D.I. 1]*

[62]    *Plaintiffs Energy Future Holdings Corp. and Energy Future Intermediate Holding Company LLC's Motion to Consolidate and Set a Rule 7016 Scheduling Conference, Energy Future Holdings Corp. v. NextEra Energy, Inc. (In re Energy Future Holdings Corp.), No. 17-50942 (CSS) (Bankr. D. Del.) [Adv. D.I. 2].*

[63]    *See, e.g., First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11803] (the "Sempra Plan").

was "incomplete and confusing" on the "fundamental point" of "whether the Termination Fee would be payable if the PUCT declined to approve the NextEra Transaction."[64]  The particular portions of the approval hearing record that the Court identified in reaching this conclusion were Mr. Hiltz's testimony and statements made by Debtors' counsel.[65]  This confusion, the Court opined, was compounded by the fact that the Debtors' presentations did not address whether the Merger Agreement had an automatic termination date or, alternatively, whether NextEra could wait to force Debtors to give notice of termination following PUCT disapproval.[66]  The Court concluded that its misapprehension was not merely in error, but "constituted a manifest error of fact justifying reconsideration."[67]  The Court further concluded that, had it properly understood the facts, it could not have approved the Termination Fee under the Third Circuit's ruling in *O'Brien*,[68] and that its Approval Order thus also entailed "a manifest error of law."[69]

33.    On October 18, 2017, the Court issued the Reconsideration Order [D.I. 12075], granting the Motion to Reconsider, denying the Termination Fee Application, and staying the Adversary Proceeding pending further order of the Court.  While the Reconsideration Order modifies the original Approval Order to limit it to a revised version of the Termination Fee not found in the Merger Agreement and never agreed to by the parties,[70] it could not and did not rewrite the Merger Agreement itself.[71]  Consequently, the modified Approval Order does not provide the approval required by the Merger Agreement (or the Plan Support Agreement).[72]

---

[64]    Reconsideration Opinion at 25.

[65]    *Id.* at 8-9.

[66]    *Id.*

[67]    *Id.* at 33.

[68]    *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999).

[69]    Reconsideration Opinion at 34.

[70]    Reconsideration Order ¶ 4.

[71]    *See In re Energy Future Holdings Corp.*, 842 F.3d 247, 254 (3d Cir. 2016) ("It is the role of the courts to enforce the agreement made by the parties—not to add, excise or distort the meaning of the terms they chose to include, thereby creating a new contract under the guise of construction."); *Great Am. Ins. Co. v. Norwin Sch.*

34.     NextEra timely appealed the Reconsideration Order, and, jointly with Elliott and the Debtors, submitted a direct certification of the appeal to the Third Circuit.  The Third Circuit accepted the direct appeal and set an expedited briefing schedule, with briefing to be completed on or about March 20, 2018, and argument to be heard by the next available panel.[73]

**RELIEF REQUESTED**

35.     By this Application, NextEra requests, in the alternative to its Termination Fee Application in the event that the Third Circuit affirms the Reconsideration Order, the allowance and payment of an administrative claim pursuant to 11 U.S.C. § 503(b)(1)(A) for reimbursement of costs and expenses it incurred in connection with its efforts to complete the transaction and close on the Merger Agreement.

**BASIS FOR THE RELIEF REQUESTED**

I.      **Under Section 503(b)(1)(A), NextEra Is Entitled To An
        Administrative Expense Claim For Its Costs And Expenses
        Incurred In Attempting To Close The Merger Agreement**

36.     NextEra is entitled under Section 503(b)(1)(A) of the Code to an administrative claim for its expenses incurred in attempting to close on the Merger Agreement and purchase the Debtors' Oncor assets.  Such expense reimbursement is precisely what Elliott's counsel, arguing in support of Elliott's Reconsideration Motion, asserted that an unsuccessful acquirer like NextEra should be entitled to in these circumstances (rather than a termination fee).[74]

37.     Section 503(b)(1)(A) provides, in pertinent part:

---

*Dist.*, 544 F.3d 229, 246-7 (3d Cir. 2008) ("As the case law makes clear, however, the Court may not rewrite the contracts to provide protections that the contracts did not themselves provide."); *Sultan Chemists, Inc. v. U.S. E.P.A.*, 281 F.3d 73, 80 (3d Cir. 2002) (courts "must not 'rewrite a contract to . . . relieve a party from what turns out to be a bad bargain.'").

