IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- X
In re:                                          :   Chapter 11
                                                :
Energy Future Holdings, Inc., *et al.*,         :   Case No. 14-10979 (CSS)
                                                :
                    Debtors.                    :   (Jointly Administered)
                                                :
---------------------------------------------------------------- X

## DECLARATION OF MARK HICKSON IN SUPPORT
## OF APPLICATION OF NEXTERA ENERGY, INC. FOR
## ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM

Pursuant to 28 U.S.C. § 1746, I, Mark Hickson, hereby declare as follows under penalty of perjury:

1. I make this declaration in support of the Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Claim (the "Expense Application").

2. I am Executive Vice President, Corporate Development, Strategy, Quality and Integration, of NextEra Energy, Inc. ("NextEra"). I am also Vice President and a Director of NextEra Energy Partners, L.P., a publicly traded "yieldco" for which NextEra has served as sponsor. I hold a bachelor's degree in Aerospace Engineering from Texas A&M, and a master's degree in Business from Columbia University. I joined NextEra in 2012; before that, I was employed as a Managing Director-Global Mergers & Acquisitions by Merrill Lynch & Co., Inc. in New York, New York.

3. I, along with NextEra Executive Vice President and General Counsel Charles Sieving, led the negotiations for NextEra that resulted in the July 29, 2016 Agreement and Plan of Merger by and among NEE, EFH Merger Co., LLC, Energy Future Intermediate Holding Company LLC and Energy Future Holdings Corp. (the "Merger Agreement"), amendments

thereto, and other related agreements. With Mr. Sieving, I also led NextEra's efforts to consummate the transaction, including its efforts in support of plan confirmation, its work to obtain necessary regulatory approvals, and its efforts to assure that necessary financing was in place so that it could close the transaction.

4. Following its entry into the Merger Agreement, NextEra incurred substantial expenses and costs in its efforts to consummate the transaction and complete the acquisition from Energy Future Intermediate Holding Company LLC and Energy Future Holdings Corp. (collectively, the "Debtors") of their interest in Oncor Electric Delivery Company LLC ("Oncor"). NextEra's expenses, costs and efforts included work to make the requisite regulatory filings and obtain the regulatory approvals necessary to satisfy the conditions precedent to closing under the Merger Agreement, including Hart-Scott-Rodino filings, and approvals and consents from the Federal Communications Commission, the Federal Energy Regulatory Commission, the Vermont Insurance Department, and the Public Utilities Commission of Texas ("PUCT"). NextEra's expenses, costs and efforts also included work to assure that financing arrangements were in place so that it could consummate the transaction when the conditions to closing were fulfilled. In addition to devoting many thousands of hours of its employees' time to these efforts (and travel and other expense related thereto), NextEra incurred substantial legal expenses, voluminous fees for consultants, advisers and experts, financing fees and expenses (including bridge loan fees to assure NextEra had funds in place to close, regardless of circumstances), and other expenses necessary to close the transaction and facilitate its acquisition of the Oncor assets.

5. For example, on October 31, 2016, NextEra and Oncor submitted a joint change of control application for the PUCT's approval (the "Joint Application"). NextEra assigned

employees on a full-time basis and hired numerous outside consultants to prepare the Joint Application and conduct necessary public, legislative and regulatory outreach to address issues that might impede approval. NextEra hired experienced government relations specialists and outside regulatory counsel. NextEra also retained expert witnesses to testify in support of the application. NextEra responded to over 1,100 discovery requests, and produced almost 40,000 pages of supporting documentation. With the assistance of staff and legal counsel, I testified before the PUCT.

6. NextEra's accounting records reflect that NextEra incurred the expenses described in ¶¶ 8-15 below between July 29, 2016 (the date the Merger Agreement was executed) and July 6, 2017 (when the Debtors issued a notice of termination). NextEra's accounting systems tracked these costs and expenses by the corresponding "workstream." Accordingly, my discussion of those expenses below is similarly organized.

7. NextEra's costs and expenses include allocated costs for the time devoted to these efforts by NextEra personnel. NextEra personnel track and report their time spent on particular matters, and NextEra's accounting systems allocate a *pro rata* share of the employee's salary and benefits to the matter on that basis.

8. Ongoing "Transaction" Expense: These expenses include ongoing work on the transaction itself, including work performed by legal counsel and other advisors on plan confirmation and the confirmation hearing, as well as internal labor costs. For example, the expenses include Chadbourne & Parke LLP (now Norton Rose Fulbright LLP) fees for confirmation-related discovery, work related to the confirmation hearing, and other work necessary to bring the transaction to a close. These expenses totaled $10,404,341.

9. <u>Regulatory-PUCT Expense</u>: These expenses are for work performed on the PUCT approval process, including principally legal counsel, advisor and expert work in connection with the PUCT application and approval process. For example, the expenses include the fees of NextEra's PUCT regulatory counsel, Parsley Coffin & Renner LLP, for work on preparing and prosecuting the Joint Application, and the fees of Concentric Energy Advisors, Inc. for consulting and expert testimony in connection with that proceeding. It also includes substantial internal labor costs associated with the PUCT process. These expenses totaled $8,110,331.

10. <u>Regulatory-Other Expense</u>: This category encompasses expenses incurred in seeking regulatory approval from governmental bodies other than the PUCT. It includes, again, the fees of outside counsel and advisors, as well as internal labor cost, and substantial governmental fees. In particular, NextEra paid a substantial fee to the Federal Trade Commission in connection with its review of the transaction. These expenses totaled $414,249.

11. <u>Investment Bank/Advisory Fees</u>: NextEra incurred fees totaling $11,250,000 for investment bank/advisory services necessary to complete the transaction.

12. <u>Financing Expenses and Bridge Loan Commitment Fees</u>: NextEra incurred financing-related expenses (including expenses arising from asset sales undertaken to finance the transaction) which include outside legal expense, other advisor fees and internal labor costs which total $18,512,993. In addition, to assure that it would have loan financing in place at closing for a portion of the purchase price, and pending the arrangement of final loan financing arrangements, NextEra entered into a bridge loan financing commitment agreement, incurring bank advisor and commitment fees totaling $5,979,167.

13. <u>Marketing and Communications Expense</u>: These expenses relate to NextEra's public outreach efforts to promote the transaction and facilitate regulatory approval, including PUCT approval. The expenses include consultant and advisor fees, as well as internal labor costs, and total $1,691,297.

14. <u>Integration Expense</u>: The expenses relate to efforts to plan for and facilitate the transition of EFH and its subsidiaries, and their systems and operations, to ownership by NextEra, a necessary step in any acquisition. These expenses, which include both consultant and advisory fees and internal labor costs, total $3,143,239.

15. The total of the costs and expenses described above is $59,505,617.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 20th day of February, 2018

_____
Mark Hickson