**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | ) Chapter 11 |
|  | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
|  | ) |
| *Debtors.* | ) (Jointly Administered) |
|  | ) |
|  | ) **Re: D.I. 12664** |

**THE ELLIOTT FUNDS' OPPOSITION TO NEXTERA'S MOTION IN**
**LIMINE TO PRECLUDE THE TESTIMONY OF MICHAEL KRAMER**

Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott" or the "Elliott Funds"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to *NextEra's Motion In Limine To Preclude the Testimony of Michael Kramer* (the "Motion") [D.I. 12664]. In support of the Objection, Elliott respectfully states as follows:

**PRELIMINARY STATEMENT**

NextEra's Motion to preclude the testimony of Michael Kramer should be denied.  As set forth in more detail in Mr. Kramer's declaration, Mr. Kramer will testify regarding the reinvestment opportunity cost to creditors if the E-Side Debtors are required to set aside a $275 million reserve pending resolution of NextEra's appeal of the Court's Reconsideration Order.[2] His testimony is expected to be brief and will not address any issue relevant to whether the E-

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the *Elliott Funds' Reply to Objection of NextEra Energy, Inc. to First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12665].

Side Debtors' proposed plan of reorganization (the "EFH/EFIH Plan" or the "Plan") satisfies the standards for confirmation under section 1129 of the Bankruptcy Code. Instead, Mr. Kramer's testimony will be offered solely on the narrow issue of the appropriate interest rate that NextEra should pay in exchange for the E-Side Debtors and its largest unsecured creditor, Elliott, agreeing to NextEra's request for a reserve in the amount of $275 million, a reserve that is not required under applicable law and is the equivalent of granting NextEra a stay of creditor distributions under a confirmed plan of reorganization pending NextEra's appeal of the Reconsideration Order.

*First*, the disclosure of Mr. Kramer as a witness was not untimely. The November 14, 2017 deadline cited by NextEra pertained to disclosure of expert testimony in connection with confirmation issues. While NextEra attempts to cast its request for a reserve as a confirmation issue, the interest rate on any applicable reserve is not an issue that must be resolved to determine whether the EFH/EFIH Plan satisfies the requirements of section 1129 of the Bankruptcy Code. Instead, it simply goes to an ancillary issue that could be addressed, and often is, in an ancillary proceeding—what NextEra must do to obtain a partial stay of the E-Side Debtors' making creditor distributions under a *confirmed* EFH/EFIH Plan. NextEra's attempt is, in essence, a request to partially stay the EFH/EFIH Plan pending appeal, and the November 2017 deadline simply does not apply.

*Second*, even if the Court were to determine that the November 2017 date were relevant, Elliott's disclosure of Mr. Kramer as a witness would not be untimely. Elliott first opposed the creation of a reserve in its objection to the NextEra Stay Motion, based in part on NextEra's admission that it would have an adequate remedy at law—disgorgement of creditor distributions. *See* D.I. 12288 ¶¶ 82, 87. NextEra did not request interest on the reserve in its Stay Motion or its

objection to the Plan.  The issue of interest on a proposed reserve did not become relevant until the E-Side Debtors, with Elliott's support, recently attempted to resolve NextEra's confirmation objection by offering to establish a full reserve and have ancillary proceedings shortly after the currently scheduled confirmation hearing.  The establishment of a reserve is a significant concession that is not required by the EFH/EFIH Plan, the Bankruptcy Code, or other applicable law.  It was only then, when NextEra opposed the terms on which Elliott would support the reserve that the need for evidence on an appropriate interest rate arose.  At that time, it became clear that the interest rate on the reserve would be an issue that would require the Court's attention, and Elliott identified Mr. Kramer as an expert witness as soon as reasonably practicable.

*Third*, NextEra has not been, and will not be, prejudiced by permitting Mr. Kramer's limited testimony.  In fact, counsel for each of NextEra and Elliott discussed the need for appropriate security in connection with a reserve weeks ago.  Elliott has made Mr. Kramer available for deposition on Thursday, February 22.  Elliott also produced all documents sought by NextEra in connection with Mr. Kramer's testimony on February 20, 2018, two days before the scheduled deposition.  In short, NextEra has more than ample time to prepare for Mr. Kramer's straightforward and relatively simple testimony.

