1  UNITED STATES BANKRUPTCY COURT
2  DISTRICT OF DELAWARE
3
4
5  In re:                               :
                                        :   Chapter 11
6  ENERGY FUTURE HOLDINGS               :
   CORP., et al.,                       :   Case No. 14-10979(CSS)
7                                       :
           Debtors.                     :   (Jointly Administered)
8  _____  :
9
10
11
12
13                         United States Bankruptcy Court
14                         824 North Market Street
15                         Wilmington, Delaware
16
17                         February 22, 2018
18                         1:02 PM - 1:25 PM
19
20
21  B E F O R E :
22  HON CHRISTOPHER S. SONTCEHI
23  U.S. BANKRUPTCY JUDGE
24
25

1   Hearing re:    Telephonic Status Hearing

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:   Dawn South

1                P R O C E E D I N G S

2           THE COURT:  Good afternoon everyone, this is Judge

3   Sontchi, and this is the time I set aside in the Energy

4   Future Holdings case to issue my ruling in connection with

5   NextEra's motion in limine that was filed -- I can't

6   remember if it was late last week or early this week -- but

7   any way recently.

8           What I'm going to do is read my ruling, it's a

9   little lengthy, so I apologize ahead of time, I wanted to

10  make sure I covered the issues thoroughly.

11          In addition to the ruling I have a couple comments

12  to make about the underlying issue, which I'll give at the

13  end, and then of course once I'm done I will open it up for

14  any questions with regard to the ruling, as well as any

15  comments about how to proceed going forward.

16          We do have a scheduling conference tomorrow at

17  2:00, so I certainly understand if people want to take the

18  time between now and then to digest the Court's ruling to

19  decide and to make whatever comments they want to make with

20  regard to how to proceed at confirmation overnight, and

21  that's one of the reasons that I wanted to get this before

22  the parties as quickly as possible so they would have a

23  maximum amount of time to respond based on the Court's

24  ruling.

25          So unless anyone has any burning desire to be

Case 14-10979-CSS    Doc 12699    Filed 02/23/18    Page 4 of 20

Page 4

1  heard on anything specific I'm going to turn to a poetic

2  reading of my ruling.

3         All right.  Before the Court is NextEra's motion

4  in limine to preclude the testimony of Michael Kramer (ph)

5  in the hearing thereon, which is at docket item 12664, as

6  well as the responses filed by the debtors and Elliott

7  Funds, docket 12674 and 12676 respectively.

8         In anticipation of Monday's confirmation hearing

9  and the preparation needed to the parties the Court is

10 announcing its ruling on the motion in limine today via oral

11 ruling and will issue a form of order incorporating this

12 oral ruling later today.

13        The debtors filed voluntary petitions under

14 Chapter 11 of the Bankruptcy Code on April 29, 2014.

15        In April 2016 the debtors and NextEra engaged in

16 discussions for the sale of the debtors' economic interest

17 in Encore Electric Delivery Company LLC.  In that regard in

18 July 2016 the debtors and a newly formed subsidiary of

19 NextEra executed an agreement and plan of merger, which I'll

20 call the merger agreement.

21        The merger agreement, as amended, contemplated a

22 merger of EFH with and into a merger sub whereby EFH would

23 become a wholly-owned subsidiary of NextEra with an

24 approximately $18.7 billion implied Encore total enterprise

25 value.

Veritext Legal Solutions
212-267-6868    www.veritext.com    516-608-2400

1              An element of the merger agreement was the
2    inclusion of a termination fee in the amount of $275 million
3    in favor of NextEra, I'll call that the termination fee,
4    which would be payable with certain limited exceptions
5    following (1), the termination of the merger agreement by
6    the debtors; and (2), the debtors' consummation of an
7    alternative transaction.
8              Also at that time the debtors filed a plan based
9    on the merger agreement, which was the NextEra plan and EFH,
10   EFIH, EFIH Finance, Inc., and certain direct and indirect
11   subsidiaries of EFH and NextEra entered into a plan support
12   agreement or supplemented -- as supplemented from time to
13   time the plan support agreement.
14             In September 2016 the Court approved the merger
15   agreement and the plan support agreement and entered an
16   approval order, and that's at Docket No. 9584.
17             Thereafter, in February 2017 the Court confirmed
18   the NextEra plan; however, this proposed merger agreement
19   was denied approval by the Public Utility Commission of
20   Texas in April 2017.  NextEra filed a motion for rehearing
21   which was unsuccessful and later appealed to the Texas state
22   courts.
23             On July 6, 2017 the debtors terminated the merger
24   agreement and following that the debtors also terminated the
25   plan support agreement.  The debtors also pivoted to a fully

