## <u>Exhibit 1</u>

**Proposed Confirmation Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**ORDER CONFIRMING THE FIRST AMENDED JOINT PLAN
OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP.,
ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, AND THE
EFH/EFIH DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),[2]

including the EFH/EFIH Debtors, having, as applicable:

    a.    commenced, on April 29, 2014 (the "Petition Date"), the chapter 11 cases (including, collectively, the chapter 11 cases of the TCEH Debtors, the EFH Shared Services Debtors, the EFH Debtors, and the EFIH Debtors) (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

    b.    continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

    c.    filed on August 10, 2015, (i) the *Motion of Energy Future Holdings Corp.,* et al.*, to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* [D.I. 5249] (the "Settlement Motion") and (ii) *Motion of Energy Future Holdings Corp.,* et al*., to Authorize the Debtors to Enter Into and Perform Under the Plan Support Agreement* [D.I. 5248];

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, the "EFH Confirmation Order") have the meanings given to them in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* dated February 15, 2018 [ D.I. 12653], attached hereto as **Exhibit A** (the "Plan"). The rules of interpretation set forth in Article I.B of the Plan apply to this EFH Confirmation Order.

d.  filed on November 23, 2015, the *Notice of Settlement Among Debtors, EFH Committee, EFH Notes Trustee, Plan Sponsors, Consenting TCEH First Lien Creditors, and TCEH Committee* [D.I. 7090]; as amended by the *Amended Notice of Settlement Among Debtors, EFH Committee, EFH Notes Trustee, Plan Sponsors, Consenting TCEH First Lien Creditors, and TCEH Committee* [D.I. 7031], filed on November 24, 2015 (the "EFH/EFIH Committee Settlement");

e.  filed on August 5, 2016, the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9199];

f.  filed on August 16, 2016, the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9321] with modifications, supplements, and amendments filed thereafter on August 23, 2016 [D.I. 9374] (the "TCEH Confirmed Plan");

g.  filed on February 17, 2017, the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the EFIH Settlement Between the Debtors, Certain Holders of EFIH First Lien Note Claims, Certain Holders of EFIH Second Lien Note Claims, and Certain EFIH Unsecured Note Claims* [D.I. 10858];

h.  filed on July 7, 2017, the *Motion of EFH/EFIH Debtors for Entry of an Order Scheduling Certain Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11425];

i.  filed on July 7, 2017, (a) the *Motion of EFH/EFIH Debtors for Entry of an Order (A) Approving the EFH Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [D.I. 11428]; (b) the *Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11427] (as amended, modified, and supplemented at D.I. 11805, D.I. 11857, D.I. 11889, the "EFH Disclosure Statement"); and (c) the *Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, modified, and supplemented on August 23, 2017 [D.I. 11803], September 5, 2017 [D.I. 11854], and September 11, 2017 [D.I. 11887]);

j.  filed on July 7, 2017, the *Notice of Filing of Letters Terminating (A) the NEE Plan Support Agreement and (B) the NEE Merger Agreement* [D.I. 11424];

k.  filed on July 10, 2017, the *Notice of Filing of (A) Letter Terminating the PIK Plan Support Agreement and (B) Additional "Cleansing" Materials Under That Certain Confidentiality Agreement with Elliott Capital Management* [D.I. 11435];

l.  filed on July 11, 2017, the *Notice that the NextEra Plan and NextEra Plan Confirmation Order Have Been Rendered Null and Void* [D.I. 11446];

m.  filed on August 22, 2017, the *Second Re-Notice of the Motion of EFH/EFIH Debtors for Entry of an Order (A) Approving the EFH Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [D.I. 11795];

n.  filed on August 23, 2017, the *Amended and Superseding Motion of the E-Side Debtors for An Order (A) Authorizing Entry into the Merger Agreement and Approving the Termination Fee and (B) Authorizing Entry into and Performance Under the Plan Support Agreement* [D.I. 11801];

o.  filed on September 1, 2017, the *Declaration of David Ying in Support of the Amended and Superseding Motion of the E-Side Debtors for an Order (A) Authorizing Entry Into the Merger Agreement and Approving the Termination Fee and (B) Authorizing Entry Into and Performance Under the Plan Support Agreement* [D.I. 11852];

p.  filed on September 27, 2017, the *Affidavit of Service of Forrest Kuffer (Certification of Counsel Concerning Revised Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code)* [D.I. 11953];

q.  filed on October 20, 2017, the *Supplement for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12104] (as amended, modified, and supplemented from time to time, including at [D.I. 12685], the "EFH Plan Supplement");

r.  filed on October 20, 2017, the *Affidavit of Publication of John Wier of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan and Related Voting and Objection Deadlines in the Wall Street Journal* [D.I. 12100]; the *Affidavit of Publication of Jay H. Heyman of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan and Related Voting and Objection Deadlines in the Waco Tribune* [D.I. 12099]; *Affidavit of Publication of Toussaint Hutchinson of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan and Related Voting and Objection Deadlines in USA Today* [D.I. 12098]; *Affidavit of Publication of Victoria Bond of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan and Related Voting and Objection Deadlines in the Houston Chronicle* [D.I. 12097]; *Affidavit of*

*Publication of Jay H. Heyman of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan and Related Voting and Objection Deadlines in the Fort Worth Star Telegram* [D.I. 12096]; *Affidavit of Publication of Dan Navarro of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan and Related Voting and Objection Deadlines in the Dallas Morning News* [D.I. 12095]; and *Affidavit of Publication of Georgia Lawson of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan and Related Voting and Objection Deadlines in the Corpus Christi Caller-Times* [D.I. 12094] (collectively, the "EFH Publication Affidavits");

s.  filed on October 31, 2017, the *Affidavit / Declaration of Services of Solicitation Materials for the EFH/EFIH Debtors (Redacted)* [D.I. 12157] (the "EFH Solicitation Affidavit");

t.  filed on November 1, 2017, the *Certification of Ballots* [D.I. 12164] (the "EFH Voting Report");

u.  filed on January 25, 2018, the *Notice of Hearing to Consider Confirmation of the Chapter 11 Plan as it Applies to the EFH/EFIH Debtors and Related Matters* [D.I. 12512] (the "EFH Confirmation Hearing Notice");

v.  filed on February 2, 2018, the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Settlement Between the Debtors and Sempra and Approving the Agreed Amendment to the Merger Agreement* [D.I. 12571];

w.  filed on February 14, 2018, the *Affidavit of Service (Notice of Hearing to Consider Confirmation of the Chapter 11 Plan as it Applies to the EFH/EFIH Debtors and Related Matters)* [D.I. 12629];

x.  filed on February 15, 2018, the proposed *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [12655-1];

y.  filed on February 17, 2018, the *Debtors' Memorandum of Law in Support of the Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12666] (the "EFH Confirmation Memorandum");

z.  filed on February 17, 2018, the *Declaration of Jonathan F. Ganter, Esq. in Support of Debtors' Memorandum of Law in Support of the Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12668] (the "EFH Confirmation Memorandum Declaration");

aa. submitted on _____, the *Declaration of Anthony Horton in Support of the Confirmation of the First Amended Joint Plan of Reorganization of Energy Future*

4

*Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (the "<u>Horton Declaration</u>" and "<u>D-DIR Horton</u>");

bb. submitted on _____, the *Declaration of John Stuart in Support of the Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (the "<u>Stuart Declaration</u>" and "<u>D-DIR Stuart</u>");and

cc. submitted on _____, the *Declaration of Andrew M. Wright in Support of the Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (the "<u>Wright Declaration</u>" and "<u>D-DIR Wright</u>").

This Court having:

a. entered the *Order Authorizing Debtors to Enter Into and Perform Under Plan Support Agreement* [D.I. 6097] (the "<u>Original PSA Order</u>" and the Plan Support Agreement approved thereto, the "<u>Original PSA</u>") on September 19, 2015;

b. entered the Order Approving Settlement Among Debtors, EFH Committee, EFH Notes Trustee, and Certain Other Parties [D.I. 7143] on November 25, 2015;

c. entered the *Order Granting the Motion of Energy Future Holdings Corp.*, et al.*, to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 7243] on December 7, 2015;

d. entered the *Order (Amended) Confirming the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 7285] (the "<u>Original Confirmation Order</u>" and the approved plan of reorganization attached thereto, the "<u>Original Confirmed Plan</u>") on December 9, 2015;

e. entered the *Order Confirming the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 9421] (the "<u>TCEH Confirmation Order</u>") on August 29, 2016;

f. entered the *Order Approving the EFIH Settlement Between the Debtors, Certain Holders of EFIH First Lien Note Claims, Certain Holders of EFIH Second Lien Note Claims, and Certain Holders of EFIH Unsecured Note Claims* [D.I. 11048] on March 28, 2017;

g. entered the *Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the Joint Plan of*

5

*Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* on July 28, 2017 [D.I. 11628];

h.  entered the *Amended and Superseding Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* on August 29, 2017 [D.I. 11835] (as amended, modified, and supplemented at D.I. 12279 and 12519, the "<u>EFH Scheduling Order</u>");

i.  set October 30, 2017 as the preliminary deadline for filing objections to the Plan and December 19, 2017 as the final deadline for filing objections to the Plan (collectively, the "<u>EFH Plan Objection Deadline</u>");

j.  set October 30, 2017, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan (the "<u>Voting Deadline</u>");

k.  entered the *Order (A) Approving the EFH Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* on September 6, 2017 [D.I. 11870] (the "<u>EFH Disclosure Statement Order</u>" and the solicitation materials approved therein, the "<u>EFH Solicitation Packages</u>");

l.  entered the *Order (Corrected) (A) Authorizing Entry Into Merger Agreement and Approving Termination Fee and (B) Authorizing Entry Into and Performance Under Plan Support Agreement* on September 7, 2017 [D.I. 11873];

m.  entered the *Opinion* on October 3, 2017 on the motion for reconsideration of an order approving, among other things, a Termination Fee (as defined in [D.I. 11998]) in the amount of $275 million [D.I. 11998];

n.  entered the *Order Granting the Motion to Reconsider of Elliott Associates, L.P. and Denying the Application of NextEra Energy Inc. for Payment of Administrative Claim* on October 18, 2017 [D.I. 12075];

o.  entered the *Supplement to Amended and Superseded Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* on November 28, 2017 [D.I. 12279]

p.  entered the *Stipulation and Proposed Order* on December 1, 2017 [D.I. 12294].

q.  entered the *Order Denying Motion to Stay Pending Appeal* on December 11, 2017 [D.I. 12327] and amended on December 12, 2017 [D.I. 12334];

r.  entered the *Second Supplement to Amended and Superseding Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* on January 28, 2018 [D.I. 12519];

s.  set February 26, 2018, at 10:00 a.m. (prevailing Eastern Time) as the date and time for the commencement of the EFH Confirmation Hearing in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

t.  entered the *Stipulation and Order* [D.I. 12547];

u.  entered the *Order Approving (I) the Settlement Between the Debtors and Sempra and (II) the Agreed Amendment to the Merger Agreement* [D.I. 12631];

v.  entered the *Stipulation and Order* [D.I. 12703] on February 23, 2018 (the "Stipulation"), reflecting agreement between the Asbestos Objectors and the Debtors regarding Confirmation Proceedings (as defined in the Stipulation) with respect to the Plan;

w.  reviewed the Plan, the EFH Disclosure Statement, the EFH Confirmation Memorandum, and the EFH Confirmation Memorandum Declaration, the EFH Voting Report, and all pleadings, exhibits, statements, responses, and comments regarding EFH Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases and all closing materials tendered to the Court at closing arguments heard on _____;

x.  held the EFH Confirmation Hearing on February 26-27, 2018;

y.  heard the statements and arguments made by counsel in respect of EFH Confirmation;

z.  considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the EFH Confirmation Hearing;

aa. entered rulings on the record at the EFH Confirmation Hearing (the "EFH Confirmation Ruling");

bb. overruled any and all objections to the Plan and to EFH Confirmation, except as otherwise stated or indicated on the record, and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

cc. taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the EFH Confirmation Hearing and the opportunity for any party to object to the Confirmation of the Plan ("EFH Confirmation") has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of EFH Confirmation and all evidence proffered or adduced by counsel at the EFH Confirmation Hearing and as to Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, David Heinzmann, Harold Bissell, Kurt Carlson, Robert Albini, individually and as successor-in-interest to the Estate of Gino Albini, and Denis Bergschneider (collectively, the "Asbestos Objectors"), having considered the findings of fact and rationales for the conclusions of law announced by the Court in the Chapter 11 Cases related to asbestos-related claims, including but not limited to those made on the record at hearings (including but not limited to the December 3, 2015, and September 19, 2016, hearings) and the order confirming the Original Confirmed Plan, the NextEra Plan, the *Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form of and Manner for Filing Asbestos Proofs of Claims, and (C) Approving Notice Thereof* [D.I. 5171] entered on July 30, 2015, the *Order Denying the Amended Motion for Application of Fed. R. Bankr. P. 7023 to this Proceeding and to Certify a Class Pursuant to FRCP Rule 23* [D.I. 7383] entered on December 16, 2015, the TCEH Confirmation Order, and the opinion [D.I. 10414] and order [D.I. 10415] entered on December 19, 2016, denying the Motion to Dismiss, establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order:

## I.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.      Jurisdiction and Venue.**

1.      On the Petition Date, the Debtors commenced the Chapter 11 Cases.  Venue in this Court was proper as of the Petition Date and remains proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334.  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.      Eligibility for Relief.**

2.      The EFH/EFIH Debtors were and continue to be entities eligible for relief under section 109 of the Bankruptcy Code.

