**Exhibit D**

**EFH Plan Administrator Trust Agreement**

**EFH PLAN ADMINISTRATION TRUST AGREEMENT**

This EFH PLAN ADMINISTRATION TRUST AGREEMENT (as hereinafter amended or modified from time to time in accordance with the terms hereof, this "<u>Agreement</u>"), dated March 9, 2018 is by and between the EFH/EFIH Debtors and the EFH Plan Administrator Board, solely in its capacity as trustee (the "<u>Trustee</u>") of the EFH Plan Administration Trust (the "<u>Trust</u>"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors pursuant to Chapter 11 of the Bankruptcy Code*, dated February 15, 2018 [Docket No. 12653] (as may be further amended, supplemented, or modified from time to time, the "<u>Plan</u>").

## RECITALS

A. On April 29, 2014, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

B. On August 21, 2017, EFH Corp., EFIH, Parent and EFH Merger Sub entered into the Merger Agreement. The Merger Agreement provides that on the EFH Effective Date, the Accessible Account Deposit (as defined in the Merger Agreement) will be sent by wire transfer of immediately available funds to the EFH/EFIH Cash Distribution Account.

C. On September 11, 2017, the EFH/EFIH Debtors filed the solicitation version of the Plan, which provides that on the EFH Effective Date, EFH Corp. Cash and EFIH Cash on hand shall be transferred to the EFH/EFIH Cash Distribution Account.

D. On February 5, 2018, EFH Corp., EFIH, Parent, EFH Merger Sub, EFIH Finance and the EFH/EFIH Debtors listed on the signature pages thereto, entered into a Settlement Agreement, which was approved by the Bankruptcy Court on February 14, 2018 (the "<u>Settlement Agreement</u>"). The Settlement Agreement provides that on the EFH Effective Date, to the extent not contributed to the EFH/EFIH Cash Distribution Account as part of the Accessible Account Deposit, the Settlement Payment (as defined in the Settlement Agreement) will be sent to the EFH/EFIH Cash Distribution Account on the terms set forth in the Settlement Agreement.

E. The (a) Settlement Payment (to the extent not contributed to the EFH/EFIH Cash Distribution Account as part of the Accessible Account Deposit), (b) the Accessible Account Deposit, (c) in accordance with Article II.A.2(e) of the Plan, (1) remaining funds in the EFH Professional Fee Escrow Account (on account of the EFH Unsecured Creditor Recovery Pool) and (2) remaining funds in the EFIH Professional Fee Escrow Account (on account of the EFIH Unsecured Creditor Recovery Pool), and (d) the Causes of Action the EFH Plan Administrator Board is permitted to pursue and settle under the Plan and Confirmation Order, shall, collectively, constitute the corpus of the Trust (collectively with all other property held from time to time by the Trust under this Agreement, and any earnings, including interest, on any of the foregoing (the "<u>Trust Assets</u>")).

F. On February 27, 2018, the Bankruptcy Court entered an order confirming the Plan [Docket No. 12763] (such order, the "<u>Confirmation Order</u>").

G. In accordance with the Confirmation Order, the Trust is to be administered by the Trustee solely for the benefit of (i) the EFH Notes, EFIH Unsecured Notes, EFIH First Lien Notes, EFIH Second Lien Notes, and any other notes issued by any EFH Debtor or EFIH Debtor that are classified under the Plan and evidenced by the holdings of DTC and the DTC participants that are the record holders

thereof (such notes, collectively, the "Notes" and such Holders thereof, collectively, the "Noteholder Beneficiaries") and (ii) Holders of Allowed Claims asserted against the EFH Debtors and EFIH Debtors that are not evidenced by Notes, including Allowed Claims in Classes A7, A8, A9, and A10 under the Plan (such Holders, the "Non-Noteholder Beneficiaries" and, together with the Noteholder Beneficiaries, collectively, the "Beneficiaries" and, each individually, a "Beneficiary") as contemplated by the Plan.

H. The Trust is intended to be treated as a disputed ownership fund within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for U.S. federal income tax purposes (as well as for any comparable purposes of state, local, or non-U.S. law) (a "DOF") and, as such, any income recognized by the Trust shall be subject to taxation within the Trust.

I. The Trustee shall have all powers necessary to implement the provisions of this Agreement and administer the Trust, including the power to: (i) preserve and maintain the Trust Assets; (ii) object to and reconcile Claims against the EFH/EFIH Debtors; (iii) settle or compromise any Disputed Claims or Interests against the EFH/EFIH Debtors; (iv) distribute to or utilize the Trust Assets for the benefit of the Beneficiaries; (v) comply with any tax reporting obligations of the Trust and utilize the Trust Assets to satisfy any tax liabilities of the trust, consistent with the Trust's status as a DOF; and (vi) otherwise perform the functions and take the actions provided for or permitted in the Plan, the Confirmation Order, this Agreement, or in any other agreement executed pursuant to the Plan.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants contained herein, the EFH/EFIH Debtors and the Trustee agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

1.1    Creation of Trust.  The EFH/EFIH Debtors and the Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of chapter 11 of the Bankruptcy Code, hereby constitute and create the Trust, which is to bear the name "EFH Plan Administration Trust". In connection with the exercise of the Trustee's power under this Agreement, the Trustee may use this name or such variation thereof as the Trustee sees fit.

1.2    Purpose of Trust.  The purpose of the Trust is to administer the Trust Assets consistent with the Plan and Confirmation Order, on behalf and for the benefit, of the Beneficiaries, and to serve as a mechanism for distributing the Trust Assets to, or utilizing the Trust Assets for the benefit of, the Beneficiaries, in each case subject to the further covenants, conditions, and terms set forth herein. The Trust shall not hold itself out as an investment company. The Trust Assets are to be distributed by the Trustee to the Beneficiaries in accordance with this Agreement, the Plan, and the Confirmation Order.

