## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | ) Chapter 11 |
|  | ) |
| ENERGY FUTURE | ) Case No. 14-10979 (CSS) |
| HOLDINGS CORP., *et al.*, | ) |
|  | ) (Jointly Administered) |
| *Debtors.*[1] | ) |
|  | ) **Re: D.I. 12763** |

### NOTICE OF APPEAL

**PLEASE TAKE NOTICE** that Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott"), creditors in the above-captioned case, hereby appeal to the United States District Court for the District of Delaware under 28 U.S.C. § 158(a)(1), and Fed. R. Bankr. P. 8002 and 8003 from the February 27, 2018 *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holdings Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12763] by the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, attached hereto as Exhibit A (the "Confirmation Order"), including without limitation, any and all orders, judgments, decrees, decisions, rulings and opinions that may subsequently be entered regarding or merged into the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the names of all parties to the judgment, order, or decree from which Elliott appeals, and the names, addresses, and telephone numbers of their attorneys are as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

|   | **Party** | **Attorney** |
|---|-----------|--------------|
| 1. | Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership | **BAYARD, P.A.**<br>Scott D. Cousins (No. 3079)<br>Erin R. Fay (No. 5268)<br>Evan T. Miller (No. 5364)<br>600 N. King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone:  (302) 655-5000<br><br>- and-<br><br>**ROPES & GRAY LLP**<br>Keith H. Wofford<br>Gregg M. Galardi<br>1211 Avenue of the Americas<br>New York, NY 10036-8704<br>Telephone:  (212) 596-9000 |
| 2. | Andrew R. Vara,<br>Acting United States Trustee | **U.S. DEPARTMENT OF JUSTICE**<br>**OFFICE OF THE U.S. TRUSTEE**<br>Richard L. Schepacarter<br>J. Caleb Boggs Federal Building<br>844 N. King Street, Room 2207, Lockbox 35<br>Wilmington, DE 19801<br>Telephone: (302) 573-6491 |
| 3. | Debtors and<br>Debtors-in-Possession | **RICHARDS, LAYTON & FINGER, P.A.**<br>Mark D. Collins (DE Bar No. 2981)<br>Daniel J. DeFranceschi (DE Bar No. 2732)<br>Jason M. Madron (DE Bar No. 4431)<br>920 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 651-7700<br><br>- and-<br><br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Edward O. Sassower, P.C.<br>Stephen E. Hessler<br>Brian E. Schartz<br>601 Lexington Avenue<br>New York, NY 10022-4611<br>Telephone: (212) 446-4800 |

| | | |
|---|---|---|
| | | -and-<br><br>James H.M. Sprayregen, P.C.<br>Chad J. Husnick, P.C.<br>Steven N. Serajeddini<br>300 North LaSalle<br>Chicago, IL 60654<br>Telephone: (312) 862-2000 |
| 4. | Energy Future Holdings Corp. | **BIELLI & KLAUDER, LLC**<br>David M. Klauder (DE Bar No. 5769)<br>Cory Stephenson (DE Bar No. 6097)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br><br>-and-<br><br>**PROSKAUER ROSE LLP**<br>Jeff J. Marwil<br>Mark K. Thomas<br>Peter J. Young<br>Three First National Plaza<br>70 W. Madison Street, Suite 3800<br>Chicago, IL 60602-4342<br>Telephone: (312) 962-3550 |
| 5. | Energy Future Intermediate Holding Company LLC | **STEVENS & LEE, P.C.**<br>Joseph H. Huston, Jr. (DE Bar No. 4035)<br>919 North Market Street, Suite 1300<br>Wilmington, DE 19801<br>Telephone: (302) 644-5180<br><br>-and-<br><br>**CRAVATH, SWAINE AND MOORE LLP**<br>Michael A. Paskin<br>Trevor M. Broad<br>Worldwide Plaza<br>825 Eighth Avenue<br>New York, NY 10019-7475<br>Telephone: (212) 474-1760<br><br>-and- |

|   |   |   |
|---|---|---|
|   |   | **JENNER & BLOCK**<br>Richard  Levin<br>919 Third Avenue<br>New York, NY 10022-3908<br>Telephone: (212) 891-1601 |
| 6. | The Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, EFIH Finance Inc., and EECI, Inc. | **MONTGOMERY McCRACKEN WALKER & RHOADS, LLP**<br>Natalie D. Ramsey (DE Bar No. 5378)<br>David Lee Wright (DE Bar No. 4324)<br>Mark A. Fink (DE Bar No. 3946)<br>1105 North Market Street, 15th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 504-7800<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich<br>Steven L. Holley<br>Robert J. Giuffra, Jr.<br>Brian D. Glueckstein<br>125 Broad Street<br>New York, New York 10004<br>Telephone: (212) 558-4000 |

Dated: March 13, 2018
      Wilmington, DE

**BAYARD, P.A.**

*/s/ Erin R. Fay*
Scott D. Cousins (No. 3079)
Erin R. Fay (No. 5268)
Evan T. Miller (No. 5364)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone:  (302) 655-5000

– and –

**ROPES & GRAY LLP**
Keith H. Wofford (admitted *pro hac vice*)
Gregg M. Galardi
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone:  (212) 596-9000

*Counsel to Elliott*

**<u>Exhibit A</u>**



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) **Re: D.I. 12653** |

## ORDER CONFIRMING THE FIRST AMENDED JOINT PLAN
## OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP.,
## ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, AND THE
## EFH/EFIH DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),[2]

including the EFH/EFIH Debtors, having, as applicable:

   a.   commenced, on April 29, 2014 (the "Petition Date"), the chapter 11 cases (including, collectively, the chapter 11 cases of the TCEH Debtors, the EFH Shared Services Debtors, the EFH Debtors, and the EFIH Debtors) (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

   b.   continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

   c.   filed on August 10, 2015, (i) the *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* [D.I. 5249] (the "Settlement Motion") and (ii) *Motion of Energy Future Holdings Corp., et al., to Authorize the Debtors to Enter Into and Perform Under the Plan Support Agreement* [D.I. 5248];

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]   Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, the "EFH Confirmation Order") have the meanings given to them in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* dated February 15, 2018 [D.I. 12653], attached hereto as **Exhibit A** (the "Plan"). The rules of interpretation set forth in Article I.B of the Plan apply to this EFH Confirmation Order.

d. filed on November 23, 2015, the *Notice of Settlement Among Debtors, EFH Committee, EFH Notes Trustee, Plan Sponsors, Consenting TCEH First Lien Creditors, and TCEH Committee* [D.I. 7090]; as amended by the *Amended Notice of Settlement Among Debtors, EFH Committee, EFH Notes Trustee, Plan Sponsors, Consenting TCEH First Lien Creditors, and TCEH Committee* [D.I. 7031], filed on November 24, 2015 (the "EFH/EFIH Committee Settlement");

e. filed on August 5, 2016, the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9199];

f. filed on August 16, 2016, the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9321] with modifications, supplements, and amendments filed thereafter on August 23, 2016 [D.I. 9374] (the "TCEH Confirmed Plan");

g. filed on February 17, 2017, the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the EFIH Settlement Between the Debtors, Certain Holders of EFIH First Lien Note Claims, Certain Holders of EFIH Second Lien Note Claims, and Certain EFIH Unsecured Note Claims* [D.I. 10858];

h. filed on July 7, 2017, the *Motion of EFH/EFIH Debtors for Entry of an Order Scheduling Certain Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11425];

i. filed on July 7, 2017, (a) the *Motion of EFH/EFIH Debtors for Entry of an Order (A) Approving the EFH Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [D.I. 11428]; (b) the *Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11427] (as amended, modified, and supplemented at D.I. 11805, D.I. 11857, D.I. 11889, the "EFH Disclosure Statement"); and (c) the *Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, modified, and supplemented on August 23, 2017 [D.I. 11803], September 5, 2017 [D.I. 11854], and September 11, 2017 [D.I. 11887]);

j. filed on July 7, 2017, the *Notice of Filing of Letters Terminating (A) the NEE Plan Support Agreement and (B) the NEE Merger Agreement* [D.I. 11424];

2

k.  filed on July 10, 2017, the *Notice of Filing of (A) Letter Terminating the PIK Plan Support Agreement and (B) Additional "Cleansing" Materials Under That Certain Confidentiality Agreement with Elliott Capital Management* [D.I. 11435];

l.  filed on July 11, 2017, the *Notice that the NextEra Plan and NextEra Plan Confirmation Order Have Been Rendered Null and Void* [D.I. 11446];

m.  filed on August 22, 2017, the *Second Re-Notice of the Motion of EFH/EFIH Debtors for Entry of an Order (A) Approving the EFH Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [D.I. 11795];

n.  filed on August 23, 2017, the *Amended and Superseding Motion of the E-Side Debtors for An Order (A) Authorizing Entry into the Merger Agreement and Approving the Termination Fee and (B) Authorizing Entry into and Performance Under the Plan Support Agreement* [D.I. 11801];

o.  filed on September 1, 2017, the *Declaration of David Ying in Support of the Amended and Superseding Motion of the E-Side Debtors for an Order (A) Authorizing Entry Into the Merger Agreement and Approving the Termination Fee and (B) Authorizing Entry Into and Performance Under the Plan Support Agreement* [D.I. 11852];

p.  filed on September 27, 2017, the *Affidavit of Service of Forrest Kuffer (Certification of Counsel Concerning Revised Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code)* [D.I. 11953];

q.  filed on October 20, 2017, the *Supplement for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12104] (as amended, modified, and supplemented from time to time, including at [D.I. 12685], the "EFH Plan Supplement");

r.  filed on October 20, 2017, the *Affidavit of Publication of John Wier of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan and Related Voting and Objection Deadlines in the Wall Street Journal* [D.I. 12100]; the *Affidavit of Publication of Jay H. Heyman of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan and Related Voting and Objection Deadlines in the Waco Tribune* [D.I. 12099]; *Affidavit of Publication of Toussaint Hutchinson of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan and Related Voting and Objection Deadlines in USA Today* [D.I. 12098]; *Affidavit of Publication of Victoria Bond of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan and Related Voting and Objection Deadlines in the Houston Chronicle* [D.I. 12097]; *Affidavit of*

*Publication of Jay H. Heyman of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan and Related Voting and Objection Deadlines in the Fort Worth Star Telegram* [D.I. 12096]; *Affidavit of Publication of Dan Navarro of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan and Related Voting and Objection Deadlines in the Dallas Morning News* [D.I. 12095]; and *Affidavit of Publication of Georgia Lawson of Notice of Hearing to Consider Confirmation of the Chapter 11 Plan and Related Voting and Objection Deadlines in the Corpus Christi Caller-Times* [D.I. 12094] (collectively, the "EFH Publication Affidavits");

s.   filed on October 31, 2017, the *Affidavit / Declaration of Services of Solicitation Materials for the EFH/EFIH Debtors (Redacted)* [D.I. 12157] (the "EFH Solicitation Affidavit");

t.   filed on November 1, 2017, the *Certification of Ballots* [D.I. 12164] (the "EFH Voting Report");

u.   filed on January 25, 2018, the *Notice of Hearing to Consider Confirmation of the Chapter 11 Plan as it Applies to the EFH/EFIH Debtors and Related Matters* [D.I. 12512] (the "EFH Confirmation Hearing Notice");

v.   filed on February 2, 2018, the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Settlement Between the Debtors and Sempra and Approving the Agreed Amendment to the Merger Agreement* [D.I. 12571];

w.   filed on February 14, 2018, the *Affidavit of Service (Notice of Hearing to Consider Confirmation of the Chapter 11 Plan as it Applies to the EFH/EFIH Debtors and Related Matters)* [D.I. 12629];

x.   filed on February 15, 2018, the proposed *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [12655-1];

y.   filed on February 17, 2018, the *Debtors' Memorandum of Law in Support of the Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12666] (the "EFH Confirmation Memorandum");

z.   filed on February 17, 2018, the *Declaration of Jonathan F. Ganter, Esq. in Support of Debtors' Memorandum of Law in Support of the Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12668] (the "EFH Confirmation Memorandum Declaration");

aa.   admitted on February 26, 2018, the *Declaration of Anthony Horton in Support of the Confirmation of the First Amended Joint Plan of Reorganization of Energy Future*

*Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (the "<u>Horton Declaration</u>" and "<u>D-DIR Horton</u>");

bb. admitted on February 26, 2018, the *Declaration of John Stuart in Support of the Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (the "<u>Stuart Declaration</u>" and "<u>D-DIR Stuart</u>");and

cc. admitted on February 26, 2018, the *Declaration of Andrew M. Wright in Support of the Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (the "<u>Wright Declaration</u>" and "<u>D-DIR Wright</u>").

This Court having:

a. entered the *Order Authorizing Debtors to Enter Into and Perform Under Plan Support Agreement* [D.I. 6097] (the "<u>Original PSA Order</u>" and the Plan Support Agreement approved thereto, the "<u>Original PSA</u>") on September 19, 2015;

b. entered the Order Approving Settlement Among Debtors, EFH Committee, EFH Notes Trustee, and Certain Other Parties [D.I. 7143] on November 25, 2015;

c. entered the *Order Granting the Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 7243] on December 7, 2015;

d. entered the *Order (Amended) Confirming the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 7285] (the "<u>Original Confirmation Order</u>" and the approved plan of reorganization attached thereto, the "<u>Original Confirmed Plan</u>") on December 9, 2015;

e. entered the *Order Confirming the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 9421] (the "<u>TCEH Confirmation Order</u>") on August 29, 2016;

f. entered the *Order Approving the EFIH Settlement Between the Debtors, Certain Holders of EFIH First Lien Note Claims, Certain Holders of EFIH Second Lien Note Claims, and Certain Holders of EFIH Unsecured Note Claims* [D.I. 11048] on March 24, 2017;

g. entered the *Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the Joint Plan of*

*Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* on July 28, 2017 [D.I. 11628];

h.  entered the *Amended and Superseding Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* on August 29, 2017 [D.I. 11835] (as amended, modified, and supplemented at D.I. 12279 and 12519, the "EFH Scheduling Order");

i.  set October 30, 2017 as the preliminary deadline for filing objections to the Plan and December 19, 2017 as the final deadline for filing objections to the Plan (collectively, the "EFH Plan Objection Deadline");

j.  set October 30, 2017, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan (the "Voting Deadline");

k.  entered the *Order (A) Approving the EFH Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* on September 6, 2017 [D.I. 11870] (the "EFH Disclosure Statement Order" and the solicitation materials approved therein, the "EFH Solicitation Packages");

l.  entered the *Order (Corrected) (A) Authorizing Entry Into Merger Agreement and Approving Termination Fee and (B) Authorizing Entry Into and Performance Under Plan Support Agreement* on September 7, 2017 [D.I. 11873];

m.  entered the *Opinion* on October 3, 2017 on the motion for reconsideration of an order approving, among other things, a Termination Fee (as defined in [D.I. 11998]) in the amount of $275 million [D.I. 11998];

n.  entered the *Order Granting the Motion to Reconsider of Elliott Associates, L.P. and Denying the Application of NextEra Energy Inc. for Payment of Administrative Claim* on October 18, 2017 [D.I. 12075];

o.  entered the *Supplement to Amended and Superseded Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* on November 28, 2017 [D.I. 12279]

p.  entered the *Stipulation and Proposed Order* on December 1, 2017 [D.I. 12294].

6

q.  entered the *Order Denying Motion to Stay Pending Appeal* on December 11, 2017 [D.I. 12327] and amended on December 12, 2017 [D.I. 12334];

r.  entered the *Second Supplement to Amended and Superseding Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* on January 28, 2018 [D.I. 12519];

s.  set February 26, 2018, at 10:00 a.m. (prevailing Eastern Time) as the date and time for the commencement of the EFH Confirmation Hearing in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

t.  entered the *Stipulation and Order* [D.I. 12547];

u.  entered the *Order Approving (I) the Settlement Between the Debtors and Sempra and (II) the Agreed Amendment to the Merger Agreement* [D.I. 12631];

v.  entered the *Stipulation and Order* [D.I. 12703] on February 23, 2018 (the "Stipulation"), reflecting agreement between the Asbestos Objectors and the Debtors regarding Confirmation Proceedings (as defined in the Stipulation) with respect to the Plan;

w.  reviewed the Plan, the EFH Disclosure Statement, the EFH Confirmation Memorandum, and the EFH Confirmation Memorandum Declaration, the EFH Voting Report, and all pleadings, exhibits, statements, responses, and comments regarding EFH Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases and all closing materials tendered to the Court at closing arguments heard on February 26, 2018;

x.  held the EFH Confirmation Hearing on February 26, 2018;

y.  heard the statements and arguments made by counsel in respect of EFH Confirmation;

z.  considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the EFH Confirmation Hearing;

aa.  entered rulings on the record at the EFH Confirmation Hearing (the "EFH Confirmation Ruling");

bb.  overruled any and all objections to the Plan and to EFH Confirmation, except as otherwise stated or indicated on the record, and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

cc.  taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases.

7

NOW, THEREFORE, the Court having found that notice of the EFH Confirmation Hearing and the opportunity for any party to object to the Confirmation of the Plan ("EFH Confirmation") has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of EFH Confirmation and all evidence proffered or adduced by counsel at the EFH Confirmation Hearing and as to Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, David Heinzmann, Harold Bissell, Kurt Carlson, Robert Albini, individually and as successor-in-interest to the Estate of Gino Albini, and Denis Bergschneider (collectively, the "Asbestos Objectors"), having considered the findings of fact and rationales for the conclusions of law announced by the Court in the Chapter 11 Cases related to asbestos-related claims, including but not limited to those made on the record at hearings (including but not limited to the December 3, 2015, and September 19, 2016, February 17, 2017, and February 26, 2018 hearings) and the order confirming the Original Confirmed Plan, the NextEra Plan, the *Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form of and Manner for Filing Asbestos Proofs of Claims, and (C) Approving Notice Thereof* [D.I. 5171] entered on July 30, 2015, the *Order Denying the Amended Motion for Application of Fed. R. Bankr. P. 7023 to this Proceeding and to Certify a Class Pursuant to FRCP Rule 23* [D.I. 7383] entered on December 16, 2015, the TCEH Confirmation Order, and the opinion [D.I. 10414] and order [D.I. 10415] entered on December 19, 2016, denying the Motion to Dismiss, establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order:

8

## I.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.     Jurisdiction and Venue.**

1.      On the Petition Date, the Debtors commenced the Chapter 11 Cases.  Venue in this Court was proper as of the Petition Date and remains proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334.  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.     Eligibility for Relief.**

2.      The EFH/EFIH Debtors were and continue to be entities eligible for relief under section 109 of the Bankruptcy Code.

**C.     Commencement and Joint Administration of the Chapter 11 Cases.**

3.      On June 5, 2014, the Court entered an order [D.I. 849] authorizing the joint administration of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b).  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

4.      On May 13, 2014, the U.S. Trustee appointed the Official Committee of TCEH Unsecured Creditors representing the interests of the unsecured creditors of the TCEH Debtors and EFH Corporate Services in the Chapter 11 Cases [D.I. 420] (the "TCEH Committee").  On October 27, 2014, the U.S. Trustee appointed the Official Committee of Unsecured Creditors

9

representing the interests of the unsecured creditors for EFH, EFIH, EFIH Finance, Inc., and EECI, Inc. in the Chapter 11 Cases [D.I. 2570] (the "EFH/EFIH Committee").

**D.      Plan Supplement.**

5.      Commencing October 20, 2017 [D.I. 12104], and continuing thereafter, including on February 22, 2018 [D.I. 12685], the EFH/EFIH Debtors filed the EFH Plan Supplement with the Court.  The documents identified in the EFH Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Plan, the EFH Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the documents identified in the EFH Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal and notice of the EFH Plan Supplement (and all documents identified therein) was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was conducted in good faith.  No other or further notice with respect to the EFH Plan Supplement (and all documents identified therein) is necessary or shall be required. Pursuant to the Plan, the Parties entitled to amend the documents contained in the Plan Supplement shall be entitled to amend such documents in accordance with their respective terms and Article X of the Plan through and including the EFH Effective Date.

**E.      Modifications to the Plan.**

6.      Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan described or set forth in this EFH Confirmation Order constitute technical changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest.  These modifications are consistent with the disclosures previously made pursuant to the

10

EFH Disclosure Statement and solicitation materials served pursuant to the EFH Disclosure Statement Order, and notice of these modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases.

7.      In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims and Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.   To the extent there is any conflict or inconsistency between the Plan and this EFH Confirmation Order, this EFH Confirmation Order shall govern.

**F.      Objections Overruled.**

8.      Any resolution or disposition of objections to EFH Confirmation explained or otherwise ruled upon by the Court on the record at the EFH Confirmation Hearing is hereby incorporated by reference.   All unresolved objections to Confirmation of the Plan are hereby overruled on the merits.

**G.      EFH Disclosure Statement Order and EFH Scheduling Order.**

9.      On September 7, 2017, the Court entered the EFH Disclosure Statement Order [D.I. 11870], which, among other things, fixed October 30, 2017, as the Voting Deadline.   On August 29, 2017 the Court entered the EFH Scheduling Order [D.I. 11835], which was supplemented by the Court on November 28, 2017 [D.I. 12279] and January 28, 2018 [D.I. 12519], which, among other things, fixed October 30, 2017, as the preliminary EFH Plan Objection Deadline and set December 19, 2017 as the final EFH Plan Objection Deadline.

**H.      Transmittal and Mailing of Materials; Notice.**

10.      As evidenced by the EFH Solicitation Affidavits, the EFH Publication Affidavits, and the EFH Voting Report, the EFH/EFIH Debtors provided due, adequate, and sufficient

11

notice of the Plan, the EFH Disclosure Statement, the EFH Disclosure Statement Order, the EFH Scheduling Order, the EFH Solicitation Packages, the EFH Confirmation Hearing Notice, the EFH Plan Supplement, and all the other materials distributed by the Debtors in connection with EFH Confirmation in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), and the procedures set forth in the EFH Disclosure Statement Order. The EFH/EFIH Debtors provided due, adequate, and sufficient notice of the EFH Plan Objection Deadline, the EFH Confirmation Hearing (as may be continued from time to time), and any applicable bar dates and hearings described in the Plan, EFH Disclosure Statement Order and EFH Scheduling Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the EFH Disclosure Statement Order and the EFH Scheduling Order. No other or further notice is or shall be required.

**I.      Solicitation.**

11.     The EFH/EFIH Debtors solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with sections 1125 and 1126, and all other applicable sections, of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the EFH Disclosure Statement Order, and all other applicable rules, laws, and regulations.

**J.      EFH Voting Report.**

12.     Prior to the EFH Confirmation Hearing, the EFH/EFIH Debtors filed the EFH Voting Report. The procedures used to tabulate ballots were fair and conducted in accordance with the EFH Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

RLF1 18943815v.1

13.     As set forth in the Plan and the EFH Disclosure Statement, Holders of Claims in Classes A4, A5, A6, A7, A8, A9, A10, A11, B5, and B6 (collectively, the "Voting Classes") were eligible to vote to accept or reject the Plan in accordance with the EFH Solicitation Procedures. Holders of Claims and Interests in Classes A1, A2, A3, B1, B2, B3, B4, and B9 (collectively, the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan and, therefore, could not vote to accept or reject the Plan. Holders of Claims or Interests in Classes A13, A15, B8, and B10 (collectively, the "Deemed Rejecting Classes") are Impaired under the Plan, entitled to no recovery under the Plan, and are therefore deemed to have rejected the Plan. Holders of Claims and Interests in Classes A12, A14, and B7 are either Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated), or are Impaired and deemed to reject the Plan (to the extent cancelled and released), and, in either event, are not entitled to vote to accept or reject the Plan.

14.     As evidenced by the Voting Report, all Voting Classes voted to accept the Plan.

**K.      Bankruptcy Rule 3016.**

15.     The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The EFH/EFIH Debtors appropriately filed the EFH Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).

**L.      Burden of Proof.**

16.     The Debtors, as proponents of the Plan, have satisfied their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation. Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) by clear and convincing evidence.

17.     The EFH/EFIH Debtors have satisfied their burden under section 363 of the Bankruptcy Code to demonstrate that all actions to be taken under the Plan pursuant to the EFH

Confirmation Order, and related transactions, transfers, and settlements are in the respective best interests of their estates. For the avoidance of doubt, entry by the EFH/EFIH Debtors into the Tax Matters Agreement, the Transition Services Agreement, and the Separation Agreement was approved pursuant to the TCEH Confirmation Order, effective as of the TCEH Effective Date.

**M.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

18.      The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**a.      Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

19.      The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

**i.      Sections 1122 and 1123(a)(1)—Proper Classification.**

20.      The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into sixteen different Classes in respect of the EFH Debtors and ten different classes in respect of the EFIH Debtors, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are addressed in Article II of the Plan and are required not to be designated as separate Classes by section 1123(a)(1) of the Bankruptcy Code). Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not implemented for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims and Interests.

14

21.    In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims or Interests contains only Claims or Interests substantially similar to the other Claims or Interests within that Class.  Accordingly, the Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

### ii.    Section 1123(a)(2)—Specification of Unimpaired Classes.

22.    Article III of the Plan specifies that Claims in the Deemed Accepting Classes are Unimpaired under the Plan.  Additionally, Article II of the Plan specifies that Administrative Claims and Priority Tax Claims are Unimpaired, although the Plan does not classify these Claims.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### iii.    Section 1123(a)(3)—Specification of Treatment of Impaired Classes.

23.    Article III of the Plan specifies the treatment of each Impaired Class under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### iv.    Section 1123(a)(4)—No Discrimination.

24.    Article III of the Plan provides the same treatment to each Claim or Interest in any particular Class, as the case may be, unless the Holder of a particular Claim or Interest in such Class has agreed to a less favorable treatment with respect to such Claim or Interest. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### v.    Section 1123(a)(5)—Adequate Means for Plan Implementation.

25.    The Plan and the various documents included in the EFH Plan Supplement provide adequate and proper means for the execution and implementation of the Plan, including: (a) the restructuring of the EFH/EFIH Debtors' balance sheets and other financial transactions provided for by the Plan; (b) the implementation of the Merger Agreement, as contemplated by

Article IV.B.5 of the Plan; (c) the New Organizational Documents; (d) the consummation of the transactions contemplated by the Sempra Plan Support Agreement, including the Merger Agreement; (e) the cancelation of certain existing agreements, obligations, instruments, and Interests; (f) the continuance of certain agreements, obligations, instruments, and Interests, as provided in Article III of the Plan; (g) the vesting of the assets of the EFH Debtors' Estates and EFIH Debtors' Estates in the Reorganized EFH Debtors and the Reorganized EFIH Debtors as applicable; and (h) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents in furtherance of the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

> ### vi.     Section 1123(a)(6)—Non-Voting Equity Securities.

26.     The New Organizational Documents prohibit the issuance of non-voting securities.[3]   Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

> ### vii.     Section 1123(a)(7)—Directors, Officers, and Trustees.

27.     The Reorganized EFH/EFIH Debtors' initial directors and officers, to the extent known, have been disclosed prior to the EFH Confirmation Hearing and, to the extent not known, will be determined in accordance with the New Organizational Documents, which is consistent with the interests of creditors and equity holders and public policy.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

> ### b.     Section 1123(b)—Discretionary Contents of the Plan.

28.     The Plan contains various provisions that may be construed as discretionary but not necessary for Confirmation under the Bankruptcy Code.  Any such discretionary provision in

---

[3]     *See* D.I. 12104-1, *Plan Supplement as it Relates to the EFH Debtors and EFIH Debtors for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al., *Pursuant to Chapter 11 of the Bankruptcy Code*, Ex. A., Article XII.

16

the Plan complies with section 1123(b) of the Bankruptcy Code and is consistent with the applicable provisions of the Bankruptcy Code. Thus, the Plan satisfies section 1123(b).

### i.      Impairment/Unimpairment of Any Class of Claims or Interests.

29.     Pursuant to the Plan, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

### ii.     Assumption and Rejection of Executory Contracts and Unexpired Leases.

30.     The applicable EFH/EFIH Debtors have exercised sound business judgment in determining whether to assume or reject each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, and Article V of the Plan and as set forth in the EFH Plan Supplement.  Except as set forth herein and/or in separate orders entered by the Court relating to assumption of Executory Contracts and Unexpired Leases, the EFH/EFIH Debtors have cured or provided adequate assurances that they will cure defaults (if any) under or relating to each Executory Contract and Unexpired Lease assumed under the Plan.

### iii.    Compromise and Settlement.

31.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, equitable and subordination rights that a Holder of a Claim or Interest against an EFH Debtor and/or an EFIH Debtor may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.

RLF1 18943815v.1

iv.     **Debtor Release.**

32.     The releases of Claims and Causes of Action by the EFH/EFIH Debtors described in Article VIII.C of the Plan in accordance with section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of such Debtors' business judgment under Bankruptcy Rule 9019 (the "Debtor Release"). The pursuit by the EFH/EFIH Debtors, or the Reorganized EFH/EFIH Debtors, of any such claims against the Released Parties is not in the best interest of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such Claims. The Debtor Release is furthermore an integral part of the Plan and the Settlement Agreement and is in the best interests of the Debtors' Estates.

33.     The Debtor Release appropriately offers protection to parties that constructively participated in the Debtors' restructuring process, including TEF, Texas Holdings, Kohlberg Kravis Roberts & Co. L.P., TPG Capital, L.P., and Goldman, Sachs & Co., as well as affiliates that hold direct or indirect interests in Texas Holdings, TEF, or EFH Corp. (collectively, the "Prepetition Sponsors"), the Plan Sponsor, and each of the Supporting EFIH Unsecured Creditors. Such protections from liability facilitated the participation of many of the Debtors' stakeholders in the negotiations and compromises that led to the Original Confirmed Plan, the TCEH Confirmed Plan, the Settlement Agreement, the Sempra Plan Support Agreement, the Merger Agreement, and the Plan. Specifically, the Released Parties under the Plan, including the Plan Sponsor, the EFH/EFIH Plan Supporters, the Holders of TCEH First Lien Claims (including the members of the TCEH First Lien Ad Hoc Committee), members of the TCEH Unsecured Ad Hoc Group, Holders of General Unsecured Claims against the EFIH Debtors (including the Supporting EFIH Unsecured Creditors) contributed to the Debtors' Chapter 11 Cases, including, as applicable, entering into the Plan Support Agreement (including the binding Alternative Restructuring Terms, as defined therein), the Sempra Plan Support Agreement, and the

RLF1 18943815v.1

Settlement Agreement, and waiving substantial Claims against the Debtors. The Debtor Release for the Prepetition Sponsors is appropriate because the Prepetition Sponsors share an identity of interest with the Debtors and the Debtors' directors and officers, waived claims associated with the Chapter 11 Cases, and actively participated in joint board and committee meetings during the Chapter 11 Cases, and have provided other valuable consideration to the Debtors under the Settlement Agreement to facilitate the Debtors' reorganization.

34.    Pursuant to the TCEH Confirmation Order, the TCEH Debtors, the Reorganized TCEH Debtors, the EFH Shared Services Debtors, and the Reorganized EFH Shared Services Debtors were deemed to provide the release set forth in Article VIII.C. of the Plan as of the TCEH Effective Date, including with respect to any Intercompany Claims (other than the TCEH Settlement Claim) held by or held against the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties. Nothing in this EFH Confirmation Order shall limit or impair any releases granted pursuant to the TCEH Confirmation Order. The EFH/EFIH Debtors and the Reorganized EFH/EFIH Debtors shall be deemed to provide the release set forth in Article VIII.C. of the Plan as of the EFH Effective Date. The TCEH Settlement Claim shall also be deemed to be treated, released, and discharged on the EFH Effective Date.

35.    The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Sempra Plan Support Agreement, and the Settlement Agreement, the Debtor Release is approved and authorized in its entirety.

RLF1 18943815v.1

### v.    Release by Holders of Claims and Interests.

36.    The release by the Releasing Parties, set forth in Article VIII.D of the Plan (the "Third Party Release"), is an essential provision of the Plan. The Third Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the claims and Causes of Action released by the Third Party Release; (c) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and are important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in the Chapter 11 Cases; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) a bar to any of the Releasing Parties asserting any claim or Cause of Action released by the Third Party Release against any of the other Released Parties; and (g) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

37.    The Third Party Release is an integral part of the Plan. Like the Debtor Release, the Third Party Release facilitated participation in the Original Confirmed Plan, the NextEra Plan, the Plan, and the chapter 11 process generally. The Third Party Release is instrumental to the Settlement Agreement that was critical in incentivizing the parties to support the Original Confirmed Plan, the TCEH Confirmed Plan, the EFIH Settlement Agreement, the Sempra Plan Support Agreement, and the Plan, and preventing potentially significant and time-consuming legacy and other litigation. The Third Party Release was a core negotiation point in connection with and instrumental in developing the Original Confirmed Plan, the Settlement Agreement, the TCEH Confirmed Plan, the Sempra Plan Support Agreement, and the Plan. As such, subject to certain enumerated exceptions, the Third Party Release appropriately offers certain protection to parties who constructively participated in the Debtors' restructuring process by supporting the Original Confirmed Plan, the Plan Support Agreement, the NextEra Plan, the EFIH Settlement

20

Agreement, the Sempra Plan Support Agreement, the Settlement Agreement, the TCEH Confirmed Plan, and the Plan; Unimpaired Creditors that are being paid in full in Cash or otherwise receiving a full recovery; or Holders of Claims or Interests that abstained from voting but did not opt out of the Third Party Release (to the extent such Holders of Claims or Interests were entitled to opt out of the Third Party Release under the Plan).

38.    Pursuant to the TCEH Confirmation Order, certain Releasing Parties were deemed to provide the release set forth in Article VIII.D of the Plan as of the TCEH Effective Date for all Claims and Causes of Action that relate to the TCEH Debtors, the Reorganized TCEH Debtors, the EFH Shared Services Debtors, the Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors or the Reorganized EFH Shared Services Debtors as of the TCEH Effective Date. Nothing in this EFH Confirmation Order shall limit or impair any releases granted pursuant to the TCEH Confirmation Order. The Releasing Parties shall be deemed to provide the release set forth in Article VIII.D of the Plan for all Claims and Causes of Action that relate to the EFH Debtors, the Reorganized EFH Debtors, the EFIH Debtors, and the Reorganized EFIH Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized EFH/EFIH Debtors as of the EFH Effective Date.

39.    The scope of the Third Party Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the Third Party Release. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Third Party Release to the Plan, the Third Party Release is approved and authorized in its entirety.

RLF1 18943815v.1

### vi.    Exculpation.

40.    The exculpation provisions set forth in Article VIII.E of the Plan are essential to the Plan.  The record in the Chapter 11 Cases fully supports the exculpation and the exculpation provisions set forth in Article VIII.E of the Plan, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

### vii.    Injunction.

41.    The injunction provisions set forth in Article VIII.F of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third Party Release, and the exculpation provisions in Article VIII.E of the Plan.   Such injunction provisions are appropriately tailored to achieve those purposes.

### viii.    Preservation of Claims and Causes of Action.

42.    Article IV.Q of the Plan appropriately provides for the preservation by the EFH/EFIH Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  Causes of Action not released by such Debtors or exculpated under the Plan will be retained by the Reorganized EFH/EFIH Debtors or the EFH Plan Administrator Board, as applicable, as provided by the Plan.  The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the EFH/EFIH Debtors, their respective Estates, and Holders of Claims against and Interests in the EFH/EFIH Debtors.  For the avoidance of any doubt, Causes of Action released or exculpated under the Plan by the EFH/EFIH Debtors will not be retained by the Reorganized EFH/EFIH Debtors or the EFH Plan Administrator Board.

### c.    Section 1123(d)—Cure of Defaults.

43.    Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.   Any monetary defaults under each Assumed

22

Executory Contract or Unexpired Lease to be assumed by the Reorganized EFH Debtors or the Reorganized EFIH Debtors shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash by the EFH Debtors or the EFIH Debtors, as applicable, on the EFH Effective Date (and, with respect to Assumed Executory Contracts or Unexpired Leases of the EFH Debtors or the EFIH Debtors, by the EFH Debtors or the EFIH Debtors, as applicable, and, for the avoidance of doubt, not the Reorganized EFH Debtors or the Reorganized EFIH Debtors), subject to the limitations described in Article V.C of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and nonbankruptcy law. As such, the Plan provides that the EFH/EFIH Debtors, as applicable, will cure, or provide adequate assurance that they will promptly cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code, as applicable. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

> **d. Section 1129(a)(2)—Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code.**

44. The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

45. The EFH/EFIH Debtors and their agents solicited votes to accept or reject the Plan after the Court approved the adequacy of the EFH Disclosure Statement, pursuant to section 1125(a) of the Bankruptcy Code and the EFH Disclosure Statement Order.

46.    The EFH/EFIH Debtors and their agents (including the Disbursing Agent) have solicited and tabulated votes on the Plan and they and the Plan Sponsor have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e), and in a manner consistent with the applicable provisions of the EFH Disclosure Statement Order, the EFH Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, with respect to the EFH/EFIH Debtors and Disbursing Agent, the exculpation provisions set forth in Article VIII.E of the Plan.

47.    The EFH/EFIH Debtors, the Reorganized EFH/EFIH Debtors, the Plan Sponsor, and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

e.    **Section 1129(a)(3)—Proposal of Plan in Good Faith.**

48.    The EFH/EFIH Debtors have proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The EFH/EFIH Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the EFH Disclosure Statement, the hearing on the EFH Disclosure Statement, and the record of the EFH Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

RLF1 18943815v.1

49.     The Plan is the product of good faith, arm's-length negotiations by and among the EFH/EFIH Debtors, the EFH/EFIH Debtors' disinterested directors and managers, the Plan Sponsor, the EFH/EFIH Committee, the Supporting EFIH Unsecured Creditors, the parties to the EFIH Settlement Agreement, the Debtors' prepetition equity sponsors, and certain of the Debtors' other stakeholders.  The Plan itself and the process leading to its formulation both provide independent evidence of the EFH/EFIH Debtors' and such other parties' good faith, serve the public interest, and assure fair treatment of Holders of Claims against and Interests in such Debtors.  Consistent with the overriding purpose of chapter 11, the Debtors filed the Chapter 11 Cases, and the EFH/EFIH Debtors proposed the Plan (and Merger Agreement), with the legitimate purpose of allowing the EFH/EFIH Debtors to maximize stakeholder value. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### f.      Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable.

50.     Subject to the EFIH Secureds Settlement Approval Order, any payment made or to be made by the EFH/EFIH Debtors, or by a person issuing securities or acquiring property under the Plan as it relates to the EFH Debtors or the EFIH Debtors, for services or costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable.  Accordingly, the Plan satisfies the requirements of section 1129(a)(4).

### g.      Section 1129(a)(5)—Disclosure of Directors and Officers and Consistency with the Interests of Creditors and Public Policy.

51.     To the extent not disclosed in the EFH Plan Supplement, the identities of the Reorganized EFH/EFIH Debtors' directors and officers shall be determined in accordance with the New Organizational Documents.  Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

RLFI 18943815v.1

**h.     Section 1129(a)(6)—Rate Changes.**

52.     The Plan does not provide for any rate changes subject to the jurisdiction of any governmental regulatory commission.   Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**i.     Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

53.     The evidence in support of the Plan that was proffered or adduced at the EFH Confirmation Hearing, and the facts and circumstances of the Chapter 11 Cases, establishes that each Holder of Allowed Claims or Interests in Classes A1-A15 and Classes B1-B10 will recover as much or more value under the Plan on account of such Claim or Interest, as of the EFH Effective Date, than the amount such Holder would receive if the EFH/EFIH Debtors were liquidated on the EFH Effective Date under chapter 7 of the Bankruptcy Code.   As a result, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**j.     Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Impaired Class; Deemed Rejecting Classes.**

54.     The Plan is conclusively presumed to be accepted by the Deemed Accepting Classes, and the Plan was accepted by each of the Voting Classes.   Because the Plan has not been accepted by the Deemed Rejecting Classes, however, the Debtors seek Confirmation of the Plan under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code.   Thus, although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.   As a result, the Plan satisfies the requirements of section 1129(b).

RLF1 18943815v.1

**k.    Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

55.    The treatment of 2017 EFIH First Lien DIP Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**l.    Section 1129(a)(10)—Acceptance by at Least One Impaired Class.**

56.    As set forth in the EFH Voting Report, all of the Voting Classes have voted to accept the Plan. As such, there is at least one Class of Claims that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code). Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**m.    Section 1129(a)(11)—Feasibility of the Plan.**

57.    The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at or before the EFH Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; and (d) establishes that the EFH/EFIH Debtors will have sufficient funds available to meet their obligations under the Plan—including sufficient amounts of Cash to reasonably ensure payment of, among other Allowed Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims Against the EFH Debtors, Allowed Professional Fee Claims, and other expenses in accordance with the terms of the Plan and section 507(a) of

27

the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**n.    Section 1129(a)(12)—Payment of Statutory Fees.**

58.    Article XII.C of the Plan provides that all fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Court at the EFH Confirmation Hearing in accordance with section 1128 of the Bankruptcy Code, will be paid by the applicable EFH/EFIH Debtor on the EFH Effective Date, and after the EFH Effective Date such fees shall be paid by the Disbursing Agent, at the direction of the EFH Plan Administrator Board, from the EFH/EFIH Cash Distribution Account for each quarter (including any fraction of a quarter) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**o.    Section 1129(a)(13)—Retiree Benefits.**

59.    Pursuant to section 1129(a)(13) of the Bankruptcy Code, and as provided in Article IV.O of the Plan and subject to the terms therein, the Reorganized EFH/EFIH Debtors, as applicable, will continue to pay all obligations on account of retiree benefits (as such term is used in section 1114 of the Bankruptcy Code) on and after the EFH Effective Date in accordance with the Plan and applicable law. As a result, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

60.    Further, the EFH Non-Qualified Benefit Plans shall be terminated effective on or before the EFH Effective Date, and any Allowed Claims arising from the termination of such EFH Non-Qualified Benefit Plans shall be treated and satisfied in accordance with Article III.B.8 of the Plan in a manner consistent with Internal Revenue Code Section 409A and the regulations promulgated thereunder and satisfied on the EFH Effective Date (or as soon thereafter as reasonably practicable). That certain split-dollar life insurance plan, amended and restated as of

28

May 20, 2005, and as may be amended, modified, or restated from time to time (the "EFH Split-Dollar Plan"), shall be terminated on or before the EFH Effective Date, and any amounts that, under the terms of the EFH Spilt-Dollar Plan, would be paid to or recouped by, EFH Corp. on account of such termination shall be paid: (i) to the EFH Debtors, in the event that such amounts are paid to or recouped by EFH Corp. either prior to or upon the EFH Effective Date, or (ii) to Reorganized EFH, in the event that such amounts are paid to or recouped by EFH Corp. after the EFH Effective Date.

    **p.**    **Section 1129(a)(14), (15), and (16)—Domestic Support Obligations, Individuals, and Nonprofit Corporations**

61.    The EFH/EFIH Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations. Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Plan.

    **q.**    **Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Class.**

62.    Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes. As a result, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Thus, the Plan may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied. After entry of the EFH Confirmation Order and upon the occurrence of the EFH Effective Date, the Plan shall be binding upon the Deemed Rejecting Classes, and the Claims in such Classes shall be canceled and released.

    **r.**    **Section 1129(c)—Only One Plan.**

63.    Other than the Plan (including previous versions thereof), no plan has been filed in the Chapter 11 Cases of the EFH/EFIH Debtors, except for plans that have been previously

withdrawn.   Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

> **s.**   **Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act.**

64.   No Governmental Unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.   As evidenced by its terms, the principal purpose of the Plan is not such avoidance.   Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

> **t.**   **Section 1129(e)—Not Small Business Cases.**

65.   The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

> **u.**   **Satisfaction of Confirmation Requirements.**

66.   Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

> **v.**   **Good Faith.**

67.   The EFH/EFIH Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the EFH/EFIH Debtors' Estates for the benefit of their stakeholders.   The Plan accomplishes this goal.   Accordingly, the EFH/EFIH Debtors and the Reorganized EFH/EFIH Debtors, as applicable, have been, are, and will continue acting in good faith if they proceed to: (a) consummate the Plan (including consummation of the Merger Agreement) and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this EFH Confirmation

RLF1 18943815v.1

Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

**w.**     **Conditions to EFH Effective Date.**

68.     The Plan shall not become effective unless and until the conditions set forth in Article IX.D of the Plan have been satisfied or waived pursuant to Article IX.E of the Plan.

**x.**     **Implementation.**

69.     All documents and agreements necessary to implement the Plan, including the Merger Agreement and those contained or summarized in the EFH Plan Supplement (including the Tax Matters Agreement and the Separation Agreement, which, for the avoidance of doubt, were approved with respect to the EFH/EFIH Debtors pursuant to the TCEH Confirmation Order), and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The Plan Sponsor is authorized and the EFH/EFIH Debtors and Reorganized EFH/EFIH Debtors, as applicable, are authorized and directed to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby, in all cases consistent with the terms of the Plan and the Merger Agreement.

70.     The terms of the Plan, including the EFH Plan Supplement and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, or executed or to be executed in connection with the transactions contemplated by the Plan, (including the Tax Matters Agreement and the Separation Agreement, which, for the avoidance of doubt, were approved with respect to the EFH/EFIH Debtors pursuant to the TCEH Confirmation Order), and all amendments and modifications of any of the foregoing made pursuant to the provisions of the

31

Plan governing such amendments and modifications are incorporated by reference, and approved in all respects, and constitute an integral part of this EFH Confirmation Order.

**y.    Vesting of Assets.**

71.    Except as otherwise provided in the Plan, on the EFH Effective Date, all property in each EFH Debtor Estate and EFIH Debtor Estate, all Causes of Action, and all property acquired by each EFH/EFIH Debtor pursuant to the Plan shall vest in each applicable Reorganized EFH/EFIH Debtor, free and clear of all Liens, Claims, charges, Interests, or other encumbrances.  Except as otherwise provided in the Plan, on and after the EFH Effective Date, the EFH Plan Administrator Board and each of the Reorganized EFH/EFIH Debtors may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**z.    Retention of Jurisdiction.**

72.    The Court properly retains jurisdiction over the matters set forth in Article XI and other applicable provisions of the Plan.

## II. ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

73.    This EFH Confirmation Order confirms the Plan and is effective as of the date hereof.

74.    This EFH Confirmation Order approves the EFH Plan Supplement, including the documents contained therein as may be amended through and including the EFH Effective Date in accordance with and as permitted by the Plan and the Merger Agreement.

32

75.    All Holders of Claims and Interests in the Voting Classes that voted to accept the Plan are conclusively presumed to have accepted the Plan as modified.

76.    The Plan (including the EFH Plan Supplement and all documents or agreements included therein) and this EFH Confirmation Order will be effective and binding on all parties in interest, including: (a) the Debtors; (b) the TCEH Committee; (c) the EFH/EFIH Committee; (d) the Original Plan Sponsors; (e) NextEra; (f) the Plan Sponsor; and (g) all Holders of Claims and Interests.

77.    The failure to include or refer to any particular article, section, or provision of the Plan, the EFH Plan Supplement, or any related documents, agreements, or exhibits does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the EFH Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

A.    **Objections.**

78.    To the extent that any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled prior to entry of this EFH Confirmation Order, are not cured or resolved by the relief granted in this EFH Confirmation Order, or have not been otherwise resolved as stated by the EFH/EFIH Debtors on the record of the EFH Confirmation Hearing, all such objections to the EFH Confirmation Order are overruled on the merits.

B.    **Findings of Fact and Conclusions of Law.**

79.    The findings of fact and the conclusions of law set forth in this EFH Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the EFH Confirmation Hearing in relation to

EFH Confirmation, including the EFH Confirmation Ruling, are hereby incorporated into this EFH Confirmation Order. In addition, all findings of fact and conclusions of law set forth in the *Order Granting The Motion of Energy Future Holdings Corp.,* et al., *to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 7243] are incorporated into this EFH Confirmation Order. To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such. To the extent any finding of fact or conclusion of law set forth in this EFH Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the EFH Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

## C.    The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.

80.    The following releases, injunctions, and exculpations, and any related provisions set forth in Article VIII of the Plan, are hereby approved, authorized and ordered in their entirety:

a.    **Releases by the Debtors.**

**In addition to any release provided in the Settlement Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the EFH Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized EFH/EFIH Debtors, and their Estates from any and all Claims and Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, or the Disinterested Directors Settlement, as well as all other Claims and Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that the Debtors, the Reorganized EFH/EFIH Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in-or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the Master Separation Agreement dated December 12, 2001, the TCEH Credit Agreement, the TCEH First Lien Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), the TCEH First**

34

Lien Intercreditor Agreement, the Liability Management Program, the Tax Sharing Agreements, the 2007 Acquisition, the Management Agreement, the 2009 amendment to the TCEH Credit Agreement, the 2011 Amend and Extend Transactions, the 2005 Oncor Transfer, the 2013 Revolver Extension, the Luminant Makewhole Settlement, the Tax and Interest Makewhole Agreements, the TCEH Intercompany Notes, the Shared Services, any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or Filing of the Terminated Restructuring Support Agreement, the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFH/EFIH Committee Settlement, the EFIH Settlement Agreement, the EFIH First Lien Principal Settlement, the Original Confirmed Plan, the NextEra Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the EFH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFH/EFIH Committee Settlement, the EFIH Settlement Agreement, the PIK Settlement (whether terminated pursuant to its terms or otherwise) and any direction taken by the EFIH Unsecured Notes Trustee in connection therewith (prior to the date of termination), the Terminated Restructuring Support Agreement, the EFH Disclosure Statement, the TCEH Disclosure Statement, the Plan, the Transaction Agreements, the DIP Facilities, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the EFH Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-EFH Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any of the EFH/EFIH Debtors' rights arising under any Assumed Executory Contracts and Leases assumed by Reorganized EFH or Reorganized EFIH on the EFH Effective Date (or pursuant to a separate Bankruptcy Court order).  Notwithstanding anything to the contrary in the foregoing, and for the avoidance of doubt, the TCEH Settlement Claim shall be treated, released, and discharged on the

35

EFH Effective Date.  Notwithstanding anything to the contrary in the foregoing, the claims and Causes of Action set forth in Section 6.12 of the parent disclosure letter delivered in connection with the NEE Merger Agreement shall not be released; *provided, however*, that such Claims and Causes of Action shall be subject to treatment pursuant to the Plan and shall be discharged as set forth in Article VIII.A of the Plan.  For the avoidance of doubt, the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, and Reorganized EFIH Debtors shall provide the release set forth in Article VIII.C of the Plan as of the EFH Effective Date; *provided, however*, that the releases provided by the EFH Debtors and Reorganized EFH Debtors on the one hand, to the EFIH Debtors and Reorganized EFIH Debtors on the other hand, (or vice versa) shall be subject to the satisfaction of any order that becomes a Final Order prior to the EFH Effective Date regarding allocations of (a) any Cash amounts owed by the EFH Debtors to the EFIH Debtors or (b) any Cash amounts owed by the EFIH Debtors to the EFH Debtors.

b.  Releases by Holders of Claims and Interests.

Except as otherwise provided in the Plan, as of the EFH Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized EFH/EFIH Debtor, and Released Party from any and all Claims and Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, or the Disinterested Directors Settlement, as well as all other Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the Master Separation Agreement dated December 12, 2001, the TCEH Credit Agreement, the TCEH First Lien Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), the TCEH First Lien Intercreditor Agreement, the Liability Management Program, the Tax Sharing Agreements, the 2007 Acquisition, the Management Agreement, the 2009 amendment to the TCEH Credit Agreement, the 2011 Amend and Extend Transactions, the 2005 Oncor Transfer, the 2013 Revolver Extension, the Luminant Makewhole Settlement, the Tax and Interest Makewhole Agreements, the TCEH Intercompany Notes, the Shared Services, any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or Filing of the Terminated Restructuring Support Agreement, the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFH/EFIH Committee Settlement, the EFIH Settlement Agreement, the EFIH First Lien Principal Settlement, the Original

36

Confirmed Plan, the NextEra Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the EFH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFIH Settlement Agreement, the EFH/EFIH Committee Settlement, the PIK Settlement (whether terminated pursuant to its terms or otherwise) and any direction taken by the EFIH Unsecured Notes Trustee in connection therewith (prior to termination), the Terminated Restructuring Support Agreement, the EFH Disclosure Statement, the TCEH Disclosure Statement, the Plan, the Transaction Agreements, the DIP Facilities, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the EFH Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, (ii) any post-EFH Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (iii) claims or Causes of Action asserted by any Holder of Allowed Class C3 Claims under the TCEH Confirmed Plan against one or more Holders of Allowed Class C3 Claims under the TCEH Confirmed Plan (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute; and (iv) the claims and Causes of Action set forth in Section 6.12 of the parent disclosure letter delivered in connection with the NEE Merger Agreement; *provided, however,* that such claims and Causes of Action set forth in Section 6.12 of such parent disclosure letter delivered in connection with the NEE Merger Agreement shall be subject to treatment pursuant to the Plan and shall be discharged as set forth in Article VIII.A of the Plan.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any claims or Causes of Action against one or more of NextEra and its current

37

and former subsidiaries (the "<u>NEE Released Parties</u>") relating to the pursuit of approval of the transactions contemplated in the Original Confirmed Plan (including, for the avoidance of doubt, claims or Causes of Action regarding the effect of the filing of Docket No. 7028 on approval of the transactions contemplated in the Original Confirmed Plan) or claims or Causes of Action that may be brought by one or more of the NEE Released Parties against any party who brings a claim or Cause of Action against the NEE Released Parties relating to the pursuit of approval of the transactions contemplated in the Original Confirmed Plan; *provided, however,* for the avoidance of doubt, that any releases set forth above solely to the extent applicable pursuant to the terms set forth above, shall apply to the NEE Released Parties' current and former directors, managers, officers, individual equity holders (regardless of whether such interests are held directly or indirectly), attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such. Notwithstanding anything to the contrary in the foregoing, and for the avoidance of doubt, the TCEH Settlement Claim shall be treated, released, and discharged on the EFH Effective Date. For the avoidance of doubt, (i) the Releasing Parties provided the release set forth in Article VIII.D of the Plan for all Claims and Causes of Action that relate to the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties Company, as of the TCEH Effective Date; and (ii) the Releasing Parties shall provide the release set forth in Article VIII.D of the Plan for all Claims and Causes of Action that relate to the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, or Reorganized EFIH Debtors as of the EFH Effective Date; *provided* that any and all Intercompany Claims (other than the TCEH Settlement Claim) held by or held against the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties Company, were released as of the TCEH Effective Date.

c.  **Exculpation.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Terminated Restructuring Support Agreement and related prepetition transactions, the EFH Disclosure Statement, the TCEH Disclosure Statement, the Plan, the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFIH Settlement Agreement, the EFH/EFIH Committee Settlement, the Original Confirmed Plan, the NextEra Plan, the Transaction Agreements, or any Restructuring

38

Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the EFH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the EFH Disclosure Statement, the TCEH Disclosure Statement, the Plan, the Original Confirmed Plan, the NextEra Plan, the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFIH Settlement Agreement, the EFH/EFIH Committee Settlement, the Transaction Agreements, or the DIP Facilities, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. For the avoidance of doubt, notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any (i) claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, or (ii) claims or Causes of Action asserted by any Holder of Allowed Class C3 Claims under the TCEH Confirmed Plan against one or more Holders of Allowed Class C3 Claims under the TCEH Confirmed Plan (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute. For the avoidance of doubt, the Exculpated Parties that include or are related to the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, and Reorganized EFIH Debtors shall receive the exculpation set forth in Article VIII.E of the Plan as of the EFH Effective Date.

39

**d. Injunction.**

In addition to any injunction provided in the Settlement Order, except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the EFH Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.C or Article VIII.D of the Plan, shall be discharged pursuant to Article VIII.A of the Plan, or are subject to exculpation pursuant to Article VIII.E of the Plan, are permanently enjoined, from and after the EFH Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized EFH/EFIH Debtors, or the Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan, including those related to the PIK Settlement (whether terminated pursuant to its terms or otherwise) and any direction taken by the EFIH Unsecured Notes Trustee in connection therewith (prior to the date of termination). Notwithstanding anything to the contrary in the foregoing, the Plan shall not enjoin (a) any party from pursuing the claims and Causes of Action set forth in Section 6.12 of the parent disclosure letter delivered in connection with the NEE Merger Agreement; *provided, however*, that such Claims and Causes of Action shall be subject to treatment pursuant to the Plan and shall be discharged as set forth in Article VIII.A of the Plan, (b) the TCEH First Lien Creditor Allocation Disputes, or any claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from, or in connection with, the TCEH First Lien Creditor Allocation Dispute, or (c) the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, or claims or Causes of Action asserted in the Marathon Delaware Action (in accordance with and as that term is defined in the

*Stipulation and Consent Order Regarding Limited Objection of Marathon Asset Management, L.P., to Confirmation of Debtors' Fifth Amended Plan of Reorganization*, **dated November 10, 2015 [D.I. 6932]), by any Holder of Allowed Class C3 Claims under the TCEH Confirmed Plan against one or more Holders of Allowed Class C3 Claims under the TCEH Confirmed Plan (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.**

The foregoing releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan were approved and authorized in their entirety as they relate to the TCEH Debtors and the EFH Shared Services Debtors pursuant to the TCEH Confirmation Order and effective as of the TCEH Effective Date.

**D.      Federal Communications Commission.**

81.      No provision in the Plan or this EFH Confirmation Order relieves the Reorganized EFH Debtors or the Reorganized EFIH Debtors from their obligations to comply with the Communications Act of 1934, as amended, and the rules, regulations, and orders promulgated thereunder by the Federal Communications Commission ("FCC"). No transfer of control to the Reorganized EFH Debtors or the Reorganized EFIH Debtors of any federal license or authorization issued by the FCC shall take place prior to the issuance of FCC regulatory approval for such transfer of control pursuant to applicable FCC regulations. The FCC's rights and powers to take any action pursuant to its regulatory authority over the transfer of control to the Reorganized EFH Debtors or the Reorganized EFIH Debtors, including imposing any regulatory conditions on such transfer, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority.

**E.      Post-EFH Confirmation Notices, Professional Compensation, and Bar Dates.**

82.      In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven Business Days after the EFH Effective Date, the EFH Plan Administrator Board shall cause

notice of EFH Confirmation and occurrence of the EFH Effective Date, substantially in the form attached hereto as **Exhibit B** (the "Notice of EFH Confirmation"), to be served by United States mail, first-class postage prepaid, by hand, or by overnight courier service to all parties served with the EFH Confirmation Hearing Notice; *provided, however,* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the EFH/EFIH Debtors mailed an EFH Confirmation Hearing Notice or other notice in these Chapter 11 Cases but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless such Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.

83.    To supplement the notice procedures described in the preceding sentence, no later than five Business Days after the EFH Effective Date, the EFH Plan Administrator Board shall cause the Notice of EFH Confirmation, modified for publication, to be published on one occasion in *The Wall Street Journal, USA Today, The Dallas Morning News, Houston Chronicle, Corpus Christi Caller-Times, Fort Worth Star-Telegram,* and *Waco Tribune-Herald.* The Notice of EFH Confirmation is approved in all respects, and mailing and publication of the Notice of EFH Confirmation in the time and manner set forth herein will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules, including Bankruptcy Rules 2002 and 3020(c). No further notice is necessary. All expenses associated with the Notice of EFH Confirmation shall be paid by the EFH Plan Administrator Board from the EFH/EFIH Cash Distribution Account.

84.    The Notice of EFH Confirmation will have the effect of an order of the Court, will constitute sufficient notice of the entry of the EFH Confirmation Order to filing and

42

recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

**F.     Notice of Subsequent Pleadings.**

85.     Except as otherwise provided in the Plan or in this EFH Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the EFH Effective Date will be limited to the following parties: (a) the U.S. Trustee; (b) counsel to the TCEH First Lien Ad Hoc Committee; (c) counsel to the Plan Sponsor; (d) counsel to the Supporting EFIH Unsecured Creditors; (e) counsel to the EFH Plan Administrator Board, (f) counsel to the EFIH Unsecured Notes Trustee, (g) counsel to the EFH Notes Trustee, and (h) any party known to be directly affected by the relief sought by such pleadings.

**G.     Retention of Jurisdiction.**

86.     This Court retains jurisdiction over the matters set forth in Article XI and other applicable provisions of the Plan, including in order to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, and including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of a Debtor for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the Restructuring Transactions, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases to the extent allowable under sections 346, 505, and 1146.

**H.     Reports.**

87.     After the EFH Effective Date, the EFH/EFIH Debtors have no obligation to file with the Court or serve on any parties reports that the EFH/EFIH Debtors were obligated to file under the Bankruptcy Code or a Court order, including monthly operating reports (even for those periods for which a monthly operating report was not filed prior to the EFH Effective Date),

ordinary course professional reports, and monthly or quarterly reports for Professionals; *provided, however,* that the EFH/EFIH Debtors and EFH Plan Administrator Board, as applicable, will comply with the U.S. Trustee's quarterly reporting requirements. Through the EFH Effective Date, the EFH/EFIH Debtors will file such reports as are required under the Local Bankruptcy Rules.

## I.     Effectiveness of All Actions.

88.     Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the EFH Effective Date pursuant to the EFH Confirmation Order, without further application to, or order of the Court, or further action by the EFH/EFIH Debtors and/or the Reorganized EFH/EFIH Debtors and their respective directors, officers, members, or stockholders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

## J.     Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.

89.     This EFH Confirmation Order together with the order approving the Merger Agreement and the Sempra Plan Support Agreement shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the EFH Plan Supplement, the EFH Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

## K.     Plan Implementation Authorization.

90.     Subject to the consent of the Plan Sponsor, the EFH Plan Administrator Board, the EFH/EFIH Debtors, or the Reorganized EFH/EFIH Debtors, as the case may be, and their

44

respective directors, officers, members, agents, and attorneys, financial advisors, and investment bankers are authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document related to the Plan, as the same may be modified, amended, and supplemented, and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Court.  To the extent applicable, any or all such documents shall be accepted upon presentment by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.  Pursuant to section 303 of the General Corporation Law of the State of Delaware and any comparable provision of the business corporation laws of any other state, as applicable, no action of the boards of directors (or similar governing body, or their equity owners or managing member, as applicable) of the EFH/EFIH Debtors or the Reorganized EFH/EFIH Debtors  will be required to authorize such Debtors or Reorganized Debtors, as applicable, to enter into, execute and deliver, adopt or amend, as the case may be, any such contract, instrument, release, or other agreement or document related to the Plan, and following the EFH Effective Date, each of the documents related to the Plan will be a legal, valid, and binding obligation of such Debtors or Reorganized Debtors, as applicable, enforceable against such Debtors and Reorganized Debtors in accordance with the respective terms thereof.

**L.    Binding Effect.**

91.    On the date of and after entry of this EFH Confirmation Order, subject to the occurrence of the EFH Effective Date, and subject to the provisions of this EFH Confirmation Order, the Plan, and the EFH Plan Supplement shall bind the Debtors, their estates, any party

45

seeking to act on behalf of, or in respect of, the Debtors or the Debtors' estates, and any Holder of a Claim against or Interest in the EFH Debtors or the EFIH Debtors and such Holder's respective successor and assigns, regardless of whether:  (a) such Holder's Claim or Interest is Impaired under the Plan; (b) such Holder has accepted the Plan; (c) such Holder failed to vote to accept or reject the Plan or voted to reject the Plan; (d) such Holder is entitled to a distribution under the Plan; (e) such Holder will receive or retain any property or interests in property under the Plan; or (f) such Holder has filed a Proof of Claim in the Chapter 11 Cases.  For the avoidance of doubt, the Tax Matters Agreement and the Separation Agreement became binding upon the Debtors, their estates, and any party seeking to act on behalf of, or in respect of, the Debtors or the Debtors' estates on the TCEH Effective Date pursuant to the TCEH Confirmation Order.  The Plan and its related documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and its related documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law. Notwithstanding anything in this paragraph, any determination made by this Court in the Confirmation Proceedings (as defined in the Stipulation) with respect to the forecasted value of asbestos-related claims asserted against the EFH/EFIH Debtors shall not be determinative of, or serve as a cap or floor on, the amounts due on account of any such claim(s), and shall not otherwise bind the holders of asbestos-related claims, including the Asbestos Objectors, or any of the Reorganized EFH Debtors in connection with resolution of any asbestos claim(s) asserted against the EFH/EFIH Debtors or any of the Reorganized EFH Debtors or in any proceeding to estimate the Debtors' aggregate asbestos liability under section 502(c) of the Bankruptcy Code.

92.     Furthermore, notwithstanding anything to the contrary in this EFH Confirmation Order, the Plan, or any related agreements or otherwise (including any provisions in any of the foregoing that also include the words "notwithstanding anything to the contrary" or similar references), upon the occurrence of the EFH Effective Date (a) none of (i) the Plan Sponsor; (ii) EFH Merger Sub; (iii) the Reorganized EFH/EFIH Debtors; (iv) any other entity acquired, directly or indirectly, by the Plan Sponsor pursuant to the terms of, or as a result of, the Plan, the Merger Agreement, or any related agreement; or (v) with respect to each of the foregoing Entities in clauses (i) through (iv), such Entity and its current and former Affiliates, shall have any liability or obligation with respect to any Administrative Claims, 2017 EFIH First Lien DIP Claims or any other Claims, other than (A) Class A3 - Legacy General Unsecured Claims Against the EFH Debtors, (B) Class A12 Claims of EFH Corp., LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. against one or more of EFH Corp., LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc., and (C) certain property tax Claims secured by liens on real property in an amount not to exceed $100,000 (as set forth in the Merger Agreement), (b) such Claims (other than those set forth in subclauses (A)-(C) above) shall be paid only from the Accessible Account Deposit (as defined in the Merger Agreement) and the Settlement Payment (as defined in the EFH/Sempra Settlement Order [D.I. 12631]), and (c) all Entities asserting or holding a Claim are permanently enjoined from asserting or otherwise taking any action to collect or enforce or to seek or obtain any remedy with respect to any such Claims against the entities listed in (a)(i)-(v) above.

93.     On the EFH Effective Date, all 2017 EFIH First Lien DIP Claims shall be satisfied, in full, in Cash.  Any 2017 EFIH First Lien DIP Contingent Obligations shall survive

the EFH Effective Date and be paid in full from the EFH/EFIH Cash Distribution Account in accordance with the Plan.

## M.    Directors and Officers of the Reorganized EFH/EFIH Debtors.

94.    The Reorganized EFH/EFIH Debtors' initial directors and officers, to the extent known, have been disclosed prior to the EFH Confirmation Hearing. To the extent that any director or officer has not yet been determined, such determination will be made in accordance with the New Organizational Documents and such appointment is hereby approved.

## N.    Release of Liens.

95.    Except as otherwise specifically provided in the Plan and except for (a) any Other Secured Claim Against the EFH Debtors that the EFH Debtors elect to Reinstate in accordance with Article III.B.1 (subject to the consent of the Plan Sponsor) and, with respect to any Allowed Other Secured Claim Against the EFH Debtors asserted by the Taxing Units that the EFH Debtors shall Reinstate on the EFH Effective Date until such Allowed Other Secured Claim Against the EFH Debtors is satisfied in the full Allowed amount, and (b) any Other Secured Claim Against the EFIH Debtors that the EFIH Debtors elect to Reinstate in accordance with Article III.B.16 (subject to the consent of the Plan Sponsor), on the EFH Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the EFH/EFIH Debtors or their Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized EFH/EFIH Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors. Notwithstanding anything to the contrary in the Plan, the Liens on the collateral securing the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, as applicable, will be released on the EFH Effective Date

48

following payment in full in Cash of the Allowed EFIH First Lien Claims and Allowed EFIH Second Lien Claims accrued as of such payment date and the funding of the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve and the EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve (each as applicable and as defined in the EFIH Secureds Settlement Approval Order).  For the avoidance of doubt, solely for purposes of determining whether any such Claims are Secured Claims entitled to treatment as Class B3 or Class B4 Claims (rather than Unsecured Claims entitled to treatment as Class B5 Claims and Class B6 Claims), the secured status of such Claims shall be determined as if such Liens had not been released on the EFH Effective Date and remained in effect to the same extent they did immediately before the EFH Effective Date.

96.    To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan (or any agent for such Holder) has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as reasonably practicable on or after the EFH Effective Date, such Holder (or the agent for such Holder) shall take any and all steps reasonably requested by the Debtors, the Reorganized EFH/EFIH Debtors, or any administrative agent under the Exit Facility Documents that are reasonably necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized EFH/EFIH Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

## O.    Injunctions and Automatic Stay.

97.    Unless otherwise provided in the Plan or in this EFH Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court entered as of the EFH Confirmation Date (excluding

any injunctions or stays contained in the Plan or the EFH Confirmation Order) shall remain in full force and effect through and including the EFH Effective Date. All injunctions or stays contained in the Plan or the EFH Confirmation Order shall remain in full force and effect in accordance with their terms.

**P.    Cancelation of Existing Securities and Agreements.**

98.    Except as otherwise provided in the Plan, on and after the EFH Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims or Interests, including Other Secured Claims, EFIH First Lien Note Claims, EFIH Second Lien Note Claims, EFIH Unsecured Note Claims, EFH Legacy Note Claims, EFH LBO Note Primary Claims, EFH LBO Note Guaranty Claims, EFH Unexchanged Note Claims, EFH Swap Claims, EFH Series N Note Claims, and 2017 EFIH First Lien DIP Claims, shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or a Holder to take further action with respect to any note(s) or security and the obligations of the Debtors or Reorganized Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged, and the Indenture Trustees, the Original EFIH First Lien DIP Agent, and the 2017 EFIH First Lien DIP Agent shall be released from all duties thereunder; *provided, however*, that (a) Interests in Debtors EFIH, LSGT Gas Company, LLC, EECI, Inc., EEC Holding, Inc., and LSGT SACROC, Inc. shall be Reinstated; and (b) notwithstanding Confirmation or Consummation, any such indenture or agreement that governs the rights of the Holder of a Claim shall, subject to the terms of the Plan and, if applicable, the EFIH Settlement Agreement, continue in effect solely for purposes of: (1) allowing Holders of Allowed Claims to receive distributions under the Plan and, as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, under EFIH Secureds Settlement Approval Order; (2) allowing the Indenture

50

Trustees or such other Disbursing Agent pursuant to the EFH Confirmation Order to make the distributions in accordance with the Plan (if any), as applicable, and, as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, under the EFIH Secureds Settlement Approval Order; (3) preserving any rights of the Original EFIH First Lien DIP Agent, the 2017 EFIH First Lien DIP Agent, or the Indenture Trustees to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the relevant Holders under, as applicable, the Plan, the Original EFIH First Lien DIP Credit Agreement, the 2017 EFIH First Lien DIP Credit Agreement, the EFH Note Indentures, the EFH Series N Note Indenture, the EFIH First Lien Note Indentures, the EFIH Second Lien Note Indenture, and the EFIH Unsecured Note Indentures, including any rights to priority of payment and/or to exercise charging liens, including retention of appropriate reserves, and, as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, under the EFIH Secureds Settlement Approval Order; (4) allowing the Indenture Trustees, the Original EFIH First Lien DIP Agent, and the 2017 EFIH First Lien DIP Agent to enforce any obligations owed to each of them under the Plan and take any actions contemplated of them by the Plan; and (5) allowing the Indenture Trustees, the Original EFIH First Lien DIP Agent, and the 2017 EFIH First Lien DIP Agent to appear in the Chapter 11 Cases or any proceeding in which they are or may become a party; *provided, further, however*, that, without prejudice to the right of any Holder of an Allowed Claim to the rights of such party to receive distributions under the Plan or the EFIH Settlement Agreement, the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the EFH Confirmation Order, or the Plan, or result in any expense or liability to the Debtors, Reorganized Debtors, as applicable, or the Plan Sponsor. For the avoidance of doubt, the TCEH First Lien Intercreditor Agreement, the TCEH Credit Agreement, and the

51

TCEH First Lien Note Indenture remain in effect in accordance with the terms of the TCEH Plan and TCEH Confirmation Order solely to the extent necessary to preserve the TCEH First Lien Creditor Allocation Disputes and the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, and any (a) claims or Causes of Action by the TCEH First Lien Notes Trustee, TCEH First Lien Agent, or Holders of TCEH First Lien Claims against other Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising in connection with the TCEH First Lien Creditor Allocation Disputes, or (b) claims or Causes of Action by any Holder of Allowed Class C3 Claims under the TCEH Confirmed Plan against any other Holder of Allowed Class C3 Claims under the TCEH Confirmed Plan (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) in the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute (or any claims, Causes of Action or defenses of any other party to such dispute). All capitalized terms in the preceding sentence shall have the definitions ascribed to them in the TCEH Plan. Notwithstanding anything to the contrary in the foregoing provisions of Article IV.G of the Plan, (x) the cancelation and discharge of the EFIH First Lien Note Indentures, the EFIH Second Lien Note Indenture, and the EFIH Collateral Trust Agreement, and all other notes, instruments, certificates, agreements, mortgages, security documents, and other documents evidencing any Claims or rights under the EFIH First Lien Notes or the EFIH Second Lien Notes shall be limited solely to the Debtors and the Reorganized EFH/EFIH Debtors and shall not affect the rights of the EFIH First Lien Notes Trustee or Holders of the EFIH First Lien Note Claims vis-à-vis any other party, including the EFIH Second Lien Notes Trustee and Holders of the EFIH Second Lien Note Claims, or vice versa; and (y) for the avoidance of doubt, the EFIH First Lien Note

Indentures, the EFIH Second Lien Note Indenture, the EFIH Collateral Trust Agreement, and all other notes, instruments, certificates, agreements, mortgages, security documents, and other documents evidencing any Claims or rights under the EFIH First Lien Notes or the EFIH Second Lien Notes shall remain in effect (and the EFIH First Lien Notes Trustee and the EFIH Second Lien Notes Trustee shall remain as trustee, and registrar) for the purposes set forth in (1)-(5) of this section, as applicable.

**Q.      Cooperation by the DTC.**

99.      The Depository Trust Company ("DTC"), and any participants and intermediaries, shall fully cooperate and facilitate distributions, as applicable, pursuant to the Plan, including to Holders of Claims in Classes A4, A5, A6, and B5.

**R.      Cooperation by the EFIH Unsecured Notes Trustee.**

100.      The EFIH Unsecured Notes Trustee is authorized to fully cooperate with the directives of the Holders of Claims against the EFIH Debtors under the EFIH Unsecured Notes.

**S.      Securities Law Exemption.**

101.      Pursuant to section 1145 of the Bankruptcy Code, the issuance of the New HoldCo Equity Interests is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration before the offering, issuance, distribution, or sale of such securities. Each of the New HoldCo Equity Interests issued under the Plan (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and (b) is freely tradable and transferable by any initial recipient thereof that (i) at the time of transfer, is not an "affiliate" of Reorganized EFH, Reorganized EFIH, the Plan Sponsor, or EFH Merger Sub, as the case may be, as defined in Rule 144(a)(1) under the Securities Act and has not been such an "affiliate" within 90 days of such

transfer, and (ii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

102.    The Reorganized EFH Common Stock and the New HoldCo Equity Interests will be issued without registration in reliance upon the exemption set forth in Section 4(a)(2) of the Securities Act and will be "restricted securities," as that term is defined in Rule 144 under the Securities Act.

103.    Should the Reorganized EFH Debtors or the Reorganized EFIH Debtors elect on or after the EFH Effective Date to reflect any ownership of the Reorganized EFH Common Stock through the facilities of the DTC, the Reorganized EFH Debtors and the Reorganized EFIH Debtors need not provide any further evidence other than the Plan or the EFH Confirmation Order with respect to the treatment of the Reorganized EFH Common Stock under applicable securities laws.

104.    The DTC shall be required to accept and conclusively rely upon the Plan and EFH Confirmation Order in lieu of a legal opinion regarding whether any of the Reorganized EFH Common Stock is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

105.    Notwithstanding anything to the contrary in the Plan, no entity (including, for the avoidance of doubt, the DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the Reorganized EFH Common Stock is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

**T.    Section 1146 Exemption.**

106.    Pursuant to, and to the fullest extent permitted by, section 1146 of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with, the Plan,

including, but not limited to: (1) the Restructuring Transactions; (2) the Reorganized EFH Common Stock; (3) the New HoldCo Equity Interests; (4) the assignment or surrender of any lease or sublease; and (5) the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the EFH Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

**U.    Professional Compensation and Reimbursement Claims.**

107.    Except as otherwise specifically provided in the Plan, from and after the EFH Effective Date, the EFH Plan Administrator Board shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Bankruptcy Court, pay in Cash from the EFH/EFIH Cash Distribution Account the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan incurred on or after the EFH Effective Date by (i) the EFH/EFIH Debtors or the Reorganized EFH/EFIH Debtors, in the manner prescribed by the allocation set forth in Article II.A.2(d) of the Plan and (ii) the EFH/EFIH Committee.

108.    Upon the EFH Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered to the EFH Plan Administrator Board, the Reorganized EFH Debtors, or the Reorganized EFIH Debtors after such date shall terminate, subject only to the

procedures set forth in the Interim Compensation Order, and the EFH Plan Administrator Board, the Reorganized EFH Debtors, and the Reorganized EFIH Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.   In addition, the EFH/EFIH Debtors, the EFH Plan Administrator Board, and the Reorganized EFH/EFIH Debtors (as applicable) are authorized to pay any and all professional fees as contemplated by and in accordance with the Plan, and the EFIH First Lien Final DIP Order; *provided*, *however*, that, for the avoidance of doubt, the Reorganized EFH Debtors and the Reorganized EFIH Debtors shall not be liable or otherwise responsible for the payment of any Professional Fee Claims.

109.    With respect to the payment of fees and expenses pursuant to Article IV.N. of the Plan asserted by the EFH Notes Trustee, the Court has found the EFH Notes Trustee to have made, in accordance with sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code, a substantial contribution in these cases, as set forth in the Confirmation Ruling (the "EFH Notes Trustee's Substantial Contribution Finding") and are hereby granted an Allowed Administrative Claim against EFH Corp., pursuant to sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code, for fees and expenses (including fees and expenses for legal counsel, financial advisors, consultants and other professionals) incurred through the EFH Effective Date in connection with the EFH Notes Trustee's Substantial Contribution Finding and that may be incurred in connection with the EFH Notes Trustee fulfilling its continuing obligations under the Plan, this Confirmation Order and any other order that may be entered by the Bankruptcy Court in connection therewith.   The Court also finds that the Supporting Creditors (as defined in the Sempra Plan Support Agreement) have made, in accordance with sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code, a substantial

56

contribution in these cases, as set forth in the Confirmation Ruling (the "Supporting Creditors' Substantial Contribution Finding"), and are hereby granted an Allowed Administrative Claim against EFIH, pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, in an aggregate amount of up to $35 million for fees and expenses (including fees and expenses for legal counsel, financial advisors, consultants and other professionals) incurred in connection with the Supporting Creditors' Substantial Contribution Finding and that may be incurred in connection with the Debtors' chapter 11 cases, which shall be payable to the Supporting Creditors in accordance with the procedures set forth in paragraphs 111 through 115 below; *provided*, that such grant of an Allowed Administrative Claim against EFIH is without prejudice to (a) the reallocation of such Allowed Administrative Claim as between EFH and EFIH pursuant to separate order of the Bankruptcy Court, or a stipulation between the Supporting Creditors and the applicable agents of the EFH Plan Administrator Board, or (b) the rights of the Supporting Creditors to seek entry of any such Order.  Notwithstanding anything in the Plan contrary, the EFH Notes Trustee's and the Supporting Creditors' Administrative Claims shall be limited to claims allowed under sections 503(b)(3)(D), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

110.    The Allowed Administrative Claim granted herein in favor of the Supporting Creditors shall be without prejudice to the Supporting Creditors' rights to later apply to this Court for allowance and payment of additional amounts as an administrative expense under sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code in connection with any fees and expenses (including fees and expenses for legal counsel, financial advisors, consultants and other professionals) incurred by Supporting Creditors from and after the EFH Confirmation Date (including after the EFH Effective Date) in making a substantial contribution in these cases,

RLF1 18943815v.1

which shall be payable to the Supporting Creditors in accordance with the procedures set forth in paragraphs 111 through 115 below. All parties' rights are reserved with respect to any such application filed by the Supporting Creditors, and any such additional substantial contribution application shall not be subject to the deadlines set forth in the Plan or EFH Confirmation Order with respect to requests for allowance or payment of Administrative Claims or Professional Fee Claims.

111.    The EFH Notes Trustee and the Supporting Creditors shall submit to the Debtors or the EFH Plan Administrator Board, as applicable, one or more short-form invoices setting forth such amounts and the period(s) during which such amounts were incurred and the parties to be paid (each such party, a "Requesting Party") on behalf of the EFH Notes Trustee and Supporting Creditors, as applicable. No later than the later of five business days after the Debtors' or EFH Plan Administrator Board's receipt of each such short-form invoice or the EFH Effective Date, the Debtors or EFH Plan Administrator Board, as applicable, shall pay to the applicable Requesting Party 80% of the requested fees and 100% of the requested expenses, which amounts shall be subject to disgorgement if and to the extent the Court determines that such requested fees and expenses are not reasonable.

112.    Within 45 days of receipt of payment, the applicable Requesting Party shall submit full invoices and LEDES data (a "Fee Request") to the Debtors, the EFH Plan Administrator Board, the U.S. Trustee, and the Fee Committee appointed in these Chapter 11 Cases (the "Fee Committee") in LEDES format (or, in the absence thereof, such other format as is mutually agreed among the applicable Requesting Party, the Debtors (or the EFH Plan Administrator Board, as applicable), the U.S. Trustee, and the Fee Committee).

113.    Following the Fee Committee's receipt of a Fee Request, within reasonable time periods, to be determined either by the Fee Committee and the relevant professionals or by the Court:

- (i) the Fee Committee shall send a confidential letter to the applicable Requesting Party regarding the Fee Committee's initial report and recommendation with respect to the applicable Fee Request;

- (ii) (a) the Fee Committee shall file with the Court a final report and recommendation ("Fee Committee Recommendation") with respect to such Fee Request and (b) the U.S. Trustee shall file with the Court any objection or comments it may have with respect to such Fee Request ("U.S. Trustee Objection");

- (iii) the applicable Requesting Party may file with the Court a response ("Fee Response") to such Fee Committee Recommendation or U.S. Trustee Objection; and

- (iv) the Court shall consider each Fee Request at the next omnibus hearing or at a scheduled Fee Committee hearing on Retained Professional fee applications.

114.    No later than the later of the EFH Effective Date and 10 days following the Court's ruling with respect to a Fee Request, the EFH Plan Administrator Board shall pay to the Requesting Party any unpaid amounts with respect to such Fee Request as ordered by the Court (any such unpaid amount, the "Holdback"), or the Requesting Party shall disgorge to the EFH Plan Administrator Board such amounts ordered by the Court, as applicable, with any such disgorged amounts distributed by the EFH Plan Administrator Board in accordance with the Plan.  For the avoidance of doubt, the Fee Committee, the Bankruptcy Court, and the U.S. Trustee reserve all rights to determine whether the requested fees and expenses were actually incurred in compliance with the EFH Notes Trustee's Substantial Contribution and the Supporting Creditors' Substantial Contribution, as applicable.  To the extent any such requested fees and expenses are determined by Bankruptcy Court order to have not been incurred in compliance with the EFH Notes Trustee's Substantial Contribution Finding and the Supporting Creditors' Substantial Finding, they shall first be deducted from the Holdback and then, as

59

applicable, be disgorged from the amounts distributed by the EFH Plan Administrator Board to EFH Notes Trustee or the Supporting Creditors, as applicable.

115.    For the avoidance of doubt, the Requesting Parties and the Fee Requests shall not be required to comply with (a) The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or other orders in these Cases with respect to fee applications, including the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896], or (b) *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases*, 78 Fed. Reg. No 116, page 36248 (June 17, 2013).

116.    On the EFH Effective Date, the EFH Plan Administrator Board shall reserve $38,000,000.00 in the EFH/EFIH Cash Distribution Account into a segregated, interest-bearing account, which amounts shall be held, used, and applied by the EFH Plan Administrator Board for the payment of Allowed Administrative Claims of the Supporting Creditors under sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code in accordance with paragraphs 111 through 115 above.  Any Allowed Administrative Claims of the EFH Notes Trustee under sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code shall be paid in accordance with paragraphs 111 through 115 above solely from funds in the EFH Cash Account (which, for the avoidance of doubt, shall be set forth in the EFH/EFIH Cash Distribution Account) in accordance with the Plan.

**V.      Nonseverability of Plan Provisions upon EFH Confirmation.**

117.    Each term and provision of the Plan, including the EFH Plan Supplement and all exhibits and schedules thereto and all other documents filed in connection with the Plan, or executed or to be executed in connection with transactions contemplated by the Plan and the Merger Agreement and all amendments and modifications of any of the foregoing made pursuant

to the provisions of the Plan governing such amendments and modifications are: (a) valid and enforceable pursuant to their terms; (b) integral to the Plan and may not be deleted or modified without the EFH/EFIH Debtors' or Reorganized EFH/EFIH Debtors' consent, as applicable; and (c) nonseverable and mutually dependent.

## W.    Waiver or Estoppel.

118.    Each Holder of a Claim or Interest in Classes A1 through A15 and Classes B1 through B10 shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the EFH Disclosure Statement, or papers filed with the Court before the EFH Confirmation Date.

## X.    Authorization to Consummate.

119.    The Debtors are authorized to consummate the Plan at any time after the entry of the EFH Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX.B and Article IX.D of the Plan. The substantial consummation of the Plan, within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code, is deemed to occur on the first date, on or after the EFH Effective Date, on which any distributions are made in accordance with the terms of the Plan to Holders of any Allowed Claims against the EFH Debtors or the EFIH Debtors.

## Y.    Treatment of Executory Contracts and Unexpired Leases.

120.    The assumption of the Executory Contracts and Unexpired Leases set forth on Exhibit B of the EFH Plan Supplement and the rejection of the Executory Contracts and Unexpired Leases set forth on Exhibit C of the EFH Plan Supplement, in each case subject to the Separation Agreement as applicable, are hereby authorized.

RLF1 18943815v.1

121.    Unless otherwise agreed, the EFH/EFIH Debtors will not assume, cure, or otherwise treat any contract pursuant to this EFH Confirmation Order that is the subject of (a) an outstanding objection to a proposed assumption or cure amount (an "Assumption Objection") at the time of entry of this EFH Confirmation Order (if any); or (b) certain outstanding orders extending the deadline by which the Debtors may make a determination as to whether to assume or reject a lease (the "Deadline Extension Orders").[4]  All outstanding Assumption Objections, if any, will be heard at the omnibus hearing scheduled for March 28, 2018, at 2:00 p.m. (prevailing Eastern Time), or another hearing that is convenient to the Court.  Unless otherwise agreed, the EFH/EFIH Debtors will not assume any contract that is the subject of an Assumption Objection until the Assumption Objection has been consensually resolved or the Court has made a determination on the Assumption Objection.

**Z.    AppLabs.**

122.    To the extent any of the Reorganized Debtors (to which this EFH Confirmation Order relates) asserts any Claim or Causes of Action retained pursuant to the Plan (the "Retained Actions") against AppLabs Technologies Pvt Ltd. ("AppLabs"), nothing in the Plan, the EFH Confirmation Order or the Bankruptcy Code shall preclude AppLabs' exercise of any valid setoff rights or recoupment rights (if any) in connection with such Reorganized Debtors' assertion of any Retained Actions, and AppLabs' setoff and recoupment rights (if any) are explicitly preserved.

---

[4]    The Deadline Extension Orders comprise the following: *Order Further Extending the Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 4458]; *Order Further Extending the Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 6908]; *Order Further Extending Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 8504]; and the *Order Extending Deadline to Assume or Reject a Certain Non-Residential Real Property Lease* [D.I. 9379].

RLF1 18943815v.1

## AA.    EFH/EFIH Committee Provisions.

123.    On the EFH Effective Date, any statutory committee appointed in the Chapter 11 Cases with respect to the EFH Debtors or the EFIH Debtors (including the EFH/EFIH Committee) shall dissolve; *provided, however*, that following the EFH Effective Date, the EFH/EFIH Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (i) Claims and/or applications, and any relief related thereto, for compensation by professionals and requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; (ii) appeals of the EFH Confirmation Order as to which the EFH/EFIH Committee is a party; (iii) any matters relating to the *Order Amending Stipulation and Order Appointing Fee Committee and Granting Related Relief* [D.I. 12552]; and (iv) any matters, including any appeals, relating to adversary proceeding Case No. 17-50942 (CSS) and NextEra's request for the allowance or payment of any related Administrative Claims (collectively, the "Limited Purposes"). The EFH/EFIH Committee shall use reasonable efforts to minimize its participation in the Chapter 11 Cases and avoid duplication of services in connection with the Limited Purposes. Upon dissolution of the EFH/EFIH Committee, the members thereof and their respective officers, employees, counsel, advisors, and agents shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The Reorganized EFH/EFIH Debtors shall not be liable or otherwise responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees (including the EFH/EFIH Committee). Any such reasonable and documented fees and expenses incurred in connection with the Limited Purposes after the EFH Effective Date shall be paid from the EFH/EFIH Cash Distribution Account.

## BB.   Good Faith Protections.

124.   Sempra Energy ("Sempra") and its affiliates are good faith purchasers within the meaning of section 363(m) of the Bankruptcy Code, and are therefore entitled to, and are hereby granted, the full rights, benefits, privileges and protections afforded to good faith purchasers under the Bankruptcy Code, including section 363(m) of the Bankruptcy Code.

125.   The purchase price to be provided by Sempra pursuant to the Merger Agreement was not controlled by any agreement between Sempra or its affiliates, on the one hand, and any potential bidders, on the other hand, and was not reduced or suppressed in any manner by any arrangement involving Sempra or its affiliates, on the one hand, and any creditor, on the other hand.

## CC.   Indenture Trustee.

126.   Any and all distributions made by the Debtors or the Disbursing Agent on account of (a) the EFH Note Claims shall be made to the EFH Notes Trustee, (b) the EFIH Unsecured Note Claims shall be made to the EFIH Unsecured Notes Trustee, (c) the EFIH First Lien Note Claims shall be made to the EFIH First Lien Notes Trustee, and (d) the EFIH Second Lien Note Claims shall be made to the EFIH Second Lien Notes Trustee.  As set forth in Article IV.I of the Plan, each Trustee shall be entitled to exercise its charging lien against any and all distributions it receives from the Debtors or the Disbursing Agent, including retention of appropriate reserves in accordance with the terms of the applicable Indentures (and apply any charged amounts in accordance with the terms of such applicable Indenture).

127.   Solely in the event there are sufficient amounts in the EFH/EFIH Cash Distribution Account to provide a 100% recovery to Holders of Allowed Class B5 Claims and Holders of Allowed Class B6 Claims (on account of the Allowed EFIH General Unsecured Claim), after first satisfying (a) the Allowed EFIH First Lien Claims and Allowed EFIH Second

Lien Claims in full, in Cash; and (b) other Administrative Claims of the EFIH Debtors (including the EFH Professional Fee Account); then, in addition to the Allowed EFIH General Unsecured Claim, the EFIH Unsecured Notes Trustee shall be entitled to seek payment of all or a portion of the reasonable, documented, and unpaid EFIH Unsecured Notes Trustee Fees and Expenses.

**DD.    Administration of the EFH/EFIH Cash Distribution Account.**

128.    The EFH/EFIH Cash Distribution Account (which may consist of one or more interest-bearing escrow accounts, designated by EFH Corp. prior to the EFH Effective Date) shall be established on the EFH Effective Date.    Distributions from the EFH/EFIH Cash Distribution Account shall be in accordance with the Plan, this EFH Confirmation Order, the EFIH Secureds Settlement Approval Order, as applicable, provided that in all instances such distributions shall be consistent with Article VI.A. of the Plan as approved pursuant to the Confirmation Order.    The Reorganized EFH/EFIH Debtors shall have no liability in respect of Claims asserted against the EFH Debtors or Claims asserted against the EFIH Debtors, which shall be payable solely from the EFH/EFIH Cash Distribution Account pursuant to, and in accordance with, the Plan, and this EFH Confirmation Order.

**EE.    No Continuing Makewhole Claim Liability.**

129.    The limitations on liability set forth in the next paragraph below shall not apply to the EFH/EFIH Cash Distribution Account, as established on the EFH Effective Date.    Nothing in the next paragraph impairs, modifies, or otherwise affects the ability of Holders of Allowed Claims to receive distributions pursuant to the Plan, the EFH Confirmation Order, and the EFIH Secureds Settlement Approval Order on account of such Allowed Claims.

130.    Notwithstanding anything to the contrary in this EFH Confirmation Order, the Plan, the Merger Agreement, the EFIH Settlement Agreement, the EFIH Secureds Settlement Approval Order, or any related agreements or otherwise (including any provisions anywhere that

also include the words "notwithstanding anything to the contrary" or similar references), none of (i) the Plan Sponsor; (ii) Merger Sub; (iii) the EFH Debtors; (iv) the Reorganized EFH Debtors; (v) the EFIH Debtors; (vi) Reorganized EFIH; (vii) any other entity acquired, directly or indirectly, by the Plan Sponsor pursuant to the terms of, or as a result of, the Plan, the Merger Agreement, or any related agreement; or (viii) with respect to each of the foregoing Entities in clauses (i) through (vii), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, shall have or incur any liability whatsoever in connection with or as a result of any Makewhole Claim being Allowed, including pursuant to the EFIH Secureds Settlement Approval Order.

**FF.    Dissolution of Subsidiaries.**

131.    To the extent not already disposed of, wound down, or liquidated in accordance with applicable law, all EFH/EFIH Debtors, excluding: (a) EFH Corp.; (b) EFIH; (c) LSGT Gas Company LLC; (d) EECI, Inc., (e) EEC Holdings, Inc.; (f) LSGT SACROC, Inc.; (g) EFH FS Holdings Co., (h) EFH Finance (No. 2) Holdings Co. and (i) Ebasco Services of Canada, Ltd., are deemed dissolved, effective on the Effective Date, without any further court or corporate action, including the filing of any documents with the Secretary of State for any state in which any such subsidiary is incorporated or any other jurisdiction. On the Effective Date, all of (i) EFH Corp.'s interests in (a) EFH FS Holdings Co. shall be deemed to be transferred, for no consideration, from EFH Corp. to EFH FS Holdings Co. and immediately cancelled, and (b)

66

EFH Finance (No. 2) Holdings Co. shall be deemed to be transferred, for no consideration, from EFH Corp. to EFH Finance (No. 2) Holdings Co. and immediately cancelled, and EFH Corp. shall have no further ownership interest in, or obligations with respect to EFH FS Holdings Co., EFH Finance (No. 2) Holdings Co. or any of their respective assets, liabilities or subsidiaries, and (ii) EEC Holdings, Inc.'s interests in Ebasco Services of Canada shall be deemed to be transferred, for no consideration, from EEC Holdings, Inc. to Ebasco Services of Canada and immediately cancelled, and EEC Holdings, Inc. shall have no further ownership interest in, or obligations with respect to Ebasco Services of Canada or any of its assets, liabilities or subsidiaries. Immediately following the cancellation of (i) EFH Corp's interests in EFH FS Holdings Co. and EFH Finance (No. 2) Holdings Co. and (ii) EEC Holdings, Inc.'s interests in Ebasco Services of Canada, any equity interests held by EFH FS Holdings Co., EFH Finance (No. 2) Holdings Co. and Ebasco Services of Canada shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code. On the EFH Effective Date, equity interests in EFH Non-Debtors, including, for the avoidance of doubt, EFH Non-Debtor Humphreys & Glasgow Limited, but excluding EFH Non-Debtor EFH Vermont Insurance Company, shall be abandoned pursuant to section 554 of the Bankruptcy Code and the EFH/EFIH Debtors shall have no further ownership interest in, or obligations with respect to such EFH Non-Debtors or any of their respective assets, liabilities or subsidiaries. For the avoidance of doubt, equity interests in EFH Non-Debtor EFH Vermont Insurance Company are not deemed to be abandoned and shall remain outstanding.

132.    For the avoidance of doubt, none of (i) the Plan Sponsor; (ii) Merger Sub; (iii) the EFH Debtors; (iv) the Reorganized EFH Debtors; (v) EFIH; (vi) Reorganized EFIH; (vii) any other entity acquired, directly or indirectly, by the Plan Sponsor pursuant to the terms of, or as a

67

result of, this EFH Confirmation Order, the Plan, the Merger Agreement, or any related agreement; or (viii) with respect to each of the foregoing Entities in clauses (i) through (vii), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, shall have or incur any liability whatsoever in connection with or as a result of the dissolution, wind-down, disposition, or liquidation of any entity, or the cancellation and abandonment of the equity interests in any entity, in accordance with the terms of this EFH Confirmation Order and the Plan, including, for the avoidance of doubt, the liquidation of EFCH and TCEH in accordance with Article IV.B.6 of the Plan.

**GG.    Claims Objection Deadline.**

133.    Except as otherwise set forth in the Plan or this EFH Confirmation Order, the deadline for filing an objection to a Claim shall be the later of (a) the date that is 180 days after the EFH Effective Date and (b) such other date as may be fixed by the Court, after notice and hearing, upon a motion Filed before the expiration of the deadline to object to Claims. Notwithstanding the foregoing or Article VII of the Plan, if no objection has been Filed with respect to a timely filed Class A3 Claim on or before the applicable Claims Objection Deadline, such Claim shall be deemed Allowed solely for purposes of Reinstating such Claim as provided in Article III.B.3 of the Plan (which provides that the legal, equitable, and contractual rights, if any, to which such Claim entitles the Holder of such Claim shall be left unaltered by the Plan). Such Claim shall otherwise be deemed disputed unless otherwise ordered by a court of

competent jurisdiction or agreed in writing by and among the Holder of such Claim, on the one hand, and the applicable Reorganized Debtor and the Plan Sponsor, on the other hand, and the failure to File with the Court an objection with respect to such Claim by the Claim Objection Deadline shall not (a) affect the validity of such Claim, including the asserted amount thereof, or affect the liability, if any, of the Debtors, the Reorganized Debtors or any other Entity with respect to such Claim, (b) be or be deemed to be an admission of liability by any Entity with respect to such Claim, or (c) prejudice, impair, alter or otherwise affect the Debtors', Reorganized Debtors' or any other Entity's rights, including any defenses, in law or in equity, in respect of such Claims.  The existence of Disputed Class A3 Claims on the Claims Register shall not, standing alone, serve as a sufficient basis to delay closing of the Chapter 11 Cases.

**HH.    EFH Plan Administrator Board and Disbursing Agent.**

134.    On or before the EFH Effective Date, the EFH/EFIH Debtors shall create a trust (the "EFH Plan Administration Trust") pursuant to the EFH Plan Administration Trust Agreement, which shall govern the rights and duties of the EFH Plan Administration Board with respect to the EFH Plan Administration Trust consistent with the Plan.  The primary purpose of the EFH Plan Administration Trust shall be acting as Disbursing Agent under the Plan, administering the EFH/EFIH Cash Distribution Account consistent with the Plan, liquidating or otherwise resolving Claims that may be entitled to distributions from the EFH/EFIH Cash Distribution Account, and pursuing and resolving, in the EFH Plan Administration Board's discretion, Causes of Action the EFH Plan Administration Board is permitted to pursue and settle under the Plan.

135.    The EFH Plan Administration Board shall serve as the trustee of the EFH Plan Administration Trust and actions taken by the EFH Plan Administration Board pursuant to the

Plan and the EFH Plan Administration Trust Agreement shall be on behalf of the EFH Plan Administration Trust.

## II.    Assumption of Oracle Agreements.

136.    Notwithstanding anything to the contrary in the Plan, this EFH Confirmation Order, or the Transition Services Agreement entered into in connection with the TCEH Confirmed Plan, no shared use, license splitting, or other unauthorized use of any Oracle America, Inc. ("Oracle") license and services agreement will be allowed post-confirmation absent Oracle's express prior written consent.

## JJ.    EFH Non-Qualified Benefit Plans

137.    The EFH Non-Qualified Benefit Plans shall be terminated on or before the EFH Effective Date, and any Allowed Claims arising from the termination of such EFH Non-Qualified Benefit Plans shall be treated in accordance with Article III.B.8 of the Plan on the EFH Effective Date. The EFH Split-Dollar Plan shall be terminated on or before the EFH Effective Date, and any amounts payable to the EFH Debtors on account of such termination shall be paid to the EFH Debtors or Reorganized EFH, as applicable.

## KK.    Environmental Law.

138.    Nothing in the Plan or the EFH Confirmation Order shall release, discharge, or preclude the enforcement of, (or preclude, release, defeat, or limit the defense under non-bankruptcy law of): (i) any liability under Environmental Law to a Governmental Unit that is not a Claim; (ii) any Claim under Environmental Law of a Governmental Unit arising on or after the EFH Effective Date; (iii) any liability under Environmental Law to a Governmental Unit on the part of any Entity to the extent of such Entity's liability under non-bankruptcy law on account of its status as owner or operator of such property after the EFH Effective Date; (iv) any liability to a Governmental Unit on the part of any Entity other than the EFH/EFIH Debtors or the

70

Reorganized EFH/EFIH Debtors; or (v) any valid right of setoff or recoupment by any Governmental Unit.  All parties' rights and defenses under Environmental Law with respect to (i) through (v) above are fully preserved.  For the avoidance of doubt, the United States is not a Releasing Party under the Plan.

139.    Nothing in the Plan or this EFH Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding paragraph.  Nothing in the Plan or this EFH Confirmation Order authorizes: (i) the transfer or assignment of any governmental license, permit, registration, authorization, or approval, or (ii) the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under Environmental Law.   The Bankruptcy Court retains jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities asserted by any Governmental Unit are discharged or otherwise barred by this EFH Confirmation Order or the Plan, or the Bankruptcy Code.

140.    For the avoidance of doubt, all Claims under Environmental Law arising before the EFH Effective Date, including penalty claims for days of violation prior to the EFH Effective Date, shall be subject to Article VIII of the Plan and treated in accordance with the Plan in all respects and the Bankruptcy Court shall retain jurisdiction as provided in Article XI of the Plan in relation to the allowance or disallowance of any Claim under Environmental Law arising before the EFH Effective Date.

141.    Without limiting the Bankruptcy Court's jurisdiction as set forth above, nothing in the Plan or this EFH Confirmation Order shall divest or limit the jurisdiction of other tribunals over the Environmental Action, and upon the EFH Effective Date, the Environmental Action shall survive the Chapter 11 Cases and may be adjudicated in the court or tribunal in which such

Environmental Action is currently pending; *provided, further, however,* any judgment for a Claim in the Environmental Action arising before the EFH Effective Date shall be treated in accordance with the TCEH Confirmed Plan in all respects; *provided, further, however,* that nothing in the Plan shall preclude, release, defeat, or limit any grounds for asserting or opposing an alleged defense or affirmative defense under non-bankruptcy law in the Environmental Action based on any change in ownership, and all such grounds for asserting or opposing such defenses and affirmative defenses under non-bankruptcy law are expressly preserved; *provided, further, however,* that nothing in the Plan or the EFH Confirmation Order shall prevent the Debtors or any other parties in interest from seeking to estimate Claims against the Debtors arising in connection with the Environmental Action.   With respect to the Environmental Action, Article VIII.H of the Plan does not alter any rights or defenses under non-bankruptcy law arising as a result of any changes of ownership provided in the Plan or the EFH Confirmation Order. The Governmental Units reserve all rights as to whether there are any such rights or defenses.

**LL.    Certain IRS Matters.**

142.    Nothing in the Plan (or subsequently amended Plan) or this EFH Confirmation Order shall be deemed to waive the right of the IRS or the U.S. (a) to object to confirmation of a subsequently amended Plan, or an alternative chapter 11 plan, or (b) to seek prior to the EFH Effective Date of the Plan reconsideration of this EFH Confirmation Order and/or a stay of the EFH Effective Date of the Plan to the extent the IRS would be entitled to seek reconsideration or a stay based on a determination by the IRS that the PLR or Supplemental Ruling is not valid, is no longer applicable to the Restructuring Transactions, or other issues not addressed by the PLR or Supplemental Ruling would bring the tax-free nature of the Restructuring Transactions into doubt.  The rights of the Debtors and other parties in interest to oppose any such objection or such request to reconsider the EFH Confirmation Order or stay the EFH Effective Date are

preserved; *provided* that such opposition may not be on the grounds of failure of the IRS to file an earlier objection, equitable mootness, laches, estoppel, or a similar theory.

143.    Nothing in the Plan (or subsequently amended Plan) or this EFH Confirmation Order shall affect the rights of the IRS or the U.S. to assess or collect (as permitted under applicable law), on or after the Confirmation Date, a tax for a taxable year (or period) ending on or after the Petition Date and before the EFH Effective Date of the Plan, against EFH, any member (or former member) of its consolidated group, Reorganized EFH and/or any successor entities; *provided,* that nothing about this paragraph shall expand or limit the rights or obligations of the IRS, the U.S., EFH, any member (or former member) of its consolidated group, Reorganized EFH and/or any successor entities under any non-plan provision of applicable law, including, but not limited to, with respect to Section 505 of the Bankruptcy Code (to the extent applicable) and any other applicable limitations or requirements (if any) with respect to administrative tax claims.

## MM.    ERCOT.

144.    Nothing contained in this EFH Confirmation Order or in the Plan shall impair, modify, or otherwise affect the relief granted in the TCEH Confirmation Order with respect to the TCEH Debtors, the EFH Shared Services Debtors, the Reorganized TCEH Debtors, and the Reorganized EFH Shared Services Debtors with respect to the Electric Reliability Council of Texas, Inc. ("ERCOT").

## NN.    Insurance.

145.    Nothing in the Plan or this EFH Confirmation Order is intended to decide or resolve any issues related to insurance coverage of Claims.

**OO.    Successors and Assigns.**

146.    Except as otherwise provided herein, or in the Plan, the rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**PP.    D&O Insurance Policy.**

147.    With respect to any D&O Insurance (as defined in the Merger Agreement and effective as of the Effective Time) that EFH has obtained in accordance with Section 6.8 of the Merger Agreement and for which EFH has fully paid the run-off premium on or prior to the Effective Time, any refunds by the applicable insurer in connection with such D&O Insurance that are paid to Reorganized EFH shall be refunded by Reorganized EFH to Vistra Energy as promptly as practicable to such account to be designated by Vistra Energy.

**QQ.    EFIH First Lien Post-Effective Date Fee and Indemnification Reserve and EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve.**

148.    Notwithstanding anything to the contrary contained in the Plan, the EFIH Secureds Settlement Approval Order, or the EFIH Settlement Agreement, on the EFH Effective Date, the EFH Plan Administrator Board shall fund the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve by paying the amount of $100,000.00 to the EFIH First Lien Notes Trustee, as provided in the EFIH Secureds Settlement Approval Order (as the same may be modified hereby).  The EFIH First Lien Post-Effective Date Fee and Indemnification Reserve shall be held, used, and applied by the EFIH First Lien Notes Trustee or the First Lien Escrow Agent (as defined below), as applicable, as provided by the EFIH Secureds Settlement Approval Order, the EFIH Settlement Agreement, and that certain Escrow Agreement by and between EFIH, the EFIH First Lien Notes Trustee, and Delaware Trust Company, as escrow agent (the

"First Lien Escrow Agent"), dated as of the EFH Effective Date (the "EFIH First Lien Escrow Agreement"). In the event of any inconsistency between the EFIH First Lien Escrow Agreement, on the one hand, and the EFIH Secureds Settlement Approval Order and the EFIH Settlement Agreement, on the other, with respect to the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve, the EFIH First Lien Escrow Agreement shall control. The EFIH First Lien Notes Trustee and First Lien Escrow Agent, as applicable, shall have no obligation to invest any funds which are held and not applied. The Debtors are hereby authorized to enter the EFIH First Lien Escrow Agreement. In addition to funding the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve as provided in this Paragraph of this Order, the EFH Plan Administrator Board shall, on or as soon as reasonably practicable after the EFH Effective Date, pay in full in Cash all EFIH First Lien Pre-Effective Date Fees (as defined in the EFIH Settlement Agreement) and all other Allowed EFIH First Lien Claims accruing before the EFH Effective Date not previously paid.

149.    On the EFH Effective Date, and except as otherwise agreed by the EFIH Second Lien Notes Trustee, the EFH/EFIH Debtors or the EFH Plan Administrator Board (as applicable), and the Supporting Creditors, and approved by the Bankruptcy Court, (1) the EFH Plan Administrator Board shall fund the EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve, by paying the amount of $2,000,000.00 to the EFIH Second Lien Notes Trustee, as provided in the EFIH Secureds Settlement Approval Order; and (2) the EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve shall be held, used, and applied by the EFIH Second Lien Notes Trustee, as provided by the EFIH Secureds Settlement Approval Order. The EFIH Second Lien Notes Trustee shall have no obligation to invest any funds which are held

and not applied, nor any obligation to turn over any interest or other earnings in connection with the deposit or investment of such funds.

**RR.    The NEE Plan Reserve**.

150.    The EFH Plan Administrator Board shall fund a segregated escrow account maintained at Citibank, N.A., (the "NEE Plan Reserve"), with the requisite form of escrow agreement to be negotiated in good faith between NEE, the EFH/EFIH Debtors, and the Supporting Creditors (and reasonably acceptable to the EFH/EFIH Committee, the EFIH Unsecured Notes Trustee and EFH Notes Trustee), in the amount of $275,000,000.00 (the "NEE Plan Reserve Amount") within ten business days following the later of: (a) the EFH Effective Date, and (b) entry of an order by the Bankruptcy Court allocating the funding of the NEE Plan Reserve Amount as between EFH Corp. and EFIH (the "NEE Allocation Order"); *provided, however*, that under no circumstances shall EFH Corp.'s ultimate share of the NEE Plan Reserve Amount include the Cash available at EFH Corp. as of the EFH Effective Date necessary to satisfy all Allowed Administrative Claims against the EFH Debtors and Allowed Priority Claims against the EFH Debtors, in full, in Cash; *provided, further*, that notwithstanding the foregoing, in no event shall the EFH Plan Administrator Board fund the NEE Plan Reserve in an amount less than $275,000,000.00

151.    After (a) payment in full of all 2017 EFIH First Lien DIP Claims, Allowed EFIH First Lien Claims, and Allowed EFIH Second Lien Claims (in the case of the Allowed EFIH First Lien Claims and Allowed EFIH Second Lien Claims, accruing before the EFH Effective Date and not previously paid) and (b) the funding of the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve (in the amount set forth in paragraph 148 above) and EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve (which transactions are contemplated to occur on the EFH Effective Date):

- (1) **Distributions to Holders of Allowed Class B5 and Class B6 Claims.** The EFH Plan Administrator Board shall make a partial Plan distribution to Holders of Allowed Claims in Classes B5 and B6 within five business days following the EFH Effective Date, and which distribution, for the avoidance of doubt, may be made prior to entry of the NEE Allocation Order or entry of an order allocating all other material Claims as between EFH and EFIH (such other order or orders, to the extent not set forth in the NEE Allocation Order, the "Material Allocation Orders");[5] *provided, however,* that such distribution shall not (X) include a distribution from the NEE Plan Reserve and shall not impair the EFH/EFIH Debtors' obligation to fund the NEE Plan Reserve in the amount of $275 million; (Y) include a distribution of funds attributable to any material Claims asserted by EFH against EFIH settled pursuant to a Material Allocation Order or that are the subject of negotiation or litigation between EFH and EFIH; and (Z) include the Cash available at EFIH as of the EFH Effective Date necessary to satisfy all Allowed Administrative Claims against EFIH and Allowed Priority Claims against EFIH, in full, in Cash.

  - (A). Following entry of the NEE Allocation Order, the EFH Plan Administrator Board, in consultation with the Supporting Creditors, the EFIH Unsecured Notes Trustee, and the EFH/EFIH Committee in accordance with the EFH Plan Administrator Trust Agreement, the Plan, and this EFH Confirmation Order, shall make a partial Plan distribution (a) in accordance with the NEE Allocation Order and any entered Material Allocation Orders (after the expiration of any applicable appeals period) and (b) after consideration of the allocation of any other material Claims that are the subject of negotiation or litigation between EFH and EFIH; *provided, however*, that such distribution shall not (1) include a distribution from the NEE Plan Reserve and shall not impair the EFH/EFIH Debtors' obligation to fund the NEE Plan Reserve in the amount of $275,000,000; (2) include a distribution of funds attributable to any material Claims asserted by EFH against EFIH settled pursuant to a Material Allocation Order or subject to negotiation or litigation between EFH and EFIH; and (3) include the Cash available at EFIH as of the EFH Effective Date necessary to satisfy all Allowed Administrative Claims against EFIH and Allowed Priority Claims against EFIH, in full, in Cash.

- (2) **Distributions to Holders of Allowed Claims in Classes A4-A11.** Upon three business days' notice to counsel for the EFIH Unsecured Notes Trustee and the Supporting Creditors, the EFH Plan Administrator Board, in consultation with the Supporting Creditors, the EFH/EFIH Committee, and the EFH Notes Trustee, may make a partial Plan distribution to Holders of Allowed Claims in Classes A4-A11 prior to entry of the NEE Allocation Order or any Material Allocation Order; *provided, however,* that the EFH Plan

---

[5]  For the avoidance of doubt, "material Claims as between EFH and EFIH" does not include any post-EFH Effective Date claims between the Reorganized EFH Debtors and Reorganized EFIH Debtors.

Administrator shall not be obligated to make any Plan distributions to such Holders until after entry of the NEE Allocation Order and satisfaction of the terms set forth in the NEE Allocation Order; *provided, further, however* that such distribution shall not (A) include a distribution from the NEE Plan Reserve and shall not impair the EFH/EFIH Debtors' obligation to fund the NEE Plan Reserve in the amount of $275,000,000; (B) include a distribution of funds attributable to any material Claims asserted by EFIH against EFH settled pursuant to a Material Allocation Order or subject to negotiation or litigation between EFH and EFIH; and (C) include the Cash available at EFH Corp. as of the EFH Effective Date necessary to satisfy all Allowed Administrative Claims against the EFH Debtors and Allowed Priority Claims against the EFH Debtors, in full, in Cash.

- (A). Following entry of the NEE Allocation Order, the EFH Plan Administrator Board, in consultation with the Supporting Creditors, the EFH/EFIH Committee, and the EFH Notes Trustee, in accordance with the EFH Plan Administrator Trust Agreement, the Plan, and this EFH Confirmation Order, and upon three business days' notice to the EFIH Unsecured Notes Trustee, shall make a partial Plan distribution (a) in accordance with the NEE Allocation Order and any entered Material Allocation Orders (after the expiration of any applicable appeals period) and (b) after consideration of the allocation of any other material Claims that are the subject of negotiation or litigation between EFH and EFIH; *provided, however*, that such distribution shall not (1) include a distribution from the NEE Plan Reserve and shall not impair the EFH/EFIH Debtors' obligation to fund the NEE Plan Reserve in the amount of $275,000,000; (2) include a distribution of funds attributable to any material Claims asserted by EFIH against EFH settled pursuant to a Material Allocation Order or subject to negotiation or litigation between EFH and EFIH; and (3) include the Cash available at EFH Corp. as of the EFH Effective Date necessary to satisfy all Allowed Administrative Claims against the EFH Debtors and Allowed Priority Claims against the EFH Debtors, in full, in Cash.

152. The EFH/EFIH Debtors, or, following the occurrence of the EFH Effective Date, the EFH Plan Administrator Board shall file a Motion seeking entry of the NEE Allocation Order as soon as practicable following entry of the Confirmation Order and shall make commercially reasonable efforts to seek entry of the NEE Allocation Order within 40 days of such filing (subject to the availability of the Bankruptcy Court to hear such Motion). For the avoidance of doubt, the EFH Effective Date may occur prior to the entry of the NEE Allocation Order or any

of the Material Allocation Orders, and that such NEE Allocation Order or Material Allocation Order have not yet been entered shall not be a valid basis to delay the occurrence of the EFH Effective Date.

153.    Consistent with Article VI.B. of the Plan, any Holder of a Claim may seek relief from the Bankruptcy Court in connection with the EFH/EFIH Cash Distribution Account and in accordance with the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the District of Delaware, and any other applicable rules or procedures.  Such relief may, for the avoidance of doubt, include a request for relief in connection with the allocation of material Claims as between EFH and EFIH.  Consistent with the definition of Plan Supplement set forth in the Plan, the EFH/EFIH Debtors filed that certain EFH Plan Administration Trust Agreement [D.I. 12685-3], which will be revised as necessary prior to the EFH Effective Date to effectuate the  paragraphs 150-156, including by, among other things, clarifying that the negotiation, resolution, settlement, and litigation concerning the NEE Allocation Order and any Material Allocation Order shall each constitute a Conflict Matter (as defined in the EFH Plan Administration Trust Agreement).

154.    The NEE Plan Reserve Amount may be modified pursuant to separate Bankruptcy Court order for good cause shown; *provided, however*, that any such modification shall, at all times, be consistent with Article VI. of the Plan.  In the absence of any such separate Bankruptcy Court order, the NEE Plan Reserve Amount shall be (a) released in full to the EFH/EFIH Cash Distribution Account upon entry of a Final Order against NEE in connection with the NEE Proceedings and (b) released in the amount of $275 million to an account designated by NEE upon entry of a Final Order in favor of NEE in connection with the NEE Proceedings.[6]

---

[6]    NEE Proceedings shall be defined as: (a) the appellate proceedings in connection with the reconsideration order entered by the Bankruptcy Court on October 18, 2017 [D.I. 12075] (the "Reconsideration Order"); (b) the

155.    Notwithstanding anything to the contrary in this EFH Confirmation Order or the Plan, none of the Plan Sponsor, EFH Merger Sub, or the Reorganized EFH/EFIH Debtors shall have or incur any liability or obligation in connection with the NEE Plan Reserve or the Termination Fee (as defined in [D.I. 11998]).

156.    Notwithstanding anything to the contrary in the Plan, the EFH Plan Administrator Board, the Supporting Creditors and/or the EFIH Unsecured Notes Trustee shall have the right any time after entry of the Confirmation Order to (i) in accordance with the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the District of Delaware, and any other applicable rules or procedures, to file, pursue, prosecute, and litigate to judgment objections to any Claims, including Administrative Claims, filed or asserted against any of the Debtors or the estates that, if Allowed, would be entitled to distribution from the EFH/EFIH Cash Distribution Account or the NEE Plan Reserve, (ii) appeal, prosecute any appeal, and/or participate in any appeal, including any currently pending appeal, with respect to any order allowing, disallowing, or estimating any Claim, including any Administrative Claim, (iii) receive notice from the EFH Plan Administrator Board, as applicable, of any proposed settlement or compromise of any Disputed Claim entitled to distribution from the EFH/EFIH Cash Distribution Account or the NEE Plan Reserve, (iv) for good cause shown, seek relief in the Bankruptcy Court or any other court of competent jurisdiction in accordance with the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the District of Delaware, and any other applicable rules or procedures to reduce or eliminate, or seek other relief, with respect to any reserves established using funds in the EFH/EFIH Cash Distribution Account and established and/or maintained by the EFH Plan Administrator Board (including in its capacity as Trustee) on account of any

---

*Adversary Complaint* [D.I. 11668]; and (c) the briefing schedule set by the Third Circuit regarding a direct, expedited appeal of the Reconsideration Order.

Disputed Claims that have been disallowed by the Bankruptcy Court, including but not limited to any NEE Plan Reserve, and (v) request that the Bankruptcy Court estimate any Disputed Claim, including any Disputed Administrative Claim in each case that, if Allowed, would be entitled to distribution from the EFH/EFIH Cash Distribution Account or the NEE Plan Reserve. All parties' rights with respect to the foregoing are fully preserved.

**SS.    Effect of Non-Occurrence of EFH Effective Date.**

157.    If a condition to the occurrence of the EFH Effective Date does not occur, and is not otherwise waived, and it is determined that the EFH Effective Date shall not and cannot occur on the terms contemplated by the Plan and this EFH Confirmation Order, the provisions set forth in this EFH Confirmation Order shall not be binding on any party; *provided, however,* that the non-occurrence of the EFH Effective Date shall not affect the relief granted in the EFIH Secureds Settlement Approval Order.

**TT.    Final Order and Waiver of Stay.**

158.    The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order is hereby waived. This EFH Confirmation Order is a Final Order and shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d) or 7062. The Debtors, with the consent of the Plan Sponsor, are authorized to consummate the Plan on any business day after entry of this EFH Confirmation Order, subject to satisfaction or waiver (by the required parties) of the conditions set forth in Article IX.B of the Plan.

Dated: **February 27**, 2018
Wilmington, Delaware

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

81

**Exhibit A**

**Plan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

---

### FIRST AMENDED JOINT PLAN OF
### REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP.,
### ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, AND THE
### EFH/EFIH DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

--and--

300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Counsel to the Debtors and Debtors in Possession

--and--

**PROSKAUER ROSE LLP**
Three First National Plaza
70 W. Madison Street, Suite 3800
Chicago, Illinois 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

Co-Counsel to the Debtor Energy Future Holdings Corp.

--and--

**RICHARDS, LAYTON & FINGER, P.A.**
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

**BIELLI & KLAUDER, LLC**
1204 North King Street
Wilmington, Delaware 19801
Telephone: (302) 803-4600
Facsimile: (302) 397-2557

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**CRAVATH, SWAINE AND MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

**JENNER & BLOCK LLP**
919 Third Avenue
New York, New York 10022
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699

**STEVENS & LEE, P.C.**
919 Market Street, Suite 1300
Wilmington, Delaware 19801
Telephone:  (302) 425-3310
Facsimile:  (610) 371-7927

Co-Counsel to the Debtor Energy Future Intermediate
Holding Company LLC

Dated:  February 15, 2018

RLFI 18943843v.1

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW .................................................................................................... 4
    A.    Defined Terms. ................................................................................................. 4
    B.    Rules of Interpretation. .................................................................................... 4
    C.    Computation of Time. .................................................................................... 38
    D.    Governing Law. ............................................................................................. 39
    E.    Reference to Monetary Figures. ...................................................................... 39

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS ............................ 39
    A.    Administrative Claims. ................................................................................... 40
    B.    2017 EFIH First Lien DIP Claims. ................................................................ 42
    C.    Priority Tax Claims. ....................................................................................... 42

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................................ 42
    A.    Classification of Claims and Interests. ........................................................... 42
    B.    Treatment of Claims and Interests. ................................................................ 44
    C.    Special Provision Governing Unimpaired Claims. ......................................... 54
    D.    Elimination of Vacant Classes. ...................................................................... 54
    E.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. .................. 54
    F.    Controversy Concerning Impairment. ............................................................ 54
    G.    Subordinated Claims and Interests. ................................................................ 55

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ....................................................... 55
    A.    General Settlement of Claims and Interests. ................................................... 55
    B.    Restructuring Transactions. ............................................................................ 55
    C.    Sources of Consideration for Plan Distributions. ............................................ 58
    D.    Intercompany Account Settlement. ................................................................ 60
    E.    Corporate Existence. ...................................................................................... 61
    F.    Vesting of Assets in the Reorganized EFH/EFIH Debtors. ............................. 61
    G.    Cancelation of Existing Securities and Agreements. ....................................... 61
    H.    Corporate Action. .......................................................................................... 62
    I.    New Organizational Documents. .................................................................... 63
    J.    Directors and Officers of the Reorganized EFH/EFIH Debtors. ..................... 63
    K.    Section 1146 Exemption. ............................................................................... 63
    L.    Director, Officer, Manager, and Employee Liability Insurance. ...................... 64
    M.    Preservation of Causes of Action. .................................................................. 64
    N.    Payment of Certain Fees. ............................................................................... 65
    O.    Treatment of Certain Claims of the PBGC and Pension Plans. ....................... 66

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................ 66
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ..... 66
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases. ....... 67
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. .... 67
    D.    Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases. ........... 68
    E.    Indemnification Obligations. .......................................................................... 68
    F.    Insurance Policies. ......................................................................................... 68
    G.    Modifications, Amendments, Supplements, Restatements, or Other Agreements. .................. 68
    H.    Reservation of Rights. .................................................................................... 69
    I.    Nonoccurrence of Effective Date. .................................................................. 69
    J.    Contracts and Leases Entered Into After the Petition Date. ............................. 69

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ........................................................... 69
    A.    Timing and Calculation of Amounts to Be Distributed. .................................. 69
    B.    Rights and Powers of EFH Plan Administrator Board. .................................... 70

| | | |
|---|---|---|
| C. | Disbursing Agent. | 71 |
| D. | Rights and Powers of Disbursing Agent. | 71 |
| E. | Delivery of Distributions and Undeliverable or Unclaimed Distributions. | 71 |
| F. | Manner of Payment. | 71 |
| G. | SEC Registration/Exemption. | 72 |
| H. | Compliance with Tax Requirements. | 73 |
| I. | No Postpetition or Default Interest on Claims. | 73 |
| J. | Setoffs and Recoupment. | 74 |
| K. | No Double Payment of Claims. | 74 |
| L. | Claims Paid or Payable by Third Parties. | 74 |

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** ... 75

| | | |
|---|---|---|
| A. | Allowance of Claims. | 75 |
| B. | Claims Administration Responsibilities | 75 |
| C. | Estimation of Claims. | 75 |
| D. | Adjustment to Claims without Objection | 75 |
| E. | Time to File Objections to Claims or Interests. | 76 |
| F. | Disallowance of Claims. | 76 |
| G. | Amendments to Proofs of Claim | 76 |
| H. | Reimbursement or Contribution. | 76 |
| I. | No Distributions Pending Allowance. | 76 |
| J. | Distributions After Allowance. | 77 |
| | | 77 |

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ... 77

| | | |
|---|---|---|
| A. | Discharge of Claims and Termination of Interests. | 77 |
| **B.** | **Release of Liens.** | 77 |
| **C.** | **Releases by the Debtors.** | 77 |
| **D.** | **Releases by Holders of Claims and Interests.** | 78 |
| **E.** | **Exculpation.** | 79 |
| **F.** | **Injunction.** | 80 |
| G. | Liabilities to, and Rights of, Governmental Units. | 81 |
| H. | Environmental Law Matters. | 82 |
| I. | Protections Against Discriminatory Treatment | 82 |
| J. | Recoupment. | 83 |
| K. | Document Retention. | 83 |
| | | 83 |

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ... 83

| | | |
|---|---|---|
| A. | Conditions Precedent to Confirmation of a Plan as to the EFH Debtors and EFIH Debtors. | 83 |
| B. | Conditions Precedent to the EFH Effective Date. | 83 |
| C. | Waiver of Conditions. | 84 |
| D. | Effect of Failure of Conditions. | 85 |
| E. | Certain IRS Matters. | 86 |
| | | 86 |

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ... 86

| | | |
|---|---|---|
| A. | Modification and Amendments. | 86 |
| B. | Effect of Confirmation on Modifications. | 86 |
| C. | Revocation or Withdrawal of Plan. | 87 |
| | | 87 |

**ARTICLE XI. RETENTION OF JURISDICTION** ... 87

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ... 89

| | | |
|---|---|---|
| A. | Immediate Binding Effect. | 89 |
| B. | Additional Documents. | 89 |
| | | 89 |

C.  Payment of Statutory Fees. .......................................................................................... 89
D.  Statutory Committee and Cessation of Fee and Expense Payment. ................................ 89
E.  Reservation of Rights. ..................................................................................................... 90
F.  Successors and Assigns. .................................................................................................. 90
G.  Notices. ............................................................................................................................ 90
H.  Term of Injunctions or Stays. ......................................................................................... 92
I.  Entire Agreement. ........................................................................................................... 92
J.  Exhibits. ........................................................................................................................... 92
K.  Nonseverability of Plan Provisions. ............................................................................... 92
L.  Votes Solicited in Good Faith. ........................................................................................ 92
M.  Waiver or Estoppel. ........................................................................................................ 92
N.  Conflicts. .......................................................................................................................... 93

**Exhibits**

Exhibit A        EFH/EFIH Debtors

# INTRODUCTION

The Debtors (as defined herein) propose this joint plan of reorganization for the resolution of the outstanding claims against, and interests in, the Debtors pursuant to the Bankruptcy Code. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in Article I.A of the Plan. Holders of Claims and Interests should refer to the EFH Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, events during the Chapter 11 Cases, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE EFH DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

*A.      Defined Terms.*

As used in the Plan, capitalized terms have the meanings set forth below.

1.      "*2005 Oncor Transfer*" means those certain 2005 transactions pursuant to which the equity of Oncor's predecessor, TXU Electric Delivery Company LLC, was dividended from EFCH's predecessor, TXU US Holdings Company, to EFH Corp.'s predecessor, TXU Corp.

2.      "*2007 Acquisition*" means the transactions that occurred in October 2007 in which TEF and Texas Holdings and their direct and indirect equity holders became the direct and indirect equity holders of each of the Debtors.

3.      "*2011 Amend and Extend Transactions*" means those certain transactions effectuated by TCEH and EFCH in April 2011, including the TCEH Credit Amendment and the issuance of the TCEH First Lien Notes.

4.      "*2013 Revolver Extension*" means those certain transactions effectuated by TCEH and EFCH in January 2013, including the maturity extension of revolving credit commitments due 2013, the Incremental Amendment Agreement, and the incurrence of the TCEH 2012 Incremental Term Loans.

5.      "*2017 EFIH First Lien DIP Agent*" means Citibank, N.A. or its duly appointed successor, as administrative agent and collateral agent under the 2017 EFIH First Lien DIP Facility.

6.      "*2017 EFIH First Lien DIP Claims*" means any Claim derived from or based upon the 2017 EFIH First Lien DIP Credit Agreement or the 2017 EFIH First Lien DIP Order, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges and all other "Obligations" as defined in the 2017 EFIH First Lien Credit Agreement, including any EFIH DIP Secured Cash Management Obligations and EFIH DIP Secured Hedge Obligations.

7.      "*2017 EFIH First Lien DIP Contingent Obligations*" means the "Contingent Obligations" as defined in the 2017 EFIH First Lien DIP Credit Agreement, including any and all expense reimbursement obligations of the Debtors that are contingent as of the EFH Effective Date.

8.      "*2017 EFIH First Lien DIP Credit Agreement*" means that certain Senior Secured Superpriority Debtor-In-Possession Credit Agreement, dated as of June 28, 2017, governing the 2017 EFIH First Lien DIP Facility, as amended, supplemented, or modified from time to time, by and among EFIH, EFIH Finance, and the

2017 EFIH First Lien DIP Lenders, collectively with the "EFIH First Lien DIP Documents," as defined in the 2017 EFIH First Lien DIP Order.

9.      "*2017 EFIH First Lien DIP Facility*" means the EFIH Debtors' $6.3 billion debtor-in-possession financing facility, as approved pursuant to the 2017 EFIH First Lien DIP Order.

10.     "*2017 EFIH First Lien DIP Lenders*" means the 2017 EFIH First Lien DIP Agent; the banks, financial institutions, and other lenders party to the 2017 EFIH First Lien DIP Facility from time to time; and each arranger, bookrunner, syndication agent, manager, and documentation agent under the 2017 EFIH First Lien DIP Facility.

11.     "*2017 EFIH First Lien DIP Order*" means the Order (A) Approving Postpetition Replacement Financing for Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc., (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Extending the Use of Cash Collateral by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (D) Authorizing Refinancing of Postpetition Secured Debt, (E) Authorizing Payment of Allowed EFIH First Lien Claims, and (F) Modifying the Automatic Stay [D.I. 11388].

12.     "*503(b)(9) Claim*" means a Claim or any portion thereof entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

13.     "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under sections 503(b) (including 503(b)(9) Claims), 507(b), or 1114(e)(2) of the Bankruptcy Code, other than the 2017 EFIH First Lien DIP Claims, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date through the EFH Effective Date of preserving the applicable Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims; (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930; and (d) all Intercompany Claims authorized pursuant to the Cash Management Order.

14.     "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to General Administrative Claims, shall be 30 days after the EFH Effective Date; and (b) with respect to Professional Fee Claims, shall be 45 days after the EFH Effective Date.

15.     "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

16.     "*Allowed*" means with respect to any Claim or Interest, except as otherwise provided herein:  (a) a Claim or Interest as to which no objection has been Filed prior to the Claims Objection Deadline and that is evidenced by a Proof of Claim or Interest, as applicable, timely Filed by the applicable Bar Date or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is scheduled by the Debtors as neither disputed, contingent, nor unliquidated, and as for which no Proof of Claim or Interest, as applicable, has been timely Filed in an unliquidated or a different amount; or (c) a Claim or Interest that is upheld or otherwise allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith, or (iv) by Final Order (including any such Claim to which the Debtors had objected or which the Bankruptcy Court had disallowed prior to such Final Order).  Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest or other charges on such Claim from and after the Petition Date.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.

17.     "*Allowed EFIH First Lien Claims*" shall have the meaning set forth in the EFIH Settlement Agreement.

18.     "*Allowed EFIH General Unsecured Claim*" means, (a) the Charging Lien Advance; (b) the principal amount outstanding of the EFIH Unsecured Notes, in the amount of $1,568 million; (c) any accrued but

unpaid prepetition interest, in the amount of $81 million; and (d) any additional amounts ordered by the Bankruptcy Court but excluding, for the avoidance of doubt, any recovery on account of asserted Makewhole Claims.

19. *"Allowed EFIH Second Lien Claims"* shall have the meaning set forth in the EFIH Settlement Agreement.

20. *"Amended and Restated Split Participant Agreement"* means that certain Amended and Restated Split Participant Agreement, by and among Oncor Electric, Reorganized TCEH, and OpCo, entered into on or before the TCEH Effective Date, which shall govern the rights and obligations of each party thereto with respect to certain employment matters.

21. *"Approval Order"* means the Final Order authorizing and directing EFH Corp., EFIH, and Reorganized TCEH (and, in the case of the Tax Matters Agreement, EFIH Finance) to enter into (i) the Tax Matters Agreement, (ii) the Transition Services Agreement, if any, (iii) the Amended and Restated Split Participant Agreement, and (iv) the Separation Agreement.

22. *"Assumed Executory Contracts and Unexpired Leases"* means those Executory Contracts and Unexpired Leases assumed by Reorganized EFH and Reorganized EFIH, as set forth on the Assumed Executory Contract and Unexpired Lease List.

23. *"Assumed Executory Contract and Unexpired Lease List"* means the list of Executory Contracts and Unexpired Leases assumed (with proposed cure amounts), as determined by the Plan Sponsor, in its sole discretion, the form of which shall be included in the Plan Supplement; *provided, however,* that notwithstanding Article V.F herein, the following contracts, to the extent such contracts are executory contracts, shall be deemed assumed by Reorganized EFH and Reorganized EFIH, as applicable: (a) the Split Policies (as defined in the Separation Agreement), (b) D&O Insurance Policies at EFH Corp. for the benefit of current or former directors, managers, officers, and employees, and (c) any D&O priority agreement between EFH Corp. and the sponsoring institution of certain directors.

24. *"AST&T"* means American Stock Transfer & Trust Company, LLC.

25. *"Backstop Commitment Agreement"* means that certain Equity Commitment Letter Agreement, that may be entered into by and among New HoldCo and the Backstop Parties, as may be amended from time to time.

26. *"Backstop Parties"* means those certain Entities that are party to the Backstop Commitment Agreement, together with their respective successors and permitted assigns.

27. *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

28. *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

29. *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

30. *"Bar Date"* means the applicable date established by the Bankruptcy Court by which respective Proofs of Claims and Interests must be Filed.

31. *"BNY"* means, collectively: (a) BNYM; and (b) BNYMTC.

32. *"BNYM"* means The Bank of New York Mellon.

33.    "*BNYMTC*" means The Bank of New York Mellon Trust Company, N.A.

34.    "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

35.    "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the U.S., less the amount of any outstanding checks or transfers at such time.

36.    "*Cash Collateral Order*" means the Final Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay [D.I. 855], as further amended, modified, and supplemented from time to time, including D.I. 5922 and D.I. 5923.

37.    "*Cash Deposit Amount*" means the Cash to be delivered by EFH Merger Sub to the EFH Plan Administrator Board for deposit in the EFH/EFIH Cash Distribution Account at the Merger Closing in accordance with the Merger Agreement.

38.    "*Cash Management Order*" means the Final Order (A) Authorizing the Debtors to (I) Continue Using Their Existing Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, and (III) Continue Using Certain Investment Accounts; (B) Authorizing Continued Intercompany Transactions and Netting of Intercompany Claims; and (C) Granting Postpetition Intercompany Claims Administrative Expense Priority [D.I. 801].  The Cash Management Order applies to the Debtors and, prior to the TCEH Effective Date, applied to the TCEH Debtors and EFH Shared Services Debtors.

39.    "*Cash Projections*" means the separate, updated cash projections for each of EFH Corp. and EFIH that assume an EFH Effective Date of March 31, 2018, which shall be filed contemporaneously with the Plan Supplement, subject to ongoing review and revision; *provided* that such Cash Projections shall not be binding on any party.  The Cash Projections will be affected by a number of factors including, among others, Professional Fee Claims and the receipt of Oncor dividends.

40.    "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

41.    "*Chapter 11 Cases*" means, collectively:  (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; (b) when used with reference to the period starting from and after the TCEH Effective Date, all the Debtors pursuant to the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court; and (c) when used with reference to the period between the Petition Date and the TCEH Effective Date, all the Debtors, the TCEH Debtors, and the EFH Shared Services Debtors, pursuant to the then procedurally consolidated and jointly administered chapter 11 cases pending for such debtors.

42.    "*Charging Lien Advance*" means the amount advanced and paid to the EFIH Unsecured Notes Trustee pursuant to that certain Order Approving Additional Relief in Connection with Settlement of Certain EFIH PIK Noteholder Claims [D.I. 7353] and any future amounts advanced and paid to the EFIH Unsecured Notes Trustee pursuant to the charging lien under the EFIH Unsecured Note Indentures.

43.    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

44.    "*Claims and Noticing Agent*" means Epiq Bankruptcy Solutions, LLC, retained as the Debtors' notice and claims agent pursuant to the Order Approving the Retention and Appointment of Epiq Bankruptcy Solutions as the Claims and Noticing Agent for the Debtors [D.I. 321], which Order applies to the Debtors and, prior to the TCEH Effective Date, applied to the TCEH Debtors and EFH Shared Services Debtors.

45.    "*Claims Objection Deadline*" means the later of:  (a) the date that is 180 days after the EFH Effective Date; and (b) such other date as may be fixed by the Bankruptcy Court, after notice and hearing, upon a motion Filed before the expiration of the deadline to object to Claims or Interests.

46.    "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

47.    "*Class*" means a category of Claims or Interests as set forth in Article III of the Plan.

48.    "*Collective Professional Fee Claim*" means Professional Fee Claims incurred by a Professional for the collective benefit of two or more of EFH Corp., EFIH, and, prior to the TCEH Effective Date, TCEH.

49.    "*Committees*" means, collectively:  (a) the TCEH Committee; and (b) the EFH/EFIH Committee.

50.    "*Competitive Tax Sharing Agreement*" means that certain Federal and State Income Tax Allocation Agreement Among the Members of the Energy Future Holdings Corp. Consolidated Group (as amended and restated from time to time), dated May 15, 2012, by and among EFH Corp. and certain of its direct and indirect subsidiaries.

51.    "*Computershare Trust*" means, collectively:  (a) Computershare Trust Company, N.A.; and (b) Computershare Trust Company of Canada.

52.    "*Confirmation*" means the entry of the EFH Confirmation Order on the docket of the Chapter 11 Cases.

53.    "*Confirmation Hearing*" means the one or more hearings held by the Bankruptcy Court to consider Confirmation of the Plan as to one or more Debtors pursuant to section 1129 of the Bankruptcy Code.

54.    "*Conflict Matters*" means for each of EFH Corp., EFIH, and EFCH/TCEH, as defined in the respective resolutions of the applicable Board of Directors or Board of Managers dated November 7, 2014 and December 9, 2014 including the determination of whether any matter constitutes a "Conflict Matter."

55.    "*Consummation*" means the occurrence of the EFH Effective Date.

56.    "*Cure Claim*" means a Claim based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code.

57.    "*Dealer Managers*" means the dealer managers under that certain dealer manager agreement approved under the EFIH First Lien Principal Settlement Order.

58.    "*Debtor*" means one of the EFH/EFIH Debtors, in its individual capacity as a debtor and debtor in possession in its respective Chapter 11 Case.  As used herein, the term "Debtor" shall refer the EFH Debtors when referencing the plan of reorganization of the EFH Debtors and shall refer to the EFIH Debtors when referencing the plan of reorganization of the EFIH Debtors.

59.    "*Debtor Intercompany Claim*" means a Claim by any Debtor against any other Debtor.

60.     "*Debtors*" means: (a) the EFH Debtors, when referencing the plan of reorganization of the EFH Debtors, (b) the EFIH Debtors, when referencing the plan of reorganization of the EFIH Debtors, (c) prior to the TCEH Effective Date, the TCEH Debtors, when referencing the TCEH Plan, and (d) prior to the TCEH Effective Date, the EFH Shared Services Debtors, when referencing the TCEH Plan.

61.     "*DIP Agreements*" means, collectively:  (a) the TCEH DIP Credit Agreement; (b) the Original EFIH First Lien DIP Credit Agreement; and (c) the 2017 EFIH First Lien DIP Credit Agreement.

62.     "*DIP Facilities*" means, collectively:  (a) the TCEH DIP Facility; (b) the Refinanced TCEH DIP Facility; (c) the Original EFIH First Lien DIP Facility; and (d) the 2017 EFIH First Lien DIP Facility.

63.     "*DIP Lenders*" means the Original EFIH First Lien DIP Agent, the 2017 EFIH First Lien DIP Agent, the TCEH DIP Agent, the TCEH DIP L/C Issuers, the Refinanced TCEH DIP Agent, the banks, financial institutions, and other lenders party to the DIP Facilities from time to time, and each arranger, bookrunner, syndication agent, manager, and documentation agent under the DIP Facilities.

64.     "*DIP Orders*" means, collectively:  (a) the TCEH DIP Order; (b) the Original EFIH First Lien Final DIP Order; and (c) the 2017 EFIH First Lien DIP Order.

65.     "*Direct Professional Fee Claims*" means Professional Fee Claims incurred by a Professional for the benefit of only one of the following:  (a) the EFH Debtors; (b) the EFIH Debtors; or (c) prior to the TCEH Effective Date, the TCEH Debtors.

66.     "*Disbursing Agent*" means the Reorganized EFH/EFIH Debtors or the Entity or Entities authorized to make or facilitate distributions under the Plan as selected by the Debtors or the Reorganized EFH/EFIH Debtors, as applicable, in consultation with the Plan Sponsor and the TCEH Supporting First Lien Creditors, *provided* that (a) the EFH Notes Trustee shall be the Disbursing Agent for Classes A4, A5, A6, and B5; (b) the EFIH Unsecured Notes Trustee shall be the Disbursing Agent for distributions to Holders of EFIH Unsecured Note Claims; (c) the EFIH First Lien Notes Trustee, or such other Disbursing Agent pursuant to the EFH Confirmation Order, shall be the Disbursing Agent for distributions to Holders of EFIH First Lien Note Claims; and (d) the EFIH Second Lien Notes Trustee, or other such Disbursing Agent pursuant to the EFH Confirmation Order, shall be the Disbursing Agent for distributions to Holders of EFIH Second Lien Note Claims.

67.     "*Disinterested Directors and Managers*" means the disinterested directors and managers (as applicable) of EFH Corp., EFIH, and EFCH/TCEH.

68.     "*Disinterested Directors Settlement*" means the settlement negotiated by and among the Disinterested Directors and Managers regarding Debtor Intercompany Claims set forth in the Settlement Agreement and Initial Plan.

69.     "*Disputed*" means with regard to any Claim or Interest, a Claim or Interest that is not yet Allowed.

70.     "*Distribution Date*" means the EFH Effective Date and any Periodic Distribution Date thereafter.

71.     "*Distribution Record Date*" means other than with respect to any publicly-held securities, the record date for purposes of making distributions under the Plan on account of Allowed Claims and Allowed Interests (other than the 2017 EFIH First Lien DIP Claims), which date shall be the date that is five (5) Business Days after the EFH Confirmation Date, as applicable, or such other date as designated in an order of the Bankruptcy Court.

72.     "*DTC*" means the Depository Trust Company.

73.     "*EFCH*" means Energy Future Competitive Holdings Company LLC, a Delaware limited liability company.

74.    "*EFCH 2037 Note Claim*" means any Claim derived from or based upon the 8.175% fixed rate notes due January 30, 2037 and the 1.245% floating rate notes due January 30, 2037, each issued by EFCH pursuant to the EFCH 2037 Note Indenture.

75.    "*EFCH 2037 Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated December 1, 1995, by and between EFCH, successor to TXU US Holdings Company, as issuer, and the EFCH 2037 Notes Trustee.

76.    "*EFCH 2037 Notes Trustee*" means BNYMTC, or any successor thereto, as trustee under the EFCH 2037 Note Indenture.

77.    "*EFCH/TCEH*" means, collectively:  (a) EFCH; and (b) TCEH.

78.    "*EFH 2019 Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated November 16, 2009, by and among EFH Corp., as issuer, and the EFH Notes Trustee.

79.    "*EFH 2019 Notes*" means the 9.75% unsecured notes due October 15, 2019, issued by EFH Corp. pursuant to the EFH 2019 Note Indenture.

80.    "*EFH 2020 Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated January 12, 2010, by and among EFH Corp., as issuer, and the EFH Notes Trustee.

81.    "*EFH 2020 Notes*" means the 10.0% unsecured notes due January 15, 2020, issued by EFH Corp. pursuant to the EFH 2020 Note Indenture.

82.    "*EFH Beneficiary Claims*" means, collectively: (a) the Allowed EFH Non-Qualified Benefit Claims; (b) the Allowed EFH Unexchanged Note Claims; and (c) the Allowed General Unsecured Claims Against EFH Corp.; *provided, however*, that any of the foregoing Claims shall cease to constitute EFH Beneficiary Claims if the Class comprised of such Claims fails to accept or fails to reject the Plan consistent with the Voting Indication (as such term is defined in the EFH/EFIH Committee Settlement), if any.

83.    "*EFH Cash Account*" means the segregated account within the EFH/EFIH Cash Distribution Account consisting of EFH Corp. Cash.

84.    "*EFH Confirmation Date*" means the date upon which the Bankruptcy Court enters the EFH Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

85.    "*EFH Confirmation Order*" means one or more orders of the Bankruptcy Court confirming the Plan with respect to one or more EFH Debtors or EFIH Debtors pursuant to section 1129 of the Bankruptcy Code. The EFH Confirmation Order shall be reasonably acceptable to the 2017 EFIH First Lien DIP Agent and acceptable to the Plan Sponsor.

86.    "*EFH Corp.*" means Energy Future Holdings Corp., a Texas corporation.

87.    "*EFH Corp. Cash*" means (a) any Cash held by EFH Corp. as of the EFH Effective Date, plus (b) the sum of any Cash payable to EFH Corp. as of the EFH Effective Date under the Oncor Tax Sharing Agreement, and/or related to the winddown of those certain rabbi trusts held at EFH Corp. related to the EFH Non-Qualified Benefit Plan, minus (c) any amount payable to Oncor by EFH Corp. as of the EFH Effective Date under the Oncor Tax Sharing Agreement, minus (d) the amount, if any, described in the Tax Contingency Disclosure.

88.    "*EFH Corp. Claims*" means, collectively:  (a) the Allowed EFH Legacy Note Claims; (b) the Allowed EFH Swap Claims; (c) the Allowed EFH LBO Note Primary Claims; (d) the Allowed TCEH Settlement Claim; (e) the Allowed EFH Non-Qualified Benefit Claims; (f) the Allowed EFH Unexchanged Note Claims; (g) the Allowed General Unsecured Claims Against EFH Corp.; and (h) the Allowed General Unsecured Claims Against EFH Debtors Other Than EFH Corp; *provided, however*, that solely in the event that Holders of Allowed EFH LBO

Note Primary Claims receive a recovery in full of their Allowed EFH LBO Note Guaranty Claims, the Allowed EFH LBO Note Primary Claims shall not be included in the definition of EFH Corp. Claims.

89.  "*EFH Corporate Services*" means EFH Corporate Services Company, a Texas corporation.

90.  "*EFH Debtor Intercompany Claim*" means any Claim by an EFH Debtor against another EFH Debtor.

91.  "*EFH Debtors*" means, collectively:  (a) EFH Corp.; (b) Ebasco Services of Canada Limited; (c) EEC Holdings, Inc.; (d) EECI, Inc.; (e) EFH Australia (No. 2) Holdings Company; (f) EFH Finance (No. 2) Holdings Company; (g) EFH FS Holdings Company; (h) EFH Renewables Company LLC; (i) Generation Development Company LLC; (j) LSGT Gas Company LLC; (k) LSGT SACROC, Inc.; (l) NCA Development Company LLC; and (m) TXU Receivables Company.

92.  "*EFH Disclosure Statement*" means the *Disclosure Statement for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, dated September 11, 2017 [D.I. ____], including all exhibits and schedules thereto, as approved pursuant to the EFH Disclosure Statement Order.

93.  "*EFH Disclosure Statement Order*" means the *Order (A) Approving the EFH Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents*, dated September 6, 2017 [D.I. 11870].

94.  "*EFH Effective Date*" means, with respect to the Plan, the date after the EFH Confirmation Date selected by (a) the EFH Debtors and EFIH Debtors, including, in the case of any Conflict Matter between any Debtors, each Debtor acting at the direction of its respective Disinterested Director or Manager and without the consent of any other Debtor and (b) the Plan Sponsor, on which:  (i) no stay of the EFH Confirmation Order is in effect; and (ii) all conditions precedent to the EFH Effective Date specified in Article IX.B have been satisfied or waived (in accordance with Article IX.C).

95.  "*EFH Unsecured Creditor Recovery Pool*" means (a) EFH Corp. Cash after payment in full of all Allowed Administrative Claims against the EFH Debtors, including, for the avoidance of doubt, Allowed Cure Claims with respect to Assumed Executory Contracts and Leases assumed by Reorganized EFH on the EFH Effective Date (or pursuant to a separate Bankruptcy Court order), all Allowed Priority Tax Claims against the EFH Debtors, all Allowed Class A1 Claims and Allowed Class A2 Claims, and (b) any Cash remaining in the EFH/EFIH Cash Distribution Account after payment in full of all Allowed Claims against EFIH Debtors; *provided, however,* that, consistent with the terms of the Merger Agreement and the Tax Contingency Disclosure, adjustments to the form of consideration included in the EFH Unsecured Creditor Recovery Pool shall be made, including the issuance, if any, of Rollover Trust Certificates pursuant to the actual or deemed transactions described in Article IV.B.4 of this Plan (with a corresponding adjustment to the Cash deposited to the EFH Cash Account or the Cash Deposit Amount, such that the overall purchase price paid or contributed and overall stakeholder recovery remains unchanged on an overall basis, and with such additional details to be set forth in the Tax Contingency Disclosure); *provided, further,* however that, in all circumstances, each Holder of an Allowed Claim in Classes A4-A11 shall receive its Pro Rata share of at least the value of EFH Corp. Cash, less such amounts necessary to satisfy all Allowed EFH Administrative Claims, including, for the avoidance of doubt, any Allowed Cure Claims with respect to Assumed Executory Contracts and Leases assumed by Reorganized EFH on the EFH Effective Date (or pursuant to a separate Bankruptcy Court order), all Allowed Priority Claims, and all Allowed Claims in Classes A1 and A2 in full; *provided, further,* that the Holders of Allowed EFH Non-Qualified Benefit Claims shall receive Cash on account of their Claims (including any TCEH Settlement Claim Turnover Distributions distributed to such Holders of EFH Non-Qualified Benefit Claims).

96.  "*EFH/EFIH Cash Distribution Account*" means, collectively, one or more interest-bearing escrow accounts (set forth in one or more segregated accounts) collectively consisting of (a) the Cash Deposit Amount, (b) the EFIH First Lien DIP Repayment Amount, (c) the EFH Cash Account (subject to adjustment as described in the Tax Contingency Disclosure), including the Cash distributed to satisfy Allowed EFH Non-Qualified Benefit

Claims, (d) the Cash on hand at the EFIH Debtors as of the EFH Effective Date, including the EFIH Unsecured Creditor Recovery Pool (subject to the adjustments described in the Tax Contingency Disclosure), and (e) any other amounts to be funded into the EFH/EFIH Cash Distribution Account pursuant to the terms of the Plan, Merger Agreement, or the EFH Secured Settlement Approval Order, *provided* that, notwithstanding anything herein to the contrary, neither the Plan Sponsor, the EFH/EFIH Debtors, nor Reorganized EFH or Reorganized EFIH shall have any obligation to fund any amounts other than as set forth in the Merger Agreement, as applicable, which accounts shall be administered by the EFH Plan Administrator Board.  The EFH/EFIH Cash Distribution Account shall include a general escrow account into which the Cash Deposit Amount shall be funded.

97.    "*EFH/EFIH Cash Distribution Account Disclosure*" means the details on each category of Claims, costs, and reserves to be provided for in the EFH/EFIH Cash Distribution Account (as set forth herein), and the Debtors' good-faith, non-binding estimates of the value of each as of the projected EFH Effective Date, which shall be included in the Plan Supplement.

98.    "*EFH/EFIH Committee*" means the statutory committee of unsecured creditors of EFH Corp., EFIH, EFIH Finance, and EECI, Inc., appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on October 27, 2014, the membership of which may be reconstituted from time to time.

99.    "*EFH/EFIH Committee Settlement*" means the Settlement & Support Agreement, dated as of November 23, 2015, by and among EFH Corp., EFIH, EFIH Finance, EEC Holdings, Inc., EECI, Inc., LSGT Gas Company LLC, LSGT SACROC, Inc., TCEH, the EFH/EFIH Committee, the EFH Notes Trustee, the TCEH Supporting First Lien Creditors, the Original Plan Sponsors, and the TCEH Committee, as approved under the EFH/EFIH Committee Settlement Order.

100.    "*EFH/EFIH Committee Settlement Order*" means the Order Approving Settlement Among Debtors, EFH Committee, EFH Notes Trustee, and Certain Other Parties [D.I. 7143], entered by the Bankruptcy Court on November 25, 2015.

101.    "*EFH/EFIH Committee Standing Motion*" means the Motion of the EFH Official Committee for Entry of an Order Granting Derivative Standing and Authority to Prosecute and Settle Claims on Behalf of the Luminant Debtors' Estates [D.I. 3605].

102.    "*EFH/EFIH Debtors*" means, collectively:  (a) the EFH Debtors; and (b) the EFIH Debtors, as listed on Exhibit A to the Plan.

103.    "*EFH/EFIH Plan Supporters*" means, collectively: (a) the Plan Sponsor; and (b) excluding the EFH/EFIH Debtors, any party that is or may become party to the Sempra Plan Support Agreement.

104.    "*EFH Group*" means the "affiliated group" (within the meaning of Section 1504(a)(1) of the Internal Revenue Code), and any consolidated, combined, aggregate, or unitary group under state or local law, of which EFH Corp. is the common parent.

105.    "*EFH LBO Note Claims*" means, collectively:  (a) the EFH LBO Note Primary Claims; and (b) the EFH LBO Note Guaranty Claims.

106.    "*EFH LBO Note Guaranty Claim*" means any Claim against EFIH derived from or based upon the EFH LBO Notes.

107.    "*EFH LBO Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated October 31, 2007, by and among EFH Corp., as issuer, EFCH and EFIH as guarantors, and the EFH Notes Trustee.

108.    "*EFH LBO Note Primary Claim*" means any Claim against EFH Corp. derived from or based upon the EFH LBO Notes.

109.    "*EFH LBO Notes*" means, collectively: (a) the 10.875% senior notes due November 1, 2017; and (b) the 11.25%/12.00% toggle notes due November 1, 2017, each issued by EFH Corp. pursuant to the EFH LBO Note Indenture.

110.    "*EFH Legacy Note Claims*" means, collectively: (a) the EFH Legacy Series P Claims; (b) the EFH Legacy Series Q Claims; and (c) the EFH Legacy Series R Claims.

111.    "*EFH Legacy Note Indentures*" means, collectively: (a) the EFH Legacy Series P Indenture; (b) the EFH Legacy Series Q Indenture; (c) the EFH Legacy Series R Indenture; and (d) the EFH Legacy Series R First Supplemental Indenture.

112.    "*EFH Legacy Notes*" means, collectively: (a) the EFH Legacy Series P Notes; (b) the EFH Legacy Series Q Notes; and (c) the EFH Legacy Series R Notes.

113.    "*EFH Legacy Series P Claim*" means any Claim derived from or based upon the EFH Legacy Series P Notes, excluding any Claims derived from or based upon EFH Legacy Series P Notes held by EFIH (if any).

114.    "*EFH Legacy Series P Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated November 1, 2004, by and among EFH Corp., as issuer, and the EFH Notes Trustee.

115.    "*EFH Legacy Series P Notes*" means the 5.55% Series P Senior Notes due November 15, 2014, issued by EFH Corp. pursuant to the EFH Legacy Series P Indenture and related officer's certificate.

116.    "*EFH Legacy Series Q Claim*" means any Claim derived from or based upon the EFH Legacy Series Q Notes, excluding any Claims derived from or based upon EFH Legacy Series Q Notes held by EFIH (if any).

117.    "*EFH Legacy Series Q Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated November 1, 2004, by and among EFH Corp., as issuer, and the EFH Notes Trustee.

118.    "*EFH Legacy Series Q Notes*" means the 6.50% Series Q Senior Notes due November 15, 2024, issued by EFH Corp. pursuant to the EFH Legacy Series Q Indenture and related officer's certificate.

119.    "*EFH Legacy Series R Claim*" means any Claim derived from or based upon the EFH Legacy Series R Notes, excluding any Claims derived from or based upon EFH Legacy Series R Notes held by EFIH (if any).

120.    "*EFH Legacy Series R First Supplemental Indenture*" means that certain Supplemental Indenture, dated December 5, 2012, by and among EFH Corp., as issuer, and the EFH Notes Trustee.

121.    "*EFH Legacy Series R Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated November 1, 2004, by and among EFH Corp., as issuer, and the EFH Notes Trustee.

122.    "*EFH Legacy Series R Notes*" means the 6.55% Series R Senior Notes due November 15, 2034, issued by EFH Corp. pursuant to the EFH Legacy Series R Indenture and related officer's certificate.

123.    "*EFH Merger*" means that certain merger on the EFH Effective Date of EFH Merger Sub with and into Reorganized EFH with Reorganized EFH continuing as the surviving entity.

124.    "*EFH Merger Sub*" means Power Play Merger Sub I, Inc. a Delaware corporation wholly owned by Intermediary HoldCo, and with whom Reorganized EFH will merge.

125.    "*EFH Non-Debtors*" means, collectively: (a) TXU Europe Limited; (b) TXU Eastern Finance (A) Ltd; (c) TXU Eastern Finance (B) Ltd; (d) TXU Finance (No. 2) Limited; (e) TXU Eastern Funding Company; (f)

TXU Acquisitions Limited; (g) Humphreys & Glasgow Limited; (h) EFH Vermont Insurance Company; and (i) any other non-U.S., non-Debtor Entities.

126.    "*EFH Non-Qualified Benefit Claim*" means any Claim against the EFH Debtors derived from or based upon an EFH Non-Qualified Benefit Plan.

127.    "*EFH Non-Qualified Benefit Plan*" means either: (a) a non-contributory, non-qualified pension plan that provides retirement benefits to participants whose tax-qualified pension benefits are limited due to restrictions under the Internal Revenue Code and/or deferrals to other benefit programs; and/or (b) a contributory, non-qualified defined contribution plan that permits participants to voluntarily defer a portion of their base salary and/or annual incentive plan bonuses.

128.    "*EFH Note Indentures*" means, collectively:  (a) the EFH Legacy Note Indentures; (b) the EFH LBO Note Indenture; and (c) the EFH Unexchanged Notes Indentures.

129.    "*EFH Notes Trustee*" collectively means AST&T, in its capacity as successor trustee to BNYMTC under the EFH Note Indentures.

130.    "*EFH Notes Trustee Substantial Contribution Ruling*" means the ruling by the Bankruptcy Court made on the record at the February 17, 2017 hearing to confirm the NextEra Plan that, as of such date, the EFH Notes Trustee made a substantial contribution in the Chapter 11 Cases in accordance with sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code and is entitled to reasonable fees and expenses incurred between the Petition Date and February 17, 2017, subject to agreed-upon review and approval procedures.

131.    "*EFH Plan Administrator Board*" shall be a one- or two-member board of directors comprised of a person or persons to be identified in the Plan Supplement as determined by the EFH Debtors and EFIH Debtors in their sole and absolute discretion, which board shall be appointed on or after the EFH Effective Date and tasked with directing the Disbursing Agent with respect to Cash distributions made on account of Allowed Claims asserted against the EFH Debtors and EFIH Debtors and shall not, for the avoidance of doubt, be authorized to direct the Disbursing Agent with respect to any Cash distributions made on account of Allowed Claims asserted against the TCEH Debtors or EFH Shared Services Debtors, if any.

132.    "*EFH Professional Fee Escrow Account*" means an escrow account established and funded pursuant to Article II.A.2(b) of the Plan for Professional Fee Claims estimated pursuant to Article II.A.2(c) of the Plan to be allocated to the EFH Debtors or the Reorganized EFH Debtors pursuant to Article II.A.2(d) of the Plan.

133.    "*EFH Professional Fee Reserve Amount*" means the total amount of Professional Fee Claims estimated to be allocated to the EFH Debtors or the Reorganized EFH Debtors in accordance with Article II.A.2(c) of the Plan.

134.    "*EFH Series N Note Claim*" means any Claim derived from or based upon the EFH Series N Notes.

135.    "*EFH Series N Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated July 3, 2003, by and among EFH Corp., as issuer, and the EFH Series N Notes Trustee.

136.    "*EFH Series N Notes*" means the floating rate convertible notes due 2033 issued by EFH Corp. pursuant to the EFH Series N Note Indenture.

137.    "*EFH Series N Notes Trustee*" means BNYMTC, in its capacity under the EFH Series N Notes.

138.    "*EFH Shared Services Debtors*" means, collectively:  (a) EFH Corporate Services; (b) Dallas Power and Light Company, Inc.; (c) EFH CG Holdings Company LP; (d) EFH CG Management Company LLC; (e) Lone Star Energy Company, Inc.; (f) Lone Star Pipeline Company, Inc.; (g) Southwestern Electric Service Company, Inc.; (h) Texas Electric Service Company, Inc.; (i) Texas Energy Industries Company, Inc.; (j) Texas

RLFI 18943843v.1

Power and Light Company, Inc.; (k) Texas Utilities Company, Inc.; (l) Texas Utilities Electric Company, Inc.; (m) TXU Electric Company, Inc.; (n) Brighten Energy LLC; and (o) Brighten Holdings LLC.

139.    "*EFH Swap Claim*" means any Claim against EFH Corp. derived from or based upon the EFH Swaps.

140.    "*EFH Swaps*" means those certain swaps entered into by EFH Corp. on an unsecured basis.

141.    "*EFH Unexchanged Notes Indentures*" means, collectively: (a) the EFH 2019 Note Indenture; and (b) the EFH 2020 Note Indenture.

142.    "*EFH Unexchanged Note Claim*" means any Claim derived from or based upon the EFH Unexchanged Notes.

143.    "*EFH Unexchanged Notes*" means, collectively:  (a) the EFH 2019 Notes; and (b) the EFH 2020 Notes.

144.    "*EFIH*" means Energy Future Intermediate Holding Company LLC, a Delaware limited liability company.

145.    "*EFIH Cash*" means the Cash on hand at EFIH as of the EFH Effective Date, after giving effect to the transactions contemplated by the Merger Agreement, including the funding of the Cash Deposit Amount and the EFIH First Lien DIP Repayment Amount.

146.    "*EFIH Collateral Trust Agreement*" means the collateral trust agreement by and between EFIH, Delaware Trust Company, as successor collateral trustee to BNY, and the other Secured Debt Representatives from time to time party thereto, dated as of November 16, 2009.

147.    "*EFIH Debtor Intercompany Claim*" means any Claim by an EFIH Debtor against another EFIH Debtor.

148.    "*EFIH Debtors*" means, collectively:  (a) EFIH; and (b) EFIH Finance.

149.    "*EFIH DIP Secured Cash Management Obligations*" means the "Secured Cash Management Obligations," as defined in the 2017 EFIH First Lien DIP Order.

150.    "*EFIH DIP Secured Hedge Obligations*" means the "Secured Hedge Obligations" as defined in the 2017 EFIH First Lien DIP Order.

151.    "*EFIH Finance*" means EFIH Finance Inc., a Delaware corporation.

152.    "*EFIH First Lien 6.875% Notes*" means the EFIH First Lien Notes that bear interest (because of an increase in the rate of 50 basis points due to the EFIH Debtors' failure to register them) under the applicable agreements at a rate of 7.375% per annum (CUSIPs 29269Q AE7 & U29197).

153.    "*EFIH First Lien 10.0% Notes*" means the EFIH First Lien Notes that bear interest under the applicable agreements at a rate of 10.000% per annum (CUSIP 29269QAA5).

154.    "*EFIH First Lien 10.5% Notes*" means the EFIH First Lien Notes that bear interest (because of an increase in the rate of 50 basis points due to the EFIH Debtors' failure to register them) under the applicable agreements at a rate of 10.500% per annum (CUSIPs 29269QAK3 & U29197AG2).

155.    "*EFIH First Lien 2017 Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated August 14, 2012, by and among the EFIH Debtors, as issuers, and the EFIH First Lien Notes Trustee.

156.    "*EFIH First Lien 2017 Notes*" means the 6.875% senior secured notes due August 15, 2017, issued by the EFIH Debtors pursuant to the EFIH First Lien 2017 Note Indenture.

157.    "*EFIH First Lien 2020 Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated August 17, 2010, by and among the EFIH Debtors, as issuers, and the EFIH First Lien Notes Trustee.

158.    "*EFIH First Lien 2020 Notes*" means the 10.0% senior secured notes due December 1, 2020, issued by the EFIH Debtors pursuant to the EFIH First Lien 2020 Note Indenture.

159.    "*EFIH First Lien DIP Agreements*" means, collectively, the Original EFIH First Lien DIP Credit Agreement and the 2017 EFIH First Lien DIP Credit Agreement.

160.    "*EFIH First Lien DIP Facilities*" means, collectively, the Original EFIH First Lien DIP Facility and the 2017 EFIH First Lien DIP Facility.

161.    "*EFIH First Lien DIP Orders*" means, collectively, the Original EFIH First Lien Final DIP Order and the 2017 EFIH First Lien DIP Order.

162.    "*EFIH First Lien DIP Repayment Amount*" means the "DIP Repayment," as that term is defined in the Merger Agreement, which shall be an amount in Cash sufficient to repay all outstanding Allowed 2017 EFIH First Lien DIP Claims in accordance with Article II.B of the Plan.

163.    "*EFIH First Lien Intercreditor Action*" means the pending appeal by the EFIH First Lien Notes Trustee against the EFIH Second Lien Notes Trustee for turnover and other relief (Delaware Trust Company, as Indenture Trustee v. Computershare Trust Company, N.A., et al., No. 16-cv-461 (D. Del.)).

164.    "*EFIH First Lien Note Claim*" means any Secured Claim derived from or based upon the EFIH First Lien Notes (including, for the avoidance of doubt, any Claim by a Holder of an EFIH First Lien Note Claim or the EFIH First Lien Notes Trustee based upon or under the EFIH Collateral Trust Agreement).

165.    "*EFIH First Lien Note Indentures*" means, collectively:  (a) the EFIH First Lien 2017 Note Indenture; and (b) the EFIH First Lien 2020 Note Indenture.

166.    "*EFIH First Lien Notes*" means, collectively:  (a) the EFIH First Lien 2017 Notes; and (b) the EFIH First Lien 2020 Notes (and the EFIH First Lien 2017 Note Indenture and the EFIH First Lien 2020 Note Indenture).

167.    "*EFIH First Lien Notes Trustee*" means Delaware Trust Company, as successor indenture trustee to BNY.

168.    "*EFIH First Lien Post-Effective Date Fees and Indemnification Claims*" shall have the meaning set forth in the EFIH Settlement Agreement.

169.    "*EFIH First Lien Post-Effective Date Fee and Indemnification Reserve*" means the "EFIH First Lien Post-Effective Date Fee and Indemnification Reserve" as defined in the EFIH Settlement Agreement.

170.    "*EFIH First Lien Principal Settlement*" means that certain settlement approved by the EFIH First Lien Principal Settlement Order.

171.    "*EFIH First Lien Principal Settlement Order*" means the Order Approving EFIH First Lien Settlement [D.I. 858].

RLF1 18943843v.1

172.    "*EFIH Professional Fee Escrow Account*" means an escrow account established and funded pursuant to Article II.A.2(b) of the Plan for Professional Fee Claims estimated pursuant to Article II.A.2(c) of the Plan to be allocated to the EFIH Debtors or the Reorganized EFIH Debtors pursuant to Article II.A.2(d) of the Plan.

173.    "*EFIH Professional Fee Reserve Amount*" means the total amount of Professional Fee Claims estimated to be allocated to the EFIH Debtors or the Reorganized EFIH Debtors in accordance with Article II.A.2(c) of the Plan.

174.    "*EFIH Second Lien Note Claim*" means any Secured Claim derived from or based upon the EFIH Second Lien Notes (including, for the avoidance of doubt, any Claim by a Holder of an EFIH Second Lien Note Claim or the EFIH Second Lien Notes Trustee based upon or under the EFIH Collateral Trust Agreement).

175.    "*EFIH Second Lien Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated April 25, 2011, by and among the EFIH Debtors, as issuers, and the EFIH Second Lien Notes Trustee.

176.    "*EFIH Second Lien Notes*" means, collectively:  (a) the 11.0% senior secured second lien notes due October 1, 2021; and (b) the 11.75% senior secured second lien notes due March 1, 2022, issued by the EFIH Debtors pursuant to the EFIH Second Lien Note Indenture (and the EFIH Second Lien Note Indenture).

177.    "*EFIH Second Lien Notes Trustee*" means Computershare Trust, as successor indenture trustee to BNY.

178.    "*EFIH Second Lien Partial Repayment*" means the partial repayment of EFIH Second Lien Notes, in the amount of up to $750 million, effectuated pursuant to the Order (A) Authorizing Partial Repayment of EFIH Second Lien Notes; (B) Approving EFIH DIP Consent; and (C) Authorizing Consent Fee [D.I. 3855].

179.    "*EFIH Second Lien Post-Effective Date Fees and Indemnification Claims*" shall have the meaning set forth in the EFIH Settlement Agreement.

180.    "*EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve*" means the "EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve" as defined in the EFIH Settlement Agreement.

181.    "*EFIH Secureds Settlement Approval Order*" means the Order Approving the EFIH Settlement Between the Debtors, Certain Holders of EFIH First Lien Note Claims, Certain Holders of EFIH Second Lien Note Claims, and Certain Holders of EFIH Unsecured Note Claims [D.I. 11048]. With respect to the EFIH First Lien Settlement (as defined in the EFIH Settlement Agreement), the EFIH Secureds Settlement Approval Order shall refer to the order of the Bankruptcy Court approving the EFIH First Lien Settlement. With respect to the EFIH Second Lien Settlement (as defined in the EFIH Settlement Agreement), the EFIH Secureds Settlement Approval Order shall refer to the order of the Bankruptcy Court approving the EFIH Second Lien Settlement.  For the avoidance of doubt, none of the Plan Sponsor, EFH Merger Sub, or the Reorganized EFH/EFIH Debtors shall have or incur any liability pursuant to the EFIH Secureds Settlement Approval Order, and any payment obligations of such parties shall be strictly as provided in the Merger Agreement.

182.    "*EFIH Senior Toggle Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated December 5, 2012, by and among the EFIH Debtors, as issuers, and the EFIH Unsecured Notes Trustee.

183.    "*EFIH Senior Toggle Notes*" means the 11.25%/12.25% senior unsecured notes due December 1, 2018, issued by the EFIH Debtors pursuant to the EFIH Senior Toggle Note Indenture.

184.    "*EFIH Settlement Agreement*" means that certain settlement agreement approved pursuant to the EFIH Secureds Settlement Approval Order by and among the EFH/EFIH Debtors, the Supporting EFIH Unsecured Creditors, the Supporting EFIH First Lien Creditors, and the Supporting EFIH Second Lien Creditors (each as defined therein).

185. "*EFIH Unexchanged Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated November 16, 2009, by and among the EFIH Debtors, as issuers, and the EFIH Unsecured Notes Trustee.

186. "*EFIH Unexchanged Notes*" means the 9.75% unsecured notes due October 15, 2019, issued by the EFIH Debtors pursuant to the EFIH Unexchanged Note Indenture.

187. "*EFIH Unsecured Creditor Plan Support Agreement*" means that certain plan support agreement entered into on January 2, 2017, as amended or modified on January 19, 2017, by and among the EFH Debtors, the EFIH Debtors, the EFIH Unsecured Notes Trustee, the EFIH Unsecured Notes Trustee, and certain holders or investment advisors or managers of discretionary accounts of such beneficial holders that hold, or direct the vote of, EFIH Unsecured Note Claims, which was terminated on July 8, 2017 [D.I. 11435].

188. "*EFIH Unsecured Creditor Recovery Pool*" means (a) the EFIH Cash, after giving effect to all other transactions and distributions contemplated by the Merger Agreement to occur on, before, or after the EFH Effective Date and the satisfaction in full of all Allowed 2017 EFIH First Lien DIP Claims, Allowed Claims in Classes B1, B2, B3, and B4 (including the funding of the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve and the EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve), Allowed General Administrative Claims against the EFIH Debtors, including, for the avoidance of doubt, Allowed Cure Claims with respect to Assumed Executory Contracts and Leases which Reorganized EFIH will assume on the EFH Effective Date (or pursuant to separate Bankruptcy Court order), Allowed Priority Tax Claims (if any), and Allowed Professional Fee Claims allocated to the EFIH Debtors (including the funding of the EFIH Professional Fee Reserve, in accordance with the Plan and Confirmation Order) and (b) any other amounts that Holders of Claims entitled to distributions from the EFIH Unsecured Creditor Recovery Pool are entitled to receive under the Plan, and as expressly provided in the Plan, the Merger Agreement, and the EFIH Secureds Settlement Approval Order, if any; *provided, however* that, consistent with the terms of the Merger Agreement and the Tax Contingency Disclosure, adjustments to the form of consideration included in the EFIH Unsecured Creditor Recovery Pool shall be made, including the issuance, if any, of Rollover Trust Certificates pursuant to the actual or deemed transactions described in Article IV.B.4 of this Plan (with a corresponding adjustment to the Cash Deposit Amount, such that the overall purchase price paid or contributed and overall stakeholder recovery remains unchanged on an aggregate basis, and with such additional details to be set forth in the Tax Contingency Disclosure).

189. "*EFIH Unsecured Note Claim*" means any Claim derived from or based upon the EFIH Unsecured Notes.

190. "*EFIH Unsecured Note Indentures*" means, collectively:   (a) the EFIH Senior Toggle Note Indenture; and (b) the EFIH Unexchanged Note Indenture.

191. "*EFIH Unsecured Notes*" means, collectively:   (a) the EFIH Senior Toggle Notes; and (b) the EFIH Unexchanged Notes.

192. "*EFIH Unsecured Notes Trustee*" means UMB Bank, N.A., as successor trustee to BNY.

193. "*EFIH Unsecured Notes Trustee Fees and Expenses*" means the fees and expenses of the EFIH Unsecured Notes Trustee incurred as of the EFH Effective Date.

194. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

195. "*Environmental Action*" means the pending case of United States v. Luminant Generation Company LLC, et al., 3:13-cv-3236-K (N.D. Tex.).

196. "*Environmental Law*" means all federal, state and local statutes, regulations, ordinances and similar provisions having the force or effect of law, all judicial and administrative orders, agreements and determinations and all common law concerning pollution or protection of the environment, or environmental impacts on human health and safety, including, without limitation, the Atomic Energy Act; the Comprehensive

RLF1 18943843v.1

Environmental Response, Compensation, and Liability Act; the Clean Water Act; the Clean Air Act; the Emergency Planning and Community Right-to-Know Act; the Federal Insecticide, Fungicide, and Rodenticide Act; the Nuclear Waste Policy Act; the Resource Conservation and Recovery Act; the Safe Drinking Water Act; the Surface Mining Control and Reclamation Act; the Toxic Substances Control Act; and any state or local equivalents.

197.    "*ERISA*" means the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 as amended, (2006 V. Supp. 2011), and the regulations promulgated thereunder.

198.    "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

199.    "*Exculpated Parties*" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Committees and each of their respective members; and (c) with respect to each of the foregoing, such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

200.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

201.    "*Exit Facilities*" means (i) the Exit Term Loan Facility and (ii) the Exit Revolving Facility.

202.    "*Exit Facility Agreement*" means one or more credit agreements governing the Exit Facilities, in each case, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

203.    "*Exit Facility Documents*" means all loan and security documents relating to the Exit Facilities, including the Exit Facility Agreement, in each case, as the same may be amended, restated, supplemented or otherwise modified from time to time.

204.    "*Exit Term Loan Facility*" means a senior secured term loan facility in an aggregate principal amount of up to $3 billion, which may be entered into by Reorganized EFH on the EFH Effective Date pursuant to the Exit Facility Agreement.

205.    "*Exit Revolving Facility*" means a senior secured revolving loan facility with permitted borrowings up to $120 million, which may be entered into by Reorganized EFH on the EFH Effective Date pursuant to the Exit Facility Agreement.

206.    "*Federal Judgment Rate*" means the rate of interest calculated pursuant to the provisions of 28 U.S.C. § 1961, which shall be a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, as of the Petition Date, which rate was 0.11%, compounded annually.

207.    "*Fee Committee*" means that certain fee review committee appointed pursuant to the Stipulation and Consent Order Appointing a Fee Committee [D.I. 1891].

208.    "*File*," "*Filed*," or "*Filing*" means file, filed, or a filing in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, including with respect to a Proof of Claim or Proof of Interest, the Claims and Noticing Agent.

209.    "*Final Order*" means (a) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in any Chapter 11 Case (or any related adversary

proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided, however*, that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

210.    "*General Administrative Claim*" means any Administrative Claim, other than a Professional Fee Claim.

211.    "*General Unsecured Claim Against EFCH*" means any Unsecured Claim against EFCH that is not otherwise paid in full pursuant to an order of the Bankruptcy Court, including the EFCH 2037 Note Claims, but excluding:  (a) Administrative Claims against EFCH; (b) Priority Tax Claims against EFCH; (c) Intercompany Claims against EFCH; (d) Other Priority Claims against EFCH; and (e) TCEH DIP Claim.

212.    "*General Unsecured Claim Against EFH Corp.*" means any Unsecured Claim against EFH Corp. that is not otherwise paid in full pursuant to an order of the Bankruptcy Court, including the EFH Series N Note Claims, but excluding:  (a) Legacy General Unsecured Claims Against the EFH Debtors; (b) EFH Legacy Note Claims; (c) EFH Unexchanged Note Claims; (d) EFH LBO Note Primary Claims; (e) EFH Swap Claims; (f) EFH Non-Qualified Benefit Claims; (g) the TCEH Settlement Claim; (h) Administrative Claims against EFH Corp.; (i) Priority Tax Claims against EFH Corp.; (j) Intercompany Claims against EFH Corp.; (k) Other Priority Claims against EFH Corp.; and (l) 2017 EFIH First Lien DIP Claims.

213.    "*General Unsecured Claim Against the EFH Debtors Other Than EFH Corp.*" means any Unsecured Claim against one or more of the EFH Debtors (other than EFH Corp.) that is not otherwise paid in full pursuant to an order of the Bankruptcy Court, but excluding:  (a) Legacy General Unsecured Claims Against the EFH Debtors; (b) EFH Non-Qualified Benefit Claims; (c) Administrative Claims against the EFH Debtors other than EFH Corp.; (d) Priority Tax Claims against the EFH Debtors other than EFH Corp.; (e) Intercompany Claims against the EFH Debtors other than EFH Corp.; (f) Other Priority Claims against the EFH Debtors other than EFH Corp.; and (g) 2017 EFIH First Lien DIP Claims.

214.    "*General Unsecured Claim Against the EFH Shared Services Debtors*" means any Unsecured Claim against one or more of the EFH Shared Services Debtors that is not otherwise paid in full pursuant to an order of the Bankruptcy Court, excluding:  (a) Administrative Claims against the EFH Shared Services Debtors; (b) Priority Tax Claims against the EFH Shared Services Debtors; (c) Intercompany Claims against the EFH Shared Services Debtors; (d) Other Priority Claims against the EFH Shared Services Debtors; and (e) TCEH DIP Claim.

215.    "*General Unsecured Claim Against the EFIH Debtors*" means any Unsecured Claim against one or more of the EFIH Debtors that is not otherwise paid in full pursuant to an order of the Bankruptcy Court, including the EFIH Unsecured Note Claims and any Unsecured Claims derived from or based upon the EFIH First Lien Notes or EFIH Second Lien Notes, but excluding:  (a) EFH LBO Note Guaranty Claims; (b) Administrative Claims against the EFIH Debtors; (c) Priority Tax Claims against the EFIH Debtors; (d) Intercompany Claims against the EFIH Debtors; (e) Other Priority Claims against the EFIH Debtors; and (f) 2017 EFIH First Lien DIP Claims.

216.    "*General Unsecured Claim Against the TCEH Debtors Other Than EFCH*" means any Unsecured Claim against one or more of the TCEH Debtors other than EFCH that is not otherwise paid in full pursuant to an order of the Bankruptcy Court, including the Legacy General Unsecured Claims Against the TCEH Debtors, but excluding: (a) TCEH Unsecured Debt Claims; (b) Administrative Claims against the TCEH Debtors Other Than EFCH; (c) Priority Tax Claims against the TCEH Debtors Other Than EFCH; (d) Intercompany Claims against the TCEH Debtors Other Than EFCH; (e) Other Priority Claims against the TCEH Debtors Other Than EFCH; and (f) TCEH DIP Claim.

217.   "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

218.   "*Holder*" means an Entity holding a Claim or an Interest, as applicable.

219.   "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

220.   "*Incremental Amendment Agreement*" means that certain Incremental Amendment No. 1, dated as January 4, 2013, by and among the Incremental 2012 Term Lenders (as defined therein), EFCH, TCEH, the Credit Parties (as defined therein) party thereto, and Citibank, N.A., as administrative and collateral agent.

221.   "*Indemnification Obligations*" means each of the Debtors' indemnification obligations in place as of the EFH Effective Date, whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment or other contracts, for their current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals and agents of the Debtors, as applicable.

222.   "*Indenture Trustees*" means, collectively:  (a) the EFH Notes Trustee; (b) the EFCH 2037 Notes Trustee; (c) the EFIH First Lien Notes Trustee; (d) the EFIH Second Lien Notes Trustee; (e) the EFIH Unsecured Notes Trustee; (f) the TCEH First Lien Notes Trustee; (g) the TCEH Second Lien Notes Trustee; (h) the TCEH Unsecured Notes Trustee; (i) the PCRB Trustee; (j) the EFH Series N Notes Trustee; and (k) the TCEH Second Lien Notes Collateral Agent.

223.   "*Initial Plan*" means the Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the United States Bankruptcy Code [D.I. 4142], dated April 14, 2015.

224.   "*Insurance Policies*" means any insurance policies, insurance settlement agreements, coverage-in-place agreements, or other agreements relating to the provision of insurance entered into by or issued to or for the benefit of any of the EFH/EFIH Debtors or their predecessors.

225.   "*Intercompany Claim*" means a Claim or Cause of Action by EFH Corp. or any Entity that is, or was as of the Petition Date, a direct or indirect subsidiary of EFH Corp. against EFH Corp. or any Entity that is, or was as of the Petition Date, a direct or indirect subsidiary of EFH Corp.

226.   "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Entity.

227.   "*Interim Compensation Order*" means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals [D.I. 2066].

228.   "*Intermediary HoldCo*" means Power Play HoldCo LLC, a Delaware limited liability company, which directly owns 100% of the equity interests of EFH Merger Sub.

229.   "*Internal Revenue Code*" means the Internal Revenue Code of 1986, as amended.

230.   "*IRS*" means the Internal Revenue Service.

231.   "*IRS Submissions*" means all submissions to the IRS in connection with the Private Letter Ruling and the request for the Supplemental Ruling.

232.   "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

233. *"Legacy General Unsecured Claim Against the EFH Debtors"* means any Claim against the EFH Debtors derived from or based upon liabilities based on asbestos or, to the extent set forth in the Merger Agreement, qualified post-employment benefits relating to discontinued operations of the EFH Debtors.

234. *"Liability Management Program"* means the various transactions, including debt buybacks, new debt issuances, debt exchanges, debt payoffs, intercompany debt forgiveness, dividends, and maturity extensions, by EFH Corp. and its direct and indirect subsidiaries, and restructuring of such Entities' debt obligations completed before the Petition Date, as described in the 2009-2013 SEC filings of EFH Corp., EFIH, EFIH Finance, and TCEH.

235. *"Lien"* has the meaning set forth in section 101(37) of the Bankruptcy Code.

236. *"Litigation Letters"* means, collectively: (a) the TCEH Committee Litigation Letters; and (b) the TCEH Unsecured Group Litigation Letter.

237. *"Luminant"* means Luminant Holding Company LLC and its direct and indirect Debtor subsidiaries.

238. *"Luminant Makewhole Settlement"* means those transactions in settlement of Luminant's obligations to Oncor under the Tax and Interest Makewhole Agreements, by which EFIH purchased Luminant's obligations from Oncor in August 2012, and Luminant paid EFIH the same respective amount in September 2012.

239. *"Makewhole Claim"* means any Claim, whether secured or unsecured, derived from or based upon makewhole, applicable premium, redemption premium, or other similar payment provisions provided for by the applicable indenture or other agreement calculated as of the EFIH Effective Date (or in the case of the EFIH First Lien Notes, the closing date of the Original EFIH First Lien DIP Facility, and in the case of EFIH Second Lien Notes, the closing date of the EFIH Second Lien Partial Repayment, with respect to the amount repaid at such time) or any other alleged premiums, fees, or Claims relating to the repayment of the principal balance of any notes, including any Claims for damages, or other relief arising from the repayment, prior to the respective stated maturity or call date, of the principal balance of any notes or any denial of any right to rescind any acceleration of such notes.

240. *"Management Agreement"* means that certain management agreement, dated as of October 10, 2007, by and among EFH Corp., TEF, Kohlberg Kravis Roberts & Co. L.P., TPG Capital, L.P., Goldman, Sachs & Co., and Lehman Brothers Inc.

241. *"Merger Agreement"* means that certain Agreement and Plan of Merger, dated as of August 21, 2017, by and among Parent, EFH Merger Sub, EFIH, and EFH Corp., as may be amended, supplemented, or otherwise modified from time to time in accordance therewith, including all exhibits and schedules attached thereto, which shall be included in the Plan Supplement.

242. *"Merger Closing"* means *"Closing,"* as that term is defined in the Merger Agreement.

243. *"Merger Closing Date"* means *"Closing Date"* as that term is defined in the Merger Agreement.

244. *"Merger Effective Time"* means *"Effective Time,"* as that term is defined in the Merger Agreement.

245. *"NEE Merger Agreement"* means that certain Agreement and Plan of Merger, dated as of July 29, 2016, by and among NextEra, EFH Merger Co., LLC, EFH Corp., and EFIH, as amended by Amendment No. 1 to Agreement and Plan of Merger, dated as of September 18, 2016, including all exhibits and schedules attached thereto.

246. *"NEE Merger Sub"* means "Merger Sub" as defined in the NEE Merger Agreement.

247. *"NEE Plan Support Agreement"* means that certain Alternative E-Side Restructuring Agreement, dated as of July 29, 2016, by and among NextEra, the EFH Debtors, the EFIH Debtors, and certain Holders of

Claims Against the EFH Debtors and EFIH Debtors, as amended on September 19, 2016, which was terminated on July 10, 2017.

248.    "*NEE PSA Order*" means the *Order (A) Authorizing Entry Into the Merger Agreement, (B) Approving the Termination Fee, and (C) Authorizing Entry Into and Performance Under the Plan Support Agreement* [D.I. 9584], entered by the Bankruptcy Court on September 19, 2016.

249.    "*New Boards*" means the board of directors or managers of New HoldCo, Intermediary HoldCo, Reorganized EFH, and Reorganized EFIH, as applicable, on and after the EFH Effective Date.

250.    "*New HoldCo*" means Power Play BidCo LLC, a Delaware limited liability company, which directly owns 100% of the equity interest of Intermediary HoldCo.

251.    "*New HoldCo Class A Units*" means the limited liability company interests represented by Class A Units in New HoldCo to be issued to the Rollover Trust on the EFH Effective Date.

252.    "*New HoldCo Class B Units*" means the limited liability company interests represented by Class B Units in New HoldCo to be issued to the Non-Rollover Trust on the EFH Effective Date.

253.    "*New HoldCo Class C Units*" means the limited liability company interests represented by Class C Units in New HoldCo to be issued to the Plan Sponsor on the EFH Effective Date.

254.    "*New HoldCo Equity Interests*" means, collectively, the New HoldCo Class A Units, the New HoldCo Class B Units, and the New HoldCo Class C Units.

255.    "*New HoldCo LLC Agreement*" means the limited liability company agreement of New HoldCo, by which all holders of New HoldCo Equity Interests shall be bound, the form of which shall be included in the Plan Supplement.

256.    "*New Organizational Documents*" means such certificates or articles of incorporation of formation, by-laws, limited liability company agreements, trust agreements, or other applicable formation documents of each of the Reorganized EFH/EFIH Debtors, New HoldCo, Intermediary HoldCo, EFH Merger Sub, the Rollover Trust, and the Non-Rollover Trust, as applicable, the form of which shall be included in the Plan Supplement, and all of which shall be in form and substance acceptable to the Plan Sponsor.

257.    "*NextEra*" means "Plan Sponsor" as defined in the NEE Merger Agreement.

258.    "*NextEra Plan*" means the Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors [D.I. 10859].

259.    "*Non-EFH Debtor Intercompany Claim*" means any Claim, other than the TCEH Settlement Claim, by any Entity that is, or was as of the Petition Date, a direct or indirect subsidiary of EFH Corp. (other than an EFH Debtor) against an EFH Debtor, including any Claims derived from or based upon EFH Legacy Notes held by EFIH.

260.    "*Non-EFH Shared Services Debtor Intercompany Claim*" means any Claim by EFH Corp. or any Entity that is, or was as of the Petition Date, a direct or indirect subsidiary of EFH Corp. (other than an EFH Shared Services Debtor) against an EFH Shared Services Debtor.

261.    "*Non-EFIH Debtor Intercompany Claim*" means any Claim by EFH Corp. or any Entity that is, or was as of the Petition Date, a direct or indirect subsidiary of EFH Corp. (other than an EFIH Debtor) against an EFIH Debtor.

262.   *"Non-TCEH Debtor Intercompany Claim"* means any Claim by EFH Corp. or any Entity that is, or was as of the Petition Date, a direct or indirect subsidiary of EFH Corp. (other than a TCEH Debtor) against a TCEH Debtor, including any Claim derived from or based upon the TCEH Credit Agreement, the TCEH First Lien Notes, or TCEH Unsecured Notes held by EFH Corp. and EFIH.

263.   *"Non-Rollover Trust"* means that certain trust that may be established under the laws of Delaware and governed under the Non-Rollover Trust Agreement.

264.   *"Non-Rollover Trust Agreement"* means that certain declaration of trust that may be entered into on the EFH Effective Date by and among the Non-Rollover Trustee and Non-Rollover Trust Investors.

265.   *"Non-Rollover Trust Certificates"* means certificates evidencing beneficial interests in the Non-Rollover Trust, which may be in book-entry form; *provided* that the value of Non-Rollover Trust Certificates issued on the EFH Effective Date shall, in the aggregate, not exceed $2.5 billion less the value of Rollover Trust Certificates issued on the EFH Effective Date (such that the value of the Rollover Trust Certificates and Non-Rollover Trust Certificates issued on the EFH Effective Date shall not exceed $2.5 billion, in the aggregate); *provided, further* that the Plan Sponsor may, in its sole discretion, subject to the Tax Contingency Disclosure, increase the $2.5 billion aggregate value limitation in respect of the Rollover Trust Certificates and/or Non-Rollover Trust Certificates to be issued on the EFH Effective Date.

266.   *"Non-Rollover Trust Investors"* means, collectively, the persons, if any, that hold Non-Rollover Trust Certificates.

267.   *"Non-Rollover Trust Trustee"* means the trustee of the Non-Rollover Trust.

268.   *"Oncor"* means Oncor Holdings and its direct and indirect subsidiaries.

269.   *"Oncor Electric"* means Oncor Electric Delivery Company LLC, a Delaware Limited Liability Company.

270.   *"Oncor Holdings"* means Oncor Electric Delivery Holdings Company LLC, a Delaware Limited Liability Company.

271.   *"Oncor Letter Agreement"* means that certain letter agreement dated August 25, 2017, by and among Parent, EFH Merger Sub, Oncor Electric, and Oncor Holdings, pursuant to which, among other things, each of Oncor Electric and Oncor Holdings have agreed to take and not to take certain actions in furtherance of the transactions contemplated by the Merger Agreement, which shall be included in the Plan Supplement.

272.   *"Oncor Management"* means Oncor Management Investment LLC.

273.   *"Oncor Tax Sharing Agreement"* means that certain Amended and Restated Tax Sharing Agreement, dated as of November 5, 2008, by and among EFH Corp., Oncor Holdings, Oncor Electric, TTI, and Oncor Management, which was assumed by EFH Corp. pursuant to the Order Approving Assumption of Oncor Tax Sharing Agreement Prior to Plan Effective Date, entered by the Bankruptcy Court on March 13, 2017 [D.I. 10998].

274.   *"Ordinary Course Professional Order"* means the Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business [D.I. 765].

275.   *"Original Confirmed Plan"* means the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 7235].

276.   *"Original EFIH First Lien DIP Agent"* means Deutsche Bank AG New York Branch, or its duly appointed successor, in its capacity as administrative agent and collateral agent for the Original EFIH First Lien DIP Facility.

277.    "*Original EFIH First Lien DIP Credit Agreement*" means that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of June 19, 2014, as amended, supplemented, or modified from time to time, by and among EFIH, EFIH Finance, the banks, financial institutions, and other lenders from time to time party thereto, the Original EFIH First Lien DIP Agent, and the other agents and entities party thereto, collectively with the "EFIH First Lien DIP Documents" (as such is defined in the Original EFIH First Lien Final DIP Order).

278.    "*Original EFIH First Lien DIP Facility*" means the EFIH Debtors' $5.4 billion debtor-in-possession financing facility, as approved on a final basis pursuant to the Original EFIH First Lien Final DIP Order.

279.    "*Original EFIH First Lien Final DIP Order*" means the Final Order (A) Approving Postpetition Financing For Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Approving the Use of Cash Collateral by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (D) Authorizing the EFIH First Lien Repayment, (E) Authorizing Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Orders, and (F) Modifying the Automatic Stay [D.I. 859], as amended by the Amended Final Order (A) Approving Postpetition Financing for Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Approving the Use of Cash Collateral by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (D) Authorizing the EFIH First Lien Repayment, (E) Authorizing Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Orders, and (F) Modifying the Automatic Stay [D.I. 3856].

280.    "*Original Plan Sponsors*" means "Plan Sponsors," as such term was defined in the Original Confirmed Plan.

281.    "*Other Priority Claims*" means any Claim, other than an Administrative Claim, a 2017 EFIH First Lien DIP Claim, or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

282.    "*Other Secured Claim Against the EFH Debtors*" means any Secured Claim against any of the EFH Debtors, excluding 2017 EFIH First Lien DIP Claims.

283.    "*Other Secured Claim Against the EFIH Debtors*" means any Secured Claim against any of the EFIH Debtors, excluding: (a) EFIH First Lien Note Claims, if any; (b) EFIH Second Lien Note Claims; and (c) 2017 EFIH First Lien DIP Claims.

284.    "*OV2*" means Ovation Acquisition II, L.L.C., a Delaware limited liability company.

285.    "*Parent*" shall have the meaning set forth in the Merger Agreement.

286.    "*PBGC*" means the Pension Benefit Guaranty Corporation, a wholly-owned United States government corporation, and an agency of the United States created by ERISA.

287.    "*PCRB Claim*" means any Claim derived from or based upon the PCRBs, excluding the Repurchased PCRBs, including any Claims and Causes of Action held by the PCRB Trustee, including for fees and expenses, related to the PCRBs.

288.    "*PCRBs*" means the pollution control revenue refunding bonds and pollution control revenue bonds outstanding from time to time, including: (a) 7.70% Fixed Series 1999C due March 1, 2032; (b) 7.70% Fixed Series 1999A due April 1, 2033; (c) 6.30% Fixed Series 2003B due July 1, 2032; (d) 6.75% Fixed Series 2003C due October 1, 2038; (e) 5.40% Fixed Series 2003D due October 1, 2029; (f) 5.40% Fixed Series 1994A due May 1, 2029; (g) 5.00% Fixed Series 2006 due March 1, 2041; (h) 8.25% Fixed Series 2001A Due October 1, 2030; (i) 8/25% Fixed Series 2001D-1 due May 1, 2033; (j) 6.45% Fixed Series 2000A due June 1, 2021; (k) 5.80% Fixed Series 2003A due July 1, 2022; (l) 6.15% Fixed Series 2003B due August 1, 2022; (m) 5.20% Fixed Series 2001C due May 1, 2028; (n) 6.25% Fixed Series 2000A due May 1, 2028; (o) Series 1994B due May 1, 2029 (variable

rate); (p) Series 1995A due April 1, 2030 (variable rate); (q) Series 1995B due June 1, 2030 (variable rate); (r) Series 2001B due May 1, 2029 (variable rate); (s) Series 2001C due May 1, 2036 (15% ceiling); (t) Floating Taxable Series 2001I due December 1, 2036; (u) Floating Series 2002A due May 1, 2037; (v) Series 2003A due April 1, 2038 (15% ceiling); (w) Series 1999B due September 1, 2034 (15% ceiling); (x) Floating Series 2001D-2 due May 1, 2033; (y) Series 2001A due May 1, 2022 (15% ceiling); (z) Series 2001B due May 1, 2030 (15% ceiling); and (aa) Series 2001A due May 1, 2027 (variable rate), to which, among others, the PCRB Trustee is party.

289.   *"PCRB Trustee"* means BNYM, as indenture trustee for the PCRBs.

290.   *"Pension Plans"* means the two single-employer defined benefit plans insured by the PBGC and covered by Title IV of ERISA, 29 U.S.C. §§ 1301-1461, including (a) the plan sponsored by EFH Corp., and (b) the plan sponsored by Oncor Electric.

291.   *"Periodic Distribution Date"* means, unless otherwise ordered by the Bankruptcy Court, the first Business Day that is 120 days after the EFH Effective Date, and, for the first year thereafter, the first Business Day that is 120 days after the immediately preceding Periodic Distribution Date. After one year following the EFH Effective Date, the Periodic Distribution Date will occur on the first Business Day that is 180 days after the immediately preceding Periodic Distribution Date, unless and until otherwise ordered by the Bankruptcy Court.

292.   *"Petition Date"* means April 29, 2014, the date on which the Debtors commenced the Chapter 11 Cases.

293.   *"PIK Settlement"* means the transactions contemplated by the EFIH Unsecured Creditor Plan Support Agreement.

294.   *"Plan"* means this First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors, Pursuant to Chapter 11 of the Bankruptcy Code, including the Plan Supplement.

295.   *"Plan Sponsor"* means Sempra Energy unless and until such time as the Merger Agreement has been terminated in accordance with its terms and without consummation of the EFH Merger. For the avoidance of doubt, upon the termination of the Merger Agreement, any consent rights of the Plan Sponsor set forth in this Plan shall be inoperative.

296.   *"Plan Sponsor Equity Investment"* means the equity investment by the Plan Sponsor in an amount up to $6.45 billion pursuant to, and/or in accordance with, the Merger Agreement in exchange for the New HoldCo Class C Units; *provided* that the Plan Sponsor reserves the right, in its sole discretion, to increase the amount of the Plan Sponsor Equity Investment if the amount of the Exit Facilities is reduced.

297.   *"Plan Supplement"* means the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be Filed by the Debtors no later than six (6) Business Days prior to the deadline to vote to accept or reject the Plan as set forth in the EFH Disclosure Statement Order (or such later date as may be approved by the Bankruptcy Court) on notice to parties in interest, as may be further amended, modified, or supplemented from time to time, subject to the consent of the Plan Sponsor, in advance of the EFH Confirmation Hearing, and additional documents Filed with the Bankruptcy Court before the EFH Confirmation Hearing as amendments to the Plan Supplement, comprised of, among other documents, the following, if any and as applicable: (a) New Organizational Documents, including the Rollover Trust Agreement and the Non-Rollover Trust Agreement; (b) the Assumed Executory Contract and Unexpired Lease List; (c) the Rejected Executory Contract and Unexpired Lease List; (d) a list of retained Causes of Action; (e) the identity of the members of the New Boards, the boards of the Rollover Trust and the Non-Rollover Trust, the Rollover Trust Trustee, the Non-Rollover Trust Trustee, the management for the Reorganized EFH/EFIH Debtors, and the member(s) and compensation of the EFH Plan Administrator Board; (f) the Merger Agreement; (g) the Tax Matters Agreement; (h) the Oncor Letter Agreement; (i) the Separation Agreement; (j) the Amended and Restated Split Participant Agreement; (k) the Transition Services Agreement; (l) the Tax Contingency Disclosure, if applicable; (m) the EFH/EFIH Cash Distribution Account Disclosure; and (n) the Disclosure Regarding All-Cash Merger Consideration. Any reference to the Plan

Supplement in the Plan shall include each of the documents identified above as (a) through (n), as applicable. The documents that comprise the Plan Supplement shall be: (i) subject to any consent or consultation rights provided hereunder and thereunder, including as provided in the definitions of the relevant documents; and (ii) in form and substance reasonably acceptable (or, to the extent otherwise provided hereunder or thereunder, including as provided in the applicable definitions of the applicable documents, acceptable) to the Plan Sponsor and the 2017 EFIH First Lien DIP Agent. The Parties entitled to amend the documents contained in the Plan Supplement shall be entitled to amend such documents in accordance with their respective terms and Article X of the Plan through and including the EFH Effective Date. The Plan Supplement shall include all the amendments thereto, subject to the consent of the Plan Sponsor as set forth in the Plan.

298.    *"Plan Support Agreement"* means that certain Plan Support Agreement, dated as of August 9, 2015 (as amended on September 11, 2015, October 27, 2015, and November 12, 2015, and as may be amended, supplemented, or otherwise modified from time to time in accordance therewith), by and among the EFH/EFIH Debtors, prior to the TCEH Effective Date, the TCEH Debtors and EFH Shared Services Debtors, the Original Plan Sponsors, the TCEH Supporting First Lien Creditors, the TCEH First Lien Agent, the TCEH Supporting Second Lien Creditors, the TCEH Committee, and certain other Entities, including all exhibits and schedules attached thereto.

299.    *"Priority Tax Claim"* means the Claims of Governmental Units of the type specified in section 507(a)(8) of the Bankruptcy Code.

300.    *"Private Letter Ruling"* means the private letter ruling issued by the IRS to EFH Corp. on July 28, 2016.

301.    *"Pro Rata"* means the proportion that the amount of an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of the Allowed Claims or Allowed Interests in that Class, or the proportion of the Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Claim or Interest under the Plan; *provided, however,* that "Pro Rata" with respect to the EFIH First Lien Note Claims shall mean Pro Rata within each of the EFIH First Lien 10.0% Notes, the EFIH First Lien 10.5% Notes, and the EFIH First Lien 6.875% Notes in accordance with the EFIH Settlement Agreement.

302.    *"Professional"* means an Entity, excluding those Entities entitled to compensation pursuant to the Ordinary Course Professional Order: (a) retained pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the EFH Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code; *provided,* however, that each of the professionals employed by the Original EFIH First Lien DIP Agent and the 2017 EFIH First Lien DIP Agent shall not be "Professionals" for the purposes of the Plan.

303.    *"Professional Fee Claims"* means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the EFH Effective Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

304.    *"Professional Fee Escrow Account"* means the TCEH Professional Fee Escrow Account, the EFIH Professional Fee Escrow Account, and the EFH Professional Fee Escrow Account, as applicable.

305.    *"Professional Fee Escrow Agents"* means each escrow agent for the applicable Professional Fee Escrow Account appointed pursuant Article II.A.2(b) of the Plan and the escrow agreements entered into pursuant thereto.

306.    *"Proof of Claim"* means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

307. *"Proof of Interest"* means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

308. *"PUC"* means the Public Utility Commission of Texas.

309. *"Redemption Date"* means June 19, 2014, the date on which the EFIH Debtors redeemed the EFIH First Lien Notes.

310. *"Refinanced TCEH DIP Agent"* means Citibank, N.A., as administrative agent and collateral agent under the Refinanced TCEH DIP Facility.

311. *"Refinanced TCEH DIP Facility"* means the TCEH Debtors' debtor-in-possession financing facility, as approved on a final basis pursuant to the Final Order (A) Approving Postpetition Financing For Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, and (C) Modifying the Automatic Stay [D.I. 856], as refinanced pursuant to the TCEH DIP Order.

312. *"Reinstate,"* *"Reinstated,"* or *"Reinstatement"* means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

313. *"Rejected Executory Contracts and Unexpired Leases"* means those Executory Contracts and Unexpired Leases rejected by Reorganized EFH and Reorganized EFIH, as set forth on the Rejected Executory Contract and Unexpired Lease List.

314. *"Rejected Executory Contract and Unexpired Lease List"* means the list of Executory Contracts and Unexpired Leases rejected under the Plan, as determined by the Plan Sponsor, in its sole discretion, the form of which shall be included in the Plan Supplement.

315. *"Released Parties"* means, collectively, and in each case only in its capacity as such: (a) the EFH/EFIH Plan Supporters; (b) EFH Merger Sub; (c) Intermediary HoldCo; (d) Parent; (e) the Plan Sponsor; (f) the Backstop Parties; (g) Holders of TCEH First Lien Claims; (h) Holders of TCEH Second Lien Note Claims; (i) Holders of TCEH Unsecured Note Claims; (j) Holders of EFH Legacy Note Claims; (k) Holders of EFH Unexchanged Note Claims; (l) Holders of EFH LBO Note Primary Claims; (m) Holders of EFIH Unsecured Note Claims; (n) Holders of EFH LBO Note Guaranty Claims; (o) the DIP Lenders; (p) the TCEH First Lien Agent; (q) the Indenture Trustees; (r) the Dealer Managers; (s) TEF; (t) Texas Holdings; (u) Oncor; (v) funds and accounts managed or advised by Kohlberg Kravis Roberts & Co., L.P., TPG Capital, L.P. or Goldman, Sachs & Co. that hold direct or indirect interests in Texas Holdings, TEF, or EFH Corp.; (w) the Committees and each of their respective members; (x) Holders of General Unsecured Claims Against the TCEH Debtors Other Than EFCH; (y) Holders of General Unsecured Claims Against EFCH; (z) Holders of Claims derived from or based on the EFIH First Lien Notes; (aa) Holders of Claims derived from or based on the EFIH Second Lien Notes; (bb) Holders of General Unsecured Claims Against the EFIH Debtors; (cc) Holders of General Unsecured Claims Against EFH Corp.; (dd) Holders of General Unsecured Claims Against the EFH Debtors Other Than EFH Corp.; (ee) Holders of General Unsecured Claims Against the EFH Shared Services Debtors; (ff) the Original Plan Sponsors; (gg) OV2; (hh) any agent under the Exit Facilities; (ii) the Rollover Trust Trustee; (jj) the Non-Rollover Trust Trustee; (kk) with respect to each of the Debtors (including, prior to the TCEH Effective Date, the TCEH Debtors and EFH Shared Services Debtors), the Reorganized EFH/EFIH Debtors, the Reorganized TCEH Debtors, and the Reorganized EFH Shared Services Debtors, and each of the foregoing Entities in clauses (a) through (jj), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; and (ll) the DTC; *provided, however,* that any Holder of a Claim or Interest that opts out of the releases contained in the Plan shall not be a *"Released Party."*

28

316.    "*Releasing Parties*" means, collectively, and in each case only in its capacity as such:  (a) the EFH/EFIH Plan Supporters; (b) EFH Merger Sub; (c) Intermediary HoldCo; (d) Parent; (e) the Plan Sponsor; (f) the Backstop Parties; (g) Holders of TCEH First Lien Claims; (h) Holders of TCEH Second Lien Note Claims; (i) Holders of TCEH Unsecured Note Claims; (j) Holders of EFH Legacy Note Claims; (k) Holders of EFH Unexchanged Note Claims; (l) Holders of EFH LBO Note Primary Claims; (m) Holders of EFIH Unsecured Note Claims; (n) Holders of EFH LBO Note Guaranty Claims; (o) the DIP Lenders; (p) the TCEH First Lien Agent; (q) the Indenture Trustees; (r) the Dealer Managers; (s) TEF; (t) Texas Holdings; (u) Oncor; (v) funds and accounts managed or advised by Kohlberg Kravis Roberts & Co., L.P., TPG Capital, L.P. or Goldman, Sachs & Co. that hold direct or indirect interests in Texas Holdings, TEF, or EFH Corp.; (w) the Committees and each of their respective members; (x) Holders of General Unsecured Claims Against the TCEH Debtors Other Than EFCH; (y) Holders of General Unsecured Claims Against EFCH; (z) Holders of EFIH First Lien Note Claims; (aa) Holders of EFIH Second Lien Note Claims; (bb) Holders of General Unsecured Claims Against the EFIH Debtors; (cc) Holders of General Unsecured Claims against EFH Corp.; (dd) Holders of General Unsecured Claims Against the EFH Debtors Other Than EFH Corp.; (ee) Holders of General Unsecured Claims against the EFH Shared Services Debtors; (ff) all Holders of Claims and Interests that are deemed to accept the Plan; (gg) all Holders of Claims and Interests who vote to accept the Plan; (hh) all Holders in voting Classes who abstain from voting on the Plan and who do not opt out of the releases provided by the Plan; (ii) the Original Plan Sponsors; (jj) OV2; (kk) any agent under the Exit Facilities; (ll) the Rollover Trust Trustee; (mm) the Non-Rollover Trust Trustee; (nn) with respect to each of the Debtors (and, prior to the TCEH Effective Date, the TCEH Debtors and the EFH Shared Services Debtors), the Reorganized TCEH Debtors, the Reorganized EFH Shared Services Debtors, and the Reorganized EFH/EFIH Debtors, and each of the foregoing Entities in clauses (a) through (mm), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; and (oo) all Holders of Claims and Interests, solely with respect to releases of all Holders of Interests in EFH Corp. and their current and former Affiliates, and such Entities' and their Affiliates' current and former equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and their current and former officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

317.    "*Reorganized EFH*" means EFH Corp. on and after the EFH Effective Date, or any successor thereto, by merger, consolidation, or otherwise, unless otherwise indicated in the Plan.

318.    "*Reorganized EFH/EFIH Debtors*" shall mean, as applicable, the Reorganized EFIH Debtors and the Reorganized EFH Debtors.

319.    "*Reorganized EFH Common Stock*" means the single share of Reorganized EFH common stock issued to Intermediary HoldCo at the Merger Effective Time.

320.    "*Reorganized EFH Debtors*" means the EFH Debtors, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the EFH Effective Date.

321.    "*Reorganized EFH Shared Services Debtors*" means the EFH Shared Services Debtors, as reorganized pursuant to and under the TCEH Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the TCEH Effective Date.

322.    "*Reorganized EFIH*" means EFIH, or any successor thereto by merger, consolidation, or otherwise, on and after the EFH Effective Date.

323.    "*Reorganized EFIH Debtors*" means the EFIH Debtors as reorganized pursuant to and under the Plan on or after the EFH Effective Date.

324.    *"Reorganized TCEH"* means TCEH, or any successor thereto, by merger, consolidation, or otherwise, on and after the TCEH Effective Date.

325.    *"Reorganized TCEH Debtors"* means the TCEH Debtors, as reorganized pursuant to and under the TCEH Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the TCEH Effective Date.

326.    *"Repurchased PCRBs"* means the PCRBs repurchased by TCEH and held in a custody account.

327.    *"Restructuring Transactions"* means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors and the Plan Sponsor reasonably determine to be necessary or desirable to implement the Plan, the Merger, and other transactions contemplated by the Merger Agreement.

328.    *"Rollover Trust"* means that certain trust that may be established under the laws of Delaware and governed under the Rollover Trust Agreement.

329.    *"Rollover Trust Agreement"* means that certain declaration of trust that may be entered into on the EFH Effective Date by and between the Rollover Trustee and Holders of Rollover Trust Certificates.

330.    *"Rollover Trust Certificates"* means certificates evidencing beneficial interests in the Rollover Trust, which may be in book-entry form; *provided* that the value of Rollover Trust Certificates issued on the EFH Effective Date shall not exceed $2.5 billion in the aggregate, unless otherwise agreed by the Plan Sponsor in its sole discretion, subject to the Tax Contingency Disclosure.

331.    *"Rollover Trust Investment Election"* means the election by a Holder of an Allowed EFIH Second Lien Note Claim to receive Rollover Trust Certificates (pursuant to the actual or deemed transactions described in Article IV.B.4 of this Plan) in lieu of Cash with respect to all or a portion of its Allowed EFIH Second Lien Note Claim (to the extent not previously paid pursuant to separate Order of the Bankruptcy Court) and whereby the amount of Cash such Holder would have received will be reduced dollar for dollar by the value of the Rollover Trust Certificates it receives; *provided, however* that Supporting EFIH Unsecured Creditors shall not make the Rollover Trust Investment Election, unless otherwise agreed in writing by the Plan Sponsor; *provided, further, however* that, notwithstanding anything to the contrary herein, the Plan Sponsor shall have the right to determine, in its sole discretion, which Entities may participate in the Rollover Trust Investment Election, which determination shall be made no later than five (5) Business Days prior to the EFH Effective Date; *provided,* that if the Plan Sponsor is required to cause Rollover Trust Certificates to be issued pursuant to Section 1.8(b)(i) of the Merger Agreement, then the Plan Sponsor shall not permit any Entities to make the Rollover Trust Investment Election without the consent of the Supporting EFIH Unsecured Creditors and the Debtors.

332.    *"Rollover Trust Participants"* means, collectively, the persons, if any, that hold Rollover Trust Certificates.

333.    *"Rollover Trust Trustee"* means the trustee of the Rollover Trust.

334.    *"Schedules"* means the schedules of assets and liabilities, schedules of Executory Contracts or Unexpired Leases, and statement of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

335.    *"SEC"* means the Securities and Exchange Commission.

336.    *"Secured"* means when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan or separate order of the Bankruptcy Court as a secured claim.

30

337.    *"Securities Act"* means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended.

338.    *"Security"* or *"Securities"* has the meaning set forth in section 2(a)(1) of the Securities Act.

339.    *"Sempra Plan Support Agreement"* means that certain Plan Support Agreement, dated as of August 21, 2017, by and among the Plan Sponsor, the EFH/EFIH Debtors, and certain Holders of Claims against the EFH/EFIH Debtors, as may be amended, supplemented, or otherwise modified from time to time in accordance with its terms.

340.    *"Separation Agreement"* means an agreement entered into on the TCEH Effective Date to, among other things, effectuate the Spin-Off or the Taxable Separation and address the transfer by the EFH Debtors and EFIH Debtors of certain assets, liabilities, and equity interests related to the TCEH Debtors' operations, including with respect to the EFH Shared Services Debtors, by and among Reorganized TCEH, OpCo and EFH Corp., in form and substance reasonably acceptable to the parties thereto.

341.    *"Settlement"* means the compromise and settlement by and among the parties to the Settlement Agreement, including the Debtors and their respective Estates, prior to the TCEH Effective Date, the TCEH Debtors and EFH Shared Services Debtors and their respective Estates, of (a) all Non-EFH Debtor Intercompany Claims, Non-EFIH Debtor Intercompany Claims, Non-TCEH Debtor Intercompany Claims, and the TCEH Settlement Claim, other than ordinary course Debtor Intercompany Claims incurred pursuant to, and in accordance with, Paragraph 10 of the Cash Management Order, (b) claims and Causes of Action against Holders of TCEH First Lien Claims and the TCEH First Lien Agent, (c) claims and Causes of Action against the Holders of EFH Interests and certain related Entities, and (d) claims and Causes of Action against any of the Debtors', and, prior to the TCEH Effective Date, the TCEH Debtors' and EFH Shared Services Debtors' directors, managers, officers, and other related Entities, as set forth in the Settlement Agreement.

342.    *"Settlement Agreement"* means that certain Settlement Agreement by and among the Debtors, and, prior to the TCEH Effective Date, the TCEH Debtors and the EFH Shared Services Debtors, and certain Holders of Claims and Interests, as approved in the Settlement Order.

343.    *"Settlement Order"* means the Order Granting the Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement [D.I. 7243].

344.    *"Shared Services"* means those shared services provided to EFH Corp. and its direct and indirect subsidiaries, including by or through EFH Corporate Services and/or pursuant to any service-level agreement or shared services agreements.

345.    *"Standing Motions"* means, collectively:  (a) the TCEH Committee Standing Motion; (b) the TCEH Unsecured Group Standing Motion; and (c) the EFH/EFIH Committee Standing Motion.

346.    *"Supplemental Rulings"* means *"Supplemental Rulings,"* as such term is defined in the Merger Agreement.

347.    *"Supporting EFIH First Lien Creditors"* means the holders or investment advisors or managers of discretionary funds or accounts of beneficial holders that hold, or direct the vote of, Claims against the EFIH Debtors under the EFIH First Lien Notes (solely in such capacity) that are party or that become party to the EFIH Settlement Agreement.

348.    *"Supporting EFIH Second Lien Creditors"* means the holders or investment advisors or managers of discretionary funds or accounts of beneficial holders that hold, or direct the vote of, Claims against the EFIH Debtors under the EFIH Second Lien Notes (solely in such capacity) that are party or that become party to the EFIH Settlement Agreement.

349.    "*Supporting EFIH Unsecured Creditors*" means "*Supporting Creditors*," as such term is defined in the Sempra Plan Support Agreement.

350.    "*Tax and Interest Makewhole Agreements*" means, collectively:  (a) that certain Tax Make-Whole Agreement, dated as of January 1, 2002, by and among Oncor Electric and TXU Generation Company LP; (b) that certain Interest Make-Whole Agreement, dated as of January 1, 2002, by and among Oncor Electric and TXU Generation Company LP; and (c) that certain Interest Make Whole Agreement, dated as of January 1, 2004, by and among TXU Electric Delivery Company and TXU Generation Company LP.

351.    "*Tax Contingency Adjustment*" means the downward adjustment to the amount of New HoldCo Class A Units (and, pursuant to the actual or deemed transactions described in Article IV.B.4 of this Plan, Rollover Trust Certificates) available with respect to the Rollover Trust Investment Election on a dollar for dollar basis by the amount of New HoldCo Class A Units required to be issued to Holders of Claims and Interests against EFH Corp. and/or EFIH, if any, pursuant to the Merger Agreement.

352.    "*Tax Contingency Disclosure*" means the disclosure that may be included in the Plan Supplement regarding adjustments, if any, being made to the form of consideration in the EFH Unsecured Creditor Recovery Pool or the EFIH Unsecured Creditor Recovery Pool in accordance with the provisions of the Merger Agreement; *provided, however*, that (a) any adjustments in the form of consideration shall be subject to the limitations in Section 1.8 of the Merger Agreement and any schedules or exhibits thereto, and (b) in the event such consideration takes the form of New HoldCo Class A Units (which, pursuant to the actual or deemed transactions described in Article IV.B.4 of this Plan, shall or shall be deemed to be contemporaneously contributed to the Rollover Trust in return for Rollover Trust Certificates), such New HoldCo Class A Units shall only be issued to Holders of Allowed Unsecured Claims against EFH Corp. or Holders of Allowed Class B5 Claims or Allowed Class B6 Claims, with any other Holders of Claims receiving payment in Cash pursuant to the terms of the Plan.

353.    "*Taxing Units*" means Somervell County, Somervell County Water Improvement District, Glen Rose ISD, Somervell Hospital District, Nolan County, Wes Texas Groundwater, Nolan County Hospital District, Sweetwater ISD, City of Sweetwater, and Blackwell ISD.

354.    "*Tax Matters Agreement*" means the tax matters agreement entered into on the TCEH Effective Date by and among EFH Corp., Reorganized TCEH, EFIH, EFIH Finance, and Merger Sub, effective upon the Distribution, which shall govern the rights and obligations of each party with respect to certain tax matters; *provided* that such agreement shall be amended to reflect the appropriate parties thereunder under this Plan; *provided, further* that no other modifications to such agreement shall be made unless agreed to by the Debtors, the Plan Sponsor, and Reorganized TCEH.

355.    "*Tax Sharing Agreements*" means, collectively:  (a) the Competitive Tax Sharing Agreement; (b) any formal or informal, written or unwritten tax sharing agreement among substantially the same parties that are parties to the Competitive Tax Sharing Agreement; and (c) the Oncor Tax Sharing Agreement.

356.    "*TCEH*" means Texas Competitive Electric Holdings Company LLC, a Delaware limited liability company.

357.    "*TCEH 2012 Incremental Term Loans*" means the TCEH First Lien Claims deemed to have been incurred pursuant to Section 1 of the Incremental Amendment Agreement.

358.    "*TCEH 2015 Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated as of October 31, 2007, by and among TCEH and TCEH Finance, Inc., as the issuers; EFCH and certain TCEH subsidiaries as guarantors; and the TCEH Unsecured Notes Trustee.

359.    "*TCEH Committee*" means the statutory committee of unsecured creditors of the TCEH Debtors and EFH Corporate Services appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on May 13, 2014, the membership of which may be reconstituted from time to time.

360.    "*TCEH Committee Litigation Letters*" means those certain letters, dated as of March 31, 2015 and April 30, 2015, from the TCEH Committee to the Debtors and, prior to the TCEH Effective Date, the TCEH Debtors and EFH Shared Services Debtors, identifying alleged Claims and Causes of Action that the TCEH Committee may seek standing to pursue.

361.    "*TCEH Committee Standing Motion*" means the Motion of Official Committee of TCEH Unsecured Creditors for Entry of an Order Granting Exclusive Standing and Authority to Commence, Prosecute, and Settle Certain Claims for Declaratory Judgment, Avoidance and Recovery of Liens, Security Interests, Obligations, Fees, and Interest Payments, and Disallowance of Claims [D.I. 3593].

362.    "*TCEH Confirmation Order*" means the Order Confirming the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors [D.I. 9421].

363.    "*TCEH Credit Agreement*" means the Credit Agreement, dated as of October 10, 2007, as amended, by and among TCEH, as borrower, EFCH and certain TCEH subsidiaries, as guarantors, the lending institutions party from time to time thereto, the TCEH First Lien Agent, and the other parties thereto.

364.    "*TCEH Credit Agreement Claim*" means any Claims derived from or based upon the TCEH Credit Agreement, including the term loan, revolver, letter of credit, and commodity collateral posting facilities, and guaranty Claims with respect to EFCH.

365.    "*TCEH Credit Amendment*" means that certain Amendment No. 2 to the TCEH Credit Agreement, dated as of April 7, 2011, among TCEH, as borrower, EFCH, the undersigned lenders party to the TCEH Credit Agreement, Citibank, N.A., as administrative and collateral agent, and Citigroup Global Markets Inc., J.P. Morgan Securities LLC, Credit Suisse Securities (USA) LLC, Goldman Sachs Credit Partners L.P., and Morgan Stanley Senior Funding, Inc., as amendment arrangers.

366.    "*TCEH Debtor Intercompany Claim*" means, collectively:  (a) any Claim by a TCEH Debtor against another TCEH Debtor; and (b) any Claim derived from or based upon the Repurchased PCRBs.

367.    "*TCEH Debtors*" means, collectively:  (a) EFCH; (b) TCEH; and (c) TCEH's directly and indirectly owned subsidiaries listed on Exhibit A to the TCEH Plan.

368.    "*TCEH DIP Agent*" means Deutsche Bank AG New York Branch, or its duly appointed successor, in its capacity as administrative agent and collateral agent for the TCEH DIP Facility.

369.    "*TCEH DIP Claim*" means any Claim held by the TCEH DIP Agent or TCEH DIP Lenders arising under or related to the TCEH DIP Facility, including all principal, interest, default interest, commitment fees, exit fees, expenses, costs, and other charges provided for thereunder.

370.    "*TCEH DIP Credit Agreement*" means the Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of August 4, 2016, as amended, supplemented, or modified from time to time, among EFCH, TCEH, the banks, financial institutions, and other lenders from time to time party thereto, the TCEH DIP Agent, and the other agents and entities party thereto, collectively with the "DIP Documents," as defined in the TCEH DIP Order.

371.    "*TCEH DIP Facility*" means the TCEH Debtors' $4.25 billion senior secured superpriority debtor-in-possession financing facility, as evidenced by the TCEH DIP Credit Agreement and approved pursuant to the TCEH DIP Order.

372.    "*TCEH DIP L/C*" means any letter of credit issued under the TCEH DIP Credit Agreement.

373.    "*TCEH DIP L/C Issuer*" means the issuer of a TCEH DIP L/C.

RLF1 18943843v.1

374. *"TCEH DIP Lenders"* means the TCEH DIP Agent, the TCEH DIP L/C Issuers, and the banks, financial institutions, and other lenders party to the TCEH DIP Credit Agreement from time to time.

375. *"TCEH DIP Order"* means the Amended Order (A) Approving Postpetition Financing For Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing Refinancing of Secured Post-Petition Debt, and (D) Modifying the Automatic Stay [D.I. 8831].

376. *"TCEH Disclosure Statement"* means the *Third Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors*, dated June 16, 2016 [D.I. 8747].

377. *"TCEH Effective Date"* means October 3, 2016.

378. *"TCEH Finance"* means TCEH Finance, Inc., a Delaware corporation.

379. *"TCEH First Lien Ad Hoc Committee"* means the ad hoc committee of certain unaffiliated Holders of TCEH First Lien Claims that is represented by, inter alia, Paul, Weiss, Rifkind, Wharton & Garrison LLP and Millstein & Co., L.P.

380. *"TCEH First Lien Administrative Agent"* means Wilmington Trust, N.A., solely in its capacity as successor administrative agent to Citibank, N.A. under the TCEH Credit Agreement.

381. *"TCEH First Lien Agent"* means, collectively, the TCEH First Lien Administrative Agent and the TCEH First Lien Collateral Agent and, where applicable, the former administrative agent, the former swingline lender, each former revolving letter of credit issuer, each former and current deposit letter of credit issuer, and the former collateral agent under the TCEH Credit Agreement.

382. *"TCEH First Lien Claims"* means, collectively: (a) the TCEH Credit Agreement Claims; (b) the TCEH First Lien Note Claims; (c) the TCEH First Lien Interest Rate Swap Claims; and (d) the TCEH First Lien Commodity Hedge Claims.

383. *"TCEH First Lien Collateral Agent"* means Wilmington Trust, N.A., solely in its capacity as successor collateral agent to Citibank, N.A. under the TCEH First Lien Intercreditor Agreement.

384. *"TCEH First Lien Commodity Hedge Claim"* means any Claim derived from or based upon the TCEH First Lien Commodity Hedges.

385. *"TCEH First Lien Commodity Hedges"* means the commodity hedges entered into by TCEH and secured by a first lien on the same collateral as the TCEH Credit Agreement Claims and the TCEH First Lien Note Claims.

386. *"TCEH First Lien Creditor Adequate Protection Payment Allocation Dispute"* means the issue raised by the TCEH First Lien Notes Trustee and/or certain Holders of TCEH First Lien Note Claims that, pursuant to section 510(a) of the Bankruptcy Code or otherwise pursuant to applicable law, the Adequate Protection Payments (as defined in the Cash Collateral Order) under the Cash Collateral Order must be allocated among the Holders of TCEH First Lien Claims pursuant to the Postpetition Interest Allocation Calculation (as defined in the Cash Collateral Order); provided, however, that nothing in this definition shall limit any claims or defenses to such issue.

387. *"TCEH First Lien Creditor Adequate Protection Payment Allocation Order"* means a Final Order resolving with prejudice the TCEH First Lien Creditor Adequate Protection Payment Allocation Dispute.

RLF1 18943843v.1

388. "*TCEH First Lien Creditor Allocation Disputes*" means, collectively: (a) the TCEH First Lien Creditor Adequate Protection Payment Allocation Dispute; and (b) the TCEH First Lien Creditor Plan Distribution Allocation Dispute. For the avoidance of doubt, the TCEH First Lien Creditor Allocation Disputes shall not include the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.

389. "*TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute*" means the issues raised in the action captioned Marathon Asset Management, LP, v. Wilmington Trust, N.A., (Index No. 651669/2015), that was originally filed by Marathon Asset Management, LP in New York State Supreme Court on May 14, 2015, or any successor action, adversary proceeding, contested matter, or other litigation proceeding in which any claim or Cause of Action is asserted that the Holders of Deposit L/C Loans (as defined in the TCEH Credit Agreement) have a priority security interest, as compared to other Holders of TCEH First Lien Secured Claims, in certain Cash deposited in the Deposit L/C Loan Collateral Account (as defined in the TCEH Credit Agreement); provided, however, that nothing in this definition shall limit any claims or defenses to such issues.

390. "*TCEH First Lien Creditor Petition Date Allocated Claim Amounts*" means the Allowed amounts of such Claims as of the Petition Date as set forth in the Plan.

391. "*TCEH First Lien Creditor Plan Distribution Allocation Dispute*" means the issue raised by the TCEH First Lien Notes Trustee and/or certain Holders of TCEH First Lien Note Claims that, pursuant to section 510(a) of the Bankruptcy Code or otherwise pursuant to applicable law, the TCEH First Lien Creditor Distributions should be allocated among the Holders of TCEH First Lien Claims on a basis other than Pro Rata based upon the Allowed amounts of such Claims as of the Petition Date; provided, however, that nothing in this definition shall limit any claims or defenses to such issue.

392. "*TCEH First Lien Creditor Plan Distribution Allocation Order*" means a Final Order resolving with prejudice the TCEH First Lien Creditor Plan Distribution Allocation Dispute, which allocations may be based on the TCEH First Lien Creditor Petition Date Allocated Claim Amounts, the TCEH First Lien Creditor Postpetition Interest Allocated Claim Amounts, or as otherwise provided in such Final Order.

393. "*TCEH First Lien Creditor Postpetition Interest Allocated Claim Amounts*" means the Allowed amounts of such Claims plus postpetition interest calculated at the rate set forth in each of the applicable governing contracts from the Petition Date until the TCEH Effective Date.

394. "*TCEH First Lien Deficiency Claim*" means any TCEH First Lien Claim that is not a TCEH First Lien Secured Claim.

395. "*TCEH First Lien Intercreditor Agreement*" means that certain Amended and Restated Collateral Agency and Intercreditor Agreement, dated as of October 10, 2007, as amended and restated from time to time, by and among TCEH, EFCH, the TCEH First Lien Agent, and the other parties thereto.

396. "*TCEH First Lien Interest Rate Swap Claim*" means any Claim derived from or based upon the TCEH First Lien Interest Rate Swaps.

397. "*TCEH First Lien Interest Rate Swaps*" means the interest rate swaps entered into by TCEH and secured by a first lien on the same collateral as the TCEH Credit Agreement Claims and the TCEH First Lien Note Claims.

398. "*TCEH First Lien Note Claim*" means any Claim derived from or based upon the TCEH First Lien Notes, excluding any Claim derived from or based upon the TCEH First Lien Notes held by EFH Corp.

399. "*TCEH First Lien Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated April 19, 2011, among TCEH and TCEH Finance, as issuers, EFCH and certain of TCEH's subsidiaries, as guarantors, and the TCEH First Lien Notes Trustee.

RLF1 18943843v.1

400.    "*TCEH First Lien Notes*" means the 11.50% fixed senior secured notes due October 1, 2020, issued by TCEH and TCEH Finance pursuant to the TCEH First Lien Note Indenture.

401.    "*TCEH First Lien Notes Trustee*" means Delaware Trust Company, as successor trustee to BNY.

402.    "*TCEH First Lien Secured Claim*" means any TCEH First Lien Claim that is Secured.

403.    "*TCEH Intercompany Notes*" means, collectively: (a) that certain intercompany promissory note for principal and interest payments, dated as of October 10, 2007, as amended and restated, by and among EFH Corp., as maker, and TCEH, as payee; (b) that certain intercompany promissory note for SG&A, dated as of October 10, 2007, as amended and restated, by and among EFH Corp., as maker, and TCEH, as payee; and (c) that certain intercompany promissory note, dated as of February 22, 2010, as amended and restated, by and among TCEH, as maker, and EFH Corp., as payee.

404.    "*TCEH Plan*" means the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 9321] confirmed pursuant to the TCEH Confirmation Order.

405.    "*TCEH Second Lien Note Claim*" means any Claim derived from or based upon the TCEH Second Lien Notes.

406.    "*TCEH Second Lien Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated October 6, 2010, by and among TCEH and TCEH Finance, as issuers, EFCH and certain of TCEH's subsidiaries, as guarantors, the TCEH Second Lien Notes Trustee, and the TCEH Second Lien Notes Collateral Agent.

407.    "*TCEH Second Lien Notes*" means the 15.0% fixed senior secured second lien notes and the 15.0% fixed senior secured second lien notes, Series B, due April 1, 2021, issued by TCEH and TCEH Finance pursuant to the TCEH Second Lien Note Indenture.

408.    "*TCEH Second Lien Notes Collateral Agent*" means BNYMTC, as collateral agent.

409.    "*TCEH Second Lien Notes Trustee*" means Wilmington Savings Fund Society, as successor trustee to BNY.

410.    "*TCEH Senior Toggle Notes*" means the 10.50%/11.25% senior toggle notes due November 1, 2016, issued by TCEH and TCEH Finance pursuant to the TCEH Senior Toggle Note Indenture.

411.    "*TCEH Senior Toggle Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated December 6, 2007, by and among TCEH and TCEH Finance, Inc., as issuers, EFCH and certain TCEH subsidiaries, as guarantors, and the TCEH Unsecured Notes Trustee.

412.    "*TCEH Settlement Claim*" means the Unsecured Claim of TCEH against EFH Corp. Allowed in the amount of $700 million pursuant to the Settlement Agreement.

413.    "*TCEH Settlement Claim Turnover Distributions*" means the recovery, proceeds, or distributions, if any, that TCEH receives on account of the TCEH Settlement Claim and that it is required to assign or otherwise turn over to Holders of EFH Beneficiary Claims pursuant to the terms and conditions of Section 4 of the EFH/EFIH Committee Settlement.  The TCEH Settlement Claim Turnover Distributions shall not exceed, in the aggregate, $37.8 million.

414.    "*TCEH Supporting First Lien Creditors*" means those Holders of TCEH First Lien Claims that are members of the TCEH First Lien Ad Hoc Committee and that are parties to the Plan Support Agreement (which shall not include the TCEH First Lien Agent).

415.    "*TCEH Supporting Second Lien Creditors*" means those Holders of TCEH Second Lien Note Claims party to the Plan Support Agreement.

416.    "*TCEH Supporting Unsecured Creditors*" means those Holders of TCEH Unsecured Note Claims party to the Plan Support Agreement.

417.    "*TCEH Unsecured Ad Hoc Group*" means that certain Ad Hoc Group of TCEH Unsecured Noteholders made up of Holders of TCEH Unsecured Notes.

418.    "*TCEH Unsecured Debt Claims*" means, collectively: (a) the TCEH First Lien Deficiency Claims; (b) the TCEH Second Lien Note Claims; (c) the TCEH Unsecured Note Claims; and (d) the PCRB Claims.

419.    "*TCEH Unsecured Group Litigation Letter*" means that certain letter, dated as of April 30, 2015, from the TCEH Unsecured Ad Hoc Group to the Debtors, and, prior to the TCEH Effective Date, the TCEH Debtors and EFH Shared Services Debtors, identifying Claims and Causes of Action that the TCEH Unsecured Ad Hoc Group may seek standing to pursue.

420.    "*TCEH Unsecured Group Standing Motion*" means the Motion of the Ad Hoc Group of TCEH Unsecured Noteholders for Entry of an Order Granting Standing and Authority to Commence, Prosecute, and Settle Certain Claims for Declaratory Judgment, Avoidance and Recovery of Liens, Security Interests, Obligations, Fees, and Interest Payments, and Disallowance of Claims [D.I. 3603].

421.    "*TCEH Unsecured Note Claim*" means any Claim derived from or based upon the TCEH Unsecured Notes, excluding any Claim derived from or based upon the TCEH Unsecured Notes held by EFH Corp. or EFIH.

422.    "*TCEH Unsecured Notes*" means, collectively: (a) the TCEH 2015 Notes; and (b) the TCEH Senior Toggle Notes.

423.    "*TCEH Unsecured Notes Trustee*" means Law Debenture Trust Company of New York, as successor trustee to BNY.

424.    "*TEF*" means Texas Energy Future Capital Holdings LLC, a Delaware limited liability company and the general partner of Texas Holdings.

425.    "*Terminated Restructuring Support Agreement*" means that certain Restructuring Support and Lock-Up Agreement, dated as of April 29, 2014, by and among EFH Corp., EFIH, EFH Corporate Services, EFIH Finance, the TCEH Debtors, and certain Holders of Claims and Interests, including all exhibits and schedules attached thereto, and terminated as of July 24, 2014 [D.I. 1697].

426.    "*Texas Holdings*" means Texas Energy Future Holdings Limited Partnership, a Texas limited partnership, which holds substantially all of the outstanding Interests in EFH Corp.

427.    "*Transaction Agreements*" means, collectively, (a) the Merger Agreement; (b) the Tax Matters Agreement; (c) the Transition Services Agreement; (d) the Separation Agreement; (d) the Amended and Restated Split Participant Agreement; and (e) related agreements and commitment letters.

428.    "*Transition Services Agreement*" means the transition services agreement entered into between Reorganized TCEH and EFH Corp. on or before the TCEH Effective Date, and any modification or amendment thereto, in form and substance reasonably acceptable to each of the parties thereto and the Plan Sponsor, addressing the Shared Services and any other transition services reasonably necessary to the continued operation of Reorganized EFIH, Reorganized EFH (or EFH Corp., as applicable), and Oncor, which shall be included in the Plan Supplement.

429.    "*TTI*" means Texas Transmission Investment LLC, a Delaware limited liability company.

430.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

431.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

432.    "*U.S.*" means the United States of America.

433.    "*U.S. Trustee*" means the Office of the U.S. Trustee for Region 3.

434.    "*Unsecured Claim*" means any Claim that is not a Secured Claim.

435.    "*Voting Indication*" means "*Voting Indication*" as such term is defined in the EFH/EFIH Committee Settlement.

**B.**    *Rules of Interpretation.*

For the purposes of the Plan:

(1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender;

(2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; *provided* that no document shall be deemed to be substantially in such form or substantially on such terms if any variation from such terms has any substantive legal or economic effect on any party;

(3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; *provided* that any such amendment, modification, or supplement is made in accordance with the terms of the Plan and the terms governing any applicable document, schedule, or exhibit, including any consent right in favor of the Plan Sponsor, the EFH Debtors, the Reorganized EFH Debtors, the EFIH Debtors or the Reorganized EFIH Debtors.

(4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns;

(5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto;

(6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement;

(7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

(8) subject to the provisions of any contract, certificate of incorporation, or similar formation document or agreement, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules;

(9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

(10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;

(11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be;

(12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's Case Management and Electronic Case Filing system;

(13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated;

(14) any immaterial effectuating provisions may be interpreted by the Reorganized EFH/EFIH Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; *provided, however*, that no effectuating provision shall be immaterial or deemed immaterial if it has any substantive legal or economic effect on any party;

(15) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized EFH/EFIH Debtors shall mean the Debtors and the Reorganized EFH/EFIH Debtors, as applicable, to the extent the context requires.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Except as otherwise provided herein, in the Merger Agreement, in the EFIH Secureds Settlement Approval Order, or in the Sempra Plan Support Agreement, as applicable, any action to be taken on the EFH Effective Date may be taken on or as soon as reasonably practicable after the EFH Effective Date.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however*, that corporate governance matters relating to the Debtors or the Reorganized EFH/EFIH Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the U.S., unless otherwise expressly provided.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, 2017 EFIH First Lien DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests.

A.    *Administrative Claims.*

    1.    General Administrative Claims.

      Except as specified in this Article II, unless the Holder of an Allowed General Administrative Claim and the Debtors or the Reorganized EFH/EFIH Debtors, as applicable, agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will receive, in full satisfaction of its General Administrative Claim, Cash equal to the amount of such Allowed General Administrative Claim either: (a) on the EFH Effective Date; (b) if the General Administrative Claim is not Allowed as of the EFH Effective Date, 60 days after the date on which an order allowing such General Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable; or (c) if the Allowed General Administrative Claim is based on a liability incurred by the Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction or agreement giving rise to such Allowed General Administrative Claim, without any further action by the Holders of such Allowed General Administrative Claim, and without any further notice to or action, order, or approval of the Bankruptcy Court.

      Requests for payment of General Administrative Claims must be Filed and served on the Debtors or the Reorganized EFH/EFIH Debtors, as applicable, no later than the Administrative Claims Bar Date applicable to the Debtor against whom the General Administrative Claim is asserted pursuant to the procedures specified in the EFH Confirmation Order and the notice of the EFH Effective Date. Holders of General Administrative Claims that are required to File and serve a request for payment of such General Administrative Claims by the Administrative Claims Bar Date that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Claims against the Debtors, the Reorganized EFH/EFIH Debtors, or their respective property and such General Administrative Claims shall be deemed forever discharged and released as of the EFH Effective Date. Any requests for payment of General Administrative Claims that are not properly Filed and served by the Administrative Claims Bar Date shall not appear on the Claims Register and shall be disallowed automatically without the need for further action by the Debtors or the Reorganized EFH/EFIH Debtors or further order of the Bankruptcy Court. To the extent this Article II.A.1 conflicts with Article XII.C of the Plan with respect to fees and expenses payable under section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, Article XII.C of the Plan shall govern.

    2.    Professional Compensation.

        (a)    Final Fee Applications.

      All final requests for payment of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through the EFH Effective Date, must be Filed and served on the Debtors, or Reorganized Debtors, and, with respect to fees incurred for the benefit of the EFH/EFIH Debtors, the EFH Plan Administrator Board, as applicable, no later than the Administrative Claims Bar Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, including the Interim Compensation Order, and once approved by the Bankruptcy Court, promptly paid from the Professional Fee Escrow Account up to its full Allowed amount.

        (b)    Professional Fee Escrow Accounts.

      On the EFH Effective Date, the EFH Debtors and the EFIH Debtors shall establish and fund the EFH Professional Fee Escrow Account and the EFIH Professional Fee Escrow Account, respectively, with Cash equal to the EFH Professional Fee Reserve Amount and the EFIH Professional Fee Reserve Amount, respectively.

      Upon the establishment of the applicable Professional Fee Escrow Account, the EFIH Debtors and the EFH Debtors shall select a Professional Fee Escrow Agent for the applicable Professional Fee Escrow Account to administer payments to and from such Professional Fee Escrow Account in accordance with the Plan and shall enter into escrow agreements providing for administration of such payments in accordance with the Plan.

The Professional Fee Escrow Accounts shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized EFH/EFIH Debtors (except to the extent any excess funds are distributed to the EFH/EFIH Cash Distribution Account, in accordance with the terms of the Plan, and solely after such distribution to the EFH/EFIH Cash Distribution Account). The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from the applicable Professional Fee Escrow Account when such Professional Fee Claims are Allowed by a Final Order.

(c)　　　Professional Fee Reserve Amount.

Professionals shall estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the EFH Effective Date and shall deliver such estimate to the Debtors no later than five days before the EFH Effective Date; provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

The total amount estimated pursuant to this section shall: (a) as estimated to be allocated to the EFH Debtors or the Reorganized EFH Debtors in accordance with Article II.A.2(d) of the Plan, comprise the EFH Professional Fee Reserve Amount; and (b) as estimated to be allocated to the EFIH Debtors or the Reorganized EFIH Debtors in accordance with Article II.A.2(d) of the Plan, comprise the EFIH Professional Fee Reserve Amount.

(d)　　　Allocation of Professional Fee Claims.

Allowed Direct Professional Fee Claims shall be allocated to, and paid from, the applicable Professional Fee Escrow Account. Allowed Collective Professional Fee Claims shall be allocated to, and paid from, the applicable Professional Fee Escrow Account in the same proportion that the amount of Allowed Direct Professional Fee Claims incurred by such Professional for such Debtor bears to the total amount of Allowed Direct Professional Fee Claims incurred by such Professional for all of the Debtors. For the avoidance of doubt, all Professional Fee Claims against any of the EFH/EFIH Debtors that accrue prior to the EFH Effective Date are subject to final approval by the Bankruptcy Court.

(e)　　　Post-Effective Date Fees and Expenses.

When all Allowed amounts owing to Professionals have been paid in full from the applicable Professional Fee Escrow Account, any remaining amount in such Professional Fee Escrow Account shall be disbursed as follows without any further action or order of the Bankruptcy Court: (a) from the EFH Professional Fee Escrow Account, to the EFH/EFIH Cash Distribution Account, on account of the EFH Unsecured Creditor Recovery Pool; and (b) from the EFIH Professional Fee Escrow Account, to the EFH/EFIH Cash Distribution Account, on account of the EFIH Unsecured Creditor Recovery Pool.

If the amount in any Professional Fee Escrow Account is insufficient to fund payment in full of all Allowed amounts owing to Professionals, the deficiency shall be promptly funded to the applicable Professional Fee Escrow Account as follows without any further action or order of the Bankruptcy Court: (a) as to the EFH Debtors, from the EFH/EFIH Cash Distribution Account, on account of the EFH Unsecured Creditor Recovery Pool; and (b) as to the EFIH Debtors, from the EFH/EFIH Cash Distribution Account, on account of the EFIH Unsecured Creditor Recovery Pool.

Upon the EFH Effective Date and the TCEH Effective Date, as applicable, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court; provided, however, that, for the avoidance of doubt, the Reorganized EFH Debtors and the Reorganized EFIH Debtors shall not be liable or otherwise responsible for the payment of any Professional Fee Claims.

*B.*      *2017 EFIH First Lien DIP Claims.*

The 2017 EFIH First Lien DIP Claims shall be Allowed in the full amount due and owing under the 2017 EFIH First Lien DIP Credit Agreement, including all principal, accrued and accruing postpetition interest, costs, fees, and expenses. On the EFH Effective Date, except to the extent that a Holder of an Allowed 2017 EFIH First Lien DIP Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of each Allowed 2017 EFIH First Lien DIP Claim, each such Holder shall receive payment in full in Cash by or on behalf of EFIH on the EFH Effective Date; *provided* that the 2017 EFIH First Lien DIP Contingent Obligations (including any and all expense reimbursement obligations of the EFIH Debtors that are contingent as of the EFH Effective Date) shall survive the EFH Effective Date (i) on an unsecured basis and shall be paid by the EFH Plan Administrator Board from the EFH/EFIH Cash Distribution Account as and when due under the 2017 EFIH First Lien DIP Credit Agreement and (ii) in an amount not to exceed $10 million, in the aggregate. For the avoidance of doubt, none of the Reorganized TCEH Debtors or Reorganized EFH Shared Services Debtors shall be obligated in any respect with respect to any 2017 EFIH First Lien DIP Claims.

*C.*      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the EFH Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code. For the avoidance of doubt, all payments in respect of Allowed Priority Tax Claims asserted against the EFH Debtors or EFIH Debtors (if any) shall be made by the EFH Plan Administrator Board solely from the EFH/EFIH Cash Distribution Account.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

*A.*      *Classification of Claims and Interests.*

Claims and Interests, except for Administrative Claims, 2017 EFIH First Lien DIP Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied before the applicable Effective Date. The Debtors reserve the right to assert that the treatment provided to Holders of Claims and Interests pursuant to Article III.B of the Plan renders such Holders Unimpaired.

1.   Class Identification for the EFH Debtors.

The Plan constitutes a separate chapter 11 plan of reorganization for each EFH Debtor, each of which shall include the classifications set forth below. Subject to Article III.D of the Plan, to the extent that a Class contains Claims or Interests only with respect to one or more particular EFH Debtors, such Class applies solely to such EFH Debtor.

The following chart represents the classification of Claims and Interests for each EFH Debtor pursuant to the Plan.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class A1 | Other Secured Claims Against the EFH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class A2 | Other Priority Claims Against the EFH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class A3 | Legacy General Unsecured Claims Against the EFH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class A4 | EFH Legacy Note Claims | Impaired | Entitled to Vote |
| Class A5 | EFH Unexchanged Note Claims | Impaired | Entitled to Vote |
| Class A6 | EFH LBO Note Primary Claims | Impaired | Entitled to Vote |
| Class A7 | EFH Swap Claims | Impaired | Entitled to Vote |
| Class A8 | EFH Non-Qualified Benefit Claims | Impaired | Entitled to Vote |
| Class A9 | General Unsecured Claims Against EFH Corp. | Impaired | Entitled to Vote |
| Class A10 | General Unsecured Claims Against the EFH Debtors Other Than EFH Corp. | Impaired | Entitled to Vote |
| Class A11 | TCEH Settlement Claim | Impaired | Entitled to Vote |
| Class A12 | EFH Debtor Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class A13 | Non-EFH Debtor Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class A14 | Interests in EFH Debtors Other Than EFH Corp. | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class A15 | Interests in EFH Corp. | Impaired | Not Entitled to Vote (Deemed to Reject) |

2.   Class Identification for the EFIH Debtors.

The Plan constitutes a separate chapter 11 plan of reorganization for each EFIH Debtor, each of which shall include the classifications set forth below.  Subject to Article III.D of the Plan, to the extent that a Class contains Claims or Interests only with respect to one or more particular EFIH Debtors, such Class applies solely such EFIH Debtor.

The following chart represents the classification of Claims and Interests for each EFIH Debtor pursuant to the Plan.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class B1 | Other Secured Claims Against the EFIH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class B2 | Other Priority Claims Against the EFIH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class B3 | EFIH First Lien Note Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class B4 | EFIH Second Lien Note Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class B5 | EFH LBO Note Guaranty Claims | Impaired | Entitled to Vote |
| Class B6 | General Unsecured Claims Against the EFIH Debtors | Impaired | Entitled to Vote |
| Class B7 | EFIH Debtor Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class B8 | Non-EFIH Debtor Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

RLF1 18943843v.1

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class B9 | Interest in EFIH | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class B10 | Interests in EFIH Finance | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.     *Treatment of Claims and Interests.*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to any Debtor, the classification of Allowed Claims and Allowed Interests is specified below.

1.     Class A1 - Other Secured Claims Against the EFH Debtors.

    (a)     *Classification*: Class A1 consists of Other Secured Claims Against the EFH Debtors.

    (b)     *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class A1, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class A1, each such Holder shall receive, at the option of the applicable EFH Debtor(s) with the consent of the Plan Sponsor, either:

        (i)     payment in full in Cash and payment of any interest required under section 506(b) and section 1129(b)(2)(i)(II) of the Bankruptcy Code;

        (ii)     delivery of collateral securing any such Claim and payment of any interest required under section 506(b) and section 1129(b)(2)(i)(II) of the Bankruptcy Code;

        (iii)     Reinstatement of such Claim; or

        (iv)     other treatment rendering such Claim Unimpaired.

    (c)     *Voting:* Class A1 is Unimpaired under the Plan. Holders of Claims in Class A1 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.     Class A2 - Other Priority Claims Against the EFH Debtors.

    (a)     *Classification*: Class A2 consists of Other Priority Claims Against the EFH Debtors.

    (b)     *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class A2, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class A2, each such Holder shall receive, at the option of the applicable EFH Debtor(s) with the consent of the Plan Sponsor, either:

        (i)     payment in full in Cash; or

        (ii)     other treatment rendering such Claim Unimpaired.

    (c)     *Voting*: Class A2 is Unimpaired under the Plan. Holders of Claims in Class A2 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the

Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3. Class A3 - Legacy General Unsecured Claims Against the EFH Debtors.

    (a)    *Classification*: Class A3 consists of Legacy General Unsecured Claims Against the EFH Debtors.

    (b)    *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class A3, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class A3, each such Holder shall receive Reinstatement of such Claim on the EFH Effective Date.

    (c)    *Voting*: Class A3 is Unimpaired under the Plan. Holders of Claims in Class A3 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

4. Class A4 - EFH Legacy Note Claims.

    (a)    *Classification*: Class A4 consists of EFH Legacy Note Claims.

    (b)    *Allowance*: Unless otherwise separately agreed by the Debtors, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), and a Holder of a Class A4 Claim, as Class A4 Claims, the EFH Legacy Note Claims are Allowed in an amount equal to the sum of: (i) the principal amount outstanding, plus accrued but unpaid prepetition interest, under the EFH Legacy Note Indentures; (ii) the amount of any unpaid fees and expenses provided for under the EFH Legacy Notes Indentures that are Allowed pursuant to the EFH Notes Trustee Substantial Contribution Ruling; and (iii) the amount of any other Claims (but in any case excluding any postpetition interest or Makewhole Claims) under the EFH Legacy Notes or EFH Legacy Note Indentures, if and to the extent such Claims are Allowed before the EFH Effective Date (for the avoidance of doubt, including, if Allowed before the EFH Effective Date, the amount of any unpaid fees and expenses provided for under the EFH Legacy Notes Indentures incurred after February 17, 2017).

    (c)    *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class A4, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class A4, each such Holder shall receive, up to the Allowed amount of its Claim, its Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Unsecured Creditor Recovery Pool.

    (d)    *Voting*: Class A4 is Impaired under the Plan. Therefore, Holders of Allowed Claims in Class A4 are entitled to vote to accept or reject the Plan.

5. Class A5 - EFH Unexchanged Note Claims.

    (a)    *Classification*: Class A5 consists of EFH Unexchanged Note Claims.

    (b)    *Allowance*: Unless otherwise separately agreed by the Debtors, with the consent of the Plan Sponsor, and a Holder of a Class A5 Claim, as Class A5 Claims, the EFH

RLF1 18943843v.1

Unexchanged Note Claims are Allowed in an amount equal to the sum of: (i) the principal amount outstanding, plus accrued but unpaid prepetition interest, under the EFH 2019 Note Indenture and EFH 2020 Note Indenture, as applicable; (ii) the amount of any unpaid fees and expenses provided for under the EFH Unexchanged Notes Indentures that are Allowed pursuant to the EFH Notes Trustee Substantial Contribution Ruling; and (iii) the amount of any other Claims (but in any case excluding any postpetition interest or Makewhole Claims) under the EFH Unexchanged Notes or EFH Unexchanged Notes Indentures, if and to the extent such Claims are Allowed, whether Allowed before, on, or after the EFH Effective Date (for the avoidance of doubt, including, if Allowed before the EFH Effective Date, the amount of any unpaid fees and expenses provided for under the EFH Unexchanged Notes Indentures incurred after February 17, 2017).

(c)   *Treatment*: Except to the extent that a Holder, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), of an Allowed Claim in Class A5 agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class A5, each such Holder shall receive, up to the Allowed amount of its Claim:

  (i)   its Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Unsecured Creditor Recovery Pool; and

  (ii)  if the Class A5 Claims constitute EFH Beneficiary Claims, and solely to the extent of any portion of its Allowed Claim that is not paid in full pursuant to the preceding clause, its Pro Rata share of up to $5.8 million of the TCEH Settlement Claim Turnover Distributions, if any.

(d)   *Voting*: Class A5 is Impaired under the Plan. Therefore, Holders of Allowed Claims in Class A5 are entitled to vote to accept or reject the Plan; *provided, however*, that Class A5 must vote consistent with the Voting Indication to receive distributions, if any, under clause (c)(ii) above.

6.   Class A6 - EFH LBO Note Primary Claims.

(a)   *Classification*: Class A6 consists of EFH LBO Note Primary Claims.

(b)   *Allowance*: Unless otherwise separately agreed by the Debtors, with the consent of the Plan Sponsor, and a Holder of a Class A6 Claim, as Class A6 Claims, the EFH LBO Note Primary Claims are Allowed in an amount equal to the sum of: (i) the principal amount outstanding, plus accrued but unpaid prepetition interest, under the EFH LBO Note Indenture; (ii) the amount of any unpaid fees and expenses provided for under the EFH LBO Notes Indenture that are Allowed pursuant to the EFH Notes Trustee Substantial Contribution Ruling; and (iii) the amount of any other Claims (but in any case excluding any postpetition interest or Makewhole Claims) under the EFH LBO Notes or EFH LBO Note Indenture, if and to the extent such Claims are Allowed before the EFH Effective Date (for the avoidance of doubt, including, if Allowed before the EFH Effective Date, the amount of any unpaid fees and expenses provided for under the EFH LBO Notes Indenture incurred after February 17, 2017).

(c)   *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class A6, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class A6, each such Holder shall receive, up to Allowed amount of its Claim, its Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Unsecured Creditor Recovery Pool; *provided, however*, that in no event shall a Holder

of an Allowed Claim in Class A6 receive more than a single satisfaction of such Allowed Claim, including any recovery received on account of an Allowed Claim in Class B5.

(d) *Voting:* Class A6 is Impaired under the Plan. Therefore, Holders of Allowed Claims in Class A6 are entitled to vote to accept or reject the Plan.

7. Class A7 - EFH Swap Claims.

(a) *Classification:* Class A7 consists of EFH Swap Claims.

(b) *Treatment:* Except to the extent that a Holder of an Allowed Claim in Class A7, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class A7, each such Holder shall receive, up to the Allowed amount of its Claim, its Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Unsecured Creditor Recovery Pool.

(c) *Voting:* Class A7 is Impaired under the Plan. Therefore, Holders of Allowed Claims in Class A7 are entitled to vote to accept or reject the Plan.

8. Class A8 - EFH Non-Qualified Benefit Claims.

(a) *Classification:* Class A8 consists of EFH Non-Qualified Benefit Claims.

(b) *Treatment:* Except to the extent that a Holder of an Allowed Claim in Class A8, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class A8, each such Holder shall receive, up to the Allowed amount of its Claim:

(i) its Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Unsecured Creditor Recovery Pool; and

(ii) if the Class A8 Claims constitute EFH Beneficiary Claims, and solely to the extent of any portion of its Allowed Claim that is not paid in full pursuant to the preceding clause, its Pro Rata share of up to $30 million in Cash on account of the TCEH Settlement Claim Turnover Distributions, if any.

(c) *Voting:* Class A8 is Impaired under the Plan. Therefore, Holders of Allowed Claims in Class A8 are entitled to vote to accept or reject the Plan; *provided, however,* that Class A8 must vote consistent with the Voting Indication to receive distributions, if any, under clause (b)(ii) above.

9. Class A9 - General Unsecured Claims Against EFH Corp.

(a) *Classification:* Class A9 consists of General Unsecured Claims Against EFH Corp.

(b) *Treatment:* Except to the extent that a Holder of an Allowed Claim in Class A9, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class A9, each such Holder shall receive, up to the Allowed amount of its Claim:

RLF1 18943843v.1

(i)    its Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Unsecured Creditor Recovery Pool; and

(ii)    if the Class A9 Claims constitute EFH Beneficiary Claims, and solely to the extent of any portion of its Allowed Claim that is not paid in full pursuant to the preceding clause, its Pro Rata share of up to $2 million of the TCEH Settlement Claim Turnover Distributions, if any.

(c)    *Voting*: Class A9 is Impaired under the Plan. Therefore, Holders of allowed Claims in Class A9 are entitled to vote to accept or reject the Plan; *provided, however*, that Class A9 must vote consistent with the Voting Indication to receive distributions, if any, under clause (b)(ii) above.

10.  Class A10 - General Unsecured Claims Against the EFH Debtors Other Than EFH Corp.

(a)    *Classification*: Class A10 consists of General Unsecured Claims Against the EFH Debtors Other Than EFH Corp.

(b)    *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class A10, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class A10, each such Holder shall receive, up to the Allowed amount of its Claim, its Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Unsecured Creditor Recovery Pool.

(c)    *Voting*: Class A10 is Impaired under the Plan. Therefore, Holders of Allowed Claims in Class A10 are entitled to vote to accept or reject the Plan.

11.  Class A11 - TCEH Settlement Claim.

(a)    *Classification*: Class A11 consists of the TCEH Settlement Claim.

(b)    *Allowance*: Unless otherwise separately agreed by the Debtors, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), and the TCEH Supporting First Lien Creditors, the TCEH Settlement Claim is Allowed in the amount of $700 million.

(c)    *Treatment*: Except to the extent that the TCEH Supporting First Lien Creditors, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agree to a less favorable treatment of the TCEH Settlement Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for the TCEH Settlement Claim, each of the Holders of Allowed TCEH First Lien Secured Claims shall receive, up to the Allowed amount of the TCEH Settlement Claim, its Pro Rata share (calculated based on the aggregate amount of EFH Corp. Claims) of the EFH Unsecured Creditor Recovery Pool *less* any TCEH Settlement Claim Turnover Distributions. For purposes of the foregoing, the Holders of the Allowed TCEH First Lien Secured Claims are creditors of EFH Corp. in respect of the TCEH Settlement Claims, and recoveries on account of such Claims shall be distributed directly to the Holders of Allowed TCEH First Lien Secured Claims, as set forth in Article III.B.29 of the TCEH Plan. Upon the EFH Effective Date, Reorganized TCEH shall be deemed to not have control, possession, title, or ownership of the TCEH Settlement Claims or any recovery on account thereof.

(d)    *Voting*: Class A11 is Impaired under the Plan. Therefore, the TCEH Supporting First

Lien Creditors are entitled to vote to accept or reject the Plan on behalf of TCEH.

12. **Class A12 - EFH Debtor Intercompany Claims.**

    (a)    *Classification*: Class A12 consists of EFH Debtor Intercompany Claims.

    (b)    *Treatment*: EFH Debtor Intercompany Claims shall be, at the option of the EFH Debtors with the consent of the Plan Sponsor, either:

        (i)    Reinstated; or

        (ii)    canceled and released without any distribution on account of such Claims;

        *provided, however*, that Class A12 Claims of EFH Corp., LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. against one or more of EFH Corp., LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. shall be Reinstated.

    (c)    *Voting*: Holders of Claims in Class A12 are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

13. **Class A13 - Non-EFH Debtor Intercompany Claims.**

    (a)    *Classification*: Class A13 consists of Non-EFH Debtor Intercompany Claims.

    (b)    *Treatment*: Non-EFH Debtor Intercompany Claims shall be canceled and released without any distribution on account of such Claims.

    (c)    *Voting*: Class A13 is Impaired under the Plan. Holders of Claims in Class A13 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

14. **Class A14 - Interests in the EFH Debtors Other Than EFH Corp.**

    (a)    *Classification*: Class A14 consists of Interests in the EFH Debtors Other Than EFH Corp.

    (b)    *Treatment*: Interests in the EFH Debtors Other Than EFH Corp. shall be, at the option of the EFH Debtors with the consent of the Plan Sponsor, either:

        (i)    Reinstated; or

        (ii)    canceled and released without any distribution on account of such Interests;

        *provided, however*, that Interests in Debtors LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. shall be Reinstated.

    (c)    *Voting*: Holders of Interests in Class A14 are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

RLFI 18943843v.1

15. Class A15 - Interests in EFH Corp.

    (a)    *Classification*: Class A15 consists of Interests in EFH Corp.

    (b)    *Treatment*: Interests in EFH Corp. shall be canceled and released without any distribution on account of such Interests.

    (c)    *Voting*: Class A15 is Impaired under the Plan. Holders of Interests in Class A15 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

16. Class B1 - Other Secured Claims Against the EFIH Debtors.

    (a)    *Classification*: Class B1 consists of Other Secured Claims Against the EFIH Debtors.

    (b)    *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class B1, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class B1, each such Holder shall receive, at the option of the applicable EFIH Debtor(s) with the consent of the Plan Sponsor, either:

        (i)    payment in full in Cash;

        (ii)    delivery of collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code;

        (iii)    Reinstatement of such Claim; or

        (iv)    other treatment rendering such Claim Unimpaired.

    (c)    *Voting:* Class B1 is Unimpaired under the Plan. Holders of Claims in Class B1 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

17. Class B2 - Other Priority Claims Against the EFIH Debtors.

    (a)    *Classification*: Class B2 consists of Other Priority Claims Against the EFIH Debtors.

    (b)    *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class B2, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class B2, each such Holder shall receive, at the option of the applicable EFIH Debtor(s) with the consent of the Plan Sponsor, either:

        (i)    payment in full in Cash; or

        (ii)    other treatment rendering such Claim Unimpaired.

    (c)    *Voting*: Class B2 is Unimpaired under the Plan. Holders of Claims in Class B2 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject

50

the Plan.

18.  Class B3 - EFIH First Lien Note Claims.

(a)  *Classification:*  Class B3 consists of EFIH First Lien Note Claims, if any.

(b)  *Allowance:*  As Class B3 Claims, the EFIH First Lien Note Claims are Allowed in an amount equal to the Allowed EFIH First Lien Claims.

(c)  *Treatment:*  Except to the extent that a Holder of an Allowed Claim in Class B3, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, each such Holder shall receive up to the Allowed amount of its Claim, payment in full in Cash (to the extent not previously paid pursuant to separate Order of the Bankruptcy Court). On the EFH Effective Date, the EFIH First Lien Post-Effective Date Fee and Indemnification Claims Reserve shall be funded, which reserve shall be treated in accordance with the EFIH Secureds Settlement Approval Order. As set forth in Article VIII.B, the Liens securing the EFIH First Lien Note Claims shall be released upon satisfaction of all Allowed EFIH First Lien Note Claims (and, with respect to the EFIH First Lien Post-Effective Date Fees and Indemnification Claims, the funding of the EFIH First Lien Post-Effective Date Fee and Indemnification Claims Reserve). For the avoidance of doubt, the EFIH Settlement Agreement and EFIH Secureds Settlement Approval Order shall remain in full force and effect on and after the EFH Effective Date in accordance with the terms therein.

(d)  *Voting:*  Class B3 is Unimpaired under the Plan. Therefore, Holders of Allowed Claims in Class B3 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

19.  Class B4 - EFIH Second Lien Note Claims.

(a)  *Classification:*  Class B4 consists of EFIH Second Lien Note Claims.

(b)  *Allowance:*  Unless otherwise separately agreed by the Debtors, with the consent of the Plan Sponsor, and a Holder of a Class B4 Claim, as Class B4 Claims, the EFIH Second Lien Note Claims are Allowed in an amount equal to the Allowed EFIH Second Lien Claims.

(c)  *Treatment:*  Except to the extent that a Holder of an Allowed Claim in Class B4, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, each such Holder shall receive up to the Allowed amount of its Claim, payment in full in Cash (to the extent not previously paid pursuant to separate Order of the Bankruptcy Court); *provided* that each Holder of an Allowed Claim in Class B4 may make the Rollover Trust Investment Election; *provided, however* that Supporting EFIH Unsecured Creditors shall not make the Rollover Trust Investment Election, unless otherwise agreed in writing by the Plan Sponsor; *provided, further, however* that notwithstanding anything to the contrary herein, that the Plan Sponsor shall have the right to determine, in its sole discretion, which Entities may participate in the Rollover Trust Investment Election, which determination shall be made no later than five (5) Business Days prior to the EFH Effective Date; *provided,* that if the Plan Sponsor is required to cause New HoldCo Equity Interests to be issued pursuant to Section 1.8(b)(i) of the Merger Agreement, then the Plan Sponsor shall not permit any Entities to make the Rollover Trust

Investment Election without the consent of the Supporting EFIH Unsecured Creditors and the Debtors.

The aggregate value of Rollover Trust Certificates issued on the EFH Effective Date shall not exceed $2.5 billion (unless otherwise agreed by the Plan Sponsor in its sole discretion, subject to the Tax Contingency Disclosure), and shall be subject to reduction by the Tax Contingency Adjustment, if any. If the Rollover Trust Investment Election is made with respect to Allowed Claims in Class B4 in an aggregate amount greater than $2.5 billion (or such other amount as agreed to by the Plan Sponsor in its sole discretion, subject to the Tax Contingency Adjustment and Tax Contingency Disclosure), then Holders of Allowed Claims in Class B4 who make the Rollover Trust Investment Election shall receive (pursuant to the actual or deemed transactions described in Article IV.B.4 of this Plan) their pro rata share of Rollover Trust Certificates available for distribution to Holders of Allowed Claims in Class B4 based on the amount of such Holder's Allowed Claims in Class B4 for which it made the Rollover Trust Investment Election bears to the aggregate amount of all Allowed Claims in Class B4 for which the Rollover Trust Investment Election was made.

On the EFH Effective Date, the EFIH Second Lien Post-Effective Date Fee and Indemnification Claims Reserve shall be funded, which reserve shall be treated in accordance with the EFIH Secureds Settlement Approval Order. As set forth in Article VIII.B of this Plan, the Liens securing the EFIH Second Lien Note Claims shall be released upon satisfaction of all Allowed EFIH Second Lien Note Claims (and, with respect to EFIH Second Lien Post-Effective Date Fees and Indemnification Claims, the funding of the EFIH Second Lien Post-Effective Date Fee and Indemnification Claims Reserve).

For the avoidance of doubt, the EFIH Settlement Agreement and EFIH Secureds Settlement Approval Order shall remain in full force and effect on and after the EFH Effective Date in accordance with the terms therein.

(d)  *Voting*:  Class B4 is Unimpaired under the Plan.  Therefore, Holders of Allowed Claims in Class B4 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

20.  Class B5 - EFH LBO Note Guaranty Claims.

(a)  *Classification*: Class B5 consists of EFH LBO Note Guaranty Claims.

(b)  *Allowance*:  Unless otherwise separately agreed by the Debtors, with the consent of the Plan Sponsor, and a Holder of a Class B5 Claim, as Class B5 Claims, the EFH LBO Note Guaranty Claims are Allowed in an amount equal to the sum of:  (i) the principal amount outstanding, plus accrued but unpaid prepetition interest, under the EFH LBO Note Indenture; and (ii) the amount of any unpaid fees and expenses provided for under the EFH LBO Notes Indenture that are Allowed pursuant to the EFH Notes Trustee Substantial Contribution Ruling; and (iii) the amount of any other Claims (but in any case excluding any Makewhole Claims) under the EFH LBO Notes or EFH LBO Note Indentures, if and to the extent such Claims are Allowed, whether Allowed before, on or after the EFH Effective Date (for the avoidance of doubt, including, if Allowed before the EFH Effective Date, the amount of any unpaid fees and expenses provided for under the EFH LBO Notes Indenture incurred after February 17, 2017).

(c)  *Treatment*:  Except to the extent that a Holder of an Allowed Claim in Class B5, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction,

settlement, release, and discharge of and in exchange for each Allowed Claim in Class B5, each such Holder shall receive, up to the Allowed amount of its Claim, its Pro Rata share (calculated based on the aggregate amount of Allowed EFH LBO Note Guaranty Claims and Allowed General Unsecured Claims Against the EFIH Debtors) of the EFIH Unsecured Creditor Recovery Pool; *provided*, *however*, that in no event shall a Holder of an Allowed Claim in Class B5 receive more than a single satisfaction of such Allowed Claim, including any recovery received on account of an Allowed Claim in Class A6.

(d)    *Voting:*  Class B5 is Impaired under the Plan. Therefore, Holders of Allowed Claims in Class B5 are entitled to vote to accept or reject the Plan.

21.  Class B6 - General Unsecured Claims Against the EFIH Debtors.

(a)    *Classification*:  Class B6 consists of General Unsecured Claims Against the EFIH Debtors.

(b)    *Allowance*:  As Class B6 Claims, the EFIH Unsecured Note Claims are Allowed in an amount equal to the Allowed EFIH General Unsecured Claim.

(c)    *Treatment*:  Except to the extent that a Holder of an Allowed Claim in Class B6, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class B6, each such Holder shall receive, up to the Allowed amount of its Claim, its Pro Rata share (calculated based on the aggregate amount of Allowed EFH LBO Note Guaranty Claims and Allowed General Unsecured Claims Against the EFIH Debtors) of the EFIH Unsecured Creditor Recovery Pool.

(d)    *Voting:*  Class B6 is Impaired under the Plan. Therefore, Holders of Allowed Claims in Class B6 are entitled to vote to accept or reject the Plan.

22.  Class B7 - EFIH Debtor Intercompany Claims.

(a)    *Classification*:  Class B7 consists of EFIH Debtor Intercompany Claims.

(b)    *Treatment*:  EFIH Debtor Intercompany Claims shall be, at the option of the EFIH Debtors with the consent of the Plan Sponsor, either:

(i)    Reinstated; or

(ii)    canceled and released without any distribution on account of such Claims.

(c)    *Voting*:  Holders of Claims in Class B7 are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

23.  Class B8 - Non-EFIH Debtor Intercompany Claims.

(a)    *Classification*:  Class B8 consists of Non-EFIH Debtor Intercompany Claims.

(b)    *Treatment*:  Non-EFIH Debtor Intercompany Claims shall be canceled and released without any distribution on account of such Claims.

53

(c)   *Voting*:  Class B8 is Impaired under the Plan. Holders of Claims in Class B8 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

24.  Class B9 - Interest in EFIH.

(a)   *Classification*:  Class B9 consists of the Interest in EFIH.

(b)   *Treatment*:  The Interest in EFIH shall be Reinstated.

(c)   *Voting*:  Class B9 is Unimpaired under the Plan.  The Holder of the Interest in Class B9 is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holder is not entitled to vote to accept or reject the Plan.

25.  Class B10 - Interests in EFIH Finance.

(a)   *Classification*:  Class B10 consists of Interests in EFIH Finance.

(b)   *Treatment*:  Interests in EFIH Finance shall be canceled and released without any distribution on account of such Interests.

(c)   *Voting*:  Class B10 is Impaired under the Plan.  Holders of Interests in Class B10 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes pursuant to the EFH Disclosure Statement Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

E.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

F.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the EFH Confirmation Date.

G.      *Subordinated Claims and Interests.*

        The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims and Interests.*

        Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the EFH Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

B.      *Restructuring Transactions.*

        1.   Restructuring Transactions.

        On the EFH Effective Date, the Debtors or the Reorganized EFH/EFIH Debtors, as applicable, will effectuate the Restructuring Transactions, and will take any actions as may be necessary or advisable to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Debtors, to the extent provided herein or in the Transaction Agreements. The actions to implement the Restructuring Transactions may include: (a) the execution and delivery of appropriate agreements, including Transaction Agreements, or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (c) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other organizational documents pursuant to applicable state law; and (d) all other actions that the applicable Entities determine to be necessary or advisable, including making filings or recordings that may be required by law in connection with the Plan, in each case with the consent of (such consent not to be unreasonably withheld), and in form and substance reasonably acceptable to, the Plan Sponsor if related to or affecting any EFH Debtor, any Reorganized EFH Debtor, any EFIH Debtor, any Reorganized EFIH Debtor, the Plan Sponsor, or any pre-EFH Merger Affiliate of the Plan Sponsor.

        The EFH Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

2.    The Plan Sponsor Equity Investment.

On the EFH Effective Date, the Plan Sponsor shall consummate the Plan Sponsor Equity Investment in exchange for the New HoldCo Class C Units.

3.    Issuance of Reorganized EFH Common Stock and New HoldCo Equity Interests.

On the EFH Effective Date, upon cancellation of the Interests in EFH Corp., Reorganized EFH shall issue and deliver the Reorganized EFH Common Stock to Intermediary HoldCo in accordance with the Merger Agreement, and New HoldCo shall be authorized to issue New HoldCo Equity Interests to the persons who will be Rollover Trust Participants, the Rollover Trust, the Non-Rollover Trust (as applicable), and the Plan Sponsor. Reorganized EFH, Intermediary HoldCo, and New HoldCo, respectively, shall issue all securities, instruments, certificates, and other documents required to be issued with respect thereto, and such issuances made pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

4.    The Issuance of Rollover Trust Certificates and the Non-Rollover Trust Certificates.

On the EFH Effective Date, the Rollover Trust may be formed pursuant to the Rollover Trust Agreement. Notwithstanding anything in the Plan to the contrary, in consideration for (as applicable) the Rollover Trust Investment Elections, payments received by the Backstop Parties, and satisfaction of certain Allowed Unsecured Claims against EFH Corp. and Allowed Class B5 Claims or Allowed Class B6 Claims, New HoldCo shall or shall be deemed to issue to Entities who will be Rollover Trust Participants the New HoldCo Class A Units, and such Entities shall or shall be deemed to contemporaneously contribute such New HoldCo Class A Units to the Rollover Trust in return for Rollover Trust Certificates, and the Rollover Trust shall issue such Rollover Trust Certificates required to be issued, if any, under the Plan and the Backstop Commitment Agreement; *provided, however* that Supporting EFIH Unsecured Creditors shall not make the Rollover Trust Investment Election, unless otherwise agreed in writing by the Plan Sponsor; *provided, further, however* that, notwithstanding anything to the contrary herein, the Plan Sponsor shall have the right to determine, in its sole discretion, which Entities may participate in the Rollover Trust Investment Election, which determination shall be made no later than five (5) Business Days prior to the EFH Effective Date; *provided*, that if the Plan Sponsor is required to cause Rollover Trust Certificates to be issued pursuant to Section 1.8(b)(i) of the Merger Agreement, then the Plan Sponsor shall not permit any Entities to make the Rollover Trust Investment Election without the consent of the Supporting EFIH Unsecured Creditors and the Debtors. The value of the Rollover Trust Certificates issued on the EFH Effective Date shall not exceed $2.5 billion, unless otherwise agreed by the Plan Sponsor in its sole discretion, subject to the Tax Contingency Disclosure).

On the EFH Effective Date, if the value of the Rollover Trust Certificates issued on the EFH Effective Date is less than $2.5 billion (or such other amount as agreed to by the Plan Sponsor in its sole discretion, subject to the Tax Contingency Disclosure), the Non-Rollover Trust may be formed pursuant to the Non-Rollover Trust Agreement, and in consideration for the purchase price paid by the Non-Rollover Trust Investors, if any, New HoldCo shall issue the New HoldCo Class B Units to the Non-Rollover Trust, and the Non-Rollover Trust shall issue the Non-Rollover Trust Certificates to the Non-Rollover Trust Investors; *provided* that the value of Non-Rollover Trust Certificates issued on the EFH Effective Date shall, in the aggregate, not exceed $2.5 billion less the value of Rollover Trust Certificates issued on the EFH Effective Date (such that the aggregate value of the Rollover Trust Certificates and Non-Rollover Trust Certificates issued on the EFH Effective Date shall not exceed $2.5 billion, in the aggregate); *provided, further* that the Plan Sponsor may, in its sole discretion, increase the $2.5 billion aggregate value limitation in respect of the Rollover Trust Certificates and/or Non-Rollover Trust Certificates to be issued on the EFH Effective Date. The Rollover Trust Certificates and Non-Rollover Trust Certificates issued pursuant to the Plan shall be, to the extent applicable, duly authorized, validly issued, fully paid, and non-assessable.

The Plan Sponsor Equity Investment and Cash received from the Backstop Parties and Non-Rollover Trust Investors, as applicable, shall be contributed to Intermediary HoldCo and then to EFH Merger Sub to enable EFH Merger Sub to pay the Cash Deposit Amount as set forth below.

5.  EFH Merger, Merger Consideration, and Other Plan Sponsor Payments.

The EFH Merger shall be effectuated as follows at the Merger Effective Time in accordance with the Merger Agreement:

(a)  EFH Merger Sub will merge with and into Reorganized EFH, with Reorganized EFH—as a wholly owned subsidiary of Intermediary HoldCo, which, in turn, will be a wholly owned subsidiary of New HoldCo—being the surviving entity resulting from the EFH Merger, on the terms and subject to the conditions of the Merger Agreement and pursuant to the Plan and the applicable provisions of Chapter 10 of the Texas Business Organizations Code and the General Corporate Law of the State of Delaware. Pursuant to the EFH Merger, Reorganized EFH, as the surviving entity, shall retain all assets and liabilities of EFH Corp. except (a) the EFH Corp. Cash transferred to the Plan Administrator Board for deposit into the EFH/EFIH Cash Distribution Account immediately prior to the Merger Effective Time and (b) such claims and liabilities that are discharged and released by operation of the Plan on the EFH Effective Date. Each share in EFH Merger Sub issued and outstanding immediately prior to the Merger Effective Time shall be converted into and become one (1) validly issued, fully paid and non-assessable share of common stock of Reorganized EFH, as the surviving entity.

(b)  The Reorganized EFH Common Stock shall be issued to Intermediary HoldCo.

(c)  At the EFH Merger Closing, EFH Merger Sub will deliver (i) the Cash Deposit Amount less the EFIH First Lien DIP Repayment Amount by wire transfer of immediately available funds to the EFH Plan Administrator Board and (ii) the EFIH First Lien DIP Repayment Amount by wire transfer of immediately available funds either (1) to EFIH, which shall deliver the EFIH First Lien DIP Repayment Amount to the EFH Plan Administrator Board, which shall, in turn, deliver the EFIH First Lien DIP Repayment Amount to the 2017 EFIH First Lien DIP Agent or (2) directly to the 2017 EFIH First Lien DIP Agent, consistent with Section 1.1 of the Merger Agreement.

(d)  Subject to the Tax Contingency Disclosure and Sections 1.7 and 1.8 of the Merger Agreement, EFIH will deposit Cash on hand at EFIH as of the EFH Effective Date by wire transfer of immediately available funds into the EFH/EFIH Cash Distribution Account.

(e)  EFIH shall use the EFIH First Lien DIP Repayment Amount to fund payment in full of the 2017 EFIH First Lien DIP Claims to the 2017 EFIH First Lien DIP Agent.

(f)  Subject to the Tax Contingency Disclosure and Sections 1.7 and 1.8 of the Merger Agreement, EFH Merger Sub will deposit the EFH Corp. Cash into the EFH Cash Account by wire transfer of immediately available funds into the EFH/EFIH Cash Distribution Account.

(g)  The EFH Plan Administrator Board shall fund the Cash payments of the outstanding Allowed EFIH First Lien Claims and Allowed EFIH Second Lien Claims (to the extent such Holders of Allowed EFIH Second Lien Claims did not make the Rollover Trust Investment Election) from the EFH/EFIH Cash Distribution Account (but excluding the EFH Cash Account) on the EFH Effective Date pursuant to the EFIH Secureds Settlement Approval Order, including the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve and the EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve (each in accordance with the EFIH Secureds Settlement Approval Order); *provided, however*, that immediately upon the satisfaction of the outstanding Allowed EFIH First Lien Note Claims and Allowed EFIH Second Lien

57

Note Claims (and funding of applicable reserves pursuant to the EFIH Secureds Settlement Approval Order), the Liens securing the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, as applicable, will be released.

6.    Dissolution and Liquidation of Certain Subsidiaries of EFH Corp.

On or before the EFH Effective Date and before the Merger Effective Time, all EFH Debtors and EFIH Debtors, excluding: (a) EFH Corp.; (b) EFIH; (c) LSGT Gas Company LLC; (d) EECI, Inc., (e) EEC Holdings, Inc.; and (f) LSGT SACROC, Inc., not already disposed of, wound down, or liquidated in accordance with applicable law shall be deemed dissolved without any further court or corporate action, including the filing of any documents with the Secretary of State for any state in which any such subsidiary is incorporated or any other jurisdiction.  On the EFH Effective Date, equity interests in EFH Non-Debtors shall be abandoned pursuant to section 554 of the Bankruptcy Code; *provided, however,* that equity interests in EFH Non-Debtor EFH Vermont Insurance Company shall not be abandoned and shall remain outstanding after the EFH Effective Date.  For the avoidance of doubt, none of (i) the Plan Sponsor; (ii) EFH Merger Sub; (iii) the EFH Debtors; (iv) the Reorganized EFH Debtors; (v) EFIH; (vi) Reorganized EFIH; (vii) Oncor Holdings; (viii) Oncor Electric; (ix) any other entity acquired, directly or indirectly, by the Plan Sponsor pursuant to the terms of, or as a result of, the Plan, the Merger Agreement, or any related agreement, or (x) with respect to each of the foregoing Entities in clauses (i) through (ix), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, shall have or incur any liability whatsoever in connection with or as a result of the wind-down, disposition, or liquidation of any entity, or the abandonment of the equity interests in any entity, in accordance with the terms of this Article IV.B.6.

EFCH and TCEH shall be liquidated no later than immediately prior to the Merger Effective Time and, if not liquidated, shall be deemed dissolved immediately prior to the Merger Effective Time without any further court or corporate action, including the filing of any documents with the Secretary of State for any state in which either such Entity is incorporated or any other jurisdiction.

7.    Implementation of the TCEH Settlement.

The TCEH Settlement Claim is in consideration for the terms and conditions embodied in the Plan and the Settlement Agreement, as applicable, including settlement of any prepetition Claim or Cause of Action of the TCEH Debtors against the EFH Debtors, the EFIH Debtors, Oncor, the Holders of Interests in EFH Corp., or their Affiliates, pursuant to Bankruptcy Rule 9019, approved by the Bankruptcy Court.

C.    *Sources of Consideration for Plan Distributions.*

The Reorganized EFH Debtors and the Reorganized EFIH Debtors shall fund distributions under the Plan, as applicable, with:  (1) EFH Corp. Cash and EFIH Cash, in each case subject to the Tax Contingency Disclosure; (2) the Cash Deposit Amount, including the proceeds of the Exit Term Loan Facility, if any (which, for the avoidance of doubt, shall be calculated in accordance with the terms set forth in the Merger Agreement); and (3) the New HoldCo Class A Units (and, pursuant to the actual or deemed transactions described in Article IV.B.4 of this Plan, the Rollover Trust Certificates), including, if necessary, in accordance with the terms of the Tax Contingency Disclosure.  Each distribution and issuance referred to in Article VI of this Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.  The issuance of certain securities in connection with the Plan, including the Reorganized EFH Common Stock, the New HoldCo Equity Interests, the Rollover Trust Certificates, and the Non-Rollover Trust Certificates, will be exempt from SEC registration to the fullest extent permitted by law.

1. Reorganized EFH Common Stock.

At the Merger Effective Time, Reorganized EFH shall be authorized to issue the Reorganized EFH Common Stock to Intermediary HoldCo.

Reorganized EFH shall issue all securities, instruments, certificates, and other documents required to be issued with respect to the Reorganized EFH Common Stock in respect of Reorganized EFH or its subsidiaries. The share of Reorganized EFH Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

2. Cash on Hand at EFH Corp. and EFIH.

Subject to the Tax Contingency Disclosure (and Section 1.8 of the Merger Agreement), Reorganized EFH and Reorganized EFIH shall, through the Disbursing Agent, use EFH Corp. Cash and EFIH Cash (as applicable) to fund distributions to certain Holders of Allowed Claims against the EFH Debtors and the EFIH Debtors in accordance with the Plan and the Merger Agreement.

3. Cash Deposit Amount.

The EFH Debtors and the EFIH Debtors shall use the Cash Deposit Amount to fund any initial distributions in accordance with the Plan, the EFIH Secureds Settlement Approval Order, and the EFH Confirmation Order. The EFH Plan Administrator Board shall use any remaining Cash Deposit Amount to fund the payment of certain fees and distributions to certain Holders of Claims against the EFH Debtors and the EFIH Debtors in accordance with the Plan. The Cash Deposit Amount shall be calculated in accordance with the terms set forth in the Merger Agreement.

4. Exit Facilities.

On the EFH Effective Date, EFH Merger Sub and, upon consummation of the Merger, Reorganized EFH may enter into the Exit Facilities and incur the debt obligations in accordance with the Exit Facility Agreement. On the EFH Effective Date and without further notice to or order or other approval of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization, or approval of any person or entity, except for the EFH Confirmation Order and as otherwise required by the applicable Exit Facility Documents, Reorganized EFH may, and is authorized to, enter into and perform and to execute and deliver the Exit Facility Agreement and other Exit Facility Documents with respect to such Exit Facilities and to use the funds for distributions under the Plan, ongoing business operations, and working capital needs.

Without limiting the foregoing, Reorganized EFH shall pay, as and when due, all fees and expenses and other amounts provided under the Exit Facility Documents. Confirmation of the Plan shall be deemed (a) approval of the Exit Facilities, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by Reorganized EFH in connection therewith, including the payment of all fees, indemnities, and expenses provided for by the Exit Facility Documents, and (b) authorization to enter into and perform under the Exit Facility Documents. The Exit Facility Documents shall constitute legal, valid, binding, and authorized obligations of Reorganized EFH, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

On the EFH Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents (w) shall be deemed to be approved, (x) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents, (y) shall be deemed perfected on the EFH Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents, and (z) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential

59

transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.

Reorganized EFH and the persons and entities granted such Liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the EFH Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the EFH Confirmation Order) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. Holders of Claims secured by collateral to be granted in accordance with the Exit Facility Documents shall be subject to the provisions of Article VIII.B of this Plan.

Notwithstanding anything to the contrary in this Plan, the Bankruptcy Court shall have no jurisdiction over any matters first arising under the Exit Facility Documents after the EFH Effective Date.

Further, notwithstanding anything to the contrary in this Plan, the Plan Sponsor may determine, in its sole discretion, to reduce the amount of the Exit Facilities incurred on the EFH Effective Date; *provided* that the overall purchase price paid or contributed and overall stakeholder recovery remains unchanged on an aggregate basis.

    5.    EFIH First Lien DIP Repayment Amount.

The EFH Debtors and the EFIH Debtors shall use the funds contributed by the Plan Sponsor or an Affiliate thereof for the EFIH First Lien DIP Repayment Amount to repay all outstanding 2017 EFIH First Lien DIP Claims. The Plan Sponsor or an Affiliate thereof may transfer the EFIH First Lien DIP Repayment Amount directly to the 2017 EFIH First Lien DIP Agent.

    6.    Rollover Trust Certificates.

On the EFH Effective Date, as applicable, the Rollover Trustee, pursuant to the terms of the Rollover Trust Agreement, shall issue, pursuant to the actual or deemed transactions described in Article IV.B.4 of this Plan, Rollover Trust Certificates: (a) to Holders of Allowed EFIH Second Lien Note Claims who make the Rollover Trust Investment Election with respect to all or a portion of their Allowed EFIH Second Lien Claims; (b) to the Backstop Parties; and (c) if necessary to obtain one or more of the required Supplemental Rulings, to Holders of Claims entitled to a distribution from the EFIH Unsecured Creditor Recovery Pool or the EFH Unsecured Creditor Recovery Pool, in accordance with the terms of the Merger Agreement and Tax Contingency Disclosure; *provided* that notwithstanding anything to the contrary herein, that the Plan Sponsor shall have the right to determine, in its sole discretion, which Entities may participate in the Rollover Trust Investment Election, which determination shall be made no later than five (5) Business Days prior to the EFH Effective Date; *provided, further* that if the Plan Sponsor is required to cause Rollover Trust Certificates to be issued pursuant to Section 1.8(b)(i) of the Merger Agreement, then the Plan Sponsor shall not permit any Entities to make the Rollover Trust Investment Election without the consent of the Supporting EFIH Unsecured Creditors and the Debtors.

The New HoldCo Class A Units (and, pursuant to the actual or deemed transactions described in Article IV.B.4 of this Plan, the Rollover Trust Certificates), if any, will be issued pursuant to section 1145 of the Bankruptcy Code and will be freely tradable from issuance, subject to any securities laws restrictions and restrictions intended to prevent the Rollover Trust from being required to become a reporting company under the Securities Exchange Act of 1934, as amended.

D.    *Intercompany Account Settlement.*

The Debtors and the Reorganized EFH/EFIH Debtors, as applicable, including, in the case of any Conflict Matter between any Debtors, each Debtor acting at the direction of its respective Disinterested Director or Manager and without the consent of any other Debtor, subject to the consent of the Plan Sponsor (such consent not to be unreasonably withheld), shall be entitled to transfer funds between and among themselves as they determine to be

necessary or advisable to enable the Reorganized EFH/EFIH Debtors to satisfy their obligations under the Plan; *provided, however,* that the EFH Debtors and EFIH Debtors shall not transfer funds to a Debtor that is not an EFH Debtor or an EFIH Debtor, respectively, except as otherwise provided elsewhere in the Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Reorganized EFH/EFIH Debtors' historical intercompany account settlement practices and shall not violate the terms of the Plan. The transfer of funds between the Debtors and the Reorganized EFH/EFIH Debtors, as applicable, and Oncor shall continue to be governed by the Oncor Tax Sharing Agreement.

The allocations between the EFH Debtors on the one hand and the EFIH Debtors on the other hand of any liabilities of any of the EFH Debtors or the EFIH Debtors (or both) for any Administrative Claims or for satisfaction of liabilities to be paid or assumed under the Plan on the EFH Effective Date will either be determined (a) pursuant to a settlement reached between each of the EFH Debtors and the EFIH Debtors (which settlement shall be subject to Bankruptcy Court approval), each Debtor acting at the direction of its respective Disinterested Directors or Manager and without the consent of any other Debtor, with the details of such settlement to be included in the EFH Disclosure Statement by the date of the Hearing to consider approval of the EFH Disclosure Statement or (b) in such amounts as the Bankruptcy Court determines by Final Order (collectively, the "Allocations").

Nothing in this Plan shall release or discharge any claim by the EFH Debtors against the EFIH Debtors or any claim by the EFIH Debtors against the EFH Debtors as a result of the Allocations, *provided, however,* that any payment to satisfy any such allocation shall be made only from the EFH Unsecured Creditor Recovery Pool or the EFIH Unsecured Creditor Recovery Pool, as the case may be, and shall not affect in any way any amounts owing under the Merger Agreement.

E.      *Corporate Existence.*

Except as otherwise provided in the Plan or in the Merger Agreement, including as set forth in Article IV.B.6, each Debtor shall continue to exist after the EFH Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect before the EFH Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan or otherwise (consistent with the Merger Agreement, as applicable), and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state or federal law).

F.      *Vesting of Assets in the Reorganized EFH/EFIH Debtors.*

Except as otherwise provided in the Plan, on the EFH Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each applicable Reorganized Debtor or the EFH Plan Administrator Board, as applicable, free and clear of all Liens, Claims, charges, Interests, or other encumbrances. Except as otherwise provided in the Plan, on and after the EFH Effective Date, each of the Reorganized EFH/EFIH Debtors may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

G.      *Cancelation of Existing Securities and Agreements.*

Except as otherwise provided in the Plan, on and after the EFH Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims or Interests, including Other Secured Claims, EFIH First Lien Note Claims, EFIH Second Lien Note Claims, EFIH Unsecured Note Claims, EFH Legacy Note Claims, EFH LBO Note Primary Claims, EFH LBO Note Guaranty Claims, EFH Unexchanged Note Claims, EFH Swap Claims, EFH Series N Note Claims, and 2017 EFIH First Lien DIP Claims, shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or a Holder to take further action with respect to any note(s) or security and the obligations of the Debtors or Reorganized Debtors, as applicable, thereunder or in any way related thereto shall be deemed

61

satisfied in full and discharged, and the Indenture Trustees, the Original EFIH First Lien DIP Agent, and the 2017 EFIH First Lien DIP Agent shall be released from all duties thereunder; *provided, however,* that (a) Interests in Debtors EFIH, LSGT Gas Company, LLC, EECI, Inc., EEC Holding, Inc., and LSGT SACROC, Inc. shall be Reinstated; and (b) notwithstanding Confirmation or Consummation, any such indenture or agreement that governs the rights of the Holder of a Claim shall, subject to the terms of the Plan and, if applicable, the EFIH Settlement Agreement, continue in effect solely for purposes of:   (1) allowing Holders of Allowed Claims to receive distributions under the Plan and, as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, under EFIH Secureds Settlement Approval Order; (2) allowing the Indenture Trustees or such other Disbursing Agent pursuant to the EFH Confirmation Order to make the distributions in accordance with the Plan (if any), as applicable, and, as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims under the EFIH Secureds Settlement Approval Order; (3) preserving any rights of the Original EFIH First Lien DIP Agent, the 2017 EFIH First Lien DIP Agent, or the Indenture Trustees to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the relevant Holders under, as applicable, the Plan, the Original EFIH First Lien DIP Credit Agreement, the 2017 EFIH First Lien DIP Credit Agreement, the EFH Note Indentures, the EFH Series N Note Indenture, the EFIH First Lien Note Indentures, the EFIH Second Lien Note Indenture, and the EFIH Unsecured Note Indentures, including any rights to priority of payment and/or to exercise charging liens, and, as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, under the EFIH Secureds Settlement Approval Order; (4) allowing the Indenture Trustees, the Original EFIH First Lien DIP Agent, and the 2017 EFIH First Lien DIP Agent to enforce any obligations owed to each of them under the Plan and take any actions contemplated of them by the Plan; and (5) allowing the Indenture Trustees, the Original EFIH First Lien DIP Agent, and the 2017 EFIH First Lien DIP Agent to appear in the Chapter 11 Cases or any proceeding in which they are or may become a party; *provided, further, however,* that, without prejudice to the right of any Holder of an Allowed Claim to the rights of such party to receive distributions under the Plan or the EFIH Settlement Agreement, the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the EFH Confirmation Order, or the Plan, or result in any expense or liability to the Debtors or Reorganized Debtors, as applicable.  Notwithstanding anything to the contrary in the foregoing provisions of this Article IV.G, (x) the cancelation and discharge of the EFIH First Lien Note Indentures, the EFIH Second Lien Note Indenture, and the EFIH Collateral Trust Agreement, and all other notes, instruments, certificates, agreements, mortgages, security documents, and other documents evidencing any Claims or rights under the EFIH First Lien Notes or the EFIH Second Lien Notes shall be limited solely to the Debtors and the Reorganized EFH/EFIH Debtors and shall not affect the rights of the EFIH First Lien Notes Trustee or Holders of the EFIH First Lien Note Claims vis-à-vis any other party, including the EFIH Second Lien Notes Trustee and Holders of the EFIH Second Lien Note Claims, or vice versa; and (y) for the avoidance of doubt, the EFIH First Lien Note Indentures, the EFIH Second Lien Note Indenture, the EFIH Collateral Trust Agreement, and all other notes, instruments, certificates, agreements, mortgages, security documents, and other documents evidencing any Claims or rights under the EFIH First Lien Notes or the EFIH Second Lien Notes shall remain in effect (and the EFIH First Lien Notes Trustee and the EFIH Second Lien Notes Trustee shall remain as trustee, and registrar) for the purposes set forth in (1)-(5) of this section, as applicable.

H.    *Corporate Action.*

On the EFH Effective Date, as applicable, all actions contemplated under the Plan with respect to the applicable Debtor or Reorganized Debtor, as applicable, shall be deemed authorized and approved in all respects, including:   (1) implementation of the Restructuring Transactions, including execution of the Transaction Agreements and consummation of the EFH Merger; (2) selection of the directors and officers for the Reorganized EFH/EFIH Debtors; (3) issuance and distribution of the Reorganized EFH Common Stock; and (4) all other actions contemplated under the Plan (including, for the avoidance of doubt, pursuant to the Tax Contingency Disclosure (whether to occur before, on, or after the EFH Effective Date).  All matters provided for herein involving the corporate structure of the Debtors or the Reorganized EFH/EFIH Debtors, as applicable, and any corporate action required by the Debtors or the Reorganized EFH/EFIH Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect as of the EFH Effective Date, without any requirement of further action by the Bankruptcy Court, the Debtors, the Reorganized EFH/EFIH Debtors, or their respective security holders, directors, managers, or officers.  On or before the EFH Effective Date, the appropriate officers of the Debtors or the Reorganized EFH/EFIH Debtors shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, securities, and instruments, and take such actions, contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the

Debtors or the Reorganized EFH/EFIH Debtors, as applicable, including the Reorganized EFH Common Stock and the Merger Agreement, as applicable, and any and all other agreements, documents, securities, and instruments relating to the foregoing, and all such documents shall be deemed ratified. The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under non-bankruptcy law.

I.    *New Organizational Documents.*

The New Organizational Documents for the Rollover Trust, New HoldCo, Intermediary HoldCo, and Reorganized EFH shall be consistent with the Tax Matters Agreement and in form and substance reasonably acceptable to EFH Corp. and the Plan Sponsor.

On or before the EFH Effective Date, as applicable, each of the Reorganized EFH/EFIH Debtors, the Rollover Trust, and the Non-Rollover Trust will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable laws of the respective state of incorporation or formation. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities. After the EFH Effective Date, the Reorganized EFH/EFIH Debtors, New HoldCo, Intermediary HoldCo, the Rollover Trust, and the Non-Rollover Trust may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective state of incorporation and its respective New Organizational Documents.

J.    *Directors and Officers of the Reorganized EFH/EFIH Debtors.*

As of the EFH Effective Date, the term of the current members of the board of directors of the applicable Debtors shall expire, and the initial boards of directors and officers of each of the Reorganized EFH/EFIH Debtors shall be appointed in accordance with the respective New Organizational Documents.

On and after the EFH Effective Date, the initial New Boards shall consist of eight (8) directors, four (4) of which shall be selected by the Parent and four (4) of which shall be selected by the Rollover Trustee and the Non-Rollover Trustee proportionally based on the number of New HoldCo Class A Units and New HoldCo Class B Units held by the Rollover Trust and the Non-Rollover Trust, respectively. If the Non-Rollover Trust is not formed on the EFH Effective Date, four (4) directors shall be selected by Parent and four (4) directors shall be selected by the Rollover Trustee. If the Rollover Trust and the Non-Rollover Trust are not formed on the EFH Effective Date, the eight (8) directors shall be selected by the Parent.

The Rollover Trustee and the Non-Rollover Trustee, pursuant to and in accordance with the Rollover Trust Agreement and the Non-Rollover Trust Agreement, respectively, will each be governed by a board of three (3) members, all of which shall be "independent" within the meaning of the rules of the New York Stock Exchange.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in the Plan Supplement the identity and affiliations of any person proposed to serve on the initial board of directors or be an officer of each of New HoldCo, Intermediary HoldCo, and the Reorganized EFH/EFIH Debtors. To the extent any such director or officer is an "insider" under the Bankruptcy Code, the Debtors also will disclose the nature of any compensation to be paid to such director or officer.

K.    *Section 1146 Exemption.*

Pursuant to, and to the fullest extent permitted by, section 1146 of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with, the Plan, including, but not limited to: (1) the Restructuring Transactions; (2) the Reorganized EFH Common Stock; (3) the New HoldCo Equity Interests, (4) the Rollover Trust Certificates; (5) the Non-Rollover Trust Certificates; (6) the assignment or surrender of any lease or sublease; and (7) the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, mortgage recording tax, or

other similar tax, and upon entry of the EFH Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

L.      *Director, Officer, Manager, and Employee Liability Insurance.*

On or before the EFH Effective Date, the EFH Debtors and EFIH Debtors, on behalf of the Reorganized EFH Debtors and Reorganized EFIH, shall obtain liability insurance policy coverage for the benefit of the EFH Debtors' and EFIH Debtors' respective current and former directors, managers, officers, and employees in accordance with the terms of the Merger Agreement, and shall thereafter maintain such insurance policy coverage to the extent provided by, and subject to the limitations of, the Merger Agreement. To the extent (a) Reorganized TCEH paid any costs or premiums associated with such liability insurance policy coverage and (b) the EFH Debtors, the EFIH Debtors, the Reorganized EFH Debtors, the Reorganized EFIH Debtors, or any successor-in-interest to any of the foregoing receive any rebates or other amounts from the applicable insurance policy providers in connection with such liability insurance policy coverage, the EFH Debtors, the EFIH Debtors, the Reorganized EFH Debtors, the Reorganized EFH Debtors, and such successor-in-interest, as applicable, shall reimburse such amounts to Reorganized TCEH pursuant to the EFH Confirmation Order.

M.      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, the Reorganized EFH/EFIH Debtors and the EFH Plan Administrator Board, as applicable, consistent with the Plan and the Merger Agreement, shall retain and may enforce all rights to commence and pursue any and all Causes of Action belonging to their Estates, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the EFH Plan Administrator Board's and Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the applicable Effective Date, other than: (i) the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII, which shall be deemed released and waived by the Debtors and Reorganized Debtors as of the EFH Effective Date; (ii) all Causes of Action that arise under sections 544, 547, 548, and 549 of the Bankruptcy Code and state fraudulent conveyance law; and (iii) the Causes of Action released by the Debtors pursuant to the Settlement Agreement.

The Reorganized EFH/EFIH Debtors and the EFH Plan Administrator Board, consistent with the Plan and the Merger Agreement, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized EFH/EFIH Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the EFH Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Reorganized EFH/EFIH Debtors, or the EFH Plan Administrator Board, as applicable, will not pursue any and all available Causes of Action against it.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled herein or in a Bankruptcy Court order, the Reorganized EFH/EFIH Debtors expressly reserve all Causes of Action, for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

The Reorganized EFH/EFIH Debtors and the EFH Plan Administrator Board, as applicable, consistent with the Plan and the Merger Agreement, reserve and shall retain the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized EFH/EFIH Debtors and the EFH Plan Administrator Board, as applicable, consistent with the Plan and the Merger Agreement. The EFH Plan Administrator Board, on behalf of the EFH and EFIH Debtors, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court, unless such Cause of Action was otherwise transferred to the Reorganized EFH/EFIH Debtors pursuant to the Merger Agreement.

64

*N.*      *Payment of Certain Fees.*

Without any further notice to or action, order, or approval of the Bankruptcy Court, the EFH Plan Administrator Board shall pay from the EFH/EFIH Cash Distribution Account on the EFH Effective Date any reasonable and documented unpaid fees and expenses incurred on or before the EFH Effective Date by professionals payable under the Merger Agreement.

1.   EFH Notes Trustee's Fees and Expenses.

The EFH Plan Administrator Board shall pay from the EFH Cash Account the EFH Notes Trustee's reasonable and documented fees and expenses (a) incurred between the Petition Date and February 17, 2017 that are Allowed pursuant to the EFH Notes Trustee Substantial Contribution Ruling, which is incorporated herein, and (b) incurred after February 17, 2017, to the extent such fees and expenses are payable as an Administrative Claim pursuant to any finding by the Bankruptcy Court that (i) the EFH Notes Trustee has made, in accordance with sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code, a substantial contribution in the Chapter 11 Cases, or (ii) such fees and expenses are otherwise payable as an Administrative Expense. In each case of subclause (a) and (b) above, the payment of such fees and expenses shall be subject to the review and approval procedures set forth below; *provided* that, for the avoidance of doubt, such fees and expenses, if paid pursuant to the provisions of this Section, shall not be included in the amount of any Allowed Claims under the EFH Notes Indentures:

- The EFH Notes Trustee shall submit to the Debtors a short-form invoice setting forth the amounts of fees and expenses payable to it or its professionals (each, a "Requesting Party") pursuant to this Article IV.N.1 and the period(s) during which such amounts were incurred. No later than the later of (a) five (5) Business Days after the Debtors' receipt of each such short-form invoice or (b) the EFH Effective Date, the Debtors shall pay to the applicable Requesting Party 80% of the requested fees and 100% of the requested expenses, which amounts shall be subject to disgorgement if and to the extent the Bankruptcy Court determines that such requested fees and expenses are not reasonable. Within 45 days of receipt of payment, the applicable Requesting Party shall submit full invoices and LEDES data (a "Fee Request") to the Debtors, the U.S. Trustee, and the Fee Committee in LEDES format (or, in the absence thereof, such other format as is mutually agreed among the applicable Requesting Party, the Debtors, the U.S. Trustee, and the Fee Committee).

- Following the Fee Committee's receipt of a Fee Request, within reasonable time periods, to be determined either by the Fee Committee and the relevant professionals or by the Bankruptcy Court:

  o  the Fee Committee shall send a confidential letter to the applicable Requesting Party regarding the Fee Committee's initial report and recommendation with respect to the applicable Fee Request, and the applicable Requesting Party shall have a reasonable opportunity to respond to the Fee Committee's initial report and recommendation;

  o  the Fee Committee shall file with the Bankruptcy Court a final report and recommendation ("Fee Committee Recommendation") with respect to such Fee Request and (b) the U.S. Trustee shall file with the Bankruptcy Court any objection or comments it may have with respect to such Fee Request ("U.S. Trustee Objection");

  o  the applicable Requesting Party may file with the Bankruptcy Court a response ("Fee Response") to such Fee Committee Recommendation or U.S. Trustee Objection; and

  o  the Bankruptcy Court shall consider each Fee Request at the next omnibus hearing or at a scheduled Fee Committee hearing on Retained Professional fee applications.

- No later than the later of (a) the EFH Effective Date and (b) 10 days following the Bankruptcy Court's ruling with respect to a Fee Request, the EFH Plan Administrator Board shall pay any unpaid amounts with respect to such Fee Request as ordered by the Bankruptcy Court, or the Requesting Party shall

RLF1 18943843v.1

disgorge to the applicable Reorganized Debtor such amounts ordered by the Bankruptcy Court, as applicable.

- For the avoidance of doubt, the Requesting Parties and the Fee Requests shall not be required to comply with (a) the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or other orders in these Chapter 11 Cases with respect to fee applications, including the Stipulation and Order Appointing a Fee Committee [D.I. 1896] or (b) Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases, 78 Fed. Reg. No 116, page 36248 (June 17, 2013).

For the avoidance of doubt, nothing herein shall prejudice the EFH Notes Trustee's exercise of its charging lien under the EFH Notes Indentures for fees and expenses provided for under the EFH Notes Indenture for any amounts due but not paid.

    2.   EFIH Unsecured Notes Trustee's Charging Lien.

For the avoidance of doubt, and as set forth in Article III.B.21, Class B6 Claims—General Unsecured Claims Against the EFIH Debtors—are Allowed in an amount equal to the Allowed EFIH General Unsecured Claim; *provided, however,* that (a) nothing herein shall prejudice the EFIH Unsecured Notes Trustee's exercise of its charging lien under the EFIH Unsecured Notes Indentures; and (b) solely in the event there are sufficient amounts in the EFH/EFIH Cash Distribution Account to provide a 100% recovery to Holders of Allowed Class B5 Claims and Holders of Allowed Class B6 Claims (on account of the Allowed EFIH General Unsecured Claim), after first satisfying (a) the Allowed EFIH First Lien Claims and Allowed EFIH Second Lien Claims in full, in Cash; and (b) other Administrative Claims of the EFIH Debtors (including the EFH Professional Fee Account); then, in addition to the Allowed EFIH General Unsecured Claim, the EFIH Unsecured Notes Trustee shall be entitled to seek payment of all or a portion of the reasonable, documented, and unpaid EFIH Unsecured Notes Trustee Fees and Expenses, which fees and expenses application shall be subject to the review and approval procedures set forth in the Plan Supplement.

*O.*    *Treatment of Certain Claims of the PBGC and Pension Plans.*

Nothing in the Chapter 11 Cases, the EFH Disclosure Statement, the Plan, the EFH Confirmation Order, or any other document filed in the Chapter 11 Cases shall be construed to discharge, release, limit, or relieve any individual from any claim by the PBGC or the Pension Plans for breach of any fiduciary duty under ERISA, including prohibited transactions, with respect to the Pension Plans, subject to any and all applicable rights and defenses of such parties, which are expressly preserved. The PBGC and the Pension Plans shall not be enjoined or precluded from enforcing such fiduciary duty or related liability by any of the provisions of the EFH Disclosure Statement, Plan, Confirmation Order, Bankruptcy Code, or other document filed in the Chapter 11 Cases. For the avoidance of doubt, the Reorganized EFH/EFIH Debtors shall not be released from any liability or obligation under ERISA, the Internal Revenue Code, and any other applicable law relating to or arising from the Pension Plans.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A.*    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

As of the EFH Effective Date, except as otherwise provided herein or in the EFH Confirmation Order, all Executory Contracts or Unexpired Leases of the EFH Debtors or the EFIH Debtors including the Rejected Executory Contracts or Unexpired Leases, not previously assumed or rejected pursuant to an order of the Bankruptcy Court, including the TCEH Confirmation Order or the EFH Confirmation Order, are hereby rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that are: (1) identified on the Assumed Executory Contract and Unexpired Lease List; (2) the subject of a motion to assume Executory Contracts or Unexpired Leases that is pending on the EFH Confirmation Date; or (3) subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to

which the requested effective date of such rejection is after the EFH Effective Date; *provided* that each of (1), (2) and (3) must be in form and substance acceptable to the Plan Sponsor with respect to any pleading filed after the date the Merger Agreement is executed. Entry of the EFH Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections and the assignments and/or assumptions of the Executory Contracts or Unexpired Leases listed on the Assumed Executory Contract and Unexpired Lease List pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume Executory Contracts or Unexpired Leases of the EFH Debtors or EFIH Debtors pending on the EFH Effective Date shall be subject to approval by the Bankruptcy Court on or after the EFH Effective Date by a Final Order. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A or by any order of the Bankruptcy Court, which has not been assigned to a third party before the EFH Confirmation Date, shall revest in and be fully enforceable by Reorganized EFH or Reorganized EFIH, as applicable, or their successors in accordance with its terms, except as such terms are modified by the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. The Plan Sponsor, Reorganized EFH, and Reorganized EFIH, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contract and Unexpired Lease List and the schedules of Executory Contracts and Unexpired Leases with respect to EFH, Reorganized EFH, EFIH, and Reorganized EFIH at any time through and including 45 days after the EFH Effective Date, without incurrence of any penalty or changing the priority or security of any Claim as a result of such treatment change. For the avoidance of doubt, and notwithstanding anything herein to the contrary, the Tax Matters Agreement, the Transition Services Agreement, and the Separation Agreement, to the extent in the form attached to the Merger Agreement or as amended or modified in accordance with their respective terms and with the consent of the Plan Sponsor, shall be Assumed Executory Contracts or Unexpired Leases.

B.     *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or Confirmation Order, if any, must be Filed and actually received by the Claims and Noticing Agent before the deadline provided in the notice of rejection, which the Debtors will send to the applicable third parties at least 14 days before the applicable Confirmation Hearing. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized EFH/EFIH Debtors, the Estates, or their property without the need for any objection by the Reorganized EFH/EFIH Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable Debtor and shall be treated in accordance with the Plan, unless a different security or priority is otherwise asserted in such Proof of Claim and Allowed in accordance with Article VII of the Plan.

C.     *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the EFH Effective Date (and, with respect to Assumed Executory Contracts or Unexpired Leases of the EFH Debtors or EFIH Debtors, by the EFH Debtors or the EFIH Debtors, as applicable, and, for the avoidance of doubt, not the Reorganized EFH Debtors or the Reorganized EFIH Debtors), subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized EFH/EFIH Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption. At least 14 days before the applicable Confirmation Hearing, the Debtors will provide for notices of proposed assumption and proposed cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a counterparty to an Executory Contract or Unexpired Lease

to a proposed assumption or related cure amount must be Filed, served, and actually received by the Debtors before the objection deadline provided in the notice of proposed assumption and cure amount and in no event later than seven (7) days prior to the EFH Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount is deemed to have consented to such assumption or proposed cure amount.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the EFH Effective Date of assumption. **Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

D.    *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed by the Executory Contract or Unexpired Lease counterparty or counterparties to the Debtors or the Reorganized EFH/EFIH Debtors, as applicable, under such Executory Contracts or Unexpired Leases.

E.    *Indemnification Obligations.*

Notwithstanding anything in the Plan to the contrary, from and after the EFH Effective Date, each Indemnification Obligation of any EFH Debtor or EFIH Debtor shall be treated in accordance with Section 6.8 of the Merger Agreement.

Notwithstanding the foregoing, nothing shall impair the ability of Reorganized EFH or Reorganized EFIH, as applicable, to modify indemnification obligations (whether in the bylaws, certificates or incorporate or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for acts or omissions arising after the EFH Effective Date.

F.    *Insurance Policies.*

Each of the EFH/EFIH Debtors' Insurance Policies is treated as an Executory Contract under the Plan. Notwithstanding Article V.A of the Plan, except to the extent that the Plan Sponsor elects, in its sole discretion, to list an Insurance Policy (or Insurance Policies) on the Rejected Executory Contract and Unexpired Lease List, as of the EFH Effective Date, the EFH Debtors and EFIH Debtors, as applicable, shall hereby have assumed all Insurance Policies and any agreements, documents, and instruments relating to coverage of all insured Claims against the EFH Debtors or EFIH Debtors, as applicable, including the Split Policies (as defined in the Separation Agreement), and such Insurance Policies shall not be impaired in any way by the Plan or the EFH Confirmation Order, but rather will remain valid and enforceable against the Reorganized EFH Debtors or Reorganized EFIH Debtors, as applicable, in accordance with their terms.

G.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, or restatements, thereto or thereof, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter

68

the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### H.     Reservation of Rights.

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List or the Assumed Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized EFH/EFIH Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized EFH/EFIH Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

### I.     Nonoccurrence of Effective Date.

In the event that the EFH Effective Date does not occur with respect to a Debtor, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases with respect to such Debtor pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

### J.     Contracts and Leases Entered Into After the Petition Date.

Contracts and leases entered into after the Petition Date by any Debtor, including any Assumed Executory Contracts or Unexpired Leases, will be performed by the applicable Debtor or the applicable Reorganized Debtor liable thereunder in the ordinary course of their business. Accordingly, any such contracts and leases (including any Assumed Executory Contracts or Unexpired Leases) that have not been rejected as of the date of the EFH Confirmation Date shall survive and remain unaffected by entry of the EFH Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.     Timing and Calculation of Amounts to Be Distributed.

Unless otherwise provided in the Plan, on the EFH Effective Date (or if a Claim or Interest is not an Allowed Claim or Allowed Interest on the EFH Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Allowed Interests in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise provided in the Plan (including with respect to the Allowed EFIH First Lien Claims and Allowed EFIH Second Lien Claims) Holders of Claims and Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the EFH Effective Date.

Holders of Allowed EFIH First Lien Claims, and Allowed EFIH Second Lien Claims, as applicable, shall receive distribution on account of such Claims on the EFH Effective Date or as soon as reasonably practicable after the EFH Effective Date, on the terms set forth in the EFIH Secureds Settlement Approval Order. Holders of Allowed 2017 EFIH First Lien DIP Claims shall receive distribution on account of such Claims on the EFH Effective Date in accordance with Article II.B of the Plan.

After (a) payment in full, in Cash, is made to the EFIH First Lien Notes Trustee and the EFIH Second Lien Notes Trustee pursuant to the terms of the EFIH Secureds Settlement Approval Order and (b) any additional funds

are reserved on account of Claims against the EFIH Debtors that remain contingent as of the EFH Effective Date, as set forth in the EFH/EFIH Cash Distribution Account Disclosure to be included in the Plan Supplement, then if funds are available, Holders of Allowed Class B5 and Allowed Class B6 Claims shall receive a distribution on the EFH Effective Date from the EFH/EFIH Cash Distribution Account (excluding the EFH Cash Account). The actual size of the distribution to be issued on the EFH Effective Date or such later date, as applicable, cannot be determined with finality at this time and is dependent on, among other factors, (a) the payment of all Professional Fee Claims from the EFIH Professional Fee Escrow Account and the refund of amounts remaining in such account, if any, to the EFH/EFIH Cash Distribution Account, (b) the payment of the reasonable and documented fees and expenses allowed under the EFIH Unsecured Notes Indenture (which fees and expenses, for the avoidance of doubt, shall not be included in the amount of any Allowed Claims under the EFIH Unsecured Notes Indenture), and (c) ensuring sufficient reserves are in place to fund (1) General Administrative Claims Against the EFIH Debtors and Priority Tax Claims Against the EFIH Debtors, and (2) the costs of winding down the EFIH Debtors.

Except as set forth in this Article VI.A of the Plan, no distributions shall otherwise be made to Holders of Claims against the EFH Debtors or the EFIH Debtors, until the EFH Debtors and the EFIH Debtors have made determinations with respect to factors (a)-(c) in the above paragraph of this Article VI.A.

Any Makewhole Claim against an EFH Debtor or an EFIH Debtor that is not based on or derived from the EFIH First Lien Notes or EFIH Second Lien Notes that becomes Allowed, whether before, on, or after the EFH Effective Date, shall receive treatment set forth in its respective class set forth in Article III.B of the Plan.

Notwithstanding anything to the contrary in the Plan, the Merger Agreement, related agreements, or otherwise (including any provision anywhere that also include the words "notwithstanding anything to the contrary" or any similar reference) none of (i) the Plan Sponsor; (ii) EFH Merger Sub; (iii) the EFH Debtors; (iv) the Reorganized EFH Debtors; (v) EFIH; (vi) Reorganized EFIH; (vii) Oncor Holdings; (viii) Oncor Electric; (ix) any other entity acquired, directly or indirectly, by the Plan Sponsor pursuant to the terms of, or as a result of, the Plan, the Merger Agreement, or any related agreement, or (x) with respect to each of the foregoing Entities in clauses (i) through (ix), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, shall have or incur any liability whatsoever in connection with or as a result of any Makewhole Claim being Allowed. Nothing in this paragraph impairs, modifies, or otherwise affects the ability of Holders of Allowed Claims to receive distributions pursuant to the Plan and the EFH Confirmation Order on account of such Allowed Claims.

Under no circumstances can the EFIH First Lien Notes Trustee, the EFIH Second Lien Notes Trustee, the EFIH Unsecured Notes Trustee, or any Holder of a Claim against the EFIH Debtors access the EFH Cash Account.

B.    *Rights and Powers of EFH Plan Administrator Board.*

The EFH Plan Administrator Board shall be authorized to direct the Disbursing Agent to make distributions from the EFH/EFIH Cash Distribution Account to Holders of Allowed Claims and Allowed Interests against the EFH Debtors and the EFIH Debtors on the EFH Effective Date, or as soon as reasonably practicable thereafter, in accordance with the Plan and to exercise such other powers as may be vested in the EFH Plan Administrator Board by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the EFH Plan Administrator Board to be necessary and proper to implement the provisions of the Plan. The EFH Plan Administrator Board shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

The EFH Plan Administrator Board may, but is not required to, establish governance and organizational documents before or after the EFH Effective Date; *provided* that to the extent such governance and organizational documents are established, they will be filed with the Bankruptcy Court. Any Holder of a Claim or Interest seeking to compel the EFH Plan Administrator Board to make distributions from the EFH/EFIH Cash Distribution Account shall seek relief from the Bankruptcy Court in accordance with the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the District of Delaware, and any other applicable rules or procedures. The EFH Plan Administrator Board or its professionals on behalf of the EFH Plan Administrator Board shall keep an accounting of distributions made from, and funds contributed to, the EFH/EFIH Cash Distribution Account that sets forth whether such distributions or contributions, as applicable, were made for the benefit of the EFH Debtors or their creditors, on the one hand, or the EFIH Debtors, on the other hand. Such accounting will be shared with the professionals for the Holders of Claims and Interests Against the EFH Debtors and EFIH Debtors, including the EFIH Unsecured Notes Trustee and the advisors to the EFIH Unsecured Notes Trustee, on a professionals' eyes only basis (except as otherwise ordered by the Bankruptcy Court).

C.     *Disbursing Agent.*

All distributions under the Plan shall be made to Holders of Allowed Claims and Allowed Interests by the Disbursing Agent (including at the direction of the EFH Plan Administrator Board, as applicable) on the applicable Effective Date, or as soon as reasonably practicable thereafter, in accordance with the Plan. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

D.     *Rights and Powers of Disbursing Agent.*

    1.     Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby, including making distributions from the EFH/EFIH Cash Distribution Account at the direction of the EFH Plan Administrator Board; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

    2.     Expenses Incurred On or After the EFH Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent in performing its duties under the Plan on or after the EFH Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash from the EFH/EFIH Cash Distribution Account. For the avoidance of doubt, only the reasonable fees and expenses incurred by the Disbursing Agent for distributions related to Claims against the EFH Debtors and EFIH Debtors (rather than distributions related to Claims against the TCEH Debtors and the EFH Shared Services Debtors) shall be compensable from the EFH/EFIH Cash Distribution Account.

E.     *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

    1.     Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

    2.     Delivery of Distributions in General.

Except as otherwise provided herein, the Reorganized EFH/EFIH Debtors shall make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided, however*, that the Distribution Record Date shall not apply to publicly-traded Securities. The manner of such distributions shall be determined at the discretion of the Reorganized EFH/EFIH Debtors, and the address for each Holder of an Allowed

RLF1 18943843v.1

Claim or Allowed Interest shall be deemed to be the address set forth in any Proof of Claim or Interest Filed by that Holder.

     3.    Delivery of Distributions on DIP Claims.

All distributions on account of 2017 EFIH First Lien DIP Claims shall be made to the 2017 EFIH First Lien DIP Agent, who shall be deemed to be the Holder of the 2017 EFIH First Lien DIP Claims, as applicable, for purposes of distributions to be made hereunder. As soon as practicable following compliance with the requirements set forth in this Article VI, the 2017 EFIH First Lien DIP Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of the 2017 EFIH First Lien DIP Claims in accordance with the terms of the 2017 EFIH First Lien DIP Facility, as applicable, subject to any modifications to such distributions in accordance with the terms of the Plan; *provided, however,* that the 2017 EFIH First Lien DIP Agent shall retain all rights as administrative agent and collateral agent under the 2017 EFIH First Lien DIP Facility in connection with the delivery of distributions to the 2017 EFIH First Lien DIP Lenders. The 2017 EFIH First Lien DIP Agent shall not have any liability to any person with respect to distributions made or directed to be made by such 2017 EFIH First Lien DIP Agent.

     4.    Rules Governing Fractional Distributions.

Unless otherwise required by the Tax Contingency Disclosure, if any, whenever any distribution of fractional shares of New Common Stock would otherwise be required pursuant to the Plan, the actual distribution shall reflect a rounding of such fraction to the nearest share (up or down), with half shares or less being rounded down. Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

     5.    Minimum Distribution.

No Cash payment of less than $50.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

     6.    Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided, however,* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the applicable Distribution Date. After such date, all unclaimed property or interests in property shall revert to the applicable Reorganized Debtor(s) automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the claim of any Holder to such property shall be fully discharged, released, and forever barred.

*F.*    *Manner of Payment.*

Unless as otherwise set forth herein, all distributions of Cash, New HoldCo Class A Units, and (pursuant to the actual or deemed transactions described in Article IV.B.4 of this Plan) Rollover Trust Certificates to the Holders of Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the Reorganized EFH/EFIH Debtors, the Plan Sponsor, and EFH Merger Sub. At the option of the Disbursing Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements. All Cash distributions to be made hereunder to the 2017 EFIH First Lien DIP Agent on account of the 2017 EFIH First Lien DIP Claims shall be made by wire transfer.

G.      SEC Registration/Exemption.

Each of the Reorganized EFH Common Stock, New HoldCo Equity Interests, Rollover Trust Certificates, and Non-Rollover Trust Certificates is or may be a "security," as defined in Section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws.

Pursuant to section 1145 of the Bankruptcy Code, the issuance of the New HoldCo Class A Units and (pursuant to the actual or deemed transactions described in Article IV.B.4 of this Plan) the Rollover Trust Certificates is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration before the offering, issuance, distribution, or sale of such securities. Each of the New HoldCo Class A Units and (pursuant to the actual or deemed transactions described in Article IV.B.4 of this Plan) the Rollover Trust Certificates issued under the Plan (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and (b) is freely tradable and transferable by any initial recipient thereof that (i) at the time of transfer, is not an "affiliate" of Reorganized EFH, Reorganized EFIH, the Plan Sponsor, or EFH Merger Sub, as the case may be, as defined in Rule 144(a)(1) under the Securities Act and has not been such an "affiliate" within 90 days of such transfer, and (ii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

The Reorganized EFH Common Stock, any securities issued to the Non-Rollover Trust Investors (including the New HoldCo Class B Units and the Non-Rollover Trust Certificates), and the New HoldCo Class C Units will be issued without registration in reliance upon the exemption set forth in Section 4(a)(2) of the Securities Act and will be "restricted securities," as that term is defined in Rule 144 under the Securities Act.

If the EFH Unsecured Creditor Recovery Pool or the EFIH Unsecured Creditor Recovery Pool includes New HoldCo Class A Units (as will be set forth in the Tax Contingency Disclosure, if applicable), such New HoldCo Class A Units (and, pursuant to the actual or deemed transactions described in Article IV.B.4 of this Plan, the Rollover Trust Certificates) may be issued without registration under the Securities Act in reliance upon the exemption set forth in section 1145(a)(1) of the Bankruptcy Code for the offer or sale under a chapter 11 plan of a security of a successor to the debtor if such securities are offered or sold in exchange for a claim against, or an interest in, such debtor. The EFH Debtors and EFIH Debtors, with the support of the Plan Sponsor, will seek to obtain a ruling from the Bankruptcy Court in the EFH Confirmation Order that the section 1145(a)(1) exemption applies to such New HoldCo Class A Units and Rollover Trust Certificates issued under the Plan.

The DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether any New HoldCo Class A Unit and Rollover Trust Certificate is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

Notwithstanding anything to the contrary in the Plan, no entity (including, for the avoidance of doubt, the DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New HoldCo Class A Units and the Rollover Trust Certificates are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

H.      Compliance with Tax Requirements.

In connection with the Plan, the applicable Reorganized Debtor(s) shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit with respect to distributions pursuant to the Plan.  Notwithstanding any provision herein to the contrary, the Reorganized EFH/EFIH Debtors and the Disbursing Agent, as applicable, shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, and establishing any other mechanisms they believe are reasonable and appropriate to comply with such requirements.  The Reorganized EFH/EFIH Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

RLF1 18943843v.1

I.      *No Postpetition or Default Interest on Claims.*

      Unless otherwise specifically provided for in the Plan or the EFH Confirmation Order, and notwithstanding any documents that govern the Debtors' prepetition funded indebtedness to the contrary, (1) postpetition and/or default interest shall not accrue or be paid on any Claims and (2) no Holder of a Claim shall be entitled to: (a) interest accruing on or after the Petition Date on any such Claim; or (b) interest at the contract default rate, as applicable.

J.      *Setoffs and Recoupment.*

      The Debtors and Reorganized Debtors, as applicable, may, but shall not be required to, setoff against or recoup any payments or distributions to be made pursuant to the Plan in respect of any Claims of any nature whatsoever that the Debtors or the Reorganized EFH/EFIH Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized EFH/EFIH Debtors of any such claim it may have against the Holder of such Claim.

K.      *No Double Payment of Claims.*

      To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim against more than one Debtor may recover distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims. No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

L.      *Claims Paid or Payable by Third Parties.*

    1.    Claims Paid by Third Parties.

      The Debtors or the Reorganized EFH/EFIH Debtors, as applicable, shall reduce a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or a Reorganized Debtor (other than the Disbursing Agent). Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day period specified above until the amount is repaid.

    2.    Claims Payable by Third Parties.

      No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

    3.    Applicability of Insurance Policies.

      Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Except as otherwise expressly provided in the

Plan, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein (a) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any insurer.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Allowance of Claims.*

Except as otherwise set forth in the Plan, after the EFH Effective Date, each of the Reorganized EFH/EFIH Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim immediately before the EFH Effective Date. This Article VII of the Plan shall not apply to the 2017 EFIH First Lien DIP Claims, which Claims shall be Allowed in full and shall not be subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any person or entity.

Except as specifically provided as Allowed Claims pursuant to Article III.B of the Plan or otherwise objected to by the Debtors in the Chapter 11 Cases, the Plan shall serve as the Debtors' objection to all other EFH LBO Note Claims, and EFH Legacy Note Claims under the respective indentures. If the Bankruptcy Court sustains the Debtors' objection to these Claims, the EFH Confirmation Order shall disallow such Claims. The Holders of such Claims may respond to the Debtors' objection to such Claims by filing an objection to the Plan.

B.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the EFH Effective Date, the applicable Reorganized Debtor(s) or the EFH Plan Administrator Board, as applicable, shall have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

Except with respect to Claims and Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII, if one or more Entities have sought and obtained standing to prosecute a Cause of Action on behalf of one or more of the Debtors' Estates and such Entities are prosecuting such Causes of Actions as of the EFH Effective Date, then such Entities will have the sole authority, solely with respect to such Causes of Action, to File, withdraw, litigate to judgment, settle, compromise, or take any other actions in respect of such Causes of Action.

C.      *Estimation of Claims.*

Before or after the EFH Effective Date, the Debtors or the Reorganized EFH/EFIH Debtors, as applicable, with the consent of the Plan Sponsor with respect to any Disputed Claim against any EFH Debtor or any EFIH Debtor, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes

75

under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

D.     *Adjustment to Claims without Objection.*

Any Claim that has been paid or satisfied (including, for the avoidance of doubt, by being Reinstated) or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized EFH/EFIH Debtors without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.     *Time to File Objections to Claims or Interests.*

Any objections to Claims or Interests shall be Filed on or before the Claims Objection Deadline.

F.     *Disallowance of Claims.*

Any Claims held by Entities from which the Bankruptcy Court has determined that property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that the Bankruptcy Court has determined is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and the full amount of such obligation to the Debtors has been paid or turned over in full. All Proofs of Claim Filed on account of an Indemnification Obligation shall be deemed satisfied and expunged from the Claims Register as of the EFH Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court. All Proofs of Claim Filed on account of an employee benefit shall be deemed satisfied and expunged from the Claims Register as of the EFH Effective Date to the extent the Reorganized Entities elect to honor such employee benefit, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the EFH Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

G.     *Amendments to Proofs of Claim.*

On or after the EFH Effective Date, a Proof of Claim or Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized EFH/EFIH Debtors, and any such new or amended Proof of Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action.

H.     *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the EFH Confirmation Date:  (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the EFH Confirmation Date determining such Claim as no longer contingent.

I.        *No Distributions Pending Allowance.*

Except as otherwise set forth herein, if an objection to a Claim or portion thereof is Filed as set forth in Article VII.A and Article VII.B of the Plan, no payment or distribution provided under the Plan shall be made on account of such Disputed Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

J.        *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  Except as otherwise set forth in the Plan, as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the EFH Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under such order or judgment of the Bankruptcy Court.

# ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.        *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the EFH Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the EFH Effective Date by the Reorganized EFH/EFIH Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date and any Administrative Claims, including without limitation any claims by NextEra Energy arising directly or indirectly from its post-petition agreements with the Debtors, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the EFH Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the EFH Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the EFH Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the EFH Effective Date.  The EFH Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the EFH Effective Date occurring.

B.        **Release of Liens.**

Except as otherwise specifically provided in the Plan and except for (a) any Other Secured Claim Against the EFH Debtors that the EFH Debtors elect to Reinstate in accordance with Article III.B.1 (subject to the consent of the Plan Sponsor) and, with respect to any Allowed Other Secured Claim Against the EFH Debtors asserted by the Taxing Units that the EFH Debtors shall Reinstate on the EFH Effective Date until such Allowed Other Secured Claim Against the EFH Debtors is satisfied in the full Allowed amount, and (b) any Other Secured Claim Against the EFIH Debtors that the EFIH Debtors elect to Reinstate in accordance with Article III.B.16 (subject to the consent of the Plan Sponsor), on the EFH Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall

be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized EFH/EFIH Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors. Notwithstanding anything to the contrary in the Plan, the Liens on the collateral securing the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, as applicable, will be released on the EFH Effective Date following payment in full in Cash of the Allowed EFIH First Lien Claims and Allowed EFIH Second Lien Claims accrued as of such payment date and the funding of the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve and the EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve (each as applicable and as defined in the EFIH Secureds Settlement Approval Order). For the avoidance of doubt, solely for purposes of determining whether any such Claims are Secured Claims entitled to treatment as Class B3 or Class B4 Claims (rather than Unsecured Claims entitled to treatment as Class B5 Claims and Class B6 Claims), the secured status of such Claims shall be determined as if such Claims had not been released on the EFH Effective Date and remained in effect to the same extent they did immediately before the EFH Effective Date.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan (or any agent for such Holder) has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as reasonably practicable on or after the EFH Effective Date, such Holder (or the agent for such Holder) shall take any and all steps reasonably requested by the Debtors, the Reorganized EFH/EFIH Debtors, or any administrative agent under the Exit Facility Documents that are reasonably necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized EFH/EFIH Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

C.      *Releases by the Debtors.*

In addition to any release provided in the Settlement Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the EFH Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized EFH/EFIH Debtors, and their Estates from any and all Claims and Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, or the Disinterested Directors Settlement, as well as all other Claims and Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that the Debtors, the Reorganized EFH/EFIH Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in-or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the Master Separation Agreement dated December 12, 2001, the TCEH Credit Agreement, the TCEH First Lien Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), the TCEH First Lien Intercreditor Agreement, the Liability Management Program, the Tax Sharing Agreements, the 2007 Acquisition, the Management Agreement, the 2009 amendment to the TCEH Credit Agreement, the 2011 Amend and Extend Transactions, the 2005 Oncor Transfer, the 2013 Revolver Extension, the Luminant Makewhole Settlement, the Tax and Interest Makewhole Agreements, the TCEH Intercompany Notes, the Shared Services, any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or Filing of the Terminated Restructuring Support Agreement, the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFH/EFIH Committee Settlement, the EFIH Settlement Agreement, the EFIH First Lien Principal Settlement, the Original Confirmed Plan, the NextEra Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the EFH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFH/EFIH Committee Settlement, the EFIH Settlement Agreement, the PIK Settlement (whether

78

terminated pursuant to its terms or otherwise) and any direction taken by the EFIH Unsecured Notes Trustee in connection therewith (prior to the date of termination), the Terminated Restructuring Support Agreement, the EFH Disclosure Statement, the TCEH Disclosure Statement, the Plan, the Transaction Agreements, the DIP Facilities, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the EFH Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-EFH Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any of the EFH/EFIH Debtors' rights arising under any Assumed Executory Contracts and Leases assumed by Reorganized EFH or Reorganized EFIH on the EFH Effective Date (or pursuant to a separate Bankruptcy Court order). Notwithstanding anything to the contrary in the foregoing, and for the avoidance of doubt, the TCEH Settlement Claim shall be treated, released, and discharged on the EFH Effective Date. Notwithstanding anything to the contrary in the foregoing, the claims and Causes of Action set forth in Section 6.12 of the parent disclosure letter delivered in connection with the NEE Merger Agreement shall not be released; *provided, however*, that such Claims and Causes of Action shall be subject to treatment pursuant to the Plan and shall be discharged as set forth in Article VIII.A hereof. For the avoidance of doubt, the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, and Reorganized EFIH Debtors shall provide the release set forth in this Article VIII.C as of the EFH Effective Date; *provided, however*, that the releases provided by the EFH Debtors and Reorganized EFH Debtors on the one hand, to the EFIH Debtors and Reorganized EFIH Debtors on the other hand, (or vice versa) shall be subject to the satisfaction of any order that becomes a Final Order prior to the EFH Effective Date regarding allocations of (a) any Cash amounts owed by the EFH Debtors to the EFIH Debtors or (b) any Cash amounts owed by the EFIH Debtors to the EFH Debtors.

D.    *Releases by Holders of Claims and Interests.*

Except as otherwise provided in the Plan, as of the EFH Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized EFH/EFIH Debtor, and Released Party from any and all Claims and Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, or the Disinterested Directors Settlement, as well as all other Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the Master Separation Agreement dated December 12, 2001, the TCEH Credit Agreement, the TCEH First Lien Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), the TCEH First Lien Intercreditor Agreement, the Liability Management Program, the Tax Sharing Agreements, the 2007 Acquisition, the Management Agreement, the 2009 amendment to the TCEH Credit Agreement, the 2011 Amend and Extend Transactions, the 2005 Oncor Transfer, the 2013 Revolver Extension, the Luminant Makewhole Settlement, the Tax and Interest Makewhole Agreements, the TCEH Intercompany Notes, the Shared Services, any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or Filing of the Terminated Restructuring Support Agreement, the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFH/EFIH Committee Settlement, the EFIH Settlement Agreement, the EFIH First Lien Principal Settlement, the Original Confirmed Plan, the NextEra Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the EFH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFIH

Settlement Agreement, the EFH/EFIH Committee Settlement, the PIK Settlement (whether terminated pursuant to its terms or otherwise) and any direction taken by the EFIH Unsecured Notes Trustee in connection therewith (prior to termination), the Terminated Restructuring Support Agreement, the EFH Disclosure Statement, the TCEH Disclosure Statement, the Plan, the Transaction Agreements, the DIP Facilities, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the EFH Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, (ii) any post-EFH Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (iii) claims or Causes of Action asserted by any Holder of Allowed Class C3 Claims under the TCEH Plan against one or more Holders of Allowed Class C3 Claims under the TCEH Plan (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute; and (iv) the claims and Causes of Action set forth in Section 6.12 of the parent disclosure letter delivered in connection with the NEE Merger Agreement; *provided, however,* that such claims and Causes of Action set forth in Section 6.12 of such parent disclosure letter delivered in connection with the NEE Merger Agreement shall be subject to treatment pursuant to the Plan and shall be discharged as set forth in Article VIII.A hereof. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any claims or Causes of Action against one or more of NextEra and its current and former subsidiaries (the "NEE Released Parties") relating to the pursuit of approval of the transactions contemplated in the Original Confirmed Plan (including, for the avoidance of doubt, claims or Causes of Action regarding the effect of the filing of Docket No. 7028 on approval of the transactions contemplated in the Original Confirmed Plan) or claims or Causes of Action that may be brought by one or more of the NEE Released Parties against any party who brings a claim or Cause of Action against the NEE Released Parties relating to the pursuit of approval of the transactions contemplated in the Original Confirmed Plan; *provided, however,* for the avoidance of doubt, that any releases set forth above solely to the extent applicable pursuant to the terms set forth above, shall apply to the NEE Released Parties' current and former directors, managers, officers, individual equity holders (regardless of whether such interests are held directly or indirectly), attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such. Notwithstanding anything to the contrary in the foregoing, and for the avoidance of doubt, the TCEH Settlement Claim shall be treated, released, and discharged on the EFH Effective Date. For the avoidance of doubt, (i) the Releasing Parties provided the release set forth in this Article VIII.D for all Claims and Causes of Action that relate to the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties Company, as of the TCEH Effective Date; and (ii) the Releasing Parties shall provide the release set forth in this Article VIII.D for all Claims and Causes of Action that relate to the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, or Reorganized EFIH Debtors as of the EFH Effective Date; *provided* that any and all Intercompany Claims (other than the TCEH Settlement Claim) held by or held against the TCEH Debtors, Reorganized TCEH Debtors, EFH Shared Services Debtors, Reorganized EFH Shared Services Debtors, or any non-Debtor Affiliate to be transferred to the Reorganized TCEH Debtors, including EFH Properties Company, were released as of the TCEH Effective Date.

E.    *Exculpation.*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Terminated

Restructuring Support Agreement and related prepetition transactions, the EFH Disclosure Statement, the TCEH Disclosure Statement, the Plan, the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFIH Settlement Agreement, the EFH/EFIH Committee Settlement, the Original Confirmed Plan, the NextEra Plan, the Transaction Agreements, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the EFH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the EFH Disclosure Statement, the TCEH Disclosure Statement, the Plan, the Original Confirmed Plan, the NextEra Plan, the Plan Support Agreement, the NEE Plan Support Agreement, the EFIH Unsecured Creditor Plan Support Agreement, the Sempra Plan Support Agreement, the EFIH Settlement Agreement, the EFH/EFIH Committee Settlement, the Transaction Agreements, or the DIP Facilities, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the Transaction Agreements, or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. For the avoidance of doubt, notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any (i) claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, or (ii claims or Causes of Action asserted by any Holder of Allowed Class C3 Claims under the TCEH Plan against one or more Holders of Allowed Class C3 Claims under the TCEH Plan (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute. For the avoidance of doubt, the Exculpated Parties that include or are related to the EFH Debtors, Reorganized EFH Debtors, EFIH Debtors, and Reorganized EFIH Debtors shall receive the exculpation set forth in this Article VIII.E as of the EFH Effective Date.

*F.*     *Injunction.*

In addition to any injunction provided in the Settlement Order, except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the EFH Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.C or Article VIII.D of the Plan, shall be discharged pursuant to Article VIII.A of the Plan, or are subject to exculpation pursuant to Article VIII.E of the Plan, are permanently enjoined, from and after the EFH Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized EFH/EFIH Debtors, or the Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or

continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan, including those related to the PIK Settlement (whether terminated pursuant to its terms or otherwise) and any direction taken by the EFIH Unsecured Notes Trustee in connection therewith (prior to the date of termination). Notwithstanding anything to the contrary in the foregoing, the Plan shall not enjoin (a) any party from pursuing the claims and Causes of Action set forth in Section 6.12 of the parent disclosure letter delivered in connection with the NEE Merger Agreement; *provided, however,* that such Claims and Causes of Action shall be subject to treatment pursuant to the Plan and shall be discharged as set forth in Article VIII.A hereof, (b) the TCEH First Lien Creditor Allocation Disputes, or any claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from, or in connection with, the TCEH First Lien Creditor Allocation Dispute, or (c) the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, or claims or Causes of Action asserted in the Marathon Delaware Action (in accordance with and as that term is defined in the *Stipulation and Consent Order Regarding Limited Objection of Marathon Asset Management, L.P., to Confirmation of Debtors' Fifth Amended Plan of Reorganization*, dated November 10, 2015 [Docket No. 6932]), by any Holder of Allowed Class C3 Claims under the TCEH Plan against one or more Holders of Allowed Class C3 Claims under the TCEH Plan (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.

G.    *Liabilities to, and Rights of, Governmental Units.*

Nothing in the Plan or the EFH Confirmation Order shall release, discharge, or preclude the enforcement of: (i) any liability to a Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the EFH Effective Date, other than taxes determined under the prompt determination procedure in section 505 of the Bankruptcy Code, to the extent applicable; (iii) any liability to a Governmental Unit on the part of any Entity other than the Debtors or Reorganized Debtors; or (iv) any valid right of setoff or recoupment by any Governmental Unit.

H.    *Environmental Law Matters.*

Nothing in the Plan or the EFH Confirmation Order shall release, discharge, or preclude the enforcement of (or preclude, release, defeat, or limit the defense under non-bankruptcy law of): (i) any liability under Environmental Law to a Governmental Unit that is not a Claim; (ii) any Claim under Environmental Law of a Governmental Unit arising on or after the EFH Effective Date; (iii) any liability under Environmental Law to a Governmental Unit on the part of any Entity to the extent of such Entity's liability under non-bankruptcy law on account of its status as owner or operator of such property after the EFH Effective Date; (iv) any liability to a Governmental Unit on the part of any Entity other than the Debtors or Reorganized Debtors; or (v) any valid right of setoff or recoupment by any Governmental Unit. All parties' rights and defenses under Environmental Law with respect to (i) through (v) above are fully preserved. For the avoidance of doubt, the United States is not a Releasing Party under the Plan.

Nothing in the Plan or the EFH Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding paragraph. Nothing in the Plan or the EFH Confirmation Order authorizes: (i) the transfer or assignment of any governmental license, permit, registration, authorization, or approval, or (ii) the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under Environmental Law. The Bankruptcy Court retains jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities asserted by any Governmental Unit are discharged or otherwise barred by the EFH Confirmation Order or the Plan, or the Bankruptcy Code.

For the avoidance of doubt, all Claims under Environmental Law arising before the EFH Effective Date, including penalty claims for days of violation prior to the EFH Effective Date, shall be subject to Article VIII of the Plan and treated in accordance with the Plan in all respects and the Bankruptcy Court shall retain jurisdiction as provided in Article XI of the Plan in relation to the allowance or disallowance of any Claim under Environmental Law arising before the EFH Effective Date.

Without limiting the Bankruptcy Court's jurisdiction as set forth above, nothing in the Plan or the EFH Confirmation Order shall divest or limit the jurisdiction of other tribunals over the Environmental Action, and upon the EFH Effective Date of the Plan, the Environmental Action shall survive the Chapter 11 Cases and may be adjudicated in the court or tribunal in which such Environmental Action is currently pending; *provided, further, however*, any judgment for a Claim in the Environmental Action arising before the EFH Effective Date shall be treated in accordance with the Plan in all respects; *provided, further, however*, that nothing in the Plan shall preclude, release, defeat, or limit any grounds for asserting or opposing an alleged defense or affirmative defense under non-bankruptcy law in the Environmental Action based on any change in ownership, and all such grounds for asserting or opposing such defenses and affirmative defenses under non-bankruptcy law are expressly preserved. With respect to the Environmental Action, this Article VIII.H does not alter any rights or defenses under non-bankruptcy law arising as a result of any changes of ownership provided in the Plan or the EFH Confirmation Order. The Governmental Units reserve all rights as to whether there are any such rights or defenses.

I.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized EFH/EFIH Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized EFH/EFIH Debtors, or another Entity with whom the Reorganized EFH/EFIH Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.      *Recoupment.*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized EFH/EFIH Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the EFH Confirmation Date, notwithstanding any indication in any Proof of Claim or Proof of Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.      *Document Retention.*

On and after the EFH Effective Date, the Reorganized EFH/EFIH Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized EFH/EFIH Debtors.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to Confirmation of a Plan as to the EFH Debtors and EFIH Debtors.*

It shall be a condition to Confirmation of the Plan that the following shall have been satisfied or waived pursuant to the provisions of Article IX.C of the Plan:

1.      the Bankruptcy Court shall have entered the EFH Disclosure Statement Order and the EFH Confirmation Order in a manner consistent in all material respects with the Plan, the Settlement Order, and the Merger Agreement, and in form and substance reasonably satisfactory to the EFH Debtors, the EFIH Debtors, and the Plan Sponsor;

2.      the Settlement Order shall remain in full force and effect; and

3.      the EFH Confirmation Order shall, among other things:

83

(a)     authorize the EFH Debtors, the Reorganized EFH Debtors, the EFIH Debtors, and the Reorganized EFIH Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, including the Restructuring Transactions and the Transaction Agreements;

(b)     decree that the provisions of the EFH Confirmation Order and the Plan are nonseverable and mutually dependent;

(c)     authorize the EFH Debtors, the Reorganized EFH Debtors, the EFIH Debtors, and the Reorganized EFIH Debtors, as applicable/necessary, to:  (i) implement the Restructuring Transactions; (ii) issue and distribute, as applicable, the Reorganized EFH Common Stock, New HoldCo Equity Interests, Rollover Trust Certificates, and Non-Rollover Trust Certificates pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code or other exemption from such registration or pursuant to one or more registration statements; (iii) make all distributions and issuances as required under the Plan, including Cash, the Reorganized EFH Common Stock, New HoldCo Equity Interests, Rollover Trust Certificates, and Non-Rollover Trust Certificates in accordance with the Plan, Merger Agreement, and Tax Contingency Disclosure, if any; and (iv) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement;

(d)     provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order in furtherance of, or in connection with, any transfers of property pursuant to the Plan, including any deeds, mortgages, security interest filings, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax, and upon entry of the EFH Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment; and

(e)     provide that, from and after the EFH Effective Date, the Reorganized EFH Debtors and Reorganized EFIH Debtors shall have no liabilities other than those liabilities expressly set forth in the Plan.

B.     *Conditions Precedent to the EFH Effective Date.*

It shall be a condition to the EFH Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C of the Plan:

1.     the EFH Confirmation Order shall (a) have been duly entered in form and substance acceptable to the EFH Debtors, EFIH Debtors, and the Plan Sponsor, (b) reasonably acceptable to the other EFH/EFIH Plan Supporters, in accordance with the Sempra Plan Support Agreement, and (c) shall be consistent in all material respects with the TCEH Confirmation Order;

2.     the Settlement Order shall remain in full force and effect;

3.     the final version of the Plan, the Plan Supplement, and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan, the Transaction Agreements, the Sempra Plan Support Agreement, and the Settlement Order, and shall be in form and substance reasonably acceptable to the EFH Debtors, EFIH Debtors, and the EFH/EFIH Plan Supporters, in accordance with the Sempra Plan Support Agreement;

84

4. the EFH Professional Fee Escrow Account and EFIH Professional Fee Escrow Account shall have been funded in accordance with Article II.A.2(b);

5. (i) no Debtor shall have taken any action that results in an ownership change of EFH Corp. within the meaning of Section 382(g) of the Internal Revenue Code (including by treating the equity interests of EFH Corp. as becoming worthless within the meaning of Section 382(g)(4)(D) of the Internal Revenue Code); and (ii) Texas Holdings shall not have (A) taken any action that results in an ownership change of EFH Corp. within the meaning of Section 382(g) of the Internal Revenue Code (including by treating the equity interests of EFH Corp. as becoming worthless within the meaning of Section 382(g)(4)(D) of the Internal Revenue Code and thereby resulting in an ownership change of EFH Corp. within the meaning of Section 382(g) of the Internal Revenue Code); (B) knowingly permitted any person (other than Texas Holdings) to own directly, indirectly or constructively (by operation of Section 318 as modified by Section 382(l)(3)(A) of the Internal Revenue Code) 50% or more of the equity interests of EFH Corp. during the three-year period ending on the EFH Effective Date; or (C) changed its taxable year to be other than the calendar year;

6. the EFH Debtors and EFIH Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Restructuring Transactions with respect to the EFH/EFIH Debtors, including the EFH Merger, and the transactions contemplated thereby, including from the PUC, Federal Energy Regulatory Commission, and Federal Communications Commission, as applicable, consistent in all material respects with the terms and conditions set forth in the Merger Agreement;

7. all conditions to the completion of the transactions contemplated by the Merger Agreement shall have been satisfied or shall have been waived by the party entitled to waive them, and the transactions contemplated by the Transaction Agreements shall be completed, including, as applicable and subject to Section 6.21(h) of the Merger Agreement, that EFH Merger Sub shall have entered into the Exit Facility Documents, if applicable, and all conditions precedent to the consummation or effectiveness of the Exit Facilities shall have been waived or satisfied in accordance with the terms thereof, and any funding contemplated to be made through the Exit Facilities (if any) on the EFH Effective Date shall have been made in accordance with the applicable Exit Facility Document;

8. the Restructuring Transactions (including, for the avoidance of doubt, all conditions to and transactions contemplated by the Merger Agreement), shall have been consummated in form and manner reasonably acceptable to the EFH Debtors, the EFIH Debtors, and the Plan Sponsor, and consistent in all material respects with the Plan and the Transaction Agreements;

9. immediately prior to consummation of the EFH Merger, all assets of Reorganized EFH and each subsidiary of Reorganized EFH shall be free and clear of all liens, claims, encumbrances and other interests and Reorganized EFH and each subsidiary of Reorganized EFH shall have no liabilities except for (a) liabilities permitted under Section 7.1(e) of the Merger Agreement and (b) obligations owed to the Plan Sponsor (or any pre-Merger Affiliate of the Plan Sponsor) expressly contemplated by the Merger Agreement;

10. the Private Letter Ruling remains in full force and effect and has not been revoked or withdrawn; and

11. the consummation of the EFH Merger shall not be in violation of the provisions of the Tax Matters Agreement.

C.   *Waiver of Conditions.*

The conditions to Confirmation and the EFH Effective Date set forth in Article IX.A, Article IX.B.1, Article IX.B.2, Article IX.B.7, Article IX.B.8, Article IX.B.9, Article IX.B.10, and Article IX.B.11 may be waived subject to the consent of each of (a) the EFH Debtors, (b) the EFIH Debtors, and (c) the Plan Sponsor, including, in the case of any Conflict Matter between any Debtors, each Debtor acting at the direction of its respective Disinterested Director or Manager and without the consent of any other Debtor; *provided* that the condition precedent to the EFH Effective Date set forth in Article IX.B.1(c) shall not be waived without the consent of Reorganized TCEH. The conditions to the EFH Effective Date set forth in Article IX.B.4 may be waived by the EFH Debtors (with respect to funding of the EFH Professional Fee Escrow Account) and the EFIH Debtors (with

RLF1 18943843v.1

respect to funding of the EFH Professional Fee Escrow Account) in such Debtors' sole and absolute discretion. The conditions to the EFH Effective Date set forth in Article IX.B.5 may be waived by the Plan Sponsor in its sole and absolute discretion. The conditions to the EFH Effective Date set forth in Article IX.B.3 and Article IX.B.6 may not be waived pursuant to this Article IX.C, but may only be waived pursuant to waiver rights expressly provided therein, if any.

D.      *Effect of Failure of Conditions.*

Unless extended by the Debtors, including, in the case of any Conflict Matter between any Debtors, each Debtor acting at the direction of its respective Disinterested Director or Manager and without the consent of any other Debtor, if the EFH Effective Date does not occur before one year following Confirmation, with respect to a particular Debtor, then, as to such particular Debtor:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity. Notwithstanding the foregoing, for the avoidance of doubt, (i) the Settlement embodied in the Settlement Agreement shall remain in full force and effect and the failure of Confirmation or Consummation to occur with respect to any or all Debtors shall not affect the Settlement or any provisions of the Settlement Agreement and (ii) if the Spin-Off is effectuated, the Approval Order shall remain in full force and effect and the failure of Confirmation or Consummation to occur with respect to any Debtor (other than a TCEH Debtor) shall not affect the Approval Order or the Tax Matters Agreement.

E.      *Certain IRS Matters.*

Nothing in the Plan (or subsequently amended Plan) or Confirmation Order shall affect the rights of the IRS or United States to assess or collect a tax arising on or after the EFH Confirmation Date against Reorganized EFH, any member of its consolidated group, and/or any successor entities as permitted under applicable law.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

Subject to the Sempra Plan Support Agreement, the Merger Agreement and the Plan Sponsor's consent (as described below), each of the Debtors, including, in the case of any Conflict Matter between any Debtors, each Debtor acting at the direction of its respective Disinterested Director or Manager and without the consent of any other Debtor, reserves the right to modify the Plan, one or more times, before Confirmation, whether such modification is material or immaterial, and to seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, each of the Debtors, including, in the case of any Conflict Matter between any Debtors, each of the Debtors acting at the direction of its respective Disinterested Director or Manager and without the consent of any other Debtor, expressly reserves its respective rights to alter, amend, or modify the Plan, one or more times, after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the EFH Disclosure Statement, or the EFH Confirmation Order, including with respect to such modifications.  Any alteration, amendment, or modification to the Plan shall be in accordance with the Merger Agreement, and in form and substance reasonably acceptable to (i) the Plan Sponsor (it being understood that it shall be reasonable for the Plan Sponsor to deem unacceptable any alteration, amendment, or modification that (1) results in the imposition or reinstatement of any Claim against or Interest in the Reorganized EFH Debtors, the Reorganized EFIH Debtors, the Plan Sponsor, or any Affiliate of the Plan Sponsor or (2) alters any consent right in favor of the Reorganized EFH Debtors, the Reorganized EFIH Debtors, the Plan Sponsor, or any Affiliate of the Plan Sponsor), and (ii) solely with respect to the repayment of the 2017 EFIH First Lien DIP Facility, acceptable to the 2017 EFIH First Lien DIP Agent.  The Debtors may not amend the Plan in a manner inconsistent with the EFH/EFIH Committee Settlement without the prior consent of the EFH/EFIH Committee and the EFH Notes Trustee.

86

B.      *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that each alteration, amendment, or modification to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019; *provided, however,* that each alteration, amendment, or modification shall be made in accordance with Article X.A of the Plan.

C.      *Revocation or Withdrawal of Plan.*

Each EFH Debtor and EFIH Debtor reserves the right to revoke or withdraw the Plan as it applies to the EFH Debtors and the EFIH Debtors only to the extent permitted by the terms of the Merger Agreement and the Sempra Plan Support Agreement.

If any of the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects as to such Debtors; (2) any settlement or compromise embodied in the Plan (other than the Settlement embodied in the Settlement Agreement), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void as to such Debtors; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action as to such Debtors; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.  Notwithstanding the foregoing and for the avoidance of doubt, (i) the Settlement embodied in the Settlement Agreement shall remain in full force and effect and the failure of Confirmation or Consummation to occur with respect to any or all Debtors shall not affect the Settlement or any provisions of the Settlement Agreement and (ii) the Approval Order (and the agreements authorized thereby) shall remain in full force and effect and the failure of Confirmation or Consummation to occur with respect to any Debtor shall not affect the Approval Order or the Tax Matters Agreement.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the EFH Confirmation Order and the occurrence of the EFH Effective Date, on and after the EFH Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction (subject to any withdrawal of the reference of any proceeding by the district court or any appeal of any order, judgment, or decree of the Bankruptcy Court) over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code to the extent provided under applicable law, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

1.      approve any settlement of Claims to the extent one or more parties seeks Bankruptcy Court approval of such settlement of Claims;

2.      hear and determine matters related to the EFIH First Lien DIP Facilities and the EFIH First Lien DIP Orders;

3.      decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

4.      resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims

87

pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized EFH/EFIH Debtors' amending, modifying, or supplementing, after the EFH Effective Date, pursuant to Article V of the Plan, any Executory Contracts or Unexpired Leases to the Assumed Executory Contracts and Unexpired Lease List, Rejected Executory Contract and Unexpired Lease List, or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

5.　adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the EFH Effective Date;

6.　adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.　enter and implement such orders as may be necessary to execute, implement, or consummate the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the EFH Disclosure Statement, including injunctions or other actions as may be necessary to restrain interference by an Entity with Consummation or enforcement of the Plan;

8.　enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.　adjudicate, decide, or resolve any and all matters related to the Restructuring Transactions, including the Tax Matters Agreement;

10.　grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

11.　resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the Plan, the EFH Disclosure Statement, the EFH Confirmation Order, or the Restructuring Transactions, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the EFH Disclosure Statement, the EFH Confirmation Order, or the Restructuring Transactions;

12.　resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

13.　resolve any cases, controversies, suits, disputes, or Causes of Action relating to the distribution or the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.L.1 of the Plan;

14.　enter and implement such orders as are necessary if the EFH Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.　enter an order or decree concluding or closing the Chapter 11 Cases;

16.　consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the EFH Confirmation Order;

17.　hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of a Debtor for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the

Restructuring Transactions, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases;

18. except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

19. enforce all orders previously entered by the Bankruptcy Court; and

20. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect.*

Subject to Article IX.B of the Plan, as applicable, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the EFH Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the applicable Debtors, the Reorganized EFH/EFIH Debtors, and any and all applicable Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. Nothing in the Plan or the EFH Confirmation Order affects the DIP Lenders' rights or interests provided under the DIP Facilities, the DIP Agreements, or the DIP Orders, including with respect to (1) any waivers or releases contained therein or (2) the 2017 EFIH First Lien DIP Agent's rights to exercise event of default remedies (including after the EFH Confirmation Date and before the EFH Effective Date), until the 2017 EFIH First Lien DIP Claims are satisfied in full.

B.    *Additional Documents.*

On or before the EFH Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan, in accordance with the Merger Agreement and the Sempra Plan Support Agreement. The Debtors or the Reorganized EFH/EFIH Debtors, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, will be paid by each of the applicable Reorganized Debtors (or the Disbursing Agent on behalf of each of the applicable Reorganized Debtors) for each quarter (including any fraction thereof) until the applicable Chapter 11 Case of such Reorganized Debtors is converted, dismissed, or closed, whichever occurs first. All such fees due and payable prior to the EFH Effective Date shall be paid by the Debtors on the EFH Effective Date. After the EFH Effective Date, the Disbursing Agent or the applicable Reorganized Debtor shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until the earliest of the date on which the applicable Chapter 11 Case of the Reorganized EFH/EFIH Debtors is converted, dismissed, or closed.

D.    *Statutory Committee and Cessation of Fee and Expense Payment.*

On the EFH Effective Date, any statutory committee appointed in the Chapter 11 Cases with respect to the EFH Debtors or the EFIH Debtors (including the EFH/EFIH Committee) shall dissolve; *provided, however,* that

following the EFH Effective Date, the EFH/EFIH Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (i) Claims and/or applications, and any relief related thereto, for compensation by professionals and requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (ii) appeals of the EFH Confirmation Order as to which the EFH/EFIH Committee or TCEH Committee, as applicable, is a party. Upon dissolution of the EFH/EFIH Committee, the members thereof and their respective officers, employees, counsel, advisors, and agents shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The Reorganized EFH/EFIH Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the EFH Effective Date, except for the limited purposes identified above.

E.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the EFH Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor or other Entity with respect to the Plan, the EFH Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or any other Entity with respect to the Holders of Claims or Interests prior to the EFH Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices.*

All notices, requests, and demands to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

    1.   if to the Debtors, to:

        Energy Future Holdings Corp.
        1601 Bryan Street,
        Dallas, Texas 75201
        Attention: Andrew Wright
        Email address: andrew.wright@energyfutureholdings.com

        with copies to:

        Kirkland & Ellis LLP
        601 Lexington Avenue
        New York, New York 10022
        Facsimile: (212) 446-4900
        Attention: Edward O. Sassower, P.C., and Aparna Yenamandra
        E-mail addresses: edward.sassower@kirkland.com and Aparna.yenamandra@kirkland.com
        --and--

        Kirkland & Ellis LLP
        300 North LaSalle
        Chicago, Illinois 60654
        Facsimile: (312) 862-2200
        Attention: James H.M. Sprayregen, P.C., Marc Kieselstein, P.C., and Chad J. Husnick, P.C.

E-mail addresses: james.sprayregen@kirkland.com, marc.kieselstein@kirkland.com, and chad.husnick@kirkland.com

--and--

Proskauer Rose LLP
Three First National Plaza
70 W. Madison Street, Suite 3800
Chicago, Illinois 60602
Facsimile: (312) 962-3551
Attention: Mark. K. Thomas and Peter J. Young
E-mail addresses: mthomas@proskauer.com and pyoung@proskauer.com

--and--

Cravath Swaine and Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Facsimile: (212) 474-3700
Attention: Michael Paskin and Philip A. Gelston
E-mail address: mpaskin@cravath.com and pgelston@cravath.com

--and--

Jenner & Block LLP
919 Third Avenue
New York, New York 10022
Facsimile: (212) 891-1699
Attention: Richard Levin and
E-mail address: rlevin@jenner.com

2.  if to the 2017 EFIH First Lien DIP Agent, to:

Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Attention: Fredric Sosnick and Ned S. Schodek
E-mail addresses: fsosnick@shearman.com and ned.schodek@shearman.com

3.  if to the Plan Sponsor, to:

Sempra Energy
488 8th Avenue
San Diego, California 92101
Attention: Martha B. Wyrsch, Executive Vice President and General Counsel
E-mail address: mwyrsch@sempra.com

--and--

White & Case LLP
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Attention: Thomas E Lauria and Matthew C. Brown
E-mail addresses: tlauria@whitecase.com and mbrown@whitecase.com

RLF1 18943843v.1

After the EFH Effective Date, the Reorganized EFH/EFIH Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the EFH Effective Date, the Reorganized EFH/EFIH Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.     *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or the EFH Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the EFH Confirmation Date (excluding any injunctions or stays contained in the Plan or the EFH Confirmation Order) shall remain in full force and effect until the EFH Effective Date. All injunctions or stays contained in the Plan or the EFH Confirmation Order shall remain in full force and effect in accordance with their terms.

I.     *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.     *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http://www.efhcaseinfo.com or the Bankruptcy Court's website at www.deb.uscourts.gov.

K.     *Nonseverability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that in no event shall the Plan Sponsor be required to consummate any of the transactions contemplated to be consummated at the Merger Closing unless the conditions to the Plan Sponsor's consummation of such transactions shall have been satisfied or waived in accordance with the Merger Agreement. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The EFH Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' consent, as applicable; and (3) nonseverable and mutually dependent.

L.     *Votes Solicited in Good Faith.*

Upon entry of the EFH Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized

EFH/EFIH Debtors will have any liability for the violation of any applicable law (including the Securities Act), rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.      *Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the EFH Disclosure Statement, or papers Filed before the EFH Confirmation Date.

N.      *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of the EFH Disclosure Statement, the Plan Supplement, the Merger Agreement, or any agreement or order (other than the EFH Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided, however,* with respect to any conflict or inconsistency between the Plan and the EFH Confirmation Order, the EFH Confirmation Order shall govern; *provided further, however,* that in no event shall the Plan Sponsor be required to consummate any of the transactions contemplated to be consummated at the Merger Closing unless the conditions to the Plan Sponsor's consummation of such transactions shall have been satisfied or waived in accordance with the Merger Agreement.

Dated: February 15, 2018

Respectfully submitted,

EBASCO SERVICES OF CANADA LIMITED
EEC HOLDINGS, INC.
EECI, INC.
EFH AUSTRALIA (NO. 2) HOLDINGS COMPANY
EFH FINANCE (NO. 2) HOLDINGS COMPANY
EFH FS HOLDINGS COMPANY
EFH RENEWABLES COMPANY LLC
EFIH FINANCE INC.
ENERGY FUTURE HOLDINGS CORP.
ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
GENERATION DEVELOPMENT COMPANY LLC
LSGT GAS COMPANY LLC
LSGT SACROC, INC.
NCA DEVELOPMENT COMPANY LLC
TXU RECEIVABLES COMPANY


By: ___/s/ Anthony Horton_____

Name:  Anthony Horton
Title:  Executive Vice President and Chief Financial Officer of EFH Corp.,
         and EFIH

Prepared by:
KIRKLAND & ELLIS LLP
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800 (telephone)

--and--

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000 (telephone)

--and--

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700 (telephone)

Counsel to the Debtors and Debtors in Possession

--and--

PROSKAUER ROSE LLP
Jeff J. Marwil (admitted *pro hac vice*)
Mark K. Thomas (admitted *pro hac vice*)
Peter J. Young (admitted *pro hac vice*)
Three First National Plaza
70 W. Madison Street, Suite 3800
Chicago, Illinois 60602
(312) 962-3550 (telephone)

Co-Counsel to the Debtor Energy Future Holdings Corp.

--and--

CRAVATH, SWAINE AND MOORE LLP
Michael Paskin (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
(212) 474-1000 (telephone)

JENNER & BLOCK LLP
Richard Levin (admitted *pro hac vice*)
919 Third Avenue
New York, New York 10022
(212) 891-1600 (telephone)

Co-Counsel to the Debtor Energy Future Intermediate Holding Company LLC

## EXHIBIT A

**EFH/EFIH Debtors**

Ebasco Services of Canada Limited
EEC Holdings, Inc.
EECI, Inc.
EFH Australia (No. 2) Holdings Company
EFH Finance (No. 2) Holdings Company
EFH FS Holdings Company
EFH Renewables Company LLC
EFIH Finance Inc.
Energy Future Holdings Corp.
Energy Future Intermediate Holding Company LLC
Generation Development Company LLC
LSGT Gas Company LLC
LSGT SACROC, Inc.
NCA Development Company LLC
TXU Receivables Company

**Exhibit B**

**Notice of EFH Confirmation**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## NOTICE OF ENTRY OF EFH CONFIRMATION
## ORDER AND OCCURRENCE OF EFH EFFECTIVE DATE

**PLEASE TAKE NOTICE** that on February [●], 2018, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. [●]] (the "EFH Confirmation Order"), pursuant to which the Bankruptcy Court approved and confirmed the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, dated [●] [D.I. [●]] (the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that the EFH Effective Date, as defined in the Plan, occurred on [●].

**PLEASE TAKE FURTHER NOTICE** that pursuant to Article V.B. of the Plan, unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the EFH Confirmation Order, if any, must be Filed and actually received by the Claims and Noticing Agent before the deadline provided in the notice of rejection. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the EFH/EFIH Debtors or the Reorganized EFH/EFIH Debtors, the EFH/EFIH Debtors' Estates, or their property without the need for any objection by the EFH Plan Administrator Board or the Reorganized EFH/EFIH Debtors or further notice**

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or the EFH Confirmation Order, as applicable.

to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable Debtor and shall be treated in accordance with the Plan, unless a different security or priority is otherwise asserted in such Proof of Claim and Allowed in accordance with Article VII of the Plan.

PLEASE TAKE FURTHER NOTICE that pursuant to the Plan, the deadline for Filing requests for payment of General Administrative Claims, other than Professional Fee Claims, shall be [●], 2018, the date that is 30 days after the EFH Effective Date.

PLEASE TAKE FURTHER NOTICE that pursuant to the Plan, the deadline for Filing requests for payment of Professional Fee Claims shall be [●], the date that is 45 days after the EFH Effective Date.

PLEASE TAKE FURTHER NOTICE that pursuant to the Plan, the Claims Objection Deadline shall be [●], the date that is 180 days after the EFH Effective Date, which may be extended by the Bankruptcy Court.

---

**TO HOLDERS OF CLASS A3 CLAIMS THAT WERE FILED BEFORE THE APPLICABLE BAR DATE:**

PLEASE TAKE FURTHER NOTICE that pursuant to Article III.A of the Plan, Class A3 Claims consist of Legacy General Unsecured Claims Against the EFH Debtors (i.e., Claims asserted against certain EFH Debtors derived from, or based upon liabilities relating to asbestos or certain qualified post-employment benefits relating to discontinued operations of certain subsidiaries of the EFH Debtors).  Class A3 Claims for which a timely Proof of Claim was Filed by the applicable Bar Date and to which no objection is Filed prior to the Claims Objection Deadline, the legal, equitable, and contractual rights, if any, to which such Claim entitles the Holder thereof are unaltered as contemplated by 11 U.S.C. § 1124(1).  The failure of any Entity to File with the Bankruptcy Court an objection with respect to such Claim by the Claims Objection Deadline (a) does not affect the validity of such Claim, including the asserted amount thereof, or affect the liability, if any, of the Debtors, the Reorganized Debtors or any other Entity with respect to such Claim, (b) shall not be or be deemed to be an admission of liability by any Entity with respect to such Claim, and (c) shall not prejudice, impair, alter or otherwise affect the Debtors', Reorganized Debtors' or any other Entity's rights, including any and all defenses, in law or in equity, in respect of such Claims.  If the statute of limitations (or other period for commencing or continuing a civil action in a court other than a Bankruptcy Court with respect to a Claim against the Debtors fixed by applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement) applicable to your Claim expired during the pendency of the Chapter 11 Cases (i.e., April 29, 2014 through and including [____ (EFH Effective Date)]), then pursuant to 11 U.S.C. § 108(c) you have until the date that is 30 days after the EFH Effective Date (i.e., [●]) to commence litigation with respect to your Claim in the proper forum.

---

RLF1 18895289v.1

PLEASE TAKE FURTHER NOTICE that in accordance with Bankruptcy Rules 2002 and 3020(c), the Reorganized EFH Debtors and Reorganized EFIH Debtors shall promptly cause this *Notice of Entry of EFH Confirmation Order and Occurrence of EFH Effective Date* to be served by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties on the Rule 2002 list, counterparties to Rejected Executory Contracts and Unexpired Leases, and Holders of Class A3 Claims who timely filed a Proof of Claim by the applicable Bar Date.

PLEASE TAKE FURTHER NOTICE that copies of the EFH Confirmation Order, the Plan, or any other related documents are available upon request to Epiq Bankruptcy Solutions, LLC, the claims and noticing agent retained by the Debtors in the Chapter 11 Cases (the "Claims Agent") by: (a) accessing the Debtors' restructuring website with the Claims Agent at http://www.efhcaseinfo.com; (b) writing to the Claims Agent at Energy Future Holdings Corp. Claims Processing Center, c/o Epiq Bankruptcy Solutions, P.O. Box 4421, Beaverton, OR 97076-4421; or (c) calling the Debtors' restructuring hotline at (877) 276-7311. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov.

PLEASE TAKE FURTHER NOTICE that the Plan and its provisions are binding upon the EFH Debtors and EFIH Debtors, the Reorganized EFH Debtors and Reorganized EFIH Debtors, and any and all holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan or the EFH Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the EFH Debtors and EFH EFIH Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan or filed a Proof of Claim.

RLF1 18895289v.1

Dated: [●], 2018
       Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
        defranceschi@rlf.com
        madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
        stephen.hessler@kirkland.com
        brian.schartz@kirkland.com
        aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
        marc.kieselstein@kirkland.com
        chad.husnick@kirkland.com
        steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing *Notice of Appeal* has been served upon all parties listed below via the court's CM/ECF electronic filing system and/or by placing a copy in the United States mail, first class, postage pre-paid and properly addressed on this 13th day of March, 2018.

*/s/ Erin R. Fay*
Erin R. Fay

**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF THE U.S. TRUSTEE**
Richard L. Schepacarter
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins
Daniel J. DeFranceschi
Jason M. Madron
920 North King Street
Wilmington, DE 19801

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. Stephen E. Hessler
Brian E. Schartz
601 Lexington Avenue
New York, NY 10022-4611

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
James H.M. Sprayregen, P.C.
Chad J. Husnick, P.C.
Steven N. Serajeddini
300 North LaSalle
Chicago, IL 60654

**BIELLI & KLAUDER, LLC**
David M. Klauder
Cory Stephenson
1204 N. King Street
Wilmington, DE 19801

**PROSKAUER ROSE LLP**
Jeff J. Marwil
Mark K. Thomas
Peter J. Young
Three First National Plaza
70 W. Madison Street, Suite 3800
Chicago, IL 60602-4342

**STEVENS & LEE, P.C.**
Joseph H. Huston, Jr.
919 North Market Street, Suite 1300
Wilmington, DE 19801

**CRAVATH, SWAINE AND MOORE LLP**
Michael A. Paskin
Trevor M. Broad
Worldwide Plaza 825 Eighth Avenue
New York, NY 10019-7475

**JENNER & BLOCK**
Richard Levin
919 Third Avenue
New York, NY 10022-3908

**MONTGOMERY McCRACKEN WALKER &
RHOADS, LLP**
Natalie D. Ramsey
David Lee Wright
Mark A. Fink
1105 North Market Street, 15th Floor
Wilmington, DE 19801

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich
Steven L. Holley
Robert J. Giuffra, Jr.
Brian D. Glueckstein
125 Broad Street
New York, New York 10004