respective directors, officers, members, agents, and attorneys, financial advisors, and investment bankers are authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document related to the Plan, as the same may be modified, amended, and supplemented, and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Court. To the extent applicable, any or all such documents shall be accepted upon presentment by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law. Pursuant to section 303 of the General Corporation Law of the State of Delaware and any comparable provision of the business corporation laws of any other state, as applicable, no action of the boards of directors (or similar governing body, or their equity owners or managing member, as applicable) of the EFH/EFIH Debtors or the Reorganized EFH/EFIH Debtors will be required to authorize such Debtors or Reorganized Debtors, as applicable, to enter into, execute and deliver, adopt or amend, as the case may be, any such contract, instrument, release, or other agreement or document related to the Plan, and following the EFH Effective Date, each of the documents related to the Plan will be a legal, valid, and binding obligation of such Debtors or Reorganized Debtors, as applicable, enforceable against such Debtors and Reorganized Debtors in accordance with the respective terms thereof.

L.    **Binding Effect.**

91.    On the date of and after entry of this EFH Confirmation Order, subject to the occurrence of the EFH Effective Date, and subject to the provisions of this EFH Confirmation Order, the Plan, and the EFH Plan Supplement shall bind the Debtors, their estates, any party

45

seeking to act on behalf of, or in respect of, the Debtors or the Debtors' estates, and any Holder of a Claim against or Interest in the EFH Debtors or the EFIH Debtors and such Holder's respective successor and assigns, regardless of whether: (a) such Holder's Claim or Interest is Impaired under the Plan; (b) such Holder has accepted the Plan; (c) such Holder failed to vote to accept or reject the Plan or voted to reject the Plan; (d) such Holder is entitled to a distribution under the Plan; (e) such Holder will receive or retain any property or interests in property under the Plan; or (f) such Holder has filed a Proof of Claim in the Chapter 11 Cases.  For the avoidance of doubt, the Tax Matters Agreement and the Separation Agreement became binding upon the Debtors, their estates, and any party seeking to act on behalf of, or in respect of, the Debtors or the Debtors' estates on the TCEH Effective Date pursuant to the TCEH Confirmation Order.  The Plan and its related documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and its related documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law. Notwithstanding anything in this paragraph, any determination made by this Court in the Confirmation Proceedings (as defined in the Stipulation) with respect to the forecasted value of asbestos-related claims asserted against the EFH/EFIH Debtors shall not be determinative of, or serve as a cap or floor on, the amounts due on account of any such claim(s), and shall not otherwise bind the holders of asbestos-related claims, including the Asbestos Objectors, or any of the Reorganized EFH Debtors in connection with resolution of any asbestos claim(s) asserted against the EFH/EFIH Debtors or any of the Reorganized EFH Debtors or in any proceeding to estimate the Debtors' aggregate asbestos liability under section 502(c) of the Bankruptcy Code.

92.     Furthermore, notwithstanding anything to the contrary in this EFH Confirmation Order, the Plan, or any related agreements or otherwise (including any provisions in any of the foregoing that also include the words "notwithstanding anything to the contrary" or similar references), upon the occurrence of the EFH Effective Date (a) none of (i) the Plan Sponsor; (ii) EFH Merger Sub; (iii) the Reorganized EFH/EFIH Debtors; (iv) any other entity acquired, directly or indirectly, by the Plan Sponsor pursuant to the terms of, or as a result of, the Plan, the Merger Agreement, or any related agreement; or (v) with respect to each of the foregoing Entities in clauses (i) through (iv), such Entity and its current and former Affiliates, shall have any liability or obligation with respect to any Administrative Claims, 2017 EFIH First Lien DIP Claims or any other Claims, other than (A) Class A3 - Legacy General Unsecured Claims Against the EFH Debtors, (B) Class A12 Claims of EFH Corp., LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. against one or more of EFH Corp., LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc., and (C) certain property tax Claims secured by liens on real property in an amount not to exceed $100,000 (as set forth in the Merger Agreement), (b) such Claims (other than those set forth in subclauses (A)-(C) above) shall be paid only from the Accessible Account Deposit (as defined in the Merger Agreement) and the Settlement Payment (as defined in the EFH/Sempra Settlement Order [D.I. 12631]), and (c) all Entities asserting or holding a Claim are permanently enjoined from asserting or otherwise taking any action to collect or enforce or to seek or obtain any remedy with respect to any such Claims against the entities listed in (a)(i)-(v) above.

93.     On the EFH Effective Date, all 2017 EFIH First Lien DIP Claims shall be satisfied, in full, in Cash. Any 2017 EFIH First Lien DIP Contingent Obligations shall survive

the EFH Effective Date and be paid in full from the EFH/EFIH Cash Distribution Account in accordance with the Plan.

**M.      Directors and Officers of the Reorganized EFH/EFIH Debtors.**

94.      The Reorganized EFH/EFIH Debtors' initial directors and officers, to the extent known, have been disclosed prior to the EFH Confirmation Hearing.  To the extent that any director or officer has not yet been determined, such determination will be made in accordance with the New Organizational Documents and such appointment is hereby approved.

**N.      Release of Liens.**

95.      Except as otherwise specifically provided in the Plan and except for (a) any Other Secured Claim Against the EFH Debtors that the EFH Debtors elect to Reinstate in accordance with Article III.B.1 (subject to the consent of the Plan Sponsor) and, with respect to any Allowed Other Secured Claim Against the EFH Debtors asserted by the Taxing Units that the EFH Debtors shall Reinstate on the EFH Effective Date until such Allowed Other Secured Claim Against the EFH Debtors is satisfied in the full Allowed amount, and (b) any Other Secured Claim Against the EFIH Debtors that the EFIH Debtors elect to Reinstate in accordance with Article III.B.16 (subject to the consent of the Plan Sponsor), on the EFH Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the EFH/EFIH Debtors or their Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized EFH/EFIH Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors.  Notwithstanding anything to the contrary in the Plan, the Liens on the collateral securing the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, as applicable, will be released on the EFH Effective Date

48

following payment in full in Cash of the Allowed EFIH First Lien Claims and Allowed EFIH Second Lien Claims accrued as of such payment date and the funding of the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve and the EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve (each as applicable and as defined in the EFIH Secureds Settlement Approval Order). For the avoidance of doubt, solely for purposes of determining whether any such Claims are Secured Claims entitled to treatment as Class B3 or Class B4 Claims (rather than Unsecured Claims entitled to treatment as Class B5 Claims and Class B6 Claims), the secured status of such Claims shall be determined as if such Liens had not been released on the EFH Effective Date and remained in effect to the same extent they did immediately before the EFH Effective Date.

96. To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan (or any agent for such Holder) has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as reasonably practicable on or after the EFH Effective Date, such Holder (or the agent for such Holder) shall take any and all steps reasonably requested by the Debtors, the Reorganized EFH/EFIH Debtors, or any administrative agent under the Exit Facility Documents that are reasonably necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized EFH/EFIH Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

## O.    Injunctions and Automatic Stay.

97. Unless otherwise provided in the Plan or in this EFH Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court entered as of the EFH Confirmation Date (excluding

49

any injunctions or stays contained in the Plan or the EFH Confirmation Order) shall remain in full force and effect through and including the EFH Effective Date.  All injunctions or stays contained in the Plan or the EFH Confirmation Order shall remain in full force and effect in accordance with their terms.

**P.    Cancelation of Existing Securities and Agreements.**

98.    Except as otherwise provided in the Plan, on and after the EFH Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims or Interests, including Other Secured Claims, EFIH First Lien Note Claims, EFIH Second Lien Note Claims, EFIH Unsecured Note Claims, EFH Legacy Note Claims, EFH LBO Note Primary Claims, EFH LBO Note Guaranty Claims, EFH Unexchanged Note Claims, EFH Swap Claims, EFH Series N Note Claims, and 2017 EFIH First Lien DIP Claims, shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or a Holder to take further action with respect to any note(s) or security and the obligations of the Debtors or Reorganized Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged, and the Indenture Trustees, the Original EFIH First Lien DIP Agent, and the 2017 EFIH First Lien DIP Agent shall be released from all duties thereunder; *provided, however*, that (a) Interests in Debtors EFIH, LSGT Gas Company, LLC, EECI, Inc., EEC Holding, Inc., and LSGT SACROC, Inc. shall be Reinstated; and (b) notwithstanding Confirmation or Consummation, any such indenture or agreement that governs the rights of the Holder of a Claim shall, subject to the terms of the Plan and, if applicable, the EFIH Settlement Agreement, continue in effect solely for purposes of:  (1) allowing Holders of Allowed Claims to receive distributions under the Plan and, as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, under EFIH Secureds Settlement Approval Order; (2) allowing the Indenture

Trustees or such other Disbursing Agent pursuant to the EFH Confirmation Order to make the distributions in accordance with the Plan (if any), as applicable, and, as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, under the EFIH Secureds Settlement Approval Order; (3) preserving any rights of the Original EFIH First Lien DIP Agent, the 2017 EFIH First Lien DIP Agent, or the Indenture Trustees to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the relevant Holders under, as applicable, the Plan, the Original EFIH First Lien DIP Credit Agreement, the 2017 EFIH First Lien DIP Credit Agreement, the EFH Note Indentures, the EFH Series N Note Indenture, the EFIH First Lien Note Indentures, the EFIH Second Lien Note Indenture, and the EFIH Unsecured Note Indentures, including any rights to priority of payment and/or to exercise charging liens, including retention of appropriate reserves, and, as to the EFIH First Lien Note Claims and EFIH Second Lien Note Claims, under the EFIH Secureds Settlement Approval Order; (4) allowing the Indenture Trustees, the Original EFIH First Lien DIP Agent, and the 2017 EFIH First Lien DIP Agent to enforce any obligations owed to each of them under the Plan and take any actions contemplated of them by the Plan; and (5) allowing the Indenture Trustees, the Original EFIH First Lien DIP Agent, and the 2017 EFIH First Lien DIP Agent to appear in the Chapter 11 Cases or any proceeding in which they are or may become a party; *provided, further, however*, that, without prejudice to the right of any Holder of an Allowed Claim to the rights of such party to receive distributions under the Plan or the EFIH Settlement Agreement, the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the EFH Confirmation Order, or the Plan, or result in any expense or liability to the Debtors, Reorganized Debtors, as applicable, or the Plan Sponsor. For the avoidance of doubt, the TCEH First Lien Intercreditor Agreement, the TCEH Credit Agreement, and the

TCEH First Lien Note Indenture remain in effect in accordance with the terms of the TCEH Plan and TCEH Confirmation Order solely to the extent necessary to preserve the TCEH First Lien Creditor Allocation Disputes and the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, and any (a) claims or Causes of Action by the TCEH First Lien Notes Trustee, TCEH First Lien Agent, or Holders of TCEH First Lien Claims against other Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising in connection with the TCEH First Lien Creditor Allocation Disputes, or (b) claims or Causes of Action by any Holder of Allowed Class C3 Claims under the TCEH Confirmed Plan against any other Holder of Allowed Class C3 Claims under the TCEH Confirmed Plan (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) in the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute (or any claims, Causes of Action or defenses of any other party to such dispute). All capitalized terms in the preceding sentence shall have the definitions ascribed to them in the TCEH Plan. Notwithstanding anything to the contrary in the foregoing provisions of Article IV.G of the Plan, (x) the cancelation and discharge of the EFIH First Lien Note Indentures, the EFIH Second Lien Note Indenture, and the EFIH Collateral Trust Agreement, and all other notes, instruments, certificates, agreements, mortgages, security documents, and other documents evidencing any Claims or rights under the EFIH First Lien Notes or the EFIH Second Lien Notes shall be limited solely to the Debtors and the Reorganized EFH/EFIH Debtors and shall not affect the rights of the EFIH First Lien Notes Trustee or Holders of the EFIH First Lien Note Claims vis-à-vis any other party, including the EFIH Second Lien Notes Trustee and Holders of the EFIH Second Lien Note Claims, or vice versa; and (y) for the avoidance of doubt, the EFIH First Lien Note

Indentures, the EFIH Second Lien Note Indenture, the EFIH Collateral Trust Agreement, and all other notes, instruments, certificates, agreements, mortgages, security documents, and other documents evidencing any Claims or rights under the EFIH First Lien Notes or the EFIH Second Lien Notes shall remain in effect (and the EFIH First Lien Notes Trustee and the EFIH Second Lien Notes Trustee shall remain as trustee, and registrar) for the purposes set forth in (1)-(5) of this section, as applicable.

