**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>*Debtors.* | ) Chapter 11<br>)<br>) Case No. 14-10979 (CSS)<br>) (Jointly Administered)<br>)<br>) **Re: D.I. 12671**<br>)<br>) **Hearing Date:  April 25, 2018 at 10:00 a. m. (ET)**<br>) **Obj. Deadline:  April 6, 2018 at 4:00 p.m. (ET)** |

**JOINT MOTION OF UMB BANK, N.A., AS INDENTURE TRUSTEE, AND
ELLIOTT TO (I) DISMISS APPLICATION OF NEXTERA ENERGY, INC.
FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE,
OR, IN THE ALTERNATIVE, (II) GRANT SUMMARY JUDGMENT
<u>DENYING AND DISALLOWING SUCH ADMINISTRATIVE EXPENSE</u>**

UMB Bank, N.A., as Indenture Trustee (the "<u>Trustee</u>") for the unsecured 11.25%/12.25% Senior Toggle Notes due 2018, and Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "<u>Elliott</u>" and, together with the Trustee, the "<u>Movants</u>"), by and through their undersigned counsel, hereby submit this joint motion pursuant to section 503(b) of the Bankruptcy Code and Fed. R. Bankr. P. 7012,[2] 7056, and 9014 to dismiss or, in the alternative, grant summary judgment denying and disallowing the *Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Claim* [D.I. 12671] (the "<u>Application</u>").  In support hereof, the Movants respectfully state as follows:

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Pursuant to Fed. R. Bankr. P. 9014(c), the Movants request the Court to direct that Fed. R. Bankr. P. 7012 apply to this contested matter.

## PRELIMINARY STATEMENT

The relief requested in the Application is entirely without merit.  As demonstrated below, the Application seeks a payment that is explicitly precluded by NextEra's merger agreement with the Debtors (the "Merger Agreement") and that is based on factual premises already rejected by the Court, which previously found that NextEra's fees and expenses provided "no actual benefit" to the Debtors' estates as required to qualify as an administrative expense under section 503(b) of the Bankruptcy Code.  *See* D.I. 11998 at 30; 12075 at ¶ 4.  Worse, in light of the Application's timing and the prior proceedings before this Court, NextEra's reasons for the Application are unmistakable:  Absent prompt action by the Court, the Application will unnecessarily delay creditor distributions and needlessly increase the costs of litigation that are ultimately borne by such creditors.  Accordingly, for the reasons set forth more fully below, the Application should be summarily denied and the Movants permitted to proceed on a motion for sanctions.[3]

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and paragraph 72 of the *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12763].  This matter is a core proceeding within the meaning of 28 U.S.C. §

---

[3]      On March 13, 2018, Elliott requested that NextEra withdraw the Application and notified NextEra that the Application may be in violation of Fed. R. Bankr. P. 9011.  Because NextEra has refused to withdraw the Application, Movants reserve the right to seek sanctions pursuant to Fed. R. Bankr. P. 9011, 28 U.S.C. § 1927, or otherwise.

157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to Local

Rule 9013-1(f), the Movants consent to entry of a final order with respect to this Motion

to the extent that it is later determined that the Court, absent consent of the parties, cannot

enter final orders or judgments in connection herewith consistent with Article III of the

United States Constitution.

2.      The bases for the relief requested herein are section 503(b) of the

Bankruptcy Code and Rules 7012, 7056, and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").

## RELEVANT BACKGROUND

**A.      The Merger Agreement With NextEra And The Approval Order**

3.      In July 2016, Debtors Energy Future Holdings Corp. ("EFH") and Energy

Future Intermediate Holding Company LLC ("EFIH") entered into the Merger

Agreement with NextEra to sell EFH's and EFIH's ownership interest in non-debtor

subsidiary Oncor Electric Delivery Co. LLC ("Oncor").  *See* D.I. 9190.

4.      The Merger Agreement contemplated that EFH would become a wholly

owned subsidiary of NextEra and, as part of the proposed merger transaction, NextEra

agreed to provide more than $9.5 billion in consideration to the Debtors' estates.  *Id.*  The

merger was subject to certain conditions precedent, including regulatory approval from

the Public Utility Commission of Texas ("PUCT").  *Id.*, Merger Agreement §§ 7.2(c) and

7.3(e).

5.      The Merger Agreement also contained a provision purporting to entitle

NextEra to a $275 million cash termination fee (the "Termination Fee") payable by the

Debtors as an administrative expense under certain conditions.  *See* Merger Agreement §

8.5(b).  On August 3, 2016, the Debtors moved this Court for an order authorizing them to enter into the Merger Agreement and approving the Termination Fee.  D.I. 9190.

