


ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

March 28, 2018

**VIA ECF**

The Honorable Christopher S. Sontchi
United States Bankruptcy Court
for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

    Re:    *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS)

Dear Judge Sontchi:

    We submit this letter on behalf of UMB Bank, N.A., as Indenture Trustee (the "Trustee"), and Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott") in response to the letter submitted on March 27, 2018 on behalf of the EFH Plan Administrator Board [D.I. 12866][1] in connection with the status conference scheduled for this afternoon.

    The purpose of today's status conference was to address scheduling on the Trustee's and Elliott's joint motion to dismiss or, in the alternative, grant summary judgment on the request of NextEra for an approximately $60 million administrative expense. Yet, on the eve of this conference, counsel for the EFH Plan Administrator Board (the "PAB") has submitted a letter containing substantive argument and seeking substantive relief with respect to the separate issue of allocating the disallowed NEE Termination Fee and other material claims between the EFH and EFIH estates. The PAB has not filed any motion seeking the relief outlined in its letter. Instead, its counsel asks the Court (on less than one day's notice) to fix a deadline one week from today for the parties to submit briefs with respect to a number of complex and fact-intensive allocation issues—issues that the former EFH and EFIH Disinterested Directors could not resolve after many months, if not years. Moreover, the PAB's counsel made this request knowing that creditors of both the EFH and EFIH estates, including Elliott, have already reached a tentative settlement agreement regarding a number of allocation issues, including issues beyond those identified in their letter. In fact, Elliott anticipates that the parties may be in a position to seek approval of the parties' settlement by this Friday, March 30, and in all events by next Monday, April 2.

    The PAB's surprising request that the parties instead proceed immediately into litigation is counterproductive and improper in light of its obligations to represent all creditors under the Plan.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the EFH Plan Administrator Board's letter.

ROPES & GRAY LLP

- 2 -

This is so particularly given the magnitude and complexity of the allocation issues, the impact that these allocation issues have on creditor distributions, and the fact that the PAB and its counsel—and, previously, the Debtors and their counsel (other than the EFH and EFIH Disinterested Directors)—have had little involvement in the allocation negotiations due to potential conflicts relating to deconsolidation and Plan formation that arose prior to the Effective Date.

The allocation of various material claims in these cases (which are broader than the "Subject Claims" described in the PAB's letter) is a critical issue that will materially affect recoveries for unsecured creditors of EFH and EFIH. This has been a well-known fact for years, and, as confirmation approached and NextEra requested a reserve for its disallowed $275 million NEE Termination Fee, Elliott and the EFH and EFIH Disinterested Directors worked together to try to structure a settlement of the allocation issues related to the material claims. Although the parties were close to an agreement, they were ultimately unable to reach one because a purported creditor constituency surfaced and opposed the terms, and Elliott rejected that constituency's offer.[2] [D.I. 12769].

Consequently, in order to move forward with a prompt consummation of the Sempra transaction and to stem further administrative costs for the estates, Elliott, the Debtors, and the EFH and EFIH Disinterested Directors proceeded with Plan confirmation knowing that the allocation of various material claims remained unresolved and would need to be addressed after the Effective Date. Given the magnitude of the material claims to be allocated and the limited cash available at EFH, the parties, including the Debtors and the EFH and EFIH Disinterested Directors were well aware of the potential risk of administrative insolvency on the EFH side, given the allocation issues associated with the disallowed $275 million NEE Termination Fee. By supporting confirmation of the Plan, Elliott fully understood it would have to compromise its position on the allocation of the disallowed NEE Termination Fee, should the Third Circuit ultimately reverse the Court's Reconsideration Order. Elliott simply was not willing to compromise its position that at least 50% of the NEE Termination Fee ($137.25 million) should be allocated to EFH unless all other allocation issues were also resolved. Counsel for Elliott thus contended that a reserve was not required by section 1129(a)(9)(A) of the Bankruptcy Code and that NextEra should pay interest on any such reserve if the Court determined otherwise. As the Court knows, however, the Debtors took a different path at the confirmation hearing, deciding to seek this Court's approval of an entirely discretionary $275 million reserve for NextEra on which NextEra had to pay no interest. The Debtors, of course, knew that creditors would receive no compensation for the resulting delay in their distributions, and that the EFH and EFIH creditors and the EFH and EFIH Disinterested Directors had expressed widely divergent views on the proper allocation of the disallowed $275 million NEE Termination Fee and other material claims.

Thus, the unfortunate delay in Plan distributions to EFH unsecured creditors, including the Non-Qualified Beneficiaries, is very much the result of the Debtors and EFH and EFIH Disinterested

---

[2] This "constituency" never filed a disclosure pursuant to Rule 2019 of the Bankruptcy Code.

ROPES & GRAY LLP

- 3 -

Directors' own actions.[3]  It is inappropriate for the PAB's counsel to now place blame for the delay on the EFIH creditors that have advocated for a settlement of the numerous allocation issues for months with the EFH and EFIH Disinterested Directors—a settlement that would have permitted EFH to emerge and make substantial distributions to EFH creditors by now.  The present circumstances are also exactly those that this Court noted shortly before the confirmation hearing that all unsecured creditors must bear the risk of delay.  *See* Feb. 22, 2018 Hr'g Tr. 17:12–15.  It is thus improper for the PAB and its counsel to advocate for an expedited recovery solely for the Non-Qualified Beneficiaries when all or a material part of the other EFH and EFIH unsecured creditors' distributions are being delayed and a distribution to the Non-Qualified Beneficiaries could prejudice the *pro rata* recoveries to which the other EFH unsecured creditors are entitled under Article III of the Plan.  Indeed, the position taken by the PAB is contrary to its obligations under the Trust Agreement to administer the Trust for the benefit of ***all*** Trust beneficiaries in accordance with the Plan.  *See* Trust Agreement § 1.2.

Accordingly, while the Trustee and Elliott appreciate the desire to proceed with additional Plan distributions, given the magnitude of various outstanding allocation issues and the significant progress made with respect to a settlement of those issues among key EFH and EFIH unsecured creditors, the Trustee and Elliott request that the Court not entertain the PAB's scheduling proposal regarding a method to resolve the outstanding allocation disputes at this time.  No motion is before the Court, and the parties have been provided less than 24 hours notice to respond to the PAB's request.  Instead, the Court should require the PAB to file a motion seeking such relief, should it chose to do so in light of the progress made toward a resolution, while the EFH and EFIH creditors work to finalize the terms of a settlement and submit their proposal to the PAB.

We look forward to discussing these matters further with the Court during today's status conference.

Very truly yours,

*/s/ Gregg M. Galardi*
Gregg M. Galardi

Cc:   Howard Seife, Esq., Norton Rose Fulbright US LLP
      Dan K. Webb, Esq., Winston & Strawn LLP

---

[3] Furthermore, any creditor affected by this delay in distributions has a remedy under the Plan, which expressly authorizes them to seek relief from the Court.  See Plan [D.I. 12653], Art. VI.B.

ROPES & GRAY LLP

- 4 -

Thomas J. Buchanan, Esq., Winston & Strawn LLP
Marc Kieselstein, Esq., Kirkland & Ellis LLP
Mark McKane, Esq., Kirkland & Ellis LLP
Aparna Yenamandra, Esq., Kirkland & Ellis LLP