## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re:* | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
|  | (Jointly Administered) |
| Debtors.[1] | **Objection Deadline: May 14, 2018 @ 4:00 p.m.**<br>**Hearing Date: May 29, 2018 @ 1:00 p.m.** |

**APPLICATION OF CERTAIN ASBESTOS CREDITORS PURSUANT TO
11 U.S.C. § 503(B) FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR
REIMBURSEMENT OF EXPENSES INCURRED IN MAKING A
SUBSTANTIAL CONTRIBUTION IN THESE CHAPTER 11 CASES**

| | |
|---|---|
| Name of Applicants: | Shirley Fenicle, David William Fahy, John H. Jones, David Heinzmann, Harold Bissell, Kurt Carlson, Robert Albini, Denis Bergschneider, and Charlotte and Curtis Liberda ("**Certain Asbestos Creditors**") |
| Professional services provided by: | Hogan McDaniel, FrankGecker, LLP, and Caplin & Drysdale, Chartered |
| Dates of retention: | Hogan McDaniel – December 2014<br>FrankGecker, LLP – December 2014<br>Caplin & Drysdale, LLP – December 2015 |
| Period for which compensation and reimbursement is sought: | December 2014 through February 2018, and through date of final resolution of appeal from Confirmation Order |
| Amount of fees for which reimbursement is sought as actual, reasonable, and necessary: | $2,871,502.01, plus up to approximately $950,000 for fees that will be incurred through date of final resolution of Appeal from Confirmation Order |

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

Amount of expenses for which reimbursement
is sought as actual, reasonable, and necessary:       $29,271.65, plus up to approximately $50,000 for
expenses that will be incurred through date of
final resolution of appeal from Confirmation
Order

This is an application for reimbursement of fees and expenses that have been incurred and will
be incurred in making a substantial contribution in these cases. No prior application has been
filed.

## CAPLIN & DRYSDALE, CHARTERED

| Name of Professional Individual | Position of the Applicant and Yrs of Experience | Hourly Rate (including changes) | Total Hours Billed | Amount |
|---|---|---|---|---|
| **MEMBERS/OF COUNSEL/ASSOCIATES** | | | | |
| Elihu Inselbuch (EI) | Member–56 yrs; Admitted in 1962 | 2016: $1165 / 2017: $1215 | 11.3 | $13,176.99 |
| Peter Lockwood (PVL) | Member–52 yrs; Admitted in 1966 | 2016: $995 | 5.0 | $4,975.00 |
| Ann C. McMillan (ACM) | Member–34 yrs; Admitted in 1984 | 2016: $700 / 2017: $730 / 2018: $760 | 2.5 | $1,852.00 |
| Leslie M. Kelleher (LMK) | Member–37 yrs; Admitted in 1981 | 2016: $685 / 2017: $715 / 2018: $750 | 1,148.3 | $798,091.18 |
| Trevor W. Swett (TWS) | Member–35 yrs; Admitted in 1980 | 2016: $815 | 0.3 | $244.50 |
| James P. Wehner (JPW) | Member–23 yrs; Admitted in 1995 | 2016: $595 / 2017: $665 | 5.9 | $3,923.50 |
| Jeanna Rickards Koski (JRK) | Of Counsel–13 yrs; Admitted in 2005 | 2016: $470 / 2017: $515 / 2018: $540 | 927.9 | $457,802.91 |
| Andrew J. Sackett (AJS) | Of Counsel–13 yrs; Admitted in 2005 | 2016: $495 / 2017: $515 | 1.4 | $705.00 |
| Kevin M. Davis (KMD) | Associate–8 yrs; Admitted in 2010 | 2017: $375 | 2.3 | $862.50 |
| Sally J. Sullivan (SJS) | Associate–5 yrs; Admitted in 2013 | 2016: $295 / 2017: $330 | 219.9 | $65,492.45 |
| Caroline E. Parke (CEP) | Associate–2 yrs; Admitted in 2016 | 2018: $280 | 1.7 | $476.00 |
| **TOTAL MEMBERS/OF COUNSEL/ASSOCIATES** | | | **2,326.5** | **$1,347,602.03** |
| **PARALEGALS** | | | | |
| Paralegal & Staff – Library | | 2017: $255 | 2.3 | $586.50 |
| Cecilia Guerrero (CG) | Paralegal–16 yrs | 2016: $285 / 2017: $295 / 2018: $310 | 190.1 | $52,328.48 |
| Brigette A. Wolverton (BAW) | Paralegal–3 yrs | 2016: $240 / 2017: $250 / 2018: $265 | 63.7 | $15,579.50 |
| **TOTAL PARALEGALS** | | | **256.1** | **$68,494.48** |
| **GRAND TOTAL** | | | **2,582.6** | **$1,416,096.51** |

## EXPENSE SUMMARY

| EXPENSE CATEGORY | AMOUNT |
|---|---|
| Local Meals | $111.55 |
| Local Transportation - DC/NY | $109.95 |
| Travel - Air & Train | $324.00 |
| Travel - Hotel | $36.15 |
| Travel Related Transportation | $1,104.45 |
| Travel Related Meals | $85.74 |
| Travel - Miscellaneous | $371.84 |
| Pacer Charges | $246.50 |
| Epiq eDiscovery | $68.10 |
| **TOTAL** | **$2,458.28** |

