**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

--------------------------------------------------------- X
                                      :

In re:                              :    Chapter 11
                                        :

Energy Future Holdings Corp., *et al.*,[1]    :    Case No. 14-10979 (CSS)
                                        :

           Debtors.        :    (Jointly Administered)
                                        :

                                        :    **Re: D.I. 12844**
                                        :
--------------------------------------------------------- X

### OBJECTION OF NEXTERA ENERGY, INC. TO JOINT MOTION OF UMB BANK, N.A., AS INDENTURE TRUSTEE, AND ELLIOTT FUNDS TO (I) DISMISS APPLICATION OF NEXTERA FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE, OR, IN THE ALTERNATIVE, (II) GRANT SUMMARY JUDGMENT DENYING AND DISALLOWING SUCH ADMINISTRATIVE EXPENSE

NextEra Energy, Inc. ("NextEra") hereby objects to the joint motion (the "Summary Judgment Motion")[2] of UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25% Senior Toggle Notes due 2018, and Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott" and, together with the Trustee, the "Movants") to dismiss or, in the alternative, grant summary judgment denying and disallowing the *Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Claim* [D.I. 12671] (the "Application").

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]   Capitalized terms used, but not otherwise herein defined, shall have the meanings ascribed to them in the Summary Judgment Motion.

## PRELIMINARY STATEMENT

If the Court's Reconsideration Order is affirmed and NextEra's Termination Fee claim is rejected, NextEra is entitled to recover expenses and costs incurred in efforts to close on its acquisition of Oncor. Those efforts were undertaken pursuing a transaction that would have realized over $9.8 billion for the estate (hundreds of millions more than the Sempra deal) and which consequently was endorsed not only by Debtors but virtually every creditor constituency. NextEra's endeavors, like those of the unsuccessful purchaser in *In re Women First Healthcare,* 332 B.R. 115 (Bankr. D. Del. 2005), benefitted the estate even though the transaction ultimately was not consummated, and the resulting expenses are recoverable under section 503(b)(1)(A).

As the Application observed, such expense reimbursement is precisely what Elliott's counsel, arguing in support of its Reconsideration Motion, asserted an unsuccessful acquirer should recover instead of a termination fee in circumstances such as these.[3] But, true to form, the Movants are unwilling to be bogged down by consistency, and now seek in the Summary Judgment Motion to have their cake and eat it too.

The Movants' principal argument—that Merger Agreement Section 6.7 bars NextEra from recovering its administrative expenses—ignores the plain language of that provision, which expressly excludes "administrative expenses of the Debtors' estates" from its requirement that the parties are otherwise to bear their own expenses. Moreover, even if one accepted the Movants' mistaken claim that Section 6.7's terms bar NextEra's recovery of such expenses, the Movants' argument still fails. Under basic contract principles and the terms of the Merger Agreement itself, if the Reconsideration Order is upheld, the purported expense limitations would not be binding on NextEra. NextEra never agreed to the modified contract terms approved by the Court in the Reconsideration Order, and the Court's rejection of the Termination Fee provision in the

---

[3]    Application at 2 & n.5 (citing Hr'g Tr., Sept. 29, 2017, at 39:9-10).

form agreed to by the parties would render the claimed expense limitations unenforceable. Indeed, the court in *Women First*, after granting reconsideration of its order approving the asset purchase agreement there, ignored such contractual expense limitations in awarding the unsuccessful bidder its expenses.

The Movants' secondary argument, that this Court's prior Reconsideration Order precludes recovery of NextEra's claim under the collateral estoppel and law of the case doctrines, mischaracterizes the scope of that Order (and of the Court's Reconsideration Opinion). Whether NextEra's efforts to close the Oncor transaction provided a benefit to the estate was never before the Court or addressed in the Reconsideration Opinion or Order, which instead concerned NextEra's contractual claim for the Termination Fee, and whether that Fee benefitted the estate. On the contrary, Reconsideration Order ¶ 8 expressly acknowledged that NextEra could present a claim such as that advanced in the Application.

The Movants' other arguments—that the Application was untimely and that NextEra filed the Application to intentionally frustrate and delay distributions to creditors (thus giving rise to possible sanctions against NextEra)—are frivolous and are themselves asserted with the improper purpose of intimidating and harassing NextEra.

Finally, although the Summary Judgment Motion can be denied on the merits now, NextEra submits that it is appropriate to stay all matters related to the Application, including this motion, pending a ruling on the Third Circuit appeal. The Summary Judgment Motion is premature because it asks the Court to rule on an application that was filed "in the alternative" to NextEra's Termination Fee claim and which soon may be rendered unnecessary when the Third Circuit rules. Further, while NextEra believes that the record already establishes that its efforts to close the transaction benefitted the estate, and that Merger Agreement Section 6.7's plain language preserves NextEra's right to reimbursement of administrative expenses, to the extent

there is any issue in this regard, there is a genuine dispute of material fact or, at minimum, an issue that must be fleshed out through discovery—making resolution by summary judgment and/or a motion to dismiss inappropriate.

## LEGAL STANDARDS FOR MOTIONS TO DISMISS AND SUMMARY JUDGMENT

1.      On a motion to dismiss the Application for failure to state a claim pursuant to Fed. R. Bank. P. 7012 and Fed. R. Civ. P. 12(b)(6), the Court must "accept as true all allegations in the [Application] as well as all reasonable inferences that can be drawn from them, and . . . construe them in a light most favorable to the non-movant." *See Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018); *see also In re Best Prods. Co., Inc.*, 210 B.R. 714, 716 n.2 (Bankr. E.D. Va. 1997).  To defeat such a motion, "*Twombly* and *Iqbal* require only plausibility," *i.e.*, "that factual allegations be enough to raise a right to relief above the speculative level." *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 254 (3d Cir. 2017) (quotation marks omitted).[4]

2.      On a motion pursuant to Fed. R. Bank. P. 7056 and Fed. R. Civ. P. 56, "[s]ummary judgment is appropriate only if there 'is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Budhun v. Reading Hosp. and Med. Center*, 765 F.3d 245, 251 (3d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  "A 'material fact' is one that might affect the outcome of the suit and a 'genuine dispute' means that the evidence pointed to by the non-movant would allow a reasonable trier-of-fact to decide the 'material fact' in the non-movant's favor." *In re Devonshire PGA Holdings LLC*, 548 B.R. 689, 697 (Bankr. D. Del. 2016) (Sontchi, J.).  "The moving party bears the burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact." *Santini v. Fuentes*, 795

---

[4]   This standard is "not akin to a probability requirement." *In re Lipitor Antitrust Litig.*, 868 F.3d at 254 (quotation marks omitted).  Rather, the Third Circuit has "cautioned that the plausibility standard does not impose a heightened pleading requirement, and that Federal Rule of Civil Procedure 8(a) continues to require only a 'showing' that the pleader is entitled to relief." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016).

