**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**SUMMARY COVER SHEET TO THE TENTH INTERIM**
**APPLICATION OF SOLIC CAPITAL ADVISORS, LLC, FINANCIAL**
**ADVISOR FOR DEBTOR ENERGY FUTURE HOLDINGS CORP.,**
**FOR COMPENSATION FOR SERVICES RENDERED**

| | |
|---|---|
| Name of Applicant: | SOLIC Capital Advisors, LLC ("SOLIC") |
| Authorized to provide professional services to: | Energy Future Holdings Corp. (the "Debtor") |
| Date of retention: | Retention order entered on February 6, 2015 (effective as of December 18, 2014) [D.I. 3467] |
| Period for which compensation and reimbursement is sought: | January 1, 2018 through March 9, 2018 |
| Amount of compensation sought as actual, reasonable and necessary: | $72,689.00 |
| Amount of expense reimbursement sought as actual, reasonable and necessary: | $0.00 |

This is an ___ monthly _X_ interim ___ final application. Nine prior applications filed.[2]

---

[1]      The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]      Notice of this interim fee application shall be served in accordance with the Interim Compensation Order (as defined herein) and Fee Committee Order (as defined herein) and objections, if any, to the interim fee application shall be addressed in accordance with the Interim Compensation Order and Fee Committee Order.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED

SOLIC professionals rendering services on an hourly basis
during the months of January 2018 through March 9, 2018:

| NAME OF PROFESSIONAL | TITLE | TOTAL HOURS BILLED | HOURLY RATE | TOTAL FEES BILLED |
|---|---|---|---|---|
| Neil Luria | Sr. Managing Director | 1.90 | $825.00 | $1,567.50 |
| Raoul Nowitz | Managing Director | 101.20 | $695.00 | $70,334.00 |
| Matt Cumbee | Associate Director | 1.50 | $525.00[3] | $787.50 |
| **TOTAL** | | **104.60** | | **$72,689.00** |

## SUMMARY OF HOURS EXPENDED BY SUBJECT MATTER

| TASK DESCRIPTION | TOTAL HOURS |
|---|---|
| 705 - Plan Development & Testimony Review & Analysis | 54.2 |
| 725 - Dataroom and Diligence Materials Review | 3.1 |
| 749 – Financial Analysis Related to Potential Conflict Matters | 22.1 |
| 795 - Fee Applications/Retention Application | 25.2 |
| Total | 104.6 |

---

[3] This professional's rate was billed at $550 per hour as a result of an increase during the Fee Period in the professional's standard hourly rate. The amount requested is adjusted and reduced by $37.50 to reflect application of the original standard hourly rate of $525 per hour for this professional for all 1.5 hours billed.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**TENTH INTERIM APPLICATION OF SOLIC CAPITAL ADVISORS, LLC, FINANCIAL ADVISOR FOR DEBTOR ENERGY FUTURE HOLDINGS CORP., FOR COMPENSATION FOR SERVICES RENDERED FROM JANUARY 1, 2018 THROUGH MARCH 9, 2018**

SOLIC Capital Advisors, LLC ("SOLIC"), financial advisor for Energy Future Holdings Corp. ("EFH Corp." or the "Debtor"), hereby submits this application (the "Fee Application"), pursuant to sections 327(a), 328(a), 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2016-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* dated September 16, 2014 [D.I. 2066] (the "Interim Compensation Order"), and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order"), for interim approval and allowance of compensation for professional services rendered in the amount of $72,689.00 from January 1, 2018 through March 9, 2018 (the "Fee Period"). In support of the Fee Application, SOLIC submits the declaration of Neil F. Luria, which is

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

attached hereto as __Exhibit A__ and incorporated herein by reference.  In further support of the Fee

Application, SOLIC respectfully represents as follows:

## Jurisdiction

1.      The Court has jurisdiction over the Fee Application under 28 U.S.C. §§ 157 and

1334.

2.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 327(a), 328(a), 330 and 331

of the Bankruptcy Code, Bankruptcy Rule 2016, Local Bankruptcy Rules 2016-1 and 2016-2, the

Interim Compensation Order, and the Fee Committee Order.

## Background

5.      On April 29, 2014 (the "Petition Date"), EFH Corp. and each of its above-

captioned debtor and debtor-in-possession affiliates (collectively, the "Debtors") filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating

their businesses and managing their properties as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an order for the joint

administration of these chapter 11 cases.  The Court has not appointed a trustee or examiner in

these chapter 11 cases. The Office of the United States Trustee for the District of Delaware (the

"U.S. Trustee") formed (a) an official committee of unsecured creditors representing the interests

of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric

Holdings Company LLC ("TCEH"), the direct and indirect debtor subsidiaries of EFCH and

TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") in these

chapter 11 cases on May 13, 2014 [D.I. 420] and (b) an official committee of unsecured creditors

representing the interests of EFH Corp., Energy Future Intermediate Holding Company LLC,

EFIH Finance, Inc. and EECI, Inc. (the "<u>EFH Creditors' Committee</u>") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration [D.I. 98] of Paul Keglevic in support of the Debtors' first day motions.

6.      On August 21, 2014, the Court entered the Fee Committee Order, which appointed a fee committee (the "<u>Fee Committee</u>") to, among other things, review and report as appropriate on all interim and final fee applications filed by professionals retained under sections 105, 327, 363 or 1103 of the Bankruptcy Code, in accordance with sections 328, 330 and 331 of the Bankruptcy Code and the Interim Compensation Order.

7.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all retained professionals in these chapter 11 cases.

### EFH Corp.'s Retention of SOLIC

8.      EFH Corp. sought approval of this Court to retain SOLIC as financial advisor, pursuant to sections 327(a), 328(a) and 330 of the Bankruptcy Code, by application filed on January 16, 2015 [D.I. 3324] (the "<u>SOLIC Retention Application</u>").  As set forth in the SOLIC Retention Application and SOLIC's engagement letter, EFH Corp. engaged SOLIC to render professional services to EFH Corp.'s disinterested directors (the "<u>Disinterested Directors</u>") in connection with Conflict Matters (used herein as such term is defined in and pursuant to the authority delegated to EFH Corp.'s Disinterested Directors pursuant to resolutions of EFH Corp.'s board of directors) and in determining whether a matter constitutes a Conflict Matter, reporting to and at the direction of EFH Corp.'s Disinterested Directors.  SOLIC's retention was approved by this Court by order dated February 6, 2015 [D.I. 3467] (the "<u>Retention Order</u>"), effective *nunc pro tunc* to December 18, 2014.  A true and correct copy of the Retention Order is attached hereto as **<u>Exhibit B</u>**.  The Retention Order provides that SOLIC's compensation is

approved pursuant to section 328 of the Bankruptcy Code, subject to the terms of the Retention Order.

9.    As is typical of financial advisory firms, SOLIC prior to June 1, 2017 was not compensated by the hour, but through fixed fees through a portion of the Fee Period.[2]   The Retention Order authorized EFH Corp. to compensate SOLIC as set forth in its engagement letter, consisting of (a) a $200,000 monthly fixed fee payment (pro-rated for any periods less than a month) and (b) reimbursement of reasonable and documented out-of-pocket expenses (including all fees of counsel), subject to any limitations or modifications as set forth in the Retention Order.   The fixed fee charged by SOLIC is typical for SOLIC's engagements both inside and outside of bankruptcy.   Although SOLIC typically also is provided an "incentive fee" or "success fee" in addition of fixed fees in other engagements both inside and outside of bankruptcy, SOLIC has not sought such a fee in this case.

10.    In light of the circumstances of EFH Corp.'s chapter 11 case and the desire to limit costs going forward, Donald L. Evans and Billie I. Williamson, EFH Corp.'s disinterested directors, on behalf of EFH Corp., and SOLIC agreed to a change in fee structure, effective June 1, 2017, to provide that, in lieu of the Monthly Fee, SOLIC would be compensated on an hourly basis, subject to any objections and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of the Court. All other provisions remain unmodified and in full force and effect. Such amendment was described in the Supplemental Declaration of Neil F. Luria filed on May 26, 2017 (the "Supplemental Declaration") with the Bankruptcy Court which is attached hereto as **Exhibit C**.   No objection has been raised to the Supplemental Declaration.   In addition, on February 23, 2018, an amendment to SOLIC's engagement letter, the effective date of which is

---

[2] Prior to the Supplemental Declaration of Neil F. Luria of SOLIC Capital Advisors, dated 05/26/2017.

June 1, 2017, was executed by Mr. Luria, on behalf of SOLIC, and by Mr. Donald Evans, Chairman of the Board of Energy Future Holdings Corp., on behalf of the Debtor.

### Summary of Professional Compensation Requested

11.    This Fee Application has been prepared in accordance with the Interim Compensation Order and the Fee Committee Order.

12.    By this Fee Application, SOLIC seeks approval and allowance of compensation for professional services rendered by SOLIC as financial advisor for EFH Corp. During the Fee Period in the amount of $72,689.00.

13.    Pursuant to the Interim Compensation Order, SOLIC has already received payment, or has filed fee statements and is awaiting payment, from EFH Corp. in the amount of $58,181.20[3], which represents 80% of SOLIC's fees for the Fee Period.  Except as described in this Fee Application, SOLIC has not entered into any agreement with any other party for the purpose of fixing of sharing fees or other compensation to be paid for professional services rendered in EFH Corp.'s chapter 11 case.  No promises have been received by SOLIC or any member thereof as to compensation in connection with EFH Corp.'s chapter 11 case other than in accordance with the provisions of the Bankruptcy Code.

14.    SOLIC's fees for this Fee Period are in accordance with the agreed-upon terms for this period set forth in the SOLIC Retention Application as outlined in the SOLIC Retention Order and the Amended Retention Order.

15.    During the Fee Period, SOLIC's professionals spent an aggregate of 104.6 hours performing services for EFH Corp. in connection with its chapter 11 case.

---

[3] This amount represents the 80% of SOLIC's fees for the Fee Period plus an additional $37.50 due to a rate change of one of our professionals (Matt Cumbee) during the Tenth Interim Fee Period.  SOLIC has calculated an adjustment by reducing the amount requested by $37.50 (from $72,726.50 to $72,689.00) as if this rate change did not occur.

16.     SOLIC's fees for the services rendered are reasonable and appropriate given the complexity of the matter and the level of expertise required to best serve EFH Corp.   In particular, the depth and complexity of the issues involved in EFH Corp.'s chapter 11 case and the sophistication and breadth of expertise necessary to successfully guide EFH Corp. through its chapter 11 case, is best served by employing a financial advisor with SOLIC's sophistication, experience, and expertise in handling large and complex matters for corporations.   SOLIC believes that its fees are comparable to the fees charged by other highly skilled practitioners experienced in advising clients with large, complex operations while in chapter 11.

## Proposed Payment Allocation

17.     Pursuant to paragraph 8 of the Retention Order, absent an order of the Court, the fees and expenses incurred by SOLIC are paid by EFH Corp.  As such, no allocation pursuant to paragraph 2(b) of the Interim Compensation Order is applicable.

## Summary of Professional Services Rendered

18.     SOLIC has structured its time records using its internal system of project codes. The following descriptions provide a summary of the primary services rendered by SOLIC during the Fee Period with respect to each project code.  Given the scope of the work performed, these summaries do not cover all work performed but instead highlight the major areas of work. Descriptions of the day-to-day services provided by SOLIC and the time expended performing such services in each project category are attached hereto as **Exhibit D**.  Such descriptions demonstrate that SOLIC was heavily involved in the performance of services for EFH Corp.

## A.  Plan Development and Testimony Review and Analysis (54.2 Hours)

19.  This category centers on the critical and necessary need for SOLIC to monitor the impact of plan matters as they related to EFH Corp. and included, in each case relating to or in connection with potential or actual Conflict Matters:

a.  review of court documents relating to asbestos claimants' claims and impacts on prospective cash recoveries;

b.  review of materials pertaining to tax settlements between the estates and former affiliated entities, including the resulting implications on prospective recoveries;

c.  review of motions and applications of various parties pertaining to the allowance of administrative claims and substantial contribution claims;

d.  review of materials prepared by counsel to the EFH Corp. Disinterested Directors regarding plan formulation;

e.  review of PUCT materials, including, but not limited to, the PUCT's final order approving the Sempra Energy-Oncor merger transaction;

f.  review of various filings and motions filed on the Bankruptcy Court docket as they relate to financial issues impacting confirmation and EFH Corp.'s emergence from chapter 11;

g.  review of materials, communications, objections and relevant notices pertaining to the ongoing assessment of termination fee matters, a continued primary area of attention for many constituents during the Fee Period;

h.  review of documents regarding EFH Corp.'s cash position and projections and overall value;

i.  review of relevant analyses regarding projected recoveries to the Debtor's creditors;

j.  review of support items to materials provided to the Debtor's board ahead of board meetings;

k.  review of elements of the Sempra Energy bid, as required, as they relate to impacts on EFH Corp.'s estate; and

l.   review of case-related motions, filings, and communications, as necessary, regarding an appointment to the Fee Committee.

