**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline: May 9, 2018 at 4:00 p.m.** |

**SUMMARY COVER SHEET TO THE
TWELFTH INTERIM FEE APPLICATION
OF KIRKLAND & ELLIS LLP AND KIRKLAND
& ELLIS INTERNATIONAL LLP, ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION, FOR THE PERIOD
FROM JANUARY 1, 2018 THROUGH AND INCLUDING MARCH 9, 2018**

     In accordance with the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Kirkland & Ellis LLP and Kirkland & Ellis International LLP (together, "Kirkland"), attorneys for the above-captioned debtors and debtors in possession (collectively, the "Debtors"),[2] submit this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the twelfth interim fee application to which this Summary is attached (the "Fee Application")[3] for the period from January 1, 2018 through and including March 9, 2018 (the "Fee Period"). Kirkland submits the Fee Application as an interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Texas Competitive Electric Holdings Company LLC ("TCEH" and, together with its direct parent company, Energy Future Competitive Holdings Company LLC ("EFCH") and certain of TCEH's direct and indirect subsidiaries, the "TCEH Debtors") and certain EFH Debtors (defined in the TCEH Plan as the EFH Shared Services Debtors) emerged from bankruptcy on October 3, 2016 (the "TCEH Effective Date"), and are no longer debtors in possession.

    The EFH/EFIH Debtors (as defined in the EFH/EFIH Plan) emerged from bankruptcy on March 9, 2018 (the "EFH Effective Date"), and are no longer debtors in possession.

[3]    Capitalized terms used, but not otherwise defined, in this Summary shall have the meanings ascribed to such terms in the Fee Application.

Compensation Order") and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order").[4]

| General Information | |
|---|---|
| Name of Applicants: | Kirkland & Ellis LLP and Kirkland & Ellis International LLP |
| Authorized to Provide Services to: | Energy Future Holdings Corp., *et al.* |
| Petition Date: | April 29, 2014 |
| Date of Order Authorizing the Debtors to Retain Kirkland: | September 16, 2014, *nunc pro tunc* to April 29, 2014 [D.I. 2052] |

| Summary of Fees and Expenses Sought in the Fee Application[5] | |
|---|---|
| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | January 1, 2018 through and including March 9, 2018 |
| Voluntary Fee Waiver and Expense Reduction in this Fee Period: [6] | Reduced fees by $83,080.00 and expenses by $5,141.74 |

---

[4]  On or before the deadline for filing requests for payment of Professional Fee Claims, Kirkland will file a final fee application (the "Final Fee Application") covering Fees and Expenses incurred from the Petition Date to the EFH Effective Date, in accordance with the Final Fee Application guidelines communicated to Kirkland by the Fee Committee.

[5]  Of the amount of fees and expenses sought in the Fee Application, as of the date hereof, $688,427.50 represents the amount for which Kirkland has not sought compensation in the monthly fee statements it has filed for the following periods:  January 1, 2018 to January 31, 2018 [D.I. 12792] (the "January Monthly Fee Statement"), and February 1, 2018 to March 9, 2018 [D.I. 12917] (the "February/March Monthly Fee Statement" and, collectively with the January Monthly Fee Statement, the "Monthly Fee Statements").  The total fees and expenses sought in the Fee Application include (a) fees for work performed and expenses incurred for a specific Debtor's estate totaling $41,601.00 (comprised of $41,601.00 in fees and $0.00 in expenses) (the "Direct Benefit Fees") and (b) fees for work performed and expenses incurred for all Debtors' estates totaling $2,598,271.92 (comprised of $2,535,087.00 in fees and $63,194.92 in expenses) (the "Collective Benefit Fees").  Specifically, the Direct Benefit Fees include fees and expenses of (a) $0.00 for the EFH Debtors and (b) $41,601.00 for the EFIH Debtors.  The Collective Benefit Fees include fees and expenses of (a) $253,508.70 for the EFH Debtors and (b) $2,281,578.30 for the EFIH Debtors.

[6]  Kirkland voluntarily reduced its fees and expenses by the amounts described above and consequently does not seek payment of these fees and expenses in this Fee Application.

Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period:    $2,576,688.00

Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period:    $63,195.02

Total Compensation and Expense Reimbursement Requested for the Fee Period:    $2,639,883.02

### Rate Increases Applicable to the Fee Period

Total Amount of Compensation Sought for the Fee Period, Calculated Using Rates as of the Date of Retention:    $1,847,924.77

### Summary of Past Requests for Compensation and Prior Payments[7]

Total Amount of Compensation Previously Requested Pursuant to the Interim Compensation Order to Date:[8]    $178,388,015.50

Total Amount of Expense Reimbursement Previously Requested Pursuant to the Interim Compensation Order to Date:    $11,294,420.37

Total Compensation Approved Pursuant to the Interim Compensation Order to Date:    $166,925,240.20

Total Amount of Expense Reimbursement Approved Pursuant to the Interim Compensation Order to Date:    $10,309,472.82

Total Allowed Compensation Paid to Date:    $166,925,240.20

Total Allowed Expenses Paid to Date:    $10,309,472.82

Compensation Sought in this Fee Application Already Paid Pursuant to the Interim Compensation Order But Not Yet    $10,309,472.82

---

[7]    Kirkland filed the January Monthly Fee Statement on March 6, 2018 [D.I. 12792], and the February/March Monthly Fee Statement on April 5, 2018 [D.I. 12917]. As of the date hereof, Kirkland has not yet received payments relating to compensation and expenses sought in the Monthly Fee Statements.

