## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 12671, 12844, 12935** |

### EFH PLAN ADMINISTRATOR BOARD'S REPLY IN SUPPORT OF THE MOTION TO (I) DISMISS APPLICATION OF NEXTERA ENERGY, INC. FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE, OR, IN THE ALTERNATIVE, (II) GRANT SUMMARY JUDGMENT DENYING AND DISALLOWING SUCH ADMINISTRATIVE EXPENSE

The EFH Plan Administrator Board, on behalf of the entities formerly known as the EFH

Debtors and EFIH Debtors in the above-captioned cases (the "Debtors"),[2] hereby files this reply

(the "Reply") in support of the *Joint Motion of UMB Bank, N.A., as Indenture Trustee, and*

*Elliott to (I) Dismiss Application of NextEra Energy, Inc. for Allowance and Payment of*

*Administrative Expense, or, in the Alternative, (II) Grant Summary Judgment Denying and*

*Disallowing Such Administrative Expense* [D.I. 12844] (the "Elliott Motion") and in response to

the *Objection of NextEra Energy, Inc. to Joint Motion of UMB Bank, N.A., as Indenture Trustee,*

*and Elliott Funds to (I) Dismiss Application of NextEra for Allowance and Payment of*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The Debtors emerged from chapter 11 on March 9, 2018 as the Reorganized EFH/EFIH Debtors. *See Notice of Entry of EFH Confirmation Order and Occurrence of EFH Effective Date* [D.I. 12801].

*Administrative Expense, or, in the Alternative, (II) Grant Summary Judgment Denying and Disallowing Such Administrative Expense* [D.I. 12935] (the "NextEra Objection"). In support of this Reply, the EFH Plan Administrator Board respectfully submits as follows:[3]

## INTRODUCTION

1.     This Court should dismiss or summarily deny NextEra's application for allowance and payment of an administrative claim as an alternative to the Termination Fee (the "Back-Up Claim").[4] By contract and this Court's prior rulings, NextEra has no right to reimbursement for the costs and expenses it incurred in connection with its failed effort to buy the Debtors' economic interest in Oncor.

2.     *First,* by executing the Merger Agreement,[5] NextEra bargained away any rights to these costs and expenses. The Merger Agreement is clear: NextEra's only right to recovery from the estate is to the extent the Termination Fee is payable as an administrative expense under section 503(b) of title 11 of the United States Code (the "Bankruptcy Code"). The Merger Agreement explicitly states that the Termination Fee is "inclusive of all expense reimbursements, including reasonable and documented professional fees" of NextEra,[6] but otherwise requires the

---

[3] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to them in the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 12653].

[4] *Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Claim* [D.I. 12671], filed February 20, 2018 (the "Application") at 1.

[5] *See* Agreement and Plan of Merger, by and among NextEra, EFH Merger Co., LLC, EFH, and EFIH [D.I. 9584-1] on July 29, 2016 (as amended, the "Merger Agreement").

[6] *Id.* § 8.5(b).

2

RLF1 19175324v.1

parties to bear their own expenses.[7]  Further, the parties expressly agreed that these expense provisions would survive termination of the Merger Agreement.[8]  Neither NextEra's creative reconstruction of the Merger Agreement nor its reliance on *In re Women First Healthcare*, 332 B.R. 115 (Bankr. D. Del. 2005) allow NextEra to escape the contract's plain meaning.

3.    ***Second***, even if the Merger Agreement left any daylight on this question (and it did not), this Court shut the door in its October 3, 2017 *Opinion* on reconsideration of the Termination Fee [D.I. 11998] (the "Reconsideration Ruling").  This Court has already found that NextEra could not have conferred an "actual benefit" to the Debtors' estates under the facts at hand.[9]  Critically, NextEra is pursuing the Application ***in the alternative*** and only if the United States Court of Appeals for the Third Circuit ***affirms*** the Reconsideration Ruling.  Thus, its Application cannot survive this Court's prior ruling, which remains undisturbed.

## ARGUMENT

## I.    THE EXPRESS TERMS OF THE MERGER AGREEMENT PRECLUDE NEXTERA'S BACK-UP CLAIM.

4.    The $275 million Termination Fee, which is "inclusive of all expense reimbursements, including reasonable and documented professional fees of" NextEra, is the only

---

[7]  *Id.* § 6.7 ("whether or not the Merger is consummated, all costs and expenses incurred in connection with this Agreement and the Closing Date Transactions and the other transactions contemplated by this Agreement shall be paid by the party incurring such expense").

