**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| *Debtors.* | (Jointly Administered) |
| | **Re: D.I. 12671, 12844, & 12935** |

**REPLY OF UMB BANK, N.A., AS INDENTURE TRUSTEE, AND ELLIOTT IN SUPPORT OF THEIR JOINT MOTION TO (I) DISMISS APPLICATION OF NEXTERA ENERGY, INC. FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE, OR, IN THE ALTERNATIVE, (II) GRANT SUMMARY JUDGMENT DENYING AND DISALLOWING SUCH ADMINISTRATIVE EXPENSE**

UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25% Senior Toggle Notes due 2018, and Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott" and, together with the Trustee, the "Movants"), by and through their undersigned counsel, hereby submit this reply (i) in support of their joint motion (the "Motion") to dismiss or, in the alternative, grant summary judgment denying and disallowing the *Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Claim* [D.I. 12671] (the "Application") and (ii) in response to NextEra's objection to the Motion (the "Objection").[2] In support hereof, the Movants respectfully state as follows:

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

**PRELIMINARY STATEMENT**

This Court has all of the facts and information necessary to rule that as a matter of law under the Merger Agreement, established administrative expense jurisprudence, and existing law of the case, NextEra is not entitled to reimbursement of the NextEra Expenses as an administrative expense under section 503(b)(1) of the Bankruptcy Code.

In the Merger Agreement, NextEra expressly agreed that any right it may have to reimbursement for transaction expenses was entirely subsumed by its right to the Termination Fee. The relevant provisions of the Merger Agreement are clear and unambiguous (as NextEra has argued to both this Court and the Third Circuit). Thus, this Court should reject NextEra's attempt to manufacture an ambiguity where none exists and rule that the NextEra Expenses are not and cannot be an allowed administrative expense under the Merger Agreement.

Nor should the Court countenance NextEra's attempt to distance itself from the Merger Agreement and conclude that the NextEra Expenses could otherwise be compensable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. *First*, if, as NextEra suggests, the Merger Agreement is not enforceable, then there is simply no postpetition transaction with the E-Side Debtors upon which to rest its administrative expense. *See Cramer v. Mammoth Mart, Inc., (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir.1976) (requiring a postpetition transaction as a prerequisite to qualifying for an administrative expense). *Second*, the Court has already ruled that NextEra's efforts to consummate the merger transaction did not provide the E-Side Debtors with an actual benefit, and so NextEra's fees and expenses were not an actual, necessary cost of preserving the E-Side Debtors' estates as required under section 503(b) of the Bankruptcy Code. *Third*, NextEra's request for a substantial contribution claim under section 503(b)(3)(D) of the Bankruptcy Code fails as a matter of law because NextEra

admits that the NextEra entity asserting the administrative expense was not a creditor of the E-Side Debtors, a statutory prerequisite to qualify for a substantial contribution claim.

Therefore, this Court may, and should, rule now that as a matter of law the NextEra Expenses are not administrative expenses under section 503(b) of the Bankruptcy Code. As shown below, NextEra cannot demonstrate that the relevant terms of the Merger Agreement were ambiguous, that there is a material dispute of fact over whether NextEra provided an actual benefit to the E-Side Debtors' estates, or that it is a creditor entitled to assert a substantial contribution claim under section 503(b)(3)(D). Nor is there any reason for this Court to entertain NextEra's renewed invitation to stay proceedings on the Motion. A stay will simply unnecessarily delay creditor distributions and needlessly increase litigation costs. Accordingly, for the reasons set forth more fully below and in the Motion, the Application should be dismissed and NextEra's request for an administrative expense denied.

