**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[2]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered) |

**SUMMARY COVER SHEET TO THE FINAL FEE APPLICATION OF
CRAVATH, SWAINE & MOORE LLP INDEPENDENT COUNSEL FOR
ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, FOR THE
PERIOD NOVEMBER 16, 2014 THROUGH MARCH 9, 2018**

| | |
|---|---|
| Name of applicant: | Cravath, Swaine & Moore LLP |
| Authorized to provide services to: | **Energy Future Intermediate Holding Company LLC**, Debtor and Debtor in Possession |
| Petition Date: | April 29, 2014 |
| Date of Order Authorizing EFIH to Employ Cravath [Docket No. 3321]: | January 16, 2015, *nunc pro tunc* to November 16, 2014 |
| Period for which compensation and reimbursement is sought in the Fee Application: | November 16, 2014 through March 9, 2018 |
| Amount of final compensation sought as actual, Reasonable, and Necessary for the Fee Period: | $5,655,576.92 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $53,853.42 |

[2] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

Total Compensation and Expense Reimbursement     $5,709,430.34
Requested for the Fee Period:

Blended rate in this application for all attorneys:     $957.31[3]

Blended rate in this application for all timekeepers:     $923.37[2]

| Prior Interim Fee Applications and Adjustments: | | | | | |
|---|---|---|---|---|---|
| | | Requested | | Approved | |
| Date [Docket No.] | Interim Fee Period | Fees | Expenses | Fees | Expenses |
| Feb. 13, 2015 [ Dkt. 3533] | *First IFP* 11/16/14 –12/31/14 | $521,822.00 | $1,486.73 | $501,822.00 | $1,486.73 |
| June 15, 2015 [ Dkt. 4764] | *Second IFP* 1/1/15 – 04/30/2015 | $1,499,619.50 | $29,477.20 | $1,479,619.50 | $28,553.37 |
| Jan. 6, 2016 [ Dkt. 7567] | *Third IFP* 5/1/15 – 8/31/2015 | $937,923.50 | $4,535.94 | $929,377.00 | $4,535.94 |
| Feb. 16, 2016 [ Dkt. 7867] | *Fourth IFP* 9/1/15 – 12/31/2015 | $872,647.50 | $8,858.86 | $867,081.12 | $8,449.68 |
| June 20, 2016 [ Dkt. 8780] | *Fifth IFP* 1/1/16 – 04/30/2016 | $500,880.00 | $3,889.29 | $500,880.00 | $3,007.64 |
| Oct. 20, 2016 [ Dkt. 9882] | *Sixth IFP* 5/1/16 – 08/31/2016 | $810,144.50 | $5,611.52 | $806,888.00 | $5,611.52 |
| Feb. 17, 2017 [ Dkt. 10860] | *Seventh IFP* 9/1/16 – 12/31/2016 | $110,114.50 | $637.68 | $108,695.50 | $637.68 |
| June 21, 2017 [ Dkt. 11376] | *Eighth IFP* 1/1/17 – 04/30/2017 | $82,815.30 | $288.52 | $82,815.30 | $288.52 |
| Oct. 20, 2017 [ Dkt. 12101] | *Ninth IFP* 5/1/17 – 08/31/2017 | $279,309.50 | $1,275.00 | $278,034.50 | $1,159.12 |
| April 19, 2018 [Dkt. 12975] | *Tenth IFP* 9/1/17 – 3/9/2018 | $100,364.00 | $123.22 | *Pending* | *Pending* |
| | | | | | |
| | | | | | |
| **Total fees and expenses approved by interim orders to date:** | | | | **$5,555,212.92** | **$53,730.20** |

---

[3] Certain of the compensation requested in Interim Applications was previously reduced by agreement or Court order, and the amounts requested in this Final Fee Application reflect those reductions. Those reductions are not reflected in this figure.

| *Summary of Past Requests for Compensation and Prior Payments* | |
|---|---|
| Total Amount of Compensation Previously Requested Under the Interim Compensation Order to Date: | $5,816,004.30 |
| Total Amount of Expense Reimbursement Previously Requested Under the Interim Compensation Order to Date: | $56,307.18 |
| Total Compensation Approved Under the Interim Compensation Order to Date: | $5,555,212.92[4] |
| Total Amount of Expense Reimbursement Approved Under the Interim Compensation Order to Date: | $53,730.20[3] |
| Total Allowed Compensation Paid to Date: | $5,555,212.92 |
| Total Allowed Expenses Paid to Date: | $53,370.20 |
| Compensation Sought in this Application Already Paid Under the Interim Compensation Order But Not Yet Allowed: | $0.00 |
| Expenses Sought In This Application Already Paid Under the Interim Compensation Order But Not Yet Allowed: | $0.00 |

DATED:  April 20, 2018

/s/    Michael Paskin
Michael Paskin (mpaskin@cravath.com)

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
+1 (212) 474-1000

*INDEPENDENT COUNSEL FOR ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC*

---

[4] Includes monthly interim fees and expenses for September 2017 through March, 2018, which as of the date of this Final Fee Application have not yet been paid.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered) |

**FINAL FEE APPLICATION OF CRAVATH, SWAINE &
MOORE LLP INDEPENDENT COUNSEL FOR ENERGY FUTURE
INTERMEDIATE HOLDING COMPANY LLC, FOR THE PERIOD
NOVEMBER 16, 2014 THROUGH MARCH 9, 2018**

Cravath, Swaine & Moore LLP ("**Cravath**"), independent counsel to debtor and debtor in possession Energy Future Intermediate Holding Company LLC ("**EFIH**" or "**Debtor**"), submits this Final fee application ("**Final Fee Application**") for allowance of compensation for professional services provided in the amount of $5,655,576.92 and reimbursement of actual and necessary expenses in the amount of $53,853.42 that Cravath incurred for the period November 16, 2014 through March 9, 2018 (the "**Fee Period**"). In support of this Final Fee Application, Cravath submits the declaration of Michael Paskin, a partner in Cravath, which is attached as **Exhibit A** and incorporated by this reference. In further support of this Final Fee Application, Cravath respectfully states as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## I.     Jurisdiction

1.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This Fee Application is a core proceeding under 28 U.S.C. § 157(b)(2).

