## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[2]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered) |

## SUMMARY COVER SHEET TO THE FINAL FEE APPLICATION OF JENNER & BLOCK LLP INDEPENDENT COUNSEL FOR ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, FOR THE PERIOD FROM MAY 18, 2015 THROUGH MARCH 9, 2018

| | |
|---|---|
| Name of applicant: | Jenner & Block LLP |
| Authorized to provide services to: | Energy Future Intermediate Holding Company LLC, Debtor and Debtor in Possession |
| Petition Date: | April 29, 2014 |
| Date of Order Authorizing EFIH to Employ Jenner [Docket No. 4945]: | July 8, 2015, *nunc pro tunc* to May 18, 2015 |
| Period for which compensation and reimbursement is sought in the Fee Application: | May 18, 2015 through March 9, 2018[3] |
| Amount of final compensation sought as actual, reasonable, and necessary for the Fee Period: | $1,817,193.50[2] |

---

[2] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[3] Includes compensation for services performed after the Effective Date related to the preparation of fee applications and miscellaneous plan consummation-related matters, estimated to be $20,000.00.

Amount of final expense reimbursement sought as actual, reasonable, and necessary, for the Fee Period:  $28,671.30

Total Compensation and Expense Reimbursement Requested for the Fee Period:  $1,825,864.80

Blended rate in this application for all attorneys:  $1,024.45 / hour

Blended rate in this application for all timekeepers:  $1,022.00 / hour

This is a ***final*** application.

| Prior Interim Fee Applications and Adjustments: | | | | | |
|---|---|---|---|---|---|
| | | Requested | | Approved | |
| Date [Docket No.] | Interim Fee Period | Fees | Expenses | Fees | Expenses |
| Oct. 22, 2015 [ Dkt. 6567] | *First IFP* 5/18/15 –8/31/15 | $425,407.50 | $5,743.56 | $424,647.50 | $5,446.69 |
| Feb. 16, 2016 [ Dkt. 7861] | *Second IFP* 9/1/15 – 12/31/2015 | $281,897.50 | $10,929.30 | $281,802.50 | $10,157.44 |
| June 15, 2016 [ Dkt. 8735] | *Third IFP* 1/1/16 – 4/30/2016 | $237,948.75 | $3,635.99 | $237,948.75 | $3,635.99 |
| Oct. 17, 2016 [ Dkt. 9824] | *Fourth IFP* 5/1/16 – 8/31/2016 | $178,922.25 | $4,265.24 | $178,442.25 | $3,411.59 |
| Feb. 16, 2017 [ Dkt. 10843] | *Fifth IFP* 9/1/16 – 12/31/2016 | $109,006.25 | $1,141.50 | $108,518.75 | $1,141.50 |
| June 15, 2017 [ Dkt. 11354] | *Sixth IFP* 1/1/17 – 4/30/2017 | $55,877.50 | $88.92 | $55,877.50 | $88.92 |
| Oct. 17, 2017 [ Dkt. 12069] | *Seventh IFP* 5/1/17 – 8/31/2017 | $430,151.25 | $3,172.83 | $415,924.25 | $3,172.83 |
| April 19, 2018 [ Dkt. 12974] | *Eighth IFP* 9/1/17 – 3/9/2018 | $94,032.00 | $1,616.34 | *Pending* | *Pending* |
| Total fees and expenses approved by interim orders to date: | | | | **$1,703,161.50** | **$27,054.96** |

5

| Summary of Past Requests for Compensation and Prior Payments | |
|---|---|
| Total Amount of Compensation Previously Requested Under the Interim Compensation Order to Date: | $1,907,275.00 |
| Total Amount of Expense Reimbursement Previously Requested Under the Interim Compensation Order to Date: | $32,210.02 |
| Total Compensation Approved Under the Interim Compensation Order to Date: | $1,703,161.50[4] |
| Total Amount of Expense Reimbursement Approved Under the Interim Compensation Order to Date: | $27,054.96[3] |
| Total Allowed Compensation Paid to Date: | $1,754,474.85 |
| Total Allowed Expenses Paid to Date: | $28,455.78 |
| Compensation Sought in this Application Already Paid Under the Interim Compensation Order But Not Yet Allowed: | $51,313.35 |
| Expenses Sought In This Application Already Paid Under the Interim Compensation Order But Not Yet Allowed: | $1,400.82 |

DATED:  April 20, 2018

/s/ Richard Levin
Richard Levin (rlevin@Jenner.com)

JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
+1 (212) 891-1600

*Independent Counsel for Energy Future
Intermediate Holding Company LLC*

---

[4] Includes monthly interim fees and expenses for February and March, 2018, which as of the date of this Final Fee Application have not yet been paid.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered) |

**FINAL FEE APPLICATION OF JENNER & BLOCK LLP
INDEPENDENT COUNSEL FOR ENERGY FUTURE
INTERMEDIATE HOLDING COMPANY LLC, FOR THE
PERIOD FROM MAY 18, 2015 THROUGH MARCH 9, 2018**

Jenner & Block LLP ("**Jenner**"), independent counsel to debtor and debtor in possession Energy Future Intermediate Holding Company LLC ("**EFIH**" or "**Debtor**"), submits this final application ("**Final Fee Application**") for final allowance of compensation for professional services provided in the amount of $1,817,193.50 and reimbursement of actual and necessary expenses in the amount of $28,671.30 that Jenner incurred for the period May 18, 2015 through March 9, 2018 (the "**Fee Period**").[2]  In support of this Final Fee Application, Jenner submits the Declaration of Richard Levin, a partner in Jenner, which is attached as **Exhibit A** and incorporated by this reference. In further support of this Final Fee Application, Jenner respectfully states as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Includes compensation for services performed after the Effective Date related to the preparation of fee applications and miscellaneous plan consummation-related matters, estimated to be $20,000.00.

