## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[2]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered) |

### SUMMARY COVER SHEET TO THE FINAL FEE APPLICATION OF OF STEVENS & LEE, P.C., SPECIAL COUNSEL FOR ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, FOR THE PERIOD NOVEMBER 26, 2014 THROUGH MARCH 9, 2018

| | |
|---|---|
| Name of applicant: | Stevens & Lee, P.C. |
| Authorized to provide services to: | **Energy Future Intermediate Holding Company LLC**, Debtor and Debtor in Possession |
| Petition Date: | April 29, 2014 |
| Date of Retention [Docket No. 3278]: | January 13, 2015, *nunc pro tunc* to November 26, 2014 |
| Period for which compensation and reimbursement is sought in the Fee Application: | November 26, 2014 through March 9, 2018 |
| Amount of final compensation sought as actual, Reasonable, and Necessary for the Fee Period: | $521,295.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $4,706.72 |

---

[2] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

04/23/2018 SL1 1519441v1 109285.00006

2676109.1

Total Compensation and Expense Reimbursement          $526,002.22
Requested for the Fee Period:

Blended rate in this application for all attorneys:          $474.00

Blended rate in this application for all timekeepers:          $362.50

| Prior Interim Fee Applications and Adjustments: | | | | | |
|---|---|---|---|---|---|
| | | Requested | | Approved | |
| Date [Docket No.] | Interim Fee Period | Fees | Expenses | Fees | Expenses |
| 02/26/2015 [Dkt. 3664] | *First IFP* 11/26/14-12/31/2014 | 21,186.00 | 37.00 | 20,434.90 | 37.00 |
| 06/15/2015 [Dkt. 4758] | *Second IFP* 1/1/15 – 04/30/2015 | 53,968.00 | 708.77 | 51,605.50 | 697.05 |
| 10/16/2015 [Dkt. 6502] | *Third IFP* 5/1/15 – 8/31/2015 | 57,185.50 | 825.09 | 53,973.00 | 801.90 |
| 02/15/2016 [Dkt. 7846] | *Fourth IFP* 9/1/15 – 12/31/2015 | 106,643.00 | 831.60 | $106,030.00 | 831.60 |
| 06/16/2016 [Dkt. 8744] | *Fifth IFP* 1/1/16 – 04/30/2016 | 28,127.50 | 463.15 | 27,879.00 | 463.15 |
| 10/20/2016 [Dkt. 9903] | *Sixth IFP* 5/1/16 – 08/31/2016 | 37,005.00 | 255.90 | 37,005.00 | 255.90 |
| 03/10/2017 [Dkt. 10988] | *Seventh IFP* 9/1/16 – 12/31/2016 | 39,389.50 | 112.54 | 36,837.50 | 112.54 |
| 07/18/2017 [Dkt. 11498] | *Eighth IFP* 1/1/17 – 04/30/2017 | 43,204.50 | 269.45 | $42,378.00 | 269.45 |
| 10/26/2017 [Dkt. 12117] | *Ninth IFP* 5/1/17 – 08/31/2017 | 68,404.50 | 723.66 | 68,404.50 | 723.66 |
| 03/14/2018 [Dkt. 12823] | *Tenth IFP* 9/1/17 – 12/31/2017 | 39,187.50 | 356.20 | 38,692.50 | 356.20 |
| 04/23/2018 [Dkt. 12988] | *Eleventh IFP* 1/1/18 – 3/9/2018 | 24,244.50 | 168.40 | *Pending* | *Pending* |
| TOTAL | | | | *$483,239.90* | *4548.45* |
| Total fees and expenses approved by interim orders to date: | | | | | |

2676109.1

| Summary of Past Requests for Compensation and Prior Payments | |
|---|---|
| Total Amount of Compensation Previously Requested Under the Interim Compensation Order to Date: | $521,295.50 |
| Total Amount of Expense Reimbursement Previously Requested Under the Interim Compensation Order to Date: | $4,706.72 |
| Total Compensation Approved Under the Interim Compensation Order to Date: | $483,239.90 |
| Total Amount of Expense Reimbursement Approved Under the Interim Compensation Order to Date: | $4,548.45 |
| Total Allowed Compensation Paid to Date: | $469,974.29 |
| Total Allowed Expenses Paid to Date: | $4,498.02 |
| Compensation Sought in this Application Already Paid Under the Interim Compensation Order But Not Yet Allowed: | $0.00 |
| Expenses Sought In This Application Already Paid Under the Interim Compensation Order But Not Yet Allowed: | $0.00 |

Dated: April 23, 2018

STEVENS & LEE, P.C.

