**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date:  To Be Determined** |
| | ) | **Objection Deadline: May 15, 2018 at 4:00 p.m.** |
| | ) | |

**SUMMARY COVER SHEET
TO THE FINAL FEE APPLICATION
OF KIRKLAND & ELLIS LLP AND KIRKLAND
& ELLIS INTERNATIONAL LLP, ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION, FOR THE PERIOD
FROM APRIL 29, 2014 THROUGH AND INCLUDING MARCH 9, 2018**

| *General Information* | |
|---|---|
| Name of Applicants: | Kirkland & Ellis LLP and Kirkland & Ellis International LLP |
| Authorized to Provide Services to: | Energy Future Holdings Corp., *et al.* |
| Date of Order Authorizing the Debtors to Retain Kirkland: | September 16, 2014, *nunc pro tunc* to April 29, 2014 [D.I. 2052] |

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

| *Summary of Fees and Expenses Sought in the Fee Application* | |
|---|---|
| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | April 29, 2014 through and including March 9, 2018 |
| Amount of Final Compensation Sought as Actual, Reasonable, and Necessary: | $172,805,511.20[2] |
| Amount of Final Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $10,433,832.69[3] |
| Blended Rate In This Application For All Attorneys | $809.51/hour |
| Blended Rate In This Application For All Timekeepers | $745.26/hour |

This is a ***final*** fee application.

Kirkland did not spend any time or hours prior to the EFH Effective Date preparing this Fee Application. Additional detail regarding time spent and fees incurred reviewing or revising time records and preparing, reviewing, and revising invoices for privileged or confidential information during the Fee Period is set forth in the Husnick Declaration.

---

[2]    As described herein in paragraph 12, pursuant to negotiations with the Fee Committee in connection with the Interim Fee Applications, Kirkland agreed to voluntarily writedown certain fees. The amount of final compensation sought pursuant to the Fee Application reflects such voluntary reductions.

[3]    As described herein in paragraph 12, pursuant to negotiations with the Fee Committee in connection with the Interim Fee Applications, Kirkland agreed to voluntarily writedown certain expenses. The amount of final expense reimbursement sought pursuant to the Fee Application reflects such voluntary reductions.

| *Rate Increases Applicable to the Fee Period* | |
|---|---|
| Are Any Timekeeper's Hourly Rates Higher Than Those Charged and Approved Upon Retention? | *See* Exhibit E |

| *Summary of Past Requests for Compensation and Prior Payments*[4] | |
|---|---|
| Total Allowed Compensation Paid to Date: | $166,925,240.20 |
| Total Allowed Expenses Paid to Date: | $10,309,472.89 |
| Number of Professionals With Time Included In This Application: | 423 |

PRIOR INTERIM FEE APPLICATIONS & ADJUSTMENTS:

| Date [Docket No.] | Interim Fee Period ("IFP") | Requested | | Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| October 31, 2014 [D.I. 2683] | *First IFP* 04-29-14 to 8-31-14 | $25,600,790.50 | $1,248,049.03 | $24,511,927.32 | $1,122,860.04 |
| February 17, 2015 [D.I. 3569] | *Second IFP* 9-1-14 to 12-31-14 | $25,084,064.00 | $1,984,872.90 | $23,423,494.51 | $1,755,304.93 |
| June 15, 2015 [D.I. 4773] | *Third IFP* 1-1-15 to 4-30-15 | $28,712,575.50 | $3,047,572.82 | $28,214,940.60 | $2,906,690.80 |
| October 15, 2015 [D.I. 6484] | *Fourth IFP* 5-1-15 to 8-31-15 | $20,074,835.50 | $1,256,581.06 | $19,500,692.25 | $1,183,764.87 |
| January 22, 2016 [D.I. 7719] | *Fifth IFP* 9-1-15 to 12-31-15 | $20,074,835.50 | $1,256,581.06 | $19,500,692.25 | $1,183,764.87 |
| June 15, 2016 [D.I. 8736] | *Sixth IFP* 1-1-16 to 4-30-16 | $6,832,541.50 | $422,706.64 | $6,197,147.55 | $333,509.07 |
| October 17, 2016 [D.I. 9844] | *Seventh IFP* 5-1-16 to 8-31-16 | $15,935,849.50 | $590,119.93 | $15,732,906.30 | $530,438.85 |
| February 15, 2017 [D.I. 10840] | *Eighth IFP* 9-1-16 to 12-31-16 | $8,239,650.00 | $318,796.13 | $8,065,781.00 | $287,714.85 |
| June 14, 2017 [D.I. 11349] | *Ninth IFP* 1-1-17 to 4-30-17 | $6,309,112.50 | $222,741.03 | $6,211,600.87 | $208,883.03 |

---

[4]    Kirkland filed the January Monthly Fee Statement on March 6, 2018 [D.I. 12792], and the February/March Monthly Fee Statement on April 5, 2018 [D.I. 12917].  As of the date hereof, Kirkland has not yet received payments relating to compensation and expenses sought in these two Monthly Fee Statements.

| | | | | | |
|---|---|---|---|---|---|
| October 17, 2017 [D.I. 12071] | **Tenth IFP** 5-1-17 to 8-31-17 | $10,208,548.00 | $251,875.14 | $9,945,909.05 | $251,875.14 |
| February 14, 2018 [D.I. 12635] | **Eleventh IFP** 9-1-17 to 12-31-17 | $3,442,137.50 | $58,404.97 | *Pending* | *Pending* |
| April 17, 2018 [D.I. 12961] | **Twelfth IFP** 1-1-18 to 3-9-18 | $2,576,688.00 | $67,552.31 | *Pending* | *Pending* |
| **Total fees and expenses approved by interim orders to date:** | | | | **$166,925,240.20** | **$10,309,742.89** |

**FEE COMMITTEE'S REQUESTED ATTACHMENTS TO FINAL FEE
APPLICATIONS**

| | |
|---|---|
| **List of Professionals** -Local Rule 2016-2(c)(2) and ¶C.2.k of the U.S. Trustee Guidelines | *See* Exhibit E |
| **Compensation by Project Category**- and ¶ C.8.a and b of the U.S. Trustee Guidelines | *See* Exhibit I |
| **Expense Summary**- Local Rule 2016-2(c)(ii) and ¶ C.12 of the U.S. Trustee Guidelines | *See* Exhibit F |
| **List of Professionals by Matter**- ¶ C.8.c. of the U.S. Trustee Guidelines | *See* Exhibit J |
| **Detailed Time Records** –Local Rule 2016-2(d) and ¶ C.9 of the U.S. Trustee Guidelines | Kirkland has previously provided Detailed Time Records in the form of Exhibits appended to each of the Interim Fee Applications. In satisfaction of this Local Rule, Kirkland hereby incorporates by reference all Detailed Time Records and previously filed in conjunction with the Interim Fee Applications. |
| **Detailed Expense Records –** Local Rule 2016-2(e)(i) and U.S. Trustee Guidelines ¶ C.9 | Kirkland has previously provided Detailed Expense Records in the form of Exhibits appended to each of the Interim Fee Applications. In satisfaction of this Local Rule, Kirkland hereby incorporates by reference all Detailed Expense Records and previously filed in conjunction with the Interim Fee Applications.[5] |

In accordance with the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland"), attorneys for the above-captioned debtors and debtors in possession (collectively, the "Debtors"),[6] submit this

---

[5]    Kirkland incurred $4,357.39 in costs during January and February of 2018 for which Kirkland has not yet sought compensation.  These costs are incorporated into requests presented with this Fee Application (as defined below), and detailed expense records of such costs are attached to the Fee Application as Exhibit K.

[6]    Texas Competitive Electric Holdings Company LLC ("TCEH" and, together with its direct parent company, Energy Future Competitive Holdings Company LLC ("EFCH") and certain of TCEH's direct and indirect subsidiaries, the "TCEH Debtors") and certain EFH Debtors (defined in the TCEH Plan as the EFH Shared

summary (this "<u>Summary</u>") of fees and expenses sought as actual, reasonable, and necessary to which this Summary is attached (the "<u>Fee Application</u>")[7] for the period from April 29, 2014 through and including March 9, 2018 (the "<u>Fee Period</u>").  Kirkland submits the Fee Application as a final fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "<u>Interim Compensation Order</u>") and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896], as amended on February 1, 2018 [D.I. 12552] (the "<u>Fee Committee Order</u>") and communications with the Fee Committee.

---

Services Debtors) emerged from bankruptcy on October 3, 2016 (the "<u>TCEH Effective Date</u>"), and are no longer debtors in possession.

The EFH/EFIH Debtors (as defined in the EFH/EFIH Plan) emerged from bankruptcy on March 9, 2018 (the "<u>EFH Effective Date</u>"), and are no longer debtors in possession.

[7]    Capitalized terms used but not otherwise defined in this Summary shall have the meanings ascribed to such terms in the Fee Application.

Dated: April 23, 2018
    Chicago, Illinois

/s/ Chad J. Husnick

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
    stephen.hessler@kirkland.com
    brian.schartz@kirkland.com
    aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
    marc.kieselstein@kirkland.com
    chad.husnick@kirkland.com
    steven.serajeddini@kirkland.com

*Co-Counsel to the Reorganized TCEH Debtors, Reorganized*
*EFH Shared Services Debtors, and the EFH Plan Administrator*
*Board*

7

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FINAL FEE APPLICATION OF
KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS
INTERNATIONAL LLP, ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION, FOR THE PERIOD FROM
APRIL 29, 2014 THROUGH AND INCLUDING MARCH 9, 2018**

Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland"),

attorneys for the above-captioned debtors and debtors in possession (collectively, the "Debtors"),

hereby submit this final fee application (the "Fee Application") for allowance of compensation

for professional services provided in the amount of $172,805,511.20 and reimbursement of

actual and necessary expenses in the amount of $10,433,832.69 that Kirkland incurred for the

period from April 29, 2014 through and including March 9, 2018 (the "Fee Period"). In support

of this Fee Application, Kirkland submits the declaration of Chad J. Husnick, the president of

Chad J. Husnick, P.C., a partner of Kirkland & Ellis LLP, and a partner of Kirkland & Ellis

International LLP, (the "Husnick Declaration"), which is attached hereto as **Exhibit A** and

incorporated by reference. In further support of this Fee Application, Kirkland respectfully

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

states as follows.[2]

**Jurisdiction**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Debtors confirm their consent pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Fee Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 2016, Local Bankruptcy Rule 2016-1 and 2016-2, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order"), and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896], as amended on February 1, 2018 [D.I. 12552] (the "Fee Committee Order").[3]

---

[2]    Capitalized terms used but not otherwise defined in this Fee Application shall have the meanings ascribed to such terms in the *Summary Cover Sheet to the Final Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from April 29, 2014 Through and Including March 9, 2018.*

[3]    On October 3, 2014, October 7, 2014, December 1, 2014, March 9, 2015, June 9, 2015, December 15, 2015, and March 12, 2018, the Fee Committee (as defined herein) distributed guidelines to those professionals retained in these chapter 11 cases regarding a number of topics, including, expense reimbursement, fee review criteria, and the contents of interim and final fee applications (collectively, the "Fee Committee Guidelines").

## Background

1.       On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of the TCEH Debtors (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company, LLC ("EFIH"), EFIH Finance, Inc., and EECI, Inc. (EFH Corp., EFIH, and EFIH Finance Inc., and their direct and indirect Debtor subsidiaries excluding the TCEH Debtors, such committee, the "EFH Creditors' Committee" and, together with the TCEH Creditors' Committee, the "Official Committees") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98], and the *Disclosure Statement for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11889].

---

Following (a) the TCEH Effective Date, fees and expenses attributable to TCEH Debtors and the EFH Shared Services Debtors will be paid from the Professional Fee Escrow Account (defined in the TCEH Plan), on the terms set forth in the TCEH Plan and the order confirming the TCEH Plan and (b) the EFH Effective Date, fees and expenses attributable to the EFH Debtors and the EFIH Debtors will be paid from the EFH Professional Fee Escrow Account and the EFIH Professional Fee Escrow Account (each as defined in the EFH/EFIH Plan), on the terms set forth in the EFH/EFIH Plan and the order confirming the EFH/EFIH Plan.

Time billed (a) to the TCEH Debtors and the EFH Shared Services Debtors after the TCEH Effective Date and (b) to the EFH Debtors and the EFIH Debtors after the EFH Effective Date is not reflected in this Fee Application.

2.    On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all retained professionals in these cases.

3.    Given the size and complexity of the Debtors' chapter 11 cases, the U.S. Trustee, the Debtors, and the TCEH Creditors' Committee agreed to recommend that the Court appoint a fee committee to review and report on, as appropriate, interim and final fee applications filed by all retained professionals in accordance with sections 328, 330, and 331 of the Bankruptcy Code and the Interim Compensation Order (the "Fee Committee").  On August 21, 2014, the Court entered the Fee Committee Order, appointing the Fee Committee and establishing the procedures governing the Fee Committee's review of the Debtors' retained professionals' applications for compensation and the resolution of any concerns raised during such review.  On February 1, 2018, the Court entered the *Order Amending Stipulation and Order Appointing Fee Committee and Granting Related Relief* [D.I. 12552], which amended the Fee Committee Order.

4.    On October 3, 2016, in accordance with the order confirming the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9199] (the "TCEH Plan"), Texas Competitive Electric Holdings Company LLC ("TCEH" and, together with its direct parent company, Energy Future Competitive Holdings Company LLC ("EFCH") and certain of TCEH's direct and indirect subsidiaries, the "TCEH Debtors") and certain EFH Debtors (defined in the TCEH Plan as the EFH Shared Services Debtors) emerged from bankruptcy.  Subsequently, the EFH/EFIH Debtors pursued confirmation of a chapter 11 plan of reorganization (the "EFH/EFIH Plan").  On March 9, 2018, in accordance with the *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company*

RLF1 19191694v.1

*LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12673] (the "<u>EFH Confirmation Order</u>"), the EFH/EFIH Debtors emerged from bankruptcy.[4]

5.      Pursuant to Article II.A of the EFH/EFIH Plan, the Debtors' professionals (including Kirkland) are required to file their final request for payment of Professional Fee Claims (as defined in the EFH/EFIH Plan) no later than 45 days after the EFH Effective Date.  In compliance with the requests of the Fee Committee, the Debtors concurrently filing their final request for payment of fees attributable to the TCEH Debtors within this Fee Application.

