# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| ENERGY FUTURE HOLDINGS CORP., et al.,[1] | ) Case No. 14-10979 (CSS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) Objection Deadline: May 15, 2018 at 4 p.m. Eastern Time |
|  | ) |

## FINAL FEE APPLICATION OF ENOCH KEVER PLLC, SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION (TCEH), FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM MARCH 1, 2015 THROUGH AND INCLUDING MARCH 9, 2018[2]

| | |
|---|---|
| Name of Applicant: | Enoch Kever PLLC |
| Authorized to Provide Services to: | Energy Future Holdings Corp., *et al.* |
| Date of Retention: | April 13, 2015, *nunc pro tunc* to March 1, 2015 through March 9, 2018 |
| Period for which compensation and reimbursement is sought: | March 1, 2015 through March 9, 2018 |
| Amount of final compensation sought as actual, reasonable, and necessary: | $ 2,307,195.48 |

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location or the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcase info.com.

[2]  This form has been designed to incorporate many of the requirements of Local Rule 2016-2(c)(i) (Local form 101) and C.2.1 and Exhibit E to the Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases (the "U.S. Trustee Guidelines").

| | |
|---|---|
| Amount of final expense reimbursement sought as actual, reasonable, and necessary: | $ 77,136.71[3] |
| Blended rate in this application for all attorneys: | $ 347.17 / hour |
| Blended rate in this application for all timekeepers: | $ 341.04 /hour |

This is a ***final*** application.

The total time expended for fee application preparation for the Fee Period is approximately 47.9 hours and the corresponding compensation requested is approximately $ 16,335.82.

| | |
|---|---|
| Prior Interim Fee Applications & Adjustments: | None filed |
| Total allowed compensation to date: | $ 2,307,195.48 |
| Total allowed expenses to date: | $   77,136.71 |
| Number of professionals with time included in this application: | 15 |
| If applicable, number of professionals in this application not included in a staffing plan approved by the client: | N/A |
| If applicable, difference between fees budgeted and compensation sought for this period: | N/A |
| Are any timekeeper's hourly rates higher than those charged and approved upon retention? | No |

---

[3] Expenses billed and approved total $77,136.71. Several errors were discovered during preparation of this application resulting in overcharged expenses totaling $152.06. These are noted in Exhibit I and discussed in Item No. 21 of the Application. The final balance owed to Enoch Kever should be adjusted to deduct $152.06.

Dated:  April 23, 2018

/s/ Andrew Kever

**ENOCH KEVER PLLC**
Andrew Kever
5918 W. Courtyard, Suite 500
Austin, Texas  78730
Telephone:    (512) 615-1201
Facsimile:      (512) 615-1198
Email: akever@enochkever.com

*Special Counsel to the Debtors
and Debtors in Possession*

## **TABLE OF EXHIBITS**

Exhibit A:    Declaration of Andrew Kever

Exhibit B:    Retention Orders

Exhibit C:    Engagement Letters

Exhibit D:    Voluntary Rate Disclosures

Exhibit E:    Summary of Hours and Fees by Timekeepers

Exhibit F:    Summary of Actual and Necessary Expenses

Exhibit G:    Summary of Fees and Expenses by Matter

Exhibit H:    Detailed Description of Services Provided

Exhibit I:    Detailed Description of Expenses and Disbursements

Exhibit J:    List of Professionals by Matter

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., et al.,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Objection Deadline: May 15, 2018 at 4 p.m. Eastern Time |
| | ) |

**FINAL FEE APPLICATION OF ENOCH KEVER PLLC, SPECIAL COUNSEL
TO THE DEBTORS AND DEBTORS IN POSSESSION (TCEH), FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD
FROM MARCH 1, 2015 THROUGH AND INCLUDING MARCH 9, 2018**

Enoch Kever PLLC ("Enoch Kever"), special counsel to the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submits its final fee application (the "Fee Application") for allowance of compensation for professional services provided to TCEH in the amount of $ 2,307,195.48 and reimbursement of actual and necessary expenses in the amount of $ 77,136.71 that Enoch Kever incurred for the period from March 1, 2015 through September 30, 2016 (the "Fee Period"). In support of this Fee Application, Enoch Kever submits the declaration of Andrew Kever, a Managing Member at Enoch Kever, (the "Kever Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference. In further support of this Fee Application, Enoch Kever respectfully states as follows.

