# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date:  To Be Determined** |
| | ) | **Objection Deadline: May 15, 2018 at 4:00 p.m.** |
| | ) | |

## SUMMARY COVER SHEET TO THE SEVENTH AND FINAL |FEE APPLICATION OF THOMPSON & KNIGHT LLP, SPECIAL TAX | COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION

In accordance with the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), Thompson & Knight LLP ("T&K"), attorneys for the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), submits this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the fee application to which this Summary is attached (the "Final Fee Application").[2]

T&K submits the Final Fee Application as its final fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (the "Interim Compensation Order")[3] and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896], as amended on February 1, 2018 [D.I. 12552] (the "Fee Committee Order").[4]

### General Information

Name of Applicant:                                                    Thompson & Knight LLP

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not otherwise defined in this Summary shall have the meanings ascribed to such terms in the Final Fee Application.

[3]    D.I. 2066.

[4]    D.I. 1896.

| | |
|---|---|
| Authorized to Provide Services to: | Energy Future Holdings Corp., *et al.* |
| Petition Date: | April 29, 2014 |
| Date of Order Authorizing the Debtors to Retain T&K [D.I. 2061]: | September 16, 2014, *nunc pro tunc* to April 29, 2014 |

### Summary of Fees and Expenses Sought in the Final Fee Application

| | |
|---|---|
| Period for Which Compensation and Reimbursement is Sought in the Final Fee Application: | April 29, 2014 through March 9, 2018 |
| Voluntary Fee Waiver and Expense Reduction in the Final Interim Fee Period: | n/a |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Final Fee Application: | 10186 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Final Interim Period (5/1/2016 – 3/9/2018): | $127,142.80 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Final Interim Period (5/1/2016 – 3/9/2018): | $10.20 |
| Total Compensation and Expense Reimbursement Requested for the Final Interim Period (5/1/2016 – 3/9/2018): | $127,153.00 |
| Compensation Previously Awarded, but not yet paid | $75,944.84 |

### Rate Increases Applicable to the Final Interim Fee Period

| | |
|---|---|
| Total Amount of Compensation Sought for the Final Interim Fee Period, Calculated Using Rates as of the Date of Retention: | $110,955.20 |

### Summary of Past Requests for Compensation and Prior Payments

| | |
|---|---|
| Total Amount of Compensation Previously Requested Pursuant to the Interim Compensation Order to Date: | $3,177,072.75[5] |
| Total Amount of Expense Reimbursement Previously Requested Pursuant to the Interim Compensation Order to Date: | $22,211.29[6] |
| Total Compensation Approved Pursuant to the Interim Compensation Order to Date: | $3,120,193.87[7] |
| Total Amount of Expense Reimbursement Approved Pursuant to the Interim Compensation Order to Date: | $20,834.53[8] |

---

[5]   This amount includes the fees requested by T&K in the (i) First Interim Fee Application [D.I. 2789] ($575,740.50), (ii) the Second Interim Fee Application [D.I. 3849] ($489,517.00), (iii) the Third Interim Fee Application [D.I. 5188] ($571,554.75), the Fourth Interim Fee Application [D.I. 6995] ($780,000.50), (iv) the Fifth Interim Fee Application [D.I. 8066] ($506,550.50), and (v) the Sixth Interim Fee Application [D.I. 9317] ($253,709.50).

[6]   This amount includes the expenses requested by T&K in the (i) First Interim Fee Application [D.I. 2789] ($8,518.75), (ii) the Second Interim Fee Application [D.I. 3849] ($1,639.59), (iii) the Third Interim Fee Application [D.I. 5188] ($9,190.84), the Fourth Interim Fee Application [D.I. 6995] ($776.99), and (v) the Sixth Interim Fee Application [D.I. 9317] ($46.71).

[7]   This amount includes the fees requested by T&K in the (i) First Interim Fee Application ($575,740.50) [D.I. 2789], which amount was approved on December 29, 2014 by the *Omnibus Order Awarding Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses* [D.I. 3148] (the "First Interim Order"), less the $696.50 reduction in fees requested by the Fee Committee; (ii) Second Interim Fee Application ($489,517.00) [D.I. 3849], which amount was approved on June 24, 2015 by the *Omnibus Order Awarding Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses During the First and Second Interim Fee Periods* [D.I. 4843] (the "Second Interim Order"), less the $39,234.13 reduction in fees requested by the Fee Committee; and (iii) Third Interim Fee Application ($571,554.75) [D.I. 5188], which amount was approved on October 26, 2015 by the *Omnibus Order Awarding Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses During the Second and Third Interim Fee Periods* [D.I. 6667] (the "Third Interim Order"), less the $9,412.75 reduction in fees requested by the Fee Committee; (iv) Fourth Interim Fee Application ($780,000.50) [D.I. 6995], which was approved on February 18, 2016 by the *Omnibus Order Awarding Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses During the First Through Fourth Interim Fee Periods* [D.I. 7883] less the $1,187.00 fee reduction in fees requested by the Fee Committee, (v) *Omnibus Order Awarding Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses During the Fifth Interim Fee Periods* (the "Fifth Interim Order") ($506,550.50) [D.I. 8824], less the $2,440 reduction in fees requested by the Fee Committee; and (vi) *Omnibus Order Awarding Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses* (the "Sixth Interim Order") ($253,709.50, less the $3,908.50 reduction in fees requested by the Fee Committee) [D.I. 9963].

