## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 12926** |

### EFH PLAN ADMINISTRATOR BOARD'S
### OBJECTION TO APPLICATION OF CERTAIN ASBESTOS
### CREDITORS PURSUANT TO 11 U.S.C. § 503(b) FOR ALLOWANCE OF
### ADMINISTRATIVE CLAIM FOR REIMBURSEMENT OF EXPENSES INCURRED
### IN MAKING A SUBSTANTIAL CONTRIBUTION IN THESE CHAPTER 11 CASES

The EFH Plan Administrator Board (the "PAB"), on behalf of the former EFH Debtors

and EFIH Debtors (collectively, the "Debtors") files this objection to the *Application of Certain*

*Asbestos Creditors Pursuant to 11 U.S.C. § 503(b) for Allowance of Administrative Claim for*

*Reimbursement of Expenses Incurred in Making a Substantial Contribution in these Chapter 11*

*Cases* [D.I. 12926] (the "Application") and respectfully submits as follows:[2]

### INTRODUCTION

1.     The Application cannot be squared with section 503(b) of the Bankruptcy Code

and settled law because the purported applicants cannot show they provided an actual and

tangible benefit to the Debtors' estates. Indeed, if granted, the Application would merely shift to

the Debtors' unsecured creditors the costs of a multi-year collateral attack on a bar date order

---

[1] The above-captioned debtors and debtors in possession emerged from chapter 11 on March 9, 2018. *See Notice of Entry of EFH Confirmation Order and Occurrence of EFH Effective Date* [D.I. 12801].

[2] Contemporaneously herewith, the PAB files the *EFH Plan Administrator Board's Objection to Motion of Certain Asbestos Creditors for Order Requiring Reserve for Administrative Expenses Claim*. *See* D.I. 12927.

from which no party took an appeal. That is a bridge too far, and the Application should be denied.

2.    As an initial matter, section 503(b)(3)(D) of the Bankruptcy Code permits reimbursement only for "the actual, necessary expenses . . . incurred by . . . a creditor . . . in making a substantial contribution." Based on the Application, it appears three asbestos plaintiffs' firms—Kazan, McClain, Satterley & Greenwood; Early, Lucarelli, Sweeney & Meisenkothen; and Gori Julian & Associates, P.C.—incurred the fees and expenses at issue. None of these firms is a "creditor" of these estates; instead, they represent certain purported asbestos claimants in these cases. The PAB reserves argument on this potential gating issue, pending the applicants making a record that actual creditors of these estates incurred the costs at issue.[3] *See In re Two Plus Two, Inc.*, No. 4-86-1967, 1988 WL 120646, at *5 (Bankr. D. Minn. Nov. 7, 1988) ("An entity which is not in fact a creditor ought not to be taking administrative priority over unsecured creditors.").

3.    Assuming *arguendo* that actual asbestos claimants incurred the costs for which reimbursement is sought, those claimants cannot satisfy the *Lebron* test. Although the applicants' attorneys have been active participants, the Application merely describes routine activities of being a creditor in a large and litigious case, such as participating in discovery and negotiating scheduling issues. That is insufficient. Section 503(b)(3)(D) of the Bankruptcy Code "unequivocally mandates results," and the applicants concede that their participation has not produced results. *See In re RS Legacy Corp.*, No. 15-10197 (BLS), 2016 WL 1084400, at *6 (Bankr. D. Del. Mar. 17, 2016). Instead, the applicants base their request on a contingency that their most recent appeal may succeed. But the prospect of potentially providing benefits to

---

[3] Based on the discovery provided to date, the applicants cannot make that record.

asbestos creditors following an ongoing appellate process cannot satisfy *Lebron*. The test is backward-looking, examining the "actual benefits provided" by the applicant. *See id.*

4.　　The applicants try to bypass the *Lebron* test with two alternative arguments. Neither has merit. First, the applicants claim they served a gap-filling role that "should have been played by an estate representative." Application at 14. That premise fails because at least two estate fiduciaries ***did*** serve that role. The EFH Committee—which includes two of the applicants and whose fees were paid from the estates—was statutorily charged with maximizing value for EFH and EFIH unsecured creditors. Further, there is an extensive record—laid out in multiple evidentiary hearings—that the Debtors negotiated to reinstate thousands of timely-preserved asbestos claims and then diligently preserved that reinstatement construct through multiple merger agreements and plans of reorganization. The applicants' "gap-filling" argument also fails because this Court has repeatedly rejected the applicants' (or their attorneys') requests for recognition as formal representatives of other creditors. *See* D.I. 5265 (denying motion to appoint future claims representative); D.I. 7383 (denying motion to certify class proof of claim).

