## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 12927** |

### EFH PLAN ADMINISTRATOR BOARD'S OBJECTION TO
### MOTION OF CERTAIN ASBESTOS CREDITORS FOR ORDER
### REQUIRING RESERVE FOR ADMINISTRATIVE EXPENSES CLAIM

The EFH Plan Administrator Board, on behalf of the entities formerly known as the EFH

Debtors and EFIH Debtors in the above-captioned cases (the "Debtors"),[2] hereby files this

objection (the "Objection") to the *Motion of Certain Asbestos Creditors for Order Requiring*

*Reserve for Administrative Expenses Claim* [D.I. 12927] (the "Motion").[3]  In support of this

Objection, the EFH Plan Administrator Board respectfully submits as follows:[4]

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]  The Debtors emerged from chapter 11 on March 9, 2018 as the Reorganized EFH/EFIH Debtors.  *See Notice of Entry of EFH Confirmation Order and Occurrence of EFH Effective Date* [D.I. 12801].

[3]  In connection with the Motion, the Applicants (as defined herein) contemporaneously filed the *Application of Certain Asbestos Creditors Pursuant to 11 U.S.C. § 503(b) for Allowance of Administrative Claim for Reimbursement of Expenses Incurred in Making a Substantial Contribution in These Chapter 11 Cases* [D.I. 12926], filed April 9, 2018 (the "Application"), seeking entry of an order granting the Applicants an allowed administrative claim for legal fees and expenses incurred in connection with the Debtors' Chapter 11 Cases under section 503(b) of the Bankruptcy Code.

Contemporaneously herewith, the EFH Plan Administrator Board filed the *EFH Plan Administrator Board's Objection to Application of Certain Asbestos Creditors Pursuant to 11 U.S.C. § 503(b) for Allowance of Administrative Claim for Reimbursement of Expenses Incurred in*
(Continued...)

## INTRODUCTION

1.     This Court should deny the motion of Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, David Heinzmann, Harold Bissell, Kurt Carlson, Robert Albini, individually and as successor-in-interest to the Estate of Gino Albini, Denis Bergschneider, and Charlotte and Curtis Liberda (together, the "Applicants") seeking entry of an order requiring the EFH Plan Administrator Board to establish a reserve of $4,000,000.00 (the "Reserve") for payment of legal fees and expenses the Applicants allege they have incurred—or will potentially incur—in making what the Applicants assert is a "substantial contribution" in the Debtors' Chapter 11 Cases.

2.     *First*, whether or not the Court grants the relief in the Application, the Applicants are simply not entitled to a Reserve under applicable law.  They assert no law that requires the Reserve be established, and no such law exists. *Second*, at its core, the Motion argues that because the EFH/EFIH Plan states that all Allowed Administrative Claims will be paid in full, in Cash, the EFH Plan Administrator Board must establish the Reserve to ensure that the Applicants will be paid in full, in Cash, in the event the relief in the Application is granted and becomes a Final Order.[5]  In other words, the Applicants are functionally arguing that in order for the EFH/EFIH Plan to be feasible under section 1129(a)(11) of the Bankruptcy Code, the EFH

---

*Making a Substantial Contribution in these Chapter 11 Cases* (the "Substantial Contribution Objection"), objecting to the relief requested in the Application.

[4] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to them in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12653] (the "EFH/EFIH Plan").

[5] Article II.A., EFH/EFIH Plan.

RLF1 19332046v.1

Plan Administrator Board must establish the Reserve (and, presumably a reserve for all other potential Allowed Administrative Claims).

3.      Indeed, at least three other parties raised similar reserve objections in connection with their own Claims—the EFIH First Lien Notes Trustee (in connection with the EFIH First Lien Post-Indemnification Reserve), the EFIH Second Lien Notes Trustee (in connection with the EFIH Second Lien Post-Indemnification Reserve), and NEE, in connection with the NEE Plan Reserve.  To this end, the EFH Confirmation Order specifically finds that "[t]he Plan satisfies section 1129(a)(11) of the Bankruptcy Code [because] the evidence supporting the Plan proffered or adduced by the Debtors at or before the EFH Confirmation Hearing. . .(d) establishes that the EFH/EFIH Debtors will have sufficient funds to meet their obligations under the Plan—**including sufficient amounts of Cash to reasonably ensure payment of, among other Allowed Claims, Allowed Administrative Claims**." (emphasis added).[6]

4.      In short, the applicable case law does not require establishment of the Reserve. Moreover, the relief requested in the Motion is, at best, untimely because it was not raised in connection with confirmation of the EFH/EFIH Plan, and, at worst, has already been adjudicated in light of the findings in the Confirmation Order and this Court's ruling at the EFH Confirmation Hearing.[7]  As a result, for the reasons asserted herein, and regardless of the Court's ruling on the Substantial Contribution Objection, the Debtors should not be obligated to establish the Reserve.

