**Fried, Frank, Harris, Shriver & Jacobson LLP**

**FRIED FRANK**

One New York Plaza
New York, New York 10004-1980
Tel: +1.212.859.8000
Fax: +1.212.859.4000
www.friedfrank.com

Direct Line: (212) 859-8019
Fax: (212) 859-4000
Brad.Eric.Scheler@friedfrank.com

May 15, 2018

**VIA ECF**

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge
United States Bankruptcy Court
District of Delaware
824 North Market Street, 5th Floor
Wilmington, DE 19801

Re: *In re Energy Future Holdings Corp.*, et al. (the "Debtors"), Case No. 14-10979 (CSS)

Dear Judge Sontchi:

We submit this letter on behalf of Fidelity Management & Research Company (together with affiliates, "Fidelity") with respect to the letter dated May 8, 2018 from your Honor to Mr. Richard Gitlin, chairman of the Fee Committee [D.I. 13088] (the "May 8 Letter"). In the May 8 Letter, with respect to all applications of professionals seeking compensation under section 503(b)(3)(D) of the Bankruptcy Code, your Honor requested that the Fee Committee review the time entries to determine whether each task provided a substantial contribution to the Debtors' estates.

Fidelity and Fried Frank have read again with care the record in support of, and the express terms of, your Honor's *Order Allowing Administrative Expense Claim for Fidelity Management & Research Company's Substantial Contribution Pursuant to Sections 503(B)(3)(D) and 503(B)(4) of the Bankruptcy Code* [D.I. 11050] (the "Fidelity Fee Order").[1] The Fidelity Fee Order was entered on March 24, 2017 and is a final order of the Court. The record and the express terms of the Fidelity Fee Order make clear that, with respect to the substantial contribution made by Fidelity to the Debtors' chapter 11 cases and the dollar amount of compensation authorized and approved by your Honor (up to $20 million), there is neither

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Fidelity Fee Order.

Fried, Frank, Harris, Shriver & Jacobson LLP

need nor reason for further efforts and undertakings by Fidelity or otherwise. We write out of an abundance of caution to confirm that the May 8 Letter and the directive by your Honor to the Fee Committee therein do not apply to the Fidelity Fee Requests or the 14-month old and final Fidelity Fee Order.

As your Honor will recall, the Fidelity Fee Order was advanced by and entered at the behest of the Debtors and was based on an extensive factual record contained in the following:

(A) *Motion Of Energy Future Holdings Corporation For Allowance Of An Administrative Expense Claim For Fidelity Management & Research Company's Substantial Contribution Pursuant To Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code* [D.I. 10948] (the "Fee Motion");

(B) *Declaration Of Anthony R. Horton* (the Debtors' Chief Financial Officer, Executive Vice President, and Treasurer) *In Support Of The Motion Of Energy Future Holdings Corporation For Allowance Of An Administrative Expense Claim For Fidelity Management & Research Company's Substantial Contribution Pursuant To Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code* [D.I. 11023] (the "Horton Declaration"); and

(C) *Declaration of Bryan M. Stephany, Esq.* (the Debtors' counsel) *in Support of Debtors Motion of Energy Future Holdings Corporation for Allowance of an Administrative Expense Claim for Fidelity Management & Research Company's Substantial Contribution Pursuant to Sections 503(b)(3)(d) and 503(b)(4) of the Bankruptcy Code* [D.I. 10949] (the "Stephany Declaration").

As your Honor will also recall, at the behest of the Debtors and pursuant to the Fidelity Fee Order, your Honor "allow[ed] an administrative expense claim in favor of Fidelity against EFH Corp., pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, in the aggregate amount of up to $20 million . . . for unpaid reasonable and documented fees, including professional and other advisory fees and expenses, incurred by Fidelity in connection with the Debtors' chapter 11 cases through the effective date of EFH Corp.'s plan of reorganization . . ." Fidelity Fee Order, ¶2. Further, having authorized and approved a claim in the amount of up to $20 million pursuant to the Fidelity Fee Order, the Fee Committee's review would be limited to determining the reasonableness of the fees. Fidelity Fee Order, ¶4.

For the ease of reference of your Honor, a copy of the Fidelity Fee Order is attached hereto as Exhibit A.

For the further ease of reference of your Honor, attached hereto as Exhibit B is a detailed summary of the record upon which this Court entered the Fidelity Fee Order.

By reason of the terms of the Fidelity Fee Order and the record upon which the Court relied in entering the Fidelity Fee Order, Fidelity and we believe that the May 8 Letter and the directive to the Fee Committee therein are not applicable to Fidelity.

Fried, Frank, Harris, Shriver & Jacobson LLP

We are available should the Court have any questions.

