**Exhibit B**

**Summary of Factual Record**

On March 2, 2017, the Debtors filed the (1) *Motion Of Energy Future Holdings Corporation For Allowance Of An Administrative Expense Claim For Fidelity Management & Research Company's Substantial Contribution Pursuant To Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code* [D.I. 10948] (the "Debtors' Fee Motion") and (2) the *Declaration of Bryan M. Stephany, Esq. in Support of Debtors Motion of Energy Future Holdings Corporation for Allowance of an Administrative Expense Claim for Fidelity Management & Research Company's Substantial Contribution Pursuant to Sections 503(b)(3)(d) and 503(b)(4) of the Bankruptcy Code* [D.I. 10949] (the "Stephany Declaration").

Subsequently, on March 20, 2017, the Debtors filed the *Declaration Of Anthony R. Horton In Support Of The Motion Of Energy Future Holdings Corporation For Allowance Of An Administrative Expense Claim For Fidelity Management & Research Company's Substantial Contribution Pursuant To Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code* [D.I. 11023] (the "Horton Declaration").

**I.    The Debtors' Fee Motion**

As set forth in the Debtors' Fee Motion, Fidelity was an active and valuable participant in EFH Corp.'s restructuring since before the Debtors' chapter 11 cases commenced. Debtors' Fee Motion, ¶8. Fidelity was the largest single holder of EFH unsecured claims and the largest overall creditor of the E-Side Debtors. *Id*. at ¶8, 22. As the Debtors' Fee Motion explains, "Fidelity, as the largest creditor of EFH Corp., has played an active, constructive, and unique role in these chapter 11 cases from the outset." *Id*. at ¶22. At each major stage in the restructuring, Fidelity was either a critical participant, a capital contributor, or both. *Id*. at ¶8. Fidelity principals or advisors had attended countless meetings and hearings and participated materially and constructively at every stage of the chapter 11 cases. *Id*. Notably, Fidelity agreed to fund a portion of the EFIH first lien DIP facility and agreed to settle $400 million of makewhole claims under the EFIH first lien notes, thus saving the estates $850 million. *Id*. at ¶8, 23. Similarly, Fidelity agreed to fund $171 million of the proposed EFIH second lien DIP and agreed to settle its makewhole claims on the EFIH second lien notes. *Id*. at ¶9. In connection with the Debtors' first chapter 11 plan, Fidelity committed to invest $500 million to facilitate the original merger transaction. *Id*. at ¶10, 23. When the Debtors' first plan was abandoned, the Debtors signed a merger agreement with NextEra. *Id*. at ¶11. As a direct result of Fidelity's efforts negotiating with NextEra, NextEra increased its original price by $450 million. *Id*. at ¶11, 23. Importantly, Fidelity did not stand to benefit from this increase in purchase price with respect to its recovery on its EFH unsecured notes. *Id*. at ¶14. "The unique benefits conferred on the Debtors' estates by Fidelity's actions plainly would not have been realized without Fidelity." *Id*. at ¶23.

## II.     The Stephany Declaration

The Stephany Declaration provided the factual predicate for the Debtors' Fee Motion. Specifically, in the Stephany Declaration, the Debtors filed seven (7) exhibits ranging from trial testimony to board meeting minutes that evidenced Fidelity's substantial contribution to the Debtors' chapter 11 cases.

- Exhibit 1 contains excerpts from the December 3, 2015 hearing on confirmation of the Debtors' Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 7235].  At that hearing, the Court found that, "[a]s with the payment of professional fees under the Settlement Agreement, the record clearly supports a finding that the parties covered by Article 4(r) of the plan, Section 2.7(b) of the Settlement Agreement, Section 2.4 of the Fidelity settlement, and Section 2(c)(6) of the EFH committee settlement, provided a substantial contribution to the case, justifying the payment of their professionals' reasonable fees and expenses . . ."  December 3, 2015 Hearing Transcript, p. 78:17-24.

