**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Hearing Date: June 5, 2018 at 11:00 a.m. |
| | ) | Objection Deadline: May 29, 2018 at 4:00 p.m. |
| | ) | |

**MOTION OF THE EFH PLAN ADMINISTRATOR BOARD FOR
ENTRY OF AN ORDER SCHEDULING CERTAIN HEARING DATES
AND DEADLINES AND ESTABLISHING CERTAIN PROTOCOLS IN
CONNECTION WITH THE EFH/EFIH ALLOCATION DISPUTE**

The EFH Plan Administrator Board, on behalf of the entities formerly known as the EFH Debtors and EFIH Debtors in the above-captioned cases (the "Former EFH/EFIH Debtors")[2], hereby files this motion (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Scheduling Order"), scheduling certain dates and deadlines and establishing certain protocols in connection with the allocation of the Subject Claims (as defined

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The EFH/EFIH Debtors emerged from chapter 11 on March 9, 2018 as the Reorganized EFH/EFIH Debtors. *See Notice of Entry of EFH Confirmation Order and Occurrence of EFH Effective Date* [D.I. 12801].

Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to them in the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 12653] (the "EFH/EFIH Plan") or the Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 12763] (the "EFH Confirmation Order"), as applicable.

RLF1 19341512v.1

below) and such other related relief as is necessary and proper under the circumstances. In support of the Motion, the EFH Plan Administrator Board respectfully submits as follows:

## JURISDICTION

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the EFH Plan Administrator Board consents pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The bases for the relief requested in this Motion are sections 1125(b) and 1128(a) of title 11 of the United States Code (the "Bankruptcy Code"); rules 2002(b) and (d), 3016(b), 3017, 3020(b), and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Local Bankruptcy Rule 3017-1(a).

## BACKGROUND

4.  On April 29, 2014, each of the Former EFH/EFIH Debtors filed a voluntary petition with the Court under the Bankruptcy Code. Following a one day trial on February 26, 2018 (the "EFH Confirmation Hearing"), the Court entered the EFH Confirmation Order on

February 27, 2018, confirming the EFH/EFIH Plan. The Former EFH/EFIH Debtors emerged from chapter 11 on March 9, 2018, the EFH Effective Date.

5.  Prior to the EFH Effective Date, the Disinterested Directors and Managers of EFH and EFIH had been engaged in negotiations surrounding a potential settlement of the allocation of certain Claims as between EFH and EFIH, with respect to: (a) the $275 million NEE Termination Fee, (b) the approximately $40 to $50 million in aggregate of professional fees and expenses incurred by the EFH/EFIH Committee, and (c) the $35 million to $38 million in fees incurred by Elliott Associates, L.P., Elliott International, L.P., and the Liverpool Limited Partnership (collectively, the "Elliott Funds"), $35 million of which were approved pursuant to the EFH Confirmation Order under section 503(b) of the Bankruptcy Code, subject to Fee Committee review (collectively, the "Subject Claims"). These negotiations did not yield a settlement of the dispute regarding the proper allocation of the Subject Claims as between EFH and EFIH (the "EFH/EFIH Allocation Dispute").

6.  In connection with such negotiations, on or around February 21, 2018, the EFH Debtors executed confidentiality agreements (the "Confidentiality Agreements") with certain Holders of Claims against the EFH Debtors. The Confidentiality Agreements facilitated discussions between EFH (represented by various Creditors with Claims against EFH) and EFIH (represented by the Elliott Funds), regarding the EFH/EFIH Allocation Dispute. Pursuant to the Confidentiality Agreements, EFH agreed to disclose publicly after a specified period of time that such parties had engaged in negotiations concerning the EFH/EFIH Allocation Dispute, although such negotiations had not yielded a settlement. This disclosure was filed on the Court's docket on February 28, 2018 [D.I. 12769].

7. As the Former EFH/EFIH Debtors communicated to the Court and all parties-in-interest at the EFH Confirmation Hearing, the failure to settle the EFH/EFIH Allocation Dispute prior to the EFH Effective Date adversely affects the timing of EFH/EFIH Plan distributions. More specifically, absent an allocation agreement on the Subject Claims, EFH *and* EFIH would each have to hold back EFH/EFIH Plan distributions in an amount representing the lesser of (a) all available Cash on hand to satisfy Allowed Unsecured Claims under the EFH/EFIH Plan and (b) the aggregate amount of the Subject Claims (collectively, the "Allocation Holdback"). Unfortunately, the Former EFH/EFIH Debtors' fears regarding delays in EFH/EFIH Plan distributions have materialized—two months after the EFH Effective Date, **over half a billion dollars for unsecured creditor distributions remains in the EFH/EFIH Cash Distribution Account**. Without some form of relief resolving the EFH/EFIH Allocation Dispute, the Allocation Holdback will continue, to the detriment of both EFIH and EFH unsecured creditors because they cannot deploy the capital. Moreover, the costs of resolving the EFH/EFIH Allocation Dispute will reduce the ultimate distribution to such creditors.

