## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | Objection Deadline: June 15, 2018 at 4:00 p.m. |

**COVER SHEETS TO THE FORTY FIRST THROUGH FORTY FOURTH MONTHLY FEE APPLICATION (ELEVENTH INTERIM APPLICATION) OF EVERCORE GROUP L.L.C., DEBTORS' INVESTMENT BANKER AND FINANCIAL ADVISOR FOR ALLOWANCE OF AN ADMINISTRATIVE CLAIM FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FROM SEPTEMBER 1, 2017 THROUGH DECEMBER 31, 2017**

| **Name of Applicant:** | **Evercore Group L.L.C.** |
|---|---|
| Authorized to provide professional services to: | The above-captioned Debtors |
| Date of retention: | September 16, 2014<br>*nunc pro tunc to* April 29, 2014 |
| Period for which compensation and reimbursement is sought:<br>(the "Fee Period") | September 1, 2017 – December 31, 2017 |
| Compensation sought<br>as actual, reasonable and necessary: | $0<br>(20% of which is $0) |
| Expense reimbursement sought<br>as actual, reasonable, and necessary: | $0 |

This is an **interim** fee application.[2]

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. A complete list of the debtors and the last four digits of their federal tax identification numbers is available at http://www.efhcaseinfo.com.

[2] Notice of this Interim Fee Application shall be served in accordance with the Interim Compensation Order and Fee Committee Order (each as defined herein) and objections to the relief requested herein shall be addressed in accordance with such orders.

## Prior Statements, Applications and Allowances[3]

| Filing, Date Filed, D.I. | Period Covered | Total Fees (100%) | Requested | | Approved | | Paid | Holdback/ Amount Due |
|---|---|---|---|---|---|---|---|---|
| | | | Fees | Expenses | Fees | Expenses[4] | | |
| 1st Interim Oct. 31, 2014 D.I. 2700 | April 29 - August 31, 2014 | $7,600,000.00 | $7,600,000.00 | $368,611.55 | $7,600,000.00 | $338,780.22 | $7,938,780.22 | $-- |
| 2nd Interim Mar. 10, 2015 D.I. 3868 | Sept. 1 - Dec. 31, 2014 | $2,100,000.00 | $2,100,000.00 | $203,938.94 | $2,100,000.00 | $203,938.94 | $2,303,938.94 | $-- |
| 3rd Interim June 24, 2015 D.I. 4861 | Jan. 1 - April. 30, 2015 | $2,100,000.00 | $2,100,000.00 | $62,482.62 | $2,100,000.00 | $56,925.17 | $2,156,925.17 | $-- |
| 4th Interim Oct. 29, 2015 D.I. 6763 | May 1 - August 31, 2015 | $2,100,000.00 | $2,100,000.00 | $157,357.49 | $2,100,000.00 | $157,357.49 | $2,257,357.49 | $-- |
| 5th Interim March 7, 2016 D.I. 7990 | Sept. 1 - Dec. 31, 2015 | $2,100,000.00 | $2,100,000.00 | $52,014.38 | $2,100,000.00 | $52,014.42 | $2,152,014.42 | $-- |
| 6th Interim July 18, 2016 D.I. 8939 | Jan. 1 - April 30, 2016 | $2,100,000.00 | $2,100,000.00 | $6,800.73 | $2,100,000.00 | $5,966.77 | $2,105,966.77 | $-- |
| 7th Interim Dec. 2, 2016 D.I. 10323 | May 1 - August 31, 2016 | $2,100,000.00 | $2,100,000.00 | $117,166.92 | $2,100,000.00 | $116,964.04 | $2,216,964.04 | $-- |
| 8th - 10th Interim Nov. 29, 2017 D.I. 12283 | September 1, 2016 - August 31, 2017 | $2,700,000.00 | $540,000.00 (20%) $2,160,000.00 (80%) | $-- | $2,700,000.00 | $-- | $2,144,147.73 | $555,852.27[5] (20%) |
| 11th Interim May 24, 2018 D.I. [ ] | September 1, 2017 - December 31, 2017 | $-- | $-- | $-- | $-- | $-- | $-- | $-- |
| Grand Total | | $22,900,000.00 | $22,360,000.00 | $968,372.63 | $22,900,000.00 | $931,947.05 | $23,276,094.78 | $555,852.27 |

---

[3]  Amount reflects an aggregate voluntary reduction by Evercore for the Fee Period in conjunction with discussions with the Fee Committee and U.S. Trustee.

