# EXHIBIT A

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

In re:                          :

ENERGY FUTURE HOLDINGS          :    Chapter 11

CORP., et al.,                  :    Case No. 14-10979(CSS)

        Debtors.            :    (Jointly Administered)


                    United States Bankruptcy Court

                    824 North Market Street

                    Wilmington, Delaware 19801


                    March 28, 2018

                    2:01 PM – 3:01 PM


B E F O R E :

HON CHRISTOPHER S. SONTCEHI

U.S. BANKRUPTCY JUDGE

## Page 2

1   A P P E A R A N C E S :
2   KIRKLAND & ELLIS
3       Attorney for the Debtors
4
5   BY:  MARC KIESELSTEIN, ESQ. (TELEPHONIC)
6       MARK MCKANE, ESQ. (TELEPHONIC)
7       APARNA YENAMANDRA, ESQ. (TELEPHONIC)
8
9   NORTON ROSE FULBRIGHT US LLP
10      Attorney for NextEra Energy
11
12  BY:  HOWARD SEIFE, ESQ. (TELEPHONIC)
13
14  ROPES & GRAY LLP
15      Attorney for Elliott Management Corporation
16
17  BY:  GREGG M. GALARDI, ESQ. (TELEPHONIC)
18
19  BAYARD P.A.
20      Attorney for Elliott Funds L.P., et al.
21
22  BY:  ERIN FAY, ESQ. (TELEPHONIC)
23
24
25

## Page 3

1   KASOWITZ BENSON TORRES
2       Attorney for Certain EFH Claimants
3
4   BY:  DAVID ROSNER, ESQ. (TELEPHONIC)
5   O'MELVENY & MYERS, LLP
6       Attorney for Apollo
7
8   BY:  DANIEL S. SHAMAH, ESQ. (TELEPHONIC)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## Page 4

1   Hearing re:  Telephonic Status Hearing
2
3   Hearing re:  Application of NextEra Energy, Inc. for
4   Allowance and Payment of Administrative Claim [D.I. 12671;
5   filed February 20, 2018]
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25  Transcribed by:  Dawn South

## Page 5

1                    P R O C E E D I N G S
2           THE COURT:  Good afternoon, counsel.  This is
3   Judge Sontchi and it's great to have the band back together
4   after a couple weeks of retirement.
5           I asked the parties to appear for a status
6   conference today in response to the motion filed by UMB and
7   Elliott with regard to the what I'll call the supplemental
8   admin claim filed by NextEra, and of course NextEra's letter
9   response which led to this status conference.
10          Late last night I got a letter from the plan
11   administration board, who I may accidentally call the
12   debtors at some point today, but for that I apologize, I do
13   mean the PAB, raising an issue with regard to the ongoing
14   dispute over allocation of certain expenses between EFH and
15   EFIH, and I subsequently today received and read a letter
16   from Elliott with regard to what the PAB had raised.
17          So unless the parties have agreed otherwise what I
18   would propose to do is to deal with the issue regarding the
19   motion to dismiss / motion for summary judgment on the
20   supplemental NextEra first and try to figure out what to do
21   with that, and when that's all taken care of we can turn to
22   discussing the debtors' letter and figure out how to proceed
23   with regard to that.
24          So unless anyone has an objection I think I would
25   turn it over to NextEra's counsel to make whatever

Page 6

1  presentation they would like to make to supplement their
2  letter, which sort of started this whole process in the
3  first place.
4        MR. SEIFE:  Thank you, Your Honor.  It's Howard
5  Seife at Norton Rose Fulbright on behalf of NextEra Energy.
6        And first I do want to thank the Court for
7  promptly scheduling the status conference.  At the time we
8  requested it we had no idea we would be poking a stick in a
9  hornet's nest here, but we'll leave that to later in this
10 conference.
11       What provoked our letter was the filing of the
12 motion to dismiss by the trustee and Elliott and to seek an
13 appropriate schedule for dealing with NextEra's, what you
14 referred to, Your Honor, as a supplemental administrative
15 claim, which is really in the alternative, which we made
16 clear in our application to the termination fee, which as
17 you know is before the Third Circuit.  That termination fee
18 is the $275 million amount, this supplemental application is
19 for out-of-pocket expenses in the amount of $60 million.
20       By way of background, NextEra made the application
21 in the alternative, and it is quite possible if NextEra
22 prevails in the appeal then this application will need not
23 go forward.  And I think that's important to keep in mind
24 when we talk about issues of judicial economy and how best
25 to proceed, because it seems clear that it would be wise to

Page 7

1  wait to see what the Third Circuit will do.
2        The parties have all been diligent in expediting
3  the appeal.  The Third Circuit took it on an expedited
4  basis.  It was a shortened briefing schedule.  All the
5  briefs have been filed.  An appeal has been tentatively
6  lifted for consideration on the merits on April 19th.  All
7  things considered it's an appellate process that's moving
8  forward very expeditiously.
9        NextEra filed the application when we did, even
10 though it was in the alternative, was primarily because we
11 are faced with an administrative claims bar date, which was
12 30 days after the effective date.  So it was clearly an
13 application that needed to be made or NextEra would lose its
14 rights and be prejudiced if it did not.
15       And secondly, we wanted to make sure the Court and
16 the parties were aware at the time of confirmation that this
17 alternative application was being made, Your Honor took note
18 of it at the confirmation hearing, and specifically did not
19 tie to reserve for the 275- into this supplemental
20 administrative claim application.
21       So that, to the extent there is a reserve for the
22 60-, will be left for a later day and might require further
23 requests to Your Honor, but it is not as things stands now
24 on the table.
25       The motion filed by the trustee and Elliott to

Page 8

1  dismiss this supplemental application seeks to have it heard
2  on April 25th with objections due April 6th.  Clearly we
3  will not have any indication from the Third Circuit what
4  their intentions are before the responsive date or even
5  certainly before the projected hearing date, and there are
6  several reasons to wait to see what the Third Circuit does
7  before we go forward with the NextEra application or these
8  objections.
9        One, as I said, if the Third Circuit reverses Your
10 Honor there'll be no need to go forward with this
11 application, so it makes perfect sense in terms of judicial
12 economy saving estate resources and others to wait to see
13 what the Third Circuit does.
14       Secondly, the Third Circuit's decision may not be
15 binary, it may not be a simple affirmance or reversal, the
16 Third Circuit may have some guidance on some of the issues
17 which may be relevant if we have to go forward with the
18 supplemental application.
19       So it makes perfect sense to wait to see what the
20 Third Circuit says, to see if there may be a remand for any
21 reason for further fact finding or determination.
22       So all in all we think it makes perfect sense to
23 maintain the NextEra application on hold as well as the new
24 motion made by Elliott and the trustee to wait for further
25 decisions and rulings from the Third Circuit.

Page 9

1        There really has been no basis that Elliott can
2  show for prejudice here.  As I said at this time the $60
3  million at issue has not been set aside or reserved.  Your
4  Honor has always been approachable by all the parties to
5  deal with timing issues as they come up or further issues
6  regarding setting aside any funds, if necessary.
7        So given the current state of play and clearly
8  based on the letters we have read in any event the estate
9  still has quite a bit of work to do before major
10 distributions are made.
11       So given the lack of prejudice to the parties and
12 the suggestion of conservation of resources all around we
13 think it's right to table the application and the opposition
14 until we've heard from the Third Circuit.
15       Thank you, Your Honor.
16       THE COURT:  Thank you, Mr. Seife.
17       I'll hear from either Elliott or UMB or whoever is
18 representing them separately or together.  I assume it's
19 Mr. Galardi, but I think he had a scheduling conflict so I'm
20 not sure who's here.
21       MR. GALARDI:  Your Honor, it is Greg Galardi and I
22 appreciate it, and one, I will apologize I've never done
23 this but I'm on a cell phone especially because my partner
24 back up had the fortunate pleasure of his wife going into
25 labor two hours ago.

                                    3 (Pages 6 to 9)

Page 10

1    THE COURT:  Well good for him.
2    MR. GALARDI:  So I will be doing the argument.  So
3 good for him on a happy note.
4    Your Honor, very, very briefly.  We do believe
5 there's going to be a delay, and the entire premise on which
6 the NextEra motion -- I'll call it a motion to continue or
7 adjourn or hold in abeyance without a motion on a status
8 conference letter sends the following.
9    If NextEra prevails on its appeal of this Court's
10 reconsideration order the application will not -- need not
11 go forward.  That's just simply not the case.  Your Honor,
12 there's three things as Mr. Seife said that can happen.
13    One, the Third Circuit affirms and we'll still
14 have this pending out there, we'll have to come back to Your
15 Honor on the reserve issue, and this issue will get, as
16 NextEra put before the Court at confirmation, the $60
17 million reserve issue if Your Honor is willing to release
18 that reserve.  In that context it simply comes up again.
19    If we wait until the appeal to the Supreme Court
20 is done then even if that appeal is affirmed all the way
21 there we go back this Court with the same 60- motion.
22    And therefore in all circumstances where there's
23 an affirmance there are further proceedings on this motion
24 and there are in fact delays to creditors in getting their
25 distributions.

Page 11

1    Let's take the other, let's assume that the Third
2 Circuit reverses Your Honor, there is still a pending
3 adversary before this Court brought by the debtors now taken
4 over by the plan administrator board that seeks to disallow
5 the termination fee on good faith grounds and other
6 contractual grounds.
7    This particular motion has alternative relief
8 similarly to have it being brought as alternative relief
9 when the first termination fee was heard or it's been heard
10 at that time.  Just because it's alternative relief doesn't
11 mean it doesn't get heard and doesn't rule.  In fact as it's
12 been put in front of Your Honor, Your Honor could have ruled
13 one, termination fee under the order was not allowed,
14 termination fee was or was not allowed for expenses on an
15 independent ground.
16    So we simply do not believe this is a speculative
17 advisory opinion, we do not think it's resolved, and if
18 there is a remand on factual matters then this will simply
19 be joined again.
20    So, Your Honor, we think Your Honor has ruled on
21 the reconsideration order, we have an independent basis
22 being asserted for the 60 million, and there is simply no
23 reason that this is not ripe to be adjudicated by Your
24 Honor.  And at the end our response we in fact do rely on
25 the reconsideration order, but the primary part of their

Page 12

1 response is on whether you want to apply a 7012 standard,
2 which Your Honor has the discretion to do, or you go on
3 7056, a summary judgment, they have not and could easily try
4 to raise a factual issue which we think there is none.
5    So, Your Honor, it is very standard and I've done
6 it before where Your Honor filed a summary judgment motion,
7 requested 7012, and it is not an expensive proceeding.  We
8 don't have to get into the whole claims objection and dollar
9 amount, and it is something that will be very important when
10 the Third Circuit ultimately rules and sets up the issues
11 that Your Honor has in the confirmation order as to whether
12 that reserve should in fact be released, whether that
13 reserve as NextEra requests it should be reduced to 60-,
14 this will be critical to that.  And important, NextEra is
15 not saying once the Third Circuit is done we're done.  It's
16 all the way to the Supreme Court and will in fact delay
17 creditor recoveries.
18    So we would ask Your Honor to put it on as
19 scheduled.  We set it for April 25th.  We did give a date of
20 April 6th.  We were never reached out to for a date to
21 respond.  They didn't file a motion to adjourn, which we
22 think is inappropriate in the context of a status conference
23 to do that.  We could have had it after we saw a motion to
24 adjourn.  And we would ask that it be put on a schedule, and
25 there is no reason that alternative relief cannot be heard

Page 13

1 concurrently with the Third Circuit appeal.
2    THE COURT:  Thank you, Mr. Galardi.
3    I guess I do have a question for you and I suppose
4 I know the answer.  But as it stands now I obviously
5 required the reserve of the 275 million, which is in and of
6 itself on appeal, but I specifically did not require any
7 reserve in connection with the supplemental application.
8 And were the court -- were the Third Circuit to affirm me,
9 which would certainly be outside the normal course, but were
10 that to occur there would be no reason the distribution
11 couldn't be made.  But I suppose your answer to that is you
12 would fully expect a motion from NextEra the next day or
13 even the same day seeking a reserve to prevent a
14 distribution at least to the amount of their supplemental
15 application.
16    MR. GALARDI:  In fact, Your Honor, that was
17 exactly the language that we and the debtors actually
18 opposed at confirmation.
19    THE COURT:  Right.
20    MR. GALARDI:  As you recall their proposal was
21 just drop it back to 60-.  Then we all thought about whether
22 there had to be a cost standard or not.
23    So absolutely, Your Honor, there is going to be,
24 even if the Third Circuit affirms on all grounds, you know,
25 simple opinion, NextEra will ask for the 60 million pending

