# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: D.I. 13102** |

## RESPONSE OF THE EFH PLAN ADMINISTRATOR BOARD TO THE "JOINT MOTION OF UMB BANK, N.A., AS INDENTURE TRUSTEE, AND ELLIOTT TO FIX APPROPRIATE ALLOCATION OF CERTAIN RESERVES AND EXPENSES AS BETWEEN THE EFH AND EFIH DEBTORS"

The EFH Plan Administrator Board hereby files this response (the "Response") to the *Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to Fix Appropriate Allocation of Certain Reserves and Expenses As Between the EFH and EFIH Debtors* [D.I. 13102] (the "Elliott Motion"), which seeks entry of an order establishing the allocation of certain reserves and administrative expenses incurred as between EFH and EFIH.[2] On May 15, 2018, the EFH Plan Administrator Board filed the *Motion of the EFH Plan Administrator Board for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the EFH/EFIH Allocation Dispute* [D.I. 13113] (the "Scheduling Motion"), which seeks entry of an order establishing certain deadlines and protocols in connection with

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to them in the Elliott Motion.

resolving the very same administrative expenses identified in the Elliott Motion. As set forth in this Response, the EFH Plan Administrator Board believes the Elliott Motion should be denied and the relief requested in the Elliott Motion should be addressed pursuant to the order the EFH Plan Administrator Board is requesting in connection with the Scheduling Motion.

## RESPONSE

1. As detailed in the Scheduling Motion, the Material Administrative Expense Claims have been the subject of settlement discussions for months. Prior to the Effective Date, the disinterested directors and managers of EFH and EFIH had been engaged in negotiations surrounding a potential settlement of the majority of the Material Administrative Expense Claims. In connection with such negotiations, the disinterested directors and managers of each estate and their advisors consulted with (a) Elliott and (b) the Ad Hoc EFH Claimants (as defined in the *Verified Statement of Kasowitz Benson Torres LLP and Hogan McDaniel Pursuant to Bankruptcy Rule 2019* [D.I. 12900], who, based on the statements set forth in such verified statement, purport to hold approximately 44% of the EFH unsecured debt that is not held by Elliott.

2. On the Effective Date, the disinterested directors and managers of EFH and EFIH and their respective advisors resigned, and EFH and EFIH emerged as Sempra Texas Holdings Corp. and Sempra Texas Intermediate Holding Company LLC, respectively.[3] Negotiations

---

[3] *See Notice of Filing of the Second Amended Supplement to the First Amended Joint Chapter 11 Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, Exhibit A [D.I. 12198] (identifying as of the Effective Date, Sempra Texas Holdings Corp. as the entity formally known as Energy Future Holdings Corp. and Sempra Texas Intermediate Holding Company LLC as the entity formally known as Energy Future Intermediate Holding Company LLC). The Reorganized Debtors, owned by Sempra, do not have an economic interest in the resolution of the EFH/EFIH Allocation Dispute.

between key economic stakeholders continued unsuccessfully. The EFH Plan Administrator Board urged such parties to either reach a settlement, subject to Court approval, or otherwise agree to a process, whether in Court or out-of-Court, to resolve the dispute. Eighty-one days have now passed since the Effective Date, and the parties have not reached agreement on the process for resolving the EFH/EFIH Allocation Dispute, let alone a settlement of such dispute.

3.  Having given the economic stakeholders several months to negotiate a settlement or agree on a process for resolving the allocation dispute, the EFH Plan Administrator Board filed the Scheduling Motion. The Debtors' chapter 11 cases have historically benefited from scheduling orders, which have often propelled plan and settlement discussions forward when they were otherwise languishing. The Scheduling Motion seeks to continue this tradition by establishing an orderly process for ensuring that (a) all interested parties have an opportunity to set forth their views on allocation of the Material Administrative Expense Claims; (b) all interested parties have an opportunity to obtain whatever additional facts they may need to set forth their views (to the extent such facts are not already in the extensive record of these chapter 11 cases); and (c) the Court's ultimate ruling on the allocation of the Material Administrative Expense Claims is informed by a thorough and accurate factual record as well as the views of various parties-in-interest.

4.  In this spirit, the EFH Plan Administrator Board discussed the relief requested in the Scheduling Motion with Elliott and the Ad Hoc EFH Claimants before and after filing the Scheduling Motion. Those discussions continue but the parties have not coalesced on an agreed path forward. Importantly, however, by this Response, the EFH Plan Administrator Board is **not taking a position on the merits of the Elliott Motion, but is asking that the Court address**

**the Elliott Motion through the Scheduling Motion.** The EFH Plan Administrator Board reserves all rights to address the merits of the issues raised in the Elliott Motion in the future.

