# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| | (Jointly Administered) |
| Debtors.[1] | **Re: D.I. 12926, 13104, 13105** |

**REPLY IN SUPPORT OF APPLICATION OF CERTAIN ASBESTOS CREDITORS PURSUANT TO 11 U.S.C. § 503(b) FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR REIMBURSEMENT OF EXPENSES INCURRED IN MAKING A SUBSTANTIAL CONTRIBUTION IN THESE CHAPTER 11 CASES**

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

2855092

Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, David Heinzmann, Harold Bissell, Kurt Carlson, Robert Albini, individually and as successor-in-interest to the Estate of Gino Albini, Denis Bergschneider, and Charlotte and Curtis Liberda (the "**Movants**," or "**Certain Asbestos Creditors**"), by their undersigned counsel, respectfully submit this reply (the "**Reply**") in response to the *EFH Plan Administrator Board's Objection to the Application of Certain Asbestos Creditors Pursuant to 11 U.S.C. § 503(b) for Allowance of Administrative Claim for Reimbursement of Expenses Incurred in Making a Substantial Contribution in These Chapter 11 Cases*, dated May 14, 2018 [D.I. 13105] (the "**PAB Objection**") and the *United States Trustee's Board's Objection to the Application of Certain Asbestos Creditors Pursuant to 11 U.S.C. § 503(b) for Allowance of Administrative Claim for Reimbursement of Expenses Incurred in Making a Substantial Contribution in These Chapter 11 Cases*, dated May 14, 2018 [D.I. 13104] (the "**Trustee Objection**"). and in further support of the *Application of Certain Asbestos Creditors Pursuant to 11 U.S.C. § 503(b) for Allowance of Administrative Claim for Reimbursement of Expenses Incurred in Making a Substantial Contribution in These Chapter 11 Cases*, dated April 9, 2018 [D.I. 12926] (the "**Application**").

## ARGUMENT

The Debtors have worked assiduously throughout these bankruptcy cases to ensure that the highly-solvent Asbestos Debtors could shed future liabilities for Unmanifested Asbestos Claims, without compensating the asbestos victims who hold those claims—many of whom have not yet suffered injury, and are unaware that their rights are affected.  In the absence of an unconflicted estate representative charged with protecting the interests of absent Unmanifested Asbestos Claimants, the Certain Asbestos Creditors have taken on that role.  Their actions were for the benefit of others, and transcend their own self-protection, and their Substantial Contribution Claim

2


should be allowed. However, because the Appeal[2] from this Court's Confirmation Order[3] has not yet been resolved, the parties and the Court do not yet have complete information regarding the full extent of the benefits resulting from the Certain Asbestos Creditors' actions. Moreover, it seems clear that a final resolution of this Application will not be achieved until the Appeal has been resolved. Thus, this Court may wish to defer consideration of the Application until resolution of the Appeal.

**I.     UNDER 11 U.S.C. § 503(B)(4), LEGAL FEES AND EXPENSES OF ATTORNEYS FOR CREDITORS WHO MAKE A "SUBSTANTIAL CONTRIBUTION" MUST BE ALLOWED AS AN ADMINISTRATIVE EXPENSE, REGARDLESS OF WHETHER THE CREDITORS ACTUALLY PAID THE FEES AND EXPENSES.**

The PAB argues that because the legal fees and expenses for which reimbursement is sought in the Application were paid by counsel for the Certain Asbestos Creditors, rather than the creditors themselves, those fees and expenses may not be allowed as administrative expenses under 11 U.S.C. § 503(b)(3)(D). PAB Objection ¶ 2. The PAB is correct that three law firms—Kazan McClain Satterley & Greenwood, Early Lucarelli Sweeney & Meisenkothen, and Gori Julian & Associates—who are counsel for certain of the Certain Asbestos Creditors, have paid the legal fees and expenses of FrankGecker, LLP, Hogan McDaniel, and Caplin & Drysdale, Chartered, for which reimbursement is sought in the Application. *See* Declaration of Leslie M. Kelleher, May 31, 2018 (attached as **Ex. A**). The PAB is incorrect, however, that these fees and expenses are not allowable as administrative expenses because they were not paid by the creditors themselves.

Section 503(b)(4) provides that the Court shall allow as administrative expenses "reasonable compensation for professional services rendered by an attorney or an accountant of an

---

[2]     *Notice of Appeal*, *In re Energy Future Holdings*, Case No. 18-00381 (RGA) (D. Del. Mar. 9, 2018) [D.I. 1].

