**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re:* | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| | (Jointly Administered) |
| Debtors.[1] | **Re: D.I. 12927, D.I. 13110** |

**REPLY IN SUPPORT OF MOTION OF CERTAIN ASBESTOS CREDITORS**
**FOR ORDER REQUIRING RESERVE FOR ADMINISTRATIVE EXPENSES CLAIM**

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

2855091

Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, David Heinzmann, Harold Bissell, Kurt Carlson, Robert Albini, individually and as successor-in-interest to the Estate of Gino Albini, Denis Bergschneider, and Charlotte and Curtis Liberda (the "**Certain Asbestos Creditors**"), by their undersigned counsel, respectfully submit this reply (the "**Reply**") in response to the *EFH's Plan Administrator Board's Objection to the Motion of Certain Asbestos Creditors for Order Requiring Reserve for Administrative Expenses Claim*, dated May 14, 2018 [D.I. 13110] (the "**PAB Objection**"), and in further support of the *Motion of Certain Asbestos Creditors for Order Requiring Reserve for Administrative Expenses Claim*, dated April 9, 2018 [D.I. 12927] (the "**Reserve Motion**").

## ARGUMENT

In the *Application of Certain Asbestos Creditors Pursuant to 11 U.S.C. § 503(b) for Allowance of Claim for Administrative Expenses Incurred in Making a Substantial Contribution in These Chapter 11 Cases*, dated April 9, 2018 [D.I. 12926] (the "**Application**"), the Certain Asbestos Creditors have sought reimbursement of expenses incurred in connection with their efforts to protect the rights of Unmanifested Asbestos Claimants in these cases (the "**Substantial Contribution Claim**"). Their Substantial Contribution Claim is far from frivolous, and the likelihood that the claim ultimately will be allowed is high. A final resolution of the claim, however, will take many months, which creates a serious danger that the Trust will not have sufficient funds to pay the claim if it ultimately is allowed. The Certain Asbestos Creditors respectfully submit that, in order to prevent such an occurrence, this Court should order the PAB to establish a reserve for the face value of the claim.

Several times throughout these cases this Court has acknowledged the seriousness of the question whether discharging Unmanifested Asbestos Claims is consistent with due process, which is at the heart of the Appeal now pending before the District Court. *See* Appellants' Principal

Brief, *In re Energy Future Holdings, Corp.*, No. 18-cv-00381 (RGA) (D. Del. May 21, 2018) [D.I. 30] ("**Appeal Brief**").  During confirmation hearings on a previous, now-defunct plan, the Court expressed reservations about permitting the discharge of Unmanifested Asbestos Claims, and welcomed an appeal from the Confirmation Order[2]:  "I certainly expect that this decision will be appealed.  That is fine with me . . . I won't say I never mind be[ing] reversed, but I have to say in particular, I wouldn't necessarily [mind] being reversed on this issue."  Hr'g Tr. 32:8-14, Feb. 17, 2017.  The District Court also has recognized the seriousness of the due process issues: in ruling on a scheduling motion in an appeal from a previous confirmation order in these cases, the District Court stated: "I do not . . . understand why the Debtors want to drag these appeals out.  It seems clear to me that whatever I do is going to be appealed to the Court of Appeals, and the sooner the cases get there, the better."  Scheduling Order, *In re Energy Future Holdings Corp.*, Civ. No. 16-00888 (D. Del. March 16, 2017) (Andrews, J.) [D.I. 27].

For the reasons set out in the Appeal Brief, there is a strong likelihood that the Appeal will be granted, and Unmanifested Asbestos Claims will not be discharged.  Concomitantly, there is also a high likelihood that the Substantial Contribution Claim ultimately will be allowed, as the Certain Asbestos Creditors' actions indisputably will be proven to have "resulted in an actual and demonstrable benefit to the debtor's estate and the creditors,"[3] effectively mooting the PAB's and

---

[2]     *Order Confirming the First Am. Joint Plan of Reorganization of Energy Future Holdings Corp., et al.*, Feb. 27, 2018 [D.I. 12763] (the "**Confirmation Order**").

[3]     *Lebron v. Mechem Fin., Inc.*, 27 F.3d 937, 944 (3d Cir. 1994).

U.S. Trustee's major objections[4] to the Substantial Contribution Claim.[5]  Just as "it seems clear" that Judge Andrews' decision on the Appeal will be appealed to the Third Circuit, it seems clear that the Substantial Contribution Claim will not be finally resolved until final resolution of the Appeal.

The PAB is an appellee in the Appeal from the Confirmation Order; its future administrative expenses will be paid from Trust assets.  It can fairly be assumed that the PAB will ensure that the Trust retains funds sufficient to pay its own future legal fees.  Certain Asbestos Creditors ask that the PAB be required to establish a reserve to ensure that their priority administrative claim also will be paid if ultimately allowed.

