**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) |
| | ) Case No. 14-10979 (CSS) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |
| | ) **Re: D.I. 13113, 13146, 13148, 13149** |
| | ) |
| | ) |

**EFH PLAN ADMINISTRATOR BOARD'S REPLY IN SUPPORT
OF THE MOTION OF THE EFH PLAN ADMINISTRATOR BOARD FOR
ENTRY OF AN ORDER SCHEDULING CERTAIN HEARING DATES AND
DEADLINES AND ESTABLISHING CERTAIN PROTOCOLS IN
CONNECTION WITH THE EFH/EFIH ALLOCATION DISPUTE**

The EFH Plan Administrator Board hereby files this reply (the "Reply") in further

support of the *Motion of the EFH Plan Administrator Board for Entry of an Order Scheduling*

*Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with*

*the EFH/EFIH Allocation Dispute* [D.I. 13113] (the "Scheduling Motion") and in reply to the

responses and objections filed in connection with the Scheduling Motion (collectively, the

"Responses").[2] In support of this Reply, the EFH Plan Administrator Board respectfully submits

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The Responses consist of (a) *EFH/EFIH Official Committee's (I) Response to the Motion of the EFH Plan Administrator Board for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the EFH/EFIH Allocation Dispute and (II) Preliminary Objection to the Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to Fix Appropriate Allocation of Certain Reserves and Expenses As Between the EFH and EFIH Debtors* [D.I. 13146] (the "EFH Committee Response"); (b) the *EFH Indenture Trustee's (A) Response to Motion of the EFH Plan Administrator Board for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the EFH/EFIH Allocation Dispute and (B)* (Continued...)

as follows:[3]

## ARGUMENT

1.      No party disputes that a scheduling order, establishing discovery protocols, and certain interim deadlines, will be helpful, if not critical, to resolving the EFH/EFIH Allocation Dispute.  In addition to technical modifications to the proposed Order to, among other things, reasonably accelerate the schedule, there remains only one material, contested issue—*can the EFH Plan Administrator Board participate in the process by submitting initial and/or supplemental written submissions regarding the Elliott Allocation Motion* (collectively, the "Submissions Process")?  For the reasons stated below, the answer is *yes*.

2.      The EFH Plan Administrator Board's participation *at the supplemental submissions stage, after economic stakeholders have had an opportunity to file initial submissions and conduct fact discovery,* may be helpful to the Court's ultimate ruling on the EFH/EFIH Allocation Dispute.  Indeed, it is the EFH Plan Administrator Board's hope that the schedule and prospect of the Hearing will create the kind of "tension on the line" that has previously caused peace to break out in these chapter 11 cases.  But, in the event peace continues to remain elusive, the EFH Plan Administrator Board may be helpful to the Court.

---

*Preliminary Objection with Respect to the Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to Fix Appropriate Allocation of Certain Reserves and Expenses As Between the EFH and EFIH Debtors* [D.I. 13148] (the "EFH Indenture Trustee Response"); and (c) the *Joint Objection of UMB Bank, N.A., as Indenture Trustee, and Elliott to the Motion of the EFH Plan Administrator Board for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the EFH/EFIH Allocation Dispute* [D.I. 13149] (the "Elliott Objection").

[3] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to them in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12653] or the Scheduling Motion, as applicable.

RLF1 19421789v.1

I.     THE EFH PLAN ADMINISTRATOR BOARD IS PERMITTED TO PARTICIPATE IN THE SUBMISSIONS PROCESS.

3.     On March 28, 2018, the Court held a telephonic status conference on the record, primarily regarding (a) NextEra's asserted $60 million administrative claim [D.I. 12671] and (b) a letter filed by the EFH Plan Administrator Board, informing the Court of the lack of progress on the EFH/EFIH Allocation Dispute and its devastating effect on EFH/EFIH Plan distributions to date [D.I. 12866].  In that context, counsel to the EFH Plan Administrator Board described how, in the absence of any progress on the EFH/EFIH Allocation Dispute, the EFH Plan Administrator Board had considered putting forth its "own proposal as to what [it] thinks is fair."  Hr'g Tr. 23:11-23:15, Mar. 28, 2018.  In particular, counsel noted that the EFH Plan Administrator Board was encouraging economic stakeholders to continue negotiating a settlement to resolve the EFH/EFIH Allocation Dispute, stating that given the history of "false springs regarding settlement," the EFH Plan Administrator Board requested the Court's guidance on the role of the EFH Plan Administrator Board "in the absence of peace breaking out."  Hr'g Tr. 24:19-25:3.  At that time, the Court noted (in what was understandably an advisory opinion at the time) that the EFH Plan Administrator Board may be conflicted with respect to the EFH/EFIH Allocation Dispute.

