IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> ENERGY FUTURE HOLDINGS CORP., *et al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No. 14-10979 (CSS) <br><br> (Jointly Administered) |

**STATEMENT AND PRELIMINARY OBJECTION OF AD HOC EFH CLAIMANTS TO JOINT MOTION OF UMB BANK, N.A., AS INDENTURE TRUSTEE, AND ELLIOTT TO FIX APPROPRIATE ALLOCATION OF CERTAIN RESERVES AND EXPENSES AS BETWEEN THE EFH AND EFIH DEBTORS[1]**

The Ad Hoc EFH Claimants,[2] by and through their undersigned counsel Kasowitz Benson Torres LLP and Hogan ♦ McDaniel, hereby submit their preliminary objection (the "Preliminary Objection") to the *Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to Fix Appropriate Allocation of Certain Reserves and Expenses as between the EFH and EFIH Debtors* [D.I. No. 13102] (the "Motion"). In support of their Preliminary Objection, the Ad Hoc EFH Claimants respectfully represent as follows:

**PRELIMINARY STATEMENT**

The Movants and the Ad Hoc EFH Claimants have agreed that the June 5, 2018 hearing will be only a scheduling conference and that the Ad Hoc EFH Claimants need not file a substantive objection. To that end, the Ad Hoc EFH Claimants have been negotiating a consensual scheduling order with Elliott but to date, these efforts have been unsuccessful.

---

[1] Terms not defined herein shall have the meaning ascribed to them in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, dated February 15, 2018 [D.I. 12653] (the "Plan").

[2] The Ad Hoc EFH Claimants include (a) Alta Fundamental Advisers LLC, (b) Angelo, Gordon & Co., L.P., (c) Apollo Management Holdings L.P., (d) Brookfield Asset Management Inc., (e) Contrarian Capital Management, LLC, and (f) Farmstead Capital Management, LLC, and each of their related funds. *Verified Statement of Kasowitz Benson Torres LLP and Hogan ♦ McDaniel Pursuant to Bankruptcy Rule 2019* [D.I. No. 12900] at 1.

Barring a resolution, the Ad Hoc EFH Claimants support the schedule proposed by the Plan Administrator Board. Notwithstanding the Movants' protestations otherwise, the Ad Hoc EFH Claimants need appropriate discovery to ensure that the remaining assets at EFH are preserved for the benefit of its creditors. Because, as discussed below, the Motion, if granted, would eviscerate EFH creditor recoveries.

\* \* \* \* \*

The Motion rises – and ultimately falls – based on the absurd predicate that the Chapter 11 cases were designed primarily to benefit EFH.

First, the Movants argue that half of any break-up fee payable to NextEra should be borne by EFH even though EFH creditors stood to gain nothing from the NextEra transaction when it was cancelled. Then, Movants argue, EFH should pay for Elliott's fees payable as a substantial contribution for fighting payment of the NextEra Break-Up Fee (even though the Break-Up Fee has not been disallowed on a final basis as it is subject to a pending appeal). Finally, the Motion seeks to reallocate a substantial portion of the E-Side professional fees and expenses so that they are borne by EFH.

The central argument advanced by the Movants is that EFH would have faced "Tax Armageddon" if the E-Side plan were not consummated via a tax-free deconsolidation. Without such a deconsolidation, EFH would have been swamped by a multi-billion tax bill, which would have eliminated any recovery by EFH's unsecured creditors. Thus, the argument goes, because of this structure, half or more of the administrative costs in dispute were for the "benefit" of EFH, rather than EFIH.

The incongruity of the Movants' argument is brazenly apparent in the Motion. The Motion concedes that if "the full amount of the NextEra Termination Fee Claim is allowed, *the*

*Movants understand that the proposed allocations set forth above would render the EFH estate administratively insolvent in violation of paragraph 150 of the E-Side Confirmation Order*." (emphasis added). So, while arguing that the entire case was brought to avoid Armageddon at the EFH Level, the Motion would doom EFH to Armageddon if it succeeds.

