

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

June 11, 2018

**VIA ECF AND HAND DELIVERY**

The Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

> **Re:** ***In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS) (Bankr. D. Del.) –
> Letter Brief in Connection with the EFH Plan Administrator Board's Proposed
> Participation in the Allocation Dispute**

Dear Judge Sontchi:

At Your Honor's request, we respectfully submit this letter brief on behalf of UMB Bank, N.A., as Indenture Trustee, Elliott Associates, L.P., Elliott International, L.P. and The Liverpool Limited Partnership (collectively, "Movants") in connection with the *Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to Fix Appropriate Allocation of Certain Reserves and Expenses as Between the EFH and EFIH Debtors* [D.I. 13102] (the "Allocation Motion").[1]

The EFH Plan Administrator Board (the "PAB"), as Trustee under the EFH Plan Administrator Trust Agreement (the "Trust Agreement"), cannot be a party in proceedings on the Allocation Motion for three reasons.[2] ***First***, the E-Side Confirmation Order, Sempra Plan, and Trust Agreement do not authorize, and instead prohibit, the PAB's substantive participation in disputes regarding the allocation of Material Administrative Expense Claims between the EFH and EFIH estates. ***Second***, any substantive position taken by the PAB would be adverse to a class of beneficiaries and thus violate the fiduciary obligations it owes to that class of beneficiaries. ***Third***, the PAB cannot act as a purported "honest broker" because its principal and professionals will be called upon to explain and defend substantive positions taken during the chapter 11 cases.

**A.     The Governing Documents Preclude the PAB from Being a Party Participant.**

As argued at the June 5, 2018 hearing, the E-Side Confirmation Order, Sempra Plan, and Trust Agreement do not authorize the PAB to be a party in a contested matter regarding allocation. June 5, 2018 Hr'g Tr. 29:14-38:19. To the contrary, these documents define such a matter as a "Conflict Matter" and expressly limit the PAB's participation to the appointment of disinterested representatives on behalf of EFH and EFIH, respectively.

---

[1]     Capitalized terms used but not defined herein shall have the meanings set forth in the Allocation Motion.

[2]     Movants also incorporate by reference the arguments set forth in the Allocation Motion, Movants' reply in support of the Allocation Motion [D.I. 13164], and Movants' objection to the PAB's motion for a scheduling order in connection with the allocation dispute [D.I. 13149].

ROPES & GRAY LLP

- 2 -

Paragraph 153 of the E-Side Confirmation Order defines any litigation concerning a "Material Allocation Order" as a "Conflict Matter" [D.I. 12763 ¶ 153]. A "Conflict Matter" is defined as any matter "that, prior to the EFH Effective Date, would have been addressed by those certain disinterested directors of the EFH/EFIH Debtors and their advisors." Trust Agreement § 6.3. The Material Administrative Expense Claims addressed in the Allocation Memo would and should have been addressed by these Disinterested Directors. For one, there is no dispute that the allocation of any allowed NextEra Termination Fee was a matter left to the Disinterested Directors. *See* Plan Art. IV.D. Moreover, because the EFIH Debtors and presumably their Disinterested Director had already agreed to support Elliott's request for a substantial contribution claim at EFIH, [D.I. 12763 ¶ 110] any opposition to its allowance at EFH "would have been addressed," and in fact was addressed, by the Disinterested Directors at EFH. So too was the allocation of the Committee's professional fees. *See* Plan Art. IV.D. Thus, the E-Side Confirmation Order, Sempra Plan, and Trust Agreement prohibit the PAB from being a party to proceedings on the Allocation Motion.

