# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

300 North LaSalle
Chicago, Illinois  60654

Marc Kieselstein, P.C.
To Call Writer Directly:
(312) 862-3029
marc.kieselstein@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

June 11, 2018

**By Email**

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge
United States Bankruptcy Court for the
District of Delaware
824 Market Street, 5th Floor
Wilmington, Delaware 19801

Re:    *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979

Dear Judge Sontchi:

On behalf of the EFH Plan Administrator Board, we write this letter in connection with the hearing your Honor held on June 5, 2018 (the "June 5 Hearing").[1]  As set forth herein, the statement the EFH Plan Administrator Board filed in response to the Elliott Allocation Motion [D.I. 13150] (the "Response"), and the reply the EFH Plan Administrator Board filed in support of the Scheduling Motion [D.I. 13163] (the "Reply"), the EFH Plan Administrator Board believes that **the EFH Plan Administration Trust Agreement, the Plan, the Confirmation Order, and applicable trust law permit the EFH Plan Administrator Board to participate as a Party** in the schedule.

## I.    The EFH Plan Administration Trust Agreement.

The EFH Plan Administration Trust Agreement is an EFH/EFIH Plan Supplement document that was extensively negotiated between the Debtors, Elliott, and the EFH Indenture Trustee. A number of provisions read independently and collectively permit the EFH Plan Administrator Board to participate as a Party:

- ***Section 6.3: Agents, Professionals, Consultants, Employees***: The EFH Plan Administrator Board may, ***but is not required to***, retain disinterested agents to address matters, that, prior to the EFH Effective Date would have been addressed by the Disinterested Directors and

---

[1]    Capitalized terms used, but not otherwise defined, herein shall have the same meanings set forth in the Scheduling Motion and Elliott Allocation Motion, as applicable.

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
June 11, 2018
Page 2

Managers (such matters, "Conflicts Matters"). EFH Plan Administration Trust Agreement, ¶ 6.3 (emphasis added). In addition, the retention of such agents is in the EFH Plan Administrator Board's "*sole discretion*."[2] Id. (emphasis added).

- *Section 6.1: Powers of the Trustee*: The EFH Plan Administrator Board, as trustee, has "all of the rights, powers, and privileges. . .as otherwise provided by applicable law" and has "any powers reasonably incidental thereto." EFH Plan Administration Trust Agreement, ¶ 6.1. As described below, Delaware trust law permits the EFH Plan Administrator Board's participation as a Party. In addition, the EFH Plan Administrator Board's enumerated powers include the power to "protect and enforce the rights to the Trust Assets. . .including by judicial proceedings." Id. As detailed in the Scheduling Motion, the Ad Hoc Claimants and Elliott are not the only economic stakeholders whose EFH/EFIH Plan distributions are paralyzed by the EFH/EFIH Allocation Dispute—the remaining stakeholders do not have anyone representing their interests, particularly in light of the Court's ruling regarding the EFH/EFIH Committee's participation as a Party. In short, the EFH Plan Administrator Board's participation as a Party is authorized both by the enumerated provisions of 6.1, as well as pursuant to its authority to exercise "any powers reasonably incidental" to its enumerated powers. Collectively, both the enumerated powers, the incidental powers, and the powers created by applicable law provide greater support that the EFH Plan Administrator Board can participate as a Party, as compared to Elliott's argument that the EFH Plan Administrator Board's powers are limited to those specifically enumerated.

- *Section 1.4: Resolution of Claims*. The EFH Plan Administrator Trust Agreement authorizes the EFH Plan Administrator Board to "file, withdraw, or litigate to judgment objections to Claims" in an "expeditious but orderly manner." EFH Plan Administration Trust Agreement, ¶ 1.4. Claim is defined in the EFH/EFIH Plan as having the meaning set forth in section 101(5) of the Bankruptcy Code. EFH/EFIH Plan, Article I.A.43. Section 101(5) of the Bankruptcy Code defines Claim as a "right to payment." 11 U.S.C. § 101(5). The resolution of the EFH/EFIH Allocation Dispute turns on this very issue—does EFH have any "right to payment" against EFIH with respect to any of the Claims subject to the EFH/EFIH Allocation Dispute and, conversely, does EFIH have a "right to payment" against EFH with respect to such Claims? Elliott continues to refuse to recognize the fundamental proposition that the allocation of Administrative Claims naturally gives rise to potential Claims that require resolution.

