## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
|  | ) ) | (Jointly Administered) |
| *Debtors.* | ) | |

## JOINT MOTION OF UMB BANK, N.A., AS INDENTURE TRUSTEE, AND ELLIOTT FOR STAY OF ORDER AUTHORIZING EFH PLAN ADMINISTRATOR BOARD TO PARTICIPATE IN THE ALLOCATION DISPUTE

UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25% Senior Toggle Notes due 2018, and Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott" and, together with the Trustee, the "Movants"), by and through their undersigned counsel, hereby jointly move to stay (the "Motion") this Court's order dated June 19, 2018 authorizing the EFH Plan Administrator Board (the "PAB") to participate as a party-litigant in the allocation dispute (the "Order"). [D.I. 13221]. In support of this Motion, Movants respectfully state as follows:

### PRELIMINARY STATEMENT

1.     Movants seek a stay of the Order authorizing the PAB to participate as a party-litigant in the pending dispute to allocate certain reserves and administrative expenses between the EFH and EFIH estates (the "Allocation Dispute").

2.     As shown below, each of the factors in the applicable four-part test weighs heavily in favor of granting a stay of the Order: (1) Movants are likely to succeed on the merits

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

of their appeal; (2) Movants will suffer irreparable injury absent a stay; (3) other parties will suffer no harm from a stay, so the balance of the harms favor Movants; and (4) a stay is in the public interest. *See In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015).

3.      *First*, Movants are likely to succeed on the merits of their arguments that the PAB's participation in the Allocation Dispute violates the relevant governing documents and its applicable fiduciary duties under Delaware law.    *See* Sec. II, *infra*.      Indeed, as *this Court* originally stated: "it [is] difficult to accept an argument that a fiduciary for two different estates where the entire issue is which estate gets more than the other estate is not conflicted." **Exhibit A**, Mar. 28, 2018 Hr'g Tr. 40:18-21.

4.      *Second*, Movants will be irreparably harmed by the PAB's participation as a party-litigant. *See* Sec. III, *infra*. The Order requires that the PAB take a substantive position on allocation issues as a party-litigant in each stage of the proceedings, including by serving a brief outlining its preliminary position to the other parties on June 29, and then filing a final written submission taking a position *with this Court* on the Allocation Dispute on August 13.  As this Court has also already stated: "*if I do allow [the PAB] to participate I think I can't undo the omelet.*"  *See* **Exhibit B,** June 5, 2018 Hr'g Tr. at 47:24-48:1; 49:4-50:5 (emphasis added).

5.      *Third*, in contrast to the irreparable injury that Movants will suffer, other parties, including the PAB, will suffer no harm if a stay is granted.  The PAB has *no* economic interest in the Allocation Dispute, and the parties that *do* have an economic interest are already adequately represented even if the PAB does not participate as a party.  *See* Sec. IV, *infra*.

6.      *Fourth*, and finally, it is in the public interest to hold the PAB to its contractual commitments and fiduciary obligations.   A stay would also further the public interest by

protecting the parties' appellate rights, given that an appellate court may not be able to "un-ring" the bell of the PAB's involvement if a stay pending appeal is denied.  *See* Sec. V, *infra*.

7.      For these reasons, and as detailed further below, the Order should be stayed pending resolution of Movants' appeal.[2]

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and paragraph 72 of the *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code*.  [D.I. 12763].

9.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to Local Rule 9013-1(f), Movants consent to entry of a final order with respect to this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## RELIEF REQUESTED

10.     Pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure, and this Court's inherent power to stay enforcement of its orders where justice and equity so demand, Movants respectfully request an order from the Court staying the Order until the final resolution of Movants' appeal of the Order.

## BACKGROUND

### A.      The PAB's Duties And Obligations To The EFH and EFIH Creditors.

11.     On February 27, 2018, the Court entered an Order (the "E-Side Confirmation Order") confirming the EFH/EFIH Chapter 11 plan of reorganization (the "EFH/EFIH Plan" or

---

[2]       Movants intend to seek expedited proceedings on their appeal of the Order.

"Sempra Plan"). [D.I. 12763]. The E-Side Confirmation Order governs the PAB's power and authority in post-confirmation proceedings. [D.I. 12798-4 § 9.7].

12.    The PAB serves as a fiduciary to both the EFH and EFIH creditor bodies, the two competing beneficiary classes with respect to the Allocation Dispute. Pursuant to the EFH Plan Administration Trust Agreement (the "Trust Agreement") the PAB is obligated to administer the Trust for the benefit of ***all*** beneficiaries in accordance with the EFH/EFIH Plan. [D.I. 12798-4 § 1.2].

**B.    The Court Observes That The PAB Likely Faces A Conflict In Any Dispute Between The EFH And EFIH Creditor Bodies.**

13.    On March 26, 2018, the Court scheduled a status conference for March 28, 2018 to address the schedule for resolving Movants' motion to dismiss or deny the application for allowance and payment of an administrative claim of NextEra Energy Inc. ("NextEra"). [D.I. 12853].

