**<u>EXHIBIT A</u>**

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4

5    In re:                        :

6    ENERGY FUTURE HOLDINGS         :    Chapter 11

7    CORP., et al.,                 :    Case No. 14-10979(CSS)

8            Debtors.               :    (Jointly Administered)

9

10

11                                  United States Bankruptcy Court

12                                  824 North Market Street

13                                  Wilmington, Delaware 19801

14

15                                  March 28, 2018

16                                  2:01 PM - 3:01 PM

17

18

19

20

21

22

23    B E F O R E :

24    HON CHRISTOPHER S. SONTCHI

25    U.S. BANKRUPTCY JUDGE

1    A P P E A R A N C E S :

2    KIRKLAND & ELLIS

3         Attorney for the Debtors

4

5    BY:  MARC KIESELSTEIN, ESQ. (TELEPHONIC)

6         MARK MCKANE, ESQ. (TELEPHONIC)

7         APARNA YENAMANDRA, ESQ. (TELEPHONIC)

8

9    NORTON ROSE FULBRIGHT US LLP

10        Attorney for NextEra Energy

11

12   BY:  HOWARD SEIFE, ESQ. (TELEPHONIC)

13

14   ROPES & GRAY LLP

15        Attorney for Elliott Management Corporation

16

17   BY:  GREGG M. GALARDI, ESQ. (TELEPHONIC)

18

19   BAYARD P.A.

20        Attorney for Elliott Funds L.P., et al.

21

22   BY:  ERIN FAY, ESQ. (TELEPHONIC)

23

24

25

1    KASOWITZ BENSON TORRES

2          Attorney for Certain EFH Claimants

3

4    BY:   DAVID ROSNER, ESQ. (TELEPHONIC)

5    O'MELVENY & MYERS, LLP

6          Attorney for Apollo

7

8    BY:   DANIEL S. SHAMAH, ESQ. (TELEPHONIC)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

1    Hearing re:   Telephonic Status Hearing

2

3    Hearing re:   Application of NextEra Energy, Inc. for

4    Allowance and Payment of Administrative Claim [D.I. 12671;

5    filed February 20, 2018]

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Dawn South

1              P R O C E E D I N G S

2          THE COURT:  Good afternoon, counsel.  This is

3     Judge Sontchi and it's great to have the band back together

4     after a couple weeks of retirement.

5          I asked the parties to appear for a status

6     conference today in response to the motion filed by UMB and

7     Elliott with regard to the what I'll call the supplemental

8     admin claim filed by NextEra, and of course NextEra's letter

9     response which led to this status conference.

10          Late last night I got a letter from the plan

11     administration board, who I may accidentally call the

12     debtors at some point today, but for that I apologize, I do

13     mean the PAB, raising an issue with regard to the ongoing

14     dispute over allocation of certain expenses between EFH and

15     EFIH, and I subsequently today received and read a letter

16     from Elliott with regard to what the PAB had raised.

17          So unless the parties have agreed otherwise what I

18     would propose to do is to deal with the issue regarding the

19     motion to dismiss / motion for summary judgment on the

20     supplemental NextEra first and try to figure out what to do

21     with that, and when that's all taken care of we can turn to

22     discussing the debtors' letter and figure out how to proceed

23     with regard to that.

24          So unless anyone has an objection I think I would

25     turn it over to NextEra's counsel to make whatever

1    presentation they would like to make to supplement their

2    letter, which sort of started this whole process in the

3    first place.

4            MR. SEIFE:  Thank you, Your Honor.  It's Howard

5    Seife at Norton Rose Fulbright on behalf of NextEra Energy.

6            And first I do want to thank the Court for

7    promptly scheduling the status conference.  At the time we

8    requested it we had no idea we would be poking a stick in a

9    hornet's nest here, but we'll leave that to later in this

10   conference.

11           What provoked our letter was the filing of the

12   motion to dismiss by the trustee and Elliott and to seek an

13   appropriate schedule for dealing with NextEra's, what you

14   referred to, Your Honor, as a supplemental administrative

15   claim, which is really in the alternative, which we made

16   clear in our application to the termination fee, which as

17   you know is before the Third Circuit.  That termination fee

18   is the $275 million amount, this supplemental application is

19   for out-of-pocket expenses in the amount of $60 million.

20           By way of background, NextEra made the application

21   in the alternative, and it is quite possible if NextEra

22   prevails in the appeal then this application will need not

23   go forward.  And I think that's important to keep in mind

24   when we talk about issues of judicial economy and how best

25   to proceed, because it seems clear that it would be wise to

1    wait to see what the Third Circuit will do.

2         The parties have all been diligent in expediting

3    the appeal.  The Third Circuit took it on an expedited

4    basis.  It was a shortened briefing schedule.  All the

5    briefs have been filed.  An appeal has been tentatively

6    lifted for consideration on the merits on April 19th.  All

7    things considered it's an appellate process that's moving

8    forward very expeditiously.

9         NextEra filed the application when we did, even

10   though it was in the alternative, was primarily because we

11   are faced with an administrative claims bar date, which was

12   30 days after the effective date.  So it was clearly an

13   application that needed to be made or NextEra would lose its

14   rights and be prejudiced if it did not.

15        And secondly, we wanted to make sure the Court and

16   the parties were aware at the time of confirmation that this

17   alternative application was being made, Your Honor took note

18   of it at the confirmation hearing, and specifically did not

19   tie to reserve for the 275- into this supplemental

20   administrative claim application.

21        So that, to the extent there is a reserve for the

22   60-, will be left for a later day and might require further

23   requests to Your Honor, but it is not as things stands now

24   on the table.

25        The motion filed by the trustee and Elliott to

Page 8

1   dismiss this supplemental application seeks to have it heard

2   on April 25th with objections due April 6th.  Clearly we

3   will not have any indication from the Third Circuit what

4   their intentions are before the responsive date or even

5   certainly before the projected hearing date, and there are

6   several reasons to wait to see what the Third Circuit does

7   before we go forward with the NextEra application or these

8   objections.

9           One, as I said, if the Third Circuit reverses Your

10  Honor there'll be no need to go forward with this

11  application, so it makes perfect sense in terms of judicial

12  economy saving estate resources and others to wait to see

13  what the Third Circuit does.

14          Secondly, the Third Circuit's decision may not be

15  binary, it may not be a simple affirmance or reversal, the

16  Third Circuit may have some guidance on some of the issues

17  which may be relevant if we have to go forward with the

18  supplemental application.

19          So it makes perfect sense to wait to see what the

20  Third Circuit says, to see if there may be a remand for any

21  reason for further fact finding or determination.

22          So all in all we think it makes perfect sense to

23  maintain the NextEra application on hold as well as the new

24  motion made by Elliott and the trustee to wait for further

25  decisions and rulings from the Third Circuit.

1       There really has been no basis that Elliott can

2   show for prejudice here.  As I said at this time the $60

3   million at issue has not been set aside or reserved.  Your

4   Honor has always been approachable by all the parties to

5   deal with timing issues as they come up or further issues

6   regarding setting aside any funds, if necessary.

7       So given the current state of play and clearly

8   based on the letters we have read in any event the estate

9   still has quite a bit of work to do before major

10  distributions are made.

11      So given the lack of prejudice to the parties and

12  the suggestion of conservation of resources all around we

13  think it's right to table the application and the opposition

14  until we've heard from the Third Circuit.

15      Thank you, Your Honor.

16      THE COURT:  Thank you, Mr. Seife.

17      I'll hear from either Elliott or UMB or whoever is

18  representing them separately or together.  I assume it's

19  Mr. Galardi, but I think he had a scheduling conflict so I'm

20  not sure who's here.

21      MR. GALARDI:  Your Honor, it is Greg Galardi and I

22  appreciate it, and one, I will apologize I've never done

23  this but I'm on a cell phone especially because my partner

24  back up had the fortunate pleasure of his wife going into

25  labor two hours ago.

1           THE COURT:  Well good for him.

2           MR. GALARDI:  So I will be doing the argument.  So

3      good for him on a happy note.

4           Your Honor, very, very briefly.  We do believe

5      there's going to be a delay, and the entire premise on which

6      the NextEra motion -- I'll call it a motion to continue or

7      adjourn or hold in abeyance without a motion on a status

8      conference letter sends the following.

9           If NextEra prevails on its appeal of this Court's

10     reconsideration order the application will not -- need not

11     go forward.  That's just simply not the case.  Your Honor,

12     there's three things as Mr. Seife said that can happen.

13          One, the Third Circuit affirms and we'll still

14     have this pending out there, we'll have to come back to Your

15     Honor on the reserve issue, and this issue will get, as

16     NextEra put before the Court at confirmation, the $60

17     million reserve issue if Your Honor is willing to release

18     that reserve.  In that context it simply comes up again.

19          If we wait until the appeal to the Supreme Court

20     is done then even if that appeal is affirmed all the way

21     there we go back this Court with the same 60- motion.

22          And therefore in all circumstances where there's

23     an affirmance there are further proceedings on this motion

24     and there are in fact delays to creditors in getting their

25     distributions.

1          Let's take the other, let's assume that the Third

2     Circuit reverses Your Honor, there is still a pending

3     adversary before this Court brought by the debtors now taken

4     over by the plan administrator board that seeks to disallow

5     the termination fee on good faith grounds and other

6     contractual grounds.

7          This particular motion has alternative relief

8     similarly to have it being brought as alternative relief

9     when the first termination fee was heard or it's been heard

10    at that time.  Just because it's alternative relief doesn't

11    mean it doesn't get heard and doesn't rule.  In fact as it's

12    been put in front of Your Honor, Your Honor could have ruled

13    one, termination fee under the order was not allowed,

14    termination fee was or was not allowed for expenses on an

15    independent ground.

16         So we simply do not believe this is a speculative

17    advisory opinion, we do not think it's resolved, and if

18    there is a remand on factual matters then this will simply

19    be joined again.

20         So, Your Honor, we think Your Honor has ruled on

21    the reconsideration order, we have an independent basis

22    being asserted for the 60 million, and there is simply no

23    reason that this is not ripe to be adjudicated by Your

24    Honor.  And at the end our response we in fact do rely on

25    the reconsideration order, but the primary part of their

1   response is on whether you want to apply a 7012 standard,

2   which Your Honor has the discretion to do, or you go on

3   7056, a summary judgment, they have not and could easily try

4   to raise a factual issue which we think there is none.

5           So, Your Honor, it is very standard and I've done

6   it before where Your Honor filed a summary judgment motion,

7   requested 7012, and it is not an expensive proceeding.  We

8   don't have to get into the whole claims objection and dollar

9   amount, and it is something that will be very important when

10  the Third Circuit ultimately rules and sets up the issues

11  that Your Honor has in the confirmation order as to whether

12  that reserve should in fact be released, whether that

13  reserve as NextEra requests it should be reduced to 60-,

14  this will be critical to that.  And important, NextEra is

15  not saying once the Third Circuit is done we're done.  It's

16  all the way to the Supreme Court and will in fact delay

17  creditor recoveries.

18          So we would ask Your Honor to put it on as

19  scheduled.  We set it for April 25th.  We did give a date of

20  April 6th.  We were never reached out to for a date to

21  respond.  They didn't file a motion to adjourn, which we

22  think is inappropriate in the context of a status conference

23  to do that.  We could have had it after we saw a motion to

24  adjourn.  And we would ask that it be put on a schedule, and

25  there is no reason that alternative relief cannot be heard

1   concurrently with the Third Circuit appeal.

2          THE COURT:  Thank you, Mr. Galardi.

3          I guess I do have a question for you and I suppose

4   I know the answer.  But as it stands now I obviously

5   required the reserve of the 275 million, which is in and of

6   itself on appeal, but I specifically did not require any

7   reserve in connection with the supplemental application.

8   And were the court -- were the Third Circuit to affirm me,

9   which would certainly be outside the normal course, but were

10  that to occur there would be no reason the distribution

11  couldn't be made.  But I suppose your answer to that is you

12  would fully expect a motion from NextEra the next day or

13  even the same day seeking a reserve to prevent a

14  distribution at least to the amount of their supplemental

15  application.

16         MR. GALARDI:  In fact, Your Honor, that was

17  exactly the language that we and the debtors actually

18  opposed at confirmation.

