IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date (Requested):** |
| | ) **July 16, 2018 at 11:00 a.m.** |
| | ) |
| | ) **Objection Deadline (Requested):** |
| | ) **July 12, 2018 at 11:59 p.m.** |

**MOTION OF EFH PLAN
ADMINISTRATOR BOARD FOR AUTHORIZATION TO
REIMBURSE THIRD-PARTY DISCOVERY FEES AND EXPENSES
OF FORMER DIRECTORS, OFFICERS, AND MANAGER INCURRED
IN CONNECTION WITH THE EFH/EFIH ALLOCATION DISPUTE**

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

RLF1 19616603v.1

The EFH Plan Administrator Board (the "PAB") hereby files this motion (this "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Order") authorizing reimbursement from the EFH Plan Administration Trust to the former disinterested directors and managers at EFH and EFIH (the "Former Disinterested Directors and Managers"), and the other former directors and officers of the EFH/EFIH Debtors (together with the Former Disinterested Directors and Managers, the "Former Directors and Officers"), for reasonable and documented costs and expenses, including reasonable and documented legal fees and expenses (collectively, the "Fees and Expenses") incurred in connection with the EFH/EFIH Allocation Dispute (as defined below), effective *nunc pro tunc* to the entry of the *Order Scheduling Certain Dates and Deadlines and Establishing Certain Protocols in Connection with the Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to Fix Appropriate Allocation of Certain Reserves and Expenses as Between the EFH and EFIH Debtors* [D.I. 13193] (as may be amended, the "Allocation Scheduling Order"):[2]

### Jurisdiction

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the EFH Plan Administrator Board consents pursuant to rule 9013-1(f) of the

---

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to them in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12653] (the "Plan") or the Allocation Scheduling Order, as applicable.

Nothing herein prejudices the rights of any of the Former Directors and Officers (including the Former Disinterested Directors and Officers) to seek any form of relief (including relief related to the Fees and Expenses) in connection with the EFH/EFIH Allocation Dispute.

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.   The bases for the relief requested in this Motion are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"); rules 2002(b) and (d), and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and rule 45(d) of the Federal Rules of Civil Procedure (the "Federal Rules").

**Background**

4.   On April 29, 2014, the Debtors commenced their chapter 11 cases. In November 2014, each of EFH Corp., EFIH, and EFCH/TCEH retained counsel and financial advisors to advise them in analyzing conflicts matters among the estates of those Debtors, including potential intercompany Claims among the Debtors, at the direction of the disinterested directors and managers at each of EFH, EFIH, and EFCH/TCEH, respectively.[3]

5.   During the pendency of the chapter 11 cases, the estates compensated the Former Directors and Officers in the ordinary course of business, without any need for Court approval. Former counsel to the Former Disinterested Directors of EFH (Bielli & Klauder, LLC and Proskauer Rose LLP) and former counsel to the Former Disinterested Manager of EFIH (Stevens & Lee, P.C. and Jenner & Block LLP) (collectively, "Counsel") were compensated in

---

[3] *Disclosure Statement for the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 11889].

accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066], the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896, as amended by D.I. 12552] and each of their respective retention orders.

6. The EFH/EFIH Debtors emerged from chapter 11 on March 9, 2018 (the "EFH Effective Date").[4] Following the EFH Effective Date, and under the EFH Plan Administration Trust Agreement, the PAB holds all powers necessary to administer the EFH Plan Administration Trust for the benefit of the EFH and EFIH creditors.[5]

7. Prior to the EFH Effective Date, the Former Disinterested Directors and Managers of EFH and EFIH had been engaged in negotiations (between each other and with certain of their respective creditor constituencies) surrounding a potential settlement of certain administrative claims, now the subject of the EFH/EFIH Allocation Dispute. These negotiations did not yield a settlement.

8. On May 13, 2018, the Elliott Funds filed a motion requesting that the Court fix an allocation of certain reserves and expenses as between the EFH and EFIH Debtors [D.I. 13102] (the "Elliott Allocation Motion"). On June 11, 2018, the Court entered the Allocation Scheduling Order, which provided a process for parties to respond to the Elliott Allocation Motion. Three days later, on June 14, 2018, the Court found that the PAB could participate in the EFH/EFIH Allocation Dispute.[6]

---

[4] *See Notice of Entry of EFH Confirmation Order and Occurrence of EFH Effective Date* [D.I. 12801].

