<u>**Exhibit B**</u>

**D&O Insurance Program**



**ACE American Insurance Company**

**CODA Premier®
Directors and Officers Liability
Excess DIC Policy**

The COMPANY, the INSUREDS, and the INSURER agree as follows:

**1. INSURING CLAUSE**

(a) The INSURER shall pay on behalf of the INSUREDS all NON-INDEMNIFIABLE LOSS that the INSUREDS become legally obligated to pay by reason of any CLAIM first made against the INSUREDS during the POLICY PERIOD or, if elected, the DISCOVERY PERIOD, for any WRONGFUL ACTS that are actually or allegedly caused, committed, or attempted prior to the end of the POLICY PERIOD by the INSUREDS, but only if:

1. the insurer(s) of the UNDERLYING INSURANCE:

   i. wrongfully refuses to indemnify the INSUREDS as required under the terms of the UNDERLYING INSURANCE; or

   ii. fails to indemnify the INSUREDS within 60 days after the INSUREDS request such indemnification; or

   iii. is financially unable to indemnify the INSUREDS; or

   iv. files an action to rescind, or states in writing its intent to rescind, the UNDERLYING INSURANCE; or

   v. as a result of a liquidation or reorganization proceeding commenced by or against the COMPANY pursuant to the U.S. Bankruptcy Code, as amended, is unable or refuses to pay the INSUREDS solely because the proceeds of such UNDERLYING INSURANCE are subject to the automatic stay; or

2. according to the terms and conditions of the UNDERLYING INSURANCE, the insurer(s) of the UNDERLYING INSURANCE is not liable for such portion of the LOSS; or

3. the limit(s) of liability of the UNDERLYING INSURANCE has been exhausted by reason of LOSS paid thereunder.

(b) With respect to (a)(1) and (2) above, any coverage shall be subject to all terms, definitions, conditions, exclusions and limitations of this POLICY.

(c) With respect to (a)(3) above, and notwithstanding anything in this POLICY to the contrary, except Clause 4 (Limits Of Liability), Clause 6 (Assistance, Cooperation And Consent), Clause 13 (LOSS Provisions), Clause 15 (Notice), Clause 16 (Authority), and any endorsement to this POLICY, this POLICY is amended to follow and be subject to the terms and conditions of the Primary Policy set forth in Item VII of the Declarations.

**2. DEFINITIONS**

(a) "APPLICATION" shall mean:

1. the signed, written application for this POLICY, and for any policy issued by the

INSURER of which this POLICY is a direct or indirect renewal or replacement, including the schedules thereto; and

2. all publicly available documents filed by the COMPANY with the Securities and Exchange Commission during the 12 months preceding inception of this POLICY.

All such applications and materials are deemed attached to and incorporated into this POLICY.

(b) "CLAIM" shall mean:

1. any written demand, or any civil, criminal, arbitration, administrative, or regulatory proceeding, for monetary damages or non-monetary or injunctive relief, or any investigation, including a Wells Notice, against any INSURED for a WRONGFUL ACT, including any appeal therefrom;

2. an EXTRADITION PROCEEDING;

3. written notice to the INSURER by the INSUREDS and/or the COMPANY during the POLICY PERIOD describing circumstances that may reasonably be expected to give rise to a CLAIM described in subpart (b)(1) or (b)(2) above being made against the INSUREDS; or

4. any request or demand by a regulatory, administrative, governmental or similar authority to interview or depose an INSURED.

(c) "COMPANY" shall mean:

1. the company shown in Item I of the Declarations;

2. any company that, prior to the starting date of the POLICY PERIOD, merged into or consolidated with the company shown in Item I of the Declarations and was not the surviving entity;

3. any SUBSIDIARY of either such company;

4. if covered in accordance with subpart (a) of Clause 20 (Acquisition, Creation Or Disposition Of A Subsidiary) below, any other SUBSIDIARY;

5. any foundation, charitable trust or political action committee controlled or exclusively sponsored by one or more organizations described in (1) through (4) above; and

6. any organization described in (1) through (5) above as a debtor-in-possession under United States bankruptcy law or an equivalent status under the law of any other country.

(d) "DEFENSE COSTS" shall mean that portion of LOSS consisting of reasonable and necessary costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses incurred in the defense or investigation of a CLAIM, whether such CLAIM is ultimately settled or adjudicated, including but not limited to: (i) the cost of defending an EXTRADITION PROCEEDING; (ii) reasonable fees and expenses incurred by the INSUREDS at the INSURER'S request to assist the INSURER in investigating the CLAIM; (iii) costs assessed against the INSUREDS; and, (iv) the premium for appeal, attachment or similar bonds, but shall not include wages, salaries, fees, benefits or office expenses of INSUREDS or employees of the COMPANY.



