# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: July 16, 2018 at 11:00 a.m. (EDT) (Ordered) |

**SEMPRA ENERGY'S RESPONSE TO ELLIOTT PARTIES' OBJECTION TO THE MOTION OF EFH PLAN ADMINISTRATOR BOARD FOR AUTHORIZATION TO REIMBURSE THIRD-PARTY DISCOVERY FEES AND EXPENSES OF FORMER DIRECTORS, OFFICERS, AND MANAGER INCURRED IN CONNECTION WITH THE EFH/EFIH ALLOCATION DISPUTE**

_____

Sempra Energy, on behalf of itself and the Reorganized EFH/EFIH Debtors,[1] files this response (the "*Response*") to the objection (the "*Objection*") [D.I. 13282] of Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "*Elliott*") and UMB Bank, N.A. (with Elliott, the "*Elliott Parties*") to the *Motion of EFH Plan Administrator Board for Authorization to Reimburse Third-Party Discovery Fees and Expenses of Former Directors, Officers, and Manager Incurred in Connection with the EFH/EFIH Allocation Dispute* [D.I. 13262] (the "*Motion*"), and states as follows:

1. Elliott's opposition to the Motion is yet another attempt to deflect self-inflicted costs and/or losses onto third parties, including Sempra Energy. The Court should not allow that result.

---

[1] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to them in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12653] (the "*Plan*"), the Allocation Scheduling Order, or the Motion, as applicable.

2. As the Court will recall, and as stated in the Motion, all of the parties to the Plan confirmation proceedings understood and agreed that resolution of the EFH/EFIH Allocation Dispute would not delay the EFH/EFIH Debtors' emergence from chapter 11.  Indeed, delaying the EFH/EFIH Debtors' emergence from chapter 11 would have resulted in the EFH/EFIH Debtors' estates continuing to incur approximately $50 million per month in interest and other administrative expenses.  Rather than risk that significant erosion to creditor recoveries, the EFH/EFIH Allocation Dispute was agreed to be handled separate and apart from the Plan confirmation proceedings and, if not settled, after the Effective Date had occurred.

3. No matter how the Court might rule in the ongoing EFH/EFIH Allocation Dispute, the actual allocation of expenses between the former EFH/EFIH Debtors' estates is not a matter that will affect Sempra Energy or the Reorganized EFH/EFIH Debtors.  All Administrative Claims are to be paid out of the assets of the EFH Plan Administration Trust, which received the net proceeds of Sempra Energy's $9.45 billion purchase price for the Reorganized EFH/EFIH Debtors, certain other payments, and the cash on hand at the EFH/EFIH Debtors as of the Effective Date. Neither Sempra Energy nor the Reorganized EFH/EFIH Debtors have any obligation to fund additional expenses incurred by the former estates of the EFH/EFIH Debtors, including with respect to the EFH/EFIH Allocation Dispute.

4. Now, however, with the purchase price paid, the Effective Date passed, and the $50 million in monthly administrative burn cut off, Elliott remains unsatisfied and seeks to extract more value from Sempra Energy through an imprecise reading of the indemnification provisions in the *Agreement and Plan of Merger* (the "**Merger Agreement**") by and among Sempra Energy, Power Play Merger Sub I, Inc. (a subsidiary of Sempra Energy), EFH and EFIH.  The Elliott Parties contend that because the EFH/EFIH Allocation Dispute had to be extended past the Effective Date,

in part based on their own inflexibility, Reorganized EFH (now owned by Sempra Energy) is obligated to indemnify the Former Directors and Officers for any fees and expenses incurred in responding to third-party discovery directed at them by Elliott and certain other Parties to the EFH/EFIH Allocation Dispute. The Elliott Parties' assertions, however, present a mere hypothetical and, in any event, are plainly incorrect.

5. First, Sempra Energy and Reorganized EFH have not received and are not aware of any demand made upon Reorganized EFH by the Former Directors and Officers for indemnification under Section 6.8 of the Merger Agreement or otherwise. Indeed, each of the former disinterested directors of the EFH/EFIH Debtors upon whom subpoenas have been served have filed responses to the Motion stating clearly that they believe their Fees and Expenses should be paid by the EFH Plan Administrator Board (the "***PAB***") out of the EFH Plan Administration Trust.[2] Thus, although the issue of whether the PAB is authorized to pay the Fees and Expenses of the Former Directors and Officers is properly before the Court, the issue of whether Reorganized EFH is obligated to pay any such Fees and Expenses under Section 6.8 of the Merger Agreement is not ripe for adjudication by the Court.[3]

6. Second, should the Court consider the terms of the Merger Agreement in deciding the Motion, it will find that the PAB is correct: the Fees and Expenses at issue are not covered by

---

[2] *See The Former Disinterested Directors of Energy Future Holdings Corp. Statement In Support of, and Reservation of Rights With Respect to, the Motion of EFH Plan Administrator Board for Authorization to Reimburse Third-Party Discovery Fees and Expenses of Former Directors, Officers, and Manager Incurred in Connection with the EFH/EFIH Allocation Dispute*, at p. 3 [D.I. 13279]; *see also Response and Reservation of Rights With Respect to Motion of EFH Plan Administrator Board for Authorization to Reimburse Third-Party Discovery Fees and Expenses of Former Directors, Officers, and Manager Incurred in Connection with the EFH/EFIH Allocation Dispute*, at ¶ 4 [D.I. 13280].

