**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 14-10979 (CSS)<br>)<br>) (Jointly Administered)<br>)<br>) Re: D.I. 13262, 13278, 13279, 13280,<br>)       13282 |

**EFH PLAN ADMINISTRATOR BOARD'S REPLY IN SUPPORT
OF THE MOTION OF THE EFH PLAN ADMINISTRATOR BOARD
FOR AUTHORIZATION TO REIMBURSE THIRD-PARTY DISCOVERY
FEES AND EXPENSES OF FORMER DIRECTORS, OFFICERS, AND MANAGERS
INCURRED IN CONNECTION WITH THE EFH/EFIH ALLOCATION DISPUTE**

The EFH Plan Administrator Board hereby files this reply (the "Reply") in further support of the *Motion of the EFH Plan Administrator Board for Authorization to Reimburse Third-Party Discovery Fees and Expenses of Former Directors, Officers, and Managers Incurred in Connection with the EFH/EFIH Allocation Dispute* [D.I. 13262] (the "Motion"), and in reply to the responses filed in connection with the Motion (the "Responses"), including the *Objection of UMB Bank, N.A., as Indenture Trustee, and Elliott to Motion of EFH Plan Administrator Board for Authorization to Reimburse Third-Party Discovery Fees and Expenses of Former Directors, Officers, and Managers Incurred in Connection with the EFH/EFIH Allocation Dispute* [D.I. 13282] (the "Objection," and the sole objecting parties thereunder, the "Elliott Creditors").[2] In support of this Reply, the EFH Plan Administrator Board respectfully

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The Responses consist of: the Objection, the *Limited Response of Ad Hoc EFH Claimants to Motion of EFH Plan Administrator Board for Authorization to Reimburse Third-Party Discovery Fees and Expenses* [D.I. (Continued…)

RLF1 19649942v.1

submits as follows:[3]

**PRELIMINARY STATEMENT**

1.      The sole Objection to the Motion should be overruled and the relief requested in the Motion should be granted.  The Motion, the Allocation Scheduling Order, and the order permitting the PAB to participate in the EFH/EFIH Allocation Dispute (the "PAB Participation Order") are all the product of the EFH Plan Administrator Board's ("EFH PAB") efforts and are all driven by the same, singular goal: **ensuring that after months of delay and failed settlement negotiations among the economic stakeholders, the EFH/EFIH Allocation Dispute is resolved without further delay and Plan distributions can finally be made**.  The Allocation Scheduling Order achieved this goal by "putting tension on the line" and establishing both a timeline to resolution (the "Schedule") and discovery protocols to provide an orderly path to resolution.  The PAB Participation Order achieved this goal by, among other things, enabling the EFH PAB to stabilize the Schedule, as the one party that will continue to have an interest in resolving the EFH/EFIH Allocation Dispute (even if the economic stakeholders sell their Claims).  The Motion seeks to achieve the same goal, as reflected by the widespread support for

---

13278] (the "Ad Hoc Group Statement"), the *Former Disinterested Directors of Energy Future Holdings Corp. Statement in Support of, and Reservation of Rights With Respect to, the Motion of EFH Plan Administrator Board for Authorization to Reimburse Third-Party Discovery Fees and Expenses of Former Directors, Officers, and Manager Incurred in Connection with the EFH/EFIH Allocation Dispute* [D.I. 13279] (the "EFH DD Statement"); and the *Response and Reservation of Rights with Respect to Motion of EFH Plan Administrator Board for Authorization to Reimburse Third-Party Discovery Fees and Expenses of Former Directors, Officers, and Manager Incurred in Connection with the EFH/EFIH Allocation Dispute*, filed by Charles H. Cremens [D.I. 13280] (the "EFIH DD Statement" and, together with the EFH DD Statement, the "Former DD Statements").

Additionally, on July 10, 2018, Elliott Associates, L.P., Elliott International, L.P., and the Liverpool Limited Partnership sent a letter to the EFH PAB in response to the Motion (the "Elliott Letter").  The Elliott Letter is attached hereto as **Exhibit A**.

[3]    Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to them in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12653], the EFH Plan Administration Trust Agreement, or the Motion, as applicable.

2

the relief requested from all economic stakeholders except one: the Elliott Creditors.

2. Now that the Parties have spoken and demanded the participation of the Former Directors and Officers in the EFH/EFIH Allocation Dispute (with the scope of such participation currently unknown), the EFH PAB simply seeks to ensure that such decision does not spur protracted satellite litigation. Those considerations led to the Motion, which reflects the EFH PAB's evaluation and balancing of various competing factors (described below), all viewed through the prism of how best to maximize value for the Trust Beneficiaries.

