Page 1

1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3

4

5   In re:

                                    Chapter 11

6   ENERGY FUTURE HOLDINGS

    CORP., et al.,                  Case No. 14-10979(CSS)

7

            Debtors.               (Jointly Administered)

8   _____

9

10

11

12

13                          United States Bankruptcy Court

14                          824 North Market Street

15                          Wilmington, Delaware 19801

16

17                          August 6, 2018

18                          11:06 AM - 11:47 AM

19

20

21   B E F O R E :

22   HON CHRISTOPHER S. SONTCEHI

23   U.S. BANKRUPTCY JUDGE

24

25   ECR OPERATOR:  LESLIE MURIN

Page 2

1    HEARING re Joint Motion of UMB Bank, N.A., as Indenture

2    Trustee, and Elliott to Fix Appropriate Allocation of

3    Certain Reserves and Expenses as Between the EFH and EFIH

4    Debtors [D.I. 13102; filed May 13, 2018]

5

6    HEARING re Letter to the Honorable Christopher S. Sontchi

7    from Gregg M. Galardi Regarding Discovery Dispute [D.I.

8    13329; filed July 31, 2018]

9

10   HEARING re Letter to the Honorable Christopher S. Sontchi

11   from Gregg M. Galardi Regarding Discovery Dispute [D.I.

12   13334; filed August 1, 2018]

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dawn South

1   A P P E A R A N C E S :

2   PROSKAUER ROSE LLP

3        Attorneys for the Debtors

4

5   BY:  MICHAEL FINESTEIN, ESQ. (TELEPHONIC)

6        MARK K. THOMAS, ESQ. (TELEPHONIC)

7

8   KIRKLAND & ELLIS

9        Attorneys for the EFH Plan Administrator Board

10

11  BY:  MARK MCKANE, ESQ. (TELEPHONIC)

12       APARNA YENAMANDRA, ESQ. (TELEPHONIC)

13       MARC KIESELSTEIN, ESQ. (TELEPHONIC)

14

15  RICHARDS, LAYTON & FINGER

16       Attorney for the EFH Plan Administrator Board

17

18  BY:  DANIEL J. DEFRANCESCHI, ESQ. (TELEPHONIC)

19

20  SULLIVAN & CROMWELL

21       Attorney for Official Committee of Unsecured

22       Creditors

23

24  BY:  CHRISTIAN P. JENSEN, ESQ. (TELEPHONIC)

25

1   NIXON PEABODY

2        Attorney for American Stock Transfer

3

4   BY:  RICHARD PEDONE, ESQ. (TELEPHONIC)

5

6   CROSS & SIMON, LLP

7        Attorney for American Stock Transfer and Trust

8        Company LLC

9

10  BY:  KEVIN MANN, ESQ. (TELEPHONIC)

11

12  HOGAN MCDANIEL

13       Attorney for Ad Hoc ESH Claimants

14

15  BY:  DANIEL KERRICK, ESQ. (TELEPHONIC)

16

17  ROPES & GRAY

18       Attorneys for Elliott Management Corporation

19

20  BY:  GREGG M. GALARDI, ESQ. (TELEPHONIC)

21       SAM N. ASHURAEY, ESQ. (TELEPHONIC)

22

23

24

25

```
 1  BAYARD
 2        Attorney for Elliott Funds L.P., et al.
 3
 4  BY:  ERIN FAY, ESQ. (TELEPHONIC)
 5
 6  O'MELVENY & MYERS, LLP
 7        Interested Party
 8
 9  BY:  DANIEL S. SHAMAH (TELEPHONIC)
10
11  REORG RESEARCH, INC.
12        Interested Party
13
14  BY:  ANGELO THALASSINOS, (TELEPHONIC)
15
16  FOX ROTHSCHILD LLP
17        Attorney for Sempra Energy
18
19  BY:  MARGARET M. MANNING, ESQ. (TELEPHONIC)
20
21
22
23
24
25
```

```
1                    P R O C E E D I N G S
2              THE OPERATOR:  (Indiscernible) are on line.
3              THE CLERK:  Thank you.  I'm ready, Judge, whenever
4     you are.
5              THE COURT:  Okay.  Good morning everybody, this is
6     Judge Sontchi.
7              We're here in EFH for a further pretrial
8     conference as well as two discovery disputes that have been
9     raised by letter and responses that were received on Friday.
10    Thank you very much for those.  And I have read -- I have
11    read all the documents.  I am participating by phone as well
12    (audio breaks out) so excuse me if (audio breaks out).
13             THE CLERK:  We're getting -- it's cutting out,
14    Judge.
15             THE COURT:  Okay.  My apologies.
16             THE CLERK:  We're not hearing you.
17             THE COURT:  I'm not speaking.
18             THE CLERK:  Oh, I'm sorry.  So sorry.
19             THE COURT:  Is this better, Leslie?
20             THE CLERK:  I'm sorry?  Yes.
21             THE COURT:  Is this better?
22             THE CLERK:  Yes, much better.  Thank you.
23             THE COURT:  All right.  I'm out of the air-
24    conditioning, so this means we have to have a short call.
25             All right.  So again, as you just heard I'm
```

1    participating by phone, and hopefully (audio breaks out) if

2    I drop off again or drop out please let me know and I'll try

3    to relocate.  I should be okay now, I'm outside.

4         So since it's Elliott's motion and Elliott's

5    letter (audio breaks out) roster you can proceed first.

6         MR. GALARDI:  All right, Your Honor, thank you,

7    and I will try to be brief.

8         I think the letters lay out with respect to our

9    request for the deposition of a person from the ad hoc

10   claimants, so I'm just going to just focus on Mr. Rosner's

11   response.

