# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS | ) | Case No. 14-10979 (CSS) |
| CORP., et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | Re: Docket No. 12844 |

## OPINION[1]

**BAYARD, P.A.**
Scott D. Cousins
Erin R. Fay
600 N. King Street, Suite 400
Wilmington, DE 19801

-and-

**ROPES & GRAY LLP**
Keith H. Wofford
Gregg M. Galardi
1211 Avenue of the Americas
New York, NY 10036-8704

Counsel for UMB Bank, N.A., as Trustee,
And Elliott

**LANDIS RATH & COBB LLP**
Adam G. Landis
Matthew B. McGuire
919 Market Street, Suite 1800
Wilmington, DE 19801

-and-

**NORTON ROSE FULBRIGHT US LLP**
Howard Seife
Andrew Rosenblatt
1301 Avenue of the Americas
New York, NY 10019-6022

-and-

**WINSTON & STRAWN LLP**
Dan K. Webb
35 W. Wacker Drive
Chicago, IL 60601

Counsel for NextEra Energy, Inc.

Dated: August 1, 2018

Sontchi, C.J. _____

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## INTRODUCTION[2]

Before the Court is the *Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to (i) Dismiss Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Expense, or, in the Alternative, (ii) Grant Summary Judgement Denying and Disallowing Such Administrative Expense*[3] (the "Motion to Dismiss"). Elliott seeks denial of NextEra's $60 million administrative expense claim related to NextEra's fees and expenses incurred attempting to close the transaction with the Debtors for control of the Debtors' economic interest in Oncor. The Debtors and NextEra sought Bankruptcy Court approval of the Merger Agreement, which contained a Termination Fee provision. The Merger Agreement was approved; thereafter, NextEra sought approval of the transaction from the PUCT, which ultimately denied regulatory approval. After NextEra began the appellate process and it became readily apparent to the Debtors that such appeals would be fruitless, the Debtors terminated the Merger Agreement. Thereafter, Elliott sought reconsideration of the Termination Fee provision of the Merger Agreement in the limited scenario that NextEra did not receive regulatory approval and the Debtors were forced to terminate the Merger Agreement. The Court ultimately decided to reconsider the Termination Fee in such limited circumstance. NextEra then brought its application for approximately $60 million in administrative expense claim related to its fees and expenses in pursuing regulatory approval of the Merger Agreement, which Elliott is seeking dismissal of herein.

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them below.

[3] D.I. 12844.

Based on the provisions of the Merger Agreement, and for the reason set forth below, the Court will grant the Motion to Dismiss and disallow NextEra's $60 million administrative expense claim related to its efforts in seeking regulatory approval of the transaction.  Furthermore, even if the plain language of the Merger Agreement did not prevent such a claim, which it does, NextEra has not provided a substantial contribution to the Debtors estates and, thus, does not qualify for an administrative expense claim under section 503(b) of the Bankruptcy Code.

## JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in the United States Bankruptcy Court for the District of Delaware is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 11 U.S.C. § 157(b)(2)(A), (B), (N), and (O).  The Court has the judicial power to enter a final order.

## BACKGROUND

In April 2016, after an extensive and strategic marketing process and various other efforts, the Debtors engaged in discussions with NextEra Energy, Inc. ("NextEra") for the sale of the Debtors' approximately 80% economic interest in Oncor Electric Delivery Company LLC ("Oncor").

On July 29, 2016, certain of the Debtors, NextEra, and EFH Merger Co., LLC ("Merger Sub")—a newly formed subsidiary of NextEra—executed definitive documentation to govern this transaction, including an Agreement and Plan of Merger among Energy Future Holdings Corp. ("EFH"), Energy Future Intermediate Holding

3

Company LLC ("EFIH"), NextEra, and Merger Sub, dated July 29, 2016 (the "Merger Agreement"). The Merger Agreement, as amended, contemplated a merger of EFH with and into Merger Sub, whereby EFH would have become a wholly-owned subsidiary of NextEra with an approximately $18.7 billion implied Oncor total enterprise value. Included in the Merger Agreement was a "Termination Fee" in the amount of $275 million in favor of NextEra (the "Termination Fee"). More specifically, the Merger Agreement provides:

> "Termination Fee" shall mean an amount equal to $275,000,000, inclusive of all expense reimbursements, including reasonable and documented professional fees of Parent and Merger Sub; *provided that*, in no event shall such claim be senior or *pari passu* with the superpriority administrative claims granted to the secured parties pursuant to the DIP Facility (as in effect on the date hereof).[4]

Section 8.5(b) of the Merger Agreement also states:

> In the event the Company and EFIH pay the Termination Fee pursuant to this Section 8.5(b), such payment shall be the sole and exclusive remedy of Parent and Merger Sub against the Company, EFIH and their respective Affiliates, Representatives, creditors or shareholders with respect to any breach of this Agreement prior to such termination.[5]

Also on July 29, 2016, EFH, EFIH, EFIH Finance Inc., certain direct and indirect subsidiaries of EFH, and NextEra entered into a Plan Support Agreement in support of the *Amended Joint Plan of Reorganization of Energy Future Holdings Corp. et al.*, pursuant to Chapter 11 of the Bankruptcy Code, as modified and filed with the Bankruptcy Court on

---

[4] Merger Agreement § 8.5(b).

[5] Merger Agreement § 8.5(b).

