

**ROPES & GRAY LLP**
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

August 23, 2018

<u>**VIA ECF AND HAND DELIVERY**</u>

The Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

> Re:   *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS) (Bankr. D. Del.)
> Status Conference Regarding Substantial Contribution Fee Requests

Dear Judge Sontchi:

We write on behalf of Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "<u>Elliott</u>") in connection with the status conference scheduled for August 27, 2018 at 2:00 p.m. (ET).  The status conference was scheduled in response to a letter to the Court dated July 17, 2018 from the Fee Committee (the "<u>Status Conference Request</u>"), requesting the Court's guidance as to the appropriate procedures and standards that the Fee Committee should apply in its review of the substantial contribution claim requests (the "<u>Fee Requests</u>") received from the following parties:  (i) Elliott; (ii) American Stock Transfer & Trust Company, LLC, as indenture trustee (the "<u>EFH Trustee</u>"); and (iii) Fidelity Management & Research Company ("<u>Fidelity</u>").[1]  As set forth in the Status Conference Request, the Fee Committee states that each of the Fee Requests will be approached "slightly differently" and thus, in essence, the Fee Committee will not apply a single uniform standard when it makes its recommendation as to the allowed amounts of the Fee Requests to this Court regarding the three approved substantial contribution claims in the E-Side Debtors' chapter 11 cases.  *See* Status Conference Request at 2.

For the reasons set forth below, Elliott disagrees with the Fee Committee's proposed approach on both legal and factual grounds and maintains that a single uniform standard consistent with this Court's prior opinions, the Fee Committee's review of the T-Side substantial contribution claims and Third Circuit precedent must be used to determine the allowed amounts of the Fee Requests.

---

[1]   Capitalized terms used but not defined herein have the meanings set forth in the *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, entered on February 27, 2018 [D.I. 12763] (the "<u>Sempra Confirmation Order</u>").

ROPES & GRAY LLP

- 2 -

## A.    Relevant Background

On April 3, 2018, this Court sent a letter to the Chair of the Fee Committee (the "April Direction") with respect to Elliott's and the EFH Trustee's respective substantial contribution claims requesting that "the Fee Committee review the time entries of the professionals to determine whether each task provided a 'substantial contribution' to the Debtors' estates as interpreted by the Third Circuit in *Lebron v. Mechen Financial Inc.*, 27 F.3d 937 (3d Cir. 1994)."  [D.I. 12896]. Subsequently, on April 24, 2018, the Fee Committee delivered a memorandum (the "Fee Committee Memo") to Elliott (and presumably other substantial contribution claim applicants) setting forth procedures and standards with which the Fee Committee expected substantial contribution applicants to comply in submitting their Fee Requests.  The proposed procedures and standards provided, among other things, that:  (a) "all fee submissions will need to be supported by detailed billing records similar to those submitted in connection with a section 330 fee application," (b) the Fee Committee will "[e]valuate, on a task basis, whether the fees requested fall within the Substantial Contribution Finding," (c) Fee Requests must contain detail consistent with many requirements under Local Rule 2016-2 and the U.S. Trustee Guidelines, and (d) Fee Requests must include expense reimbursement detail, and will be subject to Fee Committee review guidelines, that are substantially similar to expense detail requirements for retained professionals in these cases under sections 327 and 328 of the Bankruptcy Code.  A copy of the Fee Committee Memo is annexed hereto as **Exhibit A**.

In a letter dated May 8, 2018 (the "May Clarification"), the Court clarified its April Direction to the Chair of the Fee Committee stating that such request applied to "*all* applications seeking fees under section 503(b)(3)(D) of the Bankruptcy Code."  [D.I. 13088] (emphasis in original).  As of that date, the only other substantial contribution claim that had been approved by the Court was the one submitted by Fidelity; however, certain asbestos claimants had filed a substantial contribution claim request, which request was subsequently denied by the Court.  [D.I. 13178].  In response to the May Clarification, Fidelity's counsel sent a letter to the Court (the "Fidelity Letter") stating that it believed the Court's April Direction and May Clarification did not apply to Fidelity's substantial contribution claim.  [D.I. 13112].  To date, no response to the Fidelity Letter has been docketed and the Fee Committee has not made clear its position regarding the April Direction to the Fidelity Fee Request.

