**Exhibit 7**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) |
| *Debtors.* | ) Case No. 14-10979 (CSS) |
| | ) |
| | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |

**DECLARATION OF HOWARD E. ABRAMS**

I, Howard E. Abrams, declare as follows:

## I.    QUALIFICATIONS

1.    I make this Declaration in connection with Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott") and UMB Bank, N.A. ("UMB")'s Joint Motion to Fix Appropriate Allocation of Certain Reserves and Expenses as Between the EFH and EFIH Debtors [D.I. 13102] (the "Allocation Motion").

2.    I am currently the William K. Jacobs, Jr., Visiting Professor at Harvard Law School.  My office is located at 316 Hauser Hall, Harvard Law School, Cambridge, MA 02138.

3.    I have extensive experience analyzing the tax consequences of corporate reorganizations.  I have been a professor of tax law for over thirty-five years.  From 1983 to 2013, I was a Professor at Emory University School of Law, and from 2014 to 2017, I was Warren Distinguished Professor and Director of Tax Programs at the University of San Diego School of Law.  I have also been a Visiting Professor at Harvard Law School, Yale Law School, UC Berkeley Law School, and Cornell Law School. I taught at the University of Oklahoma School of Law from 1982 to 1983, and I clerked for Chief Judge Tannenwald on the United States Tax Court from 1980 to 1982.  I also served as of counsel at Steptoe & Johnson for about two years and Director of Real Estate Tax Knowledge at Deloitte & Touche for 1 year.  I

1

graduated *cum laude* from Harvard Law School in 1980 and *summa cum laude* with a degree in mathematics from the University of California at Irvine in 1976.

4.    A copy of my curriculum vitae, which summarizes my qualifications and professional experience, including a list of all publications authored by me, is included as **Exhibit 1** to this Declaration.  A list of the previous testimony I have given in the past four years is included as **Exhibit 2** to this Declaration.

## II.    ENGAGEMENT

5.    I have been asked by counsel for Elliott and UMB to consider the tax consequences of a taxable sale or other disposition of Energy Future Intermediate Holding Company LLC ("EFIH") (or the assets thereof) through a stand-alone sale or restructuring transaction or as part of a plan of reorganization in these cases, and the possibility of the Internal Revenue Service imposing tax liability on EFIH in connection with any such sale or disposition.

6.    While my work on this matter is ongoing, this Declaration summarizes my current opinions given the information available to me to date.  I may consider any additional materials, if produced, and modify or supplement my Declaration as necessary.

7.    I am being paid at my regular rate of $1,050 per hour to provide potential testimony in connection with the Allocation Motion in the Chapter 11 Cases.  My compensation in this matter is not dependent on my opinions offered in this declaration or during my testimony in any way.

8.    The discussion and conclusions set forth herein are based upon (a) my review of relevant documents, (b) information supplied to me by counsel for Elliott and UMB, and (c) my knowledge of relevant tax and other law.  If called upon to testify, I could and would testify to the conclusions set forth herein.

9.      A listing of the documents I relied on in formulating my opinions is included as **Exhibit 3**.  In connection with trial testimony in this matter, I may create demonstratives that refer or relate to the matters discussed in this Declaration in my deposition testimony.  I have not yet created any such demonstratives as of the date of this Declaration.

## III.    BACKGROUND

10.      Based on my review of the documents included in Exhibit 3, I understand that Energy Future Holdings Corp. ("EFH") was a corporation that, until March 2018, owned 100% of EFIH, a limited liability company, which in turn owned 100% of the limited liability company Oncor Electric Delivery Holdings Company LLC ("Oncor Holdings"), which in turn owned an 80.03% interest in the partnership Oncor Electric Delivery Company LLC ("Oncor").

11.      I further understand that both EFH and EFIH were Debtors in these consolidated bankruptcy cases.  Oncor Holdings and Oncor were not.

12.      EFH, EFIH, and Oncor Holdings were primarily holding companies, whereas Oncor is an operating company engaged in regulated electricity transmission and distribution and which holds depreciable assets.

## IV.    SUMMARY OF EXPERT OPINIONS

### A.    The Owner of a Disregarded Entity is Liable for the Federal Income Tax on Any Gain from the Sale of the Disregarded Entity or Its Assets – Not the Disregarded Entity.

13.      The term "disregarded entity" ("DE") is a tax concept under which federal income tax law disregards a wholly-owned limited liability company (and certain other types of entities) as an entity separate from its owner.[1]  Instead of taxing a DE separately, U.S. federal income tax laws treat a DE's assets as owned directly by the DE's parent and a DE's activities as activities

---

[1] *See* 26 C.F.R. ("Treas. Reg.") § 301.7701-2(a); PLR 199947001 (adjustments under 26 U.S.C. ("I.R.C." or "Code") § 743(b)).

of the DE's parent.[2]  As a result, a DE cannot have any taxable gain, loss, deduction or credit, and cannot incur an income tax liability.  Rather, it is the DE's parent that incurs and must report any taxable gain, loss, deduction or credit generated by the DE's activities.  Although a parent may elect for a wholly-owned limited liability company to be treated as corporation, rather than a DE, for U.S. federal income tax purposes, I understand that EFH made no such election here.

14.     A sale by a corporate owner (the "Parent") of its ownership of a DE is treated for tax purposes as a direct sale by the Parent of the assets held by the DE.[3]  A sale by the DE of its assets is likewise treated as a direct sale by the Parent of those assets for federal income tax purposes.[4]  In both instances, the Parent is liable for the federal income tax liability, including both capital gain and ordinary income, if any, as a result of a taxable sale, and the DE will have no income tax liability.

15.     I understand that EFIH was treated as a DE at all relevant times during these cases.  Since EFH was the Parent of EFIH, a sale of EFH's interest in EFIH, or of EFIH's interest in Oncor Holdings, would have been treated for tax purposes as a direct sale by EFH of Oncor Holdings.  In both instances, EFH would have been liable for any federal income tax liability, including both capital gain and ordinary income, as a result of a taxable sale, and EFIH would not have had any tax liability.  I have reviewed the analysis conducted by Evercore in September 2014, including Hiltz Deposition Exhibits 16 and 17, and I agree that the methodology employed in that analysis to estimate the potential federal tax incurred by EFH in such circumstances is appropriate for tax years 2014 through 2017.  For transactions closing in 2018 and thereafter, a lower federal tax rate of 21% would apply.  The effect of this change

---

[2] *Id*; Rev. Rul. 2004-77, 2004-31 I.R.B. 119 (August 2, 2004).
[3] Rev. Rul. 99-5 (situation 1); A.M. 2012-001, http://www.irs.gov/uac/Legal-Advice-Issued-by-Associate-Chief-Counsel.
[4] Treas. Reg. § 301.7701-2(a).

would result in an EFH tax liability from a taxable sale of EFIH or Oncor Holdings in the amount of approximately $2.282 billion assuming a taxable gain of $10.868 billion, the same figure used in Hiltz Deposition Exhibits 16 and 17.

