**Exhibit 8**

```
 1                    H. Abrams
 2       Q.    And your declaration contains
 3  all the basis for your opinions, correct?
 4       A.    Yes.
 5       Q.    If we could go back to your
 6  declaration for a moment and if you could
 7  turn to page 3.
 8             Are you there, sir?
 9       A.    I'm there.
10       Q.    Do you see the heading Roman
11  Numeral IV is the summary of your expert
12  opinions?
13       A.    Yes.
14       Q.    And that summary extends from
15  page 3 through page 10 of your
16  declaration, correct?
17       A.    It starts on 3 and the
18  declaration ends on page 10.
19       Q.    Okay.
20             And do paragraphs 13 through 27
21  of your declaration contain all of your
22  expert opinions?
23       A.    Yes.
24       Q.    And, sir, is it fair to say you
25  have three overarching expert opinions,
```

```
 1                    H. Abrams

 2   correct?

 3        A.    Yes.

 4        Q.    And the first expert opinion is

 5   that the owner of a disregarded entity is

 6   liable for the federal income tax on any

 7   gain from the sale of the disregarded

 8   entity or its asset, not the disregarded

 9   entity, correct?

10        A.    Yes.

11        Q.    That is your first opinion?

12        A.    It is.

13        Q.    And if you turn to page 4 --

14   excuse me, page 5, heading B.

15             Are you there, sir?

16        A.    I am.

17        Q.    Is heading B your second

18   overarching opinion?

19        A.    It is.

20        Q.    And to be clear, your second

21   overarching opinion is because a DE --

22   disregarded entity -- is not liable for

23   the parent's federal income tax, the IRS

24   has no recourse against the DE's assets

25   and may only seek recourse against the
```

```
 1                    H. Abrams

 2  parent's ownership of DE subject to claims

 3  of senior creditors of the parent and all

 4  creditors of the DE, correct?

 5       A.    Yes.

 6       Q.    And your third and final opinion

 7  is reflected on page 8, is that correct?

 8       A.    Yes.

 9       Q.    And your third opinion is, "As a

10  general rule, assuming the DE's assets are

11  appreciated, a buyer will pay more to

12  acquire a DE in a taxable transaction than

13  in a tax-free transaction because the sale

14  will result in a step-up in basis that

15  benefits the buyer."

16            Correct?

17       A.    Yes.

18       Q.    And you stand by all three of

19  those opinions, right?

20       A.    I do.

21       Q.    And those are the only opinions

22  that you've been asked to prepare for the

23  parties that retained you for the

24  allocation hearing?

25       A.    I think there are other things
```

1              H. Abrams

2         Q.    My earlier question specifically

3    referred to state tax laws.  Now I'm

4    trying to refer to other laws, so other

5    state laws that are applicable beyond tax.

6              Do you understand the

7    distinction, sir?

8         A.    I do.  I am not.

9         Q.    Let me get a clean question and

10   answer.

11             Sir, now we're setting aside

12   state tax laws, are you offering an

13   opinion on whether EFIH would be liable

14   under other state law for its sale of its

15   interest in Encore?

16        A.    You asked me if it would be

17   liable, but you didn't say liable for

18   what.

19        Q.    Let me be very clear.  Would

20   EFIH be liable for taxes owed under any

21   state law theory for its sale of its

22   interest in Encore?

23        A.    I'm not expressing an opinion on

24   that.

25        Q.    All right.

1              H. Abrams

2              And to be more specific about

3    what potential state law theories may be

4    asserted -- sir, you're not offering an

5    opinion on whether EFIH faces potential

6    liability resulting from any veil piercing

7    allegation for taxes owed resulting from

8    its sale of its interest in Encore?

9       A.    That's correct.

10      Q.    And you're not offering any

11   opinion on any potential liability that

12   EFIH may face from any alter ego theory

13   for any taxes owed resulting from its sale

14   of its interest in Encore, correct?

15      A.    Correct.

16      Q.    And you're not offering any

17   opinion on any potential liability that

18   EFIH may owe under any nominee liability

19   theory for any taxes owed for its sale of

20   its interest in Encore?

21      A.    Correct.

22              MR. McKANE:  I have another

23         exhibit I want to show you, Exhibit 3.

