## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | ) Chapter 11 |
|  | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
|  | ) |
| *Debtors.* | ) (Jointly Administered) |
|  | ) |
|  | ) **Re: D.I. 13392, 13394, 13395** |
|  | ) |

## UMB AND ELLIOTT'S OPPOSITION TO THE
## AD HOC EFH CLAIMANTS' MOTION IN LIMINE TO EXCLUDE
## THE TESTIMONY OF HOWARD ABRAMS AND BRADLEY ROBINS

UMB Bank, N.A., as Indenture Trustee ("<u>UMB</u>") for the unsecured 11.25%/12.25% Senior Toggle Notes due 2018, and Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "<u>Elliott</u>" and, together with UMB, "<u>Movants</u>"), by and through their undersigned counsel, hereby submit this opposition (the "<u>Opposition</u>") to the *Ad Hoc EFH Claimants' Motion in Limine To Exclude the Testimony of Howard Abrams and Bradley Robins* [D.I. 13392, 13394] (the "<u>Motion to Exclude</u>) and *The EFH Indenture Trustee's Joinder to the Ad Hoc EFH Claimants' Motion in Limine to Exclude the Testimony of Howard Abrams and Bradley Roibins* [D.I. 13395].[2]  In support of the Opposition, Movants respectfully state as follows:

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the *Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to Fix Appropriate Allocation of Certain Reserves and Expenses as Between the EFH and EFIH Debtors* (the "<u>Allocation Motion</u>") [D.I. 13102].

## PRELIMINARY STATEMENT

1.      The Motion to Exclude is a pre-trial merits brief dressed up as a motion *in limine*; it does little more than set up and knock down a strawman.  More than half of the Motion to Exclude is devoted to a superficial rehash of the last four years of these bankruptcy cases and a defense of the Debtors' pursuit of a tax-free disposition of their interest in Oncor.  The evidentiary arguments, by contrast, are tellingly short.  The Motion to Exclude does not contend that Movants' experts are unqualified, or that they used unreliable methods.  Instead, it simply argues that that the experts' anticipated testimony is "irrelevant" because the experts (along with Movants) seek to "second-guess" the Debtors' business judgment to explore and pursue a tax-free disposition.  [*See* D.I. 13394 ¶¶ 4–5, 27–28].

2.      That contention is simply wrong, as even a brief review of Movants' experts' declarations will make clear.  Moreover, Movants do not seek to litigate the reasonableness of the Debtors' decision-making.  Nor do Movants seek to litigate whether the Debtors should have sold their interest in Oncor through a taxable transaction instead of the tax-free transaction that the Debtors ultimately consummated with Sempra.  Rather, Movants simply argue that EFIH should not bear the vast majority—in some cases up to 90%—of the costs of pursuing a tax-free transaction, especially when there is compelling evidence that *both* EFH and EFIH benefitted from such a tax-free transaction, and indeed EFH more so than EFIH.  Contrary to the contentions in the Motion to Exclude, the testimony proffered by Movants' two experts—tax professor Howard Abrams and restructuring professional Bradley Robins—bears directly on that key factual issue, including whether, at certain points during these cases, the benefits of a tax-free transaction weighed more in favor of EFH.  Because the arguments the Ad Hoc EFH Claimants make are meritless, irrelevant, or both, the Motion to Exclude should be denied.

## BACKGROUND

**A.      The Allocation Motion.**

3.       On May 13, 2018, Movants filed the Allocation Motion [D.I. 13102] requesting that the Court enter an order determining the appropriate allocation as between EFH and EFIH with respect to certain Material Administrative Expense Claims.   Movants contend in the Allocation Motion that the allocation of the Material Administrative Expense Claims between EFH and EFIH must, consistent with Section 503(b) of the Bankruptcy Code, account for which estate or estates were preserved by, and thus benefited from, the expense at issue.  *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 136 (3d Cir. 1998) ("[A]dministrative expenses are allowable only for the actual, necessary costs and expenses of preserving the estate." (internal quotation marks omitted)).

4.       The Material Administrative Expense Claims at issue in the Allocation Motion include, among other things, more than $100 million in fees charged by Debtors' counsel, Kirkland & Ellis LLP ("Kirkland") (which allocated almost 90% of its E-Side fees to EFIH in its interim fee applications), and more than $35 million in fees charged by Debtors' financial advisor, Evercore (which allocated over 70% of its E-Side fees to EFIH in its interim fee applications), as well as nearly $50 million in fees charged by professionals representing the E-Side Committee.   In addition, the Material Administrative Expense Claims include any administrative claim that NextEra might hold related to the NextEra Termination Fee.

