Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4

5    In re:

6    ENERGY FUTURE HOLDINGS              Chapter 11

7    CORP., et al.,                      Case No. 14-10979(CSS)

8            Debtors.                    (Jointly Administered)

9    _____

10

11

12

13

14                               United States Bankruptcy Court

15                               824 North Market Street

16                               Wilmington, Delaware 19801

17

18                               August 27, 2018

19                               2:12 PM - 2:37 PM

20

21   B E F O R E :

22   HON CHRISTOPHER S. SONTCEHI

23   U.S. BANKRUPTCY CHIEF JUDGE

24

25   ECR OPERATOR:  DANA L. MOORE

1    HEARING re Notice of Status Conference [D.I. 13323; filed

2    July 26, 2018]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

```
1    A P P E A R A N C E S :

2    KIRKLAND & ELLIS

3         Attorneys for the Debtors

4

5    BY:  APARNA YENAMANDRA, ESQ. (TELEPHONIC)

6

7    RICHARDS, LAYTON & FINGER

8         Attorney for the EFH Plan Administrator Board

9

10   BY:  JASON M. MADRON, ESQ.

11

12   NIXON PEABODY

13        Attorney for American Stock Transfer

14

15   BY:  RICHARD PEDONE, ESQ.

16        GEORGE SKELLY, ESQ. (TELEPHONIC)

17

18   CROSS & SIMON, LLP

19        Attorney for American Stock Transfer and Trust

20        Company LLC

21

22   BY:  KEVIN MANN, ESQ.

23

24

25
```

1   ROPES & GRAY

2       Attorneys for Elliott Management Corporation

3

4   BY:  GREGG M. GALARDI, ESQ.

5       SAM N. ASHURSEY, ESQ. (TELEPHONIC)

6

7   BAYARD

8       Attorney for Elliott Management

9

10  BY:  ERIN FAY, ESQ.

11

12  FRIED FRANK

13      Attorney for Fidelity

14

15  BY:  GARY L. KAPLAN, ESQ.

16

17  O'KELLY ERNST & JOYCE, LLC

18      Attorney for Fidelity

19

20  BY:  MICHAEL JOYCE, ESQ.

21

22  GODFREY & KAHN, S.C.

23      Attorney for the Fee Committee

24

25  BY:  KATHERINE STADLER, ESQ.

1    GITLIN & CO. LLC

2          Fee Examiner

3

4    BY:  RICHARD BITLIN

5

6    DAVIS POLK & WARDWELL

7

8    BY:  STEVEN SZANZER, ESQ.

9

10   UNITED STATES DEPARTMENT OF JUSTICE

11          Attorney for the U.S. Trustee

12

13   BY:  RICHARD L. SCHEPACARTER, ESQ.

14

15   ALSO PRESENT:

16   HOWARD KAPLAN

17

18   ALSO PRESENT TELEPHONICALLY:

19   ANGELO THALASSINOS

20   PATRICIA J. VILLAREAL

21

22

23

24

25

1                     P R O C E E D I N G S

2            THE CLERK:  All rise.

3            THE COURT:  Please be seated.

4            MR. MADRON:  Good afternoon, Your Honor.

5            THE COURT:  Good afternoon.

6            MR. MADRON:  For the record Jason Madron of

7    Richards Layton & Finger on behalf of the EFH plan

8    administrator board.

9            Your Honor, I'm joined on the telephone today by

10   my co-counsel, Aparna Yenamandra of Kirkland & Ellis.

11           Your Honor, we're here before the Court today for

12   a limited purpose, and that purpose is set forth on the

13   agenda that we filed last week, is for a status conference

14   that was convened in consultation with Your Honor's chambers

15   at the request of the fee committee to discuss with Your

16   Honor certain issues related to the fee committees' ongoing

17   503(b) review of pending applications of the EFH indenture

18   trustee, Fidelity, and the Elliott funds.

19           With that, Your Honor, I will yield the lectern

20   directly to Mr. Gitlin to address the Court on behalf of the

21   matters that the fee committee has brought forth today.

22           THE COURT:  All right.  Thank you.

23           MR. MADRON:  Thank you, Your Honor.

24           MR. GITLIN:  Good afternoon, Your Honor.

25           THE COURT:  Good afternoon, Mr. Gitlin.

1          MR. GITLIN:  Your Honor, congratulations on your

2     appointment as chief judge.

3          THE COURT:  Thank you.

4          MR. GITLIN:  We all wish you well I'm sure with

5     those additional responsibilities.

6          THE COURT:  Yeah, I'm still waiting for the pay

7     raise.

8       (Laughter)

9          MR. GITLIN:  Your Honor will recall that the fee

10    committee had a new member join replacing the former

11    creditor representative.  That person is Howard Kaplan of

12    the firm of Kaplan & Rice.  And Mr. Kaplan is here today,

13    and with Your Honor's permission I would just ask him to

14    stand so is Court could acknowledge his appointment here.

15    Mr. Kaplan?

16          MR. KAPLAN:  Good afternoon, Your Honor.

17          THE COURT:  Good afternoon, Mr. Kaplan.  Welcome.

18          MR. GITLIN:  Your Honor, I would like to explain

19    the reason we requested this status conference.

20          The fee committee is charged with reviewing 503(b)

21    applications which essentially fall into three groups, the

22    Fidelity group for $20,085,000, the American Stock group for

23    $19,408,000, and the Elliott group for $31,426,000, an

24    aggregate, Your Honor, approximately $71 million.

25          The fee committee decided before it established

1    standards for the review process it would seek feedback from

2    each of the three groups.  It became quite clear, Your

3    Honor, in seeking that feedback that there was very strong

4    disagreement among the groups on what standards should be

5    applied.  So the fee committee decided the best way forward

6    would be as follows.

7              One, the fee committee take the responsibility as

8    it should to set the standards it intends to use for review.

9              Two, submit those standards to both the Court and

10   to the three groups.

11             And three, do as we're doing today, request the

12   Court for a status conference so the Court could hear our

13   views and the views of the other groups.

14             The goal, Your Honor, is to seek your guidance so

15   we can make this as efficient and effective a process

16   possible in doing this review.

17             What I'd like to do, Your Honor, just briefly is

18   summarize the fee committee position and then ask the three

19   groups to speak possibly in the order of Fidelity, American

20   Stock, and then Elliott.  And let me just address the

21   Fidelity group.

22             Your Honor issued an order on March 24th, 2017

23   that found the Fidelity group made a substantial

24   contribution up to $20 million for fees and expenses, and in

25   that order it requested that the fee committee do a

1   reasonableness review.  The fee committee treats that as an

2   final order, and our approach will be to do a reasonableness

3   review of the Fidelity order -- or the Fidelity application.

4          With respect to the American Stock group Your

5   Honor instructed the fee committee to do an analysis of the

6   activities of the American Stock group to determine which

7   activities would constitute a substantial contribution, and

8   also do obviously a reasonableness review.

