**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 <br> ) <br> ) Case No. 14-10979 (CSS) <br> ) <br> ENERGY FUTURE HOLDINGS CORP., et al.,[1]  ) Jointly Administered <br> ) <br> ) **Re: Docket No. 13102** <br> ) <br> ) <br> ) <br> Debtors.  ) |

**EFH INDENTURE TRUSTEE'S PRETRIAL WRITTEN SUBMISSION IN
CONNECTION WITH JOINT MOTION OF UMB BANK, N.A. AS INDENTURE
TRUSTEE, AND ELLIOTT TO FIX APPROPRIATE ALLOCATION OF CERTAIN
RESERVES AND EXPENSES AS BETWEEN THE EFH CORP. AND EFIH DEBTORS**

American Stock Transfer & Trust Company, LLC ("AST"), as successor trustee to The Bank of New York Mellon Trust Company, N.A. (in such capacity, the "EFH Indenture Trustee") under the indentures for notes (the "EFH Notes") issued by Energy Future Holdings Corp. ("EFH Corp.") and pursuant to the provisions of the confirmed EFH/EFIH Plan and EFH Confirmation Order,[2] by its undersigned counsel, hereby submits this pretrial written submission in opposition to the *Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to Fix*

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification Numbers is not provided herein.

[2]  Capitalized terms used, but not otherwise defined, herein shall have the meanings ascribed to them in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12653] (the "EFH/EFIH Plan"), and if not defined therein, the meanings ascribed to them in the *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12763] (the "EFH Confirmation Order"), and if not defined therein, the meaning ascribed to them in the Allocation Motion, and if not defined therein, the meanings ascribed to them in the Scheduling Motion.

1

*Appropriate Allocation of Certain Reserves and Expenses as Between The EFH and EFIH Debtors* [D.I. 13102] (the "Allocation Motion").[3]

1.\quad With the exception of Section III addressing the allocation of Elliott's Substantial Contribution Claim, the EFH Indenture Trustee joins in the *Final Written Submission of the Ad Hoc EFH Claimants in Support of Their Objection to Join Motion of UMB Bank, N.A. as Indenture Trustee, and Elliott to Fix Appropriate Allocation of Certain Reserves and Expenses as Between the EFH and EFIH Debtors* (the "Ad Hoc Submission").[4]

2.\quad In addition to joining and adopting the Ad Hoc Submission with the limited exception noted above, the EFH Indenture Trustee submits this brief to highlight two points.

3.\quad First, regarding the proposed allocation of the NextEra Termination Fee, the Court should not, in hindsight, and upon the request of one party that became a creditor after the transaction at issue, impose on EFH Corp.'s creditors a termination fee that the Court could not have approved at the time under *O'Brien*. *In re O'Brien Envtl. Energy, Inc.,* 181 F.3d 527 (3d Cir. 1999). *O'Brien* requires the Court to consider the balance between the benefit to the EFH Corp. estate and the cost of its share of a termination fee.[5] The allocation to EFH that Elliott has proposed is an order of magnitude beyond what any court has allowed under *O'Brien*.

---

[3]\quad UMB Bank, N.A. and Elliott are referred to herein as the "Movants."

[4]\quad The election of the EFH Indenture Trustee to take no position on the allocation of Elliott's substantial contribution claim at this time is without prejudice to all rights and any arguments which may be raised in connection with future proceedings (*e.g*. approval of Fee Committee recommendations) where the reasonableness of such an award or other matters related to such an award against EFH Corp. is to be determined. The election to take no position at this time is not a waiver of any right or position, nor is it to be construed as an agreement with any position Elliott is taking.

[5]\quad The determination of the termination fee attributable to EFH Corp., that is – what amount would be fair for EFH Corp. to pay to the passed-over purchaser – must be measured in terms of what the purchaser would have paid EFH Corp. It should not be measured with reference to alleged intangible and indirect benefits that a creditor who belatedly joins now wishes to have considered after the fact. The indirect benefits Elliott now points to were not considered at the hearing on the approval of the termination fee, and they should not be considered now.

