Page 1

1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3

4   In re:                          :

5                                   :     Chapter 11

6   ENERGY FUTURE HOLDINGS CORP., :   Case No. 14-10979(CSS)

7   et al.,                         :

8           Debtors.               :    (Jointly Administered)

9   _____:

10

11

12                                  United States Bankruptcy Court

13                                  824 North Market Street

14                                  Wilmington, Delaware

15                                  September 4, 2018

16                                  11:28 AM - 12:00 PM

17

18

19

20

21   B E F O R E :

22   HON CHRISTOPHER S. SONTCHI

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO OPERATOR:   UNKNOWN

1    HEARING re Telephone Hearing

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   KIRKLAND & ELLIS LLP

 4        Attorneys for the EFH Plan Admin. Board

 5

 6   BY:  MARK E. MCKANE

 7        MARC KIESELSTEIN

 8

 9   NIXON PEABODY LLP

10        Attorneys for American Stock Transfer

11

12   BY:  RICHARD PEDONE

13

14   RICHARDS LAYTON & FINGER, P.A.

15        Attorneys for the Debtors

16

17   BY:  JASON M. MADRON

18

19   ROPES & GRAY

20        Attorneys for Elliott & UMB

21

22   BY:  MATTHEW L. MCGINNIS

23

24

25
```

1    KASOWITZ, BENSON & TORRES LLP

2         Creditor

3

4    BY:  ANDREW GLENN

5

6    BAYARD

7         Attorneys for Elliott & UMB

8

9    BY:  ERIN R. FAY

10

11   HOGAN MCDANIEL

12        Attorneys for the Ad Hoc EFH Claimants

13

14   BY:  GARVAN MCDANIEL

15

16   ALSO APPEARING:

17   JESSICA STEINHAGEN

18   BRADY C. WILLIAMSON

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  This is Judge Sontchi and we're here

3    on the EFH telephone conference to deal with the issues of

4    any objections to the parties' designations, counter

5    designations of prior hearing testimony.  I did receive the

6    binder this morning -- thank you Mr. Madron, if you're on

7    the line, for doing that.

8              MR. MADRON:  I am, Your Honor.  You're welcome.

9              THE COURT:  Yes.  And thank you for being

10   available throughout the weekend.  So, I'm not quite sure

11   how, frankly, to proceed.  I don't know if the parties would

12   like to just take turns.  Maybe that makes the most sense.

13   Any thoughts on how to proceed.

14             MR. MCKANE:  Your Honor, Mr. McKane, the Plan

15   Administrator Board.  Can I just make certain that, you

16   know, given that you have the binder in front of you, we

17   kind of crystallize how narrow the issue is at this point

18   because I think it has narrowed substantially since we last

19   spoke.

20             THE COURT:  All right.  Well, why don't I just --

21   why don't I hear from each of the parties generally, or

22   specifically, if you want to do that.  And we'll just go --

23   let's do this.  Let's go Elliott and UMB first, then we'll

24   hear from the ad hocs, and then I'll hear from the Plan

25   Administrator Board, if that's okay.

1            MR. McGINNIS:  Thank you, Your Honor.  This is

2    Matt McGinnis of Ropes & Gray on behalf of the movement.

3    Thank you again for taking the time to speak with us today

4    about this.

5            Within the binders, Your Honor noticed this

6    contains the parties' proposed designations of prior trial

7    testimony.  One clarification, and the other parties will

8    certainly correct me if they have a different view of this:

9    I believe that the only issue in dispute at this point is

10   the designation of prior trial testimony by witnesses that

11   are not testifying at trial.  The binder does include some

12   designated testimony by Mr. Keglevic; he will be testifying

13   at trial.  I don't believe the parties have a disagreement

14   as to the admissibility of designations for Mr. Keglevic, so

15   they'll certainly correct me if they disagree.

16            THE COURT:  I think they've also -- I'm sorry to

17   interrupt, but I think there's also quite a few designations

18   for Mr. Horton, who is also testifying at trial.

19            MR. McGINNIS:  That's right, Your Honor, Mr.

20   Horton and Mr. Keglevic.  The only witness that does not fit

21   into that category, who will not be testifying at trial is

22   Mr. Hiltz, the Evercore Banker who we spoke with, that I

23   spoke about last Thursday.

24            You'll see in the binder, Your Honor, that both

25   movants and the ad hoc claimants have designated,

1    affirmatively designated testimony by Mr. Hiltz that they

