1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3

4   In re:                          :

5                                   :    Chapter 11

6   ENERGY FUTURE HOLDINGS          :    Case No. 14-10979 (CSS)

7   CORP., et al.,                  :

8           Debtors.                :    (Jointly Administered)

9   _____:

10

11                              United States Bankruptcy Court

12                              824 North Market Street

13                              Wilmington, Delaware

14                              September 18, 2018

15                              10:33 a.m. - 10:55 a.m.

16

17

18

19

20

21   B E F O R E :

22   HON CHRISTOPHER S. SONTCHI

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO OPERATOR:   LESLIE MURIN

1    HEARING re Status Conference Concerning the Impact of the

2    September 13, 2018 Opinion of the United States Court of

3    Appeals for the Third Circuit in Appeal No. 18-1109 on the

4    Chapter 11 Cases.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   ROPES & GRAY LLP

 4        Attorneys for Elliot Management Corporation

 5

 6   GREGG M. GALARDI (TELEPHONICALLY)

 7

 8   NORTON ROSE FULBRIGHT US LLP

 9        Attorneys for NextEra Energy

10

11   HOWARD SEIFE (TELEPHONICALLY)

12

13   KASOWITZ BENSON & TORRES LLP

14        Attorneys for Farmstead Capital Management

15

16   ANDREW GLENN (TELEPHONICALLY)

17

18   KIRKLAND & ELLIS LLP

19        Attorneys for the Debtors

20

21   MARK MCKANE (TELEPHONICALLY)

22

23   ALSO PRESENT TELEPHONICALLY:

24

25   SAM N. ASHURAEY
```

 1   MATTHEW C. BROWN

 2   MARIA CHUTCHIAN

 3   ERIC C. DAUCHER

 4   DANIEL DEFRANCESCHI

 5   ANDREW H. ELKIN

 6   CHRISTOPHER ESBROOK

 7   ERIN FAY

 8   BRIAN D. BLUECKSTEIN

 9   DANIEL K. HOGAN

10   CHAD J. HUSNICK

11   SCOTT J. LEONHARDT

12   TERESA LII

13   JASON M. MADRON

14   GARVAN MCDANIEL

15   MATTHEW L. MCGINNIS

16   DAVID NGUYEN

17   RICHARD PEDONE

18   DAVID ROSNER

19   DAVID S. SHAMAH

20   CHARLES E. SIEVING

21   MCCLAIN THOMPSON

22   PATRICIA J. VILLAREAL

23   JACLYN C. WEISSGERBER

24   APARNA YENAMANDRA

25   MARC KIESELSTEIN

1                    P R O C E E D I N G S

2              THE COURT:  Good morning, everybody.  This is

3     Judge Sontchi.  And I'd like to thank you all for making

4     yourself available this morning to have a status conference

5     in connection with sort of two interrelated issues.

6              One is the -- well, as you all know, I'm sure, the

7     Court's order from last year granting Elliott's motion for

8     reconsideration in connection with the breakup fee was

9     affirmed by the Third Circuit, I guess it was last week, two

10    to one.  And that raises a couple of issues, I think.

11             The one that leaps to mind is the recently

12    completed allocation trial, and I think the primary one, and

13    I wanted to get everybody together to figure out a couple

14    things kind of leaped to my mind.

15             The first is do I still at this point -- well,

16    there was an argument that the issue of allocation of the

17    breakup fee was advisory.  It may be even a little more

18    advisory now than it was a month ago.  So, the first

19    question is the parties' position on whether they still want

20    me to decide that issue based on the record that's been

21    submitted so far.

22             The other issue relates to the $60 million request

23    for an administrative expense, basically for a substantial

24    contribution claim by EFH that I denied over the summer and

25    I believe is currently on appeal to the District Court.

1    Another -- that's an issue that the parties want me to

2    decide allocation of that, to the extent it's ever allowed;

3    whether that's an issue that the parties want me to decide,

4    and if so, on this record, or on a supplemental record, or

5    on a separate record.

6            So those are the two things that kind of leapt to

7    my mind and why I wanted to get the input of the parties.

8    Of course, if anyone else has anything else they would like

9    to raise, that's fine as well.  So, that's where we are.

10   And whoever wants to go first, just start talking.

11           MR. GALARDI:  Your Honor, it's Gregg Galardi.

12   I'll go first, I guess, unless somebody else wants to jump

13   in.

14           I think we were clear at the allocation trial that

15   we, and I believe the PAB, were of the view that given the

16   pendency of the appeal and nothing about the Third Circuit's

