**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| *Debtors.* | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date: October 12, 2018 at 2:00 p.m. (ET)** |
| | ) **Objection Deadline: October 3, 2018 at 4:00 p.m. (ET)** |

**JOINT MOTION OF UMB BANK, N.A., AS INDENTURE TRUSTEE, AND ELLIOTT
TO DIRECT THE EFH PLAN ADMINISTRATOR BOARD TO RELEASE AND
DISTRIBUTE ALL FUNDS IN THE NEE PLAN RESERVE**

UMB Bank, N.A., as Indenture Trustee ("UMB") for the unsecured 11.25%/12.25% Senior Toggle Notes due 2018, and Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott" and, together with UMB, the "Movants"), by and through their undersigned counsel, hereby jointly move for entry of an order directing the EFH Plan Administrator Board (the "PAB") to release and distribute the $275 million and any accrued interest presently being held in the NEE Plan Reserve to the unsecured creditors of EFH and EFIH in accordance with the Plan.[2]  In support of this Motion, Movants respectfully state as follows:

**PRELIMINARY STATEMENT**

Movants submit that in light of the Third Circuit Court of Appeals decision on September 13, 2018 in *NextEra Energy, Inc. v. Elliott Associates, L.P. (In re Energy Future Holdings*

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, entered on February 27, 2018 [D.I. 12763] (the "Confirmation Order").

*Corp.)*, good cause now exists for the PAB to immediately release and distribute the $275 million and any accrued interest that is currently being held in the NEE Plan Reserve on account of the disallowed $275 million termination fee (the "Termination Fee") asserted by NextEra Energy, Inc. ("NextEra").

## JURISDICTION AND VENUE

1.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and paragraphs 72, 86, and 154 of the Confirmation Order.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to Local Rule 9013-1(f), Movants consent to entry of a final order with respect to this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

**A.        This Court Grants Reconsideration of the Termination Fee Order**

2.        On September 19, 2016, this Court entered an order (the "Termination Fee Order") (a) authorizing the Debtors to enter into a merger agreement with NextEra (the "NextEra Merger Agreement"), (b) approving a $275 million Termination Fee on the terms set forth in the NextEra Merger Agreement, and (c) subject to a further Court order allocating the Termination Fee, authorizing the Debtors to pay the Termination Fee to NextEra as an administrative expense to the extent it became due and payable under the terms of the NextEra Merger Agreement.  [D.I. 9584].

3.        On July 29, 2017, Elliott filed a motion with this Court (the "Reconsideration Motion") seeking reconsideration of the Termination Fee Order to the limited extent that such order authorized the Debtors to pay the Termination Fee when NextEra failed to obtain

regulatory approval and, due to the absence of an outside date by which regulatory approval had to be obtained, the Debtors were forced to terminate the NextEra merger transaction in order to pursue an alternative transaction.  [D.I. 11636].

4.      At a hearing on September 19, 2017, this Court granted the Reconsideration Motion, finding that the Termination Fee Order "was based on the serious misapprehension of the facts that constitutes manifest error."  Sept. 19, 2017 Hr'g Tr. at 48:7–10.  In a detailed Opinion dated October 3, 2017, this Court found that, among other things, it "fundamentally misapprehended the facts" and, had it properly apprehended them, it would not have approved the Termination Fee as an allowed administrative expense.  [D.I. 11998].  On October 18, 2017, the Court entered an order (the "Reconsideration Order") modifying the Termination Fee Order and denying NextEra's application for payment of the Termination Fee as an administrative expense.  [D.I. 12075].

5.      On October 30, 2017, NextEra filed a notice of appeal of the Reconsideration Order, and that appeal was certified for direct consideration by the Third Circuit Court of Appeals.  [D.I. 12141].

