## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                                                         :
In re:                                                   :    Chapter 11
                                                         :
Energy Future Holdings Corp., *et al.*,[1]               :    Case No. 14-10979 (CSS)
                                                         :
                          Debtors.                       :    (Jointly Administered)
                                                         :
                                                         :    **Re: D.I. 13497**
                                                         :
-------------------------------------------------------- X

### OBJECTION OF NEXTERA ENERGY, INC. TO JOINT MOTION
### OF UMB BANK, N.A., AS INDENTURE TRUSTEE, AND ELLIOTT
### TO DIRECT THE EFH PLAN ADMINISTRATOR BOARD TO
### RELEASE AND DISTRIBUTE ALL FUNDS IN THE NEE PLAN RESERVE

NextEra Energy, Inc. ("NextEra") hereby objects to the joint motion (the "Motion")[2] of

UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25% Senior

Toggle Notes due 2018, and Elliott Associates, L.P., Elliott International, L.P., and The

Liverpool Limited Partnership (collectively, "Elliott" and, together with the Trustee, the

"Movants") for entry of an order directing the EFH Plan Administrator Board (the "PAB") to

release and distribute the $275 million held in the NEE Plan Reserve to the unsecured creditors

of EFH and EFIH in accordance with the Plan.

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used, but not otherwise herein defined, shall have the meanings ascribed to them in the Motion.

## PRELIMINARY STATEMENT

As the Court held at the Sempra Plan confirmation hearing, establishing the NEE Plan Reserve was necessary and "important to preserve the integrity of the judicial process."[3] Movants' attempt to eliminate a measure the Court correctly deemed critical to ensuring that the Third Circuit could afford meaningful relief should be rejected.

Consideration of this Motion remains premature because the Third Circuit has not yet ruled on NextEra's petition for rehearing. The initial ten-day period for review of NextEra's petition for rehearing en banc by Third Circuit judges pursuant to 3d. Cir. I.O.P 9.5.4 expired on or about October 9, 2018, and no ruling has been issued. It appears that one or more active judges have voted for rehearing, and that the five-day extension of the period for consideration of the petition provided for in 3d Cir. I.O.P. 9.5.6 has been triggered. At this juncture, we do not yet know whether the Third Circuit will call for an answer from Elliott, much less whether or not it will grant the petition. Consideration of the Motion should be adjourned until the Third Circuit rules. Should the Court grant the adjournment, NextEra respectfully requests that the Court at that juncture afford the parties a brief period to make short submissions addressing the impact of the Third Circuit's decision, including, if applicable, any implications for the merits of a petition for *certiorari.*

Further, the Court in any event lacks jurisdiction to consider the Motion because the Movants' pending appeal of the Sempra Plan Confirmation Order has divested the Court of such jurisdiction. Not only does the Motion raise issues encompassed by the appeal – including whether the Reserve should exist, the "good cause" standard for modification, and whether the

---

[3]    Hr'g Tr., Feb. 27, 2018 at 15:15.

Reserve is consistent with the terms of the Plan – but to grant the Motion would moot the appeal, improperly interfering with and circumventing the appeal process.

Nevertheless, if the Court considers the merits of the Motion, it should be denied. Consonant with the Court's concern to protect the ability of a reviewing court to provide meaningful relief, the Confirmation Order provides that the NEE Plan Reserve is to be released only "upon entry of a Final Order." While the order establishing the Reserve contemplates that the amount of the Reserve may be revisited for "good cause," the Court expressly cautioned that modification of the Reserve might not be warranted even "if I get affirmed by the Third Circuit, and NextEra seeks *en banc* review, and that's *denied*, and then NextEra seeks a *certiorari* petition from the Supreme Court, where there's *no circuit split* here or really any controlling law to do it." Hr'g Tr. Feb 27, 2018 at 17:9-15 (emphasis added). We have not reached that point here. While a divided panel of the Third Circuit affirmed the Reconsideration Order (over the vigorous dissent of Judge Rendell, who cautioned that it "sets a troubling – if not dangerous – precedent"), NextEra's appeal is pending, and no Final Order has been entered. If the NEE Plan Reserve funds are released while NextEra's appeal of the Reconsideration Order is pending, NextEra will not be able to recover what it is legally entitled to if it ultimately prevails on appeal. Consequently, the considerations that prompted this Court to conclude the NEE Plan Reserve was necessary remain fully applicable.

On the other hand, denial or adjournment of the Motion will not result in inordinate delay. We should learn within the next few days whether the Third Circuit will call for an answer to NextEra's petition; if they do so, a decision on the petition should be forthcoming by approximately November 9, 2018. *See* 3d Cir. I.O.P. 9.5.6.

Moreover, even were the Third Circuit to deny rehearing, the majority opinion presents compelling circumstances warranting a grant of *certiorari*. In contrast to the benefit-to-the-estate standard applied in *O'Brien,* courts in other circuits, including the Second Circuit, apply a business-judgment standard for approval of bid protections. The decision here – which, as Judge Rendell's dissent warned, fundamentally undermines the ability of potential buyers to rely upon court-ordered bid protections – calls into serious question whether the business-judgment standard, instead of the *O'Brien* standard, should be applied when considering a debtor's request for approval of such protections. To minimize delay and avoid any prejudice to creditors, NextEra would proceed without inordinate delay and endeavor to file its petition for a writ of *certiorari* well before the 90 days that are permitted.

