# **EXHIBIT B**

**Reply**

{BAY:03377114v1}

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>*Debtors.* | )<br>) Chapter 11<br>)<br>) Case No. 14-10979 (CSS)<br>)<br>) (Jointly Administered)<br>)<br>) **Re: D.I. 13497, 13560, & 13561**<br>) |

**REPLY OF UMB BANK, N.A., AS INDENTURE TRUSTEE, AND
ELLIOTT IN SUPPORT OF THEIR JOINT MOTION TO DIRECT
THE EFH PLAN ADMINISTRATOR BOARD TO RELEASE AND
DISTRIBUTE ALL FUNDS IN THE NEE PLAN RESERVE**

UMB Bank, N.A., as Indenture Trustee ("UMB") for the unsecured 11.25%/12.25% Senior Toggle Notes due 2018, and Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott" and, together with UMB, the "Movants"), by and through their undersigned counsel, hereby submit this reply to the responses to Movants' joint motion for entry of an order directing the EFH Plan Administrator Board (the "PAB") to release and distribute the full amount of the NEE Plan Reserve to EFH and EFIH unsecured creditors in accordance with the Plan [D.I. 13497] (the "Motion").[2]  In support hereof, Movants respectfully state as follows:

**PRELIMINARY STATEMENT**

Movants have received one objection (the "NextEra Objection") and one response (the "PAB Response") to the Motion.  In the NextEra Objection, NextEra requests that the NEE Plan

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

Reserve continue to be maintained until NextEra has exhausted all remaining avenues of appeal, or in the alternative, that the Court require the PAB to maintain a reserve in an amount equal to NextEra's disallowed $60 million administrative expense claim for reimbursement of certain fees and expenses (the "NEE Reimbursement Claim").  As shown in the Motion and herein, in light of the Third Circuit's ruling affirming the Reconsideration Order and the overriding interests of creditors in receiving Plan distributions, good cause now exists for releasing and distributing the funds in the NEE Plan Reserve to EFH and EFIH unsecured creditors in accordance with the Plan, and NextEra's contention that the NEE Plan Reserve must be maintained until the Reconsideration Order is final and non-appealable must be rejected.  Nor is there any basis for the Court to grant NextEra's improper request to maintain a reserve for the disallowed NEE Reimbursement Claim.  This Court already ruled that no reserve is required on account of the NEE Reimbursement Claim, a decision that is now final and binding.  Accordingly, for these and the other reasons set forth below, the NextEra Objection should be overruled.

In the PAB Response, the PAB supports releasing the NEE Plan Reserve, but only upon a ruling by the Third Circuit denying NextEra's petition for rehearing.  For the reasons set forth in the Motion and herein, the PAB's position should also be rejected.  Good cause exists now, and any further delay in creditor distributions will harm the PAB's beneficiaries due to lost opportunity costs, which the PAB itself estimates as amounting to at least 10% or approximately $5 million per month.

## **REPLY**

**I.     THIS COURT HAS JURISDICTION TO RULE ON THE MOTION**

1. NextEra contends that Movants' pending appeal of the Confirmation Order divests this Court of jurisdiction to consider the Motion, and that a ruling granting the Motion would moot Movants' appeal. *See* NextEra Objection [D.I. 13561] at 15. NextEra's arguments are inconsistent with applicable law and, if countenanced by the Court, would effectively bar the PAB from making Plan distributions notwithstanding there being no stay of the Confirmation Order. Indeed, under NextEra's rationale, Movants' appeal of the Confirmation Order would have the absurd effect of preventing any party, including Movants, from seeking relief in compliance with its terms, thereby placing Movants in an even worse position than they would have been had they not appealed.

2. Courts have found that an appeal may divest a lower court of jurisdiction over the subject matter of an appeal "to avoid the confusion of placing the same matter before two courts at the same time and preserve the integrity of the appeal process." *In re New Century TRS Holdings, Inc.*, No. 07-10416 (KJC), 2013 WL 5755058, *3 (Bankr. D. Del. Oct. 16, 2013) (internal quotations omitted). This divestiture doctrine does not bar the Court from granting the relief Movants seek. The law is clear that a "lower court may enforce or implement its order unless the appellant has obtained an order staying the underlying action pending appeal." *In re Pursuit Capital Mgmt., LLC*, No. 14-10610 (LSS), 2017 WL 2537234, *6 (Bankr. D. Del. June 9, 2017). "As long as the matters in front of the lower court would not alter the appealed order, the trial court is not divested of jurisdiction." *Id.* Further, notwithstanding the pendency of an appeal of an order disallowing a claim, the court "retains jurisdiction to administer the case."

