Page 1

1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3   _____
                                           )
4   In re:                                 )  Chapter 11
                                           )
5   ENERGY FUTURE HOLDINGS CORP., et al., )  No. 14-10979 (CSS)
                                           )
6       Debtors.                           )
    _____ )

7

8

9                           United States Bankruptcy Court

10                          824 North Market Street

11                          Wilmington, Delaware

12

13                          October 19, 2018

14                          1:05 PM

15

16

17   B E F O R E :

18   HON CHRISTOPHER S. SONTCHI

19   U.S. BANKRUPTCY JUDGE

20

21

22

23

24

25   ECR OPERATOR:  LESLIE MURIN

1  HEARING re Joint Motion of UMB Bank, N.A., as Indenture

2  Trustee, and Elliott to Direct the EFH Plan Administrator

3  Board to Release and Distribute all Funds in the NEE Plan

4  Reserve [D.I. 13497; filed September 19, 2018]

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Nicole Yawn

```
 1   A P P E A R A N C E S :

 2   ROPES & GRAY

 3        Attorney for Elliott & UMB

 4        919 North Market Street

 5        17th Floor

 6        Wilmington, DE 19801

 7

 8   BY:  GREGG GALARDI, ESQ.

 9

10   NORTON ROSE FULBRIGHT

11        Attorneys for NextEra

12        1301 Avenue of the Americas

13        New York, NY  10019-6022

14

15   BY:  HOWARD SEIFE, ESQ.

16        ERIC DAUCHER, ESQ.

17

18   KIRKLAND & ELLIS LLP

19        Attorney for the Plan Administrator

20        555 California Street

21        San Francisco, CA  94104

22

23   BY:  MARK MCKANE, ESQ.

24        APARNA YENAMANDRA, ESQ. (TELEPHONICALLY)

25
```

1    NIXON PEABODY

2         Attorney for American Stock Transfer

3         100 Summer Street

4         Boston, MA  02110-1000

5

6    BY:  MORGAN NIGHAN, ESQ.

7

8    RICHARDS, LAYTON & FINGER, P.A.

9         Attorney for Plan Administrator

10        920 North King Street

11        Wilmington, DE  19801

12

13   BY:  JASON M. MADRON, ESQ.

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Please be seated.  Welcome to my

4     refrigerator.  I apologize.  I don't know.  I apologize.  I

5     know it's chilly.

6              Mr. Galardi, good morning, or good afternoon.

7              MR. GALARDI:  Good morning, Your Honor.

8              THE COURT:  Excuse me.

9              MR. GALARDI:  I think the only motion on is our

10    motion, so that's why I stood to the podium first.  For the

11    record, Gregg Galardi, of Rope & Gray, on behalf of the

12    movants, UMB and Elliott.  With respect to our motion to

13    disburse funds that are currently being held -- to release

14    and disburse funds that are currently being held by the PAB

15    for the disallowed breakup fee.

16              Your Honor, we filed the motion and then agreed to

17    have the hearing at a later time, hoping that the Third

18    Circuit had ruled on the en banc.  But, Your Honor, our

19    motion provided that, even if the Third Circuit had not

20    ruled by today, we believe the funds should be released,

21    and, Your Honor, to just go through -- and I think the facts

22    are all uncontroverted, so this is oral argument, but Your

23    Honor will recall that Your Honor approved this $275 million

24    reserve, essentially citing 2 grounds.  One was the debtor's

25    discretion to do it at the time without motion at the

1   confirmation hearing and, two, to protect the integrity of

2   the judicial process.  Elliott did, in fact, appeal that,

3   saying it was not necessary.  Your Honor ruled it was not

4   necessary, under the Bankruptcy Code, but nonetheless, to

5   protect the integrity and the debtor's discretion, you

6   allowed those funds to go -- to be set aside.

7           Your Honor, if I may hand up -- and I think people

8   have, but I Have extra copies.  I'd like to hand up the

9   confirmation order, if I may, just because I'm going to draw

10  attention to a few of the paragraphs.

11          THE COURT:  Okay.

12          MR. GALARDI:  Thank you.

13          THE COURT:  Thank you.

14      (Pause)

15          MR. GALARDI:  I try to -- I try to keep the paper

16  down.

17          Your Honor, and then, in paragraph 150 to 156, you

18  set out various procedures, and the reason that I want to

19  start there is because, you know, it was February 27th,

20  nearly 8 months ago, and interest -- nobody has been paid

21  interest.  No funds have been distributed, and at that time,

22  if you look at various paragraphs, one of the concepts was

23  there would be an allocation motion and that that would be

24  resolved within 40 days.  That's obviously taken longer.

25  I'm not saying anything about Your Honor having it under

1    advisement, but that was the fact.

2            Then there was the dispute in paragraph 154 that

3    said the MME plan reserve amount may be modified for good

4    cause shown with a series of paragraphs, and I do want to

5    note, because NextEra has mentioned the Supreme Court review

6    -- if you look at the footnote, the footnote does not say

7    anything about Supreme Court review.  It says, "The

8    appellate proceedings in connection with the reconsideration

9    order docketed," and goes on and says, "The briefing

10   schedule and the adversary complaint."  But more

11   importantly, I want to  -- and I think it'll be very

12   critical for where we go today, especially given the PAB's

13   position -- is paragraph 156, again, uses that for good

14   cause shown, and it allows this Court to reduce or eliminate

15   or seek -- parties to seek to do it or seek other relief.

