```
                                              Page 1

 1   UNITED STATES BANKRUPTCY COURT

 2   DISTRICT OF DELAWARE

 3

 4   In re:                        :

 5                                 :    Chapter 11

 6   ENERGY FUTURE HOLDINGS         :    Case No. 14-10979 (CSS)

 7   CORP., et al.,                :

 8         Debtors.               :    (Jointly Administered)

 9   _____:

10

11                              United States Bankruptcy Court

12                              824 North Market Street

13                              Wilmington, Delaware

14                              November 26, 2018

15                              4:00 p.m. - 4:30 p.m.

16

17

18

19

20

21   B E F O R E :

22   HON CHRISTOPHER S. SONTCHI

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO OPERATOR:  LESLIE MURIN
```

1    HEARING re Status Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

1  A P P E A R A N C E S :

2

3  KIRKLAND & ELLIS LLP

4        Attorneys for the PAB

5

6  BY:  APARNA YENAMANDRA (TELEPHONICALLY)

7        MARC KIESELSTEIN (TELEPHONICALLY)

8

9  ROPES & GRAY LLP

10        Attorneys for Elliott Management

11

12  BY:  GREGG M. GALARDI (TELEPHONICALLY)

13

14  KASOWITZ BENSON & TORRES LLP

15        Attorneys for the Ad Hoc Committee

16

17  BY: DAVID ROSNER (TELEPHONICALLY)

18

19  ALSO PRESENT TELEPHONICALLY:

20

21  ARLENE R. ALVES

22  SAM N. ASHURAEY

23  MATTHEW C. BROWN

24  ERIC C. DAUCHER

25  DANIEL DEFRANCESCHI

1   CHRSTOPHER ESBROOK

2   ERIN FAY

3   ANDREW GLENN

4   BRIAN D. GLUECKSTEIN

5   TAYLOR B. HARRISON

6   DANIEL K. HOGAN

7   SCOTT J. LEONHARDT

8   JASON M. MADRON

9   DAVID MARK

10  GARVAN MCDANIEL

11  MATTHEW L. MCGINNIS

12  CARL NEFF

13  MORGAN NIGHAN

14  RICHARD PEDONE

15  RICHARD SCHEPACARTER

16  DANIEL S. SHAMAH

17  JESSICA STEINHAGEN

18  PATRICK VENTER

19  BRADY C. WILLIAMSON

20

21

22

23

24

25

1              P R O C E E D I N G S

2              THE COURT:  Good afternoon, everybody.  This is

3    Judge Sontchi and we're here yet again in the FH.  This time

4    it's a status conference requested by the PAB.  So I'll turn

5    it over to counsel for the PAB.

6              MS. YENARMANDRA:  Thank you, Your Honor.  Good

7    afternoon.  This is Aparna Yenarmandra and I'm joined by

8    Marc Kieselstein, both from KE on behalf of the PAB and I

9    expect our colleagues from RLF are on the line as well.

10             So, Your Honor, you're exactly right.  We asked

11   for this status conference on the record because we once

12   again find ourselves potentially caught between a rock and a

13   hard place and I know Your Honor and our staff has asked RLF

14   to sort of generally keep you in the loop on distributions

15   and issues we face in connection with making plan

16   distributions.  And so we decided to avail ourselves of that

17   opportunity.

18             So as Your Honor may recall, on November 5th, you

19   entered the allocation order which had been submitted on

20   certification of counsel by counsel to Elliot in which

21   reflected the sign off from the other parties for the

22   allocation dispute.  That was at docket entry 13604.

23             Following entry of that order, the PAB began a

24   process of preparing for a plan distributions in the

25   aggregate amount of approximately 530 million dollars which

1   represents the overwhelming amount of cash held in the cash

2   distribution account before accounting for any residual cash

3   that may be in the retained professional accounts.  Those

4   residual amounts will go out after all of the final fee app

5   orders are paid down.

