**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: <br><br> ENERGY FUTURE HOLDINGS CORP., *et al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No. 14-10979 (CSS) <br><br> (Jointly Administered) |

**OBJECTION OF AD HOC EFH CLAIMANTS
TO MOTION OF UMB BANK, N.A., AS INDENTURE TRUSTEE, AND ELLIOTT FOR
ENTRY OF AN ORDER AMENDING THE FINDINGS OF FACT AND CONCLUSIONS
OF LAW ON JOINT MOTION TO FIX APPROPRIATE ALLOCATION OF CERTAIN
RESERVES AND EXPENSES AS BETWEEN THE EFH AND EFIH DEBTORS**

The Ad Hoc EFH Claimants,[1] by and through their undersigned counsel Kasowitz Benson Torres LLP and Hogan ♦ McDaniel, hereby object (the "Objection") to the *Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott For Entry of an Order Amending the Findings of Fact and Conclusions of Law on Joint Motion to Fix Appropriate Allocation of Certain Reserves and Expenses as between the EFH and EFIH Debtors* [D.I. No. 13630] (the "Motion"). In support of their Objection, the Ad Hoc EFH Claimants respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. UMB Bank, N.A. and Elliott (collectively "Movants") cannot meet the stringent requirements of a motion to amend or alter a judgment following the trial held by this Court.

2. There is no dispute regarding the applicable standard. Movants must demonstrate: (i) a change in controlling law, (ii) new evidence, or (iii) "a clear error of law or

---

[1] The Ad Hoc EFH Claimants include (a) Alta Fundamental Advisers LLC, (b) Angelo, Gordon & Co., L.P., (c) Apollo Management Holdings L.P., (d) Brookfield Asset Management Inc., and (e) Farmstead Capital Management, LLC, and each of their related funds. *Verified Amended Statement of Kasowitz Benson Torres LLP and Hogan ♦ McDaniel Pursuant to Bankruptcy Rule 2019* [D.I. No. 13327] at ¶¶ 3-4.

fact." *See* Motion, ¶ 14, citing *Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 437 B.R. 488, 490 (Bankr. D. Del. 2010) (citing *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991), *aff'd*, 22 F.3d 303 (3d Cir. 1994)).

3.  The only ground Movants propose as a ground for reconsideration -- that the Court incorrectly determined the amount of the EFH Asbestos Liabilities to be assumed by NextEra -- does not meet that exacting standard because record evidence supported the Court's finding. Thus, there was no "clear error of law or fact," and the Court should deny the Motion as a result.

## BACKGROUND

4.  The Court entered its 83-page Findings and Conclusions[2] on October 31, 2018 following the three-day trial it conducted in September. As relevant to the Motion, the Court allocated 96.4% of the reserve and potential liability for the NEE Termination Fee Claim to EFIH and 5.4% of that reserve to EFH. Findings and Conclusions, p. 83. The Court based this allocation on its conclusion that the "measurable consideration" flowing to EFH as of September 19, 2016 (the "Approval Date")[3] consisted of $471 million in projected distributable cash and $58 million in assumed asbestos liability for a total of $529 million and that this amount was 5.4% of the total consideration under the NEE Merger of $9.827 billion. Findings and Conclusions, ¶ 163.

5.  In paragraph 38 of the Findings and Conclusions, the Court concluded that the value of the assumption of the Asbestos Liabilities to EFH as of the Approval Date was $58

---

[2]   Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion.

[3]   In paragraph 162 of the Findings and Conclusions, the Court found that the appropriate date to determine the allocation of the NEE Termination Fee was September 19, 2016, the date the Court approved the NextEra Merger Agreement.

million.  In so finding, the Court considered -- but rejected -- Elliott's contention that the value of the assumption of the Asbestos Liabilities should be based solely on the $100 million Asbestos Escrow that was established under the NEE Merger Agreement:

> Significantly, notwithstanding the $100 million Asbestos Escrow, the Debtors estimated the value of the asbestos liability and "legacy claims" was $58 million. (AHX-226, Disclosure Statement for First Amended Joint Plan [DI 18899] p.18; Horton Dep. Tr. at 79:17-81:6; Strom Dep. Tr. at 149:13-17; 9/2/2018 Strom Written Direct ¶34.5)

Findings and Conclusions, ¶ 38.

6. Movants now contend that the Court's estimate of the EFH Asbestos Liabilities was based on facts "not known, established, or included in the record as of [September 19, 2016]."  Motion, ¶ 15.  Rather, they assert, the only amount having any record support is the $100 million Asbestos Escrow "regardless of what the actual projected liabilities may be." *Id.* Movants further argue that the Court was required to ignore the evidence it credited and adopt $100 million as the only measure of the Asbestos Liabilities on the ground that "[e]ach of the sources cited in the Findings and Conclusions in support of the $58 million estimate relies on information learned after September 19, 2016."  Motion, ¶ 16.  In particular, Movants assert that the Sempra Disclosure Statement cited by the Court was not filed until a year after the September 19, 2016 approval of the NEE Termination Fee; that Mr. Horton's testimony was provided in August 2018, and that Mr. Strom was an expert witness without personal knowledge, who relied on the Sempra Disclosure Statement. *Id.*

7. Based on these arguments, Movants seek an order amending the Findings and Conclusions to provide that EFH's share of the NEE Termination Fee Claim reserve should be increased by $42 million, increasing the EFH allocation to 5.8% from 5.4%.

