Page 1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

In re:                                    :
                                          :   Chapter 11
ENERGY FUTURE HOLDINGS CORP.,             :   Case No. 14-10979 (CSS)
et al.,                                   :
        Debtors.                          :   (Jointly Administered)
_____            :

United States Bankruptcy Court

824 North Market Street

Wilmington, Delaware

December 17, 2018

12:08 p.m. - 12:22 p.m.

B E F O R E :

HON CHRISTOPHER S. SONTCHI

U.S. BANKRUPTCY JUDGE

ECRO OPERATOR:  LESLIE MURIN

1   HEARING re Motion of UMB Bank, N.A., as Indenture Trustee,
2   and Elliott for Entry of an Order Amending the (A) Findings
3   of Fact and Conclusions of Law on Joint Motion to Fix
4   Appropriate Allocation of Certain Reserves and Expenses as
5   Between the EFH and EFIH Debtors and (B) Order Fixing
6   Appropriate Allocation of Certain Reserves and Expenses as
7   Between the EFH and EFIH Debtors [D.I. 13620; filed November
8   14, 2018]
9
10  HEARING re EFH Indenture Trustee's Motion Pursuant to 11
11  U.S.C. § 502(b) for Determination and Allowance of
12  Additional Amounts to be Included in Allowed Claims [D.I.
13  13632; filed November 21, 2018]
14
15  HEARING re Final Fee Application of Kirkland & Ellis LLP and
16  Kirkland & Ellis International LLP, Attorneys for the
17  Debtors and Debtors in Possession, for the Period from
18  April 29, 2014 Through and Including March 9, 2018 [D.I.
19  13019; filed April 23, 2018]
20
21  HEARING re Final Application of Proskauer Rose LLP, Counsel
22  for Debtor Energy Future Holdings Corp., for Compensation
23  for Services Rendered and Reimbursement of Expenses Incurred
24  from November 19, 2014 Through March 9, 2018 [D.I. 13021;
25  filed April 23, 2018]

```
 1   HEARING re Final Fee Application of Shaw Fishman Glantz &
 2   Towbin LLC as Special Delaware Counsel for the Debtors and
 3   Debtors in Possession for the Period August 14, 2017 Through
 4   and Including March 9, 2018 [D.I. 13014; filed April 23,
 5   2018]
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25   Transcribed by:  Sonya Ledanski Hyde
```

```
 1  A P P E A R A N C E S :

 2

 3  HOGAN MCDANIEL

 4      Attorneys for Fenicle & Fahy etc.

 5

 6  BY:  DANIEL K. HOGAN

 7

 8  ROSNER LAW GROUP LLC

 9      Attorneys for Paul Keglevic & Anthony R. Horton

10

11  BY:  SCOTT LEONHURDT

12

13  KIRKLAND & ELLIS LLP

14      Attorneys for the PAB

15

16  BY:  APARNA YENAMANDRA

17

18  RICHARDS, LAYTON & FINGER

19      Attorneys for the PAB

20

21  BY:  JASON M. MADRON

22

23

24

25
```

```
 1   ROPES & GRAY LLP
 2        Attorneys for Elliott Funds
 3
 4   BY:  GREGG GALARDI
 5
 6   BAYARD
 7        Attorneys for Elliott Funds
 8
 9   BY:  ERIN FAY
10
11   NIXON PEABODY LLP
12        Attorneys for AST
13
14   BY:  MORGAN C. NIGHAN
15        RICHARD C. PEDONE
16
17   CROSS & SIMON, LLC
18        Attorneys for AST
19
20   BY:  CHRIS SIMON
21
22
23
24
25
```

```
 1   KASOWITZ BENSON TORRES & FRIEDMAN LLP
 2        Attorneys for Ad Hoc EFH Claimants
 3
 4   BY:   SHAI SCHMIDT
 5         ANDREW GLENN
 6
 7   ALSO PRESENT TELEPHONICALLY:
 8
 9   SAM N. ASHURAEY
10   MATTHEW C. BROWN
11   CHRISTOPHER ESBROOK
12   ERICA GOODSTEIN
13   TAYLOR B. HARRISON
14   CHRISTIAN P. JENSEN
15   ERIK SCHNEIDER
16   JESSICA STEINHAGEN
17   NACIF TAOUSSE
18   BRADY C. WILLIAMSON
19
20
21
22
23
24
25
```

