# Exhibit A

## (Second Stipulation and Order)

*Execution Version*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## SECOND STIPULATION AND
## RELEASE REGARDING EFH/EFIH PLAN DISTRIBUTIONS

This Second Stipulation and Release (this "**Agreement**") is made and entered into as of December 27, 2018, by and among the following parties (each a "**Party**," and collectively, the "**Parties**"):

(i)    the EFH Plan Administrator Board; Energy Future Holdings Corp., a Texas corporation ("**EFH Plan Administrator Board**");

(ii)    the EFIH Unsecured Notes Trustee;

(iii)    Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "**Elliott**");

(iv)    the EFH Notes Trustee; and

(v)    each of (i) Alta Fundamental Advisers LLC; (ii) Angelo, Gordon & Co., L.P.; (iii) Apollo Management Holdings L.P.; (iv) Brookfield Asset Management Inc.; and (v) Farmstead Capital Management, LLC, on behalf of themselves and each of their related funds and managed accounts, as Holders of Allowed Claims in Classes A4-A11 (collectively, the "**Ad Hoc EFH Claimants**").

Unless otherwise indicated, capitalized terms used but not otherwise defined herein have the same meanings ascribed to such terms in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12763-1] (the "**Plan**") and if not defined therein, then in the *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12763] (the "**Confirmation Order**").

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*RECITALS*

**WHEREAS**, on April 29, 2014, the EFH/EFIH Debtors commenced chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), which chapter 11 cases are being jointly administered and are captioned *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS);

**WHEREAS**, on February 27, 2018, the Bankruptcy Court entered the Confirmation Order;

**WHEREAS**, on March 9, 2018, the EFH Effective Date occurred;

**WHEREAS**, on March 16, 2018, Elliott filed an amended notice of appeal of the Confirmation Order [D.I. 12830] (the "**Elliott Confirmation Appeal**"), and on March 23, 2018, the EFIH Unsecured Notes Trustee filed a notice of appeal of the Confirmation Order [D.I. 12848] (the "**EFIH Unsecured Notes Trustee Confirmation Appeal**");

**WHEREAS**, on April 6, 2018, the United States District Court for the District of Delaware entered an order joining the Elliott Confirmation Appeal and the EFIH Unsecured Notes Trustee Confirmation Appeal (together, the "**Confirmation Appeal**");

**WHEREAS**, on June 11, 2018, the Bankruptcy Court entered the *Order Scheduling Certain Dates and Deadlines and Establishing Certain Protocols in Connection with the Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to Fix Appropriate Allocation of Certain Reserves and Expenses as Between the EFH and EFIH Debtors* [D.I. 13193] (as amended from time to time, the "**Scheduling Order**"), which established a litigation schedule and discovery protocols for determining the allocation of certain administrative expense claims as between EFH and EFIH (as defined in the Scheduling Order, the "**EFH/EFIH Allocation Dispute**");

**WHEREAS**, between September 5, 2018 and September 7, 2018, the Bankruptcy Court held a hearing with respect to the EFH/EFIH Allocation Dispute (the "**Allocation Hearing**");

**WHEREAS**, on October 31, 2018, the Bankruptcy Court entered the *Findings of Fact and Conclusions of Law on Joint Motion to Fix Appropriate Allocation of Certain Reserves and Expenses as Between the EFH and EFIH Debtors* [D.I. 13599] (the "**Findings of Fact and Conclusions of Law**");

**WHEREAS**, on November 5, 2018, the Bankruptcy Court entered the *Order Fixing Appropriate Allocation of Certain Reserves and Expenses as Between the EFH and EFIH Debtors* [D.I. 13604], consistent with the Findings of Fact and Conclusions of Law (the "**Allocation Order**");

**WHEREAS**, no party-in-interest has sought a stay of the Allocation Order;

RLF1 20532084v.1

**WHEREAS**, on November 14, 2018, the EFIH Unsecured Notes Trustee and Elliott filed that certain motion to amend with respect to the Allocation Order [D.I. 13620] (the "**Motion to Amend**"), which was heard by the Bankruptcy Court on December 17, 2018;

