IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>ENERGY FUTURE HOLDING CORP., *et al.*,<br><br>                      Debtors.<br><br>SHIRLEY FENICLE, INDIVIDUALLY, AND AS SUCCESSOR-IN-INTEREST TO THE ESTATE OF GEORGE FENICLE, DAVID WILLIAM FAHY, JOHN H. JONES, DAVID HEINMANN, HAROLD BISSELL, KURT CARLSON, ROBERT ALBINI, INDIVIDUALLY, AND AS SUCCESSOR-IN-INTEREST TO THE ESTATE OF GINO ALBINI, AND DENIS BERGSCHNEIDER,<br><br>                      Appellants;<br><br>    v.<br><br>DEBTORS ENERGY FUTURE HOLDINGS CORP., *et al.*, AND THE EFH PLAN ADMINISTRATOR BOARD,<br><br>                      Appellees. | Civil Action No. 18-381-RGA<br><br>Chapter 11<br>Bankruptcy Case No. 14-10979 |

MEMORANDUM OPINION

Daniel K. Hogan, HOGAN MCDANIEL, Wilmington, DE, attorney for Appellants.

Leslie M. Kelleher (argued) and Jeanna M. Koski, CAPLIN & DRYSDALE, CHARTERED, Washington, DC, attorneys for Appellants Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, and David William Fahy.

Steven Kazan, KAZAN MCCLAIN SATTERLEY & GREENWOOD, Oakland, CA, attorney for Appellants Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, and Denis Bergschneider.

Jeffrey M. Schlerf, FOX ROTHSCHILD LLP, Wilmington, DE; Thomas E. Lauria, Matthew C. Brown, and Joseph A. Pack, WHITE & CASE LLP, Miami, FL; J. Christopher Shore (argued), WHITE & CASE LLP, New York, NY, attorneys for Appellee Reorganized EFH/EFIH Debtors.

Jason M. Madron, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Mark McKane (argued), KIRKLAND & ELLIS LLP, San Francisco, CA; James H.M. Sprayregen, Marc Kieselstein, Chad J. Husnick, KIRKLAND & ELLIS LLP, Chicago, IL; Aparna Yenamandra, KIRKLAND & ELLIS LLP, New York, NY, attorneys for Appellee EFH Plan Administrator Board.

January 24, 2019

**ANDREWS, U.S. DISTRICT JUDGE:**

Currently pending before the Court is an appeal from the Bankruptcy Court's Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp. ("the Confirmation Order"). (D.I. 1-1). Also pending is Appellees' Motion to Dismiss the Appeal. (D.I. 40). The parties have fully briefed the issues. (D.I. 30, 40, 54, 59). The Court held oral argument on December 13, 2018. (D.I. 64). For the following reasons, the Court dismisses the appeal as statutorily moot.

**I.   BACKGROUND**

Energy Future Holdings Corp. ("EFH") and several subsidiaries (together, the "Debtors") filed Chapter 11 petitions on April 29, 2014. (D.I. 30 at 13). A subsidiary of EFH, Debtor Energy Future Intermediate Holding Company LLC, held approximately 80% ownership interest in Oncor Electric Delivery Company LLC ("Oncor"). (*Id.*). Oncor is subject to the regulatory authority of the Public Utility Commission of Texas ("PUCT"). (*Id.*) Previous plans were approved by the Bankruptcy Court but did not become effective because PUCT did not approve the necessary transactions. (*Id.*) The Confirmed Plan incorporates a merger transaction between Sempra Energy ("Sempra") and Debtor EFH. (*Id.*). PUCT approved the transaction with Sempra, and the Confirmed Plan became effective March 9, 2018. (*Id.*; D.I. 40 at 33).

Debtors EECI, Inc., EEC Holdings, Inc., LSGT Gas Co. LLC, and LSGT SACROC, Inc. (the "Asbestos Debtors") are wholly-owned subsidiaries of EFH. (D.I. 30 at 14). The Asbestos Debtors were in the business of building, maintaining, and servicing power plants. (*Id.*) Workers in those power plants were exposed to asbestos. (*Id.*) The last of the Asbestos Debtors' operating assets were sold in 2004 and the proceeds of those sales were up-streamed to EFH as interest bearing loans. (*Id.*).

