Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4    In re:                          :

5                                     :    Chapter 11

6    ENERGY FUTURE HOLDINGS,         :    Case No. 14-10979-css

7    CORP., et al.,

8            Debtors.                :    (Jointly Administered)

9    _____:

10

11                               United States Bankruptcy Court

12                               824 North Market Street

13                               Wilmington, Delaware

14                               February 11, 2019

15                               11:00 a.m. -11:39 a.m.

16

17

18

19

20

21    B E F O R E :

22    HON CHRISTOPHER S. SONTCHI

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO OPERATOR:   LESLIE MURIN

1    HEARING re Motion of EFH Plan Administrator Board and

2    Reorganized TCEH Debtors for Entry of an Order Further

3    Enlarging the Period Within Which the EFH Plan Administrator

4    Board and Reorganized TCEH Debtors May Remove Certain

5    Actions [D.I. 13700; filed January 14, 2019]

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    RICHARDS LAYTON & FINGER LLP

4          Attorneys for Reorganized TCEH / PAB

5

6    BY:  JASON MADRON

7

8    KIRKLAND & ELLIS LLP

9          Attorneys for the Debtor

10

11    APARNA YENAMANDRA (TELEPHONICALLY)

12

13    SELIA TREMBLE SHAKWEY (TELEPHONICALLY)

14          Pro Se

15

16    ALSO PRESENT TELEPHONICALLY:

17

18    SHARON DONALDSON

19    JESSICA STEINHAGEN

20    NACIF TAOUSSE

21    PATRICIA J. VILLAREAL

22    BRADY C. WILLIAMSON

23

24

25

1                    P R O C E E D I N G S

2              CLERK:  All rise.

3              THE COURT:  Please be seated.

4              MR. MADRON:  Good morning, Your Honor.  For the

5     record, Jason Madron of Richards, Layton & Finger on behalf

6     of both Reorganized TCEH as well as the EFH Plan

7     Administrator Board.  Your Honor, I'm joined on the

8     telephone today by my co-counsel, Aparna Yenamandra of the

9     Kirkland & Ellis firm who, as Your Honor is well aware,

10    serves as lead counsel to those entities in these cases.

11             Your Honor, we have a short agenda today based on

12    the notice of agenda that we filed last week on February

13    7th.  There's just one matter that's scheduled for hearing

14    today, and that was a motion that was filed by the

15    Reorganized TCEH Debtors as well as the Plan Administrator

16    Board, who I'll refer to throughout my remarks today just as

17    the PAB, seeking to further extend their deadline to remove

18    civil actions.

19             Your Honor, in addition, we did receive

20    communications from Your Honor's chambers last Friday

21    indicating that Your Honor would like us to provide the

22    Court with a comprehensive update on what's left in the

23    cases, and we are also prepared to do that today.

24             If acceptable to Your Honor, I would suggest that

25    we dispense with the agenda matter first, and then I can

1    provide the overview of where we are and what's left to be

2    done.

3            THE COURT:  Yes.

4            MR. MADRON:  Thank you, Your Honor.

5            Your Honor, as I mentioned, we did file the motion

6    seeking to further extend the deadline to remove civil

7    actions on January 14th of this year.  The motion seeks an

8    extension of that time period from January 14th through July

9    15th of 2019.  In accordance with the local rules that were

10   in effect at that time, we noticed the motion with an

11   objection deadline of January the 28th of this year.  Prior

12   to the objection deadline, we received one formal objection

13   that was filed on the docket by the Tremble family on a pro

14   se basis.  That objection appears at Docket Entry 13709.  No

15   other formal or informal responses were either filed with

16   the Court or received by either of the movements in

17   connection with the motion.

18           Your Honor, turning to the objection, which I'm

19   sure Your Honor has had an opportunity to review, the

20   Recognized TCEH debtors and the PAB respectfully submit that

21   the objection lacks merit and should be overruled in its

22   entirety.

23           Perhaps most importantly, the Tremble family

24   currently holds no claims against any of the Debtors, nor is

25   the Tremble family an active party to any current litigation

1    with any of the Debtors.  Therefore, we would submit the

2    Tremble family simply cannot be an aggrieved party with

3    respect to the motion and lack standing to object to it.

4            As Your Honor may recall, going back in the time

5    machine, back in 2015, the Debtors had filed a motion

6    seeking entry of an order either confirming that the

7    automatic stay does not apply or, in the alternative, asking

8    Your Honor to modify the automatic stay with respect to

9    certain litigation that was then pending by and between two

10   of the Debtors, Luminant Mining Company LLC and Energy

11   Future Holdings Corp. to proceed with certain appeals that

12   had been taken by the Tremble family in Texas State Court,

13   and Luminant and EFH were named appellees in those appeals.

