# Exhibit E

Debtors' Motion to Reject the Assumed Water Lease [Docket No. 6141]

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Hearing Date: October 15, 2015 at 10:30 a.m. |
| | ) | Objection Deadline: October 6, 2015 at 4:00 p.m. |

**MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL*., FOR ENTRY OF AN ORDER AUTHORIZING REJECTION OF A PREVIOUSLY ASSUMED NONRESIDENTIAL REAL PROPERTY LEASE BETWEEN LUMINANT GENERATION COMPANY LLC AND THE CITY OF DALLAS, TEXAS, EFFECTIVE *NUNC PRO TUNC* TO SEPTEMBER 22, 2015**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing the Debtors to reject that certain Untreated Water Purchase Contract, executed as of March 10, 2011, effective as of January 1, 2011, and adopted by resolution of the City of Dallas, Texas ("Dallas") on February 23, 2011, between Luminant Generation Company LLC ("Luminant") and Dallas, including any related agreements, amendments, or modifications thereto (the "Water Rights Lease"),[2] effective *nunc pro tunc* to September 22, 2015. In support of this Motion, the Debtors submit the *Declaration of Robert Frenzel in Support of the Motion of Energy Future Holdings Corp.,* et al*., For Entry of an Order*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The Debtors previously assumed the Water Rights Lease on October 27, 2014 as a nonresidential real property lease in advance of the deadline set forth under section 365(d)(4) of the Bankruptcy Code. *See* Order Approving the Assumption of Certain Executory Contracts and Unexpired Leases [D.I. 2574].

RLF1 13040511v.1

**A-248**

*Authorizing Rejection of a Previously Assumed Nonresidential Real Property Lease Between Luminant Generation Company LLC and the City of Dallas, Texas, Effective* Nunc Pro Tunc *to September 22, 2015* (the "Frenzel Declaration"), filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully state as follows.

**Jurisdiction and Venue**

1.　The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.　Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.　The bases for the relief requested in this Motion are sections 105, 365(a), 503(b)(7), and 554(a) of title 11 of the United States Code (the "Bankruptcy Code") and rules 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Relief Requested**

4.　By this Motion, the Debtors seek entry of an Order authorizing the Debtors to reject the Water Rights Lease, effective *nunc pro tunc* September 22, 2015 (the "Rejection Date").

**Background**

5.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849]. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors (the "Creditors' Committee") in these chapter 11 cases on May 13, 2014 [D.I. 420]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

**I.      LEASE TO BE REJECTED.**

6.      On February 18, 1974, Texas Utilities Generating Company, predecessor-in-interest to Luminant ("Texas Utilities"), and the Sabine River Authority of Texas (the "SRA")[3] entered into a water supply facilities agreement whereby SRA would construct, own, and operate the Lake Fork Reservoir and Texas Utilities would pay SRA amounts to help cover the construction bonds, and operating and maintenance costs, and, in return, have the right to use up to 120,000 acre-feet of water per year from SRA's water rights in the Lake Fork Reservoir (the "TXU Junior Water Rights"). That same year, the Texas Water Rights Commission, predecessor to the Texas Commission on Environmental Quality ("TCEQ"),

---

[3] The Debtors are also parties to a contract, dated as of April 1, 2007, with the SRA (the "SRA Contract") that provides for, among other things, the release of the Luminant Water (as defined herein) from the SRA to Luminant. Under its terms, the SRA Contract expires on the date on which Luminant's rights to the Luminant Water under the Water Rights Lease expires. Substantially contemporaneous herewith, the Debtors are moving to reject the SRA Contract out of an abundance of caution consistent with the Debtors' procedures for the rejection, assumption, or assumption and assignment of executory contracts and unexpired leases [D.I. 2015].

3

RLF1 13040511v.1

A-250

granted Permit No. 2948 to SRA allowing it to construct the Lake Fork Reservoir, impound a certain amount of water in the Lake Fork Reservoir, and divert a certain amount of water from the Lake Fork Reservoir for industrial use (the "SRA Senior Water Rights").

