

John D. Demmy
(302) 421-6848
Fax: (302) 421-5881
John.demmy@saul.com
www.saul.com

May 29, 2019

Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District of Delaware
824 N. Market Street
Wilmington, DE 19801

  Re: Energy Futures Holdings, Case No. 14-10979 (CSS):
     May 30, 2019 Telephonic Status Conference

Your Honor:

  We represent the City of Dallas, Texas ("Dallas") and, in accordance with the Court's request, submit this letter in respect of discovery issues in this matter. A brief synopsis of the relevant facts and procedural history, which are set forth in detail in Dallas' Opening Brief in connection with its motion for summary judgment [D.I. 13783] (the "SJ Brief"), should be helpful in such regard.

**Factual and Procedural Background:**

  Dallas and Luminant Generation Company LLC ("Luminant") were parties to a Water Lease, requiring Luminant to "take and/or pay for" 12,000 acre-feet of Lake Fork Reservoir water, annually, which Luminant first assumed [D.I. 2574] then rejected [D.I. 6447].[1] Dallas timely filed a proof of its administrative claim under § 503(b)(7) and its remaining rejection claim under § 502(b)(6).

  Luminant objected [D.I. 9409] and sought estimation as Dallas' claims were subject to a contingency relating to the compensation payable by Dallas to the Sabine River Authority ("SRA") for the 131,860 acre-feet of water (inclusive of the 12,000 acre-feet under the Water Lease) Dallas is entitled to draw annually from Lake Fork. Such compensation is one among many costs Dallas City Council considers in setting its wholesale water rate (the "Water Rate"), the only variable component to the formula that establishes Luminant's annual monetary obligation under the Water Lease.

  In October 2014, SRA unilaterally increased the amount it intended to charge Dallas for Lake Fork water. Dallas challenged this increase before the public utilities commission ("PUC") and in two Texas state court matters. The PUC ordered Dallas to pay the increased compensation into escrow pending resolution of the dispute, which was pending while Dallas' claims were subject to objection and estimation in this Court. Discovery had been taken in the claim objection/estimation matter, had closed, and an evidentiary hearing was scheduled for May 24, 2017.

---

[1] Lake Fork is in the Sabine River basin.

In early May 2017, Dallas and SRA tentatively settled (the "SRA Settlement"). Dallas and Luminant jointly requested adjournment of the evidentiary hearing.[2] Discussions continued through October 2017 when the SRA Settlement was reduced to writing (the "SRA Settlement Agreement"). For the time periods covered by the § 503(b)(7) and § 502(b)(6) claims, the SRA Settlement sets the compensation payable by Dallas to SRA at an amount less than the amount it had been demanding and which Dallas had paid into escrow.[3]

Thereafter Dallas produced the SRA Settlement Agreement and other relevant documents to Luminant (some of which are included in the Appendix to the SJ Brief), responded in writing to questions posed by Luminant regarding the SRA Settlement, met with Luminant in Dallas (in September 2018), and has had follow up communications, in the attempt to resolve this matter.

On April 29, 2019, Dallas filed an amended proof of claim (the "POC") reflecting the impact of the SRA Settlement on Dallas' claims, by: (i) reducing Dallas' § 503(b)(7) claim, and (ii) foregoing Dallas' § 502(b)(6) claim (due to the assignment by Dallas to the SRA of the water subject to the Water Lease under the SRA Settlement Agreement). In addition, and because the clear and unambiguous language of the Water Lease, the SRA Settlement Agreement and § 503(b)(7) demonstrates there are no disputed, material issues of fact here, Dallas also filed a motion for summary judgment [D.I. 13782] (the "SJ Motion").

**Issues for the Status Conference – Establishment of a Schedule and Scope of Discovery:**

Dallas' § 503(b)(7) claim is a product of writings that are clear and unambiguous, including the statute, two contracts – the Water Lease and the SRA Settlement Agreement – and the applicable Dallas City Council ordinances. This matter can be decided pursuant to the SJ Motion.

