# EXHIBIT C

**City of Dallas, Texas's Responses to Luminant's Discovery**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**RESPONSES AND OBJECTIONS OF THE CITY OF DALLAS, TEXAS
TO REORGANIZED LUMINANT'S REQUEST FOR PRODUCTION
OF DOCUMENTS TO THE CITY OF DALLAS**

The City of Dallas, Texas ("Dallas") hereby responds (this "Response") to *Reorganized Luminant's Request for Production of Documents to the City of Dallas* (each request for production, a "Request," and the requests collectively, the "Requests"):

**<u>General Objections</u>**

1.      By making the responses and objections herein, Dallas does not waive, and hereby expressly reserves, its right to assert any and all objections as to admissibility of proffered evidence in this contested matter, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege.  Dallas makes the responses herein without admission or implication that it considers any of the Requests as seeking documents relevant or material to any disputed issues of material fact in this contested matter.

2.      None of the responses below is an admission relative to the truth or accuracy of any statement or characterization contained in any of the instructions or definitions, and/or any of the Requests.

3.      Dallas has made every reasonable effort to provide complete responses to the Requests.  Dallas, however, expressly reserves the right to supplement, clarify, revise or correct

any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

4.    Dallas objects to each instruction, definition, and Request to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and the applicable Rules and Orders of this Court.

5.    Dallas objects to each instruction, definition, and Request (a) that is not relevant to any party's claim or defense, (b) that is overly broad, unduly burdensome, and/or oppressive, (c) for which the response would require undue and/or unreasonable cost or expense, or (d) that is not reasonably calculated to lead to the discovery of admissible evidence.

6.    Dallas objects to each instruction, definition, and Request to the extent that it seeks documents or information protected from disclosure by the attorney-client privilege, attorney work product doctrine or any other applicable privilege or doctrine.  Should any such disclosure by Dallas occur, it is inadvertent and shall not constitute a waiver of any privilege or doctrine.

7.    Dallas objects to each instruction, definition, and Request to the extent that it purports to impose any obligations on Dallas to create documents or to obtain or disclose the existence of documents from any non-parties to this contested matter.

8.    Dallas objects to any of the Requests to the extent that it calls for legal conclusions or otherwise attempts to re-cast legal issues as factual matters.

9.    Dallas objects to the Requests to the extent they seek admission of facts solely within the knowledge of other persons or entities or from knowledge which can be derived solely from documents in the custody, possession and control of other persons or entities.  Dallas

further objects to the Requests to the extent that they purport to require Dallas to seek access to information or documents that is not in Dallas' possession, custody, or control.

10.     Dallas objects to the Requests to the extent they seek to require Dallas to disclose or produce confidential, proprietary documents or other financial information and/or other information or documents which are otherwise confidential within the meaning of the Federal Rules, and the cases defined thereunder.

11.     Unless otherwise indicated, Dallas will not disclose any information encompassed by the foregoing General Objections.  The inadvertent disclosure by Dallas or its counsel of any information protected from disclosure by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Federal Rules of Evidence, the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or immunity, shall not constitute a waiver by Dallas of any such rules, laws, privileges or immunities.

12.     Dallas incorporates by reference every general objection set forth above into each specific response set forth below.  A specific response may repeat a general objection for emphasis or some other reason.  The failure to include any general objection in any specific response does not waive any general objection to that request.  Moreover, Dallas does not waive its right to amend its responses.

## RESPONSES AND OBJECTIONS

1.      The *Opening Brief of the City of Dallas, Texas in Support of its Motion for Summary Judgment for Allowance and Payment of its Administrative Claim Under 11 U.S.C. § 506(b)(7)*, filed April 26, 2019 [D.I. 13783].

**RESPONSE**:  Dallas objects to this Request on the grounds that it is vague, overly broad and not reasonably calculated to lead to the discovery of relevant evidence.  Dallas further objects on the ground that the Summary Judgement Brief, which includes argument on legal issues based on a record devoid of material, disputed issues of fact, is not a proper subject for a request for production of documents.  To the extent the Summary Judgment Brief is determined to include any material, disputed issues of fact Dallas submits (i) discoverable documents relating to such issues, if any, likely are covered by other, more specific, Requests and Dallas' responses to such will control, and (ii) Dallas objects to the extent Luminant seeks documents with respect to any such issue that was in existence prior to May 12, 2017 as, with respect to such matters, Luminant had the right to take discovery, Luminant took discovery with respect to various matters, and discovery had closed in anticipation of the evidentiary hearing scheduled in this contested matter for May 24, 2017 [*see* D.I. 10933 and 11239].[1]  Dallas accordingly objects to any attempt by Luminant to take further discovery or testimony on any matters, whether disputed issues of material fact, or otherwise, to the extent they existed as of May 2017.

2.      The amended Proof of Claim, *Exhibit A Dallas Proof of Claim Submitted April 26, 2019* [D.I. 13784-1].

**RESPONSE**:  Dallas objects to this Request on the grounds that it is vague, overly broad and not reasonably calculated to lead to the discovery of relevant evidence.  Dallas further objects to this Request as not being proper to the extent (i) the amended Proof of Claim does not include any material, disputed issues of fact and thus there would be no topics or issues to which discovery would be necessary, reasonable or appropriate, (ii) the amended Proof of Claim includes fact issues that were in existence as of May 12, 2017, into which discovery now would

---

[1]  The Scheduling Order for this contested matter [D.I. 10933], contained discovery cutoff dates and deadlines in paragraphs 1 through 6.  The Court's May 12, 2017 order [D.I. 11239] stayed the dates included in paragraphs 7 through 10 of the Scheduling Order but left paragraphs 1 through 6 "in full force and effect."

not be appropriate pursuant to the Court's prior orders [D.I. 10933 and 11239] or otherwise reasonable or necessary, and/or (iii) the matters of inquiry are outside of the Relevant Time Period (as defined in response to Request 7).  To the extent the amended Proof of Claim is determined to include any material, disputed issues of fact consistent with the foregoing limitations, Dallas submits that such likely are covered by other Requests and Dallas' specific responses to such will control.

3.      The SRA Settlement.

**RESPONSE**:  Dallas objects to this Request on the grounds that (i) it is vague, overly broad and burdensome to the extent not limited to the impact of the SRA Settlement on Dallas' Claim, and (ii) seeks documents neither relevant nor reasonably calculated to lead to the discovery of relevant evidence.

Without waiver of the foregoing objections or the General Objections, Dallas refers Luminant to the SRA Settlement Agreement.

