1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3

4   In re:                          :

5                                   :     Chapter 11

6   ENERGY FUTURE HOLDINGS          :     Case No. 14-10979 (CSS)

7   CORP., et al.,                  :     (Jointly Administered)

8              Debtors.             :

9   _____:

10

11                                  United States Bankruptcy Court

12                                  824 North Market Street

13                                  Wilmington, Delaware

14                                  May 30, 2019

15                                  3:03 p.m. - 3:38 p.m.

16

17

18

19

20

21   B E F O R E :

22   HON CHRISTOPHER S. SONTCHI

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO OPERATOR:   UNKNOWN

1    HEARING re Objection of Energy Future Holdings Corp., et

2    al., to Proof of Claim 13319 Filed by the City of Dallas,

3    filed on August 26, 2016 [D.I. 9409]

4

5    HEARING re Motion of the City of Dallas, Texas for Summary

6    Judgment for Allowance and Payment of Its Administrative

7    Claim Under 11 U.S. C. § 503(b)(7), filed on April 26, 2019

8    [D.I. 13782]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   RICHARDS, LAYTON & FINGER, P.A.

 4        Attorneys for the Debtor

 5        920 N King Street, Suite 200

 6        Wilmington, DE 19801

 7

 8   BY:  JASON M. MADRON (TELEPHONICALLY)

 9

10   KIRKLAND & ELLIS LLP

11        Attorneys for the Debtor

12        601 Lexington Avenue

13        New York, NY 10022

14

15   BY:  MARK E. MCKANE (TELEPHONICALLY)

16

17   SAUL EWING ARNSTEIN & LEHR LLP

18        Attorneys for the City of Dallas

19        1201 North Market Street, Suite 2300

20        Wilmington, DE 19801

21

22   BY:  JOHN D. DEMMY (TELEPHONICALLY)

23

24

25
```

1   ALSO PRESENT TELEPHONICALLY:

2

3   MARK BAGGETT

4   DANIEL DEFRANCESCHI

5   DANIEL K. HOGAN

6   DANIEL RUDEWICZ

7   JASON B. SANJANA

8   APARNA YENAMANDRA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2         THE COURT:  Good afternoon, everybody.  This is

3    Judge Sontchi.  We're here in the EFH matter on a discovery

4    conference, I think, requested by Luminant, and I'll turn it

5    over to Luminant to start the proceedings.  Hello?  Is there

6    counsel for Luminant on the phone?

7         MR. MADRON:  Your Honor, this is Jason Madron of

8    Richards, Layton & Finger on behalf of Luminant.  I believe

9    that Mark McKane was going to be taking the lead for

10   Luminant with respect to the matters being discussed today.

11   I don't know if, perhaps, he's speaking (indiscernible).

12        MR. MCKANE:  Your Honor, I apologize.  It's Mark

13   McKane.  I am now able to hear you.  I was having some

14   technical difficulties.

15        THE COURT:  Oh, I apologize.  All right.  I was

16   just turning it over to you to start the proceedings, since

17   you requested the conference.

18        MR. MCKANE:  Yeah, and thank you, Your Honor.  And

19   I apologize for any background noise.  Unfortunately, I'm

20   stuck in an airport.

21        Your Honor, we're here today to basically address,

22   in many ways, what's an old claim, but also a brand new

23   claim, and that's the City of Dallas, a few weeks ago, filed

24   a second amended proof of claim and an affirmative motion

25   for summary judgment on an issue that has been around for

1    many years and that we've tried to work out.  And it appears

2    they're having three issues that may be up for consideration

3    today, but really, this is more of a status conference to

4    let you know where we are, where I think we're going.

5    That's first.  And any and all requests I think the City of

6    Dallas has made, which is, they have asked for there to be a

7    schedule (indiscernible) on a motion for summary judgment

8    that they filed.  (Indiscernible) their second amended

9    claim, affirmative motion for summary judgment.

10           And that appears, based on their letter,

11   (indiscernible) basis, that they are asking for,

12   essentially, a protective order, or a limitation on the

13   scope of discovery, to a very narrow window of time, as well

14   as, essentially, there is a separate issue there with

15   regards the (indiscernible) verbiage.  But maybe it's worth

16   stepping back a minute and giving some context.

17           Back in November of '15, the City of Dallas

18   submitted initial proof of claim stemming from the initial

19   assumption, and then subsequent rejection of a water leak by

20   the Luminant Debtors, asserting a $15 million-dollar claim,

21   of which about $6.4 million of it was asserted under §

22   503(b)(7), that's an administrative claim, and $9.7 of which

23   was asserted as a general unsecured claim.  Luminant

24   objected to that proof of claim.  The parties engaged, and

25   were actually proceeding forward to a potential affirmation

1    hearing with regard to that claim.

2              Along the way, one of the major issues was a

3    parallel dispute that the City of Dallas was having with the

4    Sabine River Authority, or SRA, regarding how much the City

5    had to pay the Sabine River Authority for, essentially,

6    access to water in what's referred to as the Lake Ford

7    Reservoir.  That parallel litigation, was sometimes referred

8    to as the water (indiscernible) litigation, was ultimately

9    resolved in September -- excuse me, October of 2017.  They

10   had at least reached a settlement as of that time, and then

11   they proceeded -- they acknowledged that they -- they being

12   the City - that the resolution of the SRA litigation would

13   have an impact on their proofs of claim.

14              And that is what ultimately lead to what was a new

15   proof of claim filed on April 26th of this year.  That's the

16   second amended proof of claim in which all of the amount at

17   issue, and the way in which the City got to the amount at

18   issue have come down and changed considerably.

19   Specifically, now, they're asking for a $5.6 million-dollar

20   administrative claim under (b)(7), so that number came down

21   materially, and notably, the City of Dallas withdrew its

22   general unsecured claim under (b)(6).  They also filed its

23   affirmative motion for summary judgment.

24              We had engaged with the City along the way.  We

25   tried to resolve the issue a number of times.  We've been

1    unsuccessful to date.  But when they filed the second

2    amended proof of claim with a new declaration and this

3    affirmative motion for summary judgment, we engaged again

4    about the need for discovery here.  While the Luminant

5    Debtors hadn't consented to the second amended complaint,

6    meaning like, we never -- they had never asked for us to

7    give them their consent, and we recognize that, frankly,

8    this would be a late-filed claim under the effective date,

9    given the amount they're coming down, we're not standing on

10   form or concept, here.  We have no problem with, frankly,

11   the City of Dallas filing a second amended claim without

12   seeking legal course first.

