1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3

4

5   In re:                    :

                              :     Chapter 11

6   ENERGY FUTURE HOLDINGS    :

    CORP.,  et al.,           :     Case No. 14-10979(CSS)

7                             :

              Debtors.        :     (Jointly Administered)

8   _____:

9

10

11

12                              United States Bankruptcy Court

13                              824 North Market Street

14                              Wilmington, Delaware

15                              December 19, 2019

16                              2:00 PM

17   B E F O R E :

18   HON CHRISTOPHER S. SONTCHI

19   U.S. BANKRUPTCY JUDGE

20

21

22

23

24

25   ECRO OPERATOR:   LESLIE MURIN

1    HEARING re Reorganized TCEH's Fifty-Third Omnibus

2    (Substantive) Objection to TCEH Asbestos Claims Requesting

3    Allowance of TCEH Asbestos Claims Pursuant to Section 502(b)

4    of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and

5    3007, and Local Bankruptcy Rule 3007-1 [D.I. 13879; filed

6    November 6, 2019] (the "Omnibus Objection")

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    RICHARDS LAYTON & FINGER, P.A.

4         Attorneys for the TCEH

5

6    BY:  JASON M. MADRON

7

8    BRAME LAW FIRM PLLC

9         Attorneys for the TCEH

10

11   BY:  FRANK BRAME

12

13   JOHN GOLDWATER - Declarant

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

```
 1                    P R O C E E D I N G S

 2              CLERK:  All rise.

 3              THE COURT:  Please be seated.

 4              MR. MADRON:  Good afternoon, Your Honor.  For the

 5    record, Jason Madron, of Richards, Layton & Finger, on

 6    behalf of reorganized TCEH.  Your Honor, I'm joined by a

 7    couple of folks.  I'd make a few introductions in the

 8    courtroom.  To my right, Frank Brame.  Mr. Brame is of the

 9    Brame Law Firm PLLC.  He joined us by telephone at last

10    month's hearing.  And as I had mentioned to the Court last

11    month, Mr. Brame is serving as special asbestos claims

12    counsel to reorganized TCEH.

13              THE COURT:  Okay.

14              MR. MADRON:  And he has been admitted pro hoc vice

15    to be heard in these cases.

16              Also with us in the courtroom is John Goldwater.

17    Mr. Goldwater is a managing director of Alan Gray LLC, out

18    of Boston.  And Mr. Goldwater is the declarant in support of

19    the matter before the Court today.

20              With that, Your Honor, I'll turn to the agenda.

21    It's just a one-item agenda, which is the fifty-third

22    omnibus objection, which seeks to liquidate and allow all

23    manifested and unmanifested T-Side asbestos claims for plan

24    distribution purposes.

25              As I'm sure Your Honor and your staff are aware,
```

1    this objection objects to approximately 5,000 manifested and

2    unmanifested asbestos proofs of claim that were submitted by

3    approximately 3,100 unique individuals.

4            As Your Honor will also recall, as required by

5    local bankruptcy rule 3007-1(f)(ii), prior to filing the

6    fifty-third omnibus objection to claims, reorganized TCEH

7    filed a motion back on October 16th, 2019 at Docket Item

8    13869, seeking among other things a waiver of local

9    bankruptcy rules 3007-1(f)(i), (f)(iii) and (f)(v)

10   exclusively, as applied to the fifty-third omnibus objection

11   to claims, and approval of the form of notice of the fifty-

12   third omnibus objections to claims.

13           We would refer Your Honor to this motion as the

14   procedural motion.  I'll refer to it that way today and

15   throughout our papers upon filing.

16           Your Honor, although the procedural motion was

17   fully uncontested, the Court held a hearing to consider the

18   relief requested back on November 5th of 2019.  On the

19   record of the November 5th hearing, I addressed certain

20   questions and concerns raised by Your Honor with respect to

21   the relief being sought in the procedural motion, and with

22   respect to the upcoming fifty-third omnibus objection to

23   claims.

24           Following the conclusion of the November 5th

25   hearing, the Court entered an order granting the procedural

1    motion as requested.  That order is on the docket at Docket

2    Item 13877, and we refer to that as the procedural order.

3            Your Honor, as represented on the record of the

4    November 5th hearing, on the following evening of November

5    6, 2019, reorganized TCEH filed the fifty-third omnibus

6    objection to the T-Side asbestos claims, and that's at

7    Docket Item 13879.

8            As discussed on the record of the November 5th

9    hearing, Your Honor, the fifty-third omnibus objection to

10   claims does not dispute liability on account of the claims.

11   Rather, it seeks to liquidate and allow all the timely filed

12   T-Side manifested and unmanifested asbestos claims in an

13   equitable manner to permit plan distributions to be timely

14   made to the holders of those claims.

