# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| | (Jointly Administered) |
| Debtors.[1] | **Objection Deadline: May 15, 2020 @ 4:00 p.m.**<br>**Hearing Date: June 1, 2020 @ 11:00 a.m.** |

## MOTION OF HEINZMANN TO ALLOW LATE FILED PROOFS OF CLAIM

Kaye Heinzmann, surviving spouse of David Heinzmann, ("**Heinzmann**") by her undersigned counsel, respectfully move this Court pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3003(c) and 9006(b)(1), to allow the Heinzmann late-filed proofs of claim, and in support of her Motion (the "**Motion**"), states the following:

### I. JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over these cases and this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District for the District of Delaware*, dated February 29, 2012.

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

3. The statutory and legal predicates for the relief sought herein are § 105(a) of the Bankruptcy Code and Bankruptcy Rules 3003(c) and 9006(b)(l).

## II. BACKGROUND

4. The Debtors, Energy Future Holdings Corp. ("**EFH Corp**.") and 70 of its direct and indirect subsidiaries (together, the "**Debtors**"), filed petitions for reorganization under Chapter 11 on April 29, 2014 (the "**Petition Date**"). *See Chapter 11 Voluntary Pet.*, D.I. 1. The Debtors' bankruptcies were consolidated "for procedural purposes only" and administered jointly, pursuant to Federal Rule of Bankruptcy Procedure 1015 and Local Bankruptcy Rule 1015-1. *See Final Order Directing Joint Administration of the Debtors' Chapter 11 Cases*, June 5, 2014, [D.I. 849]. The bankruptcy cases were not substantively consolidated. *Id.* ¶ 5.

5. Four of the Debtors, EECI, Inc.,[2] EEC Holdings, Inc., LSGT Gas Co. LLC, and LSGT SACROC, Inc. (the "**Asbestos Debtors**")[3] were in the business of building, maintaining, and servicing power plants, or are successors to entities that were engaged in that business. *See In re Energy Future Holdings Corp.* ("***In re EFH Corp***."), 522 B.R. 520, 523 (Bankr. D. Del. 2015). Asbestos-containing insulation was installed throughout the power plants, where workers were inevitably exposed: "[a]sbestos exposure was virtually unavoidable in power plants built prior to 1980." *Id.* at 524. Workers and their families who were exposed to the Debtors' asbestos decades ago will continue to succumb to asbestos-related illnesses for decades in the future.

6. On July 23, 2014, Debtors filed a motion to establish a deadline to file proofs of claim [D.I. 1682]. On September 9, 2014, the Debtors filed their brief in support of a bar date with

---

[2] EECI was formerly known as EBASCO, "which was at various times affiliated with Boise Cascade, Halliburton and Raytheon Corporation (all of which have had asbestos-related personal injury liability)." *In re EFH Corp.*, 522 B.R. at 524. EBASCO built power plants nationwide.

[3] "Asbestos Debtors" refers to EECI, Inc. (Case No. 14-10992), EEC Holdings, Inc. (Case No. 14-10990), LSGT Gas Co. LLC (Case No. 14-11039), and LSGT SACROC, Inc. (Case No. 14-11012).

respect to both manifested and unmanifested asbestos claims[4] [D.I. 1984]. On January 7, 2015, the Bankruptcy Court issued an opinion approving the establishment of an asbestos bar date, including with respect to unmanifested asbestos claims (the "**Asbestos Bar Date**"). An order was entered on July 15, 2015 (and subsequently amended on July 30, 2015), establishing December 14, 2015, as the Asbestos Bar Date and approving the related forms of notice [D.I. 4997 and 5171].

7. Heinzmann has personal injury, wrongful death and surviving spouse claims against the Asbestos Debtors arising from Mr. Heinzmann's exposure to asbestos between 1957 and 1965 when he worked for Babcock & Wilcox at many facilities, primarily in connection with the start-up of large boilers. During this work, Mr. Heinzmann worked on a regular basis around workers who were installing, repairing and otherwise manipulating thermal insulation, refractory products and other materials that contained asbestos. This work created visible airborne dust, which he breathed. Among the facilities that Mr. Heinzmann worked at were the Mountain Creek Power Plant in Dallas, TX, the Stryker Creek Power Plant in Jacksonville, TX and the FPL Power Plant in Ft. Myers, Florida. He worked at each of these facilities for extended periods of time, and each of these sites are included on the list of Debtors' power plants attached to the Asbestos Bar Date Notice as an exhibit to Asbestos Bar Date Order [D.I. 5171]. The Affidavit of David Heinzmann is attached hereto as Exhibit 1.

