**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |
| | ) **Objection Deadline:  May 15, 2020 at 4:00 p.m.** |
| | ) **Hearing Date: June 1, 2020 at 11:00 a.m.** |

**REORGANIZED EFH/EFIH DEBTORS AND SEMPRA ENERGY'S OBJECTION TO:**
**MOTION OF BERGSCHNEIDER TO ALLOW LATE FILED PROOFS OF CLAIM**
**AND**
**MOTION OF HEINZMANN TO ALLOW LATE FILED PROOFS OF CLAIM**

The Reorganized EFH/EFIH Debtors[2] and Sempra Energy file this objection (the "***Objection***") to the *Motion of Bergschneider to Allow Late Filed Proofs of Claim* [D.I. 14047] and the *Motion of Heinzmann to Allow Late Filed Proofs of Claim* [D.I. 14055] (collectively, the "***Motions***"), respectively filed by Denis and Meri Bergschneider and Kaye Heinzmann, surviving spouse of David Heinzmann (collectively, "***Movants***"), and state as follows:

**<u>INTRODUCTORY STATEMENT</u>**

1.     Before the Court are two motions seeking to have this Court deem allowed late-filed unsecured claims against various Debtors relating to asbestos exposure.  According to

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to them in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12763-1] (the "***Plan***"), or the Motions, as applicable.

Movants, their asbestos-related claims accrued in July 2016 and September 2017, respectively. Further, Movants received actual notice of the bar date when they appeared in these chapter 11 cases through counsel in November 2016 and 2017, respectively. For apparently strategic reasons discussed below, Movants did not, however, file the Motions until this year. As such, the Movants cannot satisfy the "excusable neglect" standard in Bankruptcy Rule 9006, and the Court should deny the Motions.

## BACKGROUND

2.      On April 29, 2014, each of the Debtors filed a voluntary petition with the Court under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***").

3.      As part of their ongoing reorganization efforts, in 2014, the Debtors sought to establish a process to notify potential asbestos claimants of the bankruptcy and a deadline for them to submit a protective proof of claim. [D.I. 1682] (motion to set bar date).

4.      Certain personal injury law firms—including Kazan McClain, Satterley & Greenwood, a Professional Law Corporation ("***Kazan Law***")—objected to the Debtors' motion to establish a bar date, arguing that it "would violate the fundamental due process rights of thousands of potential asbestos claimants." [D.I. 1796, at 5]. These objecting law firms argued that providing adequate notice for Unmanifested Asbestos Claimants was not possible.[3] [D.I. 1796, at 8-14]. This Court held two hearings (on August 13 and October 28, 2014) and ordered additional briefing on the issue. [D.I. 1983, 1984] (supplemental brief); [D.I. 1984] (supplemental brief).

5.      On January 7, 2015, this Court held it has the power and jurisdiction to establish a bar date for Unmanifested Asbestos Claims because an appropriate notice program could satisfy

---

[3]      As the Court is well aware, there is often a long exposure time between exposure to asbestos and the manifestation of disease caused by asbestos. The prepetition claims of individuals who were allegedly exposed to asbestos, but have not manifested any disease are "***Unmanifested Asbestos Claims***," and the holders of such claims, "***Unmanifested Asbestos Claimants***."

AMERICAS 102650268

due process concerns. *In re Energy Future Holdings Corp.*, 522 B.R. 520, 528, 537 (Bankr. D. Del. 2015) [D.I. 3183] (the "***Bar Date Opinion***").

6.      In the Bar Date Opinion, this Court observed that "[t]he heart of the issue before the Court is whether the discharge of the Debtors' liability for Unmanifested Claims would be consistent with due process," and found that, for Unmanifested Asbestos Claims under Third Circuit law, "publication notice *may* be sufficient to satisfy due process." *Id.* at 528-529, 537. Notably, this Court also held that the personal injury law firms lacked standing because, at the time, they did "not represent any Unmanifested Claimants nor [did they] have a legally protected interest independent of their potential, future clients." *Id.* at 526.

7.      The Bar Date Opinion required that the Debtors devise a comprehensive notice program to inform potential asbestos claimants, including Unmanifested Asbestos Claimants, of their rights to file a proof of claim. *See id.* at 536–37.  As partially described below, the Debtors and the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, EFIH Finance, Inc. and EECI, Inc. (the "***Official Committee***") each retained noticing experts and engaged in extensive diligence.  Two asbestos claimants, including one of Kazan Law's clients, sat on the Official Committee throughout the case.  [D.I. 2570]; [D.I. 3313]; [D.I. 3403]; [D.I. 8955].

