Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4    In re:                      :

5    ENERGY FUTURE HOLDINGS CORP., :   Chapter 11

6    et al.,                      :   Case No. 14-10979

7          Debtors.              :   (Jointly Administered)

8    _____:

9

10

11

12                               United States Bankruptcy Court

13                               824 North Market Street

14                               Wilmington, Delaware

15                               July 9, 2020

16                               10:00 AM

17

18

19

20

21    B E F O R E :

22    HON CHRISTOPHER S. SONTCHI

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO OPERATOR:   UNKNOWN

1    HEARING re Motion for Request for Relief Filed by the

2    Tremble Family [D.I. 14071; filed May 29, 2020]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    RICHARDS LAYTON & FINGER, P.A.

4         Attorneys for the TCEH

5

6    BY:  JASON M. MADRON

7

8    SHARON DONALDSON - Appearing Pro Se

9    SELIA SHAWKEY - Appearing Pro Se

10

11   ALSO APPEARING TELEPHONICALLY:

12   GEORGE P. ANGELICH

13   BETH BROWNSTEIN

14   D. DAVID COHEN

15   JEFF DARDARIAN

16   JASON GIBSON

17   JON E. JACKS

18   JUSTIN KESSELMAN

19   JOHN MALONE

20   CHRISTIAN MCBURNEY

21   R. STEPHEN MCNEILL

22   JAMES E. O'NEIL

23   JEREMY W. RYAN

24   BRIAN RYNIKER

25   JACKSON TOOF

1   LEONARD TRIVIGNO

2   WILMER TREMBLE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  Good afternoon, or happy noon, or good

3    morning, depending on where you are.  This is Judge Sontchi.

4    We are here for the Energy Future Holdings case today and

5    the motion brought by the Tremble family.  We are proceeding

6    remotely, of course, due to the coronavirus.  So I have a

7    few announcements about that before we begin.

8          All of the audio is by CourtCall, which is the

9    telephone.  Importantly, because it's by telephone, it is

10   important if you have the ability to do so to mute your

11   phone when you're not speaking so that we can avoid

12   background noise and have a clean recording, which is what

13   we use to have a transcript.

14          This is particularly important if you're on a cell

15   phone or a speakerphone like I am, or even if you're using

16   earbuds because we get a lot of background noise with that

17   equipment.  Of course muting your phones is great.  Try to

18   remember to unmute your phones when you speak.  I am

19   particularly bad at that, so I try to remember.  But please

20   unmute your phones when you speak.

21          Also when you do speak, if you could identify

22   yourself so we know who you are for the record.  If we're

23   having a colloquy back and forth, obviously you don't need

24   to identify yourself every time you speak.  But when you

25   start, if you could identify yourself.  And if there's some

1   sort of break and you come back in again and you could

2   identify yourself, that would be very helpful.

3           Only Mr. Madron is on Zoom, which is fine.  So I

4   won't go through all of the normal Zoom instructions since

5   he knows those as well as anybody.

6           So just for organizational purposes, I know it's

7   not his motion, but just for organizational purposes, I'll

8   turn it over to Mr. Madron to set up the hearing.  Mr.

9   Madron?

10          MR. MADRON:  Good afternoon, Your Honor.  For the

11  record, Jason Madron of Richards, Layton & Finger on behalf

12  of reorganized TCEH.  Your Honor, we are before the Court

13  this afternoon with a one-item agenda.  And that would be

14  the Tremble family's present motion, which can be found at

15  docket item number 13331.  It has been styled as a motion

16  for stay relief.

17          Your Honor, the reorganized TCEH did file a timely

18  objection to this motion last week, on July the 1st.  Happy

19  to present the reorganized company's objection, but I will

20  be happy to also yield in the first instance to any members

21  of the Tremble family that may be joining us by telephone

22  today to present their motion.  And then I'm happy to

23  respond in due course.

24          THE COURT:  Yes, I would like to proceed that way.

25  Thank you, Mr. Madron.

1          I know I have Ms. Donaldson on the line, who I

2    think is the spokesman.  But whoever would like to speak on

3    behalf of the Tremble family, now is the time.

