IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS | ) | Case No. 14-10979 (CSS) |
| CORP., et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | **Related Docket Nos. 14047 and 14055** |

## OPINION[1]

**FOX ROTHSCHILD LLP**
Jeffrey M. Schlerf
919 North Market Street, Suite 300
Wilmington, DE 19801
     -and-
**WHITE & CASE LLP**
Thomas E. Lauria
Matthew C. Brown
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
     -and-
**WHITE & CASE LLP**
J. Christopher Shore
1221 Avenue of the Americas
New York, NY 10020

Counsel to Sempra Energy and the
Reorganized EFH/EFIH Debtors

**HOGAN MCDANIEL**
Daniel K. Hogan
1311 Delaware Avenue
Wilmington, DE 19806

Counsel for Denis and Meri
Bergschneider and
Kaye Heinzmann
     -and-
**THE RUCKDESCHEL LAW
LAW FIRM LLC**
Jonathan Ruckdeschel
8357 Main Street
Ellicott City, MD 21043

Counsel for Kaye Heinzmann

**KAZAN MCCLAIN
SATTERLEY & GREENWOOD,
A Professional Law Corporation**
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607

Counsel for Denis and Meri
Bergschneider

Dated: August 27, 2020

Sontchi, C.J. _____

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## INTRODUCTION

Before the Court is the *Motion of Bergschneider to Allow Late Filed Proofs of Claim*, filed by Denis and Meri Bergschneider[2] (collectively, "Bergschneider") and the *Motion of Heinzmann to Allow Late Filed Proofs of Claim*, filed by Kaye Heinzmann, surviving spouse of David Heinzmann[3] ("Heinzmann" and together with Bergschneider, the "Movants") both of which seek to file proofs of claims after the bar date.  Both the Bergschneider claim and the Heinzmann claim relate to asbestos-related illnesses diagnosed after the Unmanifested Bar Date (as defined below).  Nonetheless, the Motions were filed 41 months and 29 months after the Movants' respective diagnoses, during the entirety of which time the Movants were participating actively in litigation and appeals related to the Asbestos Bar Date.  For the reasons set forth below, the Court will deny the Motions.

## JURISDICTION

This Court has jurisdiction over this matter, pursuant to 28 U.S.C. sections 157 and 1334.  Venue is proper in this District, pursuant to 28 U.S.C. sections 1408 and 1409.  This is a core proceeding, pursuant to 28 U.S.C. section 157(b)(2).  The Court has the authority to enter a final order.

---

[2] D.I. 14047, filed on April 20, 2020 (the "Bergschneider Motion").

[3] D.I. 14055, filed on May 1, 2020 (the "Heinzmann Motion," and together with the Bergschneider Motion, the "Motions.").

## STATEMENT OF FACTS

### A.  Procedural History

In December 2015, and as discussed in detail below, the Court established a bar date in these cases for asbestos related claims.  Thereafter, the Movants were diagnosed with asbestos-related illnesses, and participated actively in the plan and confirmation process related to the Debtors' Plan (as defined below), including an appeal of the confirmation order to the Third Circuit.  After the Third Circuit's disposition of that appeal on February 18, 2020,[4] affirming this Court's confirmation of the Plan and finding that the notice of the Asbestos Bar Date was sufficient under the facts and circumstances of these cases, the Movants filed the Motions on April 20, 2020, and May 1, 2020 respectively.[5]  The Motions are fully briefed[6] and the Court heard argument on the Motions on June 1, 2020.  At the conclusion of the argument, the Court took these Motions under advisement.  This is the Court's ruling thereon.

### B.  Factual History of the Bankruptcy Cases

On April 29, 2014, each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their

---

[4]  *See* Third Circuit Case No. 19-1430, D.I. 122 (Opinion dated February 18, 2020) (*In re Energy Future Holdings Corp.*, 949 F.3d 806 (3d Cir. 2020)); D.I. 123 (Judgment issued February 18, 2020); and D.I. 124 (Mandate issued March 11, 2020).

[5]  D.I. 14047, filed on April 20, 2020 (Bergschneider); D.I. 14055, filed on May 1, 2020 (Heinzmann).

[6]  D.I. 14060 (Reorganized EFH/EFIH's response); D.I. 14065 (Movants' consolidated reply).

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The United States Trustee has appointed two official committees of unsecured creditors in these cases.[7]

### C.  Factual History Related to Bar Date Motion and Asbestos Claims

In 2014, the Debtors sought to establish a process to notify potential asbestos claimants of the bankruptcy and a deadline for them to submit proof of claims.[8]

Various personal injury law firms[9] objected to the Debtors' motion to establish a bar date, arguing that it "would violate the fundamental due process rights of thousands of potential asbestos claimants."[10]  The objecting law firms argued that providing adequate notice for Unmanifested Asbestos Claimants[11] was not possible.[12]  On August

---

[7]  *See* D.I. 420 (Specifically representing the unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), EFCH's direct subsidiary: Texas Competitive Holdings Company LLC ("TCEH") and TCEH's direct and indirect subsidiaries and EFH Corporate Services Company (collectively, the "T-side Committee")) and D.I. 2570 (representing the unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc. and EECI, Inc. (the "E-side Committee")).

[8]  D.I. 1682 (motion to establish a bar date).

[9]  The personal injury law firms included Kazan McClain Satterley & Greenwood, a Professional Law Corporation ("Kazan Law").

[10]  D.I. 1796 at 5.

[11]  "Unmanifested Asbestos Claimants" are unknown persons that have yet to manifest any sign of illness from exposure to asbestos and may have "Unmanifested Asbestos Claims."  "The Unmanifested [Asbestos] Claimants were (allegedly) exposed to asbestos at one of the Debtors' facilities prior to the petition date, yet, as of the date hereof, do not know, even with appropriate due diligence, that they will become ill, due to the potential for a long latency period between asbestos exposure and illness." *In re Energy Future Holdings Corp.*, 522 B.R. 520, 523 (Bankr. D. Del. 2015).

[12]  D.I. 1796, at 8-14.

13 and October 28, 2014, the Court held two hearings and ordered additional briefing on the issue.[13]

On January 7, 2015, the Court issued a written opinion in which it held that it had the power and jurisdiction to establish a bar date for Unmanifested Asbestos Claims and found that an appropriate notice program could satisfy due process concerns.[14]  The Court stated that the discharge of the Debtors' liability for Unmanifested Asbestos Claims *could* be consistent with due process and found that, for Unmanifested Asbestos Claims under Third Circuit law, "publication notice *may* be sufficient to satisfy due process."[15]

The Bar Date Opinion required that the Debtors devise a comprehensive notice program to inform potential asbestos claimants, including "Unmanifested Asbestos Claimants," of their rights to file proofs of claim.[16]  To that end, the Debtors and the E-side Committee each retained noticing experts and engaged in extensive diligence.  Two asbestos claimants, including one of the Kazan Law's clients, sat on the E-side Committee throughout the cases.[17]

---

[13] *See* D.I. 1983 and 1984.

