# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP, *et al.*, | Case No. 14-10979 (CSS) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF SERVICE OF SUBPOENA

**PLEASE TAKE NOTICE** that on May 12, 2021, a true and correct copy of *NextEra's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case* was served via process server on the Registered Agent:

### HAND DELIVERY
Corporation Service Company
Attn: Evercore Group LLC
251 Little Falls Dr
Wilmington, DE 19808

Dated: May 13, 2021
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
       mcguire@lrclaw.com

– and –

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

{932.002-W0064838.}

**FLEISCHMAN BONNER & ROCCO LLP**
Keith M. Fleischman (admitted pro hac vice)
James P. Bonner (admitted pro hac vice)
Joshua D. Glatter (admitted pro hac vice)
81 Main Street, Suite 515
White Plains, NY 10601
Telephone: (914) 278-5100
E-mail: kfleischman@fbrllp.com
       jbonner@fbrllp.com
       jglatter@fbrllp.com

*Counsel to NextEra Energy, Inc.*

B257 (Form 257 – Subpoena to Produce Documents, Information, or Objects to Permit Inspection in Bankruptcy Case or Adversary Proceeding) (12/13)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Reorganized Debtors. | ) (Jointly Administered) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIS INSPECTION OF PREMISES IN A AN BANKRUPTCY CASE

To:  Evercore Group LLC
55 East 52nd Street
New York, NY 10055

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:. **See Exhibit A**

| PLACE | DATE AND TIME |
|---|---|
| **FLEISCHMAN BONNER & ROCCO LLP** <br> 81 Main Street, Suite 515 <br> White Plains, NY 10601 <br> Attn: Tyler Van Put | May 27, 2021 at 10:00 a.m. (ET) |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to appear in the United States Bankruptcy Court at the time, date, and place set forth below to testify at a hearing or trial in this bankruptcy case. When you arrive, you must remain at the court until the judge or a court official allows you to leave.

| Place | Date and Time |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

{932.002-W0064829.}

B257 (Form 257 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: __Evercore Group LLC__
on *(date)* __5/12/21__ .

☒ I served the subpoena by delivering a copy to the named person as follows: __Lynanne Gares- Authorized to Accept Corporation Service Company 251 Little Falls Dr., Wilmington, DE 19808  @2:30 p.m.__
_____ on *(date)* __5/12/21__ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true and correct.

Date: __5/13/21__

*Server's signature*

John Garber - Process Server
*Printed name and title*

230 North Market Street, Wilmington, DE 19801
*Server's address*

Additional information concerning attempted service, etc.:

**EXHIBIT A**

**DEFINITIONS**

1.    **Bankruptcy Period.** The term "Bankruptcy Period" means the period from the filing of the Debtors' bankruptcy petitions through the present.

2.    **Bankruptcy Proceedings.** The term "Bankruptcy Proceedings" means the proceedings in the Debtors' bankruptcy case.

3.    **Berkshire.** The term "Berkshire" refers to Berkshire Hathaway Energy Co. and its officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, attorneys, agents, consultants, and independent contractors.

4.    **Berkshire Merger Agreement.** The term "Berkshire Merger Agreement" means the July 7, 2017 Agreement and Plan of Merger among Berkshire, O.E. Merger Sub Inc., O.E. Merger Sub II, LLC, O.E. Merger Sub III, LLC, Energy Future Intermediate Holding Company LLC, and Energy Future Holdings Corp. and any amendments thereto.

5.    **Berkshire Transaction.** The term "Berkshire Transaction" means the transactions contemplated under the Berkshire Merger Agreement.

6.    **Debtors.** The term "Debtors" means Energy Future Intermediate Holding Company LLC and Energy Future Holdings Corp., and any of their respective current or former officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, attorneys, agents, consultants, and independent contractors.

7.    **EFH Plan.** The "EFH Plan" means the bankruptcy plan pursuant to which the Debtors were reorganized pursuant to the United States Bankruptcy Code.

