# FLEISCHMAN BONNER & ROCCO LLP
## ATTORNEYS AT LAW

81 Main Street • Suite 515 • White Plains • New York • 10601
Tel: 914.278.5100 • Fax: 917.591.5245 • Web: WWW.FBRLLP.COM

Email: kfleischman@fbrllp.com

July 9, 2021

**VIA ECF**

The Honorable Christopher S. Sontchi
United States Bankruptcy Court
for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

  Re: *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (Bankr. D. Del)

Dear Judge Sontchi:

  My firm represents Claimant NextEra Energy, Inc. in this proceeding, in which NextEra seeks the payment of its administrative expenses pursuant to 11 U.S.C. § 503(b)(1)(A). I write, pursuant to Fed. R. Civ. P. 16(b)(4), to seek a 60-day extension of the remaining deadlines set forth in the Scheduling Order the Court entered on June 8, 2021. I make that request because the volume of NextEra documents responsive to the May 21, 2021, document requests propounded by Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott") and the complexity of analyzing the privilege issues impacting those documents have vastly exceeded our expectations. As a result, the "good cause" that Rule 16(b)(4) requires to justify that extension exists because, despite our concerted efforts, it has proven impossible to comply with the Scheduling Order's July 9, 2021 deadline for substantially completing the NextEra production of a massive number of electronic documents in the 49 days since Elliott served its requests. This is the first request for an extension of those deadlines that NextEra has made. Elliott and the EFH Plan Administrator Board (the "PAB") will not consent to the proposed extension.

  Multiple complexities have contributed to our inability to meet the July 9 deadline despite our focused efforts. Gathering all of the documents possessed by 11 key custodians, including the members of the "Steering Committee" that drove NextEra's attempt to acquire the Debtors' interest in Oncor, occupied a significant amount of time because NextEra had to retrieve many of those four- and five-year-old documents from archives. In contrast, we produced all 64,168 pages of the documents that NextEra had previously gathered for production in this action shortly after responding to Elliott's Document Requests. Notably, Elliott has not yet produced any documents other than those it previously produced in this action, and the PAB's supplemental production totals just 20 pages. Despite the significant difficulties NextEra has encountered, the production of new documents that NextEra completed today totaled 121,785 pages (in addition to its previous production of 64,168 pages).

  The documents that we retrieved (including the archived materials) were housed in a manner that did not allow for Boolean searches. As a result, NextEra had to upload its electronic

The Honorable Christopher S. Sontchi
July 9, 2021
Page 2

records onto a platform that could be searched in order to ensure that all potentially responsive documents were captured for review. That process alone required the work of several NextEra employees and took many days. We were then surprised to learn that more than 250,000 documents (not pages) hit upon basic search terms such as "EFH," "Oncor," "Berkshire," "Sempra," and "PUCT," even after those documents were "de-duped."

Moreover, the universe of documents subject to review has expanded significantly in the last two weeks as we focused greater attention upon analyzing the documents of four particularly important custodians. Those four individuals alone possess more than 170,000 additional documents that hit on the undeniably relevant basic search terms we used to cull potentially responsive documents.

Moreover, the fact that NextEra lawyers played dual legal and business roles in the company's efforts to acquire Oncor has significantly enhanced the complexity of this document production. In part, those NextEra lawyers functioned in their classic roles as attorneys counseling their client regarding a broad range of issues relevant to the complex Oncor acquisition. In addition, however, in-house NextEra lawyers played a leading role in the negotiation and business decision-making concerning that transaction. Thus, many documents require tricky assessments regarding whether: (a) the attorney-client privilege applies to documents because NextEra's lawyers were communicating in their role as attorneys; or (b) NextEra must produce those documents because they reflect or involve business (not legal) decision-making by personnel who are lawyers.

Staffing this document production with experienced document reviewers in the summer following a year of pandemic has also proven difficult. Nonetheless, we have hired 12 attorneys to produce NextEra's documents. All of the partners and full-time lawyers at our firm have also worked extensively, some days exclusively, on the NextEra document production.

The complexity of the production has produced a far slower rate of review by the document review attorneys working on the NextEra production than we have experienced in past document reviews. For example, in a recent case in which we employed document review attorneys, the pace of the review outstripped the reviewers' progress in this action by more than 200%. As a result, we have instructed the reviewers to make quick determinations regarding privilege and responsiveness, rather than fulfill their normal role of organizing documents that might prove useful in prosecuting NextEra's claim. Our full-time lawyers have employed the same document production strategy.

We anticipate that Elliott will observe, as it has during our meet-and-confer communications, that we should have approached counsel earlier to address the complexities we have encountered with NextEra's document production. To say the least, however, we have been scrambling to work with NextEra's in-house lawyers and personnel to find all of the potentially responsive documents and to assemble a team of reviewers, bring them up to speed regarding the relevant facts, and monitor and speed their progress, all while spending much or all of our days

The Honorable Christopher S. Sontchi
July 9, 2021
Page 3

reviewing NextEra's documents or performing other tasks related to the production. Moreover, in just the past two weeks, the ascertainable scope of our review has grown so dramatically that we are confident that neither the PAB nor Elliott has any interest in having to review all potentially responsive documents that we have located through our electronic word searches.

In that regard, a single Boolean search that Elliott provided to us just 10 days ago with respect to just six of its 28 Document Requests has generated 133,988 "hits" against the database of documents we have collected from key custodians. Elliott has offered to narrow the scope of that request, but we nevertheless require additional time to negotiate the precise parameters of the agreed limitations and to then carry out the relevance and privilege review of what will surely be a large number of responsive documents. In conducting that review, we must also determine whether the Elliott search terms have produced false positives that implicate confidential information belonging to NextEra, a public company, or its counterparties in unrelated transactions.

NextEra shares the Court's interest in bringing this matter to a swift resolution. We are committed to continuing our full-time work to complete the production as quickly as possible and welcome any input from Elliott (or the PAB) regarding ways we can limit the burden associated with making a massive production. The foregoing facts demonstrate, however, that we have worked diligently to complete the NextEra production and that good cause exists for the extension that NextEra requests. *See, e.g., ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009) ("'Good cause' exists when the Schedule cannot reasonably be met despite the diligence of the party seeking the extension. Fed. R. Civ. P 16(b)(4) Advisory Committee's Notes (1983 amendments)."). We therefore respectfully request that the Court extend the July 9 deadline and the remaining deadlines in this action by 60 days.

Respectfully submitted,

Keith M. Fleischman

Cc: All Counsel (VIA ECF)