

ROPES & GRAY LLP
PRUDENTIAL TOWER
800 BOYLSTON STREET
BOSTON, MA 02199-3600
WWW.ROPESGRAY.COM

August 3, 2021

Matthew L. McGinnis
T +1 617 951 7567
matthew.mcginnis@ropesgray.com

**VIA ECF**

The Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

Re:  ***In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (Bankr. D. Del.) –
Discovery Disputes Relating to the Application of NextEra Energy, Inc. for Allowance
and Payment of Administrative Claim [D.I. 12671]**

Dear Judge Sontchi:

I write on behalf of UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured
11.25%/12.25% Senior Toggle Notes due 2018, as well as Elliott Associates, L.P., Elliott
International, L.P., and the Liverpool Limited Partnership (collectively, "Elliott" and together with
the Trustee, "UMB/Elliott") to inform the Court of three discovery disputes with NextEra Energy,
Inc. ("NextEra") which require the Court's assistance. Resolution of the below issues is important to
upcoming fact depositions, which are required to be completed before the close of discovery on
August 20, 2021 under the Court's scheduling order dated June 8, 2021 [D.I. 14238] (the "Scheduling
Order").

### 1.    NextEra's Delayed Document Productions

Even after the Court granted NextEra ten extra days to produce documents, NextEra has failed
to abide by the Court's deadline, instead treating itself to weeks of additional time to produce
documents.[1]  NextEra initially produced documents on July 9 (the original deadline) and July 19 (the
extended deadline), totaling 178,747 pages.  At the time of its July 19 production, NextEra represented
that it had "substantially completed" its production but that it had "not entirely completed [its] review
of all potentially responsive documents and anticipate[d]" that it would "be making one or more

---

[1]    NextEra's suggestion that it had substantially completed its production by the extended deadline of July
19 rests solely on NextEra unilaterally eliminating eight custodians (Wade Litchfield, Meredith Quick,
Nicole Saavedra, Peter Skantze, David Tahan, Brian Anderson, Kimberly Ousdahl, and Natalie Smith) it
previously identified as possessing relevant and responsive information.  NextEra nonetheless refuses to
agree that it will not call these eight custodians as witnesses at trial.  NextEra cannot have it both ways,
and the Court should preclude any of these eight custodians from testifying at trial.

ROPES & GRAY LLP

supplemental productions within the next 7 days." *See* Ex. A, July 20, 2021 email from S. Davies to M. McGinnis et al.  No such supplemental production materialized in that timeframe.  As a result, on July 27, UMB/Elliott asked NextEra to confirm by the following day whether it had completed its document production. *See* Ex. B, July 27, 2021 letter from M. McGinnis to K. Fleishman.  NextEra's counsel did not respond.  Instead, on July 30, NextEra made a production of 242 documents in native form (along with its expert reports), and then, on August 2, NextEra produced another 63,919 pages of documents, which amounts to approximately 20% of its total production to date.

NextEra has suggested that the July 30 and August 2 productions primarily include reproductions of documents in previous productions—in particular invoices that were incomplete or inappropriately redacted[2]—and that the August 2 production would include Bates-stamped copies of the July 30 production.  The documents tell a different story.  In fact, NextEra's August 2 production includes over 3,000 emails that were not previously produced, including more than 2,000 emails that were either sent to or from upcoming deponents James Robo, Mark Hickson, or Charles Sieving.

More importantly, there is no dispute that NextEra's most recent productions—a full two weeks after the document production deadline—contain substantive information and documentation about the claimed administrative expenses that were the basis of the application it filed more than three years ago.  More such information also appears to be forthcoming.  Indeed, NextEra's counsel has refused to identify when it will complete document productions, even though depositions are currently noticed to commence on August 13.

NextEra's apparent unwillingness to comply with the Scheduling Order prejudices UMB/Elliott's pretrial preparation, and regrettably requires the Court's intervention.  Although UMB/Elliott defers to the Court's judgment for an appropriate remedy for NextEra's failure to comply with the Scheduling Order, UMB/Elliott respectfully asks that NextEra be precluded from affirmatively introducing at trial any documents produced after July 26 (*i.e.*, one week after the Court's document production deadline) and precluded from calling any of the eight custodians whose documents NextEra has refused to search.[3]

## 2.    Excessive Redaction of Board Materials

Although UMB/Elliott's review of NextEra's document productions is ongoing, it is already apparent that NextEra has engaged in excessive redactions of some documents.  For example, NextEra has fully redacted 68 out of 75 pages of its May 18, 2017 board meeting minutes and materials, and has even redacted the list of attendees. *See* Ex. C, NEE_0242809.  To date, NextEra's counsel has refused to identify the basis for these redactions or to confirm whether they will provide corrected copies.  Although the parties continue to discuss this issue and will endeavor to resolve it without

---

[2]    UMB/Elliott raised issues with NextEra's invoices in its letter on July 27. *See* Ex. B.

[3]    UMB/Elliott reserves all rights to seek reimbursement of its reasonable legal fees and costs incurred in connection with this discovery dispute.

ROPES & GRAY LLP

- 3 -                                                                                      August 3, 2021

Court intervention, in the absence of a mutual resolution this week, UMB/Elliott respectfully requests that the Court order NextEra to produce all board meeting minutes and materials previously produced but only redacted to preserve attorney-client privilege.

**3.      NextEra's Insufficient Response to UMB/Elliott's Interrogatory**

NextEra has also failed to provide a complete answer to a critical interrogatory.  UMB/Elliott Interrogatory No. 6 asks NextEra to "[d]escribe the terms of any agreement, including any forward contract, swap agreement, option, security, derivative, forward purchase, or sale arrangement, or any other hedging arrangement, transaction, or agreement, entered into by NextEra or any affiliate or subsidiary thereof relating to or in connection with NextEra's pursuit of the NextEra Merger Agreement or any transaction contemplated thereby (the "Oncor Transaction"), or to facilitate future transactions contemplated in connection with an anticipated closing of the Oncor Transaction."  *See* Ex. D, *UMB/Elliott's First Request for Interrogatories Concerning the NextEra Application* at 4-5. NextEra's response to this interrogatory included a general objection to relevance, but then included information about ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
██████████████████████████  *See* Ex. E, *NextEra's Responses and Objections to UMB/Elliott's First Request for Interrogatories Concerning the NextEra Application*.  On July 29, UMB/Elliott asked NextEra to supplement its response.  *See* Ex. F, July 29, 2021 letter from M. McGinnis to K. Fleishman.  As of the date of this letter, NextEra has been unwilling to do so.

