# FLEISCHMAN BONNER & ROCCO LLP
## ATTORNEYS AT LAW

81 MAIN STREET • SUITE 515 • WHITE PLAINS • NEW YORK • 10601
TEL: 914.278.5100 • FAX: 917.591.5245 • WEB: WWW.FBRLLP.COM                   EMAIL: kfleischman@fbrllp.com

August 5, 2021

**VIA ECF**

The Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

      Re:    *In re Energy Future Holdings Corp., et al.*, **Case No. 14-10979 (Bankr. D. Del)**

Dear Judge Sontchi:

      I write on behalf of NextEra Energy, Inc. in response to UMB/Elliott's August 3, 2021 letter (Dkt. #14296). For the reasons detailed below, the Court should deny Elliott's requested relief.

**NextEra's Document Production**

      In difficult circumstances, NextEra has complied with the Scheduling Order by producing more than 80% of its documents—16,643 (including 15,156 documents not previously produced in this proceeding)—by the Court-ordered deadline for "substantial" completion, with a further 3,746 documents being produced in the past four days.[1] In total, NextEra has produced 18,902 documents not previously produced in this proceeding, comprising 282,679 pages.[2]

      No basis exists for excluding all documents produced after Elliott's randomly chosen date.[3] To assess Rule 37(c) preclusion requests, courts must consider: "(1) the prejudice or surprise to a party against whom the evidence is offered; (2) the ability of the injured party to cure the prejudice; (3) the likelihood the admission of the late evidence would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) bad faith or willfulness in failing to comply with the Court's Orders; and (5) the importance of the evidence to the proffering party." *Kelly v. Atl. Cape Fisheries, Inc.*, 2017 U.S. Dist. LEXIS 179808, at *3-4 (D.N.J. Oct. 30, 2017) (internal citations omitted).

      Documents NextEra produced after July 19 provide important substantiation of its expenses. For example, NextEra's vendor inadvertently omitted 489 documents from the July 19 production. We have previously outlined the extraordinary efforts we have undertaken to meet the scheduling deadlines, although the parties had agreed upon a more extensive document production period. What Elliott mischaracterizes as "NextEra's apparent unwillingness to comply with the scheduling order" in fact represents ordinary efforts to find omissions from a large production complicated by significant

---

[1] NextEra intends to make a supplemental production of more legible and complete versions of expense invoices NextEra has already produced. In addition, we are re-reviewing documents encountered during the preparation of NextEra's privilege log that we suspect may have been incorrectly coded as privileged.

[2] The production burdens have been asymmetrical. During the same period, Elliott and the PAB produced 88 documents (747 pages) and 96 documents (2,213 pages), respectively.

[3] Well aware that NextEra did not make its first supplemental production until August 2, Elliott attempts to appear more reasonable by seeking to preclude any documents produced more than seven days after the substantial completion deadline. In reality, Elliott seeks the unprecedented sanction of precluding any document not produced *by the deadline for substantial completion*.

**FLEISCHMAN BONNER & ROCCO LLP**
ATTORNEYS AT LAW

The Honorable Christopher S. Sontchi
August 5, 2021
Page 2

privilege issues and to cure technological issues.[4]

Elliott does not—and cannot—claim that NextEra's production of these documents will disrupt the orderly and efficient trial of this matter. It merely claims that it is being prejudiced in its "pretrial preparations." But Third Circuit Courts have repeatedly expressed their preference for resolving cases on their merits absent willful misconduct, and have emphasized that scheduling extensions provide a preferred alternative to preclusion sanctions when parties act in good faith. *See e.g., Abb Air Preheater, Inc. v. Regenerative Envtl. Equip. Co., Inc.*, 167 F.R.D. 668, 671 (D.N.J. 1996) (noting the Third Circuit's "distinct aversion" to the exclusion of evidence absent "extreme neglect or bad faith"); *Accord Worster-Sims v. Tropicana Entm't, Inc.*, 2015 U.S. Dist. LEXIS 152022, at *2-5 (D.N.J. Nov. 10, 2015). Here, Elliott neither points to any willful misconduct nor cites any authority for the preclusion order it requests. Third Circuit precedent compels the more equitable and less onerous alternative of permitting Elliott additional time to conduct fact depositions, if it really needs that relief. *Worster-Sims*, at *2 (permitting documents produced on the last day of discovery while extending fact deposition deadline).

