1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4    In re:                          :

5                                    :    Chapter 11

6    ENERGY FUTURE HOLDINGS CORP., :    Case No. 14-10979-CSS

7            Debtors.                :    (Jointly Administered)

8    _____:

9

10                                   United States Bankruptcy Court

11                                   824 North Market Street

12                                   Wilmington, Delaware

13                                   August 5, 2021

14                                   1:00 p.m. - 1:31 p.m.

15

16

17

18

19

20

21    B E F O R E :

22    HON CHRISTOPHER S. SONTCHI

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO OPERATOR:  MANDY BARTKOWSKI

1    HEARING re Discovery Dispute

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    RICHARDS, LAYTON & FINGER

4         Attorneys for the Debtor

5

6    BY:  JASON MADRON

7         DANIEL DEFRANCESCHI

8

9    GIBSON DUNN

10        Attorneys for Berkshire Hathaway Energy

11

12   BY:  STEVEN SLETTEN

13

14   ROPES & GRAY LLP

15        Attorneys for Elliott

16

17   BY:  GREGG GALARDI

18        NOVA ALINDOGAN

19        MATTHEW MCGINNIS

20

21   LANDIS RATH & COBB

22        Attorneys for NextEra

23

24   BY:  MATTHEW MCGUIRE

25

```
 1   FLEISCHMAN BONNER & ROCCO LLP

 2        Attorneys for NextEra

 3

 4   BY:  JAMES BONNER

 5        KEITH FLEISCHMAN

 6        JOSHUA GLATTER

 7        PATRICK ROCCO

 8

 9   GIBSON DUNN & CRUTCHER LLP

10        Attorneys for Berkshire

11

12   BY:  JEFFREY KRAUSE

13

14   KIRKLAND & ELLIS LLP

15        Attorneys for the Debtor

16

17   BY:  APARNA YENAMANDRA

18        MARK MCKANE

19

20   BAYARD, PA

21        Attorneys for UMB & Elliott, et al.

22

23   BY:  ERIN FAY

24

25
```

1   GRAY ROBINSON P.A.

2         Attorneys for Sempra Energy

3

4   BY:  JEFFREY SCHLERF

5

6   CHIPMAN BROWN CICERO & COLE, LLP

7         Attorneys for Berkshire

8

9   BY:  WILLIAM CHIPMAN

10

11  WHITE & CASE LLP

12        Attorneys for Sempra Energy

13

14  BY:  ALICE TSIER

15

16  ALSO PRESENT TELEPHONICALLY:

17

18  UDAY GORREPATI

19  RACHEL WERKHEISER

20  CHARLES SIEVING

21  MITCHELL MCVEIGH

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  Good afternoon, everybody.  This is

3     Judge Sontchi.  We're here in the EFH case for a discovery

4     dispute.  I'll turn it over to the movant.

5              MR. McKANE:  Your Honor, it's Mark McKane on

6     behalf of the Plan Administrative Board.  Before we get to

7     the movant, do you mind if we provide just a quick update as

8     to where we stand with this matter?

9              THE COURT:  No, that'd be fine.

10             MR. McKANE:  Thank you, Your Honor.  Just a level

11    set, Your Honor, because we are about a month out from

12    trial.  As the Court knows, we are here on a -- I believe a

13    document -- largely, (sound drops) substantially completed

14    their productions on July 9th.  The Court gave NextEra an

15    additional ten days to July 19th.  We are here on their

16    issue and productions thereafter.

17             We are currently in the fact deposition window.

18    No fact depositions have been taken to date.  We have until

19    August 20th to do so.  NextEra has agreed to make available

20    its CEO, its CFO, and its general counsel who were all

21    involved in the transaction.  Mr. Horton for the PAB will be

22    deposed as will Mr. Rosenbaum on behalf of Elliott.  NextEra

23    has also noticed a series of third-party depositions that

24    you may or may not have seen just from the notices on the

25    docket.

1          That includes Sempra, Berkshire, and Evercore.

2     There may be disputes about those depositions.  They have

3     not been set on the calendar yet, but we do recognize that

4     Your Honor, we have an EFH omnibus hearing on the schedule

5     for next Friday.

6          With regard to experts, NextEra has disclosed two

7     experts, an accountant and an investment banker.  Rebuttal

8     reports, if any, are due next Friday, August 13th.  The

9     parties have until August 27th to complete expert

10    depositions, and then with regard to pretrial briefs,

11    NextEra's opening brief is due August 27th.

12         The Elliott and PAB responses are due September

13    3rd and a reply is due Friday, September 10th.  We currently

14    have five trial dates set aside starting the Monday after

15    the reply brief on the 13th and 14th of September, a pause

16    for the Jewish holidays, and then we're picking back up on

17    September 20, 21, and 22.

18         And then, Your Honor, hopefully that will help in

19    the evaluating some of the issues today, where we stand on

20    August 6th, one month out from trial.

21         THE COURT:  Thank you, Mr. McKane.

22         MR. McGINNIS:  With that, Your Honor, Matt

23    McGinnis of Ropes and Gray on behalf of Elliott.  May I

24    proceed?

25         THE COURT:  Yes.

1          MR. McGINNIS:  Thank you, Your Honor.  Nice to see

2    you.  Your Honor, I think have three issues to address with

3    the Court today with respect to discovery.  If you'd like,

4    I'm happy to address all three up front, or address the

5    first and take it point by point.

6          THE COURT:  No, no.  Let's do it all up front.

7          MR. MEYERS:  So our first issue us, I think, which

8    we've outlined in our letter relates to the schedule and

9    timing of doc reviews.  As Your Honor knows, the original

10   deadline for document productions was July 9th.  That was

11   then (sound drops) by Your Honor to July (sound drops).  We

12   are now almost three weeks past that deadline.  NextEra is

13   still producing documents.  They've produced a lot of

14   documents over the last week or so, and at least as I stand

15   here today, my understanding is that they continue to

16   produce additional documents after this point.

17          They also don't dispute that the documents that

18   they have been producing since the deadline passed are

19   material and substantive to their claim.  They include,

20   actually, a lot of the substantiation for the expenses that

21   they are seeking and the motion that they first filed three

22   years ago.

23          You know, in terms of numbers, just to give you a

24   sense of what we're talking about here, by our count, about

25   36 percent of their production, at least by page count, has

1   come after the deadline.  And by after, what I'm referring

2   to here is more than two weeks after that deadline on a

3   matter that is scheduled to go to trial in September.

4           I don't think there's any disagreement on some of

5   that.  I think the disagreement, obviously, is what is the

6   appropriate remedy in the current circumstances.  As we say

7   in our brief or our letter, Your Honor, we certainly defer

8   to the Court as to the appropriate remedy for a violation of

9   a scheduling order.  I will note, however, that, you know,

10  NextEra did previously twice seek an extension of the

11  schedule, first in connection with agreeing on a schedule up

12  front and then second, when it sought two extra months at

13  the time of the doc production deadline and Your Honor

14  denied both of those requests.

15          For that reason, we do think it would be

16  appropriate for the Court to preclude the admission of all

17  of this late produced information at the trial in September,

18  and I think your Court does have the authority to do that

19  under Rule 37 of the civil rules.  Alternatively, to the

20  extent that the Court inclined to instead address what I

21  would say is a scheduling issue, I think our only ask is

22  that any adjustment to the schedule does not give NextEra

23  the benefit of that extension that it originally sought and

24  was denied.

