**EXHIBIT 1** to **EXHIBIT A**

**Settlement Agreement**

**Execution Version**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) Case No. 14-10979 (CSS) |
| Reorganized Debtors. | ) (Jointly Administered) |
| | ) |

## SETTLEMENT AGREEMENT REGARDING
## NEXTERA ADMINISTRATION EXPENSE APPLICATION

This Settlement Agreement (the "Agreement") is made and entered into as of September 1, 2021, by and among the following parties (each a "Party," and collectively, the "Parties"):

(i) NextEra Energy, Inc. ("NextEra")

(ii) the EFH Plan Administrator Board (the "PAB");

(iii) UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25% Senior Toggle Notes due 2018; and

(iv) Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership (collectively, "Elliott").

Unless otherwise indicated, capitalized terms used but not otherwise defined herein have the same meanings ascribed to such terms in the *First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12763-1] (the "Plan") and if not defined therein, then in the *Order Confirming the First Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, and the EFH/EFIH Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 12763] (the "Confirmation Order").

*RECITALS*

**WHEREAS**, on April 29, 2014, the EFH/EFIH Debtors commenced chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, which chapter 11 cases are being jointly administered and are captioned *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS) (the "Chapter 11 Cases");

**WHEREAS**, on February 20, 2018, NextEra filed the *Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Claim* [D.I. 12671] (the "Administrative

Expense Application") seeking $59,505,617 in costs and expenses allegedly incurred in connection with a transaction to purchase assets from the Debtors;

**WHEREAS**, on March 23, 2018, the Trustee and Elliott filed the *Joint Motion of UMB Bank, N.A., as Indenture Trustee, and Elliott to (I) Dismiss Application of NextEra Energy, Inc. for Allowance and Payment of Administrative Expense, or in the Alternative, (II) Grant Summary Judgment Denying and Disallowing Such Administrative Expense* [D.I. 12844] (the "Motion"),

**WHEREAS**, on August 1, 2018, the Bankruptcy Court granted the Motion [D.I. 13332, 13333] (the "Bankruptcy Court Order");

**WHEREAS**, NextEra appealed the Bankruptcy Court Order to the United States District Court for the District of Delaware (the "District Court"), and on September 30, 2019, the District Court affirmed the Bankruptcy Court Order, *In re Energy Future Holdings Corp.*, 2019 WL 4751568 (D. Del. Sept. 20, 2019) (the "District Court Order");

**WHEREAS**, NextEra appealed the District Court Order to the United States Court of Appeals for the Third Circuit (the "Court of Appeals"), and on March 15, 2021, the Court of Appeals reversed the Bankruptcy Court Order and District Court Order and remanded to the District Court and Bankruptcy Court for further proceedings on the Administrative Expense Application;

**WHEREAS**, on June 8, 2021, the Bankruptcy Court entered an order scheduling certain dates and deadlines and establishing certain protocols in connection with the remand proceeding for the Administrative Expense Application; and

**WHEREAS**, on August 20, 2021, the Parties executed a term sheet setting forth the principal terms for a proposed compromise and settlement of the Administrative Expense Application.

*AGREEMENT*

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, in consideration of the promises and the mutual covenants and agreements set forth herein, each Party, intending to be legally bound, agrees as follows:

**Section 1.    Agreement Effective Date**.

This Agreement shall be effective and binding on each Party subject to and upon approval of the Bankruptcy Court.

**Section 2.    Settlement Terms**.

2.1   In full and final settlement of the Administrative Expense Application, NextEra is granted an Allowed Administrative Claim under the Plan in the amount of $15 million (the "Allowed Administrative Expense Claim"); *provided* that notwithstanding anything to the contrary in the Plan or the Confirmation Order, any distribution and recovery from the Debtors,

their creditors, and the PAB on the Allowed Administrative Expense Claim shall be solely and exclusively on the terms and to the extent set forth in Section 2.2 hereof.

2.2     In full and final satisfaction of the Allowed Administrative Expense Claim, Elliott shall cause the PAB to pay, and the PAB shall pay, to NextEra $4 million (the "Settlement Payment") by wire transfer within two business days following the date on which the order approving this Agreement (the "Settlement Approval Order") becomes final and nonappealable.