[72]    *See* ¶¶ 4-5, *supra.*

[73]    *See Order, In re Energy Future Holdings Corp.*, No. 17-8063 (3d Cir. Jan. 17, 2018); *Order (Clerk), NextEra Energy Inc. v. Elliott Associates, L.P. (In re Energy Future Holdings Corp.)*, No. 18-1109 (3d Cir. Jan. 19, 2018)

[74]    Sept. 19, 2017 Hr'g Tr. at 39:9-10.

(b) After notice and a hearing, there shall be allowed administrative expenses . . .
including --

(1)(A) the actual, necessary costs and expenses of preserving the estate . . . .

11 U.S.C. § 503(b)(1)(A).  To establish an administrative claim under this provision, "there must be (1) a post-petition transaction between the claimant and the estate and (2) a benefit to the estate." *In re Women First Healthcare,* 332 B.R. at 121 (citing *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.),* 181 F.3d 527, 532-533 (3d Cir. 1999); *In re Unidigital, Inc.,* 262 B.R. 283, 288 (Bankr. D. Del. 2001); and *In re Mid-American Waste Sys., Inc.,* 228 B.R. 816, 821 (Bankr. D. Del. 1999)).

38.    The *In re Women First Healthcare* decision is squarely on point.  There, the administrative expense applicant (Sun) had entered into an asset purchase agreement with the debtor to acquire certain assets and became the stalking horse bidder.[75]  The debtor moved for and obtained approval of the sale (including fees payable upon termination in certain circumstances) and bid procedures.[76]  No competing bids were received by the deadline, and the Court approved the sale to Sun,[77] which incurred substantial expenses preparing to close.[78]  However, the debtor had not provided the requisite notice of the sale and bid procedures motions to another party (Mutual) with an interest in the assets.  Before the sale to Sun closed, Mutual moved for reconsideration.[79]  The court granted reconsideration and ordered a new auction of the assets, which Mutual won.[80]

---

[75]    332 B.R. at 118.

[76]    *Id.*

[77]    *Id.*

[78]    *Id.* at 119, 125-29.

[79]    *Id.* at 119.

[80]    *Id.* at 119-20.

39.     Sun applied for, and was awarded, reimbursement for expenses it had incurred preparing to close on the transaction before the motion to reconsider was granted.[81]  The claim plainly arose from Sun's post-petition dealings with the estate.[82]  The court further concluded that such activity benefitted the estate, even though the sale did not ultimately occur, because the debtor was interested in closing the transaction at the time Sun was working towards that goal.[83]  The court rejected arguments that Sun was not entitled to the claim because its actions were made in its own self-interest,[84] noting that "'[m]ost activities of an interested party that contribute to the estate will also, of course, benefit that party to some degree, and the existence of a self-interest cannot in and of itself preclude reimbursement.'"[85]

40.     As in *In re Women First Healthcare*, NextEra's efforts to facilitate closing under the Merger Agreement benefitted the Debtors' estate here.  The Merger Agreement plainly contemplated that NextEra would undertake such efforts.[86]  The Debtors supported those efforts.  As the Debtors' acknowledged, the Merger Agreement provided "massive value" to their

---

[81]  *Id.* at 120, 122-23.

[82]  *Id.* at 118-21.

[83]  *Id.* at 122-23.  *See also In re ASARCO LLC*, 441 B.R. 813, 832 (S.D. Tex. 2010) (recognizing that a benefit inured at the time of a bid "even if no sale was ultimately made").

[84]  *In re Women First Healthcare* (quoting *Lebron v. Mechem Fin. Co.*, 27 F.3d 937, 944 (3d Cir. 1994)).