*Fourth*, Mr. Kramer's testimony will be helpful to the Court.  NextEra's request for a reserve is nothing more than a stay pending NextEra's appeal of the Reconsideration Order.  It is thus ancillary to plan confirmation matters.  NextEra's insistence otherwise and refusal to address issues related to such a reserve in post-confirmation proceedings does not mean that the Court should preclude testimony as to interest rates.  If the Court is inclined to approve the E-Side Debtors' and Elliott's offer to establish a $275 million reserve to moot NextEra's

confirmation objection, the Court will need to ensure that creditors are sufficiently protected against the harm that would result from what could be a lengthy delay in distributions.  It will also ensure that NextEra does not engage in undue delay during any phase of the appellate process.  Mr. Kramer's testimony will touch on that precise issue, and Elliott's offer to support such a reserve, as opposed to require NextEra to pursue disgorgement from creditors, is conditioned on the Court resolving any dispute regarding the appropriate interest rate and security.[3]

For these and the other reasons set forth below, NextEra's Motion should be denied.

## BACKGROUND

1.      On October 30, 2017, NextEra filed its *Preliminary Limited Objection to First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12139].

2.      On November 16, 2017, NextEra filed a motion seeking a stay of the Reconsideration Order pending appeal [D.I. 12243] (the "Stay Motion").  Notably, in arguing that it would suffer irreparable harm absent a stay, NextEra claimed that the E-Side Debtors (and implicitly Elliott) "will likely refuse to maintain a reserve for payment of the $275 Termination Fee."  Stay Motion ¶ 97.

3.      As expected, on November 30, 2017, Elliott and the E-Side Debtors opposed the Stay Motion.  *See* D.I. 12287, 12288, and 12289 (Elliott's objection is hereinafter called the

---

[3]    Notably, NextEra failed to identify an expert witness in November 2017, presumably believing that interest on the reserve it requested was not an issue, and has not identified an expert witness to date—despite recently indicating that it intends to request interest on the reserve (which it did not request in its Plan Objection). Nevertheless, Elliott is willing to permit NextEra to introduce expert testimony as to the appropriate interest rate at the confirmation hearing provided that NextEra identifies such expert by February 21, 2018, and makes such expert available for deposition on either February 23 or February 26, 2018, prior to proceedings on the interest rate issue.

"Elliott Stay Objection").  Elliott opposed the creation of a reserve, explaining that "[c]reditors have already been forced to wait more than three and a half years for any distribution on their claims, and any reserve would needlessly tie up plan distributions for an indeterminate additional amount of time. Creditors would then be deprived of the right to utilize and invest funds to which they are otherwise entitled."  [D.I. 12288 ¶ 87].

4.      Following a hearing held on December 11, 2017, this Court denied the Stay Motion because NextEra failed to demonstrate irreparable harm, including because NextEra's alleged harm was solely monetary in nature.  *See* D.I. 12327; Dec. 11, 2017 Hr'g Tr. 49:21–50:3. The Court noted that it did not see a probability of NextEra succeeding on appeal on the issue of irreparable harm.  *See* Dec. 11, 2017 Hr'g Tr. 47:11–16 ("I don't think – I don't see how any trial court could find there was a probability it was wrong . . . .").

5.      Eight days later, on December 19, 2017, NextEra filed an *Objection to First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (the "NextEra Plan Objection") [D.I 12369], in which NextEra requested the creation of a reserve on account of its disallowed Termination Fee, notwithstanding this Court's denial of the Stay Motion.  NextEra did not request interest on the reserve.

6.      As further explained in Elliott's reply to the NextEra Plan Objection filed on February 17, 2018 (the "Elliott Reply") [D.I. 12665], the reserve sought by NextEra is neither justified nor required under applicable law. Following discussions with the E-Side Debtors, Elliott ultimately determined that it would not oppose the creation of a $275 million reserve, so long as creditors received a commercial rate of return on the reserve to compensate for their lost

reinvestment opportunities.  As a result, on February 14, 2018, Elliott identified Michael Kramer as an expected witness at the Confirmation Hearing.

7.    The Elliott Reply attached a declaration outlining Mr. Kramer's expected testimony as Exhibit A.  Specifically, Mr. Kramer's declaration set forth the expected commercial rate of return to creditors based on (i) a historical review of annualized returns on well-known indices as proxies for investment returns by multi-strategy hedge funds and high yield investors, that are either known to or likely to have held EFH and EFIH unsecured obligations both prior to and during the bankruptcy cases, and (ii) the weighted average cost of capital for a large holder of secured claims against EFH (Vistra Energy Corporation) whose primary operations do not include making investments.  Mr. Kramer's calculations net an expected commercial rate of return in the range of 8.64% to 9.11% per year.

## ARGUMENT

8.    "The Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact."  *Pineda v. Ford Motor Co*., 520 F.3d 237, 243 (3d Cir. 2008).  Likewise, "Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility." *Id.* (quoting *Kannankeril* v. *Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)).