1    signed transaction with Berkshire Hathaway Energy Company
2    which eventually pivoted again to the plan that the Court
3    will consider on Monday with Sempra.
4            However, shortly after the termination of the
5    merger agreement and the plan support agreement Elliott
6    filed a motion to reconsider the order which approved the
7    NextEra termination fee, and NextEra also on its own behalf
8    filed an application for payment of the termination fee upon
9    the consummation of the Berkshire or any other alternative
10   transaction.
11           The debtors also commenced an adversary proceeding
12   seeking a declaration that the termination fee would not
13   become due and payable.
14           On September 19, 2017 the Court held a hearing on,
15   among other things, the reconsideration motion.  Following
16   argument on the reconsideration motion the Court issued a
17   tentative ruling stating that it would grant the
18   reconsideration motion because "the Court's decision was
19   based on the serious misapprehension of the facts that
20   constitutes manifest error."
21           On October 18, 2017 the Court entered its order
22   granting the reconsideration motion at Docket 12751.  The
23   reconsideration order also dismissed NextEra's application
24   for the administrative expense related to the termination
25   fee and stayed the adversary proceeding.

1          NextEra appealed the reconsideration order, and
2    NextEra, Elliott, and the debtors jointly certified that a
3    direct appeal of the reconsideration order to the Third
4    Circuit was appropriate.  Third Circuit agreed and currently
5    the appeal is being briefed in the Third Circuit.
6          NextEra also moved to stay the reconsideration
7    order pending the appeal, which was denied by this Court.
8          In the meantime on August 23, 2017 the debtors
9    filed the first amended joint plan of reorganization of
10   Energy Future Holdings Corp., et al., pursuant to Chapter 11
11   of the Bankruptcy Code as modified or amended, we'll call
12   that the Sempra plan.
13         On August 29, 2017 the Court entered the amended
14   and superseding order scheduling certain hearing dates and
15   deadlines and establishing certain protocols in connection
16   with confirmation of the Sempra plan, which is at docket
17   item 11835, and that's going to be called the scheduling
18   order.
19         The scheduling order established among other
20   things deadlines and procedures governing expert testimony
21   and discovery related thereto in connection with the plan.
22   In particular the scheduling order directed that "any expert
23   retained or specially employed to provide expert testimony
24   in connection with the confirmation proceedings shall submit
25   an expert report that satisfies the requirements of Federal

1   Rule of Civil Procedure 26(a)(2)(b)."  T
2           he order further established November 14, 2017 as
3   the deadline for parties to provide written notice of their
4   intend to serve such expert reports, and in the event that
5   such notices were given a series of deadlines for the
6   exchange of expert reports and completion of expert
7   discovery kick in.
8           On December 19, 2017 after previously filing a
9   preliminary objection to confirmation of the plan NextEra
10  filed its objection of NextEra Energy, Inc., the first
11  amended joint plan of reorganization of the debtors, and
12  that's at docket item 12369.
13          In NextEra's objection to confirmation NextEra
14  sought (a), to establish a reserve in the amount of 275
15  million with respect to NextEra's disputed termination fee;
16  (b), to provide that NextEra's claim in respect to the
17  termination fee shall only be discharged in exchange for
18  payment in full in cash of any amount ultimately allowed as
19  an administrative expense; and (c), either to exempt
20  expressly administrative expense claims from Article 7.C as
21  estimation procedures, or alternatively to provide that any
22  such estimation shall not "constitute a maximum limitation"
23  on any administrative expense claim that is ultimately
24  allowed.
25          In response to NextEra's confirmation objection