**C.      Commencement and Joint Administration of the Chapter 11 Cases.**

3.      On June 5, 2014, the Court entered an order [D.I. 849] authorizing the joint administration of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b).  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

4.      On May 13, 2014, the U.S. Trustee appointed the Official Committee of TCEH Unsecured Creditors representing the interests of the unsecured creditors of the TCEH Debtors and EFH Corporate Services in the Chapter 11 Cases [D.I. 420] (the "TCEH Committee").  On October 27, 2014, the U.S. Trustee appointed the Official Committee of Unsecured Creditors

representing the interests of the unsecured creditors for EFH, EFIH, EFIH Finance, Inc., and EECI, Inc. in the Chapter 11 Cases [D.I. 2570] (the "EFH/EFIH Committee").

**D.      Plan Supplement.**

5.      Commencing October 20, 2017 [D.I. 12104], and continuing thereafter, including on February 22, 2018 [D.I. 12685], the EFH/EFIH Debtors filed the EFH Plan Supplement with the Court.  The documents identified in the EFH Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Plan, the EFH Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the documents identified in the EFH Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal and notice of the EFH Plan Supplement (and all documents identified therein) was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was conducted in good faith.  No other or further notice with respect to the EFH Plan Supplement (and all documents identified therein) is necessary or shall be required.

**E.      Modifications to the Plan.**

6.      Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan described or set forth in this EFH Confirmation Order constitute technical changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest.  These modifications are consistent with the disclosures previously made pursuant to the EFH Disclosure Statement and solicitation materials served pursuant to the EFH Disclosure Statement Order, and notice of these modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases.

7.      In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims and Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.    To the extent there is any conflict or inconsistency between the Plan and this EFH Confirmation Order, this EFH Confirmation Order shall govern.

**F.      Objections Overruled.**

8.      Any resolution or disposition of objections to EFH Confirmation explained or otherwise ruled upon by the Court on the record at the EFH Confirmation Hearing is hereby incorporated by reference.    All unresolved objections to Confirmation of the Plan are hereby overruled on the merits.

**G.      EFH Disclosure Statement Order and EFH Scheduling Order.**

9.      On September 7, 2017, the Court entered the EFH Disclosure Statement Order [D.I. 11870], which, among other things, fixed October 30, 2017, as the Voting Deadline.    On August 29, 2017 the Court entered the EFH Scheduling Order [D.I. 11835], which was supplemented by the Court on November 28, 2017 [D.I. 12279] and January 28, 2018 [D.I. 12519], which, among other things, fixed October 30, 2017, as the preliminary EFH Plan Objection Deadline and set December 19, 2017 as the final EFH Plan Objection Deadline.

**H.      Transmittal and Mailing of Materials; Notice.**

10.      As evidenced by the EFH Solicitation Affidavits, the EFH Publication Affidavits, and the EFH Voting Report, the EFH/EFIH Debtors provided due, adequate, and sufficient notice of the Plan, the EFH Disclosure Statement, the EFH Disclosure Statement Order, the EFH Scheduling Order, the EFH Solicitation Packages, the EFH Confirmation Hearing Notice, the EFH Plan Supplement, and all the other materials distributed by the Debtors in connection with

11

EFH Confirmation in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), and the procedures set forth in the EFH Disclosure Statement Order.  The EFH/EFIH Debtors provided due, adequate, and sufficient notice of the EFH Plan Objection Deadline, the EFH Confirmation Hearing (as may be continued from time to time), and any applicable bar dates and hearings described in the Plan, EFH Disclosure Statement Order and EFH Scheduling Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the EFH Disclosure Statement Order and the EFH Scheduling Order.  No other or further notice is or shall be required.

**I.      Solicitation.**

11.      The EFH/EFIH Debtors solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with sections 1125 and 1126, and all other applicable sections, of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the EFH Disclosure Statement Order, and all other applicable rules, laws, and regulations.

**J.      EFH Voting Report.**

12.      Prior to the EFH Confirmation Hearing, the EFH/EFIH Debtors filed the EFH Voting Report.  The procedures used to tabulate ballots were fair and conducted in accordance with the EFH Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

13.      As set forth in the Plan and the EFH Disclosure Statement, Holders of Claims in Classes A4, A5, A6, A7, A8, A9, A10, A11, B5, and B6 (collectively, the "Voting Classes") were eligible to vote to accept or reject the Plan in accordance with the EFH Solicitation Procedures.  Holders of Claims and Interests in Classes A1, A2, A3, B1, B2, B3, B4, and B9

(collectively, the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan and, therefore, could not vote to accept or reject the Plan.  Holders of Claims or Interests in Classes A13, A15, B8, and B10 (collectively, the "Deemed Rejecting Classes") are Impaired under the Plan, entitled to no recovery under the Plan, and are therefore deemed to have rejected the Plan.  Holders of Claims and Interests in Classes A12, A14, and B7 are either Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated), or are Impaired and deemed to reject the Plan (to the extent cancelled and released), and, in either event, are not entitled to vote to accept or reject the Plan.

14.    As evidenced by the Voting Report, all Voting Classes voted to accept the Plan.

**K.    Bankruptcy Rule 3016.**

15.    The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The EFH/EFIH Debtors appropriately filed the EFH Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).

**L.    Burden of Proof.**

16.    The Debtors, as proponents of the Plan, have satisfied their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation.  Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) by clear and convincing evidence.

17.    The EFH/EFIH Debtors have satisfied their burden under section 363 of the Bankruptcy Code to demonstrate that all actions to be taken under the Plan pursuant to the EFH Confirmation Order, and related transactions, transfers, and settlements are in the respective best interests of their estates.  For the avoidance of doubt, entry by the EFH/EFIH Debtors into the Tax Matters Agreement, the Transition Services Agreement, and the Separation Agreement was approved pursuant to the TCEH Confirmation Order, effective as of the TCEH Effective Date.

13

**M.    Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

18.    The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

   **a.    Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

19.    The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

   **i.    Sections 1122 and 1123(a)(1)—Proper Classification.**

20.    The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into sixteen different Classes in respect of the EFH Debtors and ten different classes in respect of the EFIH Debtors, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are addressed in Article II of the Plan and are required not to be designated as separate Classes by section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not implemented for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims and Interests.

21.    In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims or Interests contains only Claims or Interests substantially similar to the other Claims or Interests within that Class.  Accordingly, the Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

### ii.    Section 1123(a)(2)—Specification of Unimpaired Classes.

22.    Article III of the Plan specifies that Claims in the Deemed Accepting Classes are Unimpaired under the Plan.  Additionally, Article II of the Plan specifies that Administrative Claims and Priority Tax Claims are Unimpaired, although the Plan does not classify these Claims.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### iii.    Section 1123(a)(3)—Specification of Treatment of Impaired Classes.

23.    Article III of the Plan specifies the treatment of each Impaired Class under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### iv.    Section 1123(a)(4)—No Discrimination.

24.    Article III of the Plan provides the same treatment to each Claim or Interest in any particular Class, as the case may be, unless the Holder of a particular Claim or Interest in such Class has agreed to a less favorable treatment with respect to such Claim or Interest. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### v.    Section 1123(a)(5)—Adequate Means for Plan Implementation.

25.    The Plan and the various documents included in the EFH Plan Supplement provide adequate and proper means for the execution and implementation of the Plan, including: (a) the restructuring of the EFH/EFIH Debtors' balance sheets and other financial transactions provided for by the Plan; (b) the implementation of the Merger Agreement, as contemplated by Article IV.B.5 of the Plan; (c) the New Organizational Documents; (d) the consummation of the transactions contemplated by the Sempra Plan Support Agreement, including the Merger Agreement; (e) the cancelation of certain existing agreements, obligations, instruments, and Interests; (f) the continuance of certain agreements, obligations, instruments, and Interests, as

provided in Article III of the Plan; (g) the vesting of the assets of the EFH Debtors' Estates and

EFIH Debtors' Estates in the Reorganized EFH Debtors and the Reorganized EFIH Debtors as

applicable; and (h) the execution, delivery, filing, or recording of all contracts, instruments,

releases, and other agreements or documents in furtherance of the Plan.  Accordingly, the Plan

satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### vi.      Section 1123(a)(6)—Non-Voting Equity Securities.

26.      The New Organizational Documents prohibit the issuance of non-voting

securities.[3]   Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the

Bankruptcy Code.

### vii.      Section 1123(a)(7)—Directors, Officers, and Trustees.

27.      The Reorganized EFH/EFIH Debtors' initial directors and officers, to the extent

known, have been disclosed prior to the EFH Confirmation Hearing and, to the extent not

known, will be determined in accordance with the New Organizational Documents, which is

consistent with the interests of creditors and equity holders and public policy.  Accordingly, the

Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

### b.      Section 1123(b)—Discretionary Contents of the Plan.

28.      The Plan contains various provisions that may be construed as discretionary but

not necessary for Confirmation under the Bankruptcy Code.  Any such discretionary provision in

the Plan complies with section 1123(b) of the Bankruptcy Code and is consistent with the

applicable provisions of the Bankruptcy Code.  Thus, the Plan satisfies section 1123(b).

---

[3]      *See* D.I. 12104-1, *Plan Supplement as it Relates to the EFH Debtors and EFIH Debtors for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code*, Ex. A., Article XII.

### i. Impairment/Unimpairment of Any Class of Claims or Interests.

29.    Pursuant to the Plan, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

### ii. Assumption and Rejection of Executory Contracts and Unexpired Leases.

30.    The applicable EFH/EFIH Debtors have exercised sound business judgment in determining whether to assume or reject each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, and Article V of the Plan and as set forth in the EFH Plan Supplement.  Except as set forth herein and/or in separate orders entered by the Court relating to assumption of Executory Contracts and Unexpired Leases, the EFH/EFIH Debtors have cured or provided adequate assurances that they will cure defaults (if any) under or relating to each Executory Contract and Unexpired Lease assumed under the Plan.

### iii. Compromise and Settlement.

31.    In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, equitable and subordination rights that a Holder of a Claim or Interest against an EFH Debtor and/or an EFIH Debtor may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.

### iv. Debtor Release.

32.    The releases of Claims and Causes of Action by the EFH/EFIH Debtors described in Article VIII.C of the Plan in accordance with section 1123(b)(3)(A) of the Bankruptcy Code

represent a valid exercise of such Debtors' business judgment under Bankruptcy Rule 9019 (the "Debtor Release").  The pursuit by the EFH/EFIH Debtors, or the Reorganized EFH/EFIH Debtors, of any such claims against the Released Parties is not in the best interest of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such Claims.  The Debtor Release is furthermore an integral part of the Plan and the Settlement Agreement and is in the best interests of the Debtors' Estates.

33.     The Debtor Release appropriately offers protection to parties that constructively participated in the Debtors' restructuring process, including TEF, Texas Holdings, Kohlberg Kravis Roberts & Co. L.P., TPG Capital, L.P., and Goldman, Sachs & Co., as well as affiliates that hold direct or indirect interests in Texas Holdings, TEF, or EFH Corp. (collectively, the "Prepetition Sponsors"), the Plan Sponsor, and each of the Supporting EFIH Unsecured Creditors.  Such protections from liability facilitated the participation of many of the Debtors' stakeholders in the negotiations and compromises that led to the Original Confirmed Plan, the TCEH Confirmed Plan, the Settlement Agreement, the Sempra Plan Support Agreement, the Merger Agreement, and the Plan.  Specifically, the Released Parties under the Plan, including the Plan Sponsor, the EFH/EFIH Plan Supporters, the Holders of TCEH First Lien Claims (including the members of the TCEH First Lien Ad Hoc Committee), members of the TCEH Unsecured Ad Hoc Group, Holders of General Unsecured Claims against the EFIH Debtors (including the Supporting EFIH Unsecured Creditors) contributed to the Debtors' Chapter 11 Cases, including, as applicable, entering into the Plan Support Agreement (including the binding Alternative Restructuring Terms, as defined therein), the Sempra Plan Support Agreement, and the Settlement Agreement, and waiving substantial Claims against the Debtors.  The Debtor Release for the Prepetition Sponsors is appropriate because the Prepetition Sponsors share an identity of

18

interest with the Debtors and the Debtors' directors and officers, waived claims associated with the Chapter 11 Cases, and actively participated in joint board and committee meetings during the Chapter 11 Cases, and have provided other valuable consideration to the Debtors under the Settlement Agreement to facilitate the Debtors' reorganization.

34.    Pursuant to the TCEH Confirmation Order, the TCEH Debtors, the Reorganized TCEH Debtors, the EFH Shared Services Debtors, and the Reorganized EFH Shared Services Debtors were deemed to provide the release set forth in Article VIII.C. of the Plan as of the TCEH Effective Date, including with respect to any Intercompany Claims (other than the TCEH Settlement Claim) held by or held against the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties. Nothing in this EFH Confirmation Order shall limit or impair any releases granted pursuant to the TCEH Confirmation Order.  The EFH/EFIH Debtors and the Reorganized EFH/EFIH Debtors shall be deemed to provide the release set forth in Article VIII.C. of the Plan as of the EFH Effective Date.  The TCEH Settlement Claim shall also be deemed to be treated, released, and discharged on the EFH Effective Date.

35.    The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Sempra Plan Support Agreement, and the Settlement Agreement, the Debtor Release is approved and authorized in its entirety.