1.3    Transfer of Trust Assets.  In satisfaction (in addition to the other distributions provided for under the Plan) of all Allowed Claims that pursuant to the Plan are to be satisfied from the EFH/EFIH Cash Distribution Account and that are asserted against the EFH Debtors and/or EFIH Debtors, the EFH/EFIH Debtors hereby transfer as of the EFH Effective Date, for the sole benefit of the Beneficiaries, pursuant to sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code and in accordance with the Plan and the Confirmation Order, the Trust Assets to the Trust, free and clear of any and all liens, claims, causes of action, encumbrances, and interests (legal, beneficial, or otherwise) of all other entities to the maximum extent contemplated by and permissible under section 1141(c) of the Bankruptcy Code; provided, however, that for the avoidance of doubt, the Trust Assets shall be available to satisfy any tax obligations of the Trust consistent with the Trust's status as a DOF.

1.4     Resolution of Claims.  In an expeditious but orderly manner and subject to the other provisions of the Plan, the Confirmation Order, and this Agreement, the Trustee shall cause the Trust to (a) file, withdraw, or litigate to judgment objections to Claims against the EFH/EFIH Debtors; (b) settle or compromise any Disputed Claims or Interests against the EFH/EFIH Debtors without any further notice to or action, order, or approval by the Bankruptcy Court; (c) direct the administration and adjustment of the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court, except as otherwise provided in the Confirmation Order; and (d) distribute the Trust Assets.  The Trustee may incur any reasonable and necessary expenses in connection with the performance of the foregoing actions and take any actions reasonably incidental thereto.

1.5     Appointment and Acceptance of Trustee.  The Trustee shall be deemed to be appointed a "representative of the estates" pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Trustee accepts the Trust created by this Agreement and the grant, assignment, transfer, conveyance, and delivery to the Trustee, on behalf and for the benefit of the Beneficiaries, by the EFH/EFIH Debtors of all of their respective right, title, and interest in the Trust Assets, upon and subject to the terms and conditions set forth herein, in the Plan, and in the Confirmation Order.

1.6     Limited Reversion to Reorganized Debtors.  After the Trustee has made reasonable efforts to first redistribute such funds on a Pro Rata basis to Holders of Allowed Claims pursuant to the Plan and the Confirmation Order, to the extent there continue to be any unclaimed funds, such funds shall revert to the Reorganized Debtors.  No other Trust Assets shall revert to the Reorganized Debtors.

1.7     Incidents of Ownership.  The Beneficiaries shall be the sole beneficiaries of the Trust and the Trust Assets, and the Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein, in the Plan, and in the Confirmation Order, including those powers set forth in Section 6.1 hereof.

## ARTICLE II
## BENEFICIARIES

2.1     Conflicting Claims.  If any conflicting claims or demands are made or asserted with respect to an interest in Trust Assets held by a Beneficiary as evidenced by an Allowed Claim asserted against an EFH Debtor or EFIH Debtor and subject to the treatment set forth in the Plan (each such interest, a "Beneficial Interest"), the Trustee shall be entitled, at its sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, the Trustee may elect to make no payment or distribution with respect to the Beneficial Interest represented by the claims or demands involved, or any part thereof, and the Trustee shall refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands.  In so doing, the Trustee shall not be or become liable to any party for its refusal to comply with any of such conflicting claims or demands.  The Trustee shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or (b) all differences have been resolved by a written agreement among all of such parties and the Trustee, which agreement shall include a complete release of the Trust and the Trustee (the occurrence of either (a) or (b) being referred to as a "Dispute Resolution" in this Section 2.1).  Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Trustee may, to the extent deemed reasonable in the Trustee's sole discretion, establish segregated accounts with a United States financial institution for any payments or distributions from the Trust to be made with respect to the Beneficial Interest at issue. Promptly after a Dispute Resolution is reached, the Trustee shall transfer the payments and distributions, if any, held in the segregated account, together with any interest and income generated thereon, in accordance with the terms of such Dispute Resolution.

2.2     Rights of Beneficiaries.  Each Beneficiary shall be entitled to participate in the rights and benefits due to a Beneficiary hereunder according to the terms of its Beneficial Interest.  Each Beneficiary shall take and hold the same, subject to all the terms and conditions of this Agreement, the Plan, and the Confirmation Order. The interest of a Beneficiary is hereby declared and shall be in all respects personal property.  Except as expressly provided hereunder, a Beneficiary shall have no title to, right to, possession of, management of, or control of the Trust or the Trust Assets.

2.3     Interest Beneficial Only.  The ownership of a Beneficial Interest in the Trust shall not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein and in the Plan and Confirmation Order.

2.4     Evidence of Beneficial Interest.  Ownership of a Beneficial Interest in the Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee (or any agent appointed by the Trustee for purposes of maintaining a record of the Beneficiaries and their respective Beneficial Interests in the Trust).  The Trustee shall, upon written request of a holder of a Beneficial Interest, provide reasonably adequate documentary evidence of such holder's Beneficial Interest, as indicated in the books and records of the Trust.  The expense of providing such documentation shall be borne by the requesting Beneficiary.