**Q.    Cooperation by the DTC.**

99.    The Depository Trust Company ("DTC"), and any participants and intermediaries, shall fully cooperate and facilitate distributions, as applicable, pursuant to the Plan, including to Holders of Claims in Classes A4, A5, A6, and B5.

**R.    Cooperation by the EFIH Unsecured Notes Trustee.**

100.    The EFIH Unsecured Notes Trustee is authorized to fully cooperate with the directives of the Holders of Claims against the EFIH Debtors under the EFIH Unsecured Notes.

**S.    Securities Law Exemption.**

101.    Pursuant to section 1145 of the Bankruptcy Code, the issuance of the New HoldCo Equity Interests is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration before the offering, issuance, distribution, or sale of such securities. Each of the New HoldCo Equity Interests issued under the Plan (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and (b) is freely tradable and transferable by any initial recipient thereof that (i) at the time of transfer, is not an "affiliate" of Reorganized EFH, Reorganized EFIH, the Plan Sponsor, or EFH Merger Sub, as the case may be, as defined in Rule 144(a)(1) under the Securities Act and has not been such an "affiliate" within 90 days of such

transfer, and (ii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

102.   The Reorganized EFH Common Stock and the New HoldCo Equity Interests will be issued without registration in reliance upon the exemption set forth in Section 4(a)(2) of the Securities Act and will be "restricted securities," as that term is defined in Rule 144 under the Securities Act.

103.   Should the Reorganized EFH Debtors or the Reorganized EFIH Debtors elect on or after the EFH Effective Date to reflect any ownership of the Reorganized EFH Common Stock through the facilities of the DTC, the Reorganized EFH Debtors and the Reorganized EFIH Debtors need not provide any further evidence other than the Plan or the EFH Confirmation Order with respect to the treatment of the Reorganized EFH Common Stock under applicable securities laws.

104.   The DTC shall be required to accept and conclusively rely upon the Plan and EFH Confirmation Order in lieu of a legal opinion regarding whether any of the Reorganized EFH Common Stock is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

105.   Notwithstanding anything to the contrary in the Plan, no entity (including, for the avoidance of doubt, the DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the Reorganized EFH Common Stock is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

**T.     Section 1146 Exemption.**

106.   Pursuant to, and to the fullest extent permitted by, section 1146 of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with, the Plan,

54

including, but not limited to: (1) the Restructuring Transactions; (2) the Reorganized EFH Common Stock; (3) the New HoldCo Equity Interests; (4) the assignment or surrender of any lease or sublease; and (5) the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the EFH Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

## U.    Professional Compensation and Reimbursement Claims.

107.    Except as otherwise specifically provided in the Plan, from and after the EFH Effective Date, the EFH Plan Administrator Board shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Bankruptcy Court, pay in Cash from the EFH/EFIH Cash Distribution Account the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan incurred on or after the EFH Effective Date by (i) the EFH/EFIH Debtors or the Reorganized EFH/EFIH Debtors, in the manner prescribed by the allocation set forth in Article II.A.2(d) of the Plan and (ii) the EFH/EFIH Committee.

108.    Upon the EFH Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered to the EFH Plan Administrator Board, the Reorganized EFH Debtors, or the Reorganized EFIH Debtors after such date shall terminate, subject only to the

55

procedures set forth in the Interim Compensation Order, and the EFH Plan Administrator Board, the Reorganized EFH Debtors, and the Reorganized EFIH Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, the EFH/EFIH Debtors, the EFH Plan Administrator Board, and the Reorganized EFH/EFIH Debtors (as applicable) are authorized to pay any and all professional fees as contemplated by and in accordance with the Plan, and the EFIH First Lien Final DIP Order; *provided*, *however*, that, for the avoidance of doubt, the Reorganized EFH Debtors and the Reorganized EFIH Debtors shall not be liable or otherwise responsible for the payment of any Professional Fee Claims.

109.    With respect to the payment of fees and expenses pursuant to Article IV.N. of the Plan asserted by the EFH Notes Trustee, the Court has found the EFH Notes Trustee to have made, in accordance with sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code, a substantial contribution in these cases, as set forth in the Confirmation Ruling (the "EFH Notes Trustee's Substantial Contribution Finding") and are hereby granted an Allowed Administrative Claim against EFH Corp., pursuant to sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code, for fees and expenses (including fees and expenses for legal counsel, financial advisors, consultants and other professionals) incurred through the EFH Effective Date in connection with the EFH Notes Trustee's Substantial Contribution Finding and that may be incurred in connection with the EFH Notes Trustee fulfilling its continuing obligations under the Plan, this Confirmation Order and any other order that may be entered by the Bankruptcy Court in connection therewith.  The Court also finds that the Supporting Creditors (as defined in the Sempra Plan Support Agreement) have made, in accordance with sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code, a substantial

56

contribution in these cases, as set forth in the Confirmation Ruling (the "Supporting Creditors' Substantial Contribution Finding"), and are hereby granted an Allowed Administrative Claim against EFIH, pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, in an aggregate amount of up to $35 million for fees and expenses (including fees and expenses for legal counsel, financial advisors, consultants and other professionals) incurred in connection with the Supporting Creditors' Substantial Contribution Finding and that may be incurred in connection with the Debtors' chapter 11 cases, which shall be payable to the Supporting Creditors in accordance with the procedures set forth in paragraphs 111 through 115 below; *provided*, that such grant of an Allowed Administrative Claim against EFIH is without prejudice to (a) the reallocation of such Allowed Administrative Claim as between EFH and EFIH pursuant to separate order of the Bankruptcy Court, or a stipulation between the Supporting Creditors and the applicable agents of the EFH Plan Administrator Board, or (b) the rights of the Supporting Creditors to seek entry of any such Order.  Notwithstanding anything in the Plan contrary, the EFH Notes Trustee's and the Supporting Creditors' Administrative Claims shall be limited to claims allowed under sections 503(b)(3)(D), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

110.    The Allowed Administrative Claim granted herein in favor of the Supporting Creditors shall be without prejudice to the Supporting Creditors' rights to later apply to this Court for allowance and payment of additional amounts as an administrative expense under sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code in connection with any fees and expenses (including fees and expenses for legal counsel, financial advisors, consultants and other professionals) incurred by Supporting Creditors from and after the EFH Confirmation Date (including after the EFH Effective Date) in making a substantial contribution in these cases,

57

which shall be payable to the Supporting Creditors in accordance with the procedures set forth in paragraphs 111 through 115 below. All parties' rights are reserved with respect to any such application filed by the Supporting Creditors, and any such additional substantial contribution application shall not be subject to the deadlines set forth in the Plan or EFH Confirmation Order with respect to requests for allowance or payment of Administrative Claims or Professional Fee Claims.

111.    The EFH Notes Trustee and the Supporting Creditors shall submit to the Debtors or the EFH Plan Administrator Board, as applicable, one or more short-form invoices setting forth such amounts and the period(s) during which such amounts were incurred and the parties to be paid (each such party, a "Requesting Party") on behalf of the EFH Notes Trustee and Supporting Creditors, as applicable. No later than the later of five business days after the Debtors' or EFH Plan Administrator Board's receipt of each such short-form invoice or the EFH Effective Date, the Debtors or EFH Plan Administrator Board, as applicable, shall pay to the applicable Requesting Party 80% of the requested fees and 100% of the requested expenses, which amounts shall be subject to disgorgement if and to the extent the Court determines that such requested fees and expenses are not reasonable.

112.    Within 45 days of receipt of payment, the applicable Requesting Party shall submit full invoices and LEDES data (a "Fee Request") to the Debtors, the EFH Plan Administrator Board, the U.S. Trustee, and the Fee Committee appointed in these Chapter 11 Cases (the "Fee Committee") in LEDES format (or, in the absence thereof, such other format as is mutually agreed among the applicable Requesting Party, the Debtors (or the EFH Plan Administrator Board, as applicable), the U.S. Trustee, and the Fee Committee).

58

113.   Following the Fee Committee's receipt of a Fee Request, within reasonable time periods, to be determined either by the Fee Committee and the relevant professionals or by the Court:

- (i) the Fee Committee shall send a confidential letter to the applicable Requesting Party regarding the Fee Committee's initial report and recommendation with respect to the applicable Fee Request;

- (ii) (a) the Fee Committee shall file with the Court a final report and recommendation ("Fee Committee Recommendation") with respect to such Fee Request and (b) the U.S. Trustee shall file with the Court any objection or comments it may have with respect to such Fee Request ("U.S. Trustee Objection");

- (iii) the applicable Requesting Party may file with the Court a response ("Fee Response") to such Fee Committee Recommendation or U.S. Trustee Objection; and

- (iv) the Court shall consider each Fee Request at the next omnibus hearing or at a scheduled Fee Committee hearing on Retained Professional fee applications.

114.   No later than the later of the EFH Effective Date and 10 days following the Court's ruling with respect to a Fee Request, the EFH Plan Administrator Board shall pay to the Requesting Party any unpaid amounts with respect to such Fee Request as ordered by the Court (any such unpaid amount, the "Holdback"), or the Requesting Party shall disgorge to the EFH Plan Administrator Board such amounts ordered by the Court, as applicable, with any such disgorged amounts distributed by the EFH Plan Administrator Board in accordance with the Plan.   For the avoidance of doubt, the Fee Committee, the Bankruptcy Court, and the U.S. Trustee reserve all rights to determine whether the requested fees and expenses were actually incurred in compliance with the EFH Notes Trustee's Substantial Contribution and the Supporting Creditors' Substantial Contribution, as applicable.   To the extent any such requested fees and expenses are determined by Bankruptcy Court order to have not been incurred in compliance with the EFH Notes Trustee's Substantial Contribution Finding and the Supporting Creditors' Substantial Finding, they shall first be deducted from the Holdback and then, as

applicable, be disgorged from the amounts distributed by the EFH Plan Administrator Board to EFH Notes Trustee or the Supporting Creditors, as applicable.