6.      The Court held a hearing on September 19, 2016 to consider approval of the Merger Agreement and the Termination Fee.  Following the hearing, and based on the record and statements of counsel, the Court entered an order (the "Approval Order"), among other things, (a) authorizing the Debtors to enter into the Merger Agreement, (b) approving the Termination Fee on the terms set forth in the Merger Agreement, and (c) authorizing the Debtors to pay the Termination Fee to NextEra as an allowed administrative expense to the extent it became due and payable under the Merger Agreement.  D.I. 9584.

**B.      PUCT Denies Approval Of The NextEra Transaction And The Debtors Are Forced To Terminate The Merger Agreement**

7.      On October 31, 2016, Oncor and NextEra submitted a joint application to PUCT seeking approval of the NextEra merger transaction.  At an open meeting, PUCT Commissioners expressed significant concerns about the terms of the transaction and its impact on the public interest.  Notwithstanding PUCT's concerns and forewarnings, NextEra refused to budge on what PUCT called "deal-killer" terms, which involved a regulatory "ring-fence" that PUCT required for Oncor.

8.      On April 13, 2017, PUCT denied the joint application, finding that the NextEra merger transaction was not in the public interest under the Texas Public Utility Regulatory Act.  D.I. 11152.  NextEra filed multiple rehearing requests simply rearguing the same issues that PUCT had previously rejected, and each rehearing request was denied by PUCT.  D.I. 11398, 11638-19, and 11878.

9.      PUCT's rulings made clear that the proposed NextEra transaction could not be consummated.  Yet, NextEra still did not terminate the Merger Agreement.  The Debtors thus faced the dilemma of which this Court was never apprised: (a) terminate the Merger Agreement and trigger the Termination Fee or (b) not terminate the Merger Agreement, forgoing the opportunity to enter another restructuring transaction—even one at a lower price—while incurring approximately $50 million in monthly interest obligations to secured lenders plus millions of dollars in additional fees.  D.I. 11761.

10.      On July 7, 2017, the Debtors delivered to NextEra a notice terminating the Merger Agreement.  D.I. 11424.  The Debtors then entered into a merger agreement with Berkshire Hathaway Energy Company ("Berkshire") for an amount substantially less than what the NextEra Merger Agreement would have provided to the Debtors' estates. D.I. 11430.  The Debtors later terminated the Berkshire agreement in favor of a proposal from Sempra Energy ("Sempra"), which also provides materially less consideration to the Debtors' estates than would have been provided under the NextEra transaction.

## C.     Elliott Seeks Reconsideration Of The Approval Order; NextEra Applies For Payment Of The Termination Fee As An Administrative Expense

11.      On July 29, 2017, Elliott filed a motion (the "Reconsideration Motion") seeking reconsideration of the Approval Order to the limited extent that the order authorized the Debtors to pay the Termination Fee when NextEra failed to obtain PUCT approval and the Debtors were forced to terminate the Merger Agreement and pursue a transaction for value considerably lower than the NextEra transaction.  D.I. 11636.  In the Reconsideration Motion, Elliott argued, among other things, that the Termination Fee was previously approved based on incomplete and misleading disclosures to the Court and, properly understood, would impermissibly pay the Termination Fee in circumstances

that neither preserved the value of the Debtors' assets nor provided any actual benefit to the Debtors' estates as would be required for an administrative expense under 11 U.S.C. § 503(b) and applicable Third Circuit precedent. *Id.*

12.    On July 31, 2017, NextEra filed its *Application of NextEra Energy, Inc. for Payment of Administrative Claim* (the "Initial 503(b) Application") seeking allowance and payment of the Termination Fee as an administrative expense under section 503(b) of the Bankruptcy Code upon the consummation of the Berkshire transaction or any alterative transaction. D.I. 11649. On August 2, 2017, Elliott objected to the Initial 503(b) Application on the same grounds set forth in the Reconsideration Motion. D.I. 11666.

**D.    This Court Grants Reconsideration And Denies The Initial 503(b) Application**

13.    On September 19, 2017, this Court held a hearing to consider the Reconsideration Motion. After careful consideration of the record and parties' arguments, the Court concluded that it would grant the Reconsideration Motion. The Court explained in detail the bases for its ruling, including that its prior decision to approve the Termination Fee "was based on the serious misapprehension of the facts that constitutes manifest error." D.I. 11921, Sept. 19, 2017 Hr'g Tr. 48:5–14.