## HOGAN MCDANIEL

| Name of Professional Individual | Position of the Applicant and Yrs of Experience | Hourly Rate (including changes) | Total Hours Billed | Amount |
|---|---|---|---|---|
| **MEMBERS/OF COUNSEL/ASSOCIATES** | | | | |
| Daniel K. Hogan (DKH) | Member–28 yrs; Admitted in 1990 | 2014: $400 / 2016: $425 12/1/2016: $455 / 2018: $525 | 2,854.4 | $1,263,967.00 |
| **TOTAL MEMBERS/OF COUNSEL/ASSOCIATES** | | | **2,854.4** | **$1,263,967.00** |
| **PARALEGALS** | | | | |
| Karen E. Harvey (KEH) | Paralegal-22 yrs. | 2015: $195 /2016: $200 / 8/1/2017: $210.00 / 2018: $225.00 | 206.7 | $41,886.50 |
| Michelle D. Rust (MDR) | Paralegal–16 yrs. | 2016: $200 / 2017: $210 | 444.1 | $89,067.00 |
| Gabrielle Durstein (GD) | Paralegal–3 yrs. | 2014: $195 / 2017: $210.00 | 8.5 | $1,666.50 |
| Allison L. Strauss (ALS) | Paralegal-2 yrs. | 2017: $200 / 2017: $210 / 2018: $225 | 21.7 | $4,776.00 |
| **TOTAL PARALEGALS** | | | **681.0** | **$137,396.00** |
| **GRAND TOTAL** | | | **2,582.6** | **$1,401,343.00** |

## EXPENSE SUMMARY

| | |
|---|---|
| **TOTAL** | **$25,397.13** |

## FRANKGECKER LLP

| Name of Professional Individual | Position of the Applicant and Yrs of Experience | Hourly Rate (including changes) | Total Hours Billed | Amount |
|---|---|---|---|---|
| **MEMBERS/OF COUNSEL/ASSOCIATES** | | | | |
| Joseph D. Frank (JDF) | Partner–22 yrs; Admitted in 1993 | 2015: $695 | 56.6 | $39,337.00 |
| Frances Gecker (FG) | Partner–27 yrs; Admitted in 1988 | 2014: $695; 2015: $695 | 14.0 | $9,730.00 |
| Micah Krohn (MRK) | Senior Counsel–22 yrs; Admitted in 1993 | 2015: $430 | 5.7 | $2,451.00 |
| Jeremy C. Kleinman (JCK) | Associate- 16 yrs; Admitted in 1999 | 2015: $410 | 3.6 | $1,476.00 |
| Reed Heiligman (RH) | Associate-8 yrs; Admitted in 2007 | 2015: $310 | 2.4 | $744.00 |
| **TOTAL MEMBERS/OF COUNSEL/ASSOCIATES** | | | **82.3** | **$53,738.00** |
| **PARALEGALS** | | | | |
| Christina Carpenter | Paralegal-12 yrs. | 2015: $145 | 2.1 | $304.50 |
| **TOTAL PARALEGALS** | | | **2.1** | **$304.50** |
| **GRAND TOTAL** | | | **84.4** | **$54,042.50** |

## EXPENSE SUMMARY

| EXPENSE CATEGORY | AMOUNT |
|---|---|
| Postage | $3.56 |
| Transcripts | $223.20 |
| Travel Expenses | $1,189.48 |
| **TOTAL** | **$1,416.24** |

| | HOURS | AMOUNT |
|---|---|---|
| TOTAL FEES FOR ALL PROFESSIONALS | **6,202.4** | **$2,871,502.01** |

| | AMOUNT |
|---|---|
| TOTAL EXPENSES FOR ALL PROFESSIONALS | **$29,271.65** |

| | AMOUNT |
|---|---|
| GRAND TOTAL FOR ALL PROFESSIONALS | **$2,900,773.66** |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| | (Jointly Administered) |
| Debtors.[2] | **Objection Deadline:**<br>**Hearing Date:** |

**APPLICATION OF CERTAIN ASBESTOS CREDITORS PURSUANT TO 11 U.S.C. § 503(B) FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR REIMBURSEMENT OF EXPENSES INCURRED IN MAKING A <u>SUBSTANTIAL CONTRIBUTION IN THESE CHAPTER 11 CASES</u>**

---

[2]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

## TABLE OF CONTENTS

Table of Authorities ................................................................................................................. ii

Jurisdiction and Venue............................................................................................................1

Relief Requested ....................................................................................................................1

Background.............................................................................................................................3

Summary of Actions Taken by Certain Asbestos Creditors in These Cases That Constitute a
    Substantial Contribution ...............................................................................................6

Summary of Fees and Expenses for Which Reimbursement Is or Will Be Sought.........................8

Basis for Requested Relief.......................................................................................................9

The Substantial Contribution Standard.......................................................................................10

I.   The Actions Taken by Certain Asbestos Creditors Were for the Benefit of Others Interested
    in the Estates, and Constitute Substantial Contributions in These Cases ...............................12

No Prior Request....................................................................................................................14