F.3d 410, 416 (3d Cir. 2015).

3.      "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks and emphasis omitted).  Throughout, the Court "must construe all evidence in the light most favorable to the nonmoving party." *Id.*  The Court should "neither weigh the evidence nor determine the truth of the matter during the summary judgment phase; instead, it must deny the motion for summary judgment when a genuine issue of material fact is demonstrated." *In re Powerwave Tech., Inc.*, Adv. Pro. No. 15-50085, 2017 WL 1373252, at *2 (D. Del. Apr. 13, 2017).

4.      "[T]he summary judgment process presupposes the existence of an adequate record" and "it is well established that a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Doe v. Abington Friends School*, 480 F.3d 252, 257 (3d Cir. 2007).  Accordingly, "[i]f discovery is incomplete in any way material to a pending summary judgment motion," it is appropriate to deny the motion. *Id.*; *see also* Fed. R. Bank. P. 7056(d); Fed. R. Civ. P. 56(d).

5.      Application of these standards here necessitates rejection of the Summary Judgment Motion or, at minimum, that it not be decided until NextEra has been afforded the opportunity to conduct discovery.

## OBJECTION[5]

I.      **NextEra's Administrative Claim for Expenses Satisfies Section 503(b) of the Bankruptcy Code**

6.      The Movants erroneously assert that "NextEra has not made and cannot make any

---

[5]    The factual basis for NextEra's expense reimbursement claim is further set forth in the Application, which is incorporated herein by reference.  NextEra requests judicial notice of each docket item and transcript cited in either the Application or this Objection.

showing that the NextEra Expenses provided any actual benefit to or preserved the value of the Debtors' estates and assets" so as to permit an administrative claim under section 503(b)(1)(A) of the Bankruptcy Code.[6] *See* Summary Judgment Motion ¶ 34. In fact, the record before the Court already does just that, and, moreover, even if more were needed, discovery would further establish benefit to the estate.

7.     To establish an entitlement to an administrative expense claim under section 503(b)(1)(A), a claimant must show "(1) a post-petition transaction between the claimant and the estate and (2) a benefit to the estate." *In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005) (citing *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F. 3d 527, 532-33 (3d Cir. 1999); *In re Unidigital, Inc.* 262 B.R. 283, 288 (Bankr. D. Del. 2001); and *In re Mid-American Waste Sys., Inc.*, 228 B.R. 816, 821 (Bankr. D. Del. 1999)). Notably, under section 503(b)(1), as opposed to section 503(b)(3), the benefit does not need to be substantial. *See Women First*, 332 B.R. at 121.

8.     The Application plausibly alleges, and makes a *prima facie* showing, that NextEra expended tens of millions of dollars diligently seeking to close the transaction during the period from the parties' entry into the Merger Agreement (July 29, 2016) to the Debtors' termination of the Merger Agreement (July 6, 2017). NextEra's Application is supported by the declaration of Mark Hickson (the "Hickson Declaration"), the Executive Vice President, Corporate Development, Strategy, Quality and Integration, of NextEra. [D.I. 12671-1]. Mr. Hickson, together with NextEra's Executive Vice President and General Counsel Charles Sieving, led the negotiations for NextEra that resulted in the Merger Agreement and spearheaded NextEra's efforts to consummate the transaction. *See* Hickson Declaration ¶ 3. Mr. Hickson details by "workstream" a variety of expenses that NextEra incurred in connection with its regulatory

---

[6]     Unless otherwise indicated, a reference to "section ___" shall be a reference to a section of the Bankruptcy Code.

approval, financing, and other transaction-related efforts, and he attests that all of those expenses were incurred by NextEra "to consummate the transaction and complete the acquisition" of Oncor. *See* Hickson Declaration ¶¶ 3-14. Consistent with Mr. Hickson's declaration, the Court already has found that NextEra expended tens of millions of dollars seeking to complete the transaction and close on the Merger Agreement. *See* Reconsideration Opinion at p. 32.

9.       NextEra's efforts to facilitate closing under the Merger Agreement benefitted the Debtors' estate. The Merger Agreement, as the Debtors observed, provided "massive value" to their estates.[7] The NextEra deal was higher than any other bid at the time or since;[8] had the parties' attempts to fulfill the closing conditions succeeded, the transaction would have brought the estate over $9.8 billion.[9] The Merger Agreement expressly contemplated that NextEra would undertake such efforts,[10] and the Debtors fully supported and encouraged them (even after the PUCT disapproved the transaction.[11] Indeed, consummation of the transaction was ultimately (and understandably) supported by every creditor constituency (other than the Asbestos

---

[7]    *EFH/EFIH Debtors' Omnibus Reply to Objections to Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* [D.I. 9536].

[8]    *See EFH/EFIH Debtors Omnibus Reply to Objections To Motion of Energy Future Holdings Corp., et al., For Entry of An Order (A) Authorizing Entry Into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into and Performance Under Plan Support Agreement [D.I. 9536]* ¶¶ 3, 19; *see also* Hr'g Tr. Sept. 19, 2016 at 13:23–15:3 (noting further $300 million increase in NextEra's bid).

[9]    *Debtors' Memorandum of Law in Support of Confirmation of the Seventh Amended Joint Plan of Reorganization as it Applies to the EFH/EFIH Debtors* [D.I. 10795] at 10-11.

[10]   *See, e.g.,* Merger Agreement §§ 6.3(a) (generally obligating NextEra to use its "reasonable best efforts" to consummate the transaction and obtain necessary regulatory approvals and consents), and 6.3(d).

[11]   *See, e.g.,* Tr. Hr'g Apr. 17, 2017 at 13:14-19 and 18:24 (Debtors lauding NextEra's efforts to try to reach a settlement with the PUCT interveners, including the PUCT staff, and noting commitment of the Debtors and NextEra to revive the deal if possible); *Amicus Curiae Brief of Energy Future Holdings Corp. and Energy Future Intermediate Holdings LLC in Support of Rehearing,* PUCT Docket No. 46238, Item No. 545 [D.I. 11878-9], and *Amicus Curiae Brief,* PUCT Docket No. 46238, Item No. 555 [D.I. 11878-11] (amicus briefs submitted by the Debtors urging the PUCT to reverse its decision and approve the NextEra transaction).