SOLIC's time spent on these matters was necessary during the Fee Period to ensure that issues specifically pertaining to EFH Corp. were being identified and acted upon.

**B.  Dataroom and Diligence Materials Review (3.1 Hours)**

20.   Time billed to this category remained central to the ongoing work performed by SOLIC as it addressed the important and necessary task of tracking and monitoring of EFH Corp. cash – the primary form of recovery to EFH Corp. claimants – under alternative transactions and structures proposed by parties in interest. The work performed included, but was not limited to, the download, review and related analyses of materials posted to the debtors' dataroom, and follow-up with the debtors' professionals, as necessary, regarding the debtors' monthly operating reports, including reconciliation of opening cash balances to earlier projections and analyses of variances between actual and forecasted results. SOLIC's review of inter-estate allocations and monitoring of EFH Corp. specific cash and related impacts, insofar as they related to Conflict Matters, continued to be an essential element of SOLIC's work up to and during the Fee Period.  During the Fee Period, SOLIC prosed to the debtors' estates a number of questions regarding the reasonableness of EFH Corp. emergence cash available for distribution.   The monitoring and tracking of projected cash at emergence continued to be essential in providing the necessary context regarding how recoveries to EFH Corp. creditors were projected and allocated at various emergence dates.

**C.  Financial Analysis Related to Potential Conflict Matters (22.1 Hours)**

21.   During the Fee Period, counsel to the EFH Corp. Disinterested Directors tasked SOLIC to perform updates to various financial analyses and to provide various iterations and revisions to these financial analyses associated with creditor recoveries. These analyses, on subjects including the NextEra Energy termination fee allocation, prospective distribution of

EFH Corp cash to its various creditor constituents under various plan scenarios, and cash balances, included internal review and update of SOLIC-developed analyses.  This category also included drafting of communications to Proskauer pertaining to the review of various EFH Corp. monthly operating reports, as and when filed, including analyses related thereto, as well as arising from revisions in debtor-prepared cash projections. SOLIC also reviewed financial elements of Proskauer-prepared analyses pertaining to potential global settlements of inter-estate claims.

**D.  Fee Applications/Retention Applications (25.2 Hours)**

22.    This category includes the required preparation of monthly fee statements, preparation of monthly budgets for submission to the Fee Committee, as well as the review and preparation of responses to inquiries made by parties of interest, including the Fee Committee and Kirkland & Ellis. This category also includes correspondence and required follow-up by SOLIC in response to specific items raised by the Fee Committee on prior monthly fee statements that were submitted by SOLIC, including the required review, drafting and updating of an amendment to the SOLIC engagement letter in response to a request by the Fee Committee.

## <u>Allowance of Compensation</u>

23.    The foregoing professional services rendered by SOLIC on behalf of EFH Corp. during the Fee Period were reasonable, necessary and appropriate to the administration of EFH Corp.'s chapter 11 case and related matters and in the best interests of EFH Corp. and its estate. The compensation requested for the foregoing services is commensurate with the complexity, importance and nature of the problems, issues and tasks involved.  The professional services were performed expediently and in an efficient manner.

24.    During the Fee Period, the professional services performed by SOLIC on behalf of EFH Corp. required an aggregate expenditure of 104.6 hours by SOLIC professionals and

SOLIC is seeking compensation for such services in the total amount of $72,689.00. As demonstrated by this Fee Application, SOLIC's services were rendered economically and without unnecessary duplication of efforts. In addition, the work involved and the time expended was carefully assigned in consideration of the experience and expertise required of each particular task.

### The Requested Compensation Should be Allowed

25. SOLIC respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Fee Application were necessary for and beneficial to EFH Corp.'s orderly administration of its estate and its efforts in its chapter 11 case. SOLIC worked diligently to anticipate or respond to EFH Corp.'s needs and assist in EFH Corp.'s chapter 11 case. SOLIC's services and expenditures were necessary to, and in the best interests of, EFH Corp.'s estate and creditors. SOLIC submits further that the services its professionals and paraprofessionals provided for EFH Corp. were performed economically, effectively and efficiently, and that the results obtained to date have benefited not only EFH Corp. but all stakeholders in its chapter 11 case. The services provided by SOLIC were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved. Accordingly, SOLIC respectfully submits that the compensation requested herein is reasonable in light of the nature, extent and value of such services to EFH Corp., its estate and all parties in interest.

### Reservation of Rights

26. It is possible that some expenses incurred during the Fee Period are not reflected in the Fee Application. SOLIC reserves the right to include such amounts in future fee applications.

**Notice**

27.  SOLIC provided notice of this Fee Application to:  (a) the Debtor; (b) co-counsel to the Debtors, Kirkland & Ellis LLP; (c) co-counsel to the Debtors, Richards, Layton & Finger, P.A.; (d) the Office of the United States Trustee; (e) counsel for the agent of the EFIH First Lien DIP Financing Facility; (f) counsel for the agent of the TCEH DIP Financing Facility; (g) counsel to the TCEH Creditors' Committee; (h) counsel to the EFH Creditors' Committee; and (i) counsel to the Fee Committee (collectively, the "Notice Parties").  Pursuant to the Interim Compensation Order, any party, other than the Notice Parties, that wishes to object to the Fee Application, must file its objection with the Court, with a copy to Chambers and serve it on SOLIC and the Notice Parties so that it is actually received on or before April 23, 2018 at 4:00 p.m. (prevailing Eastern Time).

**No Prior Request**

28. Other than the monthly fee statements, no prior request for the relief requested herein has been made to this or any other Court.

**Conclusion**

WHEREFORE, SOLIC respectfully requests that the Court enter an order (i) awarding SOLIC the sum of $72,689.00 as compensation for services rendered during the Fee Period; (ii) that the allowance of such compensation for professional services rendered be without prejudice to SOLIC's right to seek additional compensation for services rendered and for expenses incurred during the Fee Period which were not processed at the time of this Fee Application; and (iii) granting such other and further relief as the Court deems appropriate.

Dated:  April 17, 2018          /s/ Neil F. Luria
                                SOLIC Capital Advisors, LLC
                                Neil F. Luria, Senior Managing Director
                                4901 Vineland Rd., Suite 120
                                Orlando, Florida 32811

## **Exhibit A**

[Declaration]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## Verification of Neil F. Luria

1.     I am a Senior Managing Director and President of SOLIC Capital Advisors, LLC ("SOLIC"),[2] which maintains a central office at 1603 Orrington Avenue, Suite 1600, Evanston, Illinois 60201.  I am one of the lead professionals from SOLIC working on EFH Corp.'s chapter 11 case.

2.     I have personally performed many of the services rendered by SOLIC as financial advisor to EFH Corp. and am familiar with all other work performed on behalf of EFH Corp. by SOLIC.

3.     The facts set forth in the foregoing Fee Application are true and correct to the best of my knowledge, information and belief.

4.     I have reviewed Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware and believe that SOLIC's Fee Application complies with Rule 2016-2 to the extent not waived or otherwise modified pursuant to the terms of the Retention Order.

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]     Each capitalized term used but not otherwise defined herein shall have the meaning ascribed thereto in the *First Interim Application of SOLIC Capital Advisors, LLC, Financial Advisor for Debtor Energy Future Holdings Corp., for Compensation for Services Rendered and Reimbursement of Expenses Incurred from December 18, 2014 Through April 30, 2015.*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: <u>April 17, 2018</u>                    <u>*/s/ Neil F. Luria*                    </u>

                            Name:   Neil F. Luria
                            Title:    Senior Managing Director

**<u>Exhibit B</u>**

[Retention Order]

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF SOLIC CAPITAL ADVISORS, LLC AS FINANCIAL ADVISOR FOR DEBTOR AND DEBTOR IN POSSESSION ENERGY FUTURE HOLDINGS CORP. EFFECTIVE *NUNC PRO TUNC* TO DECEMBER 18, 2014

Upon the application (the "Application")[2] of debtor and debtor in possession Energy Future Holdings Corp. ("EFH Corp.") for the entry of an order (this "Order") authorizing EFH Corp., under the supervision of its disinterested directors, Donald L. Evans and Billie I. Williamson, to retain and employ SOLIC Capital Advisors, LLC ("SOLIC") as financial advisor, effective *nunc pro tunc* to December 18, 2014, in connection with Conflict Matters as defined in and pursuant to the authority delegated to EFH Corp.'s disinterested directors pursuant to resolutions of the EFH Corp. Board of Directors attached to the Application as Exhibit B (the "Resolutions"), including the determination by EFH Corp.'s disinterested directors regarding whether any matter constitutes a Conflict Matter, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

District of Delaware (the "Local Bankruptcy Rules"); and the Court having reviewed the

Application and the Declaration of Neil F. Luria, a Senior Managing Director and President of

SOLIC (the "Luria Declaration"); and the Court having found that the Court has jurisdiction over

this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that the

Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found

that venue of the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and the Court having found, based on the representations made in the Application and in the

Luria Declaration, that (a) SOLIC does not hold or represent an interest adverse to EFH Corp.'s

estate and (b) SOLIC is a "disinterested person" as defined in section 101(14) of the Bankruptcy

Code and as required by section 327(a) of the Bankruptcy Code; and the Court having

determined that the terms and conditions of SOLIC's employment, including the fee and expense

structure set forth in the Engagement Letter (attached hereto as **Exhibit 1**), are reasonable as

required by section 328 (a) of the Bankruptcy Code; and the Court having found that the relief

requested in the Application is in the best interests of EFH Corp.'s estate, its creditors, and other

parties in interest; and the Court having found that EFH Corp. provided adequate and appropriate

notice of the Application under the circumstances and that no other or further notice is required;

and the Court having reviewed the Application; and the Court having determined that the legal

and factual bases set forth in the Application just cause having been shown for the relief granted

herein; and any objections to the relief requested herein having been either withdrawn or

overruled; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

    1.      The Application is granted to the extent set forth herein.

47349969v2

2.      EFH Corp. is authorized to retain and employ SOLIC as its financial advisor to advise it on Conflict Matters, including whether a matter constitutes a Conflict Matter, consistent with the terms and conditions set forth in the Engagement Letter, effective *nunc pro tunc* to December 18, 2014, and to pay fees and reimburse expenses to SOLIC on the terms and times specified in the Engagement Letter attached hereto as **Exhibit 1**; *provided, however*, that nothing in the Engagement Letter shall supersede any provisions of the Bankruptcy Code during the pendency of EFH Corp.'s chapter 11 case; *provided further, however*, that to the extent the Application, the Luria Declaration, and any later declaration or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern

3.      The terms of the Engagement Letter are approved in all respects except as limited or modified herein.

4.      SOLIC's compensation set forth in the Engagement Letter is approved pursuant to section 328(a) of the Bankruptcy Code and SOLIC shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court, including but not limited to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* dated September 16, 2014 [D.I. 2066].

5.      Pursuant to the terms of the Engagement Letter, SOLIC is entitled to reimbursement by EFH Corp. for reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, including, without limitation, the reasonable fees, disbursements and other charges of SOLIC's counsel (which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise), in

3

47349969v2

accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any applicable orders of this Court and the Fee Guidelines promulgated by the Office of the United States Trustee, *provided however*, that SOLIC shall not seek reimbursement for any services provided by SOLIC's counsel to EFH Corp.; *provided further*, that SOLIC shall submit the invoices of SOLIC's counsel, together with any application seeking allowance of reimbursement for the fees, disbursements and other charges of its counsel.

6.      With respect to the provision of the Engagement Letter reflecting that SOLIC may perform *de novo* analyses as may be required and approved by the Disinterested Directors, in such events, SOLIC shall file a supplemental application or applications requesting authority to undertake such analyses, which shall generally outline the scope of the *de novo* analyses and identify the SOLIC professionals designated to perform such *de novo* analyses and their corresponding hourly rates.

7.      None of the fees payable to SOLIC shall constitute a "bonus" or fee enhancement under applicable law.

8.      Absent further order of this Court, fees and expenses incurred by SOLIC shall be paid by EFH Corp.

9.      SOLIC shall use its reasonable efforts to avoid any duplication of services provided by any of EFH Corp.'s other retained professionals in EFH Corp.'s chapter 11 case.

10.      Notwithstanding any provision to the contrary in this Order, the U.S. Trustee shall have the right to object to SOLIC's request(s) for interim and final compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the

4

47349969v2

U.S. Trustee to challenge the reasonableness of SOLIC's fees under the standard set forth in the preceding sentence. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of SOLIC's fees.

11.    SOLIC shall include in its fee applications, among other things, time records setting forth, in summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of ECF Corp. in half-hour increments, but SOLIC shall be excused from keeping time in tenth-hour increments.

12.    SOLIC is granted a waiver of the information requirements relating to compensation requests set forth in Local Rule 2016-2(d) to the extent requested in the Application.

13.    SOLIC shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code; provided, however, the fee applications filed by SOLIC shall be subject to review only pursuant to the standard of review set forth in section 328 of the Bankruptcy Code and not subject to the standard of review set forth in section 330 of the Bankruptcy Code, except as otherwise expressly set forth herein.