[8]    Kirkland filed the *Eleventh Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from September 1, 2017 Through and Including December 31, 2017* on February 14, 2018 [D.I. 12635], with respect to which Kirkland and the Fee Committee are currently in negotiations.

RLF1 19160622v.1

Allowed:

Expenses Sought in this Fee Application Already Paid
Pursuant to the Interim Compensation Order But Not Yet          $604,581.20
Allowed:


Dated: April 17, 2018                        _____/s/ Chad J. Husnick_____
      Chicago, Illinois                 **KIRKLAND & ELLIS LLP**
                                                         **KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        edward.sassower@kirkland.com
                    stephen.hessler@kirkland.com
                    brian.schartz@kirkland.com
                    aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
                    marc.kieselstein@kirkland.com
                    chad.husnick@kirkland.com
                    steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Objection Deadline: May 9, 2018 at 4:00 p.m.** |

**TWELFTH INTERIM FEE APPLICATION OF
KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS
INTERNATIONAL LLP, ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION, FOR THE PERIOD FROM
JANUARY 1, 2018 THROUGH AND INCLUDING MARCH 9, 2018**

Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland"),

attorneys for the above-captioned debtors and debtors in possession (collectively, the "Debtors"),

hereby submits this twelfth interim fee application (the "Fee Application") for allowance of

compensation for professional services provided in the amount of $2,576,688.00 and

reimbursement of actual and necessary expenses in the amount of $63,195.02 that Kirkland

incurred for the period from January 1, 2018 through and including March 9, 2018 (the "Fee

Period"). In support of this Fee Application, Kirkland submits the declaration of Chad J.

Husnick, the president of Chad J. Husnick, P.C., a partner of Kirkland & Ellis LLP, and a partner

of Kirkland & Ellis International LLP, (the "Husnick Declaration"), which is attached hereto as

**Exhibit A** and incorporated by reference. In further support of this Fee Application, Kirkland

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

respectfully states as follows.[2]

## Jurisdiction

1.        The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Debtors confirm their consent pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Fee Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.        The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2016 of the Bankruptcy Rules, rules 2016-1 and 2016-2 of the Local Bankruptcy Rules, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order"), and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896], as amended on February 1, 2018 [D.I. 12552] (the "Fee Committee Order").[3]

---

[2]    Capitalized terms used but not otherwise defined in this Fee Application shall have the meanings ascribed to such terms in the *Summary Cover Sheet to the Twelfth Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from January 1, 2018 Through and Including March 9, 2018.*

[3]    On October 3, 2014, October 7, 2014, December 1, 2014, March 9, 2015, June 9, 2015, December 15, 2015, and March 12, 2018, the Fee Committee (as defined herein) distributed guidelines to those professionals retained in these chapter 11 cases regarding a number of topics, including, expense reimbursement, fee review criteria, and the contents of interim and final fee applications (collectively, the "Fee Committee Guidelines").

2

## Background

1.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of the TCEH Debtors (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company, LLC ("EFIH"), EFIH Finance, Inc., and EECI, Inc. (EFH Corp., EFIH, and EFIH Finance Inc., and their direct and indirect Debtor subsidiaries excluding the TCEH Debtors, such committee, the "EFH Creditors' Committee" and, together with the TCEH Creditors' Committee, the "Official Committees") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

2.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all retained professionals in these cases.

---

Following (a) the TCEH Effective Date, fees and expenses attributable to TCEH Debtors and the EFH Shared Services Debtors will be paid from the Professional Fee Escrow Account (defined in the TCEH Plan), on the terms set forth in the TCEH Plan and the order confirming the TCEH Plan and (b) the EFH Effective Date, fees and expenses attributable to the EFH Debtors and the EFIH Debtors will be paid from the EFH Professional Fee Escrow Account and EFIH Professional Fee Escrow Account (each as defined in the EFH/EFIH Plan), on the terms set forth in the EFH/EFIH Plan and the order confirming the EFH/EFIH Plan.

Time billed (a) to the TCEH Debtors and the EFH Shared Services Debtors after the TCEH Effective Date and (b) to the EFH Debtors and the EFIH Debtors after the EFH Effective Date is not reflected in this Fee Application.

3

3.      Given the size and complexity of the Debtors' chapter 11 cases, the U.S. Trustee, the Debtors, and the TCEH Creditors' Committee agreed to recommend that the Court appoint a fee committee to review and report on, as appropriate, interim and final fee applications filed by all retained professionals in accordance with sections 328, 330, and 331 of the Bankruptcy Code and the Interim Compensation Order (the "Fee Committee").  On August 21, 2014, the Court entered the Fee Committee Order, appointing the Fee Committee and establishing the procedures governing the Fee Committee's review of the Debtors' retained professionals' applications for compensation and the resolution of any concerns raised during such review.  On February 1, 2018, the Court entered the *Order Amending Stipulation and Order Appointing Fee Committee and Granting Related Relief* [D.I. 12552], which amended the Fee Committee Order.

4.      On October 3, 2016, in accordance with the order confirming the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9199] (the "TCEH Plan"), Texas Competitive Electric Holdings Company LLC ("TCEH" and, together with its direct parent company, Energy Future Competitive Holdings Company LLC ("EFCH") and certain of TCEH's direct and indirect subsidiaries, the "TCEH Debtors") and certain EFH Debtors (defined in the TCEH Plan as the EFH Shared Services Debtors) emerged from bankruptcy, and are no longer debtors-in-possession.  On February 27, 2018, the Court entered the *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12673] (the "EFH Confirmation Order"), confirming the EFH/EFIH Debtors' chapter 11 plan of reorganization (the "EFH/EFIH Plan"). The effective date of the EFH/EFIH Plan

4

occurred on March 9, 2018.[4]  Following the EFH Effective Date, the EFH/EFIH Debtors are no

longer debtors-in-possession.