[8]  *Id.* § 9.1 ("[T]he agreements of the Company and EFIH, Parent and Merger Sub contained in the last sentence of Section 6.7 (*Expenses*) and Section 8.5 (*Effect of Termination and Abandonment*) shall survive the termination of this Agreement.").

[9]  Reconsideration Ruling at 3 ("[T]he fee did not satisfy the *O'Brien* standard for payment of such fees because there could not be any actual benefit to the Debtors' estate by payment of the fee.").

expense reimbursement the Merger Agreement allows.[10]  By negotiating for this fixed amount, the parties rejected reimbursement of actual expenses.

5.        In Section 6.7 of the Merger Agreement, the parties agreed that each would bear its own costs and expenses in connection with the Merger Agreement and transactions contemplated therein:

> Except as otherwise provided in Section 6.3, Section 6.18, Section 6.19, Section 6.20 and Section 6.22 or any administrative expenses of the Debtors' estates addressed in the Plan of Reorganization, whether or not the Merger is consummated, ***all costs and expenses*** incurred in connection with this Agreement and the Closing Date Transactions and other transactions contemplated by this Agreement ***shall be paid by the party incurring such expense.***"[11]

6.        Moreover, the parties expressly bargained that these expense provisions in the Merger Agreement would survive termination.[12]  Thus, those provisions remain in force and continue to bind NextEra.

7.        Unsurprisingly, NextEra does not—and cannot—take issue with the plain language in Section 8.5 of the Merger Agreement.  Instead, NextEra strains to fit its Back-Up Claim within the carve-out in Section 6.7, arguing that the Back-Up Claim is an "administrative expense[] of the Debtors' estates," which is excluded from the provision that each party bears its

---

[10]    Merger Agreement § 8.5.  See also Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into and Performance Under the Plan Support Agreement [D.I. 9190] ¶ 29 ("The Termination Fee is inclusive of all professional fees and expense reimbursements of NextEra and Merger Subsidiary."); 9/19/2016 Hr'g Tr. at 87:2-5 ("Your Honor, we are of course, seeking approval of the $275 million termination fee.  That's inclusive of professional fees and expense reimbursement.").

[11]    Merger Agreement § 6.7 (emphases added).

[12]    Id. § 9.1 ("[T]he agreements . . . contained in the last sentence of Section 6.7 (*Expenses*) and Section 8.5 (*Effect of Termination and Abandonment*) shall survive the termination of this Agreement.").

own costs.[13]   In so doing, NextEra purposefully misreads that carve-out, which only excludes "administrative expenses of the Debtors' estates *addressed in the Plan of Reorganization*."[14] NextEra's Back-Up Claim was not addressed in any plan of reorganization and, therefore, does not qualify for the Section 6.7 carve-out.[15]   Indeed, NextEra did not even file its Application until a few days before the February 2018 confirmation hearing.  In short, the Merger Agreement leaves no room for NextEra to assert the Back-Up Claim for expense reimbursement.  The Termination Fee was NextEra's lone path to recover expenses and, as this Court ruled in the Reconsideration Ruling, cannot satisfy section 503(b) of the Bankruptcy Code under the circumstances that came to pass.

8.     This Court should also reject NextEra's argument that the Merger Agreement is no longer binding.  As it acknowledges, NextEra executed the Merger Agreement—and became bound by its terms—as of July 29, 2016.  This Court's approval was only necessary to bind the Debtors to the agreement; NextEra bound itself the moment it signed.  The Court's refusal to approve the Termination Fee under circumstances where NextEra failed to obtain the requisite regulatory approvals to close the transaction does not erase the Merger Agreement or the bargains contained therein—especially those that expressly survived termination of the Merger Agreement.[16]

---

[13] NextEra Objection ¶ 19.

[14] Merger Agreement § 6.7 (emphasis added).

[15] NextEra argues that the NextEra plan and Sempra plan both provide for submission of administrative claims post-confirmation as a general matter.  NextEra Objection ¶ 19 n.23.  However, on the specific point of costs and expenses payable to NextEra in connection with the Merger Agreement, Section 8.5(b) is unequivocal and dispositive.  Merger Agreement § 8.5(b).

[16] Merger Agreement §§ 7.1(a), 9.1.