## ARGUMENT

### I. THE NEXTERA MERGER AGREEMENT IS BINDING AND PRECLUDES REIMBURSEMENT OF THE NEXTERA EXPENSES

#### A. The Relief Requested In The Application Is Barred Under The Merger Agreement

1. The clear and unambiguous language of the Merger Agreement precludes NextEra from obtaining reimbursement of the NextEra Expenses from the E-Side Debtors or their estates. To convince the Court otherwise, NextEra makes two arguments: (i) the relevant provisions of the Merger Agreement are ambiguous and (ii) the relevant provisions of the Merger Agreement are unenforceable because the Court found that the Termination Fee would not be payable as an administrative expense under certain circumstances. Both arguments fail as a matter of law.

2. Section 6.7 of the Merger Agreement expressly provides that NextEra shall bear all expenses it incurred in connection with its proposed transaction with the E-Side Debtors:

> Except as otherwise provided in Section 6.3, Section 6.18, Section 6.19, Section 6.20 and Section 6.22 or any administrative expenses of the Debtors' estates addressed in the Plan of Reorganization, whether or not the Merger is consummated, all costs and expenses incurred in connection with this Agreement and the Closing Date Transactions and the other transactions contemplated by this Agreement shall be paid by the party incurring such expense.

D.I. 9190, Merger Agreement § 6.7(c).

3. NextEra nonetheless contends that the phrase "any administrative expenses of the Debtors' estates" constitutes an exception, permitting NextEra to proceed on its Application in the event that the Termination Fee was disallowed. NextEra's reliance on this phrase is entirely misplaced—Section 6.7 of the Merger Agreement unambiguously precludes NextEra from recovering the NextEra Expenses.

4. First, Section 6.7 plainly contemplates that NextEra's sole means to receive reimbursement for the NextEra Expenses was through the Termination Fee, and solely to the extent the Termination Fee was approved. NextEra provides no reason as to why it had any alternative recourse, and the clear language of Section 6.7 precludes any such alternative recourse. Nothing in the original motion seeking approval of the Merger Agreement or any statements at the approval hearing ever suggested that NextEra would have an alternative means for seeking reimbursement of its costs and expenses if the transaction were not consummated and the Termination Fee were not payable.[3] Such a disclosure would have been material to the

[3] Indeed, in the motion for approval of the Merger Agreement and at the hearing, the Debtors confirmed that no other recourse existed for NextEra to recover its costs and expenses. *See* D.I. 9190 at ¶ 29 ("The Termination Fee is inclusive of all professional fees and expense reimbursements of NextEra and Merger Subsidiary."); D.I. 9606, Sept. 19, 2016 Hr'g Tr. 87:2–5 ("As part of that, Your Honor, we are, of course, seeking approval of the $275 million termination fee. *That's inclusive of professional fees and expense reimbursement*." (emphasis added)).

Court's analysis, but none was made. The reason is simple—there was no alternative basis on which NextEra could seek reimbursement of its costs and expenses if the Termination Fee were not payable. Under NextEra's novel interpretation of Section 6.7, it could have terminated the Merger Agreement and still have had the right to recover $60 million in costs and expenses.

5. Additionally, NextEra's reading of Section 6.7 conveniently ignores the immediately ensuing but absolutely critical phrase "addressed in the Plan of Reorganization." The term "Plan of Reorganization" is defined in the Merger Agreement as being limited to the proposed plan of reorganization with respect to the NextEra transaction, the most recent version of which was filed on February 16, 2017 [D.I. 10848] (the "NextEra Plan"). *See* Merger Agreement at p. 9. NextEra makes no attempt to even argue that the NextEra Expenses are addressed or provided for as administrative expenses in the NextEra Plan, and for good reason. They are not. Regardless, the NextEra Plan never became effective and, therefore, cannot serve as a basis for an allowed administrative expense claim in favor of NextEra. In addition, even if the definition of "Plan of Reorganization" in the Merger Agreement were not so limited, the NextEra Expenses are not addressed or provided for in the existing Plan with respect to the Sempra transaction.