2.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Fee Application are section 330 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2016-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**"), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 2066] (the "**Interim Compensation Order**"), and the *Stipulation and Order Appointing a Fee Committee* [Docket No. 1896] (the "**Fee Committee Order**").

## II.     Background

4.      On April 29, 2014 (the "**Petition Date**"), EFIH commenced its chapter 11 case by filing a voluntary petition in this Court under chapter 11 of the Bankruptcy Code.

5.      The Debtor operated its business and managed its property as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code through March 9, 2018.  No trustee or examiner was appointed in this case.

6.      On May 13, 2014, the Office of the United States Trustee, Region 3 formed and appointed an Official Committee of Unsecured Creditors under section 1102(a)(1) of the Bankruptcy Code. [Docket No. 420.] On October 27, 2014, the Office of the United States Trustee, Region 3 formed and appointed another Official Committee of Unsecured Creditors under section 1102(a)(1) of the Bankruptcy Code. [Docket No. 2570.]

2

7.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in all of the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

8.      On August 21, 2014, the Court entered the Fee Committee Order, appointing a fee committee (the "**Fee Committee**") to review and report, as appropriate, on interim and final fee applications filed by the Debtors' retained professionals in accordance with sections 328, 330, and 331 of the Bankruptcy Code and the Interim Compensation Order and establishing the procedures governing the Fee Committee's review of the Debtors' retained professionals applications for compensation and the resolution of any concerns raised during such review.  The Fee Committee distributed a memorandum dated October 3, 2014 regarding guidelines for expense reimbursements to those professionals retained in the Chapter 11 Cases, as well as a memorandum dated March 12, 2018 concerning guidelines for final fee applications.  Cravath believes that the relief requested in this Final Fee Application complies with the guidelines.

### III.      Cravath's Employment, Disinterestedness, and Fee Request

9.      In November 2014, the debtors in the Chapter 11 Cases (the "**Debtors**") at the direction of their disinterested directors and managers (the "**Disinterested Directors**"), retained the following legal counsel and other professionals (collectively, the "**Disinterested Director Advisors**") to represent the respective estates' interests with respect to any matters on which there is an actual conflict of interest between one or more Debtors and another of the Debtors (the "**Conflicts Matters**"):

- Proskauer Rose LLP and SOLIC Capital Advisors on behalf of EFH Corp.;

- Cravath, Swaine & Moore LLP (and, subsequently, Jenner & Block) and Goldin Associates, LLC on behalf of EFIH; and

- Munger, Tolles & Olson LLP and Greenhill & Co. LLC on behalf of EFCH, TCEH, and their Debtor subsidiaries.

10.     On December 9, 2014, the Debtors' boards adopted resolutions delegating to their respective Disinterested Directors the full authority to determine the existence of Conflicts Matters and to review and act upon Conflicts Matters, including by directing the applicable debtor to implement the Disinterested Directors' decisions.  The Debtors designed this procedure, in consultation with the Debtors' general bankruptcy counsel and the Debtors Disinterested Director Advisors, to ensure that the Debtors' corporate governance process met the highest standards.

11.     On January 16, 2015, the Court entered the Order Approving The Employment of Cravath, Swaine & Moore LLP As Counsel To Energy Future Intermediate Holding Company LLC Effective Nunc Pro Tunc to November 16, 2014 [Docket No. 3321] (the "**Employment Order**"), attached as **Exhibit B**.  The Employment Order authorizes EFIH to retain Cravath as a Disinterested Director Advisor and compensate Cravath at Cravath's hourly rates charged for services of this type and to reimburse Cravath for Cravath's actual and necessary out-of-pocket expenses incurred, subject to application to this Court in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Interim Compensation Order, and the Fee Committee Order. The terms of Cravath's engagement are detailed in the engagement letter by and between Cravath and EFIH, effective as of November 16, 2014, and attached as **Exhibit C** (the "**Engagement Letter**").

12.     To the best of the Cravath's knowledge and as disclosed in the Declaration Of Richard Levin In Support Of Application For Order Approving The Employment Of Cravath, Swaine & Moore LLP As Counsel To Energy Future Intermediate Holding Company LLC Under Sections 327(a) And 1107(b) Of The Bankruptcy Code, Effective Nunc Pro Tunc To November 16, 2014 [Docket No. 3028] (the "**Levin Declaration**"), the First Supplemental

Declaration Of Richard Levin In Support Of Application For Order Approving The Employment Of Cravath, Swaine & Moore LLP As Counsel To Energy Future Intermediate Holding Company LLC Under Sections 327(a) And 1107(b) Of The Bankruptcy Code, Effective Nunc Pro Tunc To November 16, 2014 [Docket No. 3205] (the "**First Supplemental Levin Declaration**"), the Second Supplemental Declaration of Richard Levin In Support of Application for Order Approving the Employment of Cravath, Swaine & Moore LLP as Counsel to Energy Future Intermediate Holding Company LLC Under Sections 327(a) and 1107(b) of the Bankruptcy Code [Docket No. 3782] (the "**Second Supplemental Levin Declaration**"), and the Declaration Of Michael A. Paskin In Support Of Application For Order Approving The Employment Of Cravath, Swaine & Moore LLP As Counsel To Energy Future Intermediate Holding Company LLC Under Sections 327(a) And 1107(b) Of The Bankruptcy Code [Docket No. 9208] (the "**Paskin Declaration**" and, together with the Levin Declaration, First Supplemental Levin Declaration and Second Supplemental Levin Declaration, the "**Retention Declarations"**),  Cravath is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code, and does not hold or represent an interest adverse to the EFIH's estate, as required by section 328(a) of the Bankruptcy Code and that Cravath's partners, associates and special attorneys do not hold or represent any interest adverse to EFIH or its estate, except as otherwise specified in the Retention Declarations.