## I.    Jurisdiction

1.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This Final Fee Application is a core proceeding under 28 U.S.C. § 157(b)(2).

2.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Final Fee Application are section 330 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2016-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**"), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 2066] (the "**Interim Compensation Order**"), and the *Stipulation and Order Appointing a Fee Committee* [Docket No. 1896] (the "**Fee Committee Order**").

## II.    Background

4.      On April 29, 2014 (the "**Petition Date**"), EFIH commenced its chapter 11 case by filing a voluntary petition in this Court under chapter 11 of the Bankruptcy Code.

5.      The Debtor operated its business and managed its property as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code through March 9, 2018.  No trustee or examiner was appointed in this case.

6.      On May 13, 2014, the Office of the United States Trustee, Region 3 formed and appointed an Official Committee of Unsecured Creditors under section 1102(a)(1) of the Bankruptcy Code. [Docket No. 420.] On October 27, 2014, the Office of the United States Trustee, Region 3 formed and appointed another Official Committee of Unsecured Creditors under section 1102(a)(1) of the Bankruptcy Code. [Docket No. 2570.]

04/20/2018 SL1 1519470v1 109285.00005

2667968.4

7.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in all of the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

8.      On August 21, 2014, the Court entered the Fee Committee Order, appointing a fee committee (the "**Fee Committee**") to review and report, as appropriate, on interim and final fee applications filed by the Debtors' retained professionals in accordance with sections 328, 330, and 331 of the Bankruptcy Code and the Interim Compensation Order and establishing the procedures governing the Fee Committee's review of the Debtors' retained professionals applications for compensation and the resolution of any concerns raised during such review. The Fee Committee distributed a memorandum dated October 3, 2014 regarding guidelines for expense reimbursements to those professionals retained in the Chapter 11 Cases, and a memorandum dated March 12, 2018 covering guidelines for a final fee application.  Jenner believes that the relief requested in all prior applications and in this Final Fee Application complies with the guidelines.

### III.     Jenner's Employment, Disinterestedness, and Fee Request

9.      In November 2014, the debtors in the Chapter 11 Cases (the "**Debtors**") at the direction of their disinterested directors and managers (the "**Disinterested Directors**"), retained the following legal counsel and other professionals (collectively, the "**Disinterested Director Advisors**") to represent the respective estates' interests with respect to any matters on which there is an actual conflict of interest between one or more Debtors and another of the Debtors (the "**Conflicts Matters**"):

- Proskauer Rose LLP and SOLIC Capital Advisors on behalf of EFH Corp.;

- Cravath, Swaine & Moore LLP (and, subsequently, Jenner & Block) and Goldin Associates, LLC on behalf of EFIH; and

3

- Munger, Tolles & Olson LLP and Greenhill & Co. LLC on behalf of EFCH, TCEH, and their Debtor subsidiaries.

10. On December 9, 2014, the Debtors' boards adopted resolutions delegating to their respective Disinterested Directors the full authority to determine the existence of Conflicts Matters and to review and act upon Conflicts Matters, including by directing the applicable debtor to implement the Disinterested Directors' decisions. The Debtors designed this procedure, in consultation with the Debtors' general bankruptcy counsel and the Debtors Disinterested Director Advisors, to ensure that the Debtors' corporate governance process met the highest standards.

11. On July 8, 2015, the Court entered the Order Approving The Employment of Jenner & Block LLP As Counsel To Energy Future Intermediate Holding Company LLC Effective Nunc Pro Tunc to May 18, 2015 [Docket No. 4945] (the "**Employment Order**"), attached as **Exhibit B**. The Employment Order authorizes EFIH to retain Jenner as a Disinterested Director Advisor, to compensate Jenner at Jenner's hourly rates charged for services of this type, and to reimburse Jenner for Jenner's actual and necessary out-of-pocket expenses incurred, subject to application to this Court in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Interim Compensation Order, and the Fee Committee Order. The terms of Jenner's engagement are detailed in the engagement letter by and between Jenner and EFIH, effective as of May 18, 2015, and attached as **Exhibit C** (the "**Engagement Letter**").