*/s/ Joseph H. Huston, Jr.*
Joseph H. Huston, Jr. (No. 4035)
919 North Market Street, Suite 1300
Wilmington, Delaware 19801
Telephone:    (302) 425-3310
Facsimile:    (610) 371-7972
Email:          jhh@stevenslee.com

*Independent Counsel for Energy Future*
*Intermediate Holding Company LLC*

6

2676109.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered) |

**FINAL FEE APPLICATION OF STEVENS & LEE, P.C. SPECIAL COUNSEL FOR
ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, FOR THE PERIOD
NOVEMBER 26, 2014 THROUGH MARCH 9, 2018**

Stevens & Lee, P.C. ("**S&L**"), special counsel to debtor and debtor in possession Energy Future Intermediate Holding Company LLC ("**EFIH**" or "**Debtor**"), submits this Final fee application ("**Final Fee Application**") for allowance of compensation for professional services provided in the amount of $521,295.50 and reimbursement of actual and necessary expenses in the amount of $4,706.72 that S&L incurred for the period November 26, 2014 through March 9, 2018 (the "**Fee Period**"). In support of this Final Fee Application, S&L submits the declaration of Joseph Huston, in the practice leader and primary attorney for S&L, which is attached as **Exhibit A** and incorporated by this reference. In further support of this Final Fee Application, S&L respectfully states as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## I.    Jurisdiction

1.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This Fee Application is a core proceeding under 28 U.S.C. § 157(b)(2).

2.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Fee Application are section 330 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2016-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**"), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 2066] (the "**Interim Compensation Order**"), and the *Stipulation and Order Appointing a Fee Committee* [Docket No. 1896] (the "**Fee Committee Order**").

## II.    Background

4.      On April 29, 2014 (the "**Petition Date**"), EFIH commenced its chapter 11 case by filing a voluntary petition in this Court under chapter 11 of the Bankruptcy Code.

5.      The Debtor operated its business and managed its property as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code through March 9, 2018.  No trustee or examiner was appointed in this case.

6.      On May 13, 2014, the Office of the United States Trustee, Region 3 formed and appointed an Official Committee of Unsecured Creditors under section 1102(a)(1) of the Bankruptcy Code. [Docket No. 420.] On October 27, 2014, the Office of the United States Trustee, Region 3 formed and appointed another Official Committee of Unsecured Creditors under section 1102(a)(1) of the Bankruptcy Code. [Docket No. 2570.]

2

7.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in all of the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

8.      On August 21, 2014, the Court entered the Fee Committee Order, appointing a fee committee (the "**Fee Committee**") to review and report, as appropriate, on interim and final fee applications filed by the Debtors' retained professionals in accordance with sections 328, 330, and 331 of the Bankruptcy Code and the Interim Compensation Order and establishing the procedures governing the Fee Committee's review of the Debtors' retained professionals applications for compensation and the resolution of any concerns raised during such review.  The Fee Committee distributed a memorandum dated October 3, 2014 regarding guidelines for expense reimbursements to those professionals retained in the Chapter 11 Cases, as well as a memorandum dated March 12, 2018 concerning guidelines for final fee applications.   S&L believes that the relief requested in this Final Fee Application complies with the guidelines.

### III.      S&L's Employment, Disinterestedness, and Fee Request

9.      In November 2014, the debtors in the Chapter 11 Cases (the "**Debtors**") at the direction of their disinterested directors and managers (the "**Disinterested Directors**"), retained the following legal counsel and other professionals (collectively, the "**Disinterested Director Advisors**") to represent the respective estates' interests with respect to any matters on which there is an actual conflict of interest between one or more Debtors and another of the Debtors (the "**Conflicts Matters**"):

- Proskauer Rose LLP and SOLIC Capital Advisors on behalf of EFH Corp.;

- Cravath, Swain & Moore, LLP ("**Cravath**") and, subsequently, Jenner & Block, LLP ("**Jenner**") and Goldin Associates, LLC ("**Goldin**") on behalf of EFIH; and

- Munger, Tolles & Olson LLP and Greenhill & Co. LLC on behalf of EFCH, TCEH, and their Debtor subsidiaries.