**Preliminary Statement**

6.      With nearly $40 billion in assets and $49 billion in liabilities, the Debtors' chapter 11 cases constituted the largest operating chapter 11 case in the United States Bankruptcy Court for the District of Delaware and the seventh largest chapter 11 case filed in history (by liabilities) as of the Petition Date.  While the Debtors and their stakeholders were keenly aware that the fragility of the energy market, combined with the sheer size of the Debtors' debt load, made the Debtors' chapter 11 cases complex, no party could have predicted the magnitude of challenges that ultimately faced the Debtors in their path to emergence.

7.      During the 1,410 days between the Petition Date and the EFH Effective Date, Kirkland advised the Debtors in connection with four separate confirmation trials, six disclosure statement hearings, nearly a dozen scheduling hearings, three merger agreement hearings, the production of millions of pages in discovery, various issues involving unprecedented levels of tax complexity, multiple plan support agreements, and multiple, multi-billion dollar DIP financing facilities—all against the backdrop of an evolving creditor base and increasing interest burn.

---

[4]     *Notice of Entry of EFH Confirmation Order and Occurrence of EFH Effective Date* [D.I. 12801] (the "<u>EFH Effective Date</u>").

8.    Indeed, the Debtors' chapter 11 cases have involved at least eight separate "phases," each of which could have been a separate chapter 11 case under ordinary circumstances.

- From April 2014 to July 2014, Kirkland advised the Debtors in connection with first and second day relief, the first request to extend exclusivity, and the termination of the Debtors' prepetition restructuring support agreement.

- From August 2014 to January 2015, Kirkland advised the Debtors in connection with various operational motions for the TCEH Debtors, an informal marketing process to sell EFH's indirect economic interest in Oncor, and obtaining approval of the process for establishing and implementing certain key compensation programs (which process the Court deemed to be the "gold standard" in compensation process).

- From January 2015 to July 2015, Kirkland advised the Debtors in connection with a formal marketing process and the disinterested directors reached agreement on the global Disinterested Directors Settlement (as defined in the TCEH Plan), resolving billions of dollars in potential claims and avoiding value-destructive litigation.

- From August 2015 to May 2016, Kirkland advised the Debtors in connection with approval of the Disinterested Directors Settlement, confirmation and consummation of a plan of reorganization contemplating a merger sponsored by Hunt Consolidated, Inc. and certain of its co-investors (the "Hunt Plan").

- From May 2016 to November 2016, Kirkland advised the Debtors in connection with a new EFH/EFIH Plan, following the termination of the Hunt Plan, as well as bifurcation of the EFH/EFIH Debtors' chapter 11 cases from the TCEH Debtors chapter 11 cases, ultimately allowing the TCEH Debtors and EFH Shared Services Debtors (as defined in the TCEH Plan) to emerge from chapter 11 on October 3, 2016.

- From November 2016 to April 2017, Kirkland advised the Debtors in responding to the opinion of the United States Court of Appeals for the Third Circuit regarding Makewhole Claims (as defined in the EFH/EFIH Plan) (the "Makewhole Opinion") and its effects on the EFH/EFIH Plan, ultimately yielding the EFIH Settlement Agreement (as defined in the EFH/EFIH Plan) and confirmation of a plan of reorganization contemplating a merger with NextEra Energy, Inc. (the "NEE Plan").

- From April 2017 to August 2017, Kirkland advised the Debtors on evaluating next steps following the Public Utility Commission of Texas' ruling with respect to the NEE Plan, including in connection with negotiations with Berkshire Hathaway Energy, Sempra Energy, and Elliott Management.

- Finally, from August 2017 to March 2018, Kirkland advised the Debtors in connection with confirmation, and, ultimately, consummation of the EFH/EFIH Plan.

9.      The Debtors' chapter 11 cases have not been easy.  Beginning with the first exclusivity extension request for 60 days (which received no less than eight separate objections), the Debtors have spent the last four years negotiating with nearly a dozen very active, sophisticated creditors to maximize the value of their estates.  As facts and circumstances changed, sometimes against the expectations of most, if not all parties, Kirkland advised the Debtors in swiftly responding to such changes.  As a result, the Debtors were ultimately able to emerge from chapter 11 having shed over $40 billion in debt pursuant to two separate multi-billion transactions.

### The Debtors' Retention of Kirkland

10.      On September 16, 2014, the Court entered the *Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2052] (the "Retention Order"), attached hereto as **Exhibit B** and incorporated by reference. The Retention Order authorizes the Debtors to compensate and reimburse Kirkland in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Fee Committee Order, and the Interim Compensation Order.  The Retention Order also authorizes the Debtors to compensate Kirkland at Kirkland's hourly rates charged for services of this type and to reimburse Kirkland for actual and necessary out-of-pocket expenses incurred, subject to application to this Court.[5]  The particular terms of Kirkland's engagement are detailed in the

---

[5]      In accordance with the Retention Order, Kirkland does not seek reimbursement of expenses for office supplies pursuant to this Fee Application.

engagement letter by and between Kirkland and the Debtors, effective as of June 19, 2012, and attached hereto as **Exhibit C**.

11.    The Retention Order authorizes Kirkland to provide the following services consistent with and in furtherance of the services enumerated above:

  a.    advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

  b.    preparing pleadings, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates and consistent with the services identified in the Retention Order;

  c.    appearing before the Court and any appellate courts to represent the interests of the Debtors' estates before those courts in connection with the services in the Retention Order; and

  d.    performing all other legal services reasonably necessary or otherwise beneficial for the Debtors in connection with these chapter 11 cases.

12.    In addition, Kirkland has voluntarily reduced its fees by $5,498,070.00 and its expenses by $986,448.56 pursuant to the Monthly Fee Statements, prior to any negotiations with the Fee Committee.  Following negotiations with the Fee Committee, Kirkland agreed to additional fee reductions of $5,447,204.80 and expense reductions of $863,347.41.  For the avoidance of doubt, Kirkland does not seek payment of any fees or expenses it has voluntarily agreed to reduce, as described in this paragraph 12.

## Disinterestedness of Kirkland

13.    To the best of the Debtors' knowledge and as disclosed in:  the *Declaration of Edward O. Sassower, P.C. in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Effective Date* [D.I. 660] (the "First Sassower Declaration"); the *Amended Declaration of Edward O. Sassower in Support of the*

8

*Debtors Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Effective Date* [D.I. 1733] (the "<u>Amended Sassower Declaration</u>"); the *First Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2005] (the "<u>First Supplemental Sassower Declaration</u>"); the *Second Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2949] (the "<u>Second Supplemental Sassower Declaration</u>"); the *Third Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 3041] (the "<u>Third Supplemental Sassower Declaration</u>"); the *Fourth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 4963] (the "<u>Fourth Supplemental Sassower Declaration</u>"); the *Fifth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition*

9

*Date* [D.I. 6240] (the "<u>Fifth Supplemental Sassower Declaration</u>"); the *Sixth Supplemental Declaration of James H.M. Sprayregen in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 7418] (the "<u>Sixth Supplemental Sprayregen Declaration</u>");  the *Seventh Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 8734] (the "<u>Seventh Supplemental Sassower Declaration</u>"); the *Eighth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 9216] (the "<u>Eighth Supplemental Sassower Declaration</u>");  the *Ninth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 10280] (the "<u>Ninth Supplemental Sassower Declaration</u>"); the *Tenth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 10408] (the "<u>Tenth Supplemental Sassower Declaration</u>"); the *Eleventh Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order*

10

*Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 11124] (the "<u>Eleventh Supplemental Sassower Declaration</u>"); the *Twelfth Supplemental Declaration of Chad J. Husnick in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 11363] (the "<u>Twelfth Supplemental Husnick Declaration</u>"); the *Thirteenth Supplemental Declaration of Chad J. Husnick in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 11849] (the "<u>Thirteenth Supplemental Husnick Declaration</u>"); the *Fourteenth Supplemental Declaration of Chad J. Husnick in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 12054] (the "<u>Fourteenth Supplemental Husnick Declaration</u>"); the *Fifteenth Supplemental Declaration of Chad J. Husnick in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 12352] (the "<u>Fifteenth Supplemental Husnick Declaration</u>" and together with the First Sassower Declaration, the Amended Sassower Declaration, the First Supplemental Sassower Declaration, the Second Supplemental Sassower Declaration, the Third Supplemental Sassower Declaration, the Fourth Supplemental Sassower Declaration, the Fifth

11

Supplemental Sassower Declaration, the Sixth Supplemental Sprayregen Declaration, the Seventh Supplemental Sassower Declaration, the Eighth Supplemental Sassower Declaration, the Ninth Supplemental Sassower Declaration, the Tenth Supplemental Sassower Declaration, the Eleventh Supplemental Sassower Declaration, the Twelfth Supplemental Husnick Declaration, the Thirteenth Supplemental Husnick Declaration, and the Fourteenth Supplemental Husnick Declaration, the "Kirkland Declarations")[6], Kirkland (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors, or other parties-in-interest, except as may be disclosed in the Kirkland Declarations.

14.    Kirkland may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors in these chapter 11 cases.    In the Kirkland Declarations, Kirkland disclosed its connections to parties-in-interest that it has been able to ascertain using its reasonable efforts.    Kirkland will update the Kirkland Declarations or file additional ones, as appropriate, if Kirkland becomes aware of relevant and material new information.

15.    Kirkland performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

16.    Except to the extent of the advance payments paid to Kirkland that Kirkland previously disclosed to this Court in the Kirkland Declarations, Kirkland has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these chapter 11 cases.

---

[6]    Kirkland will file a final supplemental declaration on or prior to May 15, 2018, the deadline to object to this Fee Application.

17.    Pursuant to Bankruptcy Rule 2016(b), Kirkland has not shared, nor has Kirkland agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of Kirkland or (b) any compensation another person or party has received or may receive.

**Summary of Compliance with**
**Interim Compensation Order and Fee Committee Order**

18.    This Fee Application has been prepared in accordance with the Interim Compensation Order, the Fee Committee Order, Article II.A. of the EFH/EFIH Plan, and Article II.A. of the TCEH Plan.

19.    Kirkland seeks final compensation for professional services rendered to the Debtors during the Fee Period in the amount of $172,805,511.20 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $10,433,832.69.  During the Fee Period, Kirkland attorneys and paraprofessionals expended a total of 239,368.20 hours for which compensation is requested.

20.    Pursuant to the Interim Compensation Order, Kirkland has already received a total of $166,925,240.20 for legal services provided to the Debtors during the Fee Period and $10,309,472.82 for expenses incurred in connection therewith.

21.    Kirkland has sought payments totaling $2,012,104.24 under the Interim Compensation Order and the Fee Committee Order pursuant to the January Monthly Fee Statement and the February/March Monthly Fee Statement (each as defined in the Twelfth Interim Fee Application [D.I. 12961] and collectively, the "January-March Monthly Fee Statements").  Kirkland has submitted the January-March Monthly Fee Statements seeking payment of (a) 80% of the fees incurred by the Debtors for reasonable and necessary professional services rendered by Kirkland and (b) 100% of the actual and necessary costs and expenses

13

incurred by Kirkland in connection with the services provided to the Debtors for each month.  As of the filing of this Fee Application, the amounts set forth in the January-March Monthly Fee Statements have not been paid.  Kirkland anticipates receiving such amounts in advance of the hearing on this Fee Application.

22.     Additionally, Kirkland has sought payments totaling $1,176,054.20 under the Interim Compensation Order and the Fee Committee Order pursuant to the Eleventh Interim Fee Application [D.I. 12635] and the Twelfth Interim Fee Application [D.I. 12961], representing the sum of the 20% holdback on fees requested in the Eleventh Interim Fee Application ($688,427.50) and the 20% holdback on fees requested in the Twelfth Interim Fee Application ($487,626.70).  As of the filing of this Fee Application, the 20% holdback of fees requested to be paid pursuant to each such interim fee application have not been paid.  Kirkland anticipates receiving such amounts in advance of the hearing on this Fee Application.

23.     Accordingly, by this Fee Application, and solely to the extent such amounts have not been paid by the time of the hearing on this Fee Application, Kirkland seeks payment of the remaining $3,332,667.61 which represents all unpaid fees and expenses incurred during the Fee Period (*i.e.*, the unpaid amounts requested in the January-March Monthly Fee Statements and the 20% holdback on fees requested in the Eleventh Interim Fee Application and Twelfth Interim Fee Application).[7]

---

[7]     Kirkland's request additionally includes $4,357.39 in costs incurred during January and February of 2018, but not previously requested.  These costs are incorporated into requests presented with this Fee Application, and detailed invoices of such costs are attached hereto as Exhibit K.

### Fees and Expenses Incurred During Fee Period

**A.** **Customary Billing Disclosures**.

24.      Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  The hourly rates and corresponding rate structure utilized by Kirkland in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by Kirkland for other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect that such restructurings and other complex matters typically are national in scope and typically involve great complexity, high stakes, and severe time pressures.  For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit D** is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to the Debtors during the Fee Period.

**B.** **Fees Incurred During Fee Period**.

25.      In the ordinary course of Kirkland's practice, Kirkland maintains computerized records of the time expended to render the professional services required by the Debtors and their estates.  For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit E** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at Kirkland's current billing rates;

- the hourly billing rate for each attorney and each paraprofessional as disclosed in the first interim fee application;

- the number of rate increases since the inception of the case; and

- a calculation of total compensation requested for each timekeeper assuming there were no rate increases during the Fee Period.