## Jurisdiction

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")

---

[1]      The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location or the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcase info.com.

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. The Debtors confirm their consent pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Fee Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2016-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), the *Order Establishing Procedures of or Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066J] (the "Interim Compensation Order"), and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order") .

## Background

4.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On June 5, 2014, the Court entered a final order [D.I. 849] authorizing the joint administration and procedural consolidation of the Debtors'

chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No entity has requested the appointment of a trustee or examiner in these chapter 11 cases.  On May 13, 2014, the United States Trustee for the  District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company, LLC ("EFIH"), EFIH Finance, Inc., and EECI, Inc. (EFH Corp., EFIH, and EFIH Finance, and their direct and indirect Debtor subsidiaries excluding the TCEH Debtors, the "EFH/EFIH Debtors," such committee, the "EFH Creditors' Committee" and, together with the TCEH Creditors' Committee, the "Official Committees") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 981].

5.      A description of the Debtors' businesses, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of Paul Keglevic in Support of Debtors' Chapter 11 Petitions*, filed on April 29, 2014 [D.I. 98] and incorporated herein by reference.

6.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

7.      During the Fee Period, all of the Debtors continued their significant progress toward closure of these chapter 11 cases.  Having de-leveraged their balance sheet and secured numerous regulatory approvals, the TCEH Debtors emerged from chapter 11 on October 3, 2016 and the EFH/EFIH Debtors emerged from chapter 11 on March 9, 2018.

8.       TCEH Debtors and EFH Shared Services Debtors.  Subsequent to confirmation of the Plan on August 29, 2016, the TCEH Debtors and the EFH Shared Services Debtors worked diligently to satisfy various closing conditions and secure numerous regulatory approvals, including from the Railroad Commission of Texas, among others.  Most importantly, the TCEH Debtors effectuated their tax-free spin-off from EFH Corp.  On October 3, 2016, the TCEH Debtors emerged with secured exit financing and having shed approximately $ 33 billion of debt.

## Preliminary Statement

9.       During the Fee Period, Enoch Kever represented the Debtors professionally and diligently, advising them on a variety of complex state regulatory matters and issues, as a result of which the Debtors took action to maximize the value of their estates for the benefit of all parties in interest. Specifically, Enoch Kever advised the Debtors on all matters of Texas Law affecting the regulation of the Debtors' business by the Public Utility Commission of Texas.

## Case Status Summary

10.      The TCEH Debtors and the EFH/EFIH Debtors have emerged from Chapter 11.

## The Debtors' Retention of Enoch Kever

11.      On April 13, 2015, the Court entered the *Order Authorizing the Debtors to Retain and Employ Enoch Kever PLLC as Special Counsel for Certain Regulatory and Legislative Matters, Effective* Nunc Pro Tunc *to March 1, 2015.* [D.I. 4134]   (the "Retention Order"), attached hereto as **Exhibit B** and incorporated by reference.  The Retention Order authorizes the Debtors to compensate and reimburse Enoch Kever in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Interim Compensation Order.  The Retention Order also authorizes the Debtors to compensate Enoch Kever at Enoch Kever's hourly rates charged for services of this type and to reimburse Enoch Kever for Enoch Kever's actual and necessary out-of-pocket expenses incurred, subject to application to this Court.  The

particular terms of Enoch Kever's engagement are detailed in the Legislative Engagement Letter and the Consolidated Engagement Letter by and between Enoch Kever and the Debtors, effective as of January 14, 2014, February 3, 2014 and March 6, 2015 and attached hereto as **Exhibit C** (collectively the "Engagement Letters").

12.     The Retention Order authorizes Enoch Kever to provide legislative and regulatory services consistent with and in furtherance of the services enumerated above.

### Disinterestedness of Enoch Kever

13.     To the best of the Debtors' knowledge and as disclosed in the *First Supplemental Declaration of Andrew Kever in Support of the Application of Energy Future Holdings Corp., et al., for an Order Authorizing the Debtors to Retain and Employ Enoch Kever PLLC as Special Counsel for Certain Regulatory and Legislative Matters, Effective* Nunc Pro Tunc *to March 1, 2014* [D.I. 4077] (the "First Supplemental Kever Declaration"), (a) Enoch Kever is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Enoch Kever has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Enoch Kever Declaration.