[8]   This amount includes all expenses requested by T&K in the (i) First Interim Fee Application ($8,518.75) [D.I. 2789], which amount was approved by the First Interim Order, less the $167.92 reduction in expenses requested by the Fee Committee; (ii) Second Interim Fee Application ($1,639.59) [D.I. 3849], less the $725.45 reduction in expenses requested by the Fee Committee; (iii) Third Interim Fee Application ($9,190.84) [D.I. 5188], which amount was approved by the Third Interim Order, less the $218.89 reduction in expenses requested by the Fee Committee; (iv) Fourth Interim Fee Application [D.I. 6995] ($776.99), which was approved by the Fourth Interim Order; (v) Fifth Interim Fee Application [D.I. 8066] ($2,038.41), which was approved by the Fifth

| | |
|---|---|
| Total Allowed Compensation and Expenses Paid to Date: | $3,162,274.25 |
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $97,190.70 |
| Expenses Sought In This Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $3.00 |
| Total Amount Due: | $105,907.15 |

---

Interim Order, less the $264.50 reduction in expenses requested by the Fee Committee; and (vi) Sixth Interim Fee Application [D.I. 9317] ($46.71), which was approved by the Sixth Interim Order [D.I. 9963].

**SEVENTH AND FINAL FEE APPLICATION OF THOMPSON & KNIGHT LLP – PAGE 4**
**SUMMARY COVERPAGE**

Dated: April 23, 2018
      Dallas, Texas

/s/ Mary A. McNulty

Mary A. McNulty
Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:    (214) 969-1700
Facsimile:    (214) 969-1751
Email: mary.mcnulty@tklaw.com

*Special Tax Counsel to the Debtors
and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date:  To Be Determined**<br>**Objection Deadline: May 15, 2018 at 4:00 p.m.** |

**SEVENTH AND FINAL FEE APPLICATION OF
THOMPSON & KNIGHT LLP, SPECIAL TAX COUNSEL
FOR THE DEBTORS AND DEBTORS- IN-POSSESSION**

Thompson & Knight LLP ("T&K"), special tax counsel for debtors and debtors-in-possession (collectively, the "Debtors"), submits its seventh and final fee application (this "Final Fee Application") for allowance of compensation for professional services provided in the amount of $3,304,215.55 and reimbursement of actual and necessary expenses in the amount of $22,221.49 that T&K incurred for the period from Petition Date through and including March 9, 2018 (the "Fee Period").  In support of this Final Fee Application, T&K submits the declaration of Mary McNulty, a partner at T&K, (the "McNulty Declaration"), which is attached as **Exhibit A** and incorporated by reference.

**Jurisdiction**

1.      The United States Bankruptcy Court for the District of Delaware (this "Court") has subject matter jurisdiction over this Final Fee Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 330 of Title 11 of the United States Code (the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2016-1 and Rule 2016-2 of the Local Rules for the United States Bankruptcy Court District of Delaware (the "Local Bankruptcy Rules"), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (the

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

"Interim Compensation Order")[2] and the *Stipulation and Order Appointing a Fee Committee* (the "Fee Committee Order").[3]

### Background

4.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  On June 5, 2014, the Court entered an order[4] authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases (these "Chapter 11 Cases" or this "Case") pursuant to Bankruptcy Rule 1015(b).  No entity has requested the appointment of a trustee or examiner in these Cases.  On May 13, 2014, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to Section 1102 of the Bankruptcy Code (the "Committee").[5]

5.      A description of the Debtors' businesses, the reasons for commencing these Cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions*, filed on April 29, 2014[6] and incorporated herein by reference.

6.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals employed in these cases.

7.      Given the size and complexity of these Chapter 11 Cases, the U.S. Trustee, the Debtors, and the Committee agreed to recommend that the Court appoint a fee committee to review and report, as appropriate, on interim and final fee applications filed by all of the Debtors' retained professionals in accordance with 11 U.S.C. §§ 328, 330, and 331 of the Bankruptcy Code and the Interim Compensation Order (the "Fee Committee").  On August 21, 2014, this Court entered the Fee Committee Order, appointing the Fee Committee and establishing procedures governing the Fee Committee's review of the Debtors' retained professionals' applications for compensation and the resolution of any concerns raised during

---

[2]    D.I. 2066.

[3]    D.I. 1896.

[4]    D.I. 849.

[5]    D.I. 420.

[6]    D.I. 98.

such review.  On October 3, 2014, the Fee Committee distributed to those professionals retained in these Chapter 11 Cases an initial memorandum regarding guidelines for expense reimbursements, and on October 7, 2014, December 1, 2014, February 18, 2015, March 9, 2015, and June 9, 2015 the Fee Committee distributed additional memorandums regarding the fee review process (together, the "Fee Committee Guidelines").