5.　　Second, the applicants argue their fees are comparatively small to the fees paid to other professionals. But the test is ***not*** one of proportionality, and it is legally irrelevant that these large and complex estates incurred sizeable professional fees. Instead, the test is whether the applicants can prove they provided a direct and tangible benefit to these estates. These applicants cannot make that showing, and because they cannot, the Application must be denied.[4]

---

[4] Even if the applicants satisfied the *Lebron* test, the Application is subject to Fee Committee review. *See Letter From Judge Sontchi To Gitlin & Company LLC* [D.I. 13088]. As a result, the PAB does not now—but reserves the right to—challenge the reasonableness of any fees and expenses.

## ARGUMENT[5]

**I.    The Purported Applicants Cannot Satisfy the *Lebron* Test.**

6.      The applicants bear the burden of proving—by a preponderance of the evidence—that they made a substantial contribution this estate. *In re RS Legacy Corp.*, 2016 WL 1084400, at *3-4; *In re Tropicana Entm't LLC*, 498 F. App'x 150, 152 (3d Cir. 2012) ("The party seeking reimbursement bears the burden of proving to the Bankruptcy Court that it is so entitled.").   To carry that burden, the applicants must provide "something more than self-serving statements regarding one's involvement in a case." *In re Buckhead Am. Corp.*, 161 B.R. 11, 15 (Bankr. D. Del. 1993) (quotations omitted).

7.      "[C]ompensation under section 503 is reserved for those rare and extraordinary circumstances when the creditor's involvement truly enhances the administration of the estate." *In re RS Legacy Corp.*, 2016 WL 1084400, at *3-4 (quoting *In re Dana Corp.,* 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008).   "[A] well-developed body of case law teaches that the sort of contribution that reaches the substantial threshold is exceedingly narrow."   *Id.   See also In re KiOR, Inc.*, 567 B.R. 451, 458 (D. Del. 2017) ("section 503(b)(3) is to be narrowly construed so that administrative expenses will be held to a minimum").

---

[5] The PAB reserves argument, pending the applicants' evidentiary presentation, about whether the Application is properly asserted under section 503(b).  *See In re RS Legacy Corp*, 2016 WL 1084400, at *3 ("Allowance of attorneys' fees under section 503(b)(4) is therefore contingent upon establishing a claim under section 503(b)(3)(D)."); *Matter of Columbia Gas Sys. Inc.*, 224 B.R. 540, 553 (Bankr. D. Del. 1998), *aff'd sub nom. In re Columbia Gas Sys.*, Nos. Civ. A 98-124, 91-803, 2000 WL 1456298 (D. Del. Sept. 20, 2000) (finding plaintiffs' counsel's application "defective on its face" because "[t]here is no section of the Code that allows a professional, independent of an application pursuant to section 503(b)(3), to seek reasonable compensation for services rendered in a Chapter 11 case"); *In re Am. Preferred Prescription, Inc.*, 194 B.R. 721, 724 (Bankr. E.D.N.Y. 1996) ("The Marcus Firm, as Hadiya's former counsel, cannot simply apply for legal fees and reimbursement of legal-related expenses independent of a determination that Hadiya's own expenses are allowable.").

8.    Here, the applicants cannot show their efforts provided an "actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Financial Inc.*, 27 F.3d 937, 943-44 (3d Cir. 1994) (citation omitted) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)).  The Application lists a series of activities that case law squarely confirms are not reimbursable under section 503(b):

> extensive and active participation alone does not qualify; services that are duplicative of other estate professionals are insufficient; activities that primarily further the movant's self-interest do not suffice; and expected or routine activities in a chapter 11 case— such as encouraging negotiation among parties, commenting and participating in successful plan negotiations, and reviewing documents—generally do not constitute a substantial contribution.

*In re RS Legacy Corp.*, 2016 WL 1084400, at *4 (citations omitted).

9.    *First*, although the attorneys at issue have been active participants, "extensive participation in a case, without more, is insufficient to compel compensation." *See In re Summit Metals, Inc.*, 379 B.R. 40, 53 (Bankr. D. Del. 2007) (quoting *In re Gurley*, 235 B.R. 626, 636 (Bankr. W.D. Tenn. 1999)).  *See also In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 689-90 (S.D. Cal. 1988) ("Compensation cannot be freely given to all creditors who take an active role in bankruptcy proceedings. . . . While § 503 was enacted to encourage meaningful creditor participation, it should not become a vehicle for reimbursing every creditor who elects to hire an attorney."); *In re Ace Fin. Co.*, 69 B.R. 827, 830 (Bankr. N.D. Ohio 1987) ("It is unquestioned that Huntington has been an active litigant in this case; however, extensive activity, alone, is not sufficient to come within the compensable realm of § 503(b)(3) and (4).").