---

[6] EFH Confirmation Order, ¶ 57.

[7] See 2/26/18 Hr'g Tr. at 232:7-11 ("I don't believe that it is necessary to satisfy 1129(a)(9) for this Court to -- or for the Debtors to reserve $275 million . . .") (statements of Hon. Christopher Sontchi).

## ARGUMENT

## I. CASE LAW AND RELEVANT PRECEDENT REQUIRE THAT THE RESERVE NOT BE ESTABLISHED.

### A. Nothing in Case Law or the Bankruptcy Code Requires a Reserve.

5.    The Applicants assert no case law support for their conclusion that the Reserve is required.    Similarly, nothing in the Bankruptcy Code requires a reserve for administrative expenses.  Indeed, as demonstrated by the below sample of recent cases in the Bankruptcy Court for the District of Delaware, required payments of administrative expense claims are regularly satisfied through payment in full, in Cash, **without reserves**.  This is not a surprising result, given how unwieldy the alternative construct, in which separate reserves are required to satisfy every potential administrative claim that may become allowed at an unknown point in the future.

| Confirmation Date | Confirmation Order Document No. | Case Name | Treatment of Administrative Claims and Method of Payment (emphases added) |
|---|---|---|---|
| May 4, 2018 | 221 | *In re Remington Outdoor Company, Inc.*, No. 18-10684 (BLS) (Bankr. D. Del. Mar. 25, 2018) | "Each holder of an **Allowed General Administrative Expense**, to the extent such Allowed General Administrative Expense has not already been paid during the Chapter 11 Cases and without any further action by such holder, shall receive, **in full satisfaction of its General Administrative Expense, Cash equal to the Allowed amount of such General Administrative Expense** […] unless otherwise agreed by the holder of such General Administrative Expense and the applicable Remington Entity" |
| April 25, 2018 | 736 | *In re GST AutoLeather, Inc.*, No. 17-12100 (LSS) (Bankr. D. Del. Oct. 3, 2017) | "Unless otherwise agreed to by the holder of an **Allowed Administrative Claim** and the Debtors or the Post-Effective Date Debtors, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each holder of an Allowed Administrative Claim […] will receive **in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim** […]." |

| April 3, 2018 | 584 | *In re Charming Charlie Holdings Inc.*, No. 17-12906 (CSS) (Bankr. D. Del. Dec. 11, 2017) | "[E]xcept to the extent that a Holder of an Allowed General Administrative Claim and the applicable Debtor(s) agree to less favorable treatment with respect to such Allowed General Administrative Claim, each Holder of an Allowed General Administrative Claim will be paid the **full unpaid amount of such Allowed Administrative Claim in Cash** [...]; provided that Allowed General Administrative Claims that arise in the ordinary course of the Debtors' business during the Chapter 11 Cases shall be paid **in full in Cash** in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice." |
|---|---|---|---|
| April 2, 2018 | 357 | *In re PES Holdings, LLC*, No. 18-10122 (KG) (Bankr. D. Del. Jan. 21, 2018) | "Except to the extent that a holder of an Allowed Administrative Claim agrees to less favorable treatment, each holder of an Allowed Administrative Claim [...] will receive **in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim** [...]." |
| November 6, 2017 | 869 | *In re La Paloma, LLC*, No. 16-12700 (CSS) (Bankr. D. Del. Dec. 6, 2016) | "Except to the extent the holder of an Allowed Administrative Claim agrees to a less favorable treatment [...], each holder of an Allowed Administrative Claim against the Debtors shall receive, **in full and complete settlement and release of such Claim, Cash equal to the unpaid amount of such Allowed Administrative Claim** [...]." |
| June 13, 2017 | 1025 | *In re Essar Steel Minnesota LLC And ESML Holdings Inc.*, No. 16-11626 (BLS) (Bankr. D. Del. Jul. 8, 2016) | "[E]ach Holder of an Allowed Administrative Claim shall receive (i) **the amount of such Holder's Allowed Administrative Claim in one Cash payment**; or (ii) such other treatment as may be agreed upon in writing by the Debtors and such Holder [...]." |
| April 27, 2017 | 2143 | *In re Fresh & Easy, LLC*, No. 15-12220 (BLS) (Bankr. D. Del. Oct. 30, 2015) | "[T]he Holder of an Allowed Administrative Claim [...] will receive, in full satisfaction of such Allowed Administrative Claim: (a) **Cash equal to the unpaid portion of the Face Amount of such Allowed Administrative Claim**; or (b) such other treatment as to which such Holder and the Plan Proponents or the Liquidating Trustee, as applicable, have agreed upon in writing." |