Very truly yours,

/s/ *Brad Eric Scheler*
Brad Eric Scheler

Cc:  Mr. Richard Gitlin, Gitlin & Company LLC
Katherine Stadler, Esq., Godfrey & Kahn, S.C.
Marshall S. Huebner, Esq., Davis Polk & Wardwell LLP
Michael J. Joyce, Esq., O'Kelly Ernst & Joyce, LLC

16509205

# **Exhibit A**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## ORDER ALLOWING ADMINISTRATIVE EXPENSE CLAIM FOR FIDELITY MANAGEMENT & RESEARCH COMPANY'S SUBSTANTIAL CONTRIBUTION PURSUANT TO SECTIONS 503(B)(3)(D) AND 503(B)(4) OF THE BANKRUPTCY CODE

Upon the motion (the "Motion") of EFH Corp. for entry of an order (this "Order") allowing an administrative expense expense claim against EFH Corp., pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, in favor of certain funds and accounts advised or sub-advised by Fidelity Management & Research Company or its affiliates (collectively, "Fidelity") on account of Fidelity's substantial contributions to the Debtors' restructuring efforts;[2] and the Court having found that: the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that the Motion was sufficient to afford reasonable notice of the material provisions of the Motion and opportunity for a hearing; and the Court having found that good and sufficient cause having been shown; and after due deliberation and sufficient cause appearing therefor,

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as set forth herein.

2. The Court hereby allows an administrative expense claim in favor of Fidelity against EFH Corp., pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, in the aggregate amount of up to $20 million (the "Substantial Contribution Claim") for unpaid reasonable and documented fees and expenses, including professional and other advisory fees and expenses, incurred by Fidelity in connection with the Debtors' chapter 11 cases through the effective date of EFH Corp.'s plan of reorganization ("Fidelity Fees and Expenses"), which shall become payable by EFH Corp. after the effective date of the Plan or any other plan of reorganization of EFH Corp. (the "Applicable Effective Date") and only in accordance with the procedures set forth in this Order.

3. The Substantial Contribution Claim shall have priority under section 507(a)(2) of the Bankruptcy Code; *provided, however*, that the Substantial Contribution Claim shall be subordinated to the Beneficiary Claims (as defined in the Settlement & Support Agreement [D.I. 7143] with the EFH Creditors' Committee) (the "Beneficiary Claims") such that the Substantial Contribution Claim shall receive no recovery unless the Beneficiary Claims recover in full; *provided, further*, that Fidelity hereby agrees to waive the requirement of section 1129(a)(9)(A) of the Bankruptcy Code with respect to the Substantial Contribution Claim to the extent of the effect of the subordination described in the foregoing provision.

4. After entry of this Order, Fidelity and/or the applicable professional (a "Requesting Party") shall submit to the Debtors short-form invoices setting forth the recipients, amounts, and time periods of the Fidelity Fees and Expenses. No later than the later of 10 business days after (a) the Debtors' receipt of each such short-form invoice and (b) the Applicable Effective Date, the Debtors shall pay to the applicable Requesting Party

2

80% of the requested fees and 100% of the requested expenses, which amounts shall be subject to disgorgement if and to the extent the Court determines that such requested fees and expenses are not reasonable. Within 45 days of receipt of payment, the applicable Requesting Party shall submit full invoices and LEDES data (a "Fee Request") to the Debtors, the U.S. Trustee, and the fee review committee appointed in these chapter 11 cases [D.I. 1891] (the "Fee Committee") in LEDES format (or, in the absence thereof, such other format as is mutually agreed among the Requesting Party, the Debtors, the U.S. Trustee, and the Fee Committee).

5. Following the Fee Committee's receipt of a Fee Request, within reasonable time periods, to be determined either by the Fee Committee and the relevant professionals or by the Court:

(i) the Fee Committee shall send a confidential letter to the applicable Requesting Party regarding the Fee Committee's initial report and recommendation with respect to the applicable Fee Request;

(ii) the Fee Committee shall file with the Court a final report and recommendation ("Fee Committee Recommendation") with respect to such Fee Request and the U.S. Trustee shall file with the Court any objection or comments it may have with respect to such Fee Request ("U.S. Trustee Objection");

(iii) the applicable Requesting Party may file with the Court a response ("Fee Response") to such Fee Committee Recommendation or U.S. Trustee Objection; and

(iv) the Court shall consider each Fee Request at the next omnibus hearing or at a scheduled Fee Committee hearing on retained professional fee applications.

6. No later than the later of 10 days following (a) the Court's ruling with respect to a Fee Request and (b) the Applicable Effective Date, EFH Corp. or the EFH Plan Administrator Board shall pay any unpaid amounts with respect to such Fee Request as ordered by the Court, or

3

the Requesting Party shall disgorge to the EFH Plan Administrator Board such amounts ordered by the Court, as applicable.