- Exhibit 2 is the Declaration of Paul Keglevic in Support of Confirmation of the Seventh Amended Plan of Reorganization as it Applies to the E-Side Debtors, dated February 10, 2017 (the "Keglevic Declaration").  The Keglevic Declaration provides: "In anticipation of the September 19 hearing on the Debtors' motion, the Debtors, NextEra, and certain creditors, including Fidelity (a holder of TCEH First Lien debt, EFIH First and Second Lien Notes, and EFH unsecured debt) continued discussions regarding the merger agreement with NextEra.  These discussions resulted in a settlement with Fidelity on September 18, amendment of the plan support agreement to add Fidelity as a signatory (as amended, the "NextEra PSA"), and amendment of the merger agreement with NextEra (as amended, the "NextEra Merger Agreement") to reflect a $300 million increase in the cash component of NextEra's purchase price—raising the price to $4.396 billion—and a release of $150 million out of the $250 million amount to be set aside for the asbestos escrow. **In turn, the additional distributable value nearly quadrupled the recoveries of the EFH unsecured creditors**."  Keglevic Declaration, ¶19 (emphasis added).

- Exhibit 3 is the September 30, 2016 Presentation to Joint Boards: Restructuring Update (the "Presentation").  The Presentation provides that "Fidelity, the largest holder of EFH unsecured claims and a significant holder of EFIH claims, agreed to join the Plan Support Agreement." Presentation, p. 13.  It also discusses the NextEra merger agreement, recognizing that the settlement discussions "resulted in $450 million of additional distributable value." *Id*.

- Exhibit 4 is the September 30, 2016 Minutes of a Meeting of the Joint Boards (the "Board Minutes").  The Board Minutes provide, among other things, that the Board approved the NextEra Energy, Inc. merger agreement (as amended) and plan support agreement (as amended) which Fidelity had joined.  Board Minutes, p. 8-9.

- Exhibit 5 contains excerpts from the February 16, 2017 Hearing Transcript. During the February 16, 2017 hearing, Mark Hickson ("Hickson"), Executive Vice President, Corporate Development, Strategy, Quality and Integration, of NextEra Energy, Inc. testified that, "[i]n addition to discussions that we had with the company from July 29th to September 19th, we also had discussions with Fidelity. And, similar to the interests of the company, Fidelity had an interest in us providing more value, an interest in NextEra providing more value to the estate. And we thought it -- at the time, we thought it was very important to get Fidelity on board and have them support our transaction. And so, the combination of the discussion -- of discussions with EFH, as well as discussions with Fidelity, were the primary reasons why we increased our bid from 4.1 to 4.4 billion in the mid-September timeframe." February 16, 2017 Hearing Transcript, p. 22:5-16.

- Exhibit 6 is the Declaration of Mark Hickson in Support of Confirmation of the Seventh Amended Plan of Reorganization, dated February 11, 2017 (the "Hickson Declaration"). The Hickson Declaration provides: "[i]n conjunction with a plan support agreement with Fidelity, on September 18, 2016 in Amendment No. 1, NEE agreed to increase the purchase price by an additional $300 million, for a total of $4.396 billion, which, together with the refinancing of the $5.4 billion EFIH first lien DIP facility, increased NEE's offer to $9.796 billion." Hickson Declaration, ¶11.

- Exhibit 7 contains excerpts from the February 17, 2017 Hearing Transcript. At the February 17, 2017 hearing, the Court ruled that certain parties had provided a substantial contribution to the Debtors' estates during the chapter 11 cases.

### III. The Horton Declaration

In the Horton Declaration, Mr. Horton, the Chief Financial Officer, Executive Vice President, and Treasurer of EFH Corp. and EFIH testified that "Fidelity has been an active and robust participant in negotiations regarding the Debtors' restructuring for nearly four years." Horton Declaration, ¶3. Specifically, Mr. Horton testified that Fidelity (i) agreed to settle makewhole claims under hundreds of millions of dollars of EFIH first lien notes, (ii) committed to and funded $500 million under the EFIH first lien DIP facility, and (iii) agreed to committed financing in connection with the proposed EFIH second lien DIP facility (each of which supported the Debtors' smooth transition into chapter 11). *Id.* In connection with the first confirmed plan of reorganization, Mr. Horton further testified that Fidelity committed to invest $500 million in cash to facilitate the merger transaction contemplated by the first confirmed plan of reorganization and agreed to settle its makewhole claim. *Id.* Mr. Horton added that "Fidelity's negotiations with NextEra regarding the NextEra Merger Agreement and Plan, and Fidelity's agreement to join the Plan Support Agreement with NextEra, directly resulted in NextEra's agreement to provide an additional $450 million in distributable value." *Id.* at ¶4. Finally, Mr. Horton testified that "as the largest holder of EFH unsecured claims, Fidelity's support was critical to ensuring that every Class of impaired Claims at EFH Corp. voted to accept the Plan." *Id.* at ¶3.