8. The Former EFH/EFIH Debtors took every reasonable effort to resolve the EFH/EFIH Allocation Dispute prior to the EFH Effective Date. These efforts were unsuccessful. Settlement discussions between the Disinterested Directors and Managers before the EFH Effective Date—and creditor negotiations without the structure of a Court-approved process before and after the EFH Effective Date—have not yielded a proposal supported by a critical mass of EFH and EFIH unsecured creditors. Following the EFH Effective Date, the EFH Plan Administrator Board has been pushing interested parties to either reach a proposed settlement on the EFH/EFIH Allocation Dispute or otherwise agree to a process for presenting the dispute to this Court. Despite the EFH Plan Administrator Board's efforts to date, the Former EFH/EFIH

Debtors' economic stakeholders have been unable to consensually move the process forward. As a result, and consistent with what the Former EFH/EFIH Debtors have done throughout these chapter 11 cases when progress languishes, the EFH Plan Administrator Board filed this Motion to drive the EFH/EFIH Allocation Dispute towards a resolution.

9.     Less than 48 hours ago, the Elliott Funds filed the *Joint Motion of UMB Bank, N.A., as Indenture Trustee and Elliott to Fix Appropriate Allocation of Certain Reserves and Expenses as Between the EFH and EFIH Debtors* [D.I. 13102] (the "Elliott Motion"). The Elliott Motion sets forth a proposal for resolving the EFH/EFIH Allocation Dispute. By this Motion, the EFH Plan Administrator Board does not take a position on the merits of the proposal set forth in the Elliott Motion or the accuracy or inaccuracy of any of the factual statements set forth therein. Importantly, however, the EFH Plan Administrator Board does believe the Scheduling Order sets forth a balanced and sustainable *process* for parties to respond to the Elliott Motion. Moreover, and notwithstanding ongoing discussions regarding the terms of the proposed Scheduling Order, the EFH Plan Administrator Board believes that key unsecured creditor constituencies at both EFH and EFIH are generally supportive of implementing a schedule to drive the EFH/EFIH Allocation Dispute to its conclusion—in particular, (a) the Elliott Funds (a significant holder of EFIH unsecured claims); (b) the Ad Hoc EFH Claimants (as defined in the *Verified Statement of Kasowitz Benson Torres LLP and Hogan McDaniel Pursuant to Bankruptcy Rule 2019* [D.I. 12900]), which, based on the statements set forth in such verified statement, the EFH Plan Administrator Board believes holds approximately 44% of

the EFH unsecured debt that is not held by the Elliott Funds; and (c) the EFH/EFIH Official Committee.[3]

10. Accordingly, the EFH Plan Administrator Board requests approval of the Scheduling Order to drive the EFH/EFIH Allocation Dispute towards its long-awaited conclusion.

## RELIEF REQUESTED

11. By this Motion, the EFH Plan Administrator Board respectfully requests that the Court enter an order substantially in the form attached hereto as **Exhibit A**, (a) scheduling dates and deadlines in connection with the resolution of the EFH/EFIH Allocation Dispute (the "Proceedings") and (b) establishing certain protocols in connection with the Proceedings (the "Protocols").

## BASIS FOR RELIEF REQUESTED

### I. GIVEN THE LIMITED SCOPE OF THE SUBJECT CLAIMS, THE PROPOSED SCHEDULE AND DISCOVERY PROTOCOL ARE REASONABLE.

12. As a preliminary matter, key EFH and EFIH unsecured creditor constituencies are already familiar with the issues that are driving the continued pendency of the EFH/EFIH Allocation Dispute. As the Court has noted, this dispute has been ongoing for approximately four years.[4] Such constituencies—the majority of whom have been in negotiations with each

---

[3] For the avoidance of doubt, the EFH Plan Administrator Board is engaged in ongoing discussions with such parties regarding the terms of the Scheduling Order. As of the date hereof, such parties have not consented to the proposed terms of the Scheduling Order. The rights of such parties are fully preserved as of the date hereof. The EFH Plan Administrator Board invite comments to the Scheduling Order from any other party with an interest in the EFH/EFIH Allocation Dispute.

[4] 2/26/18 Hr'g Tr. at 24:14-15 ("It's only been an open issue for four years.").

other and, prior to the EFH Effective Date, the Disinterested Directors and Managers—would be unlikely to discover the type of additional information that can add value to a litigation process.

13.     Balancing these competing needs, the Scheduling Order includes an expeditious but reasonable period in which to complete all fact discovery—94 days from the date of this filing—in keeping with the schedules imposed in many similarly large and complex bankruptcy cases, including previous proceedings in this case.  It also provides for a mechanism to guide fact discovery by requiring the Participating Parties (except for the EFH Plan Administrator Board) to file initial position papers regarding their views on the proper resolution of the EFH/EFIH Allocation Dispute—these non-binding position papers will not only help inform other parties-in-interest on what fact discovery may be helpful for addressing the likely positions of the other Participating Parties, it will also crystallize for the Court what the goalposts are for a potential resolution.