[4]  Expenses approved reflect voluntary adjustments by Evercore in conjunction with discussions with the Fee Committee and U.S. Trustee.

[5]  Includes $15,852.27 of fees related to the 8th – 10th Interim Application allocated to TCEH that were approved but have not yet been paid. Also includes the $540,000.00 8th – 10th Interim Application holdback amount that is being requested under this Application.

## Professionals

Evercore professionals rendering services during the Fee Period were:

| Professional | Title | Total Hours |
|---|---|---|
| David Ying | Senior Managing Director | 20.0 |
| Jeremy Matican | Managing Director | 10.5 |
| Lisa Levitte | Vice President | -- |
| Neal Patel | Vice President | 119.0 |
| Andrew Longley | Associate | -- |
| Andrew Kilbourne | Analyst | 125.5 |
| Rene Negron | Analyst | -- |
| **Total** | | **275.0** |

(Evercore does not charge hourly rates to the Debtors and no hourly rates are associated with these professionals.)

## Hours by Matter

Hours expended by these professionals by matter during the Fee Period were:

| Matter Number | Matter Description | Total Hours |
|:---:|:---:|---:|
| 1 | General Case Administration | 29.0 |
| 2 | Due Diligence | 2.5 |
| 3 | Capital Structure and Debt Capacity Analysis | 5.0 |
| 4 | Financing | 25.5 |
| 5 | Asset Sales and Other M&A Activity | 0.5 |
| 6 | Valuation and Recoveries Analysis | 5.0 |
| 7 | General Financial Analysis and Research | 123.0 |
| 8 | Plan of Reorganization | 3.5 |
| 9 | Board Communications | 1.5 |
| 10 | Creditor Communication and Due Diligence | 8.5 |
| 11 | Court Testimony and Litigation Support | 66.0 |
| 12 | Travel | 5.0 |
| 13 | Evercore Retention | 0.0 |
| 14 | Fee Application | 0.0 |
| **Total** | | **275.0** |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Objection Deadline: June 15, 2018 at 4:00 p.m. |

## COVER SHEETS TO THE   FORTY **FIRST THROUGH**   FORTY  **FOURTH MONTHLY FEE APPLICATION (ELEVENTH INTERIM APPLICATION) OF EVERCORE GROUP L.L.C., DEBTORS' INVESTMENT BANKER AND FINANCIAL ADVISOR FOR ALLOWANCE OF AN ADMINISTRATIVE CLAIM FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FROM SEPTEMBER 1, 2017 THROUGH DECEMBER 31, 2017**

Evercore Group L.L.C. (collectively, "Evercore"), investment banker and financial advisor for the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submits its interim fee application (the "Fee Application") for allowance of compensation for professional services provided and reimbursement of actual and necessary expenses, each as described in the cover sheet hereto, that Evercore provided in the above-captioned period (the "Fee Period").

### Jurisdiction and Applicable Standards

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for and standards governing the relief requested herein are sections

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  A complete list of the debtors and the last four digits of their federal tax identification numbers is available at http://www.efhcaseinfo.com.

327, 328, 330, and 331 of chapter 11 of title 11 of the United States Code, (the "<u>Bankruptcy</u>

<u>Code</u>"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the

Order Authorizing the Employment and Retention of Evercore Group L.L.C. as investment

banker and financial advisor for the Debtors and Debtors in Possession Nunc Pro Tunc to the

Petition Date, dated September 16, 2014 [D.I. 2056] (the "<u>Retention Order</u>"), attached hereto as

**<u>Exhibit A</u>**, the Order Establishing Procedures for Interim Compensation and Reimbursement of

Expenses for Professionals, dated September 16, 2014 [D.I. 2066] (the "<u>Interim Compensation</u>

<u>Order</u>"), the Stipulation and Order Appointing a Fee Committee [D.I. 1896] (the "<u>Fee Committee</u>

<u>Order</u>"), Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "<u>Local Bankruptcy Rules</u>"), and the

United States Trustee's Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed under 11 U.S.C. §330 (the "<u>Appendix A Guidelines</u>").