4 (Pages 10 to 13)

Page 14

1  the appeal, and Your Honor, you still have to find that the
2  275- could be released, and that's -- you know, there is a
3  cost standard there.  So we will have to resolve this issue
4  at some point.
5      THE COURT:  Very good.  Thank you.
6      Before I turn it over back to Mr. Seife for any
7  reply I don't want to prevent anyone else who may wish to be
8  heard on this issue.  I know we have a lot of people on the
9  phone.  So is there anyone else who wishes to be heard on
10 this issue about the supplemental application?  Again,
11 holding the dispute about allocation for a later time.
12     MR. KEISELSTEIN:  Your Honor, Marc Kieselstein, on
13 behalf of the plan administrator board.
14     As you saw from our letter we're Switzerland on
15 this one, which I know is uncharacteristic for us, but we're
16 not taking a position.
17     THE COURT:  All right.  Thank you,
18 Mr. Kieselstein.
19     THE COURT:  All right, Mr. Seife?
20     MR. SEIFE:  Yes, just briefly, Your Honor.
21     I think what counsel has suggested is just a
22 myriad of possibilities which is virtually impossible at
23 this stage to predict as to what will happen with the Third
24 Circuit and what will transpire after that decision.
25 Mr. Galardi is assuming all sorts of actions by NextEra,

Page 15

1  which may or may not be true, but the state of play right
2  now is the 60 million is not set aside or escrowed and
3  everything remains in the control of Your Honor.  The
4  parties have shown throughout the appeal and related
5  proceedings we all know how to act expeditiously and move
6  things along.
7      So given that there's no money set aside right
8  now, and I'm sure if we sought based on what transpires
9  before the Third Circuit a request to have that money set
10 aside, I'm sure Mr. Galardi will put his arguments forward
11 to Your Honor and all of the harm that may come to
12 creditors.  So all of that remains to be see how it plays
13 out.
14     Your Honor has always shown himself to be
15 available to resolve timing issues, and it seems to me to
16 start this litigation now over this alternative expense
17 claim would seem to be a huge waste of everyone's time and
18 judicial resources.
19     THE COURT:  All right.  Thank you.
20     MR. GALARDI:  Your Honor, very briefly.
21     THE COURT:  Yes, of course.  Yeah, that's fine.
22     MR. GALARDI:  We do not doubt Your Honor could
23 resolve these in a very short order.  The only issue is Your
24 Honor has made factual findings and rulings, this is a
25 motion that is ripe, just because it's the alternative it's

Page 16

1  not mooted, and the fact of the matter is if Your Honor
2  resolves this we don't have 30, 40, or 60 days, and it's
3  simply disingenuous of Mr. Seife to say, oh, well we may not
4  come back for the 60-, they have 275- in reserve, we already
5  know they were negotiating down to get back 215- and still
6  have the 60-.  So we know how this is going to play out
7  whether it's affirmance or reversal.
8      THE COURT:  All right.  Thank you very much.
9  Thank you gentlemen.
10     You know, it's kind of interesting in that it's,
11 you know, a request for administrative expense claim is in
12 effect a motion, but of course until someone notices a
13 motion that they file on the court's notice for a hearing,
14 you know, nothing happens, and we're in this weird kind of
15 position where NextEra has filed their supplemental request,
16 completely appropriately vis-à-vis timing, and timely filed
17 it, but haven't taken any further steps, haven't noticed it
18 for a hearing, et cetera, and we have the objector who's
19 sort of said we don't want to wait, we have a motion to
20 dismiss / motion for summary judgment and we'd like to
21 proceed.
22     I understand NextEra's argument about inefficiency
23 -- judicial inefficiency, but I think that Mr. Galardi has
24 the better argument on sort of the inevitability of having
25 to decide this issue.  Only if the Third Circuit reverses

Page 17

1  and only if on remand in an adversary proceeding and a trial
2  I find in favor of NextEra, and only if NextEra then
3  prevails on the inevitable appeals that would result from
4  that finding does this issue not occur, this issue should
5  not have to be dealt with with the Court.
6      There's a whole host of things that have -- that
7  can happen that are frankly more likely to happen just given
8  basic probability theory that will require the Court to deal
9  with the supplemental application at some point in time.
10     I'm certainly not ready to schedule a trial on the
11 merits of the supplemental application, I don't think that
12 appropriate, I'm certainly not ready to issue a discovery
13 schedule in connection with the supplemental application, I
14 think that would require further thought by the Court,
15 because there is a balancing here as to the efficiency of
16 wasting not only judicial resources but the parties'
17 resources, and to say that the parties have spent enough
18 money already in this case is of course the understatement
19 of the year.
20     So that said briefing a motion to admission /
21 motion for summary judgment is in and of itself not free of
22 course, but is not particularly onerous with regard to the
23 parties' wallets, and I think is the possibility of moving
24 this issue forward in a way that might limit the amount of
25 time and effort that has to be spent in the future.

5  (Pages 14 to 17)

Page 18

1  Before I say anything further I just want a
2  clarification maybe from Mr. Seife. The matter has been
3  scheduled for disposition on the 19th. That's not oral
4  argument, that's the court having a meeting -- the panel
5  actually meeting and trying to decide whether -- how to
6  proceed; is that correct?
7  MR. SEIFE: No oral argument has yet been
8  scheduled.
9  THE COURT: Okay.
10  MR. SEIFE: So that sounds right, Your Honor.
11  THE COURT: Okay.
12  MR. GALARDI: Your Honor, on that the court has
13  told us if there is oral argument it'll be the week of the
14  16th and tentatively scheduled the 19th. I think they have
15  a ten day in advance to say whether that will ever -- that
16  actually go forward with oral argument.
17  THE COURT: All right. My knowledge of Third
18  Circuit procedure is woeful, so thank you for the
19  clarification.
20  All right. So what I'd like to do is treat this
21  like it would be treated as if it were a motion in an
22  adversary proceeding before the Court, which would be to
23  apply the briefing rules to the actual motion that normally
24  would apply, not set the matter for oral argument or a
25  hearing until the Court's had an opportunity to review the

Page 19

1  briefs and decides whether it wants oral argument and when
2  it wants oral about.
3  So I would like the answering brief of NextEra 14
4  days from today, which is April 11th, with a reply by
5  Elliott on the 18th, and then if you would submit that under
6  certification of completion of briefing to the Court I will
7  turn to it as quickly as possible and determine whether to
8  hear oral argument.
9  I will -- I can't imagine being in a position to
10  hear it on the 25th of April when we have an omnibus
11  hearing, so it'll be some time after that, and I'll keep the
12  parties apprised, but that's how I'd like to deal with this
13  specific issue.
14  Now, I don't need discovery, no depositions, no
15  other motion practice, this is a discrete issue. I am -- I
16  expect, although I'm speculating that one of the responses
17  is the matter is not ripe for summary judgment, if that's
18  the case we'll brief that, but we won't get into the issue
19  of actually taking any discovery until the Court has an
20  opportunity to review the briefing. So it's a pretty
21  discrete issue here. One brief left to come from NextEra
22  and a reply from Elliott and then we'll just decide how to
23  proceed from there.
24  MR. GALARDI: That's fine with Elliott, Your
25  Honor. Thank you.

Page 20

1  THE COURT: You're welcome.
2  MR. SEIFE: Thank you, Your Honor.
3  THE COURT: All right.
4  MS. FAY: Your Honor, this is Erin Fay on behalf
5  of Elliott and UMB can we dispense with this seven-day
6  waiting period under Local Rule 7007-4 for the notice of
7  completion of briefing and just file it after our reply
8  brief?
9  THE COURT: Yes.
10  MS. FAY: Okay. Thank you.
11  THE COURT: Thank you for reading the local rules,
12  I'm glad somebody does.
13  MR. GALARDI: I'm pretty embarrassed, Your Honor,
14  by being on the local rules committee.
15  THE COURT: I know Mr. Galardi is on the
16  committee, he should feel embarrassed. Thank you, Ms. Fay.
17  Okay.
18  MR. KEISELSTEIN: Your Honor, it's Marc
19  Kieselstein, can I proceed with the other item?
20  THE COURT: I was about to turn to you,
21  Mr. Kieselstein. So yes, please proceed. I've read your
22  letter and I've read Mr. Galardi's letter.
23  MR. KEISELSTEIN: Thank you, sir. And I'm joined
24  by my colleagues, Mark McKane and Aparna Yenamandra.
25  Your Honor, you may have read the letter as sort

Page 21

1  of a plaintiff cry for help. And in some ways it is. Your
2  Honor's well familiar with the allocation issues, we've
3  talked about them from time to time for a number of months,
4  and as Your Honor is aware preemergence, preconfirmation the
5  disinterested directors for both EFH and EFIH and the
6  respective advisors have been working feverishly to reach an
7  agreement on the allocation of the certain claims, and I
8  think you're familiar with the three buckets, I won't repeat
9  them here. And the CRO as well as Mr. Horton, Mr. Wright,
10  and we exhorted the disinterested directors to ever greater
11  and more urgent efforts, and I know they had creditor
12  constituencies from both boxes in their ear on a pretty
13  constant basis to try to get this resolved, because our
14  overriding desire is to push distributions out the door as
15  quickly as possible.
16  Regrettably obviously the disinterested directors
17  were not able to reach a settlement to put before Your Honor
18  before emergence, and upon emergence the disinterested
19  directors were no longer there and we had the plan
20  administrator board, in the person of Mr. Horton, take over,
21  and at that point we continued to urge the stakeholders, who
22  are all sophisticated parties, to try and reach resolution
23  on these issues themselves with again Mr. Horton and
24  Kirkland and Evercore being willing to provide neutral
25  information, which is sort of how we got to the big

6  (Pages 18 to 21)

1    intercompany settlement back years and years ago.
2        The failure of there to be an allocation solution
3    prior to emergence meant that we ended up with the
4    economically irrational but unavoidable double reserve where
5    we have, you know, money put aside on account of EFH, we
6    have money put aside on account of EFIH, you add up those
7    amounts of money it's more than these buckets could ever
8    require to be filled, but that's the nature of it.
9        We obviously tried to put tension on the line by
10   including a provision in the plan and the confirmation order
11   that the plan administrative board would seek to allocate
12   the 275- as soon as practicable following confirmation and
13   try to get all that done and get an order in within 40 days
14   of filing of the -- filing of the confirmation order or of
15   emergence rather, and we're well into that period now.  And
16   we haven't seen a deal.
17       There may be an emerging deal, which I'll talk
18   about in a minute, and obviously we would view an emerging
19   deal that had kind of critical mass behind it as a very good
20   development and one which would likely supersede our
21   request, which I'll get to in a moment, that the parties put
22   their positions on the record and tee this up so we can just
23   move the ball forward.
24       Your Honor, as we laid out in the letter there was
25   an anticipated distribution to the non-quals, as we call

1    them, those are mostly retirees not insiders that Your Honor
2    will recall, did not get their lump sum payments during the
3    case and have been waiting a good long time to really use
4    those funds.
5        We had slated a distribution to be made, but
6    unfortunately in the absence of not just a resolution but in
7    the absence of any goal posts put around the parties'
8    demands we simply could not safely do that without
9    potentially having a shortfall down the road, and obviously
10   that's not a tenable option.
11       We considered a number of options, we considered
12   having the plan administrator board in the person of
13   Mr. Horton put forth his own proposal as to what he thinks
14   is fair.  I would note that, you know, we don't view this as
15   a conflict matter anymore because both EFH and EFIH have
16   emerged from bankruptcy and are controlled and owned by
17   Sempra and are not really part of the equation anymore,
18   there's one plan administrative board, it's a unitary body,
19   and so we think, you know, we could go down that road, but
20   we don't want to gun jump a potential deal between the
21   creditors who have the most at stake, who have money on the
22   line, and EFH and EFIH.  And so again, we've been urging and
23   exhorting parties to get together.
24       We understand and we were told last night that
25   there's an agreement in principle between Elliott on the one