5. While the Scheduling Motion provides an organized path to resolution of the EFH/EFIH Allocation Dispute, the Elliott Motion sets the Court and stakeholders on an uncertain path forward that very well may further delay Plan distributions. *First*, by this Response, the EFH Plan Administrator Board does not take a position on the factual accuracies or inaccuracies in the Elliott Motion but notes that EFH economic stakeholders may raise such concerns (particularly given Elliott's relative infancy in these chapter 11 cases). *Second*, Elliott provides no evidentiary support for the requested relief. Before the Court could even consider the relief requested in the Elliott Motion, it would necessarily need to ensure it had an accurate factual record—a process contemplated by the Scheduling Motion but not the Elliott Motion. *Third*, the Scheduling Motion allows *all* interested parties to submit initial submissions to the Court, participate in an organized and reasonable discovery process, and then submit supplemental submissions reflecting the information gleaned from such process.[4]

6. Finally, the Elliott Motion seeks to allocate the Debtors' Professional Fee Claims. The Elliott Motion generally describes alleged deficiencies in certain of the Debtor Professional allocations. As a preliminary matter, the Interim Compensation Order (which is a final, non-appealable order), sets forth the process for each Debtor Professional to allocate its fees and expenses "sought in connection with" each monthly fee statement such professional may choose

---

[4] Indeed, the EFH Plan Administrator Board shares Elliott's concerns regarding further delays in Plan distributions. To that end, the EFH Plan Administrator Board has repeatedly asked Elliott to engage in negotiations regarding the terms of the proposed order accompanying the Scheduling Motion.

4

to file using a specified methodology—direct benefit fees and collective benefit fees. Interim Compensation Order, ¶ 2(b):[5]

- *Direct Benefit Fees.* Direct Benefit services were services that performed for the benefit of one, but not all, Debtors. Fees for Direct Benefit services were billed 100% to a particular Debtor, when such Debtor (and only such Debtor) directly benefitted from such fees and expenses.

- *Collective Benefit Fees.* Collective Benefit services were services performed the benefit of all debtors. Fees for Collective Benefit services were allocated to each Debtor in the same proportion that the "amount of Direct Benefit Fees incurred by [a professional] for such Debtor bears to the total amount of Direct Benefit Fees incurred by [a professional] for all of the Debtors." Interim Compensation Order, ¶ 2(b). In other words, the allocation of Collective Benefit Fees in a particular month flows directly from the amount of, and allocation of, Direct Benefit Fees for such month—there is no separate re-calculation of the allocation of Collective Benefit Fees.

- *Illustrative Example.* By way of illustrative example, assume in a particular month, a Debtor Professional billed: (a) $500 to EFH-only, for services that directly (and only) benefitted EFH (*i.e.*, EFH Direct Benefit Fees); (b) $1,000 to EFIH, for EFIH Direct Benefit Fees; (c) $2,000 to TCEH, for TCEH Direct Benefit Fees; and (d) $20,000 for services that collectively benefitted each of TCEH, EFH, and EFIH (*i.e.*, Collective Benefit Fees).

  - *Direct Benefit Fee Request.* In the filed Monthly Fee Statement, such Debtor Professional would request: (a) EFH to pay $400, on account of

---

[5] In particular, the Interim Compensation Order states:

"Each Professional shall allocate (the "Fee and Expense Allocation") any fees and expenses sought in connection with each Monthly Fee Statement to the applicable Debtors for whose direct benefit such fees and expenses were incurred (the "Direct Benefit Fees"). To the extent a Professional incurs fees or expenses for the collective benefit of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and Texas Competitive Electric Holdings Company LLC (the "Collective Benefit Fees"), such fees and expenses shall be allocated to each Debtor in the same proportion that the amount of Direct Benefit Fees incurred by such Professional for such Debtor bears to the total amount of Direct Benefit Fees incurred by such Professional for all of the Debtors (the "Collective Fee Allocation"). In connection with any Interim Fee Applications (as defined below in sub-paragraph (f)) or final fee applications (each, a "Final Fee Application") for payment of a Professional's fees and expenses, the Debtors shall, as amongst themselves, and after notice to the Application Recipients and allowance by the Court of the fees and expenses that are the subject of the applicable Interim Fee Application or Final Fee Application, make any necessary intercompany transfers or other adjustments such that the total Collective Benefit Fees for each of the Professionals for the applicable fee period is allocated in a manner consistent with the Collective Fee Allocation for such period."