[3]     *Order Confirming the First Am. Joint Plan of Reorganization of Energy Future Holdings Corp., et al.*, Feb. 27, 2018 [D.I. 12763] (the "**Confirmation Order**").

entity whose expense is allowable under" subparagraph 503(b)(3)(D), and "reimbursement for actual, necessary expenses incurred by such attorney." The plain language of § 503(b)(4) does not require that the creditors themselves have paid the attorneys' fees and expenses that form the basis of the Application. Rather, "[i]t simply requires that the attorney whose fees and expenses form the basis for the administrative claim represent the creditor who made a substantial contribution." *In re W. Asbestos Co.*, 318 B.R. 527, 530 (Bankr. N.D. Cal. 2004). *See also In re Mirant Corp.*, 308 F. App'x 824, 827 (5th Cir. 2009) (holding same); *In re R.L. Adkins Corp.*, 505 B.R. 770, 779 (Bankr. N.D. Tex. 2014) (noting that § 503(b)(4) "contains no explicit requirement of incurrence of legal fees by the creditor; it simply refers to the *rendering* of legal services.").[4] Thus, if the Certain Asbestos Creditors establish that they have made a substantial contribution in these cases, § 503(b)(4) mandates that the Court allow as an administrative expense reasonable compensation for their attorneys' legal fees and expenses.[5]

There are strong policy reasons that attorney's fees and expenses are compensable regardless of whether they are paid by the client. The purpose of the statute providing for allowance of substantial contribution claims is to encourage creditor participation, and to ensure

---

[4] The few courts that have indicated to the contrary did not "look[] closely at the wording of [the] statute." *W. Asbestos*, 318 B.R. at 531 (citing cases).

[5] The cases cited at page 4 and footnote 5 of the PAB Objection are not to the contrary. *In re RS Legacy Corp.*, Case No. 15-10197 (BLS), 2016 WL 1084400 (Bankr. D. Del. Mar. 17, 2016), stands for the proposition that a creditor must demonstrate a substantial contribution under § 503(b)(3)(D) (or satisfy another qualifying condition under subparagraph (A), (B), (C), or (E)) before an administrative expense claim for attorney fees and expenses will be allowed under § 503(b)(4). Movants do not dispute that point. The courts in *In re Columbia Gas Sys. Inc.*, 224 B.R. 540, 553 (Bankr. D. Del. 1998), *aff'd sub nom. In re Columbia Gas Sys.*, Nos. Civ. A 98-124, 91-803, 2000 WL 1456298 (D. Del. Sept. 20, 2000) and *In re Am. Preferred Prescription, Inc.*, 194 B.R. 721, 724 (Bankr. E.D.N.Y. 1996) held that an attorney could not make a substantial contribution claim on his or her own behalf pursuant to § 503(b)(4), unless the client makes an application under § 503(b)(3)(D). The Certain Asbestos Creditors have done so here.

that the estate bears the cost when that participation benefits the estate and its creditors. As the Court in *Western Asbestos* observed:

> the purpose of 11 U.S.C. § 503(b)(3)(D) and (4) is to encourage creditor participation in chapter 11 cases. . . . Creditors generally participate in chapter 11 cases through attorneys. If the creditor makes a substantial contribution to a chapter 11 case, why should it make a difference from a policy standpoint whether the creditor is obligated to pay the attorneys' fees and expenses? The requirement that the attorney represent a creditor who made a substantial contribution protects the estate from the assertion of a claim by an attorney with no connection to the case.

*W. Asbestos*, 318 B.R. at 531. Moreover, requiring creditors to "ante up" before they may assert an administrative expense claim for attorneys' fees would permit only the wealthiest creditors to do so, and would make virtually impossible participation by consumer creditors and tort creditors whose participation would benefit the estate and creditors, but who could not afford to pay attorney fees up front.