## I.      THE COURT SHOULD ORDER A RESERVE IN THE EXERCISE OF ITS SUPERVISORY AUTHORITY OVER PLAN IMPLEMENTATION.

The PAB argues that "nothing in the Bankruptcy Code requires a reserve for administrative expenses."  PAB Objection at 4.  This is a strawman argument: the Certain Asbestos Creditors do not assert that reserves are required for all administrative expenses.  That reserves were not established in the cases cited by the PAB, *id*. at 4-5, does not prove that a reserve for the Substantial Contribution Claim in these cases is not warranted.  The Code clearly permits the establishment of reserves for disputed claims, including administrative expense claims.  Indeed, in its

---

[4]      *See EFH Plan Administrator Board's Obj. to the Application of Certain Asbestos Creditors Pursuant to 11 U.S.C. § 503(b) for Allowance of Administrative Claim for Reimbursement of Expenses Incurred in Making a Substantial Contribution in These Chapter 11 Cases*, May 14, 2018 [D.I. 13105]; *United States Trustee's Objs. to the Application of Certain Asbestos Creditors Pursuant to 11 U.S.C. § 503(b) for Allowance of Administrative Claim for Reimbursement of Expenses Incurred in Making a Substantial Contribution in These Chapter11 Cases*, May 14, 2018 [D.I. 13104] (the "**Trustee's 503(b) Objection**").

[5]      *See Reply in Support of Application of Certain Asbestos Creditors Pursuant to 11 U.S.C. § 503(b) for Allowance of Administrative Claim for Reimbursement of Expenses Incurred in Making a Substantial Contribution in These Chapter 11 Cases*, dated May 31, 2018 (filed contemporaneously herewith).

Confirmation Order in these cases, this Court required the PAB to establish a reserve for the full face value of NextEra's disputed $275 million administrative expense claim.  Confirmation Order ¶ 150.  Nothing in the Code requires that any and all reserves must be established by the plan or confirmation order, or prohibits the establishment of reserves post-confirmation. The Plan provides that administrative expense claims shall have priority over unsecured claims, as mandated by the Code.  Plan art II(A)(1); 11 U.S.C. § 507(a)(2).

The Court retains jurisdiction to supervise implementation of the Plan.  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *In re Resorts Int'l, Inc.*, 372 F.3d 154, 167 (3d Cir. 2004) (Bankruptcy court "retain[s] jurisdiction to enter appropriate orders to enforce the intent and specific provisions of the Plan."); *In re Chagolla*, 544 B.R. 676, 680 (B.A.P. 9th Cir. 2016) ("[S]ection 105 provides additional authority for the bankruptcy court to implement the plan order."); 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").  In the exercise of its supervisory power, the Court should order that a reserve be established to ensure that the Substantial Contribution Claim, including future expenses of the Appeal, will be paid if the claim ultimately is allowed.  *See, e.g.*, *In re Charis Hosp., LLC*, 360 B.R. 190, 198, 201 (noting that court had approved establishment of reserve for disputed claims post-confirmation, and that liquidating trustee failed to establish the reserve, "ensuring that similarly situated administrative priority creditors would not be paid if their claims eventually were allowed"); *In re Upland Partners*, No. 97-03746, 2005 WL 3964428, at *2 (Bankr. D. Hawaii Oct. 5, 2005) (approving post-confirmation establishment of reserve for future administrative expenses and reserve for full face amount of disputed claims).

The PAB argues that it should not be required to reserve funds to pay the Substantial Contribution Claim because the claim has not been reviewed by the Fee Committee, and its "ultimate validity and amount" is in question.  PAB Objection at 6, 9.  But it is precisely because the Substantial Contribution Claim is disputed and not finally adjudicated that a reserve is necessary to ensure that funds will be available in the event that the claim ultimately is allowed.  *See Charis*, 360 B.R. 190.  The reserve should be established for the full face value of the claim.  *See Upland Partners*, 2005 WL 3964428, at *2.

The cases the PAB relies on are inapposite, and do not stand for the proposition that courts should refuse requests to establish reserves where the claim is disputed.  PAB Objection ¶ 6.  In *Chateaugay*, the lower courts denied appellant's motion to establish a reserve for its claim and, while the appeal from disallowance of the claim was pending, the funds from which the claim would be paid if allowed were revested in the reorganized debtor or distributed to other parties represented in the appeal.  *Frito-Lay, Inc., v. LTV Steel Co., Inc.* (*In re Chateaugay Corp.*), 10 F.3d 944, 949 (2d Cir. 1993).  The Court held that a reserve pending further appeal was not necessary because, if the claim ultimately were allowed, the court "would be able to fashion effective relief" by ordering the return of funds that were erroneously disbursed.  *Id.* at 953.  In these cases, by contrast, the funds in the EFH/EFIH Distribution Account will be distributed to creditors who are not parties to the Application, and a "claw-back" of those funds may not be possible.  And if adequate funds are not set aside, there is a real danger that the claim will not be paid.