4.     The facts facing the Court today are critically different.  *First*, at the time of the March 28th telephonic hearing, there was no publicly available allocation proposal—Elliott has now filed a motion seeking to set an allocation [D.I. 13102] (the "Elliott Allocation Motion"), in no small part due to the EFH Plan Administrator Board's repeated efforts to push economic

RLF1 19421789v.1

stakeholders towards a process for resolving the EFH/EFIH Allocation Dispute.[4]  ***Second***, in light of the Elliott Allocation Motion, the EFH Plan Administrator Board is not asking for authority to settle the EFH/EFIH Allocation Dispute.  It is merely asking to participate in the second half of the Submissions Process.[5]

5.      In addition, the EFH Plan Administration Trust Agreement—which was a Plan Supplement document extensively negotiated between the Debtors, Elliott, and the EFH Notes Trustee, among others—permits the EFH Plan Administrator Board's participation in the Submissions Process.[6]  ***First***, the EFH Plan Administrator Board may, ***but is not required to***, retain disinterested agents to address matters, that, prior to the EFH Effective Date would have been addressed by the Disinterested Directors and Managers (such matters, "Conflicts Matters"). EFH Plan Administration Trust Agreement, ¶ 6.3 (emphasis added).  In addition, the retention of such agents is in the EFH Plan Administrator Board's "sole discretion."   EFH Plan Administration Trust Agreement, ¶ 6.1.  ***Second***, the EFH Plan Administrator Board, as Trustee,

---

[4] As set forth in greater detail in the *Response of the EFH Plan Administrator Board to the "Joint Motion of UMB Bank, N.A., as Indenture Trustee and Elliott to Fix Appropriate Allocation of Certain Reserves and Expenses As Between the EFH and EFIH Debtors"* [D.I. 13150], the EFH Plan Administrator believes that the Court should decline to grant the Elliott Allocation Motion at this time, and the relief requested therein should be addressed pursuant to the Scheduling Motion.

[5] The Elliott Objection erroneously states that the EFH Plan Administrator Board "conceded that it cannot challenge the merits of the [Elliott] Allocation Motion and will not otherwise take a position on any allocation issue," citing paragraph 9 of the Scheduling Motion. Elliott Objection, ¶ 9.  Paragraph 9 of the Scheduling Motion states that nothing in the *Scheduling Motion* takes a position on the *merits* of the Elliott Allocation Motion or the accuracy or inaccuracy of any of the statements set forth therein. Nothing in paragraph 9 or anywhere else in the Scheduling Motion contains the type of concession that Elliott alleges.

[6] Under Delaware law (the law governing the EFH Plan Administration Trust Agreement), the principle of *contra proferentem*, under which ambiguous terms will be construed against the drafter, is generally not applicable "where the terms of an agreement resulted from a series of negotiations between experienced drafters." *Tenneco Auto. Inc. v. El Paso Corp.*, No. CIV. A. 18810-NC, 2004 WL 3217795, at *8 (Del. Ch. Aug. 26, 2004). "Where all parties to a contract are knowledgeable, there is no reason for imposing sanctions against the party who drafted the final provision." *Id.* (citing *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985)).

RLF1 19421789v.1

has the power to "protect and enforce the rights to the Trust Assets. . .by any method deemed reasonably appropriate, including by judicial proceedings. . ." Id.  ***Third***, the EFH Plan Administrator Trust Agreement authorizes the EFH Plan Administrator Board to "file, withdraw, or litigate to judgment objections to Claims" in an "expeditious but orderly manner." EFH Plan Administration Trust Agreement, ¶ 1.4.  ***Fourth***, the principal purpose of the Trust is to "aid in the implementation of the [EFH/EFIH] Plan and [EFH] Confirmation Order." EFH Plan Administration Trust Agreement, ¶ 9.7.