The Motion, based on hypocrisy, revisionist history and self-serving statements, should be denied. The Ad Hoc EFH Claimants will propose and prove an appropriate allocation of the disputed fees and expenses following appropriate discovery.

## BACKGROUND

1.  On February 15, 2018, the Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, the EFH Debtors and the EFIH Debtors filed the Plan. [D.I. No. 12653]. On February 27, 2018, this Court entered an order confirming the Plan. [D.I. No. 12763]. The effective date of the Plan (the "Effective Date") occurred on March 9, 2018.

2.  Prior to the Effective Date, the EFH Debtors and the EFIH Debtors attempted to negotiate an allocation of certain administrative expenses between the two estates, which currently remain in dispute (the "Allocation Dispute"). *Motion of the EFH Plan Administrator Board for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the EFH/EFIH Allocation Dispute* [D.I. No. 13113] (the "Scheduling Motion"), ¶ 5. In particular, the Allocation Dispute centers on the allocation of several categories of administrative expenses: (1) a $275 million plan reserve (the "NextEra Plan Reserve") to pay a breakup fee (the "NextEra Break-Up Fee") asserted by NextEra Energy, Inc. ("NextEra") which is currently disputed;[3] (2) professional fees incurred by the EFH/EFIH

---

[3] Whether or not the NextEra Break-Up Fee will be allowed as an administrative expense is a matter currently pending on appeal before the Third Circuit. *NextEra Energy, Inc. v. Energy Future Holdings Corp., et al. (In re Energy Future Holdings, Inc.)*, No. 18-1109 (3d Cir. 2018) (the "NextEra Appeal"). NextEra has also asserted an administrative claim in the alternative in the event its Break-Up Fee claim is disallowed.

3

Committee (the "Unsecured Creditors' Committee Fees"); (3) professional fees incurred by the EFH Debtors and the EFIH Debtors (the "Debtors' Professional Fees"); and (4) a substantial contribution claim (the "Substantial Contribution Claim") of Elliott Associates, L.P., Elliott International, L.P., and the Liverpool Limited Partnership ("Elliott").  Unfortunately, those efforts were unsuccessful.

3. The Motion makes several general arguments regarding allocation that do not square with the history of this case.  Specifically, it alleges that:

- Administrative fees from the NextEra Plan Reserve should be split 50% EFH and 50% EFIH, because:  (1) EFH faced a "Tax Armageddon"; which EFIH saved it from; (2) a $165 million increase in the NextEra Break-Up Fee to NextEra led to increased hypothetical recoveries to EFH; and (3) after the proposed NextEra transaction failed, the E-Side Debtors still managed to successfully pursue a tax-exempt transaction.  Motion at 9-14, 20-22.

- The Unsecured Creditors' Committee Fees should be split 70% EFH and 30% EFIH, because fees were incurred primarily:  (1) in connection with the TCEH settlement; (2) in connection with litigation regarding "make-whole" claims; and (3) in connection with the NextEra transaction and plan, which purportedly benefited EFH primarily.  Motion at 14-17, 23-26.

- The Debtors' Professional Fees should be split 50% EFH and 50% EFIH, because:  (1) they primarily were incurred for work performed in connection with the NextEra transaction, to challenge "make-whole" claims which, if successful, would have inured to the benefit of EFH; (2) a "Tax Armageddon" was avoided; (3) the TCEH settlement was preserved and asbestos liability was assumed by the purchaser; and (4) Kirkland & Ellis LLP's fees should be adjusted from 90% EFIH and 10% EFH to 50% each because their work was primarily for EFH's benefit.  Motion at 14-17, 27-32.

- At least 30% of the Substantial Contribution Claim should be allocated to EFH because:  (1) Elliott allegedly moved the estates toward a restructuring transaction that avoided a "Tax Armageddon" and facilitated a "value-maximizing" transaction with Sempra; and (2) Elliott obtained an order disallowing the $275 million NextEra Break-Up Fee.  Motion at 17-18, 32-33.