The PAB's contrary reading of these governing documents is meritless. The pending allocation disputes were well-known at the time of confirmation proceedings. Had the participants in those proceedings and negotiations wanted to empower the PAB to be a party-litigant to any allocation dispute, they could have expressly provided for such authority in the Sempra Plan, the E-Side Confirmation Order, or the Trust Agreement. They did not. Instead, as set forth above, the E-Side Confirmation Order and Trust Agreement implement the Court's repeated observation that a fiduciary of two separate estates faces an inherent conflict in any dispute between those estates, *see, e.g.,* Mar. 28, 2018 Hr'g Tr. 40:7-21, and thus provide that the PAB "may" appoint disinterested representatives for the two beneficiary classes. Trust Agreement § 6.3. Nor should the Court accept the PAB's contention that the use of the word "may," as opposed to "shall," to describe its authority to appoint disinterested representatives permits the PAB to participate directly as a party-litigant in Conflict Matters. The use of "may" simply means the PAB has the discretion to appoint disinterested representatives; it does not mean it may choose whether to be a party-litigant or not.[3] Here, the PAB correctly chose not to appoint disinterested representatives because the two beneficiary classes are already adequately represented, and appointing disinterested representatives would only increase cost and cause delay.[4]

The PAB's reliance on other provisions in the Trust Agreement is similarly misplaced. First, the E-Side Confirmation Order, not the Trust Agreement, governs the PAB's authority in post-confirmation proceedings. Trust Agreement § 9.7. Second, the expansive reading of the Trust Agreement urged by the PAB is not justified given the underlying facts and circumstances. For example, although Section 6.1 of the Trust Agreement identifies *eighteen* separate categorical powers granted to the PAB, none of these authorize it to litigate allocation disputes. Instead, the PAB attempts to shoehorn its participation in these proceedings into Section 6.1(e), which authorizes the PAB to "protect and enforce the rights to the Trust Assets vested in the Trustee by

---

[3]   In addition, the PAB can no longer engage Disinterested Agents to litigate the Allocation Motion, because no Disinterested Agent has timely objected or responded to the Allocation Motion.

[4]   Fed. R. Bankr. P. 9014 contemplates participation in a contested matter by the movants and "the party against whom relief is sought." No relief is sought against the PAB. Instead, one class of beneficiaries seeks relief against another.

ROPES & GRAY LLP

- 3 -

this Agreement," by claiming that this provision covers the right to advocate a substantive position regarding allocation.[5]  The Allocation Motion does not, however, place the Trust Assets at risk; the Allocation Motion only concerns how the Trust Assets are to be distributed between two competing beneficiary classes for whom the PAB serves as a fiduciary.

The PAB's other efforts to find authorization for its participation in the Trust Agreement fare no better.  The PAB points to Section 1.4 of the Trust Agreement, which gives it the power to "file, withdraw, or litigate to judgment objections to Claims."  Being a party litigant in an allocation dispute does not involve filing, withdrawing, or litigating any Claims.  In fact, the Allocation Motion does not address the allowance or disallowance of any Material Administrative Expense Claims in any respect, but only concerns which estate will bear the expense of those claims, if allowed.  [D.I. 13102 at 5 n.4]

The PAB also points to Section 9.7 of the Trust Agreement, which provides that "[t]he principal purpose of the Trust and this Agreement are to aid in the implementation of the Plan and the Confirmation Order and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order."  But this provision grants no substantive rights to the PAB.  Instead, it simply stands for the unremarkable proposition that the Trust Agreement is subject to the Sempra Plan and E-Side Confirmation Order, and that the E-Side Confirmation Order controls in the event of any conflict or inconsistency.[6]

In sum, the Allocation Motion is litigation concerning a Material Allocation Order that constitutes a Conflict Matter in which the PAB is not permitted to participate, except through disinterested representatives appointed for each separate class of beneficiaries.

**B.    Any Substantive Participation by the PAB Violates Applicable Trust Law.**

The PAB's substantive participation in the allocation dispute also would violate the basic fiduciary duties applicable to trustees: (i) the duty to deal impartially with trust beneficiaries; and (ii) the duty of loyalty.  *See Cargill, Inc. v. JWH Special Circumstance LLC*, 959 A.2d 1096, 1113 n.68 (Del. Ch. 2008) (noting that "[i]n addition to the duties of care and loyalty, a trustee has other duties, including . . . to remain impartial").