---

[2] As the Plan Administrator Board noted in the Response and the Reply, given the extensive delays and costs associated with new disinterested agents and advisors in this four-year-old proceeding, the EFH Plan Administrator Board does not support the retention of new agents and advisors to resolve the EFH/EFIH Allocation Dispute.

<h1 style="text-align:center">KIRKLAND & ELLIS LLP</h1>

The Honorable Christopher S. Sontchi
June 11, 2018
Page 3

- ***Section 9.7: Plan and Confirmation Order***.  The principal purpose of the Trust and the EFH Plan Administration Trust Agreement is to "aid in the implementation of the Plan and Confirmation Order."  EFH Plan Administration Trust Agreement, ¶ 1.4.  There is little doubt that the primary purpose of the EFH/EFIH Plan and Confirmation Order is to make long-awaited distributions to Holders of Allowed Claims and the EFH/EFIH Allocation Dispute is delaying those distributions.[3]

   ***The EFH/EFIH Plan***.  The EFH/EFIH Plan similarly authorizes the EFH Plan Administrator Board's participation as a Party. Article VI.B. (entitled "Rights and Powers of EFH Plan Administrator Board") authorizes the EFH Plan Administrator Board to "exercise such other powers as [(a)] may be vested in the EFH Plan Administrator Board by order of the Bankruptcy Court; [(b)] pursuant to the Plan, or [(c)] as deemed by the EFH Plan Administrator Board to be necessary and proper to implement the provisions of the Plan."  EFH/EFIH Plan, ¶ Article VI.B.  In addition, Plan is defined to include the Plan Supplement.  EFH/EFIH Plan, ¶ Article I.A.(294).  Clause (a) authorizes the Court to enter an order approving the EFH Plan Administrator Board's participation as a Party.  Clause (b) authorizes the EFH Plan Administrator Board's participation as a Party because such participation is authorized by the EFH Plan Administration Trust Agreement—a Plan Supplement document that is, by definition, part of the "Plan."  Clause (c) authorizes the EFH Plan Administrator Board's participation if it deems such participation to be necessary and proper to implement provisions of the Plan.  For

---

[3]   At the June 5 Hearing, Elliott's counsel cited a number of provisions in the EFH Plan Administration Trust Agreement, purportedly in support of its argument that the EFH Plan Administrator Board is barred from participating as a Party. The cited provisions are either irrelevant to the question at hand or are being misinterpreted: (a) counsel to Elliott stated that Section 6.3 states that "if there was an allocation issue. . .[the EFH Plan Administrator Board] to put in a disinterested director, a disinterested EFH agent, and a disinterested EFIH [agent] because it was a conflict matter." Hr'g Tr. June 5, 2018 30:8-12.  As set forth above, Section 6.3 expressly says that the EFH Plan Administrator Board "***may but is not required to***" appoint new disinterested agents and such appointment is in his "***sole discretion***"; (b) counsel to Elliott stated that Section 6.1 does not explicitly list the EFH/EFIH Allocation Dispute within the enumerated powers of the EFH Plan Administrator Board.  Hr'g Tr. June 5, 2018 30:20-31:5.  As set forth above, participation as a Party is contemplated by the enumerated powers, the EFH Plan Administrator Board's "powers reasonably incidental" to its enumerated powers, and, most importantly, its authority under applicable law (discussed below); (c) counsel to Elliott stated that section 3.1 (which governs the duration of the trust) does not "say that the [Trust] continues while the allocation issue is pending." Hr'g Tr. June 5, 2018 31:6-31:13.  Section 3.1 does, however, say that the Trust shall continue until the occurrence of the "complete administration and distribution of the Trust Assets in accordance with the Plan, the Confirmation Order, and [the EFH Plan Administration Trust Agreement. . ." EFH Plan Administration Trust Agreement, ¶ 3.1.  In other words, for so long as there are Trust Assets (*e.g.*, Cash) to be distributed, the Trust will continue to exist.  Because the EFH/EFIH Allocation Dispute implicates ***over half a billion in Cash distributions***, the Trust must continue to exist until the EFH/EFIH Allocation Dispute is resolved; (d) counsel to Elliott stated that Section 1.4 does not apply to the EFH/EFIH Allocation Dispute.  As set forth above, the EFH Plan Administrator Board disagrees.