14.    On March 27, 2018—one day before the status conference—the PAB submitted a letter to the Court (the "PAB Letter Request") seeking substantive relief with respect to the wholly separate issue of allocating the disallowed NextEra Termination Fee and other material claims between the EFH and EFIH estates. [D.I. 12866].

15.    On March 28, 2018, Movants responded to the PAB Letter Request, challenging the PAB Letter Request on the grounds that, among other things, the PAB had not filed any motion seeking the relief outlined in the PAB Letter Request and that the PAB's request was "counterproductive and improper in light of [the PAB's] obligations to represent all creditors under the Plan." [D.I. 12870 at 1].

16.    At the status conference on March 28, 2018, the Court rejected the PAB Letter Request. *See* **Exhibit A**, Mar. 28, 2018 Hr'g Tr. at 39:8-12. Critically, in so doing, the Court

observed that: "*I find it difficult to accept an argument that a fiduciary for two estates where the entire issue is which estate gets more than the other estate is not conflicted.*"  *Id*. at 40:18-21 (emphasis added).

C.     **Movants File The Allocation Motion, And Consistent With The Court's Guidance, The PAB Initially Avoids Taking A Substantive Position In The Allocation Dispute.**

17.    On May 13, 2018, Movants filed the *Joint Motion of UMB Bank, N.A. as Indenture Trustee, and Elliott to Fix Appropriate Allocation of Certain Reserves and Expenses as Between the EFH and EFIH Debtors* [D.I. 13102] (the "Allocation Motion"), seeking entry of an order allocating certain administrative expenses (the "Material Administrative Expense Claims") between the EFH and EFIH estates.[3]

18.    Two days later, the PAB filed the *Motion of the EFH Plan Administrator Board for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the EFH/EFIH Allocation Dispute* [D.I. 13113] (the "PAB Scheduling Motion").   In the PAB Scheduling Motion, the PAB sought entry of an order establishing a schedule for determining the allocation of certain administrative expenses between EFH and EFIH.  Although the PAB's proposed schedule contemplated that the PAB would be a party to the Allocation Dispute, [D.I. 13113-1 ¶ 2] the PAB made clear that it "[did] not take a position on the merits of the proposal set forth in the [Allocation] Motion or the accuracy or inaccuracy of any of the factual statements set forth therein."   [D.I. 13113 ¶ 9]

19.    On May 29, 2018, Movants filed their *Joint Objection of UMB Bank, N.A., as Indenture Trustee, and Elliott to the Motion of the EFH Plan Administrator Board for Entry of*

---

[3]     Prior to confirmation of the EFH/EFIH Plan, Elliott had engaged in extensive negotiations with counsel to the Disinterested Directors regarding allocation disputes, but a resolution could not be reached.  Prior to and subsequent to confirmation of the EFH/EFIH Plan, Movants engaged in negotiations with the Ad Hoc EFH Claimants (as defined in the *Verified Statement of Kasowitz Benson Torres LLP and Hogan McDaniel Pursuant to Bankruptcy Rule 2019* [D.I. 12900]) regarding an appropriate allocation of the NextEra Plan Reserve and various other administrative expenses, but were unable to reach an agreement on any allocation issues.  [D.I. 12769-3].

*an Order Scheduling Certain* Hearing *Dates and Deadlines and Establishing Certain Protocols in Connection with the EFH/EFIH Allocation Dispute* [D.I. 13149] ("Movants' Scheduling Objection"), requesting that the Court deny the PAB's Scheduling Motion and enter an order approving Movants' proposed schedule.  [D.I. 13149 ¶¶ 10-11; D.I. 13152-1 ¶ 7(k)].  Movants further asked that the Court limit the PAB's role in connection with any Allocation Dispute or the Allocation Motion to that of a third-party recipient of document requests and witness given the PAB's and its counsel's "undoubted[] conflict[s] with respect to the Allocation Motion." [D.I. 13149 ¶ 9].

20.    Also on May 29, 2018, the PAB filed the *Response of the EFH Plan Administrator Board to the Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to Fix Appropriate Allocation of Certain* Reserves *and Expenses as Between the EFH and EFIH Debtors*.  [D.I. 13150].  The PAB asked the Court to deny the relief sought in the Allocation Motion.  Critically, the PAB again professed that it "is not taking a position on the merits of the [Allocation Motion]," and "does not take a position on the factual accuracies or inaccuracies in the [Allocation Motion]."  [D.I. 13150 ¶¶ 4-9].

**D.    The PAB Reverses Course And Seeks To Take A Substantive Position In The Allocation Dispute.**

21.    Two days later, the PAB reversed course.  On May 31, 2018, the PAB filed its *Reply in Support of the Motion of the EFH Plan Administrator Board for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with The EFH/EFIH Allocation Dispute* (the "PAB Scheduling Reply").  [D.I. 13163]. In it, the PAB formally requested—for the first time—to "participate in the process by submitting initial and/or supplemental written submissions regarding the [Allocation Motion],"

and requested that the Court revisit its prior observation that the PAB likely has conflict with respect to the allocation issues. [D.I. 13163 ¶¶ 1, 4].