19         THE COURT:  Right.

20         MR. GALARDI:  As you recall their proposal was

21  just drop it back to 60-.  Then we all thought about whether

22  there had to be a cost standard or not.

23         So absolutely, Your Honor, there is going to be,

24  even if the Third Circuit affirms on all grounds, you know,

25  simple opinion, NextEra will ask for the 60 million pending

1    the appeal, and Your Honor, you still have to find that the

2    275- could be released, and that's -- you know, there is a

3    cost standard there.  So we will have to resolve this issue

4    at some point.

5              THE COURT:  Very good.  Thank you.

6              Before I turn it over back to Mr. Seife for any

7    reply I don't want to prevent anyone else who may wish to be

8    heard on this issue.  I know we have a lot of people on the

9    phone.  So is there anyone else who wishes to be heard on

10   this issue about the supplemental application?  Again,

11   holding the dispute about allocation for a later time.

12             MR. KEISELSTEIN:  Your Honor, Marc Kieselstein, on

13   behalf of the plan administrator board.

14             As you saw from our letter we're Switzerland on

15   this one, which I know is uncharacteristic for us, but we're

16   not taking a position.

17             THE COURT:  All right.  Thank you,

18   Mr. Kieselstein.

19             THE COURT:  All right, Mr. Seife?

20             MR. SEIFE:  Yes, just briefly, Your Honor.

21             I think what counsel has suggested is just a

22   myriad of possibilities which is virtually impossible at

23   this stage to predict as to what will happen with the Third

24   Circuit and what will transpire after that decision.

25   Mr. Galardi is assuming all sorts of actions by NextEra,

1   which may or may not be true, but the state of play right

2   now is the 60 million is not set aside or escrowed and

3   everything remains in the control of Your Honor.  The

4   parties have shown throughout the appeal and related

5   proceedings we all know how to act expeditiously and move

6   things along.

7          So given that there's no money set aside right

8   now, and I'm sure if we sought based on what transpires

9   before the Third Circuit a request to have that money set

10  aside, I'm sure Mr. Galardi will put his arguments forward

11  to Your Honor and all of the harm that may come to

12  creditors.  So all of that remains to be see how it plays

13  out.

14         Your Honor has always shown himself to be

15  available to resolve timing issues, and it seems to me to

16  start this litigation now over this alternative expense

17  claim would seem to be a huge waste of everyone's time and

18  judicial resources.

19         THE COURT:  All right.  Thank you.

20         MR. GALARDI:  Your Honor, very briefly.

21         THE COURT:  Yes, of course.  Yeah, that's fine.

22         MR. GALARDI:  We do not doubt Your Honor could

23  resolve these in a very short order.  The only issue is Your

24  Honor has made factual findings and rulings, this is a

25  motion that is ripe, just because it's the alternative it's

1   not mooted, and the fact of the matter is if Your Honor

2   resolves this we don't have 30, 40, or 60 days, and it's

3   simply disingenuous of Mr. Seife to say, oh, well we may not

4   come back for the 60-, they have 275- in reserve, we already

5   know they were negotiating down to get back 215- and still

6   have the 60-.  So we know how this is going to play out

7   whether it's affirmance or reversal.

8            THE COURT:  All right.  Thank you very much.

9   Thank you gentlemen.

10            You know, it's kind of interesting in that it's,

11   you know, a request for administrative expense claim is in

12   effect a motion, but of course until someone notices a

13   motion that they file on the court's notice for a hearing,

14   you know, nothing happens, and we're in this weird kind of

15   position where NextEra has filed their supplemental request,

16   completely appropriately vis-à-vis timing, and timely filed

17   it, but haven't taken any further steps, haven't noticed it

18   for a hearing, et cetera, and we have the objector who's

19   sort of said we don't want to wait, we have a motion to

20   dismiss / motion for summary judgment and we'd like to

21   proceed.

22            I understand NextEra's argument about inefficiency

23   -- judicial inefficiency, but I think that Mr. Galardi has

24   the better argument on sort of the inevitability of having

25   to decide this issue.  Only if the Third Circuit reverses

1    and only if on remand in an adversary proceeding and a trial

2    I find in favor of NextEra, and only if NextEra then

3    prevails on the inevitable appeals that would result from

4    that finding does this issue not occur, this issue should

5    not have to be dealt with with the Court.

6            There's a whole host of things that have -- that

7    can happen that are frankly more likely to happen just given

8    basic probability theory that will require the Court to deal

9    with the supplemental application at some point in time.

10           I'm certainly not ready to schedule a trial on the

11   merits of the supplemental application, I don't think that

12   appropriate, I'm certainly not ready to issue a discovery

13   schedule in connection with the supplemental application, I

14   think that would require further thought by the Court,

15   because there is a balancing here as to the efficiency of

16   wasting not only judicial resources but the parties'

17   resources, and to say that the parties have spent enough

18   money already in this case is of course the understatement

19   of the year.

20           So that said briefing a motion to admission /

21   motion for summary judgment is in and of itself not free of

22   course, but is not particularly onerous with regard to the

23   parties' wallets, and I think is the possibility of moving

24   this issue forward in a way that might limit the amount of

25   time and effort that has to be spent in the future.

1          Before I say anything further I just want a

2     clarification maybe from Mr. Seife.  The matter has been

3     scheduled for disposition on the 19th.  That's not oral

4     argument, that's the court having a meeting -- the panel

5     actually meeting and trying to decide whether -- how to

6     proceed; is that correct?

7          MR. SEIFE:  No oral argument has yet been

8     scheduled.

9          THE COURT:  Okay.

10          MR. SEIFE:  So that sounds right, Your Honor.

11          THE COURT:  Okay.

12          MR. GALARDI:  Your Honor, on that the court has

13     told us if there is oral argument it'll be the week of the

14     16th and tentatively scheduled the 19th.  I think they have

15     a ten day in advance to say whether that will ever -- that

16     actually go forward with oral argument.

17          THE COURT:  All right.  My knowledge of Third

18     Circuit procedure is woeful, so thank you for the

19     clarification.

20          All right.  So what I'd like to do is treat this

21     like it would be treated as if it were a motion in an

22     adversary proceeding before the Court, which would be to

23     apply the briefing rules to the actual motion that normally

24     would apply, not set the matter for oral argument or a

25     hearing until the Court's had an opportunity to review the

1    briefs and decides whether it wants oral argument and when

2    it wants oral about.

3            So I would like the answering brief of NextEra 14

4    days from today, which is April 11th, with a reply by

5    Elliott on the 18th, and then if you would submit that under

6    certification of completion of briefing to the Court I will

7    turn to it as quickly as possible and determine whether to

8    hear oral argument.

9            I will -- I can't imagine being in a position to

10   hear it on the 25th of April when we have an omnibus

11   hearing, so it'll be some time after that, and I'll keep the

12   parties apprised, but that's how I'd like to deal with this

13   specific issue.

14           Now, I don't need discovery, no depositions, no

15   other motion practice, this is a discrete issue.  I am -- I

16   expect, although I'm speculating that one of the responses

17   is the matter is not ripe for summary judgment, if that's

18   the case we'll brief that, but we won't get into the issue

19   of actually taking any discovery until the Court has an

20   opportunity to review the briefing.  So it's a pretty

21   discrete issue here.  One brief left to come from NextEra

22   and a reply from Elliott and then we'll just decide how to

23   proceed from there.

24           MR. GALARDI:  That's fine with Elliott, Your

25   Honor.  Thank you.

1            THE COURT:  You're welcome.

2            MR. SEIFE:  Thank you, Your Honor.

3            THE COURT:  All right.

4            MS. FAY:  Your Honor, this is Erin Fay on behalf

5    of Elliott and UMB can we dispense with this seven-day

6    waiting period under Local Rule 7007-4 for the notice of

7    completion of briefing and just file it after our reply

8    brief?

9            THE COURT:  Yes.

10           MS. FAY:  Okay.  Thank you.

11           THE COURT:  Thank you for reading the local rules,

12   I'm glad somebody does.

13           MR. GALARDI:  I'm pretty embarrassed, Your Honor,

14   by being on the local rules committee.

15           THE COURT:  I know Mr. Galardi is on the

16   committee, he should feel embarrassed.  Thank you, Ms. Fay.

17   Okay.

18           MR. KEISELSTEIN:  Your Honor, it's Marc

19   Kieselstein, can I proceed with the other item?

20           THE COURT:  I was about to turn to you,

21   Mr. Kieselstein.  So yes, please proceed.  I've read your

22   letter and I've read Mr. Galardi's letter.

23           MR. KEISELSTEIN:  Thank you, sir.  And I'm joined

24   by my colleagues, Mark McKane and Aparna Yenamandra.

25           Your Honor, you may have read the letter as sort

1    of a plaintiff cry for help.  And in some ways it is.  Your

2    Honor's well familiar with the allocation issues, we've

3    talked about them from time to time for a number of months,

4    and as Your Honor is aware preemergence, preconfirmation the

5    disinterested directors for both EFH and EFIH and the

6    respective advisors have been working feverishly to reach an

7    agreement on the allocation of the certain claims, and I

8    think you're familiar with the three buckets, I won't repeat

9    them here.  And the CRO as well as Mr. Horton, Mr. Wright,

10   and we exhorted the disinterested directors to ever greater

11   and more urgent efforts, and I know they had creditor

12   constituencies from both boxes in their ear on a pretty

13   constant basis to try to get this resolved, because our

14   overriding desire is to push distributions out the door as

15   quickly as possible.

16        Regrettably obviously the disinterested directors

17   were not able to reach a settlement to put before Your Honor

18   before emergence, and upon emergence the disinterested

19   directors were no longer there and we had the plan

20   administrator board, in the person of Mr. Horton, take over,

21   and at that point we continued to urge the stakeholders, who

22   are all sophisticated parties, to try and reach resolution

23   on these issues themselves with again Mr. Horton and

24   Kirkland and Evercore being willing to provide neutral

25   information, which is sort of how we got to the big

1      intercompany settlement back years and years ago.

2            The failure of there to be an allocation solution

3      prior to emergence meant that we ended up with the

4      economically irrational but unavoidable double reserve where

5      we have, you know, money put aside on account of EFH, we

6      have money put aside on account of EFIH, you add up those

7      amounts of money it's more than these buckets could ever

8      require to be filled, but that's the nature of it.

9            We obviously tried to put tension on the line by

10     including a provision in the plan and the confirmation order

11     that the plan administrative board would seek to allocate

12     the 275- as soon as practicable following confirmation and

13     try to get all that done and get an order in within 40 days

14     of filing of the -- filing of the confirmation order or of

15     emergence rather, and we're well into that period now.  And

16     we haven't seen a deal.

17            There may be an emerging deal, which I'll talk

18     about in a minute, and obviously we would view an emerging

19     deal that had kind of critical mass behind it as a very good

20     development and one which would likely supersede our

21     request, which I'll get to in a moment, that the parties put

22     their positions on the record and tee this up so we can just

23     move the ball forward.

24            Your Honor, as we laid out in the letter there was

25     an anticipated distribution to the non-quals, as we call

1    them, those are mostly retirees not insiders that Your Honor

2    will recall, did not get their lump sum payments during the

3    case and have been waiting a good long time to really use

4    those funds.

5          We had slated a distribution to be made, but

6    unfortunately in the absence of not just a resolution but in

7    the absence of any goal posts put around the parties'

8    demands we simply could not safely do that without

9    potentially having a shortfall down the road, and obviously

10   that's not a tenable option.

11         We considered a number of options, we considered

12   having the plan administrator board in the person of

13   Mr. Horton put forth his own proposal as to what he thinks

14   is fair.  I would note that, you know, we don't view this as

15   a conflict matter anymore because both EFH and EFIH have

16   emerged from bankruptcy and are controlled and owned by

17   Sempra and are not really part of the equation anymore,

18   there's one plan administrative board, it's a unitary body,

19   and so we think, you know, we could go down that road, but

20   we don't want to gun jump a potential deal between the

21   creditors who have the most at stake, who have money on the

22   line, and EFH and EFIH.  And so again, we've been urging and

23   exhorting parties to get together.