[5] *Notice of the Filing of the Second Amended Supplement to the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, Ex. D. [D.I. 12798].

[6] 6/14/18 Hr'g Tr. at 5:9 ("I'm going to allow the PAB to participate.").

9. Pursuant to paragraph 5(d) of the Allocation Scheduling Order, June 29, 2018 was the deadline to serve any subpoenas on third parties in relation to the EFH/EFIH Allocation Dispute. On that date, the Elliott Funds issued subpoenas to the Former Disinterested Directors of EFH (Donald L. Evans and Billie I. Williamson) and the Former Disinterested Manager of EFIH (Charles H. Cremens). Also on that date, the EFH Ad Hoc Group and EFH Indenture Trustee issued subpoenas on Ms. Williamson and Mr. Cremens. Counsel to the creditors have indicated they will take third-party discovery from the Debtors' former chief restructuring officer (Paul Keglevic). Currently, the deadline to respond to these subpoenas is July 6, 2018. The PAB understands that extensions of that date have been negotiated.

10. As detailed below, in upcoming weeks, the Former Disinterested Directors and Managers—who are not "Parties" to the Allocation Scheduling Order—may be subjected to time-consuming pre-trial litigation, including responding to the subpoenas; document collection, review, and production and the logging of privileged materials; deposition preparation and testimony; trial preparation; and if a settlement is not reached, attendance (and potential testimony) at a trial lasting up to three full days.

11. The amount of Fees and Expenses that the Former Disinterested Directors and Managers (and, potentially, other Former Directors and Officers) incur in connection with the EFH/EFIH Allocation Dispute is wholly in the hands of the Parties (excluding the PAB), who can control the scope of subpoena requests and deposition notices and demand for trial testimony. The Former Directors and Officers are not Parties to the EFH/EFIH Allocation Dispute, and are not subject to personal liability through the proceedings contemplated in the Allocation Scheduling Order. In other words, there is no incentive (or disincentive) driving

Former Directors and Officers to engage and cooperate with the Parties' efforts to resolve the EFH/EFIH Allocation Dispute.

12. In light of the foregoing, the PAB believes it is a prudent exercise of its authority under the EFH Plan Administration Trust Agreement (or under alternative authority, as described herein) to reimburse the Fees and Expenses of Former Directors and Officers, in accordance with the Fees and Expenses Allocation set forth in the Order (as described below).

### Relief Requested

13. By this Motion, the EFH Plan Administrator Board requests entry of an order substantially in the form attached hereto as **Exhibit A**, (a) authorizing payment from the EFH Plan Administration Trust for the Former Directors and Officers' Fees and Expenses incurred in connection with the EFH/EFIH Allocation Dispute, *nunc pro tunc* to June 11, 2018 (*i.e.*, the date of entry of the Allocation Scheduling Order), and (b) providing that the allocation of such Fees and Expenses shall be as follows: (x) 100% from the EFH Cash Account for any Fees and Expenses incurred by the Former Disinterested Directors and Managers of EFH; (y) 100% from the Cash in the EFH/EFIH Cash Distribution Account available to satisfy Allowed Claims against the EFIH Debtors (as set forth in subclause (d) of the definition of EFH/EFIH Cash Distribution Account in the Plan) for any Fees and Expenses incurred by the Former Disinterested Directors and Managers of EFIH; and (z) 50%/50% from each of the foregoing accounts for any Fees and Expenses incurred by any other Former Directors and Officers of EFH and EFIH (excluding the Former Disinterested Directors and Managers) (the "Fees and Expenses Allocation").[7]

---

[7] Subpoenas were also served to many of the Professionals that represented the EFH/EFIH Debtors during the chapter 11 cases. Pursuant to the Plan, "upon the EFH Effective Date. . .any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the

## Basis for Relief Requested

I. **THE REQUESTED RELIEF IS APPROPRIATE AND PROMOTES THE RESOLUTION OF THE EFH/EFIH ALLOCATION DISPUTE.**

    A. **The EFH Plan Administration Trust Agreement Authorizes the Payment of Fees and Expenses.**

14. The EFH Plan Administration Trust Agreement provides the PAB with "all powers necessary to implement the provisions of [the EFH Plan Administration Trust Agreement] and administer the Trust."[8] These broad powers include the authority to reimburse the Fees and Expenses.