# POLICY OF DIRECTORS AND OFFICERS LIABILITY INSURANCE EFFECTED WITH ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED HAMILTON, BERMUDA

THIS IS A "CLAIMS-FIRST-MADE" INSURANCE POLICY THAT MAY BE DIFFERENT FROM OTHER POLICIES INCLUDING OTHER CLAIMS-MADE POLICIES. PLEASE READ IT CAREFULLY.

*Words and phrases which appear in all capital letters have the special meanings set forth in Section VI., Definitions.*

In consideration of the payment of premium and in reliance upon all statements made and information furnished to the INSURER in the APPLICATION, which is hereby made a part hereof, and subject to the Declarations and all the terms hereinafter provided, the INSURER agrees as follows:

I. **INSURING AGREEMENTS**

(A) The INSURER shall pay on behalf of the DIRECTORS and OFFICERS all ULTIMATE NET LOSS for which the INSURED ORGANIZATION has not provided indemnification and which arises from a CLAIM first made against the DIRECTORS or OFFICERS during the POLICY PERIOD or during the DISCOVERY PERIOD, if purchased, for a WRONGFUL ACT which takes place before or during the POLICY PERIOD and is actually or allegedly caused, committed or attempted by the DIRECTORS or OFFICERS while acting in their respective capacities as DIRECTORS or OFFICERS.

(B) The INSURER shall pay on behalf of the INSURED ORGANIZATION all ULTIMATE NET LOSS for which the INSURED ORGANIZATION has, to the extent required or permitted by applicable law, granted indemnification to the DIRECTORS and OFFICERS and which arises from a CLAIM first made against the DIRECTORS or OFFICERS during the POLICY PERIOD or during the DISCOVERY PERIOD, if purchased, for a WRONGFUL ACT which takes place before or during the POLICY PERIOD and is actually or allegedly caused, committed or attempted by such DIRECTORS or OFFICERS while acting in their respective capacities as DIRECTORS or OFFICERS.

(C) The INSURER shall pay on behalf of the INSURED ORGANIZATION all ULTIMATE NET LOSS which arises from a SECURITIES CLAIM first made against the INSURED ORGANIZATION during the POLICY PERIOD or during the DISCOVERY PERIOD, if purchased, for a WRONGFUL ACT which takes place before or during the POLICY PERIOD.

II. **DERIVATIVE INVESTIGATION COST COVERAGE**

The INSURER shall pay all INVESTIGATIVE EXPENSE incurred by an independent committee of the board of directors or equivalent governing body of the INSURED ORGANIZATION in response to a SHAREHOLDER DERIVATIVE DEMAND, provided the SHAREHOLDER DERIVATIVE DEMAND is first made during the POLICY PERIOD or the DISCOVERY PERIOD, if purchased, and the alleged WRONGFUL ACT giving rise to the SHAREHOLDER DERIVATIVE DEMAND takes place before or during the POLICY PERIOD.

III. **LIMITS OF LIABILITY**

(A) The INSURER'S maximum liability under this POLICY for all ULTIMATE NET LOSS and INVESTIGATIVE EXPENSE, combined, shall be the aggregate Limit of Liability set forth in Item 5A of the Declarations. The aggregate Limit of Liability applies to all CLAIMS first made during the POLICY PERIOD and the DISCOVERY PERIOD, if purchased.

©1975-2012 ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED
AEGIS AND THE AEGIS LOGO ARE REGISTERED SERVICE MARKS OF ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED



(B) The INSURER'S maximum liability under this POLICY for all INVESTIGATIVE EXPENSE shall not exceed the amount set forth in Item 5B of the Declarations. Any amount paid by the INSURER for INVESTIGATIVE EXPENSE shall be part of and not in addition to the aggregate Limit of Liability stated in Item 5A of the Declarations.

(C) The aggregate Limits of Liability stated in Items 5A and 5B of the Declarations shall apply only once regardless of the number of CLAIMS or WRONGFUL ACTS.

(D) The inclusion herein of more than one DIRECTOR or OFFICER, or the application of more than one Insuring Agreement or Coverage Extension, shall not operate to increase the INSURER'S aggregate Limits of Liability as stated in Items 5A and 5B of the Declarations.

(E) If any WRONGFUL ACT by a DIRECTOR or OFFICER while serving an OUTSIDE ORGANIZATION results in a payment of ULTIMATE NET LOSS or INVESTIGATIVE EXPENSE under this POLICY and a payment of loss under any other directors or officers or general partner liability insurance policy issued by the INSURER, then the maximum amount that the INSURER shall pay under this POLICY and all such other policies, combined, for the WRONGFUL ACT and all related actual or alleged breaches, neglect, errors and omissions shall be $35,000,000. The maximum amount that the INSURER shall pay under this POLICY shall be the amount of such ULTIMATE NET LOSS that is proportionate to the aggregate Limit of Liability stated in Item 5A of the Declarations of this POLICY in relation to the total limits of liability stated under this POLICY and such other policies, combined. This paragraph creates a sublimit which further limits and does not increase the INSURER'S maximum liability under this POLICY or such other policies.