[3] "Even if the indemnitor is aware of indemnifiable claims against an indemnitee, the indemnitor is still entitled to 'an unequivocal, certain and explicit demand to undertake the defense thereof' before a duty to indemnify attaches." *Danieli Corp. v. ArcelorMittal LaPlace, LLC*, No. 13C-03-126 JRJ, 2013 Del. Super. LEXIS 320, at *3 n.12 (quoting *Purvis v. Hartford Accident & Indem. Co.*, 179 Ariz. 254, 877 P.2d 827, 830 (Ariz. Ct. App. 1994)).

the indemnification provisions of the Merger Agreement. In that regard, the Merger Agreement provides, in relevant part:

> From and after the Effective Time for a period of six (6) years, [Reorganized EFH] agrees that it will indemnify and hold harmless, to the fullest extent permitted under applicable Law …, each present and former director, manager and officer of [EFH] and each of its Subsidiaries (together, the "Indemnified Parties") against any costs or expenses (including reasonable and necessary attorneys' fees and experts' fees), and sums *which an Indemnified Party becomes legally obligated to pay solely as a result of judgments, fines, losses, claims, damages, settlements or liabilities* (collectively, "Costs") *arising out of any claim, action, suit, proceeding or investigation, whether civil, criminal, administrative or investigative, arising out of or related to such Indemnified Parties' service as a manager, director or officer of the Company* or any of its Subsidiaries or other services performed by such persons at the request of the Company or any of its Subsidiaries at or prior to the Effective Time, whether asserted or claimed prior to, at or after the Effective Time, including the transactions contemplated by this Agreement; *provided, however*, that the Surviving Company shall not indemnify any Indemnified Party for any Costs brought about or contributed to in fact by fraudulent act by such Indemnified Party; and *provided, further*, that the Surviving Company shall not be obligated to reimburse any Indemnified Party for any Costs unless and until such Indemnified Party has exhausted the limits of recovery from any other Person obligated to indemnify and reimburse such Indemnified Party (unless the Company has agreed otherwise in writing prior to the date hereof with any such other Person, in which case this proviso shall be limited with respect to such other Person to the extent of such agreement).

Merger Agreement § 6.8(a) [D.I. 11873-1] (emphases added).

7. The plain language of Section 6.8 of the Merger Agreement controls any obligation of the Reorganized EFH/EFIH Debtors to indemnify the Former Directors and Officers for any fees or expenses incurred in litigation. That indemnification obligation only extends to costs, expenses and sums that the Former Directors and Officers become "legally obligated to pay solely as a result of judgments, fines, losses, claims, damages, settlements or liabilities" that arise "out of any claim, action, suit, proceeding or investigation" that arises out of or is related to such Former Directors' and Officers' service as a manager, director or officer of the EFH/EFIH Debtors. Here, however, the Fees and Expenses that may be incurred by the Former Directors and Officers do not relate to suits against them, but solely because they are *fact witnesses* with respect to the

EFH/EFIH Allocation Dispute. The Fees and Expenses do not arise from any judgement, fine, loss, claim, damages, settlement or liability of or against the Former Directors and Officers. In other words, there are no claims asserted against the Formers Directors and Officers that could lead to any judgment, fine, loss, claim, damages, settlement or liability as required by Section 6.8 of the Merger Agreement.

8.  Analyzing similar language in the context of D&O insurance coverage, courts have refused to find that coverage extends to claims not made *against* the directors and officers themselves. For example, in *National Bank v. St. Paul Fire & Marine Ins. Co.*, 975 P.2d 711, 712 (Ariz. Ct. App. 1999), the court interpreted an insurance policy's coverage of directors' and officers' liability where loss was defined as "any amount the Insured is obligated to pay as respects his legal liability. . . ." The court noted that under such a policy, "[a] prerequisite for coverage is the insured's -- the director's or officer's -- legal obligation to pay for the claim made against him or her." *Id.* at 585 (*quoting In re Liquidation of WMBIC Indem. Corp.*, 499 N.W.2d 257 (Wis. Ct. App. 1993)). The court found that where "no demands were made against [the insured's] directors or officers, we conclude that no claim was made against them. [The] directors and officers did not face any liability, thus [the insured] is not entitled to any coverage or reimbursement under its D & O Policy." Courts have also upheld denials of coverage related to the costs of complying with a subpoena where the costs incurred do not arise from claims against directors and officers. *See MusclePharm Corp. v. Liberty Ins. Underwriters, Inc.*, 712 F. App'x 745, 754 (10th Cir. 2017) (affirming summary judgment in favor of insurer that denied coverage of costs incurred in connection with SEC subpoenas, as the SEC "was not seeking relief" against any directors or officers, but "was only gathering information"); *Emplr's Fire Ins. Co. v. Promedica Health Sys.*,