3. With respect to Sempra's obligations to indemnify the Former Directors and Officers under the Merger Agreement, the EFH PAB does not believe that section 6.8(a) of the Merger Agreement was intended to obligate Sempra under the present (albeit unique) circumstances where there are no Claims asserted against the Former Directors and Officers. Were that the intent, more specific language (like the type seen in other indemnification provisions, described below) would have been included in the Merger Agreement. In any event, the question of Sempra's indemnification obligations is clearly disputed and unlikely to be resolved in the short-term or without litigation.[4] There is no guarantee the EFH PAB would not be forced to participate in such litigation, and the costs it incurs in connection with such litigation would be satisfied by Trust Assets, to the detriment of Trust Beneficiaries. There is also no guarantee that such litigation, if commenced in the middle or back-end of the Schedule, would not disrupt or delay the timeline to resolution of the EFH/EFIH Allocation Dispute.

4. On the other hand, and as detailed below, the EFH PAB believes the EFH Plan Administration Trust Agreement (and applicable law) allow for reimbursement of the Fees and

---

[4] Upon information and belief, the EFH PAB understands that Sempra is filing a response contemporaneously with this Reply, reflecting its position that the Merger Agreement does not require Sempra to indemnify the Former Directors and Officers in connection with the EFH/EFIH Allocation Dispute.

Expenses from the Trust. This interpretation of the EFH Plan Administration Trust Agreement comports with Federal Rule of Civil Procedure 45, which contemplates shifting the burden to the parties seeking discovery. Furthermore, as set forth in the Former DD Statements, the Former Disinterested Directors are prepared to take action to seek compensation for their Fees and Expenses, whether pursuant to the Motion, litigation with Sempra, or other means. Moreover, as set forth in the Ad Hoc Group Statement and the Former DD Statements, the Former Disinterested Directors have indicated their willingness to assign whatever Claims they may have against Sempra under the Merger Agreement to the EFH PAB, if any (and the Ad Hoc Group would support such assignment).

5. These various competing factors make clear that litigation as to satisfaction of the Fees and Expenses is inevitable, whether it is litigation between (a) the Former Directors and Officers, on the one hand, and the EFH PAB on the other hand; (b) the Former Directors and Officers, on the one hand and Sempra on the other hand, with potentially, the EFH PAB involved as a third party; or (c) as is now the case, the EFH PAB, the Former Directors and Officers, and Sempra on the one hand, and the Elliott Creditors on the other hand. And, in any litigation involving the participation of the EFH PAB, the EFH PAB's costs and expenses would be satisfied from the Trust Assets. EFH Plan Administration Trust Agreement, ¶ 4.1 (stating that the "Trustee shall expend Trust Assets (a) to pay reasonable administrative expenses of the Trust that are incurred (including. . .reasonable professional fees and expenses in connection with the administration of the Trust Assets"). As a result, given that litigation is inevitable, it is critical to mitigate the detrimental effect of such litigation on (a) the Schedule and (b) the Trust Assets.

6. The Motion achieves these goals. *First*, by filing the Motion as soon as it become clear that the Parties would seek the participation of the Former Directors and Officers, the EFH

PAB seeks to avoid disruptive motions practice later in the Schedule that could delay the Schedule.  ***Second***, by not seeking any relief that waives any Claims any Former Director or Officer may bring directly or indirectly against Sempra under the Merger Agreement (if any), the Motion preserves the rights of all parties, defers otherwise potentially protracted litigation issues to another proceeding, and ensures that such litigation occurs outside the EFH/EFIH Allocation Dispute and the Allocation Scheduling Order.  ***Third***, by filing the Motion (as opposed to commencing an adversary proceeding against Sempra or awaiting the Former Disinterested Directors' motion to compel satisfaction of the Fees and Expenses from the Trust), the EFH PAB minimized the use of Trust Assets that would otherwise be absorbed in responding to adversarial actions.  ***Fourth***, for the reasons discussed herein and in the Motion, the Motion's relief is consistent with the EFH Plan Administration Trust Agreement, applicable trust law, and Rule 45. Tellingly, based on the filings to date, all but one group of Trust Beneficiaries agree with the EFH PAB's approach.

7. For the reasons stated herein and in the Motion, the EFH PAB respectfully requests that the Court overrule the sole Objection to the Motion and grant the relief requested in the Motion.