12        Your Honor, he raises I think four or five -- I'll

13   call it four issues on the response.

14        One is that the only information the ad hoc

15   claimants have is information gleaned from the court docket

16   and the debtors' documents in discovery.

17        One, even if that were true we would be entitled

18   from their witness to test that proposition.  And two, these

19   -- many of -- a number of those participants have in fact

20   participated in the cases prior.  So I don't think you can

21   simply say that we're not entitled to their factual

22   discovery with respect to what those claimants know.  And

23   this is a similar issue I think raised by the debtors.

24   We're going to draw a line between when they were ad hoc

25   claimants and when they were previous parties, but I don't

1    think you can lobotomize the people.

2            Second they argue that much of this information

3    was disclosed in the 2019 and harassment.  Simply not the

4    case that it's harassment.

5            Your Honor, we have all agreed to a four-hour

6    deposition, and I can assure Your Honor that there is no

7    lengthy inquiry about this, but we are entitled to take

8    factual information regarding their participation and their

9    positions.

10           The third is that they argue that we are trying to

11   inquire into the ad hoc claimants concerning our litigation

12   position.  Again, if they want to assert privilege that will

13   be free to do, that's an issue we can deal with in the

14   deposition, but the fact of the matter is we are trying to

15   under define the factual basis for the committees' legal

16   position, which we are entitled to do.

17           For example, they have a position with respect to

18   NextEra's break-up fee, that's it's 0/100.  We are certainly

19   entitled to inquire on that position what is the factual

20   basis of that -- those inquiries, and so we think a witness

21   should be presented for that.

22           And then the fourth one really goes back to the

23   first one that they have no independent knowledge of factual

24   legal issues.  I believe that they have an obligation to go

25   into inquiry about those and they must have some factual

1   basis for which they have asserted their premises other than

2   legal, and if they say there is no -- they have no facts

3   then we would like to find that out in a deposition.

4            So for those reasons, Your Honor, we do think they

5   should be compelled to put up a witness for a deposition

6   regardless of whether they chose or chose not to put up a

7   witness at trial.

8            THE COURT:  Thank you, Mr. Galardi.

9            Reply?

10            MR. ROSNER:  Hi.  Good morning, Your Honor.  David

11   Rosner of Kasowitz Benson & Torres for the ad hoc EFH

12   claimant.  Can Your Honor hear me okay?

13            THE COURT:  Yes, I can.

14            MR. ROSNER:  Okay, great.

15            As you know and the Court's aware the group was

16   organized simply for the purpose of protecting their

17   concerned distributions from invasion by Elliott and UMB.

18   As we understand it Elliott owns approximately 35 percent of

19   the EFH bonds and about 70 percent of the EFIH bonds, so its

20   goal here is to move expenses from one pocket to a less

21   expensive pocket.

22            Our group is not a corporate entity, it was formed

23   only six months ago, and you know, as -- simply as claims

24   holders we have no personal knowledge and we intend to offer

25   no evidence to direct participation in the hearing on this

1    matter.  Meaning we don't have any party witnesses who we're

2    proposing, we're relying on the record that gets -- that has

3    been developed in these cases, the docket and the documents

4    that are being produced, the record of this entire case, and

5    conclusions that we think Your Honor can draw from that and

6    the witnesses that are participating and the documents that

7    are going to be presented as exhibits, but we do not have a

8    witness for this hearing.

9              And rather the claimants hired counsel to, you

10   know, understand the facts, apply the law, and defend these

11   distributions at the hearing, and we have filed no

12   affirmative motion or complaint, and rather we've only

13   responded to Elliott's motion.

14             They seek to depose a corporate representative of

15   the ad hoc committee on a couple of bases, you know, broken

16   down into ten different topics, and none of them is designed

17   to elicit any evidence that's going to be admitted to Your

18   Honor in connection with this hearing, but the formation and

19   composition of the group is completely irrelevant to these

20   and there is a verified statement of the disclosable

21   economic interest verifying and setting forth what the EFH

22   interests are of the group in this proceeding and why we are

23   participating in the proceeding.

24             You know, the factual basis are the record, the

25   docket, and the documents that are already in the record and

1    are going to be produced at trial to Your Honor.  Asking us

2    about, you know, our position on the Elliott UMB motion, our

3    position is set forth in the preliminary objection, it will

4    be submitted in the final briefing, and really what they're

5    seeking are contention interrogatories through a deposition,

6    and that's contrary to the scheduling order and completely

7    unnecessary, and you know, is viewed, from our perspective,

8    as somewhat wasteful and certainly a distraction, and our

9    position is filed in our briefing.

10            And they are seeking our legal position.  Our

11   legal position also set forth in the briefing or that will

12   be set forth in the final briefing it's going to be the law

13   applied to the facts as presented to Your Honor through

14   witnesses that are actually testifying and documents that

15   are actually being submitted.

16            We've produced no documents in this matter, we

17   have no ad hoc EFH claimant documents that are relevant to

18   this.  We don't have independent knowledge of -- you know,

19   the tax issues and NextEra issues, that's all drawn from the

20   record and formed from the docket and the document

21   productions, and Elliott certainly has equal access to those

22   records and to the docket, they've been very involved in the

23   case and they have no need to take time from, you know,

24   individual claimants to understand the record.

25            So ultimately it's the Court's understanding of

1   the facts of course that's most important and those will be

2   gleaned from the record and the witnesses produced, no

3   documents from our personal records and the ad hoc committee

4   will not be submitting any.