August 5, 2016.[6]  By motion dated August 3, 2016, the Debtors sought approval of their entry into the Plan Support Agreement and the Merger Agreement (collectively, the "NextEra Transaction").[7]

On October 31, 2016, NextEra and Oncor submitted their joint change of control application for the PUCT's approval ("Joint Application").  The Joint Application asked that the PUCT drop two key features of a "ring-fence" the regulator had erected around Oncor in connection with the 2007 leveraged buyout:  first, the requirement that Oncor maintain an independent board of directors; and second, certain minority shareholders' ability to veto dividends.  NextEra was unwilling to concede the governance terms, going so far as to call them "deal killers."

On March 30, 2017, the PUCT held an open meeting on the NextEra Transaction. During the meeting, the Commissioners expressed significant concerns about the transaction's terms and its impact on the public interest.  As Commissioner Anderson explained in a memorandum he filed the same day,

> From the earliest contacts, well before the sale merger transfer application was filed, NextEra's representatives have been very clear and consistent about the conditions that they could not accept and the reasons why those conditions were unacceptable.  As the Chairman noted perceptively toward the end of the Hearing on the Merits, among the core issues in this case is whether "our deal[-]killers are [NextEra's] deal-

---

[6] D.I. 9199.

[7] *See Motion Of The EFH/EFIH Debtors For Order (A) Authorizing Entry Into Merger Agreement, (B) Approving Termination Fee, And (C) Authorizing Entry Into And Performance Under Plan Support Agreement* (D.I. 9190).

killers." At least for this Commissioner, I fear that they do indeed correlate negatively.[8]

On April 13, 2017, the PUCT denied the Joint Application, citing, among other things, the impasse between the PUCT and NextEra over the critical "deal-killer" terms, as well as a number of other fundamental defects in the Joint Application.[9] On May 8, 2017, NextEra filed a rehearing request, without Oncor joining, simply rearguing the same contentions the PUCT had rejected after months of debate.[10] The deadline for a decision was set at June 7, 2017, but NextEra sought to prolong the process, requesting an extension to "the maximum extent allowed by law" — effectively July 22, 2017. The PUCT denied that request and again rejected the Joint Application on June 7, 2017 for the same reasons cited in its April 13 decision.[11] NextEra promptly filed a second rehearing request, again refusing to budge on the "deal-killer" conditions. The PUCT again rejected NextEra's rehearing request, issuing a one-sentence order on June 29, 2017.[12]

With the deal now clearly dead, NextEra still took no action to terminate the Merger Agreement. Indeed, it was clear that NextEra would appeal the PUCT's decision to all levels of review, leaving the Debtors no choice but to terminate the Merger

---

[8] *See* Mem. from Commissioner Kenneth W. Anderson, Jr. on Open Meeting of Mar. 30, 2017 (PUCT D.I. 46238).

[9] Notice of Order Entered by the Pub. Util. Comm'n of Tex. Related to the Change of Control Appl. of Oncor (D.I. 11152).

[10] NextEra Energy, Inc.'s Mot. for Reh'g Filed Before the Pub. Util. Comm'n of Tex., Adv. Pro. No. 17-50479-CSS (D.I. 6-7).

[11] Notice of Order Entered by the Pub. Util. Comm'n of Tex. in the Admin. Proceeding Related to the Change of Control Appl. of Oncor (D.I. 11325).

[12] Notice of Order Entered by the Pub. Util. Comm'n of Tex. in the Admin. Proceeding Related to Change of Control Appl. of Oncor Elec. Delivery Co. (D.I. 11398).

Agreement and risk triggering the Termination Fee or else incur months or years of continued interest and fee obligations.

On July 7, 2017, the Debtors terminated the Merger Agreement and entered into a merger agreement with Berkshire Hathaway Energy Company and related entities (collectively, "Berkshire"). The Debtors terminated the NextEra Merger Agreement based on both NextEra's failure to obtain regulatory approval and breach of the Merger Agreement, while reserving their rights to assert other grounds for termination.[13] Thereafter, the Debtors focused on closing a competing transaction with Berkshire.

On July 29, 2017, Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott") filed *The Elliott Funds' Motion to Reconsider in Part the September 19, 2016 Order [D.I. 9584] Approving the NextEra Termination Fee* (the "Motion to Reconsider").[14] The Debtors and NextEra objected to the Motion to Reconsider.[15]

On August 23, 2017, the Debtors abandoned the proposed transaction with Berkshire and pivoted to a reorganization plan in which Sempra Energy ("Sempra") would acquire Oncor for approximately $9.45 billion. The PUCT eventually approved

---

[13] *See* Notice of Filing of Termination Ltrs. (D.I. 11424).

[14] D.I. 11636.

[15] D.I. 11879 and 11876, respectively.

the Sempra merger. Subsequent to the PUCT approval of the transaction, the Bankruptcy

Court approved the Sempra merger pursuant to a confirmed plan.[16]

On September 19, 2017 (one year to the day from entry of the Termination Fee

Order), the Court held a hearing on the Motion to Reconsider on a stipulated record.[17]

Thereafter, the Court issued its Opinion and Order (collectively, the "Reconsideration

Decision") granting the Motion to Reconsider.[18]  The Reconsideration Decision is

currently on appeal before the United States Circuit Court of Appeals for the Third

Circuit.[19]

While the Reconsideration Decision was pending before the Third Circuit, NextEra

filed the *Application of NextEra Energy, Inc. For Allowance and Payment of Administrative

Claim* (the "Application"),[20] seeking approximately $60 million pursuant to section 503(b)

of the Bankruptcy Code for NextEra's costs and expenses incurred in attempting to close

the Merger Agreement.  In the Application, NextEra identifies several categories of

expenses for which it seeks administrative expense status, including PUCT approval

expenses, other regulatory expenses, financing expenses, professional fees, integration

---

[16] *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 1 of the Bankruptcy Code* (D.I. 12763, Feb. 27, 2018).