Elliott has been in contact with the Fee Committee Chair as well as the Fee Committee counsel since receiving the April Direction.  Elliott has advised the Chair and the Fee Committee's counsel that the Fee Committee Memo sets forth procedures that are arguably at odds with the Court's prior orders with respect to the substantial contribution claims, more onerous than the standards and procedures applied with respect to substantial contribution claims in general and the

ROPES & GRAY LLP

- 3 -

T-Side substantial contribution claims in particular,[2] and simply beyond the requirements established by existing case law and controlling precedent.

On May 11, 2018, Elliott submitted its Fee Request, including full invoices, to the Fee Committee, U.S. Trustee, and EFH Plan Administrator Board for the fees and expenses for which Elliott is seeking reimbursement under sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code in accordance with the Sempra Confirmation Order. Notwithstanding its disagreement with the Fee Committee, Elliott made every effort to comply with the Fee Committee Memo by, among other efforts, furnishing a detailed supporting statement in which Elliott, among other things, (a) identified the six categories of "tasks" with respect to which Elliott provided a substantial contribution in these cases, (b) explained why Elliott's efforts with respect to those tasks conferred a substantial contribution within the meaning of section 503(b) of the Bankruptcy Code, and (c) identified the fees incurred by Elliott and its professionals associated with each of the six substantial contribution categories.

Subsequently, Elliott and its counsel met twice with the Chair of the Fee Committee in person and have had several telephone conversations to discuss Elliott's Fee Request and the standard of review applicable to all of the Fee Requests. To date, the parties have not been able to reach an agreement as to the proper standard for reviewing the pending Fee Requests, and Elliott advised the Chair and the Fee Committee's counsel that it disagreed with the Fee Committee's proposal to use different approaches to each Fee Request based on what Elliott maintains are factual distinctions that are irrelevant to the approval of any Fee Request.

**B.      The Court Should Not Approve the Fee Committee Taking "Slightly Different" Approaches to the Fee Requests**

The Fee Committee suggests that because of certain facts, it will be "require[d to take] a slightly different approach" to each of the Fee Requests. Status Conference Request at 2. The purported bases on which the Fee Committee rests its position do not warrant different approaches to the Fee Requests, and there is simply no legal or factual basis for the Fee Committee using or this Court approving a slightly different approach to any of the Fee Requests.

In support of its position, the Fee Committee contends that because the Court made substantial contribution findings in favor of the EFH Trustee in the confirmation order (the "NextEra Confirmation Order") for a plan of reorganization (the "NextEra Plan") that did not go effective and those findings were subsequently included in the Sempra Confirmation Order, the EFH Trustee's Fee Request should be approached differently than Elliott's and perhaps Fidelity's Fee Requests. *See* Status Conference Request at 2. As the Court well knows, the NextEra Plan

---

[2]    If a time entry by time entry analysis was the proper standard of review, it should have been applied to T-Side substantial contribution applicants. On information and belief, such a standard of review was not applied to T-Side applicants, and E-Side substantial contribution claims should not be subject to a different standard of review than T-Side substantial contribution claims as they are all asserted under the same Bankruptcy Code provisions and all arose in the same jointly administered bankruptcy cases.