**B.    Because a DE is Not Liable for the Parent's Federal Income Tax, the IRS Has No Recourse Against the DE's Assets and May Only Seek Recourse Against the Parent's Ownership of the DE Subject to Claims of Senior Creditors of the Parent and All Creditors of the DE.**

16.    As described above, the taxable sale of a DE or its assets will result in income tax liability, if any, for the Parent, not the DE.

17.    In the case of a sale by the Parent of its interest in the DE, the sale proceeds will be held by the Parent.  In my experience, and based upon my knowledge of applicable IRS rules and regulations, the IRS is unlikely to pursue, and extremely unlikely to succeed in holding, the DE as liable for the federal income tax liability arising from that sale assuming the sale is made at arm's-length.

18.    In the case of a sale by the DE of its assets, the analysis is different because the sale proceeds will be received by the DE.  Even though a DE is disregarded for federal tax purposes and cannot be liable for any federal income tax liability, it is regarded for non-tax purposes.  As a result, it is clear that limits imposed by applicable local law must be respected by the IRS.  Thus, the IRS has no direct right against the DE or its assets simply because it has claims against the Parent.  IRS claims against the Parent could only be satisfied out of the DE's assets by seeking to enforce IRS liens on the ownership interests of the DE, either by seeking ownership of the DE or selling the DE to another party, subject to claims of senior creditors of the Parent and all creditors of the DE.[5]

---

[5] CCA 200235023 (conclusion 2) (July 30, 2002).

19.     As described above, since both EFIH and Oncor Holdings were DEs, in the event of a sale of EFIH or Oncor Holdings, the ordinary income and capital gains tax liability, if any, would have accrued to EFH and not any other entity.  If EFH sold its interest in EFIH, the proceeds would have been held by EFH, and the IRS would not have had a viable claim under applicable tax law against EFIH, Oncor Holdings, or EFIH's new parent.  If EFIH had sold its interest in Oncor Holdings, the IRS would have no direct right to those proceeds and could only satisfy its claims subject to claims of senior creditors of the Parent and all creditors of the DE.[6]

20.     The Omnibus Tax Memorandum, dated October 1, 2014 [Dkt. No. 2296], suggests that the IRS could change the law such that EFIH would be liable for the tax from a sale of EFIH or Oncor Holdings.  I respectfully disagree.  The IRS is bound by Department of Treasury ("Treasury") regulations.[7]  The Treasury regulations which result in EFH and not EFIH bearing the tax liability if EFIH or Oncor Holdings were sold in a taxable sale are Treas. Reg. 301.7701-3, commonly known as the "check-the-box regulations."  These regulations are foundational to our current system of entity taxation.[8]  The Internal Revenue Code provides that some non-corporate entities (labeled "associations") are taxed as if they were corporations,[9] but it is only the check-the-box regulations that define which non-corporate entities are associations (and therefore taxable as corporations) and which are not.  If these regulations were repealed, taxpayers would not know how limited liability companies and other foreign and domestic non-

---

[6] *Id.*
[7] *E.g., Lansons, Inc. v. Commissioner,* 622 F.2d 774, 776 (5th Cir. 1980).
[8] The use of disregarded entities has been incorporated into substantive law in multiple contexts such as the allocation of partnership debt, Treas. Reg. § 1.752-2(k), corporate mergers, Treas. Reg, § 1.368-2(b(1), and cross-border transactions, *see Dover v. Commissioner,* 122 T.C. 324 (2004), and Holland, *Special Report: U.S. Check-the-Box Rules in the Cross-Border Context,* 108 Tax Notes Int'l 255 (July 18, 2005).
[9] I.R.C. §7701(a)(3).

corporate entities were taxed,[10] leaving the proper process of preparing their returns and paying

tax in considerable doubt.[11]  In addition, the check-the-box regulations could not be amended

without substantial disruption of long-settled taxpayer expectations and Treasury policy.[12]  In

order to change substantive regulations and long-standing administrative policy, Treasury would

be required to conform to the time-consuming mandates of the Administrative Procedure Act

("APA"), which requires notice and the opportunity to comment.  Furthermore, Congress has

authorized Treasury regulations to have an effective date as of the earliest of the date on which

(1) the regulation is filed in the Federal Register, (2) the proposed (or temporary) form of a

regulation later finalized was first issued, or (3) a notice with a substantive description of a rule

later consummated as a regulation first appeared. I.R.C. § 7805(b)(1).  Beyond that, substantive

regulations may be promulgated with an earlier effective date only to correct procedural defects

or "to prevent abuse."  I.R.C. § 7805(b)(3).[13]  I am not aware of any efforts by Treasury to

repeal, amend, or replace these regulations, so in all likelihood Treasury would have to start from

scratch in drafting a regulation or substantive notice; and in any event such a process would

typically take years or be subject to material risk of challenge under the APA.[14]  Any Treasury or

---

[10] *See generally* Richard L. Doernberg, Howard E. Abrams & Don A. Leatherman, Federal Income Taxation of Corporations and Partnerships 498-502 (5th ed. 2014).

[11] The Omnibus Tax Memorandum at page 19 suggests that Treasury could provide that an unrelated purchaser of assets from a DE would not take a step-up in basis until the parent of the DE satisfied the resulting tax liability.  That would require a congressional change to Code section 1012 (basis equals cost) and is inconsistent with analogous tax provisions such as (1) the counterparty to a like-kind exchange executed through a qualified intermediary takes a cost basis despite deferral offered to the transferor under Code section 1031 and (2) a purchaser takes an immediate cost basis in purchased property even if the seller defers some or all of the gain using the installment method under Code section 453.

[12] *See supra* fn. 8 and 11.

[13] The special rule for "promptly issued regulations" in I.R.C. § 7805(b)(2) is not relevant to this discussion.

[14] No such proposal has appeared on the Treasury's statement of anticipated guidance.