24              (Abrams Exhibit 3, Memorandum

25         dated 6/28/02 from the Office of Chief

```
 1              H. Abrams

 2   opinion of the Internal Revenue Service.

 3       Q.    In fact, what you're saying is

 4   this is not an opinion, this is just the

 5   advice of the Office of Chief Counsel,

 6   correct?

 7       A.    It's an opinion of the Chief

 8   Counsel.

 9       Q.    Okay.

10             So this is the opinion of the

11   Chief Counsel, at least at this time,

12   right?

13       A.    Actually, Associate Area

14   Counsel, but yes.

15       Q.    So it was the opinion of the

16   Associate Area Counsel that the Service

17   could pursue an alter ego theory, correct?

18       A.    That it might be possible to

19   assert an alter ego theory, yes.

20       Q.    And another theory that might be

21   possible is a nominee theory, correct?

22       A.    That's what it says, yes.

23       Q.    And another theory is a

24   transferee theory, correct?

25       A.    Yes.
```

```
 1                    H. Abrams
 2        Q.    And it's possible under those
 3   state law theories EFIH as a disregarded
 4   entity could be liable for a tax owed by
 5   its member parent EFH, correct?
 6              MR. EGAN:  Objection.
 7        A.    I didn't express such an opinion
 8   in my report.  I'd have to consider these
 9   arguments.  I'd have to look at more facts
10   to render a conclusion on that question.
11        Q.    You can't render a conclusion,
12   you can't even say whether it's possible
13   or not?
14        A.    Correct.
15        Q.    That under these theories -- let
16   me finish.
17        A.    Sorry.
18        Q.    You have not rendered a
19   conclusion and you cannot even state
20   whether it is possible or not under these
21   state law theories EFIH could be found
22   liable for a tax owed by its member parent
23   EFH, correct?
24        A.    I can't do that now, yes.
25        Q.    And you have not done or taken
```

```
 1                H. Abrams
 2   any effort to do so, so far in this
 3   engagement, correct?
 4       A.    That's correct.
 5       Q.    And, sir, you would not hold
 6   yourself out as an expert in Delaware or
 7   Texas veil piercing law liability, would
 8   you?
 9       A.    No.
10       Q.    And, sir, you would not hold
11   yourself out as an expert in Delaware or
12   Texas alter ego liability, would you?
13       A.    No.
14       Q.    And, sir, you would not hold
15   yourself out as an expert in Delaware or
16   Texas state nominee liability law, would
17   you?
18       A.    No.
19       Q.    Let's return to your declaration
20   for a moment.  I want to direct your
21   attention to paragraph 13.  The portion I
22   want to refer you to is at the end of 13,
23   which is at the top of page 4.
24              Are you with me, sir?
25       A.    I am.
```

```
 1                    H. Abrams
 2        A.    No.
 3        Q.    You don't know the manner -- the
 4   form in which the sale of EFH and EFIH
 5   interest took?
 6        A.    No.
 7        Q.    Sir, is it your understanding
 8   that EFH as the taxpayer could have made a
 9   check-the-box election during the course
10   of the Chapter 11 cases and converted EFIH
11   from an LLC into a C Corp?
12        A.    I don't know that it had that
13   authority.
14        Q.    You don't know one way or
15   another, correct?
16        A.    I don't know if the Bankruptcy
17   Court would have allowed it.
18        Q.    And you don't know -- did you
19   ask anyone from Ropes & Gray whether they
20   had an opinion on that issue?
21             MR. EGAN:  Objection.
22        A.    No.
23             THE WITNESS:  I'm sorry.
24   BY MR. McKANE:
25        Q.    If EFH had checked the box and
```

```
 1                 H. Abrams

 2    converted EFIH to a taxable entity, a

 3    regarded entity, and then there was a

 4    taxable disposition of their shared

 5    ownership interest in Encore, would EFIH

 6    have been liable for that tax?

 7             MR. EGAN:  Objection.

 8        A.    So that's not something that's

 9    in my report.  So I didn't express an

10    opinion on it.  Are you asking me now to

11    construct a new opinion for you?

12        Q.    I'm asking whether -- have you

13    considered that situation?  Have you been

14    asked to render an opinion on that

15    hypothetical?

16        A.    No.

17        Q.    And you're not prepared to do so

18    at this time, are you?

19        A.    It's not in my report, so I'd

20    need to make sure I had all the facts

21    unambiguously given to me and then I'd

22    think about it.  It falls within my

23    expertise, but I haven't considered the

24    details and I'm not sure, given the way