5.       Movants contend that Kirkland's and Evercore's fees should be allocated equally (50/50) between EFH and EFIH, because (among other reasons) these professionals expended a significant amount of time and effort pursuing a tax-free restructuring transaction of the E-Side

Debtors' assets as well as a tax-free spinoff of TCEH.[3]    As Debtors acknowledged in the "Omnibus Tax Memorandum" filed in October 2014 (the "<u>Tax Memorandum</u>"), this tax-free transaction structure was designed to avoid triggering "a tax liability of potentially $7 *billion* or more for EFH."  [D.I. 2296 at 12].  Movants contend that the E-Side Debtors' pursuit of a tax-free transaction benefitted both EFIH *and* EFH, given that (among other things) EFIH was a "disregarded entity" for federal income tax purposes, whereas EFH was the taxpaying corporate parent in the eyes of the IRS.  Movants maintain that an allocation to EFIH of nearly 90% of the expenses associated with the Debtors' efforts to effect a tax-free transaction cannot be squared with Sections 330 and 503(b) of the Bankruptcy Code, and is simply an unfair burden for the EFIH unsecured creditors to bear.

6.      The Ad Hoc EFH Claimants dispute Movants' position.  Though they do not contest that the allocation of administrative expenses between estates must account for which estate(s) benefited, [D.I. 13394 ¶¶ 5–6], they contend that because the Debtors—including EFIH—decided to pursue "various non-taxable transactions . . . EFIH must bear the costs of that decision" and "cannot seek to reallocate the fees," [D.I. 13394 ¶ 27].  Thus, a critical issue to resolve in connection with the Allocation Motion is whether the Debtors' efforts to complete a tax-free disposition of Oncor benefitted EFH only minimally, or both EFH and EFIH nearly equally.[4]

---

[3]    Movants request that the Court allocate 70% of E-Side Committee Professional Fee claims to EFH and 30% to EFIH for similar reasons.  Indeed, the E-Side Committee's lead bankruptcy counsel acknowledged in objecting to the TCEH Settlement that the E-Side Committee took "as a premise that all EFIH creditors will be paid in full in priority to EFH creditors" and accordingly was "concerned only with value to the E-side Debtors collectively, measured by return to EFH unsecured creditors."  [D.I. 6627 ¶ 88, n.4].

[4]    This analysis does not take into account whether TCEH bore its fair share of the expenses associated with effecting a tax-free spinoff.

**B.    Movants' Experts and Their Proposed Testimony.**

7.      Movants retained and timely disclosed two experts in connection with proceedings on the Allocation Motion: (1) Professor Abrams, a tax expert, and (2) Mr. Robins, a restructuring expert.   The opinions of Professor Abrams and Mr. Robins are offered to assist the Court in resolving the question whether the Debtors' pursuit of a tax-free transaction benefited EFH only minimally or EFH and EFIH nearly equally, and, in turn, the proper allocation of the professionals' fees incurred in connection with that pursuit.   The qualifications and opinions of each of the Movants' experts are summarized below.

*i.    Professor Howard Abrams.*

8.      Professor Abrams, a visiting tax professor at Harvard Law School, has over 35 years of experience as a professor of tax law, including extensive experience analyzing the tax consequences of corporate reorganizations.  *See* Ex. [D.I. 13394-1, Ex. 7 (Abrams Decl.) ¶¶ 2-3]. Professor Abrams does not offer any opinions as to the Debtors' exercise of business judgment in pursuing a tax-free disposition of Oncor.  Rather, Professor Abrams offers narrowly tailored, factual opinions that concern the tax consequences of a taxable sale or other disposition of the Debtors' interest in Oncor.

9.      <u>First</u>, Professor Abrams observes that, because EFIH was a disregarded entity, under current tax law, EFH (not EFIH) would have been directly liable for any federal income tax liability as a result of a taxable sale of Oncor.  *See* [D.I. 13394-8, Ex. 7 (Abrams Decl.) ¶¶ 13–15].  Professor Abrams goes on to opine that the Department of Treasury would not "change the law such that EFIH would be liable for the tax from a sale of EFIH or Oncor Holdings." [D.I. 13394-8, Ex. 7 (Abrams Decl.) ¶ 20].  Professor Abrams further opines that is so because, among other reasons, such a change would "leav[e] the proper process of preparing . . . returns

and paying tax in considerable doubt" and would cause "substantial disruption of long-settled taxpayer expectations and [Department of Treasury] policy."  [D.I. 13394-8, Ex. 7 (Abrams Decl.) ¶ 20].