9          But the fee committee does take note that this

10  Court issued ruling on December 3rd, 2015 and February 17th,

11  2017 finding substantial contribution for activities of the

12  American Stock group.  And the fee committee intends to

13  treat these as material factors in its evaluation of

14  substantial contribution and of course will do a

15  reasonableness review.

16         With respect to Elliott, Your Honor, the fee

17  committee will review its activities, determine which

18  activities would constitute substantial contribution, and do

19  a reasonableness review.

20         We recognize that all parties have made a

21  substantial contribution, and we hope to be able to take a

22  very reasonable and rational approach in reviewing their

23  time and activities.

24         With that, Your Honor, unless you have questions

25  for me, I would turn it over to the Fidelity group.

1          THE COURT:  No questions.

2          MR. KAPLAN:  Good afternoon, Your Honor.  Gary

3    Kaplan from Fried Frank on behalf of Fidelity.

4          THE COURT:  Good afternoon.

5          MR. KAPLAN:  Your Honor, obviously Fidelity

6    doesn't have a disagree with the fee committee.  We think

7    that the approach being taken by the fee committee with

8    respect to Fidelity is consistent with Your Honor's prior

9    order.

10          And just before I answer any questions Your Honor

11   has, but the reason I rise and we didn't respond to the

12   letter that was filed on the docket until the end of last

13   week, we have no view on how Elliott's or American Stock

14   Transfer's fees should be assessed, that's between the fee

15   committee, them, and Your Honor.

16          But the one point I do want to make with respect

17   to Fidelity is we've already gone -- Fidelity's fees have

18   already gone through the process of a determination as to

19   the fact that a substantial contribution was made.  The

20   debtors, not Fidelity, filed the motion seeking approval of

21   Fidelity's fees as having made a substantial contribution.

22          There was a very lengthy record with 2 different

23   declarations, over 100 pages of exhibits, including board

24   minutes and all the reasons that the debtors believed that

25   all of Fidelity's actions during the case did make a

1    substantial contribution to the case.

2              So that review was done and Your Honor had an

3    opportunity to review it, all the parties in the case had an

4    opportunity, and ultimately there were no objections and

5    Your Honor entered the order.

6              So the sort of two level of review that's being

7    talked about the first level has already been done to

8    Fidelity, and so therefore consistent with the order that

9    Your Honor entered in March of 2017, you know, the review

10   should be just reasonableness by the fee committee and

11   Fidelity will work with the fee committee, and you know,

12   we'll resolve any issues that they have for reasonableness

13   concerns.

14             Unless Your Honor has any questions

15   (indiscernible).

16             THE COURT:  No questions.  Thank you.

17             MR. KAPLAN:  Thank you.

18             THE COURT:  Mr. Pedone?

19             MR. PEDONE:  Your Honor, Richard Pedone for

20   American Stock Transfer as indenture trustee.

21             Your Honor, we're in agreement with the approach

22   that the committee is taking.  We think that the Court made

23   several different findings with regard to the contributions

24   that we made.  The fee committee is analyzing them, engaging

25   in a dialogue with us with regard to the process, requesting

1    information, and the process is going very well and we're

2    working cooperatively and have no disagreement with what

3    they laid out in their letter or that Mr. Gitlin laid out

4    today.  And at this time we don't have any position on any

5    of the other parties' fee requests or requests for findings

6    on substantial contribution.

7              I can answer any questions the Court has.

8              THE COURT:  No question, thank you.

9              MR. PEDONE:  Thank you.

10             THE COURT:  Mr.  Gilardi?

11             MR. GALARDI:  I guess we wouldn't have a status

12    conference if we didn't have a disagreement with some

13    matters, Your Honor.

14             THE COURT:  That's all right.

15             MR. GALARDI:  Just -- I just want to step back and

16    start with a couple things, and I hope this is not all about

17    words, but the Third Circuit has established a substantial

18    contribution standard, and one thing we wanted to make

19    absolutely clear is that all parties would be held, and Your

20    Honor was reviewing it according to that standard.  So that

21    we don't and we've had many conversations with Mr. Gitlin

22    and understand Your Honor to be doing that.

23             There are a couple issues and there are

24    differences however, Your Honor, and when Your Honor sent

25    the letter on tasks and activities, and I do think that

1    these do go in various levels of gradation.

2            With respect to Fidelity, as we've mentioned in

3    our letter, we don't believe it's a final order, your order

4    actually provides that you have to subject that to the fee

5    committee, it's no one else, that that's just not a final

6    order yet.  You have other activities to do.  So that's not

7    a basis to simply say, okay, we're only going to review

8    reasonableness and necessity but all those findings have

9    been made.

10            We do not dispute that Fidelity had during the

11    course of the case actually made a substantial contribution,

12    but when you do the reasonableness and necessity review that

13    all of the parties are we understood Your Honor and we

14    understand Lebron to say, well you just don't say

15    reasonableness and necessity, it has to be with respect to,

16    I think Your Honor uses the word, task, we used activities.

17    And the answer is you can't do that unless you look at what

18    was the benefit, what you did to maintain or preserve the

19    estate.  Once you've decided that on a task by task or by

20    time or activity then you can review the reasonableness.

21            So no one is saying Fidelity didn't create a

22    benefit, the question is what's that benefit and then are

23    these fees reasonable and necessary to have gotten to that

24    benefit?

25            And ultimately, Your Honor, you have to approve

1    every one of these applications in a final order.

2             So we don't think that the review there -- again,

3    Mr. Gitlin may have already reviewed it -- we don't think

4    there is a final order on substantial contribution claim,

5    and if there's not then all we're saying is that the fee

6    committee should be reviewing what was the benefit that

7    Fidelity in fact -- what was the benefit, what was the way

8    in which it preserved the estate?  We don't doubt that there

9    are ways.  And then what's -- are those fees reasonable and

10   necessary for doing that in light of the benefits?

11            Obviously, Your Honor, we've cited the hindsight,

12   and some of the review has to be in hindsight.

13            Now let's turn to, you know, so we go to the

14   gradation.  Let's go to American Stock & Transfer versus

15   Elliott.

16            Your Honor, we just simply think fortunately or

17   unfortunately the fact of the matter is that there were

18   findings and orders that turned out to be void is

19   irrelevant.  That's not a basis to distinguish it.  And I

20   know that the fee committee has chosen the word embodied,

21   but there's nothing in the February 27th hearing that said

22   I'm going to embody and take in and substantially say the

23   findings that I made for four years of the case are in fact

24   going to get embodied in or incorporated in that final

25   order.