4.      Moreover, as will be shown at trial, under the Movants' proposed theory of allocation, it would be far more fair to allocate <u>none</u> of the termination fee to EFH Corp. because no direct consideration attributable to the allowance of a termination fee ultimately flowed to EFH Corp. In fact, this Court has already concluded in connection with its confirmation of the NextEra Plan[6] that the distributable value gained as a result of the termination fee inured to the holders of EFIH Unsecured Notes, not to EFH Corp. creditors. *See* February 17, 2017 Hrg. Tr. at 22.

5.      Second, regarding professional fees, the Movants face an extraordinary, if not impossible, burden in their effort to reallocate fees at this late hour in the case because all fees in question were initially allocated by the Debtors pursuant to their business judgment. Further, that business judgment was sanctioned by the Fee Committee, and so ordered in each approved fee application. Those fees and allocations have been found to be reasonable after considerable scrutiny and opportunity for objection. The Movants' belated broad-brush attack, seeking to undermine and revisit decisions made during the four years of these Chapter 11 cases, is not justified. The Movants' core premise – that all work performed by professionals related to a tax-free transaction primarily benefitted EFH Corp. – is based on the Movants' expert witness' unsubstantiated disagreement with the Omnibus Tax Memorandum, and is belied by the facts in the record and the fundamental tax principles that have undergirded the many years of negotiations, litigation, and ultimately plans and transactions in these cases. All who lived through these Chapter 11 cases know that the fundamental principles that the Movants now seek

---

[6]   *The Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp. et al. pursuant to Chapter 11 of the Bankruptcy Code as it applies to the EFH Debtors and the EFIH Debtors and confirmed by the Court on February 17, 2017* [D.I. 10859] is hereinafter referred to as the "<u>NextEra Plan</u>" and the merger transaction contemplated therein as the "<u>NextEra Transaction</u>."

to upset were agreed upon and embodied in approved transactions and plans by EFIH and the Movants' predecessors-in-interest.[7]

### A. Movants' Proposed Allocation of NextEra Termination Fee Violates *O'Brien*

6. In the Allocation Motion, the Movants argue, without citation to any authority, that the NextEra Termination Fee should be allocated equally between the EFH Corp. and EFIH estates, and certain professional and administrative expenses should be re-allocated as between EFH Corp. and EFIH, leaving EFH Corp. administratively insolvent.[8]

7. Any determination regarding the amount of the NextEra Termination Fee, if any, that should be borne by the EFH Corp. estate should begin with an analysis of how this Court would have applied *O'Brien* at the time if it had to approve such a decision by EFH Corp. In considering approval of the NextEra Termination Fee, all parties agreed that the framework in *O'Brien* governed the Court's analysis.[9] There is no reason to deviate from that framework in considering how much of the NextEra Termination Fee, if any, should be borne by EFH Corp.[10]

---

[7] *See* the *Plan Support Agreement, Dated January 2, 2017, by and among the EFH/EFIH Debtors, UMB Bank, N.A., as the indenture trustee under the EFIH Unsecured Notes and holders and investment advisors holding 66/ 2/3% of the EFIH Unsecured Notes* (filed January 3, 2017) [D.I. 10530] in which the Movants' predecessors-in-interest to the EFIH Unsecured Notes agreed to support confirmation of the plan based on the NextEra Transaction, which ultimately was confirmed on February 17, 2017 as *The Eighth Amended Joint Plan of Reorganization of Energy Future Holdings Corp. et al. pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and the EFIH Debtors* [D.I. 10859].

[8] *See* Allocation Motion at ¶ 6. While the Movants' Allocation Motion requests that, in the event the requested relief results in EFH Corp.'s administrative insolvency, $10 million is to be transferred from EFIH to EFH Corp. that token amount would still result in EFH Corp. creditors receiving practically zero in distributions given the aggregate size of claims against EFH Corp. (approximately $1,410 million).