2    seek to admit at trial.  I believe the PAB has objected to

3    all of that testimony as hearsay.  On that, Your Honor, I

4    just think it is worth noting that the economic stakeholders

5    to this proceeding do seek to use that testimony and that

6    the Trustee, who does not have an economic statement, this

7    is the only party that appears to object to using any

8    testimony by Mr. Hiltz.

9           With respect to Elliott and UMB's objections, in

10   light of our discussion with you last week, Your Honor, we

11   have looked very closely, I think, at what we actually need

12   from Mr. Hiltz' prior testimony and have, as Mr. McKane

13   alluded to, sought to narrow the testimony and the

14   designations that we are offering affirmatively accordingly.

15          And at this point, there is only, I believe, one

16   affirmative designation that the movants seek to admit.  But

17   we do have several counter designations to the ad hoc's

18   designations of Mr. Hiltz's testimony.  Though the

19   admissibility of those will, obviously, rise and fall, I

20   think, on whether the Court admits the ad hoc claimants'

21   affirmative designations.

22          So, with that as a prelude, I'll just touch

23   briefly on the specific affirmative designation that Elliott

24   and UMB have made.  And you will find that, Your Honor, at

25   tab one at page 168 and 169 of the transcript.

1           THE COURT:  I see it, thank you.

2           MR. McGINNIS:  And as you'll see here, Mr. Hiltz,

3    you know, in summary, testified that if EFIH later becomes

4    insolvent -- not at the time of this 2014 --

5           THE COURT:  All right, let's, let's, let's talk

6    about this without talking about what it says, to the best

7    you can, because, you know, I can't -- although we do do all

8    the time, it's hard to un-hear things.  So, let's try to --

9           MR. McGINNIS:  I understand, Your Honor.  I will

10   say that this is one that may be difficult to rule on

11   without understanding the testimony itself, and here's why.

12   We believe the testimony in this section is -- properly fits

13   within the state of mind exception to hearsay.  Last week,

14   we obviously discussed the subject of whether Mr. Hiltz was

15   unavailable or not.  Without having to address that issue,

16   and we hoped that you would, under rule 8033, for which a

17   witness does not have to be unavailable, the testimony on

18   pages 168 and 169, would be considered state of mind

19   testimony because it -- without getting into the specifics,

20   unless Your Honor would like me to -- it reflects a

21   statement of Mr. Hiltz's then-existing intent, or plan or

22   belief, to act in a certain way in the future.  I believe

23   the PAD's response to that is that they contend, under rule

24   8033, that we are seeking to admit the testimony to, quote,

25   prove the facts believed, and that, Your Honor, is an

1    exception to the exception in rule 8033.  You could admit

2    state of mind testimony, but you can't admit to prove the

3    underlying facts that somebody may believe at the time.

4              Your Honor, I don't think that that really applies

5    here.  And the reason is, is that the testimony at issue

6    here concerns Mr. Hiltz's expectations about future events.

7    This is not testimony about any fact that, frankly, that

8    happened at the time we offered the testimony and,

9    therefore, it could not be used to prove any fact believed

10   at that time.

11             THE COURT:  Thank you.  Anything else?  I'm sorry,

12   I mean --

13             MR. McGINNIS:  That is it.  I was actually, that

14   was, I think, the substance of (indiscernible) Your Honor.

15             THE COURT:  So, this is the sole issue as far as

16   this, as we sit here today, as far as you understand, the

17   administration, these couple of paragraphs is the only issue

18   before the Court?

19             MR. McGINNIS:  This is the only issue, Your Honor,

20   with respect to movants' affirmative designation.  I will

21   defer to the ad hocs EFH claimants who have also

22   affirmatively designated testimony of Mr. Hiltz on a variety

23   of subjects.

24             THE COURT:  Okay, thank you.

25             MR. McGINNIS:  I believe -- I'll just stop there.

1    I've taken (indiscernible).

2             THE COURT:  Okay, thank you.  Who's here from the

3    ad hoc?

4             MR. GLENN:  Andrew Glenn on behalf of the ad hoc

5    committee.  Your Honor, in light of these developments, our