17   current decision changes that the appeal was still pending,

18   we did not believe that Your Honor would be giving an

19   advisory opinion, but we did believe that there was a

20   justiciable issue.  And we still believe that there is a

21   justiciable issue as to the allocation of the $275, and we

22   can talk about the $60 million separately.

23           I think the only party that had concerns about the

24   justiciability of that issue was the ad hoc claimants.  So,

25   if I want to -- if we take them one at a time, our view is,

1    unfortunately for Your Honor, that the issue is still a ripe

2    justiciable issue.  And I know NextEra is on the call, and

3    unless they were going to say, oh, we're not going to file

4    an en banc or we're not going to take an appeal, I think

5    that issue will remain life before Your Honor when the

6    briefing goes in.

7              THE COURT:  All right.

8              MR. SEIFE:  Your Honor, it's Howard Seife at

9    Norton Rose for NextEra.  I think Mr. Galardi perhaps gave

10   me an invitation to give one more piece of the puzzle, which

11   I'm happy to do, probably not too surprisingly to the

12   parties, particularly given that there was a vigorous

13   dissent by Judge Rendell.

14             It is our current intention to move for a

15   rehearing, both before the panel and en banc.  So, to that

16   extent it's still a live controversy, which we have until

17   the 27th to file that motion, and it's our current intention

18   to go forward.

19             THE COURT:  Well, that solves -- that probably

20   solves the problem, but obviously I will allow other people

21   to -- other parties to be heard.  Thank you very much Mr.

22   Seife.

23             MR. GLENN:  Your Honor, Andrew Glenn, from

24   Kasowitz Benson & Torres LLP, on behalf of the Ad Hoc

25   Committee.

1           THE COURT:  Yes.

2           MR. GLENN:  We followed up following the trial.  I

3    did rise to speak during the trials about concerns we had

4    about the justiciability issue.  Having done research on

5    that, it appears likely that it is justiciable and that Your

6    Honor likely would not be issuing an advisory opinion.

7           I think our position at this point is that we

8    should make our submissions as scheduled.  But we would ask

9    that Your Honor exercise discretion, perhaps to defer

10   issuing a decision until at least the Third Circuit's -- you

11   know, this en banc motion has been filed.  And that's borne

12   of issues of judicial restraint and, you know, I think more

13   likely unintended consequences, that anything you might say,

14   however inadvertent, could be used as fuel to NextEra's

15   appeal.  And I understand that it will not be long,

16   consistent with Third Circuit practice for that issue to be

17   resolved.

18           So, that's where we stand and maybe that's where

19   it would've worked out anyway as a practical matter.  But

20   that's our position.

21           THE COURT:  Thank you, Mr. Glenn.

22           MR. MCKANE:  Your Honor, it's Mark McKane for the

23   PAB.  Can I just pick up on that for a moment?

24           THE COURT:  Of course.

25           MR. MCKANE:  So, I think we agree on the

1    justiciability issue.  I think that's largely tied to the

2    fact that the PAB is in a situation where it's essentially

3    had the double reserve, and that really is the key, I think,

4    to why it's a ripe issue.

5            What Mr. Glenn refers to -- and I think Mr.

6    Galardi's going to want to weigh in on this as well -- just

7    to, you know, update or refresh Your Honor with regard to

8    Third Circuit procedure, Mr. Seife is right.  You have 14

9    days to file a motion for a rehearing or reconsidera- --

10   rehearing either through the panel or en banc.

11           Then thereafter, based on the internal rules and

12   guidelines of the Third Circuit, that -- you know that

13   request will be denied by, according to our calculations,

14   October 7th unless one active member of the circuit -- and

15   an active member, Your Honor, is not a senior member.

16           So, for these purposes, Judge Rendell is a senior

17   member.  Even though she's voted to dissent, she would not

18   be in a position to weigh in on whether it should be

19   referred on bond.  That issue -- then, you know, if it's not

20   addressed or picked up by another active member of the