**B.      NextEra's Request for a Plan Reserve and Application for a $60 Million Administrative Expense Claim**

6.      On December 19, 2017, NextEra filed an objection to the Plan (the "NextEra Plan Objection") asserting that confirmation should be denied unless the Debtors set aside a $275 million reserve on account of the disallowed Termination Fee to provide for payment thereof in the event NextEra is successful in its appeal and overcomes other objections to payment of the Termination Fee.  [D.I. 12369].

7.      Elliott and the Debtors opposed the NextEra Plan Objection, arguing that a $275 million reserve was not proper unless NextEra posts an appropriate supersedeas bond or other form of undertaking.  [D.I. 12665; D.I. 12666].

8.      On February 20, 2018, NextEra filed an application (the "NextEra Expense Application") seeking allowance and payment of approximately $60 million in various expenses purportedly incurred by it in connection with the NextEra merger transaction as administrative expenses under section 503(b) of the Bankruptcy Code.  [D.I. 12671].

9.      On February 25, 2018, NextEra filed proposed modifications to the Debtors' proposed Plan confirmation order that requested the Debtors to (a) establish the $275 million NEE Plan Reserve, (b) hold approximately $60 million sought in the NextEra Expense Application in reserve (the "Backup Reserve") in the event the Reconsideration Order became a final non-appealable order, and (c) retain the Backup Reserve until such time as a final order was entered granting or denying the NextEra Expense Application.  [D.I. 12749].

**C.     Plan Confirmation Hearing and the Debtors' Establishment of the NEE Plan Reserve**

10.      At the February 26, 2018 hearing to consider confirmation of the Plan (the "Confirmation Hearing"), the Debtors announced that to address the NextEra Plan Objection, they would fund the NEE Plan Reserve in the amount of $275 million on account of the pending Third Circuit appeal of the Reconsideration Order.  *See* Feb. 26, 2018 Hr'g Tr. at 13:6–12. Elliott objected to the NEE Plan Reserve, arguing, among other things, that (a) the NEE Plan Reserve was not required under applicable law, (b) the NEE Plan Reserve was inconsistent with the express terms of the Plan, and (c) the Court could not approve the NEE Plan Reserve without a separate motion and proper notice and a hearing.  In addition, both the Debtors and Elliott opposed any Backup Reserve.  Moreover, despite the Debtors' requesting the Court to approve

the NEE Plan Reserve, NextEra still requested the Court to require the Backup Reserve. [D.I. 12749]; *see also* Feb. 26, 2018 Hr'g Tr. at 214:15–24.

11.    At the conclusion of the Confirmation Hearing, the Court found that the Bankruptcy Code, including section 1129, did not require the Debtors to establish the NEE Plan Reserve. *See* Feb. 26, 2018 Hr'g Tr. at 232:7–11 ("I don't believe that it is necessary to satisfy 1129(a)(9) for this Court to -- or for the Debtors to reserve $275 million for a currently disallowed administrative claim. It's not necessary."). The Court nonetheless went on to find that the Debtors could, in their discretion, establish the NEE Plan Reserve for the disallowed Termination Fee. *Id.* at 233:1–3 ("Well, it's the Debtors' plan and the Debtors have chosen under their own plan to do what they are allowed to do, which is set aside a reserve."). The Court also concluded that the reserve would "preserve the integrity of the judicial process" with respect to NextEra's appeal of the Reconsideration Order. *See* Feb. 27, 2018 Hr'g Tr. 15:1–17. Accordingly, the Court approved the NEE Plan Reserve as a valid exercise of the Debtors' discretion.

12.    Critically, however, the Court denied NextEra's request for a Backup Reserve holding that it was simply not required. In so doing, the Court stated as follows:

> But I don't think -- and I'm not going to require the Debtors to make that reserve. They're not required to do it because it's not an allowed claim, because it was an added-in claim and no order has been entered allowing it. I'm sure it's disputed. And it's again, a question of permission. They don't propose to do it and I'm certainly not going to require them to do it.