## BACKGROUND

**A.      Termination Fee Approval, Reconsideration, And Appeal**

1.      On April 29, 2014, the above-captioned debtors and debtors-in-possession (the "Debtors") commenced these Chapter 11 cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.      In April 2016, after an extensive, strategic marketing process and various other efforts to sell their approximately 80% economic interest in Oncor Electric Delivery Company LLC ("Oncor"), the Debtors engaged in discussions with NextEra which eventuated in the July 29, 2016 Merger Agreement.[4] NextEra consistently demanded a Termination Fee; as the Debtors noted, "NextEra has insisted [the Termination Fee] be included in their proposed

---

[4]   *See Motion Of The EFH/EFIH Debtors For Order (A) Authorizing Entry Into Merger Agreement, (B) Approving Termination Fee, And (C) Authorizing Entry Into and Performance Under Plan Support Agreement* [D.I. 9190] ("Approval Motion").

transaction in every term sheet and merger agreement draft exchanged . . . ."[5]  Consequently, the Merger Agreement provided for a Termination Fee of $275 million, payable to NextEra under certain conditions if the proposed transaction could not be consummated, which NextEra agreed to accept in lieu of reimbursement for its expenses.[6]  The Merger Agreement's enforceability was conditioned upon entry of an Approval Order by the Bankruptcy Court, and NextEra was entitled to terminate the Agreement if it was not timely approved by the Court.[7]

3.       On September 19, 2016, after a full evidentiary hearing, the Court entered an order approving the Merger Agreement and, in particular, approving its Termination Fee as an allowable administrative expense.[8]  The Court found that "the evidence overwhelmingly indicates that a breakup fee was necessary to induce NextEra to make a bid, and to move forward with a merger agreement."[9]  And the Court ruled that "the EFH/EFIH Debtors are authorized and directed to pay the Termination Fee as an allowed administrative expense to the extent it becomes due and payable pursuant to the terms and conditions of the Merger Agreement, at the time and in the manner provided for therein, without any further proceedings before, or order of, the Court . . . ."[10]

4.       In reliance upon that approval, NextEra expended months of effort and significant resources seeking to finance the transaction, obtain regulatory approval, and close on the Merger

---

[5]   *EFH/EFIH Debtors Omnibus Reply to Objections to Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* [D.I. 9536] ("Approval Reply") ¶ 3.

[6]   *See* Merger Agreement § 8.5(b); *see also id.* § 6.7.

[7]   *See* Merger Agreement §§ 5.1(c), 8.4(j).

[8]   *See Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* ("Approval Order") [D.I. 9584].

[9]   Hr'g Tr., Sept. 19, 2016 at 121:17-19.

[10]   Approval Order ¶ 4.

Agreement. The Court has acknowledged that NextEra expended tens of millions of dollars[11] on trying to close the transaction.[12]

5.        Ultimately, the Public Utility Commission of Texas ("PUCT") refused to provide the necessary approval, insisting on strict "ring-fencing" of Oncor that, under the Merger Agreement, constituted a "burdensome condition" NextEra was not obligated to accept. The PUCT rejected NextEra's application for regulatory approval on April 13, 2017.[13]

6.        NextEra continued to pursue multiple paths to obtain regulatory approval of the transaction. It engaged with interested stakeholders in an effort to facilitate a settlement.[14] Further, the Merger Agreement *required* NextEra to pursue approval of the transaction through appeal,[15] and it did so,[16] with the Debtors' full support.[17]

---

[11]   This is a conservative number which excludes hundreds of millions of dollars in financing and other costs attributable to the transaction.

[12]   *See Opinion on Motion for Reconsideration of an Order Approving, Among Other Things, a Termination Fee in the Amount of $275 million* [D.I. 11998] ("Reconsideration Opinion") at 32; *see also Declaration of Mark Hickson in Support of Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Claim* [D.I. 12671].

[13]   *See PUCT Order*, dated April 13, 2017 [D.I. 11878-7]; *Memorandum*, dated March 30, 2017, from Commissioner Kenneth W. Anderson, Jr. [D.I. 11878-5] at 4; Merger Agreement §§ 6.3(d) and (e).

[14]   *See* Hr'g Tr., April 17, 2017 at 13:14-19 (statement of the Debtors) (noting that "NextEra is still working on a potential settlement" and that "the debtors will continue to work with NextEra on that front as well").

[15]   *See* Merger Agreement § 6.3(d)(iii) (requiring all parties to use reasonable best efforts to obtain reversal of any regulatory decision enjoining consummation of the transaction).

[16]   NextEra filed two motions for rehearing (required steps under Texas law before the PUCT's order could be appealed to a court. *See NextEra Energy, Inc.'s Motion for Rehearing* [D.I. 11878-8]; *NextEra Energy, Inc.'s Second Motion for Rehearing* [D.I. 11878-10]; Tex. Gov't Code §§ 2001.145, 2001.146(h) (West, Westlaw through 2017 R.S and 1st C.S., 85th Legislature). When those motions were rejected, NextEra appealed the PUCT's decision to the Travis County District Court. *See* Case No. D-1-GN-003234, Travis County Dist. Ct., 201st Judicial Dist.