*See In re Enron Corp.*, No. 01-16034 (AJG), 2006 WL 544463, *5 (Bankr. S.D.N.Y. Jan. 17, 2006) (holding that court was not divested of jurisdiction to rule on an estimation motion).

3.     Movants have appealed the Confirmation Order, and specifically the "good cause" standard imposed by this Court, but have not sought a stay of the Confirmation Order or the implementation of the Plan.  The relief sought by Movants is expressly authorized by the Confirmation Order,[3] and it is in furtherance of the Plan provisions directing that distributions be made as soon as reasonably practicable.  *See* Plan [D.I. 12653] Arts. I.C. and VI.A.  Indeed, NextEra's interpretation would render the Court's ability to release the funds for "good cause" meaningless.  Accordingly, Movants' appeal of the Confirmation Order does not prevent this Court from implementing the Confirmation Order and granting relief made expressly available to Movants thereunder.

4.     Nor would a ruling granting the Motion render Movants' Confirmation Order appeal moot.  In the appeal, Movants requested, among other things, a remand to this Court to determine an appropriate remedy to compensate creditors for the delays in Plan distributions caused by the NEE Plan Reserve.  *See Joint Opening Brief of Appellants UMB Bank, N.A., as Indenture Trustee, Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership*, Civ. Action No. 18-400 (RGA), at 35 (D. Del. May 18, 2018).  Accordingly, Movants are seeking redress for harm caused from the Plan Effective Date through the date that the NEE Plan Reserve is released in full and distributed to creditors, which is an issue that would

---

[3]     *See* Confirmation Order ¶ 156 (Movants "shall have the right any time after entry of the Confirmation Order to . . . seek relief in Bankruptcy Court or any other court of competent jurisdiction in accordance with the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the District of Delaware, and any other applicable rules or procedures to reduce or eliminate, or seek other relief, with respect to any reserves established using funds in the EFH/EFIH Cash Distribution Account and established and/or maintained by the EFH Plan Administrator Board (including in its capacity as Trustee) on account of any Disputed Claims that have been disallowed by the Bankruptcy Court, including but not limited to any NEE Plan Reserve").

not be mooted if the Court grants the Motion. In any event, the appellate court, not this Court, is the proper court for determining the mootness of the Movants' appeal.

5. Accordingly, this Court has jurisdiction to rule on the Motion notwithstanding the pending Confirmation Order appeal.

## II. GOOD CAUSE EXISTS TO RELEASE THE NEE PLAN RESERVE REGARDLESS OF WHETHER THE THIRD CIRCUIT HAS RULED ON NEXTERA'S PETITION FOR REHEARING

6. NextEra also contends that the Motion is premature and, even if it were not, it should be denied because this Court authorized the NEE Plan Reserve to protect "the integrity of the judicial process." NextEra Objection at 19. NextEra's arguments should be rejected for any one of numerous grounds.

7. First, NextEra suggests that because no ruling has been issued on its petition for rehearing *en banc*, at least one active judge must have voted in favor of rehearing. *See* NextEra Objection at 2 & 19. That is pure speculation. While the Third Circuit's operating procedures establish a 10-day deadline for active judges to vote on a petition for rehearing *en banc* (which may be extended for an additional 5 business days), *see* 3d Cir. I.O.P. 8.1 and 9.3.1, such procedures do not establish any deadline for an order to be entered disposing of a petition for rehearing *en banc* if the petition does not receive the requisite votes. *See* 3d Cir. I.O.P. 9.5.7 ("The authoring judge enters an order denying rehearing before the panel, and denying rehearing en banc if a majority of the active judges who are not disqualified, does not vote for rehearing."). Thus, the fact that no order has yet been entered may be attributable to nothing more than administrative delay with the Clerk's office. Indeed, there are numerous recent examples where

the Third Circuit has entered an order denying a petition for rehearing weeks after the 10-day voting period has expired without even requesting an answer to the petition.[4]

8.　　Second, releasing the NEE Plan Reserve would not "undermine the integrity of the judicial process," as NextEra suggests. The Third Circuit panel's majority opinion renders it highly unlikely that NextEra will succeed in any subsequent proceedings, and creditors have a paramount interest in receiving the distributions to which they are entitled under the Plan. NextEra has had sufficient opportunity to seek a stay pending appeal in the Third Circuit but has chosen not to do so. Creditors should not be forced to continue to bear the substantial financial and other costs of NextEra's appeal when NextEra has failed to take appropriate action to protect its own rights. *See Young v. IRS (In re Young)*, 132 B.R. 395, 397 (S.D. Ind. 1990) ("[A] well-known maxim of equity guides the court here, that being that equity aids the vigilant, not those who slumber upon their rights.").