16           Your Honor, we think the facts, as they stand now,

17   constitute good cause.  First, the reserve was put forth in

18   the debtor's discretion, in the first place.  So if the PAB

19   decides to release it, we'd argue that that was sufficient

20   good cause.

21           Two, Your Court -- this Court had already denied a

22   stay pending appeal from NextEra, and NextEra has not sought

23   any stay pending appeal from any Court other than this

24   Court.

25           Third, there is a big fact that has changed.

1        Your Honor was affirmed, although it was a two to

2    one decision.

3        Fourth, the rehearing en banc has not been denied,

4    it's not been granted.

5        Fifth, there's no request for the appellate -- for

6    the appellees in that proceeding to brief the Third Circuit.

7    Time may linger on.

8        Fifth, the plan is effective.  The plan does

9    require distributions as soon as practicable.

10        Five, NextEra has -- six I'm probably up to --

11    admitted that en banc and Supreme Court review -- now, they

12    did this before the split decision -- admitted that the en

13    banc and Supreme Court review unlikely.

14        And, six, quite frankly, with respect to the

15    judicial integrity, there is an avenue for which NextEra has

16    not yet proceeded for NextEra to proceed.  They can seek a

17    stay pending appeal.  They can seek a stay pending appeal,

18    if Your Honor decides to distribute the funds.

19        So, Your Honor, we believe that, even in the

20    absence of a ruling on the stay -- on the en banc

21    proceeding, this Court has good cause shown, because Your

22    Honor has been affirmed.  There is no stay.  So we would

23    first argue that good cause exists.

24        But even if Your Honor was concerned and we went

25    to the PAB's position, if Your Honor says today, let's

1    release the funds, we would agree to an order that doesn't

2    go effective for 14 days.  Let them seek a stay pending

3    appeal.  Let them go back to the Court that they think,

4    which we think is speculation, that one judge has said, "We

5    want an en banc review."  They have appellate review.

6            Your Honor, this has served as a stay for over

7    eight months.  What has been held up, Your Honor, during

8    those eight months is the distribution -- again, rough

9    numbers.  $206 million dollars available to unsecured

10   creditors at EFH, $275 million of funds available to

11   creditors at EFIH.  So that's 481, by my calculation.

12           We put in -- and Mr. Horton was here and

13   testified.  Again, not saying that you would accept this,

14   but at the same time, a net 10 percent interest rate.

15   That's almost $40 million today that creditors have either

16   been deprived the ability to get or could have gotten by way

17   of their own return.

18           So, Your Honor, we would suggest now is the time

19   to at least, well, release the funds.  If not release the

20   funds, modify the reserve to at least have proceedings on

21   interest rates from September 13th, when the Third Circuit

22   issued its opinion, and if not, at least modify it to let

23   the reserve go out in 14 days or when this order becomes

24   final, such that NextEra has the avenue to seek a stay

25   pending appeal of this order or in the Third Circuit or any

1   place else, but let it put up the money.  Your Honor, we're

2   in this situation partially because they took all those

3   appeals and cost the estate $50 million per month that had

4   to be cut off.  We can't allow that to happen again, so we

5   would ask Your Honor to grant our motion.

6           THE COURT:  Thank you, Mr. Galardi.

7           Mr. McKane, good afternoon.

8           MR. MCKANE:  Good afternoon, Your Honor, and just

9   for the record, I'm here with Mr. Madron, from Richards

10  Layton, and I'm joined telephonically by my partner, Aparna

11  Yenamandra, and she regrets not being here today, but I

12  think for the health of everyone in the -- in the courtroom,

13  we're better off.

14          THE COURT:  Okay.

15          MR. MCKANE:  She's very ill.

16          THE COURT:  I'm very sorry to -- okay, I'm glad

17  that's what you were eluding to.

18          MR. MCKANE:  Yes, yes.

19      (Laughter)

20          MR. MCKANE:  Sorry, if it wasn't obvious.

21          THE COURT:  I thought that was like a --

22          MR. MCKANE:  We love Aparna, but unfortunately,

23  she's --

24          THE COURT:  well, I wish --

25          MR. MCKANE:  -- became ill, and yeah, because of

1    that, --

2            THE COURT:  All right.  Well, I wish her all the

3    best.  My son just got over whatever is going around, so I

4    hope you're well as soon as possible.

5            MR. MCKANE:  Thank you, Your Honor.

6            Your Honor, I think our differences with Elliott

7    are much of just in degree not in kind, as we support their

8    release of, you know, -- when we -- when the debtor's rose

9    in February, they couldn't legislate all the scenarios that

10   could happen.  We identified a scenario, I think, that at

11   that time, when we thought we'd revised to good cause shown,

12   I think the PAB agrees and supports that scenario, which is,

13   upon the denial of rehearing, there's no doubt in our minds

14   that would be good cause shown.  Ultimately, Your Honor's

15   going to have to make that decision, and that's why what we

16   proposed was a simple modification of the order submitted by

17   Elliott with a condition subsequent that would be effective,

18   when that happens.