6           And consistent with the order Your Honor entered

7   on October 25th, at DI 13584, that was the NextEra 275

8   release order, we shared our proposed initial distributions

9   at ESAH and EFIH with each of counsel for Elliot, counsel

10  for the ad hoc group, and counsel for the trustee all on a

11  professional's eyes-only basis consistent with the terms of

12  the order.

13          And so between then and now we've had a number of

14  discussions in the last couple weeks with those parties

15  regarding among other things, distribution mechanics, the

16  size of the initial distribution, the timing and potential

17  size of the secondary distribution, the amounts we intend to

18  continue to hold back from the initial distribution and what

19  those amounts are attributable to.  All of these have been

20  the subject of a flurry of discussion for a number of weeks.

21  And so we were targeting, as an early Thanksgiving present a

22  distribution date of November 21st.

23          On November 14th, Elliot filed a motion under Rule

24  9023 to amend the allocation order solely (inaudible) the

25  allocation of the NextEra termination fee that was held at

1   docket ID 13620 and I believe it's scheduled to be heard on

2   December 17th.

3           Notwithstanding the Elliot motion to amend, we

4   believe, and we continue to believe that we have the

5   authority to make a complete plan distribution.  And based

6   on our reviews there is some limited case law in the 3rd

7   Circuit but not in Delaware that make the draft that a Rule

8   9023 motion may have the effect of pulling the effectiveness

9   of an order.

10          I'm happy to say as much or as little about those

11  opinions, but suffice to say, in our view, they are non-

12  binding opinions.  We don't think they actually stand for

13  that proposition despite potential arguments to the contrary

14  and even assuming they do, we don't think they should be

15  followed under the (inaudible) circumstances where the

16  motion to amend affects zero actual dollars, the NextEra fee

17  is a zero dollar claim at this point.  And on the flipside,

18  we're trying to send out over a half a billion dollars in

19  plan distributions.

20          Now conversely, the trust agreement which Your

21  Honor has become unfortunately intimately aware of these

22  last couple of months, specifically states that the trustee

23  can make plan distributions pursuant to any other subsequent

24  order of the bankruptcy court does not require that order to

25  be a final order.  But notwithstanding the motion to amend

Page 8

1    and the potential caselaw around 9023, we were preparing to

2    make distributions consistent with the allocation order and

3    the authority in the trust agreement.

4              We -- despite working very constructively with all

5    of the parties -- in (inaudible) of the order, we heard from

6    Elliot's counsel on the 19th that any distributions of the

7    PAB would be, and I'm quoting, "at its own peril".  I will

8    not further comment on the irony of hearing that from our

9    creditor that has most vociferously been clamoring for plan

10   distributions, but in any event, that promptly put the brake

11   on our distribution process.  We frankly were not prepared

12   to expose the PAB to potential liabilities for making plan

13   distributions to beneficiaries when that liability may come

14   from the beneficiaries themselves.

15             Now I would be remiss if I didn't mention that

16   although Elliot is a very large creditor, it is not the only

17   creditor.  We do have other creditors that have been waiting

18   just as long for their distributions including most

19   significantly, the non-qualified beneficiaries' class.  Your

20   Honor is well aware that the beneficiaries in those classes

21   are in the age range of 10 to 90 years old.  They've been

22   waiting for years to get this money that directly affects

23   their quality of life.  The other part worth mentioning

24   there is that (inaudible) had been administering those plans

25   at no cost since the effective date.  We do not expect

1   (inaudible) will continue to do this indefinitely and the

2   cost of replacing them would be time consuming at best, and

3   time consuming and expensive at worst.

4         And so with all that, Your Honor, the crux of the

5   problem that's facing us today is we're ready to make plan

6   distributions and we believe our creditors by and large are

7   ready to receive those plan distributions.  We have the

8   authority, but not the direction under the trust agreement

9   to make those distributions even in the absence of a final,

10  non-appealable allocation order.  But on the other hand we

11  have this potential vague threat from our creditors about

12  making those distributions at our own peril.