## OBJECTION

8.  Movants have failed to establish that the Court made a "clear error of law or fact." "[C]lear error [exists] if 'after reviewing the evidence, [the court is] left with a definite and firm conviction that a mistake has been committed.'" *Norristown Area Sch. Dist. v. F.C.*, 636 F. App'x 857, 861 n.8 (3d Cir. 2016) (quoting *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1220 (3d Cir. 1993)). Thus, the Court must conclude that there was no factual support for its findings.

9.  Here, the Court did not overlook the "facts" cited by Movants. Movants simply disagree with the conclusions the Court drew from those facts. Moreover, Movants provide no authority to support their contention that the Court could only base its decision on the Asbestos Escrow NextEra established (for its own purposes) and could not consider, as it did, the Debtors' projected Asbestos Liabilities as of the Approval Date.

10. The Horton testimony that the Court cited indicates that Mr. Horton told NextEra during the negotiation of the NEE Merger Agreement that, in his view, the amount of the Asbestos Liabilities was "more like $45 or $50 million." Horton Deposition at 83:13-14. It was entirely appropriate for the Court to credit the testimony of the Debtors' Senior Vice President who was involved in the negotiations and the analysis of the asbestos liability.

11. Moreover, although Mr. Horton was not allowed to testify at the hearing as to the projected amount of the Asbestos Liabilities based on the report that the Debtors received from their third-party consultant, 9/6/18 Trial Tr. at 135, Mr. Horton did testify that he believed at the time of the negotiations with NextEra that the amount of the Asbestos Escrow was too high. *Id.* at 133-34. It is of no moment that the Debtors' estimate was not made public until after the Approval Date. Horton's testimony demonstrates that the projections contained in the disclosure statement were known to the Debtors at the time of the NextEra negotiations. Finally, there was evidence in the record that NextEra crafted the asbestos reserve solely for its parochial concerns,

not as a true reflection of any stakeholders' views of the realistic liability. *Id.* at 87:7-88:10 (Keglevic); ELX-400, 9/21/2016 Hr'g Tr. at 13:23-14:21.

12. The Court did not overlook any proven facts. Just the opposite, the Court relied on record evidence.

13. In addition, Movants' contention that the Court could not consider contemporaneous *projections* relating to the Asbestos Liabilities is completely inconsistent with their contention regarding the other element of consideration that EFH was *projected* to receive as of the Approval Date. Findings and Conclusions, ¶ 163 ("As of September 19, 2016 . . . [t]he measureable consideration flowing to EFH was $471 million in cash and $58 million in assumed asbestos liabilities."). The Court premised its finding that EFH was projected to receive $471 million in cash consideration from the NEE Merger on its determination that, as of the Approval Date, "the E-Side Debtors and Disinterested Directors believed, however, that it was unlikely that this Court's Makewhole Rulings would be overturned," Findings and Conclusions, ¶ 33. Thus, the Court did not discount those projections despite the undisputed fact that an appeal of the Makewhole Rulings was then pending in the Third Circuit. If Movants are correct that the Court should not have considered the Debtors' projections of EFH's future Asbestos Liabilities (they are not), then they must also be contending that the Court should not have allocated to EFH the full $471 million in consideration it was expected to receive on the assumption that the Court's Makewhole Rulings would be affirmed. If that amount were discounted by even 10%, there would be a greater impact on EFH's share of the NEE Termination Fee Claim reserve than Movants' proposed adjustment of the Asbestos Claims estimate by $42 million.

## **CONCLUSION**

WHEREFORE, the Ad Hoc EFH Claimants respectfully request that this Court enter an order denying all relief requested in the Motion.

Dated: November 28, 2018
Wilmington, Delaware

                                     HOGAN ♦ MCDANIEL

                                     By: */s/ Garvan F. McDaniel*
                                     Garvan F. McDaniel, Esq. (DE #4167)
                                     1311 Delaware Avenue
                                     Wilmington, Delaware 19806
                                     Telephone: (302) 656-7540
                                     Facsimile: (302) 656-7599
                                     Email: gfmcdaniel@dkhogan.com

                                             – and –

                                     KASOWITZ BENSON TORRES LLP
                                     David S. Rosner, Esq.
                                     Andrew K. Glenn, Esq.
                                     1633 Broadway
                                     New York, New York 10019
                                     Telephone: (212) 506-1700
                                     Facsimile: (212) 506-1800
                                     Email: drosner@kasowitz.com
                                                   aglenn@kasowitz.com

                                     *Co-Counsel to the Ad Hoc EFH Claimants*