1                P R O C E E D I N G S
2            THE COURT: You may proceed, Mr. Galardi.
3            MR. GALARDI: Your Honor, for the record, Gregg
4    Galardi, of Ropes & Gray, on behalf of the movants. Your
5    Honor, the first motion up on the agenda today is Elliott
6    and UMB's motion to alter or amend the judgment. I think
7    the papers are pretty clear.
8            Our simple position is, leaving aside anything
9    else we may have disagreed with with Your Honor in the
10   allocation order, we believe that Your Honor found that the
11   consideration was essentially $58 million, I believe the
12   number was, based on a number of things you cited in the
13   record, one of which was the Sempra plan. I don't think
14   anybody's talking about that.
15           It really comes down to Mr. Horton's testimony
16   about what he believed the value of the asbestos claim, and
17   our view that as of September 19th, 2016, I believe the date
18   was, there was nothing in the record to substantiate a $58
19   million claim, and that really, as of that date, when you
20   look at the actual agreement itself, it was $100 million
21   held back as consideration to cover the asbestos claims.
22           And therefore, we think that the $100 million's is
23   the consideration that should've been used, and therefore,
24   the percentage of the termination fee under the standard
25   which Your Honor applied should instead be 5.8 percent, as

1   opposed to 5.4 percent.

2            That's our argument.

3            THE COURT:  Okay.  Thank you.  Response?

4            MR. SCHMIDT:  Good afternoon, Your Honor.  Shai

5   Schmidt, Kasowitz Benson Torres, on behalf of the Ad Hoc EFH

6   claimants.  I'm here with my colleague, Andrew Glenn.

7            There is no dispute about the governing legal

8   standard here.  To prevail on their motion, Elliott and UMB

9   must show that the Court made a clear error of law or fact

10  in the findings of fact and conclusions of law.

11           Before getting into the specifics of the case, I

12  think it is helpful to remember what a clear error of law or

13  fact is.  In the Maxus Energy case, Your Honor held that a

14  clear error of law or fact requires a finding that the error

15  is "plain and indisputable", and "amounting to a complete

16  disregard of the controlling law or the credible evidence in

17  the record."  The citation that is In Re Maxus Energy

18  Corporation, 571 B.R. 650 at Page 655.

19           In Pittsburgh Corning, the Bankruptcy Court for

20  the Western District of Pennsylvania held that the relevant

21  judgment "must not be just possibly wrong or even probably

22  wrong; it must be dead wrong to constitute clear error."

23  The citation is In Re Pittsburgh Corning Corporation, 2013

24  WL 5994979 at Page 3.

25           Elliott and UMB have failed to establish that the

1  Court was even possibly wrong, let alone dead wrong.  Nor

2  can they show that the Court disregarded any evidence in the

3  record.  The Court found that notwithstanding the $100

4  million asbestos escrow, the Debtors estimated that the

5  value of the asbestos liability and the legacy claims was

6  $58 million.  Your Honor relied on the Debtors' disclosure

7  statement, Mr. Horton's testimony, and Mr. Strong's

8  testimony.

9            Elliott and UMB argue that Your Honor erred on

10  relying on their disclosure statement because it was not

11  filed until September of 2017.  Elliott and UMB do not

12  explain, however, why Your Honor could not rely on the

13  disclosure statement as evidence for the projected magnitude

14  of the asbestos liabilities as of the approval date.

15            In fact, Mr. Horton's testimony cited by Your

16  Honor indicates that Mr. Holden told NextEra during the

17  negotiations of the NextEra merger agreement that in his

18  view, the amount of the asbestos liabilities was "more like

19  $45 million or $50 million."  And the citation to that is

20  Horton deposition transcript at Page 80, Lines 13, 14.

21            Your Honor found Mr. Horton's testimony on this

22  point to be credible and relied on it, together with other

23  evidence, in reaching its conclusions.  Elliott and UMB have

24  not established that the Court was wrong in doing so, let

25  alone clearly wrong.