**WHEREAS**, at a hearing held on December 17, 2018, the Bankruptcy Court stated on the record that it was granting the Motion to Amend, subject to the EFIH Unsecured Notes Trustee's and Elliott's submission of a proposed order under certification of counsel;

**WHEREAS**, on November 19, 2018, the EFIH Unsecured Notes Trustee and Elliott filed a notice of appeal of the Allocation Order [D.I. 13626] and on December 3, 2018, such parties filed a statement of issues on appeal [D.I. 13648], identifying two issues on appeal: (a) the allocation of the NextEra Termination Fee and (b) the allocation of Kirkland and Evercore Fees, in each case as set forth in the Allocation Order (the "**Elliott/EFIH Unsecured Notes Trustee Allocation Appeal**");

**WHEREAS**, on November 21, 2018, the EFH Notes Trustee filed the *Indenture Trustee's Motion Pursuant to 11 U.S.C. 502(b) for Determination and Allowance of Additional Amounts to be Included in Allowed Claims Filed by American Stock Transfer & Trust Company LLC* [D.I. 13632] (the "**EFH Notes Claims Motion**") and the Claims Motion was heard by the Bankruptcy Court on December 17, 2018;

**WHEREAS**, on December 3, 2018, the Ad Hoc EFH Claimants filed a notice of cross-appeal of the Allocation Order [D.I. 13646] and have indicated that their statement of issues on appeal will be (a) the allocation of the NextEra Termination Fee and (b) the allocation of E-Side Committee Professional Fees, in each case as set forth in the Allocation Order (the "**Ad Hoc EFH Appeal**");

**WHEREAS**, the EFIH Unsecured Notes Trustee and Elliott filed notices of appeal with respect to the following orders entered by the Bankruptcy Court in connection with the EFH/EFIH Allocation Dispute:  (i) *Order Authorizing the EFH Plan Administrator Board to Participate as a Party in the EFH/EFIH Allocation Dispute* [D.I. 13229] (the "**PAB Participation Appeal**"); and (ii) *Order Authorizing the EFH Plan Administrator Board to Reimburse the Fees and Expenses of Former Directors and Officers Solely in Connection With the EFH/EFIH Allocation Dispute* [D.I. 13350] (the "**D&O Reimbursement Appeal**" and, together with the Confirmation Appeal, the Elliott/EFIH Unsecured Notes Trustee Allocation Appeal, and the PAB Participation Appeal, the "**Elliott/EFIH Unsecured Notes Trustee Appeals**");

**WHEREAS**, on December 18, 2018, the Bankruptcy Court entered the *Stipulation and Release Regarding EFH/EFIH Plan Distributions* [D.I. 13674], pursuant to which the EFH Plan Administrator Board was authorized to make Plan distributions (up to a specified cap) with respect to Holders of Allowed Claims in Classes A4-A11 and directed to make Plan distributions (in specified amounts) to Holders of Allowed Claims in Class A4, Class A5, Class A6, Class B5, and Class B6 (the "**First Stipulation**");

**WHEREAS**, in connection with the First Stipulation, on December 19, 2018, the EFH Plan Administrator Board made Plan distributions to the Disbursing Agents for each of Class A4, Class A5, Class A6, Class B5, and Class B6 as set forth in the First Stipulation;

WHEREAS, on December 20, 2018, the Bankruptcy Court entered the *Order Granting EFH Indenture Trustee's Motion Pursuant to 11 U.S.C. § 502(b) for Determination and Allowance of Additional Amounts to be Included in Allowed Claims* [D.I. 13684] (the "**EFH Notes Claims Order**");

WHEREAS, on December 21, 2018, the Bankruptcy Court entered the *Order Granting Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott for Amendment of (A) Findings of Fact and Conclusions of Law on Joint Motion to Fix Appropriate Allocation of Certain Reserves and Expenses as Between the EFH and EFIH Debtors and (B) Order Fixing Appropriate Allocation of Certain Reserves and Expenses as Between the EFH and EFIH Debtors* [D.I. 13687] (the "**Order Approving Amendment**"); and

WHEREAS, the Parties negotiated in good faith to enable the EFH Plan Administrator Board to make an additional distribution to Holders of Allowed Claims under the Plan and they have reached agreement on the terms and conditions set forth in this Agreement.