During the bankruptcy proceedings, the Debtors moved the Bankruptcy Court to set a bar date for all prepetition claims (the "Bar Date Motion"). (*Id.* at 15). The United States Trustee appointed an official creditors' committee comprising five unsecured creditors of EFH, EFIH, EFIH Finance, Inc., and EECI (the "E-Side Committee"). (D.I. 30 at 16; D.I. 40 at 19). After hearing objections on the Bar Date Motion, the Bankruptcy Court ordered that there would be a bar date for all prepetition claims, including those of Unmanifested Asbestos Claimants.[1] (D.I. 30 at 16; D.I. 40 at 20). This order was not appealed by any party. (D.I. 40 at 21). As the bankruptcy proceedings continued, Appellants[2] made repeated efforts to ensure that the Unmanifested Asbestos Claims were not discharged. (D.I. 40 at 24-30).

The Confirmation Order was entered on February 27, 2018. (B.D.I. 12763).[3] The Confirmation Order approved the reorganization plan ("the Plan"), including the Merger Agreement, a central piece of the restructuring transactions.[4] The Plan and Merger Agreement, as approved, provided for the restructuring of the EFH and Asbestos Debtors, including the sale of the EFH Debtors to Sempra. Appellants did not seek a stay of either the Order authorizing the merger agreement or the Confirmation Order. Appellants filed a timely notice of appeal on March 9, 2018. (D.I. 1). On appeal, Appellants assert, among other things, that the Bankruptcy

---

[1] "Unmanifested Asbestos Claimants" refers to persons who had not suffered cognizable injuries caused by prepetition exposure to the Debtors' asbestos-containing products before the bar date set in these cases but who have since suffered or will suffer such injuries. "Unmanifested Asbestos Claims" refers to the claims of such claimants. These definitions are adopted from Appellants' brief. (D.I. 30 at 9 n.1).

[2] The majority of Appellants are Unmanifested Asbestos Claimants who did not file timely proofs of claim. Appellants Fenicle and Fahy are creditors in the bankruptcy proceeding who filed timely proofs of claim and served as members of the E-Side Committee.

[3] The docket of the Chapter 11 case, captioned *In re Energy Future Holding Corp.*, Case No. 14-10979-CSS (Bankr. D. Del.) is cited herein as "B.D.I. ——."

[4] The Merger Agreement states that "an order . . . confirming plan of reorganization and authorizing all of the transactions and agreements contemplated by" the Merger Agreement was necessary for the Merger Agreement to take effect. (D.I. 45 at 353; B.D.I. 11873-1 at 85).

Court erred in discharging the claims of Unmanifested Asbestos Claimants who failed to timely file proofs of claim. (D.I. 30 at 21).

Appellees[5] move to dismiss this appeal on the following grounds: statutory mootness, equitable mootness, untimeliness, and standing. (D.I. 40 at 22). Appellees also argue that the Bankruptcy Court did not violate Due Process by discharging the claims of the Unmanifested Asbestos Creditors who failed to timely file proofs of claim. (*Id.* at 56). The constitutional issue is an interesting one. Courts should, however, avoid deciding constitutional issues unnecessarily, *Bowen v. United States*, 422 U.S. 916, 920 (1975), and therefore I express no opinion about it.

## II.   JURISDICTION

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District Courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). The Confirmation Order is a final order.

## III.   LEGAL STANDARD

The Bankruptcy Code provides,

> The reversal or modification on appeal of an authorization under [11 U.S.C. § 363(b) or (c)] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Only a good faith purchaser can claim the protections of § 363(m). Therefore, the Court is "first required to ask whether the purchaser . . . 'purchased . . . [the] property in good faith.'" *In re Pursuit Capital Management, LLC*, 874 F.3d 124, 135 (3d Cir. 2017) (quoting 11 U.S.C. § 363(m)). If its protections are warranted, § 363(m) "moots a

---

[5] Appellees are the Debtors and the EFH Plan Administrator Board.

challenge to a sale if two conditions are satisfied: '(1) the underlying sale or lease was not stayed pending the appeal, and (2) the court, if reversing or modifying the authorization to sell or lease, would be affecting the validity of such a sale or lease.'" *Pursuit*, 874 F.3d at 135 (quoting *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 499 (3d Cir. 1998)). If an order authorizing a sale is not stayed during the pendency of an appeal, the appeal is moot where the "requested remedy, if entered, would affect the validity of the sale." *Pursuit*, 874 F.3d at 127; *see also In re ICL Holding Co.*, 802 F.3d 547, 554 (3d Cir. 2015) ("the provision stamps out only those challenges that would claw back the sale"). "The purpose of § 363(m) is to promote the finality of sales." *Pursuit*, 874 F.3d at 133. "Without it, the risk of litigation would chill prospective bidders or push them to 'demand a steep discount.'" *ICL Holding*, 802 F.3d at 554 (quoting *In re River West Plaza-Chicago, LLC*, 664 F.3d 668, 671 (7th Cir. 2011)).