14           Your Honor thereafter entered an order on October

15   15th of 2015 at Docket Entry 6471 granting that motion, and

16   all of the appeals were ultimately resolved in favor of

17   Luminant and EFH on a final basis.

18           Additionally, Your Honor, the Tremble family --

19   and you may recall there was some letter briefing that took

20   place last year -- filed certain proofs of claim against

21   certain of the Debtors.  Those claims were filed

22   approximately three and a half years after the applicable

23   bar date.  All of those proofs of claim were disallowed and

24   expunged upon the occurrence of the EFH effective date by

25   operation of the Sempra plan and its terms back in March of

1    2018.

2            As such, Your Honor, the Tremble family is neither

3    a party to any active litigation or civil actions with any

4    of the Debtors, nor does the Tremble family hold any claims

5    against any of the Debtor's estates at this time.

6            Lastly, as Your Honor is aware and as I'll discuss

7    in greater detail during the global case update that will

8    follow, I know the Court is intimately familiar with the

9    PAB's material efforts that have been expended to

10   successfully make as many planned distributions as possible

11   as quickly as possible in these cases.  So certainly the

12   motion that is pending before the Court today is in no way

13   designed to make or delay making any distributions on

14   account of undisputed claims that may be had against any of

15   the Debtors' estates.

16           Your Honor, therefore, I would request that Your

17   Honor overrule the objection and grant the motion.

18   Certainly happy to answer any questions Your Honor may have,

19   and I understand that a representative -- at least one

20   representative -- of the Tremble family has dialed in to

21   participate by telephone this morning.

22           THE COURT:  Thank you, Mr. Madron.  I have no

23   questions.

24           Ms. Donaldson?

25           MS. DONALDSON:  Yes, Your Honor.  Good morning.

1          THE COURT:  Good morning.

2          MS. DONALDSON:  Your Honor, in the -- with the

3    information that Mr. Madron is stating, the Tremble family

4    did appeal to the Texas State Supreme Court, and Luminant

5    Mining did refuse to -- they opted not to respond to the

6    appeal to the Texas State Supreme Court.

7          We are not aware of the fact that we have no

8    status at all in this court proceeding in that we have a

9    valid claim that would warrant -- would warrant attention.

10          Not only that, he made mention to the late filing

11    of the proof of claim.  The attorneys for Luminant Mining

12    sent us notification that then put us in the bankruptcy a

13    year or so after it had already started.  So some of what

14    Mr. Madron was saying is simply not what occurred in this

15    process.

16          THE COURT:  Okay.  Do you have anything else you'd

17    like to say?

18          MS. DONALDSON:  I'd like to say that it would be a

19    travesty in that Luminant Mining was not legally on our

20    land, that they did take coal and lignite from our land, and

21    we were not ever compensated for any of those actions.  They

22    placed their name on our property and the courthouse as

23    owners when they clearly are not.  There were a number of

24    illegal acts that took place in this entire process, and to

25    say that we are then due no compensation for what we have

1    gone through would not be -- would not be -- would not be

2    correct, and it would not be right in any way.

3              THE COURT:  All right.  Thank you.

4              Mr. Madron, do you have a response?

5              MR. MADRON:  Sure, Your Honor.

6              To respond with respect to the further appeals to

7    -- or the request to appeal to the Texas State Supreme

8    Court, it's my understanding from counsel in Texas who

9    handled the litigation that the Supreme Court of the State

10   of Texas declined to take the appeals.  Therefore, no

11   response was required on behalf of Luminant or EFH.

12             With respect to the discussion about the taking of

13   minerals or items from the land, that was the subject of the

14   Texas State Court litigation as whether or not monies were

15   due or etc.  All those litigations were resolved in favor of

16   Luminant and EFH on a final basis.  So to relitigate them

17   here in this form, we would respectfully submit, is not

18   appropriate.

19             THE COURT:  All right.  All right.  Thank you.

20             All right.  Well, I'm going to rule, and I am

21   going to overrule the objection, but I'm not going to focus

22   or rule it -- rule based on anything with regard to whether

23   the Tremble family has a claim, whether that claim was

24   disallowed, whether the bar date had passed, whether they

25   won or lost at the Texas State Court, and whether or not

1    they're an aggrieved party.  I don't -- because I don't have

2    to get there.

3          The concern -- what's in front of me today is a

4    very simple routine motion, which is simply an extension of

5    time for the Debtors to remove to federal court pending

6    state court litigation, whether that litigation started

7    pre-petition or post-petition, and has nothing to do with

8    the merits of the underlying litigation, whether they decide

9    to remove the case or not, and is in no way affecting

10   whether that litigation can go forward.

11         If litigation is stayed by result of the automatic

12   stay and now the discharge injection, this -- that's

13   unrelated to whether or not it can or cannot be removed.