7. On October 1, 1981, SRA, Texas Utilities, and Dallas entered into a Water Supply Contract and Conveyance Agreement (the "Water Rights Option Agreement") under which Dallas obtained the TXU Junior Water Rights from Texas Utilities (following such transfer, the "Dallas Junior Water Rights"). Texas Utilities entered into the Water Rights Option Agreement, which allowed it to reserve an option to obtain, for a period running through the end of 2013, the right to use up to 17,000 acre-feet of water out of the Dallas Junior Water Rights (the "Water Rights Option"), based on potential long-term plans, including possible expansion of the Martin Lake Steam Electric Station ("MLSES"), located in Tatum, Texas. Under the Water Rights Option Agreement, Texas Utilities' deadline to exercise the Water Rights Option was to expire on September 1, 1994.

8. On July 30, 1986, the SRA, Texas Utilities, and Dallas amended the Water Rights Option Agreement to extend Texas Utilities' deadline to exercise the Water Rights Option to September 1, 2009, and to extend the term of the water use right (if the Water Rights Option was exercised) from December 31, 2013 to the date that is 40 years from the date of exercise. TXU Generation Company LP, predecessor-in-interest to Luminant, exercised the Water Rights Option for the right to use up to 17,000 acre-feet of water out of the Dallas Junior Water Rights on July 24, 2006.

9. In 2007, SRA and Luminant entered into a water release agreement setting forth the terms of SRA's release of water (from the SRA Senior Water Rights) for use by Luminant (in connection with its exercise of the Water Rights Option for up to 17,000 acre-feet of water out of

4

the Dallas Junior Water Rights). Then, in 2011, to maintain sufficient water levels in Martin Lake in connection with the operation of the MLSES, Luminant and Dallas entered into the Water Rights Lease providing Luminant the right to use up to 12,000 acre-feet of water per year for a defined term commencing on January 1, 2011 and remaining in effect for a term of 40 years until December 31, 2050 (the "<u>Luminant Water</u>").[4] Luminant entered into the Water Rights Lease in a time of drought, when Martin Lake was at approximately 50 feet of conservation level,[5] and with the foresight to manage its potential water needs at Martin Lake.

## II.   COSTS AND USAGE UNDER THE WATER RIGHTS LEASE.

10.   The Debtors' payments under the Water Rights Lease are calculated based on the current prevailing rate for untreated water, as specified by Dallas ordinance, and all costs, fees, or charges imposed by the SRA to implement deliveries of water and maintain necessary water delivery facilities. The rates under the Water Rights Lease are subject to change from time to time. In fact, the Debtors have experienced significant increases in the rate since the inception of the Water Rights Lease. Indeed, the current prevailing rate for the Luminant Water is $182.90[6] per acre-foot compared to $155.37 per acre-foot in 2011. The Debtors are required to pay for the Luminant Water, regardless of whether the Debtors actually use any of the Luminant Water. While the rates have increased, the Debtors' usage of water under the Water Rights Lease has decreased, with zero acre-feet being used in 2014 and 2015, compared to over 12,000 acre-feet in 2011 and over 18,000 acre-feet in 2012.

---

[4]   The Water Rights Lease is subject to the terms of the Water Rights Option Agreement.

[5]   Martin Lake has a capacity conservation level of 306 feet. See Comprehensive Sabine Watershed Management Plan Report, *Section 3 - Existing Surface Water Supplies*, http://www.sratx.org/srwmp/comprehensive_plan/final_report/html/Section3/Section3.htm (last visited September 22, 2015).

[6]   The 2015 rate does not include the costs, fees, and other charges imposed by the SRA for the period. As such, the rate is expected to be substantially higher than what is currently reflected.