Luminant has taken the position that it requires discovery, and has served broad discovery requests, both in their scope and requested time frame. Although Dallas acknowledges certain limited discovery of the effect of the SRA Settlement on its claims may be appropriate (and already has provided Luminant with the documentation of such, which also is included in its SJ Motion record) and will work with Luminant on the 30(b)(6) deposition it seeks, Luminant's written discovery requests and 30(b)(6) topics go well beyond the effect of the SRA Settlement on Dallas' claims. Copies of Dallas' responses to Luminant's discovery is attached as **Exhibit C**.

As an illustration, Luminant seeks discovery of matters that existed prior to the SRA Settlement and going back to September 22, 2015. Luminant took discovery into such matters and/or could have taken discovery into such matters and this Court's orders (*see* footnote 1 and **Exhibits A** and **B** attached hereto) do not authorize discovery into such matters at this time. The time frame applicable to the SRA Settlement is March 2017 (when such discussions between Dallas and the Sabine River Authority about settlement began) through October 2017. As a further illustration, Luminant seeks discovery of all communications between Dallas and the

---

[2] *See* Scheduling Order [D.I. 10933], a true copy of which is attached as **Exhibit A**, and the Order [D.I. 11239], a true copy of which is attached as **Exhibit B**, staying certain portions of the Scheduling Order.

[3] The SRA Settlement covers the period October 2014 through the November 2, 2017 effective date (and thereafter), which encompasses the time period applicable to Dallas' § 503(b)(7) claim (October 1, 2015 through September 22, 2017).

Sabine River Authority and all drafts of the SRA Settlement Agreement, when the agreement is clear and unambiguous and parol evidence is not necessary for the Court to construe it. In addition, Luminant's requests/topics of discovery are vague and extremely broad, including (i) requests relating to "the Summary Judgment Brief" and "the amended proof of claim," as well as to the "Water" and the "Water Lease" but not specifically in the context of Dallas' claims, and (ii) reaching back to September 22, 2015, which could be construed to cover irrelevancies like the day to day operation of Lake Fork, the flow of water from Lake Fork, or the Dallas-Sabine River Authority litigation, information that is not probative of the impact of the SRA Settlement on, or the calculation of, Dallas' claims.

Dallas' § 503(b)(7) claim, in accordance with the language of the statute, consists of:

> [A]ll monetary obligations due, . . . for the period of 2 years following the . . . the rejection date . . . , without reduction or setoff for any reason whatsoever except for sums actually received or to be received from an entity other than the debtor, . . . .

11 U.S.C. § 503(b)(7).

The monetary obligation due under the Water Lease, at Section 7, is "the applicable maximum amount … [12,000 acre-feet] . . . times the applicable rate as described in Section 5." Section 5 of the Water Lease provides:

> Purchaser shall pay Dallas for untreated water under this Contract at the current prevailing regular (non-interruptible) rate for untreated water sales as specified by Dallas ordinance, as same may be amended from time to time, . . .

After the SRA Settlement, Dallas revised its cost studies for 2015/16 and 2016/17 and Dallas City Council by ordinance revised the Water Rate for those years. Dallas has recalculated its § 503(b)(7) claim at a reduced amount based on the revised Water Rate.

As set forth in its responses, Dallas has advised Luminant that it is agreeable to limited discovery with respect to the impact of the SRA Settlement on the establishment of the Water Rate by Dallas City Council and the resulting calculation of Dallas' § 503(b)(7) claim. Informally in 2018 and formally by its POC and SJ Motion, Dallas already has provided the relevant documents. Despite its view about the non-discoverability and immateriality of such, Dallas also has agreed to produce its communications with SRA (subject to an appropriate confidentiality agreement and notice to SRA), to avoid motion practice over such. Discovery beyond that is not necessary nor reasonable under the circumstances and should not be used as a tool to unnecessarily delay Luminant's response to the SJ Motion or the resolution of this matter.

Accordingly, Dallas requests that the Court (i) limit discovery consistent herewith, and (ii) set a deadline for Luminant to respond to the SJ Motion.

Respectfully,

**SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ John D. Demmy*
     John D. Demmy (DE Bar No. 2802)