4.      All communications between the City of Dallas and Sabine River Authority regarding the SRA Settlement.

**RESPONSE**:  See response to Request 3, which is incorporated herein by reference.  In further response, Dallas submits that such communications are protected from discovery by applicable privileges and doctrines including the settlement privilege and the common interest doctrine as communications between Dallas and the Sabine River Authority were in the context of their attempts to settle three pending litigation matters, including appeals, which settlement required approval from the parties' respective governing bodies.

Without waiver of the foregoing objections, Dallas refers Luminant to the SRA Settlement Agreement.  Further, and without waiver of the foregoing objections or response, Dallas is agreeable to producing communications with the Sabine River Authority for the Relevant Time Period with respect to the SRA Settlement subject both to execution of an appropriate confidentiality agreement and notice to the Sabine River Authority in the event it may seek to prevent disclosure of such documents.

5.      Any document preservation notice sent in connection with the Claim or Amended Claim.

**RESPONSE**:  Dallas objects to this Request on the grounds that it seeks information that is (i) protected from discovery by the attorney-client privilege and the attorney work product doctrine, and (ii) neither relevant to any disputed issues of material fact nor reasonably calculated to lead to the discovery of relevant evidence.

6.      Documents sufficient to show the recipients of any document preservation notice responsive to Request 3.

**RESPONSE**:  See response to Request 5, which is incorporated herein by reference.

7.      All Communications between the City of Dallas and the Sabine River Authority from September 22, 2015, through the present regarding the City of Dallas' Claim.

**RESPONSE**:  Dallas objects to this Request on the grounds that it is vague, overly broad and burdensome with respect both to its substance and proposed time frame.  Substantively, since Dallas' Claim relates to Luminant's obligation to take and/or pay for Lake Fork water, communications not directly about Dallas' Claim but which instead may relate to (i) various operational issues between Dallas and the Sabine River Authority with respect to Lake Fork and Lake Fork water, (ii) operational and maintenance expenses relating to Lake Fork and Lake Fork water, and/or (iii) communications about the several litigation matters, including appeals, involving Dallas and the Sabine River Authority, which were settled by the SRA Settlement, such conceivably could be construed, mistakenly, as "regarding" Dallas' Claim.  That material is voluminous, its production would be burdensome, and it has no relevance or direct impact on Dallas' Claim, which is based on the Water Rights Lease and the Water Rate as established by Dallas City Council Ordinances.  In respect of the proposed time frame, Dallas objects to a time frame commencing September 22, 2015 as overly broad and burdensome; and instead submits the proper time frame for a 30(b)(6) deposition in this contested matter at this stage of the proceedings, if any is warranted, is limited to the period March 2017 through October 2017 (the "Relevant Time Period"), which coincides with the time during which discussions, negotiations and documentation of the SRA Settlement occurred.  This contested matter was scheduled for an evidentiary hearing on May 24, 2017 [D.I. 10933] but by order of the Court entered on May 12,

2017 [D.I. 11239], was adjourned indefinitely.   As of such time a contingency existed with respect to Dallas' claims relating to the compensation payable by Dallas to the Sabine River Authority for Lake Fork water, which compensation is one among many of the components that go into the establishment of the Water Rate by Dallas City Council, which rate is used to calculate Luminant's monetary obligations under the Water Rights Lease.  The SRA Settlement resolved this contingency by establishing the compensation payable by Dallas to the Sabine River Authority, which caused Dallas City Council to appropriately adjust the Water Rate. Accordingly, the request for all communications dating back to September 22, 2015 would yield communications not related to the SRA Settlement nor to any arguably disputed issue of material fact in this contested matter and, thus, is overly broad and burdensome on such basis.

Without waiver of the foregoing objections, Dallas states that it believes, in good faith, that there were no communications between it and the Sabine River Authority regarding the calculation of Dallas' Claim or the impact of the SRA Settlement on Dallas' Claim and no documents exist that reflect or refer to any such communications.

8.    All Communications between the City of Dallas and the Sabine River Authority from September 22, 2015, through the present regarding the Water.

**RESPONSE**:  Dallas objects to this Request on the grounds that it is vague, overly broad and burdensome with respect both to its substance and proposed time frame.  Substantively, communications about the Water could include, without limitation (i) operational issues between Dallas and the Sabine River Authority with respect to Lake Fork and Lake Fork water, (ii) operational and maintenance expenses relating to Lake Fork and Lake Fork water, and/or (iii) communications about the several litigation matters involving Dallas and the Sabine River Authority, including appeals.  That material is voluminous, its production would be burdensome, and it has no direct impact on the Water as it pertains to Dallas' Claim, which is based on the Water Rights Lease, and Dallas City Council Ordinances.  In respect of timing, as set forth in response to Request 7, above, Dallas objects to a time range commencing September 22, 2015 as overly broad and burdensome; and instead submits the proper time frame for any discovery in this contested matter at this stage of the proceedings, if any is warranted, is limited to the Relevant Time Period.   Accordingly, the request for all communications dating back to September 22, 2015 would yield communications not related to the SRA Settlement nor to any

arguably disputed issue of material fact in this contested matter and, thus, is overly broad and burdensome on such basis.

In addition, to the extent this Request seeks discovery on the impact of the SRA Settlement on the Water, Dallas incorporates its response to Request 3 herein.

9.    All Communications between the City of Dallas and the Sabine River Authority from September 22, 2015, through the present regarding the Water Rate.

**RESPONSE**:  Dallas objects to this Request on the grounds that it is vague, overly broad and burdensome with respect both to its substance and proposed time frame.  Substantively, communications about the Water Rate could include, without limitation (i) operational issues between Dallas and the Sabine River Authority with respect to Lake Fork and Lake Fork water, including operational and maintenance costs in respect thereof, (ii) operational and maintenance expenses relating to Lake Fork and Lake Fork water, and/or (iii) communications about the several litigation matters involving Dallas and the Sabine River Authority.  That material is voluminous, its production would be burdensome, and it has no direct impact on the Water Rate, which is set by Dallas City Council Ordinance based on Dallas' cost studies and, to the extent such impacts the cost studies, the SRA Settlement.  To the extent that this Request seeks discovery on the impact of the SRA Settlement on the Water Rate, Dallas incorporates its response to Request 3 herein.  In respect of timing, as set forth in response to Request 7, above, Dallas objects to a time range commencing September 22, 2015 as overly broad and burdensome; and instead submits the proper time frame for any discovery in this contested matter at this stage of the proceedings, if any is warranted, is limited to the Relevant Time Period.  Accordingly, the request for all communications dating back to September 22, 2015 would yield communications not related to the SRA Settlement nor to any arguably disputed issue of material fact in this contested matter and, thus, is overly broad and burdensome on such basis.