13          What we do have an issue with is the limits

14   (indiscernible) on discovery that they're trying to put

15   forward, and their efforts to try to set a schedule for

16   briefing on a motion for summary judgment in advance of the

17   parties being able to conduct the appropriate discovery.

18   So, in many ways, the status conference today is really an

19   update to let you know that there is this brewing claim out

20   there that is actually being litigated; frankly, a claim

21   that Your Honor probably may not have had on its radar

22   screen.  Ultimately, there may be a merit issue that may

23   bubble up to Your Honor if we're unable to resolve the

24   issue.  There may be discovery disputes along the way.

25          But, for the purposes of today, we don't think

1    setting a schedule on briefing on an affirmative motion for

2    summary judgment is appropriate before the parties have been

3    able to take discovery.  And there appear to be at least two

4    issues that are, frankly, relatively ripe for an engagement,

5    depending on, at this point -- (indiscernible).

6              THE COURT:  Mr. McKane?  I'm sorry, Mr. --

7              MR. MCKANE:  (Indiscernible).

8              THE COURT:  Mr. McKane?  Mr. McKane?

9              MR. MCKANE:  (Indiscernible).

10             THE COURT:  I can't hear him.  Can you hear him?

11             MR. MCKANE:  (Indiscernible).

12             THE COURT:  Mr. McKane?

13             MR. MCKANE:  (Indiscernible).

14             THE COURT:  Mr. McKane?

15             MR. MCKANE:  (Indiscernible).

16             THE COURT:  Mr. McKane?

17             MR. MCKANE:  (Indiscernible).

18             THE COURT:  Mr. McKane?  Mr. McKane?

19             MR. MCKANE:  Yes, can you hear me, Your Honor?

20             THE COURT:  I haven't been able to hear you for

21   minutes, and unfortunately, you haven't been able to hear

22   from me, although it sounds like you're on quite a roll, so

23   I'm sorry I missed it.

24             MR. MCKANE:  Your Honor, I'm terribly sorry.  This

25   is not how I planned it, to have to call, and I've now been

1     stuck in regards to travel changes.  I apologize.

2              THE COURT:  No, it's fine.  I can hear you now.  I

3     don't know what happened.

4              MR. MCKANE:  Where did I lose you?

5              THE COURT:  (Laughs) You were about to say there

6     are two -- you had said that this was a status to just let

7     you know this was out there, but there were two issues that

8     had arisen, or might arise, and you were going to discuss

9     them, and catching what I could --

10             MR. MCKANE:  And that's it?

11             THE COURT:  -- yeah, that's it.  And then you

12    started talking about that, but one was the settlement

13    privilege, and the other one, I think, was the timeframes of

14    the --

15             MR. MCKANE:  That's right, Your Honor.

16             THE COURT:  I missed all of that, I'm sorry.

17    Although I did read your papers, but I did miss all of that.

18             MR. MCKANE:  No, and that -- look, this is my

19    fault.  I apologize as an officer of the Court, not being in

20    a better position.  Let me not rehash everything, but let me

21    be concise about these issues.

22             First of all, we think there needs to be discovery

23    here.  I think there's been some implicit concession in the

24    City's responses to us that there will be discovery, but

25    they think there should be some narrowing of that.  I think

1   the fact that both parties recognize there needs to be

2   discovery, and that it is reason alone not to set a briefing

3   schedule as it relates to the motion for summary judgment.

4   We need to actually conduct the discovery so that we are

5   then in a position to file an opposition brief.  I think

6   that is sufficiently straightforward.  I don't need to get

7   into more on that.

8            With regards to why we need discovery, I think

9   it's important for Your Honor to appreciate that what we're

10  dealing with is a second amended proof of claim, a brand new

11  declaration, and a brand new calculation of the claim that

12  is very much impacted by this SRA settlement, the settlement

13  of the parallel water dispute.  That settlement, and how it

14  was reached, and importantly, how it was constructed,

15  matters significantly, here.

16           And we say that for the following reasons: the

17  City, by its own calculations, by the fact that they dropped

18  the general unsecured claim, and that they reduced the

19  amount that they're seeking in administrative claim, has

20  kind of acknowledged that there is an impact of the SRA

21  settlement.  But this is not just your ordinary settlement.

22  There is a component here that is something we don't

23  normally see, which is a retroactivity component.  Even

24  though it was reached in October of 2017, what the City has

25  done with the SRA was, essentially, reconvey water rights

1    back, that the City would no longer have, effective as of

2    2014.

3            The impact on that is, there's a curious question

4    that we need to explore to better understand why the

5    settlement was structured that way, and what impacts it

6    could have on the calculation of its administrative claim,

7    because they're making an argument that there is no

8    administrative claim allowed here, that there are no monies

9    owed under § 503(b)(7) because there is no ability for the

10   City of Dallas to ultimately have been able to perform this

11   contract, since they retroactively gave away the water

12   rights.

13           This matters to -- some of the two issues,

14   discovery-wise, that have come up and tie directly into

15   that, and money, time, connect the dots.  The first is this

16   assertion of a settlement privilege.  They -- frankly, we

17   understand the City's relying on FRE 408 as their basis for

18   doing so.  In other words, to bar communications between the

19   City and Sabine, who we all note that 408 isn't a rule of

20   discovery.  It's actually a rule of evidence.  And it's very

21   specifically noted in the case we cited that that's a

22   problem, that you cannot rely on that as a bar of discovery.

23   But the back and forth of how this was constructed is

24   directly relevant to the calculation of our claim.  We need

25   to understand how they did it, and why they would have

1   reached this somewhat unusual construct of a settlement with

2   a third party.  What it's done is a way to specifically try

3   to get a double recovery in terms of recovery from the

4   Debtors.  So, that's what's at issue.

5           The second relates to the time period, and what

6   the City is trying to do, is essentially, narrow it down to

7   a very narrow window from March of 2017 through October,

8   when the settlement was reached.  And the argument there is,

9   they claim that we should be bound by an earlier stipulation

10  with regards to the scope of discovery, with regards to the

11  earlier proof of claim - a proof of claim that I think they