15           As to process, Your Honor, the procedural order

16   provided that reorganized TCEH was to serve all the core

17   2002 parties in these Chapter 11 cases with a full copy of

18   the fifty-third omnibus objection, along with exhibits, in

19   electronic format only on a USB flash drive.

20           Each of the holders of the claims subject to the

21   fifty-third omnibus objection were to be served and were

22   served with a paper copy of a cover letter customized to

23   them and a custom notice, which among other things provided

24   a plain language explanation of how the fifty-third omnibus

25   objection seeks to treat the claimant's claim, and clear

1    instructions on how to request a full paper copy of the

2    claim objection with its exhibits free of charge, if the

3    claimant desired, along with a full copy of the fifty-third

4    omnibus objection to claims and its exhibits on a flash

5    drive.

6              And then lastly, known counsel to any of the

7    claimants whose claims were subject to the fifty-third

8    omnibus objection were served with a full paper copy of the

9    objection, along with its exhibits.

10             Pursuant to the notice paragraph of the objection,

11   which is Paragraph 44, reorganized TCEH, through Epiq, its

12   claims and noticing agent, caused service of the claim

13   objection to be completed in accordance with the terms of

14   the procedural order on November 13th, 2019.  That is the

15   date that was five business days after the claim objection

16   was filed with the Court, and that's what we had put in the

17   notice paragraph, that we would accomplish service within

18   that period of time.  Obviously, Epiq required some runway

19   to assemble the thirty-some hundred packets, or actually

20   more than that, taking into account the core 2002 that went

21   out.

22             And evidence of these service efforts, Your Honor,

23   can be found on the docket at the affidavit of service from

24   Epiq, located at Docket Item 13889.

25             But although reorganized TCEH could have set an

1    objection deadline under the local bankruptcy rules as early

2    as November 27th, 2019, to afford above and beyond due

3    process to all the affected claimants, reorganized TCEH

4    noticed the fifty-third omnibus objection with a response

5    deadline of 4:00 PM Eastern Time on December 12, 2019.  That

6    is a full 15 days more than required by local bankruptcy

7    rule 9006-1(c)(2) and is indeed is the latest objection

8    deadline we could have set under the local rules as the date

9    that was seven days before today.

10            Your Honor, I'm pleased to report to the Court

11   that we believe that TCEH's proposed noticing program of the

12   claim objection functioned consistent with the terms of Your

13   Honor's procedural order, as well as how we envisioned that

14   it would run when we were seeking approval of the procedural

15   motion.

16            Specifically, as Mr. Brame will discuss

17   momentarily in greater detail, over the course of the last

18   few weeks, counsel to reorganized TCEH received and worked

19   to address dozens and dozens of informal inquiries received

20   from affected claimants that came in through either the case

21   toll-free telephone hotline, the case email address, or

22   through direct telephone or email contact to Mr. Brame's

23   firm or mine, or Kirkland & Ellis as counsel.

24            Among these inquiries, Your Honor, were general

25   inquiries about the claim objection, explanation about what

1    it proposed to do and how it proposed to affect the

2    claimants inquiring, and change of address requests, which

3    were all passed along to Epiq for processing.  In many

4    cases, these inquiries did not result in the inquiring party

5    filing an objection or opposing the relief we're seeking

6    here today as explanation, as questions were answered, and

7    explanations were provided.

8          Also, Your Honor, as Mr. Brame will discuss, where

9    contact information was available, effort was made to make

10   direct contact with those parties or their counsel, as

11   appropriate, who filed written responses to the fifty-third

12   omnibus objection to claims, in an effort to address the

13   responses and concerns that were filed.

14         Your Honor, additionally -- and this is something

15   you and I talked about last month -- as contemplated by

16   reorganized TCEH's noticing program approved by the

17   procedural order, numerous parties did indeed request a full

18   paper copy of the fifty-third omnibus objection to claims,

19   and as evidenced by the supplemental affidavits of service

20   on the docket in these cases, these requests were promptly

21   fulfilled.

22         The supplemental affidavits of service can be

23   found on the docket at Docket Item 13961 through and

24   including Docket Item 13970.  And although these were all

25   filed yesterday, we accumulated these.  I mean, service had

1    been going on on a rolling basis, as evidenced in the

2    affidavits.

3           With that, Your Honor, as background, as previewed

4    we believed would be the case at the November 5th, 2019

5    hearing, I also am pleased to inform the Court that we come

6    before Your Honor today with an overwhelming degree of

7    consensus on the manifested side.  Indeed, only one

8    manifested claimant filed a pro se response.  And written

9    responses having been filed by only approximately two

10   percent of the unmanifested claimants, and indeed, of that

11   around two percent, not all of those written responses

12   actually even oppose the relief that we're seeking here

13   today in any discernible manner.