8. Mr. Heinzmann was diagnosed on July 15, 2016 with malignant mesothelioma caused by his exposure to asbestos. He had no recollection of having seen any notice of the Bar Date for asbestos related claims and he was unaware of the Bar Date in these cases, and did not

---

[4] As used herein, the term "**Unmanifested Asbestos Claimants**" refers to persons who had not suffered cognizable injuries caused by pre-petition exposure to the Debtors' asbestos-containing products before the bar date set in these cases, but who have since suffered or will suffer such injuries. "**Unmanifested Asbestos Claims**" refers to the claims of such claimants.

3

file a proof of claim, manifested or unmanifested, before the Bar Date. Mr. Heinzmann died on March 22, 2020.

9. On November 3, 2016, Heinzmann filed a Notice of Intent to Participate in Disclosure Statement Proceedings and Confirmation Proceedings for the New Plan, [D.I. 10030].

10. On March 9, 2018, Heinzmann and other asbestos claimants filed a Notice of Appeal from the *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code, dated February 27, 2018,* [D.I. 12799] (the "**Appeal**"), Heinzmann participated in these proceedings as a latent asbestos claimant.

11. On February 18, 2020 the United States Court of Appeals for the Third Circuit rejected the Appeal from the Bankruptcy Court's confirmation order discharging unmanifested (latent) asbestos claims. See *In re Energy Future Holdings Corp.*, No. 19-1430, 2020 WL 770021 (3d Cir. Feb. 18, 2020).

12. On April 28, 2020, Heinzmann filed four (4) proofs of claim against each of the four (4) Asbestos Debtors, (the "**Claims**"). A true and correct copy of the four (4) filed proofs of claim are attached hereto as Exhibits 2 through Exhibit 5.

### III.  RELIEF REQUESTED

13. Heinzmann requests the Court enter an order allowing the four (4) untimely Claims.

14. The Court "shall fix and for cause shown may extend the time within which proofs of claims or interests may be filed." Fed. R. Bankr. P. 3003(c)(3). After the bar date has expired, the Court may permit the filing of a claim "where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b).

## IV. ARGUMENT AND AUTHORITY

**Heinzmann Never Received Notice of the Bar Date**

15. The Bankruptcy Code provides that all creditors must receive twenty-one (21) days' notice, among other things, of the meeting of creditors and the time for filing claims in a chapter 11 case but it does not define the term "notice." Fed. R. Bankr. P. 2002. Although notice is not defined by the Bankruptcy Code, bankruptcy courts "sensibly assume that the general norms of fair notice, as set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 489-91, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 797-800, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), and other such cases, apply to bankruptcy as to other settings in which a person's legal right is extinguished if he fails to respond to a pleading." *Fogel v. Zell*, 221 F.3d 955, 962 (7th Cir. 2000).

16. "Fair or adequate notice has two basic elements: content and delivery." *Id.* "If the notice is unclear, the fact that it was received will not make it adequate," *Id.*; if the notice is not received, it is "inadequate unless the means chosen to deliver it was reasonable." *Id.* at 963.

17. Under the first element, unclear notice, the Supreme Court of the United States has held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To this end, the "notice must be of such nature as reasonable to convey the required information . . . ." *Id.* (citing to *Grannis v. Ordean*, 234 U.S. 385 (1914)). Although the Supreme Court has not directly addressed the issue of unclear bar date notice, it has found that an attorney's neglect in not filing

a claim was excusable largely based on the "unusual form" of the bar date notice issued by the bankruptcy court. *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 B.R. 380, 399 (1993).

18.     Under the second element, non-receipt of notice, the Supreme Court has held that "even creditors who have knowledge of a [bankruptcy case] have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred*.*" *City of New York v. New York, New Haven & Hartford R.R.*, 344 U.S. 292, 297 (1953). In *New York*, the city of New York was a known creditor with liens against a railroad that filed bankruptcy. *Id*. at 293. The city knew that the railroad was in bankruptcy, but it did not file a timely claim because it never received notice by mail. *Id*. The Supreme Court held that the city "acted reasonably in waiting" to receive notice before filing its claim; therefore, it was allowed to file a late claim. *Id*. at 297.

19.     A latent asbestos claim cannot be constitutionally discharged if the claimant received inadequate "notice of the claims bar date"—a concern that "arise[s] starkly in the situation presented by persons with asbestos injuries that are not manifested until years or even decades after exposure," *In re Grossman's Inc.*, 607 F.3d 114, 126 (3d Cir. 2010) (en banc), because "persons in the exposure-only category . . . may not even know of their exposure," may not "realize the extent of the harm they may incur," or "[e]ven if they fully appreciate the significance of [notice they did receive], . . . without current afflictions[,] may not have the information or foresight needed to decide, intelligently, whether [to file a claim]," *Amchem*, 521 U.S. at 628.