8.      The Debtors retained Hilsoft Notifications ("***Hilsoft***") to design a comprehensive plan (the "***Notice Plan***") to provide notice of the bar date (the "***Asbestos Bar Date Notice***"). Hilsoft is a nationally recognized leader in providing notice and has experience in some of the largest, most complex, and most significant cases, including litigation arising from the BP oil spill in the Gulf of Mexico. *See* [D.I. 3967 ¶¶ 1-2].  Hilsoft also has experience with asbestos-related

bankruptcy and non-bankruptcy cases.  *See* [D.I. 3967 ¶ 6]. The Official Committee retained its

own asbestos noticing expert, Kinsella Media, LLC.  *See* [D.I. 4159] (order authorizing retention).

9.      The Official Committee provided extensive feedback on the proposed notice plan,

virtually all of which the Debtors incorporated into their noticing program.  *See* [D.I. 5275, at

101:17-24] (Debtors' counsel's statement).  At a later hearing, this Court acknowledged that "[t]he

[Official Committee] fought hard and long in connection with the details of the notice that went

out."  *See id.* at 116:5-6.

10.     On July 30, 2015, the Court entered the "***Asbestos Bar Date Order***" approving the

Notice Plan for distributing the Asbestos Bar Date Notice and setting December 14, 2015 as the

"***Asbestos Bar Date***."  [D.I. 5171].

11.     The Asbestos Bar Date Order and Notice Plan were designed to address

comprehensively any due process concerns, both by the means of distribution and the content of

the notice. *See id.* ¶ 4.

12.     Following entry of the Asbestos Bar Date Order, the Debtors provided notice in

various forms as set forth in the Notice Plan, which included:

- Direct mailing to known asbestos claimants with "personalized" proof of claim forms;

- Nearly 75,000 direct mailings for former employees and known asbestos claimants;

- Extensive publication notice in consumer publications, local newspapers, national newspapers, trade publications, and union labor publications (with a total combined circulation of 69,893,892);

- Dedicated website and toll-free number;

- Internet banner advertising and sponsored search listings (resulting in 436,346,154 gross online impressions);

- Informational release to approximately 4,200 print and broadcast media outlets and 5,500 online outlets; and

- Targeted outreach to labor unions.

*See* [D.I. 4985-1, at 11-38].

13.    Hilsoft determined that the comprehensive publication notice program would "reach approximately 90.1% of men aged 65+ in the U.S. an average of 3.4 times each, 89.4% of adults aged 45+ in the U.S. an average of 3.5 times each, and approximately 85.7% of adults aged 18+ in the U.S. an average of 3.1 times each." [D.I. 4985-1, at 7]

14.    In all, the Debtors spent approximately $2.5 million implementing the Notice Plan. *See* [D.I. 7255, at 62:3-5].

15.    In addition to the Debtors' efforts, Kazan Law took out Google search advertisements linked to the search terms "efh case info," "efh bankruptcy," and "efh restructuring." [D.I. 7290 ¶¶ 3-5].

16.    The notice package attached to the Asbestos Bar Date Order outlined six different methods by which Unmanifested Asbestos Claimants could submit their proofs of claim and clearly explained the substantive requirements for filing a proof of claim.  [D.I. 5171 ¶ 6] (first-class mail, hand delivery, overnight mail, email, facsimile, and by internet website at www.EFHAsbestosClaims.com).

AMERICAS 102650268

> **LEGAL NOTICE**
>
> # Power Plant Employees and Contractors
>
> ## If you or a family member ever worked at a power plant, you could have been exposed to asbestos.
>
> To keep your right to compensation if you become ill in the future (or have asbestos-related illness today), you **must** submit a claim by <u>December 14, 2015, at 5:00 p.m., prevailing Eastern Time.</u>

*Id.* Ex. 4 (publication notice).

      17.     This notice was also available to the public on EFHAsbestosClaims.com.

      18.     The Asbestos Bar Date Order was unequivocal about the consequences of failing to submit a claim:

> **VI.    Consequences of Failure to File a Proof of Claim.**
>
>     18.    <u>Any entity or person who is required, but fails, to file a proof of claim in accordance with this Asbestos Bar Date Order on or before the Asbestos Bar Date shall be prohibited from voting to accept or reject any plan of reorganization filed in these chapter 11 cases with respect to such Asbestos Claim, participating in any distribution in these chapter 11 cases on account of such Asbestos Claim, or receiving further notices regarding such Asbestos Claim.</u>

*Id.* ¶ 18.

      19.     Approximately 30,000 proofs of claim were filed in response to notice of the Asbestos Bar Date.  *See* [D.I. 14034 ¶ 8].  Of that, approximately 14,000 were Unmanifested

Asbestos Claims, of which approximately 10,000 were filed against the EFH/EFIH Debtors. [D.I. 12666 ¶ 142].

20.     Subsequently, several personal injury law firms (including, but not limited to, Kazan Law), on behalf of their clients, repeatedly challenged the use of the Asbestos Bar Date Order against Unmanifested Asbestos Claimants.[4]  Each of these challenges was overruled.

21.     First, the Court denied a motion to appoint a separate legal representative for Unmanifested Asbestos Claimants.  [D.I. 5072] (motion); [D.I. 5265] (order); [D.I. 5275, at 116:14] ("The fight about the bar date is over.").