4          MS. DONALDSON:  Good afternoon, good morning,

5    gentlemen.  This is Sharon Tremble-Donaldson.  I am actually

6    looking to proceed on behalf of our family.  My sister,

7    Selia Tremble Shawkey, actually is to be the lead.  So if

8    you would please bear with me.  I don't know exactly what

9    has happened with her, but I will do my very best.

10          My understanding is that we have been objected to

11    in reference to our request.  And with that being the case,

12    there are just a few things that I would like to point out.

13          First of all, we were officially added to the

14    bankruptcy on January 7th of 2015.  And that was after the

15    actual date, which I believe was April 29th, 2014.  With

16    that being said, the attorneys for Luminant Mining as well

17    as Energy Future Holdings, were responsible for adding us to

18    the case at that time.  So the fact that it was after the

19    bar date did not have anything to do with us directly.  We

20    were responding to what those attorneys had done as of that

21    January 7th date.  And we did present our proofs of claim as

22    well as a packet of information in reference to the

23    situation and what we had gone through legally with Luminant

24    Mining.

25          Now, we did then eventually -- we got into the

1    bankruptcy.  Then we had -- the stay was lifted by Energy

2    Future Holdings' request.  And as a result, we went to the

3    Court of Appeals.  We lost in the Court of Appeals.  We then

4    appealed to the Texas State Supreme Court.

5           Now, at that time we received a letter from

6    Jackson, Sjoberg, McCarthy & Townsend, LLP.  And the letter

7    said, pursuant -- excuse me.  "Dear Mr. Hawthorne.  Pursuant

8    to Texas Rule of Appellate Procedure 53.3, Respondent,

9    Luminant Mining Company LLC hereby waives the filing of a

10   response to the petition review filed by Wilmer Forrest

11   Tremble, Jr., Sharon Tremble-Donaldson, Selia Tremble-

12   Shawkey, and Billy J. Tremble in the above-referenced

13   cause."  So in that situation, it was Luminant Mining that

14   chose not to respond.

15          We then came back to the bankruptcy court, and now

16   we sit.  We were then advised that it is Energy Future

17   Holdings that wants to expunge and disallow our claim, and

18   that then would not be a legal precedent that they would be

19   able to take.  And that is because we are a secured

20   creditor.

21          We have spent time over the years making certain

22   that we secured our property.  And in spite of all of what

23   we have done, that company, Luminant Mining, still proceeded

24   onto our property, they've taken produce off of our

25   property, they tore down the homestead that was on the

1    property, as well as the barn and everything else.

2            We then have not been compensated for anything

3    that was done.  So there has been a travesty of justice in

4    this entire situation.  Now, what I am aware of, and that is

5    White Transportation.  This means in that particular case

6    that a secured creditor cannot be stripped of its lien under

7    Section 1141(c), even if received notice of a Chapter 11

8    case, and deliberately ignores the case plan as a plan

9    process unless the creditor actively participates in the

10   case by, among other things, filing a proof of claim.

11           The ruling then signals that in the Fifth Circuit,

12   absent participation by the secured creditor, a plan

13   proponent will not be permitted to modify or avoid the

14   creditor's lien solely through the plan confirmation

15   process, but instead will be required to affirmatively

16   object to the secured claim or initiate an adversary

17   proceeding to challenge the lien.  That has not been done.

18           Our claim is a secured claim in that particular

19   case.  The company then did win because a secured creditor

20   is indeed secured.  And that secured status cannot be taken

21   away.  Secured creditors may choose to take no action during

22   a Chapter 11 case without hazarding lien stripping.

23           And there was also something within the

24   information sent that said that we have not come before the

25   Court in a three-and-a-half-year period.  Well, that is

1   incorrect.  Back in January of 2018, we did come before the

2   Court.  And Mr. Jason Madron, he was then the party that we

3   talked with or that we combatted with in reference to our

4   situation as secured creditors.

5          And I rest in that there should be no stripping of

6   our secured creditor status, nor our request that we have

7   made to receive some of our funding if not all of our  money

8   in this case.