[14] *In re Energy Future Holdings Corp.*, 522 B.R. 520, 539 (Bankr. D. Del. 2015) (the "Bar Date Opinion") ("As a result of the plain meaning of Bankruptcy Rule 3003 and section 524 of the Bankruptcy Code, the Court finds that a bar date must be established for all claims, including Unmanifested Claims, even though the Court may later extend such bar date for cause shown.").

[15] *Id.* at 528-529, 537.

[16] *Id.* at 536-37.

[17] *See* D.I. 2570, 3313, 3403 and 8955.

The Debtors retained Hilsoft Notifications ("Hilsoft") to design a comprehensive plan (the "Notice Plan") to provide notice of the bar date (the "Asbestos Bar Date Notice"). Hilsoft is a nationally recognized leader in providing notice and has experience in some of the largest, most complex, and most significant cases, including litigation arising from the BP oil spill in the Gulf of Mexico.[18] Hilsoft also has experience with asbestos-related bankruptcy and non-bankruptcy cases.[19] The E-side Committee retained its own asbestos noticing expert, Kinsella Media, LLC.[20]

The E-side Committee provided extensive feedback on the proposed notice plan, virtually all of which the Debtors incorporated into their noticing program.[21]

On July 30, 2015, the Court entered the "Asbestos Bar Date Order" approving the Notice Plan for distributing the Asbestos Bar Date Notice and setting December 14, 2015 as the "Asbestos Bar Date."[22] The Asbestos Bar Date Order and Notice Plan were designed to comprehensively address any due process concerns, both by the means of distribution and the content of the notice.[23]

Following entry of the Asbestos Bar Date Order, the Debtors provided notice in various forms as set forth in the Notice Plan, which included: (i) direct mailing to known

---

[18] *See* D.I. 3967 ¶¶ 1-2.

[19] *See* D.I. 3967 ¶ 6.

[20] *See* D.I. 4159 (order authorizing retention).

[21] *See* D.I. 5275, at 101:17-24 (Debtors' counsel's statement).

[22] D.I. 5171.

[23] *See id.* ¶ 4.

asbestos claimants with "personalized" proof of claim forms; (ii) nearly 75,000 direct mailings to former employees and known asbestos claimants; (iii) extensive publication notice in consumer publications, local newspapers, national newspapers, trade publications, and union labor publications (with a total combined circulation of 69,893,892); (iv) dedicated website and toll-free number; (v) internet banner advertising and sponsored search listings (resulting in 436,346,154 gross online impressions); (vi) informational release to approximately 4,200 print and broadcast media outlets and 5,500 online outlets; and (vii) targeted outreach to labor unions.[24]

Hilsoft determined that the comprehensive publication notice program would "reach approximately 90.1% of men aged 65+ in the U.S. an average of 3.4 times each, 89.4% of adults aged 45+ in the U.S. an average of 3.5 times each, and approximately 85.7% of adults aged 18+ in the U.S. an average of 3.1 times each."[25]

In all, the Debtors spent approximately $2.5 million implementing the Notice Plan.[26]

In addition to the Debtors' efforts, Kazan Law took out Google search advertisements linked to the search terms "efh case info," "efh bankruptcy," and "efh restructuring."[27]

---

[24] *See* D.I. 4985-1, at 11-38.

[25] D.I. 4985-1, at 7.

[26] *See* D.I. 7255, at 62:3-5.

[27] D.I. 7290 ¶¶ 3-5.

The notice package attached to the Asbestos Bar Date Order outlined six different methods by which Unmanifested Asbestos Claimants could submit their proofs of claim and clearly explained the substantive requirements for filing a proof of claim.[28]

Approximately 30,000 proofs of claim were filed in response to notice of the Asbestos Bar Date.[29] Of that, approximately 14,000 were Unmanifested Asbestos Claims, of which approximately 10,000 were filed against the EFH/EFIH Debtors.[30]

### D. Challenges to the Asbestos Bar Date and Related Timeline

Two asbestos plaintiffs filed the *Motion of Charlotte Liberda and Curtis Liberda To Appoint Legal Representative*, requesting that the Court appoint a representative for unmanifested asbestos claimants on all issues before the Court, which motion was denied.[31] Due process objections were also raised by certain asbestos claimants to one of the Debtors' proposed plans on the basis that the plan did not include a section 524(g) channeling injunction to address the claims of Unmanifested Asbestos Claimants, which objections were also overruled.[32] In December 2015, certain unmanifested claimants requested that the Court certify a class of Unmanifested Asbestos Claimants and sought

---

[28] D.I. 5171 ¶ 6] (first class mail, hand delivery, overnight mail, email, facsimile, and by internet website at www.EFHAsbestosClaims.com).

[29] *See* D.I. 14034 at ¶ 8.

[30] D.I. 12666 at ¶ 142.

[31] D.I. 5072 (motion); D.I. 5265 (order).

[32] D.I. 6610 at 20-26 (objection to the plan); D.I. 7255 at 57:16-63:7 (transcript wherein Court overruled the due process objection).

to file a class proof of claim on behalf of all Unmanifested Asbestos Claimants.[33]  The Court denied this motion.[34]  The Court was affirmed in a published opinion, which found that "the class proof of claim would . . . negate the bar date."[35]

Mr. Heinzmann was diagnosed with mesothelioma on July 15, 2016, which was after the Asbestos Bar Date.[36]  Thereafter, on November 3, 2016, Mr. Heinzmann filed a notice of intent to participate in plan confirmation proceedings for the EFH/EFIH Debtors.[37]  In December 2016, this Court denied a motion by asbestos claimants, including Mr. Heinzmann, to dismiss the chapter 11 cases of EECI, Inc., EEC Holdings, Inc., LSGT Gas Co. LLC, and LSGT SACROC, Inc. (the "LSGT Debtors").[38]  The Court also overruled an objection to the NextEra-backed plan filed by asbestos claimants, including Mr. Heinzmann.[39]

On September 11, 2017, the EFH/EFIH Debtors filed the Plan.

Mr. Bergschneider was diagnosed with mesothelioma on September 14, 2017, almost two years after the Asbestos Bar Date.[40]  On November 27, 2017, Mr.

---

[33] D.I. 7185.

[34] D.I. 7383.

[35] *In re Energy Future Holdings Corp.*, 558 B.R. 684, 687 (D. Del. 2016).

[36] D.I. 14055 at ¶ 8.

[37] D.I. 10030.

[38] D.I. 10074 (motion); 10414 (opinion); 10415 (order denying motion for reasons set forth in the opinion).

[39] D.I. 10757 (objection); D.I. 10865 (transcript from confirmation hearing Feb. 17, 2017).

[40] D.I. 14047 at 8.