8.    **Elliott Parties.** The term "Elliott Parties" means Elliott Associates, L.P., Elliott International, L.P., The Liverpool Limited Partnership and their respective officers, directors,

employees, partners, corporate parents, subsidiaries, affiliates, attorneys, agents, consultants, and independent contractors.

9. **Evercore.** The term "Evercore" means Evercore Group LLC and its officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, attorneys, agents, consultants, and independent contractors.

10. **NextEra Merger Agreement.** The term "NextEra Merger Agreement" means the July 29, 2016 Agreement and Plan of Merger Among NextEra, EFH Merger Co., LLC, Energy Future Intermediate Holding Company LLC, and Energy Futures Holdings Corp. and any amendments thereto.

11. **NextEra PUCT Proceedings.** The term "NextEra PUCT Proceedings" means the proceedings before the PUCT related to any proposed acquisition of Oncor or the Debtors by NextEra and the related transactions that required the approval of the PUCT.

12. **NextEra Transaction.** The term "NextEra Transaction" means the transactions contemplated under the NextEra Merger Agreement.

13. **Oncor.** The term "Oncor" refers to Oncor Electric Delivery Company LLC, Oncor Electric Delivery Holdings Company LLC, and their respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, attorneys, agents, consultants, and independent contractors.

14. **PAB.** The term "PAB" means the EFP Plan Administrator Board and its officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, attorneys, agents, consultants, and independent contractors.

15. **PUCT.**  The term "PUCT" means the Texas Public Utilities Commission and its commissioners, officers, directors, employees, affiliates, attorneys, agents, consultants, and independent contractors.

16. **Ring Fence Restrictions.**  The term "Ring Fence Restrictions" means the restrictions defined as "Burdensome Conditions" in the NextEra Merger Agreement.

17. **Sempra.**  The term "Sempra" refers to Sempra Energy and its officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, attorneys, agents, consultants, and independent contractors.

18. **Sempra Merger Agreement.**  The term "Sempra Merger Agreement" means the August 21, 2017 Agreement and Plan of Merger among Sempra Energy, Power Play Merger Sub I, Inc., Energy Future Intermediate Holding Co. LLC, and Energy Future Holdings Corp. and any amendments thereto.

19. **Sempra Transaction.**  The term "Sempra Transaction" means the transactions contemplated under the Sempra Merger Agreement.

20. **UMB.**  The term "UMB" refers to UMB Bank, N.A. and its officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, attorneys, agents, consultants, and independent contractors.

21. **All/Any/Each**.  The terms "all," "any," and "each" shall each be construed as encompassing any and all.

22. **And/Or**.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

23. **Communication**. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

24. **Concerning**. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

25. **Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

26. **Including**. The term "including" means "including, without limitation" and "including, but not limited to."

27. **Number.** The use of the singular form of any word includes the plural and vice versa.

28. **Person**. The term "person" is defined as any natural person or any legal entity, including any business or governmental entity or association.

## INSTRUCTIONS

1. In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed by: you; your directors, officers, agents, representatives, subsidiaries, managing agents, affiliates, or investigators; or your attorneys or their agents, employees, representatives or investigators.

2. Documents are to be produced in full; redacted documents will not constitute compliance with this request. If any requested document or thing cannot be

produced in full, produce it to the extent possible, indicating which portion of that document is being withheld, and the reason for withholding.

3. In producing documents, you are requested to produce the original of each document requested together with all non-identical copies and drafts of that document.

4. Pursuant to Rule 45 of the Federal Rules of Civil Procedure, produce all documents as they are kept in the usual course of business.

5. All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by you. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

6. If you contend that you previously produced responsive documents in the Bankruptcy Proceedings, identify the documents' Bates Numbers and the date(s) of the prior production.