Information about the other items requested in Interrogatory No. 6 is relevant to the current proceeding because, among other things, such arrangements will show that while ████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████  Discovery concerning this issue is thus relevant because, among other things, it contradicts NextEra's representation to the Third Circuit it "suffer[ed] massive losses pursuing the Merger's consummation," *In re Energy Future Holdings Corp.*, 990 F.3d 728, 738 (3d Cir. 2021) (citing Appellant's Br. at 39).

UMB/Elliott thus respectfully asks the Court to order NextEra to provide a complete answer to UMB/Elliott's Interrogatory No. 6.

ROPES & GRAY LLP

- 4 -                                    August 3, 2021

Respectfully submitted,

Matthew L. McGinnis

cc:        All Counsel of Record (via ECF)

Enclosures

**<u>EXHIBIT A</u>**

**July 20, 2021 Email from S. Davies to M. McGinnis, *et al*.**

| | |
|---|---|
| **From:** | Susan M. Davies <Sdavies@fbrllp.com> |
| **Sent:** | Tuesday, July 20, 2021 12:32 AM |
| **To:** | McGinnis, Matthew; Galardi, Gregg; Egan, Daniel; Lovell, Ani-Rae; mmckane@kirkland.com; michael.esser@kirkland.com; mcclain.thompson@kirkland.com |
| **Cc:** | Keith M. Fleischman; James P. Bonner; Patrick L. Rocco; Tyler Van Put |
| **Subject:** | In re Energy Future Holdings Corp., Case No. 14-10979 (D. Del. Bankr.) |

# [EXTERNAL]

Dear Counsel:

Please find at the link below, a document production by NextEra Bates numbered NEE_0191506 through NEE_0242915.  These documents have been designated Confidential, and in some instances Highly Confidential, pursuant to the Protective Order entered in the above-captioned proceeding on August 13, 2014.

With this, NextEra has substantially completed its document production.  However, we have not entirely completed our review of all potentially responsive documents and anticipate that we will be making one or more supplemental productions within the next 7 days.

The link below will expire on August 2, 2021.  The password for opening the zip file is wX/h?H)r=("B$5^9

**HT LINK: https://spaces.hightail.com/receive/ACPhwby6gm**

Very truly yours,

Susan M. Davies
Fleischman Bonner & Rocco LLP
Cell:  917-583-8966
sdavies@fbrllp.com

## **EXHIBIT B**

**July 27, 2021 Letter from M. McGinnis to K. Fleishman**



ROPES & GRAY LLP
PRUDENTIAL TOWER
800 BOYLSTON STREET
BOSTON, MA 02199-3600
WWW.ROPESGRAY.COM

July 27, 2021

Matthew L. McGinnis
T +1 617 951 7567
matthew.mcginnis@ropesgray.com

**BY E-MAIL**

Keith M. Fleischman (kfleischman@fbrllp.com)
James P. Bonner (jbonner@fbrllp.com)
Joshua D. Glatter (jglatter@fbrllp.com)
Fleischman Bonner & Rocco LLP
81 Main Street, Suite 515
White Plains, NY 10601

Re:    *In re Energy Future Holdings Corp.*, et al., Case No. 14-010979 (Bankr. D. Del.)

Dear Counsel:

I write regarding the documents produced by NextEra Energy, Inc. ("NextEra") on July 9, July 19, and July 20 in response to document requests (the "Document Requests" and each a "Request") served on May 21, 2021 by UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25% Senior Toggle Notes due 2018, and Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership ("Elliott" and together with the Trustee, "UMB/Elliott"). This letter seeks confirmation that NextEra has completed its document productions and asks that NextEra address certain gaps and technical issues in its productions.

**NextEra Document Production Completion**

In your last production email, you indicated that you "ha[d] not entirely completed [y]our review" and you "anticipate[d] . . . making one or more supplemental productions within the next 7 days." Email from S. Davies to M. McGinnis on July 20, 2021. Seven days have now passed since the substantial completion deadline and the period in which depositions are permitted has begun, yet we have not received any additional documents from NextEra. Please confirm by the close of business tomorrow whether your production is now complete, or if not, when you intend to complete your production. UMB/Elliott reserve all rights.

**Substantive Gaps**

UMB/Elliott's Request No. 1 sought, "[a]ll invoices, billing statements, time records, engagement letters or agreements, and all other supporting documentation for the alleged recoverable fees and expenses identified in paragraphs 43 through 50 of the NextEra Application. With respect to any fees or expenses incurred by any Professional engaged or retained by NextEra in connection

ROPES & GRAY LLP

- 2 -                                                                                July 27, 2021

with the Chapter 11 Cases, the requested documents shall include (but not be limited to) (i) the date
of each time entry, (ii) the description of each time entry, (iii) the hours associated with each time
entry, and (iv) the matter code associated with each time entry." [1]

    Based on our review of NextEra's productions, there are numerous invoices and statements
for services rendered by Professionals that reflect amounts billed but that provide either no or
insufficient supporting detail to substantiate the nature of the work performed or services rendered.
For instance, billing narratives have been wholly redacted from certain invoices, thereby providing
no description of the work done and no means for proving or refuting whether the services performed
provided a purported benefit to the Debtors' estates. *See, e.g.*, NEE_0187992 (invoice from Hogan
Lovells US LLP where all line item descriptions are redacted as "Attorney Client Privilege/Attorney
Work Product"); NEE_0185972 (invoice from Charles River Associates where all work descriptions
are redacted as "Attorney Client Privilege/Attorney Work Product").  Other invoices reflect vague
and cursory descriptions of work completed, again providing no or insufficient evidence of the nature
of the work done and inadequate information for proving or refuting whether the services performed
provided a benefit to the Debtors' estates.  *See, e.g.*, NEE_0186101 (an invoice for $16,689 for
"Professional Fees – EFH Merger Co LLC" and "Expenses – EFH Merger Co LLC" from Joele
Frank); NEE_0188001 (an invoice for $10,000 for "Professional Services for the Month of November
2016" from Delisi Communications); NEE_0188075 (an invoice for $4,607.92 for
"Consulting/Regulatory/Lobby service for Project Cactus, Texas 1/1/17 – 1/31/17" and "Cactus
Strategy Sessions" from Dan Madru Consulting).  Further, some documents in the production are
only the first page of a multi-page invoice, which suggests that NextEra has intentionally withheld
portions of documents that may contain information necessary to evaluate the NextEra Application.
*See, e.g.*, NEE_0188012 (the description line items at the bottom of the page are cut off and the visible
itemized amounts do not add up to the total invoice amount).