Elliott's request that the Court preclude NextEra from calling certain witnesses is similarly misguided. NextEra did not "unilaterally eliminate[e]" eight custodians of "relevant and responsive information" from its production. Given the compressed schedule, we advised opposing counsel that NextEra would search for and produce all relevant documents possessed by the company's three most senior custodians: James Robo, CEO; Mark Hickson, Executive Vice-President, Corporate Development, Strategy; and Charles Sieving, General Counsel. Besides those documents—which include virtually all of NextEra's important communications—NextEra produced responsive materials located in various files maintained elsewhere at the company. As a result, NextEra produced many documents from the custodial files of other personnel involved in the relevant events,[5] and NextEra's document production includes thousands of email communications to or from the very individuals Elliott identified.[6] Furthermore, nothing in the Federal Rules of Civil Procedure require the production of "custodial files" for every witness offered at trial, nor has Elliott identified such authority.[7]

**Redacted Board Materials**

Elliott's criticisms of NextEra's redaction of its Board minutes and materials also lacks merit. NextEra has produced all non-privileged information that relates to the attempted Oncor acquisition or NextEra's expense application. The redactions properly exclude privileged or highly sensitive and confidential information completely irrelevant to this matter. *See, e.g., Marsee v. United States Tobacco Co.*,

---

[4] In a further effort to imply bad faith on NextEra's part, Elliott/UMB asserts that NextEra "has *suggested*" that its post-July 19 supplemental productions "primarily include reproductions of documents in previous productions." (Emphasis added.) To the contrary, on July 19, we advised all parties that "we have not entirely completed our review of all potentially responsive documents and anticipate that we will be making one or more supplemental productions."

[5] Wade Litchfield (173 documents); Meredith Quick (7,432 documents); Petter Skantze (120 documents); David Tahan (615 documents); Brian Anderson (477 documents); Kimberly Ousdahl (343 documents); and Natalie Smith (2,569 documents).

[6] Litchfield (520 emails); Quick (6,614 emails); Nicole Saavedra (793 emails); Skantze (635 emails); Tahan (832 emails); Anderson (869 emails); Ousdahl (544 emails); and Smith (2,275 emails).

[7] Furthermore, Scheduling Order ¶7(a) provides for the deposition of any trial witness not previously deposed for discovery within ten days prior to trial.

Case 14-10979-CSS    Doc 14300    Filed 08/05/21    Page 3 of 3

FLEISCHMAN BONNER & ROCCO LLP
ATTORNEYS AT LAW

The Honorable Christopher S. Sontchi
August 5, 2021
Page 3

866 F.2d 319, 326 (10th Cir. 1989) (permitting redactions of material "both irrelevant and protected by either the work product or attorney-client privilege."); *Dearien v. Union Carbide Corp.*, 2021 U.S. Dist. LEXIS 43289, at *6 (S.D. W. Va. Mar. 9, 2021) (redactions "to exclude non-responsive or otherwise irrelevant information" was "proper given the sensitive nature of the information withheld and its minimal, if any, relevance"); *Holley v. Gilead Scis., Inc.*, 2020 U.S. Dist. LEXIS 78899, at *25-26 (N.D. Cal. May 1, 2020) (permitting redaction of "irrelevant information given the commercially sensitive nature of matters discussed at Board meetings").

**NextEra's Interrogatory Response**

NextEra has provided a complete answer to UMB/Elliott's interrogatory No. 6 by disclosing information regarding post-Merger Agreement expenses that NextEra incurred attempting to benefit the Debtors' estates by taking steps necessary to close that transaction. In contrast, NextEra conducted the hedging transactions Elliott references *before* NextEra entered the Merger Agreement. Moreover, NextEra made that investment decision for its own benefit and assumed all of the risk inherent in the transaction. As Elliott knows, NextEra also excluded from its administrative expense application roughly $243 million in losses arising from an "equity forward" transaction related to the proposed Oncor acquisition although NextEra entered that arrangement *after* executing the Merger Agreement. Again, NextEra excluded those costs because it entered the equity forward arrangement solely to protect its own interests, as opposed to those of the Debtors' estates. Consistent with that approach, Elliott's own administrative expense application made no mention of the enormous profits it derived from its independent investment decisions regarding the Debtors' securities.

When all costs associated with NextEra's failed acquisition efforts are totaled, the company lost hundreds of millions of dollars, not just the roughly $60 million included in its expense application. Thus, no basis exists for questioning NextEra's candor with the Third Circuit.[8] In contrast, Elliott falsely represented to the Court of Appeals that the Debtors' interest expenses equaled more than $50 million per month, although Elliott's own testimony shows that those costs totaled less than half that amount.

Moreover, Elliott—one of the world's most sophisticated investors—articulates no basis for its wild speculation that the pre-Merger Agreement hedging arrangements could provide a "significant hidden financial motive not to terminate the merger agreement." That claim makes no sense, as the profitability of the hedges was dictated by market forces, not the Oncor acquisition's completion.

Respectfully submitted,

Keith M. Fleischman

Cc: All Counsel (VIA ECF)

---

[8] UMB/Elliott justifies its unfounded attempt by citing to a single, partial sentence in NextEra's Third Circuit appellate brief. This partial quote does not accurately represent NextEra's statement—that, "whether seen as negligent misrepresentation, malpractice or a contractual breach," the Debtors' "inequitable, improper conduct" at the Approval Hearing "caused NextEra to suffer massive losses pursuing the Merger's consummation." (Appellant's Br. at 39). NextEra was specifically referring to expenditures it made "in reliance on the Debtors' false statements" at the Approval Hearing. Those expenditures are the expenses explicitly listed in NextEra's Expense Application. Any reading of the full passage in NextEra's Appellant Brief defines the massive losses as the exact subject matter of the Expense Application.