25          And what I mean by that is to the extent that

1    there's any modification to the schedule, we would simply

2    ask that the objectors be the ones who actually benefit from

3    getting the (sound drops) time to review the documents the

4    parties -- or that NextEra has submitted.

5           So that would mean, for example, that NextEra

6    should continue to be limited to the existing discovery

7    schedule in terms of the depositions they take, that they

8    can't take additional discovery, but instead that the

9    objectors should be able -- permitted to move the

10   depositions that we need to take of their witnesses out.

11          That would probably mean, of course, an extension

12   of the briefing deadline -- for our brief, not theirs -- and

13   as a practical matter, I suspect that would require some

14   adjustment to the hearing date at the end of the day as

15   well.

16          What I can tell you today, Your Honor, as I stand

17   here is exactly what that modification would need to like,

18   in part because I don't know when NextEra will be done

19   producing documents.

20          THE COURT:  Okay.  Oh, sorry.  Go ahead.  Go

21   ahead.

22          MR. McGINNIS:  If Your Honor has no questions on

23   that issue, I can go and move on to the second and third,

24   which I think are somewhat more discrete discovery issues.

25   The second issue, Your Honor, we raised relates to the

1   redactions of NextEra's board materials.  We've included an

2   example of this with our letter.  What you will see there is

3   the -- that almost the entire document is redacted.

4   Probably somewhere around 75 percent from what we have found

5   in their production so far.  Before bringing this to the

6   Court, we asked for them to consider whether these were

7   over-redacted.

8            Their response, as you can see from their letter

9   last night, was that they had redacted both for privilege

10  but also for responsiveness on the ground that, I believe,

11  they say some of the information is not responsive and

12  highly sensitive.

13           As a practical matter, if you look that, they've

14  essentially redacted everything to the point where the

15  document is unusable, and I will note that the board

16  meetings that we're talking about here are at critical

17  points in time.  For example, the first set there is May

18  18th, 2017.  That is, I think, five or six days after

19  NextEra filed its first of two motions for re-hearing before

20  the PUCT for seeking approval of the NextEra-Encore

21  transaction.

22           We have no disagreement that they should be

23  permitted to redact for privilege purposes, of course.  I

24  think it's clear from the face of the documents that they

25  have redacted significantly more than what is privileged,

1     and so we'd ask Your Honor to direct them to re-review and

2     reproduce with appropriate redactions.  If Your Honor has no

3     questions on that issue, I can go ahead and turn to the

4     third point.

5          The third point, Your Honor, relates to a

6     particular interrogatory response of NextEra.  Under the

7     interrogatory, we asked NextEra to detail the hedging

8     arrangements that it had in place during the pendency of the

9     NextEra-Encore transaction.  And I don't think there's any

10    dispute that NextEra did have hedging arrangements in place

11    during this time.

12         NextEra's position, as I understand it, is those

13    transactions are irrelevant because NextEra entered into

14    hedging arrangements solely for their own self-interest, as

15    in they were doing it to protect essentially against market

16    fluctuations because of financing, and because it was in

17    their own self-interest rather than in the interests of the

18    estate or for the benefit of the estate.  It's not relevant

19    and shouldn't be produced.

20         Our view, Your Honor, is I think that is precisely

21    the point as to why this should be discoverable.  We expect,

22    based on what we know at this point, that as of March 30th,

23    2017 -- and that date is critical because March 30th, 2017

24    is when the PUCT first indicated in an open meeting that it

25    was likely to deny approval of the NextEra transaction.  As

1    of that point, NextEra expected that it would substantially

2    profit from the Encore transaction even if it was not

3    consummated because of these hedging transactions.

4            And for that reason, Your Honor, we expect that

5    the evidence is going to show that they were motivated and

6    perfectly happy to continue seeking re-hearing after re-

7    hearing after appeal, because they know they were always

8    good -- money good anyway for that entire time period.

9            I recognize and expect that NextEra is going to

10   say that that is irrelevant.  They're free to, of course,

11   object to the relevance of that at trial, Your Honor, but I

12   think at a minimum, for purposes of a discovery question,

13   they should be directed to provide that factual information

14   in response to the interrogatory.

15           So if no questions with Your Honor, I'll go to

16   ahead and turn it over to --

17           THE COURT:  All right, thank you.  Thank you, Mr.

18   McGinnis.  I appreciate it.  Thanks.  I assume it's Mr.

19   Fleischman, going to --

20           MR. FLEISCHMAN:  Yes, Your Honor.  Yes, Your

21   Honor.  To the document point, as Your Honor is aware from

22   prior correspondence, and Your Honor gave us an additional

23   ten days past the original deadline, we moved heaven and

24   earth, and in fact, the important number is we produced 80

25   percent of our documents on or before the date that we had

1    to substantially produce.  Eighty percent.  And the idea

2    that, you know, invoices that may have 100 or 200

3    attachments to them somehow constitute important documents

4    or -- they're not.  They're pages of a single document.  And

5    so the Elliott and the PAB in this case, we absolutely

6    complied with Your Honor's scheduling order.  We

7    substantially produced over 80 percent.

8              And in fact, as our letter indicates, some of the

9    documents we produced after the fact were documents that

10   were requested by Elliott and the PAB and also were

11   documents that we wanted to give them a better resolution so

12   that they could understand the documents and read the

13   documents.  Some of the documents, they complain about Mark

14   Hickson's, Jim Robo, and Charlie Sieving's documents, that

15   there were 3,000 of those documents produced.  In fact, they

16   were -- it's closer to 2,400, 2,500 documents.

17             That's -- we had already produced over 50 percent

18   of their documents beforehand, and my understanding from the

19   review teams are that most of those documents that were

20   produced for -- that are their (sound drops) from their

21   custodian files were produced late or produced after the

22   substantial production period because they got a second

23   review.  There were more search terms added to those

24   documents because they were either sensitive and, in some

25   cases could have been privileged, so -- but the bottom line

1    here, Your Honor, is we produced over 80 percent of our

2    documents by the cutoff for substantial production and the

3    complaints that Elliott have are just -- they're just not --

4    they're baseless.

5            I mean, they're baseless complaints, and so, you

6    know, I think, look, if Elliott wants more time to look at

7    documents that they have, you know, we don't object to

8    giving them more time.  But certainly, we have not violated

9    the order and it would be highly prejudicial in any way to

10   somehow lay blame on NextEra in this particular situation.

11   I will note that we do intend to make a supplemental

12   production of more legible documents and some complete

13   versions of expense invoices.

14           There was some inadvertent error on the part of

15   both the client and the vendor in connection with gathering

16   those documents and that production will be made certainly

17   by early next week.  But they have the bulk of the documents

18   and, you know, they've produced very few documents -- not

19   that that's relevant to this inquiry, but we have had the

20   tremendous burden of coming in and producing these documents

21   and we did.  We did it.  We put a very short fuse on this

22   and we (indiscernible).

23           In connection with the board minutes, Judge, just

24   so we clarify, I think that Mr. McGinnis might have just

25   misspoke, but our letter is very clear.  The redactions

1   properly exclude privileged or highly sensitive and

2   confidential information completely irrelevant to this

3   matter.  And so these redactions were done by the client.

4   Anything that -- anything, either a discussion or a topic

5   point that has to do with the Encore transaction is produced

6   and it just so happens that that's how it came out in the

7   board minutes and in the attachments to the board minutes.