      (a)     Elliott shall provide to the PAB the funds necessary for the PAB to make the Settlement Payment to NextEra.

      (b)     Except with respect to the Settlement Payment, NextEra agrees to waive and forgo any right of recovery or distribution on the Allowed Administrative Expense Claim from the PAB, the Debtors, the EFH/EFIH Cash Distribution Account, Elliott, the Trustee and any Holder of a Claim against the Debtors that has received or will receive a distribution from the Debtors, the PAB, or any Disbursing Agent under the Plan, including, without limitation, any Holder of a Professional Fee Claim and/or any past or future payments made to any professionals of the PAB (whether under a theory of disgorgement or otherwise).

2.3     Each Party shall bear its own costs and expenses related to the Administrative Expense Application and this Agreement.

2.4     Each Party agrees to not appeal, seek reconsideration of, or otherwise challenge in any respect the Settlement Approval Order.

**Section 3.     Bankruptcy Court Approval**.

3.1     By no later than September 3, 2021, the PAB shall file a motion seeking Bankruptcy Court approval of this Agreement (a "**Settlement Approval Motion**") together with a motion to shorten notice with respect to the Settlement Approval Motion.  The Settlement Approval Motion shall be satisfactory to NextEra.  The Parties shall support and take all commercially reasonable steps to obtain Bankruptcy Court approval of this Agreement as soon as reasonably practicable.

**Section 4.     Releases**

4.1     Simultaneous with the receipt of the Settlement Payment by NextEra, the PAB, the Trustee, and Elliott, each on behalf of itself and any other party, person or entity claiming under or through it, will release and discharge NextEra and its successors, predecessors, officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, advisors, attorneys, agents, consultants, and independent contractors, each in their capacity as such (collectively, the "**NextEra Released Parties**"), from any and all claims, causes of action, judgments, executions, debts, demands, rights, damages, costs, and expenses of every kind, nature, and character whatsoever, whether in law or in equity, in connection with, related to, or arising out of the Administrative Expense Application, the Merger Agreement (as defined in the Administrative Expense Application), and the Chapter 11 Cases, or any act, omission, or proceeding related thereto, whether known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that PAB, the Trustee, or Elliott ever had or claimed to have, or now has or claims

3

to have presently or at any future date, against each NextEra Released Party other than claims related to enforcement of this Agreement.

4.2    Simultaneous with the receipt of the Settlement Payment by NextEra, NextEra, on behalf of itself and any other party, person or entity claiming under or through it, will release and discharge the PAB, the Trustee, and Elliott, and each of their respective successors, predecessors, officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, advisors, attorneys, agents, consultants, and independent contractors, each in their capacity as such (collectively, the "**PAB/Trustee/Elliott Released Parties**"), from any and all claims, causes of action, judgments, executions, debts, demands, rights, damages, costs, and expenses of every kind, nature, and character whatsoever, whether in law or in equity, in connection with, related to, or arising out of the Administrative Expense Application, the Merger Agreement (as defined in the Administrative Expense Application), and the Chapter 11 Cases, or any act, omission, or proceeding related thereto, whether known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that NextEra ever had or claimed to have, or now has or claims to have presently or at any future date, against each PAB/Trustee/Elliott Released Party other than claims related to enforcement of this Agreement.

4.3    Simultaneous with the receipt of the Settlement Payment by NextEra, except with respect to NextEra's right to receive the Settlement Payment as set forth herein, NextEra will also release and discharge each Holder of a Claim that received, or will receive, any distribution in the Chapter 11 Cases, whether pursuant to the Plan or otherwise, whether before or after the Effective Date of the Plan, from any and all claims, causes of action, judgments, executions, debts, demands, rights, damages, costs, and expenses of every kind, nature, and character whatsoever, whether in law or in equity, in connection with, related to, or arising out of the Administrative Expense Application, the Merger Agreement, and the Chapter 11 Cases, or any act, omission, or proceeding related thereto, and shall not pursue any claims, causes of action, judgments, executions, debts, demands, rights, damages, costs, and expenses against any such Holders of Claims with respect to the Allowed Administrative Expense Claim (whether under a theory of disgorgement or otherwise); provided, however, that NextEra's release of any Holder of a Claim pursuant to this Section 4.3 will be rescinded and have no effect with respect to any Holder of a Claim that asserts a claim against NextEra in connection with, related to, or arising out of the Administrative Expense Application, the Merger Agreement, or the Chapter 11 Cases, or any act, omission, or proceeding related thereto.  For the avoidance of doubt, the releases of the NextEra Released Parties and the PAB/Trustee/Elliott Released Parties are governed by Sections 4.1 and 4.2 herein.