[85]  Like the Merger Agreement here, the asset purchase agreement (APA) between Sun and the debtor in *In re Women First Healthcare* provided generally that each party would bear its own expenses in the event of termination, subject to an obligation to pay termination-related fees in certain scenarios.  *Compare In re Women First Healthcare, Inc. (Case No. 04-11278, D. Del.)* [D.I. 356-2] (the "Sun APA"), §§ 6.08 and 10.06, *with* Merger Agreement §§ 6.7 and 8.5(b).  The Sun APA contemplated a capped expense reimbursement as part of the fee in those termination scenarios.  (Sun APA, p. 3 (definitions) and § 6.08.)  Having granted reconsideration of its prior orders, the court approved expenses under Section 503(b)(1)(A) without regard to the contractual cap (and which actually were more than double those which would have been permitted under the cap).  *See id.*; *In re Women First Healthcare*, 332 B.R. at 118, 129.  Here, the grounds for this result are even stronger than in *In re Women First Healthcare* because the Reconsideration Order not only withdrew the requisite approval of the Merger Agreement, but did so by eliminating approval of the very Termination Fee provisions that the parties agreed would provide compensation encompassing NextEra's expenses.  Given the Reconsideration Order's disapproval of the Termination Fee provisions that were a *quid pro quo* for NextEra's agreement to the Merger Agreement's limitations on expenses, imposition of those limitations on NextEra cannot be justified.

[86]  *See, e.g.*, Merger Agreement §§ 6.3(a) (generally obligating NextEra to use its "reasonable best efforts" to consummate the transaction and obtain necessary regulatory approvals and consents), and 6.3(d).

estates;[87] had the parties' attempts to fulfill the closing conditions been successful, the transaction would have brought over $9.8 billion to the estate.[88] NextEra would not have proceeded absent approval of the heavily negotiated Termination Fee, and no evidence exists to the contrary.[89]

41.    It is not material that the parties here ultimately were unable to close on the Merger Agreement. The same was true in *In re Women First Healthcare*, where the assets were instead sold to another bidder.[90] Indeed, in this case, the Court has already allowed the administrative expense claims of other entities for their efforts to promote NextEra's acquisition of the Debtors' Oncor assets, recognizing that such efforts benefit the estate even when they the transaction in question does not close.[91]

42.    Accordingly, NextEra is entitled under Section 503(b)(1)(A) to recover the expenses incurred laboring to complete its purchase of the Debtors' Oncor assets.[92]

---

[87]  *EFH/EFIH Debtors' Omnibus Reply to Objections to Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* [D.I. 9536] ¶ 21.

[88]  *Debtors' Memorandum of Law in Support of Confirmation of the Seventh Amended Joint Plan of Reorganization as it Applies to the EFH/EFIH Debtors* [D.I. 10795] at 10-11.

[89]  Further, there is likewise no evidence that NextEra somehow knew that the Court had misapprehended the facts, or that its Approval Order rested on error, manifest or otherwise.

[90]  *In re Women First Healthcare*, 332 B.R. at 119-20.

[91]  *See, e.g.,* Hr'g Tr., Feb. 17, 2017 [D.I. 10865] at 20:13-18 ("Like I found with the last plan that was confirmed in December of 2015, I believe that the indentured [sic] trustee for the EFH noteholders has provided a substantial contribution to the debtor's estate that would justify a payment of administrative expense claim for those fees and expenses."). Notably, the allowance of those expenses was undisturbed by termination of the NextEra transaction and is, instead, explicitly carried forward under the current Sempra Plan. *See* Sempra Plan Art. IV.N.1. As with those entities, NextEra is entitled to recover the expenses set forth in Section II hereof as administrative expenses, in the alternative, on the grounds that such expenses were incurred in connection with NextEra making a substantial contribution to these Chapter 11 cases. *See* 11 U.S.C. § 503(b)(3)(D); *Lebron*, 27 F.3d at 943 (party entitled to recover, as administrative expenses, amounts incurred "as a result of activities which (1) made a 'substantial contribution,' (2) 'in a case under chapter 9 or 11.'"). In addition to the benefits described above, NextEra also substantially contributed to these cases by performing much of the legal work that has been incorporated wholesale into the Sempra Plan and essentially creating the roadmap for achieving the expected PUCT approval of Sempra's acquisition of Oncor.

[92]  The particular expenses NextEra incurred are addressed further in Part II, *infra*.

## II.    NextEra's Recoverable Expenses

43.    NextEra has incurred the expenses described below for which it is entitled to an administrative claim on the grounds set forth above. These expenses were incurred between the execution of the Merger Agreement on July 29, 2016, and July 6, 2017, the date of the issuance by the Debtors' of a notice of termination. They are attested to in the Declaration of Mark Hickson submitted herewith, and will be further detailed in evidence presented at the hearing on this application. As Mr. Hickson explains, Hickson Decl. ¶ 6, NextEra's accounting system tracks expenses by the corresponding "workstream." Accordingly, the expenses described below are categorized on that basis.