9.    The Third Circuit has cautioned that "[t]he exclusion of critical evidence is an extreme sanction" that should not be imposed where an untimely or improper expert disclosure amounts to only "a slight deviation from pre-trial notice requirements" and occasions only "slight prejudice" to the movant. *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 791-92 (3d Cir. 1994).  Instead, the remedy of exclusion should be reserved for circumstances amounting to "willful dece[it] or flagrant disregard of a court order by the proponent of the evidence." *Id.* at

792 (internal citation and quotation marks omitted); *see also Bridgestone Sports Co., Ltd. v. Acushnet Co.*, No. CIVA 05–132 JJF, 2007 WL 521894, at \*4 (D. Del. Feb. 15, 2007) (noting that while the decision to exclude expert testimony is context-specific, "evidence should be excluded sparingly and only in circumstances involving litigation conduct that is clearly unprofessional or inappropriate, and in circumstances creating prejudice to the party against whom the evidence is offered").

## I.    Elliott's Disclosure Of Mr. Kramer Was Not Untimely.

10.    Elliott's disclosure of Mr. Kramer as a witness and the limited scope of his testimony was not untimely because his testimony falls outside the confines of the scheduling order, dated August 29, 2017 (the "Scheduling Order").  That Scheduling Order required parties to identify, by November 14, 2017, witnesses to be used in connection with issues relating to the confirmability of the EFH/EFIH Plan.  *See* D.I. 11835 ¶ 23 (providing that "[a]ny expert retained or specifically employed to provide expert testimony *in connection with the Confirmation Proceedings* shall submit an expert report that satisfies the requirements of Federal Rule 26(a)(2)(B)" (emphasis added)).

11.    Mr. Kramer will not testify about an issue relating to the confirmability of the EFH/EFIH Plan.  Mr. Kramer will testify about an ancillary issue: the appropriate security for creditors in the event that the Court establishes the $275 million reserve requested by NextEra.  As further explained in the Elliott Reply, NextEra's request for a reserve is not an issue to be determined under section 1129 of the Bankruptcy Code, such as feasibility.  *See* Section 1129(a)(11).  It is instead a request for a partial stay of plan distributions pending NextEra's appeal of the Reconsideration Order cloaked as a confirmation objection.  The deadline set forth in the Scheduling Order therefore simply does not apply.

12.     Elliott identified Mr. Kramer as an expected witness as soon as it became evident that NextEra was not going to accept the E-Side Debtors' and Elliott's proposal to meet NextEra's request, subject to Court proceedings on an appropriate interest rate. As the Court is well aware, Elliott initially opposed NextEra's request for the creation of a reserve based on, among other things, the availability of an adequate remedy at law (*i.e.*, disgorgement). [D.I. 12288 ¶ 82]. The need for Mr. Kramer's testimony thus first became relevant when Elliott and the E-Side Debtors elected not to oppose NextEra's request for a reserve in order to expedite the confirmation proceedings and minimize the burden on the E-Side Debtors' estates. This concession was a considerable accommodation to NextEra, as it is well-settled bankruptcy law that no reserve is required in connection with disallowed claims or expenses. *See e.g.*, *Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 10F.3d 944, 961 (2d Cir. 1993) (affirming bankruptcy court's rulings denying (a) administrative expense priority to certain claims and (b) requests by claimants to establish a plan reserve pending an appeal of the bankruptcy court's ruling denying administrative expense priority); *In re Kreisler Group, Inc.*, 648 F.2d 86 (2d Cir. 1981) (rejecting a purported creditor's contention that a plan reserve should be required for a disallowed claim that was pending on appeal). NextEra should not now be permitted to take advantage of Elliott's and the E-Side Debtors' good-faith attempt to expedite the E-Side Debtors' exit from bankruptcy.[4]

## II.     NextEra Has Not Been And Will Not Be Prejudiced by Any Delay.

13.     In all events, the Court should not preclude Mr. Kramer from testifying because NextEra will simply not be prejudiced. *See Bridgestone Sports*, 2007 WL 521894, at *4

---

[4]     NextEra has made the strategic decision not to pursue a stay pending appeal in federal district court or the Third Circuit at this time, presumably because any stay would be conditioned on NextEra's posting of a bond or interest payments on the reserved $275 million. Instead, NextEra seeks an interest-free reserve by disguising its confirmation objection as a motion to stay Plan distributions—while keeping its options open to pursue an appeal in the event that the Court determines the reserve is not a confirmation issue. *See* Mot. ¶ 25.

("[E]vidence should be excluded sparingly and only in circumstances involving litigation conduct that is clearly unprofessional or inappropriate, and in circumstances creating prejudice to the party against whom the evidence is offered").  Conspicuously absent from NextEra's Motion is even a hint that it has somehow been prejudiced by any purported delay in the disclosure of Mr. Kramer's testimony.  Elliott has, moreover, acted in a timely manner and made several concessions to ensure that NextEra is not prejudiced by Mr. Kramer's anticipated testimony, which will not require extensive analysis by NextEra. The methodology that Mr. Kramer uses is straightforward and his assumptions are limited.  All Mr. Kramer's testimony does is respond to creditor concerns triggered by NextEra's request for a reserve, which NextEra has only now put at issue pending a potential distribution of the $275 million upon the Effective Date of the EFH/EFIH Plan.