1  Elliott replied that it did not oppose the creation of a
2  plan reserve on the condition that creditors are fairly
3  compensated for their opportunity costs such as NextEra
4  posting a supersedeas bond in an amount equal to the
5  expected commercial rate of return over the expected
6  duration of the appeal.  In the alternative Elliott
7  suggested that the Court may condition the reserve on
8  NextEra's agreement to pay that rate of return to the estate
9  if its appeal is unsuccessful.
10            In that regard Elliott proposed the testimony of
11 Michael Kramer of Desara Partners LLC (ph) to serve as an
12 expert witness regarding the bonding requirements for any
13 reserve as well as the appropriate interest rate.  It is the
14 testimony of Mr. Kramer that NextEra seeks to preclude in
15 its motion in limine.
16            Furthermore, NextEra similarly seeks to preclude
17 testimony on this topic from any of the debtors' witnesses,
18 although such request was placed in a footnote.  The
19 debtors' note in their response to the motion in limine that
20 David Ying (ph), the debtors' financial advisor, will
21 testify regarding issues related to the proposed reserve,
22 including issues related to interest and the rate of return.
23            As such the Court's ruling applies to both the
24 testimony of Mr. Kramer in its entirely as well as the
25 testimony of Mr. Ying solely as it relates to the issues of

1    interest and the rate of return.
2            NextEra raises two arguments in support of its
3    motion in limine.
4            First it argues that the identification of
5    Mr. Kramer and Mr. Ying as expert witnesses on the relevant
6    topic was well after the November 2017 deadline set forth in
7    the scheduling order and thus the testimony should not be
8    allowed.
9            Indeed the witnesses were identified only days
10   before confirmation, which is scheduled for Monday,
11   February 26th.
12           Second, NextEra argues that the testimony is
13   barred under Rule 702 of the Federal Rules of Evidence
14   because it is irrelevant as to the relief requested by the
15   debtors and Elliott, i.e., the posting of a bond is only
16   available as a condition for a stay pending appeal, which
17   has not been sought nor granted at this time.
18           The debtors and Elliott raise two arguments in
19   response to the motion in limine.
20           First, implicitly acknowledging that Mr. Kramer
21   and Mr. Ying were identified as expert witnesses on the
22   relevant topic well after the deadline set forth in the
23   scheduling order.  They argue that the scheduling order does
24   not apply because the issue of whether to require the
25   posting of a bond or other related relief in response to the

1  creation of a plan reserve is an ancillary issue and not
2  related to confirmation.  This is too clever by half.
3            The issue of whether to require a plan reserve and
4  on what terms is directly related to confirmation as it
5  arises in response to an argument that the debtors cannot
6  satisfy 1129 without a reserve because they would otherwise
7  not be providing for the payment in full of administrative
8  claims.  This issue was raised in NextEra's supplemental
9  plan objection filed on December 19, 2017.
10           Although December 19th was after the deadline to
11 identify expert witnesses the debtors and Elliott would
12 certainly be permitted to identify witnesses after
13 December 19 in response to an argument -- excuse me.
14           Although December 19th was after the deadline to
15 identify expert witnesses the debtors and Elliott would
16 certainly be permitted to identify witnesses after that
17 deadline in response to an argument raised in December, but
18 waiting two months until the eve of confirmation is too
19 late.
20           Nonetheless the Court is not deciding the motion
21 in limine on the grounds of the late identification of
22 witnesses, but rather will decide the matter on the issue of
23 relevancy.
24           Second, the debtors and Elliott argue that
25 NextEra's objection to confirmation of the Sempra plan

```
 1   seeking a reserve of $275 million for its administrative
 2   claim, the disallowance of which is currently on appeal
 3   before the Third Circuit, is "in effect" a request for a
 4   stay pending appeal to the reconsideration order.
 5           Because this purported stay of the reconsideration
 6   order will result in a delay in the distribution of the
 7   reserved amount to the debtors' creditors under the Sempra
 8   plan the debtors and Elliott argue that NextEra must post a
 9   bond just as it would be required to do if (a), the Court
10   overruled Sempra's objection to the Sempra plan and did not
11   require the establishment of a reserve; (b), NextEra
12   appealed the confirmation order; (c), NextEra sought a stay
13   pending appeal; and (d), the Court was inclined to grant a
14   stay pending appeal, none of which have yet occurred.
15           The argument that NextEra's confirmation objection
16   is in effect a request for a stay pending appeal of the
17   reconsideration order requiring the posting of a bond fails
18   on its face for a number of reasons.
19           Thus, any testimony related to the issue is
20   irrelevant and the motion in limine will be granted.
21           First, even were the Court to agree that NextEra's
22   confirmation objection is in effect a request for a stay
23   pending appeal of the reconsideration order, which it does
24   not, any request for relief would need to be in the context
25   of the reconsideration order; however, this Court previously
```