<b>v.    Release by Holders of Claims and Interests.</b>

36.    The release by the Releasing Parties, set forth in Article VIII.D of the Plan (the "<u>Third Party Release</u>"), is an essential provision of the Plan.  The Third Party Release is:

19

(a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the claims and Causes of Action released by the Third Party Release; (c) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and are important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in the Chapter 11 Cases; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) a bar to any of the Releasing Parties asserting any claim or Cause of Action released by the Third Party Release against any of the other Released Parties; and (g) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

37.     The Third Party Release is an integral part of the Plan. Like the Debtor Release, the Third Party Release facilitated participation in the Original Confirmed Plan, the NextEra Plan, the Plan, and the chapter 11 process generally. The Third Party Release is instrumental to the Settlement Agreement that was critical in incentivizing the parties to support the Original Confirmed Plan, the TCEH Confirmed Plan, the EFIH Settlement Agreement, the Sempra Plan Support Agreement, and the Plan, and preventing potentially significant and time-consuming legacy and other litigation. The Third Party Release was a core negotiation point in connection with and instrumental in developing the Original Confirmed Plan, the Settlement Agreement, the TCEH Confirmed Plan, the Sempra Plan Support Agreement, and the Plan. As such, subject to certain enumerated exceptions, the Third Party Release appropriately offers certain protection to parties who constructively participated in the Debtors' restructuring process by supporting the Original Confirmed Plan, the Plan Support Agreement, the NextEra Plan, the EFIH Settlement Agreement, the Sempra Plan Support Agreement, the Settlement Agreement, the TCEH Confirmed Plan, and the Plan; Unimpaired Creditors that are being paid in full in Cash or

20

otherwise receiving a full recovery; or Holders of Claims or Interests that abstained from voting but did not opt out of the Third Party Release (to the extent such Holders of Claims or Interests were entitled to opt out of the Third Party Release under the Plan).

38.     Pursuant to the TCEH Confirmation Order, certain Releasing Parties were deemed to provide the release set forth in Article VIII.D of the Plan as of the TCEH Effective Date for all Claims and Causes of Action that relate to the TCEH Debtors, the Reorganized TCEH Debtors, the EFH Shared Services Debtors, the Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors or the Reorganized EFH Shared Services Debtors as of the TCEH Effective Date.  Nothing in this EFH Confirmation Order shall limit or impair any releases granted pursuant to the TCEH Confirmation Order.  The Releasing Parties shall be deemed to provide the release set forth in Article VIII.D of the Plan for all Claims and Causes of Action that relate to the EFH Debtors, the Reorganized EFH Debtors, the EFIH Debtors, and the Reorganized EFIH Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized EFH/EFIH Debtors as of the EFH Effective Date.

39.     The scope of the Third Party Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the Third Party Release.  In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Third Party Release to the Plan, the Third Party Release is approved and authorized in its entirety.

### vi.     Exculpation.

40.     The exculpation provisions set forth in Article VIII.E of the Plan are essential to the Plan.  The record in the Chapter 11 Cases fully supports the exculpation and the exculpation

provisions set forth in Article VIII.E of the Plan, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

### vii.    Injunction.

41.    The injunction provisions set forth in Article VIII.F of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third Party Release, and the exculpation provisions in Article VIII.E of the Plan.  Such injunction provisions are appropriately tailored to achieve those purposes.

### viii.    Preservation of Claims and Causes of Action.

42.    Article IV.Q of the Plan appropriately provides for the preservation by the EFH/EFIH Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  Causes of Action not released by such Debtors or exculpated under the Plan will be retained by the Reorganized EFH/EFIH Debtors or the EFH Plan Administrator Board, as applicable, as provided by the Plan.  The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the EFH/EFIH Debtors, their respective Estates, and Holders of Claims against and Interests in the EFH/EFIH Debtors.  For the avoidance of any doubt, Causes of Action released or exculpated under the Plan by the EFH/EFIH Debtors will not be retained by the Reorganized EFH/EFIH Debtors or the EFH Plan Administrator Board.

### c.    Section 1123(d)—Cure of Defaults.

43.    Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Any monetary defaults under each Assumed Executory Contract or Unexpired Lease to be assumed by the Reorganized EFH Debtors or the Reorganized EFIH Debtors shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash by the EFH Debtors or the EFIH Debtors, as

22

applicable, on the EFH Effective Date (and, with respect to Assumed Executory Contracts or Unexpired Leases of the EFH Debtors or the EFIH Debtors, by the EFH Debtors or the EFIH Debtors, as applicable, and, for the avoidance of doubt, not the Reorganized EFH Debtors or the Reorganized EFIH Debtors), subject to the limitations described in Article V.C of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and nonbankruptcy law.  As such, the Plan provides that the EFH/EFIH Debtors, as applicable, will cure, or provide adequate assurance that they will promptly cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code, as applicable. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

> **d.      Section 1129(a)(2)—Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code.**

44.      The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

45.      The EFH/EFIH Debtors and their agents solicited votes to accept or reject the Plan after the Court approved the adequacy of the EFH Disclosure Statement, pursuant to section 1125(a) of the Bankruptcy Code and the EFH Disclosure Statement Order.

46.      The EFH/EFIH Debtors and their agents (including the Disbursing Agent) have solicited and tabulated votes on the Plan and they and the Plan Sponsor have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e), and in a manner consistent with the applicable provisions of the

EFH Disclosure Statement Order, the EFH Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, with respect to the EFH/EFIH Debtors and Disbursing Agent, the exculpation provisions set forth in Article VIII.E of the Plan.

47.     The EFH/EFIH Debtors, the Reorganized EFH/EFIH Debtors, the Plan Sponsor, and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

**e.     Section 1129(a)(3)—Proposal of Plan in Good Faith.**

48.     The EFH/EFIH Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The EFH/EFIH Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the EFH Disclosure Statement, the hearing on the EFH Disclosure Statement, and the record of the EFH Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

49.     The Plan is the product of good faith, arm's-length negotiations by and among the EFH/EFIH Debtors, the EFH/EFIH Debtors' disinterested directors and managers, the Plan Sponsor, the EFH/EFIH Committee, the Supporting EFIH Unsecured Creditors, the parties to the EFIH Settlement Agreement, the Debtors' prepetition equity sponsors, and certain of the

Debtors' other stakeholders.  The Plan itself and the process leading to its formulation both provide independent evidence of the EFH/EFIH Debtors' and such other parties' good faith, serve the public interest, and assure fair treatment of Holders of Claims against and Interests in such Debtors.  Consistent with the overriding purpose of chapter 11, the Debtors filed the Chapter 11 Cases, and the EFH/EFIH Debtors proposed the Plan (and Merger Agreement), with the legitimate purpose of allowing the EFH/EFIH Debtors to maximize stakeholder value.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**f.    Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable.**

50.    Subject to the EFIH Secureds Settlement Approval Order, any payment made or to be made by the EFH/EFIH Debtors, or by a person issuing securities or acquiring property under the Plan as it relates to the EFH Debtors or the EFIH Debtors, for services or costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable.  Accordingly, the Plan satisfies the requirements of section 1129(a)(4).

**g.    Section 1129(a)(5)—Disclosure of Directors and Officers and Consistency with the Interests of Creditors and Public Policy.**

51.    To the extent not disclosed in the EFH Plan Supplement, the identities of the Reorganized EFH/EFIH Debtors' directors and officers shall be determined in accordance with the New Organizational Documents.  Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**h.    Section 1129(a)(6)—Rate Changes.**

52.    The Plan does not provide for  any rate changes subject to the jurisdiction of any governmental regulatory commission.  Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

i.      **Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

53.      The evidence in support of the Plan that was proffered or adduced at the EFH

Confirmation Hearing, and the facts and circumstances of the Chapter 11 Cases, establishes that

each Holder of Allowed Claims or Interests in Classes A1-A15 and Classes B1-B10 will recover

as much or more value under the Plan on account of such Claim or Interest, as of the EFH

Effective Date, than the amount such Holder would receive if the EFH/EFIH Debtors were

liquidated on the EFH Effective Date under chapter 7 of the Bankruptcy Code.  As a result, the

Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

j.      **Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Impaired Class; Deemed Rejecting Classes.**

54.      The Plan is conclusively presumed to be accepted by the Deemed Accepting

Classes, and the Plan was accepted by each of the Voting Classes.  Because the Plan has not been

accepted by the Deemed Rejecting Classes, however, the Debtors seek Confirmation of the Plan

under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code.  Thus, although

section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan

is confirmable because the Plan does not discriminate unfairly and is fair and equitable with

respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy

Code with respect to such Classes as described further below.  As a result, the Plan satisfies the

requirements of section 1129(b).

k.      **Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

55.      The treatment of 2017 EFIH First Lien DIP Claims, Administrative Claims,

Professional Fee Claims, and Priority Tax Claims under Article II of the Plan satisfies the

requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**l.      Section 1129(a)(10)—Acceptance by at Least One Impaired Class.**

56.      As set forth in the EFH Voting Report, all of the Voting Classes have voted to accept the Plan.  As such, there is at least one Class of Claims that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code).   Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**m.      Section 1129(a)(11)—Feasibility of the Plan.**

57.      The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at or before the EFH Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; and (d) establishes that the EFH/EFIH Debtors will have sufficient funds available to meet their obligations under the Plan—including sufficient amounts of Cash to reasonably ensure payment of, among other Allowed Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims Against the EFH Debtors, Allowed Professional Fee Claims, and other expenses in accordance with the terms of the Plan and section 507(a) of the Bankruptcy Code.  Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**n.      Section 1129(a)(12)—Payment of Statutory Fees.**

58.      Article XII.C of the Plan provides that all fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Court at the EFH Confirmation Hearing in accordance with section 1128 of the Bankruptcy Code, will be paid by the applicable EFH/EFIH Debtor on

27

the EFH Effective Date, and after the EFH Effective Date such fees shall be paid by the Disbursing Agent, at the direction of the EFH Plan Administrator Board, from the EFH/EFIH Cash Distribution Account for each quarter (including any fraction of a quarter) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.  Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

        **o.**        **Section 1129(a)(13)—Retiree Benefits.**

59.     Pursuant to section 1129(a)(13) of the Bankruptcy Code, and as provided in Article IV.O of the Plan and subject to the terms therein, the Reorganized EFH/EFIH Debtors, as applicable, will continue to pay all obligations on account of retiree benefits (as such term is used in section 1114 of the Bankruptcy Code) on and after the EFH Effective Date in accordance with the Plan and applicable law.  As a result, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

60.     Further, the EFH Non-Qualified Benefit Plans shall be terminated effective on or before the EFH Effective Date, and any Allowed Claims arising from the termination of such EFH Non-Qualified Benefit Plans shall be treated and satisfied in accordance with Article III.B.8 of the Plan in a manner consistent with Internal Revenue Code Section 409A and the regulations promulgated thereunder and satisfied on the EFH Effective Date (or as soon thereafter as reasonably practicable).  That certain split-dollar life insurance plan, amended and restated as of May 20, 2005, and as may be amended, modified, or restated from time to time (the "EFH Split-Dollar Plan"), shall be terminated on or before the EFH Effective Date, and any amounts that, under the terms of the EFH Spilt-Dollar Plan, would be paid to or recouped by, EFH Corp. on account of such termination shall be paid: (i) to the EFH Debtors, in the event that such amounts are paid to or recouped by EFH Corp. either prior to or upon the EFH Effective Date, or (ii) to

Reorganized EFH, in the event that such amounts are paid to or recouped by EFH Corp. after the EFH Effective Date.

**p.      Section 1129(a)(14), (15), and (16)—Domestic Support Obligations, Individuals, and Nonprofit Corporations**

61.      The EFH/EFIH Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations.   Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Plan.

**q.      Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Class.**

62.      Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes.   As a result, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.   Thus, the Plan may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied.   After entry of the EFH Confirmation Order and upon the occurrence of the EFH Effective Date, the Plan shall be binding upon the Deemed Rejecting Classes, and the Claims in such Classes shall be canceled and released.

**r.      Section 1129(c)—Only One Plan.**

63.      Other than the Plan (including previous versions thereof), no plan has been filed in the Chapter 11 Cases of the EFH/EFIH Debtors, except for plans that have been previously withdrawn.   Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

**s.      Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act.**

64.      No Governmental Unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**t.      Section 1129(e)—Not Small Business Cases.**

65.      The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**u.      Satisfaction of Confirmation Requirements.**

66.      Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**v.      Good Faith.**

67.      The EFH/EFIH Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the EFH/EFIH Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the EFH/EFIH Debtors and the Reorganized EFH/EFIH Debtors, as applicable, have been, are, and will continue acting in good faith if they proceed to: (a) consummate the Plan (including consummation of the Merger Agreement) and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this EFH Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

**w.** **Conditions to EFH Effective Date.**

68.     The Plan shall not become effective unless and until the conditions set forth in Article IX.D of the Plan have been satisfied or waived pursuant to Article IX.E of the Plan.

**x.** **Implementation.**

69.     All documents and agreements necessary to implement the Plan, including the Merger Agreement and those contained or summarized in the EFH Plan Supplement (including the Tax Matters Agreement and the Separation Agreement, which, for the avoidance of doubt, were approved with respect to the EFH/EFIH Debtors pursuant to the TCEH Confirmation Order), and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.   The Plan Sponsor is authorized and the EFH/EFIH Debtors and Reorganized EFH/EFIH Debtors, as applicable, are authorized and directed to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby, in all cases consistent with the terms of the Plan and the Merger Agreement.

70.     The terms of the Plan, including the EFH Plan Supplement and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, or executed or to be executed in connection with the transactions contemplated by the Plan, (including the Tax Matters Agreement and the Separation Agreement, which, for the avoidance of doubt, were approved with respect to the EFH/EFIH Debtors pursuant to the TCEH Confirmation Order), and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications are incorporated by reference, and approved in all respects, and constitute an integral part of this EFH Confirmation Order.