2.5     Transfers of Beneficial Interests.  The Beneficial Interests in the Trust have not been registered pursuant to the Securities Act of 1933, as amended, or any state securities law. If the Beneficial Interests constitute "securities," the parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code shall apply to the Beneficial Interests.  Beneficial Interests held by Non-Noteholder Beneficiaries shall not be capable of being, and shall not be, transferred, assigned, pledged, or hypothecated in whole or in part.  Any transfer, assignment, pledge, or hypothecation of a Beneficial Interest held by a Non-Noteholder Beneficiary or any part thereof in violation of this Section 2.5 shall be void *ab initio*.  Beneficial Interests held by Noteholder Beneficiaries may be transferred, assigned, pledged, or hypothecated in whole or in part without notice to the Trustee or any other party.  For the avoidance of doubt, to the fullest extent permitted by law and subject to the practices and procedures of the DTC, as applicable, beneficial owners of interests in any of the Notes (collectively, the "Noteholder Claims") may transfer, assign, pledge, hypothecate, in whole or in part such Noteholder Claims without notice to the Trustee or any other party.

2.6     Limited Liability of Beneficial Interest Holders.  No provision of this Agreement and no mere enumeration herein of the rights or privileges of any Beneficial Interest holder, shall give rise to any liability of such Beneficial Interest holder solely in its capacity as such, whether such liability is asserted by Parent, EFH Merger Sub, the EFH/EFIH Debtors, creditors or employees of the EFH/EFIH Debtors, or by any other individual, corporation (including not-for-profit), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, governmental or regulatory entity or other entity of any kind or nature (each a "Person").  Beneficial Interest holders are deemed to receive the Trust Assets in accordance with the provisions of this Agreement, the Plan, and the Confirmation Order in exchange for their Allowed Claims, without further obligation or liability of any kind, but subject to the provisions of this Agreement, the Plan, and the Confirmation Order.  No Beneficiary shall be subject to any personal liability whatsoever, in tort, contract, or otherwise, to any Person in connection with the Trust Assets or the affairs of the Trustee, except for actions, or failures to act, that are determined by Final Order of the Bankruptcy Court to have arisen out of the Beneficiary's own gross negligence, fraud, or willful misconduct.

## ARTICLE III
## DURATION AND TERMINATION OF TRUST

3.1     Duration.  The Trust shall become effective upon the EFH Effective Date and shall remain and continue in full force and effect until terminated as provided herein. The Trust shall terminate upon the occurrence of the complete administration and distribution of the Trust Assets in accordance with the Plan, the Confirmation Order, and this Agreement and the full performance of all other duties and functions of the Trustee set forth in the Plan, the Confirmation Order, and this Agreement.  On the date of termination, any remaining Trust Assets shall be distributed in accordance with Section 1.6 hereof. Notwithstanding anything to the contrary in this Agreement, in no event shall the Trustee unduly prolong the duration of the Trust, and the Trustee shall, in the exercise of its reasonable business judgment and in the interests of the Beneficiaries, at all times endeavor to (a) object to and reconcile Disputed Claims or Interests against the EFH/EFIH Debtors; (b) settle or compromise any Disputed Claims or Interests against the EFH/EFIH Debtors; (c) authorize and make disbursements from the EFH/EFIH Cash Distribution Account as appropriate, from time to time in accordance with the Plan and Confirmation Order, (d) comply with all applicable tax reporting obligations of the Trust and satisfy all tax liabilities of the Trust consistent with the Trust's status as a DOF; and (e) otherwise terminate the Trust as soon as practicable in accordance with this Agreement.

3.2     Continuance of Trust for Winding Up.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its duties have been fully performed.  Upon distribution of all the Trust Assets, the Trustee shall retain the books, records, and files that shall have been delivered to or created by the Trustee.  At the Trustee's sole discretion, all of such records and documents may be destroyed at any time following the date that is two years after the final distribution of the Trust Assets (unless such records and documents are necessary to fulfill the Trustee's obligations pursuant to Sections 4.6(a) and 6.1 hereof). Except as otherwise specifically provided herein, upon the final distribution of the Trust Assets, (a) the Trustee shall be deemed discharged and have no further duties or obligations hereunder, except as may be imposed on the Trustee by virtue of Section 6.1 hereof; and (b) the Trust will be deemed to have been dissolved, and any remaining Trust Assets shall be distributed in accordance with Section 1.6 hereof.  Nothing in this Agreement shall impair the ability of the EFH Plan Administrator Board and the Reorganized Debtors, as applicable, from seeking to close one or more of the EFH/EFIH Debtors' chapter 11 cases.

## ARTICLE IV
## ADMINISTRATION OF TRUST

4.1     Payment of Claims, Expenses, and Liabilities.  The Trustee shall expend Trust Assets: (a) to pay reasonable administrative expenses of the Trust that are incurred (including any taxes imposed on the Trust or reasonable professional, consultant, and employee fees and expenses in connection with the administration of the Trust Assets and preservation of books and records as provided in Section 3.2 hereof) subject to and in accordance with the terms of this Agreement; (b) to satisfy other obligations or other liabilities incurred or assumed by the Trust (or to which the Trust Assets is otherwise subject) in accordance with the Plan, the Confirmation Order, or this Agreement (it being understood that the Trust has not assumed any obligations or liabilities of the EFH/EFIH Debtors), including (i) the costs of objecting to and reconciling Disputed Claims or Interests and settling or compromising any Disputed Claims or Interests against the EFH/EFIH Debtors, and (ii) any other fees and costs incurred in connection with the protection, preservation, liquidation, and distribution of the Trust Assets; and (c) to satisfy any other obligations of the Trust expressly set forth in the Confirmation Order or the Plan.

5

4.2     Distributions.

(a)     Generally.  All distributions from the Trust to the holders of Beneficial Interests shall be made to the Beneficiaries in accordance with such Beneficiaries' respective pro rata share of the total Beneficial Interests in accordance with the Plan and shall be entitled to distributions solely to the extent set forth in the Plan and the Confirmation Order.

(b)     Timing of Distributions.  The Trustee shall not make any distributions to the Beneficiaries except as permitted by the Plan, Confirmation Order, and any other subsequent order of the Bankruptcy Court.  Prior to any distribution being made, the Trustee shall establish a record date for such distribution of not less than 10 days or more than 60 days prior to the proposed date of distribution (the "Record Date").