115. For the avoidance of doubt, the Requesting Parties and the Fee Requests shall not be required to comply with (a) The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or other orders in these Cases with respect to fee applications, including the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896], or (b) *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases*, 78 Fed. Reg. No 116, page 36248 (June 17, 2013).

116. On the EFH Effective Date, the EFH Plan Administrator Board shall reserve $38,000,000.00 in the EFH/EFIH Cash Distribution Account into a segregated, interest-bearing account, which amounts shall be held, used, and applied by the EFH Plan Administrator Board for the payment of Allowed Administrative Claims of the Supporting Creditors under sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code in accordance with paragraphs 111 through 115 above. Any Allowed Administrative Claims of the EFH Notes Trustee under sections 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code shall be paid in accordance with paragraphs 111 through 115 above solely from funds in the EFH Cash Account (which, for the avoidance of doubt, shall be set forth in the EFH/EFIH Cash Distribution Account) in accordance with the Plan.

## V.    Nonseverability of Plan Provisions upon EFH Confirmation.

117. Each term and provision of the Plan, including the EFH Plan Supplement and all exhibits and schedules thereto and all other documents filed in connection with the Plan, or executed or to be executed in connection with transactions contemplated by the Plan and the Merger Agreement and all amendments and modifications of any of the foregoing made pursuant

to the provisions of the Plan governing such amendments and modifications are: (a) valid and enforceable pursuant to their terms; (b) integral to the Plan and may not be deleted or modified without the EFH/EFIH Debtors' or Reorganized EFH/EFIH Debtors' consent, as applicable; and (c) nonseverable and mutually dependent.

**W.      Waiver or Estoppel.**

118.      Each Holder of a Claim or Interest in Classes A1 through A15 and Classes B1 through B10 shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the EFH Disclosure Statement, or papers filed with the Court before the EFH Confirmation Date.

**X.      Authorization to Consummate.**

119.      The Debtors are authorized to consummate the Plan at any time after the entry of the EFH Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX.B and Article IX.D of the Plan. The substantial consummation of the Plan, within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code, is deemed to occur on the first date, on or after the EFH Effective Date, on which any distributions are made in accordance with the terms of the Plan to Holders of any Allowed Claims against the EFH Debtors or the EFIH Debtors.

**Y.      Treatment of Executory Contracts and Unexpired Leases.**

120.      The assumption of the Executory Contracts and Unexpired Leases set forth on Exhibit B of the EFH Plan Supplement and the rejection of the Executory Contracts and Unexpired Leases set forth on Exhibit C of the EFH Plan Supplement, in each case subject to the Separation Agreement as applicable, are hereby authorized.

121.    Unless otherwise agreed, the EFH/EFIH Debtors will not assume, cure, or otherwise treat any contract pursuant to this EFH Confirmation Order that is the subject of (a) an outstanding objection to a proposed assumption or cure amount (an "Assumption Objection") at the time of entry of this EFH Confirmation Order (if any); or (b) certain outstanding orders extending the deadline by which the Debtors may make a determination as to whether to assume or reject a lease (the "Deadline Extension Orders").[4]  All outstanding Assumption Objections, if any, will be heard at the omnibus hearing scheduled for March 28, 2018, at 2:00 p.m. (prevailing Eastern Time), or another hearing that is convenient to the Court.  Unless otherwise agreed, the EFH/EFIH Debtors will not assume any contract that is the subject of an Assumption Objection until the Assumption Objection has been consensually resolved or the Court has made a determination on the Assumption Objection.

## Z.    AppLabs.

122.    To the extent any of the Reorganized Debtors (to which this EFH Confirmation Order relates) asserts any Claim or Causes of Action retained pursuant to the Plan (the "Retained Actions") against AppLabs Technologies Pvt Ltd. ("AppLabs"), nothing in the Plan, the EFH Confirmation Order or the Bankruptcy Code shall preclude AppLabs' exercise of any valid setoff rights or recoupment rights (if any) in connection with such Reorganized Debtors' assertion of any Retained Actions, and AppLabs' setoff and recoupment rights (if any) are explicitly preserved.

---

[4]    The Deadline Extension Orders comprise the following: *Order Further Extending the Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 4458]; *Order Further Extending the Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 6908]; *Order Further Extending Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [D.I. 8504]; and the *Order Extending Deadline to Assume or Reject a Certain Non-Residential Real Property Lease* [D.I. 9379].

**AA.    EFH/EFIH Committee Provisions**.

123.    On the EFH Effective Date, any statutory committee appointed in the Chapter 11 Cases with respect to the EFH Debtors or the EFIH Debtors (including the EFH/EFIH Committee) shall dissolve; *provided, however*, that following the EFH Effective Date, the EFH/EFIH Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (i) Claims and/or applications, and any relief related thereto, for compensation by professionals and requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; (ii) appeals of the EFH Confirmation Order as to which the EFH/EFIH Committee is a party; (iii) any matters relating to the *Order Amending Stipulation and Order Appointing Fee Committee and Granting Related Relief* [D.I. 12552]; and (iv) any matters, including any appeals, relating to adversary proceeding Case No. 17-50942 (CSS) and NextEra's request for the allowance or payment of any related Administrative Claims (collectively, the "Limited Purposes"). The EFH/EFIH Committee shall use reasonable efforts to minimize its participation in the Chapter 11 Cases and avoid duplication of services in connection with the Limited Purposes. Upon dissolution of the EFH/EFIH Committee, the members thereof and their respective officers, employees, counsel, advisors, and agents shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The Reorganized EFH/EFIH Debtors shall not be liable or otherwise responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees (including the EFH/EFIH Committee). Any such reasonable and documented fees and expenses incurred in connection with the Limited Purposes after the EFH Effective Date shall be paid from the EFH/EFIH Cash Distribution Account.

**BB.    Good Faith Protections.**

124.    Sempra Energy ("Sempra") and its affiliates are good faith purchasers within the meaning of section 363(m) of the Bankruptcy Code, and are therefore entitled to, and are hereby granted, the full rights, benefits, privileges and protections afforded to good faith purchasers under the Bankruptcy Code, including section 363(m) of the Bankruptcy Code.

125.    The purchase price to be provided by Sempra pursuant to the Merger Agreement was not controlled by any agreement between Sempra or its affiliates, on the one hand, and any potential bidders, on the other hand, and was not reduced or suppressed in any manner by any arrangement involving Sempra or its affiliates, on the one hand, and any creditor, on the other hand.

**CC.    Indenture Trustee.**

126.    Any and all distributions made by the Debtors or the Disbursing Agent on account of (a) the EFH Note Claims shall be made to the EFH Notes Trustee, (b) the EFIH Unsecured Note Claims shall be made to the EFIH Unsecured Notes Trustee, (c) the EFIH First Lien Note Claims shall be made to the EFIH First Lien Notes Trustee, and (d) the EFIH Second Lien Note Claims shall be made to the EFIH Second Lien Notes Trustee.  As set forth in Article IV.I of the Plan, each Trustee shall be entitled to exercise its charging lien against any and all distributions it receives from the Debtors or the Disbursing Agent, including retention of appropriate reserves in accordance with the terms of the applicable Indentures (and apply any charged amounts in accordance with the terms of such applicable Indenture).

127.    Solely in the event there are sufficient amounts in the EFH/EFIH Cash Distribution Account to provide a 100% recovery to Holders of Allowed Class B5 Claims and Holders of Allowed Class B6 Claims (on account of the Allowed EFIH General Unsecured Claim), after first satisfying (a) the Allowed EFIH First Lien Claims and Allowed EFIH Second

64

Lien Claims in full, in Cash; and (b) other Administrative Claims of the EFIH Debtors (including the EFH Professional Fee Account); then, in addition to the Allowed EFIH General Unsecured Claim, the EFIH Unsecured Notes Trustee shall be entitled to seek payment of all or a portion of the reasonable, documented, and unpaid EFIH Unsecured Notes Trustee Fees and Expenses.

**DD.    Administration of the EFH/EFIH Cash Distribution Account**.

128.    The EFH/EFIH Cash Distribution Account (which may consist of one or more interest-bearing escrow accounts, designated by EFH Corp. prior to the EFH Effective Date) shall be established on the EFH Effective Date.  Distributions from the EFH/EFIH Cash Distribution Account shall be in accordance with the Plan, this EFH Confirmation Order, the EFIH Secureds Settlement Approval Order, as applicable, provided that in all instances such distributions shall be consistent with Article VI.A. of the Plan as approved pursuant to the Confirmation Order.  The Reorganized EFH/EFIH Debtors shall have no liability in respect of Claims asserted against the EFH Debtors or Claims asserted against the EFIH Debtors, which shall be payable solely from the EFH/EFIH Cash Distribution Account pursuant to, and in accordance with, the Plan, and this EFH Confirmation Order.

**EE.    No Continuing Makewhole Claim Liability.**

129.    The limitations on liability set forth in the next paragraph below shall not apply to the EFH/EFIH Cash Distribution Account, as established on the EFH Effective Date.  Nothing in the next paragraph impairs, modifies, or otherwise affects the ability of Holders of Allowed Claims to receive distributions pursuant to the Plan, the EFH Confirmation Order, and the EFIH Secureds Settlement Approval Order on account of such Allowed Claims.

130.    Notwithstanding anything to the contrary in this EFH Confirmation Order, the Plan, the Merger Agreement, the EFIH Settlement Agreement, the EFIH Secureds Settlement Approval Order, or any related agreements or otherwise (including any provisions anywhere that

65

also include the words "notwithstanding anything to the contrary" or similar references), none of (i) the Plan Sponsor; (ii) Merger Sub; (iii) the EFH Debtors; (iv) the Reorganized EFH Debtors; (v) the EFIH Debtors; (vi) Reorganized EFIH; (vii) any other entity acquired, directly or indirectly, by the Plan Sponsor pursuant to the terms of, or as a result of, the Plan, the Merger Agreement, or any related agreement; or (viii) with respect to each of the foregoing Entities in clauses (i) through (vii), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, shall have or incur any liability whatsoever in connection with or as a result of any Makewhole Claim being Allowed, including pursuant to the EFIH Secureds Settlement Approval Order.