14.    On October 3, 2017, this Court issued its Opinion on the Reconsideration Motion (the "Reconsideration Opinion"). D.I. 11998. In the Reconsideration Opinion, this Court found that it "fundamentally misapprehended the facts" and that, had it properly apprehended the facts, it would not have approved the Termination Fee as an administrative expense under the standard set forth in *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999). Reconsideration Opinion at 32. Consistent with the

standard set forth in *O'Brien*, this Court found that the Termination Fee could only be payable under the narrow circumstances prescribed by section 503(b)(1) of the Bankruptcy Code and, as such, "the Termination Fee must be one of the 'actual, necessary costs and expenses of preserving the estate.'" *Id.* at 28 (quoting 11 U.S.C. § 503(b)(1)(A)).

15.    The Court, due to an incomplete, incorrect, and confusing record presented at the September 19, 2016 hearing, did not understand that the Termination Fee could be payable if PUCT declined to approve the merger transaction and the Debtors (as opposed to NextEra) were subsequently forced to terminate the Merger Agreement. *Id.* at 25–26. The Court found that payment of the Termination Fee under those circumstances "could not provide an actual benefit to a debtor's estate sufficient to satisfy the *O'Brien* standard" and "cannot constitute an actual necessary cost and expense of preserving the Debtors' estates." *Id.* at 31–34. The Court thus found that it made a "manifest error of fact and law" in approving the Termination Fee as being payable as an administrative expense under those circumstances. *Id.* at 3.

16.    On October 18, 2017, this Court entered the Reconsideration Order, expressly finding that "[t]he Termination Fee Order must be modified because it approved a provision in the NextEra Merger Agreement that authorized the Debtors to pay NextEra the Termination Fee in circumstances in which the payment was not a necessary expense and the Debtors' estates would not receive an actual benefit, which is a manifest error of law." D.I. 12075, Reconsideration Order ¶ 4. As set forth in more detail in the Reconsideration Order, the Court, among other things, (a) granted the

Reconsideration Motion, (b) denied the Initial 503(b) Application, and (c) amended the

Approval Order to provide, in part, that:

> The Termination Fee, upon the terms and conditions of the Merger
> Agreement, is approved in part and disallowed in part. The
> Termination Fee is disallowed in the event that the PUCT declines to
> approve the transaction contemplated in the Merger Agreement and, as
> a result, the Merger Agreement is terminated, regardless of whether
> the Debtors or NextEra subsequently terminates the Merger
> Agreement. In those circumstances, *the EFH/EFIH Debtors are not*
> *authorized to pay the Termination Fee as a qualified administrative*
> *expense or otherwise*. The Termination Fee is otherwise approved.

*Id.* ¶ 5 (emphasis added).

17.     On October 30, 2017, NextEra filed a notice of appeal of the

Reconsideration Order.  D.I. 12141.  This appeal is currently pending before the Third

Circuit Court of Appeals.

**E.      The Application And Confirmation Order**

18.     On February 20, 2018, over four months after the Court entered the

Reconsideration Order and five months after it ruled on the Reconsideration Motion,

NextEra filed the Application seeking allowance and payment of $59,505,617 in various

expenses purportedly incurred by it in connection with the NextEra merger transaction as

administrative expenses under section 503(b) of the Bankruptcy Code.  D.I. 12671.  In

the Application, NextEra identifies several categories of expenses for which it seeks

administrative expense status, including PUCT approval expenses, other regulatory

expenses, financing expenses, professional fees, integration expenses, and marketing and

communications expenses (collectively, the "NextEra Expenses").  *Id.* ¶¶ 44–50.

19.     On February 26, 2018, this Court held a hearing to consider confirmation

of the Debtors' chapter 11 plan of reorganization (the "Plan").  At the hearing, the Court

addressed the Application and NextEra's request for payment of the NextEra Expenses as

an administrative expense and concluded that "the Debtors are not required to set aside a reserve specifically for [NextEra's] late filed $60 million administrative expense claim." D.I. 12770, Feb. 26, 2018 Hr'g Tr. 233:10–13.  The Court continued by finding that the Debtors "don't propose [creating a reserve for such expenses under the Plan] and I'm certainly not going to require them to do it."  *Id.* at 233:22–23.