Conclusion ............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Plumbing & Mech., Inc.*,
  327 B.R. 273 (Bankr. W.D. Tex. 2005) ................................................................. 11

*In re Amatex Corp.*,
  755 F.2d 1034 (3d Cir. 1985) ............................................................................... 9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................. 9

*In re Bayou Grp., LLC*,
  431 B.R. 549 (S.D.N.Y. 2010) ................................................................. 11, 13, 14

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2004) ................................................................................. 9

*In re Energy Future Holdings Corp*,
  522 B.R. 520 (Bankr. D. Del. 2015) .................................................................. 3, 4

*In re Gen. Electrodynamics Corp.*,
  368 B.R. 543 (Bankr. N.D. Tex. 2007) ................................................................ 11

*Lebron v. Mechem Fin., Inc.*,
  27 F.3d 937 (3d Cir. 1994) ..................................................................... 10, 12, 13

*In re Lehman Bros. Holdings Inc.*,
  508 B.R. 283 (S.D.N.Y. 2014) ............................................................................ 12

*In re Summit Metals*,
  379 B.R. 40 (Bankr. D. Del. 2007), *aff'd*, 406 F. App'x 634 (3d Cir. 2011)
  (unpublished) ..................................................................................................... 13

*In re Tropicana Entm't, LLC*,
  498 F. App'x 150 (3d Cir. 2012) (unpublished) ....................................... 10, 11, 13

*In re Williams*,
  49 F. App'x 845 (10th Cir. 2002) (unpublished) ........................................... 11, 14

**Statutes**

11 U.S.C. § 503(b) ...................................................................................... 1, 8, 10, 12

11 U.S.C. § 507(a)(2)....................................................................................................................1

**Other Authorities**

Del. Bankr. L.R. 2016-2............................................................................................................2, 8

Texas Lawbook, Mar. 29, 2018,
    https://www.mysanantonio.com/business/energy/article/Energy-company-s-
    bankruptcy-generating-12789018.php .......................................................................................9

Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, David Heinzmann, Harold Bissell, Kurt Carlson, Robert Albini, individually and as successor-in-interest to the Estate of Gino Albini, Denis Bergschneider, and Charlotte and Curtis Liberda ("**Certain Asbestos Creditors**") by their undersigned counsel, respectfully submit this application (the "**Application**") for entry of an order, substantially in the form attached hereto as Exhibit A, allowing an administrative expense claim against the Debtors for reasonable documented legal fees and expenses incurred on account of the Certain Asbestos Creditors making a substantial contribution in these bankruptcy cases.    In support of this Application, Certain Asbestos Creditors rely on the declarations of Daniel K. Hogan, attached hereto as Exhibit B (the "**Hogan Declaration**"), Joseph D. Frank, attached hereto as Exhibit C (the "**Frank Declaration**"), and Jeanna Rickards Koski, attached hereto as Exhibit D (the "**Koski Declaration**").    In further support thereof, Certain Asbestos Creditors respectfully state as follows:

## JURISDICTION AND VENUE

This United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over these cases and this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District for the District of Delaware*, dated February 29, 2012.

Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief sought herein are §§ 503(b)(3)(D), 503(b)(4), and 507(a)(2) of the Bankruptcy Code.

## RELIEF REQUESTED

Pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Title 11 of the United States Code (the "**Bankruptcy Code**"), and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-2 of the Local Rules of the United States Bankruptcy Court

for the District of Delaware (the "**Local Rules**"), Certain Asbestos Creditors seek an order allowing an administrative expense claim against the Debtors, pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, in the aggregate amount of up to $4,000,000.00 for reasonable and documented professional fees and expenses, subject to review by the fee review committee appointed in these cases (D.I. 1896) (the "**Fee Committee**"), on account of Certain Asbestos Creditors' substantial contributions to these chapter 11 cases, including $2,900,773.66 for fees and expenses incurred through February 2018, and up to approximately $1,000,000 for future professional fees and expenses that will be incurred in connection with the Appeal from the Confirmation Order, (the "**Substantial Contribution Claim**").

The amounts requested consist of fees and expenses of counsel to Certain Asbestos Objectors—Hogan McDaniel, FrankGecker, LLP, and Caplin & Drysdale, Chartered—incurred during the period December 2014 through and including February 2018, as well as fees and expenses that will be incurred in connection with the appeal from the Confirmation Order.  The relevant detailed invoices and time records of FrankGecker, LLP, Hogan McDaniel, and Caplin & Drysdale, Chartered through February 2018, are attached to the Hogan, Frank, and Koski declarations, attached as exhibits B, C, and D hereto.  Invoices and time records for additional fees and expenses that will be incurred in connection with the Appeal from the Confirmation Order shall be submitted at a later date, as ordered by the Court.

To ensure that funds sufficient to pay the allowed amount of this Substantial Contribution Claim will remain available in the EFH/EFIH Cash Distribution Account after final resolution of any appeal from the Court's order on this Application, Certain Asbestos Creditors have filed, contemporaneously with this Application, a separate motion asking that the Court order that the

Plan Administrator Board establish a reserve for this administrative expense claim for an amount of up to $4,000,000.00.