Objectors).[12]  And it was to the benefit of the estate that the transaction close as promptly as possible in order to minimize erosion of the estate through continued interest on outstanding debt.[13]

10.    While Movants argue that such efforts do not benefit the estate if the transaction is not consummated,[14] *Women First* holds otherwise.  There, Judge Walrath found after an evidentiary hearing that costs incurred in an effort to close a post-petition transaction were recoverable as an administrative expense claim, *even though the transaction did not ultimately close. See Women First*, 332 B.R. at 122-29.[15]  The administrative expense applicant (Sun) had entered into an agreement with the debtor to acquire certain assets, becoming the stalking horse bidder. *Id.* at 118.  The debtor moved for and obtained approval of the sale (including provisions for and limitations on fees payable upon termination) and bid procedures.  *Id.*  No competing bids were received, and the court approved the sale to Sun, which, with the debtor's encouragement, began working to complete the tasks necessary to close (including completion of due diligence), incurring substantial expense.  *Id.* at 118, 119, 125-129.  The debtor, however, had not provided the requisite notice of the sale and bid procedures motions to another interested party (Mutual), which moved for and was granted reconsideration of the court's approval orders,

---

[12]  *See* Hr'g Tr., Sept. 19, 2016 at 14:22-15:3 and 86:7-124:9.

[13]  *See* Hr'g Tr., Feb. 14, 2017 [D.I. 10842] at 37:11-25; *EFH/EFIH Debtors' Reply in Support of the Motion of the EFH/EFIH Debtors For Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection With Confirmation of the Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11553] at ¶ 2 (cash burn rate is over $50 million per month on account of interest on the EFIH DIP facility and the EFIH second lien notes and professional fee accruals).

[14]  Summary Judgment Motion ¶ 31 ("potential substantial value is not enough").  Movants' further assertion that the Court has "already found" that NextEra's efforts "'could not provide an actual benefit to a debtor's estate,'" Summary Judgment Motion ¶ 30 (citing Reconsideration Opinion at 31-34), is simply false.  The portion of the Reconsideration Opinion Movants cite addresses whether the portion of the Termination Fee provisions at issue in the Reconsideration Motion benefitted the estates, not whether efforts to close the transaction benefitted the estates. *See* Part III, *infra.*

[15]  *See also In re ASARCO LLC*, 441 B.R. 813, 832 (S.D. Tex. 2010) (recognizing that a benefit inured at the time of a bid "even if no sale was ultimately made").

and then won a new auction of the assets. *Id.* at 119-120. The court concluded that efforts to close the Sun transaction benefitted the estate because, when Sun undertook the efforts, the debtor wanted the Sun transaction to close and to do so as quickly as possible to prevent erosion of the assets' value. *Id.* at 122-23. The court granted Sun an administrative expense claim under section 503(b)(1)(A) for all of the expenses it could show were incurred in trying to close (despite the fact that those expenses exceeded the payments permitted by Sun's asset purchase agreement). *See id.* at 119, 129.[16]

11.    Movants' position is also at odds with this Court's prior rulings allowing the administrative expense claims of other entities for their efforts to promote NextEra's acquisition of the Debtors' Oncor assets, recognizing (under the more demanding requirements of section 503(b)(3)) that such efforts benefit the estate even when the transaction does not close.[17] The allowance of those expenses was undisturbed by termination of the NextEra transaction and was carried forward under the Sempra Plan.[18]

12.    Here, NextEra seeks only reimbursement for efforts undertaken from the time the parties entered into the Merger Agreement until the Debtors terminated the Merger Agreement. All actions were taken to close the transaction, which like the transaction in *Women First*, was in the best interest of the Debtors and the estate. *See Order Confirming the Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the*

---

[16]    The court undertook a fact-intensive analysis to determine whether actions taken by the original buyer after learning of the competing buyer were done in connection with closing its transaction (which would be compensable) or were done solely for some other purpose, such as challenging the competing sale offer, which would not confer a benefit on the estate. *See id.* at 125-29.

[17]    *See, e.g.*, Hr'g Tr., Feb. 17, 2017 [D.I. 10865] at 20:13-18 ("Like I found with the last plan that was confirmed in December of 2015, I believe that the indentured [sic] trustee for the EFH noteholders has provided a substantial contribution to the debtor's estate that would justify a payment of administrative expense claim for those fees and expenses.").

[18]    *See First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11803] at p. 5, Art. I.A.13.

*Bankruptcy Code as it Relates to the EFH Debtors and EFIH Debtors* [D.I. 10859] ¶ 18 ("The EFH Debtors and the EFIH Debtors have satisfied their burden under section 363 of the Bankruptcy Code to demonstrate that all actions to be taken under the Plan as it relates to the . . . transactions, transfers and settlements are in the respective best interests of their estates.") and ¶ 71 ("All documents and agreements necessary to implement the Plan as it relates to the EFH Debtors and the EFIH Debtors, including the Merger Agreement . . . are in the best interests of the Debtors. . . ."). Thus, like the unsuccessful buyer in *Women First,* NextEra is entitled to an allowed administrative claim for its costs and expenses incurred in trying to close.

13.    Movants' attempts to factually distinguish *Women First* (Summary Judgment Motion ¶ 33) are inaccurate and/or recite factual differences that are either irrelevant or were immaterial to the ruling.  *First*, NextEra was as willing and ready to close the transaction (or even more so) than Sun, the original buyer in *Women First,* who had not yet completed its due diligence or other tasks necessary to close.  332 B.R. at 122.  More to the point, the *Women First* court nowhere identifies the buyer's readiness, willingness or ability to close as a basis for its conclusion about benefit to the estate or expense recovery under section 503(b)(1)(A) (or even analyzes whether all requisite conditions to closing could have been met or necessary approvals obtained).  *Id.* at 121-122.  Sun's willingness to close the *Women First* transaction is insignificant, because that transaction, like the NextEra transaction, ultimately did not close.  *Id.* at 119-20.  *Second*, that there were different grounds for granting reconsideration here (misapprehension of facts and law) than in *Women First* (deficient notice of the sale) is a distinction without a difference.  Nothing in *Women First's* analysis suggests there should be a different result here based on this distinction, and the Movants notably do not explain why it is

significant under *Women First*.[19]  *Third,* the fact that Sun participated in a competitive bidding process that resulted in a higher offer was not cited as a basis for the *Women First*'s finding that actions taken by the original buyer to close benefitted the estate. *Id.* at 122-23.