14.    The relief granted herein shall be binding upon any chapter 11 trustee appointed in EFH Corp.'s chapter 11 case, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of EFH Corp.'s chapter 11 case to a case under chapter 7.

15.    The indemnification provisions set forth in the Engagement Letter are hereby approved, subject during the pendency of these cases to the following:

47349969v2

a.    subject to the provisions of subparagraph d., *infra*, EFH Corp. is
      authorized to indemnify, and to provide contribution and reimbursement
      to, and shall indemnify, and provide contribution and reimbursement to,
      the Indemnified Persons (as defined in the Engagement Letter) in
      accordance with the Engagement Letter for any claim arising from, related
      to, or in connection with the services provided for in the Engagement
      Letter; notwithstanding any provisions of the Engagement Letter to the
      contrary;

b.    EFH Corp. shall have no obligation to indemnify SOLIC or provide
      contribution or reimbursement to SOLIC (i) for any claim or expense that
      is judicially determined (the determination having become final) to have
      arisen from SOLIC's bad faith, self-dealing, breach of fiduciary duty (if
      any), willful misconduct or gross negligence, (ii) for a contractual dispute
      in which EFH Corp. alleges the breach of SOLIC's contractual obligations
      if the Court determines that indemnification, contribution, or
      reimbursement would not be permissible pursuant to *In re United Artists
      Theatre Company, et. al.*, 315 F.3d 217 (3d Cir. 2003), or (iii) for any
      claim or expense that is settled prior to a judicial determination as to the
      exclusions set forth in clauses (i) and (ii) above, but determined by the
      Court, after notice and a hearing pursuant to subparagraph d., *infra*, to be a
      claim or expense for which SOLIC should not receive indemnity,
      contribution or reimbursement under the terms of the Indemnification
      Letter, as modified by this Order;

c.    if during the pendency of EFH Corp.'s case the indemnification is held
      unenforceable by reason of the exclusions set forth in subparagraph b.
      above and SOLIC makes a claim for the payment of any amounts by EFH
      Corp. on account of EFH Corp.'s contribution obligations, then the
      contribution provisions in the Engagement Letter shall not apply; and

d.    if, before the earlier of (i) the entry of an order confirming a chapter 11
      plan in EFH Corp.'s case (that order having become a final order no
      longer subject to appeal) and (ii) the entry of an order closing EFH Corp.'s
      case, SOLIC believes that it is entitled to the payment of any amounts by
      EFH Corp. on account of EFH Corp.'s indemnification, contribution,
      and/or reimbursement obligations under the Engagement Letter (as
      modified by this Order), including without limitation the advancement of
      defense costs, SOLIC must file an application therefor in this Court, and
      EFH Corp. may not pay any such amounts to SOLIC before the entry of
      an order by this Court approving the payment. This subparagraph d. is
      intended only to specify the period of time during which the Court shall
      have jurisdiction over any request for compensation and expenses by
      SOLIC for indemnification, contribution, or reimbursement and is not a
      provision limiting the duration of EFH Corp.'s obligation to indemnify
      SOLIC.

47349969v2

16.     Notwithstanding anything to the contrary in the Application or the Engagement Letter, SOLIC will not seek reimbursement of expenses for office supplies.

17.     EFH Corp. and SOLIC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

18.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Bankruptcy Rules are satisfied by the contents of the Application.

19.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20.     Notwithstanding any contrary provision in the Application or the Engagement Letter, the Court shall retain jurisdiction to hear and determine all matters arising from or related to implementation of this Order.

Dated:     2/6/15
         Wilmington, Delaware

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

47349969v2

**Exhibit 1** (to Order)

[Engagement Letter]

47349969v2



SOLIC Capital Advisors, LLC
1603 Orrington Avenue, Suite 1600
Evanston, Illinois  60201
847.583.1619   Phone
847.583.1426   Fax

December 18, 2014

<u>Personal and Confidential</u>
The Honorable Donald L. Evans
Executive Chairman
Board of Directors
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201
dle@donevans34.com

Billie I. Williamson
Director
Board of Directors
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201
billie.williamson@forresterco.com

Dear Mr. Evans and Ms. Williamson:

Subject to approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), this letter confirms the retention of SOLIC Capital Advisors, LLC ("SOLIC") by Energy Future Holdings Corp. (the "Company"), <u>nunc pro tunc</u> to December 18, 2014, in accordance with the terms set forth in this letter, pursuant to which SOLIC will provide to the Company, at the direction of its disinterested directors, Donald L. Evans and Billie I. Williamson (the "Disinterested Directors"), the services described below in connection with the Company's chapter 11 case (the "Case").

On April 29, 2014 (the "Commencement Date"), the Company commenced its Case by filing a voluntary petition for relief under chapter 11 title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.  This engagement letter (this "Engagement Letter"), and SOLIC's obligations and responsibilities relating to this engagement (the "Engagement"), shall be effective as of December 18, 2014, subject to obtaining Bankruptcy Court approval in this Case; <u>provided</u>, <u>however</u>, that either party may, in its sole discretion and without any liability arising therefrom, terminate this Engagement in the event that (a) a final order authorizing the employment of SOLIC as financial advisors for the Company (the "Order") is not issued by the Bankruptcy Court in this Case on or before one hundred twenty (120) days from the date hereof on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to SOLIC, or (b) the application of the Company seeking the Order is denied by the Bankruptcy Court in this Case.  In such event, the Company hereby agrees to withdraw, promptly upon SOLIC's request, any application filed or to be filed with the Bankruptcy Court to retain SOLIC's services in this Case.

47349969v2

Energy Future Holdings Corp.
December 18, 2014

Specifically, the terms and conditions of our engagement and the services that it is anticipated that SOLIC will provide are as follows:

1.   **Services.**  Pursuant to this Engagement, SOLIC will provide a variety of financial advisory and other services to the Company, at the direction of its Disinterested Directors, in connection with "Conflict Matters" as defined in and pursuant to the authority delegated to the Disinterested Directors pursuant to resolutions of the Company's Board of Directors attached hereto as <u>Exhibit A</u> (the "<u>Resolutions</u>"), including the determination by the Company's Disinterested Directors regarding whether any matter constitutes a Conflict Matter.  Such services will include:

   (a)   Reviewing bid procedures and progress in developing a plan of reorganization;
   (b)   reviewing inter-company claims between the Company and other affiliates;
   (c)   reviewing financial elements pertaining to key tax issues;
   (d)   reviewing financing proposals received to date and future financing needs of the Company; and
   (e)   such other matters as may be agreed upon which are consistent with SOLIC's experience.

   It is the parties' desire that SOLIC rely on the work of the Company's legal and other financial advisors to provide the basis of any reviews and analysis provided hereunder unless *de novo* analysis is required and approved by the Disinterested Directors.  For purposes hereof, "*de novo* analysis" shall mean any analysis where SOLIC is required to undertake independent review of source documentation or data (i.e., documents or data other than actual reports and analyses prepared by the Company's other advisors) or the development of new independent analyses as directed by the Disinterested Directors.  For the sake of clarification, any reviews performed by SOLIC on existing work product produced by the Company's legal and other financial advisors will not constitute *de novo* analysis.

2.   **Information.** In connection with SOLIC's activities hereunder, the Company agrees to cooperate with SOLIC and will use its good faith efforts to furnish to, or cause to be furnished to, SOLIC all information and data concerning the Company (the "Information") which SOLIC reasonably deems appropriate and will use its good faith efforts to assist SOLIC in obtaining access to the Company's officers, directors, employees and advisors, as necessary

   The Company acknowledges and agrees that the Company's management is responsible for supplying materially complete and accurate Information, representations, and books and records upon which we must rely in providing our services to the Company.  The Company agrees to promptly notify SOLIC if the Company believes that any Information which was previously provided to SOLIC has become materially misleading.  The Company acknowledges and agrees that, in rendering its services hereunder, SOLIC will be using and relying on Information (and information available from public sources and other sources deemed reliable by SOLIC) without independent verification thereof or independent appraisal or evaluation of the Company, or any other party.   SOLIC does not assume responsibility for the accuracy or completeness of Information or any other information regarding the Company.  SOLIC will have no obligation to update any report(s) that it may produce or to revise the information contained therein because of events and transactions occurring subsequent thereto. It is further understood that any advice rendered by SOLIC pursuant to its Engagement hereunder, including any advice rendered during the course of participating in negotiations and meetings with the Company and its representatives, as well as any written materials provided by SOLIC, are intended solely for the

2

Energy Future Holdings Corp.
December 18, 2014

benefit and use of the Company, its Disinterested Directors and professionals, and may not be relied upon by any other person or entity without SOLIC's prior written consent.

3.   Compensation.  In consideration of SOLIC's efforts, SOLIC shall be compensated as follows by the Company and/or from the Company's estate (subject to allowance and approval by the Bankruptcy Court):

SOLIC will be paid a monthly fixed fee payment of $200,000 (the "Monthly Fee"), via wire transfer per the wire instructions set forth on Exhibit B attached hereto, with the first payment (including the pro-rated Monthly Fee for the period December 18 through December 31, 2014 and any other accrued but unpaid Monthly Fees for periods thereafter) to be made upon the Court's approval of SOLIC's retention and, thereafter, in advance on the first day of each month during the term of our Engagement hereunder.  The parties hereto hereby agree that the Monthly Fee may be reviewed and potentially adjusted prospectively, if appropriate, based upon mutual agreement, taking into account, among other things, the contribution of SOLIC's professionals to the Case, the aggregate work performed over the course of the Engagement, and such other factors as may be mutually agreed upon, and as approved by the Bankruptcy Court, if necessary.

In addition to the Monthly Fees, if SOLIC is requested by the Company and the Disinterested Directors, to perform any "de novo analysis" or to provide litigation support or testimony (or support thereof) in support of any litigation matters, such services will be provided at SOLIC's standard billing rates as set forth on Exhibit C pursuant to a budget agreed upon by SOLIC and the Disinterested Directors on behalf of the Company and any such related fees and expenses will be subject to Bankruptcy Court approval and be paid in accordance with the following paragraph.

SOLIC will be reimbursed monthly for all of its reasonable and documented expenses and hourly fees, if any, related to this Engagement, including travel, document production, reasonable fees and expenses of our legal counsel (other than the cost of internal legal counsel), including amounts attributable to our obligation to respond to discovery requests, participate in depositions or appear in court in connection with services under this Engagement Letter, and other costs incurred in providing the services hereunder.

SOLIC understands that the Company will seek authorization of the Bankruptcy Court for it to fulfill its obligations under this Engagement Letter.

The Company has been informed that SOLIC intends to apply for compensation for professional services to be rendered in connection with this Case and for reimbursement of expenses incurred, in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware and any applicable order of the Bankruptcy Court (the "Payment Rules").  Payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court.  SOLIC will maintain internal time records for all work performed for the Company.  The request for Bankruptcy Court approval of our retention, and the proposed order to be submitted in connection therewith, shall be provided to SOLIC prior to submission and must be acceptable to SOLIC in its sole discretion.

3

Energy Future Holdings Corp.
December 18, 2014

To the extent that, at any time during this Case, the Bankruptcy Court reviews any of the terms of this Engagement Letter, such review shall be subject to the standard of review of Section 328(a) of the Bankruptcy Code and the Payment Rules, and not subject to any other standard of review under Section 330 of the Bankruptcy Code. SOLIC will submit reasonably detailed invoices and statements of expenses to the Company in accordance with that certain *Order Establishing Professional Interim Compensation Procedures* entered in the Case. Because SOLIC does not ordinarily maintain contemporaneous time records in one-tenth hour (0.1) increments, the Company agrees to request that SOLIC be excused from compliance with such requirements and should be required only to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a description of services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Company.

In agreeing to these provisions, the Company acknowledges that it believes that our general restructuring experience and expertise will inure to the benefit of the Company and that the value to the Company and/or its constituents derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of fees above are reasonable, regardless of the number of hours to be expended by our professionals in the performance of the services to be provided hereunder.

4.    Termination.  SOLIC's engagement hereunder may be terminated by either the Company or SOLIC at any time, with or without cause, upon 30 days' written notice to the other party; provided, however, that no such termination will affect SOLIC's right to expense reimbursement or the payment of any accrued and unpaid fees pursuant to Section 3 hereof or the Indemnity Agreement (as defined below), and the provisions related thereto contained in this Engagement Letter will survive the expiration or termination of this engagement. Furthermore, if the Order is not obtained, or is later reversed or set aside for any reason, SOLIC may terminate this Engagement Letter and SOLIC shall be reimbursed for all fees and expenses reasonably incurred prior to the date of expiration or termination.

5.    Collection.  In the event SOLIC prevails in any action to enforce collection of amounts due or other rights under this Engagement Letter, SOLIC's reasonable legal fees and other collection costs incurred by SOLIC, plus interest on amounts otherwise due but unpaid at the prime rate (Bank of America prime) plus 2 percent until paid, shall be paid by the Company and/or the Company's estate.