### Preliminary Statement

5.      During the Fee Period, the EFH/EFIH Debtors continued their progress towards

final closure of these chapter 11 cases.  At the start of the Fee Period, the EFH/EFIH Debtors

continued communications with Elliott Associates, L.P., Elliott International, L.P., the Liverpool

Limited Partnership, Gatwick Securities LLC, Paloma Partners Management Company, and

Sunrise Partners Limited Partnership (together, the "Elliott Creditors") regarding the appointment

of a Fee Committee representative.[5]  Following oral argument on the issues, further discussions

between the parties, and a ruling from the Court, the EFH Creditors' Committee appointed a

representative Fee Committee member.[6]

6.      In the months leading up to the Fee Period, the EFH/EFIH Debtors and their

advisors took steps to minimize the regulatory risk that had previously manifested and plagued

prior efforts to consummate a plan of reorganization.  In the first month of the Fee Period, a series

of key intervenors pledged support for the transactions contemplated in the EFH/EFIH Debtors'

merger agreement with Sempra Energy ("Sempra" and such merger agreement, the "Sempra

Merger Agreement").    After publicly receiving indications of support from the Public Utility

Commission of Texas (the "PUCT") for the proposed transactions, the EFH/EFIH Debtors

scheduled a February 26, 2018 confirmation hearing (the "EFH Confirmation Hearing").  Prior to

the EFH Confirmation Hearing date—and in order to preserve the viability of the Sempra Merger

---

[4]    *Notice of Entry of EFH Confirmation Order and Occurrence of EFH Effective Date* [D.I. 12801] (the "EFH Effective Date").

[5]    *Debtors' Objection to Elliott's Motion to Appoint a Representative of the Majority Creditors to the Fee Committee* [D.I. 12416].

[6]    *Notice of Appointment of EFH/EFIH Official Committee Representative to the Fee Committee* [D.I. 12506].

Agreement on this confirmation schedule—the Debtors sought Court approval of a settlement between the EFH/EFIH Debtors and Sempra to amend the Sempra Merger Agreement (the "Oncor/TSA Settlement Agreement").    The Court approved the Oncor/TSA Settlement Agreement on February 14, 2018.[7]  The EFH/EFIH Debtors thereby achieved the resolution of outstanding disputes related to the Sempra Merger Agreement, the Sempra Plan Support Agreement, and the Oncor Tax Sharing Agreement.

7.    On February 22, 2018, the EFH/EFIH Debtors filed the *First Amended Supplement to the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12685] (the "Amended Plan Supplement").  Among other things, the Amended Plan Supplement included a draft form of the EFH Plan Administrator Trust Agreement, which outlines the functions of the EFH Plan Administrator Board.

8.    The EFH Confirmation Hearing was held on February 26, 2018.  The next day— following the Court's decision to overrule an objection from Elliott Management with regard to the administration of the NEE Plan Reserve—the Court entered the EFH Confirmation Order. Subsequent to confirmation of the EFH/EFIH Plan, the EFH/EFIH Debtors worked diligently to satisfy various closing conditions and secure numerous regulatory approvals, including from the PUCT, among others.

9.    In anticipation of PUCT approval, the EFH/EFIH Debtors coordinated escrow agreements and payment instructions, and corresponded with retained professionals to ensure compliance with the terms of the EFH/EFIH Plan, the EFH Confirmation Order, and all closing conditions of the Sempra Merger Agreement.  On March 8, 2018, the PUCT entered a final order

---

[7]    *Order Approving the (I) Settlement Between the Debtors and Sempra and (II) the Agreed Amendment to the Merger Agreement* [D.I. 12631].

(the "PUCT Order") approving the transactions contemplated under the Sempra Merger Agreement.  The next day, with the PUCT Order in hand, the EFH/EFIH Debtors emerged from bankruptcy.

10.    Throughout the Fee Period, the EFH/EFIH Debtors engaged in a multitude of discussions and negotiations with Elliott Management and NextEra Energy, Inc. ("NEE") regarding the disallowed $275 million termination fee (the "NEE Termination Fee").  The EFH/EFIH Debtors also prepared briefing for submission to the United States Court of Appeals for the Third Circuit ahead of oral arguments (which are currently scheduled for April 19, 2018) on the dispute.  In addition, throughout the Fee Period, the EFH/EFIH Debtors—along with the disinterested directors at EFH and EFIH, and counsel to these directors—attempted to resolve the allocation dispute between EFH and EFIH (the "EFH/EFIH Allocation Dispute"). [8] Unfortunately, the EFH/EFIH Allocation Dispute has not yet been resolved.

11.    The services performed during the Fee Period benefited all of the Debtors.  The EFH/EFIH Debtors spent significant time and resources confirming a broadly supported EFH/EFIH Plan.  The entry of the PUCT Order and subsequent consummation of the Sempra Merger Agreement removed the EFH/EFIH Debtors' final roadblock to effectiveness in a reorganization process littered with boundless complexities.  And, after nearly four years, the Debtors have now finally reached their long-standing goal of emergence from these chapter 11 cases.

## Case Status Summary

12.    Although the EFH/EFIH Allocation Dispute and litigation surrounding the NEE Termination Fee are both ongoing, all Debtors have now emerged from bankruptcy.  On the EFH

---

[8]    The EFH/EFIH Allocation Dispute relates to (a) the NEE Termination Fee; (b) professional fees and expenses incurred by the EFH Creditors' Committee; and (c) the fees incurred by certain of the Elliott Creditors.