II.    **THE RECONSIDERATION RULING, WHICH FOUND THAT NEXTERA COULD NOT PROVIDE A BENEFIT TO THE DEBTORS' ESTATES UNDER THE CIRCUMSTANCES, PRECLUDES NEXTERA'S BACK-UP CLAIM.**

9.     NextEra admits that it is only pursuing reimbursement of its fees and expenses "in the event that the Third Circuit affirms the Reconsideration Order."[17] Yet, if the Third Circuit affirms this Court's ruling, NextEra will not be entitled to any reimbursement because (a) the Termination Fee will not be payable and (b) NextEra otherwise agreed to bear its own costs under Section 6.7 of the Merger Agreement, as discussed above.

10.    In any event, as long as the Reconsideration Ruling remains in force, it precludes payment of the Back-Up Claim. As the Court concluded, payment of the Termination Fee if a regulatory body declined to approve the transaction with NextEra did not satisfy the *O'Brien* standard because, under those circumstances, the Termination Fee could not be an actual, necessary expense and the Debtors' estates could not receive a benefit as required by section 503(b) of the Bankruptcy Code.[18] The Court's ruling applies with equal force to the Back-Up Claim. Accordingly, as the Elliott Motion further explains, NextEra is estopped from relitigating the question of whether its failed transaction provided a benefit to the Debtors' estates.[19] Because the Court has found that NextEra does not satisfy section 503(b) of the Bankruptcy Code under the circumstances, NextEra is not entitled to reimbursement for the expenses it incurred in the course of its failed effort.[20]

---

[17] Application at 2–3, ¶ 35.

[18] Reconsideration Ruling at 28–31.

[19] *See* Elliott Motion ¶¶ 40-47.

[20] Nor is NextEra entitled to discovery about whether it provided any actual benefit to the Debtors' estates. This Court has already determined that, under the circumstances at hand, NextEra could provide no such benefit. Thus, there is no reason to subject the Debtors' estates (or the Reorganized (Continued…)

11.     Thus, despite NextEra's heavy reliance on *Women First*, that case is irrelevant here as long as the Reconsideration Ruling governs.[21] The *Women First* ruling was based on "unique circumstances," 332 B.R. at 129, which are not present here.[22] Critically, in *Women First*, Sun's original bid and participation as the stalking horse in two auctions ultimately led to a topping bid that was two-and-a-half times Sun's original bid; in the meantime, Sun took steps to expeditiously consummate its transaction as the winning bidder from the time its asset purchase agreement was approved until the time that approval was vacated. *Id.* at 121-22.  Although the court had previously approved a break fee and separate expense reimbursement for Sun in advance of the initial auction, the *Women First* court concluded that, "due to the unique circumstances warranting the reconsideration of the Sun Sale Order," the actions Sun took to close its transaction after it believed it was the winning bidder provided a benefit to the debtor's estate and warranted allowance of Sun's claim for some additional expenses. *Id.* at 122, 129.  In contrast, as the Court found in the Reconsideration Order, "the Debtors were forced to terminate the Merger Agreement to pursue a lower offer because NextEra had the Debtors in a corner," and, therefore, NextEra could not (and did not) benefit the Debtors' estates.[23]

## CONCLUSION

12.     The plain terms of the Merger Agreement and this Court's Reconsideration Ruling preclude payment of NextEra's Back-Up Claim.  Accordingly, this Court should dismiss or summarily deny the Application.

---

EFH/EFIH Debtors or the EFH Plan Administrator Board) to the burden and expense of discovery, particularly discovery from advisors that would inevitably wade into privileged matters.

[21] NextEra Objection ¶ 20.

[22] *See also* Elliott Motion ¶¶ 32-33.

[23] Reconsideration Ruling, 31.

RLF1 19175324v.1

Dated: April 18, 2018
　　　　Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:　　(302) 651-7700
Facsimile:　　(302) 651-7701
Email:　　　　collins@rlf.com
　　　　　　　defranceschi@rlf.com
　　　　　　　madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:　　(212) 446-4800
Facsimile:　　(212) 446-4900
Email:　　　　edward.sassower@kirkland.com
　　　　　　　stephen.hessler@kirkland.com
　　　　　　　brian.schartz@kirkland.com
　　　　　　　aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:　　(312) 862-2000
Facsimile:　　(312) 862-2200
Email:　　　　james.sprayregen@kirkland.com
　　　　　　　marc.kieselstein@kirkland.com
　　　　　　　chad.husnick@kirkland.com
　　　　　　　steven.serajeddini@kirkland.com

*Co-Counsel to the EFH Plan Administrator Board*