6. Section 6.7 is clear on its face and, despite NextEra's strained efforts, is not susceptible to any reading supporting that the estates should pay the NextEra Expenses as administrative expenses under section 503(b)(1) of the Bankruptcy Code. NextEra has expressly disclaimed any right to recover expenses incurred by it in connection with the merger transaction and, as such, the Application should be denied. *See In re Magna Entm't Corp. v. PA Meadows, LLC*, 442 B.R. 88, 90–91 (Bankr. D. Del. 2011) (granting summary judgment and denying claim

for payment where agreement was unambiguous and plaintiff's argument that payment was owed did "not fit within the plain language of the contract.").

7. Understanding fully that allowance of the NextEra Expenses under Section 6.7 of the Merger Agreement is not permitted, NextEra contends, in the alternative, that Section 6.7 is not binding and, thus, does not undermine NextEra's request for administrative expense priority for the NextEra Expenses. This alternative argument has no basis in fact or law and is self-defeating.

8. In support of its position that the Merger Agreement is not binding, NextEra cites to Sections 7.1, 8.4(j), and 5.1(c) thereof. *See* Objection ¶ 24. None of these provisions supports NextEra's position. Section 7.1 of the Merger Agreement addresses entry of an order approving the Merger Agreement as a condition to closing. Merger Agreement § 7.1. This provision in no way affects the binding nature of the Merger Agreement—it simply provides that if an order approving the agreement is not entered, the parties are not obligated to close the merger transaction. An order was entered, and as a result of this Court granting Elliott's Reconsideration Motion, that order has been modified, not vacated.

9. Section 8.4(j) merely provides NextEra with a right to terminate the Merger Agreement prior to closing "if the Bankruptcy Court does not enter an order approving this Agreement within forty-five (45) days of the date of this Agreement." *Id.* § 8.4(j). The Court did enter the Approval Order approving the Merger Agreement, and as noted above, the Reconsideration Order did not void or nullify the Approval Order. Even if Section 8.4(j) were somehow implicated, NextEra's sole remedy under this provision is to terminate the Merger Agreement, and, as discussed in the Motion, Section 9.1 of the Merger Agreement expressly

states that Section 6.7 (providing that NextEra will pay its own costs and expenses) "shall survive the termination of this Agreement." *Id.* § 9.1.

10. Lastly, Section 5.1(c) is simply a representation by the E-Side Debtors that the Merger Agreement has been duly executed and delivered and, subject to entry of the Approval Order, is valid and binding as against the E-Side Debtors. *Id.* § 5.1(c). NextEra conveniently ignores the equivalent representation it made in the Merger Agreement which provides, without any reference to the Approval Order or the form thereof, that "[t]his Agreement, the Plan Support Agreement and the Oncor Letter Agreement have been duly executed and delivered by [NextEra] and each constitutes a valid and binding obligation of [NextEra]." *Id.* § 5.2(c).

11. NextEra's argument that the Court rewrote or materially altered the Merger Agreement is fundamentally flawed. In the Reconsideration Order, the Court disallowed the Termination Fee solely in the event the PUCT declines to approve the transaction and, as a result, the Merger Agreement is terminated. *See* D.I. 12075, Reconsideration Order ¶ 5. The Reconsideration Order otherwise leaves the Approval Order intact and does not alter or amend any provision of the Merger Agreement.[4] This includes Section 8.5 of the Merger Agreement, in which the parties expressly agreed that the Termination Fee would be payable only to the extent approved by the Court. *See* Merger Agreement § 8.5 (providing that if the Merger Agreement is terminated, "then, subject to the approval of the Bankruptcy Court," the Termination Fee may be payable). By the plain terms of the Merger Agreement, NextEra accepted that the Termination Fee would be payable only to the extent approved by the Court, and nothing in the Merger

[4] NextEra even concedes that "[t]he Reconsideration Order does not purport to amend the Merger Agreement itself, and instead modifies only the Court's original order approving the Merger Agreement." Objection ¶ 23.