13.    Cravath might have in the past represented, might currently represent, and likely in the future will represent parties in interest in this case in connection with matters unrelated to EFIH or the Chapter 11 Cases.  In the Retention Declarations, Cravath disclosed its connections to parties in interest in the EFIH case that it has been able to ascertain using its reasonable efforts.

14.     Cravath performed the services for which it is seeking compensation on behalf of EFIH and its estate and not on behalf of any committee, creditor, or other entity.

15.     Commencing in July 2015, except as stated below, Cravath submitted monthly budgets to EFIH.  During the course of the Debtor's case, the scope and extent of Cravath's work was limited and/or unpredictable during certain time periods, and therefore the preparation of monthly budgets for those periods would not have been meaningful or productive; for those periods, with the consent of the Debtor and following consultation with the Fee Committee, Cravath did not prepare monthly budgets.

16.     Cravath seeks final compensation for professional services provided to the Debtors during the Fee Period in the amount of $5,655,576.92 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $53,853.42.  During the Fee Period, Cravath attorneys and paraprofessionals worked 6,179.1 hours for which compensation is requested.

17.     Certain of Cravath's fees or expenses sought in this Final Fee Application have been previously approved by the Court.  Cravath has filed ten interim fee applications (collectively, the "**Interim Applications**") with the Court.   Cravath's First Interim Fee Application was filed February 15, 2015; the hearing on the Application was held on June 24, 2015, following which the Court issued its order allowing fees in the amount of $501,822.00 and expenses in the amount of $1,486.73. [Docket No. 4843.] Cravath's Second Interim Fee Application was filed on June 15, 2015 [Docket No. 4764]; the hearing on the Application was held on October 26, 2015, following which the Court issued its order allowing fees in the amount of $1,479,619.50 and expenses in the amount of $28,553.37. [Docket No. 6667.] Cravath's Third Interim Fee Application was filed on October 27, 2015 [Docket No. 6704], and an Amended

Third Interim Fee Application was filed on January 6, 2016 [Docket No. 7567]; the hearing on Cravath's Third Interim Application was held on February 18, 2016, following which the Court entered its order allowing fees in the amount of $929,377.00 and reimbursement of $4,535.94 in expenses [Docket No. 7883]. Cravath's Fourth Interim Fee Application was filed on February 16, 2016 [Docket No. 7867]; the hearing on Cravath's Fourth Interim Application was held on June 27, 2016, following which the Court entered its order allowing fees in the amount of $867,081.12 and reimbursement of $8,449.68 in expenses [Docket No. 8824].  Cravath's Fifth Interim Fee Application was filed on June 15, 2016 [Docket No. 8780]; the hearing on Cravath's Fifth Interim Fee Application was held on October 27, 2016, following which the Court entered its order allowing fees in the amount of $500,800.00 and reimbursement of $3,007.64 in expenses [Docket No. 9963].  Cravath's Sixth Interim Fee Application was filed on October 20, 2016 [Docket No. 9882]; the hearing on Cravath's Sixth Interim Fee Application was held on March 28, 2017, following which the Court entered its order allowing fees in the amount of $806,888.00 and reimbursement of $5,622.22 in expenses [Docket No. 11071].   Cravath's Seventh Interim Fee Application was filed on February 17, 2017 [Docket No. 10860]; the hearing on Cravath's Seventh Interim Fee Application was held on July 10, 2017, following which the Court entered its order allowing fees in the amount of $108,695.50 and reimbursement of $637.68 in expenses [Docket No. 11437].  Cravath's Eighth Interim Fee Application was filed on June 21, 2017 [Docket No. 11376]; the hearing on Cravath's Eighth Interim Fee Application was held on November 3, 2017, following which the Court entered its order allowing fees in the amount of $108,695.50 and reimbursement of $637.68 in expenses [Docket No. 12171]. Cravath's Ninth Interim Fee Application was filed on October 20, 2017 [Docket No. 12101]; the hearing on Cravath's Ninth Interim Fee Application was held on February 14, 2018, following

which the Court entered its order allowing fees in the amount of $279,309.50 and reimbursement of $1,275.00 in expenses [Docket No. 12632]. Cravath's Tenth Interim Fee Application was filed on April 19, 2018 [Docket No. 12975]; the hearing on Cravath's Tenth Interim Application has not yet been scheduled.

18.    Cravath has not received payment or promise of payment from any source other than EFIH for services provided or to be provided in any capacity whatsoever in connection with the EFIH case.

19.    Cravath does not share fees with any attorneys except to the extent permitted by section 504 of the Bankruptcy Code.

20.    By this Final Fee Application, and to the extent not already paid by the time of the hearing on this Final Fee Application, Cravath seeks approval and payment of all amounts, including any remaining 20% holdback on fees incurred during the Fee Period, for which it has sought compensation.

## IV.    Fees and Expenses Incurred During Fee Period

### A.    Customary Billing Disclosures

21.    Cravath's hourly rates are set at a level designed to compensate Cravath fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. The hourly rates and corresponding rate structure utilized by Cravath in this cases are equivalent to the hourly rates and corresponding rate structure used by Cravath for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required. The rates and rate structure reflect that such complex matters typically are national in scope and typically involve great complexity, high stakes, and intense time pressures.

**B.      Fees Incurred During Fee Period**

22.    In the ordinary course of Cravath's practice, Cravath maintains records of the time spent on the professional services required by EFIH and its estate. **Exhibit D** to this Final Fee Application is a summary of fees incurred and hours worked during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time worked and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each such attorney and paraprofessional at Cravath's current billing rates; and

- a calculation of the total compensation requested by Cravath.

**C.      Expenses Incurred During Fee Period**

23.    In the ordinary course of Cravath's practice, Cravath maintains a record of expenses incurred in rendering professional services required by EFIH and its estate and for which reimbursement is sought. **Exhibit E** to this Final Fee Application is a summary for the Fee Period of the total amount of expenses for which Cravath seeks reimbursement with respect to each category of expenses. The out-of-pocket disbursement sum is broken down into categories of charges.