12. To the best of the Jenner's knowledge and as disclosed in the Declaration Of Richard Levin In Support Of Application For Order Approving The Employment Of Jenner & Block LLP As Counsel To Energy Future Intermediate Holding Company LLC Under Sections 327(a) And 1107(b) Of The Bankruptcy Code, Effective Nunc Pro Tunc To May 18, 2015

4

[Docket No. 4792, Ex. E] (the "**Levin Declaration**"), the Supplemental Declaration Of Richard Levin In Support Of Application For Order Approving The Employment Of Jenner & Block LLP As Counsel To Energy Future Intermediate Holding Company LLC Under Sections 327(a) And 1107(b) Of The Bankruptcy Code, Effective Nunc Pro Tunc To May 18, 2015 [Docket No. 4901] (the "**First Supplemental Levin Declaration**"), the Second Supplemental Declaration of Richard Levin Relating to Application for Order Approving the Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC [Docket No. 5169] (the "**Second Supplemental Levin Declaration**"), the Third Supplemental Declaration of Richard Levin Relating to Application for Order Approving the Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC [Docket No. 5585] (the "**Third Supplemental Levin Declaration**"), the Fourth Supplemental Declaration of Richard Levin Relating to Application for Order Approving the Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC [Docket No. 7122] (the "**Fourth Supplemental Levin Declaration**"), the Fifth Supplemental Declaration of Richard Levin Relating to Application for Order Approving the Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC [Docket No. 8437] (the "**Fifth Supplemental Levin Declaration**"), the Sixth Supplemental Declaration of Richard Levin Relating to Application for Order Approving the Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC [Docket No. 9636] (the "**Sixth Supplemental Levin Declaration**"), the Seventh Supplemental Declaration of Richard Levin Relating to Application for Order Approving the Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC [Docket No. 10823] (the "**Seventh Supplemental Levin Declaration**"), and the Eight Supplemental Declaration of

2667968.4

Richard Levin Relating to Application for Order Approving the Employment of Jenner & Block LLP as Counsel to Energy Future Intermediate Holding Company LLC [Docket No.11350] (the "**Eighth Supplemental Levin Declaration**" and together with the Levin Declaration, First Supplemental Levin Declaration, Second Supplemental Levin Declaration, Third Supplemental Levin Declaration, Fourth Supplemental Levin Declaration, Fifth Supplemental Levin Declaration, Sixth Supplemental Levin Declaration and Seventh Supplemental Levin Declaration, (the "**Levin Declarations"**), Jenner is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code, and does not hold or represent an interest adverse to the EFIH's estate, as required by section 328(a) of the Bankruptcy Code, and except as otherwise specified in the Levin Declarations Jenner's partners, associates and special attorneys do not hold or represent any interest adverse to EFIH or its estate.

13.     Jenner might have in the past represented, might currently represent, and likely in the future will represent parties in interest in this case in connection with matters unrelated to EFIH or the Chapter 11 Cases.  In the Levin Declarations, Jenner disclosed its connections to parties in interest in the EFIH case that it has been able to ascertain using its reasonable efforts.

14.     Jenner performed the services for which it is seeking compensation on behalf of EFIH and its estate and not on behalf of any committee, creditor, or other entity.

15.     Commencing in July 2015, except as stated below, Jenner submitted monthly budgets to EFIH.  During the course of the Debtor's case, the scope and extent of Jenner's work was limited and/or unpredictable during certain time periods, and therefore the preparation of monthly budgets for those periods would not have been meaningful or productive; for those periods, with the consent of the Debtor and following consultation with the Fee Committee, Jenner did not prepare monthly budgets.

6

2667968.4

16.     Jenner seeks final compensation for professional services provided to the Debtors during the Fee Period in the amount of $1,817,193.50 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $28,671.30. During the Fee Period, Jenner attorneys and paraprofessionals worked 1,774.2 hours for which compensation is requested.

17.     Jenner's First Interim Fee Application was filed on October 22, 2015 [Docket No. 6567]; the hearing on Jenner's First Interim Application was held on February 18, 2016, following which the Court entered its order allowing fees in the amount of $424,647.50 and reimbursement of $5,446.69 in expenses [Docket No. 7883]. Jenner's Second Interim Fee Application was filed on February 16, 2016 [Docket No. 7881]; the hearing on Jenner's Second Interim Application was held on June 27, 2016, following which the Court entered its order allowing fees in the amount of $281,802.50 and reimbursement of $10,157.44 in expenses [Docket No. 8824].  Jenner's Third Interim Fee Application was filed on June 15, 2016 [Docket No. 8735]; the hearing on Jenner's Third Interim Application was held on October 27, 2016, following which the Court entered its order allowing fees in the amount of $237,948.75 and reimbursement of $3,635.99 in expenses [Docket No. 9963].   Jenner's Fourth Interim Fee Application was filed on October 17, 2016 [Docket No. 9824]; the hearing on Jenner's Fourth Interim Application was held on March 28, 2017, following which the Court entered its order allowing fees in the amount of $178,442.25 and reimbursement of $3,411.59 in expenses [Docket No. 11071].  Jenner's Fifth Interim Fee Application was filed on February 16, 2017 [Docket No. 10843]; the hearing on Jenner's Fifth Interim Application was held on July 10, 2017, following which the Court entered its order allowing fees in the amount of $108,518.73 and reimbursement of $1,141.50 in expenses [Docket No. 11437].  Jenner's Sixth Interim Fee

Application was filed on June 15, 2017 [Docket No. 11354]; the hearing on Jenner's Sixth Interim Application was held on June 15, 2017, following which the Court entered its order allowing fees in the amount of $55,877.50 and reimbursement of $88.92 in expenses [Docket No. 11354]; Jenner's Seventh Interim Fee Application was filed on October 17, 2017 [Docket No. 12069], following which the Court entered its order allowing fees in the amount of $415,924.25 and reimbursement of $3,172.83 in expenses [Docket No. 12632]; Jenner's Eight Interim Fee Application was filed on April 19, 2018 [Docket No. 12974] the hearing on Jenner's Eighth Interim Application has not yet been scheduled.