3

10.     On December 9, 2014, the Debtors' boards adopted resolutions delegating to their respective Disinterested Directors the full authority to determine the existence of Conflicts Matters and to review and act upon Conflicts Matters, including by directing the applicable debtor to implement the Disinterested Directors' decisions.   The Debtors designed this procedure, in consultation with the Debtors' general bankruptcy counsel and the Debtors Disinterested Director Advisors, to ensure that the Debtors' corporate governance process met the highest standards.

11.     S&L was engaged to act as Delaware counsel to Cravath, Jenner and Goldin, and n January 16, 2015, the Court entered the Order Approving The Employment of Stevens & Lee, P.C. As Counsel To Energy Future Intermediate Holding Company LLC Effective Nunc Pro Tunc to November 26, 2014 [Docket No. 3278] (the "**Employment Order**"), attached as **Exhibit B**.  The Employment Order authorizes EFIH to retain S&L as Delaware counsel  and compensate S&L at S&L's hourly rates charged for services of this type and to reimburse S&L for S&L's actual and necessary out-of-pocket expenses incurred, subject to application to this Court in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Interim Compensation Order, and the Fee Committee Order. The terms of S&L's engagement are detailed in the engagement letter by and between S&L and EFIH, effective as of November 26, 2014, and attached as **Exhibit C** (the "**Engagement Letter**").

12.     To the best of the S&L's knowledge and as disclosed in the Declaration of Joseph H. Huston, Jr., In Support Of Application For Order Approving The Employment Of Stevens & Lee, P.C. As Counsel To Energy Future Intermediate Holding Company LLC Under Sections 327(a) And 1107(b) Of The Bankruptcy Code, Effective Nunc Pro Tunc To November 26, 2014 [Docket No. 3028] (the "**Huston Declaration**"),  S&L is a "disinterested person," as defined in

4

section 101(14) of the Bankruptcy Code, and does not hold or represent an interest adverse to the EFIH's estate, as required by section 328(a) of the Bankruptcy Code and that S&L's shareholders, associates and special attorneys do not hold or represent any interest adverse to EFIH or its estate, except as otherwise specified in the Huston Declaration.

13.     S&L might have in the past represented, might currently represent, and likely in the future will represent parties in interest in this case in connection with matters unrelated to EFIH or the Chapter 11 Cases.  In the Retention Declarations, S&L disclosed its connections to parties in interest in the EFIH case that it has been able to ascertain using its reasonable efforts.

14.     S&L performed the services for which it is seeking compensation on behalf of EFIH and its estate and not on behalf of any committee, creditor, or other entity.

15.     Given the more limited nature of its work, which was nearly entirely dependent upon the tasks undertaken by Cravath, Jenner and Goldin, S&L was not required to submitt monthly budgets to EFIH.  The scope and extent of S&L's work was limited and unpredictable s, and the preparation of monthly budgets for those periods would not have been meaningful or productive; for those periods; therefore with the consent of the Debtor and following consultation with the Fee Committee, S&L did not prepare monthly budgets.

16.     S&L seeks final compensation for professional services provided to the Debtors during the Fee Period in the amount of $521,295.50 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $4,706.72. During the Fee Period, S&L attorneys and paraprofessionals worked 974.20 hours for which compensation is requested.

17.     Certain of S&L's fees or expenses sought in this Final Fee Application have been previously approved by the Court.  S&L has filed eleven interim fee applications (collectively,

04/23/2018 SL1 1519441v1 109285.00006

2676109.1

the "**Interim Applications**") with the Court.   All but S&L's Tenth and Eleventh Interim Applications have been approved by the Court, some reflectiong reductions requested by the Fee CommitteeS&L's Tenth Interim Fee Application was filed on March14, 2018 [Docket No. 12823]; the Fee Committee has approved the application with the requested reduction of $440, which S&L has accepted; the hearing on S&L's Tenth Interim Application has not yet been scheduled.   S&L's Eleventh Interim Fee Application was filed on April 23, 2018 [Docket No. 12988]; the hearing on S&L's Eleventh Interim Application has not yet been scheduled.

18.      S&L has not received payment or promise of payment from any source other than EFIH for services provided or to be provided in any capacity whatsoever in connection with the EFIH case.