**C.    Expenses Incurred During Fee Period**.

26.    In the ordinary course of Kirkland's practice, Kirkland maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.  Kirkland currently charges $0.16 per page for standard duplication in its offices in the United States.  Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, Kirkland charged no more than $0.10 per page for standard duplication services in these chapter 11 cases.  Kirkland does not charge its clients for incoming facsimile transmissions.

27.    For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit F** is a summary of expenses incurred during the Fee Period and setting forth the total amount of reimbursement sought with respect to each category of expenses for which Kirkland is seeking reimbursement.

**Proposed Payment Allocation**

28.    In accordance with paragraph 2(b) of the Interim Compensation Order, Kirkland proposes the following allocation of the fees and expenses billed during the Fee Period among (a) EFH Corp., (b) EFIH, and (c) the TCEH Debtors:[8]

---

[8]    On October 3, 2016, the TCEH Effective Date occurred, and accrued but unpaid amounts for fees and expenses attributable to the TCEH Debtors billed during the Fee Period will be paid from the Professional Fee Escrow Account (as defined in the TCEH Plan) and on the terms set forth in the TCEH Plan and order confirming the TCEH Plan.

| Direct Benefit Fees:  $39,906,306.24 (comprised of $39,702,404.00 fees and $203,902.24 expenses) ||
|---|---|
| **Debtor(s)** | **Amount** |
| EFH Corp. | $1,955,424.17 |
| EFIH | $17,561,440.75 |
| TCEH Debtors | $20,389,441.32 |
| *Total:* | $39,906,306.24 |
| Collective Benefit Fees:  $149,783,741.91 (comprised of $138,688,866.50 fees and $11,094,875.41 expenses) ||
| **Debtor(s)** | **Amount** |
| EFH Corp. | $11,104,949.64 |
| EFIH | $73,136,683.96 |
| TCEH Debtors | $65,535,353.06 |
| *Total:* | $149,783,741.91 |
| *Grand Total:* | $189,690,048.15[9] |

29.      Throughout the Fee Period, Kirkland generally allocated the fees and expenses sought in connection with this Final Fee Application "to the applicable Debtors for whose direct benefit such fees and expenses were incurred"[10] (the "<u>Direct Benefit Fees</u>"), in accordance with the Interim Compensation Order.  For example, services performed in connection with the EFIH DIP Facility were billed as Direct Benefit Fees solely to EFIH.  Alternatively, services performed in connection with negotiations with the TCEH Committee were billed as Direct Benefit Fees solely to TCEH.  In each case, Kirkland timekeepers billed their time to EFIH-only, or TCEH-only specific client matter numbers (*i.e.*, time was tracked to each particular estate).

---

On March 9, 2018, the EFH Effective Date occurred, and accrued but unpaid amounts for fees and expenses attributable to the EFH Debtors and EFIH Debtors billed during the Fee Period will be paid from the EFH Professional Fee Escrow Account and EFIH Professional Fee Escrow Account (each as defined in the EFH/EFIH Plan) and on the terms set forth in the EFH/EFIH Plan and order confirming the EFH/EFIH Plan.

The fees and expenses set forth in this section do not reflect the voluntary reductions Kirkland agreed to following negotiations with the Fee Committee in connection with the Interim Fee Applications, as described in paragraph 12 herein and in the Summary Cover Sheet attached hereto.

[9]    Kirkland notes that <u>Exhibit G</u> and <u>Exhibit I</u> attached hereto represent total fees of $189,690,046.26, which represents a discrepancy of $0.11 as compared to this figure.

[10]    *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "<u>Interim Compensation Order</u>").

17

30.     Moreover, in situations where fees and expenses were incurred for the collective benefit of the EFH, EFIH, and TCEH Debtors, Kirkland generally allocated such fees and expenses "to each Debtor in the same proportion that the amount of Direct Benefit Fees incurred by [Kirkland] for such Debtor bears to the total amount of Direct Benefit Fees incurred by [Kirkland] for all of the Debtors"[11] (the "Collective Benefit Fees"). In each case, Kirkland timekeepers billed their time to client matter numbers that had the prefix [ALL], and the fees incurred for the aggregate [ALL] client matter numbers represented the total Collective Benefit Fees.

31.     By way of illustrative example, assume in a particular Monthly Fee Statement for services performed prior to the TCEH Effective Date, Kirkland timekeepers billed (a) $100 in fees to EFH-only, for services that directly benefitted EFH; (b) $200 in fees to EFIH-only, for services that directly benefitted EFIH; (c) $500 in fees to TCEH-only, for services that directly benefitted TCEH; and (d) $12,000 in fees for services that collectively benefitted each of EFH, EFIH, and TCEH.  *First*, in such Monthly Fee Statement, Kirkland would request compensation of $10,240—*i.e.*, 80% of all fees billed in such month.  *Second*, with respect to the Direct Benefit Fees, Kirkland would request EFH to pay $80 (*i.e.*, 80% of $100), EFIH to pay $160 (*i.e.*, 80% of $200), and TCEH to pay $400 (*i.e.*, 80% of $500), for a total of $640 in Direct Benefit Fees. *Third*, with respect to the Collective Benefit Fees, Kirkland would request (a) EFH to pay 12.5% (*i.e.,* $80/$640), or $1,200; (b) EFIH to pay 25% (*i.e.*, $160/$640), or $3,000; and (c) TCEH to pay 62.5% (*i.e.*, $400/$640), or $7,500.  As a result, the allocation of fees and expenses to EFH, EFIH, and TCEH changed each month depending on whether there was comparatively more services performed for the benefit of a single estate as opposed to all of the Debtors' estates.

---

[11]     *Id.*

32.     Following the TCEH Effective Date, in the event Kirkland timekeepers performed services that benefitted the EFH Debtors, the EFIH Debtors, and the Reorganized TCEH Debtors, Kirkland timekeepers billed such time to client matter numbers that had the prefix [ALL E-SIDE] and [Reorganized TCEH], as applicable.  In addition, TCEH is differently situated than EFH and EFIH.    Among other key differences, TCEH had unique tax considerations, over 5,000 employees, and was the sole operating arm of the Debtors' three "silos."  As a result, as compared to EFH and EFIH, Kirkland performed comparably more services that were for the direct benefit of TCEH as compared to services that were for the direct benefit of EFH and EFIH.  Following the TCEH Effective Date, Kirkland adjusted the methodology set forth above for allocating the Collective Benefit Fees to better reflect this reality.  *First*, for the avoidance of doubt, Collective Benefit Fees were only allocated as between EFH and EFIH (since any services that were performed for the collective benefit of EFH and EFIH were billed [ALL E-SIDE] and, separately, services performed for TCEH were billed in a Reorganized TCEH Debtor matter number).  *Second*, with the occurrence of the TCEH Effective Date, the diversity of issues as between EFH and EFIH narrowed (particularly with the occurrence of the EFH/EFIH Committee Settlement).  The primary focus on the "E-side" was the sale of *EFH Corp.'s* indirect economic interest in Oncor, the proceeds of which would be used to satisfy, primarily, *EFIH* creditors, and the consummation of which would terminate professional fee burn at both EFH and EFIH.  As a result, the vast majority of services Kirkland performed for the EFH/EFIH Debtors following the TCEH Effective Date were for the collective benefit of both EFH and EFIH.  With limited Direct Benefit Fees, the methodology set forth above did not work as applied.

33.     As a result, Kirkland allocated the Collective Benefit Fees for services performed for the EFH/EFIH Debtors following the TCEH Effective Date by the relative debt at EFH and

19

EFIH.  In particular, before accounting for that certain EFIH second lien paydown in mid-2015, EFIH had approximately $12.36 billion in debt as compared to approximately $1.42 billion in debt at EFH—in other words, EFIH carried approximately 90% of the debt load across the EFH/EFIH Debtors.  As a result, following the TCEH Effective Date, Kirkland allocated any Collective Benefit Fees 10% to EFH and 90% to EFIH.

### Summary of Legal Services Rendered During the Fee Period

34.    As discussed above, Kirkland provided extensive and important professional services to the Debtors in connection with these chapter 11 cases during the Fee Period.  These services were often performed under severe time constraints and were necessary to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

35.    To provide a meaningful summary of Kirkland's services provided on behalf of the Debtors and their estates, Kirkland has established, in accordance with its internal billing procedures, certain subject matter categories (each, a "Matter Category") in connection with these chapter 11 cases.  The following is a summary of the fees and hours billed for each Matter Category in the Fee Period:[12]

| Matter Number | Project Category Description | Hours Billed | Total Compensation Billed |
|---|---|---|---|
| 0002 | Chapter 11 Bankruptcy Filing | 1,193.30 | 744,671.00 |
| 0003 | [ALL] Automatic Stay | 353.30 | 207,439.50 |
| 0004 | [ALL] Bond Issues | 23.60 | 13,978.00 |
| 0005 | [ALL] Business Operations | 118.60 | 96,651.00 |
| 0006 | [ALL E-SIDE] Case Administration | 2,357.50 | 1,202,442.50 |
| 0007 | [ALL] Cash Management | 185.80 | 103,513.50 |
| 0008 | [ALL E-SIDE] Claims Admin. & Objections | 5,965.40 | 3,921,181.50 |

---

[12]    In certain instances Kirkland may have billed the same amount of fees, but different amount of hours to different Matter Categories.  This difference is the result of different staffing of each such Matter Category.

Matter Categories that have the prefix [ALL E-SIDE] represent time billed to the EFH Debtors and the EFIH Debtors.

20

| Matter Number | Project Category Description | Hours Billed | Total Compensation Billed |
|---|---|---|---|
| 0009 | [ALL E-SIDE] Contest Matter & Adv. Proc. | 70,008.40 | 44,988,798.00 |
| 0010 | [ALL E-SIDE] Corp. Gov. & Sec. Issues | 15,994.60 | 13,801,113.00 |
| 0011 | [ALL E-SIDE] Exec. Cont. & Unexp. Leases | 1,085.10 | 659,404.50 |
| 0012 | [ALL E-SIDE] Hearings | 4,380.80 | 3,372,002.00 |
| 0013 | [ALL E-SIDE] Insurance | 65.20 | 32,744.50 |
| 0014 | [ALL E-SIDE] K&E Retention & Fee Apps | 10,610.40 | 5,643,674.50 |
| 0015 | [ALL] Mediation | 2.60 | 1,634.00 |
| 0016 | [ALL] Non-Debtor Affiliates | 94.00 | 49,236.50 |
| 0017 | [ALL E-SIDE] Non-K&E Ret. & Fee Apps | 2,255.70 | 1,408,943.00 |
| 0018 | [ALL E-SIDE] Non-Working Travel | 3,261.20 | 2,809,010.00 |
| 0019 | [ALL] Official Committee Issues & Meet. | 288.50 | 221,436.00 |
| 0021 | [ALL E-SIDE] Plan & Disclos. Statements | 40,084.80 | 35,235,188.50 |
| 0022 | [ALL] Private Letter Ruling/IRS Matters | 216.20 | 251,119.50 |
| 0023 | [ALL E-SIDE] Regulatory Issues | 156.40 | 102,766.50 |
| 0024 | [ALL] Rest. Support Agrmt./Global Settle | 1,467.60 | 1,014,782.00 |
| 0025 | [ALL] Retention of Professionals | 0.80 | 740.00 |
| 0026 | [ALL E-SIDE] Retiree & Empl. Issues/OPEB | 6,356.70 | 4,883,829.50 |
| 0027 | [ALL] Schedules, SoFAs | 338.10 | 224,870.50 |
| 0028 | [ALL] Shared Services | 13.60 | 8,745.50 |
| 0029 | [ALL E-SIDE] Tax Issues | 12,202.20 | 12,657,117.50 |
| 0030 | [ALL] U.S. Trustee Issues | 79.30 | 58,653.50 |
| 0032 | [ALL] Valuation | 4,523.90 | 2,721,956.00 |
| 0033 | [ALL] Vendor and Other Creditor Issues | 449.90 | 139,107.00 |
| 0034 | [TCEH] Asset Dispositions and Purchases | 927.00 | 624,505.50 |
| 0035 | [TCEH] Automatic Stay | 392.70 | 235,791.50 |
| 0036 | [TCEH] Bond Issues | 55.50 | 31,175.50 |
| 0037 | [TCEH] Business Operations | 427.60 | 260,489.50 |
| 0038 | [TCEH] Cash Collateral and DIP Financing | 1,127.10 | 853,966.50 |
| 0039 | [TCEH] Claims Administration & Objection | 2,006.50 | 1,249,086.50 |
| 0040 | [TCEH] Contested Matters & Advers. Proc. | 10,060.70 | 7,200,039.50 |
| 0041 | [TCEH] Corp. Governance and Sec. Issues | 23.10 | 21,909.00 |
| 0042 | [TCEH] Environmental Issues | 541.00 | 468,939.50 |
| 0043 | [TCEH] Hearings | 773.40 | 512,664.50 |
| 0046 | [TCEH] Non-Debtor Affiliates | 232.40 | 133,021.50 |
| 0047 | [TCEH] Non-K&E Retention & Fee Apps | 30.80 | 21,667.00 |
| 0048 | [TCEH] Non-Working Travel | 222.10 | 183,619.50 |
| 0049 | [TCEH] Official Committee Issues & Meet. | 59.80 | 49,798.00 |
| 0051 | [TCEH] Plan/Disclosure Statements | 1,145.20 | 1,016,978.50 |
| 0052 | [TCEH] Private Letter Ruling/IRS Issues | 9.50 | 6,037.00 |
| 0054 | [TCEH] Retiree and Employee Issues/OPEB | 34.10 | 23,615.50 |
| 0057 | [TCEH] Trading and Hedging Contracts | 328.70 | 216,171.50 |
| 0058 | [TCEH] Transition Services | 10.50 | 6,984.00 |
| 0059 | [TCEH] U.S. Trustee Issues | 4.80 | 3,856.50 |
| 0060 | [TCEH] Utilities | 8.80 | 3,875.00 |