14.     Enoch Kever may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtors in these chapter 11 cases.  In the First Supplemental Kever Declaration, Enoch Kever disclosed its connections to parties in interest that it has been able to ascertain using its reasonable efforts.

15.    Enoch Kever performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

16.    Except to the extent of the advance payments paid to Enoch Kever that Enoch Kever previously disclosed to this Court in the First Supplemental Kever Declaration, Enoch Kever has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these chapter 11 cases.

17.    Pursuant to Bankruptcy Rule 2016(b), Enoch Kever has not shared, nor has Enoch Kever agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of Enoch Kever or (b) any compensation another person or party has received or may receive.

### Summary of Compliance with Interim Compensation Order

18.    This Fee Application has been prepared in accordance with the Interim Compensation Order.

19.    Enoch Kever seeks final compensation for professional services rendered to the Debtors during the Fee Period in the amount of $ 2,307,195.48 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $77,136.71.  During the Fee Period, Enoch Kever attorneys and paraprofessionals expended a total of 6,765.25 hours for which compensation is requested.

20.    Enoch Kever has sought payments totaling $2,384,332.19 under the Interim Compensation Order and the Fee Committee Order pursuant to the monthly fee statements. Enoch Kever has submitted the Monthly Fee Statements seeking payment of (a) 80% of the fees incurred by the Debtors for reasonable and necessary professional services rendered by Enoch

Kever and (b) 100% of the actual and necessary costs and expenses incurred by Enoch Kever in connection with the services provided to the Debtors for each month.

21.     Accordingly, by this Fee Application, and to the extent such amounts have not been paid by the time of the hearing on this Fee Application, Enoch Kever seeks payment of the remaining $486,269.45*, which represents the 20% holdback period on fees incurred during the Fee Period ($432,656.04), unpaid approved compensation ($53,480.00), and unpaid expenses ($133.41). [*During preparation of the itemized expenses in Exhibit I, Enoch Kever discovered several errors resulting in overcharged expenses totaling $152.06 which are noted by each expense and summarized at the end the exhibit.] After allowing a credit of $152.06 for these errors, the adjusted total balance owed to Enoch Kever is $486,117.39.

### Fees and Expenses Incurred During Fee Period

**A.     Customary Billing Disclosures**.

22.     Enoch Kever's hourly rates are set at a level designed to compensate Enoch Kever fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. The hourly rates and corresponding rate structure utilized by Enoch Kever in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by Enoch Kever for other similar services, restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.   The rates and rate structure reflect that such services typically involve great complexity, high stakes, and severe time pressures.  For the convenience of the Court and all parties in interest, attached hereto as **Exhibit D** is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to the Debtors during the Fee Period.

**B.**    **Fees Incurred During Fee Period**.

23.    In the ordinary course of Enoch Kever's practice, Enoch Kever maintains computerized records of the time expended to render the professional services required by the Debtors and their estates.  For the convenience of the Court and all parties in interest, attached hereto as **Exhibit E** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at Enoch Kever's current billing rates;

- the number of rate increases since the inception of the case; and

- a calculation of total compensation requested using the rates disclosed in the *Debtors' Application of Energy Future Holdings Corp., et al., for an Order Authorizing the Debtors to Retain and Employ Enoch Kever PLLC as Special Counsel for Certain Regulatory and Legislative Matters, Effective* Nunc Pro Tunc *to March 1, 2014* [D.I. 4077] (the "Retention Application").

**C.**    **Expenses Incurred During Fee Period**.

24.    In the ordinary course of Enoch Kever's practice, Enoch Kever maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.  Enoch Kever currently charges $0.13 per page for standard duplication in its offices.  Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, Enoch Kever charged no more than $0.13 per page for standard duplication services in these chapter 11 cases.  Enoch Kever does not charge its clients for incoming facsimile transmissions.