8.    On August 29,  2016, this Court entered its *Order Confirming the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of The Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* (the "TCEH Confirmation Order").[7]

9.    On October 3, 2016, the Debtors filed the *Notice of Entry of TCEH Confirmation Order and Occurrence of Effective Date* (the "TCEH Effective Date Notice").  In the TCEH Effective Date Notice, the deadline for filing Professional Fee Claims (as that term is defined in the TCEH Effective Date Notice) was set for November 17, 2016, the date that is 45 days after the TCEH Effective Date.[8]

10.    On November 17, 2016, counsel for the Debtors filed the *Global Reservation of Rights for* Retained *Professionals Concerning Final Fee Applications for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses in Connection with Services Rendered to the TCEH Debtors and EFH Shared Services Debtors for the Period from April 29, 2014 through October 3, 2016* (the "Global Reservation").[9]  The Global Reservation contemplated that professionals would be filing a final fee application attributable to the estates of EFH Corp. and EFIH.

11.    On February 27, 2018, the Court entered the *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holdings Company LLC and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code*.[10]

---

[7]    D.I. 9421.

[8]    D.I. 9742.

[9]    D.I. 10214

[10]    D.I. 12763.

12.     On March 9, 2018, the Debtors filed the *Notice of Entry of EFH Confirmation Order and Occurrence of the Effective Date* (the "EFH Effective Date Notice").[11]  According to the EFH Effective Date Notice, the deadline for filing Professional Fee Claims (as that term is defined in the EFH Effective Date Notice) was set for April 23, 2018, a date that is 45 days after the EFH Effective Date.  Accordingly, T&K believes that the relief requested herein is timely and that it complies with the Fee Committee Guidelines.

**Preliminary Statement**

13.     During the Fee Period, T&K represented the Debtors professionally and diligently, advising them on a variety of complex tax matters and issues, as a result of which the Debtors took action to maximize the value of their estates for the benefit of all parties-in-interest.

14.     Specifically, T&K rendered services to the Debtors as requested and appropriate in furtherance of the Debtor's restructuring efforts.  During its employment, T&K was instrumental in working with the Internal Revenue Service (the "IRS") to finalize the settlement of Debtors' 2003-2006 tax years.  As a result of T&K's efforts, the IRS filed proofs of claim for Debtors' 2003-2006 tax years equal to approximately $244 million based on the settlements reached with IRS Appeals, rather than the multi-billion adjustments proposed by the IRS audit team.  By resolving the numerous tax adjustments before the bar date, T&K removed a potential obstacle to the ultimate confirmation of Debtors' plan of reorganization.  Additionally, T&K played a key role in evaluating the structures and tax consequences of bids for Debtors' interest in Oncor and provided services relating to various restructuring proposals, including seeking a private letter ruling from the IRS that would allow the Debtors to reorganize under Chapter 11 in a tax efficient manner with a partial basis step-up rather than in a fully taxable transaction.

**Retention of T&K**

15.     On May 29, 2014, the Debtors filed their *Application for Order Authorizing Employment of Thompson & Knight* (the "TK Employment Application").  On September 16, 2014, this Court entered the *Order Authorizing the Debtors to Retain and Employ Thompson & Knight LLP as Special Tax Counsel for Certain Tax-Related Matters, Effective Nunc Pro Tunc to the Petition Date* (the "TK Retention Order"),[12] attached as **Exhibit B** and incorporated by reference.  The TK Retention Order authorizes the Debtors to compensate and reimburse T&K in

---

[11]   D.I. 12601.

[12]   D.I. 2061.

accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Interim Compensation Order.  The TK Retention Order also authorizes the Debtors to compensate T&K at T&K's hourly rates charged for services of this type and to reimburse T&K for T&K's actual and necessary out-of-pocket expenses incurred, subject to Court approval.  The particular terms of T&K's engagement are detailed in the engagement letters by and between T&K and the Debtors and attached as **Exhibit C** (the "TK Engagement Letters").

16.     The TK Retention Order authorizes T&K to provide the legal services and advice in connection with various tax issues relating to (a) the Debtors' debt restructuring, (b) IRS tax controversies, (c) Texas tax issues, and (d) other tax matters as needed throughout the Debtors' chapter 11 cases (collectively, the "Tax Issues").

17.     To comply with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Fee Guidelines") promulgated by the Office of the United States Trustee, T&K submitted to the Debtors budget and staffing plans for the Fee Period, attached as **Exhibit D**.