10.    *Second*, the applicants' participation was largely duplicative of services rendered by estate fiduciaries (including the EFH Committee), the Office of the United States Trustee (the "U.S. Trustee"), and an active creditor body. *See, e.g., In re Mirant Corp.*, 354 B.R. 113, 136-37

(Bankr. W.D. Tex. 2006) (denying fees to ad hoc committee for work which largely duplicated the official committee's work); *In re Michigan Gen. Corp.*, 102 B.R. 554, 558 (Bankr. N.D. Tex. 1988) (denying indenture trustee's request for reimbursement of accounting expenses that duplicated services provided to debtor).

11.    ***Third***, the Application lists a series of activities that reflect routine participation in a chapter 11 case. *See* Application at 7. It cannot be that a creditor makes a substantial contribution—and jumps the priority scheme—by objecting to disclosure statements, participating in discovery, filing objections, participating in hearings, and negotiating scheduling issues. *See, e.g.*, *Matter of Columbia Gas Sys., Inc.*, 224 B.R. at 548 (holding that expected or routine activities in a chapter 11 case do not constitute substantial contribution); *In re American Plumb. & Mech., Inc.*, 327 B.R. 273, 291 (Bankr. W.D. Tex. 2005) (concluding that negotiation is an expected activity in a chapter 11 case).

12.    ***Fourth***, just as routine participation is not compensable, routine participation that failed to result in tangible and actual benefits to the estate is certainly not compensable. Although the PAB acknowledges the applicants' more recent desire to build a record for appellate purposes, much of the applicants' participation amounted to a collateral attack on the order that set the asbestos bar date and approved the notice program (that no party appealed). The law counsels against rewarding those tactics. *See In re Summit Metals, Inc.*, 379 B.R. at 50 (stating a claimant's "activities must 'facilitate progress in the case, rather than . . . interrupt [it]'") (quoting *In re Gurley*, 235 B.R. at 636); *Matter of Columbia Gas Sys., Inc.*, 224 B.R. at 552 ("Exxon's activities were not of the type that if absent, progress towards reorganization . . . would have been substantially diminished.").

13.     *Fifth*, section 503(b)(3)(D) of the Bankruptcy Code "unequivocally mandates results," *In re RS Legacy Corp.*, 2016 WL 1084400, at *3-4, and the applicants' litigious path has not benefited the estates.  Indeed, the Debtors incurred significant costs to successfully oppose, among other things, the 11th-hour effort to certify a class proof of claim, motion to dismiss the chapter 11 cases of the LSGT Debtors (despite the applicants' attorneys openly conceding they wanted a section 524(g) trust for the same debtors), and repeated confirmation objections.[6]

14.     Simply, the estates have *not* grown larger because of the applicants.  The Application does not—and could not—highlight activities that are or should be recognized as substantial contributions.  *See Matter of Columbia Gas Sys., Inc.*, 224 B.R. at 548 (describing the "unusual" or "extraordinary" actions that "typically provide the basis for an approved substantial application," such as a creditor compromising its own claim and creating a plan to pay creditors more than a debtor-proposed plan, dramatically improving treatment of creditors under a plan, obtaining interest payments for creditors, or enhancing the disclosure of information available to an impaired class).[7]

15.     The applicants concede they have not produced results to date.  Instead, they base their request on a contingency that their latest appeal might succeed.  That is insufficient under

---

[6] Most recently, the applicants unsuccessfully opposed the PAB's participation in the applicants' pending District Court appeal of this Court's February 2018 confirmation order.

[7] Even if the applicants had been successful, that too could be insufficient. *See In re RS Legacy Corp.*, 2016 WL 1084400, at *4 (denying substantial contribution claim where "the sum of the Movant's efforts resulted in the Parties agreeing to minor revisions to the Settlement," and revisions that "only involved a subset of the Debtors' unsecured creditors did not foster and enhance the progress of this case"); *In re Summit Metals, Inc.*, 379 B.R. at 65-66 (denying substantial contribution claim where applicant assisted creditors' committee in prosecuting litigation that resulted in a $40 million judgment for the benefit of the estate); *In re F.E. Frederick Enterprises, Inc.*, 146 B.R. 360, 363 (Bankr. W.D. Pa. 1992) (denying substantial contribution claim of unsecured creditor who negotiated plan provision requiring payments to start 20 months earlier than debtors' proposal).

the backward-looking analysis required in this Court. *See In re RS Legacy Corp.*, 2016 WL 1084400, at *3-4 ("Unlike section 330(a) where courts consider whether the services were reasonably likely to result in benefit to the estate at the time they were performed, section 503(b)(3)(D) requires a *post hoc* analysis of the actual benefit conferred to the case."); *In re KiOR, Inc.*, 567 B.R. at 458 ("The substantial contribution test is applied in hindsight, and scrutinizes the actual benefit to the case.").