**B.    Where the Amounts Requested to be Reserved Are Uncertain or Requested Late in the Bankruptcy Process, Courts Regularly Determine Not to Accommodate Requests for Reserves.**

6.    Even if the Application is granted, the amount of the Applicants' General Administrative Expense Claim will still be subject to Fee Committee review.[8]   In analogous scenarios, courts have denied requests to establish reserves where the ultimate validity and amount of claims has been in question. *See, e.g., Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateguay Corp.)*, 10 F.3d 944, 961 (2d Cir. 1993) (denying requests by claimants to establish a plan reserve pending appeal of order denying administrative expense priority); *In re Kreisler Group, Inc.*, 648 F.2d 86 (2d Cir. 1981) (determining that no plan reserve should be required for an asserted claim that was currently pending on appeal); *In re Johnson*, No. 14-57104, 2016 WL 8853601, at *11 (Bankr. S.D. Ohio Nov. 10, 2016) (same).   This is particularly so where a request for an administrative claim, like the Application, is filed "late" in the reorganization process.[9]  Here, the Application was filed a month after the EFH Effective Date.

**II.    THE MOTION IS AN UNTIMELY OBJECTION TO THE CONFIRMATION OF THE EFH/EFIH PLAN AND SEEKS AN IMPROPER MODIFICATION OF THE EFH/EFIH PLAN.**

7.    The Debtors filed the EFH/EFIH Plan on September 11, 2017.  As filed at that time, the EFH/EFIH Plan contained the EFIH First Lien Post-Effective Date Fee and Indemnification Reserve and the EFIH Second Lien Post-Effective Date Fee and Indemnification Reserve.  Soon after, NextEra Energy, Inc. ("NextEra") contested the EFH/EFIH Plan for its

---

[8]  *Letter from Hon. Christopher Sontchi to Gitlin & Company LLC* [D.I. 13088], filed on May 8, 2018.

[9]  *See* 2/26/18 Hr'g Tr. at 233:10-16 (emphasis added) ("Now what NextEra's not going to like is what I say next, which is the Debtors are not required to set aside a reserve specifically for their **late filed $60 million administrative expense claim.  And late may not be a technical legal term here**, but it was a week ago, and we've been around for a little while.  So, it was on the verge of confirmation.") (statements of Hon. Christopher Sontchi).

absence of a reserve provision for payment of the $275 million Termination Fee.[10]    The Applicants also filed an objection to the EFH/EFIH Plan, but it did not challenge the EFH/EFIH Plan's absence of a reserve for their administrative expense claims.  Five months then passed until the EFH Confirmation Hearing, without the Applicants once referencing a reserve.  At the EFH Confirmation Hearing, counsel to the Applicants observed a seven-hour hearing that was *centered on a reserve dispute*.[11]  And still, the Applicants did not indicate any desire for an administrative expense reserve.  Instead, as the Court openly ruled on the "late" nature of a mid-February claim for a reserve, the Applicants did not tip their hand until early April, when they filed the Motion.

8.    To the extent the Applicants desired the Reserve, or sought to incorporate the Reserve into the EFH/EFIH Plan, such relief should have been sought at any point leading up to the EFH Confirmation Hearing.  But, the Motion is brought now, in effect as a late challenge to the EFH/EFIH Plan, months after entry of the Confirmation Order.  This late request for a Reserve poses obvious challenges to the administration of the Reserve as it relates to the EFH/EFIH Plan.  Details such as which specific account would fund the Reserve—that are typically included in the terms of a confirmation order or plan of reorganization—are unclear.  This late request is therefore prejudicial to other parties in these chapter 11 cases, who are

---

[10]    *See* NextEra Objection at 2 ("[T]he Debtors may nevertheless seek to distribute their remaining cash to unsecured creditors, impermissibly shifting to NextEra the risk of collection of an administrative expense claim.  Indeed, as formulated, the Plan gives the Debtors discretion to determine the amount to reserve for General Administrative Claims (in contrast with the robust escrow protections provided for future professional fee claims).  The Plan should not go forward on this basis.").

[11]    2/26/2018 Hr'g Tr. at 27:11-15 ("So the only outstanding issue at this point is whether that reserve will remain in place in a sufficient amount to satisfy NextEra's claims if and when they are ultimately allowed, or whether it can be revisited and undercut before that occurs.") (statements of NextEra's counsel).

entitled to a clear understanding of all flows of funds prior to the consummation of the EFH Effective Date.

9.     The Motion asserts that if the EFH Plan Administrator Board distributes funds from the EFH/EFIH Cash Distribution Account prior to resolution of the Application (and without the Reserve in place), it is possible that the Applicants' General Administrative Claims would not be paid in full.[12]  To this end, the Applicants point to provisions of the Confirmation Order that reserve funds in the EFH/EFIH Cash Distribution Account for the payment of Allowed Administrative Claims of the Supporting Creditors.[13]  Said another way, even the Applicants agree that the Reserve implicates section 1129 of the Bankruptcy Code.