7.  For the avoidance of doubt, the Requesting Parties and the Fee Requests shall not be required to comply with (a) the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or other orders in these chapter 11 cases with respect to fee applications, including the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896], or (b) Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases, 78 Fed. Reg. No 116, page 36248 (June 17, 2013).

8.  This Order is without prejudice to EFH Corp.'s or Fidelity's rights to file additional administrative expense claims.

9.  This Order is effective and enforceable immediately upon entry.

10.  This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

Dated: _March 24_, 2017
Wilmington, Delaware

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

4

# **Exhibit B**

**Summary of Factual Record**

On March 2, 2017, the Debtors filed the (1) *Motion Of Energy Future Holdings Corporation For Allowance Of An Administrative Expense Claim For Fidelity Management & Research Company's Substantial Contribution Pursuant To Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code* [D.I. 10948] (the "Debtors' Fee Motion") and (2) the *Declaration of Bryan M. Stephany, Esq. in Support of Debtors Motion of Energy Future Holdings Corporation for Allowance of an Administrative Expense Claim for Fidelity Management & Research Company's Substantial Contribution Pursuant to Sections 503(b)(3)(d) and 503(b)(4) of the Bankruptcy Code* [D.I. 10949] (the "Stephany Declaration").

Subsequently, on March 20, 2017, the Debtors filed the *Declaration Of Anthony R. Horton In Support Of The Motion Of Energy Future Holdings Corporation For Allowance Of An Administrative Expense Claim For Fidelity Management & Research Company's Substantial Contribution Pursuant To Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code* [D.I. 11023] (the "Horton Declaration").

**I.     The Debtors' Fee Motion**

As set forth in the Debtors' Fee Motion, Fidelity was an active and valuable participant in EFH Corp.'s restructuring since before the Debtors' chapter 11 cases commenced. Debtors' Fee Motion, ¶8. Fidelity was the largest single holder of EFH unsecured claims and the largest overall creditor of the E-Side Debtors. *Id*. at ¶8, 22. As the Debtors' Fee Motion explains, "Fidelity, as the largest creditor of EFH Corp., has played an active, constructive, and unique role in these chapter 11 cases from the outset." *Id*. at ¶22. At each major stage in the restructuring, Fidelity was either a critical participant, a capital contributor, or both. *Id*. at ¶8. Fidelity principals or advisors had attended countless meetings and hearings and participated materially and constructively at every stage of the chapter 11 cases. *Id*. Notably, Fidelity agreed to fund a portion of the EFIH first lien DIP facility and agreed to settle $400 million of makewhole claims under the EFIH first lien notes, thus saving the estates $850 million. *Id*. at ¶8, 23. Similarly, Fidelity agreed to fund $171 million of the proposed EFIH second lien DIP and agreed to settle its makewhole claims on the EFIH second lien notes. *Id*. at ¶9. In connection with the Debtors' first chapter 11 plan, Fidelity committed to invest $500 million to facilitate the original merger transaction. *Id*. at ¶10, 23. When the Debtors' first plan was abandoned, the Debtors signed a merger agreement with NextEra. *Id*. at ¶11. As a direct result of Fidelity's efforts negotiating with NextEra, NextEra increased its original price by $450 million. *Id*. at ¶11, 23. Importantly, Fidelity did not stand to benefit from this increase in purchase price with respect to its recovery on its EFH unsecured notes. *Id*. at ¶14. "The unique benefits conferred on the Debtors' estates by Fidelity's actions plainly would not have been realized without Fidelity." *Id*. at ¶23.

**II.    The Stephany Declaration**

The Stephany Declaration provided the factual predicate for the Debtors' Fee Motion. Specifically, in the Stephany Declaration, the Debtors filed seven (7) exhibits ranging from trial

1

testimony to board meeting minutes that evidenced Fidelity's substantial contribution to the Debtors' chapter 11 cases.

- Exhibit 1 contains excerpts from the December 3, 2015 hearing on confirmation of the Debtors' Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 7235]. At that hearing, the Court found that, "[a]s with the payment of professional fees under the Settlement Agreement, the record clearly supports a finding that the parties covered by Article 4(r) of the plan, Section 2.7(b) of the Settlement Agreement, Section 2.4 of the Fidelity settlement, and Section 2(c)(6) of the EFH committee settlement, provided a substantial contribution to the case, justifying the payment of their professionals' reasonable fees and expenses . . ." December 3, 2015 Hearing Transcript, p. 78:17-24.