## II.    A SCHEDULING ORDER LIMITING DISCOVERY IS NECESSARY AND APPROPRIATE.

14.     The proposed protocols bolster the proposed schedule by imposing sensible limits on the scope and conduct of discovery.  In connection with legacy claims, ad hoc discovery requests, and the prior confirmation proceedings, the Former EFH/EFIH Debtors have already produced nearly 1,000,000 documents consisting of over 6,000,000 pages, responding to hundreds of written discovery requests, and participated in dozens of depositions.  Any remaining discovery can and should be narrowly tailored to cover the remaining issues directly relevant to resolution of the EFH/EFIH Allocation Dispute.

15. Rule 16(b) of the Federal Rules of Civil Procedure (the "Rules") requires entry of a scheduling order. Rule 16 applies to adversary proceedings in bankruptcy cases.[5] Although the litigation of the EFH/EFIH Allocation Dispute is not taking place in an adversary proceeding, many of the principles underlying Rule 16 are equally applicable to proceedings such as these. Specifically, the "rule's purpose is to provide for the judicial control over a case, streamline proceedings, maximize the efficiency of the court system, and actively manage the timetable of case preparation to expedite the speedy and efficient disposition of cases."[6] That purpose is as relevant here as it is in any adversary proceeding.

16. Rule 16(b)(3) provides that a "[s]cheduling order *must* limit the time to . . . complete discovery."[7] As the Manual for Complex Litigation ("MCL")—a useful resource in cases like these—provides, "[t]he discovery plan should include a schedule for the completion of specified discovery, affording a basis for judicial monitoring of progress. . . . Time limits impose valuable discipline on attorneys, forcing them to be selective and helping to move the case expeditiously."[8]

17. In addition to time limits, other examples of discovery limits include "limits on quantity," such as "limits on the number and length of depositions, on the number of interrogatories, and on the volume of requests for production."[9] The EFH Plan Administrator

---

[5] Fed. R. Bankr. P. 7016.

[6] *Paoli v. Stetser*, No. 12-66-GMS-CJB, 2013 WL 2154393, at *2 (D. Del. May 6, 2013) (internal quotation marks and citation omitted).

[7] Fed. R. Civ. P. 16(b)(3)(A) (emphasis added).

[8] MCL (Fourth) § 11.422 (2004).

[9] MCL § 11.422.

Board's Protocols put this advice into practice by instituting limits on the number and length of depositions and the type of interrogatories that may be served.

18.     The EFH Plan Administrator Board has found setting discovery schedules and protocols to be a boon in these cases. To that end, the proposed schedule reflects the limited scope of issues in dispute, and the proposed Protocols are substantially similar to Protocols used in other proceedings in these cases. Over the course of more than four years and multiple scheduling order, the Former EFH/EFIH Debtors have developed procedures that have enabled them to conduct proceedings efficiently and with minimal drain on the Court's resources. The proposed schedule reflects this experience.

19.     In short, the EFH Plan Administrator Board's proposed schedule accounts for the narrow scope of remaining issues while allowing the Court and the Participating Parties to control their limited time and resources and a sufficient opportunity to investigate and be heard on matters truly at issue with respect to the EFH/EFIH Allocation Dispute.

## **CONCLUSION**

20.     As has become clear over the life of these chapter 11 cases, progress is neither automatic nor inevitable. The Former EFH/EFIH Debtors have often had to rely on the Court to put "tension on the line" and drive parties forward by implementing Court deadlines to reach case milestones. Here, the EFH Plan Administrator Board is requesting the Court's assistance in doing so once again. The EFH/EFIH Allocation Dispute has languished without resolution for months (if not years), despite not being factually nor legally intensive. Absent a resolution, EFH and EFIH unsecured creditors are being deprived of EFH/EFIH Plan distributions (and their projected EFH/EFIH Plan distributions may dwindle as the delay continues). For this reason, the EFH Plan Administrator Board believes entry of the Scheduling Order is in the best interests of all parties in interest.

## NOTICE

21. Notice of this Motion shall be provided on the date hereof via U.S. first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (g) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (f); and (h) the Office of the United States Attorney for the District of Delaware. The EFH Plan Administrator Board submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CERTIFICATION OF COUNSEL PURSUANT TO L.R. 7026-1(d)

22. Pursuant to Local Bankruptcy Rule 7026-1(d), the EFH Plan Administrator Board has met-and-conferred and will continue to do so with the various creditor constituencies in an effort to reach agreement on a schedule prior to the hearing on the Motion.

[*Remainder of page intentionally left blank.*]

Dated: May 15, 2018
    Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:   collins@rlf.com
        defranceschi@rlf.com
        madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   edward.sassower@kirkland.com
        stephen.hessler@kirkland.com
        brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   james.sprayregen@kirkland.com
        marc.kieselstein@kirkland.com
        chad.husnick@kirkland.com
        steven.serajeddini@kirkland.com

*Co-Counsel to the EFH Plan Administrator Board*