## <u>Case Background</u>

4.     On April 29, 2014 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their

businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code.  On May 13, 2014, the United States Trustee for Region 3

(the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors pursuant to section

1102 of the Bankruptcy Code (the "<u>TCEH Committee</u>") [D.I. 420].On June 5, 2014, the Court

entered an order [D.I. 849] authorizing the joint administration and procedural consolidation of

the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  On October 27, 2014, the

U.S. Trustee appointed another official committee of unsecured creditors pursuant to section

1102 of the Bankruptcy Code (the "<u>EFH Committee</u>" and, together with the TCEH Committee,

the "<u>Committees</u>") [D.I. 2570].  No entity has requested the appointment of a trustee or examiner

in these chapter 11 cases.

5.      A description of the Debtors' businesses, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the declaration of Paul Keglevic in support of Debtors' first day motions, filed on April 29, 2014 [D.I. 98] and incorporated herein by reference.

## Preliminary Statement

6.      During the Fee Period, Evercore provided necessary and requested investment banking and financial advisory services to the Debtors.  A summary of these services is provided below.

## The Debtors' Retention of Evercore

7.      The Retention Order was entered on September 16, 2014, and is attached hereto as **Exhibit A** and incorporated by reference.  The Retention Order approves Evercore's Fee and Expense Structure (as defined therein), pursuant to section 328 of the Bankruptcy Code, subject to the terms of the Retention Order.  (Accordingly, compensation is sought pursuant to sections 328 and 331 and not 330 of the Bankruptcy Code, but subject to the terms of the Retention Order.)

8.      As approved by the Retention Order, the Debtors engaged Evercore to provide the following services:[2]

    (a) reviewing and analyzing the Debtors' business, operations, and financial
        projections;

    (b) advising and assisting the Debtors in a Restructuring, Financing, and/or Sale,
        if the Debtors determine to undertake such a Transaction;

---

[2]    This summary is presented for convenience purposes only.  The Retention Order is controlling in all respects.
       Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the
       Retention Order.

(c) providing financial advice in developing and implementing a Restructuring, which would include:

    (i)     assisting the Debtors in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code (any such plans are referred to generically as the "Plan");

    (ii)    advising the Debtors on tactics and strategies for negotiating with various stakeholders regarding the Plan;

    (iii)   providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Debtors in any proceedings before the Bankruptcy Court; and

    (iv)   providing the Debtors with other financial restructuring advice as Evercore and the Debtors may deem appropriate;

(d) if the Debtors pursue a Financing, assisting the Debtors in:

    (i)     structuring and effecting a Financing;

    (ii)    identifying potential Investors and, at the Debtors' request, contacting such Investors; and

    (iii)   working with the Debtors in negotiating with potential Investors.

(e) if the Debtors pursue a Sale, assisting the Debtors in:

    (i)     structuring and effecting a Sale;

    (ii)    identifying interested parties and/or potential acquirors and, at the Debtors' request, contacting such interested parties and/or potential acquirors; and

    (iii)   advising the Debtors in connection with negotiations with potential interested parties and/or acquirors and aiding in the consummation of a Sale.

9.    The particular terms of Evercore's engagement are detailed in the engagement letter attached to the Retention Order.  The approved Fee and Expense Structure may be summarized as follows:[3]

---

[3]    This summary is presented for convenience purposes only and is not an exhaustive reflection of the fee and expense terms set forth in the Retention Order, which is controlling in all respects.

(a) **Monthly Fee:** $525,000 per month until a Restructuring or termination of Evercore's engagement.

(b) **Restructuring Fee:** $35 million for simultaneous Restructuring(s) of TCEH/EFCH and EFIH. But if a first Restructuring concerns only one of TCEH/EFCH and EFIH, then a portion of the $35 million Restructuring Fee will then be due based on time allocation and the remainder of $35 million due if and when a second Restructuring occurs. In either case, the aggregate Restructuring Fee is payable only once. There is no Restructuring Fee for certain modifications of existing obligations under the Debtors' existing liability management program or similar programs, certain immaterial modifications and modifications agreed by the Debtors.

(c) **Sale Fee:** $9 million, payable once, for a Sale of all or substantially all of either or both of TCEH/EFCH and EFIH. Sales that give rise to a Sale Fee also give rise to a Restructuring Fee.