1    side, and to be clear, and I don't think Mr. Galardi will
2    take issue this, Elliott is wearing it's sort of EFIH hat
3    even though it is a large creditor at both EFIH and EFH.  By
4    (Indiscernible) of arithmetic every dollar that goes to EFIH
5    is worth more to Elliott than every dollar that goes to EFH.
6    So EFIH wearing -- I'm sorry -- Elliott wearing its EFIH hat
7    appears to have reached a settlement in principle with
8    certain EFH creditors.
9        We're aware, although we are not going to discuss
10   on this call, the terms of the splits that would be involved
11   here, and we are not aware of exactly who is on one side of
12   the arrangement, how much they hold in EFH claims, whether
13   there's a small or large group of other EFH creditors who
14   are or would be on board for this settlement or would be
15   categorically opposed to the settlement.
16       So, you know, we're certainly encouraging that
17   process to continue to develop if it's going to lead
18   anywhere, we're not sure if it will or it won't.  We've
19   obviously, you know, had some false springs before regarding
20   settlement of these issues that have not panned out.
21       So you know, at our wits end in effect we have put
22   out the idea, and it's not without precedent in this case,
23   Your Honor, that parties in an allocation dispute put their
24   proposals on the line, they've certainly had months and
25   months to think about and have thought about and thought

1    about what the proper allocation should be and why they
2    think those allocations are fair, and in the absence of
3    peace breaking out, you know, asking the Court to decide.
4        We're looking for guidance on whether Your Honor
5    thinks that's appropriate, we're looking for guidance
6    frankly on whether Your Honor would be comfortable with the
7    plan administrative board, you know, putting his own
8    position out there in light of the fact that some folks may
9    view that as a conflict situation, we want to not have a
10   situation as we had a few years back where decisions were
11   reached and Your Honor felt that there were conflict issues
12   that needed to be dealt on the front end.
13       So when you boil it all down we want to move the
14   ball forward, we want to get people their distributions.  We
15   suggest in the absence of a settlement breaking out that
16   people submit their positions, and I know, you know, we've
17   got Easter and Passover weekends coming up, there's no magic
18   around April 4th, we don't pretend that there is, but on
19   some date to get this teed up for Your Honor so folks,
20   especially the non-qualified retirees, can get their cents
21   on the dollar that they've been waiting for lo these many
22   years.
23       Happy to address any questions Your Honor has, but
24   that's kind of where -- what our thinking is.
25       THE COURT:  Thank you, Mr. Kieselstein.

Page 26

1      Mr. Galardi?
2      MR. GALARDI:  Sure, Your Honor.  I think we do not
3  disagree that Elliott has been representing the EFIH side
4  and had worked with Mr. Levin when he was representing a
5  disinterested director and worked with Mr. Thomas, so we
6  have been pushing it.  As I mentioned in my letter we were
7  close but a faction did come in and the EFH trustee -- a
8  disinterested director decided not to proceed or we were not
9  close enough and did not want to fight that issue.
10      I think the fundamental issue here, and I hate to
11 raise these issues over and over again, is the fact of the
12 matter is to get a letter at 10 o'clock last night asking
13 for what is clearly guidance to me, advisory opinion on
14 provisions that implicate the plan.
15      The plan says two things are very important.  They
16 will work in good faith to file a motion.  He can file a
17 motion if they want to.
18      The second thing is if anybody is upset and we
19 would love the distributions to go out to the non-quals,
20 they have a mechanism in the plan to seek to force the
21 issue.
22      What is also troublesome in the letter is this has
23 not been an issue that they were not aware of when we had
24 the reserve, when we had discussions with Mr. Levin, I won't
25 get into the settlement discussions, about the allocation of

Page 27

1  the termination fee.  We have been very clear that the term
2  fee would be no less than 50 percent.  And so that would
3  only leave $71 million left to distribute.
4      We are prepared to have a motion -- we have
5  negotiated a settlement, but frankly, Your Honor, it's
6  inappropriate to get on a status conference, ask for
7  substantive relief for a procedure asking parties on very
8  complicated issues that go back to the history of this case,
9  regarding asbestos settlements, regarding non-consolidation
10 issues, regarding the allocation of professional fees,
11 regarding the allocation of the termination fee, substantial
12 contribution claims, to do so on four days without a motion
13 is simply inappropriate.
14      So we would ask Your Honor if they want to file a
15 motion then they can file a motion, as we've said in the end
16 of our letter.  We are hopeful that we can get the PAB to
17 support a settlement.  It would be a much easier standard
18 and we have worked months and months and spent lots of money
19 trying to get such a settlement with the EFIH and EFH
20 trustee and disinterested directors, but that's the
21 appropriate mechanism, not getting a letter and making a
22 substantive request at 10 o'clock last night on a status
23 conference without a motion is simply not appropriate.
24      THE COURT:  Thank you, Mr. Galardi.
25      Before I turn it back over to Mr. Kieselstein does

Page 28

1  anyone else wish to be heard on this issue?
2      MR. ROSNER:  Yes, Your Honor.  It's David Rosner
3  of Kasowitz Benson Torres on behalf of certain of the EFH
4  claimants in this case, the actual relatively large holders
5  of the economic interests at EFH.  And on some points we
6  agree with Elliott, on others we don't, and I'd like to just
7  bring those points to Your Honor.
8      At this point we have been engaged specifically to
9  address, negotiate, if possible, and if not litigate the
10 allocation issue with which, you know, the Court is aware.
11      We also had of course no prior notice of
12 Mr. Kieselstein's letter, the content of the letter, the
13 request for, you know, emergent briefing over a holiday
14 weekend, or this, you know, supposed agreement in principal
15 among certain parties, Elliott on the one side and certain
16 others on the other side.
17      Your Honor, we're not strangers to the parties
18 here, we've been in front of Your Honor in a different
19 capacity before, but to the specific parties in front of
20 Your Honor on the allocation issues we're not strangers to
21 those parties.  We've engaged with Elliott as well as with
22 EFH in its prior iteration over the last several weeks and
23 we've specifically advised Elliott of, you know, the
24 creditors we represent and what they're holdings were over a
25 month ago.

Page 29

1      And today based upon the letters that were filed
2  last night and this morning, you know, the group has grown
3  substantially and most likely will grow substantially to
4  include holders of the very large, if not the largest, non-
5  Elliott interest at EFH.
6      THE COURT:  I'm sorry, I'm going to interrupt.
7  Have you filed a 2019?
8      MR. ROSNER:  We have not, Your Honor.  As
9  Mr. Galardi pointed out, we did not expect to be in front of
10 Your Honor at all.  We certainly, you know, understand our
11 responsibilities and we're planning on filing our 2019,
12 which is now basically stale based upon what's happened, but
13 before we were going to be filing any -- you know, any
14 papers taking positions before Your Honor.  You know, we
15 filed our 2019 statements before when we represented EFH
16 legacy bonds --
17      THE COURT:  Right.
18      MR. ROSNER:  -- and also we advised Elliott who we
19 were representing.  And I do need to get that on file.  We
20 understand our responsibilities, we will do it, you know, as
21 soon as we kind of gel where the group is right now.  Like I
22 said, it's kind of growing and we expect it to grow over the
23 next 24 hours --
24      THE COURT:  All right.
25      MR. ROSNER:  -- as it has over the last 16 hours.

8 (Pages 26 to 29)

Page 30

1    THE COURT:  Okay.  Well you do need to do that,
2  and of course you can supplement it.  I mean -- and the
3  reason I say you do need to do that is you're speaking to
4  the Court now, so you're appearing on behalf of a group of
5  people, which is fine, but please try to get at least an
6  initial statement on the record as soon -- on the docket as
7  soon as possible, and of course you can supplement it as
8  your group changes, as you have to.
9    MR. ROSNER:  Yes.  We absolutely will, Your Honor.
10  I appreciate the indulgence.  You know, like I said, up
11  until 10:00 or 11:00 last night we did not expect in any way
12  to be at this status conference.
13    THE COURT:  No problem.  And I'm sorry to
14  interrupt you, so go ahead.
15    MR. ROSNER:  Yeah, and we agree with Elliott on
16  the point that this process that's being asked for by the
17  plan administrator board at this point is not necessary.  We
18  do think it's prejudicial to issues that I think both the
19  board as well as Elliott admit are, and we concur, are
20  complex and very fact intensive.  Nobody of course seeks
21  delay, but you know, after four and a half years we don't
22  think there's a need to rush this issue over the next couple
23  of days, that I think will be, you know, somewhat
24  detrimental to the parties even if they can reach an
25  agreement.

Page 31

1    Mr. Kieselstein -- what really concerned us was
2  reading in one of two lines of an unsigned, undocumented
3  agreement in principle with Elliott, that Elliott then sends
4  in a letter saying that it's in the process of documenting
5  and things it can do over the next day or so.
6    We understand, because we've tried to quickly find
7  out what's going on, we understand that Elliott and one or
8  two of the smaller holders on the EFH side maybe have
9  reached an agreement in principle.  I think Mr. Kieselstein
10  just said a moment ago that, you know, they would be guided
11  or at least would certainly want to hear from what would be
12  a critical mass on the EFH side.  There is no critical mass
13  on the EFH side -- on the non-Elliott EFH side that is part
14  of any, you know, agreement in principle.  And based upon
15  what Mr. Kieselstein said we understand that the board has
16  not agreed to anything nor is it, you know, proposing it at
17  this point.
18    And you know, again, we're kind of in the dark
19  here, this was just filed by letter.  We don't know much
20  about the so-called deal other than to say the following.
21  There is absolutely no agreement with the larger holders of
22  the non-Elliott economic interest at EFH, which are now
23  organizing as we just discussed.  We think that the term --
24  you know, that one or two smaller holders do not in any way
25  represent, you know, the EFH side or represent, you know,

Page 32

1  certainly the board itself or the EFH larger economic
2  interests.
3    And we also understand that -- again, we're trying
4  to piece this together -- that as Mr. Galardi said there
5  were, and I think Mr. Kieselstein also said, there were
6  prior discussions between the disinterested directors before
7  they no longer were serving these estates.  And what we do
8  understand is that anything that has been agreed to, if what
9  we're getting is right, is even well beyond what they were
10  talking about from the EFIH side.
11    So this is not something that is really ripe to be
12  heard or positions taken in the next couple of days.  We're
13  not even clear if Elliott is proposing to file a motion for
14  approval of a settlement that its gotten with one or two
15  holders, and we certainly can't stop Elliott or whomever
16  else from filing motions, which of course the Court may or
17  may not consider in due course or to go to the PA -- to the
18  plan administrator board, but fundamentally if this is going
19  to be litigated then there has to be a full and fair process
20  and opportunity so we can create a record on these discrete
21  but yet complex allocation issues so that there can be a
22  proper decision.
23    So we ask, Your Honor, it's kind of along the
24  lines of what Elliott said, is not to direct parties to file
25  anything by the 4th and we'll file our 2019, we will

Page 33

1  reengage with Elliott and the PAB, to the extent that that
2  could be productive, and we'll get prepared to put on a
3  record for Your Honor to decide these issues if they need to
4  be decided.
5    THE COURT:  Thank you.  Anyone else?
6    MR. SHAMAH:  Your Honor, Daniel Shamah of
7  O'Melverny & Myers on behalf of Apollo.  May I will heard
8  very, very briefly?
9    THE COURT:  Yes.
10    MR. SHAMAH:  Your Honor, as you may recall Apollo
11  is one of the larger TCEH first lien lenders on the T-side
12  cases and accordingly is one of the larger beneficial
13  holders of the intercompany claim, which itself is well
14  either the largest or, you know, second largest claim at
15  EFH.  I simply join in Mr. Rosner's comments entirely.
16    Thank you, Your Honor.
17    THE COURT:  Thank you, sir.  Anyone else?
18    Mr. Kieselstein, any reply?  I can't hear you so
19  you may be on mute.
20    MR. KEISELSTEIN:  Apologies, Your Honor, I was.
21  Your Honor, just a couple of brief points.
22    First it's challenging for me to reconcile what
23  Elliott is saying about the speed with which they can tee up
24  a settlement motion for you and the fact that it would be a
25  burden to then to have to submit their positions on