5

EFH Direct Benefit Fees (80% of $500); (b) EFIH to pay $800, on account of EFIH Direct Benefit Fees (80% of $1,000); and (c) TCEH to pay $1,600, on account of TCEH Direct Benefit Fees (80% of $2,000), for a total of $2,800 in Direct Fees.

- ***Collective Benefit Fee Request.*** Using (a) each estate's Direct Benefit Fee obligation, as the numerator and (b) the total amount of Direct Benefit Fees as the denominator, such Debtor Professional would request: (a) EFH to pay 14.3% of the Collective Benefit Fees ($400/$2,800); (b) EFIH to pay 28.6% of the Collective Benefit Fees ($800/$2,800); and (c) TCEH to pay 57.1% of the Collective Benefit Fees ($1,600/$2,800).

7. The Elliott Motion misstates a number of points with respect to the methodology specified by the Interim Compensation Order. ***First***, the Elliott Motion states that some professionals have not made a "determination" as to how to allocate collective benefit fees. Elliott Motion, ¶ 61. As stated above, the allocation of Collective Benefit Fees is dependent on the Direct Benefit Fees incurred in any given month. Any challenges to allocation of *Collective Benefit Fees* can only arise from the determination made by each Debtor Professional as to what services gave rise to *Direct Benefit Fees*.

8. ***Second***, Elliott specifically identifies Alvarez & Marsal, Deloitte & Touche, Evercore, and Filsinger as professionals with 'unallocated' fees and expenses. Elliott Motion, ¶ 61. A quick review of the docket shows that all of these professionals included proposed allocations in their monthly fee statements. *See, e.g.,* (a) for Alvarez & Marsal, monthly fee statements at [D.I. 12948, 12612, 12589, 12557, 12354, 12029, 11906, 11660, 113327, 11324]; (b) for Deloitte & Touche, monthly fee statements at [D.I. 12901, 12891, 12525, 12497, 12045, 11645, 11344, 11326, 11280, 10921]; (c) for Evercore, monthly fee statements at [D.I. 12283, 6734, 6733, 6732, 6731, 4795, 4794, 4727, 4726, 3745]; and (d) for Filsinger Partners, monthly fee statements at [D.I. 11928, 11270, 10423, 10244, 9907, 9608, 9401, 8987, 8805, 8511]. In short, the Elliott Motion appears to generically identify allocation deficiencies (with language so

broad and unsupported that there is no way to evaluate its accuracy) and may ignore publicly available information regarding Debtor Professional fee allocation.

9. Moreover, substantially contemporaneously with the filing of the Elliott Motion, Elliott (together with UMB Bank, N.A.) filed an "omnibus preliminary objection" to 19 final fee applications filed by Debtor Professionals [D.I. 13107]. The filing has created significant confusion among the Debtor professionals and creditors because (a) it is a "preliminary objection" that does not actually raise any specific objection, but rather purports to reserve the right to raise objections at some unknown later date; (b) the Fee Committee review process has worked well for the past four years and the Fee Committee contemplates an October 2018 hearing to consider approval of the final fee applications; and (c) of inaccurate references in the Elliott Motion to the improper allocations of some Debtor Professionals' fees but not all, while seeking to reallocate Debtor Professional allocations globally. The Scheduling Motion seeks to restore order by allowing any Debtor Professional who seeks to provide the Court with an additional explanation regarding its allocation methodology to do so in accordance with the proposed schedule.

10. In conclusion, the relief requested in the Elliott Motion can be fully addressed by the relief requested in the Scheduling Motion. Moreover, the Scheduling Motion creates an organized and reasonable schedule that will allow all parties-in-interest to be heard and allow the Court to develop a thorough factual record prior to entering an order resolving the allocation of the Material Administrative Expense Claims. This process will not prejudice Elliott, who will have an opportunity to be heard in connection with the relief requested in the Scheduling Motion.

11. For the reasons stated herein, the EFH Plan Administrator Board requests that the Court decline to grant the Elliott Motion at this time and address the relief requested in the Elliott

Motion pursuant to the order the EFH Plan Administrator Board is requesting in connection with the Scheduling Motion.

*[Remainder of page intentionally left blank.]*

Dated: May 29, 2018
       Wilmington, Delaware

/s/ *[signature]*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  collins@rlf.com
      defranceschi@rlf.com
      madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  edward.sassower@kirkland.com
      stephen.hessler@kirkland.com
      brian.schartz@kirkland.com
      aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:  james.sprayregen@kirkland.com
      marc.kieselstein@kirkland.com
      chad.husnick@kirkland.com
      steven.serajeddini@kirkland.com

*Co-Counsel to the EFH Plan Administrator Board*