Section 503(b)(4) is not novel in providing for recovery of attorneys' fees regardless of whether the fees were actually paid by the client. As the *Western Asbestos* court observed, "[c]ourts have construed other statutes less susceptible to such an interpretation to permit recovery of attorneys' fees even when the client was not obligated to pay them." *Id.* For example, courts interpreting 28 U.S.C. § 1447(c)—which provides that an order remanding back to state court a case that was improperly removed to federal court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal"—have concluded that statute permits an award of attorneys' fees regardless of whether the client actually paid those fees. *See also Gotro v. R & B Realty Grp.*, 69 F.3d 1485, 1488 (9th Cir. 1995) (holding that "the words 'actual expenses incurred'" in § 1447 "do not limit the district court's discretion to award attorneys' fees to a contingency fee litigant."); *Albion Pac. Prop. Res., LLC v. Seligman*, 329 F. Supp. 2d 1163, 1166 (N.D. Cal. 2004) (same); *Keesling v. Richman*, No. 1:02-CV-1392-DFH, 2003 WL 1921812, at *2 (S.D. Ind. Apr. 18, 2003) (same); *Sullivan v. Pulte Home Corp.*, No. CV-

5

10-663-PHX-DGC, 2010 WL 3724859, at *1 (D. Ariz. Sept. 16, 2010) (awarding attorney fees to *pro se* litigant who was also an attorney).

Similarly, in *Blanchard v. Bergeron*, the Supreme Court held that an award of reasonable attorney fees in a civil rights case need not be reduced to the amount that would have been owed under a contingent fee agreement. 489 U.S. 87 (1989). The Court cited, with approval, *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444, 1974 WL 180 (C.D. Cal. 1974), in which the court approved "a fee award to counsel in a public interest firm which otherwise would have been entitled to no fee." *Blanchard*, 489 U.S. at 93. And in *Kessler v. Associates Financial Services Company of Hawaii, Inc.*, 639 F.2d 498, 499 (9th Cir. 1981), the Ninth Circuit upheld an award of attorneys' fees under 15 U.S.C. § 1640(a)(3) to a Truth in Lending Act plaintiff who had been represented without charge by a legal services organization. The language of the relevant statutes in each of those cases was "less susceptible" to permitting fee awards where the fees were not paid by the client than 11 U.S.C. § 503(b)(4). *W. Asbestos*, 318 B.R. at 531. The plain language and purpose of § 503(b)(3)(D) and § 503(b)(4) mandate the same result.

## II. THE ACTIONS OF THE CERTAIN ASBESTOS CREDITORS TRANSCENDED SELF-PROTECTION AND WERE FOR THE BENEFIT OF THE ASBESTOS DEBTORS' ESTATES AND CREDITORS.

The Certain Asbestos Creditors or their family members are dying of mesothelioma; Ms. Fenicle's husband and Mr. Albini's father have already succumbed to that illness. The Debtors have been unwavering in their determination to shed future liabilities for asbestos claims regardless of the impact on creditors, and their resources far exceed those of their asbestos victims.[6] From

---

[6] For example, the Debtors' lead bankruptcy counsel alone has sought legal fees of $172 million from the estate. *Final Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from April 29, 2014 Through and Including March 9, 2018*, at 2, Apr. 23, 2018 [D.I. 13109].

6

an economic cost-benefit analysis, it would make little sense for the Certain Asbestos Claimants to expend the resources they have expended in this case solely for their own potential gain. Indeed, as this Court has acknowledged, Ms. Fenicle and Mr. Fahy—who have led the charge in the effort to protect the rights of absent unmanifested asbestos victims—have filed proofs of claim, and stand to gain *nothing* if Unmanifested Asbestos Claims are discharged. *See* Hr'g Tr. 230:24-231:11, Feb. 26, 2018 (noting that "Fenicle and Fahy [are] sort of working against their own interests in objecting because they had reinstated claims" and that "people sometimes act against their economic interests based on nonmonetary reasons. . . . They may be acting to preserve an idea or a belief of theirs that's more important to them than whether or not they get paid."). This Court should reject any suggestion by the PAB and the Trustee that the efforts of the Certain Asbestos Claimants in these bankruptcy cases were primarily to serve their own interests. The Certain Asbestos Creditors' actions have "transcended self-protection" and would not have been undertaken solely on their own behalf, "absent an expectation of reimbursement from the estate." *Lebron v. Mechem Fin., Inc.*, 27 F.3d. 937, 944 (3d Cir. 1994).