In the PAB's other cases, reserves were not required because there was no real possibility that the orders disallowing the claims for which the reserves were sought would be overturned on appeal.  In *In re Kreisler Group. Inc*., the Second Circuit upheld the bankruptcy court's decision not to hold a corporate debtor responsible for the debt of its wholly-owned subsidiary, rejecting

appellant's argument that the bankruptcy court had made an error of fact.  648 F.2d 86, 87 (2d Cir. 1981).  And in *In re Johnson*, the bankruptcy court held that a creditor was not entitled to a reserve based on its contention that its claim was secured, noting that the court could not see "any reason" why its ruling that the claim was not secured "would be disturbed on appeal."  No. 14-57104, 2016 WL 8853601, at *11 (Bankr. S.D. Ohio Nov. 10, 2016), *appeal dismissed*, 583 B.R. 682 (B.A.P. 6th Cir. 2018).  Similarly, in *In re Health Diagnostic*, 551 B.R. 218 (Bankr. E.D. Va. 2016), on which the PAB also relies, PAB Objection at 9, n.1, the court rejected an argument that the plan should contain a reserve on the ground that there was no possibility that that the party seeking the reserve would, in the future, have a meritorious claim against the debtor's estate.

Here, by contrast, this Court has acknowledged that the Confirmation Order, insofar as it discharges Unmanifested Asbestos Claims, may be overturned on appeal, and has even welcomed that result.  Hr'g Tr. 32:8-14, Feb. 17, 2017 ("I wouldn't necessarily [mind] being reversed on this issue.").  Given the high likelihood that the Appeal will be successful, and the Substantial Contribution Claim ultimately allowed, the requested reserve is appropriate, and necessary to ensure that this administrative priority claim will be paid in accordance with the Plan and the Code.

## II.    THE SUBSTANTIAL CONTRIBUTION CLAIM AND THE RESERVE MOTION WERE TIMELY.

The PAB asserts that the Substantial Contribution Claim was filed "'late' in the reorganization process . . . a month after the effective date."  PAB Objection at 6.[6]  At the same

---

[6]    The PAB cites to the Court's comment at oral argument that NextEra's $60 million administrative expense claim was filed "late," on the verge of confirmation.  PAB Objection at 6 n.9 (citing Hr'g Tr. 233:10-16, Feb. 26, 2018).  As this Court is aware, the circumstances leading up to NextEra's claim are a far cry from the circumstances of the Substantial Contribution Claim at issue here.  NextEra had originally filed its $275 million termination fee claim in February, shortly after NextEra's deal with the Debtors was terminated for lack of approval by the Public Utilities Commission of Texas.  *Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Claim* ¶¶ 13, 18, 26, Feb. 20, 2018 [D.I. 12671].  The Court initially allowed the claim, and then reversed its decision on reconsideration.  *Id.* ¶ 32.  NextEra's $60 million

time, the Trustee characterizes the claim as "premature," because it was filed before resolution of the Appeal.[7]  The claim is not late: the Application was timely filed within the time period set by the Court for filing administrative claims.  *See* Plan art. 1.A.14, at 7.  Section 503(b) does not require creditors to provide "preconfirmation warning of intent to seek fees and expenses."  *In re DP Partners Ltd. P'ship*, 106 F.3d 667, 671-72 (5th Cir. 1997).  Courts routinely set post-confirmation bar dates for administrative claims, as the Court did in these cases, Plan art. 1.A.14, at 7, and creditors routinely bring substantial contribution claims post-confirmation, when there is more information regarding the benefits conferred by the actions of the party asserting the claim.  *See In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 662 n.130 (Bankr. S.D.N.Y.) ("[S]ubstantial contribution applications are heard only at the end of the case.  Parties in interest, and the bankruptcy courts, need an understanding, with as much information as possible, of the extent of the benefits constituting the asserted substantial contribution."), *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006).

The Reserve Motion also was timely filed, contemporaneously with the Application.  The PAB cites no authority for its assertion that the Certain Asbestos Creditors were required to make their request for a reserve for their as-yet-unfiled administrative claim before the confirmation hearing.  PAB Objection ¶ 8.[8]  There is no such requirement.  Nowhere does the Code require that

---

administrative expense claim was presented as an alternative to the termination fee claim, in the event that the latter ultimately is disallowed.

[7]      *See* Trustee's 503(b) Objection, *supra* note 3, ¶ 14.  It was, of course, necessary to file the claim before the Administrative Claims bar date in order to preserve the claim.