6.      Under Delaware law, a trustee (*i.e.*, the EFH Plan Administrator Board) has a duty to deal impartially with the various beneficiaries of the trust (*i.e.*, the Holders of Allowed Unsecured Claims). *See DuPont v. Delaware Tr. Co.*, 320 A.2d 694, 699 (Del. 1974). Importantly, the duty of impartiality does ***not*** require equal treatment; rather, it "prohibits a trustee from disadvantaging particular beneficiaries for invidious reasons." *See Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*, 863 A.2d 772, 798 (Del. Ch. 2004)). No party has alleged—nor could they—that the EFH Plan Administrator Board's request to participate in the Submissions Process is driven by "invidious" reasons.   Rather, the EFH Plan Administrator Board's primary motivating factor is to release the stranglehold that the EFH/EFIH Allocation Dispute has had on EFH/EFIH Plan distributions—for the benefit of ***all*** Holders of Allowed Unsecured Claims. And, taken together, these provisions of the EFH Plan Administration Trust Agreement allow the EFH Plan Administrator Board to fulfill its duty of impartiality, by collectively placing the responsibility of protecting the Trust Assets for the benefit of the Beneficiaries in an orderly and expeditious manner in the hands of the EFH Plan Administrator Board.

7.      Moreover, counsel to the former EFH and EFIH Debtors can represent the EFH

Plan Administrator Board in connection with the EFH/EFIH Allocation Dispute.[7] The engagement letter executed between Kirkland & Ellis LLP and Kirkland & Ellis International LLP, on the one hand ("K&E") and EFH, EFIH, TCEH, and EFCH and approved pursuant to the order authorizing K&E's retention [D.I. 2052] (the "Retention Order") noted that K&E's representation of EFH and EFIH would end at the "substantial completion of [its] substantive work." Retention Order, Exhibit 1.

8. On the Effective Date, K&E's representation of EFH and EFIH ended because on the Effective Date, EFH and EFIH emerged as Sempra Texas Holdings Corp. and Sempra Texas Intermediate Holding Company LLC, respectively—each wholly-owned and controlled by Sempra.[8] Reorganized EFH and EFIH, owned by Sempra, do not have an economic or legal interest in the resolution of the EFH/EFIH Allocation Dispute. Consequently, as of the Effective Date, EFH and EFIH became former K&E clients and the EFH Plan Administrator Board became a current client. Attorney conduct is governed by the ethical standards of the court before which the attorney appears. *Innovative Memory Sols., Inc. v. Micron Tech., Inc.*, No. CV 14-1480-RGA, 2015 WL 2345657, at *1 (D. Del. May 15, 2015) (citing *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984)). The District of Delaware has adopted the Model Rules of Professional Conduct. *Id. See also* D. Del. L.R. 83.6(d); Del. Bankr. L.R. 1001-

---

[7] Paragraphs 7 through and including 13 of this Reply apply with equal weight to Richards, Layton & Finger, P.A., Delaware co-counsel to the EFH Plan Administrator Board.

[8] *See Notice of Filing of the Second Amended Supplement to the First Amended Joint Chapter 11 Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, Exhibit A [D.I. 12198] (identifying as of the Effective Date, Sempra Texas Holdings Corp. as the entity formally known as Energy Future Holdings Corp. and Sempra Texas Intermediate Holding Company LLC as the entity formally known as Energy Future Intermediate Holding Company LLC). The Reorganized Debtors, owned by Sempra, do not have an economic interest in the resolution of the EFH/EFIH Allocation Dispute.

1(b) (adopting the Local Rules of Civil Practice and Procedure of the United States District

Court for the District of Delaware).

9.     Model Rule of Professional Conduct 1.9 governs an attorney's "Duties to Former

Clients." It provides, in relevant part:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> . . .
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter [] use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or reveal information relating to the representation except as these Rules would permit or require with respect to a client.

M.R.P.C. 1.9(a), (c).

10.    In the Third Circuit, a representation violates Rule 1.9 if four elements are shown:

- the lawyer must have had an attorney-client relationship with the former client;

- the interests of the second client must be materially adverse to the interests of the former client;

- the present client's matter must either be the same as the matter the lawyer worked on for the first client, or a 'substantially related' matter;

- the former client must not have consented to the representation after consultation.