**PRELIMINARY OBJECTION**

I. **Elliott and the Trustee Misconstrue the Law in the Motion and Contradict a Prior Position Taken by Elliott in the NextEra Appeal.**

4.  As discussed below, all of Elliott's and the Trustee's positions regarding allocation fail because they are based on incorrect factual premises. In addition, the Motion is premised on the flawed legal position that whether an administrative expense provides a benefit to an estate under 11 U.S.C. § 503(b) is determined solely as of the date that the expense is incurred and that subsequent events may not be considered. This position contradicts the position that Elliott is taking in the NextEra Appeal. *See* NextEra Appeal [D.I. No. 003112867867], filed March 5, 2018 (the "Elliott Brief") at 24-26, 33-34, 40-46. In particular, Elliott argued that, with respect to the NextEra Break-Up Fee, there was no benefit to the estates "to pay a break-up fee . . . many, many times the amount expended in pursuit of approval," where a closing condition failed to occur, "thus making the transaction impossible to complete and forcing Debtors to pursue a *lower-value* alternative," and resulting in the "payment of hundreds of millions of dollars," which was "a recipe for destroying the estate, not preserving it." Elliott Br. at 25, 42-43 (emphasis in original).

5.  In support of this proposition, Elliott argued that subsequent events in a bankruptcy case may be considered in determining whether an administrative expense provides a substantial benefit to an estate. *Id.* Elliott cited ample authority for this proposition in the Elliott Brief, including binding Third Circuit authority. *See, e.g.*, *In re Reliant Energy Channelview LP*, 594 F.3d 200, 208 (3d Cir. 2010) (stating that "Bankruptcy Court's decision was shown to be correct" based on subsequent higher bid placed on the debtor's assets); *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 535, 537 (3d Cir. 1999) (finding that prospective purchaser could not meet "heavy burden" to allow administrative

expense where $4.25 million break-up fee request was undermined by the fact the "winning bid was no more than $1,000,000 higher than Calpine's final offer"); *Cramer v. Mammouth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954-55 (1st Cir. 1976) (declining to award priority to pay for employees' severance based upon unrejected contract where the claims, which related to pre-petition services, did not provide any value to the debtor-in-possession); *In re President Casinos, Inc.*, 314 B.R. 786, 789 (Bankr. E.D. Mo. 2004) (relying on *O'Brien* and denying application for break-up fee, finding no benefit to the estate based on multiple contingencies to closing controlled by events outside the bankruptcy case).

6. In sum, Elliott and the Trustee cannot now argue that the result should be different with respect to the Motion and the Allocation Dispute than what Elliott filed in *its own* brief. Any attempt to distinguish the cases cited in the Elliott Brief as specific to the context of break-up fees would be inapposite, as Elliott has already conceded (correctly) in the Elliott Brief that the analysis with respect to a break-up fee is no different than for any other administrative expense. Elliott Br. at 40 ("[T]he allowability of break-up fees, *like that of any other administrative expenses*, depends on the requesting party's ability to show that the *fees were actually necessary to preserve the value of the estate*.") (first emphasis added) (quoting *Reliant Energy*, 594 F.3d at 206).

7. Movants' arguments contradicting the position that Elliott took in the Elliott Brief are not only wrong, but, as discussed below, rely on factual contentions which have previously been rejected by this Court.

**II.    Elliott and the Trustee Misconstrue and Attempt to Rewrite the History of this Case with Respect to the Factual Issues Raised in the Motion**

8. Elliott and the Trustee seek to rewrite the history of this proceeding by contending that these cases were administered primarily to avoid a "Tax Armageddon," in which EFH –

purportedly alone – would face $7 billion in tax liability in the event that a taxable sale of the Oncor assets occurred. Motion at 2. This assertion is belied by the extensive record in this case.

9. The potential taxable sale of Oncor was thoroughly litigated in connection with the Debtors' motion to approve bid procedures by several parties in interest, including EFIH creditors [D.I. No. 2087] (the "Bid Procedures Motion"). Numerous creditor groups filed objections to the Bid Procedures Motion. For example, Delaware Trust Company ("Delaware Trust"), the indenture trustee for the 10% Senior Secured Notes Due 2020 issued by EFIH, objected on the ground, among others, that the Debtors attempted to "pre-bake the market" for a non-taxable transaction, to the detriment of EFIH and its creditors. [D.I. No. 2385] at 4. In particular, Delaware Trust asserted that potential buyers would pay more for Oncor in a taxable transaction and that the tax liability would be "stranded" at the EFH level and that the independent director of EFIH was not properly performing his fiduciary duties. *Id.* at 9-22.