**1.    Duty of Impartiality**

It is well settled that "where there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them."  *Pres. & Fellows of Harvard Coll. v. Glancy*, No. 18790, 2003 WL 21026784, at *18 (Del. Ch. Mar. 21, 2003) (internal quotations omitted); *Cannon v. Denver Tramway*

---

[5]    "Trust Assets" is defined in the Trust Agreement as (i) consideration provided by Sempra under the merger agreement and settlement agreement, (ii) cash on hand of the Debtors, (iii) funds in the professional fee escrow accounts established under the Sempra Plan, and (iv) retained causes of action under the Sempra Plan.  *See* Trust Agreement at Recital E.

[6]    Regardless, the specific language on the allocation dispute set forth in paragraph 153 of the E-Side Confirmation Order and Section 6.3 of the Trust Agreement overrides any general grants of authority set forth elsewhere in the Trust Agreement.  *See Brinckerhoff v. Tex. E. Prods. Pipeline Co.*, 986 A.2d 370, 387 (Del. Ch. 2010).

ROPES & GRAY LLP

- 4 -

*Corp.*, 373 A.2d 580, 583 (Del. 1977) ("[A] trustee must deal impartially with the several beneficiaries of a trust."); *Dupont v. Del. Trust Co.*, 320 A.2d 694, 699 (Del. 1974) ("It is axiomatic that where there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them.").

Contrary to the PAB's suggestion, a trustee's duty of impartiality extends beyond a duty to refrain from "invidious" unfairness to a particular beneficiary. The lone case cited by the PAB does not say that a breach only happens if there is invidious action—it simply says that invidious action suffices to show a breach. *See Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*, 863 A.2d 772, 798 (Del. Ch. 2004). A trustee may also breach its duty of impartiality by taking a position adverse to one beneficiary in favor of another. *See Glancy*, 2003 WL 21026784, at *18 (suit challenging trustees' shareholder agreement could proceed where agreement meant trustees had "bound themselves to act in a discriminatory manner against" certain beneficiaries); *see also McNeil v. Bennett*, 792 A.2d 190, 212 (Del. Ch. 2001) (trustees "breached their fiduciary duties by failing to give impartial consideration to [one particular beneficiary's] interests"), *aff'd as modified*, 798 A.2d 503 (Del. 2002).

Adversity in litigation is textbook partiality, not the opposite. Trust law is clear that where there is "a contest between beneficiaries as to their shares, the trustee has neither a duty ***nor a right*** to participate in the litigation ***but should stand neutral***." Bogert's Trusts' shareholder and Trustees § 581 n.9 (emphasis added); *accord* Restatement (Third) of Trusts § 79 cmt. c (2007) ("[I]n . . . litigation involving the interpretation of the beneficial-interest provisions of a trust, or . . . other disputes strictly among the beneficiaries over matters of trust administration, ***it is the duty of the trustee not to become an advocate*** but to remain neutral." (emphasis added)); *see also Matter of Duke*, 305 N.J. Super. 408, 440, 702 A.2d 1008, 1023–24 (Ch. Div. 1995) ("in a dispute between two parties claiming to be beneficiaries, ***a trustee may not advocate for either side or assume the validity of either side's position***" (emphasis added)).

Here, the PAB's participation in the allocation dispute would necessarily involve taking a substantive position, and thus advocating, in favor of one class of beneficiaries and against the other. As recognized by this Court, "the entire issue is which estate [EFH or EFIH] gets more than the other estate." Mar. 28, 2018 Hr'g Tr. 40:18-21. Accordingly, the PAB cannot take a substantive position in the allocation dispute without violating its fiduciary duty of impartiality.