3

# KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
June 11, 2018
Page 4

the reasons set forth in the Scheduling Motion, the Response, and the Reply, the EFH Plan Administrator Board believes its participation is both necessary and proper.

*The Confirmation Order*. Paragraph 134 of the Confirmation Order states that the EFH Plan Administration Trust Agreement shall "govern the rights and duties of the EFH Plan Administrator Board with respect to the EFH Plan Administration Trust consistent with the Plan." Confirmation Order, ¶ 134. As set forth above, the EFH Plan Administration Trust Agreement permits the EFH Plan Administrator Board's participation as a Party.

Moreover, paragraph 153 of the Confirmation Order states that the "negotiation, resolution, settlement, and litigation" concerning the EFH/EFIH Allocation Dispute shall "each constitute a Conflict Matter (**as defined in the EFH Plan Administration Trust Agreement**)." Confirmation Order, ¶ 153 (emphasis added). Section 6.3 of the EFH Plan Administration Trust Agreement defines Conflict Matter as any matter that, prior to the EFH Effective Date, would have been addressed by the Disinterested Directors and Managers. **Importantly, section 6.3 states that the EFH Plan Administrator Board "may, but shall not be required to" retain disinterested agents to address a Conflict Matter.** EFH Plan Administration Trust Agreement, ¶ 6.3. Taken together, the EFH Confirmation Order states that the EFH/EFIH Allocation Dispute is the type of dispute that the EFH Plan Administrator Board is *permitted but not required to* retain new disinterested agents to resolve.

*Delaware Trust Law Principles*. As stated in the Reply, under Delaware law, a trustee (*i.e.*, the EFH Plan Administrator Board) has a duty to deal impartially with the various beneficiaries of the trust (*i.e.*, the Holders of Allowed Unsecured Claims). *See DuPont v. Delaware Tr. Co.*, 320 A.2d 694, 699 (Del. 1974). Importantly, the duty of impartiality does *not* require equal treatment; rather, it "prohibits a trustee from disadvantaging particular beneficiaries for invidious reasons." *See Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*, 863 A.2d 772, 798 (Del. Ch. 2004)); *see also* Unif.Trust Code § 803 ("The duty to act impartially does not mean that the trustee must treat the beneficiaries equally."); Restatement (Third) of Trusts § 79, comment (b) (2007) ("It would be overly simplistic, and therefore misleading, to equate impartiality with some concept of 'equality' of treatment or concern—that is, to assume that the interests of all beneficiaries have the same priority and are entitled to the same weight in the trustee's balancing of those interests."). [4] This notion is reflected in Restatement (Third) of Trusts, § 227, which states when there are beneficiaries with conflicting interests (a situation that often arises in the

---

[4]   Section 79 of the Third Restatement of Trusts has also been cited favorably the Delaware Court of Chancery. *See NHB Advisors, Inc. v. Monroe Capital LLC,* No. CV 7322-VCG, 2013 WL 6906234, at \*3 (Del. Ch. Dec. 27, 2013) (citing comments to Section 79 of the Restatement (Third) of Trusts and asserting that "the duty of impartiality does not prevent communications between a trustee and some beneficiaries, while excluding others, as long as engaging in such communications is 'fair, reasonable, and impartial in light of the context and reasons for the communication.'").

# KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
June 11, 2018
Page 5

context of life income beneficiaries vs. remainder beneficiaries), the trustee has a **duty to balance the competing interests of differently situated beneficiaries in a fair and reasonable manner**.  Restatement (Third) of Trusts, § 227 (2007); *see also Estate of Bissinger*, (1963) 212 Cal. App. 2d 831, 839 (finding that trustee's investment strategy was prudent given that neither of the competing beneficiaries "advocated a course that would not have ignored the claims of the other.").