22.     On June 5, 2018, the Court held a hearing to consider the competing scheduling orders for the Allocation Motion. At the hearing, the Court reserved ruling on whether the PAB could participate as a party-litigant in the Allocation Dispute, noting that "*if I do allow [the PAB] to participate I think I can't undo the omelet.*" **Exhibit B,** June 5, 2018 Hr'g Tr. at 47:24-48:1; 49:4-50:8 (emphasis added). The Court then asked Movants, the EFH Indenture Trustee, the Ad Hoc Claimants, and the PAB to (i) agree on and submit for the Court's approval a schedule for the Allocation Dispute, and (ii) submit letter briefs further outlining their positions regarding the PAB's participation in the Allocation Dispute. *Id.* at 50:6-51:22; 69:14-19.

23.     The Court entered a scheduling order to govern the Allocation Dispute on June 11, 2018 (the "Allocation Scheduling Order"). [D.I. 13193]. The Allocation Scheduling Order included Elliott, the Ad Hoc Claimants, and the EFH Indenture Trustee as "Parties" to the Allocation Dispute, but excluded the PAB as a "Party" unless and until "the Court approves it becoming a Party." [D.I. 13193 ⁋ 2]. Under the Scheduling Order, discovery is set to close on August 10, 2018. "Parties" objecting to the Allocation Motion are required to serve briefs outlining their preliminary positions by June 29, 2018, with final submissions filed on August 13, 2018. [D.I. 13193 ⁋⁋ 5-7]. Trial is scheduled to begin on September 5, 2018. [D.I. 13193 ⁋ 8].

> **E.     The Court Grants the PAB's Request to Be A Party But Cautions That the PAB's Participation Will Be a "Delicate Dance" and The PAB Is To "Proceed at [Its] Own Risk."**

24.     On June 11, 2018, Movants, the PAB, and the EFH Indenture Trustee submitted letter briefs to the Court outlining their positions on the PAB's participation in the Allocation Dispute. [D.I. 13190; D.I. 13191; D.I. 13192]. At a telephonic hearing on June 14, 2018, the

Court held that the PAB may participate as a party-litigant in the Allocation Dispute.  The Court explained that it did not believe the PAB was "inherently so conflicted that it simply can't participate at all" because "[it did] foresee that there are positions that the trustee can take and actions that the trustee can take to thread the difficult situation that the trustee definitely finds himself in."  **Exhibit C,** June 14, 2018 Hr'g Tr. at 1:5-10, 6:18-7:8.  The Court cautioned, however, that "it will be a delicate dance certainly for the PAB to participate in this dispute and still stay true to its duty of impartiality," and added that the PAB "will proceed at [its] own risk." *Id.* at 6:18-7:9; 11:1-2.

25.     On June 19, 2018, the Court entered the Order.  The Order provides that (a) the PAB shall be a "Party" for purposes of the Allocation Scheduling Order, and (b) the EFH/EFIH Debtors' former counsel Kirkland & Ellis LLP and Richards, Layton & Finger P.A. are permitted to represent the PAB in its capacity as a "Party" under the Allocation Scheduling Order.  [D.I. 13221].

**BASIS FOR REQUESTED RELIEF**

**I.      APPLICABLE LEGAL STANDARD**

26.     Courts consider four factors in deciding whether to grant a stay pending appeal: "(1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest."  *In re Revel AC,* 802 F.3d at 565.

27.     Though the court must "balance" all four factors, some weigh more heavily than others.  *Id.* at 568.  Likelihood of success is the weightiest consideration, followed by the likelihood of irreparable injury absent stay.  *Id.*  If those are both satisfied, the Court then

balances the equities between irreparable harm to appellant absent a stay, and harm to other parties and the public. *See id.* at 569.

28.    A sufficient showing to meet the first two factors is generally necessary, while the latter are treated as tiebreakers rather than stand-alone outcome determinative. *Id.* at 571. In addition to the different weighting of the factors, the Third Circuit employs a "sliding scale" approach to the weighing of all four: a higher showing of possibility of success on the merits, for example, will require a lower showing of the three other factors to merit a stay. *Id.* at 569-70.[4]

## II.    MOVANTS ARE LIKELY TO SUCCEED ON APPEAL

29.    Likelihood of success on appeal is the foundational element of the four-pronged stay analysis. *See In re Revel AC*, 802 F.3d at 568.  "[A] sufficient degree of success for a strong showing exists if there is a reasonable chance, or probability, of winning . . . [though] the likelihood of winning on appeal need not be more than likely than not." *Id.* at 568-69 (internal quotation marks and citations omitted).  Critically, the likelihood of success inquiry does *not* require the Court to assess the merits of its own decision.  Instead, it is a determination as to whether "substantial grounds for a difference of opinion" exist as to the correct outcome.  *See, e.g., In re Genesis Health Ventures, Inc.*, 367 B.R. 516, 521 (Bankr. D. Del. 2007) ("For the purposes of this motion, it does not matter whether this Court believes that Defendants should succeed on appeal . . . [A] court may grant a motion for a stay pending appeal even when it has confidence in the rectitude of its decision."); *In re Tribune Co.*, 477 B.R. 465, 475 (Bankr. D. Del. 2012) ("Although I am satisfied that I have thoroughly—and correctly—examined and