24         We understand and we were told last night that

25   there's an agreement in principle between Elliott on the one

1   side, and to be clear, and I don't think Mr. Galardi will

2   take issue this, Elliott is wearing it's sort of EFIH hat

3   even though it is a large creditor at both EFIH and EFH.  By

4   (Indiscernible) of arithmetic every dollar that goes to EFIH

5   is worth more to Elliott than every dollar that goes to EFH.

6   So EFIH wearing -- I'm sorry -- Elliott wearing its EFIH hat

7   appears to have reached a settlement in principle with

8   certain EFH creditors.

9        We're aware, although we are not going to discuss

10  on this call, the terms of the splits that would be involved

11  here, and we are not aware of exactly who is on one side of

12  the arrangement, how much they hold in EFH claims, whether

13  there's a small or large group of other EFH creditors who

14  are or would be on board for this settlement or would be

15  categorically opposed to the settlement.

16        So, you know, we're certainly encouraging that

17  process to continue to develop if it's going to lead

18  anywhere, we're not sure if it will or it won't.  We've

19  obviously, you know, had some false springs before regarding

20  settlement of these issues that have not panned out.

21        So you know, at our wits end in effect we have put

22  out the idea, and it's not without precedent in this case,

23  Your Honor, that parties in an allocation dispute put their

24  proposals on the line, they've certainly had months and

25  months to think about and have thought about and thought

1    about what the proper allocation should be and why they

2    think those allocations are fair, and in the absence of

3    peace breaking out, you know, asking the Court to decide.

4            We're looking for guidance on whether Your Honor

5    thinks that's appropriate, we're looking for guidance

6    frankly on whether Your Honor would be comfortable with the

7    plan administrative board, you know, putting his own

8    position out there in light of the fact that some folks may

9    view that as a conflict situation, we want to not have a

10   situation as we had a few years back where decisions were

11   reached and Your Honor felt that there were conflict issues

12   that needed to be dealt on the front end.

13           So when you boil it all down we want to move the

14   ball forward, we want to get people their distributions.  We

15   suggest in the absence of a settlement breaking out that

16   people submit their positions, and I know, you know, we've

17   got Easter and Passover weekends coming up, there's no magic

18   around April 4th, we don't pretend that there is, but on

19   some date to get this teed up for Your Honor so folks,

20   especially the non-qualified retirees, can get their cents

21   on the dollar that they've been waiting for lo these many

22   years.

23           Happy to address any questions Your Honor has, but

24   that's kind of where -- what our thinking is.

25           THE COURT:  Thank you, Mr. Kieselstein.

1          Mr. Galardi?

2          MR. GALARDI:  Sure, Your Honor.  I think we do not

3    disagree that Elliott has been representing the EFIH side

4    and had worked with Mr. Levin when he was representing a

5    disinterested director and worked with Mr. Thomas, so we

6    have been pushing it.  As I mentioned in my letter we were

7    close but a faction did come in and the EFH trustee -- a

8    disinterested director decided not to proceed or we were not

9    close enough and did not want to fight that issue.

10          I think the fundamental issue here, and I hate to

11   raise these issues over and over again, is the fact of the

12   matter is to get a letter at 10 o'clock last night asking

13   for what is clearly guidance to me, advisory opinion on

14   provisions that implicate the plan.

15          The plan says two things are very important.  They

16   will work in good faith to file a motion.  He can file a

17   motion if they want to.

18          The second thing is if anybody is upset and we

19   would love the distributions to go out to the non-quals,

20   they have a mechanism in the plan to seek to force the

21   issue.

22          What is also troublesome in the letter is this has

23   not been an issue that they were not aware of when we had

24   the reserve, when we had discussions with Mr. Levin, I won't

25   get into the settlement discussions, about the allocation of

1    the termination fee.  We have been very clear that the term

2    fee should be no less than 50 percent.  And so that would

3    only leave $71 million left to distribute.

4            We are prepared to have a motion -- we have

5    negotiated a settlement, but frankly, Your Honor, it's

6    inappropriate to get on a status conference, ask for

7    substantive relief for a procedure asking parties on very

8    complicated issues that go back to the history of this case,

9    regarding asbestos settlements, regarding non-consolidation

10   issues, regarding the allocation of professional fees,

11   regarding the allocation of the termination fee, substantial

12   contribution claims, to do so on four days without a motion

13   is simply inappropriate.

14           So we would ask Your Honor if they want to file a

15   motion then they can file a motion, as we've said in the end

16   of our letter.  We are hopeful that we can get the PAB to

17   support a settlement.  It would be a much easier standard

18   and we have worked months and months and spent lots of money

19   trying to get such a settlement with the EFIH and EFH

20   trustee and disinterested directors, but that's the

21   appropriate mechanism, not getting a letter and making a

22   substantive request at 10 o'clock last night on a status

23   conference without a motion is simply not appropriate.

24           THE COURT:  Thank you, Mr. Galardi.

25           Before I turn it back over to Mr. Kieselstein does

1    anyone else wish to be heard on this issue?

2            MR. ROSNER:  Yes, Your Honor.  It's David Rosner

3    of Kasowitz Benson Torres on behalf of certain of the EFH

4    claimants in this case, the actual relatively large holders

5    of the economic interests at EFH.  And on some points we

6    agree with Elliott, on others we don't, and I'd like to just

7    bring those points to Your Honor.

8            At this point we have been engaged specifically to

9    address, negotiate, if possible, and if not litigate the

10   allocation issue with which, you know, the Court is aware.

11           We also had of course no prior notice of

12   Mr. Kieselstein's letter, the content of the letter, the

13   request for, you know, emergent briefing over a holiday

14   weekend, or this, you know, supposed agreement in principal

15   among certain parties, Elliott on the one side and certain

16   others on the other side.

17           Your Honor, we're not strangers to the parties

18   here, we've been in front of Your Honor in a different

19   capacity before, but to the specific parties in front of

20   Your Honor on the allocation issues we're not strangers to

21   those parties.  We've engaged with Elliott as well as with

22   EFH in its prior iteration over the last several weeks and

23   we've specifically advised Elliott of, you know, the

24   creditors we represent and what they're holdings were over a

25   month ago.

1              And today based upon the letters that were filed

2     last night and this morning, you know, the group has grown

3     substantially and most likely will grow substantially to

4     include holders of the very large, if not the largest, non-

5     Elliott interest at EFH.

6              THE COURT:  I'm sorry, I'm going to interrupt.

7     Have you filed a 2019?

8              MR. ROSNER:  We have not, Your Honor.  As

9     Mr. Galardi pointed out, we did not expect to be in front of

10    Your Honor at all.  We certainly, you know, understand our

11    responsibilities and we're planning on filing our 2019,

12    which is now basically stale based upon what's happened, but

13    before we were going to be filing any -- you know, any

14    papers taking positions before Your Honor.  You know, we

15    filed our 2019 statements before when we represented EFH

16    legacy bonds --

17             THE COURT:  Right.

18             MR. ROSNER:  -- and also we advised Elliott who we

19    were representing.  And I do need to get that on file.  We

20    understand our responsibilities, we will do it, you know, as

21    soon as we kind of gel where the group is right now.  Like I

22    said, it's kind of growing and we expect it to grow over the

23    next 24 hours --

24             THE COURT:  All right.

25             MR. ROSNER:  -- as it has over the last 16 hours.

1          THE COURT:  Okay.  Well you do need to do that,

2     and of course you can supplement it.  I mean -- and the

3     reason I say you do need to do that is you're speaking to

4     the Court now, so you're appearing on behalf of a group of

5     people, which is fine, but please try to get at least an

6     initial statement on the record as soon -- on the docket as

7     soon as possible, and of course you can supplement it as

8     your group changes, as you have to.

9          MR. ROSNER:  Yes.  We absolutely will, Your Honor.

10    I appreciate the indulgence.  You know, like I said, up

11    until 10:00 or 11:00 last night we did not expect in any way

12    to be at this status conference.

13         THE COURT:  No problem.  And I'm sorry to

14    interrupt you, go ahead.

15         MR. ROSNER:  Yeah, and we agree with Elliott on

16    the point that this process that's being asked for by the

17    plan administrator board at this point is not necessary.  We

18    do think it's prejudicial to issues that I think both the

19    board as well as Elliott admit are, and we concur, are

20    complex and very fact intensive.  Nobody of course seeks

21    delay, but you know, after four and a half years we don't

22    think there's a need to rush this issue over the next couple

23    of days, that I think will be, you know, somewhat

24    detrimental to the parties even if they can reach an

25    agreement.

1         Mr. Kieselstein -- what really concerned us was

2    reading in one of two lines of an unsigned, undocumented

3    agreement in principle with Elliott, that Elliott then sends

4    in a letter saying that it's in the process of documenting

5    and things it can do over the next day or so.

6         We understand, because we've tried to quickly find

7    out what's going on, we understand that Elliott and one or

8    two of the smaller holders on the EFH side maybe have

9    reached an agreement in principle.  I think Mr. Kieselstein

10   just said a moment ago that, you know, they would be guided

11   or at least would certainly want to hear from what would be

12   a critical mass on the EFH side.  There is no critical mass

13   on the EFH side -- on the non-Elliott EFH side that is part

14   of any, you know, agreement in principle.  And based upon

15   what Mr. Kieselstein said we understand that the board has

16   not agreed to anything nor is it, you know, proposing it at

17   this point.

18        And you know, again, we're kind of in the dark

19   here, this was just filed by letter.  We don't know much

20   about the so-called deal other than to say the following.

21   There is absolutely no agreement with the larger holders of

22   the non-Elliott economic interest at EFH, which are now

23   organizing as we just discussed.  We think that the term --

24   you know, that one or two smaller holders do not in any way

25   represent, you know, the EFH side or represent, you know,

1    certainly the board itself or the EFH larger economic

2    interests.

3              And we also understand that -- again, we're trying

4    to piece this together -- that as Mr. Galardi said there

5    were, and I think Mr. Kieselstein also said, there were

6    prior discussions between the disinterested directors before

7    they no longer were serving these estates.  And what we do

8    understand is that anything that has been agreed to, if what

9    we're getting is right, is even well beyond what they were

10   talking about from the EFIH side.

11             So this is not something that is really ripe to be

12   heard or positions taken in the next couple of days.  We're

13   not even clear if Elliott is proposing to file a motion for

14   approval of a settlement that its gotten with one or two

15   holders, and we certainly can't stop Elliott or whomever

16   else from filing motions, which of course the Court may or

17   may not consider in due course or to go to the PA -- to the

18   plan administrator board, but fundamentally if this is going

19   to be litigated then there has to be a full and fair process

20   and opportunity so we can create a record on these discrete

21   but yet complex allocation issues so that there can be a

22   proper decision.

23             So we ask, Your Honor, it's kind of along the

24   lines of what Elliott said, is not to direct parties to file

25   anything by the 4th and we'll file our 2019, we will

1    reengage with Elliott and the PAB, to the extent that that

2    could be productive, and we'll get prepared to put on a

3    record for Your Honor to decide these issues if they need to

4    be decided.

5                THE COURT:  Thank you.  Anyone else?

6                MR. SHAMAH:  Your Honor, Daniel Shamah of

7    O'Melverny & Myers on behalf of Apollo.  May I will heard

8    very, very briefly?

9                THE COURT:  Yes.

10               MR. SHAMAH:  Your Honor, as you may recall Apollo

11   is one of the larger TCEH first lien lenders on the T-side

12   cases and accordingly is one of the larger beneficial

13   holders of the intercompany claim, which itself is well

14   either the largest or, you know, second largest claim at

15   EFH.  I simply join in Mr. Rosner's comments entirely.

16               Thank you, Your Honor.

17               THE COURT:  Thank you, sir.  Anyone else?

18               Mr. Kieselstein, any reply?  I can't hear you so

19   you may be on mute.

20               MR. KEISELSTEIN:  Apologies, Your Honor, I was.

21   Your Honor, just a couple of brief points.

22               First it's challenging for me to reconcile what

23   Elliott is saying about the speed with which they can tee up

24   a settlement motion for you and the fact that it would be a

25   burden to then to have to submit their positions on

1   allocation in a relatively and brief amount of time.