15. *First*, the PAB has the authority to disburse payments on account of the Fees and Expenses because the incurrence of such costs will be in connection with the "protection, preservation, liquidation, and distribution of the Trust Assets" in accordance with Article VI.1 of the EFH Plan Administration Trust Agreement:

> The Trustee shall expend Trust Assets: (a) to pay reasonable administrative expenses of the Trust that are incurred (including any taxes imposed on the Trust or reasonable professional, consultant, and employee fees and expenses in connection with the administration of the Trust Assets . . . **and (ii) any other fees and costs incurred in connection with the protection, preservation, liquidation, and distribution of the Trust Assets**.

EFH Plan Administration Trust Agreement, Article IV.1 ("Payment of Claims, Expenses, and Liabilities") (emphasis added).

16. Fundamentally, the EFH/EFIH Allocation Dispute is litigation about the "liquidation" of Claims asserted against each of EFIH and EFH and "distribution" of the estate

---

Debtors or Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court." Plan, Art. II.2.A.2.e. Therefore, this Motion does not request relief related to those fees and expenses of Professionals incurred in conjunction with the EFH/EFIH Allocation Dispute. The PAB reserves all rights with respect to such fees and expenses incurred by the Professionals in connection with the EFH/EFIH Allocation Dispute, consistent with the Plan and the EFH Plan Administration Trust Agreement.

[8] EFH Plan Administration Trust Agreement, Recital I.

7

RLF1 19616603v.1

assets. Indeed, as all of the Parties are aware, as a result of the EFH/EFIH Allocation Dispute, the EFH Plan Administrator Board has been forced to hold back ***over half a billion in Plan distributions*** and has been unable to make distributions to Holders of Allowed Claims in Classes A4-A11 under the Plan. Without resolution of the EFH/EFIH Allocation Dispute (which the Parties have indicated requires the involvement of the Former Disinterested Directors and Managers, as reflected in the subpoenas that have been issued), Plan distributions will continue to remain frozen.

17. **Second**, Article 6.1 of the EFH Plan Administration Trust Agreement details the "Powers of the Trustee." This Article states that the PAB may satisfy from the EFH Plan Administration Trust's assets any ordinary course liabilities "created, incurred or assumed by the Trust," ***including reasonable professional fees and expenses***.[9] As it became clear that the EFH/EFIH Allocation Dispute would not be resolved by the EFH Effective Date, payments related to the EFH/EFIH Allocation Dispute were contemplated as an essential part of the winddown of the estates. It was therefore conceivable to all parties that litigation costs related to the EFH/EFIH Allocation Dispute would arise in the ordinary course of the PAB's duties.

18. **Third**, the EFH Plan Administration Trust Agreement grants the Trustee with "any powers reasonably incidental" to its powers that are "necessary or appropriate to fulfill the purpose of the Trust."[10] Included within these delineated objectives is the right to "make

---

[9] *Id.* at Art. VI.1 ("The Trustee shall have all of the rights, powers, and privileges expressly set forth in the Plan, the Confirmation Order, this Agreement, without any further notice to or action, order, or approval by the Bankruptcy Court . . . (j) determine and satisfy from the Trust Assets any and all taxes and ordinary course liabilities, including reasonable professional, consultant, and employee fees and expenses permitted hereby, created, incurred or assumed by the Trust, subject to and in accordance with the terms of this Agreement.").

[10] *Id.*

distributions of the Trust Assets."[11]  To accomplish its goal of making distributions expeditiously, it is appropriate for the PAB—in an effort to seek the resolution of the EFH/EFIH Allocation Dispute—to cover the Fees and Expenses. Setting aside any potential interpretation of the specific outlined powers of the PAB, this Court has determined that this section does not limit those activities that the PAB can conduct under the EFH Plan Administration Trust Agreement.[12]  Therefore, pursuant to the PAB's express charge and the broad authority vested to it under the EFH Plan Administration Trust Agreement, the PAB is authorized to distribute the Fees and Expenses.