## IV. RETENTION

(A) The INSURER shall be liable to the INSURED ORGANIZATION under this POLICY only for the amount of ULTIMATE NET LOSS which is in excess of the RETENTION set forth in Item 6B of the Declarations.

(B) The INSURED ORGANIZATION agrees to indemnify and advance on behalf of the DIRECTORS and OFFICERS all ULTIMATE NET LOSS otherwise covered under this POLICY to the fullest extent required or permitted by applicable law. If an INSURED ORGANIZATION fails or refuses within sixty (60) days after a DIRECTOR'S or OFFICER'S request to indemnify or advance ULTIMATE NET LOSS or if an INSURED ORGANIZATION is financially unable to indemnify or advance ULTIMATE NET LOSS, then the INSURER will be liable to the DIRECTORS and OFFICERS under this POLICY only for the amount of ULTIMATE NET LOSS which is in excess of the RETENTION set forth in Item 6A of the Declarations. If the INSURER pays under this POLICY any ULTIMATE NET LOSS that the INSURED ORGANIZATION is required or permitted by applicable law to advance or indemnify a DIRECTOR or OFFICER, then the INSURED ORGANIZATION shall reimburse the INSURER for such amounts up to the RETENTION set forth in Item 6B of the Declarations, and such amounts shall become immediately due and payable as a direct obligation of the INSURED ORGANIZATION to the INSURER.

(C) No RETENTION shall apply to Section II., Derivative Investigation Cost Coverage, and the INSURER will pay such amounts from the first dollar subject to the other terms and conditions of this POLICY.

(D) If more than one Insuring Agreement applies to any CLAIM, then the maximum RETENTION amount applicable to such CLAIM shall be the largest RETENTION applicable to such CLAIM.

(E) Only payment of INDEMNITY or DEFENSE COSTS which, except for the amount thereof, would have been payable under this POLICY may reduce or exhaust the RETENTION.

## V. PRIORITY OF PAYMENTS

If payment is due and owing under this POLICY for ULTIMATE NET LOSS or INVESTIGATIVE EXPENSE and such ULTIMATE NET LOSS or INVESTIGATIVE EXPENSE, together with any prior payments of ULTIMATE NET LOSS and INVESTIGATIVE EXPENSE, exceeds the applicable Limits of Liability, the


INSURER shall pay such ULTIMATE NET LOSS or INVESTIGATIVE EXPENSE, subject to the remaining applicable Limit of Liability, in the following order:

(A) First, the INSURER shall pay such ULTIMATE NET LOSS covered by Insuring Agreement I.(A);

(B) Second, only if and to the extent the payment under V.(A) above does not exhaust the applicable Limit of Liability, the INSURER shall pay any other ULTIMATE NET LOSS or INVESTIGATIVE EXPENSE covered by this POLICY.

If DIRECTORS or OFFICERS incur ULTIMATE NET LOSS covered under Insuring Agreement I.(A), the INSURED ORGANIZATION, including any bankruptcy trustee, debtor-in-possession or any other successor of the INSURED ORGANIZATION, shall have no interest in or claim for any payments under this POLICY until all such ULTIMATE NET LOSS is paid in full by the INSURER.

Subject to the foregoing paragraph, the INSURER shall, upon receipt of a written request from either the chairman of the board of directors or chief executive officer of the INSURED ORGANIZATION named in Item 1 of the Declarations, delay any payment of ULTIMATE NET LOSS due and owing to an INSURED ORGANIZATION under this POLICY until such time as said chairman or chief executive officer designates, provided the INSURER'S liability with respect to any such ULTIMATE NET LOSS payment shall not be increased, and shall not include any interest, on account of such delay.

VI. **DEFINITIONS**

As used in this POLICY, the words and phrases, either in the singular or plural, which appear in all capital letters shall have the meanings set forth below:

(A) APPLICATION means, unless stated otherwise:

   (1) the Application submitted by the INSURED ORGANIZATION to the INSURER for this POLICY, including any materials submitted with, attached to or incorporated by reference into such Application and any other documentation, information, warranty or representation submitted to the INSURER in connection with underwriting this POLICY; and

   (2) all publicly available documents filed by the INSURED ORGANIZATION with the Securities and Exchange Commission during the twelve (12) months preceding the inception of this POLICY.