524 F. App'x 241, 253 (6th Cir. 2013) (finding that subpoenas of insurer's employees by the FTC did not meet the elements of a "claim" covered by the policy at issue).

9.     Notably, in their Objection the Elliott Parties disregard the fact that the indemnification obligations in Section 6.8 of the Merger Agreement only extend to costs, expenses and sums that the Former Directors and Officers become legally obligated to pay solely as a result of claims against them.  The Elliott Parties argue in a footnote that the language "legally obligated to pay" modifies only "sums" and does not apply to costs and expenses, and that applying "legally obligated to pay" to costs and expenses would render the "costs or expenses" language "meaningless as such costs and expenses are necessarily incidental to a proceeding, claim, or litigation."  Objection at ¶ 12, n.6.  The Elliott Parties' tenuous interpretation of the indemnification obligations under the Merger Agreement misses the mark.  Specifically enumerating "costs or expenses" in addition to other sums for which a Former Director or Officer may be legally obligated to pay is simply prudent drafting to ensure "sums" is not later interpreted to exclude defense costs and expenses.  Thus, applying "legally obligated to pay" to costs and expenses does not render "costs or expenses" meaningless in the slightest.  Surely the Merger Agreement does not require indemnification obligations for costs and expenses that Former Directors and Officers are *not* legally obligated to pay.

10.    The Elliott Parties then go on to posit in the footnote that even if "legally obligated to pay" applies to costs and expenses, the legal obligation is satisfied by the obligations of Former Directors and Officers under Federal Rule of Civil Procedure 45 ("***Rule 45***").  Again, however, the Elliott Parties ignore critical, determinative language in Section 6.8 of the Merger Agreement.  It is not only a legal obligation to pay that is required—such legal obligation to pay must arise "solely as a result of judgments, fines, losses, claims, damages, settlements or liabilities." (Merger

Agreement, § 6.8). Responding to a third party subpoena under Rule 45 does not fit. The Elliott Parties' attempts to shoehorn the Fees and Expenses of the Formers Directors and Officers into Section 6.8 of the Merger Agreement and thereby have Reorganized EFH bear costs of litigation between the former estates of the EFH/EFIH Debtors and their creditors must be rejected.[4]

11. Simply, consideration by the Court of Section 6.8 of the Merger Agreement is premature and, in any event, is inapplicable to the EFH/EFIH Allocation Dispute, and Reorganized EFH has no indemnification obligation with respect to the Former Directors' and Officers' Fees and Expenses.[5] The Court should overrule Elliott's Objection to the Motion.

---

[4] For the same reasons stated herein, the argument of the former disinterested director of EFIH, Charles Cremens, that Section 6.8 of the Merger Agreement could apply to the Fees and Expenses should be rejected. *See Response and Reservation of Rights With Respect to Motion of EFH Plan Administrator Board for Authorization to Reimburse Third-Party Discovery Fees and Expenses of Former Directors, Officers, and Manager Incurred in Connection with the EFH/EFIH Allocation Dispute*, at ¶¶ 5-7 [D.I. 13280].

[5] Similarly, as the PAB makes clear in the Motion, the D&O Insurance Program also likely would not cover the Fees and Expenses as such Fees and Expenses do not satisfy the definitions of "Claim" thereunder. The Elliott Parties appear to concede this point as they do not mention it in the Objection.

Dated: July 14, 2018
      Wilmington, Delaware

FOX ROTHSCHILD LLP

By: */s/ Jeffrey M. Schlerf*
Jeffrey M. Schlerf (No. 3047)
Carl D. Neff (No. 4895)
919 North Market St., Suite 300
Wilmington, DE 19801
Telephone: (302) 654-7444
Facsimile: (302) 463-4971
jschlerf@foxrothschild.com
cneff@foxrothschild.com

- and -

WHITE & CASE LLP
Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
tlauria@whitecase.com
mbrown@whitecase.com

J. Christopher Shore (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
cshore@whitecase.com

*Counsel to Sempra Energy and the Reorganized EFH/EFIH Debtors*