## ARGUMENT

**I. THE ELLIOTT CREDITORS' INTERPRETATION OF THE EFH PLAN ADMINISTRATOR TRUST AGREEMENT IS INCORRECT.**

    **A. Section 4.1 of the EFH Plan Administration Trust Agreement Gives the EFH PAB Discretion to Satisfy the Fees and Expenses Using Trust Assets.**

8. The Elliott Creditors argue that the EFH PAB has no discretion under the EFH Plan Administration Trust Agreement to reimburse the Fees and Expenses.  In support of this

5

RLF1 19649942v.1

argument, they state that "[n]othing in Section 4.1 of the EFH Plan Administration Trust Agreement **requires** the EFH PAB to pay fees for third-party witnesses."[5] The issue, of course, is not whether the EFH PAB is **required** to make distributions, and the EFH PAB seeks no such ruling. Instead, the EFH PAB seeks this Court's authorization of the EFH PAB's discretionary determination that the Fees and Expenses should be reimbursed from the EFH Plan Administration Trust.

9. The Elliott Creditors then parse through section 4.1 of the EFH Plan Administration Trust Agreement, which is entitled "Payment of Claims, Expenses, and Liabilities.":

> **Payment of Claims, Expenses, and Liabilities**. The Trustee shall expend Trust Assets:
>
> (a) to pay reasonable administrative expenses of the Trust that are incurred (including any taxes imposed on the Trust or reasonable professional, consultant, and employee fees and expenses in connection with the administration of the Trust Assets and preservation of books and records as provided in Section 3.2 hereof) subject to and in accordance with the terms of this Agreement;
>
> (b) to satisfy other obligations or other liabilities incurred or assumed by the Trust (or to which the Trust Assets is otherwise subject) in accordance with the Plan, the Confirmation Order, or this Agreement (it being understood that the Trust has not assumed any obligations or liabilities of the EFH/EFIH Debtors), including (i) the costs of objecting to and reconciling Disputed Claims or Interests and settling or compromising any Disputed Claims or Interests against the EFH/EFIH Debtors, and (ii) any other fees and costs incurred in connection with the protection, preservation, liquidation, and distribution of the Trust Assets; and
>
> (c) to satisfy any other obligations of the Trust expressly set forth in the Confirmation Order or the Plan.

EFH Plan Administration Trust Agreement, § 4.1.

10. *First*, the Elliott Creditors state that section 4.1(a) of the EFH Plan Administrator

---

[5] Objection, ¶ 1.

Trust Agreement allows only for expenses or liabilities "of the Trust" and therefore any expenses of third-parties such as the Former Directors and Officers are not reimbursable under section 4.1(a).[6] This argument conflates expenses "of the Trust" and expenses "of the Trustee"—indeed, the EFH Plan Administration Trust Agreement contemplates that the Trust may incur expenses and liabilities, even if such expenses and liabilities are not directly incurred by the Trustee. Specifically, section 4.1(a) expressly includes authorization for the payment of "reasonable professional, consultant, and employee fees and expenses in connection with the administration of the Trust Assets" but does not state that such fees and expenses must have been directly incurred by the Trustee.[7] The Elliott Creditors' requested interpretation leads to the illogical conclusion that although the payment of third-parties is contemplated in section 4.1(a), these payments are not expenses of the Trust.

11. **Second**, the Elliott Creditors make equally formalistic arguments regarding the provisions in section 4.1(b) and (c) of the EFH Plan Administration Trust Agreement. Here, the Elliott Creditors focus on the words "incurred or assumed by the Trust" to conclude that the Fees and Expenses cannot be incurred or assumed by the Trust. To support this conclusion, the Elliott Creditors rely on the circular presumption that the Fees and Expenses are not liabilities incurred or assumed by the Trust. By seeking to pay the Fees and Expenses, and with the understanding that timely resolution of the EFH/EFIH Allocation Dispute is critical to unlocking half a billion in Plan distributions, the EFH PAB is electing to exercise its discretion to incur these obligations.

12. Additionally, section 4.1(b)(ii) provides the EFH PAB with authority to incur

---

[6] Objection, ¶ 1.

[7] Trust Agreement, § 4.1(a) ("The Trustee shall expend Trust Assets: (a) to pay reasonable administrative expenses of the Trust that are incurred (including any taxes imposed on the Trust or reasonable **professional, consultant, and employee fees and expenses** in connection with the administration of the Trust Assets . . .") (emphasis added).