5            I don't think I really need to respond to, you

6   know, the demand for costs on this.  We've met and conferred

7   on this.  We've tried to eliminate depositions, and I think

8   that the prosecution of actually this discovery dispute, the

9   Court can conclude that what the purpose -- the underlying

10  purpose is of this, and most -- you know, whether it's

11  harassment as we view it, but it certainly is delay, it

12  certainly is wasteful, and it certainly is a distraction.

13  And I think I know we're taking discovery matters right now,

14  but they're relevant to the pretrial conference that we're

15  also discussing today in terms of the schedule, because we

16  think that the schedule here needs to be modified in large

17  part due to the discovery demands of Elliott and UMB.

18           So all that being said and reliance on the

19  August 3rd letter in response and our responses and

20  objections we would ask that Your Honor not force an

21  unnecessary deposition in this matter.

22           Thank you, Your Honor.

23           THE COURT:  Thank you.

24           Mr. Galardi?

25           MR. ROSNER:  I've rendered him silent, Your Honor.

1              THE COURT:  Mr. Galardi?

2              MR. GALARDI:  I'm sorry, I was being articulated

3    into the mute button, and I'm rendered silent never.  Very

4    briefly, Your Honor.

5              One is I do think they have some knowledge as to

6    the factual basis that's going to give them the layout into

7    legal arguments, so I do think we are entitled to that

8    regardless of whether they put on a witness.

9              As to the delay I think, Your Honor, this -- we

10   are the ones that do not want delay, have not asked for many

11   depositions.  Have cancelled three depositions.  Have agreed

12   to the four hours.  Want this schedule.  And in fact not

13   insistent and have not gotten very many documents other than

14   from the PAB, which they have cooperated, and as Your Honor

15   will see we've resolved the Kirkland issue, and as to the

16   PAB witness issue that's really the only outstanding issue.

17             So we would ask that this be scheduled for a

18   deposition.  It's only four hours.  If there's no documents

19   for them to review that's fine.  If there's objections to

20   any inquiry into 2019 matters we can take those up.  To the

21   extent there's privilege we can take those up.  But to the

22   extent that there are any facts that they are relying on,

23   that this group is relying on we are entitled to discovery

24   on that so that we can prepare our case.

25             THE COURT:  All right.  Well thank you very much.

1           I am not going to allow the deposition.  I think

2     Mr. Galardi makes an articulate basis or argument for it,

3     but I think at the end of the day it really comes down to

4     the only thing that would be allowable that would be

5     actually discoverable at a deposition when you take away

6     privileged documents, when you take away issues with regard

7     to holdings that are protected, really come down to nothing

8     more than contention interrogatories.

9           We need to know what the factual basis for

10    someone's legal position in filing an objection when that

11    party is really not the mover and shaker of the facts, is --

12    you know, that wasn't the person on the ground making the

13    decisions, doing the actions that are the underlying facts,

14    you know, with the dispute, I think really just realms

15    (indiscernible) simply into the realm of contention

16    interrogatories.

17          That's the only thing that I can possibly see

18    being actually discoverable in this deposition, and the

19    Court has already through the discovery order said

20    contention interrogatories are not going to be pursued.

21          So I am not going to allow the demonstration.

22          MR. GALARDI:  Okay, Your Honor.  Let's we can move

23    to the next one if you'd like.

24          THE COURT:  Yes.

25          MR. GALARDI:  I want to get you out of the -- I

1    want you to get out of the heat soon.

2            Your Honor, with respect to the motion to compel,

3    really this is I think some issues.  I will agree with the

4    PAB are somewhat premature, you can deal as I just said with

5    privilege issues at the deposition.

6            The real question is who is going to be testifying

7    and appearing in front of Your Honor with respect to the

8    PAB?  By that I mean the following.

9            No one is disputing that Mr. Horton will sit for a

10   deposition.  No one is disputing that Mr. Horton will sit as

11   a former director or officer, I think he's only an officer

12   of the companies.

13           The issue we have is that we are being told that

14   he will not sit as a 30(b)(6) of the PAB on substantive

15   issues in the following sense.

16           They have argued that his knowledge as a PAB

17   person and will testify with respect to information after

18   the PAB was formed and he will testify as to his prior

19   knowledge as a former director and officer.

20           Well that may sound right, Your Honor, in some

21   ways.  It comes down to what weight will this Court give the

22   evidence put in by Mr. Horton as opposed to the PAB?

23           As Your Honor will recall, and as we set forth in

24   our letter, the entire purpose of the PAB or their request

25   to participate is they had the most knowledge to be the

1    honest broker, and indeed we understand that the PAB has

2    both an obligation to file a brief in support of a certain

3    position.  We have non-filed preliminary statements that

4    assert various positions as the PAB, not as Mr. Horton, and

5    again, we think that the position, if Your Honor is allowed

6    the PAB to participate as a party and will take substantive

7    positions, then you can't simply say, well Mr. Horton, just

8    remember what you remember as the former director, but when

9    you are the PAB you're going to only take positions that

10   don't -- are not informed by or don't really reflect those

11   positions.

12          So we believe that he should be deposed once.  I

13   know there's a suggestion that he was deposed last month,

14   but as Your Honor knows that was with respect to their

15   reimbursing, and we think it's a different matter.  He

16   should be reimbursed once, and it should be clear that his

17   testimony, including his PAB inquiry into what the facts

18   are, is really an inquiry into his own mind and that should

19   be the testimony of the PAB as a 30(b)(6).  If it's not the

20   testimony of Mr. Horton as a PAB 30(b)(6) then frankly the

21   statements of the PAB that rely on those facts, the

22   substantive statements, should be stricken.