[17] *See* D.I. 11716.

[18] *In re Energy Future Holdings Corp.*, 575 B.R. 616 (Bankr. D. Del. 2017) (the "Reconsideration Opinion") and *Order Granting the Motion to Reconsider of Elliott Associates, L.P and Denying the Application of NextEra Energy Inc. for Payment of Administrative Claim* (D.I. 12075) (the "Reconsideration Order," and together with the Reconsideration Opinion, the "Reconsideration Decision").

[19] 3d. Cir. Case No. 18-1109.

[20] D.I. 12671.

expenses, and marketing and communications expenses (collectively, the "NextEra Expenses").

Thereafter, Elliott filed the Motion to Dismiss[21] seeking dismissal or, in the alternative, entry of summary judgment denying and disallowing NextEra's $60 million administrative expense claim for the NextEra Expenses (the "Administrative Expense Claim").

## ANALYSIS

### A. Standard of Review

Elliott's motion seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to these proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'"[22] At this stage in the proceeding, it is not the question of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[23] Since the *Twombly* and *Iqbal* decisions, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading."[24] This new standard requires "a plaintiff to plead more than the possibility of relief to survive a motion to

---

[21] D.I. 12935.

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).

[23] *Scheuer v. Rhodes*, 416 U.S. 232, 236, abrogated on other grounds by, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *see also Rosener v. Majestic Mgmt., Inc.* (*In re OODC, LLC*), 321 B.R. 128, 134 (Bankr. D. Del. 2005).

[24] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

9

dismiss."[25] It is insufficient to provide "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."[26] Under the heightened standard, a complaint "must contain either direct or indirect allegations respecting all the material elements necessary to sustain recovery under some *viable* legal theory."[27] The Court, in order to determine whether a claim meets this requirement, must "draw on its judicial experience and common sense."[28] In *Fowler*, the Third Circuit articulated a two-part analysis to be applied in evaluating a complaint.[29] First, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."[30] Second, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"[31]

In the alternative, Elliott seeks partial summary judgment on these issues. Federal Rule of Civil Procedure 56 is made applicable to these adversary proceedings by Federal Rule of Bankruptcy Procedure 7056 and directs that summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and the movant is

---

[25] *Id.*

[26] *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

[27] *Twombly*, 550 U.S. at 562.

[28] *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 34 (Bankr. D. Del. 2011).

[29] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

[30] *Id.*

[31] *Id.* at 211.

entitled to judgment as a matter of law."[32] Summary judgment is designed "to avoid trial

or extensive discovery if facts are settled and the dispute turns on an issue of law."[33]

## B. The Merger Agreement Bars NextEra's Recovery of An Administrative Expense Claim

Section 6.7 of the Merger Agreement provides in full that:

> Expenses. The Surviving Company shall pay all charges and expenses, including those of the Exchange Agent, in connection with the transactions contemplated in Article IV. Except as otherwise provided in Section 6.3, Section 6.18, Section 6.19, Section 6.20 and Section 6.22 or any administrative expenses of the Debtors' estates addressed in the Plan of Reorganization, whether or not the Merger is consummated, all costs and expenses incurred in connection with this Agreement and the Closing Date Transactions and the other transactions contemplated by this Agreement shall be paid by the party incurring such expense.[34]

Further, Section 8.5(b) of the Merger Agreement defines the "Termination Fee" as "an

amount equal to $275,000,000, inclusive of all expense reimbursements, including all

reasonable and documented professional fees of [NextEra] and [EFH Merger Co.,

LLC]."[35]

---

[32] Fed. R. Civ. P. 56(a); *see also In re Delta Mills, Inc.*, 404 B.R. 95, 103 (Bankr. D. Del. 2009).

[33] *Delta Mills*, 404 B.R. at 104.

[34] *See* D.I. 9190, Merger Agreement § 6.7(c). Section 6.3 of the Merger Agreement provides that in the event EFH and NextEra agree in writing on the use of common counsel or consultants with respect to the negotiation, preparation, or filing of any necessary consent, registration, approval, permit, or authorization under Section 6.3(a), EFH and NextEra will share equally the fees and expenses of such counsel and consultants. *See* Merger Agreement § 6.3(a)(ix). Sections 6.18, 6.19, 6.20, and 6.22 of the Merger Agreement provide that NextEra will reimburse, indemnify, and/or hold EFH and certain of its affiliates and subsidiaries harmless with respect to costs and expenses incurred by EFH or any affiliates and subsidiaries thereof in connection with certain actions taken in connection with the merger transaction. *Id.* §§ 6.18(c), 6.19(g), 6.20(b) and (c), and 6.22(c). These provisions do not create any right of NextEra to be reimbursed by the Debtors or the estates for costs and expenses incurred by NextEra.

[35] Merger Agreement § 8.5.

NextEra asserts that Section 6.7 differentiates between expenses that qualify as administrative expenses, which are recoverable, and those which do not qualify as administrative expenses, which must be paid by the party who incurs them. NextEra further asserts that, *if* NextEra recovers its Termination Fee, then that amount will be deemed inclusive of NextEra's expenses pursuant to Section 8.5 of the Merger Agreement; but absent such recovery, it is entitled, under Section 6.7, to recover administrative expenses.

The Court disagrees and finds as a matter of law that Section 6.7 of the Merger Agreement bars NextEra from asserting an administrative expense claim against the Debtors' estates. The Merger Agreement provides for interpretation of the contract under Delaware Law.[36]

> Under Delaware law, contract interpretation is a question of law. A court applying Delaware law to interpret a contract is to effectuate the intent of the parties. Accordingly, the Court must first determine whether a contract is unambiguous as a matter of law. If the language of the contract is unambiguous, the Court interprets the contract based on the plain meaning of the language contained on the face of the document. A contract is ambiguous only if it is fairly or reasonably susceptible to different interpretations.[37]

---

[36] Merger Agreement § 9.5.