- 4 -

never went effective.  Thus, by its own terms, the NextEra Plan and NextEra Confirmation Order are null and void.  *See Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 10853], Art. IX.F ("if the Effective Date does not occur before one year following Confirmation . . . the Plan shall be null and void in all respects").  Accordingly, this factual distinction is irrelevant to the review of the EFH Trustee's Fee Request. [3]

In support of its position for treating the Fidelity Fee Request differently from Elliott's and the EFH Trustee's Fee Requests, the Fee Committee relies on the fact that Fidelity's substantial contribution claim was approved in an order entered in March 2017 [D.I. 11050] (the "Fidelity Order"), which order the Fee Committee asserts is a final order.  *See* Status Conference Request at 2.  The Fidelity Order is not, however, a final order.  The Fidelity Order required Fidelity to submit final invoices and undergo a Fee Committee review process, which is identical to the process that applies to the EFH Trustee and Elliott Fee Requests.  It also provided that this Court finally approve the amount of the substantial contribution claim, at a separate hearing to occur *after* an E-Side plan went effective.  [D.I. 11050 at ¶ 5].[4]  Thus, the Fidelity Order is not a final order because it left additional "work to be done" by the Court with respect to Fidelity's substantial contribution claim.  *See Opinion*, dated Oct. 3, 2017 [D.I. 11998] (finding that an order is not final where it left "additional work to be done" by the Court); *United States v. Pelullo*, 178 F.3d 196, 200 (3d Cir. 1999) (an order is only final when "no further work need be done").[5]

Nor is there any basis, as the Fee Committee seems to suggest, to draw a distinction among the Fee Requests based on the time period when each substantial contribution claim purportedly arose or was initially allowed.  *See* Status Conference Request at 2–3.  Each of the three substantial contribution claimants has already been determined to have benefited an E-Side Debtor estate and, thus, granted an allowed substantial contribution claim under section 503(b).  The Fee Committee's role is thus to make a recommendation to the Court as to the allowed amount of those substantial contribution claims.  To do so, the Fee Committee is to determine whether the expenses were reasonable, necessary and actual expenses with respect to the creditor's efforts that the Fee Committee views as having a "causal connection" to the benefits that the creditor contends it provided to the E-Side Debtors' estates.  *In re Worldwide Direct*, 334 B.R. 108, 121–22 (Bankr. D. Del. 2005) (quoting *In re Granite Partners, L.P.*, 213 B.R. 440, 47 (Bankr. S.D.N.Y. 1997)).  It is thus irrelevant *when* the creditor undertook the efforts as the critical determinant is whether those

---

[3]    Because the NextEra Plan is null and void, it is also not a basis for the Fee Committee to apply a slightly different standard to the Fidelity Fee Request, as it suggests.  *See* Status Conference Request at 2.

[4]    This is the same process required with respect to the Elliott and EFH Trustee Fee Requests (D.I. 12763 at ¶ 113); and for all of the applicants, the effective date of the Sempra Plan triggered the Fee Committee review process.

[5]    Even if the Fidelity Order were a final order, the same would be true for the Sempra Confirmation Order approving the EFH Trustee and the Elliott Fee Requests.  No party has appealed the determination that the EFH Trustee and Elliott made substantial contributions and, similar to the Fidelity Order, all that is left open is the amount of their respective substantial contribution claims.  Thus, even if the Fidelity Order were final, it is not a basis for the Fee Committee using a "slightly different approach."

ROPES & GRAY LLP

efforts resulted in a benefit to a debtor's estate. Indeed, this is why it is entirely appropriate for the Court to review substantial contribution claims in hindsight—to determine whether the benefit actually materialized—and why the Court entered orders approving the substantial contribution claims subject to procedures that required that an E-Side plan be effective before reviewing the reasonableness of the amount requested. *See* D.I. 11050 at ¶ 2 (with respect to Fidelity); D.I. 12763 at ¶ 109 (with respect to Elliott and the EFH Trustee); *see also In re Worldwide Direct, Inc.*, 334 B.R. at 121 (noting that it is appropriate to assess a substantial contribution claim "in hindsight").

Therefore, all Fee Requests should be evaluated by the Fee Committee using the same approach as otherwise the Fee Committee process would run afoul of section 503(b) of the Bankruptcy Code, applicable case law, and the prior orders of this Court. Indeed, the Fee Committee's proposed disparate treatment of the Fee Requests is contrary to this Court's direction that the Fee Committee perform the same review "for *all* applications seeking fees under section 503(b)(3)(D) of the Bankruptcy Code." [D.I. 13088] (emphasis in original) and the Court's prior orders subjecting each of the Fee Requests to *identical* review procedures involving the Fee Committee. [D.I. 11050 at ¶¶ 4–7; D.I. 12763 at ¶¶ 111–115].