IRS attempt to impose tax retroactively would increase that risk further due to constitutional, including due process, concerns.

### C. As a General Rule, Assuming the DE's Assets Are Appreciated, a Buyer Will Pay More to Acquire a DE in a Taxable Transaction Than in a Tax-Free Transaction Because the Sale Will Result in a Step-Up in Basis that Benefits the Buyer.

21.　　The term "step-up" in basis generally is used to describe the effect of a transaction in which a transferee takes a fair market value basis in acquired assets as opposed to carrying over the adjusted basis of the transferor.[15]  (Note that if assets have declined in value, taking a fair market value basis results in a step-down.)  In the corporate transaction context, transactions that generate a fair market value basis to a transferee include fully taxable sales and exchanges, while transactions that generate a carry-over basis rather than a fair market value basis include tax-free contributions to corporations under section 351[16] and to partnerships under section 721,[17] and tax-free distributions from partnerships under section 731.[18]

22.　　The purchaser in a taxable sale of a DE or of a DE's assets will take a cost basis in the assets because either transaction would be treated as a purchase of the DE's assets.[19]  This is true whether the assets are owned, immediately after the transaction, directly by the purchaser or continued to be owned by the DE whose membership interests are held by the purchaser.

23.　　Assuming a transferee's fair market value basis exceeds the transferor's adjusted basis (so that the transferee obtains a step-up in basis rather than a step-down), the basis increase will be valuable in two ways.  First, if the asset is depreciable (or amortizable or subject to an

---

[15] *Cf.* I.R.C. §§ 7701(a)(42) (definition of "substituted basis property"), 7701(a)(43) (definition of "transferred basis property"), 7701(a)(44) (definition of "exchanged basis property").
[16] *See* I.R.C. §§ 358(a), 362(a).
[17] *See* I.R.C. §§ 722, 723.
[18] *See* I.R.C. § 732(a)(1).
[19] *See* paragraph 2 *supra.*

allowance for depletion), the basis increase will generate higher deductions over the depreciable

life of the asset.  Second, an increase in basis reduces gain realized (or increases loss realized) on

disposition of the asset to the extent the basis increase has not been eliminated via depreciation

(or equivalent) deductions.

24.    Because a basis increase offers tax advantages, a purchaser should be willing to

pay a greater amount for the asset.  If the asset is depreciable, the additional tax benefit generally

can be estimated with reasonable accuracy (subject to a change by Congress of nominal tax

rates).

25.    There are several common transactions in which the price a purchaser pays is

higher if the transaction can be structured to give the purchaser a stepped-up basis.  For example,

a popular structure for going public for a closely-held venture is the "Up-C" structure.  The

advantage of an Up-C over a more conventional public offering is that the new investors can

obtain the equivalent of a stepped-up cost basis in the venture's assets.  The new investors in an

Up-C structure generally agree to pay a percentage of their tax savings (typically 80% of the tax

savings) to historic investors.

26.    As a second example, when the stock of an S Corporation or a member of a

consolidated group is acquired in a taxable transaction, an election under Code section

338(h)(10) generates a step-up in asset basis, often without imposing significant cost on the

seller.  Because an election under Code section 338(h)(10) must be filed by both the seller and

the buyer, invariably the seller will demand an increase in sale price in exchange for agreeing to

the election.[20]

---

[20] For the methodology used to compute the appropriate sale price as a function of the § 338(h)(10) election, see chapter 15 of Myron S. Scholes, Mark A. Wolfson, Merle M. Erickson, Michelle L. Hanlon, Edward L. Maydew & Terrence J. Shevlin, Taxes and Business Strategy (5th ed. 2014).

27.    If EFIH and Oncor Holdings appreciated beyond their basis, a purchaser of EFIH or Oncor Holdings in a taxable sale would have benefited from a stepped-up basis, which would be valuable because the purchaser would have been able to deduct the additional stepped-up basis as depreciation over the ensuing years according to the depreciation schedule in the underlying assets in Oncor shown in Hiltz Deposition Exhibits 16 and 17.  I have reviewed the analysis conducted by Evercore in September 2014in Hiltz Deposition Exhibits 16 and 17, and I agree that the methodology employed in that analysis to estimate the after-tax benefit of the basis step-up of a potential taxable sale of EFIH (or its assets) is appropriate for tax years 2014 through 2017.  For transactions closing in 2018 to 2022, a lower tax rate of 21% would apply as well as changes to the depreciation schedules.  The effect of these two changes would result in an after-tax benefit of the basis step-up of $2.037 billion for such transactions, assuming a basis step-up of $9.7 billion, the same figure used in Hiltz Deposition Exhibits 16 and 17, and the same mix of depreciable assets.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the contents of the foregoing are true and correct to the best of my information and belief.


Executed on August 19, 2018

Burlington, Massachusetts

/s/ Howard E. Abrams
Howard E. Abrams

# Howard E. Abrams

Business Address:        316 Hauser Hall, Harvard Law School, Cambridge
                         MA 02138.
Business Phone:          (617) 495-3159.
E-Mail:                  habrams@law.harvard.edu.

## EDUCATION

Sept. '77 -    June '80:     *J.D.*, Harvard University (cum laude).

Sept. '76 -    June '77:     *Graduate Study*, Department of Mathematics
                             (Emphasis in Mathematical Physics), University of
                             California at Irvine.

Sept. '73 -    June '76:     *B.A. (Mathematics)*, University of California at
                             Irvine (summa cum laude; phi beta kappa).

## LEGAL EXPERIENCE

July '17 -     Date:         *Williams K. Jacobs, Jr., Visiting Professor of Law,*
                             Harvard Law School, Cambridge, Massachusetts.

Sep. '14 -     Aug. '17:     *Warren Distinguished Professor and Director of
                             Tax Programs,* University of San Diego School of
                             Law, San Diego, California.

June '13 -     June '14:     *William K. Jacobs, Jr. Visiting Professor of Law*,
                             Harvard Law School, Cambridge, Massachusetts.

Aug. '12 -     Dec. '12:     *Visiting Professor of Law*, University of San Diego
                             School of Law, San Diego, California.

June '12 -     June '12:     *Visiting Lecturer,* Technical University of Dresden,
                             Dresden, Germany.

Jan. '09 -     June '09:     *Maurice R. Greenberg Visiting Professor of Law,*
                             Yale Law School, New Haven, Connecticut.

Aug. '06 -     Aug. '07:     *Visiting Professor of Law*, UC Berkeley Law
                             School, Berkeley, California.