25    you've just phrased it in a sentence or
```

```
 1                    H. Abrams
 2   two, that that would be enough for me to
 3   be clear as to what I was asked, and so
 4   I'm not sure I'd be clear as to what I
 5   should answer.
 6        Q.    Are you an expert in Delaware
 7   fiduciary law?
 8        A.    I am not.
 9        Q.    Are you an expert in Texas
10   fiduciary law?
11        A.    I am not.
12        Q.    Are you an expert in the duties
13   of debtors in a Chapter 11 reorganization?
14        A.    I am not.
15        Q.    Would you need to factor in
16   restructuring law and fiduciary duty law
17   to render an opinion on whether EFH could
18   have checked the box and changed the tax
19   status of its debtor subsidiary EFIH?
20             MR. EGAN:  Objection.
21        A.    I don't know if I'd have to take
22   that into account.
23        Q.    Okay.
24             But you have done none of that
25   work to prepare to testify to date in the
```

```
 1                    H. Abrams

 2    allocation motion, correct?

 3        A.    That's correct.

 4        Q.    And you have no opinion to date

 5    on EFH's ability to check the box and

 6    change the tax status of EFIH, correct?

 7        A.    That's correct.

 8        Q.    And, sir, have you ever heard of

 9    a decision called the Majestic Star?

10        A.    Yes.

11        Q.    Have you read the Majestic Star

12    decision?

13        A.    I believe I have.

14        Q.    What is your understanding of

15    the Majestic Star decision?

16        A.    It deals with the ability to

17    check the box when the parent, but not the

18    subsidiary, is in bankruptcy, I believe.

19        Q.    Okay.

20              And it addresses, basically the

21    3rd Circuit discusses at some level the

22    ability of a debtor to use a check-the-box

23    election during the pendency of a

24    bankruptcy, correct?

25              MR. EGAN:  Objection.
```

```
 1                  H. Abrams
 2   but you did not need to rely on the
 3   document in rendering your opinions,
 4   correct?
 5       A.    I looked at the document.  I did
 6   not rely.
 7       Q.    Okay.
 8             And just to be absolutely clear,
 9   you did not rely on the Amended and
10   Restated Tax Sharing Agreement in reaching
11   your opinions in your declaration,
12   correct?
13       A.    That's correct.
14       Q.    You do not offer an opinion and
15   you have no opinion on whether Encore
16   would be liable to EFH pursuant to the
17   Amended and Restated Tax Sharing Agreement
18   as a result of a taxable sale of Encore?
19       A.    That's correct.
20       Q.    And, sir, are you aware that in
21   each such proceeding before the Public
22   Utility Commission of Texas in which the
23   debtors or Encore sought approval of the
24   debtors' sale of Encore, that Encore was a
25   participant in the proceedings?
```

```
 1                    H. Abrams
 2   group means EFH and its subsidiaries other
 3   than the members of the Encore Holdings
 4   Group?
 5       A.    Yes.
 6       Q.    So you understand that -- and
 7   EFH refers to EFH Corp., do you understand
 8   that, sir?
 9       A.    Yes.
10       Q.    So you understand that the
11   prohibition from Encore taking any actions
12   that would increase the tax liability of
13   any member of the EFH group includes
14   taking any actions to increase the tax
15   liability of EFH corp, correct?
16            MR. EGAN:   Objection.
17       A.    I don't have an opinion on the
18   interpretation of this provision.
19       Q.    Okay.
20            So you have no opinion on
21   whether Encore would be liable to EFH if
22   it participated in a Public Utility
23   Commission of Texas proceeding for
24   approval of a taxable transaction?
25       A.    That's correct.
```

```
 1                    H. Abrams

 2       A.    That's not the second sentence.

 3       Q.    Oh, I apologize.  It's not the

 4  second sentence.  It's the last sentence.

 5       A.    Yes.

 6       Q.    Did I properly read the last

 7  sentence?

 8       A.    I think you did.

 9       Q.    Okay.

10             Do you have an understanding of

11  how to apply Step 1?

12       A.    I didn't opine in my report on

13  it.

14       Q.    Did you consider the allocation

15  of consolidated tax liability under this

16  agreement in reaching any of the opinions

17  in your declaration?

18       A.    No.

19       Q.    Did you conduct any analysis to

20  determine whether EFIH would have been

21  liable pursuant to this agreement, Abrams

22  Exhibit 6?

23       A.    No.

24       Q.    If EFIH were contractually

25  obligated to share in the income taxes