10.    Second, Professor Abrams opines that, "[i]f EFIH and Oncor Holdings appreciated beyond their basis, a purchaser of EFIH or Oncor Holdings in a taxable sale would have benefited from a stepped-up basis" in the acquired assets.  [D.I. 13394-8, Ex. 7 (Abrams Decl.) ¶ 27].   Professor Abrams further opines that this "would be valuable because the purchaser would have been able to deduct the additional stepped-up basis as depreciation over the ensuing years." [D.I. 13394-8, Ex. 7 (Abrams Decl.) ¶ 27].

11.    The value of this step-up in basis—and the benefit afforded to EFH by EFIH foregoing pursuing of such a transaction—is not academic.  Notably, as the Court found when it approved the TCEH Settlement, TCEH received a $700 million general unsecured claim against EFH that was, in part, consideration for TCEH releasing claims for the "reduced step-up in tax basis of TCEH assets" associated with a tax-free spinoff of TCEH.  [*See* D.I. 7243 ¶¶ 27, 33]. Based on information and analyses contained in presentations prepared by the Debtors' investment banker, Evercore, Professor Abrams calculates the "after tax benefit of the basis step up of $2.037 billion" for a potential taxable sale of EFIH or its assets closing in 2018 to 2022.  [D.I. 13394-8, Ex. 7 (Abrams Decl.) ¶ 27].

### ii.    *Bradley Robins.*

12.    Bradley Robins, a partner at the investment banking firm Ducera Partners LLC, is a restructuring professional with over 25 years of experience advising clients on restructuring matters and financing transactions.  [*See* D.I. 13394-10, Ex. 9 (Robins Decl.) ¶¶ 2–3].  As with Professor Abrams, Mr. Robins does not opine on the Debtors' exercise of business judgment in

pursuing a tax-free disposition of Oncor.  Indeed, Mr. Robins expressly states in his report that he "do[es] not reach any conclusions regarding the business judgment of advisors to EFH and EFIH in ultimately approving a tax-free sale of Oncor Holdings."  [*See* D.I. 13394-10, Ex. 9 (Robins Decl.) ¶ 12].  Rather, Mr. Robins offers two affirmative opinions on the relative costs, benefits, and risks to EFH and EFIH of the Debtors' exploration and pursuit of a tax-free disposition of Oncor.[5]

13.    First, Mr. Robins opines that for the period 2014-2016, when EFIH was likely solvent, the Debtors' exploration and pursuit of a tax-free disposition of Oncor was beneficial to both EFH *and* EFIH.    Mr. Robins opines that, during this period, a tax-free disposition benefitted (i) EFH in that it adverted a multi-billion dollar tax liability that would have significantly impacted and likely eliminated EFH unsecured creditor recoveries, and (ii) EFIH in that EFIH did not need to take on any risk associated with a taxable transaction, given that its unsecured creditors were at the time expected to be paid in full.  [*See* D.I. 13394-10, Ex. 9 (Robins Decl.) ¶¶ 11(a), 27-34, 41].

14.    Second, Mr. Robins opines that, for the period 2017 and thereafter, when EFIH was likely insolvent, the Debtors' exploration and pursuit of a tax-free transaction benefited EFH to a relatively greater extent than EFIH.  [*See* D.I. 13394-10, Ex. 9 (Robins Decl.) ¶¶ 11(b), 35– 41].  Mr. Robins opines that, during this period, EFH continued to have no realistic option other than a tax-free transaction, whereas given the change in EFIH unsecured creditors' projected recovery, EFIH creditors may have benefited from consideration of a taxable transaction and the higher proceeds it could provide.  [*See* D.I. 13394-10, Ex. 9 (Robins Decl.) ¶¶ 35–40].

---

[5]    In addition, Mr. Robins intends to offer testimony at trial rebutting the Ad Hoc EFH Claimants' purported breakup fees expert.  The Motion to Exclude does not seek to exclude Mr. Robins' rebuttal opinions from being offered at trial.  [D.I. 13394 ¶ 24, n.4].