1           Your Honor said quite clearly with respect to

2    Elliott and with respect to EFH they're going to review

3    reasonableness, there is no doubt that we've submitted and

4    have contributed substantially to the cases, but that you

5    did say we want to look at the activities, and you did in

6    fact ask Mr. Gitlin to look at the activities, and we've

7    tried to comply with those requirements.  Again, that's what

8    Lebron says.

9           We disagree that it's a task by task 26 codes by

10   way of the Bankruptcy Code and fee applications.  We

11   disagree that after the fact you got to bill intensive hours

12   if that's not your standard way of doing it.  But we've set

13   forth six different types of activities, and I think

14   Mr. Gitlin is actually comfortable with those activities, to

15   then say when do I believe those activities created a

16   benefit?  Two, if those activities created a benefit are

17   they reasonable and necessary fees in the circumstances?

18          So we're really not asking for anything other than

19   all three parties on the E-Side be treated the same way and

20   reviewed the same way.  We understand Your Honor's second

21   letter to say all fee applications to do that.

22          Now, I don't know whether Your Honor had in mind

23   the asbestos claimants that hadn't yet --

24          THE COURT:  I did not.  I did not.

25          MR. GALARDI:  Okay.  So that's how we understood

1    it.  And then the letter came in and there was no response.

2           And, Your Honor, we're not trying to open the door

3    on the T-Side, but what clearly has happened here, as set

4    forth in the better, the T-Side had a different standard,

5    because it says, Mr. Gitlin in the letter or the committee

6    -- the fee committees' letter said, well we're going to do

7    Fidelity just the same way we did the T-Side, but with

8    respect to AST and Elliott we're going to have an enhanced

9    review, and then we're going to have an either further

10   enhanced review because we're going to take material facts

11   on void orders findings saying that that somehow insulates

12   that review or its material change.

13          Your Honor, I know you may not believe this but we

14   actually wanted to give you the Liter (ph) brief to try to

15   avoid future litigation about this as opposed to waiting

16   'til the end and then coming in with all of these arguments.

17          THE COURT:  Uh-huh.

18          MR. GALARDI:  We actually do want a standard.  We

19   think we're satisfying the standard.  We think we can have

20   quantifiable benefits.  We've actually set forth in our

21   letter ands in our documents what we believe are

22   quantifiable benefits.

23          We've seen the transcripts that they've put in

24   here, and I understand that Your Honor said with respect to

25   EFH trustee, well you got 400 more in a litigation and

1   unfortunately it didn't go to the EFH creditors, not going

2   to hold you responsible for.  The fact of the matter is that

3   400 never went to anybody, that was the NextEra transaction.

4              THE COURT:  Uh-huh.

5              MR. GALARDI:  So I think it's fair for the fee

6   committee to say, well you made that finding but you got to

7   look at the overall benefits here that each of these parties

8   presented to the estate.  Did Mr. Pedone create substantial

9   contribution with the T-Side, E-Side fight?  We don't

10  dispute that.  Did Fidelity do that?  We don't dispute that.

11  There's benefits here.  But you still have to do the review

12  and then weigh the reasonableness and necessity with respect

13  to each of us, with respect to the actual activities.

14              And that's really what we want is one standard and

15  not have a fight over three standards of review so we're up

16  on appeal on substantial contribution claims, because we

17  actually like to have people paid before year end.

18              Thank you.

19              THE COURT:  Thank you, Mr. Galardi.

20              Anybody in response?  Mr. Gitlin?

21              MR. GITLIN:  Your Honor, with respect to the Ropes

22  & Gray and other professionals and the Elliott group, Ropes

23  & Gray submitted an excellent presentation to us and we did

24  appreciate their breaking it into categories, it really

25  enhances our ability to review.

1            With respect however to other professionals in the

2    Ropes & Gray group many of them submitted only a piece of

3    paper with a bill.  So we've tried to approach that with

4    Ropes & Gray in a reasonable way saying we understand some

5    of them may not be bankruptcy professionals, but the

6    committee has to be satisfied one, that their activities did

7    make a substantial contribution; and two, we have to satisfy

8    the reasonableness standard.

9            So I suspect, we've offered and I suspect we will

10   sit down with them to see if there's a practical way for us

11   to work together to see if they can satisfy the committee.

12           We're not trying to impose artificial retained

13   standards, we're trying to work with the professionals to

14   see if we can get to the bottom line.

15           On the T-Side review, Your Honor, when the fee

16   committee reviews applications for reasonableness we

17   consider the word value to be significant as you would

18   suspect, and in reviewing the T-Side if there are items that

19   we didn't consider are value to the estate those were raised

20   on the T-Side process.  We intend obviously to do the same

21   thing with all the applications, including Fidelity.

22           So although we've articulated what we consider are

23   appropriate different standards based on the orders of the

24   Court, we should point out to the Court and to the parties,

25   that's a process that we will undertake.

1           Thank you, Your Honor.

2           THE COURT:  You're welcome.

3           Mr. Pedone?

4           MR. PEDONE:  Your Honor, just very briefly.

5           The process that's been going on is each party has

6   been separately communicating with the fee committee.  We

7   haven't seen each others' submissions.  And so just what I

8   want to make clear for the record, because I know

9   Mr. Galardi hasn't seen our submission, we broke down our

10  work streams, 25 work streams presented to the committee, so

11  the committee can perform the type of detailed analysis that

12  they need.

13          But what also needs to occur here, and we believe

14  will be part of their process, is there's a building block

15  process.  You don't get to contribute into a particular

16  settlement at the end or force a settlement at the end or

17  contribute to forcing a settlement at the end if you weren't

18  schooled in the earlier aspects of the case, and we've

19  broken our work down so the committee can do a rational

20  analysis of the various pieces.

21          And I know Mr. Galardi may not have been aware of

22  that, but I wanted the Court to know we're providing the

23  committee with everything they need to do the type of

24  analysis they believe that they're undertaking whether the

25  Court instructs them to undertake.

1          Thank you.

2          THE COURT:  Mr. Kaplan?

3          MR. KAPLAN:  Thank you, Your Honor.  I will be

4   brief.

5          Just wanted to address the final order point,

6   which I think is a red herring, and I think Your Honor's

7   decision on the NextEra break-up fee goes through whether

8   it's a final order, an interlocutory order, and the

9   differences in the standard.  There may not even be a

10  difference in the standard, but there's been no

11  reconsideration of the order, so whether it's final or it's

12  interlocutory that's still the order, and certainly if you

13  go through the standards there's no basis that Your Honor

14  would have to rescind the order and reconsider the order.

15  But there hasn't been a request to do it, all they saying is

16  well it's not -- it's an interlocutory order so therefore

17  ignore it.  But even if it's an interlocutory order that's

18  still Your Honor's order that was again entered on a very

19  detailed record.

20          THE COURT:  Okay.

21          MR. KAPLAN:  Thank you, Your Honor.

22          THE COURT:  Okay.  Any final words, Mr. Galardi?

23          MR. GALARDI:  Yeah.  Your Honor, there's no reason

24  if it's interlocutory to seek reconsideration at this point.