[9] *See* Hr'g Tr. 93:3-4 (Sep. 19, 2016) (Husnick, C.) ("The framework, Your Honor -- the legal analysis framework is really not in dispute. The *O'Brien* standard from the Third Circuit is what governed.").

[10] Any allocation of the NextEra Termination Fee must be analyzed by determining whether the proposed allocation satisfies the *O'Brien* standard on a debtor-by-debtor basis, because, while the EFH Corp. and EFIH bankruptcy cases are jointly administered, they are not substantively consolidated. Any other analysis would be analogous to a substantive consolidation without affording EFH Corp. the benefits of a substantive consolidation of EFIH's assets. Such an application would be fundamentally inequitable, and the Court and the Debtors have gone to great lengths in these cases to treat each Debtor separately.

8. The *O'Brien* court stated that "the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate. Therefore, we conclude that the business judgment rule should not be applied as such in the bankruptcy context." *O'Brien*, 181 F.3d at 535. In approving a termination fee, courts examine whether the termination fee provides a benefit to the estate. *See In re Reliant Energy Channelview LP*, 594 F.3d 200, 207-08 (3d Cir. 2010) (noting that a "break fee certainly provides a benefit to an estate if a bidder remains committed to a purchase.").

9. When it initially approved the NextEra Termination Fee, the Court appropriately analyzed the amount of the termination fee based of the Total Enterprise Value ("TEV") of Oncor, more than $18.3 billion, and commented that a fee of approximately 1.47% of that amount would be reasonable.[11] This earlier analysis cannot now be disregarded. In connection with the allocation of a portion of the NextEra Termination Fee to a particular Debtor, the analysis must consequently be based on that Debtor's share of the TEV.

10. Here, EFH Corp.'s share of Oncor's TEV is based on its indirect interest in Oncor through its subsidiary EFIH. Pursuant to the Section 1.7 of the NEE Merger Agreement, all consideration for Oncor was paid to EFIH and none to EFH Corp. Thus, EFH Corp.'s share of Oncor's TEV is limited to the amount that EFIH's TEV exceeded the amount of secured and unsecured debt at EFIH – no carve-out for EFH Corp. was agreed to. At the time that the Court authorized the Debtor's entry into the NEE Merger Agreement and approved the NextEra Termination Fee, EFH Corp. was projected, subject to ongoing litigation risk, to receive

---

[11]  *See* Hr'g Tr. 121:4-10 (Sept. 19, 2016) ("The breakup fee amount is large but, like everything in this case including the state of Texas, this is a big case and everything in here big numbers, and you have to look at it appropriately from a percentage basis, that's at, I believe, approximately 1.47 percent of TEV as we sit here today based on the most recent changes to the deal. That's an appropriate number for a case of this size.").

approximately $450 million of the proceeds. However, this projected amount was speculative as it depended on the amount of "all Allowed Claims against the EFIH Debtors," which could include the EFIH First Lien and Second Lien Makewhole Claims.[12] Accordingly, EFH Corp.'s share of Oncor's TEV cannot be more than the approximately $450 million it was projected to receive assuming a favorable decision by the Third Circuit on the EFIH Makewhole litigation.

    (i)    ***The Movants' Proposal of a 50/50 allocation of the NextEra Termination Fee greatly exceeds the range of termination fees typically approved by Courts as compared to the value of the transaction to EFH Corp.***

11.    The range of termination fees approved by courts is typically within 1 to 4% of the transaction's total enterprise value. *See In re Edison Mission Energy*, No. 12- 49219 (JPC) (Bankr. N.D. Ill. Mar. 11, 2014) (approving termination fee of 2.1% of purchase price); *In re AMR Corp.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. May 10, 2013) (approving termination fee of 1.2% of purchase price); *In re Pilgrim's Pride*, No. 08-45664 (DML) (Bankr. N.D. Tex. 2011) (approving termination fee of 1.6% of purchase price); *see also Motion of the EFH/EFIH Debtors for Order Authorizing Entry Into Merger Agreement and Approving Termination Fee* [D.I. 11430], at ¶¶ 55-57 (summarizing termination fees as percentage of total enterprise value in other transactions).