6    clients, our group, is going to withdraw the affirmative

7    Hiltz designations and I'm going to defer to Mr. McKane.  I

8    think he's prepared to argue against the Hiltz testimony and

9    we support the Debtor's view on this now.

10            THE COURT:  Thank you, Mr. Glenn.  Mr. McKane?

11            MR. MCKANE:  Thank you, Your Honor.  I appreciate

12   Mr. Glenn, we're all going to do this, the Plan

13   Administrator Board -- and let me just be precise about what

14   the issue is.  We appreciate Elliott's withdrawal of seven

15   of the eight proposed passages, that they're putting

16   forward.  But the remaining one that they're putting forward

17   still does not satisfy any of the evidentiary rules, that's

18   (indiscernible) for the admission of his testimony.

19            And while I recognize that one of the economic

20   stakeholders wants to get this in, the rules of evidence

21   still do apply.  And with regard to this testimony, this

22   does not fall within an 8033 exception for state of mind

23   because what Mr. -- the testimony is Mr. Hiltz speculating

24   about what steps the Debtors, and in particular the EFIH

25   Debtor, might do in the future in the event that there are

1    rulings by the Court as it relates to the enforceability of

2    certain contracts, or the value of the estate.  And so, it's

3    about, in a scenario that may happen in the future based on

4    facts that had not yet occurred, what would the Debtors do?

5            And Mr. Hiltz, as one of the investment bankers

6    advising the Debtors, is not in a position to forecast what

7    the EFIH Board, and most likely what the decision the

8    director and his separate set o advisors would have done in

9    a circumstance where they're, you know, in the future

10   because, frankly, he is just an advisor; he can't put

11   himself in the shoes of the Board of Directors and he can't

12   speculate as to what their state of mind is.  This may be a

13   different argument as a state of mind, if it was actually a

14   member of the Board of EFIH testifying about what they would

15   consider in that circumstance, but Mr. Hiltz is at least an

16   additional step removed from that.  And for those reasons,

17   we don't believe they've satisfied the appropriate hearsay

18   exception, that we think it should stay out.

19           These issues are going to be engaged over the next

20   three days.  The Hiltz testimony really doesn't add anything

21   because of the removed nature and the speculation associated

22   with it.

23           MR. McGINNIS:  Your Honor, may I respond briefly?

24           THE COURT:  Yes, Mr. McGinnis.

25           MR. McGINNIS:  Matt McGinnis on behalf of the

1    movants.  You know, I heard from Mr. McKane the reasons why

2    he thinks it may be speculation and why there may be a

3    foundation question.  I think at the end of the day, if you

4    read the testimony, you'll see that those aren't issues and,

5    in any event, the PAB's objections that this was hearsay not

6    speculation or some other basis.  Whether or not Mr. Hiltz's

7    state of mind of his belief about what Evercore would do at

8    that time is right or wrong, is a separate question.  The

9    fact of the matter is, is that this reflects his belief at

10   the time as accordingly and appropriately as

11   (indiscernible).

12          THE COURT:  All right.

13          MR. MCKANE:  Your Honor, I apologize, I just have

14   to correct one thing that Mr. McGinnis just said, and it's

15   the PAB's objection, which is evident in the last line of

16   the chart in Tab 11.  It was not only hearsay but lacked

17   foundation and calls for speculation.  So, we raised all

18   other objections.

19          THE COURT:  Thank you.  I'm going to, actually --

20   I think I have to -- I'm going to read the passage right now

21   and then I'll make my ruling.  So, it's going to be silent

22   for a minute.

23          So, the key point is the second answer, isn't it?

24   Now, if we reach a point down the road where these matters

25   become crystallized and EFIH creditors cannot be paid off,

1    and the tax sharing agreement is found not to be able to

2    push the tax liability down, then we'll go to the buyer in

3    the tax-exempt transaction, and ask him to propose a taxable

4    transaction.  Or, you go to other buyers and ask them to

5    propose a table transaction, but that set of circumstances

6    doesn't exist right now.  And the objection is that under

7    803(3), while you can admit a statement of the declarant's