21   court, we will know in relatively short order, you know,

22   whether, you know, we are in a situation where en banc has

23   essentially been denied.

24           Now, I think that timing is useful for Your Honor

25   as you kind of evaluate, kind of move forward, and address

1    Mr. Glenn's request -- and I think Mr. Galardi has proposal

2    as well -- because as you know, the findings of fact and

3    conclusions of law won't be submitted until, you know, a

4    (indiscernible).

5              THE COURT:  Okay.  Thank you.  I was not aware of

6    that.  It's been a long time since I practiced in the Third

7    Circuit, and that was a very brief moment in time.  The 7th

8    is a Sunday and the 8th is a Monday, so I guess the deadline

9    would be the 9th.  Of course, the 8th is a Monday, but it's

10   Columbus Day, is my point.  So, the next business day --

11             MR. MCKANE:  Right.

12             THE COURT:  -- would be the 9th, right?

13             MR. MCKANE:  I believe that's right, Your Honor.

14             THE COURT:  Okay.  All right.  That's interesting.

15   While I promised to --

16             MR. GALARDI:  Your Honor, it's Greg Galardi.  I

17   just want to add a couple nuances to that, because frankly,

18   Mr. Glenn and Mr. McKane and I have had -- sort of

19   coordinated some of this thought.  So, that is the 9th, and

20   not to get into too much Third Circuit, you know, if one

21   judge votes you can extend it by five -- so, we're really

22   looking at that week of the 8th to the 12th to hope to have

23   a decision on the request for rehearing or en banc

24   proceedings that Mr. Seife has mentioned.

25             And frankly, that may correspond to when Your

1    Honor was thinking about issuing a ruling on allocation.

2    So, we are not going to ask Your Honor to defer, but we

3    understand that if you do defer, to understand that timing,

4    since our briefing on the allocation, I think, is due

5    September 27th, you know, it probably corresponds to right

6    around that period of time in any event.

7              THE COURT:  Yeah, I mean --

8              MR. GALARDI:  You know, I don't --

9              THE COURT:  I was just going to say I intend to

10   act expeditiously, but I would be pleasantly surprised if I

11   were in a position to act, issue something by the 9th.  It's

12   possible, but I appreciate being given the timeline.  That's

13   very helpful.

14             MR. GALARDI:  And Your Honor, while we're talking

15   about timeline, I might want to just go -- and I don't think

16   this will catch Mr. Seife by surprise, as well -- but go to

17   your second issue on the -- and this is going to get a

18   little more complicated -- on the allocation of the 60, and

19   at least Elliott's intent with respect to the reserve issue.

20             As Your Honor will recall, the confirmation order,

21   which is on appeal, has the provision that Your Honor can

22   release the 275 reserve for good cause shown.  Elliott, at

23   least, believes that with the Third Circuit's decision that

24   constitutes good cause.  No one has to argue that now.

25             We would like to file a motion.  We will file a

1    motion that will seek the release of that reserve.  But

2    again, given the timing and things like that, we'll be

3    looking for a date somewhere the week of the 15th of October

4    and 22nd so as to not prejudge the rehearing issue.

5    Although we don't believe it's likely to be granted, Mr.

6    Seife will disagree.

7                That then gets into -- and to Your Honor's

8    question about allocating the potential 60 which is on

9    appeal.  Whether there's a reserve for whether there is a

10   distribution of the proceeds and a disgorgement mechanism,

11   we ultimately think Your Honor is going to have to rule on

12   an allocation, whether it's the 275 or the 60, an allocation

13   issue between the estates.  And I'm sorry to say that to

14   Your Honor because I was hoping that we say, no, you'll

15   never have to rule on allocation.

16               I think, again, Elliott believes the record is

17   adequate for that purpose, based upon the hearing we just

18   went through.  But I think Mr. Glenn's judgment is out on

19   that, and I'm not sure where Mr. McKane comes on that issue.

20               THE COURT:  All right.  I'm sorry.  If people

21   aren't in a position to make a definitive answer to a

22   question dropped out of the blue by the Judge, that's