Feb. 26, 2018 Hr'g Tr. at 233:17–23.

13.    On February 27, 2018, the Court entered the Confirmation Order providing that the PAB shall create the NEE Plan Reserve by "fund[ing] a segregated escrow account . . . in the amount of $275 million." Confirmation Order ¶ 150. The Confirmation Order further provides

that "[t]he NEE Plan Reserve Amount may be modified pursuant to separate Bankruptcy Court

order for good cause shown" and that Elliott and UMB, among others:

> shall have the right any time after entry of the Confirmation Order to . . .
> for good cause shown, seek relief in the Bankruptcy Court . . . to reduce or
> eliminate, or seek other relief, with respect to any reserves established
> using funds in the EFH/EFIH Cash Distribution Account and established
> and/or maintained by the EFH Plan Administrator Board (including in its
> capacity as Trustee) on account of any Disputed Claims that have been
> disallowed by the Bankruptcy Court, including but not limited to any NEE
> Plan Reserve.

*Id.* ¶¶ 154, 156.

14.    On March 9, 2018, the Plan was substantially consummated and the Effective

Date thereof occurred.  [D.I. 12801].

15.    On March 13, 2018 and March 23, 2018, Elliott and UMB, respectively, appealed

the Confirmation Order to the U.S. District Court for the District of Delaware (the "District

Court") on the grounds that, among other things, (a) the NEE Plan Reserve was contrary to the

terms of the Plan and could not be approved without a separate motion and hearing and (b)

NextEra should have been required to post a supersedeas bond or provide an undertaking in

connection with the NEE Plan Reserve to compensate unsecured creditors for the financial loss

they would suffer as a result of the delay in receiving Plan distributions.  [D.I. 12830; D.I.

12848].  On April 6, 2018, the District Court entered an order joining Elliott's and UMB's

appeals pursuant to Rule 8003(b)(2) of the Federal Rules of Bankruptcy Procedure.  This appeal

has been fully briefed and the parties are awaiting a decision from the District Court.

16.    NextEra did not appeal this Court's denial of its request to establish the Backup

Reserve.

**D.     This Court Disallows NextEra's $60 Million Administrative Expense Claim**

17.    On March 23, 2018, Movants filed a motion to dismiss the NextEra Expense Application or, in the alternative, for summary judgment denying and disallowing NextEra's $60 million administrative expense claim.   [D.I. 12844].   NextEra objected to Movants' motion. [D.I. 12935].

18.    On August 1, 2018, this Court issued an opinion granting summary judgment, finding that "pursuant to the plain language of the Merger Agreement Section 6.7, NextEra is barred, as a matter of law, from seeking an administrative expense claim related to the work performed seeking approval of the failed NextEra Transaction."  [D.I. 13332] at 28.  In addition, the Court granted Movants' motion to dismiss and disallowed NextEra's $60 million administrative expense claim, finding that "even if NextEra could seek an administrative expense claim under the Merger Agreement, NextEra is not entitled to an administrative expense claim under either 11 U.S.C. § 503(b)(1)(A) or (b)(3)(D)."  *Id.* at 3 and 28 (also finding that "NextEra's proposed merger offered no benefit to the estate, and in fact, cost the estate time and money").  The Court entered an order the same day granting Movants' motion to dismiss and for summary judgment for the reasons set forth in the opinion (the "Summary Judgment Order"). [D.I. 13333].

19.    NextEra has appealed the Summary Judgment Order to the District Court.  [D.I. 13363].  The parties have not yet filed any briefs in this appeal, but are required to submit a proposed briefing schedule on or before September 30, 2018.