[17]   *See Amicus Curiae Brief of Energy Future Holdings Corp. and Energy Future Intermediate Holdings Company LLC in Support of Rehearing* [D.I. 11878-9] (the "First EFH PUCT Amicus Brief"); *Amicus Curiae Brief of Energy Future Holdings Corp. and Energy Future Intermediate Holdings Company LLC in Support of Second Motion for Rehearing* [D.I. 11878-11] (the "Second EFH PUCT Amicus Brief").

7.      On July 6, 2017, while NextEra was still pursuing regulatory approval, the Debtors terminated the Merger Agreement.[18]  The Debtors entered into a deal with a different buyer, but that deal fell through when the Debtors moved on to the Sempra Energy transaction.

8.      On July 29, 2017, more than ten months after the Termination Fee was approved, Elliott filed a "motion for reconsideration" asking this Court to retroactively revoke its allowance of the Termination Fee.[19]  On July 31, 2017, NextEra filed an application seeking payment of the Termination Fee upon consummation of an alternative transaction.[20]  On August 2, 2017, the Debtors commenced an adversary proceeding against NextEra seeking a declaration that the Termination Fee would not be payable because of alleged breaches by NextEra of its Merger Agreement obligations.[21]

9.      On September 19, 2017, the Court held a hearing on the Motion to Reconsider (the "Reconsideration Hearing").  On October 3, 2017, the Court issued its opinion [D.I. 11998] (the "Reconsideration Opinion").   The Court concluded that it had a "fundamental misunderstanding of the critical facts when it approved the Termination Fee," because the record was "incomplete and confusing" on the "fundamental point" of "whether the Termination Fee would be payable if the PUCT declined to approve the NextEra Transaction."[22]  The Court attributed its confusion to the fact that the Debtors' presentations did not address whether the Merger Agreement had an automatic termination date or whether, alternatively, NextEra could

---

[18]   *See Notice of Filing of Letters Terminating (A) the NEE Plan Support Agreement and (B) the NEE Merger Agreement,* at Exh. B [D.I. 11424].

[19]   *Motion to Reconsider In Part the September 19, 2016 Order Approving the NextEra Termination Fee* [D.I. 11636] ("Motion to Reconsider").

[20]   *See Application of NextEra Energy, Inc. for Payment of Administrative Claim* [D.I. 11649].

[21]   *See Adversary Complaint, Energy Future Holdings Corp. v. NextEra Energy, Inc. (In re Energy Future Holdings Corp.),* No. 17-50942 (CSS) (Bankr. D. Del.) [D.I. 11668].

[22]   Reconsideration Opinion at 25.

force the Debtors to give notice of termination following PUCT disapproval.[23]   The Court concluded that its misapprehension "constituted a manifest error of fact justifying reconsideration."[24]   The Court further concluded that, had it properly understood the facts, it could not have approved the Termination Fee under the Third Circuit's ruling in *O'Brien*,[25] and that its Approval Order thus also entailed "a manifest error of law."[26]   On October 18, 2017, the Court issued the Reconsideration Order [D.I. 12075], granting the Motion to Reconsider, denying NextEra's Termination Fee Application, and staying the Adversary Proceeding.

10.     NextEra timely appealed the Reconsideration Order, and the Third Circuit Court of Appeals agreed to hear the appeal directly and on an expedited basis.

**B.     The NEE Plan Reserve**

11.     On August 23, 2017, the Debtors filed the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code (as modified, amended or supplemented, the "Sempra Plan").

12.     On October 30, 2017, NextEra filed a preliminary limited objection to confirmation of the Sempra Plan, asserting that the Plan should not be confirmed unless the Debtors established a reserve of at least $275 million for the Termination Fee.[27]   On December 19, 2017, NextEra filed the *Objection of NextEra Energy, Inc. to the First Amended Joint Plan of*

---

[23]   Reconsideration Opinion at 25.

[24]   *Id.* at 33.

[25]   *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F. 3d 527 (3d Cir. 1999).

[26]   Reconsideration Opinion at 34.

[27]   *See Notice of Intent of NextEra Energy, Inc. to Participate in Confirmation Proceedings* [D.I. 12138]; *Preliminary Limited Objection of NextEra Energy, Inc. to First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12139].

*Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12369], again insisting that the Plan should not be confirmed unless the Debtors established the $275 million reserve.

13.     Elliott opposed establishing the reserve, at least in the absence of any bonding or interest requirement.[28]  The Debtors initially took a similar position,[29] but, before the February 26, 2018 Sempra Plan confirmation hearing began, agreed the reserve should be established without imposing a bond or interest requirement on NextEra, modifying the proposed confirmation order to expressly so provide.[30]

14.     NextEra, however, did not abandon its objection to confirmation because the modifications the Debtors proposed permitted the reserve to be reduced before there was a Final Order in the Termination Fee litigation, allowing a motion to make such a reduction to be made as soon as a week after the Plan became effective.[31]  The Court agreed that it should not be possible to reduce the reserve in this fashion, and directed the parties to consider adoption of a "good cause" or "material change" standard.[32]

---

[28]   *See Elliott Funds' Reply To Objection Of NextEra Energy, Inc. to First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and The EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [12665].

[29]   *See Debtors' Memorandum of Law in Support of Confirmation of the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12666].

[30]   *See Notice of Filing of Amended Proposed Confirmation Order* [D.I. 12748].

[31]   *See* Hr'g Tr., Feb. 26, 2018, at 94:4-11(testimony of A. Horton) (agreeing that, under the Debtors proposed order, "it would be possible for a party to make a motion the week after the plan goes effective to have the $275 million reserve reduced").