9.　　And finally, the indisputable facts warrant a finding that "good cause" presently exists: (i) the Third Circuit affirmed the Reconsideration Order; (ii) no *en banc* review has been granted; (iii) appellees have not been requested to file a response to NextEra's rehearing request; (iv) NextEra admitted that it is extremely unlikely that it would be able to obtain *en banc* or Supreme Court review;[5] (v) NextEra has not sought or obtained any stay relief from the Third Circuit with respect to the Reconsideration Order; (vi) the Plan requires that creditors receive

---

[4] *See, e.g.*, *United States v. Bogart*, No. 16-1451 (3d Cir. Mar. 6, 2018) (entering order denying petition for rehearing 32 days after petition was filed); *In re Flonase Antitrust Litig.*, No. 16-3019 (3d Cir. Feb. 7, 2018) (entering order denying petition for rehearing 33 days after petition was filed); *In re Klaas*, No. 16-3482 (3d Cir. July 10, 2017) (entering order denying petition for rehearing 25 days after petition was filed); *Gavin v. Tousignant*, No. 16-1679 (3d Cir. Apr. 27, 2017) (entering order denying petition for rehearing 27 days after petition was filed); *In re Hanjin Shipping Co. Ltd.*, No. 16-3652 (3d Cir. Nov. 9, 2016) (entering order denying petition for rehearing 32 days after petition was filed).

[5] *See* Feb. 26, 2018 Hr'g Tr. at 220:10–15 (NextEra conceding that such further requests for review "are long shots under the best of circumstances").

distributions as soon as reasonably practicable; and (vii) creditors are being harmed every day by the delay in receiving their Plan distributions.[6]

### III. NEXTERA IS NOT ENTITLED TO A RESERVE FOR ITS DISALLOWED NEE REIMBURSEMENT CLAIM

10. NextEra also requests that, in the event the Court determines that the $275 million NEE Plan Reserve should be released, the Court should nonetheless require the PAB to maintain a reserve on account of NextEra's disallowed $60 million NEE Reimbursement Claim. This request should be denied.

11. This Court already ruled that NextEra is not entitled to a reserve for the NEE Reimbursement Claim. *See* Feb. 26, 2018 Hr'g Tr. at 232:7–11 ("I don't believe that it is necessary to satisfy 1129(a)(9) for this Court to -- or for the Debtors to reserve . . . for a currently disallowed administrative claim. It's not necessary."); *id.* at 233:17–23 ("But I don't think -- and I'm not going to require the Debtors to make [the Backup] [R]eserve. They're not required to do it because it's not an allowed claim."). NextEra did not appeal that ruling and, consequently, it is a final order of this Court that cannot be collaterally attacked.

---

[6] NextEra argues that the Third Circuit is likely to grant its rehearing petition because it believes the majority opinion is contrary to *In re Reliant Energy Channelview LP*, 594 F.3d 200 (3d Cir. 2010), in that it affirmed a decision whereby this Court used hindsight in evaluating the Termination Fee. This is simply untrue. First, this Court made clear that it did not rely on hindsight in granting reconsideration. *See* Reconsideration Opinion [D.I. 11998] at 31 n.87. Second, *Reliant* did not even address the circumstances in which a bankruptcy court may consider historical facts in deciding whether to approve an administrative expense. *See Reliant Energy*, 594 F.3d at 208 (observing that, in reviewing a district court's decision to deny a break-up fee, the reviewing appellate court "view[s] the decision from the [bankruptcy court's] perspective" as of the date the break-up fee is denied). NextEra also suggests that its appeal implicates a circuit split between the Third Circuit's section 503(b) standard for break-up fees under *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999), and the Second Circuit's business judgment standard for break-up fees. But NextEra did not appeal the *O'Brien* standard of review. To the contrary, NextEra acknowledged that *O'Brien* sets forth the proper standard for evaluating break-up fees and did not even suggest that the Second Circuit's business judgment standard should be applied. *See Appellant's Opening Brief*, No. 18-1109, at 51 (3d Cir. Feb. 12, 2018) (agreeing with the *O'Brien* standard under which "a termination fee is permissible if it satisfies the general administrative expense requirements set forth in Bankruptcy Code section 503(b)").

## IV. ANY CONTINUATION OF THE NEE PLAN RESERVE SHOULD BE CONDITIONED UPON NEXTERA OBTAINING A STAY PENDING APPEAL OR PROVIDING A BOND OR UNDERTAKING

12. The PAB supports releasing the NEE Plan Reserve, but only after the Third Circuit issues a ruling denying NextEra's petition for rehearing. As set forth above, Movants maintain that the Third Circuit's ruling establishes good cause for the PAB to immediately release and distribute the full amount of the NEE Plan Reserve. At the very least, the ruling justifies this Court conditioning any continuation of the NEE Plan Reserve on NextEra (a) seeking and obtaining a stay pending appeal from the Third Circuit (or, with respect to the NEE Reimbursement Claim, this Court or the District Court) or (b) posting an appropriate bond or undertaking to compensate creditors for any further delay in Plan distributions.