19           It seems that, you know, people are talking about

20   a matter of days.  The opposition brief from NextEra

21   suggested that, by no later than November 9th, we will know

22   where we stand on that.  I think Elliott, you know, raises a

23   fair point that we all know the internal procedures.  We can

24   all read the guidelines of the Third Circuit, but we can't

25   get visibility into what actually is occurring.  And could

1    it be procedural?  Could it be, you know, a logistical

2    issue, or could it be something more?

3             But whatever it is, whether it's November 9th,

4    10th, or some time around then, we will know.  Ultimately,

5    the PAB wants to release the funds.  So, you know, to the

6    extent that Your Honor is prepared to move forward, we think

7    entering an order with that, you know, slight condition

8    subsequent would avoid any improper or, you know, suggestion

9    or inference that anyone could draw about any jurisdictional

10   issues, and that's the other thing I wanted to cover that

11   Mr. Galardi didn't cover today, although I think he touched

12   on these issues in his written reply that came in yesterday.

13            The Court has jurisdiction to address this issue

14   of the plan and the confirmation order have not been stayed.

15   They're in full force and effect.  Under the plan, the Court

16   had broad jurisdiction on 19 separate enumerated issues in a

17   material catch-all as well.  That's Article 11, and it can't

18   be the case that the Elliott creditors' appeal of the

19   confirmation order prevents Your Honor from determining

20   whether good cause exists, because, at the time we were

21   dealing with what would be the standard for a review,

22   Elliott had already made very clear that they were going to

23   appeal the confirmation order, because they thought that

24   they should be entitled to interest on the reserve.

25            So what would be the purpose of having good cause

1    shown and the ability to revisit these issues for that

2    standard, you know, if there were some suggestion that there

3    could be appeal that that -- I just think that, you know,

4    when you take this to its logical extreme, that can't be the

5    case.

6            And, Your Honor, not only do you have

7    jurisdiction, the issue is right, and this is the issue I

8    think Mr. Galardi also eluded to, which is we do -- the

9    issue is ripe for an assessment of the reserve, even though

10   the allocation decision has not been issued.  We are sitting

11   on a double reserve.  You know, if Your Honor were to

12   release, you know, the reserve, the PAB would be in a

13   position to make a distribution, including the first

14   distribution to EFH creditors, and therefore, given that you

15   have jurisdiction, the issue is ripe.  We'd be able to act

16   upon it.  We ask that Your Honor enter an order.

17           THE COURT:  Thank you, Mr. McKane.

18           MR. MCKANE:  Thank you.

19           THE COURT:  Mr. Seife?

20           MR. SEIFE:  Thank you, Your Honor.  Howard Seife,

21   for NextEra Energy.  I think I'm also coming out of whatever

22   was going around, as a cold, so hopefully, my voice will

23   come through clearly, and I don't I think I'm in danger of

24   getting anyone else ill at this point.

25           At the confirmation hearing of the Semper plan,

1    Your Honor noted that the reserve was necessary and

2    important to preserve the integrity of the judicial process.

3    I think that remains the case.  We have Your Honor's ruling

4    on a motion, a petition, for a rehearing en banc.  We don't

5    know what's going on at the Third Circuit.

6              We do know we are beyond the normal timeframe set

7    out in the rules of the Third Circuit.  We do know that

8    there was a very strong dissent, and it was a split decision

9    by the panel, and Judge Rendell (ph) was very specific on

10   her views as to how the majority ruled.  So it is certainly,

11   by no means, a frivolous petition before the Third Circuit.

12   These are serious issues, and there is a good deal of money

13   at stake.

14             Should the reserve be released, it's meaningfully

15   going to limit the ability of NextEra, should it prevail at

16   the Third Circuit, or on cert. to obtain the relief and the

17   money which it would be entitled to.  So we think there's

18   strong grounds to continue the reserve.  Irrespective of

19   that, there is a gaping issue, and that is whether this

20   Court's been divested of jurisdiction to deal with this

21   motion, and I think it's worth looking at how the courts

22   have defined divestiture, and we cite the G.I. Holdings

23   Case, in our brief, and it's to prevent confusion and

24   inefficiency, which would, of necessity, result were two

25   Court to be considering the same issues simultaneously.

1           The issue which has been put forward by this

2   motion is whether there's good cause to release the reserve.

3   However, that standard is on appeal.  Elliott has appealed

4   and said, "The standard shouldn't be good cause.  It should

5   be the discretion of the debtors," and they've repeated that

6   referring today in court.  That issue has yet to be dealt

7   with by the District Court.  It's been fully briefed, and I

8   assume we'll have argument before too long.

9           But it would create the risk of inconsistent

10  rulings to have that appeal go forward to determine whether

11  good cause is the right standard or whether, as we suggested

12  in our briefs to the District, that the standard should be

13  Rule 60(d).  If the District Court adopts our position, that

14  would be a very different standard for Your Honor to apply,

15  and that's exactly what is being asked for today.