13        And so, as we've done throughout the case, we

14  wanted to update Your Honor on this issue we're facing and

15  take whatever guidance you're willing to give us on what has

16  to be the 15th or 20th (inaudible) we've now presented to

17  the Court.

18        THE COURT:  Thank you.

19        MR. GALARDI:  Your Honor (inaudible).

20        THE COURT:  Thank you, Ms. Yenarmandra.

21        MR. GALARDI:  Your Honor, it's Gregg Galardi.  Can

22  I respond quickly?

23        THE COURT:  Yes.

24        MR. GALARDI:  Your Honor, two things that I think

25  were left out and I tend to agree with everything with Ms.

1    Yenarmandra, but one is there is an outstanding order which

2    goes directly to the termination fee which we actually asked

3    for and said distribute.  So there is not a problem with the

4    distributing funds.  Regardless of whether there's a final

5    order or not a final order, we have not sought a stay of

6    that.  And I was the one who wrote the email that says

7    distribute at your own peril.  I find -- I believe it isn't

8    a final order, even for the bankruptcy court I don't mean

9    final, unappealable, I just mean not final.

10             THE COURT:  I'm sorry --

11             MR. GALARDI:  We did -- we --

12             THE COURT:  What --

13             MR. GALARDI:  -- excuse me?

14             THE COURT:  -- what -- what's the open issue that

15   you're talking about?

16             MR. GALARDI:  I -- whether there is an -- whether

17   a motion to alter or amend.  And let me give a little

18   history about this.  We asked to try to do this very quickly

19   on the 5.4 versus the 5.8.  If people would agree to that

20   and then we would be moving on to with whatever appeal, we

21   want.

22             But the legal issue that's outstanding and they

23   wanted extra time to respond to the motion when we couldn't

24   resolve it consensually is simply whether a motion to amend

25   or alter adjustment delays the appellate time for that order

1    to become final for the purposes of taking a notice of

2    appeal.  It's interlocutory in our view with the motion to

3    alter or amend and we would have Your Honor, if you want to

4    rule on it today, if they want to put in papers, that's

5    their business to do so.  We did try to resolve that, Your

6    Honor.

7            Second, we didn't see the stay.  Third, there is

8    nothing at all that precludes, as I understand it, at this

9    particular time, whether they think they need a final order

10   or not, Your Honor can give an advisory opinion if you'd

11   like on that matter, or if they think the order they have in

12   hand now, given the motion to amend or alter is a final

13   order -- is an order they can distribute -- they're free to

14   distribute it.

15           The only issue, and we've told everybody, Your

16   Honor, what our issue is with Your Honor's allocation order,

17   what we would intend to appeal is not by any stretch of the

18   imagination 500 million dollars.  It doesn't go to making

19   distributions to the retirees or the non-qualified people.

20   They're free to make that distribution.  The amount at issue

21   will be a relatively modest amount at EFH.  It doesn't

22   preclude that from happening.  We've told them it doesn't

23   preclude that from happening.  They just want to distribute

24   most everything, and we'd love them to distribute everything

25   and we simply said, do so -- if it moots our appeal, it

1    moots our appeal.  I'm sure they will argue that.

2           If they want to make the distribution, make the

3    distribution.  We're not going to give up our appellate

4    rights.  And we don't have to.  But they can make that

5    decision.  They've made many decisions like doing reserves

6    in the business judgment.  They can make their decision to

7    go distribute the funds.

8           So I think they're asking for an advisory opinion

9    with no motion before Your Honor right now.  And we've not

10   moved for a stay.  So there's nothing to preclude them.

11   They can take whatever position they want, legally speaking,

12   distribute as much money as they would like to distribute.