1                Finally, the Court did not ignore the fact that
2    the NextEra asbestos escrow was to contain $100 million.
3    The Court expressly considered that fact yet decided that
4    the Debtors' estimation of the asbestos liabilities, along
5    with other evidence, were more pertinent to the issue at
6    hand.
7                Indeed, Mr. Keglevic testified at trial that
8    NextEra had its own parochial reasons for crafting the
9    asbestos escrow.  And the citation to that is the September
10   6, 2018 trial transcript at Page 87, Line 7 and to Page 88
11   at Line 10.
12               Elliott and UMB are simply trying to relitigate
13   the issue of the relevance and significance of the amount of
14   the asbestos escrow.  That is improper.  And I will again
15   quote from Your Honor's opinion in Maxus Energy at Page 654,
16   "A motion for reconsideration may not be used as a vehicle
17   to relitigate issues the Court has already decided."
18               It is clear, Your Honor, that Elliott and UMB have
19   failed to show that the Court committed a clear error of law
20   or fact.  The Court should therefore deny the motion.
21               Thank you.
22               THE COURT:  Thank you.  Mr. Galardi?
23               MR. GALARDI:  Your Honor, very, very briefly.  We
24   don't think this is a litigation.  The real question,
25   simply, for Your Honor is, what was in the evidence as of

1  September 19th, 2016?  Even the statements that have now
2  been cited were not before Your Honor.  The consideration in
3  the asset purchase agreement was clear.  It was $100 million
4  off the table.  And on that basis, and with Your Honor's
5  standard, we would again assert that it was $100 million,
6  not the $58 million.
7         Thank you.
8         THE COURT:  Okay.  Thank you, Mr. Galardi.
9         All right.  I'm going to grant the motion.  I do
10 believe that the Court made an error in applying evidence
11 that occurred at came to light at a later date.
12        As I wrote in the opinion, the operative date for
13 figuring out the allocation on the breakup fee was what
14 consideration was involved at the time the breakup fee was
15 approved, which was September 19, I believe, 2016.  And the
16 only evidence other than Mr. Horton's belief, although not a
17 contemporaneous expression of that belief, was the $100
18 million escrow amount.
19        And the evidence that the Court relied on in
20 finding $58 million, which probably is a more realistic
21 number, but that's not the question, and we're not --
22 thankfully, the job here isn't to find the truth, it's to,
23 you know, apply the law and burdens of proof to get to the
24 facts.  The only number we had at the time was $100 million,
25 and I think that's the appropriate number.

1              So, I think to a certain extent this is all moot,
2     but I'm happy to decide moot things until I'm blue in the
3     face, yeah.
4              So, anyway, do you have an order, Mr. Galardi?
5              MR. GALARDI:  We do, but Your Honor, I think we
6     transposed a number and the U.S. Trustee had a comment.  So,
7     we're going to do it under cert.
8              THE COURT:  That's fine.
9              MR. GALARDI:  Thank you.
10             THE COURT:  You're welcome.  Mr. Pedone, I think
11    you're next.
12             MR. PEDONE:  Your Honor, in the plan and then in a
13    subsequent stipulation -- Richard Pedone for the EFH
14    Indenture Trustee.  We reserve the right to have our claim
15    amount increased by attorneys' fees.  And there was a
16    stipulation providing that that would be done within a
17    certain number of days after the fee committee and the Court
18    ruled on a substantial contribution finding.
19             That occurred.  We filed a motion.  And Your
20    Honor, we believe that all parties are now in agreement that
21    this can be sent along to an expert, presumably Godfrey &
22    Kahn, who is familiar with the issues, and who will assist
23    the Court in determining the reasonableness of the fees.
24             We had a form of order attached to our reply that
25    we filed at the end of last week, and the parties have

1    suggested a couple of changes.  If I could read those into

2    the record, and then I'll submit a revised form of order

3    this afternoon?  Is that acceptable?

4             THE COURT:  Okay. Yes.  Please.

5             MR. PEDONE:  So, Your Honor, at the end of

6    Paragraph 5, after the words, as provided for herein, this

7    is where -- dealing with distributions.  After the words, as

8    provided for herein, you would add the words, provided,

9    however, that such distribution shall be adjusted in

10   accordance with any order determining the allowance of any

11   final claim, in effect providing that the distributions that

12   are about to be made will -- any adjustment to the claim

13   amount will be dealt with later in subsequent distributions.