*AGREEMENT*

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, in consideration of the promises and the mutual covenants and agreements set forth herein, each Party, intending to be legally bound, agrees as follows:

**Section 1.      Agreement Effective Date**.

This Agreement shall be effective and binding on each Party subject to approval of the Bankruptcy Court and upon approval of the Bankruptcy Court.

**Section 2.      Settlement Terms**.

2.1      The EFH Plan Administrator Board shall authorize and direct Citibank, as administrator of the EFH/EFIH Cash Distribution Account, to transfer $6,000,000.00 from the EFH Cash Account to the sub-account created within the EFH/EFIH Cash Distribution Account to fund the EFIH Unsecured Creditor Recovery Pool.  For the avoidance of doubt, the $6,000,000.00 will be used to satisfy Allowed Claims in Class B5 and Class B6.

2.2      Within five business days of entry of an order approving this Agreement, and submission by the Ad Hoc EFH Claimants of an invoice for such amount, the EFH Plan Administrator Board shall pay the aggregate amount of up to $2,750,000.00, representing the fees and expenses of the Ad Hoc EFH Claimants (including the fees and expenses of counsel and financial advisors) from the EFH Cash Account (the "**Requested Ad Hoc Fees**"). The Ad Hoc EFH Claimants agree that they will not seek payment of any fees and expenses from the EFH Plan Administrator Board or the EFH Cash Account in excess of the Requested Ad Hoc Fees.  For the avoidance of doubt, the Approved Ad Hoc Fees shall be paid entirely from the EFH Cash Account without affecting any Claim amounts.[2]

---

[2] For the avoidance of doubt, with respect to the Requested Ad Hoc Fees, the Ad Hoc EFH Claimants shall not be required to comply with the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or other orders in these cases,

2.3     Within five business days of entry of an order approving this Agreement, and submission by the EFH Notes Trustee of an invoice for such amount, the EFH Plan Administrator Board shall pay the aggregate amount of (a) $1,500,000.00, representing fees and expenses of the EFH Notes Trustee (including the fees and expenses of counsel and financial advisors) incurred after the EFH Effective Date (the "**Requested EFH IT Fees**")[3] and (b) up to $225,000.00, representing the fees and expenses incurred by the EFH Notes Trustee as Disbursing Agent (as defined in the Plan) (the "**Disbursing Agent Fees**"), in each case from the EFH Cash Account.[4]

2.4     The Parties agree that in lieu of the review contemplated by the EFH Notes Claims Order of the fees and expenses of the EFH Notes Trustee (including the fees and expenses of counsel and financial advisors) for reasonableness, the Allowed Amount of the Claims in Classes A4, A5, A6, and B5 shall be determined as follows:

    (a)     The Allowed Amount of the Claims in Classes A4, A5, A6, and B5 will be increased by $4,390,000 (less the Requested EFH IT Fees when paid by the EFH Plan Administrator Board), allocated based on Allowed Claim Amounts as of the Petition Date;[5]

    (b)     The EFH Notes Trustee shall be entitled to exercise its charging lien rights in the amounts of (i) $4,390,000 less the Requested EFH IT Fees when paid by the EFH Plan Administrator Board (the "**EFH IT Agreed Charging Lien Amount**") against reserves held by it from the distributions made pursuant to paragraph 151 of the Confirmation Order and the Agreed Distributions (as defined in the First Stipulation) (collectively, the "**First Distribution**") in

---

including the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (as amended by D.I. 12552, 13574), or *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases*, 78 Fed. Reg. No 116, page 36248 (June 17, 2013).

[3] The Requested EFH IT Fees do not include the Disbursing Agent Fees (as defined herein).

[4] For the avoidance of doubt, with respect to the Requested EFH IT Fees and the Disbursing Agent Fees, the EFH Notes Trustee shall not be required to comply with the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or other orders in these cases, including the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (as amended by D.I. 12552, 13574), or *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases*, 78 Fed. Reg. No 116, page 36248 (June 17, 2013).