"A challenge to a 'central element' of a sale inevitably challenges the validity of the sale." *Pursuit*, 874 F.3d at 139 (citing *Pittsburgh Food & Beverage, Inc. v. Ranallo*, 112 F.3d 645, 649 (3d Cir. 1997)). "The validity prong of § 363(m) provides a narrow exception that may lie for challenges to the Sale Order that are so divorced from the overall transaction that the challenged provision would have affected none of the considerations on which the purchaser relied." *Pursuit*, 874 F.3d at 139 (cleaned up).

## IV. DISCUSSION

### A. The Confirmation Order is a "Sale Order" under § 363(m)

Appellees assert that the Confirmation Order was an "order authorizing the sale" under § 363(m) because "the Debtors could not have consummated the sale absent the Bankruptcy Court's authorization in the Confirmation Order." (D.I. 59 at 11). Appellants argue that the Confirmation Order does not trigger the protections of § 363(m) because 1) the sale order was

4

the order approving the merger and 2) § 363(m) only addresses direct appeals, not collateral attacks on sales orders. (D.I. 54 at 30).

    I agree with Appellees. The Confirmation Order is an "order authorizing the sale" under § 363(m). Where "the underlying asset sale [is] conducted under § 363(b) of the Bankruptcy Code . . . it implicates 11 U.S.C. § 363(m)." *ICL Holding*, 802 F.3d at 553. Appellants contend that the Confirmation Order cannot be an "order authorizing the sale" because the Bankruptcy Court previously entered a separate order approving the Merger Agreement. (B.D.I. 11873). That Order authorized the "Debtors' entry into the Merger Agreement" and approved the Merger Agreement in "its entirety." (*Id.* at 3). However, the Merger Agreement specifically provided that the closing of the Merger Agreement was subject to the following condition: "The Bankruptcy Court shall have entered . . . (i) the order . . . approving [the Merger] Agreement . . . and (ii) an order . . . *confirming the Plan of Reorganization* . . . and *authorizing all of the transactions* and agreements contemplated by [the Merger] Agreement." (B.D.I. 11873-1 at 85 (emphasis added)). As a result, both the Merger Approval Order and the Confirmation Order were necessary for full authorization of the Merger Agreement. Additionally, the Plan itself contemplated that:

> The EFH Confirmation Order shall and shall be deemed to, pursuant to both Section 1123 and Section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the plan, including the Restructuring Transactions.

(B.D.I. 12763-1 at 58). Thus, the Confirmation Order is an order authorizing a sale (the merger agreement) and § 363(m) applies.

### B. Sempra is a Good Faith Purchaser

The Bankruptcy Court included a good faith finding in the Confirmation Order. (B.D.I. 12763 at 64). It stated, "Sempra Energy and its affiliates are good faith purchasers within the meaning of section 363(m)" as "[t]he purchase price to be provided by Sempra . . . was not controlled by any agreement between Sempra . . . and any potential bidders . . . and was not reduced or suppressed in any manner by any arrangement involving Sempra . . . and any creditor." (*Id.*). Appellants have not challenged this finding of good faith under § 363(m).[6] Therefore, I will adopt the Bankruptcy Court's finding that Sempra is a good faith purchaser.[7]

### C. A Stay of the Confirmation Order was not Requested or Issued

It is undisputed that Appellants did not request a stay of the Confirmation Order and no stay has been issued. (D.I. 54 at 29). Appellants argue that they "could not pay a bond sufficient to stay the $9.45 billion transaction." (*Id.* at 29 n.19). But the requirement of seeking a stay and securing a stay is not excused simply because Appellants purportedly could not pay a bond sufficient to stay the Confirmation Order. Courts may invoke their equitable powers to grant a stay without requiring a bond in extraordinary circumstances. *Bank of Nova Scotia v. Pemberton*, 964 F. Supp. 189, 191-92 (D.V.I. 1997) (summarizing case law). Inability to pay does not excuse a party from seeking the required stay under § 363(m). Therefore, the appeal will be moot unless the requested relief will not affect the validity of the sale.

---

[6] Appellants did suggest at oral argument that the § 363(m) statement in the Confirmation Order is boilerplate and therefore insufficient to trigger the § 363(m) protections. (D.I. 64 at 24:1-4, 25:20-25). I disagree. Additionally, there was no objection or challenge to the Bankruptcy Court's good faith finding below. Thus, this issue was not preserved for appeal.

[7] Whether Sempra was a good faith purchaser should not be confused with Appellants' challenge to the determination that the *Debtors* entered the Plan in good faith. (D.I. 30 at 46-48).