14   All I'm deciding is whether the Debtors should have six more

15   months to remove actions.  It has no effect on the status of

16   those actions.

17         So, the basis for the objection was a concern that

18   granting this motion, I believe, would either stay the --

19   stay the disbursement of payment or otherwise delay the

20   cases themselves.  And this has no effect on that one way or

21   the other.  If there are allowed claims, they'll be

22   disbursed.  If they're not allowed, they won't be.  And

23   whether or not I grant this motion has no effect on whether

24   claims are allowed or disallowed.

25         So I am going to overrule the objection on the

1   very narrow grounds of the fact that the relief being

2   requested is simply not affecting the Tremble family,

3   assuming arguendo without deciding they have some sort of

4   claim or right to payment.

5           Any questions, ma'am?

6           MS. DONALDSON:  No, sir.  I understand.  Thank

7   you.

8           THE COURT:  Okay.  You're welcome.

9           MS. DONALDSON:  Okay.  Thank you.

10          MS. SHAWKEY:  Excuse me, Judge.

11          MR. MADRON:  Thank you, Your Honor.

12          THE COURT:  I'm sorry?

13          MS. SHAWKEY:  Yes, excuse me, Judge.  This is

14  Selia Tremble Shawkey, and I guess my name was not announced

15  and everything, but I am also a part of the Tremble family.

16  And I just wanted to take a -- just one second to say thank

17  you for clearing all of this up for us, and that was really

18  all I had to say, and, again, thank you.

19          THE COURT:  Well, you're welcome, Ms. Shawkey.  I

20  saw you on this list here, but you weren't checked off on --

21  as attending, otherwise I would've called your name.  so I

22  apologize about that, but thank you for your comments.

23          MS. SHAWKEY:  No problem.

24          THE COURT:  Mr. Madron, I have your order to --

25          MR. MADRON:  Thank you, Your Honor.  I have a

1    redline, if I could approach.

2              THE COURT:  Oh, yes.  Please.

3              MR. MADRON:  Thank you.

4              Your Honor, as you'll see in the redline, we've

5    made reference to the response that was filed, today's

6    hearing having occurred, and granting the motion, and

7    overruling the response.  Although I do have a clean copy of

8    the order --

9              THE COURT:  Yeah.  Yeah.  I want to change

10   Paragraph 2 to -- what you have here is "the Tremble

11   objection is overruled on the merits and denied," but I'm

12   like to add solely on the basis of and to the extent stated

13   at the hearing.  Is that all right?

14             MR. MADRON:  That's perfectly acceptable, Your

15   Honor.

16             THE COURT:  Okay.  Can you upload that, and then

17   just let chambers know, and we'll get it -- we'll get it

18   signed?

19             MR. MADRON:  Yes, Your Honor.

20             THE COURT:  I know you know how to do that.  I

21   don't know how to do that, but --

22             MR. MADRON:  Well, fortunately I have -- I do not.

23   I am technologically challenged, but I have a lot of skilled

24   folks back at the office that do know how to do that.

25             We had uploaded a form of order, this order,

1    before the hearing understanding that Your Honor has

2    obviously converted to e-signing, so we will replace that

3    image.  Would you like a certification or counselor --?

4              THE COURT:  That's not necessary.

5              MR. MADRON:  Okay.  Very good.  We'll make those

6    changes, and it'll be uploaded --

7              THE COURT:  Thank you.

8              MR. MADRON:  -- before the end of the hearing.

9              THE COURT:  Now, Ms. Averson and Ms. Shawkey, you

10   -- oh, Donaldson.  I'm sorry.  Ms. Donaldson and Ms.

11   Shawkey, you're certainly welcome to stay on.  You don't

12   have to.  But Mr. Madron's going to give an update on the

13   status of the case.  You might find it interesting.

14             MR. MADRON:  Thank you very much, Your Honor.

15             So proceeding to the global status update, we do

16   have a fairly comprehensive update for h.

17             THE COURT:  Okay.

18             MR. MADRON:  Obviously these cases have been

19   before Your Honor for almost five years.  There are

20   thousands upon thousands of docket entries, numerous appeals

21   that were taken -- some pending, some not -- which I'll

22   discuss.  So we do have a compressive update of kind of

23   what's left and what we need to accomplish between now and

24   final decree of the remaining cases.

25             So I'll start with the update, Your Honor.  I'll

1    start with the T-side update, which is a little more

2    succinct, and then I will move to the E-side update.