11. A number of reasons have contributed to the decrease in water usage under the Water Rights Lease. Most importantly, Martin Lake and most of east Texas' reservoirs have fully recovered from the 2011 drought.[7] Further, the MLSES is currently in seasonal operations and requires substantially less water to maintain operations than previously required. Furthermore, the longer-term forecast generation profile for MLSES is diminished due to expected market conditions. Finally, the Debtors are not currently considering an expansion of the MLSES that would require use of the Luminant Water. As such, the Debtors are paying for an asset that is not utilized, is not expected to be utilized, has gotten more expensive each year, and is forecast to become increasingly more expensive in the future.

12. On May 15, 2015, Dallas notified Luminant that in response to a substantial rate increase from the SRA, the rate payable by Luminant to Dallas would increase beginning in October 1, 2015. The increased rate will result in approximately $1 million of additional payments annually from Luminant to Dallas in order to continue the Water Rights Lease, an approximate fifty-percent (50%) increase. Dallas has been engaged in protracted litigation with SRA regarding this rate increase (the "SRA-Dallas Litigation"), but there is no guaranty that the SRA-Dallas Litigation will be resolved in Dallas' favor. Further, even if Dallas is successful in the SRA-Dallas Litigation, Luminant has no guarantee that its rate will be reduced or to what it will be reduced. Thus, Luminant remains exposed to uncertain payments for the Luminant Water through the end of the Water Rights Lease term in 2050.

### III. RESALE RESTRICTIONS UNDER THE WATER RIGHTS LEASE.

13. The Water Rights Lease allows the Debtors to resell any unused Luminant Water to a third party. The Water Rights Lease, however, restricts resale by the Debtors to short-term

---

[7] As of September 22, 2015, Martin Lake is 87.7 percent full with a water level of 303.97 feet. *See* Water Data for Texas, http://www.waterdatafortexas.org/reservoirs/individual/martin (last visited September 22, 2015).

6

RLF1 13040511v.1

A-253

water agreements of no longer than a three-year term.  The general nature of water usage and needs is not conducive to short-term water leases.  First, the cost outlays prohibit most short-term water leases because, many times, the lessee is required to build the infrastructure necessary to transport or divert the water.  Second, parties seeking water are typically interested in satisfying long-term water needs and typically seek agreements with a minimum term of ten (10) years to satisfy these needs.  In fact, SRA tends to not favor the issuance of short-term subleases because of the possibility that the entity subleasing the water will ultimately need it long-term.  As such, a maximum term length of three years makes this water virtually unmarketable.

14.     The Debtors are also limited in the sources to which this water can be marketed under Texas law.  While other basins in Texas may be depleted or in need of water, the ability of Debtors to perform inter-basin transfers is an arduous, lengthy, and costly regulatory process.  Once submitted, an application for inter-basin transfer is subject to notice, comments, at least one public meeting, and submission of a drought contingency plan.  Not only is it cost prohibitive for the Debtors to sell any unused Luminant Water outside of the Sabine River Basin, it is also unlikely that the Debtors would be successful in reselling the Luminant Water within the Sabine River Basin in a period of drought because any potential purchaser would likely prefer to contract directly with SRA to avoid any additional costs to the water imposed by Dallas.

15.     The Debtors previously assumed the Water Rights Lease as a nonresidential real property leases on October 27, 2014, in advance of the deadline set forth under section 365(d)(4) of the Bankruptcy Code.  But the Debtors have since determined that it is no longer economically feasible or operationally justifiable to continue the Water Rights Lease given that the Debtors have not used the Luminant Water since prior to the Petition Date and the price for

7

the Luminant Water has increased substantially since the inception of the Water Rights Lease and the date of the assumption. Further, the price for the Luminant Water is expected to increase further, resulting in additional exposure to future rate increases from Dallas through the end of the term in 2050, at a time when the Debtors have decreased long-term water needs at Martin Lake. Therefore, the Debtors seek to reject the Water Rights Lease and reallocate costs currently expended under the Water Rights Lease on more appropriate projects.