10.    All Communications between the City of Dallas and the Sabine River Authority from September 22, 2015, through the present regarding whether the SRA Settlement would have retroactive effect on the Water Rate.

**RESPONSE**:  See response to Request 9, which is incorporated herein by reference.  In addition, Dallas objects to this Request as illogical to the extent that it suggests that communications would have occurred prior to the Relevant Time Period regarding whether the SRA Settlement would have retroactive effect on the Water Rate.

Without waiver of the foregoing response and subject to any objections set forth therein, Dallas will produce documents in response, if any, consistent with the Relevant Time Period.

11.    All Communications between the City of Dallas and the Sabine River Authority from September 22, 2015, through the present regarding the SRA Settlement's effect on previously enacted City of Dallas water ordinances.

**RESPONSE**:  Dallas objects to this Request as illogical to the extent that it suggests that communications would have occurred prior to the Relevant Time Period regarding the SRA Settlement's effect on previously enacted City of Dallas water ordinances.  Dallas further objects to this Request on the grounds that it is overly broad and burdensome with respect to its and proposed time frame, for the reasons set forth in response to Request 7, which is are incorporated herein.

In addition, to the extent this Request seeks discovery on the impact of the SRA Settlement on previously enacted City of Dallas water ordinances, Dallas refers Luminant to the SRA Settlement Agreement, the revised cost studies for fiscal years 2015/16 and 2016/17, and the schedule showing the re-calculation of Dallas' claim, all of which are attached to the *Declaration of Terry Lowery in Support of Dallas' Proof of Claim* (the "Lowery Declaration").

Without waiver of the foregoing responses and subject to any objections set forth therein, Dallas will produce documents in response, if any, consistent with the Relevant Time Period.

12.    All Documents regarding any efforts by the City of Dallas to structure the SRA Settlement in a way that would have any effect on the City of Dallas's Claim.

**RESPONSE**:  Dallas objects to this Request to the extent it, in effect, assumes that Dallas in fact made "any efforts . . . to structure the SRA Settlement in a way that would have any effect on the City of Dallas's Claim."  Without waiver of the foregoing objection, Dallas herein incorporates its responses to Requests 3 and 4.

13.    All Documents regarding any impacts the SRA Settlement would have on the Water.

**RESPONSE**:  See responses to Requests 3 and 4, which are incorporated herein by reference.

Without waiver of the foregoing response and subject to any objections set forth therein, Dallas responds that it already has produced documents to Luminant that are responsive to this request including revised cost studies for fiscal years 2015/16 and 2016/17, Dallas City Council ordinances and a revised calculation of Dallas' Claim.  Subject to the foregoing responses and objections, Dallas will produce any other discoverable documents responsive to this request, if any, consistent with the Relevant Time Period.

14.    All Documents regarding any concessions (monetary or otherwise) given by Sabine River Authority to the City of Dallas in consideration for the assignment of the Water.

**RESPONSE**:  Dallas objects to this Request to the extent it, in effect, assumes that the Sabine River Authority gave any concessions "to the City of Dallas in consideration for the assignment of the Water."  Without waiver of the foregoing objection, Dallas herein incorporates its responses to Requests 3 and 4.

15.    All documents regarding the receipt by Sabine River Authority of any payments or other concessions from the City of Dallas for the Water.

**RESPONSE**:  Dallas objects to this Request to the extent it, in effect, assumes that the Sabine River Authority received "any payments or other concessions from the City of Dallas for the Water."  Dallas further objects to this Request on the ground that it seeks information that is neither relevant to nor reasonably calculated to lead to the discovery of relevant and admissible evidence.  Without waiver of the foregoing objections, Dallas herein incorporates its responses to Requests 3 and 4.

16.    All documents, information and/or inputs relied on in calculating the spreadsheet included in Exhibit 6 to the *Lowery Declaration in Support of Dallas' Proof of Claim* [D.I. 137841] at 164.

**RESPONSE**:  Dallas states that the only documents that relate to the spreadsheet and the calculation of Dallas' claims as set forth in the spreadsheet are the Water Rights Lease, the revised cost studies for fiscal years 2015/16 and 2016/17 and Dallas City Council ordinances, all of which also are attached to the Lowery Declaration, and previously have been produced to Luminant.

17.    The "cost studies conducted for fiscal years 2015/16 and 2016/17," as referenced on page 16 of the Summary Judgment Brief.

**RESPONSE**:  Dallas already has produced the cost studies for fiscal years 2015/16 and 2016/17 as originally prepared and as revised as a result of the SRA Settlement, which revised cost studies are attached to the Lowery Declaration.  Except as such have been affected by the SRA Settlement, Dallas objects to inquiry into the cost studies for fiscal years 2015/16 and 2016/17 as originally prepared as such were or could have been the subject of discovery prior to May 2017.

18.    All documents relied on or used to calculate the "cost studies conducted for fiscal years 2015/16 and 2016/17," as referenced on page 16 of the Summary Judgment Brief.

**RESPONSE**:  See response to Request 17, which is incorporated herein by reference. Without waiver of the foregoing response, Dallas states that it believes, in good faith, that no such documents exist other than the cost studies, which already have been produced to Luminant.

19.    The "revised" 2015/16 and 2016/2017 cost studies as referenced on page 13 of the Summary Judgment Brief.

**RESPONSE**:  See response to Request 17, which is incorporated herein by reference. Without waiver of the foregoing response, Dallas states that it believes, in good faith, that no such documents exist other than the cost studies, which already have been produced to Luminant.

20.    All documents relied on or used to calculate the "revised" 2015/16 and 2016/2017 cost studies as referenced on page 13 of the Summary Judgment Brief.

**RESPONSE**:  See response to Request 17, which is incorporated herein by reference. Without waiver of the foregoing response, Dallas states that it believes, in good faith, that no

such documents exist other than the cost studies and the SRA Settlement Agreement, which already have been produced to Luminant.

21.    All documents or communications regarding how the SRA Settlement impacted the 2015/16 and 2016/2017 water cost studies.

**RESPONSE**:  Dallas objects to this Request as illogical and not subject to rational response or discovery as the discussions with respect to the SRA Settlement began in March 2017 and did not conclude until October 2017 while the 2015/16 fiscal year cost study was completed prior to March 2017 and the 2016/17 fiscal year cost study was completed prior to October 2017.  Thus, the SRA Settlement could not have had any, and had no, impact on the 2015/16 and 2016/2017 cost studies.  Dallas further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine or any other applicable privilege or doctrine.  Without waiver of the foregoing response and objections Dallas incorporates its response to Request 17 herein.