12  have already acknowledged has been superseded by later

13  events.  That's why they filed a second amended proof of

14  claim, and why they filed a brand new declaration in April

15  of this year.

16          So, we need to be able to explore the development

17  of the SRA in a manner that we think goes to, when was the

18  engagement beginning between the City and the Sabine River

19  Authority, and evaluate the drafts that they have all been,

20  ultimately, what led to the settlement.  We shouldn't be

21  bound by an earlier agreement.  I, frankly, think, it would

22  be impossible for us to have foreseen specifically that this

23  settlement with this type of construct could have arisen

24  later, when the parties were prepared for an earlier

25  estimation of the proceedings.

1          So, ultimately, Your Honor, we think we should be

2     moving forward with discovery, continuing with meet and

3     confer efforts that started last week, and should continue

4     forward, and then if we definitely need your assistance.  We

5     can reach out to you to address any discovery issues as we

6     go along.  But we don't think a schedule is appropriate to

7     be teed up right now, based on the fact that we still have

8     discovery pending, and we haven't even gotten a commitment

9     from the city as to when they'd be able to provide

10    documents, and we recognize that they probably can't give us

11    an estimate on that until we have a better sense of what the

12    scope's going to be, based on rulings, or guidance from the

13    Court on the privilege issue, and the, quote, "relevant time

14    period" issue of the settlement.

15          Again, I apologize to the Court for my phone

16    issues, and happy to answer any questions the Court has.

17          THE COURT:  Okay.  Don't worry about the phone.

18    That's fine.  We've all been there.  Thank you very much,

19    Mr. McKane.  I don't have any specific questions.  Mr.

20    Demmy, I believe, for the City of Dallas?

21          MR. DEMMY:  Yes, Your Honor.  John Demmy, Saul

22    Ewing Arnstein & Lehr for the City of Dallas, and I heard

23    Your Honor say that you've read our -- I assume you read

24    both sets of papers, but I heard you say you read Luminant's

25    papers.  So, I'll try not to rehash what we said in our

1    papers, but I wanted to focus on a couple of things in

2    direct response to what Mr. McKane was talking about.

3           So, he was talking about a brand new claim, and

4    that's really not the case, because here's what the

5    situation is, Your Honor.  This water lease was first

6    assumed, then rejected.  That gives rise to a claim under §

7    § 503(b)(7) of the Bankruptcy Code, and that is a claim, the

8    statutory language says, it's a claim for all monetary

9    obligations due under the water lease, in this instance, for

10   a period of two years following rejection, without reduction

11   or set off for any reason whatsoever, except for sums

12   actually received or to be received from an entity other

13   than the Debtor.  Okay.

14          So, in early May of 2017, when we were about to go

15   to trial, we've had an evidentiary hearing, there had been

16   discovery taken.  The issue that was contingent at that time

17   did relate to the dispute between Dallas and the Sabine

18   River Authority, and that dispute related to the Sabine

19   River Authority, effective in October 2014 unilaterally

20   increasing the rate it was charging -- and a compensation

21   amount that it was going to charge Dallas for Lake Ford

22   water.  Dallas, under a contract that began -- it was

23   renewed effective as of October 2014 for a 40-year term,

24   Dallas had the right to take 131,860 acre feet of water per

25   year from Lake Ford.  That's a lot of water.

1          The amount of water under the Dallas/Luminant

2     water lease was 12,000 acre feet of water - smaller subset

3     of the 131,860.  When Dallas charges Luminant for water,

4     under the water lease, the monetary obligation that Luminant

5     had was calculated very simply.  The formula is extremely

6     simple.  It's the 12,000 acre feet of water multiplied by

7     what's called the Wholesale Water Rate, which is set by

8     Dallas City Council.  And the contract says that - that

9     that's the formula.  That's what Luminant agreed to.  There

10    was a contingency with regard to the Wholesale Water Rate,

11    because the Wholesale Water Rate set by Dallas for the

12    fiscal years 2015-16 and 2016-17 included the increase that

13    SRA was charging for those time periods, because the Texas

14    Public Utility Commission, by order, required Dallas to pay

15    those increased rates - to pay them into escrow, pending

16    resolution of the dispute.

17          So, the Wholesale Water Rate, as set by Dallas

18    City Council, for those years, was high, and Dallas thought

19    artificially high, because it was challenging the SRA's

20    imposition of this unilaterally increased compensation rate.

21    So, in May of 2017, that contingency existed with respect to

22    the calculation of Dallas's claim.  In early May, it

23    appeared that, pursuant to conversations that had begun in

24    March of 2017, that there was going to be a settlement of

25    the dispute between Dallas and the Sabine River Authority.

1    We went to the Court and said, looks like there might be a

2    settlement.  We think that it may impact the amount of the

3    claims, and we'd like to adjourn the hearing, and the Court

4    entered an order doing that.

5            As of that time, however, Your Honor, discovery

6    had been taken on all the other issues involved in the case,

7    including litigation, calculation of the -- or the

8    implementation of Dallas City Council ordinances, and the

9    water cost studies, which is a device that Dallas

10   undertakes, or it's a methodology that Dallas undertakes to

11   enable the Dallas City Council to set a Wholesale Water

12   Rate.  So, moving forward, we get to October 2017.  There is

13   a settlement.  It has the effect of reducing the

14   compensation that Dallas is going to pay the Sabine River

15   Authority for Lake Ford water, and clearly, that has an

16   impact on the claim.  Because what Dallas did is it took

17   that decreased compensation payable to the Sabine River

18   Authority, put it -- did a new cost study.  The only thing

19   that changed was the amount that Dallas had to pay for Lake

20   Ford water.  That was the only variable.

21           And the cost studies take into account a multitude

22   of other costs that Dallas factors into the Wholesale Water

23   Rate that is set by Dallas City Council, costs unrelated to

24   Lake Ford, costs relating to the transition, all kind of

25   other wholesale customers.  So, it's not just the cost of

1    the Lake Ford water that goes into the cost study and the

2    setting of the Wholesale Water Rate.  But in any event,

3    there was a decrease in the compensation for Lake Ford

4    water.  That had the effect, pursuant to the revised cost