14          Your Honor, on December 16th, Monday of this week,

15   we did file a written reply to the objections that were

16   received and filed by the Court -- that's at Docket Item

17   13956 -- along with a revised proposed form of order

18   sustaining the objection, and that is at Docket Item 13957.

19          As evidenced by the affidavit of service filed on

20   the docket at Docket Item 13975, in addition to being served

21   on the core 2002 parties, these documents were also served

22   on each and every party who filed a written response to the

23   objection via overnight delivery.

24          Lastly, Your Honor, on December 17th, 2019,

25   reorganized TCEH filed an agenda with respect to today's

1    hearing, which among other things, provided recipients with

2    instructions on how to participate in today's hearing

3    telephonically.  And that agenda is evidenced by the

4    affidavit of service filed on the docket at Docket Item

5    13979.  It was served on both the core 2002 parties and each

6    and every claimant who filed a written response at the time

7    the agenda was filed, by either facsimile or overnight

8    delivery, and in cases where some parties had consented to

9    email, also by email.  But I don't think that would apply to

10   the claimants, if recollection serves.

11            And relatedly, Your Honor, in consultation with

12   Your Honor's chambers yesterday, on December 18th, we filed

13   an amended agenda with respect to today's hearing, which is

14   on the docket at DI-13976.  The purpose of that was to pick

15   up two additional pro se objections that were docketed with

16   the Court after we filed the original agenda.  And it was

17   served yesterday by Epiq in a commensurate fashion to the

18   original agenda, and the affidavit of service is on the

19   docket at Docket Item 13980.

20            And with that, Your Honor, unless Your Honor has

21   any questions for me with respect to notice or process

22   issues, I'll go ahead and yield the lectern to Mr. Brame,

23   who will address the merits of the objection, as well as the

24   written responses that we received.

25            THE COURT:  Okay.

1          MR. MADRON:  Thank you very much, Your Honor.

2          THE COURT:  Before I do that, according to the

3     list I have, we do not have any claimants or attorneys for

4     claimants present on the phone.  Is that correct?

5          MR. MADRON:  That is my understanding, Your Honor.

6     Your Honor -- and Mr. Brame, obviously, has almost committed

7     all of these 60 responses that were filed to memory -- but

8     many of the claimants affirmatively stated, for reasons I'm

9     not quite sure, that they do not intend to participate in

10    today's hearing.  That's certainly not universal, but many

11    did.

12         THE COURT:  Mm hmm.

13         MR. MADRON:  And then with respect to filings, I

14    believe only one response -- and Mr. Brame can jump in and

15    correct me if I'm wrong -- that was filed, was filed by

16    counsel, rather than by the pro se folks themselves.

17         THE COURT:  Okay.  Thank you.

18         MR. MADRON:  Very good.  Thank you, Your Honor.

19         THE COURT:  Mr. Brame, good afternoon.

20         MR. BRAME:  Good afternoon, Your Honor, and thank

21    you.  I'm Frank Brame.  I'm here on behalf of Texas

22    Competitive Electric Holdings as well.  I just wanted to

23    talk a little about the substance of the relief that we're

24    requesting as part of the fifty-third omnibus objection.

25         In our view, the relief we're requesting as part

1    of this objection is fairly narrow.  And the reason I say

2    that is because the question of liability on these claims is

3    not being contested.  We're not contesting liability.  We're

4    proposing to allow all of the claims.  And so that's not

5    really in dispute.  And in fact, we haven't gotten any

6    objections from anyone saying we shouldn't be doing it in

7    that manner.

8              In terms of the amount of dollars, the amount of

9    allowance dollars is $17.2 million, which was determined as

10   part of the estimation process back in 2016.  And so that's

11   already been determined, the total amount of dollars to be

12   allocated.

13             And in terms of the cash to be distributed to the

14   claimants, of course, that's part of a plan and confirmation

15   order which tells us which class each claimant -- the

16   claimants belong in, and the TCEH cash payment that they get

17   to participate in pro rata as claimants.  So those parts

18   have all already been determined.

19             The only question we're proposing today, or the

20   only thing we're trying to accomplish, is what's the right

21   way to allocate the $17.2 million allowance among this group

22   of approximately 3,000 claimants that we have.

23             And so I was asked, and working with Mr. Madron

24   and Mr. Goldwater, to come up with a way to do this in a

25   fair, equitable, efficient way that would be the best for

1    the claimants and would be effective in addressing these

2    matters.

3              So if I can just begin by talking about the

4    manifested claimants, we have -- in this pool of about 3,000

5    claimants, we have 372 of them are manifested claimants,

6    which means those are people who filed a manifested proof of

7    claim form asserting a disease as a result of asbestos

8    exposure by one of the TCEH Debtors.  Our proposal allocates

9    $9,452,885 to that group of 372 claimants.