20.     Even if notice had been proper under the standards outlined above, the circumstances justify granting leave to allow Heinzmann to file late proofs of claim, because Heinzmann can demonstrate excusable neglect. Just as the Court held in *Grand Union Co.*, 204

B.R. 863 (Bankr. D. Del. 1997), even if the Debtors had mailed a notice of the Bar Date to Mr. Heinzmann in 2015, Mr. Heinzmann would not have understood the importance of that notice. At the time the Bar Date Order was entered in July 2015, Mr. Heinzmann was unaware of any claim he had against the Asbestos Debtors, as he was not diagnosed with mesothelioma until July 15, 2016.

**In the Alternative, Heinzmann's Neglect is Excusable**

21.     The Bankruptcy Rules permit late-filed claims in a chapter 11 case if the creditor's failure to timely file the claim "was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1) as applied to Rule 3003(c)(3). The Supreme Court considered the "excusable neglect" doctrine in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993). In *Pioneer*, a creditor's attorney received notice of a creditors meeting from the bankruptcy court shortly after the debtor filed its chapter 11 case. *Id*. at 383-84. The notice also contained the bar date for filing claims in the case. *Id*. The attorney was in the middle of withdrawing from his law firm; he did not catch the bar date provision in the notice and failed to file a timely claim. *Id*. at 384. The Supreme Court found that "[b]ecause Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' . . . the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer* at 395. It then identified four relevant circumstances that courts should consider: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay (including whether it was within the reasonable control of the movant); and (4) whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395; see also *In re O'Brien Environmental Energy, Inc*., 188 F. 3d. 116, 126 (3d. Cir. 1999).

22. After considering the four relevant circumstances it identified as part of the equitable determination, the Supreme Court in *Pioneer* held that the attorney's neglect in not filing a claim was excusable. *Id.* at 398.

**Prejudice to Debtors**

23. The allowance of the Claims will result in no prejudice to the Debtors. Prejudice occurs when the allowance of a late claim would injure or damage the debtor. *Manus Corp. v. NRG Energy, Inc.*, 188 F.3d 116, 126 (3d Cir. 1999). Factors to consider in determining whether the Debtor will be prejudiced by allowance of claim are (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (ii) whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether the allowance of the claim would impact the debtor actually or legally; and (v) whether allowance of the claim would open the floodgates to future claims. *In re New Century TRS Holdings, Inc*. 465 B.R. 38, 51 (Bankr. D. Del. 2012); citing *In re Inacom Corp*., No. 00-2426, 2004 WL 2283599 at *4 (D. Del. Oct. 4, 2004).

24. First, the Debtor cannot assert that it was surprised by the Claims, as the prospect of a post-confirmation procedure allowing for the reinstatement of latent asbestos claims such as Heinzmann's was "baked into the merger agreement, and Rule 3003(c)(3) provides that procedure. Reinstatement of latent claims under Rule 3003(c)(3) thus would appear not alter the expectations the parties had at the time they agreed to the merger." See *In re Energy Future Holdings Corp*., No. 19-1430, (3d Cir. Feb. 18, 2020), at 30. Furthermore, allowed asbestos claims on confirmation were passed through the Plan unimpaired to the Asbestos Debtors so they would not affect distributions to other creditors. Upon information and belief, the asbestos claims reconciliation

8

process has not yet commenced, no distributions have been made to asbestos claimants, who are unimpaired pursuant to the Plan, and accordingly, the allowance of these Claims could not possibly force the disgorgement of claims already paid out to claimants. Next, there is no evidence that the allowance of the Claims would impact the Debtors legally or actually. Allowance of the Claims would not require reformulation of the Plan or amendment of schedules. Though the allowance of these Claims may reduce the distribution to other unsecured claimants, this fact alone, when balanced against other factors is insufficient to find prejudice. *In re Garden Ridge*, 348 B.R. at 646. Finally, there is no actual evidence that the allowance of the Claims would open the floodgates for similar claims. Accordingly, when examining these factors, no prejudice to Debtors can be found to exist.

**Delay was Not in Reasonable Control of Heinzmann**

25. Heinzmann's delay in filing the proofs of claim is directly related to the lack of notice provided to Heinzmann by the Debtors as well as the fact that he would not have understood the importance of the notice in December of 2015, as he was not diagnosed with mesothelioma until July of 2016. Once Heinzmann was diagnosed with mesothelioma it was already a year and a half after the Bar Date. Heinzmann instead filed a Notice of Intent to Participate as an Unmanifested Asbestos Claimant with the intention of objecting to the treatment of unmanifested asbestos claims under the Debtor's Plan of Reorganization.