22.     Then, this Court overruled due process objections raised by asbestos claimants to the proposed Hunt plan because it did not include a section 524(g) channeling injunction to address claims of Unmanifested Asbestos Claimants.  [D.I. 7255, at 57:16-63:7] (overruling due process objection); *see also* [D.I. 6610, at 20-26] (objecting to plan over the process concerns).  This Court reiterated that the Notice Plan was "reasonably calculated to provide notice to unmanifested claimants" and said it "fail[ed] to see a better plan to give notice to these individuals that does not massively increase the cost of giving that notice." [D.I. 7255, at 62:7].

23.     In December 2015, this Court denied a motion by certain asbestos claimants to file a class proof of claim on behalf of all unfiled/untimely asbestos claimants, noting that "if I were to allow a class to file this class proof of claim on behalf of unmanifested claimants, the whole point of the bar date goes away because everybody's covered." [D.I. 7407, at 84:13-16]; *see also* [D.I. 7185] (motion); [D.I. 7383] (order).  This Court was affirmed in a published opinion,

---

[4]     For purposes of clarity, other parties and law firms which were involved in the following proceedings are omitted except as may be otherwise specifically relevant.

AMERICAS 102650268

particularly the finding that "the class proof of claim would . . . negate the bar date." *See In re Energy Future Holdings Corp.*, 558 B.R. 684, 687 (D. Del. 2016) (citing D.I. 7407, at 84:15).

24.     Mr. Heinzmann asserts he was diagnosed with mesothelioma on July 15, 2016. [D.I. 14055 ¶ 8].  He did not file a proof of claim at that time.

25.     Instead, on November 3, 2016, Mr. Heinzmann filed a notice of intent to participate in plan confirmation proceedings for the EFH/EFIH Debtors.  [D.I. 10030].

26.     In December 2016, this Court denied a motion by asbestos claimants, including Mr. Heinzmann, to dismiss the LSGT Debtors' chapter 11 cases of EECI, Inc., EEC Holdings, Inc., LSGT Gas Co. LLC, and LSGT SACROC, Inc. (the "*LSGT Debtors*")  [D.I. 10414, at 27] (denying motion and noting that "dismissal could very well result in asbestos claimants receiving far less than currently provided in the proposed plan"); *see also* [D.I. 10074] (motion).

27.     This Court then overruled an objection to the NextEra-backed plan filed by asbestos claimants, including Mr. Heinzmann.  [D.I. 10865, at 31:24-32] ("With regard to due process, the Court has again gone through this extensively in the past.  I believe that what has occurred is completely consistent with the Court's ruling in Grossman's and that the notice and due process concerns are consistent with Supreme Court and 3rd Circuit law in what constitutes appropriate notice.") *see also* [D.I. 10757] (objection).

28.     On September 11, 2017, the EFH/EFIH Debtors filed the Plan.

29.     Mr. Bergschneider asserts he was diagnosed with mesothelioma on September 14, 2017.  [D.I.  14047 ¶ 8].  Mr. Bergschneider did not file a proof of claim at that time.

30.     Instead, on November 27, 2017, Mr. Bergschneider filed a notice of intent to participate in the confirmation proceedings for the EFH/EFIH Debtors.  [D.I. 12271].

AMERICAS 102650268

31.    On December 19, 2017, Messrs. Bergschneider and Heinzmann filed their objection to confirmation of the Plan.  [D.I. 12378].

32.    On February 27, 2018, this Court confirmed the Plan.  [D.I. 12763].  In so doing, this Court overruled Messrs. Bergschneider and Heinzmann's objection to the Sempra Energy-backed Plan, reaffirming and incorporating the Asbestos Bar Date Order and all of the court's prior rulings.  This Court held:

> [A]s I have ruled numerous times now in this case, I believe that the use of the asbestos bar date and notice program . . . was proper, was supported by the evidence, and was consistent with due process. Applying that bar date to the discharge at this time I believe is also justified by the facts and is entirely appropriate and consistent with due process and applicable law.

[D.I. 12770, at 229:18-230:3].

33.    On March 9, 2018, the Plan for the EFH/EFIH Debtors went effective (the "*Effective Date*").  [D.I. 12801].

34.    Messrs. Bergschneider and Heinzmann then appealed from this Court's confirmation of the Plan. [D.I. 12799].

35.    On January 24, 2019, following briefing, the District Court dismissed the appeal as statutorily moot under section 363(m) of the Bankruptcy Code.  *Fenicle v. Energy Future Holdings Corp. (In re Energy Future Holding Corp.)*, 596 B.R. 473 (D. Del. 2019).