9          THE COURT:  All right.  Thank you very much,

10  ma'am.  I truly appreciate it.

11         Mr. Madron, if you could respond.  And I'd like

12  you to pay particular attention to the assertion of a

13  secured claim in this instance, which, I have to admit, I

14  was not aware of.

15         MR. MADRON:  Your Honor, I'm happy to do so.  I

16  think it would be helpful for the Court -- and I'm happy to

17  clarify a few of the comments made by the representative of

18  the Tremble family about some of the things rolled into the

19  bankruptcy or notices, things of that nature.

20         So just by way of background, Your Honor, the

21  Tremble party's present motion -- by way of background to

22  the motion, on July 30th of 2018, the Tremble parties filed

23  a one-page letter with the court as a "request for

24  disbursement and compensation of funds owed to the Trembles

25  and asking for an immediate release of funds."

1           On September 18th, 2018, the EFT Plan

2    Administrative Board filed a written objection to the

3    Tremble's July 30th letter.  That's on the docket at docket

4    item 13495.  The PAB's September 18th filing pointed out

5    that the Tremble family filed four proofs of claim in the

6    Debtor's Chapter 11 cases approximately three-and-a-half

7    years after the general bar date.  These are the proofs of

8    claim attached to our current response to the Tremble's

9    motion that we're talking about today, and they can be found

10   at Exhibit E1 through E4 to our response.  These claims are

11   what I believe Ms. Tremble is referring to as their

12   purported secured claims.  I believe they were filed in the

13   magnitude of $20 billion.  And the box I believe was checked

14   on each of the four claims asserting secured status.

15           Your Honor, however, all of these claims have

16   previously been disallowed and expunged by operation to

17   confirm E-side Chapter 11 plan in these Chapter 11 cases

18   upon the effective date.

19           Notwithstanding the Tremble's historical

20   connection with the Debtors appears to have been on T-side

21   all four of the claims were filed in the lead case of Energy

22   Future Holdings Corp., hence the reason why the PAB, as

23   compared to the organized TCEH, responded to the July 30th

24   letter acting as the fiduciary of the E-side estates.

25           Thereafter, Your Honor, on September 28th, 2018,

1   this Court entered its order at docket item 13532, whereby

2   the Court adopted the PAB's argument set forth in its

3   September 18th response in full and denied the Tremble

4   family any relief in connection with its July 30th letter

5   request.

6            Thereafter, on October the 2nd, 2018, the Tremble

7   family filed an untimely reply to the PAB's objection, which

8   can be found on the docket at docket item 13543.

9            On October 3rd, 2018, this Court entered an

10  amended order at docket 13544 rejecting the arguments raised

11  by the Tremble family in the reply and fully reiterating its

12  denial of any relief to the Trembles.

13           On May 29th, 2020, the Tremble parties filed the

14  instant motion pending before the Court which, as I

15  mentioned before, is styled as a motion for stay relief.  By

16  their May 29th filing, the Tremble family seeks relief from

17  this Court in order to exercise remedies with respect to

18  certain collateral.  The May 29th filing makes reference to

19  the Tremble family's long disallowed and expunged proofs of

20  claim.  And these are the four claims that Ms. Tremble was

21  referencing that they have asserted as secured claims and

22  seeks relief concerning the retrieval of funds.

23           Put differently, Your Honor, the Tremble party's

24  most recent filing simply appears to repackage the same

25  request that was made in their July 30, 2018 letter filed

1    with the Court seeking a recovery from the Debtors based on

2    their disallowed and expunged proofs of claim, a request

3    that was roundly rejected by the Court twice back in 2018.

4            As we discussed in our papers, the Tremble family

5    has a history of prepetition litigation with certain of the

6    Debtors.  And I think this will clarify some of the comments

7    that Ms. Tremble made.

8            First, the Tremble parties were named defendants

9    in certain partition suits that were filed by Luminant

10   Mining Corporation -- excuse me, Luminant Mining Company

11   LLC, one of the TCEH debtors in the Ross County District

12   Court in Texas.  This was a prepetition suit.  Luminant

13   prevailed in the partition suits, and the Tremble party's

14   appeals therefrom were all successful.