Bergschneider filed a notice of intent to participate in the confirmation proceeding for EFH/EFIH Debtors.[41]

On December 19, 2017, Messrs. Bergschneider and Heinzmann filed their objection to confirmation of the Plan.[42]   On February 27, 2018, the Court confirmed the Plan.[43] During the confirmation process, the Court overruled Messrs. Bergschneider and Heinzmann's objection to the Plan.[44]   Thereafter, on March 9, 2018, the Plan for the EFH/EFIH Debtors went effective[45] (the "Effective Date").   Messrs. Bergschneider and Heinzmann then appealed from this Court's confirmation of the Plan.[46]   On January 24, 2019, following briefing, the District Court dismissed the appeal as statutorily moot under section 363(m) of the Bankruptcy Code.[47]   Messrs. Bergschneider and Heinzmann timely appealed to the Third Circuit.

---

[41] D.I. 12271.

[42] D.I. 12378.

[43] D.I. 12763.

[44] *See* D.I. 12770.  The Court held:

> [A]s I have ruled numerous times now in this case, I believe that the use of the asbestos bar date and notice program . . . was proper, was supported by the evidence, and was consistent with due process.  Applying that bar date to the discharge at this time I believe is also justified by the facts and is entirely appropriate and consistent with due process and applicable law.

D.I. 12770 (Trans. of Hr'g Feb. 27, 2019) at 229:18-230:3.

[45] D.I. 12801.

[46] D.I. 12799.

[47] *Fenicle v. Energy Future Holdings Corp. (In re Energy Future Holding Corp.)*, 596 B.R. 473 (D. Del. 2019).

On February 18, 2020, the Third Circuit affirmed this Court's confirmation of the

Plan and founds that due process had been satisfied by the Asbestos Bar Date.[48]   The

Third Circuit held:

> Appellants do not dispute that they received publication
> notice prior to the bar date.  EFH launched a multimillion-
> dollar notice plan to contact latent claimants and notify them
> of the impending bar date and the accompanying need to file
> a proof of claim.  All latent claimants who timely filed proofs
> of claim—and there were nearly 10,000 such claimants—were
> assured of retaining their ability to pursue their claims and,
> contrary to Appellants' argument that actual notice to all
> potential claimants was required, claimants who were
> unknown at the time of the discharge—such as Appellants—
> were entitled only to publication notice of a property
> deprivation . . . . We are also unpersuaded that EFH was not
> "desirous of actually informing" latent claimants of the bar
> date, . . . ; to the contrary, it employed a noticing expert,
> "follow[ed] the principles in the Federal Judicial Center's ...
> illustrative model forms of plain language notices," JA 392,
> and published notice in seven consumer magazines, 226 local
> newspapers, three national newspapers, forty-three Spanish-
> language newspapers, eleven union publications, and five
> Internet outlets.  Under our case law, that publication was
> sufficient.[49]

On March 17, 2020, Mr. and Mrs. Bergschneider jointly filed four proofs of claim

against the LSGT Debtors.[50]   On April 20, 2020, Mr. and Mrs. Bergschneider filed their

Motion, attaching the proofs of claim, as well as an affidavit by Mr. Bergschneider.[51]

---

[48] *In re Energy Future Holdings Corp.*, 949 F.3d 806 (3d Cir. 2020).

[49] *Id.* at 822–23.

[50] D.I. 14047-2, -3, -4, -5.

[51] D.L. 14047.

On April 28, 2020, Mrs. Heinzmann, surviving spouse of Mr. Heinzmann, filed four proofs of claim against the LSGT Debtors.[52]  On May 1, 2020, Mrs. Heinzmann filed her Motion, attaching the proofs of claim and an affidavit by Mr. Heinzmann.[53]

## LEGAL DISCUSSION

### A.    Notice of the Bar Date

The Movants argue that they never received notice of the bar date and, as a result, the Movants did not have due process of the Asbestos Bar Date.

As this Court stated:

> "A bar date serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate, and the general amount of the claims, a necessary step in achieving the goal of successful reorganization. It is akin to a statute of limitations, and must be strictly observed."  This rule "contributes to one of the main purposes of bankruptcy law, securing, within a limited time, the prompt and effectual administration and settlement of the debtor's estate."[54]

In *Grossman's*, the Third Circuit applied this rule in holding that a claimant's pre-petition exposure to a product, such as asbestos, gives rise to the claim, even though the injury manifests after the reorganization.[55]  The Third Circuit continued that this does not

---

[52]  D.I. 14055-2, -3, -4, -5.

[53]  D.I. 14055.

[54]  *In re Energy Future Holdings Corp.*, 522 B.R. at 526–27 (footnotes omitted; *quoting In re Victory Mem'l Hosp.*, 435 B.R. 1, 4 (Bankr. E.D.N.Y. 2010) (internal quotation marks and citations omitted) and *In re Smidth & Co.*, 413 B.R. 161, 165 (Bankr. D. Del. 2009) (citations omitted).

[55]  *In re Grossman's Inc.*, 607 F.3d 114, 125 (3d Cir. 2010).

necessarily mean that a claimant's claims are discharged by the plan confirmed in the case.    Rather, due process considerations could revive a claim.[56]    In other words, inadequate notice would preclude discharge of a claim in bankruptcy.[57]

The Third Circuit specifically held that publication notice was adequate in these cases.[58]   "'The proper inquiry in evaluating notice is whether a party acted reasonably in selecting means likely to inform persons affected, not whether each person actually received notice.'"[59]   "Further, unknown creditors entitled to only publication notice cannot blame their ignorance on the fact that they did not receive actual notice: because Appellants did 'not read the legal section of the newspaper and did not read the legal section of the newspaper that published the bar date order in this case is not controlling.'"[60]   Here, as previously ruled upon by the Third Circuit, in an appeal *taken by the Movants*, among others, publication notice was sufficient and adequate under the circumstances.

Furthermore, the Movants are both in a unique circumstance as they participated in these cases and were both represented by law firms that actively participated in the

---

[56]  *Id.* at 125.

[57]  *Id.* at 126 ("Without notice of a bankruptcy claim, the claimant will not have a meaningful opportunity to protect his or her claim.") (citations omitted).  *See also In re Energy Future Holdings Corp.*, 522 B.R. at 528.

[58]  *See* n. 49, *supra*.

[59]  *In re Weiand Auto. Indus.*, 612 B.R. 824, 850 (Bankr. D. Del. 2020) (*quoting In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 48-49 (Bankr. D. Del. 2012) (citations omitted)).

[60]  *PacifiCorp & Van Cott Bagley Cornwall & McCarthy v. W.R. Grace*, No. CIV.A.05-764, 2006 WL 2375371, at *14 (D. Del. Aug. 16, 2006) (*quoting In re Trump Taj Mahal Assocs.*, 156 B.R. 928, 940 (Bankr. D.N.J. 1993)).

objection to and formulation of a noticing plan for Unmanifested Asbestos Claimants.  As

the Court has previously found, notice of the Asbestos Bar Date was adequate in the

circumstances of these cases.  Once again, the Court finds that notice of the Asbestos Bar

Date was proper, was supported by the evidence, and was consistent with due process.

However, that only leads to the next stage of the analysis, whether the Movants

can demonstrate excusable neglect for not filing claims prior to the Asbestos Bar Date.