7. Each document shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

8. Documents attached to each other should not be separated.

9. Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents that are called for by this discovery request, or if such documents are attached to documents called for by this

discovery request, or constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

10. If you claim the attorney-client privilege, or any other privilege or work product protection for any document, that document need not be produced, but you shall provide a privilege log including all of the information required by the Federal Rules of Civil Procedure, Local Court Rules and any other applicable law of concerning that document.

11. Electronically stored information and other documents should be produced pursuant to the requirements of the District of Delaware's Default Standard for Discovery, Including for Discovery of Electronically Stored Information ("ESI") and Default Standard for Access to Source Code.

## REQUESTS FOR PRODUCTION

1. All documents concerning the value of Oncor or the Debtors, including all documents analyzing the value of Oncor or the Debtors with and without the Ring Fence Restrictions.

2. All documents concerning the value of any asset that was the subject of the NextEra Merger Agreement, the Berkshire Merger Agreement or the Sempra Merger Agreement, including all documents analyzing the value of those assets with and without the Ring Fence Restrictions.

3. All documents analyzing the financial and other potential benefits of any transactions involving the proposed purchase of Oncor or the Debtors or any of their assets

during the Bankruptcy Period, including any potential transactions that the Debtors analyzed prior to or contemporaneously with the NextEra Transaction.

4.  All documents concerning any communications between or among the Debtors, Evercore, the Elliott Parties, UMB, NextEra, Berkshire, or Sempra or any of those entities' legal or financial advisors concerning any acquisition of or merger with Oncor or the Debtors, including the NextEra Transaction, the Berkshire Transaction, or the Sempra Transaction.

5.  All documents concerning the terms of any proposed acquisition of or merger involving Oncor or the Debtors that contemplated the retention of some or all of the Ring Fence Restrictions.

6.  All documents concerning any analysis of the likelihood that the NextEra Transaction would receive the approval of the PUCT or whether the PUCT should approve the NextEra Transaction.

7.  All documents concerning the NextEra PUCT Proceedings or the appeal from the PUCT ruling concerning NextEra's proposed acquisition of Oncor or the Debtors.

8.  All documents concerning the negotiation of the Berkshire Merger Agreement or the Sempra Merger Agreement, including communications between or among the Debtors, Berkshire, Sempra or the legal or financial advisors of those entities regarding those transactions, any documents analyzing or reflecting the value of the transactions, and all documents comparing the value of the NextEra Transaction to the Berkshire Transaction or the Sempra Transaction.

9. All documents concerning any communications between the Debtors or their legal or financial advisors, on the one hand, and potential bidders for Oncor or the Debtors or their legal or financial advisors, on the other hand, concerning the NextEra Transaction.

10. All documents concerning any administrative expense fee application filed by NextEra in the Bankruptcy Proceedings pursuant to 11 U.S.C. §503(b), including any communications between the Debtors or the PAB and any third party concerning any such application.

11. All documents concerning any analysis or communications concerning the potential need to pay NextEra an administrative expense claim under any plan of reorganization for the Debtors in the Bankruptcy Proceedings.

12. All documents concerning the expenses incurred by NextEra in connection with the transactions contemplated by the NextEra Merger Agreement.

13. All documents concerning the expenses incurred by the Debtors in connection with the NextEra Transaction, the Berkshire Transaction or the Sempra Transaction.

14. All documents concerning the financial returns generated by the Elliott Parties in connection with their investment in the securities of the Debtors.

15. All documents concerning any analysis undertaken by the Debtors or Evercore concerning any actual or proposed acquisition of, or merger with, Oncor or the Debtors.

16. All documents concerning any communications between the Debtors or their legal or financial advisors and any third party concerning the Ring Fence Restrictions, the NextEra Transaction, the NextEra PUCT Proceedings, or the proposed acquisition of Oncor or the Debtors.

17. All documents concerning the use by Berkshire, Sempra, the Debtors or the legal or financial advisors of any of those entities of any analysis, study, due diligence, investigation, interview, or valuation that NextEra performed in connection with the NextEra Transaction.

18. Documents sufficient to reveal the terms of any document retention policy applicable to the documents responsive to these document requests.