**Technical Issues**

    NextEra's productions also fail to abide by the technical requirements agreed to by the parties.
First, NextEra's production does not include native versions of many excel files.  NextEra agreed to
"produce[] documents as they are kept in the usual course of business in the format specified in the
E-discovery protocol (D.I. 1832-3)."  *See* NextEra's R&Os at 4.  The E-discovery protocol specifies,
in relevant part, that "[a]ll Excel files and other files that cannot be reasonably reviewed except on a
computer shall be produced in native format."  *See* D.I. 1832-3 at 2.  The need for natives of excel
files is readily apparent when reviewing the documents that NextEra referenced in its *Responses and
Objections to UMB/Elliott's First Request for Interrogatories Concerning the NextEra Application*

---

[1]    All capitalized terms used but not defined herein have the meanings ascribed to them in the
Document Requests.

    In its June 21, 2021 letter with *NextEra's Responses & Objections to UMB/Elliott's Requests
for Production* ("NextEra's R&Os"), NextEra did not object to producing the documents in Request
No. 1.

ROPES & GRAY LLP

- 3 -                                                                July 27, 2021

("NextEra's Interrogatory Responses") served on July 22, 2021.  NextEra's Interrogatory Responses identified NEE_0187839 to NEE_0187963 as reflecting calculations of relevant internal labor costs. However, these documents, which appear to be printed versions of excel files, have fields that are entirely missing as the data is not visible and the documents in their entirety are difficult to read given the small size of the font and number of cells per page.  *See, e.g.*, NEE_0187839 (data in columns titled "Postg Date," "Time Date," and "Doc. Date" are not visible).  These are, moreover, not the only documents with such readability issues.  *See, e.g.*, NEE_0191189 to NEE_0191304.  Accordingly, please produce native versions of all documents that were created in excel, including, but not limited to, the documents specified in this letter, or an explanation for why certain documents were not maintained in digital, excel format during the course of these Chapter 11 Cases such that they could be produced natively.

In addition, approximately 500 documents in NextEra's productions lack any metadata.  *See, e.g.*, NEE_0191189; NEE_0188001.  The E-discovery protocol, which NextEra agreed to comply with, requires certain metadata be provided, including the custodian of each document (i.e. "the person who provided the information").  *See* D.I. 1832-3 at 6.  Custodial information, at a minimum, is essential to understand the source of information and identify the appropriate witness(es) to question regarding information in documents.

Finally, a number of the spreadsheets produced by NextEra include fields that are not self-evident and are meaningless without further explanation.  We therefore request a data dictionary for all documents that were originally created in excel, including but not limited to: NEE_0187833 to NEE_0187838; NEE_0187839 to NEE_0187963; NEE_0191189 to NEE_0191304.

*                *                *

We ask that NextEra address the substantive and technical issues outlined above this week as the current deficiencies in NextEra's production hinder our ability to take and prepare for quickly approaching depositions.

Very truly yours,

Matthew L. McGinnis

cc:    Gregg M. Galardi (Gregg.Galardi@ropesgray.com)
        Daniel G. Egan (Daniel.Egan@ropesgray.com)
        Mark McKane (mmckane@kirkland.com)

# **EXHIBIT C**

**NEE_0242809**

**[WITHHELD PURSUANT TO PROTECTIVE ORDER DESIGNATION]**

## **EXHIBIT D**

**UMB/Elliott's First Request for Interrogatories Concerning the NextEra Application**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., | ) | Case No. 14-10979 (CSS) |
| *et al.*, | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## UMB/ELLIOTT'S FIRST REQUEST FOR
## INTERROGATORIES CONCERNING THE NEXTERA APPLICATION

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 7026-1 to 7026-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25% Senior Toggle Notes due 2018, and Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership ("Elliott" and together with the Trustee, "UMB/Elliott"), hereby request that NextEra Energy, Inc. ("NextEra") answer these interrogatories (the "Interrogatories," or each individual "Interrogatory") concerning the *Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Claim*, dated February 20, 2018 [D.I. 12671] (the "NextEra Application"), in writing and under oath, in accordance with the definitions and instructions set forth below.  All responses should be produced on or before July 22, 2021 electronically or in a format otherwise agreed upon by the parties.

## **DEFINITIONS**

UMB/Elliott's Interrogatories incorporate by reference all definitions set forth in *UMB's/Elliott's Requests for Production of Documents to NextEra Energy, Inc. Concerning the NextEra Application*, dated May 21, 2021.

## **INSTRUCTIONS**

The following instructions apply to these Interrogatories:

A.      Each Interrogatory shall be deemed continuing, and the responding party and any present or former affiliate or representative of the party responding hereto are required to supplement their responses as required by Rule 26(e) of the Federal Rules of Civil Procedure.

B.      If You answer any Interrogatory by reference to an individual or witness, please identify the person's position and whether they are represented by counsel.

C.      If You answer any Interrogatory by reference to Documents, and such Documents have not previously been produced in the Chapter 11 Cases, such Documents shall be produced at the time of service of Your answers to these Interrogatories and in the same format and in accordance with the same instructions as set forth in *UMB's/Elliott's Requests for Production of Documents to NextEra Energy, Inc. Concerning the NextEra Application*, served on May 21, 2021.

D.      Documents and Communications in response to these Requests may be designated under the terms of the *Confidentiality Agreement and Stipulated Protective Order* [D.I. 1833].