8           So anything, anything.  We did not withhold

9   anything that has to do with the Encore transaction, and

10  they're just not entitled to know sensitive business

11  information that has absolutely nothing to do with this

12  transaction.  They're simply -- that's the law.  They're

13  simply not entitled and the law provides for redaction of

14  board minutes in this exact situation.

15          And it's -- so, and I'm making that representation

16  to the Court.  Not one -- not one sentence that had to do

17  with the Encore transaction was withheld.  It is irrelevant

18  information.  I'm looking at one of the board minutes right

19  now.  That's (indiscernible).

20          As to the third point, which is Interrogatory No.

21  6, Your Honor, we applied -- if you read Ropes and Gray's

22  letter closely, which is signed by Mr. McGinnis, they don't

23  even in the back get it right in connection with the

24  administrative expense.  The quote that they half name, that

25  they half set forth in their letter -- we, in a footnote,

1    give you the full quote -- and if you look back on that

2    briefing and you look back on the Third Circuit opinion,

3    that all revolves around the administrative fee.

4            It is the administrative expense, what we're

5    asking for now, $56 million, that is referenced

6    (indiscernible).  The hedging transaction, number one, was

7    done prior -- prior -- to the merger agreement being signed,

8    prior to the Encore transaction.  And it absolutely has no -

9    - and Mr. McGinnis is right in what he said.  It's

10   absolutely not relevant in connection with the application

11   that we're making before this Court for administrative fee.

12           We're not asking for fees in connection with it.

13   We're asking for fees in connection with the two

14   transactions that were used for funding the Marcus Hook

15   transaction and the FiberNet transaction and we have given -

16   - that's how we answered the interrogatory.  So we think

17   it's beyond the scope.  It's not relevant to this matter and

18   it's clearly beyond the focus of any relevancy for the

19   administrative application that we're asked.  You know, as I

20   said before, Your Honor, if Elliott and the PAB need more

21   time, unlike them, we're not going to oppose that.

22           And certainly, we should not be prejudiced or

23   further prejudiced in connection with the really herculean

24   effort that we've made to produce and to comply with this

25   Court's order.

1              THE COURT:  Thank you, Mr. Fleischman.  Mr. McKane

2    any -- I forgot to ask you.  Any comment?  I know you didn't

3    send a letter.

4              MR. McKANE:  Your Honor, we did not send a letter.

5    I would say the --

6              THE COURT:  I'm not objecting to you not sending a

7    letter.  That's just fine.

8              MR. McKANE:  With our -- you know, with our

9    limited resources, we try to conserve.  I think the PAB is

10   concerned with the rollout of documents and the relative

11   timing here.  That is an issue and, for example, to the

12   extent that there are 2,500-some-odd documents coming out of

13   the files from Mr. Hickson and Mr. Robo and Mr. Sieving,

14   those are the three witnesses that NextEra is putting

15   forward that I believe, you know, Elliott and UMB or, you

16   know, we're going to take the lead on and depose.  But with

17   regard to the -- you know, those are material issues to us.

18              To the extent that -- to the extend that we're

19   kind of advancing on this pace and on this clip, we have to

20   be able to work together on that.  On the other issues, on

21   the hedging documents, I think that there's going to be an

22   issue in the case with regard to -- and it's just been

23   highlighted in the prior briefing and in the Third Circuit,

24   with regards to whether there is an offsetting cost on the

25   estate.

1              And to the extent that there's a period of time

2       that's going to be focused by the parties and the Court, it

3       will be during that period of time from March 30th of 2017

4       when the commissioner of the PUCT told Mr. Robo, you're deal

5       killers are our deal killers, thereon until the termination

6       of the NextEra transaction, I believe, on July 9th.  And so

7       what went on during that period of time in terms of decision

8       making, you know, to (sound drops) NextEra to continue to

9       proceed forward, that's clearly relevant.

10             And so I just have to highlight that to the Court.

11      You know, there are statements, obviously, in Mr.

12      Fleischman's papers, you know, assertions of quotes from --

13      suggesting malpractice or misstatements to the Court about

14      hearings that he wasn't even a part of.  I mean, I think all

15      that should just be set aside.  It's baseless.

16             I'm not trying to take those on here, but I do

17      want to highlight for the Court that, like, so the issues

18      that are being raised by Elliott and UMB with regard to

19      document productions, timing, redactions, and the hedging

20      issues do go to issues that, you know, are relevant to the

21      dispute that'll be presented to the Court.

22             THE COURT:  Thank you, Mr. McKane.  Mr. McGinnis?

23             MR. McGINNIS:  Mr. McKane actually stole a lot of

24      my thunder, so I actually have very little left to say.  I

25      think he's covered the points I would have made on the

1    timing of doc review.  Very briefly on the redactions issue,

2    if you look at the -- I mean, they've redacted the names of

3    people.  This isn't simply redacting highly sensitive

4    information about things that happened four years ago.  They

5    redacted everything except, you know, a stray sentence or

6    two.  The law is, you don't redact for responsiveness.  You

7    redact for privilege.

8            If there is a specific confidential, highly

9    sensitive issue, we're happy to confer about that, but they

10   really -- done is redact pretty much everything.

11           Last point on the interrogatory issue regarding

12   hedging arrangements, I think if you look at your letter,

13   they're arguing the facts.  They're arguing why certain

14   transactions may not be relevant here.  NextEra is free to

15   argue the facts as to whether these are or are not relevant

16   at trial.  The only question today is whether we should have

17   discovery over them.  Thank you, Your Honor.

18           THE COURT:  You're welcome.  Mr. Fleischman, I

19   generally wouldn't do this, but I kind of got Mr. McKane

20   after you and I should have had him before you, so is there

21   anything you'd further like to respond to?

22           MR. FLEISCHMAN:  No, Your Honor.  You know, again,

23   I'm not going to reiterate what I've already represented to

24   the Court and in our letter, but them saying that somehow

25   these -- again, these hedging agreements happened before the

1    transaction and them wanting to bring in anything to cloud

2    the issue, and the issue is not, Your Honor, expense -- the

3    issue is not transactions that NextEra did.  The issue is,

4    is there an offsetting cost to the estate that somehow goes

5    against the $56 million that we'll be applying to the Court

6    for?  That's the issue.

7              So this is a red herring.  They're trying to lead

8    the Court in a way -- it's not -- it simply is not relevant,

9    transactions that were done prior to this transaction just

10   so they can come and say there was a gain or there was a

11   loss.  The issue is, is there a number on the other side

12   that offsets -- on the side of the PAB, on the side of

13   Elliott, that offsets the $56 million that we're applying to

14   the Court for.  That's the issue in the case, and that's the

15   issue in the briefing.

16             None of this -- this is something new that they

17   found and they want to explore.  It is absolutely not

18   relevant and it's not an issue in the case.

19             THE COURT:  All right.  Well, thank you, everybody

20   and thank you for your letters.  So I'll deal with it

21   seriatim.

22             In connection with the document production, as the

23   parties are more than well aware, I set this matter for a

24   rather expedited trial, I supposed, in the non-bankruptcy

25   world on a very large $56 million or $60 million

1    administrative expense claim, but in the bankruptcy world, a

2    pretty sort of normal and if not extended amount of time

3    that one would -- you normally spend on a trial in

4    connection with administrative expense claim.

5              This is a very large claim and there was new

6    counsel to NextEra, and while that's NextEra's decision to

7    do that, it is something the Court, you know, needs to take

8    into account, just given the limits of human ability to

9    process information.