4.4    Each Party certifies that it has read the following provisions of California Civil Code section 1542:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLMENT WITH THE DEBTOR.**

Each Party waives the application of California Civil Code section 1542 except with respect to the continued obligations imposed under this Agreement.  Each Party understands and

4

acknowledges that the significance and consequence of this waiver of California Civil Code claims released herein, it will not be able to make any claim for those damages. Furthermore, each Party acknowledges that it consciously intends these consequences even as to claims that it does not know exist, and that, if known, would materially affect its decision to execute this Agreement, regardless of whether its lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause. Each Party acknowledges that it has read, understands, and agrees to the above.

**Section 5.    Other Proceedings**

5.1    The PAB will file a notice or stipulation of dismissal or a motion to dismiss with prejudice in *Energy Future Intermediate Holding Company LLC v. NextEra Energy, Inc.*, Adv. Case. No. 17-50942 (Bankr. D. Del) within two business days following the later of (x) the date on which the Settlement Approval Order becomes final and nonappealable, or (y) the date on which NextEra receives the Settlement Payment.

5.2    For the avoidance of doubt, NextEra may continue to pursue its appeals in: *NextEra Energy, Inc. v. Public Utility Commission of Texas and Texas Industrial Energy Consumers*, No. 20-0327 (Tex. Sup. Ct.) and *NextEra Energy, Inc. v. Public Utility Commission of Texas*, No. 20-0699 (Tex. Sup. Ct.).

**Section 6.    Public Statements**

6.1    No Party may issue a public statement related to this Agreement; *provided, however*, that nothing herein prohibits a Party from responding to any media or other inquiries.

**Section 7.    Miscellaneous**.

7.1    Complete Agreement.

This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, among the Parties with respect thereto.

7.2    Governing Law; Jurisdiction; Waiver of Jury Trial.

(a)    This Agreement shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of Delaware, without giving effect to the conflict of laws principles thereof. Each Party hereto agrees that, to the extent permissible under applicable law, it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement in the Bankruptcy Court (the "Chosen Court"), and solely in connection with claims arising under this Agreement: (i) irrevocably submits to the exclusive jurisdiction and the authority of the Chosen Court (to the extent the Chosen Court can exercise jurisdiction over such claims); (ii) waives any objection to laying venue in any such action or proceeding in the Chosen Court; and (iii) waives any objection that the Chosen Court is an inconvenient forum, does not have jurisdiction over any Party hereto, or lacks the constitutional authority to enter final orders in connection with such action or proceeding.

5

(b)     In the event of any breach or attempted or threatened breach of the Agreement, each Party agrees that the non-breaching Party shall be irreparably harmed and damaged, and accordingly, in such an event, the non-breaching Party shall be entitled to apply for injunctive relief to enforce the provisions of the Agreement.

(c)     Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of, or relating to, this Agreement or the transactions contemplated hereby (whether based on contract, tort, or any other theory).  Each Party (i) certifies that no representative, agent, or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Parties have been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section 7.

7.3     Execution of Agreement.

This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature and delivery. Each such counterpart, when executed and delivered, shall be deemed an original, and all such counterparts together shall constitute the same agreement.  Each individual executing this Agreement on behalf of a Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of such Party.

7.4     Interpretation and Rules of Construction.

This Agreement is the product of negotiations among the Parties and, in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof. The Parties were each represented by counsel during the negotiation and drafting of this Agreement and continue to be represented by counsel. In addition, this Agreement shall be interpreted in accordance with 11 U.S.C. § 102.

7.5     Amendment.

This Agreement may not be modified, amended, or supplemented in any manner except in writing signed by each of the Parties. Any proposed modification, amendment, or supplement that is not signed by each of the Parties shall be ineffective and void *ab initio*.