44.    Ongoing "Transaction" Expense: These expenses include ongoing work on the transaction itself, including work performed by legal counsel and other advisors on plan confirmation, related discovery, and the confirmation hearing, as well as internal labor costs.[93] (Hickson Decl. ¶ 8.) These expenses totaled $10,404,341. (*Id.*)

45.    Regulatory-PUCT Expense: These expenses are for work performed on the PUCT approval process, including principally counsel, advisor and expert work in connection with the PUCT application and approval process. (Hickson Decl. ¶ 9.) It also includes substantial internal labor costs associated with the PUCT process. (*Id.*) These expenses totaled $8,110,331. (*Id.*)

46.    Regulatory-Other Expense: This category encompasses expenses incurred in seeking regulatory approval from governmental bodies other than the PUCT. (Hickson Decl. ¶ 10.) It includes, again, the fees of outside counsel and advisors, internal labor costs, and

---

[93]    NextEra personnel submit time records tracking their work on various workstreams, and NextEra's accounting system calculates the expense associated with such work by allocating a pro rata share of the employee's salary and benefits. Hickson Decl. ¶ 7.

governmental fees, particularly a substantial fee paid to the Federal Trade Commission in connection with its review of the transaction. (*Id.*) These expenses totaled $414,249. (*Id.*)

47.    Investment Bank/Advisory Fees:  NextEra incurred fees totaling $11,250,000 for investment bank/advisory services necessary to complete the transaction. (Hickson Decl. ¶ 11.)

48.    Financing Expenses and Bridge Loan Commitment Fees:  NextEra incurred financing-related expenses (including fees associated with asset sales undertaken to provide financing for the transaction) which include outside legal expense, other advisor fees  and internal labor costs which total $18,512,993. (Hickson Decl. ¶ 12.)  In addition, to assure that it would have loan financing in place at closing for a portion of the purchase price, and pending the arrangement of final loan financing arrangements, NextEra entered into a bridge loan financing commitment agreement under which it incurred commitment fees totaling $5,979,167. (*Id.*)

49.    Marketing and Communications Expense:  These expenses relate to NextEra's public outreach efforts to promote the transaction and facilitate regulatory approval, particularly PUCT approval.  (Hickson Decl. ¶ 13.)  The expenses include consultant and advisor fees, as well as internal labor costs, and total $1,691,297. (*Id.*)

50.    Integration Expense:  The expenses relate to efforts to plan for and facilitate the transition of EFH and its subsidiaries, and their systems and operations, to ownership by NextEra, a necessary step in any transaction.  (Hickson Decl. ¶ 14.)  These expenses, which include both consultant and advisory fees and internal labor costs, total $3,143,239. (*Id.*)

## CONCLUSION

51.    Wherefore, NextEra requests that the Court grant this Application and enter an order allowing NextEra's claim for administrative expense in the total amount of $59,505,617.

Dated: February 20, 2018
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:    landis@lrclaw.com
            mcguire@lrclaw.com

– and –

**NORTON ROSE FULBRIGHT US LLP**

Howard Seife (admitted *pro hac vice*)
Andrew Rosenblatt (admitted *pro hac vice*)
Eric Daucher (admitted *pro hac vice*)
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369
Email:    howard.seife@nortonrosefulbright.com
            andrew.rosenblatt@nortonrosefulbright.com
            eric.daucher@nortonrosefulbright.com

Robin Ball (admitted *pro hac vice*)
555 South Flower Street, 41st Floor
Los Angeles, California 90071
Telephone:  (213) 892-9200
Facsimile:  (213) 892-9494
Email:    robin.ball@nortonrosefulbright.com

– and –

**WINSTON & STRAWN LLP**
Dan K. Webb (admitted *pro hac vice*)
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-5600
Facsimile:  (312) 558-5700
Email:       dwebb@winston.com

Thomas M. Buchanan (admitted *pro hac vice*)
1700 K Street, NW
Washington, D.C. 20006
Telephone: (202) 282-5000
Facsimile:  (202) 282-5100
Email:       tbuchana@winston.com

*Counsel to NextEra Energy, Inc.*