14.     Nor is this a case where NextEra can claim unfair surprise at the prospect of Mr. Kramer's testimony.  Indeed, the parties discussed the issue of interest rate on any reserved payment of the Termination Fee several weeks ago.  The parties' inability to reach an agreement on that issue is what prompted the need for Mr. Kramer's testimony at the upcoming hearing.

15.     Additionally, Elliott is bound to support the Debtors with respect to the Plan under the Plan Support Agreement.  The Debtors identified David Ying in November to address issues related to Plan confirmation.  As the Debtors have asserted in their brief in support of confirmation [D.I. 12666], while the interest rate does not need to be addressed at the Confirmation Hearing, it is nevertheless ripe for adjudication alongside the Plan Confirmation given the immediate harm to creditors caused by the reserved $275 million.  If the Court determines that interest rate must be addressed, then Mr. Kramer's testimony is supplementary to

the testimony of the Debtors' expert and not in any way prejudicial to NextEra—which has never asserted any claim to interest, but seemingly now makes such a request.

16.    In any event, any purported prejudice to NextEra has been addressed.    At NextEra's request, Mr. Kramer will be deposed on Thursday, February 22, 2018.  NextEra has also served document requests concerning Mr. Kramer's testimony, to which Elliott responded by producing all relevant, non-privileged documents in its possession prior to Mr. Kramer's deposition.  *See* Exhibit A (Elliott's Responses and Objections to NextEra's Document Requests); *cf. Rmed Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2002 WL 31780188, at *4 (S.D.N.Y. Dec. 11, 2002) ("[A]ny prejudice is easily cured by allowing plaintiff to depose [the expert] if they so desire.").

17.    The Court should accordingly not grant the drastic remedy of preclusion when there is no prejudice to NextEra from any purported delay in disclosing Mr. Kramer's expected testimony and creditors will be prejudiced if the Court orders a $275 million reserve on account of the disallowed Termination Fee without compensating creditors for their lost reinvestment opportunities.

18.    In light of the foregoing, NextEra cannot seriously allege that it would be prejudiced by the introduction of Mr. Kramer's testimony, especially given NextEra's ability to introduce its own expert testimony. [5]

## III.    NextEra's Contention That Mr. Kramer's Expected Testimony Is Irrelevant Has No Merit.

19.    Finally, NextEra's attempt to limit Mr. Kramer's expected testimony under Rule 702 as an issue irrelevant to plan confirmation either undermines its own position that Mr.

---

[5]    As previously noted, Elliott is willing to permit NextEra to introduce expert testimony as to the appropriate interest rate on the reserve at the confirmation hearing provided that NextEra identifies such expert by February 21, 2018, and makes such expert available for deposition on either February 23 or February 26, 2018, prior to proceedings on the interest rate issue.

Kramer had to be identified in November 2017 or has no merit.  As set forth above and in its Reply, Elliott maintains that by agreeing to a reserve, subject to an appropriate commercial rate of return to creditors, the E-Side Debtors and Elliott have mooted NextEra's confirmation objection.  Thus, no issue for confirmation remains.  If, however, as NextEra contends, the Court determines that NextEra's request for a reserve raises a confirmation issue, then Mr. Kramer's expected testimony on the applicable commercial rate of return to creditors is both helpful and relevant to the Court.

20.    First, as further explained in Elliott's Reply, the law is well-settled that creditors are entitled to security for the harm resulting from lost reinvestment opportunities where a party is seeking to stay or delay plan distributions.  *See In re Motors Liquidation Co.*, 539 B.R. 676, 686 (Bankr. S.D.N.Y. 2015) (calculating lost opportunity costs to creditors resulting from delay in reinvesting distributable cash in calculating bond amount); *In re Tribune Co.*, 477 B.R. 465, 480–81 (Bankr. D. Del. 2012) (same); *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 352 n.70 (S.D.N.Y. 2007) (same).  NextEra's request for a reserve is, in essence, a request for a stay that will cost creditors millions of dollars because of their inability to receive plan distributions on the Effective Date of the EFH/EFIH Plan.  As NextEra acknowledges, it is appropriate to compensate creditors when a stay causes a delay in distributions.  This is exactly what interest on the $275 million will accomplish.  [D.I. 12664 ¶ 25].  This lost opportunity to creditors, along with the amount of a supersedeas bond in these circumstances, is precisely the subject of Mr. Kramer's testimony.