1   denied a request by NextEra for a stay pending appeal of
2   that order and the reconsideration order is on appeal before
3   the Third Circuit.
4          While this Court is not devoid of jurisdiction
5   over the matter any relief regarding the reconsideration
6   order will be more appropriately brought before the Third
7   Circuit.  In short, the debtors and Elliott are before the
8   wrong court.  If they wish to pursue this argument further
9   they should do so before the Third Circuit.
10         Second, while it is true that courts have required
11  the posting of a bond in some cases to compensate creditors
12  for the delay in plan distributions where a plan objector
13  has sought a stay of a confirmation order pending appeal all
14  of those cases involve an actual stay pending appeal of the
15  confirmation order, not an effective stay of a previous
16  order currently on appeal caused by entry of a confirmation
17  order.  The cases are simply too attenuated to support the
18  debtors' and Elliott's argument.  Indeed it's not even
19  close.
20         Moreover, if one plays out the scenario the flaw
21  in the argument becomes self-evident.  The underlying issue
22  is whether the Court will require the debtors to reserve
23  some amount of money for NextEra's currently disallowed
24  administrative claim as a condition to confirmation.
25         The Court would require a reserve either upon

1    agreement or with the objection of the debtors and/or Elliot
2    through an appeal, not NextEra, they would have achieved
3    their purpose.  Would the debtors and/or Elliott appeal?
4    Perhaps, but the reserve would be required based on the
5    Court's order.  To avoid the reserve the debtors and Elliott
6    would have to seek a stay at least of that provision of
7    their own confirmation order.
8           This would potentially risk delaying closing the
9    Sempra merger and any distributions under the Sempra plan,
10   and I am confident that isn't going to happen.
11          Now, if the Court were to overrule NextEra's
12   objection or set a reserve below $275 million it is likely
13   NextEra would appeal and seek a stay pending appeal.
14   However, given the billion of dollars at risk under the
15   Sempra merger the Court finds it extremely difficult to
16   imagine granting such a stay, but were it to do so it might
17   require the posting of a bond by NextEra.
18          For that unlikely scenario to arise the Court will
19   hear the parties on the currently premature issue of whether
20   to require the posting of a bond and in what amount.
21          Thus, the Court will grant the motion in limine to
22   all testimony regarding the amount of a supersedeas bond or
23   interest related to a possible delay in distribution to the
24   debtors' creditors as a result of establishing a reserve if
25   any is agreed to or ordered at the confirmation hearing.

1            Having made the Court's ruling on the motion in
2    limine I turn to the underlying issue of whether the debtors
3    must set a reserve to provide some preliminary thoughts.
4    This is very much not ruling on the merits of whether a
5    reserve is required and in what amount, I will decide that
6    based on the record and arguments presented at the
7    confirmation hearing, but rather it is offered to guide the
8    parties in preparation for that hearing.
9            It appears to the Court that for several reasons
10   it would be appropriate to condition confirmation on the
11   setting of a reserve in the amount of $275 million.
12           Just a quick aside regarding the $275 million
13   figure.  There's been (indiscernible) NextEra seeking more
14   than that amount.  I have scoured the pleadings and there
15   has been no such written demand.  It seems to me that a few
16   days before confirmation would be too late for NextEra to
17   inflate their demands, but that we'll await determination by
18   the Court, if necessary.
19           Turning to the merits.  The debtors' plan as
20   currently drafted specifically obligates the debtors to
21   reserve for payment of potential administrative expense
22   claims.  See plan Article 6.A.  Moreover, the plan states
23   that unsecured creditors not entitled to interest or damages
24   -- excuse me.  Moreover, the plan states that unsecured
25   creditors are not entitled to interest or damages in the