31

**y.      Vesting of Assets.**

71.      Except as otherwise provided in the Plan, on the EFH Effective Date, all property in each EFH Debtor Estate and EFIH Debtor Estate, all Causes of Action, and all property acquired by each EFH/EFIH Debtor pursuant to the Plan shall vest in each applicable Reorganized EFH/EFIH Debtor, free and clear of all Liens, Claims, charges, Interests, or other encumbrances.  Except as otherwise provided in the Plan, on and after the EFH Effective Date, the EFH Plan Administrator Board and each of the Reorganized EFH/EFIH Debtors may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**z.      Retention of Jurisdiction.**

72.      The Court properly retains jurisdiction over the matters set forth in Article XI and other applicable provisions of the Plan.

## II.  ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

73.      This EFH Confirmation Order confirms the Plan and is effective as of the date hereof.

74.      This EFH Confirmation Order approves the EFH Plan Supplement, including the documents contained therein as may be amended through and including the EFH Effective Date in accordance with and as permitted by the Plan and the Merger Agreement.

75.      All Holders of Claims and Interests in the Voting Classes that voted to accept the Plan are conclusively presumed to have accepted the Plan as modified.

RLF1 18931500v.1

76.     The Plan (including the EFH Plan Supplement and all documents or agreements included therein) and this EFH Confirmation Order will be effective and binding on all parties in interest, including: (a) the Debtors; (b) the TCEH Committee; (c) the EFH/EFIH Committee; (d) the Original Plan Sponsors; (e) NextEra; (f) the Plan Sponsor; and (g) all Holders of Claims and Interests.

77.     The failure to include or refer to any particular article, section, or provision of the Plan, the EFH Plan Supplement, or any related documents, agreements, or exhibits does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the EFH Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**A.     Objections.**

78.     To the extent that any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled prior to entry of this EFH Confirmation Order, are not cured or resolved by the relief granted in this EFH Confirmation Order, or have not been otherwise resolved as stated by the EFH/EFIH Debtors on the record of the EFH Confirmation Hearing, all such objections to the EFH Confirmation Order are overruled on the merits.

**B.     Findings of Fact and Conclusions of Law.**

79.     The findings of fact and the conclusions of law set forth in this EFH Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the EFH Confirmation Hearing in relation to EFH Confirmation, including the EFH Confirmation Ruling, are hereby incorporated into this EFH Confirmation Order.  In addition, all findings of fact and conclusions of law set forth in the

*Order Granting The Motion of Energy Future Holdings Corp.,* et al.*, to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 7243] are incorporated into this EFH Confirmation Order.  To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such. To the extent any finding of fact or conclusion of law set forth in this EFH Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the EFH Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

**C.    The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**

80.    The following releases, injunctions, and exculpations, and any related provisions set forth in Article VIII of the Plan, are hereby approved, authorized and ordered in their entirety:

a.    **Releases by the Debtors.**

**In addition to any release provided in the Settlement Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the EFH Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized EFH/EFIH Debtors, and their Estates from any and all Claims and Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, or the Disinterested Directors Settlement, as well as all other Claims and Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that the Debtors, the Reorganized EFH/EFIH Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in-or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the Master Separation Agreement dated December 12, 2001, the TCEH Credit Agreement, the TCEH First Lien Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), the TCEH First Lien Intercreditor Agreement, the Liability Management Program, the Tax Sharing Agreements, the 2007 Acquisition, the Management Agreement, the 2009 amendment to the TCEH Credit Agreement, the 2011 Amend and Extend Transactions, the 2005 Oncor Transfer, the 2013 Revolver Extension,**

the Luminant Makewhole Settlement, the Tax and Interest Makewhole Agreements, the TCEH Intercompany Notes, the Shared Services, any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or Filing of the Terminated Restructuring Support Agreement, the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFH/EFIH Committee Settlement, the EFIH Settlement Agreement, the EFIH First Lien Principal Settlement, the Original Confirmed Plan, the NextEra Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the EFH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFH/EFIH Committee Settlement, the EFIH Settlement Agreement, the PIK Settlement  (whether terminated pursuant to its terms or otherwise) and any direction taken by the EFIH Unsecured Notes Trustee in connection therewith (prior to the date of termination), the Terminated Restructuring Support Agreement, the EFH Disclosure Statement, the TCEH Disclosure Statement, the Plan, the Transaction Agreements, the DIP Facilities, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities  pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the EFH Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-EFH Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.   Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any of the EFH/EFIH Debtors' rights arising under any Assumed Executory Contracts and Leases assumed by Reorganized EFH or Reorganized EFIH on the EFH Effective Date (or pursuant to a separate Bankruptcy Court order).  Notwithstanding anything to the contrary in the foregoing, and for the avoidance of doubt, the TCEH Settlement Claim shall be treated, released, and discharged on the EFH Effective Date.   Notwithstanding anything to the contrary in the foregoing, the claims and Causes of Action set forth in Section 6.12 of the parent disclosure letter delivered in connection with the NEE Merger Agreement shall not be released; *provided, however*, that such Claims and

Causes of Action shall be subject to treatment pursuant to the Plan and shall be discharged as set forth in Article VIII.A of the Plan.  For the avoidance of doubt, the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, and Reorganized EFIH Debtors shall provide the release set forth in Article VIII.C of the Plan as of the EFH Effective Date; *provided*, *however*, that the releases provided by the EFH Debtors and Reorganized EFH Debtors on the one hand, to the EFIH Debtors and Reorganized EFIH Debtors on the other hand, (or vice versa) shall be subject to the satisfaction of any order that becomes a Final Order prior to the EFH Effective Date regarding allocations of (a) any Cash amounts owed by the EFH Debtors to the EFIH Debtors or (b) any Cash amounts owed by the EFIH Debtors to the EFH Debtors.

b.  **Releases by Holders of Claims and Interests.**

Except as otherwise provided in the Plan, as of the EFH Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized EFH/EFIH Debtor, and Released Party from any and all Claims and Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, or the Disinterested Directors Settlement, as well as all other Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the Master Separation Agreement dated December 12, 2001, the TCEH Credit Agreement, the TCEH First Lien Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), the TCEH First Lien Intercreditor Agreement, the Liability Management Program, the Tax Sharing Agreements, the 2007 Acquisition, the Management Agreement, the 2009 amendment to the TCEH Credit Agreement, the 2011 Amend and Extend Transactions, the 2005 Oncor Transfer, the 2013 Revolver Extension, the Luminant Makewhole Settlement, the Tax and Interest Makewhole Agreements, the TCEH Intercompany Notes, the Shared Services, any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or Filing of the Terminated Restructuring Support Agreement, the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFH/EFIH Committee Settlement, the EFIH Settlement Agreement, the EFIH First Lien Principal Settlement, the Original Confirmed Plan, the NextEra Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement

contemplated by the Plan or the reliance by any Released Party on the Plan or the EFH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFIH Settlement Agreement, the EFH/EFIH Committee Settlement, the PIK Settlement (whether terminated pursuant to its terms or otherwise) and any direction taken by the EFIH Unsecured Notes Trustee in connection therewith (prior to termination), the Terminated Restructuring Support Agreement, the EFH Disclosure Statement, the TCEH Disclosure Statement, the Plan, the Transaction Agreements, the DIP Facilities, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the EFH Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, (ii) any post-EFH Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (iii) claims or Causes of Action asserted by any Holder of Allowed Class C3 Claims under the TCEH Confirmed Plan against one or more Holders of Allowed Class C3 Claims under the TCEH Confirmed Plan (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute; and (iv) the claims and Causes of Action set forth in Section 6.12 of the parent disclosure letter delivered in connection with the NEE Merger Agreement; *provided, however*, that such claims and Causes of Action set forth in Section 6.12 of such parent disclosure letter delivered in connection with the NEE Merger Agreement shall be subject to treatment pursuant to the Plan and shall be discharged as set forth in Article VIII.A of the Plan.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any claims or Causes of Action against one or more of NextEra and its current and former subsidiaries (the "NEE Released Parties") relating to the pursuit of approval of the transactions contemplated in the Original Confirmed Plan (including, for the avoidance of doubt, claims or Causes of Action regarding the effect of the filing of Docket No. 7028 on approval of the transactions

contemplated in the Original Confirmed Plan) or claims or Causes of Action that may be brought by one or more of the NEE Released Parties against any party who brings a claim or Cause of Action against the NEE Released Parties relating to the pursuit of approval of the transactions contemplated in the Original Confirmed Plan; *provided, however,* for the avoidance of doubt, that any releases set forth above solely to the extent applicable pursuant to the terms set forth above, shall apply to the NEE Released Parties' current and former directors, managers, officers, individual equity holders (regardless of whether such interests are held directly or indirectly), attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such. Notwithstanding anything to the contrary in the foregoing, and for the avoidance of doubt, the TCEH Settlement Claim shall be treated, released, and discharged on the EFH Effective Date. For the avoidance of doubt, (i) the Releasing Parties provided the release set forth in Article VIII.D of the Plan for all Claims and Causes of Action that relate to the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties Company, as of the TCEH Effective Date; and (ii) the Releasing Parties shall provide the release set forth in Article VIII.D of the Plan for all Claims and Causes of Action that relate to the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, or Reorganized EFIH Debtors as of the EFH Effective Date; *provided* that any and all Intercompany Claims (other than the TCEH Settlement Claim) held by or held against the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties Company, were released as of the TCEH Effective Date.

c.  **Exculpation.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Terminated Restructuring Support Agreement and related prepetition transactions, the EFH Disclosure Statement, the TCEH Disclosure Statement, the Plan, the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFIH Settlement Agreement, the EFH/EFIH Committee Settlement, the Original Confirmed Plan, the NextEra Plan, the Transaction Agreements, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the

Plan or the EFH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the EFH Disclosure Statement, the TCEH Disclosure Statement, the Plan, the Original Confirmed Plan, the NextEra Plan, the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFIH Settlement Agreement, the EFH/EFIH Committee Settlement, the Transaction Agreements, or the DIP Facilities, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. For the avoidance of doubt, notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any (i) claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, or (ii) claims or Causes of Action asserted by any Holder of Allowed Class C3 Claims under the TCEH Confirmed Plan against one or more Holders of Allowed Class C3 Claims under the TCEH Confirmed Plan (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute. For the avoidance of doubt, the Exculpated Parties that include or are related to the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, and Reorganized EFIH Debtors shall receive the exculpation set forth in Article VIII.E of the Plan as of the EFH Effective Date.

d.  **Injunction.**

In addition to any injunction provided in the Settlement Order, except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the EFH Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released

pursuant to Article VIII.C or Article VIII.D of the Plan, shall be discharged pursuant to Article VIII.A of the Plan, or are subject to exculpation pursuant to Article VIII.E of the Plan, are permanently enjoined, from and after the EFH Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized EFH/EFIH Debtors, or the Released Parties:  (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan, including those related to the PIK Settlement  (whether terminated pursuant to its terms or otherwise) and any direction taken by the EFIH Unsecured Notes Trustee in connection therewith (prior to the date of termination).  Notwithstanding anything to the contrary in the foregoing, the Plan shall not enjoin (a) any party from pursuing the claims and Causes of Action set forth in Section 6.12 of the parent disclosure letter delivered in connection with the NEE Merger Agreement; *provided, however*, that such Claims and Causes of Action shall be subject to treatment pursuant to the Plan and shall be discharged as set forth in Article VIII.A of the Plan, (b) the TCEH First Lien Creditor Allocation Disputes, or any claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from, or in connection with, the TCEH First Lien Creditor Allocation Dispute, or (c) the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, or claims or Causes of Action asserted in the Marathon Delaware Action (in accordance with and as that term is defined in the *Stipulation and Consent Order Regarding Limited Objection of Marathon Asset Management, L.P., to Confirmation of Debtors' Fifth Amended Plan of Reorganization*, dated November 10, 2015 [D.I. 6932]), by any Holder of Allowed Class C3 Claims under the TCEH Confirmed Plan against one or more Holders of Allowed Class C3 Claims under the TCEH Confirmed Plan

**(other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.**

The foregoing releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan were approved and authorized in their entirety as they relate to the TCEH Debtors and the EFH Shared Services Debtors pursuant to the TCEH Confirmation Order and effective as of the TCEH Effective Date.

### D.    Federal Communications Commission.

81.    No provision in the Plan or this EFH Confirmation Order relieves the Reorganized EFH Debtors or the Reorganized EFIH Debtors from their obligations to comply with the Communications Act of 1934, as amended, and the rules, regulations, and orders promulgated thereunder by the Federal Communications Commission ("FCC"). No transfer of control to the Reorganized EFH Debtors or the Reorganized EFIH Debtors of any federal license or authorization issued by the FCC shall take place prior to the issuance of FCC regulatory approval for such transfer of control pursuant to applicable FCC regulations. The FCC's rights and powers to take any action pursuant to its regulatory authority over the transfer of control to the Reorganized EFH Debtors or the Reorganized EFIH Debtors, including imposing any regulatory conditions on such transfer, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority.

### E.    Post-EFH Confirmation Notices, Professional Compensation, and Bar Dates.

82.    In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven Business Days after the EFH Effective Date, the EFH Plan Administrator Board shall cause notice of EFH Confirmation and occurrence of the EFH Effective Date, substantially in the form attached hereto as **Exhibit B** (the "Notice of EFH Confirmation"), to be served by United States

mail, first-class postage prepaid, by hand, or by overnight courier service to all parties served with the EFH Confirmation Hearing Notice; *provided, however,* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the EFH/EFIH Debtors mailed an EFH Confirmation Hearing Notice or other notice in these Chapter 11 Cases but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless such Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.