(c)     Trust Assets Available for Distribution.  Notwithstanding anything in this Agreement to the contrary, the Trustee shall cause the Trust at all times to retain sufficient funds (the "Expense Reserve") as the Trustee shall determine are reasonably necessary for the Trust to: (i) meet reasonably anticipated contingent liabilities and maintain the value of the Trust Assets; (ii) make the payments and satisfy the obligations and liabilities described in Section 4.1; (iii) fund any other amounts as are required under the Plan and Confirmation Order; and (4) fund the agreed fees and expenses of the Trustee, the professionals, consultants, and employees retained by the Trustee, including the Disinterested Agents (as defined herein) and their representatives with respect to Conflicts Matters (as defined herein).

(d)     any representatives the Trustee retains to address matters that, prior to the EFH Effective Date, would have been addressed by those certain disinterested directors of the EFH/EFIH Debtors and their advisors (the "Trust Professionals"), and the Trust.

(e)     Priority of Distribution of Trust Assets.  Any Trust Assets available for distribution shall be applied, (i) first, to the payment of unpaid fees, costs, expenses, and liabilities of the Trustee, the Trust Professionals, and the Trust, and (ii) second, to distributions to Beneficiaries pursuant to Section 4.2 of this Agreement.

(f)     De Minimis Distributions.  No distribution of Cash shall be required to be made hereunder to any holder of a Beneficial Interest unless such holder is entitled to receive, in any distribution from the Trust, at least $50.00. Subject to Section 4.3 hereof, any Cash not distributed pursuant to this Section 4.2(f) shall be the property of the Trust free of any restrictions thereon other than as set forth in this Agreement.

(g)     Location for Distributions; Notice of Change of Address.  Distributions shall be made by the Trustee or the Disbursing Agent at the direction of the Trustee to Beneficiaries or the applicable Indenture Trustee, as appropriate, as of the Record Date at the address listed in the EFH/EFIH Debtors' records if a proof of claim or interest has not been filed, at the address set forth in a filed proof of claim or interest, or such other address as may be provided to the Trustee in writing by such Beneficiary. Each Beneficiary shall be responsible for providing the Trustee with timely written notice of any change in address. The Trustee is not obligated to make any distributions to any Beneficiary for whom the Disbursing Agent and/or Trustee does not have a valid address. The Trustee has no obligation to determine the correct address of any Beneficiary.

(h)     Compelling Distributions.  Any Holder of a Claim or Interest seeking to compel the Trustee to make distributions from the EFH/EFIH Cash Distribution Account shall seek relief from the Bankruptcy Court in accordance with the Federal Rules of Bankruptcy Procedure, the Local

6

Bankruptcy Rules for the District of Delaware, any other applicable rules or procedures, and in accordance with Article VI.B. of the Plan.

(i) <u>Accounting</u>. The Trustee or its professionals on behalf of the Trustee shall keep an accounting of distributions made from, and funds contributed to, the EFH/EFIH Cash Distribution Account that sets forth whether such distributions or contributions, as applicable, were made for the benefit of the EFH Debtors, or their creditors, on the one hand, or the EFIH Debtors, or their creditors, on the other hand. Such accounting will be shared with the professionals for the Holders of Claims and Interests against the EFH Debtors and EFIH Debtors, including the professionals for the Supporting Creditors, the professionals for the EFIH Unsecured Notes Trustee, and the professionals for the EFH Notes Trustee, on a professionals' eyes only basis (unless otherwise ordered by the Bankruptcy Court).

4.3 <u>Undeliverable Property</u>.

(a) If any distribution of Trust Assets to a Beneficiary is returned to the Trustee as undeliverable (or if the Disbursing Agent and the Trustee are unable to obtain a valid address for the Beneficiary), no further distribution to such Beneficiary shall be made unless and until the Trustee has determined the then current address of such Beneficiary, at which time such distribution shall be made to such Beneficiary without interest. For purposes of this Agreement, undeliverable distributions shall include checks sent to a Beneficiary, respecting distributions to such Beneficiary, which checks have not been cashed within three months following the date of issuance of such checks. Undeliverable distributions shall remain in the possession of the Trustee until the next distribution date that the relevant distribution becomes deliverable (in which event it shall be distributed to such Beneficiary), subject to <u>Section 4.3(b)</u> hereof.

(b) Any Beneficiary that does not assert a claim for an undeliverable distribution of Trust Assets held by the Trust prior to the date that is six months after the date of the distribution shall no longer have any claim to or interest in the funds represented by such undeliverable distribution. After such date, all such unclaimed Trust Assets or interests in Trust Assets shall revert to or remain (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) in the Trust automatically and without need for a further order by the Bankruptcy Court, as applicable, and shall be redistributed to the remaining holders of Beneficial Interests in accordance with <u>Section 1.6</u> of this Agreement. The Claim of any Beneficiary to such Trust Assets or interest in property shall be released, settled, compromised, and forever barred.

4.4 <u>Exchange Act</u>. The Trustee shall use all commercially reasonable efforts to manage the Trust so as to prevent the Trust from having to be registered pursuant to the Securities Exchange Act of 1934, as amended. The Trustee and holders of Beneficial Interests do not intend for the EFH Plan Administration Trust to become a reporting company under the Securities Exchange Act of 1934, as amended. In furtherance of that, the Supporting Creditors agree that, pursuant to paragraph 151 of the Confirmation Order, the EFH Plan Administrator Board may make a partial Plan distribution to Holders of Allowed Claims in Class A8 reasonably in advance of any time at which, absent such partial Plan distribution, the EFH Plan Administration Trust would become a reporting company under the Securities Exchange Act of 1934, as amended.