## FF.    Dissolution of Subsidiaries.

131.    To the extent not already disposed of, wound down, or liquidated in accordance with applicable law, all EFH/EFIH Debtors, excluding: (a) EFH Corp.; (b) EFIH; (c) LSGT Gas Company LLC; (d) EECI, Inc., (e) EEC Holdings, Inc.; (f) LSGT SACROC, Inc.; (g) EFH FS Holdings Co., (h) EFH Finance (No. 2) Holdings Co. and (i) Ebasco Services of Canada, Ltd., are deemed dissolved, effective on the Effective Date, without any further court or corporate action, including the filing of any documents with the Secretary of State for any state in which any such subsidiary is incorporated or any other jurisdiction. On the Effective Date, all of (i) EFH Corp.'s interests in (a) EFH FS Holdings Co. shall be deemed to be transferred, for no consideration, from EFH Corp. to EFH FS Holdings Co. and immediately cancelled, and (b)

66

EFH Finance (No. 2) Holdings Co. shall be deemed to be transferred, for no consideration, from EFH Corp. to EFH Finance (No. 2) Holdings Co. and immediately cancelled, and EFH Corp. shall have no further ownership interest in, or obligations with respect to EFH FS Holdings Co., EFH Finance (No. 2) Holdings Co. or any of their respective assets, liabilities or subsidiaries, and (ii) EEC Holdings, Inc.'s interests in Ebasco Services of Canada shall be deemed to be transferred, for no consideration, from EEC Holdings, Inc. to Ebasco Services of Canada and immediately cancelled, and EEC Holdings, Inc. shall have no further ownership interest in, or obligations with respect to Ebasco Services of Canada or any of its assets, liabilities or subsidiaries. Immediately following the cancellation of (i) EFH Corp's interests in EFH FS Holdings Co. and EFH Finance (No. 2) Holdings Co. and (ii) EEC Holdings, Inc.'s interests in Ebasco Services of Canada, any equity interests held by EFH FS Holdings Co., EFH Finance (No. 2) Holdings Co. and Ebasco Services of Canada shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code. On the EFH Effective Date, equity interests in EFH Non-Debtors, including, for the avoidance of doubt, EFH Non-Debtor Humphreys & Glasgow Limited, but excluding EFH Non-Debtor EFH Vermont Insurance Company, shall be abandoned pursuant to section 554 of the Bankruptcy Code and the EFH/EFIH Debtors shall have no further ownership interest in, or obligations with respect to such EFH Non-Debtors or any of their respective assets, liabilities or subsidiaries. For the avoidance of doubt, equity interests in EFH Non-Debtor EFH Vermont Insurance Company are not deemed to be abandoned and shall remain outstanding.

132.    For the avoidance of doubt, none of (i) the Plan Sponsor; (ii) Merger Sub; (iii) the EFH Debtors; (iv) the Reorganized EFH Debtors; (v) EFIH; (vi) Reorganized EFIH; (vii) any other entity acquired, directly or indirectly, by the Plan Sponsor pursuant to the terms of, or as a

67

result of, this EFH Confirmation Order, the Plan, the Merger Agreement, or any related agreement; or (viii) with respect to each of the foregoing Entities in clauses (i) through (vii), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, shall have or incur any liability whatsoever in connection with or as a result of the dissolution, wind-down, disposition, or liquidation of any entity, or the cancellation and abandonment of the equity interests in any entity, in accordance with the terms of this EFH Confirmation Order and the Plan, including, for the avoidance of doubt, the liquidation of EFCH and TCEH in accordance with Article IV.B.6 of the Plan.

## GG.   Claims Objection Deadline.

133.   Except as otherwise set forth in the Plan or this EFH Confirmation Order, the deadline for filing an objection to a Claim shall be the later of (a) the date that is 180 days after the EFH Effective Date and (b) such other date as may be fixed by the Court, after notice and hearing, upon a motion Filed before the expiration of the deadline to object to Claims. Notwithstanding the foregoing or Article VII of the Plan, if no objection has been Filed with respect to a timely filed Class A3 Claim on or before the applicable Claims Objection Deadline, such Claim shall be deemed Allowed solely for purposes of Reinstating such Claim as provided in Article III.B.3 of the Plan (which provides that the legal, equitable, and contractual rights, if any, to which such Claim entitles the Holder of such Claim shall be left unaltered by the Plan). Such Claim shall otherwise be deemed disputed unless otherwise ordered by a court of

competent jurisdiction or agreed in writing by and among the Holder of such Claim, on the one hand, and the applicable Reorganized Debtor and the Plan Sponsor, on the other hand, and the failure to File with the Court an objection with respect to such Claim by the Claim Objection Deadline shall not (a) affect the validity of such Claim, including the asserted amount thereof, or affect the liability, if any, of the Debtors, the Reorganized Debtors or any other Entity with respect to such Claim, (b) be or be deemed to be an admission of liability by any Entity with respect to such Claim, or (c) prejudice, impair, alter or otherwise affect the Debtors', Reorganized Debtors' or any other Entity's rights, including any defenses, in law or in equity, in respect of such Claims. The existence of Disputed Class A3 Claims on the Claims Register shall not, standing alone, serve as a sufficient basis to delay closing of the Chapter 11 Cases.

**HH.     EFH Plan Administrator Board and Disbursing Agent.**

134.    On or before the EFH Effective Date, the EFH/EFIH Debtors shall create a trust (the "EFH Plan Administration Trust") pursuant to the EFH Plan Administration Trust Agreement, which shall govern the rights and duties of the EFH Plan Administration Board with respect to the EFH Plan Administration Trust consistent with the Plan. The primary purpose of the EFH Plan Administration Trust shall be acting as Disbursing Agent under the Plan, administering the EFH/EFIH Cash Distribution Account consistent with the Plan, liquidating or otherwise resolving Claims that may be entitled to distributions from the EFH/EFIH Cash Distribution Account, and pursuing and resolving, in the EFH Plan Administration Board's discretion, Causes of Action the EFH Plan Administration Board is permitted to pursue and settle under the Plan.

135.    The EFH Plan Administration Board shall serve as the trustee of the EFH Plan Administration Trust and actions taken by the EFH Plan Administration Board pursuant to the

69

Plan and the EFH Plan Administration Trust Agreement shall be on behalf of the EFH Plan Administration Trust.

## II.    Assumption of Oracle Agreements.

136.    Notwithstanding anything to the contrary in the Plan, this EFH Confirmation Order, or the Transition Services Agreement entered into in connection with the TCEH Confirmed Plan, no shared use, license splitting, or other unauthorized use of any Oracle America, Inc. ("Oracle") license and services agreement will be allowed post-confirmation absent Oracle's express prior written consent.

## JJ.    EFH Non-Qualified Benefit Plans

137.    The EFH Non-Qualified Benefit Plans shall be terminated on or before the EFH Effective Date, and any Allowed Claims arising from the termination of such EFH Non-Qualified Benefit Plans shall be treated in accordance with Article III.B.8 of the Plan on the EFH Effective Date. The EFH Split-Dollar Plan shall be terminated on or before the EFH Effective Date, and any amounts payable to the EFH Debtors on account of such termination shall be paid to the EFH Debtors or Reorganized EFH, as applicable.

## KK.    Environmental Law.

138.    Nothing in the Plan or the EFH Confirmation Order shall release, discharge, or preclude the enforcement of, (or preclude, release, defeat, or limit the defense under non-bankruptcy law of): (i) any liability under Environmental Law to a Governmental Unit that is not a Claim; (ii) any Claim under Environmental Law of a Governmental Unit arising on or after the EFH Effective Date; (iii) any liability under Environmental Law to a Governmental Unit on the part of any Entity to the extent of such Entity's liability under non-bankruptcy law on account of its status as owner or operator of such property after the EFH Effective Date; (iv) any liability to a Governmental Unit on the part of any Entity other than the EFH/EFIH Debtors or the

70

Reorganized EFH/EFIH Debtors; or (v) any valid right of setoff or recoupment by any Governmental Unit. All parties' rights and defenses under Environmental Law with respect to (i) through (v) above are fully preserved. For the avoidance of doubt, the United States is not a Releasing Party under the Plan.

139.    Nothing in the Plan or this EFH Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding paragraph. Nothing in the Plan or this EFH Confirmation Order authorizes: (i) the transfer or assignment of any governmental license, permit, registration, authorization, or approval, or (ii) the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under Environmental Law. The Bankruptcy Court retains jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities asserted by any Governmental Unit are discharged or otherwise barred by this EFH Confirmation Order or the Plan, or the Bankruptcy Code.

140.    For the avoidance of doubt, all Claims under Environmental Law arising before the EFH Effective Date, including penalty claims for days of violation prior to the EFH Effective Date, shall be subject to Article VIII of the Plan and treated in accordance with the Plan in all respects and the Bankruptcy Court shall retain jurisdiction as provided in Article XI of the Plan in relation to the allowance or disallowance of any Claim under Environmental Law arising before the EFH Effective Date.

141.    Without limiting the Bankruptcy Court's jurisdiction as set forth above, nothing in the Plan or this EFH Confirmation Order shall divest or limit the jurisdiction of other tribunals over the Environmental Action, and upon the EFH Effective Date, the Environmental Action shall survive the Chapter 11 Cases and may be adjudicated in the court or tribunal in which such

Environmental Action is currently pending; *provided, further, however*, any judgment for a Claim in the Environmental Action arising before the EFH Effective Date shall be treated in accordance with the TCEH Confirmed Plan in all respects; *provided, further, however*, that nothing in the Plan shall preclude, release, defeat, or limit any grounds for asserting or opposing an alleged defense or affirmative defense under non-bankruptcy law in the Environmental Action based on any change in ownership, and all such grounds for asserting or opposing such defenses and affirmative defenses under non-bankruptcy law are expressly preserved; *provided, further, however*, that nothing in the Plan or the EFH Confirmation Order shall prevent the Debtors or any other parties in interest from seeking to estimate Claims against the Debtors arising in connection with the Environmental Action.  With respect to the Environmental Action, Article VIII.H of the Plan does not alter any rights or defenses under non-bankruptcy law arising as a result of any changes of ownership provided in the Plan or the EFH Confirmation Order. The Governmental Units reserve all rights as to whether there are any such rights or defenses.

**LL.     Certain IRS Matters.**

142.     Nothing in the Plan (or subsequently amended Plan) or this EFH Confirmation Order shall be deemed to waive the right of the IRS or the U.S. (a) to object to confirmation of a subsequently amended Plan, or an alternative chapter 11 plan, or (b) to seek prior to the EFH Effective Date of the Plan reconsideration of this EFH Confirmation Order and/or a stay of the EFH Effective Date of the Plan to the extent the IRS would be entitled to seek reconsideration or a stay based on a determination by the IRS that the PLR or Supplemental Ruling is not valid, is no longer applicable to the Restructuring Transactions, or other issues not addressed by the PLR or Supplemental Ruling would bring the tax-free nature of the Restructuring Transactions into doubt.  The rights of the Debtors and other parties in interest to oppose any such objection or such request to reconsider the EFH Confirmation Order or stay the EFH Effective Date are

72

preserved; *provided* that such opposition may not be on the grounds of failure of the IRS to file an earlier objection, equitable mootness, laches, estoppel, or a similar theory.

143.    Nothing in the Plan (or subsequently amended Plan) or this EFH Confirmation Order shall affect the rights of the IRS or the U.S. to assess or collect (as permitted under applicable law), on or after the Confirmation Date, a tax for a taxable year (or period) ending on or after the Petition Date and before the EFH Effective Date of the Plan, against EFH, any member (or former member) of its consolidated group, Reorganized EFH and/or any successor entities; *provided,* that nothing about this paragraph shall expand or limit the rights or obligations of the IRS, the U.S., EFH, any member (or former member) of its consolidated group, Reorganized EFH and/or any successor entities under any non-plan provision of applicable law, including, but not limited to, with respect to Section 505 of the Bankruptcy Code (to the extent applicable) and any other applicable limitations or requirements (if any) with respect to administrative tax claims.