20.      On February 27, 2018, the Court entered an order confirming the Plan.

## ARGUMENT

## I.   THE NEXTERA APPLICATION SHOULD BE DISMISSED OR SUMMARILY DENIED

21.      Under Bankruptcy Rule 9014(c), this Court has discretion to apply Bankruptcy Rule 7012 to a contested matter in the interest of judicial economy and the preservation of estate resources.  *See* Fed. R. Bankr. P. 9014(c); *see also In re Nortel Networks, Inc.*, 469 B.R. 478, 496 (Bankr. D. Del. 2011) (applying Bankruptcy Rule 7012 to proofs of claim where doing so would "advance judicial economy and preservation of estate resources").  The exercise of such discretion is particularly appropriate here where the Application is facially deficient and lacks any basis in law or factual support.  *See In re Best Prods. Co., Inc.*, 210 B.R. 714, 716 (Bankr. E.D. Va. 1997) (applying Bankruptcy Rule 7012 in a contested matter to dismiss an administrative expense application for failure to state a claim on which relief could be granted because a motion to dismiss "offer[s] an opportunity to resolve the parties' dispute expeditiously").

22.      Further, summary judgment is appropriate and must be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The plain language of Rule 56(c), as made applicable in this contested matter pursuant to Bankruptcy Rules

7056 and 9014, requires entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. *See id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Watson v. Eastman Kodak Co.*, 235 F.3d 851, 857–58 (3d Cir. 2000); *In re TMI*, 89 F.3d 1106, 1116 (3d Cir. 1996); *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998) (noting that summary judgment is particularly appropriate where the nonmoving party has presented no evidence or inferences that would allow a reasonable mind to rule in its favor).

23.     As set forth below, NextEra's right to reimbursement of the NextEra Expenses was denied pursuant to the Reconsideration Order.  Even assuming, *arguendo*, that the Reconsideration Order did not determine that issue, the Application must still be denied for two reasons.  *First*, the NextEra Expenses are not reimbursable from the Debtors' estates pursuant to the plain language of Sections 6.7, 8.5(b), and 9.1 of the Merger Agreement, which is fully integrated and dispositive of NextEra's rights and obligations on this issue.  *Second*, even if the NextEra Expenses were reimbursable under the Merger Agreement, which they are not, the NextEra Expenses do not satisfy the requirements for being allowed administrative expenses under section 503(b) of the Bankruptcy Code.  Accordingly, the Movants are entitled to judgment as a matter of law denying the Application and disallowing NextEra's request for an allowed administrative expense.[4]

---

[4]     The Court may also deny the Application if it determines that NextEra's request was untimely given that NextEra waited approximately five months after this Court issued its September 19, 2017 bench ruling denying and disallowing the Termination Fee before filing the Application. *See In re Chi. Pac. Corp.*, 773 F.2d 909, 917 (7th Cir. 1985) (noting that administrative expense requests "must be filed within a reasonable time after they arise" and barring an administrative expense request under the doctrine of laches where there was inexcusable delay that prejudiced the trustee).

**A.      The Merger Agreement Precludes Reimbursement Of The NextEra Expenses**

24.     Section 6.7 of the Merger Agreement provides that "[e]xcept as otherwise provided in Section 6.3, Section 6.18, Section 6.19, Section 6.20 and Section 6.22 or any administrative expenses of the Debtors' estates addressed in the Plan of Reorganization, *whether or not the Merger is consummated, all costs and expenses incurred in connection with this Agreement and the Closing Date Transactions* and the other transactions contemplated by this Agreement *shall be paid by the party incurring such expense.*" *See* D.I. 9190, Merger Agreement § 6.7(c) (emphasis added).[5] NextEra has thus disclaimed any right to recover expenses incurred by it in connection with the merger transaction.

25.     Further, Section 8.5(b) of the Merger Agreement defines the "Termination Fee" as "an amount equal to $275,000,000, *inclusive of all expense reimbursements, including all reasonable and documented professional fees of [NextEra]* and [EFH Merger Co., LLC]." *Id.* (emphasis added).  Accordingly, by the express terms of the Merger Agreement, the "Termination Fee" encompassed all fees and expenses— including, but not limited to, professional fees and expenses—that may be incurred by NextEra in connection with the proposed merger transaction.

26.     The Debtors confirmed this fact in their motion for approval of the Termination Fee and again on the record at the September 19, 2016 hearing to approve the Termination Fee.  *See* D.I. 9190 at ¶ 29 ("The Termination Fee is inclusive of all

---

[5]     Section 6.3 of the Merger Agreement provides that in the event EFH and NextEra agree in writing on the use of common counsel or consultants with respect to the negotiation, preparation, or filing of any necessary consent, registration, approval, permit, or authorization under Section 6.3(a), EFH and NextEra will share equally the fees and expenses of such counsel and consultants.  *See* Merger Agreement § 6.3(a)(ix).  Sections 6.18, 6.19, 6.20, and 6.22 of the Merger Agreement provide that NextEra will reimburse, indemnify, and/or hold EFH and certain of its affiliates and subsidiaries harmless with respect to costs and expenses incurred by EFH or any affiliates and subsidiaries thereof in connection with certain actions taken in connection with the merger transaction.  *Id.* §§ 6.18(c), 6.19(g), 6.20(b) and (c), and 6.22(c).  These provisions do not create any right of NextEra to be reimbursed by the Debtors or the estates for costs and expenses incurred by NextEra.

professional fees and expense reimbursements of NextEra and Merger Subsidiary."); D.I.