## BACKGROUND

The Debtors, Energy Future Holdings Corp. ("**EFH Corp.**") and 69 of its direct and indirect subsidiaries (together, the "**Debtors**"), filed petitions for reorganization under Chapter 11 on April 29, 2014 (the "**Petition Date**").  *See Chapter 11 Voluntary Pet.*, D.I. 1.  The Debtors' bankruptcies were consolidated "for procedural purposes only" and administered jointly, pursuant to Federal Rule of Bankruptcy Procedure 1015 and Local Bankruptcy Rule 1015-1.  *See Final Order Directing Joint Administration of the Debtors' Chapter 11 Cases*, June 5, 2014, D.I. 849. The bankruptcy cases were not substantively consolidated.  *Id.* ¶ 5.

Debtors EECI, Inc.,[3] EEC Holdings , LSGT Gas Co. LLC, and LSGT SACROC, Inc. (the "**Asbestos Debtors**")[4] were in the business of building, maintaining, and servicing power plants, or are successors to entities that were engaged in that business.  *See In re Energy Future Holdings Corp.* ("*In re EFH Corp.*"), 522 B.R. 520, 523 (Bankr. D. Del. 2015).  Asbestos-containing insulation was installed throughout the power plants, where workers were inevitably exposed: "[a]sbestos exposure was virtually unavoidable in power plants built prior to 1980."  *Id.* at 524. Workers and their families who were exposed to the Debtors' asbestos decades ago will continue to succumb to asbestos-related illnesses for decades in the future.

---

[3]     EECI was formerly known as EBASCO, "which was at various times affiliated with Boise Cascade, Halliburton and Raytheon Corporation (all of which have had asbestos-related personal injury liability)."  *In re EFH Corp.*, 522 B.R. at 524.  EBASCO built power plants nationwide.

[4]     "Asbestos Debtors" refers to EECI, Inc. (Case No. 14-10992), EEC Holdings, Inc. (Case No. 14-10990), LSGT Gas Co. LLC (Case No. 14-11039), and LSGT SACROC, Inc. (Case No. 14-11012).

This Application is made to seek reimbursement as administrative expenses the fees and expenses that have been and will be incurred by Certain Asbestos Creditors in connection with their efforts to protect the rights of asbestos victims who, as of the Asbestos Bar Date[5] set in these cases, had not yet suffered cognizable injuries caused by pre-petition exposure to the Debtors' asbestos, and did not file timely proofs of claim, but who have since suffered or will suffer such injuries in the future ("**Unmanifested Asbestos Claimants**").[6]

On October 27, 2014, the Trustee appointed an official creditors' committee comprising five unsecured creditors of Energy Future Holdings Corp.; Energy Future Intermediate Holding Company, LLC; EFIH Finance, Inc.; and EECI (the "**E-Side Committee**"), including two asbestos creditors, Shirley Fenicle and David William Fahy, are members of the E-Side Committee.  *See Notice of Appointment of Committee of Unsecured Creditors*, D.I. 2570; *In re EFH Corp.*, 522 B.R. at 523, 524 n.7.  No committee was appointed to represent the interests of creditors with claims against the other three Asbestos Debtors:  EEC Holdings, Inc., LSGT Gas Co. LLC, and LSGT SACROC, Inc.  And no separate estate representative was appointed to represent Unmanifested Asbestos Claimants.

As the E-Side Committee recognized, the interests of currently-afflicted asbestos claimants and Unmanifested Asbestos Claimants are inherently in conflict, and thus the E-Side Committee was unable to adequately represent both groups of creditors.[7]  Yet the Debtors vigorously opposed

---

[5]    In the *Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form of and Manner for Filing Asbestos Proofs of Claims, and (C) Approving Notice Thereof*, July 30, 2015, D.I. 5171, the Court established a December 14, 2015 bar date for asbestos-related claims (the "Asbestos Bar Date").

[6]    The claims of Unmanifested Asbestos Claimants are referred to herein as "**Unmanifested Asbestos Claims**."

[7]    *See Notice of Emergency Motion of the EFH Official Committee for Entry of an Order (I) Adjourning the Hearing, Currently Scheduled for June 1, 2015, on the Debtors' Proposed Form of Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form of and*

4

the appointment of a separate legal representative for Unmanifested Asbestos Claimants,[8] and the Court declined to appoint a legal representative.[9]  In the absence of a separate estate representative for Unmanifested Asbestos Claimants, Ms. Fenicle and Mr. Fahy stepped into that role, and have sought to protect the interests and rights of absent Unmanifested Asbestos Claimants throughout these cases.

In December 2014, Ms. Fenicle and Mr. Fahy retained Hogan McDaniel and FrankGecker, LLP ("**FrankGecker**") as counsel to represent them in connection with their efforts to protect the interests and rights of absent Unmanifested Asbestos Claimants.  *See* Hogan Decl. ¶ 4; Frank Decl. ¶ 4.  In July 2015, Charlotte and Curtis Liberda retained Hogan McDaniel and FrankGecker as counsel to represent them in connection with their effort to protect the interests and rights of Unmanifested Asbestos Claimants by seeking the appointment of a separate legal representative for those claimant.  As the cases have progressed, Ms. Fenicle and Mr. Fahy have been joined in their efforts to protect Unmanifested Asbestos Claimants by Messrs. Jones, Heinzmann, Bissell, Carlson, Albini, and Bergschneider, who are also represented by Hogan McDaniel.  Each are Unmanifested Asbestos Claimants whose claims purportedly would be discharged by the Plan and Confirmation Order.