14.    In sum, *Women First* is directly on point and establishes that efforts to close a transaction in circumstances such as these benefit the estate and support an administrative expense claim under section 503(b)(1)(A).[20]

15.    Furthermore, NextEra expects to show at the hearing substantial *additional* benefits to the estate not demonstrated in *Women First*, including that the NextEra deal and the NextEra's efforts to close served as a roadmap for structuring and obtaining approval of the Sempra deal (and the predecessor Berkshire deal).  For example, at the hearing held on February 26, 2018 to confirm the Sempra-sale plan (the "Sempra Plan"), Andrew Wright, the Debtors' Executive Vice President, General Counsel and Secretary, testified that he believed Sempra relied on work, including "full and complete" due diligence, previously done by NextEra in connection with addressing asbestos liabilities, eliminating the need for Sempra and the Debtors to have to engage in their own time-consuming, costly process. *See* Tr. Hr'g. Feb. 26, 2018 at

---

[19]   It is correct that the *Women First* court also concluded that Sun could recover its expenses based on a post-petition tort (negligent misrepresentation) by the debtor, but that provided a separate basis for recovery in *Women First,* independent of the Court's analysis of Sun's right to recover under section 503(b)(1)(A). 332 B.R. at 123-125. *Women First's* conclusion that Sun was entitled to recover under section 503(b)(1)(A) because its efforts to close had benefitted the estate likewise was not predicated upon the Court's separate tort analysis. *See* 332 B.R. at 121-123.

[20]   In addition to mischaracterizing *Women First*, the Movants erroneously rely on *Madison Equities, LLC v. Condren (In re Theatre Row Phase II Assocs.),* 385 B.R. 511 (Bankr. S.D.N.Y. 2008) for the proposition that a creditor must show some contractual or other legal basis for allowance of a claim as an administrative expense. *See* Summary Judgment Motion ¶ 34. In Madison Equities, a third-party buyer sought an administrative expense claim for allegedly negotiating a sale transaction with the debtor that resulted in another purchaser paying a higher price. 385 B.R. at 519. The court denied the claim, focusing on the fact that the claimant never entered into any contract committing it or the debtor to any deal and the court never approved any bid procedures. *Id.* at 525. The facts here could not be more different. Not only was NextEra's commitment to pursue the Oncor sale transaction memorialized in the Merger Agreement, which was approved by the Court, but it was also reflected in a plan support agreement that was approved by the Court, and then implemented in the NextEra–sale plan, which was confirmed by the Court. In short, *Madison Equities* does not help the Movants.

138:2-140:13.  At the appropriate time, NextEra intends to pursue discovery to develop the limited record concerning this and other additional benefits to the estate.[21]

16.    The record before the Court establishes that NextEra's efforts to close the transaction benefitted the estate.  However, if, and to the extent, the Court were to find the present record insufficient to (at minimum) create a genuine dispute of material fact concerning whether NextEra's efforts to close the transaction benefitted the estate, then NextEra should be afforded an opportunity consistent with Fed. Bank. R. P. 7056(d) and Fed. R. Civ. P. 56(d) to conduct appropriate discovery.[22]  Such discovery would include, without limitation, document demands and deposition notices to be served upon Sempra, the Debtors, and/or their advisors to explore the extent to which—as testimony has already indicated was true regarding asbestos issues—the NextEra deal and NextEra's efforts to close that deal facilitated the Sempra deal and/or the Sempra Plan.  For example, NextEra would expect to pursue such discovery concerning reliance by Sempra and the Debtors upon the NextEra deal and NextEra's efforts with respect thereto when: (i) negotiating the Sempra deal; (ii) conducting diligence for the Sempra deal; (iii) structuring and memorializing the Sempra deal; (iv) pursuing and obtaining

---

[21]    In its Application, NextEra has asserted, as an alternative ground, that it is entitled to an administrative claim under section 503(b)(3)(D) for making a substantial contribution to the Debtors' Chapter 11 cases. *See* Application at p. 19, n. 91. NextEra submits that its efforts in trying to close the transaction provided benefits to the estate which also satisfy the "substantial contribution" requirement.  The Movants allege that NextEra cannot avail itself of section 503(b)(3) because it is not a creditor of the Debtors. *See* Summary Judgment Motion at pp. 17-18.  The Movants are incorrect; NextEra (through one of its subsidiaries) was a creditor of EFIH from the time it entered into the Merger Agreement through the end of the period for which it seeks allowance of its expenses. *See Declaration Of Mark Hickson In Support Of Objection Of Nextera Energy, Inc. To Joint Motion Of UMB Bank, N.A., As Indenture Trustee, And Elliott Funds To (I) Dismiss Application Of Nextera For Allowance And Payment Of Administrative Expense, Or, In The Alternative, (II) Grant Summary Judgment Denying And Disallowing Such Administrative Expense,* submitted herewith, ¶¶ 4-5.

[22]    In accordance with Fed. Bank. R. P. 7056(d) and Fed. R. Civ. P. 56(d), submitted herewith is the *Declaration of Howard Seife Pursuant to Fed. R. Bank P. 7056(d) and Fed. R. Civ. P. 56(d) in Support of Objection of Nextera Energy, Inc. to Joint Motion of UMB Bank, N.A., and Elliott Funds to (I) Dismiss Application of NextEra for Allowance and Payment of Administrative Expense, or, in the Alternative, (II) Grant Summary Judgment Denying and Disallowing Such Administrative Expense* (the "Seife Declaration"), which addresses NextEra's entitlement to discovery in these circumstances. Seife Decl. ¶¶ 3-7, 10.

PUCT and other regulatory approvals; (v) pursuing and obtaining confirmation of the Sempra Plan; and (vi) obtaining creditor support for the Sempra Plan and minimizing litigation based on settlements negotiated in connection with the NextEra transaction.

17.     The Court directed that there should be no "discovery, no depositions, no other motion practice . . . . until the Court has an opportunity to review the briefing" on this motion. Tr. Hr'g Mar. 28, 2018 at 19:14-23.  Accordingly, no discovery has been had to date concerning the Application.  In these circumstances, the Court should not grant summary judgment without first permitting NextEra the opportunity to develop the record.  *See Doe v. Abington Friends School*, 480 F.3d 252, 258-59 (3d Cir. 2007) (vacating grant of summary judgment because non-movant "should have been allowed some measure of discovery").

**II.     NextEra's Administrative Expense Claim Is Not Barred By The Merger Agreement**

18.     The Movants' chief argument is that Merger Agreement Sections 6.7 and 8.5(b) preclude payment of NextEra's expenses.  *See* Summary Judgment Motion at pp. 11-13.  But that argument conveniently overlooks the language of section 6.7 expressly exempting "any administrative expenses of the Debtors' estates" from its requirement that costs and expenses otherwise be borne by the party who incurs them.  Further, even if one ignores this contract language, the Movants' argument that Section 6.7 bars expense recoveries still fails because it is premised on the faulty assumption that NextEra is still bound by the purported limitation after the Court's Reconsideration Order retroactively disapproved the agreed Termination Fee provisions.  That assumption fails under basic contract principles, under the terms of the Merger Agreement, and as a matter of equity.