6.    Governing Law.  This Engagement Letter will be deemed made in New York and will be governed by the laws of the State of New York. The Company and SOLIC irrevocably submit to the jurisdiction of the Bankruptcy Court as long as the Case is open, and once the Case is closed, to any court of the State of New York or the United States District Court for the Southern District of New York (Manhattan Division), for the purpose of any suit, action or other proceeding arising out of this Engagement Letter, or any of the agreements or transactions contemplated hereby, which is brought by or against the Company. Each of the Company and SOLIC hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with, this Engagement Letter and the transactions contemplated hereby). SOLIC will act under this Engagement Letter as an independent contractor with duties solely to the Company. Because we will be acting on the Company's behalf in this capacity, it is our practice to receive indemnification. A copy of our standard indemnity form is attached hereto as Exhibit D ("Indemnity Agreement"). The terms of

4

Energy Future Holdings Corp.
December 18, 2014

the Indemnity Agreement are incorporated by reference into this Engagement Letter. In no event will SOLIC's liability in connection with this Engagement Letter exceed the total fees paid to SOLIC hereunder. In no event shall SOLIC, the Company or their respective personnel be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage or expense relating to this Engagement.

7.   Successors and Assigns. This Engagement Letter shall be binding upon and inure to the benefit of the parties hereto, their respective successors and assigns. Neither party may delegate or assign its rights or obligations under this Engagement Letter without the written consent of the other party.

8.   Review. The services to be provided by SOLIC hereunder will not constitute (a) a fairness or solvency opinion or (b) a compilation, examination, review or audit of any entity's information, financial or otherwise, historical or prospective, as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants. In addition, SOLIC does not make any predictions or provide any opinions or other assurances concerning the outcome of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt. SOLIC reserves the right to issue a tombstone announcement with respect to SOLIC's involvement in connection with the Engagement consistent with the Order.

9.   Limitations. This Engagement Letter does not create, and will not be construed as creating, rights enforceable by any person or entity not a party hereto, except those entitled thereto by virtue of the Indemnity Agreement. The Company acknowledges and agrees that (a) SOLIC will act as an independent contractor and is being retained solely to assist the Company and the Disinterested Directors and, unless separately requested by the Company, that SOLIC is not being retained to provide a formal opinion as to any possible restructuring or outcome, (b) nothing in this Engagement Letter or in the nature of services in connection with the Engagement or otherwise shall be deemed to create a fiduciary duty or fiduciary or agency relationship between SOLIC and the Company, or any other party, (c) SOLIC is a professional advisor to the Company and is not and will have no duties or liabilities to the equityholders or creditors of the Company, any affiliate of the Company or any other person by virtue of this Engagement Letter and the retention of SOLIC hereunder (other than as set forth herein), all of which duties and liabilities are hereby expressly waived, and (d) any advice rendered by SOLIC does not constitute a recommendation to any creditor or stakeholder that such creditor or stakeholder might or should take in connection with a possible restructuring; provided, however, this clause (d) shall not apply to the advice rendered by SOLIC to the Disinterested Directors as part of the services provided under the terms of this Engagement Letter. Neither equityholders nor creditors of the Company are intended beneficiaries hereunder. The Company recognizes and acknowledges that by performing the services set forth in this Engagement Letter, SOLIC is not acting in any management capacity and that Company has not requested SOLIC to make, nor has SOLIC agreed to make, any business decisions on behalf of the Company. All decisions about the business of the Company remain the sole responsibility of the Company (and to the extent applicable, the Disinterested Directors). The Company and each Disinterested Director hereby expressly acknowledges that SOLIC does not guarantee, warrant, or otherwise provide any assurances that the Company will restructure successfully. SOLIC is not a law, accounting, tax, or actuarial firm and will not be providing any legal, accounting, tax advice, or actuarial services

5

Energy Future Holdings Corp.
December 18, 2014

hereunder.  In addition, the Company confirms that it will rely on its own counsel for legal advice.   SOLIC's services are not designed, nor should they be relied upon, to disclose internal weaknesses in internal controls, financial statement errors, irregularities, illegal acts or disclosure deficiencies.

10.    Counterparts.  This Engagement Letter, and any modification or amendment thereto, may be executed in counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument.

11.    Notices.  All correspondence and notices shall be sent to the parties as listed hereafter or to such other persons or addresses as may be given by one party to the other, and will be deemed effective the earlier of actual delivery or three days after mailing.

Personal and Confidential

The Honorable Donald L. Evans
Executive Chairman
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201

with a copy to:

General Counsel
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201


Neil F. Luria
Senior Managing Director
SOLIC Capital Advisors, LLC
1603 Orrington Avenue
Suite 1600
Evanston, IL  60201

13.  Entire Agreement.   This Engagement Letter is the entire agreement between the parties pertaining to its or their subject matter and supersedes all prior agreements, representations and understandings of the parties.  No modification of this Engagement Letter shall be binding unless agreed to in writing by the parties.

14.  Retention Application.  The Company agrees to file the necessary retention applications in the Bankruptcy Court in order to properly retain SOLIC in accordance with the terms set forth in this letter.

47349969v2

Energy Future Holdings Corp.
December 18, 2014

If this Engagement Letter meets with your approval, please indicate your consent and agreement to be
bound by the terms of this Engagement Letter by executing the attached copy and forwarding it to me.

Very truly yours,

SOLIC CAPITAL ADVISORS, LLC

By: /s/ Neil F. Luria
        Neil F. Luria
        Senior Managing Director

ACKNOWLEDGED AND AGREED:

ENERGY FUTURE HOLDINGS CORP.

By: /s/ Donald L. Evans
        Donald L. Evans
        Executive Chairman
        Board of Directors
        Energy Future Holdings Corp.

Date: December 18, 2014

47349969v2

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "A"** (to Engagement Letter)

Energy Future Holdings Corp.
December 18, 2014

## ENERGY FUTURE HOLDINGS CORP. ("EFH")
### BOARD OF DIRECTORS RESOLUTIONS
### DECEMBER 9, 2014

The following recitals and resolutions supplement the Board of Directors Resolutions dated as of November 7, 2014 ("November 7th Resolutions") and, in the event of any inconsistency, these resolutions shall supersede and control.

WHEREAS, EFH and certain of its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries), including TCEH (the "Debtors") on April 29, 2014, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Chapter 11 Case") in the Bankruptcy Court for the District of Delaware ("Bankruptcy Court");

WHEREAS, the members of the Board of Directors of EFH ("Board") having relationships or interests with other affiliated or related companies and their direct or indirect equity holders and other material relationships have disclosed certain facts that they believe to be material to the Board;

WHEREAS, as described in the material presented and reviewed by the Board and based on a review of the known facts and circumstances, the Board has determined and confirmed by the November 7th Resolutions that Donald L. Evans and Billie I. Williamson are the only current members of the Board that are disinterested with respect to any matter pertaining to the Chapter 11 Case on which an actual conflict exists between EFH, on the one hand, and any other Debtor, on the other hand ("Conflict Matters"), and were designated the Disinterested Directors ("Disinterested Directors") as set forth in *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters*, approved by the Bankruptcy Court on September 16, 2014 ("Stipulation");

WHEREAS, the members of the Board considered the Stipulation related to, among other things, the authority of the Disinterested Directors to retain independent legal counsel and other advisors under certain circumstances;

WHEREAS, the Board resolved by the November 7th Resolutions to delegate the authority to the Disinterested Directors to seek and retain, at EFH's sole expense, independent legal counsel and such other advisors ("Independent Advisors") as the Disinterested Directors deem necessary to represent and advise EFH, reporting to the Disinterested Directors, on the Conflict Matters;

WHEREAS, the Disinterested Directors interviewed and engaged certain Independent Advisors effective as of November 19, 2014 to represent and advise EFH, and reporting solely to the Disinterested Directors, as set forth herein; and

WHEREAS, pursuant to the Stipulation and Section 21.416 of the Texas Business Organizations Code, the members of the Board desire to delegate to the Disinterested Directors certain rights, authority, and powers in connection with Conflict Matters, among other matters set forth herein;

NOW, THEREFORE, BE IT,

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to review and act upon (as set forth herein) any Conflict Matters; and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to investigate and determine whether any matter constitutes a Conflict Matter, in the exercise of their business judgment and with the advice of the Independent Advisors, and any such determination shall be binding on EFH and EFH's subsidiaries (other than Energy Future Intermediate Holding Company LLC and its direct and indirect subsidiaries and

Energy Future Holdings Corp.
December 18, 2014

Energy Future Competitive Holdings Company LLC and its direct and indirect subsidiaries (the "Excluded Subsidiaries")); and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to make all decisions, and to implement or direct the implementation of all such decisions, in each case on EFH's behalf, with respect to Conflict Matters as the Disinterested Directors deem appropriate, in the exercise of their business judgment and with the advice of the Independent Advisors or others with whom the Disinterested Directors determine it is appropriate or necessary to consult, and to act on behalf of and bind EFH in connection therewith, including taking action on EFH's behalf, as the direct and indirect holder of 100% of the equity interests in its subsidiaries, causing such subsidiaries (other than the Excluded Subsidiaries) to abide by and implement the decisions and actions of the Disinterested Directors with respect to Conflict Matters and the Disinterested Directors' determination of whether a matter constitutes a Conflict Matter; and further

RESOLVED that the Disinterested Directors will update the Board at board meetings on the status of their (i) review of and decisions on whether any matter constitutes a Conflict Matter, and (ii) review of and decisions on Conflict Matters, in each case in the manner that the Disinterested Directors determine is appropriate and necessary to fulfill their duties and obligations as the Disinterested Directors, taking into account the confidentiality or privilege of the Disinterested Directors' work and the advice of the Independent Advisors; and further

RESOLVED that EFH shall, as the direct and indirect holder of 100% of the equity interests in its subsidiaries, direct and cause each of such subsidiaries (other than the Excluded Subsidiaries) to abide by and comply with these resolutions; and further

RESOLVED that the officers, employees, advisors and agents of EFH (collectively, the "Authorized Persons"), acting alone or with one or more other Authorized Persons, be, and hereby are, directed to furnish to the Disinterested Directors and the Independent Advisors all information as the Disinterested Directors or the Independent Advisors may request, in a manner that shall not effect a waiver of any applicable privilege, and to cooperate with the Disinterested Directors and the Independent Advisors in all respects; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and hereby are, authorized, empowered and directed to implement any decision made by the Disinterested Directors in respect of a Conflict Matter on behalf of EFH as directed by the Disinterested Directors; provided that the Disinterested Directors retain the right to implement any such decision on behalf of EFH and its subsidiaries (other than the Excluded Subsidiaries) themselves or through the Independent Advisors; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and they hereby are, authorized, empowered and directed to take any and all action that they deem necessary or proper to assist the Disinterested Directors in carrying out the foregoing, in each case as requested by and under the direction of the Disinterested Directors; and further

RESOLVED that the Disinterested Directors shall control any attorney-client, work product, or other privilege belonging to EFH in connection with the Independent Advisors or their work or privileged communications on the Conflict Matters and on whether any matter constitutes a Conflict Matter; and further

RESOLVED that each member of the Board has agreed and hereby agrees that he or she shall not have access to, and shall not seek access to, and hereby directs that each Authorized Person shall not have access to and shall not seek access to, the work or privileged material of the Independent

2

Energy Future Holdings Corp.
December 18, 2014

Advisors on the Conflict Matters or on whether any matter constitutes a Conflict Matter, except as permitted by the Disinterested Directors; and further

RESOLVED that the Disinterested Directors be, and hereby are, authorized to take all such further action, at EFH's expense, as the Disinterested Directors shall deem necessary, proper or advisable consistent with these resolutions or in order to carry out fully the intent and purposes of these resolutions; and further

RESOLVED that all actions previously done or approved, or caused to be done or approved, by the Disinterested Directors or the Authorized Persons, including the retention of Independent Advisors, in each case only to the extent consistent with these resolutions, or to otherwise carry out the intent of these resolutions, be and hereby are approved, adopted, confirmed and ratified in all respects.