Effective Date, the EFH/EFIH Debtors appointed a one-member board to administer the remaining estates: the EFH Plan Administrator Board.  The EFH Plan Administrator Board is tasked with directing distributions on account of Allowed Claims asserted against the EFH/EFIH Debtors.  Following the EFH Effective Date, fees and expenses attributable to the EFH/EFIH Debtors will be paid from the EFH and EFIH Professional Fee Escrow Accounts, on the terms set forth in the EFH/EFIH Plan and the EFH Confirmation Order.

### The Debtors' Retention of Kirkland

13.    On September 16, 2014, the Court entered the *Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2052] (the "Retention Order"), attached hereto as **Exhibit B** and incorporated by reference.  The Retention Order authorizes the Debtors to compensate and reimburse Kirkland in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Fee Committee Order, and the Interim Compensation Order.  The Retention Order also authorizes the Debtors to compensate Kirkland at Kirkland's hourly rates charged for services of this type and to reimburse Kirkland for actual and necessary out-of-pocket expenses incurred, subject to application to this Court.[9]  The particular terms of Kirkland's engagement are detailed in the engagement letter by and between Kirkland and the Debtors, effective as of June 19, 2012, and attached hereto as **Exhibit C** (the "Engagement Letter").

---

[9]    In accordance with the Retention Order, Kirkland does not seek reimbursement of expenses for office supplies pursuant to this Fee Application.

8

14.     The Retention Order authorizes Kirkland to provide the following services consistent with and in furtherance of the services enumerated above:

    a.   advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

    b.   preparing pleadings, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates and consistent with the services identified in the Retention Order;

    c.   appearing before the Court and any appellate courts to represent the interests of the Debtors' estates before those courts in connection with the services in the Retention Order; and

    d.   performing all other legal services reasonably necessary or otherwise beneficial for the Debtors in connection with these chapter 11 cases.

## Disinterestedness of Kirkland

15.     To the best of the Debtors' knowledge and as disclosed in:  the *Declaration of Edward O. Sassower, P.C. in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Effective Date* [D.I. 660] (the "First Sassower Declaration"); the *Amended Declaration of Edward O. Sassower in Support of the Debtors Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Effective Date* [D.I. 1733] (the "Amended Sassower Declaration"); the *First Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2005] (the "First Supplemental Sassower Declaration"); the *Second Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application*

9

*for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2949] (the "<u>Second Supplemental Sassower Declaration</u>"); the *Third Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 3041] (the "<u>Third Supplemental Sassower Declaration</u>"); the *Fourth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 4963] (the "<u>Fourth Supplemental Sassower Declaration</u>"); the *Fifth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 6240] (the "<u>Fifth Supplemental Sassower Declaration</u>"); the *Sixth Supplemental Declaration of James H.M. Sprayregen in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 7418] (the "<u>Sixth Supplemental Sprayregen Declaration</u>");  the *Seventh Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession*

10

*Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 8734] (the "<u>Seventh Supplemental Sassower</u> <u>Declaration</u>"); the *Eighth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 9216] (the "<u>Eighth</u> <u>Supplemental Sassower Declaration</u>"); the *Ninth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 10280] (the "<u>Ninth Supplemental Sassower Declaration</u>"); the *Tenth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 10408] (the "<u>Tenth Supplemental Sassower Declaration</u>"); the *Eleventh Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 11124] (the "<u>Eleventh Supplemental Sassower Declaration</u>"); the *Twelfth Supplemental Declaration of Chad J. Husnick in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 11363] (the "<u>Twelfth Supplemental Husnick</u> <u>Declaration</u>"); the *Thirteenth Supplemental Declaration of Chad J. Husnick in Support of the*

11

*Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 11849] (the "Thirteenth Supplemental Husnick Declaration"); the *Fourteenth Supplemental Declaration of Chad J. Husnick in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 12054] (the "Fourteenth Supplemental Husnick Declaration"); and the *Fifteenth Supplemental Declaration of Chad J. Husnick in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 12352] (the "Fifteenth Supplemental Husnick Declaration" and together with the First Sassower Declaration, the Amended Sassower Declaration, the First Supplemental Sassower Declaration, the Second Supplemental Sassower Declaration, the Third Supplemental Sassower Declaration, the Fourth Supplemental Sassower Declaration, the Fifth Supplemental Sassower Declaration, the Sixth Supplemental Sprayregen Declaration, the Seventh Supplemental Sassower Declaration, the Eighth Supplemental Sassower Declaration, the Ninth Supplemental Sassower Declaration, the Tenth Supplemental Sassower Declaration, the Eleventh Supplemental Sassower Declaration, the Twelfth Supplemental Husnick Declaration, the Thirteenth Supplemental Husnick Declaration, and the Fourteenth Supplemental Husnick Declaration, the "Kirkland Declarations"), Kirkland (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and

(c) has no connection to the Debtors, their creditors, or other parties-in-interest, except as may be disclosed in the Kirkland Declarations.

16.     Kirkland may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors in these chapter 11 cases.  In the Kirkland Declarations, Kirkland disclosed its connections to parties-in-interest that it has been able to ascertain using its reasonable efforts.  Kirkland will update the Kirkland Declarations or file additional ones, as appropriate, if Kirkland becomes aware of relevant and material new information.