Agreement supports that such agreement is non-binding and unenforceable against NextEra if the Court limits the circumstances under which the Termination Fee may be payable.[5]

12. Further, NextEra's arguments as to its purported reliance on the initial Approval Order have already been rejected by the Court and, regardless, do not affect the plain language of Section 6.7 to which NextEra agreed. *See* Reconsideration Opinion at 24 ("NextEra cannot reasonably have relied on the Termination Fee Order when it knew the order was premised on an incomplete and confusing record.").

**B. NextEra Has No Contractual Or Legal Basis To Obtain An Administrative Expense Under Section 503(b)(1)**

13. Even assuming, *arguendo*, that this Court were to accept NextEra's argument that the Merger Agreement is not binding on it, then the Application must still be denied because there would be no transaction or agreement between the E-Side Debtors and NextEra serving as a basis for reimbursement as an administrative expense. Under established law, in order to qualify for an administrative expense under section 503(b)(1), the applicant must show that the payment in question (a) arose from a postpetition transaction between the applicant and the debtor and (b) provided an actual benefit to the estate that was necessary to preserve the value of estate assets. *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 532–35 (3d Cir. 1999) (citing *Cramer v. Mammoth Mart, Inc., (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir.1976)).

---

5 NextEra mistakenly relies on *MacDonald v. CashCall, Inc.*, 883 F.3d 220 (3d Cir. 2018) for the proposition that the Merger Agreement is non-binding and unenforceable. In *MacDonald*, a borrower entered into a loan agreement that contained several arbitration provisions providing that disputes under the loan agreement would be resolved by arbitration conducted by the Cheyenne River Sioux Tribal Nation. *Id.* at 224–26. In a subsequent suit, the defendants sought to compel arbitration under the loan agreement's arbitration provisions, and the plaintiff argued that such provisions were unenforceable because, among other things, they required arbitration by an entity that did not exist. *Id.* at 227. The court agreed with the plaintiff and found that because the arbitration provisions required and were premised on arbitration by a non-existent entity, all such arbitration provisions were unenforceable. *Id.* at 229–32. Notably, the court did not make any finding that the loan agreement itself was unenforceable. Here, as discussed above, the Reconsideration Order limited the circumstances under which the Termination Fee could be payable, but did not modify or render any provision of the Merger Agreement unenforceable. Therefore, *MacDonald* lends no support for NextEra's argument that Section 6.7 of the Merger Agreement is non-binding and unenforceable.

14. A threshold requirement for a payment to qualify as an administrative expense under section 503(b)(1) is a valid postpetition transaction that includes an obligation of the debtor to make that payment. *See M Group, Inc.*, 268 B.R. 896, 902 (Bankr. D. Del. 2001) (finding that because no postpetition agreement was entered into providing for a payment, there is no "postpetition transaction" with the debtor to permit an administrative expense under section 503(b)(1)). An entity that has no postpetition contractual underpinning (or, as some cases have found, basis in tort) for reimbursement of costs and expenses by the debtor cannot satisfy an essential element to obtain an allowed administrative expense under section 503(b)(1).[6]

15. The need for a contractual basis for payment is exemplified in *Madison Equities, LLC v. Condren (In re Theatre Row Phase II Assocs.)*, 385 B.R. 511 (Bankr. S.D.N.Y. 2008), and NextEra's attempt to distinguish that case is unavailing. In *Madison Equities*, a potential purchaser sought an administrative expense for costs incurred in pursuing a sale transaction with the debtor, notwithstanding that the debtor did not have any postpetition contractual obligation to reimburse the potential purchaser for its costs. *Id.* at 519. The court explained that an administrative expense "must have a satisfactory basis in law other than Code § 503(a)(1), such as contract or tort, as well as factual validity" and the applicant "fails because it cannot show the necessary contractual (or tort) basis on which to impose liability . . . ." *Id.* at 521. The court further found that:

> The Debtor never agreed with Madison to pay or reimburse Madison for any of its expenses in pursuing a deal for the Property. Nor could the Debtor have agreed to do so without court approval since any such contract would not have been in the ordinary course of business.