## V.      Proposed Payment Allocation

24.    In accordance with paragraph 2(b) of the Interim Compensation Order, all of the fees and expenses that Cravath seeks in this Final Fee Application are allocated to EFIH.

## VI.    Summary of Legal Services Provided During the Fee Period

25.    Prior to the Petition Date, the Debtors had entered into a Restructuring Support and Lock-Up Agreement with certain stakeholders.  (Docket No. 98, Ex. D.)  That agreement contemplated a new-money investment in reorganized EFH in the form of a second lien DIP facility that would have mandatorily converted into 60% of the reorganized debtors' equity.  This contemplated transaction and a tax-free spinoff of reorganized TCEH were principal features of the agreement.

26.    During the summer of 2014, a bidding war broke out for the opportunity to fund the second lien DIP facility.  The interest in owning reorganized EFH was not limited to creditors; the Debtors also received interest from third-party strategic and financial bidders.  The Debtors thereafter terminated the pre-petition restructuring support agreement (Docket No. 1697) and embarked on a marketing process for their economic interests in Oncor Electric Delivery Company LLC ("**Oncor**").

27.    In November 2014, EFIH, at the direction of its disinterested manager Charles Cremens, retained Cravath (and subsequently Jenner & Block) and Goldin Associates, LLC to represent EFIH's interests with respect to any Conflicts Matters.  The EFIH board also adopted a resolution delegating to its disinterested manager the full authority to determine the existence of Conflicts Matters and to review and act upon Conflicts Matters, including by directing EFIH to implement its disinterested manager's decisions.

28.    For the next 3+ years, Cravath provided extensive professional services to EFIH and its disinterested manager.   As more fully detailed in the Interim Applications and below, Cravath's work included extensive services with respect to Conflict Matters and the resolution of claims by and among the Debtors' estates, consideration of complex tax issues, and numerous

services related to the more than one dozen plans proposed and/or filed during the course of EFIH's bankruptcy case.

29.     In May 2015, Richard Levin, who had been the lead Cravath bankruptcy attorney working on this matter, joined Jenner & Block ("**Jenner**").  Jenner thereafter was retained to also provide services to EFIH through its disinterested manager.  Cravath remained responsible for tax, mergers and acquisition, transactional and certain litigated matters, while Jenner became responsible for restructuring, bankruptcy and related work.  Cravath and Jenner carefully coordinated their efforts to avoid duplication of effort and services, just as Cravath had done while Mr. Levin was still at Cravath.

30.     Cravath has established, in accordance with its internal billing procedures, subject matters categories (each, a "**Matter Category**") for keeping time records for the work performed for EFIH.  A schedule setting forth a description of each Matter Category utilized in this case, the number of hours worked by Cravath attorneys and paraprofessionals for each Matter Category, and the aggregate fees associated with each Matter Category, is attached as **Exhibit G**. Cravath's detailed records of time worked providing professional services to EFIH and its estate, and Cravath's detailed records of expenses incurred during the Fee Period in the rendition of professional services to EFIH and its estate were attached to the interim applications previously filed with the court.  In addition, Cravath's records of expenses incurred during the Fee Period in the rendition of professional services to EFIH and its estate were attached to the interim applications previously filed with the Court as attachments to the Interim Applications.[2]

---

[2] The Fee Committee has indicated that copies of these voluminous, previously-filed detailed time and expense records do not need to be re-filed with this Final Fee Application.

31.     The following is a summary, by Matter Category, of the professional services provided by Cravath during the Fee Period. This summary is organized in accordance with Cravath's internal system of matter numbers.

32.     In connection with the Interim Applications, Cravath agreed to reduce certain of its interim requests for compensation. Because those agreed-upon reductions were not necessarily tied to specific compensation requests, the hours and fee requests summarized in the Matter Categories below do not reflect any agreed-upon or Court-ordered interim reductions. However, the aggregate amount sought in this Final Application, including in the Summary Cover Sheet to the Final Fee Application, reflects all interim reductions in compensation that were agreed to by Cravath and/or ordered by the Court.

**1.      Chapter 11 General and Administrative**

*Fees: $224,740.00      Total Hours: 197.3*

33.     Because Cravath was not retained as independent counsel to EFIH (acting through its disinterested manager) until the Debtors' cases were well underway, Cravath's initial work included the need to familiarize itself with the complex relevant background facts, legal issues and the parties' positions.

34.     Cravath devoted substantial time to reviewing the case file, board minutes, various memoranda generated by the Debtors, by Kirkland & Ellis LLP ("**Kirkland**"), and by the Debtors' other counsel, meeting with the EFIH disinterested manager, attending briefing sessions for the Conflicts Matters advisers hosted by Kirkland, and meeting with EFIH constituents. Cravath also attended hearings before this Court and participated in coordination calls and meetings during the Fee Period.

35.     More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously filed with the Court.

**2.     Governance**

*Fees: $63,707.00        Total Hours: 59.8*

36.     At the outset of its engagement, Cravath needed to address corporate governance issues to fulfill its role as Conflicts Matter counsel. It was necessary to establish procedures for identifying and determining and then handling Conflicts Matters in a way that preserved the disinterested manager's independence. It was also necessary to make the procedures consistent among the three companies which had employed Conflict Matters counsel and among the advisors. Accordingly, Cravath worked with both Proskauer Rose LLP (independent counsel for EFH) and with Munger, Tolles & Olson LLP (independent counsel for EFCH/TCEH), as well as with Kirkland, to develop and coordinate such procedures. Cravath worked with the other advisers on board resolutions, a common interest agreement and other confidentiality agreements, and on revising its employment agreement and application to establish sound corporate governance procedures, which were then presented to the respective boards and adopted.

37.     More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously filed with the Court.

**3.     Plan and Disclosure Statement**

*Fees: $3,073,057.50        Total Hours: 3,374.1*

38.    These Chapter 11 Cases involved a remarkable number of plans of reorganization and disclosure statements, which were prepared and heavily negotiated in response to unpredictable developments during the course of the Chapter 11 Cases.