18.      Jenner has not received payment or promise of payment from any source other than EFIH for services provided or to be provided in any capacity whatsoever in connection with the EFIH case.

19.      Jenner does not share fees with any attorneys except to the extent permitted by section 504 of the Bankruptcy Code.

20.      By this Fee Application, and to the extent not already paid by the time of the hearing on this Final Fee Application, Jenner seeks approval and payment of all amounts, including any remaining 20% holdback on fees incurred during the Fee Period, for which it has sought compensation.

## IV.      Fees and Expenses Incurred During Fee Period

### A.      Customary Billing Disclosures

21.      Jenner's hourly rates are set at a level designed to compensate Jenner fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. The hourly rates and corresponding rate structure utilized by Jenner in this cases are equivalent to the hourly rates and corresponding rate structure used by Jenner for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee

8

application is required. The rates and rate structure reflect that such complex matters typically are national in scope and typically involve great complexity, high stakes, and intense time pressures.

**B.    Fees Incurred During Fee Period**

22.    In the ordinary course of Jenner's practice, Jenner maintains records of the time spent on the professional services required by EFIH and its estate. **Exhibit D** to this Final Fee Application is a summary of fees incurred and hours worked during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time worked and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each such attorney and paraprofessional at Jenner's current billing rates; and

- a calculation of the total compensation requested by Jenner.

**C.    Expenses Incurred During Fee Period**

23.    In the ordinary course of Jenner's practice, Jenner maintains a record of expenses incurred in rendering professional services required by EFIH and its estate and for which reimbursement is sought. **Exhibit E** to this Final Fee Application is a summary for the Fee Period of the total amount of expenses for which Jenner seeks reimbursement with respect to each category of expenses.  The out-of-pocket disbursement sum is broken down into categories of charges.

9

### V.    Proposed Payment Allocation

24.    In accordance with paragraph 2(b) of the Interim Compensation Order, all of the fees and expenses that Jenner seeks in this Final Fee Application are allocated to EFIH.

### VI.    Summary of Legal Services Provided During the Fee Period

25.    Prior to the Petition Date, the Debtors had entered into a Restructuring Support and Lock-Up Agreement with certain stakeholders.  (Docket No. 98, Ex. D.)  That agreement contemplated a new-money investment in reorganized EFH in the form of a second lien DIP facility that would have mandatorily converted into 60% of the reorganized debtors' equity.  This contemplated transaction and a tax-free spinoff of reorganized TCEH were principal features of the agreement.

26.    During the summer of 2014, a bidding war broke out for the opportunity to fund the second lien DIP facility.  The interest in owning reorganized EFH was not limited to creditors; the Debtors also received interest from third-party strategic and financial bidders.  The Debtors thereafter terminated the pre-petition restructuring support agreement (Docket No. 1697) and embarked on a marketing process for their economic interests in Oncor Electric Delivery Company LLC ("**Oncor**").

27.    In November 2014, EFIH, at the direction of its disinterested manager Charles Cremens, retained Cravath and Goldin Associates, LLC to represent EFIH's interests with respect to any Conflicts Matters.  The EFIH board also adopted a resolution delegating to its disinterested manager the full authority to determine the existence of Conflicts Matters and to review and act upon Conflicts Matters, including by directing EFIH to implement its disinterested manager's decisions.

28.    In May 2015, Richard Levin, who had been the lead Cravath bankruptcy attorney working on this matter, joined Jenner ("**Jenner**").  Jenner thereafter was retained to also provide

10

services to EFIH through its disinterested manager.   Cravath remained responsible for tax,

mergers and acquisition, transactional and certain litigated matters, while Jenner became

responsible for restructuring, bankruptcy and related work.   Cravath and Jenner carefully

coordinated their efforts to avoid duplication of effort and services.

29.     Jenner has established, in accordance with its internal billing procedures, ten

subject matters categories (each, a "**Matter Category**") for keeping time records for the work

performed for EFIH.  A schedule setting forth a description of each Matter Category utilized in

this case, the number of hours worked by Jenner attorneys and paraprofessionals for each Matter

Category, and the aggregate fees associated with each Matter Category is attached as **Exhibit F**.

Jenner detailed records of time worked providing professional services to EFIH and its estate

were attached to the interim applications previously filed with the court.   In addition, Jenner's

records of expenses incurred during the Fee Period in the rendition of professional services to

EFIH and its estate were attached to the interim applications previously filed with the Court as

attachments to the Interim Applications.