19.      S&L does not share fees with any attorneys except to the extent permitted by section 504 of the Bankruptcy Code.

20.      By this Final Fee Application, and to the extent not already paid by the time of the hearing on this Final Fee Application, S&L seeks approval and payment of all amounts, including the remaining 20% holdback on fees incurred during the Tenth and Eleventh Interim Fee Periods for which it has sought compensation.

## IV.      Fees and Expenses Incurred During Fee Period

### A.      Customary Billing Disclosures

21.      S&L's hourly rates are set at a level designed to compensate S&L fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. The hourly rates and corresponding rate structure utilized by S&L in this cases are equivalent to the hourly rates and corresponding rate structure used by S&L for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required. The rates and rate structure reflect that such complex matters typically

are national in scope and typically involve great complexity, high stakes, and intense time pressures.

**B.    Fees Incurred During Fee Period**

22.    In the ordinary course of S&L's practice, S&L maintains records of the time spent on the professional services required by EFIH and its estate. **Exhibit D** to this Final Fee Application is a summary of fees incurred and hours worked during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time worked and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each such attorney and paraprofessional at S&L's current billing rates; and

- a calculation of the total compensation requested by S&L.

**C.    Expenses Incurred During Fee Period**

23.    In the ordinary course of S&L's practice, S&L maintains a record of expenses incurred in rendering professional services required by EFIH and its estate and for which reimbursement is sought. **Exhibit E** to this Final Fee Application is a summary for the Fee Period of the total amount of expenses for which S&L seeks reimbursement with respect to each category of expenses. The out-of-pocket disbursement sum is broken down into categories of charges.

**V.    Proposed Payment Allocation**

24.    In accordance with paragraph 2(b) of the Interim Compensation Order, all of the fees and expenses that S&L seeks in this Final Fee Application are allocated to EFIH.

## VI.    Summary of Legal Services Provided During the Fee Period

25.    In November 2014, EFIH, at the direction of its disinterested manager Charles Cremens, retained Cravath and Goldin Associates, LLC and subsequently Jenner to represent EFIH's interests with respect to any Conflicts Matters.  The EFIH board also adopted a resolution delegating to its disinterested manager the full authority to determine the existence of Conflicts Matters and to review and act upon Conflicts Matters, including by directing EFIH to implement its disinterested manager's decisions.

26.    For the next 3+ years, S&L provided professional services as Delaware counsel to Cravath, Jenner and Goldin as lead special conflicts advisers  to EFIH and its disinterested manager.   .

27.    In May 2015, Richard Levin, who had been the lead Cravath bankruptcy attorney working on this matter, joined Jenner.  Jenner thereafter was retained to also provide services to EFIH through its disinterested manager.  S&L assisted in Jenner's retention and subsequent disclosures and its additional periodic and final fee applications.

28.    S&L has established, in accordance with its internal billing procedures, subject matters categories (each, a "**Matter Category**") for keeping time records for the work performed for EFIH.  A schedule setting forth a description of each Matter Category utilized in this case, the number of hours worked by S&L attorneys and paraprofessionals for each Matter Category, and the aggregate fees associated with each Matter Category, is attached as **Exhibit G**.  S&L's detailed records of time worked providing professional services to EFIH and its estate, and S&L's detailed records of expenses incurred during the Fee Period in the rendition of

8

professional services to EFIH and its estate, were previously filed with the Court as attachments to the Interim Applications.[2]

29.     The following is a summary, by Matter Category, of the professional services provided by S&L during the Fee Period. This summary is organized in accordance with S&L's internal system of matter numbers.

30.     In connection with the Interim Applications, S&L agreed to reduce certain of its interim requests for compensation. Because those agreed-upon reductions were not necessarily tied to specific compensation requests, the hours and fee requests summarized in the Matter Categories below do not reflect any agreed-upon or Court-ordered interim reductions.  However, the aggregate amount sought in this Final Application, including in the Summary Cover Sheet to the Final Fee Application, reflects all interim reductions in compensation that were agreed to by S&L and/or ordered by the Court.