| Matter Number | Project Category Description | Hours Billed | Total Compensation Billed |
|---|---|---|---|
| 0062 | [TCEH] Vendor and Other Creditor Issues | 1,122.00 | 681,768.00 |
| 0065 | [EFIH] Bond Issues | 16.30 | 14,727.00 |
| 0066 | [EFIH] Cash Collat./DIP Finan./Makewhole | 5,244.30 | 4,531,286.00 |
| 0067 | [EFIH] Claims Administration & Objection | 28.40 | 29,139.00 |
| 0068 | [EFIH] Contested Matters & Advers. Pro. | 12,269.00 | 9,297,535.00 |
| 0069 | [EFIH] Corp. Governance and Sec. Issues | 57.60 | 47,030.00 |
| 0070 | [EFIH] Hearings | 281.30 | 212,567.50 |
| 0072 | [EFIH] Non-K&E Retention & Fee Applicat. | 12.10 | 8,087.00 |
| 0073 | [EFIH] Non-Working Travel | 206.10 | 172,250.00 |
| 0074 | [EFIH] Official Committee Issues & Meet. | 14.40 | 10,673.00 |
| 0075 | [EFIH] Oncor | 1.10 | 1,009.50 |
| 0076 | [EFIH] Plan / Disclosure Statement | 4,439.10 | 4,080,886.50 |
| 0077 | [EFIH] Private Letter Ruling/IRS Issues | 3.10 | 3,653.50 |
| 0078 | [EFIH] Rest. Support Agrmt./Global Sett. | 82.30 | 45,943.50 |
| 0082 | [EFH] Asset Dispositions and Purchases | 102.50 | 69,725.00 |
| 0085 | [EFH] Claims Administration & Objections | 47.80 | 23,146.00 |
| 0086 | [EFH] Contested Matters & Advers. Proc. | 148.60 | 119,083.00 |
| 0087 | [EFH] Corp. Governance and Sec. Issues | 21.10 | 22,192.00 |
| 0089 | [EFH] EFH Properties | 767.70 | 507,516.00 |
| 0090 | [EFH] Hearings | 7.00 | 8,020.00 |
| 0092 | [EFH] Non-Core Subs/Discontinued Op. | 2.00 | 1,822.00 |
| 0093 | [EFH] Non-Debtor Affiliates | 1.40 | 1,022.00 |
| 0094 | [EFH] Non-K&E Retention & Fee Apps | 8.50 | 5,991.50 |
| 0095 | [EFH] Non-Working Travel | 8.30 | 7,787.50 |
| 0096 | [EFH] Official Committee Issues & Meet. | 176.30 | 118,117.00 |
| 0097 | [EFH] Oncor | 0.90 | 823.50 |
| 0101 | [EFH] Retiree and Employee Issues/OPEB | 40.30 | 34,649.50 |
| 0106 | [ALL] Venue | 526.10 | 369,123.00 |
| 0107 | [ALL] Invoice Review | 274.00 | 139,628.00 |
| 0108 | [TCEH] Exec. Contracts & Unexpired Lease | 4,301.60 | 2,758,208.00 |
| 0113 | [ALL] Enforcement of TTI Rights | 2,642.60 | 1,789,567.00 |
| 0114 | [ALL] Drag Along Rights | 31.60 | 30,545.50 |
| 0115 | [TCEH] Exit Financing | 3,924.40 | 3,543,064.00 |
| 0124 | [ALL E-SIDE] Tax Calculations | 3.60 | 3,744.00 |

36.     The following is a summary, by Matter Category, of the most significant professional services provided by Kirkland during the Fee Period.  This summary is organized in accordance with Kirkland's internal system of matter numbers.  The detailed descriptions demonstrate that Kirkland was heavily involved in performing services for the Debtors on a daily

basis, often including night, weekend, and holiday work, to meet the needs of the Debtors' estates in these chapter 11 cases.

37.    A schedule setting forth a description of the Matter Categories utilized in this case, the number of hours expended by Kirkland partners, associates, and paraprofessionals by matter, and the aggregate fees associated with each matter is attached hereto as **Exhibit G**.  **Exhibit H** is Kirkland's budget and staffing plan for this Fee Period, which has been approved by the Debtors, and **Exhibit I** is a comparison of hours and fees budgeted for each matter category to which Kirkland professionals and paraprofessionals billed time during the Fee Period against the hours and fees for which Kirkland seeks compensation for the Fee Period.

38.    In addition, throughout the Fee Period, Kirkland filed its computerized records of time expended providing professional services to the Debtors and their estates, and Kirkland's records of expenses incurred during the Fee Period in the rendition of professional services to the Debtors and their estates.  Consistent with communications with the Fee Committee, Kirkland hereby incorporates into this Fee Application those computerized records previously filed in these chapter 11 cases with previous Monthly Fee Statements and Interim Fee Applications.

(a)    **Chapter 11 Bankruptcy Filing (Matter No. 2)**[13]

Total Fees:    $744,671.00
Total Hours:  1,193.30

39.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to the filing of, and seeking

---

[13]    Kirkland has filed twelve interim fee applications (the "Interim Fee Applications") in these chapter 11 cases on account of costs and expenses incurred during the Fee Period.  The matter descriptions contained herein represent a consolidated summary of the matter descriptions provided in the Interim Fee Applications, which each contain additional detail to support the costs and expenses incurred during the Fee Period.

Capitalized terms used but not otherwise defined in the following matter descriptions shall have the meanings ascribed to such terms in the Interim Fee Applications.

approval of, the Debtors' various pleadings heard by the Bankruptcy Court regarding the Debtors' "first" and "second" day operational relief.  Specifically, Kirkland attorneys and paraprofessionals spent time:

     i.     revising proposed orders to and declarations in support of the Debtors' first and second day pleadings, as well as responses to objections or comments filed by various stakeholders to the first and second day pleadings;

     ii.     discussing the Debtors' motions and negotiating the Debtors' proposed orders with the U.S. Trustee, the TCEH Creditors' Committee, and a number of stakeholders to resolve various open issues in respect of the Debtors' first and second day pleadings;

     iii.     preparing for the hearings on the "first" and "second" day motions; and

     iv.     analyzing and researching a variety of issues related to first and second day pleadings.

### (b)     [ALL] Automatic Stay (Matter No. 3)

Total Fees:     $207,439.50
Total Hours:  353.30

40.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to enforcement of the automatic stay.  Specifically, Kirkland attorneys and paraprofessionals spent time:

     i.     responding to formal and informal inquiries from certain parties-in-interest to lift the automatic stay;

     ii.     preparing, reviewing, and revising potential motions to extend the automatic stay to parties-in-interest seeking relief from the same;

     iii.     drafting, revising, and researching pleadings responding to motions to lift the stay; and

     iv.     performing legal research regarding the effects of the automatic stay on certain rights of non-Debtor third parties with respect to actions involving, or related to, the Debtors or their estates, including certain nonbankruptcy litigation proceedings.

(c)    **[ALL] Bond Issues (Matter No. 4)**

Total Fees:    $13,978.00
Total Hours:   23.60

41.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period relating to issues regarding the Debtors' bonds and the bonds' respective indenture trustees.  Specifically, Kirkland attorneys spent time:

i.    drafting board consent approvals of tripartite agreements replacing indenture trustees;

ii.    terminating a remarketing agreement; and

iii.    considering issues related to pollution control revenue bonds.

(d)    **[ALL] Business Operations (Matter No. 5)**

Total Fees:    $96,651.00
Total Hours:   118.60

42.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the Debtors' business operations.  Specifically, Kirkland attorneys and paraprofessionals spent time advising the Debtors' management and other advisors regarding processes to ensure uninterrupted operations and compliance with provisions of the Bankruptcy Code and orders entered in these chapter 11 cases.

(e)    **[ALL] Case Administration (Matter No. 6)**

Total Fees:    $1,202,442.50
Total Hours:   2,357.50

43.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period on a variety of tasks that were necessary for the smooth and efficient administration of legal services related to the Debtors' chapter 11 cases. Specifically, Kirkland attorneys and paraprofessionals spent time:

i.      administering, managing, and coordinating the chapter 11 cases by monitoring critical dates and maintaining a case calendar, task lists, and work-in-progress reports;

ii.     monitoring the case docket and reviewing docket entries as they are filed to apprise the Debtors, as well as certain professionals and creditors, of developments in these chapter 11 cases; and

iii.    preparing for and holding regular meetings and telephone conferences with both the Kirkland internal restructuring team and other working groups as well as the Debtors regarding the status of pending workstreams, discovery issues, and database management.

**(f)      [ALL] Cash Management (Matter No. 7)**

Total Fees:    $103,513.50
Total Hours:   185.80

44.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the Debtors' cash management system. Specifically, Kirkland attorneys and paraprofessionals spent time:

i.      negotiating the Debtors' requested relief regarding their cash management system;

ii.     preparing, reviewing, and replying to informal and formal objections to the Debtors' motion to continue operating their cash management system; and

iii.    advising the Debtors on their duties under the orders entered with respect to their cash management system.

**(g)      [ALL Claims Administration & Objections (Matter No. 8)**

Total Fees:    $3,921,181.50
Total Hours:   5,965.40

45.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the administration and resolution of claims filed against the Debtors' estates, the resolution of which may affect all of the Debtors' estates. Specifically, Kirkland attorneys and paraprofessionals spent time:

26

i.      drafting and filing 43 omnibus objections against over 5,400 claims asserting over $179 billion in claims, resulting in the disallowance, modification or withdrawal of approximately 5,390 claims and nearly complete disallowance or reduction to asserted amounts;

ii.      analyzing and researching issues related to claims against the Debtors and corresponding with parties-in-interest regarding the same;

iii.      researching, drafting and revising the bar date motion and negotiating with various stakeholders regarding the relief requested therein;

iv.      drafting and filing a motion to establish a supplemental bar date and response to an objection to the same;

v.      creating a schedule and protocol to adjudicate contested objections to the claims filed by certain pro se claimants;

vi.      creating and monitoring a claims telephone hotline and managing related communications;

vii.      coordinating responses to formal and informal inquiries from claimants regarding the omnibus objections;

viii.      researching, drafting, and revising pleadings responding to objections to the bar date motion filed by potential asbestos claimants; and

ix.      drafting and revising the Debtors' motions for extensions to remove certain civil claims to the Bankruptcy Court.

**(h)    [ALL E-SIDE] Contested Matters & Adversary Proceedings (Matter No. 9)**

Total Fees:    $44,988,798.00
Total Hours:   70,008.40

46.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to contested matters and adversary proceedings. Specifically, Kirkland attorneys and paraprofessionals spent time:

i.      drafting, negotiating, and revising a stipulated confidentiality agreement, discovery protocol, and protective order regarding discoverable documents provided through the document production process;

ii.      coordinating document review processes with third-party database vendors to ensure an efficient document review process;

27

iii. researching, drafting, and revising reply papers responding to objections asserted regarding, among other motions, the Debtors' motions to jointly administer these chapter 11 cases and to extend the time to file the Debtors' statements of financial affairs and schedules of assets and liabilities;

iv. identifying, collecting, and processing volumes of documents for review and potential production; then analyzing and reviewing potentially responsive documents that culminated in the production of approximately 940,990 documents and 6,669,787 pages of documents relating to discovery requests;

v. preparing for and attending 16 trials and evidentiary hearings, spanning 46 trial days and involving 62 witnesses, and several dozen non-evidentiary hearings;

vi. conferencing with the Debtors, their advisors, and certain parties-in-interest regarding the status of litigation matters, including the document production process and discovery requests;

vii. preparing for and defending depositions of EFH/EFIH Debtors' representatives and expert witnesses in preparation for approval of multiple merger agreements;

viii. preparing for and participating in hearings and depositions related to restructuring documents, including negotiating with objectors, developing case strategy through daily internal discussions and consultation with the Debtors and their advisors;

ix. drafting and revising a reply brief in an appeal of the TCEH Plan Support Agreement, preparing and presenting oral argument to the district court, and securing an order dismissing the same

x. planning collection and processing of documents from the Debtors for review and potential production in connection with multiple confirmation processes;

xi. preparing and advising the Debtors and their professionals for approximately 90 depositions with various parties-in-interest related to issues that affect all of the Debtors;

xii. preparing and filing a response to the Elliott Creditors' requested Fee Committee appointment;

xiii. reviewing interested parties' objections to confirmation of the EFH/EFIH Plan, including objections related to asbestos issues and the Termination Fee;

28

xiv.    analyzing and addressing issues related to the Oncor dividend settlement;

xv.    preparing pleadings and witnesses regarding confirmation of the EFH/EFIH Plan, and addressing confirmation-related issues; and

xvi.    drafting materials and furthering litigation strategy regarding the NEE Termination Fee appeal.

### (i)    [ALL E-SIDE] Corporate and Securities Issues (Matter No. 10)

Total Fees:    $13,801,113.00
Total Hours:    15,994.60

47.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to corporate governance issues involving the Debtors, including their respective disinterested directors and managers.  Specifically, Kirkland attorneys and paraprofessionals spent time:

i.    negotiating, drafting, and revising materials (excluding confidentiality and diligence materials) related to the potential auction process for the economic interests in Oncor;

ii.    negotiating, drafting, and revising multiple proposed merger agreements and associated separation and transition services documents pertaining to all of the Debtors;

iii.    preparing for and participating in substantive negotiations with the Debtors' key stakeholders regarding the proposed terms of merger transactions and related purchase agreements;

iv.    reviewing bids received from strategic and third-party buyers for the economic interests in Oncor;

v.    analyzing issues regarding closing matters and distributions under the EFH/EFIH Plan and TCEH Plan;

vi.    revising plan and disclosure statement filing resolutions;

vii.    drafting dissolution documents and addressing related issues in preparation for closing;

viii.    preparing for, and participating in, joint meetings with all of the Debtors' boards of directors regarding corporate and financial aspects of the chapter 11 process materials to update the Debtors' boards regarding developments in these chapter 11 cases; and

29

ix.     analyzing issues and preparing documents regarding Hart-Scott-Rodino filings.