25.     For the convenience of the Court and all parties in interest, attached hereto as **Exhibit F** is a summary of expenses incurred during the Fee Period and setting forth the total amount of reimbursement sought with respect to each category of expenses for which Enoch Kever is seeking reimbursement.

## Monthly Fee Statements And Retainer Refund

26.     Pursuant to the procedures set forth in the Interim Compensation Order and the Fee Committee Guidelines, Enoch Kever submitted Monthly Fee Statements during the Fee Period seeking payment of (a) 80% of the fees incurred by the Debtors for reasonable and necessary professional services provided by Enoch Kever and (b) 100% of the actual and necessary costs and expenses incurred by Enoch Kever in connection with the services provided to the Debtors, as follows:

- For the month of March 2015, Enoch Kever sought fees in the amount of $90,000.00 (80% of $112,500.00) and expenses of $1,341.49 [D.I. 4853].

- For the month of April, 2015, Enoch Kever sought fees in the amount of $90,000.00 (80% of $112,500.00) and expenses of $1,300.87 [D.I. 5029].

- For the month of May, 2015, Enoch Kever sought fees in the amount of $90,000.00 (80% of $112,500.00) and expenses of $3,314.19 [D.I. 6441].

- For the month of June, 2015, Enoch Kever sought fees in the amount of $90,000.00 (80% of $112,500.00) and expenses of $1,112.81 [D.I.6543].

- For the month of July, 2015, Enoch Kever sought fees in the amount of $90,000.00 (80% of $112,500.00) and expenses of $3,584.12 [D.I. 6563].

- For the month of August, 2015, Enoch Kever sought fees in the amount of $90,000.00 (80% of $112,500.00) and expenses of $1,966.10 [D.I. 6796].

- For the month of September, 2015, Enoch Kever sought fees in the amount of $90,000.00 (80% of $112,500.00) and expenses of $4,174.56 [D.I. 6928].

- For the month of October, 2015, Enoch Kever sought fees in the amount of $90,000.00 (80% of $112,500.00) and expenses of $589.08 [D.I. 7174].

- For the month of November, 2015, Enoch Kever sought fees in the amount of $90,000.00 (80% of $112,500.00) and expenses of $1,000.46 [D.I. 7908].

- For the month of December, 2015, Enoch Kever sought fees in the amount of $90,000.00 (80% of $112,500.00) and expenses of $45,033.57 [D.I. 7957].

- For the month of January, 2016, Enoch Kever sought fees in the amount of $90,000.00 (80% of $112,500.00) and expenses of $919.11 [D.I. 8001].

- For the month of February, 2016, Enoch Kever sought fees in the amount of $90,000.00 (80% of $112,500.00) and expenses of $46.80 [D.I. 8420].

- For the month of March, 2016, Enoch Kever sought fees in the amount of $90,000.00 (80% of $112,500.00) and expenses of $479.90 [D.I. 8496].

- For the month of April, 2016, Enoch Kever sought fees in the amount of $71,666.66 (80% of $89,583.33) and expenses of $799.41 [D.I. 9167].

- For the month of May, 2016, Enoch Kever sought fees in the amount of $173,413.46 (80% of $216,766.83) and expenses of $1,105.86 [D.I. 9193].

- For the month of June, 2016, Enoch Kever sought fees in the amount of $125,437.06 (80% of $156,796.33) and expenses of $5,512.39 [D.I. 9400].

- For the month of July, 2016, Enoch Kever sought fees in the amount of $101,779.46 (80% of $127,224.33) and expenses of $1,529.19 [D.I. 9568].

- For the month of August, 2016, Enoch Kever sought fees in the amount of $118,112.26 (80% of $147,640.33) and expenses of $1,752.08 [D.I. 10806].

- For the month of September, 2016, Enoch Kever sought fees in the amount of $85,347.46 (80% of $106,684.33) and expenses of $1,574.72 [D.I. 10807].

27.    As of the filing of this Fee Statement, Enoch Kever has been paid a total of $1,821,059.44 in fees and $77,003.30 in expenses. Enoch Kever will therefore credit the amount of $1,898,062.74 against the total amount of fees and expenses approved by the Court pursuant to this Fee Application.