**Disinterestedness of T&K**

18.     To the best of the Debtors' knowledge and as disclosed in the Declaration of Mary McNulty in Support of the Application of Energy Future Holdings, et al., for Entry of an Order Authorizing Energy Future Holdings Corp. to Retain and Employ Thompson & Knight LLP as Special Counsel for Certain Tax-Related Matters Effective Nunc Pro Tunc to the Petition Date (the "Original T&K Declaration"),[13] the Supplemental Declaration of Mary McNulty in Support of the Application of Energy Future Holdings, et al., for Entry of an Order Authorizing Energy Future Holdings Corp. to Retain and Employ Thompson & Knight LLP as Special Counsel for Certain Tax-Related Matters Effective Nunc Pro Tunc to the Petition Date (the "Supplemental TK Declaration"),[14] the Second Supplemental Declaration of Mary McNulty in Support of the Application of Energy Future Holdings, et al., for Entry of an Order Authorizing Energy Future Holdings Corp. to Retain and Employ Thompson & Knight LLP as Special Counsel for Certain Tax-Related Matters Effective Nunc Pro Tunc to the Petition Date (the "Second Supplemental TK Declaration"),[15] the Fourth Supplemental Declaration of Mary

---

[13]    D.I. 653-3.

[14]    D.I. 2044.

[15]    D.I. 3459.

McNulty in Support of the Application of Energy Future Holdings, et al., for Entry of an Order Authorizing Energy Future Holdings Corp. to Retain and Employ Thompson & Knight LLP as Special Counsel for Certain Tax-Related Matters Effective Nunc Pro Tunc to the Petition Date (the "Fourth Supplemental TK Declaration")[16], the Sixth Supplemental Declaration of Mary McNulty in Support of the Application of Energy Future Holdings, et al., for Entry of an Order Authorizing Energy Future Holdings Corp. to Retain and Employ Thompson & Knight LLP as Special Counsel for Certain Tax-Related Matters Effective Nunc Pro Tunc to the Petition Date (the "Sixth Supplemental TK Declaration")[17], the Seventh Supplemental Declaration of Mary McNulty in Support of the Application of Energy Future Holdings, et al., for Entry of an Order Authorizing Energy Future Holdings Corp. to Retain and Employ Thompson & Knight LLP as Special Counsel for Certain Tax-Related Matters Effective Nunc Pro Tunc to the Petition Date (the "Seventh Supplemental TK Declaration")[18], the Eighth Supplemental Declaration of Mary McNulty in Support of the Application of Energy Future Holdings, et al., for Entry of an Order Authorizing Energy Future Holdings Corp. to Retain and Employ Thompson & Knight LLP as Special Counsel for Certain Tax-Related Matters Effective Nunc Pro Tunc to the Petition Date (the "Eighth Supplemental TK Declaration")[19], the Ninth Supplemental Declaration of Mary McNulty in Support of the Application of Energy Future Holdings, et al., for Entry of an Order Authorizing Energy Future Holdings Corp. to Retain and Employ Thompson & Knight LLP as Special Counsel for Certain Tax-Related Matters Effective Nunc Pro Tunc to the Petition Date (the "Ninth Supplemental TK Declaration")[20] (a) T&K is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code, as required by Section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates; and (b) T&K has no connection to the Debtors, their creditors, or other parties-in-interest, except as may be disclosed in the T&K Declaration and the Supplemental TK Declarations.[21]

---

[16]    D.I. 7695.

[17]    D.I. 8347.

[18]    D.I. 9246.

[19]    D.I 10365

[20]    D.I. 11445

[21]    Although T&K has been retained by the Debtors as special counsel pursuant to Section 327(e) of the Bankruptcy Code and is therefore not subject to the same disinterestedness standard as professionals retained pursuant to Section 327(a), to the best of T&K's knowledge, T&K satisfies the Section 327(a) disinterestedness standard.

**SEVENTH AND FINAL FEE APPLICATION OF THOMPSON & KNIGHT LLP – PAGE 6**

19.     T&K has fully and finally performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

**Payments During Fee Period**

20.     Except to the extent previously disclosed, T&K has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these Chapter 11 Cases.

21.     Pursuant to Bankruptcy Rule 2016(b), T&K has not shared, nor has T&K agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of T&K or (b) any compensation another person or party has received or may receive.

**Summary of Compliance with Interim Compensation Order**

22.     This Final Fee Application has been prepared in accordance with the Interim Compensation Order and the Fee Committee Order.

23.     T&K seeks the final approval of all compensation for professional services rendered to the Debtors during the Fee Period in the total amount of $3,304,215.55 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the total amount of $22,221.49.   During the Fee Period, T&K attorneys and paraprofessionals expended a total of 5747.3 hours for which compensation is requested. The following table reflects the fees and expenses requested by TK during the Fee Period:

| Fee Application | Fees Requested | Expenses Requested | Total Requested | Fee Committee Adjustment | Total Approved Amount | Total Amount Paid | Total Outstanding |
|---|---|---|---|---|---|---|---|
| First Interim | $575,740.50 | $8,518.75 | $584,259.25 | ($864.42) | $583,394.83 | $583,056.80 | **$338.03** |
| Second Interim | $489,517.00 | $1,639.59 | $491,156.59 | ($39,959.58) | $451,197.01 | $451,197.01 | **$0.00** |
| Third Interim | $571,554.75 | $9,190.84 | $580,745.59 | ($9,631.64) | $571,113.95 | $571,113.95 | **$0.00** |
| Fourth Interim | $780,000.50 | $776.99 | $780,777.49 | ($1,187.00) | $779,590.49 | $779,322.89 | **$267.60** |
| Fifth Interim | $506,550.50 | $2,038.41 | $508,588.91 | ($2,704.50) | $505,884.41 | $433,941.32 | **$71,943.09** |
| Sixth Interim | $253,709.50 | $46.71 | $253,756.21 | ($3,908.50) | $249,847.71 | $246,451.58 | **$3,396.13** |
| Final Interim | $127,142.80 | $10.20 | $127,153.00 | $0.00 | $127,153.00 | $97,190.70 | **$29,962.30** |
| **Totals** | **$3,304,215.55** | **$22,221.49** | **$3,326,437.04** | **($58,255.64)** | **$3,268,181.40** | **$3,162,274.25** | **$105,907.15** |

24.     To date, T&K has received a total of $3,162,274.25 under the Interim Compensation Order or the Fee Committee Order on account of its previously filed interim fee applications.   T&K has submitted monthly fee statements for May, June, July and August 2016 seeking payment of (a) 80% of the fees incurred by the Debtors for reasonable and necessary

professional services provided by T&K; and (b) 100% of the actual and necessary costs and expenses incurred by T&K in connection with the services provided to the Debtors.

25.     Further, during the period between the TCEH Effective Date Notice and the EFH Effective Date Notice, T&K continued submitting invoices in the ordinary course of business between T&K and the Debtors. As reflected on **Exhibit H-1**, the reorganized TCEH debtor paid $36,767.50 in fees and expenses on account of these invoices.

26.     T&K requests that this Court approve and authorize this Final Fee Application with the payment of proposed estimated amount of $10,000.00 for the preparation of this Final Fee Application, preparation for, and attendance at the hearing on the application, subject to a reconciliation process.

27.     Additionally, by this Final Fee Application, T&K seeks the award of all fees and expenses previously awarded and paid on an interim basis be deemed finally awarded in accordance with 11 U.S.C. § 330.

**Fees and Expenses Incurred During the Fee Periods**

**A.     Customary Billing Disclosures**.

28.     T&K's hourly rates are set at a level designed to compensate T&K fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. The hourly rates and corresponding rate structure utilized by T&K in these Chapter 11 Cases are equivalent to or less than the hourly rates and corresponding rate structure used by T&K for other tax matters, whether in court or otherwise, regardless of whether a fee application is required. Other than as herein provided, no other agreements, promises, caps or limitations exist. Time entries are in one-tenth increments. The time entries do not involve value billing for a particular project, service, or a set fee for a particular task. For the convenience of the Court and all parties-in-interest, attached as **Exhibit E** is a summary of fees, including the number of hours, hourly rates, and total value of services expended by partners, associates, and paraprofessionals performing services as special counsel to the Debtors during the Fee Period. Also attached as **Exhibit I** is a summary of the blended hourly rate for all T&K domestic timekeepers (including partners, associates, and paraprofessionals) who billed to non-bankruptcy matters during the 12-month period beginning on October 1, 2015 and ending on September 30, 2016.

**B.     Fees Incurred During Fee Periods**.

29.     In the ordinary course of T&K's practice, T&K maintains computerized records of the time expended to render the professional services required by the Debtors and their estates. For the convenience of the Court and all parties-in-interest, attached as **Exhibit E** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

(a)     the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

(b)     each attorney's year of bar admission and area of practice concentration;

(c)     the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

(d)     the hourly billing rate for each attorney and each paraprofessional at T&K's current billing rates;

(e)     the hourly billing rate for each attorney and each paraprofessional as disclosed in the second interim application;

(f)     the number of rate increases since the inception of the case; and

(g)     a calculation of total compensation requested using the rates disclosed in the second interim application.

**C.     Expenses Incurred During Fee Periods**.

30.     In the ordinary course of T&K's practice, T&K maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.   T&K currently charges $0.10 per page for standard duplication in its offices in the United States.   Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, T&K charged no more than $0.10 per page for standard black and white and $0.50 per page for standard color duplication services in these chapter 11 cases.   T&K does not charge its clients for incoming facsimile transmissions.

31.     For the convenience of the Court and all parties-in-interest, attached as **Exhibit F** is a summary of the total amount of reimbursement sought with respect to each category of expenses for which T&K is seeking reimbursement during the Fee Period.

### Summary of Legal Services Rendered During the Fee Periods

32.     T&K would ask the Court to take judicial notice of the previously filed fee applications regarding the historical services provided to the Debtors during the Fee Period. Specific tasks performed during the period May 1, 2016 through March 9, 2018 (the "Final Interim Period") are detailed herein as the tasks provided by T&K during the time it provided services to the Debtors has been detailed in each of the previously filed fee applications.