## II.    The Applicants' Remaining Arguments Are Unavailing.

16.    The applicants' argument that they acted as a de facto committee is inherently flawed. *First*, the EFH Committee, which included two of the applicants, was charged with acting as a fiduciary for all of the Debtors' unsecured creditors, including the applicants. *Second*, this Court has repeatedly rejected requests by asbestos creditors—including the applicants and/or their counsel—for recognition as formal representatives of other creditors. *See* D.I. 5265 (denying motion to appoint future claims representative); D.I. 7383 (denying motion to certify class proof of claim). *Third*, even if the applicants had served as a de facto committee, that too is insufficient. In *In re KiOR, Inc.*, Judge Sleet affirmed the denial of a substantial contribution claim and rejected an applicant's argument "that the Bankruptcy Court failed to consider the lack of a creditors' committee in the case." 567 B.R. at 462–63. Judge Sleet found the argument "irrelevant because section 503(b)(3)(D) contains no language suggesting any difference in its application based on whether a committee has been appointed." *Id.* at 462.

17.    The two cases cited by the applicants are distinguishable. The *In re Bayou Group, LLC* case concerned the application for *pre*-bankruptcy fees incurred by members of an ad hoc group that organized to address the fall-out from a collapsing Ponzi scheme. 431 B.R. 549, 553 (S.D.N.Y. 2010). That group successfully (a) secured an order appointing a receiver, who then filed a chapter 11 case and commenced litigation that avoided $81 million in pre-

petition transfers and (b) helped arrange debtor-in-possession financing. *Id.* at 564-66. In contrast, and as explained above, the purported applicants did not advance these cases or increase the size of the estate.

18. Likewise, the concerns that animated the court's substantial contribution award in *In re General Electrodynamics Corp.* are not present here. For one, there was no creditors' committee in that case, and the court said it had "been concerned throughout" that the debtor "lacked any great enthusiasm for the strictures imposed on its operations by chapter 11." 368 B.R. 543, 554-56 & n.27 (Bankr. N.D. Tex. 2007). Here, there is an official committee for the same estates that the applicants purport to represent, ***and*** two of the applicants are on that committee.[8] Also, the *General Electrodynamics* court acknowledged that *but for* the creditor's activity, the court was "unlikely [to] have identified the Plan's infeasibility," which caused an additional capital infusion. 368 B.R. at 556. In contrast, this Court has confirmed multiple plans over the applicants' objections.[9]

19. Finally, the applicants appeal to proportionality and argue they seek comparatively small amounts. As case law confirms, it matters not that the applicants participated in a large and complex case. *See In re KiOR, Inc.*, 567 B.R. at 464 (affirming denial of substantial contribution claim and stating "amount of compensation received by the Debtor's professionals has no bearing on whether [substantial contribution applicant] carried its burden of

---

[8] There is no credible argument that the conduct of these Debtors was not adequately scrutinized and tested by this Court, the U.S. Trustee, and multiple (and active) creditor constituencies.

[9] Only one court has cited *General Electrodynamics* regarding its substantial contribution analysis. That citation came in a footnote, and for the unremarkable observation that "In most of the published cases, someone who is not a case fiduciary seeks a substantial contribution award for engaging in activities that benefited the case." *See In re FPMC Austin Realty Partners, LP*, 573 B.R. 679, 691 (Bankr. W.D. Tex. 2017).

RLF1 19332031v.1

proof under 503(b)").  Instead, the test is whether the applicants have demonstrated that they made a direct and tangible benefit to the Debtors' estates.  These applicants cannot make that showing and because they cannot, the Application must be denied.

## **CONCLUSION**

20.    For the reasons set forth above, the Application should be denied.

*[Remainder of page intentionally left blank.]*

10

Dated: May 14, 2018
      Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:       collins@rlf.com
            defranceschi@rlf.com
            madron@rlf.com

   -and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:       edward.sassower@kirkland.com
            stephen.hessler@kirkland.com
            brian.schartz@kirkland.com
            aparna.yenamandra@kirkland.com

   -and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:       james.sprayregen@kirkland.com
            marc.kieselstein@kirkland.com
            chad.husnick@kirkland.com
            steven.serajeddini@kirkland.com

*Co-Counsel to the EFH Plan Administrator Board*