10.     Issues raised under section 1129 of the Bankruptcy Code are addressed at plan confirmation hearings—having not raised the issue at the EFH Confirmation Hearing (notwithstanding the fact that the vast majority of the EFH Confirmation Hearing was focused on the necessity of a reserve to satisfy an administrative claim that had not yet been Allowed by Final Order), the Applicants cannot now seek a modification of the Plan.

11.     With respect to the payment of General Administrative Claims, the EFH/EFIH Plan provides the following process for payment:

> [U]nless the Holder of an Allowed General Administrative Claim and the Debtors or the Reorganized EFH/EFIH Debtors, as applicable, agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will receive, in full satisfaction if its General Administrative Claim, **Cash equal to the amount of such Allowed General Administrative** claim either: (a) on the EFH Effective Date; (b) if the General Administrative Claim is not Allowed as of the EFH Effective Date, **60 days after the date on which an order allowing such General Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable** . . .

---

[12] *See* Motion at 6.

[13] EFH Confirmation Order ¶ 116.

EFH/EFIH Plan, Art. II.A.1 (emphases added).

12.     There is nothing in the EFH/EFIH Plan that suggests that any alternative mechanism of payment, including the funding of the Reserve, would be appropriate. Funding the Reserve would improperly modify the EFH/EFIH plan, providing inappropriate and disparate treatment to the Applicants, as compared to other similarly situated parties.[14]

## III.    THE AMOUNTS REQUESTED IN THE APPLICATION ARE SUBJECT TO ONE OR MORE PENDING OBJECTIONS.

13.     The $4,000,000.00 amount requested for the Reserve includes approximately $1,000,000.00 that the Applicants expect to incur in connection with their appeal of the EFH Confirmation Order. *See* Motion at 5. It is entirely premature to reserve sums of money that have yet to be incurred in connection with the Application. Doing so would necessitate a finding that something that has not yet happened (and may not happen) constitutes a "substantial contribution" to these chapter 11 cases.[15]

14.     Additionally, on May 8, 2018, the Court sent a letter to the Chairman of the Fee Committee requesting that the Fee Committee review time entries of professionals seeking General Administrative Expense Claims under section 503(b)(3)(d) of the Bankruptcy Code.[16] Therefore, assuming the Fee Committee complies with this request, even if the Application is approved, the size of the Applicants' General Administrative Expense Claim would not be known until the Fee Committee review is completed. Allocating $4,000,000.00 in estate funds to

---

[14] *See In re Health Diagnostic*, 551 B.R. 218, 234 (Bankr. E.D. Va. 2016) ("It is the intent of the Debtors . . . that the terms of the Court's Protocol Order continue to govern the rights of the Debtors . . . after Plan confirmation. No modification to the [Plan] is required by § 1129 of the [Code] to address [creditor]'s concern. The [Plan could have implemented alternative arrangements, but it did not.").

[15] *See Lebron v. Mechem Financial Inc.*, 27 F.3d 937 (3d Cir. 1994).

[16] *Letter from Hon. Christopher Sontchi to Gitlin & Company LLC* [D.I. 13088], filed on May 8, 2018.

the Reserve, prior to the initiation of *any* Fee Committee review is premature and unnecessarily restricts estate resources.[17]

## CONCLUSION

15.     The terms of the EFH/EFIH Plan and EFH Confirmation Order, along with the post-EFH Effective Date process for payment of General Administrative Claims, preclude the establishment of the Reserve.  Accordingly, this Court should deny the Motion.

*[Remainder of page intentionally left blank.]*

---

[17] The Reserve is particularly unnecessary in light of the fact that several hundred million dollars (in the aggregate) are currently reserved in the EFH/EFIH Cash Distribution Account for EFH/EFIH Plan distributions.  Therefore, among other things, for the $4,000,000 requested in the Reserve *not* to be paid in full, nearly all of the already-reserved funds in the EFH/EFIH Cash Distribution Account would need to be expended through EFH/EFIH Plan distributions.  This is unlikely, particularly in light of the EFH Confirmation Order's finding that the EFH/EFIH Debtors would have sufficient amounts of Cash to reasonably ensure payment of Allowed Administrative Claims.  EFH Confirmation Order ¶ 57.

Dated: May 14, 2018
      Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
        defranceschi@rlf.com
        madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
        stephen.hessler@kirkland.com
        brian.schartz@kirkland.com
        aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
        marc.kieselstein@kirkland.com
        chad.husnick@kirkland.com
        steven.serajeddini@kirkland.com

*Co-Counsel to the EFH Plan Administrator Board*