- Exhibit 2 is the Declaration of Paul Keglevic in Support of Confirmation of the Seventh Amended Plan of Reorganization as it Applies to the E-Side Debtors, dated February 10, 2017 (the "Keglevic Declaration"). The Keglevic Declaration provides: "In anticipation of the September 19 hearing on the Debtors' motion, the Debtors, NextEra, and certain creditors, including Fidelity (a holder of TCEH First Lien debt, EFIH First and Second Lien Notes, and EFH unsecured debt) continued discussions regarding the merger agreement with NextEra. These discussions resulted in a settlement with Fidelity on September 18, amendment of the plan support agreement to add Fidelity as a signatory (as amended, the "NextEra PSA"), and amendment of the merger agreement with NextEra (as amended, the "NextEra Merger Agreement") to reflect a $300 million increase in the cash component of NextEra's purchase price—raising the price to $4.396 billion—and a release of $150 million out of the $250 million amount to be set aside for the asbestos escrow. **In turn, the additional distributable value nearly quadrupled the recoveries of the EFH unsecured creditors**." Keglevic Declaration, ¶19 (emphasis added).

- Exhibit 3 is the September 30, 2016 Presentation to Joint Boards: Restructuring Update (the "Presentation"). The Presentation provides that "Fidelity, the largest holder of EFH unsecured claims and a significant holder of EFIH claims, agreed to join the Plan Support Agreement." Presentation, p. 13. It also discusses the NextEra merger agreement, recognizing that the settlement discussions "resulted in $450 million of additional distributable value." *Id*.

- Exhibit 4 is the September 30, 2016 Minutes of a Meeting of the Joint Boards (the "Board Minutes"). The Board Minutes provide, among other things, that the Board approved the NextEra Energy, Inc. merger agreement (as amended) and plan support agreement (as amended) which Fidelity had joined. Board Minutes, p. 8-9.

- Exhibit 5 contains excerpts from the February 16, 2017 Hearing Transcript. During the February 16, 2017 hearing, Mark Hickson ("Hickson"), Executive Vice President, Corporate Development, Strategy, Quality and Integration, of NextEra Energy, Inc. testified that, "[i]n addition to discussions that we had with the company from July 29th to September 19th, we also had discussions with Fidelity. And, similar to the interests of

the company, Fidelity had an interest in us providing more value, an interest in NextEra providing more value to the estate. And we thought it -- at the time, we thought it was very important to get Fidelity on board and have them support our transaction. And so, the combination of the discussion -- of discussions with EFH, as well as discussions with Fidelity, were the primary reasons why we increased our bid from 4.1 to 4.4 billion in the mid-September timeframe." February 16, 2017 Hearing Transcript, p. 22:5-16.

- Exhibit 6 is the Declaration of Mark Hickson in Support of Confirmation of the Seventh Amended Plan of Reorganization, dated February 11, 2017 (the "<u>Hickson Declaration</u>"). The Hickson Declaration provides: "[i]n conjunction with a plan support agreement with Fidelity, on September 18, 2016 in Amendment No. 1, NEE agreed to increase the purchase price by an additional $300 million, for a total of $4.396 billion, which, together with the refinancing of the $5.4 billion EFIH first lien DIP facility, increased NEE's offer to $9.796 billion." Hickson Declaration, ¶11.

- Exhibit 7 contains excerpts from the February 17, 2017 Hearing Transcript. At the February 17, 2017 hearing, the Court ruled that certain parties had provided a substantial contribution to the Debtors' estates during the chapter 11 cases.

### III.    **The Horton Declaration**

In the Horton Declaration, Mr. Horton, the Chief Financial Officer, Executive Vice President, and Treasurer of EFH Corp. and EFIH testified that "Fidelity has been an active and robust participant in negotiations regarding the Debtors' restructuring for nearly four years." Horton Declaration, ¶3. Specifically, Mr. Horton testified that Fidelity (i) agreed to settle makewhole claims under hundreds of millions of dollars of EFIH first lien notes, (ii) committed to and funded $500 million under the EFIH first lien DIP facility, and (iii) agreed to committed financing in connection with the proposed EFIH second lien DIP facility (each of which supported the Debtors' smooth transition into chapter 11). *Id*. In connection with the first confirmed plan of reorganization, Mr. Horton further testified that Fidelity committed to invest $500 million in cash to facilitate the merger transaction contemplated by the first confirmed plan of reorganization and agreed to settle its makewhole claim. *Id*. Mr. Horton added that "Fidelity's negotiations with NextEra regarding the NextEra Merger Agreement and Plan, and Fidelity's agreement to join the Plan Support Agreement with NextEra, directly resulted in NextEra's agreement to provide an additional $450 million in distributable value." *Id*. at ¶4. Finally, Mr. Horton testified that "as the largest holder of EFH unsecured claims, Fidelity's support was critical to ensuring that every Class of impaired Claims at EFH Corp. voted to accept the Plan." *Id*. at ¶3.