(d) **DIP Financing Fee:** $11 million, payable once, for a first lien DIP Financing. Half of the DIP Financing Fee is due upon DIP Financing commitment, with the balance due upon approval of the DIP Financing by the Court.

(e) **Credits:**

    (i) *Monthly Fee Credit*: The first eight Monthly Fees, and the amount by which each subsequent Monthly Fee exceeds $400,000 (which will be $125,000 for a Monthly Fee of $525,000), are creditable against the Restructuring Fee.

    (ii) *DIP Financing Fee Credit*: $3 million of the DIP Financing Fee is creditable against the Restructuring Fee.

These credits are conditioned on full payment and final approval of the related fees and are subject to allocation.

(f) **Allocation:** Evercore's fees have been allocated in order to align them with the Debtors' economic structure and the interests of the Debtors' economic stakeholders.

    (i) *Timekeeping*: To facilitate allocation, Evercore's professionals will record whether hours expended providing services are attributable to TCEH/EFCH, EFIH, or EFH specifically, or are instead attributable more than one of these.

    (ii) *Monthly Fee*: Monthly Fees will be allocated to TCEH/EFCH, EFIH, and EFH in proportion to time spent by Evercore on each during the month.

6

(iii) *Restructuring Fee*:  The Restructuring Fee will be allocated amongst as many of TCEH/EFCH, EFIH, and EFH as are related to the Restructuring, in proportion to all allocated time spent by Evercore on each.

(iv) *Sale Fee*:  The Sale Fee will be allocated amongst as many of TCEH/EFCH, EFIH, and EFH as are related to the Sale(s), in proportion to all allocated time spent by Evercore on each.

(v) *DIP Financing Fee*:  The DIP Financing Fee will be allocated in proportion to the third-party DIP financing commitments provided by bank lenders, if any, relating to each of TCEH/EFCH, EFIH, and EFH.

(vi) *Credits:*  The Monthly Fee credit and the DIP Financing Fee credit will each be allocated to TCEH/EFCH, EFIH, and EFH in proportion to their allocable share of the underlying Monthly Fees or DIP Financing Fee.

(vii) *Alternate Allocation*:  Subject to Bankruptcy Court approval, the Debtors and Evercore may later agree to alter the allocations described in furtherance of the alignment goals described above.

(g) **Expenses:** The Debtors will pay reasonable and documented out-of-pocket expenses, including reasonable and documented cost of counsel.

### Description of Fees and Expenses

10.    Typical of investment bankers of its kind, Evercore is not compensated by the hour, but through a structure of fixed fees and related compensation, such as was approved by the Retention Order.  Accordingly, certain information appropriate to consideration of the fee requests of hourly-rate compensated professionals, such as blended rates or maturation, does not exist for Evercore.

11.    Evercore's fees and expenses during the Fee Period have been tentatively allocated as follows:[4]

---

[4]    As summarized above, Monthly Fee and expenses are allocated to Debtors based on time.

| | | | Monthly Fees | Expenses | |
|---|---|---|---|---|---|
| Debtors | Collective Unallocated | Collective Allocated | Total Fees | Collective Unallocated | Collective Allocated |
| EFH Corp. | 4.9% | 13.4% | $ - | $ - | $ - |
| EFIH | 31.8% | 86.6% | - | - | - |
| TCEH | 0.0% | 0.0% | - | - | - |
| Collective | 63.3% | 0.0% | - | - | - |
| Total | | | $ - | $ - | $ - |

12.    Reallocation may be required to give effect to the allocation of credits and other elements of the structure of fees set forth in the Retention Order.

**Summary of Services Rendered During the Fee Period**

13.    Evercore provided extensive professional services to the Debtors in connection with these chapter 11 cases, all at the direction of the Debtors or their counsel.  These services were performed at a high level of quality and were often subject to significant time constraints.  These services were necessary to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

14.    To provide a meaningful summary of its services provided on behalf of the Debtors and their estates, Evercore has established, in accordance with its internal procedures, certain subject matters categories (each, a "Matter Category") in connection with these chapter 11 cases.

15.    The following is a summary, by Matter Category, of the most significant professional services provided by Evercore during the Fee Period.  This summary is organized in accordance with Evercore's matter numbers.  The detailed descriptions below and the time records attached as **Exhibit B** demonstrate that Evercore was deeply involved in performing services for the Debtors on a daily basis, often including night and weekend work, to meet the

needs of the Debtors' estates in these chapter 11 cases.