Page 34

1  allocation in a relatively and brief amount of time.
2      Everyone on this call, with the exception of the
3  gentleman from O'Melveny, I've had discussions with and
4  they've been looking at these allocation issues for any
5  number of months, and the idea that they don't have well-
6  developed positions on what they think allocation should be
7  and why it should be, you know, X and not Y, and the truth
8  of the matter is these really go to the question of what
9  services were provided for what estate, what fees ought to
10  be chargeable to what estate.  There's -- this is not
11  complicated legal issues per se, it's really what's fair in
12  terms of allocation.
13      So I don't think there's a ton of extensive legal
14  research and briefing that needs to be done on these one off
15  sorts of issues.
16      So we can stand on ceremony and we could, you
17  know, file a motion on regular notice and at that point the
18  Court could, you know, set a schedule for parties to submit
19  the positions, which I believe they already are fully up to
20  speed on and know, that will further obviously delay
21  distributions, which we don't view as a positive
22  development.  So we think really all the parties here are
23  ready to go.  And we're all big boys and girls and I don't
24  think, you know, teeing off a status conference such as this
25  with a request that parties put their positions in writing

Page 35

1  before the Court, which happens every day and we think could
2  be done via letter briefs frankly, is an onerous or
3  unreasonable requirement.
4      But again, obviously if Your Honor wants us to
5  jump through more procedural hoops to tee up these ripe
6  issues that's what we'll do, we just think that's to the
7  detriment of everybody on this call and we're at a loss to
8  understand why.
9      THE COURT:  Okay.  Thank you, Mr. Kieselstein.
10  Well I'm in a kind of odd properly posture here, and
11  procedure does matter, but the question I have is, and it's
12  a rhetorical one, is you know, what would I do with those
13  statements?
14      So were I to require the parties to put in a
15  letter brief addressed to me by a date some time in the near
16  future what their position is on what the allocation should
17  be, other than educating me as to the parties' positions I
18  don't actually have anything I can do with that information
19  absent an affirmative request for relief being made in some
20  manner pursuant to motion or otherwise, almost certainly
21  pursuant to motion.
22      Where it might help me -- what it might help me to
23  do -- and there are things I can do sua sponte, so I'm not
24  saying I'm powerless without a motion -- but one of the
25  things that might help me decide is whether to send y'all to

Page 36

1  mediation based on, you know, looking at how far the parties
2  are apart or what parties respond, et cetera.
3      But my gut on this one is that we're just not
4  ready for mediation even though the history here goes back
5  literally years and the issues are somewhat well-developed.
6      I think that based on my experience private
7  negotiation without the help of a mediator, judicial or
8  otherwise, is probably the most constructive way to proceed
9  at least in the near future.  I'm not saying it wouldn't
10  help at some point to appoint a mediator, but I don't really
11  feel that that's what's appropriate here, and that's really
12  the only thing that I can see me being able to do that's
13  constructive based on getting or receiving the information
14  that the debtors seek.
15      Now, making everybody show each other what their
16  bottom line is might be helpful I guess for purposes of that
17  private negotiation, but again, you're publicly filing
18  positions on the docket, people are going to take the most
19  extreme position.  So it's not even particularly helpful,
20  because everyone is going to be incentivized to take an
21  extreme position as opposed to what their real deal terms
22  are.  So I don't see it accomplishing much with regard to
23  that.
24      MR. KEISELSTEIN:  Your Honor, can I --
25      THE COURT:  I am -- go ahead, Mr. Kieselstein.

Page 37

1      MR. KEISELSTEIN:  I was just going to react --
2      THE COURT:  I was on a roll, but that's all right.
3      MR. KEISELSTEIN:  -- to each suggestion.  You're
4  always on a roll, Your Honor.
5      So what I would say is and I think back just a few
6  months to the dividend distribution issue with Encore where
7  Judge Carey actually, you know, played an extremely valuable
8  role in bringing together, you know, Sempra and Elliott and
9  the debtors and that led to a fruitful settlement and
10  avoided a great deal of time, cost, and expense and
11  potentially even jeopardizing the transaction itself.  And
12  as I think about the factual development of those issues,
13  which were relatively fresh as compared to these issues, I
14  think these issues are as well postured and positioned as
15  those were frankly for mediation.
16      So not to disagree with you, Your Honor, but I
17  think the mediation route, if we're not able to otherwise
18  get this teed up in the near term, is an option that's well
19  worth considering.
20      THE COURT:  Well I'm always open to mediation.  I
21  would point out, I think there's some significant
22  differences.  That particular issue was a very discrete
23  issue, it was a smaller issue in connection with a much
24  larger transaction, not insignificant, but a smaller issue
25  and was pretty narrow, and even that took, according to what

Page 38

```
 1   I understand, even that took many sessions and quite some
 2   time.  And importantly I think that there was real buy in on
 3   the process by Elliott, Sempra, and the debtors, and I'm not
 4   sure -- I haven't gotten the vibe -- no one has asked me yet
 5   other than you sort of just asking me right now -- so no one
 6   has asked me yet for mediation and people are always free to
 7   ask, but one of the key things in deciding whether to send
 8   people to mediation is whether the parties who are going to
 9   participate buy into the process, and you have to have done
10   a certain amount of work and head banging and due diligence
11   to be ready to buy into the process.  And I'm not saying
12   people haven't diligenced this thing, it sounds like it's
13   been diligenced to death, but until I get a broader
14   consensus or a vibe of my own I don't see sending it to
15   mediation, and I'm certainly not going to order it today,
16   but I'm always open --
17            MR. KEISELSTEIN:  Sure.
18            THE COURT:  -- to the issue.
19        So I don't know what I would do with the
20   information were I to require it, and I'm not sure it would
21   be particularly constructive.
22        So it actually puts us in a place where I think
23   unfortunately it's a blunt tool and an expensive one, but
24   unfortunately I think I have to look to the plan
25   administration board and say look, if you want to move this
```

Page 39

```
 1   forward in a direction that you don't feel is being
 2   adequately done through negotiation you really are going to
 3   need to file some sort of motion, maybe your own proposal,
 4   schedule it for a hearing, and people can respond.  It's an
 5   expensive way to proceed and a bit of a clumsy one, but if
 6   negotiations are stalled or not getting anywhere that may be
 7   the way you have to proceed.
 8            And I hate to tell you -- I hate to tell people to
 9   the more inefficient way, but sometimes we have to balance
10   inefficiency with due process and proper procedure, and
11   proper procedure here I think is to do what the plan
12   contemplates, which is to file some sort of motion.  And the
13   best motion in the world to file in Bankruptcy Court is a
14   settlement motion, and they almost always get granted just
15   because judges love them so.  If you can reach one terrific,
16   if not set it up for a contested motion and we'll figure out
17   whether to have a hearing and argument and evidence.  I
18   don't know, we'll have to figure it out depending on how the
19   motion reads.
20            We have an hour on April 25th, so don't get
21   excited about doing it an omnibus because it would almost
22   certainly require a much longer amount of time.  So that's
23   where I come out.
24            MR. KEISELSTEIN:  Your Honor, one question.
25            THE COURT:  Sure.
```

Page 40

```
 1            MR. KEISELSTEIN:  This is Marc Kieselstein again.
 2        Just at the risk of Mr. Galardi accusing me of
 3   soliciting an advisory opinion --
 4            MR. GALARDI:  Don't even go there because I know
 5   what you're going to ask.
 6      (Laughter)
 7            MR. KEISELSTEIN:  We did raise the issue of
 8   whether, you know, this is a -- would be perceived as a
 9   conflict for the plan administrative board to actually take
10   a substantive position with the -- in the presence of
11   parties just kind of stop fussing and fighting as to what
12   the plan administrative board thinks is a fair outcome.  And
13   you know, we don't want to do that and have someone get
14   their head cut off for having attempted to do the right
15   thing --
16            THE COURT:  Well look, that is an advisory
17   opinion, so -- but it -- I find it hard to believe -- well
18   no, that's not right.  I find it difficult to accept an
19   argument that a fiduciary for two different estates where
20   the entire issue is which estate gets more than the other
21   estate is not conflicted.
22            MR. KEISELSTEIN:  Appreciate that, Your Honor.  So
23   when we talk about the plan administrator board filing a
24   motion it's in essence to compel the parties I think to do
25   sort of what we mentioned in our letter, which is to compel
```

Page 41

```
 1   the parties to put their positions on the table since we're
 2   not in a position to take a position.
 3            THE COURT:  Well but I think the plan -- doesn't
 4   the plan give you the power to appoint -- doesn't the plan
 5   give Mr. -- oh, I can't remember -- oh, my goodness.
 6            MR. KEISELSTEIN:  Mr. Horton.
 7            THE COURT:  Mr. Horton.  I cannot believe I cannot
 8   -- I apologize.  Mr. Horton who I know well.  Doesn't it
 9   give Mr. Horton the ability to select representatives?
10            MR. KEISELSTEIN:  It does, Your Honor.  We could
11   replicate the disinterested director construct from the
12   olden days.  I'd say a couple of things about that.
13            THE COURT:  Which was hugely expensive to say the
14   least.
15            MR. KEISELSTEIN:  Yes.  Hugely expensive, would
16   prior no doubt other sets of professionals --
17            THE COURT:  Yeah.
18            MR. KEISELSTEIN:  -- would take the time for
19   people to get up to speed on these issues, and more
20   importantly, would in essence socialize the cost of whatever
21   positions the party would take.
22            We did receive a request on the EFH side from a
23   subset of creditors to consider that, but given that EFH
24   creditors may be of multiple minds here, you know, we could
25   end up, you know, just in a quagmire, Your Honor, and we
```

11 (Pages 38 to 41)

Page 42

1  were hoping for once to save the cost and expense of all
2  this to replicate or triplicate, you know, the professionals
3  here, not to go down that route.
4          THE COURT:  The last thing I want is to spend
5  another $60 million on a disinterested director process to
6  say the least.  Although it was hugely beneficial to the
7  estates and was worth the money at the time, the resources
8  are dwindling and the issues are narrowing, and it seems to
9  me that it would not be a particularly constructive way to
10  proceed, but I don't know what else to tell you, you're in a
11  bit of an odd -- you're in a difficult situation,
12  Mr. Kieselstein, your client represents two companies or two
13  estates that have divergent views on a key issue, so I'm not
14  quite sure how you proceed.
15          MR. KEISELSTEIN:  No one said I had to do this for
16  a living, Your Honor, I have only myself for blame.  But
17  yeah, look, we will obviously take and appreciate your
18  guidance and thank you for your willingness to give us some.
19  I will try to fashion the best mouse trap we can to move
20  this process forward.  It's a shame that creditors are being
21  waylaid by all this, but I don't know that there's any way
22  around it.
23          THE COURT:  We interrupted Mr. Galardi I believe.
24          MR. GALARDI:  No, Your Honor, it's good that you
25  interpreted me, I have nothing more to say.  Thank you.