The PAB asserts that the Certain Asbestos Creditors' efforts are not substantial contributions because the Debtors' estates have not "grown larger" as a result of those efforts. PAB Objection ¶ 14. But "while finding additional assets of the estate may be a classic form of making a substantial contribution, it is not the only one." *In re Williams*, 49 F. App'x 845, 850 (10th Cir. 2002). Indeed, the PAB's own cited cases recognize this principle. For example, in *Columbia Gas*, the court recognized that actions by a creditor that dramatically improved treatment of creditors under a plan were substantial contributions. *Columbia Gas*, 224 B.R. at 548 (cited in PAB Objection ¶ 14). The actions of the Certain Asbestos Creditors in these cases have been in furtherance of their efforts to ensure that Unmanifested Asbestos Claims for which proofs of

7

claims have not been filed are not discharged, which, if successful, will indisputably and dramatically improve the current treatment of those claims under the Plan. The size of the estates will not be increased, but the portion of the estates made available to creditors will be significantly increased.

The Trustee objects that the actions of the Certain Asbestos Creditors were "for the separate benefit of themselves and certain similarly-situated creditors," rather than the estate as a whole, Trustee Objection ¶ 8, and were "designed to secure a greater share of the Debtors' estate for themselves and for asbestos creditors generally . . . at the expense of all non-asbestos stakeholders." Trustee Objection ¶ 9.[7] But the Asbestos Debtors' most significant liabilities are their asbestos liabilities,[8] and the greater part of those liabilities are for Unmanifested Asbestos Claims.[9] If the Appeal is successful, and Unmanifested Asbestos Claimants retain their causes of

---

[7] *Sentinel Mgmt. Grp., Inc.*, 404 B.R. 488, 496 (Bankr. N.D. Ill. 2009), on which the Trustee relies, is inapposite. *See* Trustee Objection ¶ 9. In that case, an ad hoc creditors committee represented only its own interests in participating in plan negotiations and raising objections during the bankruptcy proceeding. *Sentinel*, 404 B.R. at 494. In marked contrast to the case at bar, the ad hoc committee in *Sentinel* did not adopt interests beyond its own. *Id.* at 495 (committee had pursued its own interests and "failed to demonstrate how their efforts have resulted in something more than an indirect, incidental, or tangential benefit to the Estate."). Unlike the *Sentinel* committee, the Certain Asbestos Creditors here have expressly taken up the task of representing unmanifested asbestos claimants, whose interests would otherwise have been disenfranchised.

[8] Other than approximately $38 million in liability for post-employment benefits, the Asbestos Debtors have no additional significant liabilities. *See* Keglevic Dep. 316:20-318:6; 329:9-23, Oct. 1, 2015 (attached as Ex. 7 to *Memorandum of Law in Support of Motion of Shirley Fenicle, David William Fahy, John H. Jones, and David Heinzmann to Dismiss Chapter 11 Petitions of Asbestos Debtors EECI, Inc., EEC Holdings, Inc., LSGT Sacroc, Inc., and LSGT Gas Co. LLC Pursuant to 11 U.S.C. § 1112(B)* [D.I. 10074].)

[9] *See* Expert Report of Thomas Vasquez at 28, Oct. 21, 2016 (estimating aggregate asbestos liabilities to be $54 million, including $11.4 million for pending claims, and $42.6 million for future claims (i.e., unmanifested claims)) (attached as Ex. G to *Obj. of Shirley Fenicle, David William Fahy, John H. Jones, David Heinzmann, Harold Bissell, Kurt Carlson, Robert Albini and Denis Bergschneider to Confirmation of the First Am. Joint Plan of Reorganization of Energy Future Holdings Corp., et al. Pursuant to Chapter 11 of the Bankruptcy Code*, Jan. 22, 2018 [D.I. 12500-01] (the "**Confirmation Objection**")).

action against the Asbestos Debtors, the only "non-asbestos stakeholder" that will bear the expense is their equity holder, EFH. This is precisely the kind of significant benefit to the estates and creditors that constitutes a substantial contribution.

The Certain Asbestos Creditors do not disagree with the PAB that a creditor's "extensive participation" in a bankruptcy case does not, by itself, warrant compensation. PAB Objection ¶ 9. However, as set out in the Application, the Certain Asbestos Creditors' extensive participation in these cases warrants compensation because it was not "designed primarily to serve their own interests," but, rather, was "designed to benefit others who would foreseeably be interested in the estate," i.e., Unmanifested Asbestos Claimants as a group. Application at 11 (quoting *In re Tropicana Entm't*, *LLC*, 498 F. App'x 150, 152 (3d Cir. 2012)). And while the actions taken by Certain Asbestos Creditors may be of a type that is "routine" for differently-situated creditors, PAB Objection ¶ 11, they are not in any way "routine" for individual tort victims such as the Certain Asbestos Creditors. The only "routine" activity of unmanifested asbestos claimants in asbestos-driven bankruptcies—and the Asbestos Debtors' bankruptcies were driven by their asbestos liabilities[10]—is filing claims with § 524(g) trusts post-confirmation, when the claimants or their loved ones are diagnosed with mesothelioma or other asbestos-related illnesses.