[8]      The PAB's bald assertion that the timing of the Reserve Motion has somehow prejudiced other parties should be summarily rejected by the Court.  PAB Objection ¶ 8.  Just as the Certain Asbestos Creditors requested $4 million reserve is a small fraction of the several hundred million in the EFH/EFIH Distribution Account, and the establishment of a reserve will not materially affect the distribution of funds by the Trust.

a creditor must make any request that a reserve be established before the Plan is confirmed, even if the creditor has not yet filed its administrative expenses claim.  As noted above, the court may enter a post-confirmation order that a reserve for certain claims be established to ensure the Plan is implemented according to its terms.  *See supra*, part I.

## III.   THE RESERVE MOTION DOES NOT SEEK MODIFICATION OF THE PLAN, AND IS NOT AN UNTIMELY OBJECTION TO CONFIRMATION.

The PAB asserts that the Certain Asbestos Claimants are "functionally" arguing that the Plan is not feasible without the requested reserve, and thus the Reserve Motion is untimely because it was not raised as an objection to confirmation of the Plan.  PAB Objection ¶¶ 2-4, at 2-3, part II.  This is a mischaracterization.  The Certain Asbestos Creditors have no quibble with the Court's findings that the Plan is feasible because, *inter alia*, the Trust has adequate funds to reasonably ensure payment of Allowed Administrative Claims, including the Certain Asbestos Creditors' claim.  Confirmation Order ¶ 57 (finding that "evidence supporting the Plan" "establishes that the Plan is feasible" and "establishes that the EFH/EFIH Debtors will have sufficient funds available to meet their obligations under the Plan").  The Certain Asbestos Creditors do disagree with the PAB's assertion that a reserve is unnecessary in light of the Court's feasibility finding, and in light of the fact that several hundred million dollars are reserved in the EFH/EFIH Distribution Account. PAB Objection at 3.

There is no question that the Trust has sufficient funds to pay the Substantial Contribution Claim.  However, there is a serious question as to whether the Trust will have retained sufficient funds if, months from now, the Substantial Contribution Claim is allowed by a final order.  If, after undisputed Allowed Administrative Claims are paid, the remaining Trust funds are disbursed to holders of allowed unsecured claims before the Substantial Contribution Claim is allowed by final order, there may not be sufficient funds remaining to pay that claim.  The Certain Asbestos

Creditors ask that the Court prevent such an occurrence by ordering the PAB to reserve the full face value of the Substantial Contribution Claim, so that it may be paid if ultimately allowed.

Contrary to the PAB's assertion, establishing such a reserve would not require any modification of the Plan. PAB Objection at 6-8. To the contrary, a reserve would ensure implementation of the Plan's requirement that Allowed General Administrative Claims will be paid in full. Plan art. II.A.1. Nor is a reserve an "alternate mechanism of payment." Rather, it requires only an accounting entry. *See Chateaugay*, 10 F.3d at 960 ("The parties agree that setting up a reserve would require only an accounting entry."). The Certain Asbestos Creditors respectfully submit that a reserve is necessary to ensure that, if ultimately allowed, the Substantial Contribution Claim is afforded the priority required by the Code and the Plan.

## CONCLUSION

For the foregoing reasons, Certain Asbestos Creditors ask that this Court enter an order requiring the Plan Administrator Board to reserve $4 million for the administrative priority Substantial Contribution Claim and to maintain that reserve until the Appeal of the Confirmation Order and the questions of whether the Substantial Contribution Claim should be allowed, and for what amount, have been finally resolved.

Dated:  May 31, 2018
      Wilmington, Delaware

Respectfully submitted:

By:  */s/ Daniel K. Hogan*
    Daniel K. Hogan (DE Bar # 2814)
    HOGAN MCDANIEL
    1311 Delaware Avenue
    Wilmington, Delaware  19806
    Telephone:  (302) 656-7540
    Facsimile: (302) 656-7599
    dkhogan@dkhogan.com

    *Counsel for Shirley Fenicle, individually and as*
    *successor-in-interest to the Estate of George*

*Fenicle, David William Fahy, John H. Jones, David Heinzmann, Harold Bissell, Kurt Carlson, and Robert Albini, individually and as successor-in-interest to the Estate of Gino Albini, and Denis Bergschneider*

-and-

Leslie M. Kelleher (admitted *pro hac vice*)
Jeanna M. Koski (admitted *pro hac vice*)
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, DC 20005
Telephone: (202) 862-5000

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, and David William Fahy*

-and-

Steven Kazan (admitted *pro hac vice*)
KAZAN MCCLAIN SATTERLEY & GREENWOOD
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
Telephone: (510) 302-1000
Facsimile: (510) 835-4913

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, and Denis Bergschneider*