*Apeldyn Corp. v. Samsung Elecs. Co., Ltd.*, 660 F. Supp. 2d 557, 561 (D. Del. 2009).

11.    At least two of these elements are not satisfied under the present set of

circumstances. *First*, and most fundamentally, the interests of the second client (*i.e.*, the EFH

Plan Administrator Board) are not materially adverse to the interests of the former client (*i.e.*, the

7

former EFH and EFIH estates). The former EFH and EFIH entities are now wholly-owned by Sempra Energy (which has its own counsel) as Reorganized EFH and Reorganized EFIH. Reorganized EFH and Reorganized EFIH have no legal or economic interest in the EFH/EFIH Allocation Dispute. *Second*, the EFH/EFIH Allocation Dispute is not within the scope of representation K&E previously provided to EFH and EFIH. Indeed, as an inter-estate dispute, it was precisely within the bailiwick of the former Disinterested Directors and Managers and their own counsel. K&E did not—and could not have—advised EFH and EFIH on a resolution of the EFH/EFIH Allocation Dispute prior to the EFH Effective Date.

12. In short, the EFH Plan Administration Trust Agreement permits the EFH Plan Administrator Board to participate in the Submissions Process and the facts facing the Court today, including the proposed role of the EFH Plan Administrator Board, are materially different than the facts facing the Court at the March 28th telephonic hearing. In addition, EFH and EFIH are former K&E clients and K&E did not (and could not) represent or advise EFH and EFIH in connection with the EFH/EFIH Allocation Dispute prior to the Effective Date. As a result, the EFH Plan Administrator Board can participate in the Submissions Process and K&E can advise the EFH Plan Administrator Board with respect to the EFH/EFIH Allocation Dispute.

## II.    THE EFH PLAN ADMINISTRATOR BOARD CAN BE A RESOURCE TO THE COURT IN DEVELOPING THE RECORD SUPPORTING AN ULTIMATE RULING ON THE EFH/EFIH ALLOCATION DISPUTE.

13. The EFH Plan Administrator Board believes that it may be a helpful resource for the Court in assessing the Elliott Allocation Motion and the written submissions by other Participating Parties for at least three reasons. *First*, as has been the case throughout these chapter 11 cases, creditor constituencies buy and sell their positions every day (and, indeed, the EFH Plan Administration Trust Agreement expressly permits such sales). In the absence of any transfer of Claim restrictions, there is no guarantee that current economic stakeholders will

continue to hold their significant positions in three or six months down the road.  The remaining Holders of Allowed Unsecured Claims cannot be exposed to the risk that the proposed schedule disintegrates in a few months because, as a result of Claims trading, there is an imbalance of power in the EFH/EFIH Allocation Dispute (*e.g.*, a decrease in the number of organized and sophisticated parties-in-interest).  Here again, the EFH Plan Administrator Board can stabilize the schedule, as the one party that will continue to have an interest in resolving the EFH/EFIH Allocation Dispute under all circumstances.

14.    *Second*, given the likely cost (borne by Holders of Allowed Unsecured Claims at both EFH and EFIH) and delay associated with appointing new disinterested agents, neither the EFH Plan Administrator Board nor any economic stakeholder, save the EFH Indenture Trustee, is advocating for the appointment of new disinterested agents to resolve the EFH/EFIH Allocation Dispute.  That being said, there is one role that the pre-Effective Date disinterested directors and managers played that remains uncast in the Responses—the role of honest, impartial broker.  The EFH Plan Administrator Board is the only Participating Party that does not have an economic interest in the outcome of the EFH/EFIH Allocation Dispute.  At the same time, the EFH Plan Administrator Board remains cognizant that by filing an initial submission, it may inadvertently provide the goalposts on a proposed allocation of the EFH/EFIH Allocation Dispute when in fact the baseline proposal (to which all other Participating Parties are responding) is the one set forth in the Elliott Allocation Motion.  To balance these competing interests, and in its capacity solely as an honest broker with an obligation to administer Trust Assets, the EFH Plan Administrator Board proposes filing a written, supplemental submission (foregoing the initial submission) within five business days after the deadline for all other Participating Parties to file a written, supplemental submission, responding to the factual bases

RLF1 19421789v.1

set forth in the other Participating Parties' written, supplemental submissions.