10. The Debtors, in a memorandum filed to address tax issues implicated in a potential sale of the Debtors, asserted that because EFH is a holding company without assets to satisfy a $7 billion tax liability, the IRS would likely oppose any sale that would result in such a large "stranded liability" from its disregarded subsidiaries. [D.I. No. 2296] at 4, 15-17. The Debtors outlined a number of potential contingencies that could result in EFH tax liability in the event that the IRS did not successfully prevent a taxable transaction from occurring, as well as ways to mitigate that liability. *Id.* at 5, 10, 18-19. In particular, the Debtors asserted that an EFH fiduciary may deem it necessary to make a "check-the-box" election for EFIH. The election would cause EFIH to be taxable as a corporation for federal income tax purposes, such that it would become severally liable for the tax liability of the EFH group. *Id.* at 20-21. Thus, because

the recoveries of EFIH's creditors also were at significant risk from a taxable transaction, a tax-free deconsolidation was in the best interests of all constituencies.

11.     The Court, however, after a four-day evidentiary hearing on the merits, found that the Debtors' bidding procedures would be considered a valid exercise of business judgment, after obtaining approval from each Debtor's board. [D.I. No. 2699] at 18:11-19:2, 25:4-25. The Court rejected Delaware Trust's contention that the Debtors were singularly focused on tax-free transactions, and found that time would be needed to allow for such alternative transactions to be formulated, even though such alternative transactions were unlikely to occur. *Id.* at 12:20-22, 15:9-14, 22:6-12. The Court also credited the testimony of Evercore, the Debtors' financial advisors, that a taxable transaction was "unlikely" because potential buyers would be concerned about the risks of such a transaction. *Id.* at 22. The Court subsequently entered an order approving of the Debtors' bidding procedures, as modified by its ruling. [D.I. No. 3295] (the "Bid Procedures Order").

12.     Thus, the Court recognized the clear risk that neither the IRS (which would litigate the matter) nor potential bidders (who may not even bid) would simply accept a taxable transaction. The issue whether avoiding a "Tax Armageddon" was solely a benefit to EFH or was a benefit to both the EFH and EFIH estates was thus settled nearly four years ago when the Court granted the Bid Procedures Order. *Id.*

## NOTICE

13.     Notice of this Preliminary Objection has been provided to: (a) counsel to the Debtors; (b) counsel to the Plan Administrator Board; (c) the Office of the United States Trustee for the District of Delaware; and (d) parties entitled to receive notice in these chapter 11 cases

pursuant to Federal Rule of Bankruptcy Procedure 2002. The Ad Hoc EFH Claimants respectfully submit that under the circumstances, no further notice is required.

## CONCLUSION

WHEREFORE, the Ad Hoc EFH Claimants respectfully request that this Court enter an order denying all relief requested in the Motion.

Dated: June 1, 2018
　　　　Wilmington, Delaware

                          HOGAN ♦ MCDANIEL

                          By: */s/ Garvan F. McDaniel*
                          Garvan F. McDaniel, Esq. (DE #4167)
                          1311 Delaware Avenue
                          Wilmington, Delaware 19806
                          Telephone: (302) 656-7540
                          Facsimile: (302) 656-7599
                          Email: gfmcdaniel@dkhogan.com

                                – and –

                          KASOWITZ BENSON TORRES LLP
                          David S. Rosner, Esq.
                          Andrew K. Glenn, Esq.
                          1633 Broadway
                          New York, New York 10019
                          Telephone: (212) 506-1700
                          Facsimile: (212) 506-1800
                          Email: drosner@kasowitz.com
                                aglenn@kasowitz.com

                          *Co-Counsel to the Ad Hoc EFH Claimants*