## 2.    Duty of Loyalty

The duty of loyalty requires a trustee to act and administer the trust solely in the interests of beneficiaries and to avoid any self-interest. *See Gans v. MDR Liquidating Corp.*, No. CIV. A. 9630, 1991 WL 114514, at *3 (Del. Ch. June 25, 1991) ("The trustee, as a fiduciary, owes the beneficiaries the duty of loyalty and must exclude all self interests." (citing Bogert's Trusts and Trustees § 543)). The duty of loyalty also requires trustees to refrain from entering into transactions or taking positions adverse to the interest of beneficiaries. *See* Bogert's Trusts and Trustees § 543. Moreover, "Delaware courts have found the fiduciary duty of loyalty to be stricter in trust law than corporate law." *Cargill*, 959 A.2d at 1113 (citations omitted).

ROPES & GRAY LLP

- 5 -

As noted above, any substantive position taken by the PAB in the allocation dispute necessarily will be adverse to one class of beneficiaries. In addition, based on the PAB's filings thus far, it is clear that a principal goal of the PAB is to defend proposed professional fee allocations made by the Debtors' pre-Effective Date professionals rather than to review and assess independently such allocations solely with the interests of Trust beneficiaries in mind. *See* [D.I. 13150 ¶¶ 6–9]. That objective—and in particular the need to defend positions the PAB and its counsel previously took as representatives of the Debtor—runs counter to the PAB's current fiduciary obligations to at least one class of its beneficiaries. The PAB cannot both discharge its present fiduciary duty of loyalty to both classes of beneficiaries *and* defend its pre-confirmation positions at the same time.[7]

**C.      Practical Considerations Weigh Against the PAB Being a Party.**

The sole member of the PAB—Anthony Horton—and many of the PAB's advisors will be key fact witnesses in the allocation dispute, including in connection with (i) the tax implications of the bankruptcy filings and proposed restructuring transactions, and (ii) the efforts and beneficiaries associated with asbestos liabilities, make-whole claims, and the TCEH/EFH Settlement Agreement, among other issues. While the E-Side Debtors may be "former clients" of the PAB's counsel, the activities of those former clients' representatives (including Mr. Horton and Mr. Keglevic), the advice they received, and the decisions they made are at the center of the pending allocation dispute. Thus, the PAB's participation as a party-litigant would preclude it from being an "honest broker," and instead place it and its advisors in the untenable position of advocating an allocation position on behalf of a newly created entity under the Sempra Plan (*i.e.*, the PAB) while simultaneously defending and explaining positions taken by the PAB's predecessors and their advisors. These dual roles cannot be reconciled.

*       *       *

For these reasons, and as further described at the June 5 hearing, the PAB should be prohibited from acting as a litigant in proceedings over the Allocation Motion.[8] To be clear, however, the PAB will still play an important role as a recipient of third-party discovery and potential fact witness. But its role should not extend any further. A dispute involving competing interests of separate groups of Trust beneficiaries can and should be resolved by those beneficiaries (or subgroups thereof) without the involvement of the PAB which serves as a fiduciary for both groups of beneficiaries.

---

[7]      In addition, "a trustee's failure to adhere to the requirements set down in the trust instrument is itself a breach of loyalty." *Cargill*, 959 A.2d at 1113 (internal quotations and citations omitted). The PAB is thus breaching its fiduciary duty of loyalty by failing to adhere to the requirements of Section 6.3 of the Trust Agreement.

[8]      Although the Court expressed a desire to have a fiduciary participate on behalf of the EFH and EFIH creditor bodies, those creditors are more than adequately represented by the current parties to the allocation dispute. UMB is the indenture trustee for the only exclusively EFIH class of claims, of which class Elliott owns approximately 75% of the claims that voted on the Sempra Plan. [D.I. 12164; 12895-1]. The Ad Hoc EFH Claimants, on the other hand, purport to hold more than $300 million in claims against EFH.

ROPES & GRAY LLP

- 6 -

Respectfully submitted,


*/s/* Gregg M. Galardi, Esq.
Gregg M. Galardi, Esq.
Ropes & Gray LLP