Additionally, as set forth in the Restatement (Third) of Trusts § 79, comment on clause (a) (2007), while it is the duty of the trustee to not become an advocate but remain neutral, "**even in the role of neutral stakeholder, the trustee may have a duty to provide relevant information of which the trustee has knowledge and to make reasonable efforts to assure that all interested beneficiaries are (or have an opportunity to be) adequately represented.**" (emphasis added).  The current facts fit squarely within these circumstances.  *First*, as the only party that has experienced and participated in every facet of the chapter 11 cases, the EFH Plan Administrator Board can be instrumental to developing an accurate and factual record—thereby satisfying its obligation to provide relevant information of which it has knowledge.  *Second*, while the current dispute has organized, sophisticated, and represented Holders on both sides, there is no guarantee that such balance will continue for the duration of the EFH/EFIH Allocation Dispute.  Indeed, much as Fidelity sold the entirety of its very large EFH position three-and-a-half years into the chapter 11 cases, materially altering the negotiating landscape, Elliott or any of the large Holders in the Ad Hoc EFH Claimants Group could do the same. The EFH Plan Administrator Board can act as a stabilizing force against any such imbalance of power—thereby satisfying its obligation to make reasonable efforts to assure that all interested beneficiaries are adequately represented.

Prior to the EFH Effective Date, EFH and EFIH took every reasonable effort to resolve the EFH/EFIH Allocation Dispute.  These efforts were unsuccessful.  Following the EFH Effective Date, the EFH Plan Administrator Board pushed interested parties to either reach a proposed settlement on the EFH/EFIH Allocation Dispute or otherwise agree to a process for presenting the dispute to the Court—these efforts culminated in the Scheduling Motion and the Elliott Allocation Motion. Having preliminary broken through the negotiation logjam by negotiating the terms of a schedule to resolve the EFH/EFIH Allocation Dispute, the EFH Plan Administrator Board believes the substantive process would benefit from its involvement. For the reasons stated herein, the EFH Plan Administrator Board believes the EFH Plan Administration Trust Agreement, the EFH/EFIH Plan, the Confirmation Order, and applicable Delaware law permit the EFH Plan Administrator Board's participation as a Party in the proposed schedule regarding the Elliott Allocation Motion.[5]

---

[5]   In addition, Kirkland & Ellis LLP can represent the EFH Plan Administrator Board in connection with the EFH/EFIH Allocation Dispute. Kirkland & Ellis LLP formerly represented EFH and EFIH.  Importantly,

# KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
June 11, 2018
Page 6

Sincerely,

*/s/ Marc Kieselstein*

Marc Kieselstein, P.C.

cc:     Chad J. Husnick, Esq., Kirkland & Ellis LLP
        Mark McKane, Esq., Kirkland & Ellis LLP
        Aparna Yenamandra, Esq., Kirkland & Ellis LLP
        Mark D. Collins, Esq., Richards, Layton & Finger, P.A.
        Daniel J. DeFranceschi, Esq., Richards, Layton & Finger, P.A.
        Jason M. Madron, Esq., Richards, Layton & Finger, P.A.
        Gregg Galardi, Esq., Ropes & Gray LLP
        Keith Wofford, Esq., Ropes & Gray LLP
        Andrew K. Glenn, Esq., Kasowitz Benson Torres LLP
        David S. Rosner, Esq., Kasowitz Benson Torres LLP
        Richard C. Pedone, Esq., Nixon Peabody LLP

---

(a) this representation terminated on the EFH Effective Date, when EFH and EFIH emerged as Reorganized EFH and Reorganized EFIH, respectively; (b) Reorganized EFH and Reorganized EFIH have separate counsel and have no legal or financial interest in the outcome of the EFH/EFIH Allocation Dispute; and (c) Kirkland & Ellis did not represent EFH or EFIH with respect to the matters subject to the EFH/EFIH Allocation Dispute prior to the EFH Effective Date.  Prior to the EFH Effective Date, such matters were addressed by the Disinterested Directors and Managers and their respective advisors.  As a result, Kirkland & Ellis LLP's representation of the EFH Plan Administrator Board in connection with the EFH/EFIH Allocation Dispute is permitted by Model Rule of Professional Conduct 1.9 (which has been adopted by the District of Delaware, *Innovative Memory Sols., Inc. v. Micron Tech., Inc.*, No. CV 14-1480-RGA, 2015 WL 2345657, at *1 (D. Del. May 15, 2015) (citing *In re Corn Derivatives Antitrust Litig.,* 748 F.2d 157, 160 (3d Cir. 1984))).  For the avoidance of doubt, the same arguments apply with equal weight to Richards, Layton & Finger, P.A., Delaware co-counsel to the EFH Plan Administrator Board.