---

[4]    Though the Court preliminarily suggested at the June 14, 2018 hearing that the Order may be interlocutory, **Exhibit C**, June 14, 2018 Hr'g Tr. at 14:18-24, Movants disagree.  Third Circuit precedent is clear that when an order allows a party to intervene in a contested proceeding, that order is final for purposes of appellate review.  *See Matter of Marin Motor Oil, Inc.*, 689 F.2d 445 (3d Cir. 1982) (district court's grant of a motion to intervene in adversary action was final and appealable); *see also In re B.S. Livingston & Co., Inc.*, 186 B.R. 841, 849 (D.N.J. 1995) (citing *Marin* and holding that bankruptcy court's order denying motion to dismiss/motion for summary judgment in adversary proceeding was final and appealable to district court).

determined the disputed issues . . . , the Movants have made an adequate showing of likelihood of success on the merits with respect to the issues on appeal[.]").

30.    As shown below, Movants have more than a "reasonable chance" of succeeding on the merits of their arguments that the PAB's participation as a party in the Allocation Dispute violates (i) the relevant governing documents and (ii) its fiduciary duties under Delaware law.

**A.    Movants Are Likely to Succeed On Their Argument That the PAB's Participation As A Party Violates The Governing Documents.**

31.    Movants are likely to succeed on their argument that the PAB's participation in the Allocation Dispute as a party is not authorized by, and instead violates, the E-Side Confirmation Order, Sempra Plan, and Trust Agreement.    At a minimum, the governing documents are ambiguous on this issue, and therefore the Court erred in ruling on the PAB's participation as a matter of law without an evidentiary hearing.

**1.    The Governing Documents Prohibit The PAB's Participation As A Party.**

32.    The governing documents expressly limit the PAB's participation in the Allocation Dispute to the appointment of disinterested representatives to act on behalf of the EFH and EFIH creditor bodies, respectively.    The E-Side Confirmation Order defines any litigation concerning a "Material Allocation Order" as a "Conflict Matter."    [D.I. 12763 ¶ 153].[5] A "Conflict Matter," in turn, is any matter "that, prior to the EFH Effective Date, would have been addressed by those certain disinterested directors of the EFH/EFIH Debtors and their advisors."    [D.I. 12798-4 § 6.3]

33.    Here, each of the Material Administrative Expense Claims that are the subject of the Allocation Dispute was or would have been addressed by the disinterested directors before

---

[5] "Material Allocation Orders" are defined as any "order [or orders] allocating all . . . material Claims as between EFH and EFIH" to the extent not set forth in the NEE Allocation Order.    [D.I. 12763 ¶ 151].

confirmation.  For one, there is no dispute that the allocation of any allowed NextEra Termination Fee was a matter left to the Disinterested Directors.  *See* [D.I. 12653 at Art. IV.D].  Moreover, because the EFIH Debtors and presumably their Disinterested Director had already agreed to support Elliott's request for a substantial contribution claim at EFIH [D.I. 12763 ¶ 110], any opposition to its allowance at EFH "would have been addressed," and in fact was addressed, by the Disinterested Directors at EFH.  The same is true of the allocation of the Committee's professional fees.  *See* [D.I. 12653 at Art. IV.D].  Thus, there can be no question that the Material Administrative Expense Claims that are the subject of the Allocation Dispute are "Conflict Matters" to be handled by disinterested representatives, not the PAB.  The PAB is thus prohibited under the express terms of the E-Side Confirmation Order from being a party-litigant in the Allocation Dispute.

34.     In ruling otherwise, the Court accepted the PAB's argument that it is free to participate in this Conflict Matter because the Trust Agreement uses the word "may," as opposed to "shall," to describe its authority to appoint disinterested representatives.  **Exhibit C,** June 14, 2014 Hr'g Tr. 6:9-17.  But the use of the word "may" simply means that the PAB has the discretion to appoint disinterested representatives should it wish to participate, through those representatives, as a party-litigant in Conflict Matters.  It does not grant the PAB discretion to become a party-litigant without appointing disinterested representatives.  The PAB's reading to the contrary would essentially give it a free pass to circumvent the governing documents' clear process for PAB's involvement in Conflict Matters.

35.     Nor is there any merit to the Court's suggestion that the Trust Agreement empowers the PAB to participate as a party-litigant in the Allocation Dispute.  *See* **Exhibit C,** June 14, 2018 Hr'g Tr. 5:18-6:17.  Section 6.1 of the Trust Agreement identifies *eighteen*

separate powers granted to the PAB—none of which authorizes it to be a substantive participant in the Allocation Dispute.  Under Delaware law, this silence speaks volumes—particularly given that the pending Allocation Dispute was well known at the time of confirmation proceedings.  *See, e.g.*, *Active Asset Recovery, Inc. v. Real Estate Asset Recovery Servs., Inc.*,  C.A. No. 15478, 1999 WL 743479, at *11 (Del. Ch. Sept. 10, 1999) ("Overhead is not an obscure term; AMS's failure to use it expressly speaks volumes.").