2          Everyone on this call, with the exception of the

3   gentleman from O'Melveny, I've had discussions with and

4   they've been looking at these allocation issues for any

5   number of months, and the idea that they don't have well-

6   developed positions on what they think allocation should be

7   and why it should be, you know, X and not Y, and the truth

8   of the matter is these really go to the question of what

9   services were provided for what estate, what fees ought to

10  be chargeable to what estate.  There's -- this is not

11  complicated legal issues per se, it's really what's fair in

12  terms of allocation.

13         So I don't think there's a ton of extensive legal

14  research and briefing that needs to be done on these one off

15  sorts of issues.

16         So we can stand on ceremony and we could, you

17  know, file a motion on regular notice and at that point the

18  Court could, you know, set a schedule for parties to submit

19  the positions, which I believe they already are fully up to

20  speed on and know, that will further obviously delay

21  distributions, which we don't view as a positive

22  development.  So we think really all the parties here are

23  ready to go.  And we're all big boys and girls and I don't

24  think, you know, teeing off a status conference such as this

25  with a request that parties put their positions in writing

Page 35

1    before the Court, which happens every day and we think could

2    be done via letter briefs frankly, is an onerous or

3    unreasonable requirement.

4              But again, obviously if Your Honor wants us to

5    jump through more procedural hoops to tee up these ripe

6    issues that's what we'll do, we just think that's to the

7    detriment of everybody on this call and we're at a loss to

8    understand why.

9              THE COURT:  Okay.  Thank you, Mr. Kieselstein.

10   Well I'm in a kind of odd properly posture here, and

11   procedure does matter, but the question I have is, and it's

12   a rhetorical one, is you know, what would I do with those

13   statements?

14             So were I to require the parties to put in a

15   letter brief addressed to me by a date some time in the near

16   future what their position is on what the allocation should

17   be, other than educating me as to the parties' positions I

18   don't actually have anything I can do with that information

19   absent an affirmative request for relief being made in some

20   manner pursuant to motion or otherwise, almost certainly

21   pursuant to motion.

22             Where it might help me -- what it might help me to

23   do -- and there are things I can do sua sponte, so I'm not

24   saying I'm powerless without a motion -- but one of the

25   things that might help me decide is whether to send y'all to

1    mediation based on, you know, looking at how far the parties

2    are apart or what parties respond, et cetera.

3            But my gut on this one is that we're just not

4    ready for mediation even though the history here goes back

5    literally years and the issues are somewhat well-developed.

6            I think that based on my experience private

7    negotiation without the help of a mediator, judicial or

8    otherwise, is probably the most constructive way to proceed

9    at least in the near future.  I'm not saying it wouldn't

10   help at some point to appoint a mediator, but I don't really

11   feel that that's what's appropriate here, and that's really

12   the only thing that I can see me being able to do that's

13   constructive based on getting or receiving the information

14   that the debtors seek.

15           Now, making everybody show each other what their

16   bottom line is might be helpful I guess for purposes of that

17   private negotiation, but again, you're publicly filing

18   positions on the docket, people are going to take the most

19   extreme position.  So it's not even particularly helpful,

20   because everyone is going to be incentivized to take an

21   extreme position as opposed to what their real deal terms

22   are.  So I don't see it accomplishing much with regard to

23   that.

24           MR. KEISELSTEIN:  Your Honor, can I --

25           THE COURT:  I am -- go ahead, Mr. Kieselstein.

1              MR. KEISELSTEIN:  I was just going to react --

2              THE COURT:  I was on a roll, but that's all right.

3              MR. KEISELSTEIN:  -- to each suggestion.  You're

4      always on a roll, Your Honor.

5              So what I would say is and I think back just a few

6      months to the dividend distribution issue with Encore where

7      Judge Carey actually, you know, played an extremely valuable

8      role in bringing together, you know, Sempra and Elliott and

9      the debtors and that led to a fruitful settlement and

10     avoided a great deal of time, cost, and expense and

11     potentially even jeopardizing the transaction itself.  And

12     as I think about the factual development of those issues,

13     which were relatively fresh as compared to these issues, I

14     think these issues are as well postured and positioned as

15     those were frankly for mediation.

16             So not to disagree with you, Your Honor, but I do

17     think the mediation route, if we're not able to otherwise

18     get this teed up in the near term, is an option that's well

19     worth considering.

20             THE COURT:  Well I'm always open to mediation.  I

21     would point out, I think there's some significant

22     differences.  That particular issue was a very discrete

23     issue, it was a smaller issue in connection with a much

24     larger transaction, not insignificant, but a smaller issue

25     and was pretty narrow, and even that took, according to what

1    I understand, even that took many sessions and quite some

2    time.  And importantly I think that there was real buy in on

3    the process by Elliott, Sempra, and the debtors, and I'm not

4    sure -- I haven't gotten the vibe -- no one has asked me yet

5    other than you sort of just asking me right now -- so no one

6    has asked me yet for mediation and people are always free to

7    ask, but one of the key things in deciding whether to send

8    people to mediation is whether the parties who are going to

9    participate buy into the process, and you have to have done

10   a certain amount of work and head banging and due diligence

11   to be ready to buy into the process.  And I'm not saying

12   people haven't diligenced this thing, it sounds like it's

13   been diligenced to death, but until I get a broader

14   consensus or a vibe of my own I don't see sending it to

15   mediation, and I'm certainly not going to order it today,

16   but I'm always open --

17           MR. KEISELSTEIN:  Sure.

18           THE COURT:  -- to the issue.

19           So I don't know what I would do with the

20   information were I to require it, and I'm not sure it would

21   be particularly constructive.

22           So it actually puts us in a place where I think

23   unfortunately it's a blunt tool and an expensive one, but

24   unfortunately I think I have to look to the plan

25   administration board and say look, if you want to move this

1    forward in a direction that you don't feel is being

2    adequately done through negotiation you really are going to

3    need to file some sort of motion, maybe your own proposal,

4    schedule it for a hearing, and people can respond.  It's an

5    expensive way to proceed and a bit of a clumsy one, but if

6    negotiations are stalled or not getting anywhere that may be

7    the way you have to proceed.

8            And I hate to tell you -- I hate to tell people to

9    the more inefficient way, but sometimes we have to balance

10   inefficiency with due process and proper procedure, and

11   proper procedure here I think is to do what the plan

12   contemplates, which is to file some sort of motion.  And the

13   best motion in the world to file in Bankruptcy Court is a

14   settlement motion, and they almost always get granted just

15   because judges love them so.  If you can reach one terrific,

16   if not set it up for a contested motion and we'll figure out

17   whether to have a hearing and argument and evidence.  I

18   don't know, we'll have to figure it out depending on how the

19   motion reads.

20           We have an hour on April 25th, so don't get

21   excited about doing it an omnibus because it would almost

22   certainly require a much longer amount of time.  So that's

23   where I come out.

24           MR. KEISELSTEIN:  Your Honor, one question.

25           THE COURT:  Sure.

1          MR. KEISELSTEIN:  This is Marc Kieselstein again.

2          Just at the risk of Mr. Galardi accusing me of

3     soliciting an advisory opinion --

4          MR. GALARDI:  Don't even go there because I know

5     what you're going to ask.

6       (Laughter)

7          MR. KEISELSTEIN:  We did raise the issue of

8     whether, you know, this is a -- would be perceived as a

9     conflict for the plan administrative board to actually take

10    a substantive position with the -- in the presence of

11    parties just kind of stop fussing and fighting as to what

12    the plan administrative board thinks is a fair outcome.  And

13    you know, we don't want to do that and have someone get

14    their head cut off for having attempted to do the right

15    thing --

16          THE COURT:  Well look, that is an advisory

17    opinion, so -- but it -- I find it hard to believe -- well

18    no, that's not right.  I find it difficult to accept an

19    argument that a fiduciary for two different estates where

20    the entire issue is which estate gets more than the other

21    estate is not conflicted.

22          MR. KEISELSTEIN:  Appreciate that, Your Honor.  So

23    when we talk about the plan administrator board filing a

24    motion it's in essence to compel the parties I think to do

25    sort of what we mentioned in our letter, which is to compel

1    the parties to put their positions on the table since we're

2    not in a position to take a position.

3              THE COURT:  Well but I think the plan -- doesn't

4    the plan give you the power to appoint -- doesn't the plan

5    give Mr. -- oh, I can't remember -- oh, my goodness.

6              MR. KEISELSTEIN:  Mr. Horton.

7              THE COURT:  Mr. Horton.  I cannot believe I cannot

8    -- I apologize.  Mr. Horton who I know well.  Doesn't it

9    give Mr. Horton the ability to select representatives?

10             MR. KEISELSTEIN:  It does, Your Honor.  We could

11   replicate the disinterested director construct from the

12   olden days.  I'd say a couple of things about that.

13             THE COURT:  Which was hugely expensive to say the

14   least.

15             MR. KEISELSTEIN:  Yes.  Hugely expensive, would

16   prior no doubt other sets of professionals --

17             THE COURT:  Yeah.

18             MR. KEISELSTEIN:  -- would take the time for

19   people to get up to speed on these issues, and more

20   importantly, would in essence socialize the cost of whatever

21   positions the party would take.

22             We did receive a request on the EFH side from a

23   subset of creditors to consider that, but given that EFH

24   creditors may be of multiple minds here, you know, we could

25   end up, you know, just in a quagmire, Your Honor, and we

1    were hoping for once to save the cost and expense of all

2    this to replicate or triplicate, you know, the professionals

3    here, not to go down that route.

4             THE COURT:  The last thing I want is to spend

5    another $60 million on a disinterested director process to

6    say the least.  Although it was hugely beneficial to the

7    estates and was worth the money at the time, the resources

8    are dwindling and the issues are narrowing, and it seems to

9    me that it would not be a particularly constructive way to

10   proceed, but I don't know what else to tell you, you're in a

11   bit of an odd -- you're in a difficult situation,

12   Mr. Kieselstein, your client represents two companies or two

13   estates that have divergent views on a key issue, so I'm not

14   quite sure how you proceed.

15            MR. KEISELSTEIN:  No one said I had to do this for

16   a living, Your Honor, I have only myself for blame.  But

17   yeah, look, we will obviously take and appreciate your

18   guidance and thank you for your willingness to give us some.

19   I will try to fashion the best mouse trap we can to move

20   this process forward.  It's a shame that creditors are being

21   waylaid by all this, but I don't know that there's any way

22   around it.

23            THE COURT:  We interrupted Mr. Galardi I believe.

24            MR. GALARDI:  No, Your Honor, it's good that you

25   interpreted me, I have nothing more to say.  Thank you.

1            THE COURT:  Okay.  All right.  Okay.  Well as

2    always it's excellent to talk with you guys on interesting

3    issues and we made some decisions and we've made mostly --

4    not made decisions.

5            Is there anything else before we sign off?  Okay.

6    I hear none.

7            MR. KEISELSTEIN:  I was just going to say not from

8    the debtors, Your Honor.  Thank you for your time.

9            THE COURT:  Thank you, Mr. Kieselstein.  So we are

10   adjourned.  Thank you very much.  I hope everyone has a

11   pleasant Easter and Passover.