### B. The Merger Agreement and Directors' and Officers' Insurance Programs Do Not Require Sempra to Satisfy the Fees and Expenses.[13]

19.    The Merger Agreement contains two provisions for Reorganized EFH/EFIH's indemnification of fees and expenses incurred by the Former Directors and Officers *under certain circumstances*.[14]  Section 6.8(a) of the Merger Agreement imposes indemnification obligations on Reorganized EFH/EFIH for:

> "costs and expenses (including reasonable and necessary attorneys' fees and experts' fees), and sums which [a Former Director and Officer] **becomes legally obligated to pay** solely as a result of judgments, fines, losses, claims, damages, settlements or liabilities (collectively "Costs") "arising out of any claim, action, suit, proceeding or investigation, whether civil, criminal, administrative or investigative, arising out of or related to such [Former Directors' and Officers'] service as a manger, director or officer of the Company or any of its Subsidiaries."[15]

---

[11] *Id.* at Art. VI.1(f).

[12] 6/14/18 Hr'g Tr. at 6:5-8, 11-14 ("There are also provisions that specify a series of -- I think it's 12 or more -- specific things that the trust can do, and included in that is issues with regard to claims . . . . [E]ven besides that I don't believe that that specific limitation is meant to say that the trust can only do those things. **It is in the nature of an including without limitation provision.**") (emphasis added.)

[13] Based on communications with Counsel, the PAB understands that the Former Disinterested Directors and Officers may not agree with the PAB's statements herein related to the Merger Agreement. As described above, nothing herein prejudices the rights of the Former Disinterested Directors and Officers with respect to such statements.

[14] Merger Agreement, § 6.8(a) ("Indemnification; Directors' and Officers' Insurance").

[15] *Id.* (emphasis added).

20.   The Fees and Expenses the Former Directors and Officers will incur in connection with the EFH/EFIH Allocation Dispute do not "arise out of" their service to the Debtors, nor has any party to the EFH/EFIH Allocation Dispute asserted claims against the Former Directors and Officers related to their service to the Company.  When read in context, the Costs for which Reorganized EFH/EFIH have agreed to indemnify the Former Directors and Officers relate to Costs incurred with respect to claims asserted against the Former Directors and Officers.  The only circumstances in which a Former Director and Officer would become legally obligated to pay sums as a result of "judgments, fines, losses, claims, damages, settlements, or liabilities" is one in which there has been litigation directed at the Former Directors and Officers, and that is not the case here.  Instead, the Former Directors and Officers have been called upon to assist the Parties and the Court as third-party fact witnesses to bring the EFH/EFIH Allocation Dispute to conclusion.

21.   Furthermore, section 6.8(b) of the Merger Agreement states that prior to the EFH Effective Date, EFH shall obtain and pay the premium for a directors' and officers' liability insurance program.[16]  EFH did obtain and pay for a lead policy and a "Side A" policy for director and officer coverage with AEGIS Insurance Services, Inc. (the "D&O Insurance Program"), relevant portions of which are attached hereto as **Exhibit B**.  The D&O Insurance Program does not cover the Fees and Expenses.  The D&O Insurance Program's definition of a covered "Claim" is limited to the following (emphasis added in each case):

---

[16] *Id.* at § 6.8(b)

| Definition of Covered Claim | Analysis |
|---|---|
| a civil, criminal, administrative or regulatory *investigation* of any directors or officers *commenced by* the service upon or other receipt by the director or officer of a subpoena, target letter, Wells Notice or other written notice from *an Enforcement Authority* identifying by name the director of officer as an individual against whom a civil, criminal, administrative or regulatory proceeding may be commenced.[17] | This provision is not applicable here. Enforcement Authority is defined as "any federal, state, local or foreign law enforcement or governmental authority (including the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any federal or state attorney general) or the enforcement unit of any securities exchange or similar self-regulatory body." None of the Parties who issued subpoenas qualify as Enforcement Authorities. |
| a written request or subpoena *from an Enforcement Authority or insured organization* to interview or depose a director or officer, or for the production of documents by a director or officer, *in connection with a proceeding against or investigation of any other director or officer or the insured organization*, whether or not such request or subpoena alleges a wrongful act; provided such request or subpoena shall constitute a claim under this policy only if (i) it is not part of a routine or regularly scheduled audit, inspection or general oversight or compliance activity, and (ii) the insured organization gives to the insurer written notice thereof pursuant to Condition (E) below.[18] | This provision is not applicable here. The subpoena is not from an enforcement authority (as set forth above) or EFH (the insured organization). In addition, the subpoenas have not been issued in connection with a proceeding against any of the Former Directors and Officers. |
| any request or demand by a regulatory, administrative, governmental or similar authority to interview or depose an insured.[19] | This provision is not applicable because none of the Parties who issued subpoenas are regulatory or governmental authorities. As described above, the Merger Agreement (through its limited indemnification of Former Directors and Officers) and the D&O Insurance Program (through the limitations in the definition of covered claims) likely do not provide coverage for the Fees and Expenses. |

---

[17] D&O Insurance Program, Art.VI.B(5).