(B) CLAIM means:

   (1) any written demand against any INSURED for monetary, non-monetary, injunctive or other relief, including a written demand that the INSURED toll or waive a statute of limitation;

   (2) a civil or arbitration proceeding against any INSURED for monetary, non-monetary, injunctive or other relief commenced by service of a complaint or similar pleading;

   (3) a criminal proceeding against any INSURED commenced by the return of an indictment, information or similar document;

   (4) a formal administrative or regulatory proceeding against any DIRECTORS or OFFICERS commenced by the filing of a notice of charges, formal investigative order or similar document;

   (5) a civil, criminal, administrative or regulatory investigation of any DIRECTORS or OFFICERS commenced by the service upon or other receipt by the DIRECTOR or OFFICER of a subpoena, target letter, Wells Notice or other written notice from an ENFORCEMENT AUTHORITY identifying by name the DIRECTOR or OFFICER as an individual against whom a civil, criminal, administrative or regulatory proceeding may be commenced;

   (6) a written request or subpoena from an ENFORCEMENT AUTHORITY or an INSURED ORGANIZATION to interview or depose a DIRECTOR or OFFICER, or for the production of documents by a DIRECTOR or OFFICER, in connection with a proceeding against or



investigation of any other DIRECTOR or OFFICER or the INSURED ORGANIZATION, whether or not such request or subpoena alleges a WRONGFUL ACT; provided such request or subpoena shall constitute a CLAIM under this POLICY only if (i) it is not part of a routine or regularly scheduled audit, inspection or general oversight or compliance activity, and (ii) the INSURED ORGANIZATION gives to the INSURER written notice thereof pursuant to Condition (E) below; or

(7) for purposes of the coverage provided under Section II., Derivative Investigation Cost Coverage, a SHAREHOLDER DERIVATIVE DEMAND.

A NOTICE OF CIRCUMSTANCES is not a CLAIM, but a CLAIM shall be deemed to be first made at the earlier of: (a) the time at which any written demand described in (1) above is first made against the INSURED or any proceeding or investigation described in (2), (3), (4) or (5) above is commenced; (b) the time at which a SHAREHOLDER DERIVATIVE DEMAND related to the CLAIM is first made; (c) the time at which the written notice or subpoena described in (6) above is received by the DIRECTOR or OFFICER; or (d) the time at which a complete NOTICE OF CIRCUMSTANCES which describes the matters underlying the CLAIM has been given to the INSURER. The INSURER shall not be liable under this POLICY for any amount incurred in the defense, investigation or settlement of any potential CLAIM described in a NOTICE OF CIRCUMSTANCES prior to the date the CLAIM is actually made against INSUREDS. Except as provided in Section II., Derivative Investigation Cost Coverage, this POLICY does not cover any amount incurred by the INSUREDS in connection with any proceeding or investigation that is not then a CLAIM against the INSUREDS, even if such amount also benefits the defense of a covered CLAIM or if such proceeding or investigation subsequently gives rise to a covered CLAIM.

Multiple CLAIMS arising out of a single WRONGFUL ACT shall be deemed to be a single CLAIM, even if made against different INSUREDS, and shall be deemed to have been first made on the date the first of such multiple CLAIMS is first made against any of the INSUREDS, whether such date is before, during or after the POLICY PERIOD or the DISCOVERY PERIOD.

(C) DEFENSE COSTS means all reasonable and necessary fees and expenses incurred by or on behalf of the INSUREDS in the investigation, negotiation, settlement and defense of any CLAIM, including such fees and expenses and the premium or origination fee for a loan or bond incurred by DIRECTORS and OFFICERS in connection with the actual or alleged obligation by the DIRECTOR or OFFICER to repay or forfeit amounts pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002, Section 954 of the Wall Street Reform and Consumer Protection Act of 2010, or any similar law, rule or regulation. DEFENSE COSTS do not include (i) INVESTIGATIVE EXPENSE resulting from a SHAREHOLDER DERIVATIVE DEMAND, or (ii) salaries, wages, benefits and overhead expenses of the DIRECTORS, OFFICERS or employees of the INSURED ORGANIZATION.

(D) DIRECTOR and OFFICER means:

(1) any natural person who was, is now, or shall be a director, officer or trustee of the INSURED ORGANIZATION;

(2) any employee of the INSURED ORGANIZATION while acting in the capacity of a director, officer or trustee of the INSURED ORGANIZATION with the express prior authorization of a director, officer or trustee of the INSURED ORGANIZATION;

(3) any natural person who was, is now, or shall be a manager, managing member, member of the board of managers or equivalent executive of an INSURED ORGANIZATION that is a limited liability company;

(4) any employee of the INSURED ORGANIZATION while serving as the general counsel or risk manager of, or in a functionally equivalent position with, the INSURED ORGANIZATION;

(5) any natural person who was, is now, or shall be a general partner of an INSURED ORGANIZATION that is a limited partnership;