7

RLF1 19649942v.1

such obligations "in connection with the protection, preservation, liquidation, and distribution of the Trust Assets."[8] The Objection incorrectly states that "the PAB does not argue, nor could it, that absent its assumption of these Fees and Expenses, the Trust assets would not be properly protected, preserved, liquidated or distributed."[9] As noted in the Motion, the payment of the Fees and Expenses ensures the Schedule is not disrupted and that the four-month delay in Plan distributions is not further exacerbated by distracting satellite litigation. Such delays would directly fail to preserve the Trust Assets and prevent the EFH PAB from making distributions of the Trust Assets—two of the EFH PAB's primary charges.[10]

    **B.    Additionally, Section 6.1 of the EFH Plan Administration Trust Agreement Gives the EFH PAB Discretion to Reimburse the Fees and Expenses**.

13.    In addition to section 4.1, section 6.1 of the EFH Plan Administration Trust Agreement authorizes the EFH PAB reimburse the Fees and Expenses. Section 6.1 states as follows:

> **Powers of the Trustee**. The Trustee shall have all of the rights, powers, and privileges expressly set forth in the Plan, the Confirmation Order, this Agreement, and as otherwise provided by applicable law. Subject to the other provisions herein, the Trustee shall have the power to undertake the following actions **and any powers reasonably incidental thereto which the Trustee in its reasonable discretion deems necessary or appropriate to fulfill the purpose of the Trust**, unless otherwise specifically limited or restricted by this Agreement, the Plan, or the Confirmation Order, and, except as otherwise provided in the Confirmation Order, without any further notice to or action, order, or approval by the Bankruptcy Court:
>
> . . .
>
> (c) execute any documents and take any other actions necessary or incidental to

---

[8] Trust Agreement, § 4.1.

[9] Objection, ¶ 3.

[10] Motion, ¶ 16 ("Without resolution of the EFH/EFIH Allocation Dispute (which the Parties have indicated requires the involvement of the Former Disinterested Directors and Managers, as reflected in the subpoenas that have been issued), Plan distributions will continue to remain frozen.").

8

RLF1 19649942v.1

> the exercise of the Trustee's powers granted herein;
>
> . . .
>
> (k) subject to and in accordance with the terms of this Agreement, retain and pay professionals, consultants, employees, contractors, or other agents, including any and all estate professionals for services performed after the EFH Effective Date and including the Trustee Professionals, from the Trust Assets to carry out its duties and obligations hereunder in accordance with the terms hereof.

EFH Plan Administration Trust Agreement, ¶ 6.1 (emphasis added).

14. Here, the Elliott Creditors primarily argue that the EFH PAB's reading of section 6.1—and its conclusion that the EFH PAB may reimburse the Fees and Expenses—conflicts with the Trust's purpose of making distributions to Beneficiaries, specifically by "paying Fees and Expenses that are not necessary, and thus not appropriate, to pay."[11]  Here lies the crux of the dispute.  By arguing that the Fees and Expenses are not necessary to resolving the EFH/EFIH Allocation Dispute, the Elliott Creditors ignore three unavoidable truths: (a) under all circumstances, there will likely be litigation as to the reimbursement of Fees and Expenses; (b) under most circumstances, the EFH PAB will likely be a party to such litigation (and its own fees and expenses will be reimbursed by the Trust Assets); and (c) as a result, even if the Court concludes that paying the Fees and Expenses may not be necessary to resolve the EFH/EFIH Allocation Dispute, payment of Fees and Expenses **is** necessary to avoid disruption to the Schedule and minimize depletion of the Trust Assets.  In other words, payment of the Fees and Expenses is "necessary and appropriate to fulfill the purpose of the Trust" because such payment avoids disruption to the Schedule and, compared to the potential costs of satellite litigation, likely to generate the lowest amount of costs to be applied against the Trust Assets.

---

[11] Objection, ¶ 6.

II. **THE MERGER AGREEMENT AND D&O INSURANCE PROGRAM DO NOT COVER THE FEES AND EXPENSES.**[12]

   A. **The Elliott Creditors Cannot Force the Square Peg of Third Party Discovery into the EFH/EFIH Allocation Dispute into the Round Hole of the Indemnification Obligations of the Merger Agreement.**

   15.   Section 6.8(a) of the Merger Agreement imposes indemnification obligations on Reorganized EFH/EFIH for the following:

   > [C]osts and expenses (including reasonable and necessary attorneys' fees and experts' fees), and sums which [a Former Director and Officer] becomes legally obligated to pay solely as a result of judgments, fines, losses, claims, damages, settlements or liabilities (collectively "Costs") arising out of any claim, action, suit, proceeding or investigation, whether civil, criminal, administrative or investigative, arising out of or related to such [Former Directors' and Officers'] service as a manger, director or officer of the Company or any of its Subsidiaries.