23          MR. MCKANE:  Good morning, Your Honor, it's Mark

24   McKane of Kirkland & Ellis for the plan administrator board.

25   May I respond?  Hope we didn't lose Your Honor or you're on

1    mute.

2              THE COURT:  I'm sorry, that was my fault.  Yes,

3    you may respond.  I apologize.

4              MR. MCKANE:  Thank you, Your Honor.

5              Mr. Galardi says our position sounds right because

6    it is right.  Elliott and the indenture trustee are getting

7    a witness on all substantive topics, all 16 substantive

8    topics, they're getting Mr. Horton on all of them.

9              Notably Elliott served Mr. Horton with deposition

10   notices through the PAB and his individual capacity, and

11   Mr. Horton will be sitting for essentially a joint

12   deposition for four hours this Thursday.

13             So it's not a practical question of whether

14   Elliott will be able question Mr. Norton on any of these

15   substantive topics.

16             And, you know, to the reference that Mr. Galardi

17   made and the first argument about lobotomizing the people,

18   that's demonstrably not true with regards to Mr. Horton, and

19   we're not drawing some hard bright line objection based on

20   time.  To the extent that Elliott advances that argument

21   it's a mischaracterization of the PAB's position.

22             To be absolutely clear, to the extent that PAB

23   investigated the allocation issues once the PAB was formed

24   that's fair game.  The preliminary statement put out by the

25   PAB, absolutely, that's fair game.  And to emphasize that

1    inquiry is not a nol set.  Mr. Horton did do an inquiry into

2    the allocation dispute earlier this year as part of his role

3    as the PAB once it was formed to see if he could drive a

4    settlement of these issues as opposed to, you know, going

5    through the cost and exercise of litigation.

6         And to the extent that Elliott suggests that the

7    PAB is trying to have it both ways as some type of gotcha,

8    the PAB is not distancing itself from Mr. Horton's earlier

9    role or involvement in these cases.  It's just not true.

10        If we step back for a minute we all have to

11   recognize that Mr. Horton is the sole member of the PAB, and

12   so when you ask yourself what's the foundation of the PAB's

13   knowledge as an entity, well it does start with Mr. Horton's

14   earlier knowledge and experience in this restructuring

15   before the PAB formation.  And no one is objecting to

16   Elliott's counsel as exploration in these depositions of

17   Mr. Horton's knowledge and experience in these cases as an

18   officer and director of some of the debtors.

19        Again, this is a one joint four-hour PAB/Horton

20   deposition and Elliott can explore Mr. Horton's involvement

21   and knowledge on all 16 substantive topics during those four

22   hours.  But the PAB's knowledge also extends to its efforts

23   to investigate and resolve the allocation dispute since the

24   PAB's formation, and no one is objecting to Elliott's

25   deposition on that basis either.

1           So what are we talking about?  We're talking about

2    it's a legal extent and obligations under Rule 30(b)(6),

3    what is an entity's duty to prepare a witness beyond that

4    with individual knowledge and experience?  And under

5    Elliott's view of the world the PAB would have a

6    responsibility of a duty to fill Mr. Horton's head as a

7    30(b)(6) corporate representative for the entire duration of

8    these cases, well beyond the period for which the PAB was

9    formed for all of the debtors, and there's nothing

10   inappropriate or improper about this -- about the PAB's

11   objection saying that that's not the scope of a Rule

12   30(b)(6) deposition.

13          Elliott has cited no case that it suggested that

14   there is a duty to prepare a corporate representative for a

15   period of time before the entity actually existed.  And the

16   one case that Elliott cites with regards to an obligation to

17   prepare a witness on things that are reasonably available

18   doesn't suggest anything about this important distinction

19   between when an entity exists and when it doesn't.

20          Now, as it relates to the privilege individual we

21   agree, we argued it was premature and it looks like we're

22   going to be tabling it for now, but ultimately and really

23   this entire dispute is premature because the PAB/Horton

24   depositions haven't happened, there hasn't been any

25   instructions not to answer, there hasn't been any PAB

1    questions or substantive questions at all that Mr. Horton

2    was not prepared to answer or couldn't answer, and yet here

3    they are in front of you asking for a motion to compel.  At

4    this point there is nothing to compel.

5            The deposition will proceed on Thursday and I

6    fully expect it will take all four hours, and at that point

7    Mr. Galardi and the Elliott team can evaluate the record and

8    evaluate it at that time whether a motion to compel is

9    appropriate.

10           But ultimately I think the last lines of the

11   letter are the most telling, because Elliott's requested for

12   relief, you know, to strike any PAB statement from the

13   record really shows its intent here.

14           Ultimately this is just a continuation of the

15   Elliott efforts to silence the PAB and not have them

16   participate in this case.

17           We're prepared to go forward, we're prepared to

18   have the Elliott -- the PAB/Horton deposition this Thursday,

19   we're going to file our statements at a time or as adjusted,

20   I think you're going to hear later today that folks want to

21   tweak the schedule and we'll address that as necessary, but

22   the PAB is prepared to go forward and our objections are

23   nothing more than a legal objection based on the scope of

24   what a Rule 30(b)(6) deposition can be.

25           I think there's no practical import whatsoever of

1    this in terms of whether Mr. Horton is going to be able to

2    testify as to what he experienced before the PAB was formed,

3    what we knew about these issues before the PAB was formed,

4    or whether Elliott is going to be able to explore any of the

5    substantive 16 topics for which Mr. Horton will be prepared

6    to testify on Thursday.

7              MR. GALARDI:  Your Honor, (indiscernible).  Just

8    very briefly on their reply.