[37] *JFE Steel Corp. v. ICI Americas, Inc.*, 797 F. Supp. 2d 452, 469 (D. Del. 2011) (internal citations omitted). *See also In re Tribune Co.*, 472 B.R. 223, 246 (Bankr. D. Del. 2012), *aff'd in part, vacated in part*, No. 12-CV-1072 GMS, 2014 WL 2797042 (D. Del. June 18, 2014), *aff'd in part, rev'd in part sub nom. In re Tribune Media Co.*, 799 F.3d 272 (3d Cir. 2015); *In re NextMedia Grp., Inc.*, 440 B.R. 76, 79–80 (Bankr. D. Del. 2010), *aff'd sub nom. In re NextMedia Grp. Inc.*, No. BR 09-14463 PJW, 2011 WL 4711997 (D. Del. Oct. 6, 2011) ("If the ordinary meaning of the contract language is clear and unequivocal, a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties did not assent." (citations and internal modifications omitted)).

The Court finds that the Merger Agreement is unambiguous. Nothing in the Reconsideration Decision makes the Merger Agreement ambiguous, rather the Court specifically held that the "record," including colloquy with the Debtors' counsel and financial advisor, was confusing.[38]

In *Madison Equities*,[39] a potential purchaser sought an administrative expense for costs incurred in pursuing a sale transaction with the debtor notwithstanding that the debtor did not have any postpetition contractual obligation to reimburse the potential purchaser for its costs.[40] The court held that a claim under section 503(b)(1) must have factual validity as well as a satisfactorily basis "such as contract or tort."[41] The court further found that

---

[38] *Energy Future Holdings Corp.*, 575 B.R. at 632 ("In one instance a witness clearly stated that the Debtors would be liable for the Termination Fee if the PUCT declined to approve the NextEra Transaction and the Debtors terminated the Merger Agreement. But that testimony is countered with a contrary statement by counsel on the issue. Moreover, at no point did anyone bring forward the critical fact that NextEra had no economic incentive to terminate the Merger Agreement. Indeed, no facts were sufficiently drawn to the Court's attention such that the Court might have realized the point on its own accord."). The Court further held:

> The Court does not believe the Debtors acted improperly or with malice. The reality is that the NextEra Transaction was extraordinarily complicated and the Debtors focused their attention on whether the Termination Fee was market not on when the Termination Fee might be payable in what the Debtors viewed was the unlikely event the PUCT declined to approve the NextEra Transaction. As for NextEra, the record indicates it was happy to remain silent. Whether NextEra realized the Court misapprehended the facts to NextEra's benefit is unknown but, if it did, it certainly made no effort to clarify the record.

*Id.* at 636 n. 79.

[39] *Madison Equities, LLC v. Condres (In re Theatre Row Phase II Assocs.)*, 385 B.R. 511 (Bankr. S.D.N.Y. 2008).

[40] *Id.* at 519-522.

[41] *Id.* at 521 (holding that the claim "fails because it cannot show the necessary contractual (or tort) basis on which to impose liability").

> [t]he Debtor never agreed with Madison to pay or reimburse
> Madison for any of its expenses in pursuing a deal for the
> Property. Nor could the Debtor have agreed to do so without
> court approval since any such contract would not have been
> in the ordinary course of business.[42]

Here, the court is faced with much of the same facts. The Debtors never agreed to pay

NextEra's expenses that related to obtaining regulatory approval before the PUCT; in

fact, the Merger Agreement expressly provides that each party must carry its own

expenses in connection with the merger transaction.[43] Thus NextEra can point to no

contractual language on which the court may impose liability.

The plain language of Section 6.7 of the Merger Agreement creates two exceptions:

(i) specifically enumerated sections of the Merger Agreement *or* (ii) are administrative

expenses of the Debtors. NextEra's Administrative Expense Claim does not fall into

either of these exceptions. Consequently, per the language of the Merger Agreement all

costs and expenses incurred in connection with the Merger Agreement *shall* be paid by

the party incurring such expenses. As a result, NextEra is barred by the terms of Merger

Agreement from seeking section 503(b) claim in connection with NextEra's efforts to

obtain approval of the Merger Agreement.

## C. Court's Retroactive Reconsideration of the Termination Fee Does Not Affect NextEra's Legal and Economic Interests

NextEra contends that *if* the Court determines that Section 6.7 requires parties to

otherwise bear their on expenses (which it does) *then* NextEra should not be bound by

the expense limitation because of the Court's reconsideration of the Termination Fee

---

[42] *Id.* at 525.

[43] Merger Agreement § 6.7(c).

provisions in the Reconsideration Decision. NextEra asserts that under the express terms

of Section 8.5 of the Merger Agreement (before the Reconsideration Decision), the

Termination Fee would have been payable upon termination by the Debtors following

regulatory disapproval.[44] The crux of NextEra's argument is that the Court's retroactive

disapproval of the Termination Fee was "materially inconsistent" with the legal and

economic effect of the Merger Agreement as entered into by the parties.