**C.      The Proper Standard of Review for the Fee Committee's Review of the Fee Requests**

As set forth above, this Court has already found that Fidelity, the EFH Trustee, and Elliott all made a substantial contribution to one of the E-Side Debtors and, thus, all have an allowed claim in the EFH or EFIH bankruptcy cases under the same provision of the Bankruptcy Code—section 503(b) – and the only issue left open by the Court is the allowed amount of each creditor's respective substantial contribution claim. Thus, in reviewing the Fee Requests, the Fee Committee is not permitted to deviate from the applicable provisions of the Bankruptcy Code, alter the standards they set forth or impose burdens not found in the controlling case law interpreting those provisions.

The starting points for the Fee Committee's review are, therefore sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code. Section 503(b)(3)(D) grants administrative expense status for the "actual, necessary expenses" incurred by a creditor "in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D). Section 503(b)(4) of the Bankruptcy Code allows administrative expenses for "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under [section 503(b)(3)(D)] based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant." 11 U.S.C. § 503(b)(4).

Together, these sections outline the standard that the Fee Committee and Court should follow in considering the Fee Requests. The Court has, however, already found that each of the applicants has made a substantial contribution to an E-Side Debtor, so under governing Third Circuit law, the Fee Committee's review is whether the fees requested by the creditor applicants are "reasonable" based on the enumerated factors in section 503(b)(4).

ROPES & GRAY LLP

- 6 -

Critically, when reviewing the requested fees for reasonableness, this Court has already determined that the Fee Requests and the substantial contribution claimants and their professionals "shall not be required to comply with (a) The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or other orders in these Cases with respect to fee applications, including the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896], or (b) *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases*, 78 Fed. Reg. No 116, page 36248 (June 17, 2013)." [D.I. 11050 at ¶ 7; D.I. 12763 at ¶ 115]. Thus, to the extent the Fee Committee Memo suggests otherwise, the Fee Committee should be directed not to apply them.

Moreover, although the Court did not define what it meant by "task" in the April Direction, Elliott understands the Court's citation to the Third Circuit's opinion in *Lebron* to require the Fee Committee to review each applicant's specific "efforts" in the cases, but did not intend to direct the Fee Committee to use a new higher standard for approving a substantial contribution claim. In particular, in *Lebron*, the Third Circuit confirmed that a creditor should be reimbursed for the fees and expenses it incurs for all reasonable "efforts" it undertakes to benefit a chapter 11 estate and its creditors. 27 F.3d at 946. It did not require task code billing or even a review of each and every time entry. So, Elliott respectfully requests that the Court clarify for the Fee Committee that it is to review professional invoices based on the efforts and types of activities undertaken by the applicant and its professionals, and that it need not and should not undertake a full review of specific time entries and require a creditor's professionals to revise its billing to specific task codes (such as those specified in the Local Rules for retained professionals) to determine whether those efforts conferred a benefit. Indeed, any other standard for assessing a creditor's professional invoices would be at odds with the critical distinctions between reviewing a creditor's substantial contribution application and an estate professional's fee application,[6] and beyond the requirements of Bankruptcy Code section 503(b)(4).

Thus, the proper focus of the Fee Committee should be whether the fees and expenses requested are actual, necessary and reasonable in relation to the efforts made and the benefits those efforts achieved. To make that determination, the Fee Committee should determine not only whether an applicant has shown a "'causal connection' between the service and the contribution" (*In re Worldwide Direct*, 334 B.R. at 121–22 (quoting *In re Granite Partners, L.P.*, 213 B.R. 440, 47 (Bankr. S.D.N.Y. 1997)), but also whether the fee request is reasonable in relation to the extent