Dec. '02 -     Aug. '04:     *Of Counsel,* Steptoe & Johnson, Washington, DC.

1

| | | |
|---|---|---|
| June '99 - | May '00: | *Director of Real Estate Tax Knowledge*, Deloitte & Touche, LLP, Washington, DC. |
| Aug. '93 - | May '06: | *Adjunct Professor*, University of Georgia College of Law, Athens, Georgia (occasional semesters). |
| Apr. '92 - | Date: | *Visiting Lecturer*, International Tax Center of Leiden University, Leiden, Holland (occasional summers). |
| Aug. '88 - | June '89: | *Visiting Professor of Law*, Cornell Law School, Ithaca, New York. |
| Aug. '83 - | Aug. '13 | *Professor of Law*, Emory University School of Law, Atlanta, Georgia (Assistant Professor 1983-85; Associate Professor 1985-1991). |
| Aug. '82 - | Aug.'83: | *Visiting Assistant Professor of Law*, University of Oklahoma College of Law, Norman, Oklahoma. |
| Feb. '82 - | Aug. '82: | *Associate*, Brobeck, Phleger & Harrison, Los Angeles, California. |
| Aug. '80 - | Feb. '82: | *Attorney Advisor*, Chief Judge Tannenwald, United States Tax Court, Washington, D.C. |

## PUBLICATIONS

PARTNERSHIP NONCOMPENSATORY OPTIONS, 721 BBNA Tax Management Portfolio Series (2018).

DISREGARDED ENTITIES, 704-2 BBNA Tax Management Portfolio Series (2d ed. 2012, co-authored with F. Witt).

FEDERAL INCOME TAXATION OF CORPORATIONS AND PARTNERSHIPS, Aspen Law & Business (5th ed. 2014, co-authored with R. Doernberg and D. Leatherman).

FEDERAL CORPORATE TAXATION, Foundation Press (7th ed. 2013, co-authored with R. Doernberg and D. Leatherman).

ESSENTIALS OF UNITED STATES TAXATION, Kluwer Law International (1999, co-authored with R. Doernberg).

FEDERAL INCOME TAXATION OF PARTNERSHIPS AND OTHER PASS-THRU ENTITIES, Anderson Press (1993).

*Wherefore Code Section 736?*, 96 TAXES: THE TAX MAGAZINE 133 (2018).

*Partnership Disguised Sales: Traps Getting In and Tips on Getting Out*, 2016 USC TAX INSTITUTE ¶600 (2016).

*The Non-Tax Implications of the Taxation of Partnership Options*, 31 BLOOMBERG/BNA TAX MGMT. REAL ESTATE J. (2015) (with R. Crnkovich).

*Partnership Inequalities: The Consequences of Book/Tax Disparities*, 92 TAXES: THE TAX MAGAZINE 111 (March 2014).

*Noncompensatory Partnership Options*, 54 BLOOMBERG/BNA TAX MGMT. MEM. 367 (2013) (with R. Crnkovich).

*Credit Where Credit Is Due? Who Is a Partner after* Historic Boardwalk, 29 BLOOMBERG BNA TAX MGMT. REAL ESTATE J. 83 (2013).

*In Memoriam: Bernard Wolfman*, 125 HARV. L. REV. 1890 (2012).

*Regarding Disregarded Entities*, 28 BLOOMBERG/BNA TAX MGMT. REAL ESTATE J. 151 (2012).

*Partnership Tax Articles Off the Beaten Path*, 130 TAX NOTES 1206 (March 7, 2011).

*Did Health Care Reform Repeal the Partnership Anti-Abuse Rule*, 51 TAX MGMT. MEM. 299 (2010).

*The Carried Interest Catastrophe*, 128 TAX NOTES 523 (August 2, 2010).

*Partnership Book-Ups*, 127 TAX NOTES 435 (April 26, 2010).

*Partnership COD Income and Other Debt Issues*, 126 TAX NOTES 845 (February 15, 2010).

*Partnership Use of Disregarded Entities*, 25 TAX MGMT. REAL ESTATE J. 155 (2009).

*Now You See It, Now You Don't: Exiting a Partnership and Making Gain Disappear*, 50 TAX MGMT. MEM. 75 (2009).

*Taxation of Carried Interests: The Reform That Did Not Happen*, 40 LOYOLA L.J. 199 (2009).

*Disposition and Partial Disposition of a Partnership Interest*, 11 JOURNAL OF
     PASSTHROUGH ENTITIES 31 (2008).

*The Past is Prologue: Carried Interests*, 24 TAX MGMT. REAL ESTATE J. 23
     (2008).

*A Close Look at the Carried Interest Legislation*, 117 TAX NOTES 961 (Dec. 3,
     2007).

*Partnership Allocation of Selected Real Estate Tax Credits*, 23 TAX MGMT. REAL
     ESTATE J. 206 (2007).

*Taxation of Carried Interests*, 116 Tax Notes 183 (July 16, 2007), *reprinted in* 23
     TAX MGMT. REAL ESTATE J. 199 (2007).

*Recommendations on Modernizing Section 751(b),* 22 TAX MGMT. REAL ESTATE J.
     218 (2006).

*New Rules Limit Flexibility on Withholding by Disregarded Entities,* 21 TAX
     MGMT. REAL ESTATE J. 362 (2005).

*How to Shoehorn a Disregarded  Entity's Discharge of Indebtedness Into
     Section 108 Relief for Its Owner,* 21 TAX MGMT. REAL ESTATE J. 351
     (2005).

*JCT Proposal on Partnership Nonrecourse Debt Unwarranted*, 108 TAX NOTES
     1301 (Sept. 12, 2005), *reprinted in* 21 TAX MGMT. REAL ESTATE J. 315
     (2005).

*The Truth About Partnership Debt. Guaranteed,* 21 TAX MGMT. REAL ESTATE J.
     59 (2005).

*Simple Distributions from Leveraged Partnerships*, 1 PITT. TAX L. REV. 131
     (2004).

*Section 704(c) Gain in Partnership Mergers*, BUSINESS ENTITIES 34 (May-June
     2004).

*The Section 734(b) Basis Adjustment Needs Repair*, 57 TAX LAWYER 343 (2004).

*Using Cash and Carried Interests in a Real Estate Partnership*, 31 REAL ESTATE
     TAXATION 52 (First Quarter 2004), *reprinted* in 20 TAX MGMT. REAL
     ESTATE J. 329 (2004).