```

```
 1              H. Abrams
 2   triggered by a taxable transaction for its
 3   sale of its interest in Encore, would the
 4   other EFIH creditors have their recoveries
 5   diluted?
 6              MR. EGAN:   Objection.
 7        A.    I didn't render an opinion on
 8   that, and I believe it falls outside of my
 9   expertise.
10        Q.    Okay.
11              Did you consider the potential
12   contractual means by which EFIH could be
13   found liable for the federal income tax
14   owed, potentially owed by its parent EFH?
15        A.    Did you say the "contractual"?
16        Q.    Correct.
17        A.    I determined it wasn't relevant
18   to my analysis.
19        Q.    Okay.
20              Your analysis was focused on
21   federal tax law, correct?
22        A.    Yes.
23        Q.    And you limited it to federal
24   tax law, correct?
25        A.    Yes.
```

```
 1              H. Abrams
 2       Q.    You did not consider whether
 3  there were agreements that EFIH had
 4  voluntarily entered into that could
 5  obligate it to pay taxes for which it may
 6  not be liable for otherwise?
 7              MR. EGAN:  Objection.
 8       A.    I -- yes, I did not.
 9       Q.    And you have no understanding of
10  the facts or circumstances under which
11  EFIH became a party to the Federal and
12  State Income Tax Allocation Agreement that
13  is Abrams 6?
14       A.    Correct.
15       Q.    And you have no opinion on
16  whether EFIH could be liable to EFH
17  pursuant to that agreement as a result of
18  a taxable sale of Encore?
19       A.    Correct.
20       Q.    And you have no opinion on the
21  cost or time it would take for the debtors
22  to litigate whether EFIH was liable under
23  this agreement for any taxes associated
24  with a taxable sale of Encore?
25              MR. EGAN:  Objection.
```

```
 1                    H. Abrams

 2      A.    Correct.

 3      Q.    And you have no opinion on what

 4   impact the cost and time associated with

 5   litigating a dispute about this agreement

 6   would have on the recovery, recoveries of

 7   EFIH creditors?

 8            MR. EGAN:  Objection.

 9      A.    Correct.

10            MR. McKANE:  Can we take five

11      minutes?

12            THE WITNESS:  Okay by me.

13            MR. McKANE:  Go off the record.

14            THE VIDEOGRAPHER:  Going off the

15      record.  The time is 9:58 a.m.

16            (Recess taken from 9:58 a.m. to

17      10:07 a.m.)

18            THE VIDEOGRAPHER:  The time is

19      10:07 a.m.  We are back on the record.

20   BY MR. McKANE:

21      Q.    Mr. Abrams, I'm handing the

22   court reporter what I'm going to ask her

23   to mark as Abrams 7.  It's a document

24   colloquially referred to as the Tax

25   Matters Agreement.  It is Docket Number
```

```
 1                   H. Abrams

 2      Q.     Exhibit 4.

 3      A.     Oh, I'm sorry, Exhibit 4?

 4      Q.     Yes, sir.

 5      A.     No.

 6      Q.     So just so we have a clear

 7   record, you did not rely on Exhibit 4, the

 8   Amended and Restated Tax Sharing Agreement

 9   in reaching any of the opinions in your

10   declaration?

11      A.     Correct.

12      Q.     Okay.

13             So let's go to 7 again.  Just to

14   close you out, did you analyze the extent

15   under which -- sorry, let me strike that.

16             Did you analyze the extent to

17   which EFIH would have been jointly liable

18   with EFH for any tax liability arising

19   from a transaction involving Encore that

20   would have caused the TCH spinoff to

21   become taxable?

22             MR. EGAN:  Objection.

23      A.     No.

24      Q.     Did you assess or consider the

25   extent of any potential EFIH tax liability
```

```
 1                    H. Abrams

 2    under any of the sections of the Tax

 3    Matters Agreement?

 4        A.    No.

 5        Q.    And did you analyze whether the

 6    Tax Matters Agreement prohibited a taxable

 7    disposition of Encore except under some

 8    limited conditions?

 9        A.    No.

10        Q.    Did you analyze any of the

11    conditions that needed to be satisfied in

12    order to effectuate a taxable disposition

13    of Encore under the Tax Matters Agreement?

14              MR. EGAN:  Objection.

15        A.    No.

16        Q.    Did you analyze -- strike that.

17              Sir, on Exhibit 3 of your

18    declaration, you do not list as a document

19    that you considered the Bankruptcy Court

20    order confirming the third amended plan

21    dated August of 2016 which approved the

22    tax-free spinoff of TCEH?

23        A.    I'm sorry, could you say that

24    again?  I was getting the document.

25        Q.    Sure.  Sure.
```