15.     Mr. Robins' opinions are in line with the testimony of the Debtors' own investment bankers near the outset of this case.  For example, at the 2014 hearing over the Debtors' proposed bidding procedures, William Hiltz of Evercore testified that if EFIH became insolvent, and assuming EFH could not shift its tax liability to EFIH, a taxable transaction "would be superior" for EFIH creditors.  *See* **Exhibit A**, Oct. 17, 2014 Hr'g Tr., at 199:25-200:22 (attached hereto).

### C.     The Ad Hoc EFH Claimants' Motion to Exclude.

16.     Professor Abrams and Mr. Robins were deposed on August 23 and August 24, respectively.  Counsel for the Ad Hoc EFH Claimants asked less than a dozen questions total at the two depositions, and instead yielded nearly the entirety of their time to Kirkland, counsel to the PAB (whose questioning spanned nearly three hours of the four-hour cap at each deposition).

17.     On August 24, the Ad Hoc EFH Claimants filed the Motion to Exclude.  [D.I. 13392].  The Motion to Exclude devotes less than two pages to describing Professor Abrams's and Mr. Robins's opinions, and another four pages to arguing that the Court should exclude the entirety of the affirmative expert testimony offered by Professor Abrams and Mr. Robins.  [D.I. 13394 ¶¶ 21–30].  The Ad Hoc EFH Claimants do not seek to exclude Mr. Robins's rebuttal expert testimony.  [D.I. 13394 ¶ 24, n.4].

### ARGUMENT

18.     The Federal Rules of Evidence, made applicable to this matter by Federal Rule of Bankruptcy Procedure 9017, "embody a strong preference for admitting any evidence that may assist the trier of fact."  *Pineda v. Ford Motor Co*., 520 F.3d 237, 243 (3d Cir. 2008).  Likewise, "Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility."  *Id.* (quoting *Kannankeril* v. *Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)).

19.     The admissibility of expert testimony under Rule 702 depends on three requirements:  (1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the testimony must be reliable; and (3) must "fit the issues in the case," *i.e.*, must assist the trier of fact to understand the evidence or determine a fact at issue.  *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); Fed. R. Evid. 702.

20.     Here, the Ad Hoc EFH Claimants do not challenge the expert qualifications of Movants' experts.  Nor do they claim that the testimony of Movants' experts should be excluded as unreliable.  The Ad Hoc EFH Claimants instead contend only that the testimony of Movants' experts is irrelevant and that Professor Abrams's testimony purportedly constitutes "an impermissible legal opinion."  [D.I. 13394 ¶¶ 25–30].  As shown below, both of these arguments are without merit.

## I.     THE EXPERT TESTIMONY OF PROFESSOR ABRAMS AND MR. ROBINS IS RELEVANT TO A KEY FACTUAL ISSUE IN THE ALLOCATION DISPUTE.

21.     Movants' proffered expert testimony is plainly relevant and goes directly to the critical factual issue of whether EFH, EFIH, or both estates benefited from the Debtors' years-long pursuit of a tax-free disposition.  Expert testimony is admissible under Rule 702 if it is "relevant for the purposes of the case and . . . assist [s] the trier of fact."  *Schneider*, 320 F.3d at 404.  "[T]he standard for this [relevancy] factor is not that high," and is satisfied if the expert's testimony "makes a fact of consequence more probable or less probable than it would be without the evidence."  *United States v. Ford*, 481 F.3d 215, 219–20 (3d Cir. 2007) (internal quotation marks omitted).

22.     The testimony offered by Movants' experts easily clears this threshold.  When allocating professional fees and administrative expenses under Section 503(b) of the Bankruptcy Code, courts consider whether the relevant estate or estates were preserved, and thus benefited

from the services at issue. *See Trans World Airlines*, 145 F.3d at 136. The Ad Hoc EFH Claimants do not dispute that standard, but instead only dispute the extent to which the work performed by the Debtors' and E-Side Committee's professionals to pursue a tax-free disposition of Oncor benefitted EFH and EFIH.

23.     Both Professor Abrams's and Mr. Robins's testimony speak directly to this disputed factual issue. Professor Abrams describes the tax consequences of a taxable sale of EFIH under current law, and opines that the Department of Treasury would not "change the law such that EFIH would be liable for the tax from a sale of EFIH or Oncor Holdings," given, among other things, the substantial disruption to taxpayer expectations and longstanding Treasury policy that such a change would cause. [*See* D.I. 13394-8, Ex. 7 (Abrams Decl.) ¶¶ 13–19]. Professor Abrams also opines that the purchaser of EFIH or Oncor Holdings in a taxable transaction could benefit from a stepped-up basis in the acquired assets in an amount exceeding $2 billion. [*See* D.I. 13394-1, Ex. 7 (Abrams Decl.) ¶¶ 21–27]. Each of these opinions is plainly relevant to determining the relative benefits to the EFH and EFIH estates of pursuing a tax-free transaction, as opposed to a taxable one. *See Pineda*, 520 F.3d at 243.