25  And no one is saying -- and again, I want to be clear --

1    we're not saying Fidelity didn't do anything.  All we are

2    saying is -- and I think Mr. Gitlin has said it again --

3    when you go and review the professional fees, and I'm not

4    just standing here for Ropes an& Gray, we'll certainly

5    continue, I think he said we've been trying to get the other

6    professionals to do so -- Mr. Pedone said he's got 27 tasks.

7    I don't know what Fidelity has, I know we have six tasks.

8    The fact of the matter is in order to review reasonableness

9    and necessity you have to look whether you call them tasks,

10   activities, categories of work, you've got to look at the

11   work streams.  And it's -- and you have to look at those

12   work streams to see what was the benefit and then was that

13   expense reasonable and necessary to achieve that benefit?

14           We are getting the clear sense -- and again, I'm

15   trying to avoid it when we get his report in and we all see

16   everybody's applications and Your Honor gets it -- saying

17   this was an unfair standard.  That is really what we're

18   trying to avoid.

19           A single standard where each party is held to that

20   standard we think is the only way to proceed to avoid

21   further litigation to get these fees approved.

22           Thank you.

23           THE COURT:  Thank you, Mr. Galardi.

24           Anything else by anyone?

25           All right.  I'm going to -- I'm saying I'm going

1    to take the matter under advisement, it's not actually a

2    matter to take under advisement, it's a status conference,

3    but I am going to write what will hopefully be a more

4    cleaner statement and probably in letter form of how I

5    believe what the standard should be, that I'd like the fee

6    committee to pursue, and what that standard should be with

7    each of the three applicants, whether it should all be the

8    same, whether it should be separate, I'll decide that so

9    hopefully the committee will have the guidance it needs to

10   proceed forward, and then the applicants will understand

11   what's going on, and of course if every -- if people

12   disagree with that and the result therefrom of course

13   they'll be free to appeal or take whatever action they hope

14   is appropriate.

15            But I do appreciate the letter that you submitted,

16   Mr. Galardi, and getting ahead of the curve.  Hopefully what

17   I issue will satisfy the parties sufficiently to set up a

18   clear record.

19            I don't want somebody from the fee committee to go

20   -- you know, I don't think it's appropriate for them to go

21   time entry by time entry.  You know, was this -- did this

22   telephone call to John Smith actually benefit the estate?  I

23   think Mr. Galardi and the other -- Mr. Pedone and Mr. Kaplan

24   make a good point that, you know, you need to look at -- you

25   know, that's a -- that was an unfortunate use of the word by

1    me, task, because it has a (indiscernible) -- it's dealing

2    with nuance in the bankruptcy world, it was probably too

3    granular.

4            So I'll clarify that, clarify some other things,

5    and I'll get that out hopefully in rather short order,

6    because I too would like people to get paid, and the trust

7    to be diminished by the payment of the creditors, that would

8    be a good thing, and hopefully we'll be able to accomplish

9    that sooner rather than later.

10           So thank you very much for your submissions, and

11   I'll get something out as soon as I can.  All right?

12           While I have you here let me just ask if I could a

13   question about the status of the allocation trial, because

14   for some reason I allowed Ms. Werkeizer (ph) to go on

15   vacation this week, so she's the only person that knows

16   what's going on.  When are the motions in limine due?

17           MR. GALARDI:  They've been filed.

18           THE COURT:  They've been filed?

19           MR. MADRON:  They were due -- well it's Friday,

20   Your Honor.

21           MR. GALARDI:  They were filed last Friday, I

22   believe midnight tonight.  I'm not the best with the

23   schedule.  I think midnight tonight is the responses to

24   those.

25           THE COURT:  Okay.

```
1              MR. GALARDI:  Your Honor has a status conference,
2      I believe it is Wednesday.
3              MR. MADRON:  Thursday.
4              THE COURT:  Thursday at 2:00.
5              MR. GALARDI:  Thursday.  And the brief is due also
6      Thursday.
7              MR. MADRON:  Thursday at noon.
8              THE COURT:  Thursday at noon.  So I'll have the
9      briefs.  And I don't think I can decide the motions in
10     limine until I have the briefs.
11             MR. GALARDI:  Well you'll have the briefs on the
12     motion in limine separate.
13             THE COURT:  No, I understand, but for context
14     purposes --
15             MR. GALARDI:  Okay.
16             THE COURT:  -- I think I need both.  But I will
17     decide those when I -- I doubt that I'm going to ask anyone
18     to argue any of the motions in limine, but did
19     Ms. Gadson speak to you, Mr. Madron, earlier today?
20             MR. MADRON:  She -- yes, she did, Your Honor.
21             THE COURT:  Okay.  And she asked you to send over
22     the motions in limine when they're done or was that just the
23     objections?
24             MR. MADRON:  The request was specific to the
25     briefs that were due or that are due at noon this Thursday.
```

1            THE COURT:  Right.

2            MR. MADRON:  To prepare a notice of completion of

3     briefing styled binder for Your Honor.  We're certainly --

4     the board is certainly happy to prepare similar type binders

5     with respect to the motions in limine if that would be

6     helpful to Your Honor.

7            THE COURT:  Yeah, it would be.  That would be

8     helpful.

9            MR. MADRON:  Great.

10            THE COURT:  And you can send that over tomorrow.

11            MR. MADRON:  Yes.  As Mr. Galardi said, the

12     deadline is technically midnight tonight or 11:59, so we'll

13     prepare those first thing tomorrow morning and we'll send

14     them over to chambers.

15            THE COURT:  Right.  Thank you.  That will be very

16     helpful.

17            MR. MADRON:  Certainly.

18            THE COURT:  Okay.  And we're starting 9:30

19     Wednesday, Thursday, Friday, right?  And then we're going to

20     have a -- but we're going to meet at 9:00 in chambers on

21     Wednesday to just talk about the day.

22            MR. MADRON:  Yes, Your Honor.

23            THE COURT:  Okay?

24            MR. GALLAGHER:  Right, Your Honor.

25            THE COURT:  Excellent.  All right.  Very good.

1       Thank you very much.

2           (A chorus of thank you)

3               MR. GALARDI:  Try to have a good Labor Day, Your

4       Honor.

5               THE COURT:  Oh, you too, everyone.  Have a happy

6       holiday.  I actually made it in without hitting any school

7       children today.

8           (Laughter)

9               THE COURT:  I'm like what are they doing in the

10      corners?  All right.  Have a good day.