12.    Consequently, the Movant's proposal to saddle EFH Corp. with 50% of the NextEra Termination Fee is vastly out of line with any allocation that would be approved under *O'Brien.* Moreover, it is contrary to this Court's determination when it approved the NextEra Termination Fee that 1.47% was appropriate in these large Chapter 11 cases. To place 50% of

---

[12]    The Debtors have consistently and repeatedly disclosed that there was a potential that the EFIH First Lien and Second Lien Makewhole Claims could become "Allowed Claims." *See*, *e.g.*, *Disclosure Statement for the Fourth Amended Joint Plan of Reorganization of Energy Future Holding Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the EFH Debtors and EFIH Debtors*, filed on September 21, 2016 [D.I. 9616] §§ I.C.2, I.E, I.F n.16, I.I nn. 19–20, II.C.2, II.D, I.E, IV.L, V.D.19, V.D.20, VIII.A.1, VIII.A.6, VIII.E ("Forward Looking Statements").

the liability for the NextEra Termination Fee at EFH Corp. would allocate up to $137.5 million to EFH Corp. on a deal that was worth at most approximately $450 million to EFH Corp. This allocation would correspond to a termination fee of 30.56% of highest possible transaction value to EFH Corp.

13. As discussed below, where, as here, no consideration actually flowed from the subsequent purchaser to EFH Corp., no fee should be allocated to EFH Corp. In the alternative, the maximum fee that could be allocated when considering the fee as a percentage of TEV would be 1.47% of the consideration expected to be paid to EFH Corp., as established in the record at the hearing. No grounds exist to burden EFH creditors with a higher percentage of the fee relative to the enterprise value than it was found appropriate for EFIH to bear.

(ii) *Analyzing the benefit of distributable value resulting from the NextEra Transaction to EFH Corp. likewise does not justify a 50/50 allocation of the NEE Termination Fee*

14. If the benefits of the NextEra Transaction to EFH Corp. are analyzed in the form of distributable value received by EFH from the NextEra Transaction, the result is that none of the termination fee should be allocated to EFH. EFH Corp. stood to receive very little, if any, of the benefit of the NextEra transaction. None of the approximately $9.8 billion cash purchase price was being paid to EFH Corp. Instead, it was paid to the EFH Plan Administrator for the benefit of EFIH's creditors.[13] EFH Corp. would only receive proceeds of the NextEra Transaction if and when "all Allowed Claims against the EFIH Debtors" are paid in full – *i.e.*,

---

[13] §1.7(a) of the NEE Merger Agreement provides that the Merger Sub Cash Amount (as defined therein) is to be delivered to the EFH Plan Administrator Board and deposited into the EFH/EFIH Distribution Account and disbursed in accordance with the Plan of Reorganization. The *Fourth Amended Plan* [D.I. 9613], filed on September 21, 2016 in connection with the initial solicitation version of the Disclosure Statement for the NextEra Plan [D.I. 9616], which was approved contemporaneously with the NEE Merger Agreement and the NextEra Termination Fee, provided that the "EFH Creditor Recovery Pool" only included cash in the EFH/EFIH Distribution Account to the extent there was any cash remaining after payment of all Allowed Claims against the EFIH Debtors.

only if the Third Circuit rendered a favorable decision on the Makewhole litigation.[14]  As the Court stated at the February 17, 2017 hearing, the Third Circuit Makewhole ruling "…ultimately has led to a situation where that distributable value will not inure to the benefit of EFH unsecured creditors.  And will actually end up benefitting the – maybe the second liens, but <u>most probably actually benefiting the PIK noteholders</u>."  Hrg. Tr. at 22 (emphasis added).  Thus, because creditors of EFH Corp. were limited in their recoveries to EFH Corp.'s cash on hand and no distributable value flowed to them, none of the NextEra Termination Fee should be allocated to EFH Corp.

       (iii)    ***Equities also dictate that EFH Corp. should not be saddled with half of the NextEra Termination Fee***

15.    To grant the Movants' request would significantly reduce – and even eliminate – any recoveries to EFH Corp. creditors.  That result not only flies in the face of *O'Brien*, which requires that any termination fee must provide a benefit to the estate, but it is also inequitable.