8    then existing state of mind, such as -- and I think here --

9    a plan or emotional, sensory or physical condition, blah,

10   blah, blah, but not a statement of memory or belief to prove

11   the fact remembered or believed, unless it relates to the

12   validity or terms of the declarant's will.

13            And the only objection is no foundation and

14   speculation.  Is that correct?

15            MR. MCKANE:  That is correct, Your Honor.

16            THE COURT:  Was Mr. Hiltz testifying as a fact

17   witness or an expert?

18            MR. MCKANE:  He has not been qualified as an

19   expert during the course of the procedures herein, Your

20   Honor.

21            THE COURT:  Well, I do -- taking 803(3) first, I

22   do believe that, broadly speaking, particularly the passage

23   I just read, would be an existing mental condition to the

24   state of mind regarding a plan, that might be implemented if

25   circumstances change.  So, I think it does meet the criteria

1    of 803(3).  I think -- well, I think there's foundation in

2    that he is saying what the investment banker would do, or

3    maybe suggest, and it's the investment banker for the

4    Debtors, not the independent director -- disinterested

5    director, to use the proper lingo -- would do, and of

6    course, the investment banker works for the director or the

7    debtor.  So, I think there's foundation.

8               But I actually agree with the PAB that this is

9    speculation as to what might or might not occur in his plan.

10   It's based on several assumptions that are speculative in

11   nature that he can't control.  So, I am going to exclude the

12   testimony.

13              MR. MCKANE:  Thank you, Your Honor.  It's Mr.

14   McKane for the PAB.  I just wondered, there are two other

15   things, or three, just updates we want to provide the Court

16   with regards to the proceedings for the hearing.  And as,

17   you know, the PAB has worked closely with the other parties

18   to kind of, basically manage how the hearing would proceed,

19   can we just give you a quick update?

20              THE COURT:  Yes, that would be great.  Let me

21   just, for the record, make sure, are there any other

22   evidentiary issues that anyone would like to raise in

23   connection with the designations and counter designations,

24   prior trial testimony before we move on?  Speak now or

25   forever hold your peace.

1          MR. McGINNIS:  None for movants, Your Honor.

2          THE COURT:  Okay.  I'm move to the update for Mr.

3     McKane.  I will say, again, thank you to Mr. Madron for

4     providing me the materials I needed.  I did spend a good

5     part of my Labor Day -- so be it, I figure we're all working

6     to -- reading all of the briefs as well as the directs.  So,

7     I have reviewed all those materials.

8          MR. MCKANE:  Your Honor, I guess we all owe you an

9     apology for that.

10          THE COURT:  You don't owe me apologies.  I didn't

11     say it to get sympathy.  I just wanted to let you know I'm

12     up to speed, but thank you.

13          MR. MCKANE:  So, the update is, just briefly, Your

14     Honor, regards to logistics for exhibits, what we've

15     proposed is that each party have a complete set of their

16     exhibit available for the Court in hard copy.  That's a very

17     voluminous production.  We have over 700 exhibits that have

18     been proposed by the various parties.

19          But in terms of streamlining -- like the use of

20     exhibits in any particular witness, we have proposed, as we

21     have done in the past, to have witness binders with

22     documents that are intended to be used with any direct

23     examination or cross-examination for each of the witnesses,

24     so as to better package and present those to you in hard

25     copy.  And then, in addition to that, the PAB is going to

1    make available tablets, like they've had in the past, which

2    have electronic versions of every exhibit, and wanted the

3    ability to put every exhibit up on the screens as well.  And

4    so, we thought that balance of hard copy materials and

5    electronic materials should enable the Court to have

6    everything it needs from a records standpoint, but also not

7    unnecessarily incur the costs of creating like four or five

8    sets of all the exhibits, because it's our estimate based on

9    our discussions with our vendors that every time you print a

10   set of exhibits it's approximately $10- to $15,000.