23   certainly okay.  But Mr. Glenn, would you like to comment on

24   that?

25               MR. GLENN:  Yes.  Yes, very briefly.  I think

1    there is certainly a lot of overlap, Your Honor, with the

2    record that has been created.  But we are not intimately

3    familiar with what NextEra has done and what NextEra claims.

4    We've seen their -- the motion that Your Honor decided,

5    which I understand was decided without any discovery.

6           There might be a need to supplement the record in

7    what I would call a minor way to illustrate maybe the timing

8    of the incurrence of fees such that the argument that was

9    made about the quid pro quo wouldn't traditionally apply to

10   an expense reimbursement where that's typically given

11   irrespective of the amount of a breakup fee and subject only

12   to reasonableness.  So, I don't think the quid pro quo

13   argument should apply at all to the $60 million of expense

14   reimbursement.

15          You know, I assume that Mr. Galardi disagrees with

16   me on that.  And I think on that issue we might need some

17   kind of a supplemental submission to the Court.  But we have

18   not definitively decided what that would be, and you know,

19   we need to have some period of time to come to a judgment on

20   that.  And I don't expect it would be longer than say a week

21   or so, and then we would decide what to do with a conference

22   with the parties.  And I would expect that we could submit

23   something, not by the 27th necessarily, but not that long

24   thereafter.

25          MR. PEDONE:  Your Honor, Richard Pedone, for the

1    EFH Indenture Trustee.  I just want to join Mr. Glenn's

2    comments on that, and we need to fully evaluate how it would

3    work with the 60.

4              THE COURT:  Mr. McKane?

5              MR. MCKANE:  Your Honor, it's Mark McKane.  Thank

6    you, Your Honor.  Two observations.  The first relates to

7    the anticipated motion by Elliott to release the reserve.

8    You know, so long as a hearing is set or, you know, in or

9    around the time where we think the en banc, you know,

10   outcome will be decided, and for that, Your Honor,

11   statistically we have looked at the history of en banc

12   rulings, you know, across a number of data (indiscernible)--

13             THE COURT:  What's that?

14             MR. MCKANE:  -- over the last 10 years.  And you

15   know, the numbers are remarkably low, even in the context of

16   a two-one split by the panel.  But, you know, we actually

17   are supportive of Elliott's actually filing the motion now

18   to tee up the issue, such that Your Honor is in a position

19   to make a call in the event that en banc is denied.  And

20   then you can address that issue.  That enables the PAB to

21   release funds early.  That's one of their overall duties as

22   it relates to supplementing the record.

23             You know, I fully respect Mr. Glenn's and Mr.

24   Pedone's request to at least be able to consider the issue

25   first.  Along those lines, I -- you know, as identified by

1    Mr. Glenn, you know, one the preparatory calls that we had

2    earlier this morning, he raised the issue of timing.  I'm

3    struggling a little bit to see the legal relevance of the

4    timing of the expenses as they are incurred as they are not

5    330 professional fees that are being requested, but

6    nonetheless, you know, if Your Honor wants to set a short,

7    you know, period of time to allow the parties to take a

8    position on that, you know, we understand the need to have

9    due process here and we respect that.

10            THE COURT:  Well, I've got a couple of things

11   going on.  I mean, the...  My memory, I'm a little fuzzy.  I

12   haven't looked at the opinion in preparation for today,

13   which I probably should have.  But the disallowance of the

14   claim, I believe that there was -- it was based on a

15   substantial contribution theory.  Was there another theory

16   raised?  No?  Okay.

17            MR. GALARDI:  Your Honor, it was basically -- and

18   I'm sure Mr. Seife will correct me -- but we see Your

19   Honor's decision as sort of threefold, I will say.  The

20   first was that the contract didn't provide for --

21            THE COURT:  Oh, right.

22            MR. GALARDI:  -- an alternative mechanism.  Right?

23            THE COURT:  Right.

24            MR. GALARDI:  The second was even if it did, I