**E.     The Third Circuit Affirms the Reconsideration Order**

20.    On September 13, 2018, the Third Circuit affirmed the Reconsideration Order, holding, among other things, that the Reconsideration Motion was timely and this Court did not abuse its discretion in granting reconsideration.  In so ruling, the Third Circuit found that:

> If the PUCT declined to approve the merger, Debtors would owe the $275 million Termination Fee unless NextEra took the initiative to terminate the Agreement first. But the Bankruptcy Court did not appreciate that, since the Merger Agreement included no deadline by which PUCT approval had to be obtained before the deal would dissolve on its own, NextEra had little incentive to terminate the agreement first on its own volition. Instead, NextEra could simply wait for Debtors to terminate, which would trigger payment of the $275 million Fee. ***Under those circumstances, the Termination Fee would provide no benefit to estates***. It would in fact be detrimental: not only would the estates be out $275 million, but Debtors would be back to square one and, with the passage of time, in a worse off position—desperate to accept an alternative transaction.

*NextEra Energy, Inc. v. Elliott Assocs., L.P. (In re Energy Future Holdings Corp.)*, No. 18-1109, 2018 WL 4354741 at *12 (3d Cir. Sept. 13, 2018) (emphasis added). The Third Circuit's opinion was deemed precedential. Under the Third Circuit's internal operating procedures, this means that prior to publication, the opinion was circulated to all active judges, who could have voted in favor of rehearing *en banc* at that time. *See* 3d Cir. I.O.P. 5.5 (2018).

21. The PAB's most recent post-confirmation operating report reveals that, as of July 31, 2018, the PAB was holding approximately $570 million, excluding amounts held in the Professional Fee Escrow Accounts (as defined in the Plan) for estimated and unpaid fees and expenses of retained professionals. [D.I. 13330]. Nearly seven months have passed since the Plan was confirmed but, in large part because of the NEE Plan Reserve, EFH unsecured creditors have not received any distributions and EFIH unsecured creditors have only received partial distributions. Indeed, the impact of the NEE Plan Reserve has been especially significant because the appropriate allocation of the Termination Fee remains in dispute. The PAB has thus been required to effectively maintain a "double reserve" of $275 million at both the EFH and EFIH estates.

**RELIEF REQUESTED**

22.     By this Motion, Movants contend that "good cause" now exists for releasing and distributing the funds in the NEE Plan Reserve and respectfully request that the Court enter an order directing the PAB to release and distribute the full amount of the NEE Plan Reserve to the EFH and EFIH unsecured creditors in accordance with the Plan.

**BASIS FOR RELIEF REQUESTED**

23.     Movants respectfully submit that good cause exists to extinguish the NEE Plan Reserve and distribute *all of the funds in the NEE Plan Reserve* to the unsecured creditors of EFH and EFIH in accordance with the terms of the Plan for two reasons.  *First*, the Third Circuit has now affirmed this Court's determination that NextEra does not hold an allowed administrative claim in the amount of $275 million, and NextEra has no reasonable likelihood of succeeding on its appeal.  *Second*, the Plan expressly provides that the PAB is required to make distributions to the unsecured creditors of EFH and EFIH "as soon as reasonably practicable." Therefore, the failure of the PAB to immediately release and distribute the funds in the NEE Plan Reserve is directly at odds with the requirements of the Plan and creditors have already been significantly harmed by failing to receive distributions for nearly seven months without any financial compensation.  Consequently, there is no legal basis for releasing anything less than the full amount of the NEE Plan Reserve at this time.

**I.        The Third Circuit's Decision Warrants Releasing the NEE Plan Reserve**

24.     On September 13, 2018, the Third Circuit affirmed this Court's determination that NextEra does not hold an allowed administrative expense claim in the amount of $275 million. *In re Energy Future Holdings Corp.*, 2018 WL 4354741 at *14.  Although NextEra's appeal of the Reconsideration Order is not yet finally concluded—NextEra may still seek a panel rehearing, rehearing *en banc*, or file a petition for writ of certiorari with the United States