[32]   Hr'g Tr., Feb. 26, 2018, at 235:11-13.

15.    The Debtors and NextEra agreed upon "good cause" language, but Elliott continued to object, and the Court held a further hearing the next day, February 27, 2018.[33]  The Court rejected Elliott's continued objection, explaining that it did so not merely because the Debtors had determined to establish a reserve, but also because the "integrity of the judicial process" required that a reserve be established "in order to preserve the jurisdiction and ability of the Third Circuit to enact meaningful relief on an appeal."[34]  The Court entered the Confirmation Order, which requires that the $275 million reserve remain in place, and that no interim distributions disrupt that reserve, until a "Final Order"[35] has been entered either in NextEra's favor or against NextEra in the appeal and subsequent litigation,[36] provided that the Court may modify the reserve "for good cause shown."[37]

16.    Moreover, the Court provided guidance on what "might" constitute good cause for revisiting the reserve: "if I get affirmed by the Third Circuit, and NextEra seeks en banc review, *and that's denied*, and then NextEra seeks a *certiorari* petition from the Supreme Court, where there's no circuit split here or really any controlling law to do it, I'm not saying I would, but that *might* be a situation where the Court would change its mind." Hr'g Tr. Feb. 27, 2018 at 17:9-15 (emphasis added).

17.    When it granted the $275 million reserve, the Court denied NextEra's request that it further order that, in the event of a Final Order rejecting NextEra's Termination Fee claim, $60

---

[33]  Hr'g Tr., Feb. 27, 2018, at 8:21-25 (Ms. Yemenandra) (noting that no party objects to entry of the order other than Elliott).

[34]  Hr'g Tr., Feb. 27, 2018, at 14:22-16:21.

[35]  A "Final Order" is an order as to which the time to appeal, seek a rehearing or reargument, or seek certiorari has expired, and any such appeal or petition that has been filed has been denied with prejudice.  See Plan Art. I.A.209.

[36]  *See* Confirmation Order [D.I. 12763], ¶¶ 151-156.

[37]  Confirmation Order ¶ 154.

million would automatically be retained in reserve to cover NextEra's Alternative Application (discussed below).[38]

18.    On March 13, 2108, Elliott appealed the Confirmation Order to the U.S. District Court for the District of Delaware ("the District Court").[39]    On March 23, 2018, UMB likewise appealed the Confirmation Order to the District Court.[40]    These appeals have been joined pursuant to Fed. R. Bankr. P. Rule 8003(b)(2).    Briefing on the appeals is complete.    In the appeal, Elliott contends that the Reserve should not have been approved, that the Court erred in not requiring that NextEra provide a bond or pay interest on the Reserve, and that the Court erred in adopting a "good cause" standard for modification of the Reserve.[41]    Elliott argues, *inter alia*, that "[t]he NextEra Plan Reserve is directly contrary to the express terms of the Plan," and that it "deprives holders of allowed unsecured claims from receiving funds they were entitled to receive as soon as reasonably practicable after the Effective Date."[42]

C.    **NextEra's Alternative Application For Payment Of Expenses**

19.    On February 20, 2018, NextEra filed the *Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Claim* [D.I. 12671] ("NextEra's Alternative Application"), seeking, in the alternative to its Termination Fee application, recovery of approximately $60 million incurred in efforts to consummate the Merger Agreement transaction.

---

[38]    *See* Hr'g. Tr., Feb. 26, 2018, at 233:10-13.

[39]    *See Amended Notice of Appeal* [D.I. 12830].

[40]    *See Notice of Appeal* [D.I. 12848].

[41]    *See Elliott's Statement of Issues and Designation of Items to be Included in the Record on Appeal from the February 27, 2018 Confirmation Order* [D.I. 12864] at ¶ 2.

[42]    *Joint Opening Brief of Appellants UMB Bank, N.A., as Indenture Trustee, Elliott Associates, L.P., Elliott International, L.P. and the Liverpool Limited Partnership* at 19, *Elliott Associates, L.P., Elliott International, L.P., The Liverpool Limited Partnership and UMB Bank N.A. v. Energy Future Holdings Corp., et al.*, No. 18-00400-RGA (D. Del. May 18, 2018).

20.     On March 23, 2018, Elliott and UMB filed a motion to dismiss, or in the alternative, for summary judgment on NextEra's Alternative Application.[43] NextEra objected to this motion.[44] On August 1, 2018, this Court granted the motion.[45]

21.     NextEra has appealed the Court's order to the District Court.[46] The Scheduling Order entered by the District Court contemplates that briefing will be completed by January 7, 2019.[47]

**D.     The Third Circuit's September 13, 2018, Decision**

22.     On September 13, 2018, a divided panel of the Third Circuit affirmed this Court's Reconsideration Order. In doing so, the majority acknowledged that "when a court reconsiders a prior decision it must 'take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling.'" Slip op. 35 (citing *Roberts v. Ferman*, 826 F. 3d 117, 126 (3d Cir 1997) (quoting *Williams v. Runyon*, 130 F. 3d 568, 573 (3d Cir. 1997))). But the majority mistakenly concluded that retroactive voiding of the Fee would not prejudice NextEra, reasoning that

---

[43]   *See Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to (I) Dismiss Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Expense, or, in the Alternative, (II) Grant Summary Judgment Denying and Disallowing Such Administrative Expense Filed by Elliott Associates, L.P., Elliott International, L.P. and The Liverpool Limited Partnership* [D.I. 12844].