13. It cannot be disputed that unsecured creditors have been deprived of their right under the Plan to receive cash distributions on or "as soon as reasonably practicable" after the Plan Effective Date. *See* Plan [D.I. 12653] Arts. I.C. and VI.A. The NEE Plan Reserve has served as a functional equivalent of a stay of Plan distributions to unsecured creditors while NextEra appeals the Reconsideration Order. Accordingly, NextEra has thus far been the beneficiary of a free ride for its appeal while creditors bear the cost associated with the delays in distributions. *See In re Motors Liquidation Co.*, 539 B.R. 676, 686 (Bankr. S.D.N.Y. 2015) ("There can be no serious dispute that [creditors] will be prejudiced by a delay in [plan] distributions.").

14. Indeed, Mr. Horton, the sole member of the PAB, quantified the injury to creditors caused by the delay in Plan distributions and explained his calculation to the Court at a July 20, 2018 hearing in connection with the allocation dispute. Specifically, Mr. Horton testified that, based on the $590 million currently being held by the PAB and the differential

between the 1.64% rate of return that such funds are currently generating in a money market account and a "somewhat conservative" estimate of the rate of return creditors could otherwise earn if they received Plan distributions and reinvested the cash, creditors are losing out on approximately "$59 million a year" or approximately "$5 million a month."  *See* July 20, 2018 Hr'g Tr. at 33:25–36:16 (explaining that $59 million per year "is the opportunity cost of the funds, not having access to those dollars, to redeploy into other investments.  And so it's an opportunity cost to the beneficiaries.  So, it's a loss of value to them for us continuing to hold these dollars in trust.").

15.    NextEra's free ride should end now.  Unless NextEra obtains a stay pending appeal, any continuation of the NEE Plan Reserve should at least be conditioned on NextEra posting an appropriate bond or undertaking to compensate EFH and EFIH unsecured creditors for any further delays in Plan distributions as NextEra pursues its remaining appellate rights.  *See In re Tribune Co.*, 476 B.R. 843, 864 (Bankr. D. Del. 2012), *aff'd as modified*, No. 12-CV-1072 GMS, 2014 WL 2797042 (D. Del. June 18, 2014), *aff'd in part, rev'd in part sub nom. In re Tribune Media Co.*, 799 F.3d 272 (3d Cir. 2015) ("If EGI and WTC want to prevent plan distributions while their appeals are pending, they may seek a stay pending appeal pursuant to Fed. R. Bankr. P. 8005"); *see also In re W.R. Grace & Co.*, 475 B.R. 34, 209 (D. Del. 2012) ("[I]f the movant seeks imposition of a stay without a bond, the applicant has the burden of demonstrating why a court should deviate from the ordinary full security requirement.").  In the event this Court is inclined to allow the PAB to continue holding any portion of the NEE Plan Reserve, Movants request that the Court promptly schedule further proceedings to determine the appropriate amount of such bond or other form of undertaking.

## **CONCLUSION**

For the reasons set forth herein and in the Motion, Movants respectfully request that the Court enter an order granting the relief requested in the Motion and granting Movants such other and further relief as is just and proper.

Wilmington, Delaware
Date: October 18, 2018

                        **BAYARD, P.A.**

                        */s/ Erin R. Fay*_____
                        Scott D. Cousins (No. 3079)
                        Erin R. Fay (No. 5268)
                        600 N. King Street, Suite 400
                        Wilmington, DE 19801
                        Telephone: (302) 655-5000
                        Facsimile: (302) 658-6395
                        scousins@bayardlaw.com
                        efay@bayardlaw.com

                            –and–

                        **ROPES & GRAY LLP**
                        Gregg M. Galardi
                        Daniel G. Egan
                        1211 Avenue of the Americas
                        New York, NY 10036-8704
                        Telephone: (212) 596-9000
                        Facsimile:  (212) 596-9090
                        Gregg.Galardi@ropesgray.com
                        Daniel.Egan@ropesgray.com

                        **ROPES & GRAY LLP**
                        Matthew L. McGinnis
                        Prudential Tower
                        800 Boylston Street
                        Boston, MA 02199-3600
                        Telephone: (617) 951-7000
                        Facsimile: (617) 951-7050
                        Matthew.McGinnis@ropesgray.com

                        *Counsel for Elliott and UMB Bank, N.A., as Trustee*