16          So it is those situations precisely where the

17  courts have recognized the Divestiture Rule.  This is now

18  before the District Court, and the relief that Elliott is

19  seeking they chose to raise to the District Court level on

20  appeal.  If they had just appealed the issue of interest on

21  the reserve, well, that might have been a different story,

22  because that's not necessarily what we're hearing today, but

23  they chose to take to the District Court the standard for

24  Your Honor to apply for releasing the funds.

25          Until that's resolved, hopefully, this Court can

1    go forward.  This is a dilemma of Elliott's own making.  The

2    good faith -- the good cause standard was much discussed in

3    front of Your Honor.  It was not something NextEra was

4    particularly enamored with, but we agreed to go along with

5    the debtor, and Elliott could have chose to live with that,

6    and then, they've be in a perfect position to come before

7    Your Honor today, but they didn't.  They chose to appeal,

8    and they need to be held to their decision, their tactical

9    move, to take that up on appeal.

10          There is a second element of their appeal, which

11   is the suggestion that Your Honor was incorrect in not

12   conditioning the reserve under the appropriate bond.  Your

13   Honor rejected that.  In their motion, Elliott is asking

14   Your Honor to reconsider that decision.  That's one of their

15   issues on appeal.

16          Their issue before the District Court is Your

17   Honor erred in not requiring a bond.  So again, it

18   highlights the fact that these discrete issues -- we're not

19   suggesting Your Honor can't enforce other elements of the

20   confirmation order, as Elliott suggests.  It is not a broad

21   brush.  It is very discrete that the issues before you today

22   are very much impacted by what's pending before the District

23   Court.

24          So I would suggest Elliott needs to wait

25   resolution of the appeal, so we know what standard Your

1    Honor should apply to the release of those funds.  That was

2    their decision, and that's how they chose to proceed.  In

3    any event, should Your Honor decide to go forward on the

4    good cause basis, the standard which is up on appeal, we

5    don't think good cause does exist to release the funds.  The

6    same issues which were before Your Court when you ordered

7    the reserve pertain today.

8              We have the very significant petition before the

9    Court for a rehearing on bond.  It seems to be taken

10   seriously, because we have not yet received a decision on

11   it.

12             THE COURT:  Well, that's speculation.

13             MR. SEIFE:  That's speculation, Your Honor.

14             THE COURT:  Just everyone's speculating.

15             MR. SEIFE:  Every --

16             THE COURT:  If we're talking about what the Third

17   Circuit is doing.

18             MR. SEIFE:  Absolutely, what we know is we're

19   beyond the standard time, which is set out --

20             THE COURT:  Right.

21             MR. SEIFE:  -- in the rules.  So we don't know,

22   but we do --

23             THE COURT:  I also know that every Third Circuit

24   judge has been across the street at the Hotel DuPont for a

25   week.  So the Third Circuit Judicial Conference.  So maybe

1     not surprising work isn't getting done at the home office.

2     I don't know.

3            MR. SEIFE:  Oh, that's probably as good an

4     explanation as any.  But in any event, it is not a frivolous

5     motion.  We have a very strong dissent, and I think it's

6     only fair that we wait and see the resolution on that, and,

7     in fact, if our petition is denied, we be given the

8     opportunity to go before the Supreme Court on cert.  We're

9     willing to move forward expeditiously, well before the 90

10    days, which is under the rules for seeking an application.

11           There are serious issues here of what standards

12    the Courts should use in granting termination fees, whether

13    it's administrative 503(b) standards or whether it's

14    business judgment.  There is quite a disparity of use among

15    the Courts, and it is an issue which would certainly benefit

16    by uniform standard from the Supreme Court.  Again, it would

17    not be a frivolous cert. petition, but one which NextEra

18    should be given the opportunity to pursue, should it decide

19    to do so, because prevailing at any point would entitle

20    NextEra, subject to further proceedings in this Court, to

21    get a determination fee.

22           On the contrary, should the funds be released, as

23    Your Honor has recognized, it'll be a difficult process to

24    try to claw those monies back, if not impossible.  So again,

25    the judicial process needs to be honored and protected, as

1    does NextEra's rights to complete its judicial process.

2            I would also note, in our papers, that should this

3    Court, though we don't think it should, release the $275

4    million, we have requested that 60 million, at a minimum, be

5    held back for the benefit of the application for the

6    administrative claim.  Your Honor denied that motion.  That

7    is also on appeal to the District Court.  Interestingly, the

8    Third Circuit majority opinion did recognize that the trial

9    Court must take appropriate steps, so that the parties are

10   not prejudiced by reliance on the prior ruling and pointed

11   to that very same application for an administrative expense.

12           At the time the Court -- the Third Circuit was

13   unaware that that application had been denied, but

14   nevertheless, they recognized and seemed to put some

15   emphasis on that as a factor in its decision, and whether

16   that might -- the fact that that application was denied

17   might spur the panel on to reconsider.  We don't know, but

18   again, they were factually wrong, as to the availability of

19   that application as being a means so that there was no

20   prejudice by reliance.  So we would suggest, given the

21   language in the Third Circuit, that, at a minimum, the $60

22   million be set aside to protect NextEra's appellate rights

23   on that application.

24           So, Your Honor, all in all, we think the prudent

25   thing to do, given the pending District Court appeal and

1    that the Divestiture Rule applies, that this motion be put

2    off until the District Court has ruled and we see what

3    standard should be applied for releasing those funds,

4    whether it's, as Elliott suggests, discretion of the debtor,

5    whether it's, as is in the current order, good cause shown,

6    or whether, as we've suggested to the District Court, 60(b).