13   Elliot is not standing in the way of this distribution.  It

14   clearly doesn't preclude them from distributing to EFIH.  It

15   clearly allows them to distribute with Your Honor's opinion

16   most of the money, including, I think, it's 78 million

17   dollars to the non-qualified people, that they can get those

18   distributions out well before yearend.

19          And I've explained that they can make those

20   distributions.  I've told them what the specific legal issue

21   or the amount at risk that we would be seeking an appeal on.

22   And it is a mere modest amount at the EFH that doesn't

23   preclude a large distribution at EFH long before year end.

24   There's 200 million there.  And we are not taking an appeal

25   that in any way, shape, or form would adjust 200 million.

1    It wouldn't even adjust 100 million.

2            They can make the distributions and the

3    beneficiaries that they want to -- are sympathetic, they can

4    have their distributions well before year end.  The PAB has

5    to exercise its discretion and decide does it want to put

6    out all of that money, does it want to put out most of that

7    money?  And we've been as forthright with them about what

8    issue we are contemplating taking appeal on.

9            MS. YENARMANDRA:  Your Honor, may I briefly

10   respond?

11           THE COURT:  Uh-huh.  Yes.

12           MS. YENARMANDRA:  So, Your Honor, I think Mr.

13   Galardi at his word that his notice of appeal is only

14   intended to cover one small issue related to the allocation

15   order, but the fact of the matter is that the notice of

16   appeal appealed the entirety of the allocation order.

17           So while the intent may be to just ultimately

18   affect a small amount of money moving from one estate to the

19   other estate, the appeal itself covers all the bucket, while

20   the most -- all the buckets that were subject to the

21   allocation order while the motion to amend only covers the

22   275.  And so, one, I'm trying to clarify that.  And two,

23   this -- notwithstanding the fact that we think we've -- we

24   already have the authority to do this under the trust

25   agreement, our quite candid fear is hearing the phrase that

1    any distributions we make are at our own peril from our

2    largest and most litigious creditor.  So if the best

3    approach is we just file a motion to get the authority and

4    the direction to make distributions by year end, we're happy

5    to do that and prepared to do it.

6            MR. ROSNER:  Your Honor, it's David Rosner from

7    (inaudible) for the ad hoc claimants.  May I be heard?

8            THE COURT:  Yes.

9            MR. ROSNER:  So our position on this is quite

10   straightforward.  On the one hand, Mr. Galardi said I'm not

11   seeking a stay -- have not sought a stay, but by email he

12   is, in fact, looking to impose a stay and is now walking it

13   back and saying, well, I only want to stay of a little piece

14   of the order because that's what I intend to appeal from.

15           The order is final from Your Honor's perspective.

16   I think the ordinary course of events would be if somebody

17   sought to not have the order become effective in accordance

18   with this term, they would need to seek a stay of the

19   effectiveness of that order.  That has not happened, and it

20   will not happen and there's no reason for anybody to need to

21   file further motions in order to make distributions that are

22   already provided for under the, you know, the preexisting

23   orders of the Court as well as the Court's determination on

24   the allocation -- from the allocation trial itself.

25           So at this point what you've got is a kind of

1   quasi-state as being put into place without having met any

2   of the standards and we would ask that Your Honor would

3   simply tell the PAB that it's free to go make the

4   distributions that it should in full to all the parties that

5   have been waiting.  We waited for the allocation trial, it's

6   now been decided, and distributions should be made.  So our

7   position is that absent a stay, the distribution should be

8   made.

9          MR. GALARDI:  Your Honor, very quickly, Gregg

10   Galardi.  We haven't made a backhanded or any other way for

11   a motion for a stay.  Only Your Honor can enter a stay.  If

12   the order is adequate to make the distributions, it's within

13   the discretion of the PAB to make it.  They have to decide

14   what, if anything, they should be distributing and how much.

15   That is their discretion.  And if they distribute more -- if

16   we take an appeal and we prevail, that's an issue for

17   another day.  If they don't make the full -- that's an issue

18   for another day.  They're free to distribute.  No one has

19   moved for a stay.