14            And then finally, in Paragraph 6, after the word

15   otherwise, in the middle, where the EFH Indenture Trustee's

16   rights are reserved, we will add language that states, and

17   it is -- excuse me, I'm having -- my speaker -- may I stay

18   on the monitor for one minute?

19            After the word otherwise in the middle of

20   Paragraph 6, we'll add the following language:  And it is

21   without prejudice to the right of any other party with

22   respect to such requests, and essentially implying that any

23   party can object to the fee amounts after there's a report

24   back.

25            THE COURT:  Okay.

```
 1              MR. PEDONE:  Any questions, Your Honor?
 2              THE COURT:  No.  Mr. Galardi?
 3              MR. GALARDI:  And Your Honor, I thought he had
 4   covered our language, but we would add the language that the
 5   order is without prejudice to any party in interest to
 6   object to the reasonableness of the EFH Trustee's fees.
 7              THE COURT:  I thought he just said that, but...
 8              MR. PEDONE:  That's the intention.
 9              MR. GALARDI:  (indiscernible)
10              MR. PEDONE:  If we need to put it at the end as
11   well, we're happy to.
12              THE COURT:  Okay.  Just to be clear.  That's fine.
13              MR. GALARDI:  Thank you, Your Honor.
14              THE COURT:  Anyone else?  All right.
15              MS. YENAMANDRA:  Sorry, Your Honor.
16              THE COURT:  Yes.
17              MS. YENAMANDRA:  One quick comment that I don't
18   think was controversial, that we were just going to change
19   the flat rate of $200,000 a month to an hourly rate.
20              MR. PERDONE:  That's correct, Your Honor.
21              THE COURT:  Okay.
22              MR. PERDONE:  (indiscernible) on an hourly basis
23   (indiscernible).
24              THE COURT:  All right.  And that'll come right
25   from the PAB?
```

```
1              MS. YENAMANDRA:  Yes, Your Honor.
2              THE COURT:  No fee application?
3              MS. YENAMANDRA:  Correct.
4              THE COURT:  Well, that's what I like to hear.
5              Okay.  Well, I'm going to reserve my rights and
6    I'm going to approve the motion as consensually agreed to by
7    the parties in interest.  However, for anyone who wants to
8    use this order in the future, personally I agree with Judge
9    Carey that unsecured claims cannot have attorneys' fees
10   included in those claims.
11             I disagree, very respectfully, with Judge Andrews
12   on the matter.  But the other thing that I am very much in
13   favor of consensus building, especially in this case, and I
14   don't really see the point of making a ruling that'll be 99
15   percent turned, reversed by the appellate judge.  So, just
16   don't cite this order to me because it won't get you
17   anywhere, is basically the message.
18             So, with that, you're going to submit that under
19   certification?
20             MR. PERDONE:  We will, Your Honor.
21             THE COURT:  Okay.  Very good.
22             MR. PERDONE:  Thank you.
23             THE COURT: You're welcome. Anything else?  All
24   right.  We are adjourned.
25             Are you going to send that thing over today, or...
```

1   MS. YENAMANDRA:  Yes, Your Honor.  We think we
2   should be in a position to send it over late today.  And I
3   spoke with Ms. (indiscernible).  We'll send her a redline of
4   any incremental changes, so you don't have to read the whole
5   thing again.
6           THE COURT:  Okay.  Thank you.
7           (Whereupon these proceedings were concluded at
8   11:22 PM)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                         I N D E X
 2
 3                         RULINGS
 4                                          Page      Line
 5
 6   Motion to alter or amend judgment granted    15        9
 7
 8   Motion to increase claim amount by
 9   attorneys' fees granted                      19        6
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    **Sonya Ledanski Hyde**

Digitally signed by Sonya Ledanski Hyde
DN: cn=Sonya Ledanski Hyde, o, ou, email=digital1@veritext.com, c=US
Date: 2018.12.18 16:48:40 -05'00'

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  December 18, 2018