[5] Resulting in an approximate allocation as follows: EFH Legacy Series P Claim, 13.86%; EFH Legacy Series Q Claim, 30.87%; EFH Legacy Series R Claim, 44.90%; EFH Unexchanged Note Claim (EFH 2019 Notes), 0.39%; EFH Unexchanged Note Claims (EFH 2020 Notes), 0.48%; and EFH LBO Note Primary Claim, 9.50% (with a corresponding increase of the EFH LBO Note Guaranty Claim, 9.50%).

payment of its fees and expenses (including the fees and expenses of its counsel and financial advisors) that have accrued up to December 16, 2018 (and the exercise of its charging lien rights for the EFH IT Agreed Charging Lien Amount shall be in full and final satisfaction of any and all unpaid fees and expenses incurred by the EFH Notes Trustee (excluding any Disbursing Agent Fees) through and including December 16, 2018, whether before or after the Effective Date); and (ii) as set forth in Section 2.4(c) below;

(c)     The EFH Notes Trustee shall be permitted to hold back $250,000.00 from reserves held from the First Distribution to Holders of Allowed Claims in Class A4, A5, A6, or B5 and, subject to the approval of the EFH Plan Administrator Board, such amounts may be used as an exercise of the EFH Notes Trustee charging lien for the fees and expenses of the EFH Notes Trustee (including the fees and expenses of its counsel and financial advisors) which are incurred after December 16, 2018, without reduction or further order of the Bankruptcy Court.

(d)     As soon as reasonably practicable, the EFH Notes Trustee will use commercially reasonable efforts to promptly makes a distribution to DTC (the "**EFH True-Up Distribution**") of remaining funds held by it (i) in excess of the $250,000 holdback provided for in subsection (c) above; and (ii) after its exercise of its charging lien rights as provided for in subsection (b) above;

(e)     For avoidance of doubt, this Agreement and the Bankruptcy Court's approval of this Agreement shall eliminate any obligations imposed on Godfrey Kahn (and any payment terms approved in connection with such obligations) pursuant to the EFH Notes Claims Order; and

(f)     Except as set forth in this Section 2.3 and Section 2.4, the EFH Notes Trustee agrees that it will not seek payment of any fees and expenses from the EFH Plan Administrator Board or the EFH Cash Account and will not further exercise its charging lien rights without the prior consent of Elliott.  The Parties having fully and finally resolved the distributions to be made to the Holders of Allowed Claims as provided for hereunder, the EFH Notes Trustee has fully discharged all duties and obligations provided for under the EFH Notes Indentures, the Plan, the Confirmation Order, and the EFH Plan Administration Trust Agreement, including, without limitation, Paragraph 153 of the Confirmation Order and Section 2.2 of the EFH Plan Administration Trust Agreement, and has no further obligations with respect thereto, *provided, however*, that nothing in this subsection 2.4(f) shall impair, modify, or otherwise affect the EFH Notes Trustee's role as Disbursing Agent.

2.5     Within three (3) Business Days following  the order approving this Agreement becoming final and non-appealable:

(a)     The EFIH Unsecured Notes Trustee and Elliott shall file a notice or other pleading in connection with the Elliott/EFH Unsecured Notes Trustee Allocation Appeal, the Confirmation Appeal, the PAB Participation Appeal, and

6

the D&O Reimbursement Appeal, withdrawing and dismissing all three appeals with prejudice.

(b)     The Ad Hoc EFH Claimants shall file a notice or other pleading in connection with the Ad Hoc EFH Appeal, withdrawing and dismissing such appeal with prejudice.

2.6     As soon as reasonably practicable following the date upon which the Court approves this Agreement, the EFH Plan Administrator Board shall:

(a)     be authorized to distribute: (a) an aggregate amount of $92,573,729.91 to Holders of Allowed Claims in Classes A4-A11, excluding (i) Class A8 (which Class A8 will receive distributions from those certain rabbi trusts described in the definition of EFH Corp. Cash in the Plan), and (ii) any Allowed Claims in Class A9 that are paid in full pursuant to the First Stipulation and (b) an aggregate amount of $23,791,803.00 to Holders of Allowed Claims in Classes B5 and B6, in each case pursuant to the Plan and Confirmation Order; and[6]