### D. The Requested Relief Will Affect the Validity of the Sale

Under Third Circuit law, an appeal is statutorily moot where the Appellants' requested relief will affect the validity of the sale if granted. "A challenge to a 'central element' of a sale inevitably challenges the validity of the sale." *Pursuit*, 874 F.3d at 139 (citing *Pittsburgh Food*, 112 F.3d at 649). "The validity prong of § 363(m) provides a narrow exception that may lie for challenges to the Sale Order that are so divorced from the overall transaction that the challenged provision would have affected none of the considerations on which the purchaser relied." *Pursuit*, 874 F.3d at 139 (cleaned up). Appellants' requested relief is a holding that, "Unmanifested Asbestos Claims are not discharged by the Confirmation Order, and that the holders of such claims retain their causes of action against the Reorganized Debtors." (D.I. 30 at 49). Thus, the Court must ask whether the discharge of the untimely filed Unmanifested Asbestos Claims is a "central element" of the sale such that a challenge to the discharge is a challenge to the validity of the sale.

Appellants argue that the discharge of the Unmanifested Asbestos Claims is "a collateral issue[] not implicating a central or integral element of a sale." *Pursuit*, 874 F.3d at 139. As Appellants frame the issue, "A ruling that the Unmanifested Asbestos Claimants are not discharged by the plan would not impact the validity of the sale of EFH's stock; it would not 'claw back' the sale, or render the deal invalid." (D.I. 54 at 32). Appellees argue that the preservation of the Asbestos Bar Date "was a consideration on which Sempra relied in entering into and consummating the" Merger Agreement. (D.I. 59 at 13). Further, they argue the Asbestos Bar Date was integral to the sale and its removal would alter the parties' bargained-for exchange. (D.I. 59 at 14).

The requested relief requires either reversal of the Confirmation Order in its entirety or "blue-penciling" its contents. A reversal of the confirmation order would have the effect of "clawing back" the Merger Agreement because its closing is dependent on the Confirmation Order being entered. (B.D.I. 11873-1 at 85). I determine that "blue-penciling" the Confirmation Order would also affect the validity of the Merger Agreement.

The Confirmation Order limits the liability of Sempra, the purchaser, and enumerates those liabilities that will survive the reorganization plan. (B.D.I. 12763 at 47). Specifically, the Confirmation Order provides for the survival of the Class A3 claims (the Legacy General unsecured claims against the EFH debtors), the Class A12 claims (EFH Debtor Intercompany Claims), and certain property tax claims limited in amount. (*Id.*; B.D.I. 12763-1 at 45). The relief requested by Appellants would necessitate the inclusion of a fourth group of claims: any prepetition claim of an Unmanifested Asbestos Claimant against an Asbestos Debtor. (D.I. 64 at 68:4-10).

Sempra, as the purchaser of the EFIH stock, bargained to ensure that the accompanying liabilities they would take on as a result of the merger would be limited and certain. Furthermore, the Confirmation Order provides that all terms and provisions of the Plan are nonseverable and mutually dependent. (B.D.I. 12763 at 60-61). Appellants' analogies to *ICL Holding* are thus inapposite. In that case, the court dealt with an appeal of distributional terms of escrowed funds for administrative expenses and settlement proceeds from the sale of the assets. 802 F.3d at 552. The distribution of those funds had no impact on the considerations of the purchaser. Here, Appellants challenge the discharge of the Unmanifested Asbestos Claims and ask that the purchaser be saddled with more liability than it bargained for. This is not a situation

where the challenged provision is "so divorced from the overall transaction" that the relief may be granted. *Pursuit*, 874 F.3d at 139.

There is significant evidence that to attract a purchaser in bankruptcy, the debtors needed to craft a plan that gave purchasers certainty. (*See* D.I. 64 at 48:22-25; B.D.I. 12763 at 47; B.D.I. 12763-1 at 45; *see also* B.D.I. 7407 at 77:20-21 (investor representative stating the need for "a cordoning off of the liability so that we can know what we're investing into"); B.D.I. 1682 at 16; B.D.I. 12666 at 80, 86 (recognizing that bar date was included in every proposed plan)). Indeed, certainty and finality for the purchaser is one of the central goals of § 363(m). *See Pursuit*, 874 F.3d at 133. The discharge of the untimely claims, including those of the Unmanifested Asbestos Claimants, was a central and integral element of the sale. As such, any challenge to that discharge "inevitably challenges the validity of the" Merger Agreement. *Id.* at 139. Thus, Appellants request relief that I cannot grant without affecting the validity of the sale and the appeal is therefore moot under § 363(m).

## V.    CONCLUSION

For the foregoing reasons, the Court dismisses the appeal. An accompanying order will be entered.