3              On the T side, by orders entered by Your Honor on

4    November 3rd, 2017 at Docket Entry 12172 and May 23rd of

5    2018, Docket 13132, a final decree was entered in all of the

6    T-side subsidiary cases, leaving only the case of Texas

7    Competitive Electric Holdings Company LLC, which is Case

8    Number 1410978, open on the T side.  The Court closed the

9    rest of the cases, and claims administration pursuant to

10   your prior orders will be all conducted out of the open case

11   of Texas Competitive Electric Holding Company, which

12   nostalgically was the first case -- notwithstanding it's not

13   the lead case in the caption -- it was the first case that

14   we filed when we filed may years ago.

15             There are two primary workstreams that remain on

16   the T side -- claims and distribution issues -- and I'll

17   address each in turn.  On claims, there are two categories

18   of claims pending against the T-side Debtors.

19             The first are asbestos claims.  The vast majority

20   of the remaining T-side claims are, in fact, legacy asbestos

21   claims.  Of the approximately 5,000 proofs of claim that are

22   currently asserted against the TCEH Debtors, approximately

23   1,000 are manifested asbestos claims, and approximately

24   4,000 are unmanifested asbestos claims.

25             Given that the number of remaining non-asbestos

1    proofs of claim have dwindled significantly, the Reorganized

2    TCEH Debtors are analyzing in earnest options to resolve the

3    asbestos claims, including the potential use of a

4    third-party administrator to do so.

5          Your Honor will recall that you entered an order

6    estimating the liability on the T side of the asbestos

7    claims.  So looking at the liability that Your Honor

8    estimated versus the number of proofs of claim, we're

9    thinking that might be a sensible way, just given what the

10   ultimate distribution pool would be, to use a third-party

11   administrator to help administer them.  But we're still

12   working on that, and we'll be addressing that in earnest.

13         Your Honor, secondly, there are the non-asbestos

14   claims.  There are only a handful of non-asbestos claims

15   that remain asserted against the T-side Debtors.  The

16   primary open claims, one is a claim asserted by the EPA.

17   There's a substantial -- as part of the overall claim

18   reserve in the case, it's not a separate reserve.  There's a

19   fairly substantial reserve for the EPA claim.

20         THE COURT:  Is that with the New Mexico property?

21         MR. MADRON:  Your Honor --

22         THE COURT:  With the radiation?

23         MR. MADRON:  The claim is asserted by the U.S.

24   Environmental Protection Agency.

25         THE COURT:  Yeah.

1           MR. MADRON:  I'm not certain to which site --

2           THE COURT:  Okay.

3           MR. MADRON:  -- it relates.  Maybe Ms. Yenamandra

4    on the line knows, but I do not off the top of my head.

5           MS. YENAMANDRA:  Yes, Your Honor.  It's Aparna

6    Yenamandra from Kirkland & Ellis.  That's right.  It relates

7    to the New Mexico site.

8           THE COURT:  Okay.  Thank you.

9           MR. MADRON:  Thank you.

10          So, Your Honor, that issue is subject to certain

11   litigation that's pending --

12          THE COURT:  Yeah.

13          MR. MADRON:  -- in another court.  There was an

14   initial granting of a motion to dismiss in the U.S. District

15   Court for the Northern District of Texas providing a ruling

16   last October determining that the money penalties sought by

17   the EPA were time barred but that the relevant statute of

18   limitations did not apply to adjunctive relief.

19          The case was subsequently remanded to the district

20   court to determine whether the imposition of equalities

21   relief through an injection was appropriate.  Currently, the

22   remand is on hold because of the petition in the Fifth

23   Circuit for rehearing en banc from Luminant and Big Brown,

24   who are the two T-side named entities.  The response

25   deadline for the en banc petition was delayed in part due to

1    the government shutdown-related furlough.  The government's

2    response deadline for that petition is, in fact, tomorrow.

3    So that workstream is moving along but still work to be done

4    there.

5                We're also managing a handful of other claims,

6    including -- as Your Honor will recall -- the City of Dallas

7    claim.  That claim had been subject to some intimal skirmish

8    before Your Honor.  We were moving in the direction of going

9    to trial.  That had been taken off calendar, and that matter

10   remains subject to discussion among the parties and

11   postnatal for litigation before Your Honor.

12               THE COURT:  That was two or three years ago.

13               MR. MADRON:  It was a long time ago, yes.

14               THE COURT:  Okay.

15               MR. MADRON:  Yeah.  I mean, I want to say that it

16   was maybe a couple of Mays ago --

17               THE COURT:  Okay.

18               MR. MADRON:  -- that we were queuing up towards

19   trial, and then ultimately it came off.

20               Your Honor, so that's the claims update on the T

21   side.  So, you know, asbestos and a relatively limited

22   universe of other claims.

23               On the distribution side, as I had alluded before,

24   the Reorganized TCEH Debtors are holding funds in escrow for

25   additional distributions to be made on account of allowed

1    claims.  A substantial majority of the escrow fund has

2    already been distributed, but its final amounts will depend

3    on lability, if any, under the current outstanding claims.