### Basis for Relief

**I. REJECTION OF THE WATER RIGHTS LEASE REFLECTS THE DEBTORS' SOUND BUSINESS JUDGMENT.**

16. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also Univ. Med. Cent. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992). For the benefit of the estate, a debtor may, under section 365 of the Bankruptcy Code, relieve itself of burdensome agreements where performance still remains. *See In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 298 (3d Cir. 2000) (Bankruptcy Code section 365 "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed.") (internal citations omitted); *see also Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 39–40 (3d Cir. 1989).

17. The decision to assume or reject an unexpired lease is a matter within the debtor's "business judgment." *See Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)); *see also In re Fed. Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003). The business judgment standard

mandates that a court approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001); *see also In re Fed. Mogul Global*, 293 B.R. at 126 (rejecting counterparty's argument that a finding of hardship is a prerequisite to application of the business judgment test); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (noting that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). "Accordingly, the court should not interfere with or second-guess the debtor's sound business judgment unless and until evidence is presented that establishes that the debtor's decision was one taken in bad faith or in gross abuse of its retained business discretion." *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987).

18. The Debtors assert that the Water Rights Lease is a nonresidential real property lease and, thus, previously assumed the Water Rights Lease in accordance with the deadline set forth under 365(d)(4) of the Bankruptcy Code. As the Water Rights Lease is a nonresidential real property lease, the Debtors, in their business judgment, may subsequently reject the Water Rights Lease subject to section 503(b)(7) of the Bankruptcy Code.

19. Here, the Debtors have determined that rejection of the Water Rights Lease is in the best interests of the Debtors, their creditors, and other parties in interest. As an initial matter, the Water Rights Lease is not necessary for the Debtors' business operations, and the Debtors do not expect to need the water provided under the Water Rights Lease for the future operations of the MLSES. Further, based on the limited third-party resale rights included within the Water Rights Lease, the Debtors have estimated that the Water Rights Lease does not have any material, realizable value in the marketplace. And, absent rejection, the Water Rights Lease will

9

impose unnecessary costs—that can be escalated at any time—on the Debtors' estates for approximately the next 34 years. Accordingly, the Debtors have determined, in a sound exercise of their reasonable business judgment, that rejection of the Water Rights Lease is appropriate.

## II.  *NUNC PRO TUNC* RELIEF IS APPROPRIATE.

20.  Section 365 of the Bankruptcy Code does not specifically address whether courts may order rejection to be effective retroactively. Nonetheless, courts in this district and others have held that bankruptcy courts may exercise their equitable powers in granting such a retroactive order when doing so promotes the purposes of section 365(a). *See Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1028-29 (1st Cir. 1995) (indicating "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively" to the motion filing date); *see also Pacific Shore Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1067 (9th Cir. 2004) (same); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) ("[T]he court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a).").

21.  Courts may approve retroactive rejection of executory contracts and unexpired leases "after balancing the equities" and concluding that they weigh in favor of the debtor. *See In re Chi-Chi's, Inc.*, 305 B.R. at 399 (acknowledging that a bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing the equities in the particular case); *see also Thinking Machs. Corp.*, 67 F.3d at 1028 ("In the section 365 context, . . . bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation."); *In re Jamesway Corp.*, 179 B.R. 33,

10

RLF1 13040511v.1

A-257

36-37 (S.D.N.Y. 1995) (indicating that section 365 does not include "restrictions as to the manner in which the court can approve rejection").

22. The balance of the equities favors retroactive relief with respect to the Water Rights Lease to the date of the filing of this Motion. Luminant does not seek to obtain any benefit under the Water Rights Lease after the date hereof. Additionally, Dallas controls the Luminant Water, and will not be harmed by the Debtors' *nunc pro tunc* rejection of the Water Rights Lease. Further, Luminant informed Dallas that it was surrendering and turning over the Luminant Water to Dallas on September 22, 2015. Absent *nunc pro tunc* relief effective as of September 22, 2015, Dallas may attempt to assert a larger administrative expense priority for Luminant Water to the extent the effective date of rejection is later than September 22, 2015, even though Luminant will not obtain any benefit under the Water Rights Lease after the date hereof. For these reasons, Luminant believes that the equities weigh in favor of *nunc pro tunc* relief.