22.    All documents or communications regarding how the SRA Settlement impacted the revised 2015/16 and 2016/2017 water cost studies.

**RESPONSE**:  Dallas objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine or any other applicable privilege or doctrine.  Without waiver of the foregoing objections, Dallas incorporates herein its responses to Requests 3, and 17 through 21.

23.    Documents sufficient to show how the City of Dallas or the Sabine River Authority calculated the "[a]djustment for the division of 11,860 ac-ft" listed in Exhibit C to the SRA Settlement Agreement, including why, as disclosed in footnote 10, the "amount is one half of the difference between 131,860 ac-ft and 120,000 ac-ft."

**RESPONSE**:  Dallas objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine or any other applicable privilege or doctrine.   Without waiver of the foregoing objections, Dallas will produce discoverable documents in response, if any.

24.    All documents showing whether the water "earmarked" to Luminant, as referenced on page 6 of the Summary Judgment Brief, was separate from or comingled with the rest of the Water.

**RESPONSE**:  Dallas objects to this Request on the ground that this Request existed prior to May 2017 and could have been inquired into by Luminant in prior discovery efforts.  Without waiver of the foregoing objection, Dallas will produce discoverable documents in response, if any, consistent with the Relevant Time Period.

25.    All documents showing how much of the Water the City of Dallas sold in the 2015/2016 and 2016/2017 fiscal years.

**RESPONSE**:  Dallas objects to this Request on the ground that this Request existed prior to May 2017 and could have been inquired into by Luminant in prior discovery efforts.  Dallas further objects to this Request on the basis that Luminant is attempting improperly to re-cast a legal argument as a fact dispute.  Without waiver of the foregoing objection, Dallas states that no such documents exist because the Water was not sold in the 2015/2016 and 2016/2017 fiscal years and rather was held for delivery to Luminant in accordance with Dallas' obligations under the Water Lease, all as previously briefed by Dallas in its October 7, 2016 response to Luminant's objection to its claims and in the deposition testimony of Terry Lowery taken on April 7, 2017.

26.    Documents sufficient to show the total amount the City of Dallas invoiced for selling the Water in the 2015/2016 and 2016/2017 fiscal years.

**RESPONSE**:  See response to Request 25, which is incorporated herein by reference.

27.    All Documents regarding the calculations and accounting provided in Exhibit C (Pre-Settlement Accounting) of the SRA Settlement Agreement relating to payment or consideration provided from the City of Dallas to the Sabine River Authority for the Water.

**RESPONSE**:  In addition to the Sabine River Authority's published in-basin and out-of-basin rates, which are equally available to Luminant as they are to Dallas, the Documents regarding the calculations and accounting provided in Exhibit C (Pre-Settlement Accounting)

include the SRA Settlement Agreement and the Water Supply Contract, which already have been produced to Luminant or otherwise already are in Luminant's possession.

28.    All Documents regarding the calculations and accounting provided in Exhibit C (Pre-Settlement Accounting) of the SRA Settlement Agreement relating to payment or consideration provided for the assignment of the Water from the City of Dallas to the Sabine River Authority.

**RESPONSE**:  See response to Request 27, which is incorporated herein by reference.

29.    Documents sufficient to show whether and how the Water was retroactively assigned to Sabine River Authority, per the language of Article III, section 3.1 of Exhibit A (the Amendment to Water Supply Contract and Conveyance) to the SRA Settlement Agreement.

**RESPONSE**:  Dallas objects to the use of the phrase "retroactively assigned" as being prejudicial, argumentative and not supported by the record.  Dallas further objects to this request (i) because it seeks information that is neither relevant to any disputed issues of fact nor reasonably calculated to lead to the discovery of relevant evidence, and (ii) to the extent that it seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine or any related or otherwise applicable privilege or doctrine. Dallas further objects on the grounds set forth in response to Request 3, which is incorporated herein by reference.

30.    Documents sufficient to show or explain why the City of Dallas and Sabine River Authority needed to execute both an Amendment to Water Supply Contract and Conveyance and an Assignment of Contract Rights to Water.

**RESPONSE**:  Dallas objects to this request (i) because it seeks information that is neither relevant to any disputed issues of fact nor reasonably calculated to lead to the discovery of relevant evidence, and (ii) to the extent that it seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine or any related or otherwise applicable privilege or doctrine.  Without waiver of the foregoing objections, Dallas incorporates herein its responses to Requests 3 and 4.

Dated: May 28, 2019                    **SAUL EWING ARNSTEIN & LEHR LLP**

By:/s/ John D. Demmy
     John D. Demmy (Bar No. 2802)
     1201 N. Market Street, Suite 2300
     P.O. Box 1266
     Wilmington, DE 19899
     (302) 421-6848
     john.demmy@saul.com

     -and-

     Melissa A. Martinez
     Centre Square West
     1500 Market Street, 38th Floor
     Philadelphia,  PA 19102-2186
     (215) 972-8572
     melissa.martinez@saul.com

     *Counsel for the City of Dallas, Texas*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**RESPONSES AND OBJECTIONS OF THE CITY OF DALLAS, TEXAS
TO NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)
<u>AND FED. R. BANKR. P. 7030</u>**

The City of Dallas, Texas ("Dallas") hereby responds (this "Response") to the *Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) and Fed. R. Bankr. P. 7030* (the "Notice") served by Luminant Generation Company, LLC ("Luminant") and to the Topics set forth therein (singularly, a "Request" and collectively, the "Requests"), as follows:

<u>**General Objections**</u>

1.    By making the responses and objections herein, Dallas does not waive, and hereby expressly reserves, its right to assert any and all objections as to admissibility of proffered evidence in this contested matter, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege.  Dallas makes the responses herein without admission or implication that it considers any of the Requests or responses thereto to be relevant or material to any disputed issues of material fact in this contested matter.

2.    None of the responses below is an admission relative to the truth or accuracy of any statement or characterization contained in any of the instructions, definitions, and/or Requests.

3.      Dallas has made every reasonable effort to provide complete responses to the Requests.  Dallas, however, expressly reserves the right to supplement, clarify, revise or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

4.      Dallas objects to each instruction, definition, and Request to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and the applicable Rules and Orders of this Court.

5.      Dallas objects to each instruction, definition, and Request (a) that is not relevant to any party's claim or defense, (b) that is overly broad, unduly burdensome, and/or oppressive, (c) for which the response would require undue and/or unreasonable cost or expense, or (d) that is not reasonably calculated to lead to the discovery of admissible evidence.