5    studies which took into account that reduced compensation,

6    of causing Dallas City Council to enact ordinances which

7    reduced the Wholesale Water Rate for fiscal years 2015-16

8    and 2016-17.

9           Therefore, under the water lease, Luminant's

10   monetary obligation is now 12,000 acre feet of water per

11   year, multiplied by a lower Wholesale Water Rate.

12   Therefore, the claim's reduced.  But that was the only

13   contingency -- that's the only thing the SRA settlement does

14   in connection with the calculation of Dallas's claim and

15   Luminant's monetary obligations under the claim.  So, this

16   is not a brand new claim.  There was a proof of claim filed,

17   and mea culpa, I didn't understand the plan's requirements

18   with regard to the filing of the amended claim.

19          But we filed it for evidentiary purposes, to make

20   sure that the Court had before it all the information that

21   it would need, which essentially were the revised cost

22   studies and the new calculation, pursuant to a declaration

23   filed by the witness that Luminant had previously deposed,

24   that Luminant would need and the Court would need to

25   understand how the monetary obligations were now being

1    calculated, as impacted by the SRA settlement.  But this is

2    not a brand new claim.  It's simply a recalculated claim

3    based on the reduced Wholesale Water Rate as a result of the

4    SRA settlement.

5            And because of that, Your Honor, we have advised,

6    and I think our papers are clear on this, that we do

7    believe, for example, a deposition of (indiscernible) who is

8    the declarant, earlier, and also in April, in connection

9    with the proof of claim filed in April, that that would be

10   appropriate.  Luminant was under some misunderstanding or

11   confusion about how the cost studies were done, or how it

12   impacts the Dallas city ordinances or the actual calculation

13   of the claim.  We understand that.

14           And we also -- you know, we believe that the SRA

15   settlement agreement is a document, it's in writing, and

16   there's been no showing it's unclear, or in any way

17   ambiguous.  We don't understand what the need for prole

18   evidence is, as the SRA settlement does, as they say, it

19   does what it does, and it doesn't do what it doesn't do, and

20   we all can read it, and the Court can ultimately interpret

21   it.  But we are willing to provide our communications with

22   the SRA for the time period March 2017 through October 2017,

23   which is the relevant time period for the communications

24   between Dallas and the SRA relating to the settlement.

25           Now, we think those should be produced in

1    connection with an appropriate confidentiality agreement,

2    and we also think there's an issue with regard to the SRA.

3    We still have to do business with them, Your Honor.  One

4    thing Mr. McKane didn't tell you is that Luminant, last

5    summer, served a subpoena on the Sabine River Authority

6    seeking, I think, much, if not all, the same information

7    that they're seeking now.  The Sabine River Authority did

8    not respond to that.  So, we assumed that they might have an

9    issue, so we thought that notice to the Sabine River

10   Authority might be appropriate.  But Dallas is prepared to

11   do that.

12            So, how did that relate to the orders that were

13   entered?  Well, the orders that were entered back in May of

14   2017 said, none of the dates other than, you know,

15   Luminant's reply brief and the date of the hearing, are

16   being affected by the adjournment.  The only thing that's

17   being affected is the reply date and the hearing date.  If

18   there were discovery deadlines, they are still in place.

19   And the only thing that changed, or the only development, is

20   the SRA settlement.  We've already said, okay, we don't

21   necessarily agree but we're willing to work with you in

22   terms of some discovery regarding the SRA settlement so you

23   could understand the impact of it.  But to go back to

24   September 22, 2015 is jut way too broad and it's going to be

25   burdensome, costly, it's going to delay things, and we

1   think, unnecessarily, based on what the issues are, Your

2   Honor, when you read § § 503(b)(7) of the Bankruptcy Code,

3   and you look at the water lease, and you see how narrow the

4   issues really are.  And in that we have a settlement

5   agreement that's in writing, and there's been no showing

6   that it's unclear, ambiguous, or otherwise deserving of any

7   prole evidence.

8           If they think there's something in the agreement

9   that's not kosher, you know, that can be part of their

10  summary judgment response (indiscernible).  However, we've

11  committed to a 386 deposition, we've committed to some

12  limited discovery, and we think this matter can proceed in a

13  more rapid fashion than I think Luminant has in mind.  I

14  think Luminant would like to delay and drag it out further,

15  and delay resolution in the matter, frankly.  So, that's --

16  you know, I tried to summarize in several paragraphs what

17  our view is in direct response to Mr. McKane's argument.  I

18  did not want to rehash what we put in our letter, and I'm

19  available to answer any questions the Court may have.

20          THE COURT:  Thank you, Mr. Demmy, and just so the

21  record's clear, of course I read your letter, and looked at

22  the attachments.  I read both correspondence.  I don't have

23  any questions for you.  Mr. McKane, I hope you can hear me.

24  Would you like to reply?

25          MR. MCKANE:  I would, and thank you, Your Honor.

1   Again, very apologetic about earlier.

2          Your Honor, with regard to these issues, I think

3   it's a new claim.  Like, the total approach to how they

4   calculated the claim has shifted, and we need to -- and

5   that's what we're trying to (indiscernible).  When we talked

6   about the earlier stipulation about what changed, the fact

7   that the City acknowledged that they needed to file a second

8   amended proof of claim and a new declaration to lay out how

9   they reached what they think they are owed tells you

10  everything you need to know about, like there's a direct

11  impact of the SRA settlement on this calculation, there was

12  a new -- there's a cost study that was revisited, and

13  understanding how that was done, and whether there should

14  have been more, is directly applicable to how they reached

15  their amounts.  We should be able to explore their theory of

16  the case.

17          And then, their view as to how that we should be -

18  - that somehow § 503(b)(7) cuts off our ability to pursue

19  this discovery, I would just redirect Your Honor to the

20  third page of the letter from Mr. Demmy where he talks about

21  all monetary obligations due.  If they retroactively gave

22  away the water rights to what they refer to internally as,

23  quote, "the Luminant water," then we have serious question

24  about whether there any monetary obligations due.  And

25  that's what we're trying to explore.  It's not just a plain