10             And the way we came up with that is each of the

11   claimants asserts in their proof of claim their disease

12   category.  There's four disease categories that they fall

13   into.  Those are the traditional or typical disease

14   categories that are used in asbestos claims administration:

15   mesothelioma, lung cancer, other cancers, and last, asbestos

16   and pleural disease.  And we have got a fixed payment amount

17   for each of those four categories.

18             So there's $350,000 for mesothelioma, $140,000 for

19   lung cancer, $70,000 for cancers, and then a number of

20   $17,010 for asbestos and pleural disease.  And in fact, on

21   the last category, though, we did use a range for that

22   disease category.  Not everyone is getting an allowance of

23   $17,010.  It's within a range, but it averages to $17,010.

24   And I can answer questions or go into detail about that, if

25   the Court has questions.

1          I did think that when we came in on this that I

2    was going to be able to say that out of 372 claimants, 372

3    are unopposed or filed no objection.  As it turned out, we

4    did get one objection, and I want to just address that for a

5    moment.  Mr. Charles Cervantes filed an objection the day

6    after the deadline.  He is represented by Mr. Ryan Runkle,

7    who is one of the attorneys for claimant's counsel, who I

8    worked with on this.  He represents -- Mr. Runkle represents

9    the majority of the manifested claimants.  And he and I

10   worked on these numbers, came up these numbers, and he, of

11   course, was unopposed to the relief for these manifested

12   claimants in the case.

13          Again, after the objection deadline, we did get an

14   objection from  Mr. Cervantes pro se, but he was represented

15   by Mr. Runkle.  I reached out to Mr. Runkle.  Obviously, I

16   didn't contact Mr. Cervantes directly.  I reached out to Mr.

17   Runkle to ask him what was going on.  He told me he would

18   check with Mr. Cervantes and get back to me.  He has not

19   been able to get back to me on that yet, so I don't have a

20   report for the Court on kind of why we received that

21   objection, or what the reasoning was behind it.

22          We would ask as part of today that that objection

23   be overruled, really for a couple of reasons.  The main

24   reason is the objection doesn't give any reasons why the

25   omnibus objection shouldn't be sustained.  It just says I

1    object.  That's really, you know, kind of my main argument

2    to the Court why that objection should be overruled.  But it

3    also came in after the deadline, and it also came in the

4    case of -- he is represented by counsel, who has separately

5    told me he's unopposed.

6            With respect to the other 371, Mr. Runkle

7    represents the majority of them.  He's represented to me

8    he's unopposed.  Mr. Steve Kazan represents some of them.

9    I've had phone conversations with him, and he has

10   represented to me that he is unopposed to the relief

11   requested in here.  Mr. Mark Lanier's firm has got some of

12   these claimants and has represented to me that they are

13   unopposed.

14           And I think even perhaps more significantly is in

15   this entire group of over 3,000 claimants, there are four

16   mesothelioma claimants in the group, which would be

17   traditionally considered your most severe or your most

18   significant cases.  All four of those claimants have

19   represented -- their counsel has represented to me that they

20   are unopposed to the relief sought here.  And I think that's

21   fairly significant, that your most severely affected people

22   are in favor of the relief that we're proposing.

23           So in sum, on the manifested group we've got, I

24   think, overwhelming support of the manifested claimants in

25   terms of the relief we're requesting and what we're

1    proposing.

2            Turning to the unmanifested group, there's 2,687

3    of those who filed an unmanifested claim form.  We're

4    proposing a claims allowance for them of $7.4 million.  That

5    overall number comes from Exhibit 1 to the estimation order,

6    which allocates that total amount to future claimants.  And

7    that's where we got that number.

8            The way we allocated it was on a pro rata basis.

9    And so every unmanifested claimant got the same dollar

10   figure.  It's simply the $7.4 million divided by the number

11   of claimants.  And that was the method that we used.

12           I think it's significant that of the various

13   objections we got, we didn't a single objection that argued

14   that we shouldn't have used the $7.4 million number, or that

15   that was somehow wrong.  We didn't get a single objection

16   saying that the way that we allocated it or pro rata method

17   that we used to do that was wrong or incorrect.  And in

18   fact, you know, we believe that this is the best correct,

19   most equitable, fairest way to do it, and frankly, you know,

20   haven't seen any ideas or suggestions or other ways to do it

21   better than that.

22           I could -- having reviewed -- I've reviewed all of

23   the objections and I would say, just in my view, having

24   looked at the objections, I don't think there's a single

25   objection that goes to the narrow scope of relief of what

1    we're requesting here.  We're giving them --

2           THE COURT:  Well -- I'm sorry to interrupt.  There

3    were some -- and I left it in my office.  I left the memo in

4    my office.  There were several objections where they seemed

5    to indicate that they weren't really perhaps unmanifested

6    claims.  How are you treating those?