26. The Third Circuit in *EFH* recognized that latent claimants such as Heinzmann will have the opportunity to demonstrate a 'reason for the delay' by showing that they would otherwise be deprived of due process under *Grossman's*. As the Third Circuit made clear in *Grossman's*, a latent claim cannot be constitutionally discharged if the claimant received inadequate "notice of the claims bar date," a concern that "arise[s] starkly in the situation presented by persons with asbestos injuries that are not manifested until years or even decades after exposure," *EFH* at 30,

9

quoting *Grossman's*, 607 F.3d at 126, because "persons in the exposure-only category . . . may not even know of their exposure," may not "realize the extent of the harm they may incur," or "[e]ven if they fully appreciate the significance of [notice they did receive], . . . without current afflictions[,] may not have the information or foresight needed to decide, intelligently, whether [to file a claim]," *EFH* at 31, quoting *Amchem*, 521 U.S. at 628.

27. There can be no serious dispute that the inaction by Heinzmann in these cases is attributable to the inadequate notice of the Bar Date as well as to the lack of appreciation of the significance of the notice he may have received when without current afflictions, he did not have the information or foresight need to intelligently decide to whether to file a claim before the Bar Date. Under these circumstances, Heinzmann's inaction can be characterized as a simple, faultless omission and qualifies as "neglect." *Pioneer*, 507 U.S. at 388.

**Length of Delay and Impact in Judicial Proceedings**

28. In examining the length of delay and impact on judicial proceedings, the Court should consider the length of delay in absolute terms, meaning that it should also consider the impact on judicial proceedings in addition to the chronological delay in filing. *Id*., citing *In re O'Brien Envtl. Energy, Inc.*, 188 F. 3d 116, 130 (3d. Cir. 1999).

29. Here, the duration between the Bar Date and the date upon which Heinzmann filed the Claims is substantial in absolute terms, but when examined in light of the inadequacy of the notice provided by the Debtors and actions of Heinzmann in the Appeal, it is clear that Heinzmann's Claims will have limited impact upon Debtors' reorganization. While the "length of the delay" between the bar date and Heinzmann's Rule 3003(c)(3) motion is substantial, Heinzmann should not be precluded from arguing that the delay had no "impact" on EFH's

bankruptcy proceedings because those proceedings concluded with the Confirmation Order so this factor, "cuts in favor of granting their Rule 3003(c)(3) motions." *EFH* at 31.

**Good Faith**

30. Here, there is no basis whatsoever to suggest, let alone conclude, that Heinzmann did not file a timely claim for some improper purpose. Heinzmann retained counsel as soon as it had knowledge of his claim and determined that the interests of Unmanifested Asbestos Claimants who did not receive notice of the Bar Date required representation.

31. There can be no question that Heinzmann acted in good faith in filing the Claims. On February 18, 2020, the Third Circuit rejected Heinzmann's Appeal from the Bankruptcy Court's confirmation order discharging unmanifested (latent) asbestos claims. *Id*. The deadline for filing a petition for panel rehearing or rehearing by the Third Circuit en banc is 14 days after the decision is entered (March 3), Fed. R. App. P. 40(a)(1). The deadline for a petition for writ of certiorari is 90 days after the decision is entered (May 18, 2020), pursuant to 28 U.S.C. § 2101(c). Heinzmann filed the proofs of claims immediately upon determining not to seek a review in either the Third Circuit or at the United States Supreme Court. Hence, this factor weighs in favor of allowance of the Heinzmann Claims.

32. Heinzmann has clearly met the burden required to show excusable neglect, and accordingly, the Claims must be allowed.

## CONCLUSION

For the foregoing reasons, Heinzmann respectfully requests that the Court enter the Order and grant such other and further relief as it deems appropriate under the circumstances.

Dated: May 1, 2020
Wilmington, Delaware

Respectfully submitted:

By: /s/ Daniel K. Hogan
Daniel K. Hogan (DE Bar # 2814)
HOGAN MCDANIEL
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599
dkhogan@dkhogan.com

*Counsel for Kaye Heinzmann*

-and-

Jonathan Ruckdeschel (admitted *pro hac vice*)
The Ruckdeschel Law Firm LLC
8357 Main Street
Ellicott City, MD 21043-4603
Telephone: (410) 750-7825
Facsimile (443) 583-0430
rucklawfirm@rucklawfirm.com

*Counsel for Kaye Heinzmann*