36.    Subsequently, Messrs. Bergschneider and Heinzmann timely appealed to the Third Circuit.

37.    On February 18, 2020, the Third Circuit affirmed this Court's confirmation of the Plan and found that due process had been satisfied by the Asbestos Bar Date.  *In re Energy Future Holdings Corp.*, 949 F.3d 806 (3d Cir. 2020).  Of note in that opinion, the Third Circuit reasoned:

> As for pre-confirmation notice, Appellants ***do not dispute*** that they received ***publication notice*** prior to the bar date.  EFH launched a

9

multimillion-dollar notice plan to contact latent claimants[5] and notify them of the impending bar date and the accompanying need to file a proof of claim.  All latent claimants who timely filed proofs of claim—and there were nearly 10,000 such claimants—were assured of retaining their ability to pursue their claims and, ***contrary to Appellants' argument that actual notice to all potential claimants was required, claimants who were unknown at the time of the discharge—such as Appellants—were entitled only to publication notice of a property deprivation***, *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 317-18, 70 S. Ct. 652, 94 L. Ed. 865 (1950).  We are also unpersuaded that EFH was not "desirous of actually informing" latent claimants of the bar date, *id.* at 315; to the contrary, it employed a noticing expert, "follow[ed] the principles in the Federal Judicial Center's . . . illustrative model forms of plain language notices," and published notice in seven consumer magazines, 226 local newspapers, three national newspapers, forty-three Spanish language newspapers, eleven union publications, and five Internet outlets.  Under our case law, that publication was sufficient.  *See Chemetron Corp. v. Jones*, 72 F.3d 341, 348-49 (3d Cir. 1995) (holding that publication in two national newspapers and seven local newspapers was constitutionally sufficient).

*Id.* at 822-23 (emphasis added).

38.    On March 17, 2020, Mr. and Mrs. Bergschneider jointly filed four proofs of claim against the LSGT Debtors.  *See* [D.I. 14047-2, -3, -4, -5].

39.    On April 20, 2020, Mr. and Mrs. Bergschneider filed their Motion, attaching the proofs of claim noted above.  [D.I. 14047].  Additionally, the Motion attached an affidavit by Mr. Bergschneider.  [D.I. 14047-1].  No affidavit by Mrs. Bergschneider was included.

40.    On April 28, 2020, Mrs. Heinzmann, surviving spouse to Mr. Heinzmann, filed four proofs of claim against the LSGT Debtors.  [D.I. 14055-2, -3, -4, -5].

---

[5]    The Third Circuit used the term "latent claimants" to refer to Unmanifested Asbestos Claimants.

AMERICAS 102650268

41.     On May 1, 2020, Mrs. Heinzmann filed her Motion, attaching the proofs of claim noted above.  [D.I. 14055].  Additionally, the Motion attached an affidavit by Mr. Heinzmann. [D.I. 14055-1].  No affidavit by Mrs. Heinzmann was included.[6]

## ARGUMENT

### I.     MOVANTS—AS UNKNOWN CREDITORS—RECEIVED PROPER PUBLICATION NOTICE OF THE ASBESTOS BAR DATE.

42.     "A bar date serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate, and the general amount of the claims, a necessary step in achieving the goal of successful reorganization."  *In re Energy Future Holdings Corp.*, 522 B.R. 520, 526-27 (Bankr. D. Del. 2015) (quoting *In re Victory Mem'l Hosp.*, 435 B.R. 1, 4 (Bankr. E.D.N.Y. 2010)).  "Absent the setting of a bar date, a Chapter 11 case could not be administered to a conclusion.  There would be no time established for the filing of claims."  *Id.* at 527 (quoting *In re Waterman S.S. Corp.*, 59 B.R. 724, 726 (Bankr. S.D.N.Y. 1986)).  "Thus, a bar order does not 'function merely as a procedural gauntlet,' but as an integral part of the reorganization process."  *First Fid. Bank, N.A., N.J. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 840 (2d Cir. 1991) (citation omitted).

43.     Case law in the Third Circuit is clear that claim bar dates must be strictly observed. *Trump Taj Mahal Assocs. v. Alibraham*, 156 B.R. 928, 936 (Bankr. D.N.J. 1993) ("The well-established law of this Circuit is also that bar dates for filing Proofs of Claim are strictly construed." (citations omitted)); *In re New Century TRS Holdings, Inc. (New Century I)*, 465 B.R. 38, 53 (Bankr. D. Del. 2012) ("Although persons with legitimate claims may be precluded from

---

[6]     As set forth below, the Court should not grant relief to either of the claimants who have failed to offer any proof of excusable neglect.

sharing in estate assets, strict enforcement of the bankruptcy bar date is no more unfair than application of a statute of limitations to foreclose a tort claim." (quoting *In re Best Prods. Co.*, 140 B.R. 353, 360 (Bankr. S.D.N.Y. 1992))); *Energy Future Holdings*, 522 B.R. at 526-27 ("It is akin to a statute of limitations, and must be strictly observed." (quoting *Victory Mem'l*, 435 B.R. at 4)).