15           I believe when Ms. Tremble was saying that she

16   received a letter that Luminant was choosing not to respond,

17   you know, a judgement was entered in favor of Luminant at

18   the trial court level.  There was an appeal taken as a

19   matter of right to an appellate court.  The appellate court

20   confirmed.  And then there was what is basically analogous

21   to a petition for writ of certiorari to the Texas State

22   Supreme Court of the -- at the district of the circuit court

23   level.  And as is often the case with Supreme Court practice

24   and the federal courts, parties often elect to not file a

25   response to a petition for writ of certiorari, and that was

1    the case here.

2            Also prior to the petition date, Your Honor, and

3    this will clarify another point, the Tremble parties have

4    also commenced a civil action against Luminant and EFH,

5    along with certain unnamed subsidiaries of EFH.  This

6    litigation where the Tremble parties were the plaintiffs was

7    also filed against the debtor entities in the Ross County

8    District Court.

9            The Tremble party's lawsuit was stayed following

10   the petition date and ultimately dismissed for want of

11   prosecution.  As we noted in our response papers, the

12   dismissal order of that lawsuit was not appealed and was

13   long ago final and unappealable.

14           I think here, Your Honor -- and this relates to

15   Exhibit C to our response -- it was in January of 2015 if

16   memory serves that Luminant's counsel in the state court

17   action that was defending the litigation that the Tremble

18   parties had commenced against Luminant, EFH, and unnamed EFH

19   subsidiaries filed a notice of suggestion on pendency of

20   bankruptcy in the Ross County action to stay the matter.  So

21   that notice of suggestion was served on the Tremble parties.

22           THE COURT:  So if the suit was stayed by the

23   automatic stay and then notwithstanding that it was stayed

24   by the automatic stay was dismissed of lack of prosecution?

25           MR. MADRON:  I think was happened logistically,

1    Your Honor, the lawsuit was pending in January of 2015.

2    Local counsel in Texas filed the notice of suggestion on

3    pendency of bankruptcy.  In response to that, the trial

4    court in Texas stayed the matter.  And then ultimately after

5    a period of years I believe -- I think it may have been a

6    couple of years -- it was just dismissed for wont of

7    prosecution.

8              THE COURT:  (indiscernible).

9              MR. MADRON:  And again -- yeah.  That order, we

10   also attached that order to our response.

11             THE COURT:  I know.

12             MR. MADRON:  That order was not appealed as well.

13             Your Honor, as reorganized TCH notes in its

14   objection, the Tremble parties received comprehensive notice

15   of the general bar date and of both the T-side and the E-

16   side plan processes.  Notwithstanding all of the notice

17   afforded to the Tremble parties throughout the Debtor's

18   Chapter 11 cases, approximately three-and-a-half years after

19   the general bar date did certain of the Tremble parties file

20   what were numbered proofs of claim 37811, 37810, 37809, and

21   37808.  By operation of Article 7F and Article 7G of the T-

22   side or E-side plan as applicable, these untimely claims

23   were disallowed and expunged on the effective date of the

24   applicable plan.  And why I say it's applicable, because

25   these claims were lodged in the main case, 1410979.  So they

1    were deemed on the claims register as being lodged against

2    Energy Future Holdings Corp.  The proof of claim itself, if

3    you look at them, Your Honor, in the dialogue of only one

4    case number is listed.  In the dialogue box it is written

5    that it's asserted against I believe -- I don't have it in

6    front of me, but I think it's Luminant, EFH, et cetera.  But

7    it was only lodged in the one case.

8              But either way, whether it was lodged against

9    Luminant or EFT or both, Article 7F and G of the T-side and

10   E-side plans are very closely aligned as far as the language

11   that it uses to disallow and expunge untimely claims

12   automatically upon the plan effective date.

13             In addition, Your Honor, Article 8A of each of the

14   T-side and E-side plan as applicable contain a broad

15   discharge injunction that prevents the Tremble parties from

16   seeking recovery from any of the EFH debtors, whether on the

17   T-side or the E-side on account of any alleged prepetition

18   claims.