**B.    Filing Late-Filed Proofs of Claim**

The bankruptcy court may allow the filing of an untimely Proof of Claim after the

bar date only where the claimant's failure to timely file a Proof of Claim was due to

excusable neglect.[61]

> [T]he bankruptcy court's discretion to extend time is limited
> to two situations—requests made before the expiration of the
> originally prescribed time limitation, and where failure to act
> was due to excusable neglect.  The court has no discretion to
> grant an extension simply because no prejudice would result,
> or for any other equitable reason.[62]

Although the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure do not

define "excusable neglect"

> the United States Supreme Court has found that "[through]
> Rule 9006(b)(1), Congress plainly contemplated that the
> courts would be permitted, where appropriate, to accept late
> filings caused by inadvertence, mistake, or carelessness, as
> well as by intervening circumstance beyond the party's

---

[61] *Trump Taj Mahal Assocs.*, 156 B.R. at 936 (*citing In re Vertientes, Ltd.*, 845 F.2d 57, 60 (3d Cir.1988)).

[62] *Vertientes, Ltd.*, 845 F.2d at 60 (citations omitted).

control" . . . and that "the enlargement of prescribed time periods under the 'excusable neglect' standard of Rule 9006(b)(1) is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." [63]

Hence, by empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.[64]

In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, a creditor's attorney received notice of a creditors meeting from the bankruptcy court shortly after the debtor filed its chapter 11 cases.[65]  The notice also contained the bar date for filing claims in the cases.[66]  The attorney was in the middle of withdrawing from his law firm and did not appreciate that the creditors meeting notice also contained the bar date and failed to timely file a claim.[67]  The attorney filed the claim and a motion to allow

---

[63] *Trump Taj Mahal Assocs.*, 156 B.R. at 937 (*citing and quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388, 113 S. Ct. 1489, 1495, 123 L. Ed. 2d 74 (1993)).

[64] *Pioneer*, 507 U.S. at 388 ("Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* at 392 (footnotes and citations omitted).

[65] *Id.* at 383-84.

[66] *Id.*

[67] *Id.* at 384.

15

a late filed proofs of claim only 20-days after the bar date.[68]  The Supreme Court found

four relevant factors that courts should consider in evaluating "excusable neglect": "the

danger of prejudice to the debtor, the length of the delay and its potential impact on

judicial proceedings, the reason for the delay, including whether it was within the

reasonable control of the movant, and whether the movant acted in good faith."[69]  The

Supreme Court held:

> Because Congress has provided no other guideposts for
> determining what sorts of neglect will be considered
> "excusable," we conclude that the determination is at bottom
> an equitable one, taking account of all relevant circumstances
> surrounding the party's omission.[70]

After considering the relevant factors, the Supreme Court in *Pioneer* held that the

attorney's neglect in not filing the claims timely was excusable.[71]

Courts take a "hard line" when applying the *Pioneer* test,[72] and have placed the

emphasis in their analysis on the "reason" for the delay.[73]  Furthermore, "[t]he burden of

---

[68]  *Id.*

[69]  *Id.* at 395 (citation omitted).

[70]  *Id.* (footnote omitted).

[71]  *Id.* at 398.

[72]  *In re Nortel Networks Inc.*, 573 B.R. 522, 527 (Bankr. D. Del. 2017) (citations omitted).

[73]  *Id.* (citations omitted) (finding that "the four *Pioneer* factors do not carry equal weight and that the excuse for a late filing is most important."); *see also Midland Cogeneration Venture Limited Partnership v. Enron Corp. (In re Enron Corp.)*, 419 F. 3d 115, 123 (2d Cir. 2005) (citations omitted).

proving excusable neglect lies with the late-claimant."[74]   Thus, the Movants bear the

burden of proving excusable neglect for their late-filed claims.

As instructed by the *Pioneer* Court, the Court will take each factor in turn in

determining whether the Movants' delay was excusable.

     *i.*   *Prejudice to the Debtors*

In evaluating prejudice to the Debtors, courts are instructed to consider several

relevant factors, including:

> (i) whether the debtor was surprised or caught unaware by
> the assertion of a claim that it had not anticipated, (ii) whether
> the payment of the claim would force the return of amounts
> already paid out under the confirmed plan or affect the
> distribution to creditors; (iii) whether payment of the claim
> would jeopardize the success of the debtor's reorganization;
> (iv) whether allowance of the claim would adversely impact
> the debtor actually or legally; and (v) whether allowance of
> the claim would open the floodgates to other future claims.[75]

The Debtors assert that they relied upon the universe of claims against the EFH/EFIH

Debtors as defined by the Asbestos Bar Date.   Although allowed asbestos claims passed

through the Plan unimpaired upon confirmation, the Debtors utilized the Asbestos Bar

Date in establishing a liability amount for the purchaser of the Debtors' assets by Sempra

Energy.   As this Court held:

> "[t]he objectives of finality and fixing the universe of claims
> permeate the law of bankruptcy, and in achieving those ends,

---

[74] *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000) (citation omitted).

[75] *New Century TRS Holdings, Inc.*, 465 B.R. at 51 (citations omitted).

> the setting of a bar date is no more unfair, assuming
> reasonable notice, than is a statute of limitations, a finality
> concept firmly embedded in our legal system generally.  Tort
> claimants can have their right to pursue their claims
> foreclosed if they fail to take action before the expiration of a
> statute of limitations. It is no more unfair to require that they
> here take action before expiration of the bar date."[76]

"'Prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a

conclusion based on facts in evidence.'"[77]

As the Debtors argue, if the Movants had filed proofs of claim prior to the Asbestos

Bar Date or even before consummation of the sale to Sempra, the Movants' claims would

have been properly accounted for by the Debtors and Sempra Energy.  The Movants'

assert that there would be no prejudice to the Debtors as late-filed claims were always

"expected" with the Asbestos Bar Date.  The Movants' look to the Third Circuit's recent

decision in these cases which held:

> all latent claimants will have the *opportunity to show that*
> reinstatement of their claims would pose no "danger of
> prejudice" to the debtors here. As we have explained, the
> prospect of a post-confirmation procedure allowing for
> reinstatement was baked into the merger agreement, and
> Rule 3003(c)(3) provides that procedure. Reinstatement of
> latent claims under Rule 3003(c)(3) thus would appear not to

---

[76] *Energy Future Holdings Corp.*, 522 B.R. at 527 (*quoting In re Eagle-Picher Indus., Inc.*, 137 B.R. 679, 682 (Bankr. S.D. Ohio 1992)). *See In re Garden Ridge Corp.*, 348 B.R. 642, 646 (Bankr. D. Del. 2006) (citations and internal quotation marks omitted) (finding no prejudice to the debtor as the claim was scheduled, albeit in a lower amount, and the claim having been filed a week after the bar date).

[77] *In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 614 (Bankr. D. Del. 2006) (*quoting In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999)).

> not alter the expectations the parties had at the time they
> agreed to the merger.[78]

The Movants' continue that the asbestos claim reconciliation process has not commenced,

no distributions have been made to asbestos claimants, who are unimpaired pursuant to

the Plan, and there would be no impact to the Debtors, as Sempra assumed the liability.