E.      The following rules of construction apply to all Interrogatories:

1. All/Any/Each:  The terms "all," "any," and "each" shall each be construed as encompassing any and all.

2. And/Or:  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

3. Number:  The use of the singular form of any word includes the plural and vice versa.

4. Gender: The use of one gender shall include the other, and vice versa.

F.    If You claim not to understand all or part of any Interrogatory, definition, or instruction, please advise UMB/Elliott's counsel immediately so that any lack of understanding may promptly be corrected.

G.    UMB/Elliott reserves the right to amend, supplement, and/or modify these Interrogatories.

H.    Unless expressly indicated otherwise, the time period covered by these Interrogatories is April 1, 2016 to the present.

## <u>INTERROGATORIES</u>

1.    Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning the fees and expenses described in the NextEra Application, including, but not limited to any witnesses with knowledge of discoverable information concerning:

a. any internal labor costs described in the NextEra Application, and NextEra's statement that these expenses provided a benefit to the Estate;

b. NextEra's "ongoing work on the transaction" and NextEra's statement that these expenses provided a benefit to the Estate;

c. the "work performed on the PUCT approval process" and NextEra's statement that these expenses provided a benefit to the Estate;

d. the "expenses incurred in seeking regulatory approval from governmental bodies other than the PUCT" and NextEra's statement that these expenses provided a benefit to the Estate;

e. the fees for investment bank and advisory services "necessary to complete the transaction" and NextEra's statement that these expenses provided a benefit to the Estate;

     f.   "financing-related expenses" and "bridge loan commitment fees," and NextEra's statement that these expenses provided a benefit to the Estate;

     g.   NextEra's "public outreach efforts to promote the transaction and facilitate regulatory approval" and NextEra's statement that these expenses provided a benefit to the Estate;

     h.   NextEra's expenses related to and "efforts to plan for and facilitate the transition of EFH and its subsidiaries, and their systems and operations, to ownership by NextEra" and NextEra's statement that these expenses provided a benefit to the Estate. *See* NextEra Application ¶¶ 43–50.

2.     Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning any payments made by or on behalf of NextEra to any Professionals in connection with the Chapter 11 Cases.

3.     Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning the NextEra Plan, including, but not limited to, negotiations of the NextEra Plan.

4.     Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning any appeal, motion for rehearing, or motion for reconsideration filed by NextEra with respect to the PUCT's order denying approval of the NextEra Merger Agreement.

5.     Describe the process for calculating internal labor costs at NextEra, and provide a calculation of labor costs for each of the categories of expenses identified in Interrogatory 1(b)-(h), to the extent a category includes internal labor costs.

6.     Describe the terms of any agreement, including any forward contract, swap agreement, option, security, derivative, forward purchase, or sale arrangement, or any other hedging arrangement, transaction, or agreement, entered into by NextEra or any affiliate or subsidiary thereof relating to or in connection with NextEra's pursuit of the NextEra Merger Agreement or any transaction contemplated thereby (the "Oncor Transaction"), or to facilitate

future transactions contemplated in connection with an anticipated closing of the Oncor Transaction.

Date:   June 22, 2021
        Wilmington, Delaware

                                    **BAYARD, P.A.**

                                    */s/ Erin R. Fay*
                                    Erin R. Fay (No. 5268)
                                    600 N. King Street, Suite 400
                                    Wilmington, DE 19801
                                    Telephone: (302) 655-5000
                                    Facsimile: (302) 658-6395
                                    efay@bayardlaw.com

                                        –and–

                                    **ROPES & GRAY LLP**
                                    Gregg M. Galardi (No. 2991)
                                    Daniel G. Egan (Admitted *Pro Hac Vice*)
                                    1211 Avenue of the Americas
                                    New York, NY 10036-8704
                                    Telephone: (212) 596-9000
                                    Facsimile:  (212) 596-9090
                                    gregg.galardi@ropesgray.com
                                    daniel.egan@ropesgray.com

                                    Matthew L. McGinnis (Admitted *Pro Hac Vice*)
                                    Prudential Tower, 800 Boylston Street
                                    Boston, MA 02199-3600
                                    Telephone: (617) 951-7000
                                    Facsimile: (617)951-7777
                                    matthew.mcginnis@ropesgray.com

## EXHIBIT E

**NextEra's Responses & Objections to UMB/Elliott's**
**First Request for Interrogatories Concerning the NextEra Application**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## NEXTERA'S RESPONSES & OBJECTIONS TO
## UMB/ELLIOTT'S FIRST REQUEST FOR
## INTERROGATORIES CONCERNING THE NEXTERA APPLICATION

Pursuant to Fed. R. Civ. P. 26 and 33 of the Federal Rules of Civil Procedure, and Loc. Bankr. R. 7026-1 to 7026-2, NextEra Energy Inc. ("NextEra" or "Claimant") hereby provides objections and responses ("Responses") to UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25% Senior Toggle Notes due 2018's, and Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership's ("Elliott" and together with the Trustee, "UMB/Elliott") Interrogatories concerning the NextEra Application.

## PRELIMINARY STATEMENT

1.     The information supplied in NextEra's Responses is not based solely upon the knowledge of the individual signing the Responses on NextEra's behalf, but includes knowledge of the party's agents, representatives, and attorneys, unless privileged.

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

2.      The word usage and the sentence structure are that of the attorneys who have prepared these Responses, and said language is not purported to be the exact language of the individual providing the Responses on NextEra's behalf.

3.      These Responses have been prepared pursuant to a reasonable and duly diligent investigation and search for the responsive information.

4.      In accordance with Fed. R. Civ. P. 26(e), NextEra reserves the right to supplement or amend its responses to these Interrogatories should additional information called for by the Interrogatories be discovered.

5.      The within Responses (and any further objections or responses to the Interrogatories or their subject matter) are made without waiver of, and with preservation of:

        a.      all objections as to competency, relevancy, materiality, privilege, and admissibility of each response and the subject matter thereof as evidence for any purpose in any further proceedings in this matter (including the trial of this matter), and in any other lawsuit or proceedings;

        b.      the right to object to the use of any Response, or the subject matter thereof, on any ground in any further proceedings in this matter (including the trial of this matter), and in any other lawsuit or proceeding;

        c.      the right to object on any ground at any time to a demand or request for a further response to these or any other discovery requests or other discovery proceedings involving or relating to the subject matter of the Interrogatories herein responded to; and

        d.      the right at any time to revise, correct, add to, supplement, or clarify any of the Responses contained herein.