10             I felt and continue to feel and think that the

11   document production deadlines and the entire scheduling

12   order is appropriate and it's not moving because, frankly,

13   after having a very slow summer, I have a very busy fall and

14   I do not have a lot of time on my calendar, really, almost

15   until November to have this kind of five days set aside

16   solely for a trial and I don't think that's a service to an

17   estate with very meager resources and dwindling resources, I

18   guess a post -- I mean, I don't know if it's an estate, but

19   a post-confirmation effective date estate, whatever you want

20   to call it as a legal matter, but has limited resources that

21   are quickly dwindling based on this really quite extensive

22   litigation.

23             I'm just not doing it.  I'm not extending the

24   time.  So there was a request to both extending hearing date

25   and extending objection deadline and I went with what I

1    thought was an appropriate response which was urged by --

2    I'm going to call them Elliott, but I know it's a consortium

3    -- Elliott and the PAB for a ten-day extension and again, I

4    thought that was appropriate, so I gave it.

5            Now, I had hoped that all of the documents would

6    be produced by the -- by that date, but my experience over

7    the last 15 years as a trial judge in bankruptcy court is

8    that document production is rarely actually finished by the

9    deadline imposed in the scheduling order, and there's often

10    follow-up production.  It's one thing to get a minor follow-

11    up production and it's another thing to get a significant

12    follow-up production.

13            And the follow-up production here, whether it's 20

14    or 30 percent of the total production is high.  It's very

15    high.  And it's certainly something I normally wouldn't want

16    to see.  But given the short schedule that was put in place

17    and the remaining time to come and the fact that any further

18    documents to be produced are likely minor in number and that

19    fact depositions have not yet started, I don't feel very

20    significant prejudice to any party based on this delay in

21    the production of documents, and certainly not significant -

22    - sufficient prejudice to take what I believe would be a

23    very severe reaction and penalty to actually preclude

24    testimony.

25            I have that power, but to -- but certainly all the

1    power I have doesn't need to be exercised willy-nilly, and

2    some powers I have have to be exercised actually quite

3    conservatively, and I would say this is one, and consistent

4    with the caselaw, to not, you know, preclude testimony, and

5    I am reluctant to continue the hearing.

6         I mean, the reality is, you know, we're all used

7    to sort of litigate -- drives real litigators like Mr.

8    McKane and probably Mr. Fleischman crazy, but bankruptcy

9    litigators are used to sort of litigating by the seat of

10   their pants and I think that there's been enough

11   development.  There's been enough production.  We all know

12   the issues pretty well.  We'll see how the depositions go.

13   I think the parties are going to be prepared enough to have

14   a pretty efficient hearing when we actually get to the trial

15   in September.

16         So I'm not going to interpose any further

17   sanctions.  However, Mr. Fleischman, I'm going to ask you

18   for a drop-dead date by which you will not be allowed to

19   produce any further documents, and I'll let you think about

20   that because I want a realistic date.  It needs to balance

21   the fact that you're still working hard, which I appreciate,

22   but it also needs to balance the fact that you need to -- we

23   need to be -- to give your opponents fair opportunity to be

24   prepared and hopefully be prepared for the depositions,

25   which I understand may occur as early as next week, is what

Page 25

1     I think I heard.

2              So keep that in your back pocket and if you could

3     respond by Monday --

4              MR. FLEISCHMAN:  Yes, Your Honor.

5              THE COURT:  That would be helpful.

6              MR. FLEISCHMAN:  Yes, Judge.

7              THE COURT:  Second, with regard to the board

8     resolutions, I do think -- I don't think it's correct that

9     Mr. McGinnis sort of says the only thing you're allowed to

10    redact is privilege.  Certainly, especially if you're

11    talking about confidential information that has no relevancy

12    to the litigation, it would be appropriate to redact on the

13    basis of non-responsiveness.

14             Of course, the problem is, we don't know whether

15    it's truly responsive or not and how much trust do we put in

16    the producer to have made the right call.  So I'm a little

17    worried about this and here's my solution.  I would like to

18    review the relevant board minutes in camera for relevancy.

19    They need to be given to me in a way that I can figure out

20    what's been redated for relevancy versus what's been redated

21    for privilege.

22             I don't -- I'm not going to get into the privilege

23    argument.  That hasn't been raised.  And Mr. Fleischman, I

24    leave it to you, again, to figure out when you can get those

25    to me.  I am not -- I am not against working on the

1    weekends, even though I'm a government employee, but I do

2    have some commitments this weekend, so if you could strive,

3    maybe, again for Monday, or if that's too much, just let me

4    know.  Tuesday or Wednesday would be fine and we'll turn

5    those around as quickly as possible.

6              MR. FLEISCHMAN:  Yes, Your Honor.

7              THE COURT:  You're -- and then finally on the

8    interrogatory response, this one I have to say I disagree

9    with NextEra on this one and while it may not -- I mean, I

10   think the argument about relevance is, as Mr. McGinnis put

11   it, more of a factual than a legal argument, and while I

12   appreciate that Mr. Fleischman has represented that these

13   transactions were entered into prior to the actual sale

14   transaction that failed, I'm not sure that means -- and

15   matter of fact, I think it's quite an open question whether

16   that means it somehow doesn't affect what happened later.

17             So I am going to require a fulsome response to

18   that interrogatory and again, that's going to take time, so

19   Mr. Fleischman if you could let me know on Monday when you

20   can respond to that interrogatory.

21             MR. FLEISCHMAN:  And, Your Honor, is your ruling

22   that you want me to respond to the interrogatory in camera

23   to you?

24             THE COURT:  No.

25             MR. FLEISCHMAN:  Your Honor, would you entertain

1    briefing on this matter?

2            THE COURT:  No.  It certainly can be designated

3    highly confidential and limited to counsel, if you deem that

4    appropriate or financial professionals, to the extent there

5    are some.  But no, I will not entertain briefing on the

6    issue.

7            MR. FLEISCHMAN:  Thank you, Your Honor.

8            THE COURT:  You're welcome.  Any questions about

9    any of those rulings?  All right.

10           MR. FLEISCHMAN:  Not (indiscernible).

11           THE COURT:  Okay, great.  Thank you all very much.

12   Unless there's anything further, we're adjourned.

13           MR. McGINNIS:  Thank you, Your Honor.

14           MR. McKANE:  Thank you, Your Honor.

15           (Whereupon these proceedings were concluded at

16   1:31 PM)

17

18                        * * * * *

19

20

21

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4    DESCRIPTION                              PAGE        LINE

5

6    Document production                       24          16

7

8    Board resolutions                         25          17

9

10   Interrogatory response                    26          17

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 29

1                 C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

   Sonya
6                              Digitally signed by Sonya Ledanski
                             Hyde
   Ledanski Hyde            DN: cn=Sonya Ledanski Hyde, o, ou,
7                            email=digital@veritext.com, c=US
                             Date: 2021.08.09 14:58:11 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  August 9, 2021

**&**

**&** 3:3,14,21 4:1,9
4:14,21 5:6,11

**1**

**100** 14:2
**10th** 7:13
**11** 1:5
**11501** 29:23
**13th** 7:8,15
**14-10979** 1:6
**14th** 7:15
**15** 23:7
**16** 28:6
**17** 28:8,10
**18th** 11:18
**19th** 6:15
**1:00** 1:14
**1:31** 1:14 27:16

**2**

**2,400** 14:16
**2,500** 14:16 18:12
**20** 7:17 23:13
**200** 14:2
**2017** 11:18 12:23
12:23 19:3
**2021** 1:13 29:25
**20th** 6:19
**21** 7:17
**22** 7:17
**24** 28:6
**25** 28:8
**26** 28:10
**27th** 7:9,11