7.6     Settlement Discussions.

This Agreement and the transactions contemplated herein are part of a proposed settlement among the Parties.  Nothing herein shall be deemed an admission of any kind.  To the extent provided by Federal Rule of Evidence 408, and any applicable state rules of evidence, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Agreement.

7.7    Successors and Assigns; No Third Party Beneficiaries; Non-Assignment.

This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable. Except as otherwise explicitly set forth herein, nothing in this Agreement is intended to benefit or create any right or cause of action in or on behalf of any person other than the Parties hereto (and their affiliated persons and entities who are intended to be beneficiaries of the releases and settlements set forth herein). Each Party hereby warrants that it has not assigned any claim subject to the releases set forth in Section 4 of this Agreement. No Party may assign any of its obligations under this Agreement.

7.8    Severability and Construction.

If any term or other provision of this Agreement shall be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of this Agreement is not affected in any manner materially adverse to any Party. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the essential terms and conditions of this Agreement are fulfilled to the extent possible.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

[Signature Pages Follow]

| | |
|---|---|
| Dated: September 1, 2021<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew B. McGuire*<br>Matthew B. McGuire (No. 4366)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>Email: mcguire@lrclaw.com<br><br>-and-<br><br>**FLEISCHMAN BONNER & ROCCO LLP**<br>Keith M. Fleischman (admitted *pro hac vice*)<br>James P. Bonner (admitted *pro hac vice*)<br>Patrick L. Rocco (admitted *pro hac vice*)<br>Joshua D. Glatter (admitted *pro hac vice*)<br>81 Main Street, Suite 515<br>White Plains, NY 10601<br>Telephone: (914) 278-5100<br>E-mail:kfleischman@fbrllp.com<br>jbonner@fbrllp.com<br>procco@fbrllp.com<br>jglatter@fbrllp.com<br><br>*Counsel to NextEra Energy, Inc.* |

Dated: September 1, 2021
       Wilmington, Delaware

**BAYARD, P.A**

*/s/ Erin R. Fay*
Erin R. Fay (No. 5268)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
Email: efay@bayardlaw.com

-and-

**ROPES & GRAY LLP**
Gregg M. Galardi (No. 2991)
Daniel G. Egan (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Email: Gregg.Galardi@ropesgray.com
Daniel.Egan@ropesgray.com

Matthew L. McGinnis (admitted *pro hac vice*)
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile: (617)951-7777
Email: matthew.mcginnis@ropesgray.com

*Counsel to Elliott Associates, L.P., Elliott International, L.P., and the Liverpool Limited Partnership* and *UMB Bank, N.A., as Indenture Trustee for the unsecured 11.25%/12.25% Senior Toggle Notes due 2018*

| | |
|---|---|
| Dated: September 1, 2021<br>Wilmington, Delaware | **RICHARDS, LAYTON & FINGER, P.A.**<br><br>*/s/ Jason M. Madron*<br>Mark D. Collins (No. 2981)<br>Daniel J. DeFranceschi (No. 2732)<br>Jason M. Madron (No. 4431)<br>920 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 651-7700<br>Facsimile: (302) 651-7701<br>Email: collins@rlf.com<br>defranceschi@rlf.com<br>madron@rlf.com<br><br>-and-<br><br>**KIRKLAND & ELLIS, LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL, LLP**<br>Edward O. Sassower, P.C. (admitted *pro hac vice*)<br>Stephen E. Hessler, P.C. (admitted *pro hac vice*)<br>Brian E. Schartz, P.C. (admitted *pro hac vice*)<br>Steven N. Serajeddini, P.C. (admitted *pro hac vice*)<br>Aparna Yenamandra (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, NY 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>Email: edward.sassower@kirkland.com<br>stephen.hessler@kirkland.com<br>brian.schartz@kirkland.com<br>steven.serajeddini@kirkland.com<br>aparna.yenamandra@kirkland.com<br><br>James H.M. Sprayregen, P.C. (admitted *pro hac vice*)<br>Chad J. Husnick, P.C. (admitted *pro hac vice*)<br>300 North LaSalle<br>Chicago, IL 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br>Email: james.sprayregen@kirkland.com<br>chad.husnick@kirkland.com<br><br>*Co-Counsel to the EFH Plan Administrator Board* |