21.    In keeping with Rule 702, Elliott should be allowed to argue the appropriate application of the relevant legal standard, and to marshal evidence with respect to the applicable commercial rate of return to creditors.  Indeed, Federal Rule of Evidence 702 "embodies a

'liberal policy of admissibility'" where the expert testimony helps the trier of fact to understand the facts in the record. *B. Braun Melsungen AG v. Terumo Med. Corp.,* 749 F. Supp. 2d 210, 222 (D. Del. 2010) (quoting *Pineda v. Ford Motor Co*., 520 F.3d 237, 243 (3d Cir. 2008)).

22.     Second, NextEra's attempt to claim that the Plan somehow disposes of the need for Mr. Kramer's testimony is nonsense.[6]  NextEra contends that the Plan somehow precludes creditors from receiving any interest from NextEra.  [D.I. 12664 at ¶¶ 22-24].  Not so.  The Plan governs only distributions of estate property **made by the E-Side Debtors** (or the Reorganized Debtors or their representatives).   The title of the section NextEra relies on is "Timing and Calculation of Amounts to Be Distributed."  Plan Art. VI.A.   Moreover, the very sentence NextEra relies on qualifies that on the "Effective Date . . . each Holder of an Allowed Claim . . . shall receive the full amount of the **distributions** that the Plan provides." *Id.* (emphasis added).   It does not govern the need for **third parties** to provide appropriate protection to creditors—whether in the form of a supersedeas bond or an undertaking to protect against lost reinvestment opportunity—where such third party is seeking to stay $275 million in plan distributions to holders of Allowed Claims.

23.     *Tribune* is instructive on the distinction between distributions made by debtors and the need for security from third parties.   The *Tribune* chapter 11 plan contained a similar provision denying post-petition interest on claims. *In re Tribune Co.*, Case No. 08-13141 (Bank.

---

[6]    NextEra misreads *In re Philadelphia Newspapers, LLC* when it claims that debtors are required to set aside a reserve "for payment of [a disputed] claim as a basic precondition to plan confirmation." 690 F.3d 161 (3d Cir.2012); Mot. ¶20.  *Philadelphia Newspapers* held as much because that is what the plan in that case expressly provided.  Here, by contrast, the Plan specifies that holders of claims should receive the "full amount" of their distributions upon the Effective Date.  NextEra's use of *Spansion* is similarly misleading.  There, a claimant asserted an administrative expense against the debtors based on an ongoing patent infringement lawsuit, and the debtors filed a motion to estimate the expense under section 502(c).  *In re Spansion, Inc.*, 426 B.R. 114 (Bankr. D. Del. 2010).  At the conclusion of a hearing, the court issued a bench ruling estimating the administrative expense at approximately $4.2 million.  Following a plan objection by the claimant, the court found that the debtors should set aside a reserve in the amount of the estimated administrative expense. *Id.* at 146.  Notably, other than the estimation proceeding, there was no disallowance or other adjudication on the merits of the asserted administrative expense.

D. Del. 2015), D.I. 12072-02 at § 7.4.  But the court still conditioned the stay that would have delayed plan distributions on movants posting a bond, with the bond calculated in part using an appropriate interest rate to protect against lost reinvestment opportunity.  *See In re Tribune Co.,* 476 B.R. 843, 864 (Bankr. D. Del. 2012), *aff'd as modified*, No. 12-CV-1072 GMS, 2014 WL 2797042 (D. Del. June 18, 2014), *aff'd in part, rev'd in part sub nom. In re Tribune Media Co.*, 799 F.3d 272 (3d Cir. 2015) ("If EGI and WTC want to prevent plan distributions while their appeals are pending, they may seek a stay pending appeal pursuant to Fed. R. Bankr. P. 8005").

24.    Elliott is not requesting that the E-Side Debtors include interest on claims in the distributions made under the EFH/EFIH Plan if those distributions are made after the Effective Date.  As in *Tribune*, nothing in the EFH/EFIH Plan or applicable law precludes parties with allowed claims from seeking the opportunity cost arising from prolonged appeals from the third parties responsible for those appeals.  Indeed, as set forth in *Tribune* and *Motors Liquidation*, it is appropriate for the Court to require a party to protect creditors for lost reinvestment opportunities where such third party is seeking to stay or delay plan distributions pending an appeal.

25.    In short, NextEra ignores applicable case law on the need to protect creditors from harm associated with lost reinvestment opportunities in the event of a stay pending appeal and misreads the Plan in connection with interest and reserve requirements.  Mr. Kramer's expected testimony is plainly relevant under the circumstances and should be permitted.

## CONCLUSION

For the foregoing reasons, Elliott respectfully requests that the Court deny NextEra's Motion in Limine to Preclude the Testimony of Michael Kramer and the Hearing Thereon.