1   event the distributions are delayed pending the full and
2   final resolution of the disputed claims stating "except as
3   otherwise provided in the plan holders of claims in interest
4   shall not be entitled to interest, dividends, or accruals on
5   the distributions provided for in the plan regardless of
6   whether such distributions are delivered on or at any time
7   after the EFH effective date."  And that's plan Article 6.A.
8            You can also see plan Article 6.I which provides
9   -- specifically prohibits -- excuse me -- specifically
10  prohibits payment of postpetition interest on a prepetition
11  indebtedness.
12           In addition the plan specifically providers that
13  unsecured creditors shall receive distributions on the
14  effective date only "if funds are available" after the
15  establishment of appropriate reserves, including reserves
16  for "claims against the EFIH debtors that remain contingent
17  as of the EFH effective date" and "sufficient reserves" for
18  general administrative claims.  And that's plan Article 6.A.
19           Regardless of the terms of the Sempra plan however
20  there is an issue of fairness and preservation of the
21  integrity of the judicial process.  (Indiscernible) the
22  Sempra plan virtually all of the assets of the debtor will
23  be distributed to the creditors on the effective date which
24  is set to occur in mid-March.  If the Court does not set a
25  reserve and NextEra ultimately prevails NextEra would have

```
 1   no remedy, the debtors' estate would be judgment proof, and
 2   NextEra's appeal would be moot.
 3           Notwithstanding such a risk to the holder of a
 4   currently disallowed claim the Court can imagine situations
 5   where it would nonetheless decline to set a reserve.  For
 6   example, if setting a reserve would prevent the Sempra
 7   merger from closing the potential loss of billions of
 8   dollars of value would easily outweigh the harm to NextEra,
 9   but that is not the case.  The only adverse effect is to
10   delay the distribution of a portion of the recovery to
11   unsecured creditors.
12           While the opportunity costs of the delay of
13   receiving $275 million is not insignificant by any measure
14   it is the fate of unsecured creditors under our Bankruptcy
15   Code to bear that cost.  In addition it is appropriate to
16   oppose those costs to preserve the integrity of judicial
17   process, especially the appeal process.
18           While there are times it is appropriate to moot an
19   appeal it should be the rare exception to the rule.  This is
20   not the exception.
21           That concludes my ruling and remarks, and I would
22   open to the floor if anybody has any questions.
23           All right.  I hear none.
24           MR. MCKANE:  Judge Sontchi, it's Mark McKane on
25   behalf of the debtors.
```

1             Appreciate the ruling and especially doing so
2    today in advance of the pretrial conference tomorrow that's
3    scheduled for 2 o'clock eastern.
4             It would probably be best from the debtors'
5    perspective to be able to engage with the plan supporters as
6    well as NextEra to discuss next steps in terms of moving
7    forward and we're probably in a better position to give you
8    a report on how we can proceed with the plan confirmation
9    hearing on Monday tomorrow, if that's all right with Your
10   Honor.
11            THE COURT:  That's fine, Mr. McKane, and that's
12   what -- that was what I had anticipated would be the best
13   way to proceed, but I just wanted to give everybody an
14   opportunity to speak if you wanted to.  But I think that
15   makes excellent sense.
16            All right.  I hear no one else.  Thank you very
17   much for making yourself available.  I know I hate to be
18   read to, so I hope you didn't hate to be read to too much in
19   response, but I wanted to get this done in short order in an
20   oral ruling rather than trying to work up something in
21   writing, even a memorandum order was more likely to get you
22   a response in a timely manner.
23            So thank you for your patience.  We're adjourned.
24        (Whereupon these proceedings were concluded at 1:25 PM)
25

1                    I N D E X
2                    RULINGS
3                                                        PAGE
4   Court's Ruling on Motion in Limine                    4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1  C E R T I F I C A T I O N

2

3  I, Dawn South, certify that the foregoing transcript is a

4  true and accurate record of the proceedings.

5  Dawn South
   *Digitally signed by Dawn South*
   *DN: cn=Dawn South, o, ou, email=digital1@veritext.com, c=US*
   *Date: 2018.02.22 17:05:22 -05'00'*

6  _____

7  Dawn South

8  Certified Electronic Transcriber

9

10

11

12  Date:   February 22, 2018

13

14

15

16

17

18

19

20

21

22  Veritext Legal Solutions

23  330 Old Country Road

24  Suite 300

25  Mineola, NY 11501