83.    To supplement the notice procedures described in the preceding sentence, no later than five Business Days after the EFH Effective Date, the EFH Plan Administrator Board shall cause the Notice of EFH Confirmation, modified for publication, to be published on one occasion in *The Wall Street Journal, USA Today, The Dallas Morning News, Houston Chronicle, Corpus Christi Caller-Times, Fort Worth Star-Telegram,* and *Waco Tribune-Herald.*  The Notice of EFH Confirmation is approved in all respects, and mailing and publication of the Notice of EFH Confirmation in the time and manner set forth herein will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules, including Bankruptcy Rules 2002 and 3020(c).   No further notice is necessary.  All expenses associated with the Notice of EFH Confirmation shall be paid by the EFH Plan Administrator Board from the EFH/EFIH Cash Distribution Account.

84.    The Notice of EFH Confirmation will have the effect of an order of the Court, will constitute sufficient notice of the entry of the EFH Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

**F.      Notice of Subsequent Pleadings.**

85.      Except as otherwise provided in the Plan or in this EFH Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the EFH Effective Date will be limited to the following parties: (a) the U.S. Trustee; (b) counsel to the TCEH First Lien Ad Hoc Committee; (c) counsel to the Plan Sponsor; (d) counsel to the Supporting EFIH Unsecured Creditors; (e) counsel to the EFH Plan Administrator Board, (f) counsel to the EFIH Unsecured Notes Trustee, and (g) any party known to be directly affected by the relief sought by such pleadings.

**G.      Retention of Jurisdiction.**

86.      This Court retains jurisdiction over the matters set forth in Article XI and other applicable provisions of the Plan, including in order to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, and including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of a Debtor for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the Restructuring Transactions, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases to the extent allowable under sections 346, 505, and 1146.

**H.      Reports.**

87.      After the EFH Effective Date, the EFH/EFIH Debtors have no obligation to file with the Court or serve on any parties reports that the EFH/EFIH Debtors were obligated to file under the Bankruptcy Code or a Court order, including monthly operating reports (even for those periods for which a monthly operating report was not filed prior to the EFH Effective Date), ordinary course professional reports, and monthly or quarterly reports for Professionals; *provided, however,* that the EFH/EFIH Debtors and EFH Plan Administrator Board, as

43

applicable, will comply with the U.S. Trustee's quarterly reporting requirements. Through the EFH Effective Date, the EFH/EFIH Debtors will file such reports as are required under the Local Bankruptcy Rules.

**I.      Effectiveness of All Actions.**

88.      Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the EFH Effective Date pursuant to the EFH Confirmation Order, without further application to, or order of the Court, or further action by the EFH/EFIH Debtors and/or the Reorganized EFH/EFIH Debtors and their respective directors, officers, members, or stockholders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

**J.      Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.**

89.      This EFH Confirmation Order together with the order approving the Merger Agreement and the Sempra Plan Support Agreement shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the EFH Plan Supplement, the EFH Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**K.      Plan Implementation Authorization.**

90.      Subject to the consent of the Plan Sponsor, the EFH Plan Administrator Board, the EFH/EFIH Debtors, or the Reorganized EFH/EFIH Debtors, as the case may be, and their respective directors, officers, members, agents, and attorneys, financial advisors, and investment bankers are authorized and empowered from and after the date hereof to negotiate, execute,

44

issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document related to the Plan, as the same may be modified, amended, and supplemented, and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Court.  To the extent applicable, any or all such documents shall be accepted upon presentment by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.  Pursuant to section 303 of the General Corporation Law of the State of Delaware and any comparable provision of the business corporation laws of any other state, as applicable, no action of the boards of directors (or similar governing body, or their equity owners or managing member, as applicable) of the EFH/EFIH Debtors or the Reorganized EFH/EFIH Debtors  will be required to authorize such Debtors or Reorganized Debtors, as applicable, to enter into, execute and deliver, adopt or amend, as the case may be, any such contract, instrument, release, or other agreement or document related to the Plan, and following the EFH Effective Date, each of the documents related to the Plan will be a legal, valid, and binding obligation of such Debtors or Reorganized Debtors, as applicable, enforceable against such Debtors and Reorganized Debtors in accordance with the respective terms thereof.

**L.      Binding Effect.**

91.      On the date of and after entry of this EFH Confirmation Order, subject to the occurrence of the EFH Effective Date, and subject to the provisions of this EFH Confirmation Order, the Plan, and the EFH Plan Supplement shall bind the Debtors, their estates, any party seeking to act on behalf of, or in respect of, the Debtors or the Debtors' estates, and any Holder of a Claim against or Interest in the EFH Debtors or the EFIH Debtors and such Holder's

45

respective successor and assigns, regardless of whether:  (a) such Holder's Claim or Interest is

Impaired under the Plan; (b) such Holder has accepted the Plan; (c) such Holder failed to vote to

accept or reject the Plan or voted to reject the Plan; (d) such Holder is entitled to a distribution

under the Plan; (e) such Holder will receive or retain any property or interests in property under

the Plan; or (f) such Holder has filed a Proof of Claim in the Chapter 11 Cases.  For the

avoidance of doubt, the Tax Matters Agreement and the Separation Agreement became binding

upon the Debtors, their estates, and any party seeking to act on behalf of, or in respect of, the

Debtors or the Debtors' estates on the TCEH Effective Date pursuant to the TCEH Confirmation

Order.  The Plan and its related documents constitute legal, valid, binding, and authorized

obligations of the respective parties thereto and shall be enforceable in accordance with their

terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and its related documents

shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

**M.**     **Directors and Officers of the Reorganized EFH/EFIH Debtors.**

92.     The Reorganized EFH/EFIH Debtors' initial directors and officers, to the extent

known, have been disclosed prior to the EFH Confirmation Hearing.  To the extent that any

director or officer has not yet been determined, such determination will be made in accordance

with the New Organizational Documents and such appointment is hereby approved.

**N.**     **Release of Liens.**

93.     Except as otherwise specifically provided in the Plan and except for (a) any Other

Secured Claim Against the EFH Debtors that the EFH Debtors elect to Reinstate in accordance

with Article III.B.1 (subject to the consent of the Plan Sponsor) and, with respect to any Allowed

Other Secured Claim Against the EFH Debtors asserted by the Taxing Units that the EFH

Debtors shall Reinstate on the EFH Effective Date until such Allowed Other Secured Claim

Against the EFH Debtors is satisfied in the full Allowed amount, and (b) any Other Secured

Claim Against the EFIH Debtors that the EFIH Debtors elect to Reinstate in accordance with Article III.B.16 (subject to the consent of the Plan Sponsor), on the EFH Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the EFH/EFIH Debtors or their Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized EFH/EFIH Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors.  Notwithstanding anything to the contrary in the Plan, the Liens on the collateral securing the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, as applicable, will be released on the EFH Effective Date following payment in full in Cash of the Allowed EFIH First Lien Claims and Allowed EFIH Second Lien Claims accrued as of such payment date and the funding of the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve and the EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve (each as applicable and as defined in the EFIH Secureds Settlement Approval Order).  For the avoidance of doubt, solely for purposes of determining whether any such Claims are Secured Claims entitled to treatment as Class B3 or Class B4 Claims (rather than Unsecured Claims entitled to treatment as Class B5 Claims and Class B6 Claims), the secured status of such Claims shall be determined as if such Liens had not been released on the EFH Effective Date and remained in effect to the same extent they did immediately before the EFH Effective Date.

94.     To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan (or any agent for such Holder) has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as

reasonably practicable on or after the EFH Effective Date, such Holder (or the agent for such Holder) shall take any and all steps reasonably requested by the Debtors, the Reorganized EFH/EFIH Debtors, or any administrative agent under the Exit Facility Documents that are reasonably necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized EFH/EFIH Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

**O.      Injunctions and Automatic Stay.**

95.      Unless otherwise provided in the Plan or in this EFH Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court entered as of the EFH Confirmation Date (excluding any injunctions or stays contained in the Plan or the EFH Confirmation Order) shall remain in full force and effect through and including the EFH Effective Date.  All injunctions or stays contained in the Plan or the EFH Confirmation Order shall remain in full force and effect in accordance with their terms.

**P.      Cancelation of Existing Securities and Agreements.**

96.      Except as otherwise provided in the Plan, on and after the EFH Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims or Interests, including Other Secured Claims, EFIH First Lien Note Claims, EFIH Second Lien Note Claims, EFIH Unsecured Note Claims, EFH Legacy Note Claims, EFH LBO Note Primary Claims, EFH LBO Note Guaranty Claims, EFH Unexchanged Note Claims, EFH Swap Claims, EFH Series N Note Claims, and 2017 EFIH First Lien DIP Claims, shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or a Holder to take further action with respect

48

to any note(s) or security and the obligations of the Debtors or Reorganized Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged, and the Indenture Trustees, the Original EFIH First Lien DIP Agent, and the 2017 EFIH First Lien DIP Agent shall be released from all duties thereunder; *provided, however*, that (a) Interests in Debtors EFIH, LSGT Gas Company, LLC, EECI, Inc., EEC Holding, Inc., and LSGT SACROC, Inc. shall be Reinstated; and (b) notwithstanding Confirmation or Consummation, any such indenture or agreement that governs the rights of the Holder of a Claim shall, subject to the terms of the Plan and, if applicable, the EFIH Settlement Agreement, continue in effect solely for purposes of:  (1) allowing Holders of Allowed Claims to receive distributions under the Plan and, as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, under EFIH Secureds Settlement Approval Order; (2) allowing the Indenture Trustees or such other Disbursing Agent pursuant to the EFH Confirmation Order to make the distributions in accordance with the Plan (if any), as applicable, and, as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, under the EFIH Secureds Settlement Approval Order; (3) preserving any rights of the Original EFIH First Lien DIP Agent, the 2017 EFIH First Lien DIP Agent, or the Indenture Trustees to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the relevant Holders under, as applicable, the Plan, the Original EFIH First Lien DIP Credit Agreement, the 2017 EFIH First Lien DIP Credit Agreement, the EFH Note Indentures, the EFH Series N Note Indenture, the EFIH First Lien Note Indentures, the EFIH Second Lien Note Indenture, and the EFIH Unsecured Note Indentures, including any rights to priority of payment and/or to exercise charging liens, including retention of appropriate reserves, and, as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, under the EFIH Secureds Settlement Approval

RLF1 18931500v.1

Order; (4) allowing the Indenture Trustees, the Original EFIH First Lien DIP Agent, and the 2017 EFIH First Lien DIP Agent to enforce any obligations owed to each of them under the Plan and take any actions contemplated of them by the Plan; and (5) allowing the Indenture Trustees, the Original EFIH First Lien DIP Agent, and the 2017 EFIH First Lien DIP Agent to appear in the Chapter 11 Cases or any proceeding in which they are or may become a party; *provided, further, however*, that, without prejudice to the right of any Holder of an Allowed Claim to the rights of such party to receive distributions under the Plan or the EFIH Settlement Agreement, the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the EFH Confirmation Order, or the Plan, or result in any expense or liability to the Debtors, Reorganized Debtors, as applicable, or the Plan Sponsor.  For the avoidance of doubt, the TCEH First Lien Creditor Allocation Disputes and the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, and the TCEH First Lien Intercreditor Agreement, the TCEH Credit Agreement, and the TCEH First Lien Note Indenture remain in effect in accordance with the terms of the TCEH Plan and TCEH Confirmation Order solely to the extent necessary to preserve the TCEH First Lien Creditor Allocation Disputes and the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, and any (a) claims or Causes of Action by the TCEH First Lien Notes Trustee, TCEH First Lien Agent, or Holders of TCEH First Lien Claims against other Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising in connection with the TCEH First Lien Creditor Allocation Disputes, or (b) claims or Causes of Action by any Holder of Allowed Class C3 Claims against any other Holder of Allowed Class C3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) in the TCEH First Lien

Creditor Deposit L/C Collateral Allocation Dispute (or any claims, Causes of Action or defenses of any other party to such dispute). All capitalized terms in the preceding sentence shall have the definitions ascribed to them in the TCEH Plan. Notwithstanding anything to the contrary in the foregoing provisions of Article IV.G of the Plan, (x) the cancelation and discharge of the EFIH First Lien Note Indentures, the EFIH Second Lien Note Indenture, and the EFIH Collateral Trust Agreement, and all other notes, instruments, certificates, agreements, mortgages, security documents, and other documents evidencing any Claims or rights under the EFIH First Lien Notes or the EFIH Second Lien Notes shall be limited solely to the Debtors and the Reorganized EFH/EFIH Debtors and shall not affect the rights of the EFIH First Lien Notes Trustee or Holders of the EFIH First Lien Note Claims vis-à-vis any other party, including the EFIH Second Lien Notes Trustee and Holders of the EFIH Second Lien Note Claims, or vice versa; and (y) for the avoidance of doubt, the EFIH First Lien Note Indentures, the EFIH Second Lien Note Indenture, the EFIH Collateral Trust Agreement, and all other notes, instruments, certificates, agreements, mortgages, security documents, and other documents evidencing any Claims or rights under the EFIH First Lien Notes or the EFIH Second Lien Notes shall remain in effect (and the EFIH First Lien Notes Trustee and the EFIH Second Lien Notes Trustee shall remain as trustee, and registrar) for the purposes set forth in (1)-(5) of this section, as applicable.

**Q.      Cooperation by the DTC.**

97.     The Depository Trust Company ("DTC"), and any participants and intermediaries, shall fully cooperate and facilitate distributions, as applicable, pursuant to the Plan, including to Holders of Claims in Classes A4, A5, A6, and B5.

**R.      Cooperation by the EFIH Unsecured Notes Trustee.**

98.     The EFIH Unsecured Notes Trustee is authorized to fully cooperate with the directives of the Holders of Claims against the EFIH Debtors under the EFIH Unsecured Notes.