4.5 <u>Fiscal Year</u>. Except for the first and last years of the Trust, the fiscal year of the Trust shall be the calendar year. For the first and last years of the Trust, the fiscal year of the Trust shall be such portion of the calendar year that the Trust is in existence.

4.6 <u>Books and Records</u>.

(a) The Trustee shall retain and preserve the EFH/EFIH Debtors' books, records, and files that have been delivered to, accessed, or created by the Trustee.

(b) The Trustee shall maintain, in respect of the Trust and the holders of Beneficial Interests, books and records relating to the assets and the income of the Trust and the payment of expenses of the Trust and the Trustee, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof in accordance with the provisions of this Agreement and the applicable provisions of law.

4.7 Cash Payments. All distributions required to be made by the Trustee to the holders of Beneficial Interests shall be made in U.S. dollars by checks drawn on a domestic bank selected by the Trustee or, at the option of the Trustee, by wire transfer from a domestic bank selected by the Trustee; provided, however, that payments to foreign holders of Beneficial Interests may be made, at the option of the Trustee, in such currency and by such means as are necessary or customary in a particular foreign jurisdiction. All Trust Assets that are in cash shall be maintained in a U.S. financial institution.

4.8 Insurance. The Trust shall be entitled to use Trust Assets to maintain customary insurance coverage for the protection of the Trustee and any such other Persons serving as administrators and overseers of the Trust on and after the EFH Effective Date as the Trustee determines to be reasonably appropriate.

4.9 Disputed Claims or Interests. The Trustee shall have the right to cause the Trust to object, in accordance with the Plan, the Confirmation Order, and applicable law to any Disputed Claim or Interest if and to the extent the Trustee believes that such Claim is not allowable; provided, however, that in making decisions as to the objection and reconciliation of Disputed Claims or Interests, the Trustee shall consider the cost of such objection and reconciliation and the likely distribution in respect of such Disputed Claim or Interest. Notwithstanding anything to the contrary contained in this Agreement, no payments or distributions will be made from the Trust on account of a Disputed Claim or Interest until such Disputed Claim or Interest becomes an Allowed Claim asserted against the EFH Debtors and/or EFIH Debtors. Except as set forth in the Plan or Confirmation Order, the Trustee may withhold any Distribution pending determination of whether to object to a Claim.

## ARTICLE V
## TAX MATTERS

5.1 Tax Treatment. The EFH/EFIH Debtors, the Trustee, and the holders of Beneficial Interests will treat the Trust as a DOF for all applicable purposes. Accordingly, the Trust shall be subject to entity-level taxation to the extent of any taxable income or gain of the Trust, and items of income, gain, loss, and deduction shall not flow from the Trust to the holders of Beneficial Interests.

5.2 Tax Reporting. The "taxable year" of the Trust shall be the "calendar year" as those terms are defined in Section 441 of the Internal Revenue Code. The Trustee shall file returns for the Trust consistent with the Trust's status as a DOF.

5.3 Tax Withholdings. The Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Internal Revenue Code or any provision of any foreign, state, or local tax law with respect to any payment or distribution to the Beneficiaries. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such Beneficiaries for all purposes of this Agreement. The Trustee shall be authorized to collect such tax information from the Beneficiaries (including social security numbers or other tax identification numbers) as are necessary to effectuate the Plan, the Confirmation Order, and this Agreement. The Trustee may

refuse to make a distribution to any Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; provided, however, that upon the Beneficiary's delivery of such information, the Trustee shall make such distribution to which the Beneficiary is entitled.

## ARTICLE VI
## POWERS OF AND LIMITATIONS ON TRUSTEE

6.1 Powers of the Trustee. The Trustee shall have all of the rights, powers, and privileges expressly set forth in the Plan, the Confirmation Order, this Agreement, and as otherwise provided by applicable law. Subject to the other provisions herein, the Trustee shall have the power to undertake the following actions and any powers reasonably incidental thereto which the Trustee in its reasonable discretion deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by this Agreement, the Plan, or the Confirmation Order, and, except as otherwise provided in the Confirmation Order, without any further notice to or action, order, or approval by the Bankruptcy Court:

(a) file, withdraw, or litigate to judgment objections to Disputed Claims or Interests;

(b) settle or compromise any Disputed Claims or Interests, and administer and adjust the Claims Register to reflect any such settlements or compromises;

(c) execute any documents and take any other actions necessary or incidental to the exercise of the Trustee's powers granted herein;

(d) in accordance with this Agreement, the Confirmation Order, and the Plan, hold legal title to any and all rights of the Beneficiaries in, to, or arising from the Trust Assets;

(e) protect and enforce the rights to the Trust Assets vested in the Trustee by this Agreement by any method deemed reasonably appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(f) make distributions of the Trust Assets to the appropriate Beneficiaries in accordance with this Agreement, the Plan, and the Confirmation Order and withhold from the amount distributable to any Beneficiary the maximum amount needed to pay any tax or other charge that the Trustee has determined, based upon the advice of its agents and/or professionals);

(g) open and maintain bank accounts in U.S. financial institutions on behalf of or in the name of the Trust;

(h) file, if necessary, any and all tax returns with respect to the Trust and pay taxes properly payable by the Trust, if any;

(i) make all necessary filings in accordance with any applicable law, statute, or regulation;

(j) determine and satisfy from the Trust Assets any and all taxes and ordinary course liabilities, including reasonable professional, consultant, and employee fees and expenses permitted hereby, created, incurred or assumed by the Trust, subject to and in accordance with the terms of this Agreement;

9

(k)     subject to and in accordance with the terms of this Agreement, retain and pay professionals, consultants, employees, contractors, or other agents, including any and all estate professionals for services performed after the EFH Effective Date and including the Trustee Professionals, from the Trust Assets to carry out its duties and obligations hereunder in accordance with the terms hereof;