**MM.   ERCOT.**

144.    Nothing contained in this EFH Confirmation Order or in the Plan shall impair, modify, or otherwise affect the relief granted in the TCEH Confirmation Order with respect to the TCEH Debtors, the EFH Shared Services Debtors, the Reorganized TCEH Debtors, and the Reorganized EFH Shared Services Debtors with respect to the Electric Reliability Council of Texas, Inc. ("ERCOT").

**NN.   Insurance.**

145.    Nothing in the Plan or this EFH Confirmation Order is intended to decide or resolve any issues related to insurance coverage of Claims.

73

## OO.    Successors and Assigns.

146.    Except as otherwise provided herein, or in the Plan, the rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

## PP.    D&O Insurance Policy.

147.    With respect to any D&O Insurance (as defined in the Merger Agreement and effective as of the Effective Time) that EFH has obtained in accordance with Section 6.8 of the Merger Agreement and for which EFH has fully paid the run-off premium on or prior to the Effective Time, any refunds by the applicable insurer in connection with such D&O Insurance that are paid to Reorganized EFH shall be refunded by Reorganized EFH to Vistra Energy as promptly as practicable to such account to be designated by Vistra Energy.

## QQ.    EFIH First Lien Post-Effective Date Fee and Indemnification Reserve and EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve.

148.    Notwithstanding anything to the contrary contained in the Plan, the EFIH Secureds Settlement Approval Order, or the EFIH Settlement Agreement, on the EFH Effective Date, the EFH Plan Administrator Board shall fund the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve by paying the amount of $100,000.00 to the EFIH First Lien Notes Trustee, as provided in the EFIH Secureds Settlement Approval Order (as the same may be modified hereby).  The EFIH First Lien Post-Effective Date Fee and Indemnification Reserve shall be held, used, and applied by the EFIH First Lien Notes Trustee or the First Lien Escrow Agent (as defined below), as applicable, as provided by the EFIH Secureds Settlement Approval Order, the EFIH Settlement Agreement, and that certain Escrow Agreement by and between EFIH, the EFIH First Lien Notes Trustee, and Delaware Trust Company, as escrow agent (the

74

"First Lien Escrow Agent"), dated as of the EFH Effective Date (the "EFIH First Lien Escrow Agreement"). In the event of any inconsistency between the EFIH First Lien Escrow Agreement, on the one hand, and the EFIH Secureds Settlement Approval Order and the EFIH Settlement Agreement, on the other, with respect to the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve, the EFIH First Lien Escrow Agreement shall control. The EFIH First Lien Notes Trustee and First Lien Escrow Agent, as applicable, shall have no obligation to invest any funds which are held and not applied. The Debtors are hereby authorized to enter the EFIH First Lien Escrow Agreement. In addition to funding the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve as provided in this Paragraph of this Order, the EFH Plan Administrator Board shall, on or as soon as reasonably practicable after the EFH Effective Date, pay in full in Cash all EFIH First Lien Pre-Effective Date Fees (as defined in the EFIH Settlement Agreement) and all other Allowed EFIH First Lien Claims accruing before the EFH Effective Date not previously paid.

149. On the EFH Effective Date, and except as otherwise agreed by the EFIH Second Lien Notes Trustee, the EFH/EFIH Debtors or the EFH Plan Administrator Board (as applicable), and the Supporting Creditors, and approved by the Bankruptcy Court, (1) the EFH Plan Administrator Board shall fund the EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve, by paying the amount of $2,000,000.00 to the EFIH Second Lien Notes Trustee, as provided in the EFIH Secureds Settlement Approval Order; and (2) the EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve shall be held, used, and applied by the EFIH Second Lien Notes Trustee, as provided by the EFIH Secureds Settlement Approval Order. The EFIH Second Lien Notes Trustee shall have no obligation to invest any funds which are held

75

and not applied, nor any obligation to turn over any interest or other earnings in connection with the deposit or investment of such funds.

**RR.    The NEE Plan Reserve**.

150.    The EFH Plan Administrator Board shall fund a segregated escrow account maintained at Citibank, N.A., (the "NEE Plan Reserve"), with the requisite form of escrow agreement to be negotiated in good faith between NEE, the EFH/EFIH Debtors, and the Supporting Creditors (and reasonably acceptable to the EFH/EFIH Committee, the EFIH Unsecured Notes Trustee and EFH Notes Trustee), in the amount of $275,000,000.00 (the "NEE Plan Reserve Amount") within ten business days following the later of: (a) the EFH Effective Date, and (b) entry of an order by the Bankruptcy Court allocating the funding of the NEE Plan Reserve Amount as between EFH Corp. and EFIH (the "NEE Allocation Order"); *provided, however*, that under no circumstances shall EFH Corp.'s ultimate share of the NEE Plan Reserve Amount include the Cash available at EFH Corp. as of the EFH Effective Date necessary to satisfy all Allowed Administrative Claims against the EFH Debtors and Allowed Priority Claims against the EFH Debtors, in full, in Cash; *provided, further*, that notwithstanding the foregoing, in no event shall the EFH Plan Administrator Board fund the NEE Plan Reserve in an amount less than $275,000,000.00

151.    After (a) payment in full of all 2017 EFIH First Lien DIP Claims, Allowed EFIH First Lien Claims, and Allowed EFIH Second Lien Claims (in the case of the Allowed EFIH First Lien Claims and Allowed EFIH Second Lien Claims, accruing before the EFH Effective Date and not previously paid) and (b) the funding of the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve (in the amount set forth in paragraph 148 above) and EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve (which transactions are contemplated to occur on the EFH Effective Date):

- (1) *Distributions to Holders of Allowed Class B5 and Class B6 Claims.* The EFH Plan Administrator Board shall make a partial Plan distribution to Holders of Allowed Claims in Classes B5 and B6 within five business days following the EFH Effective Date, and which distribution, for the avoidance of doubt, may be made prior to entry of the NEE Allocation Order or entry of an order allocating all other material Claims as between EFH and EFIH (such other order or orders, to the extent not set forth in the NEE Allocation Order, the "Material Allocation Orders");[5] *provided, however*, that such distribution shall not (X) include a distribution from the NEE Plan Reserve and shall not impair the EFH/EFIH Debtors' obligation to fund the NEE Plan Reserve in the amount of $275 million; (Y) include a distribution of funds attributable to any material Claims asserted by EFH against EFIH settled pursuant to a Material Allocation Order or that are the subject of negotiation or litigation between EFH and EFIH; and (Z) include the Cash available at EFIH as of the EFH Effective Date necessary to satisfy all Allowed Administrative Claims against EFIH and Allowed Priority Claims against EFIH, in full, in Cash.

  - (A). Following entry of the NEE Allocation Order, the EFH Plan Administrator Board, in consultation with the Supporting Creditors, the EFIH Unsecured Notes Trustee, and the EFH/EFIH Committee in accordance with the EFH Plan Administrator Trust Agreement, the Plan, and this EFH Confirmation Order, shall make a partial Plan distribution (a) in accordance with the NEE Allocation Order and any entered Material Allocation Orders (after the expiration of any applicable appeals period) and (b) after consideration of the allocation of any other material Claims that are the subject of negotiation or litigation between EFH and EFIH; *provided, however*, that such distribution shall not (1) include a distribution from the NEE Plan Reserve and shall not impair the EFH/EFIH Debtors' obligation to fund the NEE Plan Reserve in the amount of $275,000,000; (2) include a distribution of funds attributable to any material Claims asserted by EFH against EFIH settled pursuant to a Material Allocation Order or subject to negotiation or litigation between EFH and EFIH; and (3) include the Cash available at EFIH as of the EFH Effective Date necessary to satisfy all Allowed Administrative Claims against EFIH and Allowed Priority Claims against EFIH, in full, in Cash.

- (2) *Distributions to Holders of Allowed Claims in Classes A4-A11*. Upon three business days' notice to counsel for the EFIH Unsecured Notes Trustee and the Supporting Creditors, the EFH Plan Administrator Board, in consultation with the Supporting Creditors, the EFH/EFIH Committee, and the EFH Notes Trustee, may make a partial Plan distribution to Holders of Allowed Claims in Classes A4-A11 prior to entry of the NEE Allocation Order or any Material Allocation Order; *provided, however*, that the EFH Plan

---

[5]   For the avoidance of doubt, "material Claims as between EFH and EFIH" does not include any post-EFH Effective Date claims between the Reorganized EFH Debtors and Reorganized EFIH Debtors.

77

Administrator shall not be obligated to make any Plan distributions to such Holders until after entry of the NEE Allocation Order and satisfaction of the terms set forth in the NEE Allocation Order; *provided, further, however* that such distribution shall not (A) include a distribution from the NEE Plan Reserve and shall not impair the EFH/EFIH Debtors' obligation to fund the NEE Plan Reserve in the amount of $275,000,000; (B) include a distribution of funds attributable to any material Claims asserted by EFIH against EFH settled pursuant to a Material Allocation Order or subject to negotiation or litigation between EFH and EFIH; and (C) include the Cash available at EFH Corp. as of the EFH Effective Date necessary to satisfy all Allowed Administrative Claims against the EFH Debtors and Allowed Priority Claims against the EFH Debtors, in full, in Cash.

- (A). Following entry of the NEE Allocation Order, the EFH Plan Administrator Board, in consultation with the Supporting Creditors, the EFH/EFIH Committee, and the EFH Notes Trustee, in accordance with the EFH Plan Administrator Trust Agreement, the Plan, and this EFH Confirmation Order, and upon three business days' notice to the EFIH Unsecured Notes Trustee, shall make a partial Plan distribution (a) in accordance with the NEE Allocation Order and any entered Material Allocation Orders (after the expiration of any applicable appeals period) and (b) after consideration of the allocation of any other material Claims that are the subject of negotiation or litigation between EFH and EFIH; *provided, however*, that such distribution shall not (1) include a distribution from the NEE Plan Reserve and shall not impair the EFH/EFIH Debtors' obligation to fund the NEE Plan Reserve in the amount of $275,000,000; (2) include a distribution of funds attributable to any material Claims asserted by EFIH against EFH settled pursuant to a Material Allocation Order or subject to negotiation or litigation between EFH and EFIH; and (3) include the Cash available at EFH Corp. as of the EFH Effective Date necessary to satisfy all Allowed Administrative Claims against the EFH Debtors and Allowed Priority Claims against the EFH Debtors, in full, in Cash.

152. The EFH/EFIH Debtors, or, following the occurrence of the EFH Effective Date, the EFH Plan Administrator Board shall file a Motion seeking entry of the NEE Allocation Order as soon as practicable following entry of the Confirmation Order and shall make commercially reasonable efforts to seek entry of the NEE Allocation Order within 40 days of such filing (subject to the availability of the Bankruptcy Court to hear such Motion). For the avoidance of doubt, the EFH Effective Date may occur prior to the entry of the NEE Allocation Order or any

of the Material Allocation Orders, and that such NEE Allocation Order or Material Allocation Order have not yet been entered shall not be a valid basis to delay the occurrence of the EFH Effective Date.