9606, Sept. 19, 2016 Hr'g Tr. 87:2–5 ("As part of that, Your Honor, we are, of course,

seeking approval of the $275 million termination fee. *That's inclusive of professional*

*fees and expense reimbursement*." (emphasis added)).

27.    Taken together, Sections 8.5 and 6.7 of the Merger Agreement provide

that the sole means by which NextEra could receive reimbursement for the NextEra

Expenses was through payment of the Termination Fee, which this Court has already

denied.  Critically, this remained the case even after the Debtors terminated the Merger

Agreement because, pursuant to Section 9.1 of the Merger Agreement, Sections 6.7 and

8.5 survived termination of the Merger Agreement.  *Id.* § 9.1.[6]

28.    Thus, pursuant to Sections 6.7, 8.5, and 9.1 of the Merger Agreement,

NextEra expressly and unambiguously agreed to (a) only seek the Termination Fee and (b)

bear and pay all costs and expenses incurred by it in connection with pursuing the merger

transaction.   Yet, despite this contractual obligation and the Court's denial of the

Termination Fee, NextEra has requested that this Court approve payment of the NextEra

Expenses, all of which were incurred in connection with its pursuit of the merger

transaction, "in the event that the Third Circuit affirms the Reconsideration Order."  *See*

Application at 2–3 and ¶ 35.  The Court should deny NextEra's request as a matter of law

based on the express terms of Section 6.7 of the Merger Agreement, which precludes any

such alternative relief.  *See Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 363 (3d Cir.

1987) ("a contract will not be given an interpretation that is in conflict with its express

---

[6]    Further, the Merger Agreement provides that such agreement, together with the exhibits and schedules
thereto and certain related agreements, "constitute the entire agreement of the parties hereto with
respect to the subject matter hereof . . . ."  *Id.* § 9.7.  Nothing in the exhibits, schedules, and other
agreements referenced in Section 9.7 overrides or alters the parties' agreements contained in Sections
6.7 and 8.5 of the Merger Agreement.

language."); *see also In re Magna Entm't Corp. v. PA Meadows, LLC*, 442 B.R. 88, 90–91 (Bankr. D. Del. 2011) (granting summary judgment and denying claim for payment where an agreement was unambiguous and plaintiff's argument that payment was owed did "not fit within the plain language of the contract."); *In re Elder*, 321 B.R. 820, 825 (Bankr. E.D. Va. 2005) ("Having agreed to bear its own attorney's fee as a part of the settlement, it cannot now seek to have the bankruptcy estate pay its attorney's fees either under § 330 as compensation for counsel to the estate or under § 503 as an administrative expense."). Therefore, on this basis alone, the Movants are entitled to judgment as a matter of law and the Application should be denied.

**B.      The NextEra Expenses Are Not Entitled To Administrative Expense Treatment Because They Were Not Actual, Necessary Costs And Expenses Of Preserving The Estates**

29.      Even assuming *arguendo* that the express terms of the Merger Agreement do not bar the relief sought in the Application, the NextEra Expenses simply do not qualify as administrative expenses under section 503(b)(1) of the Bankruptcy Code. Section 503(b)(1) allows as administrative expenses the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). The applicant bears "the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *O'Brien*, 181 F.3d at 535 (affirming lower court decision to denying break-up fee and expense reimbursement and finding that such fee and expenses were not actually necessary to preserve the value of the debtor's estate); *see also In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) (the allowability of an administrative expense "depends upon the requesting party's ability to

show that the fees were actually necessary to preserve the value of the estate.").  "In order to hold administrative expenses to a minimum and to maximize the value of the bankruptcy estate, section 503(b) is narrowly construed."  *In re Bernard Techs., Inc.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006).

30.    In the Application, NextEra makes no attempt to show that the NextEra Expenses either provided an actual benefit to the Debtors' estates or that they were actually necessary to preserve the value of the Debtors' estates.  This is hardly surprising, as the Court has already held otherwise.  Specifically, this Court already found that paying money out of the estates to NextEra under the circumstances here "could not provide an actual benefit to a debtor's estate" and "cannot constitute an actual necessary cost and expense of preserving the Debtors' estates."  Reconsideration Opinion at 31–34.