---

*Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof* ¶ 9 & n.4, May 21, 2015, D.I. 4553 (noting "potential, if not actual, conflict of interests between the Unmanifested Asbestos Claimants and other persons and entities within the constituency represented by" the E-Side Committee because the interests of those other persons and entities was "to maximize their own recovery, which may require minimizing the claims of Unmanifested Asbestos Claims.").

[8]    *See Obj. of Energy Future Holdings Corp., et al., to the Mot. of Charles Liberda and Curtis Liberda to Appoint Legal Representative and Joinder of Shirley Fenicle, as Successor-in-Interest to the Estate of George Fenicle, and David William Fahy to the Mot. of Charlotte and Curtis Liberda to Appoint Legal Representative* ¶ 5, Aug. 4, 2015, D.I. 5209.

[9]    *See Order Denying Mot. of Charlotte Liberda and Curtis Liberda to Appoint Legal Representative,* Aug. 11, 2015, D.I. 5265.

In or around January 2016, Ms. Fenicle and Mr. Fahy retained Caplin & Drysdale, Chartered as counsel to represent them in connection with the appeal from the Bankruptcy Court's December 2015 order confirming a now-defunct prior reorganization plan.  *See* Koski Decl. ¶ 2. Caplin & Drysdale has continued to represent Ms. Fenicle and Mr. Fahy in connection with their efforts to protect the rights of Unmanifested Asbestos Claimants through the present.

On February 27, 2018, the Court entered the order confirming the Debtors' Plan.[10]  The EFH Effective Date occurred on March 9, 2018 (the "**Effective Date**").[11]  Certain Asbestos Creditors have appealed the Confirmation Order insofar as it would purport to permit the discharge of Unmanifested Asbestos Claims (the "**Appeal**").[12]  That Appeal is pending before the District Court.

## SUMMARY OF ACTIONS TAKEN BY CERTAIN ASBESTOS CREDITORS IN THESE CASES THAT CONSTITUTE A SUBSTANTIAL CONTRIBUTION

Certain Asbestos Claimants have made a substantial contribution to these reorganization cases by taking on roles that normally would be expected of estate-compensated professionals. They sought to have a separate estate-compensated professional appointed to represent the interests of Unmanifested Asbestos Claimants.  When those efforts were unsuccessful, and in the absence of a separate legal representative for Unmanifested Asbestos Claimants, Certain Asbestos Creditors have throughout these bankruptcy cases fought tirelessly to protect the interests of absent Unmanifested Asbestos Claimants.  Among other things, Certain Asbestos Claimants have:

---

[10]     *See Order Confirming the First Am. Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, D.I. 12763 (the "**Confirmation Order**").

[11]     *See Notice of Entry of EFH Confirmation Order and Occurrence of EFH Effective Date*, Mar. 9, 2018, D.I. 12801.

[12]     *Notice of Appeal*, *Fenicle v. Energy Future Holdings Corp.* (*In re Energy Future Holdings Corp.*), Civil Action No. 18-00381 (D. Del. Mar. 9, 2018), D.I. 1.

- Sought to have a separate legal representative for Unmanifested Asbestos Claimants appointed;

- Objected to inadequate disclosures regarding asbestos liabilities in the 2015 disclosure statements, including an appeal from approval of the 2015 disclosure statement;

- Objected to motions to approve merger agreements that required the plan to discharge Unmanifested Asbestos Claims, and to approve termination fees in connection with such merger agreements, and appealed orders approving same;

- Participated in discovery regarding each of the Debtors' plans, including document requests and attendance at depositions, negotiating with various parties regarding discovery issues, and brief discovery issues;

- Joined objections to settlements of certain claims;

- Supported efforts to have a class representative appointed to represent Unmanifested Asbestos Claimants;

- Objected to supplemental bar date for certain claims, which extended the bar date for claims of asbestos defendants for contribution, while the bar date for claims by asbestos victims was not extended;

- Moved to dismiss the chapter 11 petitions of the Asbestos Debtors;

- Participated in hearings, including plan confirmation hearings; and

- Objected to confirmation of the Debtors' plans, each of which contained provisions that would discharge Unmanifested Asbestos Claims in violation of due process;

- Negotiated with Debtors regarding and/or briefed various issues in connection with confirmation hearings, including scheduling and evidentiary issues;

- appealed from various orders of the Bankruptcy Court, including orders confirming the Debtors' reorganization plans;

- negotiated with Debtors regarding mediation statements and other issues in connection with such appeals;

- negotiated with Debtors regarding and/or briefed various issues in connection with such appeals, including issues regarding scheduling, joinder of certain asbestos creditors to obviate any standing issues, consolidations of appeals, and sealing issues;

## SUMMARY OF FEES AND EXPENSES FOR WHICH
## REIMBURSEMENT IS OR WILL BE SOUGHT

Through February 2018, Certain Asbestos Creditors incurred $2,900,773.66 in fees and expenses in their efforts to protect the rights of Unmanifested Asbestos Claimants. They estimate that they will incur up to approximately $1,000,000 in additional fees and expenses in connection with the Appeal from the Confirmation Order.