**A.     Merger Agreement Section 6.7 Does Not Bar
NextEra's Recovery of Administrative Expenses**

19.     Movants' argument (Summary Judgment Motion at ¶ 24) that, in Merger Agreement Section 6.7, NextEra "disclaimed any right" to recover expenses is contrary to the

express terms of that provision, which instead expressly preserves NextEra's right to recover proper administrative expenses. Section 6.7 states, in pertinent part:

> Except . . . *any administrative expenses of the Debtors' estates* addressed in the Plan of Reorganization, whether or not the Merger is consummated, all costs and expenses incurred in connection with this Agreement and the Closing Date Transactions and the other transactions contemplated by this Agreement shall be paid by the party incurring such expenses.

(Emphasis added.)[23]    Section 6.7 thus differentiates between expenses which qualify as administrative expenses, which are recoverable, and those which do not qualify as administrative expenses, *i.e.,* expenses that do not benefit the estate (such as expenses incurred in responding to a hypothetical competing bidder), which must instead be paid by the party who incurs them.[24] Rather than addressing this portion of Section 6.7, which is directly on point and preserves administrative expense claims, the Movants attempt to avoid its recognition by instead highlighting other portions of the section. Summary Judgment Motion ¶ 24. But this language cannot be read out of Section 6.7.[25]

20.    Of course, if NextEra recovers its Termination Fee, then that amount will be deemed inclusive of NextEra's expenses pursuant to Section 8.5(b) of the Agreement (which provides that the $275 million Termination Fee "will be inclusive of all expense

---

[23]    The NextEra Plan, like the Sempra Plan, provided for submission of administrative expense claims after the Plan Effective Date. *See Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10859-1], at Article I.A.11 (definition of "Administrative Claims Bar Date") and Article II.A.1 (treatment of General Administrative Claims); Sempra Plan [D.I. 11803] at p.5, Art. I.A.14; ¶ 42, *infra.*

[24]    *See Women First,* 332 B.R. at 122 (distinguishing between expenses incurred in attempting to close the transaction, which benefitted the estate, and expenses incurred resisting a competing bidder, which did not).

[25]    *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage. We will not read a contract to render a provision or term meaningless or illusory." (internal citations omitted)).

reimbursements").[26]  But absent such recovery, NextEra is entitled under Section 6.7 to recover administrative expenses.[27]

**B.  Even if the Merger Agreement Purported to Bar NextEra's Recovery, as a Consequence of the Court's Retroactive Rejection of the Agreed Termination Fee Provisions, NextEra Would Not Be Bound by the Expense Limitation Provisions**

21.     Even if it were permissible to ignore Section 6.7's express exclusion of administrative expenses from its requirement that parties otherwise bear their own expenses, the Movants' argument still fails.  The argument rests on the misguided notion that NextEra would continue to be bound by the expense limitation despite the Reconsideration Order's disapproval of the agreed Termination Fee provisions.

22.     Neither the Debtors nor any other parties have disputed that, under the express terms of Section 8.5(b) of the Merger Agreement (before entry of the Reconsideration Order), the Termination Fee would have been payable upon termination by the Debtors following regulatory disapproval.[28]  It is likewise indisputable that the Reconsideration Order disapproved the provisions for paying the Termination Fee in these circumstances, and that the Court thus refused to approve the Merger Agreement in the form that had been agreed to by the parties.

23.     NextEra, however, did not somehow magically become bound to a new version of

---

[26]   If, as Movants posit, Section 6.7 simply precluded any recovery of administrative expenses, then there would have been no reason to include this language in Section 8.5(b) to establish that administrative expenses could not be recovered in addition to the Termination Fee (since Section 6.7 would already have barred such recovery). *See Osborn*, 991 A.2d at 1159 (interpretation should "not [] render any part of the contract mere surplusage").

[27]   NextEra submits that the plain, unambiguous language of Section 6.7 preserves its right to recover administrative expenses.  Should the Court conclude that there is any doubt on this point, NextEra should be afforded the opportunity pursuant to Rule 56(d) to take discovery of Debtors to further demonstrate that NextEra's right to pursue administrative expense recovery is preserved. *See* ¶¶ 16-17, *supra*; Seife Declaration, ¶¶ 3-5, 8-10.

[28]   The Debtors filed an adversary proceeding seeking a declaration that the Termination Fee would not be due and payable. *See* Debtors' *First Amended Adversary Complaint* [Adv. No. 17-50942, D.I. 41]. However, the asserted basis for that relief is NextEra's alleged breach of its obligations under the Merger Agreement (which NextEra categorically disputes).

the Merger Agreement that amended the Termination Fee terms so that they are limited to those approved in the Reconsideration Order.  The Reconsideration Order does not purport to amend the Merger Agreement itself, and instead modifies only the Court's original order approving the Merger Agreement.  *See* Reconsideration Order ¶ 4.[29]  And NextEra, of course, never agreed to amend the Merger Agreement's Termination Fee provisions to make the material alterations which would be necessary to reconcile its terms with the modified approval provided by the Reconsideration Order.[30]

24.    Further, to hold that despite the Court's disapproval of the agreed Termination Fee provisions NextEra was still bound by the expense limitations Movants argue for would be contrary to the express terms of the Merger Agreement.  Section 7.1 of the Merger Agreement provides, in relevant part, as follows:

"Conditions to All Parties' Obligations.  The obligations of each party to effect the Closing, are subject to the satisfaction or mutual waiver (as determined by the Company and, to the extent EFIH would be adversely affected by the Company's actions, EFIH, on the one hand, and by Parent [NextEra], on the other hand) of the following conditions at or prior to the Closing:

(a) Bankruptcy Orders.  The Bankruptcy Court shall have entered (in a form which is not materially inconsistent, in any substantive legal or economic respect, with the rights and obligations of the Company or EFIH or Parent [NextEra] or Merger Sub hereunder or in the Plan of Reorganization) (i) the order of the Bankruptcy Court approving this Agreement, including, among other things, approval of the Termination

---

[29]    Nor could the Court properly have rewritten the Merger Agreement.  *See* Application at p. 15 & n. 71.