3

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "B"** (to Engagement Letter)

Wiring Instructions

Please direct wire to:

| | |
|---|---|
| Account Name: | SOLIC Capital Advisors, LLC |
| Account Number: | 3800869411 |
| Bank: | Northern Trust Bank |
| Address: | 50 S. LaSalle, Chicago, IL 60675 |
| ABA#: | 071000152 |
| SWIFT: | CNORUS44 |
| | |
| Beneficiary Name: | SOLIC Capital Advisors, LLC |

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "C"** (to Engagement Letter)

Standard Hourly Rates

| | |
|---|---|
| Senior Managing Directors | $750-895/hr |
| Managing Directors | $695-825/hr |
| Directors | $550-695/hr |
| Associate Directors | $450-550/hr |
| Managing Consultants | $350-450/hr |
| Consultants/Associates | $245-350/hr |
| Paraprofessionals | $95-125/hr |

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "D"** (to Engagement Letter)

December 18, 2014

SOLIC Capital Advisors, LLC
1603 Orrington Avenue
Suite 1600
Evanston, IL  60201

Ladies and Gentlemen:

This agreement will confirm that Energy Future Holdings Corp. (the "Company"), has engaged SOLIC Capital Advisors, LLC ("SOLIC") to advise and assist it in connection with the matters referred to in our engagement letter, dated of even date herewith (the "Engagement Letter").  Capitalized terms used herein without definition shall have the meanings ascribed to them in the Engagement Letter.  In connection with the terms of the Engagement Letter (the "Engagement"), the Company agrees to indemnify and hold harmless SOLIC and its affiliates and their respective members, officers, directors, employees and agents and each other person, if any, controlling SOLIC or any of its affiliates and their respective successors, assigns, independent contractors, agents, heirs and personal representatives (each referred to herein as a " SOLIC Indemnified Person") to the fullest extent permitted by law from and against any losses, claims, damages, obligations, penalties, judgments, awards, costs, disbursements or liabilities, including amounts paid in settlement (collectively, "Losses"), based upon, related to, arising out of or in connection the Engagement and will reimburse each SOLIC Indemnified Person for all expenses (including fees and expenses of counsel) ("Expenses") as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation, or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any SOLIC Indemnified Person is a party.  Notwithstanding the foregoing, (i) in no event shall the Company be responsible for any Losses or Expenses that arise out of or in connection with the Engagement to the extent such Losses or Expenses are finally judicially determined to have resulted from the willful misconduct, bad faith or gross negligence of SOLIC or any other SOLIC Indemnified Person and (ii) if any SOLIC Indemnified Person to whom such Expenses have been advanced shall be determined pursuant to clause (i) to not be eligible for reimbursement of such Expenses, such SOLIC Indemnified Person shall promptly repay such expenses to the Company.  If any litigation, investigation or proceeding is commenced as to which SOLIC proposes to demand indemnification, SOLIC will notify the Company with reasonable promptness; provided, however, that any failure by SOLIC to notify the Company will relieve the Company from their obligations hereunder only to the extent the Company have been materially prejudiced by such failure or delay.

The Company will, if requested by any SOLIC Indemnified Party, assume the defense of any proceeding in respect of which indemnity may be sought hereunder, including the employment of counsel reasonably satisfactory to SOLIC and the payment of the fees and expenses of such counsel, in which event, except as provided below, the Company shall not be liable for the fees and expenses of any other counsel retained by any SOLIC Indemnified Party in connection with such proceeding.  In any such proceeding the defense of which the Company shall have so assumed, any SOLIC Indemnified Party shall have the right to participate in such Proceeding and to retain its own counsel, but the fees and expenses of such counsel shall be at the expense of such SOLIC Indemnified Party unless (i) the Company and such

Energy Future Holdings Corp.
December 18, 2014

SOLIC Indemnified Party shall have mutually agreed in writing to the retention of such counsel or (ii) the named parties to any such proceeding (including any impleaded parties) include such SOLIC Indemnified Party and representation of the Company and such SOLIC Indemnified Party by the same counsel would, in the opinion of counsel to such SOLIC Indemnified Party, be inappropriate due to actual or potential conflicts of interests between the Company and such SOLIC Indemnified Party, including situations in which there are one or more legal defenses available to the SOLIC Indemnified Party that are different from or additional to those available to the Company. The Company shall not be liable for any settlement of any proceeding effected without its written consent, such consent not to be unreasonably withheld, but if settled with such consent or if there is a final judgment against an SOLIC Indemnified Party, the Company agrees to indemnify the SOLIC Indemnified Party from and against any Loss by reason of such settlement or judgment.

If, for any reason, the foregoing indemnification is unavailable to any of the SOLIC Indemnified Parties or is insufficient to hold them harmless in respect of any Losses or Expenses, then the Company will contribute to the amount paid or payable by any of the SOLIC Indemnified Parties as a result of such Losses and Expenses in such proportion as is appropriate to reflect the relative benefits (or anticipated benefits) to the Company and the Disinterested Directors on the one hand and the SOLIC Indemnified Parties on the other hand, but also the relative fault of the Company and the Disinterested Directors, and their shareholders, members, agents and advisers (other than SOLIC) on the one hand and the SOLIC Indemnified Parties on the other hand, as well as any other relevant equitable considerations. The relative benefits received (or anticipated to be received) by the Company and the Disinterested Directors on the one hand and by the SOLIC Indemnified Parties on the other hand will be deemed to be in the same proportion as such benefit bears to the total fees paid to SOLIC pursuant to the Engagement Letter. The relative fault of any party or other person will be determined by reference to such party's or person's knowledge, access to information and opportunity to prevent or correct any misstatement, omission, misconduct or breach of duty. In no event will the amount required to be contributed by the SOLIC Indemnified Parties hereunder exceed the total amount of fees paid to SOLIC pursuant to the Engagement Letter. You and we agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above.

The reimbursement, indemnity and contribution obligations of the Company hereunder will (i) be in addition to any liability which the Company may otherwise have, (ii) survive the completion or termination of SOLIC's engagement under the Engagement Letter and (iii) shall be binding upon any successors and assigns of the Company.

The Company agree that without the prior written consent of SOLIC, the Company will not consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claims, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not any SOLIC Indemnified Person is a party thereto) unless (i) such settlement, compromise, consent or termination includes an unconditional release of each SOLIC Indemnified Person from all claims and liabilities arising out of such action, claim, suit or proceeding and (ii) there is no statement in connection therewith as to an admission of fault, culpability or failure to act by or on behalf of any SOLIC Indemnified Party.

The provisions of this agreement shall apply to the Engagement and any modification thereof and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement will be deemed made in New York. The validity and interpretation of this agreement will be governed by, and construed and enforced in accordance with, the laws of the State of New York applicable to agreements made and to be fully performed therein (excluding the conflicts of laws rules).

47349969v2                                   2

Energy Future Holdings Corp.
December 18, 2014

So long as the Case (as that term is defined in the Engagement Letter) is open, the Company and SOLIC irrevocably submit to the jurisdiction of the Bankruptcy Court with respect to any suit, action or proceeding arising out of the Engagement. However, once the Case is closed, the Company irrevocably submit to the jurisdiction of any court of the State of New York or the United States District Court of the Southern District of the State of New York (Manhattan Division) for the purpose of any suit, action or other proceeding arising out of this agreement which is brought by or against the Company. Each of the Company and SOLIC hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with this agreement.

Very truly yours,

ENERGY FUTURE HOLDINGS CORP.


By: /s/ Donald L. Evans
    Name:  Donald L. Evans
    Title:    Executive Chairman
            Board of Directors
            Energy Future Holdings Corp.

Date:  December 18, 2014


Accepted and agreed to:

SOLIC CAPITAL ADVISORS, LLC



By: /s/ Neil F. Luria
    Neil F. Luria
    Senior Managing Director

Date:  December 18, 2014



~~SOLIC Capital Advisors, LLC~~
~~1603 Orrington Avenue, Suite 1600~~
~~Evanston, Illinois  60201~~
~~847.583.1619   Phone~~
~~847.583.1426   Fax~~

1603 Orrington Avenue, Suite 1600
Evanston, Illinois  60201
847.583.1619   Phone
847.583.1426   Fax

December 18, 2014

**Personal and Confidential**
The Honorable Donald L. Evans
Executive Chairman
Board of Directors
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201
dle@donevans34.com

Billie I. Williamson
Director
Board of Directors
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201
billie.williamson@forresterco.com

Dear Mr. Evans and Ms. Williamson:

Subject to approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), this letter confirms the retention of SOLIC Capital Advisors, LLC ("SOLIC") by Energy Future Holdings Corp. (the "Company"), *nunc pro tunc* to December 18, 2014, in accordance with the terms set forth in this letter, pursuant to which SOLIC will provide to the Company, at the direction of its disinterested directors, Donald L. Evans and Billie I. Williamson (the "Disinterested Directors"), the services described below in connection with the Company's chapter 11 case (the "Case").

On April 29, 2014 (the "Commencement Date"), the Company commenced its Case by filing a voluntary petition for relief under chapter 11 title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.  This engagement letter (this "Engagement Letter"), and SOLIC's obligations and responsibilities relating to this engagement (the "Engagement"), shall be effective as of December 18, 2014, subject to obtaining Bankruptcy Court approval in this Case; *provided*, *however*, that either party may, in its sole discretion and without any liability arising therefrom, terminate this Engagement in the event that (a) a final order authorizing the employment of SOLIC as financial advisors for the Company (the "Order") is not issued by the Bankruptcy Court in this Case on or before one hundred twenty (120) days from the date hereof on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to SOLIC, or (b) the application of the Company seeking the Order is denied

47349969v2

Energy Future Holdings Corp.
December 18, 2014

by the Bankruptcy Court in this Case.  In such event, the Company hereby agrees to withdraw, promptly upon SOLIC's request, any application filed or to be filed with the Bankruptcy Court to retain SOLIC's services in this Case.

Specifically, the terms and conditions of our engagement and the services that it is anticipated that SOLIC will provide are as follows:

1.  Services.  Pursuant to this Engagement, SOLIC will provide a variety of financial advisory and other services to the Company, at the direction of its Disinterested Directors, in connection with "Conflict Matters" as defined in and pursuant to the authority delegated to the Disinterested Directors pursuant to resolutions of the Company's Board of Directors attached hereto as <u>Exhibit A</u> (the "<u>Resolutions</u>"), including the determination by the Company's Disinterested Directors regarding whether any matter constitutes a Conflict Matter.  Such services will include:

    (a)  Reviewing bid procedures and progress in developing a plan of reorganization;
    (b)  reviewing inter-company claims between the Company and other affiliates;
    (c)  reviewing financial elements pertaining to key tax issues;
    (d)  reviewing financing proposals received to date and future financing needs of the Company; and
    (e)  such other matters as may be agreed upon which are consistent with SOLIC's experience.

    It is the parties' desire that SOLIC rely on the work of the Company's legal and other financial advisors to provide the basis of any reviews and analysis provided hereunder unless *de novo* analysis is required and approved by the Disinterested Directors.  For purposes hereof, "*de novo* analysis" shall mean any analysis where SOLIC is required to undertake independent review of source documentation or data (i.e., documents or data other than actual reports and analyses prepared by the Company's other advisors) or the development of new independent analyses as directed by the Disinterested Directors.  For the sake of clarification, any reviews performed by SOLIC on existing work product produced by the Company's legal and other financial advisors will not constitute *de novo* analysis.

2.  Information. In connection with SOLIC's activities hereunder, the Company agrees to cooperate with SOLIC and will use its good faith efforts to furnish to, or cause to be furnished to, SOLIC all information and data concerning the Company (the "Information") which SOLIC reasonably deems appropriate and will use its good faith efforts to assist SOLIC in obtaining access to the Company's officers, directors, employees and advisors, as necessary

    The Company acknowledges and agrees that the Company's management is responsible for supplying materially complete and accurate Information, representations, and books and records upon which we must rely in providing our services to the Company.  The Company agrees to promptly notify SOLIC if the Company believes that any Information which was previously provided to SOLIC has become materially misleading.  The Company acknowledges and agrees that, in rendering its services hereunder, SOLIC will be using and relying on Information (and information available from public sources and other sources deemed reliable by SOLIC) without independent verification thereof or independent appraisal or evaluation of the Company, or any other party.  SOLIC does not assume responsibility for the accuracy or completeness of Information or any other information regarding the Company.  SOLIC will have no obligation to update any report(s) that it may produce or to revise the information contained therein because

2

47349969v2

Energy Future Holdings Corp.
December 18, 2014

of events and transactions occurring subsequent thereto. It is further understood that any advice rendered by SOLIC pursuant to its Engagement hereunder, including any advice rendered during the course of participating in negotiations and meetings with the Company and its representatives, as well as any written materials provided by SOLIC, are intended solely for the benefit and use of the Company, its Disinterested Directors and professionals, and may not be relied upon by any other person or entity without SOLIC's prior written consent.

3.   Compensation.  In consideration of SOLIC's efforts, SOLIC shall be compensated as follows by the Company and/or from the Company's estate (subject to allowance and approval by the Bankruptcy Court):

SOLIC will be paid a monthly fixed fee payment of $200,000 (the "Monthly Fee"), via wire transfer per the wire instructions set forth on Exhibit B attached hereto, with the first payment (including the pro-rated Monthly Fee for the period December 18 through December 31, 2014 and any other accrued but unpaid Monthly Fees for periods thereafter) to be made upon the Court's approval of SOLIC's retention and, thereafter, in advance on the first day of each month during the term of our Engagement hereunder.  The parties hereto hereby agree that the Monthly Fee may be reviewed and potentially adjusted prospectively, if appropriate, based upon mutual agreement, taking into account, among other things, the contribution of SOLIC's professionals to the Case, the aggregate work performed over the course of the Engagement, and such other factors as may be mutually agreed upon, and as approved by the Bankruptcy Court, if necessary.

In addition to the Monthly Fees, if SOLIC is requested by the Company and the Disinterested Directors, to perform any "de novo analysis" or to provide litigation support or testimony (or support thereof) in support of any litigation matters, such services will be provided at SOLIC's standard billing rates as set forth on Exhibit C pursuant to a budget agreed upon by SOLIC and the Disinterested Directors on behalf of the Company and any such related fees and expenses will be subject to Bankruptcy Court approval and be paid in accordance with the following paragraph.