17.     Kirkland performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

18.     Except to the extent of the advance payments paid to Kirkland that Kirkland previously disclosed to this Court in the Kirkland Declarations, Kirkland has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these chapter 11 cases.

19.     Pursuant to Bankruptcy Rule 2016(b), Kirkland has not shared, nor has Kirkland agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of Kirkland or (b) any compensation another person or party has received or may receive.

### Summary of Compliance with Interim Compensation Order and Fee Committee Order

20.     This Fee Application has been prepared in accordance with the Interim Compensation Order and the Fee Committee Order.  Kirkland seeks interim compensation for professional services rendered to the Debtors during the Fee Period in the amount of $2,576,688.00 and reimbursement of actual and necessary expenses incurred in connection with

13

providing such services in the amount of $63,195.02.  During the Fee Period, Kirkland attorneys

and paraprofessionals expended a total of 2,717.00 hours for which compensation is requested.

21.     Kirkland has sought payments totaling $2,012,104.24 under the Interim

Compensation Order and the Fee Committee Order pursuant to the Monthly Fee Statements.

Kirkland has submitted the Monthly Fee Statements seeking payment of (a) 80% of the fees

incurred by the Debtors for reasonable and necessary professional services rendered by Kirkland

and (b) 100% of the actual and necessary costs and expenses incurred by Kirkland in connection

with the services provided to the Debtors for each month.

22.     Accordingly, by this Fee Application, and to the extent such amounts have not

been paid by the time of the hearing on this Fee Application, Kirkland seeks payment of the

remaining $487,626.70, which represents the 20% holdback period on fees incurred during the

Fee Period.[10]

## Fees and Expenses Incurred During Fee Period

**A.     Customary Billing Disclosures**.

23.     Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly

for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  The

hourly rates and corresponding rate structure utilized by Kirkland in these chapter 11 cases are

equivalent to the hourly rates and corresponding rate structure used by Kirkland for other

restructuring matters, as well as similar complex corporate, securities, and litigation matters

whether in court or otherwise, regardless of whether a fee application is required.  The rates and

rate structure reflect that such restructurings and other complex matters typically are national in

scope and typically involve great complexity, high stakes, and severe time pressures.  For the

---

[10]   As of the filing of this Fee Application, Kirkland has not yet received payments relating to compensation and
expenses sought in the Monthly Fee Statements.

convenience of the Court and all parties-in-interest, attached hereto as **Exhibit D** is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to the Debtors during the Fee Period.

**B.      Fees Incurred During Fee Period**.

24.      In the ordinary course of Kirkland's practice, Kirkland maintains computerized records of the time expended to render the professional services required by the Debtors and their estates.  For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit E** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at Kirkland's current billing rates;

- the hourly billing rate for each attorney and each paraprofessional as disclosed in the first interim fee application;

- the number of rate increases since the inception of the case; and

- a calculation of total compensation requested using the rates disclosed in the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 660] (the "Retention Application").

**C.      Expenses Incurred During Fee Period**.

25.      In the ordinary course of Kirkland's practice, Kirkland maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.  Kirkland currently charges $0.16 per page for

standard duplication in its offices in the United States.   Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, Kirkland charged no more than $0.10 per page for standard duplication services in these chapter 11 cases.  Kirkland does not charge its clients for incoming facsimile transmissions.

26.     For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit F** is a summary of expenses incurred during the Fee Period and setting forth the total amount of reimbursement sought with respect to each category of expenses for which Kirkland is seeking reimbursement.

### Proposed Payment Allocation

27.     In accordance with paragraph 2(b) of the Interim Compensation Order, Kirkland proposes the following allocation of the fees and expenses sought in this Fee Application among (a) EFH Corp. and (b) EFIH:

| Direct Benefit Fees:  $41,601.00 (comprised of $41,601.00 fees and $0.00 expenses) | |
| --- | --- |
| Debtor(s) | Amount |
| EFH Corp. | $0.00 |
| EFIH | $41,601.00 |
| *Total:* | $41,601.00 |
| Collective Benefit Fees:  $2,598,281.92 (comprised of $2,535,087.00 fees and $63,194.92 expenses) | |
| Debtor(s) | Amount |
| EFH Corp. | $253,508.70 |
| EFIH | $2,281,578.30 |
| *Total:* | $2,598,281.92 |
| *Grand Total:* | $2,639,882.92 |

### Summary of Legal Services Rendered During the Fee Period

28.     As discussed above, Kirkland provided extensive and important professional services to the Debtors in connection with these chapter 11 cases during the Fee Period.  These services were often performed under severe time constraints and were necessary to address a

16

multitude of critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

29.     To provide a meaningful summary of Kirkland's services provided on behalf of the Debtors and their estates, Kirkland has established, in accordance with its internal billing procedures, certain subject matter categories (each, a "Matter Category") in connection with these chapter 11 cases.  The following is a summary of the fees and hours billed for each Matter Category in the Fee Period:[11]