[6] As an alternative, such an entity may seek a substantial contribution claim under section 503(b)(3)(D) of the Bankruptcy Code, *provided* that it is one of the enumerated entities in that section entitled to seek such relief. As discussed in Section III, *infra*, NextEra is not one of the enumerated entities and, therefore, is not entitled to seek a substantial contribution claim.

*Id*. at 525. Applying Bankruptcy Rule 7012 to the contested matter pursuant to Bankruptcy Rule 9014(c), the court granted the debtor's motion to dismiss the administrative expense application. *Id.* at 519, 525.

16. This Court should reach the same conclusion. The only postpetition transaction that NextEra can claim to exist is the Merger Agreement, which expressly provides that each side is responsible for and shall pay its own expenses in connection with the merger transaction (*see* Merger Agreement § 6.7(c)). There is no agreement between the parties providing to the contrary.[7] Therefore, if the Court were to accept NextEra's contention that the Merger Agreement is not binding, the absence of a binding agreement with the E-Side Debtors defeats NextEra's claim that the NextEra Expenses qualify as administrative expenses under section 503(b)(1) of the Bankruptcy Code. Accordingly, the Application should be dismissed or summarily denied as to NextEra's alternative argument.

### C. *Women First* Does Not Support NextEra's Administrative Expense Request

17. NextEra's reliance on Judge Walrath's ruling in *In re Women First Healthcare, Inc*., 332 B.R. 115 (Bankr. D. Del. 2005) is also misplaced as that case involved entirely different circumstances than those present here. In *Women First*, the court awarded an administrative expense claim in favor of a stalking horse bidder based on the unique circumstances where, after a sale order was entered and the stalking horse bidder proceeded to incur expenses to close the transaction, it was revealed that the debtor failed to properly notice the sale. *Id.* at 119. Due to the debtor's failure to provide notice (which the court found was a tortious negligent misrepresentation), the court vacated the sale order and reopened the auction

[7] The Merger Agreement contains an integration clause providing that such agreement, together with the exhibits and schedules thereto and certain related agreements, "constitute the entire agreement of the parties hereto with respect to the subject matter hereof . . . ." Merger Agreement § 9.7. This clause supports that there is no separate transaction between the parties under which the Debtors agreed to reimburse NextEra for expenses relating to the merger.

process, which ultimately resulted in a higher bid. *Id.* at 120. The stalking horse agreement in *Women First* provided for an expense reimbursement that was separate and apart from the break-up fee. Such expense reimbursement was previously approved by the court in a bid procedures order (which was not vacated) but, given the extraordinary circumstances, the stalking horse bidder sought approval of certain expenses in excess of the amounts previously approved. *Id.* at 118–19.

18. The court in *Women First* granted the bidder an administrative expense for costs incurred between entry of the initial sale order until the time that deficiency in notice was discovered using the "fundamental fairness" doctrine articulated in *Reading Co. v. Brown*, 391 U.S. 471 (1968), where a claim is caused by a postpetition tort committed by the debtor. *Women First*, 332 B.R. at 123–25; *see also Kelson Channel View LLC v. Reliant Energy Channelview, LP (In re Reliant Energy Channelview LP)*, 403 B.R. 308, 312 (D. Del. 2009), *aff'd* 594 F.3d 200 (3d Cir. 2010) (noting that the court in *Women First* "applied the doctrine of fundamental fairness to allow the payment of an administrative claim for a tort committed by the debtor."). For expenses incurred after discovery of the notice deficiency, the court awarded the bidder an administrative expense claim, in part, pursuant to section 503(b)(1), recognizing the "unique circumstances" under which the initial sale order was vacated and acknowledging that "reopening the auction did benefit the estate (by increasing the price the Debtor received for the assets by more than $2.5 million)." *Women First*, 332 B.R. at 122, 129.