39.    During the Fee Period, dozens of draft plans of reorganization and related disclosure statements were considered by the Chapter 11 Debtors, all of which implicated Conflicts Matters.  Each of the plans was complicated, involving billions of dollars of debt layered among different Debtors' estates, complex tax issues, and the resolution of billions of dollars of potential intercompany claims.  Numerous plans were filed, and four different plans were confirmed by the Court during course of the Chapter 11 Cases, two of which could not be consummated as a result of regulatory conditions.

40.    Following the failed 2014 Oncor bidding process described below and an extensive series of negotiations, in 2015 the Debtors and a number of their stakeholders entered into a plan support agreement with Hunt Consolidated, Inc. and certain of its co-investors (collectively, "**Hunt**").  That agreement contemplated a merger transaction in which EFIH's interest in Oncor would be converted to a real estate investment trust ("**REIT**"). The Hunt merger was conditioned upon, among other things, approval by the Public Utility Commission of Texas (the "**PUCT**").

41.    On December 9, 2015, this Court confirmed a plan of reorganization which incorporated the Hunt REIT/merger transactions.  However, on March 24, 2016, the PUCT entered an order that did not include all of the approvals required to consummate the Hunt merger.  Shortly thereafter, the Hunt merger transaction was terminated, and the Hunt plan was not consummated.

42.     Following the failure of the Hunt plan, the EFH and EFIH Debtors filed a revised chapter 11 plan reflecting either a standalone equitization or an investment by existing creditors and/or third-parties to purchase EFH/EFIH's economic interests in Oncor.

43.     In July of 2016, the Debtors proposed a merger transaction with NextEra Energy, Inc. ("**NEE**"), a previous bidder for Oncor's assets, whereby NEE would acquire the EFH and EFIH Debtors' economic interests in Oncor through a tax-efficient merger.   The Debtors thereafter filed an amended plan incorporating the terms of the proposed NEE transaction.

44.     A condition precedent to the effective date of the NEE Plan was that the orders entered by the Court disallowing certain makewhole claims will not have be stayed, reversed, or remanded on appeal.   However, on November 17, 2016, the United States Court of Appeals for the Third Circuit issued an opinion reversing this Court's decisions, requiring the Debtors to file yet another revised plan of reorganization and to resolicit votes on an amended NEE plan.[3]

45.     On February 17, 2017, the Court confirmed the amended NEE plan.   However, on April 13, 2017, the PUCT entered an order finding that the transactions contemplated by the NEE plan were not in the "public interest," and as result the NEE plan also could not be consummated.

46.     In June 2017, Berkshire Hathaway Energy Company ("**BHE**") submitted a proposal to acquire the EFH/EFIH Debtors' economic interests in Oncor through a merger transaction.   The EFH and EFIH Debtors determined it was in their best interests to terminate the NEE merger agreement and instead seek confirmation of a plan of reorganization implementing a BHE merger transaction.

---

[3] In the interim, the TCEH Debtors and EFH Shared Services Debtors proposed their own stand-alone plan of reorganization.   That plan was confirmed by the Court, and was consummated on October 3, 2016.

47.     In August 2017, while proceeding to confirmation of a plan implementing the merger, the EFH and EFIH Debtors received an alternative transaction proposal from Sempra Energy ("**Sempra**") which largely preserved the structure of the BHE transaction but contemplated a materially increased purchase price. Following additional negotiations with key stakeholders, the EFH and EFIH Debtors terminated the BHE merger agreement, entered into a merger agreement with Sempra, and proposed a plan of reorganization to implement the Sempra merger transaction.  Sempra and Oncor thereafter again sought PUCT approval for a merger transaction proposed in a plan.

48.     On February 15, 2018, the PUCT noted in an open meeting that all objections to regulatory approval had been resolved, and instructed PUCT staff to draft an order approving the Sempra transaction.  The Court thereafter confirmed the Sempra plan on February 27, 2018. Final PUCT approval for the transaction was obtained on March 8, 2018, and the Sempra plan was consummated the next day.

49.     Cravath was heavily involved in the negotiation and consideration of all plans proposed during the Fee Period. On behalf of EFIH with respect to Conflict Matters, and in coordination with Kirkland and Jenner, Cravath evaluated and commented on transactional documents described in plan and plan amendments, evaluated EFIH's options and advised EFIH's disinterested manager concerning allocation disputes that appear to be Conflict Matters, and advised the EFIH disinterested manager concerning various offers received by the Chapter 11 Debtors.

50.     Cravath also heavily assisted in the preparation of the EFIH disinterested manager for various depositions; participated in the depositions of several other key witnesses; participated in meetings and negotiations concerning the objections of Elliot Associates, L.P. and

certain affiliates (collectively, "**Elliott**") to the BHE merger transaction; and attended meetings concerning related matters, many by telephone.

51.     More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously filed with the Court.

### 4.    Intercompany Claims

*Fees: $652,867.50     Total Hours: 841.4*

52.     In parallel with negotiations over the Hunt plan, the Debtors' Disinterested Directors, in consultation with their respective Disinterested Director Advisors, negotiated a settlement resolving billions of dollars in potential litigation related to three broad categories of prepetition claims: (a) inter-Debtor Claims; (b) claims against the TCEH first lien creditors; and (c) claims against the Debtors' sponsors, directors and officers.  The settlement remained binding on all parties notwithstanding the failure of the Hunt plan and served as a foundation for subsequent successful plan negotiations.

53.     Cravath and Goldin, at the direction of the Disinterested Directors, conducted extensive diligence on inter-Debtor transactions and relationships—diligence that started almost immediately after their retention in December 2014.  Initially, Cravath met with Kirkland to learn of the work that the Debtors' other counsel had done to date and of the materials that had been assembled and were available for review. Based on an initial review of issues and claims that other counsel had identified, Cravath developed a scope of work and a strategy for its investigation. Cravath then reviewed memoranda analyzing and evaluating intercompany claims prepared by the Debtors' other counsel and began its own extensive factual investigation and legal research on potential claims.