30.     The following is a summary, by Matter Category, of the professional services

provided by Jenner during the Fee Period. This summary is organized in accordance with

Jenner's internal system of matter numbers.

31.     In connection with the Interim Applications, Jenner agreed to reduce certain of its

interim requests for compensation. Because those agreed-upon reductions were not necessarily

tied to specific compensation requests, the hours and fee requests summarized in the Matter

Categories below do not reflect any agreed-upon or Court-ordered interim reductions.  However,

the aggregate amount sought in this Final Application, including in the Summary Cover Sheet to

11

the Final Fee Application, reflects all interim reductions in compensation that were agreed to by Cravath and/or ordered by the Court.

32.     After the Effective Date, Jenner continued to perform services related to the Debtor's Chapter 11 Case, primarily the preparation of Jenner's eighth interim application, Cravath's tenth interim application, Cravath's final application and this Final Fee Application, as well as and miscellaneous plan consummation-related matters..   Jenner has conservatively estimated the cost of those services to be $20,000.00, and is including a request for compensation for such services in this Final Fee Application.

**1.      Chapter 11 General and Administrative**

Fees: $ 18,955.00        Total Hours: 16.9

33.     The time recorded in this category relates to general review of matters relevant to the Chapter 11 Cases, review of various memoranda generated by the Debtors, Kirkland & Ellis LLP ("**Kirkland**"), and the Debtors' other counsel, meetings with the EFIH disinterested manager, attending briefing sessions, and other routine matters.

34.     More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the eight Interim Applications previously filed with the Court.

**2.      Plan and Disclosure Statement**

Fees: $1,453,523.00   Total Hours: 1,379.5

35.     These Chapter 11 Cases involved a remarkable number of plans of reorganization and disclosure statements, which were prepared and heavily negotiated in response to unpredictable developments during the course of the Chapter 11 Cases.

36.     During the Fee Period, dozens of draft plans of reorganization and related disclosure statements were considered by the Chapter 11 Debtors, all of which implicated

12

Conflicts Matters.  Each of the plans was complicated, involving billions of dollars of debt layered among different Debtors' estates, complex tax issues, and the resolution of billions of dollars of potential intercompany claims.  Numerous plans were filed, and four different plans were confirmed by the Court during course of the Chapter 11 Cases, two of which could not be consummated as a result of regulatory conditions.

37.    Following the failed 2014 Oncor bidding process described below and an extensive series of negotiations, in 2015 the Debtors and a number of their stakeholders entered into a plan support agreement with Hunt Consolidated, Inc. and certain of its co-investors (collectively, "**Hunt**").  That agreement contemplated a merger transaction in which EFIH's interest in Oncor would be converted to a real estate investment trust ("**REIT**"). The Hunt merger was conditioned upon, among other things, approval by the Public Utility Commission of Texas (the "**PUCT**").

38.    On December 9, 2015, this Court confirmed a plan of reorganization which incorporated the Hunt REIT/merger transactions.  However, on March 24, 2016, the PUCT entered an order that did not include all of the approvals required to consummate the Hunt merger.  Shortly thereafter, the Hunt merger transaction was terminated, and the Hunt plan was not consummated.

39.    Following the failure of the Hunt plan, the EFH and EFIH Debtors filed a revised chapter 11 plan reflecting either a standalone equitization or an investment by existing creditors and/or third-parties to purchase EFH/EFIH's economic interests in Oncor.

40.    In July of 2016, the Debtors proposed a merger transaction with NextEra Energy, Inc. ("**NEE**"), a previous bidder for Oncor's assets, whereby NEE would acquire the EFH and

13

EFIH Debtors' economic interests in Oncor through a tax-efficient merger.  The Debtors thereafter filed an amended plan incorporating the terms of the proposed NEE transaction.

41.    A condition precedent to the effective date of the NEE Plan was that the orders entered by the Court disallowing certain makewhole claims will not have be stayed, reversed, or remanded on appeal.  However, on November 17, 2016, the United States Court of Appeals for the Third Circuit issued an opinion reversing this Court's decisions, requiring the Debtors to file yet another revised plan of reorganization and to resolicit votes on an amended NEE plan.[3]

42.    On February 17, 2017, the Court confirmed the amended NEE plan.  However, on April 13, 2017, the PUCT entered an order finding that the transactions contemplated by the NEE plan were not in the "public interest," and as result the NEE plan also could not be consummated.

43.    In June 2017, Berkshire Hathaway Energy Company ("**BHE**") submitted a proposal to acquire the EFH/EFIH Debtors' economic interests in Oncor through a merger transaction.  The EFH and EFIH Debtors determined it was in their best interests to terminate the NEE merger agreement and instead seek confirmation of a plan of reorganization implementing a BHE merger transaction.