31.     After the Effective Date, S&L continued to perform services related to the Debtor's Chapter 11 Case, primarily administrative support and monitoring of proceedings for Jenner and Cravath, Jenner's eighth interim and final fee applications, Cravath's tenth interim and final fee applications, Goldin & Co's seventh interim and final fee applications and this Final Fee Application, as well as miscellaneous plan consummation-related matters..   S&L has conservatively estimated the cost of those services to be $8,000.00, and is including a request for compensation for such services in this Final Fee Application.

---

[2] The Fee Committee has indicated that copies of these voluminous, previously-filed detailed time and expense records do not need to be re-filed with this Final Fee Application.

1.      **Professional Retentions**

*Fees: $45,728.00        Total Hours: 73.10*

32.     Because S&L was not retained as Delaware counsel to EFIH (acting through its disinterested manager) until the Debtors' cases were underway, S&L's initial work included the need to familiarize itself with the complex relevant background facts, legal issues and the parties' positions. S&L prepared its own retention and employment applications and assisted with the filing, service and periodic updatings of Cravath's and Goldin's; and later,  ,following Jenner's retention after Mr. Levin joined that firm, assisted Jenner with same things.

33.     . S&L  attended all required live and telephonic hearings before this Court on retention and compensation matters and participated in certain  other conference calls and meetings during the Fee Period.

34.     More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously filed with the Court.

2.      **Case Administration – General Matters**

*Fees: $6,073.50        Total Hours: 11.10*

35.     S&L performed a variety of administrative tasks including arranging for hearing logistics and coverage, telephonic appearances, service of documents, etc. More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously filed with the Court.

3.      **Chapter 11 Issues**

*Fees: $808.50        Total Hours: 1.10*

10

36.     These Chapter 11 Cases involved a remarkable number of plans of reorganization and disclosure statements, which were prepared and heavily negotiated in response to unpredictable developments during the course of the Chapter 11 Cases. S&L did not participate directly in such negotiations but was included in regular updates on progress.   Most of the associated time was billed to category 10 below

37.     On December 9, 2015, this Court confirmed a plan of reorganization which incorporated the Hunt REIT/merger transactions.   However, on March 24, 2016, the PUCT entered an order that did not include all of the approvals required to consummate the Hunt merger.   Shortly thereafter, the Hunt merger transaction was terminated, and the Hunt plan was not consummated.

38.     Following the failure of the Hunt plan, the EFH and EFIH Debtors filed a revised chapter 11 plan reflecting either a standalone equitization or an investment by existing creditors and/or third-parties to purchase EFH/EFIH's economic interests in Oncor.

39.     In July of 2016, the Debtors proposed a merger transaction with NextEra Energy, Inc. ("**NEE**"), a previous bidder for Oncor's assets, whereby NEE would acquire the EFH and EFIH Debtors' economic interests in Oncor through a tax-efficient merger.   The Debtors thereafter filed an amended plan incorporating the terms of the proposed NEE transaction.

40.     A condition precedent to the effective date of the NEE Plan was that the orders entered by the Court disallowing certain makewhole claims would not have to be stayed, reversed, or remanded on appeal.   On November 17, 2016, the United States Court of Appeals for the Third Circuit, however, issued an opinion reversing this Court's decisions, requiring the

Debtors to file yet another revised plan of reorganization and to resolicit votes on an amended NEE plan.[3]

41.    On February 17, 2017, the Court confirmed the amended NEE plan.  On April 13, 2017, however, the PUCT entered an order finding that the transactions contemplated by the NEE plan were not in the "public interest," and as result the NEE plan also could not be consummated.

42.    In June 2017, Berkshire Hathaway Energy Company ("**BHE**") submitted a proposal to acquire the EFH/EFIH Debtors' economic interests in Oncor through a merger transaction.  The EFH and EFIH Debtors determined it was in their best interests to terminate the NEE merger agreement and instead seek confirmation of a plan of reorganization implementing a BHE merger transaction.

43.    In August 2017, while proceeding to confirmation of a plan implementing the merger, the EFH and EFIH Debtors received an alternative transaction proposal from Sempra Energy ("**Sempra**") which largely preserved the structure of the BHE transaction but contemplated a materially increased purchase price. Following additional negotiations with key stakeholders, the EFH and EFIH Debtors terminated the BHE merger agreement, entered into a merger agreement with Sempra, and proposed a plan of reorganization to implement the Sempra merger transaction.  Sempra and Oncor thereafter again sought PUCT approval for a merger transaction proposed in a plan.