**(j)     [ALL E-SIDE] Exec. Contracts & Unexpired Leases (Matter No. 11)**

Total Fees:    $659,404.50
Total Hours:   1,085.10

48.     This Matter Category includes time spent by Kirkland attorneys during the Fee Period examining issues related to the Debtors' executory contracts and unexpired leases. Specifically, Kirkland attorneys spent time:

i.      drafting and revising lease rejection procedures;

ii.     analyzing and researching the Debtors' obligations under various executory contracts;

iii.    analyzing the Debtors' obligations under outstanding executory contracts and leases; and

iv.     communicating with outside parties, as well as the Debtors and their advisors, regarding contract assumption and rejection issues.

**(k)     [ALL E-SIDE] Hearings (Matter No. 12)**

Total Fees:    $3,372,002.00
Total Hours:   4,380.80

49.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period preparing for and attending hearings and related scheduling conferences.  Specifically, Kirkland attorneys and paraprofessionals spent time:

i.      preparing for and attending hearings regarding the Debtors' requests for an extension of the Debtors' exclusivity period, motion for the partial repayment of EFIH second lien notes, motions to reject certain executory contracts, and the EFIH First Lien Makewhole litigation trial;

ii.     telephonic hearings regarding certain discovery and deposition disputes in connection with, among other things, the EFH/EFIH Plan and EFH/EFIH Disclosure Statement;

iii.    preparing for and attending hearings to approve the EFH/EFIH Disclosure Statement;

30

    iv.        preparing for and attending confirmation hearings;

    v.        preparing for and attending hearings to approve the Sempra Merger Agreement and BHE Merger Agreement;

    vi.        preparing for and attending a hearing regarding a motion to adjourn a hearing to approve the BHE Merger Agreement;

    vii.        preparing for and attending a hearing regarding Elliott's motion for reconsideration, motion to intervene, and motion seeking derivative standing; and

    viii.        preparing for and attending a status conference hearing regarding the NEE Termination Fee adversary proceeding.

    **(l)**        **[ALL] Insurance (Matter No. 13)**

        Total Fees:    $32,744.50
        Total Hours:  65.20

50.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period analyzing insurance policies and ensuring the Debtors maintain sufficient coverage as required by chapter 11 operating guidelines. Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.        researching and analyzing the implications of assuming certain insurance contracts; and

    ii.        ensuring that the Debtors' insurance policies complied with orders governing the debtor-in-possession financing facilities available to TCEH and EFIH.

    **(m)**        **[ALL E-SIDE] Kirkland Retention and Fee Applications (Matter No. 14)**

        Total Fees:    $5,643,674.50
        Total Hours:  10,610.40

51.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to Kirkland's retention and fee materials for the Debtors. Specifically, Kirkland attorneys and paraprofessionals spent time:

31

i.      reviewing and revising invoices regarding privilege and compliance with applicable guidelines and rules;

ii.     conducting, reviewing, and analyzing conflicts reports for any potential conflicts of interest; and

iii.    preparing Kirkland's twelve interim fee applications.

**(n)     [ALL] Mediation (Matter No. 15)**

Total Fees:    $1,634.00
Total Hours:   2.60

52.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period drafting a joint mediation statement, negotiating non-disclosure agreements and analyzing diligence requests.

**(o)     [ALL] Non-Debtor Affiliates (Matter No. 16)**

Total Fees:    $49,236.50
Total Hours:   94.00

53.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period relating to certain of the Debtors' non-Debtor affiliates (excluding Oncor). Specifically, Kirkland attorneys and paraprofessionals spent time:

i.      analyzing issues regarding the potential sale of certain de Minimis assets owned by such non-Debtor affiliates;

ii.     researching and analyzing issues related to Bankruptcy Rule 2015.3;

iii.    reviewing and analyzing a sale proceeds stipulation and advising the Company regarding the same; and

iv.     drafting and revising pleadings related to Bankruptcy Rule 2015.3.

(p)    **[ALL E-SIDE] Non-Kirkland Retentions and Fee Applications (Matter No. 17)**

Total Fees:    $1,408,943.00
Total Hours:   2,255.70

54.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to the retention of professionals other than Kirkland.  Specifically, Kirkland attorneys and paraprofessionals spent time:

   i.    providing bankruptcy advice in connection with professional engagement letters;

   ii.    revising certain ordinary course professionals' declarations of disinterestedness;

   iii.    corresponding with the Debtors' professionals regarding, among other things, supplemental declarations, the scope of the professionals' services, budgeting, projected post-EFH Effective Date fees, funding of a professional fee escrow account, and the interim compensation process;

   iv.    updating the schedule of ordinary course professionals;

   v.    analyzing and drafting retention papers for a financial advisor in connection with a potential strategic transaction; and

   vi.    facilitating the Debtors' retention of various professionals other than Kirkland.

(q)    **[ALL E-SIDE] Non-Working Travel (Matter No. 18)**

Total Fees:    $2,809,010.00
Total Hours:   3,261.20

55.    This Matter Category includes non-working travel time spent by Kirkland attorneys and paraprofessionals during the Fee Period in connection with their representation of the Debtors.  The amounts requested in the Fee Application reflect a reduction of one-half of the charges for travel time not spent working on matters related to these chapter 11 cases.

33

**(r)**     **[ALL] Official Committee Issues & Meetings (Matter No. 19)**

Total Fees:     $221,436.00
Total Hours:    288.50

56.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period communicating with, and addressing issues raised by both Official Committees.  Specifically, Kirkland attorneys and paraprofessionals spent time:

i.     preparing for and attending multiple in-person and telephonic meetings with the Official Committees and their advisors regarding a host of diligence issues related to the Debtors' operational, financial, and restructuring initiatives; and

ii.     discussing and negotiating the relief requested by the Debtors in various pleadings.

**(s)**     **[ALL E-SIDE] Plan and Disclosure Statements (Matter No. 21)**

Total Fees:     $35,235,188.50
Total Hours:    40,084.80

57.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to developing a plan of reorganization and related disclosure statement in connection with these chapter 11 cases. Specifically, Kirkland attorneys and paraprofessionals spent time:

i.     negotiating with the Debtors' key stakeholders regarding the terms of proposed plans and disclosure statements;

ii.     drafting motions to approve disclosure statements and establish procedures for the solicitation of acceptances of various proposed plans;

iii.     drafting and revising documents for solicitation and other voting and balloting materials in connection with the solicitation of votes on multiple proposed plans;

iv.     drafting, revising, and negotiating bidding procedures related to the proposed sale of the economic interests in Oncor;

v.     drafting, revising, and negotiating motions and bridge orders to extend the Debtors' exclusive periods to file and solicit votes for plans pursuant to section 1121(d) of the Bankruptcy Code;

34

vi.  researching, drafting, reviewing, and revising a term sheet, an initial plan of reorganization and near global term sheet, as well as related amendments, exhibits, and consents as well as preparing disclosure statement and addressing factual and legal issues regarding the same;

vii.  communicating and coordinating with the Debtors' other advisors regarding the terms of various plans and term sheet as well as open issues pertaining to the same and disclosure statements;

viii.  negotiating confidentiality agreements and attending meetings with various parties-in-interest, including strategic and third-party bidders for the economic interests in Oncor;

ix.  communicating with the disinterested directors' advisors of each of EFH, EFIH, and EFCH/TCEH regarding various restructuring documents;

x.  analyzing the regulatory approval process related to the transactions contemplated by various potential plans;

xi.  compiling various "funds flow" analysis regarding the allocation of consideration on the EFH Effective Date;

xii.  developing the terms of the Oncor/TSA Settlement Agreement and corresponding with parties in interest regarding such terms;

xiii.  addressing and analyzing issues related to the EFH/EFIH Allocation Dispute;

xiv.  revising the EFH/EFIH Plan with respect to the administration of the NEE Termination Fee;

xv.  drafting the Sempra Confirmation Brief;

xvi.  corresponding with counsel to Sempra to facilitate preparation of the Amended Plan Supplement;

xvii.  researching, drafting, and filing memorandums of law in support of confirmation and in response to EFH/EFIH Plan objections;

xviii.  planning closing procedures and process steps regarding the closing of the Sempra Merger Agreement and the EFH/EFIH Debtors' emergence from bankruptcy; and

xix.  communicating and coordinating with the EFH/EFIH Debtors and their other advisors regarding consummation of the transactions contemplated by the Plan.

35

**(t)      [ALL] Private Letter Ruling/IRS Matters (Matter No. 22)**

Total Fees:      $251,119.50
Total Hours:    216.20

58.      This Matter Category includes time spent by Kirkland attorneys during the Fee Period (a) preparing submissions to, and conferencing with, representatives from the Internal Revenue Service regarding, among other things, additional diligence requests concerning the Debtors' private letter ruling request, and (b) developing and drafting a responsive memorandum regarding the same.

**(u)      [ALL] Regulatory Issues (Matter No. 23)**

Total Fees:      $102,766.50
Total Hours:    156.40

59.      This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to various regulatory issues.    Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.      reviewing and revising EFH/EFIH Hart-Scott Rodino filings;

    ii.      analyzing regulatory issues and considerations related to the EFH/EFIH Plan; and

    iii.      coordinating with various regulatory bodies regarding various items, including proposed restructuring plan approvals and guidance in connection with contemplated transactions.

**(v)      [ALL] Rest. Support Agrmt./Global Settlement (Matter No. 24)**

Total Fees:      $1,014,782.00
Total Hours:    1,467.60

60.      This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period relating to:

    i.      drafting various amendments to an initial restructuring support agreement;

    ii.      drafting, researching, and negotiating a motion to assume the initial restructuring support agreement and supporting declarations;

36

iii.    engaging in discussions with other parties-in-interest regarding the transactions contemplated in the initial restructuring support agreement; and

iv.    researching, reviewing, and analyzing management composition and corporate governance issues.

**(w)    [ALL] Retiree and Employee Issues (Matter No. 26)**

Total Fees:    $4,883,829.50
Total Hours:    6,356.70

61.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to various issues concerning the Debtors' retirees and employees.  Specifically, Kirkland attorneys and paraprofessionals spent time:

i.    analyzing, in consultation with the Debtors, certain of the Debtors' retiree and employee compensation and benefit obligations;

ii.    preparing for and attending multiple meetings with the U.S. Trustee as well as a two-day hearing in connection with employee compensation for 2014;

iii.    identifying, researching, and analyzing employee benefit issues related to the merger agreement and transition service considerations, including the retention and assumption of various employee benefit and retention programs;

iv.    drafting, revising, and researching pleadings and supporting declarations relating to non-qualified benefits, non-insider compensation, and insider compensation;

v.    drafting, revising, and researching pleadings in connection with separating the Debtors' 401(k) plan;

vi.    assisting the Debtors in negotiations with interested parties regarding the relief described above; and

vii.    providing diligence related to the relief described above to numerous creditor constituencies.

        **(x)**      **[ALL] Schedules/SOFAs (Matter No. 27)**

        Total Fees:    $224,870.50
        Total Hours:   338.10

62.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period assisting the Debtors, Alvarez & Marsal North America, LLC, and other advisors in connection with the preparation and filing of amendments to the Debtors' schedule of assets and liabilities, statements of financial affairs, and accompanying explanatory notes.

        **(y)**      **[ALL] Shared Services (Matter No. 28)**

        Total Fees:    $8,745.50
        Total Hours:   13.60

63.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period in connection with advising the Debtors and educating the disinterested directors' advisors regarding certain issues related to the Company's shared services agreements.

        **(z)**      **[ALL] Tax Issues (Matter No. 29)**

        Total Fees:    $12,657,117.50
        Total Hours:   12,202.20

64.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period preparing correspondence, submissions, and disclosures, and generally advising the Debtors in connection with tax issues. Specifically, Kirkland attorneys and paraprofessionals spent time:

      i.      researching and analyzing potential issues associated with a REIT reorganization structure;

     ii.      researching and analyzing certain tax issues arising in connection with the Debtors' business operations and proposed transactions;

38

iii.    preparing confirmation hearing testimony regarding certain tax-related issues;

iv.    addressing and responding to inquiries from various parties-in-interest regarding diligence related to various tax considerations;

v.    preparing submissions to the IRS in connection with the Debtors' tax obligations;

vi.    addressing disputes regarding tax sharing and earnings and profits issues;

vii.    negotiating, drafting and revising the Tax Matters Agreement; and

viii.    preparing a tax opinion letter and analyzing the tax aspects of closing matters.

**(aa)    [ALL] U.S. Trustee Issues (Matter No. 30)**

Total Fees:    $58,653.50
Total Hours:  79.30

65.    This Matter Category includes the services provided by Kirkland attorneys during the Fee Period related to negotiations and correspondence with the U.S. Trustee.  Specifically, Kirkland attorneys spent time:

i.    reviewing and revising the Debtors' monthly operating reports to comply with U.S. Trustee guidelines;

ii.    responding to inquiries and document requests from the U.S. Trustee and discussing the same with members of the Debtors' management team;

iii.    engaging in multiple telephonic and in-person meetings with the U.S. Trustee regarding the relief requested in the Debtors' pleadings; and

iv.    corresponding and conferencing with the U.S. Trustee regarding comments and revisions to the Debtors' pleadings and in order to develop consensus on requested changes.

**(bb)    [ALL] Valuation (Matter No. 32)**

Total Fees:    $2,721,956.00
Total Hours:    4,523.90

66.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period relating to the issues surrounding the valuation of the Debtors.  Specifically, Kirkland attorneys spent time:

      i.    researching valuation methodologies;

      ii.    identifying, collecting, and processing numerous documents for review and potential production;

      iii.    analyzing and reviewing documents in response to creditors' diligence requests; and

      iv.    analyzing, in consultation with the Debtors and the Debtors' other professionals, valuation issues and litigation strategies.