## Summary of Legal Services Rendered During the Fee Period

28.    As discussed above, during the Fee Period, Enoch Kever provided extensive and important professional services to the Debtors in connection with these chapter 11 cases.  These

services were often performed under severe time constraints and were necessary to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by large wholesale and retail electric generation and sale companies.

29.    To provide a meaningful summary of Enoch Kever's services provided on behalf of the Debtors and their estates, Enoch Kever has established, in accordance with its internal billing procedures, certain subject matters categories (each, a "Matter Category").    The following is a summary of the fees and hours billed for each Matter Category in the Fee Period:[2] This summary is organized in accordance with Enoch Kever's internal system of matter numbers. A schedule setting forth a description of each Matter Category utilized in this case, the number of hours expended by Enoch Kever partners, associates, and paraprofessionals for each Matter Category, and the aggregate fees associated with each Matter Category is attached hereto as **Exhibit G**.

30.    In addition, Enoch Kever's computerized records of time expended providing professional services to the Debtors and their estates are attached hereto as **Exhibit H**, and Enoch Kever's records of expenses incurred during the Fee Period in the rendition of professional services to the Debtors and their estates are attached as **Exhibit I**.

31.    The following is a summary, by Matter Category, of the most significant professional services provided by Enoch Kever during the Fee Period.

**A.    Luminant (Matter No. 11001)**

Fees: $2,057,195.50  Total Hours: 5,727.85

32.    This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation in all regulatory matters. Major categories of activity

---

[2]    In certain instances Enoch Kever may have billed the same amount of fees, but different amount of hours to different matter categories.  This difference is the result of different staffing of each such matter category.

for the period are described briefly in the following paragraphs.

**A.1 Luminant (Matter No. 11001-16)**

 Fees: $---  Total Hours: 1,004.20

33.  This general advice category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to questions not otherwise included in a specific subcategory. During the Fee Period principal questions concerned fuel strategy questions, generation unit retirement questions, record retention questions and updates on general actions by the Public Utility Commission of Texas ("PUCT").

**A.2 Luminant (Matter No. 11001-27)**

 Fees: $---  Total Hours:  347.70

34.  This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to rulemakings before the PUCT where the involvement of the TCEH Debtors is minor.

**A.3 Luminant (Matter No. 11001-28)**

 Fees: $---  Total Hours:  90.20

35.  This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to limited questions regarding regulatory requirements affecting internal review of various procedures.

**A.4 Luminant (Matter No. 11001-41)**

 Fees: $---  Total Hours: 574.35

36.  This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to changes which occur to all PUCT, ERCOT, TRE, NERC and FERC laws, rules and regulations which potentially affect Luminant's operations in the market. This includes all enforcement matters reported by the affected agencies.

Each quarter our attorneys review these developments with the client and update the client's compliance system accordingly.

### A.5 Luminant (Matter No. 11001-49)

Fees: $----    Total Hours: 149.60

37.    This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to preparation of the required five year filing report on the nuclear decommissioning fund for Comanche Peak Nuclear Power Plant.

### A.6 Luminant (Matter No. 11001-50)

Fees: $--    Total Hours: 60.60

38.    This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with  respect to annual regulatory compliance training .

### A.7 Luminant (Matter No. 11001-57)

Fees: $---    Total Hours: 79.70

39.    This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with  respect  to requests addressed to the PUCT from time to time to produce certain documents related to Luminant Energy and Luminant Generation under the Public Information Act.

### A.8 Luminant (Matter No. 11001-59)

Fees: $---    Total Hours: 60.90

40.    This category includes all work related to representing TCEH Debtors Luminant Energy and Luminant Generation in the continuing review by the PUCT of various measures and strategies for maintaining an adequate supply of generation resources in ERCOT.

### A.9 Luminant (Matter No. 11001-72)

Fees: $---    Total Hours:  62.50

41.    This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to questions of limited scope on various environmental regulatory requirements affecting Luminant Energy and Luminant Generation.

### A.10 Luminant (Matter No. 11001-78)

Fees: $---    Total Hours: 19.20

42.    This category includes all work related to representing TCEH Debtors Luminant Energy and Luminant Generation in an appeal from an Order of the PUCT filed by NRG and Calpine involving claimed errors by ERCOT in recommending the construction of certain new transmission facilities into the Houston area. During the Fee Period, Enoch Kever prepared and made filings with the District Court of Travis County and counseled the TCEH Debtors regarding the litigation.