33.     As discussed in more detail below, during the Final Interim Period, T&K provided extensive and important tax and other legal services to the Debtors in connection with these Chapter 11 Cases, including resolving Debtors' 2003-2006 federal income tax years and related proofs of claim and evaluating the structures and tax consequences of bids for Debtors' interest in Oncor, including seeking a private letter ruling from the IRS to allow the Debtors to reorganize under Chapter 11 in a tax efficient manner with a partial basis step-up rather than in a fully taxable transaction.

34.     To provide a meaningful summary of T&K's services provided on behalf of the Debtors and their estates, T&K has established, in accordance with its internal billing procedures, certain subject matters categories (each, a "Matter Category") in connection with these chapter 11 cases. The following is a summary of the fees and hours billed for each Matter Category in for the Final Interim Period and a summary of the most significant professional services provided by T&K during this time.[22]  This summary is organized in accordance with T&K's internal system of matter numbers. The detailed descriptions demonstrate that T&K was heavily involved in performing services for the Debtors. A schedule setting forth a description of the Matter Categories utilized in this case, the number of hours expended by T&K partners, associates and paraprofessionals by matter, and the aggregate fees and expenses associated with each matter is attached as **Exhibit G**. Additionally, T&K's detailed invoices reflecting the time providing professional services to the Debtors and their estates during the Final Interim Period are attached as **Exhibit H and H-1**,[23] and T&K's records of expenses incurred during the period Final Interim Period in the rendition of professional services to the Debtors and their estates are attached as **Exhibit F**.

**Tax Advice [Task Code B240]**

Total Fees:     $7,367.30
Total Hours:   8.8

35.     This Matter Category includes time spent by T&K attorneys providing services to finalize the settlement of Debtors' 2003-2006 federal income tax years, including:

(a)     analyzing the procedures to close the case, including reviewing final closing documents, terminating the indefinite statute of limitations, and obtaining the approval of the bankruptcy court;

---

[22]   In certain instances T&K may have billed the same amount of fees, but different amount of hours to different matter categories. This difference is the result of different staffing of each such matter category.

[23]   Invoices for the periods preceding May 1, 2016 have previously been filed with each of the prior interim fee applications that T&K has filed.

**SEVENTH AND FINAL FEE APPLICATION OF THOMPSON & KNIGHT LLP – PAGE 10**

(b)    preparing interest netting requests, analyzing interest computations and netting computations, and responding to questions from the IRS regarding tax computations; and

(c)    updating the Appeals Team Case Leader and IRS management about developments in the Debtors' bankruptcy case.

As a result of T&K's efforts, the IRS filed proofs of claim for Debtors' 2003-2006 tax years equal to approximately $244 million based on the settlements reached with IRS Appeals, rather than the multi-billion adjustments proposed by the IRS audit team.  By resolving the numerous tax adjustments before the deadline for proofs of claim (the "Bar Date"), T&K removed a potential obstacle to the confirmation of Debtors' plan of reorganization.  T&K finalized the 2003-2006 settlement with the IRS in August 2015 and worked with the IRS on the related interest computations from September 2015 through January 2016.  Thereafter, T&K resolved related proofs of claim and updated IRS Appeals on the status of the bankruptcy case.

### Debt Restructuring Advice [Task Codes B110, B160, B161, B162, B170, and B240]

Total Fees:    $115,209.70
Total Hours:   268.8

36.    A portion of the services rendered in this Matter Category includes time spent in connection with the general administration of the Debtors' case, including, but not limited to conflicts database research regarding the necessity for additional disclosure regarding representation of other creditors in this case.  This category includes time spent on matters that could not be categorized in another subcategory.

### (a)    Employment Applications [Task Code B160]

Total Fees:    $21,558.00
Total Hours:   64.5

37.    Services rendered in this Matter Category related to the preparation and filing of the monthly fee statements, as well as the drafting and negotiating of the monthly budget and staffing plans.  Specifically, T&K attorneys and paraprofessionals spent time: discussing budget and staffing plans with the Debtors; drafting proposed budget and staffing plans; and reviewing and revising the proposed budget and staffing plans with other T&K professionals and the Debtors.

### (b)    Budget and Staffing Plans [Task Code B161]

Total Fees:    $7,977.00
Total Hours:   16.5

38.    Services rendered in this Matter Category related to the drafting of the monthly fee statements, the interim fee applications, and the Final Fee Application.  Specifically, T&K attorneys and paraprofessionals spent time:

    i.    preparing and distributing T&K's monthly fee statements and the Interim Fee Applications in accordance with the Interim Compensation Order;

    ii.    reviewing all time entries to ensure compliance with the Interim Compensation Order and applicable provisions of the Bankruptcy Code, and to make necessary redactions to preserve the confidentiality of the work performed for the Debtors;

    iii.    and preparing fee reconciliation schedules.

    **(c)    Fee Applications [Task Code B162]**

    Total Fees:    $33,609.00
    Total Hours:    90.4

39.    Services rendered in this Matter Category related to the responding to Fee Committee objections to T&K's monthly fee statements.