(a)      **General Case Administration, Matter Category 1**

Total Hours: 29.0

16.      This category includes time spent by Evercore along, or in conjunction with the Debtors and their counsel and other professionals, in connection with the status or strategy of the case.  This category also includes time spent on general administration and management of the cases and review of court documents filed by the Debtors and other parties-in-interest, except as such related to retention. Furthermore, other work and analysis that are not included in more specific Matter Categories are included in this category.

17.      During the Fee Period, Evercore had frequent update calls with the Debtors and Debtor's counsel, Kirkland and Ellis LLP. Evercore also had numerous internal calls to discuss upcoming events in the case and discuss strategy. Evercore also often listened to court hearings over the phone. Evercore collaborated frequently with co-financial advisors, such as Alvarez and Marsal, on financial analyses related to the case.

(b)      **Due Diligence, Matter Category 2**

Total Hours: 2.5

18.       This category includes time spent by Evercore extending its understanding of the businesses of the Debtors, including by means of management calls, meetings, document review, site visits, internal discussions and analysis.  This category also includes time spent by Evercore extending its understanding of the industry in which the Debtors operate, understanding and conducting analysis of the Debtors' business plan, including reviewing, discussing and analyzing key operational and financial assumptions in the business plan, and reviewing other relevant industry-related documents and performing analysis.

19.      During the Fee Period, Evercore continued to perform general business due

diligence in order to increase its knowledge and familiarity with the nature of the various operations, inter-company relationships, and other operating and financial information that are necessary to provide restructuring and financial advisory services in complex cases like the Debtors'.  In particular, Evercore worked to analyze the ongoing status of the Asbestos / OPEB litigation and related claims. Evercore also spent significant time reviewing dataroom files and staying abreast of new developments at Oncor.

(c)      **Capital Structure and Debt Capacity Analysis, Matter Category 3**

Total Hours: 5.0

20.    This category includes time spent by Evercore evaluating the existing and pro forma capital structure and debt capacity of the Debtors. The primary focus during the Fee Period related to the Debtors' respective pro forma capital structures, including debt capacity and cost of debt.

(d)      **Financing, Matter Category 4**

Total Hours: 25.5

21.    This category includes time spent by Evercore evaluating various exit financing alternatives, including communicating with prospective lenders regarding exit financing, as well as conducting supporting diligence.

22.    During the fee period, Evercore worked with the Debtors to evaluate a variety of refinancing plans put forward by a major creditor, Elliott Management, during the course of ongoing negotiations.

(e)      **Asset Sales and Other M&A Activity, Matter Category 5**

Total Hours: 0.5

23.    This category includes time spent by Evercore advising the Debtors on the sale of

10

the Debtors' assets, including creating and distributing the process letter and other marketing materials, contacting potential buyers, assisting potential buyers with due diligence, structuring a potential transaction and negotiating with buyers.  In addition, this category includes time spent by Evercore on any other M&A activity of the Debtors.

24.    During the Fee Period, Evercore worked to monitor the progress of the merger with Sempra Energy, including the capital raise process and the regulatory approval process.

### (f)    Valuation and Recoveries Analysis, Matter Category 6

Total Hours: 5.0

25.     This category includes time spent by Evercore preparing and analyzing the valuation of the Debtors' businesses, including valuation of TCEH, valuation of Oncor, and analyzing creditor recoveries in various scenarios.

26.    During the Fee Period, Evercore worked to maintain a variety of recovery analyses that were used by the Company and advisors alike to monitor the preservation of value across the estate.

### (g)    General Financial Analysis and Research, Matter Category 7

Total Hours: 123.0

27.    This category includes time spent by Evercore preparing general financial analyses and conducting research that is not included in more specific Matter Categories.

28.    During the Fee Period, Evercore, at the request of the Debtors and/or their other professionals, performed numerous analyses, including, but not limited to, liquidity projections, claims calculations under various scenarios, calculation of alleged makewhole claims, implications of new financing, calculations of original issuance discount, tax calculations, warrant calculations, exit costs, and emergence cash analysis and adjustments. Evercore has also monitored the Debtors' debt trading prices and conducted general financial and restructuring-

related research.

      **(h)**    **Plan of Reorganization, Matter Category 8**

          Total Hours: 3.5

29.    This category includes time spent by Evercore assisting the Debtors in developing the Plan, Disclosure Statement and related documentation.