Page 43

1          THE COURT: Okay. All right. Okay. Well as
2  always it's excellent to talk with you guys on interesting
3  issues and we made some decisions and we've made mostly --
4  not made decisions.
5          Is there anything else before we sign off?  Okay.
6  I hear none.
7          MR. KEISELSTEIN:  I was just going to say not from
8  the debtors, Your Honor.  Thank you for your time.
9          THE COURT:  Thank you, Mr. Kieselstein.  So we are
10  adjourned.  Thank you very much.  I hope everyone has a
11  pleasant Easter and Passover.
12          (A chorus of thank you)
13          (Whereupon these proceedings were concluded at 3:01 PM)
14
15
16
17
18
19
20
21
22
23
24
25

Page 44

1                    I N D E X
2                    RULINGS
3                                        PAGE
4  Supplemental Application                  18
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 45

1          C E R T I F I C A T I O N
2
3  I, Dawn South, certify that the foregoing transcript is a
4  true and accurate record of the proceedings.
5
6  _____
7  Dawn South
8  Certified Electronic Transcriber
9
10
11
12  Date:  March 29, 2018
13
14
15
16
17
18
19
20
21
22  Veritext Legal Solutions
23  330 Old Country Road
24  Suite 300
25  Mineola, NY 11501

**A**

abeyance 10:7
ability 41:9
able 21:17 36:12
    37:17
absence 23:6,7 25:2
    25:15
absent 35:19
absolutely 13:23
    30:9 31:21
accept 40:18
accidentally 5:11
accomplishing
    36:22
account 22:5,6
accurate 45:4
accusing 40:2
act 15:5
actions 14:25
actual 18:23 28:4
add 22:6
address 25:23 28:9
addressed 35:15
adequately 39:2
adjourn 10:7 12:21
    12:24
adjourned 43:10
adjudicated 11:23
admin 5:8
Administered 1:8
administration
    5:11 38:25
administrative 4:4
    6:14 7:11,20
    16:11 22:11 23:18
    25:7 40:9,12
administrator 11:4
    14:13 21:20 23:12
    30:17 32:18 40:23
admission 17:20
admit 30:19
advance 18:15
adversary 11:3
    17:1 18:22
advised 28:23
    29:18

advisors 21:6
advisory 11:17
    26:13 40:3,16
affirm 13:8
affirmance 8:15
    10:23 16:7
affirmative 35:19
affirmed 10:20
affirms 10:13
    13:24
afternoon 5:2
ago 9:25 22:1 28:25
    31:10
agree 28:6 30:15
agreed 5:17 31:16
    32:8
agreement 21:7
    23:25 28:14 30:25
    31:3,9,14,21
ahead 30:14 36:25
al 1:7 2:20
allocate 22:11
allocation 5:14
    14:11 21:2,7 22:2
    24:23 25:1 26:25
    27:10,11 28:10,20
    32:21 34:1,4,6,12
    35:16
allocations 25:2
Allowance 4:4
allowed 11:13,14
alternative 6:15,21
    7:10,17 11:7,8,10
    12:25 15:16,25
amount 6:18,19
    12:9 13:14 17:24
    34:1 38:10 39:22
amounts 22:7
answer 13:4,11
answering 19:3
anticipated 22:25
anybody 26:18
anymore 23:15,17
Aparna 2:7 20:24
apart 36:2
Apollo 3:6 33:7,10
Apologies 33:20

apologize 5:12 9:22
    41:8
appeal 6:22 7:3,5
    10:9,19,20 13:1,6
    14:1 15:4
appeals 17:3
appear 5:5
appearing 30:4
appears 24:7
appellate 7:7
application 4:3
    6:16,18,20,22 7:9
    7:13,17,20 8:1,7
    8:11,18,23 9:13
    10:10 13:7,15
    14:10 17:9,11,13
    44:4
apply 12:1 18:23
    18:24
appoint 36:10 41:4
appreciate 9:22
    30:10 40:22 42:17
apprised 19:12
approachable 9:4
appropriate 6:13
    17:12 25:5 27:21
    27:23 36:11
appropriately
    16:16
approval 32:14
April 7:6 8:2,2
    12:19,20 19:4,10
    25:18 39:20
argument 10:2
    16:22,24 18:4,7
    18:13,16,24 19:1
    19:8 39:17 40:19
arguments 15:10
arithmetic 24:4
arrangement 24:12
asbestos 27:9
aside 9:3,6 15:2,7
    15:10 22:5,6
asked 5:5 30:16
    38:4,6
asking 25:3 26:12
    27:7 38:5

asserted 11:22
assume 9:18 11:1
assuming 14:25
attempted 40:14
Attorney 2:3,10,15
    2:20 3:2,6
available 15:15
avoided 37:10
aware 7:16 21:4
    24:9,11 26:23
    28:10

**B**

B 1:23
back 5:3 9:24 10:14
    10:21 13:21 14:6
    16:4,5 22:1 25:10
    27:8,25 36:4 37:5
background 6:20
balance 39:9
balancing 17:15
ball 22:23 25:14
band 5:3
banging 38:10
bankruptcy 1:1,11
    1:25 23:16 39:13
bar 7:11
based 9:8 15:8 29:1
    29:12 31:14 36:1
    36:6,13
basic 17:8
basically 29:12
basis 7:4 9:1 11:21
    21:13
BAYARD 2:19
behalf 6:5 14:13
    20:4 28:3 30:4
    33:7
believe 10:4 11:16
    34:19 40:17 41:7
    42:23
beneficial 33:12
    42:6
Benson 3:1 28:3
best 6:24 39:13
    42:19
better 16:24

beyond 32:9
big 21:25 34:23
binary 8:15
bit 9:9 39:5 42:11
blame 42:16
blunt 38:23
board 5:11 11:4
    14:13 21:20 22:11
    23:12,18 24:14
    25:7 30:17,19
    31:15 32:1,18
    38:25 40:9,12,23
body 23:18
boil 25:13
bonds 29:16
bottom 36:16
boxes 21:12
boys 34:23
breaking 25:3,15
brief 19:3,18,21
    20:8 33:21 34:1
    35:15
briefing 7:4 17:20
    18:23 19:6,20
    20:7 28:13 34:14
briefly 10:4 14:20
    15:20 33:8
briefs 7:5 19:1 35:2
bring 28:7
bringing 37:8
broader 38:13
brought 11:3,8
buckets 21:8 22:7
burden 33:25
buy 38:2,9,11

**C**

C 2:1 5:1 45:1,1
call 5:7,11 10:6
    22:25 24:10 34:2
    35:7
capacity 28:19
care 5:21
Carey 37:7
case 1:7 10:11
    17:18 19:18 23:3
    24:22 27:8 28:4

cases 33:12
categorically 24:15
cell 9:23
cents 25:20
ceremony 34:16
certain 3:2 5:14
    21:7 24:8 28:3,15
    28:15 38:10
certainly 8:5 13:9
    17:10,12 24:16,24
    29:10 31:11 32:1
    32:15 35:20 38:15
    39:22
certification 19:6
Certified 45:8
certify 45:3
cetera 16:18 36:2
challenging 33:22
changes 30:8
Chapter 1:6
chargeable 34:10
chorus 43:12
CHRISTOPHER
    1:24
Circuit 6:17 7:1,3
    8:3,6,9,13,16,20
    8:25 9:14 10:13
    11:2 12:10,15
    13:1,8,24 14:24
    15:9 16:25 18:18
Circuit's 8:14
circumstances
    10:22
claim 4:4 5:8 6:15
    7:20 15:17 16:11
    33:13,14
claimants 3:2 28:4
claims 7:11 12:8
    21:7 24:12 27:12
clarification 18:2
    18:19
clear 6:16,25 24:1
    27:1 32:13
clearly 7:12 8:2 9:7
    26:13
client 42:12
close 26:7,9

clumsy 39:5
colleagues 20:24
come 9:5 10:14
    15:11 16:4 19:21
    26:7 39:23
comes 10:18
comfortable 25:6
coming 25:17
comments 33:15
committee 20:14
    20:16
companies 42:12
compared 37:13
compel 40:24,25
completely 16:16
completion 19:6
    20:7
complex 30:20
    32:21
complicated 27:8
    34:11
concerned 31:1
concluded 43:13
concur 30:19
concurrently 13:1
conference 5:6,9
    6:7,10 10:8 12:22
    27:6,23 30:12
    34:24
confirmation 7:16
    7:18 10:16 12:11
    13:18 22:10,12,14
conflict 9:19 23:15
    25:9,11 40:9
conflicted 40:21
connection 13:7
    17:13 37:23
consensus 38:14
conservation 9:12
consider 32:17
    41:23
consideration 7:6
considered 7:7
    23:11,11
considering 37:19
constant 21:13
constituencies

    21:12
construct 41:11
constructive 36:8
    36:13 38:21 42:9
contemplates 39:12
content 28:12
contested 39:16
context 10:18
    12:22
continue 10:6
    24:17
continued 21:21
contractual 11:6
contribution 27:12
control 15:3
controlled 23:16
CORP 1:7
Corporation 2:15
correct 18:6
cost 13:22 14:3
    37:10 41:20 42:1
counsel 5:2,25
    14:21
Country 45:23
couple 5:4 30:22
    32:12 33:21 41:12
course 5:8 13:9
    15:21 16:12 17:18
    17:22 28:11 30:2
    30:7,20 32:16,17
court 1:1,11 5:2 6:6
    7:15 9:16 10:1,16
    10:19,21 11:3
    12:16 13:2,8,19
    14:5,17,19 15:19
    15:21 16:8 17:5,8
    17:14 18:4,9,11
    18:12,17,22 19:6
    19:19 20:1,3,9,11
    20:15,20 25:3,25
    27:24 28:10 29:6
    29:17,24 30:1,4
    30:13 32:16 33:5
    33:9,17 34:18
    35:1,9 36:25 37:2
    37:20 38:18 39:13
    39:25 40:16 41:3

    41:7,13,17 42:4
    42:23 43:1,9
court's 10:9 16:13
    18:25
create 32:20
creditor 12:17
    21:11 24:3
creditors 10:24
    15:12 23:21 24:8
    24:13 28:24 41:23
    41:24 42:20
critical 12:14 22:19
    31:12,12
CRO 21:9
cry 21:1
current 9:7
cut 40:14

D

D 5:1 44:1
Daniel 3:8 33:6
dark 31:18
date 7:11,12 8:4,5
    12:19,20 25:19
    35:15 45:12
David 3:4 28:2
Dawn 4:25 45:3,7
day 7:22 13:12,13
    18:15 31:5 35:1
days 7:12 16:2 19:4
    22:13 27:12 30:23
    32:12 41:12
deal 5:18 9:5 17:8
    19:12 22:16,17,19
    23:20 31:20 36:21
    37:10
dealing 6:13
dealt 17:5 25:12
death 38:13
debtors 1:8 2:3
    5:12,22 11:3
    13:17 36:14 37:9
    38:3 43:8
decide 16:25 18:5
    19:22 25:3 33:3
    35:25
decided 26:8 33:4

decides 19:1
deciding 38:7
decision 8:14 14:24
    32:22
decisions 8:25
    25:10 43:3,4
Delaware 1:2,13
delay 10:5 12:16
    30:21 34:20
delays 10:24
demands 23:8
depending 39:18
depositions 19:14
desire 21:14
determination 8:21
determine 19:7
detriment 35:7
detrimental 30:24
develop 24:17
developed 34:6
development 22:20
    34:22 37:12
differences 37:22
different 28:18
    40:19
difficult 40:18
    42:11
diligence 38:10
diligenced 38:12,13
diligent 7:2
direct 32:24
direction 39:1
director 26:5,8
    41:11 42:5
directors 21:5,10
    21:16,19 27:20
    32:6
disagree 26:3 37:16
disallow 11:4
discovery 17:12
    19:14,19
discrete 19:15,21
    32:20 37:22
discretion 12:2
discuss 24:9
discussed 31:23
discussing 5:22

discussions 26:24
26:25 32:6 34:3
disingenuous 16:3
disinterested 21:5
21:10,16,18 26:5
26:8 27:20 32:6
41:11 42:5
dismiss 5:19 6:12
8:1 16:20
dispense 20:5
disposition 18:3
dispute 5:14 14:11
24:23
distribute 27:3
distribution 13:10
13:14 22:25 23:5
37:6
distributions 9:10
10:25 21:14 25:14
26:19 34:21
DISTRICT 1:2
divergent 42:13
dividend 37:6
docket 30:6 36:18
documenting 31:4
doing 10:2 39:21
dollar 12:8 24:4,5
25:21
door 21:14
double 22:4
doubt 15:22 41:16
drop 13:21
due 8:2 32:17 38:10
39:10
dwindling 42:8
D.I 4:4