The PAB and the Trustee contend that the interests of Unmanifested Asbestos Claimants already were adequately protected by the E-Side Committee, *see* PAB Objection ¶¶ 16, 18; Trustee Objection ¶ 5, and that the Certain Asbestos Creditors' actions were largely duplicative of services rendered by the E-Side committee and other estate fiduciaries, the U.S. Trustee, and an active

---

[10] The only source of funding for the Asbestos Debtors' asbestos liabilities was EFH Corp.'s payments on the intercompany loans, and because the Asbestos Debtors "would be cash flow insolvent with no source of funding" when EFH filed for bankruptcy protection, the Asbestos Debtors also sought bankruptcy protection. *In re Energy Future Holdings Corp.* ("*EFH II*"), 561 B.R. 630, 640 (Bankr. D. Del. 2016).

creditor body. This is simply wrong. While Ms. Fenicle and Mr. Fahy are members of the E-Side committee, they are a minority, and cannot control its actions. As the Certain Asbestos Creditors have shown previously, the E-Side Committee could not represent the interests of both currently-afflicted and unmanifested asbestos victims, as the interests of those two groups are inherently in conflict.[11] Indeed, the E-Side Committee itself alerted the Court to the conflict.[12] And rather than acting to protect the interests of Unmanifested Asbestos Claimants, the E-Side Committee agreed to support a plan that would discharge Unmanifested Asbestos Claims for which proofs of claim were not filed.[13] No other estate fiduciary has sought to protect the interests of Unmanifested Asbestos Claimants. Nor has the U.S. Trustee, nor have any other creditors. By taking on the role that a legal representative should have played in these cases, the Certain Asbestos Creditors have made a substantial contribution. *See In re Gen. Electrodynamics*, 368 B.R. 543 (Bankr. N.D. Tex. 2007); *In re Bayou Grp., LLC*, 431 B.R. 549 (S.D.N.Y. 2010); *see also* Application at 12-13.[14]

The PAB's efforts to distinguish the *General Electrodynamics* and *Bayou* cases are unavailing. Contrary to the PAB's assertion, the same "concerns that animated the court's

---

[11] *See* Confirmation Objection, at 18 n.24; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997).

[12] Further, no committee was appointed to represent unsecured creditors of three of the four Asbestos Debtors: EEC Holdings, Inc., LSGT Gas Co., LLC, and LSGT SACROC, Inc.

[13] *See Notice of Settlement Among Debtors, EFH Comm., et al.*, at Ex. A, Settlement and Support Agreement by and among the Debtors and the EFH Comm., Nov. 23, 2015 [D.I. 7090-1].

[14] The Trustee accuses the Certain Asbestos Creditors of trying to "relitigate" the motion to appoint a legal representative for Unmanifested Asbestos Claimants. Trustee Objection at 10. This is a mischaracterization. The Certain Asbestos Creditors contend that because no legal representative was appointed, they stepped into the gap, and have taken on the leadership role that ordinarily would be expected of an estate-compensated professional. Nor is the Application part of a "multi-year collateral attack" on the Bar Date Order, as the PAB (and the Debtors) are so fond of asserting. The Certain Asbestos Creditors have demonstrated several times that the Bar Date Order was not a final order; they will not repeat those arguments here. *See, e.g.*, Confirmation Objection at 6, n.15.

substantial contribution award" in the *General Electrodynamics* are also present here. PAB Objection ¶ 18 (citing *In re Gen. Electrodynamics*, 368 B.R. 543). Just as there was no committee representing the creditors' interests in that case, there was no unconflicted estate fiduciary representing the interests of the Unmanifested Asbestos Claimants in these cases. And just as the court in *General Electrodynamics* was concerned that the debtor there "lacked any great enthusiasm for the strictures imposed on its operations by chapter 11," 368 B.R. at 556, this Court also should be concerned by the Asbestos Debtors' lack of enthusiasm for their fiduciary duty to "make sure the creditors are paid." *In re Furley's Transp., Inc.*, 272 B.R. 161, 176-77 (Bankr. D. Md. 2001) (internal quotation marks and citations omitted), *aff'd*, 306 B.R. 514 (D. Md. 2002).