15.     ***Third***, although the Claims that are the subject of the EFH/EFIH Allocation
Dispute are not factually intensive, they do require an analysis of various postpetition events
from the over four years the Debtors were in chapter 11.   No party has experienced and
participated in every aspect of these chapter 11 cases as much as the EFH Plan Administrator
Board.   For this reason alone, the EFH Plan Administrator Board is instrumental to developing
an accurate and factual record.

## III.   THE MODIFICATIONS TO THE EFH PLAN ADMINISTRATOR BOARD'S PROPOSED FORM OF ORDER SHOULD NARROW THE SCOPE OF DISPUTE IN ADVANCE OF THE JUNE 5TH HEARING ON THE SCHEDULING MOTION.

16.     Although the EFH Plan Administrator Board repeatedly attempted to engage
Elliott's counsel on modifications to the proposed Order or, at minimum, Elliott's alternative
proposed form of order [D.I. 13152] (the "Elliott Alternative Order"), such efforts have been
repeatedly rebuffed.   As a result, and having seen the Elliott Alternative Order for the first time
when it was filed 48 hours ago, the EFH Plan Administrator Board is prepared to make the
following modifications to the proposed Order in an attempt to narrow the scope of dispute:[9]

- ***Scope of EFH/EFIH Allocation Dispute***. The proposed Order has been revised to make clear that the proceedings shall govern not only the Subject Claims described in the Scheduling Motion, but also the allocation of Debtor Professional Fees (as described in the Elliott Allocation Motion and the EFH Plan Administrator Board's response thereto [D.I. 13150].[10]

---

[9] The Elliott Objection also states that the Scheduling Motion was "not filed with respect to an existing contested matter or adversary proceeding." Elliott Objection, ¶ 1. The Scheduling Motion was filed following the filing of the Elliott Allocation Motion (which is a contested matter, to say the least) and proposes a process for addressing the relief requested in the Elliott Allocation Motion.

[10] For the avoidance of doubt, there are practical limitations to the relief that can be provided in connection with a resolution of the EFH/EFIH Allocation Dispute.   In particular, over the course of a chapter 11 case that spanned nearly four years, hundreds of millions of dollars in professional fees and expenses to retained professionals have been paid by each estate in accordance with the Interim (Continued...)

10

- *Proposed Timeline.*   The EFH Plan Administrator Board supports a reasonable acceleration of the proposed schedule, as advocated by Elliott and the EFH Committee.

- *Additional Limits on Document Discovery.*  The proposed Order makes clear that a recipient of a discovery request is not required to reproduce documents it has already once produced in these chapter 11 cases.

- *Expert Testimony.*   The proposed Order expressly preserves the rights of any Participating Party to offer, in good faith, and the Court to allow, for good cause, expert testimony at the Hearing.

17.     The EFH Plan Administrator Board also objects to the following provisions of the

Elliott Alternative Order:

- *Definition of Parties and Deadline for Preliminary Objections.*   The Elliott Alternative Order seeks to limit the definition of Parties to Elliott, the Ad Hoc EFH Claimants, and any party that filed an objection to the Elliott Allocation Motion.  The objection deadline to the Elliott Allocation Motion was May 29, 2018 at 4:00 p.m. (Eastern Daylight Time).  The hearing to consider the Scheduling Motion, including the Elliott Alternative Order, is scheduled for June 5, 2018.  Elliott cannot, through the Elliott Alternative Order, bind a party to a deadline that predates entry of the Elliott Alternative Order. Such an effort plainly violates due process.  Instead, the proposed Order now includes a deadline by which a party must file a Notice of Intent (June 7, 2018 by 4:00 p.m. (Eastern Daylight Time)).