36.    Section 6.1(a) of the Trust Agreement—the only specific grant of power that the Court alluded to at the June 14, 2018 hearing—does not authorize the PAB's participation.  *See* **Exhibit C,** June 14, 2018 Hr'g Tr. 6:5-17 ("[I]ncluded in [specific things that the trust can do] is issues with regard to claims.  I think that this issue is tangentially related to claims allowance, claims litigation, claims payment . . .").  That provision empowers the PAB to "file, withdraw, or litigate to judgment objections to Disputed Claims . . . ."  [D.I. 12798-4 ¶ 6.1(a)]; [D.I. 12653 at Art. I.A ¶ 43] (defining "Claim" as having the meaning set forth in Bankruptcy Code § 101(5)).  But being a party-litigant in an allocation dispute does not involve filing any objections to Claims or withdrawing any such objections, much less litigating one to judgment.  Indeed, the PAB never even objected to three of the four Material Administrative Expense Claims at issue in the Allocation Dispute.  And in all events, the Allocation Motion does not address the allowance or disallowance of any of the Material Administrative Expense Claims; it only concerns which estate will bear the expense of those claims, if allowed.  [D.I. 13102 at 5 n.4].

37.    Nor is Section 6.1 of the Trust Agreement "in the nature of an including without limitation" provision, as this Court suggested at the June 14, 2018 hearing.  **Exhibit C,** June 14, 2018 Hr'g Tr. 6:9-17.  If that were the case, one would expect Section 6.1 to include "language that is commonly used in the drafting of documents and legislation expressly stating that the

powers listed are not intended to be exclusive or exhaustive." Restatement (Third) of Trusts § 85, cmt. c(1) (2007). No such language appears in Section 6.1 of the Trust Agreement. Section 6.2 further confirms that the powers in Section 6.1 are not simply illustrative; instead, "*[t]he Trustee shall be restricted to the power set forth above in Section 6.1.*" [D.I. 12798-4 ¶ 6.2] (emphasis added). Accordingly, the Trustee lacks the power to participate as a litigant in the Allocation Dispute, and, moreover, is breaching Section 6.2 of the Trust Agreement by doing so.

38.    There is at least a "reasonable chance" that an appellate court will agree with Movants' reading of the governing documents. *See In re Revel AC*, 802 F.3d at 568. Movants have accordingly established a likelihood of success on the merits.

### 2.    Because The Governing Documents Are At Most Ambiguous, The Court Erred In Ruling As A Matter Of Law.

39.    Even if the PAB's interpretation of the governing documents was reasonable (it is not), there can be no doubt that Movants' alternative interpretation is, at a minimum, a reasonable one. Movants' reading gives effect to the governing documents' clear process for PAB involvement in Conflict Matters, and is consistent with the parties' expectations and the Court's observation that a fiduciary of two separate estates faces a conflict in any dispute between those estates. Indeed, consistent with Movants' reading, the EFH Indenture Trustee's recent letter brief observed that the PAB's participation in the Allocation Dispute "*almost certainly requires the appointment of Disinterested Agents*." [D.I. 13192 at 3].

40.    At a minimum the governing documents are "fairly or reasonably susceptible to more than one meaning," and therefore ambiguous. *See Aleynikov v. Goldman Sachs Grp., Inc.*, 765 F.3d 350, 359 (3d Cir. 2014). Yet, in allowing the PAB to participate, the Court ruled solely based on the text of the governing documents themselves and failed to hold an evidentiary hearing or consider any extrinsic evidence of contractual meaning. On this basis alone, it was

legal error for the Court to rule that the PAB may participate as a party-litigant in the Allocation Dispute. *See In re New Valley Corp.*, 89 F.3d 143, 152 (3d Cir. 1996) ("Because appellants have demonstrated ambiguity in the plan, the bankruptcy court should have permitted appellants to present extrinsic evidence to clarify its meaning."); *accord United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 818 n.19 (Del. Ch. 2007) ("an ambiguity in the contract requires the Court to consider extrinsic evidence").

### B.    Movants Are Likely To Succeed On Their Argument That The PAB's Participation As A Party Violates Its Fiduciary Duties.

41.    There is another, independent reason why Movants are likely to succeed on the merits of their appeal: the PAB's participation as a party advocating substantive positions in the Allocation Dispute violates the PAB's duty to deal impartially with the trust beneficiaries. During the June 14, 2018 hearing, this Court recognized that "the PAB is a fiduciary for all the beneficiaries of the trust at EFIH and EFH;" that the PAB owes a "duty of impartiality among beneficiaries;" and that "it will be a delicate dance certainly for the PAB to participate in this dispute and still stay true to its duty of impartiality." **Exhibit C,** June, 14, 2018 Hr'g Tr. 6:18-7:1, 10:23-11:3. Yet, the Court stopped short of finding that the PAB is "inherently so conflicted that it simply can't participate at all." *Id.* at 6:18-7:1. Movants have a reasonable likelihood of prevailing on their contention that this ruling was in error.