12       (A chorus of thank you)

13       (Whereupon these proceedings were concluded at 3:01 PM)

14

15

16

17

18

19

20

21

22

23

24

25

Page 44

1                      I N D E X

2                      RULINGS

3                                                    PAGE

4    Supplemental Application                        18

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    _____

7    Dawn South

8    Certified Electronic Transcriber

9

10

11

12   Date:  March 29, 2018

13

14

15

16

17

18

19

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501

| & | | |
|---|---|---|
| **&**  2:2,14 3:5 33:7 | | |

**1**

**10**  26:12 27:22
**10:00**  30:11
**11**  1:6
**11501**  45:25
**11:00**  30:11
**11th**  19:4
**12671**  4:4
**14**  19:3
**14-10979**  1:7
**16**  29:25
**16th**  18:14
**18**  44:4
**18th**  19:5
**19801**  1:13
**19th**  7:6 18:3,14

**2**

**20**  4:5
**2018**  1:15 4:5
  45:12
**2019**  29:7,11,15
  32:25
**215**  16:5
**24**  29:23
**25th**  8:2 12:19
  19:10 39:20
**275**  6:18 7:19 13:5
  14:2 16:4 22:12
**28**  1:15
**29**  45:12
**2:01**  1:16

**3**

**30**  7:12 16:2
**300**  45:24
**330**  45:23
**3:01**  1:16 43:13

**4**

**40**  16:2 22:13

**4th**  25:18 32:25

**5**

**50**  27:2

**6**

**60**  6:19 7:22 9:2
  10:16,21 11:22
  12:13 13:21,25
  15:2 16:2,4,6 42:5
**6th**  8:2 12:20

**7**

**7007-4**  20:6
**7012**  12:1,7
**7056**  12:3
**71**  27:3

**8**

**824**  1:12

**a**

**abeyance**  10:7
**ability**  41:9
**able**  21:17 36:12
  37:17
**absence**  23:6,7
  25:2,15
**absent**  35:19
**absolutely**  13:23
  30:9 31:21
**accept**  40:18
**accidentally**  5:11
**accomplishing**
  36:22
**account**  22:5,6
**accurate**  45:4
**accusing**  40:2
**act**  15:5
**actions**  14:25
**actual**  18:23 28:4
**add**  22:6
**address**  25:23
  28:9
**addressed**  35:15

**adequately**  39:2
**adjourn**  10:7
  12:21,24
**adjourned**  43:10
**adjudicated**  11:23
**admin**  5:8
**administered**  1:8
**administration**
  5:11 38:25
**administrative**
  4:4 6:14 7:11,20
  16:11 22:11 23:18
  25:7 40:9,12
**administrator**
  11:4 14:13 21:20
  23:12 30:17 32:18
  40:23
**admission**  17:20
**admit**  30:19
**advance**  18:15
**adversary**  11:3
  17:1 18:22
**advised**  28:23
  29:18
**advisors**  21:6
**advisory**  11:17
  26:13 40:3,16
**affirm**  13:8
**affirmance**  8:15
  10:23 16:7
**affirmative**  35:19
**affirmed**  10:20
**affirms**  10:13
  13:24
**afternoon**  5:2
**ago**  9:25 22:1
  28:25 31:10
**agree**  28:6 30:15
**agreed**  5:17 31:16
  32:8
**agreement**  21:7
  23:25 28:14 30:25
  31:3,9,14,21

**ahead**  30:14 36:25
**al**  1:7 2:20
**allocate**  22:11
**allocation**  5:14
  14:11 21:2,7 22:2
  24:23 25:1 26:25
  27:10,11 28:10,20
  32:21 34:1,4,6,12
  35:16
**allocations**  25:2
**allowance**  4:4
**allowed**  11:13,14
**alternative**  6:15
  6:21 7:10,17 11:7
  11:8,10 12:25
  15:16,25
**amount**  6:18,19
  12:9 13:14 17:24
  34:1 38:10 39:22
**amounts**  22:7
**answer**  13:4,11
**answering**  19:3
**anticipated**  22:25
**anybody**  26:18
**anymore**  23:15,17
**aparna**  2:7 20:24
**apart**  36:2
**apollo**  3:6 33:7,10
**apologies**  33:20
**apologize**  5:12
  9:22 41:8
**appeal**  6:22 7:3,5
  10:9,19,20 13:1,6
  14:1 15:4
**appeals**  17:3
**appear**  5:5
**appearing**  30:4
**appears**  24:7
**appellate**  7:7
**application**  4:3
  6:16,18,20,22 7:9
  7:13,17,20 8:1,7
  8:11,18,23 9:13

10:10 13:7,15
14:10 17:9,11,13
44:4
**apply** 12:1 18:23
18:24
**appoint** 36:10
41:4
**appreciate** 9:22
30:10 40:22 42:17
**apprised** 19:12
**approachable** 9:4
**appropriate** 6:13
17:12 25:5 27:21
27:23 36:11
**appropriately**
16:16
**approval** 32:14
**april** 7:6 8:2,2
12:19,20 19:4,10
25:18 39:20
**argument** 10:2
16:22,24 18:4,7
18:13,16,24 19:1
19:8 39:17 40:19
**arguments** 15:10
**arithmetic** 24:4
**arrangement**
24:12
**asbestos** 27:9
**aside** 9:3,6 15:2,7
15:10 22:5,6
**asked** 5:5 30:16
38:4,6
**asking** 25:3 26:12
27:7 38:5
**asserted** 11:22
**assume** 9:18 11:1
**assuming** 14:25
**attempted** 40:14
**attorney** 2:3,10
2:15,20 3:2,6
**available** 15:15

**avoided** 37:10
**aware** 7:16 21:4
24:9,11 26:23
28:10

**b**

**b** 1:23
**back** 5:3 9:24
10:14,21 13:21
14:6 16:4,5 22:1
25:10 27:8,25
36:4 37:5
**background** 6:20
**balance** 39:9
**balancing** 17:15
**ball** 22:23 25:14
**band** 5:3
**banging** 38:10
**bankruptcy** 1:1
1:11,25 23:16
39:13
**bar** 7:11
**based** 9:8 15:8
29:1,12 31:14
36:1,6,13
**basic** 17:8
**basically** 29:12
**basis** 7:4 9:1
11:21 21:13
**bayard** 2:19
**behalf** 6:5 14:13
20:4 28:3 30:4
33:7
**believe** 10:4 11:16
34:19 40:17 41:7
42:23
**beneficial** 33:12
42:6
**benson** 3:1 28:3
**best** 6:24 39:13
42:19
**better** 16:24
**beyond** 32:9

**big** 21:25 34:23
**binary** 8:15
**bit** 9:9 39:5 42:11
**blame** 42:16
**blunt** 38:23
**board** 5:11 11:4
14:13 21:20 22:11
23:12,18 24:14
25:7 30:17,19
31:15 32:1,18
38:25 40:9,12,23
**body** 23:18
**boil** 25:13
**bonds** 29:16
**bottom** 36:16
**boxes** 21:12
**boys** 34:23
**breaking** 25:3,15
**brief** 19:3,18,21
20:8 33:21 34:1
35:15
**briefing** 7:4 17:20
18:23 19:6,20
20:7 28:13 34:14
**briefly** 10:4 14:20
15:20 33:8
**briefs** 7:5 19:1
35:2
**bring** 28:7
**bringing** 37:8
**broader** 38:13
**brought** 11:3,8
**buckets** 21:8 22:7
**burden** 33:25
**buy** 38:2,9,11

**c**

**c** 2:1 5:1 45:1,1
**call** 5:7,11 10:6
22:25 24:10 34:2
35:7
**called** 31:20
**capacity** 28:19

**care** 5:21
**carey** 37:7
**case** 1:7 10:11
17:18 19:18 23:3
24:22 27:8 28:4
**cases** 33:12
**categorically**
24:15
**cell** 9:23
**cents** 25:20
**ceremony** 34:16
**certain** 3:2 5:14
21:7 24:8 28:3,15
28:15 38:10
**certainly** 8:5 13:9
17:10,12 24:16,24
29:10 31:11 32:1
32:15 35:20 38:15
39:22
**certification** 19:6
**certified** 45:8
**certify** 45:3
**cetera** 16:18 36:2
**challenging** 33:22
**changes** 30:8
**chapter** 1:6
**chargeable** 34:10
**chorus** 43:12
**christopher** 1:24
**circuit** 6:17 7:1,3
8:3,6,9,13,16,20
8:25 9:14 10:13
11:2 12:10,15
13:1,8,24 14:24
15:9 16:25 18:18
**circuit's** 8:14
**circumstances**
10:22
**claim** 4:4 5:8 6:15
7:20 15:17 16:11
33:13,14
**claimants** 3:2
28:4

| | | | d |
|---|---|---|---|

**claims** 7:11 12:8
21:7 24:12 27:12
**clarification** 18:2
18:19
**clear** 6:16,25 24:1
27:1 32:13
**clearly** 7:12 8:2
9:7 26:13
**client** 42:12
**close** 26:7,9
**clumsy** 39:5
**colleagues** 20:24
**come** 9:5 10:14
15:11 16:4 19:21
26:7 39:23
**comes** 10:18
**comfortable** 25:6
**coming** 25:17
**comments** 33:15
**committee** 20:14
20:16
**companies** 42:12
**compared** 37:13
**compel** 40:24,25
**completely** 16:16
**completion** 19:6
20:7
**complex** 30:20
32:21
**complicated** 27:8
34:11
**concerned** 31:1
**concluded** 43:13
**concur** 30:19
**concurrently** 13:1
**conference** 5:6,9
6:7,10 10:8 12:22
27:6,23 30:12
34:24
**confirmation** 7:16
7:18 10:16 12:11
13:18 22:10,12,14

**conflict** 9:19
23:15 25:9,11
40:9
**conflicted** 40:21
**connection** 13:7
17:13 37:23
**consensus** 38:14
**conservation** 9:12
**consider** 32:17
41:23
**consideration** 7:6
**considered** 7:7
23:11,11
**considering** 37:19
**consolidation** 27:9
**constant** 21:13
**constituencies** 21:12
**construct** 41:11
**constructive** 36:8
36:13 38:21 42:9
**contemplates** 39:12
**content** 28:12
**contested** 39:16
**context** 10:18
12:22
**continue** 10:6
24:17
**continued** 21:21
**contractual** 11:6
**contribution** 27:12
**control** 15:3
**controlled** 23:16
**corp** 1:7
**corporation** 2:15
**correct** 18:6
**cost** 13:22 14:3
37:10 41:20 42:1
**counsel** 5:2,25
14:21

**country** 45:23
**couple** 5:4 30:22
32:12 33:21 41:12
**course** 5:8 13:9
15:21 16:12 17:18
17:22 28:11 30:2
30:7,20 32:16,17
**court** 1:1,11 5:2
6:6 7:15 9:16 10:1
10:16,19,21 11:3
12:16 13:2,8,19
14:5,17,19 15:19
15:21 16:8 17:5,8
17:14 18:4,9,11
18:12,17,22 19:6
19:19 20:1,3,9,11
20:15,20 25:3,25
27:24 28:10 29:6
29:17,24 30:1,4
30:13 32:16 33:5
33:9,17 34:18
35:1,9 36:25 37:2
37:20 38:18 39:13
39:25 40:16 41:3
41:7,13,17 42:4
42:23 43:1,9
**court's** 10:9 16:13
18:25
**create** 32:20
**creditor** 12:17
21:11 24:3
**creditors** 10:24
15:12 23:21 24:8
24:13 28:24 41:23
41:24 42:20
**critical** 12:14
22:19 31:12,12
**cro** 21:9
**cry** 21:1
**css** 1:7
**current** 9:7
**cut** 40:14

**d** 5:1 44:1
**d.i.** 4:4
**daniel** 3:8 33:6
**dark** 31:18
**date** 7:11,12 8:4,5
12:19,20 25:19
35:15 45:12
**david** 3:4 28:2
**dawn** 4:25 45:3,7
**day** 7:22 13:12,13
18:15 20:5 31:5
35:1
**days** 7:12 16:2
19:4 22:13 27:12
30:23 32:12 41:12
**deal** 5:18 9:5 17:8
19:12 22:16,17,19
23:20 31:20 36:21
37:10
**dealing** 6:13
**dealt** 17:5 25:12
**death** 38:13
**debtors** 1:8 2:3
5:12,22 11:3
13:17 36:14 37:9
38:3 43:8
**decide** 16:25 18:5
19:22 25:3 33:3
35:25
**decided** 26:8 33:4
**decides** 19:1
**deciding** 38:7
**decision** 8:14
14:24 32:22
**decisions** 8:25
25:10 43:3,4
**delaware** 1:2,13
**delay** 10:5 12:16
30:21 34:20
**delays** 10:24
**demands** 23:8

**depending** 39:18
**depositions** 19:14
**desire** 21:14
**determination**
  8:21
**determine** 19:7
**detriment** 35:7
**detrimental** 30:24
**develop** 24:17
**developed** 34:6
  36:5
**development**
  22:20 34:22 37:12
**differences** 37:22
**different** 28:18
  40:19
**difficult** 40:18
  42:11
**diligence** 38:10
**diligenced** 38:12
  38:13
**diligent** 7:2
**direct** 32:24
**direction** 39:1
**director** 26:5,8
  41:11 42:5
**directors** 21:5,10
  21:16,19 27:20
  32:6
**disagree** 26:3
  37:16
**disallow** 11:4
**discovery** 17:12
  19:14,19
**discrete** 19:15,21
  32:20 37:22
**discretion** 12:2
**discuss** 24:9
**discussed** 31:23
**discussing** 5:22
**discussions** 26:24
  26:25 32:6 34:3