[18] D&O Insurance Program, Art.VI.B(6).

[19] D&O Insurance Program, Side A, § 2(b)(4).

### C. Reimbursing the Fees and Expenses Is Appropriate Under Federal Rule 45(d) and Section 105(a) of the Bankruptcy Code.

22. Even if the EFH Plan Administration Trust Agreement did not authorize the PAB to pay the Fees and Expenses, it is appropriate to do so under Federal Rule 45(d) and section 105 of the Bankruptcy Code.

23. Because non-party subpoena recipients provide involuntary assistance to the court and the parties, it is central to Federal Rule 45 that courts protect them from "undue burden." *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.").

24. In the Third Circuit, "[s]ignificant expenses" of a third-party "***must*** be borne by the party seeking discovery." *R.J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 F. App'x 880, 883 (3d Cir. 2002) (emphasis added) (finding that district court abused its direction by summarily denying compensation to third-party subpoena recipient without considering third-party's costs and remanding "to make findings regarding [third-party's] expenses and to award any expenses required by" Rule 45). *See also Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) (citation omitted) ("[N]on-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue," and "courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs."); *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (noting "undue burden" standard requires district courts supervising discovery to be sensitive to costs imposed on third parties).

25. There are three factors to consider in deciding if a non-party's expenses are significant: "whether the nonparty actually has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party and whether the litigation

is of public importance." *Wesco Distrib., Inc. v. RES Holdings Corp.*, 2013 WL 432932, at *2 (W.D. Pa. 2013) (quoting *Linder v. Calero-Portcarrero*, 180 F.R.D. 168, 177 (D.D.C. 1998)); *see Magna Mirrors of Am., Inc. v. Pittsburgh Glass Works LLC*, 2012 WL 4904515 at *3 (W.D. Pa. 2012) (concluding that because "two of the three factors weigh in favor of [party] bearing the costs while the third is neutral," party must bear costs of third-party's compliance with subpoena).

26. Here, all three factors counsel in favor of fee-shifting. **First**, the Former Directors and Offers do not have a pecuniary interest in the outcome of the EFH/EFIH Allocation dispute. **Second**, there is no reason that the non-parties (all individuals) could more readily bear the costs than the hedge funds and institutional investors that are prosecuting the EFH/EFIH Allocation Dispute for their own economic benefit. **Third**, allocating administrative expenses between two estates (and thereby adjusting the recoveries of those hedge funds and institutional investors) is not a matter of public importance.

27. Notwithstanding the protections afforded by Federal Rule 45, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." To that end, the Bankruptcy Court has broad authority under section 105(a) to "provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004).

28. Authorizing the PAB to reimburse the Former Directors and Officers for Fees and Expenses is necessary to the effective resolution of the EFH/EFIH Allocation Dispute, and thus, the final administration of the EFH and EFIH estates. Moreover, the Parties to the EFH/EFIH Allocation Dispute (other than the PAB) are in control of the scope of subpoenas, deposition

notices, and trial testimony requested at the various milestones in the Allocation Scheduling Order —and therefore, in control of the Fees and Expenses. To the extent that these Parties are sensitive to the Former Directors' and Officers' incurrence of Fees and Expenses, litigation strategy may be tailored accordingly, or alternatively, resolution of the EFH/EFIH Allocation Dispute may finally be brokered. Furthermore, as described above, the EFH and EFIH creditors benefit from the resolution of the EFH/EFIH Allocation Dispute. It is therefore appropriate that the EFH and EFIH estates—not third-parties who no longer have a role in these chapter 11 cases—foot the bill for these services.

*[Remainder of page intentionally left blank.]*

Dated: July 6, 2018
Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:   collins@rlf.com
    defranceschi@rlf.com
    madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   edward.sassower@kirkland.com
    stephen.hessler@kirkland.com
    brian.schartz@kirkland.com
    aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   james.sprayregen@kirkland.com
    marc.kieselstein@kirkland.com
    steven.serajeddini@kirkland.com

*Co-Counsel to the EFH Plan Administrator Board*