Merger Agreement, § 6.8(a).

   16.   The Elliott Creditors argue that section 6.8(a) of the Merger Agreement requires Sempra to indemnify the Former Directors and Officers under the current circumstances because Sempra's "indemnification obligation extends to any claims or proceedings 'arising out of or related to' the Former Director's or Officer's service to the EFH/EFIH Debtors, and therefore extends to the EFH/EFIH Allocation Dispute."[13]  This argument misses the point.  **None of the Claims subject to the EFH/EFIH Allocation Dispute relate to the Former Directors' and Officers' service, and the underlying proceedings are informed by, but are not related to, the Former Directors' Officers' service**.  In furtherance of this argument, the Elliott Creditors state that "in many instances. . .the applicable discovery relates to, among other things, decisions

---

[12]   To the extent that any of the Responses objected to or reserved rights with regards to any of the relief requested in the Motion, the EFH PAB's arguments herein shall apply to all of the Responses (including, for the avoidance of doubt, the Objection).

[13]   Objection, ¶ 10 (emphasis added).

made and analyses performed or reviewed by the Former Directors and Officers."[14]  The fact that the Elliott Creditors have sought (and likely intend to continue to seek) information that is likely protected by attorney-client privilege or otherwise covered by FRE 408 privilege (and therefore an objectionable target of discovery) does not support the contention that the EFH/EFIH Allocation Dispute relates to the Former Directors' and Officers' service.

17.    In their preliminary statement, the Elliott Creditors bluntly state that the "Former Directors and Officers are the subject of discovery. . .because of their own failure to resolve critical allocation disputes prior to the EFH Effective Date." [15]   The EFH/EFIH Allocation Dispute is not the proper forum for the Elliott Creditors to air their grievances against the Former Directors and Officers.  More importantly, the fact that the Former Directors and Officers are the subject of **discovery** because of the information they can provide in their capacity as Former Directors and Officers does not change the fact that there are still no "claims, action, suit, proceeding or investigations" against the Former Directors and Officers.

### B.    The Merger Agreement Would Have Included Broader Language if it was Intended to Cover the Fees and Expenses.[16]

18.    More specifically, if the intent of the Merger Agreement was to cover the Former Directors' and Officers' general **involvement** in any proceeding (including as a third party), such coverage could have been delineated.  It was not.  At least one leading treatise on fiduciary duty law specifically recommends the following indemnification language for corporations seeking to

---

[14]   *Id.*

[15]   Objection, ¶ Preliminary Statement.

[16]   The Objection asserts that the EFH PAB's arguments with regards to the D&O Insurance Program are irrelevant.  Objection, at 9 n.5.  This is not so.  Due to the fact that the D&O Insurance Program does not cover the Fees and Expenses, any finding by the Court that Sempra is due to reimburse these costs under the Merger Agreement will likely trigger subsequent disputes regarding the D&O Insurance Program's coverage.  The Court should consider this factor—and its influence on parties' ability to adhere to the Allocation Scheduling Order—in granting the relief requested in the Motion.

broadly indemnify directors and officers:

> **Right to Indemnification**.  The corporation shall indemnify and hold harmless, to the fullest extent permitted by applicable law . . . any person [] who was or is made or is threatened to be made a party or is **otherwise involved in** any action, suit or proceeding, whether civil, criminal, administrative or investigative [] by reason of the fact that he or she . . . **is or was** a director or officer of the corporation.

Suzanne L. Weakley & Jean Magistrale, UNDERSTANDING FIDUCIARY DUTIES IN BUSINESS §9.44.3 (2017) (emphasis added) (describing this specific indemnification provision as a "more extensive" indemnification option for corporations seeking to indemnify directors and officers).

19.    A simple Internet search demonstrates that companies routinely employ this broad "involvement" language to ensure indemnified parties are covered in proceedings where there are no claims asserted against directors and officers.