9              Your Honor, there's not an attempt to strike the

10   pleadings just because the party is, you know, the PAB and

11   Your Honor has already ruled there is a party.  There is an

12   issue as to the weight and effect that you will give the

13   evidence and who is giving the evidence and on what basis.

14             While it may not be the case that a corporate

15   party has to go back to all of the events, the fact of the

16   matter is they are going to take a position on all of the

17   events and they are doing it.

18             If they were not a party here they could simply be

19   a witness and use Mr. Horton.  But they are going to put the

20   imprimatur of the PAB on this evidence and say we are "the

21   honest broker" and we've gleaned this.

22             So that is the distinction as to why we think it

23   is important that it be either determined that this is a

24   30(b)(6) witness using Mr. Horton so that we understand the

25   weight of that testimony and that he be put forth as the PAB

1    as they're done in their positions.

2            If they're not putting it forth as a corporate

3    PAB, our trustee, which Your Honor has said had to walk the

4    fine line, then they shouldn't be putting it forward and

5    they should be using Mr. Horton simply as a witness.

6            I understand that he will sit for the four hours,

7    but that clarification needs to be made so that Your Honor

8    and we can make the arguments with respect to the weight of

9    the evidence given and the basis of that evidence.

10           THE COURT:  All right.  Thank you.

11           Well I think that this is a bit of a conundrum to

12   make in a record -- with a record without the deposition and

13   to know exactly what the testimony was or wasn't, and I

14   think Mr. McKane makes at least a somewhat rationale

15   argument -- but a somewhat persuasive argument that this is

16   premature for the Court to make a decision.

17           This is a weird situation.  You're asking for the

18   30(b)(6) testimony of an entity that was formed in March

19   2018 in a case that started in April 2014 and for which the

20   sole person who is the PAB was highly involved at various

21   levels in management decisions not only in 2014 but in the

22   years leading to the bankruptcy, and it is difficult to

23   understand how one can lobotomize, you know, one's

24   knowledge.

25           Normally it would be true I think that you would

1    say that you can only -- an entity can only --

2    (indiscernible) it be a 30(b)(6) witness for as long as it

3    exists, so for the time period from when you take the

4    position back to when the corporation came into being or

5    whatever the entity is.  However, if that entity was, for

6    example, the -- formed as a result of a merger of other

7    entities and issues premerger were in place and that the

8    successor company was taking legal positions and

9    participating I think it would be fair for someone to say

10   look, this 30(b)(6) really applies to the premerger time

11   period as well (indiscernible) than this entity, this is the

12   entity that is participating.

13            Now, how far back do you have to go to

14   (indiscernible) the scope of the topics that are presented

15   to the witness?  The topics here are very broad, extremely

16   broad, and that's -- how you're going to cover them in four

17   hours I have no idea, especially with Mr. Horton's

18   (indiscernible) speech patterns, so good luck with that.

19            But in any event, I do believe that while this is

20   somewhat premature I am going to say that I think that the

21   30(b)(6) responsibilities of the PAB don't begin at March,

22   they go back to the successor entity, to the successor

23   participation and Mr. Horton, and if he testifies, you know,

24   this happened on -- you know, X happened on March 1st, 2015

25   as the 30(b)(6) witness of PAB it will have the force of a

1    statement by a corporation as it's interpreted under

2    30(b)(6).

3            So I guess long story short, that was a lengthy

4    recitation, I will support Mr. Galardi's request at least in

5    part, certainly not going to award any fees for bringing

6    this, it's certainly not going to strike anything offered by

7    the PAB provided -- that would be premature because we don't

8    know what they're actually going to do at the deposition.

9            MR. GALARDI:  Thank you, Your Honor.

10           THE COURT:  I'm sorry to interrupt.  Mr. McKane,

11   any questions?

12           MR. MCKANE:  Your Honor, I understand the focus of

13   your analysis is largely on the import of whether

14   Mr. Horton's testimony, you know, for obviously the periods

15   of time in the bankruptcy before the formation of the PAB

16   would bind the PAB, and I get that and then look at the sole

17   trustee of the PAB, that all makes sense.

18           In many ways this is all about the duty to prepare

19   a witness for information beyond his personal knowledge, and

20   that would be one of our primary concerns.

21           And ultimately, you know, I have no idea how on

22   these topics I could do that with Mr. Horton.  I don't know

23   if that's physically possible for any individual, but we

24   certainly understand and would not suggest that oh, well

25   that was Mr. Horton as an officer and not a -- you know, I

1    mean he is the trustee and if he comes forward with that

2    knowledge we never suggested otherwise.

3              So ultimately, you know, obviously we accept your

4    analysis because we've always agreed with this, our

5    objection has always been about the scope of preparation.

6    And as you can imagine Mr. Horton has been preparing and

7    will continue to do so and will answer the questions to the

8    best of his ability.

9              THE COURT:  Yeah.  And my response to that --

10   thank you for that.  My response to that is of course now

11   the -- you know, the rules have been changed and I think

12   very appropriately to focus on the scope of (indiscernible)

13   and I don't think -- you know, do what is reasonable, but

14   you know, you can't cram the entire history of this case

15   into somebody's head in a couple days other than how -- you

16   know, what they already know from having been on the firing

17   lines for the last several years.

18             So I think, you know, make the reasonable

19   preparation and we'll go forward.

20             And Mr. Galardi, if they don't prepare for

21   something and you have a problem at the deposition I'll be

22   unavailable in real time, but you can certainly submit

23   something and we can deal with that appropriately.

24             MR. GALARDI:  And I don't have that much of a

25   concern, Your Honor, I understand they will, so -- and we

1   think we can do it in four hours.