NextEra's argument that the Court rewrote and materially altered the Merger

Agreement fails. The Reconsideration Decision did not eviscerate the Merger Agreement,

rather, the Court carved out one specific instance where, if the record had been clear, the

Court would not approve the Termination Fee in the Merger Agreement.[45] Again, it is

---

[44] The Debtors filed an adversary proceeding seeking a declaration that the Termination Fee would not be due and payable. *See* Debtors' First Amended Adversary Complaint, Adv. No. 17-50942, D.I. 41. The Debtors' asserted basis for that relief is NextEra's alleged breach of its obligations under the Merger Agreement. This adversary proceeding (Adv. No. 17-50942) was stayed pending further order of the Court. *See* Reconsideration Order at ¶ 7.

[45] The Reconsideration Decision specifically states that the Termination Fee is authorized in all circumstances except that the PUCT declines to approve the transaction contemplated in the Merger Agreement :

> 5.      The Termination Fee Order is hereby amended to delete in its entirety the language at paragraph 4 of such order and to replace it with the following:
>
> > The Termination Fee, upon the terms and conditions of the Merger Agreement, is approved in part and disallowed in part. The Termination Fee is disallowed in the event that the PUCT declines to approve the transaction contemplated in the Merger Agreement and, as a result, the Merger Agreement is terminated, regardless of whether the Debtors or NextEra subsequently terminates the Merger Agreement. In those circumstances, the EFH/EFIH Debtors are not authorized to pay the Termination Fee as a qualified administrative expense or otherwise. The Termination Fee is otherwise approved. **Subject to the forgoing ruling, the EFH/EFIH Debtors are authorized and directed to pay the**

imperative to reiterate that the Court had a fundamental misunderstanding of the critical

facts regarding when the Termination Fee would be paid.  As held in the Reconsideration

Decision:

> The Court had a fundamental misunderstanding of the
> critical facts when it approved the Termination Fee.  Despite
> the Court's direct question as to whether the Termination Fee
> would be payable if the PUCT declined to approve the
> NextEra Transaction, the record is incomplete and confusing
> on that fundamental point.   The Court simply did not
> understand that if the PUCT declined to approve the NextEra
> Transaction  and  the  Debtors  (as  opposed  to  NextEra)
> terminated  the  Merger  Agreement  the  Termination  Fee
> would be payable to NextEra.  Despite the obvious confusion
> on this point neither the Debtors nor NextEra sought to clarify
> the record and affirmatively state that NextEra would receive
> the Termination Fee if the Debtors terminated the Merger
> Agreement.[46]

---

> Termination Fee as an allowed administrative expense
> to the extent it becomes due and payable pursuant to
> those terms and conditions of the Merger Agreement
> that are approved in this Order, at the time and in the
> manner provided for in the Merger Agreement and this
> Order, without any further proceedings before, or order
> of, the Court; provided, however, that in the event that
> the Termination Fee becomes payable in accordance with
> section 8.5(b) of the Merger Agreement and with this
> Order, . . . .

Reconsideration Order at ¶ 5 (D.I. 12075) (emphasis added).

[46] *Energy Future Holdings Corp.*, 575 B.R. at 632.  The Court further held:

> The confusing record was critical because in combination with another
> fact that was not mentioned, i.e., the Merger Agreement had no time limit,
> the reality was that **under no foreseeable circumstances would NextEra
> terminate the Merger Agreement if the PUCT declined to approve the
> NextEra Transaction.**  Why? Because NextEra had the ability to hold out
> and to pursue numerous motions for reconsideration and a fruitless
> appeal until the Debtors were forced by economic circumstances to
> terminate the Merger Agreement, which is exactly what occurred.  If the
> Court had understood these critical facts it would not have approved this
> provision of the Termination Fee.

*Id.* at 632–33 (footnote omitted) (emphasis supplied).

Furthermore, Section 8.5(b) of the Merger Agreement states that *if* the Merger Agreement was terminated "*then*, subject to the approval of the Bankruptcy Court" the Termination Fee would be paid.[47]  Furthermore, as the Court held: "NextEra cannot reasonably have relied on the Termination Fee Order when it knew the order was premised on an incomplete and confusing record."[48]

NextEra's purported reliance on the initial approval of the Merger Agreement has already been rejected by the Court and, the Court's reconsideration of a small portion of the Merger Agreement does not affect the plain language of Section 6.7 of the Merger Agreement.  Thus, the Court must reject NextEra's renewed plea to disregard additional provisions of the Merger Agreement.

## D. The Reconsideration Decision Does Not Prevent NextEra from Seeking an Administrative Expense Claim

In the Reconsideration Decision, the Court held that the Termination Fee under the limited circumstances of denial of regulatory approval by the PUCT and the need for the Debtors to terminate the Merger Agreement in the face of NextEra's fruitless appeals

---

[47] Merger Agreement § 8.5(b) (emphasis added).  Section 8.5(b) of the Merger Agreement states in relevant part:

> If this Agreement is terminated pursuant to this Article VIII and any alternative transaction is consummated (including any transaction or proceeding that permits the E-Side Debtors that are the direct or indirect owners of Oncor Holdings to emerge from the Chapter 11 Cases) pursuant to which neither Parent nor any of its Affiliates will obtain direct or indirect ownership of 100% of Oncor Holdings and Oncor Holdings' approximately 80% equity interest in Oncor, **then, subject to the approval of the Bankruptcy Court,** no later than five (5) days following the consummation of such alternative transaction, the Company and EFIH shall pay to Parent the Termination Fee (as defined below) . . . . .

Merger Agreement § 8.5(b) (emphasis added).

[48] *Energy Future Holdings Corp.*, 575 B.R. at 631.

of the PUCT determination because it "cannot provide an actual benefit to the debtor's estate sufficient to satisfy the *O'Brien* standard."[49]   Elliott asserts in its reply brief that this ruling precludes reimbursement of NextEra's administrative expense claim.[50]  The Court disagrees.  In the Reconsideration Decision, the Court limited its ruling to the payment of the Termination Fee in the limited circumstances where the PUCT denied regulatory approval *and* when the Debtors were forced to terminate the Merger Agreement.