---

[6]    *See* 4 Collier on Bankruptcy ¶ 503.11[5] (16th ed. rev.) ("a court should not treat an application for reimbursement [under sections 503(b)(3) and (b)(4)] exactly the same as an application for an award of compensation under section 330. A professional retained by the estate knows from the outset his or her relationship with the estate that payment of the professional's fees will be dependent on an award by the court. The professional will keep track of the nature of the services and the cost of such services in accordance with whatever requirements currently apply to professionals retained by the estate. A professional representing a creditor or custodian has not been retained by the estate, however, and may not know that the client will subsequently seek reimbursement from the estate. It would thus be unfair to automatically deny an award of compensation because the professional did not comply with guidelines applicable to a professional retained by the estate.").

ROPES & GRAY LLP

- 7 -

of the purported benefit or contribution provided by the creditor.  *See Lebron*, 27 F.3d at 944 (an applicant should be reimbursed for fees and expenses where its efforts have "foster[ed] and enhance[d] . . . the progress of the reorganization"); *In re FF Holdings Corp.*, 343 B.R. 84, 87 (D. Del. 2006) (granting substantial contribution application in full when the court was "convinced that [the creditor's] actions benefitted the estate and all creditors of the estate by fostering and enhancing the Debtors' reorganization"); *Bodin Concrete, L.P. v. Concrete Opportunity Fund II, L.L.C. (In re Bodin Concrete, L.P.)*, 616 F. App'x 738, 741 (5th Cir. 2015) (in evaluating substantial contribution fee and expense requests, "the court should weigh the cost of the claimed fees and expenses against the benefits conferred upon the estate which flow directly from those actions").  And in that analysis, it is entirely appropriate for the Court and the Fee Committee to judge reasonableness with the benefit of hindsight.  *See Worldwide Direct*, 334 B.R. at 121 (noting that it is appropriate to assess a substantial contribution claim "in hindsight").  Indeed, this is presumably why the Court required that the Fee Committee only begin its review process after an E-Side plan of reorganization went effective.  [D.I. 11050 at ¶ 2; D.I. 12763 at ¶ 109].

In sum, the appropriate standard for reviewing invoices in connection with each Fee Request is the reasonableness of the fees taking into consideration the benefit or contribution the creditor provided, the efforts undertaken by the creditor, and whether the expenses incurred by the creditor in making those efforts were actual and necessary under the circumstances.[7]  This approach is consistent with *Lebron*, which this Court recently acknowledged establishes the standard for substantial contribution claims and which this Court instructed the Fee Committee to follow in its review of the Fee Requests.  [D.I. 13332 at 25; D.I. 12896].

\*        \*        \*

For the foregoing reasons, Elliott respectfully requests that Your Honor (i) direct the Fee Committee to apply a single standard or approach when reviewing the Fee Requests; and (ii) confirm that the scope of the Fee Committee's review is to determine whether the Fee Request is for actual, necessary expenses that are reasonable in light of the benefit the applicant conferred on the E-Side Debtors' estates.

Very truly yours,

*/s/ Gregg M. Galardi*
Gregg M. Galardi

---

[7]    *See* 4 Collier on Bankruptcy ¶ 503.11[5] (16th ed. rev.) ("So long as the court has sufficient information from which to determine whether the amount requested is reasonable, and whether the amount bears an appropriate relationship to the reason for which the entity became entitled to administrative expense priority status for its expenses, the court should grant an appropriate award.").