*New Changes to the At-Risk Rules*, 6 JOURNAL OF PASSTHROUGH TAXATION 37
     (Sept.-Oct. 2003).

*Applying the Unrelated Debt-Financed Income Rules to Investments in Real Property*, 15 TAXATION OF EXEMPTS 3 (July-Aug. 2003) (with S. McDowell).

*Reverse Allocations: More than Meets the Eye,* 5 JOURNAL OF PASSTHROUGH ENTITIES 35 (Sept.-Oct. 2002).

*Adding a New Cash Partner to an Operating Partnership (pt. 2)*, BUSINESS ENTITIES 38 (March-April 2002).

*Adding a New Cash Partner to an Operating Partnership (pt. 1)*, BUSINESS ENTITIES 28 (Jan.-Feb. 2002).

*Implications of Estate Tax Repeal and Carryover Basis for Real Estate Owners*, 91 TAX NOTES 511 (2001).

*Getting Out Without Selling Out: The Proposed Partnership Merger and Division Regulations*, 59 N.Y.U. INST. FED. TAX. §11 (2001).

*Dealing With the Contribution of Property to a Partnership (pt. 2)*, BUSINESS ENTITIES 18 (Jan.-Feb. 2001).

*Dealing With the Contribution of Property to a Partnership (pt. 1)*, BUSINESS ENTITIES 16 (Nov.-Dec. 2000).

*Revenue Ruling Suggests Strategic Partnership Failure to Book-Up*, 2000 THE TAX ADVISOR 159 (March 2000).

*Congress Repeals Installment Reporting for Accrual Taxpayers*, 2000 THE TAX ADVISOR 142 (March 2000).

*Doing the* McCauslen *Two-Step*, BUSINESS ENTITIES 18 (Nov.-Dec. 1999).

*Judge Tannenwald on the Tax Court: An Enduring Legacy of Fundamental Fairness*, 48 EMORY L.J. 863 (1999).

*Issues and Strategies in Exiting Partnerships,* 57 N.Y.U. INST. FED. TAX. §11 (1999).

*How Electronic Commerce Works*, TAX NOTES INT'L (May 12, 1997).

*An Introduction to the US Taxation of Limited Liability Companies*, 1995 FISKAAL 223.

*Cancellation of Indebtedness Income*, 1992 FISKAAL 96.

*Economic Analysis and Unconstitutional Conditions: A Reply to Professor Epstein*, 27 U. SAN DIEGO L. REV. 359 (1990).

*The New Section 752 Regulations: A Rejoinder*, 48 TAX NOTES 1056 (1990).

*Long Awaited Regulations Under Section 752 Provide Wrong Answers*, 44 TAX L. REV. 627 (1989).

*Equitable Implementation of Tax Expenditures*, 9 VA. TAX REV. 109 (1989) (co-authored with J. Edrey).

*Rethinking Generation-Skipping Transfers*,  40 SW. L.J. 1145 (1987).

*Rethinking Tax Transitions: A Reply to Dr. Shachar*, 98 Harv. L. Rev. 1809 (1985).

*Book Review: The Theory of Dispute Resolution*, 37 OK. L. REV. 437 (1984).

*A Re-Evaluation of the Terminable Interest Rule*, 39 TAX L. REV. 1 (1983).

*Systemic Coercion: Unconstitutional Conditions in the Criminal Law*, 72 J. CRIM. L. & CRIM. 128 (1981).


## RECENT SPEECHES

*Tax Policy*, USD School of Law - RJS LAW Third Annual Tax Controversy Institute (San Diego, CA: July 2018)  (panel moderator).

*Allocation of Partnership Liabilities Under Section 752*, PLI Tax Planning for Domestic & Foreign Partnerships, LLCs, Joint Ventures & Other Strategic Alliances (Chicago, IL, New York, NY, and San Francisco, CA: May - June 2018).

*Exit Strategies for Partners with Deficit Capital Accounts*, 2017 AICPA National Real Estate & Construction Conference (Las Vegas, NV: December 2017).

*Partnership Allocations, Distributions, and the Distribution Antiabuse Rules*, 2017 AICPA National Real Estate & Construction Conference (Las Vegas, NV: December 2017).

*Wherefore Section 736?*, 70th Annual University of Chicago Tax Policy Seminar (Chicago, IL: November 2017) (panel presenter).

*Tax Reform,* Harvard Law School Bicentennial Celebration (Cambridge, MA: October 2017) (panel participant).

*Allocation of Partnership Liabilities Under Section 752*, PLI Tax Planning for
   Domestic & Foreign Partnerships, LLCs, Joint Ventures & Other Strategic
   Alliances (Chicago, IL, New York, NY, and San Francisco, CA: May - June
   2017).

*The New Partnership Audit Rules*, USD School of Law - RJS LAW Tax
   Controversy Institute (San Diego, CA: December 2016) (co-presenter).

*Partnership Exit Strategies*, 2016 AICPA National Real Estate Conference (Las
   Vegas, NV: November 2016).

*Partnership Update*, 2016 AICPA National Real Estate Conference (Las Vegas,
   NV: November 2016).

*A Comparative Look at Tax Courts: The US and Mexico*, 2016 University of San
   Diego School of Law - Procopio International Tax Institute (San Diego,
   CA: November 2016).

*Exchanges by Partnerships: Exploring the Prickly Relationship Between Section
   1031 and Subchapter K*, 21st Annual Jeremiah Long Memorial
   Conference on Like-Kind Exchanges Under IRC §1031 (San Diego, CA:
   October 2016) (with Lou Weller).

*Partnership Update*, California State Bar Tax Section Annual Meeting (San
   Diego, CA: October 2106).

*Leveraged Partnership Distributions*, 2016 Oregon Tax Institute (Portland, OR:
   June 2016) (with Todd Golub).

*Advanced Basis Issues: Impact of Liabilities*, PLI Tax Planning for Domestic &
   Foreign Partnerships, LLCs, Joint Ventures & Other Strategic Alliances
   (Chicago, IL, New York, NY, and San Francisco, CA: May - June 2016).

*Disguised Sales and Other Mixing Bowl Provisions*,  CPAmerica 2015 Tax Forum
   (Santa Rosa, CA: November 2015).

*Partnership Exit Strategies*, CPAmerica 2015 Tax Forum (Santa Rosa, CA:
   November 2015).