24.     Mr. Robins opines that the Debtors' pursuit of a tax-free disposition of Oncor benefitted both estates from 2014-2016, when EFIH was likely solvent, and benefitted EFH to a relatively greater extent than EFIH beginning in 2017 and thereafter, when EFIH was no longer solvent. [*See* D.I. 13394-10, Ex. 9 (Robins Decl.) ¶¶ 35–41]. These opinions, too, go directly to the benefits to the EFH and EFIH estates of pursuing a tax-free transaction. Accordingly, they plainly satisfy the Third Circuit's liberal relevance standard. *See Pineda*, 520 F.3d at 243.

25.     Contrary to the Ad Hoc EFH Claimants' suggestion, Movants' experts are under no obligation to "connect" their opinions directly to the specific "50/50 and 70/30 allocations

proposed by Elliott and UMB." [D.I. 13394 ¶ 29]. Rule 702 does not require Movants' experts to offer an opinion that any specific percentage allocation is correct in order to be admissible. As set forth above, Movants' expert testimony "makes a fact of consequence more probable or less probable," *i.e.*, that the Debtors' pursuit of a tax-free transaction benefitted EFH more than EFIH. *Ford*, 481 F.3d at 220. Rule 702 requires nothing more.

26.    Rather than challenge Professor Abrams's and Mr. Robins's actual opinions, the Motion to Exclude instead erects strawman opinions that neither expert actually offers. It claims, for instance, that Professor Abrams and Mr. Robins seek to offer testimony that the Debtors' "preference for non-taxable transactions over taxable ones was an inappropriate exercise of their business judgment." [D.I. 13394 ¶¶ 4–5, 25–28]. They go on to argue that such opinions are "entirely irrelevant" because "[t]he purpose of this allocation dispute is not to explore whether those decisions, or the analysis on which they were based, is right or wrong." [D.I. 13394 ¶ 27]. Tellingly, the Ad Hoc EFH Claimants do not provide a single citation to Professor Abrams's or Mr. Robins's expert reports, or to any portion of their deposition testimony, in support of this argument. [*See* D.I. 13394 ¶¶ 25–28]. The reason for this is simple: Neither expert offers the opinions that the Ad Hoc EFH Claimants claim they do in the Motion to Exclude.

27.    Professor Abrams's report does not attack, defend, or even mention the Debtors' business judgment in pursuing and ultimately consummating a tax-free restructuring transaction. [*See* D.I. 13394-8, Ex. 7 (Abrams Decl.)]. Nor does Mr. Robins's report. And, in fact, Mr. Robins's report expressly states: "I do not reach any conclusions regarding the business judgment of advisors to EFH and EFIH in ultimately approving a tax-free sale of Oncor Holdings." [6] [*See* D.I. 13394-10, Ex. 9 (Robins Rep.) ¶ 12]. Thus, the Ad Hoc EFH Claimants

---

[6]    The Ad Hoc EFH Claimants argue that the opinions of Movants' experts are "entirely irrelevant absent any evidence that [a taxable transaction] was ever proposed to the Debtors, or that the Debtors prevented interested

devote the entirety of the Motion to Exclude to attacking opinions that Movants' experts are not

offering, and invite the Court to commit legal error by excluding Movants' experts on that basis.

The Court should decline the invitation and deny the Motion to Exclude.

---

parties from proposing such a transaction."  [D.I. 13394 ¶ 28].  Not so.  Neither expert opines that the Debtors
failed to consider a taxable transaction or that they "prevented" one from being proposed.  Whether the Debtors
did or not is irrelevant to whether the work performed by their professionals benefitted EFH or EFIH—which is
the issue that Movants' experts address.  Regardless, to the extent the Ad Hoc EFH Claimants' argument is
relevant at all, it can be explored on cross-examination at trial.  *See B. Braun Melsungen AG v. Terumo Med.
Corp.*, 749 F. Supp. 2d 210, 223 (D. Del. 2010) ("Braun's concerns go to the weight to be accorded to them,
matters on which Braun will be free to examine Dr. Beaman at trial.")