11              MR. MADRON:  Thank you, Your Honor.

12          (Whereupon these proceedings were concluded at 2:37 PM)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5    Dawn          Digitally signed by Dawn South
                    DN: cn=Dawn South, o, ou,
                    email=digital1@veritext.com,
6                   c=US
     South          Date: 2018.08.29 11:30:02
7    _____
                    -04'00'

8    Dawn South

9    Certified Electronic Transcriber

10

11

12    Date:  August 28, 2018

13

14

15

16

17

18

19

20

21

22    Veritext Legal Solutions

23    330 Old Country Road

24    Suite 300

25    Mineola, NY 11501

**&**

**&**   3:2,7,18 4:1,17
4:22 5:1,6 6:7,10
7:12 14:14 17:22
17:23 18:2,4

**1**

**100**   10:23
**11**   1:6
**11501**   27:25
**11:59**   25:12
**13323**   2:1
**14-10979**   1:7
**17th**   9:10
**19,408,000**   7:23
**19801**   1:16

**2**

**2**   10:22
**20**   8:24
**20,085,000**   7:22
**2015**   9:10
**2017**   8:22 9:11
11:9
**2018**   1:18 2:2
27:12
**24th**   8:22
**25**   19:10
**26**   2:2 15:9
**27**   1:18 21:6
**27th**   14:21
**28**   27:12
**2:00**   24:4
**2:12**   1:19
**2:37**   1:19 26:12

**3**

**300**   27:24
**31,426,000**   7:23
**330**   27:23
**3rd**   9:10

**4**

**400**   16:25 17:3

**5**

**503**   6:17 7:20

**7**

**71**   7:24

**8**

**824**   1:15

**9**

**9:00**   25:20

**a**

**ability**   17:25
**able**   9:21 23:8
**absolutely**   12:19
**accomplish**   23:8
**accurate**   27:4
**achieve**   21:13
**acknowledge**   7:14
**action**   22:13
**actions**   10:25
**activities**   9:6,7,11
9:17,18,23 12:25
13:6,16 15:5,6,13
15:14,15,16 17:13
18:6 21:10
**activity**   13:20
**actual**   17:13
**additional**   7:5
**address**   6:20 8:20
20:5
**administered**   1:8
**administrator**   3:8
6:8
**advisement**   22:1,2
**afternoon**   6:4,5
6:24,25 7:16,17
10:2,4
**agenda**   6:13
**aggregate**   7:24
**agreement**   11:21
**ahead**   22:16
**al**   1:7

**allocation**   23:13
**allowed**   23:14
**american**   3:13,19
7:22 8:19 9:4,6,12
10:13 11:20 14:14
**an&**   21:4
**analysis**   9:5 19:11
19:20,24
**analyzing**   11:24
**ands**   16:21
**angelo**   5:19
**answer**   10:10 12:7
13:17
**anybody**   17:3,20
**aparna**   3:5 6:10
**appeal**   17:16
22:13
**applicants**   22:7
22:10
**application**   9:3
**applications**   6:17
7:21 14:1 15:10
15:21 18:16,21
21:16
**applied**   8:5
**appointment**   7:2
7:14
**appreciate**   17:24
22:15
**approach**   9:2,22
10:7 11:21 18:3
**appropriate**
18:23 22:14,20
**approval**   10:20
**approve**   13:25
**approved**   21:21
**approximately**
7:24
**argue**   24:18
**arguments**   16:16
**articulated**   18:22
**artificial**   18:12

**allocation**   23:13

**asbestos**   15:23
**ashursey**   4:5
**asked**   24:21
**asking**   15:18
**aspects**   19:18
**assessed**   10:14
**ast**   16:8
**attorney**   3:8,13
3:19 4:8,13,18,23
5:11
**attorneys**   3:3 4:2
**august**   1:18 27:12
**avoid**   16:15 21:15
21:18,20
**aware**   19:21

**b**

**b**   1:21 6:17 7:20
**back**   12:15
**bankruptcy**   1:1
1:14,23 15:10
18:5 23:2
**based**   18:23
**basis**   13:7 14:19
20:13
**bayard**   4:7
**behalf**   6:7,20 10:3
**believe**   13:3 15:15
16:13,21 19:13,24
22:5 23:22 24:2
**believed**   10:24
**benefit**   13:18,22
13:22,24 14:6,7
15:16,16 21:12,13
22:22
**benefits**   14:10
16:20,22 17:7,11
**best**   8:5 23:22
**better**   16:4
**bill**   15:11 18:3
**binder**   25:3
**binders**   25:4
**bitlin**   5:4

**block**  19:14
**board**  3:8 6:8
  10:23 25:4
**bottom**  18:14
**break**  20:7
**breaking**  17:24
**brief**  16:14 20:4
  24:5
**briefing**  25:3
**briefly**  8:17 19:4
**briefs**  24:9,10,11
  24:25
**broke**  19:9
**broken**  19:19
**brought**  6:21
**building**  19:14

**c**

**c**  3:1 6:1 27:1,1
**call**  21:9 22:22
**case**  1:7 10:25
  11:1,3 13:11
  14:23 19:18
**cases**  15:4
**categories**  17:24
  21:10
**certain**  6:16
**certainly**  20:12
  21:4 25:3,4,17
**certified**  27:9
**certify**  27:3
**chambers**  6:14
  25:14,20
**change**  16:12
**chapter**  1:6
**charged**  7:20
**chief**  1:23 7:2
**children**  26:7
**chorus**  26:2
**chosen**  14:20
**christopher**  1:22
**circuit**  12:17
**circumstances**
  15:17

**cited**  14:11
**claim**  14:4
**claimants**  15:23
**claims**  17:16
**clarify**  23:4,4
**cleaner**  22:4
**clear**  8:2 12:19
  19:8 20:25 21:14
  22:18
**clearly**  15:1 16:3
**clerk**  6:2
**code**  15:10
**codes**  15:9
**comfortable**
  15:14
**coming**  16:16
**committee**  4:23
  6:15,21 7:10,20
  7:25 8:5,7,18,25
  9:1,5,9,12,17 10:6
  10:7,15 11:10,11
  11:22,24 13:5
  14:6,20 16:5 17:6
  18:6,11,16 19:6
  19:10,11,19,23
  22:6,9,19
**committees**  6:16
  16:6
**communicating**
  19:6
**company**  3:20
**completion**  25:2
**comply**  15:7
**concerns**  11:13
**concluded**  26:12
**conference**  2:1
  6:13 7:19 8:12
  12:12 22:2 24:1
**congratulations**
  7:1
**consider**  18:17,19
  18:22

**consistent**  10:8
  11:8
**constitute**  9:7,18
**consultation**  6:14
**context**  24:13
**continue**  21:5
**contribute**  19:15
  19:17
**contributed**  15:4
**contribution**  8:24
  9:7,11,14,18,21
  10:19,21 11:1
  12:6,18 13:11
  14:4 17:9,16 18:7
**contributions**
  11:23
**convened**  6:14
**conversations**
  12:21
**cooperatively**
  12:2
**corners**  26:10
**corp**  1:7
**corporation**  4:2
**counsel**  6:10
**country**  27:23
**couple**  12:16,23
**course**  9:14 13:11
  22:11,12
**court**  1:1,14 6:3,5
  6:11,20,22,25 7:3
  7:6,14,17 8:9,12
  8:12 9:10 10:1,4
  11:16,18,22 12:7
  12:8,10,14 15:24
  16:17 17:4,19
  18:24,24 19:2,22
  19:25 20:2,20,22
  21:23 23:18,25
  24:4,8,13,16,21
  25:1,7,10,15,18
  25:23,25 26:5,9