16.    In evaluating administrative expenses under section 503(b), the Court can consider equitable factors.  *See Mediofactoring v. McDermott (In re Connolly N. Am., LLC),* 802 F.3d 810, 815 (6th Cir. 2015) (stating that the court can look at "relevant equitable considerations" under section 503(b)); *Goody's Family Clothing, Inc. v. Mountaineer Prop. Co. II, LLC (In re Goody's Family Clothing, Inc.)*, 401 B.R. 656, 666 (D. Del. 2009) (stating that recovery of rent as an administrative expense is an "equitable remedy.").

17.    Here, allowing any of the NextEra Termination Fee at EFH Corp. and re-allocating certain of the professional fees in an amount that exceeds EFH Corp.'s net cash on

---

[14] While it could be argued that a possible benefit the NextEra Transaction conferred upon EFH Corp. was the assumption of the contingent asbestos liabilities, the Debtors have consistently estimated this liability in the range of $50 million or less.

hand (less the Debtors' projected administrative expenses)[15], could render it administratively insolvent.  Thus, it would be inequitable and potentially catastrophic to allocate the NextEra Termination Fee at EFH Corp. in the amount suggested by the Movants (*i.e.*, 50%-50%).[16]  EFH Corp. creditors would get a minuscule token recovery, or no recovery at all, rather than a benefit.  This would vitiate the premise of *O'Brien* that approval of a termination fee must be in light of some benefit accruing to the estate, and that a termination fee be a correspondingly small (1-4%) portion of that benefit.

18.     The Court should follow the *O'Brien* standard and deny the Allocation Motion as to the NextEra Termination Fee.

**B.      Professional Fees Should Remain Allocated in the Manner in Which They Have Previously Been Allocated and Approved**

19.     Finally, with respect to the allocation of professional fees, the EFH Indenture Trustee joins in the arguments and evidence submitted by the Ad Hoc EFH Claimants.  The EFH Indenture Trustee underscores that the Movants' entire premise for its belated attack on the allocation of professional fees ignores the close review by the Fee Committee and the lack of any objection to the fee allocation over many years.  In sum, the argument for reallocation of professional fees is a deeply flawed, hindsight challenge by a conflicted creditor to the fundamental tax-law principles that governed the parties, court, and estate fiduciaries throughout this case.

---

[15]   *See Notice of Cash Projections*, filed February 28, 2018 [D.I. 12769].

[16]   It should be noted that the Movants' argument that EFIH is insolvent is based solely on the less than 100% recoveries to EFIH unsecured claims.  These reduced recoveries are, in part a result of the Third Circuit's decision on the Makewhole litigation, but also, in part, due to the decision by Elliott and certain other holders of EFIH claims to settle the Makewhole litigation. *See Settlement by and among the Debtors, Certain Holders of EFIH First Lien Note Claims, Certain Holders of EFIH Second Lien Note Claims and Certain Holders of EFIH Unsecured Notes* [D.I. 11048-1] at p. 32 (signature of Elliott Associates, L.P.) and p. 33 (signature of The Liverpool Limited Partnership).

9

WHEREFORE, the EFH Indenture Trustee respectfully requests that the Court: (i) deny the Allocation Motion; and (ii) grant such other relief as is just and proper.

Dated: Wilmington, DE
August 30, 2018

**CROSS & SIMON, LLC**

By: /s/*Christopher P. Simon*
Christopher P. Simon (Bar No. 3697)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

- and –

NIXON PEABODY LLP
Amanda D. Darwin
Richard C. Pedone
Erik Schneider
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com
eschneider@nixonpeabody.com

-and-

Christopher J. Fong
55 West 55th
New York, NY 10036
Telephone: 212-940-3724
Facsimile: 855-900-8613
cfong@nixonpeabody.com

*Co-Counsel to American Stock Transfer & Trust Company, LLC, as Indenture Trustee*