11              THE COURT:  Holy cow.

12              MR. MCKANE:  Yeah, it's a mess.

13              THE COURT:  Well, I know the creditors don't want

14   that money spent.  So, no, that's fine.

15              MR. MCKANE:  Thank you, Your Honor.  The second is

16   the witness, order of witnesses, as we understand it based

17   on the report we received yesterday from Elliot UMB, and not

18   just steal their thunder, but we thought it would be

19   appropriate to report to the Court the sequencing of

20   witnesses who didn't know that you had already read all of

21   the directs, but thought you would appreciate knowing who's

22   going to go first in the batting order.

23              THE COURT:  Yes.

24              MR. MCKANE:  All right.  Mr. McGinnis, do you want

25   to give that report or do you want me to do it?

1            MR. McGINNIS:  I'd be happy to.  Matt McGinnis on

2    behalf of the movants.  Your Honor, we anticipate calling

3    tomorrow Mr. Husnick to begin, following -- let me just back

4    up.  We anticipate brief opening statements on behalf of the

5    parties, followed by the testimony of Mr. Husnick, the

6    testimony of Professor Abrams, the testimony of Mr. Robbins,

7    who was, you will recall, the (indiscernible) banker the

8    movant has designated as an expert; followed by testimony of

9    Mr. Horton.

10           We expect that that will take up the day.  We are

11   hopeful that we can finish Mr. Horton on Wednesday but we

12   will see if that can occur.  After Horton, we'll --

13           THE COURT:  Have you ever heard Mr. Horton speak?

14   You need to build in some time there.

15           MR. MCKANE:  Your Honor, we tried to warn Mr.

16   McGinnis on this.  He's finishing up a deposition right now.

17           MR. McGINNIS:  I am an eternal optimist on these

18   matters, Your Honor.  Following Mr. Horton, whether that

19   occurs on Wednesday or Thursday, will be Mr. Keglevic,

20   followed by Mr. Rosenbaum.  At that point, we anticipate

21   resting subjects, any rebuttal testimony that we may offer

22   in response to the ad hoc (indiscernible) claimants'

23   designated expert, Mr. Strock.

24           THE COURT:  Okay.  And then --

25           MR. McGINNIS:  And, Your Honor, one final thing,

1    because it's an unusual sequencing of how, you know, how do

2    you handle a situation where Elliott and UMB are the movants

3    but yet their first witness is someone who is, you know, as

4    a technical matter, maybe adverse and certainly not under

5    their control, like Mr. Husnick.  And so, we had discussed

6    that issue as well, and the proposal that I believe, agreed

7    to by the parties is that -- we would ask you, the written

8    direct testimony would be introduced into evidence subject

9    to any objections.

10            Then there would be, for example, with Mr.

11   Husnick, Mr. Horton and Mr. Keglevic, there would be like a

12   live direct examination, albeit brief, and the PAB would put

13   that on as witnesses that we've worked with.  Then there

14   would be an opportunity for cross-examination by Elliott and

15   UMB.  And then there would be cross-examination by the ad

16   hoc EFH claimant.  Then, to the extent necessary, and Your

17   Honor is open and willing to go forward with the additional

18   procedures, there would be an opportunity for potential

19   redirect for the PAB and then re-cross by the economic

20   partner.

21            THE COURT:  That's fine because --

22            MR. McGINNIS:  Would that be acceptable?

23            THE COURT:  Yes, that's fine, because this is, you

24   know, one of these things where you're going to call Mr.

25   Husnick, the PAB is going to call Mr. Husnick, excuse me,

1    and the movant or the ad hocs are also going to want to call

2    him.  We're only going to do it once.  So, in those kind of

3    situations, I certainly, usually allow re-cross and I guess

4    re-redirect, if necessary, even though I usually don't allow

5    re-cross.  So, that's fine.  And that's certainly fine -- I

6    guess it might be fine for all the witnesses, but I'll let

7    you guys work it out.  But it's certainly fine for the ones

8    where both sides were intending to call the witness.

9              MR. McGINNIS:  And Your Honor, just one

10   clarification on that -- Matt McGinnis on behalf of he

11   movant -- and I believe this is, all parties are in

12   agreement on this -- given the structure that we are

13   proceeding with, again, the movants will be going first in