25   think Your Honor ruled that it wasn't a creditor.  And then

1    I think the third ruling was that even if it were a

2    creditor, you didn't find the actual benefit.  So, there

3    were three elements to the ruling.  As we read it --

4              THE COURT:  So --

5              MR. GALARDI:  -- the first one was adequate.  So,

6    that's --

7              THE COURT:  All right.

8              MR. GALARDI:  Okay.

9              THE COURT:  So, for purposes of -- yeah, that's --

10   as always Mr. Galardi -- well, not always -- but as most of

11   the time, Mr. Galardi, you're correct.  That refreshes my

12   recollection.  But when we get to the allocation issue, it

13   really would be -- it wouldn't be the first two prongs

14   because those are sort of out-of-the-box, not allowed.  It

15   would be assuming the Court was going to hear it on the

16   merits.  So, that it would be -- the allocation question

17   would be who -- how should a substantial contribution claim

18   be allocated among the two estates?  And that's a different

19   issue than the one we just tried, at least from a legal

20   standard, at least a theory on the breakup fees.

21             So, it's a little bit of an awkward -- well, it's

22   not awkward, but it's a different sort of way of thinking

23   about maybe the same facts, maybe not the same facts.  And

24   I'm just thinking aloud, which is usually a bad idea.  I'm

25   not trying to create trouble.  I'm just trying to figure out

1    what the parties want me to do.

2           So, let me suggest let's keep -- let's keep going

3    forward.  Let's get the -- I hear the parties.  While I'll

4    certainly consider the issue of whether it's ripe or not, I

5    agree that nothing is changed as a result of the decision in

6    that there are still subsequent motions that can be filed.

7    And indeed, although probably extremely unlikely, a petition

8    to the Supreme Court could even be allowed or could be

9    pursued.

10          So, there's still -- this is still out there, so

11   let's brief it.  Let's -- I'll -- having already said I'd

12   consider these issues to whether or not it was ripe or not,

13   I'll consider that like I was going to consider it before

14   and just go forward.  And I'll make my decision as if

15   nothing has changed from the trial.

16          But if the parties want to consider or place

17   before the Court a sort of broader question, based on the

18   same record, why don't you take time to discuss that

19   internally or externally, I guess -- outside my purview --

20   and see if you can come to some sort of consensus what you

21   want to do.  And then you can, of course, you know, make

22   your request to the Court.

23          I don't really think there's a time necessarily

24   ticking on that in that it would be a supplement, I think,

25   to what you're going to submit on the 27th, in any event.

1    But -- and if you can't agree and you still want to get in

2    front of me, we can have another -- we can have another

3    telephone conference.

4            As I think I've mentioned ad nauseum, I am

5    unavailable until Thursday afternoon next week.  So, you

6    certainly have at least that time to decide.  I'm pretty

7    available Thursday afternoon and pretty much wide-open

8    Friday morning, or at least that's been the promise by

9    Gibson Brand to very fairly quick confirmation hearing on

10   Friday, and of course, the following weeks to come.

11           So, if anybody's got a problem with that, let me

12   know.  But that would be my proposal.  Of course, if you

13   have questions, feel free to ask them as well.

14           All right.  Silence is golden.  All right.

15   Anything else anyone would like to discuss or raise while we

16   are all on the telephone?

17           All right.  Very good.  Thank you again for making

18   yourself available and doing it on the eve of Yom Kippur.  I

19   hope it wasn't too much of an inconvenience for those who

20   celebrate.  And I'll be in touch soon.  Thank you very much.

21           ALL:  Thank you, Your Honor.

22           (Whereupon these proceedings were concluded at

23   10:56 AM)

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya
     Ledanski Hyde

     Digitally signed by Sonya Ledanski
     Hyde
     DN: cn=Sonya Ledanski Hyde, o, ou,
     email=digital1@veritext.com, c=US
7    Date: 2018.09.19 14:59:10 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  September 19, 2018