Supreme Court—there is very little likelihood that NextEra will succeed in any subsequent proceedings. Indeed, as NextEra conceded at the Confirmation Hearing, a panel rehearing of its appeal or *en banc* review "are long shots under the best of circumstances." Feb. 26, 2018 Hr'g Tr. at 220:10-15; *see also* Fed. R. App. Proc. 35(a) ("An en banc hearing or rehearing is not favored and ordinarily will not be ordered . . . ."); 3d Cir. L.A.R. 35.4 (2011) (cautioning that "en banc hearing or rehearing of appeals is not favored" and that to be considered for rehearing *en banc* the case must "meet[] the rigorous requirements of FRAP 35 and 3d Cir. L.A.R. 35.1").[3]

25.     Nor is the likelihood of rehearing *en banc* increased because one member of the Third Circuit panel dissented. The majority opinion was designated "precedential." Therefore, Movants believe that all active judges have already had an opportunity to review the majority opinion and dissent and to vote in favor of rehearing the matter *en banc*, *see* 3d Cir. I.O.P. 5.5 and 9.4, but no such rehearing was scheduled prior to the opinion being issued.[4] More importantly, perhaps, the majority opinion is not the type of ruling that is likely to receive *en banc* review.

26.     As the Internal Operating Procedures of the Third Circuit Court of Appeals make clear, "rehearing *en banc* is not favored and will not be ordered unless consideration by the full court *is necessary to secure or maintain uniformity of its decisions* or the proceeding *involves a*

---

[3]     3d Cir. L.A.R. 35.1 requires each petition for rehearing *en banc* to contain the following statement of counsel:

> "I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to decisions of the United States Court of Appeals for the Third Circuit or the Supreme Court of the United States, and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court, i.e., the panel's decision is contrary to the decision of this court or the Supreme Court in [citing specifically the case or cases], OR, that this appeal involves a question of exceptional importance, i.e., [set forth in one sentence]."

[4]     *See* 3d Cir. I.O.P. 5.5.4 ("Drafts of precedential opinions and not precedential opinions that are not unanimous are circulated to all active judges of the court after the draft opinion has been approved by all three panel members, concurring or dissenting opinions have been transmitted, or all members of the panel have had the time set forth in I.O.P. 5.5.3 to write separate opinions. . . . Non-panel active judges must notify the authoring judge within 8 calendar days if they desire en banc consideration."); 3d Cir. I.O.P. 9.4.1 (if, during the circulation of precedential opinions under I.O.P. 5.5, "a majority of the active judges who are not disqualified, votes that the case be considered en banc, the chief judge enters an order for rehearing en banc.").

*question of exceptional importance*." *See* 3d Cir. I.O.P. 9.3.1 (emphasis added).  The majority

opinion, however, focused on the specific facts of the case and found that under the particular

circumstances the Termination Fee "would provide no benefit to [the] estates" and "would in fact

be detrimental" to the Debtors' estates because regulatory approval of the underlying transaction

had been denied.  *See In re Energy Future Holdings Corp.*, 2018 WL 4354741 at *12.  Under

those circumstances, the majority concluded that it saw "no reason to second-guess the

Bankruptcy Court's" decision and held that "the Bankruptcy Court did not abuse its discretion in

granting [the Reconsideration Motion]."  *Id.* at 1, 10.  Consequently, *en banc* review is an

exceedingly unlikely possibility.  The majority's affirmance of this Court's exercise of discretion

does not involve "a question of exceptional importance."  Nor is *en banc* review of that

affirmance "necessary to secure or maintain uniformity of its decisions."  Accordingly, Movants

do not believe there is any basis for granting *en banc* review and, thus, even if the Third Circuit

has not denied any request by NextEra for panel rehearing or *en banc* review by the date on

which this Motion is heard, Movants contend that good cause exists for granting the relief

requested. [5]

      27.    Nor is there any real likelihood that the U.S. Supreme Court would grant

certiorari in this matter.  The Rules of the U.S. Supreme Court are clear that a petition for writ of

certiorari "will be granted only for compelling reasons" with the Supreme Court generally