[44]   *See Objection of NextEra Energy, Inc. to Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to (I) Dismiss Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Expense, or, in the Alternative, (II) Grant Summary Judgment Denying and Disallowing Such Administrative Expense* [D.I. 12935].

[45]   *See Order granting Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to (I) Dismiss Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Expense, or, in the Alternative, (II) Grant Summary Judgment Denying and Disallowing Such Administrative Expense Filed by Elliott Associates, L.P., Elliott International, L.P. and The Liverpool Limited Partnership* [D.I. 13333].

[46]   *See Notice of Appeal* [D.I. 13363].

[47]   *See Scheduling Order, NextEra Energy, Inc. v. Elliott Associates, L.P ., Elliott International, L.P., The Liverpool Limited Partnership, UMB Bank, N.A., and EFH Plan Administrator Board*, No. 18-01253-RGA (D. Del. Sept. 28, 2018).

NextEra would be able to recover its expenses through the Alternative Application. *See* Slip op. 35. The panel majority failed to appreciate that this Court—over NextEra's objection—had already dismissed that application.

23. In a strongly worded dissent, Judge Rendell (the former Chair of the Bankruptcy Committee of the U.S. Judicial Conference) explained that there was no error of law or fact— much less a clear or manifest error as required for reconsideration—in the approval of the Termination Fee. She warned that:

> The reconsideration of a previously approved term of a deal, based on a bankruptcy court's failure to appreciate all of the potential ramifications of the term, sets a troubling—if not dangerous—precedent. Parties to commercial transactions present the terms of the deal to the court for approval and, once approved, are entitled to rely on the court's order…. Here, that should have been the guiding principle, and the grant of reconsideration so as to nullify the previously approved Fee … was an abuse of discretion.

Dissent 5-6. As Judge Rendell further noted, "due to the previous [Termination Fee] approval, the Bankruptcy Court's analysis of after-the-fact benefit to the estates was misplaced." *Id.* at 5.

**E.      NextEra's Petition For Rehearing**

24. On September 27, 2018, NextEra timely filed its petition for rehearing en banc and panel rehearing with the Third Circuit.[48] As NextEra's petition explains, rehearing is warranted because the majority opinion:

- Cannot be squared with decades of precedent holding that only "clear" or "manifest" error – error that is "apparent or obvious" – can justify rehearing, since the Court's asserted error concerning the lack of a termination date was subjective, unexpressed, and wholly unobservable.

---

[48] *See Petition for Rehearing or Rehearing En Banc, NextEra Energy, Inc. v. Elliott Associates, L.P ., Elliott International, L.P., and The Liverpool Limited Partnership.*, No. 18-1109 (3d Cir. Sept. 27, 2018).

- Is contrary to the Third Circuit's decision in *In re Reliant Energy Channelview LP,* 594 F. 3d 200, 205-07 (3d Cir. 2010) because it took account of events that post-dated approval of the Termination Fee.

- Rests on a clear error when it concludes that NextEra will not be prejudiced by its reliance on the reconsidered order because it can pursue its alternative $60 million administrative fee claim, given this Court's denial of that claim with prejudice.

25.    To date, the Third Circuit has not ruled on NextEra's rehearing petition.    The initial ten calendar day period for review of the petition expired on or about October 9, 2018. 3d. Cir. I.O.P. 9.5.4.    Under the Third Circuit's procedures, if one or more active judges votes for rehearing, and one or more seeks an extension of the period for consideration of the petition, the period is extended by five working days. 3d Cir. I.O.P. 9.5.5.    Depending upon the timing of the clerk's handling of the petition, that period could expire as early as today, October 16, 2018.    "If four active judges vote to request an answer to the petition or if there are a total of four votes for an answer or for rehearing, provided that there is at least one vote for an answer," Elliott would be provided fourteen calendar days to submit an answer to the petition. 3d Cir. I.O.P. 9.5.6.    The Third Circuit would then have an additional ten days to consider the matter and decide whether to grant a rehearing. *See id.*    Thus, if it calls for an answer, the Third Circuit's decision is likely to be issued by approximately November 9, 2018.

26.    The Third Circuit's decision is not final, and its mandate has not issued.

## OBJECTION

**I.**    **Consideration Of The Motion Is Premature Because The Third Circuit Is Still Considering NextEra's Petition For Rehearing**

27.    Consideration of the Motion remains premature because the Third Circuit has not ruled on NextEra's petition for rehearing.    As Mr. Galardi, counsel for Elliott, acknowledged at

the September 18, 2018 status conference, the Motion should be heard after the Third Circuit

rules "so as to not prejudge the rehearing issue." Hr'g Tr. Sept. 18, 2018 at 12:3:4.

28.     Accordingly, the Motion should be adjourned until the Third Circuit rules.  When

the Third Circuit rules, the Court should re-calendar the hearing, affording the parties a short

period to make submissions which address the impact of the Third Circuit's decision.

## II.     The Movants' Pending Appeal To The District Court Divests This Court Of Jurisdiction

29.     The Court lacks jurisdiction to entertain the Motion for release of the NEE Plan

Reserve because the Motion raises matters at issue in Movants' pending appeal to the District

Court of the Confirmation Order provisions establishing the Reserve, and because to grant the

Motion would moot that appeal.