7    Thank you, Your Honor.

8              THE COURT:  Thank you.

9         (Pause)

10             MR. GALARDI:  Your Honor, I'll be brief.  Let's

11   take, I think, the order of the issues.

12             First, Your Honor, with respect to good cause and

13   Elliott's reduced standard of discretion or business

14   judgment, we did take an appeal on that.  There has been no

15   appeal by NextEra of Your Honor's decision on good cause.

16   They did not raise, on appeal, a challenge to good cause and

17   say Your Honor was incorrect about good cause.  They have

18   not raised an appeal saying 60(b).  So I don't believe

19   you're divested of jurisdiction on that basis.

20             Your Honor, we are living with the basis which

21   Your Honor ruled on.  We can go and challenge for a lesser

22   standard, and that doesn't divest Your Honor of

23   jurisdiction.

24             On the second aspect, Your Honor, we are not

25   seeking to revisit Your Honor's decision that we don't get

1    interest from -- well, first of all, let's go back to where

2    we didn't get interest.  Your Honor remembers that it was

3    untimely for us to put on an expert in the confirmation

4    hearing.  We then got to the confirmation hearing, at which

5    point, the debtors made the request to put in the reserve.

6           Ours was on if there's a reserve.  So there is a

7    timing issue, but even on that issue, as Your Honor and I

8    said specifically when I got up here, we're not seeking

9    reconsideration of the confirmation order.  We're not

10   seeking reconsideration of that issue on interest.

11          What we are saying is, because there has been a

12   change, the Court has ruled on September 13th that, under

13   your confirmation order, that can constitute good cause to

14   modify or provide other relief.  We are asking Your Honor to

15   say, if Your Honor is unwilling to release the reserve, at

16   least consider, at that point, the potential for a recovery

17   for creditors, because Your Honor is still imposing a lost

18   opportunity cost on those creditors.  That's not the issue

19   that's on appeal.

20          Yes, we have an issue on appeal that we shouldn't

21   have had this issue in the first place, which also goes to

22   their argument of mootness.  This appeal does not moot that

23   issue.  We will continue to pursue the appeal that the

24   reserve should not have been established, in the first

25   instance.

1          Now, let's go to the Supreme Court argument on

2     cert. that they're making.  Your Honor, they did not

3     challenge O'Brien (ph) in this Court.  They did not

4     challenge O'Brien as the standard in the Third Circuit.

5     They're trying to create a circuit split.  That'll be

6     something later, but that can't be given any countenance

7     now.

8          Mr. Seife is also a little bit quick about saying

9     well, we asked for the 60 million in reserve, and now,

10    that's on appeal.  That is not on appeal, Your Honor.  The

11    60 million request was at confirmation, but, Your Honor,

12    we've cited the language.  You said it was not required.

13    They did not appeal that confirmation order.

14         What they have appealed is Your Honor's subsequent

15    decision to disallow that claim.  Again, we think that's a

16    final ruling from this Court that says, if Your Honor

17    releases the reserve, there is no obligation.  You've

18    already made your argument to this Court the 60 -- it should

19    only be reduced $215 million, and Your Honor denied that.

20         Indeed, when Your Honor goes back to the

21    procedures and the -- I think it's paragraph 154 or 156 --

22    and I talked about footnote 6 in that order.  It says it's

23    going to be released in full on a final judgment, and it was

24    only the reconsideration proceedings.  It was not on the

25    claim that, at that point, was provisionally allowed or

1    allowed because we hadn't objected, or Your Honor queried

2    with an administrative claim, is it allowed or not, but they

3    made the request.  It was denied, and nothing in that

4    allowed them to come back to this Court.

5              So, Your Honor, we would again say good cause

6    exists for releasing the entire 275.  Good cause exists, if

7    you're not going to release it, to modify the provisions to

8    applied interest, and again, it's all speculation whether

9    it's administrative, whether it's because the Fifth Circuit

10   is -- Third Circuit is meeting across the street or

11   otherwise.  We don't know if it's going to be November 9th.

12   We don't know the period of time.

13             At the very least, if Your Honor determines to

14   continue the reserve, pending an en banc decision or Supreme

15   Court decision, then, at least, it should be without

16   prejudice to the creditors' rights to seek interest and

17   damages for the continued holding of that reserve from the

18   date one fact, significant fact, change, Your Honor was

19   affirmed.  Thank you.

20             THE COURT:  Thank you, Mr. Galardi.

21             Mr. McKane?

22             MR. MCKANE:  Yes, Your Honor, I'll be extremely

23   brief.  Just two observational points, and, you know, thanks

24   to Mr. Galardi for bringing the order.

25             What Mr. Seife is doing by arguing that the

1   reserve couldn't be released until after this process has

2   run its course, all the way up to the Supreme Court, is

3   essentially trying to restructure the order.  The order was

4   crafted -- and I think Mr. Seife actually recognized this in

5   his brief, in his opposition papers that he filed.  It was

6   fourth -- you know, it was a Final Order, capital F, capital

7   O, provided, however, it could be revisited for good cause

8   shown.

9          If good cause shown requires to go all the way

10  through the appellate chain, all the way up to the Supreme

11  Court, well, then we'd have a final order, and we wouldn't

12  have this good cause opportunity prior to getting to a final

13  order.  That can't be -- it can't be that you have to run

14  the entire appellate chain to show good cause, because

15  ultimately, that would not be consistent with the construct

16  that was put into the confirmation order.