20          THE COURT:  So well, couple things.  Well, I'm not

21   going to order anybody to do anything at a status conference

22   without a live motion in front of the Court to actually

23   decide something.  If the PAB wishes to file some sort of

24   motion seeking authorization, I think they already have the

25   authorization under the trust agreement, and -- but if they

1    -- it really comes down to if they want to seek some sort of

2    court approval to exercise that discretion, I think they

3    have to file a motion and give me an opportunity to get it

4    briefed and read it and decide it on the merits.  However,

5    it's, you know, Mr. Galardi says that he hasn't filed a

6    stay, and he's not seeking a stay.  But in effect, he is by

7    really exercising somewhat threatening language and

8    exercising or paying off -- playing off his client's

9    reputation.  So --

10            MR. GALARDI:  Your Honor --

11            THE COURT:  -- yeah -- Mr. --

12            MR. GALARDI:  -- that's unfair --

13            THE COURT:  -- Mr. Galardi --

14            MR. GALARDI:  -- with all due respect.

15            THE COURT:  -- Mr. Galardi, am I done?

16            MR. GALARDI:  Okay.  I'm sorry.

17            THE COURT:  I didn't interrupt you.  So you're

18   free to comment after I comment.  So it's exactly actually

19   to a certain extent the same stay that the PAB gave NextEra

20   in some ways after I denied NextEra's motion for a stay

21   pending appeal and then PAB decided to withhold the 275 and

22   Mr. Galardi complained that I was, in effect, giving NextEra

23   a stay without requiring a bond.

24            And here we have a situation where Elliot is

25   unhappy with the allocation motion, which is fine, and --

1    but hasn't sought a stay, but in effect is asking for a stay

2    because they want a reserve held.  Now I thought it was

3    correct to do it in March.  And I disagreed with Elliot

4    complaining about it at that time.  Although I understood

5    why they did.  And I'm not saying it's at all inappropriate

6    to do it now, it's really, as in March, here in November I

7    think it's at the discretion of the PAB and the exercise of

8    the PAB's business judgment.

9              So I'll back off.  I will take back my words about

10   Mr. Galardi's client.  It's unfair.  There's really no

11   foundation for that.  So I do apologize for that.  However,

12   it is true --

13             MR. GALARDI:  And, your Honor --

14             THE COURT:  -- it is true that Elliot has defended

15   its -- vigorously defended its rights in this matter.

16   Again, they're entitled to do that.  But I can see why the

17   PAB would be, you know, worried about a statement like that

18   coming from Elliot's counsel.  And, but anyway, all that

19   said, Mr. Galardi, you want to say something?

20             MR. GALARDI:  Your Honor, I appreciate your

21   comment about Elliot.  As to the threatening language, it is

22   a simple -- and we've been here so many times, Your Honor --

23   it is a simple matter of the discretion of the PAB to decide

24   how much it wants to distribute.  We do not disagree that

25   they have that discretion.  All we have said to them, and we

1    have highlighted that we will be -- might be taking an

2    appeal -- and it's not been determined.  One, because

3    NextEra was maybe posting -- asking to post a bond.  It

4    turned out not to.  It's within their discretion.

5            We are happy to work with them to identify the

6    issues.  Yes, we took a notice of appeal as you would do of

7    the order.  We've let every party know what the issue is

8    that we would be seeking an appeal.  There is nothing that

9    stops major distributions to parties.  We've made that

10   clear.  So whether I use language that to do so at their own

11   peril when I believe there's not even an order yet from Your

12   Honor that is a final in the bankruptcy court order as

13   opposed to interlocutory, that is the situation in which we

14   said proceed at your own peril.

15           I understand that if there's an order that's final

16   in the bankruptcy court we would have to seek a stay.  And I

17   also want to distinguish between NextEra.  They made a

18   specific request for a reserve.  We have not done so.  So

19   there are many differences here.  So I just want to make it

20   clear to Your Honor, we have done neither of those things at

21   this point in time.