(b)     be authorized and directed to distribute the following amounts as set forth below (subclauses 2.6(a) and (b) collectively, the "Agreed Distributions"):

| Class | Distribution |
|-------|-------------|
| Class A4 | $29,846,320.47 |
| Class A5 | $35,238.24 |
| Class A6 | $3,162,671.86 |
| Class B5 | $1,153,657.39 |
| Class B6 | $27,313,730.58 |

2.7     For the avoidance of doubt, the Agreed Distributions shall not include the amounts set forth below (collectively, the "Holdbacks"):

(a)     any amounts currently in the EFH Professional Fee Escrow Amount or EFIH Professional Fee Escrow Amount;

(b)     the Requested Ad Hoc Group Fees and the Requested EFH IT Fees (as described above); and

---

[6] For the avoidance of doubt, while this Agreement (once approved by the Bankruptcy Court), will authorize the EFH Plan Administrator Board to make distributions with respect to Class A11, any such distribution will be subject to the *Order Establishing Plan Reserve for TCEH First Lien Creditor Plan Distribution Allocation Dispute* [D.I. 9718].

(c)     any amounts the EFH Plan Administrator Board believes necessary to the costs of winding down the EFH Debtors and EFIH Debtors and prosecuting any appeals to which the EFH Plan Administrator Board or the EFH/EFIH Debtors are party.

2.8     Subject to the Bankruptcy Court's approval of this Agreement, each of the Parties shall and hereby does release and discharge the other Parties and each of their current and former Affiliates, and each of their and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, from any and all claims and Causes of Action, whether known or unknown, arising out of or in connection with the Agreed Distributions, distributions and reserves previously taken in these cases, the D&O Reimbursement Appeal, the PAB Participation Appeal, the Confirmation Appeal, the Claims Motion, the EFH True-Up Distribution, the Elliott/EFIH Unsecured Notes Trustee Appeal, and the Ad Hoc EFH Appeal, and in the case of the EFH Notes Trustee, the performance of its obligations under the Plan, Confirmation Order and the EFH Notes Indentures.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not impair, modify, or otherwise affect the Parties' rights with respect to (a) the Holdbacks, which rights shall be as set forth in the Plan, the Confirmation Order, and the EFH Plan Administration Trust Agreement and (b) any Party's rights and obligations under this Agreement.

2.9     Each Party agrees to not appeal, seek reconsideration of, or otherwise challenge in any respect to the Order Approving Amendment.

**Section 3.     Bankruptcy Court Approval**.

3.1     The EFH Plan Administrator Board shall file this Agreement with the Bankruptcy Court under certification of counsel, requesting approval of the Agreement without need for further notice or hearing.

3.2     To the extent the Bankruptcy Court determines to hold a hearing with respect to this Agreement, the Parties shall take all commercially reasonable steps necessary to obtain approval of this Agreement and shall work in good faith to obtain approval of this Agreement.

**Section 4.     Miscellaneous**.

4.1     Complete Agreement.

This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes and nullifies all prior agreements, oral or written, among the Parties with respect thereto.

RLF1 20522084v.1

4.2     Governing Law; Jurisdiction; Waiver of Jury Trial.

(a)     This Agreement shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of Delaware, without giving effect to the conflict of laws principles thereof.  Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement in the Bankruptcy Court (the "**Chosen Court**"), and solely in connection with claims arising under this Agreement: (i) irrevocably submits to the exclusive jurisdiction and the authority of the Chosen Court; (ii) waives any objection to laying venue in any such action or proceeding in the Chosen Court; and (iii) waives any objection that the Chosen Court is an inconvenient forum, does not have jurisdiction over any Party hereto, or lacks the constitutional authority to enter final orders in connection with such action or proceeding.

(a)     Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of, or relating to, this Agreement or the transactions contemplated hereby (whether based on contract, tort, or any other theory).  Each Party (i) certifies that no representative, agent, or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Parties have been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section 4.2.

4.3     Execution of Agreement.

This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. Each individual executing this Agreement on behalf of a Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of such Party.

4.4     Interpretation and Rules of Construction.

This Agreement is the product of negotiations among the Parties and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof. The Parties were each represented by counsel during the negotiations and drafting of this Agreement and continue to be represented by counsel. In addition, this Agreement shall be interpreted in accordance with section 102 of the Bankruptcy Code.