4    Distributions will be made on a rolling basis following the

5    resolution of the remaining claims asserted against the T

6    side.

7           In January of this year, the Reorganized TCEH

8    Debtors confirmed with all of the retained professionals on

9    the T side that their professional fee claims had been

10   allowed and paid indefeasibly on a final basis and that no

11   further monies were owed.  As a result of that, the T-side

12   professional fee escrow account that had been established

13   under the plan, we were able to close that, and the

14   remaining funds that were in that escrow account were

15   returned to Vistra, who was entitled to any remainder in the

16   escrow following final payment of all professionals' fees.

17   So that --

18           THE COURT:  Well, they need the money because

19   every other day they buy another company.  I don't know if

20   you've been following them, but they are --

21           MR. MADRON:  I do follow it, yes.  Then there was

22   a tender offer not long ago as well, so they're -- they've

23   been spending.

24           So that's the update on the T side, Your Honor.

25   If Your Honor has questions on the T side, otherwise I'll

1    move to the E side.

2              THE COURT:  No.

3              MR. MADRON:  Thank you.

4              On the E side, there are three primary

5    workstreams: again claims, distributions, and then lastly

6    appeals.  And I'll provide an update on each of those

7    categories.

8              On claims, as will sound familiar from the T side,

9    we have two buckets.  We have asbestos claims and

10   non-asbestos claims.

11             On the asbestos front, 27,000 of the 30,000 claims

12   that are currently on the E-side claims register are

13   asbestos claims.  The liability for those claims, if any, as

14   Your Honor will recall, pursuant to the terms of the merger

15   agreement, are -- the liability was assumed by Sempra.

16   Therefore, the PAB has not been running first chair on

17   administrating those claims as it's not the PAB's liability,

18   but Sempra has been dealing with that.

19             Of the 3,000 non-asbestos claims, they rate --

20   relate primarily to tax claims, inter-company claims, some

21   D&O claims, indemnification claims, among some others.  Many

22   of these claims, the administration of dealing with them was

23   on hold pending the allocation issues and actually making

24   the distributions that I'll get to momentarily that were

25   made over the course of the last couple of months.

1          Now that the PAB has been making the distributions

2     that the allocation issues have resolved, we expect a

3     substantial majority of these remaining non-asbestos claims

4     will be resolved either through expungement pursuant to the

5     terms of the Sempra plan, reconciliation with the respective

6     claimants, or further omnibus objections that will be

7     forthcoming from the PAB to be decided by Your Honor in the

8     coming weeks and months.

9          Secondly, Your Honor, turning to distributions, as

10    Your Honor is keenly aware from the submissions that we made

11    under certification of counsel over the last couple of

12    months, specifically at Docket Entries 13673 and 13696, much

13    of the PAB's recent efforts have focused on getting the

14    substantial monies that have escrowed out the door to

15    creditor groups.

16          As part of this effort in January of this year,

17    the PAB also confirmed with all E-side professionals that

18    all pre-effective-date fees were paid in full.  The

19    remaining sums that were in the E-side escrow account were

20    also -- will also be distrusted out to other creditors on

21    the E side at this point as that escrow account has likewise

22    been closed.

23          Specific to the PAB's efforts to make

24    distributions over the course of the last couple of months,

25    the PAB has processed three distributions to the following

1    classes:  Class A4, who are the EFH legacy note claims;

2    Class A5, the EFH unexchanged note claims; Class A6, the EFH

3    LBO note primarily claims; Class A11, the TCEH sentiment

4    claims; Class B5, the EFH LBO note guarantee claims; and

5    Class B6, general unsecured claims against the EFIH Debtors.

6            The PAB has also made five distributions to

7    holders of allowed claims in Class A7, which were the EFH

8    swap claims.

9            Moreover, at this time, all turnover classes under

10   the plan, the following classes have been paid in full:

11   Class A5, who I mentioned before; Class A8, who are the EFH

12   non-qual claims; A10, the general unsecured claims asserted

13   against EFH.  All distributions to which those three classes

14   are entitled under the plan have been made, so those are the

15   -- they're done.

16           Lastly, Your Honor, unless Your Honor has

17   questions about distributions, I'll turn to appeals.

18           THE COURT:  How much money is left in the race at

19   the EF -- at the E side for distribution in the escrow?

20           MR. MADRON:  On that, Your Honor, again I

21   apologize.  I'm going to have to use Ms. Yenamandra as a

22   crutch because I do not know the answer to that.