23. Finally, courts in this jurisdiction have approved relief similar to that requested herein. *See In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Feb. 26, 2014) (authorizing rejection of unexpired leases *nunc pro tunc* to prior notice date); *In re Prommis Holdings, LLC*, No. 13-10551 (BLS) (Bankr. D. Del. June 24, 2013) (same); *In re Friendly Ice Cream Corp.*, No. 11-13167 (KG) (Bankr. D. Del. Oct. 24, 2011) (authorizing rejection of leases and abandonment of property *nunc pro tunc* to date debtors vacated premises); *In re CB Holding Corp.*, No. 10-13683 (MFW) (Bankr. D. Del. Dec. 13, 2010) (authorizing rejection of executory contracts, including employment agreements, *nunc pro tunc* to prior notice date). The Debtors submit that similar relief is warranted in these chapter 11 cases.[8]

---

[8] Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are available upon request to the Debtors' counsel.

**Waiver of Bankruptcy Rules 6006(c) and 6004(h)**

24. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6006(c) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Reservation of Rights**

25. Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as: (a) an admission as to the validity or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (f) an admission that the Water Rights Lease is integrated with any other contract or lease; (g) a waiver by the Debtors of their right to assert that the Water Rights Lease was terminated prior to the Petition Date; or (h) a concession or evidence that the Water Rights Lease identified herein has not expired, been terminated, or otherwise currently is not in full force and effect.

**Notice**

26. The Debtors shall provide notice of this Motion on the date hereof via first class mail to: (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (d) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (e) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee

12

under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (f) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (g) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (h) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (i) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (j) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (k) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (l) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (m) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (n) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (o) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (p) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (q) Oncor Electric Delivery Holdings Company

13

LLC and counsel thereto; (r) Oncor Electric Delivery Company LLC and counsel thereto; (s) the Securities and Exchange Commission; (t) the Internal Revenue Service; (u) the Office of the United States Attorney for the District of Delaware; (v) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (w) counsel to the Electric Reliability Council of Texas; (x) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (y) Dallas; and (z) the SRA.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

27.    No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

| | |
|---|---|
| Dated: September 22, 2015<br>Wilmington, Delaware | */s/ Jason M. Madron*<br>**RICHARDS, LAYTON & FINGER, P.A.**<br>Mark D. Collins (No. 2981)<br>Daniel J. DeFranceschi (No. 2732)<br>Jason M. Madron (No. 4431)<br>920 North King Street<br>Wilmington, Delaware 19801<br>Telephone:  (302) 651-7700<br>Facsimile:  (302) 651-7701<br>Email:  collins@rlf.com<br>defranceschi@rlf.com<br>madron@rlf.com<br><br>-and-<br><br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Edward O. Sassower, P.C. (admitted *pro hac vice*)<br>Stephen E. Hessler (admitted *pro hac vice*)<br>Brian E. Schartz (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022-4611<br>Telephone:  (212) 446-4800<br>Facsimile:  (212) 446-4900<br>Email:  edward.sassower@kirkland.com<br>stephen.hessler@kirkland.com<br>brian.schartz@kirkland.com<br><br>-and-<br><br>James H.M. Sprayregen, P.C. (admitted *pro hac vice*)<br>Chad J. Husnick (admitted *pro hac vice*)<br>Steven N. Serajeddini (admitted *pro hac vice*)<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Telephone:  (312) 862-2000<br>Facsimile:  (312) 862-2200<br>Email:  james.sprayregen@kirkland.com<br>chad.husnick@kirkland.com<br>steven.serajeddini@kirkland.com<br><br>Co-Counsel to the Debtors and Debtors in Possession |

RLF1 13040511v.1

**A-262**