6.      Dallas objects to each instruction, definition, and Request to the extent that it seeks documents or information protected from disclosure by the attorney-client privilege, attorney work product doctrine or any other applicable privilege or doctrine.  Should any such disclosure by Dallas occur, it is inadvertent and shall not constitute a waiver of any privilege or doctrine.

7.      Dallas objects to each instruction, definition, and Request to the extent that it purports to impose any obligations on Dallas to create documents or to obtain or disclose the existence of documents from any non-parties to this contested matter.

8.      Dallas objects to any of the Requests to the extent that it calls for legal conclusions or otherwise attempts to re-cast legal issues as factual matters.

9.     Dallas objects to the Requests to the extent they seek admission of facts solely within the knowledge of other persons or entities or from knowledge which can be derived solely from documents in the custody, possession and control of other persons or entities.  Dallas further objects to the Requests to the extent that they purport to require Dallas to seek access to information or documents that is not in Dallas' possession, custody, or control.

10.     Dallas objects to the Requests to the extent they seek to require Dallas to disclose or produce confidential, proprietary documents or other financial information and/or other information or documents which are otherwise confidential within the meaning of the Federal Rules, and the cases defined thereunder.

11.     Unless otherwise indicated, Dallas will not disclose any information encompassed by the foregoing General Objections.  The inadvertent disclosure by Dallas or its counsel of any information protected from disclosure by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Federal Rules of Evidence, the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or immunity, shall not constitute a waiver by Dallas of any such rules, laws, privileges or immunities.

12.     Dallas incorporates by reference every general objection set forth above into each specific response set forth below.  A specific response may repeat a general objection for emphasis or some other reason.  The failure to include any general objection in any specific response does not waive any general objection to that request.  Moreover, Dallas does not waive its right to amend its responses.

**RESPONSES AND OBJECTIONS TO SPECIFIC TOPICS OF EXAMINATION**

1.      The *Opening Brief of the City of Dallas, Texas in Support of its Motion for Summary Judgment for Allowance and Payment of its Administrative Claim Under 11 U.S.C. § 506(b)(7)*, filed April 26, 2019 [D.I. 13783].

**RESPONSE**:  Dallas objects to this Topic on the grounds that it is vague, overly broad and not reasonably calculated to lead to the discovery of relevant evidence.  Dallas further objects on the ground that the Summary Judgement Brief, which includes argument on legal issues based on a record devoid of material, disputed issues of fact, is not a proper subject for a 30(b)(6) deposition.  To the extent the Summary Judgment Brief is determined to include any material, disputed issues of fact Dallas submits (i) such likely are covered by other, more specific, Topics noticed by Luminant in its Requests and Dallas' specific responses to such will control, and (ii) Dallas objects to the extent Luminant seeks testimony on any such issue that was in existence prior to May 12, 2017 as, with respect to such matters, Luminant had the right to take discovery, Luminant took discovery with respect to various matters, and discovery had closed in anticipation of the evidentiary hearing scheduled in this contested matter for May 24, 2017 [*see* D.I. 10933 and 11239].[1]  Dallas accordingly objects to any attempt by Luminant to take further discovery or testimony on any matters, whether disputed issues of material fact, or otherwise, to the extent they existed as of May 2017.

2.      The amended Proof of Claim, *Exhibit A Dallas Proof of Claim Submitted April 26, 2019* [D.I. 13784-1].

**RESPONSE**:  Dallas objects to this Topic on the grounds that it is vague, overly broad and not reasonably calculated to lead to the discovery of relevant evidence.  Dallas further objects to this Request as not being proper for a 30(b)(6) deposition to the extent (i) the amended Proof of Claim does not include any material, disputed issues of fact and thus there would be no topics or issues to which discovery would be necessary, reasonable or appropriate, (ii) the amended Proof of Claim includes fact issues that were in existence as of May 12, 2017, into

---

[1]  The Scheduling Order for this contested matter [D.I. 10933], contained discovery cutoff dates and deadlines in paragraphs 1 through 6.  The Court's May 12, 2017 order [D.I. 11239] stayed the dates included in paragraphs 7 through 10 of the Scheduling Order but left paragraphs 1 through 6 "in full force and effect."

which discovery now would not be appropriate pursuant to the Court's prior orders [D.I. 10933 and 11239] or otherwise reasonable or necessary, and/or (iii) the matters of inquiry are outside of the Relevant Time Period (as defined in response to Request 7).  To the extent the amended Proof of Claim is determined to include any material, disputed issues of fact consistent with the foregoing limitations, Dallas submits that such likely are covered by other Topics noticed by Luminant in its Requests and Dallas' specific responses to such will control; but, subject to and without waiver of the foregoing objections and the objections and responses to such other Topics, Dallas's 30(b)(6) witness designee(s) will be prepared to testify about them.

3.      The SRA Settlement.

**RESPONSE**:  Dallas objects to this Topic on the grounds that (i) it is vague, overly broad and burdensome to the extent not limited to the impact of the SRA Settlement on Dallas' Claim, and (ii) because the terms of the SRA Settlement are set forth in the SRA Settlement Agreement and such terms are not ambiguous or otherwise unclear, the SRA Settlement Agreement "speaks for itself" and parol evidence with respect to the SRA Settlement is not necessary, reasonable or appropriate and would neither be relevant to any disputed issues of fact nor reasonably calculated to lead to the discovery of relevant evidence.

Without waiver of the foregoing objections or the General Objections, Dallas refers Luminant to the SRA Settlement Agreement.

4.      All communications between the City of Dallas and Sabine River Authority regarding the SRA Settlement.

**RESPONSE**:  See response to Request 3, which is incorporated herein by reference.  In further response, Dallas submits that such communications are protected from discovery by applicable privileges and doctrines including the settlement privilege and the common interest doctrine as communications between Dallas and the Sabine River Authority were in the context of their attempts to settle three pending litigation matters, including appeals, which settlement required approval from the parties' respective governing bodies.

Without waiver of the foregoing objections, Dallas refers Luminant to the SRA Settlement Agreement.  Further, and without waiver of the foregoing objections or response, Dallas is agreeable to producing communications with the Sabine River Authority for the

Relevant Time Period with respect to the SRA Settlement subject both to execution of an appropriate confidentiality agreement and notice to the Sabine River Authority in the event it may seek to prevent disclosure of such documents.

5.      Any document preservation notice sent in connection with the Claim or Amended Claim.

**RESPONSE**:  Dallas objects to this Request on the grounds that it seeks information that is (i) protected from discovery by the attorney-client privilege and the attorney work product doctrine, and (ii) neither relevant to any disputed issues of material fact nor reasonably calculated to lead to the discovery of relevant evidence.