1    reading of a settlement to understand what the import is

2    with regard to that settlement.  And maybe it isn't exactly

3    that they'd want to put forward in their affirmative case.

4         So, when they talk about the calculation, about

5    whether there's 12,000 acre feet of water, if there's no --

6    if that water isn't available because they -- theoretically,

7    they've somehow retroactively given away, which is what the

8    language of the agreement looks like, then we should have an

9    opportunity to explore it, and that's what we're trying to

10   do, here.  I think, ultimately, Your Honor knows the Debtors

11   well enough to know that there is no reason for us to delay

12   for delay's sake.  And the fact that, like, we engaged with

13   them as soon as we received the amended complaint and the

14   declaration, that we (indiscernible) that we served a

15   discovery request, and we asked for the status conference,

16   all are indications of the fact that we want to move forward

17   and resolve this matter in a manner that we can.

18        We need to explore the facts underlying this

19   revised recalculated claim.  To enable us to do that, we may

20   need Your Honor's assistance along the way, here or there.

21   We'll try to minimize that as much as possible.  But I think

22   that's what we're asking for in terms of our ability to move

23   forward and address what should be a relatively confined

24   dispute for a fixed amount.

25        THE COURT:  All right, thank you very much,

1    everybody.

2            Well, let's start with basics.  What we have here

3    is a contested matter, and as a contested matter, the

4    parties are entitled to discovery under the Federal Rules of

5    Civil Procedure.  And while it's true that anyone is free to

6    file a summary judgment motion at any time, generally

7    speaking, the way it works, as we all know, is that's done

8    after discovery so people have an opportunity to explore the

9    facts, and figure out whether there are actually any genuine

10   disputes of material fact, and if so, how that might affect

11   or not affect motions for summary judgment.

12           And I think, while I understand the legal argument

13   that it's appropriate because it's based -- everything's

14   based simply on a plain meaning reading of various

15   documents, I think Mr. McKane is correct that there may be

16   more to it than that.  And so, while I'm saying that it's

17   not inappropriate that Dallas filed the motion for summary

18   judgment, I think it's premature for purposes of this

19   dispute.  And I am not convinced that it is crystal clear

20   that no factual issues may be relevant, here.  And as such,

21   I think it's important, I think incumbent upon me, to allow

22   the reorganized Debtor to explore what those facts may or

23   may not mean through the context of discovery before we turn

24   to motions for summary judgment, whether based on plain

25   meaning or not.

1        So, I'm going to stay briefing on the motion for

2   summary judgment.  I am going to suggest that the parties

3   work together on a simple scheduling order that sets forth a

4   discovery schedule.  No one specifically asked me on some of

5   this, but I'm going to offer some thoughts.  First of all, I

6   don't know what a settlement privilege is.  Rule 408, as

7   said, is a rule of evidence regarding the admissibility of

8   settlement discussions for purposes of establishing

9   liability, not a blanket protection for any settlement

10  discussions that may go on, like many attorneys, I think,

11  sometimes assume.  It is actually relatively narrow in its

12  scope.

13        And as Mr. McKane said, and as Judge Carey has

14  said, in any event, it's a rule of evidence, not a rule of

15  discovery.  So, I think any facts and discussions and

16  communications regarding the settlement are open for

17  discovery.  Obviously, if there's confidentiality issues, an

18  appropriate confidentiality stipulation should be entered.

19  I can -- I'm happy to approve it, if necessary.  Pending

20  agreement under our local rules, it's professional eyes only

21  if someone asserts that something is confidential.

22        With regard to timing, I tend to agree that the

23  previous limitation for a hearing that was set to occur

24  years ago, and prior to the settlement, is no longer -- the

25  dead hand of that agreement should not control what's

1    relevant for today's purposes.  So, I think the limitations

2    on timing, based on the fact there was a previous agreement,

3    really is contrary to the reality of the day today.  There

4    is history here.  We were headed to an evidentiary hearing,

5    et cetera.  And while it's an amended claim, it is new

6    litigation.  And I think we need to start from scratch.  So,

7    work together on a scheduling order that sets a period of

8    time for discovery, depositions, et cetera - whatever the

9    parties find appropriate.  I don't think we need a long one,

10   but hopefully, we can work that out.

11            And once that discovery period is complete, then

12   we'll restart the briefing on a motion for summary judgment,

13   which either an be the original one, or an amended one,

14   superseding one filed by Dallas, or by the reorganized

15   Debtors, and we'll go forward from there.  Any questions?

16            MR. MCKANE:  None from the Debtor.  Thank you,

17   Your Honor, for the guidance.  We appreciate it.

18            THE COURT:  You're welcome.  Mr. Demmy, any

19   questions?

20            MR. DEMMY:  No questions, Your Honor, thank you.

21            THE COURT:  All right, thank you very much.  Safe

22   travels, Mr. McKane.  We're adjourned.

23            MR. MCKANE:  Thank you, Your Honor.

24            (Whereupon these proceedings were concluded at

25   3:38 PM)

Page 27

1                     C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya                  Digitally signed by Sonya Ledanski
                            Hyde
                            DN: cn=Sonya Ledanski Hyde, o, ou,
     Ledanski Hyde          email=digital@veritext.com, c=US
7                           Date: 2019.06.03 15:30:36 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  June 3, 2019

**&**

**&** 3:3,10,17 5:8
  14:22

**1**

**10022** 3:13
**11** 1:5 2:7
**11501** 27:23
**12,000** 16:2,6
  18:10 23:5
**1201** 3:19
**131,860** 15:24
  16:3
**13319** 2:2
**13782** 2:8
**14-10979** 1:6
**15** 6:20
**19801** 3:6,20

**2**

**200** 3:5
**2014** 12:2 15:19
  15:23
**2015** 20:24
**2015-16** 16:12
  18:7
**2016** 2:3
**2016-17** 16:12
  18:8
**2017** 7:9 11:24
  13:7 15:14 16:21
  16:24 17:12 19:22
  19:22 20:14
**2019** 1:14 2:7
  27:25
**22** 20:24
**2300** 3:19
**26** 2:3,7
**26th** 7:15

**3**

**3** 27:25
**30** 1:14
**300** 27:22

**330** 27:21
**386** 21:11
**3:03** 1:15
**3:38** 1:15 26:25

**4**

**40** 15:23
**408** 12:17,19 25:6

**5**

**5.6** 7:19
**503** 2:7 6:22 12:9
  15:7 21:2 22:18

**6**

**6** 7:22
**6.4** 6:21
**601** 3:12

**7**

**7** 2:7 6:22 7:20
  12:9 15:7 21:2
  22:18