7           MR. BRAME:  Yes, Your Honor.  So with respect to -

8    - there's three of those --

9           THE COURT:  Right.

10          MR. BRAME:  -- where we have -- in the revised

11   proposed order that we provided, we have essentially

12   upgraded those claims to give them a claim allowance that's

13   more like a manifested claim allowance.  It's similar to, or

14   almost right at the numbers for the manifested claims, so

15   for those three.

16          THE COURT:  And who are they?

17          MR. BRAME:  That is Ms. Eula Smith, Ms. Essie

18   Moore, and Mr. Yalcin Latif.  I don't know if Your Honor has

19   the reviewed proposed order at your fingertips, but I can --

20          THE COURT:  I do not.

21          MR. BRAME:  I can --

22          THE COURT:  You said Mr. Latif?

23          MR. BRAME:  -- grab -- yes, Your Honor.

24          THE COURT:  All right.

25          MR. BRAME:  I can grab a copy and show you the --

1           THE COURT:  Yeah, please.

2           MR. BRAME:  -- modifications that we've made.

3           THE COURT:  And Mr. Dansby, you said, correct?

4    Did you say Mr. Dansby?

5           MR. BRAME:  No, Your Honor.  Ms. Smith, Ms. Moore,

6    and Mr. Latif.

7           THE COURT:  Okay.

8           MR. MADRON:  Your Honor, I appreciate that you

9    don't wet-sign order, but it does have a sign here.  But

10   this is what I think you would need, if I may approach with

11   it, please?

12          THE COURT:  Yeah.  I will occasionally sign an

13   order.  Please do approach.  It's just easier for our

14   internal --

15          MR. BRAME:  May I approach as well, Your Honor?

16          THE COURT:  Yes.

17          MR. BRAME:  -- so I can show you the page.

18          MR. MADRON:  I see.

19          MR. BRAME:  The revisions that we made were -- the

20   revisions we made are all going to be on this last page.

21          THE COURT:  Okay.  Thank you.

22          MR. BRAME:  Thank you, Your Honor.

23          MR. MADRON:  And Your Honor, I would note that the

24   copy we filed under a form of notice on the docket on

25   Monday, it has yellow highlighting, which we've removed for

1    purposes of this.

2              THE COURT:  Okay.

3              MR. MADRON:  And the yellow highlighting was

4    designed to point out for Your Honor the specific

5    modifications that were made.  All of the modifications were

6    made to the very end of Exhibit 2 to the order.  There were

7    no modifications made to the Exhibit 1, which are the --

8              THE COURT:  Okay.

9              MR. MADRON:  -- manifested.  So the upgrades, if

10   you will, to more like manifest treatment remain on Exhibit

11   2, at the end.

12             THE COURT:  Okay.  Now, Mr. Madron, did you upload

13   this or...?

14             MR. MADRON:  Yes, Your Honor.  It was --

15             THE COURT:  You uploaded it.

16             MR. MADRON:  The form that Your Honor is holding

17   has been uploaded and is available for e-signature to the

18   extent you're inclined to grant relief at the end of the

19   hearing.

20             THE COURT:  Okay.  I think I would prefer to do

21   that, only because it eliminates one more step of taking a

22   PDF of very small type and creating an image.  So it'll be a

23   little more clear for people who have to look at the order

24   on the docket if we do an e-order signing.

25             Evidence?  Do we have -- have we put the affidavit

1    into evidence?

2              MR. BRAME:  Your Honor, I was going to offer the

3    declarations --

4              THE COURT:  Yes.

5              MR. BRAME:  -- here in just a moment, but I

6    haven't done it yet.

7              THE COURT:  Oh, you don't have it yet.  Keep

8    going.

9              MR. BRAME:  Okay.

10             MR. MADRON:  Okay.  Thank you, Your Honor.

11             MR. BRAME:  In terms of the objections that we

12   received -- and Your Honor, I'm prepared to talk about each

13   one individually to the extent Your Honor has questions --

14   but I categorized them into a couple of different groups

15   that I just want to make some comments on.

16             The largest group of objections or comments or

17   writings that we got from unmanifested claimants was

18   pointing out the point of asbestos exposure, or the harms

19   and dangers of asbestos exposure, and those are points that,

20   I mean, we're not contesting as part of this procedure.

21   We're not denying those or saying that the claims should be

22   disallowed on that basis or challenging the claims on that

23   basis.

24             And so, in our view, those types of objections,

25   which is really a very large number of them, don't really go

1    to the relief that we're requesting here.  We're proposing

2    to allow those claims.