44.     Movants' arguments are, in part, a reargument of their facial challenge to the Asbestos Bar Date: that Unmanifested Asbestos Claimants may not be constitutionally deprived of property where their only notice is by publication.  Motions ¶¶ 15-20.  But, the Third Circuit has now affirmed this Court's ruling that publication notice to the Unmanifested Asbestos Claimants was adequate for purposes of due process.  *Energy Future Holdings*, 949 F.3d at 822-25 (holding that "contrary to Appellants' argument that actual notice to all potential claimants was required, claimants who were unknown at the time of the discharge—such as Appellants—were entitled only to publication notice of a property deprivation." (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 317-18 (1950)))).

45.     To the extent that Movants are challenging the Asbestos Bar Date specifically as applied to themselves, their arguments are unavailing.  The inquiry is not, as Movants suggest, whether a person subject to publication notice received actual notice.  *See* Motions ¶ 8 ("[Messrs. Bergschneider and Heinzmann] had no recollection of having seen any notice of the Bar Date . . . .").  "The proper inquiry in evaluating notice is whether a party acted reasonably in selecting means likely to inform persons affected, not whether each person actually received notice."  *In re Weiand Auto. Indus.*, No. 09-13338 (CSS), 2020 Bankr. LEXIS 493, at *46 (Bankr. D. Del. Feb. 25, 2020) (Sontchi, J.) (quoting *New Century I*, 465 B.R. at 48-49); *see also Weigner v. New York*, 852 F.2d 646, 649 (2d Cir. 1988) (same).

46.     Accordingly, whether or not Messrs. Bergschneider and Heinzmann ever recalled actually seeing the Asbestos Bar Date Notice is not relevant.  "[U]nknown creditors entitled to only publication notice cannot blame their ignorance on the fact that they did not receive actual notice: because Appellants did 'not read the legal section of the newspaper and did not read the legal section of the newspaper that published the bar date order in this case is not controlling.'" *PacifiCorp v. W.R. Grace & Co.*, No. 05-764, 2006 U.S. Dist. LEXIS 57470, at *47 (D. Del. Aug. 16, 2006) (quoting *Trump Taj Mahal*, 156 B.R. at 940);  *Best Prods.*, 140 B.R. at 358 ("The Hutchinsons argue that since they do not read any of these newspapers, and since no notice was published in a newspaper in the Lanham, Maryland, area nor any newspaper of general circulation in Maryland, the notice was not 'meaningful' to them.  It is impracticable however, to expect a debtor to publish notice in every newspaper a possible unknown creditor may read.").

47.     The proper question here is whether the Notice Plan was reasonably likely to inform the persons directed.  The Third Circuit has already affirmed this Court's finding that the Notice Plan was reasonably likely to inform Unmanifested Asbestos Claimants of their need to file a proof of claim.  To the extent that Movants are attempting to raise an as-applied challenge specifically as to themselves, they raise no additional facts in the Motions that they are sufficiently different from other Unmanifested Asbestos Claimants as a whole to warrant a contrary conclusion.[7]

---

[7]     Movants' citation to *In re Grand Union Co.*, 204 B.R. 864 (Bankr. D. Del. 1997), is inapposite.  At best, that case requires that notice of a bar date must be served on counsel for represented creditors.  *Id.* at 874.  In any event, unlike the "four page, over 1,000 word document, couched with legalese" in *Grand Union*, 204 B.R. at 873, Debtors' Asbestos Bar Date Notice was written in plain English, avoided legalese, and simply required Messrs. Bergschneider and Heinzmann to recall whether or not they worked at one of the listed power plants, which, per the affidavits, they did.  [D.I. 5171, Ex. 4].

13

II.     **THERE HAS BEEN NO EXCUSABLE NEGLECT WHERE MOVANTS WAITED OVER TWO AND THREE YEARS, RESPECTIVELY, TO FILE PROOFS OF CLAIM AND SEEK LEAVE FROM THE COURT TO ALLOW THE LATE CLAIMS.**

48.     "[B]ecause claimants are unknown creditors and [the debtor's] publication notice was sufficient, claimants must show that their failure to file in a timely manner was due to 'excusable neglect;' otherwise, their claims arising pre-petition will be barred." *Chemetron Corp. v. Jones* (*Chemetron I*), 72 F.3d 341, 349 (3d Cir. 1995).  The four factors under *Pioneer* to be considered for "excusable neglect" are: (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith.  *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). "Under *Pioneer*, the burden of proof is on the late claimant to demonstrate excusable neglect by a preponderance of the evidence." *In re Hayes Lemmerz Int'l, Inc. v. Emmons* (*In re Hayes Lemmerz Int'l, Inc.*), No. 11-143-SLR, 2012 U.S. Dist. LEXIS 49517, at *6 (D. Del. Apr. 9, 2012) (citing *Jones v. Chemetron Corp.* (*Chemetron II*), 212 F.3d 199, 205 (3d Cir. 2000)).