19             Finally, Your Honor, as I've noted before, this

20   Court has already ruled against the Tremble parties in two

21   separate orders entered in 2018 with respect to the very

22   relief they are again requesting and their most recent

23   motion now pending before the Court.  In that regard, the

24   Court's 2018 orders, both of which are long final and

25   unappealable, have already denied the substance of the

1    Tremble party's request before the Court today under the law

2    of the case and cannot impermissibly be collaterally

3    attacked by the Tremble parties now.

4            In conclusion, Your Honor, the Tremble parties, we

5    would submit respectfully, hold no enforceable claims

6    against or (indiscernible) entitlement to any property from

7    any of the debtors.  The Tremble claims have long ago been

8    disallowed and expunged and any potential claims of the

9    Tremble parties against any of the Debtors are discharged by

10   operation of the Debtor's confirmed and effective plans, of

11   which the Tremble parties had comprehensive notice.  And the

12   Tremble parties' prepetition lawsuit against certain of the

13   debtors was long ago dismissed.  Put differently, there is

14   no pending civil litigation against any of the debtors by

15   the Tremble parties with respect to which this court could

16   even consider modifying the automatic stay.

17           Moreover, Your Honor, this Court's 2018 order is

18   already adjudicated, that the Tremble parties are not

19   entitled to any property, funds, distributions, or

20   compensation of any kind from any of the debtors.  And as a

21   result of the foregoing, Your Honor, reorganized

22   (indiscernible) request that the Court deny the Tremble

23   parties' pending motion in full.

24           And the only other comment I'll make on the

25   secured point.  Ms. Tremble made reference to a hearing

1    where there was an argument.  I believe it was in January of

2    February of 2018.  I believe, if memory serves me, Your

3    Honor, the Tremble parties had filed an objection to a

4    motion of the debtors to extend the deadline to remove civil

5    actions.  And they filed an objection to that, and I

6    appeared at a hearing in front of Your Honor where one of

7    the members of the Tremble family also appeared by telephone

8    and argued that.  And again, I'd have to look back at the

9    transcript, but I believe I pretty much raised the same

10   argument.  But the motion really didn't affect the Tremble

11   parties.  They were not, to the reorganized debtor's

12   knowledge, a current counterparty to any pending litigation

13   against any of the debtors in any court.  And Your Honor

14   obviously granted that motion to extend time over the

15   Tremble parties' objection.

16           I believe that is the reference to the January or

17   February 2018 argument that was previously had in these

18   cases.  I do not believe that I personally argued the

19   September 2018 letter that we respectfully submit that the

20   current request before the Court is really a repackaging of.

21           So I'm happy to answer any questions Your Honor

22   has.  But otherwise, we would respectfully request that the

23   motion be denied.

24           THE COURT:  All right.  Just give me a minute.  I

25   want to look at something, and then I might have a question

1    for you, Mr. Madron.

2              MR. MADRON:  Very good, Your Honor.

3              THE COURT:  Because we're all electronic here, I'm

4    looking at a computer.  That's why I'm looking away from

5    you.

6              MS. SHAWKEY:  Judge Sontchi?

7              THE COURT:  Yes.

8              MS. SHAWKEY:  This is Selia Tremble-Shawkey.  And

9    I am objecting to his (indiscernible) motions in reference

10   to the Tremble family and how we were actually put in this

11   bankruptcy.  We were put in the bankruptcy on January 7th,

12   2015 by the company.  The company and an attorney by the

13   name of David Jackson.  We did not put ourselves in this

14   bankruptcy.

15             On 10/23/2015, okay, we also received the voting

16   rights in the bankruptcy (indiscernible) plan.  We were

17   contacted.  We received all of the information.  We received

18   a CD-ROM informing us that we were in the bankruptcy and we

19   were put in it by Luminant, Energy Future Holdings, and its

20   subsidiaries.  Okay?

21             And when he's talking about the Supreme Court,

22   he's talking about all those issues, those were moot issues

23   because they did not have anything to do with the said

24   bankruptcy.  That was a situation that was going on in the

25   district court of Ross County that had to do with Ross

1    County and Luminant Energy Future Holdings and all of them

2    attempting to sell our land without our commission.  They

3    did an illegal option trying to sell the land saying that we

4    were no longer entitled to our land.  That's what that was

5    about.