The burden is on the Movants' to show that there was no danger of prejudice to

the Debtors.  Although late-filed asbestos claims have always been somewhat expected

by the Court and the Debtors, here the Debtors *must* be surprised by the Movants' claims.

Here, instead of filing proofs of claim and seeking relief from the Asbestos Bar Date after

their respective diagnoses, the Movants elected to prosecute multiple challenges to the

Asbestos Bar Date.  These Movants have been participating in these cases for years and

---

[78] *Energy Future Holdings Corp.*, 949 F.3d at 823 (emphasis added).  In fact, this Court contemplated the same in its Asbestos Bar Date Opinion:

> Here, the Court is not looking back to determine if adequate due process was given to an unknown claimant. In the look-back cases, courts have the benefit of knowing the contents of the notice, the number of times the notice was published, and in which publications the notice was published. In fact, in a look-back scenario, courts have the benefit of knowing the terms of the plan and whether, in fact, there are Unmanifested Claimants. Obviously, this Court does not have this information (as above stated, the Debtors agreed to narrow the issues herein to whether a bar date may be established for Unmanifested Claimants; the issues related to content and scope of the notice have been continued).  The posture of this issue is akin to the bankruptcy court's ruling in *Chemtura Corp.*  As such, the Court must consider what it does know.

*Energy Future Holdings Corp.*, 522 B.R. at 537 (footnotes and citations omitted).

19

have never asserted a manifested asbestos claim despite repeated questioning by the Debtors.[79]

Although surprised, many of the other suggested elements are not present (such as return of amounts already paid or causing jeopardy to the success of the Debtors' reorganization). However, as discussed here, these Movants have troubling facts to contend with – if the Court would allow these claims under these circumstances, the Court is confident that the floodgates of additional claims would open. Although the Court believes that the notice of the Asbestos Bar Date was widely disseminated and meets due process, these facts facing the Court are such that *any* late-filed asbestos claim would be acceptable, thus, eviscerating the very Asbestos Bar Date that was established in these cases. As a result, the Court finds that there would be prejudice to the Debtors.

    *ii.*    *Reasonableness of Delay*

The Movants' assert that their respective delays in filing their proofs of claim relate to the lack of notice provided by the Debtors as well as the fact that neither could have understood the importance of the notice in December of 2015.

---

[79] This strategy was questioned many times by the Reorganized EFH/EFIH Debtors. *See* D.I. 12666 (02/17/2018) ¶ 140 ("Inexplicably, however, none of the Asbestos Objectors who failed to timely preserve their unmanifested asbestos claims has attempted to submit a late-filed proof of claim."); Appellees' Motion to Dismiss Appeal and Response to Appellants' Principal Brief, at 36-38, *Fenicle v. Energy Future Holdings Corp. (In re Energy Future Holding Corp.)*, 596 B.R. 473 (D. Del. 2019) (No. 18-381) (ECF No. 40) ("None of the remaining Appellants have even attempted to file a proof of claim or seek relief from the Asbestos Bar Date Order in the Bankruptcy Court, which relief is available upon a showing 'for cause.'"); Appellees' Brief, at 42-43, *In re Energy Future Holdings Corp.*, 949 F.3d 806 (3d Cir. 2020) (No. 19-1430) ("The remaining Appellants' claims are not ripe for appeal because none have even attempted to file a proof of claim or seek relief from the Asbestos Bar Date Order in the Bankruptcy Court.").

Mr. Bergschneider's motion was filed 41 months (July 2016 to March 2020) and Mr.

Heinzmann's motion was filed 29 months (September 2017 to April 2020) after they were

diagnosed with asbestos-related illnesses.  Furthermore, both Movants, and their counsel,

participated actively in these cases.

In *In re Nortel Networks Inc.*, the claimant filed an original proof of claim for

approximately $22,500 for contractual royalties and then proceeded to amend the proof

of claim five (5) times, including adding affiliate companies seven years after the bar date,

to arrive at a claim of approximately $81 million for copyright infringement damages.[80]

Evidence presented by the claimant was that the claimant believed that the original claim

covered both affiliates' claims.[81]  The *Nortel* court held that the explanation of why the

affiliate "did not join in the claims shows that the mistake was not 'excusable.'  Ignorance

of the law is not excusable neglect."[82]  The *Nortel* court first decided that the claim was

not an "amended claim" and then evaluated whether the claimant could file a late-filed

claim.  The *Nortel* court found that the claimant made a "conscious, deliberate decision

that they would not name [their affiliate] as a claimant. The decision 'was within the

---

[80] *Nortel Networks Inc.*, 573 B.R. at 525.

[81] *Id.* at 526 (The Claimant asserted that "[i]n hindsight, Dr. Case recognizes that he should have asked to file separate proofs of claim for SNMPR when the First Amended NNI Claim was filed by SNMPRI in October 2010 asserting unlicensed uses of the Software, shortly after it was first discovered that the Software was being used outside the scope of the Nortel License.  Dr. Case's failure to seek to file separate proofs of claim for SNMPR in October 2010 was based on his mistaken belief at the time that SNMPRI's proofs of claim were sufficient to cover violations of both SNMPRI's and SNMPR's rights in the Software, given that SNMPRI was the party to the Nortel License.").

[82] *Id.*

reasonable control of the movant.'"[83]    The *Nortel* court, in discussing the adversary

proceeding pending between the *Nortel* debtors and the claimants, continues that the

claimant made a "deliberate decision which turned out to be an error in judgment."[84]    In

other words, "[i]f individual creditors were permitted to postpone indefinitely the effect

of a bar order so long as adversary proceedings were pending, the institutional means of

ensuring the sound administration of the bankruptcy estate would be undermined."[85]

"The length of the delay must be examined in 'absolute terms' or in an 'absolute

sense,' meaning that the extent of the delay should be considered in isolation."[86]

In *Jones v. Chemetron Corp. (Chemetron II)*, the Third Circuit, applying *Pioneer*,

reviewed the standard for a late-filed claim.[87]    In that case, the debtors had incurred

prepetition liability as a result of uranium contamination on or near former property of

the business.[88]    After the debtors filed for chapter 11, a bar date was set for May 31, 1988,[89]

---

[83]  *Id.* at 528.

[84]  *Id.* at 528-29 ("Even were the Court to accept the "mistake" argument (which the Court does not accept, because SNMP made a deliberate decision which turned out to be an error in judgment), a mistake does not open the door to an amendment of the long-standing Original Claim filed in 2009.  Rule 17 does not provide a remedy for a very late filed claim. The "mistake" in not naming SNMPR as a claimant is not an 'understandable mistake.'" (citations omitted)).

[85]  *In re Hooker Investments, Inc.*, 937 F.2d 833, 840 (2d Cir. 1991).  *See also Hefta v. Official Comm. Of Unsecured Creditors (In re Am. Classic Voyages Co.)*, 405 F.3d 127, 134 (3d Cir. 2005) (under *Pioneer*, imputing the actions of counsel to a late filing creditor and concluding "that the delay in this case was entirely avoidable and within [the creditor's] control").