6.      In the event that any portion of the instructions and definitions contained in the Interrogatories conflicts with the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, Local Rules, or attempts to impose requirements beyond those imposed by the applicable court rules, the applicable rules and their requirements shall prevail.

7.      The Responses are limited to properly discoverable facts pertaining to the matters at issue in this contested matter as set forth in the papers on file with the Court.

8.      Except for specific information disclosed herein, no incidental or implied disclosure of information is intended hereby.  The fact that NextEra responds to any specific Interrogatory herein should not be taken as an admission that NextEra accepts or admits the existence of any information, document, fact, thing, or legal argument set forth in or assumed by any such Interrogatory or that such response constitutes admissible evidence, unless specifically so stated in the response.  The fact that Claimant responds to any Interrogatory herein shall not be construed to be a waiver of all or any part of any objections interposed by NextEra to any of the Interrogatories.

9.      NextEra has not completed its investigation of the facts relating to this case and has not completed preparation for trial.  The following responses are based upon information presently available to NextEra and are made without prejudice to the right to utilize subsequently discovered facts, witnesses, documents, things, or legal arguments.

## GENERAL OBJECTIONS

NextEra asserts the following general objections to the Interrogatories ("General Objections"):

1.      NextEra objects to the Interrogatories on the grounds and to the extent that they seek, either directly or indirectly, information and/or documents that are privileged by reason

of the attorney-client privilege, work product privilege, or any other applicable privileges or protections, or that are otherwise immune from discovery.  Any and all responses set forth below constitute solely non-privileged, non-protected information.

2.      NextEra objects to the Interrogatories on the grounds and to the extent that they seek information which is not relevant to the parties' claims and defenses, the subject matter of this litigation and/or is not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1).

3.      NextEra objects to the Interrogatories on the grounds and to the extent that they purport to impose duties or obligations which exceed or are different from those imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, or any applicable Court order.

4.      NextEra objects to the Interrogatories on the grounds and to the extent that they attempt to incorporate definitions or rules of construction beyond the scope of what is permissible pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, a Court Order, or other governing authority.

5.      NextEra objects to the Interrogatories on the grounds and to the extent that they are multi-part interrogatories with discrete subparts.  Claimant reserves the right to count interrogatories with discrete subparts as separate interrogatories for the purposes of the limitation on the number of interrogatories permitted under Fed. R. Civ. P. 33.

6.      NextEra objects to the Interrogatories on the grounds and to the extent that they subject Claimant to hardship, undue burden, or oppression.

7.      NextEra  objects to the Interrogatories on the grounds and to the extent that they are vague, ambiguous, insufficiently specific, overly broad, harassing, unintelligible, use

undefined terms capable of more than one interpretation, or require Claimant to speculate as to their meaning or scope.

8.      NextEra  objects to the Interrogatories on the grounds and to the extent that they: (1) assume facts not established; (2) constitute, form, imply, require, or call for a legal conclusion; or (3) incorporate a characterization based upon a legal conclusion.

9.      NextEra objects to the Interrogatories on the grounds and to the extent that they contain incomplete, inaccurate or misleading descriptions or characterizations of facts, events, issues, laws, or pleadings underlying or relating to this action.

10.     Plaintiff objects to the Interrogatories on the grounds and to the extent to which they constitute, in substance, premature contention interrogatories, or they are not a more practical method of obtaining the information sought than a request for production or a deposition.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1(a):

**Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning the fees and expenses described in the NextEra Application, including, but not limited to any witnesses with knowledge of discoverable information concerning:**

**a. any internal labor costs described in the NextEra Application, and NextEra's statement that these expenses provided a benefit to the Estate;**

### RESPONSE TO INTERROGATORY NO. 1(a)

In addition to the General Objections, NextEra objects to Interrogatory No. 1(a) on the grounds and to the extent that: (1) it is overbroad; (2) it is vague, including lacking a clear definition of "internal labor costs"; (3) it seeks a legal conclusion; (4) it seeks information that is already discernable from the NextEra Application which set forth the categories of expenses and costs for which NextEra sought reimbursement as an administrative expense claim, and, therefore, read literally, this Interrogatory would require NextEra to identify, *inter alia*, anyone who filed a notice of appearance in this case and would have been informed electronically or otherwise that the NextEra Application had been filed; (5) it seeks information that constitutes information covered by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection; and/or (6) it seeks information more efficiently obtained at deposition or through the review of documents produced by NextEra or other claimants in this action.

Subject to and without waiver of the above objections and the General Objections, NextEra responds as follows:

- **CHARLES SIEVING**:  Mr. Sieving is NextEra's Executive Vice President and General Counsel.  Along with Mark Hickson (below), Mr. Sieving led NextEra's negotiation of the NextEra Merger Agreement and its planned acquisition of Oncor.

- **MARK HICKSON**: Mr. Hickson is NextEra's Executive Vice President, Corporate Development and Strategy. Along with Mr. Sieving, Mr. Hickson led NextEra's efforts to negotiate the NextEra Merger Agreement and to implement its planned acquisition of Oncor. Mr. Hickson was also the head of the NextEra Steering Committee that drove the NextEra Oncor acquisition.

- **PAUL CUTLER**: Mr. Cutler is NextEra's Treasurer. Mr. Cutler worked with Messrs. Sieving and Hickson to finance the purchase price.

- **WADE LITCHFIELD**: Mr. Litchfield is the Vice President and General Counsel for Florida Power & Light Company, a NextEra subsidiary. Mr. Litchfield's involvement in connection with NextEra's efforts to acquire Oncor was primarily with regard to the PUCT proceeding.

- **MEREDITH QUICK**: Ms. Quick is NextEra's Senior Director for Risk Management, and served as Mr. Hickson's primary support during the negotiations of the Merger Agreement.

- **NATALIE SMITH**: Ms. Smith is President of GridLiance, a NextEra Company. Ms. Smith's involvement in connection with NextEra's effort was primarily with regard to obtaining PUCT approval and intervener support.

- **NICOLE SAAVEDRA**: Ms. Saavedra is NextEra's Senior Director, Integrated Clean Energy Solutions. Ms. Saavedra assisted in the collection of information concerning Claimant's administrative expense costs.