**3**

**3,000** 14:15
**30** 23:14
**300** 29:22
**30th** 12:22,23
19:3
**330** 29:21
**36** 8:25

**37** 9:19
**3rd** 7:13

**5**

**5** 1:13
**50** 14:17
**56** 17:5 21:5,13,25

**6**

**6** 16:21
**60** 21:25
**6th** 7:20

**7**

**75** 11:4

**8**

**80** 13:24 14:7 15:1
**824** 1:11

**9**

**9** 29:25
**9th** 6:14 8:10 19:6

**a**

**ability** 22:8
**able** 10:9 18:20
**absolutely** 14:5
16:11 17:8,10
21:17
**account** 22:8
**accountant** 7:7
**accurate** 29:4
**actual** 26:13
**added** 14:23
**additional** 6:15
8:16 10:8 13:22
**address** 8:2,4,4
9:20
**adjourned** 27:12
**adjustment** 9:22
10:14
**administered** 1:7
**administrative**
6:6 16:24 17:3,4
17:11,19 22:1,4

**admission** 9:16
**advancing** 18:19
**affect** 26:16
**afternoon** 6:2
**ago** 8:22 20:4
**agreed** 6:19
**agreeing** 9:11
**agreement** 17:7
**agreements** 20:25
**ahead** 10:20,21
12:3 13:16
**al** 4:21
**alice** 5:14
**alindogan** 3:18
**allowed** 24:18
25:9
**alternatively** 9:19
**amount** 22:2
**answered** 17:16
**anyway** 13:8
**aparna** 4:17
**appeal** 13:7
**application** 17:10
17:19
**applied** 16:21
**applying** 21:5,13
**appreciate** 13:18
24:21 26:12
**appropriate** 9:6,8
9:16 12:2 22:12
23:1,4 25:12 27:4
**approval** 11:20
12:25
**argue** 20:15
**arguing** 20:13,13
**argument** 25:23
26:10,11
**arrangements**
12:8,10,14 20:12
**aside** 7:14 19:15
22:15
**asked** 11:6 12:7
17:19

**asking** 17:5,12,13
**assertions** 19:12
**assume** 13:18
**attachments** 14:3
16:7
**attorneys** 3:4,10
3:15,22 4:2,10,15
4:21 5:2,7,12
**august** 1:13 6:19
7:8,9,11,20 29:25
**authority** 9:18
**available** 6:19
**aware** 13:21
21:23

**b**

**b** 1:21
**back** 7:16 16:23
17:1,2 25:2
**balance** 24:20,22
**banker** 7:7
**bankruptcy** 1:1
1:10,23 21:24
22:1 23:7 24:8
**bartkowski** 1:25
**based** 12:22 22:21
23:20
**baseless** 15:4,5
19:15
**basis** 25:13
**bayard** 4:20
**behalf** 6:6,22 7:23
**believe** 6:12 11:10
18:15 19:6 23:22
**benefit** 9:23 10:2
12:18
**berkshire** 3:10
4:10 5:7 7:1
**better** 14:11
**beyond** 17:17,18
**blame** 15:10
**board** 6:6 11:1,15
15:23 16:7,7,14
16:18 25:7,18

28:8
**bonner** 4:1,4
**bottom** 14:25
**brief** 7:11,15 9:7
  10:12
**briefing** 10:12
  17:2 18:23 21:15
  27:1,5
**briefly** 20:1
**briefs** 7:10
**bring** 21:1
**bringing** 11:5
**brown** 5:6
**bulk** 15:17
**burden** 15:20
**business** 16:10
**busy** 22:13

**c**

**c** 3:1 6:1 29:1,1
**calendar** 7:3
  22:14
**call** 22:20 23:2
  25:16
**camera** 25:18
  26:22
**case** 1:6 5:11 6:3
  14:5 18:22 21:14
  21:18
**caselaw** 24:4
**cases** 14:25
**ceo** 6:20
**certain** 20:13
**certainly** 9:7 15:8
  15:16 17:22 23:15
  23:21,25 25:10
  27:2
**certified** 29:3
**cfo** 6:20
**chapter** 1:5
**charles** 5:20
**charlie** 14:14
**chipman** 5:6,9

**christopher** 1:22
**cicero** 5:6
**circuit** 17:2 18:23
**circumstances** 9:6
**civil** 9:19
**claim** 8:19 22:1,4
  22:5
**clarify** 15:24
**clear** 11:24 15:25
**clearly** 17:18 19:9
**client** 15:15 16:3
**clip** 18:19
**closely** 16:22
**closer** 14:16
**cloud** 21:1
**cobb** 3:21
**cole** 5:6
**come** 9:1 21:10
  23:17
**coming** 15:20
  18:12
**comment** 18:2
**commissioner**
  19:4
**commitments**
  26:2
**complain** 14:13
**complaints** 15:3,5
**complete** 7:9
  15:12
**completed** 6:13
**completely** 16:2
**complied** 14:6
**comply** 17:24
**concerned** 18:10
**concluded** 27:15
**confer** 20:9
**confidential** 16:2
  20:8 25:11 27:3
**confirmation**
  22:19
**connection** 9:11
  15:15,23 16:23

17:10,12,13,23
  21:22 22:4
**conservatively**
  24:3
**conserve** 18:9
**consider** 11:6
**consistent** 24:3
**consortium** 23:2
**constitute** 14:3
**consummated**
  13:3
**continue** 8:15
  10:6 13:6 19:8
  22:10 24:5
**corp** 1:6
**correct** 25:8
**correspondence**
  13:22
**cost** 18:24 21:4
**counsel** 6:20 22:6
  27:3
**count** 8:24,25
**country** 29:21
**course** 10:11
  11:23 13:10 25:14
**court** 1:1,10 6:2,9
  6:12,14 7:21,25
  8:3,6 9:8,16,18,20
  10:20 11:6 13:17
  16:16 17:11 18:1
  18:6 19:2,10,13
  19:17,21,22 20:18
  20:24 21:5,8,14
  21:19 22:7 23:7
  25:5,7 26:7,24
  27:2,8,11
**court's** 17:25
**covered** 19:25
**crazy** 24:8
**critical** 11:16
  12:23
**crutcher** 4:9

**css** 1:6
**current** 9:6
**currently** 6:17
  7:13
**custodian** 14:21
**cutoff** 15:2

**d**

**d** 6:1 28:1
**daniel** 3:7
**date** 6:18 10:14
  12:23 13:25 22:19
  22:24 23:6 24:18
  24:20 29:25
**dates** 7:14
**day** 10:14 23:3
**days** 6:15 11:18
  13:23 22:15
**dead** 24:18
**deadline** 8:10,12
  8:18 9:1,2,13
  10:12 13:23 22:25
  23:9
**deadlines** 22:11
**deal** 19:4,5 21:20
**debtor** 3:4 4:15
**debtors** 1:7
**decision** 19:7 22:6
**deem** 27:3
**defer** 9:7
**defranceschi** 3:7
**delaware** 1:2,12
**delay** 23:20
**denied** 9:14,24
**deny** 12:25
**depose** 18:16
**deposed** 6:22
**deposition** 6:17
**depositions** 6:18
  6:23 7:2,10 10:7
  10:10 23:19 24:12
  24:24
**description** 28:4