Wilmington, Delaware
Date: February 20, 2018

**BAYARD, P.A.**

*/s/ Erin R. Fay*
Scott D. Cousins (No. 3079)
Erin R. Fay (No. 5268)
Evan T. Miller (No. 5364)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
scousins@bayardlaw.com
efay@bayardlaw.com
emiller@bayardlaw.com

–and–

**ROPES & GRAY LLP**
Keith H. Wofford (admitted *pro hac vice*)
Gregg M. Galardi
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile:  (212) 596-9090
Keith.Wofford@ropesgray.com
Gregg.Galardi@ropesgray.com

*Counsel for Elliott Associates, L.P.,*
*Elliott International, L.P., and*
*the Liverpool Limited Partnership*

## Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE | ) | Case No. 14-10979 (CSS) |
| HOLDINGS CORP., *et al.*, | ) | |
| | ) | (Jointly Administered) |
| *Debtors*. | ) | |
| | ) | |

**THE ELLIOTT FUNDS' RESPONSES AND OBJECTIONS TO NEXTERA ENERGY,
INC.'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS
IN CONNECTION WITH THE CONFIRMATION HEARING**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rules 7026 and
7034 of the United States Bankruptcy Court for the District of Delaware, Elliott Associates, L.P.,
Elliott International, L.P., and The Liverpool Limited Partnership (collectively the "Elliott
Funds" or "Elliott"), hereby submit the following Responses and Objections to the NextEra
Energy, Inc.'s ("NextEra") First Set of Document Requests for the Production of Documents to
Elliott in Connection with the Confirmation Hearing, dated February 16, 2018, to Elliott (the
"Requests," or individually each, a "Request").

**GENERAL OBJECTIONS**

1.      Elliott objects to the Requests to the extent they purport to impose obligations
beyond those required by the Federal Rules of Civil Procedure (the "Federal Rules"), made
applicable to this adversary proceeding by Federal Rules of Bankruptcy Procedure 7026 and
7034, or any other applicable rule of law.  Elliott also objects to the Definitions and Instructions

contained in the Requests to the extent they exceed or conflict with the Federal Rules or Local Rules.

2.    Elliott objects to the Requests to the extent that they seek information or documents that were prepared in anticipation of litigation, protected by the attorney-client privilege, or protected by the business strategy immunity, and to the extent they purport to seek documents that are protected from disclosure by any other privilege, protection, or immunity, foreign or domestic.  Any inadvertent disclosure of any privileged or otherwise protected documents shall not be deemed or construed to constitute a waiver of any privilege, protection, or right of Elliott's, including, without limitation, the attorney-client privilege, the work-product doctrine, the common interest doctrine, business strategy immunity, or any other privilege or protection from disclosure provided by law, foreign or domestic.  Elliott further reserves the right to recall from discovery any inadvertently produced document that is protected by the attorney-client privilege, the work-product doctrine, the common interest doctrine, or any other applicable privilege or immunity.

3.    Elliott objects to the Requests to the extent that any one Request is redundant or duplicative of any other request on the grounds that such a request is overbroad and unduly burdensome.  Where a document is reasonably responsive to more than one request and production is not otherwise objectionable, Elliott will produce that document only once.

4.    Elliott objects to the Requests to the extent they are overly broad, unduly burdensome in light of the expedited nature of the proceedings, and unlikely to lead to discoverable evidence.

5.      Elliott objects to the Requests to the extent that they are vague, ambiguous, overbroad, or employ imprecise descriptions of the documents sought.  To the extent Elliott produces any documents or information in response to the Requests, Elliott will provide only those documents or information that they can reasonably identify as responsive to the Request.

6.      Elliott objects to the Requests to the extent that they are not relevant to the Confirmation Hearing, or proportional to NextEra's needs.  Elliott also objects to the Requests as exceeding the scope of discovery permitted by Rule 26(b)(1) of the Federal Rules to the extent that the burden or expense imposed by any individual request outweighs the likely benefit.

7.      Elliott objects to the Requests to the extent that they purport to require unreasonably costly and/or time-consuming measures to locate and produce responsive documents or information.  Elliott will construe each individual Request to require a reasonable search of the reasonably accessible files of Elliott's in which Elliott would reasonably expect to find documents or information responsive to such request, and Elliott objects to any Request as unduly burdensome to the extent that it purports to require anything else.

8.      Elliott objects to Definitions 3. ("Document"), and any Definition, Instruction, or Request that incorporates these Definitions, on the grounds and to the extent that they are vague, overly broad, unduly burdensome and exceed the requirements of the Federal Rules in that, among other things, they purport to require Elliott to search or produce documents that are not reasonably accessible or reasonably calculated to lead to the discovery of admissible evidence.