S.      **Securities Law Exemption.**

99.      Pursuant to section 1145 of the Bankruptcy Code, the issuance of the New HoldCo Equity Interests is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration before the offering, issuance, distribution, or sale of such securities. Each of the New HoldCo Equity Interests issued under the Plan (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and (b) is freely tradable and transferable by any initial recipient thereof that (i) at the time of transfer, is not an "affiliate" of Reorganized EFH, Reorganized EFIH, the Plan Sponsor, or EFH Merger Sub, as the case may be, as defined in Rule 144(a)(1) under the Securities Act and has not been such an "affiliate" within 90 days of such transfer, and (ii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

100.      The Reorganized EFH Common Stock and the New HoldCo Equity Interests will be issued without registration in reliance upon the exemption set forth in Section 4(a)(2) of the Securities Act and will be "restricted securities," as that term is defined in Rule 144 under the Securities Act.

101.      Should the Reorganized EFH Debtors or the Reorganized EFIH Debtors elect on or after the EFH Effective Date to reflect any ownership of the Reorganized EFH Common Stock through the facilities of the DTC, the Reorganized EFH Debtors and the Reorganized EFIH Debtors need not provide any further evidence other than the Plan or the EFH Confirmation Order with respect to the treatment of the Reorganized EFH Common Stock under applicable securities laws.

102.      The DTC shall be required to accept and conclusively rely upon the Plan and EFH Confirmation Order in lieu of a legal opinion regarding whether any of the Reorganized EFH

52

Common Stock is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

103.     Notwithstanding anything to the contrary in the Plan, no entity (including, for the avoidance of doubt, the DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the Reorganized EFH Common Stock is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

**T.     Section 1146 Exemption.**

104.     Pursuant to, and to the fullest extent permitted by, section 1146 of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with, the Plan, including, but not limited to: (1) the Restructuring Transactions; (2) the Reorganized EFH Common Stock; (3) the New HoldCo Equity Interests; (4) the assignment or surrender of any lease or sublease; and (5) the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the EFH Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

**U.     Professional Compensation and Reimbursement Claims.**

105.     Except as otherwise specifically provided in the Plan, from and after the EFH Effective Date, the EFH Plan Administrator Board shall, in the ordinary course of business and

without any further notice or application to or action, order, or approval of the Bankruptcy Court, pay in Cash from the EFH/EFIH Cash Distribution Account the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan incurred on or after the EFH Effective Date by (i) the EFH/EFIH Debtors or the Reorganized EFH/EFIH Debtors, in the manner prescribed by the allocation set forth in Article II.A.2(d) of the Plan and (ii) the EFH/EFIH Committee.

106.    Upon the EFH Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered to the EFH Plan Administrator Board, the Reorganized EFH Debtors, or the Reorganized EFIH Debtors after such date shall terminate, subject only to the procedures set forth in the Interim Compensation Order, and the EFH Plan Administrator Board, the Reorganized EFH Debtors, and the Reorganized EFIH Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.   In addition, the EFH/EFIH Debtors, the EFH Plan Administrator Board, and the Reorganized EFH/EFIH Debtors (as applicable) are authorized to pay any and all professional fees as contemplated by and in accordance with the Plan, and the EFIH First Lien Final DIP Order; *provided*, *however*, that, for the avoidance of doubt, the Reorganized EFH Debtors and the Reorganized EFIH Debtors shall not be liable or otherwise responsible for the payment of any Professional Fee Claims.

107.    With respect to the payment of fees and expenses pursuant to Article IV.R. of the Plan asserted by the EFH Notes Trustee, the Court has found the EFH Notes Trustee to have made, in accordance with sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code, a substantial contribution in these cases through the EFH Confirmation Date, as set forth

in the Confirmation Ruling. The Court also finds that the Supporting Creditors (as defined in the Sempra Plan Support Agreement) have made, in accordance with sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code, a substantial contribution in these cases, as set forth in the Confirmation Ruling, and are hereby granted an Allowed Administrative Claim against EFIH, pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, in an aggregate amount of up to $35 million for fees and expenses (including fees and expenses for legal counsel, financial advisors, consultants and other professionals) incurred and that may be incurred in connection with the Debtors' chapter 11 cases, which shall be payable to the Supporting Creditors in accordance with the procedures set forth in paragraphs 109 through 113 below; *provided*, that such grant of an Allowed Administrative Claim against EFIH is without prejudice to (a) the reallocation of such Allowed Administrative Claim as between EFH and EFIH pursuant to separate order of the Bankruptcy Court, or a stipulation between the Supporting Creditors and the applicable agents of the EFH Plan Administrator Board, or (b) the rights of the Supporting Creditors to seek entry of any such Order. Notwithstanding anything in the Plan contrary, the EFH Notes Trustee's and the Supporting Creditors' Administrative Claims shall be limited to claims allowed under sections 503(b)(3)(D), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

108.    The Allowed Administrative Claim granted herein in favor of the Supporting Creditors shall be without prejudice to the Supporting Creditors' rights to later apply to this Court for allowance and payment of additional amounts as an administrative expense under sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code in connection with any fees and expenses (including fees and expenses for legal counsel, financial advisors, consultants and other professionals) incurred by Supporting Creditors from and after the EFH Confirmation Date

(including after the EFH Effective Date) in making a substantial contribution in these cases, which shall be payable to the Supporting Creditors in accordance with the procedures set forth in paragraphs 109 through 113 below. All parties' rights are reserved with respect to any such application filed by the Supporting Creditors.

109.    The EFH Notes Trustee and the Supporting Creditors shall submit to the Debtors or the EFH Plan Administrator Board, as applicable, one or more short-form invoices setting forth such amounts and the period(s) during which such amounts were incurred and the parties to be paid (each such party, a "Requesting Party") on behalf of the EFH Notes Trustee and Supporting Creditors, as applicable. No later than the later of five business days after the Debtors' or EFH Plan Administrator Board's receipt of each such short-form invoice or the EFH Effective Date, the Debtors or EFH Plan Administrator Board, as applicable, shall pay to the applicable Requesting Party 80% of the requested fees and 100% of the requested expenses, which amounts shall be subject to disgorgement if and to the extent the Court determines that such requested fees and expenses are not reasonable.

110.    Within 45 days of receipt of payment, the applicable Requesting Party shall submit full invoices and LEDES data (a "Fee Request") to the Debtors, the EFH Plan Administrator Board, the U.S. Trustee, and the Fee Committee appointed in these Chapter 11 Cases (the "Fee Committee") in LEDES format (or, in the absence thereof, such other format as is mutually agreed among the applicable Requesting Party, the Debtors (or the EFH Plan Administrator Board, as applicable), the U.S. Trustee, and the Fee Committee).

111.    Following the Fee Committee's receipt of a Fee Request, within reasonable time periods, to be determined either by the Fee Committee and the relevant professionals or by the Court:

RLF1 18931500v.1

- (i) the Fee Committee shall send a confidential letter to the applicable Requesting Party regarding the Fee Committee's initial report and recommendation with respect to the applicable Fee Request;

- (ii) (a) the Fee Committee shall file with the Court a final report and recommendation ("Fee Committee Recommendation") with respect to such Fee Request and (b) the U.S. Trustee shall file with the Court any objection or comments it may have with respect to such Fee Request ("U.S. Trustee Objection");

- (iii) the applicable Requesting Party may file with the Court a response ("Fee Response") to such Fee Committee Recommendation or U.S. Trustee Objection; and

- (iv) the Court shall consider each Fee Request at the next omnibus hearing or at a scheduled Fee Committee hearing on Retained Professional fee applications.

112.    No later than the later of the EFH Effective Date and 10 days following the Court's ruling with respect to a Fee Request, the EFH Plan Administrator Board shall pay to the Requesting Party any unpaid amounts with respect to such Fee Request as ordered by the Court, or the Requesting Party shall disgorge to the EFH Plan Administrator Board such amounts ordered by the Court, as applicable, with any such disgorged amounts distributed by the EFH Plan Administrator Board in accordance with the Plan.

113.    For the avoidance of doubt, the Requesting Parties and the Fee Requests shall not be required to comply with (a) The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or other orders in these Cases with respect to fee applications, including the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896], or (b) *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases*, 78 Fed. Reg. No 116, page 36248 (June 17, 2013).

114.    On the EFH Effective Date, the EFH Plan Administrator Board shall reserve $38,000,000.00 in the EFH/EFIH Cash Distribution Account into a segregated, interest-bearing

account, which amounts shall be held, used, and applied by the EFH Plan Administrator Board for the payment of Allowed Administrative Claims of the Supporting Creditors under sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code in accordance with paragraphs 109 through 113 above. Any Allowed Administrative Claims of the EFH Notes Trustee under sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code shall be paid in accordance with paragraphs 109 through 113 above solely from funds in the EFH Cash Account (which, for the avoidance of doubt, shall be set forth in the EFH/EFIH Cash Distribution Account) in accordance with the Plan.

**V.      Nonseverability of Plan Provisions upon EFH Confirmation.**

115.    Each term and provision of the Plan, including the EFH Plan Supplement and all exhibits and schedules thereto and all other documents filed in connection with the Plan, or executed or to be executed in connection with transactions contemplated by the Plan and the Merger Agreement and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications are: (a) valid and enforceable pursuant to their terms; (b) integral to the Plan and may not be deleted or modified without the EFH/EFIH Debtors' or Reorganized EFH/EFIH Debtors' consent, as applicable; and (c) nonseverable and mutually dependent.

**W.      Waiver or Estoppel.**

116.    Each Holder of a Claim or Interest in Classes A1 through A15 and Classes B1 through B10 shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the EFH Disclosure Statement, or papers filed with the Court before the EFH Confirmation Date.

## X.    Authorization to Consummate.

117.    The Debtors are authorized to consummate the Plan at any time after the entry of the EFH Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX.B and Article IX.D of the Plan. The substantial consummation of the Plan, within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code, is deemed to occur on the first date, on or after the EFH Effective Date, on which any distributions are made in accordance with the terms of the Plan to Holders of any Allowed Claims against the EFH Debtors or the EFIH Debtors.

## Y.    Treatment of Executory Contracts and Unexpired Leases.

118.    The assumption of the Executory Contracts and Unexpired Leases set forth on Exhibit B of the EFH Plan Supplement and the rejection of the Executory Contracts and Unexpired Leases set forth on Exhibit C of the EFH Plan Supplement, in each case subject to the Separation Agreement as applicable, are hereby authorized.

119.    Unless otherwise agreed, the EFH/EFIH Debtors will not assume, cure, or otherwise treat any contract pursuant to this EFH Confirmation Order that is the subject of (a) an outstanding objection to a proposed assumption or cure amount (an "Assumption Objection") at the time of entry of this EFH Confirmation Order (if any); or (b) certain outstanding orders extending the deadline by which the Debtors may make a determination as to whether to assume or reject a lease (the "Deadline Extension Orders").[4]  All outstanding Assumption Objections, if any, will be heard at the omnibus hearing scheduled for March 28, 2018, at 2:00 p.m. (prevailing

---

[4]    The Deadline Extension Orders comprise the following:  *Order Further Extending the Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 4458]; *Order Further Extending the Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 6908]; *Order Further Extending Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 8504]; and the *Order Extending Deadline to Assume or Reject a Certain Non-Residential Real Property Lease* [D.I. 9379].

Eastern Time), or another hearing that is convenient to the Court.  Unless otherwise agreed, the EFH/EFIH Debtors will not assume any contract that is the subject of an Assumption Objection until the Assumption Objection has been consensually resolved or the Court has made a determination on the Assumption Objection.

**Z.     AppLabs.**

120.    To the extent any of the Reorganized Debtors (to which this EFH Confirmation Order relates) asserts any Claim or Causes of Action retained pursuant to the Plan (the "Retained Actions") against AppLabs Technologies Pvt Ltd. ("AppLabs"), nothing in the Plan, the EFH Confirmation Order or the Bankruptcy Code shall preclude AppLabs' exercise of any valid setoff rights or recoupment rights (if any) in connection with such Reorganized Debtors' assertion of any Retained Actions, and AppLabs' setoff and recoupment rights (if any) are explicitly preserved.

**AA.    EFH/EFIH Committee Provisions**.

121.    On the EFH Effective Date, any statutory committee appointed in the Chapter 11 Cases with respect to the EFH Debtors or the EFIH Debtors (including the EFH/EFIH Committee) shall dissolve; *provided, however*, that following the EFH Effective Date, the EFH/EFIH Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (i) Claims and/or applications, and any relief related thereto, for compensation by professionals and requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; (ii) appeals of the EFH Confirmation Order as to which the EFH/EFIH Committee is a party; (iii) any matters relating to the *Order Amending Stipulation and Order Appointing Fee Committee and Granting Related Relief* [D.I. 12552]; and (iv) any matters, including any appeals, relating to adversary proceeding Case No. 17-50942 (CSS) and NextEra's request for the allowance or payment of

any related Administrative Claims (collectively, the "Limited Purposes").  The EFH/EFIH

Committee shall use reasonable efforts to minimize its participation in the Chapter 11 Cases and

avoid duplication of services in connection with the Limited Purposes.  Upon dissolution of the

EFH/EFIH Committee, the members thereof and their respective officers, employees, counsel,

advisors, and agents shall be released and discharged from all rights and duties from or related to

the Chapter 11 Cases.  The Reorganized EFH/EFIH Debtors shall not be liable or otherwise

responsible for paying any fees or expenses incurred by the members of or advisors to any

statutory committees (including the EFH/EFIH Committee).  Any such reasonable and

documented fees and expenses incurred in connection with the Limited Purposes after the EFH

Effective Date shall be paid from the EFH/EFIH Cash Distribution Account.