(l)     invest monies received by the Trust or Trustee or otherwise held by the Trust or Trustee in accordance with Section 6.4 hereof;

(m)     establish reserves, to the extent provided for, or permitted by the Plan, the Confirmation Order, or this Agreement, including reserves that are reasonably necessary to effectuate the purposes of the Trust pursuant to the Plan, the Confirmation Order, or this Agreement;

(n)     in the event that the Trustee reasonably determines that the Beneficiaries or the Trust may, will, or have become subject to adverse tax consequences, take such actions that will, or are reasonably intended to, alleviate such adverse tax consequences to the extent consistent with the Trust's status as a DOF;

(o)     create sub-trusts or title vehicles of which the Trust or the Beneficiaries hold the beneficial or ownership interests, as applicable;

(p)     purchase customary insurance coverage in accordance with Section 4.8 hereof;

(q)     cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code; and

(r)     perform such functions and take such actions as are provided for or permitted by the Plan, the Confirmation Order, this Agreement, or any other agreement executed pursuant to the Plan, or that are reasonably necessary to effectuate the purposes of the Trust.

Nothing contained herein shall be deemed to restrict or impair any rights of the EFH Plan Administrator Board, the Supporting Creditors, the EFIH Unsecured Notes Trustee, or the EFH Notes Trustee, under the Plan or Confirmation Order, including paragraph 156 of the Confirmation Order, as applicable.

6.2     Limitations on Trustee.  The Trustee shall not hold the Trust out as an investment company. The Trustee shall be restricted to the power set forth above in Section 6.1.

6.3     Agents, Professionals, and Consultants; Employees.  The Trust may, but shall not be required to, from time to time enter into contracts with, consult with, and retain independent contractors, including attorneys, accountants, appraisers, consultants, disbursing agents, or other parties deemed by the Trustee to have qualifications necessary or desirable to assist in the proper administration of the Trust, including any estate professionals retained during the Bankruptcy Cases as may be appropriate in the circumstances with respect to services performed after the EFH Effective Date, and including any agents the Trustee engages (including such agents' representatives) to address matters (collectively, the "Conflicts Matters") that, prior to the EFH Effective Date, would have been addressed by those certain disinterested directors of the EFH/EFIH Debtors and their advisors (such agent representing EFH Corp., the "Disinterested EFH Agent," such agent representing EFIH, the "Disinterested EFIH Agent," and, collectively, the "Disinterested Agents"). Each Disinterested Agent shall have the authority to (1) to retain advisors to represent and advise such Disinterested Agent; (2) to investigate and determine whether any matter constitutes a Conflicts Matter; and (3) to make and implement all decisions with respect to Conflicts Matter. Each Disinterested Agent shall have the same fiduciary duties to the estate and its

10

respective creditors as the disinterested directors had. The representatives for the Disinterested Agents shall take direction from the Disinterested Agents, and, for the avoidance of doubt, the Disinterested Agents shall not take direction from the Trustee solely with respect to the Conflicts Matters. The Trustee shall pay the reasonable fees and expenses of such Persons out of the Trust Assets in the ordinary course of business without the need for approval of, or notice to, the Bankruptcy Court. The Trustee may engage such professionals, consultants, employees, or other parties upon such terms as the Trustee, in its sole discretion, deems appropriate.

6.4     Investment of Trust Monies. In addition to deposits in bank accounts at one or more U.S. financial institutions, the Trustee shall invest any cash received by the Trustee or otherwise held by the Trustee in highly-rated short-term investments of which the length of term shall be consistent with the obligations to pay costs, expenses, and other obligations and make distributions under Article IV of this Agreement, which investments shall consist of: (a) short-term investments issued or guaranteed by the U.S. or by a department, agency, or instrumentality of the U.S.; (b) other short-term instruments of the highest credit rating available of two nationally recognized rating agencies; or (c) other similar highly-rated short-term investments. For the avoidance of doubt, the investment powers of the Trustee, other than those reasonably necessary to maintain the value of the Trust Assets and to effectuate the purpose of the Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

## ARTICLE VII
## CONCERNING THE TRUSTEE

7.1     Generally.  The Trustee shall exercise such of the rights and powers vested in it by this Agreement, the Plan, and the Confirmation Order, and use reasonable business judgment in its exercise. The Trustee shall administer the Trust in accordance with the Confirmation Order, the Plan, and this Agreement. No provision of this Agreement, the Plan, or the Confirmation Order shall be construed to relieve the Trustee from liability for its own actions or omissions to act that are determined by Final Order of the Bankruptcy Court to have arisen out of the Trustee's own gross negligence, fraud, or willful misconduct, except that the Trustee shall not be liable to any Person, including the Trust or any Beneficiary, for any action taken in good faith and in the exercise of the Trustee's reasonable business judgment, or taken in reliance upon the advice of professionals, consultants, or employees retained by the Trustee in accordance with this Agreement.

7.2     Reliance by Trustee.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order:

(a)     the Trustee may rely and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, books and records, Schedules, or other paper or document reasonably believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties; and

(b)     Persons (including any Trust Professionals or any other professionals, consultants, or employees retained by the Trustee in accordance with this Agreement) engaged in transactions with the Trustee shall look only to the Trust Assets to satisfy any liability incurred by the Trustee to such Person in carrying out the terms of this Agreement, the Plan, or the Confirmation Order, and the Trustee shall have no personal or individual obligation to satisfy any such liability.