153.    Consistent with Article VI.B. of the Plan, any Holder of a Claim may seek relief from the Bankruptcy Court in connection with the EFH/EFIH Cash Distribution Account and in accordance with the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the District of Delaware, and any other applicable rules or procedures.  Such relief may, for the avoidance of doubt, include a request for relief in connection with the allocation of material Claims as between EFH and EFIH.  Consistent with the definition of Plan Supplement set forth in the Plan, the EFH/EFIH Debtors filed that certain EFH Plan Administration Trust Agreement [D.I. 12685-3], which will be revised as necessary prior to the EFH Effective Date to effectuate the   paragraphs 150-156, including by, among other things, clarifying that the negotiation, resolution, settlement, and litigation concerning the NEE Allocation Order and any Material Allocation Order shall each constitute a Conflict Matter (as defined in the EFH Plan Administration Trust Agreement).

154.    The NEE Plan Reserve Amount may be modified pursuant to separate Bankruptcy Court order for good cause shown; *provided*, *however*, that any such modification shall, at all times, be consistent with Article VI. of the Plan.  In the absence of any such separate Bankruptcy Court order, the NEE Plan Reserve Amount shall be (a) released in full to the EFH/EFIH Cash Distribution Account upon entry of a Final Order against NEE in connection with the NEE Proceedings and (b) released in the amount of $275 million to an account designated by NEE upon entry of a Final Order in favor of NEE in connection with the NEE Proceedings.[6]

---

[6]    NEE Proceedings shall be defined as: (a) the appellate proceedings in connection with the reconsideration order entered by the Bankruptcy Court on October 18, 2017 [D.I. 12075] (the "<u>Reconsideration Order</u>"); (b) the

155.     Notwithstanding anything to the contrary in this EFH Confirmation Order or the Plan, none of the Plan Sponsor, EFH Merger Sub, or the Reorganized EFH/EFIH Debtors shall have or incur any liability or obligation in connection with the NEE Plan Reserve or the Termination Fee (as defined in [D.I. 11998]).

156.     Notwithstanding anything to the contrary in the Plan, the EFH Plan Administrator Board, the Supporting Creditors and/or the EFIH Unsecured Notes Trustee shall have the right any time after entry of the Confirmation Order to (i) in accordance with the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the District of Delaware, and any other applicable rules or procedures, to file, pursue, prosecute, and litigate to judgment objections to any Claims, including Administrative Claims, filed or asserted against any of the Debtors or the estates that, if Allowed, would be entitled to distribution from the EFH/EFIH Cash Distribution Account or the NEE Plan Reserve, (ii) appeal, prosecute any appeal, and/or participate in any appeal, including any currently pending appeal, with respect to any order allowing, disallowing, or estimating any Claim, including any Administrative Claim, (iii) receive notice from the EFH Plan Administrator Board, as applicable, of any proposed settlement or compromise of any Disputed Claim entitled to distribution from the EFH/EFIH Cash Distribution Account or the NEE Plan Reserve, (iv) for good cause shown, seek relief in the Bankruptcy Court or any other court of competent jurisdiction in accordance with the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the District of Delaware, and any other applicable rules or procedures to reduce or eliminate, or seek other relief, with respect to any reserves established using funds in the EFH/EFIH Cash Distribution Account and established and/or maintained by the EFH Plan Administrator Board (including in its capacity as Trustee) on account of any

---

*Adversary Complaint* [D.I. 11668]; and (c) the briefing schedule set by the Third Circuit regarding a direct, expedited appeal of the Reconsideration Order.

Disputed Claims that have been disallowed by the Bankruptcy Court, including but not limited to any NEE Plan Reserve, and (v) request that the Bankruptcy Court estimate any Disputed Claim, including any Disputed Administrative Claim in each case that, if Allowed, would be entitled to distribution from the EFH/EFIH Cash Distribution Account or the NEE Plan Reserve. All parties' rights with respect to the foregoing are fully preserved.

**SS.     Effect of Non-Occurrence of EFH Effective Date.**

157.    If a condition to the occurrence of the EFH Effective Date does not occur, and is not otherwise waived, and it is determined that the EFH Effective Date shall not and cannot occur on the terms contemplated by the Plan and this EFH Confirmation Order, the provisions set forth in this EFH Confirmation Order shall not be binding on any party; *provided, however*, that the non-occurrence of the EFH Effective Date shall not affect the relief granted in the EFIH Secureds Settlement Approval Order.

**TT.     Final Order and Waiver of Stay.**

158.    The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order is hereby waived. This EFH Confirmation Order is a Final Order and shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d) or 7062. The Debtors, with the consent of the Plan Sponsor, are authorized to consummate the Plan on any business day after entry of this EFH Confirmation Order, subject to satisfaction or waiver (by the required parties) of the conditions set forth in Article IX.B of the Plan.

Dated:  February 27, 2018
        Wilmington, Delaware

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

81

**Exhibit A**

**Plan**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## FIRST AMENDED JOINT PLAN OF
## REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP.,
## ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, AND THE
## EFH/EFIH DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

--and--

300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Counsel to the Debtors and Debtors in Possession

--and--

**PROSKAUER ROSE LLP**
Three First National Plaza
70 W. Madison Street, Suite 3800
Chicago, Illinois 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

Co-Counsel to the Debtor Energy Future Holdings Corp.

--and--

**RICHARDS, LAYTON & FINGER, P.A.**
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

**BIELLI & KLAUDER, LLC**
1204 North King Street
Wilmington, Delaware 19801
Telephone: (302) 803-4600
Facsimile: (302) 397-2557

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**CRAVATH, SWAINE AND MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

**JENNER & BLOCK LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699

Co-Counsel to the Debtor Energy Future Intermediate
Holding Company LLC

Dated: February 15, 2018

**STEVENS & LEE, P.C.**
919 Market Street, Suite 1300
Wilmington, Delaware 19801
Telephone: (302) 425-3310
Facsimile: (610) 371-7927

RLF1 18943843v.1

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
        GOVERNING LAW ........................................................................................................ 4
    A.     Defined Terms. ...................................................................................................... 4
    B.     Rules of Interpretation. .......................................................................................... 38
    C.     Computation of Time. ............................................................................................ 39
    D.     Governing Law. ..................................................................................................... 39
    E.     Reference to Monetary Figures. .............................................................................. 39

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS ........................ 39
    A.     Administrative Claims. ........................................................................................... 40
    B.     2017 EFIH First Lien DIP Claims. ......................................................................... 42
    C.     Priority Tax Claims. ............................................................................................... 42

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .............................. 42
    A.     Classification of Claims and Interests. .................................................................... 42
    B.     Treatment of Claims and Interests. ........................................................................ 44
    C.     Special Provision Governing Unimpaired Claims. ................................................... 54
    D.     Elimination of Vacant Classes. ............................................................................... 54
    E.     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. .. 54
    F.     Controversy Concerning Impairment. ..................................................................... 54
    G.     Subordinated Claims and Interests. ........................................................................ 55

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ............................................................. 55
    A.     General Settlement of Claims and Interests. ............................................................ 55
    B.     Restructuring Transactions. ................................................................................... 55
    C.     Sources of Consideration for Plan Distributions. ..................................................... 58
    D.     Intercompany Account Settlement. ......................................................................... 60
    E.     Corporate Existence. .............................................................................................. 61
    F.     Vesting of Assets in the Reorganized EFH/EFIH Debtors. ..................................... 61
    G.     Cancelation of Existing Securities and Agreements. ................................................ 61
    H.     Corporate Action. .................................................................................................. 62
    I.     New Organizational Documents. ............................................................................ 63
    J.     Directors and Officers of the Reorganized EFH/EFIH Debtors. ............................. 63
    K.     Section 1146 Exemption. ....................................................................................... 63
    L.     Director, Officer, Manager, and Employee Liability Insurance. ............................... 64
    M.     Preservation of Causes of Action. .......................................................................... 64
    N.     Payment of Certain Fees. ....................................................................................... 65
    O.     Treatment of Certain Claims of the PBGC and Pension Plans. ................................. 66

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................... 66
    A.     Assumption and Rejection of Executory Contracts and Unexpired Leases. .............. 66
    B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases. ................ 67
    C.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ............ 67
    D.     Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases. .. 68
    E.     Indemnification Obligations. ................................................................................... 68
    F.     Insurance Policies. ................................................................................................. 68
    G.     Modifications, Amendments, Supplements, Restatements, or Other Agreements. ...... 68
    H.     Reservation of Rights. ............................................................................................ 69
    I.     Nonoccurrence of Effective Date. .......................................................................... 69
    J.     Contracts and Leases Entered Into After the Petition Date. ..................................... 69

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ................................................................ 69
    A.     Timing and Calculation of Amounts to Be Distributed. ........................................... 69
    B.     Rights and Powers of EFH Plan Administrator Board. ............................................ 70

C.      Disbursing Agent. ................................................................... 71
D.      Rights and Powers of Disbursing Agent. ................................... 71
E.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. ............... 71
F.      Manner of Payment. ................................................................ 71
G.      SEC Registration/Exemption. .................................................. 72
H.      Compliance with Tax Requirements. ....................................... 73
I.      No Postpetition or Default Interest on Claims. .......................... 73
J.      Setoffs and Recoupment. ........................................................ 74
K.      No Double Payment of Claims. ................................................ 74
L.      Claims Paid or Payable by Third Parties. ................................. 74

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
        DISPUTED CLAIMS ................................................................. 75
A.      Allowance of Claims. .............................................................. 75
B.      Claims Administration Responsibilities .................................... 75
C.      Estimation of Claims. .............................................................. 75
D.      Adjustment to Claims without Objection. ................................. 75
E.      Time to File Objections to Claims or Interests. ......................... 76
F.      Disallowance of Claims. .......................................................... 76
G.      Amendments to Proofs of Claim. ............................................. 76
H.      Reimbursement or Contribution. ............................................. 76
I.      No Distributions Pending Allowance. ....................................... 76
J.      Distributions After Allowance. ................................................ 77

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS. ............ 77
A.      Discharge of Claims and Termination of Interests. ................... 77
**B.**      **Release of Liens.** ................................................................... 77
**C.**      **Releases by the Debtors.** ....................................................... 77
**D.**      **Releases by Holders of Claims and Interests.** .......................... 78
**E.**      **Exculpation.** ......................................................................... 79
**F.**      **Injunction.** ........................................................................... 80
G.      Liabilities to, and Rights of, Governmental Units. .................... 81
H.      Environmental Law Matters. .................................................... 82
I.      Protections Against Discriminatory Treatment. ......................... 82
J.      Recoupment. ........................................................................... 83
K.      Document Retention. ............................................................... 83

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF
        THE PLAN ............................................................................... 83
A.      Conditions Precedent to Confirmation of a Plan as to the EFH Debtors and EFIH
        Debtors. ................................................................................. 83
B.      Conditions Precedent to the EFH Effective Date. ...................... 83
C.      Waiver of Conditions. .............................................................. 84
D.      Effect of Failure of Conditions. ............................................... 85
E.      Certain IRS Matters. ................................................................ 86