31.    Moreover, while NextEra attempts to justify its Application on the grounds that  NextEra relied on the Approval Order and that the transaction "would have brought" in substantial consideration for the estates had it closed, *see* Application ¶ 40, that "reliance" argument has also been previously rejected by this Court.  *See* Reconsideration Opinion at 24 ("NextEra cannot reasonably have relied on the Termination Fee Order when it knew the order was premised on an incomplete and confusing record.").  Also, <u>potential</u> substantial value is simply not enough, and as the Court properly found, under the circumstances NextEra provided no actual benefit and did not preserve the value of the Debtors' estates. *See* Reconsideration Opinion at 31–34. Indeed, because of NextEra's inability to close, the Debtors ultimately were forced to pursue a transaction providing substantially less consideration for the estates.

32.     In support of the Application, NextEra relies almost exclusively on the decision in *In re Women First Healthcare, Inc*., 332 B.R. 115 (Bankr. D. Del. 2005). Such reliance is misplaced.  In *Women First*, the debtor entered into a stalking horse agreement with a prospective purchaser.  *Id.* at 118.  No competing bids were submitted by the applicable bid deadline and, thus, the court entered an order approving the sale to the stalking horse bidder.  *Id.*  Prior to closing, a creditor holding an interest in the assets to be sold filed a motion for reconsideration of the sale order, arguing that the creditor had never been served with notice of the sale and that it was interested in bidding on the assets.  *Id.* at 119.  After the debtor conceded that notice was not proper, the court vacated the sale order and reopened the auction process.  *Id.*  The stalking horse and the new bidder participated in an auction and, at the conclusion, the debtor selected the new bidder as having submitted the highest and best offer.  *Id.* at 120.  Subsequently, the court allowed, in part, an administrative expense under section 503(b)(1) in favor of the stalking hose bidder for certain costs and expenses incurred by it in working towards closing after the initial sale order was entered.  *Id.* at 129.

33.     Plainly, the circumstances here are very different.  *First*, the applicant in *Women First* was willing and able to close the sale transaction and acted expeditiously to do so in reliance on the sale order.  NextEra was never in that position because it could not obtain regulatory approval.  *Second*, in *Women First* the court reconsidered the sale order not because of a misapprehension of critical facts, but because there was a procedural deficiency in the notice.  Accordingly, the court awarded the administrative expense in large part "due to the unique circumstances warranting the reconsideration of the Sun Sale Order"—namely, because the claims resulted from a post-petition tort

committed by the debtor.  *Id.  Third*, the stalking horse bidder in *Women First* fostered and participated in an actual competitive bidding process that resulted in a higher and better offer for the estate.  Here, NextEra did not foster any competitive bidding process.  Indeed, at the sale hearing on September 19, 2016, the Debtors expressly stated they expected no higher or better offers and none have ever come forward.  *See* D.I. 9606, Sept. 19, 2016 Hr'g Tr. at 28:13–14 ("The Debtors do not expect anyone will come in above the current purchase price.").  Ultimately, after over a year of incurring substantial costs and expenses, the Debtors were able to close a transaction with Sempra, albeit for substantially less value.

34.     In sum, NextEra has not made and cannot make any showing that the NextEra Expenses provided any actual benefit to or preserved the value of the Debtors' estates and assets.  Thus, NextEra cannot satisfy the requirements of section 503(b), especially in light of the express terms of the Merger Agreement.  *See Madison Equities, LLC v. Condren (In re Theatre Row Phase II Assocs.)*, 385 B.R. 511, 525 (Bankr. S.D.N.Y. 2008) (denying 503(b) administrative expense requests asserted by a prospective buyer for expenses incurred in engaging in diligence and pursuing the sale and finding that "[t]he Debtor never agreed with Madison to pay or reimburse Madison for any of its expenses in pursuing a deal for the Property. . . .  An allowable claim for an expense of administration must have a satisfactory basis in law other than Code § 503(a)(1), such as contract or tort, as well as factual validity").  Therefore, the Application should be denied on this basis as well.

C.     **NextEra Is Not Entitled To Payment Of A Purported Administrative Expense Under 11 U.S.C. § 503(b)(3)(D)**

35.     In a footnote in the Application, NextEra argues, in the alternative, that it should be entitled to recover the NextEra Expenses on the ground that it made a substantial contribution in these chapter 11 cases under section 503(b)(3)(D) of the Bankruptcy Code.  *See* Application at 19 n. 91.  NextEra, however, is not authorized to seek an administrative expense under section 503(b)(3)(D) because it is not a creditor or equity interest holder of EFH or EFIH.