Attached to each of the Hogan, Frank, and Koski declarations submitted in support of this Application are:

(1) a schedule setting forth (a) the names of all professionals and paraprofessionals at the relevant firm who performed services for which Certain Asbestos Creditors seek reimbursement in this Application; (b) the capacities in which such individuals are employed at the relevant law firm, and their years of bar admission, where applicable; (c) the hourly billing rates charged by the relevant law firm for services performed by such individuals; (d) the total number of hours billed by each such individual; and (e) the total fees charged for services performed by such individuals;

(2) a schedule setting out by categories the expenses for which Certain Asbestos Creditors are seeking reimbursement, and the amount for each category;

(3) a schedule listing all the expenses for which reimbursement is sought; and

(4) detailed time records.

Time records have been redacted where necessary to protect attorney-client privilege, and are available for in-camera review if the Fee Committee requests or Court so orders. Receipts for each disbursement or expense item for which reimbursement is sought also are available on request, as required by Local Rule 2016-2.

All services performed by Hogan McDaniel, FrankGecker, and Caplin & Drysdale for which reimbursement as an administrative expense is being sought were performed on behalf of Certain Asbestos Creditors for the benefit of Unmanifested Asbestos Claimants who did not file timely proofs of claim.

Certain Asbestos Creditors seek reimbursement for only those fees and expenses they believe substantially contributed to these chapter 11 cases, for an aggregate total of $2,871,502.01 for fees and $29,271.65 for expenses, and do not seek reimbursement for any other fees or expenses.  In addition, Caplin & Drysdale voluntarily reduced their bills by a total amount of $753.50, and did not charge Ms. Fenicle and Mr. Fahy for the use of Westlaw, Lexis and PACER databases (other than a PACER charge of $246.50 in April 2016, telephone charges, postage, or photocopying).

## BASIS FOR REQUESTED RELIEF

Certain Asbestos Creditors are entitled to reimbursement of their expenses, pursuant to § 503(b)(3)(D), (b)(4) of the Bankruptcy Code, for their substantial efforts and contributions to these chapter 11 cases.  The expenses they incurred in making those contributions are actual, necessary, and reasonable expenses, commensurate with the complexity and importance of the issues and tasks involved.

The estates have paid more than $600 million in professional fees to date; an average of $420,000 per day.  And there is much more to come:  EFH's general counsel Andy Wright has predicted that "[t]he total fees for all the professionals – for the lawyers, bankers, accountants, restructuring experts for all the companies involved – will probably hit $1 billion."[13]  The amount

---

[13]     Texas Lawbook, Mar. 29, 2018, https://www.mysanantonio.com/business/energy/article/Energy-company-s-bankruptcy-generating-12789018.php

sought by Certain Asbestos Creditors in this Substantial Contribution Motion is miniscule in comparison.    Certain Asbestos Creditors incurred the expenses for which they now seek reimbursement in connection with their efforts to protect the rights and interests of certain asbestos creditors, for whom no separate legal representative was appointed, despite the Third Circuit's clear instruction that a separate representative should be appointed in bankruptcy cases, such as these, in which the rights and interests of Unmanifested Asbestos Claimants will be affected.  *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 (3d Cir. 2004)) (internal citations omitted) ("In the resolution of future asbestos liability, under bankruptcy or otherwise, future claimants must be adequately represented throughout the process."); *see also In re Amatex Corp.*, 755 F.2d 1034, 1045 (3d Cir. 1985) (holding that future asbestos claimants (*i.e.*, those who had been exposed to the debtor's asbestos but not yet been diagnosed with asbestos-related illnesses) were entitled to representation during reorganization proceedings).  As the Supreme Court has instructed, the same estate professional cannot represent both currently injured asbestos claimants, and Unmanifested Asbestos Claimants, as their interests are inherently conflicted.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) ("[F]or the currently injured, the critical goal is generous immediate payments.  That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future.").  Thus, the E-Side Committee could not adequately represent the interests of Unmanifested Asbestos Claimants, which the Committee itself recognized.  *See supra* note 7.

### THE SUBSTANTIAL CONTRIBUTION STANDARD

Section 503(b) of the Bankruptcy Code provides that, where a creditor has made a "substantial contribution" in a chapter 11 case, the court shall allow an administrative expense claim for the creditor's actual and necessary costs and expenses, including the reasonable fees and expenses of its attorneys.  *See* 11 U.S.C. § 503(b)(3)(D), (b)(4).  The applicable test to determine

10

whether a party has made a "substantial contribution" within the meaning of § 503(b)(3)(D) is "whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Fin., Inc.*, 27 F.3d 937, 944 (3d Cir. 1994).