[30]    The Merger Agreement provides that the agreement may only be modified or amended by written agreement of the parties.  *See* Merger Agreement § 9.2.  And Delaware law likewise requires that, for the terms of a contract to be modified, the parties must manifest assent to the altered terms.  *See Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 709 (D. Del. 1991), aff'd, 988 F.2d 414 (3d Cir. 1993); *see also Haft v. Dart Grp. Corp.*, 841 F. Supp. 549, 567–68 (D. Del. 1993) ("No modification is possible without 'all the requisite [s] of a valid and enforceable agreement,' including the consent of both parties and consideration." (quoting *Drake v. Hercules Powder Co.*, 55 A.2d 630, 636 (Del. Super. Ct. 1946)); *see also Cont'l Warranty, Inc. v. Warner*, 108 F. Supp. 3d 250, 254 (D. Del. 2015) ("'[w]here there is no mutual assent or meeting of the minds, there is no enforceable contract in Delaware.'" (quoting *Thomas v. Thomas*, 2010 WL 1452872, at *4 (Del. Com. Pl. Mar. 19, 2010)); *In re Harnischfeger Indus., Inc.*, 294 B.R. 47, 52 (Bankr. D. Del.), aff'd, 316 B.R. 616 (D. Del. 2003) (for a contract to be enforceable, there must be a "meeting of the minds.").

Fee . . . ."

Merger Agreement § 7.1.  Instead, NextEra was entitled to terminate if the agreement the parties entered into was not approved by the Court.  *Id.* § 8.4(j).  Indeed, absent such an order approving the agreed-upon terms, the Merger Agreement did not even become enforceable against the Debtors.  *Id.* § 5.1(c).

25.    The modified approval of the transaction afforded by the Reconsideration Order does not provide the approval required by the Merger Agreement.  There is no question that the Court's retroactive disapproval of the Termination Fee was "materially inconsistent" in a "legal or economic respect" with the conditions for payment of the Termination Fee in Merger Agreement Section 8.5(b).   The Reconsideration Order expressly provided that "*[t]he Termination Fee, upon the terms and conditions of the Merger Agreement, is approved in part and disallowed in part.*"  Reconsideration Order at ¶ 5 (emphasis added).  The Court disallowed the Termination Fee in the circumstances that had actually occurred, *i.e.*, rejection of the transaction by the PUCT followed by termination by the Debtors.  Moreover, the Court has already found that NextEra would not have pursued the transaction absent approval of the heavily negotiated Termination Fee.  *See* Hr'g Tr., Sept. 19, 2016 at 121:17-19 ("The evidence overwhelmingly indicates that a breakup fee was necessary to induce NextEra to make a bid, and to move forward with a merger agreement.") (emphasis added); Reconsideration Opinion at p. 10.[31]

26.    Further, the Merger Agreement expressly provides that its provisions are "severable" only to the extent that the invalidation or unenforceability of a provision leaves the economic and legal substance of the transaction materially unaffected.  *See* Merger Agreement

---

[31]    *See also* Declaration of William O. Hiltz in Support of the Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement, at ¶ 19; Hr'g Tr., Sept. 19, 2016 at 26:16-20, 27:8-11 and 28:2-8.

§ 9.13.    Needless to say, the modified Termination Fee provision approved in the Reconsideration Order had a materially adverse economic effect on NextEra (*i.e.*, disallowance of its $275 million Termination Fee), and, therefore, the disapproved provisions cannot be severed from the rest of the Merger Agreement.

27.    Instead, as the Third Circuit recently confirmed, where a court determines that a contract provision which is integral to other provisions of the contract is unenforceable, it is not "severable" and its rejection renders unenforceable other provisions of the contract.    In *MacDonald v. CashCall, Inc.*, 883 F.3d 220 (3d Cir. 2018), a borrower (MacDonald) commenced a class action against the defendants over a loan agreement that he argued was usurious and unconscionable.    *Id.* at 225.    The loan agreement included both a mandatory "arbitration forum selection clause," and a "delegation clause," which provided that an arbitrator should resolve threshold questions "concerning the validity, enforceability, or scope of [the] loan or the Arbitration agreement."    *Id.* at 226.    MacDonald argued that the entire arbitration agreement was unenforceable because the arbitral forum the parties designated was nonexistent. *Id.*    The defendants moved to compel arbitration which the district court denied.    *Id.* at 223.    The defendants appealed to the Third Circuit and asserted, among other things, that the district court erred in refusing to compel arbitration because the loan agreement contained an enforceable severability clause that should have been applied to sever the illusory arbitration forum selection clause from the rest of the arbitration agreement.    *Id.* at 226.    The Third Circuit affirmed, finding that the arbitration forum selection clause was an integral, not ancillary, part of the overall arbitration agreement.    *Id.* at 230.[32]    Thus, the court held the forum selection clause was not

---

[32]    *See also Cont'l Warranty, Inc. v. Warner*, 108 F. Supp. 3d 250, 255 (D. Del. 2015) ("Whether or not the terms of a contract are severable is purely a question of the intent of the parties.  When determining the parties' intent regarding severability, Delaware courts ask whether the parties gave a single assent to the whole transaction or whether they assented separately to several things."(quotation marks omitted)).

severable and rendered the entire agreement, including the delegation clause, unenforceable. *Id.*

28.    The agreed Termination Fee was an integral part of the Merger Agreement, and NextEra would not have moved forward on the Oncor transaction without it. *See* ¶ 25, *supra.* Accordingly, the Court's disapproval of the Termination Fee (if ultimately upheld on appeal) renders unenforceable the Merger Agreement or, at the very least, the expense limitations the Movants assert it imposed, which were intrinsically tied to the Termination Fee.

29.    *Women First* illustrates that this is the proper result, and contradicts the notion that contractual expense-recovery limitations can be enforced against a party such as NextEra in circumstances like those here, where the bankruptcy court reconsiders its approval of the agreement argued to contain those limitations.    In that case, the Asset Purchase Agreement ("<u>APA</u>") contained provisions limiting recovery of expenses. *See In re Women First Healthcare, Inc.* (Case No. 04-11278, D. Del.) [D.I. 356-2], §§ 6.08 and 10.06.    Having granted reconsideration of its order approving the APA, the *Women First* court granted the prospective buyer's application under section 503(b)(1)(A) to recover expenses incurred in pursuing consummation of the APA, without regard to the APA's limitation on expenses. *Id.* at 122, 129. The justification for that result is even more compelling here because the Reconsideration Order retroactively revoked approval of the Termination Fee provisions that the parties agreed would provide compensation encompassing NextEra's expenses.

30.    In sum, based on the express terms of the Merger Agreement, as a result of the Bankruptcy Court's disapproval of the Termination Fee, NextEra would have had no obligation to move forward with the transaction and would not have incurred the expenses for which it now seeks reimbursement.[33]    Even if one ignores the language of Section 6.7 and accepts Movants'

---

[33]    The Movants assert that NextEra could not have relied on the Approval Order and that this Court has already rejected NextEra's "reliance" argument. *See* Summary Judgment Motion ¶ 31. The Movants conflate unrelated issues.    Whether NextEra could rely on the Approval Order is irrelevant to the

erroneous assertion that it limits NextEra's right to recover administrative expenses, imposition of those expense limitations on NextEra in these circumstances violate basic contract principles and the terms of the Merger Agreement. Further, it would be unconscionable to bind NextEra to those limitations when the Court disapproved the Termination Fee they were based upon.