SOLIC will be reimbursed monthly for all of its reasonable and documented expenses and hourly fees, if any, related to this Engagement, including travel, document production, reasonable fees and expenses of our legal counsel (other than the cost of internal legal counsel), including amounts attributable to our obligation to respond to discovery requests, participate in depositions or appear in court in connection with services under this Engagement Letter, and other costs incurred in providing the services hereunder.

SOLIC understands that the Company will seek authorization of the Bankruptcy Court for it to fulfill its obligations under this Engagement Letter.

The Company has been informed that SOLIC intends to apply for compensation for professional services to be rendered in connection with this Case and for reimbursement of expenses incurred, in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware and any applicable order of the Bankruptcy Court (the "Payment Rules").  Payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court.  SOLIC will maintain internal time records for all work performed for the Company.  The request for Bankruptcy Court approval of our retention, and the proposed order to be submitted

3

Energy Future Holdings Corp.
December 18, 2014

in connection therewith, shall be provided to SOLIC prior to submission and must be acceptable to SOLIC in its sole discretion.

To the extent that, at any time during this Case, the Bankruptcy Court reviews any of the terms of this Engagement Letter, such review shall be subject to the standard of review of Section 328(a) of the Bankruptcy Code and the Payment Rules, and not subject to any other standard of review under Section 330 of the Bankruptcy Code. SOLIC will submit reasonably detailed invoices and statements of expenses to the Company in accordance with that certain *Order Establishing Professional Interim Compensation Procedures* entered in the Case. Because SOLIC does not ordinarily maintain contemporaneous time records in one-tenth hour (0.1) increments, the Company agrees to request that SOLIC be excused from compliance with such requirements and should be required only to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a description of services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Company.

In agreeing to these provisions, the Company acknowledges that it believes that our general restructuring experience and expertise will inure to the benefit of the Company and that the value to the Company and/or its constituents derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of fees above are reasonable, regardless of the number of hours to be expended by our professionals in the performance of the services to be provided hereunder.

4.  Termination. SOLIC's engagement hereunder may be terminated by either the Company or SOLIC at any time, with or without cause, upon 30 days' written notice to the other party; provided, however, that no such termination will affect SOLIC's right to expense reimbursement or the payment of any accrued and unpaid fees pursuant to Section 3 hereof or the Indemnity Agreement (as defined below), and the provisions related thereto contained in this Engagement Letter will survive the expiration or termination of this engagement. Furthermore, if the Order is not obtained, or is later reversed or set aside for any reason, SOLIC may terminate this Engagement Letter and SOLIC shall be reimbursed for all fees and expenses reasonably incurred prior to the date of expiration or termination.

5.  Collection. In the event SOLIC prevails in any action to enforce collection of amounts due or other rights under this Engagement Letter, SOLIC's reasonable legal fees and other collection costs incurred by SOLIC, plus interest on amounts otherwise due but unpaid at the prime rate (Bank of America prime) plus 2 percent until paid, shall be paid by the Company and/or the Company's estate.

6.  Governing Law. This Engagement Letter will be deemed made in New York and will be governed by the laws of the State of New York. The Company and SOLIC irrevocably submit to the jurisdiction of the Bankruptcy Court as long as the Case is open, and once the Case is closed, to any court of the State of New York or the United States District Court for the Southern District of New York (Manhattan Division), for the purpose of any suit, action or other proceeding arising out of this Engagement Letter, or any of the agreements or transactions contemplated hereby, which is brought by or against the Company and SOLIC hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with, this Engagement Letter and the transactions contemplated hereby). SOLIC will act under this Engagement Letter as an

4

Energy Future Holdings Corp.
December 18, 2014

independent contractor with duties solely to the Company. Because we will be acting on the Company's behalf in this capacity, it is our practice to receive indemnification. A copy of our standard indemnity form is attached hereto as Exhibit D ("Indemnity Agreement"). The terms of the Indemnity Agreement are incorporated by reference into this Engagement Letter. In no event will SOLIC's liability in connection with this Engagement Letter exceed the total fees paid to SOLIC hereunder. In no event shall SOLIC, the Company or their respective personnel be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage or expense relating to this Engagement.

7. **Successors and Assigns.** This Engagement Letter shall be binding upon and inure to the benefit of the parties hereto, their respective successors and assigns. Neither party may delegate or assign its rights or obligations under this Engagement Letter without the written consent of the other party.

8. **Review.** The services to be provided by SOLIC hereunder will not constitute (a) a fairness or solvency opinion or (b) a compilation, examination, review or audit of any entity's information, financial or otherwise, historical or prospective, as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants. In addition, SOLIC does not make any predictions or provide any opinions or other assurances concerning the outcome of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt. SOLIC reserves the right to issue a tombstone announcement with respect to SOLIC's involvement in connection with the Engagement consistent with the Order.

9. **Limitations.** This Engagement Letter does not create, and will not be construed as creating, rights enforceable by any person or entity not a party hereto, except those entitled thereto by virtue of the Indemnity Agreement. The Company acknowledges and agrees that (a) SOLIC will act as an independent contractor and is being retained solely to assist the Company and the Disinterested Directors and, unless separately requested by the Company, that SOLIC is not being retained to provide a formal opinion as to any possible restructuring or outcome, (b) nothing in this Engagement Letter or in the nature of services in connection with the Engagement or otherwise shall be deemed to create a fiduciary duty or fiduciary or agency relationship between SOLIC and the Company, or any other party, (c) SOLIC is a professional advisor to the Company and is not and will have no duties or liabilities to the equityholders or creditors of the Company, any affiliate of the Company or any other person by virtue of this Engagement Letter and the retention of SOLIC hereunder (other than as set forth herein), all of which duties and liabilities are hereby expressly waived, and (d) any advice rendered by SOLIC does not constitute a recommendation to any creditor or stakeholder that such creditor or stakeholder might or should take in connection with a possible restructuring; provided, however, this clause (d) shall not apply to the advice rendered by SOLIC to the Disinterested Directors as part of the services provided under the terms of this Engagement Letter. Neither equityholders nor creditors of the Company are intended beneficiaries hereunder. The Company recognizes and acknowledges that by performing the services set forth in this Engagement Letter, SOLIC is not acting in any management capacity and that Company has not requested SOLIC to make, nor has SOLIC agreed to make, any business decisions on behalf of the Company. All decisions about the business of the Company remain the sole responsibility of the Company (and to the extent applicable, the Disinterested Directors). The Company and each Disinterested Director hereby

5

Energy Future Holdings Corp.
December 18, 2014

expressly acknowledges that SOLIC does not guarantee, warrant, or otherwise provide any assurances that the Company will restructure successfully. SOLIC is not a law, accounting, tax, or actuarial firm and will not be providing any legal, accounting, tax advice, or actuarial services hereunder. In addition, the Company confirms that it will rely on its own counsel for legal advice. SOLIC's services are not designed, nor should they be relied upon, to disclose internal weaknesses in internal controls, financial statement errors, irregularities, illegal acts or disclosure deficiencies.

10.    Counterparts. This Engagement Letter, and any modification or amendment thereto, may be executed in counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument.

11.    Notices. All correspondence and notices shall be sent to the parties as listed hereafter or to such other persons or addresses as may be given by one party to the other, and will be deemed effective the earlier of actual delivery or three days after mailing.

<u>Personal and Confidential</u>

The Honorable Donald L. Evans
Executive Chairman
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201

with a copy to:

General Counsel
Energy Future Holdings Corp.
1601 Bryan St., 41st Floor
Dallas, Texas 75201

Neil F. Luria
Senior Managing Director
SOLIC Capital Advisors, LLC
1603 Orrington Avenue
Suite 1600
Evanston, IL  60201

13. Entire Agreement. This Engagement Letter is the entire agreement between the parties pertaining to its or their subject matter and supersedes all prior agreements, representations and understandings of the parties. No modification of this Engagement Letter shall be binding unless agreed to in writing by the parties.

14. Retention Application. The Company agrees to file the necessary retention applications in the Bankruptcy Court in order to properly retain SOLIC in accordance with the terms set forth in this letter.

47349969v2

Energy Future Holdings Corp.
December 18, 2014

If this Engagement Letter meets with your approval, please indicate your consent and agreement to be bound by the terms of this Engagement Letter by executing the attached copy and forwarding it to me.

Very truly yours,

SOLIC CAPITAL ADVISORS, LLC

By: _/s/ Neil F. Luria_____
        Neil F. Luria
        Senior Managing Director

ACKNOWLEDGED AND AGREED:

ENERGY FUTURE HOLDINGS CORP.

By: _/s/ Donald L. Evans_____
        Donald L. Evans
        Executive Chairman
        Board of Directors
        Energy Future Holdings Corp.

Date: December 18, 2014

47349969v2

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "A"** (to Engagement Letter)

Energy Future Holdings Corp.
December 18, 2014

**ENERGY FUTURE HOLDINGS CORP. ("EFH")**
**BOARD OF DIRECTORS RESOLUTIONS**
**DECEMBER 9, 2014**

The following recitals and resolutions supplement the Board of Directors Resolutions dated as of November 7, 2014 ("November 7th Resolutions") and, in the event of any inconsistency, these resolutions shall supersede and control.

WHEREAS, EFH and certain of its direct and indirect subsidiaries (excluding Oncor Electric Delivery Holdings Company LLC and its subsidiaries), including TCEH (the "Debtors") on April 29, 2014, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Chapter 11 Case") in the Bankruptcy Court for the District of Delaware ("Bankruptcy Court");

WHEREAS, the members of the Board of Directors of EFH ("Board") having relationships or interests with other affiliated or related companies and their direct or indirect equity holders and other material relationships have disclosed certain facts that they believe to be material to the Board;

WHEREAS, as described in the material presented and reviewed by the Board and based on a review of the known facts and circumstances, the Board has determined and confirmed by the November 7th Resolutions that Donald L. Evans and Billie I. Williamson are the only current members of the Board that are disinterested with respect to any matter pertaining to the Chapter 11 Case on which an actual conflict exists between EFH, on the one hand, and any other Debtor, on the other hand ("Conflict Matters"), and were designated the Disinterested Directors ("Disinterested Directors") as set forth in *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters*, approved by the Bankruptcy Court on September 16, 2014 ("Stipulation");

WHEREAS, the members of the Board considered the Stipulation related to, among other things, the authority of the Disinterested Directors to retain independent legal counsel and other advisors under certain circumstances;

WHEREAS, the Board resolved by the November 7th Resolutions to delegate the authority to the Disinterested Directors to seek and retain, at EFH's sole expense, independent legal counsel and such other advisors ("Independent Advisors") as the Disinterested Directors deem necessary to represent and advise EFH, reporting to the Disinterested Directors, on the Conflict Matters;

WHEREAS, the Disinterested Directors interviewed and engaged certain Independent Advisors effective as of November 19, 2014 to represent and advise EFH, and reporting solely to the Disinterested Directors, as set forth herein; and

WHEREAS, pursuant to the Stipulation and Section 21.416 of the Texas Business Organizations Code, the members of the Board desire to delegate to the Disinterested Directors certain rights, authority, and powers in connection with Conflict Matters, among other matters set forth herein;

NOW, THEREFORE, BE IT,

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to review and act upon (as set forth herein) any Conflict Matters; and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to investigate and determine whether any matter constitutes a Conflict Matter, in the exercise of their business judgment and with the advice of the Independent Advisors, and any such determination shall be binding on EFH and EFH's subsidiaries (other than

47349969v2

Energy Future Holdings Corp.
December 18, 2014

Energy Future Intermediate Holding Company LLC and its direct and indirect subsidiaries and Energy Future Competitive Holdings Company LLC and its direct and indirect subsidiaries (the "Excluded Subsidiaries")); and further

RESOLVED that, to the fullest extent permitted by applicable law, the Board hereby delegates to the Disinterested Directors the authority to make all decisions, and to implement or direct the implementation of all such decisions, in each case on EFH's behalf, with respect to Conflict Matters as the Disinterested Directors deem appropriate, in the exercise of their business judgment and with the advice of the Independent Advisors or others with whom the Disinterested Directors determine it is appropriate or necessary to consult, and to act on behalf of and bind EFH in connection therewith, including taking action on EFH's behalf, as the direct and indirect holder of 100% of the equity interests in its subsidiaries, causing such subsidiaries (other than the Excluded Subsidiaries) to abide by and implement the decisions and actions of the Disinterested Directors with respect to Conflict Matters and the Disinterested Directors' determination of whether a matter constitutes a Conflict Matter; and further

RESOLVED that the Disinterested Directors will update the Board at board meetings on the status of their (i) review of and decisions on whether any matter constitutes a Conflict Matter, and (ii) review of and decisions on Conflict Matters, in each case in the manner that the Disinterested Directors determine is appropriate and necessary to fulfill their duties and obligations as the Disinterested Directors, taking into account the confidentiality or privilege of the Disinterested Directors' work and the advice of the Independent Advisors; and further

RESOLVED that EFH shall, as the direct and indirect holder of 100% of the equity interests in its subsidiaries, direct and cause each of such subsidiaries (other than the Excluded Subsidiaries) to abide by and comply with these resolutions; and further