| Matter Number | Project Category Description | Hours Billed | Total Compensation Billed |
|---|---|---|---|
| 0006 | [ALL E-SIDE] Case Administration | 27.20 | $13,269.50 |
| 0008 | [ALL E-SIDE] Claims Administration & Objections | 9.20 | $8,044.50 |
| 0009 | [ALL E-SIDE] Contested Matters & Adv. Proceed. | 1,194.80 | $1,129,303.00 |
| 0010 | [ALL E-SIDE] Corp. Governance and Sec. Issues | 215.90 | $175,420.50 |
| 0011 | [ALL E-SIDE] Exec. Contracts & Unexpired Leases | 0.80 | $796.00 |
| 0012 | [ALL E-SIDE] Hearings | 77.30 | $75,454.50 |
| 0014 | [ALL E-SIDE] Kirkland Retention and Fee Applications | 204.10 | $93,786.50 |
| 0017 | [ALL E-SIDE] Non-Kirkland Retentions & Fee Apps | 5.10 | $4,437.50 |
| 0018 | [ALL E-SIDE] Non-Working Travel | 52.20 | $52,89.00 |
| 0021 | [ALL E-SIDE] Plan and Disclosure Statements | 729.60 | $748,138.00 |
| 0026 | [ALL E-SIDE] Retiree & Empl. Issues/OPEB | 2.10 | $2,089.50 |
| 0029 | [ALL E-SIDE] Tax Issues | 162.00 | $231,454.50 |
| 0066 | [EFIH] Cash Collat./DIP Finan./Makewhole | 29.70 | $37,231.50 |
| 0068 | [EFIH] Contested Matters & Advers. Pro. | 6.00 | $3,284.50 |
| 0069 | [EFIH] Corp. Governance and Sec. Issues | 1.00 | $1,085.00 |

30.     The following is a summary, by Matter Category, of the most significant professional services provided by Kirkland during the Fee Period.  This summary is organized in accordance with Kirkland's internal system of matter numbers.  The detailed descriptions demonstrate that Kirkland was heavily involved in performing services for the Debtors on a daily

---

[11]     In certain instances Kirkland may have billed the same amount of fees, but different amount of hours to different Matter Categories.  This difference is the result of different staffing of each such Matter Category.

Matter Categories that have the prefix [ALL E-SIDE] represent time billed to the EFH Debtors and the EFIH Debtors.

17

basis, often including night, weekend, and holiday work, to meet the needs of the Debtors' estates in these chapter 11 cases.

31.     A schedule setting forth a description of the Matter Categories utilized in this case, the number of hours expended by Kirkland partners, associates, and paraprofessionals by matter, and the aggregate fees associated with each matter is attached hereto as **Exhibit G**.  **Exhibit H** is Kirkland's budget and staffing plan for this Fee Period, which has been approved by the Debtors, and **Exhibit I** is a comparison of hours and fees budgeted for each matter category to which Kirkland professionals and paraprofessionals billed time during the Fee Period against the hours and fees for which Kirkland seeks compensation for the Fee Period.

32.     In addition, Kirkland's computerized records of time expended providing professional services to the Debtors and their estates are attached hereto as **Exhibit J**, and Kirkland's records of expenses incurred during the Fee Period in the rendition of professional services to the Debtors and their estates are attached as **Exhibit K**.

(a)     **[ALL E-SIDE] Case Administration (Matter No. 6)**

Total Fees:     $13,269.50
Total Hours:   27.20

33.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period on tasks assuring the smooth and efficient administration of the Debtors' chapter 11 cases.  Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.       coordinating work streams and client communications;

    ii.      monitoring critical dates and case developments and maintaining and disseminating case calendars, task lists, work-in-progress reports, and key deadlines;

    iii.    corresponding with the Kirkland working group and the EFH/EFIH Debtors regarding the status of pending workstreams; and

18

iv.      reviewing docket entries as they are filed to apprise the EFH/EFIH Debtors, as well as Kirkland working groups, of developments in the chapter 11 cases, in real-time.

**(b)      [ALL E-SIDE] Claims Administration & Objections (Matter No. 8)**

Total Fees:    $8,044.50
Total Hours:   9.20

34.      This Matter Category includes time spent by Kirkland attorneys during the Fee Period related to the administration and resolution of claims filed against the EFH/EFIH Debtors' estates.

**(c)      [ALL E-SIDE] Contested Matters & Adversary Proceedings (Matter No. 9)**

Total Fees:    $1,129,303.00
Total Hours:   1,194.80

35.      This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to contested matters and adversary proceedings, and preparing for confirmation of the EFH/EFIH Plan. Specifically, Kirkland attorneys and paraprofessionals spent time:

i.       preparing and filing a response to the Elliott Creditors' requested Fee Committee appointment;[12]

ii.      reviewing interested parties' objections to confirmation of the EFH/EFIH Plan, including objections related to asbestos issues and the Termination Fee;

iii.     addressing Elliott's interjection into and allegations with respect to certain tax-related disputes;

iv.      analyzing and addressing issues related to the Oncor dividend settlement;

v.       preparing pleadings and witnesses regarding confirmation of the EFH/EFIH Plan, and addressing confirmation-related issues;[13]

---

[12]      *See Debtors' Objection to Elliott's Motion to Appoint a Representative of the Majority Creditors to the Fee Committee* [D.I. 12416].

vi.        drafting materials and furthering litigation strategy regarding the NEE Termination Fee appeal; and

vii.      evaluating potential settlement options related to the EFH/EFIH Allocation Dispute.

**(d)     [ALL E-SIDE] Corporate and Securities Issues (Matter No. 10)**

Total Fees:    $175,420.50
Total Hours:  215.90

36.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to corporate governance issues involving the Debtors. Specifically, Kirkland attorneys and paraprofessionals spent time:

i.         analyzing issues regarding closing matters and distributions under the EFH/EFIH Plan;

ii.        drafting dissolution documents and addressing related issues in preparation for closing;

iii.      corresponding with the Kirkland working group, counsel to Sempra, and the EFH/EFIH management team to prepare closing materials; and

iv.       preparing materials to update the EFH/EFIH boards regarding developments in these chapter 11 cases.