19. The circumstances here stand in stark contrast to those in *Women First*. NextEra has not alleged that it was the victim of a postpetition tort committed by the E-Side Debtors and has not asserted any administrative expense under the *Reading v. Brown* fundamental fairness doctrine. Further, unlike the bidder in *Women First*, NextEra's impediment to closing was not

the result of the E-Side Debtors' misconduct or failure to take a required action. Rather, NextEra could not close the transaction because NextEra could not obtain regulatory approval from the PUCT.

20. Moreover, NextEra did not foster and participate in any auction process that resulted in a higher and better offer. To the contrary, the transaction that the E-Side Debtors recently closed with Sempra provides substantially less consideration to the estates than the consideration contemplated by the Merger Agreement. NextEra's failure to satisfy a closing condition left the estates in a far worse position, not only because of the reduced consideration, but also because NextEra's inability to close (and its subsequent refusal to terminate the Merger Agreement) delayed any ultimate restructuring transaction during a time when the estates were incurring approximately $50 million in monthly interest obligations to secured lenders. *See* D.I. 11761 ¶ 2 ("The EFIH Debtors burn approximately $50 million per month in interest rate obligations alone (without factoring in professional fee obligations at the EFIH Debtors or EFIH Debtors)"). Accordingly, *Women First* does not support NextEra's arguments that the NextEra Expenses should be allowed as administrative expenses under section 503(b)(1).

21. The Application fails to state a plausible claim for relief and NextEra has failed to make a showing sufficient to establish an entitlement to an administrative expense under section 503(b)(1) on account of the NextEra Expenses. Accordingly, the Movants are entitled to judgment as a matter of law denying the Application and disallowing NextEra's request for an allowed administrative expense.

## II. THIS COURT'S RULING IN CONNECTION WITH THE RECONSIDERATION ORDER PRECLUDES REIMBURSEMENT OF THE NEXTERA EXPENSES

22. NextEra's attempt to remove the NextEra Expenses from the scope of this Court's ruling on the Reconsideration Motion contradicts the plain terms of the Merger Agreement and

this Court's express findings. Section 8.5(b) of the Merger Agreement defines the "Termination Fee" as being "inclusive of all expense reimbursements, including all reasonable and documented professional fees of [NextEra] and [EFH Merger Co., LLC]." Merger Agreement § 8.5(b). Accordingly, by the express terms of the Merger Agreement, the "Termination Fee" encompassed all fees and expenses—including, but not limited to, professional fees and expenses—that may be incurred by NextEra in connection with the proposed merger transaction. Taken together with Section 6.7, the Termination Fee was the sole means by which NextEra could receive reimbursement for the NextEra Expenses.

23. In the Reconsideration Opinion, the Court found that payment of the Termination Fee (which included any purported reimbursement of expenses) where the PUCT declined to approve the merger "cannot constitute an actual necessary cost and expense of preserving the Debtors' estates." Reconsideration Opinion at 33–34. This ruling is dispositive of the relief requested in the Application. *See Burtch v. Masiz (In re Vaso Active Pharmaceuticals, Inc.),* 500 B.R. 384, 398 (Bankr. D. Del. 2013) ("once a matter has been addressed in a procedurally appropriate way by a court, it is generally held to be the law of that case and will not be disturbed by that court unless compelling reason to do so appears").