54.     Cravath conducted extensive factual investigation into matters relevant to potential intercompany claims and defenses. It reviewed, among other things, public securities law filings, underlying agreements and internal company memoranda, and due diligence materials that Kirkland had assembled in a data for parties in interest in the cases.  Cravath reviewed analyses of taxes that the Debtors had paid or accrued and how the Debtors had allocated items of tax and tax attributes among the various Debtors. It conducted interviews with key witnesses and reviewed transcripts and summaries of prior interviews. It worked with EFIH's Conflicts Matters financial advisor to develop financial analyses that are relevant to the evaluation of potential intercompany claims and defenses.

55.     Cravath also conducted extensive legal research relevant to potential intercompany claims and defenses, including research on nonbankruptcy fraudulent transfer law, avoiding and recovery powers under the Bankruptcy Code, statutes of limitations and conflict of laws issues under state and federal law. It evaluated tax law issues relevant to intercompany claims under the Debtors' Tax Sharing Agreement.

56.     Based on its factual and legal research, Cravath analyzed and evaluated potential intercompany claims and defenses and prepared an extensive written presentation for EFIH's disinterested manager, describing each such claim and defense that was either colorable or that had been raised in the cases by another party in interest and evaluating the potential risks or benefits to EFIH if such claims or defenses were pursued in litigation.

57.     After completing this work, Cravath met with EFIH's Disinterested Manager to present its written analysis and the results of its research and to advise the Disinterested Manager on potential negotiating positions and strategies regarding the claims and defenses and on how they might affect the outcome of the Debtors' chapter 11 cases.

58.     Cravath then prepared written presentations for and engaged with other Conflict Matters counsel to present claims that EFIH might have against the Debtors that they represented and defenses that EFIH might have against claims the other Debtors might assert against EFIH. Cravath engaged in several in-person meetings, including a two-day meeting in Dallas, and telephone conferences and in correspondence with the other counsel to negotiate a resolution of all potential intercompany claims.

59.     The Disinterested Director Advisors' exhaustive, arm's-length negotiations culminated in a comprehensive settlement of all prepetition inter-Debtor claims under which all inter-Debtor claims were released in exchange for an allowed $700 million general unsecured claim by TCEH against EFH, plus certain additional potential recoveries by TCEH against EFH.

60.     Had they not been resolved, the claims that were released in the inter-Debtor settlement would have given rise to lengthy, complex, and contentious litigation which would have prevented the negotiation and confirmation of the plans described above.  Thus, the work of Cravath and the other EFIH Disinterested Director Advisors was critical to the Debtors' ultimate successful emergence from bankruptcy.

61.     More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously filed with the Court.

**5.    Tax Issues**

*Fees: $1,035,674.50   Total Hours: 996.8*

62.     The Debtors' Chapter 11 Cases involved complex and difficult tax issues on an extraordinary scale which loomed large over the entire case, including all plan negotiations.

63.     Cravath reviewed and analyzed all tax issues that could directly or indirectly affect EFIH and its emergence from chapter 11, including numerous proposed sale, new equity

investment and spin-off proposals, the tax effects of proposed plans, and the two tax sharing agreements among the Debtors and the related disputes under the Competitive Tax Sharing Agreement. Cravath conducted factual and legal research on all these issues, including net operating loss carryforwards, assets' tax bases, different Debtor's potential tax liabilities, and the likely effects of a tax deconsolidation. Cravath also analyzed the Debtors' Private Letter Ruling requests to the Internal Revenue Service.

64.     The tax issues in these Chapter 11 Cases could have had a material negative impact on recoveries of parties in interest, and the minimization of taxes and the potential future tax consequences of any restructuring was at all times a major goal. Consistent with that goal, during the Fee Period, Cravath devoted substantial time to the tax issues that could affect EFIH creditor recoveries. It analyzed net operating loss carryovers, tax basis of assets, alternative ways to accomplish a tax-free restructuring, and the effect of various plan proposals and alternative reorganization structures provided by different parties in interest and purchase proposals from bidders on these issues.

65.     Cravath conducted both factual and legal research on tax issues, participated in meetings and conference calls with other counsel in the Chapter 11 Cases on these issues, prepared memoranda for EFIH's disinterested manager to assist him in his evaluation of restructuring alternatives and strategies, and reviewed Kirkland's tax-related analyses and communications with the Internal Revenue Service, among others, for accuracy and completeness and to ensure they were consistent with the interests of EFIH.

66.     Cravath also analyzed and commented on issues arising under the Debtors' Competitive Tax Sharing Agreement and its effect on claims and recoveries in the Chapter 11 Cases, including on potential intercompany claims. Cravath reviewed and commented on an

investigation conducted by an independent accounting firm on the historical allocation of taxes and tax attributes among the various Debtors that was commissioned to assist in the interpretation of the Tax Sharing Agreement.

67.    More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously filed with the Court.

**6.    Oncor Sale Process**

*Fees: $463,030.50    Total Hours: 443.0*

68.    One of the principal Conflicts Matters for which EFIH's and its disinterestred manager employed Cravath was the Oncor sale process. Immediately after its employment, Cravath began work with Kirkland on this matter. Cravath obtained information about Oncor and the sale process from the Debtors and their advisers, participated in negotiations with Kirkland and the other Conflicts Matters counsel over the form of the order and the bid procedures consistent with proper corporate governance in light of the conflicts among the Debtors, and advised EFIH on the sale process and approval.

69.    Once the bid procedures order was entered, Cravath participated with Kirkland and the other Conflicts Matters counsel and with EFIH's Conflict Matters financial adviser in the analysis and review of various acquisition structures that could generate more value for distribution to parties in interest. Cravath spent substantial time reviewing a REIT structure for the transaction, conducting tax, regulatory and merger & acquisition structure research and analysis and preparing and presenting to EFIH's Disinterested Manager the results and participating with him in consideration of the risks and benefits and strategies that might be pursued.

70. Cravath also accompanied EFIH's Disinterested Manager in a meeting with manager of Oncor Electric Delivery Co. to understand from Oncor's perspective the issues that would be raised by an acquisition transaction, including under a REIT structure, and researched the legal and contractual issues that could affect such a transaction.