44.    In August 2017, while proceeding to confirmation of a plan implementing the merger, the EFH and EFIH Debtors received an alternative transaction proposal from Sempra Energy ("**Sempra**") which largely preserved the structure of the BHE transaction but contemplated a materially increased purchase price. Following additional negotiations with key stakeholders, the EFH and EFIH Debtors terminated the BHE merger agreement, entered into a merger agreement with Sempra, and proposed a plan of reorganization to implement the Sempra

---

[3] In the interim, the TCEH Debtors and EFH Shared Services Debtors proposed their own stand-alone plan of reorganization.  That plan was confirmed by the Court, and was consummated on October 3, 2016.

merger transaction. Sempra and Oncor thereafter again sought PUCT approval for a merger transaction proposed in a plan.

45.      On February 15, 2018, the PUCT noted in an open meeting that all objections to regulatory approval had been resolved, and instructed PUCT staff to draft an order approving the Sempra transaction. The Court thereafter confirmed the Sempra plan on February 27, 2018. Final PUCT approval for the transaction was obtained on March 8, 2018, and the Sempra plan was consummated the next day.

46.      Jenner was heavily involved in all aspects of bankruptcy considerations related to the plans proposed during the Fee Period. On behalf of EFIH with respect to Conflict Matters, and in coordination with Kirkland and Cravath, Jenner evaluated and commented on the plans, plan amendments and related disclosure statements, evaluated EFIH's bankruptcy options and advised EFIH's disinterested manager concerning allocation disputes that appear to be Conflict Matters.

47.      Jenner also assisted in the preparation of the EFIH disinterested manager for various depositions; participated in the depositions of several other key witnesses; participated in meetings and negotiations concerning the objections of Elliot Associates, L.P. and certain affiliates (collectively, "**Elliott**") to the BHE plan; and attended meetings concerning related matters, many by telephone.

48.      More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the eight Interim Applications previously filed with the Court.

**3.      Intercompany Claims**

Fees: $15,835.00      Total Hours: 15.7

15

49.    In parallel with negotiations over the Hunt plan, the Debtors' Disinterested Directors, in consultation with their respective Disinterested Director Advisors, negotiated a settlement resolving billions of dollars in potential litigation related to three broad categories of prepetition claims: (a) inter-Debtor Claims; (b) claims against the TCEH first lien creditors; and (c) claims against the Debtors' sponsors, directors and officers.  The settlement remained binding on all parties notwithstanding the failure of the Hunt plan and served as a foundation for subsequent successful plan negotiations.

50.    The bulk of the work in this category was performed by Cravath, which conducted extensive factual investigation into matters relevant to potential intercompany claims and defenses, and legal research relevant to potential intercompany claims and defenses.  Jenner assisted in the negotiations which culminated in a comprehensive settlement of all prepetition inter-Debtor claims under which all inter-Debtor claims were released in exchange for an allowed $700 million general unsecured claim by TCEH against EFH, plus certain additional potential recoveries by TCEH against EFH.

51.    Had they not been resolved, the claims that were released in the inter-Debtor settlement would have given rise to lengthy, complex, and contentious litigation which would have prevented the negotiation and confirmation of the plans described above.  Thus, the work of Jenner and the other EFIH Disinterested Director Advisors was critical to the Debtors' ultimate successful emergence from bankruptcy.

52.    More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the eight Interim Applications previously filed with the Court.

4.    **Tax Issues**

Fees: $20,722.50        Total Hours: 17.5

16

53.    The Debtors' Chapter 11 Cases involved complex and difficult tax issues on an extraordinary scale which loomed large over the entire case, including all plan negotiations.

54.    Cravath was responsible for the review and analysis of tax issues that could directly or indirectly affect EFIH and its emergence from chapter 11, including numerous proposed sale, new equity investment and spin-off proposals, the tax effects of proposed plans, and the two tax sharing agreements among the Debtors and the related disputes under the Competitive Tax Sharing Agreement.

55.    Jenner worked on limited bankruptcy aspects of the tax issues, participated in meetings and conference calls with other counsel in the Chapter 11 Cases on limited tax issues, and assisted in the preparation of memoranda for EFIH's disinterested manager to assist him in his evaluation of restructuring alternatives and strategies.

56.    More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the eight Interim Applications previously filed with the Court.

**5.    Oncor Sale Process**

Fees: $28,405.00        Total Hours: 24.7

57.    One of the principal Conflicts Matters for which EFIH's and its disinterested manager employed counsel was the Oncor sale process.  Cravath was primarily responsible for matters related to the Oncor sale process, most of which occurred prior to Jenner's retention.

58.    Jenner became involved in negotiations and consideration of options after the Debtors were unable to reach agreement on a sufficiently attractive stalking horse bid and opted not to move forward with the stalking horse bid sale process.

17

59.    More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the eight Interim Applications previously filed with the Court.

6.    **Employment and Fee Applications**

Fees: $198,732.50          Total Hours: 184.8

60.    Following Jenner's retention after Mr. Levin joined the firm, Jenner assumed primarily responsibility for bankruptcy retention and compensation issues related to all professionals retained to represent EFIH, through its disinterested manager.

61.    Jenner initially prepared its own employment application, including declarations, which required, in addition to ordinary conflicts checks for which Jenner did not charge EFIH, discussions with Kirkland, other independent counsel, and the Office of the United States Trustee about the appropriate scope of additional "connections" research, performed the additional research, and evaluated and disclosed the results. Jenner also worked with other independent counsel and Kirkland to ensure that scope of Jenner's engagement was consistent with the Court's prior orders and with each other counsel's scope of engagement.