44.    On February 15, 2018, the PUCT noted in an open meeting that all objections to regulatory approval had been resolved, and instructed PUCT staff to draft an order approving the Sempra transaction.  The Court thereafter confirmed the Sempra plan on February 27, 2018.

---

[3] In the interim, the TCEH Debtors and EFH Shared Services Debtors proposed their own stand-alone plan of reorganization.  That plan was confirmed by the Court, and was consummated on October 3, 2016.

Final PUCT approval for the transaction was obtained on March 8, 2018, and the Sempra plan was consummated the next day.

46.     S&L, again,  was not  heavily involved in the negotiation and consideration of all plans proposed during the Fee Period, but was required to continue to be conversant the major points of contention and progress to confirmation of a plan and follow related appeals of certina of the foregoing orders by both the fedral courts and the PUCT.

46.     More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously filed with the Court.

**4.     Communications with Professionals**

*Fees: $7,932.00        Total Hours: 11.20*

47.     S&L participated in many telephone calls and email "conversations" with Cravath, Jenner and Goldin, as well as with Debtors' lead counsel and  other special conflicts counsel over the life of the engagement. The detailed descriptions of what was done in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously filed with the Court and the eleventh one just filed.

**5.     Fee Applications – Others**

*Fees: $86,090.50        Total Hours: 211.90*

48.     S&L was responsible for reviewing the fee applications of Cravath, Jenner and Goldin for accuracy and  compliance with the applicable procedure orders and local rules, and filing and having them served. More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category,

13

are included in the ten Interim Applications previously and the Eleventh Interim just filed with the Court.

**6.      Fee Applications – S&L**

*Fees: $105,277.50      Total Hours: 366.40*

49.      This category included all of S&L's time in composing, revising, filing and service of its own fee applications.  Most of the hours billed were by paraprofessionals. More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously and the Eleventh Interim just filed with the Court.

**7.      Hearings**

*Fees: $150,045.50          Total Hours: 217.80*

50.      As required of Delaware counsel, S&L attended all necessary live and telephonic hearings before this Court and participated in certain  other conference calls and meetings during the Fee Period.  The precise details of hearings attended, , as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously and the Eleventh Interim just filed with the Court.

**8.      Legal and Factual Research**

*Fees: $1,726.00      Total Hours:  2.80*

51.      S&L did very little work in this category, relying almost exclusively on lead counsel  to do so. Descriptions of research done, as well as the detailed time records for this Matter Category, are included in the ten Interim Applications previously and the Eleventh Interim just filed with the Court.

**9.      Meetings**

*Fees: $0          Total Hours: 0*

14

52.     S&L recorded no time to this category.

**10.     Plans of Reorganization and Disclosure Statements**
*Fees: $57,424.50          Total Hours:79.50*

66. As Delaware counsel who was listed as cocounsel on all such documents, , S&L was required to read the relevant portions of all plans and disclosure documents, and to discuss the progress and process and local requirements with lead counsel.  Detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously and the Eleventh Interim just filed with the Court

**11.     Pleadings, Motions, & Briefs**
*Fees: $36,854.00          Total Hours: 53.20*

67.  As Delaware counsel who was listed as cocounsel on all such documents, and to extent that the Disinterested Member was required to file separate pleadings, S&L was required to read all briefing in support of and opposing approval, as well as objections and reservations of rights thereto, to file and serve documents separately filed and to discuss the progress and process and local requirements with lead counsel.  More detailed descriptions of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously and the Eleventh Interim just filed with the Court

**12.     Non-working Travel Time**
*Fees: $0          Total Hours: 0*

68. S&L billed no time to this category.

**13.     NextEra Energy, Inc. – Adversary Proceeding**
*Fees: $23,335.50          Total Hours: 46.10*

69. Due to conflicts perceived by Richards Layton & Finger , S&L was for a short time retained to act as primary Delaware counsel for the Debtors to work with Kirkland & Ellis to compose and then to review, revise, file and serve a complaint against NextEra.  An additional law firm was subsequently engaged to perform this task and S&L was excused. A detailed description of the work performed in this Matter Category, as well as the detailed time records for the work performed in this Matter Category, are included in the ten Interim Applications previously and the Eleventh Interim just filed with the Court

## VII.        Actual and Necessary Expenses Incurred by S&L

53.    As summarized in Exhibit E, S&L has incurred a total of $4,706.72 in expenses on behalf of EFIH during the Fee Period for which it seeks compensation.  These charges are intended to reimburse S&L's direct costs that are not included in S&L's hourly billing rates. Only clients who actually use services of the types set forth in Exhibit E of this Final Fee Application are separately charged for such services.