**(cc)    [ALL] Vendor and Other Creditor Issues (Matter No. 33)**

Total Fees:    $139,107.00
Total Hours:    449.90

67.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period related to discrete issues surrounding vendors who provide services to the Debtors, as well as creditor inquiries.

**(dd)    [TCEH] Asset Dispositions and Purchases (Matter No. 34)**

Total Fees:    $624,505.50
Total Hours:    927.00

68.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period rendering services relating to the disposition, investment, or purchase of assets by the TCEH Debtors.  Specifically, Kirkland attorneys and paraprofessionals spent time:

40

i.      representing the Debtors in negotiations with parties-in-interest regarding the terms and conditions of certain de minimis acquisitions and analyzing diligence regarding the same;

ii.     reviewing, researching, and drafting pleadings related to investment and purchase procedures for certain assets; and

iii.    analyzing certain potential transactions and drafting and revising documents regarding the same.

**(ee)    [TCEH] Automatic Stay (Matter No. 35)**

Total Fees:    $235,791.50
Total Hours:   392.70

69.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to enforcing the automatic stay as it affects TCEH Debtors.  Specifically, Kirkland attorneys and paraprofessionals spent time:

i.      responding to formal and informal inquiries from certain parties-in-interest to lift the automatic stay;

ii.     preparing, reviewing, and revising potential motions to extend the automatic stay to parties-in-interest seeking relief from the same;

iii.    drafting, revising, and researching reply papers responding to motions to lift the stay;

iv.     negotiating a stipulation regarding a limited modification of the automatic stay; and

v.      performing legal research regarding the effects of the automatic stay on certain rights on non-Debtor third parties with respect to actions involving, or related to, the TCEH Debtors or their estates, including certain non-bankruptcy related litigation proceedings.

**(ff)    [TCEH] Bond Issues (Matter No. 36)**

Total Fees:    $31,175.50
Total Hours:   55.50

70.    This Matter Category includes the services provided by Kirkland attorneys related to analyzing and implementing certain tripartite agreements, including trustee successions,

analyzing the potential replacement of the collateral agent under the TCEH second lien debt documents.

**(gg)** **[TCEH] Business Operations (Matter No. 37)**

Total Fees:    $260,489.50
Total Hours:   427.60

71.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period related to the business operations of the TCEH Debtors, including:

     i.     strategizing with the TCEH Debtors' management and other advisors regarding processes to ensure uninterrupted operations and compliance with provisions of the Bankruptcy Code and orders entered in these chapter 11 cases;

     ii.     preparing for and participating in weekly meetings with the TCEH Debtors' business units;

     iii.     drafting and revising a motion allowing certain Debtors to enter into a long-term power purchase agreement and drafting and revising a motion allowing the Debtors to file the power purchase agreement under seal; and

     iv.     addressing compliance issues concerning the TCEH Debtors' business operations in connection with, among other things, adhering to certain relief authorized by the Court.

**(hh)** **[TCEH] Cash Collateral and DIP Financing (Matter No. 38)**

Total Fees:    $853,966.50
Total Hours:   1,127.10

72.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period relating to the TCEH Debtors' efforts to amend the DIP facility available to TCEH and implement the procedures established in the Court's order regarding the use of cash collateral by TCEH.    Specifically, Kirkland attorneys and paraprofessionals spent time:

     i.     analyzing issues and advising the TCEH Debtors and their other professionals regarding payments and the use and invoicing of cash collateral under the TCEH Cash Collateral Order;

42

ii.    analyzing and reviewing letter of credit issues;

iii.    drafting, revising, and negotiating a stipulation extending the challenge period under the TCEH Cash Collateral Order; and

iv.    negotiating, drafting, reviewing, and revising an amendment to the DIP credit agreement and corresponding with the U.S. Trustee and counsel to the DIP facility arrangers regarding related repricing issues.

**(ii)    [TCEH] Claims Administration and Objections (Matter No. 39)**

Total Fees:    $1,249,086.50
Total Hours:    2,006.50

73.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the administration and resolution of claims against the TCEH Debtors' estates, including:

i.    corresponding with various parties regarding claims and claims stipulations;

ii.    reviewing and drafting documents related to potential environmental claims; and

iii.    reviewing and revising settlement agreements and related materials and contract amendments.

**(jj)    [TCEH] Contested Matters & Adv. Pro. (Matter No. 40)**

Total Fees:    $7,200,039.50
Total Hours:    10,060.70

74.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to motions and contested hearings pertaining to the TCEH Debtors.  Specifically, Kirkland attorneys and paraprofessionals spent time:

i.    negotiating with, and resolving issues raised by various stakeholders of the TCEH Debtors with respect to the Debtors' first and second day pleadings;

ii.    researching and preparing pleadings in connection with the same;

43

iii.    drafting and revising responses to Bankruptcy Rule 2004 discovery motions filed by the TCEH creditors;

iv.    identifying, collecting, and processing volumes of documents for review and potential production;

v.    coordinating, preparing, and advising the TCEH Debtors' officers and professionals for depositions and meetings;

vi.    analyzing and reviewing potentially responsive documents for production with respect to discovery requests from TCEH creditors;

vii.    researching, drafting, and revising responses to motions filed by the Official Committees and certain TCEH creditors; and

viii.    performing legal research, drafting briefs, and preparing for the six-day TCEH Confirmation Hearing.

### (kk)    [TCEH] Corp. Governance and Sec. Issues (Matter No. 41)

Total Fees:    $21,909.00
Total Hours:   23.10

75.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period related to corporate governance issues involving the TCEH Debtors. Specifically, Kirkland attorneys spent time:

i.    preparing and revising various Hart-Scott Rodino filings; and

ii.    presenting to the TCEH board of managers on various issues regarding these chapter 11 cases, including the plan process and governance issues.

### (ll)    [TCEH] Environmental Issues (Matter No. 42)

Total Fees:    $468,939.50
Total Hours:   541.00

76.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period analyzing and addressing certain environmental compliance issues, including potential environmental liabilities, litigation matters, options contracts, insurance options, and the dischargeability of environmental claims against the TCEH Debtors.

44

**(mm)    [TCEH] Hearings (Matter No. 43)**

Total Fees:    $512,664.50
Total Hours:    773.40

77.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to preparing for and attending various omnibus hearings on matters primarily relating to the TCEH Debtors, including:

  i.    a hearing to consider approval of the TCEH Disclosure Statement;

  ii.    two pre-trial conferences regarding the TCEH Confirmation Hearing; and

  iii.    the six-day hearing to consider confirmation of the TCEH Plan.

**(nn)    [TCEH] Non-Debtor Affiliates (Matter No. 46)**

Total Fees:    $133,021.50
Total Hours:    232.40

78.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period advising certain of the TCEH Debtors' non-debtor affiliates (excluding Oncor). Specifically, Kirkland attorneys spent time:

  i.    recommending resolutions to issues related to non-debtor land sale stipulations and amendments to certain joint venture agreements, including the Comanche Peak joint venture agreement; and

  ii.    analyzing issues related to non-debtor land sale stipulations, plant expense authorization, and the Comanche Peak quarterly report.

**(oo)    [TCEH] Non-K&E Retention & Fee Apps (Matter No. 47)**

Total Fees:    $21,667.00
Total Hours:    30.80

79.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to ensuring the retention of the TCEH Debtors' professionals, other than Kirkland, in these chapter 11 cases.

45

**(pp)    [TCEH] Non-Working Travel (Matter No. 48)**

Total Fees:    $183,619.50
Total Hours:    222.10

80.    This Matter Category includes non-working travel time spent by Kirkland attorneys during the Fee Period in connection with their representation of the TCEH Debtors. The amounts requested in the Fee Application reflect a reduction of one-half of the charges for travel time not spent working on matters related to these chapter 11 cases.

**(qq)    [TCEH] Official Committee Issues & Meetings (Matter No. 49)**

Total Fees:    $49,798.00
Total Hours:    59.80

81.    This Matter Category include time spent by Kirkland attorneys and paraprofessionals during the Fee Period in connection with, and addressing issues related to, the TCEH Debtors raised by the TCEH Creditors' Committee, including various diligence and restructuring issues.

**(rr)    [TCEH] Plan/Disclosure Statements (Matter No. 51)**

Total Fees:    $1,016,978.50
Total Hours:    1,145.20

82.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period regarding plan issues affecting the TCEH Debtors. Specifically, Kirkland attorneys and paraprofessionals spent time:

i.    negotiating, drafting, and revising the TCEH Plan and TCEH Disclosure Statement and related solicitation materials;

ii.    communicating and coordinating with the Debtors, their other advisors, the disinterested directors, and creditor constituencies regarding confirmation of the TCEH Plan;

iii.    analyzing and responding to various objections to the TCEH Plan;

iv.    researching and drafting briefing related to the TCEH Confirmation Hearing and preparing witnesses and oral arguments for the same;

46

v.    negotiating, drafting, and filing the TCEH Plan Supplement and amendments thereto;

vi.    analyzing asbestos-related issues; and

vii.    analyzing issues and drafting documents related to consummation of the TCEH Plan.

### (ss)    [TCEH] Private Letter Ruling/IRS Issues (Matter No. 52)

Total Fees:    $6,037.00
Total Hours:  9.50

83.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period conducting legal research regarding property tax claims related to TCEH properties, negotiating settlements related to property tax claims, and analyzing the complex tax considerations associated with the Debtors' proposed restructuring with the TCEH creditors.

### (tt)    [TCEH] Retiree and Employee Issues/OPEB (Matter No. 54)

Total Fees:    $23,615.50
Total Hours:  34.10

84.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period providing services related to various issues concerning the retirees and employees of the TCEH Debtors and EFH Shared Services Debtors, including drafting, analyzing, and corresponding with the Debtors regarding employee arrangements.

### (uu)    [TCEH] Trading and Hedging Contracts (Matter No. 57)

Total Fees:    $216,171.50
Total Hours:  328.70

85.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to analyzing and responding to issues concerning the hedging and trading activities of the TCEH Debtors.  Specifically, Kirkland attorneys and paraprofessionals spent time:

47

i.      negotiating with opposing counsel regarding liquidation of terminated hedging and trading agreements;

ii.     diligencing requests for additional, limited non-proprietary hedging and trading relief;

iii.    drafting, reviewing, and revising a motion to enter into certain non-proprietary hedging and trading arrangements;

iv.     negotiating relief in the hedging and trading motion with the U.S. Trustee, TCEH Committee, and other parties-in-interest; and

v.      discussing reports issued under the hedging and trading order with professionals for various stakeholders.

**(vv)    [TCEH] Transition Services (Matter No. 58)**

Total Fees:    $6,984.00
Total Hours:   10.50

86.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period relating to electricity transmission and distribution service-provider agreements.

**(ww)   [TCEH] U.S. Trustee Issues (Matter No. 59)**

Total Fees:    $3,856.50
Total Hours:   4.80

87.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period conferring with the U.S. Trustee regarding issues related specifically to the TCEH Debtors. Specifically, Kirkland attorneys spent time conferring with the U.S. Trustee regarding comments to second day motions and monthly operating reports for the TCEH Debtors.

48

**(xx)**     **[TCEH] Utilities (Matter No. 60)**

Total Fees:     $3,875.00
Total Hours:   8.80

88.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to utility providers for the TCEH Debtors. Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.     corresponding with utility providers regarding notice;

    ii.     researching issues surrounding adequate assurance; and

    iii.     revising the utilities order [D.I. 800].

**(yy)**     **[TCEH] Vendor and Other Creditor Issues (Matter No. 62)**

Total Fees:     $681,768.00
Total Hours:   1,122.00

89.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals related to addressing issues involving certain of the TCEH Debtors' vendors and suppliers. Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.     addressing correspondence from the TCEH Debtors' vendors and inquiries related to potential liens and reclamation and other claims;

    ii.     researching, conferring and corresponding with vendors regarding such inquiries;

    iii.     reviewing vendor and other creditor contracts;

    iv.     drafting and revising vendor agreements, reclamation letters, and other responses to vendor communications;

    v.     analyzing, in consultation with the TCEH Debtors and their other professionals, the critical vendor status of certain vendors.

    vi.     negotiating a claim settlement with ADA Carbon Solutions and revising the order regarding the same;

    vii.     negotiating resolutions to vendor issues, including the Holt Settlement; and

49

viii.    researching, drafting, and revising and reviewing pleadings regarding vendor issues, including the Holt Settlement.

(zz)    **[EFIH] Bond Issues (Matter No. 65)**

Total Fees:    $14,727.00
Total Hours:   16.30

90.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period related to issues regarding the EFIH Debtors' bonds and the bonds' respective indenture trustees. Specifically, Kirkland attorneys spent time analyzing and corresponding regarding an indenture trustee's motion to pay certain fees and expenses.