### A.11 Luminant (Matter No. 11001-79)

Fees: $---    Total Hours: 51.10

43.    This category includes all work related to representing TCEH Debtors Luminant Energy and Luminant Generation with respect to rulemakings by the PUCT involving the risks and costs associated with Subsynchronous Oscillation created by certain equipment installed, owned and operated by Transmission and Distribution Utilities in ERCOT, specifically as it affects the Debtors' facilities. During the Fee Period, Enoch Kever analyzed various proposals, led negotiation among various stakeholders and prepared and filed regulatory comments on proposals by the PUCT Staff.

**A.12 Luminant (Matter No. 11001-80)**

Fees: $---    Total Hours:  688.80

44.    This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to opposing an application filed at the PUCT by certain generators that would have limited the ability of other competitive generators (including Luminant Generation) to import power to the Houston area consumers.

**A.13 Luminant (Matter No. 11001-82)**

Fees: $---    Total Hours:  438.10

45.    This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to the regulatory approvals required for the purchase of certain generating assets.

**A.14 Luminant (Matter No. 11001-83)**

Fees: $---    Total Hours:  433.20

46.    This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to a complaint filed against Luminant Generation at the PUCT by Bluebonnet Electric Cooperative, seeking the exclusive right to furnish power to certain mining operations.

**A.15 Luminant (Matter No. 11001-84)**

Fees: $---    Total Hours:  394.70

47.    This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to the regulatory restrictions to be placed upon the operation of a proposed Direct Current tie facility which, if constructed, would permit the import and export of power to and from the ERCOT market.

### A.16 Luminant (Matter No. 11001-85)

Fees: $---    Total Hours:  642.00

48.    This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to the impact and terms of a proposed annexation by the City of Forney, Texas of land that is the site of a power plant owned by Luminant Generation.

### A.17 Luminant (Matter No. 11001-86)

Fees: $---    Total Hours:  106.10

49.    This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to a request by the PUCT staff for certain information related to the ramp rates for certain combustion turbines owned and operated by Luminant Generation.

### A.18 Luminant (Matter No. 11001-87)

Fees: $---    Total Hours:  40.90

50.    This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to proposed legislation affecting the water rights of owners of electric generation.

### A.19 Luminant (Matter No. 11001-88)

Fees: $---    Total Hours:  397.30

51.    This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to an investigation by the staff of the PUCT regarding certain operating practices of certain combustion turbines.

### A.20 Luminant (Matter No. 11001-89)

Fees: $---    Total Hours:  37.40

52.    This category includes all work related to representing the TCEH Debtors Luminant Energy and Luminant Generation with respect to an investigation by the staff of the PUCT related to the performance of Luminant Generation in providing Responsive Reserve Service.

### B.  TXU Energy (Matter No. 11002)

Fees: $ 210,416.71    Total Hours: 980.30

53.    This category includes time spent by Enoch Kever attorneys and paraprofessionals analyzing regulatory implications for new business strategies, advising TXU Energy on applicability of various regulatory requirements as well as other matters involving the PUCT.

### B.1 TXU Energy (Matter No. 11002-4)

Fees: $-----    Total Hours: 79.70

54.    This category includes time spent by Enoch Kever attorneys advising and assisting TXU Energy with respect to general questions of limited scope affecting the provision of retail electric service.

### B.2 TXU Energy (Matter No. 11002-63)

Fees: $-----    Total Hours: 20.70

55.    This category includes time spent by Enoch Kever attorneys advising and assisting TXU Energy with respect to regulatory consideration in connection with the design of various retail electric service products.

**B.3 TXU Energy (Matter No. 11002-65)**

Fees: $-----        Total Hours: 194.10

56.    This category includes time spent by Enoch Kever attorneys advising and assisting TXU Energy with respect to the application of regulatory requirements to current and planned retail service operations, including document preparation and counseling.