    **(d)    Fee Objections [Task Code B170]**

    Total Fees:    $472.50
    Total Hours:    0.9

40.    Services rendered in this Matter Category related to Tax Issues associated with the Debtors' restructuring, as described more below.

    **(e)    Tax Issues [Task Code B240]**

    Total Fees:    $51,583.00
    Total Hours:    96.5

    **Document Retention Business Operations [Task Code B210]**

    Total Fees:    $4,576.00
    Total Hours:    8.8

41.    This Matter Category includes time spent by T&K attorneys providing services to finalize a structure and seeking a private letter ruling from the IRS that allowed the Debtors to reorganize under Chapter 11 in a tax efficient manner with a partial basis step-up rather than in a fully taxable transaction.    T&K played a key role in evaluating the structures and tax consequences of bids for Debtors' interest in Oncor.  Specifically, T&K attorneys spent time:

    i.    analyzing the federal and state tax issues associated with various restructuring proposals and evaluating the impact on the pending IRS ruling request;

    ii.    reviewing and commenting on transaction documents, conducting tax due diligence, and preparing the tax opinion;

    iii.    participating in periodic restructuring update calls;

iv.   and analyzing federal and state tax issues relating to legal entity structure simplification and preparing related slides of the simplified structure.

T&K's national reputation, prior success in obtaining a private letter ruling in 2013 that certain restructuring by Debtors' would not trigger a potential multi-billion tax liability, and long-standing relationships with the IRS National Office and Chief Counsel's Office were key in facilitating discussions with the IRS regarding Debtors' restructuring proposals.

**Actual and Necessary Expenses Incurred by T&K**

42.     As set forth in **Exhibit F**, T&K has incurred a total of $22,853.41 in expenses on the Debtors' behalf during the Fee Period.  These charges are intended to reimburse T&K's direct operating costs, which are not incorporated into the T&K hourly billing rates.  T&K charges external copying and computer research at the provider's cost without markup.  Only clients who actually use services of the types set forth in **Exhibit F** of this Final Fee Application are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

**T&K's Requested Compensation and Reimbursement Should be Allowed**

43.     As explained below, T&K respectfully submits that the services for which it seeks compensation in this Final Fee Application were, at the time provided, necessary for and beneficial to the Debtors and their estates and were provided to protect and preserve the Debtors' estates.  T&K believes that it performed the services for the Debtors economically, effectively, and efficiently, and the results obtained benefited not only the Debtors, but also the Debtors' estates and constituents.  T&K further submits the requested compensation is reasonable in light of the nature, extent, and value of the services to the Debtors, their estates, and all parties-in-interest.  Accordingly, T&K respectfully submits that approval of the requested compensation is warranted and should be approved.

**A.     Reasonable and Necessary Fees Incurred in Providing Services to the Debtors**

44.     Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).   Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—

(a)    the time spent on such services;

(b)    the rates charged for such services;

(c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(e)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

45.    As analyzed below, T&K submits that the elements governing awards of compensation justify the allowance requested.

### a.  The Time and Labor Required

46.    During the Fee Period, a total of 5747.3 recorded hours (286.4 hours during the Final Interim Period) have been expended by T&K's partners, associates, and paraprofessionals in providing the requested professionals services.  T&K has made every effort to coordinate its efforts with those of the Debtors' bankruptcy counsel so as to avoid any duplication of efforts. The number of hours spent by T&K is commensurate with the defined tasks T&K has performed on the matters described  herein.

### b.  The Rates Charged for Such Services

47.    During the Fee Period, T&K's hourly billing rates for attorneys ranged from $330 to $995.  The hourly rates and corresponding rate structure utilized by T&K in these Chapter 11 Cases are equivalent to the hourly rates and corresponding rate structure used by T&K for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.  T&K strives to be efficient in the staffing of matters.  These rates and the rate structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in these chapter 11 cases.

48.     Moreover, T&K's hourly rates are set at a level designed to compensate T&K fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

### c.   The Necessity of the Services and the Benefit of the Estate

49.     As detailed above, the services T&K provided to the Debtors have conferred substantial benefit on the Debtors' estates.  T&K services to the Debtors have also served the desired goal of allowing for continuity of service in these non-bankruptcy matters.  In providing these essential non-bankruptcy services, T&K has allowed the Debtors' bankruptcy counsel to focus on issues more closely related to the reorganization of the Debtors' estates.

### d.   The Complexity, Importance Nature of, and the Time Spent on Tasks

50.     T&K represents and can demonstrate to this Court that the services were performed in a reasonable amount of time, given the complexity of issues involved and the many and varied legal issues facing the Debtors.  T&K's detailed and thorough time records demonstrate that the time expended on various tasks was necessary and appropriate to the vigorous representation of the Debtors.  From the earliest stages of T&K's involvement, attempts were made to limit the hours worked and to avoid duplication of effort and other unnecessary costs.  On occasion, T&K attorneys provided services on the Debtors' behalf under severe time constraints.  Moreover, during the Fee Period, T&K attorneys were required to perform services for the Debtors to the preclusion of other firm matters and clients.

### e.   The Experience, Reputation and Ability of the Attorneys Providing Services

51.     T&K's services have been provided in a highly efficient manner by attorneys who have achieved a high degree of expertise in the tax field.  The attorneys in T&K's tax department frequently receive recognition for their skills and achievements.  T&K's highly professional and expert group of attorneys has ensured that the representation of the Debtors has progressed in an efficient and expeditious manner.

52.     Additionally, due to the fact and circumstances of these Chapter 11 Cases, attorneys and paraprofessionals from T&K's Restructuring Group were involved in T&K's representation of the Debtors.  T&K has a prominent practice in this area and enjoys a national and international reputation for its expertise.  Overall, T&K brings to these Chapter 11 Cases a

particularly high level of skill and knowledge, which inured benefit to the Debtors and their estates.

### f.   Customary Compensation

53.     T&K relies on this Court's experience and knowledge with respect to the compensation awards in similar cases.  Given that frame of reference, T&K submits that, in light of the circumstances of this Case and the substantial benefit derived from T&K's assistance, the requested compensation is fair and reasonable.

54.     Based on the Section 330 factors, the results that T&K has achieved to date more than justify the allowance in full of T&K's compensation and reimbursement request.

**B.     Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors.**

55.     T&K requests reimbursement of a total of $22,853.41 for reasonable and necessary out-of-pocket expenses incurred on the Debtors' behalf during the Fee Period, as itemized on **Exhibit F.**

56.     T&K's normal billing rates do not take expenses into consideration.  Rather, T&K bills each expense to the client.  T&K does not include the amortization of the costs of any investment, equipment, or capital outlay in the charges for its services.

57.     Any services billed by a third-party vendor, with the exception of certain computerized research charges, are charged to the Debtors in the precise amount billed to and paid by the T&K.  Like many large firms, T&K has negotiated a special arrangement with computerized research companies under which T&K pays a flat rate monthly fee for computerized research services.  Consistent with its general policy of billing out-of-pocket expenses to clients for which the use of such services is required, T&K separately charges each client for computerized research.  To account for such charges while passing through T&K's cost savings resulting from its special arrangements, T&K charges those clients for whom such services are required at a reduced rate that is less than the rate charged by the computerized research companies to the general public for such services.  These charges are intended to cover T&K's direct costs for computerized research.

58.     T&K has made reasonable efforts to minimize its disbursements in these Chapter 11 Cases.  Each of the expenses incurred by T&K in providing professional services to the Debtor was necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors and their estates.

**Conclusion**

59.    In sum, T&K respectfully submits that the professional services provided by T&K on the Debtors' behalf and their estates during these Chapter 11 Cases were necessary and appropriate given the complexity of these chapter 11 cases, the time expended by T&K, the nature and extent of T&K's services provided, the value of T&K's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code.    Accordingly, T&K respectfully submits that approval of the compensation sought herein is warranted and should be approved.

**Notice**

60.    T&K shall provide notice of this Final Fee Application to:  (a) the U.S. Trustee; (b) counsel to the agent of the EFIH First Lien DIP Facility; (c) counsel to the agent of the TCEH DIP Facility; (d) counsel to the Committee; (e) the Fee Committee (collectively, the "Notice Parties").

61.    Pursuant to the Interim Compensation Order and the Fee Committee Order, (a) any Notice Party (other than the Fee Committee) that wishes to object to the Final Fee Application must file its objection with the Court, with a copy to Chambers and serve it on T&K and the Notice Parties so that it is **actually received** on or before **May 15, 2018 at 4:00 p.m. (Eastern Daylight Time)** and (b) any member of the Fee Committee that wishes to object to the Final Fee Application must comply with the procedures set forth in the Fee Committee Order and if such member wishes to object to the Final Fee Application after complying with such procedures, such member must file its objection with this Court, with a copy to Chambers and serve it on T&K and the Notice Parties.

**No Prior Request**

62.    No previous application for the relief sought herein has been made to this or any other Court.

**Prayer**

**WHEREFORE**, T&K respectfully requests that the Court enter an order (a) awarding T&K compensation for professional and paraprofessional services provided during the Fee Period in the total amount of $3,304,215.55, less the Fee Committee Adjustment of $58,255.64, and reimbursement of actual, reasonable and necessary expenses incurred in the Fee Period in the total amount of $22,853.41, for a total of $3,268,181.40; (b) authorizing and directing the Debtors to remit payment to T&K for such fees and expenses as may be outstanding in the

amount of $105,907.15; (c) awarding all fees and expenses previously requested and awarded to T&K on a final basis in accordance with 11 U.S.C. § 330; and (d) granting such other relief as this Court may deem proper, both at law and in equity.

Dated: April 23, 2018
      Dallas, Texas

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By:    */s/ Mary A. McNulty*         
Mary A. McNulty
Texas Bar No. 13839680
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:  214/969-1700
Facsimile: 214/969-1751
Mary.McNulty@tklaw.com