30.    Evercore had extensive discussions with the Debtors and their other professionals related to the Plan, including strategy, alternative timelines, feedback from stakeholders, and settlements with the various constituents.

31.    During the Fee Period, Evercore worked with Kirkland & Ellis to file a revised Plan and thoroughly reviewed the document upon filing.

      **(i)**    **Board Communication, Matter Category 9**

          Total Hours: 1.5

32.    This category includes time spent by Evercore participating in meetings, conference calls and various correspondences with the Debtors' Boards of Directors. The category also includes time spent drafting and developing presentations to the Boards of Directors and responding to the Boards' due diligence requests.

33.    During the Fee Period, Evercore, along with the Debtors' other professionals, participated in numerous discussions with the Boards of Directors and the conflicts advisors on a broad range of topics, including, but not limited to, strategic transactions, the proposed refinancing from Elliott Management, communications with creditors and other parties-in-interest, the Debtors' financial results and projections, recent developments in the chapter 11 cases, overview of key dates and timelines, and general strategic and other issues relating to the chapter 11 process.

### (j)    Creditor Communication and Due Diligence, Matter Category 10

Total Hours: 8.5

34.    This category includes time spent by Evercore negotiating and discussing a wide range of issues with creditors, the Committees, other parties-in-interest and their respective advisors. The category also includes time spent drafting and developing presentations and other materials for creditors and other parties-in-interest and in responding to their due diligence requests.

35.    During the Fee Period, Evercore responded to the informational requests from creditors and other parties-in-interest by first interfacing with the relevant personnel at the Debtors and other advisors to the Debtors. Then, Evercore prepared for and participated in various in-person and telephonic meetings with creditors and their respective financial and legal advisors.  Evercore also assisted the Debtors with preparing due diligence and presentation materials for creditor meetings and discussions.

36.    The Debtors and their advisors, including Evercore, participated in numerous in-person and telephonic meetings with individual stakeholders and creditor constituents to better understand their respective interests and facilitate constructive dialogue with and among the creditors regarding the Plan. In summary, creditor communications and due diligence efforts have required a significant amount of Evercore's resources due to the large number of parties-in-interest in these chapter 11 cases and our efforts to further the Plan process, among others.

### (k)    Court Testimony and Litigation Support, Matter Category 11

Total Hours: 66.0

37.    This category includes time spent by Evercore preparing for, and providing, declarations and other litigation support to the Debtors, in coordination with the Debtors' counsel and other professionals. The category also includes time spent responding to document requests

and subpoenas.

38.     During the Fee Period, Evercore assisted Kirkland & Ellis in their preparation of a variety of analyses for the Debtors, many of which were related to anticipated potential future depositions of David Ying.

### (l)     Travel, Matter Category 12

Total Hours: 5.0

39.     This category includes time spent traveling to and from the Debtors offices, to Court hearings or to other destinations on the Debtors' behalf.

### Actual and Necessary Expenses Incurred by Evercore

40.     The expenses for which Evercore requests reimbursement for the Fee Period are actual and necessary direct, non-overhead costs incurred in the course of rendering services to the Debtors. Evercore has charged internal black and white copies at 10¢ per page and color copies at 50¢ per page, consistent with the Fee Committee guidance, which reflects a discount to Evercore's standard copy charges. Consistent with the Fee Committee guidance, Evercore has charged in-office meals at cost, subject to a cap of $20.00 per person for each meal, and out-of-office meals at cost, subject to a cap of $40.00 per person for each meal, each reflecting a discount to Evercore's standard meal policy.  Evercore charges external copying and computer research at the provider's cost without markup. Only clients who actually use services of the types described are separately charged for such services. The effect of including such expenses as part of the overhead of Evercore would impose that cost upon clients who do not require such extensive services.

41.     During the Fee Period, expenses were incurred by Evercore's legal counsel in connection with document collection, review, and production conducted at the request of, in consultation with, and for the benefit of the Debtors.  These expenses primarily involved

collection, review, and production of documents in Evercore's possession that were potentially responsive to discovery requests served on the Debtors. Evercore's counsel reviewed these materials in order to identify and withhold privileged materials and materials that reflected confidential information belonging to clients from other engagements. The potentially responsive materials not falling into either of these categories were then provided to Debtors' counsel for responsiveness review. These legal expenses were necessary and beneficial to the Debtors' estates in enabling them to comply with their discovery obligations.