**E**

E 1:23,23 2:1,1 5:1
5:1 44:1 45:1
ear 21:12
easier 27:17
easily 12:3
Easter 25:17 43:11
economic 28:5
31:22 32:1
economically 22:4

economy 6:24 8:12
educating 35:17
effect 16:12 24:21
effective 7:12
efficiency 17:15
effort 17:25
efforts 21:11
EFH 3:2 5:14 21:5
22:5 23:15,22
24:3,5,8,12,13
26:7 27:19 28:3,5
28:22 29:5,15
31:8,12,13,13,22
31:25 32:1 33:15
41:22,23
EFIH 5:15 21:5
22:6 23:15,22
24:2,3,4,6,6 26:3
27:19 32:10
either 9:17 33:14
Electronic 45:8
Elliott 2:15,20 5:7
5:16 6:12 7:25
8:24 9:1,17 19:5
19:22,24 20:5
23:25 24:2,5,6
26:3 28:6,15,21
28:23 29:5,18
30:15,19 31:3,3,7
32:13,15,24 33:1
33:23 37:8 38:3
ELLIS 2:2
embarrassed 20:13
20:16
emerged 23:16
emergence 21:18
21:18 22:3,15
emergent 28:13
emerging 22:17,18
Encore 37:6
encouraging 24:16
ended 22:3
Energy 1:6 2:10
4:3 6:5
engaged 28:8,21
entire 10:5 40:20
entirely 33:15

equation 23:17
Erin 2:22 20:4
escrowed 15:2
especially 9:23
25:20
ESQ 2:5,6,7,12,17
2:22 3:4,8
essence 40:24
41:20
estate 8:12 9:8 34:9
34:10 40:20,21
estates 32:7 40:19
42:7,13
et 1:7 2:20 16:18
36:2
event 9:8
Evercore 21:24
everybody 35:7
36:15
everyone's 15:17
evidence 39:17
exactly 13:17 24:11
excellent 43:2
exception 34:2
excited 39:21
exhorted 21:10
exhorting 23:23
expect 13:12 19:16
29:9,22 30:11
expedited 7:3
expediting 7:2
expeditiously 7:8
15:5
expense 15:16
16:11 37:10 42:1
expenses 5:14 6:19
11:14
expensive 12:7
38:23 39:5 41:13
41:15
experience 36:6
extensive 34:13
extent 7:21 33:1
extreme 36:19,21
extremely 37:7

**F**

F 1:23 45:1
faced 7:11
fact 8:21 10:24
11:11,24 12:12,16
13:16 16:1 25:8
26:11 30:20 33:24
faction 26:7
factual 11:18 12:4
15:24 37:12
failure 22:2
fair 23:14 25:2
32:19 34:11 40:12
faith 11:5 26:16
false 24:19
familiar 21:2,8
far 36:1
fashion 42:19
favor 17:2
Fay 2:22 20:4,4,10
20:16
February 4:5
fee 6:16,17 11:5,9
11:13,14 27:1,2
27:11
feel 20:16 36:11
39:1
fees 27:10 34:9
felt 25:11
feverishly 21:6
fiduciary 40:19
fight 26:9
fighting 40:11
figure 5:20,22
39:16,18
file 12:21 16:13
20:7 26:16,16
27:14,15 29:19
32:13,24,25 34:17
39:3,12,13
filed 4:5 5:6,8 7:5,9
7:25 12:6 16:15
16:16 29:1,7,15
31:19
filing 6:11 22:14,14
29:11,13 32:16
36:17 40:23
filled 22:8

find 14:1 17:2 31:6
40:17,18
finding 8:21 17:4
findings 15:24
fine 15:21 19:24
30:5
first 5:20 6:3,6 11:9
33:11,22
folks 25:8,19
following 10:8
22:12 31:20
force 26:20
foregoing 45:3
forth 23:13
fortunate 9:24
forward 6:23 7:8
8:7,10,17 10:11
15:10 17:24 18:16
22:23 25:14 39:1
42:20
four 27:12 30:21
frankly 17:7 25:6
27:5 35:2 37:15
free 17:21 38:6
fresh 37:13
front 11:12 25:12
28:18,19 29:9
fruitful 37:9
Fulbright 2:9 6:5
full 32:19
fully 13:12 34:19
fundamental 26:10
fundamentally
32:18
funds 2:20 9:6 23:4
further 7:22 8:21
8:24 9:5 10:23
16:17 17:14 18:1
34:20
fussing 40:11
future 1:6 17:25
35:16 36:9

**G**

G 5:1
Galardi 2:17 9:19
9:21,21 10:2 13:2

13:16,20 14:25
15:10,20,22 16:23
18:12 19:24 20:13
20:15 24:1 26:1,2
27:24 29:9 32:4
40:2,4 42:23,24
**Galardi's** 20:22
**gel** 29:21
**gentleman** 34:3
**gentlemen** 16:9
**getting** 10:24 27:21
32:9 36:13 39:6
**girls** 34:23
**give** 12:19 41:4,5,9
42:18
**given** 9:7,11 15:7
17:7 41:23
**glad** 20:12
**go** 6:23 8:7,10,17
10:11,21 12:2
18:16 23:19 26:19
27:8 30:14 32:17
34:8,23 36:25
40:4 42:3
**goal** 23:7
**goes** 24:4,5 36:4
**going** 9:24 10:5
13:23 16:6 24:9
24:17 29:6,13
31:7 32:18 36:18
36:20 37:1 38:8
38:15 39:2 40:5
43:7
**good** 5:2 10:1,3
11:5 14:5 22:19
23:3 26:16 42:24
**goodness** 41:5
**gotten** 32:14 38:4
**granted** 39:14
**GRAY** 2:14
**great** 5:3 37:10
**greater** 21:10
**Greg** 9:21
**GREGG** 2:17
**ground** 11:15
**grounds** 11:5,6
13:24

**group** 24:13 29:2
29:21 30:4,8
**grow** 29:3,22
**growing** 29:22
**grown** 29:2
**guess** 13:3 36:16
**guidance** 8:16 25:4
25:5 26:13 42:18
**guided** 31:10
**gun** 23:20
**gut** 36:3
**guys** 43:2

## H

**half** 30:21
**happen** 10:12
14:23 17:7,7
**happened** 29:12
**happens** 16:14 35:1
**happy** 10:3 25:23
**hard** 40:17
**harm** 15:11
**hat** 24:2,6
**hate** 26:10 39:8,8
**head** 38:10 40:14
**hear** 9:17 19:8,10
31:11 33:18 43:6
**heard** 8:1 9:14 11:9
11:9,11 12:25
14:8,9 28:1 32:12
33:7
**hearing** 4:1,1,3
7:18 8:5 16:13,18
18:25 19:11 39:4
39:17
**help** 21:1 35:22,22
35:25 36:7,10
**helpful** 36:16,19
**history** 27:8 36:4
**hold** 8:23 10:7
24:12
**holders** 28:4 29:4
31:8,21,24 32:15
33:13
**holding** 14:11
**holdings** 1:6 28:24
**holiday** 28:13

**HON** 1:24
**Honor** 6:4,14 7:17
7:23 8:10 9:4,15
9:21 10:4,11,15
10:17 11:2,12,12
11:20,20,24 12:2
12:5,6,11,18
13:16,23 14:1,12
14:20 15:3,11,14
15:20,22,24 16:1
18:10,12 19:25
20:2,4,13,18,25
21:4,17 22:24
23:1 24:23 25:4,6
25:11,19,23 26:2
27:5,14 28:2,7,17
28:18,20 29:8,10
29:14 30:9 32:23
33:3,6,10,16,20
33:21 35:4 36:24
37:4,16 39:24
40:22 41:10,25
42:16,24 43:8
**Honor's** 21:2
**hoops** 35:5
**hope** 43:10
**hopeful** 27:16
**hoping** 42:1
**hornet's** 6:9
**Horton** 21:9,20,23
23:13 41:6,7,8,9
**host** 17:6
**hour** 39:20
**hours** 9:25 29:23
29:25
**Howard** 2:12 6:4
**huge** 15:17
**hugely** 41:13,15
42:6

## I

**idea** 6:8 24:22 34:5
**imagine** 19:9
**implicate** 26:14
**important** 6:23
12:9,14 26:15
**importantly** 38:2

41:20
**impossible** 14:22
**inappropriate**
12:22 27:6,13
**incentivized** 36:20
**include** 29:4
**including** 22:10
**independent** 11:15
11:21
**indication** 8:3
**Indiscernible** 24:4
**indulgence** 30:10
**inefficiency** 16:22
16:23 39:10
**inefficient** 39:9
**inevitability** 16:24
**inevitable** 17:3
**information** 21:25
35:18 36:13 38:20
**initial** 30:6
**insiders** 23:1
**insignificant** 37:24
**intensive** 30:20
**intentions** 8:4
**intercompany** 22:1
33:13
**interest** 29:5 31:22
**interesting** 16:10
43:2
**interests** 28:5 32:2
**interpreted** 42:25
**interrupt** 29:6
30:14
**interrupted** 42:23
**involved** 24:10
**irrational** 22:4
**issue** 5:13,18 9:3
10:15,15,17 12:4
14:3,8,10 15:23
16:25 17:4,4,12
17:24 19:13,15,18
19:21 24:2 26:9
26:10,21,23 28:1
28:10 30:22 37:6
37:22,23,23,24
38:18 40:7,20
42:13

**issues** 6:24 8:16 9:5
9:5 12:10 15:15
21:2,23 24:20
25:11 26:11 27:8
27:10 28:20 30:18
32:21 33:3 34:4
34:11,15 35:6
36:5 37:12,13,14
41:19 42:8 43:3
**item** 20:19
**iteration** 28:22
**it'll** 18:13 19:11

## J

**jeopardizing** 37:11
**join** 33:15
**joined** 11:19 20:23
**Jointly** 1:8
**Judge** 1:25 5:3 37:7
**judges** 39:15
**judgment** 5:19
12:3,6 16:20
17:21 19:17
**judicial** 6:24 8:11
15:18 16:23 17:16
36:7
**jump** 23:20 35:5

## K

**Kasowitz** 3:1 28:3
**keep** 6:23 19:11
**KEISELSTEIN**
14:12 20:18,23
33:20 36:24 37:1
37:3 38:17 39:24
40:1,7,22 41:6,10
41:15,18 42:15
43:7
**key** 38:7 42:13
**Kieselstein** 2:5
14:12,18 20:19,21
25:25 27:25 31:1
31:9,15 32:5
33:18 35:9 36:25
40:1 42:12 43:9
**Kieselstein's** 28:12
**kind** 16:10,14

22:19 25:24 29:21
29:22 31:18 32:23
35:10 40:11
**Kirkland** 2:2 21:24
**know** 6:17 13:4,24
14:2,8,15 15:5
16:5,6,10,11,14
20:15 21:11 22:5
23:14,19 24:16,19
24:21 25:3,7,16
25:16 28:10,13,14
28:23 29:2,10,13
29:14,20 30:10,21
30:23 31:10,14,16
31:18,19,24,25,25
33:14 34:7,17,18
34:20,24 35:12
36:1 37:7,8 38:19
39:18 40:4,8,13
41:8,24,25 42:2
42:10,21
**knowledge** 18:17

**L**

**labor** 9:25
**lack** 9:11
**laid** 22:24
**language** 13:17
**large** 24:3,13 28:4
29:4
**larger** 31:21 32:1
33:11,12 37:24
**largest** 29:4 33:14
33:14
**Late** 5:10
**Laughter** 40:6
**lead** 24:17
**leave** 6:9 27:3
**led** 5:9 37:9
**left** 7:22 19:21 27:3
**legacy** 29:16
**legal** 34:11,13
45:22
**lenders** 33:11
**letter** 5:8,10,15,22
6:2,11 10:8 14:14
20:22,22,25 22:24

26:6,12,22 27:16
27:21 28:12,12
31:4,19 35:2,15
40:25
**letters** 9:8 29:1
**let's** 11:1,1
**Levin** 26:4,24
**lien** 33:11
**lifted** 7:6
**light** 25:8
**limit** 17:24
**line** 22:9 23:22
24:24 36:16
**lines** 31:2 32:24
**literally** 36:5
**litigate** 28:9
**litigated** 32:19
**litigation** 15:16
**living** 42:16
**LLP** 2:9,14 3:5
**lo** 25:21
**local** 20:6,11,14
**long** 23:3
**longer** 21:19 32:7
39:22
**look** 38:24,25 40:16
42:17
**looking** 25:4,5 34:4
36:1
**lose** 7:13
**loss** 35:7
**lot** 14:8
**lots** 27:18
**love** 26:19 39:15
**lump** 23:2
**L.P** 2:20

**M**

**M** 2:17
**magic** 25:17
**maintain** 8:23
**major** 9:9
**making** 27:21
36:15
**Management** 2:15
**manner** 35:20
**Marc** 2:5 14:12