It is of no moment that the creditors in *Bayou* sought substantial contribution for fees incurred pre-bankruptcy; the pertinent point is that the court in that case instructed that substantial contribution claims are regularly granted where, as here, the creditors "played a leadership role that normally would be expected of an estate-compensated professional but was not so performed." *Bayou*, 431 B.R. at 562. *In re Kior, Inc.*, 567 B.R. 451 (D. Del. 2017), is not to the contrary. *See* PAB Objection ¶ 19. Rather, that case simply stands for the uncontroversial proposition that the mere fact there was no creditors' committee will not warrant a finding of "substantial contribution" within the meaning of § 503(b)(3)(D) where the creditor was acting in his own self-interest, his actions were routine and expected of a creditor in his position, and were duplicative of the actions of estate representatives. As shown above, none of those factors is present here.

### III. THE CERTAIN ASBESTOS CREDITORS' SUBSTANTIAL CONTRIBUTION WILL BE MORE APPARENT IF THE APPEAL IS GRANTED

The PAB objects to the Application on the ground that the actions of the Certain Asbestos Creditors have not yet yielded demonstrable benefits, and the Substantial Contribution Claim is based on the "contingency" that the Appeal from the Confirmation Order will succeed. PAB

Objection ¶¶ 3, 8, 15. On the same ground, the Trustee argues that the claim is "premature." Trustee Objection ¶ 14. However, the Certain Asbestos Creditors could not wait until the Appeal was resolved to file their claim, as the Court set a deadline for filing administrative claims. *See* Plan art. 1.A.14, at 7.

Certain Asbestos Creditors contend that they already have made a substantial contribution in these cases because, in the absence of an unconflicted legal representative appointed to protect the interests of Unmanifested Asbestos Claimants, they stepped into the role that ordinarily would be expected of an estate-compensated fiduciary. *See* Application at 13. However, if the Appeal is granted, the benefits constituting the substantial contribution will be even more apparent and any objection based on a lack of demonstrable benefits will be mooted. *Cf. In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 662 n.130 (Bankr. S.D.N.Y.) ("[S]ubstantial contribution applications are heard only at the end of the case. Parties in interest, and the bankruptcy courts, need an understanding, with as much information as possible, of the extent of the benefits constituting the asserted substantial contribution."), *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006). Moreover, regardless of whether this Court allows the Substantial Contribution Claim, it seems clear that the issue will be appealed to the District Court. In the interests of judicial economy, this Court may find it most expedient to defer consideration of the Application until the Appeal is resolved. In any event, the Court should also grant the Reserve Motion filed contemporaneously with this Motion,[15] and order that the PAB establish a reserve for the face value of the Substantial

---

[15] *Mot. of Certain Asbestos Creditors for Order Requiring Reserve for Administrative Expenses Claim*, Apr. 9, 2018 [D.I. 12927] (the "**Reserve Motion**"); *Reply in Support of Mot. of Certain Asbestos Creditors for Order Requiring Reserve for Administrative Expenses Claim*, May 31, 2018 (filed contemporaneously with this Reply).

Contribution Claim, to ensure that the claim will be given administrative priority as required by the Plan and the Code.

## **CONCLUSION**

For the reasons stated above and in the Application, the Court should allow, as an administrative expense, reasonable compensation for the fees and expenses set out in the Application. In the alternative, and in the interests of judicial economy, the Court may wish to defer consideration of the Application until the Appeal from this Court's Confirmation Order has been resolved.

Dated: May 31, 2018
       Wilmington, Delaware

Respectfully submitted:

By: */s/ Daniel K. Hogan*
Daniel K. Hogan (DE Bar # 2814)
HOGAN MCDANIEL
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599
dkhogan@dkhogan.com

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, David Heinzmann, Harold Bissell, Kurt Carlson, and Robert Albini, individually and as successor-in-interest to the Estate of Gino Albini, and Denis Bergschneider*

-and-

Leslie M. Kelleher (admitted *pro hac vice*)
Jeanna M. Koski (admitted *pro hac vice*)
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, DC 20005
Telephone: (202) 862-5000

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle*, *and David William Fahy*

-and-

Steven Kazan (admitted *pro hac vice*)
KAZAN MCCLAIN SATTERLEY & GREENWOOD
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
Telephone: (510) 302-1000
Facsimile: (510) 835-4913

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, and Denis Bergschneider*