- *Confidentiality Stipulation.* Only the Elliott Objection seeks to eliminate the protections of the highly-negotiated confidential stipulation that has successfully governed these chapter 11 cases for nearly four years. As described in the response the EFH Plan Administrator Board filed to the Elliott Allocation Motion, Elliott has filed an "omnibus preliminary objection" to 19 final fee applications of debtor retained professionals.  Putting aside the procedural improprieties of a preliminary

---

Compensation Order, the Fee Committee Order, and the allocations set forth in the publicly available monthly fee statements and interim fee applications.  At no point has any party-in-interest objected to the allocations set forth in any professional's monthly fee statement or interim fee application (hundreds of which are publicly available on the docket).  It is inappropriate to stay silent in the face of such publicly available information (and the obvious implication that retained professionals were being paid in the ordinary course of business consistent with the Interim Compensation Order).  Moreover, there is simply not enough Cash available in either the EFH Unsecured Creditor Recovery Pool (*i.e.,* the pool of Cash available to satisfy Holders of Allowed EFH Unsecured Claims) or the EFIH Unsecured Creditor Recovery Pool (i.e., the pool of Cash available to satisfy Holders of Allowed EFIH Unsecured Claims) to permit a massive reallocation of such already-paid professional fees and expenses.

11

objection that does not raise any actual objections, Elliott should not be permitted to use information it receives in connection with the EFH/EFIH Allocation Dispute (particularly with respect to the allocation of Debtor Professional Fees) improperly in connection with its "omnibus" preliminary objection to fees. This is identical to the concern the Debtors expressed in connection with Elliott's attempts to evade confidentiality restrictions associated with communications and negotiations among the Fee Committee.

18.     The EFH Plan Administrator Board's modifications to the proposed Order are set forth in **Exhibit A**, and a redline of the proposed Order compared to the version filed with the Scheduling Motion is set forth in **Exhibit B**. The EFH Plan Administrator Board continues to be open to further discussions with all economic stakeholders.

## IV.     THE EFH INDENTURE TRUSTEE'S RESPONSE IS EITHER ADDRESSED THROUGH THE MODIFICATIONS TO THE PROPOSED FORM OF ORDER OR SHOULD OTHERWISE BE OVERRULED.

19.     The EFH Indenture Trustee requests four modifications to the proposed Order. *First*, it requests that any settlement of the EFH/EFIH Allocation Dispute be approved under Rule 9019 (to the extent applicable).   EFH Indenture Trustee Response, ¶ 15(i).   The modifications to the proposed Order reflect this addition. Proposed Scheduling Order, ¶ II(10)(m). *Second*, it requests that the EFH Plan Administrator Board or a fiduciary be required to monitor the litigation related to the EFH/EFIH Allocation Dispute. Id. at 15(ii).  As set forth herein, the EFH Plan Administrator Board requests the ability to file a supplemental written submission, evaluating the factual statements underpinning the supplemental written submissions filed by the other Participating Parties.  Given the discrete scope of the EFH/EFIH Allocation Dispute and the Claims addressed by the proposed Order, on the one hand, and the inevitable time and cost delay associated with appointing new disinterested agents (to the detriment of all Holders of Allowed Unsecured Claims) on the other hand, it would not be efficient to appoint new disinterested agents at this time. *Third*, the EFH Indenture Trustee requests authority to "actively litigate" the EFH/EFIH Allocation Dispute. Id. at 15(iii).  The

RLF1 19421789v.1

EFH Indenture Trustee is already identified as a Participating Party. *Fourth*, the EFH Indenture Trustee requires the payment of its reasonable fees and expenses, "consistent with the terms of the EFH Confirmation Order." Id. at 15(iv).  Consistent with the terms of the EFH Confirmation Order and the Plan, the EFH Notes Trustee is free to file an application under section 503(b) of the Bankruptcy Code to request payment of its fees and expenses in connection with the EFH/EFIH Allocation Dispute.  There is no basis for such a finding in connection with entry of the Order, before the filing of an application and the presentation of any evidence regarding the EFH Indenture Trustee's asserted substantial contribution.

## CONCLUSION

20.    For the reasons stated herein, the EFH Plan Administrator Board respectfully requests that the Court overrule the Responses and enter the proposed Order as set forth in **Exhibit A**.

*[Remainder of page intentionally left blank.]*

RLF1 19421789v.1

Dated: May 31, 2018
      Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
            defranceschi@rlf.com
            madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        edward.sassower@kirkland.com
            stephen.hessler@kirkland.com
            brian.schartz@kirkland.com
            aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
            marc.kieselstein@kirkland.com
            chad.husnick@kirkland.com
            steven.serajeddini@kirkland.com

*Co-Counsel to the EFH Plan Administrator Board*