42.    "It is axiomatic that where there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them." *DuPont v. Delaware Tr. Co.*, 320 A.2d 694, 699 (Del. 1974); *see also President & Fellows of Harvard Coll. v. Glancy*, C.A. No. 18790, 2003 WL 21026784, at *18 (Del. Ch. Mar. 21, 2003). When there is "a contest between beneficiaries as to their shares," trust law could not be clearer: "the trustee has neither a duty *nor a right* to participate in the litigation *but should stand neutral*." Bogert's Trusts and Trustees §

-14-

581 n.9 (emphasis added); *accord* Restatement (Third) of Trusts § 79 cmt. c (2007) ("[I]n . . .

litigation involving the interpretation of the beneficial-interest provisions of a trust, or . . . other

disputes strictly among the beneficiaries over matters of trust administration, *it is the duty of the*

*trustee not to become an advocate* but to remain neutral." (emphasis added)).

43.    As this Court has observed on multiple occasions, this is precisely such a "contest

between beneficiaries." *See* **Exhibit A,** Mar. 28, 2018 Hr'g Tr. 40:18-21 ("the entire issue is

which estate [EFH or EFIH] gets more than the other estate"); *see also* **Exhibit C,** June 14, 2018

Hr'g Tr. 10:6-16 ("it all comes down to a bottom line of what expenses are going to be allocated

against that estate.").    Every dollar of expense that is allocated to one estate increases the

distributions to be made to the other estate's creditors.    This means that if the PAB takes *any*

substantive position on the proper allocation of expenses to the EFH and EFIH estates, the PAB

will necessarily be advocating in favor of one class of beneficiaries to the direct detriment of the

other.    Yet, that is exactly what the Allocation Scheduling Order requires the PAB to do:    it

"*shall*" serve a preliminary brief and a file a final written submission taking positions on the

Allocation Dispute.  [D.I. 13193 ☐☐ 5.e., 7.a.].  The "delicate dance" envisioned by the Court is

not an option.    The PAB cannot be a party in the Allocation Dispute without violating its

fiduciary duty of impartiality.

44.    Nothing cited by the PAB in its June 11, 2018 letter brief undermines this

conclusion.    In that letter, the PAB contended that the duty of impartiality only "prohibits a

trustee from disadvantaging particular beneficiaries for invidious reasons."    [D.I. 13190 at 4].

But the PAB did not cite any authority holding that a trustee's duty of impartiality is limited to

disadvantaging a beneficiary for "invidious reasons."[6]    To the contrary, Delaware courts

---

[6]    The only Delaware authority cited by the PAB for this proposition simply states that invidious action
suffices

consistently hold that a trustee breached its fiduciary duties by taking a position adverse to one beneficiary in favor of another, which is exactly what the PAB must do under the Allocation Scheduling Order. *See Glancy*, 2003 WL 21026784 at *18 (suit challenging trustees' shareholder agreement could proceed where agreement meant trustees had "bound themselves to act in a discriminatory manner against" certain beneficiaries); *see also McNeil v. Bennett*, 792 A.2d 190, 212 (Del. Ch. 2001) (trustees "breached their fiduciary duties by failing to give impartial consideration to [one particular beneficiary's] interests"), *aff'd as modified*, 798 A.2d 503 (Del. 2002).

45.     The PAB also argued that "in the role of neutral stakeholder, the trustee may have a duty to provide relevant information . . . and to make reasonable efforts to assure that all interested beneficiaries are (or have an opportunity to be) adequately represented." [D.I. 13190 at 5].  This misses the point entirely.  The question is not whether the PAB should be permitted to provide "relevant information" in the Allocation Dispute, since the PAB may already do that as a third-party recipient of discovery.  Nor is the question whether "interested beneficiaries" would be "adequately represented" without the PAB's involvement.  As this Court has already recognized:  "I don't think that a fiduciary on both sides is required for this to be a fair proceeding." **Exhibit C,** Jun. 14, 2018 Hr'g Tr. at 10:6-16.  Rather, the question is whether a fiduciary of two estates may act as a party-litigant by taking a substantive position in a dispute over "which estate gets more than the other estate."  **Exhibit A,** Mar. 28, 2018 Hr'g Tr. 40:18-21.