**disingenuous** 16:3
**disinterested** 21:5
  21:10,16,18 26:5
  26:8 27:20 32:6
  41:11 42:5
**dismiss** 5:19 6:12
  8:1 16:20
**dispense** 20:5
**disposition** 18:3
**dispute** 5:14
  14:11 24:23
**distribute** 27:3
**distribution** 13:10
  13:14 22:25 23:5
  37:6
**distributions** 9:10
  10:25 21:14 25:14
  26:19 34:21
**district** 1:2
**divergent** 42:13
**dividend** 37:6
**docket** 30:6 36:18
**documenting** 31:4
**doing** 10:2 39:21
**dollar** 12:8 24:4,5
  25:21
**door** 21:14
**double** 22:4
**doubt** 15:22 41:16
**drop** 13:21
**due** 8:2 32:17
  38:10 39:10
**dwindling** 42:8

**e**

**e** 1:23,23 2:1,1 5:1
  5:1 44:1 45:1
**ear** 21:12
**easier** 27:17
**easily** 12:3
**easter** 25:17 43:11
**economic** 28:5
  31:22 32:1

**economically** 22:4
**economy** 6:24
  8:12
**educating** 35:17
**effect** 16:12 24:21
**effective** 7:12
**efficiency** 17:15
**effort** 17:25
**efforts** 21:11
**efh** 3:2 5:14 21:5
  22:5 23:15,22
  24:3,5,8,12,13
  26:7 27:19 28:3,5
  28:22 29:5,15
  31:8,12,13,13,22
  31:25 32:1 33:15
  41:22,23
**efih** 5:15 21:5
  22:6 23:15,22
  24:2,3,4,6,6 26:3
  27:19 32:10
**either** 9:17 33:14
**electronic** 45:8
**elliott** 2:15,20 5:7
  5:16 6:12 7:25
  8:24 9:1,17 19:5
  19:22,24 20:5
  23:25 24:2,5,6
  26:3 28:6,15,21
  28:23 29:5,18
  30:15,19 31:3,3,7
  31:13,22 32:13,15
  32:24 33:1,23
  37:8 38:3
**ellis** 2:2
**embarrassed**
  20:13,16
**emerged** 23:16
**emergence** 21:18
  21:18 22:3,15
**emergent** 28:13
**emerging** 22:17
  22:18

**encore** 37:6
**encouraging**
  24:16
**ended** 22:3
**energy** 1:6 2:10
  4:3 6:5
**engaged** 28:8,21
**entire** 10:5 40:20
**entirely** 33:15
**equation** 23:17
**erin** 2:22 20:4
**escrowed** 15:2
**especially** 9:23
  25:20
**esq** 2:5,6,7,12,17
  2:22 3:4,8
**essence** 40:24
  41:20
**estate** 8:12 9:8
  34:9,10 40:20,21
**estates** 32:7 40:19
  42:7,13
**et** 1:7 2:20 16:18
  36:2
**event** 9:8
**evercore** 21:24
**everybody** 35:7
  36:15
**everyone's** 15:17
**evidence** 39:17
**exactly** 13:17
  24:11
**excellent** 43:2
**exception** 34:2
**excited** 39:21
**exhorted** 21:10
**exhorting** 23:23
**expect** 13:12
  19:16 29:9,22
  30:11
**expedited** 7:3
**expediting** 7:2

expeditiously 7:8
  15:5
expense 15:16
  16:11 37:10 42:1
expenses 5:14
  6:19 11:14
expensive 12:7
  38:23 39:5 41:13
  41:15
experience 36:6
extensive 34:13
extent 7:21 33:1
extreme 36:19,21
extremely 37:7

**f**

f 1:23 45:1
faced 7:11
fact 8:21 10:24
  11:11,24 12:12,16
  13:16 16:1 25:8
  26:11 30:20 33:24
faction 26:7
factual 11:18 12:4
  15:24 37:12
failure 22:2
fair 23:14 25:2
  32:19 34:11 40:12
faith 11:5 26:16
false 24:19
familiar 21:2,8
far 36:1
fashion 42:19
favor 17:2
fay 2:22 20:4,4,10
  20:16
february 4:5
fee 6:16,17 11:5,9
  11:13,14 27:1,2
  27:11
feel 20:16 36:11
  39:1
fees 27:10 34:9

felt 25:11
feverishly 21:6
fiduciary 40:19
fight 26:9
fighting 40:11
figure 5:20,22
  39:16,18
file 12:21 16:13
  20:7 26:16,16
  27:14,15 29:19
  32:13,24,25 34:17
  39:3,12,13
filed 4:5 5:6,8 7:5
  7:9,25 12:6 16:15
  16:16 29:1,7,15
  31:19
filing 6:11 22:14
  22:14 29:11,13
  32:16 36:17 40:23
filled 22:8
find 14:1 17:2
  31:6 40:17,18
finding 8:21 17:4
findings 15:24
fine 15:21 19:24
  30:5
first 5:20 6:3,6
  11:9 33:11,22
folks 25:8,19
following 10:8
  22:12 31:20
force 26:20
foregoing 45:3
forth 23:13
fortunate 9:24
forward 6:23 7:8
  8:7,10,17 10:11
  15:10 17:24 18:16
  22:23 25:14 39:1
  42:20
four 27:12 30:21
frankly 17:7 25:6
  27:5 35:2 37:15

free 17:21 38:6
fresh 37:13
front 11:12 25:12
  28:18,19 29:9
fruitful 37:9
fulbright 2:9 6:5
full 32:19
fully 13:12 34:19
fundamental
  26:10
fundamentally
  32:18
funds 2:20 9:6
  23:4
further 7:22 8:21
  8:24 9:5 10:23
  16:17 17:14 18:1
  34:20
fussing 40:11
future 1:6 17:25
  35:16 36:9

**g**

g 5:1
galardi 2:17 9:19
  9:21,21 10:2 13:2
  13:16,20 14:25
  15:10,20,22 16:23
  18:12 19:24 20:13
  20:15 24:1 26:1,2
  27:24 29:9 32:4
  40:2,4 42:23,24
galardi's 20:22
gel 29:21
gentleman 34:3
gentlemen 16:9
getting 10:24
  27:21 32:9 36:13
  39:6
girls 34:23
give 12:19 41:4,5
  41:9 42:18
given 9:7,11 15:7
  17:7 41:23

glad 20:12
go 6:23 8:7,10,17
  10:11,21 12:2
  18:16 23:19 26:19
  27:8 30:14 32:17
  34:8,23 36:25
  40:4 42:3
goal 23:7
goes 24:4,5 36:4
going 9:24 10:5
  13:23 16:6 24:9
  24:17 29:6,13
  31:7 32:18 36:18
  36:20 37:1 38:8
  38:15 39:2 40:5
  43:7
good 5:2 10:1,3
  11:5 14:5 22:19
  23:3 26:16 42:24
goodness 41:5
gotten 32:14 38:4
granted 39:14
gray 2:14
great 5:3 37:10
greater 21:10
greg 9:21
gregg 2:17
ground 11:15
grounds 11:5,6
  13:24
group 24:13 29:2
  29:21 30:4,8
grow 29:3,22
growing 29:22
grown 29:2
guess 13:3 36:16
guidance 8:16
  25:4,5 26:13
  42:18
guided 31:10
gun 23:20
gut 36:3

**guys** 43:2

**h**

**half** 30:21
**happen** 10:12
  14:23 17:7,7
**happened** 29:12
**happens** 16:14
  35:1
**happy** 10:3 25:23
**hard** 40:17
**harm** 15:11
**hat** 24:2,6
**hate** 26:10 39:8,8
**head** 38:10 40:14
**hear** 9:17 19:8,10
  31:11 33:18 43:6
**heard** 8:1 9:14
  11:9,9,11 12:25
  14:8,9 28:1 32:12
  33:7
**hearing** 4:1,1,3
  7:18 8:5 16:13,18
  18:25 19:11 39:4
  39:17
**help** 21:1 35:22
  35:22,25 36:7,10
**helpful** 36:16,19
**history** 27:8 36:4
**hold** 8:23 10:7
  24:12
**holders** 28:4 29:4
  31:8,21,24 32:15
  33:13
**holding** 14:11
**holdings** 1:6
  28:24
**holiday** 28:13
**hon** 1:24
**honor** 6:4,14 7:17
  7:23 8:10 9:4,15
  9:21 10:4,11,15
  10:17 11:2,12,12
  11:20,20,24 12:2

12:5,6,11,18
13:16,23 14:1,12
14:20 15:3,11,14
15:20,22,24 16:1
18:10,12 19:25
20:2,4,13,18,25
21:4,17 22:24
23:1 24:23 25:4,6
25:11,19,23 26:2
27:5,14 28:2,7,17
28:18,20 29:8,10
29:14 30:9 32:23
33:3,6,10,16,20
33:21 35:4 36:24
37:4,16 39:24
40:22 41:10,25
42:16,24 43:8
**honor's** 21:2
**hoops** 35:5
**hope** 43:10
**hopeful** 27:16
**hoping** 42:1
**hornet's** 6:9
**horton** 21:9,20,23
  23:13 41:6,7,8,9
**host** 17:6
**hour** 39:20
**hours** 9:25 29:23
  29:25
**howard** 2:12 6:4
**huge** 15:17
**hugely** 41:13,15
  42:6

**i**

**idea** 6:8 24:22
  34:5
**imagine** 19:9
**implicate** 26:14
**important** 6:23
  12:9,14 26:15
**importantly** 38:2
  41:20

**impossible** 14:22
**inappropriate**
  12:22 27:6,13
**incentivized**
  36:20
**include** 29:4
**including** 22:10
**independent**
  11:15,21
**indication** 8:3
**indiscernible** 24:4
**indulgence** 30:10
**inefficiency** 16:22
  16:23 39:10
**inefficient** 39:9
**inevitability**
  16:24
**inevitable** 17:3
**information** 21:25
  35:18 36:13 38:20
**initial** 30:6
**insiders** 23:1
**insignificant**
  37:24
**intensive** 30:20
**intentions** 8:4
**intercompany**
  22:1 33:13
**interest** 29:5
  31:22
**interesting** 16:10
  43:2
**interests** 28:5
  32:2
**interpreted** 42:25
**interrupt** 29:6
  30:14
**interrupted** 42:23
**involved** 24:10
**irrational** 22:4
**issue** 5:13,18 9:3
  10:15,15,17 12:4
  14:3,8,10 15:23

16:25 17:4,4,12
17:24 19:13,15,18
19:21 24:2 26:9
26:10,21,23 28:1
28:10 30:22 37:6
37:22,23,23,24
38:18 40:7,20
42:13
**issues** 6:24 8:16
  9:5,5 12:10 15:15
  21:2,23 24:20
  25:11 26:11 27:8
  27:10 28:20 30:18
  32:21 33:3 34:4
  34:11,15 35:6
  36:5 37:12,13,14
  41:19 42:8 43:3
**it'll** 18:13 19:11
**item** 20:19
**iteration** 28:22

**j**

**jeopardizing**
  37:11
**join** 33:15
**joined** 11:19
  20:23
**jointly** 1:8
**judge** 1:25 5:3
  37:7
**judges** 39:15
**judgment** 5:19
  12:3,6 16:20
  17:21 19:17
**judicial** 6:24 8:11
  15:18 16:23 17:16
  36:7
**jump** 23:20 35:5

**k**

**kasowitz** 3:1 28:3
**keep** 6:23 19:11
**keiselstein** 14:12
  20:18,23 33:20
  36:24 37:1,3

38:17 39:24 40:1
40:7,22 41:6,10
41:15,18 42:15
43:7
**key**  38:7 42:13
**kieselstein**  2:5
14:12,18 20:19,21
25:25 27:25 31:1
31:9,15 32:5
33:18 35:9 36:25
40:1 42:12 43:9
**kieselstein's**  28:12
**kind**  16:10,14
22:19 25:24 29:21
29:22 31:18 32:23
35:10 40:11
**kirkland**  2:2
21:24
**know**  6:17 13:4
13:24 14:2,8,15
15:5 16:5,6,10,11
16:14 20:15 21:11
22:5 23:14,19
24:16,19,21 25:3
25:7,16,16 28:10
28:13,14,23 29:2
29:10,13,14,20
30:10,21,23 31:10
31:14,16,18,19,24
31:25,25 33:14
34:7,17,18,20,24
35:12 36:1 37:7,8
38:19 39:18 40:4
40:8,13 41:8,24
41:25 42:2,10,21
**knowledge**  18:17