- **Charter Communications Inc.**: "Each person who was or is made a party or is threatened to be made a party **or is otherwise involved** in any action, suit or proceeding . . . by reason of the fact that he or she **is or was** a director or officer of the Corporation."[17]

- **Safeway Inc.**: "The Corporation shall indemnify and hold harmless, to the fullest extent permitted by applicable law . . . any person [] who was or is made or is threatened to be made a party **or is otherwise involved** in any action, suit, or proceeding, whether civil, criminal, administrative or investigative []. . . by reason of the fact that such person . . . **is or was** a director or officer of the Corporation."[18]

- **Molson Coors Brewing Company**: "The Corporation shall indemnify and hold harmless, to the fullest extent permitted by applicable law . . . any person [] who was or is made or is threatened to be made a party **or is otherwise involved** in any action, suit, or proceeding, whether civil, criminal, administrative or investigative []. . . by reason of the fact that he or she . . . **is or was** a director or officer of the Corporation."[19]

20.    At least one court in the Third Circuit has analyzed the application of such language.[20]  In *Circuport, Inc. v. Dlesk*, the District Court of New Jersey analyzed the rights of a former CEO to receive reimbursement of legal expenses in litigation brought against him by his

---

[17]    Charter Communications Inc. 8K (May 20, 2016).

[18]    Safeway Inc. S-4 (May 19, 2017).

[19]    Third Amended and Restated Bylaws, Molson Coors Brewing Company (May 14, 2009).

[20]    *Circuport*, 2012 WL 1161559, at *2.

12

former company. The language at issue broadly covered:

> [A]ny person [] who was or is made or is threatened to be made a party **or is otherwise involved in any action**, suit or proceeding, whether civil, criminal, administrative or investigative [], by reason of the fact that such person, or a person for whom such person is the legal representative, **is or was** a director or officer of the Corporation

Circuport, Inc. v. Dlesk, No. 1100369, 2012 WL 1161559, at *2 (D.N.J. Apr. 9, 2012) (emphasis added).

21. The *Circuport* court determined that this broad language in the company's Amended and Restated Certificate of Incorporation "creates an obligation to indemnify any person who is made a party to a litigation **by reason of the fact** that such person 'is or was a director or officer of the Corporation'" and concluded that the corporate estate was thereby obligated to indemnify the former CEO.[21]

22. Here, the Merger Agreement's bargained-for provisions are limited to claims asserted against the Former Directors and Officers. If the Merger Agreement included the "otherwise involved in" language from *Circuport* or any of the other examples listed above, the question of whether the Fees and Expenses may be covered would be less contested (and therefore generate less costly satellite litigation fees). Unfortunately for the Elliott Creditors, however, section 6.8(a) of the Merger Agreement does not contain the broad indemnification language cited above.[22]

### C. The Objections' Requested Relief is Contrary to Principles of Directors' and Officers' Liability Programs.

23. Directors and officers insurance programs are designed to cover **claims against**

---

[21] *Id.* (emphasis added)

[22] Prior to filing the Motion, and notwithstanding its interpretation of section 6.8(a) of the Merger Agreement, the EFH PAB's counsel communicated with counsel to Sempra regarding Sempra's indemnification liability for the Fees and Expenses under the Merger Agreement. Upon information and belief, the EFH PAB believes the response Sempra will be presenting contemporaneously herewith will reflect Sempra's belief that the Merger Agreement does not cover the Fees and Expenses.

directors and officers. Directors and Officers Liability Insurance Policies, Practical Law Practice Note 2-504-6515D ("D&O policies are typically claims-made policies, which generally provide coverage only when a claim, as defined by the policy, **is made against the policyholder** during the policy period (or any extended reporting period if this coverage is purchased")) (emphasis added).

24. Moreover, by nature, indemnification provisions such as the one in the Merger Agreement obligate coverage only in a certain set of situations. *See Continental Oil Co. v. Bonanza Corp.*, 677 F.2d 455 (5th Cir. 1982) ("In a liability contract, the insurer agrees to cover liability for damages. If the insured is liable, the insurance company must pay the damages. In an indemnity contract, by contrast, the insurer agrees to reimburse expenses to the insured **that the insurer is liable to pay** and has paid.") (emphasis added). Here, those circumstances are delineated out in the Merger Agreement, as described above.[23] To impose liability to Sempra under the extremely unusual facts of the EFH/EFIH Allocation Dispute—an evidentiary dispute over the allocation of postpetition Claims, none of which are Claims against the Former Directors and Officers—would make it hard to conceive any scenario where the Fees and Expenses were not covered under the Merger Agreement's indemnification provision. Such a result would inappropriately turn the Merger Agreement's indemnification provision into a catch-all general liability provision. *See Okada v. MGIC Indem. Corp.*, 823 F.2d 276, 280 (9th Cir. 1986) (determining that relevant policy was not an indemnity policy, and therefore concluding that directors' costs for defense of legal actions were covered under insurance