2           I'd like to do two more things while we have Your

3   Honor.  First is I believe that Mr. Rosner, and I don't want

4   to put words into his mouth, suggested that if they prevail

5   and there is no deposition there will be no deposition for

6   UMB.  Mr. Rosenbaum will still in fact appear, but I wanted

7   to make sure that that's no longer a deposition that they

8   are requiring.  Mr. Rosner may be speaking into a mute

9   button as well.

10          THE COURT:  Mr. Rosner, can you respond?

11          MR. ROSNER:  Yes, I'm sorry, I was speaking into a

12  mute button.

13          I think you have our letter, so yes, I can confirm

14  that to Mr. Galardi, we'll not go forward with the UMB

15  deposition.

16          MR. GALARDI:  So then the other issue that was

17  eluded to by Mr. Rosner but I would like to take up is one,

18  we the scheduled hearing time of September 5, 6, and 7.  We

19  believe we can still go forward especially with Your Honor

20  having just two depositions no longer necessary.

21          That said we have had witness scheduling issues

22  and most of the witnesses are scheduled this week and we

23  still need to schedule one or two witnesses, plus there may

24  be expert testimony.

25          Your Honor, the first thing I would like to ask

1    and then Mr. Rosner may ask for an extension of the hearing

2    date, but I'd ask him to file a motion, is we have a brief

3    due on next Monday.  I think everybody -- although they can

4    speak for themselves -- believes that that brief would be

5    premature for a hearing if it should start on September 5th.

6    It really is how soon in advance you would like the

7    briefing.

8              Elliott UMB would suggest that the date of that

9    briefing be moved to either August 24th or August 27th and

10   then the parties agree to work in good faith with respect to

11   identifying experts.

12             I think as we get through this discovery I think

13   we should set a deadline.  I would suggest the 10th or the

14   13th, but I'm not wedded to that and I thought maybe we

15   would bring that up today because it really involves Your

16   Honor how soon in advance would you like the briefs for a

17   September 5th hearing, understanding you usually want them

18   as much in advance as possible, but that there is still

19   discovery ongoing and it probably will lapse into next week.

20             THE COURT:  Okay.  Any response?

21             MR. ROSNER:  Yes.  Yes, Your Honor.  It's David

22   Rosner.

23             We had -- Mr. Galardi and I and Mr. Pedone and

24   Mr. McKane had communicated on this in the last couple of

25   days or at least this morning.

1           So this is how I see it in terms of both the facts

2    and now the expert discovery.  Elliott has -- discovery was

3    -- is supposed to or was supposed to close at the end of

4    this week.  Elliott has sought the deposition of Mr. Evans,

5    Mr. Evans has a personal issue that has caused him not to be

6    able to set his deposition.  We've gone back to the

7    disinterested directors, EFH's disinterested director,

8    former counsel, Mr. Thomas, and requested Ms. Williamson in

9    place.  We understand that she's on vacation now, will be

10   back on the 14th, and he -- Mr. Thomas is going to check for

11   her availability.  We understand from Mr. Galardi that

12   notwithstanding Ms. Williamson he still wants to take

13   Mr. Evans' deposition and that's -- we don't have, you know,

14   anything that we can set, and it's certainly is going to be

15   at the earliest next week.

16           Currently in order to meet this squeezed schedule

17   there's double tracking important depositions.  They have

18   the -- Mr. Rosenbaum's deposition on the 8th and they have

19   also the unsecured creditors' committee on the same date in

20   a different -- you know, in a different place obviously, and

21   both scheduled for exactly the same time.  There's also the

22   double scheduling of Evercore and Mr. Horton, and

23   Mr. Horton's deposition is -- as you can imagine -- is very

24   important and is certainly going to take at least the four

25   hours.  And between the UCC and Evercore you're directing,

1   you know, witnesses that are speaking to, you know, close to

2   $100 million of fees that Elliott is contesting in terms of

3   its allocation.

4           Upon our question last week about experts and the

5   scheduling order in terms of dealing with experts, you know,

6   leaves it to the party, identifying that there could be

7   experts and leaves it to the parties to discuss we learned

8   today that Elliott is likely calling an expert or experts.

9   We don't know who, we don't know what, and we don't know

10  anything about scheduling, and we don't know if in response

11  we will then need to address the -- or whether the PAB will

12  need to address expert testimony depending upon where

13  Elliott is going with that, and that certainly is, you know,

14  if it can even be addressed this week is not going to be

15  dealt with this week in terms of reports and deposition

16  testimony and preparing experts for trial.

17          As Mr. Galardi said, the brief is currently due on

18  the 10th, which really can't reasonably be done in

19  completion, so -- and we understand this case has certainly

20  gone on for a long time and these issues are very important

21  and we're not exactly sure why we're double tracking

22  depositions in order to get to a resolution that can be done

23  in a reasonable fashion.

24          So we had suggested to the parties that we move

25  the schedule, I suggested three weeks, I understood from

1    Mr. Galardi that Your Honor had said that if October -- the

2    beginning of October would be best if there was a change,

3    and I know you that haven't said there would be a change,

4    but that's okay as well, we just think that to deal with

5    both the existing fact discovery and addressing witnesses'

6    availability as well as now experts that it makes sense to

7    actually allow for the parties to set a reasonable schedule

8    amongst themselves over a reasonable period of time so that

9    we can have the best possible record for Your Honor to

10   decide this matter in an expeditious manner.

11          So we do suggest that everything get -- that the

12   hearing get moved by a few weeks so that we can do that.

13          MR. GALARDI:  Your Honor, it's Gregg Galardi, I'll

14   let other people respond first.