> Here, the Termination Fee was payable to NextEra even if the PUCT declined to approve the NextEra Transaction and the Debtors (as opposed to NextEra) terminated the Merger Agreement. As discussed above, this was a critical point. Payment of a termination or break-up fee when a court (or regulatory body) declines to approve the related transaction cannot provide an actual benefit to a debtor's estate sufficient to satisfy the *O'Brien* standard. . . . This issue was exacerbated in this case by the fact that the Merger Agreement did not have a time limit for approval and the Termination Fee was payable if the Debtors terminated the Merger Agreement. This incentivized NextEra to pursue multiple motions for reconsideration and a fruitless appeal strategy to force the Debtors to terminate the Merger Agreement to pursue an alternative transaction.  Allowance of a termination or break-up fee when a debtor chooses to pursue a higher and better offer is appropriate.  In this case, the Debtors were forced to terminate the Merger Agreement to pursue a lower offer because NextEra had the Debtors in a corner.  Payment of a termination fee under those circumstances, which would have been predictable had the Court properly understood the facts, could not provide an actual benefit to a debtor's estate sufficient to satisfy the *O'Brien* standard.[51]

---

[49]  *Id.* at 635 (citing *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 528 (3d Cir. 1999)).

[50]  D.I. 12970 at pp. 12-15.

[51]  *Energy Future Holdings Corp.*, 575 B.R. at 634–35 (footnote omitted).

Here, the Court is **not** considering NextEra's claim to the Termination Fee, it is considering NextEra's administrative expense claims related to the work performed in seeking regulatory approval of the Merger Agreement.  The ruling in the Reconsideration Decision does not stretch to apply to *any* claim that NextEra may have; as such, the Court summarily dismisses this argument and limits the Reconsideration Decision to the facts and circumstances as discussed and ruled upon therein.

### E.  Even if NextEra Had a Contractual or Equitable Basis to Obtain an Administrative Expense, NextEra Does Not Meet the Legal Burden Under Section 503(b)(1)

Assuming *arguendo* that the express terms of the Merger Agreement did not bar the relief sought in the Application, NextEra's expenses do not qualify as administrative expenses under section 503(b)(1) of the Bankruptcy Code.[52]  Section 503(b)(1) allows as administrative expenses the "actual, necessary costs and expenses of preserving the estate."[53]  NextEra, as applicant, carries the "'heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets.'"[54]

In *In re Women First Healthcare, Inc.*,[55] Judge Walrath considered whether Sun Pharmaceuticals Industries, Ltd. ("Sun") would be entitled to an administrative expense

---

[52] "To establish an administrative claim under this section, there must be (1) a post-petition transaction between the claimant and the estate and (2) a benefit to the estate."  *In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005) (citations omitted).  In the case *sub judice*, there is no question that there was a post-petition transaction between NextEra and the estates.

[53] 11 U.S.C. § 503(b)(1).

[54] *O'Brien Envtl. Energy*, 181 F.3d at 533 (quoting *In re O'Brien Environmental Energy, Inc.*, No. 94-26723, slip op. at 30 (Bankr. D.N.J. Nov. 8, 1996)).

[55] *Women First Healthcare, Inc.*, 332 B.R. 115.

claim. Therein, Sun was the stalking horse and successful (and only) bidder for an asset
of the debtor. After the sale order approving the sale of the asset to Sun was entered by
the Court, another bidder, Mutual Pharmaceutical Company, Inc. ("Mutual") contacted
the debtors and Sun regarding the purchase of the asset. Mutual filed a motion for
reconsideration of the Sun sale order, alleging that the sale motion had not been properly
served and claiming an interest in the inventory and intellectual property related to the
asset. Judge Walrath ultimately held that the sale motion had not been properly served,
granted the motion for reconsideration, vacated the Sun sale order, and authorized Sun
to file a motion, subject to the rights of all parties to object, for administrative expenses
for Sun's expenses. The debtors held another auction and Mutual was the highest and
best bidder for the debtors' asset. Sun filed its motion for the allowance and payment of
an administrative expense for the costs it incurred in reliance on the Sun sale order, which
was contested by Mutual and the United States Trustee. Sun pursued its alleged
administrative claim under section 503(b)(1) based on the tort of negligent
misrepresentation (alleging that the debtors negligently misrepresented to it that the
debtors had provided proper notice of the bid procedures order and the sale motion).
Judge Walrath held an evidentiary hearing on Sun's administrative expense motion.[56]

At trial, Sun presented evidence seeking to establish that it conferred a benefit on
the estate from the time the Sun sale order was entered until it was vacated. During this
time, Sun completed its due diligence and performed other activities necessary to close

---

[56] *Id.* at 118-121.

the transaction. Judge Walrath held that "[t]he relevant inquiry is not the motivation of the actor, but whether the estate benefitted by the actions taken. Thus, in the event the Court finds Sun's actions benefitted the estate, the costs of those actions will be allowed despite any self-interest."[57] Judge Walrath also concluded that Sun's actions in opposing Mutual's motion for reconsideration and reopening the auction did not confer a benefit on the estate; but yet, Sun's actions in trying to expeditiously close the transaction did, indeed, benefit the debtors' estate because it was very important for the debtors to close the sale of the asset as soon as possible.[58]

This case is distinguishable from *Women First*. First, after the PUCT denied approval of the merger between Oncor and NextEra, unlike Sun who was ready, willing, and *able* to close the transaction in *Women First*, NextEra was *unable* (due to lack of regulatory approval) to consummate the transaction contemplated in the Merger Agreement. NextEra argues that it is akin to Sun because NextEra was willing to close the merger. However, this has nothing to do with NextEra's willingness to close the NextEra Transaction, because without regulatory approval NextEra would never be able to close the NextEra Transaction.