# EXHIBIT A



ONE EAST MAIN STREET, SUITE 500 • POST OFFICE BOX 2719
MADISON, WISCONSIN 53701-2719

TEL • 608.257.3911   FAX • 608.257.0609

WWW • GKLAW.COM

## MEMORANDUM

---

**TO:**        Professionals submitting invoices for E-Side Effective Date Payment

**FROM:**    Fee Committee/counsel

**DATE:**     April 24, 2018

**SUBJECT:**  Substantial contribution submissions

---

This memorandum supplements the March 14, 2018 memorandum from the Fee Committee.  If you have not done so already, you should now review Judge Sontchi's April 3, 2018 letter to Richard Gitlin asking the Fee Committee to evaluate, on a task-by-task basis, whether the 503(b) fee applicants provided a substantial contribution.  [Dkt. No. 12896].  In light of Judge Sontchi's directive, to "review the time entries" of applicants, the Fee Committee reiterates its expectations for applicants to substantiate their substantial contribution activities.  To ensure all applicants have sufficient time to comply with the judge's directives, the Fee Committee is extending the deadline for submissions.  We will endeavor to have properly substantiated fee requests received by ***May 18, 2018*** ready for Court approval at or before the yet to-be-scheduled September 2018 omnibus hearing (to approve uncontested twelfth interim and final fee applications of Retained Professionals).

### *Detailed Time Records*

Because Judge Sontchi asked the Fee Committee to evaluate the substantial contribution of each professional on a task basis, all fee submissions will need to be supported by detailed billing records similar to those submitted in connection with a section 330 fee application.

### *Substantial Contribution Fees-Explanatory Cover Memorandum*

To determine whether fees and expenses were "incurred in connection with the EFH Notes Trustee's and Supporting Creditors' Substantial Contribution Finding," Confirmation Order at ¶ 109, professionals should submit a covering memorandum with their invoices that, with respect to each matter or category of services, explains how that work related to the Substantial Contribution Finding as opposed to work performed primarily for the applicant's own benefit.

At its April 19, 2018 meeting, the Fee Committee expanded the scope of the requested covering memorandum.  It should articulate:

OFFICES IN MILWAUKEE, MADISON, WAUKESHA, GREEN BAY AND APPLETON, WISCONSIN AND WASHINGTON, D.C.

GODFREY & KAHN, S.C. IS A MEMBER OF TERRALEX,® A WORLDWIDE NETWORK OF INDEPENDENT LAW FIRMS.

- The terms and conditions of your employment and compensation (or simply provide a copy of your engagement agreement(s));

- An identification by name of all professionals who billed time, including each professional's billing rates and year of bar admission (you need not repeat this information if it is easily discerned from the invoices);

- A brief description of your firm's role in these cases, the services that you provided, and to which client;

- A sufficiently detailed substantial contribution discussion, to include:

  o For each work stream or matter for which you request compensation, a detailed discussion of how the work performed provided a substantial contribution to the Debtors' estates as interpreted by the Third Circuit in *Lebron v. Mechem Financial Inc.*, 27 F.3d 937 (3d Cir. 1994) and *In re Tropicana Entertainment LLC*, 448 Fed. Appx 150 (3d Cir. 2012), both cited in the Court's letter to Mr. Gitlin.

  o For any "general" work streams or matters, an allocation of the work performed to the substantial contribution activities noted above.

- A descriptive list of expenses for which you seek reimbursement (if not included with your invoices), including:

  o An allocation of each expense to a matter or work stream identified above.

***Supporting Documents***

Please submit all invoices for which you request reimbursement in their original format *and* in a supporting electronic data format. For law firms, this will mean supplying the LEDES data easily obtainable using any commercial law firm billing software platform. For non-law firms, please submit electronic billing and expense data in Excel spreadsheet format consistent with the sample attached to our March 14 memorandum. The Fee Committee will not be able to comply with the judge's instructions without detailed electronic time records and, therefore, will not recommend court approval of fee requests unsubstantiated by sufficiently detailed electronic billing records.

*Review Criteria*

The Fee Committee reiterates the following suggestions to assist you in the preparation of your submission.

### <u>Suggested Expense Parameters</u>

- Expenses should be linked to a matter or work stream

- The Fee Committee will not recommend reimbursement for first class travel.

- Word processing, proofreading, secretarial and other support expenses will not be recommended for reimbursement.

- Expenses related to seeking representation (*i.e.,* pitching) will not be recommended for reimbursement.

- Expenses related to court admission will not be recommended for reimbursement.

- Subscription, publication, or library charges will not be recommended for reimbursement, nor will office supplies.