*Advanced Section 752 Planning*, PLI Tax Planning for Domestic & Foreign
   Partnerships, LLCs, Joint Ventures & Other Strategic Alliances (Chicago,
   IL, New York, NY, and San Francisco, CA: May - June 2015).

*Tax Ethics*, Baker & McKenzie Annual Tax Meeting (San Diego, CA: January
   2015).

*The Non-Tax Implications of the Taxation of Partnership Options*, Bloomberg/BNA Tax Advisory Board Meeting (New York, NY: June 2014).

*Advanced Section 752 Planning*, PLI Tax Planning for Domestic & Foreign Partnerships, LLCs, Joint Ventures & Other Strategic Alliances (Chicago, IL and New York, NY: May 2014).

*Partnership Distributions*, Harvard Law School Tax Policy Seminar (Cambridge, MA: March 2014).

*Partnership Inequalities*, 66th Annual University of Chicago Federal Tax Conference (Chicago, IL: November 2013) (panel presenter).

*Partnership Debt Issues*, 2013 AICPA National Real Estate Conference (Las Vegas, NV: November 2013).

*Buying and Selling a Partnership Interest: A Checklist for the Tax Advisor*, 2013 AICPA National Real Estate Conference (Las Vegas, NV: November 2013).

*Tax Planning Workshop: "Drop & Swap" and "Mixing Bowl" Techniques*, 2013 ABA Tax Section Fall Meeting (San Francisco, CA: September 2013) (panel participant).

*Tax Credit Planning After* Historic Boardwalk *and Anticipated IRS Guidance*, 2013 ABA Tax Section Fall Meeting (San Francisco, CA: September 2013) (with Steven Berman).

*Partnership Noncompensatory Options*, BNA/Bloomberg Tax Advisory Board Meeting (New York, NY: June 2013) (with R. Crnkovich).

*Now You See It, Now You Don't: Exiting a Partnership and Making Gain Disappear*, 2013 Northwestern Graduate Tax Seminar (Chicago, IL: Feb. 2013).

*Is Your Partner Under the Boardwalk?*, 2013 ABA Tax Section Mid-Year Meeting (Orlando, FL: Jan. 2013) (panel moderator).

*Credit Where Credit Is Due: Who is a Partner After* Historic Boardwalk, BNA Tax Advisory Board Meeting (New York, NY: December 2012).

*When Partners Go Their Separate Ways: A Case Study*, CPAmerica 2012 Tax Forum (Nashville, TN: November 2012).

*Partnership Hot Topics*, 2012 AICPA National Real Estate Conference (Las Vegas, NV: November 2012).

*Regarding Disregarded Entities*, 2012 AICPA National Real Estate Conference
(Las Vegas, NV: November 2012).

*Taxation of the Cost of a Professional Education*, USD Tax Law Speakers Series
(San Diego, CA: October 2012).

*Extracting Cash from a Partnership in Connection with a Property
Contribution: Tax-free or Just a Brilliant Disguise?*,  47th Annual
Southern Federal Tax Institute (Atlanta, GA: October 2012) (with M.
Mollerus).

*To Book Up or Not to Book Up: That Is the Question*, 2011 ABA Tax Section May
Meeting (Washington, DC: May 2011) (panel participant).

*Partnership Taxation and Restructuring*, 2011 AICPA Annual National Real
Estate Conference (Scottsdale, AZ: November 2011).

*Partnership Taxation for Fun and Profit,* 2011 AICPA Annual National Real
Estate Conference (Scottsdale, AZ: November 2011).

*Planning for Debt Discharge Income and Section 108 Relief: Part 2*, ABA
Teleconference (December 2010) (with F. Witt).

*Partnership Financial Restructuring,* 64th Annual Federal Tax Clinic
(Tuscaloosa, AL: November. 2010).

*Getting Into and Out of a Partnership: Carried Interests, Economic Substance
and Debt Issues*, 2010 AICPA National Real Estate Conference (Las
Vegas, NV: November 2010).

*Two Hours of Partnership Taxation*, 2010 AICPA National Real Estate
Conference (Las Vegas, NV: November 2010).

*Getting Into and Out of a Partnership: Carried Interests, Economic Substance,
and Debt Issues*, CPAmerica 2010 Tax Forum (Charleston, SC: November
2010).

*Planning for Debt Discharge Income and Section 108 Relief*, ABA
Teleconference (September 2010) (panel participant).

*Don't Get Carried Away by Carried Interests*, ABA Tax Section Fall Meeting
(Toronto, ON: September 2010) (panel participant).

*Did Codification of Economic Substance Repeal the Partnership Anti-Abuse
Rule*, BNA Tax Advisory Board Meeting (New York, NY: June 2010).

*Tax Efficient Ways of Exiting a Partnership*, 2010 GSCPA Real Estate
     Conference (Atlanta, GA: June 2010).

*Partnership Cancellation of Indebtedness and Related Issues*, 2009 AICPA
     National Real Estate Conference (New Orleans, LA: November 2009).

*Intermediate Partnership Taxation*, 2009 AICPA National Real Estate
     Conference (New Orleans, LA: November 2009).

*Choice of Entity: Disregarded Entities, Partnerships and S Corporations*,
     CPAmerica 2009 Tax Forum (San Francisco, CA: November 2009).

*I Need Money: Tax Efficient Ways of Exiting a Partnership,* 44th Annual
     Southern Federal Tax Institute (Atlanta, GA: October 2009).

*Now You See It, Now You Don't: Exiting a Partnership and Making Gain
     Disappear,* BNA Tax Advisory Board Meeting (New York, NY: December
     2008).

*Getting Into and Out of Partnership*, 2008 Great Plains Tax Institute (Omaha,
     NE: December 2008).

*Partnership Tax Issues*, 2008 AICPA National Real Estate Conference (Phoenix,
     AZ: November 2008).

*Partnership and Fund Tax Issues*, 2008 AICPA National Real Estate Conference
     (Phoenix, AZ: November 2008).

*Capital Gains Planning,* 2008 National AICPA Real Estate Conference (Phoenix,
     AZ: November 2008) (with L. Weller).

*Advanced Partnership Taxation*, 2008 CPAmerica International 2008 Tax
     Forum (Palm Coast, Florida: November 2008).

*Partnership Mixing Bowls: Problems and Solutions*, Atlanta Tax Forum
     (Atlanta, GA: September 2008).

*Getting Into and Out of a Real Estate Partnership*, 14th Annual APA
     SuperConference (Nashville, TN: July 2008).