## II.   PROFESSOR ABRAMS DOES NOT OFFER ANY IMPERMISSIBLE LEGAL OPINIONS.

28.   In addition to arguing that Professor Abrams's and Mr. Robins's testimony is irrelevant, the Ad Hoc EFH Claimants devote a single page of the Motion to Exclude to arguing that Professor Abrams's testimony "will constitute an impermissible legal opinion."  [*See* D.I. 13394 ¶ 30].   This argument misstates both Professor Abrams's testimony and the law.   Experts are "permitted to testify as to legal matters when those matters involve questions of fact."  *See In re Wyly*, 552 B.R. 338, 361–62 (Bankr. N.D. Tex. 2016) (permitting expert testimony concerning whether certain practices "were viewed as normal or proper by the cross-border trust and estate and tax bars during the relevant time period").   In addition, expert testimony as to legal matters is permissible when it would "help explain to the court the intricacies" of a complex body of law.  *See Lozano v. City of Hazleton*, 241 F.R.D. 252, 256 (M.D. Pa. 2007) (permitting testimony of professor of federal immigration law to "unsnarl complicated factual issues" involving "the nature and extent of federal immigration law"); *see also Liberty Media Corp. v. Vivendi Universal, S.A.*, 874 F. Supp. 2d 169, 175 (S.D.N.Y. 2012) (permitting law professor to opine on general purpose and meaning of material adverse change clauses to aid factfinder's understanding of "complex and unfamiliar corporate transactions").

29.   Here, Mr. Abrams seeks to offer *factual* opinions concerning the tax consequences of a taxable sale of EFIH, whether the Department of Treasury was likely to change its own regulations to impose tax liability on EFIH in a taxable transaction, whether a purchaser of EFIH or its assets would have benefited from a stepped-up basis in a taxable transaction, and whether that stepped-up basis would be valuable to such a purchaser.[7]  [D.I.

---

[7]   The factual nature of Mr. Abrams's opinions distinguishes them from the legal conclusions that were excluded in the cases cited by the Ad Hoc EFH Claimants.  [D.I. 13394 at 18-19].   In each of those cases, the expert sought to opine on the proper interpretation of the law at issue, which Professor Abrams does not do in his

13394-8, Ex. 7 (Abrams Decl.) ¶¶ 13–27].   That these factual opinions "involve questions of law" does not render them inadmissible.   *Wyly*, 552 B.R.at 361.   In addition, because the tax consequences of sale of Oncor implicate "a large and complex body" of law, Professor Abrams's testimony is admissible to help the Court "unsnarl complicated factual issues" on that topic. *Lozano*, 241 F.R.D. at 256.   Accordingly, Mr. Abrams should be permitted to testify at trial, and the Ad Hoc EFH Claimants' efforts to exclude his opinions should be denied.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court deny the Motion to Exclude.

---

report.   *See Cantor v. Perelman*, No. CIVA 97-586 KAJ, 2006 WL 3462596, at *4 (D. Del. Nov. 30, 2006) (party conceded its expert "offers a legal opinion regarding the proper interpretation of Delaware corporate law"); *Stobie Creek Investments LLC v. United States*, 608 F.3d 1366, 1383 (Fed. Cir. 2010) (affirming exclusion of testimony concerning the "proper interpretation of the tax laws and Treasury Circular 230"); *Fontenot v. Safety Council of Sw. La.*, No. 2:16-CV-84, 2017 WL 3588223, at *2 (W.D. La. Aug. 16, 2017) (excluding opinions that "bear solely on the applicability and interpretation of the treasury regulation at issue").

Wilmington, Delaware
Date: August 27, 2018

**BAYARD, P.A.**

*/s/ Erin R. Fay*
Scott D. Cousins (No. 3079)
Erin R. Fay (No. 5268)
Evan T. Miller (No. 5364)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
scousins@bayardlaw.com
efay@bayardlaw.com
emiller@bayardlaw.com

–and–

**ROPES & GRAY LLP**
Gregg M. Galardi
Matthew L. McGinnis (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile:  (212) 596-9090
Gregg.Galardi@ropesgray.com
Matthew.McGinnis.ropesgray.com

*Counsel for UMB Bank, N.A., Elliott
Associates, L.P., Elliott International, L.P.,
and the Liverpool Limited Partnership*