**create**  13:21 17:8
**created**  15:15,16
**creditor**  7:11
**creditors**  17:1
  23:7
**cross**  3:18
**css**  1:7
**curve**  22:16

**d**

**d**  6:1
**d.i.**  2:1
**dana**  1:25
**date**  27:12
**davis**  5:6
**dawn**  2:25 27:3,8
**day**  25:21 26:3,10
**deadline**  25:12
**dealing**  23:1
**debtors**  1:8 3:3
  10:20,24
**december**  9:10
**decide**  22:8 24:9
  24:17
**decided**  7:25 8:5
  13:19
**decision**  20:7
**declarations**
  10:23
**delaware**  1:2,16
**department**  5:10
**detailed**  19:11
  20:19
**determination**
  10:18
**determine**  9:6,17
**dialogue**  11:25
**difference**  20:10
**differences**  12:24
  20:9
**different**  10:22
  11:23 15:13 16:4
  18:23

**diminished**  23:7
**directly**  6:20
**disagree**  10:6 15:9
  15:11 22:12
**disagreement**  8:4
  12:2,12
**discuss**  6:15
**dispute**  13:10
  17:10,10
**distinguish**  14:19
**district**  1:2
**docket**  10:12
**documents**  16:21
**doing**  8:11,16
  12:22 14:10 15:12
  26:9
**door**  16:2
**doubt**  14:8 15:3
  24:17
**due**  23:16,19 24:5
  24:25,25

**e**

**e**  1:21,21 3:1,1 6:1
  6:1 15:19 17:9
  27:1
**earlier**  19:18
  24:19
**ecr**  1:25
**effective**  8:15
**efficient**  8:15
**efh**  3:8 6:7,17
  15:2 16:25 17:1
**either**  16:9
**electronic**  27:9
**elliott**  4:2,8 6:18
  7:23 8:20 9:16
  14:15 15:2 16:8
  17:22
**elliott's**  10:13
**ellis**  3:2 6:10
**embodied**  14:20
  14:24

**embody**  14:22
**energy**  1:6
**engaging**  11:24
**enhanced**  16:8,10
**enhances**  17:25
**entered**  11:5,9
  20:18
**entry**  22:21,21
**erin**  4:10
**ernst**  4:17
**esq**  3:5,10,15,16
  3:22 4:4,5,10,15
  4:20,25 5:8,13
**essentially**  7:21
**established**  7:25
  12:17
**estate**  13:19 14:8
  17:8 18:19 22:22
**et**  1:7
**evaluation**  9:13
**everybody's**
  21:16
**examiner**  5:2
**excellent**  17:23
  25:25
**exhibits**  10:23
**expense**  21:13
**expenses**  8:24
**explain**  7:18

**f**

**f**  1:21 27:1
**fact**  10:19 14:7,17
  14:23 15:6,11
  17:2 21:8
**factors**  9:13
**facts**  16:10
**fair**  17:5
**fall**  7:21
**fay**  4:10
**february**  9:10
  14:21
**fee**  4:23 5:2 6:15
  6:16,21 7:9,20,25

8:5,7,18,25 9:1,5
  9:9,12,16 10:6,7
  10:14 11:10,11,24
  12:5 13:4 14:5,20
  15:10,21 16:6
  17:5 18:15 19:6
  20:7 22:5,19
**feedback**  8:1,3
**fees**  8:24 10:14,17
  10:21 13:23 14:9
  15:17 21:3,21
**fidelity**  4:13,18
  6:18 7:22 8:19,21
  8:23 9:3,3,25 10:3
  10:5,8,17,20 11:8
  11:11 13:2,10,21
  14:7 16:7 17:10
  18:21 21:1,7
**fidelity's**  10:17,21
  10:25
**fight**  17:9,15
**filed**  2:1 6:13
  10:12,20 23:17,18
  23:21
**final**  9:2 13:3,5
  14:1,4,24 20:5,8
  20:11,22
**finding**  9:11 17:6
**findings**  11:23
  12:5 13:8 14:18
  14:23 16:11
**finger**  3:7 6:7
**firm**  7:12
**first**  11:7 25:13
**follows**  8:6
**force**  19:16
**forcing**  19:17
**foregoing**  27:3
**form**  22:4
**former**  7:10
**forth**  6:12,21
  15:13 16:4,20

**fortunately**  14:16
**forward**  8:5 22:10
**found**  8:23
**four**  14:23
**frank**  4:12 10:3
**free**  22:13
**friday**  23:19,21
  25:19
**fried**  4:12 10:3
**funds**  6:18
**further**  16:9
  21:21
**future**  1:6 16:15

**g**

**g**  6:1
**gadson**  24:19
**galardi**  4:4 12:11
  12:15 15:25 16:18
  17:5,19 19:9,21
  20:22,23 21:23
  22:16,23 23:17,21
  24:1,5,11,15
  25:11 26:3
**gallagher**  25:24
**gary**  4:15 10:2
**george**  3:16
**getting**  21:14
  22:16
**gilardi**  12:10
**gitlin**  5:1 6:20,24
  6:25 7:1,4,9,18
  12:3,21 14:3 15:6
  15:14 16:5 17:20
  17:21 21:2
**give**  16:14
**go**  13:1 14:13,14
  17:1 20:13 21:3
  22:19,20 23:14
**goal**  8:14
**godfrey**  4:22
**goes**  20:7
**going**  12:1 13:7
  14:22,24 15:2

16:6,8,9,10 17:1
19:5 21:25,25
22:3,11 23:16
24:17 25:19,20
**good**   6:4,5,24,25
7:16,17 10:2,4
22:24 23:8 25:25
26:3,10
**gotten**   13:23
**gradation**   13:1
14:14
**granular**   23:3
**gray**   4:1 17:22,23
18:2,4 21:4
**great**   25:9
**gregg**   4:4
**group**   7:22,22,23
8:21,23 9:4,6,12
9:25 17:22 18:2
**groups**   7:21 8:2,4
8:10,13,19
**guess**   12:11
**guidance**   8:14
22:9

**h**

**happened**   16:3
**happy**   25:4 26:5
**hear**   8:12
**hearing**   2:1 14:21
**held**   12:19 21:19
**helpful**   25:6,8,16
**herring**   20:6
**hindsight**   14:11
14:12
**hitting**   26:6
**hold**   17:2
**holdings**   1:6
**holiday**   26:6
**hon**   1:22
**honor**   6:4,9,11,16
6:19,23,24 7:1,9
7:16,18,24 8:3,14
8:17,22 9:5,16,24