14   calling these witnesses in our case.  The parties have

15   agreed that all the PAB would have an opportunity to do a

16   supplemental live direct and the submission of written

17   direct, any cross would not be limited to the scope of the

18   direct examination because we're calling the witness on

19   (indiscernible).

20             THE COURT:  Right, yes, absolutely.  And I said

21   both sides, it's three sides, I apologize.  Everybody's --

22   it's sort of a triangle.  So, that makes it even more

23   complicated.  No, that is fine.

24             MR. PEDONE:  Your Honor, Richard Pedone.

25             THE COURT:  Yeah, Mr. Pedone.  Yes?

1          MR. PEDONE:  To the extent necessary, we will plan

2     on following the ad hoc to the extent we have any questions

3     for witnesses or re-cross, or cross of witnesses.

4          THE COURT:  Of course.  That's fine.  Anything

5     else?

6          MR. MCKANE:  No, Your Honor, from the PAB's

7     perspective, and thank you for your time.

8          THE COURT:  Okay.  No problem.  I have a couple of

9     thoughts that you might want to chew on with regard to the,

10    what we do at the end.  We might very well be in -- I hope

11    we're in a situation where we can have closings on Friday.

12    But if not, that's okay.  We can schedule them for a time in

13    the future, relatively -- I mean soon, but not on Friday.

14    I'm thinking that I'm going -- we'll see how it proceeds,

15    but I'm thinking that I'm going to ask the parties, not

16    post-trial briefing, but to have the parties submit proposed

17    findings and conclusions of law on a schedule that makes

18    sense, with citations to the record, and provide that to the

19    Court.

20          And it might make sense to have closings after you

21    do that, or it might make sense to have closings before you

22    do it.  I'm open to either way.  I think it probably would

23    be best to have closings closer to the end of trial while

24    everything's fresh in your mind, and in my mind, because

25    we're certainly going to need several weeks to prepare

1    proposed findings that site to the exhibits and the

2    transcript and what not.

3            So, just throwing that out there to think about.

4    We can talk about it more tomorrow morning, or later in the

5    week.  Yeah, I will say that I think that mechanism will

6    significantly speed this position of the issues before the

7    Court and I think speed is everybody's friend here, and

8    cutting costs as much as reasonably possible is everybody's

9    friend here, although it's not free, obviously, to prepare

10   these type of materials.  And we'll get, I think we'll get a

11   disposition that possibly everybody agrees to, at the end of

12   the day, or likely, but we'll see.  And if not, then it will

13   help speed the appeals process if necessary.  So, that, I

14   just want to make, get those thoughts out there and let you

15   guys think about it and we can talk about it later this

16   week.  Anything else?

17           MR. McGINNIS:  No, Your Honor.  Thank you.

18           THE COURT:  Anything else anybody wants to talk

19   about?  What deposition is going on?

20           MR. McGINNIS:  Mr. Horton -- there was a

21   continuation of Mr. Horton's deposition because when he was

22   being deposed the first time he hadn't put out his final

23   submission yet, which was his PAB proposal of how to capture

24   these issues.  And so we had agreed to make him available

25   thereafter.  And so, he's wrapping up, I think, the 85

1    minutes that had been left available for the party.

2              THE COURT:  Okay.  Well, I'll let you get back to

3    it.

4              MR. McGINNIS:  Thank you, Your Honor.

5              THE COURT:  Okay.  Thank you everybody.  We'll see

6    you tomorrow at nine o'clock in the mediation room.

7              MR. McKANE:  Thank you, Your Honor.

8              THE COURT:  All right.  We're adjourned.

9              (Whereupon these proceedings were concluded at

10   12:00 PM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 23

1                      C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6      Sonya                    Digitally signed by Sonya Ledanski
                                Hyde
                                DN: cn=Sonya Ledanski Hyde, o,
       Ledanski Hyde            ou, email=digital1@veritext.com,
                                c=US
7                               Date: 2018.09.05 16:04:20 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  September 5, 2018