---

[5]     Under the applicable rules and operating procedures, NextEra must file a petition for panel rehearing or rehearing *en banc* by September 27, 2018.  *See* Fed. R. App. Proc. 35(c) and 40(a); 3d Cir. I.O.P. 9.5.1.  The members of the panel (with respect to a petition for panel rehearing) and the active judges of the Third Circuit (with respect to a petition for rehearing *en banc*) will then have 10 days from the date of that filing (which period may be extended for an additional 5 business days) to vote on the rehearing request.  *See* 3d Cir. I.O.P. 8.1 and 9.3.1.  Accordingly, even though Movants believe "good cause" currently exists, Movants have nonetheless sought to schedule the hearing on the Motion after such time periods have lapsed, with the expectation that the Third Circuit Court of Appeals will have already ruled on any request by NextEra for panel rehearing and rehearing *en banc*.  The PAB has informed Movants that they are supportive of this Motion being filed at this time and scheduled for hearing on October 12 to ensure there is no delay in the adjudication of this Motion in the event the Third Circuit declines any request for rehearing.

focusing on whether the underlying Circuit Court ruling (a) creates a conflict with rulings of other Circuit Courts or (b) involves an "important federal question" that creates a conflict with rulings of other Circuit Courts or that has not been, but should be, settled by the Supreme Court. *See* SUP. CT. R. 10 (also noting that "[a] petition for a writ of certiorari is rarely granted when the asserted error consists of erroneous factual findings or the misapplication of a properly stated rule of law."). No such issues have been raised in NextEra's appeal of the Reconsideration Order or by the Third Circuit's decision. The Third Circuit's decision does not create any conflict with rulings of other Circuit Courts and does not involve any "important federal question" that should be settled by the U.S. Supreme Court.

28.      Accordingly, even assuming that the NEE Plan Reserve were proper, good cause now exists to release and distribute the funds held in the NEE Plan Reserve. It is no longer a sound exercise of the PAB's discretion to hold such funds and the NEE Plan Reserve is no longer necessary to "preserve the integrity of the judicial process,"[6] particularly in light of the overriding interests of creditors in receiving the distributions to which they are entitled under the Plan.[7]

## II.      Continuation of the NEE Plan Reserve is Inconsistent with the Plan

29.      The Plan provides for cash distributions to be made to unsecured creditors on or "as soon as reasonably practicable" after the Effective Date of the Plan. [D.I. 12653] Arts. I.C. and VI.A. Impaired creditors relied on this expectation of prompt distributions in voting on the

---

[6]      Movants have appealed this Court's initial decision to approve the NEE Plan Reserve based on the Debtors' discretion and to protect the integrity of the judicial process, and do not waive, and expressly reserve, their right to continue with proceedings on that appeal.

[7]      As Elliott contended in its appeal of the Confirmation Order, the Third Circuit is the proper forum for NextEra to obtain a stay of the Reconsideration Order. Consequently, should NextEra still believe the NEE Plan Reserve should be maintained, it should seek further relief from the Third Circuit Court of Appeals, not from this Court. *See* FED. R. BANKR. P. 8007(b) (providing that a motion for stay pending appeal "may be made in the court where the appeal is pending").

Plan, but have suffered and continue to suffer financial harm due to the unexpected delay in distributions caused by the NEE Plan Reserve.  Indeed, in their brief in support of Plan confirmation, the Debtors argued that "holders of allowed claims have a 'justified expectation' of receiving timely distributions" and withholding distributions is "a serious business that effects an obvious injury that prejudices the waiting Holders of Allowed Claims."  [D.I. 12666] ¶ 124 (internal quotations omitted); s*ee also In re Motors Liquidation Co.*, 539 B.R. 676, 686 (Bankr. S.D.N.Y. 2015) (finding that "[t]here can be no serious dispute that [creditors] will be prejudiced by a delay in [plan] distributions"); *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 352 n.70 (S.D.N.Y. 2007) (recognizing that "[t]here is also an inherent loss to the creditors in any delay" in plan distributions).