30.     "[F]iling a notice of appeal divests a lower court of jurisdiction over the subject

matter of the appeal in order to avoid confusion and maintain integrity of the appeal process." *In

re Rivera,* 580 B.R. 432, 438 (Bankr. E.D. Pa. 2017) (citing *In re Pursuit Capital Mgmt.,* 2017

WL 2537234, at *7 (Bankr. D. Del. June 9, 2017); *In re Whispering Pines Estates*, 369 B.R. 752,

757 (1st Cir. BAP 2007); and *In re Trimble,* 2008 WL 782581, at *2 (Bankr. D.N.J. 2008)).

"Subject matter of the appeal includes all matters that can directly affect the outcome of an

appeal." *In re Rivera,* 580 B.R. 438 (citing *In re Whispering Pines Estates*, 369 B.R. at 761).  In

the bankruptcy context, "the test is a functional one:  'once an appeal is pending, it is imperative

that a lower court not exercise jurisdiction over those issues which, although not themselves

expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively

circumvent the appeal process.'"  *In re G-I Holdings, Inc.*, 568 B.R. 731, 763 (Bankr. D.N.J.

2017) (quoting *In re Scopac,* 624 F.3d 274, 280 (5th Cir. 2010), *opinion modified on denial of

reh'g,* 649 F.3d 320 (5th Cir. 2011) (internal citations omitted)).  Accordingly, "an appeal of a

bankruptcy order will not only divest the bankruptcy court of jurisdiction [1] if the issues on appeal are identical to the issues presently before the bankruptcy court, but also [2] if the bankruptcy court's determination of the issues would interfere with or undermine the appellate process." *In re G-I Holdings, Inc.*, 568 B.R. at 764. Here, the Court is divested of jurisdiction on both grounds.

31.    Here, as in the appeal, Movants challenge the very existence of the NEE Plan Reserve.[49] Indeed, the appeal asks the District Court to alter the "good cause" standard for modification of the Reserve, the very standard that the Movants now seek to have this Court apply.[50] Likewise, as in their appeal, Movants argue that holding funds in the NEE Plan Reserve is inconsistent with the Plan because "the Plan provides for cash distributions to be made to unsecured creditors on or 'as soon as reasonably practicable' after the Effective Date of the Plan." Motion ¶ 29; *Joint Opening Brief of Appellants UMB Bank, N.A., as Indenture Trustee, Elliott Associates, L.P., Elliott International, L.P. and the Liverpool Limited Partnership* at 19, *Elliott Associates, L.P., Elliott International, L.P., The Liverpool Limited Partnership and UMB Bank N.A. v. Energy Future Holdings Corp., et al.*, No. 18-00400-RGA (D. Del. May 18, 2018).[51]

32.    Further, the bankruptcy court's resolution of issues impermissibly interferes with the appeal if the effect of the bankruptcy court's determination would be to moot the issue on appeal. *See In re G-I Holdings*, 586 B.R. at 769 (citing *In re Norris Grain*, 167 B.R. 258, 260

---

[49]    *See* Motion at 2; *Elliott's Statement of Issues and Designation of Items to be Included in the Record on Appeal from the February 27, 2018 Confirmation Order* [D.I. 12864] at ¶ 2.

[50]    *Id.*

[51]    Furthermore, Movants' argument is wrong on its face. The Confirmation Order is clear that the funds in the NEE Plan Reserve will be released "upon entry of a Final Order." *See* Confirmation Order ¶ 154. Because a final non-appealable order in favor or against NextEra's claim has not yet been entered, the Termination Fee is still a disputed claim and the NEE Plan Reserve should remain intact until the appeal is resolved. *See* Plan Art. I.4.69.

(Bankr. M.D. Fla. 1994)).  Here, there can be no question that granting Movants' motion to have all funds discharged from the Reserve would moot the Movants' appeal of the Confirmation Order.

33.    Accordingly, this Court lacks jurisdiction to entertain the Motion.  This is, it should be noted, a problem of Movants' own making; it is the necessary consequence of their attempt to wage the same battle on multiple fronts at the same time.

### III.    Good Cause Does Not Exist To Release The Funds From The NEE Plan Reserve

#### A.    The Plan Reserve Should Be Maintained To Preserve The Third Circuit's Ability To Afford Meaningful Relief

34.    Even if this Court had jurisdiction to consider the Motion, and concludes that it is appropriate to address the Motion before the Third Circuit rules, the Court should reject it on the merits.  This Court's Confirmation Order requires that the Reserve be maintained until a Final Order has been entered on NextEra's appeal of the Reconsideration Order to the Third Circuit. Confirmation Order ¶¶ 151-156.   As Movants and the Court have acknowledged, notwithstanding the issuance of the Third Circuit's September 13 opinion, NextEra's appeal is still pending.[52]  NextEra's petition for rehearing is unresolved, the Third Circuit's mandate has not issued, and no Final Order has been entered.