17         The other point that I wanted to define for Your

18  Honor is with regards to the $60 million administrative

19  claim.  I think Mr. Seife goes too far with page 35 of the

20  slip (ph) opinion by suggesting somehow that the Third

21  Circuit was relying on Your Honor granting, in some way, the

22  administrative claim.  I don't think that's the suggestion

23  at all, and if you go back and look at the opinion, it's not

24  there.

25         Your Honor has afforded the backup claim, the

1    administrative claim, all the due process that it is

2    entitled to by evaluating whether it was appropriate, under

3    Rule 503, whether it was allowed under the contract or

4    otherwise, and he has whatever rights he has to follow that

5    appellate process through, but that doesn't impact the

6    consideration for the day.  Thank you.

7              THE COURT:  Thank you, Mr. McKane.

8              Mr. Seife, I'll give you the last word.

9              MR. SEIFE:  Thank you, Your Honor, and I'll be

10   brief as well, Your Honor, just to hit several points.  The

11   first is it was the decision of Elliott not to accept Your

12   Honor's confirmation order, the provision that established

13   the standard which we are litigating today.  They appealed

14   the aspect of the order which said the funds could be

15   released for good cause shown, and they put that issue in

16   play before the District Court.

17             With the issue in play, we responded, in our reply

18   -- in our appellate brief -- and it's right at paragraph 45,

19   page 45, and we said, quote, "To the extent the Court is

20   inclined to overturn the good cause standard, it could and

21   should substitute the Rule 60(b) standard."  So this is an

22   issue which is before the District Court, and it will

23   determine what standard Your Honor should use to release

24   those funds.  So I think the Divestiture Rule is small on

25   point.

1           The second is the suggestion we didn't challenge

2     the $60 million what Elliott characterized as a ruling of

3     Your Honor.  I think, if one looks at the transcript of the

4     hearing, it was clear that the suggestion of 60 million be

5     put aside for that admin. claim was in the alternative and

6     that the 275 fully covered any ability to get an

7     administrative claim, and Your Honor said, on page 233, line

8     24, quote, "Now, it's in the alternative.  As it's been said

9     several times, and I appreciate that.  We can deal with that

10    at a future time."

11          So we certainly have not waived our right to seek

12    a set-aside of 60 million.  There was no order to be

13    appealed from, so I think Elliott is not on base on that

14    point, and I think this Court should take under

15    consideration what the Third Circuit said.  Some

16    consideration must be given to protecting the prejudice to

17    parties like NextEra that relied on this Court's order.

18          That Court recognition could come in a variety of

19    ways.  It could be in continuing this reserve until the

20    appellate process is exhausted, and it could be applied in

21    reserving the 60 million, should it come down to that.

22          THE COURT:  Thank you, Mr. Seife.

23          MR. SEIFE:  Thank you, Your Honor.

24    (Pause)

25          MS. NIGHAN:  I'll be quite brief, Your Honor.

1    Morgan Nighan, from Nixon Peabody, on behalf of American

2    Stock Transfer, the EFH indenture trustee.  We support the

3    release requested by the movants today.

4                THE COURT:  Thank you.

5                MS. NIGHAN:  Thank you.

6                THE COURT:  All right, thank you very much,

7    everybody.  Let me deal with the jurisdiction point right

8    out of the gate, because obviously, if I don't have

9    jurisdiction over the dispute, nothing else I say matters,

10   and it would be inappropriate for me to say anything else.

11   I do believe that I Have jurisdiction, notwithstanding the

12   pending appeal of the confirmation order.  The potential

13   irony of denying Elliott's motion, based on Elliott's

14   appeal, is not lost on me.  It appeals -- somewhat appeals

15   -- to my sense of humor, but I wouldn't do that.

16                I think the important point is that I believe it

17   would be outside my jurisdiction to revisit the standard

18   that was established in the confirmation order, where I just

19   say you know what?  Changed my mind.  It's not for good

20   cause.  It's Rule 50, or it's Rule 60, or it's discussion.

21                That's beyond my ability to fashion relief today.

22   That would best and rests in the District Court, but it is

23   not beyond my jurisdiction to apply the standard and

24   execution of the confirmation order that has not been

25   stayed.  So I'm applying my rule, a rule that hasn't been

1   stayed, to go forward with whether to grant the motion or

2   not.

3          I don't think that's beyond my jurisdiction.  I

4   think it's an important and critical distinction, and I

5   think it would actually promote inefficiencies that the

6   entire Rule of Divestiture jurisdiction is denied is

7   designed to avoid, which is it would make it impossible for

8   this Court to revisit or to order anything to do with the

9   reserve until the appeal of the confirmation order

10  completely worked its way through the process, which could

11  take years, and that doesn't seem to be at all efficient.

12  So I think all I'm doing is applying a standard that I

13  established in an order that is on appeal, but the order is

14  not stayed.  Were I to revisit the standard, I think that

15  would be problematic, but simply to apply the standards

16  that's been established I do not believe I am divested of

17  jurisdiction from doing that.