22           THE COURT:  All right.  I'm not -- Ms.

23   Yenarmandra, I'm not familiar with the 9023 cases I guess

24   that Mr. Galardi's --

25           MS. YENARMANDRA:  There's (inaudible) --

1              THE COURT:   -- referencing and you referenced, so

2     --

3              I was under the impression that it was a final

4     order for purposes -- as opposed to an interlocutory order

5     and I assume that's why Mr. Galardi's clients appealed on

6     November 19th because if it was an interlocutory order they

7     didn't properly appeal because they didn't do what you have

8     to do to appeal an interlocutory order, so --

9              MR. GALARDI:  And on that, Your Honor, we appealed

10    so as to not have an issue in the future.  And in a lot --

11    if you appeal prior to it becoming final and it becomes

12    final, then that appeal gets registered as a final.  We

13    didn't take an interlocutory (inaudible).

14             THE COURT:  Yeah.

15             MS. YENARMANDRA:  And, Your Honor --

16             MR. ROSNER:  Your Honor --

17             MS. YENARMANDRA:  -- for what it -- I think our

18    view is -- you would need a bit of a creative interpretation

19    of the limited cases that are out there on the issue.  We

20    were only able to find three -- to reach the conclusion that

21    the motion had the effect of pulling the effectiveness of

22    the allocation order.  So we flagged it only because it's

23    out there and someone could read it to reach that

24    conclusion, but we certainly don't think that's the right

25    (inaudible).  And in any event, none of the three cases are

1    Delaware cases.

2            THE COURT:  Are they 3rd Circuit cases or are they

3    just -- they're in the 3rd Circuit but they're not --

4            MS. YENARMANDRA:  (inaudible) --

5            THE COURT:  -- they're not appellate court cases,

6    correct?

7            MS. YENARMANDRA:  Correct, yes.  Two are Eastern

8    District of Pennsylvania and one is the Eastern District of

9    Michigan.

10           MR. ROSNER:  Your Honor, David Rosner again.  I'll

11   just note along those lines, you know, our understanding is

12   that there is no authority for the proposition that the

13   motion to alter actually makes your order not a final order

14   in the bankruptcy court context.  What it does is it

15   (inaudible) the time to appeal but it doesn't change your

16   order from being a final order for purposes of distribution.

17           MR. GALARDI:  Your Honor, if they're all -- and

18   we're not saying one way or the other, we took our appellate

19   right as a result of exactly that lack of clarity.  We filed

20   our motion for alter to amend for the simple reason that we

21   didn't want to do -- we believed it was not something we

22   would want to appeal on the 5.4 versus the 5.8.  Your Honor

23   scheduled a hearing for it.  We've not been pressing forward

24   and as I've said numerous times, we've not sought a stay.

25           So they can do what they need to do.  If they want

1   us to get another order, that's fine.  They're very

2   convinced it's a final order, we're fine with they're saying

3   it's a final order.  We haven't sought a stay.  Let them

4   distribute the amount of money the PAB thinks it should

5   distribute.

6            THE COURT:  Well, I -- there are a couple of

7   things going on.  I mean, there's a lot, obviously, of

8   conversations that are happening behind the scenes of which

9   I'm not aware and it's fine that I'm not aware of them such

10  as what it is exactly, you know, Elliot is discussing having

11  an issue with, whether it be a factual finding or a legal

12  finding.  And I don't want to know.  I'm just saying I don't

13  know.

14           So I don't know -- but the questions are -- and I

15  can't give -- I'm not going to sit here today and order the

16  PAB to do or not to do something.  And I can't give you any

17  insight on the 9023 case issues because I haven't read those

18  cases.  So I'm pretty useless to you right now other than to

19  say that I think Mr. Galardi agrees with what I said which

20  is that it's really an issue of the PAB exercising its

21  discretion to do what it thinks it can or cannot do under

22  the trust agreement.