4.5     Amendment.

This Agreement may not be modified, amended, or supplemented in any manner except in writing signed by each of the Parties. Any proposed modification, amendment, or supplement that is not signed by each of the Parties shall be ineffective and void *ab initio*.

RLF1 20582024v.1

4.6     Settlement Discussions.

This Agreement and the transactions contemplated herein are part of a proposed settlement among the Parties.  Nothing herein shall be deemed an admission of any kind.  To the extent provided by Federal Rule of Evidence 408, and any applicable state rules of evidence, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Agreement.

4.7     Successors and Assigns; No Third Party Beneficiaries.

This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable. Except as otherwise explicitly set forth herein, nothing in this Agreement is intended to benefit or create any right or cause of action in or on behalf of any person other than the Parties hereto (and their affiliated persons and entities who are intended to be beneficiaries of the releases and settlements set forth herein).

4.8     Severability and Construction.

If any term or other provision of this Agreement shall be held by a court of competent jurisdiction to be invalid, illegal or unenforceable, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of this Agreement is not affected in any manner materially adverse to any Party. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the essential terms and conditions of this Agreement are fulfilled to the extent possible.

4.9     Immediately Effective. This Agreement shall be immediately effective and binding upon the Parties upon approval of the Bankruptcy Court, without regard to Bankruptcy Rule 6004(h) (to the extent applicable).

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

*[Signature Pages Follow]*

Dated:   December 28, 2018
       Wilmington, Delaware

           */s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A**.
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian E. Schartz, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Co-Counsel to the EFH Plan Administrator Board*

RLF1 20572084v.1

Dated:  December 28, 2018
    Wilmington, Delaware

*/s/ Erin R. Fay*

**BAYARD, P.A.**
Scott D. Cousins (No. 3079)
Erin R. Fay (No. 5268)
Evan T. Miller (No. 5364)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
scousins@bayardlaw.com
efay@bayardlaw.com
emiller@bayardlaw.com

-and-

**ROPES & GRAY LLP**
Gregg M. Galardi (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com

*Counsel for Elliott and UMB Bank, N.A., as Trustee*

RLF1 20582084v.1

Dated: December 28, 2018
Wilmington, Delaware

*/s/ Garvan F. McDaniel*

**HOGAN♦McDANIEL**
Garvan F. McDaniel (No. 4167)
1311 Delaware Avenue
Wilmington, DE 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599
Email: gfmcdaniel@dkhogan.com

-and-

**KASOWITZ BENSON TORRES LLP**
David S. Rosner
Andrew K. Glenn
Gavin D. Schryver
David J. Mark
Andrew H. Elkin
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
Email: drosner@kasowitz.com
aglenn@kasowitz.com
gschryver@kasowitz.com
dmark@kasowitz.com
aelkin@kasowitz.com

*Co-Counsel to the Ad Hoc EFH Claimants*

RLF1 20582084v.1

Dated:   December 28, 2018                  /s/ Christopher P. Simon
         Wilmington, Delaware       **CROSS & SIMON, LLC**
                                    Christopher P. Simon (No. 3697)
                                    1105 North Market Street, Suite 901
                                    Wilmington, DE 19801
                                    Telephone: (302) 777-4200
                                    Facsimile: (302) 777-4224
                                    csimon@crosslaw.com

                                    -and-

                                    **NIXON PEABODY LLP**
                                    Amanda D. Darwin
                                    Richard C. Pedone
                                    Erik Schneider
                                    100 Summer Street
                                    Boston, MA 02110
                                    Telephone: (617) 345-1000
                                    Facsimile: (617) 345-1300
                                    adarwin@nixonpeabody.com
                                    rpedone@nixonpeabody.com

                                    -and-

                                    Christopher J. Fong
                                    437 Madison Avenue
                                    New York, NY 10022
                                    Telephone: 212-940-3724
                                    Facsimile: 855-900-8613
                                    cfong@nixonpeabody.com

                                    *Co-Counsel to American Stock Transfer &*
                                    *Trust Company, LLC, as Indenture Trustee*


SO ORDERED this _____ day of
December 2018


THE HONORABLE CHRISTOPHER S. SONTCHI
CHIEF UNITED STATES BANKRUPTCY JUDGE

RLF1 20582024v.1