23           THE COURT:  Okay.

24           MR. MADRON:  But if Ms. Yenamandra does know, that

25   would be --

1            MS. YENAMANDRA:  Sure.  Your Honor, there is

2     approximately 4 million left at EFH and approximately 10

3     million left at EF -- I'm sorry.  Reverse.  There's

4     approximately 4 million left at EFIH and approximately 10

5     million left at EFH.  And that 10 million at EFH includes

6     the $4 million, Your Honor may recall, Mr. Hogan requested

7     on account of his substantial contribution claim, which is

8     up on appeal.

9            THE COURT:  Right.

10           MS. YENAMANDRA:  We just wanted to (indiscernible)

11    hold those funds until the appeals process had run.

12           THE COURT:  Okay.  Thank you.

13           MR. MADRON:  Thank you, and my apologies, Your

14    Honor for not knowing that.

15           THE COURT:  That's okay.

16           MR. MADRON:  Your Honor, then lastly, the final

17    update is on the appeals

18           THE COURT:  Right.

19           MR. MADRON:  There are -- or there were four

20    primary categories of appeals.  All of the appeals are on

21    the E side of the house that remain at this point.  They

22    fall into the four categories that were the

23    allocation-related appeals.  They're the asbestos appeals,

24    the NextEra termination fee proceedings, and then there's an

25    appeal from a pro se gentleman, Mr. Wayne English.  Your

1    Honor may recall -- again, way back -- we had objected to

2    Mr. English's -- he had $100,000 proof of claim.  He was

3    looking for the 25,000 difference between what he sold his

4    claim for and what he received under the plan.  Your Honor

5    disallowed the claim.  It went to the district court.  You

6    were affirmed, and now it's in the Third Circuit.  So that's

7    obviously not a very hot piece of litigation but one that

8    remains.

9         On the allocation-related appeals, pursuant to

10   Your Honor's January 4th, 2019 distribution order at Docket

11   13697, the various allocation-related appeals that were then

12   pending before Judge Andrews, some of them were in various

13   states of being stayed pending the outcome of the allocation

14   --

15        THE COURT:  Mh hmm.

16        MR. MADRON:  -- litigation were dismissed as

17   follows.  First, you -- Elliott and UMB Banks appeals of the

18   Sempra confirmation order with respect to Your Honor's

19   approval of the Debtor's exercise of their discretion to set

20   the $275 million reserve on account of the termination fee.

21   That was Appeal 18-400 and 184-56.  Those were both

22   dismissed with prejudice.

23        Next, Elliott's appeal of Your Honor's order

24   authorizing the PAB to participate in the allocation

25   proceedings.  That appeal had been generally stayed, and

1    that was Appeal 18-921.  That was dismissed as well.

2            Elliott's appeal of Your Honor's order authorizing

3    the PAB to reimburse the fees and expenses of certain former

4    directors and officers in connection with the allocation

5    litigation.  That was Appeal 18-1225, also dismissed.

6    Elliott's appeal of Your Honor's allocation-related findings

7    and the findings of fact conclusions of all attendant

8    thereto.  That was 18-1823.

9            And then lastly, the EFH ad hoc groups

10   cross-appeal of Your Honor's allocation ruling at 18-204.

11   That one was also dismissed with prejudice pursuant to the

12   terms of your January 4th order.

13           So that rounds out allocation appeals.  Those are

14   all finally finished.  Turning --

15           THE COURT:  So 2018 was a big appeal year.  I was

16   appealed over 20 times in 2018.

17           MR. MADRON:  And I would --

18           THE COURT:  Which is a personal record.

19           MR. MADRON:  I would venture to say most of those

20   likely in this case.

21           THE COURT:  Yes, the majority were in this case.

22           MR. MADRON:  Your Honor, so turning to

23   asbestos-related appeals, there are three asbestos-related

24   appeals.

25           THE COURT:  So there's nothing left -- there's

1   nothing left on appeal with regard to Elliott?  I thought

2   there was one appeal that was not taken care of that

3   involved Eliot.

4           MR. MADRON:  Well, I'll get to the -- there was

5   the appeal with respect to NextEra --

6           THE COURT:  Oh, yeah.  Okay.

7           MR. MADRON:  -- that Elliott is participating in.

8           THE COURT:  Right.  Didn't they have another

9   action that they -- that -- I must be misremembering.  I

10  thought they had another appeal that wasn't going to be

11  dismissed as a result of the deal in January, but I may be

12  wrong.

13          MR. MADRON:  I believe -- and Ms. Yenamandra can

14  correct me if I'm wrong -- I believe that all of the Elliott

15  appeals, whether it be on allocation issues or the

16  confirmation order --

17          THE COURT:  Are all taken care of.

18          MR. MADRON:  -- have all been dismissed.

19          THE COURT:  Okay.

20          MS. YENAMANDRA:  Yes, that's right.  Your Honor

21  may be recalling we sent you a draft of the stipulation

22  while we were still working through it, and dismissal of the

23  last appeal was in the redline.