6.      Documents sufficient to show the recipients of any document preservation notice responsive to Request 3.

**RESPONSE**:  See response to Request 5, which is incorporated herein by reference.

7.      All Communications between the City of Dallas and the Sabine River Authority from September 22, 2015, through the present regarding the City of Dallas' Claim.

**RESPONSE**:  Dallas objects to this Topic on the grounds that it is vague, overly broad and burdensome with respect both to its substance and proposed time frame.  Substantively, since Dallas' Claim relates to Luminant's obligation to take and/or pay for Lake Fork water, communications not directly about Dallas' Claim but which instead may relate to (i) various operational issues between Dallas and the Sabine River Authority with respect to Lake Fork and Lake Fork water, (ii) operational and maintenance expenses relating to Lake Fork and Lake Fork water, and/or (iii) communications about the several litigation matters, including appeals, involving Dallas and the Sabine River Authority, which were settled by the SRA Settlement, such conceivably could be construed, mistakenly, as "regarding" Dallas' Claim.  That material is voluminous, its production would be burdensome, and it has no relevance or direct impact on Dallas' Claim, which is based on the Water Rights Lease and the Water Rate as established by Dallas City Council Ordinances.  In respect of the proposed time frame, Dallas objects to a time frame commencing September 22, 2015 as overly broad and burdensome; and instead submits the proper time frame for a 30(b)(6) deposition in this contested matter at this stage of the

proceedings, if any is warranted, is limited to the period March 2017 through October 2017 (the "Relevant Time Period"), which coincides with the time during which discussions, negotiations and documentation of the SRA Settlement occurred.  This contested matter was scheduled for an evidentiary hearing on May 24, 2017 [D.I. 10933] but by order of the Court entered on May 12, 2017 [D.I. 11239], was adjourned indefinitely.   As of such time a contingency existed with respect to Dallas' claims relating to the compensation payable by Dallas to the Sabine River Authority for Lake Fork water, which compensation is one among many of the components that go into the establishment of the Water Rate by Dallas City Council, which rate is used to calculate Luminant's monetary obligations under the Water Rights Lease.  The SRA Settlement resolved this contingency by establishing the compensation payable by Dallas to the Sabine River Authority, which caused Dallas City Council to appropriately adjust the Water Rate. Accordingly, the request for all communications dating back to September 22, 2015 would yield communications not related to the SRA Settlement nor to any arguably disputed issue of material fact in this contested matter and, thus, is overly broad and burdensome on such basis.

Without waiver of the foregoing objections, Dallas states that it believes, in good faith, that there were no communications between it and the Sabine River Authority regarding the calculation of Dallas' Claim or the impact of the SRA Settlement on Dallas' Claim and no documents exist that reflect or refer to any such communications.

8.    All Communications between the City of Dallas and the Sabine River Authority from September 22, 2015, through the present regarding the Water.

**RESPONSE**:  Dallas objects to this Topic on the grounds that it is vague, overly broad and burdensome with respect both to its substance and proposed time frame.  Substantively, communications about the Water could include, without limitation (i) operational issues between Dallas and the Sabine River Authority with respect to Lake Fork and Lake Fork water, (ii) operational and maintenance expenses relating to Lake Fork and Lake Fork water, and/or (iii) communications about the several litigation matters involving Dallas and the Sabine River Authority, including appeals.  That material is voluminous, its production would be burdensome, and it has no direct impact on the Water as it pertains to Dallas' Claim, which is based on the Water Rights Lease, and Dallas City Council Ordinances.  In respect of timing, as set forth in response to Request 7, above, Dallas objects to a time range commencing September 22, 2015 as

overly broad and burdensome; and instead submits the proper time frame for a 30(b)(6) deposition in this contested matter at this stage of the proceedings, if any is warranted, is limited to the Relevant Time Period. Accordingly, the request for all communications dating back to September 22, 2015 would yield communications not related to the SRA Settlement nor to any arguably disputed issue of material fact in this contested matter and, thus, is overly broad and burdensome on such basis.

In addition, to the extent this Topic seeks discovery on the impact of the SRA Settlement on the Water, Dallas incorporates its response to Request 3 herein.

9.     All Communications between the City of Dallas and the Sabine River Authority from September 22, 2015, through the present regarding the Water Rate.

**RESPONSE**: Dallas objects to this Topic on the grounds that it is vague, overly broad and burdensome with respect both to its substance and proposed time frame. Substantively, communications about the Water Rate could include, without limitation (i) operational issues between Dallas and the Sabine River Authority with respect to Lake Fork and Lake Fork water, including operational and maintenance costs in respect thereof, (ii) operational and maintenance expenses relating to Lake Fork and Lake Fork water, and/or (iii) communications about the several litigation matters involving Dallas and the Sabine River Authority. That material is voluminous, its production would be burdensome, and it has no direct impact on the Water Rate, which is set by Dallas City Council Ordinance based on Dallas' cost studies and, to the extent such impacts the cost studies, the SRA Settlement. To the extent that this Topic seeks discovery on the impact of the SRA Settlement on the Water Rate, Dallas incorporates its response to Request 3 herein. In respect of timing, as set forth in response to Request 7, above, Dallas objects to a time range commencing September 22, 2015 as overly broad and burdensome; and instead submits the proper time frame for a 30(b)(6) deposition in this contested matter at this stage of the proceedings, if any is warranted, is limited to the Relevant Time Period. Accordingly, the request for all communications dating back to September 22, 2015 would yield communications not related to the SRA Settlement nor to any arguably disputed issue of material fact in this contested matter and, thus, is overly broad and burdensome on such basis.

10.    All Communications between the City of Dallas and the Sabine River Authority from September 22, 2015, through the present regarding whether the SRA Settlement would have retroactive effect on the Water Rate.

**RESPONSE**:  See response to Request 9, which is incorporated herein by reference.  In addition, Dallas objects to this Topic as illogical to the extent that it suggests that communications would have occurred prior to the Relevant Time Period regarding whether the SRA Settlement would have retroactive effect on the Water Rate.

Without waiver of the foregoing response and subject to any objections set forth therein, Dallas will produce discoverable documents in response, if any, consistent with the Relevant Time Period; and Dallas's 30(b)(6) witness designee(s) will be prepared to testify about such matters, subject further to any and all available objections to the admission or other use of such documents or testimony in connection with any motion, or at any hearing or trial in this matter.