**8**

**824** 1:12

**9**

**9.7** 6:22
**920** 3:5
**9409** 2:3

**a**

**ability** 12:9 22:18
  23:22
**able** 5:13 8:17 9:3
  9:20,21 12:10
  13:16 14:9 22:15
**access** 7:6
**account** 17:21
  18:5
**accurate** 27:4
**acknowledged**
  7:11 11:20 13:12
  22:7
**acre** 15:24 16:2,6
  18:10 23:5

**actual** 19:12
**address** 5:21 14:5
  23:23
**adjourn** 17:3
**adjourned** 26:22
**adjournment**
  20:16
**administered** 1:7
**administrative**
  2:6 6:22 7:20
  11:19 12:6,8
**admissibility** 25:7
**advance** 8:16
**advised** 19:5
**affect** 24:10,11
**affirmation** 6:25
**affirmative** 5:24
  6:9 7:23 8:3 9:1
  23:3
**afternoon** 5:2
**ago** 5:23 25:24
**agree** 20:21 25:22
**agreed** 16:9
**agreement** 13:21
  19:15 20:1 21:5,8
  23:8 25:20,25
  26:2
**airport** 5:20
**al** 1:7 2:2
**allow** 24:21
**allowance** 2:6
**allowed** 12:8
**ambiguous** 19:17
  21:6
**amended** 5:24 6:8
  7:16 8:2,5,11
  11:10 13:13 18:18
  22:8 23:13 26:5
  26:13
**amount** 7:16,17
  8:9 11:19 15:21
  16:1 17:2,19
  23:24

**amounts** 22:15
**answer** 14:16
  21:19
**aparna** 4:8
**apologetic** 22:1
**apologize** 5:12,15
  5:19 10:1,19
  14:15
**appear** 9:3
**appeared** 16:23
**appears** 6:1,10
**applicable** 22:14
**appreciate** 11:9
  26:17
**approach** 22:3
**appropriate** 8:17
  9:2 14:6 19:10
  20:1,10 24:13
  25:18 26:9
**approve** 25:19
**april** 2:7 7:15
  13:14 19:8,9
**argument** 12:7
  13:8 21:17 24:12
**arisen** 10:8 13:23
**arnstein** 3:17
  14:22
**artificially** 16:19
**asked** 6:6 8:6
  23:15 25:4
**asking** 6:11 7:19
  23:22
**asserted** 6:21,23
**asserting** 6:20
**assertion** 12:16
**asserts** 25:21
**assistance** 14:4
  23:20
**assume** 14:23
  25:11
**assumed** 15:6
  20:8

**assumption** 6:19
**attachments**
  21:22
**attorneys** 3:4,11
  3:18 25:10
**august** 2:3
**authority** 7:4,5
  13:19 15:18,19
  16:25 17:15,18
  20:5,7,10
**available** 21:19
  23:6
**avenue** 3:12

**b**

**b** 1:21 2:7 4:7
  6:22 7:20,22 12:9
  15:7 21:2 22:18
**back** 6:16,17 12:1
  12:23 20:13,23
**background** 5:19
**baggett** 4:3
**bankruptcy** 1:1
  1:11,23 15:7 21:2
**bar** 12:18,22
**based** 6:10 14:7
  14:12 19:3 21:1
  24:13,14,24 26:2
**basically** 5:21
**basics** 24:2
**basis** 6:11 12:17
**began** 15:22
**beginning** 13:18
**begun** 16:23
**behalf** 5:8
**believe** 5:8 14:20
  19:7,14
**better** 10:20 12:4
  14:11
**blanket** 25:9
**bound** 13:9,21
**brand** 5:22 11:10
  11:11 13:14 15:3
  18:16 19:2

**brewing** 8:19
**brief** 11:5 20:15
**briefing** 8:16 9:1
  11:2 25:1 26:12
**broad** 20:24
**bubble** 8:23
**burdensome**
  20:25
**business** 20:3

**c**

**c** 2:7 3:1 5:1 27:1
  27:1
**calculated** 16:5
  19:1 22:4
**calculation** 11:11
  12:6,24 16:22
  17:7 18:14,22
  19:12 22:11 23:4
**calculations** 11:17
**call** 9:25
**called** 16:7
**can't** 9:10 14:10
**carey** 25:13
**case** 1:6 12:21
  15:4 17:6 22:16
  23:3
**catching** 10:9
**causing** 18:6
**certified** 27:3
**cetera** 26:5,8
**challenging** 16:19
**changed** 7:18
  17:19 20:19 22:6
**changes** 10:1
**chapter** 1:5
**charge** 15:21
**charges** 16:3
**charging** 15:20
  16:13
**christopher** 1:22
**cited** 12:21
**city** 2:2,5 3:18
  5:23 6:5,17 7:3,4

7:12,17,21,24
8:11 11:17,24
12:1,10,19 13:6
13:18 14:9,20,22
16:8,18 17:8,11
17:23 18:6 19:12
22:7
**city's** 10:24 12:17
**civil** 24:5
**claim** 2:2,7 5:22
  5:23,24 6:9,18,20
  6:22,23,24 7:1,13
  7:15,16,20,22 8:2
  8:8,11,19,20
  11:10,11,18,19
  12:6,8,24 13:9,11
  13:11,14 15:3,6,7
  15:8 16:22 17:16
  18:14,15,16,16,18
  19:2,2,9,13 22:3,4
  22:8 23:19 26:5
**claims** 17:3
**claim's** 18:12
**clear** 19:6 21:21
  24:19
**clearly** 17:15
**code** 15:7 21:2
**come** 7:18 12:14
**coming** 8:9
**commission** 16:14
**commitment** 14:8
**committed** 21:11
  21:11
**communications**
  12:18 19:21,23
  25:16
**compensation**
  15:20 16:20 17:14
  17:17 18:3,5
**complaint** 8:5
  23:13
**complete** 26:11

**component** 11:22
  11:23
**concept** 8:10
**concession** 10:23
**concise** 10:21
**concluded** 26:24
**conduct** 8:17 11:4
**confer** 14:3
**conference** 5:4,17
  6:3 8:18 23:15
**confidential** 25:21
**confidentiality**
  20:1 25:17,18
**confined** 23:23
**confusion** 19:11
**connect** 12:15
**connection** 18:14
  19:8 20:1
**consent** 8:7
**consented** 8:5
**considerably** 7:18
**consideration** 6:2
**construct** 13:1,23
**constructed** 11:14
  12:23
**contested** 24:3,2
**context** 6:16
  24:23
**contingency**
  16:10,21 18:13
**contingent** 15:16
**continue** 14:3
**continuing** 14:2
**contract** 12:11
  15:22 16:8
**contrary** 26:3
**control** 25:25
**conversations**
  16:23
**convinced** 24:19
**corp** 1:7 2:1
**correct** 24:15

**correspondence** 21:22
**cost** 17:9,18,21,25 18:1,4,21 19:11 22:12
**costly** 20:25
**costs** 17:22,23,24
**council** 16:8,18 17:8,11,23 18:6
**counsel** 5:6
**country** 27:21
**couple** 15:1
**course** 8:12 21:21
**court** 1:1,11 5:2 5:15 9:6,8,10,12 9:14,16,18,20 10:2,5,11,16,19 14:13,15,16,17 17:1,3 18:20,24 19:20 21:19,20 23:25 26:18,21
**crystal** 24:19
**css** 1:6
**culpa** 18:17
**curious** 12:3
**customers** 17:25
**cuts** 22:18

**d**

**d** 3:22 5:1
**d.i.** 2:3,8
**dallas** 2:2,5 3:18 5:23 6:6,17 7:3,21 8:11 12:10 14:20 14:22 15:17,21,22 15:24 16:1,3,8,11 16:14,17,18,25 17:8,9,10,11,14 17:16,19,22,23 18:6 19:12,24 20:10 24:17 26:14
**dallas's** 16:22 18:14

**daniel** 4:4,5,6
**date** 8:1,8 20:15 20:17,17 27:25
**dates** 20:14
**day** 26:3
**de** 3:6,20
**dead** 25:25
**deadlines** 20:18
**dealing** 11:10
**debtor** 3:4,11 15:13 24:22 26:16
**debtors** 1:8 6:20 8:5 13:4 23:10 26:15
**declarant** 19:8
**declaration** 8:2 11:11 13:14 18:22 22:8 23:14
**decrease** 18:3
**decreased** 17:17
**definitely** 14:4
**defranceschi** 4:4
**delaware** 1:2,13
**delay** 20:25 21:14 21:15 23:11
**delay's** 23:12
**demmy** 3:22 14:20,21,21 21:20 22:20 26:18,20
**depending** 9:5
**deposed** 18:23
**deposition** 19:7 21:11
**depositions** 26:8
**deserving** 21:6
**development** 13:16 20:19
**device** 17:9
**didn't** 18:17 20:4
**difficulties** 5:14
**direct** 15:2 21:17 22:10

**directly** 12:14,24 22:14
**discovery** 5:3 6:13 8:4,14,17,24 9:3 10:22,24 11:2,4,8 12:14,20,22 13:10 14:2,5,8 15:16 17:5 20:18,22 21:12 22:19 23:15 24:4,8,23 25:4,15 25:17 26:8,11
**discuss** 10:8
**discussed** 5:10
**discussions** 25:8 25:10,15
**dispute** 7:3 11:13 15:17,18 16:16,25 23:24 24:19
**disputes** 8:24 24:10
**district** 1:2
**document** 19:15
**documents** 14:10 24:15
**doesn't** 19:19,19
**doing** 12:18 17:4
**dollar** 6:20 7:19
**don't** 11:6,22 14:17 19:17 20:20
**dots** 12:15
**double** 13:3
**drafts** 13:19
**drag** 21:14
**dropped** 11:17
**due** 15:9 22:21,24

**e**

**e** 1:21,21 3:1,1,15 5:1,1 27:1
**earlier** 13:9,11,21 13:24 19:8 22:1,6
**early** 15:14 16:22
**ecro** 1:25

**effect** 17:13 18:4
**effective** 8:8 12:1 15:19,23
**efforts** 8:15 14:3
**efh** 5:3
**either** 26:13
**ellis** 3:10
**enable** 17:11 23:19
**enact** 18:6
**energy** 1:6 2:1
**engaged** 6:24 7:24 8:3 23:12
**engagement** 9:4 13:18
**entered** 17:4 20:13,13 25:18
**entitled** 24:4
**entity** 15:12
**escrow** 16:15
**essentially** 6:12 6:14 7:5 11:25 13:6 18:21
**establishing** 25:8
**estimate** 14:11
**estimation** 13:25
**et** 1:7 2:1 26:5,8
**evaluate** 13:19
**event** 18:2 25:14
**events** 13:13
**everybody** 5:2 24:1
**everything's** 24:13
**evidence** 12:20 19:18 21:7 25:7 25:14
**evidentiary** 15:15 18:19 26:4
**ewing** 3:17 14:22
**exactly** 23:2
**example** 19:7

excuse  7:9