3         Some of the -- another group, or I guess probably

4    the next largest group, just suggests that the amount of the

5    claim allowance is too low or is not enough money in some

6    sense.  To me, that goes to -- again, not to the allocation

7    that we've proposed, but to the estimation order.  None of

8    these objections challenge the allocation.  They go to say

9    well, there's just not enough -- there's not enough in

10   total.  And as part of the estimation process in 2016, and

11   as part of the plan and confirmation order, the total amount

12   of allowance to this group of claimants was already

13   determined.  And so those objections, in our view, should be

14   overruled.

15        And then, of course, the kind of third type of

16   objection is saying that the claims allowance is greater

17   than the actual cash that will be delivered, and make a

18   comment about that, or object on that basis.  And again, I

19   would say that's really just an objection to the plan and

20   confirmation order.

21        We're not proposing to change how that works.

22   There's an allowed amount of the claim.  There's a cash

23   amount that they're entitled to as Classes C-4 and C-5 of

24   the plan explain, and how that goes into how much cash value

25   is there.  And so that's really just not an issue that's

1    before the Court today or that is part of the relief we are

2    requesting.  So again, we'd ask that those kinds of

3    objections be overruled as well, as not really going to the

4    point of the relief that's requested.

5              A couple of other remarks about that.  The

6    objections or comments from claimants represent less than

7    two percent of the claimants affected by the objection.  I

8    counted seven that are neutral or supportive, or don't

9    object, of the ones received.  One or two are duplicates.

10   Another 35 the approximately -- 50 or so, I would say,

11   that object to the relief, 35 come from two groups.

12             There's what looks like the Carlock Kissinger

13   Family Group that filed about 23; and the Moore Family

14   Group, what appears to the Moore Family Group, that filed

15   about 12.  Those are kind of duplicative objections.  Which

16   is not to minimize those.  I'm just trying to summarize kind

17   of where we are.

18             I attempted to reach out to every objector to

19   answer any questions they had or try to address any

20   concerns.  We did get one or two objections and that said

21   they didn't understand or something.  And I called and tried

22   to answer their questions and address any issues that they

23   had.  And I think we successfully did that.

24             We did make a few changes in the proposed order.

25   As we talked about a moment ago, there's really -- other

1    than some folks contacted us and said, my name was spelled

2    wrong or there was some minor changes like that, we really

3    made five of the changes, which I'll just summarize quickly.

4    One is there was a family that filed one claim form and they

5    just had the one claimant on there.  And there was only one

6    allowance for that family.  They contacted -- that's the

7    White family.  They contacted me and indicated that they had

8    intended to file it on behalf of their whole family and

9    would like five allowances.  And I looked at the claim form

10   and I worked with them on it, and we agreed to give the

11   whole -- everyone in the family an allowance.

12            The same thing happened with Mr. Latif and the

13   Yalcin Latif family.  They contacted us.  Kind of the same

14   thing happened.  They filed one claim form but indicated

15   that they intended to do it on behalf of the whole family

16   group.  And so we made that change.

17            And then the three other changes we made were the

18   three folks that we discussed earlier, which is Ms. Smith,

19   Ms. Moore and Mr. Latif, who we increased the amount of

20   their allowance in light of the comments and their objection

21   or the contact that they made to us, letting us know about

22   their condition.

23            So that actually is what I wanted to cover with

24   Your Honor.  To summarize, really, we have spent a lot of

25   time and energy working on this.  We've analyzed a lot of

1   claims.  We've looked -- analyzed these claims.  We've spent

2   a lot of time with these claims trying to figure out what is

3   the best approach, what's a fair, equitable, expeditious,

4   reasonable approach that would keep these claimants from

5   having to spend a lot of time and money litigating, and make

6   it be something can be fair and reasonable and resolve these

7   in an expeditious way.  We can frankly -- we can't think of

8   a better way to do it than the way we've approached it.

9           At this point, I'd like to offer the declaration

10  of Mr. Goldwater, Mr. John Goldwater, into evidence.

11          THE COURT:  Is there any objection to the

12  admission of Mr. Goldwater's declaration into evidence?  I

13  hear none.  It's Docket Item what?

14          MR. MADRON:  It's Exhibit B to the omnibus

15  objection itself, Your Honor.

16          THE COURT:  Okay.  It's admitted without

17  objection.

18      (Declaration of John Goldwater Admitted Into Evidence)

19          THE COURT:  Does anyone wish to cross-examine the

20  witness?  I hear none.  I have no questions.

21          MR. MADRON:  Thank you, Your Honor.

22          THE COURT:  You're welcome.

23          MR. BRAME:  Do I -- let me approach you with

24  copies of the declaration, or...?

25          THE COURT:  Oh, yes.  That's be helpful.  Thank

1    you.