49.     "[C]ourts take a 'hard line' when applying the *Pioneer* test."  *In re Nortel Networks, Inc.*, 573 B.R. 522, 527 (Bankr. D. Del. 2017).  In applying the "excusable neglect standard," courts have given heavy weight to whether a claimant—upon discovering that the bar date had passed—promptly filed a proof of claim and sought leave from the court to allow the late claim. *In re Majestic Holdco, LLC*, No. 09-14142, 2013 Bankr. LEXIS 657, at *12 (Bankr. D. Del. Feb. 21, 2013) ("Adding insult to injury, Entergy did not file the Motions to Enlarge until ***five months*** had passed from discovering the meter malfunction.  What is especially egregious is that Entergy took more time from discovery to filing[,] five months[,] [than the] 45 and 60 day[] . . . bar dates the Court set for pre-petition and administrative claims, respectively." (emphasis added)); *In re Nortel Networks, Inc.*, 531 B.R. 53, 66 (Bankr. D. Del. 2015) ("Further, by their own admission,

14

the Canadian Employees waited approximately *six months* to file the Motion after 'discovering' their potential claims against the U.S. Debtors.  The six month delay in and of itself constitutes ***inexcusable neglect***." (emphasis added)); *Silva v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.)*, Nos. 07-10416 (BLS), 11-53199 (KJC), 2014 Bankr. LEXIS 924, at *18-19 (Bankr. D. Del. Mar. 7, 2014) (finding no excusable neglect where the claimant "delay[ed] in filing a proof of claim *four years* after the Bar Date (and ***nine months*** after being advised of the Debtors' bankruptcy filing)" (emphasis added)); *Toscano v. RSH Liquidating Tr.* (*In re RS Legacy Corp.*), 577 B.R. 134, 141 (Bankr. D. Del. 2017) ("At the latest, Ms. Toscano had notice and knowledge of her potential claim on August 12, 2015.  Yet she took no action to alert RadioShack or this Court of her potential claim until at least *11 months* later.  For these reasons, this Court finds this factor to weigh against a finding of excusable neglect."  (emphasis added)); *In re New Century TRS Holdings, Inc.*, No. 07-10416 (BLS), 2014 Bankr. LEXIS 827, at *27-28 (Bankr. D. Del. Mar. 4, 2014) (finding no excusable neglect where, inter alia, "[e]ven upon learning of her potential claims against the Debtors in August 2008, Ms. Cromwell did not file a proof of claim until May 26, 2010," circa *twenty-one months* after discovering her claim).

50.    Based on the record created in the Motions, there is no justifiable excuse for Movants' delay from the discovery of their claims—for Mr. Bergschneider, ***41 months*** from July 2016 to March 2020, and for Mr. Heinzmann, ***29 months*** from September 2017 to April 2020.  *See PacifiCorp*, 2006 U.S. Dist. LEXIS 57470, at *48 ("Even if the Court were to consider this neglect to be 'excusable,' however, this reason would only remedy [claimant's] delay from the Bar Date until June 2004, when it learned of its environmental liability.  After Appellants did learn of their environmental liability, Appellants did not file with the Bankruptcy Court for over six months. Appellants have not presented the Court with compelling arguments for this delay.").  While

AMERICAS 102650268

Messrs. Bergschneider and Heinzmann appeared in the case through counsel shortly after discovering their claims, Movants did not at any time in the intervening years file proofs of claim and seek leave from the Court to have them allowed. Even excluding the time before Plan confirmation, the Movants failed to act for over two years *after* the ***Effective Date***. *See In re Goody's Family Clothing, Inc.*, 443 B.R. 5, 16 (Bankr. D. Del. 2010) (Sontchi, J.) ("Thus, the true length of the delay was roughly 5 months. Courts have held that comparable delays weigh against the movant."). Moreover, Messrs. Bergschneider and Heinzmann appeared in the case through counsel who had participated in the case—with respect to this very issue—as early as 2014. [D.I. 1796] (objection to bar date motion by Kazan Law). "With respect to the length of the delay, courts have refused to find excusable neglect in cases where the late claimants filed much closer to the bar date than [the claimants] did in this case." *PacifiCorp*, 2006 U.S. Dist. LEXIS 57470, at *44 (affirming denial of motion to file late claim, where length of delay was "approximately one year and eight months," and noting that "in cases where late claimants have established excusable neglect, the delay was far shorter,").