6            I am not here -- everything he's saying --

7    anything he said actually, whether the Supreme Court, any of

8    that had anything to do with this actual bankruptcy.

9    Because like I said, they put us in the bankruptcy.  We did

10   not.  When we filed to get -- we had to file to get a list

11   of estates so that we could go to finish up work and

12   everything that had to do with our land situation.  It had

13   nothing to do with the minerals that is under the ground.

14   They were the ones looking for the minerals under the

15   ground.  We had additional contact with David Jackson, his

16   group, trying to work out some kind of agreement so that we

17   could try to sell something on the land and try to do

18   something and compromise with each other.  That is what

19   actually happened.

20           Like I said, I'm not sure why he's bringing all

21   that up into this bankruptcy because it has nothing to do

22   with that.  It has to do with when we filed suit on them,

23   they turned around and did not want to go back to court.

24   The reason why the Supreme Court situation was dropped is

25   because David Jackson and Luminant, representing the

1   Luminant Energy Future Holdings subsidiaries, decided that

2   they did not want to go any further in that particular court

3   action.  That is exactly what happened.

4            And we filed all of our paperwork.  We had

5   everything in to the court.  And when we were in court, with

6   you and with -- I believe his name was Jason Madron.  When

7   we were in court with you and we all were testifying, he was

8   trying to bring that information back up.  And you told him

9   that that was not appropriate at that time because that was

10  not what we were doing.

11           And so now I don't know if there's any other

12  information that anyone else needs.  But the Tremble family

13  are entitled to be paid.  They are entitled.  Because like I

14  said, we did not start any of this, they did.  And we have

15  gone and we've done everything we could to protect our

16  property and to protect what we were going through when we

17  filed the suit against them.  But when we were going

18  through, like I said, all the Supreme Court, all the

19  appellate courts had nothing to do with the bankruptcy

20  information.  It had to do with fighting over our land.

21           THE COURT:  Okay.  Thank you, ma'am.  I appreciate

22  it.

23           MS. SHAWKEY:  Thank you.

24           THE COURT:  That was Ms. Shawkey?

25           MS. SHAWKEY:  Yes.  Selia Tremble-Shawkey.

1            THE COURT:  Okay, thank you.

2            MR. MADRON:  Your Honor, may I briefly respond?

3            THE COURT:  Give me just a minute, Mr. Madron.

4            MR. MADRON:  Certainly, Your Honor.

5            THE COURT:  Yes, go ahead, sir.

6            MR. MADRON:  Thank you, Your Honor.  Again for the

7    record, Jason Madron on behalf of reorganized TCH.

8            With respect to the continued statements about

9    being drawn into the bankruptcy, again, this is referenced,

10   I most assuredly believe is related to the notice of

11   suggestion of pendency of bankruptcy that was filed down in

12   the Texas state court where certain Tremble family members

13   were plaintiffs in an action against Luminant, EFH, and

14   unnamed EFH subsidiaries.

15           So I think there is a misapprehension on behalf of

16   the Tremble family that that notice that was filed, which

17   was designed, as Your Honor is aware, to alert the state

18   court of the existence of a bankruptcy and that pursuant to

19   Section 362 of the Bankruptcy Code there is an automatic

20   stay in place that unless Your Honor would have entered an

21   order lifting it, that prevents that lawsuit from going

22   forward.

23           So I believe that that filing, which clearly did

24   not bring any of the Tremble family members into the

25   bankruptcy case as debtors, is what is being referred to

1    multiple times this afternoon as being brought into the

2    bankruptcy.

3            Secondly, Your Honor, with respect to the land

4    issue -- and this all goes back to the partition lawsuits

5    that Luminant brought against, among others, the Tremble

6    family.  The partition lawsuit had to do with the land.

7    Luminant prevailed at the trial court level.  There was an

8    appeal to a circuit court, state circuit court.  And I

9    believe we attached a memorandum opinion to our response.