[86]  *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 332 (3d Cir. 2012) (*quoting In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 129–30 (3d Cir. 1999)).

[87]  212 F.3d 199 (3d Cir. 2000).

[88]  *Id.* at 202-03.

[89]  *Id.* at 202.

and a plan confirmed July 12, 1990.[90]  But, four years after the bar date, a group of residents brought suit in state court for injuries caused by the contamination, and ended up in bankruptcy court seeking leave to allow their late claims.[91]  After the Third Circuit "ruled that the plaintiffs had received sufficient notice of the bankruptcy proceeding," it "remanded to the bankruptcy court . . . to determine whether the plaintiffs should still be permitted to file their claims based on excusable neglect."[92]  On appeal again to the Third Circuit, the court affirmed that plaintiffs had not demonstrated excusable neglect, and rejected the argument that the claimants "had no way of knowing that they had a claim against Chemetron prior to the 1988 bar date," noting that the "burden of proving excusable neglect lies with the late-claimant," and that "ignorance of one's own claim does not constitute excusable neglect."[93]  The court noted the "contamination generally was known in the community in the early 1980's, and that some residents publicly expressed concerns about the health effects of these toxins in press accounts and at public meetings."[94]

Furthermore, in *Silva v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.)*,[95] the court found that publication notice was sufficient for unknown

---

[90] *Id.* at 203.

[91] *Id.* at 201.

[92] *Id.* at 201 (*citing Chemetron I*, 72 F.3d 341).

[93] *Id.* at 205 (*citing Best Prods.*, 140 B.R. at 359)

[94] *Id.*

[95] No. 07-10416 (BLS), 2014 WL 925379 (Bankr. D. Del. Mar. 7, 2014).

claimants and that a delay in four years from the bar date and nine months from learning of the debtors' bankruptcy was inexcusable neglect.[96]

Similarly, in *In re Majestic Holdco, LLC*,[97] the claimant provided electricity to one of the debtors. The claimant discovered meter-reading errors and, as a result of a lengthy audit process, filed its motion to enlarge time to file its claim five months after discovering the errors.[98] As a result, the claimant filed its pre-petition claim twenty months after the Bar Date and filed its administrative payment claim nearly eight months after the Bar Date. The *Majestic Holdco* court found the delay in these claims was inexcusable, finding

> Adding insult to injury, Entergy did not file the Motions to Enlarge until five months had passed from discovering the meter malfunction. What is especially egregious is that Entergy took more time from discovery to filing five months versus 45 and 60 days, the bar dates the Court set for pre-petition and administrative claims, respectively. Moreover, the Court confirmed the Debtors' plan for reorganization on

---

[96] *Id.* at *6 (finding the claimant "was an unknown creditor, he was not entitled to actual notice of the Bar Date. Because he received constitutionally adequate notice of the Bar Date by publication, his delay in filing a proof of claim four years after the Bar Date (and nine months after being advised of the Debtors' bankruptcy filing) does not constitute excusable neglect."). *See also Toscano v. RSH Liquidating Tr. (In re RS Legacy Corp.)*, 577 B.R. 134, 140 (Bankr. D. Del. 2017) (holding that claimant was not entitled to file late claim on "excusable neglect" theory for unpaid accrued vacation benefits earned prior to debtor's bankruptcy; after becoming aware of potential claim via vacation policy update document, claimant did nothing to investigate or pursue the claim for close to a year, no reason was proffered for the delay, and prejudice would result in potential other late claimants that would adversely impact the liquidating trustee's economic models and any progress in claims administration made thus far.).

[97] No. 09-14142 KG, 2013 WL 653091, at *1 (Bankr. D. Del. Feb. 21, 2013).

[98] *Id.*

March 1, 2011, and most of the Debtors' cases were closed on September 27, 2012.[99]

The use of the procedures established by Bankruptcy Rules 9006 and 3003 has been well-established for decades.[100] In any event, "[i]gnorance of the law is not excusable neglect."[101] Further, regardless of whether other litigation may be ongoing, a late claimant must promptly file their proofs of claim and seek leave from the court to allow the late claims.[102]

Here, the timeline is what will ultimately guides the Court's decision – not only does the Court find that the timing of the filing of the asbestos claims was due to gamesmanship; but it was done in full knowledge of the bankruptcy cases, the Asbestos Bar Date, and then only *after* the Unmanifested Asbestos Claimants exhausted all of their appellate rights in challenge after challenge to the Asbestos Bar Date. Movants' delay was not excusable neglect.  As this Court is exhaustively familiar with the events in these

---

[99] *Id.* at *3  (footnotes omitted).  *See also In re Goody's Family Clothing, Inc.*, 443 B.R. 5, 16 (Bankr. D. Del. 2010) (finding that "the true length of the delay was roughly 5 months. Courts have held that comparable delays weigh against the movant. In addition, the delay takes on added significance when a plan of reorganization was confirmed in the interim." (footnotes omitted)); *In re Enron Corp.*, 298 B.R. 513, 526 (Bankr. S.D.N.Y. 2003); ("length of delay in filing the Proof of Claim here is substantial, that is, it was filed more than six months after Bar Date."); *In re XO Communications*, 301 B.R. 782, 797 (Bankr. S.D.N.Y. 2003) (finding that a delay of four months weighed against permitting a late proof of claim).

[100] *Pioneer*, 507 U.S. at 395 (1993).

[101] *Nortel Networks*, 573 B.R. at 526.

[102] *See State Dep't of Envtl. Prot. v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, BANKR. 01-1139 (JKF), 2008 WL 687357, at *4 (D. Del. Mar. 11, 2008) ("The NJDEP's counsel argued to the Bankruptcy Court that it did not file a proof of claim at this time because it thought it would litigate the claim, settle it, or at least have the penalty fixed before the NJDEP filed in the Bankruptcy Court because it had already missed the Bar Date. . . . [T]he reason provided by the NJDEP is not compelling and was entirely within its control.").

cases, it will summarize the timeline below of the most pertinent events over the last six

years:

| Date | Event |
|------|-------|
| April 29, 2014 | Petition Date |
| July 23, 2014 | Debtors' filed motion to establish a bar date for all asbestos claims. |
| October 14, 2017 | The United States Trustee formed a Committee of Unsecured Creditors for EFH/EFIH, whereon two of the five members are asbestos claimants. |
| October 28, 2014 | The Court heard argument on whether to establish a bar date for unmanifested asbestos claimants. |
| January 7, 2015 | The Court issued the Asbestos Bar Date Opinion allowing for the establishing of a bar date for unmanifested asbestos claimants. |
| July 30, 2015 | The Court issued the Asbestos Bar Date Order. (It bears noting that no appeal was taken from this order.) |
| August 11, 2015 | Court denied a motion to appoint a separate legal representative for Unmanifested Asbestos Claimants. |
| December 3, 2015 | Court overruled due process objections raised by asbestos claimants to the proposed Hunt Plan because it did not include a section 524(g) channeling injunction to address the claims of Unmanifested Asbestos Claimants. |
| December 14, 2015 | Asbestos Bar Date |
| September 28, 2016 | Court denied a motion by certain asbestos claimants to file a class proof of claim on behalf of all unfiled/untimely asbestos claimants. |
| July 15, 2016 | Mr. Heinzmann was diagnosed with mesothelioma. |
| **November 2, 2016** | Mr. Heinzmann filed a notice of intent to participate in plan confirmation proceedings for EFH/EFIH Debtors. |
| December 16, 2016 | The Court denied a motion by asbestos claimants, including Mr. Heinzmann, to dismiss the LSGT Debtors' chapter 11 cases. |
| February 17, 2017 | Court overruled an objection to the NextEra-backed asbestos claimants, including Mr. Heinzmann. |
| September 11, 2017 | EFH/EFIH Debtors filed the Plan. |
| September 14, 2017 | Mr. Bergschneider was diagnosed with mesothelioma. |
| **November 27, 2017** | Mr. Bergschneider filed a notice of intent to participate in the confirmation proceedings for EFH/EFIH Debtors. |

| Date | Event |
|------|-------|
| December 19, 2017 | Messrs Bergschneider and Heinzmann filed their objection to confirmation of the Plan. |
| February 27, 2018 | The Court confirms the Plan and overrules Messrs. Bergschneider and Heinzmann's objection to the Sempra-Energy backed Plan. |
| March 9, 2018 | The EFH/EFIH Plan went effective. |
| March 9, 2018 | Messrs. Bergschneider and Heinzmann appealed from the confirmation order. |
| January 24, 2019 | Following briefing, the District Court dismissed the appeal as statutorily moot under section 363(m) of the Bankruptcy Code. |
| February 22, 2019 | Messrs. Bergchneider and Heinzmann appealed to the Third Circuit. |
| February 18, 2020 | The Third Circuit affirmed this Court's confirmation of the Plan and found that due process had been satisfied by the Asbestos Bar Date. |
| March 17, 2020 | Mr. and Mrs. Bergschneider jointly filed four proofs of claim against the LSGT Debtors. |
| April 20, 2020 | Mr. and Mrs. Bergschneider filed their Motion which is subject of this Opinion. |
| April 28, 2020 | Mrs. Heinzmann, surviving spouse to Mr. Heinzmann, filed four proofs of claim against the LSGT Debtors. |
| May 1, 2020 | Mrs. Heinzmann filed her motion which is the subject of this Opinion. |

As highlighted above, both Mr. Bergschneider and Mr. Heinzmann began participating in these cases within months of their respective diagnoses as *Unmanifested Asbestos Claimants* – they participated in motion practice, objections, argument, and appeals as *Unmanifested Asbestos Claimants*, and although both had received asbestos-related diagnoses, they chose not to file claims or motions to enlarge the time to file claims for years; *and then* only filing these claims upon exhausting their appellate rights.  As the Supreme Court reasoned in *Pioneer* the "reasonableness" of "neglect" is to "deter creditors or other parties from freely ignoring court-ordered deadlines in the hopes of

winning a permissive reprieve under Rule 9006(b)(1)."[103]  As in *Nortel Networks*, the delay in filing the Movants' respective claims was "within the reasonable control of the movant[s]."[104]  "If individual creditors were permitted to postpone indefinitely the effect of a bar order . . . [while they completed their other litigation with the debtors], the institutional means of ensuring the sound administration of the bankruptcy estate would be undermined."[105]  Similarly, the *Hooker* court's analysis was based on the conflict facing a plaintiff who wished to invoke the equitable jurisdiction of the Bankruptcy Court for some purposes, but not for others.[106]

Although this Court has always envisioned litigation related to late-filed asbestos claims, here, the delay was tactical.  This is not to say that the Court is not sympathetic to the plights of both Mr. Bergschneider and Mr. Heinzmann and their families; the Court is extremely sensitive to the physical and emotional tolls asbestos-related diseases cause. However, in these specific circumstances, the Court finds that the length of delay is simply unreasonable.

---

[103]  *Pioneer*, 507 U.S. at 395.

[104]  *Nortel Networks Inc.*, 573 B.R. at 528 (*citing Pioneer*, 507 U.S. at 395)).

[105]  *Hooker Investments, Inc.*, 937 F.2d at 840.

[106]  *See also Connolly v. Bidermann Indus. U.S.A., Inc.*, No. 95 CIV. 1791 (RPP), 1996 WL 325575, at *5 (S.D.N.Y. June 13, 1996) (holding that "the plaintiff is not entitled to postpone the effects of the Bar Order, despite the fact that compliance may limit the availability of a jury trial.").

### iii.    Impact on Judicial Proceedings

Here, both the EFH/EFIH Debtors and Sempra reasonably relied upon the universe of claims filed against the EFH/EFIH Debtors, pursuant to the Asbestos Bar Date. Both Movants could easily have filed their albeit-late claims prior to the effective date of the Plan.

In addition to the actual amount of time that passed between the Bar Date and the late filing, the Third Circuit stated that courts should consider the "length of delay in absolute terms."[107]  In *In re O'Brien*, for example, the actual delay was only two months (i.e., the claim was filed two months after the Bar Date), but, in that two months, the debtor's plan became effective. As such, the actual delay took on "significance mainly because of the intervening occurrence of the effective date of the Plan . . . ."[108] The Third Circuit held that the delay "should not be held to turn entirely on the urgency created by the debtor's time line. Such an approach makes the two month delay seem significant, whereas a similar delay [in another case] . . . would be insignificant."[109]

---

[107] *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 130 (3d Cir. 1999).

[108] *Id.*

[109] *Id.* (citations omitted). *See also In re Goody's Family Clothing, Inc.*, 443 B.R. 5, 16 (Bankr. D. Del. 2010) ("In addition, the delay takes on added significance when a plan of reorganization was confirmed in the interim." (footnotes omitted)). *PacifiCorp & Van Cott Bagley Cornwall & McCarthy v. W.R. Grace*, No. CIV.A.05-764, 2006 WL 2375371, at *13 (D. Del. Aug. 16, 2006) ("The Court acknowledges that in many cases where excusable neglect arguments are rejected, the late claimants have filed after the confirmation date." (citations omitted)); *See, e.g., Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000) (excusable neglect argument rejected where late claimants filed two years after the confirmation date); *In re Trump Taj Mahal Assocs.*, 156 B.R. 928, 938 (Bankr. D.N.J. 1993) ("The bar date in a Chapter 11 reorganization performs an important purpose; it not only allows the trustee or debtor-in-possession to estimate the debtor's potential liabilities, it is also essential in formulating a viable reorganization plan. Without a final claims deadline,

Here, not only do we have a significant delay; but in that delay, the Plan has gone effective and Sempra is now running the EFH/EFIH Debtors' business.  Furthermore, the Asbestos Bar Date defined the potential liability being taken on by Sempra and was part-and-parcel to the transaction with Sempra.  The impact proscribed by *Pioneer* is to the "judicial proceedings" and not limited to singular consideration of the financial impact on the Debtors, but to the judicial proceedings overall, and in these cases, the impact on the judicial proceeding caused by not on the length of time, but also the facts and circumstances discussed above, weighs in favor of the Debtors.

    iv.    *Good Faith*

The final Rule 3003(c)(3) factor is good faith.[110]  In affirming the Plan Confirmation Order in this case, the Third Circuit noted that "bar[ring] any bad-faith latent claims would not offend due process."[111]

Even if the length of the delay is justified under *Grossman's*, the Movants exhibited bad faith by waiting to file claims until after the Third Circuit's decision, despite knowing about and participating in the Debtor's bankruptcy process.  The Court is persuaded that such delay was either a "strategic attempt to preserve appellate standing," as alleged by

---

participants in the reorganization process would be hindered by undue caution in their negotiations and in voting on the plan, and, in the instant case, the debtors carrying out the provisions of the confirmed plan.").

[110] *See Pioneer*, 507 U.S. at 395.

[111] *Energy Future Holdings Corp.*, 949 F.3d at 824 n. 11.

the debtors,[112] or a simple mistake.  Not filing a claim as a litigation tactic is bad faith, and

that finding mitigates against finding excusable neglect.[113]  Movants "chartered their own

fate by their tactical decision to actively participate in this case . . . and yet ignored the

status of their claim."[114]  "[A] creditor having actual knowledge of a chapter 11 case may

not lie behind the log and delay seeking an extension of time for filing a claim to the

prejudice of the debtor and other creditors."[115]  And if the delay in filing a claim was not

strategic but accidental, an attorney's mistake creates a malpractice claim, but does not

constitute excusable neglect.[116]  As a result, this factor also weighs in favor of inexcusable

neglect.

In sum, all four factors support finding that the failure of the Movants to timely

file their claims did not arise from excusable neglect.

## C.    Notices of Intent to Participate are not Informal Proofs of Claim

The Movants suggest that their filing of their respective notices to participate in

the confirmation process were "informal" proofs of claim.[117]  Rule 3002(a) of the Federal

Rules of Bankruptcy Procedure provides that "[a] secured creditor, unsecured creditor or

---

[112] D.I. 14060 at para. 52.

[113] *In re Smidth & Co.*, 413 B.R. 161, 168 (Bankr. D. Del. 2017).

[114] *In re Burke*, 76 B.R. 62, 64 (Bankr. D. Vt. 1987).

[115] 9 Collier on Bankruptcy ¶ 3003.03[4] n.44 (16th ed. 2020).

[116] *In re Settlement Facility Dow Corning Trust*, No. 07-CV-14898, 2008 WL 4427520, at *2 (E.D. Mich. Sept. 30, 2008).

[117] D.I. 10030 (Heinzmann); D.I. 12271 (Bergschneider) (collectively, the "Notices of Intent").

equity security holder must file a proof of claim or interest of the claim or interest to be allowed," with a few exceptions not relevant here."[118]  Rule 5005(a)(1) permits a creditor to submit either a formal or informal proof of claim.[119]  Courts use a five-part test, rooted in the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, to determine whether a document will qualify as an informal proof of claim in bankruptcy: "(1) if it is in writing, (2) contains a demand by the creditor on the bankruptcy estate, (3) expresses an intent to hold the debtor liable for the debt, (4) the document is filed with the bankruptcy court," and (5) "the bankruptcy court determines that it is equitable to treat the document as a proof of claim."[120]

A creditor must "specify, among other things, the date debt was incurred and the total amount of her claim, as well as to attach documents that show the debtor owes the debt claimed."[121]  "Mere notice of a claim alone is not to be called an informal proof of claim . . . [instead], the alleged demand must be sufficient to put the debtor and/or the court on notice as to the existence, nature and amount of the claim (if ascertainable)."[122]

---

[118] Fed. R. Bankr. P. 3002(a).

[119] *Hefta v. Official Comm. of Unsecured Creditors* (*In re Am. Classic Voyages Co.*), 405 F.3d 127, 132 (3d Cir. 2005) (citing Fed. R. Bankr. P. 5005(a)(1)).

[120] *Am. Classic Voyages Co.*, 405 F.3d at 131–32 (numbers added).

[121] *Id.* at 132 (citing Official Bankruptcy Form 10, 11 U.S.C.).

[122] *Id.* (internal quotations and citations omitted).

Neither of the Movants filed a proof of claim when they were diagnosed with mesothelioma.[123]  The Movants assert that the Notices of Intent filed by both Movants qualify as informal proofs of claim under *In re American Classic Voyages Co.*,[124] because the Notices of Intent "apprised the Court and all interested parties of the existence, nature, and amount of [the Movants'] claims" and expressed "intention to hold the debtors liable for the claims."[125]  The proofs of claim filed "earlier this year relate back to the Notices of Intent filed by" the Movants,[126] and presumably function as a formalization or amendment of the Notices of Intent.

Both Movants' Notices of Intent contain substantially the same language.  The Notices of Intent state that each Movant has personal injury claims against the Debtors arising from asbestos exposure.[127]  Each "was diagnosed with mesothelioma," "was not notified of, and was unaware of, the bar date in these cases, and did not file a proof of claim."  And "[if] the discharge provisions of the Debtors' plan were approved, [Movant's] claims against the Debtors for personal injury caused by exposure to asbestos . . . would, purportedly, be extinguished."[128]

---

[123] D.I. 14060, ¶¶ 24, 29.

[124] D.I. 14065, ¶¶ 1, 14, 19 (citing *Am. Classic Voyages Co.*, 405 F.3d at 132).

[125] D.I. 14065, ¶¶ 8–9.

[126] *Id.*, ¶ 1.

[127] D.I. 10030, ¶ 2 (Heinzmann), D.I. 12271, ¶ 3 (Bergschneider)

[128] D.I. 10030, ¶ 2 (Heinzmann), D.I. 12271, ¶ 4 (Bergschneider).

The Notices of Intent meet some, but not all, of the *In re American Classic Voyages Co.* factors, and therefore do not constitute informal proofs of claim. While the Notices of Intent are in writing and filed with the bankruptcy court (factors 1 and 4), they do not contain a demand on the bankruptcy estate or express an intent to hold the Debtors liable (factors 2 and 3). Instead, the Notices of Intent state matter-of-factly that the Movant has claims against the estate. This "mere notice" does not qualify as "an informal proof of claim."[129]

As a result, the Court finds that the Notices of Intent are not "informal proofs of claim."

## CONCLUSION

Publication notice of the bar date was adequate for the movants who were "unknown creditors" of the Debtors. Furthermore, the *Pioneer* factors weigh against a finding of excusable neglect. Although the prejudice to the Debtors is minimal, the length of delay, impact on the judicial proceedings, and lack of good faith all weigh heavily in favor of finding that the neglect in missing the bar date was not excusable. Furthermore, the Movants' Notices of Intent are not informal proofs of claim. As a result, the Court will deny both Motions. An order will be issued.

---

[129] *In re Am. Voyages Co.*, 405 F.3d at 132.