- **PETTER SKANTZE**: Mr. Skantze is NextEra's Vice President of Corporate Development and Strategy. Mr. Skantze was a member of Mr. Hickson's deal team.

7

- **<u>DAVID TAHAN</u>:**  Mr. Tahan is NextEra's Senior Managing Tax Counsel, Corporate Development.  Mr. Tahan was a member of Mr. Hickson's deal team who focused upon the tax aspects of the transaction, including the tax matters agreement.

- **<u>STEVEN BARON</u>:**  Mr. Baron is a principal of Steven Baron Consulting and Legal Services and provided consulting and legal assistance to NextEra during the PUCT proceedings.

- **<u>JOHN REED</u>:**  John Reed is a principal of Concentric Energy Advisors.  Concentric Energy Advisors provided expert assistance with regard to the PUCT proceedings.

- **<u>ATTORNEYS AT CHADBOURNE & PARKE LLP / NORTON ROSE FULBRIGHT</u>:**  Chadbourne initially represented NextEra in connection with its efforts to acquire Oncor in the Chapter 11 cases, and thereafter several of the Chadbourne attorneys moved to the Norton Rose Fulbright firm where they continued representing NextEra in these matters.  Key attorneys associated with this matter at the time were Robin Ball, William Cavanagh, James Copeland, Eric Daucher, Vincent El-Hayek, Marjorie Glover, William Greason, Charles Hord, Robert Kirby, Christy Rivera, Andrew Rosenblatt, and Howard Seife.

- **<u>ATTORNEYS AT LANDIS RATH & COBB LLP</u>:**  Landis Rath & Cobb served as local counsel to NextEra in this matter.  Key attorneys associated with this matter at the time were Adam Landis and Matthew McGuire.

- **<u>ATTORNEYS AT WINSTON & STRAWN</u>:**  Winston & Strawn provided assistance to NextEra on this matter.  Key attorneys associated with this matter at the time were Thomas Buchanan, John Harding, David Neier, and Dan Webb.

- **<u>ATTORNEYS AT PARSLEY COFFIN RENNER LLP / COFFIN RENNER LLP</u>**: Parsley Coffin served as NextEra's counsel before the PUCT. Key attorneys associated with this matter at the time were Ann Coffin, Evan Johnson, Julia Caruthers Parsley, Laura Robinson, and Mark Santos.

- **<u>ATTORNEYS AT BOIES SCHILLER & FLEXNER LLP</u>**: Boies Schiller provided legal counsel to NextEra in connection with its efforts to acquire Oncor. The key attorney associated with this matter at the time was Stuart Singer.

- **<u>ATTORNEYS AT MILLER & CHEVALIER</u>**: Miller & Chevalier provided legal counsel to NextEra in connection with its efforts to acquire Oncor. The key attorney associated with this matter at the time was James Warren.

- **<u>ATTORNEYS AT MCDERMOTT WILL & EMERY</u>**: McDermott provided legal counsel to NextEra in connection with its efforts to acquire Oncor. The key attorneys associated with this matter at the time were Britt Baxton, Heather Cooper, Joshua Ellenberg, Tim Shuman, Phillip Tingle, and Stephen Wells.

- **<u>ATTORNEYS AT HAYNES & BOONE</u>**: Haynes & Boone provided legal counsel to NextEra in connection with its PUCT proceedings. The key attorneys associated with this matter at the time were Nina Cortell, Ann Johnson, Diana Liebman, Ben Mesches, Ryan Paulson, and Patrick Sullivan.

- **<u>ATTORNEYS AT HOGAN LOVELLS</u>**: Hogan Lovells provided legal counsel to NextEra in connection with its efforts to acquire Oncor. The key attorney associated with this matter at the time was Mark Brennan.

- **<u>AHMAD MASUD</u>**: Mr. Masud was a Credit Suisse Managing Director serving as Global Head – Power, Utilities, and Renewables, and subsequently moved to Bank of America

Merrill Lynch ("BoAML") to serve as a Managing Director and co-head of Power and Renewable.  Mr. Masud served as a financial advisor to NextEra in connection with the transaction.

- **JASON SATSKY**:    Mr. Satsky is Global Head of Power, Utilities, and Energy Infrastructure Investment Banking at BoAML.  Mr. Satsky served as a financial advisor to NextEra in connection with the transaction.

## INTERROGATORY NO. 1(b)

> **Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning the fees and expenses described in the NextEra Application, including, but not limited to any witnesses with knowledge of discoverable information concerning**
>
> > **b. NextEra's "ongoing work on the transaction" and NextEra's statement that these expenses provided a benefit to the Estate;**

## RESPONSE TO INTERROGATORY NO. 1(b)

In response to Interrogatory No. 1(b), NextEra adopts and incorporates by reference the General Objections and its objections and response to Interrogatory 1(a), except excludes Ms. Saavedra.

## INTERROGATORY NO. 1(c)

> **Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning the fees and expenses described in the NextEra Application, including, but not limited to any witnesses with knowledge of discoverable information concerning**
>
> > **c. the "work performed on the PUCT approval process" and NextEra's statement that these expenses provided a benefit to the Estate;**

## RESPONSE TO INTERROGATORY NO. 1(c)

In response to Interrogatory No. 1(c), NextEra adopts and incorporates by reference the General Objections and its objections and response to Interrogatory 1(a), except excludes Ms. Saavedra.

## INTERROGATORY NO. 1(d)

**Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning the fees and expenses described in the NextEra Application, including, but not limited to any witnesses with knowledge of discoverable information concerning**

**d. the "expenses incurred in seeking regulatory approval from governmental bodies other than the PUCT" and NextEra's statement that these expenses provided a benefit to the Estate;**

## RESPONSE TO INTERROGATORY NO. 1(d)

In response to Interrogatory No. 1(d), NextEra adopts and incorporates by reference the General Objections and its objections and response to Interrogatory 1(a).

## INTERROGATORY NO. 1(e)

**Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning the fees and expenses described in the NextEra Application, including, but not limited to any witnesses with knowledge of discoverable information concerning**

**e. the fees for investment bank and advisory services "necessary to complete the transaction" and NextEra's statement that these expenses provided a benefit to the Estate;**

## RESPONSE TO INTERROGATORY NO. 1(e)

In response to Interrogatory No. 1(e), NextEra adopts and incorporates by reference the General Objections and its objections and response to Interrogatory 1(a).