**designated** 27:2
**detail** 12:7
**development** 24:11
**direct** 12:1
**directed** 13:13
**disagree** 26:8
**disagreement** 9:4 9:5 11:22
**disclosed** 7:6
**discoverable** 12:21
**discovery** 2:1 6:3 8:3 10:6,8,24 13:12 20:17
**discrete** 10:24
**discussion** 16:4
**dispute** 2:1 6:4 8:17 12:10 19:21
**disputes** 7:2
**district** 1:2
**doc** 8:9 9:13 20:1
**docket** 6:25
**document** 6:13 8:10 11:3,15 13:21 14:4 19:19 21:22 22:11 23:8 28:6
**documents** 8:13 8:14,16,17 10:3 10:19 11:24 13:25 14:3,9,9,11,12,13 14:13,14,15,16,18 14:19,24 15:2,7 15:12,16,17,18,20 18:10,12,21 23:5 23:18,21 24:19
**doesn't** 24:1
**doing** 12:15 22:23
**drives** 24:7
**drop** 24:18
**drops** 6:13 8:11 8:11 10:3 14:20

19:8
**due** 7:8,11,12,13
**dunn** 3:9 4:9
**dwindling** 22:17 22:21

**e**

**e** 1:21,21 3:1,1 6:1 6:1 28:1 29:1
**early** 15:17 24:25
**earth** 13:24
**ecro** 1:25
**effective** 22:19
**efficient** 24:14
**effort** 17:24
**efh** 6:3 7:4
**eighty** 14:1
**either** 14:24 16:4
**elliott** 3:15 4:21 6:22 7:12,23 14:5 14:10 15:3,6 17:20 18:15 19:18 21:13 23:2,3
**ellis** 4:14
**employee** 26:1
**encore** 11:20 12:9 13:2 16:5,9,17 17:8
**energy** 1:6 3:10 5:2,12
**entered** 12:13 26:13
**entertain** 26:25 27:5
**entire** 11:3 13:8 22:11
**entitled** 16:10,13
**erin** 4:23
**error** 15:14
**especially** 25:10
**essentially** 11:14 12:15
**estate** 12:18,18 18:25 21:4 22:17

22:18,19
**et** 4:21
**evaluating** 7:19
**evercore** 7:1
**everybody** 6:2 21:19
**evidence** 13:5
**exact** 16:14
**exactly** 10:17
**example** 10:5 11:2 11:17 18:11
**exclude** 16:1
**exercised** 24:1,2
**existing** 10:6
**expect** 12:21 13:4 13:9
**expected** 13:1
**expedited** 21:24
**expense** 15:13 16:24 17:4 21:2 22:1,4
**expenses** 8:20
**experience** 23:6
**expert** 7:9
**experts** 7:6,7
**explore** 21:17
**extend** 18:18
**extended** 22:2
**extending** 22:23 22:24,25
**extension** 9:10,23 10:11 23:3
**extensive** 22:21
**extent** 9:20,25 18:12,18 19:1 27:4
**extra** 9:12

**f**

**f** 1:21 29:1
**face** 11:24
**fact** 6:17,18 13:24 14:8,9,15 23:17 23:19 24:21,22

26:15
**facts** 20:13,15
**factual** 13:13 26:11
**failed** 26:14
**fair** 24:23
**fall** 22:13
**far** 11:5
**fay** 4:23
**fee** 17:3,11
**feel** 22:10 23:19
**fees** 17:12,13
**felt** 22:10
**fibernet** 17:15
**figure** 25:19,24
**filed** 8:21 11:19
**files** 14:21 18:13
**finally** 26:7
**financial** 27:4
**financing** 12:16
**fine** 6:9 18:7 26:4
**finger** 3:3
**finished** 23:8
**first** 8:5,7,21 9:11 11:17,19 12:24
**five** 7:14 11:18 22:15
**fleischman** 4:1,5 13:19,20 18:1 20:18,22 24:8,17 25:4,6,23 26:6,12 26:19,21,25 27:7 27:10
**fleischman's** 19:12
**fluctuations** 12:16
**focus** 17:18
**focused** 19:2
**follow** 23:10,10 23:12,13
**footnote** 16:25
**foregoing** 29:3

forgot  18:2
forth  16:25
forward  18:15
  19:9
found  11:4 21:17
four  20:4
frankly  22:12
free  13:10 20:14
friday  7:5,8,13
front  8:4,6 9:12
full  17:1
fulsome  26:17
funding  17:14
further  17:23
  20:21 23:17 24:16
  24:19 27:12
fuse  15:21
future  1:6

**g**

g  6:1
gain  21:10
galardi  3:17
gathering  15:15
general  6:20
generally  20:19
getting  10:3
gibson  3:9 4:9
give  8:23 9:22
  14:11 17:1 24:23
given  17:15 22:8
  23:16 25:19
giving  15:8
glatter  4:6
go  9:3 10:20,20,23
  12:3 13:15 19:20
  24:12
goes  21:4
going  13:5,9,19
  17:21 18:16,21
  19:2 20:23 23:2
  24:13,16,17 25:22
  26:17,18

good  6:2 13:8,8
gorrepati  5:18
government  26:1
gray  3:14 5:1 7:23
gray's  16:21
great  27:11
gregg  3:17
ground  11:10
guess  22:18

**h**

half  16:24,25
happened  20:4,25
  26:16
happens  16:6
happy  8:4 13:6
  20:9
hard  24:21
hathaway  3:10
heard  25:1
hearing  2:1 7:4
  10:14 11:19 13:6
  13:7 22:24 24:5
  24:14
hearings  19:14
heaven  13:23
hedging  12:7,10
  12:14 13:3 17:6
  18:21 19:19 20:12
  20:25
help  7:18
helpful  25:5
herculean  17:23
herring  21:7
hickson  18:13
hickson's  14:14
high  23:14,15
highlight  19:10,17
highlighted  18:23
highly  11:12 15:9
  16:1 20:3,8 27:3
holdings  1:6
holidays  7:16

hon  1:22
honor  6:5,10,11
  7:4,18,22 8:1,2,9
  8:11 9:7,13 10:16
  10:22,25 12:1,2,5
  12:20 13:4,11,15
  13:20,21,21,22
  15:1 16:21 17:20
  18:4 20:17,22
  21:2 25:4 26:6,21
  26:25 27:7,13,14
honor's  14:6
hook  17:14
hoped  23:5
hopefully  7:18
  24:24
horton  6:21
human  22:8
hyde  2:25 29:3,8

**i**

idea  14:1
important  13:24
  14:3
imposed  23:9
inadvertent  15:14
inclined  9:20
include  8:19
included  11:1
includes  7:1
indicated  12:24
indicates  14:8
indiscernible
  15:22 16:19 17:6
  27:10
information  9:17
  11:11 13:13 16:2
  16:11,18 20:4
  22:9 25:11
inquiry  15:19
intend  15:11
interest  12:14,17
interests  12:17

interpose  24:16
interrogatory
  12:6,7 13:14
  16:20 17:16 20:11
  26:8,18,20,22
  28:10
investment  7:7
invoices  14:2
  15:13
involved  6:21
irrelevant  12:13
  13:10 16:2,17
issue  6:16 8:7
  9:21 10:23,25
  12:3 18:11,22
  20:1,9,11 21:2,2,3
  21:3,6,11,14,15
  21:18 27:6
issues  7:19 8:2
  10:24 18:17,20
  19:17,20,20 24:12