9.      The specific responses set forth below are based upon information and documents presently available to and located by Elliott and its attorneys.  To the extent that Elliott agrees to produce documents in response to the Requests, Elliott will conduct a reasonable search of its

-3-

reasonably accessible files in which Elliott would reasonably expect to find documents or information responsive to such Requests. Elliott objects to the Requests as unduly burdensome to the extent that they purport to require anything else. Further, Elliott reserves the right at any time to revise, correct, add to, or clarify the specific responses set forth below and the production made pursuant thereto.

10.    Elliott is providing this response and will be producing documents pursuant thereto without any waiver of or prejudice to its right, at any later time, to raise objections to (a) any further demand or discovery involving or relating to the matters raised in the Requests, or (b) the relevance, materiality, or admissibility of (i) the Requests or any part thereof, (ii) statements made in this response to the Requests or any part thereof, or (iii) any document produced pursuant to this response. Elliott specifically reserves all objections as to the competency, materiality, and admissibility of its documents (or the subject matter thereof) and the use of any document (or the subject matter thereof) in any subsequent proceeding, including, without limitation, the trial of this, or any other, contested matter, action, or proceeding.

11.    Any production of documents or information shall be without waiver of any of the general or specific objections set forth herein and shall not be construed as (a) a stipulation or admission that the material is relevant, or (b) an agreement that requests for similar information will be treated in a similar manner.

## RESPONSES TO DOCUMENT REQUESTS

**DOCUMENT REQUEST NO. 1**

All documents concerning facts or data considered by Michael Kramer in forming any of the Opinions.

**RESPONSE TO DOCUMENT REQUEST NO. 1**

In addition to the foregoing General Objections, which are expressly incorporated by reference into this Response, Elliott objects to this Request on the grounds that it is overly broad and unduly burdensome, and seeks documents that are neither relevant to any party's claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks "all" documents relating in any way to facts or data considered by Michael Kramer in forming any of the Opinions, including documents that are publicly available.  Elliott further objects to this Request to the extent that it seeks documents or communications protected from discovery under the attorney-client privilege, attorney work-product doctrine, business strategy immunity, or any other applicable privilege or protection from discovery afforded under the Federal Rules or any other applicable statute, rule, regulation, or the common law.

Subject to and without waiving the foregoing objections, Elliott will produce the facts or data considered by Mr. Kramer in forming the Opinions, as required by Federal Rule 26(2)(B)(ii).

**DOCUMENT REQUEST NO. 2**

All engagement letters, retainer agreements, or any other contracts or agreements between and among Elliott (or its legal counsel or affiliates) and Mr. Kramer and/or Ducera Partners LLC, concerning the above-captioned chapter 11 cases or Mr. Kramer's anticipated testimony at the Confirmation Hearing or any preparation therefor.

**RESPONSE TO DOCUMENT REQUEST NO. 2**

In addition to the foregoing General Objections, which are expressly incorporated by reference into this Response, Elliott objects to this Request on the grounds that it is overly broad and unduly burdensome, and seeks documents that are neither relevant to any party's claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence

insofar as it seeks "all" engagement letters, retainer agreements, or any other contracts or agreements relating in any way to the chapter 11 cases.

Subject to and without waiving the foregoing objections, Elliott will produce any executed engagement letters, agreements, or contracts regarding Mr. Kramer's anticipated testimony at the Confirmation Hearing, if any.

**DOCUMENT REQUEST NO. 3**

All invoices, billing statements, and time records of Mr. Kramer and/or Ducera Partners LLC, concerning the above-captioned chapter 11 cases or Mr. Kramer's anticipated testimony at the Confirmation Hearing or any preparation therefor.

**RESPONSE TO DOCUMENT REQUEST NO. 3**

In addition to the foregoing General Objections, which are expressly incorporated by reference into this Response, Elliott objects to this Request on the grounds that it is overly broad and unduly burdensome, and seeks documents that are neither relevant to any party's claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks "all" invoices, billing statements, and time records relating in any way to the chapter 11 cases. Elliott further objects to this Request to the extent that it seeks documents or communications protected from discovery under the attorney-client privilege, attorney work-product doctrine, business strategy immunity, or any other applicable privilege or protection from discovery afforded under the Federal Rules or any other applicable statute, rule, regulation, or the common law.

Subject to and without waiving the foregoing objections, Elliott will produce all non-privileged invoices, billing statements, or time records submitted by Mr. Kramer and/or Ducera

-6-

Partners LLC to Elliott, if any, for work performed in connection with Mr. Kramer's anticipated testimony at the Confirmation Hearing.