**BB.    Good Faith Protections.**

122.    Sempra Energy ("Sempra") and its affiliates are good faith purchasers within the

meaning of section 363(m) of the Bankruptcy Code, and are therefore entitled to, and are hereby

granted, the full rights, benefits, privileges and protections afforded to good faith purchasers

under the Bankruptcy Code, including section 363(m) of the Bankruptcy Code.

123.    The purchase price to be provided by Sempra pursuant to the Merger Agreement

was not controlled by any agreement between Sempra or its affiliates, on the one hand, and any

potential bidders, on the other hand, and was not reduced or suppressed in any manner by any

arrangement involving Sempra or its affiliates, on the one hand, and any creditor, on the other

hand.

**CC.    Indenture Trustee**.

124.    Any and all distributions made by the Debtors or the Disbursing Agent on account

of (a) the EFH Note Claims shall be made to the EFH Notes Trustee, (b) the EFIH Unsecured

Note Claims shall be made to the EFIH Unsecured Notes Trustee, (c) the EFIH First Lien Note

Claims shall be made to the EFIH First Lien Notes Trustee, and (d) the EFIH Second Lien Note

Claims shall be made to the EFIH Second Lien Notes Trustee.  As set forth in Article IV.I of the

Plan, each Trustee shall be entitled to exercise its charging lien against any and all distributions it

receives from the Debtors or the Disbursing Agent, including retention of appropriate reserves in

accordance with the terms of the applicable Indentures (and apply any charged amounts in

accordance with the terms of such applicable Indenture).

125.    Solely in the event there are sufficient amounts in the EFH/EFIH Cash

Distribution Account to provide a 100% recovery to Holders of Allowed Class B5 Claims and

Holders of Allowed Class B6 Claims (on account of the Allowed EFIH General Unsecured

Claim), after first satisfying (a) the Allowed EFIH First Lien Claims and Allowed EFIH Second

Lien Claims in full, in Cash; and (b) other Administrative Claims of the EFIH Debtors (including

the EFH Professional Fee Account); then, in addition to the Allowed EFIH General Unsecured

Claim, the EFIH Unsecured Notes Trustee shall be entitled to seek payment of all or a portion of

the reasonable, documented, and unpaid EFIH Unsecured Notes Trustee Fees and Expenses.

**DD.    Administration of the EFH/EFIH Cash Distribution Account**.

126.    The EFH/EFIH Cash Distribution Account (which may consist of one or more

interest-bearing escrow accounts, designated by EFH Corp. prior to the EFH Effective Date)

shall be established on the EFH Effective Date.  Distributions from the EFH/EFIH Cash

Distribution Account shall be in accordance with the Plan, this EFH Confirmation Order, the

EFIH Secureds Settlement Approval Order, as applicable, provided that in all instances such

distributions shall be consistent with Article VI.A. of the Plan as approved pursuant to the

Confirmation Order.  The Reorganized EFH/EFIH Debtors shall have no liability in respect of

Claims asserted against the EFH Debtors or Claims asserted against the EFIH Debtors, which

shall be payable solely from the EFH/EFIH Cash Distribution Account pursuant to, and in accordance with, the Plan, and this EFH Confirmation Order.

**EE.    No Continuing Makewhole Claim Liability.**

127.    The limitations on liability set forth in the next paragraph below shall not apply to the EFH/EFIH Cash Distribution Account, as established on the EFH Effective Date.  Nothing in the next paragraph impairs, modifies, or otherwise affects the ability of Holders of Allowed Claims to receive distributions pursuant to the Plan, the EFH Confirmation Order, and the EFIH Secureds Settlement Approval Order on account of such Allowed Claims.

128.    Notwithstanding anything to the contrary in this EFH Confirmation Order, the Plan, the Merger Agreement, the EFIH Settlement Agreement, the EFIH Secureds Settlement Approval Order, or any related agreements or otherwise (including any provisions anywhere that also include the words "notwithstanding anything to the contrary" or similar references), none of (i) the Plan Sponsor; (ii) Merger Sub; (iii) the EFH Debtors; (iv) the Reorganized EFH Debtors; (v) the EFIH Debtors; (vi) Reorganized EFIH; (vii) any other entity acquired, directly or indirectly, by the Plan Sponsor pursuant to the terms of, or as a result of, the Plan, the Merger Agreement, or any related agreement; or (viii) with respect to each of the foregoing Entities in clauses (i) through (vii), such Entity and its current and former Affiliates, and such Entities' their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, shall have or incur any

liability whatsoever in connection with or as a result of any Makewhole Claim being Allowed, including pursuant to the EFIH Secureds Settlement Approval Order.

**FF.    Dissolution of Subsidiaries.**

129.    To the extent not already disposed of, wound down, or liquidated in accordance with applicable law, all EFH/EFIH Debtors, excluding:  (a) EFH Corp.; (b) EFIH; (c) LSGT Gas Company LLC; (d) EECI, Inc., (e) EEC Holdings, Inc.; (f) LSGT SACROC, Inc.; (g) EFH FS Holdings Co., (h) EFH Finance (No. 2) Holdings Co. and (i) Ebasco Services of Canada, Ltd., are deemed dissolved, effective on the Effective Date, without any further court or corporate action, including the filing of any documents with the Secretary of State for any state in which any such subsidiary is incorporated or any other jurisdiction. On the Effective Date, all of (i) EFH Corp.'s interests in (a) EFH FS Holdings Co. shall be deemed to be transferred, for no consideration, from EFH Corp. to EFH FS Holdings Co. and immediately cancelled, and (b) EFH Finance (No. 2) Holdings Co. shall be deemed to be transferred, for no consideration, from EFH Corp. to EFH Finance (No. 2) Holdings Co. and immediately cancelled, and EFH Corp. shall have no further ownership interest in, or obligations with respect to EFH FS Holdings Co., EFH Finance (No. 2) Holdings Co. or any of their respective assets, liabilities or subsidiaries, and (ii) EEC Holdings, Inc.'s interests in Ebasco Services of Canada shall be deemed to be transferred, for no consideration, from EEC Holdings, Inc. to Ebasco Services of Canada and immediately cancelled, and EEC Holdings, Inc. shall have no further ownership interest in, or obligations with respect to Ebasco Services of Canada or any of its assets, liabilities or subsidiaries.  Immediately following the cancellation of (i) EFH Corp's interests in EFH FS Holdings Co. and EFH Finance (No. 2) Holdings Co. and (ii) EEC Holdings, Inc.'s interests in Ebasco Services of Canada, any equity interests held by EFH FS Holdings Co., EFH Finance (No. 2) Holdings Co. and Ebasco Services of Canada shall be deemed abandoned pursuant to

64

section 554 of the Bankruptcy Code.  On the EFH Effective Date, equity interests in EFH Non-Debtors, including, for the avoidance of doubt, EFH Non-Debtor Humphreys & Glasgow Limited, but excluding EFH Non-Debtor EFH Vermont Insurance Company, shall be abandoned pursuant to section 554 of the Bankruptcy Code and the EFH/EFIH Debtors shall have no further ownership interest in, or obligations with respect to such EFH Non-Debtors or any of their respective assets, liabilities or subsidiaries.  For the avoidance of doubt, equity interests in EFH Non-Debtor EFH Vermont Insurance Company are not deemed to be abandoned and shall remain outstanding.

130.    For the avoidance of doubt, none of (i) the Plan Sponsor; (ii) Merger Sub; (iii) the EFH Debtors; (iv) the Reorganized EFH Debtors; (v) EFIH; (vi) Reorganized EFIH; (vii) any other entity acquired, directly or indirectly, by the Plan Sponsor pursuant to the terms of, or as a result of, this EFH Confirmation Order, the Plan, the Merger Agreement, or any related agreement; or (viii) with respect to each of the foregoing Entities in clauses (i) through (vii), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, shall have or incur any liability whatsoever in connection with or as a result of the dissolution, wind-down, disposition, or liquidation of any entity, or the cancellation and abandonment of the equity interests in any entity, in accordance with the terms

of this EFH Confirmation Order and the Plan, including, for the avoidance of doubt, the liquidation of EFCH and TCEH in accordance with Article IV.B.6 of the Plan.

**GG.    Claims Objection Deadline.**

131.    Except as otherwise set forth in the Plan or this EFH Confirmation Order, the deadline for filing an objection to a Claim shall be the later of (a) the date that is 180 days after the EFH Effective Date and (b) such other date as may be fixed by the Court, after notice and hearing, upon a motion Filed before the expiration of the deadline to object to Claims. Notwithstanding the foregoing or Article VII of the Plan, if no objection has been Filed with respect to a timely filed Class A3 Claim on or before the applicable Claims Objection Deadline, such Claim shall be deemed Allowed solely for purposes of Reinstating such Claim as provided in Article III.B.3 of the Plan (which provides that the legal, equitable, and contractual rights, if any, to which such Claim entitles the Holder of such Claim shall be left unaltered by the Plan). Such Claim shall otherwise be deemed disputed unless otherwise ordered by a court of competent jurisdiction or agreed in writing by and among the Holder of such Claim, on the one hand, and the applicable Reorganized Debtor and the Plan Sponsor, on the other hand, and the failure to File with the Court an objection with respect to such Claim by the Claim Objection Deadline shall not (a) affect the validity of such Claim, including the asserted amount thereof, or affect the liability, if any, of the Debtors, the Reorganized Debtors or any other Entity with respect to such Claim, (b) be or be deemed to be an admission of liability by any Entity with respect to such Claim, or (c) prejudice, impair, alter or otherwise affect the Debtors', Reorganized Debtors' or any other Entity's rights, including any defenses, in law or in equity, in respect of such Claims.  The existence of Disputed Class A3 Claims on the Claims Register shall not, standing alone, serve as a sufficient basis to delay closing of the Chapter 11 Cases.

RLF1 18931500v.1

**HH.    EFH Plan Administrator Board and Disbursing Agent.**

132.    On or before the EFH Effective Date, the EFH/EFIH Debtors shall create a trust (the "EFH Plan Administration Trust") pursuant to the EFH Plan Administration Trust Agreement, which shall govern the rights and duties of the EFH Plan Administration Board with respect to the EFH Plan Administration Trust consistent with the Plan.  The primary purpose of the EFH Plan Administration Trust shall be acting as Disbursing Agent under the Plan, administering the EFH/EFIH Cash Distribution Account consistent with the Plan, liquidating or otherwise resolving Claims that may be entitled to distributions from the EFH/EFIH Cash Distribution Account, and pursuing and resolving, in the EFH Plan Administration Board's discretion, Causes of Action the EFH Plan Administration Board is permitted to pursue and settle under the Plan.

133.    The EFH Plan Administration Board shall serve as the trustee of the EFH Plan Administration Trust and actions taken by the EFH Plan Administration Board pursuant to the Plan and the EFH Plan Administration Trust Agreement shall be on behalf of the EFH Plan Administration Trust.

**II.    Assumption of Oracle Agreements.**

134.    Notwithstanding anything to the contrary in the Plan, this EFH Confirmation Order, or the Transition Services Agreement entered into in connection with the TCEH Confirmed Plan, no shared use, license splitting, or other unauthorized use of any Oracle America, Inc. ("Oracle") license and services agreement will be allowed post-confirmation absent Oracle's express prior written consent.

**JJ.    EFH Non-Qualified Benefit Plans**

135.    The EFH Non-Qualified Benefit Plans shall be terminated on or before the EFH Effective Date, and any Allowed Claims arising from the termination of such EFH Non-

Qualified Benefit Plans shall be treated in accordance with Article III.B.8 of the Plan on the EFH

Effective Date.  The EFH Split-Dollar Plan shall be terminated on or before the EFH Effective

Date, and any amounts payable to the EFH Debtors on account of such termination shall be paid

to the EFH Debtors or Reorganized EFH, as applicable.

**KK.    Environmental Law.**

136.    Nothing in the Plan or the EFH Confirmation Order shall release, discharge, or

preclude the enforcement of, (or preclude, release, defeat, or limit the defense under non-

bankruptcy law of): (i) any liability under Environmental Law to a Governmental Unit that is not

a Claim; (ii) any Claim under Environmental Law of a Governmental Unit arising on or after the

EFH Effective Date; (iii) any liability under Environmental Law to a Governmental Unit on the

part of any Entity to the extent of such Entity's liability under non-bankruptcy law on account of

its status as owner or operator of such property after the EFH Effective Date; (iv) any liability to

a Governmental Unit on the part of any Entity other than the EFH/EFIH Debtors or the

Reorganized EFH/EFIH Debtors; or (v) any valid right of setoff or recoupment by any

Governmental Unit.  All parties' rights and defenses under Environmental Law with respect to

(i) through (v) above are fully preserved.  For the avoidance of doubt, the United States is not a

Releasing Party under the Plan.

137.    Nothing in the Plan or this EFH Confirmation Order shall enjoin or otherwise bar

any Governmental Unit from asserting or enforcing, outside this Court, any liability described in

the preceding paragraph.  Nothing in the Plan or this EFH Confirmation Order authorizes: (i) the

transfer or assignment of any governmental license, permit, registration, authorization, or

approval, or (ii) the discontinuation of any obligation thereunder, without compliance with all

applicable legal requirements under Environmental Law.  The Bankruptcy Court retains

jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities

asserted by any Governmental Unit are discharged or otherwise barred by this EFH Confirmation Order or the Plan, or the Bankruptcy Code.

138.    For the avoidance of doubt, all Claims under Environmental Law arising before the EFH Effective Date, including penalty claims for days of violation prior to the EFH Effective Date, shall be subject to Article VIII of the Plan and treated in accordance with the Plan in all respects and the Bankruptcy Court shall retain jurisdiction as provided in Article XI of the Plan in relation to the allowance or disallowance of any Claim under Environmental Law arising before the EFH Effective Date.