7.3     No Implied Obligations.  The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, in the Plan, and in the Confirmation Order,

and no other or further covenants or obligations shall be implied into this Agreement. The Trustee shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties herein or in any documents or instrument evidencing or otherwise constituting a part of the Trust Assets. The Trustee makes no representations as to the value of the Trust Assets or any part thereof, or as to the validity, execution, enforceability, legality, or sufficiency of this Agreement, and the Trustee shall incur no liability or responsibility with respect to any such matters.

7.4    Exculpation/Liability to Third Persons. The Trustee and agents of and professionals, consultants, and employees retained by the Trustee shall not be subject to any liability whatsoever, in tort, contract, or otherwise, to any Person in connection with the Trust Assets or the affairs of the Trust, or the exercise of any of their respective powers and duties conferred by this Agreement, the Plan, the Confirmation Order, or otherwise, except for any action, or failure to act, that is determined by Final Order of the Bankruptcy Court to have arisen out of their own respective gross negligence, fraud, or willful misconduct. All Persons shall look solely to the Trust Assets for satisfaction of claims of any nature arising in connection with affairs of the Trust or claims against the Trustee. The Trustee and its agents and professionals, consultants, and employees shall not be liable to any Person except for direct damages found in a Final Order of the Bankruptcy Court to have arisen out of their own respective gross negligence, fraud, or willful misconduct. The aggregate liability of the Trustee, whether in tort, contract, or otherwise, is limited to the sum of the Advance Defense Costs and the amount of fees paid to the Trustee for its services under this Agreement. The aggregate liability of the Trustee's agents and professionals, consultants, and employees, whether in tort, contract, or otherwise, is limited to the sum of the Advance Defense Costs (as defined below), if any, and the amount of fees paid to the professionals for its services provided to the Trustee, as applicable. The Trustee and its agents and professionals, consultants, and employees shall not be liable for incidental, special, punitive or consequential damages under any circumstances, even if it has been advised of the possibility of such damages. Other than as set forth in the Plan or in the Confirmation Order, nothing in this Section 7.4 shall be deemed to release any Beneficiary from any action, or failure to act, occurring prior to the EFH Effective Date.

7.5    Nonliability of Trustee for Acts of Others. Nothing contained in this Agreement shall be deemed to be an assumption by the Trustee of any of the liabilities, obligations, or duties of the EFH/EFIH Debtors or Beneficiaries and shall not be deemed to be or contain a covenant or agreement by the Trustee to assume or accept any such liability, obligation, or duty. The Trustee and any successor Trustee may accept and rely upon any accounting made by or on behalf of any Debtor or any predecessor Trustee hereunder, and any statement or representation made as to the assets comprising the Trust Assets or as to any other fact bearing upon the prior administration of the Trust, so long as it has a good faith basis to do so. A Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue. A Trustee or successor Trustee shall not be liable for any act, or failure to act, of any predecessor Trustee. Without limiting the foregoing, in carrying out the obligations under the Plan, Confirmation Order, and this Agreement, the Trustee may rely, and shall be fully protected in relying, on the advice and opinion of the Trust's attorneys, financial advisors, accountants, or other professionals.

7.6    Indemnity. The Trustee and its agents, attorneys, accountants, advisors, representatives, and principals (collectively, the "Indemnified Parties") shall be indemnified and held harmless by the Trust, to the fullest extent permitted by law, solely from the Trust Assets for any losses, claims, damages, liabilities, and expenses, including reasonable attorneys' fees, disbursements, and related expenses which the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against one or more of the Indemnified Parties on account of the acts or omissions of the Trustee solely in its capacity as such; provided, however, that the Trust shall not be liable to indemnify any Indemnified Party for any action, or failure to act, that is determined by Final Order of the Bankruptcy Court to have arisen out of the

Indemnified Party's own gross negligence, fraud, or willful misconduct. Notwithstanding any provision herein to the contrary, the Indemnified Parties shall be entitled to obtain advances from the Trust to cover their reasonable expenses of defending themselves in any action threatened or brought against them as a result of an act or a failure to act, actual or alleged, of an Indemnified Party in its capacity as such (the "Advance Defense Costs"); provided, however, that the Indemnified Parties receiving such Advance Defense Costs shall repay the amounts so advanced to the Trust upon the entry of a Final Order finding that such Indemnified Parties were not entitled to any indemnity under the provisions of this Section 7.6. The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.

7.7     Compensation and Expenses. The Trustee shall receive compensation for its services in accordance with the compensation schedule attached hereto as Annex A. The Trustee shall be entitled to reimburse itself and the Trust Professionals from the Trust Assets on a monthly basis for all reasonable out-of-pocket expenses actually incurred by it in the performance of its duties in accordance with this Agreement, and, when due, reasonable professional fees in accordance with the terms of such professionals' retention.

## ARTICLE VIII
## SUCCESSOR TRUSTEES

8.1     Resignation. The Trustee may resign from the Trust by giving at least **[30]** days prior written notice thereof to the Bankruptcy Court. Such resignation shall become effective on the later to occur of (a) the date specified in such written notice or (b) the effective date of the appointment of a successor Trustee in accordance with Section 8.4 hereof and such successor's acceptance of such appointment in accordance with Section 8.5 hereof.

8.2     Removal. The Trustee may be removed, with or without cause, by Final Order of the Bankruptcy Court. Such removal shall become effective on the date specified in such action by the Bankruptcy Court.