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN. ................. 86
A.      Modification and Amendments. ................................................ 86
B.      Effect of Confirmation on Modifications. .................................. 86
C.      Revocation or Withdrawal of Plan. .......................................... 87

ARTICLE XI. RETENTION OF JURISDICTION ............................................................. 87

ARTICLE XII. MISCELLANEOUS PROVISIONS ........................................................... 89
A.      Immediate Binding Effect. ....................................................... 89
B.      Additional Documents. ............................................................ 89

RLF1 18943843v.1

| | | | |
|---|---|---|---|
| C. | Payment of Statutory Fees. | | 89 |
| D. | Statutory Committee and Cessation of Fee and Expense Payment. | | 89 |
| E. | Reservation of Rights. | | 90 |
| F. | Successors and Assigns. | | 90 |
| G. | Notices. | | 90 |
| H. | Term of Injunctions or Stays. | | 92 |
| I. | Entire Agreement. | | 92 |
| J. | Exhibits. | | 92 |
| K. | Nonseverability of Plan Provisions. | | 92 |
| L. | Votes Solicited in Good Faith. | | 92 |
| M. | Waiver or Estoppel. | | 92 |
| N. | Conflicts. | | 93 |
| | | | 93 |

**Exhibits**

Exhibit A          EFH/EFIH Debtors

## INTRODUCTION

The Debtors (as defined herein) propose this joint plan of reorganization for the resolution of the outstanding claims against, and interests in, the Debtors pursuant to the Bankruptcy Code. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in Article I.A of the Plan. Holders of Claims and Interests should refer to the EFH Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, events during the Chapter 11 Cases, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE EFH DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
### DEFINED TERMS, RULES OF INTERPRETATION,
### COMPUTATION OF TIME, AND GOVERNING LAW

*A.    Defined Terms.*

As used in the Plan, capitalized terms have the meanings set forth below.

1.    "*2005 Oncor Transfer*" means those certain 2005 transactions pursuant to which the equity of Oncor's predecessor, TXU Electric Delivery Company LLC, was dividended from EFCH's predecessor, TXU US Holdings Company, to EFH Corp.'s predecessor, TXU Corp.

2.    "*2007 Acquisition*" means the transactions that occurred in October 2007 in which TEF and Texas Holdings and their direct and indirect equity holders became the direct and indirect equity holders of each of the Debtors.

3.    "*2011 Amend and Extend Transactions*" means those certain transactions effectuated by TCEH and EFCH in April 2011, including the TCEH Credit Amendment and the issuance of the TCEH First Lien Notes.

4.    "*2013 Revolver Extension*" means those certain transactions effectuated by TCEH and EFCH in January 2013, including the maturity extension of revolving credit commitments due 2013, the Incremental Amendment Agreement, and the incurrence of the TCEH 2012 Incremental Term Loans.

5.    "*2017 EFIH First Lien DIP Agent*" means Citibank, N.A. or its duly appointed successor, as administrative agent and collateral agent under the 2017 EFIH First Lien DIP Facility.

6.    "*2017 EFIH First Lien DIP Claims*" means any Claim derived from or based upon the 2017 EFIH First Lien DIP Credit Agreement or the 2017 EFIH First Lien DIP Order, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges and all other "Obligations" as defined in the 2017 EFIH First Lien Credit Agreement, including any EFIH DIP Secured Cash Management Obligations and EFIH DIP Secured Hedge Obligations.

7.    "*2017 EFIH First Lien DIP Contingent Obligations*" means the "Contingent Obligations" as defined in the 2017 EFIH First Lien DIP Credit Agreement, including any and all expense reimbursement obligations of the Debtors that are contingent as of the EFH Effective Date.

8.    "*2017 EFIH First Lien DIP Credit Agreement*" means that certain Senior Secured Superpriority Debtor-In-Possession Credit Agreement, dated as of June 28, 2017, governing the 2017 EFIH First Lien DIP Facility, as amended, supplemented, or modified from time to time, by and among EFIH, EFIH Finance, and the

2017 EFIH First Lien DIP Lenders, collectively with the "EFIH First Lien DIP Documents," as defined in the 2017 EFIH First Lien DIP Order.

9.      "*2017 EFIH First Lien DIP Facility*" means the EFIH Debtors' $6.3 billion debtor-in-possession financing facility, as approved pursuant to the 2017 EFIH First Lien DIP Order.

10.     "*2017 EFIH First Lien DIP Lenders*" means the 2017 EFIH First Lien DIP Agent; the banks, financial institutions, and other lenders party to the 2017 EFIH First Lien DIP Facility from time to time; and each arranger, bookrunner, syndication agent, manager, and documentation agent under the 2017 EFIH First Lien DIP Facility.

11.     "*2017 EFIH First Lien DIP Order*" means the Order (A) Approving Postpetition Replacement Financing for Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc., (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Extending the Use of Cash Collateral by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., (D) Authorizing Refinancing of Postpetition Secured Debt, (E) Authorizing Payment of Allowed EFIH First Lien Claims, and (F) Modifying the Automatic Stay [D.I. 11388].

12.     "*503(b)(9) Claim*" means a Claim or any portion thereof entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

13.     "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under sections 503(b) (including 503(b)(9) Claims), 507(b), or 1114(e)(2) of the Bankruptcy Code, other than the 2017 EFIH First Lien DIP Claims, including: (a) the actual and necessary costs and expenses incurred after the Petition Date through the EFH Effective Date of preserving the applicable Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims; (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930; and (d) all Intercompany Claims authorized pursuant to the Cash Management Order.

14.     "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to General Administrative Claims, shall be 30 days after the EFH Effective Date; and (b) with respect to Professional Fee Claims, shall be 45 days after the EFH Effective Date.

15.     "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

16.     "*Allowed*" means with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest as to which no objection has been Filed prior to the Claims Objection Deadline and that is evidenced by a Proof of Claim or Interest, as applicable, timely Filed by the applicable Bar Date or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is scheduled by the Debtors as neither disputed, contingent, nor unliquidated, and as for which no Proof of Claim or Interest, as applicable, has been timely Filed in an unliquidated or a different amount; or (c) a Claim or Interest that is upheld or otherwise allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith, or (iv) by Final Order (including any such Claim to which the Debtors had objected or which the Bankruptcy Court had disallowed prior to such Final Order). Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest or other charges on such Claim from and after the Petition Date. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.

17.     "*Allowed EFIH First Lien Claims*" shall have the meaning set forth in the EFIH Settlement Agreement.

18.     "*Allowed EFIH General Unsecured Claim*" means, (a) the Charging Lien Advance; (b) the principal amount outstanding of the EFIH Unsecured Notes, in the amount of $1,568 million; (c) any accrued but

RLF1 18943843v.1

unpaid prepetition interest, in the amount of $81 million; and (d) any additional amounts ordered by the Bankruptcy Court but excluding, for the avoidance of doubt, any recovery on account of asserted Makewhole Claims.

19.     *"Allowed EFIH Second Lien Claims"* shall have the meaning set forth in the EFIH Settlement Agreement.

20.     *"Amended and Restated Split Participant Agreement"* means that certain Amended and Restated Split Participant Agreement, by and among Oncor Electric, Reorganized TCEH, and OpCo, entered into on or before the TCEH Effective Date, which shall govern the rights and obligations of each party thereto with respect to certain employment matters.

21.     *"Approval Order"* means the Final Order authorizing and directing EFH Corp., EFIH, and Reorganized TCEH (and, in the case of the Tax Matters Agreement, EFIH Finance) to enter into (i) the Tax Matters Agreement, (ii) the Transition Services Agreement, if any, (iii) the Amended and Restated Split Participant Agreement, and (iv) the Separation Agreement.

22.     *"Assumed Executory Contracts and Unexpired Leases"* means those Executory Contracts and Unexpired Leases assumed by Reorganized EFH and Reorganized EFIH, as set forth on the Assumed Executory Contract and Unexpired Lease List.

23.     *"Assumed Executory Contract and Unexpired Lease List"* means the list of Executory Contracts and Unexpired Leases assumed (with proposed cure amounts), as determined by the Plan Sponsor, in its sole discretion, the form of which shall be included in the Plan Supplement; *provided, however,* that notwithstanding Article V.F herein, the following contracts, to the extent such contracts are executory contracts, shall be deemed assumed by Reorganized EFH and Reorganized EFIH, as applicable:  (a) the Split Policies (as defined in the Separation Agreement), (b) D&O Insurance Policies at EFH Corp. for the benefit of current or former directors, managers, officers, and, employees, and (c) any D&O priority agreement between EFH Corp. and the sponsoring institution of certain directors.

24.     *"AST&T"* means American Stock Transfer & Trust Company, LLC.

25.     *"Backstop Commitment Agreement"* means that certain Equity Commitment Letter Agreement, that may be entered into by and among New HoldCo and the Backstop Parties, as may be amended from time to time.

26.     *"Backstop Parties"* means those certain Entities that are party to the Backstop Commitment Agreement, together with their respective successors and permitted assigns.

27.     *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

28.     *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

29.     *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

30.     *"Bar Date"* means the applicable date established by the Bankruptcy Court by which respective Proofs of Claims and Interests must be Filed.

31.     *"BNY"* means, collectively: (a) BNYM; and (b) BNYMTC.

32.     *"BNYM"* means The Bank of New York Mellon.

RLF1 18943843v.1

33.     *"BNYMTC"* means The Bank of New York Mellon Trust Company, N.A.

34.     *"Business Day"* means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

35.     *"Cash"* means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the U.S., less the amount of any outstanding checks or transfers at such time.

36.     *"Cash Collateral Order"* means the Final Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay [D.I. 855], as further amended, modified, and supplemented from time to time, including D.I. 5922 and D.I. 5923.

37.     *"Cash Deposit Amount"* means the Cash to be delivered by EFH Merger Sub to the EFH Plan Administrator Board for deposit in the EFH/EFIH Cash Distribution Account at the Merger Closing in accordance with the Merger Agreement.

38.     *"Cash Management Order"* means the Final Order (A) Authorizing the Debtors to (I) Continue Using Their Existing Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, and (III) Continue Using Certain Investment Accounts; (B) Authorizing Continued Intercompany Transactions and Netting of Intercompany Claims; and (C) Granting Postpetition Intercompany Claims Administrative Expense Priority [D.I. 801]. The Cash Management Order applies to the Debtors and, prior to the TCEH Effective Date, applied to the TCEH Debtors and EFH Shared Services Debtors.

39.     *"Cash Projections"* means the separate, updated cash projections for each of EFH Corp. and EFIH that assume an EFH Effective Date of March 31, 2018, which shall be filed contemporaneously with the Plan Supplement, subject to ongoing review and revision; *provided* that such Cash Projections shall not be binding on any party. The Cash Projections will be affected by a number of factors including, among others, Professional Fee Claims and the receipt of Oncor dividends.