36.     Under the express language of section 503(b)(3)(D), only "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102" may apply to the court for payment of actual, necessary expenses in making a substantial contribution to a debtor's case.  11 U.S.C. § 503(b)(3)(D); *Lebron v. Mecham Financial Inc.*, 27 F.3d 937, 943 (3d Cir. 1994) ("Under § 503(b)(3)(D), four categories of persons may apply for reimbursement of expenses: (1) creditors, (2) indenture trustees, (3) equity security holders, and (4) creditor and equity holder committees other than official committees appointed under § 1102 of the Bankruptcy Code."); *Velez v. St. Mary Hosp. (In re St. Mary Hosp.)*, 97 B.R. 199, 202–04 (Bankr. E.D. Pa. 1989) (because movants were not creditors or otherwise "within the scope of entities covered by §§ 503(b)(3)(D) and (b)(4) . . . we shall not allow them to invoke 11 U.S.C. §§ 503(b)(3)(D) and (b)(4) here.").

37.     NextEra is clearly not an indenture trustee or a committee, and a review of the Debtors' schedules and claims register reveals that NextEra is not a creditor or equity holder.  Further, NextEra makes clear in the Application that it is seeking reimbursement

solely as a potential buyer and not as a creditor or equity interest holder.  *See* Application at 1–2.  Accordingly, NextEra is precluded from seeking a substantial contribution claim under section 503(b)(3)(D).

38.    Regardless, even if NextEra could potentially seek relief under section 503(b)(3)(D), it has not demonstrated that the NextEra Expenses "resulted in an actual and demonstrable benefit to the debtor's estate and the creditors" as required under applicable Third Circuit law.  *Lebron*, 27 F.3d at 944 (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)); *see also In re Tropicana Entm't LLC*, 498 Fed. Appx. 150, 152 (3d Cir. 2012) (same).

39.    Therefore, NextEra's request for a substantial contribution claim under section 503(b)(3)(D) should be denied.

## II.    THE APPLICATION SHOULD BE DENIED BASED ON THIS COURT'S RULING IN CONNECTION WITH THE RECONSIDERATION ORDER

40.    As set forth above, Section 8.5(b) addressed the sole basis upon which could request reimbursement for the NextEra Expenses. This Court, however, has already ruled, following extensive briefing and a hearing, that the Termination Fee, which by the express terms of Section 8.5(b) included any fees and expenses incurred by NextEra in connection with the Merger Agreement, did not provide an actual, necessary benefit to the Debtors' estates as required under section 503(b)(1) of the Bankruptcy Code to qualify as an administrative expense.  *See* Reconsideration Opinion at 31–34. Accordingly, NextEra is bound by this Court's ruling and should be precluded from pursuing the relief requested in the Application.

41.    The law of the case doctrine directs this Court to "refrain from re-deciding issues that were resolved earlier in the litigation." *Pub. Interest Research Grp. of N.J.,*

*Inc. v. Magnesium Electrons, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997).  Under the law of the case doctrine, "once a matter has been addressed in a procedurally appropriate way by a court, it is generally held to be the law of that case and will not be disturbed by that court unless compelling reason to do so appears." *Burtch v. Masiz (In re Vaso Active Pharmaceuticals, Inc.)*, 500 B.R. 384, 398 (Bankr. D. Del. 2013); *James Cable, LLC v. Millennium Digital Media Sys., L.L.C. (In re Broadstripe, LLC)*, 435 B.R. 245, 255 (Bankr. D. Del. 2010) (same).

42.     Once a court decides an issue during the course of a case or proceeding, it should not revisit those same issues in subsequent stages of the case.  *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) ("the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (citations omitted)); *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 210 n.7 (3d Cir. 2003) ("Under the law-of-the-case doctrine, once an issue has been decided, parties may not relitigate that issue in the same case."), *superseded by statute on other grounds*, *Francois v. Gonzales*, 448 F.3d 645 (3d Cir. 2010).

43.     Similarly, the doctrine of collateral estoppel (also known as issue preclusion) bars the relitigation of an issue of fact or law that has previously been litigated.  *See Wallace v. United Parcel Serv.*, 387 F. App'x 127, 128 (3d Cir. 2010); *Eastern Pilots Merger Comm. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 279 F.3d 226, 232 (3d Cir. 2002) (collateral estoppel designed to protect litigants from the burden of relitigating issues that have already been litigated).  Collateral estoppel applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually

litigated; (3) the previous determination was necessary to the decision; and (4) the party

being precluded from relitigating the issue was fully represented in the prior action."

*Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001).