The Third Circuit has instructed that the "substantial contribution" standard "excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate." *In re Tropicana Entm't, LLC*, 498 F. App'x 150, 152 (3d Cir. 2012) (unpublished) (citing *Lebron*, 27 F.3d at 944). The Third Circuit also has recognized that "most activities of an interested party that contribute to the estate will also, of course, benefit that party to some degree" and thus has instructed that "the existence of a self-interest cannot in and of itself preclude reimbursement." *Lebron*, 27 F.3d at 944. Thus, creditors will be entitled to reimbursement for substantial contribution if they "satisfy the court that their efforts have transcended self-protection," *id.*, and that their acts were "designed to benefit others who would foreseeably be interested in the estate." *Id.* at 946. That is, creditors will be entitled to substantial contribution where the benefit to the estate and creditors is "more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests." *Tropicana Entm't*, 498 F. App'x at 152 (citing *Lebron*, 27 F.3d at 944).

Although the amount to be allowed as an administrative expense must be measured in dollars and cents, the benefits to the estate may be "less readily calculable." *In re Am. Plumbing & Mech., Inc.*, 327 B.R. 273, 282-83 (Bankr. W.D. Tex. 2005) (quoting *In re TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1420 (5th Cir. 1992)). As the Tenth Circuit has observed, "[w]hile finding additional assets of the estate may be a classic form of making a substantial contribution, it is not the only one.*" In re Williams*, 49 F. App'x 845, 850 (10th Cir. 2002)

(unpublished).  Thus, "courts have found that efforts to secure the appointment of a Chapter 11 trustee," and that "efforts to secure a confirmation plan favorable to all the creditors" were substantial contributions.  *Id*. (internal citations omitted).

As one court has noted, in the majority of cases in which substantial contribution claims are allowed, the creditors "played a leadership role that normally would be expected of an estate-compensated professional but was not so performed."  *In re Bayou Grp., LLC*, 431 B.R. 549, 562 (S.D.N.Y. 2010).  In *Bayou Group*, the court found that an unofficial creditors committee had made a substantial contribution by, *inter alia*, identifying suitable candidates and moving for appointment of receiver, researching potential claims, and by sharing that research with other creditors and the receiver.  *Id.* at 563-66.  And in *In re General Electrodynamics Corp.*, 368 B.R. 543, 554-56 (Bankr. N.D. Tex. 2007), the court found that the applicant's actions as a surrogate creditors' committee that policed the actions of the debtors were a substantial contribution to the estate.  Moreover, members of official committees may be reimbursed for making a substantial contribution where they have performed "extraordinary work to benefit the estate, above and beyond normal committee duties."  *See In re Lehman Bros. Holdings Inc.*, 508 B.R. 283, 294 (S.D.N.Y. 2014).

I.     **THE ACTIONS TAKEN BY CERTAIN ASBESTOS CREDITORS WERE FOR THE BENEFIT OF OTHERS INTERESTED IN THE ESTATES, AND CONSTITUTE SUBSTANTIAL CONTRIBUTIONS IN THESE CASES**

The professional fees and expenses sought in this Substantial Contribution Claim are compensable under § 503(b)(3)(D) because they were actual and necessary costs and expenses of Certain Asbestos Claimants in making a substantial contribution in these cases.

There can be no serious dispute that these actions by Certain Asbestos Creditors in these cases were "designed to benefit others who would foreseeably be interested in the estate[s]" *Lebron*, 27 F.3d at 946: namely, absent Unmanifested Asbestos Creditors who did not file proofs

of claim.  Ms. Fenicle and Mr. Fahy, who have been the driving force in the efforts to protect the interests of these absent claimants, clearly have not acted in their own self-interest:  they each filed proofs of claim, and were in no danger of having their claims discharged under any version of the Plan.  Because no estate fiduciary was appointed to represent the interests of absent Unmanifested Asbestos Claimants, Ms. Fenicle and Mr. Fahy, members of the E-Side Committee, stepped into that role, with no expectation or hope of personal benefit.

The remaining Certain Asbestos Creditors may benefit if the Confirmation Order is overturned insofar as it would discharge Unmanifested Asbestos Claims. But "the existence of a self-interest cannot in and of itself preclude reimbursement." *Id.* at 944.  While Certain Asbestos Creditors' actions in these chapter 11 cases were in some of those creditors' interests, just as "[m]ost activities of an interested party that contribute to the estate will also, of course, benefit that party to some degree," their efforts have been focused on protecting the interests of absent Unmanifested Asbestos Claimants. *Id.*  Certain Asbestos Creditors have sought to benefit absent Unmanifested Asbestos Claimants by seeking to have a separate legal representative appointed to protect the interests of Unmanifested Asbestos Claimants and, when no representative was appointed, seeking to prevent confirmation of a Plan that would discharge the claims of these absent and unrepresented claimants,  They continue in those efforts now by pursuing an Appeal of the Confirmation Order insofar as it would discharge of such claims.  In so doing, Certain Asbestos Claimants have worked to fill the gap created by the absence of a court-appointed estate representative for Unmanifested Asbestos Claimants, and have "played a leadership role that normally would be expected of an estate-compensated professional but was not so performed." *Bayou Grp.*, 431 B.R. at 562.  From the outset of these cases, the Debtors have pursued their goal of discharging as many Unmanifested Asbestos Claims as possible.  Certain Asbestos Creditors

have shouldered the costs of opposing the Debtors' efforts.  Their actions were not "designed primarily to serve their own interests," and thus "would have been undertaken absent an expectation of reimbursement from the estate." *Tropicana Entm't*, 498 F. App'x at 152.  Rather, their actions were of the sort that would ordinarily be taken by estate-compensated professionals, for the benefit of all Unmanifested Asbestos Claimants