### III. The Bankruptcy Court's Reconsideration Opinion and Order Do Not Preclude Allowance of NextEra's Administrative Expense Claim

31.     The Movants next argue that the Reconsideration Opinion and Order preclude NextEra's expense reimbursement claim because the Court found that *O'Brien* was not satisfied. *See* Summary Judgment Motion at pp. 18-21. This argument disingenuously attempts to extend the Court's Reconsideration Opinion and Order far beyond their express scope (NextEra's contractual claim for the Termination Fee) to matters never addressed (whether NextEra's efforts to close benefitted the estate). In fact, Reconsideration Order ¶ 8 expressly recognizes NextEra's right to seek recovery of its expenses, as it has done in the Application here.

32.     Putting aside the fact that NextEra had not yet even filed the Application when the Court ruled on Elliott's Reconsideration Motion, the Court made no findings or rulings whatsoever as to whether NextEra's efforts to try to close the transaction (in contrast to payment of the Termination Fee) provided a benefit to the estate. Nor could the Court have made any such ruling, because that issue was never before the Court, which heard no evidence on the issue.

33.     The law of the case and collateral estoppel doctrines relied on by the Movants

---

Application and whether NextEra's actions taken to close the transaction provided a benefit to the estate. Moreover, as Elliott knows, whether NextEra was entitled to rely on the Approval Order was raised in connection with NextEra's argument that Elliott's Reconsideration Motion was untimely. Whether NextEra was justified in relying on the Approval Order was not relevant to the Court's ruling on the separate issue of whether the Termination Fee was allowable as an administrative expense claim under *O'Brien*. Finally, to the extent NextEra's reliance is somehow relevant to the Application, the Court already determined that NextEra relied on the Approval Order in expending tens of millions of dollars seeking to close the sale transaction. *See* Reconsideration Opinion at p. 32. The Court further found that it was unclear whether NextEra knew that the Approval Order was premised on the allegedly confusing and incomplete record. *Id* at. p. 28, n. 79. For the record, NextEra—like the Debtors—was not aware of any such confusion.

simply do not apply because they require that the *same issue* presented in the current proceeding have been litigated in the prior proceeding. *See* Summary Judgment Motion at pp. 18-19. Here, the Court could not have been clearer that the scope of its Reconsideration Opinion was limited to the Termination Fee provisions of the Merger Agreement and, even then, only to certain portions thereof. For example, the Court stressed that "[i]mportantly, the Court is only reconsidering a narrow but highly significant provision of the Termination Fee." Reconsideration Opinion at p. 26, n. 78.

34.    Even the Movants acknowledge that Elliott's Reconsideration Motion was limited to challenging the Termination Fee, and was not a challenge to the transaction as a whole or NextEra's expenses incurred in trying to close that transaction. *See* Summary Judgment Motion ¶ 11 ("On July 29, 2017, Elliott filed a motion . . . seeking reconsideration of the Approval Order *to the limited extent that the order authorized the Debtors to pay the Termination Fee* when NextEra failed to obtain PUCT approval . . . .") (emphasis added).

35.    Thus, the Court's legal analysis dealt solely with whether the "Termination Fee" provided a benefit to the estate under *O'Brien*. Indeed, the Court, *adopting verbatim the position urged by Elliott*, plainly distinguished this legal analysis from that required when considering a claim for "mere expense reimbursement":

> bankruptcy courts considering approval of **termination fees** focus not only on whether the expense is necessary to induce a transaction, but also on the conditions that must be met to consummate the transaction (e.g., financing, due diligence, regulatory approvals, etc.). The lack of conditions or certainty of meeting them ensures that the termination fee, **as distinct from mere expense reimbursement**, provides a debtor's estate with an actual benefit.

Reconsideration Opinion at 29 (emphases added); *see also* Reconsideration Motion ¶ 53.

36.    This difference is further highlighted in *In re President Casinos, Inc.*, 314 B.R. 786 (Bankr. E.D. Mo. 2004), a decision Elliott cited favorably to the Third Circuit in connection with the appeal of the Reconsideration Order. *See Brief of Appellees Elliott Associates, L.P.*,

*Elliott International, L.P., and The Liverpool Limited Partnership* No. 18-1109 at p. 41. In *President Casinos*, the bankruptcy court rejected a buyer's request for a $1 million break-up fee, despite that no party challenged the amount of the fee, as there was no evidence that the fee would enhance the bidding process or otherwise benefit the estate. *See President Casinos*, 314 B.R. at 789. Nevertheless, the court granted the buyer a break-up fee in the reduced amount of $250,000 to cover the buyer's actual costs and expenses. *See id.* In approving the expenses as an administrative expense claim under section 503(b)(1)(A), the court considered whether the fee amount was "reasonable," while its standard for "a break-up fee that is greater than the actual cost and expenses of the prospective purchaser" instead required that it "should constitute a fair and reasonable percentage of the proposed purchase price, and should be reasonably related to the risk, effort and expenses of the prospective purchaser." *Id.*

37.    It thus could not be clearer that the Court's Reconsideration Opinion and Order did not address whether NextEra's yet-to-be filed claim for expense reimbursement was allowable as an administrative expense claim.

38.    Knowing full well that the Reconsideration Opinion did not address this issue, the Movants nevertheless argue that the order is entitled to collateral estoppel effect simply because the Merger Agreement provided that the Termination Fee would be deemed inclusive of NextEra's expenses. *See* Summary Judgment Motion ¶ 44. This argument is specious. The mere fact that the agreed Termination Fee may have included NextEra's expenses (so as to prevent separate recovery of those expenses in addition to the $275 million Termination Fee), does not change the fact that the Court never considered (and was not asked to consider) whether the actions undertaken by NextEra in pursuing closing benefitted the estate, resulting in a compensable claim under Section 503(b)(1)(A).

39.    On the contrary, the Reconsideration Order expressly preserves NextEra's right to

file an administrative expense application on grounds separate from the Termination Fee. Specifically, the Reconsideration Order provides that nothing therein "shall preclude NextEra from filing a request for allowance of an administrative claim (on a ground other than the grounds on which the Termination Fee was denied in the Opinion and this Order) and any person's rights to object to any such request." Reconsideration Order ¶ 8. Given the Reconsideration Order's express reservation of this right in NextEra's favor, it is nonsensical to argue, as Movants do, that the very same order precluded such a claim. The Application simply does not seek allowance of an administrative claim on the same "grounds on which the Termination Fee was denied" (*i.e.*, enforcement of the Termination Fee provisions of the Merger Agreement). Indeed, NextEra is not seeking to recover a termination fee based on enforcement of contractual rights. Rather, NextEra is asserting an entirely different claim for expense reimbursement that has nothing to do with whether the Termination Fee is allowable.