RESOLVED that the officers, employees, advisors and agents of EFH (collectively, the "Authorized Persons"), acting alone or with one or more other Authorized Persons, be, and hereby are, directed to furnish to the Disinterested Directors and the Independent Advisors all information as the Disinterested Directors or the Independent Advisors may request, in a manner that shall not effect a waiver of any applicable privilege, and to cooperate with the Disinterested Directors and the Independent Advisors in all respects; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and hereby are, authorized, empowered and directed to implement any decision made by the Disinterested Directors in respect of a Conflict Matter on behalf of EFH as directed by the Disinterested Directors; provided that the Disinterested Directors retain the right to implement any such decision on behalf of EFH and its subsidiaries (other than the Excluded Subsidiaries) themselves or through the Independent Advisors; and further

RESOLVED that any Authorized Person, acting alone or with one or more other Authorized Persons be, and they hereby are, authorized, empowered and directed to take any and all action that they deem necessary or proper to assist the Disinterested Directors in carrying out the foregoing, in each case as requested by and under the direction of the Disinterested Directors; and further

RESOLVED that the Disinterested Directors shall control any attorney-client, work product, or other privilege belonging to EFH in connection with the Independent Advisors or their work or privileged communications on the Conflict Matters and on whether any matter constitutes a Conflict Matter; and further

RESOLVED that each member of the Board has agreed and hereby agrees that he or she shall not have access to, and shall not seek access to, and hereby directs that each Authorized Person shall not have access to and shall not seek access to, the work or privileged material of the Independent

2

Energy Future Holdings Corp.
December 18, 2014

Advisors on the Conflict Matters or on whether any matter constitutes a Conflict Matter, except as permitted by the Disinterested Directors; and further

RESOLVED that the Disinterested Directors be, and hereby are, authorized to take all such further action, at EFH's expense, as the Disinterested Directors shall deem necessary, proper or advisable consistent with these resolutions or in order to carry out fully the intent and purposes of these resolutions; and further

RESOLVED that all actions previously done or approved, or caused to be done or approved, by the Disinterested Directors or the Authorized Persons, including the retention of Independent Advisors, in each case only to the extent consistent with these resolutions, or to otherwise carry out the intent of these resolutions, be and hereby are approved, adopted, confirmed and ratified in all respects.

3

47349969v2

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "B"** (to Engagement Letter)

Wiring Instructions

Please direct wire to:

| | |
|---|---|
| Account Name: | SOLIC Capital Advisors, LLC |
| Account Number: | 3800869411 |
| Bank: | Northern Trust Bank |
| Address: | 50 S. LaSalle, Chicago, IL 60675 |
| ABA#: | 071000152 |
| SWIFT: | CNORUS44 |
| | |
| Beneficiary Name: | SOLIC Capital Advisors, LLC |

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "C"** (to Engagement Letter)

Standard Hourly Rates

| | |
|---|---|
| Senior Managing Directors | $750-895/hr |
| Managing Directors | $695-825/hr |
| Directors | $550-695/hr |
| Associate Directors | $450-550/hr |
| Managing Consultants | $350-450/hr |
| Consultants/Associates | $245-350/hr |
| Paraprofessionals | $95-125/hr |

Energy Future Holdings Corp.
December 18, 2014

**Exhibit "D"** (to Engagement Letter)

December 18, 2014

SOLIC Capital Advisors, LLC
1603 Orrington Avenue
Suite 1600
Evanston, IL 60201

Ladies and Gentlemen:

This agreement will confirm that Energy Future Holdings Corp. (the "Company"), has engaged SOLIC Capital Advisors, LLC ("SOLIC") to advise and assist it in connection with the matters referred to in our engagement letter, dated of even date herewith (the "Engagement Letter"). Capitalized terms used herein without definition shall have the meanings ascribed to them in the Engagement Letter. In connection with the terms of the Engagement Letter (the "Engagement"), the Company agrees to indemnify and hold harmless SOLIC and its affiliates and their respective members, officers, directors, employees and agents and each other person, if any, controlling SOLIC or any of its affiliates and their respective successors, assigns, independent contractors, agents, heirs and personal representatives (each referred to herein as a " SOLIC Indemnified Person") to the fullest extent permitted by law from and against any losses, claims, damages, obligations, penalties, judgments, awards, costs, disbursements or liabilities, including amounts paid in settlement (collectively, "Losses"), based upon, related to, arising out of or in connection the Engagement and will reimburse each SOLIC Indemnified Person for all expenses (including fees and expenses of counsel) ("Expenses") as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation, or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any SOLIC Indemnified Person is a party. Notwithstanding the foregoing, (i) in no event shall the Company be responsible for any Losses or Expenses that arise out of or in connection with the Engagement to the extent such Losses or Expenses are finally judicially determined to have resulted from the willful misconduct, bad faith or gross negligence of SOLIC or any other SOLIC Indemnified Person and (ii) if any SOLIC Indemnified Person to whom such Expenses have been advanced shall be determined pursuant to clause (i) to not be eligible for reimbursement of such Expenses, such SOLIC Indemnified Person shall promptly repay such expenses to the Company. If any litigation, investigation or proceeding is commenced as to which SOLIC proposes to demand indemnification, SOLIC will notify the Company with reasonable promptness; provided, however, that any failure by SOLIC to notify the Company will relieve the Company from their obligations hereunder only to the extent the Company have been materially prejudiced by such failure or delay.

The Company will, if requested by any SOLIC Indemnified Party, assume the defense of any proceeding in respect of which indemnity may be sought hereunder, including the employment of counsel reasonably satisfactory to SOLIC and the payment of the fees and expenses of such counsel, in which event, except as provided below, the Company shall not be liable for the fees and expenses of any other counsel retained by any SOLIC Indemnified Party in connection with such proceeding. In any such proceeding the defense of which the Company shall have so assumed, any SOLIC Indemnified Party shall have the right to participate in such Proceeding and to retain its own counsel, but the fees and expenses of such counsel shall be at the expense of such SOLIC Indemnified Party unless (i) the Company and such

Energy Future Holdings Corp.
December 18, 2014

SOLIC Indemnified Party shall have mutually agreed in writing to the retention of such counsel or (ii) the named parties to any such proceeding (including any impleaded parties) include such SOLIC Indemnified Party and representation of the Company and such SOLIC Indemnified Party by the same counsel would, in the opinion of counsel to such SOLIC Indemnified Party, be inappropriate due to actual or potential conflicts of interests between the Company and such SOLIC Indemnified Party, including situations in which there are one or more legal defenses available to the SOLIC Indemnified Party that are different from or additional to those available to the Company. The Company shall not be liable for any settlement of any proceeding effected without its written consent, such consent not to be unreasonably withheld, but if settled with such consent or if there is a final judgment against an SOLIC Indemnified Party, the Company agrees to indemnify the SOLIC Indemnified Party from and against any Loss by reason of such settlement or judgment.

If, for any reason, the foregoing indemnification is unavailable to any of the SOLIC Indemnified Parties or is insufficient to hold them harmless in respect of any Losses or Expenses, then the Company will contribute to the amount paid or payable by any of the SOLIC Indemnified Parties as a result of such Losses and Expenses in such proportion as is appropriate to reflect the relative benefits (or anticipated benefits) to the Company and the Disinterested Directors on the one hand and the SOLIC Indemnified Parties on the other hand, but also the relative fault of the Company and the Disinterested Directors, and their shareholders, members, agents and advisers (other than SOLIC) on the one hand and the SOLIC Indemnified Parties on the other hand, as well as any other relevant equitable considerations. The relative benefits received (or anticipated to be received) by the Company and the Disinterested Directors on the one hand and by the SOLIC Indemnified Parties on the other hand will be deemed to be in the same proportion as such benefit bears to the total fees paid to SOLIC pursuant to the Engagement Letter. The relative fault of any party or other person will be determined by reference to such party's or person's knowledge, access to information and opportunity to prevent or correct any misstatement, omission, misconduct or breach of duty. In no event will the amount required to be contributed by the SOLIC Indemnified Parties hereunder exceed the total amount of fees paid to SOLIC pursuant to the Engagement Letter. You and we agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above.

The reimbursement, indemnity and contribution obligations of the Company hereunder will (i) be in addition to any liability which the Company may otherwise have, (ii) survive the completion or termination of SOLIC's engagement under the Engagement Letter and (iii) shall be binding upon any successors and assigns of the Company.

The Company agree that without the prior written consent of SOLIC, the Company will not consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claims, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not any SOLIC Indemnified Person is a party thereto) unless (i) such settlement, compromise, consent or termination includes an unconditional release of each SOLIC Indemnified Person from all claims and liabilities arising out of such action, claim, suit or proceeding and (ii) there is no statement in connection therewith as to an admission of fault, culpability or failure to act by or on behalf of any SOLIC Indemnified Party.

The provisions of this agreement shall apply to the Engagement and any modification thereof and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement will be deemed made in New York. The validity and interpretation of this agreement will be governed by, and construed and enforced in accordance with, the laws of the State of New York applicable to agreements made and to be fully performed therein (excluding the conflicts of laws rules).

47349969v2                                          2

Energy Future Holdings Corp.
December 18, 2014

So long as the Case (as that term is defined in the Engagement Letter) is open, the Company and SOLIC irrevocably submit to the jurisdiction of the Bankruptcy Court with respect to any suit, action or proceeding arising out of the Engagement. However, once the Case is closed, the Company irrevocably submit to the jurisdiction of any court of the State of New York or the United States District Court of the Southern District of the State of New York (Manhattan Division) for the purpose of any suit, action or other proceeding arising out of this agreement which is brought by or against the Company. Each of the Company and SOLIC hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with this agreement.

Very truly yours,

ENERGY FUTURE HOLDINGS CORP.

By: /s/ Donald L. Evans
    Name:  Donald L. Evans
    Title:    Executive Chairman
           Board of Directors
           Energy Future Holdings Corp.

Date:  December 18, 2014

Accepted and agreed to:

SOLIC CAPITAL ADVISORS, LLC

By: /s/ Neil F. Luria
    Neil F. Luria
    Senior Managing Director

Date:  December 18, 2014

**Exhibit C**

[Supplemental Declaration Authorizing the Retention of SOLIC Capital Advisors]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**SUPPLEMENTAL DECLARATION OF NEIL F. LURIA IN SUPPORT OF DEBTOR ENERGY FUTURE HOLDINGS CORP.'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF SOLIC CAPITAL ADVISORS, LLC AS FINANCIAL ADVISOR FOR DEBTOR AND DEBTOR IN POSSESSION ENERGY FUTURE HOLDINGS CORP. EFFECTIVE *NUNC PRO TUNC* TO DECEMBER 18, 2014**

I, Neil F. Luria, being duly sworn, state the following under penalty of perjury:

1.      I am a Senior Managing Director and President of SOLIC Capital Advisors, LLC ("SOLIC"), which maintains a central office at 1603 Orrington Avenue, Suite 1600 Evanston, Illinois 60201.

2.      I submit this supplemental declaration in further support of *Debtor Energy Future Holdings Corp.'s Application for Entry of an Order Authorizing the Retention and Employment of SOLIC Capital Advisors, LLC as Financial Advisor for Debtor and Debtor in Possession Energy Future Holdings Corp. Effective* Nunc Pro Tunc *to December 18, 2014* [D.I. 3324] (the "Application").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

**Background**

3.      On January 16, 2015, debtor Energy Future Holdings Corp. ("EFH Corp.") filed

the Application. In support of the Application, EFH Corp. filed, as Exhibit C to the Application,

the *Declaration of Neil F. Luria in Support of Debtor Energy Future Holdings Corp.'s*

*Application for Entry of an Order Authorizing the Retention and Employment of SOLIC Capital*

*Advisors, LLC as Financial Advisor for Debtor and Debtor in Possession Energy Future*

*Holdings Corp. Effective* Nunc Pro Tunc *to December 18, 2014* [D.I. 3324, Exhibit C].

**Supplemental Disclosure**

4.      The engagement letter (the "Engagement Letter") attached as Exhibit 1 to the

*Order Authorizing the Retention and Employment of SOLIC Capital Advisors, LLC as Financial*

*Advisor for Debtor and Debtor in Possession Energy Future Holdings Corp. Effective* Nunc Pro

Tunc *to December 18, 2014* [D.I. 3467] provided that SOLIC would be paid a monthly fixed fee

(the "Monthly Fee"), which "may be reviewed and potentially adjusted prospectively, if

appropriate, based upon mutual agreement, taking into account, among other things, the

contribution of SOLIC's professionals to the Case, the aggregate work performed over the course

of the Engagement, and such other factors as may be mutually agreed upon." Engagement Letter

§ 3.

5.      In light of the circumstances of EFH Corp.'s chapter 11 case and the desire to

limit costs going forward, Donald L. Evans and Billie I. Williamson, EFH Corp.'s disinterested

directors, on behalf of EFH Corp., and SOLIC have agreed to modify the Engagement Letter,

effective June 1, 2017, to provide that, in lieu of the Monthly Fee, SOLIC will be compensated

on an hourly basis, subject to the Court's approval and in compliance with applicable provisions

of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other

87838823v2

applicable procedures and orders of the Court, including the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] and any case-specific fee protocols approved by the Court pursuant to the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896]. All other provisions of the Engagement Letter remain unmodified and in full force and effect.