**(e)     [ALL E-SIDE] Exec. Contracts & Unexpired Leases (Matter No. 11)**

Total Fees:    $796.00
Total Hours:  0.80

37.     This Matter Category includes time spent by Kirkland attorneys during the Fee Period examining issues related to the EFH/EFIH Debtors' executory contracts and unexpired leases.

---

[13]   *See Debtors' Memorandum of Law in Support of Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12666] (the "Sempra Confirmation Brief"); *Declaration of Jonathan F. Ganter, Esq. In Support of the Debtors' Memorandum of Law In Support of Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12668].

**(f)**     **[ALL E-SIDE] Hearings (Matter No. 12)**

Total Fees:    $75,454.50
Total Hours:    77.30

38.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period preparing for and attending hearings, including the EFH Confirmation Hearing and related scheduling conferences.

**(g)**     **[ALL E-SIDE] Kirkland Retention and Fee Applications (Matter No. 14)**

Total Fees:    $93,786.50
Total Hours:    204.10

39.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to Kirkland's retention and fee materials for the Debtors.  Specifically, Kirkland attorneys and paraprofessionals spent time:

   i.     reviewing and revising invoices regarding privilege and compliance with applicable guidelines and rules;

   ii.     conducting, reviewing, and analyzing conflicts reports for any potential conflicts of interest; and

   iii.     preparing Kirkland's eleventh interim fee application.[14]

**(h)**     **[ALL E-SIDE] Non-Kirkland Retentions and Fee Applications (Matter No. 17)**

Total Fees:    $4,437.50
Total Hours:    5.10

40.     This Matter Category includes time spent by Kirkland attorneys during the Fee Period providing services related to the retention of professionals other than Kirkland.

---

[14]     *See Eleventh Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from September 1, 2017 Through and Including December 31, 2017* [D.I. 12635].

21

### (i)    [ALL E-SIDE] Non-Working Travel (Matter No. 18)

Total Fees:    $52,893.00
Total Hours:   52.20

41.    This Matter Category includes non-working travel time spent by Kirkland attorneys and paraprofessionals during the Fee Period in connection with their representation of the Debtors.  The amounts requested in the Fee Application reflect a reduction of one-half of the charges for travel time not spent working on matters related to these chapter 11 cases.

### (j)    [ALL E-SIDE] Plan and Disclosure Statements (Matter No. 21)

Total Fees:    $748,138.00
Total Hours:   729.60

42.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period working to develop the EFH/EFIH Plan.  Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.    developing the terms of the Oncor/TSA Settlement Agreement and corresponding with parties in interest regarding such terms;

    ii.    addressing and analyzing issues related to the EFH/EFIH Allocation Dispute;

    iii.    revising the EFH/EFIH Plan with respect to the administration of the NEE Termination Fee;

    iv.    drafting the Sempra Confirmation Brief;

    v.    corresponding with counsel to Sempra to facilitate preparation of the Amended Plan Supplement;

    vi.    planning closing procedures and process steps regarding the closing of the Sempra Merger Agreement and the EFH/EFIH Debtors' emergence from bankruptcy; and

    vii.    communicating and coordinating with the EFH/EFIH Debtors and their other advisors regarding consummation of the transactions contemplated by the Plan.

**(k)**    **[ALL E-SIDE] Retiree and Employee Issues (Matter No. 26)**

Total Fees:    $2,089.50
Total Hours:   2.10

43.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period providing services related to the EFH/EFIH Debtors' retirees, employees, and officers.

**(l)**    **[ALL E-SIDE] Tax Issues (Matter No. 29)**

Total Fees:    $231,454.50
Total Hours:   162.00

44.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period preparing correspondence, submissions, and disclosures, and generally advising the Debtors in connection with tax issues.  Specifically, Kirkland attorneys spent time:

i.    preparing submissions to the IRS in connection with the EFH/EFIH Debtors' tax obligations;

ii.    addressing disputes regarding tax sharing and earnings and profits issues; and

iii.    preparing a tax opinion letter and analyzing the tax aspects of closing matters.

**(m)**    **[EFIH] Cash Collateral / DIP Financing / Make-whole Issues (Matter No. 66)**

Total Fees:    $37,231.50
Total Hours:   29.70

45.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to EFIH financing issues. Specifically, Kirkland attorneys and paraprofessionals spent time:

i.    analyzing compliance issues related to terms of DIP financing; and

ii.    reviewing closing procedures and approvals of funds flows.

23

(n)    **[EFIH] Contested Matters and Adversary Proceedings (Matter No. 68)**

Total Fees:    $3,284.50
Total Hours:   6.00

46.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the EFIH Debtors' contested matters and adversary proceedings with EFIH creditors, including litigation related to the NEE Termination Fee.

(o)    **[EFIH] Corp. Governance and Sec. Issues (Matter No. 69)**

Total Fees:    $1,085.00
Total Hours:   1.00

47.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period related to corporate governance issues involving the EFIH Debtors.

**Actual and Necessary Expenses Incurred by Kirkland**

48.    As set forth in **Exhibit K** attached hereto, and as summarized in **Exhibit F** attached hereto, Kirkland has incurred a total of $63,195.02 in expenses on behalf of the Debtors during the Fee Period.  These charges are intended to reimburse Kirkland's direct operating costs, which are not incorporated into the Kirkland hourly billing rates.  Kirkland charges external copying and computer research at the provider's cost without markup.  Only clients who actually use services of the types set forth in **Exhibit K** of this Fee Application are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would be to impose that cost upon clients who do not require extensive photocopying and other facilities and services.