24. NextEra ignores that the Termination Fee was the sole means to recover any costs and expenses and is effectively arguing that the Termination Fee should be allowed in part in an amount sufficient to cover its out-of-pocket expenses. This is improper and should be denied outright by the Court.[8]

[8] NextEra also distorts an earlier argument asserted by Elliott with respect to expense reimbursements and misconstrues the ruling in *In re President Casinos, Inc.*, 314 B.R. 786, 788-89 (Bankr. E.D. Mo. 2004) cited by Elliott in another context. Elliott previously noted that if NextEra wanted an administrative claim for an expense reimbursement that was distinct from the Termination Fee, it should have separately sought one at the outset in connection with approval of the Merger Agreement, as is often done with stalking horse agreements. *See* Sept. 19, 2017 Hr'g Tr. at 39. Elliott in no way contended that a bidder can or should seek approval of a termination fee, expressly agree to pay its own costs, and then later seek an administrative expense for

25. Even if the NextEra Expenses were not subsumed in the definition of Termination Fee and, thus, already disallowed by this Court, the NextEra Expenses are not actual, necessary costs and expenses of preserving the estate under Third Circuit law. The Third Circuit has made clear that both termination (or break-up) fees and expense reimbursements are subject to the same standard under section 503(b)(1). *See O'Brien*, 181 F.3d at 535 ("We therefore conclude that the determination whether break-up fees *or expenses* are allowable under § 503(b) must be made in reference to general administrative expense jurisprudence." (emphasis added)). In *O'Brien*, the Third Circuit evaluated a break-up fee and an expense reimbursement together and determined that neither qualified as an administrative expense under section 503(b) because they were not actually necessary to preserve the value of the debtor's estate. *Id.* at 537–38 ("The record thus adequately supports the conclusion that awarding break-up fees and expenses to Calpine was not actually necessary to preserve the value of O'Brien's estate").

26. NextEra continues to argue that speculative value that was never actually realized for the estates is sufficient for this Court to award administrative expense status under section 503(b)(1). *See* Objection p. 2 (the transaction "would have realized over $9.8 billion for the estates"); Objection ¶ 9 ("had the parties' attempts to fulfill the closing conditions succeeded, the transaction would have brought the estate over $9.8 billion"). The plain language of section 503(b)(1) and established case law make clear that speculative or potential benefit to an estate is insufficient. Instead, the benefit must be both "actual" and "necessary." 11 U.S.C. § 503(b)(1)(A); *O'Brien*, 181 F.3d at 533 (requiring "an actual benefit to the estate" and a strong showing "that such costs and expenses were necessary to preserve the value of the estate assets");

reimbursement of those costs in direct contravention of the parties' agreement. *President Casinos* supports Elliott's position. In that case, the debtors sought court approval of a stalking horse agreement that included a break-up fee and a separate expense reimbursement payable only in the event the court approved a higher and better sale with another party (and that sale closes) or the debtor abandons the sale process and a competing plan of reorganization is confirmed and goes effective. 314 B.R. at 788.

*Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 866 (4th Cir. 1994) ("the mere potential of benefit to the estate is insufficient for the claim to acquire status as an administrative expense. The court's administrative expense inquiry centers upon whether the estate has received an actual benefit" (citations and internal quotations omitted)).[9]

27. As this Court has already ruled, the NextEra Expenses do not qualify as administrative expenses under section 503(b)(1). The Reconsideration Order is valid and binding and, as such, bars the relief requested in the Application. Therefore, the Movants are entitled to judgment as a matter of law.

## III. NEXTERA IS NOT ENTITLED TO A SUBSTANTIAL CONTRIBUTION CLAIM UNDER 11 U.S.C. § 503(B)(3)(D)

28. In a footnote in the Objection, NextEra asserts that it is entitled to recover the NextEra Expenses on the ground that it made a substantial contribution in these cases under section 503(b)(3)(D) of the Bankruptcy Code. Objection at 12 n.21. This argument fails because NextEra is not entitled to seek a substantial contribution claim. As discussed in the Motion, under the express language of section 503(b)(3)(D), only "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102" may apply to the court for payment of actual, necessary expenses in making a substantial contribution. 11 U.S.C. § 503(b)(3)(D); *Lebron v. Mecham Financial Inc.*, 27 F.3d 937, 943 (3d Cir. 1994); *In re S.N.A. Nut Co.*, 186 B.R. 98, 106 (Bankr. N.D. Ill. 1995) (an unsuccessful bidder "is not one of the entities described in 11 U.S.C. § 503(b)(3)(D) which has standing to bring an administrative expense claim incurred by making a substantial contribution to the case.").