71. Cravath reviewed and analyzed bids as they were received and provided comments to Kirkland on the draft documents for inclusion in responses to bidders. Similarly, Cravath participated in negotiating sessions with the bidders to protect the interests of the EFIH estate.

72. Following two rounds of bidding, numerous discussions and the exchange of revised documentation with bidders, the Debtors were unable to reach agreement on a sufficiently attractive stalking horse bid and opted not to move forward with the stalking horse bid sale process.

73. More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously filed with the Court.

**7.    Employment and Fee Applications**

*Fees: $103,688.00          Total Hours: 95.4*

74. Cravath initially prepared its own employment application, including declarations, which required, in addition to ordinary conflicts checks for which Cravath did not charge EFIH, discussions with Kirkland, other independent counsel, and the Office of the United States Trustee about the appropriate scope of additional "connections" research, performed the additional research, and evaluated and disclosed the results. Cravath also worked with other independent counsel and Kirkland to ensure that scope of Cravath's engagement was consistent with the Court's prior orders and with each other counsel's scope of engagement.

75. Cravath also advised EFIH with respect to the employment of Goldin Associates LLC as financial advisor and assisted Goldin in the preparation and filing of its employment application, which was also granted after the Fee Period.

76. Cravath also familiarized itself with and set up internal procedures to comply with the Interim Compensation Order and the Fee Committee Order, which impose requirements on Cravath's record keeping and billing in addition to those with which Cravath ordinarily complies for its non-fee application clients.

77. Following Jenner's retention after Mr. Levin joined that firm, Jenner assumed primarily responsibility for bankruptcy retention and compensation issues related to both law firms retained to represent EFIH, through its disinterested manager.

78. More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously filed with the Court.

**8.    Non-Working Travel**

*Fees: $96,010.50        Total Hours:  168.4*

79. Cravath lawyers traveled numerous times to and from New York for hearings in Delaware, meetings in Dallas and Chicago, and other out-of-town travel.  A significant amount of that time was spent working on EFIH or other matters; the time reflected in this category consists of non-productive travel time that was not billed to EFIH or other clients. Fees in this Matter Category are charged at 50% of the rates otherwise charged in this case.

80. More detailed descriptions of the travel recorded in this Matter Category, as well as the detailed time records for this Matter Category, are included in the ten Interim Applications previously filed with the Court.

9.      **Claims Litigation**

*Fees: $2,865.00*              *Total Hours: 2.9*

81.     Cravath examined issues related to the adversary proceeding that EFIH filed on December 16, 2014 against UMB Bank, N.A., as Indenture Trustee for the EFIH unsecured 11.25%/12.25% Senior Toggle Notes Due 2018 for a declaratory judgment on the allowability of makewhole and postpetition interest claims against EFIH, and advised the EFIH disinterested manager on potential conflict matters that could arise in connection with the adversary proceeding.

## VII.      Actual and Necessary Expenses Incurred by Cravath

82.     As summarized in Exhibit E, Cravath has incurred a total of $53,853.42 in expenses on behalf of EFIH during the Fee Period for which it seeks compensation.  These charges are intended to reimburse Cravath's direct costs that are not included in Cravath's hourly billing rates. Only clients who actually use services of the types set forth in Exhibit E of this Final Fee Application are separately charged for such services.

## VIII.      Cravath's Requested Compensation and Reimbursement Should be Allowed

83.     As explained below, Cravath submits that the services for which it seeks compensation in this Final Fee Application were, at the time provided, necessary for and beneficial to the EFIH and its estate and were provided to protect and preserve the EFIH estate. Cravath further believes that it performed the services for EFIH economically, effectively, and efficiently, and they benefited EFIH and its constituents. Cravath further submits that the compensation requested is reasonable in light of the nature, extent, and value of such services to EFIH and its estate and all parties in interest. Accordingly, Cravath submits the compensation sought in this Final Fee Application is warranted and should be approved.

**A.      Reasonable and Necessary Fees Incurred in Providing Services to the Debtors**

84.      Section 330(a)(1) of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered … and reimbursement for actual, necessary expenses." Section 330(a)(3) sets forth the criteria for such an award:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)      the time spent on such services;
>
> (B)      the rates charged for such services;
>
> (C)      whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)      with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)      whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

85.      As analyzed below, Cravath submits the elements governing awards of compensation justify the allowance requested.

**1.      The Time and Labor Required**

86.      During the Fee Period, Cravath's partners, associates, and paraprofessionals spent 6,179.1 hours in providing professional services for EFIH.  Cravath attempted to coordinate its efforts with Kirkland and Jenner to prevent duplication of efforts and thereby not spend more

time than required. Cravath required this amount of time to research and analyze the numerous, complex issues in the Chapter 11 Cases, to advise its client with respect to the issues, to participate in negotiations with other parties in interest in these Chapter 11 Case, and to perform the other tasks described above.

## 2.    The Rates Charged for Such Services

87.    During the Fee Period, Cravath's hourly billing rates ranged from $960.00 to $1,300.00 per hour for partners, from $560.00 to $870.00 for regular associates, from $580.00 to $1,125.00 for senior and specialist associates, $505.00 for discovery specialist attorneys, $370.00 for discovery review attorneys, and from $255.00 to $355.00 for paraprofessionals. Based on the recorded hours expended by Cravath's attorneys and paraprofessionals, the average hourly billing rate for Cravath's services was $923.37.

88.    Cravath's hourly rates are set at a level designed to compensate Cravath fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

89.    The hourly rates and corresponding rate structure that Cravath charges in this case are equivalent to or less than the hourly rates and corresponding rate structure that Cravath charges for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required.

## 3.    The Necessity of the Services and the Benefit to the Estate

90.    The services Cravath provided to EFIH have conferred substantial benefit on EFIH's estate and were necessary because EFIH needed independent counsel to advise and represent it on Conflict Matters. Without independent counsel, EFIH would have found it

difficult, if not impossible, to protect its interests vis-a-vis the other Debtors in the Chapter 11 Cases.