62.    Thereafter, Jenner assumed primary responsibility for the preparation of all compensation applications for both Cravath and Jenner, and Cravath did not charge the EFIH for any services related to compensation requests.

63.    More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the eight Interim Applications previously filed with the Court.

04/20/2018 SL1 1519470v1 109285.00005

2667968.4

7.    **Non-Working Travel**

Fees: $77,070.00        Total Hours: 135.1

64.    Jenner lawyers traveled numerous times to and from New York for hearings in Delaware, meetings in Dallas and Chicago, and other out-of-town travel.  A significant amount of that time was spent working on EFIH or other matters; the time reflected in this category consists of non-productive travel time that was not billed to EFIH or other clients. Fees in this Matter Category are charged at 50% of the rates otherwise charged in this case.

65.    More detailed descriptions of the travel recorded in this Matter Category, as well as the detailed time records for this Matter Category, are included in the eight Interim Applications previously filed with the Court.

## VII.    Actual and Necessary Expenses Incurred by Jenner

66.    As summarized in Exhibit F, Jenner incurred a total of $28,671.30 in expenses on behalf of EFIH during the Fee Period for which it seeks compensation. These charges are intended to reimburse Jenner's direct costs that are not included in Jenner's hourly billing rates. Only clients who actually use services of the types set forth in Exhibit E of this Final Fee Application are separately charged for such services.

## VIII.    Jenner's Requested Compensation and Reimbursement Should be Allowed

67.    As explained below, Jenner submits that the services for which it seeks compensation in this Final Fee Application were, at the time provided, necessary for and beneficial to the EFIH and its estate and were provided to protect and preserve the EFIH estate. Jenner further believes that it performed the services for EFIH economically, effectively, and efficiently, and they benefited EFIH and its constituents. Jenner further submits that the compensation requested is reasonable in light of the nature, extent, and value of such services to

19

EFIH and its estate and all parties in interest. Accordingly, Jenner submits the compensation sought in this Final Fee Application is warranted and should be approved.

**A.      Reasonable and Necessary Fees Incurred in Providing Services to the Debtors**

68.     Section 330(a)(1) of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered … and reimbursement for actual, necessary expenses." Section 330(a)(3) sets forth the criteria for such an award:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

69.     As analyzed below, Jenner submits the elements governing awards of compensation justify the allowance requested.

1.      **The Time and Labor Required**

70.      During the Fee Period, Jenner's partners, associates, and paraprofessionals spent 1,774.2 hours in providing professional services for EFIH.  Jenner coordinated its efforts with Kirkland and Cravath to prevent duplication of efforts and thereby not spend more time than required. Jenner required this amount of time to research and analyze the numerous, complex issues in the Chapter 11 Cases, to advise its client with respect to the issues, to participate in negotiations with other parties in interest in these Chapter 11 Cases and to perform the other tasks described above.

2.      **The Rates Charged for Such Services**

71.      During the Fee Period, Jenner's hourly billing rates ranged from $635.00 to $1,300.00 per hour for partners ($800.00 to $1,300.00 in 2018), from $445.00 to $795.00 for regular associates ($465 to $800 in 2018), from $305.00 to $365.00 for paraprofessionals ($310 to $370 in 2018), and from $205.00 to $215.00 for project assistants ($210 to $220 in 2018). Based on the recorded hours expended by Jenner's attorneys and paraprofessionals, the average hourly billing rate for Jenner's services was $1,022.00.

72.      Jenner's hourly rates are set at a level designed to compensate Jenner fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

73.      The hourly rates and corresponding rate structure that Jenner charges in this case are equivalent to or less than the hourly rates and corresponding rate structure that Jenner charges for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required.

21

**3.     The Necessity of the Services and the Benefit to the Estate**

74.     The services Jenner provided to EFIH have conferred substantial benefit on EFIH's estate and are necessary because EFIH needs independent counsel to advise and represent it on Conflict Matters. Without independent counsel, EFIH would have found it difficult, if not impossible, to protect its interests vis-à-vis the other Debtors in the Chapter 11 Cases.

**4.     The Reasonableness of the Time Spent, Based on the Complexity, Importance, Nature of the Issues**

75.     Jenner performed the services in a reasonable amount of time, given the complexity of the issues involved and the various intercompany legal issues facing EFIH. Jenner's detailed time records show that the time spent on each of the matters was necessary and appropriate to advising and representing EFIH on conflict matters.

**5.     The Experience, Reputation, and Ability of the Attorneys Providing Services**

76.     Jenner attorneys have achieved a high degree of expertise and positive reputations in their respective fields. Jenner's Restructuring and Litigation departments frequently receive recognition for their skill and achievements, and Jenner is frequently cited as one of the leading U.S. law firms in these fields.

**6.     Customary Compensation**

77.     Jenner relies on the Court's experience and knowledge with respect to the compensation awards in similar cases as well as for other counsel in these Chapter 11 Cases. In addition, as noted above, the compensation Jenner seeks in this Final Fee Application is comparable to the compensation it would have sought for comparable work outside of a chapter 11 case.

04/20/2018 SL1 1519470v1 109285.00005

78.    Jenner submits that the compensation requested is reasonable under all the factors considered under section 330 of the Bankruptcy Code and that the factors justify the allowance in full of Jenner's compensation and reimbursement request.

**B.    Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors**

79.    For the Fee Period, Jenner requests reimbursement of $30,593.68 for reasonable and necessary costs and expenses incurred on behalf of EFIH.

80.    Jenner's normal billing rates do not take these costs and expenses into consideration. Rather, Jenner bills each cost and expense to the applicable client. Because of the disparity between the different clients' requirements for expenses such as travel, computer-assisted research, teleconference services, postage, courier and messenger services, and photocopying, it is difficult to charge costs and expenses fairly and equitably by including them in Jenner's ordinary billing rates. Accordingly, Jenner generally charges each client for such costs and expenses separately, in each case, at Jenner's costs.

81.    Jenner does not include the amortization of the cost of any investment, equipment, or capital outlay in its charges for these services.

82.    Under Rule 2016-2 of the Local Bankruptcy Rules, Jenner represents that its rate for duplication for black-and-white copies is $0.10 per page and for color copies is $0.50 per page, there is no charge for telecopier transmissions, and there is no surcharge for computer-assisted research.

83.    Any services billed by a third-party vendor, with the exception of certain computer-assisted research charges, are charged to EFIH in the amount billed to and paid by Jenner. Like many large law firms, Jenner has negotiated a special arrangement with computerized research companies under which Jenner pays a flat rate monthly fee for computerized research services. Consistent with its general policy of billing out-of-pocket

23

expenses only to clients for which the use of such services is required, Jenner separately charges each client for computer-assisted research. To account for such charges while passing through Jenner's cost savings resulting from its special arrangements, Jenner charges those clients for which such services are required at a reduced rate that is less than the rate charged by the computerized research companies to the general public for such services. These charges are intended to cover Jenner's direct costs for computerized research.

84.     Jenner has made reasonable efforts to minimize its costs and expenses in the Chapter 11 Cases. Each of the costs and expenses Jenner has incurred in providing professional services to EFIH was necessary, reasonable, and justified under the circumstances to serve the needs of EFIH and its estate.

### IX.     Statement by Jenner Under ¶ C(5) of the U.S. Trustee Guidelines

85.     Jenner did not agree to any variations from, or alternatives to, its standard or customary billing rates, fees or terms for services pertaining to the engagement that were provided during the Fee Period, except as required by the U.S. Trustee Guidelines and the Fee Committee guidelines.

86.     As noted above, with the consent of the Debtor and following consultation with the Fee Committee, Jenner did not prepare monthly budgets for certain periods of time during which the scope and extent of Jenner's work was limited and/or unpredictable.  With respect to the time periods for which budgets were submitted and any materials variations existed between the budgeted and actual amounts, Jenner or its representatives had general discussions with the Debtor and/or Fee Committee concerning the reasons for variations, including the difficulty in accurately budgeting for Jenner's work.

87.     None of the professionals included in this Application varied their hourly rate based on the geographic location of the Chapter 11 Cases.

24

88.     The Application does not include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices.

89.     The Application does not include time or fees for reviewing time records to redact any privileged or other confidential information.

90.     The rates charged by Jenner for certain of its attorneys increased during the course of the Debtor's case, typically at the beginning of a calendar year.  The Interim Applications previously filed by Jenner take into account those rate increases.  Jenner's engagement letter with EFIH provides that Jenner may change it hously base rates each year, typically as of January.

## X.      Reservation of Rights and Notice

91.     It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Final Fee Application. Jenner reserves the right to amend its Final Fee Application to include such amounts.  EFIH has provided notice of this Final Fee Application to: (a) the U.S. Trustee; (b) counsel to the agent of the EFIH First Lien DIP Facility; (c) counsel to the agent of the TCEH DIP Facility; (d) counsel to the Creditors' Committees; and (e) the Fee Committee (collectively, the "**Notice Parties**").

## XI.     No Prior Request

92.     The compensation and expense reimbursement sought in this Final Fee Application has been the subject of the Interim Applications.  However, no prior application for final approval of compensation or reimbursement of expenses has been made to this or any other court.

WHEREFORE, Jenner respectfully requests that the Court enter an order (a) awarding Jenner final compensation for professional and paraprofessional services provided during the Fee Period in the amount of $1,817,193.50, and reimbursement of actual, reasonable and necessary

expenses incurred in the Fee Period in the amount of $28,671.30; (b) authorizing and directing

EFIH to remit payment to Jenner for such fees and expenses; (c) authorizing and directing the

payment of any amounts previously approved by the Court as to which payment has been

withheld; and (d) granting such other relief as is appropriate under the circumstances.

DATED:  April 20, 2018

*/s/ Richard Levin*
Richard Levin (rlevin@Jenner.com)

JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
+1 (212) 891-1600

*Independent Counsel for Energy Future*
*Intermediate Holding Company LLC*

2667968.4