## VIII.      S&L's Requested Compensation and Reimbursement Should be Allowed

54.    As explained below, S&L submits that the services for which it seeks compensation in this Final Fee Application were, at the time provided, necessary for and beneficial to the EFIH and its estate and were provided to protect and preserve the EFIH estate. S&L further believes that it performed the services for EFIH economically, effectively, and efficiently, and they benefited EFIH and its constituents. S&L further submits that the compensation requested is reasonable in light of the nature, extent, and value of such services to EFIH and its estate and all parties in interest. Accordingly, S&L submits the compensation sought in this Final Fee Application is warranted and should be approved.

16

**A.      Reasonable and Necessary Fees Incurred in Providing Services to the Debtors**

55.      Section 330(a)(1) of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered … and reimbursement for actual, necessary expenses." Section 330(a)(3) sets forth the criteria for such an award:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)      the time spent on such services;
>
> (B)      the rates charged for such services;
>
> (C)      whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)      with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)      whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

56.      As analyzed below, S&L submits the elements governing awards of compensation justify the allowance requested.

**1.      The Time and Labor Required**

57.      During the Fee Period,  S&L's shareholders, associates, and paraprofessionals spent 974.20 hours in providing professional services for EFIH supporting  Cravath, Jenner and Goldin. It attempted to coordinate its efforts with each of them to prevent duplication of efforts

17

and thereby not spend more time than required. S&L required this amount of time to research and analyze the numerous, complex issues in the Chapter 11 Cases, to advise its client with respect to the issues, to participate in negotiations with other parties in interest in these Chapter 11 Case, and to perform the other tasks described above.

## 2.    The Rates Charged for Such Services

58.    During the Fee Period, S&L's hourly billing rates ranged from $595.00 to $765.00 per hour for shareholders, from $275.00 to $355.00 for associates, and from $160.00 to $180.00 for legal assistants. Based on the recorded hours expended by S&L's attorneys and paraprofessionals, the average hourly billing rate for S&L's services was $557.49.

59.    S&L's hourly rates are set at a level designed to compensate it fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere by comparable firms.

60.    The hourly rates and corresponding rate structure that S&L charges in this case are equivalent to or less than the hourly rates and corresponding rate structure that S&L charges for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required.

## 3.    The Necessity of the Services and the Benefit to the Estate

61.    The services S&L provided to EFIH have conferred substantial benefit on EFIH's estate and were necessary because EFIH needed independent counsel to advise and represent it on Conflict Matters. Without independent counsel, EFIH would have found it difficult, if not impossible, to protect its interests vis-a-vis the other Debtors in the Chapter 11 Cases.

18

4.      **The Reasonableness of the Time Spent, Based on the Complexity, Importance, Nature of the Issues**

62.     S&L performed the services in a reasonable amount of time, given the complexity of the issues involved and the various intercompany legal issues facing EFIH.  S&L's detailed time records show that the time spent on each of the matters was necessary and appropriate to advising and representing EFIH on conflict matters.

5.      **The Experience, Reputation, and Ability of the Attorneys Providing Services**

63.     S&L attorneys have achieved a high degree of expertise and positive reputations in their respective fields. In addition, it is highly regarded as Delaware counsel by all of the judges of the Delaware Bankruptcy Court.

6.      **Customary Compensation**

64.     S&L relies on the Court's experience and knowledge with respect to the compensation awards in similar cases as well as for other counsel in these Chapter 11 Cases. In addition, as noted above, the compensation S&L seeks in this Final Fee Application is comparable to the compensation it would have sought for comparable work outside of a chapter 11 case.

65.     S&L submits that the compensation requested is reasonable under all the factors considered under section 330 of the Bankruptcy Code and that the factors justify the allowance in full of S&L's compensation and reimbursement request.

B.      **Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors**

66.     For the Fee Period, S&L requests reimbursement of $4,706.72 for reasonable and necessary costs and expenses incurred on behalf of EFIH.

67.     S&L's normal billing rates do not take these costs and expenses into consideration. Rather, S&L bills each cost and expense to the applicable client. Because of the

disparity between the different clients' requirements for expenses such as travel, computer-assisted research, teleconference services, postage, courier and messenger services, and photocopying, it is difficult to charge costs and expenses fairly and equitably by including them in S&L's ordinary billing rates. Accordingly, S&L generally charges each client for such costs and expenses separately, in each case, at S&L's costs.

68.    S&L does not include the amortization of the cost of any investment, equipment, or capital outlay in its charges for these services.

69.    Under Rule 2016-2 of the Local Bankruptcy Rules, S&L represents that its rate for duplication for black-and-white copies is $0.10 per page and for color copies is $0.50 per page, there is no charge for telecopier transmissions, and there is no surcharge for computer-assisted research.

70.    Any services billed by a third-party vendor, with the exception of certain computer-assisted research charges, are charged to EFIH in the amount billed to and paid by S&L. Like many large law firms, S&L has negotiated a special arrangement with computerized research companies under which S&L pays a flat rate monthly fee for computerized research services. Consistent with its general policy of billing out-of-pocket expenses only to clients for which the use of such services is required, S&L separately charges each client for computer-assisted research. To account for such charges while passing through S&L's cost savings resulting from its special arrangements, S&L charges those clients for which such services are required at a reduced rate that is less than the rate charged by the computerized research companies to the general public for such services. These charges are intended to cover S&L's direct costs for computerized research.

71.    S&L has made reasonable efforts to minimize its costs and expenses in the Chapter 11 Cases. Each of the costs and expenses S&L has incurred in providing professional services to EFIH was necessary, reasonable, and justified under the circumstances to serve the needs of EFIH and its estate.

### IX.    Statement by S&L Under ¶ C(5) of the U.S. Trustee Guidelines

72.    S&L did not agree to any variations from, or alternatives to, its standard or customary billing rates, fees or terms for services pertaining to the engagement that were provided during the Fee Period, except as required by the U.S. Trustee Guidelines and the Fee Committee guidelines.

73.    As noted above, with the consent of the Debtor and following consultation with the Fee Committee, S&L did not prepare monthly budgets.

74.    None of the professionals included in this Application varied their hourly rate based on the geographic location of the Chapter 11 Cases.

75.    The Application does not include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices.

76.    The Application does not include time or fees for reviewing time records to redact any privileged or other confidential information.

77.    The rates charged by S&L for certain of its attorneys increased during the course of the Debtor's case, typically at the beginning of a calendar year.  The Interim Applications previously filed by S&L take into account those rate increases.  S&L's engagement letter with EFIH provides that S&L may change its hourly base rates each year, typically as of January

21

## X.    Reservation of Rights and Notice

78.    It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Final Fee Application. S&L reserves the right to amend its Final Fee Application to include such amounts.

79.    EFIH has provided notice of this Final Fee Application to: (a) the U.S. Trustee; (b) counsel to the agent of the EFIH First Lien DIP Facility; (c) counsel to the agent of the TCEH DIP Facility; (d) counsel to the Creditors' Committees; and (e) the Fee Committee (collectively, the "**Notice Parties**").

## XI.    No Prior Request

80.    The compensation and expense reimbursement sought in this Final Fee Application has been the subject of the Interim Applications.  However, no prior application for final approval of compensation or reimbursement of expenses has been made to this or any other court.

WHEREFORE, S&L respectfully requests that the Court enter an order (a) awarding S&L final compensation for professional and paraprofessional services provided during the Fee Period in the amount of $521,295.50 and reimbursement of actual, reasonable and necessary expenses incurred in the Fee Period in the amount of $4,706.72; (b) authorizing and directing EFIH to remit payment to S&L for such fees and expenses; (c) authorizing and directing the payment of any amounts previously approved by the Court as to which payment has been withheld; and (d) granting such other relief as is appropriate under the circumstances.

Dated: April 23, 2018

**STEVENS & LEE, P.C.**

*/s/ Joseph H. Huston, Jr.*
Joseph H. Huston, Jr. (No. 4035)
919 North Market Street, Suite 1300
Wilmington, Delaware 19801
Telephone:    (302) 425-3310
Facsimile:    (610) 371-7972
Email:        jhh@stevenslee.com

23

2676109.1