(aaa)    **[EFIH] Cash Collateral / DIP Financing / Make-whole Issues (Matter No. 66)**

Total Fees:    $4,531,286.00
Total Hours:   5,244.30

91.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to EFIH financing issues. Specifically, Kirkland attorneys and paraprofessionals spent time:

i.    negotiating and resolving substantially all issues, concerns, and objections of interested parties related to the EFIH Debtors' motion for authority to enter into the EFIH First Lien DIP Facility, and obtaining final approval of the EFIH First Lien DIP Facility;

ii.    assisting the EFIH Debtors and their other advisors in closing the EFIH First Lien DIP Facility and EFIH First Lien Makewhole Settlement;

iii.    reviewing, analyzing, and negotiating the terms and conditions of proposed alternatives to the EFIH Second Lien DIP Facility;

iv.    advising the Debtors' management and boards regarding the proposed alternative facilities and drafting supporting materials and analyses;

v.    drafting, revising, and researching offering memoranda, legal opinions, and other documents related to the proposed EFIH Second Lien DIP Facility and EFIH Second Lien Makewhole Settlement;

vi.    coordinating, and participating in, numerous conferences with the EFIH Debtors, the Debtors' other professionals, and the Debtors' stakeholders

50

regarding the EFIH First Lien DIP Facility, EFIH First Lien Makewhole Settlement, EFIH Second Lien DIP Facility, and EFIH Second Lien Makewhole Settlement;

vii.     assisting the EFIH Debtors and their other advisors in analyzing alternative means of reducing postpetition interest expense or the accrual of postpetition interest claims;

viii.    researching legal issues and reviewing proposals related to these EFIH financing and repayment alternatives;

ix.     drafting, reviewing, and revising board presentations summarizing these alternatives and the corresponding research and analysis;

x.     drafting and revising a motion and order regarding partial repayment of second lien notes;

xi.     drafting and revising a reply to objections to such partial repayment;

xii.    negotiating an amendment to the EFIH DIP financing to facilitate such partial repayment;

xiii.   reviewing the second lien EFIH DIP proposal;

xiv.   drafting and filing the letter regarding the PIK makewhole objection;

xv.    analyzing EFIH financing options, including a proposal for a potential DIP extension;

xvi.   meeting with lenders and corresponding with the Company regarding the same;

xvii.  negotiating an EFIH DIP refinancing and extension and preparing a motion to obtain court approval of the same;

xviii. communicating and coordinating with the EFIH Debtors and their other advisors regarding the EFIH DIP refinancing and extension;

xix.   analyzing issues regarding the makewhole claims litigation against the EFIH Debtors' estates;

xx.    communicating and coordinating with the EFIH Debtors and their other advisors regarding the PUCT Order and liquidity projections;

xxi.   drafting and filing the EFIH First Lien DIP Motion;

xxii.  negotiating with counsel to lenders and preparing documentation regarding terms of the amendment to the EFIH First Lien DIP Credit Agreement; and

51

xxiii.    analyzing compliance issues related to terms of DIP financing.

**(bbb)  [EFIH] Claims Administration and Objections (Matter No. 67)**

Total Fees:    $29,139.00
Total Hours:   28.40

92.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services relating to the administration and resolution of potential claims against the EFIH Debtors' estate. Specifically, Kirkland attorneys and paraprofessionals spent time:

   i.    coordinating and participating in conferences with the EFH Creditors' Committee;

   ii.   researching and drafting responses to demand letters sent by EFIH creditors and to other creditor inquiries; and

   iii.  addressing issues related to the resolution and litigation of the makewhole claims against the EFIH Debtors' estates.

**(ccc)  [EFIH] Contested Matters and Adversary Proceedings (Matter No. 68)**

Total Fees:    $9,297,535.00
Total Hours:   12,269.00

93.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the EFIH Debtors' contested matters and adversary proceedings with EFIH creditors.    Specifically, Kirkland attorneys and paraprofessionals spent time:

   i.    drafting, revising, and researching responses to objections to the EFIH First Lien DIP Facility, EFIH First Lien Makewhole Settlement, EFIH Second Lien DIP Facility, and EFIH Second Lien Makewhole Settlement;

   ii.   preparing for, attending, and conducting depositions and preparing witnesses related to objections regarding the same;

   iii.  drafting, revising, and researching opposition to the EFIH First Lien Makewhole Settlement appeal;

52

iv.    identifying, collecting, and processing volumes of documents for review and potential production; then analyzing and reviewing potentially responsive documents;

v.    reviewing and responding to EFIH creditors' and sponsors' discovery requests;

vi.    analyzing, in consultation with the EFIH Debtors and the EFIH Debtors' other professionals, discovery requests and other filings related to discovery;

vii.    researching, drafting, and revising pleadings associated with the EFIH First and Second Lien makewhole litigations;

viii.    preparing for and participating in oral arguments associated with these litigations;

ix.    drafting and revising the joint pre-trial memorandum; and in preparation for the EFIH First Lien makewhole summary judgment and lift stay proceedings;

x.    researching, drafting, and revising materials in preparation for EFIH PIK motion to dismiss hearing;

xi.    securing the denial of the EFIH first and second liens' claim for a makewhole premium;

xii.    analyzing an appeal of the same to the Third Circuit and drafting a response brief;

xiii.    negotiating and entering into a settlement with the EFIH PIK holders;

xiv.    analyzing and reviewing briefs in preparation for oral argument in the makewhole litigation before the Third Circuit;

xv.    analyzing the Makewhole Opinion and revising and drafting petition for rehearing;

xvi.    analyzing makewhole litigation in connection with the EFIH Settlement and communicating with the Debtors and creditor constituencies regarding the appeal of the Makewhole Opinion;

xvii.    reviewing and analyzing potential complications surrounding failure to effectuate the EFIH Settlement;

xviii.    drafting a status report and stipulation of dismissal regarding the makewhole litigation;

53

xix.     analyzing litigation and related issues in connection with a preliminary injunction motion;

xx.     drafting and analyzing discovery-related correspondence to the Bankruptcy Court;

xxi.     analyzing litigation and related issues in connection with the NEE Termination Fee dispute; and

xxii.     drafting and analyzing correspondence related to the stay of PIK makewhole-related litigation.

**(ddd)   [EFIH] Corp. Governance and Sec. Issues (Matter No. 69)**

Total Fees:     $47,030.00
Total Hours:   57.60

94.     This Matter Category includes time spent by Kirkland attorneys during the Fee Period related to corporate governance issues involving the EFIH Debtors.  Specifically, Kirkland attorneys and paraprofessionals spent time:

i.     analyzing various governance issues in connection with the November 3, 2014 bidding procedures ruling, EFIH repayment, and related governance issues;

ii.     preparing presentations to the board of managers of EFH Corp. regarding recommended courses of action in light of the same governance issues;

iii.     attending board meetings of the EFIH Debtors;

iv.     analyzing and reviewing equity award agreements and communicating with the EFIH Debtors, their advisors, and the disinterested directors regarding the same; and

v.     analyzing and revising executive compensation and employment agreements and communicating with the EFIH Debtors and their advisors regarding the same.

**(eee)   [EFIH] Hearings (Matter No. 70)**

Total Fees:     $212,567.50
Total Hours:   281.30

95.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period preparing for, and attending the hearings on the EFIH

54

First Lien DIP Facility, EFIH First Lien Makewhole Settlement, EFIH Second Lien DIP Facility, discovery and status conferences related thereto, an appellate hearing regarding makewhole issues in connection with claims filed by EFIH creditors; and a hearing the NextEra Merger Agreement and NextEra PSA.

### (fff)   [EFIH] Non-K&E Retention and Fee Applications (Matter No. 72)

Total Fees:    $8,087.00
Total Hours:   12.10

96.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to the retention of the disinterested directors' advisors to advise EFIH on actual conflicts matters at the direction of the disinterested manager of EFIH.

### (ggg)   [EFIH] Non-Working Travel (Matter No. 73)

Total Fees:    $172,250.00
Total Hours:   206.10

97.    This Matter Category includes non-working travel time spent by Kirkland attorneys and paraprofessionals during the Fee Period in connection with their representation of the EFIH Debtors. The amounts requested in the Fee Application reflect a reduction of one-half of the charges for travel time not spent working on matters related to these chapter 11 cases.

### (hhh)   [EFIH] Official Committee Issues and Meetings (Matter No. 74)

Total Fees:    $10,673.00
Total Hours:   14.40

98.    This Matter Category includes the services provided by Kirkland attorneys and paraprofessionals during the Fee Period advising the EFIH Debtors in connection with addressing issues raised by counsel to the EFH Creditors' Committee, participating in multiple in-person and

55

telephonic diligence sessions with counsel to the EFH Creditors' Committee, and providing access to requested diligence and to materials produced through heavily negotiated and Court-approved discovery protocols.

### (iii)    [EFIH] Plan/Disclosure Statement (Matter No. 76)

Total Fees:    $4,080,886.50
Total Hours:   4,439.10

99.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period engaging in discussions with EFIH creditors regarding discrete plan issues affecting the EFIH Debtors.    Specifically, Kirkland attorneys and paraprofessionals spent time:

> i.    negotiating, drafting, and revising the Merger Agreement, EFH Plan Support Agreement, and ancillary agreements;
>
> ii.    communicating and coordinating with the Debtors and their other advisors regarding consummation of the transactions contemplated by the Plan;
>
> iii.    negotiating, drafting, and revising the Plan and communicating and coordinating with the Debtors, their other advisors, the disinterested directors, and creditor constituencies;
>
> iv.    researching, drafting, and revising a motion to approve the Merger Agreement and EFH Plan Support Agreement;
>
> v.    negotiating, drafting, and revising the EFH/EFIH Disclosure Statement and related solicitation materials;
>
> vi.    negotiating, drafting, and filing a motion to establish a schedule for the EFH/EFIH confirmation proceedings and obtaining court approval of the same;
>
> vii.    negotiating, drafting, and revising the Merger Agreement, NextEra PSA, and ancillary agreements;
>
> viii.    drafting and revising responses and objections to discovery requests;
>
> ix.    communicating and coordinating with the EFH/EFIH Debtors and their other advisors regarding consummation of the transactions contemplated by the Plan; and

x.        drafting and filing a response to objections to the Merger Agreement, Termination Fee, and NextEra PSA.

**(jjj)    [EFIH] Private Letter Ruling/IRS Issues (Matter No. 77)**

Total Fees:    $3,653.50
Total Hours:  3.10

100.    This Matter Category includes time spent by Kirkland attorneys advising the EFIH Debtors on tax issues relating to the EFIH Second Lien DIP Facility and alternative proposals, and analyzing the complex tax considerations associated with the EFIH Debtors' proposed restructuring with the EFIH Debtors' creditors.

**(kkk)  [EFIH] Rest. Support Agrmt./Global Sett. (Matter No. 78)**

Total Fees:    $45,943.50
Total Hours:  82.30

101.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period relating to:

i.        drafting and revising motions, related declarations, and related orders to approve the EFIH First Lien Makewhole Settlement and the EFIH Second Lien Makewhole Settlement;

ii.       researching issues related to the EFIH First Lien Makewhole Settlement and the EFIH Second Lien Makewhole Settlement;

iii.      drafting and revising a proposed amendment to the Oncor tax sharing agreement; and

iv.      coordinating, and participating in numerous conferences, with the EFIH Debtors, other professionals, counsel to the EFIH first lien creditors, and counsel to the EFIH second lien creditors.

57

**(lll)**    **[EFH] Asset Disposition and Purchases (Matter No. 82)**

Total Fees:    $69,725.00
Total Hours:    102.50

102.    This Matter Category includes the time spent by Kirkland attorneys during the Fee Period regarding the disposition and purchases of various EFH assets. Specifically, Kirkland attorneys spent time:

    i.    providing services related to a potential sale of assets of EFIH;

    ii.    analyzing an asset purchase agreement and related issues and communicating with the Debtors, its advisors, and the disinterested directors regarding the same;

    iii.    analyzing, drafting, and filing a motion to approve an asset purchase agreement for certain generation assets;

    iv.    addressing matters related to an agreement to exchange certain assets between the Oncor Electric Delivery Company LLC and another public utility; and

    v.    analyzing, drafting, and preparing a motion to approve the Asset Swap.

**(mmm)**    **[EFH] Claims Administration and Objections (Matter No. 85)**

Total Fees:    $23,146.00
Total Hours:    47.80

103.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the administration and resolution of claims filed against EFH Corp. Specifically, Kirkland attorneys and paraprofessionals spent time analyzing and researching issues related to claims against EFH Corp.

**(nnn)**    **[EFH] Contested Matters & Advers. Pro. (Matter No. 86)**

Total Fees:    $119,083.00
Total Hours:    148.60

104.    This Matter Category includes the limited time spent by Kirkland attorneys during the Fee Period responding to discovery requests from significant holders of EFH claims,

58

reviewing and analyzing potential claims against EFH Corp., corresponding with the Company regarding the same, and reviewing and revising board presentations regarding the same.

### (ooo)   [EFH] Corp. Governance and Sec. Issues (Matter No. 87)

Total Fees:     $22,192.00
Total Hours:   21.10

105.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period relating to corporate governance issues involving EFH Corp., including participating in EFH Corp. board meetings.

### (ppp)   [EFH] EFH Properties (Matter No. 89)

Total Fees:     $507,516.00
Total Hours:   767.70

106.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period providing services, on behalf of the Debtors, related to certain leases, as well as researching, drafting, and revising memoranda and presentations regarding EFH Properties Company.

### (qqq)   [EFH] Hearings (Matter No. 90)

Total Fees:     $8,020.00
Total Hours:   7.00

107.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period preparing for and attending a hearing regarding the Merger Agreement and NextEra PSA.

### (rrr)   [EFH] Non-Core Subs/Discontinued Op. (Matter No. 92)

Total Fees:     $1,822.00
Total Hours:   2.00

108.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period providing services relating to corporate governance issues related to EFH Corp.'s non-core subsidiaries.

**(sss)** **[EFH] Non-Debtor Affiliates (Matter No. 93)**

Total Fees:    $1,022.00
Total Hours:   1.40

109.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period providing services, on behalf of the Debtors, related to issues regarding non-Debtor affiliates. Specifically, Kirkland attorneys spent time corresponding about issues regarding EFH Vermont Insurance Company.

**(ttt)** **[EFH] Non-K&E Retention & Fee Apps (Matter No. 94)**

Total Fees:    $5,991.50
Total Hours:   8.50

110.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to the retention of disinterested-director advisors to advise EFH on actual conflicts matters at the direction of the disinterested directors of EFH.

**(uuu)** **[EFH] Non-Working Travel (Matter No. 95)**

Total Fees:    $7,787.50
Total Hours:   8.30

111.    This Matter Category includes non-working travel time spent by Kirkland attorneys and paraprofessionals during the Fee Period in connection with their representation of the EFH Corp. The amounts requested in the Fee Application reflect a reduction of one-half of the charges for travel time not spent working on matters related to these chapter 11 cases.

**(vvv)  [EFH] Official Committee Issues & Meet. (Matter No. 96)**

Total Fees:    $118,117.00
Total Hours:   176.30

112.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period addressing various official Committee issues. Specifically, Kirkland attorneys and paraprofessionals spent time:

     i.     communicating with, and addressing issues related to, the potential appointment of a committee to represent the interests of EFH Corp. and the EFIH Debtors;

     ii.     addressing issues relating to the request of certain asbestos plaintiffs for the formation of an asbestos committee; and

     iii.     communicating with the EFH Creditors' Committee regarding related open issues and discovery requests.

**(www) [EFH] Retiree and Employee Issues/OPEB (Matter No. 101)**

Total Fees:    $34,649.50
Total Hours:   40.30

113.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period providing services related to various issues related to the Debtors' retirees and employees including those at EFH Corporate Services. Specifically, Kirkland attorneys spent time:

     i.     analyzing, in consultation with the Debtors, certain of the Debtors' retiree and employee compensation and benefit obligations;

     ii.     drafting, revising, and researching pleadings and supporting declarations relating to non-qualified benefits, non-insider compensation, and insider compensation;

     iii.     advising the Debtors in connection with separating their 401(k) plan;

     iv.     assisting the Debtors in negotiations with interested parties regarding the relief described above;

     v.     providing diligence related to the relief described above to numerous creditor constituencies; and

vi.      providing ongoing advice to the EFH Debtors regarding compensation matters.

### (xxx)   [ALL] Venue (Matter No. 106)

Total Fees:   $369,123.00
Total Hours:   526.10

114.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to challenges to the Debtors' choice of venue. Specifically, Kirkland attorneys and paraprofessionals spent time:

i.      researching and drafting pleadings in opposition to a change of venue;

ii.     identifying, collecting, and processing volumes of documents for review and potential production; then analyzing and reviewing potentially responsive documents that culminated in the production of approximately 50 documents and 460 pages of documents regarding the venue dispute;

iii.    preparing witnesses for four depositions and testimony in connection with the venue dispute; and

iv.    preparing, and coordinating the logistics for, the venue hearing.

### (yyy)   [ALL] Invoice Review (Matter No. 107)

Total Fees:   $139,628.00
Total Hours:   274.00

115.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period reviewing K&E invoices for services rendered during these chapter 11 cases.

### (zzz)   [TCEH] Exec. Contracts & Unexpired Leases (Matter No. 108)

Total Fees:   $2,758,208.00
Total Hours:   4,301.60

116.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period examining issues relating to the TCEH Debtors' executory contracts and unexpired leases. Specifically, Kirkland attorneys and paraprofessionals spent time:

i.     researching and analyzing the TCEH Debtors' obligations under various executory contracts and leases;

ii.    drafting, reviewing, and revising motions, discovery responses and requests, and related documents with respect to rejecting, assuming, or assigning such contracts and leases;

iii.   preparing for and participating in meetings and client interviews regarding the Alcoa litigation;

iv.    reviewing and evaluating production documents regarding privilege and responsiveness and drafting and revising discovery responses and objections in preparation of the same;

v.     negotiating, documenting, and securing court approval of a settlement resolving the same;

vi.    drafting, reviewing, and revising contract assumption stipulations and amendments;

vii.   communicating with the Debtors and their advisors regarding contract assumption and rejection issues; and

viii.  drafting various stipulations to extend the period to assume or reject leases of nonresidential property.

**(aaaa) [ALL] Enforcement of TTI Rights (Matter No. 113)**

Total Fees:    $1,789,567.00
Total Hours:   2,642.60

117.   This Matter Category includes time spent by Kirkland attorneys during the Fee Period reviewing and analyzing potential litigation required under the Merger Agreement as part of the Merger Transaction. Specifically, Kirkland attorneys spent time:

i.     reviewing EFH and TTI governing documents (e.g., Investor Rights Agreement);

ii.    engaging in discussions with various parties to the Plan Support Agreement and Merger and Purchase Agreement regarding discussions with TTI related to EFH's "drag-along rights" associated with the sale of Oncor;

iii.   drafting pleadings related to the potential enforcement of EFH's "drag along rights";

63

iv.     securing denial of a motion to dismiss the adversary case;

v.      compiling discovery requests and responses in preparation for trial;

vi.     evaluating regulatory considerations related to, among other things, potential EFH enforcement actions;

vii.    identifying, collecting, and processing documents from the Debtors for review and potential production;

viii.   coordinating document review processes internally and with third-party database vendor to ensure an efficient document review process;

ix.     analyzing and reviewing over 40,000 potentially responsive documents, culminating in the production of over 7,300 documents and over 191,000 pages, and preparing a privilege log and conferencing with the Debtors, their advisors, and certain parties-in-interest regarding the same;

x.      fact investigation, including document review, in preparation for depositions, motions for summary judgment, and trial;

xi.     preparing for, taking, and defending depositions of nine fact and expert witnesses;

xii.    drafting, revising, and filing a motion for summary judgment and other pleadings;

xiii.   preparing for and participating in oral argument on the parties' cross motions for summary judgment and TTI's motion for a determination that the court lacks authority to enter a final judgment;

xiv.    preparing for trial;

xv.     reviewing and analyzing Hunt Merger Agreement documentation regarding the drag-along rights; and

xvi.    corresponding with various K&E working groups and the Debtors regarding the same.

64

**(bbbb)** **[ALL] Drag Along Rights (Matter No. 114)**

Total Fees:    $30,545.50
Total Hours:   31.60

118.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period analyzing drag along rights related to the proposed sale of the interests in EFH and EFIH, including drafting and revising a sale notice for the proposed sale.

**(cccc)** **[TCEH] Exit Financing (Matter No. 115)**

Total Fees:    $3,543,064.00
Total Hours:   3,924.40

119.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period examining issues related to the TCEH Debtors' exit financing. Specifically, Kirkland attorneys and paraprofessionals spent time:

i.    researching and reviewing various exit financing issues, including the exit financing bid process and exit financing commitments and obligations;

ii.    drafting, reviewing, and revising a term sheet for a potential exit financing facility;

iii.    drafting and analyzing various exit financing issues, including exit financing commitments and obligations;

iv.    corresponding with the Company, its financial advisor, and opposing counsel regarding the same;

v.    analyzing, drafting, and executing credit agreement schedules, including various ancillary documents and security documents regarding TCEH exit financing; and

vi.    obtaining court approval to enter into an exit financing facility.

65

**(dddd)[ALL E-SIDE] Tax Calculations (Matter No. 124)**

Total Fees:    $3,744.00
Total Hours:   3.60

120.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period in connection with certain tax calculations related to the consummation of the Sempra Merger Agreement.

**Actual and Necessary Expenses Incurred by Kirkland**

121.    As summarized in **Exhibit F** attached hereto, Kirkland has incurred a total of $10,433,832.69 in expenses on behalf of the Debtors during the Fee Period.  These charges are intended to reimburse Kirkland's direct operating costs, which are not incorporated into the Kirkland hourly billing rates.  Kirkland charges external copying and computer research at the provider's cost without markup.  Only clients who actually use services of the types set forth in **Exhibit F** of this Fee Application are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would be to impose that cost upon clients who do not require extensive photocopying and other facilities and services.

**Reasonable and Necessary Services Provided by Kirkland**

**A.    Reasonable and Necessary Fees Incurred in Providing Services to the Debtors.**

122.    The foregoing professional services provided by Kirkland on behalf of the Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

123.    Many of the services performed by partners and associates of Kirkland were provided by Kirkland's Restructuring Group.  Kirkland has a prominent practice in this area and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies, with more than 100 attorneys focusing on this area of the

66

law.  The attorneys at Kirkland have represented either the debtor or a creditors' committee or have acted as special counsel in many large chapter 11 cases.

124.    In addition, due to the facts and circumstances of these chapter 11 cases, attorneys from Kirkland's Litigation, Corporate, and Tax Groups were heavily involved with Kirkland's representation of the Debtors during the Fee Period.  These practice groups also enjoy a national and international reputation for their expertise.  Overall, Kirkland brings to these chapter 11 cases a particularly high level of skill and knowledge, which inured to the benefit of the Debtors and all stakeholders.

**B.      Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors.**

125.    The time constraints imposed by the circumstances of these chapter 11 cases required Kirkland attorneys and other employees to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtors.  These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties-in-interest on a timely basis, satisfy the demands of the Debtors' businesses, and ensure the orderly administration of their estates.  Consistent with firm policy and the Fee Committee Guidelines, and as further disclosed in the Retention Application, Kirkland attorneys and other Kirkland employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs.  Kirkland's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of legal services.

126.    In addition, due to the location of the Debtors' businesses, co-counsel, creditors, and other parties-in-interest in relation to Kirkland's offices, frequent multi-party telephone conferences involving numerous parties were required.  On many occasions, the exigencies and

67

circumstances of these chapter 11 cases required overnight delivery of documents and other materials. The disbursements for such services are not included in Kirkland's overhead for the purpose of setting billing rates, and Kirkland has made every effort to minimize its disbursements in these chapter 11 cases. The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

127.     Among other things, Kirkland makes sure that all overtime meals, travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement. Specifically, Kirkland regularly reviews its bills to ensure that the Debtors are billed for only services that were actual and necessary, and also, where appropriate, prorates expenses across the Debtors' estates. In accordance with the Retention Order, Kirkland does not seek reimbursement of expenses for office supplies pursuant to this Fee Application. In addition, Kirkland has waived certain fees and reduced certain expenses to comply with the Fee Committee Guidelines. Kirkland will not seek reimbursement of expenses related to, among other things, in-office and out-of-office meals in excess of that allowed under the Fee Committee Guidelines and local travel expenses for those Kirkland employees who work on weekends or late in the evenings that do not meet the Fee Committee Guidelines.   In the Monthly Fee Statements, Kirkland voluntarily reduced its fees by $5,498,070.00 and its expenses by $986,448.56. Following negotiations with the Fee Committee, Kirkland has agreed to additional fee reductions of $5,447,204.80 and expense reductions of $863,347.41.[14] Consequently, in this Fee Application Kirkland does not seek payment of either those fees and expenses voluntarily reduced in the Interim Fee

---

[14]   The figures in this sentence do not include reductions, if any, resulting from discussions with the Fee Committee in relation to the Eleventh Interim Fee Application or the Twelfth Interim Fee Application. Negotiations with respect to both the Eleventh Interim Fee Application and Twelfth Interim Fee Application are ongoing as of the date hereof.

Applications, or those fees and expenses reduced as a result of negotiations with the Fee Committee.

### Kirkland's Requested Compensation and Reimbursement Should be Allowed

128.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (a)    the time spent on such services;
>
> (b)    the rates charged for such services;
>
> (c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (e)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

129.    Kirkland respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time rendered, necessary for and beneficial to the Debtors and their estates and were rendered to protect and preserve the Debtors' estates.  Kirkland further believes that it performed the services for the Debtors economically, effectively, and efficiently,

and that the results obtained benefited not only the Debtors, but also the Debtors' estates and the Debtors' stakeholders. Kirkland further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties-in-interest.

130. During the Fee Period, Kirkland's hourly billing rates for attorneys ranged from $320.00 to $1,745.00. The hourly rates and corresponding rate structure utilized by Kirkland in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by Kirkland for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required. Kirkland strives to be efficient in the staffing of matters. These rates and the rate structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in these chapter 11 cases.

131. Moreover, Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

132. In sum, Kirkland respectfully submits that the professional services provided by Kirkland on behalf of the Debtors and their estates during these chapter 11 cases were necessary and appropriate given the complexity of these chapter 11 cases, the time expended by Kirkland, the nature and extent of Kirkland's services provided, the value of Kirkland's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in

70

section 330 of the Bankruptcy Code.  Accordingly, Kirkland respectfully submits that approval of the compensation sought herein is warranted and should be approved.

133.    No previous application for the relief sought herein has been made to this or any other Court.

## Reservation of Rights and Notice

134.    It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Fee Application.  Kirkland reserves the right to include such amounts in addendums to this Fee Application.  In addition, the Debtors have provided notice of this Fee Application to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH

71

senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) the Fee Committee; and (z) those parties that have requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

135.    Pursuant to the Interim Compensation Order and the Fee Committee Order, any Notice Party (other than the Fee Committee) that wishes to object to the Fee Application must file

its objection with the Court, with a copy to Chambers and serve it on Kirkland and the Notice Parties so that it is **actually** **received** on or before **May 15, 2018 at 4:00 p.m. (Eastern Daylight Time)**.

## No Prior Request

136.    No prior application for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

73

WHEREFORE, Kirkland respectfully requests that the Court enter an order (a) awarding Kirkland final compensation for professional and paraprofessional services provided during the Fee Period in the amount of $172,805,511.20, and reimbursement of actual, reasonable, and necessary expenses incurred in the Fee Period in the amount of $10,433,832.69; (b) authorizing and directing the Debtors to remit payment to Kirkland for such fees and expenses to the extent not paid as of the date of entry of such order; and (c) granting such other relief as is appropriate under the circumstances.

Dated:  April 23, 2018
       Chicago, Illinois

                                  */s/ Chad J. Husnick*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         edward.sassower@kirkland.com
               stephen.hessler@kirkland.com
               brian.schartz@kirkland.com
               aparna.yenamandra@kirkland.com
-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         james.sprayregen@kirkland.com
               marc.kieselstein@kirkland.com
               chad.husnick@kirkland.com
               steven.serajeddini@kirkland.com

*Co-Counsel to the Reorganized TCEH Debtors, Reorganized EFH Shared Services Debtors, and the EFH Plan Administrator Board*