**B.4 TXU Energy (Matter No. 11002-67)**

Fees: $-----        Total Hours: 51.90

57.    This category includes time spent by Enoch Kever attorneys advising and assisting TXU Energy with respect to requests addressed to the PUCT from time to time to produce certain documents related to TXU Energy under the Public Information Act.

**B.5 TXU Energy (Matter No. 11002-68)**

Fees: $----        Total Hours: 59.20

58.    This category includes time spent by Enoch Kever attorneys providing services related to the monitoring and evaluation of a regulatory complaint by a retail customer against both a Transmission and Distribution Company and an unrelated Retail Electric Provider. Services included counseling and evaluation of the customer's complaints and potential applicability in the broader electric market.

**B.6 TXU Energy (Matter No. 11002-69)**

Fees: $-----        Total Hours: 289.30

59.    This category includes time spent by Enoch Kever attorneys advising and assisting TXU Energy with respect to regular periodic review of compliance with the regulatory requirements applicable to the retail electric service, including updating internal controls as appropriate.

### B.7 TXU Energy (Matter No. 11002-70)

Fees: $-----      Total Hours: 35.20

60.    This category includes time spent by Enoch Kever attorneys advising and assisting TXU Energy with respect to legislation considered and passed by the Texas Legislature governing the form of contracts between retail electric providers and municipal governments.

### B.8 TXU Energy (Matter No. 11002-71)

Fees: $-----      Total Hours: 146.70

61.    This category includes time spent by Enoch Kever attorneys advising and assisting TXU Energy with respect to review and analysis of certain regulatory requirements in certain states where TXU Energy was considering entering the retail electric market.

### B.9 TXU Energy (Matter No. 11002-72)

Fees: $-----      Total Hours: 40.50

62.    This category includes time spent by Enoch Kever attorneys advising and assisting TXU Energy with respect to various limited appearances on behalf of TXU Energy in contested cases at the PUCT where certain TXU Energy interests could potentially be affected

### B.10 TXU Energy (Matter No. 11002-73)

Fees: $-----      Total Hours: 52.20

63.    This category includes time spent by Enoch Kever attorneys advising and assisting TXU Energy with respect to a complaint filed at the PUCT seeking to impose new potentially burdensome obligations on retail electric providers.

**C. 4Change Energy (Matter No. 12050)**

Fees: $ 39,583.27        Total Hours: 57.10

64.    This category includes time spent by Enoch Kever attorneys and paraprofessionals analyzing regulatory implications for new business strategies, advising 4Change Energy on applicability of various regulatory requirements as well as other matters involving the PUCT. During the fee period, the principal activity involved preparation and filing of the annual report.

### Actual and Necessary Expenses Incurred by Enoch Kever

65.    As set forth in **Exhibit I** attached hereto, and as summarized in **Exhibit F** attached hereto, Enoch Kever has incurred a total of $77,136.71 in expenses on behalf of the Debtors during the Fee Period.  These charges are intended to reimburse Enoch Kever's direct operating costs, which are not incorporated into the Enoch Kever hourly billing rates.  Enoch Kever charges external copying and computer research at the provider's cost without markup. Only clients who actually use services of the types set forth in **Exhibit I** of this Fee Application are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

### Reasonable and Necessary Services Provided by Enoch Kever

**A.    Reasonable and Necessary Fees Incurred in Providing Services to the Debtors.**

66.    The foregoing professional services provided by Enoch Kever on behalf of the Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

67.    Many of the services performed by partners and associates of Enoch Kever were provided by Enoch Kever's Public Utility and Electric Industry Group.  Enoch Kever has a

prominent practice in this area and enjoys a statewide reputation for its expertise in regulation of electric industry participants.  The attorneys at Enoch Kever have represented the Debtor companies as well as other major electric industry participants for many years.

**B.      Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors.**

68.    The time constraints imposed by the circumstances of these chapter 11 cases required Enoch Kever attorneys and other employees to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtors.  These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties in interest on a timely basis, and satisfy the demands of the Debtors' businesses and ensure the orderly administration of their estates.

69.    In addition, due to the location of the Debtors' businesses, co-counsel, creditors, and other parties in interest in relation to Enoch Kever's offices, frequent multi-party telephone conferences involving numerous parties were required.  On many occasions, the exigencies and circumstances of these chapter 11 cases and the Debtors' business required overnight delivery of documents and other materials.  The disbursements for such services are not included in Enoch Kever's overhead for the purpose of setting billing rates and Enoch Kever has made every effort to minimize its disbursements in these chapter 11 cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

70.    Among other things, Enoch Kever makes sure that all overtime meals, travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement.  Specifically, Enoch Kever regularly reviews its bills to ensure that the Debtors are only billed for services that were actual and necessary and, where appropriate, prorates

expenses. In that regard, Enoch Kever will waive certain fees and reduce its expenses if necessary.

### Enoch Kever's Requested Compensation and Reimbursement Should be Allowed

71.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.   Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."   11 U.S.C. § 330(a)(1).   Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (a)     the time spent on such services;
>
> (b)     the rates charged for such services;
>
> (c)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (e)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

72.     Enoch Kever respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time rendered, necessary for and beneficial to the Debtors and their estates and were rendered to protect and preserve the Debtors' estates.

Enoch Kever further believes that it performed the services for the Debtors economically, effectively, and efficiently, and the results obtained benefited not only the Debtors, but also the Debtors' estates and the Debtors' constituents.    Enoch Kever further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

73.    During the course of these chapter 11 cases, Enoch Kever's hourly billing rates for attorneys ranged from $325.00 to $550.00 per hour for partners, from $225.00 to $325.00 for associates, and $50.00 to $95.00 for paraprofessionals. Based on the recorded hours expended by Enoch Kever's attorneys and paraprofessionals, the average hourly billing rate for Enoch Kever's services to TCEH was $341.04. The hourly rates and corresponding rate structure utilized by Enoch Kever in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by Enoch Kever for regulatory, restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.  Enoch Kever strives to be efficient in the staffing of matters.  These rates and the rate structure reflect that such matters are typically statewide in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in these chapter 11 cases.

74.    Moreover, Enoch Kever's hourly rates are set at a level designed to compensate Enoch Kever fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

75.      In sum, Enoch Kever respectfully submits that the professional services provided by Enoch Kever on behalf of the Debtors and their estates during these chapter 11 cases were necessary and appropriate given the complexity of these chapter 11 cases, the time expended by Enoch Kever, the nature and extent of Enoch Kever's services provided, the value of Enoch Kever's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code.  Accordingly, Enoch Kever respectfully submits that approval of the compensation sought herein is warranted and should be approved.

76.      No previous application for the relief sought herein has been made to this or any other Court.

<u>**Reservation of Rights and Notice**</u>

77.      The Debtors have provided notice of this Fee Application to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture

trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) the Fee Committee; and (z) those parties that have requested notice pursuant to Bankruptcy Rule 2002

(the "<u>Notice Parties</u>").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

78.    Pursuant to the Interim Compensation Order and the Fee Committee Order, any Notice Party (other than the Fee Committee) that wishes to object to the Fee Application must file its objection with the Court, with a copy to Chambers and serve it on Enoch Kever and the Notice Parties so that it is **actually received** on or before **May 15, 2018, at 4:00 p.m. (Eastern Standard Time).**

### No Prior Request

79.    No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, Enoch Kever respectfully requests that the Court enter an order (a) awarding Enoch Kever final compensation for professional and paraprofessional services provided during the Fee Period in the amount of $ 2,307,195.48, and reimbursement of actual, reasonable and necessary expenses incurred in the Fee Period in the amount of $ 77,136.71[3]; (b) authorizing and directing the Debtors to remit payment to Enoch Kever for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

---

[3]    Expenses billed and approved total $77,136.71. Several errors were discovered during preparation of this application resulting in overcharged expenses totaling $152.06. These are noted in Exhibit I and discussed in Item No. 21 of the Application. The final balance owed to Enoch Kever should be adjusted to deduct $152.06.

Austin, Texas
Date: April 23, 2018

/s/ Andrew Kever

**ENOCH KEVER PLLC**
Andrew Kever
5918 W. Courtyard, Suite 500
Austin, Texas  78730
Telephone:     (512) 615-1201
Facsimile:      (512) 615-1198
Email: akever@enochkever.com

*Special Counsel to the Debtors*
*and Debtors in Possession*