### Reasonable and Necessary Services Provided by Evercore

42.     The foregoing professional services provided by Evercore on behalf of the Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

43.     The time constraints imposed by the circumstances of these chapter 11 cases required Evercore's professionals to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtors. These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties in interest on a timely basis, and satisfy the demands of the Debtors' businesses and ensure the orderly administration of their estates. Consistent with Evercore policy, Evercore professionals who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs. Evercore's regular practice is not to include components for those charges when establishing fee structures, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services.

44.     In addition, due to the location of the Debtors' businesses, counsel, creditors, and other parties in interest in relation to Evercore's offices, frequent multi-party telephone conferences involving numerous parties were required. On certain occasions, the exigencies and

circumstances of these chapter 11 cases required overnight delivery of documents and other materials. The disbursements for such services are not included in Evercore's overhead and Evercore has made every effort to minimize its disbursements in these chapter 11 cases. The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

45.    Evercore has not shared or agreed or entered into any understanding to share any of its compensation with any other entity.

## Certification of Compliance and Waiver

46.    The undersigned representative of Evercore certifies that he has reviewed the requirements of Local Rule 2016-2 and that the Application substantially complies with that Local Rule except to the extent waived by the Retention Order or otherwise modified by orders of this Court and related guidance of the Fee Committee in this case, as permitted by orders of this Court establishing the Fee Committee and interim compensation procedures. To the extent that the Application does not comply in all respects with the requirements of Local Rule 2016-2, as so modified, Evercore believes that such deviations are not material and respectfully requests that any such requirement be waived.

## Reservation of Rights and Notice

47.    Although every effort has been made to include all fees and expenses incurred in the Fee Period, some fees and expenses might not be included in this Fee Application due to delays caused by accounting and processing during the Fee Period. Evercore reserves the right to make further application to this Court for allowance of such fees and expenses not included herein.

48.    Notice of this Monthly Fee Statement has been or will shortly be provided to all parties that have entered their appearance pursuant to Bankruptcy Rule 2002 and by hand or

overnight delivery on: (i) the Debtors, 1601 Bryan Street, 43rd Floor, Dallas, TX, 75201, Attn: Andrew M. Wright and Cecily Gooch; (ii) co-counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, Attn: Brian E. Schartz and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, Attn: Chad Husnick; (iii) co-counsel to the Debtors, Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801, Attn: Daniel DeFranceschi and Jason Madron; (iv) Roberta A. DeAngelis, the United States Trustee for Region 3, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Wilmington, DE 19801, Attn: Richard L. Schepacarter and U.S. Department of Justice, Office of the U.S. Trustee, U.S. Federal Building, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Andrea B. Schwartz; (v) counsel for the agent of the EFIH First Lien DIP Financing Facility, Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022, Attn: Ned Schodek and Fredric Sosnick; (vi) counsel for the agent of the TCEH DIP Financing Facility, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005, Attn: Evan Fleck and Matthew Brod; (vii) counsel to the TCEH Committee, Morrison & Foerster LLP, 250 W. 55th Street, New York, NY 10019, Attn: Lorenzo Marinuzzi and Jennifer Marines; (viii) counsel to the Fee Committee, Godfrey & Kahn, S.C., One East Main Street, Madison, WI 53703, Attn: Katherine Stadler and Carla Andres; (ix) co-counsel to the EFH Committee, Sullivan & Cromwell, LLP, 125 Broad Street, New York, NY 10004-2498, Attn. Judith Fiorini and Alexa Kranzley; and (x) co-counsel to the EFH Committee, Montgomery McCracken, Walker & Rhoads, LLP, 1105 North Market Street, 15th Floor, Wilmington, DE 19801, Attn: Natalie D. Ramsey and Davis Lee Wright.

## **No Prior Request**

49.    No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, Evercore respectfully requests that the Court enter an order awarding the compensation and reimbursements described herein on a final basis, authorizing and directing the Debtors to pay Evercore such fees and expenses to the extent not already paid and granting such other relief as is appropriate under the circumstances.

Dated: May 24th, 2018
New York, New York

/s/
David Ying
Senior Managing Director
Evercore Group L.L.C.

18