20:18 40:1
**March** 1:15 45:12
**Mark** 2:6 20:24
**Market** 1:12
**mass** 22:19 31:12
31:12
**matter** 16:1 18:2
18:24 19:17 23:15
26:12 34:8 35:11
**matters** 11:18
**McKane** 2:6 20:24
**mean** 5:13 11:11
30:2
**meant** 22:3
**mechanism** 26:20
27:21
**mediation** 36:1,4
37:15,17,20 38:6
38:8,15
**mediator** 36:7,10
**meeting** 18:4,5
**mentioned** 26:6
40:25
**merits** 7:6 17:11
**million** 6:18,19 9:3
10:17 11:22 13:5
13:25 15:2 27:3
42:5
**mind** 6:23
**minds** 41:24
**Mineola** 45:25
**minute** 22:18
**moment** 22:21
31:10
**money** 15:7,9 17:18
22:5,6,7 23:21
27:18 42:7
**month** 28:25
**months** 21:3 24:24
24:25 27:18,18
34:5 37:6
**mooted** 16:1
**morning** 29:2
**motion** 5:6,19,19
6:12 7:25 8:24
10:6,6,7,21,23
11:7 12:6,21,23

13:12 15:25 16:12
16:13,19,20 17:20
17:21 18:21,23
19:15 26:16,17
27:4,12,15,15,23
32:13 33:24 34:17
35:20,21,24 39:3
39:12,13,14,16,19
40:24
**motions** 32:16
**mouse** 42:19
**move** 15:5 22:23
25:13 38:25 42:19
**moving** 7:7 17:23
**multiple** 41:24
**mute** 33:19
**Myers** 3:5 33:7
**myriad** 14:22

**N**

**N** 2:1 5:1 44:1 45:1
**narrow** 37:25
**narrowing** 42:8
**nature** 22:8
**near** 35:15 36:9
37:18
**necessary** 9:6
30:17
**need** 6:22 8:10
10:10 19:14 29:19
30:1,3,22 33:3
39:3
**needed** 7:13 25:12
**needs** 34:14
**negotiate** 28:9
**negotiated** 27:5
**negotiating** 16:5
**negotiation** 36:7,17
39:2
**negotiations** 39:6
**nest** 6:9
**neutral** 21:24
**never** 9:22 12:20
**new** 8:23
**NextEra** 2:10 4:3
5:8,20 6:5,20,21
7:9,13 8:7,23 10:6

10:9,16 12:13,14
13:12,25 14:25
16:15 17:2,2 19:3
19:21
**NextEra's** 5:8,25
6:13 16:22
**night** 5:10 23:24
26:12 27:22 29:2
30:11
**non** 29:4
**non-consolidation**
27:9
**non-Elliott** 31:13
31:22
**non-qualified**
25:20
**non-quals** 22:25
26:19
**normal** 13:9
**normally** 18:23
**North** 1:12
**Norton** 2:9 6:5
**note** 7:17 10:3
23:14
**notice** 16:13 20:6
28:11 34:17
**noticed** 16:17
**notices** 16:12
**number** 21:3 23:11
34:5
**NY** 45:25

**O**

**O** 1:23 5:1 45:1
**objection** 5:24 12:8
**objections** 8:2,8
**objector** 16:18
**obviously** 13:4
21:16 22:9,18
23:9 24:19 34:20
35:4 42:17
**occur** 13:10 17:4
**odd** 35:10 42:11
**oh** 16:3 41:5,5
**Okay** 18:9,11 20:10
20:17 30:1 35:9
43:1,1,5

**Old** 45:23
**olden** 41:12
**omnibus** 19:10
  39:21
**once** 12:15 42:1
**onerous** 17:22 35:2
**ongoing** 5:13
**open** 37:20 38:16
**opinion** 11:17
  13:25 26:13 40:3
  40:17
**opportunity** 18:25
  19:20 32:20
**opposed** 13:18
  24:15 36:21
**opposition** 9:13
**option** 23:10 37:18
**options** 23:11
**oral** 18:3,7,13,16
  18:24 19:1,2,8
**order** 10:10 11:13
  11:21,25 12:11
  15:23 22:10,13,14
  38:15
**organizing** 31:23
**ought** 34:9
**outcome** 40:12
**outside** 13:9
**out-of-pocket** 6:19
**overriding** 21:14
**owned** 23:16
**o'clock** 26:12 27:22
**O'Melveny** 3:5
  34:3
**O'Melverny** 33:7

**P**
**P** 2:1,1 5:1
**PA** 32:17
**PAB** 5:13,16 27:16
  33:1
**PAGE** 44:3
**panel** 18:4
**panned** 24:20
**papers** 29:14
**part** 11:25 23:17
  31:13

**participate** 38:9
**particular** 11:7
  37:22
**particularly** 17:22
  36:19 38:21 42:9
**parties** 5:5,17 7:2
  7:16 9:4,11 15:4
  17:16,17,23 19:12
  21:22 22:21 23:7
  23:23 24:23 27:7
  28:15,17,19,21
  30:24 32:24 34:18
  34:22,25 35:14,17
  36:1,2 38:8 40:11
  40:24 41:1
**partner** 9:23
**party** 41:21
**Passover** 25:17
  43:11
**Payment** 4:4
**payments** 23:2
**peace** 25:3
**pending** 10:14 11:2
  13:25
**people** 14:8 25:14
  25:16 30:5 36:18
  38:6,8,12 39:4,8
  41:19
**perceived** 40:8
**percent** 27:2
**perfect** 8:11,19,22
**period** 20:6 22:15
**person** 21:20 23:12
**phone** 9:23 14:9
**piece** 32:4
**place** 6:3 38:22
**plaintiff** 21:1
**plan** 5:10 11:4
  14:13 21:19 22:10
  22:11 23:12,18
  25:7 26:14,15,20
  30:17 32:18 38:24
  39:11 40:9,12,23
  41:3,4,4
**planning** 29:11
**play** 9:7 15:1 16:6
**played** 37:7

**plays** 15:12
**pleasant** 43:11
**please** 20:21 30:5
**pleasure** 9:24
**PM** 1:16,16 43:13
**point** 5:12 14:4
  17:9 21:21 28:8
  30:16,17 31:17
  34:17 36:10 37:21
**pointed** 29:9
**points** 28:5,7 33:21
**poking** 6:8
**position** 14:16
  16:15 19:9 25:8
  35:16 36:19,21
  40:10 41:2,2
**positioned** 37:14
**positions** 22:22
  25:16 29:14 32:12
  33:25 34:6,19,25
  35:17 36:18 41:1
  41:21
**positive** 34:21
**possibilities** 14:22
**possibility** 17:23
**possible** 6:21 19:7
  21:15 28:9 30:7
**posts** 23:7
**posture** 35:10
**postured** 37:14
**potential** 23:20
**potentially** 23:9
  37:11
**power** 41:4
**powerless** 35:24
**practicable** 22:12
**practice** 19:15
**precedent** 24:22
**preconfirmation**
  21:4
**predict** 14:23
**preemergence** 21:4
**prejudice** 9:2,11
**prejudiced** 7:14
**prejudicial** 30:18
**premise** 10:5
**prepared** 27:4 33:2

**presence** 40:10
**presentation** 6:1
**pretend** 25:18
**pretty** 19:20 20:13
  21:12 37:25
**prevails** 6:22 10:9
  17:3
**prevent** 13:13 14:7
**primarily** 7:10
**primary** 11:25
**principal** 28:14
**principle** 23:25
  24:7 31:3,9,14
**prior** 22:3 28:11,22
  32:6 41:16
**private** 36:6,17
**probability** 17:8
**probably** 36:8
**problem** 30:13
**procedural** 35:5
**procedure** 18:18
  27:7 35:11 39:10
  39:11
**proceed** 5:22 6:25
  16:21 18:6 19:23
  20:19,21 26:8
  36:8 39:5,7 42:10
  42:14
**proceeding** 12:7
  17:1 18:22
**proceedings** 10:23
  15:5 43:13 45:4
**process** 6:2 7:7
  24:17 30:16 31:4
  32:19 38:3,9,11
  39:10 42:5,20
**productive** 33:2
**professional** 27:10
**professionals** 41:16
  42:2
**projected** 8:5
**promptly** 6:7
**proper** 25:1 32:22
  39:10,11
**properly** 35:10
**proposal** 13:20
  23:13 39:3

**proposals** 24:24
**propose** 5:18
**proposing** 31:16
  32:13
**provide** 21:24
**provided** 34:9
**provision** 22:10
**provisions** 26:14
**provoked** 6:11
**publicly** 36:17
**purposes** 36:16
**pursuant** 35:20,21
**push** 21:14
**pushing** 26:6
**put** 10:16 11:12
  12:18,24 15:10
  21:17 22:5,6,9,21
  23:7,13 24:21,23
  33:2 34:25 35:14
  41:1
**puts** 38:22
**putting** 25:7
**P.A** 2:19

**Q**
**quagmire** 41:25
**question** 13:3 34:8
  35:11 39:24
**questions** 25:23
**quickly** 19:7 21:15
  31:6
**quite** 6:21 9:9 38:1
  42:14

**R**
**R** 1:23 2:1 5:1 45:1
**raise** 12:4 26:11
  40:7
**raised** 5:16
**raising** 5:13
**reach** 21:6,17,22
  30:24 39:15
**reached** 12:20 24:7
  25:11 31:9
**react** 37:1
**read** 5:15 9:8 20:21
  20:22,25

reading 20:11 31:2
reads 39:19
ready 17:10,12
  34:23 36:4 38:11
real 36:21 38:2
really 6:15 9:1 23:3
  23:17 31:1 32:11
  34:8,11,22 36:10
  36:11 39:2
reason 8:21 11:23
  12:25 13:10 30:3
reasons 8:6
recall 13:20 23:2
  33:10
receive 41:22
received 5:15
receiving 36:13
reconcile 33:22
reconsideration
  10:10 11:21,25
record 22:22 30:6
  32:20 33:3 45:4
recoveries 12:17
reduced 12:13
reengage 33:1
referred 6:14
regard 5:7,13,16
  5:23 17:22 36:22
regarding 5:18 9:6
  24:19 27:9,9,10
  27:11
Regrettably 21:16
regular 34:17
related 15:4
relatively 28:4 34:1
  37:13
release 10:17
released 12:12 14:2
relevant 8:17
relief 11:7,8,10
  12:25 27:7 35:19
rely 11:24
remains 15:3,12
remand 8:20 11:18
  17:1
remember 41:5
repeat 21:8

replicate 41:11
  42:2
reply 14:7 19:4,22
  20:7 33:18
represent 28:24
  31:25,25
representatives
  41:9
represented 29:15
representing 9:18
  26:3,4 29:19
represents 42:12
request 15:9 16:11
  16:15 22:21 27:22
  28:13 34:25 35:19
  41:22
requested 6:8 12:7
requests 7:23 12:13
require 7:22 13:6
  17:8,14 22:8
  35:14 38:20 39:22
required 13:5
requirement 35:3
research 34:14
reserve 7:19,21
  10:15,17,18 12:12
  12:13 13:5,7,13
  16:4 22:4 26:24
reserved 9:3
resolution 21:22
  23:6
resolve 14:3 15:15
  15:23
resolved 11:17
  21:13
resolves 16:2
resources 8:12 9:12
  15:18 17:16,17
  42:7
respective 21:6
respond 12:21 36:2
  39:4
response 5:6,9
  11:24 12:1
responses 19:16
responsibilities
  29:11,20

responsive 8:4
result 17:3
retirees 23:1 25:20
retirement 5:4
reversal 8:15 16:7
reverses 8:9 11:2
  16:25
review 18:25 19:20
rhetorical 35:12
right 9:13 13:19
  14:17,19 15:1,7
  15:19 16:8 18:10
  18:17,20 20:3
  29:17,21,24 32:9
  37:2 38:5 40:14
  40:18 43:1
rights 7:14
ripe 11:23 15:25
  19:17 32:11 35:5
risk 40:2
road 23:9,19 45:23
role 37:8
roll 37:2,4
ROPES 2:14
Rose 2:9 6:5
Rosner 3:4 28:2,2
  29:8,18,25 30:9
  30:15
Rosner's 33:15
route 37:17 42:3
rule 11:11 20:6
ruled 11:12,20
rules 12:10 18:23
  20:11,14
rulings 8:25 15:24
  44:2
rush 30:22

————————
S
————————
S 1:24 2:1 3:8 5:1
safely 23:8
save 42:1
saving 8:12
saw 12:23 14:14
saying 12:15 31:4
  33:23 35:24 36:9
  38:11

says 8:20 26:15
schedule 6:13 7:4
  12:24 17:10,13
  34:18 39:4
scheduled 12:19
  18:3,8,14
scheduling 6:7 9:19
se 34:11
second 26:18 33:14
secondly 7:15 8:14
see 7:1 8:6,12,19,20
  15:12 36:12,22
  38:14
seek 6:12 22:11
  26:20 36:14
seeking 13:13
seeks 8:1 11:4
  30:20
seen 22:16
Seife 2:12 6:4,5
  9:16 10:12 14:6
  14:19,20 16:3
  18:2,7,10 20:2
select 41:9
Sempra 23:17 37:8
  38:3
send 35:25 38:7
sending 38:14
sends 10:8 31:3
sense 8:11,19,22
separately 9:18
services 34:9
serving 32:7
sessions 38:1
set 9:3 12:19 15:2,7
  15:9 18:24 34:18
  39:16
sets 12:10 41:16
setting 9:6
settlement 21:17
  22:1 24:7,14,15
  24:20 25:15 26:25
  27:5,17,19 32:14
  33:24 37:9 39:14
settlements 27:9
seven-day 20:5
Shamah 3:8 33:6,6

33:10
shame 42:20
short 15:23
shortened 7:4
shortfall 23:9
show 9:2 36:15
shown 15:4,14
side 24:1,11 26:3
  28:15,16 31:8,12
  31:13,13,25 32:10
  41:22
sign 43:5
significant 37:21
similarly 11:8
simple 8:15 13:25
simply 10:11,18
  11:16,18,22 16:3
  23:8 27:13,23
  33:15
sir 20:23 33:17
situation 25:9,10
  42:11
slated 23:5
small 24:13
smaller 31:8,24
  37:23,24
socialize 41:20
soliciting 40:3
solution 22:2
Solutions 45:22
somebody 20:12
somewhat 30:23
  36:5
SONTCEHI 1:24
Sontchi 5:3
soon 22:12 29:21
  30:6,7
sophisticated 21:22
sorry 24:6 29:6
  30:13
sort 6:2 16:19,24
  20:25 21:25 24:2
  38:5 39:3,12
  40:25
sorts 14:25 34:15
sought 15:8
sounds 18:10 38:12

**South** 4:25 45:3,7
**so-called** 31:20
**speaking** 30:3
**specific** 19:13
    28:19
**specifically** 7:18
    13:6 28:8,23
**speculating** 19:16
**speculative** 11:16
**speed** 33:23 34:20
    41:19
**spend** 42:4
**spent** 17:17,25
    27:18
**splits** 24:10
**sponte** 35:23
**springs** 24:19
**stage** 14:23
**stake** 23:21
**stakeholders** 21:21
**stale** 29:12
**stalled** 39:6
**stand** 34:16
**standard** 12:1,5
    13:22 14:3 27:17
**stands** 7:23 13:4
**start** 15:16
**started** 6:2
**state** 9:7 15:1
**statement** 30:6
**statements** 29:15
    35:13
**States** 1:1,11
**status** 4:1 5:5,9 6:7
    10:7 12:22 27:6
    27:22 30:12 34:24
**steps** 16:17
**stick** 6:8
**stop** 32:15 40:11
**strangers** 28:17,20
**Street** 1:12
**sua** 35:23
**submit** 19:5 25:16
    33:25 34:18
**subsequently** 5:15
**subset** 41:23
**substantial** 27:11

**substantially** 29:3
    29:3
**substantive** 27:7,22
    40:10
**suggest** 25:15
**suggested** 14:21
**suggestion** 9:12
    37:3
**Suite** 45:24
**sum** 23:2
**summary** 5:19 12:3
    12:6 16:20 17:21
    19:17
**supersede** 22:20
**supplement** 6:1
    30:2,7
**supplemental** 5:7
    5:20 6:14,18 7:19
    8:1,18 13:7,14
    14:10 16:15 17:9
    17:11,13 44:4
**support** 27:17
**suppose** 13:3,11
**supposed** 28:14
**Supreme** 10:19
    12:16
**sure** 7:15 9:20 15:8
    15:10 24:18 26:2
    38:4,17,20 39:25
    42:14
**Switzerland** 14:14

_____

T

**T** 45:1,1
**table** 7:24 9:13
    41:1
**take** 11:1 21:20
    24:2 36:18,20
    40:9 41:2,18,21
    42:17
**taken** 5:21 11:3
    16:17 32:12
**talk** 6:24 22:17
    40:23 43:2
**talked** 21:3
**talking** 32:10
**TCEH** 33:11

**tee** 22:22 33:23
    35:5
**teed** 25:19 37:18
**teeing** 34:24
**Telephonic** 2:5,6,7
    2:12,17,22 3:4,8
    4:1
**tell** 39:8,8 42:10
**ten** 18:15
**tenable** 23:10
**tension** 22:9
**tentatively** 7:5
    18:14
**term** 27:1 31:23
    37:18
**termination** 6:16
    6:17 11:5,9,13,14
    27:1,11
**terms** 8:11 24:10
    34:12 36:21
**terrific** 39:15
**thank** 6:4,6 9:15,16
    13:2 14:5,17
    15:19 16:8,9
    18:18 19:25 20:2
    20:10,11,16,23
    25:25 27:24 33:5
    33:16,17 35:9
    42:18,25 43:8,9
    43:10,12
**theory** 17:8
**thing** 26:18 36:12
    38:12 40:15 42:4
**things** 7:7,23 10:12
    15:6 17:6 26:15
    31:5 35:23,25
    38:7 41:12
**think** 5:24 6:23
    8:22 9:13,19
    11:17,20 12:4,22
    14:21 16:23 17:11
    17:14,23 18:14
    21:8 23:19 24:1
    24:25 25:2 26:2
    26:10 30:18,18,22
    30:23 31:9,23
    32:5 34:6,13,22

**34:24 35:1,6 36:6**
    37:5,12,14,17,21
    38:2,22,24 39:11
    40:24 41:3
**thinking** 25:24
**thinks** 23:13 25:5
    40:12
**Third** 6:17 7:1,3
    8:3,6,9,13,14,16
    8:20,25 9:14
    10:13 11:1 12:10
    12:15 13:1,8,24
    14:23 15:9 16:25
    18:17
**Thomas** 26:5
**thought** 13:21
    17:14 24:25,25
**three** 10:12 21:8
**tie** 7:19
**time** 6:7 7:16 9:2
    11:10 14:11 15:17
    17:9,25 19:11
    21:3,3 23:3 34:1
    35:15 37:10 38:2
    39:22 41:18 42:7
    43:8
**timely** 16:16
**timing** 9:5 15:15
    16:16
**today** 5:6,12,15
    19:4 29:1 38:15
**told** 18:13 23:24
**ton** 34:13
**tool** 38:23
**Torres** 3:1 28:3
**transaction** 37:11
    37:24
**Transcribed** 4:25
**Transcriber** 45:8
**transcript** 45:3
**transpire** 14:24
**transpires** 15:8
**trap** 42:19
**treat** 18:20
**treated** 18:21
**trial** 17:1,10
**tried** 22:9 31:6

**triplicate** 42:2
**troublesome** 26:22
**true** 15:1 45:4
**trustee** 6:12 7:25
    8:24 26:7 27:20
**truth** 34:7
**try** 5:20 12:3 21:13
    21:22 22:13 30:5
    42:19
**trying** 18:5 27:19
    32:3
**turn** 5:21,25 14:6
    19:7 20:20 27:25
**two** 9:25 26:15 31:2
    31:8,24 32:14
    40:19 42:12,12
**T-side** 33:11

_____

U

**ultimately** 12:10
**UMB** 5:6 9:17 20:5
**unavoidable** 22:4
**uncharacteristic**
    14:15
**understand** 16:22
    23:24 29:10,20
    31:6,7,15 32:3,8
    35:8 38:1
**understatement**
    17:18
**undocumented**
    31:2
**unfortunately** 23:6
    38:23,24
**unitary** 23:18
**United** 1:1,11
**unreasonable** 35:3
**unsigned** 31:2
**upset** 26:18
**urge** 21:21
**urgent** 21:11
**urging** 23:22
**use** 23:3
**U.S** 1:25

_____

V

**valuable** 37:7

**Veritext** 45:22
**vibe** 38:4,14
**view** 22:18 23:14
  25:9 34:21
**views** 42:13
**virtually** 14:22
**vis-à-vis** 16:16

---

**W**

**wait** 7:1 8:6,12,19
  8:24 10:19 16:19
**waiting** 20:6 23:3
  25:21
**wallets** 17:23
**want** 6:6 12:1 14:7
  16:19 18:1 23:20
  25:9,13,14 26:9
  26:17 27:14 31:11
  38:25 40:13 42:4
**wanted** 7:15
**wants** 19:1,2 35:4
**waste** 15:17
**wasting** 17:16
**way** 6:20 10:20
  12:16 17:24 30:11
  31:24 36:8 39:5,7
  39:9 42:9,21
**waylaid** 42:21
**ways** 21:1
**wearing** 24:2,6,6
**week** 18:13
**weekend** 28:14
**weekends** 25:17
**weeks** 5:4 28:22
**weird** 16:14
**welcome** 20:1
**well-developed**
  36:5
**we'll** 6:9 10:13,14
  19:18,22 32:25
  33:2 35:6 39:16
  39:18
**we're** 12:15 14:14
  14:15 16:14 22:15
  24:9,16,18 25:4,5
  28:17,20 29:11
  31:18 32:3,9,12

34:23 35:7 36:3
  37:17 41:1
**we've** 9:14 21:2
  23:22 24:18 25:16
  27:15 28:18,21,23
  31:6 43:3
**wife** 9:24
**willing** 10:17 21:24
**willingness** 42:18
**Wilmington** 1:13
**wise** 6:25
**wish** 14:7 28:1
**wishes** 14:9
**wits** 24:21
**woeful** 18:18
**work** 9:9 26:16
  38:10
**worked** 26:4,5
  27:18
**working** 21:6
**world** 39:13
**worth** 24:5 37:19
  42:7
**wouldn't** 36:9
**Wright** 21:9
**writing** 34:25

---

**X**

**X** 34:7 44:1

---

**Y**

**Y** 34:7
**yeah** 15:21 30:15
  41:17 42:17
**year** 17:19
**years** 22:1,1 25:10
  25:22 30:21 36:5
**Yenamandra** 2:7
  20:24
**y'all** 35:25

---

**$**

**$275** 6:18
**$60** 6:19 9:2 10:16
  42:5
**$71** 27:3

---

**1**

**10** 26:12 27:22
**10:00** 30:11
**11** 1:6
**11th** 19:4
**11:00** 30:11
**11501** 45:25
**12671** 4:4
**14** 19:3
**14-10979(CSS)** 1:7
**16** 29:25
**16th** 18:14
**18** 44:4
**18th** 19:5
**19th** 7:6 18:3,14
**19801** 1:13

---

**2**

**2:01** 1:16
**20** 4:5
**2018** 1:15 4:5 45:12
**2019** 29:7,11,15
  32:25
**215** 16:5
**24** 29:23
**25th** 8:2 12:19
  19:10 39:20
**275** 7:19 13:5 14:2
  16:4 22:12
**28** 1:15
**29** 45:12

---

**3**

**3:01** 1:16 43:13
**30** 7:12 16:2
**300** 45:24
**330** 45:23

---

**4**

**4th** 25:18 32:25
**40** 16:2 22:13

---

**5**

**50** 27:2

---

**6**

**6th** 8:2 12:20

**60** 7:22 10:21 11:22
  12:13 13:21,25
  15:2 16:2,4,6

---

**7**

**7007-4** 20:6
**7012** 12:1,7
**7056** 12:3

---

**8**

**824** 1:12