46.     This is a question over which, at a minimum, "substantial grounds for a difference of opinion" exist.  *See Genesis*, 367 B.R. at 521.  Indeed, *this Court* previously expressed a view

---

to show a breach—not that a breach only happens if there is invidious action.  *See Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*, 863 A.2d 772, 798 (Del. Ch. 2004).

contrary to that embodied in the Order.  When first presented with the possibility that the PAB may participate in the Allocation Dispute, the Court observed that "it [is] difficult to accept an argument that a fiduciary for two different estates where the entire issue is which estate gets more than the other estate is not conflicted." **Exhibit A**, Mar. 28, 2018 Hr'g Tr. 40:18-21.  And even when the Court reached a different conclusion at the June 14, 2018 hearing, the Court acknowledged that "it will be a delicate dance certainly for the PAB to participate in this dispute and still stay true to its duty of impartiality."  **Exhibit C,** June 14, 2018 Hr'g Tr. at 6:18-7:8; 11:1-2.  Accordingly, the first factor weighs heavily in favor of granting a stay pending Movants' appeal.

## III.    MOVANTS WILL SUFFER IRREPARABLE INJURY ABSENT A STAY

47.    Without a stay pending appeal, Movants will suffer irreparable harm—"harm that cannot be prevented or fully rectified by a successful appeal."  *In re Revel AC*, 802 F.3d at 568 (quotation omitted).

48.    Absent a stay, the Allocation Dispute will be infected with a conflicted party-litigant who has fiduciary obligations to competing creditor bodies yet seeks to advocate for one over the other.  Importantly, once the PAB is involved as a party-litigant, it will be difficult, if not impossible, to reverse its impact ex post facto.  While counsel for the PAB suggested that its substantive participation would be limited to a written submission which can be simply disregarded or stricken, *see* **Exhibit C,** Jun. 14, 2018 Hr'g Tr. at 14:1-17, that misses the point. The PAB's participation as a conflicted "Party" is not so limited:  the Scheduling Order requires the PAB to take substantive positions as a party advocate at all stages of the allocation proceedings.  *See* Order ⁋ 1 (providing that the PAB is a "Party" for purposes of the Allocation Scheduling Order); *see also* D.I. 13193 ⁋⁋ 5.e., 7.a. (requiring "Parties" to serve a  brief and file final written submissions taking positions regarding the Allocation Dispute)].    Indeed, as the

Court observed at the June 5, 2018 hearing: "[I]f I do allow the plan administrator board to participate *I think I can't undo the omelet.*" **Exhibit B,** June 5, 2018 Hr'g. Tr. at 49:18-19 (emphasis added).  This is classic irreparable harm.  *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 595 (3d Cir. 2002) ("Irreparable harm is an injury that cannot be redressed by a legal or equitable remedy following a trial.").

49.     The effects of the PAB's participation as a party-litigant are already evident.  Far from maintaining a neutral position as it should, the PAB has advanced substantive arguments concerning the allocation of certain professionals' fee claims.  [D.I. 13150 ¶¶ 6-8].  There is little doubt that the PAB (who again, is represented by the same counsel as the EFH/EFIH Debtors) will continue to seek to defend the lengthy and expensive quest to complete a restructuring that would result in a tax-free disposition of the Oncor assets and thereby avoid the so-called "Tax Armageddon," which would have saddled EFH with more than $7 billion in tax liabilities and eliminated any recovery from EFH's unsecured creditors.  By advancing this position, the PAB is plainly not impartial and its predictable defense of its prior conduct will unquestionably harm Movants and other EFIH creditors.  So, this harm is "more apt to occur than not," which is all that Third Circuit precedent requires for a stay.  *See In re Revel AC*, 802 F.3d at 569, *citing Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 788 (7th Cir. 2011) ("[T]he alleged harm need not be occurring or be certain before a court may grant relief.").  Under these circumstances, there is a risk that Movants will be irreparably harmed absent a stay of the Order. *See In re Revel AC*, 802 F.3d at 568.

## IV.    A STAY WILL NOT HARM ANY PARTY

50.     The Third Circuit counsels a "balancing of equities," weighing "the likely harm to the movant (absent a stay) . . .  against the likely irreparable harm to the stay opponent(s) if the

stay is granted." *In re Revel AC*, 802 F.3d at 569. "Where the balance of harms and public interest weigh in favor of a stay and the court deems that the stay movant *has* made a sufficient showing of success on appeal, a stay should be granted." *Id.*

51.     In contrast to the irreparable harm that Movants will incur in the absence of a stay, none of the other parties, including the PAB, will suffer any harm if a stay is granted. For its part, the PAB has acknowledged that it "does not have an economic interest in the outcome of the EFH/EFIH Allocation Dispute," [D.I. 13163 at 9], and so it cannot point to any harm that it would suffer from a stay of its substantive participation. Moreover, the allocation proceedings will proceed in accordance with the Allocation Scheduling Order, and the PAB will continue to play a role as a recipient of third-party discovery and fact witness, whether or not a stay of the Order is granted. Accordingly, to the extent that the PAB claims an interest in "driv[ing] the EFH/EFIH Allocation Dispute towards a resolution," [D.I. 13113 at 5], a stay will not harm that interest.[7]

52.     Nor would any other party suffer harm from a stay. Together, Movants and the Ad Hoc EFH Claimants adequately represented the interests of the EFIH and the EFH credit bodies, respectively, even before the Court permitted the PAB's substantive participation in the Allocation Dispute.[8] The Court recognized as much at the June 14, 2018 hearing, stating: "I don't think that a fiduciary on both sides is required for this to be a fair proceeding . . . [w]hile neither side represents . . . the entirety of their estate the reality is that they're in exactly the same position for virtually everything involving this dispute that all the other holders at the various

---

[7]     The PAB's stated concern that the schedule will "disintegrate" if "current economic stakeholders" trade away their "significant positions in three or six months down the road" is nothing more than speculation. [D.I. 13163 at 8-9]. Such speculation cannot outweigh the irreparable harm that Movants face absent a stay. *See* Sec. III, *supra*.

[8]     UMB is the indenture trustee for the only exclusively EFIH class of claims, of which class Elliott owns approximately 75% of the claims that voted on the Sempra Plan. [D.I. 12164; 12895-1]. The Ad Hoc EFH Claimants, on the other hand, purport to hold more than $300 million in claims against EFH.

estates are in." **Exhibit C,** Jun. 14, 2018 Hr'g Tr. at 10:6-16.  All interested parties will continue

to be adequately represented, and will accordingly suffer no harm, if the Order is stayed.

53.     The balance of the harms therefore favors Movants.  *See In re Revel AC*, 802 F.3d

at 569.

## V.     PUBLIC INTEREST FAVORS THE STAY

54.     The public interest also favors a stay.  There can be no doubt that "the public has

an interest in correct application of the law," *In re Nw. Missouri Holdings, Inc.*, No.  BR 15-

10728-BLS, 2015 WL 3638000, at *3 (D. Del. June 11, 2015), as well as an interest in ensuring

that fiduciaries such as the PAB act in accordance with their fiduciary obligations.  *See Bancroft*

*Life & Cas. ICC, Ltd. v. Intercontinental Mgmt. Ltd.*, 456 F. App'x 184, 190 (3d Cir. 2012)

("preventing . . .  breach of fiduciary duties, furthers the public interest").  Both of those interests

weigh in favor of a stay here, given that Movants have demonstrated a substantial likelihood that

the PAB's participation in the Allocation Dispute runs contrary to the E-Side Confirmation

Order, Sempra Plan, and Trust Agreement, and violates the fiduciary obligations that it owes to

trust beneficiaries.  *See* Sec. II, *supra*.

55.     A stay would also further the strong public interest in preserving the check of

appellate review.  *See In re Adelphia Commc'ns* Corp., 361 B.R. 337, 367 (S.D.N.Y. 2007); *see*

*also In re Charles & Lillian Brown's Hotel, Inc.*, 93 B.R. 49, 53 (Bankr. S.D.N.Y. 1988)

(recognizing "the critical role a stay pending appeal plays, not only in maintaining the status quo,

but in preserving the right to a review on the merits.").  Absent a stay, the PAB will continue to

participate throughout the Allocation Dispute as a party-litigant, necessarily contrary to the

interests of one class of beneficiaries.  Post-hoc appellate review may not be able to "un-ring"

the bell of the PAB's participation in every part of the proceedings.  *See In re Adelphia*, 361 B.R.

at 367 ("[T]he public interest favors having appeals decided on the merits and not rendered moot.").[9]

## **CONCLUSION**

56.    For the foregoing reasons, Movants respectfully request the Court issue an order staying the Order until the final resolution of Movants' appeal thereof.

Wilmington, Delaware
Date: June 22, 2018

**BAYARD, P.A.**

*/s/ Erin R. Fay*
Scott D. Cousins (No. 3079)
Erin R. Fay (No. 5268)
Evan T. Miller (No. 5364)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
scousins@bayardlaw.com
efay@bayardlaw.com
emiller@bayardlaw.com

–and–

**ROPES & GRAY LLP**
Gregg M. Galardi
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile:  (212) 596-9090
Gregg.Galardi@ropesgray.com

*Counsel for Elliott and UMB Bank, N.A., as Trustee*

---

[9]    No bond under Bankruptcy Rule 8007 is merited, because the Order does not require any monetary payment, and stay of an order will not trigger any financial loss to the adverse party.  *See In re Los Angeles Dodgers LLC*, 465 B.R. 18, 38 (D. Del. 2011) ("[I]n light of . . . the fact that the Bankruptcy Court's Order does not require any monetary payment, there is no need for a bond."); *In re Finova Grp., Inc.*, No. 01-698-PJW, 2007 WL 3238764, at *2 (D. Del. Oct. 31, 2007) (no bond imposed where no "substantial harm" would come to debtors as a result of the stay); *In re United Merchants & Mfrs., Inc.*, 138 B.R. 426, 430 (D. Del. 1992) ("The purpose of [the bond requirement power] is to protect the adverse party from potential losses resulting from the stay").  Here, the Order does not require any monetary payment, and affects only one party's participation in the Allocation Dispute.  That party has already avowed to this Court that it "does not have an economic interest in the outcome of the EFH/EFIH Allocation Dispute." [D.I. 13163 at 9].  Accordingly, no bond is necessary or appropriate.