**l**

**l.p.**  2:20
**labor**  9:25
**lack**  9:11
**laid**  22:24
**language**  13:17

**large**  24:3,13 28:4
29:4
**larger**  31:21 32:1
33:11,12 37:24
**largest**  29:4 33:14
33:14
**late**  5:10
**laughter**  40:6
**lead**  24:17
**leave**  6:9 27:3
**led**  5:9 37:9
**left**  7:22 19:21
27:3
**legacy**  29:16
**legal**  34:11,13
45:22
**lenders**  33:11
**letter**  5:8,10,15,22
6:2,11 10:8 14:14
20:22,22,25 22:24
26:6,12,22 27:16
27:21 28:12,12
31:4,19 35:2,15
40:25
**letters**  9:8 29:1
**levin**  26:4,24
**lien**  33:11
**lifted**  7:6
**light**  25:8
**limit**  17:24
**line**  22:9 23:22
24:24 36:16
**lines**  31:2 32:24
**literally**  36:5
**litigate**  28:9
**litigated**  32:19
**litigation**  15:16
**living**  42:16
**llp**  2:9,14 3:5
**lo**  25:21
**local**  20:6,11,14
**long**  23:3

**longer**  21:19 32:7
39:22
**look**  38:24,25
40:16 42:17
**looking**  25:4,5
34:4 36:1
**lose**  7:13
**loss**  35:7
**lot**  14:8
**lots**  27:18
**love**  26:19 39:15
**lump**  23:2

**m**

**m**  2:17
**magic**  25:17
**maintain**  8:23
**major**  9:9
**making**  27:21
36:15
**management**  2:15
**manner**  35:20
**marc**  2:5 14:12
20:18 40:1
**march**  1:15 45:12
**mark**  2:6 20:24
**market**  1:12
**mass**  22:19 31:12
31:12
**matter**  16:1 18:2
18:24 19:17 23:15
26:12 34:8 35:11
**matters**  11:18
**mckane**  2:6 20:24
**mean**  5:13 11:11
30:2
**meant**  22:3
**mechanism**  26:20
27:21
**mediation**  36:1,4
37:15,17,20 38:6
38:8,15
**mediator**  36:7,10

**meeting**  18:4,5
**mentioned**  26:6
40:25
**merits**  7:6 17:11
**million**  6:18,19
9:3 10:17 11:22
13:5,25 15:2 27:3
42:5
**mind**  6:23
**minds**  41:24
**mineola**  45:25
**minute**  22:18
**moment**  22:21
31:10
**money**  15:7,9
17:18 22:5,6,7
23:21 27:18 42:7
**month**  28:25
**months**  21:3
24:24,25 27:18,18
34:5 37:6
**mooted**  16:1
**morning**  29:2
**motion**  5:6,19,19
6:12 7:25 8:24
10:6,6,7,21,23
11:7 12:6,21,23
13:12 15:25 16:12
16:13,19,20 17:20
17:21 18:21,23
19:15 26:16,17
27:4,12,15,15,23
32:13 33:24 34:17
35:20,21,24 39:3
39:12,13,14,16,19
40:24
**motions**  32:16
**mouse**  42:19
**move**  15:5 22:23
25:13 38:25 42:19
**moving**  7:7 17:23
**multiple**  41:24

**mute** 33:19
**myers** 3:5 33:7
**myriad** 14:22

**n**

**n** 2:1 5:1 44:1
45:1
**narrow** 37:25
**narrowing** 42:8
**nature** 22:8
**near** 35:15 36:9
37:18
**necessary** 9:6
30:17
**need** 6:22 8:10
10:10 19:14 29:19
30:1,3,22 33:3
39:3
**needed** 7:13 25:12
**needs** 34:14
**negotiate** 28:9
**negotiated** 27:5
**negotiating** 16:5
**negotiation** 36:7
36:17 39:2
**negotiations** 39:6
**nest** 6:9
**neutral** 21:24
**never** 9:22 12:20
**new** 8:23
**nextera** 2:10 4:3
5:8,20 6:5,20,21
7:9,13 8:7,23 10:6
10:9,16 12:13,14
13:12,25 14:25
16:15 17:2,2 19:3
19:21
**nextera's** 5:8,25
6:13 16:22
**night** 5:10 23:24
26:12 27:22 29:2
30:11
**non** 22:25 25:20
26:19 27:9 29:4

31:13,22
**normal** 13:9
**normally** 18:23
**north** 1:12
**norton** 2:9 6:5
**note** 7:17 10:3
23:14
**notice** 16:13 20:6
28:11 34:17
**noticed** 16:17
**notices** 16:12
**number** 21:3
23:11 34:5
**ny** 45:25

**o**

**o** 1:23 5:1 45:1
**o'clock** 26:12
27:22
**o'melveny** 3:5
34:3
**o'melverny** 33:7
**objection** 5:24
12:8
**objections** 8:2,8
**objector** 16:18
**obviously** 13:4
21:16 22:9,18
23:9 24:19 34:20
35:4 42:17
**occur** 13:10 17:4
**odd** 35:10 42:11
**oh** 16:3 41:5,5
**okay** 18:9,11
20:10,17 30:1
35:9 43:1,1,5
**old** 45:23
**olden** 41:12
**omnibus** 19:10
39:21
**once** 12:15 42:1
**onerous** 17:22
35:2

**ongoing** 5:13
**open** 37:20 38:16
**opinion** 11:17
13:25 26:13 40:3
40:17
**opportunity**
18:25 19:20 32:20
**opposed** 13:18
24:15 36:21
**opposition** 9:13
**option** 23:10
37:18
**options** 23:11
**oral** 18:3,7,13,16
18:24 19:1,2,8
**order** 10:10 11:13
11:21,25 12:11
15:23 22:10,13,14
38:15
**organizing** 31:23
**ought** 34:9
**outcome** 40:12
**outside** 13:9
**overriding** 21:14
**owned** 23:16

**p**

**p** 2:1,1 5:1
**p.a.** 2:19
**pa** 32:17
**pab** 5:13,16 27:16
33:1
**page** 44:3
**panel** 18:4
**panned** 24:20
**papers** 29:14
**part** 11:25 23:17
31:13
**participate** 38:9
**particular** 11:7
37:22
**particularly**
17:22 36:19 38:21
42:9

**parties** 5:5,17 7:2
7:16 9:4,11 15:4
17:16,17,23 19:12
21:22 22:21 23:7
23:23 24:23 27:7
28:15,17,19,21
30:24 32:24 34:18
34:22,25 35:14,17
36:1,2 38:8 40:11
40:24 41:1
**partner** 9:23
**party** 41:21
**passover** 25:17
43:11
**payment** 4:4
**payments** 23:2
**peace** 25:3
**pending** 10:14
11:2 13:25
**people** 14:8 25:14
25:16 30:5 36:18
38:6,8,12 39:4,8
41:19
**perceived** 40:8
**percent** 27:2
**perfect** 8:11,19,22
**period** 20:6 22:15
**person** 21:20
23:12
**phone** 9:23 14:9
**piece** 32:4
**place** 6:3 38:22
**plaintiff** 21:1
**plan** 5:10 11:4
14:13 21:19 22:10
22:11 23:12,18
25:7 26:14,15,20
30:17 32:18 38:24
39:11 40:9,12,23
41:3,4,4
**planning** 29:11
**play** 9:7 15:1 16:6

played  37:7
plays  15:12
pleasant  43:11
please  20:21 30:5
pleasure  9:24
pm  1:16,16 43:13
pocket  6:19
point  5:12 14:4
  17:9 21:21 28:8
  30:16,17 31:17
  34:17 36:10 37:21
pointed  29:9
points  28:5,7
  33:21
poking  6:8
position  14:16
  16:15 19:9 25:8
  35:16 36:19,21
  40:10 41:2,2
positioned  37:14
positions  22:22
  25:16 29:14 32:12
  33:25 34:6,19,25
  35:17 36:18 41:1
  41:21
positive  34:21
possibilities  14:22
possibility  17:23
possible  6:21 19:7
  21:15 28:9 30:7
posts  23:7
posture  35:10
postured  37:14
potential  23:20
potentially  23:9
  37:11
power  41:4
powerless  35:24
practicable  22:12
practice  19:15
precedent  24:22
preconfirmation
  21:4

predict  14:23
preemergence
  21:4
prejudice  9:2,11
prejudiced  7:14
prejudicial  30:18
premise  10:5
prepared  27:4
  33:2
presence  40:10
presentation  6:1
pretend  25:18
pretty  19:20
  20:13 21:12 37:25
prevails  6:22 10:9
  17:3
prevent  13:13
  14:7
primarily  7:10
primary  11:25
principal  28:14
principle  23:25
  24:7 31:3,9,14
prior  22:3 28:11
  28:22 32:6 41:16
private  36:6,17
probability  17:8
probably  36:8
problem  30:13
procedural  35:5
procedure  18:18
  27:7 35:11 39:10
  39:11
proceed  5:22 6:25
  16:21 18:6 19:23
  20:19,21 26:8
  36:8 39:5,7 42:10
  42:14
proceeding  12:7
  17:1 18:22
proceedings
  10:23 15:5 43:13
  45:4

process  6:2 7:7
  24:17 30:16 31:4
  32:19 38:3,9,11
  39:10 42:5,20
productive  33:2
professional
  27:10
professionals
  41:16 42:2
projected  8:5
promptly  6:7
proper  25:1 32:22
  39:10,11
properly  35:10
proposal  13:20
  23:13 39:3
proposals  24:24
propose  5:18
proposing  31:16
  32:13
provide  21:24
provided  34:9
provision  22:10
provisions  26:14
provoked  6:11
publicly  36:17
purposes  36:16
pursuant  35:20
  35:21
push  21:14
pushing  26:6
put  10:16 11:12
  12:18,24 15:10
  21:17 22:5,6,9,21
  23:7,13 24:21,23
  33:2 34:25 35:14
  41:1
puts  38:22
putting  25:7

**q**

quagmire  41:25
qualified  25:20

quals  22:25 26:19
question  13:3
  34:8 35:11 39:24
questions  25:23
quickly  19:7
  21:15 31:6
quite  6:21 9:9
  38:1 42:14

**r**

r  1:23 2:1 5:1 45:1
raise  12:4 26:11
  40:7
raised  5:16
raising  5:13
reach  21:6,17,22
  30:24 39:15
reached  12:20
  24:7 25:11 31:9
react  37:1
read  5:15 9:8
  20:21,22,25
reading  20:11
  31:2
reads  39:19
ready  17:10,12
  34:23 36:4 38:11
real  36:21 38:2
really  6:15 9:1
  23:3,17 31:1
  32:11 34:8,11,22
  36:10,11 39:2
reason  8:21 11:23
  12:25 13:10 30:3
reasons  8:6
recall  13:20 23:2
  33:10
receive  41:22
received  5:15
receiving  36:13
reconcile  33:22
reconsideration
  10:10 11:21,25

**record** 22:22 30:6
  32:20 33:3 45:4
**recoveries** 12:17
**reduced** 12:13
**reengage** 33:1
**referred** 6:14
**regard** 5:7,13,16
  5:23 17:22 36:22
**regarding** 5:18
  9:6 24:19 27:9,9
  27:10,11
**regrettably** 21:16
**regular** 34:17
**related** 15:4
**relatively** 28:4
  34:1 37:13
**release** 10:17
**released** 12:12
  14:2
**relevant** 8:17
**relief** 11:7,8,10
  12:25 27:7 35:19
**rely** 11:24
**remains** 15:3,12
**remand** 8:20
  11:18 17:1
**remember** 41:5
**repeat** 21:8
**replicate** 41:11
  42:2
**reply** 14:7 19:4,22
  20:7 33:18
**represent** 28:24
  31:25,25
**representatives**
  41:9
**represented** 29:15
**representing** 9:18
  26:3,4 29:19
**represents** 42:12
**request** 15:9
  16:11,15 22:21
  27:22 28:13 34:25

35:19 41:22
**requested** 6:8
  12:7
**requests** 7:23
  12:13
**require** 7:22 13:6
  17:8,14 22:8
  35:14 38:20 39:22
**required** 13:5
**requirement** 35:3
**research** 34:14
**reserve** 7:19,21
  10:15,17,18 12:12
  12:13 13:5,7,13
  16:4 22:4 26:24
**reserved** 9:3
**resolution** 21:22
  23:6
**resolve** 14:3 15:15
  15:23
**resolved** 11:17
  21:13
**resolves** 16:2
**resources** 8:12
  9:12 15:18 17:16
  17:17 42:7
**respective** 21:6
**respond** 12:21
  36:2 39:4
**response** 5:6,9
  11:24 12:1
**responses** 19:16
**responsibilities**
  29:11,20
**responsive** 8:4
**result** 17:3
**retirees** 23:1
  25:20
**retirement** 5:4
**reversal** 8:15 16:7
**reverses** 8:9 11:2
  16:25

**review** 18:25
  19:20
**rhetorical** 35:12
**right** 9:13 13:19
  14:17,19 15:1,7
  15:19 16:8 18:10
  18:17,20 20:3
  29:17,21,24 32:9
  37:2 38:5 40:14
  40:18 43:1
**rights** 7:14
**ripe** 11:23 15:25
  19:17 32:11 35:5
**risk** 40:2
**road** 23:9,19
  45:23
**role** 37:8
**roll** 37:2,4
**ropes** 2:14
**rose** 2:9 6:5
**rosner** 3:4 28:2,2
  29:8,18,25 30:9
  30:15
**rosner's** 33:15
**route** 37:17 42:3
**rule** 11:11 20:6
**ruled** 11:12,20
**rules** 12:10 18:23
  20:11,14
**rulings** 8:25 15:24
  44:2
**rush** 30:22

**s**

**s** 1:24 2:1 3:8 5:1
**safely** 23:8
**save** 42:1
**saving** 8:12
**saw** 12:23 14:14
**saying** 12:15 31:4
  33:23 35:24 36:9
  38:11
**says** 8:20 26:15

**schedule** 6:13 7:4
  12:24 17:10,13
  34:18 39:4
**scheduled** 12:19
  18:3,8,14
**scheduling** 6:7
  9:19
**se** 34:11
**second** 26:18
  33:14
**secondly** 7:15
  8:14
**see** 7:1 8:6,12,19
  8:20 15:12 36:12
  36:22 38:14
**seek** 6:12 22:11
  26:20 36:14
**seeking** 13:13
**seeks** 8:1 11:4
  30:20
**seen** 22:16
**seife** 2:12 6:4,5
  9:16 10:12 14:6
  14:19,20 16:3
  18:2,7,10 20:2
**select** 41:9
**sempra** 23:17
  37:8 38:3
**send** 35:25 38:7
**sending** 38:14
**sends** 10:8 31:3
**sense** 8:11,19,22
**separately** 9:18
**services** 34:9
**serving** 32:7
**sessions** 38:1
**set** 9:3 12:19 15:2
  15:7,9 18:24
  34:18 39:16
**sets** 12:10 41:16
**setting** 9:6
**settlement** 21:17
  22:1 24:7,14,15

24:20 25:15 26:25
27:5,17,19 32:14
33:24 37:9 39:14
**settlements** 27:9
**seven** 20:5
**shamah** 3:8 33:6,6
33:10
**shame** 42:20
**short** 15:23
**shortened** 7:4
**shortfall** 23:9
**show** 9:2 36:15
**shown** 15:4,14
**side** 24:1,11 26:3
28:15,16 31:8,12
31:13,13,25 32:10
33:11 41:22
**sign** 43:5
**significant** 37:21
**similarly** 11:8
**simple** 8:15 13:25
**simply** 10:11,18
11:16,18,22 16:3
23:8 27:13,23
33:15
**sir** 20:23 33:17
**situation** 25:9,10
42:11
**slated** 23:5
**small** 24:13
**smaller** 31:8,24
37:23,24
**socialize** 41:20
**soliciting** 40:3
**solution** 22:2
**solutions** 45:22
**somebody** 20:12
**somewhat** 30:23
36:5
**sontchi** 1:24 5:3
**soon** 22:12 29:21
30:6,7

**sophisticated**
21:22
**sorry** 24:6 29:6
30:13
**sort** 6:2 16:19,24
20:25 21:25 24:2
38:5 39:3,12
40:25
**sorts** 14:25 34:15
**sought** 15:8
**sounds** 18:10
38:12
**south** 4:25 45:3,7
**speaking** 30:3
**specific** 19:13
28:19
**specifically** 7:18
13:6 28:8,23
**speculating** 19:16
**speculative** 11:16
**speed** 33:23 34:20
41:19
**spend** 42:4
**spent** 17:17,25
27:18
**splits** 24:10
**sponte** 35:23
**springs** 24:19
**stage** 14:23
**stake** 23:21
**stakeholders**
21:21
**stale** 29:12
**stalled** 39:6
**stand** 34:16
**standard** 12:1,5
13:22 14:3 27:17
**stands** 7:23 13:4
**start** 15:16
**started** 6:2
**state** 9:7 15:1
**statement** 30:6

**statements** 29:15
35:13
**states** 1:1,11
**status** 4:1 5:5,9
6:7 10:7 12:22
27:6,22 30:12
34:24
**steps** 16:17
**stick** 6:8
**stop** 32:15 40:11
**strangers** 28:17
28:20
**street** 1:12
**sua** 35:23
**submit** 19:5 25:16
33:25 34:18
**subsequently** 5:15
**subset** 41:23
**substantial** 27:11
**substantially** 29:3
29:3
**substantive** 27:7
27:22 40:10
**suggest** 25:15
**suggested** 14:21
**suggestion** 9:12
37:3
**suite** 45:24
**sum** 23:2
**summary** 5:19
12:3,6 16:20
17:21 19:17
**supersede** 22:20
**supplement** 6:1
30:2,7
**supplemental** 5:7
5:20 6:14,18 7:19
8:1,18 13:7,14
14:10 16:15 17:9
17:11,13 44:4
**support** 27:17
**suppose** 13:3,11

**supposed** 28:14
**supreme** 10:19
12:16
**sure** 7:15 9:20
15:8,10 24:18
26:2 38:4,17,20
39:25 42:14
**switzerland** 14:14

### t

**t** 33:11 45:1,1
**table** 7:24 9:13
41:1
**take** 11:1 21:20
24:2 36:18,20
40:9 41:2,18,21
42:17
**taken** 5:21 11:3
16:17 32:12
**talk** 6:24 22:17
40:23 43:2
**talked** 21:3
**talking** 32:10
**tceh** 33:11
**tee** 22:22 33:23
35:5
**teed** 25:19 37:18
**teeing** 34:24
**telephonic** 2:5,6,7
2:12,17,22 3:4,8
4:1
**tell** 39:8,8 42:10
**ten** 18:15
**tenable** 23:10
**tension** 22:9
**tentatively** 7:5
18:14
**term** 27:1 31:23
37:18
**termination** 6:16
6:17 11:5,9,13,14
27:1,11
**terms** 8:11 24:10
34:12 36:21

**terrific** 39:15
**thank** 6:4,6 9:15
   9:16 13:2 14:5,17
   15:19 16:8,9
   18:18 19:25 20:2
   20:10,11,16,23
   25:25 27:24 33:5
   33:16,17 35:9
   42:18,25 43:8,9
   43:10,12
**theory** 17:8
**thing** 26:18 36:12
   38:12 40:15 42:4
**things** 7:7,23
   10:12 15:6 17:6
   26:15 31:5 35:23
   35:25 38:7 41:12
**think** 5:24 6:23
   8:22 9:13,19
   11:17,20 12:4,22
   14:21 16:23 17:11
   17:14,23 18:14
   21:8 23:19 24:1
   24:25 25:2 26:2
   26:10 30:18,18,22
   30:23 31:9,23
   32:5 34:6,13,22
   34:24 35:1,6 36:6
   37:5,12,14,17,21
   38:2,22,24 39:11
   40:24 41:3
**thinking** 25:24
**thinks** 23:13 25:5
   40:12
**third** 6:17 7:1,3
   8:3,6,9,13,14,16
   8:20,25 9:14
   10:13 11:1 12:10
   12:15 13:1,8,24
   14:23 15:9 16:25
   18:17
**thomas** 26:5

**thought** 13:21
   17:14 24:25,25
**three** 10:12 21:8
**tie** 7:19
**time** 6:7 7:16 9:2
   11:10 14:11 15:17
   17:9,25 19:11
   21:3,3 23:3 34:1
   35:15 37:10 38:2
   39:22 41:18 42:7
   43:8
**timely** 16:16
**timing** 9:5 15:15
   16:16
**today** 5:6,12,15
   19:4 29:1 38:15
**told** 18:13 23:24
**ton** 34:13
**tool** 38:23
**torres** 3:1 28:3
**transaction** 37:11
   37:24
**transcribed** 4:25
**transcriber** 45:8
**transcript** 45:3
**transpire** 14:24
**transpires** 15:8
**trap** 42:19
**treat** 18:20
**treated** 18:21
**trial** 17:1,10
**tried** 22:9 31:6
**triplicate** 42:2
**troublesome**
   26:22
**true** 15:1 45:4
**trustee** 6:12 7:25
   8:24 26:7 27:20
**truth** 34:7
**try** 5:20 12:3
   21:13,22 22:13
   30:5 42:19

**trying** 18:5 27:19
   32:3
**turn** 5:21,25 14:6
   19:7 20:20 27:25
**two** 9:25 26:15
   31:2,8,24 32:14
   40:19 42:12,12

### u

**u.s.** 1:25
**ultimately** 12:10
**umb** 5:6 9:17 20:5
**unavoidable** 22:4
**uncharacteristic**
   14:15
**understand** 16:22
   23:24 29:10,20
   31:6,7,15 32:3,8
   35:8 38:1
**understatement**
   17:18
**undocumented**
   31:2
**unfortunately**
   23:6 38:23,24
**unitary** 23:18
**united** 1:1,11
**unreasonable**
   35:3
**unsigned** 31:2
**upset** 26:18
**urge** 21:21
**urgent** 21:11
**urging** 23:22
**use** 23:3

### v

**valuable** 37:7
**veritext** 45:22
**vibe** 38:4,14
**view** 22:18 23:14
   25:9 34:21
**views** 42:13
**virtually** 14:22

**vis** 16:16,16

### w

**wait** 7:1 8:6,12,19
   8:24 10:19 16:19
**waiting** 20:6 23:3
   25:21
**wallets** 17:23
**want** 6:6 12:1
   14:7 16:19 18:1
   23:20 25:9,13,14
   26:9,17 27:14
   31:11 38:25 40:13
   42:4
**wanted** 7:15
**wants** 19:1,2 35:4
**waste** 15:17
**wasting** 17:16
**way** 6:20 10:20
   12:16 17:24 30:11
   31:24 36:8 39:5,7
   39:9 42:9,21
**waylaid** 42:21
**ways** 21:1
**we've** 9:14 21:2
   23:22 24:18 25:16
   27:15 28:18,21,23
   31:6 43:3
**wearing** 24:2,6,6
**week** 18:13
**weekend** 28:14
**weekends** 25:17
**weeks** 5:4 28:22
**weird** 16:14
**welcome** 20:1
**wife** 9:24
**willing** 10:17
   21:24
**willingness** 42:18
**wilmington** 1:13
**wise** 6:25
**wish** 14:7 28:1
**wishes** 14:9

**wits**   24:21
**woeful**   18:18
**work**   9:9 26:16
  38:10
**worked**   26:4,5
  27:18
**working**   21:6
**world**   39:13
**worth**   24:5 37:19
  42:7
**wright**   21:9
**writing**   34:25

**x**

**x**   34:7 44:1

**y**

**y**   34:7
**y'all**   35:25
**yeah**   15:21 30:15
  41:17 42:17
**year**   17:19
**years**   22:1,1 25:10
  25:22 30:21 36:5
**yenamandra**   2:7
  20:24

**à**

**à**   16:16