---

[23] Merger Agreement, § 6.8(a) (imposing indemnification obligations for "costs and expenses . . . and sums which [a Former Director and Officer] becomes legally obligated to pay solely as a result of judgments, fines, losses, claims, damages, settlement or liabilities . . . arising out of any claim, action, suit, proceeding or investigation, whether civil criminal administrative or investigative, arising out of or related to such [Former Directors' and Officers'] service as a manger, director or officer of the Company or any of its Subsidiaries").

directors and officers. Directors and Officers Liability Insurance Policies, Practical Law Practice Note 2-504-6515D ("D&O policies are typically claims-made policies, which generally provide coverage only when a claim, as defined by the policy, **is made against the policyholder** during the policy period (or any extended reporting period if this coverage is purchased")) (emphasis added).

24. Moreover, by nature, indemnification provisions such as the one in the Merger Agreement obligate coverage only in a certain set of situations. *See Continental Oil Co. v. Bonanza Corp.*, 677 F.2d 455 (5th Cir. 1982) ("In a liability contract, the insurer agrees to cover liability for damages. If the insured is liable, the insurance company must pay the damages. In an indemnity contract, by contrast, the insurer agrees to reimburse expenses to the insured **that the insurer is liable to pay** and has paid.") (emphasis added). Here, those circumstances are delineated out in the Merger Agreement, as described above.[23] To impose liability to Sempra under the extremely unusual facts of the EFH/EFIH Allocation Dispute—an evidentiary dispute over the allocation of postpetition Claims, none of which are Claims against the Former Directors and Officers—would make it hard to conceive any scenario where the Fees and Expenses were not covered under the Merger Agreement's indemnification provision. Such a result would inappropriately turn the Merger Agreement's indemnification provision into a catch-all general liability provision. *See Okada v. MGIC Indem. Corp.*, 823 F.2d 276, 280 (9th Cir. 1986) (determining that relevant policy was not an indemnity policy, and therefore concluding that directors' costs for defense of legal actions were covered under insurance

---

[23] Merger Agreement, § 6.8(a) (imposing indemnification obligations for "costs and expenses . . . and sums which [a Former Director and Officer] becomes legally obligated to pay solely as a result of judgments, fines, losses, claims, damages, settlement or liabilities . . . arising out of any claim, action, suit, proceeding or investigation, whether civil criminal administrative or investigative, arising out of or related to such [Former Directors' and Officers'] service as a manger, director or officer of the Company or any of its Subsidiaries").

policy).

### III.  REIMBURSEMENT OF FEES AND EXPENSES IS APPROPRIATE UNDER FEDERAL RULE 45(d).

25. Resting on technical ceremony and side-stepping applicable Third Circuit law, the Elliott Creditors protest the role that Rule 45(d) has to play here. This Court should reject those arguments, lest the Elliott Creditors misuse their expedited schedule to prejudice the rights of third parties from whom the Elliott Creditors seek discovery to further their interests.

26. Rule 45(d), of course, was not designed for an expedited litigation schedule like this—with responses and objections due one week from service and completed productions two weeks later. While there are good reasons for the **parties** to commit to such a schedule, Rule 45 requires that reasonable accommodations be made for **third parties**. Indeed, that is the parties' affirmative obligation: "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

27. While the Elliott Creditors argue that a motion to compel or a motion to quash is not yet pending, the dispute is undeniably ripe and it is far from clear that the Elliott Creditors actually desire the alternatives they advocate. Yes, the Elliott Creditors could wait for the Former Disinterested Directors to serve formal responses—the Elliott Creditors have extended that deadline to July 18—and then move to compel. But it is unlikely that any motion to compel would be resolved before the August 10 deposition deadline (saying nothing of the similar process that would be necessary for the deposition subpoenas that the Elliott Creditors are likely to serve on Monday). Alternatively, the Elliott Creditors could wait for the Former Disinterested Directors to move to quash the subpoenas. But that, too, would not happen on a timeline

acceptable to the Elliott Creditors, nor would it be cost-effective for anyone.[24]  Indeed, the Former Disinterested Directors did not retain counsel until recently.  All of that explains why the EFH PAB pushed the cost issue forward and filed the Motion—again, consistent with its aim of providing clarity **now**, driving the dispute toward a definitive conclusion, and avoiding protracted litigation **later** that could jeopardize the early September trial dates.

28.    By relying on technical arguments, the Elliott Creditors ignore the applicable test under Third Circuit law.  The analysis is straightforward:  if compliance would result in a "significant" expense, that expense "**must** be borne by the party seeking discovery." *See R.J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 F. App'x 880, 883 (3d Cir. 2002) (emphasis added).[25]

29.    The Elliott Creditors have not addressed the three factors used by courts in this Circuit to determine if the non-party's expenses are significant:

- whether the nonparty actually has an interest in the outcome of the case (the Former Disinterested Directors do not),

---

[24]  For the same reason, this Court should reject the Elliott Creditors' argument that the Former Directors need to make an evidentiary record of the costs of compliance.

[25]  Both Third Circuit cases cited by the Elliott Creditors are irrelevant.  The *Race Tires* case was about the shifting of discovery costs between **parties**.  That case had nothing to do with a third-party subpoena, nor does the opinion even mention Rule 45 or "subpoena."  *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012) (holding that costs of party's electronic discovery vendor were recoverable under statute governing taxation of costs).  The Elliott Creditors fare no better with *E.E.O.C. v. Kronos Inc.*, 694 F.3d 351 (3d Cir. 2012), *as amended* (Nov. 15, 2012) (remanding for consideration of how to allocate costs of compliance).  That case concerned an **administrative** subpoena issued by the Equal Employment Opportunity Commission, and the Third Circuit expressly noted that "Rule 45 does not apply to administrative subpoenas," although its principles may be instructive.  *Id.* at 371.

The only District of Delaware case cited by the Elliott Creditors counsels in favor of cost-shifting.  *See Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 265 (D. Del. 1992) (relying on the mandatory obligation to "protect" a non-party under the "new Rule 45" and concluding that "the non-party bank is entitled to reimbursement of all reasonable charges incurred in both producing and copying these documents") (emphasis omitted).

RLF1 19649942v.1

- whether the nonparty can more readily bear the costs than the subpoena issuers (compared to Elliott and the Trustee, the Former Disinterested Directors, who are individuals, cannot), and

- whether the litigation is of public importance (adjusting the recoveries between hedge funds and institutional investors is not).

*See Magna Mirrors of Am., Inc. v. Pittsburgh Glass Works LLC*. 2012 WL 4904515 at *3 (W.D. Pa. 2012) (concluding that because "two of the three factors weigh in favor of [party] bearing the costs while the third is neutral," party must bear costs of third-party's compliance with subpoena).

30. Although the Elliott Creditors insist that the Former Disinterested Directors make an evidentiary presentation of the costs of their compliance, no one credibly suggests that (a) the Former Disinterested Directors should respond without the aid of counsel or (b) that the fees of the attorneys best positioned to represent them—Jenner & Block, Proskauer Rose LLP, Stevens & Lee, PC, and Bielli & Klauder LLC—would be insignificant. *See, e.g., Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013) ("[W]e have no trouble concluding that $20,000 is 'significant.'").[26]

## CONCLUSION

31. For the reasons stated herein, the EFH Plan Administrator Board respectfully requests that the Court overrule the Objection and enter the proposed Order as set forth in **Exhibit A** to the Motion.

---

[26] Instead of addressing the relevant test, the Elliott Creditors rely on cases that purportedly suggest cost-shifting may be inappropriate where the third-party "played an important role in the underlying transactions to which the discovery relates." *See* Objection at 14. That argument fails on its face because the Former Directors played no role in the allocation of the four claims at issue: the relevant professionals of the Debtors and Committee allocated their own fees, and the NextEra Termination Fee and Elliott Substantial Contribution Claim have not been allocated. More importantly, the Former Disinterested Directors have no pecuniary interest in the outcome of the EFH/EFIH Allocation Dispute whatsoever. *Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*, No. 2015 WL 10767718, at *1 (S.D.N.Y. Oct. 6, 2015) ("Payment by a party issuing a subpoena of the reasonable production costs incurred by a non-party is warranted where the non-party has no stake in the litigation.").

Dated: July 14, 2018
    Wilmington, Delaware

*/s/ Jason M. Madron*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  collins@rlf.com
  defranceschi@rlf.com
  madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  edward.sassower@kirkland.com
  stephen.hessler@kirkland.com
  brian.schartz@kirkland.com
  aparna.yenamandra@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:  james.sprayregen@kirkland.com
  marc.kieselstein@kirkland.com
  chad.husnick@kirkland.com
  steven.serajeddini@kirkland.com

*Co-Counsel to the EFH Plan Administrator Board*