15          THE COURT:  Yeah.  Thank you, Mr. Galardi.  Yes,

16   does anyone else wish to be heard on this?

17          MR. MCKANE:  Your Honor, it's Mark McKane on

18   behalf of the plan administrator board, and you're not going

19   to be surprised to hear this based on Mr. Horton's earlier

20   testimony on the importance of the schedule.

21          You know, we want to keep the schedule, you know,

22   for those hearing dates in early September to the extent

23   possible, because as we know from our own analysis of the

24   cost of delay as well as, you know, our understanding and

25   directly of Your Honor's availability, this could slide

1    significantly.

2           But we know there are also -- you know, as

3    Mr. Galardi, I believe, you know, identified, you know,

4    during that hearing process he referred to it as a slack in

5    the schedule.

6           So to the extent that, you know, moving the

7    briefing docket until the fact discovery is done that's --

8    you know, that makes a lot of sense to us.  And, you know,

9    frankly the dates of either the 24th or the 27th for the

10   briefing is fine so long as it's fine with Your Honor.

11          To the extent that there's going to be expert

12   discovery, you know, frankly the schedule doesn't -- isn't

13   -- you know, I think leaves that open, but it doesn't

14   expressly address it, so we do believe that there should be

15   dates provided for that and obviously an opportunity to

16   depose any experts in advance of the hearing, and I believe

17   the schedule does provide for that.

18          But ultimately our concern is always about trying

19   to resolve this issue as quickly and as efficiently as

20   possible and therefore we have concerns about the delay.

21          THE COURT:  Thank you, Mr. McKane.  Anyone else

22   before I turn it back to Mr. Galardi?

23          MR. PEDONE:  Your Honor, Richard Pedone for

24   American Stock Transfer.

25          I had expected that if there was going to be

1    experts they would have been disclosed earlier.  It was left

2    open, nobody has indicated that they wanted experts.

3    26(a)(2)(b) requires expert reports and there should

4    certainly being a gap between the issuance of the report and

5    any experts' deposition.  So if we need experts we may

6    actually need an extension of time so that the process can

7    proceed appropriately, and we don't think there's cause for

8    relieving any party of the need to produce a report with

9    their expert.

10           Thank you.

11           THE COURT:  Thank you, Mr. Pedone.

12           Mr. Galardi?

13           MR. GALARDI:  Your Honor, first the schedule

14   specifically did deal with the experts and that people would

15   disclose them.  I was the one who said that we have, and

16   I've told the ad hocs for about a week now, that we would be

17   considering it, and I'm the one that wanted to propose a

18   date by which they'd be disclosed, because there was a time

19   period, and that time period is between now and

20   September 5th that is available, and we would certainly

21   make, and I believe the tradition in the case has been get

22   an expert to give a written direct and they would have the

23   written direct, they could respond with a rebuttal witness

24   or they could depose it and we'd certainly make that time

25   available, and that's how the cases have run.

1              I think Mr. McKane is correct and I would just

2    reiterate, Mr. Horton for the purpose of the reimbursement

3    motion made clear the cost and the expense of this, Your

4    Honor made clear that it's really a month if we get an

5    adjournment, and we think we can get all this done in this

6    period of time.

7              As to Mr. Rosner's doubling up on depositions,

8    that again we had proposed dates, proposed dates and revised

9    dates and proposed dates.  It turned out that they were

10   unable and didn't finish it that's why we are double

11   tracking the last few days.

12             We have no objection to having the deposition if

13   they want Ms. Williamson to be next week.  I have already

14   advised Mr. Thomas of that.  To the extent that Mr. Evans is

15   needed we do think he's needed we would go around his

16   schedule.  I don't think that needs to slow up the briefing,

17   because we think it'll be done on the 24th, and if Mr. Evans

18   is after the 24th that can be a simple supplement for the

19   hearing because it is a deposition.  We don't expect

20   Mr. Evans to turn into -- be a witness at the trial.

21             So, Your Honor, we think we can keep to that

22   schedule.  There is cost, I won't go through why Elliott

23   bears the predominant share of that cost, whether it's EFH

24   or EFIH side, so we would ask that you keep the schedule,

25   let the parties work and decide the briefing, whether it's

1    the 24th, 27th or some other date, it is subject to Your

2    Honor's review of the materials, and the parties can work on

3    a date by which we will identify experts, and I said as

4    early as the 10th or the 13th.

5            Part of the issue is seeing the testimony --

6    hearing at least the substantive part of the testimony

7    especially from Mr. Horton and from Kirkland & Ellis which

8    occur on Thursday and Friday, we wanted to hear that before

9    we decided whether we really needed an expert or not.

10           THE COURT:  All right.  Thank you, Mr. Galardi.

11           Can I ask you couple questions, because I don't

12   have the (indiscernible) front of me.  Is the 24th a Friday

13   I take it?

14           MR. GALARDI:  It is a Friday, Your Honor, and

15   that's why I skip between that Friday and Monday the 27th.

16           THE COURT:  Right.  And does the schedule

17   contemplate reply briefs or will that be the end of the

18   (indiscernible)?

19           MR. GALARDI:  No, it's just one substantive brief

20   as I've read the schedule, I don't know if anybody else has

21   reread it, but that was our understanding, each party puts

22   in their position for trial on that date.

23           THE COURT:  Right, subject to the 40-page

24   limitation.

25           MR. GALARDI:  I'm sure subject to that, yes.

1           THE COURT:  Okay.

2           All right.  Well (indiscernible) subject to the

3    40-page limitation I have no problem with the briefs being

4    due on the 27th at noon and that'll fix that.  I do -- I am

5    not going to move the hearing -- I don't want to move this

6    hearing date if at all possible.  I will of course in the

7    interest of justice so require and fair play, but again, as

8    the parties have eluded to on the call between (audio breaks

9    out) this falls smack dab in the middle of the workweek this

10   year that the major ones fall smack dab in the middle of the

11   workweek and my own scheduling just being out for almost an

12   entire week to attend a (audio breaks out) and other (audio

13   breaks out) if this moves it moves to October, and I'm

14   reluctant to add an entire four or five weeks of time,

15   effort, and money spent to get this to trial as soon as

16   possible.

17          So I'm going to keep the trial date in September,

18   I'll move the briefs back to the 27th at noon, it'll require

19   that any experts be identified by name, position, et cetera,

20   and topic on which they will testify in as much

21   particularity as possible by noon of the 13th.  And then

22   I'll allow the parties to work out a deposition schedule.

23          I don't know quite what to do about the expert

24   report piece.  The rules certainly call for that.  I'm

25   afraid if we go down the road of requiring minimal expert

1     reports it'll delay matters to the point where we'll lose

2     our hearing date.

3              So at this point I'd ask the parties to confer in

4     the interest of creativity and keeping the hearing date

5     coupled with of course giving people reasonable access to

6     what people are testifying about and the basis for that, to

7     come up with some sort of mechanism that is somewhere

8     between nothing and a formal expert report.

9              If you need my help on that, if you can't work it

10    out I'm very much in the office today -- well not actually

11    -- but I'm available today, I'm traveling the next four days

12    so it's hard for me to -- and you won't even know who your

13    experts are until Monday any way.  I am back in the office

14    next Monday if you can't work out what to do about, you

15    know, a short form expert report or some other mechanism you

16    can get me on the phone next week and we'll figure it out.

17             I think that's all the open issues.

18             MR. ROSNER:  Double tracking.

19             THE COURT:  You know what, you know, it's

20    expedited litigation.  I can't even tell you how many times

21    I double tracked depositions back in private practice.

22    We've all done it.  It's unfortunate because it requires

23    perhaps -- you know, obviously the lead person on the matter

24    can't be present in two places at the same time, but you all

25    work in really big law firms with amazing colleagues and I'm

1    more than comfortable that you'll be able to find somebody

2    to cover the deposition in a competent manner.  And so the

3    double track, I'm not -- you know, I've been triple

4    tracking, we won't go that far, but double tracking in this

5    instance is fine.

6            With regard to Ms. Williamson and Mr. Evans,

7    obviously you know look, you're asking for third-party

8    depositions in the middle of August, it's vacation time for

9    many, many people, and it sounds like you've sort of talked

10   around what Mr. Evans' issues were, I don't know if they're

11   medical or not, but you know, when dealing with third

12   parties you have to be flexible and of course it's vacation

13   time.

14           So get the depositions when you can and if it's

15   after this Friday -- if it's necessary after this Friday for

16   that to occur that's fine, we won't move the date -- because

17   we won't move the hearing date because of that.  Obviously

18   as many depositions as can occur by this Friday is

19   preferable, but you've got third-party depositions that

20   can't happen until next week because of the scheduling so be

21   it.

22           You know, if you need a motion to compel or a

23   subpoena or whatever you need in order to make third parties

24   not, you know, appear even though they don't want to or

25   they're not being cooperative again you can reach me next

```
 1    week and we'll deal with it appropriately.  But it sounds

 2    like with a little honey and a little flexibility you should

 3    be able to get it done.

 4              MR. GALARDI:  And, Your Honor, we've been in touch

 5    with Mr. Thomas as has Mr. Rosner, we're not pushing for

 6    those depositions, it's their two witnesses this week, as we

 7    said we'll do it next week when she's available and when we

 8    find out when Mr. Evans is available we'll do that as well,

 9    and we appreciate his accommodations.

10              THE COURT:  Of course.  Anything -- did that cover

11    it all?

12              MR. GALARDI:  It did for me, Your Honor.

13              THE COURT:  Okay.

14              MR. ROSNER:  And it did from our perspective as

15    well.  Thank you very much.

16              THE COURT:  You're welcome.

17              Mr. McKane, satisfied?

18              MR. MCKANE:  Very much so.  Thank you, Your Honor.

19              THE COURT:  I don't know if you're ever satisfied,

20    but --

21         (Laughter)

22              THE COURT:  All right.  Thank you very much.

23              MR. GALARDI:  Thank you again, Your Honor.

24              THE COURT:  And thank you for accommodating me not

25    being in the office, I think it ultimately worked out okay,
```

1    and I'm sitting in the shade on my back deck so I can't

2    actually complain about it being too hot.  So everything is

3    good here.

4              So thank you very much, have a good week, enjoy

5    your vacation.

6         (A chorus of thank you)

7              THE COURT:  Bye bye.  All right.  Bye.

8         (Whereupon these proceedings were concluded at 11:47

9    AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4                                                        PAGE

5    Deposition Requests                                 14

6    Motion to Compel                                    22

7    Scheduling                                          35

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

Dawn South

6                          Digitally signed by Dawn South
                           DN: cn=Dawn South, o, ou,
                           email=digital@veritext.com,
                           c=US
7    _____ Date: 2018.08.07 16:27:57 -04'00'

8    Dawn South

9    Certified Electronic Transcriber

10

11

12    Date:  August 7, 2018

13

14

15

16

17

18

19

20

21

22    Veritext Legal Solutions

23    330 Old Country Road

24    Suite 300

25    Mineola, NY 11501