Second, Judge Walrath awarded administrative expenses due to the procedural deficiency in the notice of the sale motion because the claims resulted from a post-petition

---

[57] *Id.* at 122.

[58] *Id.* at 122-23.

tort committed by the debtor.[59] NextEra suggests that its misapprehension of fact and law is akin to the deficient sale notice in *Women First*. However, there are no alleged procedural defects nor any tort allegations in this case. The only defect here, was the Court's misunderstanding of the facts at the time of its original approval of the Termination Fee.

Third, in *Women First*, there was a competitive bidding process wherein Mutual made the highest and best offer for the debtor's asset; here, there was no competitive bidding process and the Debtors eventually closed a transaction with Sempra for substantially less value. As the Court found in the Reconsideration Decision and again finds here, if the Debtors could have closed the NextEra Transaction they would have; but regulatory approval was necessary and not received;[60] the Debtors were left with no choice but to investigate an alternative transaction for less value.[61] In *Women First*, the debtor was able to pursue a high and better offer for its asset, here, the Debtors were stuck with NextEra's "fruitless appeal strategy" and had to terminate in order to pursue a "lower offer" for its Oncor assets.

---

[59] *Id.* at 129 (awarding administrative claim "due to the unique circumstances warranting the reconsideration of the Sun Sale Order").

[60] *Energy Future Holdings Corp.*, 575 B.R. at 626 ("With the deal now clearly dead, NextEra still took no action to terminate the Merger Agreement. Indeed, it was clear that NextEra would appeal the PUCT's decision to all levels of review, leaving the Debtors no choice but to terminate the Merger Agreement and risk triggering the Termination Fee or else incur months or years of continued interest and fee obligations.").

[61] *Id.* at 635 ("[T]he Merger Agreement did not have a time limit for approval and the Termination Fee was payable if the Debtors terminated the Merger Agreement. This incentivized NextEra to pursue multiple motions for reconsideration and a fruitless appeal strategy to force the Debtors to terminate the Merger Agreement to pursue an alternative transaction. Allowance of a termination or break-up fee when a debtor chooses to pursue a higher and better offer is appropriate. In this case, the Debtors were forced to terminate the Merger Agreement to pursue a lower offer because NextEra had the Debtors in a corner.").

NextEra argues that its efforts to close the merger served as a "roadmap" for structuring and obtaining approval of the Sempra deal.  As Judge Walrath stated in *Women First*, "[t]he relevant inquiry is not the motivation of the actor, but whether the estate benefitted by the actions taken."[62]   Similarly, NextEra's motivation is not in question; thus, the inquiry is limited to whether the estate benefitted by NextEra's action. Here, NextEra failed to satisfy a closing condition of obtaining regulatory approval from the PUCT, which forced the Debtors to find an alternative transaction at far less value;[63] thus, there was no benefit to the estate.  Furthermore, there are no allegations of "unique circumstances" of a postpetition tort committed by the Debtors that would call into play the fundamental fairness doctrine relied on in *Women First*.[64]

As a result, NextEra cannot meet its heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets.  Furthermore, there are no unique circumstances in the case *sub judice* akin to those in *Women First*.  As a result, NextEra does not have a claim pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

---

[62] *In re Women First Healthcare, Inc.*, 332 B.R. at 122.

[63] *Id.* ("reopening the auction did benefit the estate (by increasing the price the Debtor received for the assets by more than $2.5 million).").

[64] *Id.* at 123 (citing *Reading Co. v. Brown*, 391 U.S. 471, 479 (1968)).

**F.  NextEra Does Not have An Administrative Claim Pursuant to Section 503(b)(3)(D)**

In its Application and again in its objection to the Motion to Dismiss, NextEra

asserts, as an alternative ground, that it is entitled to an administrative claim under

section 503(b)(3)(D) for making a substantial contribution to the Debtors' Chapter 11

cases.[65]  NextEra asserts that, through one of its subsidiaries, it was a creditor of EFIH

from the time it entered into the Merger Agreement through the end of the period for

which NextEra seeks allowance of its expenses.[66]

Section 11 U.S.C. § 503(b)(3)(D) provides as follows:

> (b) After notice and a hearing, there shall be allowed,
> administrative expenses ... including —
>
> . . .
>
>> (3) the actual, necessary expenses, other than
>> compensation and reimbursement specified in
>> paragraph (4) of this subsection, incurred by . . .
>>
>> (D) a creditor, an indenture trustee, an equity
>> security holder, or committee representing
>> creditors or equity security holders other than a
>> committee appointed under section 1102 of this
>> title, in making a substantial contribution in a
>> case under chapter 9 or 11 of this title; . . . [67]

Thus, "[t]he services engaged by creditors, creditor committees and other parties

interested in a reorganization are presumed to be incurred for the benefit of the engaging

party and are reimbursable if, but only if, the services 'directly and materially

---

[65] *See* Application (D.I. 12671) at p. 19, n. 91 and Objection (D.I. 12935) at p. 12, n. 21.

[66] *See Declaration of Mark Hickson in Support of Objection of NextEra Energy, Inc. to Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott Funds to (i) Dismiss Application of NextEra for Allowance and Payment of Administrative Expense, or, in the Alternative, (ii) Grant Summary Judgment Denying and Disallowing Such Administrative Expense* (D.I. 12937) at pp. 4-5.

[67] 11 U.S.C. § 503(b)(3)(D).

contributed' to the reorganization."[68]    The Third Circuit has described section

503(b)(3)(D) as follows:

> Subsection 503(b)(3)(D) represents an accommodation
> between the twin objectives of encouraging "meaningful
> creditor participation in the reorganization process," and
> "keeping fees and administrative expenses at a minimum so
> as to preserve as much of the estate as possible for the
> creditors." Inherent in the term "substantial" is the concept
> that the benefit received by the estate must be more than an
> incidental one arising from activities the applicant has
> pursued in protecting his or her own interests. Creditors are
> presumed to be acting in their own interests until they satisfy
> the court that their efforts have transcended self-protection.
> Most activities of an interested party that contribute to the
> estate will also, of course, benefit that party to some degree,
> and the existence of a self-interest cannot in and of itself
> preclude reimbursement. Nevertheless, the purpose of
> § 503(b)(3)(D) is to encourage activities that will benefit the
> estate as a whole, and in line with the twin objectives of
> § 503(b)(3)(D), "substantial contribution" should be applied
> in a manner that excludes reimbursement in connection with
> activities of creditors and other interested parties which are
> designed primarily to serve their own interests and which,
> accordingly, would have been undertaken absent an
> expectation of reimbursement from the estate.[69]

It is important to note that in this case, NextEra was not undertaking regulatory approval

of the Merger Agreement as a creditor, rather it was undertaking the potential merger as

the "purchaser." NextEra's actions were wholly related to its desire to own the Oncor

assets.

"As a general proposition, expenses incurred by a creditor with respect to

participating in the purchase of a chapter 11 debtor's assets are not "incurred by a creditor

---

[68] *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 943–44 (3d Cir. 1994) (citations omitted).

[69] *Id.* at 944 (citations and parentheticals omitted).

in making a substantial contribution" to a chapter 11 case within the meaning of section 503(b)(3)(D). Creditors' actions that may benefit the estate are not substantial for purposes of this section unless they also directly, materially, and demonstrably benefit the creditors generally, foster and enhance, rather than retard or interrupt the progress of reorganization, and are considerable in amount, value, or worth."[70]

There are two reasons why NextEra's claim under section 503(b)(3)(D) fails. First, NextEra asserts that it is a creditor *through one of its subsidiaries*.[71] NextEra is not a "creditor." Section 101(10) of the Bankruptcy Code defines "creditor" as:

> (10) The term "creditor" means—
>
>> (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
>>
>> (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or
>>
>> (C) entity that has a community claim.[72]

Here, NextEra has made no claim or showing that NextEra itself is a creditor of the Debtors' estates.

Second, even if NextEra were a creditor, NextEra cannot show a substantial contribution to the estates. Here the work performed by NextEra was solely related to NextEra's efforts to close on the transaction in the Merger Agreement, there was no

---

[70] *In re Kidron, Inc.*, 278 B.R. 626, 634 (Bankr. M.D. Fla. 2002) (but allowing a substantial contribution claim for an unsuccessful bidder due to the need to "level the playing field" between the stalking horse bidder and the claimant-unsuccessful bidder).

[71] Objection at p. 12, n. 21.

[72] 11 U.S.C.A. § 101(10).

competitive bidding process nor was any transaction consummated. In *In re S.N.A. Nut Co.*,[73] the debtor filed a motion to sell substantially all of its assets with a stalking horse bidder. The sale procedures order contained provisions for a break-up fee and an expense reimbursement. The bid procedures also contemplated the stalking horses' ability to seek reimbursement as an administrative expense of the court did not authorize the debtor to sell its assets. At least two other bids were filed with the court but none of the bids received, including the stalking horse's bid, were adequate, thus, no sale occurred and the debtor withdrew its sale motion. The stalking horse then applied for reimbursement of costs and expenses. The *S.N.A. Nut* court held that as any money a bidder received through a bidding incentive comes out of the pockets of the creditors of the estate, there must be a direct relationship between the reimbursement an unsuccessful buyer receives and the benefit to the estate from the unsuccessful buyer's bid.[74] The court continued that an "opportunity for other bidders to bid higher than [the stalking horse] without a subsequent sale is of no benefit to the estate."[75] NextEra was not a stalking horse and did not induce other bidders to give higher and better offers. Although NextEra's proposed merger was approved by the Bankruptcy Court, the merger transaction did not obtain regulatory approval from the PUCT. NextEra was unable to close on the transaction to obtain ownership of the Debtors' Oncor assets. As a result, the Debtors were forced to find an alternative transaction at a much lower purchase price.

---

[73] *In re S.N.A. Nut Co.*, 186 B.R. 98, 100 (Bankr. N.D. Ill. 1995).

[74] *Id.* at 105 (footnote and citation omitted).

[75] *Id.* at 105-06.

NextEra's proposed merger offered no benefit to the estate, and in fact, cost the estate time and money while NextEra sought approval, had the transaction denied by the PUCT, and embarked on its appeals process.

As a result, NextEra's claim under section 503(b)(3)(D) must fail.

## CONCLUSION

For the reasons set forth above, the Court will GRANT summary judgement and finds that, pursuant to the plain language of the Merger Agreement Section 6.7, NextEra is barred, as a matter of law, from seeking an administrative expense claim related to the work performed seeking approval of the failed NextEra Transaction. The Court will further GRANT Elliott's Motion to Dismiss and finds that *even if* NextEra could seek an administrative expense claim under the Merger Agreement, NextEra is not entitled to an administrative expense claim under either 11 U.S.C. § 503(b)(1)(A) or (b)(3)(D). The Court will issue an order.