- Clothing, dry-cleaning, and travel sundries will not be recommended for reimbursement.

- Hotel expenses should be limited to reasonable market rates for the locale, including room charges and taxes, but will not be recommended for reimbursement above $500 per night for New York City and Washington, D.C., and $350 per night for all other locations.  Health or athletic facilities, in-room movies, or other entertainment charges will not be recommended for reimbursement.

- Business meals will be recommended for reimbursement as follows:

   --In-office meals will be recommended for reimbursement at $20 per person per meal, as long as:

   1.  The professional attends a necessary lunch-hour business meeting; or

   2.  The professional works *on these cases* after 8 p.m. and has worked more than four hours *on these cases* during the billing day for which meal reimbursement is sought.

   --Coffee and snack charges are not reimbursable.

3

--Out-of-office meals will be recommended for reimbursement at $40 per person per meal and are reimbursable only if the professional has travelled to prepare for or attend a hearing, client or third party meeting, or other event.

- Regardless of the number of attendees, please provide receipts for any single meal costing more than $200.

- Non-working travel time will be recommended for reimbursement at no more than 50 percent of the hourly rate.

- Alcohol will never be recommended for reimbursement.

- Local travel expenses (train, bus, subway, mileage, car service, taxi) to or from a professional's home are not reimbursable unless a professional has worked at least four hours on these cases on the day for which the expense is sought and works after 9 p.m. local time on these cases.  Wait time associated with car service is not reimbursable and should be deducted from car service expense reimbursement requests.   Car service expenses are not reimbursable for delivery of documents.

- Ground transportation to and from the following airports will not be recommended for reimbursement above these caps:

| | |
|---|---:|
| New York | $100 |
| Dallas | $75 |
| Philadelphia-Wilmington | $125 |
| Chicago | $75 |
| Denver | $75 |
| San Francisco | $100 |
| Los Angeles | $100 |
| Other Cities | $75 |

- Infrastructure improvements, rent, utilities, office equipment, furnishings, insurance, and property taxes will not be recommended for reimbursement.

- Charges for electronic research services (Westlaw, Lexis-Nexis) should be accompanied by the billing statement from the service provider.

- Please provide receipts for all unusual or extraordinary expenses.

- Expenses incurred by summer associates and law clerks will not be recommended for reimbursement.

**Suggested Fee Parameters**

The Fee Committee will, at a minimum:

- Evaluate, *on a task basis*, whether the fees requested fall within the Substantial Contribution Finding;

- Confirm that billing rates for each professional are the rates approved in the applicable retention agreement;

- Ensure that professional fees have not been charged for summer associates and law clerks;

- Evaluate hours billed against any limitations in the retention agreement;

- Analyze average billable hours each day and identify extended periods of above average billing days;

- Review clerical and administrative tasks to determine either the propriety of the billing rate for the task or whether the task is non compensable;

- Identify meetings, hearings, or other events attended by an excessive number of time keepers given the nature of the hearing or meeting and the necessity of multiple attendees;

- Identify work that may be outside the scope of the professional's engagement;

- Determine whether non-working travel has been billed at more than 50 percent of the firm's standard hourly rate;

- Identify any calculation or billing errors; and

- Identify any other fees or expenses impermissible under 11 U.S.C. § 503(b).

*Conclusion*

As always, please do not hesitate to contact Fee Committee counsel if you have questions.

**Godfrey & Kahn, S.C.**

Attorneys:  Katherine Stadler, Brady Williamson, Mark Hancock, Carla Andres, and Erin West
kstadler@gklaw.com, bwilliam@gklaw.com, mhancock@gklaw.com, candres@gklaw.com, ewest@gklaw.com

Data Specialist:  W. Andrew Dalton
adalton@gklaw.com

Paralegal:  Kathleen Boucher
kboucher@gklaw.com

1 East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Phone: (608)257-3911

**Gitlin & Company, LLC**

Richard A. Gitlin
rgitlin@giltinco.com
Cell: (860) 559-5108

Attachment

18824904.1