*The Fight Over Carried Interests: Legislative Proposals and Pitfalls*, 24th
     Annual Texas Federal Tax Institute (San Antonio, TX: June 2008) (panel
     participant).

*Disguised Sales, Mixing-Bowls and Synthetic Installment Sales*, 2008 GSCPA
     Real Estate Conference (Atlanta, GA: May 2008).

*Order in the Court: The Importance of Timing in Partnership Transactions*, ABA Tax Section May Meeting (Washington, DC: May 2008) (panel participant).

*Taxing Carried Interests and Tax Reform*, Loyola University Chicago Law Journal Conference on Tax Law in a Liberal Democracy (Chicago, IL: March 2008).

*Partnership Carried Interests: The Past Is Prologue*, Tax Management Luncheon (Washington, DC: January 2008).

*Update on Partnership Carried Interests*, Tax Policy Advisory Committee to the Real Estate Roundtable (Washington, DC: January 2008).

*The Past is Prologue: Carried Interests,* BNA Tax Advisory Board Meeting (New York, NY: December 2007).

*Hot Topics in Partnership Taxation*, 2007 AICPA National Real Estate Conference (Las Vegas, NV: November 2007).

*Basic Partnership Taxation*, 2007 AICPA National Real Estate Conference (Las Vegas, NV: November 2007).

*Creative Tax Planning for Real Estate Transactions*, ALI-ABA Advanced Course of Study (Atlanta, CA: October 2007) (panel participant).

*Partnership Carried Interests: A Look Forward*, Tax Policy Advisory Committee to the Real Estate Roundtable (Washington, DC: October 2007).

*Partnership Carried Interests*, ABA Tax Section Fall Meeting (Vancouver, BC: September 2007) (panel moderator).

*Update on Carried Interests*, Atlanta Bar Association: Real Estate Section (Atlanta, GA: August 2007).

*Partnership Carried Interests,* Panel for the Senate Staff of the Banking and Finance Committees Sponsored by the Managed Funds Association and the U.S. Chamber of Commerce (Washington, DC: July 2007).

*Partnership Allocation of Real Estate Tax Credits,* BNA Tax Advisory Board Meeting (New York, NY: June 2007).

*Partnership Carried Interests,* Tax Policy Advisory Committee to the Real Estate Roundtable (Washington, DC: June 2007).

*Tips and Traps in Forming a New Partnership,* 2007 GSCPA Real Estate Conference (Atlanta, GA: May 2007).

*Modernizing Section 751(b) – ABA Proposals,* ABA Tax Section – Partnership Committee: May Meeting (Washington, DC: May 2007) (panel moderator).

*Getting In and Getting Out of a Partnership,* 2006 AICPA Annual Real Estate Conference (Phoenix, AZ: November 2006).

*Partnership Update,* 2006 AICPA Annual Real Estate Conference (Phoenix, AZ: November 2006).

*Real Estate Taxation,* ABA Tax Section CLE on the Road (Atlanta, CA: June 2006) (with T. Cuff and S. Kalus).

*Recommendations on Modernizing Section 751(b),* BNA Tax Advisory Board Meeting (New York, NY: June 2006).

*Cash and Carried Interests,* Southeast Tax Institute 2006 (Atlanta, GA: May 2006).

*Creative Use of Partnership Debt,* 25th (2006) J. Nelson Young Tax Institute (Chapel Hill, NC: April 2006).

*Partnership Disguised Sales*, 2005 AICPA National Real Estate Conference (Las Vegas, CA: November 2005).

*Partnership Taxation*, 2005 AICPA National Real Estate Conference (Las Vegas, CA: November 2005).

*The Section 734(b) Basis Adjustment Needs Repair*, Northwestern Law School Graduate Tax Colloquium (Chicago, IL: January 2005).

*The Truth About Partnership Debt. Guaranteed,* BNA Tax Advisory Board Meeting (New York, NY: December 2004).

*Tax Aspects of Real Estate Investing Through a Partnership*, 2004 AICPA National Real Estate Conference (Indian Wells, CA: November 2004).

*Deduction for Construction Activities: New Section 199*, 2004 AICPA National Real Estate Conference (Indian Wells, CA: November 2004).

*Consolidated Group Joint Ventures, Including One-Party Limited Liability Companies*, 2004 ALI-ABA Consolidated Tax Return Regulations (Washington, DC: October 2004) (with L. Zarlinga and W. Wasserman).

*Tax Issues Arising From the Admission of a Partner to a Partnership,* 39th
    Annual Southern Federal Tax Institute (Atlanta, GA: September 2004).

*Federal Income Tax Consequences of Dissolving a Family Limited Partnership*,
    2004 Fiduciary Law Institute (St. Simons, GA: July 2004).

*Tax-Efficient Ways of Extracting Value From a Real Estate Partnership,* 2004
    GSCPA Real Estate Conference (Atlanta, GA: June 2004).

*Partnership Options and Convertible Debt Instruments*, Eighth Annual Federal
    Real Estate Tax Conference (Washington, DC: December 2003).

*Tax-Efficient Ways of Extracting Cash From a Real Estate Partnership*, 2003
    AICPA National Real Estate Conference (New Orleans, LA: November
    2003).

*Consolidated Group Joint Ventures, Including One-Party Limited Liability
    Companies*, 2003 ALI-ABA Consolidated Tax Return Regulations
    (Washington, DC: October 2003) (with L. Zarlinga and W. Wasserman).

*Cash and Carried Interests: Protecting Both the Developer and the Investor in a
    Real Estate Partnership*, 2003 GSCPA Real Estate Conference (Atlanta,
    GA: June 2003).

*Creative Use of Partnership Debt*, Seventh Annual Federal Real Estate Tax
    Conference (Washington, DC: December 2002).

*Partnership Taxation: A Guide for the Real Estate Professional*, 2002 AICPA
    National Real Estate Conference (Las Vegas, NV: November 2002).

*A Practical Guide to the Contribution of Appreciated Property to Partnerships*,
    Louisiana State Bar Tax Section — Mardi Gras Meeting (New Orleans, LA:
    February 2002).

*Estate Planning Implications of the 2001 Act for Real Estate*, 2002 ABA Tax
    Section—Real Estate Committee: Mid-Year Meeting (New Orleans, LA:
    January 2002).

*Bringing Fresh Money Into the Deal: Adding a New Cash Investor to an
    Existing Partnership*, Sixth Annual Federal Real Estate Tax Conference
    (Washington, DC: December 2001).

*Adding a New Cash Partner to an Operating Partnership*, 2001 AICPA National
    Real Estate Conference (Atlanta, GA: November 2001).

*Intermediate Partnership Taxation*, 2001 AICPA National Real Estate
Conference (Atlanta, GA: November 2001).

*Ethical Issues in Real Estate Transactions*, ALI-ABA Creative Tax Planning for
Real Estate Transactions (San Francisco, CA: October 2001).

*A Practical Guide to the Contribution of Appreciated Property to Partnerships*,
Chattanooga Tax Practitioners December Meeting (Chattanooga, TN:
December 2000).

*Real-World Issues in Contributing Appreciated Property to a Partnership*, 2000
AICPA National Real Estate Conference (Las Vegas, NV: November
2000).

*Hot Tax Topics*, 2000 AICPA National Real Estate Conference (Las Vegas, NV:
November 2000) (with T. Cuff).

*Partnership Deal Structures: Entering, Exiting, and the Mixing Bowl*, Federal
Taxation of Real Estate Transactions Symposium (Columbus, OH:
November 2000).

*Forming a Real Estate Partnership: A Practical Look at the Section 704(c)
Options*, Fifth Annual Federal Real Estate Tax Conference (Washington,
DC: November 2000).

*Partnership Mergers and Divisions*, 59th NYU Institute on Federal Taxation
(New York, NY: November 2000).

*Pathological Partnership Debt*, ALI-ABA Conference on Creative Tax Planning
for Real Estate (Boston, MA: September 2000).

*Partnership Mergers and Divisions*, 16th Annual Texas Federal Tax Institute
(San Antonio, TX: June 2000).

*Something Simple: Joining and Exiting a Partnership*, 37th Great Plains Federal
Tax Institute (Lincoln, NE: December 1999) (with Fred Witt).

*Issues and Strategies in Exiting Partnerships*, Fourth Annual Federal Real
Estate Taxation (Bethesda, MD: November 1999).

*Partnership Tax Issues*, 1999 AICPA National Real Estate Conference (Orlando,
FL: November 1999).

*Choice of Entity/Planning With Entities*, Deloitte & Touche Financial Consulting
Services Annual Meeting (Orlando, FL: November 1999) (with M. Lux).

*The Effect of E-Commerce on the Real Estate Industry*, 1999 Annual Deloitte-Touche Real Estate Conference (Denver, CO: September 1999).

*Doing the* McCauslen *Two-Step: Did the Government Get It Right in Revenue Ruling 99-6?*, 1998 ABA Tax Section—Real Estate Subcommittee: Annual Meeting (Atlanta, GA: June 1999).

*Issues and Pitfalls in Exiting Partnerships*, 57th NYU Institute on Federal Taxation (New York and San Diego: November 1998).

*Dispositions of Partnership Interests*, 1998 ABA Tax Section—Real Estate Committee: May Meeting (Washington, DC: May 1998).

*Distributions From Highly Leveraged Partnerships*, 1997 ABA Tax Section—Real Estate Committee: Annual Meeting (San Francisco, CA: August 1997).

## GOVERNMENT PARTICIPATION

Principal Draftsperson, ABA Tax Section Comments on Proposed Regulations Under Section 751(b) (May  2016).

Submission of Comments on Section 704(c) in Response to Notice 2009-70 (January 2010).

Principal Draftsperson, ABA Tax Section Comments on Notice 2006-14 Regarding Modernization of Section 751(b) (December 2006).

Co-Principal Draftsperson, ABA Tax Section Comments on Notice 2005-15 Regarding 704(c) Gain Arising in Partnership Mergers (February 2006).

Witness Before Senate Finance Committee: Subcommittee on Taxation and IRS Oversight Regarding the Income Tax Implications of Estate Tax Repeal and Carryover Basis (2001).

## CLASSES TAUGHT

Partnership Taxation.
Taxation of Pass-Thru Entities.
Fundamentals of Income Taxation.
Corporate Taxation.
Derivatives.
Taxes and Business Strategy.
Federal Regulation of Tax-Exempt Organizations.

Professional Responsibility for the Tax Lawyer.
Contracts.
Evidence.

## HONORS

Emory Williams Award for Excellence in Teaching (Emory University 2006).
Crystal Apple Award for Excellence in Teaching to Graduate Students (Emory
University 1995).
Outstanding Professor (Emory Law School 1990).
William R. Bandy Award for Outstanding Professor (University of Oklahoma
College of Law 1983).

## MEMBERSHIPS

California State Bar (inactive status).
District of Columbia Bar.
American Law Institute.

## PROFESSIONAL ACTIVITIES

Bloomberg/BNA Tax Management Real Estate Advisory Board.
Academic Advisory Board, Tannenwald Foundation.

**EXHIBIT 2: HOWARD E. ABRAMS: PRIOR TESTIMONY, LAST 4 YEARS**

*The Williams Companies, Inc., v. Energy Transfer Equity, L.P., et al.,* Case Nos. 12168-VCG and 12337-VCG (Del. Ch.) (Deposition and Trial Testimony).

**EXHIBIT 3: HOWARD E. ABRAMS: DOCUMENTS CONSIDERED**

| Document Title | Bates/Docket |
|---|---|
| Ying Declaration | D.I. 478 |
| Evercore Tax Considerations Presentation | EFH90001508 |
| Evercore Oncor Tax Analysis | EFH-EVR090003152 |
| Evercore Illustrative Oncor Tax Analysis | EFH-EVR090003169 |
| Omnibus Tax Memorandum | D.I. 2296 |
| Hiltz Deposition Transcript | |
| Tax Matters Agreement | |
| Amended and Restated Tax Sharing Agreement | |
| Federal and State Income Tax Allocation Agreement | |
| Abrams & Witt, 704-2nd T.M., Disregarded Entities | |
| Allocation Motion | D.I. 13102 |
| Kirkland Preliminary Statement | D.I. 13255 |
| Richard L. Doernberg, Howard E. Abrams & Don A. Leatherman, Federal Income Taxation of Corporations and Partnerships (5th ed. 2014) | |
| Cohen & Harrington, Is the Internal Revenue Service Bound by Its Own Regulations and Rulings?, 51 The Tax Lawyer 675 (1998) | |
| Internal Revenue Code of 1986 (as amended and in effect) and associated treasury regulations. | |
| Other materials as cited in his expert report | |