10:2,5,10,15 11:2
11:5,9,14,19,21
12:13,20,22,24,24
13:13,16,25 14:11
14:16 15:1,22
16:2,13,24 17:21
18:15 19:1,4 20:3
20:13,21,23 21:16
23:20 24:1,20
25:3,6,22,24 26:4
26:11
**honor's**   6:14 7:13
10:8 15:20 20:6
20:18
**hope**   9:21 12:16
22:13
**hopefully**   22:3,9
22:16 23:5,8
**hours**   15:11
**howard**   5:16 7:11
**huh**   16:17 17:4

**i**

**ignore**   20:17
**impose**   18:12
**including**   10:23
18:21
**incorporated**
14:24
**indenture**   6:17
11:20
**indiscernible**
11:15 23:1
**information**   12:1
**instructed**   9:5
**instructs**   19:25
**insulates**   16:11
**intend**   18:20
**intends**   8:8 9:12
**intensive**   15:11
**interlocutory**
20:8,12,16,17,24
**irrelevant**   14:19

**issue**   22:17
**issued**   8:22 9:10
**issues**   6:16 11:12
12:23
**items**   18:18

**j**

**j**   5:20
**jason**   3:10 6:6
**john**   22:22
**join**   7:10
**joined**   6:9
**jointly**   1:8
**joyce**   4:17,20
**judge**   1:23 7:2
**july**   2:2
**justice**   5:10

**k**

**kahn**   4:22
**kaplan**   4:15 5:16
7:11,12,12,15,16
7:17 10:2,3,5
11:17 20:2,3,21
22:23
**katherine**   4:25
**kevin**   3:22
**kirkland**   3:2 6:10
**know**   11:9,11
14:13,20 15:22
16:13 19:8,21,22
21:7,7 22:20,21
22:24,25
**knows**   23:15

**l**

**l**   1:25 4:15 5:13
**labor**   26:3
**laid**   12:3,3
**laughter**   7:8 26:8
**layton**   3:7 6:7
**lebron**   13:14 15:8
**lectern**   6:19
**legal**   27:22

**lengthy**   10:22
**letter**   10:12 12:3
12:25 13:3 15:21
16:1,5,6,21 22:4
22:15
**level**   11:6,7
**levels**   13:1
**light**   14:10
**limine**   23:16
24:10,12,18,22
25:5
**limited**   6:12
**line**   18:14
**liter**   16:14
**litigation**   16:15,25
21:21
**llc**   3:20 4:17 5:1
**llp**   3:18
**look**   13:17 15:5,6
17:7 21:9,10,11
22:24

**m**

**m**   3:10 4:4
**madron**   3:10 6:4
6:6,6,23 23:19
24:3,7,19,20,24
25:2,9,11,17,22
26:11
**maintain**   13:18
**management**   4:2
4:8
**mann**   3:22
**march**   8:22 11:9
**market**   1:15
**material**   9:13
16:10,12
**matter**   14:17 17:2
21:8 22:1,2
**matters**   6:21
12:13
**meet**   25:20
**member**   7:10

mentioned  13:2
michael  4:20
midnight  23:22
  23:23 25:12
million  7:24 8:24
mind  15:22
mineola  27:25
minutes  10:24
moore  1:25
morning  25:13
motion  10:20
  24:12
motions  23:16
  24:9,18,22 25:5

**n**

n  3:1 4:5 6:1 27:1
necessary  13:23
  14:10 15:17 21:13
necessity  13:8,12
  13:15 17:12 21:9
need  19:12,23
  22:24 24:16
needs  19:13 22:9
never  17:3
new  7:10
nextera  17:3 20:7
nixon  3:12
noon  24:7,8,25
north  1:15
note  9:9
notice  2:1 25:2
nuance  23:2
ny  27:25

**o**

o  1:21 6:1 27:1
o'kelly  4:17
objections  11:4
  24:23
obviously  9:8 10:5
  14:11 18:20
occur  19:13
offered  18:9

oh  26:5
okay  13:7 15:25
  20:20,22 23:25
  24:15,21 25:18,23
old  27:23
once  13:19
ongoing  6:16
open  16:2
operator  1:25
opportunity  11:3
  11:4
opposed  16:15
order  8:19,22,25
  9:2,3 10:9 11:5,8
  13:3,3,6 14:1,4,25
  20:5,8,8,11,12,14
  20:14,16,17,18
  21:8 23:5
orders  14:18
  16:11 18:23
overall  17:7

**p**

p  3:1,1 6:1
pages  10:23
paid  17:17 23:6
paper  18:3
part  19:14
particular  19:15
parties  9:20 11:3
  12:5,19 13:13
  15:19 17:7 18:24
  22:17
party  19:5 21:19
patricia  5:20
pay  7:6
payment  23:7
peabody  3:12
pedone  3:15 11:18
  11:19,19 12:9
  17:8 19:3,4 21:6
  22:23
pending  6:17

people  17:17
  22:11 23:6
perform  19:11
permission  7:13
person  7:11 23:15
ph  16:14 23:14
piece  18:2
pieces  19:20
plan  3:8 6:7
please  6:3
pm  1:19,19 26:12
point  10:16 18:24
  20:5,24 22:24
polk  5:6
position  8:18 12:4
possible  8:16
possibly  8:19
practical  18:10
prepare  25:2,4,13
present  5:15,18
presentation
  17:23
presented  17:8
  19:10
preserve  13:18
preserved  14:8
prior  10:8
probably  22:4
  23:2
proceed  21:20
  22:10
proceedings
  26:12 27:4
process  8:1,15
  10:18 11:25 12:1
  18:20,25 19:5,14
  19:15
professional  21:3
professionals
  17:22 18:1,5,13
  21:6
provides  13:4

providing  19:22
purpose  6:12,12
purposes  24:14
pursue  22:6
put  16:23

**q**

quantifiable
  16:20,22
question  12:8
  13:22 23:13
questions  9:24
  10:1,10 11:14,16
  12:7
quite  8:2 15:1

**r**

r  1:21 3:1 6:1 27:1
raise  7:7
raised  18:19
rational  9:22
  19:19
really  15:18 17:14
  17:24 21:17
reason  7:19 10:11
  20:23 23:14
reasonable  9:22
  13:23 14:9 15:17
  18:4 21:13
reasonableness
  9:1,2,8,15,19
  11:10,12 13:8,12
  13:15,20 15:3
  17:12 18:8,16
  21:8
reasons  10:24
recall  7:9
recognize  9:20
reconsider  20:14
reconsideration
  20:11,24
record  6:6 10:22
  19:8 20:19 22:18
  27:4

red 20:6
regard 11:23,25
related 6:16
replacing 7:10
report 21:15
representative 7:11
request 6:15 8:11 20:15 24:24
requested 7:19 8:25
requesting 11:25
requests 12:5,5
requirements 15:7
rescind 20:14
resolve 11:12
respect 9:4,16 10:8,16 13:2,15 15:1,2 16:8,24 17:12,13,21 18:1 25:5
respond 10:11
response 16:1 17:20
responses 23:23
responsibilities 7:5
responsibility 8:7
responsible 17:2
result 22:12
retained 18:12
review 6:17 8:1,8 8:16 9:1,3,8,15,17 9:19 11:2,3,6,9 13:7,12,20 14:2 14:12 15:2 16:9 16:10,12 17:11,15 17:25 18:15 21:3 21:8
reviewed 14:3 15:20

reviewing 7:20 9:22 12:20 14:6 18:18
reviews 18:16
rice 7:12
richard 3:15 5:4 5:13 11:19
richards 3:7 6:7
right 6:22 12:14 21:25 23:11 25:1 25:15,19,24,25 26:10
rise 6:2 10:11
road 27:23
ropes 4:1 17:21 17:22 18:2,4 21:4
ruling 9:10

**s**

s 1:22 3:1 6:1
s.c. 4:22
sam 4:5
satisfied 18:6
satisfy 18:7,11 22:17
satisfying 16:19
saying 13:21 14:5 16:11 18:4 20:15 20:25 21:1,2,16 21:25
says 15:8 16:5
schedule 23:23
schepacarter 5:13
school 26:6
schooled 19:18
seated 6:3
second 15:20
see 18:10,11,14 21:12,15
seek 8:1,14 20:24
seeking 8:3 10:20
seen 16:23 19:7,9
send 24:21 25:10 25:13

sense 21:14
sent 12:24
separate 22:8 24:12
separately 19:6
set 6:12 8:8 15:12 16:3,20 22:17
settlement 19:16 19:16,17
short 23:5
side 15:19 16:3,4 16:7 17:9,9 18:15 18:18,20
significant 18:17
similar 25:4
simon 3:18
simply 13:7 14:16
single 21:19
sit 18:10
six 15:13 21:7
skelly 3:16
smith 22:22
solutions 27:22
somebody 22:19
sontcehi 1:22
soon 23:11
sooner 23:9
sort 11:6
south 2:25 27:3,8
speak 8:19 24:19
specific 24:24
stadler 4:25
stand 7:14
standard 12:18,20 15:12 16:4,18,19 17:14 18:8 20:9 20:10 21:17,19,20 22:5,6
standards 8:1,4,8 8:9 17:15 18:13 18:23 20:13
standing 21:4

start 12:16
starting 25:18
statement 22:4
states 1:1,14 5:10
status 2:1 6:13 7:19 8:12 12:11 22:2 23:13 24:1
step 12:15
steven 5:8
stock 3:13,19 7:22 8:20 9:4,6,12 10:13 11:20 14:14
streams 19:10,10 21:11,12
street 1:15
strong 8:3
styled 25:3
subject 13:4
submission 19:9
submissions 19:7 23:10
submit 8:9
submitted 15:3 17:23 18:2 22:15
substantial 8:23 9:7,11,14,18,21 10:19,21 11:1 12:6,17 13:11 14:4 17:8,16 18:7
substantially 14:22 15:4
sufficiently 22:17
suite 27:24
summarize 8:18
sure 7:4
suspect 18:9,9,18
szanzer 5:8

**t**

t 16:3,4,7 17:9 18:15,18,20 27:1 27:1
take 8:7 9:9,21 14:22 16:10 22:1

22:2,13
**taken** 10:7
**talk** 25:21
**talked** 11:7
**task** 13:16,19,19
  15:9,9 23:1
**tasks** 12:25 21:6,7
  21:9
**technically** 25:12
**telephone** 6:9
  22:22
**telephonic** 3:5,16
  4:5
**telephonically**
  5:18
**thalassinos** 5:19
**thank** 6:22,23 7:3
  11:16,17 12:8,9
  17:18,19 19:1
  20:1,3,21 21:22
  21:23 23:10 25:15
  26:1,2,11
**therefrom** 22:12
**thing** 12:18 18:21
  23:8 25:13
**things** 12:16 23:4
**think** 10:6 11:22
  12:25 13:16 14:2
  14:3,16 15:13
  16:19,19 17:5
  20:6,6 21:2,5,20
  22:20,23 23:23
  24:9,16
**third** 12:17
**three** 7:21 8:2,10
  8:11,18 15:19
  17:15 22:7
**thursday** 24:3,4,5
  24:6,7,8,25 25:19
**time** 9:23 12:4
  13:20 22:21,21
**today** 6:9,11,21
  7:12 8:11 12:4

24:19 26:7
**tomorrow** 25:10
  25:13
**tonight** 23:22,23
  25:12
**transaction** 17:3
**transcribed** 2:25
**transcriber** 27:9
**transcript** 27:3
**transcripts** 16:23
**transfer** 3:13,19
  11:20 14:14
**transfer's** 10:14
**treat** 9:13
**treated** 15:19
**treats** 9:1
**trial** 23:13
**tried** 15:7 18:3
**true** 27:4
**trust** 3:19 23:6
**trustee** 5:11 6:18
  11:20 16:25
**try** 16:14 26:3
**trying** 16:2 18:12
  18:13 21:5,15,18
**turn** 9:25 14:13
**turned** 14:18
**two** 8:9 11:6
  15:16 18:7
**type** 19:11,23
  25:4
**types** 15:13

**u**

**u.s.** 1:23 5:11
**uh** 16:17 17:4
**ultimately** 11:4
  13:25
**understand** 12:22
  13:14 15:20 16:24
  18:4 22:10 24:13
**understood** 13:13
  15:25

**undertake** 18:25
  19:25
**undertaking**
  19:24
**unfair** 21:17
**unfortunate**
  22:25
**unfortunately**
  14:17 17:1
**united** 1:1,14 5:10
**use** 8:8 22:25
**uses** 13:16

**v**

**vacation** 23:15
**value** 18:17,19
**various** 13:1
  19:20
**veritext** 27:22
**versus** 14:14
**view** 10:13
**views** 8:13,13
**villareal** 5:20
**void** 14:18 16:11

**w**

**waiting** 7:6 16:15
**want** 10:16 12:15
  15:5 16:18 17:14
  19:8 20:25 22:19
**wanted** 12:18
  16:14 19:22 20:5
**wardwell** 5:6
**way** 8:5 14:7
  15:10,12,19,20
  16:7 18:4,10
  21:20
**ways** 14:9
**we've** 10:17 12:21
  13:2 14:11 15:3,6
  15:12 16:20,23
  18:3,9,22 19:18
  21:5
**wednesday** 24:2
  25:19,21

**week** 6:13 10:13
  23:15
**weigh** 17:12
**welcome** 7:17
  19:2
**went** 17:3
**werkeizer** 23:14
**wilmington** 1:16
**wish** 7:4
**word** 13:16 14:20
  18:17 22:25
**words** 12:17
  20:22
**work** 11:11 18:11
  18:13 19:10,10,19
  21:10,11,12
**working** 12:2
**world** 23:2
**write** 22:3

**y**

**yeah** 7:6 20:23
  25:7
**year** 17:17
**years** 14:23
**yenamandra** 3:5
  6:10
**yield** 6:19