30.    Importantly, as this Court found at the Confirmation Hearing, there is no statutory or other legal requirement for the PAB to maintain a reserve on account of a disallowed claim. Rather, the NEE Plan Reserve was established in the Debtors' discretion and based on this Court's belief that establishing the NEE Plan Reserve would "preserve the integrity of the judicial process."  Feb. 27, 2018 Hr'g Tr. 15:1–17.  The Third Circuit's ruling renders it highly unlikely that NextEra will ever have an allowed administrative expense claim in these cases for the Termination Fee.  Accordingly, there is no legal or equitable justification for continuing to maintain the NEE Plan Reserve.[8]

31.    Consequently, Movants request that the Court authorize and direct the PAB to immediately release and distribute the full amount of the NEE Plan Reserve to unsecured creditors.  *See* 11 U.S.C. § 1142(b) ("The court may direct the debtor and any other necessary

---

[8]    In addition, NextEra has previously recognized that it has alternative remedies available to it in the event it is ultimately successful on appeal. *See NextEra's Motion to Stay the Reconsideration Order Pending Appeal* [D.I. 12243] ¶ 97 and n.51 (acknowledging that NextEra "would possess the right to seek disgorgement as a matter of common law").

party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan."). Creditors with allowed claims should no longer be forced to bear the burden of NextEra's continued appellate efforts. Creditors have waited long enough and are entitled to receive these remaining funds owing to them under the Plan in order to stem any further economic harm.[9]

### NOTICE

32.     Notice of this Motion has been provided to (a) counsel to the PAB, (b) counsel to NextEra, (c) the Office of the United States Trustee for the District of Delaware, and (d) parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Movants respectfully submit that no other or further notice is required.

*[Text Continues on the Next Page]*

---

[9]     Movants expect that NextEra will request that in the event the Court determines that the $275 million NEE Plan Reserve should be released, the Court should nonetheless require the PAB to maintain a reserve on account of NextEra's disallowed $60 million administrative expense claim. Movants reserve all rights and arguments with respect to any such request for relief by NextEra, but believe that any such request should be denied because, among other reasons, this Court has already ruled in the context of the Plan confirmation proceedings that NextEra was not entitled to such a reserve. *See* Feb. 26, 2018 Hr'g Tr. at 232:7–11 ("I don't believe that it is necessary to satisfy 1129(a)(9) for this Court to -- or for the Debtors to reserve . . . for a currently disallowed administrative claim. It's not necessary."); *id.* at 233:17–23 ("But I don't think -- and I'm not going to require the Debtors to make [the Backup] [R]reserve. They're not required to do it because it's not an allowed claim.").

## CONCLUSION

WHEREFORE, for the foregoing reasons, Movants respectfully request that the Court enter an order (i) directing the PAB to release the full amount of the NEE Plan Reserve, including any accrued interest, and distribute such released funds to unsecured creditors of EFH and EFIH in accordance with the provisions of the Plan, and (ii) granting the Movants such other and further relief as is just and proper.

Wilmington, Delaware
Date: September 19, 2018

**BAYARD, P.A.**

*/s/ Erin R. Fay*
Scott D. Cousins (No. 3079)
Erin R. Fay (No. 5268)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
scousins@bayardlaw.com
efay@bayardlaw.com

–and–

**ROPES & GRAY LLP**
Gregg M. Galardi
Daniel G. Egan
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile:  (212) 596-9090
Gregg.Galardi@ropesgray.com
Daniel.Egan@ropesgray.com

**ROPES & GRAY LLP**
Matthew L. McGinnis
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile: (617) 951-7050
Matthew.McGinnis@ropesgray.com

*Counsel for Elliott and UMB Bank, N.A., as Trustee*