---

[52]    Motion ¶ 24 ("NextEra's appeal of the Reconsideration Order is not yet finally concluded—NextEra may still seek a panel rehearing, rehearing en banc, or file a petition for writ of certiorari with the United States Supreme Court...."); *see also* Hr'g Tr., Sept. 18, 2018 at 6:14-17 (counsel for Elliott and UMB) ("[W]e, and I believe the PAB, were of the view that given the pendency of the appeal and nothing about the Third Circuit's current decision changes that the appeal was still pending").  The Court agreed. *See id.* at 17:4-9.  ("I agree that nothing is changed as a result of the decision in that there are still subsequent motions that can be filed. And indeed, although probably extremely unlikely, a petition to the Supreme Court could even be allowed or could be pursued.").

35.    Further, while the Confirmation Order imposed a good cause standard for revisiting the NEE Plan Reserve,[53] that standard is not met because the considerations which prompted this Court to approve the Reserve remain fully applicable.  The Court approved the Reserve because "the integrity of the judicial process" required that a reserve be established "in order to preserve the jurisdiction and ability of the Third Circuit to enact meaningful relief on an appeal." Hr'g Tr. Feb 27, 2018, at 14:22-16:21.  The Court correctly noted that to release the funds would make it extremely difficult for NextEra to recover if it ultimately succeeds on its claim.[54]  This is no less true now than it was when the Court initially approved the Reserve. Release of the NEE Plan Reserve would deprive NextEra of the ability to recover the funds it is due in the event the Third Circuit grants NextEra's rehearing petition.

36.    Indeed, this Court, discussing the circumstances where the Reserve might be revisited, recognized that even in a more extreme case – where the Third Circuit affirmed the Court's Reconsideration Order, "NextEra seeks *en banc* review, and that's *denied*, and NextEra then seeks a certiorari petition from the Supreme Court, where there is no circuit split here or really any controlling law" – the Court *still* might find good cause lacking. *Id.* at 17:9-15 ("I'm not saying I would, but that *might* be a situation where the Court would change its mind") (emphasis added).

---

[53]    *See* Confirmation Order ¶ 154; *see also* Hr'g Tr., Feb. 26, 2018 [D.I. 12770] at 235:22-236:3 ("I'm going to…permit the reserve of $275 million…setting aside a good cause standard in connection with any motion to change the amount of the reserve.").

[54]    Hr'g Tr. Feb 27, 2018, at 15:18-25 ("if I were to allow the money to go out" it would "in practical terms" make it very difficult for NextEra to "recover that money [at] the end of the day," denying NextEra an "opportunity . . . to receive what it might be legally entitled to," and "remov[ing] the ability for the Third Circuit to provide meaningful relief on the pending appeal"). *See also In re Tribune Co.,* 477 B.R. 465, 477 (Bankr. D. Del. 2012) ("it is unlikely that the distributions could be recovered, or if recoverable, [to do so] would be challenging and costly"); *In re Finova Grp., Inc.,* No. 01-698-PJW, 2007 WL 3238764, at *2 (D. Del. Oct. 31, 2007) ("One this distribution is made, Appellant will have little or no recourse available to reclaim the funds").

37.     Refusing to revisit the NEE Plan Reserve at this juncture would not result in unjustified delay.  Given the expiration of the initial ten-day period for considering NextEra's petition, it appears that a least one active judge has voted for rehearing and that the period for consideration has been extended.  We should know within a few days whether the Third Circuit will call for an answer to NextEra's petition, and, in any event, the Third Circuit is likely to rule one way or another by approximately November 9, 2018.

38.     Nor are Movants correct to suggest that one may assume *en banc* review will not be granted here because it was not granted before the panel opinion was issued.  (*See* Motion at 10.)  The Third Circuit grants *en banc* review far more frequently following issuance of a panel opinion than it does before issuance of a panel opinion.[55]  Further, Movants do not even attempt to analyze the impact of dissenting opinions such as that here, by a respected jurist with particular expertise in the subject matter area, which concludes that the majority opinion will "set a troubling – if not dangerous – precedent."  Dissent 6.  Rather than presuming how the Third Circuit will rule, as Movants propose, this Court should instead continue to protect the integrity of the judicial process and reject Movants' request that the Plan Reserve be released.

**B.     The Plan Reserve Should Be Maintained To Preserve**
**The Supreme Court's Ability To Afford Meaningful Relief**

39.     Furthermore, even if the Third Circuit were to deny NextEra's rehearing petition, the Court should maintain the NEE Plan Reserve in order to preserve the ability of the Supreme Court to afford relief.  This Court, as noted above, observed that modification of the Reserve might not be warranted *even if* NextEra filed a petition for a writ of *certiorari* "where there is no

---

[55]   NextEra has canvassed the Third Circuit's *en banc* determinations over the last five years and determined that a substantial majority were issued after the panel decision was issued.  *See, e.g., Hayes v. Harvey*, 2018 WL 4171034 (3d Cir. Aug. 31, 2018); *Vooys v. Bentley*, 901 F.3d 172 (3d Cir. 2018); *U.S. v. Douglas*, 885 F.3d 145 (3d Cir. 2018); *Dennis v. Secretary, Pa. Dept. of Corrections*, 834 F.3d 263 (3d Cir. 2016); *U.S. v. Katzin*, 769 F.3d 163 (3d Cir. 2014); *U.S. v. Flores-Mejia*, 759 F.3d 253 (3d Cir. 2014).

circuit split or really any controlling law."[56] But NextEra's petition here, if it becomes necessary, would be founded, in part, upon a divergence in the standard applied in the Third Circuit and in other circuits for approval of bid protections in bankruptcy, an important federal law issue.

40.    Indeed, the issues raised in the Third Circuit appeal, and the resulting panel split, present the kind of "compelling" circumstances warranting a grant of *certiorari*. *See* SUP. CT. R. 10. A grant of *certiorari* may be appropriate when the issue on appeal involves an important question of federal law that creates a conflict with rulings of other Circuit Courts or that has not been, but should be, settled by the Supreme Court. *See* SUP. CT. R. 10. Here, the lack of uniformity among courts in different circuits regarding the appropriate standard for approving termination fees and other bid protections raises an "important question of federal law" that should be settled by the Supreme Court in order to preserve the sanctity of bankruptcy sales in this and other circuits. *Compare Calpine Corp. v. O'Brien Envtl. Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999) (requiring a showing of a benefit to the estate), *with In re ASARCO L.L.C.*, 650 F.3d 593 (5th Cir. 2011) (invoking a business judgment standard for approval of bid protections), *and In re Integrated Res., Inc.*, 147 B.R. 650 (S.D.N.Y. 1992) (invoking a business judgment standard for approval of break fee).

41.    This Court's interpretation and application of *O'Brien* in granting the Reconsideration Order, and the panel majority's decision upholding it, undermine the ability of potential buyers to rely on court-ordered bid protections. Dissent 6. As Judge Rendell cautioned, the Reconsideration Decision, which was premised on this Court's application of *O'Brien*, resulted in a "double § 503 analysis, where a party could seek approval of a fee as a term of the deal," receive court approval for that fee, and then be faced with disgruntled creditors

---

[56]    Hr'g Tr. Feb 27, 2018 at 17:9-15.

"get[ting] another bite at the *O'Brien* apple, urging there was no value, if the deal sours." Dissent 5. Judge Rendell's dissent calls into serious question whether the "benefit to the estate" standard set forth in *O'Brien*, which here resulted in an "analysis of after-the-fact benefit to the estate," Dissent 5, should be the standard for approving bid protections, as opposed to the approach used by courts in other circuits, including courts within the Second Circuit, that apply a business judgment standard to a debtor's request to approve bid protections.

42.    NextEra, under SUP. CT. R. 13, would have 90 days from a Third Circuit denial of its petition for rehearing to file a petition for *certiorari*. To minimize potential prejudice to creditors, however, NextEra would endeavor to file any such petition well in advance of that deadline.

43.    Again, rather than presuming how reviewing courts will rule, this Court should instead continue to protect the integrity of the judicial process and the courts' ability to provide meaningful relief by maintaining the NEE Plan Reserve.

## IV.    If The Court Is Inclined To Release NEE Plan Reserve Funds, Then, At Minimum $60 Million Should Be Retained For NextEra's Administrative Expense Claim

44.    Should the Court decline to continue the NEE Plan Reserve in place to protect NextEra's ability to recover the Termination Fee, the full amount of the reserve should not be released. The Third Circuit majority opinion affirming the Reconsideration Order is predicated upon the assumption that this Court will "take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling." Slip op. 35 (citations omitted). In the event NextEra's rehearing petition is denied, the panel majority opinion remains in place, and the Court concludes NextEra's arguments concerning *certiorari* are not sufficiently meritorious and that maintenance of the full Reserve is not warranted, the Court should continue to hold funds in the NEE Plan Reserve in the amount of $59,505,611.00 that was sought in NextEra's Alternative

Application.    While the Court has denied NextEra's Alternative Application, NextEra has appealed the order denying the Application to the District Court, where it is now pending. Briefing on that appeal is scheduled to be completed on January 7, 2019.    Failure to maintain such funds in reserve would be at odds with the majority opinion's directive that this Court take "appropriate steps" to avoid prejudice to NextEra and would undermine the integrity of the judicial process.

**V.    If The Court Releases The Funds In The NEE Plan Reserve, Distribution Should Be Conditioned Upon Appropriate Provisions For Disgorgement**

45.    If the Court authorizes the PAB to release and distribute funds in the NEE Plan Reserve to unsecured creditors, the Court's order should impose, and require the recipients to agree to, appropriate terms facilitating disgorgement of the funds received (and maintenance of sufficient funds to secure such disgorgement) to NextEra should it succeed on any of its claims. Without such arrangements, NextEra would have the difficult task of pursuing the unsecured creditors, or even the Reorganized Debtors, to recover the amounts to which it is legally entitled.

<strong><u>CONCLUSION</u></strong>

Wherefore, NextEra requests that the Court deny the Motion and grant NextEra such other and further relief as the Court may deem just and proper.

Dated: October 16, 2018
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
       mcguire@lrclaw.com

-and-

**NORTON ROSE FULBRIGHT US LLP**
Howard Seife (admitted *pro hac vice*)
Andrew Rosenblatt (admitted *pro hac vice*)
Eric Daucher (admitted *pro hac vice*)
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 408-5100
Facsimile: (212) 541-5369
Email: howard.seife@nortonrosefulbright.com
       andrew.rosenblatt@nortonrosefulbright.com
       eric.daucher@nortonrosefulbright.com

Robin Ball (admitted pro hac vice)
555 South Flower Street, 41st Floor
Los Angeles, California 90071
Telephone: (213)892-9200
Facsimile: (213) 892-9494
Email : robin.ball@nortonrosefulbright.com

*Counsel to NextEra Energy, Inc.*