18          Now, a key point, of course, in my ruling in

19  February was both to defer to the discretion of the

20  debtor/trustee, but also, as much or may be even more

21  importantly, to preserve the integrity of the judicial

22  process with regard to the appeal that, at that time, was

23  currently pending before the Third Circuit, of this Court's

24  motion for reconsideration on the termination fee -- order

25  on reconsideration on the termination fee and actually,

1    remains pending, and I think the factors that weigh into

2    wanting to respect that process continue to exist.

3    Obviously, there was a two to one decision affirming my

4    ruling.  Certainly satisfying, although it's a heck of a

5    dissent, so it's only sort of satisfying, but that doesn't

6    fully resolve the appeal, and the timely motion for

7    rehearing has been submitted, and it's pending before the

8    Third Circuit.

9            There are three things that could happen at this

10   point.  One, the Circuit could deny the motion for

11   reconsideration.  Two, it could grant it -- not

12   reconsideration.  Rehearing.  Excuse me.  Could deny the

13   motion for rehearing.

14           Two, it could grant the motion for rehearing.

15           Or, three, it could actually ask for briefing from

16   the other side on the hearing, and obviously, if the

17   rehearing is granted or briefing is granted, things are

18   really back up and running, and there's a live issue that we

19   need to respect.  So I don't think it would be appropriate

20   and I'm not comfortable entering an order today that would

21   really undercut the legs out from under the Third Circuit to

22   do what their constitutional mandate is, which is to decide

23   the cases when they're put in front of them, put in front of

24   the Circuit.

25           But what I think that -- and what I'm going to

1    rule is -- I think it's -- I'm going to make some rulings

2    and set up a procedure that will allow for a very timely

3    reduction of the reserve as soon as that -- if a decision

4    denying the motion for rehearing is granted.  We'll get to

5    that in a second.

6            But then, the issue is going to be okay, so the

7    rehearing is denied, and then, of course, file orders

8    entered -- or an order is entered by the Third Circuit, and

9    NextEra has 90 days to file a cert. petition.  Respecting

10   the judicial process was never meant to be, in my mind, the

11   end-all, be-all, and I think Mr. McKane made the point quite

12   eloquently when he noted the distinction between a final

13   order and a chain for good cause shown.  I think, based on

14   my understanding of the law and the status and what I've

15   been told, that a petition for a cert. by the Supreme Court

16   is infinitesimally small chance of being granted.

17           Obviously, the Supreme Court gets -- what is it --

18   7 or 8,000 petitions a year, that they hear 80 to 90 cases a

19   year, and, of course, some of those are, you know, frivolous

20   out of the block, and I'm not saying this is frivolous, but

21   I think it's a very difficult case.  As my old partner,

22   Mr. Bowd (ph), would say, I think you're pushing Jell-O

23   uphill on this one, and I have to balance that against the

24   real prejudice to the creditors of the estate, who continue

25   to wait to be paid four-and-a-half years after the case

1    filed and are not receiving interest.

2            So here's what we're going to do.  I'm going to

3    direct that, in the event that the Third Circuit enters an

4    order denying the motion for rehearing, that Elliott may

5    submit an order, under certification of counsel, upon

6    consultation with NextEra and the PAB, that would eliminate

7    the reserve in its entirety, effective 14 days after entry

8    of the order, unless -- effective 14 days from entry of the

9    order, and that 14 days is to allow NextEra to seek a stay

10   from a Court of competent jurisdiction, whether it's the

11   Third Circuit, the District Court, the Supreme Court.  I

12   don't know -- and to give that Court an opportunity to

13   decide the issue with some, you know, relaxation.  Not a

14   lot, but not, you know, five hours' notice.

15           It would also allow the parties to negotiate a

16   security or bond in that 14 days.  If that is successful,

17   great.  If that's unsuccessful and there's a dispute as to

18   what might or might not be adequate security, you can come

19   back to me on basically no notice, and I will chime in or

20   not chime in on what I think is appropriate.

21           I'd also like to -- if the motion is granted or

22   briefing is required, it might make sense to have a status

23   conference, telephonic status conference, to figure out how

24   to proceed, but I can say that, again, I'm not going to, you

25   know, step on the toes of the Third Circuit, with regard to

1    them doing their job, but I'm very much not going to allow

2    the reserve to stay in place for NextEra to pursue an appeal

3    to the Supreme Court, unless the parties agree on some sort

4    of security or a stay is issued by some Court that would

5    prevent me from releasing the funds, and taking it down to

6    zero, really, because I think, you know, as I said, I think

7    that I denied the 60.  I think, frankly, that the appeal of

8    the 60 -- the likelihood of success on the merits is much,

9    much, much less likely than I ever felt the appeal on the

10   275 was.  Frankly, I thought it was going to lose on the

11   275, but I'm not very good at predicting things.

12          So I'm not going to sort of preserve that 60 and

13   allow that process to play out.  You're not even done at the

14   District Court, so I don't know how long that would take.

15   So I'm taking it down to zero, but, of course, you can seek

16   a stay of 60 or a stay of 275 or security for 60 or security

17   for 275.  That's really a question for NextEra, how they

18   decide to proceed.

19          Does that make sense?  Well, I'm not saying

20   whether you agree with it.  Do people understand it, or are

21   there any questions?

22          MR. GALARDI:  Can I ask a question before you --

23   Your Honor, again -- and maybe this is intentional, but I'm

24   sure it is.  There is the if the rehearing is denied.  I got

25   that scenario.

1          I got the if there is a not a rehearing denied and

2     we're asked for briefing or rehearing is granted.  I've got

3     that.  Let's have a status conference.  Here is the issue.

4          Again, we don't know the reason.  I've heard

5     November 9th over here, that that we all know.  I have

6     enough appellate people in my practice that can tell you it

7     could be longer than that for no good reason.

8          What is Your Honor suggesting, with respect to the

9     we don't hear by November 9th or we don't hear by October

10    31st?  Are we being denied in that, and is there going to be

11    an order saying we're denied with respect to that?  Because

12    we are still losing money as that goes on, and that can

13    linger --

14          THE COURT:  Well, I'm not denying your motion.

15    I'm saying I'm going to grant your motion, but you can't

16    submit an order until you get a disposition in your favor

17    from the Third Circuit.

18          MR. GALARDI:  So --

19          THE COURT:  And if you don't get that disposition

20    -- and I don't know when that'll happen.  So to the extent

21    you're upset that it might take 30 to 40 to 60 days, I can't

22    fix that.  Well, I could fix it, but I'm not going to fix

23    it.

24          MR. GALARDI:  So you're not finding -- and I just

25    want to be clear.  You're not finding good cause to modify

1     and start having interest accrue as of today?

2               THE COURT:  Correct.

3               MR. GALARDI:  Thank you.

4               THE COURT:  Mr. Seife?

5               MR. SEIFE:  Your Honor, fully respecting your

6     ruling today, one of the remedies we sought in our objection

7     to the motion was that, in the event Your Honor does release

8     the funds, that we insert a mechanism in the order of

9     distribution to creditors that prevents further injustice,

10    should NextEra prevail, either on cert. or on the appeal in

11    the District Court, and that is to have a mechanism so we

12    can claw back those funds, because otherwise, we'll be left

13    with no remedy.  So I would ask that, if Your Honor thinks

14    that appropriate, we try to agree to language.  If we can't,

15    then we come back before Your Honor with questions.

16              THE COURT:  No, I'm not -- I don't think that is

17    appropriate, and because your remedy is to get a stay, and

18    if you can get a stay, you won't have a problem, and if you

19    can't get a stay, frankly, I think you've had the due

20    process you're entitled to.

21              MR. SEIFE:  Thank you, Your Honor.

22              THE COURT:  You're welcome.

23              Okay?  Anything?

24              All right, thank you very much.  I obviously will

25    await developments.

1           You don't need to let us know, because

2    Ms. Workheiser's (ph) checking hourly to see if an order's

3    been entered, but if you have any issues with the cert. of

4    counsel, if you can't -- and, you know, again, on

5    consultation with the parties, Mr. Galardi, if that becomes

6    a problem, contact chambers.  We'll figure it out, and if

7    the security issue -- if that's something people decide to

8    pursue, if that becomes an issue, contact chambers.  We'll

9    work it out.

10          MR. GALARDI:  And, Your Honor, I don't want to

11   push Your Honor, but I'm going to do it anyway, and you know

12   that.  I just want to -- is there going to be a written

13   order denying the request for interest as of today?  I'd

14   like to have an order to that effect.  I mean, we could

15   submit one, Your Honor, or however you'd like to do it.  I'm

16   not trying to --

17          MR. SEIFE:  Isn't that issue on appeal already?

18          MR. GALARDI:  No, we asked for specific relief

19   with respect to back to September 13th or as of today, and

20   it's been denied.  The issue on appeal is from the day that

21   the original order was entered through this day.

22          If Your Honor is looking is this in the original

23   motion, just nod.  It is in the reply.  If you're asking me

24   for a -- we haven't made the motion.

25          THE COURT:  You haven't made the motion?  I don't

1    remember it.  I did see it in the reply.  You didn't move

2    for it, Mr. Galardi.

3             MR. GALARDI:  Your Honor, --

4             THE COURT:  And it would be improper.  The

5    question is -- the question is moving the -- reducing the

6    reserve for good cause shown.

7             MR. GALARDI:  No.

8             THE COURT:  It's not deciding whether or not you

9    get a second bite at the apple on the interest.

10            MR. GALARDI:  Actually, Your Honor, 156 --

11   paragraph 156 gives us the right to come back for that.  If

12   Your Honor wants a formal motion, then we'll do the formal

13   motion.

14            THE COURT:  Bring a motion.

15            MR. GALARDI:  Thank you.

16            MR. MCKANE:  Thank you, Your Honor.

17            MR. SEIFE:  Thank you, Your Honor.

18       (Whereupon, these proceedings were concluded at 1:53

19   PM)

20

21

22

23

24

25

1                    I N D E X

2

3                          RULINGS

4    DESCRIPTION                                    PAGE

5    Motion on Jurisdiction of                        28

6    Motion on Reserve Staying in Place for Appeal 32

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3    I, Nicole Yawn certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7          Nicole Yawn

8          Nicole          Digitally signed by Nicole Yawn
                            DN: cn=Nicole Yawn, o, ou,
                            email=digital1@veritext.com,
9          Yawn            c=US
                            Date: 2018.10.22 15:17:34 -04'00'
           _____

10

11

           Date:  October 22, 2018

12

13

14

15

16

17

18

19

20

21

22

23

24

25