23           And it was that -- it's their business -- the

24  trustee's business judgment in March that I endorsed and the

25  hold back on the 275 million.  And obviously the Court would

1   give deference to the business judgment of whatever happens

2   today.  But deference to business judgment doesn't mean a

3   rubber stamp and if the business judgment isn't exercised

4   properly, of course it's subject to review by the Court and

5   perhaps reversal and that of course is what gives trustees

6   nightmares and keeps them up at night.  So I certainly

7   understand the quandary.

8           It would be very unfortunate to have a situation

9   here where this money continues to sit in its entirety out

10  of the hands of creditors both institutional creditors and

11  individual elderly creditors.  And frankly I care --

12  relative -- I think it's more significant -- look, hundreds

13  of millions of dollars is significant to anybody,

14  institutional or not.  But the individual creditors here are

15  obviously more sensitive to continued delay in getting their

16  distribution.

17          And I would hope the parties could reach some sort

18  of accord to allow some distribution to those creditors.

19  But if it can't be done, it can't be done.  If you want to

20  accelerate the motion to amend the allocation motion to a

21  date sooner than December 17th, that's fine.  That was just

22  I believe the next omnibus date.  So it was put on for that

23  motion sort of automatically.  But if you would you like a

24  shortened time frame on that, including a shortened

25  objection deadline and then shortened hearing date, I'm

1    happy to accommodate that.  I can't do it this week, but I

2    could do it the week of the 3rd or the 10th as opposed to

3    having to wait all the way to the 17th.  And if Elliot --

4    and if --

5              MR. GALARDI:  Your Honor, and Elliot has no

6    problem with -- the parties actually asked for a longer

7    objection deadline.  We have absolutely no problem other

8    than December 4th, which I'm unavailable.  We're actually no

9    problem, whatever the parties want to do.  Sooner the

10   better.

11             THE COURT:  All right.  Yeah, and under Rule 8002

12   the appeal you did take is in effect -- is not effective

13   until that decision is made on that motion --

14             MR. GALARDI:  That's my understanding as well.

15             THE COURT:  -- in any event.  That's my reading of

16   the rule.  So --

17             MR. GALARDI:  That's my reading of the rule as

18   well, Your Honor.

19             THE COURT:  With regard to the PAB seeking a

20   motion to get some sort of definitive authority from the

21   Court, I don't know if I -- I don't know what that motion

22   would look like and I certainly don't know if I would grant

23   it or not.  But if you want to do that on a motion to

24   shorten as well to try to -- I don't know if there are time

25   sensitivities to get these distributions out before year

1    end, but again, I would accommodate that within reason.

2            MS. YENARMANDRA:  Understood.  Thank you, Your

3    Honor.

4            THE COURT:  Okay.  I'm sorry, Ms. Yenarmandra,

5    that's all I can give you.

6            MS. YENARMANDRA:  No, that was very helpful.

7            THE COURT:  All right.  And --

8            MS. YENARMANDRA:  I think we have -- anyone has

9    anything else to go back and collectively regroup.

10           THE COURT:  All right.  And again, my apologies

11   for my words in connection to Mr. Galardi's clients.  I do

12   apologize.  All right.  Thank you very much.

13           MR. GALARDI:  Thank you, Your Honor.

14           THE COURT:  We're adjourned.

15           MR. ROSNER:  Thank you, Your Honor.

16           (Whereupon these proceedings were concluded at

17   4:30 PM)

18

19

20

21

22

23

24

25

Page 25

C E R T I F I C A T I O N

1

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6        Sonya                    Digitally signed by Sonya Ledanski
                                  Hyde
7        Ledanski Hyde            DN: cn=Sonya Ledanski Hyde, o, ou,
                                  email=digital1@veritext.com, c=US
                                  Date: 2018.11.27 16:41:48 -05'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  November 27, 2018