24          THE COURT:  Oh, okay.  Thank you.

25          MR. MADRON:  So, Your Honor, back to the

1    asbestos-related appeals, there are three of those.  The

2    first is from Your Honor's order confirming the Sempra plan.

3    That's Appeal 18-381.  The second from Your Honor's order

4    denying the allowance of a substantial contribution claim,

5    which is 18-877.  And then third, the appeal from Your

6    Honor's order denying as moot the need to set a reserve on

7    account of the substantial contribution claim.  That's the

8    $4 million Ms. Yenamandra was discussing a moment ago.  And

9    that was Appeal 18-878.

10           The district court has issued decisions on all

11   three of these.  On -- most recently -- well, not most

12   recently.  On January 24th of this year, Judge Andrews

13   dismissed the appeal of the confirmation order as

14   statutorily moot.  The time to notice an appeal of that to

15   the Third Circuit has not yet expired, so I think we likely

16   presently expect that a further appeal will be taken, but

17   time will tell on that.

18           Secondly, on -- and this is most recently.  On

19   January 30th of this year, Judge Andrews affirmed Your

20   Honor's denial of the substantial contribution claim that

21   had --

22           THE COURT:  Mh hmm.

23           MR. MADRON:  -- request that had been made.  As

24   with the latter appeal -- or former appeal -- the time to

25   file a notice of appeal on that also has not yet run.

1   That'll happen later this month, so we'll see what, if any,

2   further action there is there.

3            And then lastly, on November 26th of 2018, Judge

4   Andrews affirmed Your Honor's finding of moot the need to

5   set a reserve.  The appeal period for that expired, and no

6   appeal was taken of that.  So of the asbestos workstream,

7   there are two --

8            THE COURT:  Two.

9            MR. MADRON:  -- appeals where we could see further

10  elevation, but we'll find out by the end of the month.

11           THE COURT:  Okay.

12           MR. MADRON:  Lastly -- or not lastly.  Third,

13  we've got the NextEra termination fee issue.  With respect

14  to the litigation there, there are four components.  First,

15  NextEra has a pending appeal of Your Honor's order granting

16  Elliott's motion to reconsider.  As Your Honor knows, the

17  Third Circuit affirmed your reconsideration ruling and

18  denied a petition for hearing en banc.  However -- and I

19  informed Your Honor's chambers of this -- some weeks ago,

20  NextEra did proceed to file the petition for writ of

21  certiorari before the Supreme Court.  That's pending at the

22  Supreme Court Docket 18-957.

23           It's my understanding that Elliott and the PAB --

24  and I believe I also informed Your Honor's chambers of this

25  -- do intend to file an opposition to the petition for writ

1    of certiorari.  That opposition is currently due on February

2    the 25th.  However, as I am informed by minds greater than

3    I, it's customary in the Supreme Court -- Elliott sent a

4    letter to the Supreme Court, I believe last week, asking for

5    a customary 30-day extension of that deadline.  Assuming

6    that is granted, as I understand it's fairly perfunctory and

7    should be, that would lead the deadline to oppose the

8    petition for writ in late March.

9              THE COURT:  And the PAB is participating?

10             MR. MADRON:  Yes.

11             Second, Your Honor, we've got -- so that's the

12   reconsideration piece in the Supreme Court with that

13   briefing ongoing on the petition.

14             Second, we have NextEra's appeal of Your Honor's

15   ruling denying NextEra's application for the backup admin

16   request of 60 million as an alternative administrative

17   expense.  This matter in which the PAB and Elliott jointly

18   participate, as I alluded a moment ago, we filed a joint

19   brief in opposition to this appeal some time ago.  This

20   appeal was fully briefed before Judge Andrews, and we're

21   awaiting either a decision for oral argument to be scheduled

22   or a disposition of this appeal on the papers, and then

23   obviously there would be an opportunity for the losing party

24   to take it further from there.  But that, again, is briefed

25   and awaiting decision, and we'll have to see, you know --

1           THE COURT:  Okay.

2           MR. MADRON:  -- what the timing from the District

3     Court is on that.

4           Third, Your Honor, there's NextEra's appeal of

5     Your Honor's order authorizing the PAB to distribute the

6     $275 million reserve that had been set for the NextEra

7     termination fee.  That's Appeal 18-1769.  A briefing in this

8     appeal remains ongoing.  NextEra's -- well, it's actually

9     getting just underway.  NextEra's opening brief is due on

10    February the 25th, and the appellee's opening brief is not

11    due until April the 8th, with NextEra obviously having reply

12    opportunity after that.  So that is still ongoing and --

13          THE COURT:  In front of Judge Andrews?

14          MR. MADRON:  In front of Judge Andrews.  All of

15    the district court appeals --

16          THE COURT:  Yeah.

17          MR. MADRON:  -- are before Judge Andrews.

18          THE COURT:  He reminds me of that often.

19          MR. MADRON:  Fourth, Your Honor, and finally on

20    the NextEra front, Your Honor will recall that we still have

21    the adversary proceeding that was brought by the Debtors

22    against NextEra back in early 2017 pending before Your

23    Honor.  That's at 17-50942.  As Your Honor will recall, this

24    adversary proceeding was pretty promptly stayed right after

25    Your Honor granted Elliott's motion for reconsideration.

1      THE COURT:  Excuse me.

2      MR. MADRON:  Certainly.

3      Per Your Honor's January 24th, 2019 -- per your

4  January 24th, 2019 order requesting a status update, the PAB

5  has drafted a joint status update and circulated that to

6  NextEra and the intervener plaintiffs for review and

7  comment.  Although Your Honor may recall that my firm is not

8  serving as co-counsel to the Debtors in connection solely

9  with the adversary proceeding due to a conflict issue, I

10 understand from my colleagues at Kirkland & Ellis that the

11 draft status report will be timely filed with Your Honor by

12 this Thursday.  So that will provide Your Honor with an

13 update on the parties' positions for that stayed adversary

14 proceeding.

15      THE COURT:  Okay.  Thank you.

16      MR. MADRON:  And then lastly, Your Honor -- last,

17 but not least, as I alluded a little while ago, we have Mr.

18 English.  He has a pending Third Circuit appeal that --

19 where he appealed the district court's affirmance of Your

20 Honor some time ago.  That's pending an Appeal 18-2239.  It

21 is pending before the panel for summary disposition at this

22 point, so as soon as the panel gets to it, I think we'll see

23 a resolution on that.

24      THE COURT:  On a -- on a motion or disposition on

25 the merits?

1           MR. MADRON:  I believe it's pending for -- we

2   didn't have to brief it.  I believe --

3           THE COURT:  Oh, okay.

4           MR. MADRON:  -- that the panel is just going to

5   dispense with it on the papers.

6           THE COURT:  Okay.  All right.

7           MR. MADRON:  We were not required to actually, you

8   know -- we briefed.  We did appellate brief in the district

9   court.

10          THE COURT:  Yeah, yeah.

11          MR. MADRON:  But they're not asking for them --

12          THE COURT:  Okay.

13          MR. MADRON:  -- at the Third Circuit level.

14          THE COURT:  All right.

15          MR. MADRON:  So presumably, as soon as the panel

16  has an opportunity to get to it, they will dispense with

17  that in a due course.

18          THE COURT:  Okay.

19          MR. MADRON:  So that, Your Honor, is a lengthy

20  discussion of what we have left.  So the good news is we're

21  winnowing the universe of items to work on, but we still

22  have a number of active workstreams.  You know, suffice to

23  say that PAB and the Reorganized TCEH Debtor and their

24  professionals, you know, intend to work in earnest to bring

25  all these open issues to a conclusion as promptly as

1    practicable.

2            Obviously, we appellate practice, you know,

3    there's variability on the time for that.  But at least

4    insofar as getting things done before Your Honor, to

5    potentially be in a position to move to close additional

6    cases, we will work in earnest to do that as promptly as

7    possible.  Difficult to give Your Honor exact assessment of

8    what that magic date is going to be, but it's certainly

9    something on our collective radars, and we're appreciative

10   of concluding the case promptly.

11           THE COURT:  Okay.  Well, of course you will.  And

12   thank you very much.  There is more to do than -- well, I

13   knew the appeals were ongoing and obviously accomplished a

14   lot with the settlement with Elliott and UMB, and as well as

15   the disposition recently by Judge Andrews of the asbestos

16   issues.

17           Of course, cases can be closed while appellate

18   litigation is going on, and we can reopen them if necessary

19   -- well, I don't -- I'm not telling you anything you don't

20   already know.  But I was fantasizing about having the cases

21   closed before the fifth anniversary, but I suppose that's a

22   fantasy that's not going to happen, but I know you're

23   working hard.  This has been very helpful -- very, very

24   helpful.  Thank you.

25           MR. MADRON:  My pleasure, Your Honor.  Unless Your

Page 33

1    Honor has any other questions, that's all we have, and we

2    will work to get that other order uploaded --

3              THE COURT:  All right.

4              MR. MADRON:  -- promptly today.

5              THE COURT:  Please do.  Thank you very much.

6    We're adjourned.

7              MR. MADRON:  Thank you very much, Your Honor.

8              (Whereupon these proceedings were concluded at

9    11:39 AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 34

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya

7    Ledanski Hyde

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital1@veritext.com, c=US
Date: 2019.02.12 16:23:49 -05'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 12, 2019