11.    All Communications between the City of Dallas and the Sabine River Authority from September 22, 2015, through the present regarding the SRA Settlement's effect on previously enacted City of Dallas water ordinances.

**RESPONSE**:  Dallas objects to this Topic as illogical to the extent that it suggests that communications would have occurred prior to the Relevant Time Period regarding the SRA Settlement's effect on previously enacted City of Dallas water ordinances.  Dallas further objects to this Topic on the grounds that it is overly broad and burdensome with respect to its and proposed time frame, for the reasons set forth in response to Request 7, which is are incorporated herein.

In addition, to the extent this Topic seeks discovery on the impact of the SRA Settlement on previously enacted City of Dallas water ordinances, Dallas refers Luminant to the SRA Settlement Agreement, the revised cost studies for fiscal years 2015/16 and 2016/17, and the schedule showing the re-calculation of Dallas' claim, all of which are attached to the *Declaration of Terry Lowery in Support of Dallas' Proof of Claim* (the "Lowery Declaration").

Without waiver of the foregoing responses and subject to any objections set forth therein, Dallas will produce discoverable documents in response, if any, consistent with the Relevant

Time Period; and Dallas's 30(b)(6) witness designee(s) will be prepared to testify about such matters, subject further to any and all available objections to the admission or other use of such documents or testimony in connection with any motion, or at any hearing or trial in this matter.

12.    All Documents regarding any efforts by the City of Dallas to structure the SRA Settlement in a way that would have any effect on the City of Dallas's Claim.

**RESPONSE**:  Dallas objects to this Topic to the extent it, in effect, assumes that Dallas in fact made "any efforts . . . to structure the SRA Settlement in a way that would have any effect on the City of Dallas's Claim."  Without waiver of the foregoing objection, Dallas herein incorporates its responses to Requests 3 and 4.

13.    All Documents regarding any impacts the SRA Settlement would have on the Water.

**RESPONSE**:   See responses to Requests 3 and 4, which are incorporated herein by reference.

Without waiver of the foregoing response and subject to any objections set forth therein, Dallas responds that it already has produced documents to Luminant that are responsive to this request including revised cost studies for fiscal years 2015/16 and 2016/17, Dallas City Council ordinances and a revised calculation of Dallas' Claim.  Subject to the foregoing responses and objections, Dallas will produce any other discoverable documents responsive to this request, if any, consistent with the Relevant Time Period; and Dallas's 30(b)(6) witness designee(s) will be prepared to testify about such matters, subject further to any and all available objections to the admission or other use of such documents or testimony in connection with any motion, or at any hearing or trial in this matter.

14.    All Documents regarding any concessions (monetary or otherwise) given by Sabine River Authority to the City of Dallas in consideration for the assignment of the Water.

**RESPONSE**:  Dallas objects to this Topic to the extent it, in effect, assumes that the Sabine River Authority gave any concessions "to the City of Dallas in consideration for the assignment of the Water."  Without waiver of the foregoing objection, Dallas herein incorporates its responses to Requests 3 and 4.

Without waiver of the foregoing response and subject to any objections set forth therein, Dallas's 30(b)(6) witness designee(s) will be prepared to testify about such matters, subject further to any and all available objections to the admission or other use of such documents or testimony in connection with any motion, or at any hearing or trial in this matter.

15.    All documents regarding the receipt by Sabine River Authority of any payments or other concessions from the City of Dallas for the Water.

**RESPONSE**:  Dallas objects to this Topic to the extent it, in effect, assumes that the Sabine River Authority received "any payments or other concessions from the City of Dallas for the Water."  Dallas further objects to this Request on the ground that it seeks information that is neither relevant to nor reasonably calculated to lead to the discovery of relevant and admissible evidence.  Without waiver of the foregoing objections, Dallas herein incorporates its responses to Requests 3 and 4; and Dallas's 30(b)(6) witness designee(s) will be prepared to testify about such matters, subject further to any and all available objections to the admission or other use of such documents or testimony in connection with any motion, or at any hearing or trial in this matter.

16.    All documents, information and/or inputs relied on in calculating the spreadsheet included in Exhibit 6 to the *Lowery Declaration in Support of Dallas' Proof of Claim* [D.I. 137841] at 164.

**RESPONSE**:  Dallas's 30(b)(6) witness designee(s) will be prepared to testify about the preparation of the spreadsheet included in Exhibit 6 to the Lowery Declaration and to the calculation of the claim amounts included in the spreadsheet.  Dallas further states the only documents that relate to the spreadsheet and the calculation of Dallas' claims as set forth in the spreadsheet are the Water Rights Lease, the revised cost studies for fiscal years 2015/16 and 2016/17 and Dallas City Council ordinances, all of which also are attached to the Lowery Declaration, and previously have been produced to Luminant.

17.    The "cost studies conducted for fiscal years 2015/16 and 2016/17," as referenced on page 16 of the Summary Judgment Brief.

**RESPONSE**:  Dallas already has produced the cost studies for fiscal years 2015/16 and 2016/17 as originally prepared and as revised as a result of the SRA Settlement, which revised cost studies are attached to the Lowery Declaration.  Dallas's 30(b)(6) witness designee(s) will be prepared to testify about the cost studies for fiscal years 2015/16 and 2016/17 as revised as a result of the SRA Settlement.  Except as such have been affected by the SRA Settlement, Dallas objects to inquiry into the cost studies for fiscal years 2015/16 and 2016/17 as originally prepared as such were or could have been the subject of discovery prior to May 2017.

18.     All documents relied on or used to calculate the "cost studies conducted for fiscal years 2015/16 and 2016/17," as referenced on page 16 of the Summary Judgment Brief.

**RESPONSE**:  See response to Request 17, which is incorporated herein by reference. Without waiver of the foregoing response, Dallas states that it believes, in good faith, that no such documents exist other than the cost studies, which already have been produced to Luminant.

19.     The "revised" 2015/16 and 2016/2017 cost studies as referenced on page 13 of the Summary Judgment Brief.

**RESPONSE**:  See response to Request 17, which is incorporated herein by reference. Without waiver of the foregoing response, Dallas states that it believes, in good faith, that no such documents exist other than the cost studies, which already have been produced to Luminant.

20.     All documents relied on or used to calculate the "revised" 2015/16 and 2016/2017 cost studies as referenced on page 13 of the Summary Judgment Brief.

**RESPONSE**:  See response to Request 17, which is incorporated herein by reference. Without waiver of the foregoing response, Dallas states that it believes, in good faith, that no such documents exist other than the cost studies and the SRA Settlement Agreement, which already have been produced to Luminant.

21.     All documents or communications regarding how the SRA Settlement impacted the 2015/16 and 2016/2017 water cost studies.

**RESPONSE**:  Dallas objects to this Request as illogical and not subject to rational response or discovery as the discussions with respect to the SRA Settlement began in March

2017 and did not conclude until October 2017 while the 2015/16 fiscal year cost study was completed prior to March 2017 and the 2016/17 fiscal year cost study was completed prior to October 2017.  Thus, the SRA Settlement could not have had any, and had no, impact on the 2015/16 and 2016/2017 cost studies.  Dallas further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine or any other applicable privilege or doctrine.  Without waiver of the foregoing response and objections Dallas incorporates its response to Request 17 herein.

22.    All documents or communications regarding how the SRA Settlement impacted the revised 2015/16 and 2016/2017 water cost studies.

**RESPONSE**:  Dallas objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine or any other applicable privilege or doctrine.  Without waiver of the foregoing objections, Dallas incorporates herein its responses to Requests 3, and 17 through 21.

23.    Documents sufficient to show how the City of Dallas or the Sabine River Authority calculated the "[a]djustment for the division of 11,860 ac-ft" listed in Exhibit C to the SRA Settlement Agreement, including why, as disclosed in footnote 10, the "amount is one half of the difference between 131,860 ac-ft and 120,000 ac-ft."

**RESPONSE**:  Dallas objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine or any other applicable privilege or doctrine.  Without waiver of the foregoing objections, Dallas will produce discoverable documents in response, if any, and Dallas's 30(b)(6) witness designee(s) will be prepared to testify about such matters, subject further to any and all available objections to the admission or other use of such documents or testimony in connection with any motion, or at any hearing or trial in this matter.

24.    All documents showing whether the water "earmarked" to Luminant, as referenced on page 6 of the Summary Judgment Brief, was separate from or comingled with the rest of the Water.

**RESPONSE**:  Dallas objects to this Request on the ground that this Topic existed prior to May 2017 and could have been inquired into by Luminant in prior discovery efforts.  Without waiver of the foregoing objection, Dallas will produce discoverable documents in response, if any, consistent with the Relevant Time Period; and Dallas's 30(b)(6) witness designee(s) will be prepared to testify about such matters, subject further to any and all available objections to the admission or other use of such documents or testimony in connection with any motion, or at any hearing or trial in this matter.

25.     All documents showing how much of the Water the City of Dallas sold in the 2015/2016 and 2016/2017 fiscal years.

**RESPONSE**:  Dallas objects to this Request on the ground that this Topic existed prior to May 2017 and could have been inquired into by Luminant in prior discovery efforts.  Dallas further objects to this Topic on the basis that Luminant is attempting improperly to re-cast a legal argument as a fact dispute.  Without waiver of the foregoing objection, Dallas states that no such documents exist because the Water was not sold in the 2015/2016 and 2016/2017 fiscal years and rather was held for delivery to Luminant in accordance with Dallas' obligations under the Water Lease, all as previously briefed by Dallas in its October 7, 2016 response to Luminant's objection to its claims and in the deposition testimony of Terry Lowery taken on April 7, 2017.

26.     Documents sufficient to show the total amount the City of Dallas invoiced for selling the Water in the 2015/2016 and 2016/2017 fiscal years.

**RESPONSE**:  See response to Request 25, which is incorporated herein by reference.

27.     All Documents regarding the calculations and accounting provided in Exhibit C (Pre-Settlement Accounting) of the SRA Settlement Agreement relating to payment or consideration provided from the City of Dallas to the Sabine River Authority for the Water.

**RESPONSE**:  In addition to the Sabine River Authority's published in-basin and out-of-basin rates, which are equally available to Luminant as they are to Dallas, the Documents regarding the calculations and accounting provided in Exhibit C (Pre-Settlement Accounting) include the SRA Settlement Agreement and the Water Supply Contract, which already have been produced to Luminant or otherwise already are in Luminant's possession.

Without waiver of the foregoing response, Dallas's 30(b)(6) witness designee(s) will be prepared to testify about such matters, subject further to any and all available objections to the admission or other use of such documents or testimony in connection with any motion, or at any hearing or trial in this matter.

28.    All Documents regarding the calculations and accounting provided in Exhibit C (Pre-Settlement Accounting) of the SRA Settlement Agreement relating to payment or consideration provided for the assignment of the Water from the City of Dallas to the Sabine River Authority.

**RESPONSE**:  See response to Request 27, which is incorporated herein by reference.

29.    Documents sufficient to show whether and how the Water was retroactively assigned to Sabine River Authority, per the language of Article III, section 3.1 of Exhibit A (the Amendment to Water Supply Contract and Conveyance) to the SRA Settlement Agreement.

**RESPONSE**:  Dallas objects to the use of the phrase "retroactively assigned" as being prejudicial, argumentative and not supported by the record.  Dallas further objects to this request (i) because it seeks information that is neither relevant to any disputed issues of fact nor reasonably calculated to lead to the discovery of relevant evidence, and (ii) to the extent that it seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine or any related or otherwise applicable privilege or doctrine. Dallas further objects on the grounds set forth in response to Request 3, which is incorporated herein by reference.

Without waiver of the foregoing response, Dallas's 30(b)(6) witness designee(s) will be prepared to testify about such matters, subject further to any and all available objections to the admission or other use of such documents or testimony in connection with any motion, or at any hearing or trial in this matter.

30.    Documents sufficient to show or explain why the City of Dallas and Sabine River Authority needed to execute both an Amendment to Water Supply Contract and Conveyance and an Assignment of Contract Rights to Water.

**<u>RESPONSE</u>**:  Dallas objects to this request (i) because it seeks information that is neither relevant to any disputed issues of fact nor reasonably calculated to lead to the discovery of relevant evidence, and (ii) to the extent that it seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine or any related or otherwise applicable privilege or doctrine.   Without waiver of the foregoing objections, Dallas incorporates herein its responses to Requests 3 and 4.

Dated:  May 28, 2019                              **SAUL EWING ARNSTEIN & LEHR LLP**

By:*/s/ John D. Demmy*
   John D. Demmy (Bar No. 2802)
   1201 N. Market Street, Suite 2300
   P.O. Box 1266
   Wilmington, DE 19899
   (302) 421-6848
   john.demmy@saul.com

   -and-

   Melissa A. Martinez
   Centre Square West
   1500 Market Street, 38th Floor
   Philadelphia,  PA 19102-2186
   (215) 972-8572
   melissa.martinez@saul.com

   *Counsel for the City of Dallas, Texas*