existed  16:21
explore  12:4
  13:16 22:15,25
  23:9,18 24:8,22
extremely  16:5
eyes  25:20

### f

f  1:21 27:1
fact  11:1,17 14:7
  22:6 23:12,16
  24:10 26:2
factors  17:22
facts  23:18 24:9
  24:22 25:15
factual  24:20
fashion  21:13
fault  10:19
federal  24:4
feet  15:24 16:2,6
  18:10 23:5
figure  24:9
file  11:5 22:7 24:6
filed  2:2,3,7 5:23
  6:8 7:15,22 8:1,8
  13:13,14 18:16,19
  18:23 19:9 24:17
  26:14
filing  8:11 18:18
find  26:9
fine  10:2 14:18
finger  3:3 5:8
first  6:5 8:12
  10:22 12:15 15:5
  25:5
fiscal  16:12 18:7
fixed  23:24
focus  15:1
following  11:16
  15:10
ford  7:6 15:21,25
  17:15,20,24 18:1
  18:3

foregoing  27:3
foreseen  13:22
form  8:10
formula  16:5,9
forth  12:23 25:3
forward  6:25 8:15
  14:2,4 17:12 23:3
  23:16,23 26:15
frankly  8:7,10,20
  9:4 12:16 13:21
  21:15
fre  12:17
free  24:5
further  21:14
future  1:6 2:1

### g

g  5:1
general  6:23 7:22
  11:18
generally  24:6
genuine  24:9
give  8:7 14:10
given  8:9 23:7
gives  15:6
giving  6:16
go  14:6 15:14
  20:23 25:10 26:15
goes  13:17 18:1
going  5:9 6:4 10:8
  14:12 15:21 16:24
  17:14 20:24,25
  25:1,2,5
good  5:2
gotten  14:8
guidance  14:12
  26:17

### h

hadn't  8:5
hand  25:25
happened  10:3
happy  14:16
  25:19

haven't  9:20,21
  14:8
headed  26:4
hear  5:13 9:10,10
  9:19,20,21 10:2
  21:23
heard  14:22,24
hearing  2:1,5 7:1
  15:15 17:3 20:15
  20:17 25:23 26:4
hello  5:5
here's  15:4
he's  5:11
high  16:18,19
history  26:4
hogan  4:5
holdings  1:6 2:1
hon  1:22
honor  5:7,12,18
  5:21 8:21,23 9:19
  9:24 10:15 11:9
  14:1,21,23 15:5
  17:5 19:5 20:3
  21:2,25 22:2,19
  23:10 26:17,20,23
honor's  23:20
hope  21:23
hopefully  26:10
hyde  2:25 27:3,8

### i

impact  7:13 11:20
  12:3 17:2,16
  20:23 22:11
impacted  11:12
  19:1
impacts  12:5
  19:12
implementation
  17:8
implicit  10:23
import  23:1
important  11:9
  24:21

importantly
  11:14
imposition  16:20
impossible  13:22
inappropriate
  24:17
included  16:12
including  17:7
increase  16:12
increased  16:15
  16:20
increasing  15:20
incumbent  24:21
indications  23:16
indiscernible  5:11
  6:7,8,11,15 7:8
  8:14 9:5,7,9,11,13
  9:15,17 19:7
  21:10 22:5 23:14
information  18:20
  20:6
initial  6:18,18
instance  15:9
internally  22:22
interpret  19:20
involved  17:6
isn't  12:19 23:2,6
issue  5:25 6:14
  7:17,18,25 8:13
  8:22,24 13:4
  14:13,14 15:16
  20:2,9
issues  6:2 7:2 9:4
  10:7,21 12:13
  14:5,16 17:6 21:1
  21:4 22:2 24:20
  25:17
it's  5:12 6:15 10:2
  11:9 12:20,20
  13:2 15:8 16:6
  17:10,25 19:2,15
  19:16 20:24,25
  21:6 22:3,25 24:5

24:13,13,16,18,21
25:14,20 26:5
**i'll** 5:4 14:25
**i'm** 5:19 9:6,23,24
10:16 21:18 24:16
25:1,5,19
**i've** 9:25

**j**

**jason** 3:8 4:7 5:7
**john** 3:22 14:21
**jointly** 1:7
**judge** 1:23 5:3
25:13
**judgment** 2:6
5:25 6:7,9 7:23
8:3,16 9:2 11:3
21:10 24:6,11,18
24:24 25:2 26:12
**june** 27:25
**jut** 20:24

**k**

**k** 4:5
**kind** 11:20 17:24
**king** 3:5
**kirkland** 3:10
**know** 5:11 6:4
8:19 10:3,7 19:14
20:14 21:9,16
22:10 23:11 24:7
25:6
**knows** 23:10
**kosher** 21:9

**l**

**lake** 7:6 15:21,25
17:15,19,24 18:1
18:3
**language** 15:8
23:8
**late** 8:8
**laughs** 10:5
**lay** 22:8

**layton** 3:3 5:8
**lead** 5:9 7:14
**leak** 6:19
**lease** 15:5,9 16:2,4
18:9 21:3
**led** 13:20
**ledanski** 2:25 27:3
27:8
**legal** 8:12 24:12
27:20
**lehr** 3:17 14:22
**letter** 6:10 21:18
21:21 22:20
**let's** 24:2
**lexington** 3:12
**liability** 25:9
**limitation** 6:12
25:23
**limitations** 26:1
**limited** 21:12
**limits** 8:13
**litigated** 8:20
**litigation** 7:7,8,12
17:7 26:6
**llp** 3:10,17
**local** 25:20
**long** 26:9
**longer** 12:1 25:24
**look** 10:18 21:3
**looked** 21:21
**looks** 17:1 23:8
**lose** 10:4
**lot** 15:25
**lower** 18:11
**luminant** 5:4,5,6
5:8,10 6:20,23 8:4
16:1,3,4,9 18:23
18:24 19:10 20:4
21:13,14 22:23
**luminant's** 14:24
18:9,15 20:15

**m**

**m** 3:8
**madron** 3:8 5:7,7
**major** 7:2
**making** 12:7
**manner** 13:17
23:17
**march** 13:7 16:24
19:22
**mark** 3:15 4:3 5:9
5:12
**market** 1:12 3:19
**material** 24:10
**materially** 7:21
**matter** 5:3 21:12
21:15 23:17 24:3
24:3
**matters** 5:10
11:15 12:13
**mckane** 3:15 5:9
5:12,13,18 9:6,7,8
9:8,9,11,12,13,14
9:15,16,17,18,18
9:19,24 10:4,10
10:15,18 14:19
15:2 20:4 21:23
21:25 24:15 25:13
26:16,22,23
**mckane's** 21:17
**mea** 18:17
**mean** 24:23
**meaning** 8:6
24:14,25
**meet** 14:2
**merit** 8:22
**methodology**
17:10
**million** 6:20,21
7:19
**mind** 21:13
**mineola** 27:23
**minimize** 23:21

**minute** 6:16
**minutes** 9:21
**missed** 9:23 10:16
**misunderstanding**
19:10
**monetary** 15:8
16:4 18:10,15,25
22:21,24
**money** 12:15
**monies** 12:8
**motion** 2:5 5:24
6:7,9 7:23 8:3,16
9:1 11:3 24:6,17
25:1 26:12
**motions** 24:11,24
**move** 23:16,22
**moving** 14:2
17:12
**multiplied** 16:6
18:11
**multitude** 17:21

**n**

**n** 3:1,5 5:1 27:1
**narrow** 6:13 13:6
13:7 21:3 25:11
**narrowing** 10:25
**necessarily** 20:21
**necessary** 25:19
**need** 8:4 11:4,6,8
12:4,24 13:16
14:4 18:21,24,24
19:17 22:4,10
23:18,20 26:6,9
**needed** 22:7
**needs** 10:22 11:1
**never** 8:6,6
**new** 3:13 5:22
7:14 8:2 11:10,11
13:14 15:3 17:18
18:16,22 19:2
22:3,8,12 26:5
**noise** 5:19

**normally**  11:23
**north**  1:12 3:19
**notably**  7:21
**note**  12:19
**noted**  12:21
**notice**  20:9
**november**  6:17
**number**  7:20,25
**ny**  3:13 27:23

**o**

**o**  1:21 5:1 27:1
**objected**  6:24
**objection**  2:1
**obligation**  16:4
  18:10
**obligations**  15:9
  18:15,25 22:21,24
**obviously**  25:17
**occur**  25:23
**october**  7:9 11:24
  13:7 15:19,23
  17:12 19:22
**offer**  25:5
**officer**  10:19
**oh**  5:15
**okay**  14:17 15:13
  20:20
**old**  5:22 27:21
**once**  26:11
**open**  25:16
**operator**  1:25
**opportunity**  23:9
  24:8
**opposition**  11:5
**order**  6:12 16:14
  17:4 25:3 26:7
**orders**  20:12,13
**ordinances**  17:8
  18:6 19:12
**ordinary**  11:21
**original**  26:13
**owed**  12:9 22:9

**p**

**p**  3:1,1 5:1
**p.a.**  3:3
**p.m.**  1:15,15
**page**  22:20
**papers**  10:17
  14:24,25 15:1
  19:6
**paragraphs**  21:16
**parallel**  7:3,7
  11:13
**part**  21:9
**parties**  6:24 8:17
  9:2 11:1 13:24
  24:4 25:2 26:9
**party**  13:2
**pay**  7:5 16:14,15
  17:14,19
**payable**  17:17
**payment**  2:6
**pending**  14:8
  16:15 25:19
**people**  24:8
**perform**  12:10
**period**  13:5 14:14
  15:10 19:22,23
  26:7,11
**periods**  16:13
**phone**  5:6 14:15
  14:17
**place**  20:18
**plain**  22:25 24:14
  24:24
**planned**  9:25
**plan's**  18:17
**pm**  26:25
**point**  9:5
**position**  10:20
  11:5
**possible**  23:21
**potential**  6:25
**premature**  24:18

**prepared**  13:24
  20:10
**present**  4:1
**previous**  25:23
  26:2
**previously**  18:23
**prior**  25:24
**privilege**  10:13
  12:16 14:13 25:6
**probably**  8:21
  14:10
**problem**  8:10
  12:22
**procedure**  24:5
**proceed**  21:12
**proceeded**  7:11
**proceeding**  6:25
**proceedings**  5:5
  5:16 13:25 26:24
  27:4
**produced**  19:25
**professional**
  25:20
**prole**  19:17 21:7
**proof**  2:2 5:24
  6:18,24 7:15,16
  8:2 11:10 13:11
  13:11,13 18:16
  19:9 22:8
**proofs**  7:13
**protection**  25:9
**protective**  6:12
**provide**  14:9
  19:21
**public**  16:14
**purposes**  8:25
  18:19 24:18 25:8
  26:1
**pursuant**  16:23
  18:4,22
**pursue**  22:18
**put**  8:14 17:18
  21:18 23:3

**q**

**question**  12:3
  22:23
**questions**  14:16
  14:19 21:19,23
  26:15,19,20
**quite**  9:22
**quote**  14:13 22:23

**r**

**r**  1:21 3:1 5:1 27:1
**radar**  8:21
**rapid**  21:13
**rate**  15:20 16:7,10
  16:11,17,20 17:12
  17:23 18:2,7,11
  19:3
**rates**  16:15
**reach**  14:5
**reached**  7:10
  11:14,24 13:1,8
  22:9,14
**read**  10:17 14:23
  14:23,24 19:20
  21:2,21,22
**reading**  23:1
  24:14
**reality**  26:3
**really**  6:3 8:18
  15:4 21:4 26:3
**reason**  11:2 15:11
  23:11
**reasons**  11:16
**recalculated**  19:2
  23:19
**received**  15:12,12
  23:13
**recognize**  8:7 11:1
  14:10
**reconvey**  11:25
**record**  27:4
**record's**  21:21
**recovery**  13:3,3

redirect  22:19
reduced  11:18
  18:5,7,12 19:3
reducing  17:13
reduction  15:10
refer  22:22
referred  7:6,7
regard  7:1 16:10
  18:18 20:2 22:2
  23:2 25:22
regarding  7:4
  20:22 25:7,16
regards  6:15 10:1
  11:8 13:10,10
rehash  10:20
  14:25 21:18
rejected  15:6
rejection  6:19
  15:10
relate  15:17 20:12
related  15:18
relates  11:3 13:5
relating  17:24
  19:24
relatively  9:4
  23:23 25:11
relevant  12:24
  14:13 19:23 24:20
  26:1
rely  12:22
relying  12:17
renewed  15:23
reorganized
  24:22 26:14
reply  20:15,17
  21:24
request  23:15
requested  5:4,17
requests  6:5
required  16:14
requirements
  18:17

reservoir  7:7
resolution  7:12
  16:16 21:15
resolve  7:25 8:23
  23:17
resolved  7:9
respect  5:10 16:21
respond  20:8
response  15:2
  21:10,17
responses  10:24
restart  26:12
result  19:3
retroactively
  12:11 22:21 23:7
retroactivity
  11:23
revised  18:4,21
  23:19
revisited  22:12
richards  3:3 5:8
right  5:15 10:15
  14:7 15:24 23:25
  26:21
rights  11:25 12:12
  22:22
ripe  9:4
rise  15:6
river  7:4,5 13:18
  15:18,19 16:25
  17:14,17 20:5,7,9
road  27:21
roll  9:22
rudewicz  4:6
rule  12:19,20 25:6
  25:7,14,14
rules  24:4 25:20
rulings  14:12

─────── s ───────

s  1:22 3:1 5:1
sabine  7:4,5 12:19
  13:18 15:17,18
  16:25 17:14,17

20:5,7,9
safe  26:21
sake  23:12
sanjana  4:7
saul  3:17 14:21
saying  24:16
says  15:8 16:8
schedule  6:7 8:15
  9:1 11:3 14:6 25:4
scheduling  25:3
  26:7
scope  6:13 13:10
  25:12
scope's  14:12
scratch  26:6
screen  8:22
second  5:24 6:8
  7:16 8:1,5,11
  11:10 13:5,13
  22:7
see  11:23 21:3
seeking  8:12
  11:19 20:6,7
sense  14:11
separate  6:14
september  7:9
  20:24
serious  22:23
served  20:5 23:14
set  8:15 11:2
  15:11 16:7,11,17
  17:11,23 25:23
sets  14:24 25:3
  26:7
setting  9:1 18:2
settlement  7:10
  10:12 11:12,12,13
  11:21,21 12:5,16
  13:1,8,20,23
  14:14 16:24 17:2
  17:13 18:13 19:1
  19:4,15,18,24
  20:20,22 21:4

22:11 23:1,2 25:6
  25:8,9,16,24
shifted  22:4
shouldn't  13:20
showing  19:16
  21:5
significantly
  11:15
simple  16:6 25:3
simply  16:5 19:2
  24:14
situation  15:5
smaller  16:2
solutions  27:20
somewhat  13:1
sontchi  1:22 5:3
sonya  2:25 27:3,8
soon  23:13
sorry  9:6,23,24
  10:16
sounds  9:22
speaking  5:11
  24:7
specific  14:19
specifically  7:19
  12:21 13:2,22
  25:4
sra  7:4,12 11:12
  11:20,25 13:17
  16:13 18:13 19:1
  19:4,14,18,22,24
  20:2,20,22 22:11
sra's  16:19
standing  8:9
start  5:5,16 24:2
  26:6
started  10:12 14:3
states  1:1,11
status  6:3 8:18
  10:6 23:15
statutory  15:8
stay  25:1

**stemming**  6:18
**stepping**  6:16
**stipulation**  13:9
  22:6 25:18
**straightforward**
  11:6
**street**  1:12 3:5,19
**structured**  12:5
**stuck**  5:20 10:1
**studies**  17:9,21
  18:5,22 19:11
**study**  17:18 18:1
  22:12
**submitted**  6:18
**subpoena**  20:5
**subsequent**  6:19
**subset**  16:2
**sufficiently**  11:6
**suggest**  25:2
**suite**  3:5,19 27:22
**summarize**  21:16
**summary**  2:5 5:25
  6:7,9 7:23 8:3,16
  9:2 11:3 21:10
  24:6,11,17,24
  25:2 26:12
**summer**  20:5
**sums**  15:11
**superseded**  13:12
**superseding**
  26:14
**sure**  18:20

**t**

**t**  27:1,1
**take**  9:3 15:24
  17:21
**taken**  15:16 17:6
**talk**  23:4
**talked**  22:5
**talking**  10:12 15:2
  15:3
**talks**  22:20

**technical**  5:14
**teed**  14:7
**telephonically**  3:8
  3:15,22 4:1
**tell**  20:4
**tells**  22:9
**tend**  25:22
**term**  15:23
**terms**  13:3 20:22
  23:22
**terribly**  9:24
**texas**  2:5 16:13
**thank**  5:18 14:18
  21:20,25 23:25
  26:16,20,21,23
**that's**  5:23 6:5,22
  7:15 10:10,11
  12:21 13:4,13
  14:18 15:4,25
  16:9,9 18:13
  20:16 21:5,9,15
  22:5,25 23:9,22
  24:7
**theoretically**  23:6
**theory**  22:15
**there's**  10:23 12:3
  19:16 20:2 21:5,8
  22:10,12 23:5,5
  25:17
**they'd**  14:9 23:3
**they're**  6:2 7:19
  8:9,14 11:19 12:7
  20:7
**they've**  23:7
**thing**  17:18 18:13
  20:4,16,19
**things**  15:1 20:25
**think**  5:4 6:4,5
  8:25 10:13,22,23
  10:25,25 11:5,8
  13:11,17,21 14:1
  14:6 17:2 19:6,25
  20:2,6 21:1,8,12

  21:13,14 22:2,9
  23:10,21 24:12,15
  24:18,21,21 25:10
  25:15 26:1,6,9
**third**  13:2 22:20
**thought**  16:18
  20:9
**thoughts**  25:5
**three**  6:2
**tie**  12:14
**time**  6:13 7:10
  12:15 13:5 14:13
  15:16 16:13 17:5
  19:22,23 24:6
  26:8
**timeframes**  10:13
**times**  7:25
**timing**  25:22 26:2
**today**  5:10,21 6:3
  8:18,25 26:3
**today's**  26:1
**total**  22:3
**transcribed**  2:25
**transcript**  27:4
**transition**  17:24
**travel**  10:1
**travels**  26:22
**trial**  15:15
**tried**  6:1 7:25
  21:16
**true**  24:5 27:4
**try**  8:15 13:2
  14:25 23:21
**trying**  8:14 13:6
  22:5,25 23:9
**turn**  5:4 24:23
**turning**  5:16
**two**  9:3 10:6,7
  12:13 15:10
**type**  13:23

**u**

**u.s.**  1:23 2:7
**ultimately**  7:8,14
  8:22 12:10 13:20
  14:1 19:20 23:10
**unable**  8:23
**unclear**  19:16
  21:6
**underlying**  23:18
**understand**  12:4
  12:17,25 18:17,25
  19:13,17 20:23
  23:1 24:12
**understanding**
  22:13
**undertakes**  17:10
  17:10
**unfortunately**
  5:19 9:21
**unilaterally**  15:19
  16:20
**united**  1:1,11
**unknown**  1:25
**unnecessarily**
  21:1
**unrelated**  17:23
**unsecured**  6:23
  7:22 11:18
**unsuccessful**  8:1
**unusual**  13:1
**update**  8:19
**utility**  16:14

**v**

**variable**  17:20
**various**  24:14
**verbiage**  6:15
**veritext**  27:20
**view**  21:17 22:17

**w**

**want**  21:18 23:3
  23:16

**wanted** 15:1
**water** 6:19 7:6,8
  11:13,25 12:11
  15:5,9,22,24,25
  16:1,2,2,3,4,6,7
  16:10,11,17 17:9
  17:11,15,20,22
  18:1,2,4,7,9,10,11
  19:3 21:3 22:22
  22:23 23:5,6
**way** 7:2,17,24
  8:24 12:5 13:2
  19:16 20:24 23:20
  24:7
**ways** 5:22 8:18
**week** 14:3
**weeks** 5:23
**welcome** 26:18
**went** 17:1
**we'd** 17:3
**we'll** 23:21 26:12
  26:15
**we're** 5:3,21 6:4
  8:9,23 11:9 20:21
  22:5,25 23:9,22
  26:22
**we've** 6:1 7:25
  14:18 15:15 20:20
  21:10,11
**whatsoever** 15:11
**what's** 5:22 7:6
  13:4 16:7 25:25
**wholesale** 16:7,10
  16:11,17 17:11,22
  17:25 18:2,7,11
  19:3
**willing** 19:21
  20:21
**wilmington** 1:13
  3:6,20
**window** 6:13 13:7
**wise** 12:14

**withdrew** 7:21
**witness** 18:23
**words** 12:18
**work** 6:1 20:21
  25:3 26:7,10
**works** 24:7
**worry** 14:17
**worth** 6:15
**writing** 19:15
  21:5

### y

**yeah** 5:18 10:11
**year** 7:15 13:15
  15:23,25 18:11
**years** 6:1 15:10
  16:12,18 18:7
  25:24
**yenamandra** 4:8
**york** 3:13
**you're** 9:22
**you've** 14:23

### '

**'15** 6:17