2            MR. BRAME:  Thank you.

3            THE COURT:  Thank you very much.

4            MR. BRAME:  Thank you, Your Honor.

5            THE COURT:  All right.  Unless you have anything

6    further, I'm prepared to rule.

7            MR. BRAME:  Nothing, Your Honor.

8            THE COURT:  All right.  Well, before I do that,

9    let me ask, just for the record, whether there is anyone

10   else present in the court or by telephone who would like to

11   be heard in connection with this matter?  Speak now, or

12   forever hold your peace, as they say.  All right, I hear

13   none.

14            Well, this is the culmination of a long road.  The

15   case itself was filed in April of 2014, but more

16   specifically, a continuing endeavor to deal with the

17   potential asbestos liability of the T-Side and the E-Side

18   Debtors.  Of course, today we're just worried about the T-

19   Side.

20            The stops along the road have included a bar date,

21   which required the filing of proofs of claim by not just

22   those who had manifested a disease, but also based on the

23   Court's understanding of the ruling in Grossman's in the

24   Third Circuit, those who had been exposed prepetition but

25   had not yet manifested a disease, which we generally call

1    unmanifested claimants.

2           That was followed by a confirmation of a plan of

3    reorganization, which was approved, and in my memory,

4    certainly no asbestos objectors appeared in connection with

5    confirmation.  But in the event they did, they were

6    overruled.  And a confirmation was entered, which has long

7    ago become both a final and non-appealable order.

8           And that provided for the classification of

9    asbestos claims and their treatment, and included, based on

10   evidence, an order estimating what the universe of those

11   claims might look like, asbestos claims might look like,

12   based on the Ankura report.  And in that evidence, again not

13   objected to, again long since final, it set up the

14   background for establishing the approximately $17 million

15   reserve.  Is that the right number?

16          MR. MADRON:  $17.1 --

17          MR. BRAME:  Yes, Your Honor.

18          MR. MADRON:  -- I believe, Your Honor.

19          THE COURT:  Yeah --

20          MR. BRAME:  $17.2 million, Your Honor.

21          THE COURT:  There we go.  Thank you very much.

22          So now we have a plan that is final, an estimation

23   motion that is final, a bar date that is final, and we've

24   come to the end of the road, which is what do we do with

25   regard to figuring out how to allow these claims or disallow

1    these claims, what amount to allow these claims or disallow

2    these claims, and then map on the plan dollars as opposed to

3    claim dollars is really quite simple, based on the previous

4    -- on appeal decisions regarding the estimation motion and

5    the cap, or pot from which the asbestos claims can be drawn,

6    payment can be drawn.

7              Based today on the uncontroverted evidence, also,

8    frankly, some independent research by the Court, which

9    doesn't qualify as evidence but helps inform my decision,

10   which is that these numbers are actually pretty generous

11   with regard to the amount of the claim for the various

12   manifested asbestos claims.

13             Of course, there are two parts to any claim

14   recovery.  One is what's your claim going to be allowed at,

15   and then the second is, you know, what's the plan going to

16   pay out on on that allowed claim.

17             Claims are allowed, I think, at a very fair level,

18   both for manifested and unmanifested claimants.  The cancer

19   numbers are very good.  A number for unmanifested claimants,

20   the vast majority of which will, in all likelihood, never

21   become ill, but nonetheless, they are going to receive a

22   payout to what, in my mind, is a fair distribution.

23             The moving factor, which is unfortunately, is

24   there's only so much money to go around.  That's true in

25   every bankruptcy I've ever been involved in and will ever be

1    involved in for my entire career.  And it is unfortunate,

2    but it is what it is.  Meaning that, frankly, if we would

3    have taken a straight waterfall on this plan, these

4    claimants wouldn't have gotten anything.  Recall that the

5    senior secured creditors in this case lost in excess of $12

6    billion, in excess of what the equity holders lost, which

7    was $8 billion.  So, not a happy situation, to say the

8    least.  And whatever they got was the result of hard-fought

9    negotiations on behalf of creditors that were pari passu

10   with them but weren't necessarily representing them.

11          The only thing that's a little troubling -- and

12   with regard to the manifested claims, I think it's an

13   extremely fair result.  Morally, ethically, medically is it

14   fair?  Of course not.  People shouldn't have to receive

15   recovery for disease that is the result of a tort.

16          But given that, and we're talking about the very

17   awkward thing we do in our society in our legal system,

18   which is to ascribe dollar figures to people's physical and

19   mental and medical pain and suffering and disease, it is in

20   the grand scheme of things, a very fair result.

21          And I am going to specifically overrule the

22   objection of the manifested claimant whose attorney

23   represented he was agreeable, but he, nonetheless, did not

24   necessarily agree.  First of all, there's no basis really,

25   in my mind, to oppose the relief requested.  And I think

1    that the Debtor is perfectly -- and the Court is perfectly

2    willing to listen to the agent, the authorized agent who is

3    acting on behalf of the client and assume that the agent,

4    frankly, has a more sophisticated and nuanced understanding

5    than the principal, and is doing everything the agent can to

6    maximize a recovery for the principal.  So, I'll overrule

7    that objection.

8              The unmanifested is harder.  But I want to be --

9    you know, it's -- we've gone a long way down this road and

10   I'm complicit in your journey because I've been signing the

11   orders and they're based on my decisions, which included

12   having a bar date for unmanifested claims to begin with.

13             The reality is that for those unmanifested

14   claimants who do not get sick, they're going to be

15   overcompensated.  And for those who do get sick, they're

16   probably going to be undercompensated.  However, we are not

17   required to (indiscernible) trust.  The T-Side Debtors are

18   not required to have this process go on another 10 or 20 or

19   even 30 years.  The law is clear, in my mind, that these

20   claimants have a prepetition unsecured claim and it can be

21   dealt with like any other prepetition unsecured claim that's

22   contingent, and it's in effect being estimated

23   appropriately, and allowed appropriately by this motion.

24             We will, in effect, do rough justice on behalf of

25   all to perhaps overcompensate some and undercompensate,

1    hopefully, a very, very few.  But it's the best that the

2    Court can fashion and deal with, the best the Debtors can

3    fashion and deal with in the context of this case, which is

4    already now coming up now on six years --

5             MR. MADRON:  Six years --

6             THE COURT:  -- six years, which is old in the life

7    of a Chapter 11.  So with very real understanding of the

8    enormity that this decision has on the lives of people who

9    may get ill, some very ill, as a result of their asbestos

10   exposure, the Court will nonetheless overrule the responses

11   to the claim objection and sustain the fifty-third omnibus

12   substantive objection with regard to the TCEH asbestos

13   claims; allow the claims pursuant to the order, as modified,

14   to switch some people around from the unmanifested to

15   manifested side, based on their responses, and the Court

16   will enter that order.

17             And I appreciate and specifically thank counsel

18   for a very professional and measured response to a very

19   difficult issue.  So thank you very much.

20             MR. MADRON:  Thank you very much, Your Honor.

21   Your Honor, I do have an incremental redline, if I may share

22   that with the Court and approach?

23             THE COURT:  Yes.  Is this reflected in what was

24   uploaded?

25             MR. MADRON:  It is.

1          THE COURT:  Okay.

2          MR. MADRON:  So, Your Honor, the only change --

3    the only change is to the form of order that we filed under

4    a form of notice on Monday evening, can be found on Pages 1

5    and 2 of the order itself.

6          THE COURT:  Yep.

7          MR. MADRON:  And it's simply the insertion of the

8    docket item numbers for the two objections that posted to

9    the docket after we had made our filing.  Otherwise, the

10   exhibits are unchanged from what we filed on Monday.  And

11   again, to the extent Your Honor wants to review them again

12   before entering the order, the changes that were made from

13   what we filed with the claim objection are highlighted at

14   the very end of Exhibit 2 in yellow highlight, just to draw

15   attention to the modifications.

16         THE COURT:  I see them.  Thank you.

17         MR. MADRON:  Very good.

18         THE COURT:  All right.  The Court will enter the

19   order.  Anything further?

20         MR. MADRON:  Nothing further, Your Honor.  We

21   would just like to add a note that it doesn't go lost on

22   reorganized TCEH, the burden that this may have been placed

23   on the Court to review this volume of claims in such a short

24   period of time.  We were very, very grateful for the Court's

25   efforts in that regard, and just wanted to share our thanks.

1              THE COURT:  All right.  Well, you should not be

2     looking at me.  You should be looking over there at the

3     person who's hiding, and you can  --

4              MR. MADRON:  Modest as always, Your Honor.

5              THE COURT:  -- as always.  And you can thank her

6     and, of course, I review her work, but I did not take the

7     laboring work -- but understood.  And you know, normally, I

8     would not have allowed this hefty a claim objection on these

9     kind of timeframes, but obviously, this is a very special

10    situation and really a unique set of circumstances.  And

11    we're happy to accommodate this and hopefully get this off

12    the books for year end, which might make your client happy;

13    maybe not.  I don't know.

14             MR. MADRON:  That is the hope, Your Honor.

15             THE COURT:  All right.  We're adjourned.

16             MR. MADRON:  Thank you very much, Your Honor.

17             THE COURT:  Happy holidays.

18             MR. MADRON:  Happy holidays.

19             MR. BRAME:  Thank you, Your Honor.  You too.

20             (Whereupon these proceedings were concluded at

21    2:52 PM)

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4                                           Page        Line

5      Sustain 53rd Omnibus Objection        31           9

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya

     Landanski Hyde

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 26, 2019