51.    Here, Movants proffer no explanation for their long delay in seeking relief.

52.    To the extent that Movants' delay was, as it appears, a strategic attempt to preserve appellate standing, they cannot satisfy the excusable neglect standard required to grant the relief sought. A "conscious, deliberate decision" not to file a proof of claim bars a finding of excusable neglect. *See Nortel Networks*, 573 B.R. at 527-28 ("SNMP made a conscious, deliberate decision that they would not name SNMPR as a claimant. The decision 'was within the reasonable control of the movant.' Then, waiting seven years to seek to add SNMPR by amendment is very much inexcusable." (citing *Pioneer*, 507 U.S. at 395)); *cf. First Fid. Bank, N.A., N.J. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 840 (2d Cir. 1991) ("If individual creditors were

permitted to postpone indefinitely the effect of a bar order so long as adversary proceedings were pending, the institutional means of ensuring the sound administration of the bankruptcy estate would be undermined.").  To the extent that the delay was a tactical decision by Movants' counsel, it must be imputed to Movants.  *Pioneer*, 507 U.S. at 397 ("[I]n determining whether respondents' failure to file their proofs of claim prior to the bar date was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable."); *Hefta v. Official Comm. of Unsecured Creditors (In re Am. Classic Voyages Co.)*, 405 F.3d 127, 134 (3d Cir. 2005) (under *Pioneer*, imputing the actions of counsel to a late filing creditor and concluding "that the delay in this case was entirely avoidable and within [the creditor's] control").

53.    To allow late claims whose filing was strategically delayed until long after the Effective Date would be prejudicial to both the Reorganized EFH/EFIH Debtors and Sempra Energy.  Both the EFH/EFIH Debtors and Sempra Energy reasonably relied upon the universe of claims against the EFIH/EFIH Debtors as defined by the Asbestos Bar Date.  *Energy Future Holdings*, 522 B.R. at 527 (noting that "the setting of a bar date" assists in "achieving" "[t]he objectives of finality and fixing the universe of claims").  If Messrs. Bergschneider and Heinzmann had filed proofs of claim, and had sought leave from the Court to allow the late claims, and if such leave had been granted, then such claims could have properly been accounted for by the Debtors and Sempra Energy in connection with confirmation of the Plan and the sale of the Debtors to Sempra Energy.  *See Goody's Family Clothing*, 443 B.R. at 16 ("In addition, the delay takes on added significance when a plan of reorganization was confirmed in the interim."); *PacifiCorp*, 2006 U.S. Dist. LEXIS 57470, at *44-46 (recognizing filing a late claim "before the confirmation of [debtors'] plan" favors finding excusable neglect, and that "in many cases where excusable

neglect arguments are rejected, the late claimants have filed after the confirmation date" (citing *Chemetron II*, 212 F.3d at 205, and *Trump Taj Mahal*, 156 B.R. at 938)).[8]

54.     Instead of promptly filing proofs of claim and seeking relief from the Asbestos Bar Date after their diagnoses, Messrs. Bergschneider and Heinzmann elected to prosecute a facial challenge to the Asbestos Bar Date.  This was despite the Reorganized EFH/EFIH Debtors repeatedly pointing out that Movants needed to utilize the procedure under Bankruptcy Rules 9006(b) and 3003(c)(3) to have their claims allowed.  [D.I. 12666 ¶ 140] ("Inexplicably, however, none of the Asbestos Objectors who failed to timely preserve their unmanifested asbestos claims has attempted to submit a late-filed proof of claim."); Appellees' Motion to Dismiss Appeal and Response to Appellants' Principal Brief, at 36-38, *Fenicle v. Energy Future Holdings Corp. (In re Energy Future Holding Corp.)*, 596 B.R. 473 (D. Del. 2019) (No. 18-381) [ECF No. 40] ("None of the remaining Appellants have even ***attempted*** to file a proof of claim or seek relief from the Asbestos Bar Date Order in the Bankruptcy Court, which relief is available upon a showing 'for cause.'");[9] Appellees' Brief, at 42-43, *In re Energy Future Holdings Corp.*, 949 F.3d 806 (3d Cir. 2020) (No. 19-1430) ("The remaining Appellants' claims are not ripe for appeal because none have even attempted to file a proof of claim or seek relief from the Asbestos Bar Date Order in the Bankruptcy Court.");[10] *see also PacifiCorp*, 2006 U.S. Dist. LEXIS 57470, at *48-49 ("[T]he publication notice given by the debtor was more than adequate and consequently the Court finds

---

[8]     In its opinion affirming this Court's finding that due process had been satisfied, the Third Circuit briefly reviewed the *Pioneer* factors for excusable neglect.  *Energy Future Holdings*, 949 F.3d at 823-25.  This discussion is dicta.

    In any event, if this Court were to consider the *Grossman's* to decide if there was an adequate reason for delay, Movants have neither alleged nor provided evidence to support a *Grossman's* analysis.  *Id.* at 823-24 (citing *JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 127-28 (3d Cir. 2010)) (listing factors).

[9]     An excerpt of the brief is attached hereto as **Exhibit A**.

[10]    An excerpt of the brief is attached hereto as **Exhibit B**.

AMERICAS 102650268

that the debtor did not contribute to the delay in this case.").[11]  Indeed, Kazan Law once signed a stipulation permitting certain late-filed claims to be deemed timely under Bankruptcy Rule 9006(b)(1).  [D.I. 8012].

55.    The Third Circuit's decision in *Jones v. Chemetron Corp. (Chemetron II)*, applying *Pioneer*, is illustrative.  212 F.3d 199 (3d Cir. 2000).  In that case, the debtors had incurred prepetition liability as a result of uranium contamination on or near former property of the business. *Id.* at 202-03.  After the debtors filed for chapter 11, a bar date was set for May 31, 1988, *id.* at 202, and a plan confirmed July 12, 1990, *id.* at 203.  But, four years after the bar date, a group of residents brought suit in state court for injuries caused by the contamination, and ended up in bankruptcy court seeking leave to allow their late claims.  *Id.* at 201.  After the Third Circuit "ruled that the plaintiffs had received sufficient notice of the bankruptcy proceeding," it "remanded to the bankruptcy court . . . to determine whether the plaintiffs should still be permitted to file their claims based on excusable neglect." *Id.* at 201 (citing *Chemetron I*, 72 F.3d 341).  On appeal again to the Third Circuit, the court affirmed that plaintiffs had not demonstrated excusable neglect, and rejected the argument that the claimants "had no way of knowing that they had a claim against Chemetron prior to the 1988 bar date,"  noting that the "burden of proving excusable neglect lies with the late-claimant," and that "ignorance of one's own claim does not constitute excusable neglect."  *Id.* at 205 (citing *Best Prods.*, 140 B.R. at 359).  To the contrary, the court noted the "contamination generally was known in the community in the early 1980's, and that some residents

---

[11]    Movants' citation to *City of New York v. New York, New Haven, & Hartford Railroad Co.*, 344 U.S. 293 (1953), to suggest that they were entitled to direct notice by mail is misplaced.  In that case, the Supreme Court simply held that a known lien creditor of the debtor was entitled to direct notice, such as notice by mail.  *Id.* at 296. Movants were unknown creditors at the time of the Asbestos Bar Date and, as such, were only entitled to notice by publication.

AMERICAS 102650268

publicly expressed concerns about the health effects of these toxins in press accounts and at public meetings." *Id.*

56.     The use of the procedures established by Bankruptcy Rules 9006 and 3003 has been well-established for decades. *Pioneer*, 507 U.S. at 395 (1993). In any event, "[i]gnorance of the law is not excusable neglect." *Nortel Networks*, 573 B.R. at 526. Further, regardless of whether other litigation may be ongoing, a late claimant must promptly file their proofs of claim and seek leave from the court to allow the late claims. *See State Dep't of Envtl. Prot. v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, No. 07-536, 2008 U.S. Dist. LEXIS 18486, at *11-12 (D. Del. Mar. 11, 2008) ("The NJDEP's counsel argued to the Bankruptcy Court that it did not file a proof of claim at this time because it thought it would litigate the claim, settle it, or at least have the penalty fixed before the NJDEP filed in the Bankruptcy Court *because it had already missed the Bar Date*. . . . [T]he reason provided by the NJDEP is not compelling and was entirely within its control."). Movants' delay was not excusable neglect.

57.     In sum, for the reasons set forth above, each of the *Pioneer* factors weighs against granting the Motions.

## RESERVATION OF RIGHTS

58.     The Reorganized EFH/EFIH Debtors and Sempra Energy reserve the right to supplement this Objection and make additional arguments at any hearing scheduled to consider the Motions. Further, pursuant to Art. VII.A. of the Plan, "after the EFH Effective Date, each of the Reorganized EFH/EFIH Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim immediately before the EFH Effective Date."

## CONCLUSION

For the reasons set forth herein, the Reorganized EFH/EFIH Debtors and Sempra Energy request that the Court deny the Motions.

AMERICAS 102650268

Dated: May 15, 2020
         Wilmington, Delaware

                                  FOX ROTHSCHILD LLP

                         By:    /s/ Jeffrey M. Schlerf
                                Jeffrey M. Schlerf (No. 3047)
                                919 North Market St., Suite 300
                                Wilmington, DE 19801
                                Telephone:  (302) 654-7444
                                Facsimile:  (302) 463-4971
                                jschlerf@foxrothschild.com

                                - and -

                                WHITE & CASE LLP
                                Thomas E Lauria (admitted *pro hac vice*)
                                Matthew C. Brown (admitted *pro hac vice*)
                                Southeast Financial Center, Suite 4900
                                200 South Biscayne Blvd.
                                Miami, FL 33131
                                Telephone:  (305) 371-2700
                                Facsimile:  (305) 358-5744
                                tlauria@whitecase.com
                                mbrown@whitecase.com

                                J. Christopher Shore (admitted *pro hac vice*)
                                1221 Avenue of the Americas
                                New York, NY 10020
                                Telephone:  (212) 819-8200
                                Facsimile:  (212) 354-8113
                                cshore@whitecase.com

                                *Counsel to Sempra Energy and the Reorganized*
                                *EFH/EFIH Debtors*

AMERICAS 102650268