10   The circuit court affirmed Luminant's win with respect to

11   the partition issue.  And the Tremble family sought to take

12   a further appeal, which is not as a matter of right, I am

13   informed by my Texas law colleagues, to the state Supreme

14   Court of Texas.  And the State Supreme Court of Texas

15   declined to grant review.  As part of that process, the

16   Luminant appellees elected, as is their right, to not file a

17   response to the Tremble family's request for a petition for

18   the Supreme Court to take it up, as is common, you know, in

19   federal court practice often with pro se folks, et cetera.

20           So with that, Your Honor, I mean, as far as the

21   stay is concerned, Your Honor may recall, you know, if we

22   want to go back into the recesses of these cases, in 2015

23   the Debtors actually filed a motion before Your Honor

24   seeking entry of an order confirming that the automatic stay

25   did not apply as to the ongoing appeal of the partition suit

1   because we were the plaintiff in the suit and we were the

2   appellee.  And that matter was decided before --

3              THE COURT:  (indiscernible).

4              MR. MADRON:  Yeah.  That matter was decided before

5   Your Honor.  We submitted evidence, we submitted

6   declarations I believe of a couple of folks with the

7   company.  And that was confirmed.  And that allowed that

8   appellate process to reach its natural conclusion, which was

9   the Supreme Court of the State of Texas did not take up the

10  matter, and that was the end.  It was in the federal courts,

11  you know, your court of last resort is the Supreme Court of

12  the United States.  And they deny -- you know up to --

13             MS. SHAWKEY:  Objection, Your Honor.

14             THE COURT:  Ma'am, you don't --

15             MR. MADRON:  And that's kind of the --

16             THE COURT:  Sorry.  Ma'am, you don't get to

17  interrupt Mr. Madron.  I'm sorry.  You will have an

18  opportunity to respond.  He didn't interrupt you.

19             MS. SHAWKEY:  Thank you.

20             MR. MADRON:  So, Your Honor, that was the court of

21  last resort.  And everything, again, with respect to the

22  partition suits was resolved in favor of Luminant.  So this

23  really all harkens back to, you know, we have before the

24  Court at bottom the same issue that we had before the Court

25  two years ago, which is a reassertion of disallowed claims

1   and seeking a recovery on account of disallowed, alleged

2   secured claims.  And outside of the fact that the plan

3   really precludes that in Article 7 and in Article 8 of

4   either the T-side or E-side plans.  And we also have the

5   issue that Your Honor has in sum and substance already ruled

6   on this issue and entered not one, but two orders in 2018

7   concluding that the Tremble family is not entitled to any

8   recovery from these Debtors.

9            So with that, Your Honor, I will yield -- I'm

10  happy to answer any questions that Your Honor might have for

11  me.

12           THE COURT:  No, I don't have any questions, Mr.

13  Madron.  Thank you.

14           Ms. Shawkey, you wish to be heard?

15           MS. SHAWKEY:  Yes, Your Honor.  We also had a

16  second claim that was actually a schedule claim.  And the

17  claim was allowed, and it was allowed under the schedule.

18  The claim that's brought up only in my name -- I'm not sure

19  why that was done, but it was.  It was Selia Tremble

20  Shawkey, Schedule Number 504270800.  And that was of course

21  under the Debtor's number 1411042, Luminant Mining, LLC.  It

22  said that it was a scheduled claim and it had like a number

23  under it.  And then under remarks it said, "Satisfied claim,

24  minimum distribution."  And it was all related to this

25  particular bankruptcy.  Okay?  Like I said, I was the only

1    one that for some reason received it up under my name.

2    Okay.

3              And the other claim that he is talking about, I

4    still object to anything that had to do with why we were in

5    court with Luminant under the land information and all that.

6    Because it had nothing to do with the bankruptcy.  Yes, when

7    we did file a suit against them, we did have an amount.  We

8    all had an amount.  And everybody is I'm sure knowledgeable

9    of that.  Okay.  And then what does that have to do with the

10   bankruptcy?  When they decided not to pursue, then we were

11   put in the bankruptcy by Luminant and Energy Future Holdings

12   and its subsidiaries.  This all took place back in, like I

13   said, January 7th, 2015.

14             And on May 9th, 2016, we had received a letter

15   from the appellate court.  And we received information from

16   David Johnson, who was representing them at the time.  And

17   it gave all the information.  We also received -- like I

18   said, we received all the information for the plan.  We had

19   access and we had -- we were able to vote on the plan.

20             I'm not sure where he's coming from with all of

21   this when they were talking about the petition for the

22   Supreme Court.  Like I said, I know that that was in a

23   totally different case.  So like I said, I feel like that

24   I'm not sure what he's trying to do and why he's trying to

25   say what he's saying.  But it is all on file.

1              Also when we did have our proof of claim and all

2     the information, all of that, the letters and everything are

3     in the proof -- went in with the proof of claim as evidence

4     of why we were in the bankruptcy, who put us there.

5              THE COURT:  All right.  Thank you very much,

6     ma'am.

7              MS. SHAWKEY:  Thank you.

8              THE COURT:  I appreciate everyone appearing today

9     by phone.  I am going to take this matter under advisement

10    and issue an order hopefully fairly quickly.  We will -- let

11    me just -- I want to make sure it goes to the right people

12    at your family, ma'am.  So let me just -- who should we send

13    the order to, Ms. Shawkey, to you?

14             MS. SHAWKEY:  We should send the order to Sharon

15    Tremble-Donaldson.

16             THE COURT:  Okay.  And she is on the phone.  Yes.

17             MS. DONALDSON:  Yes, I am here, Your Honor.

18             THE COURT:  Can you give me your address and fax

19    number, email and fax number if you have it?

20             MS. DONALDSON:  Sure.  Let me know when you're

21    ready.

22             THE COURT:  Go ahead.

23             MS. DONALDSON:  Address is 2010...

24             THE COURT:  2010...

25             MS. DONALDSON:  Wineberry, W-i-n-e-b-e-r-r-y, one

 1    word, Drive.

 2              THE COURT:  Okay.

 3              MS. DONALDSON:  That is Katy, K-a-t-y, Texas.

 4              THE COURT:  Yes, ma'am.

 5              MS. DONALDSON:  77450.  Email address --

 6              THE COURT:  And what's your phone number?  Or

 7    email address, yes.

 8              MS. DONALDSON:  Oh, I'm sorry.

 9              THE COURT:  Email address.  I'm sorry.  I

10    misspoke.  I need your --

11              MS. DONALDSON:  No problem.

12              THE COURT:  We're going to talk all over each

13    other, aren't we?  I apologize.  Go ahead.

14              MS. DONALDSON:  All right.  It's

15    SharonLJDonaldson@gmail.com.

16              THE COURT:  Okay.  I just wanted to make sure --

17              MS. DONALDSON:  And, Your Honor, just -- go ahead.

18    I'm sorry, sir.

19              THE COURT:  No, no.  Go ahead, ma'am.

20              MS. DONALDSON:  Just to add to what Selia was

21    making reference to.  We all received several packets from

22    David Jackson and both attorneys in reference to the

23    bankruptcy and the fact that we were placed in the

24    bankruptcy.  You should actually have copies of that entire

25    document within your records as well.  It did come from

1    Jackson, Sjoberg, McCarthy and Townsend LLP, and they are

2    attorneys in Austin, Texas.

3              THE COURT:  Okay.  I think I do, because you

4    attached quite a bit of documents to your motion.  So I have

5    all that.

6              MS. DONALDSON:  Right.  And there are some

7    additional pages to it as well.  So...

8              THE COURT:  Okay.  Well, thank you very, very

9    much.  It's a little complicated, and we'll try to figure it

10   out as best we can and get you a decision as quickly as we

11   can.  Thank you all for appearing today.

12             MS. DONALDSON:  Thank you.  We appreciate it.

13             MS. SHAWKEY:  Thank you.

14             THE COURT:  You bet.  All right.

15             MR. MADRON:  Thank you, Your Honor.

16   (Whereupon these proceedings were concluded at 1:39 PM)

17

18

19

20

21

22

23

24

25

1                C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  July 13, 2020