## INTERROGATORY NO. 1(f)

**Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning the fees and expenses described in the NextEra Application, including, but not limited to any witnesses with knowledge of discoverable information concerning**

    **f. "financing-related expenses" and "bridge loan commitment fees," and NextEra's statement that these expenses provided a benefit to the Estate;**

## RESPONSE TO INTERROGATORY NO. 1(f)

In response to Interrogatory No. 1(f), NextEra adopts and incorporates by reference the

General Objections and its objections and response to Interrogatory 1(a).

## INTERROGATORY NO. 1(g)

    **Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning the fees and expenses described in the NextEra Application, including, but not limited to any witnesses with knowledge of discoverable information concerning**

        **g. NextEra's "public outreach efforts to promote the transaction and facilitate regulatory approval" and NextEra's statement that these expenses provided a benefit to the Estate;**

## RESPONSE TO INTERROGATORY NO. 1(g)

In response to Interrogatory No. 1(g), NextEra adopts and incorporates by reference the

General Objections and its objections and response to Interrogatory 1(a), except excludes Ms.

Saavedra.

## INTERROGATORY NO. 1(h)

    **Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning the fees and expenses described in the NextEra Application, including, but not limited to any witnesses with knowledge of discoverable information concerning**

        **h. NextEra's expenses related to and "efforts to plan for and facilitate the transition of EFH and its subsidiaries, and their systems and operations, to ownership by NextEra" and NextEra's statement that these expenses provided a benefit to the Estate. *See* NextEra Application ¶¶ 43–50.**

## RESPONSE TO INTERROGATORY NO. 1(h)

In response to Interrogatory No. 1(h), NextEra adopts and incorporates by reference the General Objections and its objections and response to Interrogatory 1(a).

## INTERROGATORY NO. 2

**Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning any payments made by or on behalf of NextEra to any Professionals in connection with the Chapter 11 Cases.**

## RESPONSE TO INTERROGATORY NO. 2

In response to Interrogatory No. 2, NextEra adopts and incorporates by reference the General Objections and its objections and response to Interrogatory 1(a).

## INTERROGATORY NO. 3

**Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning the NextEra Plan, including, but not limited to, negotiations of the NextEra Plan.**

## RESPONSE TO INTERROGATORY NO. 3

In response to Interrogatory No. 3, NextEra adopts and incorporates by reference the General Objections and its objections and response to Interrogatory 1(a), and further objects that, read literally, this Interrogatory would require disclosure of any person or entity with access to this Court's docket and the NextEra Plan, and, as such, is burdensome, overbroad, and harassing.

Subject to and without waiver of the above objections and the General Objections, NextEra responds as follows:  Messrs. Hickson and Sieving, and attorneys identified in response to Interrogatory 1(a) above as having been affiliated with Charbourne & Park LLP / Norton Rose Fulbright.

## INTERROGATORY NO. 4.

**Identify any witness with knowledge of discoverable information, and describe the scope of such knowledge, concerning any appeal, motion for rehearing, or motion for reconsideration filed by NextEra with respect to the PUCT's order denying approval of the NextEra Merger Agreement**

**RESPONSE TO INTERROGATORY NO. 4**

In response to Interrogatory No. 4, NextEra adopts and incorporates by reference the General Objections and its objections and response to Interrogatory 1(a), and further objects that, read literally, this Interrogatory would require disclosure of any person or entity with access to this Court's docket, and, as such, is burdensome, overbroad, and harassing.  NextEra further objects to this Interrogatory on the grounds and to the extent that it seeks information that is protected from disclosure under the attorney-client privilege and the work product doctrine.

Subject to and without waiver of the above objections or the General Objections, NextEra adopts and incorporates by reference its response to Interrogatory No. 1(a), except excludes all other than Messrs. Hickson, Litchfield, Reed, and Ms. Smith, and attorneys identified as having been affiliated with Parsley Coffin Renner LLP / Coffin Renner LLP and Haynes & Boone.

**INTERROGATORY NO. 5**

**Describe the process for calculating internal labor costs at NextEra, and provide a calculation of labor costs for each of the categories of expenses identified in Interrogatory 1(b)-(h), to the extent a category includes internal labor costs.**

**RESPONSE TO INTERROGATORY NO. 5.**

In response to Interrogatory No. 5, NextEra adopts and incorporates by reference the General Objections and its objections and response to Interrogatory 1(a), and further objects that this Interrogatory presents questions more efficiently determined at deposition or through review of NextEra's Application.  NextEra further objects on the grounds that the phrase "process for calculating internal labor costs" is vague and ambiguous, including without limited to the fact that it is unclear whether this Interrogatory seeks to determine persons responsible for calculating such costs, financial reporting for such costs, or accounting treatment for such costs (including under

14

Generally Accepted Accounting Principles or Generally Accepted Auditing Standards) and as such is overly burdensome and harassing. NextEra also objects to this Interrogatory to the extent it prematurely seeks expert testimony or opinions.

Subject to and without waiver of the above objections and the General Objections NextEra states as follows:

Internal labor costs are calculated by taking the annual salary of the individual and dividing it by 2,000 (the number of hours worked in a year) and adding to that hourly rate an additional amount comprised as a number made up of the following:

- o Non-Productive Rate Calculation: The Non-Productive Rate is calculated using prior year actual productive and non-productive payroll dollars. The rate is calculated as follows: non-productive payroll dollars divided by productive dollars. Non-productive payroll dollars include holiday, vacation, sick, short-term disability, and incentive pay.

- o Payroll Fringe Benefit Rate Calculation: The Payroll Fringe Benefit Rate is calculated using current year benefits, education assistance, and worker's compensation planned dollars as a percentage of planned salary dollars. Benefit dollars include payroll taxes, insurance, long-term disability insurance, and employer thrift contributions.

- o Space Allocation Calculation: The Space Allocation Rate is calculated using prior year actual dollars for intercompany facility and non-facility rental charges, office supplies, forms and duplicating costs, and computer hardware costs as a percentage of prior year productive payroll dollars. Computer hardware costs include expenses related to depreciation, property tax, property insurance, and a calculated cost of capital.

NextEra has produced calculations of relevant internal labor costs, which may be located at Bates range NEE_0187839 to NEE_0187963.

15

**INTERROGATORY NO. 6**

> **Describe the terms of any agreement, including any forward contract, swap agreement, option, security, derivative, forward purchase, or sale arrangement, or any other hedging arrangement, transaction, or agreement, entered into by NextEra or any affiliate or subsidiary thereof relating to or in connection with NextEra's pursuit of the NextEra Merger Agreement or any transaction contemplated thereby (the "Oncor Transaction"), or to facilitate future transactions contemplated in connection with an anticipated closing of the Oncor Transaction.**

**RESPONSE TO INTERROGATORY NO. 6**

In addition to the General Objections, NextEra objects that this Interrogatory seeks information that is not relevant to the question of whether NextEra is entitled to an administrative expense claim under 11 U.S.C. §503, and, if so, the amount of any such claim. As such, this Interrogatory is overly broad and unduly burdensome and seeks information not relevant to any party's claim or defense in this claims proceeding or proportional to the needs of this proceeding and exceeds the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1). NextEra further objects to this Interrogatory to the extent it calls for the identification of information set forth in documents that are or will be produced in connection with UMB/Elliott's document requests. NextEra further objects that the phrases *"...any transaction contemplated thereby (the "Oncor Transaction")"* or *"...to facilitate future transactions contemplated in connection with an anticipated closing of the Oncor Transaction"* is unduly vague and ambiguous and, as such, renders this Interrogatory further burdensome. NextEra further objections to this Interrogatory on the grounds that it seeks confidential competitive business information that is not relevant, or whatever marginal relevance such information may possess is outweighed by risks of burden, confusion, and prejudice.

Subject to and without waiver of the above objections and the General Objections, NextEra states as follows: NextEra engaged in three transactions intended to facilitate its acquisition of Oncor. In July 2016, NEER sold certain Pennsylvania gas generating assets (a.k.a. "Marcus

16

Hook") to an investment affiliate of Starwood Energy Group Global, LLC, for total consideration of $760 million.  In November 2016, NEER sold FiberNet, its fiber-optic telecommunications business, to Crown Castle International Corp. for $1.5 billion in cash.  Finally, to assure that it would have loan financing in place at closing for a portion of the purchase price, and pending the arrangement of final loan financing arrangements, NextEra entered into a bridge loan financing commitment agreement.

Dated:  July 22, 2021

**FLEISCHMAN BONNER & ROCCO LLP**

/s/ *Keith M. Fleischman*

Keith M. Fleischman
81 Main Street, Suite 515
White Plains, New York 10601
Tel: (914) 278-5100
Fax: (917) 591-5245
kfleischman@fbrllp.com

*Counsel for NextEra Energy Inc.*

## **EXHIBIT F**

**July 29, 2021 Letter from M. McGinnis to K. Fleishman**



ROPES & GRAY LLP
PRUDENTIAL TOWER
800 BOYLSTON STREET
BOSTON, MA 02199-3600
WWW.ROPESGRAY.COM

July 29, 2021

Matthew L. McGinnis
T +1 617 951 7567
matthew.mcginnis@ropesgray.com

**BY E-MAIL**

Keith M. Fleischman (kfleischman@fbrllp.com)
James P. Bonner (jbonner@fbrllp.com)
Joshua D. Glatter (jglatter@fbrllp.com)
Fleischman Bonner & Rocco LLP
81 Main Street, Suite 515
White Plains, NY 10601

Re:    *In re Energy Future Holdings Corp.*, et al., Case No. 14-10979 (Bankr. D. Del.)

Dear Counsel:

        I write regarding NextEra Energy Inc.'s ("NextEra") *Responses and Objections to UMB/Elliott's First Request for Interrogatories Concerning the NextEra Application* ("NextEra's Interrogatory Responses") served on June 22, 2021.[1]

        UMB/Elliott's Interrogatory No. 6 asks NextEra to "[d]escribe the terms of any agreement, including any forward contract, swap agreement, option, security, derivative, forward purchase, or sale arrangement, or any other hedging arrangement, transaction, or agreement, entered into by NextEra or any affiliate or subsidiary thereof relating to or in connection with NextEra's pursuit of the NextEra Merger Agreement or any transaction contemplated thereby (the "Oncor Transaction"), or to facilitate future transactions contemplated in connection with an anticipated closing of the Oncor Transaction." *See* UMB/Elliott's Interrogatories at 4-5.  The information requested by this interrogatory is relevant to the current proceeding because, among other things, it may bear on the extent to which NextEra actually incurred expenses (as opposed to making a profit) for which it seeks reimbursement, as well as NextEra's rationale for seeking multiple rehearings of the PUCT order. The existence of hedging arrangements by NextEra is, moreover, confirmed by documents in NextEra's production, which reference a "hedge value" related to the Oncor Transaction.  *See, e.g.*, NEE_0185879.

        NextEra's Interrogatory Response to Interrogatory No. 6 does not, however, describe the terms of the hedging transactions, but instead only provides information about certain asset sales and

---

[1]    Capitalized terms used but not defined herein have the meanings ascribed to them in *UMB/Elliott's First Request for Interrogatories Concerning the NextEra Application* ("UMB/Elliott's Interrogatories," and each an "Interrogatory").

ROPES & GRAY LLP

                                        - 2 -                                July 29, 2021

other transactions purportedly used by NextEra to finance its contemplated purchase of the Oncor assets.

Accordingly, we ask that NextEra supplement its response to UMB/Elliott's Interrogatories to provide a complete response to Interrogatory No. 6, including by identifying the terms of its hedge transactions that relate to the Oncor Transaction and all other agreements requested by Interrogatory No. 6 by Monday, August 2, 2021.  If NextEra fails to do so, UMB/Elliott reserve all rights to seek relief from the Court.

Very truly yours,

Matthew L. McGinnis

cc:    Gregg M. Galardi (Gregg.Galardi@ropesgray.com)
       Daniel G. Egan (Daniel.Egan@ropesgray.com)
       Mark McKane (mmckane@kirkland.com)