**j**

james  4:4
jason  3:6
jeffrey  4:12 5:4
jewish  7:16
jim  14:14
jointly  1:7
joshua  4:6
judge  1:23 6:3
  15:23 23:7 25:6
july  6:14,15 8:10
  8:11 19:6

**k**

keep  25:2
keith  4:5
killers  19:5,5
kind  18:19 20:19
  22:15
kirkland  4:14
know  8:23 9:9
  10:18 12:22 13:7
  14:2 15:6,7,18

16:10 17:19 18:2
18:8,15,16,17
19:8,11,12,20
20:5,22 22:7,18
23:2 24:4,6,11
25:14 26:4,19
**knows**  6:12 8:9
**krause**  4:12

**l**

**landis**  3:21
**large**  21:25 22:5
**largely**  6:13
**late**  9:17 14:21
**law**  16:12,13 20:6
**lay**  15:10
**layton**  3:3
**lead**  18:16 21:7
**leave**  25:24
**ledanski**  2:25 29:3
29:8
**left**  19:24
**legal**  22:20 26:11
29:20
**legible**  15:12
**letter**  8:8 9:7 11:2
11:8 14:8 15:25
16:22,25 18:3,4,7
20:12,24
**letters**  21:20
**level**  6:10
**limited**  10:6 18:9
22:20 27:3
**limits**  22:8
**line**  14:25 28:4
**litigate**  24:7
**litigating**  24:9
**litigation**  22:22
25:12
**litigators**  24:7,9
**little**  19:24 25:16
**llp**  3:14 4:1,9,14
5:6,11

**look**  11:13 15:6,6
17:1,2 20:2,12
**looking**  16:18
**loss**  21:11
**lot**  8:13,20 19:23
22:14

**m**

**madron**  3:6
**making**  16:15
17:11 19:8
**malpractice**  19:13
**mandy**  1:25
**march**  12:22,23
19:3
**marcus**  17:14
**mark**  4:18 6:5
14:13
**market**  1:11
12:15
**material**  8:19
18:17
**materials**  11:1
**matt**  7:22
**matter**  6:8 9:3
10:13 11:13 16:3
17:17 21:23 22:20
26:15 27:1
**matthew**  3:19,24
**mcginnis**  3:19
7:22,23 8:1 10:22
13:18 15:24 16:22
17:9 19:22,23
25:9 26:10 27:13
**mcguire**  3:24
**mckane**  4:18 6:5,5
6:10 7:21 18:1,4,8
19:22,23 20:19
24:8 27:14
**mcveigh**  5:21
**meager**  22:17
**mean**  9:25 10:5,11
15:5 19:14 20:2
22:18 24:6 26:9

**means**  26:14,16
**meeting**  12:24
**meetings**  11:16
**merger**  17:7
**meyers**  8:7
**million**  17:5 21:5
21:13,25,25
**mind**  6:7
**mineola**  29:23
**minimum**  13:12
**minor**  23:10,18
**minutes**  15:23
16:7,7,14,18
25:18
**misspoke**  15:25
**misstatements**
19:13
**mitchell**  5:21
**modification**  10:1
10:17
**monday**  7:14 25:3
26:3,19
**money**  13:8
**month**  6:11 7:20
**months**  9:12
**motion**  8:21
**motions**  11:19
**motivated**  13:5
**movant**  6:4,7
**move**  10:9,23
**moved**  13:23
**moving**  22:12

**n**

**n**  3:1 6:1 28:1
29:1
**name**  16:24
**names**  20:2
**need**  10:10,17
17:20 24:1,22,23
25:19
**needs**  22:7 24:20
24:22

**new**  21:16 22:5
**nextera**  3:22 4:2
6:14,19,22 7:6
8:12 9:10,22 10:4
10:5,18 11:19,20
12:6,7,9,10,13,25
13:1,9 15:10
18:14 19:6,8
20:14 21:3 22:6
26:9
**nextera's**  7:11
11:1 12:12 22:6
**nice**  8:1
**night**  11:9
**nilly**  24:1
**non**  21:24 25:13
**normal**  22:2
**normally**  22:3
23:15
**north**  1:11
**note**  9:9 11:15
15:11
**noticed**  6:23
**notices**  6:24
**nova**  3:18
**november**  22:15
**number**  13:24
17:6 21:11 23:18
**numbers**  8:23
**ny**  29:23

**o**

**o**  1:21 6:1 29:1
**object**  13:11 15:7
**objecting**  18:6
**objection**  22:25
**objectors**  10:2,9
**obviously**  9:5
19:11
**occur**  24:25
**odd**  18:12
**offsets**  21:12,13
**offsetting**  18:24
21:4

oh 10:20
okay 10:20 27:11
old 29:21
omnibus 7:4
ones 10:2
open 12:24 26:15
opening 7:11
operator 1:25
opinion 17:2
opponents 24:23
opportunity 24:23
oppose 17:21
order 9:9 14:6 15:9 17:25 22:12 23:9
original 8:9 13:23
originally 9:23
outlined 8:8

**p**

p 3:1,1 6:1
p.a. 5:1
p.m. 1:14,14
pa 4:20
pab 6:21 7:12 14:5,10 17:20 18:9 21:12 23:3
pace 18:19
page 8:25 28:4
pages 14:4
pants 24:10
papers 19:12
part 10:18 15:14 19:14
particular 12:6 15:10
parties 7:9 10:4 19:2 21:23 24:13
party 6:23 23:20
passed 8:18
patrick 4:7
pause 7:15

penalty 23:23
pendency 12:8
people 20:3
percent 8:25 11:4 13:25 14:1,7,17 15:1 23:14
perfectly 13:6
period 13:8 14:22 19:1,3,7
permitted 10:9 11:23
picking 7:16
place 12:8,10 23:16
plan 6:6
pm 27:16
pocket 25:2
point 8:5,5,16 11:14 12:4,5,21 12:22 13:1,21 16:5,20 20:11
points 11:17 19:25
position 12:12
possible 26:5
post 22:18,19
power 23:25 24:1
powers 24:2
practical 10:13 11:13
precisely 12:20
preclude 9:16 23:23 24:4
prejudice 23:20 23:22
prejudiced 17:22 17:23
prejudicial 15:9
prepared 24:13 24:24,24
present 5:16
presented 19:21

pretrial 7:10
pretty 20:10 22:2 24:12,14
previously 9:10
prior 13:22 17:7,7 17:8 18:23 21:9 26:13
privilege 11:9,23 20:7 25:10,21,22
privileged 11:25 14:25 16:1
probably 10:11 11:4 24:8
problem 25:14
proceed 7:24 19:9
proceedings 27:15 29:4
process 22:9
produce 8:16 14:1 17:24 24:19
produced 8:13 9:17 12:19 13:24 14:7,9,15,17,20 14:21,21 15:1,18 16:5 23:6,18
producer 25:16
producing 8:13 8:18 10:19 15:20
production 8:25 9:13 11:5 14:22 15:2,12,16 21:22 22:11 23:8,10,11 23:12,13,14,21 24:11 28:6
productions 6:14 6:16 8:10 19:19
professionals 27:4
profit 13:2
properly 16:1
protect 12:15
provide 6:7 13:13
provides 16:13

puct 11:20 12:24 19:4
purposes 11:23 13:12
put 15:21 23:16 25:15 26:10
putting 18:14

**q**

question 13:12 20:16 26:15
questions 10:22 12:3 13:15 27:8
quick 6:7
quickly 22:21 26:5
quite 22:21 24:2 26:15
quote 16:24 17:1
quotes 19:12

**r**

r 1:21 3:1 6:1 29:1
rachel 5:19
raised 10:25 19:18 25:23
rarely 23:8
rath 3:21
reaction 23:23
read 14:12 16:21
real 24:7
realistic 24:20
reality 24:6
really 17:23 20:10 22:14,21
reason 9:15 13:14
rebuttal 7:7
recognize 7:3 13:9
record 29:4
red 21:7
redact 11:23 20:6 20:7,10 25:10,12
redacted 11:3,7,9 11:14,25 20:2,5

redacting 20:3
redaction 16:13
redactions 11:1
  12:2 15:25 16:3
  19:19 20:1
redated 25:20,20
referenced 17:5
referring 9:1
regard 7:6,10
  18:17,22 19:18
  25:7
regarding 20:11
regards 18:24
reiterate 20:23
relates 8:8 10:25
  12:5
relative 18:10
relevance 13:11
  26:10
relevancy 17:18
  25:11,18,20
relevant 12:18
  15:19 17:10,17
  19:9,20 20:14,15
  21:8,18 25:18
reluctant 24:5
remaining 23:17
remedy 9:6,8
reply 7:13,15
reports 7:8
representation
  16:15
represented 20:23
  26:12
reproduce 12:2
request 22:24
requested 14:10
requests 9:14
require 10:13
  26:17
resolution 14:11
resolutions 25:8
  28:8

resources 18:9
  22:17,17,20
respect 8:3
respond 20:21
  25:3 26:20,22
response 11:8
  12:6 13:14 23:1
  26:8,17 28:10
responses 7:12
responsive 11:11
  25:15
responsiveness
  11:10 20:6 25:13
review 10:3 12:1
  14:19,23 20:1
  25:18
reviews 8:9
revolves 17:3
richards 3:3
right 13:17 16:18
  16:23 17:9 21:19
  25:16 27:9
road 29:21
robinson 5:1
robo 14:14 18:13
  19:4
rocco 4:1,7
rollout 18:10
ropes 3:14 7:23
  16:21
rosenbaum 6:22
rule 9:19
rules 9:19
ruling 26:21
rulings 27:9 28:3

**s**

s 1:22 3:1 6:1
sale 26:13
sanctions 24:17
saying 20:24
says 25:9
schedule 7:4 8:8
  9:11,11,22 10:1,7

  23:16
scheduled 9:3
scheduling 9:9,21
  14:6 22:11 23:9
schlerf 5:4
scope 17:17
search 14:23
seat 24:9
second 9:12 10:23
  10:25 14:22 25:7
see 8:1 11:2,8
  23:16 24:12
seek 9:10
seeking 8:21
  11:20 13:6
seen 6:24
self 12:14,17
sempra 5:2,12 7:1
send 18:3,4
sending 18:6
sense 8:24
sensitive 11:12
  14:24 16:1,10
  20:3,9
sentence 16:16
  20:5
september 7:12
  7:13,15,17 9:3,17
  24:15
seriatim 21:21
series 6:23
service 22:16
set 6:11 7:3,14
  11:17 16:25 19:15
  21:23 22:15
severe 23:23
short 15:21 23:16
show 13:5
side 21:11,12,12
sieving 5:20 18:13
sieving's 14:14
signed 16:22 17:7

significant 23:11
  23:20,21
significantly
  11:25
simply 10:1 16:12
  16:13 20:3 21:8
single 14:4
situation 15:10
  16:14
six 11:18
sletten 3:12
slow 22:13
solely 12:14 22:16
solution 25:17
solutions 29:20
somewhat 10:24
sontchi 1:22 6:3
sonya 2:25 29:3,8
sorry 10:20
sort 22:2 24:7,9
  25:9
sought 9:12,23
sound 6:13 8:11
  8:11 10:3 14:20
  19:8
specific 20:8
spend 22:3
stand 6:8 7:19
  8:14 10:16
started 23:19
starting 7:14
statements 19:11
states 1:1,10
steven 3:12
stole 19:23
stray 20:5
street 1:11
strive 26:2
submitted 10:4
substantial 14:22
  15:2
substantially 6:13
  13:1 14:1,7

substantiation
  8:20
substantive  8:19
sufficient  23:22
suggesting  19:13
suite  29:22
summer  22:13
supplemental
  15:11
supposed  21:24
sure  26:14
suspect  10:13

          t

t  29:1,1
take  8:5 10:7,8,10
  18:16 19:16 22:7
  23:22 26:18
taken  6:18
talking  8:24 11:16
  25:11
teams  14:19
telephonically
  5:16
tell  10:16
ten  6:15 13:23
  23:3
termination  19:5
terms  8:23 10:7
  14:23 19:7
testimony  23:24
  24:4
thank  6:10 7:21
  8:1 13:17,17 18:1
  19:22 20:17 21:19
  21:20 27:7,11,13
  27:14
thanks  13:18
that'd  6:9
theirs  10:12
thereon  19:5
they're  20:13
thing  23:10,11
  25:9

things  20:4
think  8:2,7 9:4,5
  9:15,18,21 10:24
  11:18,24 12:9,20
  13:12 15:6,24
  17:16 18:9,21
  19:14,25 20:12
  22:10,16 24:10,13
  24:19 25:1,8,8
  26:10,15
third  6:23 10:23
  12:4,5 16:20 17:2
  18:23
thought  23:1,4
three  8:2,4,12,21
  18:14
thunder  19:24
time  9:13 10:3
  11:17 12:11 13:8
  15:6,8 17:21 19:1
  19:3,7 22:2,14,24
  23:17 26:18
timing  8:9 18:11
  19:19 20:1
today  7:19 8:3,15
  10:16 20:16
told  19:4
topic  16:4
total  23:14
transaction  6:21
  11:21 12:9,25
  13:2 16:5,9,12,17
  17:6,8,15,15 19:6
  21:1,9 26:14
transactions
  12:13 13:3 17:14
  20:14 21:3,9
  26:13
transcribed  2:25
transcript  29:4
tremendous  15:20
trial  6:12 7:14,20
  9:3,17 13:11

20:16 21:24 22:3
  22:16 23:7 24:14
true  29:4
truly  25:15
trust  25:15
try  18:9
trying  19:16 21:7
tsier  5:14
tuesday  26:4
turn  6:4 12:3
  13:16 26:4
twice  9:10
two  7:6 9:2,12
  11:19 17:13 20:6

          u

u.s.  1:23
uday  5:18
umb  4:21 18:15
  19:18
understand  12:12
  14:12 24:25
understanding
  8:15 14:18
united  1:1,10
unusable  11:15
update  6:7
urged  23:1

          v

vendor  15:15
veritext  29:20
versions  15:13
versus  25:20
view  12:20
violated  15:8
violation  9:8

          w

want  19:17 21:17
  22:19 23:15 24:20
  26:22
wanted  14:11
wanting  21:1

wants  15:6
way  15:9 21:8
  25:19
we've  8:8 11:1
  17:24
wednesday  26:4
week  8:14 15:17
  24:25
weekend  26:2
weekends  26:1
weeks  8:12 9:2
welcome  20:18
  27:8
went  19:7 22:25
werkheiser  5:19
white  5:11
william  5:9
willy  24:1
wilmington  1:12
window  6:17
withheld  16:17
withhold  16:8
witnesses  10:10
  18:14
work  18:20
working  24:21
  25:25
world  21:25 22:1
worried  25:17

          x

x  28:1

          y

years  8:22 20:4
  23:7
yenamandra  4:17