**DOCUMENT REQUEST NO. 4**

Documents sufficient to show all amounts paid by Elliott (or its counsel or affiliates) to Mr. Kramer and/or Ducera Partners LLC, concerning the above-captioned chapter 11 cases or Mr. Kramer's anticipated testimony at the Confirmation Hearing or any preparation therefor.

**RESPONSE TO DOCUMENT REQUEST NO. 4**

In addition to the foregoing General Objections, which are expressly incorporated by reference into this Response, Elliott objects to this Request on the grounds that it is overly broad and unduly burdensome, and seeks documents that are neither relevant to any party's claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence, insofar as it seeks documents sufficient to show "all" amounts paid by Elliott to Mr. Kramer and/or Ducera Partners LLC relating in any way to the chapter 11 cases.  Elliott also objects to the extent this Request is duplicative of Request No. 3, and incorporates its objections and responses to that Request herein.

Subject to and without waiving the foregoing objections, Elliott will produce any non-privileged documents showing any amounts paid by Elliott (or its counsel or affiliates), if any, to Mr. Kramer and/or Ducera Partners LLC concerning Mr. Kramer's anticipated testimony at the Confirmation Hearing.

-7-

**DOCUMENT REQUEST NO. 5**

All reports prepared by Mr. Kramer and/or Ducera Partners LLC for Elliott (or its counsel or affiliates) concerning any of the Opinions.

**RESPONSE TO DOCUMENT REQUEST NO. 5**

In addition to the foregoing General Objections, which are expressly incorporated by reference into this Response, Elliott objects to this Request on the grounds that it is overly broad and unduly burdensome, and seeks documents that are neither relevant to any party's claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks "all" reports prepared by Mr. Kramer and/or Ducera Partners LLC relating in any way to the Opinions.  Elliott further objects to this Request to the extent that it seeks documents or communications protected from discovery under the attorney-client privilege, attorney work-product doctrine, business strategy immunity, or any other applicable privilege or protection from discovery afforded under the Federal Rules or any other applicable statute, rule, regulation, or the common law.  Elliott also objects to the Request to the extent that the Declaration of Michael A. Kramer was made available to NextEra on February 17, 2018, as Exhibit A to *The Elliott Funds' Reply to Objection of NextEra Energy, Inc. to First Amended Joint Plan of Reorganization of NextEra Energy Future Holdings Corp., Energy Future Intermediate Holdings Company LLC, and the EFH/EFIH Debtors' Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12665], and therefore is already in NextEra's possession, custody, or control.

Subject to and without waiving the foregoing objections, Elliott refers NextEra to the Declaration of Michael A. Kramer, filed on February 17, 2018, as Exhibit A to *The Elliott Funds' Reply to Objection of NextEra Energy, Inc. to First Amended Joint Plan of*

*Reorganization of NextEra Energy Future Holdings Corp., Energy Future Intermediate Holdings*

*Company LLC, and the EFH/EFIH Debtors' Pursuant to Chapter 11 of the Bankruptcy Code*

[D.I. 12665].

**DOCUMENT REQUEST NO. 6**

All documents which you intend to introduce as exhibits in connection with Mr. Kramer's testimony at the Confirmation Hearing.

**RESPONSE TO DOCUMENT REQUEST NO. 6**

In addition to the foregoing General Objections, which are expressly incorporated by reference into this Response, Elliott objects to this Request on the grounds that it is premature. Elliott further objects to this Request to the extent that it seeks documents or communications protected from discovery under the attorney-client privilege, attorney work-product doctrine, business strategy immunity, or any other applicable privilege or protection from discovery afforded under the Federal Rules or any other applicable statute, rule, regulation, or the common law.

Subject to and without waiving the foregoing objections, Elliott will comply with any requirements or stipulations regarding demonstratives and/or exhibits set forth in the parties' scheduling order and agreements, and any Federal Rules, Local Rules, or other applicable law.

Date: February 20, 2018                    BAYARD, P.A.

                                           */s/ Erin R. Fay*
                                           Scott D. Cousins (No. 3079)
                                           Erin R. Fay (No. 5268)
                                           Evan T. Miller (No. 5364)
                                           222 Delaware Avenue, Suite 900
                                           Wilmington, DE 19801
                                           Telephone: (302) 655-5000
                                           Facsimile: (302) 658-6395
                                           E-mail: scousins@bayardlaw.com
                                                   efay@bayardlaw.com
                                                   emiller@bayardlaw.com

                                            --and--

                                           ROPES & GRAY LLP
                                           Keith H. Wofford
                                           Gregg M. Galardi
                                           1211 Avenue of the Americas
                                           New York, NY 10036-8704
                                           Telephone: 212-596-9000
                                           Facsimile:  212-596-9090
                                           Email: Keith.Wofford@ropesgray.com
                                                  Gregg.Galardi@ropesgray.com


                                           *Counsel for the Elliott Funds*