139.    Without limiting the Bankruptcy Court's jurisdiction as set forth above, nothing in the Plan or this EFH Confirmation Order shall divest or limit the jurisdiction of other tribunals over the Environmental Action, and upon the EFH Effective Date, the Environmental Action shall survive the Chapter 11 Cases and may be adjudicated in the court or tribunal in which such Environmental Action is currently pending; *provided*, *further*, *however*, any judgment for a Claim in the Environmental Action arising before the EFH Effective Date shall be treated in accordance with the TCEH Confirmed Plan in all respects; *provided*, *further*, *however*, that nothing in the Plan shall preclude, release, defeat, or limit any grounds for asserting or opposing an alleged defense or affirmative defense under non-bankruptcy law in the Environmental Action based on any change in ownership, and all such grounds for asserting or opposing such defenses and affirmative defenses under non-bankruptcy law are expressly preserved; *provided*, *further*, *however*, that nothing in the Plan or the EFH Confirmation Order shall prevent the Debtors or any other parties in interest from seeking to estimate Claims against the Debtors arising in connection with the Environmental Action.    With respect to the Environmental Action, Article VIII.H of the Plan does not alter any rights or defenses under non-bankruptcy law arising

as a result of any changes of ownership provided in the Plan or the EFH Confirmation Order. The Governmental Units reserve all rights as to whether there are any such rights or defenses.

**LL.    Certain IRS Matters.**

140.    Nothing in the Plan (or subsequently amended Plan) or this EFH Confirmation Order shall be deemed to waive the right of the IRS or the U.S. (a) to object to confirmation of a subsequently amended Plan, or an alternative chapter 11 plan, or (b) to seek prior to the EFH Effective Date of the Plan reconsideration of this EFH Confirmation Order and/or a stay of the EFH Effective Date of the Plan to the extent the IRS would be entitled to seek reconsideration or a stay based on a determination by the IRS that the PLR or Supplemental Ruling is not valid, is no longer applicable to the Restructuring Transactions, or other issues not addressed by the PLR or Supplemental Ruling would bring the tax-free nature of the Restructuring Transactions into doubt.  The rights of the Debtors and other parties in interest to oppose any such objection or such request to reconsider the EFH Confirmation Order or stay the EFH Effective Date are preserved; *provided* that such opposition may not be on the grounds of failure of the IRS to file an earlier objection, equitable mootness, laches, estoppel, or a similar theory.

141.    Nothing in the Plan (or subsequently amended Plan) or this EFH Confirmation Order shall affect the rights of the IRS or the U.S. to assess or collect (as permitted under applicable law), on or after the Confirmation Date, a tax for a taxable year (or period) ending on or after the Petition Date and before the EFH Effective Date of the Plan, against EFH, any member (or former member) of its consolidated group, Reorganized EFH and/or any successor entities; *provided,* that nothing about this paragraph shall expand or limit the rights or obligations of the IRS, the U.S., EFH, any member (or former member) of its consolidated group, Reorganized EFH and/or any successor entities under any non-plan provision of applicable law, including, but not limited to, with respect to Section 505 of the Bankruptcy Code (to the extent

70

applicable) and any other applicable limitations or requirements (if any) with respect to administrative tax claims.

## MM.   ERCOT.

142.    Nothing contained in this EFH Confirmation Order or in the Plan shall impair, modify, or otherwise affect the relief granted in the TCEH Confirmation Order with respect to the TCEH Debtors, the EFH Shared Services Debtors, the Reorganized TCEH Debtors, and the Reorganized EFH Shared Services Debtors with respect to the Electric Reliability Council of Texas, Inc. ("ERCOT").

## NN.   Insurance.

143.    Nothing in the Plan or this EFH Confirmation Order is intended to decide or resolve any issues related to insurance coverage of Claims.

## OO.   Successors and Assigns.

144.    Except as otherwise provided herein, or in the Plan, the rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

## PP.   D&O Insurance Policy.

145.    With respect to any D&O Insurance (as defined in the Merger Agreement and effective as of the Effective Time) that EFH has obtained in accordance with Section 6.8 of the Merger Agreement and for which EFH has fully paid the run-off premium on or prior to the Effective Time, any refunds by the applicable insurer in connection with such D&O Insurance that are paid to Reorganized EFH shall be refunded by Reorganized EFH to Vistra Energy as promptly as practicable to such account to be designated by Vistra Energy.

**QQ.    EFIH First Lien Post-Effective Date Fee and Indemnification Reserve and EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve.**

143.    Notwithstanding anything to the contrary contained in the Plan, the EFIH Secureds Settlement Approval Order, or the EFIH Settlement Agreement, on the EFH Effective Date, the EFH Plan Administrator Board shall fund the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve by paying the amount of $100,000.00 to the EFIH First Lien Notes Trustee, as provided in the EFIH Secureds Settlement Approval Order (as the same may be modified hereby).  The EFIH First Lien Post-Effective Date Fee and Indemnification Reserve shall be held, used, and applied by the EFIH First Lien Notes Trustee or the First Lien Escrow Agent (as defined below), as applicable, as provided by the EFIH Secureds Settlement Approval Order, the EFIH Settlement Agreement, and that certain Escrow Agreement by and between EFIH, the EFIH First Lien Notes Trustee, and Delaware Trust Company, as escrow agent (the "First Lien Escrow Agent"), dated as of the EFH Effective Date.   In the event of any inconsistency between the EFIH First Lien Escrow Agreement, on the one hand, and the EFIH Secureds Settlement Approval Order and the EFIH Settlement Agreement, on the other, with respect to the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve, the EFIH First Lien Escrow Agreement shall control.  The EFIH First Lien Notes Trustee and First Lien Escrow Agent, as applicable, shall have no obligation to invest any funds which are held and not applied. The Debtors are hereby authorized to enter the EFIH First Lien Escrow Agreement.  In addition to funding the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve as provided in this Paragraph of this Order, the EFH Plan Administrator Board shall, on or as soon as reasonably practicable after the EFH Effective Date, pay in full in Cash all EFIH First Lien Pre-Effective Date Fees (as defined in the EFIH Settlement Agreement) and all other Allowed EFIH First Lien Claims accruing before the EFH Effective Date not previously paid.

72

144.     On the EFH Effective Date, and except as otherwise agreed by the EFIH Second Lien Notes Trustee, the EFH/EFIH Debtors or the EFH Plan Administrator Board (as applicable), and the Supporting Creditors, and approved by the Bankruptcy Court, the EFH Plan Administration Board shall fund the EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve, by paying the amount of $2,000,000.00 to the EFIH Second Lien Notes Trustee, as provided in the EFIH Secureds Settlement Approval Order.  The EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve shall be held, used, and applied by the EFIH Second Lien Notes Trustee, as provided by the EFIH Secureds Settlement Approval Order. The EFIH Second Lien Notes Trustee shall have no obligation to invest any funds which are held and not applied, nor any obligation to turn over any interest or other earnings in connection with the deposit or investment of such funds.

**RR.    The NEE Plan Reserve**.

146.     The EFH Plan Administrator Board shall fund a segregated escrow account maintained at Citibank, N.A., (the "NEE Plan Reserve"), with the requisite form of escrow agreement to be negotiated in good faith between NEE, the EFH/EFIH Debtors, and the Supporting Creditors, in the amount of $275,000,000.00 (the "NEE Plan Reserve Amount") within ten business days following the later of: (a) the EFH Effective Date, and (b) entry of an order by the Bankruptcy Court allocating the funding of the NEE Plan Reserve Amount as between EFH Corp. and EFIH (the "NEE Allocation Order"); *provided*, *however*, that under no circumstances shall EFH Corp.'s ultimate share of the NEE Plan Reserve Amount include the Cash available at EFH Corp. as of the EFH Effective Date necessary to satisfy all Allowed General Administrative Claims against the EFH Debtors and Allowed Priority Claims against the EFH Debtors, in full, in Cash; *provided*, *further*, that notwithstanding the foregoing, in no event

73

shall the EFH Plan Administrator Board fund the NEE Plan Reserve in an amount less than $275,000,000.00.

147.    The EFH Plan Administrator Board shall not make any Plan distributions to Holders of Allowed Claims in Classes A4-A11, Class B5, or Class B6 until after (a) entry of the NEE Allocation Order; (b) entry of an order allocating all other material Claims as between EFH and EFIH (such other order or orders, to the extent not set forth in the NEE Allocation Order, the "Material Allocation Orders"); and (c) the expiration or waiver of any applicable appeals period with respect to the NEE Allocation Order and the Material Allocation Orders; *provided*, *however*, that upon entry of the NEE Allocation Order and each of the Material Allocation Orders, the EFH Plan Administrator Board, in consultation with the Supporting Creditors and in accordance with the EFH Plan Administrator Trust Agreement, the Plan, and this EFH Confirmation Order, shall make good faith efforts to make a supplementary Plan distribution in accordance with such NEE Allocation Order and each of the Material Allocation Orders; *provided*, *further*, *however* that any such supplemental distribution shall not be from the NEE Plan Reserve.

148.    The EFH/EFIH Debtors, or, following the occurrence of the EFH Effective Date, the EFH Plan Administrator Board shall file a Motion seeking entry of the NEE Allocation Order as soon as practicable following entry of the Confirmation Order and shall make commercially reasonable efforts to seek entry of the NEE Allocation Order within [40] days of such filing (subject to the availability of the Bankruptcy Court to hear such Motion).  For the avoidance of doubt, the EFH Effective Date may occur prior to the entry of the NEE Allocation Order or any of the Material Allocation Orders, and that such NEE Allocation Order or Material Allocation

Order have not yet been entered shall not be a valid basis to delay the occurrence of the EFH

Effective Date.

149.    The NEE Plan Reserve Amount may be modified pursuant to separate Bankruptcy

Court order; *provided*, *however*, that any such modification shall, at all times, be consistent with

Article VI. of the Plan.   In the absence of any such separate Bankruptcy Court order, the NEE

Plan Reserve Amount shall be (a) released in full to the EFH/EFIH Cash Distribution Account

upon entry of a Final Order against NEE in connection with the NEE Proceedings and (b)

released in the amount of $275 million to an account designated by NEE upon entry of a Final

Order in favor of NEE in connection with the NEE Proceedings.[5]

150.    Notwithstanding anything to the contrary in this EFH Confirmation Order or the

Plan, none of the Plan Sponsor, EFH Merger Sub, or the Reorganized EFH/EFIH Debtors shall

have or incur any liability or obligation in connection with the NEE Plan Reserve or the

Termination Fee (as defined in [D.I. 11998]).

151.    Notwithstanding anything to the contrary in the Plan, the Supporting Creditors

shall have the right any time after entry of the Confirmation Order to (i) in accordance with the

Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the District of

Delaware, and any other applicable rules or procedures, to file, pursue, prosecute, and litigate to

judgment objections to any Claims, including Administrative Claims, filed or asserted against

any of the Debtors or the estates that, if Allowed, would be entitled to distribution from the

EFH/EFIH Cash Distribution Account or the NEE Plan Reserve, (ii) appeal, prosecute any

appeal, and/or participate in any appeal, including any currently pending appeal, with respect to

---

[5]    NEE Proceedings shall be defined as: (a) the appellate proceedings in connection with the reconsideration order entered by the Bankruptcy Court on October 18, 2017 [D.I. 12075] (the "Reconsideration Order"); (b) the *Adversary Complaint* [D.I. 11668]; and (c) the briefing schedule set by the Third Circuit regarding a direct, expedited appeal of the Reconsideration Order.

any order allowing, disallowing, or estimating any Claim, including any Administrative Claim, (iii) receive notice from the EFH Plan Administrator Board, as applicable, of any proposed settlement or compromise of any Disputed Claim entitled to distribution from the EFH/EFIH Cash Distribution Account or the NEE Plan Reserve, (iv) seek relief in the Bankruptcy Court or any other court of competent jurisdiction in accordance with the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the District of Delaware, and any other applicable rules or procedures to reduce or eliminate, or seek other relief, with respect to any reserves established using funds in the EFH/EFIH Cash Distribution Account and established and/or maintained by the EFH Plan Administrator Board (including in its capacity as Trustee) on account of any Disputed Claims that have been disallowed by the Bankruptcy Court, including but not limited to any NEE Plan Reserve and (v) request that the Bankruptcy Court estimate any Disputed Claim, including any Disputed Administrative Claim in each case that, if Allowed, would be entitled to distribution from the EFH/EFIH Cash Distribution Account or the NEE Plan Reserve,  All parties' rights with respect to the foregoing are fully preserved.

**SS.    Effect of Non-Occurrence of EFH Effective Date.**

152.    If a condition to the occurrence of the EFH Effective Date does not occur, and is not otherwise waived, and it is determined that the EFH Effective Date shall not and cannot occur on the terms contemplated by the Plan and this EFH Confirmation Order, the provisions set forth in this EFH Confirmation Order shall not be binding on any party; *provided*, *however*, that the non-occurrence of the EFH Effective Date shall not affect the relief granted in the EFIH Secureds Settlement Approval Order.

**TT.    Final Order and Waiver of Stay.**

153.    The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order is hereby waived.  This EFH

Confirmation Order is a Final Order and shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d) or 7062.  The Debtors, with the consent of the Plan Sponsor, are authorized to consummate the Plan on any business day after entry of this EFH Confirmation Order, subject to satisfaction or waiver (by the required parties) of the conditions set forth in Article IX.B of the Plan.


Dated: _____, 2018
      Wilmington, Delaware                           _____

                                              The Honorable Christopher S. Sontchi
                                              United States Bankruptcy Judge

**<u>Exhibit A</u>**

**Plan**

**Exhibit B**

**Notice of EFH Confirmation**