8.3     Effect of Resignation or Removal. The death, resignation or removal of the Trustee shall not operate to terminate the Trust or to revoke any existing agency created pursuant to the terms of this Agreement, the Plan, or the Confirmation Order or invalidate any action theretofore taken by the Trustee. All fees and expenses incurred by the Trustee prior to the resignation or removal of the Trustee shall be paid from the Trust Assets, unless such fees and expenses are disputed by the successor Trustee, in which case the Bankruptcy Court shall resolve the dispute and any disputed fees and expenses of the predecessor Trustee that are subsequently allowed by the Bankruptcy Court shall be paid from the Trust Assets. In the event of the resignation or removal of the Trustee, such Trustee shall: (a) promptly execute and deliver such documents, instruments, and other writings as may be reasonably requested by the successor Trustee or directed by the Bankruptcy Court to effect the termination of such Trustee's capacity under this Agreement; (b) promptly deliver to the successor Trustee all documents, instruments, records, and other writings related to the Trust as may be in the possession of such Trustee; provided, however, that such Trustee may retain one copy of each of such documents for its purposes; and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Trustee.

8.4     Appointment of Successor. In the event of the death, resignation or removal of the Trustee, a vacancy shall be deemed to exist and a successor trustee shall be appointed by the Bankruptcy Court following the motion of the retiring Trustee or any Beneficiary.

8.5     Acceptance of Appointment by Successor Trustee. Any successor Trustee appointed hereunder shall execute an instrument accepting its appointment and shall deliver one counterpart thereof

to the Bankruptcy Court for filing and, in case of the Trustee's resignation, to the resigning Trustee. Thereupon, such successor Trustee shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion, and privileges of its predecessor in the Trust with like effect as if originally named Trustee and shall be deemed appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The resigning or removed Trustee shall duly assign, transfer, and deliver to such successor Trustee all property and money held by such retiring Trustee hereunder and shall, as directed by the Bankruptcy Court or reasonably requested by such successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee upon the Trust herein expressed, all the liabilities, duties, powers, rights, title, discretion, and privileges of such resigning or removed Trustee.

## ARTICLE IX
## MISCELLANEOUS PROVISIONS

9.1 <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without reference to principles of conflicts of law rules which would result in the application of the laws of another jurisdiction).

9.2 <u>Jurisdiction</u>. The parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the Trust and the Trustee, including the administration and activities of the Trust and the Trustee.

9.3 <u>WAIVER OF JURY TRIAL</u>. EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.

9.4 <u>Severability</u>. In the event any provision of this Agreement or the application thereof to any Person or circumstances shall be determined by Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to Persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

9.5 <u>Notices</u>. Any notice, request, instruction or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or sent by (a) registered or certified mail, postage prepaid, (b) email, or (c) overnight courier:

    (a)    if to the Trustee, to:

    EFH Plan Administrator Board
    Attn: Anthony Horton
    Email: Anthony.horton@energyfutureholdings.com

    with copies to:

    Kirkland & Ellis LLP
    300 North LaSalle
    Chicago, Illinois 60654

> Attn: Chad J. Husnick, P.C.
> Email: Chad.Husnick@kirkland.com
>
> Kirkland & Ellis LLP
> 601 Lexington Avenue
> New York, NY 10022
> Attn: Aparna Yenamandra
> Email: Aparna.Yenamandra@kirkland.com

(b) if to any Beneficiary, to the last known address of such Beneficiary according to the Trustee's records.

9.6 Headings. The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

9.7 Plan and Confirmation Order. The principal purpose of the Trust and this Agreement are to aid in the implementation of the Plan and the Confirmation Order and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and Confirmation Order. To the extent that the terms of this Agreement conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided, however, with respect to any conflict or inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern and control.

9.8 No Further Funding Obligations of EFH/EFIH Debtors, Parent or Reorganized Debtors. From and after the transfer of the Trust Assets to the Trust by the EFH/EFIH Debtors in accordance with Section 1.3 hereof, none of the EFH/EFIH Debtors, the Reorganized EFH/EFIH Debtors or Parent shall have any obligation to make any payment or transfer any other assets to the Trust.

9.9 Cooperation and Further Assurances. The EFH/EFIH Debtors shall turn over or otherwise make available to the Trustee, at no cost to the Trust or the Trustee, all books and records reasonably required by the Trustee to carry out its duties hereunder, and agree to otherwise reasonably cooperate with the Trustee in carrying out its duties hereunder.

9.10 Indenture Provision. The Trust hereby succeeds to all rights and interests of the applicable Issuer under each Indenture governing the Notes to the extent each such Indenture survives in accordance with Article IV.G. of the Plan.

9.11 Entire Agreement. Subject to Section 9.7 hereof, this Agreement and the Annex attached hereto contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

9.12 Amendment. This Agreement shall not be amended, except by the Trustee with the approval of the Bankruptcy Court.

9.13 Meanings of Other Terms. Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa. All references herein to Articles, Sections, and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute, or regulation, refer to the corresponding Articles, Sections, and other subdivisions of this Agreement, and the words herein and words of similar import refer to this

Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement. The term "including" shall mean "including, without limitation."

      9.14    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument. An electronic, .pdf, or facsimile signature of any party shall be considered to have the same binding legal effect as an original signature.

[*Remainder of Page Blank — Signature Page Follows*]

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives, or agents, effective as of the date first above written.

**THE EFH/EFIH DEBTORS**

BY:_____
NAME: ANDREW M. WRIGHT

**TRUSTEE:**

**EFH PLAN ADMINISTRATOR BOARD**

BY: _____
NAME: ANTHONY HORTON

[*Signature Page to EFH Plan Administrator Trust Agreement*]

**Annex A**
Trustee's Compensation

Fees in connection with the Trustee's engagement will consist of $45,000 per month, inclusive of reasonable and documented out-of-pocket expenses that are incurred on the Trust's behalf during its services as Trustee, including, but not limited to, counsel fees, airfare, meals, hotel accommodations, telephone, industry research, duplicating, and printing. Invoices for fees and expenses incurred in connection with services as Trustee will be billed monthly or quarterly, and are due upon receipt.

The Trustee shall not be required to seek or obtain approval of its compensation by the Bankruptcy Court.