40.     *"Causes of Action"* means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

41.     *"Chapter 11 Cases"* means, collectively: (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; (b) when used with reference to the period starting from and after the TCEH Effective Date, all the Debtors pursuant to the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court; and (c) when used with reference to the period between the Petition Date and the TCEH Effective Date, all the Debtors, the TCEH Debtors, and the EFH Shared Services Debtors, pursuant to the then procedurally consolidated and jointly administered chapter 11 cases pending for such debtors.

42.     *"Charging Lien Advance"* means the amount advanced and paid to the EFIH Unsecured Notes Trustee pursuant to that certain Order Approving Additional Relief in Connection with Settlement of Certain EFIH PIK Noteholder Claims [D.I. 7353] and any future amounts advanced and paid to the EFIH Unsecured Notes Trustee pursuant to the charging lien under the EFIH Unsecured Note Indentures.

RLF1 18943843v.1

43.    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

44.    "*Claims and Noticing Agent*" means Epiq Bankruptcy Solutions, LLC, retained as the Debtors' notice and claims agent pursuant to the Order Approving the Retention and Appointment of Epiq Bankruptcy Solutions as the Claims and Noticing Agent for the Debtors [D.I. 321], which Order applies to the Debtors and, prior to the TCEH Effective Date, applied to the TCEH Debtors and EFH Shared Services Debtors.

45.    "*Claims Objection Deadline*" means the later of:  (a) the date that is 180 days after the EFH Effective Date; and (b) such other date as may be fixed by the Bankruptcy Court, after notice and hearing, upon a motion Filed before the expiration of the deadline to object to Claims or Interests.

46.    "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

47.    "*Class*" means a category of Claims or Interests as set forth in Article III of the Plan.

48.    "*Collective Professional Fee Claim*" means Professional Fee Claims incurred by a Professional for the collective benefit of two or more of EFH Corp., EFIH, and, prior to the TCEH Effective Date, TCEH.

49.    "*Committees*" means, collectively:  (a) the TCEH Committee; and (b) the EFH/EFIH Committee.

50.    "*Competitive Tax Sharing Agreement*" means that certain Federal and State Income Tax Allocation Agreement Among the Members of the Energy Future Holdings Corp. Consolidated Group (as amended and restated from time to time), dated May 15, 2012, by and among EFH Corp. and certain of its direct and indirect subsidiaries.

51.    "*Computershare Trust*" means, collectively:  (a) Computershare Trust Company, N.A.; and (b) Computershare Trust Company of Canada.

52.    "*Confirmation*" means the entry of the EFH Confirmation Order on the docket of the Chapter 11 Cases.

53.    "*Confirmation Hearing*" means the one or more hearings held by the Bankruptcy Court to consider Confirmation of the Plan as to one or more Debtors pursuant to section 1129 of the Bankruptcy Code.

54.    "*Conflict Matters*" means for each of EFH Corp., EFIH, and EFCH/TCEH, as defined in the respective resolutions of the applicable Board of Directors or Board of Managers dated November 7, 2014 and December 9, 2014 including the determination of whether any matter constitutes a "Conflict Matter."

55.    "*Consummation*" means the occurrence of the EFH Effective Date.

56.    "*Cure Claim*" means a Claim based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code.

57.    "*Dealer Managers*" means the dealer managers under that certain dealer manager agreement approved under the EFIH First Lien Principal Settlement Order.

58.    "*Debtor*" means one of the EFH/EFIH Debtors, in its individual capacity as a debtor and debtor in possession in its respective Chapter 11 Case.  As used herein, the term "Debtor" shall refer the EFH Debtors when referencing the plan of reorganization of the EFH Debtors and shall refer to the EFIH Debtors when referencing the plan of reorganization of the EFIH Debtors.

59.    "*Debtor Intercompany Claim*" means a Claim by any Debtor against any other Debtor.

60.    "*Debtors*" means: (a) the EFH Debtors, when referencing the plan of reorganization of the EFH Debtors, (b) the EFIH Debtors, when referencing the plan of reorganization of the EFIH Debtors, (c) prior to the TCEH Effective Date, the TCEH Debtors, when referencing the TCEH Plan, and (d) prior to the TCEH Effective Date, the EFH Shared Services Debtors, when referencing the TCEH Plan.

61.    "*DIP Agreements*" means, collectively:  (a) the TCEH DIP Credit Agreement; (b) the Original EFIH First Lien DIP Credit Agreement; and (c) the 2017 EFIH First Lien DIP Credit Agreement.

62.    "*DIP Facilities*" means, collectively:  (a) the TCEH DIP Facility; (b) the Refinanced TCEH DIP Facility; (c) the Original EFIH First Lien DIP Facility; and (d) the 2017 EFIH First Lien DIP Facility.

63.    "*DIP Lenders*" means the Original EFIH First Lien DIP Agent, the 2017 EFIH First Lien DIP Agent, the TCEH DIP Agent, the TCEH DIP L/C Issuers, the Refinanced TCEH DIP Agent, the banks, financial institutions, and other lenders party to the DIP Facilities from time to time, and each arranger, bookrunner, syndication agent, manager, and documentation agent under the DIP Facilities.

64.    "*DIP Orders*" means, collectively:  (a) the TCEH DIP Order; (b) the Original EFIH First Lien Final DIP Order; and (c) the 2017 EFIH First Lien DIP Order.

65.    "*Direct Professional Fee Claims*" means Professional Fee Claims incurred by a Professional for the benefit of only one of the following:  (a) the EFH Debtors; (b) the EFIH Debtors; or (c) prior to the TCEH Effective Date, the TCEH Debtors.

66.    "*Disbursing Agent*" means the Reorganized EFH/EFIH Debtors or the Entity or Entities authorized to make or facilitate distributions under the Plan as selected by the Debtors or the Reorganized EFH/EFIH Debtors, as applicable, in consultation with the Plan Sponsor and the TCEH Supporting First Lien Creditors, *provided* that (a) the EFH Notes Trustee shall be the Disbursing Agent for Classes A4, A5, A6, and B5; (b) the EFIH Unsecured Notes Trustee shall be the Disbursing Agent for distributions to Holders of EFIH Unsecured Note Claims; (c) the EFH First Lien Notes Trustee, or such other Disbursing Agent pursuant to the EFH Confirmation Order, shall be the Disbursing Agent for distributions to Holders of EFH First Lien Note Claims; and (d) the EFIH Second Lien Notes Trustee, or other such Disbursing Agent pursuant to the EFH Confirmation Order, shall be the Disbursing Agent for distributions to Holders of EFIH Second Lien Note Claims.

67.    "*Disinterested Directors and Managers*" means the disinterested directors and managers (as applicable) of EFH Corp., EFIH, and EFCH/TCEH.

68.    "*Disinterested Directors Settlement*" means the settlement negotiated by and among the Disinterested Directors and Managers regarding Debtor Intercompany Claims set forth in the Settlement Agreement and Initial Plan.

69.    "*Disputed*" means with regard to any Claim or Interest, a Claim or Interest that is not yet Allowed.

70.    "*Distribution Date*" means the EFH Effective Date and any Periodic Distribution Date thereafter.

71.    "*Distribution Record Date*" means other than with respect to any publicly-held securities, the record date for purposes of making distributions under the Plan on account of Allowed Claims and Allowed Interests (other than the 2017 EFIH First Lien DIP Claims), which date shall be the date that is five (5) Business Days after the EFH Confirmation Date, as applicable, or such other date as designated in an order of the Bankruptcy Court.

72.    "*DTC*" means the Depository Trust Company.

73.    "*EFCH*" means Energy Future Competitive Holdings Company LLC, a Delaware limited liability company.

RLF1 18943843v.1

74.    "*EFCH 2037 Note Claim*" means any Claim derived from or based upon the 8.175% fixed rate notes due January 30, 2037 and the 1.245% floating rate notes due January 30, 2037, each issued by EFCH pursuant to the EFCH 2037 Note Indenture.

75.    "*EFCH 2037 Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated December 1, 1995, by and between EFCH, successor to TXU US Holdings Company, as issuer, and the EFCH 2037 Notes Trustee.

76.    "*EFCH 2037 Notes Trustee*" means BNYMTC, or any successor thereto, as trustee under the EFCH 2037 Note Indenture.

77.    "*EFCH/TCEH*" means, collectively:  (a) EFCH; and (b) TCEH.

78.    "*EFH 2019 Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated November 16, 2009, by and among EFH Corp., as issuer, and the EFH Notes Trustee.

79.    "*EFH 2019 Notes*" means the 9.75% unsecured notes due October 15, 2019, issued by EFH Corp. pursuant to the EFH 2019 Note Indenture.

80.    "*EFH 2020 Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated January 12, 2010, by and among EFH Corp., as issuer, and the EFH Notes Trustee.

81.    "*EFH 2020 Notes*" means the 10.0% unsecured notes due January 15, 2020, issued by EFH Corp. pursuant to the EFH 2020 Note Indenture.

82.    "*EFH Beneficiary Claims*" means, collectively: (a) the Allowed EFH Non-Qualified Benefit Claims; (b) the Allowed EFH Unexchanged Note Claims; and (c) the Allowed General Unsecured Claims Against EFH Corp.; *provided*, *however*, that any of the foregoing Claims shall cease to constitute EFH Beneficiary Claims if the Class comprised of such Claims fails to accept or fails to reject the Plan consistent with the Voting Indication (as such term is defined in the EFH/EFIH Committee Settlement), if any.

83.    "*EFH Cash Account*" means the segregated account within the EFH/EFIH Cash Distribution Account consisting of EFH Corp. Cash.

84.    "*EFH Confirmation Date*" means the date upon which the Bankruptcy Court enters the EFH Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

85.    "*EFH Confirmation Order*" means one or more orders of the Bankruptcy Court confirming the Plan with respect to one or more EFH Debtors or EFIH Debtors pursuant to section 1129 of the Bankruptcy Code. The EFH Confirmation Order shall be reasonably acceptable to the 2017 EFIH First Lien DIP Agent and acceptable to the Plan Sponsor.

86.    "*EFH Corp.*" means Energy Future Holdings Corp., a Texas corporation.

87.    "*EFH Corp. Cash*" means (a) any Cash held by EFH Corp. as of the EFH Effective Date, plus (b) the sum of any Cash payable to EFH Corp. as of the EFH Effective Date under the Oncor Tax Sharing Agreement, and/or related to the winddown of those certain rabbi trusts held at EFH Corp. related to the EFH Non-Qualified Benefit Plan, minus (c) any amount payable to Oncor by EFH Corp. as of the EFH Effective Date under the Oncor Tax Sharing Agreement, minus (d) the amount, if any, described in the Tax Contingency Disclosure.

88.    "*EFH Corp. Claims*" means, collectively:  (a) the Allowed EFH Legacy Note Claims; (b) the Allowed EFH Swap Claims; (c) the Allowed EFH LBO Note Primary Claims; (d) the Allowed TCEH Settlement Claim; (e) the Allowed EFH Non-Qualified Benefit Claims; (f) the Allowed EFH Unexchanged Note Claims; (g) the Allowed General Unsecured Claims Against EFH Corp.; and (h) the Allowed General Unsecured Claims Against EFH Debtors Other Than EFH Corp; *provided*, *however*, that solely in the event that Holders of Allowed EFH LBO

RLF1 18943843v.1