44.    In connection with the Reconsideration Order, this Court denied the Initial

503(b) Application and ruled that the Termination Fee did not satisfy the requirements to

qualify as an administrative expense under *O'Brien* or section 503(b) because the

Termination Fee could not (and did not) provide any actual benefit to the Debtors' estates

and was not an actual, necessary cost and expense of preserving the Debtors' assets.  *See*

Reconsideration Opinion at 31–34.  That ruling fully encompasses and disposes of the

NextEra Expenses as they are all components of the Termination Fee under the express

terms of the Merger Agreement.  *See* Merger Agreement § 8.5(b) (defining Termination

Fee to include "all expense reimbursements, including all reasonable and documented

professional fees" of NextEra that may be incurred in connection with the proposed

merger transaction).

45.    The Reconsideration Order provides that nothing in such order "shall

preclude NextEra from filing a request for allowance of an administrative claim (*on a

ground other than the grounds on which the Termination Fee was denied in the Opinion

and this Order*) and any person's rights to object to any such request."  Reconsideration

Order ¶ 8 (emphasis added).  However, the relief requested in the Application does not

fall within the scope of this provision as NextEra is merely extracting a component of the

Termination Fee and asking this Court to qualify it as an administrative expense on the

same grounds as NextEra previously sought, and this Court rejected, under section

503(b)(1).  The Reconsideration Order plainly was not intended to create a remedy for

NextEra that NextEra had already disclaimed in the Merger Agreement; were that the Court's intent, the Reconsideration Order would no doubt have said so explicitly.

46.     NextEra is simply using the Application as an improper means to relitigate an issue already decided by this Court in the hope of achieving a contrary result.  The Application presents the same issue that was (a) previously presented to the Court in connection with the Reconsideration Motion and the Initial 503(b) Application, (b) briefed and litigated by the same parties, all of whom were fully represented by counsel, and (c) decided by the Court in the Reconsideration Order and Reconsideration Opinion.  NextEra is therefore precluded from seeking the relief requested in the Application, which is duplicative of the relief sought and denied in the Initial 503(b) Application.

47.     As this Court has already ruled, the NextEra Expenses do not qualify as administrative expenses within the meaning of section 503(b)(1).  The Reconsideration Order is a valid and binding order and, as such, should be given preclusive effect and bar the relief requested in the Application. [7]

## RESERVATION OF RIGHTS

48.     The Movants reserve the right to amend, modify, or supplement the relief requested herein or seek additional relief with respect to the Application in the event it is not summarily denied by this Court, and reserve the right to object to the relief requested in the Application on any other ground, including, but not limited to, the reasonableness of the NextEra Expenses.

---

[7]     The fact that the Reconsideration Order is pending on appeal does not diminish the preclusive effect of such order for purposes of issue preclusion.  *See Tucker v. Bristol-Myers Squibb*, 143 F. App'x 411, 412 (3d Cir. 2005) ("a pending appeal does not vitiate the preclusive effect of a trial court judgment.") (citing *O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1066 n. 6 (3d Cir.1991)).

49.    Further, the Application lacks any valid legal or factual support and was brought for the improper purpose of further frustrating and delaying distributions to creditors.  Accordingly, the Movants reserve the right to seek sanctions and to recover from NextEra all costs and expenses, including professional fees, incurred by the Movants in opposing the Application pursuant to Bankruptcy Rule 9011, 28 U.S.C. § 1927, or otherwise.

## NOTICE

50.    Notice of this Motion has been provided to (a) counsel to NextEra, (b) counsel to the EFH Plan Administrator Board, (c) the Office of the United States Trustee for the District of Delaware, and (d) parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Trustee respectfully submits that no other or further notice is required.

## NO PRIOR REQUEST

51.    No prior request for the relief sought herein has been made to this or any other court.

*[Text Continues on the Next Page]*

**CONCLUSION**

For the foregoing reasons, the Court should enter an order (i) dismissing the Application and/or awarding summary judgment in the Movants' favor denying the relief requested in the Application and disallowing NextEra's request for an allowed administrative expense and (ii) granting such other and further relief as is just and proper.

Wilmington, Delaware
Date: March 23 2018

**BAYARD, P.A.**

*/s/ Erin R. Fay*
Scott D. Cousins (No. 3079)
Erin R. Fay (No. 5268)
Evan T. Miller (No. 5364)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
scousins@bayardlaw.com
efay@bayardlaw.com
emiller@bayardlaw.com

–and–

**ROPES & GRAY LLP**
Keith H. Wofford (admitted *pro hac vice*)
Gregg M. Galardi
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile:  (212) 596-9090
Keith.Wofford@ropesgray.com
Gregg.Galardi@ropesgray.com

*Counsel for UMB Bank, N.A., as Trustee, and Elliott*