If Certain Asbestos Creditors are successful in their Appeal from the Confirmation Order, their efforts will unquestionably be proven to have "resulted in an actual and demonstrable benefit to the debtor's estate and the creditors," sufficient to justify allowance of their administrative expenses claim.  *Lebron*, 27 F.3d at 944.  The claims of Unmanifested Asbestos Creditors who did not file proofs of claim will not be discharged, and will be reinstated against the Reorganized Debtors, and when such claimants suffer injuries caused by prepetition exposure to the Debtors' asbestos, they will be able to file suit in non-bankruptcy court to recover damages.  Without the efforts of the Certain Asbestos Creditors, such a result would not be possible.  *See In re Summit Metals*, 379 B.R. 40, 51 (Bankr. D. Del. 2007) (whether creditors' "services were duplicative of services performed by others" is a factor to consider in determining substantial contribution claim), *aff'd*, 406 F. App'x 634 (3d Cir. 2011) (unpublished).

Regardless of whether the Appeal is granted, Certain Asbestos Creditors' administrative expenses claim should be allowed.  In their persistent efforts to secure confirmation of a plan that is favorable to all creditors, they played a role that should have been played by an estate representative, and thus have made a substantial contribution in these cases.  *See Bayou Grp.*, 431 B.R. at 562; *In re Williams*, 49 F. App'x at 850.

## NO PRIOR REQUEST

No prior application for the relief requested herein has been made to this or any other Court.

**CONCLUSION**

For the foregoing reasons, Certain Asbestos Creditors respectfully request that the Court enter the Order and grant such other and further relief as it deems appropriate under the circumstances.

Dated:  April 9, 2018                             Respectfully submitted:
        Wilmington, Delaware

                           By:      */s/ Daniel K. Hogan*
                                    Daniel K. Hogan (DE Bar # 2814)
                                    HOGAN MCDANIEL
                                    1311 Delaware Avenue
                                    Wilmington, Delaware 19806
                                    Telephone: (302) 656-7540
                                    Facsimile: (302) 656-7599
                                    dkhogan@dkhogan.com

                                    *Counsel for Shirley Fenicle, individually and as
                                    successor-in-interest to the Estate of George
                                    Fenicle, David William Fahy, John H. Jones, David
                                    Heinzmann, Harold Bissell, Kurt Carlson, and
                                    Robert Albini, individually and as successor-in-
                                    interest to the Estate of Gino Albini, and Denis
                                    Bergschneider*

                                    -and-

                                    Steven Kazan (admitted *pro hac vice*)
                                    KAZAN MCCLAIN SATTERLEY &
                                    GREENWOOD
                                    A Professional Law Corporation
                                    Jack London Market
                                    55 Harrison Street, Suite 400
                                    Oakland, CA 94607
                                    Telephone: (510) 302-1000
                                    Facsimile: (510) 835-4913

                                    *Counsel for Shirley Fenicle, individually and as
                                    successor-in-interest to the Estate of George
                                    Fenicle, and Denis Bergschneider*

                                    -and-

                                    Ethan Early (admitted *pro hac vice*)
                                    EARLY LUCARELLI SWEENEY &
                                    MEISENKOTHEN
                                    265 Church Street, 11th Floor
                                    New Haven, CT 06508-1866
                                    Telephone: (203) 777-7799
                                    Facsimile: (203) 785-1671

*Counsel for David William Fahy, David
Heinzmann, Harold Bissell, Kurt Carlson, and
Robert Albini, individually and as successor-in-
interest to the Estate of Gino Albini*

-and-

Jonathan Ruckdeschel (admitted *pro hac vice*)
THE RUCKDESCHEL LAW FIRM LLC
8357 Main Street
Ellicott City, MD 21043
Telephone:  410-750-7825
Facsimile: 443-583-0430

*Counsel for David Heinzmann*

-and-

Beth Gori (admitted *pro hac vice*)
Gori Julian & Associates, P.C.
156 North Main Street
Edwardsville, IL 62025
Telephone: (618) 659-9833
Facsimile: (618) 659-9834

*Counsel for John H. Jones*

## **LOCAL RULE 2016-2(g) CERTIFICATION**

I, Daniel K. Hogan, am a partner at Hogan McDaniel, with offices at 1311 Delaware Avenue, Wilmington, Delaware 19806.  I am counsel to Certain Asbestos Creditors, Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, David Heinzmann, Harold Bissell, Kurt Carlson, Robert Albini, individually and as successor-in-interest to the Estate of Gino Albini, and Denis Bergschneider.  I am a member of good standing in the bars of the states of Delaware and Pennsylvania, and am admitted to practice in the state courts of Delaware and Pennsylvania as well as the United States District Court for the District of Delaware, and the United States Court of Appeals for the Third Circuit.

I have reviewed Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware.  To the best of my knowledge, information and belief formed after reasonable inquiry, this Application complies with Local Rule 2016-2.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 9, 2018

*/s/*_____
Daniel K. Hogan (DE Bar # 2814)
HOGAN MCDANIEL
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599
dkhogan@dkhogan.com