40.    In sum, the issue of whether NextEra is entitled to a $275 million Termination Fee under the Merger Agreement is a separate, distinct issue from whether NextEra is entitled to expense reimbursement for its efforts to close the sale transaction. The Reconsideration Opinion and Order only addressed allowance of the Termination Fee, and the Order expressly preserved NextEra's right to seek its administrative expenses on another basis, as it has done here. The Court should reject the Movants' invitation to distort the Court's prior rulings.

## IV.    **The Application is Timely**

41.    The Movants shamelessly assert that the Application is untimely because NextEra waited approximately five months after this Court disallowed the Termination Fee to file the Application. Summary Judgment Motion at p. 10 n. 4.

42.    The Court has already rejected this argument, properly concluding that the Application was "timely" and "appropriately" filed. *See* March 28, 2018 Hr'g Tr. at 16:15-16.

The bar date for General Administrative Claims established under the Sempra Plan required that all applications for allowance of General Administrative Claims be filed no later than 30 days after the Effective Date of the plan.    *See* Sempra Plan [D.I. 11803] at p.5, Art. I.A.14.    The Effective Date occurred on or about March 9, 2018, and the deadline for submission of General Administrative Claims consequently was April 9, 2018.    *See Notice of Entry of EFH Confirmation Order and Occurrence of EFH Effective Date* [D.I. 12801].  NextEra's Application was filed well in advance of the bar date and, notably, two days *before* Elliott filed materials in support of its own administrative expense claim for expenses incurred during a similar period.[34]

43.    The case cited by the Movants, *In re Chi. Pac. Corp*, 773 F.2d 909 (7th Cir. 1985), serves only to highlight the timeliness of NextEra's filing.  In *Chi. Pac.*, decided under the now superseded Bankruptcy Act, the claims in question were held barred by laches because they were filed *seven years* after they had accrued, well after the bar dates established in the bankruptcy case and on the eve of consummation of the reorganization plan.  *See Chi. Pac.*, 773 F.2d at 917.  Such conduct obviously stands in stark contrast to NextEra's actions here.

## V.    It Would be Prudent to Delay Consideration of the Application

44.    For the foregoing reasons, NextEra should prevail on this motion.  Nevertheless, NextEra respectfully submits that it would be prudent to stay all matters related to the Application, including all proceedings concerning this motion, pending a ruling on the Third Circuit appeal.  The Court, like all courts, has discretion to stay proceedings in a case before it pending the "outcome of another which may substantially affect it or be dispositive of the issues."  *See Bechtel Corp. v. Local 215, Laborers' Int'l Union of N.A., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976); *see also* 11 U.S.C. § 105(a) (authorizing Bankruptcy Courts to "issue

---

[34]    *Declaration of Jeffrey Rosenbaum Filed in Support of the E-Side Debtors' Application for Allowance as an Administrative Expense the Elliott Funds' Fees and Expenses Incurred in Making a Substantial Contribution to the E-Side Debtors' Estates* [D.I. 12695].

any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"). The Court should exercise that discretion here.

45.    The Application was filed solely in the alternative to the Termination Fee, which is the subject of a pending appeal. *See* Application at p. 1 ("This Expense Application is made *in the alternative* to NextEra's application for payment of the Termination Fee....") (emphasis added); Tr. Hr'g Feb. 26, 2018 at 28:1-2 (amount sought by the Application was "purely in the alternative to the termination fee claim...."). The Third Circuit approved expedited consideration of the appeal. Briefing is complete and the Third Circuit has now scheduled oral argument on the appeal for Thursday, April 19, 2018. Accordingly, NextEra intentionally has not yet noticed the Application for a hearing.

46.    As a matter of judicial economy and to preserve estate resources, the Application simply should not be addressed at this time. If NextEra prevails on its appeal of this Court's Reconsideration Order and its Termination Fee claim, the Application will not need to go forward. Litigating a dispute over the Application that may be rendered moot would be inefficient and wasteful. *See nCube Corp. v. Seachange Int'l Inc.*, 2010 WL 2266335, at *3 (D. Del. June 4, 2010) (staying action pending resolution of "threshold issues" in related proceeding where "resolution of these issues has the potential to moot the [stayed action] in its entirety").

47.    To minimize any potential issue concerning such a stay, NextEra proposes that the Court set a further date on which the stay would be reevaluated in the event that the Third Circuit has not ruled.[35] Given that the Third Circuit argument is scheduled for April 19, 2018, NextEra submits that an appropriate date for status conference to reevaluate the stay would be July 31, 2018.

---

[35]    The Movants have accused NextEra of bringing the Application to frustrate and delay creditor distributions and, based thereon, have reserved their rights to seek sanctions and recover costs under Bankruptcy Rule 9011. The Movants' accusation is baseless and facially nonsensical given that the Court rejected NextEra's request for a reserve to cover its alternative administrative expense claim.

## CONCLUSION

Wherefore, NextEra requests that the Court deny the Summary Judgment Motion or, in the alternative, hold in abeyance consideration of the motion as set forth above, and grant NextEra such other and further relief as the Court may deem just and proper.

Dated: April 11, 2018
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
Email:      landis@lrclaw.com
             mcguire@lrclaw.com

– and –

**NORTON ROSE FULBRIGHT US LLP**
Howard Seife (admitted *pro hac vice*)
Andrew Rosenblatt (admitted *pro hac vice*)
Eric Daucher (admitted *pro hac vice*)
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 408-5100
Facsimile:  (212) 541-5369
Email:      howard.seife@nortonrosefulbright.com
            andrew.rosenblatt@nortonrosefulbright.com
            eric.daucher@nortonrosefulbright.com

Robin Ball (admitted *pro hac vice*)
555 South Flower Street, 41st Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile:  (213) 892-9494
Email:      robin.ball@nortonrosefulbright.com

– and –

**WINSTON & STRAWN LLP**
Dan K. Webb (admitted *pro hac vice*)
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700
Email:        dwebb@winston.com

Thomas M. Buchanan (admitted *pro hac vice*)
1700 K Street, NW
Washington, D.C. 20006
Telephone:  (202) 282-5000
Facsimile:  (202) 282-5100
Email:        tbuchana@winston.com

*Counsel to NextEra Energy, Inc.*