      6.     SOLIC's current hourly rates for matters related to this chapter 11 case range as follows:

| | |
|---|---|
| Senior Managing Directors | $750-950 |
| Managing Directors | $695-825 |
| Directors | $550-695 |
| Associate Directors | $450-550 |
| Managing Consultants | $350-450 |
| Consultants/Associates | $245-350 |
| Paraprofessionals | $95-125 |

      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: May 25, 2017             */s/ Neil F. Luria*
_____

                      Name:   Neil F. Luria
                      Title:    Senior Managing Director and
                                 President, SOLIC Capital Advisors, LLC

## **Exhibit D**

[Detailed Description of Services Provided]

# Energy Future Holdings Corp - January 2018

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| 1/2/2018 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 3.70 | $ 2,571.50 |
| | | Attention to review of financial analysis as has been directed by counsel pertaining to elements insofar as they relates to Conflicts Matters; review of prior notes and discussions on same. | | |
| 1/5/2018 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.70 | $ 1,181.50 |
| | | Attention to follow-up review on prior analyses. | | |
| 1/7/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 4.70 | $ 3,266.50 |
| | | Attention to review of various filings and motions as per update on docket including: Reservation of Rights "Final" Reservation of Rights of UMB Bank, N.A. to Confirmation of the First Amended Joint Plan of Reorganization (docket #12393), Response - Statement and Response of the EFH/EFIH Official Committee to Motion to Appoint a Representative of the Majority Creditors to the Fee Committee (docket #12415), Objection (Debtors Objection to Elliotts Motion to Appoint a Representative of the Majority Creditors to the Fee Committee (docket #12416), Reply in Support of Motion to Appoint a Representative of the Majority Creditors to the Fee Committee (#12423), Declaration in Support of Reply in Support of Motion to Appoint Majority Creditors Representative to the Fee Committee (#12424) | | |
| 1/8/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.30 | $ 903.50 |
| | | Attention to review of fee committee communications and status and related as advocated by Elliott | | |
| 1/9/2018 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 3.30 | $ 2,293.50 |
| | | Attention to review of SOLIC updated material, correspondence and team discussions pertaining to updated information required by counsel pertaining to elements insofar as they relates to Conflict Matters. | | |
| 1/9/2018 | Cumbee, Matthew | 749 - Financial Analysis Related to Potential | 1.50 | $ 787.50 |
| | | Attention to update of EFH creditor recovery analyses based on latest cash projections and deal terms | | |
| 1/10/2018 | Nowitz, Raoul | 795 - Fee Applications/Retention | 1.50 | $ 1,042.50 |
| | | Attention to addressing prior hours and required budgeted hours. | | |
| 1/11/2018 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 3.10 | $ 2,154.50 |
| | | Attention to review of cash projection, comparison to prior versions, discussion with counsel on same; identification of items revised. | | |
| 1/12/2018 | Luria, Neil | 795 - Fee Applications/Retention | 0.20 | $ 165.00 |
| | | Reviewing response to fee application committee regarding expected work through confirmation. | | |
| 1/12/2018 | Nowitz, Raoul | 795 - Fee Applications/Retention | 4.10 | $ 2,849.50 |
| | | Attention to drafting of response to Fee Committee request deadline 01.12.2018 in connection with updated work plan, narratives of go-forward work through to Confirmation, and involvement in Confirmation hearings; review and discussion with team and additional updating. | | |
| 1/18/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.80 | $ 1,946.00 |
| | | Attention to review of docket, review of relevant filings, and tracking of certain elements of cash spend. | | |
| 1/25/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 3.90 | $ 2,710.50 |

# Energy Future Holdings Corp - January 2018

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| | | Attention to review of docket including, but not limited to, notice of confirmation hearing (docket #12512), fee committee appointment and related   (#12506), filing of unsealed objection re asbestos claims to confirmation and the plan (docket #12500), SOLIC Certificate of No Objection (##12488), | | |
| 1/25/2018 | Nowitz, Raoul | 795 - Fee Applications/Retention | 1.80 | $ 1,251.00 |
| | | Attention to preparation of the Oct 2017 fee statement; communications with team on same | | |
| 1/26/2018 | Nowitz, Raoul | 795 - Fee Applications/Retention | 1.90 | $ 1,320.50 |
| | | Attention to requested edits to the Oct 2017 monthly fee statement; discussions with team on same; updates delivered for team and subsequent review. | | |
| 1/29/2018 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 1.50 | $ 1,042.50 |
| | | Attention to review of Oct 2017 MOR, drafting of review update to counsel; comparison to recent pre-emergence cash projections; follow-up on same. | | |
| 1/29/2018 | Nowitz, Raoul | 725 - Dataroom and Diligence Materials | 1.60 | $ 1,112.00 |
| | | Attention to review of Nov 2017 MOR, drafting of review update to counsel; comparison to recent pre-emergence cash projections; follow-up on same. | | |
| 1/31/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.30 | $ 208.50 |
| | | Review of docket #12547 - review of asbestos-related stipulation and order. | | |
| 1/31/2018 | Nowitz, Raoul | 795 - Fee Applications/Retention | 1.70 | $ 1,181.50 |
| | | Attention to review of Nov 2017 time entries, updating of elements of monthly submission as required by SOLIC accounting, updating of Exhibit B narrative, a reporting of same. | | |
| | | | | **$ 27,988.00** |

# Energy Future Holdings Corp - February 2018

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| 2/2/2018 | Nowitz, Raoul | 795 - Fee Applications/Retention | 0.90 | $ 625.50 |
| | | Attention to updating of fee projection roll forward as requested by the Fee Committee; follow-up on same with team. | | |
| 2/2/2018 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 2.60 | $ 1,807.00 |
| | | Attention to review of Board materials with a focus on items insofar as they relate to Conflict Matters pertaining to EFH; communication with counsel on same; follow-up. | | |
| 2/3/2018 | Luria, Neil | 749 - Financial Analysis Related to Potential | 1.30 | $ 1,072.50 |
| | | Review of Proskauer materials regarding Global Allocation Settlement Proposal outlining potential responses for disinterested directors and analyzing potential responses to EFIH non-refundable proposal. | | |
| 2/3/2018 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 3.70 | $ 2,571.50 |
| | | Attention to review of Proskauer reported materials for EFH Disinterest Directors as it relates to Conflict Matters; follow-up on same. | | |
| 2/4/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 3.40 | $ 2,363.00 |
| | | Attention to review of Motion for Entry of Order Approving the Settlement between the Debtors, Sempra (docket #12571) including review of cash impacts; follow-up on same. | | |
| 2/5/2018 | Nowitz, Raoul | 795 - Fee Applications/Retention | 2.10 | $ 1,459.50 |
| | | Attention to preparation and review of deliverable to the Fee Committee in the context of unpaid and projected fees through to closing; discussion with team on same; revisions as required. | | |
| 2/5/2018 | Nowitz, Raoul | 749 - Financial Analysis Related to Potential | 1.20 | $ 834.00 |
| | | Attention to further review of materials pertaining to inter-debtor settlement with EFIH as prepared by Proskauer; correspondence with Proskauer on same. | | |
| 2/9/2018 | Nowitz, Raoul | 795 - Fee Applications/Retention | 1.80 | $ 1,251.00 |
| | | Attention to review of 12609 pertaining to upcoming hearings on fees; discussions with team on same; correspondence with Proskauer on same | | |
| 2/12/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 3.10 | $ 2,154.50 |
| | | Attention to review of latest docket for relevant filings and Conflict Matters materials | | |
| 2/15/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.20 | $ 834.00 |
| | | Attention to review of the order between the Debtors and Sempra on tax settlements (Docket #12631) and related motions | | |
| 2/16/2018 | Nowitz, Raoul | 795 - Fee Applications/Retention | 2.20 | $ 1,529.00 |
| | | Attention to review of query from the Fee Examiner pertaining to the Oct and Nov 2017 SOLIC fee statements; review of issues and review of the subject fee statements; discussions and correspondence with team and Proskauer on same. | | |
| 2/19/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.10 | $ 764.50 |
| | | Attention to court correspondence on status of termination fee and related allocation matters; correspondence with working team | | |
| 2/19/2018 | Nowitz, Raoul | 795 - Fee Applications/Retention | 2.40 | $ 1,668.00 |
| | | Attention to further review and updating of the Dec 2017 monthly fee statement, and the March 2018 fee budget; correspondence with team on same including confirmation of projected amounts. | | |
| 2/20/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.30 | $ 1,598.50 |

# Energy Future Holdings Corp - February 2018

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| | | Attention to review of various dockets pertaining to confirmation insofar as they relate to Conflicts Matters including dockets #12665, #12667, and #12668; related follow-up on same. | | |
| 2/20/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.80 | $ 1,946.00 |
| | | Attention to review of docket #12666 (Memorandum/Brief (Debtors Memorandum of Law in Support of Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp.) with focus on elements insofar as they relate to Conflicts Matters; follow-up on same. | | |
| 2/20/2018 | Luria, Neil | 705 - Plan Development and Testimony | 0.40 | $ 330.00 |
| | | Teleconference with P. Young of Proskauer and R. Nowitz regarding EFH settlement discussions and next steps. | | |
| 2/22/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.00 | $ 695.00 |
| | | Review of Elliott Declaration for Substantial Contribution; follow-up on same. | | |
| 2/23/2018 | Nowitz, Raoul | 795 - Fee Applications/Retention | 2.10 | $ 1,459.50 |
| | | Attention to review, drafting and updating of amended engagement letter based on directive from Proskauer in response to discussions with the Fee Committee; discussions with team on same. | | |
| 2/24/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.80 | $ 1,946.00 |
| | | Attention to review of docket #12674, Debtors Opposition to NextEra's Motion to Preclude the Testimony of Mr. Michael Kramer; # 12676 - Elliott opposition to NextEra Motion to Preclude the Testimony of Mr. Michael Kramer; follow-up on same. | | |
| 2/24/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.60 | $ 1,112.00 |
| | | Attention to review of Docket #12671 - Application of NextEra Energy for Allowance of Payment of Admin claim; review and follow-up on same. | | |
| 2/26/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 0.90 | $ 625.50 |
| | | Attention to review of updates pertaining to confirmation hearing; follow-up on same. | | |
| 2/27/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 4.80 | $ 3,336.00 |
| | | Attention to review of Confirmation Hearing court transcript as provided by K&E with a focus on elements associated with the NEE break-up fee reserve and related items insofar as they relate to Conflicts Matters. | | |
| 2/28/2018 | Nowitz, Raoul | 795 - Fee Applications/Retention | 0.60 | $ 417.00 |
| | | Attention to review of email correspondence from SOLIC accounting pertaining to outstanding invoice matters; draft of email to Proskauer with related correspondence, draft of email to SOLIC accounting team; follow-up on same | | |
| 2/28/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.20 | $ 1,529.00 |
| | | Attention to review of Docket #12766 pertaining to revised EFH cash, settlement terms, and impact on EFH Corp. cash recoveries insofar as this relates to Conflicts Matters; follow-up with team on same and comparison against prior analyses | | |

**$ 33,928.50**

# Energy Future Holdings Corp - March 2018

| Date | Person | Activity Code | Duration | Fee |
|------|--------|---------------|----------|-----|
| 3/1/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.60 | $ 1,807.00 |
| | | Attention to review of board materials for 03.02.2018 board meeting with focus on elements insofar as they relate to conflicts matters; follow-up on same regarding related information. | | |
| 3/2/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.80 | $ 1,946.00 |
| | | Attention to further review and required follow-up as it relates to elements addressed on 03.05.2018 board materials | | |
| 3/2/2018 | Nowitz, Raoul | 795 - Fee Applications/Retention | 1.40 | $ 973.00 |
| | | Attention to review of latest correspondence from fee committee; correspondence with fee committee; follow-up on same. | | |
| 3/6/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 3.70 | $ 2,571.50 |
| | | Attention to review of docket for various relevant motions and filings insofar as they relate to conflicts matters with follow-up on same, including motion to withdraw cash projections (docket #12768); revised emergence date cash and allocations of cash with related waterfall analysis (#12769), supplemental affidavit pertaining to asbestos claims (docket #12785); and follow-up on same | | |
| 3/8/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 1.90 | $ 1,320.50 |
| | | Attention to review of PUCT Final Order dated 03.08.2018; follow-up on same. | | |
| 3/8/2018 | Nowitz, Raoul | 795 - Fee Applications/Retention | 0.50 | $ 347.50 |
| | | Attention to follow-up with Godfrey Kahn regarding objections on recent SOLIC fees and Engagement Retention matters; follow-up with team on same. | | |
| 3/9/2018 | Nowitz, Raoul | 705 - Plan Development and Testimony | 2.60 | $ 1,807.00 |
| | | Attention to end of engagement matters and files; related housekeeping matters | | |
| | | | | $ 10,772.50 |