24

## Reasonable and Necessary Services Provided by Kirkland

**A.      Reasonable and Necessary Fees Incurred in Providing Services to the Debtors.**

49.      The foregoing professional services provided by Kirkland on behalf of the Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

50.      Many of the services performed by partners and associates of Kirkland were provided by Kirkland's Restructuring Group.  Kirkland has a prominent practice in this area and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies, with more than 100 attorneys focusing on this area of the law.  The attorneys at Kirkland have represented either the debtor or a creditors' committee or have acted as special counsel in many large chapter 11 cases.

51.      In addition, due to the facts and circumstances of these chapter 11 cases, attorneys from Kirkland's Litigation, Corporate, and Tax Groups were heavily involved with Kirkland's representation of the Debtors during the Fee Period.  These practice groups also enjoy a national and international reputation for their expertise.  Overall, Kirkland brings to these chapter 11 cases a particularly high level of skill and knowledge, which inured to the benefit of the Debtors and all stakeholders.

**B.      Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors.**

52.      The time constraints imposed by the circumstances of these chapter 11 cases required Kirkland attorneys and other employees to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtors.  These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties-in-interest on a timely basis, satisfy the demands of the Debtors' businesses, and ensure the orderly administration of their estates.  Consistent with firm policy and the Fee Committee Guidelines,

and as further disclosed in the Retention Application, Kirkland attorneys and other Kirkland employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs. Kirkland's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of legal services.

53.     In addition, due to the location of the Debtors' businesses, co-counsel, creditors, and other parties-in-interest in relation to Kirkland's offices, frequent multi-party telephone conferences involving numerous parties were required. On many occasions, the exigencies and circumstances of these chapter 11 cases required overnight delivery of documents and other materials. The disbursements for such services are not included in Kirkland's overhead for the purpose of setting billing rates, and Kirkland has made every effort to minimize its disbursements in these chapter 11 cases. The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

54.     Among other things, Kirkland makes sure that all overtime meals, travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement. Specifically, Kirkland regularly reviews its bills to ensure that the Debtors are billed for only services that were actual and necessary, and also, where appropriate, prorates expenses across the Debtors' estates. In accordance with the Retention Order, Kirkland does not seek reimbursement of expenses for office supplies pursuant to this Fee Application. In addition, Kirkland has waived certain fees and reduced certain expenses to comply with the Fee Committee Guidelines. Kirkland will not seek reimbursement of expenses related to, among other things, in-office and

26

out-of-office meals in excess of that allowed under the Fee Committee Guidelines and local travel expenses for those Kirkland employees who work on weekends or late in the evenings that do not meet the Fee Committee Guidelines.   In the Fee Period, Kirkland voluntarily reduced its fees by $83,080.00 and its expenses by $5,141.74.   Consequently, Kirkland does not seek payment of such fees or reimbursement of such expenses in this Fee Application.

**Kirkland's Requested Compensation and Reimbursement Should be Allowed**

55.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.   Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).   Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (a)     the time spent on such services;
>
> (b)     the rates charged for such services;
>
> (c)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (e)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

56.     Kirkland respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time rendered, necessary for and beneficial to the Debtors and their estates and were rendered to protect and preserve the Debtors' estates.   Kirkland further believes that it performed the services for the Debtors economically, effectively, and efficiently, and that the results obtained benefited not only the Debtors, but also the Debtors' estates and the Debtors' stakeholders.   Kirkland further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties-in-interest.

57.     During the Fee Period, Kirkland's hourly billing rates for attorneys ranged from $575.00 to $1,725.00.   The hourly rates and corresponding rate structure utilized by Kirkland in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by Kirkland for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.   Kirkland strives to be efficient in the staffing of matters. These rates and the rate structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in these chapter 11 cases.

58.     Moreover, Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.   Hourly rates vary with the experience and seniority of the individuals assigned.   These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

59.     In sum, Kirkland respectfully submits that the professional services provided by Kirkland on behalf of the Debtors and their estates during these chapter 11 cases were necessary and appropriate given the complexity of these chapter 11 cases, the time expended by Kirkland, the nature and extent of Kirkland's services provided, the value of Kirkland's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code.  Accordingly, Kirkland respectfully submits that approval of the compensation sought herein is warranted and should be approved.

60.     No previous application for the relief sought herein has been made to this or any other Court.

### Reservation of Rights and Notice

61.     It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Fee Application.  Kirkland reserves the right to include such amounts in future fee applications.  In addition, the Debtors have provided notice of this Fee Application to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel

29

thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) the Fee Committee; and (z) those

30

parties that have requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

62.     Pursuant to the Interim Compensation Order and the Fee Committee Order, any Notice Party (other than the Fee Committee) that wishes to object to the Fee Application must file its objection with the Court, with a copy to Chambers and serve it on Kirkland and the Notice Parties so that it is **actually received** on or before **May 9, 2018 at 4:00 p.m. (Eastern Daylight Time)**.

## No Prior Request

63.     No prior application for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

31

WHEREFORE, Kirkland respectfully requests that the Court enter an order (a) awarding Kirkland interim compensation for professional and paraprofessional services provided during the Fee Period in the amount of $2,576,688.00, and reimbursement of actual, reasonable, and necessary expenses incurred in the Fee Period in the amount of $63,195.02; (b) authorizing and directing the Debtors to remit payment to Kirkland for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Dated: April 17, 2018
      Chicago, Illinois

/s/ Chad J. Husnick

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
      stephen.hessler@kirkland.com
      brian.schartz@kirkland.com
      aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
      marc.kieselstein@kirkland.com
      chad.husnick@kirkland.com
      steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*