[9] In support of its arguments as to potential value, NextEra cites only to *Women First*; however, as discussed above, the circumstances of that case were decidedly different than those present here. Here, NextEra is simply a potential buyer that could not consummate a transaction with the E-Side Debtors because that NextEra did not satisfy a condition to closing.

29. NextEra does not dispute this statutory prerequisite. Instead, NextEra argues that it was a creditor of EFIH "through one of its subsidiaries." Objection at 12 n.21; D.I. 12937 ¶ 5. This statement simply admits that the applicant here—NextEra—is not a creditor. The definition of "creditor" in section 101(10) of the Bankruptcy Code does not make any reference to, and section 503(b)(3)(D) does not allow, an entity borrowing the creditor status of a subsidiary or affiliate to enable it to assert a substantial contribution claim. Accordingly, to satisfy the threshold requirement under section 503(b)(3)(D), NextEra must show that ***NextEra*** is a creditor, which it has not even attempted to do. Because NextEra has not submitted any evidence supporting that it is a creditor, this Court can summarily dismiss NextEra's request for a substantial contribution claim. Regardless, even if NextEra could potentially seek relief under section 503(b)(3)(D), it has not shown that it provided a "substantial contribution" as required under applicable Third Circuit law. *Lebron*, 27 F.3d at 944.

## IV. THERE IS NO REASON TO DELAY CONSIDERATION OF THE MOTION

30. NextEra has not and cannot offer any legal justification to delay proceedings on the Application and the Motion. Movants contend that, as a matter of law and based on the indisputable facts, NextEra is not entitled to reimbursement of the NextEra Expenses as an administrative expense under sections 503(b)(1) or (b)(3)(D) of the Bankruptcy Code. The Court is able to render a decision on the Motion now without any further delay, and the pending appeal in the Third Circuit does not affect this Court's ability to rule on the Motion.

31. Moreover, consideration of the Motion now will likely stave off further delays after the Third Circuit rules on the Reconsideration Order appeal. Make no mistake, if the Reconsideration Order is affirmed on appeal, NextEra's next step will be to seek to postpone the distribution of approximately $60 million of the existing plan reserve on account of the NextEra

Expenses (or seek to impose a new reserve in such amount) until a final order is entered with respect to the Application. NextEra cannot reasonably deny that it will take such action.

32. As this Court has already recognized, the parties will not be unnecessarily burdened by resolving an Application that NextEra chose to file and that is now fully briefed. It is, moreover, sensible to do so now in order to potentially "limit the amount of time and effort that has to be spent in the future." March 28, 2018 Hr'g Tr. 17:20–25. For these reasons, the Court should move forward with consideration of the Motion and deny NextEra's request to stay these proceedings.

[*Text Continues on the Next Page*]

## CONCLUSION

For the reasons set forth herein and in the Motion, the Movants request that the Court enter an order (i) dismissing the Application and/or awarding summary judgment in the Movants' favor denying the relief requested in the Application and disallowing NextEra's request for an allowed administrative expense and (ii) granting such other and further relief as is just and proper.

Wilmington, Delaware
Date: April 18, 2018

**BAYARD, P.A.**

*/s/ Erin R. Fay*
Scott D. Cousins (No. 3079)
Erin R. Fay (No. 5268)
Evan T. Miller (No. 5364)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
scousins@bayardlaw.com
efay@bayardlaw.com
emiller@bayardlaw.com

–and–

**ROPES & GRAY LLP**
Keith H. Wofford (admitted *pro hac vice*)
Gregg M. Galardi
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Keith.Wofford@ropesgray.com
Gregg.Galardi@ropesgray.com

*Counsel for UMB Bank, N.A., as Trustee, and Elliott*