4.      **The Reasonableness of the Time Spent, Based on the Complexity, Importance, Nature of the Issues**

91.     Cravath performed the services in a reasonable amount of time, given the complexity of the issues involved and the various intercompany legal issues facing EFIH. Cravath's detailed time records show that the time spent on each of the matters was necessary and appropriate to advising and representing EFIH on conflict matters.

5.      **The Experience, Reputation, and Ability of the Attorneys Providing Services**

92.     Cravath attorneys have achieved a high degree of expertise and positive reputations in their respective fields. Cravath's Corporate (including its Merger & Acquisition Practice), Litigation, and Tax Departments frequently receive recognition for their skill and achievements, and Cravath is frequently cited as one of the leading U.S. law firms in these fields.

6.      **Customary Compensation**

93.     Cravath relies on the Court's experience and knowledge with respect to the compensation awards in similar cases as well as for other counsel in these Chapter 11 Cases. In addition, as noted above, the compensation Cravath seeks in this Final Fee Application is comparable to the compensation it would have sought for comparable work outside of a chapter 11 case.

94.     Cravath submits that the compensation requested is reasonable under all the factors considered under section 330 of the Bankruptcy Code and that the factors justify the allowance in full of Cravath's compensation and reimbursement request.

**B.      Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors**

95.      For the Fee Period, Cravath requests reimbursement of $53,853.42 for reasonable and necessary costs and expenses incurred on behalf of EFIH.

96.      Cravath's normal billing rates do not take these costs and expenses into consideration. Rather, Cravath bills each cost and expense to the applicable client. Because of the disparity between the different clients' requirements for expenses such as travel, computer-assisted research, teleconference services, postage, courier and messenger services, and photocopying, it is difficult to charge costs and expenses fairly and equitably by including them in Cravath's ordinary billing rates. Accordingly, Cravath generally charges each client for such costs and expenses separately, in each case, at Cravath's costs.

97.      Cravath does not include the amortization of the cost of any investment, equipment, or capital outlay in its charges for these services.

98.      Under Rule 2016-2 of the Local Bankruptcy Rules, Cravath represents that its rate for duplication for black-and-white copies is $0.10 per page and for color copies is $0.50 per page, there is no charge for telecopier transmissions, and there is no surcharge for computer-assisted research.

99.      Any services billed by a third-party vendor, with the exception of certain computer-assisted research charges, are charged to EFIH in the amount billed to and paid by Cravath. Like many large law firms, Cravath has negotiated a special arrangement with computerized research companies under which Cravath pays a flat rate monthly fee for computerized research services. Consistent with its general policy of billing out-of-pocket expenses only to clients for which the use of such services is required, Cravath separately charges each client for computer-assisted research. To account for such charges while passing through Cravath's cost savings resulting from its special arrangements, Cravath charges those

28

clients for which such services are required at a reduced rate that is less than the rate charged by the computerized research companies to the general public for such services. These charges are intended to cover Cravath's direct costs for computerized research.

100.    Cravath has made reasonable efforts to minimize its costs and expenses in the Chapter 11 Cases. Each of the costs and expenses Cravath has incurred in providing professional services to EFIH was necessary, reasonable, and justified under the circumstances to serve the needs of EFIH and its estate.

## IX.    Statement by Cravath Under ¶ C(5) of the U.S. Trustee Guidelines

101.    Cravath did not agree to any variations from, or alternatives to, its standard or customary billing rates, fees or terms for services pertaining to the engagement that were provided during the Fee Period, except as required by the U.S. Trustee Guidelines and the Fee Committee guidelines.

102.    As noted above, with the consent of the Debtor and following consultation with the Fee Committee, Cravath did not prepare monthly budgets for certain periods of time during which the scope and extent of Cravath's work was limited and/or unpredictable.  With respect to the time periods for which budgets were submitted and any materials variations existed between the budgeted and actual amounts, Cravath or its representatives had general discussions with the Debtor and/or Fee Committee concerning the reasons for variations, including the difficulty in accurately budgeting for Cravath's work.

103.    None of the professionals included in this Application varied their hourly rate based on the geographic location of the Chapter 11 Cases.

104.    The Application does not include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices.

105.    The Application does not include time or fees for reviewing time records to redact any privileged or other confidential information.

106.    The rates charged by Cravath for certain of its attorneys increased during the course of the Debtor's case, typically at the beginning of a calendar year.  The Interim Applications previously filed by Cravath take into account those rate increases.  Cravath's engagement letter with EFIH provides that Cravath may change its hourly base rates each year, typically as of January

## X.    Reservation of Rights and Notice

107.    It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Final Fee Application. Cravath reserves the right to amend its Final Fee Application to include such amounts.

108.    EFIH has provided notice of this Final Fee Application to: (a) the U.S. Trustee; (b) counsel to the agent of the EFIH First Lien DIP Facility; (c) counsel to the agent of the TCEH DIP Facility; (d) counsel to the Creditors' Committees; and (e) the Fee Committee (collectively, the "**Notice Parties**").

## XI.    No Prior Request

109.    The compensation and expense reimbursement sought in this Final Fee Application has been the subject of the Interim Applications.  However, no prior application for final approval of compensation or reimbursement of expenses has been made to this or any other court.

WHEREFORE, Cravath respectfully requests that the Court enter an order (a) awarding Cravath final compensation for professional and paraprofessional services provided during the Fee Period in the amount of $5,655,576.92 and reimbursement of actual, reasonable and necessary expenses incurred in the Fee Period in the amount of $53,853.42; (b) authorizing and

directing EFIH to remit payment to Cravath for such fees and expenses; (c) authorizing and directing the payment of any amounts previously approved by the Court as to which payment has been withheld; and (d) granting such other relief as is appropriate under the circumstances.

DATED: April 20, 2018

/s/    *Michael Paskin*
    Michael Paskin
    (mpaskin@cravath.com)

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
+1 (212) 474-1000

*INDEPENDENT COUNSEL FOR ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC*